Jeffrey D. Felder, Esq.
410 Seventeenth St., Suite 2200
Denver, Colorado 80202
T: 303.223.1205
F: 303.223.8005
E-mail: jfelder@bhfs.com

*Attorney for The Richard and Deborah Felder Foundation, Jonathan E. Felder, and Jeffrey D. Felder*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff-Applicant,<br><br>                v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                Debtor. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM NOS. 001369, 001463, 001513, AND 001515**

      The Richard and Deborah Felder Foundation, Richard and Deborah Felder, Jonathan E. Felder, and Jeffrey D. Felder, through undersigned counsel, object as follows to the Trustee's determination of their claims.

**I. INTRODUCTION**

      On May 27, 2010, the Trustee determined Claim Number 001513 and addressed the determination letter "Dear Richard B. Felder and Deborah Felder TIC." TIC is an acronym for

tenants-in-common, a well-recognized form of joint ownership. No entity with the name "Richard B. Felder and Deborah Felder TIC" filed a claim with the Trustee, however, because the Richard B. Felder and Deborah Felder TIC (the "TIC Account") is not an entity; rather it was a legal structure through which four separate customers invested with Bernard L. Madoff Investment Securities LLC ("BLMIS"). Each of the four tenants in the TIC Account filed a separate claim with the Trustee and, through this objection, explain that the Trustee has failed to properly adjudicate those claims.

In 1992, Richard and Deborah Felder, as a single customer, established the TIC Account along with customers Jonathan Felder and Jeffrey Felder. Subsequently, a fourth customer joined the TIC Account in 1997 when the Richard and Deborah Felder Foundation invested with BLMIS through the TIC Account (collectively, the "Four Customers" or the "Four Tenants"). Each of the Four Customers at all times owned a fixed dollar value of the funds in the TIC Account and held the exclusive power to act only with respect to their own assets in the TIC Account, not those of the other three remaining customers in the TIC Account. Accordingly, each of the Four Customers has a direct several—not joint—undivided interest in the TIC Account.[1]

Each of the Four Customers meets the definition of "customer" in the Securities Investors Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq*. ("SIPA"), because each customer is a separate person or entity with a direct interest in the TIC Account. By definition, a tenants-in-common form of ownership is made up of individual tenants, yet the Trustee failed to either

---

[1] Jonathan E. Felder and Jeffrey D. Felder acted in their individual capacities with respect to their assets. Deborah Felder acted as a joint owner with respect to the assets shared with her husband, Richard Felder. Richard Felder acted as a joint owner with respect to the assets shared with his wife and acted as President of The Richard and Deborah Felder Foundation with respect to the Foundation's assets.

recognize or determine who the tenants were when adjudicating the four claims relating to the TIC account.  Instead, the Trustee wrote in the determination letters for Jonathan Felder (Claim No. 001463), Jeffrey Felder (Claim No. 001515), and the Richard and Deborah Felder Foundation (Claim No. 001369), each dated November 19, 2010, that "because you did not have an account, you are not a customer of BLMIS under SIPA."  The Trustee has yet to determine the claim for the fourth tenant, Richard and Deborah Felder.[2]  And the only claim that the Trustee allowed was a claim addressed to the TIC Account (Claim No. 001513), but the TIC Account did not file a claim.  To the extent that the Trustee believes that he adjudicated Richard and Deborah Felder's claim by determining a claim for the TIC Account as a whole, this logic is flawed as it fails to recognize the existence of the Four Customers within the TIC Account.

Although the Trustee provided no reasoned decisions for his denial of the Four Customers' claims, the Trustee effectively asserts that a claimant must be listed in the debtor's records as a named account holder in order to be a "customer."  That assertion is not correct and should be rejected.  SIPA does not restrict advances to those who hold accounts, but rather provides coverage to anyone who meets the definition of the term "customer."  Accordingly, the Trustee's determination of Claim Nos. 001369, 001463, and 001515 should be reversed.  The Trustee should also recharacterize Claim No. 001513 as a claim by Richard and Deborah Felder, not the TIC Account.

---

[2] The Four Customers' objections are timely pursuant to an agreement between undersigned counsel and counsel for the Trustee.  Richard and Deborah Felder's objection is timely because the Trustee has yet to determine that claim, and it was only revealed that the Trustee may have mischaracterized that claim as Claim No. 001513 upon receipt of the claims for the other three of the Four Customers.

## II. OBJECTIONS

A. **THE TIC ACCOUNT IS NOT A "CUSTOMER" UNDER SIPA**

To qualify for an advance from the Securities Investor Protection Corporation ("SIPC"), the claimant must be a "customer." *See* 15 U.S.C. § 78fff-3(a). The term "customer" is defined under SIPA to include "any person who has deposited cash with the debtor for the purpose of purchasing securities." 15 U.S.C. § 78lll(2). Although SIPA does not define the term "person," the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the "1934 Act"), does, and the provisions of the 1934 Act "apply as if [SIPA] constituted an amendment to, and was included as a section of, such Act." 15 U.S.C. § 78bbb. Under the 1934 Act, "person" is defined in Section 3(a)(9) as follows: "[t]he term 'person' means a natural person, company, government, or political subdivision, agency, or instrumentality of a government." 15 U.S.C. § 78c(a)(9).

"Tenancy in common is a form of ownership in which each cotenant owns a separate fractional share of undivided property." 20 Am. Jur. 2d Cotenancy and Joint Ownership § 32. A tenant-in-common account does not meet the definition of a "person" as used in SIPA's definition of "customer" because it is not a "natural person, company, [or] government . . . ." Instead, it is merely a recognized legal conduit through which multiple natural persons or companies may jointly own personal property, such as an account holding securities. The Trustee's decision to accord "customer" status to the TIC Account, rather than to the tenants within the account, is error and is inconsistent with the plain language of SIPA and the 1934 Act.

B. **EACH OF THE FOUR TENANTS IN THE TIC ACCOUNT IS A "CUSTOMER" UNDER SIPA**

The Four Customers each individually satisfy all of the elements of the definition of "customer" under SIPA. *See* 15 U.S.C. § 78lll(2). Each tenant is a "person," *see* 15 U.S.C. §

78c(a)(9), and "has deposited cash with the debtor for the purpose of purchasing securities," 15 U.S.C. § 78lll(2). None of the Four Customers falls within an exception to the definition of "customer." *See* 15 U.S.C. 78lll(2)(A) & (B).

Moreover, the Four Tenants within the TIC Account are the "customers" contemplated by SIPA because: (1) SIPA does not require that an investor have an account in his or her name in order to gain "customer" status under SIPA; (2) SIPA specifically contemplates that a claimant may establish "customer" status using means other than the books and records of BLMIS; and (3) the Four Customers have come forward with evidence that conclusively demonstrates that they are the tenants in the TIC Account; the Trustee has refused to consider such evidence.[3]

1. SIPA Does Not Require that a "Person's" Name be Listed in the Debtor's Records as an Account Holder to Qualify as a "Customer"

As discussed above, a "customer" of the debtor includes "any person who has deposited cash with the debtor for the purpose of purchasing securities." 15 U.S.C. § 78lll(2). Contrary to this statutory language, the Trustee has manufactured a second hurdle not found in either SIPA or the relevant case law—a requirement that a person have his, her, or its name on an account in the debtor's records in order to be a "customer." Simply put, this supposed requirement does not find any backing in SIPA, and as discussed in the following section, is contradicted by other

---

[3] It is critical to note that the issue presented here is not the same issue that was previously identified to the Court as the customer issue that was briefed extensively following the Trustee's Customer Motion. (*See* Doc. 2205, Court's Scheduling Order regarding the Customer Motion.) The Four Customers' claims were excluded from the Customer Motion because they raise a distinct issue: whether under any circumstances there can be more than one "customer" housed in a single account held on the books of a debtor. While the answer to that question is yes, it is a question of first impression that has never been squarely addressed since the passage of SIPA in 1970. The issue in the Customer Motion, by contrast, has been parsed in a number of cases, most notably *Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314, 1317–20 (2d Cir. 1976) ("*Morgan*"). For the reasons discussed below, *Morgan* does not apply to the facts here because none of the concerns discussed by the *Morgan* court are present in the TIC Account.

statutory language.

Indeed, it is easy to see how the Four Tenants fit the definition of "customer" by comparing them to another group of commonly discussed claimants—those who invested through so-called feeder funds and whose claims were subject to review in the Customer Motion (discussed above at footnote 2). The feeder fund investors did not "deposit[] cash with the debtor," but instead deposited cash with a third-party entity that then turned around and invested with BLMIS. Here, similar logic does not apply. The Four Tenants did not invest with a third-party entity; they invested directly with BLMIS through the TIC Account. And when the Four Tenants made additional contributions to the TIC Account, each tenant deposited those funds directly though their agent with BLMIS. Of course this can only be the case because the TIC Account does not exist independently as an entity, it is merely a means to jointly own property.

In the briefing of the Customer Motion, SIPC and the Trustee relied on *Morgan* to justify the decision to treat only the feeder funds, and not the investors in those funds, as distinct "customers." In *Morgan*, the bankruptcy court and the district court ruled that one hundred and eight beneficiaries within a trust who had a single account with the debtor were all "customers" of the debtor within the meaning of SIPA. 533 F.2d at 1316. The Second Circuit disagreed, pointing to various factors including: (1) the funds in the account did not come from the beneficiaries; (2) none of the beneficiaries had the authority to give a buy or sell order; (3) the financial relationship was between the beneficiaries and their employer, not the beneficiaries and the debtor; (4) the number and identity of the beneficiaries was something only know by the beneficiaries' employer; (5) the account was in the name of the trustees; and (6) the trustees had the exclusive power to entrust the trust assets. *Id*. at 1318. Not one of the justifications for denying "customer" status to the trust beneficiaries in *Morgan* applies to the situation here.

Unlike *Morgan*, here: (1) the funds in the TIC Account came directly from the Four Tenants who owned distinct separate fractional amounts; (2) BLMIS was informed at the creation of the TIC Account, and again when the fourth tenant was added, of the identity of the tenants and it was BLMIS that suggested the tenants-in-common structure. Each tenant had authority to act with respect to his, her, or its separate amounts by requesting a redemption directly from BLMIS; (3) the financial relationship for each of the Four Customers was directly with BLMIS through the TIC Account. BLMIS knew of the multiple tenants, but did not record their identities in the account name as the distribution of the TIC Account was handled by the tenants, not BLMIS; (4) as mentioned above, the number and identity of the tenants was known to BLMIS, and is reflected in the Four Tenants' books and records; (5) the account was held as a tenants-in-common account, signaling to any observer that there were multiple tenants in the account; and (6) as discussed, each of the Four Tenants had exclusive authority with respect to his, her, or its share of the TIC Account.

Taken together, these facts demonstrate that the Trustee's blanket determination—that any "person" without their name on a BLMIS account could under no circumstances be a "customer"—is unjustified. While there are certain types of accounts for which this holds true, such as those who invested through feeder funds, the same logic does not extend to the situation presented here where there was an account holding multiple customers, and the account was plainly identified as such. The fact that the Four Tenants' names are not all in the account name simply shifts the burden to the Four Tenants to come forward with evidence demonstrating that they were in fact the tenants identified in the account.

2. <u>SIPA Specifically Contemplates that a Claimant May Establish "Customer" Status Using Means Other Than the Books and Records of BLMIS</u>

In sharp contrast to the Trustee's suggestion otherwise, SIPA expressly provides for

situations where a "customer's" name does not appear in the debtor's records by providing that the obligations to "customers" may be either "ascertainable from the books and records of the debtor" or "*otherwise established to the satisfaction of the trustee*." 15 U.S.C. §78fff-2(b).  If "customers" were limited to those "persons" whose names appear on books and records of the debtor, then the phrase "otherwise established to the satisfaction of the trustee" would be rendered meaningless, something prohibited by the cannons of statutory interpretation. *See DeLaRosa v. Peake*, 515 F.3d 1319, 1322 (Fed. Cir. 2008) ("It is a long-held tenet of statutory interpretation that one section of a law should not be interpreted so as to render another section meaningless.").

Additional evidence of SIPA's intent to cover more than simply named account holders is § 78fff-3(a)(5), which provides that, where a broker, dealer, or bank carried out transactions with the debtor for customers of the broker, dealer, or bank, each such customer is deemed a separate "customer" of the debtor.  There is no requirement under § 78fff-3(a)(5) that the books and records of the debtor establish the existence of these "customers" who are actually customers of a third-party broker, dealer, or bank.  Instead, § 78fff-3(a)(5) explicitly provides that the "customer" may be established by reference to "the books and records of a broker or dealer or bank, or otherwise."  The TIC Account is an even more direct investment with the debtor as contrasted with the situation described in § 78fff-3(a)(5), and SIPA's conferral of "customer" status on customers of a third-party broker, dealer, or bank is a far more liberal conferral of "customer" status that that requested by the Four Customers.

In short, SIPA nowhere provides that there can be only one "customer" per account.  Indeed, under SIPA Section 78fff-3(a)(5), it is clear that there is no such limitation.  Here, each of the Four Tenants, as a matter of both fact and law, meets the definition of "customer" with

respect to the TIC Account.

### 3. The Trustee Has Failed to Consider Evidence Demonstrating the Existence of the Four Customers

After the BLMIS bankruptcy claims procedure was announced, the Four Customers filed timely claims with the Trustee accompanied by bank records, tax returns, and contemporaneous accounting records. These records prove conclusively the existence of the Four Customers in the TIC Account. Under 15 U.S.C. §78fff-2(b), these submissions should have been more than sufficient to "otherwise establish[] to the satisfaction of the trustee" the existence of the Four Customers. To the extent that the Trustee requires additional evidence to substantiate the Four Customers' existence, the Four Customers stand ready to supply such information and documentary evidence.[4, 5]

### III. RELIEF REQUESTED

WHEREFORE, the Four Customers respectfully request that this Court order the following relief:

    a.    Reverse the denial of Claim Numbers 001369, 001463, and 001515 and remand these claims to the Trustee for further consideration of the evidence previously submitted by the Four Customers and any additional evidence needed to verify the existence of the customers;

    b.    Order the Trustee to adjudicate the claim filed by Richard and Deborah Felder;

---

[4] Although the Four Customers believe that they have submitted sufficient documentary evidence to support the Trustee's determination that there were, in fact, four "customers" in the TIC Account, the Four Customers reserve the right to submit any additional evidence to the Trustee should this matter be remanded for additional consideration of the Four Customers' claims.

[5] As an additional objection, the Four Customers object to the Trustee's cash in/cash out analysis to the extent that it includes legitimate investment returns distributed by BLMIS before Madoff began his fraud. To date, the Four Customers are not aware of any determination regarding the start date of the fraud. Since the Trustee's records for the predecessor to the TIC Account date back to 1984, any future determination that the fraud began in 1984 or later should result in an adjustment to the cash in/cash out analysis for the Four Customers.

  c. Order the Trustee to reconsider the determination of Claim Number 001513 in light of the reversal of Claim Numbers 001369, 001463, and 001515;

  d. Any other relief that the Court deems just and proper.

Dated: February 19, 2011         Respectfully submitted,
   Denver, Colorado

                *S/Jeffrey D. Felder*
                Jeffrey D. Felder, CO Bar No. 38333
                410 Seventeenth St., Suite 2200
                Denver, Colorado 80202
                T: 303.223.1205
                F: 303.223.8005
                E-mail: jfelder@bhfs.com

                *Attorney for The Richard and Deborah Felder Foundation, Jonathan E. Felder, and Jeffrey D. Felder*