# EXHIBIT A

# FORM OF AGREEMENT BETWEEN
# THE TRUSTEE, MEESCHAERT AND CERTAIN OTHER ENTITIES

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** is entered into on 22 February 2011 between:

(1)     **FINANCIERE MEESCHAERT SA** ("**FM**") of 12 Rond-Point, des Champs Elysées, 75008, Paris, France;

(2)     **MADOFF SECURITIES INTERNATIONAL LIMITED** ("**MSIL**") (acting by its joint liquidators) of 30 Finsbury Square, London, EC2P 2YU;

(3)     **MESSRS HOSKING, AKERS AND BYERS** (as joint liquidators of MSIL) (the "**Joint Liquidators**") of 30 Finsbury Square, London, EC2P 2YU;

(4)     **THE UNITED STATES DEPARTMENT OF JUSTICE, SOUTHERN DISTRICT OF NEW YORK** (the "**USAO, SDNY**") of One St. Andrews Plaza, New York, New York 10007;

(5)     **MR IRVING PICARD** (as the trustee (the "**Trustee**") in bankruptcy of Bernard L. Madoff Investment Securities, LLC ("**BMIS**")) of Baker Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111.

Parties means the above parties to this Settlement Agreement and "Party" means any one of them.

The following terms shall mean the following in this Settlement Agreement:

(a)     The "**Cayman Islands Claim**" shall mean Cause No 208 of 2009 before the Grand Court of the Cayman Islands brought by MSIL against Yacht Bull Corporation ("**YBC**"), FM intervening;

(b)     The "**English Claim**" shall mean Claim No 11527 of 2008 before the Chancery Division of the English High Court brought by MSIL (acting by its Joint Liquidators) against YBC and FM;

(c)     the "**French Claim**" shall mean claim reference RG no. 09/23950 begun in the Commercial Court of Antibes by FM against YBC and Ruth Madoff (nee Alpern), (now transferred to the Commercial Court of Paris) notified to MSIL and Bernard Madoff and related proceedings commenced by FM in France pursuant to which the Yacht was arrested by FM;

(d)     the "**Injunction Proceedings**" shall mean Claim No 2010 Folio 685 before the Commercial Court of the English High Court brought by FM against the Joint Liquidators and YBC;

(e)     the "**Yacht**" shall mean the BULL registered with the Cayman Islands Register of British Ships under reference 740064.

**WHEREAS**

(A)     The Yacht is currently registered to YBC;

(B)     By various orders, all rights, titles, and interest of Bernard L. Madoff and Ruth Madoff in Yacht and YBC have been forfeited to the USAO, SDNY;

(C)     MSIL asserts in the English Claim and in the Cayman Islands Claim that it is the owner of the Yacht;

1

(D)  The Joint Liquidators' claims for certain relief against FM in the English Claim are presently stayed;

(E)  FM is suing YBC and its former owner, Ruth Madoff, in the French Claim for damages arising out of their alleged participation in the Ponzi scheme fraud perpetrated by Bernard Madoff and others;

(F)  On 5 June 2010 with the consent of YBC, the Trustee and the Joint Liquidators caused the yacht to leave Antibes and sail to Gibraltar, where the Yacht is now moored;

(G)  In support of the French Claim, FM obtained a Freezing Order (in the Injunction Proceedings) against the Joint Liquidators and YBC restraining the sale or transfer of the Yacht until final determination of the French Claim;

(H)  Upon the Joint Liquidators giving undertakings to the English High Court on 29 June 2010 the Freezing Order was discharged;

(I)  The Joint Liquidators have applied to be released from their undertakings on the ground that the Freezing Order ought never to have been obtained, which application was listed for hearing on 17-18 January 2011 and has been vacated pending execution of this Settlement Agreement;

(J)  The parties have agreed to compromise all claims including the English Claim, the French Claim and the Cayman Islands Claim and the Injunction Proceedings on the terms set out in this Settlement Agreement.

**IT IS NOW AGREED AS FOLLOWS:-**

1  In full and final settlement of the various disputes between them relating to the Yacht including but not limited to those in the English Claim, the Cayman Islands Claim (insofar as it concerned the intervention of FM) and the Injunction Proceedings and in consideration of the various covenants set out in this Settlement Agreement and in consideration of the payment by FM of USD$500,000 to MSIL to be held in a separate account and thereafter transferred to the Trustee on the first distribution of assets or payment of claim from MSIL to BMIS:

   (a)  FM agrees to discontinue the French Claim against the Yacht and agrees not to issue any further claims or proceedings anywhere in the world relating to the Yacht and MSIL agrees not to make any claim for costs in respect of such discontinuance;

   (b)  FM consents to the release of the undertakings by the Joint Liquidators given in the Injunction Proceedings;

   (c)  FM agrees to the deletion of paragraph 34 of the First Affidavit of David Malamed sworn on 14 June 2010 and made in the Injunction Proceedings;

   (d)  FM unconditionally withdraws any and all allegations of criminality (including those made in the Application Notice issued on 10 January 2011) against MSIL and the Joint Liquidators and each of them relating to the removal of the Yacht from French waters and waives any and all rights previously reserved in that regard. FM further agrees that it will not repeat them or make any complaint or lay any information in respect of them to any prosecuting or other regulatory

2

authority in France or in the United Kingdom or elsewhere for the purposes of taking any action, whether criminal, disciplinary or otherwise, against MSIL and/or the Joint Liquidators in respect of the removal of the Yacht as described above;

(e) FM is hereby barred from asserting any claim against the United States or any of its agents and employees, including the Federal Bureau of Investigation, the Internal Revenue Service, the Department of Labor, the Securities and Exchange Commission, the United States Marshals Service, and the United States Attorney's Office for the Southern District of New York, in connection with, or arising out of, the United States' efforts to forfeit the Yacht and, directly or indirectly, any action or position in litigation involving the Yacht taken by the United States. For the avoidance of doubt this does not prevent FM from defending itself in any proceedings commenced against it in the United States.

(f) Upon payment and issuance of the final, dispositive order, the United States Attorney's Office for the Southern District of New York (the "Releasor") agrees to release and refrain from instituting, directing, or maintaining any and all civil claims under the asset forfeiture and/or money laundering statutes that the United States has asserted or could assert against FM or each of its respective officers, employees, partners, agents, predecessors, successors, assigns, heirs, trustees, and representatives (the "Released Parties"), in connection with FM's specific conduct regarding the Cayman Islands Claim, the English Claim, the French Claim, and the Injunction Proceedings (the "Covered Conduct"). Notwithstanding the foregoing and without prejudice to clause 2 of this agreement, the following are specifically reserved and excluded from the scope and terms of this paragraph as to any entity or person: (a) criminal liability; (b) any claims arising under Title 26, U.S. Code (Internal Revenue Code); (c) any claims other than those expressly released herein; and (d) any claims based upon such obligations as are created by this agreement.

(g) FM withdraws its intervention in the Cayman Islands Proceedings and MSIL agrees not to make any claim for costs in respect of such withdrawal and to indemnify FM in respect of any such claim as YBC shall properly make in respect of costs related to such withdrawal;

(h) FM agrees not to intervene in or oppose in any other way any claim made by MSIL against YBC and/or Ruth Madoff including (but not limited to) the English Claim;

(i) FM and the Joint Liquidators shall sign and file consent orders in the forms set out in **Appendix 1, 2 and 3** in the English Claim, the Injunction Proceedings and the Cayman Islands Claim respectively within 5 business days;

(j) The Joint Liquidators, USAO, SDNY and YBC agree to compromise the Cayman Islands Claim by consenting to the rectification of the Cayman Register of British Ships to show MSIL as the owner of the Yacht.

2  Each of the Parties, except for USAO, SDNY as described below, agrees not to sue any other Party in relation to any acts regarding or related to the Yacht (including, but not limited to, claims made in legal proceedings) and

3

any and all such claims demands, actions, causes of action, suits, sums of money, accounts, covenants, agreements, contracts and promises, of every kind and nature whatsoever, in law or in equity, whether sounding in contract, tort or otherwise, and whether arising in civil or criminal proceedings, arising from the beginning of the world through to the date of this Settlement Agreement, whether or not they have been subject to dispute, and whether known or unknown, and whether or not discoverable, which a Party had, now has, or may have the against any other Party or Parties are hereby released. For the avoidance of doubt, none of the Parties shall:

(a) file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action, or matter or seek to recover damages or to seek equitable relief and or criminal sanctions against any other Party on any of the claims released or withdrawn above; and/or

(b) directly or indirectly aid any other person in taking any act prohibited by Paragraph (a);

(c) for purposes of this paragraph, USAO, SDNY, shall not be considered a Party.

3   If, contrary to this Settlement Agreement, any Party, other than the USAO, SDNY, sues or directly or indirectly aids any other person to sue another Party in respect of the matters contained in this Settlement Agreement, then the Party sued or otherwise proceeded against shall be indemnified by the other Party initiating such process against any and all losses suffered as a result of that Party being sued or proceeded against.

4   This agreement is expressly conditioned on the representation and commitment of the Joint Liquidators that the Settlement Amount will be used to compensate victims of the fraud perpetrated through BMIS, and will be distributed by or under the administration of the Trustee overseeing the liquidation of BMIS pursuant to a plan of distribution approved by the United States Bankruptcy Court, Southern District of New York, and that no part of the Settlement Amount will be used for attorneys fees, costs, or any other obligation incurred in connection with the liquidation of MSIL or for any other purpose.

5   For the avoidance of doubt, the claim(s) (if any) which FM may have in the consolidated bankruptcy case of Bernard Madoff and BMIS shall be unaffected by this Settlement Agreement.

6   Each Party represents and warrants to the other that the execution and delivery of this Settlement Agreement by such Party and the performance of its obligations under this Settlement Agreement have been duly and validly authorised and do not breach any law or statute applicable to such Party or breach or cause any default (howsoever defined) under any agreement, contract or deed to which such Party is a party, and that all corporate authorities, governmental and third party consents required for the execution and delivery of this Settlement Agreement by such Party and the performance of its obligations under this Settlement Agreement have been obtained, save in respect of any sanction required for the compromise of the English Claim by MSIL pursuant to Section 167 of the Insolvency Act 1986.

7   No person who is not a party to this Settlement Agreement shall be entitled to the benefit of any provision of this Settlement Agreement as a third party.

8   This Settlement Agreement constitutes the whole agreement between the Parties as to the subject matter hereof and no agreement, representations or warranties relating to such subject matter other than those set out herein are binding on the Parties.

9   No amendment may be made to this Settlement Agreement unless it is in writing and signed by each of the Parties. This Settlement Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Settlement Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

10  Each party to this Settlement Agreement will bear its own costs and attorneys' fees.

11  This Settlement Agreement is governed by English law. Any dispute arising out of or in connection with this Settlement Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by English language arbitration in London under the rules of the LCIA.

12  The Parties, other than USAO, SDNY, agree to keep the terms of this Settlement Agreement strictly confidential and agree not to disclose, communicate or make otherwise public the same to anyone (save for professional advisors or otherwise as may be required to be disclosed by law).

13  A reference to a Party includes a reference to such Party's permitted predecessors, parent companies, affiliates, subsidiaries, shareholders, directors, officers, employees, agents, policyholders, successors and assigns.

**IN WITNESS WHEREOF,** the undersigned have on this day set forth below duly executed this Assignment and Release, intending to be legally bound hereby.

**Financiere Meeschaert SA**

Address:
Financiere Meeeschaert SA
12 Rond-Point, des Champs Elysées
75008 Paris - France

By: _____
Name:
Title:

With copies to:
Gide Loyrette Nouel A.A.R.P.L.
26 cours Albert 1er
75008 Paris - France
Attention: David Malamed
Facsimile No.: +33 (0)1 40 75 69 14

Gide Loyrette Nouel LLP
125, Old Broad Street
London EC2N 1AR
Attention: Roger Kennell

Sworn and subscribed before me this
_____ day of _____, 20___.

_____
Notary Public

[FM SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

6

**Madoff Securities International Limited by and through its Joint Liquidators**

Address:
Madoff Securities International Limited
c/o Grant Thornton LLP
30 Finsbury Square
London. EC2P 2YU
Attention: Stephen Akers
Facsimile No.: 44 (0)20 7814 4308

By: _____
Name:
Title:

Sworn and subscribed before me this
_____ day of _____, 20___.

_____
Notary Public

[MSIL SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

Joint Liquidators of Madoff Securities International Limited

Address:
Grant Thornton LLP
Messrs Hosking, Akers and Byers
30 Finsbury Square
London. EC2P 2YU
Attention: Stephen Akers
Facsimile No.: 44 (0)20 7814 4308

By: _____
Name:
Title:

Sworn and subscribed before me this
\_\_\_\_ day of _____, 20\_\_.

_____
Notary Public

[JOINT LIQUIDATOR SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

                                              The United States Department of Justice Southern District of New York

Address:
The United States Department of Justice,    By: _____
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza    Name:
New York, NY 10007    Title:
Attention: Barbara Ward
Facsimile No.: (212) 637-0421


Sworn and subscribed before me this
____ day of _____, 20__.


_____
             Notary Public


[USAO, SDNY SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza

New York, New York 10111
Facsimile No.: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: John Moscow
Facsimile No.: (212) 589-4201

The Trustee for the liquidation proceedings of Bernard L. Madoff Investment Securities LLC and the substantively consolidated bankruptcy case of Bernard L. Madoff

By: Irving H. Picard, the Trustee for the liquidation proceedings of Bernard L. Madoff Investment Securities LLC and the substantively consolidated bankruptcy case of Bernard L. Madoff

_____
Irving H. Picard

Sworn and subscribed before me this
_____ day of _____, 20___.

_____
Notary Public

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]