Hearing Date: March 16, 2011 at 10:00 a.m.
Objection Deadline: March 2, 2011 at 10:00 a.m.

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Mark A. Kirsch (MK-7806)
Marshall R. King (MK-1642)
Gabriel Herrmann (GH-2436)

*Attorneys for UBS AG*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>     Plaintiff.<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>     Debtors. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

## UBS AG'S OBJECTION TO THE TRUSTEE'S MOTION FOR ENTRY OF LITIGATION PROTECTIVE ORDER

  UBS AG ("UBS") respectfully submits this objection to the Motion (the "Motion") of Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff, for Entry of a Litigation Protective Order (the "Litigation Protective Order") (Docket No. 3819). In support of this Objection, UBS respectfully states as follows:

**PRELIMINARY STATEMENT**

1. UBS fully supports the Trustee's goal of implementing a fair and workable protective order that "will facilitate litigation and discovery, while protecting legitimate privacy concerns of parties." Motion ¶ 12. But, unfortunately, the "Litigation Protective Order" proposed by the Trustee accomplishes none of these goals. Instead, the Trustee's proposal would:

- unfairly vitiate the protections of the existing protective order on which UBS – and, presumably, hundreds (if not thousands) of other parties – relied when producing documents and providing information to the Trustee;

- improperly exclude broad categories of documents from ever being designated as "Confidential," regardless of whether they might otherwise qualify under the terms of the proposed order, section 107(b) or (c) of the United States Bankruptcy Code, Bankruptcy Rules 9018 and 9037, or other applicable law;

- permit the Trustee the unfettered right to disclose UBS's confidential information to over 4,000 parties, including some of UBS's direct competitors, as well as any additional parties whom the Trustee may choose to sue; and

- allow the Trustee to disclose confidential information *to anyone in the world*, provided the Trustee is engaged in certain vague, ill-defined activities.

2. In seeking this relief, the Trustee fails to make any showing of extraordinary circumstances or compelling need, and thus fails to meet the well-settled standard governing motions to modify an existing protective order. Nor, under the present circumstances, could he possibly make such a showing.

2

3. For these and the other reasons explained below, absent significant modifications to the proposed Litigation Protective Order, the Trustee's Motion should be denied.

## BACKGROUND

4. On December 18, 2009, the Trustee submitted to this Court a Motion for Entry of Protective Order (Docket No. 1093). At the time the Trustee filed his motion, he had already commenced fourteen adversary proceedings related to this action, and he "expect[ed] to commence additional adversary proceedings in the future." Trustee's Motion for Entry of Protective Order, ¶ 6.

5. On February 3, 2010, following his "negotiations with various constituents," the Trustee submitted an amended proposed protective order. Notice of Filing of Amended Proposed Protective Order (Docket No. 1848), at 2.

6. On February 16, 2010, this Court entered a protective order (Docket No. 1951, the "Existing Protective Order"), which adopted, nearly *verbatim*, the amended proposed protective order proffered by the Trustee.[1]

7. The Existing Protective Order permits a party producing information to designate as "CONFIDENTIAL" "any documents, testimony, and other information," provided that

> (a) in the good faith judgment of the party designating the material as **CONFIDENTIAL** such material contains proprietary business information, personal financial information, personal identifying information, or other information the disclosure of which would breach a legal or contractual obligation or (b) otherwise is subject to protection under section 107(b) or (c) of the United States Bankruptcy Code, Bankruptcy Rule 9018 and/or other applicable law.

Existing Protective Order ¶ 2 (defining "**CONFIDENTIAL** Material").

---

[1] The Existing Protective Order is attached as Exhibit C to the Trustee's Motion.

3

8. The Existing Protective Order prohibits the recipient of **CONFIDENTIAL** Material produced in one adversary proceeding from disclosing the information "in another adversary proceeding to which the producing party is not a party or in another proceeding in the Action; or … in a lawsuit separate and apart from this Action," unless the recipient first gives ten business days' notice to the producing party *and* the producing party fails to object within that period. *Id.* ¶ 25. If the producing party does object, "there shall be no disclosure of such **CONFIDENTIAL** Material absent further order of the Court." *Id.*

9. The Existing Protective Order provides a procedure – including meet-and-confer requirements – for resolving any disputes over whether **CONFIDENTIAL** designations are proper, or whether any of the restrictions on disclosure or use should be modified with respect to any specific **CONFIDENTIAL** Material. *Id.* ¶¶ 8, 22.

10. Finally, the Existing Protective Order provides that it "shall remain in full force and effect until further order of this Court at the close of Adv. Proc. No. 08-01789." *Id.* ¶ 28.

11. On October 21, 2010, on the brink of commencing "numerous additional adversary proceedings to avoid and recover … fictitious profits," the Trustee sought several modifications to the Existing Protective Order that were necessary, he claimed, because "the [Existing] Protective Order will apply to each of the Avoidance Actions as well as other avoidance actions the Trustee may commence that are not subject to the Avoidance Procedures." Trustee's Motion for Entry of an Order (I) Approving Litigation Case Management Procedures for Avoidance Actions and (II) Amending Global Protective Order (Docket No. 3058), ¶¶ 7, 20. The Court granted these modifications in an order dated November 10, 2010 (Docket No. 3141).

12. On several occasions subsequent to the entry of the Existing Protective Order, UBS and certain of its subsidiaries produced documents and information to the Trustee,

4

designating the documents and information as **CONFIDENTIAL** under the terms of the Existing Protective Order. UBS relied on the terms of the Existing Protective Order in producing the documents and information. Indeed, UBS's willingness to produce such documents, and its agreement to compromise regarding the scope of the productions, was expressly conditioned on the Trustee's agreement that the documents would be treated as **CONFIDENTIAL** under the Existing Protective Order. *See, e.g.*, Letter from M. King to D. Renner & B. Pergament, dated November 8, 2010 (attached hereto as Exhibit A). The Trustee accepted UBS's documents subject to those conditions.

### THE OBJECTIONABLE MODIFICATIONS IN THE TRUSTEE'S PROPOSED LITIGATION PROTECTIVE ORDER

13. Apparently dissatisfied with the Existing Protective Order that he and his counsel drafted and proposed, and prior agreements that they made, the Trustee now seeks to abrogate that order and those agreements[2] – and the protections they gave to UBS and others who produced information to the Trustee – and to replace them with a "Litigation Protective Order" that would provide significantly less protection to the information already produced and that will be produced in the future.

14. First, the Litigation Protective Order contains a less expansive definition of "**CONFIDENTIAL MATERIAL**" than does the Existing Protective Order. While Paragraph 2 of the Existing Protective Order allows designation of material containing "proprietary business information" and "personal financial information," the corresponding provision of the Litigation Protective Order (¶ 2) eliminates those categories, replacing them with the seemingly narrower

---

[2] *See* Litigation Protective Order ¶¶ 20 ("This Order shall supersede any and all other agreements previously entered into between the Trustee and any other party….") & 21 ("This Order supersedes the Protective Order entered by this Court on February 16, 2010….").

5

"trade secret or other confidential research, development, or commercial information." The Trustee offers no explanation for this proposed modification.

15. Second, the Litigation Protective Order purports to deny confidential treatment to broad categories of information, regardless of whether that information might otherwise fall within the definition of "**CONFIDENTIAL MATERIAL**" or might otherwise be protectable and require restrictions on use and disclosure under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other applicable law. Specifically, the Litigation Protective Order denies any protection to "names of BLMIS customers and subsequent transferees, BLMIS account numbers, amounts of withdrawals, redemptions, or transfers from and between BLMIS accounts, and transfers from BLMIS customers to subsequent transferees." Litigation Protective Order ¶ 4(e). Aside from (1) the sheer breadth of this exclusion – which appears to include *any* transfer by a customer of BLMIS, regardless of whether it relates in any way to BLMIS; and (2) its ambiguity – since there is no definition of "subsequent transferees" and the Trustee's allegations to that effect may be hotly contested – the Trustee's proposal is objectionable because the information falling within the exclusion may be *precisely* what requires protection and restrictions on disclosure. Under certain foreign laws, for instance, bankers and other professionals may be precluded from disclosing the identity of their customers and the nature of transactions undertaken on their behalf (perhaps including transfers to alleged "subsequent transferees"). There is no reason to include broad, blunderbuss exclusions to the definition of "**CONFIDENTIAL MATERIAL**"; any legitimate need for eliminating protections for certain documents should be dealt with on a document-by-document basis, as contemplated by Paragraphs 8 and 22 of the Existing Protective Order.

6

16. Third, as the Trustee highlights in his Motion, the Litigation Protective Order would allow the Trustee to "use productions made by one defendant or Producing Party in any litigation." Motion ¶ 9(d). At present, as the Trustee admits, this would authorize disclosure to "over four thousand (4,000) defendants located in over thirty (30) countries" (*id.* ¶ 6), and to innumerable others whom the Trustee may sue in the future. Many of these parties are banks or other financial institutions that are direct competitors of UBS; if information provided by UBS is sufficiently sensitive to warrant protection from disclosure, these other parties are among the precise persons who should *not* be entitled to receive it. And it is simply unrealistic to think that further disclosure by those 4,000 parties in 30 countries could be effectively monitored or prevented. Under the Existing Protective Order, no such disclosure is permissible absent consent of the producing party or further order of the Court. Existing Protective Order ¶ 25.

17. Finally, the Litigation Protective Order contains another broad exemption, purporting to allow the Trustee to make disclosure of **CONFIDENTIAL MATERIAL** to anyone in the world, so long as the material is "related to any customer's account" and the Trustee is engaged in, among other activities, "the determination of claims" or "the investigation of account or fund transfers, either directly or through subsequent transfers, between customer accounts to enable the Trustee to make claims determinations *or for investigation or litigation*." Litigation Protective Order ¶ 12 (emphasis added). Although this vague, syntactically-challenged sentence is virtually impossible to understand, it appears to give the Trustee *carte blanche* to disclose any information to anyone, so long as the information is "related to any customer's account" and the Trustee is engaged in "investigation or litigation." This paragraph, therefore, threatens to render any protections of the Litigation Protective Order entirely illusory.

7

## THE TRUSTEE HAS NOT AND CANNOT MEET THE LEGAL STANDARD FOR MODIFYING THE EXISTING PROTECTIVE ORDER

18.     "In the Second Circuit, a party seeking to modify a protective order must make a showing of 'some extraordinary circumstance or compelling need.'" *In re Almatis B.V.*, 2010 WL 4877868, at *6 (Bankr. S.D.N.Y. Nov. 24, 2010) (quoting *Medical Diagnostic Imaging, PLLC v. Care Core Nat'l, LLC*, 2009 WL 2135294, at *1 (S.D.N.Y. July 16, 2009)). "[I]f previously-entered protective orders have no presumptive entitlement to remain in force, parties would resort less often to the judicial system for fear that such orders would be readily set aside in the future." *SEC v. TheStreet.com*, 273 F.3d 222, 229-30 (2d Cir. 2001).

19.     It is, moreover, "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (internal quotation omitted).  In cases such as this, "the mere fact th[at] information was disclosed pursuant to a protective order suggests that reliance can be presumed." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 434 (S.D.N.Y. 1993).

20.     Here, the Trustee's Motion presents just such a circumstance.  UBS and many other parties have produced information to the Trustee subject to, and in reliance on, the terms of the Existing Protective Order.  They reasonably and justifiably expected that the Existing Protective Order would "remain in full force and effect until further order of this Court *at the close* of Adv. Proc. No. 08-01789."  Existing Protective Order ¶ 28 (emphasis added).  Moreover, the Trustee *agreed* to those protections by accepting productions conditioned on confidentiality.  *See* Ex. A.  In doing so, the Trustee was able to obtain documents and information that he would otherwise have been unable to obtain.

21.     The Trustee now seeks retroactively to negate the protections that UBS and others counted on, without making any showing of "compelling need" or "extraordinary circumstance" as to why the protections of the Existing Protective Order should be modified.[3]

22.     It is not enough that the Trustee seeks "to facilitate discovery and litigation, and ease the burden of the litigation on the Court and the parties." Motion ¶ 9. Similar reasoning has been rejected as insufficient to overcome the existing terms of a protective order. *See, e.g.*, *Medical Diagnostic Imaging*, 2009 WL 2135294, at *2 ("Plaintiffs fail[ed] to identify an extraordinary circumstance or a compelling need to justify modification" where sole justifications were that discovery would be facilitated and made less expensive and less duplicative; "the need for efficiency . . . is hardly an extraordinary or compelling circumstance"); *Maryland Cas. Co. v. W.R. Grace & Co.*, 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994) ("Although fostering judicial economy and avoiding duplicative discovery are laudable goals[,] . . . they hardly amount to extraordinary circumstances or compelling need."); *cf. Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979) (a protective order should not be modified "merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation").

---

[3] The only concrete example given by the Trustee of the need for modification concerns the difficulties resulting from the fact that all documents produced by the Trustee will be marked **CONFIDENTIAL** under the Existing Protective Order. *See* Motion ¶ 8; Existing Protective Order ¶ 3. Yet the Existing Protective Order also permits the Trustee to agree to eliminate the restrictions imposed on his own productions. *See* Existing Protective Order ¶ 18 ("The party that made the **CONFIDENTIAL** Material designation may agree at any time that some or all of the restrictions applicable to said **CONFIDENTIAL** Material may be reduced, modified or eliminated…."). In any event, the Trustee's desire to waive the restrictions on his own productions does not justify reducing the protections applicable to **CONFIDENTIAL** Material produced by others.

9

23. Moreover, the Trustee's justifications are strikingly similar to those he offered when seeking the Existing Protective Order. *See* Trustee's Motion for Entry of Protective Order, ¶ 16 (claiming that the Existing Protective Order would "create a uniform framework for the treatment of confidential information," "allow for the expeditious resolution of discovery-related issues," and "conserve the resources of both the parties involved and this Court"). Indeed, the fact that the Trustee himself sponsored the terms of the Existing Protective Order is ample enough reason to deny his request to modify it. *See Ionosphere*, 156 B.R. at 431 ("As a party to the stipulations which became the basis of the Protective Orders, ALPA cannot now object to the Protective Orders."). Given that the Existing Protective Order facilitated the Trustee's investigation by giving him access to information that otherwise would not have been produced, the Trustee simply should not be able to change the rules that he himself set.

## CONCLUSION

For the foregoing reasons, this Court should deny the Trustee's Motion for Entry of Litigation Protective Order.

Dated: New York, New York
March 2, 2011

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

 /s/ Marshall R. King
Mark A. Kirsch (MK-7806)
Marshall R. King (MK-1642)
Gabriel Herrmann (GH-2436)

200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for UBS AG*

10

**EXHIBIT A**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Marshall R. King
Direct: 212.351.3905
Fax: 212.351.5243
MKing@gibsondunn.com

Client: T 93292-00083

November 8, 2010

BY HAND

Deborah H. Renner, Esq.
Benjamin D. Pergament, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Re: *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*,
Adv. Pro. No. 08-10789 BRL

Dear Deborah and Ben:

I am enclosing a voluntary production of documents by UBS AG, pursuant to paragraphs 4 and 5 of my October 14, 2010 letter. The documents bear bates numbers UBS 000352 through UBS 000449. This production is being made subject to the following conditions:

1. This production is without waiver of any objections that UBS AG or other UBS entities may have to the subpoenas dated June 12, 2009 and December 15, 2009, and the fact of this production shall not be used by the Trustee against UBS AG or any other UBS entity in connection with any efforts to obtain additional documents.

2. If any document or information subject to a claim of attorney-client privilege, attorney work product, privacy rights, banking secrecy, or any other ground upon which production of such document or information should not be made is nevertheless inadvertently produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege, work product, privacy rights, banking secrecy, or other ground for withholding production to which UBS AG would otherwise be entitled. If a claim of inadvertent production is made with respect to any document or information then in the custody of the Trustee, the Trustee shall promptly return to UBS AG such document, and such document and information contained therein shall not be used for any purpose until further order of a court of appropriate jurisdiction, or further agreement of the parties.

3. The documents contained in this production are designated as CONFIDENTIAL pursuant to the Protective Order dated February 16, 2010.

If any of these conditions are not acceptable to you, do not access the documents contained on the enclosed disk, and promptly return it to us.

Brussels · Century City · Dallas · Denver · Dubai · London · Los Angeles · Munich · New York · Orange County
Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

Deborah H. Renner, Esq.
Benjamin D. Pergament, Esq.
November 8, 2010
Page 2

Please call me with any questions.

Very truly yours,

Marshall R. King