WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

*Attorneys for Defendants JPMorgan Chase & Co.,*
*JPMorgan Chase Bank, N.A., J.P. Morgan*
*Securities LLC and J.P. Morgan Securities Ltd.*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | SIPA LIQUIDATION |
| Plaintiff-Applicant, | No. 08-01789 (BRL) |
| v. | Substantively Consolidated |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-4932 (BRL) |
| Plaintiff, | |
| v. | |
| JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES LTD., | |
| Defendants. | |

## OBJECTION OF JPMORGAN TO TRUSTEE'S MOTION
## FOR ENTRY OF A LITIGATION PROTECTIVE ORDER

Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan

Securities LLC and J.P. Morgan Securities Ltd. (together, "JPMorgan"), object to the motion of

Irving H. Picard (the "Trustee") for entry of a Litigation Protective Order (the "Motion"), Docket

No. 3819, and respectfully state as follows:

### A.    Introduction

1.    Over the last fifteen months, JPMorgan has produced significant amounts

of confidential and proprietary information to the Trustee — including confidential information

relating to the bank's internal policies and procedures — in reliance upon the Trustee's

agreement, in place for over a year, not to share that information with JPMorgan's competitors or

other third parties.  By this Motion, the Trustee seeks to abrogate that agreement.

2.    The Motion also seeks to dilute, and in some cases eliminate altogether,

the protections afforded by the existing Protective Order in this case, including the provision of

that order stating that the Trustee's agreements with individual parties, including JPMorgan, are

to be respected.

3.    But there is a strong presumption against modification of protective

orders.  As the Second Circuit has held, "[w]here there has been reasonable reliance by a party or

deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent

a showing of *improvidence* in the grant of [the] order or some *extraordinary circumstance or*

*compelling need*.'"  *SEC* v. *TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (emphasis added)

(citation omitted).[*]

---

[*]    Rule 26(c) of the Federal Rules of Civil Procedure is applicable in this adversary
proceeding pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure.

4.       The Trustee has failed to meet this high burden.  Although JPMorgan agrees with the Trustee's purported goal of "facilitat[ing] discovery and litigation," the Trustee is not entitled to abrogate confidentiality arrangements that have been relied upon by JPMorgan and other parties, and is not entitled to walk away from a Protective Order that was entered to govern until "the close" of this adversary proceeding.  Accordingly, without significant revision to the proposed Litigation Protective Order, the Motion should be denied.

**B.       Background**

5.       On November 29, 2009, the Trustee served a Rule 2004 subpoena (the "Subpoena") on JPMorgan.  At that time, no protective order had been entered, and JPMorgan was unwilling to produce documents without a protective order or another agreement that would protect the bank's confidential and proprietary information.

6.       In response to the Trustee's insistence that JPMorgan's document production begin immediately, even before a protective order was entered, JPMorgan agreed to produce documents on an Attorneys' Eyes Only basis, with all documents designated Confidential, in anticipation of:  (1) prompt drafting of a protective order; (2) JPMorgan's review of the protective order; and (3) JPMorgan's agreement to the protective order or, if necessary to protect JPMorgan's confidential and proprietary information, supplementation of that protective order via a negotiated side letter (the "Side Letter") between the Trustee and JPMorgan.[*]

7.       This understanding between JPMorgan and the Trustee enabled JPMorgan to accommodate the Trustee's request that it produce documents expeditiously, without having to

---

[*] This agreement is memorialized in email correspondence between Meredith Turner of Wachtell, Lipton, Rosen & Katz and Seanna Brown of Baker Hostetler, dated December 18, 2009, attached hereto as Exhibit A (JPMorgan will "continue to produce on an Attorneys Eyes Only basis, with the understanding that [JPMorgan's] productions are subject to the future protective order and any modifications that we agree upon.")

wait until the Protective Order was entered or a Side Letter was fully negotiated and executed.

8.      On December 18, 2009, the Trustee filed a Motion for Entry of Protective Order.  Based on the parties' understanding and agreement that a Side Letter would be executed if necessary to preserve the confidentiality of certain documents produced by JPMorgan, JPMorgan did not object to the Trustee's proposed protective order.  On February 16, 2010, this Court granted the Trustee's motion and entered the Protective Order, Docket No. 1951.

9.      Following entry of the Protective Order, counsel for JPMorgan conveyed to counsel for the Trustee that the Protective Order, on its own, does not adequately protect JPMorgan's confidential information.  Among other things, the Protective Order is not sufficiently clear in preventing the Trustee from sharing JPMorgan's documents — including information about the bank's anti-money laundering policies and procedures, risk assessment strategy, and other trade secrets — with the bank's competitors.[*]

10.     In light of the inadequate protection provided by the Protective Order and consistent with the parties' previous agreement, counsel for JPMorgan confirmed the need to enter into a Side Letter agreement.  In response, counsel to the Trustee stated that "we do not have any issues with reaching a side agreement to allay your concerns.  If you would like to send us a proposed side agreement, we can take a look and go from there."  Counsel to the Trustee

---

[*]  The Protective Order gives the Trustee the ability to show confidential documents to all "parties."  ¶ 5(b).  The term "party," however, is not defined, and could be read to include third-party witnesses in the Adversary Proceeding against JPMorgan, all "parties" to the main SIPA proceeding pending in this Court, as well as "parties" to the Protective Order.  Although Paragraph 25 imposes some limits on the disclosure of "Confidential Information" produced in one adversary proceeding to parties in another adversary proceeding, the Protective Order is not clear as to whether the Trustee can share Rule 2004 discovery with "parties" to the main SIPA proceeding, or whether there are limitations on the Trustee's ability to share Rule 2004 or litigation discovery with third-party witnesses to an adversary proceeding.

further confirmed that the Trustee was "amenable to entering into a side agreement" if JPMorgan "deem[s] it necessary."*

11.    JPMorgan proposed a draft Side Letter to counsel for the Trustee on April 19, 2010.  Over the following months, the parties exchanged multiple drafts of that Side Letter and actively negotiated its terms.  During the course of those good faith negotiations, JPMorgan understood that the Trustee was on a tight schedule and preferred, until the Side Letter was finalized, to continue receiving productions that would be treated as Attorneys' Eyes Only and Confidential.

12.    JPMorgan made some twenty-two productions in response to the Subpoena.  Each such production was made pursuant to the parties' foundational understanding respecting confidentiality — including the clear understanding that the Trustee would enter into a Side Letter to protect disclosure of JPMorgan's confidential information.**

13.    Many of the documents produced by JPMorgan in these twenty-two productions contain proprietary and confidential information.  For example, JPMorgan has produced, among other documents:  (a) anti-Money Laundering policies, procedures, training materials, and internal reviews; (b) proprietary business strategy documents, including information related to JPMorgan's risk assessment approach, due diligence strategy, and evaluation of appropriate risk appetite; and (c) identifying information relating to clients other

---

* S. Brown emails to M. Turner, dated April 9, 2010 and April 15, 2010, excerpts attached hereto as Exhibits B & C.

** *See, e.g.*, M. Turner Ltr to S. Brown dated April 26, 2010, attached hereto as Exhibit D ("Please note that these documents have been stamped "Confidential," and that they are being produced on an Attorneys' Eyes Only basis following entry of a Protective Order by the Court and modification of that Order through a negotiated Confidentiality Side Letter, as discussed. We look forward to your comments on the proposed Confidentiality Side Letter circulated last week.")

than Madoff or Madoff-related parties.

14.     Throughout this process counsel for the Trustee accepted JPMorgan's documents subject to those designations and — as recently as last month — counsel for the Trustee assured JPMorgan that its designations would be applied and respected.[*]

15.     JPMorgan and the Trustee have continued to negotiate the final form of the Side Letter memorializing the parties' agreement.  Counsel for JPMorgan provided a final revised draft to counsel for the Trustee on September 30, 2010.  Since that time the Trustee has repeatedly confirmed that the Trustee would enter into a Side Letter and that the letter was nearly final.  For example, on November 17, 2010, counsel for the Trustee wrote to counsel for JPMorgan: "You are correct that it is our turn to get back to you on the side letter  . . .  As we have discussed, I think we are all o[n] the same page in terms of substance, it's just a matter of making sure the language conforms to our substantive understanding."[**]

16.     The draft Side Letter contains provisions governing the use and re-designation of JPMorgan's confidential and attorneys-eyes-only documents and, importantly, contains provisions ensuring that JPMorgan's proprietary information would not be shared with its competitors or other third parties.

17.     As entered by this Court, the operative Protective Order in this case recognizes the existence of agreements "entered into between the Trustee and [] other part[ies] regarding the confidentiality or non-disclosure of documents or discovery materials" — such as

---

[*] *See, e.g.*, J. Gabriel email to M. Turner dated February 3, 2011, excerpts attached hereto as Exhibit E ("Please understand that we have implemented special procedures to ensure the documents you have produced remain confidential until there is an agreement in place and documents are re-designated pursuant to that agreement.")

[**] J. Gabriel email to M. Turner, dated Nov. 17, 2010, attached hereto as Exhibit F.

that between the Trustee and JPMorgan — and *expressly leaves such agreements undisturbed*.

Protective Order ¶ 27.

18.    On February 1, 2011, the Trustee filed the instant Motion, which seeks an order that would "supersede" all previous agreements and understandings between the Trustee and third parties, including JPMorgan.  In addition, by letter dated February 18, 2011, counsel for the Trustee stated that going forward, the Trustee would not "entertain requests for side letters or supplemental confidentiality agreements."  J. Selby Ltr. to J. Savarese, dated Feb. 18, 2011, attached hereto as Exhibit G.  In the same letter, counsel for the Trustee also stated that the Litigation Protective Order proposed in the Motion would "supersede all confidentiality agreements entered into with any producing party — including the type of side letter contemplated by JPMorgan."  *Id.* at 2.

19.    Both the Motion and the February 18 Letter are inconsistent with the Trustee's conduct for over a year in negotiating the Side Letter and in recognizing JPMorgan's legitimate interest in protecting its proprietary and confidential information.

**C.    JPMorgan's Objections to the Proposed Modifications**

20.    The Proposed Order is objectionable for numerous reasons, most importantly because it decreases the protection applicable both to documents already produced and those to be produced in the future.

21.    First, the Proposed Order would unilaterally annul the existing understanding between JPMorgan and the Trustee — in place for *more than a year* — concerning the production and disclosure of confidential and proprietary information.  That is, *unlike* the existing Protective Order — which expressly *maintained* the pre-existing agreement between the parties — the proposed modification purports to "supersede any and all other

agreements previously entered into between the Trustee and any other party regarding the confidentiality or non-disclosure of documents or discovery materials." Proposed Order ¶ 20. In addition, the Trustee apparently seeks to invalidate existing confidentiality designations made "under those agreements" — such as JPMorgan's "Confidential" and "AEO" designations. *Id.*

22.     As the Second Circuit has observed, it is "presumptively unfair" to upset a party's settled expectations concerning the exchange of confidential information; such modifications "unfairly disturb the legitimate expectations of litigants." *SEC* v. *TheStreet.com*, 273 F.3d at 230. Yet that is precisely what the Trustee is seeking to do.

23.     If JPMorgan had known that the Trustee would not stand by his agreement to maintain the confidentiality of JPMorgan's documents, JPMorgan would not have produced those documents without seeking appropriate relief from the Court. *See id.* ("If protective orders were easily modified, [] parties would be less forthcoming in giving testimony and less willing to settle their dispute."); *see also In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 318 (D. Conn. 2009) ("Where parties have reasonably relied on these protective orders to ensure the confidentiality of their testimony and discovery documents— testimony that may not have otherwise been given or documents that may not have been produced in the absence of such an order—the Second Circuit has been hesitant to permit modifications that might "unfairly disturb the legitimate expectations" of the parties or deponents.) (quoting *TheStreet.com*, 273 F.3d at 230).

24.     JPMorgan's reliance upon the Protective Order entered over a year ago, as modified by its negotiated understanding with the Trustee, was entirely reasonable. Indeed, "the mere fact the information was disclosed pursuant to a protective order suggests that reliance can be presumed." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 434 (S.D.N.Y. 1993). Furthermore,

there is no express language in either the Protective Order or the parties' agreements limiting the time period for enforcement, anticipating potential modification, or containing specific provisions for modification.  To the contrary, the operative Protective Order explicitly states that it shall remain in "full force and effect until further order of this court *at the close* of Adv. Proc. No. 08-01789."  Protective Order ¶ 28 (emphasis added).

25.     Second, the Proposed Order is objectionable inasmuch as it would allow the Trustee to share information designated "Confidential" by the producing party (*e.g.*, proprietary business information and trade secrets) with all "parties, officers and employees of a party with responsibility for the party's participation in an Action, counsel representing the parties, and their litigation assistants, paralegals, secretaries or other clerical personnel and Agents[.]"  Proposed Order  ¶ 10(b).

26.     The Proposed Order defines the term "Action" as "this action and related adversary proceedings."  Thus, by its terms, the Proposed Order would permit the Trustee to disclose JPMorgan's confidential and proprietary information to *any* "party" (or its Agent) in any one of the *more than one-thousand* adversary proceedings that have been commenced by the Trustee.  Because JPMorgan's document production was made pursuant to a Rule 2004 Subpoena issued in the main SIPA proceeding, the Proposed Order could also be read to permit the Trustee to share information produced by JPMorgan with all "parties" to that proceeding — in other words, with nearly every major financial institution in New York.   The scope of potential disclosure is staggering.  Moreover, because certain of JPMorgan's competitors have been named as defendants in various of the adversary proceedings, and may be "parties" to the main SIPA case, the Trustee's proposed modification could permit disclosure of JPMorgan's confidential information *to its direct competitors* — including clearly proprietary procedures and

policies — which could result in severe irreparable harm. *See North Atlantic Instruments* v. *Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (affirming injunction granted to prevent disclosure of trade secret information to a company's competitor and observing that the "loss of trade secrets cannot be measured in money damages" because a "trade secret once lost is, of course, lost forever"). The Trustee has offered no reason why such sweeping disclosure is reasonable or necessary.

27.    Likewise, the Proposed Order purports to permit the Trustee to disclose "Confidential Material" to *anyone* so long is it is "related to any customer's account" and "in connection with the determination of claims." Proposed Order ¶ 12. Presumably, the Trustee's investigations and litigation are in large measure "related to" Madoff accounts and connected in some way to the determination of claims; indeed, this broad provision would seem to describe the Trustee's very role. That the Trustee seeks permission to disclose *confidential material* to *anyone* so long as that material relates to the Trustee's investigation of Madoff claims is wholly improper. Like Paragraph 10 of the Proposed Order, this provision would bless the Trustee's disclosure of JPMorgan's proprietary information to its competitors and numerous other third parties.

28.    The Proposed Order also significantly diminishes the protection provided by the notice provisions in Paragraph 25 of the operative Protective Order. Under those provisions, the Trustee is required to provide ten business days' notice to a producing party before disclosing Confidential Material in another adversary proceeding, and the producing party, or any customer to whom the Confidential Material relates, is afforded an opportunity to object. Protective Order ¶ 25. Under the parallel provision of the Proposed Order, however, no such notice is required. Proposed Order ¶¶ 10, 12. Nor does the Proposed Order provide for

objections to disclosure, *see id*, which are necessary to ensure that all parties can properly and

diligently ensure, with the Court's assistance, that their Confidential Material is not shared with

parties that should not receive it.

29.    Third, the Proposed Order improperly and narrowly defines "Confidential

Material" by providing sweeping and inappropriate categorical exclusions to the definition of

"Confidential Material," without regard to whether such information might otherwise qualify as

"Confidential" under the terms of Sections 107(b) or (c) of the Bankruptcy Code, Bankruptcy

Rules 9018 or 9037, or applicable law.  Specifically, the Proposed Order denies confidential

protection to "names of BLMIS customers and subsequent transferees, BLMIS account numbers,

amounts of withdrawals, redemptions, or transfers from and between BLMIS accounts, and

transfers from BLMIS customers to subsequent transferees."  Proposed Order ¶ 4(e).  This per se

exclusion, which would apply irrespective of particular circumstances or governing privacy laws,

is unnecessary and improper.

30.    Finally, the Proposed Order is vague and confusing because it fails to

address clearly the status of previously produced documents designated pursuant to the currently

operative Protective Order or other understandings.  As set forth above, the Proposed Order

narrows the definition of "Confidential Material."  It is unclear from the face of the Proposed

Order whether documents previously designated as "Confidential" will now, at the Trustee's

discretion, be re-designated and, if not, what meaning will attach to previous designations.  The

Proposed Order states that designations made pursuant to previous agreements are "subject to the

requirements and provisions of [the Proposed Order] regarding appropriateness of the

designation, restrictions on over-designation and process for removing designations," Proposed

Order ¶ 20, but does not identify how the re-designation process would take place.

D.    **Conclusion**

31.    Under 11 U.S.C. § 107(b), on request of a party in interest the Court
"shall" "(1) protect an entity with respect to trade secret or confidential research, development or
commercial information; or (2) protect a person with respect to scandalous or defamatory matter
contained in a paper filed in a case under [Title 11]."  And under Rule 9018 of the Federal Rules
of Bankruptcy Procedure, this Court has the power to "make any order which justice requires
(1) to protect the estate or any entity in respect of a trade secret or other confidential research,
development, or commercial information, [and] (2) to protect any entity against scandalous or
defamatory matter contained in any paper filed in a case under the Code."

32.    The Proposed Order is wholly inadequate to protect JPMorgan's
confidential and proprietary information, and would abrogate the fundamental understanding
under which JPMorgan has operated for more than a year in producing information on a
voluntary basis to the Trustee.

33.    Absent a showing of "some extraordinary circumstance or compelling
need," an operative protective order should not be modified.  *TheStreet.com*, 273 F.3d at 229.
"Although fostering judicial economy and avoiding duplicative discovery are laudable goals . . .
they hardly amount to extraordinary circumstances or compelling need."  *Maryland Cas. Co.* v.
*W.R. Grace & Co.*, 1994 WL 419787, at *3 (S.D.N.Y. 1994).  Without significant modifications
to the Proposed Order, the Trustee has failed to meet its burden.

34.    For the foregoing reasons, JPMorgan respectfully requests that this Court
deny the Trustee's Motion.

Dated:    New York, New York
          March 2, 2011

                                    Respectfully submitted,

*Of counsel:*                       WACHTELL, LIPTON, ROSEN & KATZ

Amy R. Wolf
Stephen R. DiPrima                  By: _____
Emil A. Kleinhaus                        John F. Savarese
Meredith L. Turner
                                    51 West 52nd Street
                                    New York, NY  10019
                                    Telephone:  (212) 403-1000
                                    Facsimile:   (212) 403-2000

                                    *Attorneys for Defendants JPMorgan Chase & Co.,*
                                    *JPMorgan Chase Bank, N.A., J.P. Morgan Securities*
                                    *LLC and J.P. Morgan Securities Ltd.*

# EXHIBIT A

**From:** Turner, Meredith L.
**To:** Brown, Seanna R. (Baker Hostetler LLP);
**Subject:** RE: Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (08 01789): Rule 2004 Subpoena
**Date:** Friday, December 18, 2009 1:09:51 PM

Thanks Seanna.  We'll continue to produce on an Attorneys Eyes Only basis, with the understanding that our productions are subject to the future protective order and any modifications that we agree upon.  The passwords have to be sent separately from the disks, for confidentiality purposes, but I can give them to you over email:

        REDACTED

And just as a heads-up, we'll be making an additional production today.

Thanks,
Meredith

**From:** Brown, Seanna R. [mailto:sbrown@bakerlaw.com]
**Sent:** Friday, December 18, 2009 12:30 PM
**To:** Turner, Meredith L.
**Subject:** RE: Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (08-01789): Rule 2004 Subpoena

Meredith,

We were planning on filing the protective order with the Court this week.  Because of the upcoming holidays, however, we didn't want the objections period to get lost in the shuffle for any who would file oppositions.  We are now planning to file it in the new year, with a hearing date of sometime around January 14.  Please let me know if you are amenable to the above time frame.

Also, the disks you sent me are password protected.  Do you know where I can find the password information?

Many thanks,
Seanna

**From:** MLTurner@WLRK.com [mailto:MLTurner@WLRK.com]
**Sent:** Friday, December 18, 2009 12:16 PM
**To:** Brown, Seanna R.
**Subject:** RE: Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (08-01789): Rule 2004 Subpoena

Seanna,

Just following up on the status of the Protective Order.  Has it been entered by the Court yet? I was hoping to take a look before making today's production, if possible, in order to determine whether an addition confidentiality stip is needed.

Thanks very much,
Meredith

---

**From:** Turner, Meredith L.
**Sent:** Tuesday, December 15, 2009 9:09 AM
**To:** Brown, Seanna R. (Baker & Hostetler LLP)
**Subject:** Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (08-01789): Rule 2004 Subpoena

Seanna,

I just wanted to follow up on our discussion last Friday about a Confidentiality Agreement. You had mentioned that one of your colleagues would reach out to me with the form agreement, but I haven't yet heard from anyone. As we're going to be making additional productions this week, I was hoping to get the Confi finalized as soon as possible, so wanted to touch base.

Thanks very much,
Meredith


Meredith L. Turner
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street, New York, NY 10019
212.403.1165 (ph)     212.403.2165 (fax)

*********************************************************************
Any tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax penalties and is not intended to be used or referred to in promoting, marketing or recommending a partnership or other entity, investment plan or arrangement.
*********************************************************************
Please be advised that this transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If you are not the intended recipient, please do not read, copy or re-transmit this communication. If you have received this communication in error, please notify us by e-mail (helpdesk@wlrk.com) or by telephone (call us collect at 212-403-4357) and delete this message and any attachments. Thank you in advance for your cooperation and assistance.

www.wlrk.com
*********************************************************************

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited.

# EXHIBIT B

| **From:** | Brown, Seanna R. (Baker Hostetler LLP) |
|---|---|
| **Sent:** | Friday, April 09, 2010 4:44 PM |
| **To:** | Turner, Meredith L. |
| **Cc:** | Gabriel, Jessie M. (Baker Hostetler LLP); Renner, Deborah H. (Baker Hostetler LLP) |
| **Subject:** | RE: Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (08-01789): Rule 2004 Subpoena |

Meredith,

We appreciate your response below regarding the additional custodians.  However, we have concerns regarding the completeness of the list provided, particularly in light of the fact that we do not have knowledge as to how you determined the "reasonableness" for inclusion on the list for any of those custodians.  As you can appreciate, we are seeking the production of all documents that may lead the discovery of admissible evidence, from **all** custodians with knowledge regarding Madoff and the nature of that relationship with JPMorgan.  I would request that you provide us a complete list of custodians that have knowledge or relevant documents so that we can determine the best way to proceed.  In a related vein, while the litigation hold letter sent by JPMorgan to its employees may be privileged, the recipient list is not.  We request that you also provide us with the recipient list of the hold letter as this may assist us in determining relevant custodians.

With regard to our discussion earlier this week relating to the specific deficiencies outlined in our March 23 letter, you indicated that you would produce those documents/missing attachments to the extent they exist, and conduct some additional searches.  There were also some spreadsheets to be produced, as well as a list of the date ranges for which you conducted searches for each custodian.  Do you know when we can expect those documents?

With regard to the protective order issue that we discussed, while we think that the protective order provides sufficient cover regarding confidentiality, we do not have any issues with reaching a side agreement to allay your concerns.  If you would like to send us a proposed side agreement, we can take a look and go from there.

Finally, I also wanted to alert you that we have received no documents authored or received by REDACTED .  While we realize that the bulk of his communications are privileged, certainly there could exist relevant documents that are not privileged.  Please confirm that you have searched Mr. REDACTED files and will produce any non-privileged documents.  If no such documents, or only a de minimus amount exist, we request that you produce a privilege log relating to those documents.

Thank you for your continued cooperation.

Regards,
Seanna

# EXHIBIT C

| | |
|---|---|
| **From:** | Brown, Seanna R. (Baker Hostetler LLP) |
| **Sent:** | Thursday, April 15, 2010 12:24 PM |
| **To:** | Turner, Meredith L. |
| **Cc:** | Gabriel, Jessie M. (Baker Hostetler LLP); Renner, Deborah H. (Baker Hostetler LLP) |
| **Subject:** | RE: Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (08-01789): Rule 2004 Subpoena |

Meredith,

I apologize for the delay in getting back to you.

We are looking into the March 26th and 29th productions to determine whether those documents relating to the litigation hold letter and    REDACTED    files are there.  We will let you know if we do not find them or need you to reproduce any portions of those productions.

As for the protective order, I believe that paragraphs 23-25 should allay your concerns.  Under the terms of that order, we will not produce confidential documents to third parties unless served with a valid subpoena or court order, of which you would be provided notice and given an opportunity to object prior to any such production.  We are amenable to entering into a side agreement, however, if you deem it necessary.

Please let us know when we can expect the production of additional documents as well as the complete custodian list.

Many thanks for your continued cooperation.

Seanna

# EXHIBIT D

## WACHTELL, LIPTON, ROSEN & KATZ

| | |
|---|---|
| MARTIN LIPTON | STEPHANIE J. SELIGMAN |
| HERBERT M. WACHTELL | ERIC S. ROBINSON |
| BERNARD W. NUSSBAUM | JOHN F. SAVARESE |
| LAWRENCE B. PEDOWITZ | SCOTT K. CHARLES |
| PAUL VIZCARRONDO, JR. | ANDREW C. HOUSTON |
| PETER C. HEIN | PHILIP MINDLIN |
| HAROLD S. NOVIKOFF | DAVID S. NEILL |
| KENNETH B. FORREST | JODI J. SCHWARTZ |
| MEYER G. KOPLOW | ADAM O. EMMERICH |
| THEODORE N. MIRVIS | CRAIG M. WASSERMAN |
| EDWARD D. HERLIHY | GEORGE T. CONWAY III |
| DANIEL A. NEFF | RALPH M. LEVENE |
| ERIC M. ROTH | RICHARD G. MASON |
| ANDREW R. BROWNSTEIN | DOUGLAS K. MAYER |
| MICHAEL H. BYOWITZ | MICHAEL J. SEGAL |
| PAUL K. ROWE | DAVID M. SILK |
| MARC WOLINSKY | ROBIN PANOVKA |
| DAVID GRUENSTEIN | DAVID A. KATZ |
| PATRICIA A. VLAHAKIS | ILENE KNABLE GOTTS |
| STEPHEN G. GELLMAN | DAVID M. MURPHY |
| STEVEN A. ROSENBLUM | JEFFREY M. WINTNER |
| PAMELA S. SEYMON | TREVOR S. NORWITZ |

51 WEST 52ND STREET
NEW YORK, N.Y. 10019-6150

TELEPHONE: (212) 403-1000

FACSIMILE: (212) 403-2000

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)

### OF COUNSEL

| | |
|---|---|
| WILLIAM T. ALLEN | ROBERT M. MORGENTHAU |
| PETER C. CANELLOS | LEONARD M. ROSEN |
| DAVID M. EINHORN | MICHAEL W. SCHWARTZ |
| THEODORE GEWERTZ | ELLIOTT V. STEIN |
| RICHARD D. KATCHER | WARREN R. STERN |
| THEODORE A. LEVINE | J. BRYAN WHITWORTH |
| ROBERT B. MAZUR | AMY R. WOLF |

### COUNSEL

| | |
|---|---|
| MICHELE J. ALEXANDER | NANCY B. GREENBAUM |
| LOUIS J. BARASH | MAURA R. GROSSMAN |
| DIANNA CHEN | IAN L. LEVIN |
| ANDREW J.H. CHEUNG | J. AUSTIN LYONS |
| PAMELA EHRENKRANZ | AMANDA N. PERSAUD |
| ELAINE P. GOLIN | HOLLY M. STRUTT |
| PAULA N. GORDON | |

| | |
|---|---|
| BEN M. GERMANA | JOHN F. LYNCH |
| ANDREW J. NUSSBAUM | WILLIAM SAVITT |
| RACHELLE SILVERBERG | ERIC M. ROSOF |
| DAVID C. BRYAN | MARTIN J.E. ARMS |
| STEVEN A. COHEN | GREGORY E. OSTLING |
| GAVIN D. SOLOTAR | DAVID B. ANDERS |
| DEBORAH L. PAUL | ADAM J. SHAPIRO |
| DAVID C. KARP | NELSON O. FITTS |
| RICHARD K. KIM | JEREMY L. GOLDSTEIN |
| JOSHUA R. CAMMAKER | JOSHUA M. HOLMES |
| MARK GORDON | DAVID E. SHAPIRO |
| JOSEPH D. LARSON | DAMIAN G. DIDDEN |
| LAWRENCE S. MAKOW | ANTE VUCIC |
| JEANNEMARIE O'BRIEN | IAN BOCZKO |
| WAYNE M. CARLIN | MATTHEW M. GUEST |
| JAMES COLE, JR. | DAVID E. KAHAN |
| STEPHEN R. DiPRIMA | DAVID K. LAM |
| NICHOLAS G. DEMMO | BENJAMIN M. ROTH |
| IGOR KIRMAN | JOSHUA A. FELTMAN |
| JONATHAN M. MOSES | |
| T. EIKO STANGE | |
| DAVID A. SCHWARTZ | |

DIRECT DIAL: (212) 403-1165
DIRECT FAX: (212) 403-2165
E-MAIL: mlturner@wlrk.com

April 26, 2010

<u>BY HAND</u>

Seanna R. Brown, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza, 11th Floor
New York, NY 10111

Re:    *Securities Investor Protection Corp. v. Bernard L.*
       *Madoff Investment Securities LLC* (08-01789)

Dear Seanna:

Pursuant to our phone conversation of December 4, 2009, on behalf of our client JPMorgan Chase Bank, N.A. ("JPMorgan"), I am enclosing documents bearing production numbers JPMC_SIPC00049071 through JPMC_SIPC00053100 in response to the Rule 2004 Subpoena in the above captioned matter dated November 30, 2009. The enclosed documents constitute the seventeenth installment of JPMorgan's rolling production of responsive documents, in accordance with your agreement to extend the subpoena's original response date. Please note that these documents have been stamped "Confidential," and that they are being produced on an Attorneys' Eyes Only basis following entry of a Protective Order by the Court and modification of that Order through a negotiated Confidentiality Side Letter, as discussed. We look forward to your comments on the proposed Confidentiality Side Letter circulated last week.

Best regards,

Meredith L. Turner

Enclosure

# EXHIBIT E

| | |
|---|---|
| **From:** | Gabriel, Jessie M. (Baker Hostetler LLP) |
| **To:** | Turner, Meredith L.; |
| **cc:** | Renner, Deborah H. (Baker Hostetler LLP); |
| | Brown, Seanna R. (Baker Hostetler LLP); |
| **Subject:** | RE: SIPC v. JPMC |
| **Date:** | Thursday, February 03, 2011 1:34:53 PM |

Hi Meredith,

I wanted to get back to you about the confidentiality agreement.  I am not going to be able to get you the mark-up in the next couple of days.  I apologize for the delay.  With so many cases now pending, we are trying to be consistent across the cases.  This means that any confidentiality agreements have to be run past a number of people to ensure consistency.

I understand that JPMC may be concerned about having produced their documents without a confidentiality agreement firmly in place.  Please understand that we have implemented special procedures to ensure the documents you have produced remain confidential until there is an agreement in place and documents are re-designated pursuant to that agreement.  If there is another concern that requires quick implementation of the confidentiality agreement, please let me know so that we can seek to address that.  As it stands now, I will endeavor to move the proposed agreement as quickly as possible.  But I cannot give you a specific date at this point in time.

Please let me know if you would like to discuss the issue today or tomorrow and I will make myself available, as it sounds like you have a hectic schedule for the next few days.

Regards,

Jessie

# EXHIBIT F

**From:**     Gabriel, Jessie M. (Baker & Hostetler LLP)
**Sent:**     Wednesday, November 17, 2010 12:48 PM
**To:**       Turner, Meredith L.
**Cc:**       McLeod, Ryan A.
**Subject:**  RE: BLMIS/JPM

Hi Meredith,

Thanks for following up on all of these issues.

1. You are correct that it is our turn to get back to you on the side letter.  Hopefully I'll have any comments later this week or early next week and we can set up a time to talk about them.  As we have discussed, I think we are all of the same page in terms of substance, it's just a matter of making sure the language conforms to our substantive understanding.

2. & 3. Thanks for the update.  Please just let us know as soon as those are ready.

4. I do not believe we are ultimately going to need to reschedule the examination of Rasulo.

Regards,

Jessie

**From:** MLTurner@WLRK.com [mailto:MLTurner@WLRK.com]
**Sent:** Tuesday, November 16, 2010 5:19 PM
**To:** Gabriel, Jessie M.
**Cc:** RAMcLeod@wlrk.com
**Subject:** BLMIS/JPM

Jessie,

Just wanted to touch base with you about a couple of open issues.

1. Confidentiality Side Letter.  It's been so long that I've almost lost track, but I believe we sent you a marked up version a few months ago and are awaiting your comments.  I know this is something we've all been focused on bringing to a conclusion -- do you have a sense as to when you might be getting us the next round of comments?

2. Privilege Log.  We owe you a privilege log, which we've been working hard to complete and are hoping to get to you in the next couple weeks.  Just didn't want you to think we'd forgotten.

3. Supplemental Production.  As I mentioned, we'll be making another production.  We've been going back through our files and databases and doing sweeps and clean-ups to make sure our previous productions didn't miss anything, and we've also been looking into whether or not any foreign JPM entities have responsive documents.  We've also been following up on anything raised in deposition that we weren't previously aware of.  Finally, we'll be producing a set of redacted documents in connection with producing the privilege log.  I anticipate that we'll also be getting all of this to you in the next couple weeks.

4. Depositions.  When you canceled the Rasulo deposition, I think you mentioned that you didn't believe you needed him at that time and so were postponing it indefinitely.  Just wanted to check in as to whether

or not you know if you'll ultimately need him.

Let me know if you want to discuss at any point.
Hope you're doing well,
Meredith


**Meredith L. Turner**
**Wachtell, Lipton, Rosen & Katz**
51 West 52nd Street, New York, NY 10019
212.403.1165 (ph)  -  212.403.2165 (fax)


*********************************************************************

Any tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax penalties and is not intended to be used or referred to in promoting, marketing or recommending a partnership or other entity, investment plan or arrangement.
*********************************************************************

Please be advised that this transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If you are not the intended recipient, please do not read, copy or re-transmit this communication. If you have received this communication in error, please notify us by e-mail (helpdesk@wlrk.com) or by telephone (call us collect at 212-403-4357) and delete this message and any attachments. Thank you in advance for your cooperation and assistance.

www.wlrk.com
*********************************************************************

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

# EXHIBIT G

Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

February 18, 2011

Judy Selby
direct dial: 212.589.4208
jselby@bakerlaw.com

**SENT VIA ELECTRONIC AND US MAIL**

John Savarese, Esq.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019

Re:    *Securities Investor Protection Corp v. Bernard L. Madoff Investment Securities
         LLC*, No. 08-1789 – Rule 2004 Subpoena on JP Morgan Chase

Dear Mr. Savarese:

As you are aware, this firm represents Irving Picard, the Trustee in the SIPA liquidation
of Bernard L. Madoff Investment Securities, LLC ("BLMIS"). I am writing to you with
regard to communications between this firm and yours concerning the treatment of
documents produced to the Trustee pursuant to a Bankruptcy Rule 2004 subpoena
served on JP Morgan Chase ("JP Morgan") on November 30, 2009 (the "Subpoena").

I note, as an initial matter, that the Protective Order entered on February 10, 2010
governs all materials produced in the SIPA Liquidation and related adversary
proceedings, including all of JP Morgan's productions in response to the Subpoena –
inclusive of those that preceded entry of the Protective Order. Additionally, as we have
advised Ms. Turner of your firm, the protection JP Morgan seeks in a side letter is
substantially provided to JP Morgan in paragraphs 5 and 24 of the Protective Order.
Paragraph 5 restricts disclosure of confidential material to the parties to an action, the
Trustee's agents, court personnel, authors and recipients of the documents, and the
Securities Investor Protection Corporation. Paragraph 24 requires notice to the
producing party before confidential material can be produced to third parties in
response to subpoenas and document requests, and provides a mechanism by which
confidential material can be protected from disclosure. As I understand the prior
communications between our firms, the governing Protective Order addresses JP
Morgan's concerns about disclosure of its confidential information.

Further, as you may know, the Trustee filed a motion on February 1, 2011 for the entry
of a new protective order, termed the Litigation Protective Order ("LPO"), to facilitate
discovery and the use of documents and depositions during the litigation phase of this
matter and all related adversary proceedings. I attach a copy of the moving papers and
the proposed LPO for your reference and convenience.

*Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa*
*Denver     Houston     Los Angeles     New York     Orlando     Washington, DC*

John Savarese, Esq.
February 18, 2011
Page 2

If entered in its proposed form, the LPO will supersede the February 2010 Protective Order and will control all document productions, regardless of whether they were made before the February 2010 Protective Order or the LPO. In addition, as drafted, the LPO also will supersede all confidentiality agreements entered into with any producing party – including the type of side letter contemplated by JP Morgan. And like the current Protective Order, the LPO contains provisions that protect against disclosure of confidential information, which seem sufficient to address JP Morgan's expressed concerns.

To the extent you believe that the LPO should be modified in any respect, please contact me and we can discuss reasonable modifications to serve the best interests of the overall litigation and the injured investors. If we cannot reach an agreement, JP Morgan of course can object to the Trustee's motion and seek the relief it desires.

Given the large number of parties involved in the adversary proceedings, and for the reasons outlined in the motion for entry of the LPO, the Trustee cannot entertain requests for side letters or supplemental confidentiality agreements.

Sincerely,

Judy Selby

Enclosures

cc:     Meredith L. Turner, Esq.
        Ryan McLeod, Esq.
        Jessie M. Gabriel, Esq.
        Seanna R. Brown, Esq.
        Deborah H. Renner, Esq.