# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Trustee-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br>Trustee,<br><br>v.<br><br>NATIXIS, NATIXIS CORPORATE & INVESTMENT BANK (f/k/a IXIS CORPORATE & INVESTMENT BANK), NATIXIS FINANCIAL PRODUCTS, INC., BLOOM ASSET HOLDINGS FUND, and TENSYR LIMITED,<br><br>Defendants. | Adv. Pro. No. 10-05353 (BRL) |

### DECLARATION OF BRUNO QUENTIN

1. I am a partner in the Criminal and Commercial Litigation Department of Gide Loyrette Nouel A.A.R.P.I., a French law firm. My business address is 26, cours Albert 1er, 75008 Paris, France.

2. I was admitted to the Paris Bar in 1995. I hold Honours Degrees in private law, majoring in the role of legal practitioners and professionals, and in business law from the University of Paris II. I also hold a post-graduate degree in business and economic law from the University of Paris II – Panthéon-Assas.



3. I advise private clients, listed and non-listed companies in civil, commercial and criminal proceedings. I also frequently represent public and political figures including ministers before the Court of Justice of the Republic, Members of Parliament and chairmen of local authorities. I attach a copy of my CV, and of the statutes to which I refer below.

4. My firm has represented Natixis S.A. ("Natixis") in a wide variety of matters. I understand that Natixis is one of the defendants in a civil action filed by the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("Madoff Trustee") on December 8, 2010, in the United States Bankruptcy Court for the Southern District of New York. I have reviewed the redacted Complaint filed by the Trustee.

5. In this Declaration, I set out my opinion with regard to the law as it applies in France in cases concerning defamation and related claims.

**Laws Concerning Defamation:**

6. Under French law, Article 29, paragraph 1 of the July 29, 1881 law on the freedom of the press, (*loi sur la liberté de la presse*, hereunder the "press law") defines defamation as : "an allegation or imputation of a fact affecting the honour or reputation of the person or body against whom it is made."

7. The person or body does not need to be expressly named in order to have a defamation claim, provided that he, she or it is clearly identifiable. Additionally, Article 29, paragraph 2, provides that all offensive statements, or invective, which do not contain any imputation of fact, are considered an "injure" (meaning an insult), which may also give rise to a claim of unlawful injury if published to a third party.

**Damage to Reputation:**

8. In France, the Trustee in bankruptcy performs what the French public considers a quasi-public function. This is the public's perception, even though a bankruptcy trustee in France, like a trustee in bankruptcy proceedings in the U.S., is appointed by the Court and is not a public official.

9. Furthermore, the public generally assimilates civil actions brought by a Trustee to investigations undertaken in a criminal complaint. In France, by the time a person is charged with a criminal offence, it is the stage of the investigation at which sufficient evidence to go to trial has been collected. Because of the investigation that precedes any charges, the conviction rate is high and being charged with an offence is strongly associated in the public mind with guilt.

10. By contrast, my understanding is that, in the United States, at the time a civil complaint is filed, the matter may still be years away from any determination, with further discovery of evidence to support the claims still needing to be obtained.

2



11. Thus, if an individual is accused of wrongdoing in a civil action by a Trustee in bankruptcy, the French public will not generally make the distinction between an accusation of civil wrongdoing and an allegation of criminal conduct. The presumption in the public mind will therefore be that the person has committed the alleged conduct, and that the conduct is wrongful.

12. This is so even if the individual is not named as a defendant, but instead is alleged to have engaged in conduct on which the named defendant's liability is based. The person will be considered guilty by association, regardless of the outcome of the claim. The public is even more likely to believe that "where there's smoke there's fire," as the saying goes, because of the notoriety of the Madoff affair.

13. Even though there are no allegations that Natixis or its employees were engaged in fraudulent conduct, the entire setting of the Trustee's case is framed in the context of Madoff's well known fraud. The French public would not necessarily distinguish between "fraudulent transfer" allegations in an American bankruptcy court, where it is my understanding that fraudulent behaviour is not necessarily alleged, and criminal fraud, which is the only fraud concept with which people are familiar in France.

14. These more loosely framed civil allegations concerning Natixis employees, would generally be assimilated by members of the public to Madoff's fraudulent criminal activity. That these allegations involve the conduct of an investment professional who utterly depends on his professional reputation as a trustworthy and discreet individual, only aggravates the prejudice.

15. I consider that in light of the foregoing, any damage suffered would be irreparable. No effective remedy is available to repair the person's reputation in the public eye.

**Madoff Trustee's Allegations:**

16. It is my understanding that the Madoff Trustee is alleging that Natixis and three of its specifically identified employees:

(a) closed their eyes to facts that would have revealed the true nature of Mr. Madoff's fraud, despite being on notice of those facts or on notice to discover those facts, or

(b) knew those facts and willfully disregarded them.

17. Under Article 29, paragraph 1, as discussed above, these allegations would be considered defamatory under French law, to the extent they are based on factual assertions that ultimately are not proven true.

3



18. It is my understanding that in the United States, statements in a complaint are privileged and generally cannot be the subject of a defamation lawsuit. The same principle applies in France.

19. My opinion, as explained above is that the allegations stated in the Complaint would fall within the French definition for defamation. That is, an action could be brought had they not been made in the privileged context of a legal complaint.

20. Nevertheless, as stated above, the fact that these allegations appear in a complaint filed by the Trustee in bankruptcy supports my opinion that the individuals named therein will suffer immediate, irreparable reputational damage.

I declare under penalty of perjury under the laws of the United States of America that the foregoing represents my professional opinion, and that any facts stated herein are true and correct to the best of my knowledge and belief.

Executed on March 10, 2011.

_____
Bruno Quentin