# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS

LONDON · MOSCOW · FRANKFURT · COLOGNE

ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial: +1 212 225 2508
E-Mail: cboccuzzi@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER
DAVID L. SUGERMAN
HOWARD S. ZELBO

DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
KRISTOFER W. HESS
JUAN G. GIRALDEZ
DUANE MCLAUGHLIN

BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON JR.
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
ANDREW WEAVER
RESIDENT COUNSEL

March 10, 2011

BY HAND

Honorable Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 623
New York, NY 10004-1408

Re: <u>Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC</u>; <u>In re Bernard L. Madoff</u>, Adv. Pro. No. 08-01789 (BRL)

<u>Picard v. Citibank, N.A. et al., Adv. Pro. No. 10-05345 (BRL)</u>

Dear Judge Lifland:

This firm represents defendants Citibank, N.A. ("Citibank"), Citibank North America, Inc. ("CNAI"), and Citigroup Global Markets Limited ("CGML" and, together with Citibank and CNAI, the "defendants") in the above-captioned adversary proceeding. I write in response to the Court's March 4, 2011 Order Directing Parties to Show Cause by Letter Submission for Maintaining Redactions.

The underlying action against Citibank, CNAI, and CGML is one of hundreds seeking payment of money by various entities as purported "subsequent transferees" of funds invested by others with Bernard Madoff. The complaint—originally sealed in its entirety—has been publicly filed with only a few minor redactions that together comprise less than one percent of its contents. These redactions consist solely of identifying information for twelve of the

Honorable Burton R. Lifland, p. 2

defendants' current or former employees. None of these individuals is a public figure, none is named as a defendant, and none is alleged to have known of Madoff's scheme.

While the Trustee was satisfied with both the sealed and then the redacted complaint, NBC seeks public disclosure of the identities of these individuals. Disclosure of these employees' identities—information that is unnecessary for adjudication and which could and should have been entirely omitted from the complaint without legal consequence—will add nothing material to the public's understanding of this action and nothing at all to its ability to monitor the federal courts.

## I.   The Complaint and Redactions

On December 8, 2010, the Trustee filed a complaint under seal in this action. The complaint pleads avoidance claims against the defendants, seeking to recover from them under the theory that the defendants were "subsequent transferees" of funds that originated with Madoff. Compl. ¶ 2.

Specifically, the complaint concerns two transactions. First, Citibank is alleged to have made a loan to Rye Select Broad Market Prime Fund, L.P. which, apparently, invested the money with Madoff. Id. ¶ 15. Second, CGML is alleged to have provided Auriga, its swap counterparty, with leveraged upside/downside exposure to Fairfield Sentry, a Madoff feeder fund, which CGML then hedged by purchasing shares in Fairfield Sentry. Id. ¶ 18. The defendants entered into these transactions at the request of their counterparties. Id. ¶ 88 ("CGML had been asked to provide leverage by a Sentry client, Auriga"). There is no allegation anywhere in the complaint that the defendants were customers of Madoff, that Madoff was a customer of the defendants, or that the defendants advised anyone to invest with Madoff. Nor does the complaint allege the commission of any tort by any defendant, let alone any individual identified in the complaint, or name any individual employee as a defendant.

The complaint was sealed in its entirety because it contained information that the Trustee procured from the defendants pursuant to a Confidentiality Agreement executed on September 11, 2009 and the Protective Order filed in this Court on February 16, 2010. One source of such information was a pre-suit deposition of one of the defendants' employees, which was proffered voluntarily without the defendants requiring that the Trustee use a Rule 2004 subpoena and with express reliance on the confidentiality provisions of the Protective Order sought by the Trustee and entered by this Court. Consistent with CGML's reliance on that Protective Order, the name of the individual who was deposed has been redacted from the complaint.

The Trustee and defendants agreed to the filing of a redacted version of the complaint, which was filed on February 21, 2011 with minimal redactions. As a result of the filing of this minimally redacted version, more than ninety-nine percent of the complaint is public, and only the names and titles of certain individuals who are or were employees of the defendants remain redacted. The complaint's allegations concerning these individuals' identities are not material. For example, two employees are mentioned, each a single time, as having met

Honorable Burton R. Lifland, p. 3

with Fairfield Sentry representatives in September 2004 to discuss development of structured products. Id. ¶ 86. Another two are mentioned, each a single time, as having participated in a telephone call with Tremont representatives in April 2006. Id. ¶ 73. Another is alleged to have sent a single e-mail asking a member of Fairfield Greenwich Group for information. Id. ¶ 107. The allegations concerning the remaining employees are similarly immaterial. That such identifying references are unnecessary is borne out by the complaint itself, which, in describing another employee who reported to Fairfield Sentry that CGML had been asked to provide leverage to Auriga, merely refers generically to that employee as "a London CGML trader." Id. ¶ 87. Such generic references would have been adequate throughout the complaint.

Now, three NBC entities,[1] counsel to whom incorrectly asserted during the February 23 conference with the Court that the employees of defendants and other financial institutions at one time "basked" in Madoff's glow—a characterization appearing nowhere in the complaint—seek public disclosure of the identities of these employees. They are not, however, entitled to such disclosure, because that identifying information is of no relevance and of no public interest, and disclosure would violate the legitimate privacy interests of these non-party employees.

## II.    The Court Should Maintain the Redactions

Section 107(c) of the Bankruptcy Code permits the Court to "protect an individual" from "unlawful injury to the individual or the individual's property" by prohibiting the public disclosure of "[a]ny means of identification." 11 U.S.C. § 107(c). See Fed. R. Bankr. P. 9037 (permitting redaction of identifying information). "Means of identification" include a person's name. 18 U.S.C. § 1028(d)(7)(A).

Although there is a presumptive right of access to documents such as complaints, "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts," and must be balanced against "the privacy interests of those resisting disclosure." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-120 (2d Cir. 2006) (quoting United States v. Amodeo, 71 F.3d 1044, 1049-1050 (2d Cir. 1995)); In re Bennett Funding Grp., Inc., 226 B.R. 331, 336 (Bankr. N.D.N.Y. 1998) (where information sought does not fall into § 107(b) exception, court is "require[d] . . . to examine the relevant facts and circumstances and then to balance the interests of the party opposing disclosure with that of the public").

The employees' identities are simply not necessary for adjudication of this matter, which concerns only the alleged liability of three corporate entities. Nor are the employees' identities necessary for, or relevant to, the public's ability to monitor the federal courts—the very pursuit upon which the right of access is predicated. See Amodeo, 71 F.3d at 1048. Any facts

---

[1]    On their own and purportedly on behalf of the N.Y. Times.

Honorable Burton R. Lifland, p. 4

necessary for this endeavor—and many that are not—have already been disclosed in the unsealed complaint.

        Courts in this Circuit have, for these exact reasons, rejected requests similar to NBC's here. In <u>Savitt/Adler</u>, a case involving allegations that the New York State Attorney General discharged or discriminated against assistant attorneys general for political reasons, the court refused to compel disclosure of the names of assistant attorneys general referenced by the parties in materials submitted in connection with summary judgment briefing. <u>In re Savitt/Adler Litig.</u>, No. 95-CV-1842 (RSP/DRH), 1997 WL 797511 (N.D.N.Y. Dec. 23, 1997) (Pooler, J.). The court found compelling three factors, all of which are present here. First, rather than having sought "to bar access to the documents in their entirety," the defendants sought "only to redact names and identifying details." <u>Id.</u> at *3. Second, as the case turned not on the identities of the employees but on their political affiliations, their identities would "not play a role in the Article III function of deciding" the summary judgment motion. <u>Id.</u> Third, the public could "assess the Attorney General's actions without the names of the individual" employees, and the "redaction sought [was] minimal and largely unrelated to the public interest." <u>Id.</u> at *4.

        Similarly, in <u>San Francisco Chronicle</u>, the court refused to permit disclosure of unindicted third-parties referenced in an application used to secure a warrant to search the home of an individual accused of distributing steroids to professional baseball players. <u>In re S.F. Chron.</u>, No. 07-00256-MISC (TCP), 2007 WL 2782753 (E.D.N.Y. Sept. 24, 2007). According to the court, "the role of the redacted material in the exercise of Article III judicial power and the value of the redacted information in monitoring the federal courts [were] minimal." <u>Id.</u> at *4. The court found the public interest "vindicated by the unredacted portions" of the application, in which the "government's investigations, including its investigatory techniques and findings, [were] laid out for the public to see." <u>Id.</u> (internal quotations and citation omitted).

        Just as in these cases, NBC here seeks access to extremely limited and modest redactions which have left the vast majority of the complaint a matter of public record. The employees' identities are unnecessary for either the full adjudication of this matter or monitoring the functioning of the federal courts. <u>See</u> <u>Gardner v. Newsday, Inc. (In re Newsday, Inc.)</u>, 895 F. 2d 74, 79-80 (2d Cir. 1990) (upholding district court's decision to "redact[] references to innocent third parties" before making search-warrant applications available to media entity); <u>Caxton Int'l Ltd. v. Reserve Int'l Liquidity Fund, Ltd.</u>, No. 09 Civ. 782 (PGG), 2009 WL 2365246 (S.D.N.Y. July 30, 2009) (permitting redaction of names where irrelevant to disposition); <u>Prof'l Sound Servs., Inc. v. Guzzi</u>, No. 02 Civ. 8428 (DC), 2003 WL 22097500, at *1 (S.D.N.Y. Sept. 10, 2003) (permitting plaintiff to file first amended complaint under seal "to keep confidential the names of certain customers" and thereafter filing redacted version, "deleting the names of [plaintiff's] allegedly lost customers"); <u>Druck Corp. v. The Macro Fund (U.S.) Ltd.</u>, No. 02 Civ. 6164 (AGS) (DFE), 2002 WL 31415699, at *1 (S.D.N.Y. Oct. 28, 2002) (directing parties to file motion papers under seal "to the extent they identify any non-party investor," and file copies "in the public court files with the minimum amount of deletions necessary to protect the identity of the non-party investors"). The presumption of access is extremely weak under the present facts.

Honorable Burton R. Lifland, p. 5

This weak presumption of access is outweighed by concerns of privacy and
fairness. None of the employees referenced in the complaint is a public figure, nor is any one of
them a party to this litigation. To the extent that some are referenced in the complaint in
innocuous fashion, see, e.g., Compl. ¶¶ 72, 73, 107, there can be little public interest in their
identities, and a legitimate desire on the employees' part to maintain their privacy. To the extent
that the complaint suggests or implies that others—the vast majority of whom are not senior
employees—should have overcome Madoff's "elaborate machinery" of fraud, which "fooled the
defendants" as well as most "financial institutions, and regulators," S.E.C. v. Cohmad Securities
Corp., No. 09 Civ. 5680 (LLS), 2010 WL 363844, at *2 (S.D.N.Y. Feb. 2, 2010), privacy and
fairness militate toward redaction. The complaint, after all, is merely a collection of unproven
allegations, not evidence. As the employees are not parties to the litigation, they will have no
opportunity personally to respond to any allegations lodged against them. San Francisco
Chronicle recognized the risks that such non-parties face: "individuals . . . whose conversations
are disclosed have no judicial forum in which they may potentially vindicate themselves or their
conduct." Id. at *3 (quoting Certain Interested Individuals v. Pulitzer Publ'g Co., 895 F.2d 460,
466-67 (8th Cir. 1990)). See also Amodeo, 71 F.3d at 1051 ("[A] court may consider whether
the nature of the materials is such that there is a fair opportunity for the subject to respond to any
accusations contained therein." (internal citations omitted)).

Additionally, it would be unfair to the defendants and the employee whose pre-
suit deposition they proffered to compel disclosure of that and other employees' identifying
information. Such proffer was made in explicit reliance on the confidentiality provisions of the
Protective Order. The defendants' employees should not be punished for the Trustee's decision
unnecessarily to include the names and titles of non-parties within the complaint, nor for their
reasonable reliance on the Protective Order. See S.E.C. v. TheStreet.Com, 273 F.3d 222, 230
(2d Cir. 2001) ("It is, moreover, presumptively unfair for courts to modify protective orders
which assure confidentiality and upon which the parties have reasonably relied."); Martindell v.
Int'l Tel. & Tel. Corp., 594 F.2d 291, 295 (2d Cir.1979) (denying government's request for
access to depositions taken pursuant to court-approved confidentiality stipulation, as access
would threaten protective orders which serve "the vital function ... of 'secur[ing] the just, speedy,
and inexpensive determination' of civil disputes ... by encouraging full disclosure of all evidence
that might conceivably be relevant").

In the absence of redaction, the employees' identities would be available to
journalists, disgruntled investors, and the population at large. Such disclosure would present
opportunity and means for the invasion of the current and former employees' privacy, injury
only compounded by the employees' inability—as non-parties—to defend themselves.[2]  The

---

[2]     As explained above, more is at issue here than mere embarrassment. But even if embarrassment
were the only concern, the cases cited by the media entities in another Madoff-related adversary
proceeding for the proposition that "mere embarrassment or prejudice is insufficient" are
inapposite. See Mot. To Intervene And To Unseal Pleadings Filed Under Seal (D.E. # 5) ¶19. In
those cases, a party to the litigation sought to seal entire documents. The minor redactions here,
on the other hand, concern non parties. Cf. Picard v. Katz, Adv. Pro. No 10-05287 (BRL)
(Bankr. S.D.N.Y. Jan. 24, 2011); In re Neal, 461 F.3d 1048 (8th Cir. 2006) (request by parties to

Honorable Burton R. Lifland, p. 6

defendants are mindful of the considerable harm and threats to personal safety wrought on employees of American International Group in 2009 after public disclosure and extensive media coverage of bonuses they had received.  See Brady Dennis & David Cho, Rage At AIG Swells As Bonuses Go Out, WASH. POST, March 17, 2009, at A1 (reporting of death threats and floods of angry communication).  To avoid any possibility of such misconduct here, the Court should maintain the redactions of the non-party employees' identities, particularly because the allegations concerning them are not matters of legitimate public interest and do not warrant the inevitable negative media spotlight and attendant harassment that would ensue from disclosure.

　　　　　For the foregoing reasons, the Court should maintain the redactions of the identities of the defendants' non-party current and former employees.  We would be pleased to provide further submissions or present oral argument should Your Honor find them necessary or helpful.

Respectfully submitted,

Carmine D. Boccuzzi Jr.

cc:

David J. Sheehan, Esq.
George Freeman, Esq.
Daniel M. Kummer, Esq.
David E. McCraw, Esq.
David Y. Livshiz, Esq.

---

litigation to seal document); In re Analytical Sys. Inc., 83 B.R. 833 (Bankr. N.D. Ga. 1987) (same); In re Food Mgmt. Grp., LLC, 359 B.R. 543 (Bankr. S.D.N.Y. 2007) (request by actual defendants in adversary proceeding to seal entire complaint); In re Gitto Global Corp., 422 F.3d 1 (1st Cir. 2005) (request by debtor's CEO and his father to seal entire report of examiner appointed to investigate mismanagement).