Bernard L. Madoff Investment Securities LLC
In Liquidation


RECEIVED
MAR 17 2011
U.S. BANKRUPTCY COURT, SDNY

Re: **Bankruptcy Case No. 08-1789 (BRL)**

OPPOSITION TO TRUSTEE'S
FINAL DETERMINATION OF CLAIM
OF ANDREA CERTILMAN ZIEGLER

I respectfully disagree with the Trustee's final determination of Claim as set forth in the Trustee's Notice to me of January 13, 2011, and as set forth in the Notice, desire a hearing before Bankruptcy Judge Burton R. Lifland. My disagreement relates to the Trustee's conclusion that the purported transfer into my account on April 24, 1997 resulted in no net increase to my account.

The grounds for my disagreement are as follows:

1. In the Notice of Trustee's Final Determination of Claim dated January 13, 2011 ("Final Notice"), the Trustee determined that a purported transfer ("Transfer") into my account on April 24, 1997 resulted in no increase in the balance. I object to this determination.

2. In determining that the Transfer resulted in no increase in the balance of my account, the Trustee seems to conclude that the entire amount of the purported Transfer was fictitious gains. I object to this conclusion.

3. The Trustee provides no reason to support his conclusion that the amount of the purported Transfer was fictitious gain.

4. Although the Trustee gives no explanation in the Final Notice, I have heard and/or read that the Trustee believed he could establish that there is no evidence that there were any trades made in the BLMIS accounts as far back as the early '90s.

5. The accounts from which the Transfer was made date back to January, 1984 or

1

before.

6. The Trustee has provided no proof (nor any facts or evidence) that no trades were made in any accounts from which the Transfer was made either (a) from the early '90s forward or (b) from January, 1984 forward.

7. On information and belief, actual trades were made in the accounts from which the Transfer was made.

8. The method of trading in the accounts from which the Transfer was made was different from the "Split Strike Conversion Strategy" method which the Trustee has alleged resulted in fictitious profits. Rather the method used in the accounts from which the Transfer was made utilized the trading of the securities of a single corporation. On information and belief, some, or all, of the purported trades (dating back to January, 1984 or before) were actually made.

9. On information and belief, the accounts from which the Transfer was made were, for some or all of their existence, part of BLMIS's legitimate brokerage business, resulting in the real purchase and sale of securities in such account.

10. In accordance with the confirmations sent with respect to the accounts from which the Transfer was made, BLMIS acted as a Principal (and not as an Agent on behalf of the account holder).

11. Even if the amount of the purported Transfer is not allowed because of "fictitious gains," I should have been given credit for interest corresponding to the time value of money.

12. The Trustee alleges in Table 1 of the Final Notice that the account from which the Transfer was made was "1Z000810." On information and belief, this was not the only account which resulted in a transfer into my account that was the subject of my claim and the Trustee's Final Notice.

2

13. Since BLMIS was acting as Principal in all of the subject trades, whether the securities were actually traded and/or delivered was irrelevant. Pursuant to its terms, each confirmation served as a contract whereby BLMIS "sold" and the account holder "bought" certain securities allegedly owned by BLMIS as Principal (the first end of each transaction) followed by a confirmation whereby BLMIS "bought" back and the account holders "sold" the relevant (or related) securities. Accordingly, the account holder generated a profit not as a result of the purchase and sale of securities (which may or may not have ever occurred), but as a result of its contracts with BLMIS, as Principal, where BLMIS agreed to sell securities it represented it owned as Principal, at one price and acquire the same (or related) securities a short time later at a greater price. The account holder never had to have title to the securities; its profits resulted from its contracts (evidenced by the confirmations) with BLMIS. This is the same as party "A" contracting to sell a piece of property to party "B" for $100,000. If before there is a closing and delivery, the value of the property goes up and "A" approaches "B" and "B" agrees to sell "A" the contract back at a $5,000 profit to "B," "B" has made a legitimate $5,000 profit without taking title to the property. Moreover, whether or not "A" had proper title to the property to begin with, would not affect "B's" legitimate contractual profit from "A." The account holders are like party B. Their profits were made from contracts with BLMIS not from the actual purchase and sale of the underlying securities. As such, their statements reflected actual account balances with BLMIS upon which the account holders were entitled to rely. They were not fictitious and reflected profits made by the account holders' contracts with BLMIS, even if BLMIS did not have the cash to pay the balances.

Dated: March 14, 2011

Respectfully submitted,

Andrea Certilman Ziegler
Claim No. 3220



FedEx Express

The World Envelope

ORIGIN ID: RMEA (516) 296-7134
MAIL CENTER
CERTILMAN BALIN ADLER & HYMAN
90 MERRICK AVE
9TH FLOOR
EAST MEADOW, NY 11554
UNITED STATES US

TO CLERK US BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
1 BOWLING GREEN

NEW YORK NY 10004
(212) 805-0515
INV:
PO:                    REF: CBAH0042599
                       DEPT:

TRK# 7968 7897 0760    THU - 17 MAR A1
0201                   PRIORITY OVERNIGHT

EA SXYA                        10004
                            NY-US EWR

BILL SENDER
SHIP DATE: 16MAR11
ACTWGT: 0.2 LB
CAD: 6345952/WBUS02200

J11181012220125    FedEx Express    58D62/BDD9/7EFB