**The New York Times Company**

George Freeman
Vice President and
Assistant General Counsel

620 Eighth Avenue
New York, NY 10018

tel 212.556-1558
fax 212.556-4634
freemang@nytimes.com

March 18, 2011

**BY E-FILING & FED EX**

The Honorable Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC; In re Bernard L. Madoff*, Adv. Pro. No. 08-01789
*Picard v. Citibank, N.A. et al.*, Adv. Pro. No. 10-05245 (the "Citibank Complaint")
*Picard v. JPMorgan Chase & Co. et al.*, Adv. Pro. No. 10-4932 (the "JPMC Complaint")
*Picard v. Natixis et al.*, Case No. 1:10-ap-5353 (the "Natixis Complaint")
*Picard v. Tremont Group Holdings, Inc.*, Adv. Pro. No. 10-05310 (the "Tremont Complaint")
*Picard v. UBS AG, et al.*, Adv. Pro. No. 10-04285 (the "Luxalpha Complaint")
*Picard v. UBS AG, et al.*, Adv. Pro. No. 10-05311 (the "LIF Complaint")

Dear Judge Lifland:

We write on behalf of The New York Times Company, publisher of *The New York Times*, and WNBC-TV, NBC News, and CNBC, divisions of NBCUniversal Media, LLC (formerly known as NBC Universal, Inc.), regarding the redacted complaints filed by Irving H. Picard, the Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee"), in the above-referenced actions. On March 4, 2011 the Court issued an Order Directing Parties to Show Cause by Letter Submission for Maintaining Redactions. By five

1

letters dated March 10, 2011,[1] counsel for the defendants in the above-referenced proceedings (collectively the "Banks") argue that the court should continue to redact the names and job titles of non-party individuals referenced in the complaints (the "Identifying Information") in order to conceal their identities. These arguments are without merit.

**Preliminary Statement**

The Banks' letters all virtually ignore or severely underplay the governing standard on this issue – the six exemptions set out in §107 of the Bankruptcy Code – and misinterpret the leading common law/constitutional cases on which they rely. Moreover, the Banks flaunt the most basic litigation realities that transpire in this district every day. They take these extremely strained positions all in service of the proposition that powerful bank executives working in a highly regulated industry and in some way associated, at least according to the Bankruptcy Trustee, with the Madoff scandal, should be uniquely immune from visibility in important publicly filed court papers. This is not – and cannot be – the law.

Bystanders and tertiary players in unsavory cases are named in complaints on a daily basis. Passers-by to crimes are named (and on careless reading may be viewed as involved) in criminal complaints; innocent friends and relatives of accused criminals are named in criminal complaints despite their embarrassment or fear of harassment; middle-level managers innocuously attending meetings mentioned in criminal (or civil) antitrust complaints are publicly named notwithstanding the fact that they, like the bankers here, are not accused of wrongdoing. Indeed, the only people whose names are routinely redacted from complaints are minors, undercover policeman and, in many cases, sexual assault victims. But no exceptions exist for bankers, and certainly Alice in Wonderland shouldn't be invoked to make the rules topsy-turvy –

---

[1] We have just this afternoon seen the letter submitted by the Trustee. That submission refers to letters from two other banks, Reliance International Research LLC and PJ Administrator LLC, that we have never seen and were not served with.

that precisely where the public is especially interested in a case, that is the case in which it should have the least access to its details and specifics.

Many of the Banks' letters assert that these redacted individuals are not "public figures". Nothing could be further from the truth. Some hold positions which inevitably involved them in the greatest recession we have suffered in 80 years; all are at least somewhat involved, according to the Bankruptcy Trustee, in the greatest scam in our financial history and in events certainly of legitimate public interest. Most, presumably, are prominent and make vast sums of money in positions in which they assume public notoriety. They work in a highly regulated industry which is, and should be, subjected to government and public scrutiny. And our journalists believe that a few of these unnamed executives are vying to succeed Jamie Dimon as the Chairman of JP Morgan Chase, one of the most powerful and influential positions in world finance. If the utility second baseman of the New York Mets is, by all accounts, a public figure whose name routinely appears before the public (even when he embarrassingly drops a pop-up), all the more so are these influential and wealthy executives, whose decisions affect millions of Americans every day.

These bankers seem not to shun publicity when they are heralded in magazine articles closing a successful deal. It hardly behooves them to seek invisibility when their involvement in the news is not so rosy. Indeed, the bankers make no showing of any actual harm or prejudice which is likely to occur by the normal public filing of the entire complaints save for some degree of embarrassment. As the cases make clear, that is not enough. Embarrassment, a detrimental impact on reputation and, as one Bank fears, the woe of being "targeted by media operatives" are not sufficient grounds to overcome the presumption of openness. In the five letters, the Banks give *not one* specific example – beyond pure speculation – of any harm whatsoever that has

occurred to any of the many financial people publicly named – with far greater culpability – in the various financial scandals of the past few years. The Trustee's complaint against the Fairfield Greenwich Group, for example, was entirely unredacted and has resulted in none of the parade of horrors the Banks predict. *See, e.g. Picard v. Fairfield Sentry Ltd., Greenwich Sentry, L.P., and Greenwich Sentry Partners, L.P.*, Adv. Pro. No. 09-01239A. Indeed, they fail to acknowledge that Bernard Madoff himself walked in and out of the Southern District courthouse through its main entrance multiple times prior to his incarceration, without any adverse consequence.

Rather, in addition to wanton speculation and fear of embarrassment, the Banks rely on a paradigm based on two totally faulty assumptions. They imply that the press will get it wrong, and will tar the innocent employees named in these complaints, when the truth is the applicants here will better be able to fairly and accurately report what is in these legal papers if given access to them *in toto*. And the Banks demean the intelligence of the public by arguing that even if the press might somehow correctly report on the complaints, its readers and viewers will inevitably link any name cited in the Madoff case to wrongdoing and fraud. If the press wrongly reports on these individuals, they have the opportunity of a libel suit to correct the wrong. But speculative fear of miswriting and misreading hardly justifies a restraint on distribution and publication of individuals named in these newsworthy complaints.

The Banks ingeniously try to convince this Court of the propriety of their position by virtually ignoring or evading the governing statute on this issue, 11 U.S.C. § 107. That section states six categories of information which may be redacted: trade secrets; confidential research, development and commercial information; and scandalous or defamatory matter. The Banks' problem is that the allegations in the Bankruptcy Trustee's complaint regarding the individuals at

issue here fit into none of these exceptions, all of which by law must be read narrowly.[2] Indeed, the Banks take pains to point out that many of the individuals are portrayed in the complaints as having engaged in the most innocuous of behavior. How then is such information "scandalous or defamatory"? The answer is: it is not. Nor in most of the letters is there any indication of falsity – a *sine qua non* of defamation. The Banks' tortured attempt to argue that, in effect, any name mentioned in the complaints may be defamatory or scandalous because it will inevitably be misinterpreted by the press and the public, under some guilt by association theory, to tarnish them unfairly with some nefarious actions, is totally unfounded. Tellingly, the Banks do not even try to meet the legal standard for "defamatory or scandalous" under § 107(b), statements that are clearly untrue or submitted by the Trustee for an improper purpose.[3] Again, the Banks' theory would serve to keep witnesses, bystanders and other innocent parties from being named in any complaint where crime or other negative actions are being alleged – a position without any legal basis, and especially inappropriate in a case of legitimate public concern.

Instead of basing their argument on the exceptions of the Bankruptcy Code, the Banks attempt to justify their novel argument by totally confounding the theory of the Second Circuit's access doctrine in *United States v. Amodeo*. First, *Amodeo* sets a common law and constitutional minimum for the presumption of openness of court proceedings. The standards of the bankruptcy code – applicable here – are clearly higher and more stringent. In any event, the Banks totally misuse *Amodeo*. In reading *Amodeo* in such a way to reach an overblown conclusion, the Banks reason that *Amodeo* said that the presumption of openness was strongest

---

[2] One of the letters cites § 107(c), but that section clearly is aimed at identity theft.
[3] Only the Natixis letter even attempts to argue that the allegations in the Complaint are substantively untrue, but even that letter falls short of meeting the "clearly untrue" requirement of § 107(b)(2). Likewise, only the Natixis letter even attempts to allege that the Trustee included the Identifying Information for an "improper purpose" – but then it falls back on the old and insufficient sawhorses of irrelevancy and misleadingness to support its conclusion.

5

where the filed documents most directly affect the adjudication of the case, such as dispositive motions. Notwithstanding that a Complaint is obviously a critical and baseline document in any litigation, the Banks argue that the Identifying Information redacted here are not critical to the matter's adjudication, and that, therefore, the case supports redaction. That argument proves way too much. Under such a rationale, even a *defendant's* name in any case should be stricken because what difference does it make to a court's adjudication if the defendant's name is John Smith or Robert Doe? *Amodeo* focuses on the value of the document at issue, not whether isolated names in very relevant legal documents are necessary to the adjudication. And the privacy interests *Amodeo* recognizes – a morbid craving for the sensational or having litigants file papers to serve as reservoirs of libelous statements about matters with no public ramifications – certainly do not pertain to these applicants, the Trustee or the very newsworthy matter being litigated.

In any event, the Banks have failed to make any serious argument that the privacy interests they tout are legally compelling. We understand that these executives would like to retreat to their leafy enclaves unconnected from their actions in the world's leading financial institutions which have somehow involved them in the Madoff case and perhaps – since we cannot know because their names are redacted – even in other recent financial debacles. But their identity and roles are important not only because some of them may already sit in or vie for positions of worldwide financial influence, but also as a way for the public to evaluate the culpability of their institutions. Thus, if it turns out that the individuals named in the complaints are low-level ministerial employees, the public will likely not impute their actions to their employers. But if the individuals are high-level executives, the reporting on this matter and the perception of the public would likely be quite different. The journalists' duty to inform the

public about the Banks' culpability requires them to know who these individuals are, their level and role in their bank and their prior acts and judgments, all of which would allow the press to validly and more accurately assess the validity and reasonableness of the Trustee's allegations, the banks' defenses and the responsibility and professionalism of the individuals involved. Although, it should be noted, the burden is not on the press to show this legitimate journalistic need, it does underscore why we make this application and why the Bank's speculative cry of wolf and the bankers' fear of embarrassment pale by comparison.

For all the reasons set forth herein, it is respectfully submitted that the names and positions and other identifying features of the individuals named in these complaints should be unredacted.

### I. Access Must Be Granted Pursuant to § 107 of the Bankruptcy Code

The governing statute on this issue is § 107 of the Bankruptcy Code. As courts have repeatedly held, "issues concerning public disclosure of documents in bankruptcy cases should be resolved under § 107 . . . not under the common law." *In re Food Mgmt. Group, LLC*, 359 B.R. 543, 554 (S.D.N.Y. 2007) (quoting *Gitto v. Worcester Telegram & Gazette Corp. ("Gitto Global")*, 422 F.3d 1, 8 (1st Cir. 2005)). *See also Neal v. Kansas City Star (In re Neal)*, 461 F.3d 1048, 1053 (8th Cir. 2006) (same); *In re Roman Catholic Archbishop of Portland in Or.*, 2009 Bankr. LEXIS 1906, *40-41 (Bankr. D.Or. 2009) ("Any issues of public disclosure of documents filed in a bankruptcy case must be determined under the [bankruptcy] statute, not under the common law."). "In other areas of the law, courts have relied on showings of 'compelling reasons,' or balancing the interests of privacy and public right to know, when reviewing a request for judicial non-disclosure. The mandatory language of § 107(b) negates the need for such inquiries." *In re Phar-Mor, Inc.*, 191 B.R. 675, 679 (Bankr. N.D.Ohio 1995)

(citing the Second Circuit in *In re Orion Pictures Corp. ("Orion")*, 21 F.3d 24, 27 (2d Cir. 1994). "Accordingly, the bankruptcy court need not balance the equities of the case, as Congress has already performed that task. The bankruptcy court need look only to the explicit language of section 107." Bodoh, William T. and Morgan, Michelle M., "Protective Orders in the Bankruptcy Court: The Congressional Mandate of Bankruptcy Code Section 107 and Its Constitutional Implications," 24 Hastings Const. L.Q. 67, 70 (1996).

Under the Bankruptcy Code, complaints are presumptively open to the public. *See* 11 U.S.C. § 107(a) ("a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."). As this Court has held, exceptions to the general right of access are permitted only "where under compelling or extraordinary circumstances an exception is necessary." *In re Food Mgmt. Group, LLC*, 359 B.R. at 554 (internal quotation marks omitted); *see also In re Coy*, 324 B.R. 393, 401-02 (Bankr. M.D.Fla. 2005) ("The mandate that all filed documents shall be available for public disclosure as set forth in 11 U.S.C. §107 restricts the ability to redact or mask information not included in the exceptions"); *In re Fibermark, Inc.*, 330 B.R. 480, 503 (Bankr. D. Vt. 2005) ("In the Second Circuit, documents which are part of the court record should not remain under seal absent the most compelling reasons."); *In re Hemple*, 295 B.R. 200, 202 (Bankr. D. Vt. 2003) ("[A]bsent compelling circumstances all documents filed in bankruptcy cases should be available to the public.").

The "policy of open inspection" embraced in § 107 "evidences Congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994) ("*Orion*"). *See also Gitto Global*, 422 F.3d at 8 ("[T]he plain language of § 107(a) evinces a clear congressional intent that papers filed in

bankruptcy cases be available to the public."); *Ferm v. United States Trustee (In re Crawford)*, 194 F.3d 954, 960 (9th Cir. 1999) ("Section 107(a) is rooted in the right of public access to judicial proceedings, a principle long-recognized in the common law and buttressed by the First Amendment.").

## II.    Section 107(b) Does not Permit Redaction of the Identifying Information

Section 107(b) provides for two limited exceptions to the right of public access, neither of which applies here. The court may: (1) protect an entity with regard to certain commercial secrets and information; or (2) "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b). These exceptions are "construed narrowly, in light of the general public policy that court records should be open for public inspection." 2 Lawrence P. King, Collier on Bankruptcy § 107.03(1)(b) (15th ed. Rev. 2007). *See also In re Crawford*, 194 F.3d at 960 n.8 (The exceptions "are construed narrowly."); *In re Fibermark*, 330 B.R. at 506 ("courts have zealously upheld the public's right to access and narrowly construed the exceptions."). As a bankruptcy court in this Circuit reasoned, "If the § 107(b) exceptions do not apply, the inquiry is complete and the Court's decision will favor public access." *In re Fibermark*, 330 B.R. at 506.

The Banks bear the burden of proving that an exception applies and protection is required, a burden that they have not met. *See In re Food Mgmt. Group., LLC*, 359 B.R. at 561 ("The sealing proponent has the burden of proof to demonstrate the grounds for an exception under § 107(b)(2)."); *In re Fibermark*, 330 B.R. at 504 ("The burden is on the parties seeking to seal the report to demonstrate grounds for deviating from the general rule of public access under § 107(a)."). As the Second Circuit noted in *Orion*, "[i]n most cases a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or

compelling need" that overcomes the "strong presumption of public access to court records." *Orion*, 21 F.3d at 26-27; *In re Food Mgmt. Grp., LLC*, 359 B.R. at 554.

The Banks argue that the Identifying Information should be redacted pursuant to § 107(b)(2).[4] Section 107(b)(2) protects a person with respect to "scandalous or defamatory matter" contained in court papers. To meet this standard, specific showings must be made. As this Court has construe the term, "scandalous" matter applies only to material that is "grossly offensive," irrelevant to the proceeding, and submitted for an improper purpose. *Food Mgmt. Group*, LLC, 359 B.R. at 557-59. The protection against disclosure of "defamatory matter" "only applies for statements that are *untrue*, and that can be clearly shown to be untrue without the need for discovery or a mini-trial." *Id.* at 556 (emphasis added).

The Banks barely try – and certainly do not succeed – to meet either of these standards. Instead, the Banks argue that the individuals will have their names "tarnished," leading to "societal stigma." *See* Letter from UBS AG, pp 3-6. This is not a legal basis for redaction. "Papers filed in the bankruptcy court do not fall within the § 107(b)(2) exception merely because they would have a detrimental impact on an interested party's reputation." *Gitto Global*, 422 F.3d at 13. *See also In re Neal*, 461 F.3d at 1054 ("[I]njury or potential injury to reputation is not enough to deny public access to court documents."); *In re Barney's, Inc.*, 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996) (A "claim that the adversary complaint will tarnish the firm's reputation, without more, is insufficient to meet this high burden"; a "desire to avoid professional embarrassment is insufficient."); *In re Food Mgmt Group, LLC*, 359 B.R. at 561 ("[M]ere embarrassment or harm caused to the party is insufficient to grant protection under §

---

[4] We do not challenge the redaction pursuant to § 107(b)(1) of commercial information about JPMorgan's anti-money laundering and know-your-customer programs.

10

107(b)(2)."); *In re Traversa*, 2010 U.S. Dist. LEXIS 117559 *20-22 (D. Conn. Nov. 5, 2010) (materials "hurtful to one's reputation" insufficient for redaction).

### A. The Challenged Information is Not Defamatory Because the Banks Have Not Established it is Untrue

To be redacted as "defamatory," this Court has held that the Banks must show the materials are untrue and "can be clearly shown to be untrue without the need for discovery or a mini-trial." *In re Food Mgmt Group, LLC*, 359 B.R. at 556. "Defamation law leaves no room for inserting the relevance and improper purpose inquiry that the scandalous matter prong of § 107(b)(2) more comfortably incorporates. Nor does defamation law extend its reach to *potentially* untrue statements." *Id.* at 560-61 (emphasis in original).

Only one bank – Natixis – raised this argument. However, despite initially stating that "the complaint contains untrue and damaging allegations about specific employees," Letter from Natixis, p.5, the bank fails to identify a single untruthful statement about any of the employees. As Natixis points out, the complaint against Natixis identifies specific communications and actions by Employees A, B, and C. Natixis does not argue that any of these facts are untrue. Instead, Natixis argues that there is "the potential for the public to be misled to believe that Employees A, B and C engaged in professional misconduct" because the public will infer that "when attributing knowledge and conduct to Natixis, the Complaint in fact is referring [to] the Natixis employees' knowledge and conduct." *Id.* at 5-7. This Court rejected that argument in *In re Food Mgmt Group, LLC*, where the defendant argued that the Trustee's statements about a party, Rattet, combined with allegations about a fraudulent transaction "created a false impression about Rattet's role in these events." 359 B.R. at 562. Because the defendant gave no "clear evidence that *any* offending statement in the adversary complaint is untrue," § 107(b)(2) did not apply. *Id.* (emphasis in original). The same conclusion applies here.

11

### B. The Banks Have Not Established That the Challenged Information is Scandalous

The Banks have failed to show that the Identifying Information is "scandalous." As this Court has held, the protection against "scandalous" matter applies only to material that is "grossly offensive," irrelevant to the proceeding, and submitted for an improper purpose. *In re Food Mgmt. Grp., LLC,* 359 B.R. at 557-59 (citing *Gitto Global*, 422 F.3d 1).

The materials at issue are factual statements about communications and actions by specific employees in the course of their employment, including business emails. The Banks, as discussed previously, do not point to any statements as untrue. This is simply not comparable to "the painful and sometimes disgusting details of a divorce case" or "business information that might harm a litigant's competitive standing" that this Court and others have recognized can be grossly offensive if revealed. *See In re Food Mgmt Grp. LLC*, 359 B.R. at 559 (citations and quotations omitted).

The Banks argue that the Identifying Information is irrelevant to the Trustee's claim or the bankruptcy court's decision. *See, e.g.* Letter from JPMorgan Chase, p. 4 ("public assessment of the Complaint, therefore, is entirely possible without regard to whether a given employee's name is Joe, Bob, Sally, or 'JPMorgan Employee #4"); Letter from Tremont Group Holdings, at 3 ("the names of the non-parties mentioned in the Complaint do not and will not directly affect the adjudication of any matter in dispute"). These arguments overlook that one of the purposes of our open system is precisely to ensure that the identities of individuals *do not* influence the outcome of the case. Disclosure "helps safeguard the integrity, quality, and respect in our judicial system, and permits the public to keep a watchful eye on the workings of public

agencies." *Orion*, 21 F.3d at 26 (citations and internal quotations omitted). It is highly relevant to public oversight whether an employee's name is John Doe or Irving H. Picard, Jr.

> Public scrutiny is the means by which the persons for whom the system is to benefit are able to insure its integrity and protect their rights. This policy of open inspection, established in the Bankruptcy Code itself, is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised.

*In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984); *see also Gitto Global*, 422 F.3d at 7.

Finally, none of the banks have even deigned to suggest the Identifying Information was filed by the Trustee for an "improper purpose." Improper purposes include "gratifying public spite, promoting public scandal, and using court files as 'reservoirs of libelous statements for press consumption," *Gitto Global*, 422 F.3d at 12 (quoting *Nixon v. Warner Communications*, 435 U.S. 589, 589 (1978), or circumventing a statute of limitations, leveraging a settlement, or targeting an improper party. *See In re Phar-Mor, Inc.*, 191 B.R. at 680. The purpose is evaluated by looking to the filer's intent at the time of submission to the court -- "not what a third party's purpose will be in gaining access to that filing." *In re Neal*, 461 F.3d at 1054. The Banks' speculations about the motives of the public in seeking access are improper and irrelevant.

Here, no Bank argues that the very respected Trustee named the bank employees for an improper purpose. A review of the complaints makes clear that the employees are named in relation to specific communications and actions underpinning the Banks' Madoff investments. For example, the Trustee refers to discussions between Tremont employees in which they noted suspicions about Madoff,[5] due diligence on Madoff by JPMorgan Chase employees,[6] and

---

[5] "[A] May 2003 meeting with Madoff attended by Schulman, REDACTED, and Senior Vice President, REDACTED, set forth a number of suspicious facts concerning Madoff." Tremont Complaint ¶ 158.

13

08-01789-cgm    Doc 3952    Filed 03/18/11    Entered 03/18/11 18:09:59    Main Document
                                    Pg 14 of 20

unsuccessful efforts by Natixis employees to obtain financial information from Madoff.[7] The purpose is clearly to substantiate the knowledge and culpability of the Banks for whom they worked. "Where material was filed for a proper purpose, 'the unintended, potential secondary consequence of negative publicity . . . is regrettable but not a basis for sealing the filing." *In re Traversa*, 2010 WL 4683920 *8 (D.Conn Nov. 5, 2010) (quoting *In re Neal*, 461 F.3d at 1054).

### III. The Banks' Reliance on *Amodeo* is Unfounded

As discussed previously, courts have consistently held that disclosure in bankruptcy proceedings is to be determined under the standards of § 107 and not the common law. *See, e.g., Gitto*, 422 F.3d at 18-23 (rejecting the notion that § 107(b) can trigger the traditional common law analysis regarding public disclosure). Nevertheless, the Banks attempt to justify their novel argument for redaction under the Second Circuit's access doctrine in *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995).

Like § 107, *Amodeo* begins with a presumption of access. *Id.* at 1048. The weight of the presumption depends on the "role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049. It is beyond dispute that a complaint, as the basis of the lawsuit, is critical to adjudication. Since the weight of the interest necessary to overcome the presumption "can be informed in part by tradition," *Id.* at 1050, and since entire complaints have traditionally been open, this weighs heavily on the side of public access. Nevertheless, the Banks argue that the Identifying Information is not critical to the matter's adjudication, and that, therefore, it should be redacted.

---

[6] REDACTED [JPMC Employee 19's] group conducted due diligence on BLMIS and, after seeing all of the red flags, chose not to invest with any BLMIS feeder funds." JPMC Complaint ¶ 73.

[7] "REDACTED also of IXIS CIB, asked Vijayvergiya for BLMIS's income statement, and Vijayvergiya claimed that this particular SEC form was the only BLMIS financial information available. It should have been a red flag to Natixis that BLMIS was unable or unwilling to provide its income statement." Natixis Complaint ¶ 153.

First, *Amodeo* focuses on the value of the *document* at issue, not whether isolated words are necessary to the adjudication. Second, as discussed previously, names are critical to judicial accountability and public confidence in the administration of justice – the two purposes underpinning access. *Amodeo*, 71 F.3d at 1048. The employees' identities and positions are also important as a way for the public to evaluate the significance of their actions and the validity of the Trustee's conclusions. In their letter, JPMorgan Chase admits that some job titles are "unique" and would, by themselves, identify the individual, acknowledging that those positions are of extremely senior bank officials, hardly deserving of anonymity. Letter from JPMorgan Chase, p. 4. This level of seniority would affect the weight to be given to the evidence: A red flag email to a low-level employee does not put the employer bank on notice of wrongdoing in the way that it would if sent to the Chief Risk Officer.

Third, these are Bank employees and executives who, in many cases, "have assumed roles of special prominence in the affairs of society," *Gertz v. Welch*, 418 U.S. 323, 345 (1974) (defining "public figure"), by dint of their wealth and influence on the global economy. By their role in a highly regulated industry, the fact that some have testified to Congress and other bodies regarding financial reform, their possible role in this and other financial debacles, and the possibility of promotion to even more influential positions, they "occupy positions of such persuasive power and influence" and "have voluntarily exposed themselves to increased risk." *Id.* They clearly are public figures whose invisibility cannot be countenanced.

Under *Amodeo*, the court must weigh the presumption of access against "competing considerations" including "the privacy interests of those resisting disclosure." *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007). This privacy interest is to be gauged by "the degree to which the subject matter is traditionally considered private rather than public." *Amodeo*, 71

15

F.3d at 1051. The courts' concern is preventing access based on "a morbid craving for that which is sensational and impure" and to information "used to gratify private spite or promote public scandal." The *Amodeo* court gave examples of the sorts of matters to be protected: [f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters." *Id.* In contrast, a person's "financial involvement" does not involve the "intimate affairs and moral convictions" protected under the right to privacy. *See Bell v. Beckwith*, 44 B.R. at 663-63 (Bankr. N.D. Ohio 1984). The filings by a respected Trustee about a matter of deep public concern do not even approach the required standard for private information. Indeed, the Banks' letters do not seriously try to make this showing.[8]

The subject matters here are business transactions in a highly regulated industry, related to the largest banking fraud in U.S. history. *Amodeo* specifically noted that "conduct affecting a substantial portion of the public" receives little protection – clearly the case here. Moreover, the nature of the injury alleged by the Banks is entirely speculative. The Banks do not point to any specific, factual allegations about any employee that are untrue. Instead, the Banks base their argument on a perceived risk that the complaints will be misinterpreted thorough public ignorance or inaccurate press coverage. The presumption in favor of access is heavy, while the privacy interests are weak and speculative. This is not sufficient.

---

[8] The Banks make much of the fact that some information was submitted pursuant to Confidentiality Agreements with the Trustee and Protective Orders filed in this Court. However, private stipulations between the parties cannot trump the interests of the public and press, and clearly are overcome by the constitutional prerogatives of openness. "The law is clear that the countervailing presumption against public access does not apply where, as here, confidentiality designations are made without a showing of good cause." Nycomed US, Inc. v. Glenmark Generics, Inc., 2010 U.S. Dist. LEXIS 20788 *13 n. 6 (E.D.N.Y. 2010) (citing Schiller v. City of New York, 2007 U.S. Dist. LEXIS 4285, 2007 WL 136149 *3 (S.D.N.Y. 2007)).

16

### IV.    The Banks' Cases are Easily Distinguishable

The cases relied upon by the Banks to support redaction are not only easily distinguished, but, tellingly, *none* of the cases were decided under § 107 – the relevant, governing code. As discussed in Part I, § 107 does not call for the balancing performed in the cases cited by the Banks. Under § 107, the information at issue must fall into one of the six enumerated exceptions.

For the sake of expediency, we deal with those cases which are mentioned by at least two of the Banks. Cited by all five is *In re Savitt/Adler Litigation*, 1997 WL 797511 (N.D.N.Y. 1997) (cited, for example, in the JPMorgan Chase letter for the proposition of "finding only a weak presumption of public access to names and identifying details where other relevant information about the employees was available."). However, first, *Savitt/Adler* dealt only with arguably "completely irrelevant" data in joint appendices and joints exhibits; the briefs and affidavits on the relevant motion were entirely accessible. Second, the information at issue was personnel files, including resumes, performance evaluations, and memoranda recommending hiring or rehiring, far more sensitive and traditionally confidential than the information here. Indeed, the Court noted that employment histories were considered private under New York law. *Caxton Int'l Ltd.* v. *Reserve Int'l Liquidity Fund*, 2009 U.S. Dist. LEXIS 67223, 2009 WL 2365246 (S.D.N.Y. July 30, 2009), was cited by four of the banks. However, it too is inapposite. The Court there agreed to redact the names of certain investors of the funds at issue; they were not employees of the the banks as in the case at bar. The investors had no bearing whatsoever on the merits, unlike the banker/employees named in the current complaints. *In re San Francisco Chronicle*, 2007 WL 2782753 (E.D.N.Y. 2007) dealt with the baseball steroids scandal. But, first, the naming of individuals there was held to prejudice a pending government investigation,

not the case here. And second, the names appeared in search warrant materials and proceedings, which the Court noted traditionally, unlike the complaints here, were not open to the public.

Finally, two of the banks also cited *Druck Corp.* v. *The Macro Fund (U.S.) Ltd.*, 2002 WL 31415699 (S.D.N.Y. 2002) and *Prof. Sound Servs.* v. *Guzzi*, 2003 WL 22097500 (S.D.N.Y. 2003), *aff'd*, 159 Fed. Appx. 270 (2d Cir. 2005). Yet in *Druck*, the question of redaction was not even at issue and did not even appear to have been argued in the case. And, again, that case dealt with non-party investors whom the Court felt would not be willing to provide future information if they were named, not party employees. Even further afield, in *Professional Sounds Services*, the redaction was of customers, akin to trade secrets, whose identification may have put the company at a competitive disadvantage. The cases cited by only one Bank are equally immaterial, ranging from *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 161 F.R.D. 355, 358 (N.D. Ill. 1995) (cited by UBS AG) and *Bolla* v. *University of Hawaii*, 2010 WL 5388008 (D. Haw. 2010) (cited by JPMorgan Chase) dealing with redaction of medical records of nursing home patients and questions of "medical privacy", both far more confidential than the issue here, to *Wood* v. *FBI*, 432 F.3d 78, 88-89 (2d. Cir 2005) (cited by JPMorgan Chase), which was a FOIA case interpreting exemption 6 of FOIA and having no bearing whatsoever on the presumption of openness of court filings.

### V.     § 107(c) Does Not Protect Material of This Type

The Banks' reliance on § 107(c) is also misplaced. Section 107(c) permits redaction of identifying information if "such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c)(1). The purpose of the section is to prevent financial crimes. *In re Carter*, 411 B.R. 730, 740 (Bankr. M.D.Fla. 2009) (purpose of § 107(c) is exception to public access where "dissemination of the

18

information would constitute an undue risk of identity theft.") Information redacted under this clause includes social security numbers, bank account numbers, mortgage details, and dates of birth. *See, e.g. In re Traversa*, 371 B.R. at 3 n. 1 (redacting social security number, account numbers, and date of birth pursuant to § 107(c)); *In re Killian*, 2010 WL 2176086 *2 (Bankr. S.D.Ind. 2010) (redacting Social Security Numbers); *In re Matthys*, 2010 Bankr. LEXIS 1765 *5 (Bankr. S.D. Ind. 2010) ("Among the types of disclosure of information that may create such a risk [of identity theft] is the disclosure of an individual's social security number"). The mere name of a non-party is not comparable and does not pose an "undue risk" of identity theft.

For all the reasons set forth herein, it is respectfully submitted that the names and positions and other identifying features of the individuals named in these complaints should be public and that the Court make consistent directions regarding future filings herein.

THE NEW YORK TIMES COMPANY

By: _____
George Freeman
620 8th Avenue
New York, New York 10018
(212) 556-1558
E-mail: freemang@nytimes.com

NBCUNIVERSAL MEDIA, LLC

By: _____
Daniel M. Kummer
30 Rockefeller Plaza, Rm. 1091E
New York, New York 10112
(212) 664-4017
E-mail: daniel.kummer@nbcuni.com