**BECKER & POLIAKOFF LLP**     Hearing Date:   March 30, 2011 at 10:00 a.m.
Helen Davis Chaitman
HCHAITMAN@BECKER-POLIAKOFF.COM
45 Broadway
New York, New York 10006
Telephone (212) 599-3322

*Attorneys for Marsha Peshkin
and a large group of other customers*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                                                    Plaintiff,<br><br>                 v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>                                                    Defendant. | Case No.:  08-01789 (BRL)<br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br>                                                    Debtor. | |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION
TO SET ASIDE THE ORDER APPROVING THE TRUSTEE'S SETTLEMENT WITH
THE LEVY HEIRS FOR FAILURE TO DISCLOSE MATERIAL INFORMATION**

Marsha Peshkin and a large group of other customers (the "Movants") of Bernard L. Madoff Investment Securities LLC ("BLMIS"), submit this reply brief in further support of their motion (the "Motion") to vacate the February 18, 2010 order (Doc # 1964) (the "Order") approving the Trustee's settlement (the "Settlement") with Jeanne Levy-Church and Francis N. Levy, the heirs of Norman F. Levy (the "Levy Heirs"), pursuant to Federal Rule of Civil Procedure 60 and Federal Rule of Bankruptcy Procedure 9024.

**PRELIMINARY STATEMENT**

The Trustee owes a fiduciary duty to the investors and a duty of utter candor to the Court. *See In re Center Teleproductions, Inc.*, 112 B.R. 567, 576 (Bankr. S.D.N.Y. 1990) (quoting *In re Chochise Park College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983)) ("'A bankruptcy . . . trustee is a fiduciary of each creditor of the estate . . . .'"); *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (recognizing that bankruptcy court's decision to approve settlement must be well-informed).

As a SIPA trustee, the Trustee has a further obligation, under 15 U.S.C. §78fff-1(d) to:

> (1) as soon as practicable, investigate the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business, and any other matter, to the extent relevant to the liquidation proceeding, and report thereon to the court;
>
> (2) examine, by deposition or otherwise, the directors and officers of the debtor and any other witnesses concerning any of the matters referred to in paragraph (1);
>
> **(3) report to the court any facts ascertained by the trustee with respect to fraud, misconduct, mismanagement, and irregularities, and to any causes of action available to the estate**; and
>
> (4) as soon as practicable, prepare and submit, to SIPC and such other persons as the court designates and in such form and manner as the court directs, a statement of his investigation of matters referred to in paragraph (1).

The Trustee has utterly failed to fulfill his statutory functions in this case and has gone even further by deliberately concealing material information about Norman Levy's criminal activities in order to improperly obtain the Court's approval for a sweet-heart deal for the Levy Heirs. The Trustee's dishonesty is of particular concern because, since December 11, 2008, the Trustee and his professionals have had exclusive access to the records of BLMIS. The Trustee's

2

dishonesty in procuring the Settlement[1] raises the question whether any of his factual contentions – such as the contention that BLMIS never purchased the securities shown on the investors' statements – can be trusted.  Under these circumstances, the Trustee and his counsel should be immediately removed.

In his motion for approval of the Settlement, the Trustee not only withheld explosive information proving Norman Levy's criminal conduct, but he deceitfully praised the Levy Heirs for being "forthright and sincere in their desire to do 'the right thing.'"[2]

**The Trustee and his counsel made the following representations of fact to the Court and the investors in his application for approval of the Settlement:**

1.    Norman Levy had established a number of accounts at BLMIS in his name, in the names of his children, and for family trusts and charitable trusts, including the Betty & Norman F. Levy Foundation (the "Foundation).  During the six years prior to the Filing Date, the Levy BLMIS Account Holders withdrew an aggregate of approximately $305 million in excess of the amount of deposits made into such accounts, of which $84 million was withdrawn by the Foundation.[3]

2.    The Trustee did not demand that the Foundation re-pay the $84 million that it withdrew and the Levy's offered to pay the remaining $220 million that they withdrew in excess of what they invested.[4]

3.    Mr. Madoff "stole" $250 million from the Levy estate which he invested in BLMIS.[5]

4.    The $220 million offer from the Levy Heirs represented "the entire amount" that the Trustee was entitled to recover.[6]

**The Trustee now admits he knew but concealed the following facts from the Court and the investors in the application for approval of the Settlement:**

---

[1] Capitalized terms have the same meaning as used in the Motion.

[2] 02/18/2011 Declaration of H. Chaitman ("Chaitman Decl.") (Doc # 3862) Ex. E (Trustee's Levy Settlement Motion) Motion for Entry of Order . . . Approving Agreement by and among the Trustee and Jeanne Levy-Church and Francis N. Levy (the "Settlement Motion") at  ¶11; Chaitman Decl. Ex. F (2/18/2010 Hrg. Trans. on Settlement Motion (the "Hrg. Trans.") at 7-8.)

[3] Chaitman Decl. Ex. E, Settlement Motion at ¶7.

[4] Chaitman Decl. Ex.E, Settlement Motion ¶12; Chaitman Decl. Ex. F, Hrg. Trans. at 5-6.

[5] Chaitman Decl. Ex. E, Settlement Motion at ¶6; Chaitman Decl. Ex. F, Hrg. Trans. at 4.

[6] *See* Chaitman Decl. Ex. E, Settlement Motion at ¶12-13; Chaitman Decl.l Ex. F, Hrg. Trans. at 5-6.

3

1. The evidence known to the Trustee at the time he moved for approval of the Settlement proved that, like Picower, Norman Levy was Madoff's criminal co-conspirator. From 1992 through 2001, Levy financed Madoff's Ponzi scheme in an amount exceeding $100 billion.[7]

2. During 2002, BLMIS initiated 318 separate transfers from its account at J.P. Morgan Chase ("Chase") to Norman Levy's account each in the precise amount of $986,301.[8] This constitutes more than one transfer per day that Chase was open for business in 2002.

3. As of December 11, 2008, the Levy Heirs had a $2 billion margin loan from BLMIS.[9]

The Trustee's concealment of material information from the Court and the investors, when he has had exclusive access to all of the BLMIS records for over two years, is not only inexplicable but compels the conclusion that he is not fit to serve as Trustee in this case. Madoff perpetrated the largest financial crime in history. There is a compelling public interest in learning precisely how Madoff carried out his scheme so that steps can be taken to assure that a crime of this proportion does not re-occur.

Rather than fulfill his statutory obligation to disclose all material information concerning the operations of BLMIS' criminal conspiracy, the Trustee has affirmatively chosen to shield and protect the criminals (Picower and Levy) and their relatives, while at the same time persecuting innocent investors who did nothing more than withdraw from their accounts money they believed was theirs and on which they have paid taxes.

---

[7] *See* Chaitman Decl. Ex G (The January 24, 2011 letter from SIPC president Stephen Harbeck to Congressman Scott Garrett, Chair of the House Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises (the "Letter") at 14-15.)

[8] Chaitman Decl. Ex. C (Trustee's complaint in *Picard v. JPMorgan Chase & Co.*, *et als.,* Adv. Pro. No. 10-04932 (the "Complaint") at ¶224.)

[9] SIPC president, Stephen Harbeck, admitted that, as of the date of Madoff's arrest, Picower and the Levy Heirs had a negative net equity balance, or margin loan, of $8 billion. *See* Chaitman Decl. Ex G, Letter at 10, fn. 3. In the *Picard v. Picower, et als.* complaint, Adv. Pro. No. 09-1197 (Doc # 1) (the "Picower Complaint"), the Trustee asserted that one of Picower's accounts reported a staggering margin balance of approximately $6 billion. Picower Complaint at ¶63(d). Thus, the Levy Heirs had a $2 billion margin loan.

Under these circumstances, the Trustee and his counsel should be immediately removed and an independent investigator should be appointed to examine their conduct throughout this case and report to the Court, to the investors, and to the U.S. Attorneys' Office. Removal is appropriate where there is a mere breach of fiduciary duty. *See In re Livore*, 2010 WL 1849322, at *4 (Bankr. D.N.J. May 6, 2010). Here, the Trustee's behavior raises the possibility of something much more serious.

At a minimum, the Trustee should be held personally liable for the damages his conduct has caused the investors. *See In re Gorski*, 766 F.2d 723, 727 (2d Cir. 1985) (holding that in appropriate circumstances, "a surcharge is imposed on the fiduciary in the amount of actual or estimated financial harm suffered . . ."); *In re Center Teleproductions, Inc.*, 112 B.R. at 578 (holding that trustee's actions are not immune from personal liability "[w]here the trustee . . . negligently obtains a court order, or negligently or willfully carried out a court order he knew or should have known he wrongfully procured").

## ARGUMENT

**I.    The Trustee's Concealment of Material Facts from the Court is Inexcusable.**

The Trustee cannot justify his concealment of the undisclosed facts concerning the Levy family's dealings with BLMIS. In appalling arrogance, he argues that this Court's approval of the Levy Settlement without any objection from investors demonstrates that the Settlement was in the best interests of the estate [10] despite the fact that he deliberately withheld the explosive information that would have allowed the investors to object to the Settlement. While, as a matter of law, the Trustee stands in the shoes of Mr. Madoff, that does not mean that he has a license to act dishonestly and defraud the investors.

---

[10] *See* Trustee's Opposition to Customers' Motion to Set Aside the Order Approving the Trustee's Settlement with the Levy Heirs for Failure to Disclose Material Information (the "Opposition") at 4.

5

Moreover, the Trustee's attempt to focus on the alleged reasonableness of the Settlement is a red herring;[11] it does not relieve him of his duty to disclose all material facts pertaining to a proposed settlement to the Court. "There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion." *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424; *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir. 1987) (". . . [B]ankruptcy judge must actually exercise his discretion. He may not simply accept the trustee's word that the settlement is reasonable, nor may he merely "rubber-stamp" the trustee's proposal."). *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993) (citing *In re Energy Cooperative Inc.*, 886 F.2d 921, 924 (7th Cir. 1989)).

In obtaining this Court's approval of the Settlement, the Trustee fraudulently concealed Mr. Levy's criminal conduct and the fact that the Levy Heirs had a $2 billion margin loan from BLMIS as of December 11, 2008. Under these circumstances, the Settlement cannot possibly be reasonable and it is, in any event, the product of the Trustee's fraud.

Arrogantly, the Trustee argues that the Court should not vacate the Settlement because the statute of limitations has run on avoidance actions against the Levy Heirs.[12] Aside from the remedies available against the Trustee and his counsel, the Levy Heirs are liable for aiding and abetting the breach of fiduciary duty of the Trustee and his counsel. The statute of limitations has not run on that claim, which only became known after disclosure of Mr. Harbeck's January 24, 2011 letter to Scott Garrett.

## II.    Relief under Fed. R. Civ. P. 60(b) is Warranted

---

[11] *See id.* at 4-5.

[12] *See* Opposition at 8.

The Trustee argues that the Movants are not entitled to relief under Rule 60(b) because the Trustee's concealment of material facts does not amount to "exceptional circumstances."[13] The Trustee's conclusion is flawed for multiple reasons. First, courts have applied the "exceptional circumstances" test only to the catch-all provision in clause (6) – a clause applicable where "any other reason justifying relief" exists. *See Matter of Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir. 1981) (citing *Ackerman v. United States*, 340 U.S. 193, 199 (1950)) (recognizing that subsection (6) of Rule 60(b) "is properly invoked when there are extraordinary circumstances . . . or where the judgment may work an extreme and undue hardship."). Even so, this clause is broadly interpreted in this Circuit to bring about "substantial justice." *Raddack v. Norwegian Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963); *First Fidelity Bank, N.A. v. Government of Antigua & Barbuda--Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989) ("Rule 60(b) provides for relief 'upon such terms as are just.'").

Second, even if the Court determines that clause (6) is inapplicable, clause (3), which "provides for relief from fraud, misrepresentation or other misconduct of an adverse party," enables this Court to set aside the Order because it was procured on the basis of the Trustee's fraudulent conduct. *See Matter of Emergency Beacon Corp.*, 666 F.2d at 759.

Even if this Court determines that all grounds of Rule 60(b) require presence of "exceptional circumstances," surely the Trustee's deliberate concealment of material facts meets this standard. The Trustee's assertion that his wrongdoing would likely not have changed the Court's decision to approve the Settlement[14] is pure speculation. Had the Movants been aware of the withheld facts at the time of the application for approval of the Settlement, they certainly would have objected and it is inconceivable that the Court would have approved the Settlement.

---

[13] *Id.* at 5-6.

[14] Opposition at 6-7.

Furthermore, a trustee is liable where he "negligently obtains a court order, or negligently or willfully carries out a court order he knew or should have known he wrongfully procured." *See In re Center Teleproductions, Inc.*, 112 B.R. at 578. Surely, if misstatements to a court strip a trustee of his immunity, concealment of material information would constitute "exceptional circumstances" for purpose of Rule 60(b).

## CONCLUSION

This Court has allowed the Trustee and his counsel to have exclusive access to all of the BLMIS records. Based on that exclusive access, the Trustee has taken positions in this case that are devastating to the investors. The Trustee's dishonesty in procuring the Settlement raises the question whether any of his factual contentions – such as the contention that BLMIS never purchased the securities shown on the investors' statements – can be trusted. Under the circumstances, the integrity of the Court compels the removal of the Trustee and his counsel, as well as the vacating of the Order approving the Settlement.

March 23, 2011

        **BECKER & POLIAKOFF LLP**

By: /s/ Helen Davis Chaitman
    Helen Davis Chaitman
    45 Broadway
    New York, New York 10006
    (212) 599-3322

    *Attorneys for Marsha Peshkin*
    *and a large group of other customers*