MOSES & SINGER LLP
Mark N. Parry, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
mparry@mosessinger.com

Attorneys for the Members of L&I Investments LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION                    :
CORPORATION                                       :
                                                  :
                        Plaintiff,                :
                                                  :     Adv. Pro. No. 08-01789-BRL
v.                                                :
                                                  :     SIPA Liquidation
BERNARD L. MADOFF INVESTMENT                      :
SECURITES LLC,                                    :     (Substantively Consolidated)
                                                  :
                        Defendant.                :
------------------------------------------------------------X
                                                  :
In re:                                            :
                                                  :
BERNADRD L. MADOFF,                               :
                                                  :
                        Debtor.                   :
                                                  :
------------------------------------------------------------X

## OBJECTION TO TRUSTEE'S DETERMINATION OF
## THE CUSTOMER CLAIMS OF THE MEMBERS OF L&I INVESTMENTS LLC

Each of the members (each an "Claimant" and collectively, the "Claimants")[1] of L&I

---

[1] The Claimants are: 1984 Goldrich Family Irrevocable Trust; 444 East 75th Street Venture; 444 Investment Group LLC; Banbury Lake Village Co. LLP; BWCI, Inc.; Ocean Reef Rental Pool; Chesapeake Investment Company LLP; College Park Square III Associates LLLP; College Park Square IV Associates LLP; Goldfrost Company LLP; Grandchildren's Trust U/A dated 9/11/90; I.William Berger; Janice T. Goldrich; Janice T. Goldrich Irrevocable Trust-2000; Larrymore Investment Group LLC; Larrymore Organization, Inc.; Lauren J. Goldrich Irrev Trust #3 – 1996; Lawrence J. Goldrich; Lawrence J. Goldrich Foundation; Oceana Properties LLC; Ororico Properties LLC; Pocomoke Plaza Shopping Center; Point-O-Woods Company LLLP; Round Bay Realty Company LLP;

861301                                          1

Investments LLC ("L&I"), by and through their undersigned counsel, hereby object to the determinations by Irving H. Picard, as trustee (the "Trustee") of Bernard L. Madoff Investment Securities LLC ("BLMIS"), denying each of the Claimants' timely filed customer claims (collectively, the "Customer Claims") against BLMIS, and respectfully represent as follows:

## BACKGROUND

1. In 2004, the initial members of L&I (the "Initial Members") approached Bernard L. Madoff ("Madoff") and sought to open accounts with BLMIS in each of their individual capacities so that they could each invest in the securities market through BLMIS. Madoff advised the Initial Members that BLMIS would not open an account for each of them since the amounts to be invested were below BLMIS' minimum threshold requirement and instructed the Initial Members to pool their investments, establish a limited liability company, and invest in BLMIS through that limited liability company. As a result, on January 1, 2005, the Initial Members formed L&I, whose sole purpose was to be the conduit pooling vehicle through which L&I members could invest through BLMIS as instructed by Madoff.

2. Each of the Claimants is a member of L&I. Each Claimants' proportionate membership interest in L&I was directly tied to the amount of the Claimants' investments maintained at BLMIS at any time. At all times, each of the Claimants was free to contribute additional funds to increase its investment at BLMIS or to cause the Claimants' investment at BLMIS to be redeemed. L&I did not participate in any other activity or business other than pooling the Claimants' investment capital so that they could invest in BLMIS. L&I did not make any investment decisions or exercise managerial authority with respect to any of Claimants'

---

Scarborough Lane Shoppes LLC; Stony Run Company LLC; Stony Run II Company LLC; Virginia Beach Investment Company; West Point Square LLC; Patricia S. Goldrich; Vicki E. Goldrich; Lauren J. Goldrich; Executive Park Company LLLP; I.W. Berger Trst dtd 12/31/97 fbo Lauren J. Goldrich; The Larrymore Foundation; Best Square Associates.

861301                                        2

investment capital, or with respect to the investments purportedly made by BLMIS. L&I had no control over Claimants' investment capital. At all times, control over investment capital remained with and was exercised by the Claimants. L&I had no expertise and did not provide an array of services to Claimants; it acted only as a conduit to invest in BLMIS. Finally, L&I made no profit by acting as conduit.

3. While the BLMIS accounts were in the name of L&I, account numbers 1-L0225-03-0 and 1-L0225-04-0, BLMIS did not solely deal with L&I. For more than three years, BLMIS in numerous instances dealt directly with the Claimants, accepting, in the aggregate, no less than $16,500,000 of Claimants' funds directly from Claimants outside of L&I. Upon receipt, BLMIS in turn deposited such funds into L&I's account with it. Attached hereto as Exhibit A are transaction documents evidencing that at least $16,500,000 was directly transferred to BLMIS by the Claimants and deposited into L&I's account.

4. In connection with the above-captioned liquidation proceeding commenced against BLMIS pursuant to the Securities Investor Protection Act of 1970 ("SIPA"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Procedures Order") [Dkt. No. 12] establishing various procedures for the filing and determination of customer claims. To the extent the Trustee disagrees with the amount asserted in a customer claim, the Procedures Order provides that the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore . . . ." Procedures Order at 6.

5. On or about May [7] 2009, Claimants timely filed their Customer Claims with the Trustee pursuant to the Procedures Order, which Customer Claims were filed together by way of an aggregate claim representing each of the separate individual Customer Claims of each of the

Claimants. Alternatively, the Customer Claims asserted a customer claim for L&I in the event it was determined that each of the Claimants was not entitled to their individual Customer Claims.[2] A copy of the Customer Claims is attached hereto as Exhibit B.

6. By notices dated January 28, 2010 (each a "Determination Notice" and collectively, the "Determination Notices"), copies of which are attached here to as Exhibit C, the Trustee notified each of the Claimants of his determination denying each of the Customer Claims. In each Determination Notice, the Trustee summarily stated that each of the Customer Claims had been denied because:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA, as that term is defined at 15 U.S.C. § 78lll(2). Accordingly, your Claim for securities and/or a credit balance is DENIED.

7. Pursuant to the Procedures Order, Claimants' deadline to respond to the Determination Notices is February 28, 2011.

## ARGUMENT

**I. SIPA CONTAINS NO REQUIREMENT THAT CLAIMANTS HAVE A DIRECT ACCOUNT WITH BLMIS TO BE A "CUSTOMER" ENTITLED TO PROTECTION.**

8. Contrary to the Trustee's Determination Notices, each of the Claimants is a "customer" of BLMIS under the plain meaning of SIPA, and, thus, each of the Claimants is entitled to receive $500,000 in Securities Investor Protection Corporation ("SIPC") insurance. The Trustee's determination that each of the Claimants must have had a specifically titled

---

[2] Prior to the July 2, 2009 bar date to file customer claims, the Claimants supplemented their Customer Claims by sending the Trustee additional documentation. Because the Trustee issued to each of the Claimants two Determination Notices denying their Customer Claims, it appears that the Trustee treated Claimants' supplemental documents as additional customer claims. For purposes of clarification, each of the Claimants filed one Customer Claim against BLMIS, which was then supplemented.

861301    4

account recorded among BLMIS's "available books and records" has no statutory basis and is inconsistent with the purpose of SIPA.

9. To be protected under SIPA, an investor must come within the statutory definition of "customer". Section 78lll(2) of SIPA defines "customer" as:

> ***any person*** *(including any person with whom the debtor deals as a principal or agent)* ***who has a claim on account of securities*** *received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such persons for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. . . .* ***The term "customer" includes*** *any person who has a claim against the debtor arising out of sales or conversions of such securities, and* ***any person who has deposited cash with the debtor for purposes of purchasing such securities*** *. . . .*

15 U.S.C. § 78lll(2) (emphasis added); *see also Rosenman Family, LLC v. Picard*, 401 B.R. 629, 635 (Bankr. S.D.N.Y. 2009) ("the mere act of entrusting . . . cash to the debtor for the purpose of effecting securities transactions . . . triggers customer status. . . ."); *SEC v. Ambassador Church Financial Develo. Group, Inc.*, 679 F.2d 608, 614 (6th Cir. 1982); *In re Primeline Sec. Corp.*, 295 F.3d 1100, 1107 (10th Cir. 2002) ("SIPA does . . . protect claimants who try to attempt to invest through their brokerage firm but are defrauded by dishonest brokers . . . if a claimant intended to have the brokerage purchase securities on the claimant's behalf and reasonably followed the broker's instructions regarding payment, the claimant is a 'customer' under SIPA even if the brokerage or its agents misappropriate the funds"); *Miller v. DeQuine (In re Stratton Oakmont, Inc.)*, 2003 WL 22698876 at *3 (S.D.N.Y. Nov. 14, 2003) ("Stratton Oakmont's conversion of Claimants' property makes them customers within the meaning of SIPA.").

10. The broad statutory definition of customer contains no requirement that an investor have an account directly with the debtor. *See, e.g.*, *In re First State Sec. Corp.*, 34 B.R. 492, 495-96 (Bankr. S.D. Fla. 1980) (finding claimants were "customers" of debtor where

claimants' accounts were with a third-party broker and not the debtor itself). If Congress had intended to limit "customers" to account holders it could have done so by expressly conditioning customer status on that fact. But Congress did not condition customer status on whether the claimant was an account holder. Indeed, the first draft of SIPA provided SIPC insurance coverage to only those customers whose name or interest was disclosed on the records of the broker-dealer. S. 2348, 91st Cong. Section 7(d) (June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug. 4, 1969). That precondition to customer status was eliminated in the final version of SIPA enacted into law.

11.  In addition, SIPA is remedial legislation intended to protect investors of insolvent brokers and, as such, should be construed liberally to effect its purpose. *First State Sec. Corp.*, 34 B.R. at 495-96 (*citing Tcherepnin v. Knight*, 389 U.S. 332 (1967)). The Trustee's overtly strict construction of the term "customer" to exclude Claimants is inconsistent with that purpose, reads into SIPA a requirement that does not exist, and ignores the fact that Claimants entrusted their personal funds with BLMIS and, in fact, the Claimants directly deposited at least $16,500,000 with BLMIS to purchase securities, monies that did not flow through L&I.

**II.    SIPA EXPRESSLY AFFORDS PROTECTION TO INDIRECT INVESTORS.**

12.  By its terms, SIPA expressly intends to protect indirect investors:

> no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established . . . that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank (which customers are not themselves a broker or dealer or bank or a person described in paragraph (4)), ***in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor***.

15 U.S.C § 78fff-3(a)(5) (emphasis added).

861301                                           6

13. Under that provision, Congress made clear that SIPA affords protection to certain indirect investors, i.e. investors participating in the securities markets through financial intermediaries. Participation through such financial intermediaries obviates any need for a direct account relationship between the investor and a debtor. *See First State Sec. Corp.*, 34 B.R. at 495-96 ("There is nothing in SIPA which suggests that coverage should be denied merely because the debtor used the facilities of another innocent broker in converting its customer's property."). Indeed, there is no substantive difference between direct and indirect investors, both ultimately tried to participate in the securities markets through the same broker-dealer – BLMIS. This is particularly true where, as here, the financial intermediary through which the investors invested was established at the instruction of the broker-dealer and the investors possessed the usual traits of having a customer relationship with that broker-dealer.

14. Further, under SIPA, only two categories of persons are excluded from customer status: (i) any person with a claim arising out of transactions with a foreign subsidiary of a member of SIPC; and (ii) any person with a claim for cash or securities which can be considered part of the capital of the debtor, or which is subordinated to the claims of any or all creditors of the debtor. 15 U.S.C. § 78lll(2). Investors, like Claimants, are not included in either of those two exceptions. Had Congress intended to exclude investors like Claimants from the definition of "customer", it would have done so explicitly – either by specifying them within a third enumerated exception, and/or by making the existence of a specifically titled account within the debtor's "available books and records" an express condition for obtaining "customer" status. But Congress did not do so.

15. To determine whether each of the Claimants is entitled to customer status under SIPA, the Trustee applies a litmus test of whether the Claimants were an account holder at

861301                                    7

BLMIS. But neither the plain language of SIPA nor how SIPA has been interpreted by the courts applies such a litmus test and the Trustee does not dispute this. Indeed, at the hearing before this Bankruptcy Court on October 19, 2010 regarding the issue of whether investors in certain feeder funds are customers under SIPA, the Trustee admitted that an investor would be entitled to customer status even if such investor did not have an account with the broker-dealer. At that hearing, the Trustee's counsel stated:

> Sheehan: So, my colleagues have pointed out, well, you could have a defrauding broker who gets the money, doesn't open an account and steals it. And that person would be deemed a customer. And they're quite correct.

Transcript of Record at 12:14-17, *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789, Dkt. No. 3062 (October 19, 2010) (the "Oct. 19th Hr'g Tr."). A copy of the relevant portion of the Oct. 19th Hr'g Tr. is attached hereto as Exhibit D. In that hypothetical, the investor had no account with the broker-dealer, but yet the Trustee admits that such an investor would be entitled to customer status under SIPA. The Trustee cannot dispute that it is the characteristics of the investment vehicle through which investors like Claimants invested in BLMIS that determines whether such investors are customers under SIPA. *See* Oct. 19th Hr'g Tr. at 12-24.

16.   The Trustee cannot rely on the Second Circuit's decision in *Securities Investor Protection Corporation v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314 (2d Cir. 1976). The Second Circuit's decision makes clear that entitlement to customer status under SIPA is not contingent on satisfying the litmus test of being an account holder, but rather on the characteristics of the investment vehicle. The *Morgan Kennedy* decision is readily distinguishable on its facts.

861301                                  8

17. In *Morgan Kennedy*, employees who were trust beneficiaries of a trust established under the employer's profit sharing plan each filed individual customer claims against a failed broker-dealer at which the trust corpus was invested. The employee-trust beneficiaries were not traders. The Second Circuit focused on whether such beneficiaries were investors who were entitled to customer status, which in turn required the Second Circuit to analyze whether the employee-trust beneficiaries possessed the "usual traits" of a customer relationship with the failed broker-dealer. *Id*. at 1318. In determining the question of customer status, the Second Circuit analyzed the characteristics of the investment vehicle through which the employee-trust beneficiaries invested in the broker-dealer and found that, *in addition to* not being account holders, the trust beneficiaries had "no dealings whatsoever with the broker-dealer", all investments decisions and control over the trust corpus was exercised solely by the trustees, none of the trust beneficiaries' personal funds were invested with the broker-dealer (all funds invested came from the employer through the trust), and the trust beneficiaries were not known to the broker-dealer. After analyzing all of these characteristics, the Second Circuit determined that the trust beneficiaries could not be customers under SIPA. *Id*. at 1317-18. The employee-trust beneficiaries did not possess the "usual traits" of having a customer relationship with the failed broker-dealer.

18. The Second Circuit's decision in *Morgan Kennedy* requires an analysis of the characteristics of the investment vehicle to determine whether investors like Claimants are customers under SIPA. *Id*. at 1318. Here, the Trustee failed to perform such an analysis or intentionally ignored it with respect to the Claimants.

19. Unlike the employee-trust beneficiaries in *Morgan Kennedy*, the characteristics of L&I demonstrates that each of the Claimants is entitled to customer status under SIPA. Each of

the Claimants was an investor possessing the "usual traits" of having a customer relationship with BLMIS: each of the Claimants invested in BLMIS and had complete control to increase or redeem their investments at BLMIS; L&I did not make any investment decisions or exercise any managerial authority with respect to Claimants' investments; L&I did not provide Claimants with due diligence about BLMIS; Claimants deposited their personal funds directly with BLMIS outside of L&I; and Claimants were known to BLMIS. L&I was established purely at the instruction of Madoff and it was merely a conduit through which Claimants invested in BLMIS. Under these circumstances, the fact that the account at BLMIS was in the name of L&I does not preclude a finding that each of the Claimants is a "customer" under SIPA.

## IV.    THE TRUSTEE HAS FAILED TO COMPLY WITH THE PROCEDURES ORDER

20.    Pursuant to the Procedures Order, the Trustee is required to satisfy customer claims and deliver securities in accordance with "the Debtor's books and records." Procedures Order at 5. The November 30, 2008 account statement, attached hereto as Exhibit E, generated by BLMIS is reflective of "the Debtor's books and records". Absent proof that the Claimants did not have a "legitimate expectation" that the balance on the account statement represented their property, the Trustee is bound by that account statement representing the Claimants' aggregate investments at BLMIS.

21.    The Trustee has failed to state any legitimate basis in the Determination Notices for his determination, and, thus, the Trustee has not complied with the requirement that an "objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses." Collier on Bankruptcy ¶

861301                                    10

3007.01(3)(15th ed.); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261 (Bankr. S.D.N.Y. Jan. 13, 2003).

## JOINDER TO PLEADINGS OF OTHER SIMILARLY SITUATED INVESTORS AND RESERVATION OF RIGHTS

22. Claimants hereby join, and fully incorporate by reference as if fully restated herein, the arguments and authority cited in the objections and briefs filed on behalf of similarly situated claimants (i.e. other "indirect investors"). Any failure to object on any particular ground shall not be construed as a waiver of and is without prejudice to Claimants' rights to object on such ground at a later date. Claimants reserve their rights to revise, supplement or amend this Objection.

## RELIEF REQUESTED

23. For the reasons stated herein, Claimants respectfully request that the Bankruptcy Court overrule the Determination Notices and find that Claimants are "customers" within the meaning of 15 U.S.C. § 78lll(2), direct that Claimants be treated by the Trustee in the same manner and grant them relief in BLMIS liquidation proceeding to the same extent as direct investors in the BLMIS, and grant such other and further relief as may be just, proper, and equitable.

Dated: March 28, 2011
      New York, New York

MOSES & SINGER LLP

By:   /s/ Mark N. Parry
      Mark N. Parry, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
mparry@mosessinger.com

Attorneys for the Members of L&I Investments LLC

861301        11