# Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

David J. Sheehan
direct dial: 212.589.4616
dsheehan@bakerlaw.com

March 18, 2011

**VIA EMAIL**

Honorable Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: *Trustee's Response to the Court's March 4, 2011 Order Directing Parties to Show Cause By Letter Submission for Maintaining Redactions*

Dear Judge Lifland:

    We are counsel to Irving H. Picard, as Trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.*, and the estate of Bernard L. Madoff, individually.

    On March 4, 2011, the Court entered an Order Directing Parties to Show Cause By Letter Submission for Maintaining Redactions (the "Order") in response to a conference held on February 24, 2011 with counsel for WNBC-TV, NBC News, CNBC, and The New York Times Company, the Trustee, and counsel for various defendants regarding the concerns raised with maintaining redactions in certain complaints.[1] The Order instructed all interested parties to show cause by filing a letter submission with the Court setting forth grounds for maintaining redactions of names of parties, employees, or other individuals named in the complaints by March 10, 2011.

    While the Trustee did not anticipate responding to these letter submissions, in light of the contents of various letters, the Trustee is compelled to correct inaccuracies and respond to certain assertions made by various parties in these submissions.

    In addition, although the Trustee stands by his position that it is up to the Court to balance the equities, to the extent that defendants do nothing more than contend that an individual's mere association in any way whatsoever with the Madoff matter is

---

[1] We believe the Court has copies of all of the complete unredacted complaints, referenced herein, but to the extent the Court needs any courtesy copies of any of these complaints, we will be happy to provide them to the Court.

*Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa*
*Denver   Houston   Los Angeles   New York   Orlando   Washington, DC*

sufficient cause to keep an identity redacted, the Trustee respectfully disagrees. Other than when an individual is named as a defendant, it is the institution which is charged with liability for its role in turning a blind eye to indicia of fraud. Individuals played a variety of roles, including that of apprising others of potential fraud at BLMIS. Under these circumstances, a blanket ruling that all identities should remain redacted does not appear warranted. Nor has there been any compelling reason provided as to why a defendant's name should remain redacted.

The Trustee respectfully submits the following response with respect to the submissions by counsel for banks, BLMIS feeder funds, and bad faith actors.

**Picard v. Natixis, et al., Adv. Pro. No. 10-05353**

On March 10, 2011, counsel for Natixis (in its own capacity and as successor in interest to Defendant IXIS Corporate & Investment Bank) and Natixis Financial Products LLC (as successor in interest to Natixis Financial Products Inc.) (collectively, the "Natixis Defendants" or "Natixis") submitted a letter to the Court setting forth bald assertions that the Trustee's allegations were untrue, defamatory under French and United States law and scandalous, and would therefore result in damage to their employees' professional and personal reputations. The Trustee's allegations are not scandalous or defamatory, and he stands by his allegations as true. Natixis' arguments to the contrary have no merit. Indeed, Natixis' letter is little more than a premature attack on the merits of the Complaint, and nothing in their letter justifies the redaction of employee names.

Section 107 of the Bankruptcy Code (and similarly, Federal Rule of Bankruptcy Procedure 9018) provides the Court with the power to deny public access to papers filed therewith in order to "(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b).

Courts in the Second Circuit define scandalous and defamatory material "as 'material that would cause a reasonable person to alter their opinion of a party based on the statements therein, taking those statements in the context in which they appear.'" *In re Food Mgmt. Group, LLC*, 359 B.R. 543, 557 (Bankr. S.D.N.Y. 2007)(quoting *In re Fibermark*, 330 B.R. 480, 507 (Bankr. D.Vt. 2005)). Scandalous material is only protected where it is "grossly disgraceful," irrelevant, and submitted for an improper purpose. *In re Food Mgmt. Group, LLC*, 359 B.R. at 557-59, 562 (quoting Black's Law Dictionary 623 (2d ed. 2001)). Defamatory statements are "patently untrue." *See In re Food Mgmt. Group, LLC*, 359 B.R. at 559-61. The statements must be clearly untrue without any need for discovery. *See id.* at 507-508, 556, 562. In addition, it is not sufficient that information will be "prejudicial or embarrassing" to the party seeking protection. *See id.* at 507-508.

In contending that various allegations are untrue, Natixis attempts to argue the merits of its case. For example, Natixis contends that "Paragraphs 150 through 177 of the Complaint contain repeated conclusory allegations that Natixis generally and Employees B and C in particular were aware of specific red flags and deliberately

ignored them. . . . These types of allegations against Natixis and its employees, which will be shown to be untrue, do not constitute proven fact." (Natixis Ltr at 6-7.) Natixis' assertions as to whether allegations are conclusory, or which Natixis argues without support "will be shown to be untrue," simply are not relevant to the Court's determination as to whether employee names should remain redacted.

Similarly, Natixis asserts that the use of employee names in the Complaint is not relevant, and therefore scandalous, because the allegations are presented in "a misleading manner that would lead a reasonable reader to conclude they engaged in alleged professional misconduct." (Natixis Ltr at 9.) What Natixis fails to disclose to the Court is that more than two-thirds of the paragraphs at issue contain direct quotations from either e-mail communications sent by Natixis employees, or direct quotations from the Tensyr Limited Rating Memorandum prepared by IXIS CIB. Specifically, paragraphs 151, 155, 156, 157, 160, 174, and 177 contain direct quotations from e-mail communications sent by Natixis employees, and paragraphs 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, and 173 contain direct quotations from the Rating Memorandum.[2] Thus, while Natixis asserts the allegations in paragraphs 150-177 of the Complaint "will be shown to be untrue, [and] do not constitute proven fact," they include and are based on statements from Natixis, or its employees. (Natixis Ltr at 6-7.)

Given that the majority of the allegations Natixis takes issue with are direct quotations, Natixis thus argues that the issue is the *inference* to be made from these quotations: "the public would incorrectly infer that Employee A had actual knowledge of this purported 'red flag,' and nevertheless continued transacting business related to BLMIS while disregarding this information, presumably in breach of professional standards of conduct. The reader just as readily will infer that Employees B and C - also alleged to have been involved in creating or executing certain of the Madoff related investments - likewise were privy to but disregarded this alleged red flag." (Natixis Ltr at 6.) However, Natixis' conjecture about public opinion cannot determine whether the contents of the Complaint are true for purposes of Section 107 and Rule 9018. Redactions also are not justified simply because of Natixis' concern that the French public "cannot be expected to know that allegations of 'fraudulent transfers' under Section 548 of the Code do not mean that the transferee (i.e., Natixis) is accused of having 'fraudulent' intent," or because they will "generally attribute similar weight to allegations made in a complaint brought by a trustee in bankruptcy to those made by an investigating magistrate in a criminal complaint." (Natixis Ltr at 8.)[3]

---

[2] Notably, the Rating Memorandum, produced to the Trustee by a third-party with no claims of confidentiality, is the exact same document that Natixis' counsel has repeatedly attempted to shield from the public by requesting the Trustee to affirmatively mark another entity's non-confidential document as "Confidential." The Trustee has refused to do so, although the document was not attached to the Complaint.

[3] The Quentin Declaration, submitted by Natixis to demonstrate the effect of the Complaint on French public opinion, is speculative and should be accorded no weight, particularly as Mr. Quentin gives his "expert opinion" on what the French public would infer. (*See, e.g.*, ¶¶ 11-14.)

Honorable Burton R. Lifland
March 18, 2011
Page 4

\* \* \*

Stripped of Natixis' rhetoric about the applicability of Section 107 and Rule 9018, Natixis' letter is nothing more than an impermissible attempt to argue the merits of the case before the Court. The Trustee reserves the right to contest Natixis' assertions as to the merits of the Complaint at the appropriate juncture.

### Picard v. JPMorgan Chase & Co., et al., Adv. Pro. No. 10-05310 (the "JPMC Complaint")

JPMC seems to imply that the Trustee agrees with its position that employee names should continue to be redacted. (JPMC Ltr at 2.) This is not true. The Trustee's consistent position has been, and continues to be, that employee names and associated identifying information should continue to be redacted *pending a ruling by this Court* as to the propriety of those redactions. In addition, JPMC argues that the titles and positions of employees, when redacted to protect their identities, is of no import. (JPMC Ltr at 4.) However, these titles and positions are important as they show that high level executives of JPMC had knowledge of the likelihood of fraud at BLMIS. Finally, JPMC does not disclose, but it is worth noting, that some employee names have not been kept confidential abroad.

JPMC also addresses the redactions in the Complaint dealing with the anti-money laundering ("AML") related allegations, and appears to imply that the Trustee agrees that all redacted material deals with confidential information. However, this is an overstatement. The Trustee agrees that AML is an area which presents confidentiality concerns and that the redactions made are not unreasonable. However, these redactions are the result of compromise, and the Trustee reserves the right to challenge these redactions, and the redactions dealing with due diligence, if information becomes available showing that redaction is not necessary.

### Picard v. Citibank, N.A., et al., Adv. Pro. No. 10-05345 (the "Citibank Complaint")

Citibank implies that the Trustee has agreed to keep employee names redacted. (Citibank Ltr at 2.) However, the Trustee's agreement to the filing of a redacted version of the Citibank Complaint was pending this Court's resolution as to the propriety of these redactions. Furthermore, the Trustee disagrees with Citibank's view that the identities of current or former employees are immaterial or unnecessary.

### Picard v. UBS AG, et al., Adv. Pro. No. 10-04285 (the "Luxalpha Complaint") and Picard v. UBS AG, et al., Adv. Pro. No. 10-05311 (the "LIF Complaint")[4]

In its March 10, 2011 letter to the Court, UBS AG contends that as a result of the Luxalpha and LIF Complaints, the reputations of the UBS employees at issue "would be impaired, personal relationships ruined, and businesses destroyed on the

---

[4] Counsel for UBS appears to be abandoning any effort to maintain paragraphs 105 and 113 of the LIF Complaint under seal as they say in their letter they have "agreed that the entirety of the Complaints, save for certain Individual Identifying Information, may now be unredacted." (UBS Ltr at 2.)

basis of misleading or downright false information." (UBS Ltr at 6.) Yet, the paragraphs to which UBS refers in its letter, 104, 105, 106, 110, 111, 112, 113, 115, and 143 of the Luxalpha Complaint and 81, 82, 83, 87, 88, 89, and 90 of the LIF Complaint, all contain *direct quotations or excerpts* derived from documents produced by UBS AG and/or its corporate affiliates (collectively, "UBS"), which consist of e-mail communications authored by, or sent to, the six individuals currently or formerly employed by UBS (the "Individual Identifying Information") (UBS Ltr at 1 and 2, n.1.) Indeed, if the statements and/or information in the UBS-produced documents underlying these paragraphs in the Luxalpha and LIF Complaints contain "downright false information," as UBS now argues, that information comes from UBS itself and the employees whose identities UBS seeks to hide. Finally, UBS mentions that the employees at issue are "innocent bystanders." (UBS Ltr at 4.) That is not an accurate characterization, as each UBS employee identified played a role in connection with UBS's due diligence efforts or with the administration of BLMIS feeder funds or custody of those funds. (Paragraphs 104, 105, 106, 110, 111, 112, 113, 115, and 143 of the Luxalpha Complaint and Paragraphs 81, 82, 83, 87, 88, 89, and 90 of the LIF Complaint.)

The Trustee reserves the right to address UBS's characterizations at the appropriate juncture.

### Picard v. Defender Limited, et al., Adv. Pro. No. 10-05229 (the "Defender Complaint") and Picard v. UBS AG, et al., Adv. Pro. No. 10-05311 (the "LIF Complaint")

Reliance International Research LLC ("RIR") seeks to keep the name of the "RIR Principal" confidential. However, RIR fails to disclose to the Court that the name of the "RIR Principal" has already been identified in publicly filed redacted versions of the Defender Complaint and the LIF Complaint and is a defendant in the Defender Complaint. The RIR Principal's name thus has been known to the public since December 5, 2010.[5]

RIR does not provide any basis as to why the privacy interests of the RIR Principal and certain non-parties and/or individuals, without any further elaboration, should be redacted pursuant to Section 107 and Rule 9018. RIR merely asserts privacy interests in conclusory fashion. RIR simply argues that the disclosure of the RIR Principal, a named defendant in the Defender Complaint, is "unnecessary and prejudicial" and that he "will suffer prejudice, negative publicity, and financial adversity with the public disclosure of his name." (RIR Ltr at 2 and 3.) This unsupported statement is insufficient to justify the redactions RIR seeks.[6]

The Trustee reserves the right to address RIR's factual and legal arguments pertaining to the merits of the case at the appropriate juncture.

---

[5] RIR's discussion of why the "RIR Principal should not have been named as a defendant in the Defender Complaint in the first place" is completely outside the bounds of the Court's March 4, 2011 Order. (RIR Ltr at 3.)

[6] RIR also argues that the Trustee did not adequately allege specific subsequent transfers. (RIR Ltr at 4.) That argument constitutes a direct attack as to the merits of the Defender Complaint. The Trustee strongly disagrees, but does not address that argument in this letter as it is completely irrelevant to the issue of the redaction of the RIR Principal.

### Picard v. American Securities Management, L.P., et al., Adv. Pro. No. 10-05415 (the "American Securities/PJ Complaint")

The letter briefs submitted by counsel for PJ Administrator LLC ("PJ") and various individual defendants assert that PJ "is in discussions with the Trustee to secure the dismissal of . . . net and total losers from the proceeding."[7] (PJ Ltr at 1.) Counsel for PJ further assert that "based on those discussions . . . there is a likelihood that such persons will be dismissed . . . before any answer motion or other response is due in proceeding." Id. Therefore, PJ has asked for the Court to exempt the complaint from an order to unseal the captions and/or content of complaints filed under seal, or alternatively, stay the order as to this proceeding for a period of sixty (60) days. The discussions between PJ, the holder of the BLMIS account, and the Trustee are preliminary and it is not possible at this time to predict whether they will lead to any resolution or even how long they can be expected to continue. To date, PJ has not even identified which defendants it believes should be dismissed, let alone provided the Trustee with any basis on which to evaluate PJ's claim that they are "net" or "total losers."

\* \* \*

The Trustee reserves all rights with respect to the merits-based arguments in the letter submissions.

Respectfully submitted,

*[signature]*

David J. Sheehan

DJS/dp

cc: Attached Service List

---

[7] A letter was also submitted under seal by Daniel Kornstein, Esq. on behalf of several individual defendants in the American Securities/PJ Complaint. The Trustee has not received a copy of this submission. Mr. Kornstein has explained that he will not provide the Trustee with a copy of this letter because of his belief that the letter contains personal and confidential information and his interpretation that the Court's March 4, 2011 Order does not obligate him to do so.