Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
And Bernard L. Madoff*

Hearing Date: May 12, 2011
Hearing Time: 10:00 A.M. EST

Objection Deadline: May 5, 2011
Time: 4:00 P.M. EST

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff,<br><br>                    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor. | |

**SIXTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
<u>OCTOBER 1, 2010 THROUGH JANUARY 31, 2011</u>**

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., as trustee

(the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively,

"Debtor"), respectfully submits this sixth application (the "Application") on behalf of the Trustee

and itself for an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of title 11

of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to Section 78eee(b)(5)

of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and

Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly

Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126),

as amended on December 17, 2009 (ECF No. 1078) (collectively, the "Compensation Order"),

allowing and awarding (i) interim compensation for services performed by the Trustee and B&H

for the period commencing October 1, 2010 through and including January 31, 2011 (the

"Compensation Period"), (ii) reimbursement of the Trustee's and B&H's actual and necessary

expenses incurred during the Compensation Period, and (iii) reducing the holdback and releasing

certain funds; and in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The work of the Trustee and his counsel during this Compensation Period

could not have been more significant in terms of the results achieved for the victims of Madoff's

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

fraud.  As they have since their appointment in December 2008, the Trustee and his counsel continued to work diligently on behalf of customers and the estate of BLMIS, in accordance with SIPA and under the supervision of this Court.  The significant settlements entered into during this Compensation Period alone – a $550 million settlement with Carl J. Shapiro and related parties, a $470 million settlement with Union Bancaire Privée, and a $5 billion settlement with the estate of Jeffry Picower – the latter of which is the largest settlement to date, evidence their efforts.

2.     When those settlement funds are combined with prior recoveries and settlements, over $7.6 billion has been recovered by the Trustee for the BLMIS estate.  Measured against the amount of principal lost by investors in this scheme – currently valued at approximately $17 billion – the Trustee has recovered more than 44% of the principal lost.  The Trustee and his counsel have expended enormous effort recovering Customer Property, as that term is defined under section 78*lll*(4) of SIPA,[2] and have achieved great success in doing so.

3.     In addition to working to recover as much money as possible for victims, the Trustee and his counsel have endeavored to determine all customer claims and promptly address questions and concerns of customers and creditors.  Indeed, by the time the Court hears this Application on May 12, 2011, the Trustee will have determined virtually every one of the 16,518 customer claims submitted to him.

4.     Independent of these efforts and their success, no administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage

---

[2] SIPA § 78*lll*(4) defines "Customer Property" as "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

commission schedule for trustees found in section 326(a) of the Bankruptcy Code is <u>not</u> applicable in a SIPA liquidation, *see* section 78fff(b) of SIPA, no applications filed by the Trustee have or will ever include a fee request equal to three (3%) percent (or any other percentage) of the total amount of recoveries made by the Trustee for the benefit of customers of BLMIS.   Rather, the fees and expenses of the Trustee and of all counsel to the Trustee (including, but not limited to, B&H, various international special counsel ("International Counsel") retained by the Trustee as described in ¶ 70 of the Fourth Interim Report for the Period Ending September 30, 2010 ("Fourth Interim Report") (ECF No. 3083), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), special counsel to the Trustee, (collectively referred to herein as "Counsel")), and consultants are paid from administrative advances from the Securities Investor Protection Corporation ("SIPC"), as are all administrative costs incurred by the Trustee.   The Court affirmed during the recent hearing regarding the fifth application, "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate."  Fifth App. Hr'g Tr. 32, Dec. 14, 2010.

5.      As the Trustee and his Counsel's fees and expenses are chargeable to the general estate and not to Customer Property, the payment of fees and expenses to the Trustee and any of his Counsel has absolutely no impact on recoveries that the Trustee has obtained and will obtain and that will be allocated to the fund of customer property for *pro rata* distribution to BLMIS customers whose claims have been allowed by the Trustee.

6.      SIPC plays a specific role regarding compensation in a liquidation proceeding such as this one, where the general estate is insufficient to pay trustee compensation and SIPC is required to advance funds to pay the costs of administration.  *See* SIPA §§ 78fff(5)

and 78fff-3(b)(2). This Application, as with all other compensation applications, has been carefully reviewed by SIPC, which includes an analysis of the time records and services rendered. Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding the billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, as described at ¶ 176, *infra*, and (ii) actual, necessary and reasonable expenses incurred within the Compensation Period.

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008. Hundreds of thousands of hours have been expended by the Trustee and B&H in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by initiating litigations and settlement negotiations for the return of Customer Property, including significant settlements and recoveries that now total over $7.6 billion, to be distributed by the Trustee. Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his pursuit of Customer Property. The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

8.      As this Court has recognized, "It is quite clear that the litigation is having a very substantial impact. And that does not come without a lot of investment in lawyer and trustee time and effort." Fifth App. Hr'g Tr. 33.

## II.   BACKGROUND

9.      On December 11, 2008, Madoff was arrested by federal agents and criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"), captioned *United States v. Madoff*, No. 08-MAG-2735 (the "Criminal Case").[3]

10.     Also on December 11, 2008 (the "Filing Date" under SIPA), the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff, et al.*, No. 08-CV-10791 (the "Civil Case").  The complaint alleged that the defendants engaged in fraud through the investment advisor ("IA") activities of BLMIS.

11.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the Civil Case with an application filed by SIPC.  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that the Debtor was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

12.     On that date, the District Court entered the Protective Decree (ECF No. 4), to which BLMIS consented, which, in pertinent part:

a.      appointed the Trustee to liquidate the business of the Debtor pursuant to section 78eee(b)(3) of SIPA;

b.      appointed B&H as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

---

[3] On March 10, 2009, the Criminal Case was transferred to Judge Denny Chin and assigned a new docket number, No. 09-CR-213 (DC).

c.    removed the case to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court" or "Court") pursuant to section 78eee(b)(4) of SIPA.

13.    By order dated December 23, 2008, this Court approved the Trustee's bond. (ECF No. 11).

14.    On February 4, 2009, after a noticed hearing, the Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee (ECF No. 69), finding that the Trustee and B&H are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a), and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).  Thus, the Trustee and B&H are qualified to serve in this proceeding.

15.    On August 6, 2009, the Court entered an order[4] approving both the Trustee and B&H's First Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from December 15, 2009 through April 30, 2009.  (ECF No. 363).  The Court awarded the Trustee an interim allowance of $607,383.00 for professional services rendered and $45.00 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $151,845.75 in fees incurred by the Trustee during that period were held back and remain subject to approval by the Court.  The Court awarded B&H an interim allowance of $11,729,855.86 for professional services rendered and $274,203.03 as reimbursement for actual and necessary

---

[4] Objections were filed to each of the five fee applications.  (ECF Nos. 351, 1055, 2233, 2943, 3308).  Thereafter, motions for leave to appeal the Court's orders granting the Trustee and B&H's first, second, third, and fifth fee applications and overruling the related objections were filed.  The District Court denied the motions for leave to appeal the first and third fee orders. Decision, Misc. Matter M-47 (GBD) (S.D.N.Y. Jan. 11, 2010); *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. M47, 2010 U.S. Dist. LEXIS 81492 (S.D.N.Y. Aug. 6, 2010). The motions for leave to appeal the second and fifth fee orders remain pending before the District Court.

expenses B&H incurred during that period.  An additional $2,932,463.97 in fees incurred by B&H during that period were held back and remain subject to approval by the Court.  At this time, the holdback amount was twenty percent (20%) of fees incurred by the Trustee and B&H.

16.     On December 17, 2009, the Court entered an order approving both the Trustee and B&H's Second Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from May 1, 2009 through September 30, 2009.  (ECF No. 1078).  The Court awarded the Trustee an interim allowance of $668,484.00 for professional services rendered and $921.25 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $167,121.00 in fees incurred by the Trustee during that period were held back and remain subject to approval by the Court.  The Court awarded B&H an interim allowance of $17,023,281.48 for professional services rendered and $280,681.62 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $4,255,820.37 in fees incurred by B&H during that period were held back and remain subject to approval by the Court.

17.     In that same order, the Court approved a reduction in the holdback from twenty percent (20%) to fifteen percent (15%) of fees incurred.  As such, the Court authorized the Trustee to disburse previously deferred funds equal to 5% of total fees requested to date, which amounted to $79,741.69 for the Trustee and $1,797,074.52 for B&H.

18.     On May 6, 2010, the Court entered an order approving both the Trustee and B&H's Third Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2009 through January 31, 2010.  (ECF No. 2251).  The Court awarded the Trustee an interim allowance of $570,852.56 for professional services rendered and $77.66 as reimbursement for

8

actual and necessary expenses that the Trustee incurred during that period. An additional $100,739.69 in fees incurred by the Trustee during that period were held back and remain subject to approval by the Court. The Court awarded B&H an interim allowance of $20,301,472.46 for professional services rendered and $390,204.89 as reimbursement for actual and necessary expenses B&H incurred during that period. An additional $3,582,612.79 in fees incurred by B&H during that period were held back and remain subject to approval by the Court.

19.     On September 14, 2010, the Court entered an order approving both the Trustee and B&H's Fourth Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2010 through May 31, 2010. (ECF No. 2981). The Court awarded the Trustee an interim allowance of $511,021.92 for professional services rendered and $39.63 as reimbursement for actual and necessary expenses that the Trustee incurred during that period. An additional $90,180.33 in fees incurred by the Trustee during that period were held back and remain subject to approval by the Court. The Court awarded B&H an interim allowance of $28,884,304.29 for professional services rendered and $731,371.19 as reimbursement for actual and necessary expenses B&H incurred during that period. An additional $5,097,230.16 in fees incurred by B&H during that period were held back and remain subject to approval by the Court.

20.     On December 14, 2010, the Court entered an order approving both the Trustee and B&H's Fifth Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from June 1, 2010 through September 30, 2010. (ECF No. 3207). The Court awarded the Trustee an interim allowance of $581,960.34 for professional services rendered and $954.41 as reimbursement for actual and necessary expenses that the Trustee incurred during that period. An additional

$102,698.91 in fees incurred by the Trustee during that period were held back and remain subject to approval by the Court. The Court awarded B&H an interim allowance of $38,522,476.35 for professional services rendered and $851,332.34 as reimbursement for actual and necessary expenses B&H incurred during that period. An additional $5,778,371.44 in fees incurred by B&H during that period were held back and remain subject to approval by the Court.

21.    In that same order, the Court approved a release from the holdback of $100,000.00 to the Trustee and $3,400,000.00 to B&H. As such, the Court authorized the Trustee to disburse these previously deferred funds.

22.    The Court stated after reviewing the Fifth Interim Applications and hearing objections thereto, "[U)nder all of the circumstances, and notwithstanding the statutory command that this Court shall approve the fees, I am very well aware of the Herculean effort being utilized in the litigation arena to recoup funds for the benefit of the victims, and notwithstanding how the Court of Appeals, or ultimately the Supreme Court, rules [on the net equity dispute]." Fifth App. Hr'g Tr. 33, Dec. 14, 2010.

### III.    SUMMARY OF SERVICES

23.    A SIPA proceeding contemplates the processing of customer claims and the orderly liquidation of the business of a broker-dealer, with the return of customer property to the failed brokerage's customers. Accordingly, the Trustee's and B&H's services, which are highlighted here and summarized in greater detail below, are comprised of the specific, critical tasks accomplished in aim of that objective.

24.    The Trustee is a member of B&H.[5] He practices principally in the areas of corporate reorganizations, bankruptcy, and insolvency.  He was also a contributing author to Collier on Bankruptcy, 15th Edition Revised.

25.    The Trustee was admitted to practice before the Court in 1982.  He served as the first United States Trustee for the Southern District of New York in a pilot program from October 1, 1979, the effective date of the Bankruptcy Code, through May 15, 1982.  Prior to his tenure as United States Trustee, Mr. Picard was Assistant General Counsel with the SEC in Washington, D.C. for three and a half years during which his responsibilities included, among other things, disclosure and enforcement matters and bankruptcy reorganizations.  Before becoming Assistant General Counsel, he spent approximately four years in various legal positions in the SEC's then-Division of Corporate Regulation, where his responsibilities primarily involved bankruptcy reorganizations.  Prior thereto, Mr. Picard spent more than six years working in the securities industry.

26.    Mr. Picard has previously served as trustee in the following ten SIPA liquidations: Jay W. Kaufmann & Company (Bankr. S.D.N.Y., No TP 84-70064A (BRL)); Norbay Securities, Inc. (Bankr. E.D.N.Y., No. 186-0174-353); Investors Center Inc. (Bankr. E.D.N.Y., No 089-0017-21); Faitos & Co., Inc. (Bankr. E.D.N.Y., No 191-1085-260); U.S. Equity Management Corp. (Bankr. S.D.N.Y., No. 95/1284 (CB)); Euro-Atlantic Securities, Inc., (Bankr. S.D.N.Y. No. 98/9304A (BRL)); Hanover, Sterling & Co., Ltd. (Bankr. S.D.N.Y. No. 96/8396A (REG)); Klein Maus & Shire, Inc.. (Bankr. S.D.N.Y., No. 00/8193A (AJG)); Montrose Capital Management Ltd. (Bankr. S.D.N.Y., No. 01/8170A (CB)); and Park South

---

[5] As such, the Trustee will pay over to B&H the full amount of any interim compensation and disbursements awarded to him.  *See also* Third App. Hr'g Tr. 85.

Securities, LLC (Bankr. S.D.N.Y. No. 03-8024A (RDD)).  He has also served as counsel to SIPC as trustee in two liquidation proceedings.

27.    In rendering professional services to the Trustee in this SIPA proceeding, B&H's legal team has been composed of professionals with extensive experience in, among other fields, bankruptcy, securities, tax, corporate law, and litigation, permitting the Trustee to conduct this liquidation efficiently.  B&H professionals have worked closely with the Trustee and his other professionals to coordinate assignments in order to avoid duplication of effort, which is beneficial to the customers, creditors, and other interested parties of BLMIS.

28.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his Counsel, has undertaken a comprehensive investigation of all of the affairs of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of Counsel but also the services of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent, FTI Consulting ("FTI"), the Trustee's forensic consultant, Renaissance Associates, Ltd. ("Renaissance"), and several investigative and industry consultants (collectively referred to herein as "Consultants").

29.    From the very beginning of this proceeding, the Trustee and B&H, together with AlixPartners and FTI, have been processing the customer claims submitted to him. By statute, the Trustee must look at all the books and records of BLMIS in order to determine and evaluate each customer claim.  Given the duration and complexity of the fraud engaged in by Madoff, each account has a unique and often extended history, frequently involving multiple

transfers between accounts. Each claim, therefore, requires the Trustee to engage in extensive

forensic analysis in order to reach an ultimate determination of each customer claim.

30.    The Trustee has received 16,518 claims filed by a wide variety of

individuals and entities who were victims of Madoff's fraud. These claimants include customers

who had active accounts with BLMIS at the time of its demise, in addition to thousands of

individuals or entities who invested indirectly in BLMIS through various feeder funds and other

entities.

31.    As of January 31, 2011, the date on which the Compensation Period ends,

the Trustee had determined 16,263 customer claims, of which 2,401 were allowed, and

committed to pay approximately $791 million in funds advanced to him by SIPC. These allowed

claims total over $6.8 billion. The Trustee's efforts in determining and satisfying claims are

ongoing.

32.    In an effort to accelerate SIPA protection for individual victims of BLMIS

who were suffering hardship, the Trustee and B&H implemented a Hardship Program. As of

January 31, 2011, the Trustee received 394 Hardship Program applications and approved 275.

The unapproved hardship applicants were ineligible for the program because either the account

had a negative net equity (meaning the investor withdrew more than deposited), the applicant did

not meet the Hardship criteria, or the application was from a third party investor.

33.    The Trustee is seeking the return of billions of dollars to the estate of

BLMIS to be distributed to customers in accordance with SIPA. In carrying out his investigation

into the many layers of complex financial transactions engaged in by Madoff and those who

worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad

documentation received, and conducted numerous follow up activities to enforce the Trustee's

rights to the return of customer property.  As a result of the investigative efforts of the Trustee, he has initiated litigations against feeder funds and certain individuals, most of whom are well known to the public through the press and other media.

34.    As of January 31, 2011, the Trustee, through Counsel, filed 1,064 actions seeking to recover approximately $100 billion in funds from various feeders funds, banks, BLMIS customers, Madoff family members, and friends.

35.    The Trustee succeeded in obtaining the return of billions of dollars to the estate by virtue of settlements with a number of parties, including the estate of Jeffry Picower, Carl J. Shapiro and related parties, and Union Bancaire Privée.  Because of the efforts made by the Trustee and Counsel, approximately $7.6 billion has been recovered to date for the benefit of the customers, though the $5 billion settlement with the estate of Jeffry Picower is the subject of appeal, as described further herein.

36.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties, including customers against whom the Trustee has preference claims, which could result in recoveries for the benefit of customers without the delay and expense of litigation.

37.    In an effort to protect the potential fund of Customer Property being pursued by the Trustee and Counsel through litigation and settlement efforts, the Trustee has filed complaints and corresponding applications seeking to, among other things, preliminarily enjoin various plaintiffs from continuing to litigate actions or commencing new actions against various individuals and entities related to this liquidation proceeding, including the estate of Jeffry Picower and related entities, certain Madoff family members, and those integral to Madoff's Ponzi scheme.  The Trustee has brought these applications on several grounds: (i) the plaintiffs' actions violate the automatic stay and other stays in place in the liquidation

14

proceeding; (ii) these actions threaten to impede the orderly administration of the BLMIS liquidation and usurp the jurisdiction of this Court by, among other things, undermining the claims administration process and circumventing the Court's determination regarding the proper formulation of a customer's net equity under SIPA; and (iii) in a number of the actions, the claims brought by the plaintiffs are duplicative and derivative of the Trustee's own claims and improperly seek to recover fraudulently transferred funds and customer property in violation of the stays.

38.    Through the end of the Compensation Period, the Court adjudicated one preliminary injunction application in favor of the Trustee.  In *Picard v. Fox*, Adv. Pro. No. 10-3114 (BRL) (the "Fox Application), the Court held that certain purported customers of BLMIS usurped causes of action belonging to the estate in bringing their suits against the estate of Jeffry Picower and certain Madoff family members, respectively, in violation of the automatic stay, and the circumstances of the cases warranted the issuance of preliminary injunctions pursuant to section 105(a) of the Bankruptcy Code.  The Fox Application is currently on appeal before the Southern District, *Picard v. Fox*, No. 10-CV-4652 (JGK) and No. 10-CV-7101 (JGK).  Another application, *Picard v. Canavan*, Adv. Pro. No. 10-3200 (BRL), sought to enjoin and restrain certain BLMIS claimants from suing SIPC's Board of Directors and CEO/President.  The hearing on the application has been adjourned without date because the claimants dismissed their action without prejudice; a pre-trial conference remains scheduled for July 27, 2011.  Another application, *Picard v. Dichter-Mad Family Partners*, Adv. Pro. No. 11-01271 (BRL) (the "Dichter-Mad Adversary Proceeding"), sought to enjoin and restrain certain BLMIS account holders from continuing their individual actions against various defendants related to Cohmad Securities Corporation, against whom the Trustee has also brought suit, *Picard v. Cohmad*

*Securities Corp.*, 09-01305 (BRL).  The hearing on this application was also adjourned without

date because the BLMIS account holders voluntarily stayed their actions pending the completion

of the Trustee's proceeding against the Cohmad defendants.[6]

39.    While the Trustee succeeded in protecting the fund of Customer Property

through the Fox Application, the same BLMIS claimants who were enjoined by the Court from

continuing their suit against the estate of Jeffry Picower also filed an appeal of the Trustee's $5

billion settlement with the Picower estate.  This settlement – an unquestionably large settlement

in any case – represents almost 29% of the principal lost by investors of BLMIS.  The result of

this appeal is that the $5 billion remains in an escrow account and is unavailable for distribution

to BLMIS customers at this time.

40.    Certain other claimants (represented by the same counsel that filed one of

the appeals to the Picower settlement) have appealed another significant settlement entered into

by the Trustee – that with the heirs of Norman Levy for $220 million.  Because these funds are

the subject of dispute, they are unavailable for distribution to BLMIS customers at this time.

41.    In addition, because of the ongoing appeal relating to this Court's

decision regarding the proper interpretation of "net equity" (defined as the amount of cash

deposited by the customer into his BLMIS account, less any amounts already withdrawn by him

from his BLMIS customer account), the Trustee must maintain sufficient reserves pending the

outcome of that dispute.

42.    The result of these appeals is that billions of dollars belonging in the Fund

of Customer Property cannot be distributed to BLMIS customers at this time.  The Trustee must

---

[6] A hearing was held on the fourth application, *Picard v. Stahl*, Adv. Pro. No. 10-3268 (BRL), on February 9, 2011.
The Court thereafter entered an order granting the relief sought in the Trustee's application (ECF No. 50), from
which several appeals have been taken.

maintain reserves relating to each of these appeals, which means that each customer's current ratable share of the Fund of Customer Property is approximately four percent.

43.    If no appeals had been filed, such that the Trustee would have been able to distribute all $7.6 billion of BLMIS's Customer Property, each customer's ratable share of the Fund of Customer Property would be as much as ten times higher, or approximately forty percent.

44.    Fueling all of the Trustee's efforts is the global investigation of Madoff's fraud.  The fraud Madoff perpetrated through BLMIS has many international implications, involving foreign individuals, feeder funds, and international banking institutions.  The complex transactions engaged in by those parties are being untangled by the Trustee with the assistance of his Counsel here in the United States and in each of the foreign jurisdictions concerned.  The Trustee is engaged in litigation in Europe, Gibraltar, Canada, and throughout the Caribbean, including Bermuda, the Cayman Islands, and the British Virgin Islands.  He has retained counsel in these jurisdictions for the purpose of preserving and recovering customer funds being held in those countries.  Hundreds of millions of dollars are at stake in these international matters, each of which requires extensive legal and investigative analysis on the part of the Trustee, his Counsel, and Consultants.

45.    The Trustee's investigation is ongoing.  Not a single penny of the costs incurred in connection with the investigation, however, come at the expense of the customers, nor will the expenses ever come from Customer Property or the BLMIS estate.  Rather, these expenses are advanced by SIPC, so that any customer monies recovered can be distributed to the customers in accordance with SIPA.

17

46.     Given the unprecedented fraud perpetrated by Madoff, the issues involved

are complex, the discovery is wide-ranging, and the litigation through BLMIS is hotly contested.

All of this requires an enormous effort by the Trustee and his Counsel for the benefit of the

victims.  During the Compensation Period, the Trustee, his Counsel, and Consultants have met

extraordinary challenges in their continuing efforts to pursue customer property, protect estate

assets, and otherwise benefit the BLMIS estate.  The following discussion and the materials

attached to this Application cover the major categories of services performed for which

allowance of compensation is sought.

## IV.     DETAILED DESCRIPTION OF SERVICES

47.     The following is a more detailed synopsis of the significant services

rendered by the Trustee and B&H during the Compensation Period, organized according to the

internal B&H matter numbers and task codes.

48.     Matters 01 and 02 are the general matter numbers used by B&H and the

Trustee, respectively.  These matter numbers utilize individual task codes for specific categories of

work to permit a more detailed analysis of the fees incurred.  For specific litigations or other discrete

matters to which a large number of hours are or will be billed, new matter numbers are opened and

used, each of which are described in more detail herein.

49.     Matter Numbers 03-41 (with the exception of Matter 05, which relates to

customer claims) relate to litigation filed against various individuals, entities, and feeder funds.

In each of those matters, B&H attorneys perform the following tasks related to the individual

actions: conduct legal research; draft internal memoranda; engage in internal meetings with B&H

attorneys and the Trustee's Consultants regarding investigation and litigation strategy; draft and

file pleadings, motions, and other related litigation documents; and engage in discussions with

18

counsel for defendant(s). Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during this Compensation Period.

## A.   MATTER 01 – COUNSEL TO THE TRUSTEE

50.   This matter categorizes the time spent by B&H and encompasses the below enumerated tasks.

### i.   Trustee Investigation – Task Code 01

51.   This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets. During this Compensation Period, B&H attorneys:

- Initiated, participated in, and monitored as many as 170 pending and 81 potential international third-party proceedings and 232 domestic third-party proceedings involving Madoff and/or BLMIS.

- Continued the investigation of banks, feeder funds, auditors, insiders, Madoff friends and family members, former BLMIS employees, and all other Madoff-related parties.

- Continued the investigation of Madoff Securities International Limited ("MSIL").

- Coordinated efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), Federal Bureau of Investigation ("FBI"), Financial Industry Regulatory Authority ("FINRA"), SEC, and many other local, federal, and international officials involved in the investigation of Madoff and BLMIS.

- Reviewed copies of records obtained by the FBI and SEC and other information from the USAO and securities regulators.

- Communicated with the Trustee, SIPC, Windels Marx, Young Conaway, AlixPartners, FTI, and various other consultants regarding the IA accounts and records of the transactions, business investments, and ventures between the potential insiders and BLMIS, Madoff, and Madoff family members.

- Discussed and conferenced with SIPC, Windels Marx, Young Conaway, International Counsel, and various government entities regarding investigation and litigation strategy.

- Prepared avoidance actions against various targets seeking the return of Customer Property.

19

- Drafted and issued hundreds of inquiry letters and subpoenas to potentially related third parties concerning BLMIS litigation.

- Prepared requests for discovery and negotiated other discovery-related issues with adversaries.

- Organized and reviewed documents received in response to third party inquiries and subpoenas.

- Reviewed account information and statements of BLMIS IA customers.

- Researched various trust and estates issues relating to BLMIS claimants.

- Researched and evaluated consultants for potential engagement as experts for various aspects of litigation.

### ii.    Bankruptcy Court Litigation – Task Code 02

52.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding and the adversary proceedings filed by the Trustee.  During this Compensation Period, B&H attorneys:

- Prepared for and attended the hearing held on October 7, 2010 on the motion for an order pursuant to section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure approving an agreement by and between the Trustee and HSBC Bank PLC to effectuate an agreement with the Primeo Liquidators.

- Prepared for and attended the hearing held on October 19, 2010 on the motion for an order to affirm the Trustee's determination denying claims of claimants without BLMIS accounts, namely, investors in feeder funds.

- Prepared for and attended the hearing held on October 21, 2010 on the Trustee's motion pursuant to section 363 of the Bankruptcy Code authorizing the sale of certain financial assets.

- Prepared and revised pleading relating to procedures for the assignment of allowed claims filed on October 21, 2010, and reply filed on November 8, 2010; analyzed opposition received; and prepared for and attended the hearing on the motion held on November 10, 2010.

- Prepared and revised pleading establishing procedures for approval of settlements filed on October 21, 2010 and reply filed on November 8, 2010; and prepared for the hearing on the motion held on November 10, 2010.

20

- Prepared and revised pleading approving litigation case management procedures for avoidance actions and amending the global protective order filed on October 21, 2010 and reply filed on November 8, 2010; analyzed oppositions received; and prepared for the hearing on the motion held on November 10, 2010.

- Prepared and revised pleading for approval of the $550 million settlement between the Trustee and the Shapiro family pursuant to section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure; prepare for and attend hearing on the motion held on December 21, 2010.

- Prepared and revised pleading for approval of $470 million settlement between the Trustee and Union Bankcaire Privee and M-Invest Limited pursuant to section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure; prepared for and attended hearing on the motion held on January 6, 2011.

- Negotiated stipulated terms with Westport National Bank for account information; drafted and submitted proposed stipulation and order to the Bankruptcy Court for approval.

- Drafted and filed various motions, pleadings, amended complaints, motions to dismiss, scheduling orders, pleadings, stipulations, and other documents submitted to the Bankruptcy Court in connection with ongoing motion practice in the main bankruptcy proceeding and avoidance actions.

- Prepared and filed Trustee reports and fee applications for the Trustee, B&H, and various International Counsel; prepared opposition papers to motion for leave to appeal order granting compensation of Trustee and B&H.

- Researched causes of action under the Bankruptcy Code and other bankruptcy-related legal issues that have been or will be brought by the Trustee.

- Developed case management procedures for avoidance actions.

- Prepared for filing foreign/special counsel retention applications.

### iii.    Feeder Funds – Task Code 03

53.     The Trustee has delegated teams of B&H attorneys to identify, investigate

and monitor potential feeder funds in the U.S. and abroad and bring actions against such funds

for the recovery of estate assets.  During this Compensation Period, in addition to the general

investigation described above, relevant witnesses were deposed or interviewed.  B&H attorneys

continued to issue Rule 2004 subpoenas relevant to the feeder funds, conducted an ongoing review of documents received in response to such third party subpoenas, and drafted pleadings relating to the feeder funds. Investigation and extensive analysis of the complicated and opaque corporate structures of the feeder funds continued and numerous litigations were commenced the fall of 2010. Indeed, the Trustee described to the Court the "uniform front of silence" presented by the feeder funds that requires "digging in[to), finding out all of those things that went on for years and years." Fourth App. Hr'g Tr. 23. Those against whom litigation has been brought have been assigned separate matter numbers, discussed more fully at ¶¶ 89-91, 97-100, 106-119, 146-150, *infra*.

### iv.    Asset Research and Sale – Task Code 04

54.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate. During this Compensation Period, B&H:

- Liquidated certain loan participations owned by BLMIS.

- Conferred with and assisted the Trustee in negotiating and resolving the BLMIS leases.

- Conferred and worked with Windels Marx regarding BLM Air Charter and other issues relating to the airplane.

- Followed up activity with regard to the Surge, Inc. transaction, including the monitoring of market-making platform and trading activities.

### v.    Internal Meetings with Staff – Task Code 05

55.    This category relates to time spent by B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals. Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided the duplication of efforts.

vi.    **Billing – Task Code 07**

56.    This category relates to time spent by B&H attorneys and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correct any errors in time entries, and write off certain time and expenses as agreed to by B&H.

**Case Administration – Task Code 08**

57.    This category relates to time spent assisting the Trustee administer the case efficiently.  During this Compensation Period, B&H:

- Conducted conflict checks.

- Implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents.

- Created protocols relating to discovery, filings, and external communications.

- Implemented and managed work flows between B&H and Consultants.

- Oversaw administrative aspects of the retention of experts, other professionals, and vendors, and monitored their ongoing activities.

- Maintained case files.

- Calendared and docketed all hearings, return dates, and deadlines in main liquidation proceeding and all other litigations.

- Monitored and tracked dockets of related proceedings.

- Managed and monitored staffing needs.

vii.    **Banks – Task Code 09**

58.    Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS and the various feeder funds that invested in BLMIS.  Time categorized by this task code relates to the investigations of target banks and the roles played by

23

the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Certain of the time billed to this category is also billed to matter specific numbers that were opened during the Compensation Period, *see, e.g.*, ¶¶ 151-172.

### viii.   Court Appearances – Task Code 10[7]

59.    This category relates to time spent by B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### ix.    Press Inquiries and Responses – Task Code 11

60.    This category relates to time spent by B&H assisting the Trustee in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### x.    Document Review – Task Code 12

61.    This category relates to time spent by B&H reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

### xi.    Discovery - Depositions and Document Productions by the Trustee – Task Code 13

62.    This category relates to time spent by B&H attorneys conducting depositions and preparing and responding to discovery requests issued in the ongoing litigations and by various third parties.  During this Compensation Period, B&H:

---

[7] Many attorneys making court appearances bill their time for appearances to either Task Code 02 – Bankruptcy Court litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

- Prepared, reviewed, finalized, and served subpoenas.

- Monitored subpoenas issued and documents produced in response, and followed up regarding deficient document productions.

- Processed and uploaded incoming document productions.

- Researched foreign jurisdiction discovery laws.

### xii.   International – Task Code 14

63.     The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including England, Gibraltar, Austria, Canada, Bermuda, the British Virgin Islands, the Cayman Islands, the Bahamas, Ireland, France, Luxembourg, Switzerland, and Spain.  These investigations, which are comprised of a combination of voluntary requests for information and the use of the Trustee's subpoena power, have focused primarily on international feeder funds, banks, related financial services entities, and certain individuals.  This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery.  The investigation is made challenging by the broad array of anti-discovery laws, bank secrecy statutes, and other foreign legislation designed to limit discovery.  In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third party actions brought in Europe and the Caribbean.

### xiii.   Charities – Task Code 15

64.     This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, and corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts.

25

xiv. **Access – Luxembourg – Task Code 17**

65.    This category relates to the monitorship of an action brought in Luxembourg against Access Group, UBS, and the directors of LuxAlpha, a BLMIS feeder fund based in Luxembourg, and conferences with SIPC staff regarding the same.

**B.    MATTER 02 – TRUSTEE TIME**

66.    This matter categorizes time spent by the Trustee and encompasses the below enumerated tasks.

i. **Case Administration – Task Code 01**

67.    This category relates to the wind-down of the Debtor's business and other administrative matters.  During this Compensation Period, the Trustee:

- Reviewed communications received by the Trustee, the BLMIS office, or the Claims Processing Center, and prepared the appropriate response or ensured follow-up.

- Maintained brokerage accounts and money management account, and purchased and rolled over Treasury bills.

- Retained, as necessary, additional consultants, expert witnesses, international counsel, and other advisors.

- Obtained SIPC administrative cash advances, communicated with AlixPartners concerning payment of bills submitted to the Trustee, reviewed and signed monthly SIPC-17 cash receipts and disbursement reports, reviewed monthly projected administrative budgets, and communicated with SIPC staff regarding the same.

- Reviewed monthly invoices of consultants and communicated with SIPC staff regarding the same and arranged for payment.

- Communicated with SIPC financial and operations staff to ensure efficient administration of finances.

- Prepared and revised responses to inquiries of various government agencies regarding BLMIS and the wind-down of the estate, including the Internal Revenue Service, SEC, and New York State Department of Tax & Finance.

- Communicated with B&H attorneys and AlixPartners regarding outstanding issues with vendors and negotiated and resolved outstanding estate obligations

ii.      **Claims Review and Related Matters – Task Code 02**

68.    This category relates to customer claims.    During this Compensation Period, the Trustee:

- Reviewed in an ongoing manner and as necessary the submitted customer claim forms and supplements thereto, and reviewed any additional related BLMIS account documentation.

- Communicated with SIPC staff, B&H attorneys, and AlixPartners regarding the customer claims review process, the customer claims database, the reconciliation of IA accounts, and other matters of interest in determining claims and issuing determination letters.

- Reviewed and revised determinations; communicated by phone, letter, and email with customers and their representatives regarding review, allowance, or denial of particular claims (e.g., including the *pro rata* distribution of funds recovered to date); reviewed proposed customer assignments and releases to the extent of claims to be satisfied; and, when necessary, communicated with the B&H claims team and referred certain claims for follow-up and response.

- Engaged in settlement negotiations with customers against whom the Trustee has preference claims, i.e. those customers who withdrew money from a BLMIS account ninety (90) days prior to the Filing Date.

iii.      **Trustee Investigation – Task Code 03**

69.    This category relates to the Trustee's investigation into BLMIS, Madoff, and various assets.    During this Compensation Period, the Trustee:

- Discussed and conferenced both internally with B&H attorneys and externally with SIPC staff, Windels Marx, International Counsel, and various governmental entities regarding investigation and litigation strategy.

- Communicated with B&H attorneys, International Counsel, SIPC staff, Windels Marx, AlixPartners, and FTI regarding the IA accounts and records of the transactions, business investments, and ventures between the potential insiders and BLMIS, Madoff, and Madoff family members.

- Reviewed discovery received in response to issued subpoenas and from other third parties.

27

### iv.    Banks and Feeder Funds – Task Code 04

The Trustee has delegated teams of B&H attorneys to identify, investigate, and monitor banks and feeder funds, and bring actions against such banks and feeder funds for the recovery of estate assets where possible.  For further discussion of the feeder fund litigations, please see ¶¶ 89-91, 97-100, 106-119, 142-150, 153-168, 171-172, *infra*.

### v.    Asset Search, Recovery and Sale – Task Code 06

70.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.  During this Compensation Period, the Trustee:

- Reviewed claims and supporting affidavits filed in connection with the settlement of various class actions involving securities held by BLMIS in its market making and trading capacities, and conferenced with AlixPartners regarding the same.

- Discussed with B&H attorneys the sale or restructuring of certain loan participations owned by BLMIS and followed up on other loan participation and restructuring matters.

- Discussed with brokers the status of the securities remaining in the Trustee's account and sale possibilities.

### vi.    Avoidance Actions – Task Code 07

71.    As of January 31, 2011, the Trustee filed a total of 1,064 avoidance actions against feeder funds, banks, BLMIS customers, Madoff friends and family members, and other Madoff-insiders for the return of customer property.  1,044 actions were filed during this Compensation Period alone.

72.    This category relates to the investigation and litigation strategy sessions engaged in by the Trustee with B&H attorneys, International Counsel, SIPC, AlixPartners, and FTI, communications with counsel for the defendants to the various avoidance actions,

negotiations of potential settlement agreement, and the review of documents related to the various avoidance actions and potential settlements.

### vii. Bankruptcy Court Litigation and Related Matters – Task Code 08

73.     This category relates to the review and filing of various motions and pleadings, and the initiation and prosecution of adversary proceedings in the Bankruptcy Court. During this Compensation Period, the Trustee:

- Reviewed amended complaints, motions, pleadings, proposed orders, and other documents to be submitted to the Bankruptcy Court in connection with all avoidance actions.

- Reviewed the objections filed in response to the Trustee's determination of claims.

- Communicated regularly with the SIPC staff, B&H attorneys, and counsel for various customers who filed actions regarding customer claims, the "net equity" definition, and other issues.

- Monitored the Chapter 11 case of BLM Air Charter and communicated regularly with counsel for BLM Air Charter.

### viii. Non-Bankruptcy Court Litigation – Task Code 09

74.     B&H attorneys monitor all third-party actions, domestic and international, that may be related to BLMIS or Madoff.  This category relates to the Trustee's review of information related to such matters, and correspondence with the teams regarding their ongoing investigations and findings and the status of such third party litigations.

75.     The Trustee's time in this category also includes the review and execution of affidavits for foreign litigation, including those in Gibraltar, the British Virgin Islands, and the Cayman Islands.

### ix.    Court Appearance – Task Code 10

76.    This category relates to time spent by the Trustee making court appearances as necessary.

### x.    Internal Office Meetings with Staff and Out of Office Meetings – Task Codes 11 and 12

77.    This category relates to internal strategy meetings and training sessions between the Trustee and his professionals, as well as additional out-of-office meetings between the Trustee and other parties.

### xi.    USAO and SEC/FINRA - Task Codes 13 and 14

78.    This category relates to communications with the various government agencies, such as the USAO, SEC, FINRA, and FBI, involved in the investigation of BLMIS, Madoff, and various assets.  During this Compensation Period, the Trustee:

- Coordinated efforts with the USAO, SEC, FINRA, FBI, and other local, federal, and international officials involved in this investigation.

- Obtained copies of records seized by the FBI and SEC, and other information from the USAO, FINRA, and other securities regulators.

- Engaged in telephone conferences, correspondence, and meetings with representatives of the USAO.

### xii.    Trustee Report/Fee Application and Related Matters – Task Codes 05 and 16

79.    In addition to the time spent preparing this Application, this category relates to time spent by the Trustee reviewing the monthly statements of the Trustee, B&H, Windels Marx, and International Counsel to correct any errors in time entries, write off certain time and expenses as agreed to by the Trustee for the benefit of SIPC, and respond to certain adjustments requested by SIPC after its review of each monthly fee statement.  Time spent by the Trustee in preparing his interim reports, which are required every six (6) months and summarize

30

all activities conducted by the Trustee and all his Counsel within that reporting period, are also billed to this task code.

### xiii.  Press Inquiries and Responses – Task Code 17

80.    This category relates to time spent by the Trustee responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences regarding BLMIS, Madoff, customer claims, and the recovery of funds.

### xiv.  Luxembourg Litigation – Task Code 18

81.    This category relates to time spent by the Trustee in monitoring an action brought in Luxembourg against Access Group, UBS, and the directors of LuxAlpha, a BLMIS feeder fund based in Luxembourg.

## C.    MATTER 03 – CHAIS[8]

82.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Stanley Chais, Pamela Chais, and a number of related entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.

83.    In addition to the tasks outlined above in ¶ 49, during this Compensation period, B&H attorneys reviewed and analyzed documents produced by the Chais Defendants in discovery and took depositions of related third parties.  The Court heard the Chais Defendants' motions to dismiss and on November 30, 2010 entered a Decision and Order granting the Trustee's motion to dismiss defendants' counterclaims and denying the motions brought by

---

[8] As with Matter 01, the remainder of the B&H matter numbers described herein are used by B&H professionals. The Trustee only utilizes Matter 02.

defendants Mari Chais, Mark Chais, William Chais, Emily Chasalow and Wrenn Chais. The Trustee also received leave to file an amended complaint against defendant Michael Chasalow.

84.     During the pendency of this proceeding, the Trustee was advised of the death of defendant Stanley Chais; the Estate of Stanley Chais and Pamela Chais, Executor, have been substituted for Stanley Chais.

## D.     MATTER 04 – MERKIN

85.     This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel Capital Corporation (together, the "Merkin Funds"), and J. Ezra Merkin (collectively, the "Merkin Defendants") seeking the return of more then $557 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants. With leave of the Court, the Trustee filed a second amended complaint on December 23, 2009 asserting Merkin's personal liability for obligations of the partnerships.

86.     In addition to the tasks outlined in ¶ 49, during this Compensation period, B&H attorneys conducted depositions and interviews of relevant witnesses and monitored arbitrations and other actions pending against the Merkin Defendants. On November 17, 2010, the Court denied the Merkin Defendants' motion to dismiss in favor of the Trustee. Defendant Bart M. Schwartz, as Receiver of Defendants Gabriel Capital, L.P. and Ariel Fund Limited, filed a motion for leave to appeal, which is currently pending in the U.S. District Court, No. 11-CV-00012 (KMW). The Trustee submitted briefing in opposition to the appeal and in support of the

Court's dismissal. The Merkin Defendants have filed answers to the second amended complaint.

A pre-trial conference is scheduled to be held on July 27, 2011.

**E.      MATTER 05 – CUSTOMER CLAIMS**

87.    This matter categorizes time spent by B&H regarding customer claims.

B&H attorneys expended a considerable amount of time in this category, as significant progress

was made during the Compensation Period with respect to Customer Claims.

88.    During this Compensation Period, B&H attorneys:

- Reviewed customer claim forms and supplements thereto and reviewed any additional related BLMIS IA account documentation.

- Assisted the Trustee in making determinations regarding customer claims, prepared the Trustee's determination letters and the assignment and release forms for execution by customers.

- Communicated regularly by phone, letter, and email with customers or their representatives regarding claims procedure and process, status of claims review, and other matters of concern to customers.

- Reviewed objections to the Trustee's determination of claims and communicated regularly with the Trustee, SIPC, and counsel for the parties who filed the objections. As of January 31, 2011, approximately 2,336 objections have been filed with the Bankruptcy Court.

- Continued the Trustee's Hardship Program; reviewed Hardship Applications; and communicated regularly with the Trustee, SIPC, and AlixPartners regarding the review and determination of Hardship applicants.

- Reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

- Communicated regularly with the Trustee, SIPC, and AlixPartners regarding the customer claims review process, the customer claims database, reconciliation of IA accounts, and other matters of interest in determining claims.

- Reviewed schedules of information prepared by AlixPartners and prepared additional reports for the Trustee and SIPC.

- Maintained and updated the Trustee website to provide public access to case filings and important case information.

- Continued the training of B&H attorneys and paraprofessionals to assist the Trustee in reviewing and determining customer claims.

## F.   MATTER 06 – VIZCAYA

89.   This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Vizcaya Partners Limited ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants.  The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers.  The Trustee filed an action against these additional defendants in Gibraltar Supreme Court for an injunction or freezing order, disclosure, and other relief.

90.   On June 28, 2009, this Court requested by letter that the Gibraltar court turn over all funds under the Gibraltar court's control—some $75 million frozen in various accounts at Bank Safra or in the Gibraltar court—that were derived from the transfer from BLMIS to Bank Safra for the benefit of Vizcaya.  Vizcaya, Siam, Asphalia, and Zeus failed to appear in this Court or answer the Trustee's amended complaint and, accordingly, B&H drafted and prepared a motion for default judgment against those defendants.  The motion for default was granted by this Court on August 3, 2010.  Following the entry of default, Judge Lifland sent a second letter dated August 23, 2010, requesting the Gibraltar court's assistance in enforcing the default judgment, and/or turning over the relevant funds held in Gibraltar.  While the default judgment was vacated as to Zeus, these requests remain pending.

91.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, Bank Safra, Zeus, and the Trustee entered into a Pre-Trial Schedule.  Zeus filed an answer consistent with the Pre-Trial Schedule.

## G.    MATTER 07 – MADOFF FAMILY

92.    This matter categorizes the time spent by B&H attorneys pursuing the avoidance action against Peter B. Madoff, Mark D. Madoff, Andrew H. Madoff, and Shana D. Madoff (collectively, the "Family Defendants") seeking the return of nearly $200 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants.

93.    This matter also relates to the ongoing investigation of other Madoff family members and Madoff family entities.  As a result of this investigation, Windels Marx has commenced three adversary proceedings against Madoff Technologies, Madoff Energy Holdings, and Madoff Family LLC, all of which relate to Madoff family members and Madoff family entities.  The Trustee granted the Family Defendants several extensions of time to respond to the complaints, and a pre-trial conference in these proceedings is scheduled to be held on June 7, 2011.

94.    During the pendency of this proceeding, the Trustee was advised of the death of defendant Mark D. Madoff.

## H.    MATTER 08 – NORMAN LEVY

95.    In January 2010, the Trustee reached an agreement (the "Levy Settlement") with Jeanne Levy-Church and Francis N. Levy (collectively, the "Levys") to settle the Trustee's claims against them regarding certain accounts held by the Levys and their family

members in connection with the liquidation of BLMIS.  Pursuant to the Levy Settlement

Agreement, the Levys agreed to pay $220 million to settle potential litigation claims by the

Trustee.  This Court approved the Levy Settlement by Order on February 18, 2010.

96.    During this Compensation Period, B&H attorneys investigated account

holders associated with the Levys for potential avoidance liability and prepared and filed

complaints under seal against several of those account holders.

I.    **MATTER 09 – FAIRFIELD GREENWICH**

97.    This matter categorizes time spent by B&H attorneys pursuing the

avoidance action against Fairfield Sentry Limited, Greenwich Sentry Limited, L.P., and

Greenwich Sentry Partners, L.P. (collectively, the "Fairfield Defendants") seeking the return of

approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and

damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Fairfield Defendants.

98.    In addition to the tasks outlined in ¶ 49, during this Compensation Period,

B&H attorneys prepared and filed a motion to extend the time for the Trustee to serve the

complaint and for the foreign defendants to respond thereto.  The amended complaint has been

served on all defendants and a pre-trial conference is scheduled to be held on April 27, 2011.

B&H attorneys also continued to monitor the Chapter 15 proceeding filed by Fairfield Sentry,

Fairfield Sigma, and Fairfield Lambda.

J.    **MATTER 10 – HARLEY**

99.    This matter categorizes time spent by B&H attorneys pursuing the

avoidance action against Harley International (Cayman) Limited ("Harley") seeking the return of

approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent
Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and
damages in connection with certain transfers of property by BLMIS to or for the benefit of
Harley. Harley is in liquidation in the Cayman Islands.

100.    In addition to the tasks outlined in ¶ 49, during this Compensation Period,
B&H attorneys prepared for, attended, and argued at the hearing on the Trustee's motion for
default and summary judgment against Harley, which the Court granted in favor of the Trustee
on November 10, 2010.

## K.    MATTER 11 – COHMAD SECURITIES CORPORATION

101.    This matter categorizes time spent by B&H attorneys pursuing the
avoidance action against Cohmad Securities Corporation ("Cohmad"), the principals, certain
employees of Cohmad, and their family members who held BLMIS IA accounts (collectively,
the "Cohmad Defendants") seeking the return of over $132 million under SIPA, the Bankruptcy
Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences,
fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad
Defendants, and damages in connection with certain transfers of property by BLMIS to or for the
benefit of the Cohmad Defendants.

102.    In addition to the tasks outlined in ¶ 49, during this Compensation Period,
B&H attorneys filed a stipulation dismissing with prejudice defendants Robert Jaffe and M/A/S
Capital Corporation from the adversary proceeding, and prepared and filed an opposition to
Jaffe's motion to enforce a settlement order entered by this Court; a hearing on Jaffe's motion is
scheduled for February 2, 2011. B&H attorneys filed and prepared the Dichter-Mad Adversary
Proceeding, a motion to enjoin the prosecution of certain third-party actions against the Cohmad

37

Defendants pending the completion of the Trustee's action against the Cohmad Defendants; the
hearing on the Dichter-Mad Adversary Proceeding was scheduled for March 29, 2011, but the
Trustee withdrew the motion after all defendants voluntarily stayed or withdrew their actions
against the Cohmad Defendants.  B&H attorneys also prepared for a hearing on the Cohmad
Defendants' motions to dismiss, which was held February 28, 2011.

103.    B&H attorneys continued their review of the IA accounts associated with
the Cohmad Defendants and other related parties, and prepared and filed avoidance litigation
where necessary.

## L.    MATTER 12 – PICOWER

104.    This matter categorizes time spent by B&H attorneys pursuing the
avoidance action against Jeffry M. Picower and Barbara Picower, both individually and as
trustees for various foundations, and other various Picower entities (collectively, the "Picower
Defendants") seeking the return of approximately $7.2 billion under SIPA, the Bankruptcy Code,
the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent
conveyances, and damages in connection with certain transfers of property by BLMIS to or for
the benefit of the Picower Defendants.

105.    In addition to the tasks outlined in ¶ 49, during this Compensation Period,
B&H attorneys, the USAO, and counsel for the Picower Defendants negotiated a settlement that
resulted in the recovery of the entire $7.2 billion sought by the Trustee (the "Picower
Settlement") and prepared and filed a pleading approving the Picower Settlement pursuant to
section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of
Bankruptcy Procedure.  The Court approved the Picower Settlement on January 13, 2011 and
entered a permanent injunction precluding prosecution of actions by third parties against the

Picower Defendants that are duplicative or derivative of claims belonging to the Trustee.  B&H attorneys drafted and filed a Counter-Designation of the Bankruptcy Record on Appeal after the Florida Plaintiffs appealed the Picower Settlement and permanent injunction.

## M.    MATTER 13 – KINGATE

106.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the "Kingate Defendants") seeking the return of approximately $395 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kingate Defendants.  A second amended complaint was filed on July 21, 2009, which increased the demand to $874 million.

107.    The Kingate Defendants are currently in liquidation in the British Virgin Islands.

108.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys continued to monitor third party actions filed against the Kingate Defendants.  In addition, on the basis of a disclosure order granted by the United Kingdom Court, the Trustee and B&H attorneys sought discovery in the United Kingdom and Europe relating to the Kingate Defendants.  B&H attorneys continued their review of documents received in response to third party inquiries and subpoenas.

109.    The Kingate Defendants' time to answer or otherwise respond to the second amended complaint has been adjourned fourteen times.  The deadline by which the Kingate Defendants must respond is April 1, 2011, and a pretrial conference is scheduled to be held on April 27, 2011.

N.      **MATTER 14 – RESERVED**

O.      **MATTER 15 – HERALD**

110.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Herald Fund SPC ("Herald") and HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (together, "HSBC," and collectively, the "Herald Defendants") seeking the return of $578 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Herald Defendants.

111.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys continued to monitor third party actions filed against Herald in Europe, particularly in Luxembourg and Austria.  The Trustee named Herald as a defendant in an amended complaint filed on December 5, 2010 in the action against Alpha Prime Fund Limited, HSBC, as well as an additional fifty-eight individuals and entities (the "HSBC Action").  Thereafter, HSBC consented to the Trustee's request to voluntarily dismiss this adversary proceeding in favor of the HSBC Action and the Trustee filed a motion with the Court requesting the dismissal of Herald, which the Court granted on January 25, 2011.  The Clerk of the Court closed the adversary proceeding.  The action against Herald will hereinafter be discussed in Matter 30, ¶ 148-150.

P.      **MATTER 16 – ALPHA PRIME**

112.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Alpha Prime Fund Limited ("Alpha Prime") and HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (together, "HSBC," and collectively, the "Alpha

40

Defendants") seeking the return of $86 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Alpha Prime Defendants.

113.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys filed a second amended complaint on December 5, 2010 that expanded the causes of action asserted and named fifty-eight individuals and entities as additional defendants. This matter is now referred to as the HSBC Action and discussed hereinafter in Matter 30, ¶ 148-150.

## Q.    MATTER 17 – PRIMEO FUND

114.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Primeo Fund ("Primeo"), HSBC Bank PLC, and HSBC Securities Services (Luxembourg) S.A. (together, "HSBC," and collectively, the "Primeo Defendants") seeking the return of $145 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Primeo Defendants.

115.    Primeo defaulted and is in liquidation in the Cayman Islands.

116.    In addition to the tasks outlined in ¶ 49, during this Compensation period, B&H attorneys drafted affidavits in support of a motion for leave to file an avoidance action against Primeo in the Cayman Islands, and continued monitoring litigation pending against Primeo in the United Kingdom.  The Trustee, HSBC, and the Primeo Liquidators entered into an agreement to release $5 million from the Primeo HSBC Accounts, approximately half of which

the Trustee recovered for the fund of Customer Property without effecting the Trustee's claims

against Primeo.

117.    The Trustee also named Primeo as a defendant in the amended complaint

filed on December 5, 2010 in the action against Alpha Prime Fund Limited, HSBC, as well as an

additional fifty-eight individuals and entities (the "HSBC Action").  Thereafter, the Trustee filed

a notice of voluntary dismissal dismissing Primeo from this action without prejudice in favor of

the HSBC Action, and HSBC consented to the voluntary dismissal of the action.  The Clerk of

the Court closed the adversary proceeding on January 11, 2011.  The action against Primeo will

hereinafter be discussed in Matter 30, ¶ 148-150.

**R.    MATTER 18 – THYBO**

118.    This matter categorizes time spent by B&H attorneys pursuing the

avoidance action against Thybo Asset Management Limited, Thybo Global Fund Limited, Thybo

Return Fund Limited, and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants")

seeking the return of approximately $63 million under SIPA, the Bankruptcy Code, the New

York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent

conveyances, and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Thybo Defendants.  The Trustee filed an amended complaint objecting to

Thybo Stable Fund's $217,163,851 customer claim.

119.    As with each of the matters in litigation, B&H attorneys conducted the

tasks outlined in ¶ 49 during this Compensation Period.  B&H attorneys also prepared a second

amended complaint for filing.

42

**S.      MATTER 19 – RUTH MADOFF**

120.   This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Ruth Madoff seeking the return of approximately $44 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Mrs. Madoff.

121.   In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys engaged in settlement discussions with counsel for Mrs. Madoff.  B&H attorneys also agreed to extend Mrs. Madoff's time to answer or otherwise respond to the Trustee's complaint to March 31, 2011.  A pretrial conference is scheduled to be held on April 27, 2011.

**T.      MATTER 20 –SHAPIRO**

122.   This matter categorizes time spent investigating and negotiating for the return of millions in fictitious profits from one of Madoff's earliest investors, Carl J. Shapiro and what is referred to as the "Shapiro family," which includes Ruth E. Shapiro, Rhonda Shapiro Zinner, Michael J. Zinner, Linda Shapiro Waintrup, Daniel I. Waintrup, Ellen Shapiro Jaffe, Robert M. Jaffe, Jennifer Segal Herman, Jonathan M. Segal, Kimberly L. Strauss, Samantha L. Strauss, Michael S. Jaffe, Steven C. Jaffe, Andrew N. Jaffe, Ashley Herman, Zachary Herman, Alexandra Herman, Rebekah Jaffe, Oliver Jaffe, Carl J. Shapiro 2007 Trust dated 11/14/07, Ruth Shapiro 2007 Trust dated 11/14/2007, Carl J. Shapiro 2003 Trust U/D/T 4/9/03 As Amended, Ruth Shapiro 2003 Trust U/D/T/ 4/9/03 As Amended, Rhonda Shapiro Zinner 1993 Trust U/D/T/ DTD 7/7/93 As Amended, RSZ 2006 Irrevocable Trust, Ellen S. Jaffe 2003 Trust U/D/T DTD 5/8/03 As Amended, Jaffe Family 2004 Irrevocable Trust, Linda Shapiro Family Trust DTD

43

12/08/76, Linda Shapiro Waintrup 1992 Trust U/D/T DTD 3/11/92 As Amended, LSW 2006

Irrevocable Trust, Jennifer M. Segal Herman Trust U/D/T DTD 5/1/67 As Amended, Jennifer S.

Herman 2007 Trust, Jennifer Segal Herman 1985 Trust Dated 4/16/85, Jonathan M. Segal 1989

Trust U/D/T DTD 3/8/89 As Amended, Jonathan M. Segal 2007 Trust, Jonathan M. Segal Trust

U/D/T/ DTD 12/1/70, JSH 2006 Irrevocable Trust, Michael S. Jaffe 1989 Trust U/D/T DTD

8/24/89 As Amended, Michael S. Jaffe 2007 Trust, Michael S. Jaffe Trust U/D/T/9/25/71 As

Amended, Steven C. Jaffe Trust U/D/T DTD 9/25/71 As Amended, Steven C. Jaffe 1989 Trust

U/D/T DTD 8/24/89 As Amended, Steven C. Jaffe 2007 Trust, Andrew Jaffe Trust U/D/T DTD

5/12/75 As Amended, Andrew N. Jaffe 1993 Irrevocable Trust U/D/T DTD 6/11/93 As

Amended, Andrew N. Jaffe 2007 Trust, Samantha Strauss 1985 Trust, Samantha L. Strauss 2003

Irrevocable Trust, Kimberly Lauren Strauss 1988 Trust As Amended, Kimberly L. Strauss 2006

Irrevocable Trust, Shapiro Family Limited Partnership, Carl and Ruth Shapiro Family

Foundation, RSZ-JSH Partnership, Shapiro Family CLAT Joint Venture, Shapiro GGC-1 LLC,

Jaffe GC-1 LLC,M/A/S Capital Corp., J Development Group, and Wellesley Capital

Management, Inc.

123.    In settlement of their claims, the Trustee, the United States Department of

Justice, and the Shapiro Family agreed that the Shapiro Family would forfeit subject to federal

civil forfeiture law $625 million, of which $550 million would be paid to the Trustee pursuant to

the settlement agreement and $75 million would be paid to the Government.

124.    In addition to the tasks outlined in ¶ 49, during this Compensation Period,

B&H attorneys negotiated the settlement, prepared and filed pleadings seeking approval of the

settlement pursuant to section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the

Federal Rules of Bankruptcy Procedure, and prepared for and attended a hearing held on December 21, 2010, during which the Court approved the settlement.

## U.    MATTER 21 – AVOIDANCE ACTION INVESTIGATION/LITIGATION

125.    This matter categorizes time spent investigating the fictitious profits withdrawn from BLMIS customer accounts, drafting of avoidance action complaints, researching various issues relating to such avoidance actions, and commencing avoidance actions.

## V.    MATTER 22 – FOX & MARSHALL

126.    This matter categorizes time spent by B&H attorneys on the adversary proceeding commenced by the Trustee against Adele Fox ("Fox") and Susanne Marshall ("Marshall"), individually, and to the extent they purport to represent a class of those similarly situated (collectively, the "Florida Plaintiffs"), and the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay and a Preliminary Injunction (the "Fox Application").

127.    On March 31, 2010, the Trustee filed the Fox Application in this Court, which the Florida Plaintiffs opposed, and on April 27, 2010, a hearing was held on the same. This Court granted the Trustee's Fox Application, finding that the Florida Actions violated the automatic stay provisions of section 362 of the Bankruptcy Code and, hence, are void *ab initio*, and preliminarily enjoined the Florida Plaintiffs and related parties from proceeding with the Florida Actions or commencing any other action against the Picower Defendants (the "Preliminary Injunction Order").

128.    The Florida Plaintiffs have filed no less than five appeals regarding the Picower Defendants.  First, two appeals were filed from the Preliminary Injunction Order.  In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys drafted

several letters to the Court, submitted an appellee brief and an amended Counter-Designation of the Bankruptcy Record on Appeal, and reviewed the Florida Plaintiffs' submissions to the Court.

129.    Second, after this Court approved the Picower Settlement and entered a permanent injunction precluding the prosecution of actions by third parties against the Picower Defendants that are duplicative or derivative of claims belonging to the Trustee (the "Permanent Injunction Order"), the Florida Plaintiffs each appealed the Permanent Injunction Order to the District Court.  In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys drafted a Counter-Designation of the Bankruptcy Record on Appeal and reviewed the appellants' submissions to the Court.

130.    Third, the Government commenced a forfeiture action captioned *United States of America v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 10-CV-9398, in the District Court.  The Government and Mrs. Picower entered into a Stipulation and Order of Settlement, which was "so ordered" by the District Court that resolved potential civil forfeiture liability of the Picower Estate pursuant to 18 U.S.C. § 981(a)(1)(C).  Adele Fox, one of the Florida Plaintiffs, filed both a motion to intervene in that action and a claim against the forfeited funds.  In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys reviewed the pleadings in the forfeiture action for potential impact on the Trustee's case.

## W.    MATTER 23 – CANAVAN

131.    This matter categorizes time spent by B&H attorneys on the adversary proceeding commenced by the Trustee against three BLMIS claimants, individually and on behalf of a similarly situated prospective class of customers (the "New Jersey Plaintiffs"), and

the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay, and a Preliminary Injunction (the "New Jersey Application").

132.    On February 24, 2010, the New Jersey Plaintiffs filed a putative class action (the "New Jersey Action") in the United States District Court for the District of New Jersey ("New Jersey District Court") against SIPC's Board of Directors and CEO/President (the "SIPC Defendants").  The New Jersey Plaintiffs alleged damages based on the bad faith failure to pay insurance claims, fraud, violation of the New Jersey Consumer Fraud Act, and promissory estoppel.

133.    On April 9, 2010, the Trustee filed the New Jersey Application in this Court, which the New Jersey Plaintiffs opposed.  On April 23, 2010, the SIPC Defendants moved to transfer the New Jersey Action from the New Jersey District Court to the District Court for the Southern District of New York, for referral to this Court (the "Transfer Motion").  In an order dated July 6, 2010, the Transfer Motion was granted by the New Jersey District Court.  The District Court subsequently removed the New Jersey Action to this Court pursuant to 28 U.S.C. § 157(a).

134.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, the New Jersey Plaintiffs dismissed their action against SIPC without prejudice.  B&H attorneys filed notices of adjournment of the hearing on the New Jersey Application to July 27, 2011.

## X.    MATTER 24 – ROBERT LURIA

135.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Robert Luria and Robert Luria Partners ("Robert Luria Defendants") seeking the return of approximately eighty thousand dollars under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent

conveyances, disallowance of their claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Robert Luria and Robert Luria Partners.

136.    During this Compensation Period, B&H attorneys reviewed and analyzed the answer and counterclaims asserted by the Robert Luria Defendants.  On October 1, 2010, the Trustee moved to dismiss the counterclaims and strike two affirmative defenses.  A hearing on the Trustee's motion was held on March 29, 2011 and will be continued on June 29, 2011.

## Y.    MATTER 25 – AMY LURIA

137.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Amy Luria and Amy Luria Partners LLC ("Amy Luria Defendants") seeking the return of approximately ninety-five thousand dollars under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, disallowance of their claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Amy Luria and Amy Luria Partners LLC.

138.    During this Compensation Period, B&H attorneys reviewed and analyzed the answer and counterclaims asserted by the Amy Luria Defendants.  On October 1, 2010, the Trustee moved to dismiss the counterclaims and strike two affirmative defenses.  A hearing on the Trustee's motion was held on March 29, 2011 and will be continued on June 29, 2011.

## Z.    MATTER 26 – RICHARD STAHL

139.    This matter categorizes time spent by B&H attorneys on the adversary proceeding commenced by the Trustee against Richard Stahl ("Stahl"), Mark Abend ("Abend"), and ten other plaintiffs that purport to be similarly situated (collectively, the "Stahl Plaintiffs"),

and the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay, and a Preliminary Injunction (the "Stahl Application").

140.    In June 2009, Richard Stahl and Reed Abend, former traders for BLMIS' market-making business, commenced separate lawsuits (the "Madoff Actions") against Mark and Andrew Madoff in the New York City Supreme Court.  Stahl and Abend alleged they were owed nearly $2 million combined in deferred compensation from Mark and Andrew Madoff. Similarly, the Stahl Plaintiffs alleged they were owed damages by Peter Madoff, Mark Madoff, Andrew Madoff, and Shana Madoff (the "Madoff Defendants").  As is true of the Trustee's claims against the Madoff Defendants, all of the claims made in the Madoff Actions are based on the Madoff Defendants' conduct in their roles at BLMIS.  The Stahl Plaintiffs did not allege any other, independent conduct by the Madoff Defendants.

141.    In addition to the tasks outlined in ¶ 49, during this Compensation period, B&H attorneys sought from the Stahl Plaintiffs a voluntary stay of the Madoff Actions, and obtained two such stipulated stays.  On February 15, 2011, the Court entered an Order enforcing the automatic stay and enjoining the remaining Stahl Plaintiffs from continuing the four active Madoff Actions against the Madoff Defendants until the conclusion of Trustee's actions against the Madoff Defendants.  Certain of the Stahl Plaintiffs filed appeals of the Bankruptcy Court Order with the United States District Court for the Southern District of New York.

## AA.    MATTER 27 – JP MORGAN CHASE

142.    This matter categorizes the time spent by B&H attorneys pursuing the avoidance action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, the "JP Morgan Chase") seeking the return of approximately $5.4 billion under SIPA, the Bankruptcy Code, the New York

Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of JP Morgan Chase.

143.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal.

## BB.    MATTER 28 - WESTPORT

144.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. seeking the return of approximately $28 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Silverman, WNB, and PSCC Services, Inc.

145.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint and extended the time for Silverman and WNB to respond to the complaint.

## CC.    MATTER 29 – RYE/TREMONT

146.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Limited, Rye Select Broad Market Fund, L.P., Rye Select Broad Market Prime Fund, L.P., Rye Select Broad Market Portfolio Limited, Rye Select Broad Market Insurance Portfolio, LDC, Rye Select Broad Market Insurance Fund, L.P., Rye Select Broad Market Xl Fund, L.P., Rye Select Broad Market Xl Portfolio Limited, Tremont Arbitrage Fund, L.P., Tremont

Arbitrage Fund Ireland, Tremont Emerging Markets Fund – Ireland, Tremont Equity Fund –

Ireland, Tremont International Insurance Fund, L.P., Tremont Long/Short Equity Fund, L.P.,

Tremont Market Neutral Fund, L.P., Tremont Market Neutral Fund II, L.P., Tremont Market

Neutral Fund Limited, Tremont Opportunity Fund Limited, Tremont Opportunity Fund II, L.P.,

Tremont Opportunity Fund III, L.P., Rye Select Equities Fund, Tremont Multi Manager Fund,

Lifeinvest Opportunity Fund LDC, Oppenheimer Acquisition Corp., Massmutual Holding LLC,

Massachusetts Mutual Life Insurance Co., Sandra L. Manzke and Robert I. Schulman

(collectively, the "Tremont Defendants") seeking the return of approximately $2.1 billion under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable

law, for preferences, fraudulent conveyances, and damages in connection with certain transfers

of property by BLMIS to or for the benefit of the Tremont Defendants.

147.    In addition to the tasks outlined in ¶ 49, during this Compensation Period,

B&H attorneys prepared and filed the complaint under seal.

**DD.    MATTER 30 – HSBC (Incorporating Primeo, Alpha Prime and Herald)**

148.    This matter categorizes time spent by B&H attorneys pursuing the

avoidance action against Alpha Prime Fund Limited ("Alpha Prime"), HSBC Bank PLC, and

HSBC Securities Services (Luxembourg) S.A. (collectively, the "HSBC Defendants") seeking

the return of approximately $86 million under SIPA, the Bankruptcy Code, the New York

Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances,

and damages in connection with certain transfers of property by BLMIS to or for the benefit of

the HSBC Defendants.

149.    In addition to the tasks outlined in ¶ 49, during this Compensation Period,

B&H attorneys prepared and filed a second amended complaint that increased the demand to

approximately $8.9 billion and named as defendants Primeo Fund and Herald Fund SPC, who were parties to two other adversary proceedings commenced by the Trustee that have since been closed, as well as HSBC Holdings PLC, HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Securities Services (Bermuda) Limited, HSBC Bank (Cayman) Limited, HSBC Services (Luxembourg) S.A., HSBC Private Banking Holdings (Suisse) S.A., HSBC Private Bank (Suisse) S.A., HSBC Bank Bermuda Limited, Herald (Lux) SICAV, Senator Fund SPC, Hermes International Fund Limited, Lagoon Investment Limited, Thema Fund Ltd., Thema Wise Investments Ltd., Thema International Fund PLC, Geo Currencies Ltd. S.A., Herald Asset Management Limited, 20:20 Medici AG, UniCredit Bank Austria AG, BA Worldwide Fund Management Limited, Eurovaleur, Inc., Pioneer Alternative Investment Management Limited, Alpha Prime Asset Management Ltd., Regulus Asset Management Limited, Carruba Asset Management Limited, Genevalor, Benbassat Et Cie, Hermes Asset Management Limited, Thema Asset Management (Bermuda) Ltd., Thema Asset Management Ltd., Equus Asset Management Ltd., Equus Asset Management Partners, L.P., Aurelia Fund Management Limited, Ursula Radel-Leszczynski, Sonja Kohn, Erwin Kohn, Mario Benbassat, Alberto Benbassat, Stephane Benbassat, David T. Smith, Roberto Nespolo, Laurent Mathysen-Gerst, Olivier Ador, Pascal Cattaneo, Vladimir Stepczynski, Jean-Marc Wenger, Lagoon Investment Trust, UniCredit S.p.A., Inter Asset Management, Inc., GTM Management Services Corp. N.V., T+M Trusteeship & Management Services S.A., Aurelia Asset Management Partners, Cape Investment Advisors Limited, and Tereo Trust Company Limited.

150.    The Trustee extended the time for some of the defendants to respond to the amended complaint and B&H attorneys coordinated service of process on the numerous international defendants.  A pre-trial conference is scheduled to be held on April 27, 2011.

## EE.    MATTER 31 – KATZ/WILPON

151.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Saul B. Katz, in his individual capacity and as trustee of the Katz 2002 Descendants' Trust; Fred Wilpon, in his individual capacity, as trustee of the Wilpon 2002 Descendants' Trust, and as co-executor of the Estate of Leonard Schreier; Richard Wilpon, in his individual capacity, as trustee of the Fred Wilpon Family Trust, and as trustee of the Saul B. Katz Family Trust; Michael Katz, in his individual capacity and as the trustee of the Saul B. Katz Family Trust; Jeffrey Wilpon, in his individual capacity and as beneficiary of the Fred Wilpon Family Trust; David Katz, in his individual capacity, as trustee of the Saul B. Katz Family Trust, and as beneficiary of the Saul B. Katz Family Trust; Gregory Katz, in his individual capacity and as beneficiary of the Katz 2002 Descendants' Trust; Arthur Friedman; L. Thomas Osterman; Marvin B. Tepper; the Estate of Leonard Schreier; Jason Bacher as co-executor of the Estate of Leonard Schreier; Mets Limited Partnership; Sterling Mets LP; Sterling Mets Associates; Sterling Mets Associates II; Mets One LLC; Mets II LLC; Mets Partners, Inc.; C.D.S. Corp.; Coney Island Baseball Holding Company LLC; Brooklyn Baseball Company LLC; FS Company LLC; 157 J.E.S. LLC; Air Sterling LLC; BAS Aircraft LLC; Bon Mick Family Partners LP; Bon-Mick, Inc.; Charles 15 Associates; Charles 15 LLC; Charles Sterling LLC; Charles Sterling Sub LLC; College Place Enterprises LLC; FFB Aviation LLC; Iris J. Katz and Saul B. Katz Family Foundation, Inc.; the Judy and Fred Wilpon Family Foundation, Inc.; Red Valley Partners; Robbinsville Park LLC; Ruskin Garden Apartments LLC; See Holdco LLC; See

53

Holdings I; See Holdings II; Sterling 10 LLC; Sterling 15C LLC; Sterling 20 LLC; Sterling American Advisors II LP; Sterling Brunswick Corporation; Sterling Brunswick Seven LLC; Sterling Dist Properties LLC; Sterling Equities; Sterling Equities Associates; Sterling Equities Investors; Sterling Heritage LLC; Sterling Internal V LLC; Sterling Jet Ltd.; Sterling Jet II Ltd.; Sterling Pathogenesis Company; Sterling Third Associates; Sterling Thirty Venture LLC; Sterling Tracing LLC; Sterling Twenty Five LLC; Sterling Twenty Five LLC; Sterling VC IV LLC; Sterling VC V LLC; Valley Harbor Associates; the Saul B. Katz Family Trust; the Fred Wilpon Family Trust; the Katz 2002 Descendants' Trust; the Wilpon 2002 Descendants' Trust; Iris Katz, in her individual capacity and as trustee of the Saul B. Katz Family Trust; Judith Wilpon, in her individual capacity and as trustee of the Fred Wilpon Family Trust; Dayle Katz, in her individual capacity, as trustee of the Katz 2002 Descendants' Trust, and as beneficiary of the Katz 2002 Descendants' Trust; Debra Wilpon, in her individual capacity, as trustee of the Fred Wilpon Family Trust, and as trustee of the Wilpon 2002 Descendants' Trust; Valerie Wilpon; Amy Beth Katz; Heather Katz Knopf, in her individual capacity, as trustee of the Saul B. Katz Family Trust, and as beneficiary of the Saul B. Katz Family Trust; Howard Katz, in his individual capacity and as beneficiary of the Katz 2002 Descendants' Trust; Natalie Katz O'Brien, in her individual capacity, as trustee of the Saul B. Katz Family Trust, and as beneficiary of the Saul B. Katz Family Trust; Todd Katz, in his individual capacity and as beneficiary of the Katz 2002 Descendants' Trust; Bruce N. Wilpon, in his individual capacity and as beneficiary of the Fred Wilpon Family Trust; Daniel Wilpon, in his individual capacity and as beneficiary of the Wilpon 2002 Descendants' Trust; Jessica Wilpon, in her individual capacity and as beneficiary of the Wilpon 2002 Descendants' Trust; Robin Wilpon Wachtler, in her individual capacity and as beneficiary of the Fred Wilpon Family Trust; Philip Wachtler;

54

Kimberly Wachtler, in her individual capacity and as beneficiary of the Fred Wilpon Family

Trust; Scott Wilpon, in his individual capacity and as beneficiary of the Wilpon 2002

Descendants' Trust; Minor 1 (REDACTED); Minor 2 (REDACTED); Ruth Friedman; Phyllis

Rebell Osterman; Elise C. Tepper; Jacqueline G. Tepper; Edward M. Tepper; Deyva Schreier

Arthur, in her individual capacity and as beneficiary of the Estate of Leonard Schreier; Michael

Schreier, in his individual capacity and as beneficiary of the Estate of Leonard Schreier; Realty

Associates Madoff II; Sterling Acquisitions LLC; Sterling American Property III LP; Sterling

American Property IV LP; and Sterling American Property V LP (collectively, the "Katz Wilpon

Defendants") seeking the return of approximately $322 million under SIPA, the Bankruptcy

Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences,

fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS

to or for the benefit of the Katz Wilpon Defendants.

      152.    In addition to the tasks outlined in ¶ 49, during this Compensation Period,

B&H attorneys prepared and filed the complaint under seal, and prepared and filed a response to

the motions to intervene filed by Newsday and WNBC-TV to unseal the complaint.

## FF.    MATTER 32 – LUXALPHA/UBS

      153.    This matter categorizes time spent by B&H attorneys pursuing the

avoidance action against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg)

SA, UBS Third Party Management Company SA, Access International Advisors LLC, Access

International Advisors Europe Limited, Access International Advisors Ltd., Access Partners

(Suisse) SA, Access Management Luxembourg SA (f/k/a Access International Advisors

Luxembourg) SA) as represented by its Liquidator Maitre Ferdinand Entringer, Access Partners

SA as represented by its Liqudator Maitre Ferdinand Entringer, Patrick Littaye, Claudine Magon

de la Villehuchet (a/k/a Claudine de la Villehuchet) in her capacity as Executrix under the Will

of Thierry Magon de la Villehuchet (a/k/a Rene Thierry de la Villehuchet), Claudine Magon de

la Villehuchet (a/k/a Claudine de la Villehuchet) individually as the sole beneficiary under the

Will of Thierry Magon de la Villehuchet (a/k/a Rene Thierry de la Villehuchet), Pierre

Delandmeter, Theodore Dumbauld, Luxalpha SICAV as represented by its Liquidators Maitre

Alain Rukavina and Paul LaPlume, Roger Hartmann, Ralf Schroeter, Rene Egger, Alain

Hondequin, Hermann Kranz, Bernard Stiehl, Groupement Financier Ltd (collectively, "UBS")

seeking the return of $2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and

damages in connection with certain transfers of property by BLMIS to or for the benefit of UBS.

154.    In addition to the tasks outlined in ¶ 49, during this Compensation Period,

B&H attorneys prepared and filed the complaint under seal, as well as a motion to extend time

for the Trustee to serve the summons and complaint and for the foreign defendants to respond

thereto.  A pre-trial conference is scheduled to be held on July 6, 2011.

## GG.    MATTER 33 – NOMURA BANK INTERNATIONAL PLC

155.    This matter categorizes time spent by B&H attorneys pursuing the

avoidance action against Nomura Bank International plc ("Nomura") seeking the return of

approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and

damages in connection with certain transfers of property by BLMIS to or for the benefit of

Nomura.

156.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal and prepared and filed a motion to unseal the complaint.  The pre-trial conference is scheduled to be held on September 27, 2011.

## HH.    MATTER 34 - CITIBANK

157.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Citibank.

158.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal and agreed to the extension of Citibank's time to answer the complaint.  A pre-trial conference is scheduled to be held on March 7, 2011.

## II.    MATTER 35 - NATIXIS

159.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/n/a Ixis Corporate & Investment Bank, Natixis Financial Products, Inc., Bloom Asset Holdings Fund, Tensyr Limited (the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants.

57

160.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal and the Trustee granted the Natixis Defendants an extension of time to file a response to the complaint up to and including May 9, 2011.  A pre-trial conference is scheduled to be held on September 27, 2011.

## JJ.    MATTER 36 – MERRILL LYNCH

161.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Merrill Lynch International & Co. C.V. ("Merrill Lynch") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Merrill Lynch.

162.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal, and the Trustee and Merrill Lynch stipulated to an agreement concerning waiver of service and the time by which Merrill Lynch shall respond to the complaint.

## KK.    MATTER 37 – ABN AMRO

163.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. ("ABN Bank") (ABN Bank is presently known as The Royal Bank of Scotland, N.V.) and ABN AMRO Incorporated ("ABNI") (together, "ABN") and Rye Select Broad Market XL Fund, LP ("Rye LP") and Rye Select Broad Market XL Portfolio Limited ("Rye Portfolio") (together, "Tremont XL Funds") seeking the return of approximately $671 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent

conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of ABN and the Tremont XL Funds.

164.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal. A pre-trial conference is scheduled for June 29, 2011. The Trustee granted ABN AMRO an extension of time to respond to the complaint up to and including July 15, 2011.

## LL.    MATTER 38 – BANCO BILBAO

165.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of approximately $48 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of BBVA.

166.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal.

## MM.    MATTER 39 - FORTIS

167.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.) (the "Irish Bank"), ABN AMRO Custodial Services (Ireland) Ltd. (f/n/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) ("Fortis Services") (together, "Fortis") and Rye Select Broad Market XL Fund, LP ("Rye LP") and Rye Select Broad Market XL Portfolio Limited ("Rye Portfolio") (collectively, the "Fortis Defendants") seeking the return of approximately $267 million under SIPA, the Bankruptcy Code, the New York

59

Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants.

168.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal, subsequently entered into a stipulation unsealing the complaint, and extended the time for the Fortis Defendants to respond to the complaint.

## NN.    MATTER 40 – KOHN

169.    This matter categorizes time spent by B&H attorneys pursuing the avoidance and civil action against Sonja Kohn A/K/A Sonja Blau Kôhn A/K/A Sonja Blau A/K/A Sinja Kôhn A/K/A Sinja Blau A/K/A Sinja Türk, Erwin Kohn, Netty Blau, Robert Alan Kohn, Rina Hartstein (Née Kohn), Moishe Hartstein, Mordechai Landau, Erko, Inc., Palladium Capital Advisors LLC, Windsor IBC, Inc., Eurovaleur, Inc., Infovaleur, Inc., Tecno Development & Research S.R.L., Mariadelmar Raule,  Tecno Development & Research Ltd., Shlomo (Momy) Amselem, Hassans International Law Firm, Herald Asset Management Ltd., Franco Mugnai, Paul De Sury, Daniele Cosulich, 20:20 Medici AG f/k/a Bank Medici AG, Absolute Portfolio Management Ltd., Medicifinanz Consulting GMBH, Medici S.R.L., Medici Cayman Island Ltd., Bank Medici AG (Gibraltar), Revitrust Services Est., Peter Scheithauer, Robert Reuss, Helmuth Frey, Manfred Kastner, Josef Duregger, Andreas Pirkner, Werner Tripolt, Andreas Schindler, UniCredit Bank Austria AG, Gerhard Randa, Stefan Zapotocky, Friedrich Kadrnoska, Ursula Radel-Leszczynski, Werner Kretschmer, Wilhelm Hemetsberger, Harald Nograsek, Bank Austria Worldwide Fund Management Ltd., Bank Austria Cayman Islands Ltd., UniCredit S.p.A., Alessandro Profumo, Gianfranco Gutty, Pioneer Global Asset

Management, S.P.A., Sofipo Austria GMBH, M-Tech Services GMBH, Brera Servizi Aziendiale S.R.L., Redcrest Investments, Inc., Line Group Ltd., Line Management Services Ltd., Line Holdings Ltd., Herald Consult Ltd, John And Jane Doe Defendants 1-100 (the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants.

170.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint against the Kohn Defendants and, for some defendants, extended the time to respond to the complaint, as well as coordinated service of process on the numerous international defendants.

## OO.    MATTER 41 - WHITECHAPEL

171.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Whitechapel Management Limited and Granadilla Holdings Limited ("Whitechapel Defendants") seeking the return of approximately $10 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Whitechapel Defendants.

172.    In addition to the tasks outlined in ¶ 49, during this Compensation Period, B&H attorneys prepared and filed the complaint.

## V.    COMPENSATION REQUESTED

173.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

174.    The Trustee expended 954.80 hours in the rendition of professional services and B&H expended 116,398.50 hours in the rendition of professional and paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in an average hourly discounted rate of $747.59 for Trustee and $370.94 for B&H for fees incurred.

175.    Prior to filing this Application, in accordance with the Compensation Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period beginning October 1, 2010 through January 31, 2011; and (ii) a draft of this Application. In connection with four monthly statements each submitted by the Trustee and B&H and this Application, the Trustee voluntarily adjusted his fees by writing off $139,107.50 (in addition to the 10% public interest discount, as discussed below).  B&H voluntarily adjusted its fees by writing off $342,197.00 (in addition to the 10% public interest discount, as discussed below) and wrote off expenses customarily charged to other clients in the amount of $455,211.13.

176.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $79,311.00 for the Trustee and $4,797,449.90 for B&H.  Such fees are reasonable based on the customary compensation

charged by comparably skilled practitioners in Chapter 11 cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

177.    Pursuant to the Compensation Order, on November 19, 2010, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from October 1, 2010 through October 31, 2010 (the "October Fee Statements"). The Trustee's October Fee Statement reflected fees of $202,455.00 and no expenses. B&H's October Fee Statement reflected fees of $12,103,322.50 and $305,815.76 in expenses. SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H. After such adjustments, the Trustee's October Fee Statement reflected fees of $182,209.50, and B&H's October Fee Statement reflected fees of $10,892,990.25. After subtracting the Court-ordered 15% holdback, SIPC advanced $154,878.07 for services rendered by the Trustee, $9,259,041.71 for services rendered by B&H, and $305,815.76 for expenses incurred by B&H.

178.    Pursuant to the Compensation Order, on December 20, 2010, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from November 1, 2010 through November 31, 2010 (the "November Fee Statements"). The Trustee's November Fee Statement reflected fees of $231,577.50 and no expenses. B&H's November Fee Statement reflected fees of $16,984,779.00 and $239,841.68 in expenses. SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H. After such adjustments, the Trustee's November Fee Statement reflected fees of $208,419.75, and B&H's November Fee Statement reflected fees of $15,286,301.10. After subtracting the Court-ordered 15% holdback, SIPC

advanced $177,156.78 for services rendered by the Trustee and $12,993,355.94 for services rendered by B&H, and $239,841.68 for expenses incurred by B&H.

179.    Pursuant to the Compensation Order, on January 20, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from December 1, 2010 through December 31, 2010 (the "December Fee Statements"). The Trustee's December Fee Statement reflected fees of $175,477.50 and $31.50 in expenses. B&H's December Fee Statement reflected fees of $9,760,078.50 and $299,792.48 in expenses. SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H. After such adjustments, the Trustee's December Fee Statement reflected fees of $157,929.75, and B&H's December Fee Statement reflected fees of $8,784,070.65. After subtracting the Court-ordered 15% holdback, SIPC advanced $134,240.28 for services rendered by the Trustee, $7,466,460.05 for services rendered by B&H, and $31.50 and $299,792.48 for expenses incurred by the Trustee and B&H, respectively.

180.    Pursuant to the Compensation Order, on February 18, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from January 1, 2011 through January 31, 2011 (the "January Fee Statements"). The Trustee's January Fee Statement reflected fees of $183,600.00 and no expenses. B&H's January Fee Statement reflected fees of $9,126,319.00 and $257,746.33 in expenses. SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H. After such adjustments, the Trustee's January Fee Statement reflected fees of $165,240.00, and B&H's January Fee Statement reflected fees of $8,213,687.10. After subtracting the Court-ordered 15% holdback, SIPC advanced $140,454.00 for services rendered

by the Trustee, $6,981,634.04 for services rendered by B&H, and $257,746.33 for expenses incurred by B&H.

181.    Exhibit B annexed hereto is a summary by task code of total hours expended and total fees for services rendered by the Trustee during the Compensation Period.

182.    Exhibit C annexed hereto provides a schedule of the Trustee's total expenses incurred during the Compensation Period for which reimbursement is requested. The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients.

183.    Exhibit D annexed hereto provides a schedule of B&H professionals and paraprofessionals who have provided services for the Debtor during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount. The 10% discount ($4,797,449.90, as described above) is taken off the total cumulative amount billed, as reflected on Exhibit D.

184.    Exhibit E annexed hereto is a summary of services performed by B&H during the Compensation Period organized by B&H task code and matter number.

185.    Exhibit F annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H. The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients. B&H has not charged for a number of categories of expenses regularly charged to and paid by B&H's clients, including certain inter-office travel and related expenses (lodging, meals, airfare and other transportation). These expenses amount to a voluntary reduction of $455,211.13.

186.    Exhibit G annexed hereto is calculation of the holdback amounts and the release sought, explained below in Section VI.

187.    Exhibit H annexed hereto is a proposed order, reflecting the reduction in the holdback amounts for the Trustee and B&H, as explained below in Section VI.

188.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

189.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee, and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    **REDUCTION OF THE HOLDBACK**

190.    The Compensation Order established an orderly, regular process for the allowance and payment of interim monthly compensation and reimbursement to the Trustee and B&H.  (ECF Nos. 126, 1078).  Pursuant to the Compensation Order, payment of a percentage of the approved compensation—initially twenty percent (20%) and subsequently reduced to fifteen percent (15%)—is deferred through the conclusion of the liquidation period or until further order of the Court (the "Holdback").

191.    As the Trustee has determined virtually every customer claim submitted to him and recovered billions of dollars to the fund of Customer Property, the Trustee and B&H ("Applicants") seek to reduce the Holdback from fifteen percent (15%) to ten percent (10%) by

amending, upon the consent and approval of SIPC, paragraph 2(e) of the Compensation Order to provide that the Trustee shall promptly pay ninety percent (90%) of the fees identified in each monthly statement of the Applicants.  This reduction in the Holdback will be retroactive to the Filing Date and applicable to future fee applications filed by the Trustee and B&H.

192.    The SIPC recommendation that will be filed in support of the fees and expenses requested in this Application will also support a reduction in the amount of the Holdback for the Trustee and B&H from fifteen percent (15%) to ten percent (10%).

193.    For the period from December 15, 2008 through January 30, 2011, interim compensation in the amounts of $539,912.87 for the Trustee and $22,925,955.31 for B&H have been deferred as the Holdback.  The Trustee and B&H seek the release of $113,304.32 and $5,375,338.62, respectively, which would reduce the Holdback to ten percent (10%) of interim compensation requested to date.

194.    The Applicants and SIPC respectfully request that the Court amend the Compensation Order to reflect the reduction in Holdback from fifteen percent (15%) to ten percent (10%), and authorize the release of funds to reduce the Holdback to ten percent (10%).

## VII.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

195.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

196.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, SIPA § 78eee(b)(5)(E) requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H (*see* SIPA § 78fff-3(b)(2)).

197.    The Trustee has determined, at this time, that he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief of the Trustee.  Accordingly, any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

198.    Therefore, with respect to this Application, the Trustee and B&H request that consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on May 12, 2011.

199.    The Trustee and B&H submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to SIPA § 78eee(b)(5).

## VIII.   <u>CONCLUSION</u>

200.    The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $713,799.00 (of which $606,729.13 is to be paid currently and $107,069.87 is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee during the Compensation Period, and $31.50 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee in connection with the rendition of such services; (ii) allowing and awarding $43,177,049.10 (of which $36,700,491.74 is to be paid currently and $6,476,557.36 is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by B&H during the Compensation Period, and $1,103,196.25 as reimbursement of the actual and necessary costs and expenses incurred by B&H in connection with the rendition of such services; (iii) reducing the Holdback amount to ten percent; (iv) releasing $113,304.32 to the Trustee and $5,375,338.62 to B&H from the Holdback; and (v) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
     April 18, 2011

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/  *David J. Sheehan*_____
     Baker & Hostetler LLP
     45 Rockefeller Plaza
     New York, New York 10111
     Telephone: (212) 589-4200
     Facsimile: (212) 589-4201
     Irving H. Picard
     Email: ipicard@bakerlaw.com
     David J. Sheehan
     Email: dsheehan@bakerlaw.com
     Seanna R. Brown
     Email: sbrown@bakerlaw.com
     Jacqlyn R. Rovine
     Email: jrovine@bakerlaw.com

     *Attorneys for Irving H. Picard, Esq. Trustee*
     *for the Substantively Consolidated SIPA*
     *Liquidation of Bernard L. Madoff*
     *Investment Securities LLC And Bernard L.*
     *Madoff*