BLITMAN & KING LLP
Jennifer A. Clark, Esq.
Jonathan M. Cerrito, Esq.
Brian J. LaClair, Esq.
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204-5412
Telephone:     (315) 422-7111
Facsimile:     (315) 471-2623
Email:         jaclark@bklawyers.com
               jmcerrito@bklawyers.com
               bjlaclair@bklawyers.com

*Attorneys for Bricklayers and Allied Craftsmen Local 2 Annuity Fund, Bricklayers and Allied Craftworkers Local 2, Albany, New York, Pension Fund, Central New York Laborers' Annuity Fund, Central New York Laborers' Pension Fund, International Brotherhood of Electrical Workers Local Union No. 43 and Electrical Contractors Pension Fund, I.B.E.W. Local 139 Pension Fund, I.B.E.W. Local 241 Pension Fund, I.B.E.W. Local 325 Annuity Fund, I.B.E.W. Local 325 Pension Fund, I.B.E.W. Local 910 Annuity Fund, I.B.E.W. Local 910 Pension Fund, I.B.E.W. Local 1249 Pension Fund, Laborers' Local 103 Annuity Fund, Laborers' Local 103 Pension Fund, Local 73 Annuity Fund, Local 73 Retirement Fund, Oswego Laborers' Local 214 Pension Fund, Roofers' Local 195 Pension Fund, Roofers' Local 195 Annuity Fund, SEIU 1199Upstate Pension Fund, Service Employees of Upstate New York Pension Fund and Syracuse Builders Exchange, Inc./CEA Pension Plan*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION                          :
CORPORATION,                                            :
          Plaintiff,                          :   Adversary Proceeding
                                                        :
— *versus* —                                            :   No. 08-01789 (BRL)
                                                        :
BERNARD L. MADOFF INVESTMENT                            :   SIPA Liquidation
SECURITIES, LLC,                                        :   (Substantively Consolidated)
          Defendant                           :
------------------------------------------------------------------------x
In re BERNARD L. MADOFF,                                :
          Debtor                              :
------------------------------------------------------------------------x

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIMS**

Bricklayers and Allied Craftsmen Local 2 Annuity Fund, Bricklayers and Allied

Craftworkers Local 2, Albany, New York, Pension Fund, Central New York Laborers' Annuity

Fund, Central New York Laborers' Pension Fund, International Brotherhood of Electrical Workers Local Union No. 43 and Electrical Contractors Pension Fund, I.B.E.W. Local 139 Pension Fund, I.B.E.W. Local 241 Pension Fund, I.B.E.W. Local 325 Annuity Fund, I.B.E.W. Local 325 Pension Fund, I.B.E.W. Local 910 Annuity Fund, I.B.E.W. Local 910 Pension Fund, I.B.E.W. Local 1249 Pension Fund, Laborers' Local 103 Annuity Fund, Laborers' Local 103 Pension Fund[1], Local 73 Annuity Fund, Local 73 Retirement Fund, Oswego Laborers' Local 214 Pension Fund, Roofers' Local 195 Pension Fund, Roofers' Local 195 Annuity Fund, SEIU 1199Upstate Pension Fund, Service Employees of Upstate New York Pension Fund and Syracuse Builders Exchange, Inc./CEA Pension Plan (collectively "Objectors"), by and through their undersigned counsel, as and for their Objection to the Trustee's Determination of Claim, respectfully represent as follows:

## I.     Procedural History

1.     Objectors timely filed the following Customer Claims ("Claims") against the estate of Bernard L. Madoff Investment Securities ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa-78lll:

| Investor | Claim No. |
|---|---|
| Bricklayers and Allied Craftsmen Local 2 Annuity Fund | 005984 |
| Bricklayers and Allied Craftworkers Local 2 Pension Fund | 005983 |
| Central New York Laborers' Annuity Fund | 004974 |
| Central New York Laborers' Pension Fund | 005077 |
| International Brotherhood of Electrical Workers Local Union | |

---

[1] Effective December 31, 2010, Laborers' Local 103 Annuity Fund and Laborers' Local 103 Pension Fund merged with Rochester Laborers' Annuity Fund and Rochester Laborers' Pension Fund, respectively, and Rochester Laborers Annuity Fund and Rochester Laborers Pension Fund are the successor and surviving employee benefit funds.

2

| | |
|---|---|
| No. 43 and Electrical Contractors Pension Fund | 005835 |
| I.B.E.W. Local 139 Pension Fund | 005422 |
| I.B.E.W. Local 241 Pension Fund | 005467 |
| I.B.E.W. Local 325 Annuity Fund | 006585 |
| I.B.E.W. Local 325 Pension Fund | 006572 |
| I.B.E.W. Local 910 Annuity Fund | 005414 |
| I.B.E.W. Local 910 Pension Fund | 004801 |
| I.B.E.W. Local 1249 Pension Fund | 006901 |
| Laborers' Local 103 Annuity Fund | 005965 |
| Laborers' Local 103 Pension Fund | 005964 |
| Local 73 Annuity Fund | 005895 |
| Local 73 Retirement Fund | 005897 |
| Oswego Laborers' Local 214 Pension Fund | 005411 |
| Roofers' Local 195 Pension Fund | 004336 |
| Roofers' Local 195 Annuity Fund | 004334 |
| SEIU 1199Upstate Pension Fund | 005810 |
| Service Employees of Upstate New York Pension Fund | 006160 |
| Syracuse Builders Exchange, Inc./CEA Pension Plan | 005162 |

Affidavit of Jennifer A. Clark in Supp. of Obj., sworn to May 16, 2011 [hereinafter "Clark Aff."] Ex. A.

2.   On December 17, 2010, Irving H. Picard, trustee for the substantively consolidated liquidation of BLMIS ("Trustee"), issued to each Objector a "Notice of Trustee's Determination of Claim" denying its Claim. Each such notice stated:

3

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is DENIED.

Clark Aff., Ex. B.

3. For the reasons outlined below, the Trustee improperly denied Objectors' Claims.

## II.    Background

4. Objectors are Taft-Hartley pension and benefit plans governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461. Clark Aff., Ex. A (see trustee resolutions attached to Claims); Ex. C; Ex. D ¶ 2.

5. Each Objector was a "Participating Plan" or "Participating Entity" in the Income-Plus Investment Fund ("Income-Plus") as of the "filing date" in this proceeding as defined by Section 78lll(7). Clark Aff., Ex. D ¶¶ 45, 50, 60.

6. Income-Plus, a tax-exempt "Group Trust" within the meaning of Internal Revenue Ruling 81-100, was created on December 15, 1993, for the purpose of pooling investment assets of certain qualified pension plans and entities governed by ERISA. Clark Aff., Ex. D ¶ 1; Ex. E, Doc. 150-4 at 12, Doc. 150-7 at 11.[2] Internal Revenue Ruling 81-100 limits participation in group trusts, such as Income-Plus, to ERISA plans and certain types of governmental plan. See Rev. Rul. 81-100, 1981-1 C.B. 326, as modified by Rev. Rul. 2004-67, 2004-28 I.R.B. 28; Rev. Rul. 2011-1.

7. Objectors entrusted their ERISA plan assets to Income-Plus pursuant to the terms of Private Offering Memoranda, dated December 15, 1993, and/or November 1, 2003, and attached exhibits (collectively "Offering Memoranda"). Clark Aff., Ex. D ¶ 50; Ex. E, Docs. 150-4–150-8.

---

[2] Citations to Exhibit E will include references to ECF document and page numbers.

4

8. Under the Offering Memoranda, J.P. Jeanneret Associates, Inc. served as the "investment manager" of Income-Plus. Clark Aff., Ex. E, Doc. 150-4 at 13; Doc. 150-7 at 12. J.P. Jeanneret Associates, Inc. is also a "named fiduciary" of Objectors within the meaning of ERISA. Id. Ex. E, Doc. 150-6 at 31-32 ("The Participating Entity . . . agree[s] that for purposes of appointing any Sub-Manager, the Investment Manager is a 'named fiduciary' of the Participating Entity within the meaning of Section 402(a)(2) of ERISA."). Further, the Offering Memoranda provide that "[t]he investment Manager will . . . be deemed a fiduciary with respect to each investing Plan and the general prudence and fiduciary responsibility provisions of ERISA will be applicable to it and to the operations of the Group Trust." Clark Aff., Ex. E, Doc. 150-4 at 33; Doc. 150-7 at 30.

9. The vast majority of entities that participated in Income-Plus during all relevant periods were Taft-Hartley pension and benefit plans governed by ERISA; those entities held more than 25% of Income-Plus's equity interest. See Clark Aff., Ex. D ¶ 2. According to Income-Plus's Offering Memoranda, "[t]he assets of the Group Trust will constitute 'plan assets' under regulations promulgated by the DOL." Clark Aff., Ex. E, Doc. 150-4 at 33; Doc. 150-7 at 30.

10. Under ERISA, J.P. Jeanneret Associates, Inc., as a named fiduciary, had the authority to delegate the control or management of the assets of Objectors, and had the authority to appoint one or more underlying investment managers to manage (and to acquire or dispose of) the assets of the Objectors. See 29 U.S.C. § 1102(c)(3). BLMIS was, from the inception of Income-Plus in 1993, one of the "Designated Managers" utilized by Income-Plus, pursuant to Section 3.07 of the Trust Agreement, to manage certain assets of Income-Plus, including Objectors' ERISA plan assets. Clark Aff., Ex. D ¶ 58; Ex. E, Doc. 150-4 at 55.

5

11. Furthermore, under ERISA and applicable regulations, "in the case of [an ERISA] plan's investment in an equity interest of an entity . . . [the ERISA plan's] assets include both the equity interest and an undivided interest in each of the underlying assets of the entity," so long as ERISA plans hold 25% or more of the entity's equity interest. 29 U.S.C. §1002(42); 29 C.F.R. § 2510.3-101. As such, the underlying assets of Income-Plus were ERISA plan assets, not property of Income-Plus, and each Objector held both their respective equity interest and an undivided interest in each of the underlying assets of Income-Plus.

12. Under ERISA and applicable regulations, all assets of an ERISA plan shall be held in trust by a trustee. See 29 U.S.C. § 1103; 29 C.F.R. 2550.403a-1. J.P. Jeanneret Associates, Inc. held the Objectors' assets as trustee since the Objectors appointed it as a named fiduciary under ERISA. Clark Aff. Ex. E, Doc. 150-6 at 31-32. As such, J.P. Jeanneret Associates, Inc., as investment manager, held Income-Plus's underlying assets in trust for the Objectors, and as a named fiduciary had the authority to entrust the Objectors assets to "Designated Managers." Clark Aff., Ex. E, Doc. 150-4 at 55.

13. J.P. Jeanneret Associates, as investment manager of Income-Plus and a named fiduciary of Objectors, acted on behalf of the Objectors when it entrusted Objectors' ERISA plan assets with BLMIS for the purpose of purchasing securities. Clark Aff., Ex. D ¶¶ 3, 58.

14. Either by virtue of BLMIS's appointment as a "Designated Manager" to manage the Objector's plan assets, or as a result of BLMIS' authority and control over such plan assets, BLMIS was an ERISA fiduciary with respect to Objectors. See 29 U.S.C. § 1102(c)(3); 29 C.F.R. § 2510.3-101(a)(2). BLMIS did not merely execute transactions for the purchase or sale of securities pursuant to instructions of a fiduciary. Instead, BLMIS exercised full independent and unilateral decision making authority and control over ERISA plan assets as to what

6

securities, if any, should be purchased or sold. BLMIS' discretion was not limited. See 29 C.F.R. § 2510.3-21(d)(1) and (2).

15. As a result, under ERISA and applicable regulations, BLMIS held Objectors' ERISA plan assets in trust. See 29 U.S.C. § 1103; 29 C.F.R. § 2550.403a-1. Importantly, ERISA acknowledges that plan assets continue to be held in trust regardless of the name under which a broker or dealer hold such securities. 29 C.F.R. § 2550.403a-1(a) and (b). Specifically, even where securities are held by a broker or dealer in the "name of a nominee or in street name," such assets continue to be held in trust on behalf of the ERISA plan. 29 C.F.R. § 2550.403a-1(b). Notably, the Offering Memoranda state that "Designated Managers," such as BLMIS, "shall have the following powers and authority . . . exercisable by the Designated Manager without further direction or action by [Income-Plus]: . . . <u>To purchase, receive, subscribe for, or otherwise acquire any securities or otherwise acquire any securities or other property</u> and to retain <u>in trust</u> such securities or other property." Clark Aff., Ex. E, Doc. 150-4 at 55 (emphases added).

16. As such, BLMIS held Objectors' ERISA plan assets in trust and was a fiduciary of Objectors.

### III. Basis for Objection

17. The Trustee improperly denied Objectors' Claims because Objectors were in fact "customers" of BLMIS as that term is defined under Section 78lll(2) if SIPA.

18. Section 78lll(2) provides as follows:

> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term

7

> "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and <u>any person who has deposited cash with the debtor for the purpose of purchasing securities</u> . . . .

15 U.S.C. § 78lll(2) (emphasis added).

### A.  **Objectors Entrusted Cash With BLMIS**

19.  The statutory definition of "customer" plainly includes "any person who has deposited cash with the debtor for the purpose of purchasing securities." 15 U.S.C. § 78lll(2).

20.  Indeed, "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purpose of trading securities." <u>Appleton v. First Nat'l Bank of Ohio</u>, 62 F.3d 791, 801 (6th Cir. 1995); <u>see</u> <u>In re New Times Sec. Servs., Inc.</u>, 463 F.3d 125, 128 (2d Cir. 2006) (quoting preceding passage from <u>Appleton</u>); <u>SEC v. Kenneth Bove & Co.</u>, 378 F. Supp. 697, 699 (S.D.N.Y. 1974) ("The circumscribed class of customers protected under the Act [includes] those persons who have 'entrusted' property to the Debtor . . . ."); <u>In re Old Naples Secs., Inc.</u>, 223 F. 3d 1296, 1300 (11th Cir. 2000) ("'Customers' include those who have entrusted securities to the brokerage in the ordinary course of its business and those who have deposited cash with the brokerage for the purpose of purchasing securities.")

21.  In <u>SIPC v. Morgan Kennedy & Co.</u>, 553 F.2d 1314 (2d Cir. 1976), the court emphasized that the definition of "customer" is reserved for situations where the broker held property of the claimant and the claimant "'entrusted securities [or cash] to a broker for some purpose connected with participation in the securities market.'" <u>Id.</u> at 1317 (quoting <u>SEC v. F.O. Baroff Co.</u>, 497 F.2d 280, 284 (2d Cir. 1974)). In holding that the trustees of an ERISA plan— the body with responsibility for making investments—was the "customer," as opposed to the participants and beneficiaries who did not have investment responsibility, the <u>Morgan Kennedy</u> court reasoned that the broker never held the individual beneficiaries' property but instead held

8

property, in trust, of the ERISA plan. Id. at 1318; see SEC v. Bove & Co., 378 F. Supp. 697 (S.D.N.Y. 1974) (claimants not "customers" because broker did not hold claimants' property when liquidation trustee was appointed); SEC v. Seggos & Co., 416 F. Supp. 280 (S.D.N.Y. 1976) (same).

22. "Whether a claimant 'deposited cash with the debtor,' however, does not . . . depend simply on to whom the claimant handed her cash or made her check payable, or even where the funds were initially deposited. Instead, the question is whether there was 'actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation.'" In re Old Naples, 223 F.3d at 1302 (quoting In re Stalvey & Assocs., Inc., 750 F.2d 464, 469 (5th Cir. 1985) (quoting Kenneth Bove & Co., 378 F. Supp. at 700)) (emphasis added).

23. Here, Objectors "deposited cash with the debtor" under Section 78lll(2) because there was "actual receipt, acquisition or possession" of their property by BLMIS. Clark Aff., Ex. D ¶¶ 3, 58; Ex. E, Doc. 150-4 at 55. To reiterate, the underlying assets of Income-Plus were ERISA plan assets in which Objectors held both their respective equity interest and an undivided interest, and Income-Plus held Objectors' ERISA plan assets in trust. Income-Plus, acting on behalf and as a fiduciary of the Objectors, entrusted Objectors' ERISA plan assets with BLMIS for the purpose of purchasing securities and BLMIS actually received, acquired, and took possession of Objectors' ERISA plan assets. Objectors' property never lost its character as Objectors' plan assets and BLMIS received Objectors' property to be held in trust by BLMIS.

24. Thus, Objectors are "customers" within the plain reading of Section 78lll(2).

9

**B.     Objectors Had a Fiduciary Relationship With BLMIS**

25.     Another critical aspect of SIPA "customer" status is the fiduciary nature of the claimant's relationship with the debtor.

26.     A claimant that entrusts cash to a broker-dealer for the purpose of trading securities "has a fiduciary relationship with the broker-dealer, and is entitled to the protection of the Act." Appleton, 62 F.3d at 801; see SEC v. F.O. Baroff Co., 497 F.2d 280, 284 (2d Cir. 1974) (there must be "indicia of the fiduciary relationship between a broker and his public customer . . . ."); SIPC v. Exec. Sec. Corp., 556 F.2d 98, 99 (2d Cir. 1977) (claimants were mere lenders not SIPA customers where necessary indicia of fiduciary relationship were missing); SEC v. Ambassador Church Fin./Dev. Group, Inc., 679 F.2d 608, 614 (6th Cir. 1982) ("A person who becomes a creditor of a broker in some manner which does not involve securities trading or investment is not covered.  In the case of a loan of securities to a broker there are no indicia of a fiduciary relationship between the lender and the broker.").

27.     Not only did Objectors have a fiduciary relationship with BLMIS by virtue of their having "deposited cash with the debtor" under Section 78lll(2), BLMIS was also an ERISA fiduciary with respect to Objectors.

28.     As described above, Income-Plus held Objectors' ERISA plan assets in trust and was a fiduciary of Objectors.  Those assets were impressed with a trust and subject to ERISA's fiduciary obligations regardless of who held them.  As such, the assets did not lose their status as ERISA plan assets when they were placed in the hands of BLMIS.  Like Income-Plus, BLMIS held Objectors' ERISA plan assets in trust and exercised authority and control over the management and disposition of those assets.  Thus, BLMIS was a fiduciary of Objectors.

10

29. The existence of a fiduciary relationship between Objectors and BLMIS further supports the conclusion that Objectors were "customers" of BLMIS under SIPA.

C. **Account Name and Books and Records Not Dispositive of Customer Status**

30. The Trustee denied Objectors' Claims because "[b]ased on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS." Clark Aff., Ex. B.

31. While some courts have looked to the books and records of the debtor or considered the name on the account, those factors are not dispositive in determining customer status. See In re Stalvey & Assocs., Inc., 750 F.2d 464, 470 (5th Cir. 1985) (reversing bankruptcy court's finding that claimant was "customer" under Section 78lll(2) merely because his name was on the account; stating that the designation of the account constituted "a tenuous ground" for determining customer status); Ambassador Church, 679 F.2d at 614 (dismissing as irrelevant the fact that claimant "did not maintain a customer account in [its] name.").

32. Indeed, courts have held that "[c]ustomer status under SIPA is not dependent upon official documentation in the Debtor's books." In the Matter of Investors Sec. Corp., 8 B.R. 420, 426, 1980 Bankr. LEXIS 4713, at *17 (W.D. Pa. Bankr. 1980).

33. Rather, as discussed above, the critical aspect of the "customer" definition is the fiduciary relationship between the parties and the entrustment of cash or securities to the broker-dealer for the purpose of trading securities.

34. As such, the Trustee improperly denied Objectors' Claims on the sole ground that "[b]ased on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS."

11

**D.    Alternatively, Objectors Are Customers Under Section 78fff-3(a)(5)**

35.    Section 78fff-3(a)(5) if SIPA provides as follows:

no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established to the satisfaction of the trustee, from the books and records of the debtor <u>or from the books and records of a broker or dealer or bank</u>, or otherwise, that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank . . . , in which event <u>each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor</u>.

15 U.S.C. § 78fff-3(a)(5) (emphases added).

36.    While a literal reading of that provision indicates that it applies only to customers who are "a broker or dealer or bank," the Trustee himself has admitted that it applies "where a fiduciary opens an account on a customer's behalf." <u>See</u> Tr.'s Mem. of Law. Supp. Mot. to Affirm SIPC Denials at 15 n. 9 (Dkt. No. 2411).

37.    In this case, J.P. Jeanneret Associates, Inc., investment manager to Income-Plus and a fiduciary and agent of Objectors who held their ERISA plan assets in trust, opened an account with BLMIS for Objectors and deposited Objectors' assets for the purpose of purchasing securities.

38.    As such, the Trustee should have examined the books and records of Income-Plus to determine if Objectors were customers of Income-Plus and, thus, separate customers of BLMIS under Section 78fff-3(a)(5).

39.    In any event, the text of Section 78fff-3(a)(5) clearly supports the fact that customer status does not depend on whether Objectors themselves deposited cash with BLMIS, <u>see</u> <u>In re Old Naples</u>, 223 F.3d at 1302, or whether Objectors are reflected in account name or books and records of the debtor, <u>see</u> <u>In re Stalvey</u>, 750 F.2d at 470; <u>Ambassador Church</u>, 679 F.2d at 614; <u>Investors Sec. Corp.</u>, 8 B.R. at 426.

12

40. For all of the foregoing reasons, the Trustee improperly denied Objectors' Claims.

41. Objectors reserve all rights with respect to their Claims, including the right to amend, revise, or supplement this Objection, and to file a memorandum of law in opposition to any motion by the Trustee to confirm his denial of Objectors' Claims. Any failure to object at this stage on any procedural or substantive ground shall not be deemed a waiver of any such rights.

Dated: May 16, 2011

Respectfully submitted,

BLITMAN & KING LLP

  s/ Jennifer A. Clark
Jennifer A. Clark, Esq.
Bar Roll No. JC5102
Jonathan M. Cerrito, Esq.
Brian J. LaClair, Esq.
*Attorneys for Objectors*
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204-5412
Telephone:    (315) 422-7111
Facsimile:    (315) 471-2623
Email:        jaclark@bklawyers.com
              jmcerrito@bklawyers.com
              bjlaclair@bklawyers.com

BJL\wpfiles\Madoff\SIPC claim\SIPC IP Obj. FINAL