# <u>EXHIBIT D</u>

08-01789-smb    Doc 4068-6    Filed 05/16/11    Entered 05/16/11 15:33:30    Exhibit D
Case 5:09-cv-01280-NAM-DEP    Document 1    Filed 11/16/09    Page 1 of 20
Jeanneret v. Mantello Complaint    Pg 2 of 24

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**J.P. JEANNERET ASSOCIATES, INC.,**

*Plaintiff,*

-*vs*-

**BOB MANTELLO and EARL N. HALL as Trustees of
the BRICKLAYERS AND ALLIED CRAFTSMEN
LOCAL 2 ANNUITY FUND; BOB MANTELLO and
EARL N. HALL as Trustees of the BRICKLAYERS AND
ALLIED CRAFTSMEN LOCAL 2 PENSION FUND;
JAMES C. LOGAN and EUGENE CACCAMISE as
Trustees of the BRICKLAYERS LOCAL 3 ANNUITY
FUND; JAMES C. LOGAN and EUGENE CACCAMISE
as Trustees of the BRICKLAYERS LOCAL 3 PENSION
FUND; SAMUEL CAPITANO and JAMES C. LOGAN as
Trustees of the BUFFALO LABORERS #210 SECURITY
FUND; GABRIEL ROSETTI, JR. and EARL N. HALL as
Trustees of the CENTRAL NEW YORK LABORERS
ANNUITY FUND; GABRIEL ROSETTI, JR. and EARL
N. HALL as Trustees of the CENTRAL NEW YORK
LABORERS PENSION FUND; PATRICK MORIN as
Trustee of the EMPIRE STATE CARPENTERS
ANNUITY FUND; PATRICK MORIN as Trustee of the
EMPIRE STATE CARPENTERS PENSION FUND
(UNY); PATRICK MORIN as Trustee of the EMPIRE
STATE CARPENTERS PENSION FUND (Niagara);
PATRICK MORIN as Trustee of the EMPIRE STATE
CARPENTERS PENSION FUND; PATRICK MORIN as
Trustee of the EMPIRE STATE CARPENTERS
PENSION FUND (SCNYDC); WILLIAM C. BOIRE and
JOSEPH L. REDMAN as Trustees of the
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 1249 PENSION
FUND; ERNEST T. HARTMAN and KIMBERLY A.
BAUTISTA as Trustees of the INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL 139 PENSION FUND; JOHN FRIEDMAN and
KIMBERLY A. BAUTISTA as Trustees of the
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 325 ANNUITY
FUND; JOHN FRIEDMAN and KIMBERLY A.
BAUTISTA as Trustees of the INTERNATIONAL**

**COMPLAINT**

Civil Action No.

5:09-cv-1280
(DNH/DEP)

08-01789-smb   Doc 4068-6   Filed 05/16/11   Entered 05/16/11 15:33:30   Exhibit D
Case 5:09-cv-280-NAM-DEP   Document   Filed 11/16/09   Page 2 of 20
Jeanneret v. Mantello Complaint   Pg 3 of 24

BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL 325 PENSION FUND; ELIZABETH F.
CASSADA and JAMES A. WILLIAMS as Trustees of the
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 910 ANNUITY
FUND; ELIZABETH F. CASSADA and JAMES A.
WILLIAMS as Trustees of the INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL 910 PENSION FUND;
KIMBERLY A. BAUTISTA and MICHAEL TALARSKI
as Trustees of the INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS LOCAL 241 PENSION
FUND; WILLIAM TOWSLEY and CARL HIBBARD,
JR. as Trustees of the INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL 43 PENSION FUND; CARMEN A. SERRETT as
Trustee of the LABORERS LOCAL 103 ANNUITY
FUND; CARMEN A. SERRETT as Trustee of the
LABORERS LOCAL 103 PENSION FUND; JOHN
DONOGHUE and CHRISTOPHER MURNANE as
Trustees of the LABORERS LOCAL 186 PENSION
FUND; EARL R. HALL and PAUL CASTALDO as
Trustees of the LABORERS LOCAL 214 PENSION
FUND; PATRICK J. CARROLL and FREDERICK J.
VOLKOMER as Trustees of the PLUMBERS &
STEAMFITTERS LOCAL 73 ANNUITY FUND;
PATRICK J. CARROLL and FREDERICK J.
VOLKOMER as Trustees of the PLUMBERS &
STEAMFITTERS LOCAL 73 RETIREMENT FUND;
RONALD HANEY and JOSEPH CHIARIZIA, III as
Trustees of the ROOFERS LOCAL 195 ANNUITY
FUND; RONALD HANEY and JOSEPH CHIARIZIA, III
as Trustees of the ROOFERS LOCAL 195 PENSION
FUND; THOMAS R. LOSTRACCO as Trustee of the
SERVICE EMPLOYEES INTERNATIONAL
UNION 1199 UPSTATE PENSION FUND; GEORGE
KENNEDY as Trustee of the SERVICE EMPLOYEES
PENSION PLAN OF UPSTATE NEW YORK; EARL N.
HALL as Trustee of the SYRACUSE BUILDERS
EXCHANGE/CEA PENSION PLAN; RODNEY
MALARCHIK and IRVING WOOD as Trustees of the
UPSTATE NEW YORK BAKERY DRIVERS &
INDUSTRY PENSION FUND; CHRISTOPHER N.
IVERSEN and HELEN WOZNICK as Trustees of the
IVERSEN EMPLOYEES 401(k) PLAN IVERSEN
CONSTRUCTION CORPORATION; and JOSEPH

08-01789-smb    Doc 4068-6    Filed 05/16/11    Entered 05/16/11 15:33:30    Exhibit D
Jeanneret v. Mantello Complaint    Pg 4 of 24
Case 5:09-cv-01406-NAM-DEP Document    Filed 05/16/09    Page 3 of 20

**CHIARIZIA, III, as the Trustee of the JOSALL
SYRACUSE, INC. PROFIT SHARING PLAN,**

> *Defendants.*

---

Plaintiff J.P. Jeanneret Associates, Inc. ("JPJA"), by its attorneys, Hiscock & Barclay, LLP, as and for its Complaint against the above-named Defendants, alleges as follows:

## INTRODUCTION

1.     This action seeks a declaration pursuant to 28 U.S.C. § 2201 approving the method of distribution of the liquidated assets of the Income-Plus Investment Fund ("Income-Plus" or the "Fund"), a tax-exempt "Group Trust" within the meaning of Internal Revenue Ruling 81-100 created on December 15, 1993 for the purpose of pooling investment assets of certain qualified pension plans and entities.

2.     The plaintiff JPJA is the Investment Manager of Income-Plus pursuant to Section 3(38) of the Employee Retirement Income Security Act of 1974, as amended. JPJA has the sole and complete authority to manage the assets of Income-Plus. The Defendants are, by and large, Taft-Hartley pension and benefit plans that invested in Income-Plus.

3.     From its inception in 1993, certain of the assets of Income-Plus had been invested with Bernard L. Madoff Investment Securities ("BLMIS"), which became the focus of worldwide media attention on December 11, 2008 after Bernard L. Madoff informed federal authorities that he had been secretively operating a massive Ponzi scheme that had victimized and defrauded many investors, including Income-Plus. At the time of Madoff's disclosure, approximately 40% of the assets of Income-Plus were invested either directly or indirectly with BLMIS.

08-01789-smp    Doc 4068-6    Filed 05/16/11    Entered 05/16/11 15:33:30    Exhibit D
Case 3:09-cv-01396-RNM   DEF   Document   Filed 05/16/05   Page 4 of 20
Jeanneret v. Mantello Complaint    Pg 5 of 24

4.      In response to the revelations regarding the scope of the BLMIS fraud, JPJA, effective December 31, 2008, wrote down to zero the value of the Income-Plus direct and indirect investments in BLMIS. Since then, JPJA has consistently reported the write-down of the BLMIS investment to zero to all Income-Plus Participating Entities.

5.      The Participating Entities in Income-Plus have, at various times since the disclosure of the BLMIS fraud, submitted redemption requests to JPJA.  In light of the requests, JPJA determined in December 2008 that the various investments in Income-Plus should be liquidated and the assets distributed to its Participating Entities in accordance with their respective interests in Income-Plus.

6.      Consistent with the valuation methodology set forth in the operating documents governing Income-Plus – a methodology followed by JPJA from the inception of the Fund – JPJA is prepared to distribute the Fund's liquidated assets on a pro rata basis commensurate with the Participating Entities' capital accounts.  In valuing those accounts, JPJA has recognized the entire loss associated with BLMIS in December 2008.   JPJA further believes that the methodology required by the operative documents – and followed by JPJA since the inception of the Fund – is in the best interests of Income-Plus and its Participating Entities because it allows for the most expeditious return of capital without the incurrence of significant accounting, legal and administrative expenses.

7.      Notwithstanding the above, JPJA has been informed that there are other potential methodologies available with respect to valuing the Participating Entities' balances post discovery of the BLMIS fraud and that these certain methodologies would result in differences in the valuation of the Participating Entities' final accounts. JPJA has therefore decided, after consultation with independent counsel, to suspend any further distributions pending a final and

binding judicial determination of the appropriate valuation methodology to be used for the distributions.

8.      On September 2, 2009, JPJA notified all of the Income-Plus Participating Entities of its intent to distribute the liquidated assets of Income-Plus on a pro rata basis in accordance with the account balances reported in the account statements provided to Participating Entities since the losses associated with BLMIS were discovered and reported.  In the September 2, 2009 notification, JPJA sought approval of its liquidation and distribution plan.  The majority of the Income-Plus Participating Entities have either failed to respond to JPJA's requests or have objected to JPJA's plan. As a result, JPJA cannot distribute the remaining Income-Plus assets without subjecting JPJA and Income-Plus to potential claims by those Participating Entities that might prefer a different valuation methodology.

9.      As a result of the issues outlined above, an actual and real controversy exists as to the proper valuation methodology to be followed with respect to the liquidation of Income-Plus.

### PARTIES

10.     Plaintiff JPJA is a corporation organized and existing under the laws of the State of New York, and maintains its principal place of business at 100 East Washington Street, Syracuse, NY 13202.

11.     Upon information and belief, defendants Bob Mantello and Earl N. Hall are Trustees of the Bricklayers and Allied Craftsmen Local 2 Annuity Fund.  The office address for the Bricklayers and Allied Craftsmen Local 2 Annuity Fund is 300 Centre Drive, Albany, NY 12203.

12.     Upon information and belief, defendants Bob Mantello and Earl N. Hall are Trustees of the Bricklayers and Allied Craftsmen Local 2 Pension Fund.  The office address for

Case 5:09-cv-0280-NAM-DEP    Document    Filed 5/16/09    Page 6 of 20

the Bricklayers and Allied Craftsmen Local 2 Pension Fund is 300 Centre Drive, Albany, NY 12203.

13.    Upon information and belief, defendants James C. Logan and Eugene Caccamise are Trustees of the Bricklayers Local 3 Annuity Fund.  The office address for the Bricklayers Local 3 Annuity Fund is 1175 William Street, Buffalo, NY 14206.

14.    Upon information and belief, defendants James C. Logan and Eugene Caccamise are Trustees of the Bricklayers Local 3 Pension Fund.  The office address for the Bricklayers Local 3 Pension Fund is 1175 William Street, Buffalo, NY 14206.

15.    Upon information and belief, defendants Samuel Capitano and James C. Logan are Trustees of the Buffalo Laborers #210 Security Fund.  The office address for the Buffalo Laborers #210 Security Fund is 2750 Harlem Road, Suite 200, Cheektowaga, NY 14225.

16.    Upon information and belief, defendants Gabriel Rosetti, Jr. and Earl N. Hall are Trustees of the Central New York Laborers Annuity Fund.  The office address for the Central New York Laborers Annuity Fund is 7051 Fly Road, Syracuse, NY 13057.

17.    Upon information and belief, defendants Gabriel Rosetti, Jr. and Earl N. Hall are Trustees of the Central New York Laborers Pension Fund.  The office address for the Central New York Laborers Pension Fund is 7051 Fly Road, Syracuse, NY 13057.

18.    Upon information and belief, defendant Patrick Morin is a Trustee of the Empire State Carpenters Annuity Fund.  The office address for the Empire State Carpenters Annuity Fund is 270 Motor Parkway, Dept. A, Hauppauge, NY 11788.

19.    Upon information and belief, defendant Patrick Morin is a Trustee of the Empire State Carpenters Pension Fund (UNY).  The office address for the Empire State Carpenters Pension Fund (UNY) is 270 Motor Parkway, Dept. A, Hauppauge, NY 11788.

08-01789-smb   Doc 4068-6   Filed 05/16/11   Entered 05/16/11 15:33:30   Exhibit D
Jeanneret v. Mantello Complaint   Pg 8 of 24
Case 5:09-cv-0280-NAM-DEP   Document   Filed 11/16/09   Page 7 of 20

20.     Upon information and belief, defendant Patrick Morin is a Trustee of the Empire State Carpenters Pension Fund (Niagara).  The office address of the Empire State Carpenters Pension Fund (Niagara) is 270 Motor Parkway, Dept. A, Hauppauge, NY 11788.

21.     Upon information and belief, defendant Patrick Morin is a Trustee of the Empire State Carpenters Pension Fund.  The office address of the Empire State Carpenters Pension Fund is 270 Motor Parkway, Dept. A, Hauppauge, NY 11788.

22.     Upon information and belief, defendant Patrick Morin is a Trustee of the Empire State Carpenters Pension Fund (SCNYDC).  The office address of the Empire State Carpenters Pension Fund (SCNYDC) is 270 Motor Parkway, Dept. A, Hauppauge, NY 11788.

23.     Upon information and belief, defendants William C. Boire and Joseph L. Redman are Trustees of the International Brotherhood of Electrical Workers Local 1249 Pension Fund. The office address of the International Brotherhood of Electrical Workers Local 1249 Pension Fund is 6518 Fremont Road, P.O. Box 301, East Syracuse, NY 13057.

24.     Upon information and belief, defendants Ernest T. Hartman and Kimberly A. Bautista are Trustees of the International Brotherhood of Electrical Workers Local 139 Pension Fund.  The office address for the International Brotherhood of Electrical Workers Local 139 Pension Fund is 508 College Road, Elmira, NY 14901.

25.     Upon information and belief, defendants John Friedman and Kimberly A. Bautista are Trustees of the International Brotherhood of Electrical Workers Local 325 Annuity Fund. The office address of the International Brotherhood of Electrical Workers Local 325 Annuity Fund is 24 Emma Street, Binghamton, NY 13905.

26.     Upon information and belief, defendants John Friedman and Kimberly A. Bautista are Trustees of the International Brotherhood of Electrical Workers Local 325 Pension Fund.

The office address of the International Brotherhood of Electrical Workers Local 325 Pension Fund is 24 Emma Street, Binghamton, NY 13905.

27.    Upon information and belief, defendants Elizabeth F. Cassada and James A. Williams are Trustees of the International Brotherhood of Electrical Workers Local 910 Annuity Fund. The office address for the International Brotherhood of Electrical Workers Local 910 Annuity Fund is 25001 Water Street, Watertown, NY 13601.

28.    Upon information and belief, defendants Elizabeth F. Cassada and James A. Williams are Trustees of the International Brotherhood of Electrical Workers Local 910 Pension Fund. The office address of the International Brotherhood of Electrical Workers Local 910 Pension Fund is 25001 Water Street, Watertown, NY 13601.

29.    Upon information and belief, defendants Kimberly A. Bautista and Michael Talarski are Trustees of the International Brotherhood of Electrical Workers Local 241 Pension Fund. The office address for the International Brotherhood of Electrical Workers Local 241 Pension Fund is 701 West State Street, Ithaca, NY 14850.

30.    Upon information and belief, defendants William Towsley and Carl Hibbard, Jr. are Trustees of the International Brotherhood of Electrical Workers Local 43 Pension Fund. The office address for the International Brotherhood of Electrical Workers Local 43 Pension Fund is P.O. Box 2218, Syracuse, NY 13220.

31.    Upon information and belief, defendant Carmen A. Serrett is a Trustee of the Laborers Local 103 Annuity Fund. The office address of the Laborers Local 103 Annuity Fund is P.O. Box 571, Geneva, NY 14456.

08-01789-smb   Doc 4068-6   Filed 05/16/11   Entered 05/16/11 15:33:30   Exhibit D
Jeanneret v. Mantello Complaint   Pg 10 of 24
Case 5:09-cv-00280-NAM-DEP   Document   Filed 04/16/09   Page 9 of 20

32.     Upon information and belief, defendant Carmen A. Serrett is a Trustee of the Laborers Local 103 Pension Fund.  The office address of the Laborers Local 103 Pension Fund is P.O. Box 571, Geneva, NY 14456.

33.     Upon information and belief, defendants John Donoghue and Christopher Murnane are Trustees of the Laborers Local 186 Pension Fund.  The office address of the Laborers International Union of North America Local 186 Pension Fund is 23 Elm Street, Plattsburgh, NY 12901.

34.     Upon information and belief, defendants Earl R. Hall and Paul Castaldo are Trustees of the Laborers Local 214 Pension Fund.  The office address of the Laborers Local 214 Pension Fund is 23 Mitchell Street, Oswego, NY 13126.

35.     Upon information and belief, defendants Patrick J. Carroll and Frederick J. Volkomer are Trustees of the Plumbers and Steamfitters Local 73 Annuity Fund.  The office address of the Plumbers and Steamfitters Local 73 Annuity Fund is 705 East Seneca Street, Oswego, NY 13126.

36.     Upon information and belief, defendants Patrick J. Carroll and Frederick J. Volkomer are Trustees of the Plumbers and Steamfitters Local 73 Retirement Fund.  The office address of the Plumbers and Steamfitters Local 73 Retirement Fund is 705 East Seneca Street, Oswego, NY 13126.

37.     Upon information and belief, defendants Ronald Haney and Joseph Chiarizia, III are Trustees of the Roofers Local 195 Annuity Fund.  The office address of the Roofers Local 195 Annuity Fund is 6200 State Route 31, Cicero, NY 13039.

08-01789-cjm Doc 4068-6 Filed 05/16/11 Entered 05/16/11 15:33:30 Exhibit D
Case 5:09-cv-00280-NAM -DEP Document 1 Filed 05/16/09 Page 10 of 20
Jeanneret v. Mantello Complaint    Pg 11 of 24

38.    Upon information and belief, defendants Ronald Haney and Joseph Chiarizia, III are Trustees of the Roofers Local 195 Pension Fund.   The office address of the Roofers Local 195 Pension Fund is 6200 State Route 31, Cicero, NY 13039.

39.    Upon information and belief, defendant Thomas R. LoStracco is a Trustee of the Service Employees International Union 1199 Upstate Pension Fund.  The office address of the Service Employees International Union 1199 Upstate Pension Fund is 4242 Ridge Lea Road, Suite 30, Amherst, NY 14226.

40.    Upon information and belief, defendant George Kennedy is a Trustee of the Service Employees Pension Plan of Upstate New York.   The office address of the Service Employees Pension Plan of Upstate New York is 1153 West Fayette Street, Syracuse, NY 13201.

41.    Upon information and belief, defendant Earl N. Hall is a Trustee of the Syracuse Builders Exchange/CEA Pension Plan.    The office address of the Syracuse Builders Exchange/CEA Pension Plan is 6563 Ridings Road, Syracuse, NY 13206.

42.    Upon information and belief, defendants Rodney Malarchik and Irving Wood are Trustees of the Upstate New York Bakery Drivers and Industry Pension Fund.   The office address of the Upstate New York Bakery Drivers and Industry Pension Fund is State Tower Building, Suite 1103, Syracuse, NY 13202.

43.    Upon information and belief, defendants Christopher N. Iversen and Helen Woznick are Trustees of the Iversen Employees 401(k) Plan Iversen Construction Corporation. The office address of the Iversen Employees 401(k) Plan Iversen Construction Corporation is 10 Dewey Avenue, Gorham, NY 14461.

08-01789-cm Doc 4068-6 Filed 05/16/11 Entered 05/16/11 15:33:30 Exhibit D
Case 5:09-cv-09280-NAM -DEP Document 1 Filed 05/16/09 Page 11 of 20
Jeanneret v. Mantello Complaint    Pg 12 of 24

44.    Upon information and belief, defendant Joseph Chiarizia, III, is the Trustee of the
Josall Syracuse, Inc. Profit Sharing Plan.  The office address of the Josall Syracuse, Inc. Profit
Sharing Plan is 6432 Baird Avenue, Syracuse, NY 13206.

45.    The various Participating Entities in Income-Plus identified in 11 to 44 of this
complaint will be referred to collectively hereafter as the "Participating Entities," "Defendants"
or the "Investors."

## JURISDICTION AND VENUE

46.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§ 1331 and 29 U.S.C. § 1132(a)(3), insofar as this action arises under the Employee Retirement
Income Security Act of 1974, as amended, 29 U.S.C. §§ 1101, *et seq.* (hereafter "ERISA").

47.    The Court has personal jurisdiction over all Defendants in that they reside within
the State of New York.

48.    Venue is proper in the United States District Court for the Northern District of
New York under 28 U.S.C. § 1391(a) because certain of the Defendants maintain their principal
executive offices within the Northern District of New York and/or because a substantial number
of the events giving rise to this action occurred within this District.

49.    There is an actual controversy between the parties existing within the jurisdiction
of this Court and this Court is therefore authorized to grant JPJA the declaratory judgment it
seeks pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, as implemented
through Rule 57 of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

50.    Defendants invested in Income-Plus pursuant to the terms of Private Offering and
Placement Memoranda dated December 15, 1993 and/or November 1, 2003 (collectively the
"Offering Memoranda").  The Offering Memoranda contained, among other things, an Adoption

08-01789-smb Doc 4068-6 Filed 05/16/11 Entered 05/16/11 15:33:30 Exhibit D
Case 5:09-cv-09280-NAM-DEP Document 1 Filed 07/16/09 Page 12 of 20
Jeanneret v. Mantello Complaint    Pg 13 of 24

Agreement pursuant to which the Defendants agreed to invest in Income-Plus as "Participating Entities."

51.    Pursuant to Section 5.01 of the 2003 Adoption Agreement, and similar provisions of the 1993 Adoption Agreement, the Defendants agreed that Income-Plus would be administered by JPJA in accordance with the provisions of the Group Trust Agreement (the "Trust Agreement"), the Adoption Agreement and the applicable Offering Memorandum. The Adoption Agreement further provided that, by executing the Adoption Agreement, each Investor appointed JPJA as the "Investment Manager" as that term is defined under ERISA of those assets of the Defendant invested in Income-Plus. JPJA acknowledged that, as investment manager, it would serve as a "fiduciary" as that term is defined under ERISA.

52.    Custodial Trust Company ("CTC") served as the trustee under the Trust Agreement from the inception of Income-Plus until June 15, 2009, when JP Morgan Chase & Co. ("JP Morgan") assumed those duties as a result of the acquisition by JP Morgan of Bear Stearns Companies, Inc., the parent of CTC. Section 3.03 of the Trust Agreement provides that the Trustee serves as a "nondiscretionary directed trustee, subject to the proper directions of" JPJA as Investment Manager.

53.    The investment management of Income-Plus is, in turn, governed by Section 3.07 of the Trust Agreement, which provides, in relevant part, as follows:

> Section 3.07 Investment Management. The Investment Manager undertakes and agrees to act as an investment manager, as defined by Section 3(38) of the Act, with respect to the assets held by Designated Managers and the Trustee pursuant to this Agreement and, without limitation, to exercise the powers and authorities and to perform the duties specified for it in this Agreement. Except as otherwise explicitly provided herein, the Investment Manager shall be solely and exclusively responsible for and shall have exclusive authority and discretion for the investment and control of all cash, securities, and other assets comprising the Group Trust Fund.

08-01789-smb    Doc 4068-6    Filed 05/16/11    Entered 05/16/11 15:33:30    Exhibit D
Case 5:09-cv-09280-NAM -DEP    Document 1    Filed 05/16/09    Page 13 of 20
Jeanneret v. Mantello Complaint    Pg 14 of 24

54.    The accounts of the Income-Plus Participating Entities are valued pursuant to the terms of Article V of the Trust Agreement.  Section 5.01 of the Trust Agreement provides as follows with respect to each Investor's units of participation:

> Section 5.01  Units of Participation.  Subject to the provisions of Article VI, for the purpose of maintaining the beneficial interests of the Participating Entities in the Group Trust Fund, each Investment Fund of the Group Trust Fund shall be divided into units of participation ("Units"), and the beneficial interest of each Participating Entity in each Investment Fund shall be expressed by the number of Units and fraction of a Unit allocated to it as hereinafter set forth.  The Trustee shall maintain a register to which shall be credited the number of Units allocated to each Participating Entity.  Each unit in a particular Investment Fund shall have a proportionate interest in such Investment Fund and none shall have priority or preference over any other.

Section 1.01(h) of the Trust Agreement defines an Investment Fund as "one of the separate funds established pursuant to Article IV of this Agreement."  Section 4.01, in turn, provides that "[t]he Group Trust Fund shall consist of *one* or more separate Investment Funds as the Investment Manager may establish from time to time." (Emphasis added.)  JPJA established a single Investment Fund for Income-Plus which invested with several independent investment managers, including BLMIS.

55.    Sections 5.02 and 5.03 of the Trust Agreement provide, in pertinent part, as follows with respect to the valuation of the underlying investments in Income-Plus:

> Section 5.02  Valuation of Investment Funds.  The Investment Manager shall determine the value of each Investment Fund and the Units thereof in United States Dollars as of the close of business of (i) the last business day of each calendar quarter, and (ii) each other business day as determined by the Investment Manager in its sole discretion.  A business day shall mean any day on which securities are traded on the New York Stock Exchange. Each day as of which such value is determined is referred to herein as a "Valuation Date".  As of each Valuation Date the Investment Manager shall determine the total value of the assets of each Investment Fund based on the aggregate of the (a) written valuation prepared by each Designated Manager as to the value of the investment of Group Trust Funds; (b) written account statements prepared by each Designated Manager as to the value of Group Trust Funds in managed accounts; and (c) the

- 13 -

08-01789-smb Doc 4068-6 Filed 05/16/11 Entered 05/16/11 23:30 Exhibit D
Case 5:09-cv-00289-NAM -DEP Document 1 Filed 05/16/09 Page 14 of 23
Jeanneret v. Mantello Complaint Pg 15 of 24

value of Group Trust Funds in the possession of the Trustee. All valuation shall be done in compliance with the Valuation Rules set forth in Section 5.04…

Section 5.03 <u>Valuation of Units</u>. The initial value of each Unit of an Investment Fund shall be established by the Investment Manager in the Declaration establishing such Investment Fund pursuant to Section 4.01 of this Agreement. Thereafter the value of each Unit of each Investment Fund shall be determined by dividing the net asset value of the Investment Fund, as established as of a Valuation Date under Section 5.02, by the number of Units outstanding on such Valuation Date. The Investment Manager shall determine the net asset value of each Investment Fund which shall equal the aggregate value of the assets of the Investment Fund (as determined by the Investment Manager pursuant to section 5.02 above) less the value of the accrued liabilities incurred by the Investment Fund as determined by the Investment Manager. The unit value shall be determined as of each Valuation Date before taking into account additions to and withdrawals from the Investment Fund occurring as of such Valuation Date.

\* \* \*

56. The valuation rules referenced in Section 5.02 quoted above included the following rules with respect to investments managed by the individual managers utilized by Income-Plus, including BLMIS:

Section 5.04 <u>Valuation Rules</u>. The net asset value of each Investment Fund (and of any suspense or liquidating account established pursuant to Section 4.04) shall be determined, and securities shall be valued, by the Investment Manager as of each Valuation Date on the basis of the following valuation rules ("Valuation Rules") and such determination of values shall be communicated in writing to the Trustee as promptly as possible after each Valuation Date:

(a)     Investments in partnerships or other pooled investment vehicles managed by Designated Managers shall be valued as of the Valuation Date, or if such valuation is not available, at their last reported value, updated by an interim valuation, if any, provided by such Designated Managers of partnerships or other pooled investment vehicles.

(b)     Investments in accounts managed by Designated Managers shall be valued as of the Valuation Date, or if such valuation is not available, at their last reported value, updated by an interim valuation, if any, provided by such Designated Manager.

(c)     Marketable United States Government obligations (including guaranteed obligations) shall be valued at the

08-01789-cpm  Doc 4068-6  Filed 05/16/11  Entered 05/16/11 13:30 Exhibit D
Case 5:09-cv-09280-NAM -DEP  Document 1  Filed 07/16/09  Page 15 of 20
Jeanneret v. Mantello Complaint    Pg 16 of 24

dealer bid prices appearing on the Valuation Date. Such prices will be taken from Federal Reserve publications or recognized pricing services.

(d)   Securities listed on a securities exchange for which market quotations are available will be valued at the last quoted sale price on the applicable Valuation Date or, if there has been no such reported sale, and there has been a reported bid price on such Valuation Date, the last reported bid price on such Valuation Date shall be used. Price information on listed securities will generally be taken from a composite trading tape offered by one of the pricing services. Unlisted securities for which market quotations are readily available will be valued at the most recent quoted bid prices.

\* \* \*

57.   Since the inception of Income-Plus, JPJA has prepared and delivered quarterly and annual statements to its Participating Entities consistent with the valuation rules set forth above.

58.   BLMIS was, from the inception of Income-Plus in 1993, one of the Designated Managers utilized by Income-Plus, pursuant to Section 3.07 of the Trust Agreement, to manage certain assets of Income-Plus. In addition, beginning in or around January 2000, Income-Plus invested in Beacon Associates LLC I ("Beacon"), an investment fund that had approximately 70% of its assets invested with BLMIS.

59.   Income-Plus received monthly statements from BLMIS and Beacon and used those statements – as well as the statements from other Designated Managers – to calculate the values of each Income-Plus Participating Entity's account pursuant to the provisions of Article V of the Trust Agreement. In general, the Participating Entities' capital accounts have at all times been determined, pursuant to the Trust Agreement, by totaling the valuations received from the Designated Managers and the value of assets held by the Trustee, subtracting accrued liabilities, and then dividing the resulting net asset value by the number of outstanding Units held by the

Participating Entities.   The valuations were prepared by Ivy Asset Management Corp. ("Ivy"), a wholly-owned subsidiary of the Bank of New York Company, Inc.  Ivy served as the investment adviser to Income-Plus and provided the valuations to JPJA, which in turn reviewed the valuations and prepared relevant reports for the Participating Entities.  Ivy is no longer providing such services and, effective July 1, 2009, Income-Plus retained SS&C Technologies, Inc. to provide such services.

60.    As of December 11, 2008, each Income-Plus Participating Entity had a positive account balance calculated pursuant to the provisions of Article V of the Trust Agreement.

61.    On December 11, 2008, media reports revealed that Bernard L. Madoff had been arrested and that he had acknowledged to federal authorities that he had been secretly operating a massive Ponzi scheme.  A court-appointed trustee in a bankruptcy proceeding captioned *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, No. 1:08-AP-01789(BRL) has since reported that he does not believe BLMIS purchased any securities for investors after 1996 and that funds invested with BLMIS were used to further BLMIS's fraudulent activities.

62.    Since December 11, 2008, JPJA has received requests for redemption from nearly all of Income-Plus' Participating Entities.  In April 2009, in light of the redemption requests, JPJA went forward with an initial, partial redemption of approximately 40% of the Income-Plus Participating Entities' accounts.  Those redemptions were based on the methodology JPJA has proposed for the final distributions to Participating Entities and which JPJA has determined to be the appropriate methodology under the terms of the relevant agreements and the circumstances presented by the unique nature of the BLMIS fraud.

08-01789-cjm    Doc 4068-6    Filed 05/16/11    Entered 05/16/11 15:33:30    Exhibit D
Case 5:09-cv-09280-NAM -DEP    Document 1    Filed 01/06/09    Page 17 of 20
Jeanneret v. Mantello Complaint    Pg 18 of 24

63.     Article VI of the Trust Agreement governs additions and withdrawals to Income-Plus.  Section 6.01 provides, in relevant part, as follows:

> Section 6.01  Additions and Withdrawals.  No addition to or withdrawal from any Investment Fund by a Participating Entity shall be permitted except on the basis of the unit value determined as prescribed in Section 5.03 hereof.
>
> * * *
>
> Withdrawals from an Investment Fund shall be made in cash, except to the extent that the Investment Manager determines that particular withdrawals are to be made in kind (in whole or in part).  The cash to be paid or securities to be transferred to a Participating Entity with respect to a withdrawal made as of a Semi-Annual Valuation Date from an Investment Fund shall have an aggregate value, determined as of the close of business on such Semi-Annual Valuation Date, equal to the Unit value multiplied by the number of units redeemed.

64.     By letter dated July 22, 2009, after consultation with independent counsel, JPJA informed all Income-Plus Participating Entities that JPJA would withhold further distributions pending resolution of any issues raised regarding the account valuation methodology to be followed in the context of the final redemptions of Participating Entities' accounts.

65.     By letter to the Income-Plus Participating Entities dated September 2, 2009, JPJA reiterated its intention to liquidate Income-Plus and to distribute all remaining assets to its Participating Entities according to the methodology set forth in the relevant documents.  In light of the potential that certain Participating Entities would take the position that a methodology other than that advanced by JPJA should be used to make any further distributions, JPJA recommended that Defendants consult counsel and informed Defendants that JPJA would require a limited release of claims solely with respect to the valuation and final distributions.

66.     In response to JPJA's September 2, 2009 letter, many Income-Plus Participating Entities sent letters to JPJA indicating that they would not be willing to agree to the proposed valuation methodology and demanding the return of the principal invested in Income-Plus with

08-01789-cmm  Doc 4068-6  Filed 05/16/11  Entered 05/16/11 15:33:30  Exhibit D
Case 5:09-cv-01280-NAM -DEP  Document 1  Filed 11/16/09  Page 18 of 20
Jeanneret v. Mantello Complaint    Pg 19 of 24

an undefined rate of return.  While the letters indicated the Participating Entities did not agree that JPJA's historical valuations of Income-Plus were appropriate, the Participating Entities' letters did not take a position as to what methodology should be used for the final distributions.

67.    Absent a unanimous agreement by and among the Income-Plus Participating Entities, JPJA is concerned that further distributions of Income-Plus assets would expose JPJA and Income-Plus to potential claims with respect to the valuation methodology it has determined to be appropriate. In particular, Participating Entities that might benefit from a different valuation methodology could assert claims against JPJA and Income-Plus for the difference between what the Participating Entity receives under the methodology proposed by JPJA based on operative documents, as opposed to what the Participating Entity could receive in the event of a re-calculation of past and current capital account balances utilizing a different methodology. As such, JPJA seeks a declaratory judgment as set forth herein.  In addition, distribution without court approval could also expose the various Income-Plus Participating Entities to future claims and litigation amongst themselves to the extent some Participating Entities believe final distributions made to other Participating Entities were made based upon an incorrect valuation methodology.

68.    JPJA seeks judicial intervention and a declaratory judgment because a Court-ordered application of a particular distribution methodology would allow Income-Plus to be liquidated in an orderly manner and would resolve any potential claims among the Participating Entities as to the liquidation and past withdrawals. In addition, the Court's approval of JPJA's valuation methodology would free JPJA from the threat of future litigation based on the valuation methodology JPJA is eventually able to employ with respect to the redemptions of the Participating Entities' accounts.

08-01789-smb    Doc 4068-6    Filed 05/16/11    Entered 05/16/11 15:33:30    Exhibit D
Case 5:09-cv-09266-NAM -DEP    Document 1    Filed 05/16/09    Page 19 of 20
Jeanneret v. Mantello Complaint    Pg 20 of 24

69.     Declaratory relief is also appropriate under the terms of the Trust Agreement, which provides for the judicial settlement of accounts that have been provided to Participating Entities.  In particular, Section 8.03 provides as follows:

> Section 8.03   <u>Judicial Accountings</u>.  The Trustee, the Investment Manager, any Participating Entity, and any Participating Entity Signatory shall have the right to apply at any time to a court of competent jurisdiction within the State of New York for the judicial settlement of the accounts of the Investment Manager and/or Trustee provided that, except to the extent otherwise provided under the Act or other applicable law, no person shall have the right to apply for a settlement of the accounts of the Investment Manager and/or Trustee for any period with respect to which the Investment Manager and/or Trustee has been discharged as to such person under section 8.02 hereof.  In any such action or proceeding, it shall be necessary to join as parties only the persons to whom the Trustee or the Investment Manager must submit an account pursuant to section 8.01.  Any judgment or decree which may be entered therein shall be conclusive on all persons then or thereafter interested in the Group Trust Fund.

70.     With respect to the settlement of accounts, paragraphs four, five and six of Section 8.01 of the Trust Agreement provide as follows:

> The Trustee shall prepare and deliver to the Investment Manager and to each interested Participating Entity an account as promptly as possible after each Valuation Date, but in no event more than forty-five (45) days thereafter showing, as of such Valuation Date, the net asset value of the Investment Fund (as determined by the Investment Manager pursuant to Article V, and so reported), the number of units then held by the Participating Entities in such Investment Fund and the then value of each Unit (as determined by the Investment Manager pursuant to Article V, and so reported). The account delivered by the Trustee to the Investment Manager shall also include the number of Units then purchased or redeemed by the Participating Entities with regard to each Investment Fund, the then value of all Qualified Short-Term Investments, the value of all repurchase agreements under the Master Repurchase Agreement, and the then value of any suspense and liquidating accounts established pursuant to section 4.04.

> * * *

> The Trustee shall also prepare and deliver to the Investment Manager an annual account as promptly as possible after December 31st of each fiscal year, but in no event later than forty-five (45) days thereafter. Such annual account shall detail the following information as of the fiscal year just ended; (i) the names of all Participating Entities as of the end of such fiscal year together with the number of Units owned by each; (ii) the names of all Participating Entities that withdraw

08-01789-cjmp Doc 4068-6 Filed 05/16/11 Entered 05/16/11 15:33:30 Exhibit D
Case 5:09-cv-09280-NAM-DEP Document 1 Filed 11/16/09 Page 20 of 20
Jeanneret v. Mantello Complaint    Pg 21 of 24

[*sic*] all or part of their investment from the Group Trust together with the date or dates of such withdrawals and the number of units withdrawn; (iii) the names, dates and number of Units purchased by new and existing Participating Entities during such fiscal year; (iv) the dates and amounts of funds delivered to or received from each Designated Manager during such fiscal year; and (v) reports summarizing income from Qualified Short-Term Investments and repurchase agreements under the Master Repurchase Agreement and suspense and liquidating accounts. The Trustee shall prepare a similar account within a reasonable time following termination of the Group Trust Fund or any Investment Fund.

The Investment Manager shall also prepare and deliver to each interested Participating Entity and the Trustee an annual account as promptly as possible after December 31 of each fiscal year, but in no event later than March 31 of the following year. Such annual account shall consist of a statement of the investments held in each Investment Fund (and each suspense and liquidating account) of the Group Trust Fund and the value of each such investment as of the close of the fiscal year as determined pursuant to Article V, and a summary of the transactions of each Investment Fund (and suspense and liquidating account) of the Group Trust Fund since the Investment Manager's last annual account. The Investment Manager shall prepare a similar account within a reasonable time following termination of the Group Trust Fund or any Investment Fund.

71.     Section 8.02 of the Trust Agreement provides that an account submitted by the

Investment Manager is deemed approved if the Participating Entity does not object within 120

days after mailing. In particular, Section 8.02 provides as follows:

Section 8.02  <u>Approval of Accounts</u>.  A Participating Entity Signatory to whom an account is submitted by the Trustee or the Investment Manager pursuant to section 8.01 hereof may approve such account by an instrument in writing delivered to the Investment Manager. If such person does not file exceptions or objections to such account with the Investment Manager within one-hundred and twenty (120) days after the mailing to said person of such account by the Trustee or the Investment Manager, such person shall be deemed to have approved such account. Upon the approval of a statement of account rendered in good faith, where such approval is either in writing or by failure to file timely exceptions or objections by any person to whom an account is submitted pursuant to Section 8.01 hereof, the Investment Manager and the Trustee shall, to the extent permitted by applicable law, be released, relieved and discharged of and from all liability to anyone with respect to their acts or failures to act described by such account during the period covered thereby. The Investment Manager shall promptly deliver to the Trustee copies of all approvals, exceptions and objections it receives from participating Entities.

08-01789-cgm   Doc 4068-6   Filed 05/16/11   Entered 05/16/11 15:33:30   Exhibit D
Case 5:09-cv-01280-NAM-DEP   Document 1   Filed 11/16/09   Page 21 of 20
Jeanneret v. Mantello Complaint   Pg 22 of 24

72.     In this action, JPJA seeks a judicial settlement of the accounts it has reported to
the Income-Plus Participating Entities in its capacity as the Investment Manager of Income-Plus.

## COUNT I
### (Declaratory Relief)

73.     JPJA restates and re-alleges the allegations contained in Paragraphs 1 through 72
set forth above as if fully set forth herein.

74.     There exists an actual controversy between JPJA and Defendants with respect to
the proper method by which to liquidate Income-Plus and pay over the remaining assets to the
Income-Plus Participating Entities.

75.     Absent a declaration from this Court as to the proper methodology, additional
litigation is likely to ensue, which needlessly will consume resources of the parties and of the
courts, and further will obstruct the peaceful and speedy liquidation of Income-Plus.

76.     Based on the foregoing, JPJA is entitled to a declaration that the liquidation
methodology it has identified to Participating Entities is the proper method by which to liquidate
Income-Plus, and that Income-Plus' remaining assets shall be distributed according to that
methodology.

## COUNT II
### (Judicial Settlement of Accounts pursuant to the Trust Agreement)

77.     JPJA restates and re-alleges the allegations contained in Paragraphs 1 through 76
set forth above as if fully set forth herein.

78.     Pursuant to Section 8.03 of the Trust Agreement, JPJA, as Investment Manager of
Income-Plus, is entitled to apply for a judicial settlement of the accounts of Income-Plus.

79.     Since the discovery of the BLMIS fraud, JPJA has consistently reported, in
account statements to Income-Plus Participating Entities, the value of the BLMIS investments in

08-01789-smb Doc 4068-6 Filed 05/16/11 Entered 05/16/11 15:33:30 Exhibit D
Case 5:09-cv-01290-NAM -DEP Document 1 Filed 05/16/09 Page 22 of 23
Jeanneret v. Mantello Complaint Pg 23 of 24

Income-Plus as zero and has not made any revaluations of historical account statements which would have the effect of adjusting the current account balances for Income-Plus Participating Entities.

80. None of the Income-Plus Participating Entities have notified JPJA in writing of any exceptions or objections to the accounts provided since the discovery of the BLMIS fraud.

81. JPJA is therefore entitled to the judicial approval and settlement of the accounts provided to the Income-Plus Participating Entities.

WHEREFORE, it is respectfully requested that this Court grant Plaintiff J.P. Jeanneret Associates, Inc. a judgment in its favor declaring that: (a) the account statements sent to Income-Plus Participating Entities after the discovery of the BLMIS fraud are deemed approved; and (b) JPJA is permitted to make distributions of all remaining assets of Income-Plus Investment Fund to the Income-Plus Participating Entities pursuant to a valuation methodology based on: (i) the recognition in December 2008 of the entire loss associated with BLMIS; and (ii) the valuation of the Income-Plus Participating Entities' account balances pursuant to the terms of Article V of the Trust Agreement; and (c) awarding such other and further relief as this Court deems just and proper.

**DATED:** November 16, 2009      **HISCOCK & BARCLAY, LLP**

By: _____ s/ John D. Cook _____
         Gabriel M. Nugent (513947)
         John D. Cook (511491)

*Attorneys for Plaintiff*
J.P. Jeanneret Associates, Inc.
Office and Post Office Address
One Park Place
300 State Street
Syracuse, New York 13202-2078
Telephone: (315) 425-2836

Facsimile: (315) 703-7361
E-Mail:     gnugent@hblaw.com
E-Mail:     jcook@hblaw.com