**EXHIBIT F**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
IN RE: BEACON ASSOCIATES LITIGATION : Master File No.:
: 09 Civ. 0777 (LBS)
:
This Document Relates To: :
ALL ACTIONS :
:
------------------------------------------------------------X

# DECLARATION OF TAB K. ROSENFELD IN SUPPORT OF THE MOTION OF BEACON ASSOCIATES MANAGEMENT CORP., JOEL DANZIGER AND HARRIS MARKHOFF TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION AND DERIVATIVE COMPLAINT

Tab K. Rosenfeld, hereby declare as follows:

1. I am admitted to practice before this Court and I am a member of the law firm of Rosenfeld & Kaplan, LLP., attorneys for defendants Beacon Associates Management Corp., Joel Danziger and Harris Markhoff (the "Beacon Defendants") in this action. I respectfully submit this Declaration in support of the Beacon Defendants' motion to dismiss the Consolidated Amended Class Action and Derivative Complaint (the "Complaint") as against them, and to supply this Court with certain records relevant to its determination of that motion.

2. Annexed as Exhibit A is a true and correct copy of the Consolidated Amended Class Action and Derivative Complaint.

3. Annexed as Exhibit B is a true and correct copy of the Decision and Order in Baker v. Andover Associates Management Corp., Index No. 6179/09 (Sup. Ct. Westchester Cty, November 30, 2009).

4. Annexed as Exhibit C is a true and correct copy of the Confidential Offering Memorandum of Beacon I dated August 9, 2004 which includes a Supplement dated August 15, 2006 and Beacon I's Amended and Restated Operating Agreement dated April 1, 2004.

5. Annexed as Exhibit D is the Confidential Offering Memorandum of Beacon II dated August 9, 2004, which includes Beacon II's Second Amended and Restated Operating Agreement dated April 1, 2004.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
December 11, 2009

Tab K. Rosenfeld

# BEACON ASSOCIATES LLC I

## Confidential Offering Memorandum

Beacon Associates Management Corp.
123 Main Street
Suite 900
White Plains, New York 10601
Tel: (914) 948-1556
Fax: (914) 948-0051

# BEACON ASSOCIATES LLC I

## CONFIDENTIAL OFFERING MEMORANDUM

| | |
|---|---|
| **Company:** | Beacon Associates LLC I |
| **Securities Offered:** | Limited Liability Company Interests |
| **Minimum Initial Purchase:** | $500,000 |
| **Investment Objective:** | To provide above average rates of return while attempting to minimize risk by utilizing trading and investment strategies, both directly and indirectly, including through other investment pools. |

\* \* \*

THIS OFFERING IS NOT A PUBLIC OFFERING. THESE SECURITIES HAVE NOT BEEN REGISTERED OR QUALIFIED WITH, NOR APPROVED OR DISAPPROVED BY, THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE COMMODITY FUTURES TRADING COMMISSION ("CFTC") OR ANY STATE REGULATORY AUTHORITY, NOR HAS THE SEC, THE CFTC OR ANY REGULATORY AUTHORITY DETERMINED IF THIS CONFIDENTIAL OFFERING MEMORANDUM IS TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

\* \* \*

THIS CONFIDENTIAL OFFERING MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT LAWFUL, OR IN WHICH THE PERSON MAKING SUCH OFFER OR SOLICITATION IS NOT QUALIFIED TO DO SO

\* \* \*

August 9, 2004

**Book No.**            **Name of Offeree**

Interests in Beacon Associates LLC I (the "Company") will be issued only on the basis of the information and representations contained in this Confidential Offering Memorandum and its exhibits (collectively, "Memorandum"), and no other information or representation has been authorized.

Any purchase made by any person on the basis of statements or representations not contained in, or inconsistent with, information herein shall be solely at the risk of the purchaser. Neither delivery of this Memorandum nor anything stated herein should be taken to imply that any information herein is correct as of any time subsequent to the date hereof.

This Memorandum constitutes an offer only if the name of an offeree appears in the appropriate space provided on the prior page of this Memorandum and only if delivery of this Memorandum is properly authorized by the Company. This Memorandum has been prepared by the Company solely for the benefit of qualified persons, and any reproduction of this Memorandum, in whole or in part, or the divulgence of any of its contents, without the prior written consent of the Company is prohibited.

FOR GEORGIA RESIDENTS ONLY: THESE SECURITIES HAVE BEEN ISSUED OR SOLD IN RELIANCE ON PARAGRAPH (13) OF CODE SECTION 10-5-9 OF THE "GEORGIA SECURITIES ACT OF 1973" AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

FOR FLORIDA RESIDENTS ONLY: PURSUANT TO THE LAWS OF THE STATE OF FLORIDA, IF SALES ARE MADE TO FIVE (5) OR MORE INVESTORS IN FLORIDA, ANY FLORIDA INVESTOR MAY, AT HIS OPTION, WITHDRAW, UPON WRITTEN (OR TELEGRAPHIC) NOTICE, ANY PURCHASE HEREUNDER WITHIN A PERIOD OF THREE (3) DAYS AFTER (A) THE INVESTOR FIRST TENDERS OR PAYS TO THE COMPANY, AN AGENT OF THE COMPANY OR AN ESCROW AGENT THE CONSIDERATION REQUIRED HEREUNDER, (B) THE INVESTOR DELIVERS HIS EXECUTED SUBSCRIPTION AGREEMENT OR (C) THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH INVESTOR, WHICHEVER OCCURS LATER.

The Interests have not been registered under the United States Securities Act of 1933 and are being offered as a private placement under Rule 506 thereunder. The Company is not a registered investment company under the Investment Company Act of 1940 in reliance on Rule 3(c)(7) thereunder.

DO NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL OR TAX ADVICE.

IF YOU ARE IN ANY DOUBT ABOUT THE CONTENTS OF THIS MEMORANDUM, YOU SHOULD CONSULT YOUR FINANCIAL OR LEGAL ADVISOR(S).

THE INTERESTS ARE SPECULATIVE SECURITIES. THE VALUE OF THE INTERESTS MAY GO DOWN AS WELL AS UP.

| Contents | Page |
| --- | --- |
| CFTC Exemption | ii |
| Summary | 1 |
| Investment Objectives and Strategies | 10 |
| Risk Factors | 14 |
| The Company and its Management | 25 |
| Conflicts of Interest | 28 |
| Fees and Expenses | 29 |
| Offering of Interests | 30 |
| Suitability Requirements and Offering Limitations | 32 |
| Terms of the LLC Agreement | 34 |
| Employee Benefit Plan Considerations | 38 |
| Income Tax Considerations | 42 |
| Reports and Other Information | 46 |

**Exhibits**

| | |
| --- | --- |
| Form of Limited Liability Company Agreement | Exhibit A |
| Privacy Notice | Exhibit P |
| Form of Subscription Documents | Exhibit S |

i

# EMPLOYEE BENEFIT PLAN CONSIDERATIONS

The Company may, subject to the limitation below and the other limitations herein, accept subscriptions from (i) Individual Retirement Accounts, Keogh Plans which cover only self-employed persons and their spouses and no common law employees and from employee benefit plans which cover only the sole proprietor or stockholder of a business and his or her spouse (collectively, "**Individual Retirement Funds**"); Employee Benefit Plans subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA Plans**"); and (iii) government plans, church plans, foreign plans, etc. (collectively, "**Non-ERISA Plans**"). Individual Retirement Funds, ERISA Plans that are Tax exempt, and Non-ERISA Plans are collectively referred to as "**Benefit Plan Investors.**"

Section 404(a)(1) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), and the regulations promulgated thereunder by the United States Department of Labor ("**DOL**") provide as a general rule that a fiduciary with respect to an ERISA Plan must discharge his duties with respect to the ERISA Plan in a prudent manner and must consider several factors in determining whether to enter into an investment or engage in an investment course of action. If a fiduciary with respect to any such ERISA Plan acts imprudently with regard to selecting an investment or an investment course of action for such ERISA Plan, the fiduciary may be held personally liable for losses incurred by the ERISA Plan as a result of such imprudence. Among the factors that should be considered are (i) the diversification and liquidity of the ERISA Plan's portfolio; (ii) the potential return on the proposed investment and the effect on that return if any portion of the Company's income constitutes "unrelated business taxable income" (see "Income Tax Considerations"); (iii) the place the proposed investment would occupy in the ERISA Plan's portfolio taken as a whole; and (iv) whether the proposed investment is in accordance with the documents and instruments governing the ERISA Plan.

The acceptance of a subscription by the Company from a Benefit Plan Investor does not constitute a representation or judgment by the Company that an investment in the Company is an appropriate investment for that entity or that such an investment meets the legal requirements applicable to such entity. Those considering the purchase of Membership Interests on behalf of an ERISA Plan or an Individual Retirement Fund first must ensure that the ERISA Plan or Individual Retirement Fund has been properly established in accordance with the Code and the rules, regulations and existing interpretations thereunder and that the ERISA Plan or Individual Retirement Fund is adequately funded. After an ERISA Plan or Individual Retirement Fund has been properly established and adequately funded and if the purchase of Membership Interests is not prohibited under the governing documents of the ERISA Plan or Individual Retirement Fund, the trustee or custodian of the ERISA Plan or Individual Retirement Fund who decides to do so or who is instructed to do so can subscribe for a Membership Interest.

Generally, under ERISA, the ERISA Plan trustees or duly authorized investment managers (within the meaning of section 3(38) of ERISA) have exclusive authority and discretion to manage and control assets of the Plan. ERISA also imposes certain duties and responsibilities on persons who are deemed to be fiduciaries (within the meaning of Section

38

3(21) of ERISA), and prohibits such persons from entering into transactions involving Plan assets with various parties in interest (within the meaning of section 3(14) of ERISA) with respect to the ERISA Plans. If such a "prohibited transaction" is entered into, certain excise taxes may be payable by the party in interest (but not the ERISA Plan or, generally, the ERISA Plan's trustees acting as such) and the ERISA Plan fiduciaries may be liable to the ERISA Plan for any losses incurred. Similar rules apply to Individual Retirement Funds.

Depending upon the percentage of Membership Interests purchased by Benefit Plan Investors relative to purchases by other permitted investors, the underlying assets of the Company may be considered to be assets of the ERISA Plans and Individual Retirement Funds investing in the Company ("**Plan Assets**"). Under a regulation of the DOL, when an ERISA Plan or Individual Retirement Fund acquires an equity interest in an entity such as the Company, which interest is not a publicly offered security, as is the case with the Membership Interests, the underlying assets of the Company will not be deemed plan assets if, in the aggregate, less than 25% of the Membership Interests (excluding Membership Interests held by the Managing Member or its affiliates) are held by Benefit Plan Investors (which includes ERISA Plans, Individual Retirement Funds and Non-ERISA Plans). If such Benefit Plan Investors own 25% or more of the Membership Interests (excluding Membership Interests held by the Managing Member or its affiliates), the underlying assets of the Company will constitute plan assets. The DOL regulation provides that the 25% of ownership test applies at the time of an acquisition by any person of Membership Interests. In addition, an Advisory opinion of the DOL takes the position that a redemption of an equity interest by an investor constitutes the acquisition of an equity interest by the remaining investors (through an increase in their percentage ownership of the remaining Membership Interests), thus triggering an application of the 25% test at the time of the redemption. The Managing Member anticipates that 25% or more of the Membership Interests (excluding Membership Interests held by the Managing Member or its affiliates) will continue to be held by Benefit Plan Investors, and accordingly, the underlying assets of the Company will continue to be deemed to be plan assets of the investing ERISA Plans and Individual Retirement Funds.

Since the assets of the Company are, and are expected to continue to be deemed to be, plan assets, the Managing Member is, and will continue to be, a fiduciary with respect to that portion of each investing ERISA Plan and Individual Retirement Fund, that is invested in the Company. In such circumstances, the general prudence and fiduciary responsibility provisions of ERISA are, and will continue to be, applicable both to the Managing Member with respect to each investment made by the Company and to the entity or entities chosen by the Managing Member to invest the Company's funds. By virtue of application of the Plan Asset Rules above, in the event that any transaction would or might constitute a prohibited transaction under ERISA or the Code and a statutory, class or individual exemption from the prohibited transaction provisions of ERISA for such transaction or transactions does not apply or cannot be obtained from the DOL (or the Managing Member determines not to seek such an exemption), the Managing Member reserves the right, upon notice to, but without the consent of, any Member, mandatorily to redeem any Member which is an ERISA Plan or an Individual Retirement Fund, or a Non-ERISA Plan investor.

The Managing Member is not registered as an investment Advisor under the Investment Advisors Act of 1940, and, as a result, the Managing Member is not an investment manager (within the meaning of section 3(38) of ERISA) with respect to the investing ERISA Plans. Under ERISA, to the extent that the management of an ERISA Plan's assets is delegated to an investment manager (within the meaning of Section 3(38) of ERISA), the trustees of the ERISA

39

Plan do not have exclusive discretion to manage the Plan's assets nor are they responsible or liable for any act of such investment manager. However, because neither the Managing Member nor the Company's "Investment Managers" are investment managers (within the meaning of section 3(38) of ERISA), to the extent that the trustees of an ERISA Plan purchased, or determine to purchase, Membership Interests, they have, and will have, responsibility for managing the ERISA Plan's assets invested in the Company, and they are, and will be, responsible (and potentially liable) for the acts of the Managing Member and the Company's "Investment Managers" as if the trustees had themselves performed such acts. However, to the extent that the management of an ERISA Plan's assets have been or are delegated to an investment manager (within the meaning of Section 3(38) of ERISA), who in turn purchased or purchases a Membership Interest on behalf of an ERISA Plan, the purchasing investment manager, and not the trustees of that ERISA Plan, should be responsible (and potentially liable) for the acts of the Managing Member and the Company's "Investment Managers."

Section 408(a)(5) of the Internal Revenue Code of 1986, as amended (the "**Code**"), provides that the assets of an IRA may not be commingled with other property except in a common trust or investment fund. A prohibited commingling of the assets of an IRA in other than a common trust fund or common investment fund could result in the disqualification of the IRA and a deemed distribution of the IRA's assets to the beneficiary of the IRA.

Although the Company is not a common trust fund or common investment fund, for the reasons discussed below, the Company has been advised by counsel that an investment in the Company by an IRA should not be deemed to involve a prohibited commingling of IRA assets. While the assets of the Company, under certain circumstances discussed above, may be deemed to be "plan assets", that term applies solely for purposes of Title I of ERISA and Section 4975 of the Code, but not to Section 408(a)(5) of the Code. Accordingly, although there is no direct authority on this matter, for purposes of the prohibition against the commingling of IRA assets, no such commingling should occur because the sole interest of an investing IRA would be its Membership Interests, and not the underlying assets of the Company.

The Managing Member has acquired, and shall maintain, a fidelity bond satisfying the requirements of Section 412 of ERISA with respect to the assets of the Company owned by all ERISA Plans.

Regardless of whether the Company is treated as a plan asset (and in any event), Interests of the Company held by an ERISA Plan will be considered plan assets. For ERISA Plans subject to ERISA, ERISA requires that the indicia of ownership of its plan assets be held within the jurisdiction of the U.S. district courts. ERISA Plan fiduciaries thus need to ensure compliance with the requirement to maintain the indicia of ownership of their Interests within the jurisdiction of the U.S. district courts, as required by ERISA.

Plan fiduciaries are responsible for complying with any reporting and disclosure requirements under ERISA or the Code resulting from an investment in the Company. A Form 5500 (annual Return/Report) is required to be filed by certain Plans investing in the Company. Pursuant to DOL regulations, ERISA Plans investing in the Company would need to include on their Form 5500 information relating to the fair market value of the Plan's investment in the Company as of the close of the Plan's fiscal year. As a result, if the Plan's fiscal year differs from the Company's fiscal year, the Plan investor may not be able to obtain valuation information of its Interests as of the end of the Plan's fiscal year. However the applicable instructions for the Plan's 5500 authorize the Plan Trustee to make a good faith determination of such valuation.

40

Certain Plans may include the assets of governmental plans which are not subject to ERISA and church plans which often will not be subject to ERISA. Also, the above-described prohibited transaction provisions do not apply to governmental plans or church plans. However, such Plans are subject to prohibitions against certain related-party transactions under Section 503 of the Code, which prohibitions operate similar to the above-described prohibited transaction rules. In addition, the fiduciary of any governmental or church plan must consider applicable state or local laws, if any, and the restrictions and duties of common law, if any, imposed upon such plan before making an investment in the Company.

*   *   *

**If you are an Individual Retirement Fund, ERISA Plan or non-ERISA Plan you should consult with your tax or legal counsel regarding the consequences under ERISA and the Code of your investment in the Company.**

# BEACON ASSOCIATES LLC II

## Confidential Offering Memorandum

Beacon Associates Management Corp.
123 Main Street
Suite 900
White Plains, New York  10601
Tel:  (914) 948-1556
Fax:  (914) 948-0051

# BEACON ASSOCIATES LLC II

## CONFIDENTIAL OFFERING MEMORANDUM

| | |
|---|---|
| **Company:** | Beacon Associates LLC II |
| **Securities Offered:** | Limited Liability Company Interests |
| **Minimum Initial Purchase:** | $500,000 |
| **Investment Objective:** | To provide above average rates of return while attempting to minimize risk by utilizing trading and investment strategies, both directly and indirectly, including through other investment pools. |

\* \* \*

THIS OFFERING IS NOT A PUBLIC OFFERING. THESE SECURITIES HAVE NOT BEEN REGISTERED OR QUALIFIED WITH, NOR APPROVED OR DISAPPROVED BY, THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE COMMODITY FUTURES TRADING COMMISSION ("CFTC") OR ANY STATE REGULATORY AUTHORITY, NOR HAS THE SEC, THE CFTC OR ANY REGULATORY AUTHORITY DETERMINED IF THIS CONFIDENTIAL OFFERING MEMORANDUM IS TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

\* \* \*

THIS CONFIDENTIAL OFFERING MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICT=ION IN WHICH SUCH OFFER OR SOLICITATION IS NOT LAWFUL, OR IN WHICH THE PERSON MAKING SUCH OFFER OR SOLICITATION IS NOT QUALIFIED TO DO SO.

\* \* \*

August 9, 2004

_____     _____
Book No.                                                       Name of Offeree

Interests in Beacon Associates LLC II (the "Company") will be issued only on the basis of the information and representations contained in this Confidential Offering Memorandum and its exhibits (collectively, the "Memorandum"), and no other information or representation has been authorized.

Any purchase made by any person on the basis of statements or representations not contained in, or inconsistent with, information herein shall be solely at the risk of the purchaser. Neither delivery of this Memorandum nor anything stated herein should be taken to imply that any information herein is correct as of any time subsequent to the date hereof.

This Memorandum constitutes an offer only if the name of an offeree appears in the appropriate space provided on the prior page of this Memorandum and only if delivery of this Memorandum is properly authorized by the Company. This Memorandum has been prepared by the Company solely for the benefit of qualified persons interested in the proposed sale of Interests, and any reproduction of this Memorandum, in whole or in part, or the divulgence of any of its contents, without the prior written consent of the Company, is prohibited.

FOR GEORGIA RESIDENTS ONLY: THESE SECURITIES HAVE BEEN ISSUED OR SOLD IN RELIANCE ON PARAGRAPH (13) OF CODE SECTION 10-5-9 OF THE "GEORGIA SECURITIES ACT OF 1973" AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

FOR FLORIDA RESIDENTS ONLY: PURSUANT TO THE LAWS OF THE STATE OF FLORIDA, IF SALES ARE MADE TO FIVE (5) OR MORE INVESTORS IN FLORIDA, ANY FLORIDA INVESTOR MAY, AT HIS OPTION, WITHDRAW, UPON WRITTEN (OR TELEGRAPHIC) NOTICE, ANY PURCHASE HEREUNDER WITHIN A PERIOD OF THREE (3) DAYS AFTER (A) THE INVESTOR FIRST TENDERS OR PAYS TO THE COMPANY, AN AGENT OF THE COMPANY OR AN ESCROW AGENT THE CONSIDERATION REQUIRED HEREUNDER, (B) THE INVESTOR DELIVERS HIS EXECUTED SUBSCRIPTION AGREEMENT OR (C) THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH INVESTOR, WHICHEVER OCCURS LATER.

The Interests have not been registered under the United States Securities Act of 1933 and are being offered as a private placement under Rule 506 thereunder. The Company is not a registered investment company under the Investment Company Act of 1940 in reliance on Rule 3(c)(l) thereunder.

DO NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL OR TAX ADVICE.

IF YOU ARE IN ANY DOUBT ABOUT THE CONTENTS OF THIS MEMORANDUM, YOU SHOULD CONSULT YOUR FINANCIAL OR LEGAL ADVISOR(S).

THE INTERESTS ARE SPECULATIVE SECURITIES. THE VALUE OF THE INTERESTS MAY GO DOWN AS WELL AS UP.

| Contents | Page |
| --- | --- |
| CFTC Exemption | ii |
| Summary | 1 |
| Investment Objectives and Strategies | 11 |
| Risk Factors | 15 |
| The Company and its Management | 26 |
| Conflicts of Interest | 29 |
| Fees and Expenses | 30 |
| Offering of Interests | 31 |
| Suitability Requirements and Offering Limitations | 33 |
| Terms of the LLC Agreement | 35 |
| Employee Benefit Plan Considerations | 40 |
| Income Tax Considerations | 44 |
| Reports and Other Information | 48 |
| Form of Limited Liability Company Agreement | Exhibit A |
| Privacy Notice | Exhibit P |
| Form of Subscription Documents | Exhibit S |

## EMPLOYEE BENEFIT PLAN CONSIDERATIONS

The Company may, subject to the limitation below and the other limitations herein, accept subscriptions from (i) Individual Retirement Accounts, Keogh Plans which cover only self-employed persons and their spouses and no common law employees and from employee benefit plans which cover only the sole proprietor or stockholder of a business and his or her spouse (collectively, "**Individual Retirement Funds**"); Employee Benefit Plans subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA Plans**"); and (iii) government plans, church plans, foreign plans, etc. (collectively, "**Non-ERISA Plans**"). Individual Retirement Funds, ERISA Plans that are Tax exempt, and Non-ERISA Plans are collectively referred to as "Benefit Plan Investors."

Section 404(a)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the regulations promulgated thereunder by the United States Department of Labor ("DOL") provide as a general rule that a fiduciary with respect to an ERISA Plan must discharge his duties with respect to the ERISA Plan in a prudent manner and must consider several factors in determining whether to enter into an investment or engage in an investment course of action. If a fiduciary with respect to any such ERISA Plan acts imprudently with regard to selecting an investment or an investment course of action for such ERISA Plan, the fiduciary may be held personally liable for losses incurred by the ERISA Plan as a result of such imprudence. Among the factors that should be considered are (i) the diversification and liquidity of the ERISA Plan's portfolio; (ii) the potential return on the proposed investment and the effect on that return if any portion of the Company's income constitutes "unrelated business taxable income" (see "Income Tax Considerations"); (iii) the place the proposed investment would occupy in the ERISA Plan's portfolio taken as a whole; and (iv) whether the proposed investment is in accordance with the documents and instruments governing the ERISA Plan.

The acceptance of a subscription by the Company from a Benefit Plan Investor does not constitute a representation or judgment by the Company that an investment in the Company is an appropriate investment for that entity or that such an investment meets the legal requirements applicable to such entity. Those considering the purchase of Membership Interests on behalf of an ERISA Plan or an Individual Retirement Fund first must ensure that the ERISA Plan or Individual Retirement Fund has been properly established in accordance with the Code and the rules, regulations and existing interpretations thereunder and that the ERISA Plan or Individual Retirement Fund is adequately funded. After an ERISA Plan or Individual Retirement Fund has been properly established and adequately funded and if the purchase of Membership Interests is not prohibited under the governing documents of the ERISA Plan or Individual Retirement Fund, the trustee or custodian of the ERISA Plan or Individual Retirement Fund who decides to do so or who is instructed to do so can subscribe for a Membership Interest.

Generally, under ERISA, the ERISA Plan trustees or duly authorized investment managers (within the meaning of section 3(38) of ERISA) have exclusive authority and discretion to manage and control assets of the Plan. ERISA also imposes certain duties and

40

responsibilities on persons who are deemed to be fiduciaries (within the meaning of Section 3(21) of ERISA), and prohibits such persons from entering into transactions involving Plan assets with various parties in interest (within the meaning of section 3(14) of ERISA) with respect to the ERISA Plans. If such a "prohibited transaction" is entered into, certain excise taxes may be payable by the party in interest (but not the ERISA Plan or, generally, the ERISA Plan's trustees acting as such) and the ERISA Plan fiduciaries may be liable to the ERISA Plan for any losses incurred. Similar rules apply to Individual Retirement Funds.

Depending upon the percentage of Membership Interests purchased by Benefit Plan Investors relative to purchases by other permitted investors, the underlying assets of the Company may be considered to be assets of the ERISA Plans and Individual Retirement Funds investing in the Company ("**Plan Assets**"). Under a regulation of the DOL, when an ERISA Plan or Individual Retirement Fund acquires an equity interest in an entity such as the Company, which interest is not a publicly offered security, as is the case with the Membership Interests, the underlying assets of the Company will not be deemed plan assets if, in the aggregate, less than 25% of the Membership Interests (excluding Membership Interests held by the Managing Member or its affiliates) are held by Benefit Plan Investors (which includes ERISA Plans, Individual Retirement Funds and Non-ERISA Plans). If such Benefit Plan Investors own 25% or more of the Membership Interests (excluding Membership Interests held by the Managing Member or its affiliates), the underlying assets of the Company will constitute plan assets. The DOL regulation provides that the 25% of ownership test applies at the time of an acquisition by any person of Membership Interests. In addition, an Advisory opinion of the DOL takes the position that a redemption of an equity interest by an investor constitutes the acquisition of an equity interest by the remaining investors (through an increase in their percentage ownership of the remaining Membership Interests), thus triggering an application of the 25% test at the time of the redemption. The Managing Member anticipates that 25% or more of the Membership Interests (excluding Membership Interests held by the Managing Member or its affiliates) will continue to be held by Benefit Plan Investors, and accordingly, the underlying assets of the Company will continue to be deemed to be plan assets of the investing ERISA Plans and Individual Retirement Funds.

Since the assets of the Company are, and are expected to continue to be deemed to be, plan assets, the Managing Member is, and will continue to be, a fiduciary with respect to that portion of each investing ERISA Plan and Individual Retirement Fund that is invested in the Company. In such circumstances, the general prudence and fiduciary responsibility provisions of ERISA are, and will continue to be, applicable both to the Managing Member with respect to each investment made by the Company and to the entity or entities chosen by the Managing Member to invest the Company's funds. By virtue of application of the Plan Asset Rules above, in the event that any transaction would or might constitute a prohibited transaction under ERISA or the Code and a statutory, class or individual exemption from the prohibited transaction provisions of ERISA for such transaction or transactions does not apply or cannot be obtained from the DOL (or the Managing Member determines not to seek such an exemption), the Managing Member reserves the right, upon notice to, but without the consent of, any Member, mandatorily to redeem any Member which is an ERISA Plan or an Individual Retirement Fund, or a Non-ERISA Plan investor.

The Managing Member is not registered as an investment Advisor under the Investment Advisors Act of 1940, and, as a result, the Managing Member is not an investment manager (within the meaning of section 3(38) of ERISA) with respect to the investing ERISA Plans. Under ERISA, to the extent that the management of an ERISA Plan's assets is delegated to an investment manager (within the meaning of Section 3(38) of ERISA), the trustees of the ERISA Plan do not have exclusive discretion to manage the Plan's assets nor are they responsible or liable for any act of such investment manager. However, because neither the Managing Member nor the Company's "Investment Managers" are investment managers (within the meaning of section 3(38) of ERISA), to the extent that the trustees of an ERISA Plan purchased, or determine to purchase, Membership Interests, they have, and will have, responsibility for managing the ERISA Plan's assets invested in the Company, and they are, and will be, responsible (and potentially liable) for the acts of the Managing Member and the Company's "Investment Managers" as if the trustees had themselves performed such acts. However, to the extent that the management of an ERISA Plan's assets have been or are delegated to an investment manager (within the meaning of Section 3(38) of ERISA), who in turn purchased or purchases a Membership Interest on behalf of an ERISA Plan, the purchasing investment manager, and not the trustees of that ERISA Plan, should be responsible (and potentially liable) for the acts of the Managing Member and the Company's "Investment Managers."

Section 408(a)(5) of the Internal Revenue Code of 1986, as amended (the "**Code**"), provides that the assets of an IRA may not be commingled with other property except in a common trust or investment fund. A prohibited commingling of the assets of an IRA in other than a common trust fund or common investment fund could result in the disqualification of the IRA and a deemed distribution of the IRA's assets to the beneficiary of the IRA.

Although the Company is not a common trust fund or common investment fund, for the reasons discussed below, the Company has been advised by counsel that an investment in the Company by an IRA should not be deemed to involve a prohibited commingling of IRA assets. While the assets of the Company, under certain circumstances discussed above, may be deemed to be "plan assets", that term applies solely for purposes of Title I of ERISA and Section 4975 of the Code, but not to Section 408(a)(5) of the Code. Accordingly, although there is no direct authority on this matter, for purposes of the prohibition against the commingling of IRA assets, no such commingling should occur because the sole interest of an investing IRA would be its Membership Interests, and not the underlying assets of the Company.

The Managing Member has acquired, and shall maintain, a fidelity bond satisfying the requirements of Section 412 of ERISA with respect to the assets of the Company owned by all ERISA Plans.

Regardless of whether the Company is treated as a plan asset (and in any event), Interests of the Company held by an ERISA Plan will be considered plan assets. For ERISA Plans subject to ERISA, ERISA requires that the indicia of ownership of its plan assets be held within the jurisdiction of the U.S. district courts. ERISA Plan fiduciaries thus need to ensure compliance with the requirement to maintain the indicia of ownership of their Interests within the jurisdiction of the U.S. district courts, as required by ERISA.

42

Plan fiduciaries are responsible for complying with any reporting and disclosure requirements under ERISA or the Code resulting from an investment in the Company. A Form 5500 (annual Return/Report) is required to be filed by certain Plans investing in the Company. Pursuant to DOL regulations, ERISA Plans investing in the Company would need to include on their Form 5500 information relating to the fair market value of the Plan's investment in the Company as of the close of the Plan's fiscal year. As a result, if the Plan's fiscal year differs from the Company's fiscal year, the Plan investor may not be able to obtain valuation information of its Units as of the end of the Plan's fiscal year. However the applicable instructions for the Plan's 5500 authorize the Plan Trustee to make a good faith determination of such valuation.

Certain Plans may include the assets of governmental plans which are not subject to ERISA and church plans which often will not be subject to ERISA. Also, the above-described prohibited transaction provisions do not apply to governmental plans or church plans. However, such Plans are subject to prohibitions against certain related-party transactions under Section 503 of the Code, which prohibitions operate similar to the above-described prohibited transaction rules. In addition, the fiduciary of any governmental or church plan must consider applicable state or local laws, if any, and the restrictions and duties of common law, if any, imposed upon such plan before making an investment in the Company.

\* \* \*

If you are an Individual Retirement Fund, ERISA Plan or non-ERISA Plan you should consult with your tax or legal counsel regarding the consequences under ERISA and the Code of your investment in the Company.