# EXHIBIT G

08-01789-cgm    Doc 4088-8    Filed 05/25/11    Entered 05/25/11 10:36:16    Exhibit G to Chaitman Decl.    Pg 2 of 11

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

       In the Matter

            of                         Case No.

                                1-08-01789

SECURITIES INVESTOR PROTECTION CORPORATION

        V.

BERNARD L. MADOFF INVESTMENT SECURITIES, et al.,

                Debtors.

------------------------------------------x

                        February 18, 2010

                        United States Custom House

                        One Bowling Green

                        New York, New York 10004

       Motion for an Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving an Agreement by and Among the Trustee and Jeanne Levy-Church and Francis N. Levy, et al.

B E F O R E:

              HON. BURTON R. LIFLAND,

                    U.S. Bankruptcy Judge

2

1  A P P E A R A N C E S:
2
3
4       BAKER HOSTETLER, LLP
5       Attorneys for Irving H. Picard, Trustee
6            45 Rockefeller Plaza
7            New York, New York 10017
8       BY:    MARC E. HIRSCHFIELD, ESQ.
9                -and-
10           PAUL EYRE, ESQ.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

3

1                      Proceedings
2              THE COURT:  Securities Investor Protection
3    vs. Bernard L. Madoff Investment Securities.
4              Is that based on the calendar or caption,
5    The Bankruptcy Link?
6              MR. HIRSCHFIELD:   Calendar.
7              THE COURT:  So we ought to recaption it
8    then.
9              MR. HIRSCHFIELD:   Good morning, Your
10   Honor.
11             THE COURT: Good morning.
12             MR. HIRSCHFIELD:  I am Marc Hirschfield,
13   from the law firm of Baker Hostetler, on behalf of the
14   Trustee.   With me today is my colleague, Paul Eyre, who
15   helped work on the settlement.
16             Before the Court today is the motion under
17   Bankruptcy Rule 9019 seeking the Court's approval an
18   agreement with Jeanne Levy-Church and Francis Levy, adult
19   children of Betty and Norman Levy drew up an agreement the
20   Levys will return to the Trustee 220 million dollars.
21             By way of background, Your Honor, Norman
22   Levy was a real estate executive here in New York.  He
23   began investing with Madoff in the mid-1970s.
24             Over the years, Mr. Levy opened up a number
25   of accounts with BLMIS for himself, for his wife, and for

4

1   various members of his family including his children and
2   the family and other charitable trusts.  Mr. Levy passed
3   away in 2005, and throughout his life he placed great trust
4   in Mr. Madoff.
5           In his will, he appointed Madoff as one of
6   his executors and that granted Madoff the authority to make
7   unilateral decisions with regard to nonreal estate assets
8   of his estate.
9           Mr. Madoff unfortunately took advantage of
10  that trust and breached it, and after Mr. Levy's death
11  transferred 220 million dollars of non-Madoff assets.
12          THE COURT:  As an executor --
13          MR. HIRSCHFIELD:  Yes.
14          THE COURT:  -- of the Levy estate?
15          MR. HIRSCHFIELD:  Yes. He transferred it to
16  BLMIS and, of course, that money was lost along with all
17  the other money.
18          THE COURT:  This is a bit of lack of
19  integrity we have not seen before.
20          MR. HIRSCHFIELD:  I think there is no
21  floor to Mr. Madoff's integrity.
22          So, essentially, Your Honor, Madoff stole
23  the 220 million dollars from Mr. Levy's heirs.  Even with
24  this 220 million dollars over the years the Levy account
25  holders took out more money from Madoff than they put in.

08-01789-cgm    Doc 4088-8    Filed 05/25/11    Entered 05/25/11 10:36:16    Exhibit G to
Chaitman Decl.    Pg 6 of 11

5

1              Therefore, Your Honor, under our parlance
2    they are not winners.  Last spring Jeanne and Francis
3    Levy, the two heirs of Mr. Norman Levy approached us
4    through their counsel to begin to discuss their potential
5    liability.  We did not contact them.  They contacted us.
6              From the very beginning, Your Honor, they
7    made it very clear to us they want to do the right thing.
8    They felt badly about having other people's money and they
9    wanted to return to the Trustee the profits they received,
10   which was really other people's money.
11             After discussing with them various things
12   and learning about them and their finances and their assets
13   and their liabilities, the Trustee made a demand of them of
14   220 million dollars, which at that time was the six-year
15   number of the money that they took out.
16             In addition to that, Your Honor, the 220
17   million dollars another 84 million of false profits was
18   withdrawn by the Betty and Norman Levy Foundation, which
19   was a charitable trust which Mr. Levy and his wife had set
20   up.  They told us, the Levis, and they gave us evidence to
21   corroborate all of this 84 million dollars which was
22   donated to charitable causes and the foundation has
23   virtually nothing left to which to return anything to the
24   Trustee.
25             Based upon this, the trustee in his

6

```
 1   business judgment made the decision not to seek any
 2   recovery from the trust.  Again, to do so, from the
 3   foundation rather, to do so would have been futile because
 4   as I said they had nothing to give us.  So, therefore,
 5   trying to commence a lawsuit against the foundation would
 6   have made no sense.
 7              The Trustee does believe that the other
 8   money withdrawn by the Levys is recoverable under Section
 9   544, 548 and 550 of the Bankruptcy Code.
10              When the Levy executed liability to the
11   trust they agreed to pay us the amount we requested, 220
12   million dollars.  That agreement is set forth in a
13   settlement agreement attached to the motion.
14              I will just highlight a few of the terms of
15   the agreement for the Court's reference.
16              Under the agreement, as mentioned the Levys
17   will pay us at closing which will happen very shortly after
18   an order approving the settlement has become final some 220
19   million dollars in one payment.
20              The Trustee and the Levis will exchange a
21   release and the Trustee will agree not to sue certain
22   entities that are related to the Levis.
23              The Levis have agreed, respectively, they
24   will assist us when asked in our effort to recover other
25   money from other people and, finally, there are two
```

7

1   children of Francis Levy, who unlike the other Levy
2   members, those accounts that they had with Madoff were not
3   losers.
4               They submitted claims before the bar date
5   and those two proofs of claim will be redeemed withdrawn as
6   part of the settlement.  So there will be no recovery at
7   all on those two claims.
8               We believe the settlement is a very good
9   one and we ask for the Court's approval.  In connection
10  with our motion, the Trustee submitted an affidavit to the
11  Court in which he stated that he believes the settlement is
12  appropriate in his business judgment and that the business
13  agreement falls well above the lowest point of
14  reasonableness.
15              While we believe we would have prevailed if
16  we had to sue the Levis, we don't believe we have collected
17  anything more than just getting this settlement.  So,
18  therefore, we think it makes sense to have the settlement
19  agreement.
20              Your Honor, I just have one additional
21  thing to add, as we set forth in our motion and the public
22  statements, the Trustee very much appreciates the manner in
23  which the Levys conducted themselves throughout these
24  discussions.
25              As I said earlier, the discussions were, in

8

1  fact, initiated by the Levis.  There were a lot of people
2  in this case who withdrew false profits and there are some
3  who are fighting us virtually tooth and nail not to return
4  the money, and others like the Levys and Optimal which we
5  previously settled came forward to voluntarily return the
6  money.
7              The Trustee, the Levis should serve as an
8  example to others in this case in a situation similar to
9  the Levys, and should come forward and like the Levys
10 return to us the amounts they've withdrawn.
11             In conclusion, Your Honor, we very much
12 think the settlement is a satisfactory one and we ask for
13 Your Honor's approval.
14             THE COURT:  Does anyone else want to be
15 heard?
16             Well, I am going to approve the settlement,
17 based upon the papers before me and representations here.
18             It is clear that the Trustee has done an
19 appropriate level of due diligence in recommending the
20 settlement.  Especially with respect to the concept of
21 abandoning certain actions based upon the difficulties
22 associated with the collection, that is with respect to the
23 foundation.
24             The settlement does resolve the spectre of
25 an expensive and protracted litigation, and it allows the

9

1  parties to go forward with a degree of comfort that there
2  are lawyers who are now out of the horizon to a certain
3  extent and certainly, the way the settlement has come about
4  and the amount, although interests could have demanded or
5  based upon information received, subsequent to the first
6  offer, it is clear that this settlement is well above the
7  lowest rung in a range of reasonableness and is right on
8  target in that regard and I will entertain an order
9  approving it.
10              MR. HIRSCHFIELD:  Thank you, Your Honor.
11              THE COURT: I have approved the order.
12              MR. HIRSCHFIELD:  Yes.  Thank you, again,
13  Your Honor.
14              That would be all we have on the calendar
15  for today.
16              THE COURT:  Thank you.
17
18                    *     *     *
19
20
21
22
23
24
25

```
                                                                    10
 1
 2                       C E R T I F I C A T E
 3
 4    STATE OF NEW YORK       }
                              }    ss.:
 5    COUNTY OF NEW YORK      }
 6                  I, MINDY CORCORAN, a Shorthand Reporter
 7    and Notary Public within and for the State of New York, do
 8    hereby certify:
 9                  That I reported the proceedings in the
10    within entitled matter, and that the within transcript is a
11    true record of such proceedings.
12                  I further certify that I am not related, by
13    blood or marriage, to any of the parties in this matter and
14    that I am in no way interested in the outcome of this
15    matter.
16                  IN WITNESS WHEREOF, I have hereunto set my
17    hand this 19th day of February, 2010.
18
19                              _____
                                MINDY CORCORAN
20
21
22
23
24
25
```