HEARING DATE: JUNE 7, 2011 AT 10:00 AM

**MILBERG LLP**
One Pennsylvania Plaza
New York, New York 10119
Tel.: (212) 594-5300

**SEEGER WEISS LLP**
One William Street
New York, New York 10004
Tel.: (212) 584-0700

*Attorneys for Morning Mist Holdings Limited and Miguel Lomeli*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------x

In re:

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                              Debtor,

--------------------------------------------------------

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                              Plaintiffs,

        vs.

FAIRFIELD SENTRY LIMITED, et al.,

                              Defendants.

-----------------------------------------------------x

Adv. Pro. No. 08-01789 (BRL)

SIPA LIQUIDATION

(SUBSTANTIVELY
CONSOLIDATED)




Adv. Pro. No. 09-1239 (BRL)


*caption continued on next page*

---------------------------------------------x

In re:                                      Chapter 15 Case

FAIRFIELD SENTRY LIMITED, et al.,           Case No. 10-13164 (BRL)
                                            Jointly Administered
          Debtors in Foreign Proceedings.

---------------------------------------------x

**DERIVATIVE PLAINTIFFS' (i) OBJECTION TO SETTLEMENT AND,
IN THE ALTERNATIVE, (ii) MOTION TO STAY ANY APPROVAL PENDING
APPEAL OF CHAPTER 15 RECOGNITION ORDER ISSUED IN CASE NO. 10-13164**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.      THE COURT SHOULD NOT APPROVE THE SETTLEMENT AT THIS TIME ........... 3

II.     ALTERNATIVELY, THE COURT SHOULD STAY ANY APPROVAL
        ORDER PENDING DISPOSITION OF THE APPEAL OF THE RECOGNITION
        ORDER ....................................................................................................................... 5

        A.      Substantial Possibility of Success ............................................................. 6

        B.      Irreparable Injury ...................................................................................... 8

        C.      No Substantial Injury to Others ............................................................. 11

        D.      Public Interest ......................................................................................... 13

        E.      Balancing of Interests ............................................................................ 13

CONCLUSION ................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

CASES

*In re Adelphia Comm. Corp.*,
    361 B.R. 337 (S.D.N.Y. 2007)..........................................................................5, 10

*In re Advanced Mining Sys., Inc.*,
    173 B.R. 467 (S.D.N.Y. 1994)................................................................................11

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
    389 B.R. 325 (S.D.N.Y. 2008)..................................................................................7

*In re Calpine Corp.*,
    No. 05-60200 (BRL), 2008 Bankr. LEXIS 217 (Bankr. S.D.N.Y. Jan. 24, 2008)....................5

*In re Fairfield Sentry Ltd.*,
    440 B.R. 60 (Bankr. S.D.N.Y. 2010)..........................................................................3

*In re Fairfield Sentry Ltd.*,
    Case No. 10-13164 (Bankr. S.D.N.Y. May 23, 2011)................................................4

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995).....................................................................................9

*Kirschner v. KPMG LLP*,
    15 N.Y.3d 446 (2010) ..............................................................................................8

*Lavie v. Ran*,
    607 F.3d 1017 (5th Cir. 2010) ................................................................................7

*In re Masters Mates & Pilots Pension Plan and IRAP Litig.*,
    957 F.2d 1020 (2d Cir. 1992)...................................................................................4

*Mohammed v. Reno*,
    309 F.3d 95 (2d Cir. 2002)........................................................................................5

*In re Orion Pictures Corp.*,
    21 F.3d 24 (2d Cir. 1994)..........................................................................................7

*Picard v. HSBC Bank PLC*,
    No. 11 Civ. 763, 2011 U.S. Dist. LEXIS 44126 (S.D.N.Y. Apr. 25, 2011)................8, 10, 11

*Picard v. JPMorgan Chase & Co.*,
    No. 11 Civ. 913 (S.D.N.Y. May 23, 2011) ............................................................10

*Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.,*
    No. 09 Civ. 9021, 2010 U.S. Dist. LEXIS 42216 (S.D.N.Y. Apr. 28, 2010) ..........................4

*In re St. Johnsbury Trucking Co.,*
    185 B.R. 687 (S.D.N.Y. 1995)......................................................................................11, 13

*Shearson Lehman Hutton, Inc. v. Wagoner,*
    944 F.2d 114 (2d Cir. 1991).............................................................................................8, 11

*United States v. Amodeo,*
    44 F.3d 141 (2d Cir. 1995)......................................................................................................7

*Zupnick v. Fogel,*
    989 F.2d 93 (2d Cir. 1993).....................................................................................................4

**STATUTES AND RULES**

11 U.S.C. § 107(a) ......................................................................................................................8

11 U.S.C. § 1506..................................................................................................................2, 13

11 U.S.C. § 1509(b). ...................................................................................................................4

11 U.S.C. § 1517(b) ....................................................................................................................6

Fed. R. Bankr. P. 8005 ...............................................................................................................5

## PRELIMINARY STATEMENT

Morning Mist Holdings Limited and Miguel Lomeli ("Objectors") submit this Objection

to the proposed settlement ("Settlement") between Irving H. Picard, Trustee ("Trustee") for the

Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the putative

liquidators ("Liquidators") of Fairfield Sentry Limited ("Sentry").[1]  In the alternative, if the

Court approves the Settlement, Objectors move for entry of an Order, pursuant to Bankruptcy

Rule 8005, staying the approval order pending completion of all appeals from the July 22, 2010

Order and Opinion of this Court in Dkt. No. 47, Case No. 10-13164, as amended by Errata

Orders dated July 26, 2010 and July 30, 2010 (Dkt. Nos. 48 and 51, Case No. 10-13164)

(hereafter, the "Recognition Order").  As and for their Objection and Motion, Objectors state as

follows:

1.      Objectors are Sentry shareholders and plaintiffs in a derivative action ("Derivative

Action") filed on behalf of Sentry, entitled *Morning Mist Holdings Limited and Miguel Lomeli v.*

*Fairfield Greenwich Group, et al.*  The Derivative Action was filed in New York Supreme Court

under Index No. 601511/09, and is currently pending in this Court, following the Liquidators'

removal of the action.  *See* 10-AP-03765 (Bankr. S.D.N.Y.).

2.      Sentry is a "feeder fund" that invested billions of dollars with BLMIS.  In the

Derivative Action, Objectors have asserted claims, *inter alia*, for breach of fiduciary duties and

negligent misrepresentation against Sentry's management (including Fairfield Greenwich

Group), for damages sustained in connection with Sentry's investments with BLMIS.  The

Derivative Action also asserts claims against Sentry's service providers, including

---

[1] The Liquidators of Sentry, as originally appointed, were Kenneth Krys and Christopher Stride. Subsequently, Joanna Lau has purportedly replaced Mr. Stride.

PricewaterhouseCoopers ("PWC"), and Citco Fund Services (Europe) BV and related entities ("Citco").

3.    In June 2010, the Liquidators filed a petition in this Court under Chapter 15 of the Bankruptcy Code ("Chapter 15 Petition"), seeking recognition of a British Virgin Islands proceeding ("BVI Proceeding") in which they were purportedly appointed as liquidators of Sentry.  *See* Dkt. No. 1, Case No. 10-13164.  The Chapter 15 Petition also sought entry of an order staying the Derivative Action.

4.    In seeking Chapter 15 relief, the Liquidators represented that recognition would

> advance the Liquidators' litigation efforts by, *inter alia*, (i) facilitating the Liquidators' enhanced *access to United States courts in connection with the pursuit of claims on behalf of the Debtors*, (ii) affording the Liquidators the right to seek discovery to identify parties that bear liability to the Debtors and the claims against those parties; (iii) providing protection of the recoveries made by the Liquidators in the United States from piecemeal attack; [and] (iv) *providing a means to facilitate a consensual resolution of the Madoff Trustee's BLMIS Adversary Proceeding against Sentry benefiting stakeholders in and of Sentry and the Madoff estate ….*

*See* Dkt. No. 3 at ¶ 43, Case No. 10-13164 (Declaration of Kenneth Krys) (emphasis supplied).

5.    Objectors opposed the Chapter 15 Petition and the relief requested therein. Objectors filed an Objection (*see* Dkt. No. 28, Case No. 10-13164), and presented oral argument at a hearing before this Court on July 22, 2010.[2]  In that Objection, Objectors contended, *inter alia*, that the Liquidators had failed to establish that the BVI was Sentry's "center of main interests" ("COMI") or that Sentry had an "establishment" in the BVI.  Additionally, Objectors contended that recognition was barred by 11 U.S.C. § 1506, as it would be manifestly contrary to U.S. public policy.

---

[2] Objectors incorporate herein their Objection to the Chapter 15 Petition.

6.      Following oral argument, the Court issued the Recognition Order.  That Order

granted recognition of the BVI Proceeding and stayed the Derivative Action.  *See In re Fairfield*

*Sentry Ltd.*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010).

7.      On August 5, 2010, Objectors filed a Notice of Appeal of the Recognition Order.

Following briefing, oral argument on the appeal was heard by the District Court (Daniels, J.) on

January 20, 2011.  The appeal (No. 10 Civ. 7311) is *sub judice*.

## ARGUMENT

### I.    THE COURT SHOULD NOT APPROVE THE SETTLEMENT AT THIS TIME

8.      The viability of the Settlement turns largely upon whether the Recognition Order

is ultimately reversed or affirmed on appeal.  Among other things, the Settlement assigns to the

Trustee Sentry's claims against its management (which are also among the claims asserted in the

Derivative Action).[3]  It also provides that the Liquidators may retain recoveries obtained from

claims against Sentry's service providers (including PWC and Citco), subject to the sharing of

recoveries with the Trustee under certain circumstances.[4]  The Derivative Action also asserts

claims against PWC and Citco.

9.      Additionally, the Settlement provides that, for claims brought by the Liquidators

against redeemers -- including claims brought in New York -- the Liquidators shall share

recoveries with the Trustee.[5]

---

[3] Settlement Agreement ¶ 5.  The Settlement Agreement provides that the Trustee shall pay the Liquidators 15% of recoveries from management claims in excess of $200 million. *Id.*

[4] Settlement Agreement ¶ 6.

[5] Settlement Agreement ¶ 4.

10.    To date, the Liquidators have filed in this Court 209 adversary proceedings against redeemers, seeking over $5.79 billion. *See In re Fairfield Sentry Ltd.,* Order dated May 23, 2011, at 6 (Dkt. No. 421 in Case No. 10-13164).  But those lawsuits necessarily would be nullified if the Recognition Order is not ultimately affirmed. *See* 11 U.S.C. § 1509(b); *Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, No. 09 Civ. 9021, 2010 U.S. Dist. LEXIS 42216, at *14-15 (S.D.N.Y. Apr. 28, 2010).

11.    Similarly, the propriety of the Court's stay of the Derivative Action depends upon the correctness of its Recognition Order. *See Reserve Int'l Liquidity Fund*, 2010 U.S. Dist. LEXIS 42216, at *15-16.  If the Recognition Order is not ultimately affirmed, the stay would be lifted.  But in the meantime, the Liquidators and the Trustee might pursue actions adverse to the Derivative Action (such as attempting to settle claims asserted in the Derivative Action), thereby prejudicing Objectors and the Derivative Action.[6]

12.    Because the viability of the Settlement is inextricably tied to the outcome of the appeal of the Recognition Order, the Court should not approve the Settlement at this time, and should defer any approval pending disposition of the appeal.

---

[6] Objectors have standing to object to the Settlement, since approval of the Settlement could potentially prejudice them and the Derivative Action. *See Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993); *In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992).

## II. ALTERNATIVELY, THE COURT SHOULD STAY ANY APPROVAL ORDER PENDING DISPOSITION OF THE APPEAL OF THE RECOGNITION ORDER

13.     In the alternative, Objectors move, pursuant to Bankruptcy Rule 8005, for entry of a stay of any order approving the Settlement, pending completion of appeals from the Recognition Order.[7]

14.     In determining whether to grant a stay, courts typically consider the following four factors: (i) whether the movant has established "a substantial possibility, although less than a likelihood, of success on appeal," (ii) whether the movant "will suffer irreparable injury absent a stay," (iii) whether a party will suffer "substantial injury if a stay is issued," and (iv) the public interests. *In re Calpine Corp.*, No. 05-60200 (BRL), 2008 Bankr. LEXIS 217, at *10 (Bankr. S.D.N.Y. Jan. 24, 2008) (Lifland, J.) (citing cases).

15.     "[T]he Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a *balancing of factors* that must be weighed." *In re Adelphia Comm. Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007) (citations omitted, emphasis supplied); *see Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) ("'The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay. Simply stated, more of one excuses less of the other.'") (citation omitted); *but see In re Calpine*, 2008 Bankr. LEXIS 217, at *11 (citing cases supporting alternative test requiring satisfaction of each of the four factors, but not deciding which test applies).

16.     In this case, however, the proposed stay would remain in effect pending determination of the appeal of the Recognition Order -- *not* the appeal (if any) from any order

---

[7] Rule 8005 provides, in pertinent part, that "[a] motion for a stay of the judgment, order, or decree of a bankruptcy judge … or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." *See* Fed. R. Bankr. P. 8005.

approving the Settlement.  Because the Recognition Order has already been appealed to the

District Court, and briefing and oral argument on the appeal have already been concluded, the

delay occasioned by the stay would likely be much shorter than any delay related to a stay of any

order approving the Settlement.  Thus, the Court should employ a relaxed standard for evaluating

a stay.

17.     As shown below, the balancing of the relevant factors favors a stay here.  A stay

also is warranted even if the Objectors were required to satisfy each of the four factors.

### A.     Substantial Possibility of Success

18.     This Court previously overruled the objection to the Chapter 15 Petition.

Nonetheless, Objectors respectfully submit that there is a substantial possibility that they will

ultimately prevail on the appeal.  Objectors submit that Sentry, at all relevant times, maintained

its COMI outside the BVI (and, in particular, in the U.S.).  *See* 11 U.S.C. § 1517(b)(1).  Among

other things, the record shows that:

- Sentry was managed from Fairfield Greenwich Group's offices in New York;

- Sentry's business activity principally involved investing with BLMIS in New York;

- Sentry's principal assets -- including its hundreds of claims against redeemers -- are largely outside the BVI (and are in New York);

- Sentry's principal liability -- the Trustee's claim against Sentry -- is pending in New York, not the BVI;

- Sentry has held relatively little cash in the BVI;

- Sentry's charter significantly restricts activity in the BVI;

- Sentry's contracts largely invoke New York law; and

- Few Sentry shareholders are in the BVI.

19.     Moreover, Sentry has not maintained an "establishment" in the BVI, and thus non-main recognition is unavailable under 11 U.S.C. § 1517(b)(2).

20.     The fact that Sentry's liquidation proceeding is pending in the BVI does not suffice to create a COMI or establishment there. Indeed, to permit Chapter 15 recognition on the basis of such activities would render Chapter 15 meaningless, as it would conflate the finding of a COMI or establishment in the foreign jurisdiction with the existence of the foreign proceeding itself. *See Lavie v. Ran*, 607 F.3d 1017, 1028 (5th Cir. 2010) ("[I]f Ran's bankruptcy proceeding and associated debts, alone, could suffice to demonstrate an establishment, this would render the framework of Chapter 15 meaningless."); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 338 (S.D.N.Y. 2008) ("It is also alleged that as Cayman Island incorporated companies, the Funds are subject to Cayman Islands tax law and 'required' to be wound up in the Cayman Islands and that upon appointment of the joint provisional liquidators, the powers of the board of directors ceased and the control of the Funds was transferred to Cayman Islands.... *These allegations do not constitute substantive economic activity in the Cayman Islands*.") (emphasis supplied).

21.     Objectors have also shown that the public policy exception under Chapter 15, 11 U.S.C. § 1506, precludes any recognition, due, *inter alia*, to the fact that the BVI court proceedings have been conducted in secrecy. Moreover, the Liquidators failed to demonstrate any justification for the secrecy.[8]

---

[8] "In this country, courts have recognized a strong presumption of public access to court records." *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994) (citation omitted); *see also United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("The common law right of public access to judicial documents is said to predate the Constitution.") (citation omitted). Indeed, the presumption of pubic access has been explicitly incorporated into the U.S. Bankruptcy Code.

*footnote continued*

### B.    Irreparable Injury

22.    The absence of a stay would result in irreparable injury to Objectors and Sentry.

Under the Settlement, the Liquidators would be permitted to pursue claims (like those already

asserted in the Derivative Action) against PWC and Citco.  The Liquidators' ability to maximize

the value of those claims (whether by litigated judgment or settlement), however, is substantially

compromised for several reasons.  That problem, in turn, could severely prejudice Objectors and

the Derivative Action.

23.    The problems confronting the claims in the hands of the Liquidators are

substantial.  First, in May 2009 -- prior to the commencement of the foreign proceeding -- Sentry

filed a New York lawsuit (the "Direct Action") against its management (including Fairfield

Greenwich Group), but that suit asserted no claims against PWC or Citco.  *See* Dkt. No. 1, Case

No. 10-AP-3800 (Bankr. S.D.N.Y.).[9]  Thus, both  PWC and Citco likely would argue that the

statute of limitations had run (at least in part) with respect to claims in the hands of the

Liquidators.

24.    Second, PWC and Citco likely would argue that the Liquidators have no standing

to assert claims against them.  *See Picard v. HSBC Bank PLC*, No. 11 Civ. 763, 2011 U.S. Dist.

LEXIS 44126, at *8-14 (S.D.N.Y. Apr. 25, 2011) (Rakoff, J.);[10] *see also Shearson Lehman*

---

*See* 11 U.S.C. § 107(a).  Here, the wholesale secrecy of the BVI Proceeding is repugnant to
deeply-rooted U.S. public policy and constitutional values.

[9] The Direct Action originally was filed in New York Supreme Court, and later removed to the
District Court, which referred it to this Court.  *See* Order dated May 23, 2011, at 7-8 (Dkt. No.
421 in Case No. 10-13164) (describing history).

[10] *See generally id.* at *10-11 ("the degree to which [the in pari delicto] defense may deprive
[Trustee Picard] of standing is a matter of federal law and largely undeveloped federal law at
that.") (citing *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 459 n.3 (2010)).

*Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991); *Hirsch v. Arthur Andersen & Co.*, 72

F.3d 1085, 1093-95 (2d Cir. 1995) (applying *Wagoner* to Ponzi scheme).

25.     Although the Liquidators presumably would challenge the defenses related to the

statute of limitations and standing, the outcome of those challenges is uncertain. Even in a

settlement context, such defenses could compromise the Liquidators' bargaining position, and

preclude the Liquidators from obtaining maximum value for those claims.

26.     In the event that the Liquidators purported to settle claims against PWC and Citco

prior to a ruling on the pending appeal of the Recognition Order, the settlement likely would be

for far less than maximum value, given the problems described above. The net recoveries to

Sentry (*i.e.*, the amounts left over after the proceeds are shared with the Trustee) could be even

less. Then, if the stay of the Derivative Action were lifted (following an appellate reversal of the

Recognition Order), PWC and Citco would contend that their settlement released the claims

against them, as asserted in the Derivative Action. If that position were ultimately sustained, the

result is the same -- Sentry will end up with far less than maximum recoveries from PWC and

Citco. This constitutes irreparable injury.

27.     The Settlement Agreement also provides for the "unconditional[] and

irrevocabl[e]" assignment to the Trustee of Sentry's claims against management; the Trustee, in

turn, would share certain recoveries from management with Sentry. *See* Settlement Agreement ¶

5. According to Sentry's own pleadings, the value of those claims exceeds $919 million.[11] But

the Southern District's recent decisions in *Picard v. HSBC Bank* and *Picard v. JPMorgan* raise

---

[11] *See* Notice of Removal at ¶ 1, & Verified Complaint (Exh. B to Notice of Removal) at ¶ 1
(filed in Dkt. No. 1, Case No. 10-AP-3800 (Bankr. S.D.N.Y.)). Sentry's Verified Complaint
asserts claims against management, *inter alia*, for breach of fiduciary duty (First Claim), breach
of contract (Second Claim), unjust enrichment (Third Claim); and rescission of investment
management agreements based on mutual mistake (Fifth Claim).

serious questions regarding the assignablity of such claims. *See HSBC*, 2011 U.S. Dist. LEXIS 44126, at *16 ("[I]t is far from clear that SIPA permits as broad a theory of assignee standing as is being asserted by the Trustee in this case. Indeed, at least four courts have concluded that SIPA only permits assignments of customers' net equity claims and not claims against third parties.") (citing authorities); *Picard v. JPMorgan Chase & Co.*, No. 11 Civ. 913, slip op. at 12 (Exh. A hereto) (S.D.N.Y. May 23, 2011) ("it is not clear that a SIPA trustee may sue parties other than the liquidated estate as an assignee of the estate's customers") (McMahon, J.) (citing authorities). Whether the Trustee has standing to assert third-party claims likely will be addressed shortly by the District Court. *See, e.g., HSBC*, 2011 U.S. Dist. LEXIS 44126, at *19.

28.    If the assignment of Sentry's claims against management is not valid, then the value of those claims could be altogether destroyed. Adding insult to injury, even if the stay of the Derivative Action were ultimately lifted by an appellate court's reversal of the Recognition Order, management would contend that the Objectors no longer could assert those claims in the Derivative Action (claiming that the claims were no longer owned by Sentry). This, too, threatens irreparable injury.

29.    Finally, there is the risk that, absent a stay, the transactions contemplated by the Settlement would proceed to the point where an appellate court might rule that one or more issues on appeal have become moot. One scenario illustrating this risk would be where the Liquidators obtained recoveries against PWC or Citco and shared those recoveries with the Trustee, who then distributed the proceeds to BLMIS customers. This also shows irreparable injury. *See, e.g., In re Adelphia*, 361 B.R. at 347-48 ("[L]oss of appellate rights is a 'quintessential form of prejudice.' Thus, where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied.")

(emphasis in original, citing authorities); *In re St. Johnsbury Trucking Co.*, 185 B.R. 687, 689-90

(S.D.N.Y. 1995); *In re Advanced Mining Sys., Inc.*, 173 B.R. 467, 469 (S.D.N.Y. 1994).

### C.    No Substantial Injury to Others

30.    The proposed stay would not harm other persons, including the Liquidators and

the Trustee.  As noted above, the Settlement contains certain sharing provisions under which

certain recoveries obtained by the Liquidators from PWC, Citco and redeemers would be shared

with the Trustee, and certain recoveries obtained by the Trustee from Sentry's management

would be shared with the Liquidators.  Both the Trustee and the Liquidators, as well as persons

who might directly or indirectly benefit from any recoveries obtained by them, are ill-served by

the proposed Settlement, which effectively precludes them from obtaining maximum recoveries.

31.    It is also noteworthy that, following the Court's issuance of the Recognition

Order, the Liquidators filed in this Court over 200 suits against so-called "redeemers."  Those

suits, however, are necessarily premised on the correctness of the Recognition Order.  Only the

appellate process will determine the correctness of that Order.

32.    Additionally, in his own lawsuit against Sentry's management, the Trustee has

alleged that management engaged in fraud.  *See, e.g.*, *Picard v. Fairfield Sentry Ltd.*, No. 09-AP-

01239 (Bankr. S.D.N.Y.), Dkt. No. 23 at ¶ 2 (alleging that defendants "worked in conjunction

with BLMIS and Madoff to commit, and exponentially expand, the single largest financial fraud

in history."); ¶ 749 (individual defendants "actively and substantially assisted Madoff in

perpetrating the fraud").  These allegations raise potential standing issues under the *Wagoner*

doctrine, thereby compromising the Trustee's ability to maximize any recovery (through

litigation or settlement) against management.  *See Shearson Lehman Hutton, Inc. v. Wagoner*,

944 F.2d at 118.  Those standing issues, in turn, could severely limit any recovery that would

then be allocated to Sentry under the Settlement's sharing provision. *See* Settlement Agreement ¶ 5.

33.    The foregoing problems loom large in comparison to any speculative harm from a stay. A stay, however, would not prevent the Liquidators or the Trustee from litigating their previously-asserted claims against management and others. Litigation of those claims could be continued, even with a stay in force.

34.    Similarly, the Trustee has commenced claims against JP Morgan Chase & Co., and under the Settlement, recoveries from those claims would be shared with the Liquidators. *See* Settlement Agreement ¶ 10.[12] The viability of those claims, however, is uncertain. *See Picard v. JPMorgan,* slip op. at 10 (Exh. A hereto) ("whether SLUSA preempts the Trustee's action ... is a novel question"); *see also Picard v. HSBC Bank*, 2011 U.S. Dist. LEXIS 44126, at *17 (identifying "threshold issue" of whether Trustee's action "is preempted by SLUSA"), *id.* at *19 ("whether the Trustee has standing to pursue his common law claims" against HSBC is a "difficult federal question[]"). Nonetheless, a stay would not prevent the Trustee from prosecuting those claims.

35.    Likewise, a stay would not prevent the Liquidators or the Trustee from litigating their pending claims against Sentry's redeemers or transferees. *See generally* Settlement Agreement ¶¶ 4, 7.

---

[12] According to the Settlement Agreement (at ¶ 10), those claims originally were filed in this Court, and "following decision on a motion to withdraw the reference, are currently pending in the United States District Court for the Southern District of New York." *See generally Picard v. JPMorgan* (Exh. A hereto) (withdrawing reference).

36.     A stay would delay the Liquidators' payment of $24 million to the Trustee (otherwise due on the "effective date" of the Settlement).  *See* Settlement Agreement ¶¶ 2, 18, 20.  Such delay, however, does not constitute meaningful harm to the Trustee.

### D.     Public Interest

37.     There is a "strong public interest in appellate review ...." *In re St. Johnsbury*, 185 B.R. at 691.  That public interest is best served by a stay pending appeal.

38.     The public interest in a stay is especially compelling in this case, given the fact that the appeal itself addresses a fundamental public policy issue, namely, whether the Recognition Order is "manifestly contrary to the public policy of the United States" under 11 U.S.C. § 1506.  The appeal also addresses other critical issues raised by Chapter 15 -- but not yet fully resolved by the appellate courts (including the Second Circuit and the Supreme Court).  A stay thus will promote the public interest by enabling appellate review of important issues raised by the appeal.

39.     A stay also will help to maximize the value of the claims at issue under the Settlement, including claims against PWC and Citco.  There is a compelling public interest in enabling those claims to be resolved at the maximum levels.

### E.     Balancing of Interests

40.     Objectors have satisfied each of the four stay factors, thus warranting a stay. Additionally, a stay is warranted under the "balancing" test.  Given the merits of Objectors' objection to the Recognition Order, the potential harm to the Objectors and the appellate process from consummation of the Settlement, the lack of harm from a stay, and the inability of the Liquidators to maximize the value of claims against PWC and Citco, the balance of interests tips decidedly in favor of a stay.

## CONCLUSION

41.     The Court should not approve the Settlement at this time.  Alternatively, if the

Court approves the Settlement, the Court should stay the ruling pending disposition of the appeal

from the Recognition Order.


Dated:  May 26, 2011                          Respectfully submitted,

                                              **MILBERG LLP**

                                              By:  /s/ Robert A. Wallner
                                                      Robert A. Wallner
                                              Kent A. Bronson
                                              Kristi Stahnke McGregor
                                              One Pennsylvania Plaza
                                              New York, New York 10119
                                              Tel.: (212) 594-5300
                                              Fax:  (212) 868-1229
                                              rwallner@milberg.com
                                              kbronson@milberg.com
                                              kmcgregor@milberg.com

                                              **SEEGER WEISS LLP**
                                              Stephen A. Weiss
                                              Christopher M. Van de Kieft
                                              Parvin Aminolroaya
                                              One William Street
                                              New York, New York 10004
                                              Tel.: (212) 584-0700
                                              Fax: (212) 584-0799
                                              sweiss@seegerweiss.com
                                              cvandekieft@seegerweiss.com
                                              paminolroaya@seegerweiss.com

                                              ***Attorneys for Morning Mist Holdings Limited and
                                              Miguel Lomeli***


DOCS\556877v1

14

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

SECURITIES INVESTOR PROTECTION
CORPORATION,

                              Plaintiff-Applicant,            11 Civ. 0913 (CM)

-against-

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                              Defendant.

————————————————————————x

In re:

BERNARD L. MADOFF,

                              Debtor.

————————————————————————x

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                              Plaintiff,

-against-

JPMORGAN CHASE & CO., JPMORGAN CHASE
BANK, N.A., J.P. MORGAN SECURITIES LLC, and
J.P. MORGAN SECURITIES LTD.,

                              Defendants.

————————————————————————x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___5/23/11___

1

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION
TO WITHDRAW THE REFERENCE FROM THE BANKRUPTCY COURT.

McMahon, J.

JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and

J.P. Morgan Securities Ltd. (collectively, "JPMorgan") have moved for an order under 28 U.S.C.

§ 157(d) withdrawing the reference of this action to the bankruptcy court. Irving H. Picard

("Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff

Investment Securities LLC ("BMIS") and the estate of Bernard L. Madoff, opposes JPMorgan's

motion. For the reasons discussed, JPMorgan's motion is granted and the reference of this action

to the bankruptcy court is withdrawn.

## I. BACKGROUND

This action arises from the now-infamous Ponzi scheme orchestrated by Bernard L.

Madoff. JPMorgan was BMIS's primary banker for over twenty years and, in essence, the

Trustee's action alleges that JPMorgan turned a "blind eye" to evidence of Madoff's fraud and

was complicit in that fraud. (Compl. ¶¶ 1-2.) The Trustee seeks to recover approximately $5.4

billion in damages suffered by BMIS's customers and approximately $500 million in fees and

profits collected by JPMorgan. (Id. ¶¶ 277-78, 443, 458, 482.)

A. Madoff's Ponzi scheme and the SIPA liquidation

On December 11, 2008, Madoff was charged with operating a multi-billion-dollar

securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5. (Id.

¶ 48; see also United States v. Madoff, Case No. 09-CR-213.) On the same day, the Securities

and Exchange Commission ("SEC") also filed a civil complaint in this Court against Madoff and

BMIS, alleging that Madoff had engaged in fraud through one of BMIS's business units—the

investment advisory unit. (Compl. ¶ 48.)

2

On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") filed an application in this Court seeking to commence a liquidation proceeding for BMIS under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78eee(a)(4)(B). (Id. ¶ 49.) This Court granted SIPC's application, and an order was entered removing the case to the Bankruptcy Court for the Southern District of New York and appointing Picard as the Trustee for the liquidation proceeding of BMIS. (Id. ¶ 50.) The SIPA liquidation of BMIS is being administered in the bankruptcy court by the Honorable Burton R. Lifland. (See SIPC v. Bernard L. Madoff Inv. Sec. LLC, Case No. 08-01789.)

B. JPMorgan's involvement with Madoff

Since 1986, BMIS maintained bank accounts at JPMorgan or its predecessor banks. (Compl. ¶ 178.) BMIS deposited customer investments into a so-called "703 Account" at JPMorgan and transferred money out of that account as part of the scheme. (Id. ¶¶ 2, 173, 178.) JPMorgan also made loans to BMIS and received fees for providing its commercial banking services to BMIS. In 2005 and 2006, JPMorgan made two secured loans totaling $145 million to BMIS and collected $3.48 million in interest before the loans were repaid. (Id. ¶¶ 256-66.) The Trustee also alleges that during the six-year period prior to BMIS's bankruptcy, JPMorgan received $597,000 in fee payments from BMIS. (Id. ¶¶ 292-347, Ex. A.)

The Trustee also alleges that in 2006, J.P. Morgan Securities Ltd. invested approximately $338 million in four Madoff "feeder funds." According to the Trustee, JPMorgan redeemed most of its BMIS-related investments, approximately $276 million, before Madoff's arrest on December 11, 2008. (Id. ¶ 169.) On that day, JPMorgan had only $35 million in "risk exposure" to BMIS funds. (Id.)

3

C. The Trustee's lawsuit against JPMorgan

On December 2, 2010, Irving H. Picard, as Trustee for the liquidation of BMIS, commenced this action against JPMorgan in the United States Bankruptcy Court for the Southern District of New York. The complaint asserts twenty-one causes of action against JPMorgan. The first sixteen causes of action are "clawback" claims that seek to recover payments made by BMIS to JPMorgan before the fraud was revealed. (Compl. ¶¶ 292-429 (Counts I-XVI).) These claims seek to recover $145 million in loan repayments, $3.48 million in interest payments on the loan, $597,000 in banking fees, and $276 million in redemptions made by JPMorgan from Madoff feeder funds—for a total of $425 million. The Trustee alleges that this money is "customer property" as defined by SIPA, 15 U.S.C. §78lll(4). (Id. ¶17.) The remaining five causes of action allege non-bankruptcy claims based on theories of aiding and abetting fraud (Count Seventeen), aiding and abetting breach of fiduciary duty (Count Eighteen), conversion (Count Nineteen), unjust enrichment (Count Twenty) and fraud on the regulator (Count Twenty-One). Based on these claims, the Trustee seeks to recover an additional $5.4 billion in damages.

The Trustee's complaint alleges that JPMorgan was "at the center of [Madoff's] fraud, and thoroughly complicit in it." (Id. ¶ 1.) According to the Trustee, JPMorgan stood idly by as billions of dollars flowed between BMIS's "703 Account" and various investors, feeder funds and banks, and JPMorgan suppressed warnings triggered by the large transactions occurring in the 703 Account. (Id. ¶ 2.) Specifically, the Trustee provides numerous examples of "red flags" that JPMorgan, as BMIS's long-time banker, allegedly ignored: (1) JPMorgan could not identify, and Madoff would not provide any information, about BMIS's purported over-the-counter options counterparties (id. ¶¶ 5, 101-02, 134, 146); (2) Madoff would not provide details with regards to his split strike conversion strategy (id. ¶¶ 5, 9, 84, 133, 140, 146); (3) transactions

4

taking place in the 703 Account did not coincide with a legitimate enterprise, and could only be

explained by fraud (id. ¶¶ 224-37, 434); and (4) highly suspicious activity was occurring in the

703 Account, such as large repetitive transactions, up and down spikes in the value and volume

of transactions, frequent transactions with offshore entities, regular use of hand-written checks

for millions of dollars, and suspicious activity between the 703 Account and clients of

JPMorgan's private bank (id. ¶¶ 224-37, 251-73, 434).

JPMorgan filed a motion on February 9, 2011, seeking to withdraw the reference of the

Trustee's action to the bankruptcy court. The Trustee filed its opposition on March 30, 2011.

The Court heard oral argument on May 4, 2011. At the May 4 oral argument, the Court

announced its decision to grant JPMorgan's motion and withdraw the reference from the

bankruptcy court. The reasons for the Court's ruling are explained below.

## II. DISCUSSION

A. <u>The standard for withdrawal of the reference</u>

JPMorgan moves this Court under 28 U.S.C. § 157(d) for withdrawal of the reference

from the bankruptcy court. Section 157(d) provides for withdrawal of the reference in two

instances:

> The district court may withdraw, in whole or in part, any case or proceeding
> referred under this section, on its own motion or on timely motion of any party,
> for cause shown. The district court shall, on timely motion of a party, so
> withdraw a proceeding if the court determines that resolution of the proceeding
> requires consideration of both title 11 and other laws of the United States
> regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The first sentence in Section 157(d) provides for "permissive" withdrawal,

or withdrawal for cause, while the second sentence provides for "mandatory" withdrawal.

1.  Mandatory withdrawal

The mandatory withdrawal provision of Section 157(d) has been construed "narrowly" to apply only in cases "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990); see also Bear, Stearns Secs. Corp. v. Gredd, 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001). Consideration is "substantial and material" when the case requires the bankruptcy judge to make a "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991); In re Dana Corp., 379 B.R. 449, 453 (S.D.N.Y. 2007). Section 157(d) is meant to "assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code." Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (quoting Eastern Airlines, Inc. v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.), 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)).

"Where matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met." Chemtura Corp. v. U.S., 2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010) (quoting In re Manhattan Inv. Fund Ltd., 343 B.R. 63, 67 (S.D.N.Y.2006) (citations omitted)). Nonetheless, in determining whether withdrawal of the reference is mandatory, this Court need not evaluate the merits of the parties' claims; rather, it is sufficient for the Court to determine that the proceeding will involve consideration of federal non-bankruptcy law. Gredd, 2001 WL 840187, at *4; Chemtura, 2010 WL 1379752, at *2.

6

B. <u>JPMorgan has satisfied the standard for mandatory withdrawal of the reference under
Section 157(d).</u>

In support of its motion to withdraw the reference, JPMorgan argues that the Trustee's

complaint raises issues of first impression under federal securities law—namely, whether the

Trustee has standing to assert his common-law claims on behalf of BMIS customers and whether

the Trustee's common-law claims are preempted by the Securities Litigation Uniform Standards

Act of 1998 ("SLUSA"). At oral argument, the Trustee conceded that permissive withdrawal of

the reference was appropriate in light of Judge Rakoff's decision in <u>Picard v. HSBC Bank PLC</u>,

2011 WL 1544494 (S.D.N.Y. Apr. 25, 2011). (<u>See</u> 5/4/11 H'rg Tr. 15:18-22.) Further, the

SLUSA preemption and SIPA standing questions raised by the Trustee's complaint will require

the bankruptcy court to engage in significant consideration of federal non-bankruptcy law.

Therefore, the requirement for mandatory withdrawal of the reference under Section 157(d) is

also satisfied.

1. <u>Whether SLUSA preempts the Trustee's common-law claims will require the bankruptcy
court to engage in significant interpretation of federal non-bankruptcy law.</u>

Withdrawal of the reference is mandated because the Trustee's action will require the

bankruptcy court to interpret a federal statute outside of Title 11—namely, SLUSA.

SLUSA was enacted in order to prevent securities plaintiffs from using the class-action

vehicle to prosecute state-law securities claims in state courts to avoid the pleading requirements

of the Private Securities Litigation Reform Act ("PSLRA") of 1995, 15 U.S.C. §§ 77z-1, 78u-4.

In pertinent part, SLUSA provides that:

> No covered class action based upon the statutory or common law of any State or
> subdivision thereof may be maintained in any State or Federal court by any
> private party alleging-

7

(A) a misrepresentation or omission of a material fact in connection with the
purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative device in connection
with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

If a state-law class action falls under either category, SLUSA preempts the action and
confers upon the federal court exclusive jurisdiction. See 15 U.S.C. § 78bb(f)(2). "SLUSA was
intended to completely preempt the field of certain types of securities class actions by essentially
converting a state law claim into a federal claim and creating federal jurisdiction and venue for
specified types of state securities fraud claims." Spielman v. Merrill Lynch, Pierce, Fenner &
Smith, Inc., 332 F.3d 116, 123 (2d Cir. 2003).

Four conditions must be satisfied to trigger SLUSA's removal and preemption
provisions:  (1) the underling suit must be a "covered class action;" (2) the action must be based
on state or local law; (3) the action must concern a "covered security;" and (4) the defendant
must have misrepresented or omitted a material fact or employed a manipulative device or
contrivance "in connection with the purchase or sale" of that security. See Merrill Lynch, Pierce,
Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 81-82 (2006).

At issue here is the term "covered class action," which SLUSA defines, in relevant part,
as: "any single lawsuit in which . . . damages are sought on behalf of more than 50 persons or
prospective class members . . . ." 15 U.S.C. § 78bb(f)(5)(B)(i).  The statute provides that, for
purposes of this definition, "a corporation, investment company, pension plan, partnership, or
other entity, shall be treated as one person or prospective class member, but only if the entity is
not established for the purpose of participating in the action." 15 U.S.C. § 78bb(f)(5)(D).

8

JPMorgan argues that withdrawal of the reference is necessary because whether the Trustee's suit is a "covered class action" under SLUSA will require substantial and material interpretation of non-bankruptcy federal law. Conversely, the Trustee argues that his action is not a "covered class action" because the Trustee is an "entity" under Section 78bb(f)(5)(D) and therefore treated as one person.

The Trustee misses the point: the issue is whether seeking damages "on behalf of more than 50 persons or prospective class members" triggers SLUSA preemption, even if the claims are brought by a single entity—in this case, a SIPA trustee.

Whether SLUSA applies when "the original owners of the claim" number more than 50—regardless of whether the claims are asserted by one entity—is an open question in this Circuit. None of the cases cited by the Trustee furthers his argument. In Smith v. Arthur Andersen LLP, 421 F.3d 989, 1003 (9th Cir. 2005), for instance, the claims were asserted by a bankruptcy trustee on behalf of the bankrupt estate (and not, as is the case here, on behalf of customers of the estate). In LaSala v. UBS, AG, 510 F. Supp. 2d 213, 237 (S.D.N.Y. 2007), the Court concluded that the claims asserted by the trustee (asserted on behalf of a trust that was assigned the claims of former shareholders of the bankrupt entity) were preempted by SLUSA. In reaching its conclusion, the Court explained that "SLUSA's definition of a covered class action does not concern itself with the nature of the claim being advanced but rather with the nature of the persons or entities on whose behalf damages are being sought . . . . Here, since damages are indisputably being sought on behalf of beneficiaries of the Trust numbering more than 50 persons, the Trust is a covered class action unless the entity exception applies." Id. at 236.

9

The Trustee also cites In re Recoton Corp., 2004 WL 1497570 (S.D.N.Y. July 1, 2004),

to support his argument that withdrawal of the reference is unnecessary because straightforward

application of SLUSA is within the bankruptcy court's competency.    In that case, a committee of

unsecured creditors sought discovery from former officers and directors of the bankrupt

corporation under Bankruptcy Rule 2004.    Id. at *1.    The former officers and directors argued

that allowing discovery under Rule 2004 was in conflict with Section 78u-4 of SLUSA, which

allows a court to "stay discovery proceedings in any private action in State court."    15 U.S.C. §

78u-4(b)(3)(D).    The bankruptcy court concluded that the committee's discovery motion was not

governed by or in conflict with federal securities law, because a stay of discovery under SLUSA

applies only to actions in state court, "and the instant Chapter 11 cases are decidedly not pending

in State court."    In re Recoton, 307 B.R. 751, 757-58 (Bankr. S.D.N.Y. 2004).    There is no

ambiguity in the express terms of Section 78u-4 or in its application to the bankruptcy

proceeding in In re Recoton.    By its express terms, SLUSA provides for a stay of discovery in an

action pending in state court and there was no pending state-court action in In re Recoton.    Thus,

application of SLUSA in that case was straightforward.    By contrast, whether SLUSA preempts

the Trustee's action—because even if the claims are asserted by one entity they are for damages

sought by thousands of BMIS customers—is a novel question.

Further, although the Trustee argues that JPMorgan's preemption argument is frivolous,

at least one court has concluded that a claim belonging to 50 or more persons could be

preempted under SLUSA even if a single entity asserts the claim in an action.    In LaSala v.

Bordier et Cie, 519 F.3d 121 (3d Cir. 2008), the Third Circuit distinguished between claims

belonging to the debtor and claims belonging to the purchasers of the debtor's stock.    As to

claims owned by the purchasers and assigned to a state-law trust created for purposes of pursuing

10

those claims, the court explained that such claims "likely are brought to recover damages 'on

behalf of more than 50 persons' so they would seek to take the form of a covered class action."

Id. at 137-38 (citing 15 U.S.C. § 78bb(f)(5)(B)(i)(I) (internal citations omitted)). The Third

Circuit explained that "the phrase 'on behalf of 50 or more persons' seems to refer to someone

bringing a claim on behalf of 50 or more injured persons. In other words, the phrase refers to the

assignors of a claim, not to the assignee . . . ." Id. at 134.

Accordingly, because the Trustee's common-law claims are on behalf of BMIS

customers, and not the BMIS estate, determining whether the Trustee's action is preempted by

SLUSA requires substantial interpretation of federal non-bankruptcy law. Withdrawal of the

reference is therefore mandated under Section 157(d).

2. Whether the Trustee has standing to assert his common-law claims will require the
   bankruptcy court to engage in significant interpretation of federal non-bankruptcy law.

It is well-established that Title 11 generally does not confer standing on a bankruptcy

trustee to bring claims on behalf of the bankrupt estate's creditors. See Caplin v. Marine

Midland Grace Trust Co. of New York, 406 U.S. 416, 428-34 (1972). A SIPA trustee may only

exercise the powers of a bankruptcy trustee with the addition of those powers set forth in SIPA.

See 15 U.S.C. § 78fff-1(a). The Trustee therefore asserts three grounds for standing to bring his

common-law claims in Counts Seventeen through Twenty-One: bailee of customer property,

subrogee of SPIC's subrogation rights, and assignee of customers' claims.

Relying on Redington v. Touche Ross & Co., 592 F.2d 617 (2d Cir. 1978), the Trustee

argues that he has standing to assert his common-law claims. As Judge Rakoff explained in

HSBC Bank, the Supreme Court's decisions in Touche Ross & Co. v. Redington, 442 U.S. 560

(1979), and Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992), cast doubt on

11

Redington's continued viability and on the Trustee's basis for standing, either as a bailee of

customer property or as a subrogee of SPIC's subrogation rights. Picard v. HSBC Bank PLC,

2011 WL 1544494, at **3-4 (S.D.N.Y. Apr. 25, 2011). A bankruptcy court is not the forum for

deciding whether a decision of the Supreme Court effectively overruled a Second Circuit

decision.

Moreover, because it is not clear that a SIPA trustee may sue parties other than the

liquidated estate as an assignee of the estate's customers, determining if the Trustee has standing

as an assignee of BMIS customers will require the bankruptcy court to engage in substantial

interpretation of SIPA.

In Mishkin v. Peat, Marwick, Mitchell & Co., 744 F. Supp. 531, 554 (S.D.N.Y. 1990),

for instance, the Court concluded that SIPA only permits assignments of customers' net-equity

claims—meaning claims against the failed broker-dealer—and not claims against third parties.

Similarly, in Securities Investor Protection Corp. v. BDO Seidman, LLP, 49 F. Supp. 2d 644

(S.D.N.Y. 1999), the Court, discussing Section 78fff-1(a) of SIPA, expressed doubts as to

whether a SIPA trustee could rely on that section to obtain assignment of customer claims:

> I cannot agree that Section 78fff-2(b), which deals generally with payments to
> customers in a liquidation proceeding, should be construed so broadly as to permit
> standing. That section states that payments made "pursuant to this subsection
> may be conditioned upon the trustee requiring the claimants to execute . . .
> supporting affidavits, releases and assignments." When read in the entire context
> of Section 78fff, it is clear that those assignments relate to payments for net equity
> claims. And, as stated above, that does not extend the Trustee's authority to bring
> suit beyond the brokerage firm-customer relationship to include claims against a
> third party.

Id. at 654 n.7 (internal citations omitted). Moreover, bankruptcy courts in this district that have

addressed whether a SIPA trustee has standing as assignee have concluded that "the assignments

authorized by section 78fff–2(b) of SIPA do not extend to all claims of customers against third

12

parties but, rather, only to a customer's net equity claim." In re Park S. Sec., LLC, 326 B.R. 505,

515 (Bankr. S.D.N.Y. 2005); accord Giddens v. D.H. Blair & Co. (In re A.R. Baron & Co., Inc.),

280 B.R. 794, 803 (Bankr. S.D.N.Y. 2002).

    In an attempt to sidestep these cases, the Trustee argues that he has standing as assignee

to assert customer claims against third parties under the Bankruptcy Code (and not SIPA).

Specifically, the Trustee relies on Section 541(a)(7) of the Bankruptcy Code, which states that

the bankruptcy estate includes "[a]ny interest in property that the estate acquires after the

commencement of the case." 11 U.S.C. § 541(a)(7). The Trustee also relies on the Second

Circuit's decision in Bankruptcy Services, Inc. v. Ernst & Young (In re CBI Holding Co.), 529

F.3d 432, 459 (2d Cir. 2008). While In re CBI Holding held that a bankruptcy trustee has

standing to assert claims assigned to him by creditors pursuant to Section 541(a)(7), that case did

not involve a SIPA proceeding or a SIPA trustee.

    Further, the Trustee's argument that SIPA is effectively a bankruptcy statute and,

therefore, interpretation of SIPA does not satisfy the mandatory withdrawal requirement of

Section 157(d), is not persuasive. At oral argument, the Trustee argued that interpretation of

SIPA "is well within the bankruptcy court's expertise" and therefore does not merit mandatory

withdrawal, as Judge Rakoff concluded in HSBC Bank. (See 5/4/11 H'rg T. 16: 2-16.) But

while a SIPA liquidation proceeding may be maintained in the bankruptcy court, and SIPA

incorporates provisions of the Bankruptcy Code, SIPA expressly provides that it is part of the

securities laws and is codified in Title 15, not Title 11. See 15 U.S.C. § 78bbb ("Except as

otherwise provided in this chapter, the provisions of the Securities Exchange Act of 1934 . . .

apply as if [SIPA] constituted an amendment to, and was included as a section of, such Act").

Section 157(d) requires mandatory withdrawal if a proceeding "requires consideration of both

13

title 11 and other laws of the United States . . . ." See 28 U.S.C. § 157(d). Thus, an issue that

requires significant interpretation of SIPA undoubtedly requires consideration of laws other than

Title 11. Regardless of a bankruptcy court's familiarity with a statute outside of Title 11, the

requirements for mandatory withdrawal are satisfied if the proceeding requires consideration of a

law outside of Title 11. Accord HSBC Bank, 2011 WL 1544494, at *2.

C. JPMorgan's motion to withdraw the reference is timely.

The Trustee argues that JPMorgan's motion to withdraw the reference is premature

because it is based on defenses JPMorgan *intends* to raise and therefore the question of whether

this action implicates issues that require withdrawal of the reference is speculative.

Section 157 does not specify a time by when a party must file a motion to withdraw the

reference; rather, the statute requires only that the motion be "timely." 28 U.S.C. § 157(d).

Courts in this Circuit have interpreted timeliness under Section 157 to mean "as soon as possible

after the moving party has notice of the grounds for withdrawing the reference." In re FMI

Forwarding Co., 2005 WL 147298, at *5 (S.D.N.Y. Jan. 24, 2005); M. Fabrikant & Sons, Inc. v.

Long's Jewelers Ltd., 2008 WL 2596322, at *2 (S.D.N.Y. June 26, 2008); Shugrue v. Chem.

Bank, Inc. (In re Ionosphere Clubs, Inc.), 1995 WL 479480, at *3 (S.D.N.Y. Aug. 11, 1995).

Typically, the timeliness issue arises because a court is asked to determine whether the

party moving for withdrawal of the reference has waited too long to file the motion. See e.g.,

Interconnect Tel. Serv., Inc. v. Farren, 59 B.R. 397, 402 (S.D.N.Y. 1986) (withdrawing the

reference even though the motion was made one year after the proceeding had commenced,

discovery had been taken, and the parties had engaged in motion practice); Burger King Corp. v.

B-K of Kansas, Inc., 64 B.R. 728, 730-31 (D. Kan. 1986) (motion to withdraw the reference was

timely even though it was filed 10 months after the proceeding had commenced in the

14

bankruptcy court and after discovery had been taken); see also In re Ionosphere Clubs, Inc., 1995

WL 479480, at *3 (S.D.N.Y. Aug. 11, 1995) (collecting cases). Here, timeliness is not a ground

for denying JPMorgan's motion to withdraw the reference. JPMorgan filed its motion

approximately two months after the Trustee filed its complaint in the bankruptcy court and it is

the Trustee's complaint which gave JPMorgan notice of the grounds for withdrawal of the

reference.

Further, unlike the situation in Enron Corp. v. JP Morgan Sec., Inc. (In re Enron Corp.),

2008 WL 281972, at *6 (S.D.N.Y. Jan. 25, 2008), cited by the Trustee, JPMorgan's motion to

withdraw the reference is not "premised upon an issue that the bankruptcy court may never be

required to consider." If the Trustee's action remains in the bankruptcy court, that court will

have to determine whether the Trustee has standing to assert the claims against JPMorgan on

behalf of BMIS customers and whether the Trustee's state-law claims are preempted by

SLUSA—both questions that will require the bankruptcy court to engage in significant

interpretation of federal non-bankruptcy law.

The determination of timeliness must be made on a case-by-case, fact-specific basis. See

In re Chateaugay, 104 B.R. 622, 623-24 (S.D.N.Y. 1989). Here, judicial economy favors

concluding that JPMorgan's motion is timely because the questions of standing and preemption

can be determined before resources are expended litigating this action in the bankruptcy court.

Moreover, the grounds for withdrawal of the reference are apparent from the face of the

complaint. It is therefore a waste of judicial resources to require JPMorgan to answer the

complaint or file a motion to dismiss in the bankruptcy court before allowing it to move for

withdrawal of the reference.

Accordingly, JPMorgan's motion to withdraw the reference is timely.

15

### III.CONCLUSION

For the reasons discussed, the Court grants Defendants' motion to withdraw the reference

from the bankruptcy court.

Dated:  May 23, 2011

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

16