**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Judy Selby
Email: jselby@bakerlaw.com
Benjamin D. Pergament
Email: bpergament@bakerlaw.com
Michelle Young
Email: myoung@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**THE TRUSTEE'S RESPONSE TO OBJECTION**
**TO MOTION FOR ENTRY OF LITIGATION PROTECTIVE ORDER**

   Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard

L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act,

15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff, by and through his undersigned counsel, hereby submits his response to the sole remaining objection[1] to his Motion for Entry of Litigation Protective Order ("Motion"). In support of the Motion, the Trustee respectfully states as follows:

## I. PRELIMINARY STATEMENT

The Trustee seeks to establish a uniform and fair framework for dealing with discovery materials produced in this vast and complex proceeding. The Trustee has considered and compromised on several of the points raised by the many parties who have filed objections. For example, the Litigation Protective Order no longer abrogates prior confidentiality agreements that the Trustee entered into with various parties. It also now significantly limits the sharing and use of confidential information across cases and among parties.[2] Indeed, since filing the Motion, counsel for the Trustee has conducted negotiations and has made compromises on the Litigation Protective Order that have resulted in all but one of the objections being dropped.[3]

Having bent over backwards to address the objecting parties' concerns, there remains only one substantive area of disagreement on which the Trustee cannot compromise. The Thema, Lagoon and Hermes Funds take issue with Section 4(e) of the Litigation Protective

---

[1] The Trustee hereby responds to the sole remaining objection asserted by Thema Wise Investments Limited, Thema Fund Limited, Lagoon Investment Limited, Hermes International Fund Limited, Thema International Fund PLC (collectively, the "Thema, Lagoon and Hermes Funds" or "Objectors") (*Partial Objection to Trustee's Motion for Entry of a Litigation Protective Order*, ECF No. 3888 and *Amended Partial Objection to Trustee's Motion for Entry of a Litigation Protective Order,* ECF No. 3963).

[2] A copy of the Litigation Protective Order as currently proposed is attached hereto as Exhibit A.

[3] UBS AG ("UBS"), UniCredit S.p.A. ("UniCredit"), JPMorgan Chase & Co., JPMorgan Chase Bank N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMC"), HSBC Bank USA, N.A., HSBC Institutional Trust Services (Bermuda) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Luxembourg) S.A., HSBC Bank plc, and HSBC Holdings (collectively, "HSBC"), Citigroup Global Markets Limited, the Court Appointed Liquidators for Luxalpha Sicav, Luxembourg Investment Fund Sicav and Herald (Lux) Sicav, Notz, Stucki Management (Bermuda) Limited and Plaza Investments International, The Rosenwald Family and Entity Defendants, and The Bank of New York Mellon Corporation have all dropped any objections to the entry of the Litigation Protective Order as currently proposed.

Order, as it, among other things, excludes from the definition of "Confidential" information relating to the identification of BLMIS customers, their transferees, and the details of their withdrawals, redemptions and transfers. However, the Litigation Protective Order's exclusion of information relating to BLMIS customers, accounts and transfers to subsequent transferees is more than reasonable in light of the fact that such information is crucial to the Trustee's ability to locate and recover Customer Property wherever it may lie through additional litigation.

Any assertion by the Objectors that the current Protective Order, entered on February 16, 2010 (the "February 2010 Protective Order"), cannot be modified because of their purported reliance on it is without merit. To the contrary, the Objectors cannot claim to have reasonably believed that the February 2010 Protective Order would be permanent. Indeed, the express language of the February 2010 Protective Order anticipates the potential for modification. Moreover, if need be, the Court can easily find sufficiently compelling need to make the requested modifications reflected in the Litigation Protective Order. The Trustee needs to be able to identify and pursue subsequent transferees of Customer Property without being unreasonably burdened by litigations conducted under seal.

Accordingly, the Court should grant the Trustee's Motion and should enter the Litigation Protective Order.

## II. BACKGROUND

### A. The February 2010 Protective Order

As an initial matter, it would be erroneous to characterize the February 2010 Protective Order as the unilateral creation of the Trustee, when in fact it was the result of extended negotiations and compromises appropriate at the time it was entered. The motion for entry of the February 2010 Protective Order was filed on December 18, 2009. The hearing on the February 2010 Protective Order was originally scheduled for January 14, 2009, but was adjourned three

times until February 4, 2010 so the Trustee could respond to objections filed in response to the proposed February 2010 Protective Order. In the intervening three weeks, the Trustee engaged in extensive discussions with counsel for no fewer than five sets of objecting parties making modifications to the proposed February 2010 Protective Order to address specific concerns. Ultimately, the February 2010 Protective Order was entered on consent and without a good cause hearing before the Court, all parties having dropped their objections.

B.     **Background of Litigation Protective Order**

The Trustee filed his Motion for entry of the Litigation Protective Order on February 1, 2011. On or about March 2, 2011, various parties began filing their objections to the Litigation Protective Order. To address some of these concerns, on March 14, 2011, the Trustee postponed the hearing on his Motion and circulated a revised Litigation Protective Order. In the weeks since, the Trustee has engaged in good faith discussions with the counsel for objecting parties, including primarily a group of five defendant banks consisting of JPMC, UBS, UniCredit, Bank of New York Mellon, and HSBC, among others. These good faith negotiations have resulted in all parties except for one affiliated group of defendants dropping their objections. The Thema, Lagoon and Hermes Funds are the only remaining parties who take issue with the currently proposed Litigation Protective Order.[4]

C.     **The Thema, Lagoon and Hermes Funds' Objection**

The Amended Partial Objection filed by the Thema, Lagoon and Hermes Funds objects to the exclusions from the definition of "Confidential" contained in Section 4(e). The Thema,

---

[4] In addition to the one remaining objection addressed herein, the Trustee also received a letter dated March 24, 2011 from counsel for Patrick Littaye, a defendant in *Picard v. UBS AG et al.,* Adv. Pro. No. 10-04285 (the "Littaye Letter"). The Littaye Letter, which was copied to the Court (ECF No. 4036) and was in French and unaccompanied by any translation, essentially objected to entry of the Litigation Protective Order, falsely accused the Trustee of misusing confidential documents, and denied this Court's jurisdiction over Mr. Littaye. Despite the failure of Mr. Littaye's counsel to properly appear or file an appropriate pleading with the Court, and for purposes of completeness, a certified translation of the Littaye Letter and a copy of the Trustee's response thereto are attached hereto as Exhibits B and C respectively.

4

Lagoon and Hermes Funds object to these exclusions because, purportedly, the exclusions suggest that they would prevent parties from objecting to the production of such information in the first instance. However, the last sentence of Paragraph 1 of the Litigation Protective Order plainly states that, "Nothing in this Order shall preclude a producing party from objecting to the production of information, and this Order has no bearing on the merits of any such objection." For reasons that remain unclear to the Trustee, this language is somehow insufficient to allay the concerns of the Thema, Lagoon and Hermes Funds on this point.

The Thema, Lagoon and Hermes Funds also object on grounds that the Section 4(e) information is required to be protected by unspecified legal and contractual limitations. The initial objection filed by the Thema, Lagoon and Hermes Funds suggests that such information is protected from disclosure by unspecified foreign law.

The sole remaining objection of the Thema, Lagoon and Hermes Funds should be rejected for the reasons set forth below.

### III.  ARGUMENT AND RESPONSES TO SPECIFIC OBJECTIONS

**A.  Any Purported Reliance by the Objectors on the Permanence of the February 2010 Protective Order Confidentiality Designations and Procedures Was Not Reasonable**

The Court should reject any suggestion by the Objectors that the presumption against modification of protective orders, first set forth in *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979), applies here to limit the Court's options as the Proceeding moves into the litigation phase.[5] As an initial matter, "[w]hether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." *In re Agent Orange Prod. Liab. Litig.*, 821

---

[5] Although not specifically raised by the remaining objection filed by the Thema, Lagoon and Hermes Funds, issues concerning the legal standard for the modification of existing protective orders were previously raised by other parties' objections that have since been abandoned. By contrast, the Thema, Lagoon and Hermes Funds' objection fails to even address these issues. However, in the interest of providing the proper context and to counter any possible assertion that the February 2010 Protective Order cannot be modified as requested, the Trustee includes a discussion of the relevant analysis.

5

F.2d 139, 147 (2d Cir. 1987). *See also In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 322 (D. Conn. 2009) ("A uniform application of *Martindell* to every single protective order – regardless of its scope and the granting court's level of inquiry – cannot be reconciled with the broad discretion a district court exercises in considering requests to modify the protective orders it has granted."). Further, the *Martindell* presumption against modification of protective orders absent extraordinary circumstances or compelling need is wholly inapplicable here, as any purported reliance on the permanence of the February 2010 Protective Order has been vastly overstated and was not reasonable. Nor will the Objectors be prejudiced in any way by entry of the Litigation Protective Order.

In evaluating the reasonableness of the Objectors' reliance on the February 2010 Protective Order, the Court is to be guided by a four-factor analysis. The four factors for determining the reasonableness of reliance on a protective order are: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, No. 05 Civ. 2745(JGK)(RLE), 2010 WL 779314 at *4 (S.D.N.Y. Mar. 2, 2010) (citing *EPDM*, 255 F.R.D. at 318). Each of these factors includes points and considerations that weigh heavily in favor of finding that any purported reliance on the permanence of the protective order was not reasonable.

1.  **Scope of the February 2010 Protective Order**

When considering a motion to modify, "it is relevant whether the order is a blanket protective order, covering all documents and testimony produced in a lawsuit, or whether it is specifically focused on protecting certain documents or certain deponents for a particular reason." *EPDM*, 255 F.R.D. at 319. "A blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party

6

reasonably relied on a blanket order in producing documents or submitting to a deposition." *Id.* (also noting that blanket orders are "by nature over-inclusive and are, therefore, peculiarly subject to later modification."); *see also Int'l Equity*, 2010 WL 779314 at *4 ("While umbrella orders, granted as an accommodation to the parties, may be useful and expeditious in large scale litigation, they can simultaneously be overbroad and abusive.").

The February 2010 Protective Order is a broad, blanket order that governs "all materials produced in this Action whether furnished by a party or third party regardless of whether produced informally or pursuant to formal discovery request." (*Id.* at ¶ 1). The February 2010 Protective Order does not focus on specific documents or deponents and does not provide protection for any particularized reason other than the good faith judgment of the party designating the material as confidential pursuant to the definition set forth therein. Rather, as with most orders of this type entered in large litigations, it was entered "to keep discovery disputes to a minimum and the proceedings moving." *EPDM*, 255 F.R.D. at 319. To find the February 2010 Protective Order overinclusive and subject to abuse, one need look only to the fact that most (if not all) of the parties that have produced documents to the Trustee have designated every single document produced by them as confidential. The February 2010 Protective Order is the type of blanket order that is more susceptible to modification and thus the first factor weighs in favor of finding that any asserted reliance by the Objectors was not reasonable.

    2.    **Express Language**

With regard to the second factor, the language of the order itself, where an order "anticipates the potential for modification, or contains specific procedures for disclosing confidential material to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified." *EPDM*, 255 F.R.D. at 320. *See also Lugosch v. Pyramid Co. of*

7

*Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (noting that where order provided that it "shall not prevent anyone from applying to the Court for relief therefrom," it was "difficult to see how defendants can reasonably argue they produced documents in reliance on the fact the documents would always be kept secret"). The potential for modification will also be found in orders that include procedures that provide for challenging confidentiality designations. *See Int'l Equity*, 2010 WL 779314 at *5 (noting that order at issue permitted parties to challenge designations and did not limit a party's right to seek judicial modification of the order); *Caxton Int'l Ltd. v. Reserve Int'l Liquidity Fund, Ltd.*, No. 09 Civ. 782(PGG), 2009 WL 2365246 at *5-*6 (S.D.N.Y. July 30, 2009) (finding *Martindell* presumption not applicable and defendants' expectation of permanent confidentiality unreasonable where stipulation at issue provided mechanism to de-designate confidential documents and provided for final determination by the Court).

The February 2010 Protective Order anticipates the potential for modification. It contains specific procedures for disclosing materials designated as confidential to non-parties (*Id.* at ¶¶ 24-25); includes procedures that provide for challenging confidentiality designations (*Id.* at ¶ 8); and provides for the right to seek judicial modification of the order with respect to any specific confidential material (*Id.* at ¶ 22). While the February 2010 Protective Order also states that it "shall remain in full force and effect until further order of this Court at the close of Adv. Proc. No. 08-01789" (*Id.* at ¶ 28), that general provision must be read in light of and as being subject to the more specific provisions which anticipate modification, so as to not render them meaningless. The express language of the February 2010 Protective Order thus does not lend itself to reasonable reliance that it will afford permanent secrecy.

### 3. Level of Inquiry by the Court Prior to Granting the February 2010 Order

With regard to the third factor, "[w]hether a protective order is entitled to *Martindell's* strong presumption against modification is also dependent upon ... how much consideration the

8

court gave to the request for a protective order before granting it." *EPDM*, 255 F.R.D. at 321. "A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause." *Id.*; *see also Int'l Equity*, 2010 WL 779314 at *6 (citing same). Further, the *Martindell* presumption against modification is undermined where parties to a protective order have unilateral control over which materials are selected for confidentiality, and where there are no limits on the types of materials subject to the order. *See Int'l Equity*, 2010 WL 779314 at *7; *EPDM*, 225 F.R.D. at 321-22 (citing *Fournier v. McCann Erickson*, 242 F. Supp. 2d 318, 341 (S.D.N.Y. 2003)).

As is detailed above, the February 2010 Protective Order was the result of extensive discussions between the Trustee and several sets of defendants who had made objections to the Trustee's initially proposed order. The Trustee compromised with the objecting parties and made substantial modifications based on the objections received, and the February 2010 Protective Order was ultimately entered on consent. As such, for purposes of the reasonable reliance analysis, the February 2010 Protective Order is much more akin to a stipulated protective order than one entered after a full good cause hearing. Further, as with the protective orders at issue in the above-cited cases, the February 2010 Protective Order allows for unilateral designation of documents as confidential, and does not limit its application to any specific type or set of documents. (*Id.* at ¶ 2). This third factor therefore weighs against a finding of reasonable reliance by the Objectors on the permanence of the February 2010 Protective Order, and suggests that the *Martindell* presumption against modification is inapplicable here.

### 4. Nature of the Objectors' Purported Reliance on the February 2010 Protective Order

The fourth factor examines the extent to which the order to be modified induced the producing party to agree to discovery that otherwise might not have been obtained, and the

9

presumption against modification is diminished where the Court may have compelled production regardless of the stipulation. Indeed, the presumption against modification was established in *Martindell* because there, the Government sought to modify a protective order which had induced witnesses to waive their Fifth Amendment rights and to testify. *Id.*, 594 F.2d at 295-96. "Conversely, where the parties have not given up any rights and indeed would have been *compelled* to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong." *EPDM*, 255 F.R.D. at 323 (emphasis in original); *see also Int'l Equity*, 2010 WL 779314 at *7 (quoting same). The court in *Int'l Equity* also went on to note that, "[i]f the internal, financial and trade secret information was particularly relevant to the claims in the now-settled suit, those materials would have been discoverable and subject to a motion to compel, a circumstance that diminishes the reasonableness of the Parties' reliance." *Id.* at *8.

Here, the Objectors cannot contend that their various productions were made solely as a result of the specific protections provided by the February 2010 Protective Order, given that all of the materials sought by the Trustee were and are relevant to his ongoing efforts to locate and recover Customer Property. Rather, the materials at issue constitute discoverable information which would have been the subject of numerous motions to compel had the February 2010 Protective Order not been put in place to avoid such disputes during the investigative phase of the Trustee's work.

Any possible claims of reliance by the Objectors on the permanence of the February 2010 Protective Order would fail upon consideration of the relevant factors. The February 2010 Protective Order is a blanket order entered on consent that allows producing parties to unilaterally designate any materials, including relevant and discoverable materials, as

10

confidential. The February 2010 Protective Order expressly provides mechanisms for sharing designated materials with third parties and for de-designating materials, and also expressly allows for any party to seek judicial modification of the order. As such, the February 2010 Protective Order is susceptible to modification at the Court's discretion to meet the needs of this unprecedented proceeding.

### B.   Compelling Need Exists for Entry of the Litigation Protective Order

Even if the Objectors could somehow show that they reasonably relied on the permanence of their confidentiality designations under the February 2010 Protective Order and that the *Martindell* presumption against modification applies, the Court should find that compelling need exists here for the specific modifications the Trustee seeks in his Motion. Such compelling need can be found as a result of the tremendous scope and very public nature of these proceedings, as well as in the Trustee's need to be able to identify and pursue Customer Property in the hands of subsequent transferees in litigations that are not conducted under seal.

First, the vast size of the Trustee's endeavor, including more than 1,000 adversary actions, and the persistent, significant public interest in the Madoff fraud combine to present a compelling need for the modifications the Trustee seeks through the Litigation Protective Order. While it has been suggested that the need to facilitate discovery and litigation is not itself compelling in an ordinary case, the need does become compelling when multiplied more than 1,000-fold as is the case here.

Second, compelling justification for modification of the February 2010 Protective Order can also be found in the Trustee's need to be able to locate Customer Property in the hands of subsequent transferees, and in his need to identify those subsequent transferees and pursue them through additional litigation if necessary. As is set forth below, the information excluded from the definition of Confidential by section 4(e) of the Litigation Protective Order is vital to the

11

Trustee's essential mission of identifying and recovering Customer Property wherever it may lie. The Court should recognize as compelling the need to prevent the Objectors from hampering this effort through Confidential designations, restrictions on the use of this information, and the unreasonable burdens for the Trustee and the Court which would result if the Trustee was required to pursue subsequent transferees in litigation conducted under seal.

C.  **The Litigation Protective Order Properly Excludes the Information Listed in Section 4(e) as Not Confidential**

Section 4(e) of the Litigation Protective Order provides that certain information shall not be considered 'Confidential,' including "names of BLMIS customers and subsequent transferees, BLMIS account numbers, amounts of withdrawals, redemptions, or transferees from and between BLMIS accounts, and transfers from BLMIS customers to subsequent transferees." (*Id.*). The Objectors object to this exclusion on grounds that this information is presumptively confidential, particularly under foreign law. As is discussed below, foreign law has no bearing on the Court's analysis here. BLMIS account and customer information is already in the public domain, and, absent some particularized showing, none of this information is confidential under US law. Further, the information covered by the section 4(e) exclusion is perhaps the most central to the Trustee's efforts as such information is vital to the Trustee's ability to identify and locate Customer Property. If the Trustee is to meet his mandate, he must be free to use these types of information in subsequent lawsuits brought to recover Customer Property, and he cannot be required to do so in proceedings conducted entirely under seal. The Objectors have offered no valid basis for treating the information covered by the section 4(e) exclusion as Confidential, and thus their objections on this point should be denied.

**D.     Foreign Law Has No Bearing On the Trustee's Motion**

The Court should reject the attempt of the Objectors to inject issues of foreign law into the analysis of what is Confidential under the Litigation Protective Order. As an initial matter, nothing in the Litigation Protective Order prevents any party from objecting to the production of information based on foreign secrecy laws or other bases, and the Litigation Protective Order has no bearing on the merits of any such objection. Rather, the Litigation Protective Order deals only with how information is to be handled once it is determined that such information must be produced.

To the extent the Objectors would argue that foreign law should determine what this Court allows to be treated as Confidential, they are mistaken. The Objectors are entities that are present and/or doing business in New York and thus are subject to laws of the United States and the jurisdiction of this Court. A foreign corporation doing business in New York is subject to the general jurisdiction of the New York courts. *See, e.g., King County, Wash. v. IKB Deutsche Industriebank AG*, 712 F. Supp. 2d 104, 110 (S.D.N.Y. 2010); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 271 (S.D.N.Y. 2004); *Ssangyong Corp. v. Vida Shoes Int'l, Inc.,* No. 03 Civ. 5014 (KMW) (DFE), 2004 WL 1125659, at *4 (S.D.N.Y. May 20, 2004). This rule applies to a foreign corporation that conducts business in New York through a New York branch. *Ssangyong*, 2004 WL 1125659, at *4 (holding that the court has jurisdiction over a foreign corporation that conducts business in New York through a New York branch) (citing *Dietrich v. Bauer*, No. 95 Civ. 7051 (RWS), 2000 WL 1171132, at *4 (S.D.N.Y. Aug. 16, 2000)). As noted by Judge Pollack, "[i]t would be a travesty of justice to permit a foreign company to invade American markets, violate American laws if they were indeed violated, withdraw profits and resist accountability for itself and its principals for the illegality by

13

claiming their anonymity under foreign law." *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 119 (S.D.N.Y. 1981).

Moreover, the Objectors fail to identify any specific foreign law, much less prove its scope and application here, that would require Confidential treatment for the information excluded from such treatment under the Litigation Protective Order. Thus, there is not even a conflict of laws for the Court to consider. *See, e.g.*, *SEC v. Euro Sec. Fund*, No. 98 CIV. 7347 (DLC), 1999 WL 182598, at *3 (S.D.N.Y April 2, 1999) ("Illusory references to foreign secrecy without any specifics are insufficient to create a conflict; this Court is therefore not required to apply comity principles."); *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993) ("[T]he party relying on foreign law bears the burden of demonstrating that such law actually bars the production or testimony at issue."). The Objectors' vague references to unspecified foreign law are therefore insufficient to provide any basis for denying the Trustee's Motion.

## IV.  CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that his Motion be granted and that the Court enter the revised Litigation Protective Order submitted herewith.

Date: New York, New York  
      May 26, 2011

Respectfully submitted,

s/ *Judy Selby*  
Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Judy Selby  
Email: jselby@bakerlaw.com  
Benjamin D. Pergament  
Email: bpergament@bakerlaw.com

Michelle Young
Email: myoung@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*