Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

Hearing Date: June 1, 2011
Hearing Time: 10:00 am

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
And Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |

**TRUSTEE'S REPLY TO OBJECTION TO SIXTH APPLICATION OF TRUSTEE AND
BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION
FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND
NECESSARY EXPENSES INCURRED FROM
OCTOBER 1, 2010 THROUGH JANUARY 31, 2011**

Baker & Hostetler LLP ("B&H"), counsel to Irving H. Picard as trustee (the "Trustee")

for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment

Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §

78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, "Debtor"),

respectfully submits this reply on behalf of the Trustee and itself to the objection filed in

opposition to the sixth application (the "Sixth Application") (ECF No. 4022) for an order allowing

and awarding interim compensation for services performed by the Trustee and B&H for the period

commencing October 1, 2010 through and including January 31, 2011 (the "Compensation

Period"), and reimbursement of actual and necessary expenses incurred during the Compensation

Period, and in support thereof, respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    The Trustee has repeatedly emphasized over the course of his appointment that

not a single penny of the administrative costs of this entire liquidation, whether it be his fees,

fees of his counsel, special counsel, consultants, or any other administrative costs, will be paid

out of any recoveries obtained by the Trustee for the benefit of BLMIS customers with allowed

claims.  Rather, all of those fees are paid by administrative advances from the Securities Investor

Protection Corporation ("SIPC"), as are all administrative costs incurred by the Trustee.

Payment of those costs has no impact on recoveries that the Trustee has obtained and will obtain

because the costs are chargeable to the general estate.  Recoveries from litigation, settlements,

and other means will be available in their entirety for the satisfaction of customer claims.

2.    The standards for allowing and awarding interim compensation to the Trustee and

his counsel are clear and unambiguous.  Under Section 5(b)(5)(A) of SIPA, the Court shall grant

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

reasonable compensation for services rendered . . . by a trustee, and by the attorney for a trustee, in connection with a liquidation proceeding." SIPA § 5(b)(5)(A).

3.     Where the fees are paid by SIPC without any reasonable expectation of recoupment, and SIPC recommends that the amounts requested be approved, the Court is required to award the amounts recommended by SIPC.   SIPA § 78eee(b)(5)(C).

4.     Consistent with other bankruptcy and SIPA cases, the amounts awarded as interim compensation remain subject to final review by SIPC and the Court at the conclusion of the liquidation proceeding.  *See, e.g.*, *In re Stable Mews Assocs.*, 778 F.2d 121, 123 n.3 (2d Cir. 1985).

5.     The standards guiding SIPC in its review of Trustee and counsel fees are the same as those that would be considered by the Court, if it had such discretion here—whether those services are reasonable and necessary.  Services are necessary where there is a benefit to the estate. *See, e.g.*, *In re Keene Corp.*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997).

6.     Of the hundreds of law firms that have filed notices of appearance, and the thousands of creditors, customers, and related parties involved in this liquidation proceeding, only a single objection has been filed to the Sixth Application: by Ms. Helen Davis Chaitman, Esq.[2] *See* Objection to Sixth Application of Trustee and Baker & Hostetler LLP For Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From October 1, 2010 Through January 31, 2011 (the "Objection") (ECF No. 4088).  Ms. Chaitman also filed objections to each of the prior interim fee applications of the

---

[2] The Objection states that it is on behalf of "Marsha Peshkin and over 800 other Customers of Bernard L. Madoff" (the "Peshkin Objectors").  The particular group of clients or number of clients that Ms. Chaitman purports to represent in any given objection, filing, or pleading in matters relating to this liquidation proceeding is fluid, to say the least, and at times conflicts with notices of appearances filed by other counsel with respect to certain purported clients.

Trustee and his counsel, all of which have been overruled. Not satisfied with this Court's rulings, Ms. Chaitman has sought leave to appeal four of the five orders approving prior interim fee applications. The United States District Court for the Southern District of New York ("District Court") denied the motions for leave to appeal the first and third fee orders. *See* District Court Memorandum and Decision dated January 11, 2010 (GBD), Misc. Matter M-47, (ECF No. 1764); District Court Opinion and Order dated August 6, 2010 (SAS), Misc. Matter M-47.[3]

7.      Similar to prior objections filed to the interim fee applications of the Trustee and counsel, the Objection fails to articulate any reason grounded in fact or law that the interim compensation requests of the Trustee and B&H set forth in the Sixth Application should not be awarded. The SIPA statute is clear that the compensation shall be awarded to the Trustee and B&H where SIPC's recommendation is equal to the amounts requested. No argument set forth in the Objection provides any basis for the Court to deviate from the statutory language that is determinative of the Sixth Application.

8.      Recognizing that there is no relief to be had by way of statute, the Objection instead sets forth a number of scurrilous allegations and repetitive arguments irrelevant to the legal framework governing compensation awards in a SIPA matter. Ms. Chaitman and her clients have made it plain that they disagree with the Trustee's legal positions, as evidenced by the voluminous amount of objections, litigation, and appeals in which she is currently engaged

---

[3] The motions for leave to appeal the second and fifth fee orders remain pending before the District Court.

on behalf of her various purported clients.[4]  Nothing in the Objection (or the public record, for

that matter), suggests that the Trustee and B&H's services are not benefitting the estate.  Rather,

those services for which the Trustee and B&H seek compensation are simply ones that Ms.

Chaitman and her clients disagree with, which is not the standard courts apply in evaluating fee

requests.  Ignoring that standard, Ms. Chaitman and her clients instead seek to re-argue pending

---

[4] The following is a selection of matters in which Ms. Chaitman is or has been involved and in which she has filed the following documents related to this liquidation proceeding:  (i) *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y.) (motion for reconsideration of District Court's determination that DOJ may seek Trustee's assistance in Madoff forfeiture, which was denied) (ECF No. 110); (ii) *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y.) (objection to first applications of the Trustee and B&H for interim compensation, which was overruled) (ECF No. 351), (motion for leave to appeal of order approving first applications of Trustee and B&H for interim compensation, which was denied by district court, *supra* ¶ 6) (ECF No. 366), (opposition on net equity) (ECF No. 755), (reply to SEC's brief on net equity) (ECF No. 1096), (motion for leave to appeal of order approving second applications of Trustee and B&H for interim compensation) (ECF No. 1114), (letter to Court on behalf of certain "net winners" requesting a SIPC advance of up to $500,000 in exchange for foregoing future distribution from fund of customer property) (ECF No. 1849), (appeal of Court's net equity decision) (ECF No. 2048), (objection to third applications of Trustee and B&H for interim compensation, which was overruled) (ECF No. 2233), (motion for leave to appeal of order approving third applications of Trustee and B&H for interim compensation, which was denied by district court, *supra* ¶ 6) (ECF No. 2298), (opposition on customer motion) (ECF No. 2567), (objection to fourth applications of Trustee and B&H for interim compensation, which was overruled) (ECF No. 2943), (objection to avoidance action procedures motion, which was overruled) (ECF No. 3110), (objection to settlement approval procedures motion, which was overruled) (ECF No. 3111), (objection to fifth applications of Trustee and B&H for interim compensation, which was overruled) (ECF No. 3308), (motion for leave to appeal of order approving fifth applications of Trustee and B&H for interim compensation) (ECF No. 3593), (motion to vacate Levy settlement order, which was denied) (ECF No. 3860), (notice of appeal of order denying motion to vacate Levy settlement order) (ECF No. 4005), (motion to compel Trustee's investigative reports and financial records) (ECF No. 4045), (objection to sixth applications of the Trustee and B&H for interim compensation) (ECF No. 4088); (iii) *Peskin v. Picard*, Adv. Pro. No. 09-01272 (BRL) (Bankr. S.D.N.Y.) (suit brought against Trustee regarding, *inter alia*, net equity), on appeal at *Peskin v. Picard*, No. 09-CV-08730 (JGK) (S.D.N.Y.) (affirming bankruptcy court's ruling that, among other holdings, "the bulk of the Complaint was tantamount to an objection to the appellants' claim determinations, and thus constituted an impermissible attempt to circumvent the Claims Procedure Order."), on appeal at *Peskin v. Picard*, No. 10-04789 (2d Cir.); (iv) *Canavan v. Harbeck,* No. 10-CV-00954 (FSH) (PS) (D.N.J.) (suit against directors of SIPC); (v) *Picard v. Picower*, Adv. Pro. No. 09-1197 (BRL) (Bankr. S.D.N.Y.) (objection to Trustee's motion for entry of order approving $5 billion settlement and issuance of permanent injunction, which was denied) (ECF No. 32), (appeal of Court's order approving $5 billion settlement and issuing permanent injunction) (ECF No. 45); and (vi) *In re Bernard L. Madoff Inv. Sec. LLC*, No. 10-2378 (2d Cir.) (briefs and filings on net equity) (ECF Nos. 202, 215, 217 and 344).

     Ms. Chaitman has also filed hundreds of objections to claim determinations on behalf of her clients and two objections on behalf of herself as a BLMIS investor as a member of a limited liability company.  (ECF Nos. 283, 3645).

legal disputes with the Trustee, which are *sub judice* before this Court, the District Court, and the Second Circuit, in the guise of an objection to interim fee applications. Beyond frivolous, the Objection should face the same fate as the prior objections and be denied by this Court.

9.    Because many of the bases for the Objection are the matters of current pending litigations and appeals, the Trustee will respond to those allegations and arguments in the proper pleading, at the proper time, and in the proper forum. Because the Objection contains a number of material misstatements, the Trustee will correct the record where necessary. Silence as to any particular allegation made in the Objection, however, should not be viewed as agreement with or an admission to that allegation.

10.    As set forth herein, the Court should grant the relief requested in the Sixth Application.

## TIME AND EFFORT BY THE TRUSTEE AND BAKER & HOSTETLER

11.    The Peshkin Objectors allege that the fees paid to the Trustee and B&H are excessive and the amount of time and number of attorneys working on the Madoff liquidation is not justified. However, as this Court has previously noted, the scale of this liquidation involves "staggering numbers, with more than 15,000 claims filed and billions of dollars at stake." *In re Bernard L. Madoff Inv. Securities LLC*, 424 B.R. 122, 124 (Bankr. S.D.N.Y. 2010). Additionally, this Court recognized that "the Trustee is charged with the mission of going out to hunt for assets and under [sic] in a case like this that hunt is not easily achieved." Second Interim Fee Hr'g Tr., at 33. In order to determine claims and collect assets for the estate, an extensive amount of work must be done by the Trustee and B&H which requires the time, effort

and expertise of many attorneys and other employees. This liquidation is a result of the largest and lengthiest Ponzi scheme to date and unwinding this massive fraud is a complex task.[5]

12.      Furthermore, it should be noted that the statute of limitations for the Trustee to commence avoidance causes of action ran on December 11, 2010. During the Compensation Period, over one thousand avoidance actions were filed by the Trustee in order to recover money for the estate and ultimately for the customers of BLMIS; this was the culmination of over two years of work by the Trustee and B&H since their appointment. This Court has previously noted the "Herculean effort being utilized in the litigation arena to recoup funds for the benefit of victims." Fifth Interim Fee Hr'g Tr., at 28. The work of the Trustee and his counsel, as detailed in the Sixth Application and which is a matter of public record through the litigations filed, clearly supports the amounts requested in the Sixth Application. Moreover, those amounts are recommended by SIPC. (ECF No. 4098). As such, the Objection notwithstanding, the Court should award the amounts.

## THE FUND OF CUSTOMER PROPERTY AND CUSTOMER CLAIMS

13.      The Objection, like that of the objection filed to the Fifth Application by Ms. Chaitman, makes fundamental misstatements regarding customer claims, the fund of customer property, and the expectation as to whether SIPC will recoup its administrative advances. Not only are the allegations incorrect and misconstrue the Trustee's obligations under SIPA and the

---

[5] One example of the tremendous effort that was and is required to unwind Madoff's fraud, which the Trustee, his counsel, and consultants have expended since December 2008, during this Compensation Period, and that still continues, is illustrated by Exhibit A to the complaint in the matter of *Picard v. Sonja Kohn*, 10-5411 (BRL) (Bankr. S.D.N.Y.), also annexed hereto as Exhibit A. This chart is a product of almost two years of global investigation and depicts graphically the defendant members of the Medici empire, which include individuals, sham entities in New York, the Cayman Islands, Italy, Gibraltar, and Austria, complicit financial institutions throughout the world and their agents, and dozens of bad actors who, together, funneled billions into BLMIS. This is just but one of the litigations brought by the Trustee amongst dozens of similarly complicated cases.

Bankruptcy Code, but they implicitly concede the propriety of the Trustee's position with respect to net equity.

14.    The Objection sets forth a tortured reading of the statute to conclude that the Trustee's avoidance powers are limited to the value of the fund of customer property and the amount of allowed claims as of an arbitrary date chosen by the Peshkin Objectors.  The result of this unsupportable logic is that the Trustee may only sue to recover up to the amount of <u>current</u> allowed claims, which is <u>currently</u> approximately $6.9 billion.   By the Peshkin Objectors' calculation—not one that is supported by the record or the Trustee—the fund of customer property is purportedly $9.8 billion, leaving an excess of $2.9 billion, thereby rendering the Trustee's avoidance actions in contravention of SIPA.

15.    As an initial matter, the Peshkin Objectors take issue with the Trustee's calculation of the customer fund because the "Trustee did not include the $2.2 billion forfeited to the governed [sic] by the Picowers, even though he previously represented that every penny of the $7.2 billion settlement will be distributed to customers."  The $2.2 billion, and other funds forfeited by the Government, are in the possession of the United States Attorney's Office for the Southern District of New York ("USAO") (the "Forfeiture Fund").  As explained by the USAO in a recent memorandum of law with respect to the Picower forfeiture,[6] victims are entitled to petition for mitigation or remission of forfeiture in accordance with the criteria set forth in 28 C.F.R. Part 9.  The Government may contract with a special master to notify petitioners, process petitions, and make recommendations with regard to forfeited property.   28 C.F.R. § 9.9(c).

---

[6] Memorandum of Law (1) In Opposition To The Motion Of Adele Fox To Intervene and To Amend, Modify, Or Rescind the Stipulation And Order Of Settlement, and (2) In Support of The Government's Cross Motion (A) To Dismiss The Claim of Adele Fox and (B) For Entry of a Final Order of Forfeiture, *United States v. $7,206,157,717 On Deposit at JP Morgan Chase Bank, N.A.*, No. 10-CV-9398 (TPG) (S.D.N.Y) (ECF No. 13) at 32.

Pursuant to this authority, the Department of Justice has announced that it would retain Mr. Picard to serve as special master to assist the USAO and the Department of Justice ("DOJ") in the petition process to be conducted in connection with BLMIS-related forfeitures, in accordance with applicable regulations. Thus, if retained, Mr. Picard would wear "two hats," one as SIPA Trustee and one as DOJ special master. There is no basis, therefore, to allocate the $2.2 billion and other forfeited funds to the fund of customer property under SIPA, even though those funds may ultimately go to BLMIS victims through the forfeiture remission process.

16.     With respect to the customer fund for which the Trustee is responsible under SIPA, the Trustee's pending motion for allocation and distribution has a very detailed explanation of the contents of the fund of customer property and the interplay of customer claims. *See* Motion for an Order Approving an Initial Allocation of Property to the Fund of Customer Property and Authorizing an Interim Distribution to Customers ("Allocation Motion"). (ECF No. 4048). As set forth therein, the Trustee has recovered, or entered into agreements to recover, approximately $7.6 billion. Because of certain appeals to the Picower settlement, *see Fox v. Picard*, 11-CV-1298 (JGK) (S.D.N.Y.), and *Marshall v. Picard*, 11-CV-1328 (JGK) (S.D.N.Y.), —one of which Ms. Chaitman has taken on behalf of a single client, Ms. Marshall, the other taken by Ms. Chaitman's client, Ms. Fox—$5 billion of that settlement is not in the fund of customer property or available for distribution, but instead remains in an escrow account until those appeals are finally resolved or a final, nonappealable order of forfeiture is entered. *See Picard v. Picower*, No. 09-1197 (BRL) (ECF No. 25).

17.     Thus, the Trustee has only $2.6 billion in his possession. As set forth in the Allocation Motion, due to other litigation-related matters, he has requested that the Court approve allocating $2.3 billion to the fund of customer property. *See* Allocation Motion ¶ 65.

The difference between the $2.6 billion in the Trustee's possession and the $2.3 billion that the Trustee sought permission to allocate to the fund of customer property is largely due to an appeal filed by Ms. Chaitman to this Court's Order denying her motion to vacate the Levy settlement, discussed *infra* ¶ 29. Contrary to the Objection, therefore, the most that could be available in the distribution from the fund of customer property at this time if the Court approves the Allocation Motion is $2.3 billion.

18.    A plain reading of the Allocation Motion shows that because of certain outstanding disputes and appeals, including the appeal on net equity, the Trustee must operate as though all those appeals could be resolved against him, and that all disputed claim amounts could be allowed. This requires the Trustee to keep proper reserves when making any distributions or calculating the amounts recovered on behalf of any one customer, to ensure a *pro rata* distribution in the event that it is determined that the amount of allowable claims is higher than the current amount of allowed claims.

19.    The Peshkin Objectors argue that the Trustee is only permitted to sue where customer property is insufficient to pay customer claims. Objection ¶ 17. Because the Peshkin Objectors assert that the Trustee currently has sufficient funds to pay all current allowed customer claims, they argue that he is prevented from using his avoidance powers. *Id.*

20.    Yet such a claim could not be more directly contradictory to the position that Ms. Chaitman and her clients have taken before this Court and the Second Circuit on net equity. If they were to prevail on net equity, the amount of allowable claims would not be approximately $6.9 billion (the amount of current allowed claims), or $17.3 billion (the amount of principal lost

by customers who filed claims, which amount could be allowed),[7] or the approximate $20 billion (the total amount of principal lost by all BLMIS investors), but up to **$64.8 billion**.   If the Trustee were required to satisfy $64.8 billion of allowed net equity claims, as Ms. Chaitman has argued here and in the Second Circuit, then it appears she and her clients may in fact agree with the Trustee's lawsuits since they would be guaranteed to participate in a distribution from the fund.  But the legal authority to pursue avoidance actions cannot rest on unknown variables such as who will be able to participate in the customer fund, or in what amounts, as Ms. Chaitman seems to contend.

21.    Aside from the net equity dispute, the Objection once again sets forth a misunderstanding of allowed and allowable customer claims.  Contrary to the assertion in the Objection, the fact that certain claims will become allowable in the future, in addition to the current $6.9 billion, is not some sort of "self-serving explanation" on the part of the Trustee.  Rather, these amounts have been set forth in various lawsuits and in seeking to recover those amounts from parties that owe funds to the estate, the Trustee is fulfilling his fiduciary obligations to the customers and creditors of BLMIS.  *See supra* ¶ 20 and n.7.

22.    In order to determine what each customer is fully and finally owed from the fund of customer property, the Trustee needs to know the total value of customer property and the total value of allowed claims.  The only time the Trustee will be able to conclusively do so is at the conclusion of the liquidation proceeding (which does not preclude him from making interim distributions, with appropriate reserves, as he seeks to do in the Allocation Motion).  The amount of customer property is dependent upon the recoveries made by the Trustee through litigation

---

[7] This is not to suggest that this is the outside limit of allowable claims, even if this Court's net equity decision is upheld.  Final allowable claim amounts may be increased by, *inter alia*, operation of Sections 502(d) and 502(h) of the Bankruptcy Code.

and settlements throughout the case. The amount of allowable claims is dependent upon both of those factors as well, in that there is litigation pending against defendants with net equity claims and such claims will not be allowed until the avoidance actions involving those defendants are resolved by settlement or otherwise and any judgment rendered against the claimants in the avoidance actions are satisfied.

23.     So what does this mean for the Trustee? Must he stop his pursuit of assets at the amount of current allowed claims as of today? Are his avoidance powers somehow circumscribed by a set of variables such as the amount of customer property recovered and the amount of allowed claims as of a certain date, even though those numbers continually change? That is the view of the Peshkin Objectors.

24.     The problem from a legal standpoint is that it fails to appreciate what the Trustee has before him—a fiduciary obligation to treat all customers and all creditors equally and to try to recover all estate assets for the benefit of customers and creditors, up to and until the conclusion of the liquidation proceeding. If the Trustee favors certain customers—say those with allowed claims as of May 2011—by distributing to those claimants all of the funds in his possession at that time, there may be nothing left for a customer whose claim is later allowed (and has an equal right to payment as those customers who received an earlier payment). That would not effect a *pro rata* distribution. Likewise, if the Trustee "folds up shop" and stops his recovery efforts because he could satisfy all current allowed claims (which, as set forth in the Allocation Motion, he could not) as of some arbitrary date, he will not recover all estate assets nor will he be able to satisfy customer claims in full since claims that are later allowed will decrease each customer's proportionate share of that finite set of dollars.

12

25.     Both legally and logically, the Objection makes no sense.  The Trustee is required to take a holistic view and make reasonable judgments as to what the picture will look like at the very end of the liquidation proceeding so as to ensure that every customer with an allowed claim receives a *pro rata* distribution.  Moreover, the Trustee's goal is to effect a 100% distribution to all customers and to create a general estate for general creditors.

26.     Although the Trustee has made significant strides in reaching these goals, he is far from realizing them entirely.  Until such time as he is closer to being able to fully satisfy the customer claim priority and the other priorities in the statute, there is not a reasonable expectation that SIPC will recoup its administrative advances.  Accordingly, the Court shall award the fees requested and recommended by SIPC.  SIPA § 78eee(b)(5)(C).  The numerical machinations set forth in the Objection fail to alter the governing statutory scheme, which mandates the allowance of the compensation requested.

## THE OBJECTION RAISES ISSUES THAT ARE THE SUBJECT OF PENDING LITIGATION OR APPEALS

27.     The Peshkin Objectors raise various issues that are the subject of ongoing litigation or appeal.  Litigating issues that are *sub judice* before this and other federal courts in the context of a fee application is improper.  *Cf. United States v. $7,206,157,717 On Deposit at JP Morgan Chase Bank, N.A.*, No. 10-CV-9398 (TPG) (S.D.N.Y) (ECF No. 6) (rejecting attempt by BLMIS "net winner" claimant to litigate net equity dispute in action for forfeiture of funds related to BLMIS).  The Trustee, Ms. Chaitman, her clients (and others) may have genuine legal disputes over the law and the various interpretations of that law.  That there are real disputes between adversaries pending in various courts of law—which are being litigated on the merits—is not a basis for a court to deny a fee request.  Moreover, many of the same arguments have

been raised in prior objections to interim fee applications, each of which have been overruled by this Court, and they should be rejected again.

28.     The Objection repackages allegations set forth in a separate pleading recently filed by, *inter alia*, Ms. Chaitman, entitled BLMIS Customers' Motion to Compel the Trustee to Provide a Report of His Investigative Activities and the Financial Affairs of BLMIS (the "Motion To Compel") (ECF No. 4045).  The Trustee's response to the Motion to Compel is due on June 7, 2011 and, as noted in the Objection at ¶ 26, will be heard by the Court on June 21, 2011.  As the matter is before the Court on the merits, the Trustee submits it is not a proper basis to object to a request for compensation.

29.     The Peshkin Objectors assert that the Trustee has improperly settled certain matters that were approved by this Court on notice and a hearing, including the settlement with the estate of Jeffry Picower ("Picower") and the heirs of Norman Levy.[8]  The Trustee's settlement with Picower is the subject of pending appeals from an order of this Court overruling the Objection filed by Ms. Chaitman and in which Ms. Chaitman is participating.  *See Marshall v. Picard*, No. 11-CV-1298 (JGK) (S.D.N.Y.).  The settlement with the heirs of Norman Levy is also the subject of an appeal from an order of this Court denying the relief sought by Ms. Chaitman, on behalf of Ms. Peshkin and some subset of Ms. Chaitman's other clients, and in which Ms. Chaitman is participating.  *See Peshkin v. Levy-Church*, No. 11-CV-3313 (DAB) (S.D.N.Y.).  As these matters are pending before the District Court, the Trustee submits it is not a proper basis to object to a request for compensation.

---

[8] On December 21, 2010, on notice and a hearing, this Court approved a pre-litigation settlement between the Trustee and Carl Shapiro, Robert Jaffe, and related entities (the "Shapiros") in the amount of $550 million.  (ECF No. 3551).  No objections were made to that settlement.  The attempt to re-litigate that settlement through the Objection should be rejected.

14

30.     The Peshkin Objectors assert that the Trustee delayed litigation of the net equity issue and payment of SIPC advances.  The net equity issue is pending before the Second Circuit, and Ms. Chaitman is participating in that appeal on behalf of some subset of her clients.  *See In re Bernard L. Madoff Investment Securities LLC*, No. 10-2378 (bk) (2d Cir.).  As such, it is not a proper basis to object to a request for compensation.

31.     The net equity issue has driven each of the prior objections to interim fees by Ms. Chaitman and this Court has recognized that the issue is not pertinent to the applications themselves.  *See* Fifth Interim Fee Hr'g Tr., at 27 ("[I]t's interesting that the focus of this hearing on fee applications has turned away from the actual fee applications, and more toward a disagreement necessarily on the part of the – or maybe not necessarily on the part of the objectors, as to the impact of the net equity determination").  That issue is no more relevant to the Sixth Application than it was to any of the prior applications.

32.     Indeed, other courts have rejected attempts by claimants to litigate the net equity issue outside of the pending Second Circuit appeal.  *See United States v. $7,206,157,717 On Deposit at JP Morgan Chase Bank, N.A.*, No. 10-9398 (TPG) (S.D.N.Y) (ECF No. 16) ("In any case, the proper avenue for Fox to challenge Picard's method of compensating Madoff's victims is not with this case, but with the appeal by other net winners of the Bankruptcy Court's decision approving of Picard's method. That appeal is currently pending in the Second Circuit.").  The Objection here should be similarly rejected as an attempt to litigate an issue in an improper forum using an improper vehicle.

33.     Moreover, this Court previously dismissed as premature Ms. Chaitman's argument that the Trustee failed to promptly pay allowed claims with SIPC advances, the District Court affirmed the ruling, and that appeal is pending before the Second Circuit.  *Peskin v.*

15

*Picard*, Adv. Pro. No. 09-01272 (BRL) (Bankr. S.D.N.Y.) (ECF No. 42); *Peskin v. Picard*, No. 09-CV-08730 (JGK) (S.D.N.Y.) (ECF No. 22); *Peskin v. Picard*, No. 10-4789 (2d Cir)  Nothing has changed since the Court made this determination, thus this argument remains untimely. Even if it were timely, it remains irrelevant to an award of interim compensation.

## THE OBJECTION SETS FORTH SPURIOUS OR INACCURATE ALLEGATIONS

34.    Contrary to the Peshkin Objectors' assertion, neither district court judge to consider the issue of assignee standing has held that the Trustee lacks standing to assert claims for aiding and abetting.    Objection ¶ 58.    Instead, the Honorable Jed S. Rakoff, U.S.D.J., withdrew the reference to the Bankruptcy Court in *Picard v. HSBC Bank plc* on the ground that the trustee's standing to bring common law claims requires "substantial interpretation of SIPA because it is [a question that is] far from clear," thus better suited to the district court.    No. 11-CV-763 (JSR) (S.D.N.Y.) (ECF No. 23), No. 11-CV-836 (JSR) (S.D.N.Y.) (ECF No. 23).

35.    Similarly, the Honorable Colleen McMahon, U.S.D.J., withdrew the reference to the Bankruptcy Court in *Picard v. JP Morgan Chase* on a parallel basis, recognizing that the issue of standing was unresolved: "[i]f the Trustee's action remained in the bankruptcy court, that court would have to determine if the Trustee has standing to assert the claims against JPMorgan . . ." No. 11-CV-913 (CM) (ECF No. 30).    Neither court held that the Trustee's common law claims were dismissed for lack of standing, merely that the District Court would determine that question.    Further, and more important, neither Court has questioned the majority of the Trustee's claims or allegations in these lawsuits.

36.    Contrary to the assertion in the Objection, the Trustee has not "acknowledged that only the second and third priorities of distribution are applicable in this case."  Objection ¶ 13. Instead, the Trustee stated that only the second and third priorities were relevant to the

Allocation Motion that was based on the proposed allocation and distribution therein.  Allocation

Motion ¶ 38.

37.    As the Trustee has stated in prior fee applications and to the Court, the Trustee

pays over to B&H the full amount of any interim compensation and disbursements awarded to

him.  *See, e.g.*, Third App. Hr'g Tr. 85; Fourth Fee App. ¶ 17, n.3; Fifth Fee App. ¶ 20 n.4; Sixth

Fee App. ¶ 24 n.5.    The unfounded allegation in the Objection regarding the Trustee's

compensation is false.[9]

38.    Similarly, B&H is not improperly charging markups on temporary attorneys.  All

of the fees for which compensation is sought are for attorneys that are fully employed by B&H.

While the Trustee has engaged the services of contract and/or temporary attorneys on this matter,

those costs have been billed appropriately.  The Trustee likewise submits that it is appropriate to

bill for law clerks, non-legal staff, such as paralegals and library staff, consistent with

bankruptcy and non-bankruptcy practices.

39.    Similarly, there is no basis to suggest that there is any "lack of professionalism"

with respect to B&H's billing.  As with all of its obligations as counsel to the Trustee, B&H

diligently reviews its bills, makes write-offs and reductions where appropriate, and ensures that

all billings and fee applications are in conformity with SIPA, the Bankruptcy Code, this Court's

Administrative Order, and the Amended Monthly Compensation Procedures Order entered by

this Court.  Additionally, each bill is carefully reviewed by SIPC, as is each fee application, to

ensure compliance with those same authorities.  For each period, the Trustee and B&H file their

---

[9] In response to an inquiry from a reporter, Ms. Chaitman acknowledged she has no evidentiary basis for this allegation.  *See* Evan Weinberger, <u>Madoff Investors Want Trustee's $44B Fee Bid Blocked</u>, 360Law, (May 26, 2011), http://www.law360.com/newyork/articles/247596/madoff-investors-want-trustee-s-44m-fee-bid-blocked ("The motion gave no evidence that such a contract was in place, and Helen Davis Chaitman, counsel for the objecting investors, said in a telephone interview that she had no supporting documents for the claim").

interim fee applications with this Court for approval, which are carefully scrutinized by the Peshkin Objectors and others. In view of Section 78eee(b)(5)(C) of SIPA, there is no basis for another layer of review to determine whether the fees requested—which are paid by SIPC and not out of any recoveries for customers—are appropriate. Nor is there any basis in fact for such a request. Accordingly, the request for a fee examiner should be denied.

40.    It has become evident that Ms. Chaitman and her clients will object to the interim fees and actions of the Trustee and his counsel no matter what he does. With regard to the Picower settlement, Ms. Chaitman argues that the Trustee recovered too much.[10]  With regard to the Levy settlement, too little. In the Objection at ¶ 36, Ms. Chaitman assails the Trustee and B&H for proposing a "paltry first distribution to customers" in the amount of $2.3 billion, yet has appealed a settlement on behalf of a single client that would have resulted in $5 billion more being available for distribution, and appealed a second settlement that would have added another $220 million. She and her clients assert that the Trustee is violating the law when he seeks to recover funds to satisfy allowed claims beyond approximately $6.9 billion, but argue to the Second Circuit that the amount of allowable claims in this proceeding should be $64.8 billion. She argues that the Trustee doesn't represent net winners, a position that will undoubtedly change if a large general estate is created or this Court's net equity decision is reversed. In sum, Ms. Chaitman's positions have been nothing short of a study in contradiction.

41.    Finally, the repeated objections to the Trustee and B&H's interim fee applications are not only frivolous, but unnecessary. Interim compensation awards are just that—interim

---

[10] *See, e.g.*, Objection Of Susanne Stone Marshall And Other Victims Of The Crimes Of The Picower Parties Whose Claims Are Not Recognized By The Trustee To The Trustee's Settlement With The Picower Parties, *Picard v. Picower*, 0-1197 (BRL) (Bankr. S.D.N.Y.) (ECF No. 32). In yet another contradiction, Ms. Chaitman argues in the current Objection that the Trustee reached a "sweetheart" deal with the Picowers and should have recovered more. Objection ¶ 28.

compensation. Moreover, there is a holdback of the fees awarded. Consistent with other bankruptcy and SIPA cases, the amounts awarded as interim compensation remain subject to final review by SIPC and the Court at the conclusion of the liquidation proceeding. *See, e.g.*, *In re Stable Mews Assocs.*, 778 F.2d 121, 123 n.3 (2d Cir. 1985); *see also* Recommendation of the Securities Investor Protection Corporation in Support of Sixth Application of Trustee and Counsel for Interim Compensation and Reimbursement of Expenses, ¶ 11 (ECF No. 4098) ("An interim allowance does not involve a determination as to the actual reasonable value of the services in question. It is merely a payment on account of the final allowance and does not imply that the Court or SIPC has approved the value which the Trustee and Counsel have placed on their services. The amounts sought do not exceed the sums the Court might reasonably award as final compensation for the services rendered. Accordingly, SIPC supports the Application."). Any objections to the interim fee applications of the Trustee and counsel can be resolved at that time.

## CONCLUSION

42. For the reasons stated above, the Trustee respectfully requests that this Court enter an Order as follows: (i) denying the Objection; (ii) granting the Applications; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      May 27, 2011

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: /s/ *David J. Sheehan*_____
      Baker & Hostetler LLP
      45 Rockefeller Plaza
      New York, NY 10111
      Telephone: (212) 589-4200
      Facsimile: (212) 589-4201

Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC And Bernard L.
Madoff*