# EXHIBIT B

# Part 1



## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### CHLOE TERESE BERNERT EDUCATION IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.    The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS owned by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.    The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.    The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.    This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK

Dated: December 10 , 1999                    By: _____

CHLOE TERESE BERNERT
EDUCATION IRA

Address:    145 Little River Road
South Dartmouth, MA  02748              By: _____
                                              Leslie Bernert

Soc. Sec. No. ████████



# CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

## KARA RIDZON BERNERT EDUCATION IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.    The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.    The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.    The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.    This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

**WESTPORT NATIONAL BANK**

Dated: December *10* , 1999                          By: _____

                                                                **KARA RIDZON BERNERT
                                                                EDUCATION IRA**

Address:        145 Little River Road
                South Dartmouth, MA  02748        By: _____

                                                                Leslie Bernert



## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and ·

## DOROTHY C. BRAULT ROLLOVER IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.   The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.   The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.   The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.   This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

**WESTPORT NATIONAL BANK**

Dated: July 29, 1999                              By: _____

**DOROTHY C. BRAULT ROLLOVER IRA**

Address:      293 Tarkiln Hill Road
              New Bedford, MA 02745            By: _Dorothy C. Brault_
                                                   Dorothy C. Brault

Soc. Sec. No. ▇▇▇▇▇▇▇



*69 ⅩO 1149 30 6*

## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### KARA QUINN IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.    It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS"), as contemplated by Paragraph 2 hereof.

2.    The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.    The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK

Dated: July   , 2002                                  By: _____ VP
                                                              4/9/03

KARA QUINN IRA

Address:      5 Eastward Lane                         By: _____
              North Dartmouth, MA 02747                        Kara Quinn

Soc. Sec. No.: ▓▓▓▓▓▓



## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### WILLIAM E. CAPLAN ROLLOVER IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.   It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS"), as contemplated by Paragraph 2 hereof.

2.   The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.   The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

**WESTPORT NATIONAL BANK**

Dated: August    , 1999                           By: _____

**WILLIAM E. CAPLAN ROLLOVER IRA**

Address:        36 Country Way                    By: _____
                South Dartmouth, MA  02748             William E. Caplan, M.D.

Soc. Sec. No. ▓▓▓▓▓



# CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

## TOM K. COFFEY ROLLOVER IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall maintain adequate records indicating the ownership by the Principal
    investments with BLMIS and held by the Bank as custodian for the Principal. The Princip
    and the Bank also acknowledge that the Principal has entered into an agreement with PS(
    Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principa
    investments made by BLMIS. The Bank is authorized and directed to coordinate its reco
    keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only
    the event such agreement between PSCCSI remains in effect. The Bank is further authoriz
    and directed to pay to PSCCSI from the custodial account of Principal established hereunc
    an annual fee for services provided by PSCCSI an amount equal to .010 of the average asse
    (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .0
    of the amount of each transaction effected by BLMIS on behalf of the Principal with
    maximum of .025 of average assets. Such fees shall be paid in such manner and at such tir
    as shall reasonably be determined by the custodian and as shall be reasonably acceptable
    PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it
    custodian hereunder. Such statements shall be rendered to the Principal, or its designate
    representative. In the event that such statements are rendered to the designated representativ
    the Bank shall have no further responsibility to provide statements or reports directly to tl
    Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .0(
    of the average assets held hereunder (determined on an annual basis). The Bank is heret
    authorized to deduct such fees from the assets held hereunder at such times as sha
    reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days pric
    written notice. Upon termination, all cash, cash equivalents and other property hel
    hereunder shall be delivered as soon as practicable to the Principal, or such representative c
    the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and th
Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK

Dated: August      , 1999          By: _____

TOM K. COFFEY ROLLOVER IRA

Address:      15 Rock Hill Road          By: _____
              Woodbridge, CT  06525                Tom K. Coffey, M.D.

# NATIONAL BANK
*a division of*
*Connecticut Community Bank, N.A.*

5052

## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank, a division of Connecticut Community Ban
N.A. (the "Bank"), and

## DR. R. LAYTON P.A. 401(K) PLAN

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms an
conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herei
    for investment. The Bank shall accept such property from the Principal and the Bank sha
    invest all such cash and cash equivalents held hereunder, and any interest, dividend or othe
    income earned from property held by the Bank hereunder, in the Bank's deposit mone
    market account until the Bank transfers the funds to Bernard L. Madoff Investment Securitie
    ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by th
    Bank from the Principal to the extent that the transmission of such funds is practical an
    acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as :
    custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS
    under which BLMIS will have full discretionary authority as to the manner in which funds are
    invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and
    has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is
    understood and acknowledged that funds to the Principal which are transmitted to BLMIS wil
    be transmitted together with funds of other persons or entities for whom the Bank is acting ir
    a similar capacity; that the investment account of BLMIS will be under the name "Westpor
    National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with
    funds of other persons or entities for investment with BLMIS; that the Bank has no authority
    or ability to direct or oversee in any manner the discretionary investments made by BLMIS;
    that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility
    for the investment performance of BLMIS; and that the Principal will hold the Bank harmless
    from any liability to BLMIS incurred by the Bank resulting from the performance of
    investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver
    to the Bank at any time, or from time to time, including to request that BLMIS return assets of
    the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal.
    However, unless the Bank receives such written directions, the Bank will invest all funds as
    described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall m·'·tain adequate records indicating the   ·nership by the Principal of investments with BLMIS and held by the Bank as custodian ૭. the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK
A Division Of Connecticut
Community Bank, N.A.

Dated:   July 7, 2004        By: _____

DR. R. LAYTON P.A. 401(K) PLAN

Address:   Suite 101
901 Dulaney Valley Road
Towson, MD 21204

By: _____
Richard E. Layton, Trustee

TIN:  Redacted

JUL 0 8 2004

# WESTPORT®
## N A T I O N A L   B A N K
*a division of*
*Connecticut Community Bank, N.A.*

**CUSTODIAN AGREEMENT**

It is hereby agreed between Westport National Bank, a division of Connecticut Community Bank, N.A. (the "Bank"), and

## DR. R. LAYTON P.A. 401(K) PLAN
## FBO DIANA SKINNER

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.   It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.   The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.   The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK
A Division Of Connecticut
Community Bank, N.A.

Dated:        July 9, 2004                   By: _____ VP

DR. R. LAYTON P.A. 401(K) PLAN
FBO DIANA SKINNER

Address:      Suite 101
              901 Dulaney Valley Road
              Towson, MD  21204

By: _____ Trustee
    Richard E. Layton, Trustee

TIN:    Redacted

JUL 0 8 2004
6900 5053 303

# WESTPORT®
## NATIONAL BANK
*a division of*
*Connecticut Community Bank, N.A.*

## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank, a division of Connecticut Community Bank, N.A. (the "Bank"), and

### DR. R. LAYTON P.A. 401(K) PLAN
### FBO RICHARD E. LAYTON

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall mai⋯in adequate records indicating the ov⋯rship by the Principal of investments with BL⋯S and held by the Bank as custodian for ⋯e Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

**WESTPORT NATIONAL BANK**
A Division Of Connecticut
Community Bank, N.A.

Dated:   July 9, 2004

By: _____ VP

**DR. R. LAYTON P.A. 401(K) PLAN**
**FBO RICHARD E. LAYTON**

Address:   Suite 101
901 Dulaney Valley Road
Towson, MD 21204

By: _____
Richard E. Layton, Trustee

TIN   Redacted

JUL 0 8 2004



# NATIONAL BANK

*a division of*
*Connecticut Community Bank, N.A.*

5004

## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank, a division of Connecticut Community Bank, N.A. (the "Bank"), and

### DR. R. LAYTON P.A. 401(K) PLAN
### FBO SUSAN L. ANNESLEY

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.   The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.   The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.   The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.   This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

**WESTPORT NATIONAL BANK**
A Division Of Connecticut
Community Bank, N.A.

Dated:   July 9, 2004          By: _____ VP

**DR. R. LAYTON P.A. 401(K) PLAN**
**FBO SUSAN L. ANNESLEY**

Address:   Suite 101
901 Dulaney Valley Road
Towson, MD 21204

By: _____
Richard E. Layton, Trustee

TIN   Redacted