# EXHIBIT B

# Part 3

01/23/2009 08:31 FAX  12083196293      CONN. COMM. BANK MAIN                    002/015



# WESTPORT
## NATIONAL BANK

### CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

**Stephen R. Levinson IRA**

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS"), as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds of the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.



DEFENDANT'S
EXHIBIT

01/23/2008 08:32 FAX  12033186299        COHN.COMM.BANK MAIN                    @003/015

4.    The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.    The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.    The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.    This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK

Dated: July 20, 1999                    By: _____


STEPHEN R. LEVINSON IRA

Address:    48 Dogwood Drive         By: _____
            Easton, CT                   Stephen R. Levinson, M.D.

01/23/2008 09:32 FAX  12033188293          CONN.CONN.BANK MAIN                    ☑ 005/015

69 00 1145 304



# WESTPORT
## NATIONAL BANK

### CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### STEPHEN R. LEVINSON ROLLOVER IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.   It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS"), as contemplated by Paragraph 2 hereof.

2.   The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.   The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.



DEFENDANT'S
EXHIBIT

01/23/2008 08:32 FAX 12033196293          CONN. COMM. BANK MAIN                                   ⓛ008/015

4.    The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.    The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.    The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.    This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK

Dated: September 23, 2001                    By: _____

                                                    VICE-PRESIDENT

                                          STEPHEN R. LEVINSON ROLLOVER IRA

Address:    48 Dogwood Drive
            Easton, CT 06612               By: _____
                                                    Stephen R. Levinson

3056



# WESTPORT
## NATIONAL BANK

### CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### STEPHEN R. LEVINSON ROTH IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1. It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS"), as contemplated by Paragraph 2 hereof.

2. The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3. The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.



DEFENDANT'S
EXHIBIT
35
4/29/11

4.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK

Dated: April / 2, 2002                    By: _____ VP

                                              04-15-02

STEPHEN R. LEVINSON ROTH IRA

Address:    48 Dogwood Drive          By: _____
            Easton, CT  06612              Stephen R. Levinson

3



# WESTPORT
## NATIONAL BANK

### CUSTODIAN AGREEMENT

*61-00-5043-300*

It is hereby agreed between Westport National Bank (the "Bank"), and

### NEIL A. GORDON, M.D. P.C. RETIREMENT PLAN

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.   It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.   The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.   The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

**WESTPORT NATIONAL BANK**

Dated: October 18, 2000                         By: _____
                                                                  AVP

                                                **NEIL A. GORDON, M.D. P.C.
                                                RETIREMENT PLAN**

Address:  208 Post Road West
              Westport, CT  06880         By: _____
                                                      Neil A. Gordon, Trustee

Federal TIN:

*11-00-5066-300*



# WESTPORT

## NATIONAL BANK
*a division of*
*Connecticut Community Bank, N.A.*

### CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### NEIL A. GORDON, M.D. P.C. RETIREMENT PLAN
### FBO DANIELA WALSH

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority.  It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

Dated: June 9/2 , 2008

WESTPORT NATIONAL BANK

By: _____

NEIL A. GORDON, M.D. P.C.
RETIREMENT PLAN
FBO DANIELA WALSH

By: _____
Neil A. Gordon, Trustee

Address:    539 Danbury Road
            Wilton, CT 06897

Federal TIN:  Redacted

*(1-00-5060-300*



# WESTPORT[3]
### N A T I O N A L   B A N K
*a division of*
*Connecticut Community Bank, N.A.*

### CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

## NEIL A. GORDON, M.D. P.C. RETIREMENT PLAN
## FBO DONNA BRIA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

_March 18, 2008_

Dated: February   , 2008

_Sub account of_
_5037_

WESTPORT NATIONAL BANK

By: _____

**NEIL A. GORDON, M.D. P.C.**
**RETIREMENT PLAN**
**FBO DONNA BRIA**

Address:        539 Danbury Road
                Wilton, CT  06897

By: _____
                Neil A. Gordon, Trustee

Federal TIN:  Redacted



69 00 3071 30

### CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### PATRICIA RIDZON ROTH IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.   It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.   The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.   The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

**WESTPORT NATIONAL BANK**

Dated: April    , 2003                    By: _____ VP

**PATRICIA RIDZON ROTH IRA**

Address:    802 Rock O'Dundee Road
            South Dartmouth, MA 02748    By: _____
                                             Patricia Ridzon

Soc. Sec. No. ▮▮▮▮▮▮▮▮



### CUSTODIAN AGREEMENT

*61-00-5027-300*

It is hereby agreed between Westport National Bank (the "Bank"), and

### Renee Ridzon Retirement Plan

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.    It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.    The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS.  The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority.  It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.    The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.    The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.    The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.    The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.    This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

**WESTPORT NATIONAL BANK**

Dated: July 20, 1999                          By: _____

**RENEE RIDZON RETIREMENT PLAN**

Address:        947A Rosedale Road N.E.        By: _____
                Atlanta, GA
                                                Renee Ridzon, M.D.



## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### THOMAS J. RIDZON ROLLOVER IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS"), as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.   The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.   The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.   The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.   This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK

Dated: July 29, 1999                    By: _____

THOMAS J. RIDZON ROLLOVER IRA

Address:      802 Rock O'Dundee Road        By: _____
              South Dartmouth, MA  02748           Thomas J. Ridzon, M.D.

Soc. Sec. No. ██████████



# WESTPORT
## BANK & TRUST

### TRUST DEPARTMENT

### CUSTODIAN AGREEMENT

It is hereby agreed between THE WESTPORT BANK & TRUST COMPANY (herein referred to as the "Bank"), and

### JUDITH M. SOUZA IRA

(herein referred to as the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  The Bank will receive and hold such cash, cash equivalents, securities or other property which the Principal transfers to the Bank as custodian under this Custodian Agreement.

2.  The Bank will follow such written directions which the Principal may deliver to the Bank at any time or from time to time, including for the purchase, sale or exchange of securities. However, unless the Bank receives such written directions, the Bank will invest all funds as described in this Custodian Agreement.

3.  The Bank shall also receive and hold and invest hereunder any interest, dividend or other income earned from property held by the Bank hereunder, as well as the proceeds from securities which may mature or be called.

4.  The Bank shall invest all cash and cash equivalent held hereunder in the Bank's deposit money market account until funds are transmitted to the investment firm of Bernard L. Madoff Investment Securities (herein referred to "BLMIS") as contemplated by Paragraph 5 hereof.

5.  The Bank shall transmit to BLMIS all funds received by the Bank from the Principal, and the proceeds of all securities or other property sold by the Bank hereunder at the direction of the Principal, to the extent that the transmission of such funds if practical and acceptable to BLMIS. The Bank, in its capacity as custodian hereunder and for the benefit of the Principal, shall enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. It is understood and acknowledged that funds of the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Webat & Co.", the nominee name of the Bank, that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; and that the Bank assumes no responsibility for the investment performance of BLMIS and will not be liable to the Principal or any other person in the event of any loss by the Principal as a result of investments made by BLMIS.

6.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank, as custodian for the Principal, in its nominee name.

7.  The Bank shall render at least annually statements reflecting the property held by it hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal. It is acknowledged that until the Bank receives written instructions to the contrary, the Principal has directed that all such statements and reports are to be delivered to PSCC Services , Inc. as record keeper for the Principal.

8.  The Bank is directed, as agent for the Principal, to pay from the custodian account maintained under this Custodian Agreement an annual fee to PSCC Services, Inc. for recordkeeping equal to .005 of the average assets held by the Bank under this Custodian Agreement plus .002 for each transaction effected by BLMIS on behalf of the Principal, with a total annual maximum of .035 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCC Services, Inc.

9.  The Bank shall pay from the custodian account maintained under this Custodian Agreement a fee to the Bank for services provided hereunder such charges for the Bank's services as are customarily charged by the Bank and as shall be in effect from time to time. As of the date of this Custodian Agreement, the Bank's annual charge shall be .005 of the average assets held hereunder.

10. This Custodian Agreement may be terminated by either party upon seven days prior written notice. Upon termination, all securities, monies and other property shall be delivered to the Principal, or such other representative as the Principal may direct in writing, as soon as such property is available. The Principal acknowledges and agrees that there may be a charge arising upon such termination for additional services required and that the procedures to effect such termination may take up to three weeks.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

THE WESTPORT BANK & TRUST COMPANY

Dated this **O 4** day of **April** 1996     BY: _Judith_

JUDITH M. SOUZA IRA

_Judith M. Souza_

Judith M. Souza

Address:   146 Matthew Street

New Bedford, MA   02740     Federal EIN: _____



**WESTPORT**
N A T I O N A L   B A N K

### CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### JUDITH M. SOUZA ROLLOVER IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.  The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.  The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.  The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.  This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK

Dated: July 29, 1999                    By: _____

JUDITH M. SOUZA ROLLOVER IRA

Address:     146 Matthew Street         By: _____
             New Bedford, MA  02740              Judith M. Souza

Soc. Sec. No.

WSTPRT 17030