

4230 pablo professional court · suite 200 · jacksonville, florida 32224
904.567.1060 · f  904.567.1065 · www.rfblaw.com

reznicsek  ·  fraser  ·  hastings  ·  white  ·  shaffer
attorneys

April 27, 2011

Clerk of the U.S. Bankruptcy Court
For the Southern District of New York
One Bowling Green
New York, N.Y. 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, N.Y. 10111



Re:   Opposition to Trustee's Determination of Claim in the Matter of
      Bernard L. Madoff Investment Securities LLC

Gentlemen:

        The above firm represents Faye Albert who invested her pension account
and two IRA accounts with Bernard L. Madoff Investment Securities LLC ("BLMIS").
Westport National Bank of Westport, Connecticut ("WNB") acted as Custodian of Ms.
Albert's IRA's and pension plan, assuming the duties previously held by Hudson
United Bank, and transferred the assets of the IRA's and pension plan to BLMIS
pursuant to the Custodian Agreement ("Agreement") between Ms. Albert and WNB.
After it became apparent that the assets of Ms. Albert's IRA's and pension plan had
been stolen by Bernard Madoff ("Madoff"), Ms. Albert submitted claims for the
losses in her IRA accounts and pension account to Irving Picard as SIPA Trustee for
BLMIS.  On April 29, 2011, Mr. Picard rejected Ms. Albert's claims (Claim Numbers
003986, 003987 and 003988) on the stated grounds that "because you did not have
an account [with BLMIS], you are not a customer of BLMIS under SIPA as that term
is defined at 15 U.S.C. Sec. 78lll(2).  This letter is written in opposition to that
determination by the Trustee for the reasons set forth below.

The definition of "customer" in SIPA, 15 U.S.C. Sec. 78lll(2)(B)(i) includes "any person who has deposited cash with the debtor for the purpose of purchasing securities". Subsection (iii) of 15 U.S.C. Sec. 78lll(2)(B) defines "customer" as "any person who has a claim against the debtor arising out of sales or conversions of such securities". Neither subsection states that it is necessary to have "an account " with the debtor to be deemed a "customer" of the debtor. In fact it is common for investors to give cash or securities to a broker for the purpose of opening an account with that broker before an account is formally opened.

By focusing on whether Ms. Albert maintained "an account" with BLMIS, the Trustee relied upon the fact that WNB, rather than establishing multiple accounts with BLMIS in its name as custodian for Ms. Albert and the other investors who entered into custodial agreements with WNB, instead established only one omnibus account with BLMIS. The Agreement clearly provides that the funds invested in that account did not belong to WNB, however. WNB held the funds only as custodian for its custodial customers. A copy of the Agreement is attached hereto as Exhibit A. The Trustee's decision to reject Ms. Albert's claims thus elevates form over substance. It is immaterial whether WNB established one account with BLMIS as custodian for its custodial customers or 100 accounts as custodian for its custodial customers. The assets transmitted to BLMIS by WNB belonged to Ms. Albert and to WNB's other custodial customers and not to WNB.

Appellate court decisions support a reversal of the Trustee's rejection of Ms. Albert's claims. In Focht v. Heebner (In re Old Naples Securities, Inc.), 223 F. 3d 1296 (11th Cir. 2000), the Court considered a situation where a customer wired funds to a company called "Old Naples Financial Services" which was not a registered securities broker dealer but was affiliated with the debtor in that case, "Old Naples Securities", which was a registered securities broker dealer. The SIPC Trustee denied the investors' claim in that case because they wired their funds to Old Naples Financial Services rather than to the debtor, and thus, according to the Trustee, did not "deposit cash with the debtor". The Court noted in its opinion, however that the funds were wired with the expectation that they would be used by Old Naples Securities to purchase bonds and other investments. The Court's opinion stated that:

> "[w]hether a claimant 'deposited cash with the debtor', however, does not (as Focht and the SIPC suggest) depend simply on to whom the claimant handed her cash or made her check payable, or even where the funds were initially deposited. Instead the question is whether there was 'actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation' ". 223 F. 3d at 1302.

Likewise in this case, Ms. Albert clearly delivered cash and securities to WNB with the intention that WNB would transmit those assets to BLMIS for the purchase of securities, which is what in fact occurred. The Trustee does not dispute this, nor does the Trustee dispute the fact that Ms. Albert's assets were converted by Madoff after the assets were transmitted to BLMIS. Under the reasoning of the Focht

decision and the clear unambiguous language of 15 U.S.C. 78lll(2)(B), the Trustee's rejection of Ms. Albert's claims is plainly wrong.

The Tenth Circuit U.S. Court of Appeals reached a similar conclusion in <u>Ahammed v. Securities Investor Corp.</u>, 295 F. 3d 1100 (10th Cir. 2002). In that case, a broker employed by a registered broker dealer instructed his customers to make their checks for the purchase of investments payable to the broker or one of his trade name accounts rather than to the registered broker dealer. The broker then stole the money rather than transmitting it to his employer for investment. The Trustee and SIPC denied the customers' claims because the customers' funds were never deposited with the debtor. The Trustee and SIPC reasoned that since the customers' checks were not made payable to the debtor and because the debtor never actually received the funds, the customers' funds were not deposited "with the debtor". The Court of Appeals reversed the Trustee's denial of the customers' claims on that basis, however, noting that "[w]hether a claimant deposited funds 'with the debtor' does not depend simply on to whom claimants made their checks payable". 295 F. 3d at 1107.

Similarly in Ms. Albert's case, it does not matter that she deposited her cash and securities with WNB as custodian of her IRA and pension plan accounts. What is more important is that such deposits were made with the intention that the cash and securities would be transmitted by WNB to BLMIS for the purchase of securities. Moreover it is undisputed that WNB did in fact transmit Ms. Albert's cash and securities to BLMIS for the purchase of securities, but the funds were stolen by Madoff rather than being used for their intended purpose. This is a classic fact pattern for the application of SIPA coverage to Ms. Albert's claims. Ms. Albert meets the definition of "customer" contained in both 15 U.S.C. 78lll(2)(B)(i) as well as 15 U.S.C. 78lll(2)(B)(iii). Mr. Picard's denial of Ms. Albert's claims was wrongly based upon the Trustee elevating form over substance and should be overruled.

Very truly yours,

Steven J. Gard

Cc:  Ms. Faye Albert

## FAYE S. ALBERT

**4949 S.W. 71ST PLACE**
**MIAMI, FL 33155**

August 17, 1999

Mr. Michael M. O'Brien
First Senior Vice President
Hudson United Bank
455 Prospect Avenue
West Orange, NJ  07052

Re:  Faye S. Albert IRA
- Account No. 1061000332

Dear Mr. O'Brien:

I wish to terminate my IRA account (No. 1061000332) at Hudson United Bank and transfer the assets held therein to my new account at Westport National Bank, which will assume the role of custodian.

Please do not liquidate the investments in my account or return the proceeds to me.  Instead, please make a direct fiduciary-to-fiduciary transfer of the assets in my account to my new IRA account at Westport National Bank.

If you have any questions at all regarding this matter, please call PSCC directly (at 203-226-4238).  They are authorized to act on my behalf in these account transfer matters.

Very truly yours,

_Faye albert_

Faye S. Albert

cc: PSCC Services, Inc.
    Westport National Bank

EXHIBIT __A__



## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

### FAYE S. ALBERT IRA

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1.  It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") , as contemplated by Paragraph 2 hereof.

2.  The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3.  The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4.    The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5.    The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6.    The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7.    This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

**WESTPORT NATIONAL BANK**

Dated: August      , 1999          By: _____

**FAYE S. ALBERT IRA**

Address:      4949 S.W. 71st Place
              Miami, FL  33155          By: _____
                                            Faye S. Albert

Soc. Sec. No.  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

| Form **5305-A** (Rev. January 1998)<br>Department of the Treasury<br>Internal Revenue Service | **Individual Retirement Custodial Account**<br>(Under section 408(a) of the Internal Revenue Code) | **DO NOT File**<br>**With the Internal**<br>**Revenue Service** |
| --- | --- | --- |

| Name of depositor<br>Faye S. Albert | Date of birth of depositor | Identifying number (see instructions)<br>█████0281 |
| --- | --- | --- |

| Address of depositor<br>4949 S.W. 71st Place, Miami, FL 33155 | | Check if Amendment ......▶ ☐ |
| --- | --- | --- |

| Name of custodian<br>Westport National Bank | Address or principal place of business of custodian<br>1495 Post Road East, Westport, CT 06880 |
| --- | --- |

The depositor whose name appears above is establishing an individual retirement account under section 408(a) to provide for his or her retirement and for the support of his or her beneficiaries after death.

The custodian named above has given the depositor the disclosure statement required under Regulations section 1.408-6.

The despositor has assigned the custodial account _____ dollars ($ _____ ) in cash.

The despositor and the custodian make the following agreement:

### Article I

The custodian may accept additional cash contributions on behalf of the depositor for a tax year of the depositor. The total cash contributions are limited to $2,000 for the tax year unless the contribution is a rollover contribution described in section 402(c), 403(a)(4), 403(b)(8), 408(d)(3), or an employer contribution to a simplified employee pension plan as described in section 408(k).

### Article II

The depositor's interest in the balance in the custodial account is nonforfeitable.

### Article III

1. No part of the custodial funds may be invested in life insurance contracts, nor may the assets of the custodial account be commingled with other property except in a common trust fund or common investment fund (within the meaning of section 408(a)(5)).

2. No part of the custodial funds may be invested in collectibles (within the meaning of section 408(m)) except as otherwise permitted by section 408(m)(3), which provides an exception for certain gold, silver, and platinum coins, coins issued under the laws of any state, and certain bullion.

### Article IV

1. Notwithstanding any provision of this agreement to the contrary, the distribution of the depositor's interest in the custodial account shall be made in accordance with the following requirements and shall otherwise comply with section 408(a)(6) and Proposed Regulations section 1.408-8, including the incidental death benefit provisions of Proposed Regulations section 1.401(a)(9)-2, the provisions of which are incorporated by reference.

2. Unless otherwise elected by the time distributions are required to begin to the depositor under paragraph 3, or to the surviving spouse under paragraph 4, other than in the case of a life annuity, life expectancies shall be recalculated annually. Such election shall be irrevocable as to the depositor and the surviving spouse and shall apply to all subsequent years. The life expectancy of a nonspouse beneficiary may not be recalculated.

3. The depositor's entire interest in the custodial account must be, or begin to be, distributed by the depositor's required beginning date, April 1 following the calendar year end in which the depositor reaches age 70½. By that date, the depositor may elect, in a manner acceptable to the custodian, to have the balance in the custodial account distributed in:

(a) A single sum payment.

(b) An annuity contract that provides equal or substantially equal monthly, quarterly, or annual payments over the life of the depositor.

(c) An annuity contract that provides equal or substantially equal monthly, quarterly, or annual payments over the joint and last survivor lives of the depositor and his or her designated beneficiary.

(d) Equal or substantially equal annual payments over a specified period that may not be longer than the depositor's life expectancy.

(e) Equal or substantially equal annual payments over a specified period that may not be longer than the joint life and last survivor expectancy of the depositor and his or her designated beneficiary.

4. If the depositor dies before his or her entire interest is distributed to him or her, the entire remaining interest will be distributed as follows:

(a) If the depositor dies on or after distribution of his or her interest has begun, distribution must continue to be made in accordance with paragraph 3.

(b) If the depositor dies before distribution of his or her interest has begun, the entire remaining interest will, at the election of the depositor or, if the depositor has not so elected, at the election of the beneficiary or beneficiaries, either

(i) Be distributed by the December 31 of the year containing the fifth anniversary of the depositor's death, or

(ii) Be distributed in equal or substantially equal payments over the life or life expectancy of the designated beneficiary or beneficiaries starting by December 31 of the year following the year of the depositor's death. If, however, the beneficiary is the depositor's surviving spouse, then this distribution is not required to begin before December 31 of the year in which the depositor would have reached age 70½.

(c) Except where distribution in the form of an annuity meeting the requirements of section 408(b)(3) and its related regulations has irrevocably commenced, distributions are treated as having begun on the depositor's required beginning date, even though payments may actually have been made before that date.

(d) If the depositor dies before his or her entire interest has been distributed and if the beneficiary is other than the surviving spouse, no additional cash contributions or rollover contributions may be accepted in the account.

Form 5305-A (Rev. 1-98)                                                                                                      Page **2**

5. In the case of a distribution over life expectancy in equal or substantially equal annual payments, to determine the minimum annual payment for each year, divide the depositor's entire interest in the custodial account as of the close of business on December 31 of the preceding year by the life expectancy of the depositor (or the joint life and last survivor expectancy of the depositor and the depositor's designated beneficiary, or the life expectancy of the designated beneficiary, whichever applies). In the case of distributions under paragraph 3, determine the initial life expectancy (or joint life and last survivor expectancy) using the attained ages of the depositor and designated beneficiary as of their birthdays in the year the depositor reaches age 70½. In the case of a distribution in accordance with paragraph 4(b)(ii), determine life expectancy using the attained age of the designated beneficiary as of the beneficiary's birthday in the year distributions are required to commence.

6. The owner of two or more individual retirement accounts may use the "alternative method" described in Notice 88-38, 1988-1 C.B. 524, to satisfy the minimum distribution requirements described above. This method permits an individual to satisfy these requirements by taking from one individual retirement account the amount required to satisfy the requirement for another.

## Article V

1. The depositor agrees to provide the custodian with information necessary for the custodian to prepare any reports required under section 408(i) and Regulations sections 1.408-5 and 1.408-6.

2. The custodian agrees to submit reports to the Internal Revenue Service and the depositor prescribed by the Internal Revenue Service.

## Article VI

Notwithstanding any other articles which may be added or incorporated, the provisions of Articles I through III and this sentence will be controlling. Any additional articles that are not consistent with section 408(a) and the related regulations will be invalid.

## Article VII

This agreement will be amended from time to time to comply with the provisions of the Code and related regulations. Other amendments may be made with the consent of the persons whose signatures appear below.

*Note: The following space (Article VIII) may be used for any other provisions you want to add. If you do not want to add any other provisions, draw a line through this space. If you do add provisions, they must comply with applicable requirements of state law and the Internal Revenue Code.*

## Article VIII

Depositor's signature _____*Fz albt*_____                                         Date  <u>August        ,  1999</u>

Custodian's signature _____                     Date _____

Witness' signature _____
(Use only if signature of the depositor or the custodian is required to be witnessed.)

## General Instructions
*(Section references are to the Internal Revenue Code unless otherwise noted.)*

### Purpose of Form
*Note: Users of the October 1992 revision of Form 5305-A are not required to use the January 1998 revision of the form.*

Form 5305-A is a model custodial account agreement that meets the requirements of section 408(a) and has been automatically approved by the IRS. An individual retirement account (IRA) is established after the form is fully executed by both the individual (depositor) and the custodian and must be completed no later than the due date of the individual's income tax return for the tax year (without regard to extensions). This account may be created in the United States for the exclusive benefit of the depositor or his or her beneficiaries.

Individuals may rely on regulations for the Tax Reform Act of 1986 to the extent specified in those regulations.

Do not file Form 5305-A with the IRS. Instead, keep it for your records.

For more information on IRAs, including the required disclosures the custodian must give the depositor, see Pub. 590, Individual Retirement Arrangements (IRAs).

### Definitions
**Custodian.** The custodian must be a bank or savings and loan association, as defined in section 408(n), or any person who has the approval of the IRS to act as custodian.

**Depositor.** The depositor is the person who establishes the custodial account.

### Identifying Number
The depositor's social security number will serve as the identification number of his or her IRA. An employer identification number (EIN) is required only for an IRA for which a return is filed to report unrelated business taxable income. An EIN is required for a common fund created for IRAs.

### IRA for Nonworking Spouse
Form 5305-A may be used to establish the IRA custodial account for a nonworking spouse.

Contributions to an IRA custodial account for a nonworking spouse must be made to a separate IRA custodial account established for the nonworking spouse.

### Specific Instructions
**Article IV.** Distributions made under this article may be made in a single sum, periodic payment, or a combination of both. The distribution option should be reviewed in the year the depositor reaches age 70½ to ensure that the requirements of section 408(a)(6) have been met.

**Article VIII.** Article VIII and any that follow it may incorporate additional provisions that are agreed to by the depositor and custodian to complete the agreement. They may include, for example, definitions, investment powers, voting rights, exculpatory provisions, amendment and termination, removal of the custodian, custodian's fees, state law requirements, beginning date of distributions, accepting only cash, treatment of excess contributions, prohibited transactions with the depositor, etc. Use additional pages if necessary and attach them to this form.

*Note: Form 5305-A may be reproduced and reduced in size.*

STF FED5485F.2