HEARING DATE: JUNE 7, 2011 AT 10:00 AM

**MILBERG LLP**
One Pennsylvania Plaza
New York, New York 10119
Tel.: (212) 594-5300

**SEEGER WEISS LLP**
One William Street
New York, New York 10004
Tel.: (212) 584-0700

*Attorneys for Morning Mist Holdings Limited and Miguel Lomeli*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

In re:

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                          Debtor,

-----------------------------------------------------------

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                          Plaintiffs,

        vs.

FAIRFIELD SENTRY LIMITED, et al.,

                          Defendants.

---------------------------------------------------------x

Adv. Pro. No. 08-01789 (BRL)

SIPA LIQUIDATION

(Substantively Consolidated)




Adv. Pro. No. 09-1239 (BRL)


*caption continued on next page*

———————————————————————x

In re:                                                   Chapter 15 Case

FAIRFIELD SENTRY LIMITED, et al.,        Case No. 10-13164 (BRL)
                                                         Jointly Administered
        Debtors in Foreign Proceedings.

———————————————————————x

**DERIVATIVE PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
(i) OBJECTION TO SETTLEMENT AND, IN THE ALTERNATIVE,
(ii) MOTION TO STAY ANY APPROVAL PENDING APPEAL OF
CHAPTER 15 RECOGNITION ORDER ISSUED IN CASE NO. 10-13164**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................1

THE RESPONSES LACK MERIT .....................................................................................2

    A.    Objectors' Substantial Possibility of Success on Appeal ......................................4

    B.    Objectors' Irreparable Injury ...............................................................................6

    C.    No Harm to Others.............................................................................................10

    D.    The Public Interest ............................................................................................12

    E.    Balancing of Interests .......................................................................................12

    F.    No Bond is Appropriate......................................................................................13

CONCLUSION...............................................................................................................14

## PRELIMINARY STATEMENT

Objectors Morning Mist Holdings Limited and Miguel Lomeli respectfully submit this reply in further support of (i) their Objection to the proposed settlement between BLMIS' Trustee and Sentry's Liquidators, or, in the alternative, (ii) their motion for entry of an Order staying the approval order pending completion of all appeals from the Chapter 15 Recognition Order.

Responses to Objectors' filing have been submitted by BLMIS' Trustee[1] and Sentry's Liquidators ("Krys").[2] Those responses rely upon legally and factually invalid arguments, and fail to negate Objectors' showing that any approval of the Settlement should be stayed pending the appeal of the Recognition Order.

---

[1] *See* Trustee Irving H. Picard's Response to the Objections to the Settlement Between the Trustee and the Foreign Representatives for and Joint Liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited ("Trustee Resp.").

[2] *See* Foreign Representatives' Reply in Opposition to Derivative Plaintiffs' (I) Objection to Settlement and, in the Alternative, (II) "Motion" to Stay any Approval Pending Appeal of Chapter 15 Recognition Order Issued in Case No. 10-13164 ("Krys Resp."). Reference is also made herein to the following documents:

- "Objection": Derivative Plaintiffs' (i) Objection to Settlement and, in the Alternative, (ii) Motion to Stay any Approval Pending Appeal of Chapter 15 Recognition Order Issued in Case No. 10-13164;

- "Picard Affidavit": May 9, 2011 Affidavit of Irving H. Picard, Trustee; and

- "Trustee Motion": Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure Approving an Agreement By and Between the Trustee and Kenneth Krys and Joanna Lau, Solely in Their Respective Capacities as the Foreign Representatives for and Joint Liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited.

## THE RESPONSES LACK MERIT

1.      Both the Trustee and Krys improperly challenge Objectors' standing.  Standing

exists, however, because approval of the Settlement could severely prejudice Objectors and the

Derivative Action, even if the Recognition Order is reversed on appeal.  *See Zupnick v. Fogel*,

989 F.2d 93, 98 (2d Cir. 1993); *In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957

F.2d 1020, 1026 (2d Cir. 1992).

2.      For his standing argument, Krys contends that each of the Objectors is a

beneficial -- but not a *registered* shareholder -- of Sentry.  *See* Krys Resp. ¶ 6 & n.4.  Even if that

is true (a proposition that is disputed), that would not negate Objectors' standing, particularly

where, as here, Objectors have standing to maintain the Derivative Action.  *See* N.Y. Bus. Corp.

Law §§ 626(a), 1319(a)(2); *Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255, 261 (2d Cir. 1984)

(noting that § 626 is "made applicable to foreign corporations by § 1319," explaining that "the

New York legislature has expressly decided to apply certain provisions of the state's business

law [including § 626] to any corporation doing business in the state, regardless of its domicile").[3]

The potential damage to the Derivative Action from the proposed Settlement suffices to establish

standing here.

3.      The Trustee disputes that the viability of the Settlement depends upon the ultimate

affirmance of the Recognition Order, but even a cursory review of the Settlement Agreement

shows otherwise.  By way of example, if the Recognition Order is reversed, then the Liquidators'

---

[3] Krys wrongly relies on *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007) (Krys Resp. ¶ 5).  That case addresses whether a settlement conforms to the "absolute priority rule" under 11 U.S.C. § 1129(b)(2)(B)(ii), and is thus fair and equitable in the context of a reorganization plan.  *Id.* at 462-63 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).  Those issues are not before the Court.

209 redeemer cases in this Court would be nullified, and thus there would be no proceeds from

those cases to share with the Trustee.  Similarly, a reversal of the Recognition Order (including

the lifting of the stay of the Derivative Action) could well nullify the Liquidators' purported

assignment to the Trustee of Sentry's claims against management.  Those claims -- even by

Krys' own estimate -- exceed $919 million in value, and that value could be altogether destroyed

by an assignment.  *See* Objection ¶¶ 27-28.  That prospect alone threatens irreparable injury.

4.    The Trustee also attempts to side-step the pending District Court cases in *Picard*

*v. HSBC* and *Picard v. JP Morgan*-- calling them a "red herring." Trustee Resp. ¶ 12.  Those

cases, however, underscore issues going to the heart of the Settlement, including the viability of

the Trustee's claims against JPMorgan (as well as the sharing of recoveries from that case with

Sentry),[4] and the assignment of claims to the Trustee (as well as the sharing of recoveries from

those claims with Sentry).

5.    Also meritless is Krys' argument that Objectors are proceeding in the wrong

court. *This* Court is being asked to approve the proposed Settlement.  Objectors have properly

moved for a stay in this Court, as any approval during the pendency of the appeal of *this Court's*

Recognition Order to the District Court -- unless stayed -- could substantially prejudice the rights

of Objectors and the Derivative Action (which is also pending in *this Court*).  Indeed, in his

response, Krys relies extensively on U.S. caselaw (not BVI law), *see, e.g.*, Krys Resp. ¶¶ 5, 13,

17, 20-22, 25, further showing the propriety of proceeding here.  In short, Krys filed his Chapter

15 petition *here*; Objectors were not required to go *there*.

---

[4] On June 3, 2011, JPMorgan moved to dismiss the Trustee's action.  *See* Dkt. Nos. 32-33, 11
Civ. 913 (S.D.N.Y.).

6. It is also noteworthy that material in the BVI Proceeding concerning the proposed settlement, namely a "witness statement" of Krys, was filed in the BVI court *under seal*. *See* Exh. A hereto (June 5, 2011 email of Daniel J. Saval, Esq.). That fact further negates any suggestion that Objectors should have gone to the BVI court.

7. Krys' laches argument is nonsensical. *See* Krys Resp. ¶¶ 12-13. Objectors filed their Objection expeditiously, within days following Krys' and the Trustee's filing of the proposed Settlement with this Court. While Objectors could have waited until *after* the Court's ruling on the Settlement to file a motion to stay any approval order, they did so *prior* to the entry of any order. That is not laches.[5]

### A.    Objectors' Substantial Possibility of Success on Appeal

8. Objectors have shown a substantial possibility of success on their pending appeal. Krys rehashes arguments in support of recognition, including BVI-related liquidation activities that are irrelevant as a matter of law. *See Lavie v. Ran*, 607 F.3d 1017, 1028 (5th Cir. 2010).

9. Objectors have also shown a substantial possibility of prevailing on their argument, under 11 U.S.C. § 1506, that recognition is manifestly contrary to U.S. public policy, given the secrecy of the BVI Proceedings.

10. As he did at the July 2010 hearing on the Chapter 15 Petition, Krys relies on lawyer's argument, not evidence, to justify the secrecy. *See* Krys Resp. ¶ 18 (quoting his lawyers' argument). But counsel's argument is no substitute for evidence. *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) (per curiam).

---

[5] Krys makes an unseemly *ad hominem* attack against Objectors' counsel, suggesting that the Objection is designed to garner attorneys' fees. Krys Resp. ¶ 1. To the extent that anything is fee-driven, it is Krys' Response and his efforts to avoid an appellate reversal of the Recognition Order. Among other things, a reversal would nullify the 209 redeemer actions that he and his counsel are litigating before this Court.

11.    Krys' submission of a new declaration from his BVI lawyer, William Hare (Dkt. 432, Case No. 10-13164) does not cure the problem. That declaration is too little, too late, and cannot be used to support Krys' argument that the Chapter 15 appeal has no substantial possibility of success. In all events, the new declaration does not justify the BVI Proceeding's secrecy, and should be stricken.

12.    Hare's argument, if valid, would support the wholesale sealing of Trustee Picard's filings with this Court.[6] Such an approach (like the wholesale sealing of the BVI record, as noted in connection with the Chapter 15 hearing) clearly would be contrary to public policy, and contrary to the Section 107(a) of the U.S. bankruptcy code[7] -- which "evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994).[8]

---

[6] As noted above, unlike the Picard Affidavit filed publicly in this Court, Krys filed a *sealed* witness statement about the Settlement with the BVI court. *See* Exh. A hereto.

[7] Section 107(a) provides:

> Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a).

[8] Krys cites *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333 (S.D.N.Y. 2006) (Krys Resp. ¶ 20), which held that a non-jury trial in a foreign proceeding did not manifestly violate U.S. public policy. 349 B.R. at 337 ("it is difficult to detect what unfairness a plaintiff suffers from having a civil case decided by a judge rather than a jury."). *Ephedra* is inapposite, as the BVI Proceeding's secrecy -- not the fact that there is no jury -- violates fundamental policy. Similarly inapposite is *In re British Am. Isle of Venice (BVI), Ltd.*, 441 B.R. 713 (Bankr. S.D. Fla. 2010); that case involved a potential conflict of interest on the part of the foreign representative, not the wholesale secrecy of a foreign proceeding. *Id.* at 717.

13.    Krys' contention that Objectors could have gone to the BVI and filed an

application "to seek access to documents filed in the BVI Proceedings," Krys Resp. ¶ 20,

improperly conflates a *discovery* issue with Chapter 15's public policy issue of whether this

Court should "recognize" a secret foreign proceeding.  Moreover, Krys first disclosed the

secrecy of those proceedings shortly before the July 22, 2010 hearing on the Chapter 15 Petition,

*see* 2d Hare Decl. ¶ 10 (Dkt. No. 35 in Case 10-13164, filed July 16, 2010) (noting "the sealing

of the BVI Court's files"), making intervention into the BVI Proceedings -- even if otherwise

warranted -- impracticable.  In all events, Krys came here to seek recognition.  Objectors were

not required to go to the BVI (especially on such short notice) in an attempt to mitigate the

public policy problem under U.S. law.

### B.    Objectors' Irreparable Injury

14.    As shown in the Objection (¶¶ 23-26), although the Derivative Action (filed on

May 15, 2009) asserted claims against PWC and Citco, Sentry has never sued those entities.  If

Any suit now by Krys would raise potential statute of limitations problems.  If Krys then

resolved those claims (for example, through settlement) and the stay of the Derivative Action

were subsequently lifted (following an appellate reversal of the Recognition Order), PWC and

Citco would contend that the claims asserted against them in the Derivative Action are released.

This outcome could well prevent Sentry from maximizing the value of those claims, and result in

irreparable injury.  In response, Krys represented to the Court:

> [A]s counsel to the Objectors know, the Foreign Representatives have
> executed tolling agreements with the PwC and Citco entities, thereby
> preventing applicable statute of limitations from running.

*See* Krys Resp. ¶ 24.

15.    Notwithstanding this representation, Krys' counsel (in response to Objectors'

subsequent information request) has advised that, in fact, the Liquidators "do not have a tolling

6

agreement with PwC International." *See* Exh. B hereto (June 3, 2011 email from Daniel J. Saval,

Esq.). PWC International is one of the three PWC defendants named in the Derivative Action.

16.    Moreover, although not disclosed in the Krys Response, Krys' tolling agreements

with PWC Canada and PWC Netherlands commence on April 6, 2010 and March 15, 2010,

respectively, *id.*, *i.e.*, well *after* the Objectors filed their Derivative Action against those entities

in May 2009. Thus, the PWC claims in the hands of the Liquidators suffer from statute of

limitations problems that do not confront the Derivative Action. Krys' counsel also has

represented that the tolling agreements with the Citco entities commence on January 25, 2010,

*id.*; that date too is many months after the Objectors sued those entities in the Derivative Action.

Thus, there can be no dispute that the PWC and Citco claims, in the hands of the Liquidators,

have serious statute of limitations problems, and that those claims have been seriously

jeopardized.[9]

17.    As shown in the Objection (¶ 24), the Liquidators also have a potential standing

problem with respect to claims against PWC and Citco, under the Second Circuit's decision in

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991). Krys responds,

claiming that the Derivative Action may face *in pari delicto* issues. *See* Krys Resp. ¶ 25 (citing,

*inter alia*, *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 459 n.3 (2010)). But under *Kirschner*, "in

pari delicto is an affirmative defense, not a matter of standing." 15 N.Y.3d at 459 n.3. In the

context of the Derivative Action, the defense would simply be one of several to be litigated; it

---

[9] Krys insinuates -- but stops short of actually stating -- that an engagement letter requires that
suit against PWC Netherlands be brought in the Netherlands. *See* Krys Resp. ¶ 24. Objectors
dispute that suit may only be brought there; in all events, Krys does not contend that the
derivative claims against PWC Netherlands would be untimely if refiled there.

would not immediately trigger the potentially value-destructive consequences of the standing issue faced by the Liquidators.

18.     Additionally, Krys' proposed assignment to the Trustee of Sentry's claims against its management threatens irreparable injury. *See* Objection ¶¶ 27-28.  That assignment, under applicable caselaw, may be legally invalid.  Krys does not dispute the point (although he says that "it is not clear" that upcoming District Court decisions on the assignability issue would apply here). *See* Krys Resp. ¶ 26 n.13; *see generally Picard v. HSBC Bank*, 2011 U.S. Dist. LEXIS 44126, at *16 (S.D.N.Y. Apr. 25, 2011) ("[I]t is far from clear that SIPA permits as broad a theory of assignee standing as is being asserted by the Trustee in this case.  Indeed, at least four courts have concluded that SIPA only permits assignments of customers' net equity claims and not claims against third parties.").

19.     The assignment, if invalid, could lead to the destruction of management claims valued by Krys at over $919 million, to the detriment of both the Trustee and Sentry. *See* Objection ¶¶ 27-28.  Management would then claim that the assignment invalidated the claims asserted against them in the Derivative Action, further threatening the claims.

20.     Krys' suggestion that the management claims, if invalid in the Trustee's hands, would be *restored* to him, see Krys Resp. ¶ 26, is contradicted by the Settlement. *See* Settlement Agreement ¶ 5 (assignment of management claims is "unconditional[] and irrevocabl[e]").

21.     Krys' alternative response that the settling parties could "modify the Agreement in writing," Krys Resp. ¶ 26, is equally unavailing, as the Trustee would have little incentive to agree to a modification (as he would then be competing against Krys for management's assets).

22.     The assignment of such claims to the Trustee could well be value-destructive for yet another reason.  As shown in the Objection (¶ 32), the Trustee claims that Sentry's

management participated with Madoff in the fraud.  Such allegations could destroy the Trustee's

standing to assert the claims, under the *Wagoner* doctrine.  *See Shearson Lehman Hutton v.

Wagone*r, 944 F.2d at 118.

23.     The only way to maximize the value of Sentry's claims against management is to

maintain them in the Derivative Action.  To assign those claims to the Trustee threatens

enormous irreparably injury, including the destruction of over $900 million in claims (by Krys'

own estimate), and billions of dollars of claims against management, as asserted in the

Derivative Action.

24.     For his part, the Trustee attempts to downplay the irreparable injury and potential

damage to the Derivative Action from the Settlement, claiming that Sentry would not benefit

from the Derivative Action.  For this bold proposition, the Trustee relies on a red herring,

cavalierly stating that "the Trustee, as the Fund[']s largest creditor would lay claim to all …

proceeds [from the Derivative Action]."  Trustee Resp. ¶ 10.

25.     The Trustee's claims notwithstanding, his actual ability to recover anything from

Sentry -- whether that recovery derives from recoveries in the Derivative Action or elsewhere --

would depend on his ability to *prove* his case against Sentry.  To date, the Trustee has proved

nothing.

26.     Indeed, the Trustee has conceded that the outcome of his litigation against Sentry

is "uncertain."  *See* Picard Affidavit ¶ 4 (settlement avoids "the need for protracted, costly

litigation, *the outcome of which is uncertain*.") (emphasis supplied).  The Trustee's claims

against Sentry, moreover, are sharply disputed.  *See* Trustee Motion ¶ 9 ("The Liquidators …

have disputed any liability to the BLMIS Estate …."); *id.* ¶ 29.  Thus, the Trustee's suggestion

that he would be entitled to all recoveries in the Derivative Action is entirely speculative.

### C.    No Harm to Others

27.     Other parties will not sustain any meaningful harm from a stay pending the appeal of the Recognition Order. That appeal could well be decided shortly (as all the briefing and the oral argument have concluded).

28.     Krys claims potential harm from a stay, citing the proposed $230 million allowed claim for Sentry as a benefit of the Settlement, *see* Krys Resp. ¶ 27; however, nothing in the record suggests that a stay would create any harm, or that any proceeds from the allowed claim would be paid anytime soon. There is, for example, no showing that, absent a stay, Krys would receive payment on the allowed claim *prior to determination of the appeal*. Indeed, the Trustee has conceded that the dates and amounts of any payments on the proposed allowed claim are entirely speculative. *See* Exh. C hereto (June 3, 2011 email from Mark A. Kornfield, Esq.: the Trustee "cannot and will not speculate" about those matters).[10] In all events, if at some future time during the pendency of the stay, the Trustee were prepared to pay Sentry's allowed claim, the issue could be revisited at that time.

29.     Grasping at straws, Krys speculates about harm from a stay *if* it "continues for more than one year." Krys Resp. ¶ 15; *see* Settlement Agreement ¶ 18 (providing for termination if settlement is not effective in one year, unless the parties agree to additional time). The answer to this is simple. If the appeal of the Recognition Order is not determined within a

---

[10] We understand that the Trustee has filed a motion to make an interim, 4% distribution to various customers with allowed claims. *See* Dkt. 4048, Case 08-01789 ("4% Motion"). But that motion relates to claims allowed *as of March 31, 2011*; it does not apply to later allowed claims, like the one proposed by the Settlement. *See* 4% Motion, at ¶ 5. Thus, even an allowed claim today for Sentry says nothing about when (or how much of) that claim would be paid out by the Trustee. The timing of such future payments, as the Trustee has conceded, is speculative.

year from now (an unlikely event) and the Trustee does not agree to an extension, Krys can seek

to lift the stay.

30.    Krys also argues that a stay pending appeal could reduce "interim distributions to

other BLMIS customers." Krys Resp. ¶ 27. To be sure, a stay could delay Sentry's payment of

$24 million to the Trustee, due on the "effective date" of the settlement. In the context of these

proceedings, however, the impact of that delay (if any) on any interim distributions to BLMIS

customers would not be meaningful. Moreover, Krys has not shown that any need by the Trustee

to "reserve" for Sentry's customer claim could have a meaningful impact on interim distributions

during the period prior to determination of the appeal, or that the Trustee has even set up a

reserve.

31.    Finally, Krys posits -- in the vaguest of terms -- that a stay would "interfere" with

"joint prosecution and settlement strategies contemplated by the Agreement." Krys Resp. ¶ 27.

Although it is unclear what claims would be jointly prosecuted, we assume that Krys is referring

to his claims against Sentry's redeemers (and the Trustee's claims against BLMIS' subsequent

transferees). But the viability of Krys' claims against redeemers (as asserted in the 209 redeemer

actions pending in this Court) depends upon the outcome of the appeal on the Recognition Order,

*with or without a stay*. Thus, a stay could create no harm with respect to those claims.

32.    For this part, the Trustee argues that a stay would "delay" his receipt of $70

million from Sentry. Trustee Resp. ¶ 13. Under the Settlement, however, only $24 million is

due on the "effective date" of the agreement; the balance is due upon the occurrence of

subsequent, speculative events, *see* Settlement Agreement ¶¶ 2, 18, 20, and there has been no

showing that any of those events is likely to occur (if at all) during a stay. And, a delayed receipt

of $24 million in the context of this case does not constitute meaningful harm sufficient to defeat a stay.

33.    The Trustee also contends that, in the absence of a settlement, Sentry "could end up with no [allowed] claim," *see* Trustee Resp. ¶ 11, wholly ignoring the alternative possibility that Sentry could "end up" with a multi-billion dollar allowed claim. *See* Trustee Motion ¶¶ 10-11 (noting Sentry's claims aggregating over $6.28 billion, or $1.19 billion under "Net Equity Method"). In all events, if the Settlement is approved, the proposed stay would not undo the allowed claim.

### D.    The Public Interest

34.    The public interest will be served by a stay. A stay will promote the public interest in appellate review of the Recognition Order (including, importantly, the application of Chapter 15's "public policy" exception, 11 U.S.C. § 1506), while at the same time enabling Sentry, through the Derivative Action, to maximize the value of its claims against management, PWC and Citco. To the extent that the Trustee has any valid, *provable* claims against Sentry, he and the BLMIS estate also will benefit from the maximization of the value of Sentry's claims.

### E.    Balancing of Interests

35.    The balance of interests tips decidedly in favor of a stay. A stay would result in no meaningful harm to others, but the absence of a stay will impose enormous, irreparable injury on Objectors, the Derivative Action and Sentry's shareholders, including the potential destruction of billions of dollars of claims against Sentry's management and service providers. In turn, to the extent that the Trustee had valid, provable claims against Sentry and would be entitlted to any of the recoveries from the Derivative Action, the absence of a stay could substantially harm the Trustee and BLMIS' estate as well.

### F.    No Bond is Appropriate

36.    Krys' request for a bond of $230 million (or higher) is frivolous. Krys can show no cognizable harm from a stay (much less harm of $230 million). Krys' request is based on the amount of the allowed claim, as proposed under the Settlement. *See* Krys Resp. ¶ 30. But imposition of a bond here would be "irrational" and "unnecessary," as the absence of a bond would "not unduly endanger" Krys or Sentry. *See Morgan Guaranty Trust Co. v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988) (citation omitted); *see also Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1154 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987).

37.    This is not a case involving a judgment *against* the Objectors, or one where Objectors seek to defer, pending appeal, a judgment requiring them to pay Krys. Rather, Krys' request seems to be based on the notion that a stay would endanger the proposed $230 million allowed claim. But the stay -- whatever the outcome of the appeal -- will *not* endanger the allowed claim.

38.    As previously noted, the timing (and amount) of any payments on the allowed claim are entirely speculative. *See* Exh. C hereto. There is no suggestion that such payments would be made prior to the determination of the appeal. That fact negates any harm. *Compare with In re Calpine Corp.*, 2008 Bankr. LEXIS 217, at *22 (Bankr. S.D.N.Y. Jan 24, 2008) (Lifland, J.) (explaining that bond would be justifiable where, *inter alia*, it "would cover only the aggregate additional interest expense the Debtors could suffer if they were unable to close on their existing exit financing ...."). In all events, if, at some future date while the appeal is still pending, the Trustee is prepared to pay out on the $230 million allowed claim, then the bond request can be revisited at that time.

## CONCLUSION

39.    The Court should defer any approval of the Settlement at this time.  Alternatively,

if the Court approves the Settlement, it should stay the ruling pending disposition of the appeal

from the Recognition Order.  The Court also should deny Krys' request for a bond.


Dated:  June 6, 2011                        Respectfully submitted,

                                            **MILBERG LLP**

                                            By:  /s/ Robert A. Wallner
                                                 Robert A. Wallner
                                            Kent A. Bronson
                                            Kristi Stahnke McGregor
                                            One Pennsylvania Plaza
                                            New York, New York 10119
                                            Tel.: (212) 594-5300
                                            Fax:  (212) 868-1229
                                            rwallner@milberg.com
                                            kbronson@milberg.com
                                            kmcgregor@milberg.com

                                            **SEEGER WEISS LLP**
                                            Stephen A. Weiss
                                            Christopher M. Van de Kieft
                                            Parvin Aminolroaya
                                            One William Street
                                            New York, New York 10004
                                            Tel.: (212) 584-0700
                                            Fax: (212) 584-0799
                                            sweiss@seegerweiss.com
                                            cvandekieft@seegerweiss.com
                                            paminolroaya@seegerweiss.com

                                            ***Attorneys for Morning Mist Holdings Limited and
                                            Miguel Lomeli***

DOCS\559875v1

# Exhibit A

| | |
|---|---|
| **From:** | Saval, Daniel J. [DSaval@brownrudnick.com] |
| **Sent:** | Sunday, June 05, 2011 12:56 PM |
| **To:** | Wallner, Robert; Molton, David J.; William.Hare@forbeshare.com; Quinn, Kerry L.; Orenstein, May |
| **Cc:** | Bronson, Kent; McGregor, Kristi Stahnke; Slidders, Charles; Weiss, Stephen; Aminolroaya, Parvin |
| **Subject:** | RE: In re Fairfield Sentry, Picard v. Sentry |
| **Attachments:** | Notice of Hearing To Consider Approval of The Agreement Between Irving Picard And Fairfield Sentry Limited.pdf |

Rob:

On May 13, 2011, Brown Rudnick (on behalf of the Liquidators) filed a notice in the Chapter 15 case regarding the June 8, 2011 hearing before the BVI Court to consider approval of the settlement agreement. We attached to that notice copies of the Liquidators' applications on behalf of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited for approval of the agreement, along with the other papers filed therewith (including a witness statement of Kenneth Krys). You were previously served with a copy of that notice with all attachments, but for your reference I attach it to this email.

We are advised by Forbes Hare that the only other submission the Liquidators have filed with the BVI Court with respect to the settlement agreement was a subsequent witness statement of Kenneth Krys. That witness statement has been filed under seal as it contains privileged information. If you have any questions in this regard, you can directly contact Will Hare of Forbes Hare. You can also address any issues or concerns you have in this regard to the BVI Court.

Regards,

Dan

---

**From:** Wallner, Robert [mailto:RWallner@milberg.com]
**Sent:** Saturday, June 04, 2011 11:31 AM
**To:** Molton, David J.; Saval, Daniel J.; William Hare (William.Hare@forbeshare.com); Quinn, Kerry L.; Orenstein, May
**Cc:** Bronson, Kent; McGregor, Kristi Stahnke; Slidders, Charles; Weiss, Stephen; 'Aminolroaya, Parvin'
**Subject:** In re Fairfield Sentry, Picard v. Sentry

David, Dan, May and Kerry:

  Please provide us copies of any submissions made on behalf of the Liquidators to the BVI Court in support of the proposed settlement with the BLMIS Trustee. (In his 6/2/11 Declaration, Mr. Hare (at paragraph 15) says that we have not contacted him for additional information, so we are copying him on this email as well.).

  Because of the press of time, we would appreciate it if you supply us copies (or pdfs) by tomorrow. If this is a problem, kindly so advise. Thank you.

6/6/2011

Robert A. Wallner
Attorney at Law

 **MILBERG**ᴸᴸᴾ

One Pennsylvania Plaza, 49th Floor
New York, NY 10119
T  212.594.5300
F  212.273.4400
rwallner@milberg.com

  

```
================================================================================
This electronic message transmission contains ATTORNEY PRIVILEGED AND CONFIDENTIAL information i
================================================================================
```

*************************************************************************

IRS Circular 230 Disclosure: To ensure compliance with U.S. Treasury Regulations governing tax practice, we inform you that:

Any U.S. tax advice contained in this communication (including attachments) was not written to be used for and cannot be used for (i) purposes of avoiding any tax related penalties that may be imposed under Federal tax laws, or (ii) the promotion, marketing or recommending to another party of any transaction or matter addressed herein.

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

*************************************************************************

6/6/2011

**Exhibit B**

| | |
|---|---|
| **From:** | Saval, Daniel J. [DSaval@brownrudnick.com] |
| **Sent:** | Friday, June 03, 2011 11:34 AM |
| **To:** | Wallner, Robert; Molton, David J. |
| **Cc:** | Bronson, Kent; McGregor, Kristi Stahnke; Slidders, Charles; Weiss, Stephen; PAminolroaya@seegerweiss.com |
| **Subject:** | RE: Fairfield sentry |

Rob:

Without prejudice to the Foreign Representatives' rights and positions on these matters, and without conceding that the requested information is relevant to your objection or that the Foreign Representatives have any obligation to provide it to you, we will provide you with the following information:

The Foreign Representatives have tolling agreements with (i) PwC Canada commencing on April 6, 2010, (ii) PwC Netherlands commencing on March 15, 2010, and (iii) all Citco entities commencing on January 25, 2010, each of which are still in effect. The Foreign Representatives do not have a tolling agreement with PwC International.

Regards,

Dan

-----Original Message-----
From: Wallner, Robert [mailto:RWallner@milberg.com]
Sent: Thursday, June 02, 2011 11:39 PM
To: Molton, David J.; Saval, Daniel J.
Cc: Bronson, Kent; McGregor, Kristi Stahnke; Slidders, Charles; Weiss, Stephen; 'PAminolroaya@seegerweiss.com'
Subject: Re: Fairfield sentry

Same question for Citco entities.
--------------------------
Sent using BlackBerry


----- Original Message -----
From: Wallner, Robert
To: 'dmolton@brownrudnick.com' <dmolton@brownrudnick.com>; 'DSaval@brownrudnick.com' <DSaval@brownrudnick.com>
Cc: Bronson, Kent; McGregor, Kristi Stahnke; Slidders, Charles; 'sweiss@seegerweiss.com' <sweiss@seegerweiss.com>; 'PAminolroaya@seegerweiss.com' <PAminolroaya@seegerweiss.com>
Sent: Thu Jun 02 22:53:47 2011
Subject: Fairfield sentry

Your brief of this evening references tolling agreement with PWC. Do you have tolling agreements with each of the 3 PWC defendants named in the Derivative Action? Also, when does the tolling for each begin? Please respond by noon tomorrow.

6/6/2011

Sent using BlackBerry

=============================================================================
======
This electronic message transmission contains ATTORNEY PRIVILEGED AND
CONFIDENTIAL information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended
recipient, you are hereby notified that any dissemination, distribution
or copy of this communication is strictly prohibited. If you have
received this communication in error, please erase all copies of the
message and its attachments and notify sender immediately. Thank You.
=============================================================================
======


*************************************************************************

IRS Circular 230 Disclosure: To ensure compliance with U.S. Treasury Regulations governing tax practice, we inform you that:

Any U.S. tax advice contained in this communication (including attachments) was not written to be used for and cannot be used for (i) purposes of avoiding any tax related penalties that may be imposed under Federal tax laws, or (ii) the promotion, marketing or recommending to another party of any transaction or matter addressed herein.

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

*************************************************************************

6/6/2011

**Exhibit C**

**Wallner, Robert**

| | |
|---|---|
| **From:** | Kornfeld, Mark A. [mkornfeld@bakerlaw.com] |
| **Sent:** | Friday, June 03, 2011 4:46 PM |
| **To:** | Wallner, Robert; Sheehan, David J.; Long, Thomas; Hirschfield, Marc E. |
| **Cc:** | 'Molton, David J.'; 'Saval, Daniel J.'; Quinn, Kerry L.'; 'morenstein@brownrudnick.com'; Bronson, Kent; McGregor, Kristi Stahnke; Slidders, Charles; Weiss, Stephen; 'Aminolroaya, Parvin' |
| **Subject:** | RE: In re Fairfield Sentry; Picard v. Fairfield Sentry |

Mr Wallner:

Good afternoon.  Please consider this the Trustee's response to your questions below:

Putting to the side, the Trustee's position that the requests themselves are highly inappropriate and otherwise irrelevant to the June 7, 2011 hearing before Judge Lifland, please be advised that the Trustee cannot and will not speculate about the items raised by your questions below.

All rights reserved.

Respectfully,

Mark A. Kornfeld


**My Bio  |  Web site  |  V-card**

T 212.589.4652          Mark Kornfeld
F 212.589.4201          mkornfeld@bakerlaw.com

www.bakerlaw.com
                        Baker & Hostetler LLP
                        45 Rockefeller Plaza
                        New York, New York 10111


**Baker Hostetler**

---

**From:** Wallner, Robert [mailto:RWallner@milberg.com]
**Sent:** Friday, June 03, 2011 9:01 AM
**To:** Sheehan, David J.; Kornfeld, Mark A.; Long, Thomas; Hirschfield, Marc E.
**Cc:** 'Molton, David J.'; 'Saval, Daniel J.'; Quinn, Kerry L.; 'morenstein@brownrudnick.com'; Bronson, Kent; McGregor, Kristi Stahnke; Slidders, Charles; Weiss, Stephen; 'Aminolroaya, Parvin'
**Subject:** In re Fairfield Sentry; Picard v. Fairfield Sentry

We write with respect to yesterday's filing by Fairfield Sentry's Liquidators, in which they opposed the Derivative Plaintiffs' request for a stay of any approval of the settlement agreement between Trustee Picard and the Liquidators, pending appeal of the Chapter 15 Recognition Order.
At Paragraph 30 their submission, the Liquidators requested a bond of $230 million (which is the amount of the Allowed Claim, as proposed by the settlement).

We have the following questions:

    1. What is the Trustee's best estimate of the total amount that will be paid in respect of the proposed Allowed Claim?

    2. What is the Trustee's best estimate of (i) the date(s) when the payment(s) on the Allowed Claim payment will be made, and (ii) the amount of each payment (assuming multiple payments are anticipated)?

Because of the press of time, we would appreciate an answer to these questions by the close of business today.  Thank you.

Robert A. Wallner
Attorney at Law

 **MILBERG** LLP

One Pennsylvania Plaza, 49th Floor
New York, NY 10119
T  212.594.5300
F  212.273.4400
rwallner@milberg.com

  

=======================================================================
This electronic message transmission contains ATTORNEY PRIVILEGED AND CONFIDENTIAL informat
=======================================================================

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.