**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
(212) 209-4800
David J. Molton
May Orenstein
Daniel J. Saval
Kerry L. Quinn

*Attorneys for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | **Adv. Pro No. 08-01789 (BRL)** |
| **Bernard L. Madoff Investment** ) | |
| **Securities LLC,** ) | **SIPA LIQUIDATION** |
| ) | |
| Debtor. ) | **(Substantively Consolidated)** |
| ) | |
| ) | |
| **Irving H. Picard, Trustee for the** ) | |
| **Liquidation of Bernard L. Madoff** ) | |
| **Investment Securities LLC,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **Adv. Pro. No. 09-1239 (BRL)** |
| vs. ) | |
| ) | |
| **Fairfield Sentry Limited, et al.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| In re: ) | |
| ) | **Chapter 15 Case** |
| **Fairfield Sentry Limited, <u>et al.</u>,** ) | |
| ) | **Case No. 10-13164 (BRL)** |
| Debtors in Foreign Proceedings. ) | |
| ) | **(Jointly Administered)** |
| ) | |

**FOREIGN REPRESENTATIVES' REPLY IN OPPOSITION TO DERIVATIVE
PLAINTIFFS' (I) OBJECTION TO SETTLEMENT AND, IN THE ALTERNATIVE,
(II) "MOTION" TO STAY ANY APPROVAL PENDING APPEAL OF CHAPTER 15
<u>RECOGNITION ORDER ISSUED IN CASE NO. 10-13164</u>**

Kenneth Krys and Joanna Lau (together with their predecessors, the "Foreign Representatives" or "Liquidators"), in their capacities as the duly appointed foreign representatives for, and joint liquidators of, Fairfield Sentry Limited (in liquidation), Fairfield Sigma Limited (in liquidation), and Fairfield Lambda Limited (in liquidation) (collectively, the "Fairfield Funds"), debtors in the above-captioned jointly administered Chapter 15 cases, through their United States attorneys Brown Rudnick LLP, hereby submit this reply in opposition to the *Derivative Plaintiffs' (i) Objection to Settlement and, in the Alternative, (ii) "Motion" to Stay Any Approval Pending Appeal of Chapter 15 Recognition Order Issued in Case No. 10-13164* (the "Objection"), [Adv. Pro. No. 09-1239 (BRL), Dkt. 76; Case No. 10-13164 (BRL), Dkt. 426], and hereby state as follows:[1]

## PRELIMINARY STATEMENT

1.      The Objection, including the request for a stay requested therein, is improperly lodged in these proceedings, procedurally defective, untimely, and entirely without merit. The objectors, Morning Mist Holdings Limited and Miguel Lomeli (the "Objectors"), beneficially hold in the aggregate less than 0.0002 percent of Sentry's total shares (and neither of the Objectors is a direct shareholder of Sentry), and do not claim to have any interests in the BLMIS estate.[2] By their Objection, they seek to hold up this Court's approval of a global settlement that will benefit the victims of the Madoff Ponzi scheme – both those direct investors in BLMIS and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to them in the BLMIS Trustee's *Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure Approving An Agreement by and Between the Trustee and Kenneth Krys and Joanna Lau, Solely in Their Respective Capacities as the Foreign Representatives for and Joint Liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited* [Adv. Pro. No. 09-01239 (BRL); Dkt. 69] (the "BLMIS Settlement Motion").

[2] See July 16, 2010 *Declaration of Kenneth Krys In Further Support of Debtors' Petitions* [Case No. 10-13164 (BRL); Dkt. 33] (the "2d Krys Dec.") ¶ 3.

2

those who invested in its largest feeder fund, Fairfield Sentry Limited ("Sentry") – because such approval "could potentially prejudice" their purported parochial interests and investments in a derivative action purportedly brought on behalf of Sentry (the "Derivative Action"), see Objection at ¶¶ 1, 11, the principal "interests" of which, the Foreign Representatives submit, are likely the attorneys' fees of counsel for the Derivative Plaintiffs.  As the Court knows, the Derivative Action has been stayed since July 22, 2010 as a result of this Court's order recognizing the Debtors' BVI liquidation proceedings as foreign main proceedings under Chapter 15 [Case No. 10-13164 (BRL); Dkt. 47] (as amended by two errata orders, the "Recognition Order").

2. The Objection can be readily disposed of on the ground that the Objectors do not have standing to raise it in these proceedings.  At issue in the BLMIS Settlement Motion is whether the Settlement Agreement between the Trustee and the Foreign Representatives satisfies the standards of Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") – i.e., whether the Settlement Agreement is fair and equitable and in the best interests of the *BLMIS* estate.  The Objectors claim that the Settlement Agreement may prejudice their interests as purported Sentry shareholders and as plaintiffs in the Derivative Action.  See Objection ¶ 1, 11.  These objection points have nothing to do with the impact of the Settlement Agreement on the BLMIS estate or any of its stakeholders.  As the Objectors are well aware, a hearing has been scheduled before the Commercial Division of the High Court of Justice, British Virgin Islands (the "BVI Court") – the court overseeing the Fairfield Funds' BVI liquidation proceedings, i.e., the foreign main proceedings (the "BVI Proceedings") – for June 8, 2011, to consider approval of the Settlement Agreement on behalf of the Fairfield Funds' estates.[3]

---

[3]     See *Notice of Hearing Pursuant To 11 U.S.C. § 1518 Before The Commercial Division of The High Court of Justice, British Virgin Islands, To Consider Approval of The Agreement By And Among*

Because the Objectors have raised objections solely with respect to their interests as Sentry stakeholders, they do not have standing to make them in these proceedings, but rather must raise them before the BVI Court. In any case, whatever speculative impact the Settlement Agreement may have on the stayed Derivative Action, that is plainly not a basis to reject, or even delay, approval of the settlement, which provides immediate, tangible benefits to BLMIS investors and the stakeholders of the Fairfield Funds.

3. The Objectors' alternative "request" for a stay pending the determination of the Recognition Order appeal with respect to Sentry, made without regard for the procedural requirements of the Bankruptcy Rules (whether pursuant to Rules 8011 or 9013), is equally deficient. Putting aside the numerous incomplete and misleading statements in support thereof, it is procedurally defective and untimely. The Objectors seek the unprecedented relief of a stay of an order in one case (the order approving the Settlement Agreement in the substantively consolidated BLMIS Proceedings) pending the appeal of an order *entered over 10 months ago* in an entirely separate case (the Recognition Order with respect to Sentry, entered in the Fairfield Funds' Chapter 15 cases on July 22, 2010). The Objectors' efforts to seek a stay are wildly dilatory and the doctrine of laches should, we respectfully submit, summarily preclude the relief sought. Even if this Court were to consider the stay request (notwithstanding the procedural and timing defects), the Objectors do not come close to satisfying the requirements for such extraordinary relief. Accordingly, the Objection should be overruled in its entirety.

4. The Settlement Agreement provides substantial benefits to the stakeholders of both the BLMIS estate and the Fairfield Funds' estates. Among other things, the Settlement

---

*Kenneth Krys And Joanna Lau, Solely In Their Respective Capacities As The Foreign Representatives For And Joint Liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited, And Fairfield Lambda Limited, And Irving Picard, As Trustee For The Substantively Consolidated Liquidations of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff* [Case No. 10-13164 (BRL); Dkt. 411].

4

Agreement provides a mechanism for the BLMIS Trustee and the Foreign Representatives to work together, and not against each other, to pursue and enhance the value of their respective claims and causes of action, against parties with clawback liabilities and/or who bear liability for the massive losses suffered by the victims of the Madoff Ponzi scheme. There is no sound basis to deny or stay approval of the Settlement Agreement to accommodate the self-serving agenda of the Objectors and their counsel. This Court should approve the Settlement Agreement, and no stay of any kind should be granted.

## ARGUMENT

### I.    THE OBJECTORS LACK STANDING TO ASSERT THEIR OBJECTION IN THESE PROCEEDINGS

5. The Settlement Motion is a motion by the *BLMIS Trustee* seeking approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019(a). When considering a motion pursuant to Rule 9019(a), a Bankruptcy Court's primary focus is whether the proposed settlement is fair, equitable and in the best interests of the moving debtor's estate. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007); In re Chemtura Corp., 439 B.R. 561, 593 (Bankr. S.D.N.Y. 2010). In this case, the estate at issue in connection with the BLMIS Settlement Motion is the *BLMIS estate*, and not the Fairfield Funds' estates – which, as the Objectors well know, are separately administered in the BVI Proceedings.

6. The Objection amounts to an objection by alleged *de minimus*[4] beneficial shareholders of Sentry to approval of the Settlement Agreement with respect to Sentry's estate. The Objectors assert their objection in their purported capacities as "Sentry shareholders and plaintiffs in a derivative action filed on behalf of Sentry," Objection ¶ 1, and contend that approval of the Settlement Agreement without a stay "would result in irreparable injury to Objectors and Sentry." Id. ¶ 22. At no point in their Objection do the Objectors argue that the Settlement Agreement should not be approved because of its impact on the BLMIS estate or BLMIS stakeholders, or because of any claimed interest they have in the BLMIS estate (indeed, the Derivative Plaintiffs have failed to identify, let alone allege, any such interest). Accordingly, the Objectors lack standing in these proceedings to assert their Objection. See In re Refco Inc., 505 F.3d 109, 116-119 (2d Cir. 2007) (investors of a creditor of the debtor do not have standing to object to a Rule 9019 settlement motion on behalf of the debtor).[5]

7. The Objectors are not without the right to assert their Objection before a court of competent jurisdiction; however, they have filed the Objection in the wrong court. As the Court, and the Derivative Plaintiffs and their counsel, are well aware, a hearing will be held before the BVI Court on June 8, 2011 to consider approval of the Settlement Agreement *on behalf of the Fairfield Funds' estates* (the "BVI Approval Hearing"). On May 13, 2011, the Foreign Representatives filed the 1518 Notice in the Chapter 15 cases, advising parties of the BVI Approval Hearing and their right to be heard in connection therewith, and providing parties

---

[4] *As the Foreign Representatives have previously explained, neither of the Objectors are registered holders of shares issued by Sentry, but rather have indirect, beneficial interests in shares held by actual direct shareholders of Sentry. See 2d Krys Dec. ¶ 3.*

[5] The two cases cited by the Objectors in footnote 6 of their Objection to support their argument that they have standing are inapposite because these cases involve objections to a class action settlement and not objections to a motion to approve a settlement in a bankruptcy proceeding pursuant to Bankruptcy Rule 9019.

6

with contact information of the Foreign Representatives' BVI counsel and advising parties to contact the Foreign Representatives' BVI counsel with respect to any questions or requests for further information. See *Notice of Hearing Pursuant To 11 U.S.C. § 1518 Before The Commercial Division of The High Court of Justice, British Virgin Islands, To Consider Approval of The Agreement By And Among Kenneth Krys And Joanna Lau, Solely In Their Respective Capacities As The Foreign Representatives For And Joint Liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited, And Fairfield Lambda Limited, And Irving Picard, As Trustee For The Substantively Consolidated Liquidations of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff* [Case No. 10-13164 (BRL); Dkt. 411] (the "1518 Notice"). The Objectors' counsel was served with a copy of this notice. See *Affidavit of Service of Christopher Michael Lau Kamg of Brown Rudnick LLP* [Case No. 10-13164 (BRL); Dkt. 412]. Nevertheless, to date, the Objectors have not filed an objection to the Settlement Agreement with the BVI Court, nor have they otherwise have appeared the BVI Proceedings. See June 2, 2011 *Declaration of William Hare In Support of Foreign Representatives' Reply*, filed contemporaneously herewith (the "Reply Hare Dec.") ¶¶ 7, 14. Nor have they indicated to the Foreign Representatives' U.S. counsel, Brown Rudnick LLP, or general counsel in the BVI, Forbes Hare, that they intend to participate at the BVI Approval Hearing, notwithstanding that they have a full and fair opportunity to do so. Id.

8. Apart from the fact that the Objectors lack standing and filed their objection in the wrong court, their Objection lacks any substantive basis. They contend that the Settlement Agreement is "inextricably tied to the outcome of the appeal of the Recognition Order," Objection ¶ 12, but that is not true. The resolution of the Objectors' appeal of the Recognition Order is not a condition to the effectiveness of the Settlement Agreement.

7

9. Moreover, any actions that the Foreign Representatives take in the United States[6] that would purportedly affect the Derivative Action -- such as the prosecution and settlement of the Fairfield Funds' claims -- would be in furtherance of their rights upon Chapter 15 recognition.[7]  In other words, and despite their efforts to conflate the impact of Chapter 15 recognition with approval of the Settlement Agreement, the Objection boils down to a procedurally improper and untimely collateral attack on the Recognition Order. The Objection should be overruled.

## II. THE COURT SHOULD NOT STAY APPROVAL OF THE AGREEMENT

### A. The Stay Request Is Facially Defective.

10. The Objectors' "request" for a stay, as alternative relief, is defective on a number of procedural and substantive bases. First and foremost, what the Objectors seek is an unprecedented stay of an order (the order approving the Settlement Agreement) entered in one case (the BLMIS Proceedings) pending the disposition of an appeal of a separate, independent order (the Recognition Order with respect to Sentry) in a separate, independent case (the Fairfield Funds' Chapter 15 cases). The Foreign Representatives are unaware of any authority,

---

[6] Clearly, the Objectors' appeal of the Recognition Order with respect to Sentry can have no impact on the Foreign Representatives' pursuit and resolution of the Fairfield Funds' claims and causes of action outside of the United States. The litigation recoveries subject to sharing between the parties are not limited to those from claims and causes of action pursued in the United States. See, e.g., Settlement Agreement ¶ 4 (providing for the sharing of recoveries from Redeemer Actions "asserted by the Liquidators…in any jurisdiction").

[7] The Recognition Order granted the relief requested by the Foreign Representatives under Section 1521(a), including "entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the [Foreign Representatives]." See Recognition Order at 10. Moreover, this Court expressly held in the Recognition Order that "granting the requested relief under section 1521 of the Code fosters the 'fair and efficient administration of [the Debtors'] cross-border insolvencies' by ensuring that only one unbiased party – the Liquidators – quarterback the Debtors' causes of action 'in the interests of all creditors and other interested entities, including the debtor.' See 11 U.S.C. § 1501(a)(3)." Id.

and the Objectors have not provided any, justifying such relief.[8]

11.     The BLMIS Trustee is not even a party to the appeal of the Recognition Order with respect to Sentry; yet, the Objectors are asking that this Court effectively enjoin him from consummating the Settlement Agreement for an indefinite time period pending the disposition of that appeal.  Such relief would offend basic principles of fairness and equity.  The stay request therefore can, and should, be summarily rejected.

### B.    The Stay Request Is Belated And Barred By The Doctrine Of Laches.

12.     The stay request is also untimely.  The Objectors candidly acknowledge that the Foreign Representatives disclosed in June 2010 – *almost one year ago* – that they sought Chapter 15 recognition to, *inter alia*, "facilitate a consensual resolution of the Madoff Trustee's BLMIS Adversary Proceeding against Sentry benefitting stakeholders in and of Sentry and the Madoff estate…."  See Objection ¶ 4 (citing June 14, 2010 *Declaration of Kenneth Krys In Support of Debtors' Petitions* [Case No. 10-13164 (BRL); Dkt. 3] (the "1st Krys Dec.") ¶ 43).  Despite having this knowledge for almost a year, the Objectors did not pursue a stay of the Recognition Order with respect to Sentry pending the disposition of their appeal.  Rather, the Objectors have waited until now, after the Foreign Representatives have committed substantial resources to achieving one of their central goals following Chapter 15 recognition, to argue that any order approving the Settlement Agreement should be stayed pending the outcome of their appeal.

13.     The equitable doctrine of laches permits a court to deny consideration of a motion where the moving party unreasonably delays asserting a right that prejudices the opposing party. See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 395 (2d Cir.

---

[8]     The Objectors claim to be moving for a stay of an order approving the Settlement Agreement under Bankruptcy Rule 8005, but nothing in the Rule provides or even suggests that a stay of the kind requested by Objectors is permissible or appropriate.  Rule 8005 would, however, contemplate a stay of the Recognition Order with respect to Sentry pending appeal, but the Objectors have never moved for such a stay following the Court's entry of the Recognition Order on July 22, 2010.

2002); see also In re Bradley, 369 B.R. 147, 154 (Bankr. S.D.N.Y. 2007) ("Laches is an equitable defense which allows a court to dismiss an action when there exists inexcusable delay in instituting an action and prejudice to the non-moving party as a result of the delay."). Here, the Objectors' wildly dilatory request for a stay is barred by the doctrine of laches, given the prejudice that would redound to the Fairfield Funds' (and BLMIS) estates if such a stay was granted.

14. Staying an order approving of the Settlement Agreement pending disposition of the appeal of the Recognition Order with respect to Sentry would undoubtedly result in prejudice to the Foreign Representatives and the Fairfield Funds' estates. The Fairfield Funds will receive substantial (and in some cases, immediate) benefits under the Settlement Agreement, including an allowed customer claim against the BLIMS estate in the amount of $230 million, a significant portion of the proceeds recovered by the BLMIS Trustee in Subsequent Transferee Claims (as defined in the Settlement Agreement), and a release of substantial claims by the BLMIS Trustee against the Fairfield Funds. See Settlement Agreement ¶¶ 7-9, 13, 15. Staying an order approving the Settlement Agreement will prevent the Fairfield Funds' estates from realizing those benefits.

15. Moreover, if that stay continues for more than one year, then the Agreement will terminate by its own terms and there are no assurances that another agreement with the BLMIS Trustee will be reached, or that it will be reached on terms as beneficial for the Fairfield Funds' estates. See Settlement Agreement ¶ 18. In that case, the Foreign Representatives will again face the threat of having to engage in costly and time-consuming litigation with the BLMIS Trustee, to the detriment of the stakeholders of the estates of both the Fairfield Funds and

BLMIS. Accordingly, it is respectfully requested that the Court deny the stay request on the basis that it is barred by the doctrine of laches.[9]

### C. Objectors' Cannot Demonstrate That A Stay Pursuant To Bankruptcy Rule 8005 Is Warranted.

16. As the Objectors note, courts in the Second Circuit consider four factors in determining whether to grant a stay pending an appeal under Bankruptcy Rule 8005: (i) whether the movant has established a substantial possibility of success on appeal; (ii) whether the movant will suffer irreparable injury absent a stay; (iii) whether a party will suffer substantial injury if a stay is issued; and (iv) the public interest. Objection ¶ 14. Despite their contentions to the contrary, the Objectors cannot demonstrate that any of these factors warrant staying approval of the Agreement.

(i) *Objectors Are Unlikely To Succeed on Appeal*.

17. In arguing that there is a substantial possibility of success on appeal, the Objectors rehash the same arguments that this Court previously considered and rejected when this Court made well-considered findings that Sentry's center of main interests ("COMI") is in the BVI. See Objection ¶ 18. The Objectors mistakenly argue, as they did in the Chapter 15 recognition proceedings, that the Fairfield Funds' and then the Foreign Representatives' conduct, management and administration of the Fairfield Funds in and from the BVI since December 2008 cannot be the basis for the Court's finding of a BVI COMI. See Objection ¶ 20.[10]

---

[9] The Objectors suggest that because briefing and argument have been completed in Objectors' appeal to the District Court, the delay caused by the stay would be relatively short. See Objection ¶ 16. This statement is entirely misleading, because (i) there is no indication when the District Court will issue its decision on the appeal, and (ii) it seems likely that the Objectors will take their appeal of the Recognition Order with respect to Sentry to the Second Circuit Court of Appeals, if the District Court affirms the Recognition Order.

[10] In support of their argument, the Objectors again cite to Lavie v. Ran, 607 F.3d 1017 (5th Cir. 2010), and In re Bear Stearns High-Grate Structured Credit Strategies Master Fund, Ltd., 389 B.R. 325 (S.D.N.Y. 2008), which they relied on in objecting to the Debtors' Chapter 15 petitions. However, the

However, Objectors again fail to note and inform the Court of cases that directly hold otherwise and defeat their position. See In re British Am. Ins. Co., 425 B.R. 884, 914 (Bankr. S.D. Fla. 2010) ("There may be instances where a foreign representative remains in place for an extended period, and relocates all of the primary business activities of the debtor to his location (or brings business to a halt), thereby causing creditors and other parties to look to the [foreign representative] as the location of a debtor's business. This could lead to the conclusion that the center of its main interest has become lodged with the foreign representative."); In re British Am. Isle of Venice, Ltd., 441 B.R. 713, 723 (Bankr. S.D. Fla. 2010) (citing the Recognition Order and finding that "[i]n light of the [foreign representative's] concerted efforts on behalf of the Debtor, and the extended passage of time since his appointment, third parties must necessarily consider the [foreign representative's] offices in the British Virgin Islands to be the location of the Debtor's COMI.").

18.     The Objectors have also failed to demonstrate the viability of their "public policy" argument. Objectors have asserted in the appeal that the Recognition Order with respect to Sentry violates the public policy exception under Section 1506 because the BVI Court has ordered the sealing of the file in the BVI Proceedings (the "Sealing Order"). Objection ¶ 21. As

---

Objectors continued reliance on these cases is misplaced. In Lavie, the Fifth Circuit held that "if Ran's bankruptcy proceeding and associated debtors, alone, could suffice to demonstrate *an establishment*, this would render the framework of Chapter 15 meaningless." Id. at 1028 (emphasis supplied). However, the quoted language from Lavie is applicable only to the analysis of whether a foreign proceeding is a foreign non-main proceeding, which requires the debtor to maintain an "establishment" – or place where nontransitory economic activity is conducted – in the foreign jurisdiction. See id. Similarly, the Objectors again misrepresent the District Court's decision in Bear Stearns, where it held that the minimal activities in the Cayman Islands of the joint provisional liquidators, *who were appointed on the same day that the Chapter 15 petition was filed*, were insufficient to support a finding that the debtor's COMI was in the Cayman Islands, where the debtor's management, administration and tangible assets were in the United States on or before the Chapter 15 filing date. Id. at 338. In the Debtors' Chapter 15 cases, this Court found that all of the relevant factors, including the Foreign Representatives' prolonged operation and administration of the Debtors' businesses in and from the BVI, evidenced that the Debtors' COMI lies in the BVI and not elsewhere. See In re Fairfield Sentry, 440 B.R. 60, 65 (Bankr. S.D.N.Y. 2010).

the Court was made aware during the Chapter 15 recognition hearing, the Sealing Order was entered due to the requirement that the Foreign Representatives must, in accordance with their orders of appointment[11] by the BVI Court, obtain approval from the BVI Court for significant actions affecting the Fairfield Funds' estates, which requires applications to the BVI Court that include explanations of the Foreign Representatives' litigation strategy and/or other information protected by attorney-client privilege.  See July 22, 2010 Transcript of Hearing [Case No. 10-13164, Dkt. 49] (the "Recognition Hearing Tr.") 96 ("As Mr. Hare's declaration noted, the pleadings to Judge Bannister are done by the liquidators for sanction for litigation actions and other actions at the advice of counsel, and accordingly, those pleadings implicate -- it's not like a contested pleading here -- implicate attorney/client privilege as well as litigation strategy.  Judge Bannister sealed those on his own accord."); see also Reply Hare Dec. ¶ 6 n.1.

19.     Section 1506 permits the Court to abstain from acting under Chapter 15 only if doing so in a particular case would be "manifestly contrary" to U.S. public policy.  See 11 U.S.C. § 1506. As a threshold matter, however, the BVI Court's Sealing Order does not even trigger the Section 1506 inquiry because sealing of confidential materials is customary under, and does not conflict with, U.S. law.  See Recognition Hearing Tr. 98 ("I'm not going to go further into the issue . . . . We enter sealing orders here perhaps all too often at the request of a party or where it becomes obvious that it's necessary, but again, as I say, all too often.").

20.     Even assuming *arguendo* that the BVI Court's Sealing Order was in conflict with U.S. law, the public policy exception under Section 1506 does not apply because, *inter alia*, BVI law provides the Objectors with procedural fairness in the BVI Proceedings.  Specifically, as explained in the Reply Hare Dec., applicable provisions of BVI law provide the Objectors

---

[11]    True and accurate copies of the BVI Court's orders appointing the Foreign Representatives were submitted to this Court along with the Debtors' Chapter 15 petitions.  See, e.g., Case No. 10-13164 (BRL); Dkt. 3, Exhibit A.

13

(and any other interested party) with the express right and opportunity to make an application before the BVI Court to address their concerns with the Sealing Order, to seek access to documents filed in the BVI Proceedings, and/or to otherwise challenge the Foreign Representatives' actions and decisions. See Reply Hare Dec. ¶¶ 7-8; see also In re Ephedra Prods. Liability Litig., 349 B.R. 333, 335 (S.D.N.Y. 2006) ("[A] foreign judgment should generally be accorded comity if 'its proceedings are according to the course of a civilized jurisprudence,' i.e., fair and impartial."); In re Brit. Am. Venice, 441 B.R. at 718 (granting recognition of a BVI insolvency proceeding where BVI law provided adequate procedural fairness). Moreover, counsel to the Foreign Representatives have specifically (i) advised the Objectors of their right to appear before and be heard by the BVI Court on these issues, and (ii) noticed the Objectors with respect to their right to be heard at the BVI Hearing on the Settlement Agreement. See Recognition Hearing Tr. at 96 ("To the extent that [the Objectors] have a problem with [the BVI Court's Sealing Order], they can make an application to the proper court for the unsealing of those records."); see also 1508 Notice ¶ 3 ("Any interested party that wishes to be heard on the Applications, or to make a submission to the BVI Court in connection therewith, may do so in accordance with British Virgins Islands law and procedure."). However, they have, to date, refused to avail themselves of any of these rights. See Reply Hare Dec. ¶¶ 9, 14.

21.     Given the Objectors' rights under BVI law to address their issues with the Sealing Order before the BVI Court, and their failure to avail themselves of such rights to date, the Objectors cannot be heard to complain that the BVI Proceedings lack fundamental protections or standards of fairness – which must be established for the public policy exception to apply. See In re Brit. Am. Venice, 441 B.R. at 718 ("In any case, the [BVI Insolvency] Act provides

14

[objectors] with the right to be heard by the BVI Court on this issue and, again, [objectors] did not address its concerns with the BVI Court. Based on the evidence before the court, there is no reason to believe that procedural fairness is generally lacking in the BVI Proceeding. In light of the rights accorded to [objectors] in the Act, nor does it appear there is a need to adopt additional procedural protections for the benefit of [objectors].").[12]

22.    Because the Objectors do not offer any new evidence or legal authority that would change the Court's decision to recognize Sentry's BVI liquidation proceeding as a foreign main proceeding, they have failed to demonstrate a substantial possibility of success on appeal. See In re Calpine Corp., 2008 Bankr. LEXIS 217, at *18 (Bankr. S.D.N.Y. Jan. 24, 2008) (holding that movants failed to show a substantial possibility of success on appeal where they "simply rehash the same arguments" that the Court previously rejected).

(ii)    *The Objectors Cannot Demonstrate Irreparable Injury*.

23.    The Objectors claim that approval of the Settlement Agreement would result in irreparable injury to the Objectors and Sentry because, according to the Objectors, the Foreign Representatives' ability to maximize their claims against PwC and Citco is "substantially compromised." See Objection ¶ 22. This claim is specious.

24.    First, as counsel to the Objectors know, the Foreign Representatives have executed tolling agreements with the PwC and Citco entities, thereby preventing applicable statute of limitations from running. See Objection ¶ 23. If anything, Objectors should be concerned with the manner in which their own counsel may have jeopardized the claims which they had sought to assert on behalf of Sentry in the Derivative Action. Namely, counsel to the

---

[12]    Objectors' public policy argument also fails because they have not established that recognition of the BVI Proceedings severely impinges upon the value and import of a United States statutory or constitutional right in a manner that would hinder this Court's ability to carry out the most fundamental policies and purposes of such rights. See In re Qimonda AG Bankr. Litig., 433 B.R. 547, 568-69 (E.D. Va. 2010); In re Ephedra Prods. Liability Litig., 349 B.R. at 335.

Objectors filed claims against PwC Netherlands in New York (as part of the Derivative Action), notwithstanding that Sentry's relevant engagement agreement with PwC Netherlands contains what may be an exclusive and mandatory Netherlands forum selection clause, thereby subjecting those claims to possible summary dismissal in the United States. See Krys v. Sugrue (In re Refco Securities Litig.), 07-MDL-1902 (JSR) (S.D.N.Y. Jan. 21, 2010) (Rakoff, J.) [Dkt. 532] (dismissing plaintiffs' action in the United States against PwC Cayman in its entirety since the debtor's engagement letter with PwC Cayman contained a mandatory Cayman Islands forum selection clause).

25. Further, the Objectors' contention that the claims against PwC and/or Citco are less valuable if pursued by the Foreign Representatives due to the potential application of the *in pari delicto* doctrine, see Objection ¶ 24 n.10, is disingenuous. In taking this position, the Objectors wholly ignore the recent decision in Teachers' Retirement System of Louisiana and City of New Orleans v. PricewaterhouseCoopers LLP, 11 A.3d 228 (Table), 2011 WL 13545 (Del. 2011) ("Teachers"), in which the Delaware Supreme Court held that under the New York Court of Appeals' holding in Kirschner v. KPMG LLP, 15 N.Y.3d 446, 459 n.3 (2010) ("Kirschner") – in which the Teachers' case was the companion case with Kirschner on certified questions from the Second Circuit and Delaware Court – the *in pari delicto* doctrine, if applicable to the matter at hand, applies to derivative plaintiffs standing in the shoes of an allegedly wrongdoing company. See id. at *1. In this regard, the Objectors' own complaint in the Derivative Action contains numerous allegations of intentional unlawful behavior on the part of members of FGG, see Morning Mist Holdings Ltd. v. Fairfield Greenwich Group, et. al., Adv. Pro. No. 10-03765 (BRL); Dkt. 1, Exh. B, Shareholders' Derivative Complaint ¶¶ 12, 124, 132, 246, 254, 255(e), 259, which the defendants therein would likely argue should be imputed to

Sentry, thereby potentially exposing the Objectors' own claims against the PwC and Citco entities to summary dismissal under *in pari delicto* grounds based on the Objectors' own pleadings. See Kirschner v. Grant Thornton LLP, No. 07 Civ. 11604, 2009 WL 1286326 (S.D.N.Y. April 14, 2009) (Lynch, J), aff'd following the New York Court of Appeals' answers to certified questions, 626 F.3d 673 (2d Cir. 2010). In addition, unlike the Objectors who have shown a steadfast desire to pursue their claims in the United States (where their United States counsel can continue to seek attorney fees under applicable statutes governing derivative actions), the Foreign Representatives can make disinterested, reasoned and informed decisions and judgments to assert claims against the PwC and Citco entities in appropriate jurisdictions outside of New York and the United States. In short, Sentry's claims against PwC and Citco are far more valuable in the hands of the Foreign Representatives than the Objectors, and they are also more valuable to all of the Fairfield Funds' stakeholders if the Settlement Agreement is approved and the BLMIS Trustee's substantial claims against the Fairfield Funds are treated as provided for in the Settlement Agreement and are not directed to, *inter alia*, interfering with claims being asserted on behalf of Sentry.

26. Similarly, the Objectors' speculation that the value of Sentry's claims against its former investment manager, FGG, will be destroyed if assigned to the Trustee is meritless. See id. ¶¶ 27-28. Even assuming that the Trustee is unable to take assignment of Sentry's claims against FGG, those claims do not suddenly disappear into thin air as the Objectors suggest. Id. ¶ 28.[13] In that case, the claims will continue to be owned by Fairfield Sentry and, if appropriate, the Trustee and the Foreign Representatives can modify the Agreement in writing to account for

---

[13] The cases cited by the Objectors in paragraph 27 of their Objection may, at some future time, determine whether the BLMIS Trustee can obtain assignments of third party claims from customers pursuant to SIPA § 78fff-2(b). Regardless of the outcome, it is not clear that such decisions would apply, or have any impact on, to the assignment to the BLMIS Trustee of Fairfield Sentry's claims against its former investment manager, as part of a global settlement of disputed matters among the parties.

such a result.  See Settlement Agreement ¶ 25.

    (iii)    *A Stay Would Harm The Stakeholders of Both BLMIS and the Fairfield Funds*.

27.    Objectors' contention that a stay would not harm other persons is fallacious.  To the contrary, the stakeholders of both the BLMIS estate and the Fairfield Funds' estates would suffer real – and perhaps irreparable – harm if the Settlement Agreement is held in abeyance pending appeal process of unknown duration.  For example, if a stay was issued, the BLMIS Trustee would have to continue to reserve for Fairfield Sentry's entire asserted customer claim, which will result in reduced interim distributions to other BLMIS customers.  At the same time, Fairfield Sentry would lose the benefit of its $230 million allowed customer claim, preventing stakeholders in that estate from realizing value from that allowed claim.  Moreover, staying approval of the Agreement will materially interfere with the Trustee's and the Liquidators' joint prosecution and settlement strategies contemplated by the Agreement, which are significant sources of recoveries for stakeholders of both BLMIS and the Fairfield Funds.

    (iv)    *A Stay is Against the Public Interest*.

28.    The public interest is not served by a stay pending appeal.  The Settlement Agreement benefits both the direct victims of the Madoff fraud and the indirect victims who invested through the Fairfield Funds, which lost billions in the aggregate from the notorious Ponzi scheme.  The agreement resolves the substantial and complex disputes between the Trustee and the Foreign Representatives, clearing the way for them to work jointly and cooperatively to pursue claims and causes of action that will maximize the value realized for the benefit of those victims.  A stay would only serve to benefit those parties that bear clawback liability and/or responsibility for the billions of dollars in losses of direct and indirect Madoff investors, as well

as the parochial interests of the Objectors and their counsel in seeking to preserve their roles and investments in the legally defective Derivative Action.[14]

### III. THE OBJECTORS SHOULD BE REQUIRED TO POST A BOND IF THE COURT IS INCLINED TO GRANT A STAY.

29. As demonstrated above, the Objectors do not satisfy any of the factors for the issuance of a stay pursuant to Bankruptcy Rule 8005 and no stay should be granted. See ¶¶ 20-32, *supra*. However, in the event the Court does determine it is appropriate to issue a stay, the Objectors should be required to post a bond. See De la Fuente v. DCI Telecomms., Inc., 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) ("Because a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a superseadeas bond in the full amount of the judgment . . . . The bond requirement should not be eliminated or reduced unless doing so does not unduly endanger the judgment creditor's interest in ultimate recovery.") (internal citation and quotation omitted).

30. As discussed above, the stakeholders of both BLMIS and the Fairfield Funds may suffer substantial, and perhaps irreparable harm, if a stay is issued. Moreover, the Objectors have set forth no basis for why they should be exempted from the bond requirement in this instance. If the Court is inclined to grant a stay, the Foreign Representatives submit that the Objectors should be required to post a bond in the amount of *at least* $230,000,000, which represents the amount of Fairfield Sentry's allowed customer claim under the Settlement Agreement (the BLMIS Trustee may contend that this amount is not sufficient to protect the harm that will result from a stay in connection with the interests of its constituents).

---

[14] See 2d Hare Dec. ¶¶ 19-26 (explaining the legal infirmities and impediments attendant to the Objectors commencing and attempting to prosecute the Derivative Action on behalf of a BVI-registered entity).

## **CONCLUSION**

For the reasons set forth herein, the Foreign Representatives respectfully request that this Court (i) overrule the Objection, (ii) deny Objectors' "motion" for a stay of the order approving the Settlement Agreement pending appeal of the Recognition Order, and (iii) grant the Settlement Motion.

Dated:   June 2, 2011
            New York, New York

                          **BROWN RUDNICK LLP**

                          By:   /s/ David Molton
                                David J. Molton
                                May Orenstein
                                Daniel J. Saval
                                Kerry L. Quinn

                                Seven Times Square
                                New York, New York 10036
                                (212) 209-4800

                                *Attorneys for the Foreign Representatives*