**Baker & Hostetler LLP**                    Hearing Date: June 21, 2011 at 10:00 A.M.

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*And Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S OPPOSITION TO BLMIS CUSTOMERS' MOTION TO COMPEL
THE TRUSTEE TO PROVIDE A REPORT OF HIS INVESTIGATIVE
ACTIVITIES AND THE FINANCIAL AFFAIRS OF BLMIS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

I.    BACKGROUND ........................................................................................... 5

    A.    Movants.............................................................................................. 5

    B.    Trustee Reports & Communication With Claimants ............................................. 6

    C.    The Investigation Of Madoff And BLMIS Is A Matter Of Public Record
        And Conducted By Governmental Agencies ........................................................ 9

II.    ARGUMENT ................................................................................................ 12

    A.    Trustee's Reporting Requirement ...................................................................... 13

        i.    The Trustee's Requirements To Report To The Court Under SIPA
            Cannot Be Transformed Into Reporting Requirements to Movants ....... 13

        ii.    The Information Sought By Movants Is Outside The Purview Of
            Section 704(a)(7) Of The Bankruptcy Code ........................................... 14

    B.    Litigation And Contested Matters Are Governed By The Federal Rules ............ 16

        i.    Avoidance Actions And Contested Matters Are Governed By The
            Federal Rules and/or the BLMIS Disclosure/Litigation Orders .............. 16

        ii.    The Work Product Privilege Codified By The Federal Rules
            Protects Materials Prepared In Anticipation Of Litigation ...................... 17

    C.    The Trustee Has Not Filed Documents With SIPC ............................................ 19

III.    CONCLUSION............................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied Ir. Banks, PLC v. Bank of America*,
 252 F.R.D. 163 (S.D.N.Y. 2008) ......................................................................................18

*Bice v. Robb*,
 No. 07-CV-2217, 2010 U.S. Dist. LEXIS 135337 (S.D.N.Y. Dec. 22, 2010) ........................16

*In re Bill L. Walters*,
 136 B.R. 256 (Bankr. C.D. Cal. 1992).................................................................................15

*Hickman v. Taylor*,
 329 U.S. 495 (1947).......................................................................................................16, 17

*Inst. For the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*,
 212 F.R.D. 124 (S.D.N.Y. 2011) ......................................................................................18

*In re Lee Way Holding Co.*,
 120 B.R. 881 (Bankr. S.D. Ohio 1990).................................................................................15

*In the Matter of Cohmad Securities Corp.*,
 Docket No. 2009-0015..........................................................................................................12

*In the Matter of Fairfield Greenwich Advisors LLC*,
 Docket No. 2009-0028..........................................................................................................12

*New York v. Merkin*,
 Index No. 450879/09 (N.Y. Sup. Ct., filed Apr. 6, 2009) .......................................................12

*Pineiro v. Pension Benefit Guar. Corp.*,
 318 F. Supp. 2d 67 (S.D.N.Y. 2003)......................................................................................4

*In re Refco Inc.*,
 336 B.R. 187 (S.D.N.Y. 1985)...............................................................................................15

*In re Robert Landau Assoc., Inc.*,
 50 B.R. 670 (S.D.N.Y. 1985)..................................................................................................4

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 443 B.R. 295 (Bankr. S.D.N.Y. 2011) ...................................................................................9

*In re Sports Accessories, Inc.*,
 34 Bankr. 80 (Bankr. D. Md. 1983).................................................................................15, 16

*In re Surgery Center, Inc.*,
 421 B.R. 546 (Bankr. C.D. Cal. 2009).................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

*In re Veeco Instruments, Inc. Secs. Litig.*,
No. 05-MG-1695, 2007 U.S. Dist. LEXIS 16922 (S.D.N.Y. Mar. 9, 2007) .....................18, 19

*U.S. v. Nobles*,
422 U.S. 225 (1975)...........................................................................................................18

*United States v. Adlman*,
134 F.3d 1194 (2d Cir. 1998)........................................................................................17, 18

**STATUTES AND RULES**

11 U.S.C. §§ 101 *et seq*.................................................................................................................3

11 U.S.C. § 107(a) .....................................................................................................................14

11 U.S.C. § 341(a) .......................................................................................................................7

11 U.S.C. § 704 ............................................................................................................................3

11 U.S.C. § 704(7) ..................................................................................................................3, 15

11 U.S.C. § 704(a)(7) .......................................................................................................3, 14, 16

15 U.S.C. §§ 78aaa *et seq*. ...........................................................................................................1

15 U.S.C. § 78fff-1(c) ..............................................................................................................3, 13

15 U.S.C. § 78fff-1(d) ..................................................................................................................3

15 U.S.C. § 78fff-1(d)(1) ............................................................................................................13

15 U.S.C. § 78fff-1(d)(3) ............................................................................................................13

15 U.S.C. § 78fff(b) ......................................................................................................................3

15 U.S.C. § 78kkk(a) ..................................................................................................................19

15 U.S.C. § 78*lll*(7)(B) ................................................................................................................6

Fed. R. Bankr. P. 9014.................................................................................................................5

Fed. R. Civ. P. 26 ..................................................................................................................16, 17

Fed. R. Civ. P. 26(a)(1)..............................................................................................................16

Fed. R. Civ. P. 26(a)(1)(A) ........................................................................................................17

Fed. R. Civ. P. 26(b)(3)..............................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

Fed. R. Civ. P. 26(b)(3)(A)(ii) ...................................................................................................18

Fed. R. Civ. P. 26(f) .................................................................................................................17

Local Rule 7077-1(b) ................................................................................................................17

**TO THE HONORABLE BURTON R. LIFLAND,**
**UNITED STATES BANKRUPTCY JUDGE:**

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the "Debtors"), by and through his undersigned counsel, hereby submits this opposition to the BLMIS Customers' Motion to Compel the Trustee to Provide a Report of His Investigative Activities and the Financial Affairs of BLMIS (the "Motion").  (ECF No. 4045).

## PRELIMINARY STATEMENT

1.      The fraud that occurred through BLMIS was global in reach, staggering in proportion, and long in duration.  In the wake of one of the largest frauds in history, this Trustee was appointed to liquidate the business of BLMIS and recover assets on behalf of customers and creditors.  Hundreds of litigations have been instituted by the Trustee.  State and federal governmental entities have conducted investigations, litigations, and prosecutions, which have resulted in over nine indictments, three guilty pleas, and two incarcerations.  Numerous other regulatory and civil actions have been instituted.  All of these investigations and litigations detail the facts surrounding the fraud that occurred at Madoff's hands.  At all levels, this case has been the subject of regular and extensive media coverage.  As a result, an enormous public record has been created regarding Madoff's incredibly pernicious fraud.

2.      Against this backdrop, certain creditors and/or customers ("Movants") have filed the Motion, claiming that "after two and a half years, the victims still do not know how Bernard

---

[1] The Securities Investor Protection Act ("SIPA") is found at 15 U.S.C. §§ 78aaa *et seq.*  For convenience, subsequent references to SIPA will omit "15 U.S.C."

Madoff was able to carry out the largest financial fraud in history, who were his co-conspirators, who were his enablers, and who were his primary beneficiaries." Motion ¶ 3. On that basis, Movants seek an order of this Court directing the Trustee to produce, among other things, a report providing a "detailed description of BLMIS' operations from the firm's inception and the mechanics of the fraud undertaken by Madoff" and "a summary of all reports and other memoranda obtained from forensic accountants related to BLMIS' operations, as well as the reports and memoranda themselves." Motion at 2.

3.     In seeking such disclosure from the Trustee, Movants ignore the vast public record regarding Madoff's fraud, as well as the very specific record this Trustee has made with respect to the same. The Trustee has made periodic and thorough reports to the Bankruptcy Court, most recently in May 2011. The Trustee has filed hundreds of litigations detailing the fraud that occurred through BLMIS, the defendants and other parties he alleges were complicit in or had knowledge of that fraud, as well as those defendants that he maintains received fictitious profits to the detriment of those BLMIS customers that did not recover their principal investment.

4.     In those litigations, the Trustee seeks to recover, *inter alia*, preferential and fraudulent transfers under the Bankruptcy Code and New York state law. The Trustee must plead and prove certain elements under those respective statutory schemes, which will involve demonstrating through evidence and expert testimony, among other facts, that: (i) Madoff perpetrated a Ponzi scheme through BLMIS, and (ii) BLMIS was insolvent. This will require an analysis of all the purported business activities engaged in by BLMIS, including that which occurred (or did not occur) in the market making and proprietary trading desks and in the investment advisory ("IA") business.

5.      By seeking to compel that information from the Trustee in the form of a report and through the production of documents, many of which are privileged, Movants seek to subvert the Federal Rules of Civil and Bankruptcy Procedure ("Federal Rules") that govern discovery and disclosure in litigation and contested matters.   Movants are entitled to seek information under the relevant provisions of the Federal Rules at the appropriate juncture of the litigation or contested matter to which they are a party.   Movants will have ample opportunity to access and challenge the Trustee's evidence of the fraud at that time.

6.      Because the well-established rules governing discovery and disclosure would render this relief premature or improper, Movants instead attempt to transform the Trustee's reporting requirements under SIPA and the Bankruptcy Code into a vehicle to obtain that discovery.   Neither statute provides a basis for the relief sought by Movants and a review of the record shows that the Trustee has fulfilled his duty of disclosure and reporting under those statutes.

7.      Under SIPA, a trustee is required to make reports to the bankruptcy court "with respect to the progress made in distributing cash and securities to customers."  SIPA § 78fff-1(c). A SIPA trustee is also required to report to the court regarding his investigation of the debtor, including its property, liabilities, fraud, misconduct, mismanagement, and any causes of action available to the estate.  SIPA § 78fff-1(d).   Under Chapter 7 of the Bankruptcy Code, which is applicable to the extent consistent with SIPA, a SIPA trustee's duties include informing "parties in interest" about "the estate and estate administration."   Bankruptcy Code § 704(a)(7);[2] SIPA §

---

[2] References in the caselaw to section 704(7) and 704(a)(7) of the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101 *et seq.*, regard the same provision, as Congress amended the structure of section 704. Further, for convenience, subsequent references to the Bankruptcy Code will omit "11 U.S.C."

78fff(b); *see also Pineiro v. Pension Benefit Guar. Corp.*, 318 F. Supp. 2d 67, 102 (S.D.N.Y. 2003); *In re Robert Landau Assoc., Inc.*, 50 B.R. 670, 677 (S.D.N.Y. 1985).

8.    Consistent with SIPA and the order of this Court entered on December 23, 2008 (the "Claims Procedures Order"), the Trustee has filed interim reports with the Court every six months since his appointment.  These interim reports detail the work that the Trustee and his counsel have completed on behalf of the customers, creditors, and the estate, and includes reports on claims processing, motion practice, settlements, litigation, injunctions, investigations, and other major issues and events in the liquidation proceeding.  These reports also satisfy the Bankruptcy Code's requirement to report on "estate administration."

9.    The interim trustee reports are not the only form of communication he has with customers and creditors.  He and his counsel are continuously engaged in providing information to the public, through the Trustee website and by responding to thousands of email and telephone inquiries concerning the estate and the liquidation proceeding.

10.    Finally, as discussed above, the Trustee has set forth detailed and extensive allegations about the fraud that occurred at BLMIS in the pleadings and other filings in the avoidance actions he has commenced, as well as in motion practice and appeals.  All of the filed documents are available for public inspection through the electronic case filing systems for the Bankruptcy Court, District Court, and the Second Circuit Court of Appeals.

11.    Despite this full record, all of which is public, Movants claim to have been provided with no information and assert that the Trustee "has revealed almost nothing."  Motion ¶ 5.  On this basis, Movants demand that the Trustee report specifically to them in a manner not contemplated by SIPA, the Bankruptcy Code, or the Federal Rules, and prematurely seek the disclosure of documents, some of which are privileged or non-discoverable.  The Trustee has

caused an extraordinary amount of information to be disclosed since his appointment in

December 2008 and has fulfilled his reporting duties under SIPA and the Bankruptcy Code. To

the extent Movants seek immediate disclosure of information that is the subject of litigation or is

part of a contested matter, such as an objection to a claim determination, disclosure is governed

by the Federal Rules. Movants' demands will be satisfied during discovery and as litigation and

the objections process continues. Accordingly, the Motion must be denied as untimely and

improper.

## I.    BACKGROUND

### A.    Movants

12.     Six law firms—Becker & Poliakoff LLP; Bernfeld, DeMatteo & Bernfeld LLP;

Lax & Neville, LLP; SNR Denton US LLP; Kleinberg, Kaplan, Wolf & Cohen, P.C.; and Pryor

Cashman LLP—purport to represent, by their count, over 1,200 Movants. However, there are

only 918 names listed in the Motion and Exhibit A. Eight of the 918 names are duplicative,

leaving 910 unique names.[3]

13.     The Trustee has been unable to tie approximately 80 of the 910 Movants to a

BLMIS account, Customer Claim, or Objection.[4]

14.     Approximately 575 of the remaining 830 Movants have filed objections to the

claim determinations issued by the Trustee.[5]  Approximately 325 of these Movants are also

---

[3] The remaining several hundred Movants on whose behalf the Motion was filed are not identified by name, but only as "customers" or "investors."  *See* Motion 10 (SNR Denton, "Attorneys for 70 Customers"), (Lax & Neville, LLP, "Counsel for Mary Albanese, the Brow Family Partnership, Allen Goldstein, Laurence Kaye, Susan Kaye, Rose Less, Gordon Bennett and approximately 250 other investors").

[4] Each purported client name listed on the motion was manually reviewed in an attempt to link the name to a BLMIS account, filed claim, and/or objection.  Multiple keyword searches for each name listed were conducted to determine if the client name was listed in the claims register, master account listing, and objections register.  Because client names were provided without corresponding account numbers, the process of linking the names to claims and accounts could not be completed with 100% accuracy.

named as defendants in pending avoidance actions filed by the Trustee because they received fraudulent conveyances from BLMIS within ninety days, two years, and/or six years of the Filing Date, December 11, 2008. *See* SIPA § 78*lll*(7)(B). The Trustee seeks the return of fictitious profits and other recoverable transfers received by those parties.

15.     Approximately 125 other Movants are also named as defendants in pending avoidance actions filed by the Trustee because they also received preferential transfers or fraudulent conveyances from BLMIS within ninety days, two years, and/or six years of the Filing Date, December 11, 2008. *See* SIPA § 78*lll*(7)(B). The Trustee seeks the return of fictitious profits and other recoverable transfers received by those parties.

16.     Approximately 130 of the 830 Movants have neither filed an objection nor are currently a defendant in an avoidance action.

### B.     Trustee Reports & Communication With Claimants

17.     The Trustee continuously communicates with the Bankruptcy Court, claimants, and the public about the BLMIS estate and its administration.

18.     Within days of the Trustee's appointment, the Court entered the Order on Application For Entry of an Order Approving the Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief (the "Claims Procedures Order") that directed the Trustee to file with the Court every six months an interim report detailing the progress made in the distribution of cash and securities to customers. (ECF No. 12). The Trustee has acted in accordance with the Claims Procedures Order and filed reports covering the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314), July 1, 2009 to October 31, 2009 (the "Second

---

[5] These objections are contested matters within the meaning of Bankruptcy Rule 9014, to which the Federal Rules apply. *See* Bankruptcy Rule 9014.

Interim Report") (ECF No. 1011), November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207), April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038), and October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072).

19.     Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website, www.madofftrustee.com, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, holding various press conferences regarding the status of customer claims, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants, their representatives, and the press.

20.     The Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of May 31, 2011, the Trustee and his professionals had received and responded to more than 6,223 e-mails via the Trustee Website from BLMIS customers and their representatives.

21.     The toll-free customer hotline provides status updates on claims, addresses claimants' questions or concerns, and offers confirmation to claimants that their claims were received.  As of May 31, 2011, the Trustee, B&H, and the trustee's professionals had fielded more than 7,429 hotline calls from claimants and their representatives.

22.     The Trustee has also communicated the results of the laborious and wide-ranging investigation of the activities of BLMIS and identified entities and individuals who transacted with BLMIS, whether directly or indirectly.  Many details from the Trustee's investigation were set forth in the affidavit of Joseph Looby, Senior Managing Director of FTI, filed in this Court on October 16, 2009 in connection with the Trustee's brief on "net equity."  (ECF No. 524).  Mr.

Looby set forth facts regarding the "621 Account" held at Bank of New York Mellon and the

"703 Account" held at JP Morgan Chase (*Id.*, Looby Aff. ¶¶ 17-25), as well as the relationship

between the IA business, the market making, and proprietary trading operations.  (*Id.* ¶¶ 26-47).

23.      As discussed above, the Trustee's investigation through December 2010 led to the

filing of hundreds of complaints.  The complaints allege the "red flags" indicating a lack of

securities trading on behalf of BLMIS customers, the evidence supporting those red flags, and

how the red flags relate to specific defendants, as well as the results of the Trustee's

investigation that permitted such matters to be filed.  The Trustee made very specific allegations,

including that (i) the equity securities transactions listed on BLMIS customer statements that

comprised a significant percentage of (or exceeded) the total market volume in those equities; (ii)

BLMIS reported trades that were inconsistent with the exchange trade prices; (iii) BLMIS

reported options trades that exceeded worldwide options trading volume; (iv) BLMIS reported

trades that occurred or were settled on weekends and holidays; and (v) BLMIS reported trades

that were backdated and fraudulent.  The complaints are also supported by exhibits evidencing

the 90,000 disbursements of fictitious profits made by BLMIS to Madoff investors, totaling

approximately $18.5 billion.

24.      Accordingly, and contrary to the Movants' assertion that the Trustee has withheld

information about BLMIS trading and banking transactions and the results of the feeder fund,

bank, and third party investigations, Motion ¶ 7, this information is public and accessible on the

Bankruptcy Court's docket.  *See, e.g., Picard v. HSBC Bank plc*, Adv. Pro. No. 09-1364 (BRL);

*Picard v. Kohn*, Adv. Pro. No. 10-5411 (BRL); *Picard v. JPMorgan Chase*, Adv. Pro. No. 10-

4932 (BRL); *Picard v. UBS AG*, Adv. Pro. No. 10-4285 (BRL); *Picard v. Vizcaya*, Adv. Pro. No.

09-1154 (BRL); *Picard v. Kingate*, Adv. Pro. No. 09-1161 (BRL); *Picard v. Harley*, Adv. Pro.

No. 09-1187 (BRL); *Picard v. Fairfield,* Adv. Pro. No. 09-1239 (BRL); *Picard v. Thybo*, Adv. Pro. No. 09-1365 (BRL).

C.    **The Investigation Of Madoff And BLMIS Is A Matter Of Public Record And Conducted By Governmental Agencies**

25.    While the Trustee has exclusive standing to bring actions to recover property for the benefit of the defrauded customers and creditors of BLMIS, *see Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 443 B.R. 295, 311 (Bankr. S.D.N.Y. 2011), the Trustee is far from the only fiduciary or entity investigating and reporting on matters relating to the fraud perpetrated through BLMIS.

26.    Since December 2008, the United States Congress, the United States Department of Justice ("DOJ"), the United States Department of Labor ("DOL"), the United States Securities and Exchange Commission ("SEC"), the SEC's Office of the Inspector General ("OIG"), and various state agencies, among other governmental entities, have conducted hearings and investigations, published transcripts and reports of those hearings and investigations, and filed numerous actions detailing the manner in which BLMIS carried out the largest financial fraud in history and the identities of Madoff's co-conspirators, enablers, and primary beneficiaries. Through the panoply of litigation filed by the DOJ, the DOL, and the SEC, and the extensive investigations into the BLMIS fraud and matters related thereto, much information and detail regarding the fraud is a matter of public record.

27.    In the Southern District of New York, the DOJ brought actions against Madoff, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y.), Frank DiPascali, Jr. ("DiPascali"), *United States v. DiPascali*, No. 09-CR-764 (RJS) (S.D.N.Y.), at least six other employees of BLMIS, as well as David G. Friehling.

9

28.     In the Madoff and DiPascali matters, the defendants, the DOJ, and the court described on the record the operation of the Ponzi scheme, the facts that support Madoff's plea of guilty to securities fraud, investment advisor fraud, wire and mail fraud, money laundering, making false statements, perjury, filing false statements with the SEC, and theft of employee benefit funds; the DOJ's evidence supporting those facts; the facts that support Mr. DiPascali's plea of guilty to securities fraud, investment advisory fraud, falsifying the books and records of a broker/dealer, falsifying the books and records of an investment fund, mail fraud, wire fraud, and money laundering; as well as the court's findings that justified Madoff's sentence.  Madoff Plea Allocution Tr. 23-34, 40-41, Mar. 13, 2009; Madoff Sentencing Tr. 43-46, June 29, 2009; DiPascali Plea Allocution Tr. 17, 44-52, Aug. 1, 2009.

29.     The DOJ confirmed that its investigation would not end: "I think the only thing the government would say is that the government's investigation continues.  It is continuing.  A lot of resources and effort are being expended, both to find assets and to find anyone else who may be responsible for this fraud."  Marc O. Litt, Assistant United States Attorney, United States Attorney for the Southern District of New York, Madoff Plea Allocution Tr. 40-41, Mar. 12, 2009.

30.     Indeed, the DOJ investigation has continued.  As recently as yesterday, June 6, 2011, the DOJ filed an Information against and accepted the guilty plea of BLMIS payroll manager Eric Lipkin to conspiracy to falsify records of a broker-dealer, to falsify records of an investment advisor, and to falsify statements to facilitate a theft concerning ERISA; conspiracy to commit bank fraud; falsifying records of a broker-dealer; falsifying records of an investment advisor; false statements to facilitate a theft concerning ERISA; and bank fraud.  *United States v. Lipkin*, No. 10-CR-228 (LTS) (S.D.N.Y.).  The Information provides an extensive description of,

*inter alia*, how Madoff directed employees of BLMIS to create false account statements, letters, and spreadsheets for IA accounts while knowing that the accounts did not hold the securities positions set forth and fake Depository Trust Company reports in order to mislead auditors.  (*Id.*, ECF No. 1).

31.     Thus, if the Movants seek information regarding the facts relating to criminal liability standards, Motion ¶ 6, then the transcripts of the plea allocations, Madoff's sentencing, and other documents relating to those proceedings can be found on the respective dockets and are excerpted in the Trustee's Fifth Interim Report, ECF No. 4072 ¶¶ 83-87.

32.     The SEC commenced parallel civil actions in the Southern District of New York against, including but not limited to, Madoff and various insiders, captioned *SEC v. Madoff*, No. 08-CV-10791 (S.D.N.Y., filed Dec. 11, 2008), *SEC v. Cohmad*, No. 09-CV-5680 (S.D.N.Y., filed June 22, 2009), *SEC v. Chais*, No. 09-CV-5681 (S.D.N.Y., filed June 22, 2009), *SEC v. DiPascali*, No. 09-CV-7085 (S.D.N.Y., filed Aug. 11, 2009), *SEC v. Friehling*, No. 09-CV-2467 (S.D.N.Y., filed Mar. 18, 2009), and *SEC v. Bonventre*, No. 10-CV-1576 (S.D.N.Y., filed Feb. 25, 2010).  These actions were based upon investigations conducted by the SEC and made public how trading was (or was not) conducted by BLMIS and the identities of Madoff's co-conspirators, enablers, and primary beneficiaries.  Thus, if the Movants seek information about BLMIS trading, Madoff's insiders, and the facts relating to civil and regulatory liability standards, Motion ¶¶ 5-6, then the documents relating to the SEC's proceedings can be found on the respective dockets.

33.     The OIG also conducted an extensive investigation, specifically into the SEC's handling of Madoff and BLMIS, and made public a report entitled: *Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme*.  Report No. OIG-509 (Aug. 31, 2009).  In

the report, the OIG identified the "red flags" of Madoff's fraud that were apparent to many in the financial services industry, as well as detailed the relationship between the market making, proprietary trading, and IA business operations. Thus, if the Movants seek information about the fraud and BLMIS operations, among other topics, Motion ¶¶ 5-6, an executive summary of the report can be found on the OIG website: http://www.sec.gov/spotlight/secpostmadoffreforms/oig-509-exec-summary.pdf.

34.     State agencies have also investigated BLMIS and Madoff's co-conspirators, enablers, and primary beneficiaries, which have resulted in actions being filed in New York, such as *New York v. Merkin*, Index No. 450879/09 (N.Y. Sup. Ct., filed Apr. 6, 2009), and in Massachusetts, such as *In the Matter of Cohmad Securities Corp.*, Docket No. 2009-0015, and *In the Matter of Fairfield Greenwich Advisors LLC*, Docket No. 2009-0028. Thus, if the Movants seek further information about Madoff's insiders and the facts relating to state law fraud liability standards, Motion ¶¶ 5-6, then the documents regarding those proceedings can be found on the respective dockets.

35.     Accordingly, and contrary to Movants' assertion that "the victims do not know how Bernard Madoff was able to carry out the largest financial fraud in history, who were his co-conspirators, who were his enablers, and who were his primary beneficiaries," *Id.*, this very information is public and accessible through the dockets of the state and federal courts.

## II.    ARGUMENT

36.     Neither SIPA nor the Bankruptcy Code supports Movants' present request for information. The information sought is beyond that which regards the administration of the estate and is in fact the subject of ongoing litigation and contested matters. Much of the information sought by the Movants will be disclosed to them during discovery or when the Trustee introduces evidence and expert testimony regarding the Ponzi scheme and insolvency

before the Bankruptcy or District Court, a burden he still carries despite also being the liquidator of the BLMIS estate. Any information not disclosed will be withheld pursuant to the Federal Rules solely because it is otherwise privileged or nondiscoverable.[6]

### A.    Trustee's Reporting Requirement

#### i.    The Trustee's Requirements To Report To The Court Under SIPA Cannot Be Transformed Into Reporting Requirements to Movants

37.    Contrary to Movants' assertions, SIPA does not require that the Trustee report to customers, creditors, or the public. A SIPA trustee must submit written reports to the Bankruptcy Court detailing "the progress made in distributing cash and securities to customers." SIPA § 78fff-1(c). A SIPA trustee also has a duty to report to the Bankruptcy Court "the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business, and any other matter, to the extent relevant to the liquidation proceeding," and "any facts ascertained by the trustee with respect to the fraud, misconduct, mismanagement, and irregularities, and to any causes of action available to the estate."[7] SIPA § 78fff-1(d)(1); SIPA § 78fff-1(d)(3).

38.    The Court explicitly ordered the Trustee in the Claims Procedures Order to fulfill this requirement by filing interim trustee progress reports with the Court every six months. (ECF No. 12). To date, the Trustee has filed five interim reports. (ECF Nos. 314, 1011, 2207, 3038, and 4072). Because these reports are publicly filed on the docket in the main liquidation

---

[6] For those Movants that are not defendants or party to an objection to a claim determination, their rights to disclosure are limited to SIPA and the Bankruptcy Code, which, as discussed herein, do not entitle them to the relief they seek.

[7] This is the beginning and end of a SIPA trustee's reporting duties to the bankruptcy court. The Movants claim that the Trustee is obligated to file evidentiary proof for the interim trustee reports and reports prepared by forensic accountants, but no support for these alleged duties exists.

proceeding, *SIPC v. BLMIS*, Adv. Pro. No. 08-1789 (BRL), all of the information reported therein is likewise available to every customer, creditor, or interested party.

39.    A review of those interim reports makes clear that the Trustee has met and exceeded the reporting requirements to the Court.  The interim trustee reports explain the efforts on behalf of the Trustee and his counsel to recover funds to the BLMIS estate for the benefit of customers and creditors, and the property, liabilities, and financial conditions of the estate.

40.    The Fifth Interim Report, as with every interim report filed by the Trustee, states the amounts of funds maintained by the Trustee on behalf of the BLMIS estate in the various operating, Money Market, interest-bearing, and brokerage accounts, and describes the Trustee's efforts to marshal and liquidate the assets of the estate, such as by selling various financial holdings.  (ECF No. 4072 ¶¶ 16-20, 22-24).

41.    The dockets in the hundreds of avoidance actions filed by the Trustee against BLMIS accountholders who received billions of dollars in fraudulent conveyances also set forth the acts and conduct of the Debtors, as well as the facts ascertained by the Trustee with respect to the fraud, misconduct, management, irregularities, and, most especially, the causes of action actually being pursued by the BLMIS estate.

42.    All of these papers are public records on the various dockets open to examination by the Movants.  Bankruptcy Code § 107(a).

### ii.    The Information Sought By Movants Is Outside The Purview Of Section 704(a)(7) Of The Bankruptcy Code

43.    The Bankruptcy Code directs that a Chapter 7 trustee shall, "unless the court orders otherwise, furnish such information concerning the estate and the estate's administration" to a party in interest.  Bankruptcy Code § 704(a)(7).  Certain information, such as that relating to the estate and its administration, should be disclosed.  Other types of information, however,

should not be disclosed by a trustee in order to protect the trustee's countervailing fiduciary duty to creditors and the estate. *In re Refco Inc.*, 336 B.R. 187, 193-94 (S.D.N.Y. 1985).

44.    On one hand, information about the trustee's efforts to recover property of the estate must be disclosed because it directly concerns estate administration. *In re Sports Accessories, Inc.*, 34 Bankr. 80, 82 (Bankr. D. Md. 1983) (granting adversarial creditor's motion for information possessed by trustee regarding still-uncollected accounts receivable).

45.    On the other hand, "it is clear that information developed by the trustee's professionals for the prosecution of an avoidance action is not 'information concerning the estate and the estate's administration' as contemplated under section 704(7)." *In re Bill L. Walters*, 136 B.R. 256, 258 (Bankr. C.D. Cal. 1992) (denying motion to compel accountant reports produced for trustee).

46.    A trustee is not required to disclose privileged or confidential information. *In re Refco Inc.*, 336 B.R. at 193; *In re Surgery Center, Inc.*, 421 B.R. 546, 549 (Bankr. C.D. Cal. 2009). The attorney-client privilege protects from disclosure information developed by the trustee, information related to the pursuit of a claim on behalf of the debtor's estate, investigative reports, or information about ongoing negotiations with third parties. *In re Refco Inc.*, 336 B.R. at 194-95, 197; *In re Lee Way Holding Co.*, 120 B.R. 881, 907 (Bankr. S.D. Ohio 1990) (recognizing that trustee may invoke attorney-client privilege to shield adversary proceeding and settlement information from being compelled).

47.    The Trustee has already disclosed information about the administration of the estate in the interim trustee reports, which greatly detail the efforts on behalf of the estate to recover estate property and the recoveries sought. Much of the remaining information sought by Movants was developed by the Trustee for the prosecution of avoidance actions or is information

related to the pursuit of a claim on behalf of the Debtors' estate, which protected by the attorney-client privilege. This kind of material falls outside the definition of information concerning the estate and the estate's administration. *See In re Sports Accessories, Inc.*, 34 Bankr. at 82. Thus, section 704(a)(7) of the Bankruptcy Code does not require the Trustee to disclose such material to Movants.

### B. Litigation And Contested Matters Are Governed By The Federal Rules

48.      Movants admit that the information demanded in this Motion is the subject of litigation. Motion ¶ 12 n.2. Federal Rule of Civil Procedure 26 governs discovery and "generally call[s] for mutual access to all the relevant facts and documents gathered by the parties." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The right to discovery is limited to "any matter that is relevant to a party's claim or defense," but is not absolute. *See Bice v. Robb*, No. 07-CV-2217, 2010 U.S. Dist. LEXIS 135337, at *2 (S.D.N.Y. Dec. 22, 2010). Access is qualified by, *inter alia*, the attorney-client privilege, discussed above, and the work product privilege. *Id.*

### i. Avoidance Actions And Contested Matters Are Governed By The Federal Rules and/or the BLMIS Disclosure/Litigation Orders

49.      Movants are parties to avoidance actions or contested matters governed by the Federal Rules and the BLMIS Disclosure/Litigation Orders. Federal Rule 26 governs duties of disclosure, timing and general provisions relating to discovery, including fact and expert discovery. In contravention of Rule 26, Movants essentially seek premature discovery by way of the Motion.

50.      Federal Rule of Civil Procedure 26(a)(1) permits a court to order the initial disclosure and any further disclosure of information different from the express terms of the Rule.

Fed. R. Civ. P. 26(a)(1)(A).   The Court did so in this liquidation by entering the BLMIS Disclosure/Litigation Orders.

51.     If the BLMIS Disclosure/Litigation Orders are made applicable to a particular avoidance action by either the Trustee or the defendant filing a Notice of Applicability, then the defendant is subject to discovery pursuant to the Bankruptcy Rules and this Court's Local Bankruptcy Rules.[8]  The defendant is entitled to, *inter alia*, initial disclosures, fact discovery by depositions of fact witnesses or substantive interrogatories, and disclosure of experts and rebuttal experts.   For the Movants who are defendants in avoidance actions in which a Notice of Applicability has been filed, the proper time to begin receiving this discovery is the later of (i) 60 days from the date of the Initial Case Conference or (ii) 180 days from the date the Complaint was filed.  Avoidance Procedures ¶ 4(B).  Therefore, this request is premature.

52.     Even if the BLMIS Disclosure/Litigation Orders are not made applicable to a particular avoidance action, then the Federal Rules apply and disclosures need not begin until the Court holds a Rule 26(f) conference.   Fed. R. Civ. P. 26.   Therefore, this request is still premature.

> **ii.     The Work Product Privilege Codified By The Federal Rules Protects Materials Prepared In Anticipation Of Litigation**

53.     Federal Rule of Civil Procedure 26(b)(3) codifies the work product doctrine and protects from disclosure documents and tangible things prepared in anticipation of "or with an eye toward" litigation by or for another party or its representative.   Federal Rule 26(b)(3); *Hickman*, 329 U.S. at 511; *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) ("The work-product doctrine . . . is intended to preserve a zone of privacy in which a lawyer can

---

[8] To the extent this is a discovery motion, it is procedurally defective as no pre-motion conference was requested pursuant to Local Rule 7077-1(b).  Global Protective Order ¶ 8; Avoidance Procedures ¶ 4(O).

prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries."). The party asserting the privilege has the burden of proving that (i) the doctrine applies, and (ii) the privilege has not been waived. *In re Veeco Instruments, Inc. Secs. Litig.*, No. 05-MG-1695, 2007 U.S. Dist. LEXIS 16922, at *11 (S.D.N.Y. Mar. 9, 2007).

54.    For the work product doctrine to apply, the material must be (i) a document, (ii) prepared in anticipation of litigation, and (iii) prepared by or for a party or by his representative. *Adlman*, 134 F.3d at 1202; *Allied Ir. Banks, PLC v. Bank of America*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008). Movants seek a summary of all forensic accountant reports, and the reports themselves, and all reports supporting the commencement of all lawsuits, Motion ¶ 7, which means that Movants seek documents prepared in anticipation of litigation for the Trustee by his forensic investigators and accountants. *See U.S. v. Nobles*, 422 U.S. 225, 239 (1975) ("The [work product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared for by the attorney himself."). Thus, the work product doctrine applies to limit the disclosure of the reports and other underlying and backup material sought by Movants.

55.    A court can order the production of "fact" work product upon a showing of substantial need and undue hardship, yet "mental impressions, conclusions, opinions, or legal theories of a party's attorney concerning the litigation fall outside the substantial need exception." Federal Rule 26(b)(3)(A)(ii); *Adlman*, 134 F.3d at 1196; *Inst. For the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, 212 F.R.D. 124, 125 (S.D.N.Y.

2011); *In re Veeco Instruments, Inc. Secs. Litig.*, 2007 U.S. Dist. LEXIS 16922, at *10. However, Movants have not expressed any need for the information requested, much less a "substantial" one, or articulated any undue hardship they face in the absence of possessing such material.  Thus, the information sought in the Motion that is privileged work product cannot be disclosed to Movants.

### C.        The Trustee Has Not Filed Documents With SIPC

56.        Section 78kkk(a) of SIPA permits public inspection of "any notice, report, or other document filed with SIPC . . . unless SIPC or the [Securities and Exchange] Commission shall determine that disclosure thereof is not in the public interest."  SIPA § 78kkk(a).  The Trustee has never "filed" any notice, report, or other documents with SIPC.  Thus, there is nothing for the public—or Movants—to inspect pursuant to this provision.

### III.    CONCLUSION

57.        For the foregoing reasons, this Court should deny the Motion.

Dated: New York, New York
            June 7, 2011

Respectfully submitted,

*/s/     David J. Sheehan*            _
David J. Sheehan
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com