# EXHIBIT E

Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6    BERNARD L. MADOFF,                          Main Case No.

7              Debtor.                           09-11893-brl

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

9    SECURITIES INVESTOR PROTECTION CORPORATION,

10              Plaintiff,

11

12      - against -                              Adv. Case No.

13                                               08-01789-brl

14   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,

15              Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

17   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF B,

18              Plaintiff,

19

20      - against -                              Adv. Case No.

21                                               10-05328-brl

22   MORGAN, INDIVIDUALLY, AND AS GUARDIAN OF A.V.M., et al.,

23              Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

25

Page 2

1

2                    U.S. Bankruptcy Court

3                    One Bowling Green

4                    New York, New York

5

6                    June 1, 2011

7                    10:03 AM

8

9

10    B E F O R E:

11    HON. BURTON R. LIFLAND

12    U.S. BANKRUPTCY JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1

2   FIFTH Application of Windels Marx Lane & Mittendorf, LLP for

3   Allowance of Interim Compensation for Services Rendered and

4   Reimbursement of Actual and Necessary Expenses Incurred (ADV

5   08-01789-brl) (cc-4023) (Adj. from 5/12/11)

6

7   APPLICATION of Werder Vigano as Special Counsel to the Trustee

8   for Allowance of Interim Compensation for Services Rendered and

9   Reimbursement of Actual and Necessary Expenses (4031) (Adj.

10   from 5/12/11)

11

12   APPLICATION of Schifferli Vafadar Sivilotti as Special Counsel

13   to the Trustee for Allowance of Interim Compensation for

14   Services Rendered (4034) (Adj. from 5/12/11)

15

16   APPLICATION of Attias & Levy as Special Counsel to the Trustee

17   for Allowance of Interim Compensation for Services Rendered and

18   Reimbursement of Actual and Necessary Expenses (4024) (Adj.

19   from 5/12/11)

20

21   APPLICATION of Eugene F. Collins as Special Counsel to the

22   Trustee for Allowance of Interim Compensation for Services

23   Rendered and Reimbursement of Actual and Necessary Expenses

24   (4025) (Adj. from 5/12/11)

25

Page 4

1

2   APPLICATION of Taylor Wessing as Special Counsel to the Trustee

3   for Allowance of Interim Compensation for Services Rendered and

4   Reimbursement of Actual and Necessary Expenses (4026) (Adj.

5   from 5/12/11)

6

7   APPLICATION of Williams Barristers & Attorneys as Special

8   Counsel to the Trustee for Allowance of Interim Compensation

9   for Services Rendered and Reimbursement of Actual and Necessary

10  Expenses (4027) (Adj. from 5/12/11)

11

12  FEE Application of SCA Creque as Special Counsel (4032) (Adj.

13  from 5/12/11)

14

15  SIXTH Application of the Trustee and Baker & Hostetler LLP for

16  Allowance of Interim Compensation for Services Rendered and

17  Reimbursement of Actual and Necessary Expenses (4022) (Adj.

18  from 5/12/11)

19

20  APPLICATION of Young Conaway Stargatt & Taylor LLP as Special

21  Counsel to the Trustee for Allowance of Interim Compensation

22  for Services Rendered and Reimbursement of Actual and Necessary

23  Expenses (4033) (Adj. from 5/12/11)

24

25

08-01789-cgm   Doc 4169-6   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit E to
the Chaitman Decl.   Pg 6 of 51

Page 5

1

2    APPLICATION of Schiltz & Schiltz as Special Counsel to the

3    Trustee for Allowance of Interim Compensation for Services

4    Rendered and Reimbursement of Actual and Necessary Expenses

5    (4028) (Adj. from 5/12/11)

6

7    APPLICATION of Higgs & Johnson (formerly Higgs Johnson Truman

8    Bodden & Co.) as Special Counsel to the Trustee for Allowance

9    of Interim Compensation for Services Rendered and Reimbursement

10   of Actual and Necessary Expenses (4029) (Adj. from 5/12/11)

11

12   APPLICATION of Kugler Kandestin, LLP as Special Counsel to the

13   Trustee for Allowance of Interim Compensation for Services

14   Rendered and Reimbursement of Actual and Necessary Expenses

15   (4030) (Adj. from 5/12/11)

16

17   MOTION of the Trustee for Entry of Litigation Protective Order

18   (cc-3819) (Adj. from 3/16/11, Adj. from 3/31/11, Adj. from

19   4/28/11, Adj. from 5/24/11)

20

21   MOTION for an Order Pursuant to Federal Rule 25(a)(1)

22   Substituting Defendant and Continuing Action (ADV 10-05328-brl)

23   (Adj. from 5/25/11)

24

25   Transcribed by:  Sara Davis

Page 6

1

2    A P P E A R A N C E S :

3    DECHERT LLP

4         Attorneys for Mr. Merkin

5         1095 Avenue of the Americas

6         New York, NY 10036

7

8    BY:   NEIL STEINER, ESQ.

9

10

11    BAKER & HOSTETLER LLP

12         Attorneys for Irving H. Picard, Esq., Trustee for the

13          Substantively Consolidated SIPA Liquidation of

14          Bernard L. Madoff Investment Securities LLC and

15          Bernard L. Madoff

16          45 Rockefeller Plaza

17          New York, NY 10111

18

19    BY:   JUDY A. SELBY, ESQ.

20          DAVID J. SHEEHAN, ESQ.

21          SEANNA BROWN, ESQ.

22          IRVING H. PICARD, ESQ.

23

24

25

Page 7

1

2    DEBEVOISE & PLIMPTON LLP

3        Attorneys for Thema International, Thema Fund and Hermes

4         International

5        919 Third Avenue

6        New York, NY 10022

7

8    BY:   MICHAEL E. WILES, ESQ.

9

10

11   WINDELS MARX LANE & MITTENDORF LLP

12       Attorneys for Chapter 7 Trustee

13       156 West 56th Street

14       New York, NY 10019

15

16   BY:   ALAN NISSELSON, ESQ.

17

18

19   SECURITIES INVESTOR PROTECTION CORPORATION

20       Attorneys for SIPC

21       805 15th Street, NW

22       Suite 800

23       Washington, DC 20005

24

25   BY:   KEVIN H. BELL, ESQ.

Page 8

1

2    BECKER & POLIAKOFF PA

3         Attorneys for Marsha Peshkin and a Non-Exclusive Group

4          of Other Customers of Bernard L. Madoff Investment

5           Securities LLC

6         45 Broadway

7         8th Floor

8         New York, NY 10006

9

10   BY:   HELEN DAVIS CHAITMAN, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

08-01789-cgm    Doc 4169-6    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit E to
the Chairman Decl.    Pg 10 of 51

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

```
 1                        P R O C E E D I N G S

 2               THE COURT:  Be seated, please.

 3               THE CLERK:  SIPC v. BLMIS.

 4               MR. SHEEHAN:  Good morning, Your Honor.

 5               THE COURT:  Good morning.

 6               MR. SHEEHAN:  We have, obviously, a number of matters

 7      on here this morning and I would li -- I'm very happy to report

 8      to Your Honor that we've been working in anticipation of Your

 9      Honor arriving on the bench and I think we've worked out

10      everything with the LPL so we need not argue any of that this

11      morning.  But, I've said to my colleagues --

12               THE COURT:  Shall I leave, then?  Is that all?

13               MR. SHEEHAN:  We're all done?

14               THE COURT:  Okay.

15               MR. SHEEHAN:  I said to my colleagues who were

16      gracious enough to work this out with us that we should, of

17      course, take advantage to putting it on the record so that

18      their trip to court is somewhat worthwhile.  And we can then

19      capture that in a revised order which we'll submit to Your

20      Honor.

21               The first one is an objection that was filed by Mr.

22      Wiles.  His was in connection with paragraph 4(e); Your Honor

23      may remember that.  What he has suggested is some additional

24      language which I'm going to ask him to step to the podium and

25      read to us, because I don't remember exactly what we agreed to,
```

08-01789-cgm   Doc 4169-6   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit E to
MADOFF; SIPC v. MADOFF; PICARD v. MORGAN
the Chairman Decl.   Pg 11 of 51

Page 10

1    but he has it.  And then we can just incorporate that into the

2    order.

3              Mr. Wiles, if I could?

4              MR. WILES:  Thank you.  Good morning, Your Honor.

5              THE COURT:  We're dealing now with the litigation

6    protective order?

7              MR. WILES:  Beg your pardon?  Yes, yes.  This is the

8    litigation protective order.

9              THE COURT:  Go ahead.

10             MR. WILES:  The -- what we've agreed to do is to add

11   to paragraph 4 the following two sentences.  "The items listed

12   in this paragraph shall not be treated as confidential material

13   under the authority granted by this order.  However nothing in

14   this paragraph is intended as a ruling on the extent to which

15   any party may claim that any particular information is

16   confidential to object to the production of such information or

17   to seek an additional protective order with respect to specific

18   information."

19             And we've agreed to add that and that resolves my

20   objection.  Thank you.

21             THE COURT:  I have no problem, although I wonder

22   reading all the versions and the objection, the right to come

23   back and raise the issue is clearly in the order that was going

24   to be submitted to the Court.  So I really feel it's a little

25   bit of much ado about nothing, but it did take up a good deal

08-01789-cgm   Doc 4169-6   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit E to
the Chairman Decl.   Pg 12 of 51

MADOFF; SIPC v. MADOFF; PICARD v. MORGAN

Page 11

1    of my time.

2         MR. SHEEHAN:  Sorry about that, Your Honor.  We tried

3    to work it all out in advance.

4         We have one other objection.  It's from the Dechert

5    firm representing Mr. Merkin and, again, I asked counsel if he

6    wants to step forward and state for the records what we'd agree

7    to and then we can incorporate it in the order.

8         MR. STEINER:  Thank you, Your Honor.  Neil Steiner

9    from Dechert.  With respect to paragraph 9 of the order which

10   provides that if the trustee received a document request for

11   interrogatory such as the ones we've served as defendants in an

12   adversary proceeding, that would require the production of

13   information that's been produced to them by other parties,

14   pursuant to Rule 2004 or in other adversary proceedings,

15   they'll give notice as drafted if the producing party in such

16   other action doesn't consent, it's within the discretion of the

17   trustee to raise the issue with the Court or not.  To resolve

18   that, we've agreed that paragraph 9 in the middle of page 5

19   that starts, "If the producing party objects to the

20   redesignation, the receiving party" and then we would insert

21   the words 'or any party in interest in an individual adversary

22   proceeding' and then it continues "may, consistent with the

23   local Bankruptcy Rules, request a conference to raise the issue

24   with the Court."

25         There are two other provisions in 10(f) and 12.  10(f)

MADOFF, SIPC v. MADOFF; PICARD v. MORGAN

Page 12

1   relates to the use of documents in depositions if they haven't

2   been produced because of a confidentiality designation.  and

3   then 12 relates to the trustee's obligation to notify producing

4   parties who've designated things as confidential where, I think

5   we've agreed that we would work out some language either for

6   the order or specifically with respect to our adversary -- our

7   individual adversary proceeding.  We've left the agreement with

8   Ms. Selby is that we'd try to work that our in the next day or

9   so and to the extent necessary, submit it for your approval.

10          THE COURT:  Does anyone want to be heard?

11          The requests are granted.

12          MR. SHEEHAN:  Thank you, Your Honor.

13          Your Honor, the balance of the calendar this morning

14   deals with fee applications by the trustee and his counsel,

15   foreign counsel and confluence counsel.  None of them are

16   objected to, except that of the trustee and Baker, Hostetler

17   counsel to trustee.  What I would propose we do is, if I could,

18   Your Honor, just in summary fashion go through the unopposed

19   just to put them on the record and give a brief statement as to

20   what they involved.  And then submit that all to Your Honor and

21   hear if anyone wants to object here in the courtroom.  If

22   that's okay with you?

23          THE COURT:  Go ahead.

24          MR. SHEEHAN:  Your Honor, first of all, we have --

25   I'll do the foreign counsel.  As Your Honor knows, we've

MADOFF: SIPC v. MADOFF: PICARD V. MORGAN

Page 13

1    instituted over 1,000 lawsuits and we're in thirty different

2    jurisdictions, which requires us -- the trustee to go out and

3    find other counsel to assist us in these endeavors.

4            I'll start off with Bermuda.  That's the Williams

5    Barristers firm in Bermuda.  There is a substantial sum of

6    money, around 100 million dollars, which we have managed to,

7    with the agreement of the liquidators in Kingate to hang on to

8    that money pending resolution among the parties of their

9    various claims to those funds.  Needless to say, in that

10   endeavor, we need the assistance of local counsel.

11           We sought the approval which this Court gave to

12   Williams' retention.  They have worked very closely with us

13   through this entire effort.  We have a number of significant

14   matters occurring in Kingate on a fairly routine basis, so

15   their application is before Your Honor and is unopposed.

16           The next is the British Virgin Islands.  That's the

17   SCA Creque firm.  Mr. Olympitis is our counsel there.  As Your

18   Honor also knows, Kingate, Fairfield Sentry and a number of

19   other feeder funds were incorporated in BVI.  As a result, we

20   appear there regularly to protect the causes of action

21   instituted by the trustee there as parallel protective actions

22   as well as actions here in this court.  And we work, again,

23   very closely with them in putting together bills of

24   particulars, extensions and numerous other activities to

25   protect the interests of the estate.

08-01789-cgm    Doc 4169-6    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit E to
MADOFF, SIPC v. MADOFF; PICARD v. MORGAN
the Chaitman Decl.    Pg 15 of 51

1          Next is Canada.  There it's principally work performed

2     by the Kugler Kandestin firm in connection with service of

3     process issues, Your Honor.  And that's why their bill is only

4     2,500 hours and change.

5          The next firm that is -- it's in the Cayman Islands,

6     this is Higgs & Johnson.  Cayman Islands, again, is a place of

7     incorporation for many of the feeder funds.  Needless to say,

8     we also appear there in several actions that we've instituted,

9     most prominently the Hawley action where we have filed a

10    protective action in addition to the action that was filed here

11    in this court.  They assist us in that matter on a daily basis.

12         The next one is the one that is probably the most

13    prominent and that's Taylor Wessing.  Taylor Wessing is the

14    firm in London that assists us across the board, throughout the

15    islands, which are subject to commonwealth law, as well as in

16    the course of London in connection with actions that we have

17    instituted there.  There are several actions.

18         One is the action against the directors of MSIL, the

19    London branch, if you will, of the fraudulent scheme.  And

20    then, in addition to that, we have an action filed against

21    Sonja Kohn as a protective action in light of the obvious

22    jurisdictional and extraterritoriality issues that we'll

23    encounter there.  I must say, that's almost a daily experience

24    working with counsel there and they have contributed greatly to

25    the success we've achieved to date.

Page 15

1          THE COURT:  Isn't there a protocol enforced with

2     respect to the London --

3          MR. SHEEHAN:  Yes, there is, Your Honor.  We've

4     entered into a protocol with the joint liquidator, Mr. Akres,

5     and have worked closely with him in prosecuting all these

6     lawsuits.

7          Next is the Attias, Levy firm.  This is the firm in

8     Gibraltar; Your Honor has great familiarity with this.  This is

9     the Vizcaya Sous (ph.) Bank Safra matter.  We found out very

10    early on there were seventy-five million dollars sitting in

11    Gibraltar.  We're halfway home to that; that money is now here

12    in the United States.  We brought, as Your Honor knows, default

13    actions for judgments against the parties there.  After the

14    Rubin decision came out of the British courts allowing default

15    judgments in bankruptcy courts to be enforced in the British

16    courts, they decided to come here, as Your Honor knows, vacate

17    the default and they're now going to litigate those issues here

18    in the United States before Your Honor.

19         So I would have to say that the Attias, Levy firm has

20    done yeoman work in terms of supporting us in that effort,

21    although it's not finished yet.  We're well advanced in where

22    we're heading with that litigation.

23         Next is Ireland, it's the Eugene F. Collins firm.

24    There are a number of feeder funds that operated through Irish

25    facilities that were provided there, most prominently being

08-01789-cgm   Doc 4169-6   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit E to
the Chaitman Decl.   Pg 17 of 51

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 16

1    Thema International.  We are looking to recover at least 380

2    million dollars that passed through those funds in Ireland and

3    that firm has been assisting us in that effort as well.

4           Luxembourg.  Schultz & Schultz (sic).  This is a firm

5    that has been working with us, again, with regard to the

6    actions we've instituted against UBS and Luxalpha and there are

7    other Luxembourg-based feeder funds and they've assisted us in

8    getting documents, discovery and access to the local

9    authorities.

10          Then, lastly for foreign firms, we have the

11   Switzerland firm of Werder and Vigano.  Werder and Vigano is

12   assisting us with regard to Sonja Kohn.  As Your Honor may be

13   aware, Sonja Kohn claims citizenship in Switzerland and

14   Austria.  She's not yet determined which she's going to advance

15   before the courts, but we need the assistance of Swiss counsel

16   to work with them and the local authorities in regard to those

17   issues.

18          Your Honor, all those applications are before Your

19   Honor.  I am aware of no objections to them and I would

20   therefore move for their approval.

21          THE COURT:  Does anyone want to be heard?

22          Your application is granted.

23          MR. SHEEHAN:  Thank you, Your Honor.

24          There are, of course, two other firms that have

25   submitted applications here, Your Honor.  One has been with the

MADOFF; SIPC v. MADOFF; PICARD v. MORGAN

Page 17

1    case for a very substantial period of time.  That's the firm of

2    Windels, Marx.  As you know, Alan Nisselson was in this case as

3    the Chapter 7 trustee for Mr. Madoff.  He continues in that

4    capacity pursuant to an order of Your Honor.  We have, in

5    addition, utilized the Windels, Marx firm for conflicts counsel

6    on numerous matters involving the Madoff family, in particular,

7    and many of their investment vehicles.

8            I've worked closely with them.  Howard Simon and Mr.

9    Nisselson are here in court today as partners representing that

10   firm.  Their work has been outstanding, been very, very helpful

11   to the trustee and we've achieved some significant results by

12   virtue of their efforts.

13           The other firm that's here this morning is counsel to

14   the trustee in a conflicts capacity is Young, Conaway.  This

15   case being as pervasive as it is, eventually Windels, Marx had

16   a conflict.  And we needed to get the assistance of other

17   counsel so we reached out to Young, Conaway.  Young, Conaway

18   has stepped up; they've worked very closely with us on a number

19   of matters that they instituted prior to the December 11th

20   date.  And we find their work to have been exemplary as well.

21           I know of no objection to either one of these

22   applications and would move both of them for approval as well,

23   Your Honor.

24           THE COURT:  I'm familiar with a lot of their

25   activities, visibly before the Court.  Unless somebody wants to

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 18

1    be heard, I'm prepared to grant the application.

2            Apparently not.

3            MR. SHEEHAN:  Thank you, Your Honor.

4            That leaves us with -- this morning with the

5    application of the trustee and I want to apologize for the

6    absence of the trustee who has sent me an e-mail that there's

7    some kind of problem on the E train -- or not E train, 6 train.

8    Trustee travels by subway and he's not here.  So, he would like

9    to have addressed the Court and I may even interrupt what I'm

10   about to say to allow him -- or he can speak at the end of my

11   presentation, Your Honor.

12           The --

13           THE COURT:  I think I can understand some of the

14   problems.  I couldn't get home last night, either, by surface

15   transportation or subway.

16           MR. SHEEHAN:  Well, the e-mail said there was an

17   unauthorized person on the tracks.

18           THE COURT:  That's not to say that I slept here last

19   night.

20           MR. SHEEHAN:  That's all right, Judge.  I just know it

21   wasn't Mr. Picard.

22           Anyway, Your Honor, we have before us this morning on

23   objection to the sixth interim fee application of the trustee

24   and his counsel.  And there are a number of issues that have

25   been raised before by Ms. Chaitman on behalf of her clients.

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 19

1    but I believe that, perhaps -- and I beg the Court's indulgence

2    to make something of -- more than just a perfunctory

3    presentation to Your Honor and not that we're normally

4    perfunctory, but I wanted to go beyond what, perhaps, would

5    normally be required here.  Especially given the statute as

6    written.

7            The thrust of what Ms. Chaitman seems to be suggesting

8    is that this trustee has mismanaged the estate -- has actually

9    done a terrible job, shouldn't be paid virtually at all.  And

10   last night, we were accused of violating the Constitution; we

11   are now un-Constitutional, as well.  I don't speak of those

12   things lightly and I don't mean to be facetious when I say

13   them.

14           I do raise this, though.  We are in this case for 902

15   days as of today.  902 days in which this trustee, based on the

16   7.6 million dollars subject to appeals by Ms. Chaitman, has

17   therefore garnered to the estate 8 million dollars a day.  I

18   think we've done a good job.  I think that in and of itself

19   speaks volumes.  But how do you get there?  How do you get to

20   eight million dollars a day?  And lots more in the offing,

21   which this Court will be hearing about very, very shortly and

22   we'll add significantly to that total.

23           How you get there is to do all of the hard work.  And

24   out application is just for four months ending in January.  But

25   it goes back in a real sense; it encompasses all the work that

Page 20

1    we -- transpired beforehand.  You don't file over 1,000

2    lawsuits before the statute runs in December of 2010 without

3    intense efforts by a big team of people.  That's just focusing

4    on the litigation.  On top of that, as Ms. Chaitman points out,

5    we had 16,000 claims.  But we should break that down.

6            16,000 claims, the vast majority of those being

7    indirects, as we call them, or customers without an account.

8    People invested in feeder funds.  And the feeder funds

9    themselves.  There's a pending motion before Your Honor on that

10   very subject matter.

11           We denied all of those but it's been misunderstood,

12   misapplied again; misleading information is supplied to people.

13   The press, gullible as it is, eats it up; doesn't understand

14   what's going on.  Your Honor knows that when we approved a

15   feeder fund in this particular case for settlement, what will

16   happen.  Their claim will be allowed as part of that

17   settlement.  They will receive a distribution in cases that

18   will be significant; billions of dollars will be paid to those

19   feeder funds.  And those feeder funds in turn, will pay those

20   thousands of investors.

21           Our job is made more difficult by that because what we

22   have to do is assure ourselves that when we make those payments

23   to those feeder funds, that the money goes to those investors.

24   And we've worked assiduously with every one of those feeder

25   fund counsel to ensure that that takes place.  And it will in

08-01789-cgm    Doc 4169-6    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit E to
the Chaitman Decl.    Pg 22 of 51

MADOFF, SIPC v. MADOFF; PICARD v. MORGAN

1    connection with all those settlements.

2        To suggest they've been discarded, abandoned, not part

3    of this proceeding is hogwash and Ms. Chaitman knows it.

4    That's the sad part.  She knows exactly what's going on.  She's

5    an experienced bankruptcy practitioner.  Think of that.  She

6    and how many others are experienced bankruptcy practitioners.

7    Hundreds in this case.  Hundreds.  Some of the best law firms

8    in the city, in the country, in the world are in this case.

9    Not one of them has ever objected to these fees.  Ms.

10   Chaitman's objected to every one, based on spurious information

11   and misinformation.

12       And following up on -- when we got into the case, Your

13   Honor knows we retained, and those efforts are also criticized

14   by Ms. Chaitman, forensic accountants at FTI, and now

15   AlixPartners, to assist as a two-pronged effort; FTI focusing

16   on the litigation which resulted in all those lawsuits,

17   AlixPartners on evaluating the flip side of that coin, the

18   customer claims.  Now, we've finished almost all of them.  The

19   only reason there's a significant difference between the amount

20   of claims approved and the amount of dollars involved is

21   because the bulk of the dollars are in the feeder funds.

22       Out of the 17.6 billion dollars of claims that were

23   filed, only 2 billion of those were outside the feeder funds.

24   The rest are all feeder fund dollars.  That's what we're

25   talking about here.  So the two billion dollars that's out

1    there that we could distribute, if in fact we had the ability

2    to do so, we could fully satisfy a lot of people very, very

3    quickly.  There's only one thing holding that up and that's the

4    appeal in the Picard matter.  That's the only thing holding it

5    up.  It has nothing to do with what the trustee did; it has

6    everything to do with that appeal.

7         So at the end of the day, what we've had is tremendous

8    efforts made by many people here, obviously demonstrated by the

9    fee applications where lots and lots of lawyers are involved.

10   And I agree with that.  But this is a one in a lifetime

11   enterprise that we're involved in here.  You don't just show up

12   in court without doing all the hard work that's necessary to

13   figure out exactly what went on.  Ms. Chaitman complains in

14   another motion which Your Honor will hear shortly that we don't

15   report enough, that people don't really know what's going on.

16        I have a very good recommendation, Ms. Chaitman:  Read

17   the complaints.  They tell a story.  Every one of those

18   complaints tells an unbelievable story, an unbelievable story

19   of the fraud that was perpetrated by Mr. Madoff but not just as

20   a Jewish affinity fraud among his relatives and his friends,

21   which of course he did do and had no conscience about.  But in

22   addition to that, he became part of the financial fabric of the

23   international financial community.  I brought today to court a

24   chart.  All right?  This is a chart that's public record;

25   that's why it's there.  It's been filed in the RICO action; we

1   filed it in the matter against Sonja Kohn.  And what I'd like

2   to say -- and if I may just approach the chart, Your Honor?

3         Nobody gave us this chart.  We had to do all the work

4   to find out where all that money went.  And you start over

5   here, you start at Sonja Kohn and all of her colleagues and you

6   travel through all of the avenues all the banks, all the funds,

7   back and forth through BLMIS, Mr. Madoff, and back out again

8   and all the money out through Matachi, Austria and UNICRI

9   (sic).  That's one case.  That took an enormous amount of

10  effort to trace the billions of dollars that were flowing in

11  and out of BLMIS and those billions of dollars could only be

12  what?  In a Ponzi scheme, they are customer property; they

13  cannot be anything else.

14        This is one chart.  I could have presented, Your

15  Honor, thirty of these, all of them as complex as this one, all

16  of them involving an enormous array of activities by Mr. Madoff

17  over a period of decades.  Unraveling that fraud, bringing it

18  to the attention of the courts, litigating those issues is

19  exactly where all that time, money and effort has been spent.

20  And I submit, with great results, as noted at the outset and

21  the money collected by the trustee.

22        Now, in addition to all of that litigation, we have

23  all of the other litigation.  And the trustee gets criticized

24  for that, too, because that's the so-called good faith

25  litigation.  Individuals who got other people's money,

MADOFF: SIPC V. MADOFF; PICARD V. MORGAN

Page 24

1    basically the people that Mrs. (sic) Chaitman represents, those

2    are people -- and you know, it gets bantered about too

3    casually.  Other people's money.  You know, there's two classes

4    of victims, the losers and the winners which have become

5    defined by virtue of the trustee's method of calculating that

6    equity.  But those winners and those losers actually share a

7    common bond.  They both were victimized.  They both were

8    defrauded.  The only difference is, is that the net winners Ms.

9    Chaitman represents got their money back and then some.  And

10   the people that the trustee is trying to help, the net losers,

11   never got their money back.  Those 1,000 avoidance suits

12   represent 4.6 billion dollars.

13          Does the trustee walk from that?  Does he say, you

14   know, those people got defrauded, it's not fair, we should just

15   forget it?  Fine.  That sounds good.  What's the problem with

16   that?  Well, the poor losers who didn't get the 4.6 billion

17   dollars back are never going to get it.  It can't come from

18   anywhere, the statute doesn't provide for that.  That's been

19   litigated over and over again by Ms. Chaitman.  She loses it

20   every time.  It's now in the circuit; that's where it should

21   be.  And at the end of the day, I'm confident that Your Honor's

22   decision will be affirmed in that regard.

23          But more to the point, how do we just ignore that?

24   How do we tell all those people out there who are owed those

25   billions of dollars, "We wrote it off"?  We can't do that.  We

Page 25

1   can't fulfill our obligations here and do that.  So as a result

2   of all of that work, what we do have is lawsuits of 988, to be

3   precise, against good faith, 34 against bad faith.  What do we

4   call bad faith?  The Madoff family.  All right?  They're

5   definitely bad faith candidates; we've alleged that against

6   them.  Your Honor's familiar with that.  And numerous other

7   insiders and employees, adding up to thirty-four lawsuits.

8   Then we had the feeder funds, that's twenty-nine banks.  And

9   then we have subsequent transferees that we've already started

10  filing lawsuits on, filed sixty since December 11th, began

11  subsequent transferees we've now discovered as we chase this

12  money.

13          I want to pause here for another comment made by Ms.

14  Chaitman about these lawsuits.  Again, a misstatement and

15  gullibly absorbed by the news that somehow we've been found not

16  to have standing.  Wrong.  Not even close.  What's happened is,

17  is that as Your Honor well knows there have been several --

18  more than one now, applications to withdraw the reference to

19  you with regard to the decisions on those issues.  Judge Rakoff

20  and Judge McMahon decided there are federal issues there that

21  would be better determined by an Article III judge.  In their

22  discretion, they made that decision.  We disagree respectfully.

23  But we move on.

24          They didn't decide anything substantively.  There are

25  two motions -- one motion, actually, pending by HSBC for

08-01789-cgm   Doc 4169-6   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit E to
MADOFF, SIPC v. MADOFF; PICARD v. MORGAN
the Chaitman Decl.   Pg 27 of 51

Page 26

1    dismissal; we're replying to that next week.  She could be

2    forecasting the outcome down the road, but it didn't happen

3    yet.  And we're hopeful, very hopeful, that we will be able to

4    sustain those causes of action and try them here.  As Judge

5    Rakoff said, whatever he decides is coming back here.  And

6    my -- our hope, our sincere hope is all those causes of action

7    remain viable and that we do try them here.

8         So it's a misstatement.  We didn't waste time.  We

9    brought all this to the attention to the Court because it won't

10   be a waste of time in any event.  We have significant avoidance

11   actions against all of those defendants in the billions of

12   dollars.  That's why they come to the table and talk to us.

13   That's why we've achieved these settlements.  Because we have

14   done this credibly.  We don't walk into some of the biggest law

15   firms in the city and say give us the money.  We give them a

16   detailed picture of the wrongdoing that their clients engaged

17   in from our perspective, based on hard facts, hard accounting

18   information and then in a very persuasive way, that we believe

19   in complaints to be decided by the Court.

20        As I said, nobody gave us that chart.  Nobody gave us

21   any of this.  We've put it all together.

22        One of the other items that keeps recurring in Ms.

23   Chaitman's papers is, is that if she loses a motion, she

24   reargues it here.  We've heard about Levy again; that's on

25   appeal.  We've heard about Picower; that's on appeal.  That,

MADOFF; SIPC v. MADOFF; PICARD v. MORGAN

Page 27

1    somehow, in her mind, is a basis for what?  Not paying us our

2    compensation.  Because she disagrees with us.  Well,

3    respectfully, I disagree with her.  The end of the day has

4    nothing to do with compensation.  Lawyers win and lose cases

5    every day.  We've been very fortunate.  We've won quite a few.

6    We've lost some, too.  But at the end of the day, it has little

7    or nothing to do with compensation.  Ms. Chaitman is just using

8    this as another vehicle for complaint about the fact that she's

9    not getting her way, and her view of the law has been rejected,

10    uniformly by all courts in which she's thrust it in front of

11    them.

12            Two other points and then I think I'll turn it

13    over --- Mr. Bell is here, I see, from SIPC.  But I don't

14    know -- is the trustee -- and the trustee's here.

15            Just two more points to sort of conclude this, Your

16    Honor, if I may.  And I apologize for taking this much time.

17    The issue of Lehman Brothers, by analogy, I think fails on its

18    face.  We're not talking about the biggest Ponzi scheme in the

19    world in Lehman Brothers.  Lehman Brothers had all the stock

20    and all the cash.  I'm very proud of Mr. Giddens; Mr. Giddens

21    has done a phenomenal job, and do you know what?  He hasn't

22    taken on cent from SPIC because he didn't have to.  That in

23    itself speaks volumes.  Volumes about the fact that, yes, he

24    did distribute, you know, a phenomenal amount of money.  But it

25    was there.  So was the stock.  That company failed because it

Page 28

```
 1    as part of a holding company that went bankrupt and when it

 2    did, that brokerage house had to be liquidated.  Not because

 3    Robert (sic) Fuld or anybody else was taking any of the

 4    money -- or Dick Fuld was taking any of that money.  Nobody

 5    was.

 6           Maybe they made some bad investment choices and that's

 7    true.  And they were hit by a tsunami that was never even

 8    anticipated by the financial community; that's also true.  But

 9    it wasn't one of the biggest sixty-five billion dollars Ponzi

10    schemes.  And that explains the difference between the work

11    ethic and the work required in Madoff as opposed to Lehman.

12           Then, the last item that I'd like to bring up, Your

13    Honor, is that I'm very proud of the people that work on this

14    case.  When they get demonized unjustly -- Mr. Picard in the

15    press is called "despicable".  That's beyond the pale, not

16    acceptable.  Litigate in a courthouse.  Stick to the language

17    that's appropriate for lawyers.  Don't get carried away.  Best

18    example of this; Ms. Chaitman suggested that Mr. Picard's

19    getting fifty percent of all the money we bring in.  I asked

20    Irving, "Why are you holding out?"  It's ludicrous.  Must know

21    nothing about the economics of law firms; a firm the size of

22    Baker, do you realize what the overhead is associated with

23    that?  Just on its face is ludicrous.  But it's even better

24    than that.  So she gets called the other day by Law360.  Law360

25    said what do you have for that?  Do you have any documents?
```

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 29

1    No.  She has no documents, nothing to support that.  She

2    learned it, she said, by speaking to a friend of Mr. Picard's

3    in New Jersey.  Wow.  Wow.  And you're willing, on the basis of

4    that, to come in and suggest that this trustee is taking that

5    kind of money and I am, too, I guess, so Baker's getting zero.

6    Right?  This is ludicrous.  This is beyond the pale.  In

7    McCarthyesque fashion, she suggests, well, he didn't produce

8    his contract, it's un-Constitutional.

9            Your Honor, I think we've left reality here.  I think

10   the reality is, is that this trustee and his counsel have

11   worked very, very hard and even without the statutory mandate

12   with regard to the payment and the fees in the absence of a

13   general estate, I respectfully submit that based on the work

14   and the achievements that we have in this case and the

15   submissions that we've made to Your Honor in connection with

16   therewith including this fee application, I respectfully submit

17   that Your Honor would approve this without the mandate from

18   SIPC.

19           Thank you, Your Honor.

20           MR. PICARD:  Good morning, Your Honor.  In this sixth

21   interim fee application, I'm seeking the payment of $606,729.13

22   out of 713,799 dollars in time charges.  Plus, the release of

23   $113,304.32 of previously deferred fees and $31.50 in

24   disbursements.  I also request a reduction in the holdback from

25   fifteen percent to ten percent.

1    SIPC has filed its recommendations pursuant to Section

2    78eee(b)(5)(C) of SIPA in support.  As the Court is aware, I've

3    discounted my hourly rate by ten percent.  None of the payments

4    will be to me, my counsel or other administrative expenses come

5    out of the recoveries.  And contrary to the argument of the

6    Peshkin objectors, I stand by my prior comments that SIPC does

7    not have a reasonable expectation of recouping its

8    administrative expenses at this time.  It may happen in the

9    future, but we don't know that.

10    During the four-month period, as I mentioned, my

11    discounted fees would be 713,799 dollars.  In addition to the

12    ten percent discount, I wrote off or did not bill approximately

13    139,000 dollars.  As set forth in the application in Exhibit B,

14    a significant portion of my time was spent attending to

15    avoidance actions, claims review, case administration,

16    Bankruptcy Court litigation, dealing with matters with the U.S.

17    Attorney's office, the SEC and FINRA and the trustee's

18    investigation.

19    Your Honor, while I didn't hear all of what Mr.

20    Sheehan had to say, as you know and have commented in the past,

21    this proceeding involves a Ponzi scheme vast in scope and

22    geographical in reach.  Many of our complaints allege and show

23    that.  Nothing regarding customer claims nor the trustee's

24    investigation was dropped in our lap.  It took hard work, as

25    that diagram will show.  The fact that counsel disagreed with

Page 31

1   our legal positions is not a basis to grant the objections,

2   especially when many of the matters are presently pending

3   litigation.

4         As with counsel's objection to the fifth interim

5   application, counsel for the objectors erroneously focuses on

6   the current allowed amount of customer claims, approximately

7   6.9 million dollars -- excuse me, billion dollars.  As I

8   explained at the December 14th, 2010 interim fee hearing,

9   counsel conveniently ignores the 250 or so complaints with

10   Section 502(d) counts.  If they are ultimately allowed or even

11   a portion is allowed, that would be at -- up to another at

12   least eleven billion dollars.  While this is an issue more

13   properly dealt with in connection with the motion for

14   allocation of property and interim distribution, I feel

15   compelled to address it here today.

16         Counsel for the objectors, in effect, is asking Your

17   Honor to assume that no more than the current amount of allowed

18   customer claims will end up being the final amount.  But, Your

19   Honor, you can just as easily assume that many of the claims

20   involved in litigation will be allowed.  A number of

21   settlements for which we have filed applications for approval

22   include provisions allowing claims.  And there are others being

23   negotiated as we speak and hopefully, we will be coming forward

24   with them in the near future.  Accordingly, it still cannot be

25   reasonably said that SIPC will recoup its administrative

08-01789-cgm    Doc 4169-6    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit E to
the Chairman Decl.    Pg 33 of 51

Page 32

1    advances.

2            One other point I'd like to make is that when the

3    interim distribution is made, I cannot and I will not be put in

4    the position that counsel wishes of my making an over-

5    distribution so that at a later date we will have a problem and

6    might have to contact some of the distributees to recover back

7    money.  That happened in an old act case called Lilinits (ph.).

8    It will not happen in the Madoff case.  Further, the objection

9    is incorrect when it states that customer property amounts to

10   more than 9.8 billion dollars.  I suspect that Mr. Sheehan has

11   gone through that math and I will not belabor that point.

12           Another objection I would like to comment on, as Mr.

13   Sheehan did late in his presentation, is the unfounded

14   allegation about my compensation and the assertion that I have

15   provided misleading information to the Court and to the public.

16   To the contrary, it is objectors' counsel who has been

17   spreading false information both in pleadings and press

18   releases.  Counsel has been quoted in the press, as Mr. Sheehan

19   has indicated, there was nothing in the letter that she filed

20   yesterday that changes that.  She is way off the mark.  I don't

21   receive any percentage near thirty-five or fifty percent and I

22   certainly haven't received sixty to ninety million dollars

23   since the beginning of the case.  Contrary to the allegation in

24   counsel's letter of yesterday, I am not a decision maker for

25   SIPC.  And I am not a quasi-governmental agency or act in a

Page 33

1   quasi-governmental capacity.

2           To try to end on a positive note, we have determined

3   all but four customer claims.  And the remaining claims are the

4   subjects of settlement negotiations in connection with certain

5   pending litigation.  Mr. Sheehan, I understand, has referred to

6   the recoveries on an average daily basis.  I would submit to

7   Your Honor that in over 900 days of the case pending, that's

8   not too shabby.

9           Based on the record of these proceedings, I ask Your

10  Honor to award the requested amounts and the other requests

11  that I've made.  I would be pleased to respond to any questions

12  that Your Honor may have.

13          THE COURT:  I have none.

14          MR. PICARD:  Thank you, Your Honor.

15          MR. BELL:  Your Honor, Kevin Bell for the Securities

16  Investor Protection Corporation.  When last we appeared on

17  December 14th, 2010 on the fifth application for interim fees

18  by trustee and counsel, we talked about hope and reasonable

19  expectation.  Since that time, this Court has approved

20  settlements, recoveries by the trustee of over six billion

21  dollars.  There is still a gap between my hope and lack of

22  reasonable expectation; my hope that customers will be fully

23  paid who have suffered injury by this malicious fraud, this

24  Ponzi scheme, and reasonable expectation that the Securities

25  Investor Protection Corporation will be paid back its advances

08-01789-cgm    Doc 4169-6    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit E to the Chairman Decl.    Pg 35 of 51

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 34

1    for administrative expenses.  SIPC, of course, if the Court

2    approves these applications, advance the money to the trustee

3    to pay these allowed amounts of compensation as I have said in

4    all 903 days since the filing date, SIPC picks up the bill.

5    SIPC gets its funds from the securities industry, administers

6    its trust fund and not a penny of any compensation or

7    administrative expense has come out of any fund that the

8    trustee has gathered to satisfy the claims that have been

9    allowed by him.

10            In the hearing on December 14th at page 22 of the

11    transcript, I referred to the opponent's exhibit which was a

12    letter from the president of SIPC to then-Congressman Kanjorski

13    dated September 7th in which the president of SIPC estimated

14    that the total amount of allowed claims would be 17.3 billion

15    dollars.  In the trustee's motion for allocation and

16    distribution to the victims here out of the fund of customer

17    property, the number that the trustee estimates will be

18    available for distribution mirabile dictu is 17.3 billion

19    dollars, not the 6.8 that our opponent harped on in the

20    December hearing nor in her latest opposition papers.  There

21    are, as the trustee points out matters in his application,

22    matters that are in litigation and that are subject to Section

23    502(d) of the Bankruptcy Code in litigation with regard to

24    those allowed claims, one of which you will hear next week at

25    the hearing on the proposed settlement with Fairfield Sentry.

1    There will be another one in two weeks further out on the

2    settlement with Greenwich Sentry.

3            As you see, the window between hope and reasonable --

4    no reasonable expectation continues to narrow and, you know,

5    maybe one of these days on a fee application, I will stand up

6    and say, Your Honor, it will be the second criteria that you'll

7    be judging these fees on.  I believe, you know, the extent of

8    fees in this case -- and I would note the Court to paragraphs

9    177, 178, 179 and 180 where the applicants say SIPC staff made

10   certain adjustments and suggestions which were adopted by the

11   trustee and B&H for each of the four months that are the

12   subject, October, November, December of 2010 and January of

13   2011, which are the subject of this application.

14           I can assure the Court that SIPC has pored over every

15   one of those pages, probably somewhere in the neighborhood of

16   six feet worth of documents and made comments and suggestions

17   as it sees fit and as it's charged by statute to do.  And

18   that -- those adjustments and suggestions have been discussed

19   trustee and counsel.  And when SIPC makes its recommendation,

20   it makes it in light of that overly intensive review of these

21   fees.

22           Another point I would note because you read in the

23   media -- and I don't know from whence it comes, of the

24   extraordinary dollars in this case.  We've even had the SEC's

25   office and Inspector General comment on fee reviews.  I've been

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 36

1  doing it for almost thirty-eight years and I guess I'm somewhat

2  expert at reading fee applications.  It is among the most

3  enjoyable things that I do and it's why I went to law school.

4  You know, it's tedious; you need to have an understanding of

5  the full panorama of the case.

6          In Your Honor's commentary on my statements at the

7  December 14th hearing, you hit it right.  This is a case like

8  none other.  The opponents in this case are extremely -- or

9  represented by extremely highly skilled law firms.  The

10  intensity with which it is litigated is of the highest order.

11  The staffing of the case is always a judgment that counsel has

12  to make when you are going up at what is reputed to be the best

13  among the best of New York's litigators.  Because it's about a,

14  what I call a holy cause, which is to get the money back into

15  the fund of customer property so that the purpose of the

16  Securities Investor and Protection Act and the Congressional

17  intent is fulfilled and that is to make whole the victims.

18  Trustee is a long way along that road.  If and when the Picower

19  settlement is final and those funds come into the trustee's

20  hands to distribution and if and when the Second Circuit

21  decides to affirm this Court's decision on that equity, forty-

22  four percent of the allowable claims, the 17.3 billion dollars

23  will be satisfied.  That's getting close to, you know, only

24  another fifty-six percent more to go, Your Honor, until I stand

25  up here and say I -- there is a reasonable expectation.

MADOFF: SIPC v. MADOFF: PICARD v. MORGAN

Page 37

1              But another point to note is that the public service

2       discount that SIPC suggests and counsel and trustee accept

3       before they're designated, in this case alone, through this

4       period, through January 31, is totaling twenty million dollars.

5       That's a healthy sum to leave on the table for any law firm

6       that's operating with its overhead.  Some would like to see it

7       more.  I can tell you in the adjustments and suggestions

8       adopted by the trustee the number may not reach that number but

9       it is high and may be considered painful by counsel when

10      they've made the adjustments but SIPC watches these fees.

11             In this -- in the opponent's letter that they filed

12      last night on page 2, I would like to address the trustee as

13      the decision maker for SIPC and I'd like to put it in context

14      of a decision that the Second Circuit made thirty-five years

15      ago in SEC v. Morgan Kennedy.  In that case, the trustee,

16      Eugene Bondy, and the law firm of Rogers & Wells which

17      represented him took a position different than SIPC's and

18      bankruptcy judge Babitt, I think, ruled in favor of the trustee

19      and I think the trustee also was successful in persuading the

20      district court to agree with him.  However, in the Second

21      Circuit, SIPC asserted its position and the Second Circuit

22      ruled with it.

23             SIPC always reserves the right as it does in -- by

24      statute to participate in all matters.  And SIPC, in my view,

25      and I've been there almost thirty-eight years, is the ultimate

08-01789-cgm   Doc 4169-6   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit E to
the Chaitman Decl.   Pg 39 of 51

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 38

1   decision maker in this case as SIPC interprets the Securities

2   Investor Protection Act.  The trustee is designated by SIPC and

3   appointed by the district court and the trustee is an

4   independent and makes his or her decision.  But SIPC always

5   reserves the right to disagree.

6          I don't know whether we will ever be in such a

7   situation in this case, I hope not, but to -- I just wanted to

8   make the record clear that SIPC gets to be a decision maker in

9   its purview of the statute and its responsibilities and those

10   responsibilities not only talk about fees but talk about how

11   the statute's interpreted.

12          So, you know, with those points to the Court, I stand

13   by SIPC's recommendation in support of these fees and ask the

14   Court to enter an order approving these fees and I will assure

15   the Court that SIPC will work with the trustee and counsel when

16   we agree to move forward to try and make these victims whole in

17   this most perfidious of crimes.  Thank you, Your Honor.

18          MS. CHAITMAN:  Good morning, Your Honor.

19          THE COURT:  Good morning.

20          MS. CHAITMAN:  The -- I take it that Mr. Picard has

21   conceded that he is compensated based upon a percentage

22   although not the percentage that I was told but, in any event,

23   a percentage of the fees that are paid to Baker & Hostetler.  I

24   understood him to say that this morning.  And I think that that

25   raises a very serious constitutional issue because clearly in

Page 39

1    this case the trustee has made new law in terms of what SIPA

2    requires and permits.

3           THE COURT:  I'd appreciate if you would get to the

4    question of the fees.  If you're relating now to the letter

5    that you filed last night, then I'm going to tell you I'm going

6    to disregard that and I have a lot of comment to make about

7    that.  That's a tactic I find somewhat abusive.  Not even

8    calculated to get it before the Court.  If it's intended as a

9    sound bite for the media, that is highly inappropriate.

10          I resent the fact that you filed a letter with the

11   Court at 4:30 in the evening of this hearing, didn't even get

12   it into the hands of the Court.  What the tactic or the intent

13   of that letter is I do not know but the contents of that letter

14   are not appropriate for an objection to the fee request here.

15          MS. CHAITMAN:  Well, Your Honor, there was no tactic

16   other than to --

17          THE COURT:  The fact is it was not even brought to my

18   attention until just before I walked out here this morning.

19   And if it's a subject of any media conversation it's improper

20   with respect to this hearing today.

21          MS. CHAITMAN:  Your Honor, it's --

22          THE COURT:  It is not being regarded by this Court.

23          MS. CHAITMAN:  Okay.  We have made allegations which

24   are substantiated by personal knowledge with respect to

25   attorneys in my firm that Baker & Hostetler has grossly padded

08-01789-cgm   Doc 4169-6   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit E to
MADOFF; SIPC v. MADOFF; PICARD v. MORGAN
the Chairman Decl.   Pg 41 of 51

1   time on matters in which we are directly adverse.  We are not

2   in a position to attest to whether time was padded on matters

3   in which we are not involved because we have no way of knowing.

4   But on matters in which we have been directly adverse, Your

5   Honor, the -- where it would be reasonable to spend maybe 200

6   dollars, there were 6,900 dollars billed.  It is so out of

7   whack with what could reasonably be considered compensable time

8   that it raises the issue whether that kind of overbilling

9   pervades the fees.

10          Now, the reason this is an important issue aside from

11   the fact that it goes to the integrity of the proceedings is

12   that SIPC, unless SIPC is prepared to say that it will not be

13   reimbursed for administrative expenses before the general

14   unsecured creditors are paid, in this case for the first time

15   in SIPC's history, the trustee has taken the position that

16   there are certain customers who don't have allowed customer

17   claims but will have allowed general unsecured claims.  So,

18   that is a -- the great mass of the victims of Mr. Madoff are

19   going to be considered general unsecured creditors and unless

20   SIPC is prepared to say that it will not be reimbursed until

21   all the general unsecured creditors are paid in full, then any

22   overpayments to Baker & Hostetler come directly out of the

23   pockets of more than half of the victims of Mr. Madoff's crimes

24   and that's why this is such an important issue for us.

25          Now, with respect to the clawback actions against

08-01789-cgm   Doc 4169-6   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit E to
the Chaitman Decl.   Pg 42 of 51

MADOFF; SIPC v. MADOFF; PICARD v. MORGAN

1    innocent investors, Your Honor, we've laid out in our objection

2    that clearly under the statute, Mr. Picard does not have

3    standing to pursue those claims because he doesn't have the

4    right to utilize the avoidance provisions of the Bankruptcy

5    Code unless and until the allowed claims exceed the fund of

6    customer property.

7         Now, maybe someday that would be true but it's not

8    true today.  Today he has enough money in the fund of customer

9    property to pay the allowed customer claims.  Therefore, he

10   does not have standing, the statute is absolutely clear on

11   this, so, he has pursued a great deal of litigation against

12   innocent victims of Mr. Madoff's crimes and caused havoc among

13   5- or 6,000 people and their families without any statutory

14   authority.  And that could have been dealt with in a different

15   way, in a way which would have cost the estate a great deal

16   less money in terms of professional fees and would have saved a

17   great deal of heartache among thousands and thousands of

18   innocent victims.

19        We will see what the decisions are of Judges McMahon

20   and Rakoff in the pending litigations there but they have both

21   issued preliminary decisions withdrawing the reference in whole

22   or in part in Judge McMahon's case with respect to JPMorgan

23   Chase in whole.  In Judge Rakoff's case with respect to HSBC in

24   part, however, both judges indicated in preliminary decisions

25   that the trustee does not have standing under established law

1    to pursue aiding and abetting claims, to pursue claims pursuant

2    to the assignments to the extent that SPIC has paid some of the

3    claimants and to pursue claims that are barred under the in

4    pari delicto doctrine.

5          Now, for the trustee's law firm to be compensated tens

6    of millions of dollars for assertion of claims that the trustee

7    has no standing to bring is a waste of money.  And, Your Honor,

8    if it's SIPC's money and SIPC's members want to pay for that,

9    that's fine but then SIPC should stand up and say that they are

10   prepared to waive any claim for reimbursement until all of the

11   general unsecured creditors are paid in full.

12         Now, we have alleged in our objection that the -- that

13   Baker & Hostetler has used temporary attorneys and not complied

14   with controlling law as to the disclosure of the terms of those

15   temporary attorneys' retention.  There has been no disclosure

16   of the terms, the number of temporary attorneys, the amounts

17   that were actually paid for the agencies for those people's

18   time.  There's been no disclosure of that and yet there are

19   scores of people whose time is billed at what appeared to be

20   regular Baker & Hostetler rates for people who are not on Baker

21   & Hostetler's website even four or five months after the time

22   period that's covered by this fee application.

23         In addition, the fee application charges for overhead

24   expenses that are not permissible.  It doesn't go through how

25   you can justify taking away from a general unsecured creditor

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 43

1   money in order to pay for a librarian, an assistant librarian

2   and there's no disclosure of how far that goes.  So, those are

3   the bases on which we do object, Your Honor.  And again, if it

4   doesn't cost anything for the clients that I represent, the net

5   winners who are going to be general unsecured creditors in this

6   estate, then if SIPC wants to squander its money, that doesn't

7   hurt us.  But if it comes out of our pocket, it does hurt us.

8   Thank you.

9           THE COURT:  You want to be heard?

10          MR. SHEEHAN:  None of what you just said is true.

11   Just not true.  So, I don't understand how to respond to this.

12   Thousands and thousands and thousands?  That -- 6,000 people?

13   These numbers have no relationship to reality.  None.  Zero.

14   And that's true of everything else she said.  Doesn't have any

15   relationship to reality.  We're squandering money?  How do you

16   come up with these conclusory allegations?

17          Whether SIPC ever gets reimbursed in this case is so

18   far down the road we should be kissing each other if that

19   happens.  It means we'll have collected over twenty billion

20   dollars that SIPC then shares.  Your Honor will decide that

21   when that happens and so will the -- and the statute will be

22   dealt with then.  But right now instead of saying we're

23   squandering money or wasting our time on standing, Helen

24   Chaitman ought to be standing behind me and cheering us,

25   cheering us to help those victims who don't get their money

1    back that she wants to take away from them.

2            That's really what's going on here.  She wants that

3    money.  She wants the money that's going to go to those

4    victims.  Take it.  That five billion dollars?  There's only

5    one place that money came from.  It came from people who didn't

6    get their money back.  She wants it.  Not to give it to them.

7    To take it away from them.  This is pernicious what's going on

8    here.  Has to stop.

9            MR. BELL:  Your Honor, the way I read the statute,

10   78fff(d), it's very clear that sets the scheme for repayment of

11   SPICs for its administrative offense -- expenses.  If and when

12   we reach that point in time where the trustee is being -- is

13   able to fully satisfy the -- all the allowed claims in this

14   case and when we look at another ten billion dollars are so;

15   and that's with a "b", ten billion, then we'll look at the

16   statute.  But Congress clearly set forth what the statute is

17   and SIPC has no desire to engage in negotiation with Ms.

18   Chaitman in ignoring the clear words of the statute.

19           THE COURT:  Thank you all.  I'm here to determine

20   these applications based upon the filed papers and they are

21   somewhat voluminous.  The objection that's been lodged here is

22   interesting in that there are, indeed, hundreds and hundreds of

23   very highly skilled law firms that are involved in this matter

24   on both sides of the equation of net winners, net losers, yet

25   there is only one objection that's been filed out of all of

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 45

 1   those hundreds of skilled people knowledgeable in the field and

 2   of the thousands of victims.  It's somewhat clear to this Court

 3   that the objection is rather partisan and parochial and is made

 4   on behalf of an attorney and her clients who are not

 5   particularly pleased with the determination on net equity as to

 6   where the money goes to winners or losers.

 7        I do agree that among the most important of the Madoff

 8   victims are those who never got anything back or who are net

 9   losers and somehow or other Ms. Chaitman doesn't feel necessary

10   to champion that particular group.

11        But notwithstanding all of that, the statute is very,

12   very clear as to the Court's role here in approving the

13   requested fees.  And the statute is clear that unless there is

14   some reasonable expectation of recoupment, when SIPC recommends

15   that the amounts requested be approved the Court is required to

16   award the amounts recommended by SIPC.  That's occasion to

17   hear.  I do not at this point -- it would be very nice if

18   during our lifetimes we see the situation come about where

19   there is a likelihood of recoupment to SIPC.  It means that

20   everybody else will have recovered what's appropriate for them.

21   I do not see that at this point in time nor am I speculating or

22   should speculate.

23        With respect to the kinds of services that have been

24   rendered here, the amounts requested, this is by any stretch of

25   the imagination one of the largest most complex sets of

08-01789-cgm    Doc 4169-6    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit E to
MADOFF; SIPC v. MADOFF; PICARD v. MORGAN
the Chaitman Decl.    Pg 47 of 51

1    litigation that have come down the pike.  It's measured both in

2    quality and quantity in the thousands with deadlines that have

3    come upon everyone under the statute so that the December

4    deadline requiring thousands of new law suits to be filed is

5    something that was anticipated and it is a big stretch for any

6    law firm or any organization to deal with.

7            The chart that has been presented here as an

8    illustration of the enormous and complex activity involving

9    just one feeder fund with billions of dollars involved,

10   lawsuits all over the world and here is indeed forms a

11   predictor of the continuation of the kind of litigation that's

12   involved here.  And for purposes of this hearing, I am

13   considering that charge as an exhibit, as a model of the kind

14   of activity in complex cases that are involved here in the

15   Madoff proceedings.

16           Many of the objections that are contained here have

17   been responded to both today orally and in the reply papers.

18   Most of the contents of the reply papers were not addressed by

19   Ms. Chaitman and the only thing that's come up is the one

20   single interesting kind of letter filed last night, not

21   necessarily calculated to get before the Court for review and

22   interpretation but nevertheless, purely speculating, making

23   general statements in a very improper fashion and also,

24   perhaps, even dealing with matters that are not yet coming

25   before the Court for purposes of today's objection.

08-01789-cgm   Doc 4169-6   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit E to
the Chaitman Decl.   Pg 48 of 51
MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 47

1        The tactic of this kind of activity is not to be

2    countenanced.  In my litigation days we called this

3    sandbagging; when you file a piece of paper which you know is

4    not able to be refuted whatever the contents are of that paper

5    and Courts generally disregard that kind of activity.  To the

6    extent this becomes -- these filings become media events, they

7    are not considered by the Court in the context of the matter

8    that's before me.

9        The objection filed and all pertinent parts is a

10   repackaging of the prior interim fee objections.  There is

11   nothing or any -- there is no argument that's set forth in the

12   objection that does provide any basis for the Court to deviate

13   from the statutory language that is determinative of this

14   application for fees.  I overrule the objections in every

15   respect -- I'm sorry; that's objection, singular, in every

16   respect and grant the applications in full.  Submit the

17   appropriate orders.

18        MR. SHEEHAN:  I will Your Honor.  I have it on disk.

19   I don't have the hard copy here with me, Judge.  Can I just

20   leave you a disk?  Thanks.

21        Your Honor, I think that concludes the calendar for

22   today.

23        THE COURT:  Thank you.

24        MR. SHEEHAN:  Thank you Your Honor.

25        THE COURT:  Looking at a copy of the now infamous

08-01789-cgm    Doc 4169-6    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit E to
the Chaitman Decl.    Pg 49 of 51

MADOFF: SIPC v. MADOFF; PICARD v. MORGAN

Page 48

1    letter, I see that it was also delivered to the court

2    downstairs and hand stamped sometime after 4 o'clock yesterday

3    afternoon.

4            MS. CHAITMAN:  I apologize, Your Honor.  We tried to

5    have it brought up to your chambers but they wouldn't let us

6    bring it up.

7            THE COURT:  Nevertheless, you didn't get it there

8    until sometime way after 4 o'clock.

9            MS. CHAITMAN:  You're right, Judge.

10        (Whereupon these proceedings were concluded at 11:10 AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 49

1

2                         **I N D E X**

3

4                         RULINGS

5                                              Page      Line

6   Request to add/change language to the       12        11

7     litigation protective order granted

8   Request of Dechert firm to add/change       12        11

9     language in the order granted

10  Special counsels' fee applications granted  16        22

11  Applications for Windels, Marx, Lane &      18        1

12    Mittendorf, LLP granted

13  Applications for Young, Conaway, Stargatt   18        1

14    & Taylor, LLP granted

15  Trustee's fee applications granted          47        16

16

17

18

19

20

21

22

23

24

25

08-01789-cgm    Doc 4169-6    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit E to
the Chaitman Decl.    Pg 51 of 51

Page 50

C E R T I F I C A T I O N

I, Sara Davis, certify that the foregoing transcript is a true

and accurate record of the proceedings.

_____

SARA DAVIS

AAERT Certified Electronic Transcriber CET**D 567

Also transcribed by:

ELLEN KOLMAN

AAERT Certified Electronic Transcriber CET**D 568

Veritext

200 Old Country Road

Suite 580

Mineola, NY 11501

Date:  June 2, 2011