# EXHIBIT K

Part III

action or other right against BLMIS, its principals or agents or any third party arising out

of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to

cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to

recover from the principals or agents of BLMIS or anyone else for amounts advanced by

SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this

SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either

to demand or pursue or to prosecute or settle any collection effort, action or proceeding

therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt
from the SIPA Trustee or his agent of a check in the amount of $500,000.00 as set forth
in the SIPA Trustee's Notice of Determination of the Customer Claim dated July 22,
2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this
executed and notarized Partial Assignment and Release, the Assignor does for Assignor's
executors, administrators, heirs and assigns hereby remise, release and forever discharge
the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the
satisfaction of the Customer Claim, and, as the case may be, its officers, directors,
professionals, employees, agents, successors and assigns, of and from any
and all claims arising out of or relating to the Assignor's BLMIS Account, the

Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and

any and all circumstances giving rise to said Customer Claim which the Assignor now

has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from

the beginning of the world to the date of the execution of this Partial Assignment and

Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the

Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable court order determine that the Trustee is incorrect

in his interpretation of "net equity" and its corresponding application to the determination

of customer claims, the Trustee will be bound by that order and will apply it retroactively

to all previously determined customer claims in accordance with the Court's order.

Nothing in this Partial Assignment and Release shall be construed as a waiver of any

rights or claims held by Assignor in having its customer claim re-determined in

accordance with any such Court order.

Should a final and unappealable court order determine that the Trustee is

improperly limiting the payment of the $500,000 SIPC advance to one advance per

BLMIS customer account, the Trustee will be bound by that order and will apply it

retroactively to all previously determined customer claims in accordance with the Court's

decision. Nothing in this Partial Assignment and Release shall be construed as a waiver

of any rights or claims held by Assignor in having its customer claim re-determined in

accordance with any such Court order.

Assignor acknowledges the sufficiency of the consideration to be received in

accordance with the SIPA Trustee's Determination and under this Partial Assignment and

Release.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly

executed this Partial Assignment of Assignor's Customer Claim and Release, intending to

be legally bound hereby.

By: _____

ROGER M PESKIN

By: _____

DIANE PESKIN

Sworn and subscribed before me this
28 day of _____ July _____, 2009.

_____
Notary Public


**Nancy A. Manookian**
**Notary Public, State of New Jersey**
**ID 2115741**
**Commission Expires September 20, 2013**

# EXHIBIT H

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

### BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE: N/A _____

HOME: 610 - 419 - 0303 _____

Taxpayer I.D. Number (Social Security No.)
085 - 34 - 3379 _____

RECEIVED
Account Number:    1CM948
ROGER M PESKIN
AND DIANE PESKIN J/T WROS
51 EAST WALL STREET
BETHLEHEM, PA  18018

(If incorrect, please change)

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE
ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD
BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION
AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE
TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT
DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED
PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE
CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN
RECEIPT REQUESTED.

*************************************************************************

1.    Claim for money balances as of December 11, 2008 :
    a.    The Broker owes me a Credit (Cr.) Balance of    $_____ - 0 -
    b.    I owe the Broker a Debit (Dr.) Balance of    $_____ - 0 -

c.   If you wish to repay the Debit Balance,
     please insert the amount you wish to repay and
     attach a check payable to "Irving H. Picard, Esq.,
     Trustee for Bernard L. Madoff Investment Securities LLC."
     If you wish to make a payment, **it must be enclosed**
     with this claim form.                                    $ _____- 0 -_____

d.   If balance is zero, insert "None."                          _____- 0 -_____

e.   Claim for securities as of December 11, 2008:

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|   | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |

c.   If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) Number of Shares or Face Amount of Bonds | I Owe the Broker (Short) |
|---|---|---|---|
| | See attached schedule | $3,247,367.40 | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

502180406                                    2

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | X |

9    Have you or any member of your family
ever filed a claim under the Securities
Investor Protection Act of 1970? if
so, give name of that broker.    _____    X_____

Please list the full name and address of anyone assisting you in the
preparation of this claim form: G. Robert Santye ; A J Santye & Co
36 East Main Street Somerville NJ 08876

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.


IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.


THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.

Date _1/23/09_____    Signature _Roger Paskin_

Date _1/23/09_____    Signature _Liane CPaskin_

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)


This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

ROGER AND DIANE PESKIN                    51 EAST WALL STREET
ACCOUNT # 1-CM948                         BETHLEHEM PA 18018

*SECURITY HOLDINGS AS OF 11/30/08 (LATEST DATE AVAILABLE)*

| DESCRIPTION | # SHARES | PRICE | VALUE 11/30/2008 |
|---|---|---|---|
| FIDELITY SPARTAN US TREASURY MONEY MKT | 13244 | 1 | 13244 |
| US TREASURY BILL | 675000 | 0.99971 | 674804.25 |
| | | | |
| AT&T INC | 4189 | 28.56 | 119637.84 |
| ABBOTT LABORATORIES | 1121 | 52.39 | 58729.19 |
| AMGEN INC | 767 | 55.54 | 42599.18 |
| APPLE INC | 649 | 92.67 | 60142.83 |
| BANK OF AMERICA | 3540 | 16.25 | 57525 |
| CHEVRON CORP | 1475 | 79.01 | 116539.75 |
| CISCO SYSTEMS INC | 4307 | 16.54 | 71237.78 |
| CITIGROUP INC | 3835 | 8.29 | 31792.15 |
| COCA COLA CO | 1416 | 46.87 | 66367.92 |
| COMCAST CORP | 2124 | 17.34 | 36830.16 |
| CONOCOPHILIPS | 1062 | 52.52 | 55776.24 |
| EXXON MOBIL CORP | 3717 | 80.15 | 297917.55 |
| GENERAL ELECTRIC CO | 7493 | 17.17 | 128654.81 |
| GOOGLE | 177 | 292.96 | 51853.92 |
| HEWLETT PACKARD CO | 1770 | 35.28 | 62445.6 |
| INTEL CORP | 4071 | 13.8 | 56179.8 |
| IBM | 1003 | 81.6 | 81844.8 |
| J.P. MORGAN CHASE & CO | 2655 | 31.66 | 84057.3 |
| JOHNSON & JOHNSON | 1947 | 58.58 | 114055.26 |
| MCDONALDS CORP | 828 | 58.75 | 48627.5 |
| MERCK & CO | 1534 | 26.72 | 40988.48 |
| MICROSOFT CORP | 5605 | 20.22 | 113333.1 |
| ORACLE CORPORATION | 2832 | 16.09 | 45566.88 |
| PEPSICO INC | 1121 | 56.7 | 63560.7 |
| PFIZER INC | 4779 | 16.43 | 78518.97 |
| PHILIP MORRIS INTERNATIONAL | 1475 | 42.16 | 62186 |
| PROCTER & GAMBLE CO | 2124 | 64.35 | 136679.4 |
| QUALCOMM INC | 1180 | 33.57 | 39612.6 |
| SCHLUMBERGER LTD | 885 | 50.74 | 44904.9 |
| US BANCORP | 1239 | 26.98 | 33428.22 |
| UNITED PARCEL SVC INC | 708 | 57.6 | 40780.8 |
| UNITED TECHNOLOGIES CORP | 708 | 48.53 | 34359.24 |
| VERIZON COMMUNICATIONS | 2006 | 32.65 | 65495.9 |
| WAL MART STORES INC | 1534 | 55.88 | 85719.92 |
| WELLS FARGO & CO | 2418 | 28.89 | 71589.42 |
| SUBTOTAL-SECURITIES | | | 2599439.1 |
| S&P 100 INDEX DEC 430 CALL | 5900 | 23.3 | -137470 |
| S&P 100 INDEX DEC 420 PUT | 5900 | 16.5 | 97350 |
| | | | |
| TOTAL | | | 3247367.4 |

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
212 230-2424
P&S Dept. 212 230-2436
800 334-1343
Fax 212 838-4061

WE HAVE THIS DAY CREDITED YOUR
ACCOUNT WITH THE FOLLOWING:

11/13/08

CHECK WIRE                                              470,265.98

CLIENT'S ACCOUNT NUMBER

ROGER M PESKIN                                    1-CM948-3
AND DIANE PESKIN J/T WROS
51 EAST WALL STREET
BETHLEHEM            PA 18018



BERNARD L. MADOFF
Investment Securities LLC

885 Third Avenue New York, NY 10022-4834

# Facsimile Transmittal

| Date: | | Pages: | 1 |
|---|---|---|---|
| To: | | From: | Frank DiPascali |
| Fax #: | | Phone #: | 212-230-2424 |
| | | Fax #: | 212-838-4061 |

☐ Urgent   ☑ For Review   ☐ Please Comment   ☐ Please Reply

Note:

# WIRE INSTRUCTIONS

JP Morgan Chase Bank
40 Wall Street
New York, NY 10015
ABA #: 021 000 021
For Further Credit To:
Bernard L. Madoff
Account #: 140 081 703
FBO:   (Your account name) *Roger + Diane Peskin*
(Your account #)

*1-CM948-3-0*

*$ 470,365.98*
*100.00*
*470,265.98*

*$ Total —*
*Less $100*

12-16-2008   04:15PM   From-WACHOVIA   908 813 8573   T-144   P.002/004   F-157

## WACHOVIA

**Wire Transfer of Funds Request**

Preparer's Signature
059597

Callback NO
Required
(Yes or No)

Initiator's Signature

Customer Accepting Call Back/Phone Number

Verifier's Signature    _Linda Kubiak_   326186

Authorized Signature

**Account Status**

Sufficient (Audio Checked)
Not Sufficient (NSF)
**SUFFICIENT**

NSF Only

NSF Source of Funds

Credit Approver Name (Please Print)

Credit Approver Signature

Date                     Time of Call

---

**Wire Transfer of Funds**
**WACHOVIA BANK, N.A.**

| | | | | |
|---|---|---|---|---|
| | | Current Date | 11/13/08 | Control Number 400124 |

| Domestic or International | Non-Repetitive or Repetitive | Line Number | Amt Verify Cd | Verify I.D. | Type (Fed, Book, Other) |
|---|---|---|---|---|---|
| DOMESTIC | NON-REPETITIVE | | N | | FED |

Caller

Financial Center or Department
0801097

Request Type (Fax, Phone, Walk in)
WALK-IN

Description 2 (GL)

Execution Date
11/13/08

Domestic Transfer Amount
$ 470,265.98

Type Currency    Value Date    Foreign Amount    Exchange Rate

Contract Number / Provided By

U.S. Dollar Amount
$                                                =    Foreign Currency Transfer Amount

---

**Originator**

Check One ☐ Internal  ☒ Customer Initiated

Name
ROGER M PESKIN
Address
51 EAST WALL ST BETHLEHEM PA
City/State/Zip/Country
18018
ID 29511924    ID Source PA    ID Type DL

Org
75

Account Number
1010208551201

Expiration Date 110120

---

**Receiving Bank**

Name
JPMORGAN CHASE BANK, NA
Address
40 WALL ST
City/State/Zip/Country
NEW YORK NY 10015
Advice NONE
(No Phone Advice Required, Credit and Phone Advice, Notify and Pay, Pay Upon Proper I.D.)

R/T Number
021000021

---

**Beneficiary Payment Information**

Name
BERNARD L MADOFF INVEST SECURITIES
Address
885 THIRD AVE
City/State/Zip/Country
NEW YORK NY 10022
Other Payment Information
FBO ROGER PESKIN AND DIANE PESKIN ACCT NO 1 CM948 3 0

Org

Account Number
140 081 703

_Approval # 787 7431_

---

**Fee Method**
(Waive/Charge)

CHARGE

**Customer Contract**
All of the above information is complete and correct and provided to Wachovia Bank, N.A. or to Wachovia Bank of Delaware, N.A. (each, the "Bank") for it to implement a wire transfer of funds from my account. The Bank's acceptance and execution of my wire transfer transaction is subject to the Terms and Conditions contained in this Wire Transfer of Funds Request. My signature below evidences that I have received a complete copy of this Request, and that I have received the Deposit Agreement.

X _attached_
Customer Signature

X 11/13/2008
Date

562263 (Rev 02) Page 1 of 2

# EXHIBIT I

Helen Davis Chaitman (4266)
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084
(212) 841-1320
hchaitman@phillipsnizer.com
*Attorneys for Diane and Roger Peskin and*
*Maureen Ebel, with the support of more than*
*100 other customers*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**DECLARATION OF DIANE PESKIN IN SUPPORT OF OBJECTION TO FIRST**
**APPLICATION OF IRVING H. PICARD, TRUSTEE, AND BAKER & HOSTETLER**
**LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES**
**RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM**
**DECEMBER 15, 2008 THROUGH APRIL 30, 2009**

I, Diane Peskin, hereby declare, under penalty of perjury pursuant to 28 U.S.C. §1746, as

follows:

1.    I submit this declaration in support of the objection to the application for fees

filed by Irving H. Picard, Trustee, and his counsel, Baker & Hostetler LLP ("B&H") filed by

myself, Roger Peskin (my husband) and Maureen Ebel, with the support of over 100 other

customers of Bernard L. Madoff Investment Securities, LLC ("Madoff"). I have personal knowledge of the facts and circumstances stated herein.

2.    Roger and I filed a claim with the Securities Investor Protection Corporation ("SIPC") on February 19, 2009.

3.    We received no response whatsoever to our SIPC claim until almost four months later. On June 3, 2009, we were contacted by an attorney at B&H who informed us that we were only entitled to receive $387,000 as our full SIPC payment. The Trustee's attorney said that the Trustee was entitled to deduct from our SIPC payment the $113,000 that we had withdrawn from our Madoff account in the three months preceding December 15, 2008.

4.    We were absolutely astonished and devastated by this statement from the B&H attorney. We had been counting on the full $500,000 to carry us through until we could obtain a tax refund from the Internal Revenue Service based upon our theft loss.

5.    We pointed out to the Trustee's attorney that, although we had withdrawn $113,000 from Madoff within the 90 days before December 15, 2008, we had also *invested* $470,265.98 with Madoff on November 12, 2008, after we had received the $113,000.

6.    I broke down in tears on the phone and begged the B& H attorney for the full $500,000.

7.    The attorney at B&H apologized to us and said that he would review the situation with the Trustee and get back to us.

8.    Approximately one week later, the attorney at B&H called us again and told us that he had reviewed our situation with the Trustee and that the Trustee was very sorry but he had no alternative under the law but to withhold $113,000 from our SIPC payment. The attorney added that the law was absolutely clear on this subject.

2

9.     We asked whether the $113,000 would go into a fund to be distributed to Madoff customers and the attorney told us: "No, it would just reduce the amount that SIPC had to pay you."

10.     We then were forced, by the situation, to consult counsel and became plaintiffs in a lawsuit filed against the Trustee on June 10, 2009 for a declaratory judgment that the Trustee was violating the Securities Investor Protection Act ("SIPA") through his rejection of SIPA's definition of net equity and his failure to promptly pay SIPC insurance to Madoff customers, for a declaratory judgment that the Trustee has no right to deduct from our payment the $113,000 that we withdrew within 90 days of December 15, 2008, and for compensatory damages for breach of fiduciary duty.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 3, 2009

/s/ Diane Peskin

3

# EXHIBIT J

Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

June 26, 2009

David J. Sheehan
direct dial: 212.589.4616
dsheehan@bakerlaw.com

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Helen Davis Chaitman
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084

Re:    Maureen A. Ebel, BLMIS Account No. 1ZB463

Dear Ms. Chaitman:

I am in receipt of your letter dated June 23, 2009, written in response to my letter of that same date. I write to clarify a few outstanding issues with respect to the customer claims of Ms. Ebel and the Peskins.

Ms. Ebel's customer claim was determined by the Trustee and, on June 9th, was sent a determination letter and a Partial Assignment and Release, a copy of which is enclosed herewith for your convenience. You have indicated that Ms. Ebel wishes to reserve her right to dispute the Trustee's netting of the $102,000 preferential payment Ms. Ebel received against the $500,000 SIPC advance. This objection has already been preserved in the Partial Assignment and Release. Thus, once the Partial Assignment and Release is executed by Ms. Ebel and returned to the Trustee, the Trustee will promptly pay Ms. Ebel $398,000 to which she is entitled, without prejudice to her rights to the disputed portion of the SIPC advance.

With regard to the Peskins, as they were advised by the Trustee's counsel, we can confirm that they received no preferential payment in the 90 days preceding the filing date of this action. Thus, we will promptly determine their customer claim for the full amount. Upon their receipt of the Trustee's determination letter, please have them execute the Partial Assignment and Release and return it to the Trustee. Once they have done so, the Trustee will promptly send them $500,000 advanced by SIPC.

Helen Davis Chaitman
June 26, 2009
Page 2

Based on the foregoing, please confirm that upon receipt of payment to Ms. Ebel and the Peskins, you will withdraw the complaint filed on their behalf.

Sincerely,

David J. Sheehan

DJS/srb

Enclosure

cc:    Irving H. Picard

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

June 9, 2009

Maureen A. Ebel
506 Hansen Dr.
West Chester, PA  19380

Dear Ms. Ebel:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZB463 designated as Claim Number 002582:

Your claim for a credit balance of $2,460,387.49 and for securities is **DENIED**.  No securities were ever purchased for your account.

Your claim is **ALLOWED** for $2,290,387.49, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less withdrawals as listed in the following table:

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300011963

| DEPOSITS | |
|---|---|
| 3/17/2003 | $1,171,347.49 |
| 4/10/2003 | $550,000.00 |
| 6/19/2003 | $100,000.00 |
| 6/30/2003 | $25,000.00 |
| 7/25/2003 | $62,000.00 |
| 11/24/2003 | $500,000.00 |
| 1/27/2004 | $1,223,040.00 |
| 7/23/2004 | $200,000.00 |
| Total deposits: | $3,831,387.49 |
| WITHDRAWALS | |
| 1/2/04 | $42,000.00 |
| 9/22/2004 | $100,000.00 |
| 12/23/2004 | $85,000.00 |
| 3/22/2005 | $110,000.00 |
| 8/25/2005 | $130,000.00 |
| 1/4/2006 | $110,000.00 |
| 4/7/2006 | $60,000.00 |
| 6/9/2006 | $45,000.00 |
| 9/5/2006 | $140,000.00 |
| 1/3/2007 | $35,000.00 |
| 1/12/2007 | $35,000.00 |
| 3/27/2007 | $135,000.00 |
| 6/1/2007 | $40,000.00 |
| 7/31/2007 | $175,000.00 |
| 12/31/2007 | $75,000.00 |
| 4/2/2008 | $37,000.00 |
| 6/5/2008 | $85,000.00 |
| 9/16/2008 | $102,000.00 |
| Total withdrawals: | $ 1,541,000.00 |
| Total deposits less withdrawals: | $2,290,387.49 |

As discussed with my legal counsel, James W. May, on June 4, 2009, the last withdrawal from your BLMIS Account was made within 90 days of the Filing Date and is therefore a preferential transfer which is recoverable by the Trustee under 11 U.S.C. §§547(b) and 550(a). To facilitate the prompt partial satisfaction of your allowed claim, the Trustee has proposed to deduct the preferential payment of $102,000.00 from his initial payment to you.

You have disputed this treatment of the preferential payment. Pursuant to the terms of the Hardship Program instituted by the Trustee, the Trustee is willing to pay the undisputed portion of claims (up to the limit of available SIPC protection) to claimants that qualify for the Hardship Program, but have disputed the Trustee's proposed treatment of their claims. Because you have qualified for the Hardship Program and because you have disputed the treatment of the preferential

300011963

payment you received, the Trustee is willing to make an initial payment to you of $398,000.00 which is your available SIPC protection of $500,000.00 minus the amount of the preferential payment of $102,000.00. This is not a set off, rather, you and the Trustee reserve all rights regarding the disputed portion of your claim (including the disputed portion of you SIPC protection). Your rights to the remainder of the SIPC protection available to you and the Trustee's rights to seek recovery of the preferential payment you received will be determined at a later date either by settlement between you and the Trustee or by court order.

The enclosed **PARTIAL RELEASE AND ASSIGNMENT** relating to the undisputed portion of the Trustee's initial payment to you must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL RELEASE AND ASSIGNMENT**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $398,000.00 advanced by the Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. The remainder of your SIPC protection will be held by the Trustee pending resolution of the dispute over the preferential payment that you received. By executing the Partial Assignment and Release, you will not be waiving any rights to seek the full payment of the SIPC protection potentially available to you.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, Rosenman Family, LLC v. Picard, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. In re Adler Coleman Clearing Corp. (Adler Coleman II), 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); see also 15 U.S.C. § 78lll(4). Accordingly, Customers, as defined by SIPA § 78lll(2), enjoy a preferred status and are afforded special protections under SIPA. See New Times Securities, 463 F.3d at 127; Adler Coleman, 195 B.R. at 269."

Id. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after June 9, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee at a time and date determined by the Trustee, in his sole discretion. You will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you and the Trustee are not able to agree upon the portion of your SIPC protection that has been withheld due to the preferential payment you received, the Trustee will obtain a hearing date for this controversy at a time and date determined by the Trustee, in his sole discretion. You will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

_Irving H. Picard_
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

300011963

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

      Plaintiff-Applicant,

      v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

      Defendant.

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

## PARTIAL ASSIGNMENT AND RELEASE

    **KNOW ALL MEN BY THESE PRESENTS,** that Maureen A. Ebel, located at 506 Hansen Dr., West Chester, PA 19380 (hereinafter referred to as the "Assignor") in consideration of the payment of $398,000.00 to satisfy in part her claim for customer protection (the "Customer Claim", having been designated Claim #002582) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for herself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1ZB463, the "BLMIS Account"), which gave rise to the allowed Customer Claim for securities filed by Assignor

300012006

against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $398,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated June 9, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter

may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

If Assignor and the SIPA Trustee are not able to agree upon the portion of Assignor's SIPC protection that has been withheld due to the preferential payment received by Assignor, the SIPA Trustee will obtain a hearing date for this controversy at a time and date determined by the SIPA Trustee, in his sole discretion. Assignor will be notified of that hearing date. Assignor's failure to appear personally or through counsel at such hearing will result in the SIPA Trustee's determination with respect to Assignor's claim being confirmed by the Court and binding on Assignor.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
      MAUREEN A. EBEL

Sworn and subscribed before me this
_____ day of _____, 2009.

_____
      Notary Public

300012006                                  3

# EXHIBIT K

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

July 16, 2009

Roger M Peskin and Diane Peskin J/T WROS
51 East Wall Street
Bethlehem, Pennsylvania  18018

Dear Mr. and Mrs. Peskin:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claims on BLMIS Account No. 1CM948 designated as Claim Numbers 3301 and 12,843 and combined for purposes of this Determination:

Your claim for securities is **DENIED**.  No securities were ever purchased for your account.

Your claim is **ALLOWED** for $2,310,191.25, which is the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals, as outlined in Table 1.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

| - TABLE 1 - | |
|---|---|
| **DEPOSITS** | |
| **DATE** | **AMOUNT** |
| 10/18/2005 | $2,586,412.99 |
| 11/9/2005 | $2,782.84 |
| 5/5/2008 | $181,729.44 |
| 11/13/2008 | $470,265.98 |
| Total deposits: | $3,241,191.25 |
| | |
| **WITHDRAWALS** | |
| **DATE** | **AMOUNT** |
| 1/3/2006 | $33,000.00 |
| 4/3/2006 | $33,000.00 |
| 7/3/2006 | $33,000.00 |
| 8/31/2006 | $40,000.00 |
| 10/2/2006 | $33,000.00 |
| 12/27/2006 | $20,000.00 |
| 1/2/2007 | $33,000.00 |
| 4/2/2007 | $33,000.00 |
| 7/2/2007 | $33,000.00 |
| 8/16/2007 | $40,000.00 |
| 10/1/2007 | $33,000.00 |
| 10/15/2007 | $150,000.00 |
| 1/2/2008 | $33,000.00 |
| 4/1/2008 | $33,000.00 |
| 4/2/2008 | $130,000.00 |
| 5/23/2008 | $25,000.00 |
| 7/1/2008 | $33,000.00 |
| 8/12/2008 | $50,000.00 |
| 9/17/2008 | $50,000.00 |
| 10/1/2008 | $33,000.00 |
| 11/6/2008 | $30,000.00 |
| Total withdrawals: | $931,000.00 |
| **Total deposits less withdrawals:** | **$2,310,191.25** |

Your **ALLOWED CLAIM** of $2,310,191.25 will be satisfied in the following manner:

The enclosed **PARTIAL ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL ASSIGNMENT AND RELEASE**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $500,000.00, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. The remainder of your claim - $1,810,191.25 - will remain as a claim against the fund of customer property.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, Rosenman Family, LLC v. Picard, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. In re Adler Coleman Clearing Corp. (Adler Coleman II), 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); see also 15 U.S.C. § 78*lll*(4). Accordingly, Customers, as defined by SIPA § 78*lll*(2), enjoy a preferred status and are afforded special protections under SIPA. See New Times Securities, 463 F.3d at 127; Adler Coleman, 195 B.R. at 269."

Id. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after July 16, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:**  You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:     Helen Davis Chaitman
        Phillips Nizer LLP
        666 Fifth Avenue
        28th Floor
        New York, NY 10103-0084

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION
CORPORATION,

             Plaintiff-Applicant,

             v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

             Defendant.

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

## PARTIAL ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that Roger M Peskin and Diane Peskin

J/T WROS, located at 51 East Wall Street, Bethlehem, Pennsylvania 18018 (hereinafter referred

to as the "Assignor") in consideration of the payment of $500,000.00 to satisfy in part their

claims for customer protection (together, the "Customer Claim", having been designated Claims

#3301 and #12,843) filed in the liquidation proceeding of Bernard L. Madoff Investment

Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et

seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), do for themselves

hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for

the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection

Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the

satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all

rights, including causes of action or claims, that Assignor now may have against BLMIS and/or

any third party arising out of or relating to any fraudulent or illegal activity with respect to

Assignor's BLMIS account (Account No. 1CM948, the "BLMIS Account"), which gave rise to

the allowed Customer Claim for securities filed by Assignor against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $500,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated July 16, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and

all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Partial Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having its customer claim re-determined in accordance with any such Court order.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Partial Assignment and Release.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
        ROGER M PESKIN

By:_____
        DIANE PESKIN

Sworn and subscribed before me this
_____ day of _____, 2009.

_____
        Notary Public

# EXHIBIT L

# PHILLIPS NIZER LLP

666 Fifth Avenue
New York, NY 10103-0084
212.977.9700
Fax 212.262.5152

600 Old Country Road
Garden City, NY 11530-2011
516.229.9400
Fax 516.228.9612

**Helen Davis Chaitman\***
212.841.1320
201.646.1664
hchaitman@phillipsnizer.com
*Admitted in New York and New Jersey

Court Plaza North
25 Main Street
Hackensack, NJ 07601-7015
201.487.3700
Fax 201.646.1764

www.phillipsnizer.com

July 21, 2009

**By Email & Regular Mail**

Irving H. Picard, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

      **Re:    Diane & Roger Peskin**

Dear Mr. Picard:

By letter dated June 26, 2009, your counsel David Sheehan acknowledged that Diane and Roger Peskin are entitled to $500,000 in SIPC insurance. By letter dated July 16, 2009, you sent me a determination letter with respect to the account of Diane and Roger Peskin. The form of the partial assignment and release that you enclosed with that letter is acceptable with one exception: Each of the Peskins is a "customer" entitled to $500,000 of SIPC insurance because both Diane and Roger Peskin deposited money with the debtor for the purpose of purchasing securities. 15 U.S.C. Section 78(lll)(2). Hence, I would like to add to the end of the partial assignment and release, above the signatures, the following:

> Notwithstanding any other provision of this document, the Peskins
> do not release their claim against SIPC for an additional $500,000
> in SIPC insurance in view of their contention that each of them is a
> "customer" who deposited funds with the debtor for the purpose of
> purchasing securities. By signing this document, the Peskins
> expressly reserve their right to litigate this claim.

As you know, the Peskins are "hardship" cases and, under the rules that you have established, they are entitled to preserve their claims while still receiving SIPC insurance in the amount you have acknowledged they are entitled to receive. Please be good enough to send me a

1086603.1

**PHILLIPS NIZER**LLP

Irving H. Picard, Esq.
July 21, 2009
Page 2


revised partial assignment and release including this language so that the Peskins can receive the
$500,000 from SIPC which you have acknowledged they are owed.


Yours sincerely

Helen Davis Chaitman

HDC:leb

cc:    Diane and Roger Peskin


1086603.1

# EXHIBIT M

Helen Davis Chaitman (4266)
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084
(212) 841-1320
hchaitman@phillipsnizer.com
*Attorneys for Diane and Roger Peskin and*
*Maureen Ebel, with the support of more than*
*100 other customers*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff,

        v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                  Defendant.

In re:

BERNARD L. MADOFF,

                  Debtor.

Adv. Pro. No. 08-01789 (BRL)

SIPA LIQUIDATION

(Substantively Consolidated)

**DECLARATION OF MAUREEN EBEL IN SUPPORT OF OBJECTION TO FIRST**
**APPLICATION OF IRVING H. PICARD, TRUSTEE, AND BAKER & HOSTETLER**
**LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES**
**RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM**
**DECEMBER 15, 2008 THROUGH APRIL 30, 2009**

    I, Maureen Ebel, hereby declare, under penalty of perjury pursuant to 28 U.S.C. §1746,

as follows:

    1.    I submit this declaration in support of the objection to the application for fees

filed by Irving H. Picard, Trustee, and his counsel, Baker & Hostetler LLP ("B&H") filed by

myself, Diane Peskin and Roger Peskin, with the support of over 100 other customers of Bernard

L. Madoff Investment Securities, LLC ("Madoff"). I have personal knowledge of the facts and circumstances stated herein.

2.    My husband, Dr. Marc Ebel, died as a result of medical malpractice in 2000 at the age of 53. At the time of his death, we had been married 27 years.

3.    I had been a nurse but stopped working in 1989.

4.    In 2003, a relative of mine recommended that I invest all of my funds with Bernard L. Madoff Investment Securities LLC ("Madoff"). The relative told me that Madoff had been in existence for more than 25 years; that he had been approved by the SEC; and that he had a very conservative investment strategy.

5.    I opened two accounts with Madoff. The first account was a direct IRA account in which I invested $1,348,877.12 on February 24, 2003. I never withdrew any funds from this account and it had a balance on November 30, 2008 of $2,532,140.66.

6.    I also opened a direct investment account with Madoff in which I invested a total of $3,831,387.49 beginning on March 17, 2003 and ending on July 23, 2004. The balance in this account as of November 30, 2008 was $4,729,125.04.

7.    With respect to each account, every month I received from Madoff trade confirmations indicating the purchase and sale of Fortune 100 company stocks; the purchase and sale of Treasury securities; and the purchase and sale of options to hedge the securities positions. In addition, I received monthly account statements showing the securities positions.

8.    In each instance, the trade confirmations and account statements reflected the purchase and sale of securities of Fortune 100 companies at prices consistent with those reported in the media.

9.      I withdrew funds from my direct investment account on a regular basis and utilized the funds to provide support for myself and my family, to pay for the educational expenses of family members, and to fund charitable donations. This was my sole source of income.

10.     As part of my normal withdrawal of funds from my account, on September 15, 2008 I received a $102,000 check from Madoff dated September 11, 2008. I deposited the check in my account on September 15, 2008.

11.     After December 11, 2008, I was forced to go to work in order to support myself. I worked as a house maid; a caretaker for an elderly patient; a driver; at a cash register; and in a ladies' clothing store. In short, I did anything I could to earn money to pay my living expenses. I have also been forced to sell a car, jewelry, household items, and a condominium I had in Florida since 1984, at greatly depressed prices because I needed money to live on and had not promptly received my SIPC insurance.

12.     I filed my SIPC claim for both accounts on February 14, 2008.

13.     I heard nothing from the Trustee for several months. Finally, on May 20, 2009, I received a determination letter requiring that I acknowledge that my claim with respect to the IRA account was for only $1,348,877.12, the amount of my original investment.

14.     I was informed that it was a pre-condition to my receiving SIPC insurance on this account for me to acknowledge that I was not entitled to a claim for any appreciation in that account. Because I was financially desperate and I had no alternative but to accede to the Trustee's demand, I signed the required acknowledgments and, on June 6, 2009, I received a check from SIPC for $500,000 with respect to this account.

3

15.    Thereafter, I had several communications with an attorney from B&H who told me that, under the law, the Trustee was obligated to withhold $102,000 from my SIPC payment with respect to my direct investment account because the Trustee was entitled to deduct the $102,000 payment I received in September 2008.  I was also told that this money would simply reduce SIPC's obligations.  The money would not be used to pay other investors.

16.    I asked if I could accept the $398,000 check and yet reserve my right to claim the $102,000 that the Trustee was going to withhold.  I was told that I would not be able to do that and, if I wanted the check for $398,000, I would have to relinquish my claim to the $102,000.  I explained that I was uncertain whether I should waive my claim to the $102,000.

17.    My attorney has since informed me that the Bankruptcy Code was not intended to enrich SIPC at the expense of a customer.

18.    On May 29, 2009, I received another phone call from the attorney for Picard with whom I had been speaking.  He told me that there had been a change in strategy by the Trustee and that I would not have to relinquish my claim to the $102,000 if I accepted the $398,000.  I was told that I would be sent a revised determination letter and accompanying documents.

19.    I received a determination letter dated June 9, 2009 which stated that, because I qualified for the "Hardship Program," I would receive the undisputed portion of my claim, $398,000.  The "Hardship Program" was a program instituted by the Trustee which I applied for, although the application process was very invasive and embarrassing, as it requested minute details about my finances.  Also, despite the Hardship Program's promise to "expedite" payment, I still have not received my check.

20.    The June 9, 2009 letter required me to sign a partial release and assignment in order to receive the $398,000 which the Trustee admits is due and owing to me.

4

1087488.1

21.     The securities positions shown on my November 30, 2008 statement in my IRA

account is $2,532,140.66, and the amount of the securities positions shown on my November 30,

2008 statement in my direct investment account is $4,729,125.04.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 3, 2009


                                                  /s/ Maureen Ebel

1087488.1

# EXHIBIT N

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

May 20, 2009

Maureen A. Ebel (IRA)
506 Hansen Dr.
West Chester, PA 19380

Dear Ms. Ebel:

## PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZR318 designated as Claim Number 008831:

Your claim for a credit balance of $2,532,140.66 and for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $1,348,877.12, which is the amount of money you deposited with BLMIS, on 2/24/2003 for the purchase of securities.

Your **ALLOWED CLAIM** of $1,348,877.12 will be satisfied in the following manner:

---

1 Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300011937

The enclosed **PARTIAL ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. You also should provide the name of the custodian for your IRA. Upon receipt of the executed and notarized **PARTIAL ASSIGNMENT AND RELEASE**, and designation of your IRA custodian the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $500,000.00, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. The remainder of your claim - $848,877.12 – will remain as a claim against the fund of customer property.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, Rosenman Family, LLC v. Picard, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009) , the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. In re Adler Coleman Clearing Corp. (Adler Coleman II), 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); see also 15 U.S.C. § 78*lll*(4). Accordingly, Customers, as defined by SIPA § 78*lll*(2), enjoy a preferred status and are afforded special protections under SIPA. See New Times Securities, 463 F.3d at 127; Adler Coleman, 195 B.R. at 269."

Id. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after May 20, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  Ernest E. Badway
     Fox Rothschild LLP
     75 Eisenhower Parkway
     Roseland, NJ 07068

300011963

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789-BRL |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## PARTIAL ASSIGNMENT AND RELEASE

KNOW ALL MEN BY THESE PRESENTS, that Maureen A. Ebel, located at 506 Hansen Dr., West Chester, PA 19380 (hereinafter referred to as the "Assignor") in consideration of the payment of $398,000.00 to satisfy in part her claim for customer protection (the "Customer Claim", having been designated Claim #002582) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for herself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1ZB463, the "BLMIS Account"), which gave rise to the allowed Customer Claim for securities filed by Assignor

against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $500,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated May 20, 2009 (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter

300011939

2

may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Partial Assignment and Release.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
　　　MAUREEN A. EBEL


Sworn and subscribed before me this
_____ day of _____, 2009.


_____
　　Notary Public

# EXHIBIT O

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

June 9, 2009

Maureen A. Ebel
506 Hansen Dr.
West Chester, PA  19380

Dear Ms. Ebel:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZB463 designated as Claim Number 002582:

Your claim for a credit balance of $2,460,387.49 and for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $2,290,387.49, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less withdrawals as listed in the following table:

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

| DEPOSITS | |
|---|---|
| 3/17/2003 | $1,171,347.49 |
| 4/10/2003 | $550,000.00 |
| 6/19/2003 | $100,000.00 |
| 6/30/2003 | $25,000.00 |
| 7/25/2003 | $62,000.00 |
| 11/24/2003 | $500,000.00 |
| 1/27/2004 | $1,223,040.00 |
| 7/23/2004 | $200,000.00 |
| Total deposits: | $3,831,387.49 |
| WITHDRAWALS | |
| 1/2/04 | $42,000.00 |
| 9/22/2004 | $100,000.00 |
| 12/23/2004 | $85,000.00 |
| 3/22/2005 | $110,000.00 |
| 8/25/2005 | $130,000.00 |
| 1/4/2006 | $110,000.00 |
| 4/7/2006 | $60,000.00 |
| 6/9/2006 | $45,000.00 |
| 9/5/2006 | $140,000.00 |
| 1/3/2007 | $35,000.00 |
| 1/12/2007 | $35,000.00 |
| 3/27/2007 | $135,000.00 |
| 6/1/2007 | $40,000.00 |
| 7/31/2007 | $175,000.00 |
| 12/31/2007 | $75,000.00 |
| 4/2/2008 | $37,000.00 |
| 6/5/2008 | $85,000.00 |
| 9/16/2008 | $102,000.00 |
| Total withdrawals: | $ 1,541,000.00 |
| **Total deposits less withdrawals:** | $2,290,387.49 |

As discussed with my legal counsel, James W. May, on June 4, 2009, the last withdrawal from your BLMIS Account was made within 90 days of the Filing Date and is therefore a preferential transfer which is recoverable by the Trustee under 11 U.S.C. §§547(b) and 550(a). To facilitate the prompt partial satisfaction of your allowed claim, the Trustee has proposed to deduct the preferential payment of $102,000.00 from his initial payment to you.

You have disputed this treatment of the preferential payment. Pursuant to the terms of the Hardship Program instituted by the Trustee, the Trustee is willing to pay the undisputed portion of claims (up to the limit of available SIPC protection) to claimants that qualify for the Hardship Program, but have disputed the Trustee's proposed treatment of their claims. Because you have qualified for the Hardship Program and because you have disputed the treatment of the preferential

300011963

payment you received, the Trustee is willing to make an initial payment to you of $398,000.00 which is your available SIPC protection of $500,000.00 minus the amount of the preferential payment of $102,000.00. This is not a set off, rather, you and the Trustee reserve all rights regarding the disputed portion of your claim (including the disputed portion of you SIPC protection). Your rights to the remainder of the SIPC protection available to you and the Trustee's rights to seek recovery of the preferential payment you received will be determined at a later date either by settlement between you and the Trustee or by court order.

The enclosed **PARTIAL RELEASE AND ASSIGNMENT** relating to the undisputed portion of the Trustee's initial payment to you must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL RELEASE AND ASSIGNMENT**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $398,000.00 advanced by the Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. The remainder of your SIPC protection will be held by the Trustee pending resolution of the dispute over the preferential payment that you received. By executing the Partial Assignment and Release, you will not be waiving any rights to seek the full payment of the SIPC protection potentially available to you.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, Rosenman Family, LLC v. Picard, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. In re Adler Coleman Clearing Corp. (Adler Coleman II), 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); see also 15 U.S.C. § 78*lll*(4). Accordingly, Customers, as defined by SIPA § 78*lll*(2), enjoy a preferred status and are afforded special protections under SIPA. See New Times Securities, 463 F.3d at 127; Adler Coleman, 195 B.R. at 269."

Id. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after June 9, 2009, the date on which the Trustee mailed this notice.

300011963

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee at a time and date determined by the Trustee, in his sole discretion. You will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you and the Trustee are not able to agree upon the portion of your SIPC protection that has been withheld due to the preferential payment you received, the Trustee will obtain a hearing date for this controversy at a time and date determined by the Trustee, in his sole discretion. You will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

300011963

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789-BRL |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. |  |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, |  |
| Defendant. |  |

## PARTIAL ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that Maureen A. Ebel, located at 506

Hansen Dr., West Chester, PA 19380 (hereinafter referred to as the "Assignor") in consideration

of the payment of $398,000.00 to satisfy in part her claim for customer protection (the

"Customer Claim", having been designated Claim #002582) filed in the liquidation proceeding

of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-

3(a)(1) of SIPA), does for herself hereby assign, transfer and set over to Irving H. Picard as SIPA

Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the

Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash

advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see

§78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor

now may have against BLMIS and/or any third party arising out of or relating to any fraudulent

or illegal activity with respect to Assignor's BLMIS account (Account No. 1ZB463, the "BLMIS

Account"), which gave rise to the allowed Customer Claim for securities filed by Assignor

300012006

against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $398,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated June 9, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter

may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

If Assignor and the SIPA Trustee are not able to agree upon the portion of Assignor's SIPC protection that has been withheld due to the preferential payment received by Assignor, the SIPA Trustee will obtain a hearing date for this controversy at a time and date determined by the SIPA Trustee, in his sole discretion. Assignor will be notified of that hearing date. Assignor's failure to appear personally or through counsel at such hearing will result in the SIPA Trustee's determination with respect to Assignor's claim being confirmed by the Court and binding on Assignor.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
MAUREEN A. EBEL


Sworn and subscribed before me this
_____ day of _____, 2009.


_____
Notary Public

# EXHIBIT P

# PHILLIPS NIZER LLP

666 Fifth Avenue
New York, NY 10103-0084
212.977.9700
Fax 212.262.5152

600 Old Country Road
Garden City, NY 11530-2011
516.229.9400
Fax 516.228.9612

**Helen Davis Chaitman***
212.841.1320
201.646.1664
hchaitman@phillipsnizer.com
*Admitted in New York and New Jersey

Court Plaza North
25 Main Street
Hackensack, NJ 07601-7015
201.487.3700
Fax 201.646.1764

June 16, 2009

www.phillipsnizer.com

**VIA EMAIL: ipicard@bakerlaw.com
& Regular Mail**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment
 Securities, LLC
Baker & Hostetler, LLP
45 Rockefeller Plaza, 11th Floor
New York, NY 10111

Dear Mr. Picard:

    I am writing in response to the June 9, 2009 determination letter that you sent to Maureen A. Ebel, which she received on June, 11, 2009, concerning her account No. 1ZB463 (the "Account").

    The November 30, 2008 balance in the Account was $4,729,125.04. This is the amount in which we believe her claim should be allowed, as set forth in the June 10, 2009 complaint we filed on Mrs. Ebel's behalf. We appreciate the fact that you have offered to pay her $398,000 representing a portion of her claim for SIPC insurance, with her reserving her right to the additional $102,000, again as set forth in her complaint. We accept this offer, provided that you also agree that, in the event your definition of "net equity" is ultimately rejected by the courts, Mrs. Ebel's claim will be recognized for the full amount of $4,729,125.04.

    Please let me know if these terms are acceptable to you. If they are, I would suggest a similar resolution of the SIPC claim of Diane and Roger Peskin.

Yours sincerely,

Helen Davis Chaitman

Helen Davis Chaitman

HDC:leb

cc:  Maureen A. Ebel
     Dian and Roger Peskin

1083311.1

# EXHIBIT Q

Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

June 23, 2009

David J. Sheehan
direct dial: 212.589.4616
dsheehan@bakerlaw.com

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Helen Davis Chaitman, Esq.
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084

   Re:   *Maureen A. Ebel, BLMIS Account No. 1ZB463*

Dear Ms. Chaitman:

   I am in receipt of your letter to Mr. Picard ("Trustee") dated June 16, 2009 regarding the determination of Maureen A. Ebel's customer claim. In the Trustee's determination letter of June 9, 2009, the Trustee offered to pay Ms. Ebel $398,000, advanced by SIPC pursuant to 15 U.S.C. § 78fff-3(a)(1), an amount that reflects an offset of the $102,000 preferential payment received by Ms. Ebel within 90 days of the filing date.

   As you are aware, the Securities Investor Protection Corporation ("SIPC"), the Trustee, and his counsel evaluated two approaches for the satisfaction of customer claims. The first approach was to allow customer claims based on the customer statements as of the filing date. The second approach is to credit the customer with the money that he deposited at BLMIS, less any amounts already withdrawn by that customer (the "money in/money out approach"). After careful analysis, we have decided to utilize the latter approach in the satisfaction of customer claims in this proceeding.

   Several individuals, including you and your clients, have disputed the propriety of the money in/money out approach. This issue will be determined by the Court in due course. Should a final order overrule the use of the money in/money out approach, we will be bound by that order and will apply it retroactively to all previously determined allowed customer claims. Thus, any future rulings regarding the satisfaction of customer claims will apply to all customers, whether or not their individual claim has been determined at that time.

   In your letter of June 16th, you indicated that Ms. Ebel will accept the offer set forth in the determination letter, provided the Trustee agree that Ms. Ebel's claim will be recognized in the amount showing on her November 30, 2008 customer account

Helen Davis Chaitman, Esq.
June 23, 2009
Page 2

statement. As stated above, we will be bound by the final order regarding this issue and will determine and, as appropriate, redetermine all customer claims in accordance with any such ruling. Thus, all of Ms. Ebel's rights will be reserved until such time.

Your letter further proposes a similar resolution of the customer claim of Diane and Roger Peskin. We agree that all of their rights will also be reserved until such time as the issue is decided by a final order.

In light of the foregoing, I request that you withdraw the complaint filed on behalf of Ms. Ebel, and Diane and Roger Peskin.

Sincerely,

David J. Sheehan

djs/srb

# EXHIBIT R

# PHILLIPS NIZER LLP

666 Fifth Avenue
New York, NY 10103-0084
212.977.9700
Fax 212.262.5152

600 Old Country Road
Garden City, NY 11530-2011
516.229.9400
Fax 516.228.9612

**Helen Davis Chaitman***
212.841.1320
201.646.1664
hchaitman@phillipsnizer.com
*Admitted in New York and New Jersey

Court Plaza North
25 Main Street
Hackensack, NJ 07601-7015
201.487.3700
Fax 201.646.1764

www.phillipsnizer.com

June 23, 2009

**By email: dsheehan@bakerlaw.com**

David J. Sheehan, Esq.
Baker & Hostetler, LLP
45 Rockefeller Plaza, 11th Floor
New York, NY 10111

Dear Mr. Sheehan:

I write in response to your letter of today's date. I am pleased that you have agreed that any court decision requiring you to recognize the November 30, 2008 balance in a customer's account, and to pay SIPC insurance based upon that balance, will be applied retroactively by you to all customers, even those who have signed Partial Assignment and Release documents as a condition of receiving their SIPC payments.

However, I am not clear what you are offering with respect to the claims of Maureen Ebel and Diane and Roger Peskin. As you know, we contend that Ms. Ebel and the Peskins are immediately entitled to $500,000 in SIPC insurance. With respect to Ms. Ebel, I understand that you have agreed to pay her the undisputed portion of her claim, or $398,000. If this is correct, I would appreciate your immediately sending her a check for this amount. As I explained she will be reserving her claim for the remaining $102,000.

The Peskins are similarly entitled to the undisputed portion of their claim. Frankly, I cannot conceive of a legally cognizable basis for you to dispute the Peskins' entitlement to the full $500,000 and I again request that you immediately send them a check for this amount.

Until the claims of Ms. Ebel and the Peskins are fully resolved, I cannot possibly withdraw their complaint.

Yours sincerely,

Helen Davis Chaitman

HDC:leb

1083969.1

# EXHIBIT S

Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

June 26, 2009

David J. Sheehan
direct dial: 212.589.4616
dsheehan@bakerlaw.com

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Helen Davis Chaitman
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084

Re:     Maureen A. Ebel, BLMIS Account No. 1ZB463

Dear Ms. Chaitman:

I am in receipt of your letter dated June 23, 2009, written in response to my letter of that same date.  I write to clarify a few outstanding issues with respect to the customer claims of Ms. Ebel and the Peskins.

Ms. Ebel's customer claim was determined by the Trustee and, on June 9th, was sent a determination letter and a Partial Assignment and Release, a copy of which is enclosed herewith for your convenience.  You have indicated that Ms. Ebel wishes to reserve her right to dispute the Trustee's netting of the $102,000 preferential payment Ms. Ebel received against the $500,000 SIPC advance.  This objection has already been preserved in the Partial Assignment and Release.  Thus, once the Partial Assignment and Release is executed by Ms. Ebel and returned to the Trustee, the Trustee will promptly pay Ms. Ebel $398,000 to which she is entitled, without prejudice to her rights to the disputed portion of the SIPC advance.

With regard to the Peskins, as they were advised by the Trustee's counsel, we can confirm that they received no preferential payment in the 90 days preceding the filing date of this action.  Thus, we will promptly determine their customer claim for the full amount.  Upon their receipt of the Trustee's determination letter, please have them execute the Partial Assignment and Release and return it to the Trustee.  Once they have done so, the Trustee will promptly send them $500,000 advanced by SIPC.

Cincinnati    Cleveland    Columbus    Costa Mesa    Denver    Houston    Los Angeles    New York    Orlando    Washington, DC

Helen Davis Chaitman
June 26, 2009
Page 2

Based on the foregoing, please confirm that upon receipt of payment to Ms. Ebel and the Peskins, you will withdraw the complaint filed on their behalf.

Sincerely,

David J. Sheehan

DJS/srb

Enclosure

cc:     Irving H. Picard

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008₁

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

June 9, 2009

Maureen A. Ebel
506 Hansen Dr.
West Chester, PA  19380

Dear Ms. Ebel:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZB463 designated as Claim Number 002582:

Your claim for a credit balance of $2,460,387.49 and for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $2,290,387.49, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less withdrawals as listed in the following table:

---

1 Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

| DEPOSITS | |
|---|---|
| 3/17/2003 | $1,171,347.49 |
| 4/10/2003 | $550,000.00 |
| 6/19/2003 | $100,000.00 |
| 6/30/2003 | $25,000.00 |
| 7/25/2003 | $62,000.00 |
| 11/24/2003 | $500,000.00 |
| 1/27/2004 | $1,223,040.00 |
| 7/23/2004 | $200,000.00 |
| Total deposits: | $3,831,387.49 |
| WITHDRAWALS | |
| 1/2/04 | $42,000.00 |
| 9/22/2004 | $100,000.00 |
| 12/23/2004 | $85,000.00 |
| 3/22/2005 | $110,000.00 |
| 8/25/2005 | $130,000.00 |
| 1/4/2006 | $110,000.00 |
| 4/7/2006 | $60,000.00 |
| 6/9/2006 | $45,000.00 |
| 9/5/2006 | $140,000.00 |
| 1/3/2007 | $35,000.00 |
| 1/12/2007 | $35,000.00 |
| 3/27/2007 | $135,000.00 |
| 6/1/2007 | $40,000.00 |
| 7/31/2007 | $175,000.00 |
| 12/31/2007 | $75,000.00 |
| 4/2/2008 | $37,000.00 |
| 6/5/2008 | $85,000.00 |
| 9/16/2008 | $102,000.00 |
| Total withdrawals: | $ 1,541,000.00 |
| **Total deposits less withdrawals:** | **$2,290,387.49** |

As discussed with my legal counsel, James W. May, on June 4, 2009, the last withdrawal from your BLMIS Account was made within 90 days of the Filing Date and is therefore a preferential transfer which is recoverable by the Trustee under 11 U.S.C. §§547(b) and 550(a). To facilitate the prompt partial satisfaction of your allowed claim, the Trustee has proposed to deduct the preferential payment of $102,000.00 from his initial payment to you.

You have disputed this treatment of the preferential payment. Pursuant to the terms of the Hardship Program instituted by the Trustee, the Trustee is willing to pay the undisputed portion of claims (up to the limit of available SIPC protection) to claimants that qualify for the Hardship Program, but have disputed the Trustee's proposed treatment of their claims. Because you have qualified for the Hardship Program and because you have disputed the treatment of the preferential

payment you received, the Trustee is willing to make an initial payment to you of $398,000.00 which is your available SIPC protection of $500,000.00 minus the amount of the preferential payment of $102,000.00. This is not a set off, rather, you and the Trustee reserve all rights regarding the disputed portion of your claim (including the disputed portion of you SIPC protection). Your rights to the remainder of the SIPC protection available to you and the Trustee's rights to seek recovery of the preferential payment you received will be determined at a later date either by settlement between you and the Trustee or by court order.

The enclosed **PARTIAL RELEASE AND ASSIGNMENT** relating to the undisputed portion of the Trustee's initial payment to you must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL RELEASE AND ASSIGNMENT**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $398,000.00 advanced by the Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. The remainder of your SIPC protection will be held by the Trustee pending resolution of the dispute over the preferential payment that you received. By executing the Partial Assignment and Release, you will not be waiving any rights to seek the full payment of the SIPC protection potentially available to you.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, Rosenman Family, LLC v. Picard, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. In re Adler Coleman Clearing Corp. (Adler Coleman II), 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); see also 15 U.S.C. § 78*lll*(4). Accordingly, Customers, as defined by SIPA § 78*lll*(2), enjoy a preferred status and are afforded special protections under SIPA. See New Times Securities, 463 F.3d at 127; Adler Coleman, 195 B.R. at 269."

Id. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after June 9, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee at a time and date determined by the Trustee, in his sole discretion. You will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you and the Trustee are not able to agree upon the portion of your SIPC protection that has been withheld due to the preferential payment you received, the Trustee will obtain a hearing date for this controversy at a time and date determined by the Trustee, in his sole discretion. You will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

300011963

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

           Plaintiff-Applicant,

           v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

           Defendant.

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

## PARTIAL ASSIGNMENT AND RELEASE

    **KNOW ALL MEN BY THESE PRESENTS,** that Maureen A. Ebel, located at 506

Hansen Dr., West Chester, PA 19380 (hereinafter referred to as the "Assignor") in consideration

of the payment of $398,000.00 to satisfy in part her claim for customer protection (the

"Customer Claim", having been designated Claim #002582) filed in the liquidation proceeding

of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-

3(a)(1) of SIPA), does for herself hereby assign, transfer and set over to Irving H. Picard as SIPA

Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the

Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash

advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see

§78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor

now may have against BLMIS and/or any third party arising out of or relating to any fraudulent

or illegal activity with respect to Assignor's BLMIS account (Account No. 1ZB463, the "BLMIS

Account"), which gave rise to the allowed Customer Claim for securities filed by Assignor

300012006

against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $398,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated June 9, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter

may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

If Assignor and the SIPA Trustee are not able to agree upon the portion of Assignor's SIPC protection that has been withheld due to the preferential payment received by Assignor, the SIPA Trustee will obtain a hearing date for this controversy at a time and date determined by the SIPA Trustee, in his sole discretion. Assignor will be notified of that hearing date. Assignor's failure to appear personally or through counsel at such hearing will result in the SIPA Trustee's determination with respect to Assignor's claim being confirmed by the Court and binding on Assignor.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____

MAUREEN A. EBEL

Sworn and subscribed before me this
_____ day of _____, 2009.

_____
Notary Public

# EXHIBIT T

# PHILLIPS NIZER LLP

666 Fifth Avenue
New York, NY 10103-0084
212.977.9700
Fax 212.262.5152

600 Old Country Road
Garden City, NY 11530-2011
516.229.9400
Fax 516.228.9612

Court Plaza North
25 Main Street
Hackensack, NJ 07601-7015
201.487.3700
Fax 201.646.1764

www.phillipsnizer.com

**Helen Davis Chaitman***
212.841.1320
201.646.1664
hchaitman@phillipsnizer.com
*Admitted in New York and New Jersey

June 29, 2009

**By email: dsheehan@bakerlaw.com**

David J. Sheehan, Esq.
Baker & Hostetler, LLP
45 Rockefeller Plaza, 11th Floor
New York, NY 10111

Dear Mr. Sheehan:

I acknowledge receipt of your letter dated June 26, 2009 with respect to the claims of the Diane and Roger Peskin and Maureen Ebel.

With respect to the Peskins, I am pleased that you have acknowledged that the Trustee has no right to reduce their SIPC insurance by the $113,000 that they withdrew within 90 days of the filing. The Trustee could have saved the Peskins a lot of heartache if he had realized earlier that he had no basis to withhold the full $500,000 from them. I hope that you will promptly send me a determination letter for them so that their payment will not be further delayed. Any such delay will only increase the damages they have suffered already as a result of their inability to obtain the $500,000 to which they are indisputably entitled and which should have been paid to them "promptly" after the filing.

With respect to Mrs. Ebel, I would urge you to send her a check for $398,000 as soon as possible in order to mitigate her damages from the delay in payment to her. However, she cannot sign the Partial Assignment and Release you sent me for the following reasons:

1. We contend that Mrs. Ebel is entitled to a claim for securities in the amount of the balance on her November 30, 2008 statement. The Partial Assignment and Release would have to be revised to state that, in the event that a court determines that the Trustee is bound by SIPA's definition of "net equity" and by the Second Circuit's decision in the *New Times* case, in that event, Mrs. Ebel's claim will be determined as the balance on her November 30, 2008 statement.

2. I know of no statutory authority for conditioning payment of SIPC insurance on a general release of the Trustee and SIPC. Obviously, SIPC's check will be evidence of the date and amount of its partial payment to Mrs. Ebel. As you know, Mrs. Ebel has asserted substantial claims against the Trustee and she cannot possibly release those claims as a condition to obtaining a portion of the SIPC insurance to which she is statutorily entitled.

PHILLIPS NIZER LLP

David J. Sheehan, Esq.
June 29, 2009
Page 2

     3. The Partial Assignment and Release you propose requires Mrs. Ebel to leave in the Trustee's control the timing of the judicial determination of her claim for the remaining $102,000. This is something to which we cannot possibly agree. Indeed, she would be breaching her duty to mitigate damages if she agreed to such a provision.

     Please let me know by Wednesday, July 1, 2009, whether the Trustee will agree to revise the Partial Assignment and Release to remove these objectionable terms. The Trustee has a duty to mitigate the damages being suffered by my clients and I hope he will quickly pay them their SIPC insurance without causing them further delay and damages and without insisting on conditions which are unfair and unreasonable.

               Yours sincerely,

               Helen Davis Chaitman

HDC:leb

cc:   Maureen Ebel
       Diane and Roger Peskin

# EXHIBIT U

# Baker Hostetler

Baker & Hostetler LLP

3200 National City Center
1900 East 9th Street
Cleveland, OH 44114-3485

T  216.621.0200
F  216.696.0740
www.bakerlaw.com

July 22, 2009

Kurt Andrew Leeper
direct dial: 216.861.7014
kleeper@bakerlaw.com

Helen Davis Chaitman
Phillips Nizer LLP
666 Fifth Avenue
New York, New York  10103-0084

Re:    *Diane & Roger Peskin*

Dear Helen:

Irving Picard referred your letter regarding Diane and Roger Peskin of July 21, 2009 to
me.  I have attached a revised partial assignment and release that includes language
that we are now including in such documents to address the issue you raised.  Please
have the Peskins sign this document and return it to my attention at your earliest
convenience.

Sincerely,

Kurt A. Leeper

cc:    Irving Picard

Cincinnati    Cleveland    Columbus    Costa Mesa    Denver    Houston    Los Angeles    New York    Orlando    Washington, DC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff-Applicant,

        v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

---

## PARTIAL ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that Roger M Peskin and Diane Peskin

J/T WROS, located at 51 East Wall Street, Bethlehem, Pennsylvania 18018 (hereinafter referred

to as the "Assignor") in consideration of the payment of $500,000.00 to satisfy in part their

claims for customer protection (together, the "Customer Claim", having been designated Claims

#3301 and #12,843) filed in the liquidation proceeding of Bernard L. Madoff Investment

Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et

seq. ("SIPA") (see § §78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), do for themselves

hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for

the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection

Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the

satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all

rights, including causes of action or claims, that Assignor now may have against BLMIS and/or

any third party arising out of or relating to any fraudulent or illegal activity with respect to

Assignor's BLMIS account (Account No. 1CM948, the "BLMIS Account"), which gave rise to

the allowed Customer Claim for securities filed by Assignor against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $500,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated July 22, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and

all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Partial Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having its customer claim re-determined in accordance with any such Court order.

Should a final and unappealable court order determine that the Trustee is improperly limiting the payment of the $500,000 SIPC advance to one advance per BLMIS customer account, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's decision. Nothing in this Partial Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having its customer claim re-determined in accordance with any such Court order.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Partial Assignment and Release.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
    ROGER M PESKIN


By:_____
    DIANE PESKIN


Sworn and subscribed before me this
_____ day of _____, 2009.


_____
    Notary Public