# EXHIBIT O

Helen Davis Chaitman (4266)
Becker & Poliakoff LLP
45 Broadway
New York, NY 10006
hchaitman@becker-poliakoff.com
*Attorneys for Diane and Roger Peskin, and*
*several hundred other customers*

**Hearing Date: December 14, 2010**
**Hearing Time: 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

Plaintiff,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

Defendant.

In re:

BERNARD L. MADOFF,

Debtor.

Adv. Pro. No. 08-01789 (BRL)

SIPA LIQUIDATION

(Substantively Consolidated)

**OBJECTION TO FIFTH APPLICATIONS OF IRVING H. PICARD, TRUSTEE,
AND BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM
COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

Diane and Roger Peskin, and several hundred other customers of Bernard L. Madoff

Investment Securities, LLC ("Madoff") [1] ("Objectors"), by their attorneys, Becker & Poliakoff

LLP, object to the fifth applications for interim compensation of Irving H. Picard, Trustee, and

his counsel, Baker & Hostetler LLP ("B&H") (the "Fifth Fee Application") and incorporate

herein the objections they filed (through Phillips Nizer LLP and Becker & Poliakoff LLP) to the

---

[1] Becker & Poliakoff LLP files this objection on behalf of the hundreds of customers it represents in these
proceedings and for whom it has filed objections to the Trustee's determinations.

first, second, third and fourth applications for interim compensation of the Trustee and B&H.

This objection constitutes the Objectors' offer of proof and request that the Court schedule an

evidentiary hearing at which they can submit evidence substantiating the facts set forth herein.

1.    The Trustee was appointed by this Court at the request of the Securities Investor

Protection Corporation ("SIPC") in the proceeding instituted in the United States District Court

for the Southern District of New York on December 15, 2008 for the liquidation of Madoff under

the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA").

2.    In the Fifth Fee Application, the Trustee seeks allowance of fees of $684,659 for

the 122-day period from June 1, 2010, through September 30, 2010, and B&H seeks allowance

of fees of $38,522,476.35.  This works out to $5,705.49 in daily compensation (including

weekends and holidays) for the Trustee and $321,020.64 in daily compensation for B&H, again

including weekends and holidays.  Thus, together, the Trustee and B&H are seeking $326,726.13

in daily compensation, including weekends and holidays or $2,287,082.90 per week.  On an

annualized basis, this would be $119,255,036.69.  To summarize:

|        | Trustee | B&H | Total |
|--------|---------|-----|-------|
| Daily  | $5,705.49 | $321,020.64 | $326,726.13 |
| weekly | $39,938.44 | $2,247,144.45 | $2,287,082.90 |
| annual | $2,082,504.46 | $117,172,532.23 | $119,255,036.69 |

3.    In response to Objectors' objections to the reasonableness of the fees of the

Trustee and his counsel, this Court has repeatedly ruled that the Trustee and B&H do not have to

file their detailed billing reports, and the Court does not have to subject the Trustee and B&H to

the general standards of reasonableness imposed upon a bankruptcy trustee and his counsel,

based upon the representation of the Trustee and SIPC, pursuant to SIPA section 78eee(b)(5)(C),

that SIPC has no reasonable expectation of recoupment of its advances for administrative expenses.

4.     Whether that representation was true at the inception of this case, it cannot possibly be true today.  The total allowed claims in this case are less than $6 billion.  It is virtually inconceivable that the Trustee will not be able to fully reimburse SIPC for its advances.  Thus, this Court should not approve any further fees for the Trustee and his counsel absent full disclosure – from inception of this case – of the detailed billing reports of the Trustee and his counsel so that creditors and the Court can properly evaluate the efficiency and appropriateness of the work that has been performed, as well as to evaluate whether the Trustee and his counsel are disinterested given that SIPC has approved unreasonable compensation requests.

5.     The Trustee seeks to insulate his and his firm's compensation from scrutiny by invoking the false claim that SIPC will not be reimbursed.  The following statement contained in the Fifth Fee Application is patently incredible:

> As previously reported by the Trustee, in the Fourth Interim Report, based on the allocation process set forth in SIPA, the Trustee has determined that he has no reasonable expectation that the general estate will be sufficient to make any distribution to creditors or pay any administrative expenses.  That is, the Trustee believes that any assets allocated to the BLMIS general estate will be exhausted prior to his being able to reimburse SIPC fully.  The Trustee has been advised by SIPC that it concurs in this belief of the Trustee.

(Fifth Fee App. ¶ 150.)

6.     As of November 12, 2010, the Trustee has determined 14,769 customer claims, of which 2,291 were allowed, and he has committed to pay approximately $744 million in funds advanced to him by SIPC.  The allowed claims total approximately $5.7 billion.  (Fifth Fee App.

3

¶ 27 n. 5.)  Thus, the Trustee needs only $6 billion to pay all allowed claims in full and reimburse SIPC in full for its administrative expenses.

7.      Although, in a September 7, 2010, letter to Congressman Kanjorski, Chairman of the Subcommittee on Capital Markets, SIPC's President represented that there are approximately $17.3 billion in **potentially** allowable claims under the net-investment methodology, the Trustee has provided no indication that he intends to allow any claims in excess of the claims he has allowed to date.  (**Exhibit A**, 9/7/10 SIPC letter to Hon. Kanjorski and Hon. Garret (hereafter "the SIPC Letter") at 5, response #7.)

8.      Thus, it is reasonable to conclude that the Trustee can pay all claims in full and reimburse SIPC in full for its administrative expenses with $6 billion.  Given that the Trustee is already holding $1.5 billion and has filed lawsuits seeking to recover in excess of $37 billion, it is inconceivable that he will not be able to fully reimburse SIPC for its administrative expenses.

9.      The SIPC Letter stated that the Trustee had already filed 19 actions seeking recovery of approximately $15 billion; that the Trustee would file another 1,100 avoidance actions to recover approximately $6.8 billion; and that he is seeking to recover another $15 billion in 19 other avoidance actions.  (**Exhibit A**, at 5, response #6; see also Trustee's Fourth Interim Report for the Period Ending September 30, 2010 (the "Fourth Interim Report") ¶ 1 ("the Trustee has filed nineteen avoidance actions seeking to recover more than $15.5 billion in funds from various feeder funds, Madoff friends and family members and related parties").  The Trustee, in the past week, has sued UBS for $2 billion; JPMorgan Chase for $6.4 billion; and HSBC for $9 billion.  Thus, the Trustee has pending suits for over $37 billion.

10.      In addition, the Trustee claims that $1.5 billion has already been "recovered" (of which approximately $1 billion was sitting in bank accounts on the day the Trustee was

appointed).  (Fourth Interim Rpt. ¶ 1.)  Given these facts, SIPA § 78eee(b)(5)(C) is not

applicable.  The Court should scrutinize the fee applications of the Trustee and his counsel just

as any other fee application that comes before it.  As set forth below, there are serious issues as

to the efficiency and fairness of the fees that the Trustee and his counsel are charging in this

case.

11.     The Fifth Fee Application sets forth the compensation sought for the Trustee's

counsel for approximately 40 different tasks or matters.  Becker & Poliakff is directly adverse to

the Trustee in two such matters where the Trustee sought to enjoin lawsuits commenced in other

jurisdictions by Becker & Poliakoff's clients.  As to those two matters (summarized below), the

Trustee seeks total compensation of approximately $373,000 for 841 hours billed by B&H

during the relevant four-month time period.

| Task/Matter | Task/Matter Name | Hours | Amount |
|---|---|---|---|
| 22 | Fox & Marshall ("Fox") | 575 | $241,926.50 |
| 23 | Canavan ("Canavan") | 266 | 131,113.00 |
|  | **TOTAL** |  | **$373,039.50** |

(Fifth Fee App. Ex. E.)

12.     The Trustee's Fourth Interim Report includes a summary of the activity in the

Canavan case for which the Trustee seeks approximately $131,000 and for which his counsel

claims to have worked 266 hours:  "On May 26, 2010, the [Canavan] Plaintiffs filed a Cross-

Motion to Dismiss the Canavan Application.  On June 16, 2010, the Trustee filed his Reply

Memorandum in Further Support of the Canavan Application and in Opposition to [the] Cross-

Motion to Dismiss . . . . A hearing on the Canavan Application is scheduled to be held on

December 29, 2010."  (Fourth Interim Rpt. ¶ 159.)

5

13.     A copy of the Trustee's 16-page reply brief referenced above is attached hereto as **Exhibit B**.  Five B&H attorneys are listed as working on the brief.  Becker & Poliakoff filed a ten-page reply brief in further support of its cross-motion on June 23, 2010.  A copy of the ECF docket for the Canavan action is attached hereto as **Exhibit C**.  The only activity in the Canavan case after June 23, 2010, was that the Trustee filed three notices adjourning the hearing.  Accordingly, after the 16th day of the relevant compensation period, nothing happened in the case that would have required the Trustee to bill any significant time to this matter.  Yet, the Trustee seeks compensation for 266 hours.  During the same time period, Becker & Poliakoff attorneys billed approximately 30 hours on the Canavan matter.

14.     Essentially, the Trustee's counsel billed 266 hours for activity concentrated in the first 16 days of the compensation period (the Trustee filed his reply brief on June 16, 2010).  That works out to roughly 16 hours per day for 16 straight days to prepare a 16-page reply brief.  $131,000 or 266 hours for such a small amount of work is shocking and completely unjustified.

15.     The Trustee was also adverse to Becker & Poliakoff and co-counsel's clients in the Fox matter.  Like the Canavan matter, the Trustee sought, *inter alia*, to enjoin our client's actions pursuant to 11 USC Section 105.  Most of the legal issues in Canavan and Fox were the same.  Much of the briefing was identical from the Trustee's perspective.  The Trustee's counsel seeks approximately $242,000 in compensation representing 575 billable hours for filing a motion to strike an issue and certain record designations from appeal and attending a hearing.

16.     Specifically, in May 2010, our clients filed a notice of appeal from an adverse decision of this Court.  On June 9, 2010, the Trustee made a motion to strike an issue and portions of the record from our clients' appeal.  A copy of the Trustee's motion is attached hereto as **Exhibit D**.  The motion is six pages long and three B&H attorneys appear on the papers.  On

6

July 6, the appellants filed their opening briefs with the District Court. On July 23, 2010, the

Trustee filed an eight-page reply brief in further support of his motion to strike, a copy of which

is attached hereto as **Exhibit E**. Six attorneys appeared on the reply brief, including one "of

counsel" from Columbus, Ohio. On August 3, 2010, after several conference calls with the

District Court judge assigned to the appeal, this Court heard and granted the motion to strike,

which resulted in the appellants' withdrawing their original briefs and submitting new briefs that

include an appeal of the motion to strike. Our clients filed those briefs in October 5, 2010 –

outside the compensation period at issue. The Trustee filed the appellee's brief on November 23,

2010, also well beyond the period at issue here.[2] The foregoing is consistent with the Trustee's

summary of the Fox matter set forth in his most recent interim report. (Fourth Interim Rpt. ¶¶

147-52.)

17.     From June 1 to September 2010, the Trustee merely filed his appellate counter-

designations, and then filed, briefed and argued the motion to strike. Yet, the Trustee seeks

compensation for 575 hours billed by B&H on the Fox matter during that time period. To bill so

many hours for so little work is shocking and unconscionable.

18.     These two examples, of which Objectors' counsel have personal knowledge,

indicate that there is, at best, gross inefficiency by the Trustee and his counsel with respect to the

services rendered in this case. Of greater concern is the fact that SIPC has consistently approved

these compensation requests. It would appear that SIPC gives the Trustee and his counsel a

blank check every quarter, and every quarter the Trustee and his counsel draw $30 million or

---

[2] Seven attorneys appeared on the Trustee's 57-page appellee brief, including two attorneys "of counsel" from Columbus and Cleveland, Ohio. Even though the brief was not filed until late-November, perhaps some portion of the 575 hours billed to the Fox matter is attributable to this small army of attorneys who might have begun working on the papers months before they were due.

7

more on SIPC's account.  The law requires that the Trustee must be disinterested; he owes an

undivided duty of loyalty to the customers.  SIPC's willingness to approve inappropriate

compensation for the Trustee and his counsel, at a minimum, creates the appearance that the

Trustee and his counsel are bound to serve the interests of SIPC, not the customers and creditors

of this estate.  Given the reach of this case and its vast impact on innocent victims, the Court

should deny the compensation request until it is satisfied – after full disclosure – that the Trustee

and his counsel should not be disqualified from serving in light of their financial relationship

with SIPC.

## <u>CONCLUSION</u>

For the foregoing reasons, the Fifth Fee Application should be denied in its entirety.  The

Court should order the Trustee and his counsel to file with the Court the detailed billing reports

from December 11, 2008 to date so that the Court and all interested parties can properly evaluate

the reasonableness of compensation consistent with the well-established rules and procedures of

this Court.

December 7, 2010

BECKER & POLIAKOFF LLP


By: /s/ Helen Davis Chaitman

45 Broadway
New York, NY 10006
(212) 599-3322
*Attorneys for Diane and Roger Peskin and*
*several hundred other customers*

# EXHIBIT A

# SiPC

**SECURITIES INVESTOR PROTECTION CORPORATION**
805 FIFTEENTH STREET, N. W., SUITE 800
WASHINGTON, D. C. 20005-2215
(202) 371-8300    FAX (202) 371-6728
WWW.SIPC.ORG

September 7, 2010

**BY MESSENGER**

Honorable Paul E. Kanjorski
Chairman, Subcommittee on Capital
 Markets, Insurance and Government
 Sponsored Enterprises
2188 Rayburn House Office Building
Washington, DC 20515-3811

Honorable Scott Garrett
Ranking Member, Subcommittee on
 Capital Markets, Insurance and
 Government Sponsored Enterprises
2188 Rayburn House Office Building
Washington, DC 20515-3811

Dear Chairman Kanjorski and Ranking Member Garrett:

Below is the information that you requested in your letter dated August 20, 2010. The information follows each request and, as per your request, is as of August 1, 2010.

1.  A schedule that details the total balance of the SIPC Fund as defined by the Securities Investor Protection Act ("SIPA"). Of this balance, please identify how much is unallocated, reserved for the Madoff proceeding, and reserved for all other proceedings.

**Response:**

The SIPC Fund, as defined by SIPA, consists of cash on hand or on deposit and amounts invested in United States Government or agency securities.

As of August 1, 2010, rounded to the nearest $100,000, the SIPC Fund consisted of:

| | |
|---|---|
| US Government Securities maturing within 10 years at fair value (including accrued interest receivable) | $1,204,600,000 |
| Cash on hand or on deposit | $23,600,000 |
| Total | $1,228,200,000 |

Honorable Paul E. Kanjorski
Honorable Scott Garrett
September 7, 2010
Page 2

The SIPC Fund does not have "reserves" established against it. All expenditures by SIPC are made out of the Fund as provided under SIPA. It is used to meet all SIPC obligations under SIPA as they occur.

2.   An explanation of how SIPC Members are presently assessed annually and an estimate of the aggregate assessment that will be added to the SIPC Fund during the remainder of 2010 and in 2011.

**Response:**

Since April 1, 2009, the SIPC member assessment has been based on 0.25% of each member's net operating revenues as reflected on the members' financial reports filed with the Securities and Exchange Commission ("SEC" or "Commission") and the Financial Industry Regulatory Authority.

Members must complete a General Assessment Payment Form at their mid-year and a General Assessment Reconciliation Form at their year end. These filings and any assessment payments are due 45 and 75 days after the end of the period, respectively.

It is currently estimated that collection of member assessments will add an aggregate of approximately $500,000,000 to the SIPC Fund during the remainder of 2010 and in 2011.

3.   A schedule that details all lines of credit available to SIPC, outstanding borrowings, and remaining credit available. Also, please disclose whether any lines of credit have been closed during 2009 and 2010 and explain why.

**Response:**

In the event the SIPC Fund is or may reasonably appear to be insufficient for the purposes of SIPA, the SEC is authorized to make loans to SIPC and, in that connection, the Commission is authorized to issue notes or other obligations to the Secretary of the Treasury in an aggregate amount not to exceed $2.5 billion. Currently SIPC has no other lines of credit available. There is currently no outstanding borrowing and to date there has not been. SIPC had a $500 million revolving line of credit with an international consortium of banks which expired effective March 1, 2009, and an additional $500 million revolving line of credit with that consortium of banks that expired effective March 1, 2010. Given the developing financial crisis, the consortium of lenders on SIPC's commercial credit lines was unwilling to renew the credit lines.

SIPC, by bylaw, increased the "target" for the SIPC Fund to $2.5 billion. Assessments based upon a percentage of net operating revenue will remain in place until that higher target is reached. Once the target is reached, together with the Government line of credit, SIPC will have access to $5 billion of funds.

I would note that SIPC, under current law, has demonstrated that it has sufficient resources for its statutory mission.

4.  For claims related to the Madoff Ponzi scheme, please provide a schedule that details the number and aggregate value of allowed claims and the number and aggregate value of allowed claims at or below the statutory limits of SIPC protection, Also, include the average disbursement per claim.

**Response:**

This question and those that follow use the term "claims" with respect to the information being sought. However, SIPA provides protection per "customer," as defined in SIPA, and not per claim. Two claims submitted by the same customer could be aggregated for purposes of SIPA protection if that customer held more than one account in the same capacity at the brokerage. For example, if John Jones had two accounts at a brokerage, both of which were in his name and held by him in the same capacity, the accounts would be combined for purposes of the SIPC advance.

The answers that follow are predicated upon an analysis of the customer accounts that have been determined, or remain to be determined, by the Trustee and the relationship of those customer accounts to the claims that have been filed. Wherever possible, the Madoff Trustee and SIPC encouraged claimants to file claims to preserve any rights the claimants might have. Consequently, there are many more claims than there are customer accounts. It also should be noted that much of the information relating to claims analyzed under a last fictitious statement approach are rough approximations at best. The claims have not been reviewed or analyzed on that basis and some adjustments to the information could become necessary upon actual review. With this background in mind, the answer to question 4 is as follows:

The Trustee has allowed 2,175 claims related to 1,893 accounts, with a total allowed claims value of $5,556,299,243.18. The 2,175 allowed claims include 282 amended and/or duplicate claims. With respect to these allowed claims, SIPC has committed $713,037,947.41 in SIPC advances to these claimants. Of these allowed claims, 1,330 claims representing 1,149 accounts were allowed for more than $500,000.00. 845 claims representing 744 accounts were allowed for $500,000.00 or less. The average SIPC protection committed per account with an allowed claim is $376,671. The claims review and determination process continues.

5.  Please estimate how many Madoff Ponzi scheme claimants would be eligible for advances of up to $500,000 under the final statement method of calculating "net equity" as that

Honorable Paul E. Kanjorski
Honorable Scott Garrett
September 7, 2010
Page 4

term was defined in the case considered by the U.S. Bankruptcy Court for the Southern District of New York (Case No. 08- 01789-brl). Also, please estimate the aggregate value of advances that would have been made under this method.

**Response:**

The last fictitious statement approach assumes that claimants should be paid based on the last fictitious account statement issued to them by Bernard L. Madoff Investment Securities LLC ("BLMIS"). These statements reflect phony backdated securities positions chosen by Bernard Madoff to yield fake profits pre-determined by him. Under an approach that honors the final fictitious statement, there could be 4,459 accounts eligible to share in customer property and to the extent not fully satisfied, eligible for a SIPC advance. The holders of these 4,459 accounts could be entitled to a total of $2,010,467,854.23 in SIPC protection. The $2,010,467,854.23 includes the $713,037,947.41 which SIPC already has committed in customer advances and an estimated additional amount of approximately $175,000,000.00 that the Trustee expects to ask SIPC to advance, after August 1, 2010, for the satisfaction of customers under the Trustee's cash-in/cash-out methodology. Thus, if the Trustee were to use the final fictitious statement method of calculating "net equity," an additional $1,122,429,906.82 in SIPC advances could be made.

It should be noted that allowance of claims on this basis necessarily would reduce the amount of customer property available to satisfy those claimants who have yet to recover their principal. The SIPC advance supplements the distribution of customer property that the Trustee collects for the benefit of customers. Such property is shared pro rata by customers. Distribution to claimants based on a last fictitious statement approach means that customer property and a SIPC advance will be used to pay not only customers who have yet to recover the amount deposited with BLMIS, but those customers who, while the firm was in business, took out more than they put in. Enlarging the pool of claimants sharing in customer property necessarily means less property for those who have yet to recover their principal and more property for those who, while the firm was in business, withdrew their principal and received other investors' money in the form of fake profits. In other words, the fake profits of the investors who already recovered their principal continue to grow when the firm is in liquidation to the continued detriment of those investors still owed their principal.

6. Please estimate the total number and value of distributions made to Madoff investors in excess of their investments. Of these distributions, please estimate how many avoidance actions that the trustee has brought or expects to bring and the amount the trustee has recovered and expects to recover in the future. Further, please break out the number of and expected recoveries from avoidance actions between investors who may have known about or participated in the Ponzi scheme and those who were likely to be unaware of the Ponzi scheme.

Honorable Paul E. Kanjorski
Honorable Scott Garrett
September 7, 2010
Page 5

<u>Response:</u>

There were approximately 90,000 disbursements totaling $18.5 billion made to Madoff investors in excess of their investments.

The Trustee has brought 19 avoidance actions under the Bankruptcy Code seeking to recover approximately $15,000,000,000.00.

The Trustee advises that he anticipates bringing avoidance actions in two categories. One category would involve customers who received other customers' money, withdrew more than they deposited with Madoff, and as to whom knowledge is not a factor. At this time, the Trustee is reviewing the facts of approximately 1,000 possible avoidance actions that could result in the recovery of approximately $4,800,000,000.00 for the benefit of customers who have yet to be repaid their principal.

The other category consists of avoidance actions in which the Trustee alleges that the customer had enough information to be on inquiry notice of the fraud. At this time, the Trustee is considering the commencement of about 100 avoidance actions seeking the recovery of at least $2,000,000,000.00 for the benefit of customers who have yet to recover their principal.

7. For all Madoff-related SIPC claims, please provide a schedule stratified by claims of less than a million dollars, between one and three million dollars, between three and five million dollars, between five and ten million dollars and in excess of ten million dollars that details how many claims would be eligible under both the final statement method and the cash-in/cash-out method of calculating not equity. Further, please provide the aggregate amount that could be clawed backed from claimants under each method.

<u>Response:</u>

Under the Cash In/Cash Out Methodology, below is a stratified schedule of accounts potentially eligible for SIPC protection:

| Category | Accounts | Total Combined Amount |
|---|---|---|
| Less Than $1,000,000 | 1,204 | $381,921,324.59 |
| $1,000,000 to $2,999,999 | 626 | $1,096,526,388.57 |
| $3,000,000 to $5,000,000 | 198 | $754,646,856.41 |
| $5,000,000 to $9,999,999 | 153 | $1,027,403,169.73 |
| Greater Than $10,000,000 | 138 | $14,026,555,101.15 |
| | 2,319 | $17,287,052,840.45 |

Honorable Scott Garrett
September 7, 2010
Page 6

The following is a stratified schedule of accounts that potentially would be allowed under a last fictitious statement approach:[1]

| Category | Accounts | Total Combined Amount |
|---|---|---|
| Less Than $1,000,000 | 1,485 | $670,889,986.09 |
| $1,000,000 to $2,999,999 | 1,372 | $2,522,097,200.08 |
| $3,000,000 to $5,000,000 | 569 | $2,172,486,413.62 |
| $5,000,000 to $9,999,999 | 529 | $3,690,585,075.03 |
| Greater Than $10,000,000 | 499 | $48,055,627,602.00 |
| Dec 2008 Accts[2] | 5 | $76,905,772.00 |
| | 4,459 | $57,188,592,048.82 |

For the answer to the final part of question 7 as to the transfers that the Trustee might seek to avoid under the Bankruptcy Code, please see the answer to question 6 above.

8. Please estimate the number of Madoff- related claims not yet determined and estimate the timeframe for when those claims will likely be determined. Also for all claims filed since the liquidation proceedings started, please calculate the average time period expressed in months between the filing of the claim and the trustee's determination of the claim.

**Response:**
Of the 16,374 filed claims, 13,189 have been determined and 3,185 claims remain to be determined. The Trustee has advised that he expects to have all claims determined before the end of this year. For the 13,189 determined claims, the average time period between the filing of the claim and determination is 7.55 months.

In analyzing the foregoing information, there are certain facts that are very important for a complete understanding of these statistics. First, this is not a typical SIPC proceeding in which securities or cash were on hand at the time of the failure of the brokerage house. As is well known, this was a Ponzi scheme in which the only assets were other people's money or assets derived from such funds.

Furthermore, this was a Ponzi scheme of long standing, going back over at least 30 years. Since the traditional approach in all Ponzi scheme matters and the one consistent with SIPA is to return to the investor what the investor put into the scheme, the Trustee was

---

[1] This analysis excludes the potential results of settlements negotiated by the Trustee.

[2] This category relates to accounts that were opened after November 30, 2008. These accounts did not receive a November 30, 2008 Customer Statement.

Honorable Scott Garrett
September 7, 2010
Page 7

required to do a full forensic analysis of all the books and records of the debtor, going back to at least the early 1980s in order to fully determine the amount of money which might be due to each customer based upon the customer's investment.

This forensic analysis included not only a complete review of the books and records of the failed brokerage house, but also documents received from third parties, such as banking institutions, clearing houses and other brokerage houses, as well as documents received from the customers themselves. There are literally millions of documents that have been reviewed by the Trustee and his staff in connection with the evaluation of each of the customer claims filed. Furthermore, access to books and records required coordination and sharing with law enforcement authorities which complicated and, in some instances, necessarily delayed the review.

Moreover, in order to reach out to customers who might be in financial distress, the Trustee instituted a Hardship Program early in the case which gave every customer the opportunity to advise the Trustee of his or her financial circumstances so that the claim could be processed as quickly as possible. Hundreds of customers filed hardship applications, and as a result of the Trustee's actions, many of these hardship applications were granted and the Trustee determined those claims as promptly as possible.

In addition, it should also be noted that due to the long term nature of this Ponzi scheme, many of the customer accounts presented multiple generational investments by customers with Mr. Madoff. Thus, it was not simply a matter of examining a single account for a short period of time, but in many instances, it required an analysis of multiple accounts going back several decades in order to fully determine the amount of money invested by the customer and whether the customer had invested more money than he or she had received from Mr. Madoff.

Notwithstanding these extreme difficulties, the Trustee has determined over 80% of the customer claims filed. The review and determination of customer claims is an ongoing process. The remaining claims include the most difficult ones, such as those of members of the Madoff family and extended family, insiders (former employees), feeder funds and others.

9. For all Madoff- related claims, please detail how many claims have been disallowed because the investors were not directly invested with Mr. Madoff's firm.

**Response:**
There are 8,489 determined claims submitted by claimants who had no account at Madoff that were disallowed. There are an additional 2,094 undetermined claims that tentatively are in this category but may be re-categorized upon further review.

Honorable Scott Garrett
September 7, 2010
Page 8

10. For each year, from 1992 until the liquidation of Bernard L. Madoff Investment Securities, please detail the aggregate funds that flowed into the firm and out to investors.

**Response:**

For each year from 1992 through 2008, the following represents the aggregate funds that flowed into and out of BLMIS:

| Year | Cash In | Cash Out |
|------|---------|----------|
| 1992 | ($2,097,318,423.98) | $2,077,513,621.46 |
| 1993 | ($2,018,244,086.41) | $2,127,095,135.34 |
| 1994 | ($2,784,953,707.68) | $2,784,003,353.00 |
| 1995 | ($4,346,500,359.97) | $4,407,047,285.35 |
| 1996 | ($6,669,384,242.44) | $6,549,481,308.31 |
| 1997 | ($9,046,919,591.00) | $8,636,920,182.65 |
| 1998 | ($12,826,039,594.36) | $11,697,071,675.76 |
| 1999 | ($17,917,907,439.09) | $17,094,507,049.12 |
| 2000 | ($25,629,825,795.12) | $25,702,346,740.45 |
| 2001 | ($37,404,909,113.36) | $37,580,315,488.37 |
| 2002 | ($3,315,517,149.06) | $3,564,299,618.83 |
| 2003 | ($3,162,410,682.31) | $3,667,760,430.70 |
| 2004 | ($4,045,509,142.92) | $3,528,053,488.39 |
| 2005 | ($3,616,828,561.93) | $4,803,025,580.01 |
| 2006 | ($5,951,217,967.82) | $4,403,608,692.87 |
| 2007 | ($7,284,216,531.24) | $4,488,987,554.54 |
| 2008 | ($6,308,482,583.89) | $10,556,145,532.54 |

Respectfully submitted,

Stephen P. Harbeck
President

SPH:ved

cc:  Hon. Barney Frank
Hon. Spencer Bachus

# EXHIBIT B

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-1789 (BRL) |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-3200 (BRL) |
| Plaintiff, | |
| v. | |
| LISSA CANAVAN, LESLIE GOLDSMITH and JUDITH KALMAN, themselves and to the extent they purport to represent a class of those similarly situated, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF TRUSTEE'S APPLICATION FOR PRELIMINARY INJUNCTION,
ENFORCEMENT OF STAY, AND DECLARATION THAT CANAVAN, GOLDSMITH
AND KALMAN ACTION IS VOID *AB INITIO*,
AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 3

I.     The Court Has Jurisdiction to Enjoin the New Jersey Action ........................................... 3

II.    The New Jersey Action Violates the Automatic Stay and Should Otherwise Be
Enjoined .......................................................................................................................... 7

      A.    The New Jersey Action Violates the Automatic Stay ........................................... 8

      B.    The New Jersey Action Impinges on the Court's Jurisdiction and Should
be Enjoined ...................................................................................................... 10

            1.    This Court Has Authority to Enjoin the New Jersey Action Under
Section 105(a) ........................................................................................ 10

            2.    The New Jersey Plaintiffs Improperly Seek to Relitigate the Net
Equity Issue ............................................................................................ 11

III.    The Defendants' Cross-Motion to Dismiss the Complaint Should be Denied ................ 14

CONCLUSION ....................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page**

## Cases

*Baldwin-United Corp. v. Paine Webber Group, Inc.* (*In re Baldwin-United Corp.*), 57
    B.R. 759 (S.D. Ohio 1985) ........................................................ 12

*Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006) ................. 13

*C & J Clark Am., Inc. v. Carol Ruth, Inc.* (*In re Wingspread Corp.*), 92 B.R. 87 (Bankr.
    S.D.N.Y. 1988) ........................................................ 10

*Canavan v. Harbeck*, Case No. 10 CV 00954 (D.N.J.) ......................... 1, 12

*Celotex Corp. v. Edwards*, 115 S.Ct. 1493 (1995) ........................... 3

*Covanta Onondaga Limited Partnership v. Onondaga County Resource Recovery
    Agency*, 318 F.3d 392 (2d Cir. 2003)................................... 14

*Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998) ...................... 10, 11, 12

*Garrity v. Leffler* (*In re Neuman*), 71 B.R. 567 (S.D.N.Y. 1987)............ 10

*Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 115 S.Ct. 1061 (1995).......... 13

*In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2d Cir. 1987) ............ 9

*In re Adelphia*, 2006 WL 1529357 (Bankr. S.D.N.Y. June 5, 2006).......... 3, 9, 11

*In re AP Indus.* 117 B.R. 789 (Bankr. S.D.N.Y. 1990) .............. 4, 10, 11, 12

*In re Arrowmill Development Corp.*, 211 B.R. 497 (Bankr. D.N.J. 1997) ........ 5, 6

*In re Calpine Corp.*, 354 B.R. 45 (Bankr. S.D.N.Y. 2006) ................ 10

*In re Cuyahoga Equipment Corp.*, 980 F.2d 110 (2d Cir. 2004) ............ 3

*In re Dreier LLP*, 2010 WL 1707737 (Bankr. S.D.N.Y. Apr. 28, 2010)........... 11, 12

*In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008)................. 6

*In re Johns-Manville Corp.*, 91 B.R. 225 (Bankr. S.D.N.Y. 1988*)* ........ 11, 12

*In re Johns-Manville Corp.*, 97 B.R. 174 (Bankr. S.D.N.Y. 1989) ........... 14

*In re Keene Corp.*, 164 B.R. 844 (Bankr. S.D.N.Y. 1994)................ 10, 12

*In re Lyondell Chem. Co.*, 402 B.R. 571 (Bankr. S.D.N.Y. 2009) ........... 10

*In re MCEG Productions, Inc.*, 133 B.R. 232 (Bankr. C.D.Cal. 1991)........ 9

# TABLE OF AUTHORITIES
## *(cont'd)*

Page

*In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir. 2004)..................................................... 3, 6

*In re Singer Co. N.V.*, 2000 WL 33716976 (Bankr. S.D.N.Y. Nov. 3, 2000) ........................ 11, 12

*In re The 1031 Tax Group, LLC*, 397 B.R. 670 (Bankr. S.D.N.Y. 1996)............................... 11, 12

*In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009) .................................................................. 5

*LTV Corp. v. Back (In re Chateaugay Corp.)*, 201 B.R. 48 (Bankr. S.D.N.Y. 1996) .............. 7, 11

*LTV Corp. v. Back (In re Chateaugay Corp.)*, 213 B.R. 633 (S.D.N.Y. 1997)............................. 6

*LTV Corp. v. Miller (In re Chateaugay Corp.)*, 109 B.R. 613 (S.D.N.Y. 1990)......................... 15

*MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988) ...................................... 4, 12

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992) ............................................................ 13

*New York Life Insurance Co. v. Deshotel*, 142 F.3d 873 (5th Cir. 1998).................................... 14

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ................................................................. 3, 5

*Picard v. Fox*, 2010 WL 1740885 (Bankr. S.D.N.Y. May 3, 2010).................................... 4, 10, 12

*Purdy v. Zeldes*, 337 F.3d 253 (2d Cir. 2003).............................................................................. 13

*Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004) .............................................................................. 5

*Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec.*, 424 B.R. 122 (Bankr.
    S.D.N.Y. 2010) ........................................................................................................................ 4

*Sherman v. Jacobson*, 247 F. Supp. 261 (S.D.N.Y. 1965) ......................................................... 13

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61 (2d Cir. 1986) ............................. 9

*Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195 (2009)................................................................ 6

*United States v. International Bhd of Teamsters*, 728 F. Supp. 1032 (S.D.N.Y. 1990) .............. 14

*Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005).................................................................................... 13

## Statutes

11 U.S.C. § 105................................................................................................................... passim

11 U.S.C. § 105(a) ............................................................................................................ 10, 11, 15

11 U.S.C. § 362(a)(3)....................................................................................................................... 9

**TABLE OF AUTHORITIES**
*(cont'd)*

**Page**

15 U.S.C. § 78aaa *et seq.* ............................................................................................................... 1

15 U.S.C. § 78eee(b)(2)(A)(i).......................................................................................................... 7

15 U.S.C.§ 78eee(b)(4) ................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................................. 14

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 15

Irving H. Picard, Esq., as trustee (the "Trustee") for the substantively consolidated

liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under

the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA") and Bernard L.

Madoff ("Madoff"), individually, by and through his undersigned counsel, respectfully submits

this Memorandum of Law (i) in further support of his application to: (a) enjoin and restrain

Defendants Lissa Canavan ("Canavan"), Leslie Goldsmith ("Goldsmith") and Judith Kalman

("Kalman" and, together with Canavan and Goldsmith, the "New Jersey Plaintiffs"), and those

acting in concert or participation with them, or on their behalf, and all defendants, from pursuing

the action titled *Canavan v. Harbeck*, Case No. 10 CV 00954 (D.N.J.) (the "New Jersey Action")

and commencing or proceeding with any other actions or proceedings against the Board of

Directors of the Securities Investor Protection Corporation ("SIPC") or the CEO/President of

SIPC (the "SIPC Defendants") and (b) enforce the Automatic Stay and other applicable stays and

declare that the New Jersey Action is void *ab initio*; and (ii) in opposition to the cross-motion to

dismiss the Trustee's complaint filed by the New Jersey Plaintiffs.

## PRELIMINARY STATEMENT

The New Jersey Plaintiffs admit in their Complaint that their action centers precisely on

how net equity is to be determined for the victims of Madoff's Ponzi scheme: "the issue of the

proper determination of net equity is a central issue in determining all Class members' claims[.]"

(Sheehan Aff.,[1] Ex. A, ¶ 40.)  They further implicitly concede in their Opposition Brief that they

are making all the same arguments in their New Jersey Action that they or their counsel

previously made before this Court, and that their New Jersey Action is a relitigation of this

---

[1] Affidavit of David J. Sheehan dated April 9, 2010, in Support of the Trustee's Application for a Preliminary
Injunction, Enforcement of the Automatic Stay, Declaration that Canavan, Goldsmith and Kalman's Action is Void
*Ab Initio* and Temporary Restraining Order (the "Sheehan Aff.") (Dkt No. 3.)

Court's net equity determination.  At bottom, the New Jersey Plaintiffs' claims are entirely derivative of the BLMIS liquidation proceedings and as such, are subject to this Court's jurisdiction.

Having admitted that their case centers on the net equity calculation and conceding that they seek to relitigate that issue in the New Jersey District Court, they contend that this Court nevertheless has no business enjoining them from proceeding because the "damages" they seek would have no impact on the BLMIS liquidation proceedings.  However, not only is this Court empowered to stop them from relitigating the net equity issue, it must do so to prevent "net winners" such as the New Jersey Plaintiffs and the class they seek to represent, from mocking the system by recovering their false profits.

Indeed, this Court has exclusive jurisdiction to determine the New Jersey Plaintiffs' claims, and the proper recourse for those dissatisfied with that determination is this Court and the appellate process—not another Court with no familiarity with the Madoff Ponzi scheme, the SIPA statute and this Court's net equity determination.  And while the New Jersey Plaintiffs may belittle the potential effect that their action could have on the efficient administration of the BLMIS estate, it is difficult to imagine how a potentially contrary ruling on net equity from another federal court could not affect the legitimacy of this Court's decisions, as well as create confusion among claimants—claimants who would be under both this Court's jurisdiction and that of the New Jersey District Court as putative class members in an action relitigating the net equity determination.

The New Jersey Plaintiffs no doubt believe that they have found a clever way to flout this Court's jurisdiction—by suing the SIPC Board and its CEO because they know they cannot sue the Trustee outside the confines of this Court.  But they have been too clever by half because

- 2 -

their Action strikes at the very heart of this Court's purpose in this case—the equitable distribution of money to the victims of Madoff's Ponzi scheme. The New Jersey Action is designed to reward net winners with their illicit proceeds from Madoff's Ponzi scheme. The New Jersey Plaintiffs must be enjoined.

## **ARGUMENT**

### I.    **THE COURT HAS JURISDICTION TO ENJOIN THE NEW JERSEY ACTION**

The New Jersey Plaintiffs contend that this Court does not have the jurisdiction to issue the injunctive relief requested by the Trustee. Their arguments are completely without merit.

The New Jersey Plaintiffs state the unremarkable proposition that "related to" jurisdiction "is not without limitation." (NJ Pl. Br.[2] 3.) However, the applicable standard, as identified even by the cases relied upon by the New Jersey Plaintiffs, is whether the New Jersey Action could have "any conceivable effect" on the BLMIS proceeding. *See, e.g.*, *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 2004); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). (*See* NJ Pl. Br. 3.) In *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004), another case relied on by the New Jersey Plaintiffs, the court observed that "a key word in [the related to jurisdiction test] is 'conceivable' and that certainty, or even likelihood, is not a requirement." *Id.* at 164 (internal quotations and citations omitted); *see also Celotex Corp. v. Edwards*, 115 S.Ct. 1493, 1498–99 (1995) ("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth.").[3]

---

[2] Defendants' Memorandum of Law Opposing Trustee's Motion for an Injunction and Supporting Defendants' Cross-Motion to Dismiss the Complaint ("NJ Pl. Br.") (Dkt No. 18.)

[3] The New Jersey Plaintiffs' narrow distinctions of the Trustee's cases ignore their more broad applicability for jurisdictional purposes. For example, in *In re Adelphia Communications Corp.*, the court outlined the broad parameters of "related to" jurisdiction: "[For a] civil proceeding [to be] related to bankruptcy . . . the proceeding need not necessarily be against the debtor or the debtor's property. An action is related to the bankruptcy if the outcome . . . in any way impacts upon the handling and administration of the bankrupt estate." 2006 WL 1529357, at *7 (Bankr. S.D.N.Y. June 5, 2006) (internal quotations and citations omitted.). Further, in *In re AP Industries*,

The New Jersey Action has much more than a "conceivable effect" on the BLMIS case. This Court has ruled on the appropriate method for determining claims in its March 1, 2010 Decision and March 8, 2010 Order on the calculation of net equity. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) (hereinafter, "*SIPC v. BLMIS*" or the "Net Equity Decision"); Net Equity Order (Dkt No. 2020.) The New Jersey Plaintiffs seek to circumvent this Court's holding that it is "absurd" for net winners, such as the New Jersey Plaintiffs, to believe they are entitled to their false profits. *SIPC v. BLMIS*, 424 B.R. at 140. Turning to a different court to relitigate this Court's determination most surely overlaps with and affects the administration of the BLMIS estate.[4] The broad "related to" jurisdiction granted to district courts, and in turn to bankruptcy courts, provides the basis for avoiding such an untoward result.

---

*Inc.* the court found it had jurisdiction to enjoin actions seeking money damages by creditors against third parties who participated in a transaction involving the debtor. *See* 117 B.R. 789, 798–99 (Bankr. S.D.N.Y. 1990). Here, if the creditors were to prevail, this would not only cause disruption in the administration of the estate, but would result in inequitable treatment of customers of BLMIS. *See, e.g., Picard v. Fox*, 2010 WL 1740885, at *10 (Bankr. S.D.N.Y. May 3, 2010) (noting concern about certain creditors receiving payment in excess of their entitlement under the Net Equity Decision, defined herein, by bringing actions which seek the same funds as the trustee). Moreover, in *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988), MacArthur, a distributor of the debtor's products, attempted to argue that its interests in certain insurance policies, which were the subject of a settlement, were outside of the Court's jurisdiction. 837 F.2d at 89-91. The Second Circuit found that the bankruptcy court had jurisdiction to issue orders approving a settlement and enjoining actions against insurers and found that MacArthur's rights and interests were limited by the underlying insurance policies, which were estate property. *Id.* at 92-93. As in *MacArthur*, the New Jersey Plaintiffs here claim that they have separate rights in the form of "SIPC insurance." However, this Court already has held that SIPC advances are not "insurance," and that the New Jersey Plaintiffs and the class they purport to represent are not entitled to their false profits. (*See* Memorandum of Law in Support of Trustee's Application for Preliminary Injunction, Enforcement of Stay, Declaration that Canavan, Goldsmith and Kalman Action is Void *Ab Initio,* and Temporary Restraining Order at 13–15) (the "Trustee's Opening Brief" or "Tr. Op. Br.") (Dkt No. 2.)

[4] In an attempt to downplay their efforts to relitigate the net equity issue, the New Jersey Plaintiffs emphasize that the New Jersey Action was commenced shortly before this Court rendered its Net Equity Decision. (NJ Pl. Br. 2.) Notwithstanding this timeline, however, the New Jersey Action will still have the practical effect of relitigating net equity. The New Jersey Plaintiffs no doubt calculated the possibility of a determination contrary to their position on net equity, as they would have had no grounds to bring the New Jersey Action (nor could they assert any damages) if they had achieved their preferred result.

Indeed, several of the cases relied on by the New Jersey Plaintiffs hold that the court had the jurisdiction to order the injunction sought. *See, e.g.*, *Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004) (finding sufficient nexus between a state court action and the title 11 case); *In re Arrowmill Dev. Corp.*, 211 B.R. 497 (Bankr. D.N.J. 1997) (capital contribution to the estate by a third party provided the basis for a finding that jurisdiction existed to grant a non-debtor release in a plan of reorganization). Other cases which the New Jersey Plaintiffs rely on—both Third Circuit cases—are otherwise inapposite because they stand for the proposition that truly independent conduct having nothing to do with the estate is not "related to" a bankruptcy proceeding for jurisdictional purposes. For instance, *Pacor, Inc. v. Higgins* concerned an action between two parties who were not parties to, or involved with, the bankruptcy proceedings at issue. 743 F.2d at 986, 994. In contrast, here, the New Jersey Plaintiffs and the entire class they purport to represent are BLMIS customers and are claimants in these proceedings. SIPC, meanwhile, is the entity which advances funds for the satisfaction of claims up to the statutory maximum per customer in these proceedings. Thus, there is a clear nexus to these proceedings.[5] *In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009), sets forth the Third Circuit standard that "related to" jurisdiction does not exist if another lawsuit is required before there would be a conceivable impact on the administration of the estate. *Id.* at 174–75. Here, no additional lawsuits are required for there to be an impact on the estate because the crux of the administration of the estate—net equity—is being relitigated. Further, courts in this district have held that the "automatic liability" standard described in *Pacor,* which was subsequently utilized in *W.R. Grace,* is too strict and "related to" jurisdiction exists when there is a reasonable legal

---

[5]  In addition, the New Jersey Plaintiffs should not be allowed a double recovery. Notably, the "damages" they seek are none other than what is in essence the advance from SIPC, which overlaps with their appeal of the Net Equity

basis for a claim against the debtor.  *See LTV Corp. v. Back* (*In re Chateaugay Corp.*), 213 B.R.

633, 640 (S.D.N.Y. 1997).  The New Jersey Action will have a direct and detrimental effect on

the administration of the BLMIS liquidation by potentially undermining the net equity

determination, rewarding net winners with their false profits and thus perpetuating Madoff's

fraud.[6]

As described in greater detail in the Trustee's Opening Brief, the only possible rationale

for commencing the New Jersey action was to attempt to impact on the administration of the

estate and allow the New Jersey Plaintiffs to recover funds that otherwise would have been

denied them.  (*See*, *e.g.*, Tr. Op. Br. 16–20.)  Any argument that the New Jersey Action is

independent of the BLMIS liquidation is not credible, particularly given the New Jersey

Plaintiffs' own assertions regarding the importance of the determination of net equity to their

claims.  (*See*, *e.g.*., Sheehan Aff., Ex. A, ¶ 40 ("[T]he issue of the proper determination of net

equity is a central issue . . . ."); ¶ 42 ("[T]he Director's [*sic*] promulgation of SIPC's Net

Investment Policy are bad faith actions in direct violation of SIPA's definition of 'net

equity' . . . ."); ¶ 95 ("[T]he Directors have created a new definition of 'net equity,' in direct

contravention of SIPA, with the intention of depriving approximately 2,568 Customers of SIPC

insurance . . . ."); ¶¶ 208–09 ("Plaintiffs' and the Class members' claims . . . were based on their

---

Decision.  Accordingly, any recovery obtained in the New Jersey Action could affect payment of the SIPC advance, and vice-versa.

[6] In addition, in several of the cases cited by the New Jersey Plaintiffs, the courts consider the breadth of their jurisdiction post-confirmation.  *In re Resorts Int'l*, 372 F.3d 154; *In re Arrowmill Dev. Corp.*, 211 B.R. 497; *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008), *rev'd and remanded sub nom. Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195 (2009).  The scope of post-confirmation jurisdiction is narrower than that jurisdiction conferred in the midst of the administration of the bankruptcy case.  *In re Resorts Int'l*, 372 F.3d at 164–65.  The Trustee submits that the Court would have the jurisdiction to enjoin even on the narrowest interpretation of jurisdiction given the clear efforts by the New Jersey Plaintiffs to evade the rulings of this Court.  However, in any event it is the broader, pre-confirmation, standard that is applicable here.

'net equity' as defined by SIPA . . . Defendants wrongfully and in bad faith failed to 'promptly' pay the claims under the illegal SIPC Net Investment Policy . . .").)

Finally, the New Jersey Plaintiffs provide no authority for their bald assertion that SIPA § 78eee(b)(2)(A)(i) and § 78eee(b)(4) are not implicated in the consideration of jurisdiction. (*See* NJ Pl. Br. 6–7.) The New Jersey Action is an attempt to take this Court's jurisdiction over the administration of the estate and confer that jurisdiction on the New Jersey District Court. This is precisely the situation in which SIPA § 78eee(b)(2)(A)(i) and § 78eee(b)(4) are relevant and applicable. For the same reason, the New Jersey Plaintiffs' attempt to argue that this Court's inherent ancillary jurisdiction is not at issue must fail. This Court undeniably has the authority to interpret and enforce its Net Equity Decision and has the jurisdiction to act to protect that authority. *See LTV Corp. v. Back* (*In re Chateaugay Corp.*), 201 B.R. 48 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997); *see also* Net Equity Order at 4 (retaining jurisdiction "with respect to all matters relating to the interpretation or implementation of [the] Order").

## II.    THE NEW JERSEY ACTION VIOLATES THE AUTOMATIC STAY AND SHOULD OTHERWISE BE ENJOINED

As the Trustee previously argued, the "fraud" alleged in the New Jersey Action is merely an effort to disguise the New Jersey Plaintiffs' real intentions—to cast doubt on this Court's Net Equity Decision and recoup their fictitious profits. If the New Jersey Plaintiffs were seeking a genuine resolution on issues of "fraud," they should have sought to lift the automatic stay prior to filing the New Jersey Action. Instead, the New Jersey Plaintiffs shroud their true objectives in the guise of fraud in order to get what they cannot in this case—their false profits. The New Jersey Action violates the automatic stay and is otherwise subject to an injunction under § 105 as a relitigation of the net equity issue.

## A.    The New Jersey Action Violates the Automatic Stay

The New Jersey Plaintiffs assert that their claims in the New Jersey Action would not interfere with the orderly administration of the BLMIS liquidation proceeding.  Twisting the Trustee's argument, they suggest that the Trustee is concerned that *this Court* will be "confused" by a ruling in the New Jersey Action.  (*See* NJ Pl. Br. 11.)  However, the Trustee obviously is not concerned that this Court, or the Second or Third Circuits for that matter, will confuse this Court's rulings with any rulings by the New Jersey District Court.  Rather, the Trustee is concerned that the New Jersey Plaintiffs are attempting to incite an indirect attack on the liquidation proceedings in this Court through the New Jersey Action.[7]

The link between the two actions—the net equity issue—is at the heart of the administration of the BLMIS estate.  A ruling in favor of the New Jersey Plaintiffs would necessarily call into question the legitimacy of this Court's decision on the net equity issue.  As set forth in detail in the Trustee's Opening Brief, and in Exhibit A thereto, all of the New Jersey Plaintiffs' arguments were made before this Court in the net equity proceedings.  There is nothing new here.  (*See* Tr. Op. Br. at 17–20 and Ex. A thereto.)

Further, following this scenario to its logical end, the same issues could be considered by two different appellate courts, which is a tremendous waste of both judicial resources and the

---

[7] An indication that the New Jersey Plaintiffs have ulterior motives is the simple fact that they appear to be seeking damages in excess of $2 billion from only eight individuals—an expectation so unrealistic that it suggests that the New Jersey Plaintiffs do not actually expect full satisfaction of their claims.  *See* Sheehan Aff., Ex. A, ¶ 85 (acknowledging that "SIPC would need approximately $1.5 billion, possibly as much as $2 billion, to pay all the Class claims[.]").  Rather, they are attempting to apply political pressure.  The New Jersey Plaintiffs seem to be under the false impression that the SIPC Defendants control the Trustee.  *See* Sheehan Aff., Ex. A, ¶ 4 (stating that "in direct contradiction of their repeated representations . . . defendants have caused their designated trustee . . . to refuse to pay SIPC insurance to any Customer whose withdrawals exceeded his deposits"); ¶ 107 (arguing that "[b]ecause SIPC has no power to change the statutory definition of 'net equity,' the defendants have no power to allow the Trustee to use SIPC's Net Investment Policy").  Thus, by raising the specter of bankruptcy, the New Jersey Plaintiffs hope to pressure the SIPC directors and President into compelling the Trustee to change the statutory definition of net equity under SIPA as applied in this case.

Trustee's resources.  It is plain to see how the New Jersey Action could cause enormous confusion with respect to the net equity issue, thereby interfering with the orderly and efficient administration of the BLMIS estate.  Such interference is exactly what section 362(a)(3) seeks to prevent.  *See In re Adelphia Commc'ns Corp.*, 2006 WL 1529357, at *3 (finding that section 362(a)(3) "prohibits interference with the disposition of the assets that are under the Court's wing … And that is so without distinction as to the form the interference takes.").  (*See* Tr. Op. Br. 39.)

Moreover, as much as the New Jersey Plaintiffs attempt to technically fall outside the scope of the automatic stay by naming the SIPC Defendants instead of their real targets—the Trustee, SIPC and BLMIS—their Action nevertheless violates the automatic stay because of their efforts to relitigate the net equity issue and thus impinge on this Court's jurisdiction.[8]  *See In re Adelphia Commc'ns Corp.*, 2006 WL 1529357, at *3 (holding that section 362(a)(3) prohibits interference "whether or not the Debtor is named as a defendant as part of the effort," and quoting the Second Circuit in *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987) for the proposition that "[i]f action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay"); s*ee In re MCEG Productions, Inc.*, 133 B.R. 232, 235 (Bankr. C.D.Cal. 1991) (explaining that when determining whether there has been a violation of the automatic stay, courts should consider the substance, not the form).

The New Jersey Plaintiffs are attempting to solicit preferential treatment from the New Jersey District Court in the form of fictitious profits to which they are not entitled under this

---

[8] Citing *Teachers Insurance and Annuity Ass'n of America v. Butler*, 803 F.2d 61 (2d Cir. 1986), the New Jersey Plaintiffs also attempt to argue that "[s]tays pursuant to 11 U.S.C. § 362(a) are limited to debtors and generally may

Court's Net Equity Decision.  Their conduct is an affront to the automatic stay and, thus, the New Jersey Action should be declared void *ab initio*.  *See, e.g.*, *In re AP Indus., Inc.*, 117 B.R. at 798–99; *In re Keene Corp.*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994).

### B.    The New Jersey Action Impinges on the Court's Jurisdiction and Should be Enjoined

#### 1.    This Court Has Authority to Enjoin the New Jersey Action Under Section 105(a)

The New Jersey Plaintiffs state the uncontroversial proposition that "[t]here are limits to the relief that may be granted under section 105."  (NJ Pl. Br. 7.)  However, they fail to properly outline those limits, and then attempt to narrow this Court's authority in an unprecedented manner.  As the Trustee made clear in his opening brief, under § 105, the Court has the authority to enjoin third party actions if those actions threaten to (i) impair the court's jurisdiction with respect to a case before it or (ii) frustrate the debtor's reorganization efforts.  *See In re Calpine Corp.*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007); *In re Lyondell Chem. Co.*, 402 B.R. 571, 588 n.37 (Bankr. S.D.N.Y. 2009); *Garrity v. Leffler* (*In re Neuman*), 71 B.R. 567, 571 (S.D.N.Y. 1987); *C & J Clark Am., Inc. v. Carol Ruth, Inc.* (*In re Wingspread Corp.*), 92 B.R. 87, 92 (Bankr. S.D.N.Y. 1988).

As this Court's decision in *Picard v. Fox* demonstrates, contrary to the New Jersey Plaintiffs' position, a Court's authority to enjoin actions under § 105 extends beyond reorganization cases.  *See also Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (finding the same in a liquidation proceeding); *In re Wingspread Corp.*, 92 B.R. at 95 (issuing an injunction pursuant to § 105(a) in a chapter 7 liquidation proceeding).

---

not be extended to non-bankrupt entities."  (NJ Pl. Br. 10.)  However, this is an incorrect assertion.  *See, e.g., Picard v. Fox*, 2010 WL 1740885 at *8-9.

Because the New Jersey Action threatens this Court's jurisdiction by seeking to relitigate the Net Equity Decision, this Court has authority to use § 105(a) to enjoin the New Jersey Plaintiffs from proceeding.  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 2006 WL 1529357 at *5 ("[I]t is manifestly proper, in my view, to invoke section 105(a) 'to enforce or implement' my earlier orders, to prevent abuses of process, and to avoid such a blatant interference with the Debtors' reorganization in these chapter 11 cases.").

This Court, in upholding the Trustee's determination of net equity, specifically ordered that it "shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order."  (Net Equity Order at 4.)  Thus, this Court has the authority under § 105 to enjoin the New Jersey Action to enforce its Net Equity Decision.  *See In re Adelphia Commc'ns Corp.*, 2006 WL 1529357, at *4 ("The Bankruptcy Court's injunctive powers under section 105(a) also include 'the power to enjoin the Defendants from proceeding against non-debtor third parties . . . where, as here, the actions against such third parties have at least a conceivable effect upon the Debtors or implicate the interpretation or enforcement of this Court's orders.'") (citing *In re Chateaugay Corp.*, 201 B.R. at 66).[9]

### 2.    The New Jersey Plaintiffs Improperly Seek to Relitigate the Net Equity Issue

The New Jersey Plaintiffs are admittedly attempting to relitigate the net equity issue already determined by this Court, as demonstrated by their Complaint:

---

[9] The New Jersey Plaintiffs' efforts to distinguish *In re Adelphia Commc'ns Corp.*, 2006 WL 1529357; *In re AP Indus., Inc.*, 117 B.R. 789; *In re Johns-Manville Corp.*, 91 B.R. 225 (Bankr. S.D.N.Y. 1988*); In re Singer Co. N.V.*, 2000 WL 33716976 (Bankr. S.D.N.Y. Nov. 3, 2000), *aff'd in part*, 2002 WL 999273 (S.D.N.Y.), *adhered to on reconsideration*, 2002 WL 31040349 (S.D.N.Y.), *vacated*, 2002 WL 31251621 (S.D.N.Y. 2002); *Apostolou*, 155 F.3d 876; and *In re The 1031 Tax Group, LLC*, 397 B.R. 670 (Bankr. S.D.N.Y. 1996) miss the point.  While the facts of these cases differ, the point they stand for—that this Court can enjoin proceedings that intrude on this Court's jurisdiction—is not subject to question.  *See In re Dreier LLP*, 2010 WL 1707737 (Bankr. S.D.N.Y. Apr. 28, 2010) (affirming injunction of derivative actions and finding subject matter jurisdiction over such actions).

> The questions of law and fact common to the Class predominate
> over any questions affecting individual members because the issue
> of the proper determination of net equity is a central issue in
> determining all Class members' claims, and all Class members
> have suffered from the defendants' fraud and bad faith failure to
> pay insurance to Class members.

(Sheehan Aff., Ex. A, ¶ 40.)   Significantly, but for this Court's Net Equity Decision, the New

Jersey Plaintiffs would have no ability or need to bring the New Jersey Action.   By relitigating

their "legitimate expectations" in the New Jersey District Court, the New Jersey Plaintiffs seek to

recover the fictitious profits to which this Court has already determined they are not entitled.

Nowhere do the New Jersey Plaintiffs allege any special independent conduct that would allow

their recovery outside the auspices of this Court; rather, the New Jersey Action is entirely

derivative of the BLMIS liquidation proceeding, and accordingly, this Court has jurisdiction to

enjoin it.[10]   *See, e.g.*, *Fox*, 2010 WL 1740885, at *6–7; *In re Dreier*, 2010 WL 1707737, at *15;

*MacArthur*, 837 F.2d at 92–93.

Seeking such recovery runs afoul of the general principle that creditors of a bankruptcy

estate should not be permitted to recover preferentially to other creditors.   *See, e.g.*, *In re Keene*

*Corp.*, 164 B.R. at 849–54; *In re AP Indus., Inc.*, 117 B.R. at 801–02; *In re Johns-Manville*

*Corp.*, 91 B.R. at 228; *In re The 1031 Tax Group, LLC*, 397 B.R. at 684–85; *In re Singer*, 2000

WL 33716976, at *2; *Apostolou*, 155 F.3d at 876; *Baldwin-United Corp. v. Paine Webber*

*Group, Inc.* (*In re Baldwin-United Corp.*), 57 B.R. 759 (S.D. Ohio 1985).   Although the New

Jersey Plaintiffs attempt to distinguish these cases factually, the theme resounding from these

---

[10] Furthermore, the alleged "change in policy" by SIPC with respect to handling BLMIS customer claims as asserted
by the New Jersey Plaintiffs (see NJ Pl. Br. at 2) *arguendo* occurred in the BLMIS SIPA liquidation proceeding, and
thus issues relating to it are properly heard in this Court.  Indeed, there is currently a transfer motion pending in the
New Jersey Action which is *sub judice* before that court.  *See generally Canavan v. Harbeck*, Case No. 10 CV
00954 (D.N.J.), Dkt Nos. 1, *et seq.*.

cases remains clear—bankruptcy courts discourage self-help by creditors, and encourage the resolution of issues related to the administration of the bankruptcy estate in a single forum.

Moreover, seeking to relitigate the net equity issue threatens to unravel this Court's Net Equity Decision and conflicts with principles of collateral estoppel:

> The doctrine of collateral estoppel, or issue preclusion, bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992), *abrogated on other grounds by Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 115 S.Ct. 1061 (1995); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 n.5 (2d Cir. 2003)).   Courts have recognized that when considering the requirements of collateral estoppel, the interpretation of a "final" judgment is less stringent than in other contexts.  *Metromedia*, 983 F.2d at 366; *Yung v. Lee*, 432 F.3d 142, 147 (2d Cir. 2005) ("[T]he concept of finality for collateral estoppel purposes 'includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.'"); *Sherman v. Jacobson*, 247 F. Supp. 261 (S.D.N.Y. 1965) (finding that a ruling, held unappealable for lack of a final judgment, *was* a final judgment for purposes of applying collateral estoppel).   Thus, because this Court rendered an unconditional decision, definitively determining the appropriate calculation of net equity, the Net Equity Decision should be considered "final" for purposes of collateral estoppel.

The New Jersey Plaintiffs and their counsel took every opportunity to argue and reargue their position on net equity to this Court (*see* Exhibit A to Tr. Op. Br.), participating actively in the underlying SIPA Proceeding through the filing of customer claims and objecting to claims determinations.  (*See* April 9th Sheehan Aff., Exs. B, D and F; Dkt Nos. 506, 569, and 2119.)

The New Jersey Plaintiffs seek to relitigate the precise issue that this Court resolved in the Net Equity Decision—"the proper determination of net equity." (Sheehan Aff., Ex. A, ¶ 40.) This Circuit has recognized that a federal court may issue an injunction to prevent a party from relitigating issues already decided by the enjoining court. *See Covanta Onondaga Ltd. P'ship v. Onondaga County Res. Recovery Agency*, 318 F.3d 392, 398 (2d Cir. 2003) (recognizing that "[e]ven in the absence of a pattern of vexatious litigation, . . . a district court that has adjudicated the merits of a case may have authority to prevent relitigation.") (citing *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998) (discussing the authority of a district court under the All Writs Act to enjoin third party actions in other federal courts that seek to relitigate issues and therefore are barred by collateral estoppel)); *see also United States v. Int'l Bhd of Teamsters*, 728 F. Supp. 1032, 1042–44, 1048 (S.D.N.Y. 1990) (enjoining competing federal action essentially seeking to relitigate consent order).[11]

Accordingly, this Court should prevent the New Jersey Plaintiffs from relitigating the net equity issue, and enjoin them from proceeding with the New Jersey Action.

## III. THE DEFENDANTS' CROSS-MOTION TO DISMISS THE COMPLAINT SHOULD BE DENIED

The New Jersey Plaintiffs do not dispute the facts alleged in the Trustee's complaint. Rather, they argue that this Court lacks subject matter jurisdiction and, thus, the Trustee's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). However, as discussed above, this Court does have jurisdiction to adjudicate this matter, as the key question in determining this issue is whether the New Jersey Action could have "any conceivable effect" on the BLMIS proceeding—a broad standard which is certainly met here. The New Jersey

---

[11] Courts repeatedly have recognized that the All Writs Act is analogous to a bankruptcy court's injunction authority under § 105. *See In re Johns-Manville Corp.*, 97 B.R. 174, 178 (Bankr. S.D.N.Y. 1989) (Lifland, J.); *LTV Corp. v.*

Plaintiffs also assert that the Trustee's claims seeking (1) enforcement of the automatic stay and other applicable stays and a declaration that the New Jersey Action is void *ab initio* (2) an order enjoining the New Jersey Plaintiffs, and those acting in concert or participation with them, or on their behalf, and all defendants, pursuant to section 105(a) of the Bankruptcy Code, from further prosecuting the New Jersey Action, or any other actions against the SIPC Defendants, should be dismissed pursuant to Rule 12(b)(6).    As discussed in the Trustee's Opening Brief and as set forth further above, the New Jersey Plaintiffs seek to litigate the net equity issue outside of this Court, which would substantially interfere with the orderly administration of the BLMIS liquidation proceeding and is a violation of the automatic stay.    Further, as outlined herein and in the Trustee's Opening Brief, section 105(a) may be used broadly to protect judgments entered by this Court and to protect its jurisdiction.    Thus, for the same reasons the injunctive and declaratory relief sought should be granted, the New Jersey Plaintiffs' motion to dismiss should be denied.

---

*Miller* (*In re Chateaugay Corp.*), 109 B.R. 613 (S.D.N.Y. 1990).

## **CONCLUSION**

The Trustee respectfully requests that the New Jersey Plaintiffs, anyone acting on their

behalf or in concert or participation with them, and all defendants, be enjoined from proceeding

with the New Jersey Action, or any other actions against the SIPC Defendants; that the Court

declare the action to be in violation of stays under the Bankruptcy Code and SIPA and,

accordingly, void *ab initio*; and deny the New Jersey Plaintiffs' motion to dismiss.


Dated:  New York, New York
           June 16, 2010

                                                    *s/Keith R. Murphy*
                                                    Baker & Hostetler LLP
                                                    45 Rockefeller Plaza
                                                    New York, New York 10111
                                                    Telephone: (212) 589-4200
                                                    Facsimile: (212) 589-4201
                                                    David J. Sheehan
                                                    Email: dsheehan@bakerlaw.com
                                                    Deborah H. Renner
                                                    Email: drenner@bakerlaw.com
                                                    Keith R. Murphy
                                                    Email: kmurphy@bakerlaw.com
                                                    Amy E. Vanderwal
                                                    Email: avanderwal@bakerlaw.com
                                                    Michelle K. Marck
                                                    Email: mmarck@bakerlaw.com

                                                    *Attorneys for Irving H. Picard, Trustee for the*
                                                    *Substantively Consolidated SIPA Liquidation*
                                                    *of Bernard L. Madoff Investment Securities*
                                                    *LLC and Bernard L. Madoff*

300092456

New York Southern Live System
08-01789-cgm    Doc 4169-18    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit O    Page 1 of 7
to the Chaitman Decl.    Pg 41 of 74

PENAP

# U.S. Bankruptcy Court
## Southern District of New York (Manhattan)
## Adversary Proceeding #: 10-03200-brl

*Assigned to:* Judge Burton R. Lifland                                    *Date Filed:* 04/09/10
*Demand:*

*Nature[s] of Suit:*  72 Injunctive relief - other

**Plaintiff**

-----------------------

**Irving H. Picard, Trustee for the**              represented by **David J. Sheehan**
**Liquidation of Bernard L. Madoff**                              Baker & Hostetler LLP
**Investment Securities LLC**                                     45 Rockefeller Plaza
                                                                  New York, NY 10111
                                                                  212 589 4200
                                                                  Fax : 212 589 4201
                                                                  Email: dsheehan@bakerlaw.com

                                                                  **Keith R. Murphy**
                                                                  Baker & Hostetler LLP
                                                                  45 Rockefeller Plaza
                                                                  New York, NY 10111
                                                                  212-589-4200
                                                                  Fax : 212-589-4201
                                                                  Email: kmurphy@bakerlaw.com

V.

**Defendant**

--------------------------

**Lissa Canavan, Individually and to the**         represented by **Helen Chaitman**
**extent she purports to represent a**                            Becker & Poliakoff, LLP
**class of those similarly situated**                             45 Broadway
                                                                  New York, NY 10006
                                                                  212-599-3322
                                                                  Fax : 212-557-0295
                                                                  Email: HChaitman@becker-
                                                                  poliakoff.com

                                                                  **Peter W. Smith**
                                                                  Becker & Poliakoff. LLP
                                                                  45 Broadway
                                                                  New York, NY 10006
                                                                  212-955-3322
                                                                  Email: psmith@becker-poliakoff.com

**Leslie Goldsmith, individually and to**          represented by

the extent she purports to represent a
class of those similarly situated

**Helen Chaitman**
(See above for address)

**Peter W. Smith**
(See above for address)

**Judith Kalman, individually and to
the extent she purports to represent a
class of those similary situated**

represented by **Helen Chaitman**
(See above for address)

**Peter W. Smith**
(See above for address)

| Filing Date | # | Docket Text |
|---|---|---|
| 04/09/2010 | 1 | Complaint against Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated, Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated, Judith Kalman, individually and to the extent she purports to represent a class of those similary situated . Nature(s) of Suit: (72 (Injunctive relief - other)) Filed by Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Murphy, Keith) (Entered: 04/09/2010) |
| 04/09/2010 | 2 | Motion for Temporary Restraining Order /*Memorandum of Law in Support of Trustee's Application For Preliminary Injunction, Enforcement of Stay, Declaration That Canavan, Goldsmith and Kalman Action is Void Ab Initio, and Temporary Restraining Order* filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Attachments: # 1 Appendix A) (Murphy, Keith) (Entered: 04/09/2010) |
| 04/09/2010 | 3 | Affidavit *in Support of the Trustee's Application For Preliminary Injunction, Enforcement of Automatic Stay, Declaration That Canavan, Goldsmith, and Kalman Action is Void Ab Initio And Temporary Restraining Order* (related document(s) 2 ) filed by David J. Sheehan on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J# 11 Exhibit K# 12 Exhibit L# 13 Exhibit M# 14 Exhibit N# 15 Exhibit O# 16 Exhibit P# 17 Exhibit Q# 18 Exhibit R# 19 Exhibit S# 20 Exhibit T# 21 Exhibit U# 22 Exhibit V) (Sheehan, David) (Entered: 04/09/2010) |
| | | Summons with Notice of Pre-Trial Conference issued by Clerk's Office with Pre-Trial Conference set for 5/25/2010 at 10:00 AM at Courtroom 623 (BRL), Answer due by 5/13/2010, (Campbell, |

| 04/13/2010 | 4 | Tiffany) (Entered: 04/13/2010) |
| --- | --- | --- |
| 04/14/2010 | 5 | Order to Show Cause signed on 4/14/2010 As to why the Court should not (1) deem the New Jersey Action as in violation of the automatic stay provisions of Section 362 of the Bankruptcy Code and Section 78eee(b)(2)(B)(i) of SIPA and, thus, declare the New Jersey Action to be void ab initio; and (2) issue a Preliminary Injunction, pursuant to 11 U.S.C. Sections 362(a) and 105(a) and Bankruptcy Rule 7065, enjoining the New Jersey Plaintiffs and those acting in concert or participation with them, or on their behalf, and all defendants, from proceeding with their litigation in the New Jersey Action (related document(s) 2 ). With hearing to be held on 5/18/2010 at 10:00 AM at Courtroom 623 (BRL). (Saenz De Viteri, Monica) (Entered: 04/14/2010) |
| 04/14/2010 | 6 | Certificate of Service *of Order to Show Cause, Memorandum of Law, Affidavit in Support, Complaint and Proposed Order* (related document(s) 1 , 3 , 2 , 5 ) filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Murphy, Keith) (Entered: 04/14/2010) |
| 04/15/2010 | 7 | Certificate of Service *of Order to Show Cause, Memorandum of Law, Affidavit in Support, Complaint and Proposed Order* (related document(s) 1 , 3 , 2 , 5 ) filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Murphy, Keith) (Entered: 04/15/2010) |
| 04/21/2010 | | Receipt of Complaint(10-03200) [cmp,cmp] ( 250.00) Filing Fee. Receipt number 635. Fee amount 250.00. (Slinger) (Entered: 04/21/2010) |
| 04/22/2010 | 8 | Summons Service Executed on Judith Kalman, individually and to the extent she purports to represent a class of those similary situated Answer Due: 05/13/2010; Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated Answer Due: 05/13/2010; Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated Answer Due: 05/13/2010. (related document(s) 1 , 4 ) filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Murphy, Keith) (Entered: 04/22/2010) |
| | | Notice of Appearance filed by Helen Chaitman on behalf of Judith Kalman, individually and to the extent she purports to represent a class of those similary situated, Leslie Goldsmith, |

| | | |
|---|---|---|
| 04/28/2010 | 9 | individually and to the extent she purports to represent a class of those similarly situated, Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated. (Chaitman, Helen) (Entered: 04/28/2010) |
| 04/28/2010 | 10 | Notice of Appearance filed by Peter W. Smith on behalf of Judith Kalman, individually and to the extent she purports to represent a class of those similarly situated, Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated, Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated. (Smith, Peter) (Entered: 04/28/2010) |
| 05/04/2010 | 11 | So Ordered Stipulation Modifying Scheduling signed on 5/4/2010 (White, Greg) (Entered: 05/04/2010) |
| 05/05/2010 | 12 | Letter *to Hon. Judge Burton R. Lifland* filed by Peter W. Smith on behalf of Judith Kalman, individually and to the extent she purports to represent a class of those similary situated, Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated, Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated. (Smith, Peter) (Entered: 05/05/2010) |
| 05/05/2010 | 13 | Letter *to Hon. Burton R. Lifland (Doc. 12) with attachment* filed by Peter W. Smith on behalf of Judith Kalman, individually and to the extent she purports to represent a class of those similary situated, Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated, Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated. (Attachments: # 1 Exhibit Attachment)(Smith, Peter) (Entered: 05/05/2010) |
| 05/17/2010 | 14 | Order signed on 5/17/2010 Denying Discovery Sought by Defendants (related document(s) 12 , 13 ). (Saenz De Viteri, Monica) (Entered: 05/17/2010) |
| 05/18/2010 | 15 | So Ordered Stipulation signed on 5/18/2010 Between Lissa Canavan, Leslie Goldmith, and Judith Kalman, individually and to the extent they represent a class of those similarly situated and Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff. RE: Modifying Scheduling (related document(s) 11 , 5 ). With hearing to be held on 6/29/2010 at 10:00 AM at Courtroom 623 (BRL). (Saenz De Viteri, Monica) (Entered: 05/18/2010) |
| | | So Ordered Stipulation signed on 5/25/2010 Between Lissa |

New York Southern Live System
08-01789-cgm    Doc 4169-18    Filed 06/15/11    Entered 06/15/11 19:56:51    Exhibit O    Page 5 of 7
to the Chaitman Decl.    Pg 45 of 74

| | | |
|---|---|---|
| 05/25/2010 | 16 | Canavan, Leslie Goldmith, and Judith Kalman, individually and to the extent they represent a class of those similarly situated and Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff (related document(s) 11 , 5 ). RE: Modifying Scheduling. (Saenz De Viteri, Monica) (Entered: 05/25/2010) |
| 05/26/2010 | 17 | Opposition *Notice of Cross-Motion to Dismiss Complaint* (related document(s) 2 ) filed by Helen Chaitman on behalf of Judith Kalman, individually and to the extent she purports to represent a class of those similary situated, Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated, Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated. (Attachments: # 1 Exhibit Proposed Order) (Chaitman, Helen) (Entered: 05/26/2010) |
| 05/26/2010 | 18 | Memorandum of Law *Defendants' Memorandum of Law Opposing Trustee's Motion for an Injunction and Supporting Defendants' Cross-Motion to Dismiss the Complaint* filed by Helen Chaitman on behalf of Judith Kalman, individually and to the extent she purports to represent a class of those similary situated, Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated, Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated. (Chaitman, Helen) (Entered: 05/26/2010) |
| 05/26/2010 | 19 | Certificate of Service (related document(s) 18 , 17 ) filed by Helen Chaitman on behalf of Judith Kalman, individually and to the extent she purports to represent a class of those similary situated, Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated, Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated. (Chaitman, Helen) (Entered: 05/26/2010) |
| 06/16/2010 | 20 | Reply to Motion / *Reply Memorandum Of Law In Further Support Of Trustee's Application For Preliminary Injunction, Enforcement Of Stay, And Declaration That Canavan, Goldsmith And Kalman Action Is Void Ab Initio, And In Opposition To Defendants' Cross-Motion To Dismiss* filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Murphy, Keith) (Entered: 06/16/2010) |
| | | Affidavit of Service *by I. Rodriguez* (related document(s) 20 ) filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee |

New York Southern Live System
08-01789-cgm   Doc 4169-18   Filed 06/15/11   Entered 06/15/11 19:56:51   Exhibit O   Page 6 of 7
to the Chaitman Decl.   Pg 46 of 74

| | | |
|---|---|---|
| 06/18/2010 | [21](#) | for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Murphy, Keith) (Entered: 06/18/2010) |
| 06/23/2010 | [22](#) | Reply to Motion *Defendants' Reply Memorandum of Law in Further Support of Defendants' Cross-Motion to Dismiss the Complaint* (related document(s) [2](#) ) filed by Helen Chaitman on behalf of Judith Kalman, individually and to the extent she purports to represent a class of those similary situated, Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated, Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated. (Chaitman, Helen) (Entered: 06/23/2010) |
| 06/23/2010 | [23](#) | Certificate of Service (related document(s) [22](#) ) filed by Helen Chaitman on behalf of Judith Kalman, individually and to the extent she purports to represent a class of those similary situated, Leslie Goldsmith, individually and to the extent she purports to represent a class of those similarly situated, Lissa Canavan, Individually and to the extent she purports to represent a class of those similarly situated. (Chaitman, Helen) (Entered: 06/23/2010) |
| 06/25/2010 | [24](#) | Notice of Adjournment of Hearing *on Trustee's Application for Preliminary Injunction, Enforcement of Stay, and Temporary Restraining Order* (related document(s) [2](#) ) filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. with hearing to be held on 9/15/2010 at 10:00 AM at Courtroom 623 (BRL) (Murphy, Keith) (Entered: 06/25/2010) |
| 06/28/2010 | [25](#) | Affidavit of Service *of Notice of Adjournment* (related document (s) [24](#) ) filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Murphy, Keith) (Entered: 06/28/2010) |
| 07/15/2010 | [26](#) | Notice of Adjournment of Hearing */Notice of Adjournment of the Pre-Trial Conference to September 21, 2010* filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. with hearing to be held on 9/21/2010 at 10:00 AM at Courtroom 623 (BRL) (Murphy, Keith) (Entered: 07/15/2010) |
| 07/19/2010 | [27](#) | Affidavit of Service *of Notice of Adjournment of Pre-Trial Conference to September 21, 2010* (related document(s) [26](#) ) filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Murphy, Keith) (Entered: 07/19/2010) |
| | | Notice of Adjournment of Hearing *on Trustee's Application for* |

| 08/31/2010 | 28 | Preliminary Injunction, Enforcement of Stay, and Temporary Restraining Order (related document(s) 2 ) filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. with hearing to be held on 12/29/2010 at 10:00 AM at Courtroom 623 (BRL) (Murphy, Keith) (Entered: 08/31/2010) |
| --- | --- | --- |
| 09/02/2010 | 29 | Affidavit of Service of Notice of Adjournment of Hearing on Trustee's Application for Preliminary Injunction, Enforcement of Stay, and Temporary Restraining Order (related document(s) 2 ) filed by Keith R. Murphy on behalf of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. (Murphy, Keith) (Entered: 09/02/2010) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 12/05/2010 12:25:58 | | | |
| PACER Login: | bp2735 | Client Code: | madoff |
| Description: | Docket Report | Search Criteria: | 10-03200-brl Fil or Ent: filed Doc From: 0 Doc To: 99999999 Format: html |
| Billable Pages: | 4 | Cost: | 0.32 |

# EXHIBIT D

**Baker & Hostetler LLP**                    **Hearing Date and Time:  July 15, 2010 at 10:00 a.m.**
45 Rockefeller Plaza                          **Objection Deadline: June 24, 2010**
New York, NY 10111
Telephone: (212) 589-4219
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro No. 08-1789 (BRL) |
| Plaintiff, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-3114 (BRL) |
| Plaintiff, | |
| v. | |
| ADELE FOX, individually and to the extent she purports to represent a class of those similarly situated, and SUSANNE STONE MARSHALL, individually and to the extent she purports to represent a class of those similarly situated, | |
| Defendants. | |

### NOTICE OF TRUSTEE'S MOTION TO STRIKE ISSUE NUMBER FIVE
### AND RELATED DOCUMENTS

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Bankruptcy Procedure

8006, and upon the accompanying motion (the "Motion"), Appellee Irving H. Picard, Trustee,

through his undersigned counsel, will move this Court at the United States Bankruptcy

Courthouse at One Bowling Green, New York, New York, on **July 15, 2010 at 10:00 a.m.**, for

an Order: striking issue number five and three documents from the Designations of Items to be

Included in the Record and Statement of the Issues to be Presented on Appeal filed by Appellants

Adele Fox, individually and to the extent she purports to represent a class of those similarly

situated, and Susanne Stone Marshall, individually and to the extent she purports to represent a

class of those similarly situated.

**PLEASE TAKE FURTHER NOTICE** that written objections to the Motion must be

filed with the Clerk of the United States Bankruptcy Court, One Bowling Green, New York,

New York 10004 by no later than **4:00 p.m. on June 24, 2010** (with a courtesy copy delivered to

the Chambers of the Honorable Burton R. Lifland) and must be served upon (a) Baker &

Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn:

Deborah Renner, Esq. and Keith Murphy, Esq. and (b) the Securities Investor Protection

Corporation, 805 Fifteenth Street, NW, Suite 800, Washington, DC 20005, Attn: Kevin H. Bell,

Esq. Any objections must specifically state the interest that the objecting party has in these

proceedings and the specific basis of any objection to the Motion.

Dated: New York, New York        By: ____*s/Keith R. Murphy*____
      June 9, 2010        David J. Sheehan
                        Email: dsheehan@bakerlaw.com
                        Deborah H. Renner
                        Email: drenner@bakerlaw.com
                        Keith R. Murphy
                        Email: kmurphy@bakerlaw.com
                        Baker & Hostetler LLP

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and
Bernard L. Madoff*

300092265

**Baker & Hostetler LLP**

45 Rockefeller Plaza

New York, NY 10111

Telephone: (212) 589-4219

Facsimile: (212) 589-4201

**Hearing Date and Time: July 15, 2010 at 10:00 a.m.**
**Objection Deadline: June 24, 2010**

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro No. 08-1789 (BRL) |
| Plaintiff, | |
| | SIPA LIQUIDATION |
| v. | |
| | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-3114 (BRL) |
| Plaintiff, | |
| v. | |
| ADELE FOX, individually and to the extent she purports to represent a class of those similarly situated, and SUSANNE STONE MARSHALL, individually and to the extent she purports to represent a class of those similarly situated, | |
| Defendants. | |

## TRUSTEE'S MOTION TO STRIKE ISSUE NUMBER FIVE
## AND RELATED DOCUMENTS AND MEMORANDUM OF LAW IN SUPPORT[1]

Appellee Irving H. Picard, trustee (the "Trustee") for the substantively consolidated

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, and the estate of Bernard L. Madoff

individually, by and through his undersigned counsel, respectfully submits this motion (the

"Motion"), pursuant to Federal Rule of Bankruptcy Procedure 8006, seeking entry of an order,

substantially in the form annexed hereto as <u>Exhibit A</u>, striking issue number five ("Issue Five")

and three documents from the Designations of Items to be Included in the Record and Statement

of the Issues to be Presented on Appeal (the "Designations") filed by Appellants Adele Fox,

individually and to the extent she purports to represent a class of those similarly situated (the

"Fox Appellants"), and Susanne Stone Marshall, individually and to the extent she purports to

represent a class of those similarly situated (the "Marshall Appellants" and, collectively with the

Fox Appellants, the "Appellants").[2]

## PRELIMINARY STATEMENT

On May 3, 2010, this Court held, among other things, that the Fox and Marshall

Complaints violated the automatic stay in these proceedings, because no matter the nomenclature

for their causes of action, they were, in essence, seeking fraudulently transferred assets which are

property of the estate.  2010 WL 1740885 (Bankr. S.D.N.Y. May 3, 2010) at *7.  Accordingly,

---

[1] As there are no novel issues of law presented by this Motion, it is respectfully requested that the Court waive the requirement under Local Bankruptcy Rule 9013-1 that a separate memorandum of law be submitted in connection with the relief requested.

[2] The Fox Appellants and Marshall Appellants filed separate Designations in connection with the instant adversary proceeding (10-3114 (BRL)).  (Dkt Nos. 28, 30.)  Other than the exhibits identifying different clients, the Designations are identical in substance.   The Trustee's motion seeks to strike Issue Five and related documents to be included in the record from both of the Designations.  The Trustee is simultaneously filing a Counter-Designation of Items to be Included in the Record on Appeal.

this Court held that: "[w]hether sounding in bankruptcy, state law or common law, the claims asserted in the Florida Actions seek to redress a harm common to all BLMIS customer claimants and, consistent with the purposes of the automatic stay, belong exclusively to the Trustee." *Id.* at *6. Neither Fox and Marshall, the Trustee, nor the Court, raised or discussed whether the doctrine of *in pari delicto* bars the Trustee from pursuing Fox's and Marshall's causes of action, as Appellants now ask the District Court to consider. Not only was that issue never raised, it is a red herring precisely because whatever those causes of action were labeled, Fox and Marshall were barred from proceeding because they were seeking property of the estate. Fox and Marshall should not now be permitted to cloud the record and raise this argument on appeal.

Accordingly, the Trustee respectfully requests that Issue Five and related documents be stricken from appellate consideration.

## OPERATIVE FACTS

On April 28, 2010 and May 3, 2010, respectively, this Court entered an Order (the "Order") and a Memorandum Order and Decision Granting Trustee's Motion Pursuant to Bankruptcy Code Sections 362(a) and 105(a) and Bankruptcy Code Section 7065 for Enforcement of the Automatic Stay and for a Preliminary Injunction (the "Decision") in the above-captioned adversary proceeding. (Dkt Nos. 20, 22.) On May 12, 2010, Appellants filed a Notice of Appeal[3] of the Order and Decision. On May 26, 2010, Appellants filed the Designations in connection with the Notice of Appeal.

Issue Five, as proposed by the Appellants in their Designations, seeks appellate review of: "[w]hether the Bankruptcy Court erred by not determining that the trustee, Irving H. Picard, appointed in the Securities Investor Protection Act liquidation of Bernard L. Madoff Investment

---

[3] The Notice of Appeal was filed on behalf of both the Fox Appellants and the Marshall Appellants who were, at the time, represented by the same counsel. Subsequently, the Fox Appellants retained separate counsel. (Dkt No. 27.)

Securities LLC, was barred by the doctrine of *in pari delecto* [*sic*] from pursuing the claims

asserted by the Appellants in their complaints in Florida federal court against non-debtor third

parties." This issue was never raised below, and is thus improper on appeal.

## ARGUMENT

### ISSUE FIVE AND RELATED DOCUMENTS MUST BE STRICKEN FROM THE DESIGNATIONS

**A.    Jurisdiction and Forum**

This Court has jurisdiction to over this adversary proceeding pursuant to 28 U.S.C. §

1334 and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4). This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).

This Court is the proper forum in which to determine the propriety of questions on appeal

and the contents of the record on appeal. *See*, *e.g.*, *In re Ames Dep't Stores, Inc.*, 320 B.R. 518,

520 (Bankr. S.D.N.Y. 2005) ("[t]his Court is the appropriate forum to resolve the objection.

[Bankruptcy Rule] 8006 governs the designation of the record in a bankruptcy appeal. Like Fed.

R. App. P. 10 (from which Bankruptcy Rule 8006 was adopted), Bankruptcy Rule 8006 provides

for the designation of the record to be filed in the lower court, for objections likewise to be filed

in the lower court, and for the record thus to be assembled before transmission to the appellate

court"); *see also In re National Century Financial Enterprises, Inc., et al.*, 334 B.R. 907, 913-

914 (Bankr. S.D. Ohio 2005) (citing *Ames* and agreeing with the majority position that authority

to strike rests with the bankruptcy court which "assists the appellate process").

**B.    Cause Exists to Strike Issue Number Five and Related Documents**

Just prior to the hearing before this Court on the Trustee's motion to enforce the

automatic stay, and in an effort to show the Court that they were not barred by that stay, Fox and

Marshall submitted a sur-reply letter to the Court in which they relied on *Highland Capital*

*Mgmt, LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petroleum, Inc.*), 522 F.3d 575 (5th

Cir. 2008), to contend that they had a separate claim against the Picowers arising from the

general conduct alleged by the Trustee.  Significantly, the Court held that "the injuries alleged, as

well as the purported source of those injuries, are common to BLMIS and all BLMIS customers.

Moreover, even if the Florida Plaintiffs' claims assert direct injuries, they would nonetheless be

deemed property of the estate under Seven Seas because they seek to recover fraudulently

transferred funds."  *Fox*, 2010 WL 1740885, at *7.  Accordingly, this Court held that: "[w]hether

sounding in bankruptcy, state law or common law, the claims asserted in the Florida Actions

seek to redress a harm common to all BLMIS customer claimants and, consistent with the

purposes of the automatic stay, belong exclusively to the Trustee."  *Id.* at *6.

The clear and resounding holding of the *Fox* decision is that Fox and Marshall violated

the automatic stay because they sought estate assets through their actions.  *Id.* at *7.  Whether the

Trustee would be barred by *in pari delicto* from pursuing Fox's and Marshall's disguised

fraudulent transfer claims was never addressed.  Indeed, that issue is not relevant because the

Trustee does not have to show that he could pursue the exact same causes of action as Fox and

Marshall for the automatic stay or an injunction to apply.

By including Issue Five, Appellants improperly seek to interject an issue on appeal which

is not relevant.  The issue of whether the doctrine of *in pari delicto* bars the Trustee from

pursuing Fox's and Marshall's specific causes of action against the defendants named in *Fox v.

Picower, et al.* (Adv. Pro. No. 10-80252) and *Marshall v. Picower, et al.* (Adv. Pro. No. 10-

80254) was not presented to, or decided by, this Court, and therefore it is not preserved for

appeal and should be stricken from the Designations.  *See*, *e.g.*, *In re West Mountain Sales, Inc.*,

1990 WL 120961, at *2 (N.D.N.Y. Aug. 16, 1990) (affirming bankruptcy court decision to strike

certain pleadings, as the "designated documents represented an attempt…to inject new issues and advance additional evidence that was not properly introduced and developed…at the time the matter was initially presented for decision to the court").

Further, any documents designated by the Appellants to be included in the record on appeal that relate to or support any arguments with respect to Issue Five should be stricken from the Designations, including Docket entries 195-197 of Adversary Proceeding 08-1789 (BRL).

*Id.*

**CONCLUSION**

The Trustee respectfully requests that the Court enter an order, substantially in the form

attached hereto as Exhibit A, striking Issue Five and related documents from consideration on

appeal and granting such other and further relief as the Court deems appropriate.

Dated:  New York, New York          Respectfully submitted,
       June 9, 2010

                                       *s/Keith R. Murphy*
                                  David J. Sheehan
                                  Email:  dsheehan@bakerlaw.com
                                  Deborah H. Renner
                                  Email:  drenner@bakerlaw.com
                                  Keith R. Murphy
                                  Email:  kmurphy@bakerlaw.com
                                  Baker & Hostetler LLP
                                  45 Rockefeller Plaza
                                  New York, New York 10111
                                  Telephone: (212) 589-4200
                                  Facsimile:  (212) 589-4201

                                  *Attorneys for Irving H. Picard, Trustee*
                                  *for the Substantively Consolidated SIPA*
                                  *Liquidation of Bernard L. Madoff*
                                  *Investment Securities LLC and*
                                  *Bernard L. Madoff*

300091990

**<u>Exhibit A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro No. 08-1789 (BRL) |
| Plaintiff, | |
| v. | SIPA LIQUIDATION |
| | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant, | |

In re:

BERNARD L. MADOFF,

Debtor.

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-3114 (BRL) |
| ADELE FOX, individually and to the extent she purports to represent a class of those similarly situated, and SUSANNE STONE MARSHALL, individually and to the extent she purports to represent a class of those similarly situated, | |
| Defendants. | |

## [PROPOSED] ORDER GRANTING TRUSTEE'S MOTION TO STRIKE ISSUE NUMBER FIVE AND RELATED DOCUMENTS

This matter comes before the court on the motion (the "Motion") of Irving H. Picard,

Trustee, to strike issue number five ("Issue Five") and related documents from the Designations

of Items to be Included in the Record and Statement of the Issues to be Presented on Appeal (the

"Designations") filed by Appellants Adele Fox, individually and to the extent she purports to represent a class of those similarly situated, and Susanne Stone Marshall, individually and to the extent she purports to represent a class of those similarly situated.

Upon the matters presented to the Court, it is hereby ORDERED that:

1.    The Trustee's Motion is GRANTED;

2.    Issue Five is stricken from the Designations; and

3.    The following three documents are stricken from the Designations to the extent that they are used to support any argument with respect to Issue Five:

   A.    Notice of Hearing /Notice of Joint Motion For Entry of Order Substantively Consolidating the Estate of Bernard L. Madoff Into the SIPA Proceeding of Bernard L. Madoff Investment Securities LLC (Adv. Pro. No. 08-1789 (BRL); Dkt No. 195).

   B.    Memorandum of Law in Support of Joint Motion For Entry of Order Substantively Consolidating the Estate of Bernard L. Madoff Into the SIPA Proceeding of Bernard L. Madoff Investment Securities LLC (Adv. Pro. No. 08-1789 (BRL); Dkt No. 196).

   C.    Affidavit of Michael Slattery, Jr. In Support of Joint Motion of Trustee and Securities Investor Protection Corporation For an Order Substantively Consolidating the Estate of Bernard L. Madoff With the SIPA Proceeding of Bernard L. Madoff Investment Securities LLC (Adv. Pro. No. 08-1789 (BRL); Dkt No. 197).

Entered this _____ day of June, 2010.

_____
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT E

**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro No. 08-1789 (BRL) |
| Plaintiff, | |
| v. | SIPA LIQUIDATION |
| | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-3114 (BRL) |
| Plaintiff, | |
| v. | |
| ADELE FOX, individually and to the extent she purports to represent a class of those similarly situated, and SUSANNE STONE MARSHALL, individually and to the extent she purports to represent a class of those similarly situated, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S**
**MOTION TO STRIKE ISSUE NUMBER FIVE AND RELATED DOCUMENTS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    Issue Five and Related Documents Must be Stricken From Consideration on
        Appeal ........................................................................................................... 2

I.     Cause Exists to Strike Issue Number Five and Related Documents................................ 2

    A.    Issue Number Five Is Irrelevant and Was Never Raised Below, and Should
           Therefore Be Stricken ........................................................................................... 2

    B.    This Court Should Strike Items Designated in the Record That Relate to
           Issue Number Five ................................................................................................. 4

II.    This Court Has Authority to Strike Issues Designated on Appeal.................................... 5

CONCLUSION.......................................................................................................................... 8

# TABLE OF AUTHORITIES

Page

**Cases**

*Castleman v. Liquidating Tr.*, 2007 WL 2492792 (N.D.N.Y. Aug. 28, 2007) ............................ 2

Consol. Edison Co. of N.Y., Inc. v. UGI Utilities, Inc., 423 F.3d 90 (2d Cir. 2005) ................... 3

*DeLorean Mfg. Co. v. The First Nat'l Bank of Glens Falls* (*In re West Mountain Sales, Inc.*), 1990 WL 120961 (N.D.N.Y. Aug. 16, 1990) .............................................. 6, 7

*Food Distribution Ctr. v. Food Fair, Inc.* (*In re Food Fair, Inc.*), 15 B.R. 569 (Bankr. S.D.N.Y. 1981) ........................................................................................ 6, 7

Fun-damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993 (2d Cir. 1997) .......................... 3

*Klein v. Civale & Trovato, Inc.* (*In re Lionel Corp.*), 29 F.3d 88 (2d Cir. 1994) ........................ 2

*NWL Holdings, Inc. v. Eden Ctr., Inc.* (*In re Ames Dep't Stores, Inc.*), 320 B.R. 518 (Bankr. S.D.N.Y. 2005) ........................................................................ 5, 6, 7

*Picard v. Fox* (*Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*), 429 B.R. 423 (Bankr. S.D.N.Y. 2010) ........................................................... 3, 4

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) ................................... 3

**Statutes**

11 U.S.C. § 105(a) ........................................................................................................ 3

15 U.S.C. § 78eee(b)(2)(A)(i) ....................................................................................... 3

15 U.S.C. § 78eee(b)(4) ................................................................................................ 3

15 U.S.C. §§ 78aaa *et seq.* .......................................................................................... 1

28 U.S.C. § 1334 ........................................................................................................... 3

**Rules**

Fed. R. App. P. 10 ........................................................................................................ 6

Fed. R. App. P. 10(e) ................................................................................................... 6

Fed. R. Bankr. P. 8006 .............................................................................................. 1, 6

Appellee Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, and the estate of Bernard L. Madoff individually, respectfully submits this reply memorandum of law in support of the Trustee's Motion to Strike Issue Number Five and Related Documents (the "Motion") pursuant to Federal Rule of Bankruptcy Procedure 8006, seeking the entry of an order, substantially in the form annexed to the Motion as <u>Exhibit A</u>, striking issue number five ("Issue Number Five") and related documents from the Designations of Items to be Included in the Record and Statement of the Issues to be Presented on Appeal (the "Designations") filed by Appellant Adele Fox, individually and to the extent she purports to represent a class of those similarly situated (the "Fox Appellants"), and filed by Appellant Susanne Stone Marshall, individually and to the extent she purports to represent a class of those similarly situated (the "Marshall Appellants" and, collectively with the Fox Appellants, the "Appellants").

## PRELIMINARY STATEMENT

The Trustee moved to strike Issue Number Five—pertaining to *in pari delicto*—and related documents from consideration on appeal because Appellants never raised the issue of *in pari delicto* before this Court. In response, Appellants concede that they never raised the issue below. However, they contend that they may nevertheless raise the issue on appeal because *in pari delicto* is a matter of subject matter jurisdiction which may never be waived. Further, Appellants argue that in any event, the Bankruptcy Court is not the appropriate court to decide the issue of what is properly before the District Court. Appellants' arguments have no merit.

As to subject matter jurisdiction, no matter how Appellants characterize it, the doctrine of *in pari delicto* has no bearing on whether the Trustee has standing to bring his claims for declaratory and equitable relief against Appellants, and whether this Court has subject matter

jurisdiction to preside over the Trustee's claims.  Moreover, as to whether this Court can decide

what issues are properly before the District Court on appeal, this Court clearly has the authority

to preclude Appellants from injecting new issues on appeal.

Accordingly, because Appellants failed to raise Issue Number Five before appeal, the

Trustee respectfully requests that this Court strike it from Appellants' Designations, along with

any related documents submitted by Appellants in support.

**ARGUMENT**

**ISSUE FIVE AND RELATED DOCUMENTS MUST BE STRICKEN FROM
CONSIDERATION ON APPEAL**

**I.      Cause Exists to Strike Issue Number Five and Related Documents**

**A.      Issue Number Five Is Irrelevant and Was Never Raised Below, and Should
Therefore Be Stricken**

It is well-established in this and other jurisdictions that a party's failure to raise an issue

before a lower court results in a waiver of that party's ability to raise the issue on appeal.  *See,
e.g.*, *Klein v. Civale & Trovato, Inc.* (*In re Lionel Corp.*), 29 F.3d 88, 92 (2d Cir. 1994) (refusing

to consider one of appellant's arguments that had not been raised in the bankruptcy court);

*Castleman v. Liquidating Tr.*, 2007 WL 2492792, *10 (N.D.N.Y. Aug. 28, 2007) (holding the

same).

In an effort to avoid this clear legal principle and portray Issue Number Five as somehow

relevant to this adversary proceeding, Appellants mischaracterize the issue as a challenge to the

Court's subject matter jurisdiction.  However, Appellants' argument is plainly incorrect.  There

is little question that the Court's subject matter jurisdiction over this adversary proceeding exists

pursuant to 28 U.S.C. § 1334; 15 U.S.C. § 78eee(b)(2)(A)(i) and (b)(4), and 11 U.S.C. § 105(a), and Appellants' arguments do nothing to challenge this authority. [1]

Issue Number Five requests that the District Court review "[w]hether the Bankruptcy Court erred by not determining that the trustee . . . was barred by the doctrine of *in pari delecto* [*sic*] from pursuing the claims asserted by the Appellants in their complaints in Florida federal court against non-debtor third parties." (Dkt No. 28.)   However, whether the Trustee would hypothetically have standing to bring the exact same causes of action against the Picower Defendants that Appellants asserted in their Florida Actions was never an issue before this Court. Moreover, whether the Trustee has such hypothetical standing to bring the Appellants' claims is entirely irrelevant to whether the Trustee has standing to pursue his claims for declaratory and injunctive relief against Appellants in this adversary proceeding.

In granting the Trustee's request for a preliminary injunction, this Court recognized that "[e]ven if the Florida Plaintiffs' claims assert direct injuries, they would nonetheless be deemed property of the estate . . . because they seek to recover fraudulently transferred funds." *Picard v. Fox* (*Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*), 429 B.R. 423, 433 (Bankr. S.D.N.Y. 2010).   Moreover, any injury that the Florida Plaintiffs could assert, would necessarily be an injury generalized to all of BLMIS's customers:

> . . . [T]he Florida Actions seek to redress the depletion of the BLMIS customer property fund, a harm that derivatively injures all customer claimants in the BLMIS liquidation.  In no way were the Florida Plaintiffs in privity with the Picower Defendants; rather,

---

[1] Appellants cite *Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90 (2d Cir. 2005) and *Fun-damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993 (2d Cir. 1997) in support of the proposition that "standing is jurisdictional and challenges to jurisdiction are never waived." (Fox Appellants' Br. 8.) Although Appellants may be correct in their reiteration of this general legal principle, the Trustee's standing to bring his claims against Appellants in this adversary proceeding is not in question.  The application of *in pari delicto* in this case does not challenge the Court's subject matter jurisdiction over the Trustee's application for a preliminary injunction, and was therefore waived.  Accordingly, *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991), is also inapposite, among other reasons, as it has nothing to do with the Trustee's standing in this action.

> they were directly invested with BLMIS.  Nowhere do the Florida
> Plaintiffs contend that the Picower Defendants owed a separate
> duty, or caused a separate harm, particularly to them.

*Id.* at 431–32.  Thus, the issue facing the Court was whether the Appellants' purported class

actions improperly sought to recover fraudulently transferred property—not whether the Trustee

could have asserted the exact same causes of action as Appellants.  Indeed, no matter how the

causes of action were articulated—no matter what nomenclature was applied—the Court held

that, at bottom, the causes of action sought fraudulently transferred property, and that the Trustee

had exclusive standing to seek the recovery of those funds.  *Id.* at 430–31.  Indeed, this Court

held:

> While their causes of action may differ in name, the Florida
> Plaintiffs seek to recover the very funds sought by the Trustee
> through his avoidance actions.  The Florida Actions thus have the
> potential to substantially undermine this Court's jurisdiction, as
> further prosecution could ultimately result in another court's
> determining how potential estate funds are distributed among
> certain BLMIS customers.  This is particularly alarming given that
> any judgment awarded to the Florida Plaintiffs would exceed their
> entitlement to BLMIS distribution under SIPA and this Court's Net
> Equity Decision.

*Id.* at 436.

Not only have Appellants waived their ability to designate Issue Number Five for appeal

by failing to previously raise it before this Court, but it is apparent that this issue is entirely

irrelevant to this adversary proceeding and the Court's subject matter jurisdiction over it.  Thus,

this Court should reject the Appellants' convoluted attempt to insert new issues on appeal, and

accordingly, should strike Issue Number Five from their Designations.

**B.**    **This Court Should Strike Items Designated in the Record That Relate to
Issue Number Five**

In addition to striking Issue Number Five, this Court also should strike any items that

Appellants designated for the record on appeal that relate to or support any arguments with

4

respect to Issue Number Five.  Appellants explicitly concede that the Court has the authority to do so, stating that "[t]he determination of motions related to the contents of the record on an appeal may be considered to be 'in aid of the appeal' and within the province of the trial court." (Fox Appellants' Br. 4.)

Appellants challenge the grounds on which the Trustee requests that certain documents be stricken.  (*Id.* at 9.)  This challenge is disingenuous and belied by their appellate brief. Indeed, the Trustee specifically identified the Consolidation Motion papers (Docket entries 195–197 of Adversary Proceeding 08-1789 (BRL)) as being inappropriately included in the Designations, and additionally requested that the Court strike any other items improperly included for purposes of supporting Issue Number Five.  (Trustee's Br. 6.)  While Appellants urge that the inclusion of the Consolidation Motion papers is appropriate because they address the "substantive consolidation of the Madoff and BLMIS cases" (Fox Appellants' Br. 10), the true purpose of inclusion of these documents is made clear in Appellants' own brief—the Appellants *actually use* the Consolidation Motion papers in their appellate brief filed in the District Court directly  to support their arguments relating to Issue Number Five and for that issue alone.  (Fox Appellants' Br. 17 n.7.)  Thus, Appellants cannot, in good faith, preserve this document for designation in the record by asserting that it is generally relevant to the main underlying SIPA proceeding.

## II.    This Court Has Authority to Strike Issues Designated on Appeal

Contrary to Appellants' arguments, this Court is the appropriate forum in which to resolve the present dispute and to determine whether to strike Issue Number Five and corresponding documents from Appellants' Designations.  *See, e.g.*, *NWL Holdings, Inc. v. Eden Ctr., Inc.* (*In re Ames Dep't Stores, Inc.*), 320 B.R. 518, 520 (Bankr. S.D.N.Y. 2005); *DeLorean*

*Mfg. Co. v. The First Nat'l Bank of Glens Falls* (*In re West Mountain Sales, Inc.*), 1990 WL 120961 (N.D.N.Y. Aug. 16, 1990).

Appellants expressly concede that this Court has authority to strike items designated in the record. However, they attempt to distinguish that authority from that of striking issues stated for appeal. (*See* Fox Appellants' Br. 4–5.) Such a distinction is unfounded, and Appellants cite no authority in support of their position. Cases recognizing a bankruptcy court's authority to strike items designated in the record glean this authority from Federal Rule of Appellate Procedure 10—the rule from which Federal Rule of Bankruptcy Procedure 8006 is derived. *See, e.g.*, *In re Ames*, 320 B.R. at 520; *Food Distribution Ctr. v. Food Fair, Inc.* (*In re Food Fair, Inc.*), 15 B.R. 569, 571 (Bankr. S.D.N.Y. 1981). Appellate Rule 10(e) explicitly provides that the trial court is the proper forum in which to resolve any disputes "about whether the record truly discloses what occurred in the district court." FED. R. APP. P. 10(e). Appellants assert, without supporting authority, that the rule enables a lower court to strike only items designated for the record—not *issues* designated as well. However, the plain language of the rule does not make this distinction, nor do Appellants point to any precedent indicating that the language of the rule should be interpreted as such.

Indeed, the reasoning behind investing a lower court with the authority to strike items designated in the record extends to a court's authority to strike issues designated as well. For example, in *In re West Mountain Sales, Inc.*, the district court upheld the bankruptcy court's decision to grant a motion to strike so as to prevent the appellant from, among other things, "inject[ing] new issues" on appeal. 1990 WL 120961 at *2. Although the appellee in that case had moved to strike certain pleadings from the designation of record on appeal and not a particular issue, the appellee's reason for moving to strike these pleadings is the same reason the

Trustee now requests this Court to strike Appellants' Issue Number Five—to prevent new issues from being injected on appeal. *Id.* If attempts to interject a *new issue* on appeal through the designation of the record has been held to be improper, it follows that the interjection of a new issue itself is also improper.

The "fundamental reason" for the bankruptcy court's authority to resolve disputes over the record "is that the bankruptcy court knows best what was before it and what it considered in making its ruling." *In re Ames*, 320 B.R. at 521. Just as this Court knows best what pleadings and other documents were before it, this Court knows best what *issues* were before it and what it considered in granting the Trustee's application for a preliminary injunction. Thus, this Court is the appropriate forum in which to determine the Trustee's Motion.

Appellants further challenge the Court's authority to rule on the Trustee's Motion by arguing that the docketing of the appeal with the District Court divested this Court of any jurisdiction over matters relating to the appeal. (Fox Appellants' Br. 4.) However, this argument makes no sense as Appellants concede that the Court nevertheless has the authority to strike items designated for the record. (*Id.*); *see also In re Ames*, 320 B.R. at 520 n.2 ("[T]he docketing of the appeal in the district court did not divest the bankruptcy court of jurisdiction to determine the contents of the record on appeal."); *In re Food Fair*, 15 B.R. at 571 ("The trial court may consider the dispute even after the record has been transmitted to the appellate court.").

Moreover, the Trustee believes that the Deputy Clerk of the United States Bankruptcy Court for the Southern District of New York opened the appeal and transmitted the record inadvertently, without realizing that the Trustee's Motion was pending before this Court. Certainly the Trustee cannot be penalized for this docketing error. Indeed, the District Court, in

recognizing the pending Motion, has agreed to suspend the appellate briefing schedule until after

this Court's ruling.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Trustee's opening papers, the

Trustee respectfully requests that the Court enter an order, substantially in the form attached to

the Motion as <u>Exhibit A</u>, striking Issue Number Five and related documents from consideration

on appeal and granting such other and further relief as the Court deems appropriate.

Dated:  New York, New York
       July 23, 2010

Respectfully submitted,

/s/ Keith R. Murphy
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Deborah H. Renner
Email:  drenner@bakerlaw.com
Keith R. Murphy
Email:  kmurphy@bakerlaw.com
Michelle K. Marck
Email:  mmarck@bakerlaw.com
Sarah C. Harris Weiss
Email:  sharrisweiss@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and
Bernard L. Madoff*

Of Counsel:

Jennifer A. Vessells
Baker & Hostetler LLP
Email:  jvessells@bakerlaw.com
Capital Square, Suite 2100
65 East State Street
Columbus, Ohio  43215
Telephone:  (614) 228-1541
Facsimile:  (614) 462-2616