**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman, Esq. (4266)
45 Broadway
New York, New York 10006
HCHAITMAN@BECKER-POLIAKOFF.COM
*Attorneys for Marsha Peshkin and over 800*
*Other Customers of Bernard L. Madoff*
*Investment Securities LLC as Listed on*
*Exhibit A*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | SIPA LIQUIDATION <br><br> Case No. 08-01789 (BRL) <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | Appeal No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR LEAVE TO APPEAL**

Pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8003, Marsha Peshkin and over 800 other investors ("Movants")[1] in Bernard L. Madoff Investment Securities LLC ("BLMIS") submit this memorandum of law in support of their motion for leave to appeal the June 1, 2011 order (the "Order") (Doc # 4125) of the bankruptcy court approving the applications for allowance of interim compensation and reimbursement of expenses of Irving H. Picard

---

[1] Movants are the Madoff customers listed on Exhibit A to the accompanying Declaration of Helen Davis Chaitman ("Chaitman Decl.").

(the "Trustee") and his counsel, Baker & Hostetler LLP ("B&H").[2] The Trustee and B&H were appointed at the request of the Securities Investor Protection Corporation ("SIPC") in the proceeding instituted on December 15, 2008, for the liquidation of BLMIS under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, et seq. ("SIPA").

## PRELIMINARY STATEMENT

In the largest financial fraud in history, in a case being watched by thousands of BLMIS victims around the world, the Trustee's law firm has proven itself to be the Goldman Sachs of the legal profession, engaging in proprietary lawyering while disregarding its fiduciary duties to the investors who are Madoff's victims.

In the Order, the bankruptcy court approved the Sixth Fee Application and granted B&H fees of $43,177,049.10 and the Trustee fees of $713,799.00 for the 123-day period from October 1, 2010, through January 31, 2011.[3] B&H is being compensated at the rate of $351,032.92 per day; the Trustee is being compensated at the rate of $5,803.24 per day, both including weekends and holidays.[4] Thus, with the Sixth Fee Application, the totals are as follows for a period of two years and six weeks:

| Interim Period | B&H's Compensation | Trustee's Compensation | Total Trustee & B&H Compensation |
|---|---|---|---|
| 12/15/08-4/30/09 | $14,662,319.83 | $759,228.75 | $15,421,548.58 |
| 5/1/09-9/30/09 | $21,279,101.85 | $835,605.00 | $22,114,706.85 |
| 10/1/09-1/31/10 | $23,884,085.25 | $671,591.25 | $24,555,676.50 |
| 2/1/10-5/31/10 | $33,981,534.45 | $601,202.25 | $34,582,736.70 |
| 6/1/10-9/30/10 | $38,522,476.35 | $684,659.25 | $39,207,135.60 |

---

[2] A copy of the Order is annexed as Exhibit B to the Chaitman Decl.

[3] *See* Sixth Fee App. ¶200, annexed as Exhibit C to the Chaitman Decl.

[4] *See id.*

| 10/1/10 – 1/31/11 | $43,177,049.10 | $713,799.00 | $43,890,848.10 |
|---|---|---|---|
| **TOTAL** | **$175,506,566.83** | **$4,266,085.50** | **$179,772,652.33** |

A small group of BLMIS investors represented by Becker & Poliakoff LLP objected to four of the five previous orders awarding fees in the amounts requested by the Trustee and B&H because of their disqualifying conflict of interest and lack of disinterestedness. The district court denied motions for leave to appeal the first and third fee orders on the ground that the fee orders were interlocutory. There has not yet been a decision on the motions for leave to appeal the second and fifth fee orders.

The present motion raises two legal issues which, we believe, compel review of the bankruptcy court's Order:

1.    First, throughout this case, the Trustee has affirmatively led the public to believe that he has not personally received as compensation even the Trustee's fees of $4,266,085.50 since his appointment. The Trustee stated at the hearing on his first fee application as follows:

> As noted at paragraph 33 of my application and contrary to the implication of certain objections that have been filed with the Court and before the press, the amounts that will be rewarded either today or at another time are going to be turned over to Baker Hostetler, the firm of which I am a partner. I want to emphasize I will not retain any portion of the award.[5]

Contrary to this representation, the Trustee disclosed for the first time on June 1, 2011 that, under his contract with B&H, he is paid a percentage of the **total** fees paid by SIPC to B&H.[6] Although he did not disclose his percentage, the Trustee's compensation arrangement constitutes a violation of Movants' due process rights because he is profiting by decisions he

---

[5] *See* 8/6/09 Hrg. Trans. 14:15-21, annexed as Exhibit D to the Chaitman Decl.

[6] *See* 06/01/11 Hrg. Trans. 32:20-23, annexed as Exhibit E to the Chaitman Decl.

3

takes in a quasi-official capacity. As the "decision-maker" for SIPC, a quasi-governmental agency, in this liquidation proceeding in which the Trustee has taken unprecedented positions under SIPA, the Trustee is acting in a quasi-governmental capacity.[7] As a quasi-governmental figure, he is not "'allowed to be a judge in his own cause because his interest would certainly bias his judgment and, not improbably, corrupt his integrity.'" *See Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2259 (2009) (quoting The Federalist No. 10, p. 59 (J. Cooke ed.1961) (J. Madison)) (litigant's due process rights are violated where judge accepted $3 million contribution to his election campaign from party litigant); *Withrow v. Larkin*, 95 S. Ct. 1456, 1464 (1975) (recognizing that due process concerns exist when "the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable); *Tumey v. State of Ohio*, 47 S. Ct. 437 (1927) (holding that compensation structure under which mayor-judge received salary supplement only upon convicting defendant violated of due process); *Aetna Life Ins. Co. v. Lavoie*, 106 S. Ct. 1580, 1587 (1986) (internal citations omitted) (emphasizing that proper inquiry is whether financial stake "would offer a possible temptation[,]" and not whether individual was actually influenced).

Thus, the Trustee's pecuniary interest raises a serious constitutional question that compels review by the district court. Indeed, Congressman Scott Garrett, the Chairman of the House Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises, has

---

[7] *See* Testimony of SEC Chairwoman Mary Shapiro at the March 10, 2011 Congressional hearing on the David Becker Conflict of Interest at 69 (admitting that the Trustee makes the decision to clawback from innocent investors), annexed as Exhibit F to the Chaitman Decl.; *see also* Carlyn Kolker and Christopher Scinta, Bloomberg, "Madoff Trustee Picard May Take Five Years to Pay Back Investors" dated January 21, 2009, at 1 (quoting SIPC's President Stephen Harbeck identifying the Trustee, among other things, as the decision-maker), annexed as Exhibit G to the Chaitman Decl.

4

called for the Government Accountability Office to investigate the Trustee's fee arrangement [8] and has publicly stated that he is concerned that the Trustee is violating the law:

> I am concerned that the trustee in the Madoff case is ignoring [SIPA] and failing to provide prompt assistance to those who have been thrust into financial chaos. He is taking positions on a wide range of issues that are contrary to [SIPA], the Bankruptcy Code, and federal and state laws that are intended to protect investors against bad acts on the part of their brokers.[9]

In this case, by taking the position that customers are not entitled to their last statement balances, Picard has justified his institution of 988 "clawback" suits against approximately 5,000 totally innocent, financially devastated investors in which he seeks to "claw back," for example, mandatory IRA withdrawals taken out by elderly investors in the six years prior to December 11, 2008. B&H has been paid tens of millions of dollars for prosecuting those clawback suits and Picard has received an undisclosed percentage of those fees. The conclusion is inescapable that the Trustee's financial stake in these massive legal fees has influenced his interpretation of the law.

2.      Second, in approving *carte blanche* each of the six fee applications, the bankruptcy court held that, under 15 U.S.C. Section 78eee(b)(5)(C), it has no authority to review the fee applications for honesty, efficiency, or reasonableness. SIPA section 78eee(b)(5)(C) provides that "[i]n any case in which . . . allowances are to be paid by SIPC without reasonable expectation of recoupment . . .and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC." Accompanying each fee application was a self-serving statement from both the Trustee and SIPC that

---

[8] *See* the June 3, 2011 press release and letter from Congressman Garrett to Mr. Gene L. Dodaro, Comptroller General of the United States Government Accountability Office, annexed as Exhibits H to the Chaitman Decl.

[9] See December 17, 2010 statement of Congressman Garrett at 1-2, annexed as Exhibit I to the Chaitman Decl.

5

there is no reasonable expectation that SIPC will be reimbursed for its administrative expenses and a statement from SIPC that it had recommended payment in full of the requested fees and expenses.

The record before the bankruptcy court clearly establishes that, contrary to the statements of the Trustee and SIPC, there is a "reasonable expectation" that SIPC will be reimbursed for its administrative expenses. The Trustee has recovered $9.8 billion and he has allowed claims of less than $6.9 billion, leaving an excess of $2.9 billion. Therefore, the bankruptcy court was obligated to scrutinize the fees.

And B&H's fees required close scrutiny. The record before the bankruptcy court is undisputed that B&H grossly padded their fees with respect to two matters in which Movants' counsel are directly adverse.[10] On this issue, the Trustee and B&H did not refute Movants' counsel's assertions. The implication is inescapable that B&H's fees were similarly padded with respect to other matters. Moreover, Movants expressed concern that:

> a. B&H was charging a mark-up on the time of a large number of temporary attorneys without making the required disclosures.
>
> b. B&H was passing on to SIPC substantial overhead expenses not properly chargeable to a client.[11]

Neither the Trustee nor B&H responded to any of these concerns in a substantive way. Movants pointed out that SIPC's acquiescence in these billing irregularities suggested that the Trustee and B&H were not disinterested.

---

[10] *See* Objection to the Sixth Application of Trustee and Baker & Hostetler LLP for Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses Incurred from October 1, 2010 Through January 31, 2011 (the "Objection") at ¶¶ 53-57, annexed as Exhibit J to Chaitman Decl.

[11] *See id.* at ¶¶ 63-65.

Under these circumstances, it was error for the bankruptcy court to accept, without scrutiny, the Trustee's and SIPC's self-serving assertion that SIPC has no reasonable expectation of reimbursement for its advances for professional fees, particularly in this case where the Trustee, for the first time in SIPC's history, has taken the position that more than half of the BLMIS' investors are general unsecured creditors, rather than "customers," and therefore will not receive any distribution until SIPC is fully reimbursed for its administrative expenses. 15 U.S.C. Section 78fff(e). Thus, the fees of the Trustee and B&H are coming out of the victims' pockets.

Under these unique circumstances, SIPA Section 78eee(b)(5)(C) does not relieve the bankruptcy court of its fundamental obligation to monitor the integrity of the proceedings before it. *See In re Plaza Hotel Corp*, 111 B.R. 882, 891 (Bankr. E.D. Cal. 1990).

## STATEMENT OF FACTS AND ARGUMENTS BELOW

**1. THE BANKRUPTCY COURT HAD AN OBLIGATION TO SCRUTINIZE THE SIXTH FEE APPLICATION FOR REASONABLENESS**

In the Objection, Movants made an offer of proof and requested an evidentiary hearing at which they could prove the facts asserted therein.[12] Neither the Trustee nor B&H refuted any of the facts set forth in the Objection, and the bankruptcy court denied Movants' request for an evidentiary hearing. Therefore, the facts in Movants' Objection are deemed admitted. *See, e.g., In re Drouin*, 1999 Bankr. LEXIS 1878, at *7 (Bankr. D.N.H. Nov. 19, 1999) (court based finding of fact on unrefuted offer of proof); *see also In re Miguel*, 30 B.R. 893, 894 (Bankr. E.D.CA 1983) (judgment granted to plaintiffs upon their offer of proof because of failure of defendants or their counsel to appear at trial); *Cucalon v. State*, 103 Misc. 2d 808, 811-12 (1980) (Ct. Claims 1980 (citing *Two Clinton Square Corp. v. Gorin Stores, Inc.*, 51 A.D.2d 643 (4th Dept. 1976))

---

[12] Chaitman Decl. Ex. J, Objection at 1-2. The Objection incorporated all prior objections, copies of which are annexed as Exhibits K through O to the Chaitman Decl.

(recognizing that, on plaintiff's motion for summary judgment, defendant's failure to address key facts in plaintiff's affidavit constitutes a tacit admission of those facts.)

Despite unrefuted evidence of unethical billing practices and concerns of violation of the BLMIS customers' due process rights, SIPC continues to approve the compensation requests of the Trustee and B&H *carte blanche*. In the Sixth Fee Application, the Trustee once again succeeded in stripping the bankruptcy court of its ability to review and analyze his and his firm's compensation by invoking the claim that SIPC will not be reimbursed. The following statement is contained in the Sixth Fee Application:

> The Trustee has determined, at this time, that he has no reasonable expectation that the general estate will be sufficient to make a distribution to creditors or pay any administrative expenses. The Trustee has been advised by SIPC that it concurs in this belief of the Trustee. Therefore, . . . the Trustee and B&H request that . . . the Court 'shall award the amounts recommended by SIPC.' (citation omitted).[13]

The falsity of the above statement is indisputable: As of June 3, 2011, the Trustee had determined 99.98% of all customer claims. He has allowed claims of $6,883,691,021 inclusive of SIPC advances of $794,890,347. <http://www.madofftrustee.com/Status.aspx>. Thus, if the Trustee has recovered more than $6,883,691,021, there is certainly a reasonable likelihood of SIPC's recovery of its advances.[14]

---

[13] Chaitman Decl. Ex. C, Sixth Fee App. ¶197-198.

[14] While the Trustee claims that he *may* allow claims up to $17.1 billion, there is no evidence that he will do so. In fact, the alleged claims are all the feeder funds that the Trustee has sued on various theories.

8

The trustee has recovered more than $9.8 billion. The Trustee states that the fund of customer property totals $7.6 billion.[15] In his calculation, however, the Trustee does not include $2.2 billion forfeited to the government by the Picowers, even though he previously represented that "every penny" of the $7.2 billion Picower settlement will be distributed to customers.[16] Thus, the Trustee has $9.8 billion in the fund of customer property and he has allowed claims of less than $6.9 billion, leaving an excess of $2.9 billion. To summarize:

| Fund of Customer property | | Allowed Customer Claims | |
| --- | --- | --- | --- |
| Description | Amount | Payee | Amount |
| Recoveries as of 9/30/2010 | $1,500,000,000 | BLMIS Customers' Net Equity Claims | $6,088,900,674 |
| Picower Family Settlement | $5,000,000,000 | SIPC's Subrogee Claim | $794,890,347 |
| Picower forfeiture to US | $2,200,000,000 | | |
| Shapiro Family Settlement | $550,000,000 | | |
| Union Bancaire Privee Settlement | $470,000,000 | | |
| Hadassah Settlement | $45,000,000 | | |
| Other Preference Settlements | $89,071,011 | | |
| **Fund of Customer Property: $9,854,071,011** | | **Customer Claims:** | **$6,883,791,021** |

Consequently, it was error for the bankruptcy court to refuse to scrutinize the fees and expenses requested.

---

[15] Motion for an Order Approving Initial Allocation of Property to the Fund of Customer Property and Authorizing an Interim Distribution to Customers (the "Interim Distribution Motion"), at ¶6, annexed as Exhibit P to the Chaitman Decl.

[16] *See* Press Release of Irving H. Picard, "$7.2 BILLION RECOVERY AGREEMENT WITH ESTATE OF JEFFRY PICOWER AND PICOWER-RELATED INVESTORS," dated December 17, 2010, available at http://madofftrustee.com/News.aspx. (the "Picower Press Release"), at 1, annexed as Exhibit Q to the Chaitman Decl.

9

**2.   THERE APPEARS TO BE AN UNHOLY ALLIANCE BETWEEN THE TRUSTEE AND SIPC IN BREACH OF THE TRUSTEE'S AND B&H'S FIDUCIARY DUTY TO BLMIS' INVESTORS**

It is indisputable that the Trustee owes a fiduciary duty to investors. *See In re Adler, Coleman Clearing Corp.*, 1998 Bankr. LEXIS 1076 (B. S.D.N.Y. Aug. 25, 1998) ("The parties agree that a SIPA trustee owes a fiduciary duty to the customers and creditors of a liquidating broker dealer akin to the fiduciary duty a bankruptcy trustee owes a debtor's estate and creditors"); *Germain v. The Connecticut National Bank,* 988 F. 2d 1323, 1330 n. 8 (2d Cir. 1993). A fiduciary duty is the highest duty imposed by law. *See Roberts v. Dayton Hudson Corp.*, 914 F. Supp. 1421, 1423 (N.D. Tex. 1996); *see also Enzo Biochem, Inc. v. Johnson & Johnson,* 1992 U.S. Dist. LEXIS 15723, at \*29 (S.D.N.Y. Oct. 15, 1992).

Similarly, the Trustee and his counsel must be disinterested, meaning that they do not have an interest materially adverse to a party in interest in the bankruptcy. *See In re Marvel Entertainment Group, Inc.,* 140 F. 3d 463, 476 (3d Cir. 1998); Collier Bankruptcy Manual § 101.13 ("professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration."); *In re Crivello,* 134 F. 3d 831, 835 (7th Cir. 1998)*; In re Cook,* 223 B.R. 782, 798 (10th Cir. BAP 1998); *In re BH & P, Inc.,* 119 B.R. 35, 42 (D.N.J. 1990); *In re Leslie Fay Cos.,* 175 B.R. 525, 532 (B. S.D.N.Y. 1994) (counsel removed from all new matters in case where counsel was investigating financial irregularities of debtor and did not disclose relationships with directors who were targets of investigation).

The disinterestedness of a trustee's counsel is "so crucial to the proper functioning of the bankruptcy system that a court may raise it and dispose of it whenever its sanctity is questioned."

*In re Vebeliunas,* 231 B.R. 181 (B. S.D.N.Y. 1999) (citing *In re Martin*, 817 F. 2d 175, 180 (1st Cir. 1978)). A "trustee/fiduciary must be free from any hint of bias," and "either an appearance of impropriety or a potential conflict of interest . . . is a viable cause for removal" of a trustee. *In re AFI Holding, Inc*., 355 B.R. 139 (9th Cir. BAP 2006) (affirming bankruptcy court's removal of Chapter 7 trustee).

Aside from the disinterestedness standard in bankruptcy, under the Rules of Professional Conduct, an attorney cannot represent adverse interests. *See* Rule 1.7(a) of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.7(a). An attorney must avoid even the "appearance of a conflict" pursuant to § 327(a) of the Bankruptcy Code. *See In re Hot Tin Roof,* 205 B.R. 1000, 1003 (1st Cir BAP 1997).

Here, B&H represents the Trustee who has a fiduciary duty to the investors. Yet, B&H has taken numerous positions which are adverse to the investors and financially beneficial to SIPC. Under these circumstances, B&H should not be paid any fees. *See In re Mercury*, 122 Fed. Appx. 528 (2d Cir. 2004) (affirming denial of compensation to firm that acted as counsel for debtors and counsel for trustee, where the attorneys acted in the interest of the trustee instead of debtors and incorrectly advised debtors regarding their rights to convert Chapter 7 filing to Chapter 11 filing). It also violates B&H's ethical obligations. *See* Rule 4.1 of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.32 ("In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person.")

In light of the serious issues that were brought to light in the Objection including, *inter alia*, B&H's fee padding and SIPC's willingness to acquiesce in B&H's fee-padding, the bankruptcy court had a duty to scrutinize the Trustee's and SIPC's basis for stating that there was no reasonable expectation for SIPC reimbursement. The circumstances surrounding SIPC's ap-

proval of the Sixth Fee Application create an appearance of impropriety and of a potential conflict of interest. Despite evidence that indicates, at best, gross inefficiency by the Trustee and his counsel with respect to the services rendered in this case, SIPC has consistently approved these compensation requests in full. It would appear that SIPC gives the Trustee and his counsel a blank check so long as the Trustee and B&H protect SIPC's economic interests, which are adverse to the investors.

SIPC's willingness to approve inappropriate compensation for the Trustee and his counsel, at a minimum, creates the appearance that the Trustee and his counsel are bound to serve the interests of SIPC, not the customers and creditors of this estate. Given the reach of this case and its vast impact on thousands of innocent victims, the bankruptcy court should have denied the compensation request until it was satisfied after full disclosure (1) that there was a legitimate basis for the Trustee's contention that there was no reasonable expectation of SIPC reimbursement, (2) that B&H was not engaged in fee padding, and (3) that the Trustee's compensation arrangement with B&H, which provides him with financial incentive to prolong and complicate resolution of the issues in the BLMIS liquidation, does not violate BLMIS customers' constitutional due process rights.

## STATEMENT OF QUESTIONS PRESENTED AND RELIEF SOUGHT

**QUESTION 1:** Does the fact that the Trustee receives a percentage of the total fees paid by SIPC to B&H violate the BLMIS customers' right to due process of law?

**QUESTION 2:** Did the bankruptcy court commit legal error in approving the Sixth Fee Application without considering the reasonableness or the appropriateness of the compensation requested where the Movants presented clear evidence that SIPC has a reasonable ex-

pectation of reimbursement and uncontested evidence that SIPC was approving B&H's padded fee requests *carte blanche.*

**RELIEF SOUGHT**:  Reversal of the Order and such other relief as the Court deems just and proper under the extraordinary circumstances of this case.

## ARGUMENT

### I. MOVANTS HAVE STANDING TO APPEAL

An appellant has standing to appeal a bankruptcy court order when he is "directly and adversely affected pecuniarily by" the challenged order. *Int'l Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 747 (2d Cir. 1991) (citations omitted). An appellant is directly and adversely affected pecuniarily by an order if it disposes of assets from a limited fund, to which there are competing claims. *See In re: CCB BES, Inc.*, 147 B.R. 219, 220 (D.Ore. 1992).

Here, all fees awarded by the Order have been paid by SIPC. Thus, the Order has disposed of nearly $200 million from a limited fund, the SIPC Fund, which the SEC Commissioner acknowledges to be inadequate to pay all customer claims.[17] In light of SIPC's insolvency, every dollar spent on fees to enrich the Trustee and B&H is a dollar that is not available to pay investors. Moreover, under SIPA, SIPC is reimbursed its administrative expenses before any unsecured creditors are paid. For the first time in SIPA's history, the Trustee has taken the position that more than half of BLMIS' customers do not have "customer" claims but do have gener-

---

[17] Transcript of SEC Commissioner Mary Schapiro's testimony before the House Subcommittee on Capital Markets, Insurance and Government-Sponsored Enterprises on July 14, 2009, annexed as Exhibit R to the Chaitman Decl.

13

al unsecured claims.[18] Thus, the Trustee is subordinating the claims of more than half the BLMIS customers to SIPC in direct violation of SIPA's provisions.

## II. THE COURT SHOULD GRANT LEAVE TO APPEAL

This Court has broad discretion to grant leave to appeal the Order pursuant to 28 U.S.C. § 1292(b). *See In re Jartran, Inc.,* 886 F.2d 859, 866 (7th Cir. 1989) ("review of interlocutory appeals from the bankruptcy court is in the district court's discretion"). A court may exercise its discretion to grant leave to appeal where the order: (1) "involves a controlling question of law," (2) as to "which there is a substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Young v. Paramount Comm'ns Inc.*, 186 B.R. 803, 806 (S.D.N.Y. 1995). Here, each of those criteria is met.

### A. This Appeal Involves Controlling Questions of Law

"The 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record. The question must also be 'controlling' in the sense that, at a minimum, determination of the issue on appeal would materially affect the litigation's outcome. *In re Adelphia Communications Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005) (citing *In re Worldcom*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003); *North Fork Bank v. Abelson*, 207 B.R. 382, 389-90 (E.D.N.Y. 1997)).

The first controlling question of law raised in this appeal is whether the bankruptcy court must blindly accept the statement of the Trustee and SIPC that there is no reasonable expectation for SIPC reimbursement of its administrative expenses when all the evidence suggests otherwise and when there is substantial undisputed evidence of fee padding and gouging, passing on to

---

[18] Becker & Poliakoff Initial Brief for Appellants in *In re Bernard L. Madoff Investment Securities LLC*, 10-2378 (2d Cir.), at 13 *et. seq.*, annexed as Exhibit S to the Chaitman Decl.

14

SIPC of overhead expenses, and other improprieties. Thus, the SIPA provision on which the Trustee relies prevents the bankruptcy court from fulfilling its fundamental obligation to monitor the integrity of proceedings before it. *See In re Plaza Hotel Corp.,* 111 B.R. at 891.

While SIPA § 78eee(b)(5)(C) provides that the court shall approve the SIPC-approved compensation request where there is no reasonable expectation that there will be sufficient funds to reimburse SIPC for its advances, the statute does not require the court to blindly accept such a contention when it is contradicted by the undisputed facts before the court. Yet that is precisely what the bankruptcy court did here.

Application of the wrong standard while articulating the correct standard constitutes legal error and satisfies the "purely legal" element for granting interlocutory appeal. *See Liu v. I.N.S.*, 508 F.3d 716, 721-22 (2d Cir. 2007) (holding that application of wrong standard, even in light of articulation of a proper standard, constitutes question of law); *see also Xiao Ji Chen v. U.S. Dept. of Justice*, 471 F.3d 315, 329 (2d Cir. 2006) (citing *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 76-78 (1957)) (recognizing that question of fact arises where decision is "made without rational justification or based on a legally erroneous standard); *I.N.S. v. St. Cyr*, 533 U.S. 289, 302 (2001) (inner citation omitted) (acknowledging that errors of law include erroneous application or interpretation of statutes); *Ali v. Achim*, 468 F.3d, 462, 465 (7th Cir. 2006) (citing *Jean v. Gonzales,* 452 F.3d 392, 396 (5th Cir. 2006)) (holding that application of wrong legal standard constitutes question of law).

Here, after 2 ½ years in office, the Trustee has allowed claims of less than $6.9 billion and the fund of customer property is holding $9.8 billion. In ignoring these facts, the bankruptcy court committed legal error.

Furthermore, as set forth above and in the Objection, there was clear evidence that B&H's bills were grossly over-stated. While interim compensation awards are unquestionably interlocutory in nature, the Sixth Fee Application contained undisputed, glaring examples of padding, gouging, and passing overhead expenses onto a client. The fact that SIPC approved the fees *carte blanche* raises the further concern that the Trustee is being compensated for violating SIPA and betraying his fiduciary duty to the BLMIS customers.

The second question of law is whether the Trustee's compensation arrangement, which entitles him to a percentage of the total fees paid to B&H by SIPC, violates BLMIS customers' due process rights. A determination of this question is not a factual inquiry. This is a pure question of law that this Court could decide quickly and cleanly without having to study the record. The Trustee's admission that he receives a percentage of the fees is the only fact this Court needs to resolve this legal issue.

In denying the Movants' motion for leave to appeal the third fee order, Judge Scheindlin held that

> if a conflict of interest exists, as the Movants contend, between the former customers of BMIS and the Trustee and B&H, it would be more efficient to remove the Trustee and B&H now, rather than wait until a final order to do so. However, this is not a case where the alleged conflict of interest is so patently obvious as to create a significant threat to the litigation.

*In re Madoff*, 2010 WL 3260074, *5 (S.D.N.Y. Aug. 6, 2010); *accord In re Vebeliunas,* 231 B.R. 181 (Bankr. S.D.N.Y. 1999) (holding that trustee's counsel's disinterestedness is "so crucial to the proper functioning of the bankruptcy system that a court may raise it and dispose of it whenever its sanctity is questioned") (citing *In re Martin*, 817 F. 2d 175, 180 (1st Cir. 1978)); *In re AFI Holding, Inc.*, 355 B.R. 139 (9th Cir. BAP 2006) (holding that "trustee/fiduciary must be free from any hint of bias," and "either an appearance of impropriety or a potential conflict of interest

16

. . . is a viable cause for removal" of trustee; affirming bankruptcy court's removal of Chapter 7 trustee).

The Movants' objection to the third fee application did not include the detailed and undisputed evidence set forth in the Objection pertaining to the fee padding and the conflict created by the Trustee's fee arrangement with B&H because these facts became known after the appeal of the third fee order. At this point, the evidence suggests an unholy alliance between the Trustee, B&H and SIPC and presents this Court with "an alleged conflict of interest [that] is so patently obvious as to create a significant threat to the litigation." *In re Madoff*, 2010 WL 3260074 at *5. In the face of such evidence it was a legal error for the bankruptcy court to have accepted the unsupported statement of the Trustee and SIPC that SIPC had no reasonable expectation of recoupment.

This appeal raises questions of law, not of fact. The Objection constituted an offer of proof and the Trustee and B&H did not dispute any fact alleged regarding the unreasonableness of the fees sought in the Fee Application, thereby rendering the proof indisputable. Moreover, the questions are controlling because they apply to all SIPA liquidations.

**B.    There Is Substantial Ground for Difference of Opinion**

There is "substantial ground for difference of opinion" here because the questions involve "one or more difficult and pivotal questions of law not settled by controlling authority." *Northeast Savings F.A. v. Geremia*, 191 B.R. 275, 278 (D.R.I. 1996); s*ee Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave*, 921 F.2d 21, 25 (2d Cir. 1990) (hearing interlocutory appeal involving the difficult issue of first impression); *In re Pappas*, 207 B.R. 379, 381-82 (2d Cir. BAP 1997) (hearing interlocutory appeal where there is a difference of opinion on whether court may extend the time of a creditor to commence an adversary proceeding). There is often a sub-

17

08-01789-cgm    Doc 4170    Filed 06/15/11    Entered 06/15/11 20:03:02    Main Document

stantial ground for difference of opinion where, as here, "precedent bearing on the matter is relatively thin." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 156 (D.N.J. 2005).

The issue of the level of scrutiny to which a bankruptcy court must subject the Trustee's and/or SIPC's self-serving determination that there is no reasonable expectation of repayment is an issue of first impression. Similarly, it is an issue of first impression as to whether the Trustee's percentage interest in the B&H fees incurred as a result of his quasi-official decisions is a violation of BLMIS customers' due process rights. There is no precedent directly on point. Accordingly, this Court should hear the appeal now. An appeal at the conclusion of the Madoff liquidation could serve no purpose.

**C.    An Immediate Appeal Will Advance the Ultimate Termination of the Litigation**

The BLMIS proceeding will be materially advanced for the benefit of all BLMIS customers if the Order is immediately appealable. Congressman Garrett has questioned the integrity of the entire proceeding. The Court has a duty to monitor the integrity of the proceeding, particularly a proceeding of this significance. It cannot be that SIPA was intended to shield fee padding and gouging from scrutiny by creditors and the court until the end of a SIPA liquidation which, in this case, could easily take ten years.

If in fact, the Trustee and B&H have a conflict of interest, then there is no doubt that the ultimate termination of the litigation would be advanced by having them replaced by unbiased fiduciaries. *See In re Madoff*, 2010 WL 3260074 at *5. It is a sad fact that this liquidation will probably outlast many of Madoff's victims. An appeal of the subject order at the conclusion of the proceeding will do them no good.

## **CONCLUSION**

This motion raises genuine issues concerning the integrity of the bankruptcy proceeding that require review by this Court on an interlocutory basis.  Movants respectfully request that their motion for leave to appeal the Order be granted.

June 15, 2011

        **BECKER & POLIAKOFF LLP**

By:   /s/ Helen Davis Chaitman
       Helen Davis Chaitman
       45 Broadway
       New York, New York 10006
       (212) 599-3322

       *Attorneys for Marsha Peshkin and over 800*
       *Other Customers of Bernard L. Madoff*
       *Investment Securities LLC as Listed on*
       *Exhibit A*