WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr.
Edith M. Kallas
Deborah Clark-Weintraub
1540 Broadway, 37th Floor
New York, NY 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

*Attorneys for Objectors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

SECURITIES INVESTOR PROTECTION
CORPORATION,

                       Plaintiff,

   vs.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                       Defendant.

———————————————————————x

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

**OBJECTIONS TO TRUSTEE'S DETERMINATION OF CLAIMS**

Alan H. Meyers, and Ellen Meyers (collectively, the "Objectors"), by and through their attorneys, hereby object[1] to the Notices of Trustee's Determination of Claims attached hereto[2] for the reasons set forth below.

**BACKGROUND**

1.      Each of the Objectors along with hundreds of others (collectively, the

---

[1] *See* Exhibit A. The Objectors have obtained an extension until June 30, 2011 to respond to the Trustee's Determination.

[2] *See* Exhibit B.

"custodial accountholders") entered into an arrangement under which Bernard L. Madoff Investment Securities ("BLMIS") was authorized to manage the funds in his or her employee benefit plan (EBP) or individual retirement account (IRA). Pursuant to this arrangement, the Objectors entered into a Custodian Agreement with a bank to serve as the third-party custodian for his or her EBP or IRA account. From 1986 to July 1999, Westport Bank & Trust (WBT) served as the third-party custodian.[3] Thereafter and until BLMIS went into liquidation, Westport National Bank (WNB) served in that role.

2.   Pursuant to the arrangement, each of the Objectors opened an individual custodial account at WBT, WNB, or both, into which he or she would deposit funds to be invested by Bernard L. Madoff ("Madoff"). From time-to-time, the banks, in turn, would transfer funds deposited by the Objectors to BLMIS for investment. The banks affected that transfer by establishing omnibus customer accounts at BLMIS and transferring funds deposited by the Objectors into their individual custodial accounts at the banks to the bank's omnibus accounts at BLMIS.[4] As such, the Custodian Agreements required the banks to maintain records indicating the Objectors' ownership of funds and assets in the banks' omnibus accounts.

3.   On December 11, 2008, the above captioned liquidation proceeding was commenced against BLMIS pursuant to the Securities Investor Protection Act of 1970 ("SIPA").[5] Irving Picard was appointed Trustee and charged with overseeing the

---

[3] WBT now operates under the name of its corporate successor TD Bank.

[4] The two omnibus accounts WNB had at BLMIS on December 11, 2008 were (i) 1-W0106-3-0; and (ii) 1-W0106-4.

[5] *See Dkt. # 5*

2

liquidation of BLMIS and processing customer claims for money pursuant to SIPA.[6]

4. On December 23, 2008, the Court issued an order directing the Trustee to disseminate notice and claim forms to BLMIS customers and setting forth claim-filing deadlines.[7] The December 23, Order further provides that, to the extent the trustee disagrees with the amount set forth in a customer claim form, the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore…."[8]

5. On or about January 2, 2009, the Trustee sent WNB a notice, a customer claim form with instructions, and a brochure entitled "how SIPC Protects You."[9] WNB, in turn, provided copies of these documents to the Objectors on or about January 16, 2009.[10] In addition, to assist the Objectors in submitting a claim for the funds and securities held on their behalf in the bank's omnibus account at BLMIS, WNB also provided the Objectors with the copies of, among other things, a "Statement In Support of Customer Claims for Funds and Securities held in the Omnibus Account entitled 'Westport National Bank Account Number 1-W0106-3-0' of Bernard L. Madoff Securities, LLC" (hereinafter the "WNB Statement"), which the bank stated it intended to file with the trustee.[11] The WNB Statement recognized that the objectors had individual ownership over the funds and securities in the bank's omnibus account at

---

[6] *Id.*

[7] *See* Dkt. # 12.

[8] *Id.* at 6.

[9] *See* Ex. C

[10] *Id.*

[11] *Id.*

3

BLMIS.[12]

6.　Each of the Objectors submitted a customer claim form to SIPC.[13]

7.　Upon information and belief, WNB also submitted a customer claim form to SIPC. WNB styled its claim a "contingent" claim stating that "the funds and the securities held in the WNB Omnibus Account were held in WNB's name at BLMIS, as agent and nominee, [that] WNB [did] not own or assert a beneficial claim to any funds or securities deposited in the omnibus account[, and]… that the beneficial owners and not WNB [were] the appropriate parties to assert their own separate claims for monies and securities entrusted with BLMIS and to seek the protections afforded to brokerage customers by [SIPA]." Accordingly, WNB asserted that each of the custodial accountholders, including the objectors, was entitled to customer status within the meaning of 15 U.S.C § 78lll(2) and that each custodial accountholder was entitle to assert his or her own separate claim for his or her pro rata interest in the funds and securities entrusted to BLMIS in connection with the WNB Customer Omnibus Account. Alternatively, in the event the Trustee determined that its custodial customers were not entitle to customer status, WNB asserted the contingent claim "solely as agent and nominee" for the custodial accountholders whose funds were transmitted to the banks' omnibus account at BLMIS.

8.　On April 29, 2011, the Trustee sent each of the Objectors a Notice of Trustee's Determination of Claim stating that their claims had been denied because "[b]ased on a review of the available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS" and, therefore, "are not a customer of BLMIS

---

[12] *Id.*

[13] *See* Ex. D.

4

under SIPA as that term is defined at 15 U.S.C. § 78lll(2)."[14]

9. The status of WNB's contingent claim is unknown to the Objectors. However, on December 10, 2010, the Trustee filed an adversary proceeding against WNB contending that it had received "millions of dollars in avoidable and recoverable transfers from BLMIS' fraudulent investment advisory business."[15]

## GROUNDS FOR OBJECTION

10. The Trustee's determination that the Objectors were not customers of BLMIS is clearly erroneous. SIPA provides that each customer of a bank that is a customer of the debtor shall be deemed a separate customer of the debtor to the extent that the bank's claim against the debtor arises out of transactions for the customers of the bank. *See* 15 U.S.C. § 78fff-3(a)(5). In this case, all of the transactions in the banks' omnibus accounts at BLMIS were for the custodial customers of the banks, including the Objectors, not for the banks' own account. Accordingly, each custodial customer of WNB is a customer of BLMIS within the meaning of 15 U.S.C. §78fff-3(a)(5).

11. Moreover, the Objectors, rather than WNB, clearly possess the "required attributes for customer status under SIPA" recognized by the Second Circuit. *See Sec. Investor Prot. Corp. v. Morgan, Kennedy, & Co., Inc.*, 533 F.2d 1314, 1317-18 (2d Cir. 1976). The funds transmitted to BLMIS by the banks belonged to the objectors, not the banks. The Objectors chose BLMIS to receive and invest their funds on a discretionary basis and authorized the banks to transmit the funds deposited in to their custodial accounts to BLMIS for investment. As the Second Circuit instructed in *See Sec. Investor Prot. Corp. v. Morgan, Kennedy, & Co., Inc.*, "[e]mphais on the customer as investor and

---

[14] *See* Ex. B.
[15] *See* Ex. E.

5

purchaser/trader has been a consistent theme in cases in this Circuit." *Id.* at 1317.

12. SIPA's legislative history supports the conclusion that the Objectors are customers as that term is defined in SIPA as it shows hat "the intent of the statute was to protect individual investors from losing their investments when broker-dealers failed." *See Mishkin v. Peat, Marwick, Mitchell & Co.*, 744 F. Supp. 531, 555 (S.D.N.Y. 1990). Indeed, "[t]he ability quickly to pay off net equity claims of customers is the most important feature of SIPA." *Id.* at 556 (citing 116 Cong. Rec. 39353 (statement of Rep. Anderson) ("The important aspect of this provision is the prompt payment feature which avoids lengthy delay which otherwise might result if customers had to wait until the completion of the liquidation proceeding."); 116 Cong. Rec. 40905 (statement of Sen. Bennett) ("The protection afforded by this bill could not be effective unless the means were given for those customers to promptly receive their securities. This is the basic purpose of the legislation.")). In this case, it is the Objectors, not the banks who lost their investment with BLMIS and who require a speedy remedy.

## CONCLUSION

13. The Objectors reserve the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of the Objector's right to object on any additional grounds. In this regard, the only ground asserted by the Trustee in denying their claims was that the Objectors were not customers of BLMIS.

14. The Objectors reserve all rights set forth in Rule 9014 including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

15. The Objectors reserve all objections as to the competence, relevance,

materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

Dated  June 29, 2011

                Respectfully Submitted,

                **WHATLEY DRAKE & KALLAS. LLC**

                /s/Joe R. Whatley, Jr.
                Joe R. Whatley, Jr.
                Edith M. Kallas
                Deborah Clark-Weintraub
                1540 Broadway, 37th Floor
                New York, NY 10036
                Telephone:    (212) 447-7070
                Facsimile:    (212) 447-7077

## CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of June 2011, I caused a true and correct copy of the foregoing Objection to Trustee's Determination of Claim with accompanying exhibits, on behalf of the above-referenced Objectors, to be filed and served on the parties to this action via electronic filing. In addition, service was effectuated to the following address via First Class mail.

        Irving H. Picard, Trustee
        c/o Baker Hostetler LLP
        45 Rockefeller Plaza
        New York, NY 10011

        /s/Joe R. Whatley, Jr.
          Joe R. Whatley Jr.