**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | SIPA LIQUIDATION <br><br> Case No.  08-01789 (BRL) <br> (Substantively Consolidated) <br><br> Appeal No.: _____ |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**MEMORANDUM OF LAW OF IRVING H. PICARD, TRUSTEE, IN OPPOSITION TO**
**MOTION FOR LEAVE TO APPEAL**

# TABLE OF CONTENTS

**Page**

**Preliminary Statement** ................................................................................................. 1

**Statement of Facts** ..................................................................................................... 4

    A. Commencement of the SIPA liquidation of BLMIS .................................... 4

    B. Order regarding disinterestedness of Trustee and counsel ............................. 5

    C. Filings regarding compensation of Trustee and counsel ................................ 6

        1. Compensation orders & fee applications ........................................... 6

        2. First Interim Fee Order and Appeal .................................................. 7

        3. Second Interim Fee Order and Appeal ............................................... 8

        4. Third Interim Fee Order and Appeal ................................................. 9

        5. Fourth Interim Fee Order ............................................................... 11

        6. Fifth Interim Fee Order and Appeal ................................................ 12

        7. Sixth Interim Fee Order and Appeal ............................................... 14

    D. Movants' and counsel's litigation history .................................................. 15

**Argument** .................................................................................................................. 17

    I.     SIPA's statutory framework governs compensation awards............................... 17

    II.    This motion should be denied because it raises factual issues inappropriate for interlocutory review and improperly re-litigates the net equity issue ................................................................................................. 18

        A.    The standards for leave to appeal guard against motions such as the one here ...................................................................................... 19

        B.    Rather than exceptional circumstances, Movants merely raise factual issues inappropriate for interlocutory review ................................ 20

            1.    Whether SIPC has a reasonable expectation of recoupment of its administrative expenses is a factual question...................... 21

2.    The Trustee's compensation for his work on behalf of the BLMIS estate has no bearing on any due process rights of Movants ........................................................................................ 25

CONCLUSION .......................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Diaz v. Paterson*,
    547 F.3d 88 (2d Cir. 2008) ................................................................. 26

*German v. Fed. Home Loan Mortgage Corp.*,
    896 F. Supp 1385 (S.D.N.Y. 1995) ................................................... 20

*IBI Sec. Serv. v. Nat'l Westminster Bank USA (In re IBI Sec. Serv.)*,
    174 B.R. 664 (E.D.N.Y. 1993) ......................................................... 20

*In re Ionosphere Clubs,* Inc.,
    179 B.R. 24 (S.D.N.Y. 1995) ........................................................... 19

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ......................................................................... 26

*In re Neuman*,
    No. M-47, 1990 U.S. Dist. LEXIS 5792 (S.D.N.Y. May 15, 1990) ..................................... 20

*North Fork Bank v. Abelson*,
    207 B.R. 382 (E.D.N.Y. 1997) ......................................................... 20

*In re Pan Am* Corp.,
    159 B.R. 396 (S.D.N.Y. 1993) ......................................................... 19

*P. Schoenfeld Asset Mgt. LLC v. Cendant Corp.*,
    161 F. Supp.2d 355 (D.N.J. 2001) ............................................... 8, 20

*Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    No. M-47, 2010 U.S. Dist. LEXIS 3037 (S.D.N.Y. Jan. 11, 2010) ................................... 2, 9

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs., LLC*,
    No. M-47, 2010 U.S. Dist. LEXIS 81492 (S.D.N.Y. Aug. 6, 2010) ............................. 10, 23

*Soberal-Perez v. Heckler*,
    717 F.2d 36, 43 (2d Cir 1983) ......................................................... 26

*United States v. James Daniel Good Real Prop.*,
510 U.S. 43 (1993) ............................................................................. 26

*United States v. $7,206,157,717 On Deposit at JP Morgan Chase Bank, N.A.*,

No. 10-CV-9398, --- F.R.D. ----, 2011 WL 1988426
(S.D.N.Y May 23, 2011) (TPG) ................................................................... 3, 21

**Statutes and Rules**

11 U.S.C. § 327(a) ...................................................................................... 5

11 U.S.C. § 330 .......................................................................................... 6

11 U.S.C. § 331 .......................................................................................... 6

15 U.S.C. § 78aaa *et seq.* ........................................................................... 1

15 U.S.C. § 78*lll*(11) .................................................................................. 7

15 U.S.C. § 78ccc(a)(1) ............................................................................... 26

15 U.S.C. § 78eee(a)(3) ............................................................................... 4

15 U.S.C. § 78eee(a)(4)(A) ........................................................................... 4

15 U.S.C. § 78eee(b)(4) ............................................................................... 5

15 U.S.C. § 78eee(b)(5) ................................................................... 6, 18, 27, 28

15 U.S.C. § 78eee(b)(5)(C) ...................................................................... 3, 18

15 U.S.C. § 78eee(b)(6) ............................................................................... 5

15 U.S.C. § 78fff ...................................................................................... 17, 27

15 U.S.C. § 78fff-1 ..................................................................................... 27

15 U.S.C. § 78fff-2 .................................................................................. 18, 27

15 U.S.C. § 78fff-2(c)(1) .......................................................................... 17, 18

15 U.S.C. § 78fff-3 .................................................................................. 17, 27

15 U.S.C. § 78fff-3(b)(2) ............................................................................. 17

28 U.S.C. § 1292(b) .................................................................................... 19

28 U.S.C. § 158(a) ...................................................................................... 19

Fed. R. Bankr. P. 2016(a) ............................................................................. 6

Fed. R. Bankr. P. 2014(a)..............................................................................................................5

Local Bankruptcy Rule 2016-1 ....................................................................................................6

28 C.F.R. § 9.9(c)........................................................................................................................21

Irving H. Picard, as trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and the substantively consolidated estate of Bernard L. Madoff (collectively, "Debtors"), respectfully submits this memorandum of law in opposition to the motion of Marsha Peshkin, and over 800 other customers of BLMIS ("Movants")[2] for leave to appeal the *Order Approving Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses*, dated June 1, 2011 ("Sixth Interim Fee Order") of the United States Bankruptcy Court for the Southern District of New York, to the extent the Sixth Interim Fee Order granted the sixth applications for interim compensation of the Trustee and Baker & Hostetler LLP ("B&H"), counsel to the Trustee ("Sixth Fee Applications").[3]

## Preliminary Statement

The Trustee and his counsel have submitted applications to the bankruptcy court seeking interim compensation ("Interim Fee Applications") six times during the pendency of the BLMIS SIPA liquidation. Movants have objected to, and the bankruptcy court has granted, each of the Interim Fee Applications and overruled those objections. The instant Motion represents the *fifth* time in which Movants have sought leave to appeal the bankruptcy court's orders granting the Interim Fee Applications of the Trustee and B&H. The United States District Court for the Southern District of New York ("District Court") has previously issued

---

[1] Subsequent references to SIPA shall omit "15 U.S.C."

[2] As discussed more fully herein, counsel for Movants, Ms. Helen Davis Chaitman, has filed objections to and appealed from, *inter alia*, the various orders relating to the compensation of the Trustee and B&H. These filings have been made on behalf of as few as three creditors/customers and now purportedly on behalf as many as 800 creditors/customers. Thus, although the movants that Ms. Chaitman represents may change in any particular filing, "Movants" shall be used for ease of reference.

orders denying two of the Movants' prior four motions for leave to appeal, and the two remaining motions are pending before United States District Judge Deborah A. Batts.

A common theme runs through all of the motions for leave to appeal the interim fee orders filed by Movants (including the instant one), the corresponding objections to the Interim Fee Applications, as well as virtually every other filing by Ms. Chaitman relating to this liquidation proceeding: net equity. The bankruptcy court's decision upholding the Trustee's net equity methodology, which is presently on appeal and awaiting decision from the Second Circuit, held that the net equity claims of BLMIS customers could not be based on the fictitious customer statements they received showing fictitious inflated profits, but must be based on actual cash invested and withdrawn. Numerous parties participated in the appeal before the Second Circuit, including Ms. Chaitman.

While that issue has been and is being litigated through the bankruptcy and appellate courts—the only proper venues for litigation of that issue—Ms. Chaitman and those she represents continue to improperly raise it at virtually every opportunity, in different courts, using different procedural vehicles, including the prior and instant motions for leave to appeal. When considering Movants' prior motion for leave to appeal the First Interim Fee Order, District Judge George B. Daniels denied leave to appeal for one reason: "none of the issues [raised by Movants] involve controlling questions of law . . . . they all revolve around the methodology the Trustee utilized to compute net equity." *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. M-47, 2010 U.S. Dist. LEXIS 3037, at *3 (S.D.N.Y. Jan. 11, 2010) ("*Daniels Decision*").[4] This Motion is no different.

---

[3] A copy of the Sixth Interim Fee Order is annexed as <u>Exhibit D</u> to the Chaitman Declaration ("Chaitman Decl.").

[4] A copy of the *Daniels Decision* is annexed as <u>Exhibit B</u> to the Brown Declaration ("Brown Decl.").

Other courts have rejected attempts to litigate the net equity issue outside of the pending appeal.  District Judge Griesa recently held that a BLMIS claimant (one formerly represented by Ms. Chaitman in the BLMIS matter) did not have standing to challenge the Government's forfeiture that, along with the Trustee's settlement, recovered $7.2 billion from the estate of Jeffry M. Picower for the benefit of BLMIS victims: "[T]he proper avenue for Fox to challenge Picard's method of compensating Madoff's victims is not with this case, but with the appeal by other net winners of the bankruptcy court's decision approving of Picard's methods." *United States v. $7,206,157,717 on Deposit at JP Morgan Chase Bank, N.A.*, 10-CV-9398 (TPG), ---F.R.D. ----, 2011 WL 1988426, at *2 (S.D.N.Y. May 23, 2011) (TPG).  Similar reasoning applies here.

Moreover, the Motion fails for a more basic reason: the appeal involves intensely factual determinations that are not appropriate for interlocutory review.  While Movants try to couch their appeal as one of law, even a cursory review of their Motion reveals the myriad facts and substantial record that this Court would have to study in order to resolve the appeal.  As such, the order is inappropriate for interlocutory review.

Section 78eee(b)(5)(C) of SIPA guides the compensation of the Trustee and B&H, and provides that the "court shall award the amounts recommended by SIPC" where (i) SIPC has no reasonable expectation of recouping the reasonable compensation for services rendered and reimbursement of expenses incurred by a trustee and his counsel (referred to as "allowances"), and (ii) the amounts sought by the Trustee and counsel and recommended for payment by SIPC are the same.  In all other circumstances, the court "shall place considerable reliance on the recommendation of SIPC" in evaluating the fee requests.

The purported basis on which Movants seek leave to appeal is their belief that the

3

Securities Investor Protection Corporation ("SIPC") has a reasonable expectation of recouping its administrative expenses. This "belief" has been rejected by the bankruptcy court, which characterized it as "rank speculation." *See* Transcript of Hearing on December 14, 2010 (the "Fifth Interim Fee Hearing Transcript"), at 32.[5] Movants now also assert that the Trustee's compensation in this matter "violates customers' right to due process of law." Motion 12. Neither contention has any basis in law or fact, and is merely another attempt to re-litigate the Trustee's interpretation of net equity.

Regardless, discerning SIPC's reasonable expectation of recoupment is an inherently factual issue, rendering it an inappropriate basis for an interlocutory appeal. Even if Movants were correct that the bankruptcy court was required to review the reasonableness of the Sixth Fee Applications, the bankruptcy court did so and approved the allowances. The other arguments raised by Movants are duplicative of those that have been previously rejected. Thus, the Motion is nothing more than another frivolous filing by Movants and Ms. Chaitman, and it should be rejected by this Court.

## Statement of Facts

### A.       Commencement of the SIPA Liquidation of BLMIS

On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against the Debtors, captioned *United States v. Madoff*, No. 08-CV-10791 (S.D.N.Y.) (LLS). The complaint alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of SIPC. Thereafter, pursuant to section

---

[5] A copy of the Fifth Interim Fee Hearing Transcript is annexed to the Brown Decl. as <u>Exhibit G</u>.

78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part: (a) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA; (b) appointed B&H as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and (c) removed the case to the bankruptcy court pursuant to section 78eee(b)(4) of SIPA.

On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, the bankruptcy court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## B.    Order Regarding Disinterestedness of Trustee and Counsel

On January 2, 2009, the Trustee and B&H filed with the bankruptcy court declarations of disinterestedness (*BLMIS*, ECF No. 24).[6] On February 4, 2009, after notice and a hearing, the bankruptcy court entered an Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee (*BLMIS*, ECF No. 69), finding that the Trustee and B&H were disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the United States Bankruptcy Code (the "Bankruptcy Code"), and Federal Rule of Bankruptcy Procedure 2014(a) (the "Bankruptcy Rules"), and were therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

---

[6] References to pleadings filed in the main adversary proceeding pending before the bankruptcy court, *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, 08-1789 (BRL) (Bankr. S.D.N.Y.) will be denoted as "*BLMIS*, ECF No. ____."

**C.**    **Filings Regarding Compensation of Trustee and Counsel**

**1.**    **Compensation Orders & Fee Applications**

On February 25, 2009, the bankruptcy court entered an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1, which established Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP (*BLMIS*, ECF No. 126) (the "Compensation Order").   The Compensation Order allows the Trustee to seek interim compensation for services performed by the Trustee and B&H and sets forth the governing procedures regarding the same.  The Compensation Order was amended on December 17, 2009 (*BLMIS*, ECF No. 1078) and June 1, 2011 (*BLMIS*, ECF No. 4125) (collectively, the "Compensation Order").

Since his appointment, the Trustee and his counsel have filed with the bankruptcy court six Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred (as defined earlier, the "Interim Fee Applications").[7]   The court approved each of the Interim Fee Applications (collectively,

_____

[7] The Trustee and his counsel have filed the following fee applications: (i) First Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred (*BLMIS*, ECF Nos. 320 and 321, respectively) (the "First Interim Fee Applications"); Second Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred (*BLMIS*, ECF Nos. 998 and 1010, respectively) (the "Second Interim Fee Applications"); Third Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred (*BLMIS*, ECF Nos. 2188 and 2189, respectively) (the "Third Interim Fee Applications"); Fourth Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred (*BLMIS*, ECF No. 2883) (the "Fourth Interim Fee Applications"); Fifth Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred (*BLMIS*, ECF No.3207) (the "Fifth Interim Fee Applications"); Sixth Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred (*BLMIS*, ECF No. 4022) (the "Sixth Interim Fee Applications").

"Interim Fee Orders").[8]   The Sixth Interim Fee Application and Order that are the subject of the

instant appeal were filed on April 18, 2011 (*BLMIS*, ECF No. 4022) and June 1, 2011 (*BLMIS*,

ECF No. 4125).

### 2.   First Interim Fee Order and Appeal

On August 3, 2009, Movants objected to the First Interim Fee Applications in the

bankruptcy court (the "First Objection") (*BLMIS*, ECF No. 351).   Entirely unrelated to the

compensation of the Trustee and B&H, Movants alleged that a conflict of interest arose from

the Trustee's position on net equity[9] that required the disqualification of the Trustee and

B&H.[10]   SIPC and the Trustee each filed a reply to the First Objection (*BLMIS*, ECF Nos. 357

and 358, respectively), and a hearing was held before the bankruptcy court on August 6, 2009

(the "First Interim Fee Hearing").

---

[8] *See* Order Approving First Applications For Allowance Of Interim Compensation For Services Rendered And Reimbursement Of Expenses (*BLMIS*, ECF No. 363); Order Approving Second Applications For Allowance Of Interim Compensation For Services Rendered And Reimbursement Of Expenses (*BLMIS*, ECF No. 1078); Order Approving Third Applications For Allowance Of Interim Compensation For Services Rendered And Reimbursement Of Expenses (*BLMIS*, ECF No. 2251); Order Approving Fourth Applications For Allowance Of Interim Compensation For Services Rendered And Reimbursement Of Expenses (*BLMIS*, ECF No.  2981); Order Approving Fifth Applications For Allowance Of Interim Compensation For Services Rendered And Reimbursement Of Expenses (*BLMIS*, ECF No. 3474); Order Approving Sixth Applications For Allowance Of Interim Compensation For Services Rendered And Reimbursement Of Expenses (*BLMIS*, ECF No. 4125).

[9] The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that customers share *pro rata* in customer property to the extent of their net equity, as defined in § 78*lll*(11) of SIPA. SIPC advances funds to the trustee for a customer with a valid net equity claim, up to the lesser of $500,000 or the amount of their net equity, if her ratable share of customer property is insufficient to make her whole.

The Trustee determined a customer's net equity by calculating the net cash invested by a customer in her BLMIS account, deposits minus withdrawals, which is referred to as the "cash-in/cash-out" or "net investment" method. *SIPC v. BLMIS*, 424 B.R. at 125.  SIPC and the SEC agreed with this methodology.  As previously mentioned, the bankruptcy court's order approving the net investment method is on appeal at the Second Circuit.

[10] Even at this early stage of the proceeding, Movants and their counsel had already raised these arguments in *Peskin v. Picard*, Adv. Pro. No. 09-01272 (Bankr. S.D.N.Y.) (BRL)  (suit brought against Trustee regarding, *inter alia*, net equity, and dismissed by bankruptcy court because issue is before the Second Circuit), on appeal at *Peskin v. Picard*, No. 09-CV-08730 (JGK) (S.D.N.Y.) (affirming bankruptcy court's ruling that, among other holdings, "the bulk of the Complaint was tantamount to an objection to the appellants' claim determinations, and thus constituted an impermissible attempt to circumvent the Claims Procedure Order."), and on appeal at *Peskin v. Picard*, No. 10-04789 (2d Cir.).

After consideration of the applications and responses, the bankruptcy court found "no merit to the objections."  *See* Transcript of Hearing on August 6, 2009 ("First Interim Fee Hearing Transcript"), at 34.[11]  The bankruptcy court had held a disinterestedness hearing, at which there were no objections, and there were "no new facts that have come forward that would change the disinterestedness concept with respect to the fee applications."  *Id.* at 34-35.  The bankruptcy court also rejected Movants' assertion that payment of fees to the Trustee and B&H resulted in less funds to be distributed to customers.  *Id.* at 35-36.  By order dated August 6, 2009, the bankruptcy court approved the First Interim Fee Applications.

Shortly thereafter, Movants sought leave of this Court for an interlocutory review of the First Interim Fee Order.  After submission of the motion and opposition papers (*BLMIS*, ECF Nos. 367, 378), Judge Daniels denied leave to appeal, holding that "none of the issues [raised by Movants] involve controlling questions of law . . . . they all revolve around the methodology the Trustee utilized to compute net equity."  *Bernard L. Madoff Inv. Secs. LLC*, 2010 U.S. Dist. LEXIS 3037, at *3.

### 3.    Second Interim Fee Order and Appeal

On December 14, 2009, Movants objected to the Second Interim Fee Applications in the bankruptcy court (the "Second Objection") (*BLMIS*, ECF No. 1055). The Second Objection raised virtually identical issues to those in the First Objection, with the addition of an argument relating to the Trustee's use of Bankruptcy Rule 2004 to subpoena bank records of BLMIS customers.  *See* Second Objection at ¶¶ 61-68.  The Trustee filed a response to the Second Objection on December 16, 2009 (*BLMIS*, ECF No. 1075).

At the fee hearing held on December 17, 2009 (the "Second Interim Fee Hearing"),

---

[11] A copy of the First Interim Fee Hearing Transcript is annexed to the Brown Decl. as <u>Exhibit A</u>.

Movants, consistent with their Objection, requested an evidentiary hearing.  In response, Judge Lifland stated that the Trustee's presentation at the Second Interim Fee Hearing "ma[de] it clear that there is nothing in the objection to the Trustee's fees or the fees of Baker Hostetler that creates issues even that I haven't addressed previously, nor do they raise any sufficient concerns that this Court should order some kind of an evidentiary hearing." *See* Transcript of Hearing on December 17, 2009 (the "Second Interim Fee Hearing Transcript"), at 33.[12]

Furthermore, the bankruptcy court dismissed Movants' Rule 2004 argument as "bordering on frivolous." *Id.*  The court stated that the use of broad Rule 2004 subpoenas is "almost basic" in a case such as this one, and endorsed the Trustee's use of Rule 2004 in his expansive hunt to recover customer property.  *Id.*  On December 17, 2009, the bankruptcy court entered the Second Interim Fee Order, overruling the Objection on "the same ground that [he] ha[d] done previously" as there was "nothing new in the current objection that overlaps the original rulings."  (*Id.* at 33-34).

Shortly thereafter, Movants sought leave for interlocutory review of the Second Interim Fee Order (*BLMIS*, ECF No. 1115), and the Trustee opposed.  (*BLMIS*, ECF No. 1200).  The papers were filed and served prior to the issuance of the *Daniels Decision*.  The motion for leave to appeal is fully briefed and pending before United States District Judge Deborah A. Batts.

## 4.    Third Interim Fee Order and Appeal

On April 28, 2010, Movants objected to the Third Interim Fee Applications in the bankruptcy court (the "Third Objection") (*BLMIS*, ECF No. 2233).  Filed after the *Daniels Decision* was issued, the Third Objection was particularly egregious because it raised the same

---

[12] A copy of the Second Interim Fee Hearing Transcript is annexed to the Brown Decl. as <u>Exhibit C</u>.

allegations as those in the First and Second Objections—the alleged bad acts of the Trustee, his

alleged improper interpretation and implementation of SIPA with regard to net equity, spurious

allegations regarding the purposes and history of SIPA and SIPC, as well as *ad hominem* attacks

against the Trustee and SIPC—even though the *Daniels Decision* flatly rejected the basis of

these arguments.    Movants offered one additional reason to support the Trustee's alleged

conflict of interest—his motion to enjoin an action brought by Ms. Chaitman on behalf of other

clients against current and former board members of SIPC (the "New Jersey Action")

regarding—yet again—the calculation of net equity.  There were, however, no new legal issues

raised by the Movants in the Third Objection.

In overruling the Third Objection at the fee hearing held on May 5, 2010 (the "Third

Interim Fee Hearing"), Judge Lifland stated that "if you bring on litigation, the Trustee has to

go and react to it if that litigation implicates the administration of the estate, and that apparently

is the case [in the New Jersey Action]." *See* Third Interim Fee Hearing Transcript at 98.[13]  The

bankruptcy court subsequently entered the Third Interim Fee Order approving the Third Interim

Fee Applications.[14]

Shortly thereafter, Movants sought leave for interlocutory review and the Trustee

opposed.  (*BLMIS*, ECF Nos. 2299, 2356).  On August 6, 2010, United States District Judge

Shira Scheindlin denied the request for leave.  *Secs. Investor Prot. Corp. v. Bernard L. Madoff*

*Inv. Secs. LLC*, No. M47, 2010 U.S. Dist. LEXIS 81492, at *1 (S.D.N.Y. Aug. 6, 2010) (a copy

of which is annexed to the Brown Decl. as Exhibit E).  Judge Scheindlin held that Movants

---

[13] A copy of the Third Interim Fee Hearing Transcript is annexed to the Brown Decl. as Exhibit D.

[14] The Trustee notes that the New Jersey Action was transferred from the United States District Court for the District of New Jersey to this Court, which referred it to the bankruptcy court.  It has since been dismissed without prejudice.

failed to satisfy the requirements for an interlocutory appeal because, *inter alia*, they did not present any controlling issues of law, nor did they establish that an immediate appeal would advance the termination of the litigation. *Id.* at *13. Whether or not the Trustee's participation in the New Jersey Action constituted a conflict was not a "pure question of law that the reviewing court could decide cleanly without having to study the record." *Id.* at *15 (internal quotation omitted). Similarly, whether the Trustee and B&H failed to meet their statutory obligations, as Movants alleged, was deemed a fact-based inquiry inappropriate for interlocutory review. *Id.*

### 5.    Fourth Interim Fee Order

On September 2, 2010, Movants filed an objection to the Fourth Interim Fee Applications in the bankruptcy court (the "Fourth Objection") (*BLMIS*, ECF No. 2943). The Fourth Objection was substantially similar to the prior three Objections, in that the Movants again raised the disinterestedness argument. Movants also alleged that the Trustee failed to "promptly" pay SIPC insurance. Finally, Movants argued that the Trustee failed to disclose "material information" about the extent and length of Madoff's fraud and the Trustee's decision-making and accounting.

At the fee hearing held on September 14, 2010 (the "Fourth Interim Fee Hearing"), the Trustee, his counsel and SIPC were heard, but neither Ms. Chaitman nor any attorney from her firm appeared. The bankruptcy court stated: "This is the fourth fee request and, essentially, with respect to this fee request, basically the same arguments are advanced in support of these objections as were advanced previously." *See* Transcript of Hearing on September 14, 2010 (the "Fourth Interim Fee Hearing Transcript"), at 28.[15] In overruling the Fourth Objection,

---

[15] A copy of the Fourth Interim Fee Hearing Transcript is annexed to the Brown Decl. as Exhibit F.

Judge Lifland stated, "I do find that there are no new facts or arguments that have been advanced today which would alter my prior findings concerning conflicts and appropriateness of the fees that have been requested here today." *Id.* at 30.  The bankruptcy court subsequently entered the Fourth Interim Fee Order approving the Fourth Interim Fee Applications.  Movants did not file a Motion for Leave to Appeal with respect to the Fourth Interim Fee Order.

### 6.    Fifth Interim Fee Order and Appeal

On December 7, 2010, Movants filed an objection to the Fifth Interim Fee Applications in the bankruptcy court (the "Fifth Objection") (*BLMIS*, ECF No. 3308).  The Fifth Objection was substantially similar to the four prior Objections in that the Movants raised the repeatedly-denied disinterestedness argument.  Movants further insisted, based on nothing but speculation, that there will be sufficient funds for the Trustee to "pay all claims in full and reimburse SIPC in full for its administrative expenses" based upon the Trustee's success in recovering substantial amounts to the estate.[16]  Movants base this oversimplified assumption on the fact that the Trustee has, to date, allowed approximately $6 billion in customer claims, while his recoveries, if certain settlements are approved, will total approximately $7.5 billion.

At the fee hearing held on December 14, 2010 (the "Fifth Interim Fee Hearing"), the Trustee stated that there was not, at that time, a reasonable expectation that SIPC would recoup its administrative expenses.  The Trustee explained that while the current value of allowed customer claims was $6 billion, that number is only accurate as to the present—it does not reflect the final amount of allowable claims in this liquidation proceeding.  Significant litigation

---

[16] For this to occur under the law, it means that all allowed customer net equity claims, something which has not yet even been finally determined, would first have to be satisfied in full.  It is curious that Movants are objecting to the eventuality of recovering 100% of the principal they invested with BLMIS.

is pending against entities and individuals who also have claims against the estate. By operation of section 502(d) of the Bankruptcy Code, those claims against the estate held by defendants sued in adversary proceedings may be allowed when those defendants pay back certain avoidable transfers or other liabilities. *See* Fifth Interim Fee Hearing Transcript, at 15. Moreover, the Trustee and his counsel advised the bankruptcy court of the risks associated with the litigations he has commenced against numerous defendants, very few of which have been resolved to date, and which make absolute predictions regarding the final amounts of recovery and allowable claims tenuous at best. *Id.* at 15-17.

Similarly, counsel for SIPC stated that while there was a hope that at some point there would be a reasonable expectation of recoupment, none existed at this time. *Id.* at 24-25. Counsel for SIPC referenced a letter from the President of SIPC to Congress, attached to the Fifth Objection as Exhibit K, indicating that the amount of principal lost in Madoff's fraud by BLMIS claimants was approximately $17.3 billion. Accordingly, SIPC's counsel stated that "at some point in time when the Trustee is able to recover over twenty billion dollars maybe we would be at a point where there would be no [sic] reasonable expectation." *Id.* at 26.

Ignoring the above explanations, counsel for Movants stated that "after two years, he has only allowed $5.8 billion dollars of the seventeen billion in possible claims. And he hasn't told you today why that is." *Id.* at 28. Counsel for Movants then further argued that it is possible that the Trustee never intends to allow remaining claims, speculating in accordance with her own hypothetical that "if we assume that's true for a second, then it's virtually inconceivable that there won't be enough money to pay all the allowed claims in full and to fully reimburse SIPC . . ." *Id.*

In overruling the Fifth Objection, Judge Lifland stated, "I do not find that the objectors

have made any strong point with respect to objecting to the fees that have been requested here today." *Id.* at 33. The bankruptcy court found that, at this juncture, there was no reasonable expectation of recoupment. *Id.* at 32. Moreover, "notwithstanding the statutory command that [the bankruptcy] Court shall approve the fees," Judge Lifland noted that he was "very well aware of the Herculean effort being utilized in the litigation arena to recoup funds for the benefit of the victims." *Id.*

The bankruptcy court subsequently entered the Fifth Interim Fee Order approving the Fifth Interim Fee Applications, from which Movants sought leave to appeal (*BLMIS*, ECF No. 3594) and the Trustee opposed. (*BLMIS*, ECF No. 3672). The motion has been assigned to United States District Judge Deborah A. Batts, but the court has yet to enter a briefing schedule.

### 7.    Sixth Interim Fee Order and Appeal

On May 25, 2011, Movants filed an objection to the Sixth Interim Fee Applications in the bankruptcy court (the "Sixth Objection") (*BLMIS*, ECF No. 4088). Just as was raised in the Fifth Objection and rejected by the bankruptcy court, Movants repeated in the Sixth Objection their baseless belief that the Trustee will have sufficient funds to "pay all claims in full and reimburse SIPC in full for its administrative expenses." Building on this fallacy, Movants set forth a tortured reading of SIPA to conclude that the Trustee's avoidance powers are limited to the value of the fund of customer property and the amount of allowed claims as of an arbitrary date chosen by Movants. Finally, Movants argued that Trustee's compensation from B&H "violates customers' right to due process of law."

At the fee hearing held on June 1, 2011 (the "Sixth Interim Fee Hearing"), the Trustee once again provided the bankruptcy court with detailed explanations as to why there was not, at that time, a reasonable expectation that SIPC would recoup its administrative expenses. *See*

14

Transcript of Hearing on June 1, 2011 (the "Sixth Interim Fee Hearing Transcript"), at 30, 31-32, 33-37.[17]

In overruling the Sixth Objection, Judge Lifland stated, "[T]he objection is rather partisan and parochial and is made on behalf of an attorney and her clients who are not particularly pleased with the determination on net equity as to where the money goes to winners or losers." *Id.* at 45. The bankruptcy court found that, at this juncture, there was no reasonable expectation of recoupment. *Id.* Moreover, "this is by any stretch of the imagination one of the largest most complex sets of litigation that have come down the pike. It's measured both in quality and quantity in the thousands with deadlines that have come upon everyone under the statute so that the December deadline requiring thousands of new law suits to be filed is . . . a big stretch for any law firm or any organization to deal with." *Id.* at 45-46. The bankruptcy court subsequently entered the Sixth Interim Fee Order approving the Sixth Interim Fee Applications.

On June 15, 2010, Movants filed the instant Motion (*BLMIS*, ECF No. 4170) and supporting papers seeking interlocutory review of the Sixth Interim Fee Order. Movants argue that the Sixth Interim Fee Order should be reversed because Movants allege, once again, that the bankruptcy court purportedly failed to properly review the Sixth Fee Applications, and that Movants' due process rights are being violated by the Trustee's compensation for services rendered in this case.

### D.    Movants' and Counsel's Litigation History

In addition to all of the fee-related litigation described above and their participation in the net equity appeal, Ms. Chaitman and her clients have continuously re-litigated the net equity

---

[17] A copy of the Sixth Interim Fee Hearing Transcript is annexed to the Chaitman Decl. as Exhibit E.

issue. Below is a non-exhaustive list of matters and appeals in which Movants (or Ms.

Chaitman, on behalf of certain movants) have litigated net equity and other BLMIS-related

issues:[18]

- *Peskin v. Picard*, No. 10-4278 (2d Cir.): Movants Diane and Roger Peskin, with Ms. Chaitman as counsel, sued the Trustee in the bankruptcy court (No. 09-1272 (Bankr. S.D.N.Y.) (BRL)) seeking a declaration that the Trustee's net equity calculation is incorrect, as well as damages. The bankruptcy court dismissed the complaint, this Court affirmed, and the matter is now on appeal before the Second Circuit.

- *Canavan v. Harbeck*, No. 10-954 (D.N.J.): Three BLMIS customers, with Ms. Chaitman as counsel, filed an action against SIPC's Board of Directors and CEO/President on behalf of a prospective class defined as "customers of Madoff who are not entitled to their full SIPC insurance under SIPC's Net Investment Policy" (the "New Jersey Action"). The Trustee subsequently filed an application in the bankruptcy court to enjoin the New Jersey Action. The New Jersey Action was then transferred to this Court, and referred to the Bankruptcy court, where it was voluntarily dismissed by Ms. Chaitman's clients.

- *Picard v. Fox & Marshall*, No. 10-4652 (S.D.N.Y.) (JGK): Two separate putative class actions were filed, through Ms. Chaitman, on behalf of Adele Fox and Susanne Stone Marshall against Jeffry Picower and related parties (the "Picower Defendants") in the Southern District of Florida (collectively, the "Florida Actions"). Both complaints relied heavily on the allegations in the complaint filed by the Trustee against (*Picard v. Picower, et al.*, Adv. Pro. No. 09-1197 (Bankr. S.D.N.Y.) (BRL)). On April 1, 2010, the Trustee successfully moved in the bankruptcy court to preliminarily enjoin the Florida Actions, and the bankruptcy court further held that the Florida Actions were void *ab initio* and violative of the automatic stay. An appeal of that order is pending before this Court and has been consolidated with the action listed directly below.

- *Picard v. Picower*, No. 09-1197 (Bankr. S.D.N.Y.) (BRL): On December 17, 2010, the Trustee filed a motion in the bankruptcy court seeking court approval of a settlement between the Trustee and the Picower Defendants. The settlement agreement provides that the Picower Defendants will return to the BLMIS estate $5 billion, and will forfeit to the United States Government an additional $2.2 billion, the aggregate of which constitutes 100 percent of the net transfers sought by the Trustee. Ms. Chaitman has filed an objection to the Picower settlement

---

[18] For a more complete listing of all of the filings made by Ms. Chaitman in the BLMIS liquidation or related proceeding, see page 5 n.4 of the Trustee's Reply to Objection to Sixth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From October 1, 2010 Through January 31, 2011 annexed to the Brown Decl. as Exhibit H.

and appealed the order approving the settlement to this Court, delaying the distribution of the $5 billion settlement funds to victims.

- *Picard v. Greiff*, No. 11-CV-3775 (S.D.N.Y.) (JSR): On June 2, 2011, Ms. Chaitman filed a motion for withdrawal of the reference of 108 avoidance actions on the grounds that the Trustee's avoidance powers are limited to the value of the fund of customer property and the amount of allowed claims as of an arbitrary date chosen by Movants, one of the arguments raised in the Sixth Objection. The motion will be fully briefed on July 18 and oral argument will proceed on July 28.

## Argument

Movants cannot meet any of the prerequisites for leave to take an interlocutory appeal. They identify no controlling issues of law, only issues of fact that require the Court to study the record below or consider facts presented to a court for the first time. Nor would granting Movants' request for leave to appeal materially advance the litigation in any way, but rather reward Movants and their counsel for their repetitive and baseless litigation against the Trustee to the detriment of other BLMIS victims. As such, the Motion must be denied.

## I.    SIPA's statutory framework governs compensation awards.

In a SIPA liquidation proceeding, customers are given preferred treatment in the distribution of "customer property," in which they share *pro rata* to the extent of their net equities and to the exclusion of other creditors. SIPA § 78fff-2(c)(1). To the extent of any shortfall in customer property, SIPC advances funds to the Trustee for payment to customers, within the statutory limits made. SIPA § 78fff-3(b)(2).

Because of SIPA's customer protection goals, administrative expenses such as fees for a trustee and counsel are not paid for by recoveries that are used to satisfy customer claims. In a SIPA proceeding, to the extent the general estate is insufficient, administrative expenses of the proceeding are paid out of funds advanced by SIPC. SIPA §78fff-3(b)(2). Customer property

is used only to satisfy customers, and not to pay the costs of the liquidation.  If customers are fully satisfied, then excess customer property becomes part of the general estate.  SIPA §78fff-2(c)(1).

In this case, because there is no general estate and only customer property, all administrative expenses are being paid with funds advanced by SIPC.  If and when customers are fully satisfied, then SIPC may begin to recoup the funds it paid to cover the administrative expenses of the liquidation proceeding, such as professional fees.  That would require, however, that all customers be satisfied in full and that there be excess customer property to allocate to the general estate.  Moreover, the general estate would have to be large enough to pay the expenses of the liquidation proceeding going forward, before SIPC could begin to recover its administrative expense advances.

Pursuant to section 78eee(b)(5)(C) of SIPA, SIPC is required to file a recommendation with the bankruptcy court with respect to any applications for compensation in a SIPA liquidation proceeding.   In cases where the requested compensation for administrative expenses is paid by SIPC without reasonable expectation of recoupment thereof, and the amounts sought by the professionals and recommended by SIPC for payment are the same, the "court *shall* award the amounts recommended by SIPC."  SIPA § 78eee(b)(5)(C) (emphasis added).  Thus, when there is no reasonable expectation that SIPC will recoup administrative expenses, SIPA provides that the court shall award to the trustee and counsel the amount recommended by SIPC.   In other circumstances, the court is required to "place considerable reliance on the recommendation of SIPC."  *Id.*

**II.**     **This motion should be denied because it raises factual issues inappropriate for interlocutory review and improperly re-litigates the net equity issue.**

Movants cannot meet the standard for interlocutory review, which requires them to

demonstrate, *inter alia*, that the disputed ruling involves a controlling issue of law. Movants'
argument regarding whether SIPC has any reasonable prospect—today—of recouping its
administrative expenses is inherently factual, requires the Court to review the underlying
record, erroneously assumes that the full value of allowable customer claims is known and
determined (belied even by the pending appeal to the Second Circuit concerning the
interpretation and extent of a customer's "net equity" claim), and would involve more than just
an analysis of a pure question of law. As such, the Motion must fail. Nonetheless, the Trustee
addresses each of Movants' asserted issues of law herein.

### A.    The standards for leave to appeal guard against motions such as the one here.

Pursuant to 28 U.S.C. §158(a), the district court has jurisdiction to hear appeals of
interlocutory orders of the bankruptcy court, provided that the district court grants, within its
discretion, leave to appeal. However, it is well-established that leave to appeal is granted only
in exceptional circumstances. *See In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 28 (S.D.N.Y.
1995); *In re Pan Am Corp.*, 159 B.R. 396, 401 (S.D.N.Y. 1993). This serves the established
judicial policy of discouraging interlocutory appeals and avoiding the resulting disruption and
delay which is caused by such piecemeal litigation. *See Ionosphere*, 179 B.R. at 28.

District courts generally apply the standards set forth in 28 U.S.C. §1292(b) when
determining whether to grant leave to appeal from an interlocutory order of the bankruptcy
court. *See, e.g.*, *Pan Am Corp.*, 159 B.R. at 401; *Ionosphere*, 179 B.R. at 28. Under 28 U.S.C.
§1292(b), the party seeking leave to appeal must establish that (1) the disputed ruling involves a
controlling question of law, (2) as to which there are substantial grounds for difference of
opinion, and (3) an immediate appeal from the order may materially advance the ultimate
termination of the litigation. *See Pan Am Corp.*, 159 B.R. at 401. The granting of a permissive

interlocutory appeal is limited to "extraordinary cases where appellate review might avoid protracted and expensive litigation," and its purpose is not to provide early review of difficult rulings in hard cases. *See German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp 1385, 1398 (S.D.N.Y. 1995).

A "controlling question of law" is one in which reversal of the decision of the bankruptcy court would terminate the action, or at minimum, determination of the issue appealed would materially affect the outcome of the litigation. *See North Fork Bank v. Abelson*, 207 B.R. 382, 389-90 (E.D.N.Y. 1997). The "'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Adelphia*, 333 B.R. at 658 (citations omitted). Mere disagreement with the lower court's ruling is insufficient to meet this standard. *See P. Schoenfeld Asset Mgt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 359 (D.N.J. 2001).

Substantial grounds for difference of opinion must arise out of a genuine doubt with respect to the correct applicable legal standard relied on in the order below. *See Adelphia*, 333 B.R. at 658. It is not sufficient that there is merely a strong disagreement on an issue between the parties. See *IBI Sec. Serv. v. Nat'l Westminster Bank USA (In re IBI Sec. Serv.)*, 174 B.R. 664, 670 (E.D.N.Y. 1993).

**B.      Rather than exceptional circumstances, Movants merely raise factual issues inappropriate for interlocutory review.**

The Sixth Interim Fee Order is an interlocutory order that requires Movants to establish that this is an exceptional circumstance requiring extraordinary relief—a standard Movants failed to meet before Judges Daniels and Scheindlin—in order for the district court to grant leave to appeal. *See In re Neuman*, No. M-47, 1990 U.S. Dist. LEXIS 5792, at *4-5 (S.D.N.Y. May 15, 1990) (MEL).

### 1.    Whether SIPC has a reasonable expectation of recoupment of its administrative expenses is a factual question.

The first question of law Movants allege is controlling here is whether the bankruptcy court must adhere to SIPC's recommendation regarding the fee requests of Trustee and counsel. The factual predicate for that legal question is whether SIPC has any reasonable expectation of recoupment of its administrative expenses.  The answer is no.

Despite a thorough explanation by the Trustee of the composition of the BLMIS estate in his reply to the Objection, *see* Brown Decl. Ex. H, ¶ 13-26.  Movants cling to their unfounded allegation that the fund of customer property currently consists of more than $9.8 billion.  They repeat their Objection almost verbatim in saying that the Trustee does "not include the $2.2 billion forfeited to the government by the Picowers, even though he previously represented that 'every penny' of the $7.2 billion settlement will be distributed to customers."

The $2.2 billion, and other funds forfeited by the Government, are in the possession of the United States Attorney's Office for the Southern District of New York ("USAO") (the "Forfeiture Fund").  As explained by the USAO in a recent memorandum of law with respect to the Picower forfeiture,[19] victims are entitled to petition for mitigation or remission of forfeiture in accordance with the criteria set forth in 28 C.F.R. Part 9.  The Government may contract with a special master to notify petitioners, process petitions, and make recommendations with regard to forfeited property.  28 C.F.R. § 9.9(c).

Pursuant to this authority, the Department of Justice has announced that it would retain Mr. Picard to serve as special master to assist the USAO and the Department of Justice ("DOJ")

---

[19] Memorandum of Law (1) In Opposition To The Motion Of Adele Fox To Intervene and To Amend, Modify, Or Rescind the Stipulation And Order Of Settlement, and (2) In Support of The Government's Cross Motion (A) To Dismiss The Claim of Adele Fox and (B) For Entry of a Final Order of Forfeiture at 32, *United States v. $7,206,157,717 On Deposit at JP Morgan Chase Bank, N.A.*, No. 10-CV-9398 (S.D.N.Y) (TPG) (ECF No. 13).

in the petition process to be conducted in connection with BLMIS-related forfeitures, in accordance with applicable regulations. Thus, if retained, Mr. Picard would wear "two hats," one as SIPA Trustee and one as DOJ special master. There is no basis, therefore, to allocate the $2.2 billion and other forfeited funds to the fund of customer property under SIPA, even though those funds may ultimately go to BLMIS victims through the forfeiture remission process.

With respect to the customer fund for which the Trustee is responsible under SIPA, the Trustee's pending motion for allocation and distribution has a very detailed explanation of the contents of the fund of customer property and the interplay of customer claims. *See* Motion for an Order Approving an Initial Allocation of Property to the Fund of Customer Property and Authorizing an Interim Distribution to Customers ("Allocation Motion").[20] (*BLMIS*, ECF No. 4048). As set forth therein, the Trustee has recovered, or entered into agreements to recover, approximately $7.6 billion. Because of certain appeals to the $5 billion Picower settlement, *see Fox v. Picard*, 11-CV-1298 (S.D.N.Y.) (JGK) , and *Marshall v. Picard*, 11-CV-1328 (JGK) (S.D.N.Y.), —one of which Ms. Chaitman has taken on behalf of a single client, Ms. Marshall, the other taken by Ms. Chaitman's former client, Ms. Fox—$5 billion of that settlement is not in the fund of customer property or available for distribution, but instead remains in an escrow account until those appeals are finally resolved or a final, nonappealable order of forfeiture is entered. *See Picard v. Picower*, No. 09-1197 (BRL) (ECF No. 25). Thus, the Trustee has only $2.6 billion in his possession.

As set forth in the Allocation Motion, due to other litigation-related matters, he has requested that the bankruptcy court approve allocating $2.3 billion to the fund of customer property. *See* Brown Decl. Ex. I, ¶ 65. The difference between the $2.6 billion in the Trustee's

---

[20] A copy of the Allocation Motion is annexed to the Brown Decl. as <u>Exhibit I</u>.

possession and the $2.3 billion that the Trustee sought permission to allocate to the fund of customer property is largely due to an appeal filed by Ms. Chaitman to the bankruptcy court's order denying her motion to vacate a $220 million settlement.  (*BLMIS*, ECF No. 3860; *Peshkin v. Levy-Church*, No. 11-CV-3313 (DAB)).   Contrary to Movants' unsupported assertions, therefore, the most that could be available in the distribution from the fund of customer property at this time if the bankruptcy court approves the Allocation Motion is $2.3 billion.

On this record, the bankruptcy court made a factual finding that there was no reasonable expectation of recoupment at this time, explaining, "[I]t would be very nice if during our lifetimes we see the situation come about where there is a likelihood of recoupment to SIPC.  It means that everybody else will have recovered what's appropriate for them.  I do not see that at this point in time nor am I speculating or should speculate."   Sixth Interim Fee Hearing Transcript, at 45. On that basis, the bankruptcy court applied the appropriate standard in approving the fee requests of the Trustee and B&H.  Questions involving the application of a legal standard to a factual record are, at best, mixed questions of law and fact, rendering them inappropriate for interlocutory review.  *Bernard L. Madoff Inv. Secs. LLC*, 2010 U.S. Dist. LEXIS 81492, at *17 (denying Movants leave to appeal Third Interim Fee Order because issue involved mixed question of law and fact).

More to the point, the dispute here really pertains to the factual predicate of whether SIPC has any reasonable expectation of recoupment of its administrative expenses, not the legal standard or its application, rendering it entirely inappropriate for interlocutory review.  Movants believe that there is a reasonable expectation of recoupment.  In contrast, the bankruptcy court, SIPC, and the Trustee agree that there is no reasonable expectation at this time (nor was there when this issue was raised in the Fifth Objection, addressed at the Fifth and Sixth Interim Fee

Hearings, and overruled in the Fifth and Sixth Interim Fee Orders).  Mere disagreement on an

issue—a factual one at that—is not sufficient to meet the standard for interlocutory appeal.  *See

IBI Sec. Serv.*, 174 B.R. at 670 (requiring a substantial difference of opinion concerning a

controlling question of law, which only exists when the legal issue is 'difficult and of first

impression'").   Movants' "beliefs" that something may occur in the future are not an

appropriate basis for interlocutory review.

Moreover, the issues presented are not ones that the Court "could decide quickly and

cleanly without having to study the record."  *Bernard L. Madoff Investment Secs. LLC*, 2010

U.S. Dist. LEXIS 81492, at *15.  Rather, the Court would have to review the extensive record

relating to the issues raised by Movants.  For example, the Court would have to review all of the

interim fee applications of the Trustee and B&H.  But the Court would not be able to stop there,

as the record relevant to the fee applications of the Trustee and B&H is not limited to the

applications alone.  The Court would have to review the Allocation Motion that determines the

composition of the fund of customer property and the general estate.  Over 16,000 customer

claims determinations are implicated.  The Court would have to review the hundreds of

litigations filed by the Trustee to assess their value, strength, and likelihood of recovery, as well

as the validity of the customer claims associated with those litigations that may be asserted and

allowed against the estate by operation of section 502(d) of the Bankruptcy Code.  These issues

raised by Movants are inherently factual and not appropriate for interlocutory review.

In any event, the record suggests that the bankruptcy court would have approved the

allowances of the Trustee and B&H even if it were in its discretion to do so.  At the Sixth

Interim Fee Hearing, the bankruptcy court remarked that "this is by any stretch of the

imagination one of the largest most complex sets of litigation that have come down the pike.

It's measured both in quality and quantity in the thousands with deadlines that have come upon everyone under the statute so that the December deadline requiring thousands of new law suits to be filed is . . . a big stretch for any law firm or any organization to deal with." *See* Sixth Interim Fee Hearing Transcript at 45-46. Thus, even under the discretionary standard that Movants suggest should have been applied by the bankruptcy court, there is no merit to the issue presented on appeal.

Moreover, an immediate appeal of the Sixth Interim Fee Order would not advance the termination of the BLMIS liquidation. It would merely force the Trustee to defend against another frivolous filing by Movants. Movants' attempts to manufacture an appealable issue where none exists should be rejected.

### 2. The Trustee's compensation for his work on behalf of the BLMIS estate has no bearing on any due process rights of Movants.

The second question of law that Movants claim is controlling is the alleged violation of their due process rights because the Trustee receives compensation for his work on behalf of the customers, creditors, and the estate. The standards governing compensation of a Trustee under SIPA and the Bankruptcy Code are clear. There is no substantial difference of opinion amongst courts as to the correct legal standard relied upon in the Sixth Interim Fee Order, a requirement for leave to appeal.

In an effort to bring themselves under the rubric of a constitutional violation, Movants make several leaps unsupported by facts or law. Movants' fallacious reasoning is that their due process rights are violated because the Trustee is paid for actions taken in a quasi-governmental capacity because the Trustee is a "decision-maker" for SIPC, a quasi-governmental entity. Motion 3-4. Each falsity builds on the last.

To begin, SIPC is not "an agency or establishment of the United States Government."

SIPA § 78ccc(a)(1).  Congress established SIPC as a "nonprofit corporation."  *Id.*  Nor is the Trustee the "decision-maker" for SIPC, but is instead an independent fiduciary appointed by the district court, pursuant to SIPA.  As such, this Trustee acts in a capacity no different than every other appointed trustee, whether bankruptcy or SIPA, and similar to receivers and other fiduciaries acting in a representative capacity on behalf of an estate.  The Trustee is not a federal state actor whose conduct is circumscribed by the United States Constitution and, specifically, the due process protections of the Fifth Amendment.

Further, due process requires adequate notice and an opportunity to be heard.  *See* U.S. CONST. amend. V; *see, e.g.*, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48-49 (1993); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Diaz v. Paterson*, 547 F.3d 88, 95 (2d Cir. 2008); *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir 1983) (judging alleged procedural due process violations by standard of reasonableness in context of time, place, and circumstances).  There is no question that Movants and their counsel have been provided with notice and an opportunity to be heard.  Movants, through Ms. Chaitman, have challenged in Article I and Article III courts virtually every decision and interpretation of law made by the Trustee thus far in the BLMIS liquidation.  There is simply no basis to suggest that any due process rights have been violated here.

The Trustee has made decisions and taken action in accordance with the fiduciary duties mandated by statute.  Because of the enormous benefit to defrauded BLMIS customers and the estate as a result of the Trustee's actions, he is entitled to seek compensation.  Consistent with SIPA's directive, the Trustee has sought compensation based upon a discounted hourly rate.  He has voluntarily written-off at least $100,000 from his fees during each of the six compensation periods, in addition to reducing his fees 10% pursuant to a public interest discount.  In total, the

bankruptcy court has awarded the Trustee $4,266,085.50 as reasonable compensation for services rendered since December 2008, and the Trustee has received $3,839,476.96 of that award, which has been paid over to B&H. These fees are never paid from the general estate, as is the normal practice during a bankruptcy, but instead by SIPC. *See* SIPA § 78eee(b)(5).

Movants attempt to use the Constitution as cover to suggest that an impropriety stems from the Trustee making decisions and acting on behalf of the estate. In fact, SIPA, in conjunction with the Bankruptcy Code, contemplates that a trustee will determine customer claims, marshal estate property through the liquidation of assets and the recovery of customer property and other damages, and make distributions to customers and creditors with allowed claims in accordance with the statute, all of which is subject to federal court review. *See* SIPA §§ 78fff; 78fff-1, 78fff-2, 78fff-3.[21] In connection with these services, a trustee is entitled to compensation. *See* SIPA § 78eee(b)(5). Tellingly, Movants cite to no case law where compensation to a SIPA trustee, bankruptcy trustee, or equity receiver was held to violate due process rights because of the actions taken, pursuant to statute, in those fiduciary capacities.

Quite simply, no due process violation is present here. What Movants are in fact saying—once again—is that they disagree with the Trustee's net equity determination. Alleging that the Trustee adopted the net investment method—the validity of which is a legal issue pending before the Circuit—to increase his compensation is nothing but a backdoor

---

[21] Within days of the Trustee's appointment, the Court entered the Order on Application For Entry of an Order Approving the Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief (the "Claims Procedures Order") that directed the Trustee to file with the Court, in accordance with SIPA, every six months an interim report detailing the progress made in the distribution of cash and securities to customers. (*BLMIS*, ECF No. 12). The Trustee has acted in accordance with the Claims Procedures Order and filed reports covering the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (*BLMIS*, ECF No. 314), July 1, 2009 to October 31, 2009 (the "Second Interim Report") (*BLMIS*, ECF No. 1011), November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (*BLMIS*, ECF No. 2207), April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038), and October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (*BLMIS*, ECF No. 4072).

attempt to litigate the net equity issue outside of that appeal.

In payment for the services summarized above and others completed consistent with SIPA, the bankruptcy court in a SIPA liquidation "shall grant reasonable compensation for services rendered . . . on an interim basis during the course of the liquidation proceeding at such times and in such amounts as the court considers appropriate."  SIPA § 78eee(b)(5)(A).  Such a circumstance does not deprive Movants of due process, nor does it pose a controlling question of law that warrants an interlocutory appeal.

## <u>CONCLUSION</u>

Movants have failed to demonstrate the elements supporting a request for leave to appeal the Sixth Interim Fee Order.  There are no controlling issues of law as to which there are substantial grounds for difference of opinion, and immediate appeal of the Order will not advance the ultimate termination of ongoing litigation.  Movants further have failed to demonstrate any extraordinary circumstances which would justify leave to appeal of the Order.

Based on the foregoing, the Motion should be denied.

Dated: New York, New York
      June 29, 2011

Respectfully submitted,

  *s/ David J. Sheehan*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

*Attorneys for  Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*