**<u>EXHIBIT E</u>**

# ORIGINAL

DOC #: 105
DATE FILED: 8 6 10
FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

SECURITIES INVESTOR PROTECTION          :
CORPORATION,                            :

                              Plaintiff, :

         -against-                      :

BERNARD L. MADOFF INVESTMENT            :
SECURITIES LLC,                         :
                                        :
                             Defendant, :
-----------------------------------------------------X
In re                                   :
                                        :
BERNARD L. MADOFF,                      :
                                        :
                               Debtor.  :
-----------------------------------------------------X

**OPINION AND
ORDER**

SIPA Liquidation
No. 08-01789
(Substantively
Consolidated)

09271

No. M47 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

Diane Peskin, Roger Peskin, Maureen Ebel, and certain other former

customers ("Movants")[1] of Bernard L. Madoff Investment Securities LLC

---

[1]    The Movants only provide claim information regarding the Peskins
and Ebel. *See* Response of the Securities Investor Protection Corporation in
Opposition to Motion by Diane and Roger Peskin and Maureen Ebel for Leave to
Appeal ("SIPC Opp.") at 3. Even though more than one hundred customers are
listed as movants in addition to the Peskins and Ebel, *see* Customers Represented
by Becker & Poliakoff, LLP, Ex. A to Declaration of Helen Davis Chaitman in
Support of Motion for Leave to Appeal, nothing is known concerning these other
Movants except that they are former customers of BMIS. *See* Memorandum of
Law in Support of Motion for Leave to Appeal ("Mov. Mem.") at 1.

-1-

MICROFILMED
AUG – 9 2010 9 AM

("BMIS") are moving for leave to appeal an order of the bankruptcy court for the Southern District of New York ("bankruptcy court"). In that order, the bankruptcy court allowed interim compensation for the bankruptcy trustee for the liquidation of BMIS, Irving H. Picard ("Trustee"), and the Trustee's counsel, Baker & Hostetler LLP ("B&H"). For the reasons set forth below, the motion for leave to appeal is denied.

## II.    BACKGROUND

### A.    Initial SEC Proceedings

Bernard L. Madoff was arrested on December 11, 2008, in connection with a multi-million dollar securities fraud scheme.[2] On the same day, the Securities and Exchange Commission ("SEC"), filed a complaint in the United States District Court for the Southern District of New York ("District Court") against Madoff and BMIS.[3]

> On December 15, 2008, pursuant to section 78eee(a)(4)(A) of [Chapter 2B-1 of Title 15 of the United States Code — the Securities Investor Protection Act of 1970 ("SIPA")], the SEC consented to a combination of the SEC Action with an application of the Securities Investor Protection

---

[2]    *See* Memorandum of Law of Irving H. Picard, Trustee, and Baker & Hostetler LLP in Opposition to Motion of Diane and Roger Peskin, Maureen Ebel and Certain Other Customers for Leave to Appeal ("Tr. Opp.") at 4.

[3]    *See id.*

-2-

Corporation ("SIPC").[4]

The SIPC application alleged, inter alia, that under section 78eee(a)(3) of SIPA, "[BMIS] was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA."[5] The District Court then ordered the appointment of the Trustee and referred the liquidation proceedings to the bankruptcy court.[6]

B.    The Trustee's Duties

A substantial portion of the Trustee's duties is the oversight of the claims process throughout the liquidation.[7] The Trustee reviews and determines claims under SIPA and orders of the bankruptcy court during the liquidation.[8] Under SIPA,

---

[4]    *Id.* "Congress's primary purpose in enacting SIPA was to protect investors against financial losses arising from the insolvency of their brokers . . . ." *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009). "SIPC may file an application for a protective decree under the Securities Investor Protection Act of 1970. The filing of such application stays all proceedings in the case under this title unless and until such application is dismissed. If SIPC completes the liquidation of the debtor, then the court shall dismiss the case." 11 U.S.C. § 742.

[5]    Tr. Opp. at 4.

[6]    *See id.* at 5; SIPC Opp. at 3.

[7]    *See* SIPC Opp. at 3-4.

[8]    *See id.*

-3-

08/13/2010 FRI 12:59 FAX                                                                      008/022

> [t]he claims of customers are satisfied with customer
> property which generally is cash and securities received,
> acquired or held by the broker or dealer for the accounts of
> customers. To the extent customer property is insufficient,
> SIPC advances funds for the satisfaction of customer
> claims. The limit of protection is $500,000 per customer.[9]

SIPA requires that the SIPC be repaid for any advances made during liquidation

proceedings.[10]

### C.    The Movants

As former customers of BMIS, the Peskins filed one claim and Ebel

filed two claims in the liquidation proceeding in the bankruptcy court.[11] The

Trustee allowed Ebel's claims which, in aggregate, amount to $3,639,264.61.[12]

The Trustee also allowed the Peskins' claim for $2,310,191.25.[13] "In partial

satisfaction of their claims, with funds advanced by SIPC, the Trustee paid a total

of $1 million to Ms. Ebel on her two claims, and $500,000 to the Peskins. The

remainder of their claims will be satisfied out of any customer property that the

---

[9]    *Id*. at 2 n.2 (citing 15 U.S.C. §§ 78fff-3(a), 78lll(4)).

[10]    *See* 15 U.S.C. 78fff-2(c)(1) ("The trustee shall allocate customer
property of the debtor as follows: first, to SIPC in repayment of advances made by
SIPC . . . .").

[11]    *See* SIPC Opp. at 2.

[12]    *See id*. Ebel was allowed two claims because she held two accounts
— an individual account and a trust account. *See id*. at 2 n.2.

[13]    *See id*. at 2.

Trustee collects."[14]

### D.   The Trustee's Disinterestedness and Compensation

On January 2, 2009, after a hearing, the bankruptcy court determined

that the Trustee and B&H were "in compliance with the disinterestedness

requirement in [section] 78eee(b)(3) of SIPA, section 327(a) of [Title 11 of the

United States Code ("Bankruptcy Code")], and Bankruptcy Rule 2014(a)."[15]   On

February 25, 2009, the bankruptcy court entered an order allowing the Trustee and

B&H to apply for interim compensation for their services and setting forth

procedures for such applications.[16]

### E.   Procedural History

#### 1.   The Adversary Proceeding

The Movants in the instant action commenced an adversary

proceeding against the Trustee in the bankruptcy court on June 10, 2009, seeking,

inter alia, a declaration that the Trustee's "net equity interpretation is incorrect and

that he is bound by SIPA to fix a customer's claim at the balance shown on the

---

[14]   *Id.* at 2-3.

[15]   Tr. Opp. at 5 (citing 1/2/09 order of the bankruptcy court).

[16]   *See id.*

-5-

customer's last [BMIS] statement."[17] In evaluating claims, the Trustee uses a

method "sometimes referred to as the 'cash-in, cash-out' approach."[18] Using this

method, claims were calculated "in the amounts that a customer actually deposited

with [BMIS], less the amounts that the customer withdrew from the account

. . . ."[19] The Movants dispute this methodology by requesting that "payment of

customer claims [be] based upon their last statements."[20]

On September 10, 2009, the court dismissed the Movants' complaint

but granted the Trustee's motion to permit all customers to participate in the

litigation concerning the calculation of net equity.[21] On March 8, 2010, the

bankruptcy court issued a decision upholding the "cash-in, cash-out" approach.[22]

"Petitions for leave to appeal [this decision] have been filed with the Second

Circuit by various parties, including the Movants, and the application for direct

---

[17]    *Id.* at 7-8 (citing the Movants' complaint in the adversary proceeding).

[18]    *Id.* at 7.

[19]    *Id.*

[20]    Transcript of Hearing on the First Interim Fee Applications on August 6, 2009 ("8/6/09 Hearing"), Ex. B to Declaration of Keith R. Murphy (Trustee's Counsel) in Support of Trustee and Baker & Hostetler's Opposition to Motion of Diane and Roger Peskin, Maureen Ebel and Certain Other Customers for Leave to Appeal ("Murphy Decl."), at 32:17-18.

[21]    *See* Tr. Opp. at 8 (citing 9/10/09 decision of the bankruptcy court).

[22]    *See id.* at 7.

-6-

appeal is currently pending."[23]

## 2. The First Interim Fee Application

The Trustee and B&H filed their first applications for interim
compensation and reimbursement of expenses on July 10, 2009.[24] The Movants
objected to these applications on August 3, 2009, primarily on the ground that the
Trustee and B&H "have a conflict of interest which under the established standard
. . . disables them from serving in this case and from receiving any
compensation."[25] The bankruptcy court rejected this objection and granted the fee
applications at the August 6, 2009 hearing.[26] The Movants then moved for leave to
file an interlocutory appeal of the August 6, 2009 order.[27] Judge George B.
Daniels denied the motion, holding that the Movants' objections "do not involve
controlling questions of law" because "they all revolve around the methodology
the Trustee utilized to compute net equity."[28]

---

[23]    *Id.*

[24]    *See* SIPC Opp. at 4.

[25]    8/6/09 Hearing at 30:7-10.

[26]    *See id.* at 38:22.

[27]    *See Securities Investor Protection Corp. v. Bernard L. Madoff Inv.
Sec. LLC*, No. M47, 2010 WL 185102, at *1 (S.D.N.Y. Jan. 11, 2010); Mov. Mem.
at 4.

[28]    *Madoff*, 2010 WL 185102, at *1.

-7-

### 3.   The Second Interim Fee Application

On November 23, 2009, the Trustee and B&H filed their second

applications for interim compensation.[29]  The Movants filed an objection to that

application on December 14, 2009, relating to, inter alia, the Trustee's "use of

Bankruptcy Rule 2004 to subpoena bank records of [BMIS] customers."[30]  On

December 17, 2009, the bankruptcy court overruled the objection "on basically the

same ground that [it had] done previously"[31] and granted the requested fees.[32]  The

Movants again moved for leave to file an interlocutory appeal of that order.[33]  That

motion "remains pending . . . ."[34]

### 4.   The Interim Fee Application at Issue

On April 9, 2010, the Trustee and B&H filed their third applications

for interim compensation, respectively seeking compensation of $671,591 and

---

[29]     *See* SIPC Opp. at 5.

[30]     Tr. Opp. at 11 (citing Movants' Second Objection at ¶¶ 61-68).

[31]     Transcript of Hearing on the Second Interim Fee Applications on
December 17, 2009, Ex. C to the Murphy Decl., at 33:25-34:1.

[32]     *See id.* at 35:2.

[33]     *See* Tr. Opp. at 12; SIPC Opp. at 5.

[34]     Tr. Opp. at 12.

-8-

$23,884,085 for the period from October 1, 2009, through January 31, 2010.[35] The

Movants filed an objection with the bankruptcy court to this application on April

28, 2010, based primarily on the following grounds:

> The Trustee and his counsel have demonstrated their
> complete and utter loyalty to SIPC . . . and their disloyalty
> to the Madoff customers to whom they owe a fiduciary
> duty. The egregious conflict of interest of the Trustee and
> his counsel was most clearly demonstrated by the April
> 2010 complaint he filed against three New Jersey investors
> (the "New Jersey Plaintiffs") to enjoin a suit against
> Stephen Harbreck, the President of SIPC, and the directors
> of SIPC (the "New Jersey Defendants"), alleging that they
> had perpetrated a massive investment insurance fraud (the
> "New Jersey Action"). The Trustee and his counsel seek to
> enjoin the New Jersey Plaintiffs from pursuing the New
> Jersey Action despite the fact that the New Jersey Action
> does not involve estate property, does not name SIPC or the
> Trustee as defendants, and will have no impact whatsoever
> on the Madoff liquidation. In seeking the injunction, the
> Trustee and his counsel have betrayed the investors by
> asserting substantive and procedural defenses on behalf of
> the New Jersey Defendants.[36]

The bankruptcy court held a hearing on the objection on May 5,

2010.[37] The Trustee and B&H attorneys argued that it was necessary for the trustee

to intervene in the New Jersey Action in order to "preserve [the bankruptcy

---

[35]    *See* SIPC Opp. at 5; Mov. Mem. at 5.

[36]    Reply Memorandum of Law in Support of Motion for Leave to
Appeal at 3.

[37]    *See* Tr. Opp. at 5.

court's] jurisdiction in connection with the net equity ruling . . . ."[38]  At the

hearing, the bankruptcy court overruled the objection, finding no basis to conclude

that there was any appearance of a conflict of interest on the part of the Trustee,[39]

and approved the fee applications.[40]  In response, the Movants filed the instant

motion for leave to file an interlocutory appeal.

## III.    APPLICABLE LAW

In deciding whether to grant leave to appeal a non-final bankruptcy

court order under section 158(a)(3) of the Bankruptcy Code, reviewing courts have

applied the standards set forth in section 1292(b) of Title 28 of the United States

Code, which governs the appealability of interlocutory district court orders.[41]  In

order to permit an interlocutory appeal pursuant to section 1292(b), the order being

appealed must "involve[] a controlling question of law as to which there is

substantial ground for difference of opinion," and the movant must also show that

"an immediate appeal from the order may materially advance the ultimate

---

[38]    Transcript of Hearing on the Third Interim Fee Applications on May 5, 2010 ("5/5/10 Hearing"), Ex. D to the Murphy Decl., at 95:25-96:2.

[39]    *See id.* at 97:23-25.

[40]    *See id.* at 98:19.

[41]    *See In re Alexander*, 248 B.R. 478, 483 (S.D.N.Y. 2000).

-10-

termination of the litigation . . . ."[42] This standard is strictly applied as interlocutory appeals from bankruptcy courts' decisions are "disfavored" in the Second Circuit.[43]

In addition, leave to appeal is warranted only when the movant demonstrates the existence of "exceptional circumstances"[44] to overcome the "general aversion to piecemeal litigation"[45] and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."[46] Interlocutory appeal "is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation,' . . . and is not intended as a vehicle to provide early review of difficult rulings in hard cases."[47] The decision whether to grant an interlocutory appeal from a bankruptcy court

---

[42]    28 U.S.C. § 1292(b).

[43]    *Fox v. Mandiri* (*In re Perry H. Koplik & Sons, Inc.*), 377 B.R. 69, 73 (S.D.N.Y. 2007) (quotation marks omitted).

[44]    *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006).

[45]    *In re AroChem Corp.*, 176 F.3d 610, 619 (2d Cir. 1999). *Accord Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 95 (2d Cir. 1997).

[46]    *Flor v. Bot Fin. Corp.* (*In re Flor*), 79 F.3d 281, 284 (2d Cir. 1996) (quotation marks and citations omitted).

[47]    *Liebert v. Levine* (*In re Levine*), No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (quoting *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

order lies with the district court's discretion.[48]

## IV.   DISCUSSION

The instant motion is denied because the Movants fail to satisfy the

section 1292(b) criteria for permitting an interlocutory appeal.[49] The Movants

neither present any "controlling question[s] of law as to which there [are]

substantial ground[s] for difference of opinion," nor do they establish "that an

immediate appeal from the order may materially advance the ultimate termination

of the litigation."[50]

The Movants' first issue for appeal is "whether a SIPC trustee and his

counsel may continue to serve when they are conflicted by their loyalty to SIPC."[51]

There are no substantial grounds for differences of opinion regarding this issue

because it is directly addressed by SIPA. In liquidation proceedings that warrant

SIPA protections, SIPA requires that the bankruptcy court hold a hearing to

---

[48]    *See, e.g., Gibson v. Kassover* (*In re Kassover*), 343 F.3d 91, 94 (2d
Cir. 2003).

[49]    The Trustee contests whether the Movants have standing to appeal.
*See* Tr. Opp. at 14-16. Because the Movants fail to satisfy the section 1292(b)
requirements, I will not address the complex issue of standing.

[50]    28 U.S.C. § 1292(b).

[51]    Mov. Mem. at 15.

-12-

establish the disinterestedness of trustees and their counsel.[52]  The Trustee and

B&H were deemed to be disinterested at a hearing on January 2, 2009.[53]

Additionally the Second Circuit, in *Securities and Exchange Commission v. Oxford*

*Securities, Ltd.*, has upheld the constitutionality of section 78eee(b)(3)[54] — the

portion of SIPA which discusses disinterestedness and mandates that the "court

shall forthwith appoint, as trustee for the liquidation of the business of the debtor

and as attorney for the trustee, such persons as SIPC, in its sole discretion,

specifies."[55]

    The Movants argue that much of the alleged conflict manifested

during the New Jersey Action, which occured after the disinterestedness hearing.[56]

Although it is certainly possible for a trustee to develop a conflict of interest after

the hearing, the determination of such an issue involves applying facts of the recent

events to the law.  Therefore, the issue of whether the Trustee's participation in the

---

[52]    *See* 15 U.S.C. § 78eee(b)(6)(A)-(B).

[53]    *See supra* n.15 and accompanying text.

[54]    486 F.2d 1396, 1396 (2d Cir. 1973) (reversing, without opinion, a
district court ruling that held 15 U.S.C. § 78eee(b)(3) to be unconstitutional
because giving SIPC, rather than the court, power to choose a trustee offends the
separation of powers and results in a "sham" appointment).

[55]    15 U.S.C. § 78eee(b)(3).

[56]    *See* Mov. Mem. at 16.

-13-

New Jersey Action constituted a conflict of interest is not "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record,"[57] and is consequently insufficient to warrant leave to file an interlocutory appeal.

The second issue raised by the Movants for appeal is "whether the bankruptcy court was required to approve the third interim fee applications because SIPC recommended that such applications be approved."[58] There are no grounds for differing opinions here because it too is directly addressed by SIPA — "the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC."[59] The Movants further argue that because the Trustee and B&H allegedly "reject[ed] certain of their statutory obligations," they should not be allowed to "seek protection" under section 78eee(b)(5)(C).[60] This argument fails because the determination of whether the Trustee and B&H failed to meet their statutory obligations is a fact-based inquiry.

---

[57]    *Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd.* (*In re Lehman Bros. Holdings, Inc.*), 422 B.R. 403, 406 (S.D.N.Y. 2009).

[58]    Mov. Mem. at 16.

[59]    15 U.S.C. § 78eee(b)(5)(C).

[60]    Mov. Mem. at 17.

-14-

The third issue raised by the Movants for appeal is "whether the [c]ustomers have been denied due process of law as guaranteed to them under the Due Process Clause of the Fifth Amendment . . . ." [61] The Movants argue that "Congress has impermissibly created a statutory scheme that is permeated by partiality, conflicts of interest, and bias by permitting SIPC to appoint and control the Trustee and the Trustee's counsel, regardless of the obvious conflict of interest between SIPC and the [c]ustomers."[62] The Movants contend that such a statutory scheme violates the impartiality that due process demands "'on the part of those who function in judicial or quasi-judicial capacities.'"[63] As noted, the Second Circuit has held that SIPA, as a statutory scheme allowing SIPC to appoint trustees, is constitutional.[64] Regarding due process specifically, SIPA requires that a bankruptcy court hold a hearing for the purpose of determining disinterestedness of the trustee.[65] Therefore, as a purely legal matter, it is beyond dispute that SIPA affords creditors due process when a trustee is appointed.

The Movants do *not* argue that the Trustee violated their due process

---

[61]    *Id.*

[62]    *Id.* at 18.

[63]    *Id.* (quoting *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)).

[64]    *See supra* n.54 and accompanying text.

[65]    *See* 15 U.S.C. 78eee(b)(6)(B).

rights by participating in the New Jersey Action — they attack SIPA as a general statutory scheme.[66] Even if they had so argued, granting leave to appeal would not be warranted because, as discussed above, this issue involves a mixed question of fact and law.[67]

Finally, an immediate appeal from this interim order is unlikely to substantially advance the termination of the litigation. An appeal investigating the disinterestedness of the Trustee in such a highly complex SIPC liquidation will create substantial delays in the central bankruptcy proceeding and surrounding litigation.[68] If the appeal were successful, a new trustee and its counsel would have to be appointed, which also would only serve to prolong the liquidation proceedings.

It is true that if a conflict of interest exists, as the Movants contend, between the former customers of BMIS and the Trustee and B&H, it would be more efficient to remove the Trustee and B&H now, rather than wait until a final order to do so. However, this is not a case where the alleged conflict of interest is

---

[66]    *See* Mov. Mem. at 18-19.

[67]    *See supra* n.57 and accompanying text.

[68]    *See DeVittorio v. Hall*, Nos. 07 Civ. 0812, 07 Civ. 1956, 2008 WL 273981, at *6 (S.D.N.Y. Jan. 29, 2008) (holding that an appeal potentially disqualifying counsel based on conflict of interest would delay discovery and trial).

-16-

so patently obvious as to create a significant threat to the litigation. The

bankruptcy court, which has great familiarity with this case, not only found that

there is no conflict of interest, but also stated, regarding the New Jersey Action,

that,

> [a]s a matter of fact, I think there is an obligation wherever
> the administration of the Madoff estate is a [sic] implicated
> for the Trustee to appear and deal with that. . . . If you bring
> on litigation, it is obvious that the Trustee has to go and
> react to it if that litigation implicates the administration of
> the estate, and that is apparently the case here.[69]

Thus, the Movants have failed to demonstrate circumstances that merit granting

leave to file an interlocutory appeal.

## V.    CONCLUSION

For the foregoing reasons, the Movants' motion is denied. The Clerk

of the Court is directed to close this motion.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          August 6, 2010

---

[69]    5/5/10 Hearing at 97:25-98:3, 98:7-10.

-17-

- Appearances -

**For Movants:**

Helen Davis Chaitman, Esq.
Becker & Poliakoff LLP
45 Broadway
New York, New York 10006
(212) 599-3322

**For Trustee:**

David J. Sheehan, Esq.
Marc Hirschfield, Esq.
Keith R. Murphy, Esq.
Tatiana Markel, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
(212) 589-4200

**For SIPC:**

Josephine Wang, Esq.
Kevin H. Bell, Esq.
Christopher H. LaRosa, Esq.
Securities Investor Protection Corporation
805 Fifteenth Street, N.W., Suite 800
Washington, D.C. 20005
(202) 371-8300