**<u>EXHIBIT F</u>**

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case Nos. 08-01789-BRL, 09-01154-BRL, 10-03114-BRL

4   - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

7                        Debtor.

8   - - - - - - - - - - - - - - - - - - - -x

9   SECURITIES INVESTMENT PROTECTION CORPORATION

10                       Plaintiff,

11      -against-

12  BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

13                       Defendant.

14  - - - - - - - - - - - - - - - - - - - -x

15  IRVING PICARD, TRUSTEE,

16                       Plaintiff,

17      -against-

18  VIZCAYA PARTNERS LIMITED, et al.,

19                       Defendants.

20  - - - - - - - - - - - - - - - - - - - -x

21  IRVING PICARD, TRUSTEE,

22                       Plaintiff,

23      -against-

24  ADELE FOX,

25                       Defendant.

1

2                  U.S. Bankruptcy Court

3                  One Bowling Green

4                  New York, New York

5

6                  September 14, 2010

7                  10:04 AM

8

9    B E F O R E:

10   HON. BURTON R. LIFLAND

11   U.S. BANKRUPTCY JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1   Adversary proceeding: 08-01789-brl Securities Investor

2   Protection Corporation v. Bernard L. Madoff Investment

3   Securities, LLC.

4   1) (cc-2895) Notice of Hearing on Fourth Applications For

5   Interim Compensation For Services Rendered And Reimbursement of

6   Actual and Necessary Expenses Incurred by Applicants

7

8   Adversary proceeding: 08-01789-brl Securities Investor

9   Protection Corporation v. Bernard L. Madoff Investment

10  Securities, LLC.

11  1) (cc-2883) Trustee and Baker & Hostetler LLP Application For

12  Allowance Of Interim Compensation For Services Rendered And

13  Reimbursement of Actual and Necessary Expenses Incurred

14

15  2) cc-(2884) Windels Marx Lane & Mittendorf, LLP Application

16  for Allowance of Interim Compensation for Services Rendered and

17  Reimbursement of Actual and Necessary Expenses Incurred from

18  February 1,2010 through May 31, 2010 and Request for Partial

19  Release of Holdback for Windels Marx Lane & Mittendorf, LLP,

20  Special Counsel

21

22  3) (cc-2886) Eugene F. Collins As Special Counsel For The

23  Trustee Application For Allowance Of Interim Compensation For

24  Services Rendered And Reimbursement of Actual and Necessary

25  Expenses Incurred

Page 4

1

2    4) (cc-2887) Williams, Barristers & Attorneys As Special

3    Counsel To The Trustee Application For Allowance Of Interim

4    Compensation For Services Rendered And Reimbursement Of Actual

5    And Necessary Expenses

6

7    5) (cc-2888) Attias & Levy As Special Counsel For The Trustee

8    Application For Allowance Of Interim Compensation For Services

9    Rendered And Reimbursement of Actual and

10   Necessary Expenses Incurred

11

12   6) (cc-2889) SCA Creque as Special Counsel To The Trustee

13   Application For Allowance Of Interim Compensation For Services

14   Rendered

15

16   7) (cc-2890) Schiltz & Schiltz as Special Counsel To The

17   Trustee Application For Allowance of Interim Compensation For

18   Services Rendered And Reimbursement Of Actual and

19   Necessary Expenses Incurred

20

21   8) (cc-2891) Hogan Lovells International LLP (Formerly Lovells

22   LLP) As Special Counsel To The Trustee Application For

23   Allowance Of Interim Compensation For Services Rendered And

24   Reimbursement Of Actual And Necessary Expenses Incurred

25

Page 5

1    9) (cc-2892) Mishcon de Reya As Special Counsel To The Trustee

2    For Allowance Application Of Interim Compensation For Services

3    Rendered

4

5    10) (cc-2893) Kugler Kandestin, LLP As Special Counsel To The

6    Trustee Application For Allowance Of Interim Compensation For

7    Services Rendered And Reimbursement of Actual and Necessary

8    Expenses

9

10   11) (cc-2894) Higgs Johnson Truman Bodden & Co. As Special

11   Counsel To The Trustee Application For Allowance of Interim

12   Compensation For Services Rendered And

13   Reimbursement Of Actual And Necessary Expenses Incurred

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Zipporah Geralnik

Page 6

```
 1
 2    A P P E A R A N C E S :
 3    BAKER AND HOSTETLER LLP
 4         Attorneys for Irving H. Picard, Trustee for the
 5         Substantively Consolidated SIPA Liquidation of
 6         Bernard L. Madoff Investment Securities LLC and Bernard
 7         L. Madoff
 8         45 Rockefeller Plaza
 9         11th Floor
10         New York, NY 10111
11
12    BY:   DAVID J. SHEEHAN, ESQ.
13          IRVING H. PICARD, ESQ.
14
15
16    SECURITIES INVESTOR PROTECTION CORPORATION (SIPC)
17         805 15th Street, N.W.,
18         Suite 800
19         Washington, DC  20005
20
21    BY:   KEVIN H. BELL, ESQ.
22
23
24
25
```

Page 7

```
 1

 2    A P P E A R A N C E S (continued):

 3    WINDELS MARX LANE & MITTENDORF, LLP

 4         Attorneys for SIPA Trustee and Chapter 7 Trustee

 5         156 West 56th Street

 6         New York, New York 10019

 7

 8    BY:   ALAN NISSELSON, ESQ.

 9         REGINA  GRIFFIN, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 8

1                    P R O C E E D I N G S

2             THE COURT:  Good morning.

3             IN UNISON:  Good morning, Your Honor.

4             THE COURT:  Please be seated.

5             THE CLERK:  SIPC v. Bernard L. Madoff Investment

6    Securities, LLC.

7             MR. SHEEHAN:  Good morning, Your Honor.

8             THE COURT:  Good morning.

9             MR. SHEEHAN:  David Sheehan of Baker Hostetler counsel

10   to the trustee, Irving Picard.  This morning here with me is

11   Kevin Bell from the Securities Investor Protection Corporation,

12   Mr. Nisselson and his counsel, Regina Griffin, for Windels Marx

13   and, of course, the trustee.

14            THE COURT:  Are there any other appearances?

15            MR. SHEEHAN:  No, I don't think so, Your Honor.

16            Your Honor, there are a number of matters on before

17   you this morning all involving interim fee applications.  The

18   only one of which is opposed is that of Baker Hostetler and the

19   trustee, Mr. Picard.  What I would propose is that we deal with

20   the unopposed applications first.  That is with Your Honor's

21   permission.

22            THE COURT:  That's acceptable.

23            MR. SHEEHAN:  Your Honor, before you this morning are

24   applications for third interim fee application of Windels Marx

25   Lane & Mittendorf, counsel to Mr. Nisselson who is still

Page 9

1   continuing as a Chapter 7 trustee in connection with the

2   Bernard L. Madoff matter.  As I said, there are no -- there is

3   no opposition to this application.  Since the inception of Mr.

4   Nisselson's work as trustee and that of his counsel, they have

5   rendered invaluable service to the trustee in numerous

6   litigations that they've already commenced or are underway

7   involving significant corporate transactions engaged in by Mr.

8   Madoff and his family, principally BOM Air (ph.) family, the

9   Madoff Energy, Primax and a number of others all of which are

10  very convoluted transactions engaged in by Mr. Madoff, as I

11  said, his family and, in some instances, third parties

12  utilizing the customer property of BLMIS for their own ill

13  gotten gains.

14       As I say, the work has been first rate.  It's been a

15  pleasure to work with the Windels Marx firm and the trustee and

16  his counsel would strongly recommend that this application be

17  approved.

18       THE COURT:  Does anyone want to be heard?

19       MR. BELL:  Your Honor, Kevin Bell on behalf of the

20  Securities Investor Protection Corporation.  SIPC has reviewed

21  the application very thoroughly, Your Honor, has discussed the

22  application with Windels Marx.  There have been certain

23  adjustments made after SIPC's suggestions.  The SIPC supports

24  the interim compensation and expenses as well as the release of

25  190,000 dollars that was previously withheld prior to awards

Page 10

1    this Court has made.

2          THE COURT:  Does anyone else want to be heard?  I'm

3    inclined to grant the application.

4          IN UNISON:  Thank you, Your Honor.

5          MR. SHEEHAN:  Your Honor, the balance of the

6    applications which I'm going to do within a group are all

7    interim fee applications in connection with counsel retained by

8    the trustee and various jurisdictions in Europe and in the

9    Caribbean.

10          The first is the application of Eugene F. Collins.  He

11   is located in Ireland.  There are several funds in Ireland.  We

12   are in the process of negotiating with them at this point

13   therefore it would be inappropriate to get into details but

14   suffice it to say, as everything associated with the Bernie

15   Madoff matter, is -- involves significant dollars.  They

16   certainly are -- it is true here.

17          Thema International is one of the feeder funds that

18   we're negotiating with and there are, as I said, significant

19   dollars involved.  If, in fact, we cannot resolve those with

20   the impending date of December 11th, Your Honor, we will surely

21   be seeing a complaint in connection with that and Mr. Collins

22   will be of great assistance to us there.

23          Mr. Williams -- the Williams firm works with us in

24   Bermuda.  In Bermuda, there are a number of feeder funds that

25   are involved, one of -- and we have, in fact, secured and

Page 11

1   restrained 110 million dollars.  Needless to say, there's a few

2   people fighting over that including Mr. Picard as trustee.  We

3   are fully engaged with Alpha Prime which is the principal

4   feeder fund there.  Mr. Williams has been assisting us in those

5   efforts.  Again, efforts are trying to be made to resolve that.

6   We're not sure where that is going to end up but more than

7   likely in the form of a complaint giving the impending date.

8          Gibraltar, Your Honor has a lot of familiarity with

9   since you've already entered a default judgment in the about of

10  180 million dollars in favor of Mr. Picard as trustee.  We are

11  in the process of seeking the enforcement of that, with Your

12  Honor's assistance, with the court in Gibraltar.  We've had, as

13  Your Honor knows, a good deal of success on several fronts

14  there including the production of documents and an appeal.

15  That appeal resulted in 30,000 pounds being awarded to Mr.

16  Picard as trustee under the English system of the winner goes

17  the spoils.  So we actually got paid for our discovery efforts

18  there.  And the Attias & Levy firm has been of extraordinary

19  help in that regard.  It's a very complex situation and we've

20  has, as I've said, much success.

21          BVI is one of the more difficult situations.  There

22  are --

23          THE COURT:  Get me back to the Gibraltar.

24          MR. SHEEHAN:  Yes, Your Honor.

25          THE COURT:  Has there been a reaction to the Court's

BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES

Page 12

1    correspondence with he Gibraltar court?

2         MR. SHEEHAN:  Yes.  There has, Your Honor.  So, the

3    reaction has been positive on several fronts.  The court

4    certainly is inclined to view our position favorably there, so

5    much so that several of the parties have -- if Your Honor will

6    recall, because it was a default, we invited them, if they

7    wished, to come here to litigate.  We weren't concerned about

8    litigating the issue, just that they weren't appearing.

9         With Your Honor's arrival on the scene through your

10   letter to the court, they've now suggested to us that perhaps

11   they'd be better off coming here and seeking our assistance in

12   relief from the default and having a trial take place which, of

13   course, we'd be happy to do.  So I think we've -- I don't know

14   if that's how it's going to work out, Your Honor.  They're

15   considering your options --

16        THE COURT:  What about the funds on deposit and the

17   court in Gibraltar?

18        MR. SHEEHAN:  They're still sitting there on deposit.

19   They have not been moved over to Mr. Picard at this point.  But

20   I think it's -- it's always difficult to predict in the area of

21   litigation, Your Honor, but the momentum seems to be in favor

22   of the trustee.

23        The -- in the British Virgin Islands, there are twenty

24   feeder funds.  The SCA Creque firm is the firm that we've

25   retained there, has been of assistance to us in a number of

Page 13

1    fronts.  We have not instituted other than in the Harley

2    situation a litigation there.  We are negotiating with all of

3    the representatives of the feeder funds but, needless to say,

4    given the significant amount of money involved, about 1.5

5    billion dollars in the aggregate, we are preparing complaints

6    in the event that we cannot resolve those matters.

7              Luxemburg involves the Luxalpha and related funds that

8    are there.  That represents about 330 million dollars at this

9    point, Your Honor.  Schiltz & Schiltz has again been working

10   with us.  Our difficulty there has been obtaining documents, as

11   Your Honor is probably well aware of, the privacy laws in

12   France, Switzerland and Luxemburg are pretty stringent.  We're

13   working very hard to get around those and to negotiate relief

14   because I think, ultimately, if we have to litigate those

15   issues, I'm persuaded that we have a better position than they

16   believe we have because they're all subject to jurisdiction of

17   this court and I think the law favors us -- you may comment,

18   but that's where we are.  We've managed to persuade them of

19   that and I think we're going to get most of the documents but

20   again, given where we are and the amount of money involved,

21   close to half a billion dollars, I believe that we will be

22   probably again instituting litigation here.  So, in the next

23   several months, I think Your Honor is going to see a

24   significant number of filings of complaints against feeder

25   funds.  Because not withstanding the diffi -- the efforts,

1    extensive efforts by the trustee's counsel and his counsel in

2    these jurisdictions, the complexity, nature and scope of these

3    matter and the initial reaction, of course, always being that I

4    didn't know and us then having to persuade them that perhaps

5    they did, it takes a good deal of time and we're still in that

6    process.  So I'm persuaded that more than likely we're going to

7    end up with more complaints than settlements in this regard.

8         London, there's two counsel here and the reason for

9    that is Hogan and Lovells.  We had Lovells but when they got

10   together with Hogan, they were conflicted out.  We couldn't

11   work out that conflict so we brought in a very prominent firm

12   in London, Mishcon de Reya as the special counsel to succeed

13   them.  That has been a very smooth transition.  We've had very

14   good success there in terms of, again, discovery of the feeder

15   funds.  A good many of the feeder funds are managed by firms in

16   the -- London and so therefore they maintain most of their

17   documents and we had an application there recently and obtained

18   documents again.  Again, one, an 80,000 pound award to the

19   trustee for the costs associated with that endeavor.

20        So we've had a good deal of success again in that

21   forum in terms of getting documents which, again, underscores

22   why I think we're going to have success elsewhere.  The -- on

23   top of that we've also interviewed all fifteen of the employees

24   of MSIL.  We are preparing and we'll have a full report for

25   this Court as to the nature and background of the involvement

Page 15

```
 1    of the London operation and what it was doing in connection

 2    with the OMIS here in the United States.  It's, on the surface,

 3    a money laundering operation but there's much more deep

 4    involvement by a number of individuals all of whom will be

 5    pursued either here in the United States or through Mr. Picard

 6    because he is, as Your Honor knows, recognized in the

 7    proceedings in the liquidation of MSIL through that working

 8    with Mr. Acre (ph.) who is the joint liquidator.

 9         THE COURT:  To that end, and as I indicated to the

10    Supreme Court of Gibraltar, Mr. Picard has very strong standing

11    authority pursuant to Section 1505 of our Bankruptcy Code.

12         MR. SHEEHAN:  Yes, I agree, Your Honor.  And I think

13    this case -- I think Your Honor has noted this in the past and

14    I thin it's absolutely true that when we're all done here, in

15    the next whatever number of years it takes to get this done,

16    there's going to be some very interesting law made in the area

17    of Chapter 15 and evolved of Mr. Picard and foreign

18    jurisdictions.

19         We intend to vigorously pursue the strength afforded

20    us by the Bankruptcy Code and to incorporate that into, I

21    think, things that we'll be able to do in Europe.  Working with

22    Mr. Acres who as you know is the joint liquidator for missile

23    (sic) or we call MSIL.  And I think working in tandem, I think

24    we can accomplish many things there and that's what we're

25    looking forward to doing.  And Mishcon de Reya is now
```

BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES

Page 16

```
 1   succeeding Lovells in spearheading that effort and they've done

 2   a fine job.

 3            THE COURT:  You also have some very strong opinions

 4   from the UK high court --

 5            MR. SHEEHAN:  Yes.

 6            THE COURT:  -- from recently.

 7            MR. SHEEHAN:  Yes, the Rubin decision is a terrific

 8   decision for us, Your Honor, in forcing a default judgment, of

 9   all things, in the courts there which I thought was a terrific

10   outcome for us.  It's on appeal but I think -- one hopes that

11   the law will continue to swing in our favor.

12            THE COURT:  Well, it's based upon the Cambridge

13   decision --

14            MR. SHEEHAN:  Yes.

15            THE COURT:  -- of Lord Hoffmann which is essentially

16   the main comment the -- recommendation of the highest courts in

17   the UK.

18            MR. SHEEHAN:  Yes.  That's right.

19            Then the last two, Your Honor, Canada, there's really

20   only one event occurring up there.  There is some feeder fund

21   activity there.  It's more in the way of third-party

22   investment.  Kugler Kandestin firm has done fine work for us

23   there.  And last but not least of, there's the Caymans.  There

24   are four funds in the Cayman Islands.  The Higgs Johnson firm

25   has been with us almost from the outset of this litigation, has
```

Page 17

1   provided, again, invaluable assistance to us in terms of local

2   courts there, representing the trustee and assisting us in both

3   negotiations of -- with the feeder funds as well as in

4   discovery efforts.

5          So, Your Honor, on balance, all of the counsel that

6   we've retained we find to be fine colleagues who have done

7   great work for us who will continue to do so going forward and

8   the trustee and his counsel would recommend that all of those

9   applications be approved.  And I note, finally, for the record,

10  that they are indeed all unopposed.

11         THE COURT:  Does anyone want to be heard?

12         MR. BELL:  SIPC has support its recommendation in

13  support of these applications by the trustee's special counsel

14  and stands on its recommendation.

15         THE COURT:  The applications are granted.

16         MR. SHEEHAN:  Thank you, Your Honor.  Mr. Picard will

17  address the objections that were filed with regard to his

18  application and that of the firm.

19         THE COURT:  Sure.

20         MR. PICARD:  Good morning, Your Honor.  In the fourth

21  interim application for compensation, it cover a four month

22  period from February 1st through May 31st, I'm seeking approval

23  for $601,202.25 in fees and disbursements of $39.63.  At this

24  time I'm seeking payment of eighty-five percent in accordance

25  with the amended order establishing compensation procedures and

BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES

Page 18

1    the full $39.63 of disbursements.  SIPC has filed its

2    recommendations in favor of my portion of the application.

3            As Your Honor knows, in this case all the costs of

4    administration are being paid by SIPC including the fees of the

5    trustee as well as counsel including all the special counsel

6    that Mr. Sheehan has addressed.  And so it will -- it has

7    already agreed to advance the amounts that are necessary to pay

8    these applications.  In connection with my request, I expended

9    809.7 hours at an average hourly rate of $742.50 which includes

10   a ten percent discount of my normal rates and I've also written

11   off about 102,000 dollars in the interest of judicious billing

12   procedures.

13           The primary areas of my work are set forth in the

14   application both in the body and Exhibit B. Major areas involve

15   the claims review and related matters, Bankruptcy Court

16   litigation, case administration, avoidance actions, trustee

17   investigation and there's some significant time in connection

18   with the discussions with the U.S. Attorney's office.

19           As Your Honor will recall, we've recovered about 1.5

20   billion dollars since the beginning f the proceeding.  Contrary

21   to statements in one -- at least one of the objections, getting

22   that money was not easy.  You may recall early on we came to

23   court with a number of stipulations that were hotly negotiated

24   with a number of banks in order to recover money and securities

25   that Mr. Madoff had in his participant account at the

BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES

Page 19

1  Depository Trust also were not easy to get because, under the

2  circumstances, each of these financial institutions wanted to

3  make sure that we really were entitled to recover these things.

4  So that activity took a period of time.

5          In addition, we've settled two major pieces without

6  litigation.  One is the Optimal settlement for 235 million

7  dollars and the other was the Levy family settlement for 220

8  million dollars.  On top of that, we've also been able to

9  settle in the context of claims processing a lot of potential

10  preference actions to the tune of about fifty million dollars

11  at this point.  And in virtually all of the cases, the parties

12  did not have to pay money to us rather a portion, or in some

13  cases all, of the SIPC advance was used to cover the

14  settlement.  And all of those funds, the billion-five, is, in

15  my view, customer property and will be subject to allocation

16  and distribution in the near future.

17          One of the other objections seems to raise the

18  question about we haven't' shown much by way of results.  This

19  was a Ponzi scheme of longstanding, as you heard a moment ago,

20  broad geographical breadth.  And it's not unusual in cases of

21  this kind that results don't show up the minute you do

22  something.  But I think, as Mr. Sheehan indicated, over the

23  course of the next couple of months, the -- you will see and

24  everyone will see evidence of the work that has been done

25  during the current period and earlier periods.

Page 20

1          A number of the other objections, which I don't

2     propose to respond to, really relate to the difference of

3     opinion as to the SIPA statute and how it should be

4     interpreted.  Your Honor has ruled on a number of those issues

5     in the past.  Some have been taken on appeal and, in fact, one

6     of the objectors has sought leave to appeal three of the prior

7     fee applications.  Two have been denied by the District Court;

8     the third one was recently assigned to a judge and we would

9     expect that a similar result will occur.

10          Just to put a few facts on the record.  We've received

11     16,374 customer claims.  That includes duplicates, amendments,

12     modifications, supplements and even a few untimely claims.  As

13     of last Friday, we had determined 13,350 claims.  That's 81.5

14     percent.  Of that group, we had allowed 2,213 for 5,629,000,000

15     dollars and SIPC has committed about 723.4 million dollars for

16     payment on those claims.

17          Of the approximately 3,000 claims left to be

18     determined, there are about 2100 form claimants who, on the

19     record, don't appear to have accounts.  A number of these

20     claimants may be banks of broker-dealers and there is a

21     provision in the SIPC statute that if they are custodial

22     accounts, the beneficiaries of those accounts may be entitled

23     to SIPA coverage.  So it's taking some extra time to work

24     through those kinds of claims.  A lot of the other claims

25     involve insiders, Madoff family members, former employees and

BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES

Page 21

1    feeder funds against we have significant preference claims so

2    we have not determined them as yet.

3            We have currently pending nineteen avoidance actions

4    seeking about fifteen billion dollars.  We have -- and I know

5    we have talked in the past about one or another -- we have some

6    significant settlements that we've been working on.  We hope

7    that some of the related issues will get resolved in the  very

8    near future and that we will be able to present them to the

9    Court and that before the end of the year we'll be able to make

10   a distribution of a significant amount of money, larger than

11   the 1.5 billion we have.

12           One of the objections raised a question of how much

13   we've calculated, based on our money in/money out approach, the

14   total allowed claims will be.  We publicly stated on a number

15   of occasions as well as in court, that that number will be no

16   more than twenty billion.  I believe it will be a shade less

17   but we have a number of claimants that didn't file claims.  We

18   also have a number of issues, of course, with the preference

19   actions and depending on  how some of those play out the number

20   would be less than twenty billion.

21           Based on the record of this proceeding, Your Honor, I

22   request that you deny the objections and also the record in the

23   proceeding in general and award me the amount that I've

24   requested that SIPC has supported.  If you have any other

25   questions, I'd be happy to try to respond.

08-01789-cgm    Doc 4198-6    Filed 06/29/11    Entered 06/29/11 17:08:46    Exhibit F
BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES
Pg 23 of 35

Page 22

1          THE COURT:  Does anyone want to be heard?  There is no

2     response.  Is there anything else before me?

3          MR. SHEEHAN:  Just the fees of Baker.  I can talk for

4     a few minutes, Your Honor.

5          THE COURT:  Sure.

6          MR. SHEEHAN:  Your Honor, I feel somewhat inhibited

7     here because, as Your Honor knows, we don't file the narrative

8     associated with these applications and yet it is an extremely

9     telling narrative in terms of the work that's performed by the

10    firm.  So to one extent, we're disarmed.  We can't really talk

11    greatly about this because they are very sophisticated issues

12    involving multiple attorneys across a wide spectrum of law

13    suits.  In fact, in one of our recent applications, several of

14    our colleagues objected to things that we actually did disclose

15    suggesting that we perhaps breached even 408 by doing so.

16          Notwithstanding that inhibition, however, I feel

17    compelled t, because of some of the statements that have been

18    made, to explain that what is involved here is an enormous

19    task.  And let me break it down into three basic categories an

20    not burden the Court too much with a statement in support of

21    this but I think it is important, for purposes of the record,

22    to make it plain what's involved here.  We, first of all, have

23    the customer claims, as Mr. Picard said, over 16,000.  Now, a

24    good many of those involve feeder funds but -- and that may --

25    you may look at that and say well, on its face, in several

Page 23

1    weeks we're going to be arguing this motion with regard to

2    feeder fund investors and what should happen with them.

3            Well, that's not something you just casually arrive at

4    and it's not something you do by just looking badly at the

5    claim or without any research or looking at the feeder fund

6    itself.  A great deal of research had to be done both legally

7    and, more importantly, factually and forensically with regard

8    to each and every customer claim over 8,000 as well as all of

9    the feeder funders involved.  That's just one aspect of this

10   case.  That is an aspect to the case that I spend a lot of my

11   time on.  It's a very important thing, there are a number of

12   attorneys, very qualified attorneys working on that, that's

13   absolutely true.

14           But when you compare that to the work that went into

15   putting together -- and anyone who's read it knows what the

16   work was to do the Fairfield Greenwich amended complaint, the

17   research that went into that , the digging in, finding out all

18   of those things that went on for years and years against what?

19   A uniform front of silence.  No one's cooperating here.

20   Starting with Mr. Madoff and all the way down.  Either they are

21   being silent or they're represented.  Everything the trustee

22   does here, he does on his own but virtue of going through the

23   books and records, using the strong arm of 2004, taking

24   depositions and issuing subpoena for records.

25           This is a vast and enormous task.  It requires a wide

Page 24

1    spectrum of talent throughout the firm in order to do so.

2    There aren't just corporate issues here, there aren't just

3    bankruptcy issues.  Just think for the moment, if you were

4    involved as a financial institution in the 19 -- late 1990's in

5    to 2000 and you watched Mr. Madoff year in and year out with

6    those kind of returns, would you think about leveraging that?

7    Well, I'll tell you, they did.

8           Banks, financial institutions, many of them involved

9    in very sophisticated notes and swaps transactions, trades on

10   those.  Unbelievably sophisticated work being done by a wide

11   variety of people prominent throughout the financial services

12   industry.  The names will ring through this courtroom as to who

13   was involved and who was using Bernie Madoff and what they

14   knew.  All of that is out there.  That is all forthcoming.  And

15   that is only happened because of all the hard work that Mr.

16   Picard and his trustee and all the people that he's retained

17   the consultants, also paid for by SIPC; forensic accountants at

18   FTI, and Alix and other experts, all of whom have assisted us

19   in this endeavor.

20          That's just het feeder funds.  On top of that, there

21   are going to be, literally, and unfortunately, hundreds of

22   lawsuits.  Because this is, as I've often said to Your Honor, a

23   Ponzi scheme.  There's nothing else but other people's money

24   involved.  So there are those, those net losers, that's who

25   truly we represent; those net losers who did not get their

Page 25

1    money back.  We are going to seek from those net winners who

2    got their money, some of that back.

3         The trustee is exercising great discretion in that

4    regard and you'll see that.  In the next coming weeks there

5    will be submitted to Your Honor a broad plan associated with

6    this that has been well thought out and researched by the

7    trustee for Your Honor's consideration and, quite frankly, all

8    of our adversaries.  We would not embark on this kind of an

9    endeavor without including everyone within the process; our

10   adversaries as well as our colleagues and of course the Court.

11        And at the end of the day, we're hoping that most of

12   those can be resolved amicably at least cost and least pain to

13   those folks who are out there.  But they must realize that as

14   victimized as they may feel, the larger victim is, indeed,

15   those who did not get their money back.  And the trustee,

16   empowered by SIPA and by the Bankruptcy Code, is doing what

17   equity always does.  Equity is a quality and that is exactly

18   what we are trying to achieve here.

19        So there are literally dozens and dozens of attorneys

20   and those who've objected and said yes, it looks like a lot of

21   lawyers are involved, that's absolutely true.  Demanded by the

22   scope and magnitude of what we're confronted by.  And we work

23   vey hard every day to do that.  And at some point, I won't have

24   to speak in vagaries as I am here today; I understand that.

25   But I wanted Your Honor to know that we do take this very, very

Page 26

1   seriously, that we work very, very hard and that, as Mr. Picard

2   has said, in the next several weeks, months, all of that will

3   be forthcoming, all of that will be spread upon the record

4   including not only settlements that I think will be forthcoming

5   but in addition to that litigation that will demonstrate the

6   scope and magnitude of this case.

7          So I would recommend, Your Honor, respectfully, that

8   you approve our application here today.

9          MR. BELL:  Your Honor, Kevin Bell for SIPC.  This is

10  the fourth application on which SIPC is stating its position.

11  We have filed a recommendation in support.  This is week

12  ninety-three.  On December 15th, 2008, I filed SIPC's

13  application in the District Court.  Those ninety-three weeks

14  have been a long time in SIPC's life.  We have observed

15  everything that has occurred that Mr., Sheehan has alluded to.

16  We have read every page and every entry is the thousand of

17  pages of time records that were submitted to SIPC and we have

18  made suggested changes -- we have suggested changed to both the

19  trustee and counsel which, for the most part, were accepted and

20  resulted in write-offs and reduction of the fees sought.

21         Mr. Sheehan has alluded to and it will be very helpful

22  when December 11th comes, when the next fee application occurs,

23  to be able to let the world see what SIPC knows.  And that is

24  how involved this case is and with the in-depth work that

25  trustee and his lawyers, particularly Baker Hostetler, Windels

BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES

Page 27

1    and the numerous consultants the trustees have retained have in

2    pursuing these assets for the benefit of the fund of customer

3    property and a future distribution to those individuals that

4    qualify as customers to get the net losers back their fair

5    share of the money that was previously distributed but he

6    crook, Mr. Madoff.

7            SIPC has a very in-depth awareness of each nook and

8    cranny of the customer claims review and is extremely aware of

9    those claims that remain to be determined, as noted by the

10   trustee earlier.  To advise the Court, earlier this month

11   Congress has requested and received a reply from SIPC about

12   when it expects all the claims to be resolved and I am pleased

13   to tell the Court that SIPC has advised the court that it, in

14   consultation with the trustee, expects all claims to be

15   determined by the end of the year.  All 3,000 or so that remain

16   to be determined.

17           So with regard to the fees, you know, the objections

18   are repetitious of what has hap -- what has occurred and prior

19   to and I've made statements on the record and I make these

20   statements for the record because I would expect we will see an

21   appeal by the same individuals to the District Court from this

22   Court's award of the fees.  But the tasks that have been

23   performed by the trustee, as outlined in the time records and

24   outlined to SIPC, I can report to the Court have been

25   thoroughly and professionally addressed by counsel.  There is

08-01789-cgm   Doc 4198-6   Filed 06/29/11   Entered 06/29/11 17:08:46   Exhibit F
BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES
Pg 29 of 35

Page 28

1    no discrepancy between what trustee and counsel have requested

2    and what SIPC recommends.  And SIPC would recommend to the

3    Court, as it did in its written statement, that the Court

4    approve and award the fees as requested by trustee and counsel.

5    Thank you, Your Honor.

6             THE COURT:  Does anyone else want to be heard?

7             Ell, as has been pointed out, there have been several

8    objections to the fee requests.  Nobody's bothered to come to

9    court with respect to arguing in favor of their objections.

10   I'm somewhat concerned about that and the Court's taken the

11   time and trouble to contact the objectants to ascertain whether

12   they are coming here to stand by the papers that they filed.

13   The answer has been no and there has not been any response.

14            I'm surprised and a little bit disappointed because it

15   is important that when legitimate objections are filed with the

16   Court at least there's an opportunity for the recipients of

17   those objections to face the objectors and to discuss, on the

18   merits, the positions that they take.  This is the fourth fee

19   request and, essentially, with respect to this fee request,

20   basically the same arguments are advanced in support of these

21   objections as were advanced previously.

22            The objections previously, as have been pointed out by

23   other courts and this Court, all revolve around the methodology

24   used by the trustee to compute net equity.  That was observed,

25   for example, by Judge Daniels in his opinion of January 11th,

08-01789-cgm   Doc 4198-6   Filed 06/29/11   Entered 06/29/11 17:08:46   Exhibit F
BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES
Pg 30 of 35

Page 29

1    2010.  That issue is now fast tracked to the second circuit and

2    the disagreement with a litigator posture is not really the

3    appropriate basis to object to a request for fees.

4         Under these circumstances, it is a bit disconcerting

5    to the Court.  Many of the arguments raised in the objections

6    deal with not only the disagreement with the litigation posture

7    taken by the trustee, SIPC and the law firm but with respect to

8    the actual process and administration of the case which has

9    been discussed at great length here this morning as a thorough

10   report to the Court, which I'm pleased in on this record.  But

11   likewise, in connection with SIPC's letter to Congress which is

12   a public document available to all and which, essentially,

13   describes the exact status as has been described to the Court

14   this morning and is largely the response to much of the

15   objections that have been lodged here by parties who didn't

16   bother to show.

17        It is also true that this has been a very, very large

18   and complex and broad international and national set piece of

19   litigation.  The sandbox is -- litigation sandbox is worldwide.

20   The issue and negotiation sandbox, likewise, is worldwide with

21   the trustee required to appear and respond to litigation, both

22   before this Court and other courts but in connection with he

23   international aspects of the proceedings.

24        And to quote statements that were made in response to

25   objections filed to the previous applications, much of the

08-01789-cgm    Doc 4198-6    Filed 06/29/11    Entered 06/29/11 17:08:46    Exhibit F
BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES
Pg 31 of 35

Page 30

1    expenses and cost of litigation is incurred because there is an

2    obligation, wherever the administration of the Madoff estate is

3    implicated, for the trustee to appear and deal with that.  If

4    litigation is brought on, it is obvious that the trustee has to

5    go and react to it.  If that litigation implicates the

6    administration of the estate, and that apparently is the case

7    with much of the request for fees here, it is also noteworthy

8    that much of the litigation effort has been spent in reaction

9    to litigation brought either by the movants, the objective --

10   objectants here or those that are aligned with them.

11          And in sum, I do find that there are no new facts or

12   arguments that have been advanced today which would alter my

13   prior findings concerning conflicts and the appropriateness of

14   the fees that have been requested here today.  It is also

15   interesting, and parties seems to have lost sight of the fact,

16   that once upon a time, before Congress changed the rules, the

17   Court had some discretion to modify a trustee's fees but in SEC

18   against Charisma Securities Corp., 506 F.2d (2d Cir. 1974), it

19   was noted that the trustee had this discretion.

20          However, SIPA was amended in 1978 and now the

21   recommendations of SIPC are binding on the Court in most cases.

22   That's in the statute.  I need not paraphr -- go in and

23   regurgitate the entire statute but in part, "in any case in

24   which the allowances to be paid by SIPC without the reasonable

25   expectation of recoupment, as provided in this chapter, and

BERNARD L. MADOFF INVESTMENT SECURITIES LLC ADVERSARIES

Page 31

```
 1    there was no difference between the amounts requested and the

 2    amounts recommended by SIPC, the Court shall award the amounts

 3    recommended by SIPC."

 4              So there's a mandatory shall there and one wonders why

 5    Congress even bothered to involve this Court in the evaluation

 6    of the fees because the statute, primarily, it leaves that to

 7    SIPC to review and pay.  It does not come out of the estate.

 8    And under 78eee(b)(5)(C), I must approve the fees when the

 9    allowance to be paid by -- is to be paid by SIPC, the fact

10    here; there is no reasonable expectation of recoupment, that

11    does not appear that there is a reasonable expectation that

12    SIPC is going to be repaid by the estate; and there's no

13    difference between the amount recommended by SIPC and the

14    amount requested by the trustee or his counsel.

15              There has been, for many of the applications here, a

16    voluntary reduction for different purposes by the trustee and

17    the various counsel here so there is no difference.  So the

18    three essentials have been satisfied in connection with the

19    statute which means the Court shall.  However, under the

20    circumstances presented before me, even if this was 1976 or

21    1977, I find that the discretion afforded by me equals the

22    approval that I must give based upon their current statute and

23    based upon my evaluation in a pre-1978 era, I find the request

24    reasonable and appropriate and I approve them.

25              IN UNISON:  Thank you, Your Honor.
```

Page 32

1          MR. PICARD:  May I approach Your Honor --

2          THE COURT:  Yes.

3          MR. PICARD:  -- with an order?

4          THE COURT:  And in approval I also state that the

5     objections are overruled.  I have approved the order.

6          IN UNISON:  Thank you, Your Honor.

7       (Proceedings concluded at 10:49 AM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 33

1                    I N D E X

2

3                    RULINGS

4                                   Page  Line

5   Granting of Application          9     2

6   For Interim Compensation and

7   Partial Release of Holdback

8   for Windels Marx Lane &

9   Mittendorf, LLP, Special Counsel

10

11  Granting of Application          16    16

12  For Interim Compensation For

13  Windels Marx Lane & Mittendorf,

14  Eugene F. Collins,

15  Williams, Barristers & Attorneys,

16  Attias & Levy, SCA Creque,

17  Schiltz & Schiltz,

18  Hogan Lovells International LLP,

19  Mishcon de Reya,

20  Kugler Kandestin, LLP and

21  Higgs Johnson Truman Bodden & Co.

22

23  Granting of Application          31    25

24  For Interim Compensation For

25  Baker & Hostetler LLP

Page 34

1

2                        C E R T I F I C A T I O N

3

4    I, Zipporah Geralnik, certify that the foregoing transcript is

5    a true and accurate record of the proceedings.

6    **Zipporah**         Digitally signed by Zipporah Geralnik
                          DN: cn=Zipporah Geralnik, c=US
     **Geralnik**         Reason: I am the author of this document
7                         Date: 2010.09.16 17:26:41 -04'00'
     _____

8    Zipporah Geralnik

9    AAERT Certified Electronic Transcriber (CET**D-489)

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  September 16, 2010

17

18

19

20

21

22

23

24

25