**<u>EXHIBIT G</u>**

Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Adv. Proc. No. 08-01789-brl

5  - - - - - - - - - - - - - - - - - - - - - - - -x

6  SECURITIES INVESTOR PROTECTION CORPORATION,

7                          Plaintiff,

8              v.

9  BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,

10                         Defendant.

11  - - - - - - - - - - - - - - - - - - - - - - - -x

12

13            U.S. Bankruptcy Court

14            One Bowling Green

15            New York, New York

16

17            December 14, 2010

18            10:21 a.m.

19

20

21  B E F O R E:

22  HON. BURTON R. LIFLAND

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    (3207) Baker and Hostetler LLP Fifth Application for Allowance

3    of Interim Compensation for Services Rendered and Reimbursement

4    of Actual and Necessary Expenses Incurred.

5

6    (3208) Attias & Levy as Special Counsel to the Trustee

7    Application for Allowance of Interim Compensation for Services

8    Rendered and Reimbursement of Actual and Necessary Expenses

9    Incurred.

10

11   (3209) Eugene F. Collins as Special Counsel to the Trustee

12   Application for Allowance of Interim Compensation for Services

13   Rendered and Reimbursement of Actual and Necessary Expenses.

14

15   (3210) Hogan Lovells International LLP (Formerly Lovells LLP)

16   as Special Counsel to the Trustee Application for Allowance of

17   Interim Compensation for Services Rendered and Reimbursement of

18   Actual and Necessary Expenses Incurred.

19

20   (cc-3211) Windels Marx Lane & Mittendorf, LLP Application for

21   Allowance of Interim Compensation for Services Rendered and

22   Reimbursement of Actual and Necessary Expenses Incurred.

23

24

25

Page 3

1

2    (3212) Williams, Barristers & Attorneys as Special Counsel to

3    the Trustee Application for Allowance of Interim Compensation

4    for Services Rendered and Reimbursement of Actual and Necessary

5    Expenses Incurred.

6

7    (3213) Schiltz & Schiltz as Special Counsel Application for

8    Interim Professional Compensation to the Trustee for Allowance

9    of Interim Compensation for Services Rendered and Reimbursement

10   of Actual and Necessary Expenses Incurred.

11

12   (3214) Higgs & Johnson (Formerly Higgs Johnson Truman Bodden &

13   Co.) as Special Counsel to the Trustee Application for

14   Allowance of Interim Compensation for Services Rendered and

15   Reimbursement of Actual and Necessary Expenses Incurred.

16

17   (3215) Kugler Kandestin, LLP as Special Counsel to the Trustee

18   Application for Allowance of Interim Compensation for Services

19   Rendered and Reimbursement of Actual and Necessary Expenses

20   Incurred.

21

22   (3216) Werder Vigano as Special Counsel to the Trustee

23   Application for Allowance of Interim Compensation for Services

24   Rendered and Reimbursement of Actual and Necessary Expenses

25   Incurred.

Page 4

1

2    (3217) SCA Creque as Special Counsel Application for Allowance

3    of Interim Compensation for Services Rendered.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Esther Accardi

25

Page 5

```
 1
 2    A P P E A R A N C E S :
 3    BAKER AND HOSTETLER LLP
 4          Attorneys for Trustee
 5          45 Rockefeller Plaza
 6          New York, New York 10111
 7
 8    BY:   DAVID J. SHEEHAN, ESQ.
 9          IRVING H. PICARD, ESQ.
10
11
12    WINDELS MARX LANE & MITTENDORF, LLP
13          Special Counsel to SIPA Trustee and Chapter 7 Trustee
14          156 West 56th Street
15          New York, New York 10019
16
17    BY:   ALAN NISSELSON, ESQ.
18          REGINA GRIFFIN, ESQ.
19
20
21    SECURITIES INVESTOR PROTECTION CORPORATION
22          805 15th Street, N.W., Suite 800
23          Washington, D.C. 20005
24
25    BY:   KEVIN H. BELL, ESQ.
```

Page 6

1

2    A P P E A R A N C E S : (continued)

3    BECKER & POLIAKOFF

4         45 Broadway, 11th Floor

5         New York, New York 10006

6

7    BY:    HELEN DAVIS CHAITMAN, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

```
 1                    P R O C E E D I N G S

 2            THE CLERK:  SIPC v. BLMIS.

 3            MR. SHEEHAN:  Good morning, Your Honor.

 4            THE COURT:  Good morning.

 5            MR. SHEEHAN:  David Sheehan from Baker and Hostetler

 6   on behalf of Irving Picard; the trustee for Bernard L. Madoff

 7   Securities Inc.

 8            We have this morning, Your Honor, a number of

 9   applications in connection with interim fee allowances.  As I

10   have done in the past, what I would like to do is approach

11   those that were not objected to and save the last, that which

12   was objected to.  Which is, of course, the application of Mr.

13   Picard, as trustee, and his counsel, Baker and Hostetler.

14            With the Court's permission, I'd like to proceed.

15            THE COURT:  Go ahead.

16            MR. SHEEHAN:  The -- As Your Honor well knows, and as

17   the press is dutifully reported of late, there is a great deal

18   going on in the world involving Mr. Madoff, and a good deal of

19   that is occurring not in the United States, but elsewhere.

20   Around the globe; in Europe as well as in the Caribbean.

21            And as a result, what the trustee has done through the

22   course of the last two years is retain counsel in each of those

23   jurisdictions to assist him in the endeavors that he engages in

24   to recover funds and return them to the victims.

25            Each of those attorneys has applied for compensation,
```

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 8

```
 1   and none of those are objected to.  And what I'd like to

 2   briefly do, Your Honor, is just name the counsel, the

 3   jurisdiction which they're operating, and a brief summary of

 4   what they've done for the record, if I may.

 5        THE COURT:  Go ahead.

 6        MR. SHEEHAN:  The first is Attias & Levy.  This is a

 7   matter that Your Honor has -- is very familiar with, and that's

 8   in Gibraltar involving the Vizcaya matter.

 9        The local counsel there has been of extremely

10   important to us in terms of locking up to seventy-five million

11   dollars that resides in the courts there.  And is soon to be

12   turned over to the court here, subject to this Court's

13   jurisdiction, and ultimately subject to a trial before Your

14   Honor with regard to our claims there.

15        The outcome there to a very large extent was assisted

16   by our local counsel and clearly we support their application.

17        Next application is by special counsel; Eugene F.

18   Collins.  And that's the law firm we retained in Ireland.

19        Ireland was a jurisdiction through which much of the

20   Madoff money passed.  A good deal of it still resides there.

21   Thema is one of the major funds that we sued that is -- resides

22   there, as well as others that are located within that

23   jurisdiction in terms of race.

24        Eugene F. Collins has been supportive of us almost

25   from the inception of the case, and has done a good deal of
```

Page 9

1    work to assist us in pursuing those assets.

2            Next firm is Hogan & Lovells.  Hogan Lovells, as Your

3    Honor will recall, was initially Lovells.  Retained by the

4    trustee at the outset of the case to assist us in London in

5    connection with the company owned by Mr. Madoff; Madoff

6    Securities International, or MSIL.

7            Lovells unfortunately developed a conflict; this is

8    their final application for services that were rendered prior

9    to the conflict occurring.  The conflict occurred as a result

10   of the merger of Hogan & Lovells.  And, unfortunately, the

11   Hogan firm had matters that we did not feel comfortable in

12   waiving the conflict on behalf of the trustee, so we retained

13   new counsel in London to handle those matters.

14           The next firm is Williams, Barristers.  Williams

15   Barristers is in Bermuda.  As I noted earlier, there are funds

16   throughout the Caribbean, Bermuda being one of them.  A

17   principal fund there is Kingate.  Kingate has 100 million

18   dollars in the bank, which we have secured, and is waiting the

19   outcome of litigation, which will take place here before Your

20   Honor in connection with litigation that we've instituted.

21           We've also taken through Williams, Barristers those

22   steps that are necessary to preserve that asset pending the

23   outcome of our litigation here, and the potential enforcement

24   of that judgment in Bermuda.

25           Williams, Barristers has assisted us in all those

08-01789-cgm    Doc 4198-7    Filed 06/29/11    Entered 06/29/11 17:08:46    Exhibit G
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 11 of 37

Page 10

 1    endeavors.

 2            Next firm is Schiltz & Schiltz.  Schiltz & Schiltz is

 3    located in Luxembourg.  Luxembourg is the location of Luxalpha,

 4    a major fund that has been sued by the trust for significant

 5    dollars, and is one of the principal funds that we are

 6    pursuing, both here in the United States and potentially in

 7    Europe as well.

 8            Schiltz & Schiltz is with us since the beginning of

 9    the case.  Has been invaluable in terms of the structure of

10    that litigation.

11            Next firm is Higgs & Johnson.  Higgs & Johnson is

12    located in the Cayman Islands.  As Your Honor will recall, we

13    have instituted suit in the Cayman Islands against Harley

14    International.  This is a fund that owes the estate one billion

15    dollars.  And our counsel, Higgs & Johnson, has been of great

16    assistance to us throughout the course of the many hearings

17    that have been held down there in connection with a great deal

18    of activity associated with Harley.

19            As with all these cases, there are liquidators being

20    appointed by local jurisdictions, as is the case with Harley.

21    And we deal in that jurisdiction on a fairly regular basis with

22    that liquidator.  And Higgs & Johnson represents us in that

23    effort.

24            Then the next firm is Kugler & Kandestin.  Kugler &

25    Kandestin is a firm located in Canada.  There are no funds

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 11

```
 1    there, but a good deal of documentation passed through a

 2    variety of sources there.  We've had to engage in a good deal

 3    of discovery using 2004 in connection with Kugler's assistance

 4    there, and we have achieved a good deal of document production

 5    in connection with numerous funds, and has been of great

 6    assistance to us.

 7            Then there is Werder Vigano.  Werder Vigano is in

 8    Switzerland.  As Your Honor well knows, there are a number of

 9    Swiss banking connections associated with this case.  Most

10    prominently perhaps is Union Bancaire Privee.  There's a

11    settlement pending before Your Honor with regard to that very

12    action.  And there are other actions associated with Swiss

13    banks.

14            This firm, Werder, has been of great assistance to us

15    in looking into the extra territoriality issues, as well as the

16    international jurisdictional issues associated with pursing

17    claims against Swiss banks, which is no mean feat has everyone

18    knows.

19            Then last is SCA Creque.  This is in BVI.  British

20    Virgin Islands was the home of many of the funds created by Mr.

21    Madoff.  And Defender being one of them that we sued along with

22    a number of others.  That litigation is ongoing here before

23    Your Honor, and Creque has been of assistance with regard to

24    all of those efforts as well.

25            So I would submit, Your Honor, all of those firms I've
```

Page 12

1    just named, there is no opposition, and I submit that their

2    applications should be approved.

3        MR. BELL:  Your Honor, Kevin Bell on behalf of the

4    Securities Investor Protection Corporation.

5        I note, as does Mr. Sheehan, that Hogan Lovells is an

6    application for final compensation and payment of the holdback

7    that had been held back on the prior orders of the Court.  And

8    that all others for interim.  SIPC supports the entry of the

9    court order that allows the compensation requests for all the

10   applications, including the payment of Hogan Lovells final

11   compensation, including the prior holdback.

12       THE COURT:  Does anyone want to be heard?

13     (No response)

14       THE COURT:  There's no response.  The applications are

15   granted.

16       MR. BELL:  Thank you, Your Honor.

17       THE COURT:  The next application is for special

18   counsel to the trustee; Windels Marx.  And in the courtroom

19   today is the Chapter 7 trustee, Mr. Nisselson and his counsel;

20   Regina Griffin.

21       And as I've said before, Your Honor, and I'm very

22   happy to report it again, The support and work from Windels

23   Marx has been nothing short of superb.  The work that they have

24   done has been first rate.  It has been relentless in the sense

25   that the hours that they've put in and vast amount of hard work

```
 1    that went into the work, not only associated -- I should report

 2    this to Your Honor, not only associated with the cases that are

 3    before you Talon Air involving the aircraft of Mr. Madoff, the

 4    Madoff corporations, such as CRIMEX, Madoff Energy, the Madoff

 5    family funds, all of which are being handled through Mr.

 6    Nisselson with Ms. Griffin and the firm.

 7              But, also, as Your Honor knows, over the last several

 8    weeks, we've had tremendous work associated with putting

 9    together a number of complaints.  And that firm came in and

10    assisted us in that effort as well.

11              And I know the trustee and myself are very supportive

12    of their application here today and would ask that it be

13    approved.

14              THE COURT:  Does anyone want to be heard?

15              MR. BELL:  Your Honor, again, SIPC has submitted its

16    application and supports the entry of the court order allowing

17    the application for interim compensation by Windels Marx.

18              THE COURT:  The application is granted.

19              MR. SHEEHAN:  Your Honor, at this time --

20              THE COURT:  Typically in the cases well known to the

21    Court I do appear and fill in some of the so-called gaps in the

22    context of litigation.  And it does provide for a very smooth

23    transition between the various firms here.

24              MR. SHEEHAN:  Your Honor, the last application is that

25    of the trustee and his counsel; Baker Hostetler.  At this point
```

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 14

```
 1    I'll turn over the podium, as it were, to Mr. Picard; the

 2    trustee.

 3              MR. PICARD:  Good morning, Your Honor.

 4              THE COURT:  Good morning.

 5              MR. PICARD:  In this portion of the fifth application

 6    for interim compensation covers the four-month period ending

 7    September 30th.  I seek the Court's approval for a $684,659.25

 8    in fees, of which 581,960 dollars represents eighty-five

 9    percent.

10              In addition, I seek 100,000 dollars of the holdback

11    and disbursements of $954.41.

12              SIPC has filed its recommendation pursuant to Section

13    78eee(b)(5)(C) of SIPA in favor of my portion of the

14    application as well as in favor of Baker & Hostetler's portion.

15              As I've indicated in prior applications I agreed with

16    SIPC at the outset of the proceeding to discount my rates, as

17    did the firm, by ten percent.

18              None of the fee payments, either to me, Baker, or any

19    of the other counsel you heard about today are being paid out

20    of any of the recoveries that we get.  All those recoveries are

21    for the benefit of the allowed claimants.  I also stand by my

22    prior pronouncements, if you will, that SIPC does not have a

23    reasonable expectation of recoupment of its administrative

24    advances.

25              Without getting into the specifics of allocation of
```

Page 15

1   property, which we hope we will have an application to the

2   Court in the next couple of months, I do want to address an

3   objection as well as news stories which focus on the current

4   allowed claims of approximately six billion dollars.  And I

5   emphasize the word "current."

6           From that number the objection, as well as the news

7   stories, jump to the conclusion that we will have sufficient

8   funds to pay allowed claimants in full, and then to pay money

9   back to SIPC to cover its administrative advances.  I submit

10  that their premise is wrong.  They haven't done their homework.

11  If they had they would know that pursuant to Bankruptcy Code

12  Section 502(d) in connection with a number of adversary

13  complaints that we have filed, we have objected to the

14  allowance of significant claims on the grounds that the

15  defendants have not repaid to us the amounts that they received

16  as preferences, as a major example.

17          In fact, to the extent that we are successful in

18  recovering from those parties, the allowed -- the defendant to

19  the extent that he, she or it pays back will be able to

20  increase its claim.  So while we will be getting in more money,

21  at the same time the allowed claims will increase.  That is

22  what happens in the typical bankruptcy case, and that's what

23  will happen here.

24          And, of course, we're in litigation.  Many cases get

25  settled, and I don't assume, and I don't think anyone should

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 16

1    assume, that we're going to recover every single dollar that we

2    seek.  Although, we hope and expect that we will recover

3    significant dollars.

4            During the four-month period I expended 922.1 hours.

5    In addition to the ten percent discount on that time, I wrote

6    off approximately 133,000 dollars in the exercise of good

7    billing practice.

8            As set forth in the application, especially Exhibit

9    C -- Exhibit B, excuse me, the significant portion of my time

10   was spent in connection with claims review, avoidance action,

11   case administration, the trustee's investigation, some

12   bankruptcy court litigation, and communications and meetings

13   with the U.S. Attorney's office.

14           As I said at the last interim fee hearing, this Ponzi

15   scheme was of longstanding, vast in scope and geographical

16   reach.  Our complaints showed that.

17           Work done during the four-month period on which we're

18   here before you today, as well as in earlier periods, are now

19   beginning to show.  Recoveries and the sale of the market-

20   making business are now up over 1.5 billion dollars.  We have

21   hearings scheduled for approval of two settlements, totaling in

22   excess of one billion dollars.  And we have several other

23   settlements in the pipeline and hope to be able to announce

24   those in the very near future.

25           As of last Friday we have determined 96.1 percent of

1    the 16,394 claims.  That's approximately fifteen percent more

2    than when we were here in September.

3         As I indicated, we have asserted 502(d) counts against

4    a number of claimants; approximately a little bit more than

5    100.  And we had claims from 10,400 plus claimants who don't

6    have accounts, that we had denied.

7         Based on where we are we today have 643 claims

8    remaining to be determined.  And we hope to have most of that

9    done by the end of the year.  These are the claims, of course,

10   that require extra work, review and, in many cases, inquiry of

11   the customer.

12        In connection with the adversary proceeding complaints

13   that we have filed, I've continued the hardship program that

14   was first introduced in connection with the claims process.

15   Based on the earlier hardship applications with which we had

16   agreed, and information submitted during the past few months by

17   persons claiming hardship, including at least one of opposing

18   counsel's clients, we have refrained from bringing at least 200

19   actions.  We are continuing to receive inquiries and

20   applications, which we review on a regular basis.  The hardship

21   program has a special place on the trustee's website.  I

22   encourage persons who believe that they have a financial

23   hardship, significant medical issues, family issues, and the

24   like, to complete and submit an application.

25        We can't possibly know the issue that people are

Page 18

1    facing, unless they bring them to our attention.  If we concur

2    with the application, as I have stated publicly on numerous

3    occasions, we will dismiss the adversary proceeding.

4          Based on where I expect we will be in the next several

5    months, I anticipate, as I indicated at the outset, that we

6    will be scheduling a hearing before Your Honor in the near

7    future on a motion for allocation of property, all of which, in

8    my view, should go to the customer fund, and present a proposal

9    for an interim distribution.

10          Based on the record of the proceedings, I ask Your

11   Honor to deny the objection and award the requested amount of

12   my time, the 100,000 of deferred and the disbursements.  I'd be

13   pleased to answer any questions if you have them.

14          THE COURT:  I have none.

15          MR. PICARD:  Thank you, Your Honor.  Mr. Sheehan will

16   address some of the other matters.

17          MR. SHEEHAN:  Your Honor, as is well known by you and

18   has been widely reported in the press, we've been at this

19   endeavor for approximately two years.  As a famous English

20   statesman once said, we are now at the -- not at the beginning

21   of the end, but the end of the beginning.

22          What we had before us is a significant array of

23   litigation.  And in support of the fee application what I'd

24   briefly like to do this morning is to reflect upon the past.

25   Because in a good way it definitely reveals the future.

Page 19

1          The future being many, many course -- many litigations

2     against a variety of different financial institutions and FEDER

3     funds.  They're all matter of record now, they've all been

4     filed.  Widely reported that they constitute in excess of fifty

5     billion dollars.

6          The goal here of the trustee; the goal is to return

7     100 percent of the money to those victims.  That is the goal

8     and that is what we are going to strive mightily to achieve.

9     We made some significant strides just in the last couple of

10    weeks, as Mr. Picard just reported.  In the next several weeks

11    there will be even more significant strides made and reported

12    to this Court, to the public at large, as to significant

13    settlements going towards that goal of 100 percent return.

14          Will we achieve that?  I don't know.

15          Litigation and all of assisted to associated with it,

16    make it difficult to predict that.  But it's a worthy goal, an

17    admirable one, and one that the trustee and his counsel worked

18    with arduously everyday since the day of their appointment.

19          I think it's revealed by looking at the nature of the

20    cases that we've put together.  Yes, we have sued individuals,

21    that is true, but only those individuals who got other people's

22    money.  A fact often forgot no matter how often I repeat it, is

23    that this is a Ponzi scheme.  And those who got other people's

24    money really shouldn't keep it.  Bankruptcy is equality, and

25    what we are going to do is try to achieve that.

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 20

1        As the trustee points out, we will be as careful and

2    deliberate as we can not to pursue those who can ill afford to

3    return the money of others.  We understand that.  And as

4    demonstrated by the fact that we've already walked away from

5    several hundred lawsuits we will undoubtedly walk away from

6    hundreds of others.

7        But the end of the day, the goal here is, there are

8    victims out there.  People who did not get their money back;

9    hundreds of them, millions and millions of dollars.  Our goal

10   is to follow this litigation that we've put together to make

11   sure that happens, that they get their money back.

12       And I think if you reflect upon the work that we've

13   done, not just in the four-month period, but in the two years

14   leading up to today, what you will see is a steady course

15   that's been followed by the trustee and his counsel.

16   Conducting a worldwide investigation.  This is not something

17   that takes a matter of hours, or days, or weeks, but months and

18   years in order to achieve the outcome that we've achieved here

19   today.

20       To measure that by one minor matter or two, and to

21   suggest that through that prism one can then evaluate the work

22   that was done by the trustee and his counsel, is to be absurd.

23   That makes no sense.  One has to look at the vast panoply of

24   work achieved by the trustee in the last two years, and his

25   counsel to assess the value of that work.

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

1    Anyone who has read any of the complaints that are

2    free to be read that have not been sealed, whether that be

3    large portions of HSBC, large portions of the RICO complaint,

4    demonstrate that this was a vast worldwide fraud that Mr.

5    Madoff wasn't just an aberration, that it just wasn't an

6    affinity crime.  What he engaged in was being part of the

7    fabric of the financial institutions of this country.  That he

8    represented a financial instrument that they will utilize and

9    try to take advantage of.  And in so doing took away the

10    millions and millions of dollars of innocent people.  And the

11    only way -- the only way that's ever going to come back to them

12    is through the auspices of this trustee and the counsel that he

13    has retained to follow that money and to get it back.

14    That's what this application represents.  Your Honor

15    has before you detailed time records.  Yes, they're not shown

16    to the public.  My adversary seems to suggest that there's

17    something untoward with regard to that.

18    One would think that as an experienced lawyer she

19    would recognize that there are in those time records, because

20    in order to let you, and SIPC and those who review these

21    records, know exactly what the trustee is doing.  There are

22    thought processes contained within those records.  There are

23    strategies, there is work product.  It cannot be shown to the

24    public.  These litigations are significant, complex, difficult.

25    Are we supposed to play all of our cards in front of all of

1    them?  They're not doing that for us, Your Honor.  Obviously,

2    we shouldn't.  The answer is simple and plain.

3          So, therefore, when we make this application to Your

4    Honor, we make it to you with full disclosure.  With all the

5    years of experience that you bring to it to look at it, and as

6    does SIPC in looking at it as well.

7          It's important to note that the industry supports this

8    effort.  This is funded not by the customers, not by some

9    taxpayer, but by the industry.  The industry funds SIPC.  The

10   industry here is paying the trustee and his counsel to chase

11   this money and to bring it back.  Why?  Because SIPA was

12   instituted to bring the money back to those customers.  And my

13   adversary suggests that we've limited it in a wrongful way.

14         That's not for today, that's for the Second Circuit at

15   this point, Your Honor already having ruled on that topic.  And

16   the law being, quite frankly, clear, what do we do when we're

17   in the situation where there are victims, where it's very

18   difficult?  Can we get subjective, or do we do what we do as

19   lawyers, we follow the law.  That's what we did here, that's

20   what the trustee has done, and he has reached out to Your Honor

21   and to the circuit and to other courts, all of them asking them

22   to apply the law and this is what we are doing here in terms of

23   pursuing these dollars and returning them to the customers.

24         So I would submit, Your Honor, that I have not gotten

25   into any of the detail.  I don't think I have to.  We have

Page 23

1    complaints against seven major banks.  Citibank, Natixis; each

2    of these representing 500 million dollars, a billion dollars.

3    Against JPMorgan Chase; the bank of Mr. Madoff, over six

4    billion dollars is being claimed.  If you go through that

5    complaint, which Your Honor can, but the public can't at this

6    point, you see all the detail that went into all the work to

7    pull all of that together.  To tell that story in a way that is

8    coherent and powerful.  And at the end of the day I believe the

9    trustee will be successful in his efforts there.  And so on and

10   so forth with regard to HSBC and all of the other complaints

11   that we've brought, and also against all the FEDER funds.

12        This was a monumental effort culminating in the

13   filings that took place over the last six to eight weeks.  We

14   believe that that time was well spent.  Well spent in terms of

15   the effort that we're bringing on behalf of the customers.  But

16   well spent on behalf of restoring to the financial community

17   belief in the fact that ultimately -- ultimately the truth will

18   be known as to exactly how this architect of fraud, this

19   mastermind of Mr. Madoff, how it all happened.  And we will

20   spread that upon the record, which is also part of our

21   responsibility.

22        So based upon that, Your Honor, I respectfully submit

23   that our application for fees and allowances here on behalf of

24   Baker, be approved.

25        MR. BELL:  Your Honor, Kevin Bell on behalf of SIPC.

Page 24

1          Tomorrow begins the 105th week since SIPC filed its

2     application to begin the liquidation of the debtor under the

3     auspices of the Securities Investor Protection Corporation to

4     bring relief to all the victims.

5          Today's New York Times had an article about an issue

6     that came before the Court last month, about people buying the

7     victims' claims.  And it ended with the -- what I want to start

8     with, which is Mr. Ross's idea that there is hope that there

9     will be payment of his claim.  Your Honor, that is what SIPC's

10    all about.  SIPC strives to make sure that the trustee and

11    counsel use their efforts to pursue the wrongdoers and to bring

12    those funds back into the control of the trustee so that goal,

13    that hope that Mr. Ross has can be fulfilled.

14          At this point in time that cannot happen.  And I would

15    like to address the provision of the statute that is in

16    question today, raised by the opposition.  Namely, that in case

17    in which the allowances will be paid by SIPC without reasonable

18    expectation of recoupment thereof, and there is no difference

19    between the amounts requested and the amounts recommended by

20    SIPC, the Court shall award the amounts recommended by SIPC.

21    At this moment in time, there is no reasonable expectation of

22    such a recoupment.

23          I have been involved in cases where there has been

24    full payment -- repayment of SIPC.  It is my fondest

25    expectation that that would occur.  It is the expectation of

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 25

1    the SIPC leadership that that would occur.  But at this moment

2    in time there is no reasonable expectation, there is a hope.

3         The trustee has advised that there's no reasonable

4    expectation.  And SIPC, on examination, agrees with the trustee

5    at this moment.  Mr. Picard and Mr. Sheehan have talked about

6    the future, about litigation, and we all, having been involved

7    in litigation over many years as lawyers, know that our hopes

8    sometimes don't get fulfilled in litigation because something

9    may happen.

10        The -- I would call the Court's attention to one of

11   the exhibits attached to the opposition to this application.

12   It is a document this Court referred to in its decision on the

13   motion to dismiss by Merkin.  And that is the letter to

14   Congressman Kanjorski dated September 7th.

15        And in that you will see the president of SIPC

16   reported to the committee that has oversight over SIPC that

17   there is a very strong possibility that the allowed claims

18   would be somewhere around 17.3 billion dollars.  The trustee

19   has added a footnote to that this morning, and anybody who

20   peruses the complaints filed will see that they are replete

21   with counts that assert 502(d) of the Bankruptcy Code, because

22   those defendants who are also claimants for protection under

23   the SIPA statute received preferences.  And it is clear in

24   SIPC's view that that is a number that is the operative number

25   in this liquidation proceeding.

08-01789-cgm    Doc 4198-7    Filed 06/29/11    Entered 06/29/11 17:08:46    Exhibit G
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 27 of 37

Page 26

1       So at some point in time when the trustee is able to

2   recover over twenty billion dollars maybe we would be at a

3   point where there would be no reasonable expectation.  But as

4   the trustee has reported, he has 1.5 billion in hand, another

5   approximately a billion dollars that is subject to motions for

6   this Court's approval on two settlements.  And the SIPC is very

7   well aware that that doesn't equal the twenty billion dollars

8   or so that are reported to Congress it expects that under the

9   methodology this Court approved, would be the allowed amount of

10  customer claims.

11      So let me just sum up by saying that SIPC has filed

12  its recommendation in support of the interim application of

13  trustee and counsel.  It supports the entry of a court order

14  that would allow all applications by -- allow the application

15  by the trustee and counsel, including the payment of a portion

16  of the large holdback that has -- that this Court has

17  recognized in its prior orders in the sum of 100,000 dollars

18  for the trustee, and 3.4 million for Baker and Hostetler.

19      And I would say, Your Honor, SIPC is very aware of

20  everything that the trustee is doing.  It has reviewed

21  intensively each of the applications that's before the Court

22  and all the invoices that are part of it.  And it would

23  strongly urge the Court to enter the order submitted by the

24  trustee and counsel on their application.

25      Thank you, Your Honor.

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

1          (Pause)

2              MS. CHAITMAN:  Good morning, Your Honor.  As you know

3     I represent several hundred investors of Madoff.

4              And many of those investors who had allowed claims

5     have been forced to sell their claims, because they couldn't

6     wait any longer to get the money that they needed to live on,

7     having lost everything they own in Madoff.

8              This is a case in which there is a great deal which is

9     undisclosed.  And I think that's very regrettable.  And I think

10    what was appropriate in response to my objection was a full

11    disclosure of the economics of this case.  And, unfortunately,

12    we haven't received it.

13             The facts set forth in the September 7th letter of Mr.

14    Harback to Mr. Kanjorski and Mr. Garrett, reveal facts that had

15    never been disclosed publicly to my knowledge.  And they

16    include the fact that, according to that letter, there is

17    approximately seventeen billion in net investments in Mr.

18    Madoff's companies.  Therefore, presumably, the total claims

19    would be seventeen billion dollars.

20             However, in a situation where Mr. Picard has a

21    statutory duty to promptly allow claims and deliver substitute

22    securities to investors, after two years he has only allowed

23    5.8 billion dollars of the seventeen billion in possible

24    claims.  And he hasn't told you today why that is.  He says

25    well, it takes a long time to go through the records.  There's

08-01789-cgm    Doc 4198-7    Filed 06/29/11    Entered 06/29/11 17:08:46    Exhibit G
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 29 of 37

Page 28

 1   an explanation, but we haven't heard it.  It may very well be

 2   that Mr. Picard never intends to allow those seventeen billion

 3   in claims, so that the total claims in this case, all together,

 4   will be 5.8 billion dollars.

 5          And if we assume that that's true for a second, then

 6   it's virtually inconceivable that there won't be enough money

 7   to pay all the allowed claims in full and to fully reimburse

 8   SIPC, in which event SIPC and the trustee should not be relying

 9   on the provision of SIPA to which Mr. Bell just referred Your

10   Honor.

11          Now, we've heard Mr. Bell say that he's got setoff

12   claims; that Mr. Picard has asserted setoff claims against the

13   presumably the seventeen billion dollars in claimants, whose

14   claims have not yet been allowed.  But as Your Honor knows, Mr.

15   Picard has sued for the difference between what people took out

16   and what they put in.  So let's assume that I had put in a

17   million dollars and taken out two million dollars, then Mr.

18   Picard would have sued me for a million dollars.  If he wins,

19   and I pay back the million dollars, I don't have an allowed

20   claim, I'm not recognized as a claimant because I had a zero

21   net investment.

22          So I don't really see how the mystery can be solved

23   simply by Mr. Bell's explanation, that some of the complaints

24   that have been filed have 502(d) claims in them.  And we

25   shouldn't be in this case, Your Honor.  We shouldn't be feeling

Page 29

 1    around in the dark for the facts about this.  Those of my

 2    clients who are still holding on and haven't been forced to

 3    sell their claims have a right to know what the reasonable

 4    prospect of payment is, and whether they're going to get

 5    significantly more than the thirty cents on the dollar, or

 6    thirty-three cents on the dollar that Wall Street is now

 7    offering people.

 8         That's why I filed the objection, Your Honor.  And I

 9    believe that the Court should not allow any further fees until

10    there's a full disclosure of the real economics of this

11    proceeding.

12         Thank you.

13         THE COURT:  Anyone else want to be heard?

14         MR. SHEEHAN:  If could briefly, Your Honor.

15         THE COURT:  Sure.

16         MR. SHEEHAN:  I think there is been -- there has been

17    full disclosure.  It does require a good deal of putting things

18    together.  Maybe not even a good deal, it's relatively

19    straightforward.

20         We know that FEDER funds are net losers, said that

21    since day one.  Net losers, however, receive preferences and

22    fraudulent conveyances.  Net losers who, therefore, will be

23    sued for billions of dollars.  And at the end of the day,

24    either by settlement or by the judgment of this case, they will

25    pay that money back.  And when they do, as Mr. Picard pointed

08-01789-cgm    Doc 4198-7    Filed 06/29/11    Entered 06/29/11 17:08:46    Exhibit G
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 31 of 37

Page 30

1    out, the amount of their claim will be enhanced.

2            Those seventeen billion dollars, twenty -- it's in

3    that range, seventeen to eighteen billion dollars of FEDER Fund

4    claims are there.  They're net losers, they're not winners.

5    Not somebody who got all their money back.  So when we sue all

6    those people what are we doing?  We're seeking to do exactly

7    what the statute tells us to do, that equity is equality.  That

8    FEDER Fund simply cannot come out ahead of other people simply

9    because it's a loser.  It has to give it back and participate

10    in a pro rata distribution.  It's as plain, quite frankly, as

11    the nose on your face, if you actually looked at it clearly.

12    And that is is that you've got approximately seventeen to

13    eighteen billion dollars of claims filed by FEDER Funds, that

14    eventually will be determined and presumably allowed, except to

15    the extent that if the conduct of that FEDER Fund was so

16    egregious, so outrageous this trustee seeks to subordinate that

17    claim.  Then, in that event, the amount of the denominator may,

18    indeed, be reduced.

19            But in the more likely event that what we prove here

20    is basically a lack of good faith, inquiry notice, that which

21    we have alleged, it will not be subordination so much as a

22    payment to the trustee, an increase in the amount of the claim,

23    so, indeed, the numerator will be increased, but so will the

24    denominator.

25            I believe that's very plan, very available to anyone

Page 31

1    on the website, doesn't take a good deal of arithmetic to

2    figure it out.  And I think somebody with bankruptcy experience

3    and knowledge would understand that.

4         So I don't think there's any mystery here, Your Honor,

5    none.  Nothing being hidden, nothing being held back, it's all

6    out there for everyone to see.

7         Thank you, Your Honor.

8         THE COURT:  Thank you.  Does anyone else want to be

9    heard?

10        (No response)

11        THE COURT:  Well, it's interesting in that the focus

12   of this hearing on fee applications has turned away from the

13   actual fee applications, and more toward a disagreement

14   necessarily on the part of the -- or maybe not necessarily on

15   the part of the objectors, as to the impact of the net equity

16   determination, because that drives an awful lot of why the

17   parties are for or against.

18        The statute that I have before me with respect to

19   allocation of fees is clear.  One time Congress gave this Court

20   some discretion, but then the original SIPA legislation was

21   changed and modified, so that the recommendation of SIPA is a

22   commandment upon the Court.  The statute says that the court

23   shall approve if SIPA recommends the fee structure.

24        The only out is that there should not be a reasonable

25   expectation of recoupment, and that, essentially, is the horse

08-01789-cgm    Doc 4198-7    Filed 06/29/11    Entered 06/29/11 17:08:46    Exhibit G
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 33 of 37

Page 32

1    that the objectors ride on here today to support their

2    objection.

3            I agree with Mr. Bell, that at this juncture there is

4    no reasonable expectation of recoupment.  That reasonable

5    expectation, even if this Court was to give it some credence,

6    is so highly speculative it's really rank speculation.

7    Especially where the litigation that's pending before this

8    Court involves very well financed adversaries able to push back

9    with the timing, conclusion and income results, all of which

10   are not susceptible to any clear estimation.

11           So I cannot make that leap that one would say on a

12   very rosy estimate, that there is a reasonable expectation that

13   SIPC will be recouped for the amount of fees that are being

14   laid out.

15           Again, the emphasis is that these fees,

16   notwithstanding the objection, are not coming from any of the

17   victims, and they're not coming from the estate.  And under all

18   of the circumstances, and notwithstanding the statutory command

19   that this Court shall approve the fees, I am very well aware of

20   the Herculean effort being utilized in the litigation arena to

21   recoup funds for the benefit of the victims, and

22   notwithstanding how the Court of Appeals, or ultimately the

23   Supreme Court, rules.  And in that regard I would hope that

24   there'd be some swift at disposition, so that monies that are

25   coming in in hand are able to be distributed rather quickly.

08-01789-cgm    Doc 4198-7    Filed 06/29/11    Entered 06/29/11 17:08:46    Exhibit G
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 34 of 37

Page 33

1          I commend the trustee and counsel's suggestion that

2      there may be a sufficient funds for distribution early next

3      year.  That will be most helpful.

4          Just to give you a bird's eye view of the impact of

5      all the litigation that's being described in front of me here,

6      last week as a delegate to the United Nations in Austria, the

7      whole Austrian financial public community was up in arms and

8      discussing the trustee's litigation against the banks and

9      parties in Austria.  It is quite clear that the litigation is

10     having a very substantial impact.  And that does not come

11     without a lot of investment in lawyer and trustee time and

12     effort.

13         Of course, none of that litigation, to the extent that

14     it was publicized in Austria, has had a current nexus to the

15     application before me today, although it may very well have.

16         But, in any event, I do not find that the objectors

17     have made any strong point with respect to objecting to the

18     fees that have been requested here today.  The objections are

19     overruled.  And I will entertain an order approving them --

20     approving the fees.

21         MR. SHEEHAN:  May I approach, Your Honor?

22         THE COURT:  Yes.

23       (Pause)

24         THE COURT:  I have approved the order.

25         MR. SHEEHAN:  Thank you very much, Your Honor.  Good

Page 34

1    morning, Your Honor.

2              MS. CHAITMAN:  Thank you, Your Honor.

3              THE COURT:  Thank you, Ms. Chaitman.

4         (Whereupon these proceedings were concluded at 11:08 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 35

```
 1

 2                         I N D E X

 3

 4                       R U L I N G S

 5   DESCRIPTION                           PAGE LINE

 6   Application to approve fees for foreign    12    15

 7   counsel granted

 8

 9   Application to approve fees of            13    18

10   Windels Marx granted

11

12   Application to approve fees of            33    19

13   Baker and Hostetler approved,

14   objection overruled

15

16

17

18

19

20

21

22

23

24

25
```

Page 36

1

2                        C E R T I F I C A T I O N

3

4    I, Esther Accardi, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6    Esther          Digitally signed by Esther Accardi
                     DN: cn=Esther Accardi, o, ou,
                     email=digital1@veritext.com,
                     c=US
7    Accardi         Date: 2010.12.16 14:16:16 -05'00'
     _____

8    ESTHER ACCARDI (CET**D-485)

9    AAERT Certified Electronic Transcriber

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, New York 11501

16

17   Date:  December 16, 2010

18

19

20

21

22

23

24

25