JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel
 for Dispute Resolution
CHRISTOPHER H. LAROSA
Associate General Counsel
SECURITIES INVESTOR
 PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
E-Mail: jwang@sipc.org
kbell@sipc.org
clarosa@sipc.org

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | SIPA LIQUIDATION |
| Plaintiff, | Case No. 08-01789 (BRL) |
| | (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | Appeal No. _____ |
| Defendant | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor | |

**RESPONSE OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN OPPOSITION TO MOTION BY MARSHA PESHKIN**
<u>**AND OTHERS FOR LEAVE TO APPEAL**</u>

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

COUNTERSTATEMENT OF THE ISSUE .........................................................................1

STATEMENT OF FACTS ....................................................................................................2

    The Functions of Trustee and Counsel ..........................................................................2

    The Applications for Compensation ..............................................................................4

    Movants' Counsel's Litigation History .........................................................................4

ARGUMENT ........................................................................................................................6

    THE MOVANTS HAVE SHOWN NO GROUNDS
    FOR AN IMMEDIATE APPEAL ..................................................................................6

        1.  Applicable Law ......................................................................................................6

        2.  The Prerequisites for an Immediate Appeal Are Not Met ............................9

            A.  Movants Have Failed to Identify a "Controlling Question
               of Law"  As To Which There Is A "Substantial Ground
               For Difference of Opinion"..................................................................10

            B. Granting Movants Leave To Appeal Would Not Materially
               Advance The Termination Of Any Litigation Connected With
               The BMLIS Liquidation ......................................................................13

    CONCLUSION    ..............................................................................................................15

# **TABLE OF AUTHORITIES**

**CASES:** **PAGE**

*In re Adorn Glass & Venetian Blind Corp.,*
    2005 WL 3481325 (S.D.N.Y. Dec. 16, 2005) ............................................................... 9

*In re AroChem Corp.,* 176 F.3d 610 (2d Cir. 1999) ................................................................ 7

*In re Bernard L. Madoff Investment Securities LLC*,
    413 B. R. 137 (Bankr. S.D.N.Y. 2009),
    *aff'd*, 440 B.R. 579 (S.D.N.Y. 2010) ..................................................................... 4-5, 6

*In re Calpine Corp.,* 356 B.R. 585 (S.D.N.Y. 2007) .............................................................. 7, 8

*In re Cross Media Marketing Corp.,* 2007 WL 2743577 (S.D.N.Y. Sept. 19, 2007) ........... 8, 10

*In re Enron Corp.,* 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ................................................ 8

*In re Executive Securities Corp.,* 702 F.2d 406 (2d Cir.),
    *cert. den.*, 464 U.S. 818 (1983) .................................................................................. 12

*In re Flor,* 79 F.3d 281 (2d Cir. 1996) ....................................................................................... 7

*Freeman v. NBC, Inc.,* 1993 WL 524858 (S.D.N.Y. Dec. 15, 1993) .......................................... 8

*In re Kassover,* 343 F.3d 91 (2d Cir. 2003) ........................................................................... 7, 9

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave,*
    921 F. 2d 21 (2d Cir. 1990) ........................................................................................... 8

*Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d 863 (2d Cir. 1996) ............................................... 9

*In re Perry H. Koplik & Sons, Inc.,* 377 B.R. 69 (S.D.N.Y. 2007) .................................... 7, 8, 9

*In re Marketxt Holdings Corp.,* 2009 WL 1286130 (S.D.N.Y. May 5, 2009) ........................... 8

*Transport Workers Union of Am., Local 100,*
    *AFL-CIO v. N.Y.C. Transit Auth.*,
    358 F.Supp. 2d 347 (S.D.N.Y 2005) ............................................................................. 9

*In re Worldcom, Inc.,* 2009 WL 2215296 (S.D.N.Y. July 23, 2009) ..................................... 7, 8

*In re Worldcom, Inc.*, 2006 WL 3592954 (S.D.N.Y. Dec. 7, 2006) ........................................... 8

# TABLE OF AUTHORITIES

**STATUTES AND RULES:**                                                                                                   **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78eee(d)......................................................................................................................... 1
78eee(b)(2)(B)(i) ............................................................................................................ 4
78eee(b)(4) ..................................................................................................................... 2
78eee(b)(5)(C)....................................................................................................... 1, 2, 12

28 U.S.C. §

158(a) ............................................................................................................................. 7
158(a)(3) ........................................................................................................................ 6
158(d)(2) ........................................................................................................................ 5
1292(b)........................................................................................................................... 7

Federal Rules of Bankruptcy Procedure

¶8001(b) ........................................................................................................................ 7
¶8003.............................................................................................................................. 7

**PUBLICATIONS AND TREATISES:**

10 *Collier on Bankruptcy* (16th ed. 2010)

¶8003.03......................................................................................................................... 7

**PRELIMINARY STATEMENT**

The Securities Investor Protection Corporation ("SIPC") submits this response in opposition to the motion of Marsha Peshkin and others ("Movants") for leave to appeal from a Bankruptcy Court Order entered on June 1, 2011 ("Motion") awarding trustee and counsel compensation in the consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA"), and of Bernard L. Madoff.[1]

**COUNTERSTATEMENT OF THE ISSUE**

Under SIPA §78eee(b)(5)(C), SIPC must file a recommendation with respect to any application for allowance of compensation in a SIPA liquidation proceeding. SIPA §78eee(b)(5)(C) also provides that in any case in which the allowances are to be paid by SIPC without reasonable expectation of recoupment and the amounts sought and recommended for payment are the same, the "court shall award the amounts recommended by SIPC." In the BLMIS liquidation proceeding, the trustee and counsel filed their sixth applications for interim compensation and reimbursement of expenses, and SIPC recommended that their applications be allowed. The fees and costs would be paid out of funds provided by SIPC, with no reasonable expectation of recoupment. The Bankruptcy Court granted the applications and in doing so, overruled an objection filed by the Movants. Movants filed a Notice of Appeal from the interlocutory Order and a request for leave to appeal. According to Movants, the Trustee's decision to accept fees for his services somehow violates Movants' due process rights, the

---

[1] For convenience, references hereinafter to provisions of SIPA shall omit "15 U.S.C."

Under SIPA §78eee(d), SIPC is "a party in interest as to all matters arising in a liquidation proceeding, with the right to be heard on all such matters...."

Trustee is serving his own or SIPC's, and not the Movants', economic interests, and the Bankruptcy Court allegedly has abdicated its obligation to review the subject fee applications by improperly invoking Section 78eee(b)(5)(C) of SIPA. Against this background, the issue presented is:

> Where
>
>> (1) the Order of the lower Court is firmly grounded in the law and was entered after appropriate review of the record by the lower Court; and
>> (2) instead of materially advancing the termination of the litigation, granting Movants' motion will disrupt the administration of a liquidation proceeding and contravene the clear mandate of a statute,
>
> whether Movants have met their burden of showing exceptional circumstances warranting an immediate appeal of the lower Court's Order.
>
> SIPC respectfully submits that the answer is "no."

## STATEMENT OF FACTS

**The Functions of Trustee and Counsel**

BLMIS was placed in SIPA liquidation, and Irving H. Picard, Esquire, the Trustee, and his counsel, the law firm of Baker & Hostetler LLP ("Counsel"), were appointed by Order of this District Court issued on December 15, 2008.[2] By the Order and pursuant to SIPA section 78eee(b)(4), the Court removed the proceeding to the Bankruptcy Court for this District ("Bankruptcy Court").

Since the date of their appointment, the Trustee and Counsel have taken numerous actions in connection with the BLMIS liquidation, including, e.g., taking possession of the

---

[2] See Securities and Exchange Commission and Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, Dkt. No. 1:08-cv-10791-LLS (S.D.N.Y.), Dkt. No. 4 ("12/15/08 District Court Order").

2

Debtor and its assets; auctioning off the Debtor's market making business; collecting roughly $2.6 billion of assets; filing multiple avoidance actions seeking to recover more than $90 billion from various parties, including numerous BLMIS investors who withdrew large sums during the ninety-day period immediately prior to the commencement of the liquidation; engaging several foreign law firms to aid and represent the Trustee in overseas asset recovery efforts and investigations.  The Trustee and his counsel negotiated an unprecedented settlement in the history of any SIPA case which settlement, if allowed to become final, will result in a recovery of $5 billion for the benefit of customers of BLMIS.  In addition, since the commencement of the proceeding, the Trustee and Counsel, as required by SIPA, have engaged in an intensive investigation of the activities of the Debtor which, among other things, has required close coordination and cooperation with SIPC and a number of regulatory and law enforcement authorities, as well as with the joint liquidators for BLMIS's British operations.[3]

Finally, a significant part of the Trustee's and Counsel's activity has centered on claims. In this regard, the Trustee obtained, though Counsel, an Order ("Claims Procedures Order") from the Bankruptcy Court which authorized the Trustee, consistent with SIPA, to notify customers and creditors, by publication and mailing, of the commencement of the liquidation proceeding and to mail them claim forms.  (Dkt. No. 12).  Through the Order, the Bankruptcy Court also established a procedure for the filing and determination of claims, and for judicial review of claim determinations.  Under SIPA and the Claims Procedures Order, claims are filed with the Trustee, who reviews and determines them.  If a claimant disagrees with the Trustee's decision, he may seek review by the Bankruptcy Court by filing an objection.  Once an objection

---

[3] More detailed information concerning the Trustee's activities is contained in his Interim Reports filed in the liquidation proceeding (Doc. Nos. 319, 1011, 2207, 3083, and 4072.)

3

is filed, the Trustee requests a hearing and notifies the claimant of the date and time thereof.

**The Applications for Compensation**

Through the course of the BLMIS liquidation to date, the Trustee and Counsel have filed six applications for compensation. In one guise or another, Movants' counsel, Attorney Helen Davis Chaitman, has objected to all of them, and including the current Motion, has sought leave to appeal five of those applications. Every one of Ms. Chaitman's objections has been rejected by the Bankruptcy Court, while this Court has now rejected two of her four prior motions for leave to appeal. See District Court Memorandum and Decision dated January 11, 2010 (GBD), Misc. Matter M-47, (ECF No. 1764); District Court Memorandum and Decision dated August 6, 2010 (SAS), Misc. Matter M-47.[4]

**Movants' Counsel's Litigation History**

Ms. Chaitman has a long history of initiating litigation in the BLMIS liquidation. Prior to filing the instant motion, she had 1) objected to the Trustee's determination of certain claims for "customer" relief in the liquidation proceeding and sought review thereof by the Bankruptcy Court; 2) objected to, and sought leave to appeal the Bankruptcy Court's Orders granting the first, second, third, and fifth applications of the Trustee and Counsel for interim compensation; 3) sued the Trustee in Bankruptcy Court;[5] and 4) sued SIPC's President and some of its current

---

[4] Ms. Chaitman's motions for leave to appeal the orders granting the second and fifth fee applications of the Trustee and Counsel remain pending.

[5] See Diane and Roger Peskin and Maureen Ebel v. Irving H. Picard, Trustee, Adv. Pro. No. 09-1272(BRL) (Bankr. SDNY) ("Declaratory Judgment Action"). The lawsuit was brought in violation of the stay of such suits against the Trustee under SIPA and this Court's Order placing BLMIS in liquidation. See SIPA §78eee(b)(2)(B)(i) and the December 15, 2009, Order of this District Court at 3, ¶V. The suit was dismissed by the Bankruptcy Court. In re Bernard L. Madoff Investment Securities LLC, 413 B. R. 137, 140 (Bankr. S.D.N.Y. 2009). Plaintiffs' Counsel filed an appeal to the District Court for the Southern District of New York, and that

4

and former directors in federal district court in New Jersey.[6] Through each of these procedural vehicles, Ms. Chaitman challenged the correctness of the methodology used by the Trustee in deciding their "customer" claims. The Trustee is allowing such claims for the net amount deposited by the customer with the brokerage (that is, the customer's "net equity" under SIPA). Ms. Chaitman contends that the Trustee should instead allow such claims on the basis of wholly fictitious cash and securities positions reported to them on the final fictitious account statements provided to them by BLMIS ("Fictitious Statement Approach").

The Trustee's claims determination methodology was upheld by the Bankruptcy Court in a decision issued on March 1, 2010, and an Order issued on March 8, 2010 (Dkt. Nos. 1999 and 2020) ("Bankruptcy Court Net Equity Decision and Order"). The Bankruptcy Court certified its Order for an immediate appeal to the United States Court of Appeals for the Second Circuit under 28 U.S.C. §158(d)(2) (Dkt. No. 2022). The latter court has received briefs and heard oral argument, and the issue is now pending decision. In re Bernard L. Madoff Investment Securities LLC, No. 10-2378-BK(L) (2d Cir.).

---

Court affirmed. Diane Peskin v. Irving H. Picard, Trustee, 440 B.R. 579 (S.D.N.Y. 2010). An Appeal to the Second Circuit was taken, but then voluntarily dismissed with leave to refile by August 1st. Diane Peskin v. Irving H. Picard, Trustee, Docket No.10-4789, Order dated 5/20/2011.

[6] At the start of the BLMIS liquidation proceeding, Movants' counsel also represented three named plaintiffs seeking to act on behalf of a purported class in a suit filed initially in federal district court in New Jersey. Canavan v. Harbeck, Civil No. 2:10-cv-00954-FSH-PS (D.N.J.). That suit was later transferred to the Bankruptcy Court over the plaintiffs' opposition, and then voluntarily dismissed by them in that Court. Although nominally against past and present SIPC officials for alleged bad faith, the suit in fact challenged the correctness of the Trustee's claims determination methodology in the BLMIS liquidation proceeding, and represented a frivolous attempt at forum shopping, with the object of securing a decision in New Jersey contrary to the Net Equity Decision and Order entered by the Bankruptcy Court in New York.

It is worth noting that, to this day, it remains unclear whose interests Ms. Chaitman actually represents. At the very least, they are her own since she herself is a claimant on a joint claim filed in the liquidation proceeding. However, she also represents investors in the liquidation proceeding with wholly irreconcilable financial interests in the position she espouses. See In re Bernard L. Madoff Investment Securities LLC, 413 B.R. 137, 140, n.3 (Bankr. S.D.N.Y. 2009). To a mathematical certainty, some of Ms. Chaitman's clients will receive less money, while other of her clients will receive more money, all at the expense of one another, if she prevails in her Fictitious Statement Approach in the BLMIS liquidation proceeding.[7]

## ARGUMENT

## THE MOVANTS HAVE SHOWN
## NO GROUNDS FOR AN IMMEDIATE APPEAL

**1.    Applicable Law**

The immediate appealability of an interlocutory Bankruptcy Court Order is governed by 28 U.S.C. § 158(a)(3), which provides that an immediate appeal may be taken only with leave of the federal District Court for the district in which the Bankruptcy Court that issued the Order

---

[7] Ms. Chaitman and her firm represent two kinds of BLMIS investors: 1) those who have yet to recover the amounts they deposited with BLMIS (in terminology used in the BLMIS case, "Net Losers"); and 2) investors who withdrew more than they deposited and received fake profits that actually consisted of other investors' money ("Net Winners"). If the Fictitious Statement Approach is followed, then Net Winners, who would otherwise be owed nothing (having recovered all of their money from BLMIS while the firm was in business), would have a claim for any fake profits shown on their last account statements. In the liquidation proceeding, they would share with Net Losers, pro rata, in customer property collected by the Trustee. Thus, even though the firm is in liquidation, Net Winners would continue to be paid fake profits at the expense of Net Losers who have yet to be repaid the amounts they gave to BLMIS. If the Trustee's claims determination methodology is followed, then only Net Losers would be repaid as "customers" to the extent of any amounts they gave to BLMIS.

6

sits.[8] Because neither Section 158(a) nor the Bankruptcy Code or Rules provide standards for evaluating a motion for leave to appeal, the decision whether to grant leave is committed to the discretion of the District Court. See, e.g., In re Kassover, 343 F.3d 91 (2d Cir. 2003); In re Worldcom, Inc., 2009 WL 2215296, at * 3 (S.D.N.Y. July 23, 2009). In exercising this discretion, most District Courts, including this Court, apply the standards applicable under 28 U.S.C. §1292(b) governing appeals from interlocutory appeals from orders entered by the federal District Courts.[9] See, e.g., Worldcom, 2009 WL 2215296 at * 3; In re Calpine Corp., 356 B.R. 585, 592-93 (S.D.N.Y. 2007). See also 10 Collier on Bankruptcy ¶ 8003.03 (16th ed. 2010).

Under these standards, the party seeking leave to take an interlocutory appeal has the burden to demonstrate exceptional circumstances sufficient to "overcome the general aversion to piecemeal appeals" and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." In re AroChem Corp., 176 F.3d 610, 619 (2d Cir. 1999); In re Flor, 79 F.3d 281, 284 (2d Cir. 1996); In re Perry H. Koplik & Sons, Inc., 377 B.R. 69, 73-74 (S.D.N.Y. 2007). Interlocutory appeal is limited to extraordinary cases where

---

[8] The procedure for seeking leave to appeal is set forth in Bankruptcy Rules 8001(b) and 8003. See Fed. R. Bankr. P. 8001(b) and 8003.

[9] Section 1292(b) states, in pertinent part, that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order....

28 U.S.C. § 1292(b).

appellate review might avoid protracted and expensive litigation and is not intended as a general vehicle to provide early review. See, e.g., In re Enron Corp., 2006 WL 2548592, at * 3 (S.D.N.Y. Sept. 5, 2006) ("Enron"). In this regard, the Second Circuit has stressed that the power to grant interlocutory review should not be "liberally construed." Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave, 921 F.2d 21, 24-25 (2d Cir. 1990); In re Worldcom, Inc., 2006 WL 3592954, at * 2 (S.D.N.Y. Dec. 7, 2006).

Consistent with these limitations, interlocutory appeal is permitted only where the order appealed (1) involves a controlling question of law, (2) over which there is a substantial ground for difference of opinion, and where (3) an immediate appeal would materially advance the ultimate termination of the litigation. See, e.g., Worldcom, 2009 WL 2215296 at * 3; Koplik, 377 B.R. at 73; Calpine, 356 B.R. at 593. In regard to the first prong of this test, the "controlling question of law" must first and foremost be just that - a question of law. See, e.g., Koplik, 377 B.R. at 73-74; Enron, 2006 WL 2548592, at * 4. It cannot involve a question of fact, or even a question requiring the application of the appropriate law to the relevant facts. See In re Marketxt Holdings Corp., 2009 WL 1286130, at * 1 (S.D.N.Y. May 5, 2009) ("[W]here, as here, the question presented entails application of a well-accepted legal standard to complex factual predicates, no such controlling issue of law exists"); Koplik, 377 B.R. at 73-74; In re Cross Media Marketing Corp., 2007 WL 2743577, at * 2 (S.D.N.Y. Sept. 19, 2007); Enron, 2006 WL 2548592, at * 4. Rather, it must be a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record," e.g., a question concerning the applicable legal standard. Koplik, 377 B.R. at 74 (emphasis added, citation and quotation marks omitted); Enron, 2006 WL 2548592, at * 4; Freeman v. NBC, Inc., 1993 WL 524858, at * 2 (S.D.N.Y. Dec. 15, 1993).

The second prong of the test is equally stringent. A "substantial ground for a difference of opinion" concerning the propriety of the Bankruptcy Court's resolution of a question exists only if there is "substantial doubt" that the Court's Order was correct. See, e.g., Enron, 2006 WL 2548592 at *4; In re Adorn Glass & Venetian Blind Corp., 2005 WL 3481325 * 5 (S.D.N.Y. 2005). The fact that the issue is one of first impression in the Second Circuit, that there is conflicting case law outside the circuit, or that there is strong disagreement among the parties is not, in and of itself, sufficient to create "substantial doubt." See, e.g., Enron, 2006 WL 2548592 at *4; Adorn Glass, 2005 WL 3481325 at * 5. To ascertain whether such doubt exists, the reviewing court must examine the strength of the opposition to the challenged ruling and determine whether those arguments create truly <u>substantial</u> doubt as to the propriety of that ruling. See, e.g., Flor, 79 F.3d at 284; Enron, 2006 WL 2548592 at *4.

As for the third prong of the test, an immediate appeal is considered to advance the ultimate termination of the litigation if that "appeal promises to advance the time required for trial or to shorten the time required for trial." See, e.g., Koplik, 377 B.R. at 74; Transport Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth., 358 F.Supp.2d 347, 350 (S.D.N.Y. 2005). See also Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865-66 (2d Cir. 1996) (interlocutory appeal is "reserved for those cases where an immediate appeal may avoid protracted litigation").

**2.  The Prerequisites for An Immediate Appeal Are Not Met**

For the reasons stated below, Movants have failed to satisfy any of the prerequisites for leave to take an interlocutory appeal of the Bankruptcy Court's order granting the fee applications of the Trustee and Counsel. The purported "questions" that they identify are hardly "controlling questions of law," and, in fact, are not questions of law at all. All of the alleged

9

"questions" require acceptance of an assumed, but disputed, factual predicate - principally concerning the relationship between the Trustee and SIPC and the Trustee's potential for further recovery in this liquidation - and extensive study of the record.

Moreover, not only is there no "substantial ground for difference of opinion" concerning whether the Bankruptcy Court resolved these "questions" correctly, there is no doubt that it did so. Finally, granting the Movants' leave to appeal would not advance the ultimate termination of any litigation in the BLMIS liquidation. Instead, it would reward Movants and their counsel for frivolously multiplying baseless litigation in this liquidation proceeding, and would divert the Trustee's attention and resources from resolution of outstanding claims and pending asset recovery litigation, thus forcing the Trustee to incur additional unnecessary fees and costs and delaying the process Movants allegedly purport to expedite.

**A. Movants Have Failed To Identify A "Controlling Question of Law" As To Which There Is A "Substantial Ground For Difference Of Opinion"**

Movants state that, if granted leave to appeal, they would raise the following issues: (1) whether the fact that the Trustee receives a fee for his services somehow violates Movants' right to due process of law because the Trustee is party to an "unholy alliance" with SIPC, a quasi-public organization; and (2) whether the Bankruptcy Court correctly determined that there is no reasonable prospect that SIPC will recoup its advances to the Trustee, thus requiring the Bankruptcy Court to adhere to SIPC's recommendation in support of the applications of the Trustee and Counsel for interim compensation.

None of these "issues" is a question of law that this Court "could decide quickly and cleanly without having to study the record." See, e.g., Cross Media Marketing, 2007 WL 2743577 at * 2. On the contrary, resolution of any of these "issues" would require the Court to pour over the record and examine the same evidence scrutinized by the Bankruptcy Court.

10

Moreover, a determination of SIPC's reasonable expectation of recovery of its administrative expense advances would require this Court to be prescient and to divine the outcome of, or at the very least, evaluate the Trustee's likelihood of success in, all of his pending lawsuits, in order to conclude that even though there clearly is not now the possibility of recovery by SIPC, at some unknown date in the future, there *may* be.

The question whether SIPC has any reasonable prospect of recouping its advances to the Trustee, for example, is intensely factual. Moreover, not only are there no "substantial grounds for difference of opinion" concerning the Bankruptcy Court's resolution of the "issues" raised by Movant, there is no doubt that the Bankruptcy Court was right and that Movants are not. Movants' assertion that the Trustee is self-interested and disqualified from serving in his role stems completely from the fact that he decided not to apply the "net equity" calculus proposed by Ms. Chaitman, even though such a decision benefits, rather than harms, some of her clients.

Of course, Ms. Chaitman's argument is based on another of her conspiracy theories, and is completely without foundation. Intriguingly, Ms. Chaitman now appears to have reversed the roles of the purported conspirators. Having once suggested that the Trustee should be disqualified because of his asserted loyalty to SIPC – suggesting that SIPC, not the Trustee, was the source of the "net equity" calculus with which she disagrees – Ms. Chaitman now suggests that the Trustee is inadequate because he is motivated less by his desire to serve the interests of customers and creditors, and more by his desire for personal financial gain. Without doubt, these allegations come from the realm of fantasy and fevered imagination, and find no support of any kind in the record. More importantly, the nature of the Trustee's motivation while wholly speculated upon by the Movants, is intensely *factual*, and therefore utterly inappropriate for interlocutory appeal.

11

In fact, while SIPC and the Trustee and Counsel share common interests[10] - a nexus common to all SIPA liquidations and the express product of statutory design - the Trustee is an independent fiduciary, whose disinterestedness was established conclusively at an uncontested hearing held, on widely published notice to all BLMIS accountholders and others, including Movants, on February 4, 2009, in the liquidation proceeding.[11]  Movants' counsel is entitled to disagree with the Trustee's construction of "net equity" and to express her disagreement by objecting to his determinations of her clients' claims.  She is not entitled collaterally to object to his determinations, and the Bankruptcy Court's decision to uphold the determinations, through slanderous attacks on his motivation and character.

It is equally clear that the Bankruptcy Court was obliged to accede to SIPC's recommendation concerning the fee applications of the Trustee and Counsel.  SIPA provides expressly, and without qualification, that a bankruptcy court "<u>shall</u> award the [fee] amounts recommended by SIPC" when those amounts are to be paid by SIPC "without reasonable expectation of recoupment thereof."  SIPA § 78eee(b)(5)(C) (emphasis added). That condition was met here, and the Bankruptcy Court properly awarded fees in the amounts recommended by SIPC.  Although the Court adopted SIPC's recommendation, it remarked on the complexity of the liquidation, and the nature of the services rendered, as follows:

> With respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination of the largest, most complex sets of litigation that have come down the pike.  It's measured both in quality and quantity in the thousands

---

[10]    SIPC and trustees appointed under SIPA "vindicate important public interests."  <u>In re Executive Securities Corp.</u>, 702 F.2d 406, 410 (2d Cir.), <u>cert. den.</u>, 464 U. S. 818 (1983).

[11]    <u>See</u> Order of Disinterestedness of Trustee and Counsel to Trustee, issued in the liquidation proceeding on February 4, 2009 (Dkt. No. 69).

> with deadlines that have come upon everyone under the statute so that the December deadline requiring thousands of new law suits to be filed is something that was anticipated and it is a big stretch for any law firm or any organization to deal with.
>
> The chart that has been presented here as an illustration of the enormous and complex activity involving just one feeder fund with billions of dollars involved, lawsuits all over the world and here is indeed forms a predictor of the continuation of the kind of litigation that's involved here. And for purposes of this hearing, I am considering that charge as an exhibit, as a model of the kind of activity in complex cases that are involved here in the Madoff proceedings.

Transcript of June 1, 2011, Hearing (Doc. No. 4135), at pp. 45-46.

Movants' counsel's contention that the Bankruptcy Court was not bound by SIPC's recommendation is again based upon her allegation that the Trustee "has allowed $9.8 billion [in customer property] and allowed [customer] claims of less than $6.9 billion." For the reasons stated in detail in the Trustee's memorandum opposing the instant motion, and in the Trustee's response to Movants' objection before the Bankruptcy Court, Movants' allegation is false and inconsistent with the record evidence. (See, e.g., Doc. No. 4109 at ¶¶ 13-26.) Further, once again, the "issue" counsel purports to create, if it exists at all, is intensely factual and unworthy of consideration.

**B. Granting Movants Leave To Appeal Would Not Materially Advance The Termination Of Any Litigation Connected With The BMLIS Liquidation**

Finally, granting the Movants leave to appeal would not in any way advance the termination of any litigation connected with the BLMIS liquidation. On the contrary, it would force the BLMIS estate to incur additional fees and costs to defend a frivolous action and would require the Trustee and his counsel to divert yet more time, attention, and resources from claims resolution and satisfaction, the very things that the Movants claim they want to accelerate. Worse, reversing the Bankruptcy Court's Order on the grounds suggested by the Movants would

13

contravene, with no foundation in law or fact, the express provisions of SIPA and procedures thereunder, and would throw a highly complex liquidation into chaos, causing serious delay in claims resolution and satisfaction. In short, granting the Movants' motion would impede, not materially advance, the termination of the BLMIS liquidation and connected litigation, including the Trustee's pursuit of assets for the benefit of <u>all</u> BLMIS customers, including the Movants.

One final comment by the Movants warrants response. At page 18 of the Memorandum in support of their motion, the Movants contend that it "is a sad fact that this liquidation will probably outlast many of Madoff's victims." The truly sad fact is that it is the actions of certain claimants, spearheaded by Ms. Chaitman, that impede progress in the liquidation proceeding. As mentioned above, the Trustee and his counsel have negotiated a settlement that if allowed to become final, will result in $5 billion becoming available for distribution to customers of the Debtor. Had no appeal been taken, the Bankruptcy Court Order would have become final as of January 27, 2011. Under the settlement agreement, the Trustee could have sought the release of the $5 billion from escrow and received the funds within five business days for distribution to customers. Instead, two claimants appealed from the Order. One of the two claimants, purporting to act on her own behalf and on behalf of an unnamed group of investors whose claims had been disallowed, in whole or in part, by the Trustee or who did not file claims in the SIPA proceeding, was represented by Ms. Chaitman. While subject to Bankruptcy Court approval, the Trustee will proceed with a partial distribution of funds on hand. Nevertheless, the actions of claimants, represented by Ms. Chaitman, on this and other matters, means that instead of immediately recovering 44 cents on the dollar, the customer who has yet to recover the

amount deposited by him with BLMIS, can only recover 4 cents on the dollar.[12]

## CONCLUSION

For all of the aforementioned reasons, the Motion for Leave to Appeal should be denied.

    Respectfully submitted,

/s/ Josephine Wang
JOSEPHINE WANG
General Counsel

KEVIN H. BELL
Senior Associate General Counsel
 for Dispute Resolution

CHRISTOPHER H. LAROSA
Associate General Counsel

SECURITIES INVESTOR
 PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
Facsimile: (202)371-6728
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: clarosa@sipc.org

Date: June 29, 2011
Washington, D.C.

---

[12] See Trustee's Motion for an Order Approving An Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers, dated May 4, 2011 and filed in the liquidation proceeding (Doc. No. 4048), ¶¶60, 80-85. The claimants would not have been prejudiced by the Trustee's distribution due to reserves, or amounts withheld from distribution, by the Trustee pending a final ruling on the net equity question.