**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman, Esq. (4266)
45 Broadway
New York, New York 10006
hchaitman@beckerny.com

*Attorneys for Marsha Peshkin and over 800
Other Customers of Bernard L. Madoff
Investment Securities LLC as Listed on
Exhibit A*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                                    Plaintiff,<br><br>            v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                                    Defendant. | SIPA LIQUIDATION<br><br>Case No. 08-01789 (BRL)<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                                    Debtor. | Appel No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR LEAVE TO APPEAL**

Pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8003, Marsha Peshkin and over 800 other customers (the "customers")[1] of Bernard L. Madoff Investment Securities LLC ("BLMIS") submit this memorandum of law in support of their motion for leave to appeal the June 21, 2011 order (the "Order") (Doc #4180) of the bankruptcy court denying the customers' motion to compel Irving H. Picard (the

---

[1] Movants are the BLMIS customers listed on Exhibit A to the accompanying Declaration of Helen Davis Chaitman ("Chaitman Decl.").

"Trustee") to produce the bank and trading records of BLMIS.[2] The Trustee was appointed at the request of the Securities Investor Protection Corporation ("SIPC") in the proceeding instituted on December 15, 2008, for the liquidation of BLMIS under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, et seq. ("SIPA").

## PRELIMINARY STATEMENT

Two and a half years into this case, in which the Trustee has spent over $300 million on professional fees, the most basic facts concerning the BLMIS fraud have been concealed by the Trustee. The Trustee has represented that BLMIS never purchased securities for BLMIS' customers; that BLMIS was a "Ponzi scheme"; and that the only source of payments to customers was "other people's money." [3]

Based upon these representations of fact, the bankruptcy court granted the Trustee's motion for a ruling that – for the first time in SIPC's history – customers whose statements showed the ownership of actual securities could be denied SIPC insurance claims for the balance on their last statements. That issue is *sub judice* in the Second Circuit on direct certification from the bankruptcy court.

However, there is substantial reason to doubt that BLMIS was a Ponzi scheme. Indeed, the Trustee's own expert has conceded that customers' money was used to purchase securities[4] and the Trustee's counsel has acknowledged that whether BLMIS

---

[2] A copy of the Order is annexed as Exhibit B to the Chaitman Decl.

[3] Motion for an Order Approving Initial Allocation of Property to the Fund of Customer Property and Authorizing an Interim Distribution to Customers, May 4, 2011, *In re* BLMIS, Doc. # 4048, at ¶40, annexed as Exhibit C to the Chaitman Decl.

[4] Declaration of Joseph Looby, Oct. 16, 2009, *In re* BLMIS, Doc. # 524, at ¶¶ 9, 17, 18, 19, 26, 27 ("Looby Declaration"), annexed as Exhibit D to the Chaitman Decl.

2

was a Ponzi scheme is "an issue in the case." In the argument on June 21, 2011, the Trustee's counsel stated:

> With regard to whether or not it's a Ponzi or whether the market making platform somehow obviates that or undercuts it in any way, that's an issue. It's in the case; we understand that. [5]

SIPA compels the Trustee to disclose to customers all material information concerning the fraud of an SEC-regulated broker/dealer. *See* 15 U.S.C. § 78fff-1(d)(3); 11 U.S.C. § 704(a)(4), (7). In violation of his statutory obligations, the Trustee has refused to produce to customers BLMIS' trading and bank records which would prove, once and for all, whether there is any factual justification for denying SIPC insurance to more than half of the BLMIS customers. The ground on which the Trustee has refused to produce these records is that they are protected by the Trustee's attorney/client privilege and his counsel's work product privilege. The bankruptcy court has so held.[6]

The bankruptcy court's order is clear error. This is a pure issue of law which is appropriate for review by the district court now because reversal of the Order will materially advance the BLMIS liquidation and affect the lives of thousands of people.

### STATEMENT OF FACTS AND ARGUMENTS BELOW

1. **THE TRUSTEE HAS A FIDUCIARY AND STATUTORY OBLIGATION TO PROVIDE BLMIS' TRADING AND BANK RECORDS TO CUSTOMERS**

    a. **By Failing To Disclose the Requested Information, The Trustee Has Breached His Fiduciary Duty to the Customers**

As the customers' fiduciary, the Trustee is obligated to apprise them, in detail, of his investigative activities and the results thereof. *In re Adler, Coleman Clearing*

---

[5] 6/21/11 Hrg. Trans. 10:25-11:1-2, annexed as Exhibit E to the Chaitman Decl.

[6] *Id.* at 14:3-4 (Judge Lifland holding that "any information that is not disclosed is either privilege or non-discoverable pursuant to the Federal Rules of Civil Procedure").

3

*Corp.*, 1998 WL 551972, at 17 (Bankr. S.D.N.Y. 1998) ("[A] SIPA trustee owes a fiduciary duty to the customers and creditors of a liquidating broker dealer akin to the fiduciary duty a bankruptcy trustee owes a debtor's estate and creditors."). The Trustee owes the customers a duty of absolute candor. *See In re Center Teleproductions, Inc.,* 112 B.R. 567, 576 (B. S.D.N.Y. 1990) (quoting *In re Chochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983)); *see also Chiarella v. U.S.*, 445 U.S. 222, 228 (1980) (quoting RESTATEMENT (SECOND) OF TORTS § 551(2)(a) (1976)) ("[T]he duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'"); *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993) ("The Chapter 7 trustee is an officer of the court and owes a fiduciary duty both to the debtor and to the creditors as a group."). The Trustee has breached this duty by refusing to provide fundamental information to customers which materially impacts their lives.

The bankruptcy court has a duty to protect the integrity of proceedings before it. By denying the Movants' motion to compel, the court failed to protect the interests of the customers, to whom the Trustee owes a fiduciary duty.

> **b. The Trustee's Failure To Produce BLMIS' Bank and Trading Records is a Breach of His Statutory Obligations Under SIPA and the Bankruptcy Code**

As a SIPA trustee, the Trustee is "subject to the same duties as a trustee in a case under chapter 7 of Title 11." 15 U.S.C. § 78fff-1(b). A chapter 7 trustee has a duty to "investigate the financial affairs of a debtor" and, unless otherwise ordered by the court, "furnish such information concerning the estate and the estate's administration as is requested by a party in interest." 11 U.S.C. § 704(a)(4), (7). Section 704(7) "places the burden of providing requested information on the trustee, and reflects the overriding

4

duty to keep parties in interest informed." *Pineiro v. Pension Benefit Guaranty Corp.*, 318 F.Supp.2d 67, 102 (S.D.N.Y.2003); *see also In re Sports Accessories, Inc.*, 34 B.R. 80, 81 (B. D. Md. 1983) ("[c]onsidering the overriding duty of the trustee to keep creditors informed" and ordering production of requested information). All of the customers are parties in interest. *See Peskin v. Picard*, 413 B.R. 137, 145 (B. S.D.N.Y. 2009); *In re Caldor*, 193 B.R. 182, 186 (B. S.D.N.Y. 1996) ; *see also Miller v. Austin*, 72 B.R. 893, 898 (S.D.N.Y. 1987) (SIPA trustee has duty to provide information to claimant as a party in interest). [7]

The Trustee's failure to disclose material information has become an issue of significant concern to the House of Representatives Subcommittee with direct supervision of SIPC. In a June 3, 2011 letter (the "Garrett Letter"), Congressman Scott Garrett, Chairman of the Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises, asked the Government Accountability Office (the "GAO") to "conduct a comprehensive evaluation of the actions of SIPC, the Trustee, and the SEC's involvement and oversight of this major liquidation."[8] The Garrett Letter questioned the Trustee's "record for transparency throughout the liquidation process" and emphasized the importance of disclosure in this case:

> In a contentious claims process, as is the case in the Madoff liquidation, **customers need to have access to all relevant information discovered by the Trustee in the course of his investigation of the bankruptcy.** This obvious need is contemplated in the SIPA statute, which directs the Trustee to prepare a full report on his findings for the Bankruptcy Court and SIPC. **To date, some 30 months after the**

---

[7] *See also* January 24, 2011 letter from Stephen Harbeck, President of SIPC, to Rep. Scott Garrett, (the "Harbeck Letter"), at 5, a copy of which is annexed as Exhibit F to the Chaitman Decl., noting that "customers and creditors who were not given priority" will be "treated as general unsecured creditors" of the estate.

[8] A copy of the Garrett Letter is annexed hereto as Exhibit G to the Chaitman Decl.

5

**Trustee's appointment, no such report is available**. [Emphasis added.]

The Trustee's failure to disclose the BLMIS trading and bank records to customers infringes on the "policy of open inspection, established in the Code itself through section 704(7)." The transparency required by section 704(7) "is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised." *In re Robert Landau Assocs., Inc.,* 50 B.R. 670, 677 (B.S.D.N.Y.1985) (internal citation and quotation omitted); *see also, In re Sports Accessories, Inc.,* 34 B.R. 80, 82 (B.D.Md.1983) (discussing importance of trustee's duty to disclose).

Here, it is clearly in the public interest that the factual predicate for the Trustee's deprivation of SIPC insurance to thousands of customers be disclosed.

### c. Contrary to the Trustee's Assertion, BLMIS' Banking and Trading Records Are Not Privileged

The bankruptcy court erred as a matter of law in holding that BLMIS' bank and trading records are protected by the attorney/client and work product privileges. The attorney/client privilege exists to "to foster open communication between attorneys and their clients, so that fully informed legal advice may be obtained." *U.S. v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997). The work-product privilege protects from disclosure documents prepared in anticipation of litigation by or for another party or its representative. F.R.C.P. Rule 26(b)(3). However, documents "that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation' are not protected as attorney work product." *New York Times Co. v. United States Dep't of Def.,* 499 F.Supp.2d 501, 517 (S.D.N.Y.2007).

6

The BLMIS bank and trading records are not communications between the Trustee and his counsel. Nor do the records reflect his counsel's work product. If, in order to enrich SIPC, the Trustee has mis-represented BLMIS' bank and trading records, he cannot hide behind the attorney/client or work product privileges to conceal his own dishonesty.

### STATEMENT OF QUESTION PRESENTED AND RELIEF SOUGHT

**QUESTION** :    Did the bankruptcy court err as a matter of law in denying the customers' motion to compel the Trustee to produce BLMIS' bank and trading records?

**RELIEF SOUGHT:**    Reversal of the Order and such other relief as the Court deems just and proper under the extraordinary circumstances of this case.

### ARGUMENT

**1. MOVANTS HAVE STANDING TO APPEAL**

An appellant has standing to appeal a bankruptcy court order when he is "directly and adversely affected pecuniarily by" the challenged order. *Int'l Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 747 (2d Cir. 1991) (citations omitted).

Here, the Trustee has put before the Second Circuit the issue of whether SIPC can deny SIPC insurance to more than half of the BLMIS customers based upon his representation that BLMIS was a Ponzi scheme. Yet, BLMIS does not fit the criteria for a Ponzi scheme. A Ponzi scheme is a business venture where there is no *bona fide* business at all and old investors are simply paid off with new investors' money. *See, e.g., Donell v. Kowell*, 533 F.3d 762, 767 n.2 (9th Cir. 2008); *Eberhard v. Marcu*, 530 F.3d 122, 132 n.7 (2d Cir. 2008) ("A 'Ponzi scheme' typically describes a pyramid scheme where earlier investors are paid from the investments of more recent investors,

7

rather than from any underlying business concern, until the scheme ceases to attract new investors and the pyramid collapses." (citing *Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.)*, 309 F.3d 1325, 1327 n.2 (11th Cir. 2002)); *Jobin v. McKay (In re M & L Bus. Mach. Co.)*, 84 F.3d 1330, 1331 n.1 (10th Cir. 1996) ("We have defined a Ponzi scheme as an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors." (citations omitted)).

BLMIS was certainly not a Ponzi scheme under these cases because, during all relevant time periods, BLMIS was a huge Wall Street trading company, conducting stock trades equal to 10% of the daily volume on the New York Stock Exchange. BLMIS employed approximately 200 people, only 12 of whom were allegedly involved in the fraudulent investment advisory side of BLMIS' business. Thus, at most, it would be fair to say that 6% of BLMIS' business was fraudulent.

BLMIS had three activities in its business. It did proprietary trading; it was one of the largest market makers in the United States; and it had an investment advisory business.[9] All three businesses operated under BLMIS, a limited liability company.[10] And it is not disputed that during the period from 1992 through 2008, BLMIS conducted trades equaling up to 10% of the daily volume on the New York Stock

---

[9] *Picard v. JP Morgan Chase & Co.*, No. 11-00913, June 24, 2011, doc. #50, at ¶ 36, ("JPMC Compl."), a copy of which is annexed as Exhibit H to the Chaitman Decl.

[10] *Id.*

8

Exchange.  Randall Smith, *Wall Street Mystery Features a Big Board Rival*, THE WALL STREET JOURNAL, Dec. 16, 1992.

As stated by one commentator:

> In 2008, BMIS had $700 million of equity capital and handled approximately 10% of the NYSE trading volume.  Its 200 employees (100 people in trading, fifty in technology, and fifty in the back office) were divided between New York and London, but only twelve of them were assigned to the famous split-strike conversion strategy devised by Madoff.[11]

Thus, BLMIS was not a Ponzi scheme.   Moreover, we believe that the BLMIS bank and trading records will prove that customers' money was deposited directly and indirectly into the BLMIS trading accounts and that customers' money purchased the very same securities that were shown on customers' statements.

### 2. THE COURT SHOULD GRANT LEAVE TO APPEAL

This Court has broad discretion to grant leave to appeal the Order pursuant to 28 U.S.C. § 1292(b).  *See In re Jartran, Inc.,* 886 F.2d 859, 866 (7th Cir. 1989) ("review of interlocutory appeals from the bankruptcy court is in the district court's discretion").  A court may exercise its discretion to grant leave to appeal where the order:  (1) "involves a controlling question of law," (2) as to "which there is a substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Young v. Paramount Comm'ns Inc.*, 186 B.R. 803, 806 (S.D.N.Y. 1995).  Here, each of those criteria is met.

### a.    This Appeal Involves A Controlling Question Of Law

---

[11] Greg N. Gregoriou and Francois-Serge Lhabitant, *Madoff: A Riot of Red Flags*, Jan. 2009, p. 7, available at
http://facultyresearch.edhec.com/jsp/fiche_document.jsp?CODE=1234770344525&LANGUE=1

9

Determination of whether the law compels the Trustee to turn over the BLMIS bank and trading records is a pure question of law which this Court can decide quickly and cleanly, the resolution of which will materially advance the BLMIS liquidation. In fact, the liquidation cannot move forward without determination of the fundamental issue of whether BLMIS was a Ponzi scheme.

"The 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record. The question must also be 'controlling' in the sense that, at a minimum, determination of the issue on appeal would materially affect the litigation's outcome. *In re Adelphia Communications Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005) (citing *In re Worldcom*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003); *North Fork Bank v. Abelson*, 207 B.R. 382, 389-90 (E.D.N.Y. 1997)).

The customers meet the requirement of "exceptional circumstances under § 1292(b)(only "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 2461 (1978) (citation and internal quotation marks omitted). Such "exceptional circumstances" exist where the issues on appeal affect a wide range of pending cases. *Department of Economic Dev. v. Arthur Andersen & Co.*, 683 F. Supp. 1463, 1486 (S.D.N.Y. 1988) (finding that [a] controlling question of law under Section 1292(b) is "one that could terminate the action, and additionally 'may contribute to the determination, at an early stage, of a wide spectrum of cases.'") (quoting *Herold v. Braun,* 671 F.Supp. 936, 938 (E.D.N.Y.1987) (internal quotation omitted)). In *Brown v. Bullock*, the court noted that leave to appeal was granted in that case in part because "such a determination was likely to have

10

precedential value for a large number of other suits . . . now pending in the Southern District [of New York]." 294 F.2d 415, 417 (2d Cir. 1961).

The BLMIS bank and trading records will determine whether SIPC has any justification for denying SIPC insurance to more than half of the BLMIS customers. In addition, it will determine whether the Trustee has any basis for the 988 fraudulent transfer actions he has filed against approximately 5,000 innocent customers, based solely on the Trustee's contention that BLMIS was a Ponzi scheme. Thus, acceptance of this appeal will have an enormous impact on thousands of people.

### b. There Is Substantial Ground For Difference Of Opinion

There is "substantial ground for difference of opinion" with the Order because it is inconsistent with the plain language of SIPA and the Bankruptcy Code. Yet, there are no cases directly on point. *See Northeast Savings F.A. v. Geremia*, 191 B.R. 275,278 (D.R.I. 1996); s*ee Klinghoffer*, 921 F.2d at 25 (hearing interlocutory appeal involving difficult issue of first impression); *In re Pappas*, 207 B.R. 379, 381-82 (2d Cir. BAP 1997) (hearing interlocutory appeal where there is a difference of opinion on whether court may extend the time of a creditor to commence an adversary proceeding). There is often a substantial ground for difference of opinion where, as here, "precedent bearing on the matter is relatively thin." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 156 (D.N.J. 2005).

### c. An Immediate Appeal Will Advance The Ultimate Termination Of The Litigation

The BLMIS liquidation will be materially advanced for the benefit of all BLMIS customers if the Order is immediately appealable. If, as we believe, the BLMIS bank and trading records prove that customers' money was used to purchase securities and, in

fact, often purchased the very securities shown on customers' statements, then the Trustee has proceeded for 2 ½ years on a false premise designed to enrich SIPC at the expense of the customers. To assure the integrity of the entire liquidation, this issue must be resolved now, not ten years from now when many of the customers may have passed on.

## CONCLUSION

This motion raises a vital issue implicating the integrity of the entire BLMIS liquidation that requires review by this Court on an interlocutory basis. Movants respectfully request that their motion for leave to appeal the Order be granted.

June 30, 2011

**BECKER & POLIAKOFF LLP**

By:   /s/ Helen Davis Chaitman
Helen Davis Chaitman
45 Broadway
New York, New York 10006
(212) 599-3322

*Attorneys for Marsha Peshkin and over 800 Other Customers of Bernard L. Madoff Investment Securities LLC as Listed on Exhibit A*