# INCARICO FIDUCIARIO
# DEL 7 FEBBRAIO 2002
# CONFERITO A
# BRERA FIDUCIARIA SpA



**SPECIMEN FIRMAE**

| Contratto fiduciario n. 2474 | del 7 febbraio 2002 |
| --- | --- |

| Fiduciante | Legale Rappresentante |
| --- | --- |
| Denominazione **I-TECHNOLOGY SOLUTIONS INC.** | Cognome **Müller** |
| Sede legale **1010 de la Gauchetière West – Suite 900** | Nome **Bernard** |
| Città **Montreal - Quebec** | Domicilio: c/o la società **RTH AG di Zug - Svizzera** |
| | Luogo di nascita **Strasbourg** Il **6.5.1948** |
| | Nazionalità **svizzera** |
| | |

| Documento d'identità |
| --- |
| C.I. ☒  Patente ☐  Passaporto ☐ |
| n. **B2428213** |
| rilasciato il **24.6.1994** |
| Da Einwohner und Fremdenkontrolle der Stadt Zurich |

| Firma | *(signature)* |
| --- | --- |

Visto per autentica e rilevamento dati    Firma _____

08 01792

## CARTE D'IDENTITÉ
### CITOYEN SUISSE
## IDENTITÄTSKARTE
### SCHWEIZERBÜRGER
## CARTA D'IDENTITÀ
### CITTADINO SVIZZERO
## CARTA D'IDENTITAD

Einwohner- und
Fremdenkontrolle
der Stadt Zürich

B 2428213





**RTH→**

RTH AG - Reliable Trade Administration & Handling

**Bernard Müller**
Managing Director

RTH AG
Baarerstrasse 73, CH-6302 Zug / Switzerland
Phone: +41(41)727 50 70, Fax: +41(41)727 50 80
E-Mail: admintrade@rth.ch – Internet: www.rth.ch

0041 813746214

# I-TECHNOLOGY SOLUTIONS INC.

SPETTABILE SOCIETÀ

**BRERA FIDUCIARIA SpA**

VIA MANZONI N. 44

20121 - MILANO

7 FEBBRAIO 2002

Con riferimento all'incarico di amministrazione fiduciaria conferitoVi in data 7 febbraio 2002 ed avente per oggetto:

(x) **una quota del valore complessivo di euro 9.500 (novemilacinquecento) corrispondenti al 95% del capitale sociale di 10.000 Euro.**

della costituenda Società che sarà denominata **TECNO DEVELOPMENT AND RESEARCH s.r.l.** ed in relazione alla necessità che tale partecipazione sia intestata fiduciariamente alla Vostra Società, avuto riguardo all'attività che essa esplica a norma della Legge 23 novembre 1939, n. 1966, Vi confermo che tale partecipazione dovrà da Voi essere sottoscritta partecipando a Vostro nome, ma per mio conto, alla costituzione della suddetta Società, dal cui atto costitutivo, tra l'altro, dovranno risultare i seguenti elementi:

1) SEDE LEGALE:        **Via Settala 20**

2) OGGETTO SOCIALE:

**Società di ricerche di mercato**

3) CAPITALE SOCIALE: **10.000 euro**

Gli elementi dell'atto costitutivo qui non indicati, quali composizione e componenti dell'Organo Amministrativo e del Collegio Sindacale, nonché lo statuto della costituenda Società, dovranno essere da Voi approvati nella stesura, a me nota e gradita, che sarà presentata in sede di costituzione.

Sono a conoscenza che per Vostre esigenze la quota da Voi sottoscritta per mio conto dovrà essere contestualmente integralmente liberata.

L'importo equivalente all'intero capitale sociale della costituenda società Vi sarà bonificato sul c/c n. 5369/0 a Voi intestato intrattenuto presso la Banca Popolare di Intra sede di Milano.

Vi confermo che qualora nello statuto della suddetta Società siano previste clausole limitanti la libera circolazione delle quote:

- l'esecuzione da parte Vostra di ogni incarico conferitoVi sarà subordinata al pieno rispetto sia formale sia sostanziale, a Vostro insindacabile giudizio, della clausola di prelazione;

- l'esistenza del diritto di prelazione in capo agli altri soci non limiterà in alcun modo, per quanto mi concerne, la facoltà di recesso dal rapporto di amministrazione fiduciaria prevista contrattualmente a Vostro favore.

Vi confermo sotto la mia personale responsabilità di essere valutariamente estero residente e mi impegno a comunicarVi tempestivamente eventuali variazioni di tale stato giuridico.

Con i miei migliori saluti

**I-TECHNOLOGY SOLUTIONS INC.**
**BERNARD MULLER**

Spettabile Società
**BRERA FIDUCIARIA S.p.A.**
Via Manzoni n. 44
20121 - MILANO

Il sottoscritto **Bernard Muller** in qualità di Legale rappresentante della società **I-Technology Solutions Inc.** con sede in Montreal – Quebec in 1010 de la Gauchetière West, Suite 900

(d'ora in avanti indicata come *FIDUCIANTE*)
premesso
- che la Vostra Società (d'ora in avanti indicata come *FIDUCIARIA*) è autorizzata all'esercizio dell'attività propria di società fiduciaria sotto l'osservanza della legge 23.11.1939, n. 1966 e R.D. 22.4.1940, n. 531

- che sono proprietaria esclusiva dei beni di seguito indicati

FIRMATO : _____ ✍

- che sono usufruttuario dei beni di seguito indicati

FIRMATO : _____

- che i beni di seguito indicati vi sono affidati nella mia qualità di imprenditore

FIRMATO : _____

con la presente Vi conferisco l'incarico di assumere in amministrazione a Vostro nome ma per mio esclusivo conto e spese i seguenti beni:

**una quota del valore complessivo di euro 9.500 (novemilacinquecento), pari al 95% del capitale sociale di euro 10.000 della società TECNO DEVELOPMENT AND RESEARCH s.r.l. con sede in Milano – Via Settala n. 20.**

I beni da Voi assunti in amministrazione rimangono di mia effettiva proprietà.
L'incarico è regolato dalle seguenti convenzioni:
1. La *FIDUCIARIA* è autorizzata a depositare i valori mobiliari affidati in amministrazione presso banche di Sua scelta (*) (**), con espressa facoltà di subdeposito, ovvero presso i propri uffici. La *FIDUCIARIA*, ove necessario per le esigenze operative, potrà anche provvedere a tenere depositati presso le casse sociali della società emittente quei valori mobiliari che, per la loro natura, lo consentano.

2. Al verificarsi dei presupposti la *FIDUCIARIA* provvederà:
    *a.* ad incassare, con gli adempimenti prescritti dalle leggi, dividendi, utili, interessi, rimborsi di capitale ed in genere ogni provento spettante al *FIDUCIANTE* stesso **al netto delle ritenute fiscali.** Il *FIDUCIANTE*, nel caso di possibilità alternative, dovrà specificare il regime fiscale da adottare; quando le istruzioni non precisino il tipo di ritenuta fiscale desiderata, la *FIDUCIARIA* provvederà ad incassare ogni provento a titolo di imposta definitiva, al netto della ritenuta fiscale, ed il ricavato sarà prontamente corrisposto al *FIDUCIANTE*, fatte salve le diverse istruzioni impartite di volta in volta con specifica lettera di istruzioni;

    *b.* ad assumere in amministrazione le quote e le azioni assegnate in distribuzione gratuita o in conversione di prestiti obbligazionari o quelle cum warrant;

    *c.* a curare il ritiro dei biglietti di ammissione alle assemblee ordinarie delle società di cui è socia, dandone avviso al *FIDUCIANTE*;

    *d.* a partecipare alle assemblee predette esercitando, in tale sede, tutti i diritti, ivi compreso quello di voto in conformità alle istruzioni che il *FIDUCIANTE* dovrà impartire almeno **dieci giorni prima** di ogni assemblea. In caso di mancanza di istruzioni la *FIDUCIARIA* si asterrà dal partecipare all'assemblea;

    *e.* ad eseguire ogni istruzione relativa all'amministrazione dei valori mobiliari secondo la destinazione indicata dal *FIDUCIANTE* o da altro soggetto munito di scrittura con firma autenticata.
    Eventuali azioni giudiziarie, connesse ai valori mobiliari in amministrazione fiduciaria, dovranno formare oggetto di specifici accordi tra il *FIDUCIANTE* e la *FIDUCIARIA*; quest'ultima si riserva comunque la facoltà di non accettare le istruzioni dandone in tale ipotesi pronta comunicazione al *FIDUCIANTE*.

**3.1.** Il *FIDUCIANTE* dovrà comunicare alla *FIDUCIARIA* le proprie istruzioni almeno dieci giorni prima il compimento dell'operazione da parte della medesima.

In ogni ipotesi comportante per la *FIDUCIARIA* l'assunzione di un onere patrimoniale, questa chiederà istruzioni al riguardo al *FIDUCIANTE*, il quale dovrà fornirle i fondi necessari o la garanzia fidejussoria piena, unitamente alle istruzioni per la conclusione dell'operazione.

**3.2.** In mancanza di istruzioni e in carenza di copertura patrimoniale, almeno dieci giorni prima del termine utile, la *FIDUCIARIA* è autorizzata fin d'ora ad astenersi da ogni atto relativo all'operazione, ovvero a non dar corso alle istruzioni, fatta salva la facoltà di esercitare al meglio sul mercato gli eventuali diritti per conto e nell'interesse del *FIDUCIANTE*. In ogni caso il *FIDUCIANTE* solleva la *FIDUCIARIA* da ogni responsabilità per l'esercizio divergente dei diritti di voto inerenti ai valori mobiliari della stessa specie di quelli ricevuti in fiducia.

**4.** Qualora il *FIDUCIANTE* intenda trasferire a terzi i valori mobiliari conferiti in amministrazione fiduciaria, la *FIDUCIARIA* provvederà, previa richiesta scritta ed entro 30 giorni dalla data di ricevimento della medesima o dalla scadenza o dagli eventuali termini previsti per l'esercizio del diritto di prelazione, ad eseguire le formalità di trasferimento a favore dei terzi indicati, previo rimborso di tutte le spese sostenute e le commissioni maturate. Nella richiesta il *FIDUCIANTE* dovrà indicare il prezzo e le modalità di cessione.

**5.** E' fatto divieto al *FIDUCIANTE* di regolare direttamente operazioni a nome della *FIDUCIARIA* effetuando pagamenti di somme o ricevendone, in luogo della *FIDUCIARIA* stessa.

**6.1.** Nell'esercizio dell'incarico, la *FIDUCIARIA* agisce in nome proprio, ma per conto e nell'esclusivo interesse del *FIDUCIANTE*, verso il quale risponde secondo le regole del mandato oneroso e in particolare, secondo le regole disposte dagli artt. 1710 e 1176, secondo comma c.c. per quanto attiene alla responsabilità sia contrattuale sia extra-contrattuale sua e dei propri ausiliari, dei quali è autorizzata ad avvalersi ai sensi degli artt. 1228 e 2049 c.c., salvo che il *FIDUCIANTE* abbia indicato il nominativo dell'ausiliario.

**6.2.** Tuttavia, la *FIDUCIARIA* non risponderà dei disguidi imputabili alle banche per il tramite delle quali avvengono i trasferimenti di titoli e di denaro, ovvero delle Poste, ivi compresi i ritardi e gli smarrimenti. Il *FIDUCIANTE*, dal canto suo, dichiara per sè, i suoi eredi ed aventi causa a qualsiasi titolo, di manlevare la *FIDUCIARIA* da ogni obbligo, onere o molestia, anche di natura fiscale, che possa derivarle dall'esecuzione del presente incarico.

**7.1.** Sia il *FIDUCIANTE* sia la *FIDUCIARIA* potranno recedere dal contratto in qualunque momento, mediante lettera raccomandata con **preavviso di dieci giorni** dal ricevimento della stessa, con l'obbligo a carico del *FIDUCIANTE* di manifestare il proprio consenso per la re-intestazione a suo favore dei valori mobiliari oggetto del presente incarico e con ogni onere a suo carico. Qualora il *FIDUCIANTE* non debba adempiere questa obbligazione la *FIDUCIARIA* sarà libera di procedere autonomamente a trasferire il nominativo del *FIDUCIANTE* i valori mobiliari assunti in amministrazione.

**7.2.** A questo fine il *FIDUCIANTE* conferisce fino da ora mandato alla *FIDUCIARIA* per il trasferimento a proprio nome dei valori mobiliari amministrati per suo ordine e conto e ciò anche per gli effetti degli artt. 2435, 2479 e 2493 c.c.

**8.** Tutti i termini previsti nel presente contratto si computano tenendo conto dei soli giorni feriali, escluso il sabato.

**9.** La *FIDUCIARIA* si riserva di opporre ai eventuali vincoli di legge, statutari o contrattuali comunque limitanti la libera trasferibilità dei valori mobiliari oggetto del presente contratto di amministrazione fiduciaria, siano essi preesistenti, contestuali o sopravvenuti al momento della stipula dello stesso.

**10.1.** A compenso dell'incarico di amministrazione fiduciaria, qui conferito, il *FIDUCIANTE* corrisponderà una commissione annua nella misura di euro 620,00.= + I.V.A., in **un'unica rata anticipata** calcolata a partire dalla data di sottoscrizione sino al 31 dicembre dell'anno in corso e con il minimo pari a un quarto della commissione annua. Qualora l'incarico debba avere durata inferiore ad un anno solare, la commissione verrà calcolata pro rata temporis, ma non potrà comunque essere inferiore al minimo previsto.

**10.2.** Analogamente si procederà per ogni successivo anno solare iniziato e non terminato.

**10.3.** La commissione convenuta varierà in relazione all'entità dei valori mobiliari risultanti dal prosieguo dell'incarico.

**10.4.** Il *FIDUCIANTE* riconosce alla *FIDUCIARIA* la facoltà di procedere alla revisione annuale delle competenze stabilite, con decorrenza dal mese successivo alla richiesta.

**10.5.** La *FIDUCIARIA* addebiterà al *FIDUCIANTE* le spese borsuali incontrate per lo svolgimento dell'incarico (conto corrente, deposito valori mobiliari, telefoniche e postali, di rendiconto, di copie documenti, di acquisti o trasferimenti, di partecipazione ad assemblee).

**11.** Nell'ipotesi di mancato pagamento delle competenze di cui al punto che precede, il *FIDUCIANTE* **autorizza** fin d'ora la *FIDUCIARIA* a **compensare il proprio credito** con **le somme che** per interessi, utili, od ogni altra causa, debba corrispondergli con **facoltà di ritenzione**.

**12.** Qualora non si siano verificate modificazioni dei beni amministrati la *FIDUCIARIA* invierà al *FIDUCIANTE*, a sue spese, il rendiconto una volta all'anno entro la fine del mese di febbraio dell'anno successivo.

Il rendiconto si riterrà tacitamente approvato se non sarà contestato entro trenta giorni dalla data di ricevimento (***).

(*) I valori mobiliari in amministrazione ai sensi del presente contratto sono depositati presso:

☐

Firmato: _____

| **Banca Popolare di Intra** |
| - Sede di Milano - |
| Via Cusani n. 16 |

☐

Firmato: _____

| **Banca Popolare di Brescia** |
| - Sede di Milano - |
| Via G. Verdi n. 7 |

☐

Firmato: _____

| **Credito Italiano** |
| - Agenzia n. 7 - |
| Via Manzoni n. 34 |

(**) I valori mobiliari in amministrazione ai sensi del presente contratto non sono depositati in quanto indepositabili.

FIRMATO: _____

(***) In deroga all'obbligo contrattuale di invio del rendiconto annuale dichiaro che per motivi di riservatezza **non** desidero ricevere alcun rendiconto.

FIRMATO: _____

    Dichiaro infine di approvare specificatamente ai sensi e per gli effetti di cui agli artt. 1341,1342 e 1469-ter c.c. le clausole di cui ai numeri:
**6.1.** manleva da responsabilità; **7.1.** facoltà di recesso e mandato a ritrasferire i valori mobiliari in amministrazione; **10.1.** revisione del compenso; **11.** autorizzazione a ritenere somme di denaro; **12.** accettazione tacita; **13.** clausola compromissoria; **14.** elezione di domicilio - Foro competente; ricevuta di Documento Conoscitivo.

FIRMATO: _____

Vi prego di volermi cortesemente confermare la presente in segno di accettazione.

INDIRIZZO: **Bellariastrasse 68 - Zurigo**

FIRMATO : _____

DOCUMENTO DI RICONOSCIMENTO:
**Carta d'identità svizzera n. B2428213 rilasciata da Einwohner und Fremdenkontrolle der Stadt Zurich il 24.6.1994**

**Milano,  7 febbraio 2002**

4

# INCARICO DAL
# RAG. RENATO FLORIO
# PER COSTITUZIONE
# SOCIETA' TECNO DEVELOPMENT
# & RESEARCH SRL

Studio Associato FLORIO - MATTAROZZI

Rag. Renato Florio
Rag. Rudy Mattarozzi

Milano, lì 14.02.2002

Egr. Dr.
Notaio Schiavo Folco
C.so Venezia, 37
20121 MILANO

**Consegna a mano anticipata via fax n.: 02.76012705 (pag. 3)**

\* \* \* \*

Caro Folco,
il giorno 21 p.v. ad ore 11 verrà da Te costituita la:

**a) Denominazione:**
**Tecno Developement and Research s.r.l.**

**b) Sede legale:**
Milano, Via Settala n. 20.

**c) Capitale sociale:**
€ 10.000 (diecimila euro) di cui € 500 (cinquecento euro) (5%) sottoscritti dal Rag. Florio Renato ed € 9.500 (novemilacinquecento euro) sottoscritti dalla Brera Fiduciaria s.p.a.

**d) Legale rappresentanza:**
Amministratore Unico con i soli poteri di ordinaria amministrazione Rag. Renato Florio, nato a Milano il 24.10.1940 ed ivi residente in Via Molino delle Armi 3, Codice Fiscale: FLR RNT 40R24 F205J.

**e) La società avrà per oggetto:**
- l'ideazione, lo sviluppo, la realizzazione, la commercializzazione nonché l'importazione ed esportazione di ricerche di mercato in genere ed in particolare di prodotti finanziari di ogni tipo e specie e di quelli relativi all'alta tecnologia; avvalendosi di supporti informatici (CD – ROM, internet) multimediali e/o cartacei e di altri strumenti informatici disponibili;
- la commercializzazione, l'importazione e l'esportazione di prodotti editoriali (esclusi i quotidiani) e di comunicazione, informatici e non, nonché la realizzazione di tali prodotti anche per conto di terzi;
- la produzione di materiale audio-visivo a scopo didattico ed organizzativo per il settore multimediale su qualsiasi supporto fisico;
- l'ideazione, la realizzazione, la fornitura il noleggio, la gestione e la manutenzione di sistemi informatici;

./.

Studio Associato FLORIO - MATTAROZZI
Rag. Renato Florio
Rag. Rudy Mattarozzi

- 2 -

- l'acquisizione, la gestione, la manutenzione e la commercializzazione di programmi (software) di ogni specie, la loro cessione e noleggio, nonché ogni attività connessa al settore informatico.
- l'organizzazione di mostre, fiere, congressi e manifestazioni in genere;
- l'organizzazione di corsi di formazione professionale in genere ed il supporto nella selezione ed audit del personale, nonché di archivi tecnici ed amministrativi con l'ausilio e la strasposizione di elaborati su supporti informatici, stampa e duplicazione di documenti e disegni.
Essa può, inoltre, compiere, nel rispetto dei divieti, limiti, condizioni ed autorizzazioni previsti dalla Legge, ed in particolare di quanto previsto in tema di raccolta di risparmio tra il pubblico, tutte le operazioni commerciali, industriali, finanziarie, mobiliari ed immobiliari ritenute dall'amministrazione necessarie od utili per il conseguimento dell'oggetto sociale: a tal esclusivo fine può anche assumere, direttamente od indirettamente, interessenze e partecipazioni in altre Società od Imprese aventi oggetto analogo, affine o connesso al proprio, nonché ad Istituti Bancari o Istituti di Credito in genere, obbligazioni di terzi anche non soci.
Sono tassativamente escluse:
- l'attività professionale riservata;
- la sollecitazione del pubblico risparmio ai sensi dell'art. 18 della legge n. 216/74 e successive modificazioni;
- l'esercizio nei confronti del pubblico in via prevalente delle attività finanziarie di cui all'art. 4 comma 2 della legge n. 197/91 e di cui al D. Lgs. 385/93;
- l'erogazione del credito al consumo, neppure nell'ambito dei propri soci, anche secondo quanto disposto dal Ministero del Tesoro con decreto del 27 settembre 1991 pubblicato nella Gazzetta Ufficiale n. 227;
- lo svolgimento delle attività di cui alla legge n. 1 del 1991, disciplinante le Società di intermediazione mobiliare.

* * * *

Per quanto concerne i miei 3/10 Ti allego assegno bancario a Te intestato di 150 Euro tratto sulla Banca Popolare di Bergamo – Credito Varesino n. 5101325484-08.
Per i 3/10 della Fiduciaria, Ti prego di telefonare alla Sig.ra Sabrina Elli   (tel. 02.76018379).

Con i saluti più cordiali.
(Rag. Renato Florio)

20124 Milano - Via Settala, 20
Tel. 02/29517611/87 - Fax 29517615/25
codice fiscale 11142380150

Studio Associato FLORIO - MATTAROZZI

Rag. Renato Florio
Rag. Rudy Mattarozzi

*Milano* ,                    *2002*   euro *150,00* #

**50**

**5428-8**
**01601-4**

## BANCA POPOLARE DI BERGAMO - CREDITO VARESINO

FILIALE DI MILANO - CORSO ITALIA - ITALIA - IT - Corso Italia, 22 - Tel. 02-722541

5101325484-08                    a vista pagate per questo assegno bancario

euro *Centocinquantavirgola* /00 #

a *Sr. Folco Schiavo*

c/c N. 17890

⑃5101325484⑃: 5428016014

20124 Milano - Via Settala, 20
Tel. 02.29517611/87 - Fax 02.29517615/25
codice fiscale 11142380150

## STUDIO ASS.TO RAG. FLORIO RAG. MATTAROZZI
### TEL. 02.29517611-02.29517687
### FAX . 02.20404624-02.29517615

---

**COPERTINA FAX**

---

| | |
|---|---|
| A: GENT.MA SIG.RA SABRINA ELLI | DA: RAG. RENATO FLORIO |
| SOCIETÀ:BRERA FIDUCIARIA SPA | DATA: 13.02.2002 |
| FAX: 02.77331210 | PAGINE INCLUSA LA COPERTINA: 3 |
| TELEFONO: | RIF MITTENTE: |
| OGG.: | RIF DESTINATARIO: |

---

☐ URGENTE   ☐ DA APPROVARE   ☐ RICHIESTI COMMENTI   ☐ RISPOSTA NECESSARIA   ☐ DA INOLTRARE

---

NOTE/COMMENTI:

Oggetto: **Costituzione Tecno Developement and Research s.r.l.**

Allego lettera inviata al notaio Schiavo.
La costituzione è fissata per il giorno 21 ad ore 11.
Favorite contattare il notaio per il versamento dei 3/10.

Con i più distinti saluti.
(Rag. Renato Florio)

# ATTO COSTITUTIVO
# E
# STATUTO
# TECNO DEVELOPMENT AND
# RESEARCH SRL
# 21 FEBBRAIO 2002

19/05/2011

ID: 64751840



STUDIO NOTARILE
Dott. FOLCO SCHIAVO
20122 Milano - Corso Venezia, 37
Tel. 02799882 - 02795424
· Tel. 02781455 - Fax 0276012705

- 1 -

Repertorio n. 167586                    Raccolta n. 8223

## COSTITUZIONE DI SOCIETA' A RESPONSABILITA' LIMITATA

### REPUBBLICA ITALIANA

Il ventuno febbraio duemiladue

(21 febbraio 2002)

In Milano, nel mio studio in corso Venezia n. 37.

Davanti a me dottor Folco Schiavo, Notaio in Milano, Collegio Notarile di Milano, senza l'assistenza dei testimoni per la rinuncia espressa dai Comparenti, d'accordo tra loro, sono presenti i Signori:

Varone Stefano, nato a Napoli (NA) il giorno 8 maggio 1968, avvocato, domiciliato per la carica presso la sede sociale, che interviene al presente atto ed agisce nella sua qualità di procuratore speciale della Società

"BRERA FIDUCIARIA - Società per Azioni - Società fiduciaria e di revisione", con sede in Milano (MI), via Manzoni n. 44, capitale sociale euro 153.400,00 - numero di iscrizione al Registro delle Imprese di Milano e codice fiscale 00794220343, partita IVA 08819650154,

agendo in forza della procura speciale a rogito Notaio Luciano Quaggia di Milano rep. n. 190421 del 19 febbraio 2002 che, in originale si allega al presente atto sotto la lettera "A", dispensandomene i Comparenti dalla lettura;

Florio Renato, nato a Milano (MI) il 24 ottobre 1940, residente a Milano (MI), via Molino delle Armi n. 3, professionista, codice fiscale FLR RNT 40R24 F205J.

Detti Comparenti, della cui identità personale io Notaio sono certo, mi richiedono il presente atto e convengono quanto segue:

1) E' costituita tra il Signor Renato Florio, cittadino italiano, e la Società "BRERA FIDUCIARIA - Società per Azioni - Società fiduciaria e di revisione", di nazionalità italiana, una Società a responsabilità limitata denominata

"Tecno Development and Research S.r.l."

2) La Società ha sede in Milano (MI), via Settala n. 20.

3) La durata, l'oggetto, le norme di ripartizione degli utili e l'organizzazione amministrativa della Società risultano dallo Statuto che, firmato dai Comparenti e da me Notaio, si allega al presente sotto la lettera "B", previa lettura da me data ai Comparenti.

4) Il capitale sociale è di euro 10.000,00 (diecimila /00), sottoscritto dai soci come segue:

Brera Fiduciaria S.p.A.          per una quota di euro 9.500,00;

Rag. Renato Florio               per una quota di euro   500,00.

I tre decimi del capitale sociale sono stati versati presso la Banca "IntesaBci S.p.A." Agenzia 52 di Milano, corso Venezia n. 49, come risulta dalla ricevuta di deposito in data 18 febbraio 2002, che in copia conforme si allega al presente atto sotto la lettera "C", dispensandomene i Comparenti dalla lettura; si fa avvertenza che in tale ricevuta la Società co-

*Registrato a Milano*
*il 5 3 2002*
*al n. Non comunicato*
*atti Pubblici*
*esatte € ........................*

ID: 64751340

19/05/2011

- 2 -

stituente è indicata con la denominazione abbreviata.

5) Il primo esercizio sociale si chiuderà il 31 dicembre 2002.

6) Amministratore Unico della Società, a tempo indeterminato fino a revoca o dimissioni, viene nominato il Signor Renato Florio, qui comparso.

7) La Signora Silvia Carmen Collini, nata a Magenta (MI) il 17 luglio 1973, residente a Vanzago (MI), via del Lazzaretto n. 11/C, viene delegata a ritirare presso la Banca depositaria i tre decimi del capitale sociale, dandone quietanza ed esonerando la Banca stessa da ogni responsabilità.

8) Le spese di costituzione, a carico della Società ammontano approssimativamente a euro 2.700,00 (duemila settecento /00).

9) Ai fini di legge il Rag. Rentao Florio è coniugato in regime di separazione dei beni.

Richiesto io Notaio ho ricevuto il presente atto da me letto ai comparenti che lo approvano e lo firmano con me.

Consta di un foglio scritto a macchina da mani fide su una intera pagina e metà circa di questa seconda.

All'originale firmato: Stefano Varone - Renato Florio - Polco Schiavo Notaio (L.S.)

Allegato "A" al rep. n. 167586/8223

Repertorio n. 190621

PROCURA SPECIALE

REPUBBLICA ITALIANA

L'anno duemiladue, il giorno diciannove del mese di febbraio.

In Milano, nel mio studio in Via Alessandro Manzoni n. 41.

Avanti a me dottor LUCIANO QUAGGIA, Notaio in Milano, iscrit-

to presso il Collegio Notarile di Milano, senza l'assistenza

dei testimoni per espressa rinuncia fatta dalla parte compa-

rente e con il mio consenso,

è personalmente comparso il signor:

- DI MAIO ANDREA, nato a Milano il 27 maggio 1965, domicilia-

to per la carica in Milano, Via Manzoni n. 44, consulente, il

quale interviene al presente atto in qualità di Amministrato-

re Delegato della società:

"BRERA FIDUCIARIA - Società per azioni - società fiduciaria e

di revisione"

con sede in Milano, Via Manzoni n. 44, col capitale sociale

di Euro 153.400,00 (centocinquantatremilaquattrocento virgola

zerozero), codice fiscale ed iscrizione al Registro Imprese

di Milano al n. 00794220343 ed iscritta al R.E.A. al n.

1246497;

munito degli occorrenti poteri in forza di delibera del Con-

siglio di Amministrazione in data 23 aprile 1999, il cui ver-

bale per estratto in mia autentica n. 173.321 di Repertorio

in data 18 maggio 1999, trovasi allegato all'atto a mio rogi-

ID: 64751340

to n. 173.322/12.635 di Rep. in pari data, regolarmente regi-

strato.

Detto comparente, della cui identità personale qualifica e

poteri io Notaio sono certo, dichiara di nominare e costitui-

re procuratore speciale e per quanto infra generale il si-

gnor:

- VARONE STEFANO, nato a Napoli il giorno 8 maggio 1968, re-

sidente a Milano, Via Castel Morrone n. 2, avvocato, codice

fiscale VRN SFN 68E08 F839I,

affinché, in nome e conto della società mandante, con ogni

più ampia facoltà abbia ad intervenire all'atto costitutivo

della società a responsabilità limitata denominata:

TECNO DEVELOPMENT RESEARCH S.R.L.

che avrà sede in Milano, Via Settala n. 20, ed un capitale

sociale di Euro 10.000 (diecimila) di cui la società "BRERA

FIDUCIARIA - Società per azioni - Società Fiduciaria e di Re-

visione", sottoscriverà una quota di Euro 9.500 (novemilacin-

quecento) pari al 95% (novantacinque percento) del capitale

sociale.

Il nominato procuratore è pertanto autorizzato ad intervenire

all'atto costitutivo e sottoscriverlo, approvare lo statuto

che disciplinerà la vita della società ivi compresa la defi-

nizione dell'oggetto sociale, procedere alla nomina dell'or-

gano amministrativo con la determinazione dei poteri e, ove

del caso, alla nomina del Collegio Sindacale, convenire ogni

ID: 64751340
19/05/2011

**S P E C I F I C A**

| | | |
|---|---|---|
| Bollo | € | 1033 |
| Scritturato | » | 155 |
| Repertorio | » | 026 |
| Onorario | » | 19 |
| Cassa Not. | | |
| Cassa Not. | | |
| Tassa Arch. | » | |
| Copia Bos. | » | |
| Copia Volt. | » | |

altro patto clausola o condizione che riterrà opportuno e

conveniente.

Il tutto già sin d'ora con promessa di rato e valido sotto

gli obblighi di legge e da esaurirsi in un unico contesto.

E richiesto

io Notaio ho ricevuto il presente atto del quale ho dato let-

tura al comparente che, approvandolo e confermandolo, lo sot-

toscrive con me Notaio.

Scritto con mezzo elettronico da persona di mia fiducia e da

me personalmente completato su *Un foglio per due intere*

*pagine e sin qui di questa terza*

*Andrea Di Maio*

- 1 -

Allegato "B" al rep. n. 167586/8223

**STATUTO**

1) E' costituita una Società a responsabilità limitata deno-
minata

**"TECNO DEVELOPMENT AND RESEARCH S.r.l."**

2) La Società ha sede in Milano (MI), via Settala n. 20.
L'organo amministrativo potrà istituire sia in Italia che
all'estero agenzie ed uffici amministrativi, che non abbiano
carattere di sedi secondarie; l'istituzione di queste ultime
è riservata all'assemblea.

3) La durata della Società è stabilita fino al 31 dicembre
2050.

4) La Società ha per oggetto:

- l'ideazione, lo sviluppo, la realizzazione, la commercia-
lizzazione, anche da e per l'estero, di ricerche di mercato
in genere con particolare riferimento ai prodotti finanziari
di ogni tipo e specie, compresi quelli relativi all'alta
tecnologia; il tutto avvalendosi di supporti informatici
(CD-ROM, internet) multimediali o cartacei e di altri stru-
menti informatici disponibili;

- la commercializzazione, l'importazione e l'esportazione di
prodotti editoriali (esclusi i quotidiani) e di comunicazio-
ne, informatici e non, nonchè la realizzazione di tali pro-
dotti anche per conto di terzi;

- la produzione di materiale audio-visivo a scopo didattico
ed organizzativo per il settore multimediale su qualsiasi
supporto fisico;

- l'ideazione, la realizzazione, la fornitura, il noleggio,
la gestione e la manutenzione di sistemi informatici;

- l'acquisizione, la gestione, la manutenzione e la commer-
cializzazione di programmi (software) di ogni specie, la lo-
ro cessione e noleggio, nonchè ogni attività connessa al
settore informatico;

- l'organizzazione di mostre, fiere, congressi e manifesta-
zioni in genere;

- l'organizzazione di corsi di formazione professionale in
genere ed il supporto nella selezione e ricerca del persona-
le, nonchè di archivi tecnici ed amministrativi con l'ausi-
lio e la trasposizione di elaborati su supporti informatici,
stampa e duplicazione di documenti e disegni.

Essa può, inoltre, compiere, nel rispetto dei divieti, limi-
ti, condizioni ed autorizzazioni previsti dalla Legge, ed in
particolare di quanto previsto in tema di raccolta di ri-
sparmio tra il pubblico, tutte le operazioni commerciali,
industriali, finanziarie, mobiliari ed immobiliari ritenute
dall'organo amministrativo necessarie od utili per il conse-
guimento dell'oggetto sociale: a tal esclusivo fine può an-
che assumere, direttamente od indirettamente, interessenze e
partecipazioni in altre Società od Imprese avente oggetto a-
nalogo, affine o connesso al proprio.

ID: 64751340

- 2 -



Sono tassativamente esclusi:
- l'attività professionale riservata;
- la sollecitazione del pubblico risparmio ai sensi dell'art. 18 della legge n. 216/74 e successive modificazioni;
- l'esercizio nei confronti del pubblico in via prevalente delle attività finanziarie di cui all'art. 4 comma 2 della legge n. 197/91 e di cui al D.Lgs. 385/93;
- l'erogazione del credito al consumo, neppure nell'ambito dei propri soci, anche secondo quanto disposto dal Ministero del Tesoro con decreto del 27 settembre 1991 pubblicato sulla Gazzetta Ufficiale n. 227;
- lo svolgimento delle attività di cui alla legge n. 1 del 1991, disciplinante le Società di intermediazione mobiliare.
5) Il capitale sociale, diviso in quote ai sensi di legge, è di euro 10.000,00 (diecimila /00).
6) I finanziamenti da parte dei soci alla Società potranno essere effettuati unicamente entro i limiti di legge; gli stessi sono infruttiferi, salvo diversa deliberazione assembleare.
7) Per ogni rapporto con la Società, il domicilio dei soci si intende quello risultante dal libro dei soci.
8) Le quote sono trasferibili con le seguenti modalità e limitazioni.
Il socio che intende cedere a terzi la propria quota, o parte di essa, deve comunicare l'offerta ricevuta agli altri soci mediante lettera raccomandata R.R., specificando il prezzo e le condizioni di pagamento della quota da cedere.
Entro trenta giorni di tale comunicazione, gli altri soci potranno esercitare il diritto di prelazione sulla quota da cedere, a parità di condizioni sull'offerta come sopra comunicata, e tra loro in proporzione alle quote da ciascuno possedute.
Nello stesso termine, i soci interessati ad esercitare il diritto di prelazione, qualora ritenessero eccessivo il corrispettivo richiesto, avranno la facoltà di chiedere al socio cedente - sempre a mezzo di lettera raccomandata R.R. - che il prezzo della cessione venga determinato dal Collegio arbitrale previsto all'ultimo articolo del presente Statuto, sulla base degli ultimi tre bilanci sociali nonché della valutazione dell'avviamento.
Non si avrà comunque diritto di prelazione, qualora la cessione avvenga a favore del coniuge del cedente, o dei suoi parenti entro il primo grado; e neppure qualora la cessione avvenga da parte di un socio che sia fiduciario di terze persone.
9) L'assemblea è ordinaria e straordinaria ai sensi di legge.
Essa è convocata dall'organo amministrativo nei modi di legge.
Saranno tuttavia valide le assemblee, comunque convocate,





- 3 -

quando sia presente o rappresentato l'intero capitale socia-
le e siano presenti tutti gli Amministratori e i Sindaci ef-
fettivi, se nominati.

L'assemblea può esser convocata anche fuori della sede so-
ciale, purchè in Italia.

10) Hanno diritto di intervenire all'assemblea tutti i soci
iscritti nel libro dei Soci almeno cinque giorni prima di
quello fissato per l'assemblea.

I soci possono farsi rappresentare mediante delega scritta
conferita anche a non soci, osservato il disposto dell'art.
2372 del Codice Civile.

11) L'assemblea è presieduta dall'Amministratore unico o dal
Presidente del Consiglio di Amministrazione o, in mancanza,
da chi designato dagli intervenuti.

Spetta al Presidente dell'assemblea constatare la regolare
costituzione della stessa e la validità delle deleghe.

Il Presidente è assistito da un segretario nominato dall'as-
semblea, anche non socio.

L'assemblea sia in sede ordinaria che straordinaria può
svolgersi con intervenuti dislocati in più luoghi, contigui
o distanti, audio/video collegati, a condizione che siano
rispettati il metodo collegiale e i principi di buona fede e
di parità di trattamento dei soci.

In particolare, è necessario, che:

- sia consentito al presidente dell'assemblea, anche a mezzo
del proprio ufficio di presidenza, di accertare l'identità e
la legittimazione degli intervenuti, regolare lo svolgimento
dell'adunanza, constatare e proclamare i risultati della vo-
tazione;

- sia consentito al soggetto verbalizzante di percepire ade-
guatamente gli eventi assembleari oggetto di verbalizzazio-
ne;

- sia consentito agli intervenuti di partecipare alla di-
scussione e alla votazione simultanea sugli argomenti al-
l'ordine del giorno;

- vengano indicati nell'avviso di convocazione (salvo che si
tratti di assemblea totalitaria) i luoghi audio/video colle-
gati a cura della Società, nei quali gli intervenuti potran-
no affluire, dovendosi ritenere svolta la riunione nel luogo
ove saranno presenti il presidente ed il soggetto verbaliz-
zante.

12) Le assemblee, ordinarie e straordinarie, deliberano con
le maggioranze di legge.

13) La Società è amministrata da un Amministratore unico o
da un Consiglio di Amministrazione composto da tre a cinque
membri.

All'atto della nomina, l'assemblea determina la forma del-
l'organo amministrativo e nel caso il numero dei Consiglie-
ri.

14) Gli amministratori possono essere anche non soci; essi

ID: 64751340



- 4 -

durano in carica per il tempo che determinerà l'assemblea, anche a tempo indeterminato, e sono rieleggibili.

Agli amministratori spetta, oltre al rimborso delle spese, un emolumento nella misura che determinerà l'assemblea all'atto della nomina, misura che potrà peraltro essere variata con delibera assembleare, anche nel corso della carica.

Agli stessi spetta inoltre un'indennità di fine rapporto, da determinare come sopra.

Gli amministratori sono esonerati dal divieto di concorrenza di cui all'art. 2390 del Codice Civile.

15) Il Consiglio di Amministrazione, qualora non vi abbia provveduto l'assemblea, elegge fra i propri membri il Presidente.

Il Consiglio può nominare fra i suoi membri un Comitato esecutivo, ovvero uno o più Amministratori delegati, determinando i limiti della delega.

16) Il Consiglio di Amministrazione si riunisce nella sede sociale o altrove, purchè in Italia, tutte le volte che il Presidente lo ritenga opportuno, o lo richieda almeno un quarto dei Consiglieri.

Il Consiglio viene convocato dal Presidente con lettera da spedirsi, almeno cinque giorni liberi prima della riunione, ai Consiglieri e ai Sindaci effettivi.

In caso di urgenza, la convocazione avviene con telegramma ovvero con telefax, da spedirsi almeno un giorno libero prima della riunione.

Il Consiglio è comunque validamente riunito quando siano presenti tutti i Consiglieri ed i Sindaci effettivi in carica.

Il Consiglio nomina di volta in volta un segretario, anche estraneo.

Fermo quanto previsto ai precedenti commi, è ammessa la Possibilità che le adunanze del Consiglio di Amministrazione si tengano per teleconferenza o videoconferenza, a condizione che siano rispettati il metodo collegiale ed i principi di buona fede; in particolare è necessario che:

- siano presenti nello stesso luogo il presidente ed il segretario della riunione che provvederanno alla formazione e sottoscrizione del verbale;

- sia possibile identificare con certezza tutti i soggetti partecipanti;

- sia possibile per tutti i partecipanti intervenire nella discussione e visionare, ricevere o trasmettere documenti.

17) Per la validità delle deliberazioni del Consiglio si richiede la presenza ed il voto favorevole della maggioranza dei Consiglieri in carica.

18) Al Consiglio di Amministrazione spettano tutti i poteri di ordinaria e straordinaria amministrazione, esclusi solo quelli che la legge ed il presente Statuto riservano all'assemblea.

- 5 -

19) All'Amministratore unico spettano i soli poteri di ordinaria amministrazione, ivi compresi quelli di:
- stipulare contratti di conto corrente bancari e postali ed emettere assegni sugli stessi, aprire linee di credito anche mediante fidi a breve e medio termine, operare nell'ambito dei fidi concessi;
- stipulare contratti di fornitura e quelli relativi ai prodotti e servizi della Società, stabilendone il prezzo e le condizioni di pagamento;
- assumere e licenziare personale dipendente e svolgere ogni relativa pratica presso gli uffici previdenziali e di collocamento;
- stipulare contratti di affitto e di locazione fissandone i relativi canoni;
- trattare pratiche fiscali, sottoscrivendo istanze o ricorsi e aderendo a concordati in sede di accertamento o in altre sedi;
- nominare procuratori per determinati atti o categorie di atti;
- nominare avvocati e procuratori alle liti, in ogni stato e grado di giudizio e davanti a qualsiasi giudice anche amministrativo nelle liti attive e passive.
Per gli atti di straordinaria amministrazione l'Amministratore unico dovrà essere autorizzato da delibera assembleare.
20) La rappresentanza della Società di fronte ai terzi e in giudizio spettano all'Amministratore Unico, o al Presidente del Consiglio di Amministrazione o agli Amministratori delegati nei limiti che saranno determinati dal Consiglio.
21) L'organo amministrativo, qualora non vi abbia provveduto l'assemblea, può nominare Direttori, procuratori "ad negotia" e mandatari in genere per determinati atti o categorie di atti.
22) Nei casi di legge e quando l'assemblea lo ritenga opportuno, la Società è controllata da un Collegio Sindacale composto da tre Sindaci effettivi e due supplenti, che durano in carica un triennio e sono rieleggibili.
23) Gli esercizi si chiudono il 31 dicembre di ogni anno. Quando particolari esigenze lo richiedano, l'assemblea ordinaria per l'approvazione del bilancio può essere convocata entro sei mesi dalla chiusura dell'esercizio sociale.
24) Gli utili di bilancio, dedotta la riserva legale e salvo diversa deliberazione dell'assemblea, saranno distribuiti ai soci in proporzione al capitale da loro sottoscritto.
25) I dividendi non riscossi vanno prescritti a favore del fondo di riserva trascorsi cinque anni dal giorno in cui divennero esigibili.
26) In caso di scioglimento della Società, l'assemblea nominerà uno o più liquidatori, stabilendone anche i poteri ed i compensi.
27) Le controversie tra la Società e i soci, o tra i soci

ID: 64751040                                                                    19/05/2011

- 6 -



tra loro, saranno decise da un Collegio di tre arbitri,  due
dei  quali  nominati  da ciascuna delle parti e il terzo dai
primi due arbitri d'accordo tra loro o, in mancanza d'accor-
do, dal Presidente del Collegio dei Ragionieri di Milano.
Tali arbitri decideranno "ex aequo et bono", senza formalità
di procedura, ed il loro giudizio sarà inappellabile.

· Allegato "C" al rep. n. 167586/8223



**RETE CARIPLO  MILANO 52**
**CORSO VENEZIA 47/49 MILANO**

Milano, 18/02/02

In relazione alla costituenda Società TECNO DEVELOPMENT AND RESEARCH SRL con sede legale in MILANO VIA SETTALA N. 20 e con capitale in denaro di EURO 10.000,00= (Euro Diecimila/00=) in data 18/02/02 è stato versato presso questa BANCA INTESA BCI SPA – Rete CARIPLO, Filiale in Milano - Ag. 52, ai sensi e per gli effetti dell'art. 2475 Cod. Civ., l'importo di Euro 3.000,00=( Euro Tremila/00=) e per  conto dei sottoscrittori in appresso indicati e per la quota a fianco di ciascuno specificata.

| ESTREMI DEI SOTTOSCRITTORI | QUOTA VERSATA |
|---|---|
| FLORIO RAG. RENATO | Euro 150,00= |
| Cod. Fis. FLRRNT40R24F205J | |
| | |
| BRERA FIDUCIARIA SPA | Euro 2.850,00= |
| Cod.Fis. 00794220343 | |
| Sede legale Milano Via Manzoni 44 | |

In fede.

INTESA BCI SPA
Rete CARIPLO
Il Direttore

Si riportano di seguito le norme che regolano il deposito in questione:

- Le somme di cui sopra produrranno interessi calcolati ad un tasso, al lordo delle ritenute di legge, pari al Tasso Ufficiale di Riferimento praticato da Banca d'Italia dedotto di 2 (diconsi due) punti.
- Le somme come sopra indicate verranno consegnate agli Amministratori della Società, previa produzione di certificato della Cancelleria del Tribunale nella cui circoscrizione trovasi la Sede Sociale - rilasciato in data recente e comunque non anteriore ad un mese - attestante che la Società è stata iscritta e si trova nel pieno e libero possesso dei suoi diritti; da tale certificato devono altresì risultare le generalità complete degli Amministratori in carica con la specificazione di quelli muniti della rappresentanza e delle relative modalità di firma.
- In caso di mancata costituzione della società, le somme potranno essere restituite ai sottoscrittori, decorso un anno almeno dalla data di deposito, previa produzione di certificato della Cancelleria competente – rilasciato in data recente e comunque non anteriore ad un mese, ma successiva al decorso di un anno dalla data di deposito – attestante che non è stato iscritto ne depositato alcun atto relativo alla Società che si doveva costituire.
- In entrambe le ipotesi di cui sopra, dovrà essere restituita la presente attestazione.



003 MD CL 2432 - ed. 2001 - 0451

IntesaBci S.p.A. - Sede Sociale Piazza Paolo Ferrari, 10 - 20121 Milano - Direzione Generale Via Monte di Pietà, 8 - 20121 Milano - Tel. 028844.1
Capitale € 3.488.995.258,84 - Iscritta al Registro delle Imprese di Milano - Numero di iscrizione e Codice Fiscale 00799960158 - Partita I.V.A. 10810700152
Codice A.B.I. 3069.2 - Aderente al Fondo Interbancario di Tutela dei Depositi e al Fondo Nazionale di Garanzia
Iscritta all'Albo delle Banche al n. 5351 e Capogruppo del "Gruppo IntesaBci" iscritto all'Albo dei Gruppi Bancari

ID: 64751340
19/05/2011



Repertorio n. 167585

E' copia fotostatica conforme all'originale della ricevuta di versamento in data 18 febbraio 2002 dei tre decimi del capitale sociale della costituenda Società
          "TECNO DEVELOPMENT AND RESEARCH S.R.L."
con sede in Milano (MI), via Settala n. 20.
In Milano, nel mio studio in corso Venezia n. 37, il ventuno febbraio duemiladue.



Copia in 4 fogli    conforme all'originale
munito delle prescritte firme, per gli usi
di legge.
Milano, 6 MARZO 2002

# DOCUMENTI
# SOCIETA' FIDUCIANTE
# I-TECHNOLOGY SOLUTIONS INC.

# Québec ⊞⊞

# *CERTIFICAT DE CONSTITUTION*

*Loi sur les compagnies, Partie IA*
*(L.R.Q., chap. C-38)*

J'atteste par les présentes que la compagnie

SOLUTIONS I-TECHNOLOGIE INC.

et sa ou ses version(s)

I-TECHNOLOGY SOLUTIONS INC.

a été constituée le **11 AOÛT 2000**, en vertu de la partie IA de la Loi sur les compagnies, tel qu'indiqué dans les statuts de constitution ci-joints.



*Déposé au registre le 11 août 2000*
*sous le matricule 1149508146*

Inspecteur général des institutions financières



Gouvernement du Québec
**L'Inspecteur général
des institutions financières**

A-110723-L9402

Formulaire 1
**STATUTS DE CONSTITUTION**
Loi sur les compagnies, L.R.Q.,c C-38
Partie 1A

| 1 Dénomination sociale |
|---|
| SOLUTIONS I-TECHNOLOGIE INC. <br> I-TECHNOLOGY SOLUTIONS INC. |

| 2 District judiciaire du Québec où la compagnie établit son siège social <br><br> Montréal | 3 Nombre précis ou nombres minimal et maximal des administrateurs <br><br> Minimum: 1  Maximum: 15 | 4 Date d'entrée en vigueur si postérieure à celle du dépôt <br><br> N/A |
|---|---|---|

| 5 Description du capital-actions |
|---|
| Voir annexe 1 |

| 6 Restrictions sur le transfert des actions, le cas échéant |
|---|
| Voir annexe 2 |

| 7 Limites imposées à son activité, le cas échéant |
|---|
| N/A |

| 8 Autres dispositions |
|---|
| Voir annexe 3 |

**9 Fondateurs**

| Nom et prénom | Adresse incluant le code postal (s'il s'agit d'une corporation, indiquer le siège social et la loi constitutive) | Signature de chaque fondateur (s'il s'agit d'une corporation, signature de la personne autorisée) |
|---|---|---|
| SHAPIRO, IRVING | 636 Kindersley Avenue <br> Town of Mount Royal, Quebec, Canada, H3R 1S5 | |

Si l'espace est insuffisant, joindre une annexe en deux (2) exemplaires

Réserve à l'administration

C-211 (Rév.12-93)

Gouvernement du Québec
**déposé le**

1 1 AOUT 2000

L'Inspecteur général des

## ANNEXE 1

i)    *CLASSES OF SHARES*

The Company shall be authorized to issue, without maximum, eight (8) classes of shares, designated Class "A" Common, Class "B" Common, Preferred "A", Preferred "B", Preferred "C", Preferred "D", Preferred "E" and Preferred "F" respectively. The rights, privileges, restrictions and conditions attaching to the said Common and Preferred shares are as follows :

I.    *DIVIDENDS*

The holders of Preferred "A", Preferred "B", Preferred "C", Preferred "D", Preferred "E", Preferred "F" and Preferred "G" shares (hereinafter called the "preference shares") shall be entitled to receive as and when declared by the board of directors of the Company out of the moneys of the Company properly applicable to the payment of dividends, fixed preferential non-cumulative dividends:

(i)    as regards the Preferred "A" Shares, at the rate of six percent (6%) per annum of the Redemption Amount of such shares;

(ii)    as regards the Preferred "B" Shares, at the rate of one-half (1/2%) per month of the Redemption Amount of such shares;

(iii)    as regards the Preferred "C" Shares, at the rate of three-quarters of one percent (3/4%) per month of the Redemption Amount of such shares;

(iv)    as regards the Preferred "D" Shares, at the rate of six percent (6%) per annum of the Redemption Amount of such shares;

(vi)    as regards the Preferred "E" Shares, at the rate of one-half of one percent (1/2%) per month of the Redemption Amount of such shares;

(vii)    as regards the Preferred "F" Shares, at the rate of three-quarters of one percent (3/4%) per month of the Redemption Amount of such shares;

payable on such date or dates in each fiscal year of the Company as may from time to time be determined by the board of directors; the board of directors shall be entitled from time to time to declare part of the said fixed preferential

non-cumulative dividend for any fiscal year notwithstanding that such dividend for such fiscal year shall not be declared in full; if within four months after the expiration of any fiscal year of the Company the board of directors in its discretion shall not have declared the said fixed preferential non-cumulative dividend or any part thereof on the preference shares for such fiscal year, then the rights of the holders of the preference shares to such dividend or to any undeclared part thereof for such fiscal year shall be forever extinguished; the holders of the preference shares shall not be entitled to any dividends other than or in excess of the fixed preferential non-cumulative dividends hereinbefore provided for;  if in any year there shall remain any profits or surplus available for dividends after payment or provision for payment of any dividend declared on the preference shares as aforesaid, if any is declared, such profits or surplus or any part thereof may, in the discretion of the directors, be applied to dividends on the Common Shares, pro-rata on all issued and outstanding Common Shares, or proportionately or disproportionately with respect to each Class of Common Shares, or with respect to one Class of Common Shares to the exclusion of the other Class, as the directors shall in their discretion decide.

Any dividend declared on any Class of the Common and Preferred shares as aforesaid may be made payable in full or in instalments, with or without interest, in such amounts and at such time or times as the directors shall in their discretion determine and direct at the time that such dividend is declared. The non-payment of a dividend declared on any Class of shares, by reason only that the payment date thereof or of any instalment thereof has not arrived, shall not preclude the directors from declaring and paying another dividend on that or any other Class of shares entitled thereto in accordance with the immediately preceding paragraph of this section I of Article 5, provided that the declaration and payment of such other dividend will not, in the reasonable opinion of the directors, be likely to render the Company unable to meet its scheduled payment obligations with respect to any such previously declared dividend.  No dividend may be declared on any Class of shares at any time when the Company is in default with respect to the payment of any other dividend or dividend instalment declared on that or any other Class of shares.

II.    *RETURN OF CAPITAL*

To the extent provided for herein, the Preferred shares shall rank, both as regards dividends and return of capital in priority to the Common shares of the Company but shall not confer any further right to participate in profits or assets.

III.    _REDEMPTION_

Subject to the provisions of Loi sur les compagnies (Partie 1A) (the "Act"):

a)    The Company may redeem the whole or any part of the Preferred shares of any Class on payment for each Preferred share to be redeemed of the Redemption Amount thereof together with all dividends declared thereon and unpaid.

In case a part only of the then outstanding Preferred shares of a particular class is at any time to be redeemed, the shares so to be redeemed shall be selected by lot in such manner as the directors in their discretion shall decide or, if the directors so determine, may be redeemed pro-rata, disregarding fractions, and the directors may make such adjustments as may be necessary to avoid the redemption of fractional parts of shares.

b)    A shareholder may at his option require the Company to redeem at any time and in any order of priority the whole or any part of the Preferred "A", Preferred "B" and Preferred "C" shares registered in his name upon payment for each Preferred share to be redeemed of the Redemption Amount thereof together with all dividends declared thereon and unpaid, and the Company shall so redeem accordingly disregarding any priorities other than those as may have been stipulated by such shareholder.

Upon a redemption as aforesaid, the appropriate issued and paid-up capital account maintained by the Company for the Class of Preferred shares redeemed shall be adjusted as provided for in the Act, and the shares so redeemed shall be thereupon cancelled in accordance with the provisions of the Act.

IV.    _PURCHASE FOR CANCELLATION_

Subject to the provisions of the Act, the Company shall have the right at its option at any time and from time to time to purchase for cancellation the whole or any part of the Shares of any Class pursuant to tenders or, with the unanimous consent of the holders of all issued shares of such Class, by private contract at the lowest price at which, in the opinion of the directors, such shares are obtainable but not exceeding, in the case of Preferred shares, the Redemption Amount

thereof. If, in response to an invitation for tenders, two (2) or more shareholders submit tenders at the same price and if such tenders are accepted by the Company in whole or in part, then unless the Company accepts all such tenders in whole, the Company shall accept such tenders in proportion as nearly as may be to the number of shares offered in each such tender. Upon a purchase as aforesaid, the appropriate issued and paid-up capital account maintained by the Company for the purchased shares shall be adjusted as provided for in the Act, and the shares so purchased shall be thereupon cancelled in accordance with the provisions of the Act.

V.    *DISTRIBUTION OF ASSETS*

In the event of liquidation, dissolution or winding up of the Company, whether voluntary or involuntary, the holders of the Preferred shares shall be entitled to receive, before any distribution of any part of the assets of the Company among the holders of Common Shares, an amount equal to one hundred percent (100%) of the Redemption Amount thereof and any any dividends declared thereon and unpaid and no more, and the holders of the Common Shares shall thereafter be entitled to receive the remainder of said assets. For the purposes of distribution as aforesaid, the Preferred "A" Shares, Preferred "B" Shares, Preferred "C" Shares, Preferred "D" Shares, Preferred "E" Shares and Preferred "F" Shares shall rank pari passu.

VI.    *INTERPRETATION*

For the purpose of this article, the Redemption Amount of each Preferred share shall be (a) the price for which such share was issued or (b) in the event such share was issued in consideration or exchange for, or in conversion of, shares of the Company, shares of any predecessor amalgamating Company to the Company, shares of any body corporate, property or past services, then the Redemption Amount shall be the monetary equivalent of the fair market value of such shares, property or past services at the time such Preferred share was issued, notwithstanding that only a part thereof has been added to the issued and paid-up capital account maintained for such share in accordance with the provisions of the Act.

VII.    *VOTING*

Except as provided for by the Act, the holders of the Class "B"
Common Shares, the Preferred "C", Preferred "D" and Preferred "E"
Shares shall not, as such, have any voting rights for the election of
directors or for any other purpose nor shall they be entitled to attend
shareholders' meetings.  The holders of the Class "A" Common Shares,
the Preferred "A", Preferred "B" and Preferred F" Shares however,
shall have full voting rights on the basis of one (1) vote for each share
held.

## *ANNEXE 2*

The Company shall be a "closed company" within the meaning of section 5 of the (Quebec) Securities Act (R.S.Q., c. V-1.1), and, as such:

a)    the number of shareholders of the Company shall be limited to fifty (50), exclusive of present or former employees of the Company or of a subsidiary; two (2) or more persons who jointly hold one (1) or more shares shall be counted as one (1) shareholder; and

b)    any invitation to the public to subscribe for any securities shall be prohibited.

No shareholder of the Company shall at any time transfer his share or shares in the Company to any other person whether or not such person is already a shareholder of the Company without the express consent of the directors, to be signified by a resolution of the Board of directors.

<strong><em>ANNEXE 3</em></strong>

I.    <u>BORROWING POWERS</u>

In addition to the powers conferred by the articles, and without restricting the generality of the powers conferred upon the directors by Loi sur les compagnies (Partie 1A) (the "Act"), the directors, if they see fit, and without having to obtain the authorization of the shareholders, may:

a)    borrow money on the credit of the Company;

b)    issue, reissue, sell or pledge debt obligations of the Company;

c)    give a guarantee on behalf of the Company to secure the performance of an obligation of any person, subject to the provisions of the Act;

d)    grant a hypothec or a mortgage, even a floating hypothec or charge, on a universality of property, moveable or immoveable, present, or future, corporeal or incorporeal, of the Company; and

e)    delegate one (1) or more of the above-mentioned powers to a director, to an Executive Committee, to a committee of the Board of Directors or to an officer of the Company.

II.    <u>PARTICIPATION IN MEETINGS BY WAY OF TECHNICAL MEANS</u>

One (1), several or all of the shareholders may participate in a meeting of the shareholders by way of technical means, such as a telephone, enabling them to communicate with the other shareholders or persons participating in the meeting. In such cases, these shareholders shall be deemed to have attended the meeting. The shareholders attending a meeting held using such technical means may decide on any matter which may be considered by a meeting of the shareholders. A shareholder who participates in a meeting of the shareholders by way of technical means may not be represented by proxy.

III.    <u>UNANIMOUS SHAREHOLDER AGREEMENT</u>

(a)    Where, pursuant to the Act, a power, which is to be exercised by the Board of directors, has been withdrawn from the authority of the directors in

order to be assumed by the shareholders pursuant to an unanimous shareholder agreement according to the Act, any reference, in the articles, to the exercise of such power by the Board of directors or by one (1) or more directors shall be read as a reference to an exercise of this power by the meeting of the shareholders pursuant to the unanimous shareholder agreement.

(b)    The Company may pay a commission to any person in consideration of his subscribing or agreeing to subscribe, whether absolutely or conditionally, for any shares in the capital stock of the Company or procuring or agreeing to procure subscriptions, whether absolute or conditional, for any such share, provided however, that such commission whether in the form of money or shares shall not exceed ten per cent (10%) of the amount realized therefrom.

(c)    For the amount of any dividend which the Directors may lawfully declare payable in money, they may declare a dividend in property, or a stock dividend and issue therefor shares of the Company as fully paid.

(d)    The Company shall be entitled to issue fractional shares of any class and all holders of fractional shares issued by the Company shall be entitled to exercise voting rights to the extent of the fraction  on the class of shares having such voting rights and to receive a dividend  in respect of the fractional share held by the shareholder provided the class of share is entitled to a dividend.



Gouvernement du Québec
**L'Inspecteur général
des institutions financières**

A-110723-L9402

Formulaire 2
**AVIS RELATIF A L'ADRESSE
DU SIEGE SOCIAL**
Loi sur les compagnies, L.R.Q.,c. C-38
Partie 1A

---

1  Dénomination sociale

SOLUTIONS I-TECHNOLOGIE INC.
I-TECHNOLOGY SOLUTIONS INC.

---

2  Avis est donné par les présentes que l'adresse du siège social de la compagnie, dans les limites du
district judiciaire indiqué dans les statuts, est la suivante

1010 de la Gauchetière West, Suite 900

| N° | Nom de la rue |

Montreal

| Municipalité |

Quebec, Canada                                                          H3B 2P8

| Province | Code postal |

---

La compagnie

_____
(signature)

Fonction du        Incorporator
signataire         _____

Réservé à l'administration                                              C-212 (Rev.12-93)

Gouvernement du Québec
**déposé le**

**1 1 AOUT 2000**

L'Inspecteur général des
institutions financières



Gouvernement du Québec
**L'Inspecteur général**
des institutions financières

A-110723-L9402

Formulaire 4
**AVIS RELATIF A LA COMPOSITION
DU CONSEIL D'ADMINISTRATION**
Loi sur les compagnies, L.R.Q., c. C-38
Partie 1A

| 1 Dénomination sociale |
| --- |
| SOLUTIONS I-TECHNOLOGIE INC.<br>I-TECHNOLOGY SOLUTIONS INC. |

2 Les administrateurs de la compagnie sont:

| Nom et prénom | Adresse résidentielle complète<br>(incluant le code postal) |
| --- | --- |
| MULLER, Bernard | Bellariastr.69, CH-8038,<br>Zurich, Switzerland |

Si l'espace est insuffisant, joindre une annexe en deux (2) exemplaires.

La compagnie

_(signature)_

Fonction du
signataire                 Incorporator

Réservé à l'administration

C-214 (Rev.10-98)

Gouvernement du Québec
**déposé le**

**1 1 AOUT 2000**

L'Inspecteur général des
institutions financières



# Handelsregisteramt des Kantons Zug - Hauptregister

| Registernummer | Rechtsnatur | | Eintragung | Löschung | Übertrag von | Übertrag auf | Seite |
|---|---|---|---|---|---|---|---|
| CH-170.3.016.634-4 | Aktiengesellschaft | | 08.05.1991 | | | 3-16634 | 1 |

## Alle Eintragungen

| Ei | Lö | Firma | | Ei | | Sitz |
|---|---|---|---|---|---|---|
| 1 | | RTH AG | | 1 | | Zug |
| 1 | | (RTH SA) | | | | |
| 1 | | (RTH Ltd) | | | | |

| Ei | Lö | Domizil - Adresse | Domizilhalter | | PLZ | Ort |
|---|---|---|---|---|---|---|
| 1 | | Rigistrasse 10 | | | 6300 | Zug |
| 2 | | Baarerstrasse 73 | | | 6300 | Zug |

| Ei | Währ | Aktienkapital | Liberierung | Anzahl | Art | | Nennwert |
|---|---|---|---|---|---|---|---|
| 1 | CHF | 50'000.00 | 50'000.00 | 50 | Namenaktien | | 1'000.00 |
| 3 | CHF | 100'000.00 | 100'000.00 | 100 | Namenaktien | | 1'000.00 |

| Ei | Lö | Währ | PS-Kapital | Liberierung | Anzahl | Art | | Nennwert |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Ei | Lö | Art | |
|---|---|---|---|
| | | | Sacheinlage, -übernahme, Vorteile, Genussscheine |

| Ei | Lö | Zweck |
|---|---|---|
| 1 | | Finanzierungen sowie Handel mit festen, flüssigen und gasförmigen Erdölprodukten, chemischen und petrochemischen Produkten, Holz, Metall, Mineralien und anderen Produkten; kann sich an anderen Unternehmungen beteiligen sowie gleichartige Unternehmungen erwerben und errichten |
| 3 | | Erbringen von Dienstleistungen, insbesondere Beratung, Verwaltung sowie Geschäftsführung von in- und ausländischen Gesellschaften in den Bereichen Treuhand, Administration, Handelsfinanzierungen sowie Marketing und Vermögensverwaltung; kann Beteiligungsgesellschaften finanzieren sowie Grundstücke erwerben, halten und veräussern |

| Ei | Lö | Art | Bemerkungen |
|---|---|---|---|
| 3 | | Bemerkung | Ferner Aenderung nicht publikationspflichtiger Tatsachen |

| Ei | Statutendatum | Ei | Statutendatum | Ei | Statutendatum | Ei | Statutendatum |
|---|---|---|---|---|---|---|---|
| 1 | 07.05.1991 | 3 | 19.09.1997 | | | | |

| Ei | Lö | Publikationsorgane | Ei | Lö | Publikationsorgane |
|---|---|---|---|---|---|
| 1 | | SHAB | | | |

| Ei | Lö | Zweigniederlassungen | Ei | Lö | Zweigniederlassungen | Ei | Lö | Zweigniederlassungen |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Ei | TB-Nr | TB-Datum | SHAB | SHAB-Datum | Seite | Ei | TB-Nr | TB-Datum | SHAB | SHAB-Datum | Seite |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | Ersterfassung | 169 | 01.09.1993 | 4602 | 3 | 9491 | 14.11.1997 | 224 | 20.11.1997 | 8424 |
| 2 | 5938 | 02.10.1995 | 196 | 10.10.1995 | 5679 | | | | | | |

| Ei | Er | E.d | Lö | Personenangaben | Eigenschaften | Zeichnungsart |
|---|---|---|---|---|---|---|
| 1 | | | 2 | Wigel, Ernst, H: Lauerz, in Zug | P | KU2 |
| 1 | | | 2 | Peter, René, H: Zürich, in Zug | M | KU2 |
| 1 | | | 2 | Novisa Revisions- und Treuhand AG, in Zürich | Rev.stelle | |
| 2 | | | | Korolnik, lic. iur. Bernhard, H: Stallikon, in Zürich | M | EU |
| 2 | | | | Nussbaumer & Partner Aktiengesellschaft, in Zürich | Rev.stelle | |
| 3 | | | | Müller, Bernard, H: Zürich, in Zürich | D | EU |

# Handelsregisteramt des Kantons Zug - Hauptregister

| Registernummer | Firma | | Sitz | | Seite |
|---|---|---|---|---|---|
| CH-170.3.016.634-4 | RTH AG | | Zug | | 2 |

## Alle Eintragungen

### Legende

| * | | Del * | Delegierte(r) |
|---|---|---|---|
| | Funktionen des statutarischen Exekutivorgans | EEP | Erweiterte Einzelprokura nach OR 459 II |
| AaKonk | Ausseramtl. Konkursverwaltung | eingZB | eingeschränkte Zeichnungsberechtigung |
| baHS | beschränkt auf den Hauptsitz | EKP2 | Erweiterte Kollektivprokura zu 2 nach OR 459 II |
| Beistand | Beistand | EP | Einzelprokura |
| D | Direktor(in) | GD | Generaldirektor(in) |
| EU | Einzelunterschrift | K * | Kassier(in) |
| GF | Geschäftsführer(in) | KU2 | Kollektivunterschrift zu zweien |
| KP2 | Kollektivprokura zu zweien | M * | Mitglied |
| Liq | Liquidator(in) | MGL | Mitglied der Geschäftsleitung |
| MD | Mitglied der Direktion | P * | Präsident(in) |
| oZB | ohne Zeichnungsberechtigung | Rev.stelle | Revisionsstelle |
| Prok | Prokurist(in) | Sek * | Sekretär(in) |
| Sachwalter | Sachwalter(in) | stvD | stellvertretende(r) Direktor(in) |
| SekNM | Sekretär(in) Nichtmitglied | Sup * | Suppleant(in) |
| StvGD | Stellvertretende(r) Generaldirektor(in) | VoD | Vorsitzende(r) der Direktion |
| VD | Vizedirektor(in) | VP * | Vize-Präsident(in) |
| VoGL | Vorsitzende(r) der Geschäftsleitung | | |
| ZB | Zeichnungsberechtigte(r) | | |

Zug 12.09.2001 09:13:29 / FSUS /
Firmen-Identifikation: 99120

**BEGLAUBIGTER AUSZUG**

Zug, 12. Sep. 2001

HANDELSREGISTERAMT ZUG

Dieser Auszug aus dem kantonalen Handelsregister hat ohne die nebenstehende Originalbeglaubigung keine Gültigkeit. Er enthält alle gegenwärtig für diese Firma gültigen Eintragungen, sowie alle seit der Führung des Hauptregisters mittels EDV (1995) gültigen und heute gestrichenen Eintragungen. Auf besonderes Verlangen kann auch ein Auszug erstellt werden, der lediglich alle gegenwärtig gültigen Eintragungen enthält.

# FROM THE DESK OF
# DANIELA STRAUSS

**An:**
**To:**    Ricardo Sonino

**Datum:**
**Date:**    18. July 2002

**Betrifft:**
**Reference:**    Copy of a Certificate of the Register of Commerce

gemäss Besprechung
as per discussion

zur Unterschrift/Visum
for signature

gemäss Ihrem Brief vom
as per your letter dated

Zu Ihren Akten
for your file

X: gemäss Ihrem Wunsch
as per your request

mit bestem Dank zurück
returned with Thanks

zur Kenntnisnahme
for your information

bitte zurückgeben/
please return

zur Prüfung
for your acceptance

bitte besprechen/
please discuss

zur Stellungnahme
for your comment

bitte anrufen/
please phone

zur Erledigung
for settlement

bitte weiterleiten an/
please forward to

_____

_____

_____

**Mit freundlichen Grüssen**
**With compliments**

*Strauss on behalf of Mr. Müller,*
*RTH AG*

**Bemerkungen:**
**Remarks:**

**Beilage/ Enclosure :**

siehe Rückseite/ please see back page