**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
dsheehan@bakerlaw.com
Regina L. Griffin
rgriffin@bakerlaw.com
Judith A. Selby
jselby@bakerlaw.com
Lourdes M. Slater
lslater@bakerlaw.com

Hearing Date: September 7, 2011
Hearing Time: 10:00 a.m.
Objection Deadline: August 31, 2011

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively*
*Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

NOTICE OF TRUSTEE'S MOTION FOR (I) A REPORT AND
RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT
OF SPECIAL DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING
PROCEDURES FOR ELECTRONIC DATA ROOMS; AND (III) AN ORDER
MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER

**PLEASE TAKE NOTICE** that pursuant to section 105(a) of the United States

Bankruptcy Code and 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 7016, 7026

and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and upon the

accompanying motion (the "Motion"), Irving H. Picard, Trustee, through his undersigned

counsel, will move this Court at the United States Bankruptcy Courthouse at One Bowling

Green, New York, New York, on **September 7, 2011 at 10:00 a.m.**, for entry of:  (I) a report

and recommendation to the District Court for the appointment of Special Discovery Masters;

(II) an Order expanding the Case Management Procedures approved by the Court on November

10, 2010, granting access to the Trustee's existing electronic data room to additional defendants

and establishing procedures for the creation of a separate electronic data room for documents

produced to the Trustee; and (III) an Order modifying, in limited fashion, the Litigation

Protective Order, dated June 6, 2011 [Dkt. 4137], including superseding all individual

confidentiality agreements between the Trustee and any parties.

**PLEASE TAKE FURTHER NOTICE** that written objections to the Motion must be

filed with the Clerk of the United States Bankruptcy Court, One Bowling Green, New York,

New York 10004 by no later than **4:00 p.m. on August 31, 2011** (with a courtesy copy delivered

to the Chambers of the Honorable Burton R. Lifland) and must be served upon (a) Baker &

Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn:

David J. Sheehan, Esq., Judith A. Selby, Esq., Lourdes M. Slater, Esq., and Regina L. Griffin,

Esq.; and (b) the Securities Investor Protection Corporation, 805 Fifteenth Street, NW, Suite 800,

Washington, DC 20005, Attn: Kevin H. Bell, Esq. Any objections must specifically state the

interest that the objecting party has in these proceedings and the specific basis of any objection to

the Motion.

Dated: New York, New York                    BAKER & HOSTETLER LLP
       August 5, 2011

                                             By: /s/ David J. Sheehan
                                                   David J. Sheehan
                                                   Regina L. Griffin
                                                   Judith A. Selby
                                                   Lourdes M. Slater

                                             45 Rockefeller Plaza
                                             New York, NY 10111
                                             Telephone: (212) 589-4200
                                             Facsimile: (212) 589-4201

                                             *Attorneys for Irving H. Picard, Trustee for
                                             the Substantively Consolidated SIPA
                                             Liquidation of Bernard L. Madoff Investment
                                             Securities LLC and Bernard L. Madoff*

3

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
dsheehan@bakerlaw.com
Regina L. Griffin
rgriffin@bakerlaw.com
Judith A. Selby
jselby@bakerlaw.com
Lourdes M. Slater
lslater@bakerlaw.com

Hearing Date: September 7, 2011
Hearing Time: 10:00 a.m.
Objection Deadline: August 31, 2011

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L.
Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**TRUSTEE'S MOTION FOR (I) A REPORT AND RECOMMENDATION
TO THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL
DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING
PROCEDURES FOR ELECTRONIC DATA ROOMS; AND (III) AN ORDER
MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard

L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act,

15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L.

Madoff ("Madoff" and together with BLMIS, the "Debtors"), by and through his undersigned

counsel, pursuant to, *inter alia*, section 105(a) of the United States Bankruptcy Code, 11 U.S.C.

§§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 7016, 7026 and 9006 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves (the "Motion") for entry of:

(I) a report and recommendation to the District Court for the appointment of Special Discovery

Masters; (II) an Order expanding the Case Management Procedures approved by the Court on

November 10, 2010, granting access to the Trustee's existing electronic data room to additional

defendants and establishing procedures for the creation of a separate electronic data room for

documents produced to the Trustee; and (III) an Order modifying, in limited fashion, the

Litigation Protective Order, dated June 6, 2011 [Dkt. 4137], including superseding all individual

confidentiality agreements between the Trustee and any parties. In support of the Motion, the

Trustee respectfully states as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

2

## BACKGROUND

2.     On December 11, 2008, Madoff was arrested by federal agents for violation of the criminal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court"), commencing the District Court Proceeding against Madoff and BLMIS. The District Court Proceeding remains pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

3.     On December 12, 2008, the Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq., as receiver for the assets of BLMIS (the "Receiver").

4.     On December 15, 2008, pursuant to SIPA section 78eee(a)(4)(A), the SEC consented to combining its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to SIPA section 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

5.     Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

- a. appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA section 78eee(b)(3);
- b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA section 78eee(b)(3); and
- c. removed the case to the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") pursuant to SIPA section 78eee(b)(4).

By this Protective Decree, the Receiver was removed as receiver for BLMIS.

3

6.      By orders dated December 23, 2008, and February 4, 2009, respectively, the
Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested
person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the BLMIS
estate.

7.      As part of his efforts to ascertain information, since late 2008 and pursuant to
Bankruptcy Rule 2004, the Trustee has issued subpoenas to hundreds of individuals and entities,
which have produced over five (5) million documents. See Jacobs Affidavit at ¶ 6.[2]  (A sample
copy of a subpoena served is attached hereto as Exhibit A.)  In addition, the Trustee has deposed
approximately 108 parties pursuant to Bankruptcy Rule 2004. See Jacobs Affidavit at
¶ 6. (A sample copy of a subpoena served is attached hereto as Exhibit B.)

8.      Many of the parties and deponents who produced documents pursuant to the
subpoenas (collectively, the "Subpoenaed Parties") refused to produce the requested information
unless the Trustee entered into confidentiality agreements (the "Confidentiality Agreements")
that prohibit the Trustee from disclosing to any third party the information produced by the
Subpoenaed Parties. See Jacobs Affidavit at ¶ 7. (A sample confidentiality agreement signed by
the Trustee and a Subpoenaed Party is attached hereto as Exhibit C.)  The Subpoenaed Parties'
stated confidentiality concerns included that:  (i) competitors could gain access to trade secret
and other proprietary information; (ii) personally identifiable information of customers would be
disclosed; and (iii) disclosure of certain documents could breach legal or contractual obligations.

9.      Given the enormity of the investigation and time constraints (including the time
frame within which the Trustee had to conduct his investigation and file lawsuits), the Trustee

---

[2]  All references to "Jacobs Affidavit" are to the Affidavit of Edward J. Jacobs in Support of Trustee's Motion for
(I) a Report and Recommendation to the District Court for the Appointment of Special Discovery Masters; (II) an
Order Establishing Procedures for Electronic Data Rooms; and (III) an Order Modifying the June 6, 2011 Litigation
Protective Order, filed on August 5, 2011 ("Affidavit of Edward J. Jacobs").

4

entered into approximately seventy (70) Confidentiality Agreements. See Jacobs Affidavit at

¶ 7. The Trustee has been successful in obtaining over five (5) million documents from

approximately 441 parties. Id. at ¶ 6. Some of the productions were made or were being

negotiated before the entry of a protective order, and, based upon information and belief, most of

the documents were designated as "confidential" in a non-selective or overly-broad and improper

manner. Id. at ¶¶ 8, 27.

10.    As a result of the investigation, the Trustee has filed over 900 lawsuits to date

against close to 5,000 defendants. The Trustee anticipates that the number of productions

associated with those lawsuits will be enormous and that the volume of data at issue will grow

exponentially.

11.    On February 16, 2010, this Court entered a Protective Order [Dkt. 1951] to

govern the disclosure of confidential information in all proceedings in the Action. Pursuant to

Paragraph 27 of the February 16, 2010 Protective Order, the Confidentiality Agreements were

not terminated, superseded, limited, enhanced or otherwise modified.

12.    On November 10, 2010, this Court entered the Order Establishing Litigation Case

Management Procedures for Avoidance Actions and Amending the February 16, 2010 Protective

Order (the "Case Management Procedures Order") [Dkt. 3141]. The Case Management

Procedures Order amended the February 16, 2010 Protective Order to implement procedures

governing: (i) the inclusion of certain confidential materials in a complaint or other public

filings; and (ii) access to Confidential Account Material (as defined in the February 16, 2010

Protective Order), relied on by the Trustee's professionals in forming their opinions. In addition,

the Case Management Procedures Order established litigation case management procedures for

the actions seeking solely fictitious profits in which a Notice of Applicability was filed (the "Avoidance Actions").

13.     On June 6, 2011, this Court entered a Litigation Protective Order (the "Litigation Protective Order") [Dkt. 4137] governing the treatment of "confidential material" in proceedings in this Action and superseding the February 16, 2010 Protective Order (see Paragraph 20 of the Litigation Protective Order). The Confidentiality Agreements, however, remained in effect pursuant to Paragraph 19. The Litigation Protective Order and the Confidentiality Agreements provide different procedures whereby the Trustee must provide notice to a party whose "confidential material" has been requested. See Jacobs Affidavit at ¶¶ 9-10. In addition, some of the parties produced documents "for settlement purposes only," pursuant to Confidentiality Agreements. Id. at ¶ 10. Some of those Confidentiality Agreements contain provisions whereby upon termination of settlement discussions, the Trustee must return or destroy documents received "for settlement purposes only." Id.

14.     As discovery progresses in the numerous proceedings currently pending before this Court, the Trustee will be faced with the costly and time-consuming process of having to provide notice to any parties who produce documents to the Trustee, including Subpoenaed Parties, as well as defendants and third parties who produce documents in the adversary proceedings (collectively, the "Producing Parties"), in order to respond to discovery requests from defendants. For example, on January 14, 2011, defendants in Picard v. Merkin, Case No. 09-1182, ("Merkin Defendants") served discovery demands on the Trustee (the "Merkin Requests"). See Jacobs Affidavit at ¶ 11. The Merkin Requests seek from the Trustee, among other things, turnover of the information (including documents, deposition transcripts and deposition exhibits) the Trustee has obtained, and is pursuing, from Subpoenaed Parties. Id. at

6

¶ 12. Additionally, the Merkin Defendants have requested all deposition transcripts, deposition exhibits and document productions related to other adversarial proceedings. Id. (Attached as Exhibit D is a copy of the specific Merkin Requests.)

15. The Trustee has objected to the Merkin Requests on several grounds, and the parties are currently discussing the scope of any possible productions of third-party material by the Trustee. See Jacobs Affidavit at ¶ 13. Pending the resolution of those discussions, the Trustee has undertaken to identify potentially responsive third-party material for possible production to the Merkin Defendants. Id. at ¶14. In order to respond to the Merkin Requests, pursuant to the Confidentiality Agreements and the Litigation Protective Order, the Trustee has sent an initial wave of approximately seventy-seven (77) notice letters to third parties, which has led to extensive negotiations between the Trustee and those third parties. Id. at ¶¶ 17-26. The Trustee anticipates that notice letters will need to be sent to additional third parties.

16. This process of addressing discovery requests for "confidential material" is creating financial and administrative burdens on both the Trustee and the third parties. Many of the third parties notified in Picard v. Merkin, Case No. 09-1182, have de-designated selected documents from their productions. See Jacobs Affidavit at ¶ 26. However, many of the third parties refuse to do so on a global basis and are demanding document-by-document notice from the Trustee prior to providing permission for any production, including productions of documents responsive to any additional requests that may be served within Picard v. Merkin or requests that will be served in other adversary proceedings. See Jacobs Affidavit at ¶ 26. As the Court will undoubtedly recognize, the process of providing notice on a production-by-production basis is an extremely burdensome and time-consuming process, requiring numerous phone calls,

7

emails and letters to each third party. This process is also resulting in enormous costs and administrative burdens. Id. at ¶¶ 29-34.

17.    Two of the third parties contacted through this process have agreed to re-review their initial productions and appropriately re-designate, while another third party has agreed to permanently de-designate specific documents responsive to the Merkin Requests. Id. at ¶ 28. Almost every other third party contacted has agreed to allow the production of their "confidential material" to Merkin Defendants, subject to reserving the right to object to future productions on a case-by-case basis. Id. at ¶ 26.

18.    The fact that to date, not one third party has moved for a Protective Order, and most third parties are permitting production on a case-by-case basis, demonstrates that either the documents produced are not in fact "confidential" (either because they were designated "confidential" in a non-selective or overly-broad and improper manner), or that the confidentiality concerns expressed at the time of production do not exist today. Id. at ¶ 27. In any event, superseding the existing Confidentiality Agreements will not adversely affect any party who has made a production pursuant to any such agreement because the Litigation Protective Order is designed to protect all truly "confidential" documents. The Trustee continues to negotiate with Subpoenaed Parties to request de-designation of "confidential material."

19.    The Trustee anticipates additional defendants will serve requests similar to the Merkin Defendants as their cases proceed with discovery, which will compound the burdens on all parties involved and result in notice obligations of the Trustee that are administratively unworkable. Id. at ¶¶ 32-34.

8

## RELIEF SOUGHT

20.     In order to manage discovery in the over 900 adversary proceedings involving close to 5,000 defendants, in addition to producing third parties who are not defendants in those actions, and encompassing tens of millions of documents, the Trustee respectfully seeks the following:

21.     First, for the reasons stated above, and outlined in further detail below, the Trustee seeks the appointment of two Special Discovery Masters to assist in resolving the numerous discovery disputes that will arise in the adversary proceedings.  The Trustee respectfully asks this Court to make the recommendation to the District Court for the appointment of Special Discovery Masters.

22.     Second, as outlined in further detail below, the Trustee requests that access to the electronic data room, authorized by the Case Management Procedures Order (hereinafter "E-Data Room 1"), be expanded to the other defendants in these proceedings under the same restrictions.  The Trustee also seeks the establishment of a separate electronic data room to contain all documents produced to the Trustee by the Producing Parties, including all deposition transcripts and deposition exhibits (hereinafter "E-Data Room 2").[3]  The Special Discovery Masters appointed by the District Court will assist in any disputes that arise from the data rooms (hereinafter the "Electronic Data Rooms"), including any objections from Producing Parties to the inclusion of "confidential material" in E-Data Room 2.

23.     Third, the Trustee seeks a limited modification to the Litigation Protective Order in order to facilitate the establishment and use of the Electronic Data Rooms in the adversary proceedings.  As discussed in more detail below, the Trustee seeks to modify Paragraphs 12 and

---

[3]   E-Data Room 2 would contain all productions the Trustee has received, except for those documents that, due to contractual obligations, are no longer under the care, custody or control of the Trustee.

19 of the Litigation Protective Order. Specifically as to Paragraph 19, the Trustee requests that it be modified to reflect that the above-mentioned Confidentiality Agreements are superseded. It became apparent after the Merkin Requests that the Confidentiality Agreements are unworkable. See Jacobs Affidavit at ¶¶ 29-34. Moreover, the Confidentiality Agreements are no longer required given the multiple layers of protection available to the parties under the procedures envisioned by the Trustee. In addition to the ample protection provided by the Litigation Protective Order, the contents of the electronic data rooms would be "Professional Eyes Only," users would be required to sign a Non-Disclosure Agreement, and any Producing Party or deposed party would be able to seek relief from this Court, or the Special Discovery Masters, if appointed, with regard to inclusion of documents, deposition transcripts or deposition exhibits in the Electronic Data Rooms and/or to production of documents, deposition transcripts or deposition exhibits from the Electronic Data Rooms.

### Report and Recommendation for the Appointment of Special Discovery Masters[4]

24.     The Trustee's proceedings currently in front of this Court are far more complex than the typical liquidation and their related cases. More than 16,000 SIPA customer claims have been submitted to the Trustee, seeking to recoup all or some portion of their lost investment. The Trustee has initiated more than 900 adversary proceedings seeking to recover customer property. The volume and challenges surrounding the data at issue in these proceedings further complicate discovery.

25.     The Trustee submits that the appointment of Special Discovery Masters is critical to assist the parties and this Court in managing the discovery disputes that will arise, particularly given the thousands of parties involved. For example, any producing or deposed party would be

---

[4] Pending the appointment of Special Discovery Masters, parties will continue to present discovery disputes to this Court for resolution.

able to seek relief from a Special Discovery Master to prevent any information containing trade secret or proprietary information, or any other information that is protected under the Litigation Protective Order, to be included in or to exclude production from the Electronic Data Rooms.

26.     Given the magnitude and complexity of discovery in these proceedings, the appointment of two Special Discovery Masters would aid the parties and this Court in resolving discovery disputes in an efficient, timely and cost-effective manner.

27.     Specifically, the Trustee respectfully requests the appointment of a Special Discovery Master to resolve the discovery disputes arising from the Avoidance Actions and a second Special Discovery Master to resolve the discovery disputes arising from all other actions, including, but not limited to, any producing or deposed parties' objections to inclusion of data in E-Data Room 2. The Trustee requests that this Court sign the **Report and Recommendation to the District Court for the Appointment of Special Discovery Masters** (attached hereto as **Exhibit E**), with the Order Appointing Special Discovery Masters to be entered by the District Court (attached hereto as Exhibit 1 to Exhibit E).

## Establishment of Procedures for Electronic Data Rooms

28.     The Case Management Procedures Order established, in part, procedures governing the litigation of certain Avoidance Actions, including the creation of a data room. The Case Management Procedures Order, however, only applies to Avoidance Actions. Specifically, the Case Management Procedures Order provides, in relevant part:

> C.     The Trustee or a defendant may produce discovery, including initial disclosures, on a CD-ROM, in an electronic data room, or other similar electronic format. Given the volume of documentation that may be subject to disclosure in this matter, the Trustee or a defendant may produce a summary report, such as an expert report, and provide access to the underlying documentation on which the summary relies in an electronic data room or other medium for review by the defendants.

> \* \* \*

11

D.        Notwithstanding the Global Protective Order dated February 16, 2010 [Docket No. 1951] (the "Global Protective Order"), materials containing non-public personal information and/or sensitive financial information, including Confidential Account Material (as defined in the Global Protective Order) may be designated by the Trustee as "Professionals' Eyes Only."   The Trustee will provide access to such Confidential Account Material[] only to attorneys of record in one or more Avoidance Actions and other professionals working with that attorney on such Avoidance Action(s) provided that the attorney and/or the other professional executes a non-disclosure agreement in substantially the form attached hereto as Exhibit 3 (the "Non-Disclosure Agreement").  Copies of the Global Protective Order and Non-Disclosure Agreement are available on the Trustee's website:    [(http://www.madofftrustee.com/_____)] Nothing herein or in the Global Protective Order shall prevent any defendant from sharing Confidential Account Material pertaining to that defendant with other defendants in other Avoidance Actions, with accountants, financial or other consultants, or as deemed appropriate by the defendant to whom the Confidential Account Material relates.

29.        The Trustee now seeks to extend the general framework of the electronic data

room, established by the Case Management Procedures Order, to all adversary proceedings

brought by the Trustee pursuant to this SIPC Liquidation with the entry of the proposed **Order**

**Establishing Procedures for Electronic Data Rooms** (attached hereto as **Exhibit F**).

30.        The expanded use of E-Data Room 1, with the protections described in the Case

Management Procedures Order and referenced in paragraph 28 above, is the only feasible way to

allow discovery of certain documents supporting some of the Trustee's key claims while also

balancing the privacy interests of BLMIS customers and other parties.  E-Data Room 1 currently

consists of nearly four (4) million documents, which contain significant amounts of "personally

identifiable information," as defined by applicable laws or regulations, and other sensitive

customer information.  Redaction of the millions of pages included therein would be

prohibitively time-consuming and expensive, and is estimated to cost millions of dollars.  Aside

from the sheer volume of documents at issue, the process would be further complicated by the

fact that some documents that would require standardized redactions are not amenable to an

automated redaction process.  In addition, the confidential information contained in other

12

documents, particularly the BLMIS bank records, would require unique individualized redactions depending on the receiving party, thereby creating an extensive and recurring burden on the Trustee in each and every litigation.

31.    E-Data Room 1 currently contains evidence concerning two key issues – the existence of BLMIS's insolvency and fraud – that will likely be at issue in all adversary proceedings. For example, the Trustee has already received discovery requests for the evidence contained in E-Data Room 1 in Picard v. Merkin, Case No. 09-1182. The expansion of E-Data Room 1 to allow discovery in all adversary proceedings brought within this SIPC Action would allow for efficient discovery balanced with the privacy concerns of BLMIS customers and other parties.

32.    The Trustee also seeks to establish an additional data room, E-Data Room 2, likewise to be designated "Professionals' Eyes Only" and with the protections described above in the Case Management Procedures Order and paragraph 28 above, containing all documents received from the Producing Parties, including deposition transcripts and deposition exhibits, with the entry of the proposed Order Establishing Procedures for Electronic Data Rooms (attached hereto as Exhibit F). The proposed Order Establishing Procedures for Electronic Data Rooms will allow the Trustee to disclose to Merkin Defendants, and any other requesting party, information received from Producing Parties, upon entry into a Non-Disclosure Agreement and under the protection described above. Any parties objecting to the inclusion of specified material in E-Data Room 2 would seek relief from this Court, or the appropriate Special Discovery Master, if appointed, within thirty (30) business days of the entry of the Order Establishing Procedures for Electronic Data Rooms.

13

33.     The Electronic Data Rooms are the only feasible way for the Trustee to respond to defendants' myriad discovery requests and to comply with his continuing obligation to supplement discovery responses throughout the lifespan of the numerous litigations at issue. Productions from the Electronic Data Rooms would be subject to the restrictions of the Litigation Protective Order.

34.     The Electronic Data Rooms equitably balance the legitimate concerns of Producing Parties regarding confidentiality with the needs of defendants to access relevant information to defend the adversary proceedings brought by the Trustee.

## Modification to the Litigation Protective Order

35.     The Litigation Protective Order limits the use and disclosure of "confidential material."[5]  In addition to, and in connection with, the establishment of procedures for the Electronic Data Rooms, the Trustee also seeks limited modification to the Litigation Protective Order to more efficiently and effectively facilitate discovery and the potential use of confidential information in the adversary proceedings.  The limited scope of the relief sought is set forth in the **Order Modifying the June 6, 2011 Litigation Protective Order** (attached hereto as **Exhibit G**).

36.     The Trustee seeks modification of Paragraph 12 of the Litigation Protective Order, in order to allow the Trustee to make available material produced by third parties and

---

[5] Pursuant to Paragraph 2 of the Litigation Protective Order, information may be designated as "confidential material" if:

> (a) in the good faith of the party designating the material as **CONFIDENTIAL** such material contains trade secret or other confidential research, development, or commercial information; personal identifying information; or other information the disclosure of which would breach a legal or contractual obligation or (b) otherwise is subject to protection under section 107(b) or (c) of the United States Bankruptcy Code, Bankruptcy Rules 9018 and 9037, and/or other applicable law.

defendants in E-Data Room 2. The Trustee also seeks modification of Paragraph 19 to specify that the Litigation Protective Order supersedes the Confidentiality Agreements.

37.     Paragraph 12 of the Litigation Protective Order provides that "confidential material" may only be disclosed by the Trustee in response to a discovery request after the Trustee provides ten (10) business days' notice to the Producing Party and, if applicable, the customer to whom the "confidential material" relates and either the Producing Party and customer do not object to disclosure of the "confidential material," or fail to obtain a protective order or other remedy.  Paragraph 19 of the Litigation Protective Order provides that Confidentiality Agreements shall govern productions made prior to the entry of the Litigation Protective Order.

38.     The Trustee has already received requests for documents, including deposition transcripts, designated as "confidential material."  See Jacobs Affidavit at ¶¶ 11-12.  The Trustee anticipates numerous additional requests for such material as discovery moves forward in each of the adversary proceedings.  Accordingly, the Trustee respectfully requests that the Court authorize the disclosure of "confidential material" as follows:

39.     For the reasons set forth in detail in the Affidavit of Edward J. Jacobs, it would be unworkable for the Trustee to obtain the consent of all Producing Parties, customers and deposed parties, each and every time material produced by them is requested within one adversary proceeding or across the various adversary proceedings.  The Trustee seeks leave from the requirements of the Litigation Protective Order to permit him to make available in discovery such "confidential material" on a restricted basis in E-Data Room 2 as discussed above.  Within thirty (30) business days of the entry of the Order Establishing Procedures for Electronic Data Rooms, each party can object to this Court or, if appointed, the Special Discovery Masters, and

15

set forth any issues with placing his/her documents in a data room with the restrictions E-Data
Room 2 will have.

40.     If the Confidentiality Agreements are not superseded, the Trustee may potentially
have to provide notice to thousands of parties on a document-by-document basis each and every
time document requests for Producing Parties' material are received by potentially thousands of
defendants. See Jacobs Affidavit at ¶¶ 30-34. This process would be cost-prohibitive and
administratively impossible. Id. Moreover, the Confidentiality Agreements are unnecessary
because the Litigation Protective Order provides more than adequate protection for "confidential
material."

41.     Superseding the Confidentiality Agreements and including Producing Parties'
documents in E-Data Room 2 will also enable defendants to select for production a targeted set
of documents from the data room. As such, this process will result in defendants requesting a
smaller universe of documents for production.

42.     Further, if the Confidentiality Agreements are not superseded, the Trustee will be
faced with the impossible task of complying with his obligation to return or destroy documents
produced "for settlement purposes only," while also complying with his obligation to produce
responsive, non-privileged material. Documents that have been produced "for settlement
purposes only" can generally be discoverable. See, e.g., Conopco v. Wein, No. 05 Civ. 9899,
2007 WL 1040676, at *5 (S.D.N.Y. April 4, 2007) (holding "the simple fact that the parties to
the settlement agreement agreed to its confidentiality 'does not shield it from discovery' [under
Federal Rule of Civil Procedure 26(b)(1)]") (citations omitted); Grumman Aerospace Corp. v.
Titanium Metals Corp. of America, 91 F.R.D. 84, 87-88 (E.D.N.Y. 1981) (holding that a court
cannot "permit parties to contract privately for the confidentiality of documents, and foreclose

16

others from obtaining, in the course of litigation, materials that are relevant . . . ."). Thus, putting

aside any relevant objections, the Trustee has an obligation comply with discovery requests for

material produced to the Trustee. As noted above, the Merkin Defendants have already made

this request. If the Confidentiality Agreements are not superseded, the Trustee likely will be

faced with protracted discovery motion practice if he fails to produce such requested material. In

the event that the Trustee produces the documents and then settlement discussions with the

Producing Party are terminated, if the Confidentiality Agreements are not superseded, the

Trustee may be accused of breaching the Confidentiality Agreements.

43.     The Trustee understands the desire of Producing Parties to keep "confidential

material" private and wants to protect such information from disclosure. The Trustee asserts that

the Producing Parties will suffer no hardship if the Confidentiality Agreements are superseded

because of the multiple layers of protection already in place. E-Data Room 2 will be

"Professionals' Eyes Only," and any production of the materials therein would be further

protected by the confidentiality provisions in the Litigation Protective Order and Non-Disclosure

Agreement. Producing Parties will be able to seek relief from this Court, or the Special

Discovery Masters, if appointed, to exclude from E-Data Room 2 any information containing

trade secret or proprietary information, any information that is protected under the Litigation

Protective Order, as well as any privileged information. In addition, prior to making any

productions in adversary proceedings of information from E-Data Room 2, "personally

identifiable information," as defined by applicable laws or regulations, will be redacted.

44.     For the foregoing reasons, superseding the Confidentiality Agreements so that all

documents produced to the Trustee can go into E-Data Room 2 is crucial to the discovery in the

adversary proceedings across the board. See re Tribune, No. 08-13141 (KJC) (Bankr. D. Del.

17

May 19, 2011), ECF No. 8949 (authorizing the production of "confidential material" protected

by individual confidentiality agreements relating to subpoenas issued pursuant to Bankruptcy

Rule 2004).

45.     The Trustee respectfully submits that providing access to the "confidential

material" on the restricted basis, as set forth in the Order Establishing Procedures for Electronic

Data Room and the Order Modifying the June 6, 2011 Litigation Protective Order, is an

appropriate compromise of the competing interests of individuals and entities to keep their

"confidential material" private while at the same time permitting the Trustee and defendants in

the adversary proceedings to litigate the adversary proceedings.  Accordingly, the Trustee

respectfully requests that the Court grant the Trustee's request to modify the Litigation

Protective Order with respect to the provisions set forth in the Order Modifying the June 6, 2011

Litigation Protective Order.

## LEGAL BASIS FOR RELIEF REQUESTED

46.     In addition to the equitable, administrative and managerial considerations

supporting the relief requested by the Trustee, these requests are fully supported in law.

### Special Discovery Masters

47.     District Courts have inherent power to appoint special masters.

> Courts have . . . inherent power to provide themselves with appropriate
> instruments required for the performance of their duties.  This power includes
> authority to appoint persons unconnected with the court to aid judges in the
> performance of specific judicial duties.

In re Peterson, 253 U.S. 300, 312-13 (1920) (citation omitted).

48.     District Courts may appoint special masters to assist in Bankruptcy Court

proceedings.  See, e.g., In re Joint E. and S. Dists. Asbestos Litig.; In re Johns-Manville Corp.,

120 B.R. 648 (E.D.N.Y. & Bankr. S.D.N.Y. 1990) (utilizing a Special Master in a joint

18

proceeding with the District Court to evaluate the financial health of a trust and utilizing a

"Special Advisor" in the bankruptcy proceeding to assist in organizing the restructuring of the

trust); Anderson v. Lifeline Healthcare Group, Ltd., 986 F.2d 1426 (9th Cir. 1993) (special

master from prior district court proceeding continued to serve as special master in subsequent

bankruptcy proceeding to establish a plan of reorganization for debtor); Rudnick v. Allustiarte,

1992 WL 209552, at *1 (9th Cir. Aug. 31, 1992) ("Following the recommendation of the

bankruptcy court, the district court appointed a Special Master [for the bankruptcy proceeding]

. . . to conduct hearings and prepare an accounting of the [parties'] interests in Muzzy ranch.").

49.     District Courts and Bankruptcy Courts have generally recognized the need for

special masters in bankruptcy proceedings. See, e.g., In re Int'l Admin. Serv., Inc., 408 F.3d

689, 696 (11th Cir. 2005) ("[B]ankruptcy court appointed a Special Master to oversee and

administer discovery compliance"); Nellis v. Shugrue, 165 B.R. 115, 126 (S.D.N.Y. 1994)

(District Court affirming this Bankruptcy Court "did not abuse its discretion in approving the

settlement agreement, recommended by the Union after negotiation at arms-length and

supervised by . . . the Special Advisor to the court"). In addition, the District Court Judges of the

Western District of Pennsylvania found "the need for the expertise of Special Masters" in

bankruptcy proceedings so compelling that they entered a standing order authorizing the

bankruptcy courts of the district to freely designate and use special masters to assist the

bankruptcy court in resolving electronic discovery issues. In re Use of Special Masters for

Electronic Discovery By U.S. Bankruptcy Judges, No. 2:11-mc-94 (W.D. Pa. March 30, 2011),

http://www.pawd.uscourts.gov/Documents/Forms/UseOfSpecialMastersForElectronicDiscovery.

pdf. The standing order implements this general policy in an effort to "enhance the efficient and

cost effective administration of justice." Id.

19

**Electronic Data Rooms and Modification of the Litigation Protective Order**

50.     The Bankruptcy Court has authority to approve the Order Establishing Procedures

for Electronic Data Rooms and the Order Modifying the June 6, 2011 Litigation Protective

Order. See 11 U.S.C. § 105(a). Bankruptcy Code section 105(a) provides in relevant part that

the "court may issue any order, process, or judgment that is necessary or appropriate to carry out

the provisions of this title." 11 U.S.C. § 105(a).

> Section 105 specifically codifies what are traditionally called 'inherent powers' to
> give the Bankruptcy Courts the necessary ability to manage the cases on their
> docket. It is imperative that courts have the necessary authority to manage the
> arguments and conduct of parties to ensure judicial efficiency and to do justice.
> These powers are 'necessary to the exercise of all others.'

Johnson v. McDow (In re Johnson), 236 B.R. 510, 521 (D.D.C. 1999) (citations omitted); see

also In re Walker, 195 B.R. 187, 208 (Bankr. D.N.H. 1996) (noting the "inherent power of any

court to manage litigation pending before it").[6]

51.     Per Federal Rule 26(c)(1)(d) and (g), made applicable by Bankruptcy Rule 7026,

the Court may "for good cause, issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or
> discovery to certain matters . . . [and] (G) requiring that a trade secret or other
> confidential research, development, or commercial information not be revealed or
> be revealed only in a specified way.

52.     Bankruptcy Rule 7016 provides the Court with considerable discretion to adopt

and implement procedures that will aid in the administration of the adversary proceedings. For

---

[6]   See also In re Adelphia Commc'n Corp., No. 02-41729 (REG) (Bankr. S.D.N.Y. 2005), ECF No. 8044 (order
approving electronic data rooms and case management procedures pursuant to the court's equitable powers codified
in Bankruptcy Code section 105(a)); In re Enron Corp. et al., No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2004), ECF No.
22012 (same).

instance, Federal Rule of Civil Procedure 16(a), made applicable by Bankruptcy Rule 7016, in

relevant part, authorizes courts to enter orders for the purposes of:

> (1) expediting disposition of the action; (2) establishing early and continuing
> control so that the case will not be protracted because of lack of management;
> (3) discouraging wasteful pretrial activities; . . . [and] (5) facilitating settlement.

53.     Courts in the Bankruptcy Court for the Southern District of New York have

entered orders establishing procedures for electronic data rooms in order to facilitate discovery

of millions of pages of documents.  See, e.g., In re Adelphia Commc'n Corp., No. 02-41729

(REG) (Bankr. S.D.N.Y. 2005), ECF No. 8044; In re Enron Corp. et al., No. 01-16034 (AJG)

(Bankr. S.D.N.Y. 2004), ECF No. 22012.

54.     With respect to his request that the Confidentiality Agreements be superseded to

allow disclosure of "confidential material" on the restricted bases as set forth above, the Trustee

asks this Court to rely on Federal Rule of Civil Procedure 16(a), made applicable by Bankruptcy

Rule 7016.  Respectfully, the Trustee also refers this Court to In re Tribune, No. 08-13141 (KJC)

(Bankr. D. Del. May 19, 2011), ECF No. 8949, where the Bankruptcy Court for the District of

Delaware entered an order authorizing the production of "confidential material" protected by

individual confidentiality agreements relating to subpoenas issued pursuant to Bankruptcy Rule

2004.

55.     In In re Tribune, the Official Committee of Unsecured Creditors of Tribune

Company (the "Committee") was appointed to represent the interests of unsecured creditors, and,

in an effort to obtain information, the Committee issued more than 1,600 subpoenas to more than

900 entities (the "Tribune Subpoenaed Parties") pursuant to Bankruptcy Rule 2004.  See Motion

of Official Committee of Unsecured Creditors for Protective Order at 2, No. 08-13141 (KJC)

(Bankr. D. Del. May 9, 2011), ECF No. 8866.  There, many of Tribune Subpoenaed Parties

21

refused to produce the information requested absent individual confidentiality agreements,

preventing the disclosure of information produced to any third party and imposing notification

requirements on the Committee in the event the information produced was requested by a third

party. Id. at 4. The Committee was subsequently served with a subpoena from a third party,

requesting the information produced by the Tribune Subpoenaed Parties. Id. at 4-5. After taking

into consideration the objections from Tribune Subpoenaed Parties, the Bankruptcy Court for the

District of Delaware granted the Committee's request for a protective order and allowed the

Committee to disclose to any requesting parties the Tribune Subpoenaed Parties' information,

upon agreement by the requesting parties to maintain confidentiality. See In re Tribune, No. 08-

13141 (KJC) (Bankr. D. Del. May 19, 2011), ECF No. 8949.

## NOTICE

56.    Notice of this Motion and proposed Report and Recommendation and Orders

have been provided by U.S. Mail, postage prepaid, or email to (i) all parties that have filed a

notice of appearance in this case and in all adversary proceedings; (ii) all known BLMIS

customers; (iii) SIPC; (iv) the SEC; (v) the Internal Revenue Service; and (vi) the United States

Attorney for the Southern District of New York.

57.    The Trustee will also provide by U.S. Mail, postage prepaid, or email, notice of

this Motion and proposed Report and Recommendation and Orders to all of the Subpoenaed

Parties immediately upon filing.

22

**WHEREFORE**, the Trustee respectfully requests that the Court (a) enter the Report and

Recommendation substantially in the form attached hereto as Exhibit E and the Orders

substantially in the form attached hereto as Exhibit F and Exhibit G, granting the relief requested

herein; and (b) grant such other and further relief as the Court deems proper.

Dated: New York, New York            BAKER & HOSTETLER LLP
       August 5, 2011

                              By: /s/ David J. Sheehan
                                  David J. Sheehan
                                  Regina L. Griffin
                                  Judith A. Selby
                                  Lourdes M. Slater

                              45 Rockefeller Plaza
                              New York, NY 10111
                              Telephone: (212) 589-4200
                              Facsimile: (212) 589-4201

                              *Attorneys for Irving H. Picard, Trustee for*
                              *the Substantively Consolidated SIPA*
                              *Liquidation of Bernard L. Madoff Investment*
                              *Securities LLC and Bernard L. Madoff*

23