**EXHIBIT A**

# Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

June 8, 2009

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Brian K. Esser
direct dial: 212.589.4236
besser@bakerlaw.com

**BY FEDERAL EXPRESS**

Access International Advisors LLC
c/o Robert Gottlieb, Esq.
Katten Muchin Rosenman, LLP
575 Madison Avenue
New York, NY  10022

Re:   *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities
      LLC, Adv. Pro. No. 08-01789-BRL: Subpoena for Rule 2004 Examination*

Dear Mr. Gottlieb:

Enclosed please find a Subpoena for Rule 2004 Examination and a copy of the Court's
January 12, 2009 Order in the matter of *Securities Investor Protection Corp. v. Bernard
L. Madoff Investment Securities LLC,* Adv. Pro. No. 08-01789-BRL. As required by the
Court's January 12, 2009 Order, rolling production of documents must be completed
within ten (10) days of the service of this subpoena.  Please direct all productions to:

> Brian Esser, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

In the event that you have any questions regarding this subpoena please direct them to
Stuart Bassin, Baker & Hostetler LLP, Washington Square, Suite 1100, 1050
Connecticut Avenue, N.W., Washington, DC  20036-5304, telephone: (202) 861-1736,
e-mail: sbassin@bakerlaw.com.

Sincerely,

Brian K. Esser

Enclosures

Cincinnati   Cleveland   Columbus   Costa Mesa   Denver   Houston   Los Angeles   New York   Orlando   Washington, DC

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# UNITED STATES BANKRUPTCY COURT

SOUTHERN _____ District of _____ NEW YORK

Securities Investor Protection Corporation,

**SUBPOENA FOR RULE 2004 EXAMINATION**

          Plaintiff,

Case No.* Adv. Pro. No. 08-01789 BRL

   v.

Bernard L. Madoff Investment Securities LLC,

          Defendant.

To:

   Access International Advisors LLC
   c/o Robert Gottlieb, Esq.
   Katten Muchin Rosenman LLP
   575 Madison Avenue
   New York, New York  10022-2585

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Attachment A to this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Tel.:   212-589-4200<br>Attn:   Brian Esser, Esq. | June 19, 2009 at 1 p.m. |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| _____ Attorney | June 8, 2009 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Brian K. Esser, Esq.  Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111    (212) 589-4200

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

American LegalNet, Inc.
www.FormsWorkflow.com

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by any party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

**ATTACHMENT A**
**TO SUBPOENA TO ACCESS INTERNATIONAL ADVISORS LLC**

### A.    DEFINITIONS AND INSTRUCTIONS

1.    The term "Madoff" refers to (a) Bernard L. Madoff Investment Securities, LLC, its parents, affiliates, representatives, employees and any and all related entities including, but not limited to, Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy; Madoff Technologies; BLM Air Charter LLC; Madoff Family LLC; Abel Automatics, Inc.; Abel Holdings, LLC and Cohmad Securities Corporation and their representatives and employees; and (b) Bernard L. Madoff and any and all relatives including, but not limited to, Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff; Andrew Madoff; Deborah Madoff; Mark Madoff; Jennifer Madoff; and Stephanie Madoff.

2.    The term "Access International" refers to Access International Advisors, Inc., Access International Advisors LLC, Access Partners SA (Luxembourg), Access International Advisors, Ltd. (Nassau), Access International Advisors Europe (UK), AIA Capital Group, and any parent, subsidiary, affiliate, predecessor, successor, principal, member, manager, employee, agent or representative thereof.

3.    The term the "Access International's Clients" refers to clients, customers, limited partners, limited liability company members, associates, hedge funds, or other entities or individuals (including nominees of such persons or entities) with a relationship with Access International who, directly or indirectly, invested any funds in Madoff.

4.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Bankruptcy Procedure 2004, including, without limitation, audio files, electronic text or other computerized data.    The term "document" specifically includes voicemail messages, e-mail messages, draft and deleted e-mail messages, text messages, electronic spreadsheets and drafts of electronic spreadsheets.    A draft or non-identical copy is a separate document within the meaning of this term.

5.    As used herein, the term "communication" includes any transmittal or receipt of information, whether formal or informal, oral or written, and specifically includes:    (a) conversations, meetings and discussions in person; and (b) conversations, meetings and discussions by telephone or through telephonic or e-mail messages.

6.    The term "Fund" means any hedge fund, fund of funds or similar investment fund, trust, pool or other vehicle for the joint investment of investor monies assets, wherever and however organized.    The term "Fund" includes, but is not limited to, Luxalpha SICAV (Madoff Acct. No. 1FR108), Luxembourg US Equity Plus aka Luxembourg Investment Fund (Acct. No. 1FR123), Groupement

Financier (Acct. No. 1FN087 and 1FR096), Trotanoy Investment Co. (Acct. No. 1FR045), Citrus Investments (Acct. No. 1FR125), and Benouville Finance (Acct. No. 1FR140).

7. As used herein, the term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

8. The following rules of construction apply to this Subpoena:

   a. The terms "any" and "all" shall be deemed to include the other;

   b. the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all responses that might otherwise be construed to be outside of its scope;

   c. the terms "all" and "each" shall be construed as "all and each";

   d. the use of the singular form of any word includes the plural and vice versa.

9. Except as otherwise noted, this subpoena requires the production of documents created in or referencing the time period beginning at the inception of Access International's relationship with Madoff and continuing until the present (the "Relevant Period"). For purposes of this definition, the term "relationship" means either a direct relationship with Madoff, or an indirect relationship with Madoff through third parties.

10. Produce the original of each document requested. If the original of a document cannot be located or it is unreasonable to produce the original, a fair and accurate copy should be produced in lieu thereof.

11. If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the SIPA Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

12. If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

## B.   DOCUMENTS TO BE PRODUCED

1.   All documents concerning the organization or establishment of Access International. Such documents include, but are not limited to, articles of incorporation, limited partnership agreements, limited liability company or trust agreements, memoranda of association and articles of association or any document with an equivalent function (including both the original organizational documents and any amendment or modification of such documents through the date of your response).

2.   All documents concerning the organization or establishment of any Fund which (a) invested (either directly or indirectly) in Madoff, and (b) is either directly or indirectly affiliated with, advised by, or operated by Access International. Such documents include, but are not limited to, articles of incorporation, limited partnership agreements, limited liability company or trust agreements, memoranda of association and articles of association or any document with an equivalent function (including both the original organizational documents and any amendment or modification of such documents through the date of your response).

3.   All documents provided to any of Access International's Clients or prospective Clients concerning an actual or potential investment (direct or indirect) in Madoff by any person or entity. Such documents include, but are not limited to, prospectuses, offering memoranda, private placement memoranda, presentation material, term sheets, brochures, account opening documents, power point presentations, and marketing or executive summaries.

4.   All documents provided to any prospective or existing Access International Clients concerning Access International's or Madoff's investment strategies or performance not included in items 2-3 above.

5.   All subscription agreements provided to any of Access International's Clients or prospective Clients, including any executed copies of such agreements, including any documents showing transfers of funds in connection with any subscription.

6.   All documents exchanged between Access International and any of Access International's Clients or prospective Clients concerning an actual or potential investment (direct or indirect) in Madoff. Such documents include, but are not limited to, any communication, financial statement or report, or document containing data regarding the actual or potential investment in Madoff.

7.   All documents constituting any part of any agreement between Access International and any of Access International's Clients or prospective Clients concerning services provided or to be provided by Access International.

8.   All documents constituting any part of any agreement whereby services were provided, directly or indirectly, to Access International or any Fund with respect to any direct or indirect investment in Madoff.

9.     All documents constituting any part of any other agreement between Access International or any Fund and any other person (other than Access International's Clients) concerning any payments or fees to be made to or from Access International with respect to Madoff.

10.    All documents concerning Access International's fee schedule(s) for the Relevant Period.

11.    All documents concerning any payment made or to be made with respect to any of the agreements described in requests 7-9.

12.    All documents concerning any transmittal of money (directly or indirectly) by any Fund, any affiliate of UBS AG (including subsidiaries), Access International, or Access International's Clients to Madoff. Include copies of checks (front and back), and documentation clearly denoting the Madoff entity receiving the check. For wire transfers, provide all instructions or requests, including wire transfer instructions.

13.    All documents concerning any transmittal of money (directly or indirectly) from Madoff to any Fund, any affiliate of UBS AG (including subsidiaries), Access International, or Access International's Clients. Include copies of checks (front and back), and documentation clearly denoting the Madoff entity funding the check. For wire transfers, provide all instructions or requests, including wire transfer instructions.

14.    All documents concerning any transmittal of money (directly or indirectly) by any nominal or beneficial owner of any Fund to the Fund, Access International, any affiliate of UBS AG (including subsidiaries), or any other person with respect to any investment with Madoff. Include copies of checks (front and back), and documentation clearly denoting the entity funding the check. Also include all instructions or requests, including wire transfer instructions for any wire transfers.

15.    All documents concerning any transmittal of money (directly or indirectly) to any nominal or beneficial owner of any Fund from any Fund, Access International, or any affiliate of UBS AG (including subsidiaries). Include copies of checks (front and back), and documentation clearly denoting the entity funding the check. For wire transfers, provide all instructions or requests, including wire transfer instructions.

16.    All documents recording any purported investment activity of any Fund including, but not limited to, Madoff account statements, custodian or executing broker statements, and trade confirmations.

17.    Documents sufficient to estimate the loss incurred on the investments made with Madoff, by account.

18. The Form ADVs prepared by Access International for the Relevant Period, including any comparable disclosure document submitted to any other governmental authority.

19. Documents sufficient to identify all of Access International's Clients (both nominees and beneficial owners) during the Relevant Period, including information sufficient to identify which entity within Access International with which the Client maintained a relationship.

20. All documents summarizing Access International's financial status and results for the Relevant Period, including, but not limited to, audited or unaudited annual financial statements, unaudited quarterly and other interim financial statements (including all related footnotes, schedules and exhibits).

21. All documents concerning Access International's bank accounts or brokerage accounts for the Relevant Period, regardless of the institution in which the account is maintained. Such documents including operating accounts, accounts holding Access International's Client's money, and accounts maintained by Access International for any other purpose, including monthly statements, account numbers, account holders, signatories, present and historical account balance information, incoming and outgoing wire transfer records, copies of checks deposited, copies of checks drawn, records reflecting cash activity, account opening documents, account closing documents, and account background.

22. All documents concerning Access International's membership in the Managed Funds Association ("MFA"), and, if a member, the identity of the principals or employees who are or were on any MFA board, committee, or working group.

23. All documents concerning the due diligence process used by Access International to oversee investments of sub-advisers or unaffiliated managers used by Access International.

24. All documents concerning Access International's selection of Madoff as an asset manager for Access International and Access International Clients.

25. All documents concerning communications between Access International and Madoff or any other person or entity who introduced Madoff to Access International.

26. All documents relating to Access International's due diligence (whether by itself or through third parties) of Madoff, including the dates and results of on-site visits, the names/titles of individuals who made the on-site visits, verification of compliance procedures, review of custody arrangements, prime brokerage agreements between Madoff and any entity, DVP/RVP agreements, side letters, determinations of the identity of auditor(s), reasons for any change in auditor, confirmation letters received from auditors, review of audited and/or unaudited financial statements, determination of the identity of Madoff legal counsel, identity of any third party service provider, and documents describing Madoff's

5

management structure including any description of how much time Bernard Madoff devotes or devoted to the investment advisory business.

27. All documents concerning any efforts Access International made to verify Madoff's securities positions and pricing information.

28. All documents furnished to Access International's Clients concerning Access International's periodic performance, investment activity and status reports prepared by Access International or by Madoff.

29. All documents concerning any complaints received by Access International concerning any investments in Madoff.

30. All documents concerning any inquiry, request for documents, subpoena, investigation or litigation by a US or foreign regulatory authority or law enforcement concerning Madoff or any investment in Madoff to the extent that disclosure is not prohibited by law.

31. All documents concerning litigation or arbitration by any private party for any reason concerning Madoff or any investment in Madoff.

32. All documents concerning any decision or discussions to dissolve or unwind Access International, whether or not related to any investment in Madoff, and any discussions or communications with any Access International Client regarding potential dissolution or unwinding.

33. Documents sufficient to disclose the dollar value of all assets under management by Access International as of the most recent calendar month end.

34. Documents sufficient to disclose the percentage of all assets under management by Access International invested with Madoff on or about December 11, 2008.

## C.    HOW DOCUMENTS ARE TO BE PRODUCED

1. All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2. All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database, including, but not limited to, litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

6

3.      Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™, or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4.      Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including, but not limited to, a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s), but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s), but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s), but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files, but only if provided with definitive file(s), tables(s) and field level schemas.

5.      Documents and their metadata portrayed in unstructured files generated by commercially available software system shall be produced as those files were stored in the ordinary course of business (excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, and text files).

6.      Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that is reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.

300013688.2

7

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789-BRL |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

### ORDER GRANTING AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND THE EXAMINATION OF WITNESSES

This matter came before the Court on the motion (the "Motion")[1] of Irving H. Picard, Esq. ("Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("Debtor"), for an order authorizing the Trustee to compel the production of documents and the testimony of witnesses through the issuance of Rule 2004 Subpoenas without further order of the Court and establishing procedures in connection with such subpoenas, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein; and it appearing that the relief requested by the Motion is necessary and in the best interests of the estate, its customers, its creditors, and all parties in interest; and due notice of the Motion having been given, and it appearing that no other or further notice need be given; and the Court having determined that the Trustee articulated good cause for the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the proceedings before the Court and after due deliberation,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted.

2.      The Trustee hereby is authorized to issue and serve Rule 2004 Subpoenas for examinations pursuant to Bankruptcy Rule 2004 without further order of the Court.

3.      The Trustee shall serve each Rule 2004 Subpoena and a copy of the order entered pursuant to this Motion on (i) the target of the Rule 2004 Subpoena, (ii) SIPC, (iii) the SEC, (iv) the Internal Revenue Service, and (v) the United States Attorney for the Southern District of New York.

4.      The Trustee shall cooperate fully with the U.S Department of Justice, and any other federal agency designated by them (collectively, the "Government"), in any matter that the Government is currently or in the future may be investigating regarding the Debtor, its management or its financial condition. The Trustee shall use best efforts to coordinate with the Government in order to avoid unnecessary interference with any investigations conducted by the Government. The Trustee will follow a reasonable protocol to be established jointly with the Government for the sharing of information and such sharing shall be subject to appropriate conditions to protect the Debtor's estate, including but not limited to, the preservation of the attorney-client privilege and protections of the work product doctrine. If the Trustee and the Government disagree as to the appropriateness of a proposed action to be taken pursuant to this Order, the Trustee reserves the right to seek a determination from the Court.

5.      The Trustee shall file with the Court an affidavit or declaration of service for each Rule 2004 Subpoena he serves.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

-2-

6.      Recipients of a Rule 2004 Subpoena and any party in interest shall have ten (10) days after any Rule 2004 Subpoena is served to object to and/or seek to quash such Rule 2004 Subpoena.

7.      Recipients of a Rule 2004 Subpoena are directed to produce, on a rolling basis, all responsive documents within ten (10) days of the service of the subpoena (unless otherwise agreed by the Trustee), subject to any documents withheld under a claim of privilege.

8.      If a witness withholds any documents based upon a claim of privilege, the witness shall provide counsel for the Trustee with a privilege log containing the information required under Bankruptcy Rule 7026(a)(5), within ten (10) days of the service of a subpoena upon that witness (unless otherwise agreed by the Trustee).

9.      Recipients of a Rule 2004 Subpoena are directed to submit to oral examination upon reasonable notice and, absent other agreement with the Trustee, in no event more than fifteen (15) days from the service of a deposition subpoena upon the recipient of said subpoena.

10.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
       January 12, 2009

                                    /s/ BURTON R. LIFLAND
                                    UNITED STATES BANKRUPTCY JUDGE

-3-