**EXHIBIT E**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>              Plaintiff,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>              Defendant. | No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>              Debtor. | |

### REPORT AND RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL DISCOVERY MASTERS

1. The undersigned bankruptcy judge makes this Report and Recommendation to the District Court.

### Background

2. On December 11, 2008, Bernard L. Madoff ("Madoff") was arrested by federal agents for violation of the criminal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court"), commencing the District Court Proceeding against Madoff and Bernard L. Madoff Investment Securities LLC ("BLMIS"). The District Court Proceeding remains pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

Pg 3 of 13

3.  On December 12, 2008, the Honorable Louis L. Stanton entered an order appointing Lee S. Richards, Esq., as receiver for the assets of BLMIS (the "Receiver").

4.  On December 15, 2008, pursuant to SIPA section 78eee(a)(4)(A), the SEC consented to combining its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to SIPA section 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

5.  Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

    a. appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA section 78eee(b)(3);

    b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA section 78eee(b)(3); and

    c. removed the case to the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") pursuant to SIPA section 78eee(b)(4).

By this Protective Decree, the Receiver was removed as receiver for BLMIS.

6.  By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the BLMIS estate.

7.  As part of his efforts to ascertain information, since late 2008 and pursuant to Bankruptcy Rule 2004, the Trustee has issued subpoenas to hundreds of individuals and entities (the "Subpoenaed Parties"). Many of the Subpoenaed Parties refused to produce requested information unless the Trustee entered into confidentiality agreements (the "Confidentiality

Agreements") that prohibit the Trustee from disclosing to any third party the information produced by the Subpoenaed Parties. Given the enormity of the investigation and time constraints, the Trustee entered into approximately seventy (70) Confidentiality Agreements. The Trustee has been successful in obtaining over five (5) million documents from approximately 441 parties.

8.  As a result of the investigation, the Trustee has filed over 900 lawsuits to date. The Trustee anticipates that the number of productions associated with those lawsuits will be enormous and that the volume of data at issue will grow exponentially.

9.  On January 14, 2011, defendants in Picard v. Merkin, Case No. 09-1182, ("Merkin Defendants") sent to Trustee's counsel requests for the production of documents (the "Merkin Requests"). The Merkin Requests seek from the Trustee, among other things, turnover of the information the Trustee obtained, and is pursuing, from any third parties. The Bankruptcy Court recognizes that additional defendants may serve similar requests as other additional adversary proceedings commence document discovery.

10. The Bankruptcy Court respectfully recommends the District Court appoint two Special Discovery Masters: a Special Discovery Master to resolve any discovery disputes in actions seeking solely fictitious profits in which a Notice of Applicability was filed ("Avoidance Actions") and a second Special Discovery Master to resolve any discovery disputes arising from all other actions, with the entry of the proposed Order Appointing Special Discovery Masters (attached hereto as Exhibit 1), including all issues with respect to electronic discovery and the electronic data rooms.[7]

---

[7] Given the size and scope of discovery in this case, the Bankruptcy Court permitted the Trustee to establish "electronic data rooms" to facilitate the production of documents which involve numerous parties and various discovery-related issues.

3

11. Because of the thousands of parties and non-parties involved, and the sheer volume of discovery produced and to be produced, these adversary proceedings are far more complex than the typical liquidation and their related cases. More than 16,000 SIPA customer claims have been submitted to the Trustee, seeking to recoup some portion of their lost investment. The Trustee initiated more than 900 adversary proceedings, seeking to recover customer property. Given the magnitude and complexity of discovery in these proceedings, the appointment of two Special Discovery Masters would aid the parties and this Court in resolving discovery disputes in an efficient, timely, and cost-effective manner.

### District Court's Authority to Appoint Special Discovery Masters

12. The District Court has the authority to appoint special masters.

> Courts have . . . inherent power to provide themselves with appropriate instruments required for the performance of their duties. This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties.

*In re Peterson*, 253 U.S. 300, 312-13 (1920) (citations omitted).

13. District Courts may appoint special masters to assist in Bankruptcy Court proceedings. See, e.g., In re Joint E. and S. Dists. Asbestos Litig.; In re Johns-Manville Corp., 120 B.R. 648 (E.D.N.Y. & Bankr. S.D.N.Y. 1990) (utilizing a Special Master in a joint proceeding with the District Court to evaluate the financial health of a trust and utilizing a "Special Advisor" in the bankruptcy proceeding to assist in organizing the restructuring of the trust); Anderson v. Lifeline Healthcare Group, Ltd., 986 F.2d 1426 (9th Cir. 1993) (special master from prior district court proceeding continued to serve as special master in subsequent bankruptcy proceeding to establish a plan of reorganization for debtor); Rudnick v. Allustiarte, 1992 WL 209552, at *1 (9th Cir. Aug. 31, 1992) ("Following the recommendation of the bankruptcy court, the district court appointed a Special Master [for the bankruptcy proceeding]

4

. . . to conduct hearings and prepare an accounting of the [parties'] interests in Muzzy ranch."); In re Int'l Admin. Services, Inc., 408 F.3d 689, 696 (11th Cir. 2005).

14.     District Courts and Bankruptcy Courts have generally recognized the need for special masters in bankruptcy proceedings. See, e.g., In re Int'l Admin. Serv., Inc., 408 F.3d 689, 696 (11th Cir. 2005) ("[B]ankruptcy court appointed a Special Master to oversee and administer discovery compliance"); Nellis v. Shugrue, 165 B.R. 115, 126 (S.D.N.Y. 1994) (District Court affirming this Bankruptcy Court "did not abuse its discretion in approving the settlement agreement, recommended by the Union after negotiation at arms-length and supervised by . . . the Special Advisor to the court"). In addition, the District Court Judges of the Western District of Pennsylvania found "the need for the expertise of Special Masters" in bankruptcy proceedings so compelling that they entered a standing order authorizing the bankruptcy courts of the district to freely designate and use special masters to assist the bankruptcy court in resolving electronic discovery issues. In re Use of Special Masters for Electronic Discovery By U.S. Bankruptcy Judges, No. 2:11-mc-94 (W.D. Pa. March 30, 2011), http://www.pawd.uscourts.gov/Documents/Forms/UseOfSpecialMastersForElectronicDiscovery.pdf. The standing order implements this general policy in an effort to "enhance the efficient and cost effective administration of justice." Id.

15.     The Bankruptcy Court respectfully recommends that the District Court appoint Special Discovery Masters. Given the size and scope of discovery and the myriad of technical issues and discovery disputes that will inevitably arise, the Bankruptcy Court believes all parties and the Courts will benefit from the services of the Special Discovery Masters.

Dated: New York, New York
       September __, 2011

                                                                                          _____
                                                                                          HONORABLE BURTON R. LIFLAND
                                                                                          UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

## ORDER APPOINTING SPECIAL DISCOVERY MASTERS

Before the Court is the Report and Recommendation of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which recommends that this Court appoint Special Discovery Masters for the above captioned SIPA Liquidation Proceeding and related proceedings thereto. After due deliberation, it is hereby

**ORDERED,** that the Bankruptcy Court's Report and Recommendation should be adopted in its entirety; and it is further

**ORDERED,** that in an effort to establish a uniform, efficient and fair framework for dealing with discovery in this vast and complex proceeding, I am appointing, after giving the parties notice and an opportunity to be heard (including the opportunity to recommend candidates), _____ to serve as Special Master of the discovery activities in connection with avoidance actions where a Notice of Applicability is filed ("Avoidance Actions") and _____ to serve as Special Master of the discovery activities in

connection with all other actions. The appointment of the Special Discovery Masters is effective immediately.

**ORDERED THAT:**

1.  The Special Discovery Masters are directed to proceed with all reasonable diligence in the performance of their duties. The Special Discovery Masters are appointed to resolve such discovery disputes that may arise, and which have been specifically referred to them by the Bankruptcy Court, including electronic data rooms and discovery disputes related to electronically stored information, questions of privilege, confidentiality, work product, relevancy, scope and burden.

2.  Except as specifically set forth in this Order, the Special Discovery Masters may not communicate *ex parte* with the parties (except to arrange scheduling matters) without the consent of all parties. Notwithstanding the foregoing, the Special Discovery Masters shall be empowered to communicate on an *ex parte* basis with any third party or the Bankruptcy Court for purposes of seeking to maintain the confidentiality of trade secret or proprietary information, any information that is protected under the Litigation Protective Order entered on June 6, 2011 [Docket No. 4137] (the "Litigation Protective Order") entered in *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC, et al.*, Adv. Pro. No. 08-01789 (BRL) and any subsequent amendments or modifications thereto, as well as any privileged information.

3.  The Special Discovery Masters may communicate with the Bankruptcy Court *ex parte* on all matters as to which the Special Discovery Masters have been empowered to act.

4.  Each Special Discovery Master shall preserve, as a record of his/her activities, all written submissions received from the parties, all written submissions sent to the parties and any

2

transcripts of hearings before the Special Discovery Master. Each Special Discovery Master shall file with the Clerk of the Bankruptcy Court such records upon the request of any party or the Bankruptcy Court. The Special Discovery Masters shall also file any order, report or recommendation to the Bankruptcy Court.

5. The Trustee shall pay for the reasonable costs of the Special Discovery Masters in connection with the review of relevant background materials concerning these matters and for good faith discovery disputes arising in the Avoidance Actions. The costs of the Special Discovery Master of all other actions shall be paid by the party(ies) seeking the involvement of the Special Discovery Master with regard to a discovery issue or dispute.

6. Each Special Discovery Master shall be compensated at a rate of $____ per hour. If a Special Discovery Master finds that he/she needs the assistance of a support staff employee or lawyer in his/her office, that expense shall be billed by the Special Discovery Master at the ordinary rates for those people.

7. The Special Discovery Masters may, by order, impose upon a party any noncontempt sanction provided by Federal Rule of Civil Procedure 37 (made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7037) or Federal Rule of Civil Procedure 45 (made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9016), and may recommend a contempt sanction against a party and sanctions against a nonparty.

8. Any party may refer a discovery dispute to the appropriate Special Discovery Master by emailing a letter summarizing the discovery dispute to the Special Discovery Master at the email address [_____] or [_____], with notice to any other relevant party(ies) via email.

3

9. Within two (2) business days of receiving a party's letter to the Special Discovery Master noticing the discovery dispute, the other party(ies) to the discovery dispute shall submit to the Special Discovery Master via email a letter response to the initiating party's letter to the Special Discovery Master, with notice to the other party(ies) via email.

10. Within four (4) business days of receiving notice of the discovery dispute, the Special Discovery Master shall schedule a telephone conference with the parties to mediate the discovery dispute. The telephone conference shall be scheduled for a date no later than within ten (10) business days from the date when the Special Discovery Master received notice of the discovery dispute.

11. The parties shall mediate the discovery dispute in good faith and work towards a resolution with the Special Discovery Master.

12. If the parties cannot reach agreement as to a resolution of the discovery dispute, the parties shall request that the Special Discovery Master issue a ruling on the discovery dispute. If such a request is made, the parties may request to brief the issue to the Special Discovery Master on terms agreed to by the Special Discovery Master. The Special Discovery Master shall issue its ruling within twenty (20) business days from the date the Special Discovery Master received notice of the discovery dispute.

13. Any parties objecting to the inclusion of specified material in E-Data Room 2 (as defined in the Order Establishing Procedures for Electronic Data Rooms, entered on September __, 2011 [Dkt. ____] in Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC, et al., Adv. Pro. No. 08-01789 (BRL)), shall seek relief from the appropriate Special Discovery Master, pursuant to Paragraphs 8-12 above. Such relief must be

sought within thirty (30) business days of the entry of the Order Establishing Procedures for Electronic Data Rooms.

14. Any party may appeal any ruling of the Special Discovery Masters to the Bankruptcy Court by filing a motion within ten (10) business days from the date such ruling is issued.

15. This Order may be amended at any time upon notice to the parties, and an opportunity to be heard.

**ORDERED**, that this Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
       September __, 2011

                                        HONORABLE _____
                                        UNITED STATES DISTRICT COURT JUDGE