**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**AFFIDAVIT OF EDWARD J. JACOBS IN SUPPORT OF TRUSTEE'S MOTION FOR (I) A REPORT AND RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING PROCEDURES FOR ELECTRONIC DATA ROOMS; AND (III) AN ORDER MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER**

| STATE OF NEW YORK | ) | |
| | ) | ss. |
| COUNTY OF NEW YORK | ) | |

EDWARD J. JACOBS, being duly sworn, deposes and says:

1.     I am more than eighteen years old and not a party to this action. I am an attorney admitted to the bar of this Court and an associate at Baker & Hostetler LLP. My business address is Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111.

2.     I respectfully submit this affidavit in support of the Trustee's motion (the "Motion") for: (I) a report and recommendation to the District Court for the appointment of Special Discovery Masters; (II) an Order expanding the Case Management Procedures approved by the Court on November 10, 2010, granting access to the Trustee's existing electronic data room to additional defendants and establishing procedures for the creation of a separate

electronic data room for documents produced to the Trustee; and (III) an Order modifying, in limited fashion, the Litigation Protective Order, dated June 6, 2011 [Dkt. 4137], including superseding all individual confidentiality agreements between the Trustee and any parties.

3.    I make this affidavit based upon my own personal knowledge or upon information that I believe to be true.

4.    All capitalized terms not defined herein have the meaning ascribed to them in the Motion.

5.    The Trustee is in possession of a massive collection of BLMIS data, consisting of more than twenty-eight (28) million documents (3.5 terabytes of data).

6.    As part of his ongoing investigation, the Trustee has deposed approximately 108 individuals pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and has received over five (5) million documents from approximately 441 third parties ("Third Parties").

7.    Prior to producing these documents to the Trustee, many Third Parties voiced confidentiality concerns arising from disclosure of certain of their documents. Many Third Parties would not produce documents without a confidentiality agreement in place. On February 16, 2010, the Court entered a governing Litigation Protective Order in the matter of Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, et al., Adv. Pro. No. 08-01789 (BRL) (superseding order June 6, 2011) (the "Litigation Protective Order"). Additionally, approximately seventy (70) Third Parties negotiated individual confidentiality agreements ("Individual Agreements") with the Trustee, each with its own terms and obligations relating to the treatment and disclosure of confidential documents.

8.    Most of the Third Parties designated many of their documents "Confidential" pursuant to either the Litigation Protective Order or Individual Agreement.

9.     The Litigation Protective Order explicitly contemplates requests for Confidential material by third parties other than the producing party and the Trustee. It provides that, "notice shall be provided to the producing party . . . ten (10) business days'" before producing, "'so that any of those parties may seek a protective order or other appropriate remedy.'"

10.     Some of the Individual Agreements explicitly contemplate requests for Confidential material by third parties other than the producing party and the Trustee. However, the notice obligations and requirements in the Individual Agreements are not necessarily harmonized with the notice obligations and requirements in the Litigation Protective Order, or with those requirements in other Individual Agreements. Some Individual Agreements are silent as to issues of third party requests for Confidential material. In addition, some of the Third Parties produced documents "for settlement purposes only" pursuant to Individual Agreements. Moreover, some of those Individual Agreements contain provisions whereby upon termination of settlement discussions, the Trustee must return or destroy documents received for settlement purposes only.

11.     On January 14, 2011, the Trustee received document requests from defendants in the ordinary course of discovery in Picard v. Merkin, Adv. Pro. No. 09-01182 (BRL) ("Merkin Defendants") in the United States Bankruptcy Court for the Southern District of New York.

12.     The Merkin Defendants' requests seek every document received from Third Parties in the Trustee's possession. Additionally, the Merkin Defendants have requested all deposition transcripts and document productions related to other adversarial proceedings.

13.     The Trustee has objected to these requests on several grounds, including, but not limited to, relevancy and burden. The parties are currently in the meet and confer stage of

discovery and continue to discuss the scope of any possible productions of Third Party material by the Trustee.

14. Pending those discussions, the Trustee has performed an initial search of the Third Party documents that are responsive to several of the Merkin Defendants' unobjectionable requests, and reviewed potentially responsive documents for possible production to the Merkin Defendants. This initial search has yielded over 100,000 documents (over 2.2 million pages) from seventy-seven (77) Third Party productions in the Trustee's possession. Of those documents, more than 87,000 were designated as Confidential by the producing party.

15. Of the seventy-seven (77) Third Party productions identified as containing documents responsive to the Merkin Defendants' requests, twenty-five (25) Third Parties had produced Confidential documents pursuant to Individual Agreements. The other fifty-two (52) Third Parties had produced Confidential documents pursuant to the Litigation Protective Order.

16. Each of the twenty-five (25) Individual Agreements contains varying obligations with regard to further production of the documents pursuant to discovery, with some restricting any further production without a court order and others requiring approval from the producing party. Additionally, each agreement outlined obligations pertaining to notice and response time — all of which needed to be closely tracked.

17. Prior to production of the Confidential documents, seventy-seven (77) notice letters were individually drafted and sent to counsel for the Third Parties. The letters were sent via email and regular mail on a rolling basis: fourteen (14) during the first week; twenty-five (25) in the second week; and thirty-eight (38) the following week. For each of the seventy-seven (77) letters, counsel for the Trustee first had to: (i) identify which documents produced by that Third Party were designated as Confidential; (ii) identify the confidentiality agreement that

4

governed the production; (iii) analyze the agreement for particular notice obligations and time periods; (iv) draft appropriate language in the corresponding letter; and (iv) identify counsel for that Third Party.

18.    This process of analyzing confidentiality obligations and drafting appropriate letters addressed to counsel for each of the seventy-seven (77) Third Parties consumed the time of several attorneys and administrative assistants over a period of approximately two weeks.

19.    Given that some of the documents had originally been produced almost two years prior, many of the individuals listed as counsel for various Third Parties no longer represented that client.  In those instances, counsel for the Trustee had to research who currently represented that Third Party and send an amended notice letter, which required additional time.

20.    After the notice letters were sent, forty-five (45) of the Third Parties immediately replied via phone call and/or email objecting to any production.  Under the Litigation Protection Order and some of the Individual Agreements, the Third Parties had ten (10) business days from the date of notice to seek a protective order preventing disclosure of their Confidential documents, so timely responses to the objections were critical.

21.    Without exception, each of the responding Third Parties requested to review the specific Confidential documents that the Trustee intended to produce to the Merkin Defendants.  Counsel for the Trustee complied and produced a Bates list for each such requesting party.

22.    Many of the Third Parties also requested copies of the relevant requests for production served by the Merkin Defendants, which were provided.

23.    The number of responsive Confidential documents for each Third Party ranged from only one to 79,258 documents.  Accordingly, the time required to review the proposed

productions varied greatly, and many of the Third Parties requested extensions, which had to be negotiated on a case-by-by case basis.

24.     After the Third Parties were given ample time to review the Bates list, counsel for the Trustee received countless follow-up calls and/or emails challenging the responsiveness of documents in the production, often on a document-by-document basis. This necessitated individual re-review of certain documents and additional discussions and negotiations with many Third Parties regarding the relevancy of their documents that have taken weeks to complete.

25.     In addition to relevancy, several of the Third Parties voiced additional concerns that disclosure of their documents may violate international privacy laws. Others represented that production would violate domestic financial and securities laws. Judicial intervention will be necessary to resolve such issues.

26.     Despite the various concerns raised throughout weeks of negotiations, virtually every party ultimately agreed to allow the Trustee to produce their Confidential documents to the Merkin Defendants, with the caveat that such permission did not waive that Third Party's right to object to future productions of additional documents on a case-by case basis.

27.     The fact that to date, not one Third Party has moved for a Protective Order and without exception provided limited permission for the Trustee to produce their Confidential documents to the Merkin Defendants is a strong indication that either: (1) the Confidential designations were overly broad and improper in the first instance; and/or (2) any confidentially concerns that existed at the time of production do not exist today.

28.     Nonetheless, only two of the Third Parties contacted through this notice process have agreed to re-review their initial productions to the Trustee and re-designate as appropriate, and one additional Third Party has agreed to permanently de-designate any specific documents

responsive to the Merkin Defendants request. During the negotiation process with the seventy-seven (77) Third Parties, each was asked to re-designate their Confidential documents appropriately in the spirit of the Litigation Protective Order or the Individual Agreements to facilitate future productions and alleviate the time, burden and expense of the notice process on all parties. To date, other than the three exceptions noted above, none have agreed.

29.     The status of discussions with each Third Party concerning the notice letters is time-exhaustive and overwhelmingly burdensome, has spanned five weeks and is still ongoing, and all communications with Third Parties have to be recorded and meticulously tracked.

30.     The process described above has consumed the overwhelming majority of the time of two attorneys, an administrative assistant, and several litigation support analysts over the course of five weeks, even though this initial search for responsive documents implicated only seventy-seven (77) of the 441 Third Parties that produced documents to the Trustee in one initial search for documents responsive to the Merkin Defendants' requests.

31.     The Trustee and the defendants in Picard v. Merkin are continuing to negotiate the scope of the defendants' documents requests. As these negotiations continue, the Trustee may need to produce additional documents, thereby requiring counsel for the Trustee to repeat the process described above, both with respect to the seventy-seven (77) Third Parties already noticed and potentially more Third parties as additional responsive documents are agreed upon and identified.

32.     Similar requests by additional Defendants will require the Trustee to repeat the same process with potentially all 441 Third Parties, each and every time a new document request is received in the approximately 900 proceedings initiated by the Trustee. As more actions filed by the Trustee enter the discovery phase and Third Party documents are requested, the resources

of the Trustee will quickly become overwhelmed by the notice process, at enormous expense, time, and burden on all parties involved.

33.     Moreover, as Defendants in the approximately 900 actions pending begin producing documents, the number of producing Third Parties and volume of documents will quickly grow and it will become administratively impossible to meet the notice obligations and requirements concerning documents produced as Confidential altogether.

34.     Absent the relief sought in the Motion, it will be impossible for the Trustee to respond to discovery requests from defendants, within _Picard v. Merkin_ and across the adversary proceedings, seeking third party data produced to the Trustee.

Dated: New York, New York
August 5, 2011

_Edward J. Jacobs_
Edward J. Jacobs

Sworn to and subscribed before me
this 5th day of August, 2011

_Notary Public_
Notary Public

SARAH JANE T C TRUONG
Notary Public, State of New York
No. 02TR6178574
Qualified in NEW YORK County
Commission Expires DECEMBER 3, 2011

8