Joseph P. Moodhe  
Shannon Rose Selden  
DEBEVOISE & PLIMPTON LLP  
919 Third Avenue  
New York, New York 10022  
Tel.: (212) 909-6000  
Fax: (212) 909-6836  
jpmoodhe@debevoise.com  
srselden@debevoise.com  

*Counsel to Defendants Plaza Investments International Limited & Notz, Stucki Management (Bermuda) Limited*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITY INVESTOR PROTECTION CORPORATION<br><br>                                      Plaintiff,<br><br>vs.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC<br><br>                                      Defendant. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL)<br><br>Substantively Consolidated |
| In re: Bernard L. Madoff,<br><br>                                      Debtor. | |

**LIMITED OBJECTION TO TRUSTEE'S MOTION FOR (I) A REPORT AND RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING PROCEDURES FOR ELECTRONIC DATA ROOMS; AND (III) AN ORDER <u>MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER</u>**

Plaza Investments International Limited ("Plaza"), on behalf of itself and its investors, and Notz, Stucki Management (Bermuda) Limited ("NSMB"), hereby submit this Limited Objection to the Trustee's Motion for (I) a Report and Recommendation to the District Court for the Appointment of Special Discovery Masters; (II) an Order Establishing Procedures for Electronic Data Rooms; and (III) an Order Modifying the June 6, 2011 Litigation Protective Order (the "Motion") [Docket No. 4290] filed August 5, 2011 by the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

Plaza and NSMB object to the extent that the Motion seeks to establish electronic data room procedures as per the proposed order attached as Exhibit F to the Motion (the "Proposed E-Data Room Order") and to modify the June 6, 2011 Protective Order (the "Existing Order") as per the proposed order attached as Exhibit G to the Motion (the "Proposed Modified Protective Order," and together with the Proposed E-Data Room Order, the "Proposed Orders").[1]

## PRELIMINARY STATEMENT

1.      By his Motion, the Trustee seeks to contravene the reasonable expectations of numerous parties who produced significant amounts of confidential and proprietary information in reliance on the protective order entered in this action and on confidentiality agreements independently negotiated with the Trustee. The Trustee

---

[1]    Plaza and NSMB are defendants in Adv. Pro. No. 10-4284, which is substantively consolidated with SIPA Liquidation, No. 08-01789.

2

would now have this Court vitiate those agreements in favor of broad-scale availability of that information to persons who have no legitimate reason for accessing it.

2. The Second Circuit requires a party seeking to modify a protective order to meet a stringent standard. "Where there has been reasonable reliance by a party …, a District Court should not modify a protective order … 'absent a showing of improvidence in the grant of [the protective] order or some *extraordinary circumstance* or *compelling need*.'" *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)) (emphasis added). Courts apply the same stringent standard to the modification of confidentiality agreements. *See U.S. v. Oshatz*, 700 F. Supp. 696, 700-01 (S.D.N.Y. 1988) (applying *Martindell* standard to a stipulation among parties to seal a deposition); *see also Botha v. Don King Prods., Inc.*, No. 97 Civ. 7587, 1998 WL 88745, at *2 (S.D.N.Y. Feb. 27, 1998) (applying *Martindell* standard to modify an oral stipulation to a confidentiality agreement). The Trustee, however, has made no such showing. The actions of a single overreaching defendant in one of hundreds of adversary proceedings do not provide the justification for the Trustee to be released from numerous confidentiality agreements and the protective order previously entered in this matter.

3. For the reasons set forth below, in addition to the reasons set forth by counsel for other parties in their respective objections to the Motion, Plaza and NSMB respectfully submit that the Motion should be denied.

## BACKGROUND

4.     In pursuit of his goal to resolve equitably all claims against the BLMIS estate, the Trustee has been collecting highly confidential financial information concerning thousands of individuals and institutions. In consultation with the parties, the Trustee sought to allay their legitimate privacy and secrecy concerns, while still allowing for efficient litigation of relevant issues, by crafting the protective order dated February 16, 2010 (the "February 16, 2010 Protective Order") [Docket 1951], amended by order dated November 10, 2010 [Docket 3141].

5.     Finding that the February 16, 2010 Protective Order was inconvenient, the Trustee moved on February 1, 2011 to amend it to, among other things, abrogate prior agreements made with the parties. *Trustee's Motion for Entry of Litigation Protective Order*, filed on February 1, 2011, at ¶ 20 [Docket No. 3819]. In response to numerous objections to that motion, the Trustee compromised, addressing the concerns of the objecting parties (including Plaza and NSMB) by, *inter alia*, permitting existing individual confidentiality agreements to remain unimpaired. *The Trustee's Response to Objection to Motion for Entry of Litigation Protective Order*, filed on May 26, 2011, at 2 [Docket No. 4097]. The product of that compromise was the June 6, 2011 Protective Order (the "Existing Order") [Docket No. 4137].

6.     Now, just two months following the entry of the Existing Order, the Trustee seeks to renege on the agreement he reached with objectors based on speculation built on one questionable experience he has had.

7. In pertinent part, the Motion seeks to abrogate numerous privately negotiated confidentiality agreements, which are permitted under the Existing Order, on which parties have relied in producing documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8. The Motion also seeks to establish a second electronic data room (the "E-Data Room 2") that will be accessible by professionals for each of the nearly 5,000 parties in the Trustee's adversary proceedings, many of whom are entities and individuals competing to provide asset management and related financial services. As contemplated in the Motion, E-Data Room 2 would contain all documents produced to the Trustee, including deposition transcripts and deposition exhibits. Motion at ¶¶ 22-23. The E-Data room will contain documents that were produced by parties that relied on previous protective orders or separately negotiated confidentiality agreements. To access these documents, the Trustee contemplates that a party would simply need to sign the proposed Non-Disclosure Agreement, attached as Exhibit 1 to the Proposed E-Data Room Order (the "Non-Disclosure Agreement"). The E-Data room would also hold confidential documents with proprietary, commercially sensitive information that would be produced by defendants in the many separate adversary proceedings the Trustee has initiated.

9. The Trustee also suggests an inadequate procedure for producing parties to object to the inclusion of specified material in the E-Data Room. *See* Motion at ¶ 32. The Trustee proposes a process by which "[a]ny parties objecting to the inclusion of specified material in E-Data Room 2 would seek relief from this Court, or the appropriate Special Discovery Master, if appointed, within thirty (30) business days of the entry of

5

the Order." *Id.* This mechanism is insufficient to protect the reasonable expectations of the parties that their confidential documents will not be made available to their competitors, unless the producing parties object to nearly all such produced materials. The process of reviewing applications for such relief – in light of the confidential and proprietary nature of many of the produced documents and the documents' lack of relevance to the claims against defendants in other adversary proceedings – would be unnecessarily time-consuming for the parties and either the Court or the Special Discovery Master.

10. This attempt to amend the Existing Order must fail because the Proposed Orders do not properly safeguard the parties' rights and because inconvenience and inefficiency – even if present here – do not constitute the "extraordinary circumstances" or "compelling need" necessary for amending an existing protective order. *See Med. Diagnostic Imaging, PLLC v. Carecore Nat., LLC*, No. 06 Civ. 7746, 2009 WL 2135294, at *2 (S.D.N.Y. July 16, 2009) ("While the Court appreciates the need for efficiency, it is hardly an extraordinary or compelling circumstance."); *Maryland Cas. Co. v. W.R. Grace & Co.*, No. 83 Civ. 7451, 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994) (While "fostering judicial economy and avoiding duplicative discovery are laudable goals … they hardly amount to extraordinary circumstances or compelling need.").

## STATEMENT OF OBJECTIONS

11. The Motion is premised upon a singular artificial event of the Trustee's own making, stemming from an overbroad and unwarranted discovery demand by defendants in *Picard v. Merkin*, Case No. 09-1182 (Bankr. S.D.N.Y. filed May 7, 2009)

6

(the "Merkin Defendants"). As described in the Jacobs Affidavit,[2] the basis for this Motion is the Trustee's receipt of document requests on January 14, 2011 from the Merkin Defendants, which sought all document productions relating to the Trustee's other adversarial proceedings as well as deposition transcripts. Jacobs Aff. at ¶¶ 11-12; *see* Motion Ex. D, First Set of Requests for Production of Documents of Defendants J. Ezra Merkin and Gabriel Capital Corporation, at Request 2 ("All documents produced to or by the defendants in other adversary proceedings in this SIPA Litigation …"). Rather than contesting or seeking to narrow this patently improper request, the Trustee instead voluntarily undertook the inefficient exercise that he now uses as the predicate for the present Motion. This single instance of inappropriate fishing is a matter that the Trustee should have addressed with this Court, rather than suffer the consequences upon parties in unrelated proceedings. There is no obvious reason that parties in other adversary proceedings need to see unrelated third parties' productions, which are not a proper basis of discovery and can be resisted on that basis.

12.     As the Jacobs Affidavit indicates, only the Merkin Defendants are identified as having sought such an intrusive amount of discovery. There is thus no foundation for the Trustee's anticipation that "additional defendants will serve requests similar to the Merkin Defendants." Motion at ¶ 19. The inappropriate actions of defendants in this single adversary proceeding do not constitute a circumstance extraordinary enough to vitiate dozens of independently negotiated confidentiality

---

[2]     References herein to the "Jacobs Affidavit" are to the Affidavit of Edward J. Jacobs in Support of Trustee's Motion, filed on August 5, 2011 [Docket No. 4291].

7

agreements nor to take the extreme measure of making all parties' documents available to any defendant who might seek to peruse them for purposes wholly unrelated to their claims and defenses.

13. The Proposed E-Data Room Order does not adequately protect the producing parties' confidentiality concerns. It puts no restrictions on those who have access to the data room as to what purpose they may have in reviewing the materials. It is a procedure worse than a fishing expedition: it is a Court-sponsored tour for a mythical Loch Ness monster of relevant proof, undertaken in hope that items of commercial interest will be found in competitors' sensitive business records, regardless of their significance to the inquirer's adversarial proceeding.

14. The Trustee's suggestion to limit E-Data Room 2 to "Professionals' Eyes Only"[3] is not an effective answer to the problem identified by the Trustee, given the large number of suits the Trustee has brought and the enormous number of firms, lawyers and other professionals that would fall under that umbrella. As the Trustee emphasized, he has filed over 900 adversary proceedings against nearly 5,000 defendants. Motion at ¶ 10. This limitation affords confidentiality in name only. Even if everyone abided by the terms of the proposed Non-Disclosure Agreement in good faith, errors occur

---

[3] In addition to being a functionally meaningless limitation due to the large number of professionals involved in the associated actions, this limitation is furthermore inconsistently described in the materials in support of the Motion. *Compare* Motion at ¶ 32 (the data room is "likewise to be designated 'Professionals' Eyes Only'") *with* Proposed E-Data Room Order at 3 (materials "*may* be designated *by the Trustee* as 'Professionals' Eyes Only'") (emphasis added) *and with* Non-Disclosure Agreement at 2 ("the parties may designate certain discovery material . . . as being 'CONFIDENTIAL – PROFESSIONALS' EYES ONLY'").

8

frequently, and the larger the number of people entitled to access, the greater the likelihood of leakage.  Limiting dissemination to the professionals of each of these nearly 5,000 defendants provides no meaningful protection against defendants' concerns, much less the "equitabl[e] balance" promised by the Trustee.  Motion at ¶ 34.

15. Prospectively, implementing the Proposed Orders will tie parties' hands, preventing them from negotiating a reasonable means for producing confidential materials in a manner that will not run afoul of foreign statutes and rules restricting discovery, certain of which guard against bankers and other professional disclosing the identity of their customers and actions taken on their behalf.  Implementing the Proposed Orders will thus lead to unnecessarily complicated discovery processes, imposing real cost and delay rather than the time and expense the Trustee cites here – a delay which can be avoided simply by policing inappropriately broad requests such as that made by the Merkin Defendants.

16. Abrogation of confidentiality agreements per the Proposed Modified Protective Order will also adversely affect this and other judicial proceedings.  It will deter parties from entering into and relying upon agreements (which the Rules encourage) for fear that, after the receiving party obtains the benefit of production, the protection given to the producing party will be taken away – again, resulting in the additional expense and complexity of discovery that the Trustee asserts he wants to avoid.  This policy concern has been raised by the Second Circuit, which has found that, "[i]f protective orders were easily modified, [] parties would be less forthcoming in giving testimony and less willing to settle their dispute." *SEC v. TheStreet.com*, 273 F.3d at

9

230; *see also Martindell v. Int'l Tel. and Tel. Corp.*, 594 F.2d 291, 295-96 (2d Cir. 1979) (because a "vital function of a protective order … is to 'secure the just, speedy, and inexpensive determination' of civil disputes … by encouraging full disclosure of all evidence that might conceivably be relevant," denying such a protective order might inhibit witnesses from giving full testimony).

17.     In light of the numerous confidentiality and policy concerns raised by the massive sharing of sensitive documents contemplated by the Motion, the proposed amendments are simply inadequate to protect the rights of the producing parties and unfair to those with existing agreements.

## **CONCLUSION**

The Trustee should not be allowed to revisit issues already considered, negotiated and agreed upon simply because the crucial protections of the parties' rights – which he previously recognized as important – appear more cumbersome based on a situation that could have otherwise been largely avoided. The Motion hardly establishes the existence of an extraordinary circumstance or compelling need. For the above reasons, Plaza and NSMB object to the entry of the Proposed Order and respectfully request that the Trustee's motion for an order establishing procedures for electronic data rooms and an order modifying the June 6, 2011 litigation protective order be denied.

Dated: August 31, 2011
　　　　New York, NY

　　　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Joseph P. Moodhe
　　　　　　　　　　　　　　　　　　　　　　　　Joseph P. Moodhe
　　　　　　　　　　　　　　　　　　　　　　　　Shannon Rose Selden
　　　　　　　　　　　　　　　　　　　　　　　　jpmoodhe@debevoise.com
　　　　　　　　　　　　　　　　　　　　　　　　srselden@debevoise.com
　　　　　　　　　　　　　　　　　　　　　　　　DEBEVOISE & PLIMPTON LLP
　　　　　　　　　　　　　　　　　　　　　　　　919 Third Avenue
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　　　　　　Tel.: (212) 909-6000
　　　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 909-6836

　　　　　　　　　　　　　　　　　　　　　　　　*Counsel to Defendants Plaza Investments International Limited and Notz, Stucki Management (Bermuda) Limited*