| | |
|---|---|
| KOBRE & KIM LLP<br>800 Third Avenue<br>New York, New York 10022<br>Telephone: +1 212 488 1200<br>Fax: +1 212 488 1220<br><br>*Attorneys for MAXAM Capital Management LLC, MAXAM Capital GP LLC, MAXAM Absolute Return Fund Limited, Suzanne Hammond, Sandra L. Manzke, Sandra L. Manzke Revocable Trust, Walker Manzke, and April Bukofser Manzke* | WOLLMUTH  MAHER  &  DEUTSCH LLP<br>One Gateway Center<br>Newark, New Jersey 07102<br>Telephone: +1 973 733 9200<br>Fax: +1 973 733 9292<br><br>*Attorneys for MAXAM Absolute Return Fund L.P.* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br>       Plaintiff,<br><br>       v.<br><br>MAXAM ABSOLUTE RETURN FUND, L.P.; MAXAM ABSOLUTE RETURN FUND, LTD.; MAXAM CAPITAL MANAGEMENT, LLC; MAXAM CAPITAL GP LLC; SANDRA L. MANZKE REVOCABLE TRUST; SANDRA L. MANZKE, as trustee and individually; SUZANNE HAMMOND; WALKER MANZKE; and APRIL BUKOFSER MANZKE,<br><br>       Defendants. | Adv. Pro. No. 10-05342 (BRL) |

**DEFENDANTS' OPPOSITION TO THE TRUSTEE'S MOTION FOR (I) A REPORT AND RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING PROCEDURES FOR ELECTRONIC DATA ROOMS; AND (III) AN ORDER MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER**

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ..............................................................................................................................3

    The MAXAM Action and Confidentiality Agreements ............................................................3

    The Court's Protective Orders ...................................................................................................7

    The Merkin Document Requests ...............................................................................................8

    The Trustee's Motion ................................................................................................................9

ARGUMENT ..................................................................................................................................10

    I.   THE TRUSTEE HAS FAILED TO DEMONSTRATE AN EXTRAORDINARY CIRCUMSTANCE OR COMPELLING NEED SUFFICIENT TO MODIFY THE MAXAM CONFIDENTIALITY AGREEMENTS. ..........................................................10

        A.   The MAXAM Defendants Relied on the Confidentiality Agreements in Producing Documents and Information. ..................................................................11

        B.   The Trustee's Desire to Do Less Work is Not a "Compelling Reason" to Modify the Agreements. .........................................................................................12

    II.  E-DATA ROOM 2 WOULD NOT SUFFICIENTLY PROTECT THE MAXAM DEFENDANTS' NON-PUBLIC OR CONFIDENTIAL MATERIAL. ...........................13

CONCLUSION................................................................................................................................17

i

**Table of Authorities**

**Cases**                                                                                                                                                        **Page(s)**

*In re Almatis B.V.*, No. 10-12308 (MG), 2010 WL 4877868 (Bankr. S.D.N.Y. Nov. 24, 2010) ..........15

*Botha v. Don King Productions, Inc.*, No. 97 Civ. 7587 (JGK), 1998 WL 88745 (S.D.N.Y. Feb. 27, 1998) ..........11

*Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297 (N.D. Ill. 1993) ..........14

*Davis v. Transamerica Commercial Fin. Corp.*, No. 93 Civ. 5177 (RAG), 1995 WL 534294 (N.D. Ill. Sept. 5, 1995) ..........11

*Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499 (S.D. Iowa 1992) ..........12, 16

*Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979) ..........10

*Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393 (W. D.Va. 1987) ..........11, 13

*SEC v. TheStreet.Com*, 273 F.3d 222 (2d Cir. 2001) ..........10

*In re September 11 Litig.*, 262 F.R.D. 274 (S.D.N.Y. 2009) ..........10

**Statutes**

Fed. R. Bank. P. 2004 ..........3, 7, 15

Defendants MAXAM Capital Management LLC ("MAXAM Capital") and Sandra L. Manzke, jointly with the MAXAM Absolute Return Fund L.P. ("MARF L.P.") (collectively, the "MAXAM Defendants"), respectfully submit this opposition to the Trustee's Motion for (I) a Report and Recommendation to the District Court for the Appointment of Special Discovery Masters; (II) an Order Establishing Procedures for Electronic Data Rooms; and (III) an Order Modifying the June 6, 2011 Litigation Protective Order, filed on August 5, 2011 (the "Trustee's Motion" or the "Motion").

## PRELIMINARY STATEMENT

Through his Motion, Irving H. Picard (the "Trustee"), as trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), without compelling reason, asks this Court to simply void the valid and binding confidentiality agreements that he entered into with the MAXAM Defendants—agreements on which the MAXAM Defendants reasonably relied in the course of producing documents and providing testimony over the last three years. The Trustee's only purported justification for the extreme remedy he seeks is that it would be too much work for him to comply with the terms of the confidentiality agreements that he entered into with the MAXAM Defendants and many other parties. That the Trustee no longer wants to abide by the contracts that he negotiated and to which he agreed is hardly a compelling reason for the Court to step in and rewrite the terms.

The MAXAM Defendants' interest in maintaining the confidentiality of the information that it produced to the Trustee goes beyond the personal and/or proprietary information that they produced and which their agreements with the Trustee protected. The MAXAM Defendants also produced confidential information concerning investors in the MAXAM Absolute Return Fund Limited ("MARF Limited"), a Cayman Islands-based entity, pursuant to a September 21, 2009

1

Order in the Grand Court of the Cayman Islands that limits the disclosure of that entity's confidential information outside of this particular adversary proceeding (the "Cayman Order"). The relief outlined in the Trustee's Motion not only seeks to unilaterally retract its agreement with the MAXAM Defendants, but would run afoul of the order of the Cayman Court as well.

Rather than honor his agreements with the MAXAM Defendants, the Trustee's Motion proposes to disregard the terms of those agreements entirely, and place all of the documents that he has received from the MAXAM Defendants (and will receive through the course of discovery)—including highly sensitive documents containing personal financial information, proprietary trade secrets, and information protected from disclosure under the Cayman Order—into a single database named "E-Data Room 2," where it would join the documents of close to 5,000 other defendants, and which would be accessible to all of those defendants in the 900-plus lawsuits that the Trustee has filed.  The "protection" that the Trustee purports to offer from the MAXAM Defendants' confidential documents being viewed by numerous unrelated parties is that what he considers to be "truly confidential" documents will not be included in E-Data Room 2.  This would dramatically change the rules upon which the MAXAM Defendants relied in producing their confidential information (which, by definition in their agreements, also included "non-public" information), and violate the agreed-upon terms of the MAXAM Confidentiality Agreements and the terms of the Cayman Order.  Accordingly, the Court should deny the Trustee's Motion.[1]

---

[1] If the Court grants the Trustee's Motion, the MAXAM Defendants reserve their rights to further contest the placement of any confidential material in E-Data Room 2 within thirty business days after the entry of the Order Establishing Procedures for Electronic Data Rooms (the "E-Data Room Order," attached as Exhibit F to the Trustee's Motion), as provided for in the Trustee's Motion. (Trustee's Mot. ¶¶ 32, 39.)

2

## BACKGROUND

*The MAXAM Action and Confidentiality Agreements*

1.  On December 8, 2010, the Trustee filed a Complaint against the MAXAM Defendants, MAXAM Capital GP LLC, MARF Limited, the Sandra L. Manzke Revocable Trust, Suzanne Hammond, Walker Manzke, and April Bukofser Manzke.

2.  Before filing the Complaint, the Trustee issued subpoenas for discovery pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"). On February 27, 2009, the Trustee directed a subpoena to MARF L.P. (*See* Sklar Decl. ¶ 3.)[2]

3.  Before agreeing to produce any documents in response to that subpoena, MARF L.P. and the Trustee entered into a confidentiality agreement. The confidentiality agreement between the Trustee and MARF L.P. was not a boilerplate agreement, but was the result of several weeks of back and forth drafts and negotiations between the parties. For example:

- On March 18, 2009, the Trustee forwarded a first draft confidentiality agreement to counsel for MARF L.P.

- On March 19, counsel for MARF L.P. sent back an edited draft to the Trustee.

- On the morning of March 20, the parties conferred to discuss their differences regarding the confidentiality agreement, and later that day, the Trustee sent a revised version incorporating some of MARF L.P.'s proposed changes.

- On March 23, counsel for MARF L.P. sent the Trustee a revised version of the draft confidentiality agreement.

- The Trustee sent another draft on April 7, and MARF L.P. responded to the Trustee with changes to that draft on April 9.

(*See id.* ¶ 4.)

---

[2] All references to "Sklar Decl." are to the Declaration of Maggie E. Sklar in support of the MAXAM Defendants' Opposition to the Trustee's Motion, filed on August 31, 2011.

3

4. The final version of the confidentiality agreement between the Trustee and MARF L.P. was executed on April 13, 2009 (the "April 13, 2009 Confidentiality Agreement"). (*See id.* ¶ 5, Ex. A.) "Confidential Information" was defined to include, but was not limited to, "non-public or confidential research, development, commercial or marketing materials, documents, or information." (*Id.*, Ex. A at 1.) The April 13, 2009 Confidentiality Agreement only permitted the Trustee to share the Confidential Information with his counsel, staff, employees, experts, consultants, or regulatory or enforcement authorities or liquidators investigating matters relating to BLMIS. (*Id.*, Ex. A at 2.) In the April 13, 2009 Confidentiality Agreement, the Trustee:

> agree[d] to only use the Confidential Information produced to him in various and related proceedings in connection with *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-1789-BRL, including any possible actions against [MARF L.P.], related managers and affiliates and/or its officers and investors, so long as the provisions of this Agreement are made applicable to such proceedings. Confidential information shall not be provided by the Trustee to any person or entity, except by order of the bankruptcy court.

(*Id.*, Ex. A at 2.) Of particular significance is that, in the event that the Trustee disagreed with any confidentiality designation, the Trustee was to provide MARF L.P. with written notice of its disagreement and specifically identify the materials in dispute, and if the parties could not reach agreement, either party could make application to the Court. (*Id.*, Ex. A at 1.) The April 13, 2009 Confidentiality Agreement also provided that in the event that the Trustee received a discovery request to disclose any of the confidential information he had received, he would first have to "provide to the Fund reasonable notice of any such request or requirement so that the Fund may seek a protective order or other appropriate remedy." (*Id.*, Ex. A at 2.) Pursuant to the April 13, 2009 Confidentiality Agreement, MARF L.P. then proceeded to produce

4

confidential documents and information to the Trustee on or about April 23, May 4, June 2, June 11, and June 23, 2009. (*Id.* ¶ 6.)[3]

5. Notably, and as a reflection of the negotiations between the parties, the April 13, 2009 Confidentiality Agreement is different than the confidentiality agreement attached as Exhibit C to the Trustee's Motion. Unlike that confidentiality agreement, the April 13, 2009 Confidentiality Agreement:

- states, in the second paragraph, that "Information includes any document, testimony, electronic data, or other information disclosed or produced by or on behalf of the Fund, or any of its attorneys or agents";

- includes a paragraph that says, "If, after having produced material to the Trustee pursuant to this Agreement, the Fund states in writing that material was privileged and/or produced in error, the Trustee will not assert that the fact of production of the material constitutes a waiver of any right, privilege, or other protection that the Fund had or may have had as to the material and shall return the material and all copies thereof and destroy that portion of any notes or memoranda that reflect the substance of the document";

- does not include a provision that the defendant must respond within 5 business days of the Trustee's notification that confidential information has been requested; and

- does not include the statement that defendant "agrees that if Confidential Information is disclosed in violation of this Agreement, [its] sole remedy is to seek injunctive relief in the bankruptcy court to prevent further disclosures of Confidential Information."

(*See id.*, Ex. A.)

6. On June 1, 2009, the Trustee directed a subpoena to Ms. Manzke and a subpoena to MAXAM Capital. (*See id.* ¶ 8.)

7. On June 29, 2009, the Trustee and Ms. Manzke executed a confidentiality agreement (the "June 29, 2009 Confidentiality Agreement," together with the April 13, 2009

---

[3] MARF L.P. also produced documents to the Trustee before the April 13, 2009 Confidentiality Agreement was finalized, on or about April 1, April 8 and April 13, 2009, with a cover letter which stated that the information submitted was intended solely for the use of the Trustee of Bernard L. Madoff Investment Securities LLC in connection with the above-captioned proceeding. (Sklar Decl. ¶ 7.)

5

Confidentiality Agreement, the "MAXAM Confidentiality Agreements"), which memorialized the parties' agreement regarding confidential treatment of certain documents produced by Ms. Manzke, including personal brokerage, bank statements, tax returns of hers or her family members, and trade secrets. (*See id.* ¶ 9, Ex. B.) In the event that Ms. Manzke wanted to consider additional documents confidential, a written request was to be sent to the Trustee and after a meet and confer, if the parties could not reach agreement, either party could make application the court. (*Id.*) The June 29, 2009 Confidentiality Agreement also provided that Ms. Manzke's deposition testimony relating to confidential documents, her personal financial information, her family's personal financial information, and trade secrets, would be confidential. (*See id.*) The parties reserved their rights to challenge a confidentiality designation of any portion of the transcript after the conclusion of the deposition. (*See id.*)

8. In August 2009, MAXAM Capital made an application to the Grand Court of the Cayman Islands in response to the Trustee's request for documents concerning the names of the foreign investors in MARF Limited, out of concern that disclosing the information might be a breach of the Confidential Relationships (Preservation) Law (1995 Revision). (*See id.* ¶ 10.) On September 21, 2009, the Grand Court of the Cayman Islands issued the Cayman Order permitting MAXAM Capital to disclose MAXAM Limited's confidential information to the Trustee "for the purposes only of the SIPC proceedings," and directing that the confidential information "shall not be further disclosed by any recipient of such confidential information to any third party without the express leave of this Court." (*See id.* ¶ 11, Ex. C.)

9. Pursuant to the April 13, 2009 Confidentiality Agreement and the Cayman Order, MARF L.P., MAXAM Capital, and Ms. Manzke then produced confidential documents and information to the Trustee in 2009 on or about July 2, July 6, July 10, July 14, July 21, August 3,

6

August 13, August 25, September 3, September 18, October 13, October 21, and October 28, 2009. (*See id.* ¶ 12.)

*The Court's Protective Orders*

10. On February 16, 2010, this Court issued an order, ECF No. 1951 (the "Protective Order"), which governed the disclosure of "confidential material" in all of the lawsuits brought by the Trustee. Pursuant to Paragraph 27 of the Protective Order, the MAXAM Confidentiality Agreements were not terminated, superseded, limited, or otherwise modified. (Protective Order ¶ 27.)

11. On June 6, 2011, this Court entered an order, ECF No. 4137 (the "Litigation Protective Order"), governing the treatment of "confidential material" in all of the lawsuits brought by the Trustee, which superseded the Protective Order. (Litigation Protective Order ¶ 20.) The Litigation Protective Order provides, among other things, that confidential material may be produced to third parties, if the producing party receives 10-days' notice so that they "may seek a protective order or other appropriate remedy." (*Id.* ¶ 12.) The Litigation Protective Order, however, controls designations of "confidential material" made after the date of entry of the order, and provides that if a producing party and the Trustee had entered into a confidentiality agreement, that agreement continued to apply to documents or materials produced prior to the entry of the Litigation Protective Order. (*See id.* ¶ 19.) Thus, the MAXAM Confidentiality Agreements remain in effect and provide for the confidentiality of its documents and information produced in response to the Trustee's Rule 2004 subpoenas and deposition.

*The Merkin Document Requests*

12. Earlier this year, the defendants in *Picard v. Merkin*, Adv. Pr. No. 09-01182 (BRL) (the "Merkin Defendants") served document requests on the Trustee (the "Merkin

7

Requests"). (Trustee's Mot. ¶ 14, Ex. D). The Trustee asserts that the Merkin Requests seek "every document received" by the Trustee and all of the documents, deposition transcripts, and deposition exhibits from all of the other lawsuits the Trustee has brought on behalf of the BLMIS estate. (*See id.*; *see also* Jacobs Aff. ¶¶ 11-12.)[4] The Merkin Requests, attached to the Trustee's Motion as Exhibit D, in fact seek documents produced by the defendants in other adversary proceedings relating to whether any third person, entity, or party "(a) knew or should have known that Madoff's IA Business was predicated on fraud; (b) was on notice of any indicia of irregularity and fraud at BLMIS; (c) conducted reasonable due diligence of Madoff or BLMIS; or (d) cooperated with or assisted Madoff or others at BLMIS in perpetuating or concealing the fraud." (Trustee's Mot. ¶ 14, Ex. D.) They also seek all documents produced to the Trustee that "evidence that any customer, bank and/or third party was aware of 'red flags,' or was on inquiry notice, of any risks associated with an investment in BLMIS." (*Id.*)

13.     In order to produce documents to respond to the Merkin Requests, the Trustee engaged in discussions with all of the defendants that have confidentiality agreements with the Trustee with respect to whether they would consent to the release of documents that they had previously produced and identified as confidential. (*Id.* ¶¶ 15-18.) MARF L.P. received such a request on June 7, 2011. (Sklar Decl. ¶ 13, Ex. D.) After discussions between counsel, on June 23, 2011, without either party needing to apply to the Court, the MAXAM Defendants consented to the release of three documents that referenced the Merkin Defendants. (*Id.*)

---

[4] "Jacobs Aff." refers to the Affidavit of Edward J. Jacobs in Support of Trustee's Motion for (I) a Report and Recommendation to the District Court for the Appointment of Special Discovery Masters; (II) an Order Establishing Procedures for Electronic Data Rooms; and (III) an Order Modifying the June 6, 2011 Litigation Protective Order, filed on August 5, 2011.

8

*The Trustee's Motion*

14. On August 5, 2011, the Trustee, asserting that the confidentiality agreements to which he previously agreed are making the discovery process too time-consuming and costly for him, moved this Court to consent to appoint a Special Discovery Master, approve an order establishing procedures for electronic data rooms, and approve an order modifying the Litigation Protective Order. (Trustee's Mot. ¶¶ 14, 20-23.)

15. Specifically, the Trustee proposes to create an e-room system where all of the documents produced by all of the parties will be stored in a database open to defendants across all of the lawsuits. (Trustee's Mot. ¶¶ 22-23, Ex. F.) "E-Data Room 2" would contain all documents already produced and that will be produced to the Trustee, as well as all deposition transcripts and deposition exhibits. (*Id.* ¶ 32, Ex. F at 2.) The creation of E-Data Room 2 would enable defendants to select for production a targeted set of documents from E-Data Room 2, and thus "allow the Trustee to disclose to Merkin Defendants, and any other requesting party, information received from Producing Parties…." (*Id.* ¶¶ 32, 41.)

16. In order to make currently labeled confidential material available in E-Data Room 2, the Trustee seeks to change Paragraph 12 of the Litigation Protective Order. (*Id.* ¶¶ 29, 36.) Paragraph 12 requires the Trustee to provide ten business days' notice to the producing party before producing confidential material in response to a third-party's discovery request so that the producing party can file a motion for a protective order or seek an appropriate remedy. (*See* Litigation Protective Order ¶ 12.) The Trustee's Motion "seeks leave from the requirements of [Paragraph 12] to permit him to make available in discovery such 'confidential material'" in E-Data Room 2 without providing notice to the producing party. (Trustee's Mot. ¶ 39.)

9

17. The Trustee claims that any material included in E-Data Room 2 would be protected because access would be limited to "Professional Eyes Only" and users would be required to sign a Non-Disclosure Agreement. (*Id.* ¶ 23.) Further, "[a]ny parties objecting to the inclusion of specified material in E-Data Room 2 would seek relief from this Court, or the appropriate Special Discovery Master, if appointed, within thirty (30) business days of the entry of the [E-Data Room Order]." (*Id.* ¶ 32.)

18. The Trustee also seeks to end the protections upon which the MAXAM Defendants relied in producing their documents and information by changing Paragraph 19 in the Litigation Protective Order to specify that the Litigation Protective Order now supersedes any confidentiality agreements, including the MAXAM Confidentiality Agreements. (*See id.* ¶¶ 36-37.)

## ARGUMENT

### I. THE TRUSTEE HAS FAILED TO DEMONSTRATE AN EXTRAORDINARY CIRCUMSTANCE OR COMPELLING NEED SUFFICIENT TO MODIFY THE MAXAM CONFIDENTIALITY AGREEMENTS.

When a party seeks to modify a protective order and another party has "reasonably relied" on it, the moving party must meet the heightened standard of showing an "extraordinary circumstance or compelling need." *In re September 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (citing *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)); *see also SEC v. TheStreet.Com*, 273 F.3d 222 (2d Cir. 2001) (reaffirming the "extraordinary circumstance or compelling need" standard in order to seal the record, but holding that, where documents are not "judicial documents"—i.e., documents not expressly relied upon by the court—and where the documents have been produced pursuant to a confidentiality agreement or order, there is a presumption against public access); *Davis v. Transamerica Commercial Fin. Corp.*, No. 93 Civ. 5177 (RAG), 1995 WL 534294 at *3 (N.D. Ill. Sept. 5, 1995) ("protective orders agreed upon by

10

the parties to a lawsuit are to be accorded great weight, and absent exceptional considerations, retroactive modification of such orders ordinarily should not be allowed.") (citation omitted). Courts have applied this heightened standard to a party's reliance on a confidentiality agreement made before a formal protective order was entered. *See, e.g.*, *Botha v. Don King Productions, Inc.*, No. 97 Civ. 7587 (JGK), 1998 WL 88745, at *2 (S.D.N.Y. Feb. 27, 1998); *see also Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393, 404 (W.D. Va. 1987) (when "the proposed modification affects a protective order stipulated to by the parties, as opposed to one imposed by the court, it is clear that the shared and explicit assumption that discovery was for the purposes of one case alone goes a long way toward denying the movant's request without more.") (citation omitted).

### A. The MAXAM Defendants Relied on the Confidentiality Agreements in Producing Documents and Information.

The MAXAM Confidentiality Agreements were the product of many hours of negotiation between the MAXAM Defendants and the Trustee's sophisticated counsel, and reflect important protections, without which, the MAXAM Defendants would not have produced certain non-public, personal and confidential material without application to this Court for a protective order (a process that would have involved time-consuming motions and hearings). (*See* Sklar Decl. ¶¶ 6, 9, 12.)

The MAXAM Defendants reasonably relied on the terms of the MAXAM Confidentiality Agreements in producing their non-public information and personal financial information to third parties. (*See id.*) For example, Ms. Manzke produced personal tax-return information for her and certain family members, at the Trustee's request, and gave testimony about that information—much of which has nothing to do with the issues in this litigation—on

11

the Trustee's assurances that those documents and information would remain confidential pursuant to the terms of the MAXAM Confidentiality Agreements. (*See id.* ¶ 9.)

Likewise, the terms of the MAXAM Confidentiality Agreements were critical to the MAXAM Defendants' production of information governed by the Cayman Order. The Cayman Order only allowed the production of information concerning foreign investors for the purpose of the adversary proceeding, and specifically prohibited what the Trustee is now trying to do: release the information to potentially thousands of third parties. (*See id.* ¶ 11, Ex. C.)The MAXAM Defendants would similarly have had to apply to the Court for protection if they knew that the Trustee was not going to abide by the Cayman Order. Instead, the MAXAM Confidentiality Agreements allowed for the smooth and orderly production of documents and information to the Trustee without the need for additional foreign motion practice.

### B. The Trustee's Desire to Do Less Work is Not a "Compelling Reason" to Modify the Agreements.

The Trustee does not offer any compelling reason or extraordinary circumstance sufficient to justify modifying (and essentially obliterating) the operative MAXAM Confidentiality Agreements.

The Trustee's claim that it would be burdensome to abide by the MAXAM Confidentiality Agreements because it would require providing notice on a production-by-production basis, and require telephone calls, emails, and letters (*see* Trustee Mot. ¶ 16), is unavailing. The desire to reduce costs and burden has been held in other cases not to constitute good cause for relief from a negotiated agreement governing confidentiality. *See, e.g.*, *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 502 (S.D. Iowa 1992) (rejecting plaintiff's proposed modification of stipulated protective order to share discovery with other plaintiffs' counsel in order to reduce cost and inefficiencies because "the circumstances which allegedly require

12

modification of the protective order should have been apparent to [plaintiff] at the time he entered into the protective order."); *Omega Homes, Inc.*, 656 F. Supp. at 404 (holding that saving time and expense was not a compelling reason to justify abrogating a protective order governing confidential material that sophisticated counsel had previously negotiated and stipulated to). Further, the Trustee knew exactly how many parties he had subpoenaed and how many confidentiality agreements he had negotiated and what the terms of those agreements were. The MAXAM Defendants should not be punished for the Trustee's poor planning.

That the Trustee might believe that certain "confidential" designations by some defendants were excessive or inappropriate, and might want to challenge those designations, is not sufficient cause to set aside previously negotiated and agreed upon confidentiality agreements. Indeed, the confidentiality agreements, including the MAXAM Confidentiality Agreements, provide a mechanism by which the Trustee can challenge confidentiality designations. (*See* Trustee's Mot. ¶ 8, Ex. C; Sklar Decl. ¶ 5, Ex. A.) That mechanism has worked between the parties without the need for motion practice or Court intervention each time an issue has arisen. The Trustee should not now be permitted, under the guise of discovery conveniences that were foreseeable at the time of those promises (and explicitly provided for), to abrogate his agreements governing confidentiality.

## II. E-DATA ROOM 2 WOULD NOT SUFFICIENTLY PROTECT THE MAXAM DEFENDANTS' NON-PUBLIC OR CONFIDENTIAL MATERIAL.

The MAXAM Defendants will be harmed by the Trustee's proposed "E-Data Room 2."[5] The E-Data Room Order seeks to brush aside federal discovery rules and unilaterally produce all of the MAXAM Defendants' information in an E-Data Room accessible by hundreds, and

---

[5] The Trustee's claim that his proposed process will ensure confidentiality of the information–because the other defendants will be bound by the Non-Disclosure Agreement and because E-Data Room 2 will be "Professionals' Eyes Only"–is meaningless given the number of defendants in the adversary proceedings that will have access to all of the produced documents.

13

potentially thousands, of third parties.[6] (Trustee's Mot. ¶¶ 32, 43-44.) The E-Data Room Order provides that any other defendant could "review the documents… make selections and those selections will be provided to defendants by the Trustee" (E-Data Room Order at 2), without mention of whether those documents are relevant to "any party's claim or defense."

The Trustee's proposed E-Data Room 2 allows for every party to every litigation brought by the Trustee to initially view (and potentially receive) the MAXAM Defendants' documents, regardless of whether those documents are relevant or not to the "claims and defenses" of those other parties. This unlimited "open file" approach is itself a compelling reason to deny the Trustee's Motion, especially given the non-public and/or confidential nature of many of the documents. *See, e.g.*, *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 306 (N.D. Ill. 1993) (although law encourages sharing of non-confidential information with other litigants, such principle does not apply to sharing of confidential information under protective order limiting access to certain identified individuals).

Under the MAXAM Confidentiality Agreements, the Trustee has to ask the MAXAM Defendants whether it can produce certain material to third parties in response to their document requests and the MAXAM Defendants can seek protection from that disclosure, if necessary. Under the Trustee's plan, the MAXAM Defendants' documents would be accessible and ultimately producible to third parties if the Trustee determined they were relevant to a third party's document request.

Indeed, the Trustee's claim that the Merkin Requests would require the Trustee to produce "every" document the MAXAM Defendants (and every other defendant) has produced

---

[6] Discovery rules such as Federal Rules of Civil Procedure ("Rule") 26, 30, 33, and 34 are applicable to adversary proceedings. *See* Fed. R. Bank. P. 7026, 7030, 7033, 7034 and 9014. If an adversary defendant wants to seek discovery from the MAXAM Defendants, under the Rules, the MAXAM Defendants could object to those discovery requests for relevance, in addition to other reasons, and produce any relevant documents subject to a confidentiality agreement.

14

illustrates the problem with giving the Trustee such unilateral discretion to produce defendants' documents. As explained above, the Merkin Requests essentially seek documents from the Trustee that relate to whether any defendant knew about Madoff's fraud or assisted Madoff's fraud. They do not, as the Trustee claims, seek "every" document produced, and it is difficult to fathom how the Merkin Defendants would be entitled to every document the MAXAM Defendants produced (for example, one would be hard-pressed to articulate how Ms. Manzke's tax returns or the names of foreign investors have anything to do with knowledge about or assistance with Madoff's fraud, let alone how they are in any way relevant to the Merkin Defendants' or the Trustee's "claims or defense" in the Merkin case). *See, e.g.*, *In re Almatis B.V.*, No. 10-12308 (MG), 2010 WL 4877868, at *3-6 (Bankr. S.D.N.Y. Nov. 24, 2010) (denying motion to modify confidentiality stipulation where third party sought documents that debtors had produced pursuant to a Rule 2004 subpoena and a confidentiality stipulation because, among other reasons, the moving party had not filed an action against the debtors; thus the discovery sought could not possibly be "relevant to any party's claim or defense."). Yet, the Trustee's proposed E-Data Room 2 appears to allow the Merkin Defendants to access to all of the MAXAM Defendants documents, based on his definition of relevance, and without the protections from disclosure that the MAXAM Confidentiality Agreements provide.

When the MAXAM Defendants produced non-public or confidential documents to the Trustee, they did so relying on the assurances of the MAXAM Confidentiality Agreements and the Cayman Order that those documents would not be put into a mass data room to be seen by a multitude of parties that have nothing to do with the MAXAM Defendants or the Trustee's allegations against them. To permit the Trustee "to conduct discovery under one set of rules and

15

then have the court abrogate those rules after [he] has achieved his desired result would be to countenance discovery by ambush." *Jochims*, 145 F.R.D. at 503.

**CONCLUSION**

For the reasons stated above, the MAXAM Defendants respectfully request that the Court deny the Trustee's Motion and not modify or supersede the MAXAM Confidentiality Agreements.

Dated: New York, New York         KOBRE & KIM LLP
August 31, 2011

/s/ Jonathan D. Cogan

Jonathan D. Cogan
(jonathan.cogan@kobrekim.com)
Michael S. Kim
(michael.kim@kobrekim.com)
Carrie A. Tendler
(carrie.tendler@kobrekim.com)
800 Third Avenue
New York, New York 10022
Telephone: +1 212 488 1200; Fax: +1 212 488 1220

Maggie E. Sklar (admitted *pro hac vice*)
(maggie.sklar@kobrekim.com)
1919 M Street, N.W.
Washington, D.C. 20036
Telephone: +1 202 664 1900; Fax: +1 202 664 1920

*Attorneys for MAXAM Capital Management LLC, MAXAM Capital GP LLC, Maxam Absolute Return Fund Limited, Suzanne Hammond, Sandra L. Manzke, Sandra L. Manzke Revocable Trust, Walker Manzke, and April Bukofser Manzke*

WOLLMUTH MAHER & DEUTSCH LLP

/s/ James N. Lawlor

James N. Lawlor
(jlawlor@wmd-law.com)
One Gateway Center
Newark, New Jersey 07102
Telephone: +1 973 733 9200; Fax: +1 973 733 9292

To: All Counsel of Record

*Attorneys for MAXAM Absolute Return Fund LP*

17