**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

SECURITIES INVESTOR PROTECTION
CORPORATION,

Trustee-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

Defendant.

In re:

BERNARD L. MADOFF,

Debtor.

------------------------------------------------------------- x

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

Plaintiff,

v.

NATIXIS, NATIXIS CORPORATE &
INVESTMENT BANK (f/k/a IXIS
CORPORATE & INVESTMENT BANK),
NATIXIS FINANCIAL PRODUCTS, INC.,
BLOOM ASSET HOLDINGS FUND, and
TENSYR LIMITED,

Defendants.

------------------------------------------------------------- x

|  |  |
|---|---|
| : | Adv. Pro. No. 08-01789 (BRL) |
| : | SIPA Liquidation |
| : | (Substantively Consolidated) |
| : | Adv. Pro. No. 10-05353 (BRL) |
| : | **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF TENSYR LIMITED'S**
**MOTION TO DISMISS THE TRUSTEE'S COMPLAINT**
**OR IN THE ALTERNATIVE TO STAY THE ACTION**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND.......................................................................................4

    A. Tensyr Is a Foreign Structured Investment Vehicle that Operated
       Abroad......................................................................................................4

    B. The Trustee's Settlement with Fairfield Sentry ......................................5

ARGUMENT..............................................................................................................5

I.    ALL OF THE CLAIMS SHOULD BE DISMISSED BECAUSE THE
      TRUSTEE FAILS TO ESTABLISH PERSONAL JURISDICTION
      OVER TENSYR .................................................................................................5

    A. The Trustee's Conclusory Allegations Do Not Support Jurisdiction under
       Federal Law ..............................................................................................6

    B. The Trustee's Conclusory Allegations Do Not Support Jurisdiction under
       New York Law...........................................................................................9

II.   ALL OF THE CLAIMS SHOULD BE DISMISSED BECAUSE THE
      BANKRUPTCY CODE DOES NOT APPLY TO THE ALLEGED
      SUBSEQUENT TRANSFERS TO TENSYR ......................................................10

    A. The Bankruptcy Code Does Not Reflect Congressional Intent to Apply
       Section 550 to Foreign Transfers..........................................................10

    B. The Trustee Fails to Plead Any Facts from which to Infer that the
       Transfers to Tensyr Are within the Reach of Section 550.....................12

III.  ALL OF THE CLAIMS SHOULD BE DISMISSED BECAUSE THE
      TRUSTEE HAS NOT "AVOIDED" THE TRANSFERS TO THE
      INITIAL TRANSFEREE.....................................................................................13

    A. The Trustee Cannot Recover from Tensyr under Section 550 Unless the
       Trustee Has Already "Avoided" the Initial Transfers to Fairfield Sentry .............13

    B. The Trustee Does Not, and Cannot, Plead that He Has Avoided the Initial
       Transfers to Fairfield Sentry .................................................................17

IV.    SECTION 546(e) BARS THE TRUSTEE FROM RECOVERING FROM
TENSYR UNDER PREFERENCE, CONSTRUCTIVE FRAUDULENT
TRANSFER, AND STATE LAW THEORIES....................................................17

    A.  The Trustee Cannot Avoid Transfers to Tensyr Because They Are
Protected Under Section 546(e) ...........................................................................18

    B.  The Trustee Cannot Avoid Transfers from Fairfield Sentry to Tensyr
Because They Are Protected Settlement Payments ...............................................20

V.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE
TRUSTEE HAS INSUFFICIENTLY PLEADED THE AVOIDANCE
CLAIMS .....................................................................................................................21

    A.  The Trustee Has Failed to Plead that Tensyr Received Any Preference
Payments under U.S.C. § 547 (Count 1 of the Complaint)...................................22

    B.  The Trustee Has Failed to Plead that Tensyr Did Not Take for Value, in
Good Faith, and without Knowledge of the Fraud (Counts 1 – 7 of the
Complaint) ............................................................................................................24

    C.  The Trustee Has Failed to Plead that Tensyr Had the Intent Required to
Avoid Transfers under NYDCL § 276 (Count 4 of the Complaint).....................26

    D.  The Trustee Has Failed to Plead that Tensyr Took for Less than
Equivalent Value as Required by NYDCL §§ 273 – 275 (Counts 5 – 7 of
the Complaint) ......................................................................................................27

VI.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED
PENDING THE OUTCOME OF ACTIONS AGAINST INITIAL
TRANSFEREES AND NET WINNERS ..............................................................28

CONCLUSION................................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Asahi Metal Indus. Co. v. Super. Ct. Cal.*,
480 U.S. 102 (1987)................................................................................................................7

*Ashcroft v. Iqbal*,
566 U.S. ___, 129 S. Ct. 1937 (2009)............................................................................ passim

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*,
256 B.R. 664 (Bankr. S.D.N.Y. 2000)....................................................................................25

*Benjamin Sheridan Corp. v. Benjamin Air Rifle Co.*,
827 F. Supp. 171 (W.D.N.Y. 1993)........................................................................................10

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..................................................................................................................8

*Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.*,
117 F.3d 655 (2d Cir. 1997)...................................................................................................21

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992).........................................................................................................13, 14

*Contemporary Indus. Corp. v. Frost*,
564 F.3d 981 (8th Cir. 2009) .................................................................................................18

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
949 F.2d 42 (2d Cir. 1991)........................................................................................................4

*Cruisephone, Inc. v. Cruise Ships Catering & Servs. N.V. (In re Cruisephone, Inc.)*,
278 B.R. 325 (Bankr. E.D.N.Y. 2002)......................................................................................6

*Daly v. Deptula (In re Carrozzella & Richardson)*,
286 B.R. 480 (D. Conn. 2002)................................................................................................25

*Enron Creditors Recovery Corp v. Alfa (In re Enron Creditors Recovery Corp.)*,
Docket Nos. 09-5122-bk (L), 09-5142-bk, 2011 WL 2536101 (2d Cir. June 28, 2011) ........20

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
341 B.R. 451 (Bankr. S.D.N.Y. 2005).....................................................................................19

*Enron Corp. v. Int'l Fin. Corp.* (In re Enron Corp.),
343 B.R. 75 (Bankr. S.D.N.Y. 2006). .................................................................................14, 15

*Enron Creditors Recovery Corp. v. Int'l Fin. Corp. (In re Enron Creditors Recovery Corp.)*,
  388 B.R. 489 (S.D.N.Y. 2008) .......................................................................................14

*Future Ways, Inc. v. Odiorne*,
  697 F. Supp. 1339 (S.D.N.Y. 1988) ...............................................................................9

*Geltzer v. Fur Warehouse, Ltd. (In re Furs by Albert & Marc Kaufman, Inc.)*,
  No. 05-1838, 2006 WL 3735621 (Bankr. S.D.N.Y. Dec. 14, 2006) .......................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011)..............................................................................................2, 7

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
  310 B.R. 500 (Bankr. S.D.N.Y. 2002).....................................................................26, 27

*Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*,
  230 B.R. 101 (Bankr. N.D. Ohio 1998) ...............................................................15, 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)......................................................................................................6

*Huff v. Cruz Contracting Corp.*,
  643 F. Supp. 2d 344 (S.D.N.Y. 2009).........................................................................16

*In re Int'l Admin. Servs., Inc.*,
  408 F.3d 689 (11th Cir. 2005) ...................................................................................16

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005).........................................................................................26

*In re Stable Mews Assocs.*,
  35 B.R. 603 (Bankr. S.D.N.Y. 1983) ..........................................................................13

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
  893 F. Supp. 1251 (S.D.N.Y. 1995) ............................................................................10

*J. McIntyre Mach., Ltd. v. Nicastro*,
  131 S. Ct. 2780 (2011)..............................................................................................2, 7

*Lee v. Bankers Trust Co.*,
  166 F.3d 540 (2d Cir. 1999).......................................................................................13

*Lustig v. Hickey (In re Hickey)*,
  168 B.R. 840 (Bankr. W.D.N.Y. 1994) .......................................................................24

*Maxwell Commc'n Corp. PLC v. Societe Generale PLC (In re Maxwell Commc'n Corp.)*,
  186 B.R. 807 (S.D.N.Y. 1995).....................................................................................11

*Midland Euro Exch. Inc. v. Swiss Fin. Corp. (In re Midland Euro Exch. Inc. )*
    347 B.R. 708 (Bankr. C.D. Cal. 2006)................................................................11, 12

*Morrison v. Nat'l Austr. Bank Ltd.*,
    561 U.S. --, 130 S. Ct. 2869 (2010) .....................................................2, 10, 11, 12

*Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*,
    398 B.R. 761 (Bankr. S.D.N.Y. 2008) ...................................................................26

*Nader v. Kurt Getschaw & Phillip Gertchaw, Inc.* ,
    No. 99 CIV. 11556 (LAP), 2000 WL 1471553 (S.D.N.Y. Sept. 29, 2000) .......................9

*NeoDevices, Inc.v. NeoMed, Inc.*,
    Civil No. 08-cv-375-SM, 2009 U.S. Dist. LEXIS 19987 (D.N.H. Mar. 12, 2009)..............8, 9

*Norex Petroleum Ltd. v. Access Indus.*,
    631 F.3d 29 (2d Cir. 2010)................................................................11, 12, 13, 17

*Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co., Inc.)*,
    371 B.R. 589 (Bankr. D.N.H. 2007) .....................................................................16

*Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen L.L.C.)*,
    431 B.R. 337 (Bankr. S.D.N.Y. 2010) .............................................................. 22-23

*Perez v. Westchester Cnty. Dep't of Corr.*,
    587 F.3d 143 (2d Cir. 2009)...............................................................................16

*Rollins v. People's Bank Corp.*,
    No. 03 Civ. 7930 (GBD), 2004 WL 2725039 (S.D.N.Y. Nov. 29, 2004) .........................9

*Sealord Marine Co. v. Am. Bureau of Shipping*,
    229 F. Supp. 2d 260 (S.D.N.Y. 2002).....................................................................8

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)...............................................................................26

*Spiniello Cos. v. Infrastructure Techs., Inc.*,
    Civ. No. 10-04492 (WHW), 2011 U.S. Dist. LEXIS 49736 (D.N.J. May 10, 2011)............8, 9

*Teligent, Inc. v. Banda 26, S.A. (In re Teligent, Inc.)*,
    Nos. 01-12974 (SMB), 03-3577, 2004 WL 724945 (Bankr. S.D.N.Y. March 30, 2004) ...............................................................................................................5

*Wasserman v. Bressman (In re Bressman)*,
    327 F.3d 229 (3d Cir. 2003)................................................................................24

*Weinman v. Simons (In re Slack-Horner Foundries Co.)*,
  971 F.2d 577 (10th Cir. 1992) ...................................................................................16

*Yoppolo v. Liberty Mortg. (In re Morgan)*,
  276 B.R. 785 (Bankr. N.D. Ohio 2001) ...............................................................15, 16

**STATUTES AND RULES**

11 U.S.C. § 101 ...................................................................................................18, 19, 20

11 U.S.C. § 109 ...................................................................................................................16

11 U.S.C. § 362 ...................................................................................................................16

11 U.S.C. § 502 .............................................................................................................15, 16

11 U.S.C. § 522 ...................................................................................................................16

11 U.S.C. § 541 ...................................................................................................................11

11 U.S.C. § 544 .............................................................................................................11, 12

11 U.S.C. § 546 ...........................................................................................................*passim*

11 U.S.C. § 547 ...........................................................................................................*passim*

11 U.S.C. § 548 ...................................................................................................................11

11 U.S.C. § 550 ...........................................................................................................*passim*

11 U.S.C. § 551 .............................................................................................................11, 12

11 U.S.C. § 561 ...................................................................................................................20

11 U.S.C. § 724 ...................................................................................................................16

11 U.S.C. § 741 ...................................................................................................18, 19, 20

Fed. R. Civ. P. 8 ....................................................................................................1, 21, 24

Fed. R. Civ. P. 9 .........................................................................................................*passim*

Fed. R. Civ. P. 12 .................................................................................................................1

Fed. R. Bankr. P. 7008 ...................................................................................................1, 21

Fed. R. Bankr. P. 7009 .......................................................................................1, 21, 26, 27

Fed. R. Bankr. P. 7012 ...................................................................................................1, 5

N.Y. C.P.L.R. § 301 ...............................................................................................10

N.Y. C.P.L.R. § 302 ...........................................................................................6, 10

N.Y. Debt. & Cred. Law § 272 ...............................................................................27

N.Y. Debt. & Cred. Law § 273 ...............................................................................27

N.Y. Debt. & Cred. Law § 274 ...............................................................................27

N.Y. Debt. & Cred. Law § 275 ...............................................................................27

N.Y. Debt. & Cred. Law § 276 ...............................................................................26

**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004) ...................................................................16

Defendant Tensyr Limited ("Tensyr") submits this memorandum of law in support of its motion for an Order dismissing the Trustee's Complaint (the "Complaint" or "Compl."), dated December 8, 2010 [Docket No. 1], with prejudice, pursuant to Federal Rules of Civil Procedure (the "Federal Rules") 8, 9, and 12, made applicable here by Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7008, 7009, and 7012.

## PRELIMINARY STATEMENT

Seeking "clawbacks" for money allegedly transferred from Fairfield Sentry Limited ("Fairfield Sentry"), a fund based in the British Virgin Islands, the Trustee has brought this action against Tensyr, a structured investment vehicle created under the laws of Jersey (of the Channel Islands) with no alleged ties to the United States.  According to the Trustee's own allegations, Tensyr invested over $450 million in Fairfield Sentry and received redemptions of  $30 million.  Compl. ¶ 22.  By any standard, Tensyr is clearly a "net loser" and a victim of a massive Ponzi scheme and should be treated as such.  These claims are deeply inequitable.

In any event, this action exceeds the reach of this Court's jurisdiction and the territorial limits of the Bankruptcy Code, as well as the substantive limitations of the Bankruptcy Code on attempts to avoid subsequent transfers to parties like Tensyr.[1]  Indeed, the Trustee's extreme positions are irreconcilable with recent decisions of the United States Supreme Court regarding these very issues.

With respect to *in personam* jurisdiction over Tensyr, the Trustee has alleged no facts from which this Court could plausibly infer that Tensyr has had the requisite meaningful contacts with this forum to justify asserting of jurisdiction over Tensyr under the Due

---

[1]    References to the "Bankruptcy Code" or the "Code" in this Memorandum refer to Title 11 of the United States Code.

1

Process Clause of the Constitution or the New York long-arm statute invoked in the

Complaint.  The Trustee's abject failure to do so is especially striking because, just a few

months ago, the United States Supreme Court reversed two State supreme courts that found

*in personam* jurisdiction over foreign defendants with similarly tenuous contacts with the

States in those cases.[2]  Consistent with those recent decisions, the sole fact that the Trustee

has asserted—namely, that Tensyr entered into a contract with Fairfield Sentry (*not* the

Trustee) that contained a New York choice of law clause for certain disputes between those

parties (i.e., *not* the Trustee)—has been roundly rejected by courts as insufficient to

establish jurisdiction.  Therefore, because the Trustee has failed to carry his burden to allege

facts from which this Court could plausibly infer that Tensyr is subject to this Court's

jurisdiction, dismissal is required.

As an independent ground for dismissal of every claim, the Trustee also fails to meet

his burden to plead facts from which the Court could plausibly infer that the transfers to

Tensyr that he seeks to avoid are domestic.  Indeed, he alleges no such facts.  That failure is

fatal because the Bankruptcy Code provisions invoked by the Trustee do not have

extraterritorial reach.  In *Morrison v. National Australia Bank Ltd.*, the Supreme Court

recently overruled prior case law and held that United States statutes do not apply

extraterritorially absent a "clear indication" of the Congress' intent that the statute apply

extraterritorially.  The Congress expressed no such intent in the Bankruptcy Code sections

that the Trustee relies upon in this action.  To apply them to Tensyr would be effectively to

write extraterritorial application into the Bankruptcy Code, which *Morrison* precludes.

---

[2]    *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (reversing a finding of jurisdiction under the doctrine of general *in personam* jurisdiction); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (reversing a finding of jurisdiction under the doctrine of specific *in personam* jurisdiction).

As another independent ground for dismissal, the Bankruptcy Code contains its own limitations that bar every claim against Tensyr.  *First*, section 550 of the Bankruptcy Code *explicitly* does not allow recovery of subsequent transfers to Tensyr unless the alleged initial transfers to Fairfield Sentry have previously been "avoided."  The Trustee, however, does not plead that any of the initial transfers that he seeks to recover from Tensyr have been avoided.  Nor can he do so:  the Trustee bartered away his ability to avoid the initial transfers in his settlement agreement with Fairfield Sentry.  *Second*, the initial and subsequent transfers at issue cannot be avoided because they represent protected transfers under section 546(e) of the Bankruptcy Code.  In particular, the Trustee's allegations establish that the transfers are protected as payments by "financial institutions" (JPMorgan Chase & Co.) in connection with "securities contracts," as "settlement payments" made by a stockbroker (BLMIS) or financial institution, and as settlement payments by a "financial participant" (Fairfield Sentry) within the meaning of the Code.  For each of the foregoing reasons, dismissal with prejudice is required.

Finally, the Complaint does not allege *any* facts from which the Court could plausibly infer that Tensyr knew or should have known of BLMIS' fraud or insolvency—none, not even as to the so-called red flags otherwise discussed in the Complaint.  The Trustee has thoroughly shirked his burden to allege such facts, and as a result, the Complaint amounts to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," which that is not enough to survive this motion.  *Ashcroft v. Iqbal*, No. 07-1015, 566 U.S. ─, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

The Trustee's claims exceed the boundaries of the applicable, dispositive laws.  This action should, therefore, be dismissed with prejudice.

## FACTUAL BACKGROUND

The factual recitation below assumes the truth of all well-pleaded facts in the Complaint solely for purposes of this motion to dismiss. Tensyr does not concede the accuracy of any of the allegations in the Complaint.

### A.    Tensyr Is a Foreign Structured Investment Vehicle that Operated Abroad

Tensyr is a structured investment vehicle incorporated in the Bailiwick of Jersey, of the Channel Islands. Compl. ¶¶ 66, 141. According to the Complaint, Tensyr was created in December 2006 to issue notes linked to shares it would purchase in Fairfield Sentry, a fund based in the British Virgin Islands that invested in Bernard L. Madoff Investment Securities LLC ("BLMIS").[3] *Id.* ¶¶ 22, 141. BLMIS was registered as a broker-dealer with the Securities and Exchange Commission and was a member of the Securities Investor Protection Corporation. *Id.* ¶ 43. BLMIS made payments to its customers, including Fairfield Sentry, through its bank, JPMorgan Chase & Co. ("JPMorgan"). *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (BRL) (Bankr. S.D.N.Y. May 18, 2009), Complaint [Docket. No. 1] (hereinafter, the "Fairfield Complaint"), ¶¶ 37, 38 (identifying JPMorgan as the bank used to hold BLMIS' account).[4]

According to the Trustee, Tensyr purchased approximately $450 million of shares of Fairfield Sentry in 2006 and 2007 pursuant to a contract governed by New York law. *Id.* ¶¶ 22, 35, 147. The Trustee alleges that Tensyr redeemed at least $30 million on unspecified dates, at times during which, on "information and belief," Tensyr "had knowledge of

---

[3]    The Trustee alleges that the Fairfield Greenwich Group and Natixis had a role in the creation of Tensyr but does not explain why that has any relevance to any element of his claim. *See* Compl. ¶ 137.

[4]    This Court may consider the Trustee's complaint as filed in adversary proceeding number 09-1239 (BRL) (Bankr. S.D.N.Y. May 18, 2009) [Docket. No. 1] against Fairfield Sentry because the Trustee referred to that complaint in paragraph 23 of the Complaint against Tensyr. *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (defendants may rely on documents referenced in the complaint).

numerous red flags of possible fraudulent activity by Madoff." *Id.* ¶¶ 22-23.  Without

alleging any specific contacts with New York or the United States, the Trustee asserts that

Tensyr "[undertook] significant commercial activities in New York, and derived significant

revenue from New York." *Id.* ¶ 35.  The Complaint is *silent* on the issues of Tensyr's

activities and knowledge apart from those assertions.

### B.    The Trustee's Settlement with Fairfield Sentry

On July 13, 2011, this Court entered a consent judgment approving a settlement

between Fairfield Sentry and the Trustee (the "Fairfield Settlement").  Consent Judgment,

*Picard v. Fairfield Sentry Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 09-1239, docket

no. 109 (Bankr. S.D.N.Y. July 13, 2011); Motion for Entry of Order, *Picard v. Fairfield*

*Sentry Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 09-1239, docket no. 69 (Bankr.

S.D.N.Y. July 13, 2011) (attaching the Fairfield Settlement as Exhibit A).  According to the

Fairfield Settlement, the Trustee has reduced Fairfield Sentry's customer claim from

approximately $1.2 billion to a maximum of $230 million and has agreed to forego recovery

from Fairfield Sentry of $1.13 billion in allegedly fraudulent transfers and preferences.

Fairfield Settlement ¶ 1.  The Fairfield Settlement does not provide that any of the transfers

from BLMIS to Fairfield Sentry have been "avoided" under the Bankruptcy Code.

### ARGUMENT

### I.    ALL OF THE CLAIMS SHOULD BE DISMISSED BECAUSE THE TRUSTEE FAILS TO ESTABLISH PERSONAL JURISDICTION OVER TENSYR

To survive a motion to dismiss under Bankruptcy Rule 7012(b)(2), the Trustee must

make a *prima facie* showing of *in personam* jurisdiction by setting forth factual allegations rather

than legal conclusions.  *Teligent, Inc. v. Banda 26, S.A. (In re Teligent, Inc.)*, Nos. 01-12974

(SMB), 03-3577, 2004 WL 724945, at *3-4, *6 (Bankr. S.D.N.Y. Mar. 30, 2004).  To make a

*prima facie* case of jurisdiction under federal law (including the Due Process Clause), the

Trustee's allegations must show that Tensyr has the requisite minimum contacts with the United

States and that exercising jurisdiction over Tensyr would comport with principles of "fair play

and substantial justice." *See Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re

Cruisephone, Inc.)*, 278 B.R. 325, 331 (Bankr. E.D.N.Y. 2002). The Trustee has asserted that

this Court can exercise personal jurisdiction over Tensyr under New York law. Compl. ¶ 36.

New York's long-arm statute permits the exercise of personal jurisdiction over a foreign

defendant if the requirements of Due Process are satisfied and if the circumstances outlined in

N.Y. C.P.L.R. § 302(a) are met.

 This Court does not have personal jurisdiction over Tensyr because the Trustee has

offered only legal conclusions accompanied by the single irrelevant fact that Tensyr entered into

a contract with another party that includes a New York choice of law clause. Such allegations

fail to meet the Trustee's burden to plead facts – not legal conclusions – from which this Court

could plausibly infer that Tensyr had sufficient contacts with New York or with the United States

to establish jurisdiction. Therefore, the Trustee's Complaint should be dismissed.

### A. The Trustee's Conclusory Allegations Do Not Support Jurisdiction under Federal Law

 Federal courts may exercise jurisdiction over foreign defendants if two conditions are

met. First, the plaintiff must allege adequate facts from which to infer either that the foreign

defendant maintains "continuous and systematic" business contacts with the United States to

support general jurisdiction, or that the controversy arises out of a foreign defendant's

meaningful contacts with the forum to support specific jurisdiction. *Helicopteros Nacionales de

Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Second, if the allegations meet the first

condition, then the plaintiff must allege adequate facts from which to conclude that the exercise

of jurisdiction is reasonable and falls within "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987) (internal citations and quotations omitted).

On June 27, 2011, the United States Supreme Court issued two decisions concerning the ability of U.S. courts to exercise *in personam* jurisdiction over foreign defendants like Tensyr and reversed findings of jurisdiction because, although the foreign defendants had some connection to the fora, their actions were not sufficient to establish jurisdiction. In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, the Supreme Court unanimously reversed the Supreme Court of North Carolina's finding of general *in personam* jurisdiction over a foreign defendant that placed its products into the "stream of commerce" into North Carolina but had no operations there. The Court explained that general jurisdiction over a foreign defendant exists only where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." 131 S. Ct. 2846, 2851 (2011). In *J. McIntyre Machinery, Ltd. v. Nicastro*, the Supreme Court reversed the Supreme Court of New Jersey's finding of specific *in personam* jurisdiction over a foreign defendant that intentionally distributed its products in New Jersey where they allegedly cause plaintiff's personal injury. In that case, Justice Kennedy wrote for four members of the Court, explaining that the inquiry for specific jurisdiction is whether a defendant's activities relating to the transaction in question "manifest an intention to submit to the power of a sovereign." 131 S. Ct. 2780, 2788 (2011); *accord id.* at 2792 (agreeing that specific jurisdiction was lacking because of the foreign defendant's lack of "regular" contacts with the forum) (Breyer, J., joined by Alito, J., concurring). Those Supreme Court decisions—reversing the highest courts of two States—make clear that exacting scrutiny must be applied to ensure that due process is satisfied before a U.S. court may exercise its

judicial power over a foreign defendant.

The Trustee's allegations fall far short of supporting either general or specific jurisdiction. The Trustee offers only two allegations concerning Tensyr's contacts with the United States. Compl. ¶ 35. The Trustee's primary allegation is the very definition of a "legal conclusion," claiming, with no factual explanation, that Tensyr is subject to personal jurisdiction because "it routinely conducted business in New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activities in New York, and derived significant revenue from New York." *Id.* A mere recital of the jurisdictional legal conclusions does not satisfy the Trustee's burden. *Cf. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In addition to that irrelevant legal conclusion, the Trustee alleges that "Tensyr entered into agreements with [Fairfield] Sentry governed by New York law, through which it conducted significant commercial activity in New York." Compl. ¶ 35. The only *fact* contained in that allegation—Tensyr's entry into a contract with a third party that contains a New York choice of law provision—is not sufficient to establish jurisdiction over Tensyr.[5] *See, e.g., Spiniello Cos. v. Infrastructure Techs., Inc.*, Civ. No. 10-04492 (WHW), 2011 U.S. Dist. LEXIS 49736, at *13 n.4 (D.N.J. May 10, 2011) (a choice of law provision is insufficient to establish jurisdiction) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)); *NeoDevices, Inc. v. NeoMed, Inc.*,

---

[5]    The contract between Tensyr and Fairfield Sentry is irrelevant to the Trustee's claims for several reasons, including but not limited to, the follow two reasons. *First*, even if the Trustee (or its privy) were a party to the contract, it is insufficient as a matter of law to establish jurisdiction, as explained in the text above. *Second*, the Trustee obviously cannot take the benefit of a contract to which it is not a party, and the Trustee does not (because he cannot) plead that he is a party (or a privy to a party) to the alleged contract. *See Sealord Marine Co. v. Am. Bureau of Shipping*, 220 F. Supp. 2d 260, 270-71 (S.D.N.Y. 2002) (defendant vessel classification society could not take advantage of the choice of law provision in the contract because it was not a party to the contract).

Civ. No. 08-cv-375-SM, 2009 U.S. Dist. LEXIS 19987, at *24 (D.N.H. Mar. 12, 2009) (same).[6]

Therefore, because the Trustee has failed to allege facts from which this Court could plausibly

infer that it has jurisdiction over Tensyr as required under the U.S. Constitution, the Complaint

should be dismissed as to Tensyr.

      **B.**     **The Trustee's Conclusory Allegations Do Not Support Jurisdiction under New York Law**

The Trustee has also asserted jurisdiction under New York law.  Compl. ¶ 36.  New

York's long-arm statute does not extend to the full reaches of the federal minimum contacts

standard.  *Future Ways, Inc. v. Odiorne*, 697 F. Supp. 1339, 1341 n.2 (S.D.N.Y. Sept. 29,

1988).  As a threshold matter, the invocation of the long-arm statute must comply with the

federal due process standard.  *Rollins v. People's Bank Corp.*, No. 03 Civ. 7930 (GBD),

2004 WL 2725039, at *2 (S.D.N.Y. Nov. 29, 2004) (due process requires "minimum

contacts with the forum state so that asserting personal jurisdiction over the defendant does

not 'offend traditional notions of fair play and substantial justice'"); *Nader v. Kurt*

*Getschaw & Phillip Gertchaw, Inc.*, No. 99 CIV. 11556 (LAP), 2000 WL 1471553, at *3

(S.D.N.Y. 2000) (a federal court applying New York's long-arm statute must "ensure that

invoking jurisdiction 'comports with the requisites of due process'").  As explained in

Section I.A, *supra*, the Trustee's allegations fail to meet that threshold standard.

In any event, the New York long-arm statute only creates jurisdiction over foreign

defendants that have (1) transacted business within the state; (2) committed a tort within the

state; or (3) committed a tort outside of the state "causing injury to person or property within

---

[6]    Indeed, in *Spiniello Companies* and *NeoDevices, Inc.*, the argument for jurisdiction was stronger because the parties seeking to assert jurisdiction were parties to contracts with the defendants that included the choice of law clauses at issue.  Here, the Trustee does not, because he cannot, allege that he or BLMIS is a party to the alleged contract.  Under the those cases, the Trustee could not have relied on the choice of law clause to establish jurisdiction over Tensyr even if he had been a party to Tensyr's contract with Fairfield Sentry; he certainly cannot rely on it as a non-party.

the state."  N.Y. C.P.L.R. § 302(a).  The only fact alleged by the Trustee—Tensyr's entry

into a contract with Fairfield Sentry with a New York choice of law provision—is not a

sufficient basis for jurisdiction under New York's long-arm statute.  *See, e.g.*, *Int'l Customs

Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1260-61 (S.D.N.Y. 1995) (denying

jurisdiction under NY CPLR § 301(a) where only "contact" with New York was New York

choice of law clause in contract); *Benjamin Sheridan Corp. v. Benjamin Air Rifle Co.*, 827

F. Supp. 171, 176 (W.D.N.Y. 1993) ("A choice-of-law clause . . . is insufficient to confer

jurisdiction over a non-domiciliary defendant.").  Because the Trustee makes no other

*factual* allegations relevant to jurisdiction over Tensyr, the Complaint should be dismissed

as to Tensyr.

## II.    ALL OF THE CLAIMS SHOULD BE DISMISSED BECAUSE THE BANKRUPTCY CODE DOES NOT APPLY TO THE ALLEGED SUBSEQUENT TRANSFERS TO TENSYR

Absent a "clearly expressed" intention of the Congress to give extraterritorial effect to a

statute, the statute applies only domestically.  *Morrison v. Nat'l Austr. Bank Ltd.*, -- U.S. --, 130

S. Ct. 2869, 2877–78, (2010).  Under *Morrison*, this Court must dismiss the Complaint because

the Bankruptcy Code does not reflect a "clearly expressed" Congressional intention to give

section 550 extraterritorial effect and because the Complaint does not allege that the transfers

made to Tensyr took place within the United States.

### A.    The Bankruptcy Code Does Not Reflect Congressional Intent to Apply Section 550 to Foreign Transfers

"When a statute gives no clear indication of an extraterritorial application, it has none."

*Morrison*, 130 S. Ct. at 2878.  As recently explained by the Second Circuit, "*Morrison*

wholeheartedly embraces application of the presumption against extraterritoriality, finding that

unless there is an affirmative intention of the Congress clearly expressed to give a statute

10

extraterritorial effect, we must presume it is primarily concerned with domestic conditions."

*Norex Petroleum Ltd. v. Access Indus.*, 631 F.3d 29, 32 (2d Cir. 2010) (internal citation and

quotation omitted).

Nothing in section 550—or any of the other provisions of the Bankruptcy Code invoked

by the Trustee (including 544, 546, 547, 548 and 551)—offers *any* "indication of an

extraterritorial application," let alone a "clear indication" of extraterritorial application.

Therefore, in the words of the Supreme Court, "it has none."  *Morrison*, 130 S. Ct. at 2878.

Indeed, even before *Morrison,* courts persuasively concluded that the key sections of the

Bankruptcy Code that have been invoked by the Trustee here do not apply extraterritorially.  For

example, this Court held that section 547 did not permit the avoidance of preferential transfers

between a UK holding company on the one hand and accounts located in France and the UK on

the other because "*nothing in the language or legislative history of § 547 expresses Congress'*

*intent to apply the statute to foreign transfers*."  *See Maxwell Commc'n Corp. PLC v. Societe*

*Generale PLC (In re Maxwell Commc'n. Corp.)*, 186 B.R. 807, 819 (Bankr. S.D.N.Y. 1995)

(dismissing preference actions because section 547 did not apply extraterritorially) (emphasis

added).[7]  Similarly, another bankruptcy court refused to apply section 548 to extraterritorial

transfers on the basis that the Congress did not express an intention that it apply extraterritorially.

---

[7]    The *Maxwell* bankruptcy examiner argued that the language of section 541, which provides that property
"wherever located and by whomever held" can comprise property of the estate, contemplated section 547's
extraterritorial application.  *In re Maxwell Commc'n Corp. PLC*, 186 B.R. at 819.  This Court rejected the
examiner's proposed unnatural reading of the Bankruptcy Code because preferential transfers only become
property of the estate under section 541 once they are recovered.  In other words, the "wherever located"
language is inapplicable to unrecovered transfers.  *See id.* at 820.  At least one other court has also rejected that
reading as plainly wrong.  *See Midland Euro Exch. Inc. v. Swiss Fin. Corp. (In re Midland Euro Exch. Grp.
Inc.)*, 347 B.R. 708, 719 (Bankr. C.D. Cal. 2006).  In *Midland*, the court characterized the reasoning as
"presume[ing] that the debtor retains a 'legal or equitable' interest in the property transferred pre-petition, or to
paraphrase, that 'property of the estate' includes property transferred but not yet recovered.  It ignores the
language in § 541(a)(1) and (a)(3) that the debtor must have an interest in the property 'as of the
commencement of the case' and that property of the estate includes 'any interest in property that the trustee
*recovers* under section . . . 550 . . . of this title. . . .'"  *Id.*

11

*See Midland Euro Exch. Inc.*, 347 B.R. at 720.[8]

Those cases are especially persuasive because they pre-date *Morrison*, and in *Morrison* the Supreme Court explicitly disapproved of prior decisions that found extraterritorial application of federal statutes based on lesser showings of the intent of Congress. *See Morrison*, 130 S. Ct. at 2878, 2881 (rejecting the Second Circuit's "conduct and effects" test because "[t]he results of judicial-speculation-made-law—divining what Congress would have wanted if it had thought of the situation before the court—demonstrate the wisdom of the presumption against extraterritoriality"). The Supreme Court has now clearly held that statutory provisions that simply imply extraterritorial intent, or policy-based reasoning to apply statutes extraterritorially, are insufficient. *Morrison*, 130 S. Ct. at 2877–78. Under *Morrison*, section 550 does not apply extraterritorially.

### B.    The Trustee Fails to Plead Any Facts from which to Infer that the Transfers to Tensyr Are within the Reach of Section 550

To succeed on this claim, the Trustee has the burden of pleading facts that raise the plausible inference that the alleged transfers from Fairfield Sentry to Tensyr involved substantial activity in the United States. *Norex Petroleum Ltd.*, 631 F.3d at 33 (plaintiff bears the burden of pleading factual allegations of substantial domestic conduct, and, under *Morrison*, "simply alleging that some domestic conduct occurred cannot support a claim of domestic application"). The Trustee alleges no facts from which this Court could plausibly infer that the transfers from Fairfield Sentry to Tensyr were not extraterritorial within the meaning of *Norex*. Rather, the Complaint indicates the contrary, given that the Trustee alleges that both Fairfield Sentry and Tensyr are foreign entities. Compl. ¶¶ 23 (referring to the Trustee's Complaint against Fairfield

---

[8]    The other sections of the Code relied upon by the Trustee—sections 544, 546, and 551—similarly offer no "clear indication" that they apply extraterritorially.

Sentry, which alleges in paragraph 32 that Fairfield Sentry is incorporated in the British Virgin

Islands), 66 (Tensyr is incorporated in Jersey).  Having failed to meet his affirmative pleading

burden under *Norex,* the Trustee's claims against Tensyr should be dismissed.

## III.    ALL OF THE CLAIMS SHOULD BE DISMISSED BECAUSE THE TRUSTEE HAS NOT "AVOIDED" THE TRANSFERS TO THE INITIAL TRANSFEREE

Assuming *arguendo* that the Court finds adequate allegations to support jurisdiction over

Tensyr and that the Code applies to the alleged transfers to Tensyr, the claims should be

dismissed under section 550.  To recover against Tensyr, the Trustee must satisfy the express

requirements of section 550 of the Bankruptcy Code, which requires that an initial transfer must

have been "avoided" before a trustee can recover from a subsequent transfer.  Because the

Trustee cannot now and will never be able to satisfy section 550's requirements, every claim in

the Complaint must be dismissed.

### A.    The Trustee Cannot Recover from Tensyr under Section 550 Unless the Trustee Has Already "Avoided" the Initial Transfers to Fairfield Sentry

The Bankruptcy Code permits the Trustee to recover property or its value from a

subsequent transferee *only* "to the extent that [the] transfer [to the initial transferee] is

*avoided . . . ."* 11 U.S.C. § 550(a) (emphasis added).  Because the statutory language is clear and

unambiguous, courts are obligated to give the language of section 550 its plain meaning.  As

explained by the Supreme Court, "courts must presume that a legislature says in a statute what it

means and means in a statute what it says there.  When the words of a statute are unambiguous,

then, this first canon is also the last: '*judicial inquiry is complete*.'"  *Conn. Nat'l Bank v.*

*Germain*, 503 U.S. 249, 253-54 (1992) (emphasis added); *accord Lee v. Bankers Trust Co.*, 166

F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its

interpretation, and that judicial review must end at the statute's unambiguous terms." (internal

citation omitted)); *In re Stable Mews Assocs.*, 35 B.R. 603, 606 (Bankr. S.D.N.Y. 1983) ("The

plain meaning of statutory language controls its interpretation.").  Therefore, when applying section 550 to the subsequent transfer claims brought by the Trustee against Tensyr, this Court should dismiss those claims unless the Trustee can show that the initial transfers from BLMIS to Fairfield Sentry have been avoided, which they have not.

Indeed, courts in this Circuit have agreed that subsequent transfers may only be recovered after the initial transfers have been avoided.  In *Enron Corporation v. International Finance Corporation*, the Bankruptcy Court held that "the plain language of section 550(a) requires that the transfer *first* be established as improper and *avoided* under one of the avoidance sections of the Bankruptcy Code prior to actual recovery from any transferee."  343 B.R. 75, 84 (Bankr. S.D.N.Y. 2006) (emphasis added).  On appeal to the District Court, Judge Hellerstein agreed that plaintiffs must obtain a "declaration of avoidance" as to a particular transfer to an initial transferee "before" seeking recovery from any subsequent transferee.  *See Enron Creditors Recovery Corp. v. Int'l Fin. Corp. (In re Enron Creditors Recovery Corp.)*, 388 B.R. 489, 490 (S.D.N.Y. 2008); Hr'g Tr. at 27:24-28:3, 38:4-7 Apr. 16, 2008, 07 Civ. 6597 [Docket No. 32] (incorporated by reference into the court's written decision), attached as Exhibit A to the Declaration of Jessica R. Simonoff ("Simonoff Decl.").

The approach in *Enron* is required by the Supreme Court's rules of statutory interpretation because of the clarity of the word "avoided."  *Conn. Nat'l Bank*, 503 U.S. at 253-54.  That approach also makes sense because substituting the word "avoidable" for "avoided" in section 550 would ignore the Congress' construction of the section.  The Congress clearly demonstrated that it knew the difference between the words "avoidable" and "avoided" because it used those two words separately in different sections of the Bankruptcy Code.  For instance,

although the Congress used the word "avoided" in section 550, it chose instead to use the word
"avoidable" in section 502(d).  *In re Enron Corp.*, 343 B.R. at 81 ("[I]n those sections of the
Code where it was intended that a court merely determine whether a transfer was avoidable, the
term 'avoidable' is utilized.").

Substituting the word "avoidable" for "avoided" in section 550 would also render
meaningless other provisions of the Bankruptcy Code relating to avoidance actions for at least
three reasons:

- *First*, as the Bankruptcy Court explained in *Enron*, if the Trustee needed only to establish
  that the initial transfers from BLMIS to Fairfield Sentry were "avoidable" rather than
  "avoided," "then the section 546(a) statute of limitations for commencing an avoidance
  action would be rendered nugatory; as the trustee could still recover even from the initial
  transferee under the 'avoidable' theory even though an avoidance action had not been
  commenced within the requisite two-year statute of limitations."  *Id.* at 82.

- *Second*, under those circumstances, the Trustee "likely would not prosecute an avoidance
  action" because doing so would subject him to the one-year statute of limitations under
  section 550(f)(1).  *Id.*

- *Third*, and consequently, eliminating the need to bring avoidance actions would
  effectively nullify the statute of limitations for recovery actions, which requires
  commencement of a recovery action within one year of "avoidance" of the transfer.  *Id.* at
  83; *see Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*, 230 B.R. 101, 104
  (Bankr. N.D. Ohio 1998) ("[I]f a trustee is not required to first avoid a transfer before
  seeking recovery, there is no starting point for the statute of limitation period in § 550(f)
  to begin to run"); *see also Yoppolo v. Liberty Mortg. (In re Morgan)*, 276 B.R. 785, 790

15

(Bankr. N.D. Ohio 2001) (noting that the Bankruptcy Code provides different statutes of

limitation for avoidance and recovery actions).

For those additional reasons, this Court should refuse to substitute the word "avoidable" for

"avoided" in section 550.  *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 155 (2d Cir.

2009) ("[W]e construe statutes to avoid surplusage whenever possible.").

Therefore, in light of the plain language of section 550, and to avoid rendering

meaningless key provisions of the Code, the Court should find that the Trustee must have

"avoided" the alleged initial transfers to Fairfield Sentry before seeking to recover any alleged

subsequent transfers to Tensyr.[9]  *Accord Weinman v. Simons (In re Slack-Horner Foundries*

*Co.)*, 971 F.2d 577, 580 (10th Cir. 1992); *Geltzer v. Fur Warehouse, Ltd. (In re Furs by Albert &*

*Marc Kaufman, Inc.)*, Adv. Pro. No. 05-1838, 2006 WL 3735621, at *8 (Bankr. S.D.N.Y.

Dec.14, 2006) ("The Trustee cannot recover the value of the transfer from any of the transferees

or beneficiaries unless he first avoids the underlying transfer . . . .  The Trustee has not avoided

these transfers, and accordingly, has failed to prove an essential element of his right to recover

under § 550(a)."); *In re Morgan*, 276 B.R. at 789; *In re Trans-End Tech., Inc.*, 230 B.R. at 104-

05.

---

[9]    Non-binding courts have held otherwise, in error.  *Official Comm. of Unsecured Creditors v. Foss (In re Felt
Mfg. Co.)*, 371 B.R. 589, 638 (Bankr. D.N.H. 2007); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 707 (11th Cir.
2005) ("We are mindful that our reading of § 550(a) does not embrace a strict construction.").  "Avoid and
avoidable are different words used differently in fraudulent conveyance law," Simonoff Decl. Exh. A (Tr. at
8:20-21), but both *Felt Manufacturing* and *International Administrative Services* erroneously treat "avoid" and
"avoidable" as synonyms, *see* 371 B.R. at 638; 408 F.3d at 707.  *See also* Black's Law Dictionary, 146 (8th ed.
2004) ("Black's") (defining "avoid" as a verb that means "[t]o render void") and Black's at 2562 (defining
"avoidable" or "voidable" as an adjective that describes a transaction that can be voided but that is "[v]alid until
annulled").  Further, those courts altered the meaning of Section 550 based on "policy," which is prohibited
where, as here, the statute is clear.  *Huff v. Cruz Contracting Corp.*, 643 F. Supp. 2d 344, 359 (S.D.N.Y. 2009)
("policy considerations," even when "compelling," "do not overcome the plain language of [a] statute").  In any
event, those decisions violate binding principles of statutory interpretation of clear language, render
meaningless the limitations period in 546(a) and 550(f), and ignore impermissibly that Congress knew how to
use the word "avoidable" when it so chose.  *See, e.g.*, 11 U.S.C. §§ 109(c)(5)(D), 362 (b)(24), 502(d),
522(h)(1), 547(c)(6), 547(d), 724(b), 724(b)(1), and 724(b)(4) (all using the word "avoidable).

**B.    The Trustee Does Not, and Cannot, Plead that He Has Avoided the Initial Transfers to Fairfield Sentry**

The Trustee *has not* alleged that any of the initial transfers to Fairfield Sentry have been avoided.  The Trustee's failure to allege this key element of his claim requires dismissal.  *Norex Petroleum Ltd.*, 631 F.3d at 33.  Moreover, the Trustee *cannot* allege that any of the initial transfers to Fairfield Sentry have been avoided because he chose to forego avoidance in favor of settlement.  It is undisputed that the Fairfield Settlement and the Consent Judgment do not avoid the initial transfers to Sentry.  *See* Fairfield Settlement and Consent Judgment.  The Fairfield Settlement notwithstanding, however, the transfers cannot be avoided in any event because they would be protected from avoidance under section 546(e).  *See* Section IV, *infra*.  There is, therefore, no question that the Trustee has not alleged and, indeed, cannot allege that the initial transfers to Fairfield Sentry have been avoided.  The Trustee's claims to recover such transfers from Tensyr should therefore be dismissed with prejudice.

**IV.    SECTION 546(E) BARS THE TRUSTEE FROM RECOVERING FROM TENSYR UNDER PREFERENCE, CONSTRUCTIVE FRAUDULENT TRANSFER, AND STATE LAW THEORIES**

Section 546(e) of the Bankruptcy Code requires this Court to reject the Trustee's attempt to avoid preferential or constructively fraudulent transfers, as well as transfers otherwise avoidable under state law, if the transfer is (i) made by a stockbroker or financial institution in connection with a securities contract or (ii) made by a stockbroker, financial institution, or financial participant and constitutes a settlement payment.  Because the Complaint, on its face, shows that the transfers to Tensyr were protected under section 546(e) or were subsequent transfers of otherwise protected transfers, the Trustee's claims under preference, constructive fraudulent transfer, and state law theories in Counts 1 and 3 through 7 must be dismissed.

A.    **The Trustee Cannot Avoid Transfers to Tensyr Because They Are Protected Under Section 546(e)**

As explained above, the Trustee may only recover subsequent transfers received by Tensyr if the transfers to the initial transferee have been "avoided."  11 U.S.C. § 550; *see* Section III, *supra*.  However, under his settlement agreement with Fairfield Sentry, the Trustee contracted away his ability to do so.  *See* Section III, *supra*.  Moreover, *even* if the Trustee had not lost that ability, he still would be unable to avoid the transfers from BLMIS to Fairfield Sentry, the initial transferee, because they are protected by section 546(e).  As a consequence, any subsequent transfers to Tensyr are not recoverable as a matter of law, and the Trustee's claims should be dismissed.

1.    *The Transfers from BLMIS to Fairfield Sentry Cannot Be Avoided Because They Were Made by a Stockbroker or Financial Institution in Connection with a Securities Contract*

Section 546(e) protects transfers made "by or to (or for the benefit of) a . . . stockbroker [or] financial institution . . . in connection with a securities contract . . . ."  11 U.S.C. § 546(e).  The Bankruptcy Code defines a "securities contract" as "a contract for the purchase, sale, or loan of a security…or option on any of the foregoing, including an option to purchase or sell any such security" without regard to whether any securities have actually been sold.  11 U.S.C. §741(7)(A).  The Bankruptcy Code defines a "financial institution" as a "commercial or savings bank."  11 U.S.C. § 101(22); *see also Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 987 (8th Cir. 2009) (holding that a "bank" is a "financial institution" for purposes of 11 U.S.C. § 546(e)).  Finally, the Bankruptcy Code defines a stockbroker as, among other things, a person whose customer is an "entity that has a claim against a person arising out of … (ii) a deposit of cash, a security, or other property with such person for the purpose of purchasing or selling a security…."  11 U.S.C. §§ 101(53A), 741(2)(B)(ii).

18

Under those provisions, the initial transfers at issue, which are between BLMIS, or JPMorgan acting for the benefit of BLMIS, on the one hand, and Fairfield Sentry on the other, are clearly protected by section 546(e). *First*, the Trustee alleges that JPMorgan, a bank and consequently a "financial institution" under section 546(e), held BLMIS' accounts and accepted and made transfers on BLMIS' behalf. *See* 11 U.S.C. § 101(22); *see also* Fairfield Complaint ¶¶ 37, 38 (identifying JPMorgan as the bank used to hold BLMIS' account). *Second*, the Trustee alleges that BLMIS, a registered broker-dealer, entered into agreements with Fairfield Sentry for "securities trading activities," qualifying BLMIS as a "stockbroker." Compl. ¶ 43; 11 U.S.C. §101(53A); Fairfield Complaint ¶ 37. *Third*, the Trustee alleges that the contract between BLMIS and Fairfield Sentry was to be performed "through securities trading activities." Fairfield Complaint ¶ 37. Therefore, any transfers made by BLMIS to Fairfield Sentry pursuant to that agreement were made "in connection with a securities contract." Fairfield Complaint ¶ 37. Accordingly, the alleged initial transfers are not subject to avoidance because they were made by a stockbroker or financial institution "in connection with a securities contract," and the Complaint should be dismissed. *See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp)*, 341 B.R. 451, 455 n.3 (Bankr. S.D.N.Y. 2005) (granting a motion to dismiss based on 546(e) because the motion raised "an affirmative defense that appear[ed] on the face of the complaint").

> 2.    *The Transfers from BLMIS to Fairfield Sentry Cannot Be Avoided Because They Were Protected Settlement Payments Made by a Stockbroker or Financial Institution*

Section 546(e) also exempts settlement payments "made by or to (or for the benefit of) a . . . stockbroker [or] financial institution." 11 U.S.C. § 546(e). The Bankruptcy Code defines a "settlement payment" as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). The term

19

"settlement payment" must be interpreted "extremely broad[ly]." *Enron Creditors Recovery Corp v. Alfa (In re Enron Creditors Recovery Corp.)*, Docket Nos. 09-5122-bk (L), 09-5142-bk (Con), 2011 WL 2536101, at *5 (2d Cir. June 28, 2011) (collecting cases). Several United States Courts of Appeal "have rejected limitations on the definition that would exclude transactions in privately held securities or transactions that do not involve financial intermediaries that take title to the securities during the course of the transaction." *Id.* On that basis, the Second Circuit held that any transfer that "complete[s] a transaction in securities" is a protected "settlement payment." *Id.* at *7.

The initial transfers at issue, from BLMIS or JPMorgan, acting for the benefit of BLMIS, to Fairfield Sentry, are settlement payments under the statutory definition—they are, as alleged, "payment[s] commonly used in the securities trade." 11 U.S.C. § 741(8). The transfers from BLMIS to Fairfield Sentry are therefore protected settlement payments made by a stockbroker or financial institution and may not be recovered from Tensyr as a subsequent transferee under 11 U.S.C. § 550.

**B.    The Trustee Cannot Avoid Transfers from Fairfield Sentry to Tensyr Because They Are Protected Settlement Payments**

Even if the initial transfers to Fairfield Sentry were avoidable, the value of those transfers still could not be recovered from Tensyr because section 546(e) shields them as settlement payments made by a "financial participant." The Bankruptcy Code defines a "financial participant" as a party that enters into a securities contract "of a total gross value of not less than $1,000,000,000 in notional or actual principal amount outstanding…at such time or on any day during the 15-month period preceding the date of the filing of the petition." 11 U.S.C. §§ 101(22A), 561(a). The Trustee has pleaded that Fairfield Sentry was a "financial participant" that invested billions of dollars in with BLMIS. 11 U.S.C. §§ 101(22A), 561(a); *see also*

Fairfield Complaint ¶ 40(v) (Fairfield Sentry and related funds "invest[ed] billions of their

clients' money with BLMIS").  The Trustee has also pleaded that Tensyr received subsequent

transfers sought by the Trustee in this action in the form of redemptions from the sale of its

shares in Fairfield Sentry.  Compl. ¶ 22.  On these facts, there is no question that any funds

received by Tensyr from Fairfield Sentry constitute protected settlement payments under section

546(e), and the Trustee's claims against Tensyr should, therefore, be dismissed.

## V.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE TRUSTEE HAS INSUFFICIENTLY PLEADED THE AVOIDANCE CLAIMS

Bankruptcy Rule 7008(a), which incorporates Federal Rule 8(a)(2), requires the Trustee

to provide a "short and plain statement of the claim showing that [the Trustee] is entitled to

relief."  In other words, the Trustee must plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at

1949.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not meet this

standard, yet that is exactly what the Trustee has provided.  *Id.* (internal quotations omitted).

Moreover, Bankruptcy Rule 7009, which incorporates Federal Rule 9(b) requires the Trustee to

"state with particularity the circumstances constituting fraud or mistake."[10]  The Trustee's use of

legal conclusions and scant facts of limited relevance instead of meaningful factual allegations

behooves this Court to dismiss the Complaint in its entirety as to Tensyr.

---

[10]    Nearly all of the Trustee's allegations about Tensyr rest "on information and belief."  However, the Trustee has alleged almost no facts about Tensyr "upon which the belief is founded."  *Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.*, 117 F.3d 655, 664 (2d Cir. 1997).  FRCP 9(b), which governs the Trustee's fraud-based claims, does not require omniscience, but it does compel the Trustee to at least lay the foundation for his belief that Tensyr has committed a fraud.  *Id.* (holding that "even if [the fact alleged on information and belief] was peculiarly within appellees' knowledge, appellants have failed to provide a statement of facts upon which the belief is founded.  The unsupported nature of the allegation weighs against finding it indicative of fraudulent intent.").  Therefore, the "unsupported nature" of the Trustee's allegations must "weigh[] against finding [them] indicative of fraudulent intent."  *Id.*

A.      **The Trustee Has Failed to Plead that Tensyr Received Any Preference Payments under U.S.C. § 547 (Count 1 of the Complaint)**

Count 1 of the Complaint seeks to recover "preferential transfers" pursuant to sections 547 and 550 of the Bankruptcy Code, meaning transfers made in the 90-day period prior to the commencement of BLMIS' liquidation (the "Preference Period"). To recover a preferential transfer from a subsequent transferee, the Trustee must plead the elements of both sections 547 and 550. To satisfy section 547, the Trustee must plead that the payment was made to a creditor (here, Fairfield Sentry), "for or on account of an antecedent debt owed by the debtor" (here, BLMIS) while the debtor was insolvent, which were made during the Preference Period. 11 U.S.C. § 547(b). Section 550 of the Bankruptcy Code allows a trustee to recover previously avoided preferential transfers received by subsequent transferees, subject to certain defenses. 11 U.S.C. § 550(a) and (b).

The Trustee's claim to recover preferential transfers from Tensyr fails as a matter of law because the Trustee has not pleaded facts sufficient to show that any of the preferential transfers allegedly made to Fairfield Sentry were transferred to Tensyr during the Preference Period, as required to recover under section 550. The Trustee has, instead, provided conclusory allegations that, "on information and belief," Tensyr received undefined preferential transfers. Compl. ¶¶ 247-49. Both this Court and the Supreme Court have found that claims of this nature fail to meet the required pleading standard. *See Iqbal*, 129 S. Ct. at 1949; *Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen L.L.C.)*, 431 B.R. 337, 354-56 (Bankr. S.D.N.Y. 2010) (dismissing claim where plaintiff failed to plead facts supporting each element of a claim under section 547).

This Court has previously dismissed a claim to recover preferential transfers where the complaint did not provide sufficient information to identify the transfers at issue. In *In re*

*Hydrogen, L.L.C.*, the Official Committee of Unsecured Creditors (the "Official Committee"), as

the plaintiff, alleged that the defendant had received a "bonus" payment of $168,452.92 from the

debtor within two years of the commencement of the bankruptcy. *In re Hydrogen L.L.C.*, 431

B.R. at 354-55. The Official Committee provided no information about the transfer, including

whether it was "on account of a specific and identifiable antecedent debt" or was made during

the Preference Period. *Id.* at 355. Finding that the complaint was "factually deficient in multiple

respects, resulting in inadequate pleadings with respect to more than one element of all alleged

preferential transfers," the court dismissed the preferential payment claim. *Id.*

Just as in *In re Hydrogen*, the Trustee has made no factual allegations from which this

Court could plausibly infer that Tensyr received any preferential payments:[11]

- The Trustee failed to plead any facts demonstrating that Tensyr received any
  transfers from Fairfield Sentry during the Preference Period. In fact, the Trustee
  has not identified the date of a single transfer allegedly made to Tensyr.

- The Trustee has failed to plead any facts concerning the method used to transfer
  funds to Tensyr.

- The Trustee has failed to plead the amount of any single allegedly preferential
  transfer. In fact, he has failed even to plead so much as a sum certain for the
  aggregate transfers, generalizing instead that Tensyr received "at least $30 million
  of [Fairfield] Sentry shares." Compl. ¶ 22.

The Trustee's statements amount at most to suggestions that Tensyr may have received

some indeterminate amount of money at some indeterminate time from Fairfield Sentry. This

---

[11] The Trustee is also barred from recovering any subsequent transfers that Tensyr allegedly received from
Fairfield Sentry because the initial transfers from BLMIS to Fairfield Sentry were not avoided, as discussed
further in Section III, *supra*.

type of allegation makes a mockery of the strictures of § 547(b) and FRCP Rule 8(a).  As a result, Count 1 against Tensyr must be dismissed.

**B.      The Trustee Has Failed to Plead that Tensyr Did Not Take for Value, in Good Faith, and without Knowledge of the Fraud (Counts 1 – 7 of the Complaint)**

Tensyr hereby incorporates by reference the arguments made by Natixis S.A. (in its own capacity and as successor-in-interest to IXIS Corporate & Investment Bank), Natixis Financial Products LLC, and Bloom Asset Holdings Fund (the "Natixis Defendants") in section III of the Memorandum of Law in Support of Natixis' Motion to Dismiss the Trustee's Complaint or in the Alternative to Stay the Action (the "Natixis Brief"), filed by Davis & Gilbert LLP in this action on July 15, 2011, Docket Number 18.

As described in the Natixis Brief, to recover on any of his claims, the Trustee must plead that Tensyr, as a subsequent transferee, did not take "for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided . . . ."  11 U.S.C. § 550(b)(1); *see, e.g.*, *Wasserman v. Bressman (In re Bressman)*, 327 F.3d 229, 236 n.2 (3d Cir. 2003) (suggesting that the trustee bears the burden of pleading that the subsequent transferee did not take for value, in good faith, and without knowledge); *Lustig v. Hickey (In re Hickey)*, 168 B.R. 840, 850 (Bankr. W.D.N.Y. 1994) (same). In this case, there is no question that the Trustee has failed to plead facts with particularity sufficient to imply a plausible claim against Tensyr under section 550.

Not only does the Trustee fail to allege that Tensyr did not provide value, but he actually alleges that Tensyr provided as much as *fifteen times* the value of any redemptions that Tensyr allegedly received from Fairfield Sentry.  *See* Compl. ¶¶ 22, 147 (alleging that Tensyr withdrew at least $30 million but invested $456 million).  According to the Trustee's own allegations, any money that Tensyr may have received was in return for either (i) a reduction in its rescission

claim against Fairfield Sentry or (ii) satisfaction of Fairfield Sentry's antecedent debts.  *See Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 682 (Bankr. S.D.N.Y. 2000) (recognizing the "universally-accepted rule that investors may retain distributions from an entity engaged in a Ponzi scheme to the extent of their investments*"); see also Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 487-88 (Bankr. D. Conn. 2002) (lender to a Ponzi scheme operator was entitled to keep interest paid by the operator in return for forgiveness of contractual antecedent debt).

The Trustee has also failed to allege that Tensyr had "knowledge of the voidability of the transfer" from BLMIS to Fairfield Sentry.  The Trustee's glaring omission of any meaningful reference to Tensyr in the full 62 paragraphs of the Complaint that he dedicated to describing the so-called "red flags" that he claims other defendants should have noticed speaks volumes. Compl. ¶¶ 148-210. In fact, throughout that entire section of the Complaint, the Trustee offers merely another legal conclusion, that "Tensyr knew full well Madoff was also [Fairfield Sentry's] investment adviser." *Id.* ¶ 165.  The Trustee's conclusory allegations do not establish any relevant knowledge on the part of any employee or representative or Tensyr, much less knowledge of any wrongdoing.

In place of providing any meaningful factual allegations about Tensyr's knowledge of BLMIS' wrongdoing, the Trustee has effectively asked this Court to take it on faith that Tensyr harbored a fraudulent intent because it was allegedly "armed with public and considerable non-public information . . . which raised numerous red flags of possible fraud."  Compl. ¶ 3; *see also*, Compl. ¶ 22.  But not once in 316 paragraphs of the Complaint does the Trustee attempt to explain when, why, how, or who at Tensyr stumbled upon such "knowledge" of fraudulent behavior.  Such factually vacuous allegations cannot meet the Trustee's obligation to plead

Tensyr's knowledge that the transfer was voidable or its lack of bad faith with particularity.  *See Iqbal*, 129 S. Ct. at 1949; Fed. R. Civ. P. 9(b).

For these reasons and the reasons stated in section III of the Natixis Brief, the Trustee's claims against Tensyr in Counts 1-7 should be dismissed.

### C.    The Trustee Has Failed to Plead that Tensyr Had the Intent Required to Avoid Transfers under NYDCL § 276 (Count 4 of the Complaint)

To adequately state a claim under section 276 of New York's Debtor and Creditor Law (the "NYDCL"), the Trustee must plead with particularity according to Federal Rule 9(b) and Bankruptcy Rule 7009(b).  *See Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002) (Lifland, J.).  The Trustee has plainly failed to carry his burden, having failed to allege any facts showing Tensyr's fraudulent intent as a subsequent transferee of transfers originating from BLMIS.  Tensyr hereby incorporates by reference the arguments made by the Natixis Defendants in sections IV.A and IV.B of the Natixis Brief.  For the reasons set forth in the Natixis Brief and further below, Count 4 of the Complaint should be dismissed.

In his three hundred sixteen-paragraph complaint, the Trustee has not made a single allegation of any fact suggesting Tensyr's fraudulent intent, falling far short of his obligation to "state with *particularity* the circumstances constituting fraud."  Fed. R. Civ. P. 9(b) (emphasis added); *see In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (holding that this pleading requirement applies to an actual fraud claim brought under the NYDCL and the Bankruptcy Code); *see also, Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.),* 398 B.R. 761, 773 (Bankr. S.D.N.Y. 2008) (plaintiff must allege "facts that give rise to a strong inference of fraudulent intent.") (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

The Trustee's only allegations concerning Tensyr's intent comprise purely conclusory legal opinions premised upon information and belief. *See* Compl. ¶¶ 3, 22. As a matter of law, those allegations do not satisfy the Trustee's pleading obligation. *See* Fed. R. Bankr. P. 7009(b); Fed. R. Civ. P. 9(b); *In re Manhattan Inv. Fund Ltd.,* 310 B.R. at 505, leave to appeal denied, 288 B.R. 52 (S.D.N.Y. 2002) ("Allegations of actual fraud may not be made upon information and belief unless facts at issue are within the defendant's knowledge."). Because the Trustee has not even attempted to plead any factual allegations concerning Tensyr's fraudulent intent based on either direct or circumstantial evidence, Count 4 of the Complaint should be dismissed.

### D.    The Trustee Has Failed to Plead that Tensyr Took for Less than Equivalent Value as Required by NYDCL §§ 273 – 275 (Counts 5 – 7 of the Complaint)

Tensyr hereby incorporates by reference the arguments made by the Natixis Defendants in section V of the Natixis Brief.

The Trustee has not only failed to plead a claim against Tensyr under sections 273 through 275 of the NYDCL, he has actually pleaded the opposite. The NYDCL contemplates the avoidance of constructive fraudulent conveyances made "without fair consideration." *See NYDCL* §§ 273-275. A party provides "fair consideration" when, in good faith, it satisfies a debt by providing value equivalent to that of the debt. *See id.* § 272(a). The Trustee has actually pleaded that Tensyr provided Fairfield Sentry with *fifteen times* the value of what it received from Fairfield Sentry. *See* Compl. ¶¶ 22, 147. Therefore, any money that Tensyr may have received either cancelled an equal and opposite a rescission claim against Fairfield Sentry or discharged a portion of Fairfield Sentry's antecedent debt. Under these circumstances, the Trustee clearly cannot allege the absence of "equivalent value" in return for Tensyr's redemptions from Fairfield Sentry, as he must to

state a fraudulent conveyance claim under New York law.  For this reason and the reasons
set forth in section V of the Natixis Brief, Counts 5 through 7 of the Complaint should be
dismissed.

## VI.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED PENDING THE OUTCOME OF ACTIONS AGAINST INITIAL TRANSFEREES AND NET WINNERS

In the event the Court does not grant Tensyr's motion in its entirety, the Court should
stay this proceeding until the Trustee has exhausted all avenues of recovery against initial
transferees and net winners.

Tensyr hereby incorporates by reference the argument made by the Natixis Defendants in
section VII of the Natixis Brief as it relates to this issue.

## CONCLUSION

For the foregoing reasons, Defendant Tensyr respectfully requests that the Court (i) grant
its motion to dismiss the Complaint, (ii) in the alternative, grant a stay pending the outcome of
other proceedings, or (iii) grant such other relief as may be just and proper.[12]

Dated:      New York, New York          FRESHFIELDS BRUCKHAUS DERINGER
            September 1, 2011            US LLP


                                        By:  /s/  David J. Onorato_____
                                             David J. Onorato
                                             Timothy P. Harkness
                                             Jessica R. Simonoff
                                             Susan A. Higgins
                                             601 Lexington Avenue, 31st Floor
                                             New York, NY 10022
                                             Telephone: (212) 277-4000
                                             david.onorato@freshfields.com
                                             *Attorneys for Tensyr Limited*

---

[12]    Tensyr hereby reserves its right to raise the defense of *forum non conveniens* at a future time.