# EXHIBIT A

```
                                                           1
        84GAAENRM                    Motions
  1     UNITED STATES DISTRICT COURT
  1     SOUTHERN DISTRICT OF NEW YORK
  2     ------------------------------x
  2
  3     IN RE:  ENRON CREDITORS
  3     RECOVERY CORP,
  4
  4                  Plaintiff,
  5
  5            v.                            07 CV 6597 (AKH)
  6
  6     INTERNATIONAL FINANCE CORP,
  7
  7                  Defendant.
  8
  8     ------------------------------x
  9                                      New York, N.Y.
  9                                      April 16, 2008
 10                                      3:15 p.m.
 10
 11     Before:
 11
 12                     HON. ALVIN K. HELLERSTEIN,
 12
 13                                      District Judge
 13
 14                        APPEARANCES
 14
 15     KLEE, TUCHIN, BOGDANOFF & STERN LLP
 15          Attorneys for Plaintiff Enron
 16     BY:  DAVID M. STERN
 16     BY:  DANIEL J. BUSSEL
 17
 17     PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
 18          Attorneys for Defendant International Finance
 18     BY:  STEPHEN J. SHIMSHAK
 19     BY:  DOUGLAS R. DAVIS
 20
 21
 22
 23
 24
 25
```

                                                                    2
     84GAAENRM                    Motions
 1              (Case called)

 2              MR. STERN:  Good afternoon, your Honor.

 3              David Stern, for appearing on behalf of Enron.  With

 4    me at counsel table is my colleague Daniel Bussel.

 5              MR. SHIMSHAK:  Steven Shimshak, for National Australia

 6    Bank and Caisse De Depot, Appellees.

 7              Also appearing with me is my partner Douglas Davis.

 8    And to Mr. Davis' right is my colleague Rebecca Zubaty.

 9    Ms. Zubaty is a Paul wise associate.  She has passed the bar in

10    New York and her application process is underway, and with the

11    Court's indulgence, I would greatly appreciate if you would

12    allow Ms. Zubaty to sit at counsel table.

13              THE COURT:  Of course.  Good afternoon.  Everybody,

14    please, be seated.

15              So this is the appeal of the trustee.

16              Mr. Stern, I'll hear from you.

17              MR. STERN:  Thank you, your Honor.

18              Again, David Stern, appearing on behalf of ENRON

19    Creditors Recovery Corporation, and, actually, we were in the

20    position of a trustee, although, it's a post reorganization

21    debtor in possession effectively.

22              Your Honor, with your indulgence I am just going to

23    begin again with the case pretty much where I started my

24    opening brief.

25              THE COURT:  What happened to the fraudulent transfer
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

3

84GAAENRM                    Motions

1    account I don't understand it.

2              MR. STERN:  Sorry.

3              THE COURT:  What happened at fraudulent transfer

4    account?  Is it here?  Is it not here?

5              MR. STERN:  It was dismissed below.  The fraudulent

6    transfer claim against the two defendants who are here as

7    appellees Caisse and National Australia bank which is the

8    second count of the complaint was dismissed with prejudice by

9    Bankruptcy Judge Gonzalez pursuant to the 12 (B) (6) motion.

10              THE COURT:  Is it part of the appeal?

11              MR. STERN:  Yes, your Honor, it is part of the appeal.

12    We are appealing from the order dismissal that Judge Gonzalez

13    entered dismissing the count against these two defendants who

14    are appellees here.

15              THE COURT:  OK.  Go ahead.

16              MR. STERN:  Thank you.  Your Honor, the essence of the

17    challenge to Judge Gonzalez's dismissal order was stated really

18    in our opening few pages and to some extent everything since

19    then has been commentary.  Which is our position is very simply

20    that the bankruptcy code has a variety of sections that allow

21    for the avoidance of a transfer.  The particular one here at

22    issue is Bankruptcy Code Section 548 which is the analog of the

23    Uniform Transfer Fraudulent Act.

24              And there is a section 550 that merits recovery.  That

25    section in its terms gives a plaintiff, a trustee, a debtor in

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

4

84GAAENRM                    Motions

1   possession an option of suing the initial transferee, a

2   beneficiary of a transfer or a subsequent transferee.  Its

3   language is specifically disjunctive and the trustee can sue

4   one or all of those parties under 550 without having to sue any

5   others.

6           We believe that where the Court went wrong below was

7   by looking at Section 550 and saying that because 550 requires

8   that the transfer be avoided the transfer could not be avoided

9   in the absence of the initial transferee.  The source of that

10  error, if you will, goes back to a case from the Tenth Circuit,

11  the Slack Horner case.

12          THE COURT:  Could you take me through the spec sheet.

13          MR. STERN:  Absolutely, your Honor.

14          The statute that prescribes avoidance is Section 548.

15  And if one looks at 558 (A) (1) you can have a variety of

16  reasons why you can avoid a fraudulent transfer.  The rationale

17  here is found in 548 (A) (1) (B) that the transfer was for less

18  than a reasonable equivalent value at a time that ENRON was

19  insolvent.

20          That prescribes what transfer is going to be avoided.

21          THE COURT:  So it's (A) (1) (B) (2).

22          MR. STERN:  Correct.  And then there are a series of

23  subsections under (A) (1) (B) (2) that basically translate

24  insolvency into a number of different tests having inadequate

25  capital.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

5

84GAAENRM                    Motions

1            THE COURT:  It's not an issue.

2            MR. STERN:  No, it's not an issue.

3            THE COURT:  Cause you've alleged and that makes it

4      sufficient.

5            MR. STERN:  I don't think there is any question that

6      we've sufficiently alleged what needs to be alleged under

7      558(A).

8            THE COURT:  Now, go into 550.

9            MR. STERN:  550 tells you in my view who one can sue

10     and 550(A) says except as otherwise provided in this section to

11     the extent that a transfer is avoided under section and then it

12     gives a series of sections including 548, the trustee may

13     recover for the benefit of the estate the property transferred

14     or if the Court so orders the value of such property from,

15     number one, the initial transferee of such transfer or the

16     entity for whose benefit such transfer was made.  Then there's

17     a semi colon and the word "or" and then there is sub two, any

18     immediate or immediate transferee of such initial transferee.

19     And in bankruptcy speak immediate or immediate transferee means

20     a subsequent transferee.

21           So, it's our position and we think it's clearly rooted

22     in the language of Section 550, it's rooted in the history and

23     the policy as well, that we as a plaintiff, as a trustee in

24     effect have the ability to sue to recover a fraudulent

25     transfer, to recover a fraudulent transfer and choose from whom

6

84GAAENRM                    Motions

1    they recover.

2           In terms of the modern history of interpreting Section

3    550 we actually think that both Judge Gonzalez and the system

4    to some extent went astray via the Slack Horner decision out of

5    the Tenth Circuit in 1992.

6           THE COURT:  His analysis is mostly statutory and

7    grammatical.  The cases is split, not as binding and not as

8    authoritative and Judge Gonzalez is the fashion these days

9    looked at the four corner of the statute, interpreted it and

10   came to a very reasonable view that he came to, and the press

11   of language is on the phrase "to the extent that a transfer is

12   avoided".

13          MR. STERN:  Correct.

14          THE COURT:  And that gives you the trouble.

15          MR. STERN:  Well, I don't think it does, your Honor.

16   I think that what judge Gonzalez did was add to the language of

17   550, because what he said is that one has to sue the initial

18   transferee in order to sue a subsequent transferee.  That

19   language that you just pointed to in Section 550 was actually

20   explained in a bunch of the cases.  Doesn't have anything to do

21   with suing an initial transferee and indeed is found, not in

22   our appendix but in the appendix file by the Paul Weiss firm,

23   at tab number 3 and it explains what 550(A) means.

24          If I may I'll quote from the legislative history which

25   is found at their tab three.  I guess it's page 4-2449 for

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

7

84GAAENRM                    Motions

1    future reference.  And in the middle of the paragraph --

2              THE COURT:  2249?

3              MR. STERN:  2249 on the bottom it says apt part 4-2449

4    so that's the only reference that I really can refer to.

5              THE COURT:  I have it.

6              MR. STERN:  The second full paragraph begins with

7    Section 550 (A) (1), of the house amendment has been modified

8    in order to permit recovery from an entity whose benefit an --

9    Section 550 (C) would still apply and the trustee is entitled

10   to only a single satisfaction.  And at this point the language

11   becomes interesting.  The liability of.

12             THE COURT:  One minute, Mr. Stern.

13             MR. STERN:  Sure.

14             (Pause)

15             THE COURT:  Go ahead.

16             MR. STERN:  Again, pointing to that second full

17   paragraph.  I guess your Honor has it in front of you and I was

18   just up to the sentence that talks about the liability of a

19   transfer and 550 (A) that says the liability of a transferee

20   under Section 550 (A) applies only "to the extent that a

21   transfer is avoided".  This means that liability is not imposed

22   on a transferee to the extent that a transferee is protected

23   under a provision such as a 48 (C) which grants a good faith

24   transferee of value of the transfer that is avoided only as

25   fraudulent transfer, a lien on the property transfer to the

8

84GAAENRM                    Motions

1    extent of a value given.  That's the explanation of that

2    section.  What that says I think in plain English is that the

3    liability of a subsequent transferee is never going to be

4    larger than the liability of an initial transferee and indeed

5    it may be less because a subsequent transfer has additional

6    good faith defenses that he can assert under 550 (C).

7            The problem with the opinion below is not that it was

8    literal but that, frankly, it wasn't.  Because the literal

9    language of 550 (A) says you can sue (A) or (B) or (C).  A

10   being the initial transferee, B being the parties for whose

11   benefit the transfer was made that can be somebody different

12   and C being the subsequent transferee, and, again, applying in

13   a plain language reading to 550 (A), the plaintiff gets his

14   choice.

15           THE COURT:  The problem with your argument is that the

16   word "avoided" is used and not "avoidable".

17           MR. STERN:  I don't think that is a problem and I know

18   the case law finds that problematic.

19           THE COURT:  Well, it is not just the case law.

20   Avoidable and avoided are different words used differently in

21   fraudulent conveyance law.

22           MR. STERN:  Yes.

23           THE COURT:  And the use of one rather than another has

24   to be given significance.

25           MR. STERN:  I believe it can be given significance and

                    SOUTHERN DISTRICT REPORTERS, P.C.

                         (212) 805-0300

9

84GAAENRM                    Motions

1    I believe it has significance and let me explain how I think it

2    has significance.  Incidentally, specifically, reserve some

3    time for rebuttal.  I hope I may have a few minutes.

4              THE COURT:  You'll both have time.

5              MR. STERN:  Great.  Thank you.

6              How does avoided play into it?  And again I think we

7    have a very simple plain language resolution that is also

8    consistent with centuries of law which is fundamentally this,

9    as to a subsequent transferee in this case National Australia

10   Bank and Caisse what we would have to prove is that the

11   transfer, the underlying transfer, the initial transfer is

12   avoidable and therefore that we are capable of avoiding it and

13   it will, therefore, be avoided.  That is we have asked for in

14   the complaint and I will confess it is not as artful as it

15   should be, but we have asked for in the complaint for two

16   elements of relief.  Avoid the transfer and permit us to

17   recover against these subsequent transferees.  The avoidance of

18   the transfer is a transfer specific, a transaction specific

19   type of approach and we have to look at that transaction and

20   say, was that transaction a fraudulent transfer?  And unless we

21   can prove up all the elements that are set forth in 548 and it

22   doesn't matter --

23             THE COURT:  This is a 12 (B) motion.  You've made the

24   allegation.  I accept it as something you'll be able to prove.

25             MR. STERN:  Right.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

84GAAENRM                    Motions

1          THE COURT:  So is what you've alleged a legally

2    sufficient claim for relief?  And if you haven't, well, you

3    could have.  So that's really the test.

4          MR. STERN:  Correct.

5          THE COURT:  Judge Gonzalez took your complaint and

6    said assuming that you can prove everything and that you've

7    alleged everything that you could reasonably allege you are out

8    of court.

9          MR. STERN:  Correct.  Because we've got a missing

10   party.

11         THE COURT:  It wasn't that you have a missing party.

12   It was that you didn't obtain a judgment of avoidance.

13         MR. STERN:  And what we are saying is that we can

14   obtain that judgment of avoidance.  We can avoid the transfers

15   and we were actually suing and naming those defendants as to

16   whom we are establishing that avoidance.  We will avoid that

17   transfer.  The notion that we are --

18         THE COURT:  Who are the necessary parties to do that.

19         MR. STERN:  The answer is the trustee has a series of

20   options.

21         THE COURT:  What have you done in this complaint?

22         MR. STERN:  What we have done is we have sued for the

23   sake of this appeal National Australia Bank and Caisse neither

24   of which was the initial transferee.

25         THE COURT:  The initial transferee is special purpose

84GAAENRM                    Motions

1    entity of ENRON?

2            MR. STERN:  That is correct, CLO Holding.

3            THE COURT:  Was it marshaled with ENRON's assets in

4    the bankruptcy?

5            MR. STERN:  Yes, it is.

6            THE COURT:  It is really part of the bankruptcy

7    estate?

8            MR. STERN:  It is.  But --

9            THE COURT:  So the separation between ENRON and the

10   special purpose entities in particular ones we have here have

11   been dissolved?

12           MR. STERN:  That is correct, and --

13           THE COURT:  They're considered one company?

14           MR. STERN:  They are not considered one company.  They

15   were not consolidated.  So in that sense they are not.

16           THE COURT:  That's because they're different

17   creditors?

18           MR. STERN:  Different creditors and different assets.

19   They were not substantively consolidated and we don't make the

20   argument, your Honor --

21           THE COURT:  For the purposes of creating a plan the

22   trustee was able to use the assets of both companies according

23   to some notion of equity and acceptability.

24           MR. STERN:  There were hundreds of companies, yes, and

25   there was a methodology that was used within the plan.

84GAAENRM                    Motions

1         THE COURT:  Your adversary is shaking his head

2    vigorously, no, but he'll get his chance.

3         MR. STERN:  So I can make IT clear, the essence of our

4    case here is not -- again, I am snatching defeat from the jaws

5    of victory, I'm also being candid with your Honor.  The essence

6    of our case is not that because CLO Holding was an affiliate of

7    ours that somehow that excuses us from suing them.  It's really

8    much more basic than that.

9         THE COURT:  How?

10        MR. STERN:  Well, the essence of our claim is that one

11   does not have to sue the initial transferee in order to recover

12   against the subsequent transferee.  That is our position.  That

13   is what we've briefed.

14        THE COURT:  That's true as a matter of fraudulent

15   conveyance law.

16        MR. STERN:  That is correct.  My assertion would be

17   that --

18        THE COURT:  There's another part of this argument

19   dealing with the statute of limitations.  Give us a word about

20   that.

21        MR. STERN:  The statute of limitations again has

22   engendered a fair amount of confusion here and certainly

23   engendered confusion below.  The bankruptcy code separates the

24   concept of avoidance and recovery and although the cases are

25   extremely sparse in which there is an action to first avoid and

13

84GAAENRM                    Motions

1    then recover there are a few of them.  But, basically, the way

2    the statute of limitations works is as follows:  If all you

3    want to do is avoid a transfer, then under that set of

4    circumstances you have got two years after the petition date to

5    sue or lose the claim.  And if you all you want to do is avoid

6    the transfer, if you want to then recover subsequently, and,

7    again, the number of cases where that has happened is you could

8    probably count it on a handful because it just doesn't

9    happen --

10            THE COURT:  Why doesn't it happen?

11            MR. STERN:  Because, generally, if you are going to

12   avoid and recover you do it in a single case.  You file one

13   lawsuit.  You have one count to avoid and another count to

14   recover and you are out of there and you file it within two

15   years of petition date, that's how you resolve it.  And,

16   frankly, in most cases the initial transfer gets named the

17   subsequent transfer gets named everybody gets named.

18            Again, you have cases where that doesn't happen where

19   the initial transferee no longer exists where it might be in

20   bankruptcy, where it was offshore there was a district court in

21   Connecticut where that happened.

22            Getting back to the statute of limitations, you've got

23   two years after filing the, after filing bankruptcy to sue to

24   avoid.  And then after you get a judgment for avoidance you get

25   another year to recover.

                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

14

84GAAENRM                    Motions

1              THE COURT:  What section is that?

2              MR. STERN:  The recovery section is 550 (F) and the

3       statute of limitations on avoidance is 546 and I can't remember

4       the Subsection 546 (A).

5              THE COURT:  550 (F) an actual proceeding under this

6       section may not be commenced after the earlier of one -- one

7       year after the avoidance of the transfer on account of which

8       recovery under this section is sought, or, two, the time in the

9       case is closed or dismissed.  That's one year after avoidance.

10             MR. STERN:  Right.  One year after avoidance; that's

11      correct.

12             THE COURT:  That's an actual avoidance.

13             MR. STERN:  That is correct.

14             THE COURT:  That is the way Judge Gonzales interpreted

15      it.

16             MR. STERN:  Right.  And what he was concerned about

17      was that he said if you never seek to avoid your statute never

18      runs.  The answer we have to that is --

19             THE COURT:  Till the case is closed.

20             MR. STERN:  Right.  Which you know that can take a

21      decade, but that's not our position.  Our position is very

22      simple.  We had to sue Caisse and NAB within two years.  It's

23      as simple as that.  Because as to them we wanted to both avoid

24      and recover.  And if you are going to avoid, 546 (A) tells you

25      you've got two years.  So, if you've only got two years to

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

84GAAENRM                    Motions

1    avoid and recover if you blow that statute that's it.  It's

2    game over.  You don't get to somehow use a back door approach

3    and say, well, I am never going to avoid the transfer.  You

4    have to avoid the transfer.

5            THE COURT:  I know.  I don't know understand that.

6    You have two years to obtain a declaration of avoidance.

7            MR. STERN:  That's correct.

8            THE COURT:  And one more year to go after the ultimate

9    holder of the assets.

10            MR. STERN:  Right.

11            THE COURT:  So you don't have to do within two years.

12    You could have done it in -- the legal and if you sue you could

13    have sued that special entity within two years obtained a

14    judgment and then have another year to sue the third party.

15            MR. STERN:  I don't read it that way, your Honor.  I

16    don't think that's correct.  I believe that you have to avoid

17    and recover against Caisse --

18            THE COURT:  How do you read 550 (F) (1).

19            MR. STERN:  I read 550 and (F) (1) and 546 together.

20    And what I say is the following:  Actually, let me flip it on

21    its back a little bit.  Let me look at it this way.  If you

22    could sue the initial transferee within two years you

23    presumably could enter into various scheduling agreements and

24    things like that and you could go on endlessly.  You could have

25    a judgment five years after the petition date.

84GAAENRM                    Motions

1          THE COURT:  That happens.

2          MR. STERN:  And it might be appealed and remanded.  It

3     might be another couple years before you actually have a final

4     judgment.  Now, you would turn around and you would sue Caisse

5     and NAB whose personnel have changed, whose records have

6     changed and perhaps in this electronic age nothing much

7     actually get's thrown away.  You would be looking at a

8     situation in which you would be facing these defendant who

9     would now be suddenly confronted with a lawsuit five, six, ten

10    years after the transaction in question.

11         THE COURT:  Let me understand that better.  I am

12    looking at 546 (A) an action or proceeding including an action

13    under Section 540 (A) may not be commenced after the earlier --

14    says one later after -- two years after the order entry of

15    order for relief that the one --

16         MR. STERN:  That's effectively the one we're talking

17    about.

18         THE COURT:  What is the order for relief?

19         MR. STERN:  The bankruptcy petition in the case of a

20    voluntary bankruptcy case if there is an involuntary then

21    there's a trial as to whether the case goes into bankruptcy and

22    the order for relief may be later.  In a voluntary case for all

23    intents and purpose taking out the order of protection.

24         THE COURT:  It is the order of protection?

25         MR. STERN:  Yes.

84GAAENRM                    Motions

1            THE COURT:  And you have two years after that to get

2    the judgment that you did under Section 546.  And what is the

3    judgment that you get under 546?

4            MR. STERN:  Actually, under 546 you actually don't get

5    a judgment -- that is a referenced in 546.

6            THE COURT:  I see.  So an action or proceeding under

7    Section 540 (A) must begin within two years after the order of

8    protection.

9            MR. STERN:  Correct.

10            THE COURT:  And under 548 the judgment that you get,

11    the relief that you get is a judgment of avoidance.

12            MR. STERN:  Correct.

13            THE COURT:  Effectively a declaratory type judgment

14    that a particular transaction is a fraudulent transfer and

15    therefore it's set aside.  So your opponents argument that

16    Judge Gonzalez's analysis is following the plain meaning of

17    these three statutes that you have one year after you get some

18    kind of a judgment, a declaratory judgment that transaction is

19    avoided.

20            Now, your problem is that you company couldn't

21    effectively get that judgment because there was no CLO Holdings

22    and there was no CLO trustee.  The special purpose entity which

23    amounted to the way that ENRON committed its frauds had been

24    collapsed.

25            MR. STERN:  That's correct.

84GAAENRM                    Motions

1          THE COURT:  Looking through your complaint that I find

2    very interesting is there are no allegations regarding that

3    particular set of events that is the collapse of ENRON and its

4    purpose, special purpose entities and the marshaling in some

5    fashion I don't really understand.  And there is no allegation

6    of complicity on the part of the transferees.  And it seems to

7    me that I think I am being a little adventurous here, but in

8    order to get around the obstacles that the joining of 546 and

9    548 and 550 create for you, you have to show some contextural

10   set of events that make it impossible to follow this statute.

11   You've not done that.

12          I would think there's a real purpose for this because

13   when assets have come to rest in some of third party it's a

14   different state of events in the immediate transferee as to

15   which the allegations of fraudulent conveyance or fraudulent

16   transfer have been made and the extra protection that is

17   obtained to benefit the mediate -- the mediate, not immediate

18   transferee is to first require you to get a judgment actually

19   voiding the transfer and that works very nicely.  You can join

20   it together and modern pleading that's essentially what happens

21   under Rule 14, under Federal Rule of Procedures or you can it

22   do it separately and the bankruptcy law allows both, but your

23   problem is that you can't do it at all.

24          MR. STERN:  Well, let's just sort of comment on a

25   couple points that your Honor just made.  First of all,

19

84GAAENRM                    Motions

1    although this is styled a fraudulent transfer, there is no

2    claim of complicity, wrongdoing and the like.

3            THE COURT:  I noticed that.

4            MR. STERN:  That's because this is what's known as a

5    constructive fraudulent transfer as opposed to an actual

6    fraudulent transfer.  That is not to say that ENRON wasn't a

7    major fraud, clearly, it wasn't.

8            Although ENRON was a major fraud the allegations here

9    are of constructive fraudulent transfer.  Sometimes they could

10   be called technical fraudulent transfers, and it's one of those

11   things there is no actual intent element to this.  What it is

12   an insolvent entity that's made a transfer for less than their

13   consideration.  That's really all that's going on here.

14           THE COURT:  You can't assert its defense that it's a

15   holder in good course.

16           MR. STERN:  There is a good faith element which is

17   part of the defense, not part of the complaint which a party

18   like National Australia's case can absolutely try to assert.

19           THE COURT:  That is the rule.  Generally seeking a --

20   your problem is that you are -- you have obstacles that Judge

21   Gonzalez laid in.  He took a very difficult subject and made it

22   understandable and I think he is correct in his analysis.  I

23   don't know that it's necessarily dispositive on a 12 (B)

24   motion.  But it will take a better pleading to get around the

25   statutory framework as annunciated by the decision.

20

84GAAENRM                    Motions

1              MR. STERN:  Let me try to respond to that.

2              THE COURT:  I can't criticize Judge Gonzalez.  I think

3        he has done a very fine job.

4              MR. STERN:  I wouldn't be criticizing Judge Gonzalez

5        either.  I think he does a terrific job, but I think he got

6        this one wrong and I just want to elucidate again why I think

7        that's the case.

8              THE COURT:  I followed you on it.  They're not easy.

9        The whole set up is not easy.  Go ahead.

10             MR. STERN:  Let me just explain why I think that

11       particular analysis doesn't hold and I think that we keep

12       falling on the notion that the initial transferee is a

13       necessary party to this whole process and I've run into the

14       plain language of 550 which basically gives me a choice.  And

15       if you look at 548 throughout, and you won't find any mention

16       in 548 and as to who you have to sue.  548 describes the

17       transaction much like the Uniform Fraudulent Conveyance act

18       does and the Uniform Fraudulent Transfer Act, it tells you

19       about a transactions what obligations, what property transfers

20       are fraudulent as a matter of law, whether they be actual fraud

21       or constructive fraud which we've just discussed.  And those,

22       if you look at 548 (A) you do not find within 548 (A) any

23       reference to a command that you sue the initial transferee.

24             THE COURT:  There's nothing about --

25             MR. STERN:  That's correct.  The initial transferee --

                    SOUTHERN DISTRICT REPORTERS, P.C.

                            (212) 805-0300

84GAAENRM                    Motions

 1          THE COURT:  The focus is on the transaction that is an

 2    avoidable transfer.

 3          MR. STERN:  Correct.  And what we are saying is that

 4    you read 548 (A) and it is transaction specific 548 and other

 5    sections --

 6          THE COURT:  It gives the trustee discretion the

 7    trustee may avoid.

 8          MR. STERN:  He doesn't have to.  He can make a cost

 9    benefit analysis as whether or not a particular transaction

10    should or shouldn't be avoided more.

11          THE COURT:  So once these transactions are voidable

12    and that sets up the language of 550 that you need to have this

13    avoided.

14          MR. STERN:  Correct.  And where we and Judge Gonzalez

15    parted way and it may well be where your Honor and I parted way

16    is that the notion is why do you have to sue the initial

17    transferee?  One can look at this kind of situation and one

18    has, there are a series of courts --

19          THE COURT:  That's the only way I know to avoid the

20    transaction.

21          MR. STERN:  Well, it's really no different from

22    finding, for example, that a particular entity who is not

23    around any more is negligent and you've got a successor to that

24    entity and you now are trying to impose successor or liability

25    on them.

84GAAENRM                    Motions

1          THE COURT:  What you are arguing is I think that in

2     the judgment that you arguably obtained against the two banks

3     that hold the assets, you will get a declaration that the

4     guarantee and the execution of that put made by ENRON was a

5     transaction that should have been and now is avoided.

6          MR. STERN:  That is what we would hope to get.

7          THE COURT:  And your argument is that you don't need

8     CLO and the other special purpose entity to accomplish that.

9          MR. STERN:  That's exactly right.  And just to sort of

10    kind of put the final touch on it, the question arises, let's

11    assume that CLO were a party.  Let's assume that a defunct

12    enemy is a party.  Let's assume that an offshore entity is a

13    party.  What does it add to the protections provided to the

14    subsequent transferee?  This is sort of a function as opposed

15    to a protectoral analysis, but I think it comes out the same

16    way.  Fundamentally, there are a series of cases to talk about

17    why one goes after the deep pocket.  It's no surprise.  And the

18    answer is a CLO Holding being in a case is of no utility.  It

19    has no assets, no ability to respond.  One even wonders how

20    exactly other than reporting some guardian ad litem for

21    litigation --

22         THE COURT:  It would need to have permission from the

23    same court that deals with ENRON.

24         MR. STERN:  Basically, we actually, obviously, since

25    we were controlled the CL Holding we are not going to put on a

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

23

84GAAENRM                    Motions

1    very vigorous defense.  The person only person who is going to

2    put on a vigorous defense is the party who is going to

3    ultimately have to pay the tab.  In this case it's National

4    Australia Bank, they are here.  They can assert each and every

5    defense to avoidability that they wish to assert and we get to

6    avoid it as to them and to recover as to them.

7            Now, I think you know the essence of our case is --

8            THE COURT:  So your argument is that before there is a

9    recovery against the two banks there will be a declaration, a

10   moment in time before that the transaction underlying that is

11   avoided?

12           MR. STERN:  Correct.  And that step we cannot skip

13   over.

14           THE COURT:  Any brilliant comment that will add to

15   that.

16           MR. STERN:  I think you've summarized it exactly, your

17   Honor.  I have nothing further.

18           THE COURT:  So, we will hear Mr. Shimshak.

19           MR. STERN:  Thank you.

20           THE COURT:  Mr. Shimshak, don't shake your head.

21           MR. SHIMSHAK:  Sorry, your Honor.

22           May I start on that point?

23           THE COURT:  Not shaking your head.

24           MR. SHIMSHAK:  Not shaking my head but clearing things

25   up about CL Holding.  There is remarkably little said about CL

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

84GAAENRM                    Motions

1    Holdings in the complaint as you've already acknowledged.  But

2    the facts about CL Holdings are known and I don't think

3    Mr. Stern is going to have any objection to what I tell you

4    about CL Holdings.

5            Number one, CL Holdings was not in bankruptcy.  It was

6    a non bankrupt subsidiary of ENRON.

7            Second, at the time that this claim was filed that is

8    within that two year period that Mr. Stern was discussing

9    earlier CL Holdings was in existence.  ENRON functioned as in

10   its general partner.  The limited partner was a trust that

11   issued note to my clients and others.  So CL Holding was in

12   existence.  It was not defunct.  It was perfectly amenable to

13   suit.

14           Second, CL Holdings was subsequently dissolved after

15   the lawsuit was begun.  And the inference that is made in the

16   briefs through the dissolution is that it was not amenable to

17   suit any more.  That is not an accurate statement of the law.

18   A dissolved partnership under Delaware law, a partnership in

19   dissolution can still be sued.

20           THE COURT:  Like New York law.

21           MR. SHIMSHAK:  Correct.  So the initial transferee

22   existed at the time the lawsuit was filed.  It was dissolved

23   after the statutory deadline in the lawsuit was in place, but,

24   nonetheless, even if it had been dissolved at the time the

25   lawsuit was filed it was still amenable to suit.  So I want to

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

25

84GAAENRM                    Motions

1    clear up the statute --

2            THE COURT:  I'm not sure you completely cleared it up.

3    Give me the practicality.

4            MR. SHIMSHAK:  The practicality of it is is that there

5    was an initial transferee in existence and any suggestion that

6    there wasn't an initial transferee in existence, and,

7    therefore, because there was an initial transferee there should

8    be some elasticity applied to the law here doesn't hold up.

9            THE COURT:  After the put was there anything left to

10   CL Holdings?

11           MR. SHIMSHAK:  Your Honor, I honestly don't know as a

12   factual matter whether the put involved the entirety assets --

13           THE COURT:  Was there a functioning business after the

14   put?

15           MR. SHIMSHAK:  It certainly continued in existence and

16   to the extent it had other assets that would have been holding

17   those other assets.

18           THE COURT:  Do you know what this means since you've

19   paid the tax interest that year?

20           MR. SHIMSHAK:  This is a special purpose vehicle.  It

21   was not something that had a purpose as I don't know the

22   structure of the transaction.  Now, whether or not it had other

23   rights, other remedies that were available it as a functioning

24   partnership is something that is not in the pleadings.

25           THE COURT:  Let's assume as I think I should for the

84GAAENRM                    Motions

1    purposes of that analysis, that there was nothing more to the

2    special purpose.  Isn't that whatever purpose it had in life it

3    had served -- but it had served and that was its end.  It had

4    no more rationale for being and it was quickly allowed to died

5    either an a artificial or an actual death, what is to be

6    gained?

7              MR. SHIMSHAK:  That goes to the essence of what we're

8    talking about in the substance of these claims, so I am glad

9    you asked that question.  I want to start with Section 550

10   because in his argument Mr. Stern repeatedly said Section 550

11   identifies the parties, gives me an option as to who the

12   parties are that I can both avoid and recover.

13   You heard him say that.  It gives me the option --

14             THE COURT:  He said he is collapsing 548 and 550.

15             MR. SHIMSHAK:  Let me read to you from the legislative

16   history which is cited in Mr. Stern's memorandum of law at page

17   13 on Section 550 (A) which could not be clearer.  Section 550

18   (A) unambiguously annunciates the separation between two

19   distinct remedies, that of avoiding versus that of recovering a

20   transfer.  And when you look at the text of Section 550 (A),

21   Section 550 (A) does not say who you can avoid.  It says, to

22   the be extent that a transfer is avoided the trustee may

23   recover.  550 (A) is giving you an option not as to against

24   whom you can avoid, but against whom you can recover.  And that

25   was what Judge Gonzalez confronted when he looked at this case.

84GAAENRM                    Motions

1          THE COURT:  I think Mr. Stern is looking less to --

2     well, he is reading Mr. Judge Gonzalez the -- he wrote.  I

3     think you are reading him for more than he wrote.

4          MR. SHIMSHAK:  I'll tell you what Judge Gonzalez said

5     on Section 5 --

6          THE COURT:  I know what he said.  The point is it's my

7     job to do this.

8          MR. SHIMSHAK:  Of course.

9          THE COURT:  I'm trying to parse this statute in a way

10    that is contextually meaningful, and if you take the argument

11    and accept it as true, I think you should, there is no function

12    left for CLO Holdings.  What is needed is a declaration of

13    avoided which can be made in the same lawsuit as this lawsuit

14    against the two banks.

15         MR. SHIMSHAK:  Let me tell you what the difficulty is

16    with that.  You are focusing on the exceptional case, a case

17    where you've got a defunct entity for the sake of the

18    hypothetical that you are holding like CLO Holding and you are

19    annunciating a general rule which will be applicable in every

20    fraudulent case.

21         THE COURT:  I don't want to do that because I think

22    there's purpose in the separation in the normal context where

23    you have live companies on all three ends or at least in two

24    and three a trustee and two live conditions.  There is a

25    purpose to be served in obtaining a declaration of avoidance

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

84GAAENRM                     Motions

1    before you go after the party that is potentially a holder in

2    due course or a good faith purchaser for value.  And that is

3    the function that I detected in 548 and 550 served.

4                MR. STERN:  Your Honor, there is an irony in this

5    because the party that should be making this argument is not

6    the trustee who is bringing the suit.  Talking about the

7    ineffectuality of suing the initial transferee in begging for

8    the opportunity in that circumstance to raise all of the

9    defenses that are available to the initial transferee.  The

10   irony here is that ENRON made a decision on its own to avoid

11   suing the initial transferee because it decided on its own that

12   it would be futile to sue --

13               THE COURT:  And indeed there play be context waiver

14   and estoppel that prevents from doing so because it's hard to

15   charge and impute a knowledge to the special purpose entity in

16   dealing with ENRON that ENRON fully had.  Indeed, that's why it

17   set up the special purpose entity to perpetrate a fraud.

18               MR. SHIMSHAK:  Let's talk about the practicalities of

19   this as well.  I think in this situation and as a general

20   situation, the kind of things that gave Judge Gonzalez pause

21   when he looked at the notion that you could avoid a fraudulent

22   transfer against a subsequent transferee.  First he said who

23   has the knowledge of the defenses?  Who is going to have the

24   knowledge of the defenses under that circumstance?  It stands

25   to reason that the parties who were the participants in the

29

84GAAENRM                    Motions

1    transaction, the transferor and the transferee are going to

2    know the issues of reasonable value and the like.

3            THE COURT:   That's a normal context but not this one.

4            MR. SHIMSHAK:   I'm not prepared to concede or abandon

5    the notion because we're talking about this hypothetically that

6    it was futile to have sued the CL Holding.

7            THE COURT:   Maybe the remedy, why should we fully

8    assume?

9            MR. SHIMSHAK:   It's speculation by ENRON.

10           THE COURT:   So one way out of this in looking at a 12

11   (B) motion as properly made if there's no way to state a theory

12   only, no way to amend a theory, maybe we should require

13   Mr. Stern to amend his pleading, to state the kind of situation

14   in relationship to the lack of viability in the special purpose

15   entities that would justify collapsing 548 and 550.

16           MR. SHIMSHAK:   I certainly don't think that is the

17   solution here.  Let me give you some observations why.

18           THE COURT:   I don't think it is your purpose because I

19   think you can't prove that.

20           MR. SHIMSHAK:   Number one, and would make the

21   observation that ENRON which was serving as the general partner

22   of CLO Holdings owed a fiduciary duty to the limited partner.

23   So it is not an inescapable conclusion.

24           THE COURT:   Who is the limited partner?

25           MR. SHIMSHAK:   The limited partner was the trust which

84GAAENRM                    Motions

1    helped the limited partnership interest.

2            THE COURT:  Who was the trust?

3            MR. SHIMSHAK:  The trust is the special purpose

4    vehicle itself created to issue notes to clients like mine.

5    That money then went in to purchase their limited partnership

6    interest in the limited partnership.

7            THE COURT:  Trusts like these were the subject of

8    criminal proceeding?

9            MR. SHIMSHAK:  No, not at all, your Honor.  There's no

10   allegation to that effect.

11           THE COURT:  Maybe not this one.

12           MR. SHIMSHAK:  No.  No.  That has -- what ever ENRON's

13   history is, and I think I agree with Mr. Stern on this

14   concerning the fraudulent conduct, this transaction and parties

15   to this transaction had nothing to do with anything of that

16   sort.  I would say from the ENRON top of the transaction down

17   to the no holders.

18           But I want to return to focus --

19           THE COURT:  That's an important point.  And something

20   I was looking for in the complaint when I approached this

21   complaint I asked myself, why is it that we have no context in

22   Judge Gonzalez's opinion, no commercial context in judge

23   Gonzalez's opinion, and, indeed, not in the complaint as well?

24   What is really happening here?  And I asked myself, don't I

25   have to understand the commercial setting in order to rule

84GAAENRM                    Motions

1    intelligently on the law?  That is the way I've trained and

2    that is the way I approach all these cases.  They are

3    commercial cases.

4           So what appears to me what happened is a circularity

5    of this transaction.  One would think that ENRON was creating

6    this special purpose entity, both these special purpose

7    entities as a way of taking assets on its books that were

8    probably subject to substantial discounts liquidating them into

9    cash, giving them guarantee to allow that to happen, providing

10   some kind of other discount or favorable consideration to the

11   banks that came up to the window to take these items of paper

12   and inducing the bank to do this by the guarantee enabled the

13   banks to put all of this back into ENRON a year or two later.

14   So accomplishing nothing economically but accomplishing a great

15   deal from economic point of view in puffing the books of ENRON.

16          MR. SHIMSHAK:  I don't know the accounting treatment

17   but I can give you the economic rationale for the transaction.

18   The economic rationale is that you have got a clear series of

19   obligations that are throwing off income.

20          THE COURT:  Right.

21          MR. SHIMSHAK:  Let's just, for simplest terms this

22   is -- let's assume ENRON's got a bunch of due tos, people are

23   supposed to be paying ENRON money periodically.  ENRON decides

24   to monetize that income stream.  You can determine what that

25   income stream is worth.  You put that income stream into a

84GAAENRM                    Motions

1    special purpose vehicle and parties then, a trust issues notes.

2    The notes are in effect used by the trust to acquire the

3    limited partnership there, which relates to the value of the

4    assets.

5              THE COURT:  Explain the purpose of the guarantee.

6              MR. SHIMSHAK:  The money then goes out to ENRON and so

7    ENRON has managed to monetize its obligation.

8              THE COURT:  Which in olden days you would do by going

9    to the discount window of the bank and having the bank discount

10   you.

11             MR. SHIMSHAK:  Undoubtedly, there was some analysis

12   about what these assets were worth and that was the determined

13   by price that was ultimately paid by the note holders when they

14   brought the notes that were issued by the trust and the

15   proceeds bought back in --

16             THE COURT:  Then we know along the way without, it

17   seems, in authorizing guarantee agreement a put in the form of

18   a guarantee is created.

19             MR. SHIMSHAK:  The allegation is that in response -- I

20   can't remember the precise allegation, but that there was

21   credit support provided to the limited partnership through the

22   form of a put obligation.  So the partnership basically

23   acquired the right to put the assets that it was holding back

24   to ENRON in exchange for a payment.

25             THE COURT:  ENRON by this set of transactions converts

33

84GAAENRM                    Motions

1    a long term set of assets converts a long term liability into

2    short term assets and short term liabilities.  Because of this

3    guarantee by there was there was no legal obligation to do.

4           MR. SHIMSHAK:  ENRON got consideration in exchange for

5    that guarantee.  It got in exchange for agreeing to acquire the

6    assets it got the assets back.

7           THE COURT:  Now, let's take this in a form of a set of

8    allegations that one makes a complaint, all of which are taken

9    as true and because a motion to dismiss under Section 12 (B),

10   Rule 12 (B) was granted, there is no opportunity ever to get

11   the merits of this situation.  I think contextually a Court

12   should not dispose of this very serious set of issues, serious

13   in terms of allegation and serious in terms of understanding on

14   a motion.

15          MR. SHIMSHAK:  You have got to go back to what

16   happened on the complaint.  The allegation of the complaint on

17   the face of the complaint and you'll see that when you read it.

18          THE COURT:  I have read it.

19          MR. SHIMSHAK:  The allegation of the complaint was

20   that the put payment transfers were avoidable.

21          THE COURT:  Mr. Stern has drafted a complaint that

22   imposes minimal obligations --

23          MR. SHIMSHAK:  I understand that.

24          THE COURT:  -- the proof that the tenor of my remarks

25   is that this complaint has to be amended in such a fashion as

                    SOUTHERN DISTRICT REPORTERS, P.C.

                         (212) 805-0300

34

84GAAENRM                    Motions

1    to -- large scale obligations on his part.  In other words to

2    show that this was a fraudulent transaction from the beginning,

3    and, indeed, that there was either complicity on the part of

4    the banks or a knowledge of such series of events that they

5    should have been aware of what was going on.  Otherwise, they

6    are bad faith purchases of value.

7            Normally, you don't have to allege this, but in this

8    case I think you do because I agree with you, Mr. Shimshak,

9    that the normal which of interpreting these fact is the way

10   that Judge Gonzalez did it.  But I don't think that you create

11   an interpretation of statutes like this in a way that

12   eliminates the possibility of recovery.  This small exception,

13   there needs to be a possibility of recovery.

14           MR. SHIMSHAK:  May I understand --

15           THE COURT:  I have one more comment that the whole

16   substructure of bankruptcy is equity.  It's grown out of

17   insolvency law.  Insolvency law was a very strong and important

18   part of equity and the nature of these equitable proceedings is

19   not like an internal revenue code but actually like a

20   proceeding bill, an equity and statue material and the rule

21   must be viewed with that substructure in mind.  I am an old

22   fashioned lawyer still remembering this so.

23           MR. SHIMSHAK:  I agree with you and I want to make

24   sure that I understand the direction of the ruling.  As I

25   understand what the Court is saying is that Mr. Stern should be

35

84GAAENRM                    Motions

1    allowed to amend the complaint in a fashion that is going to

2    take us out of constructive fraudulent transfer and in which he

3    is going to have to demonstrate that the structure was

4    fraudulent in its nature, embrace the exception and to proceed

5    against the transferee.

6         THE COURT:  I think that might so, but the remedy that

7    I have is to revers and remand for such further proceeding as

8    shall be consistent with my ruling.  I would leave to Judge

9    Gonzalez to figure out what is passable and what is not.  I

10   will not imposing a straight jacket on him.  I think I'm ready

11   to rule.  Unless you say more I think you know where my drift

12   is, Mr. Shimshak.

13        MR. SHIMSHAK:  I think I do but I'll await the ruling.

14        THE COURT:  This is my ruling.

15        We're dealing with a very complicated financial

16   transaction, of course, set of financial transactions.  A large

17   sum of assets in the form of note receivables on the books of

18   ENRON were pooled and transferred to a special purpose entity

19   created for that purpose, a limited partnership by the name of

20   CLO Holdings and there were some other parts to it too.  But,

21   essentially, CLO Holdings there was the form of a limited

22   partnership and another special purpose entity CLO Trust became

23   the limited partner and ENRON became general partner.  The

24   purpose of this vehicle was to in effect create a syndication

25   of, I'm not sure whether it's partnership interests or for

36

84GAAENRM                    Motions

1    interests in the pool of assets, but essentially it was to

2    raise money that would be passed back in a series of

3    simultaneous transactions back to ENRON.  In context as

4    Mr. Shimshak calls it monetize a long term receivable.

5         So before ENRON had the ability to take into income

6    only the yearly flow of interests now it could affect a

7    discount on the entire set of assets, create the protection of

8    earnings, avoid discounts if the paper was shaky and otherwise

9    improve its balance sheets.  In the course of approximately a

10   year, this took place in the end of 1999, but in the course of

11   a year or a bit more than a year the assets that were

12   transferred to the two banks, the names of which Mr. Stern --

13        MR. STERN:  National Australia Bank and the other one

14   is French Canadian Caisse.

15        THE COURT:  C-A-I-S-S-E.

16        MR. STERN:  I can't pronounce the rest of it in

17   French.

18        THE COURT:  These two banks and perhaps others became

19   financially insecure in relationship to the values of the

20   assets that had been transferred to it.  And I take this from

21   not only the allegations of the complaint but background

22   information on ENRON in context of these proceedings and in

23   some fashion near term guarantee was obtained from ENRON in the

24   form of a put which enabled the special purpose entity to one

25   or both of them to call upon the general obligations of ENRON.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

84GAAENRM                    Motions

1    In Caisse the paper that had been originally transferred became

2    overly infirmed.  Whether this was the accord of the special

3    purpose entities alone or the context of the obligations it had

4    to the two banks and others or because of the infirmity of the

5    banks function and security of the banks, we don't know.

6            The effect of giving this put was to create a short

7    term obligation on the part of ENRON and one year later

8    initiate the main purposes of the transactions that occurred in

9    late 1999.  All this is in the context.

10            In reviewing Judge Gonzalez's decision which creates a

11    clear analysis of the confluence of the limitations of Section

12    546 affordability Section 548 and the liability of transferee

13    in Section 550 and I could not improve on the clarity of this

14    language, judge Gonzalez held the complaint as legally

15    insufficient.  He held that before one could recover against

16    the holder of assets that was not immediate but in the parlance

17    of the bankruptcy statute -- mediate, that is at least once

18    removed from privity -- there had to first be a voiding, an

19    actual voiding of the basic fraudulent conveyance.  That is to

20    say, the transaction between ENRON and the special purpose

21    entities that were created by ENRON had to be subjected to a

22    declaration of avoidance.  That is, they had to be avoided.

23    And this Judge Gonzalez held was a precondition to obtaining

24    recovery against the ultimate holder of the assets.

25            A lawsuit needed to allege the fact of having been

38

84GAAENRM                    Motions

1    avoided.  Judge Gonzalez held as a prerequisite to a lawsuit to

2    gain recovery of the assets subsequently transferred after this

3    transaction that was avoided.

4            In my analysis, although I agree with Judge Gonzalez

5    that the rule he states is the better rule in connection with

6    the divide, the opinions that are presented as precedents and

7    the rule more consistent with the statutory framework, I think

8    it necessary to leave open the possibility of an exception

9    where for legal or practical reasons it is impossible or

10   impractical to satisfy the precondition of an avoidance.

11           Like any condition precedent two ready an application

12   of the requirement of the condition precedent can amount to a

13   forfeiture.  And in this application it would bar the trustee

14   from seeking recovery of assets that arguably should be

15   recovered for the bankrupt to stay and the creditors thereof.

16           And so I believe that since we are involved with

17   statutory extensions of laws of equity and I think we should

18   inform the way that the bankruptcy code and rules are

19   interpreted not in the feasance of literal terms, but,

20   certainly, where there is sufficient ambiguity to allow such we

21   can satisfy both literal rule and equity by allowing this

22   condition precedent of avoidance to come into play in a lawsuit

23   where the only defendants are the holders of the assets that

24   were fraudulently conveyed in the first instance.

25           So, it would be required in this lawsuit for the

39

84GAAENRM                    Motions

1   trustee to amend and allege those conditions which would allow

2   such collapse of Section 548 and Section 550 of Title 11,

3   create a situation where the condition precedent of avoidance

4   can be part of the declaration that the Court is asked to

5   declare and that this could then be if even in the same

6   judgment the satisfaction of the condition precedent of Section

7   550 (A) (2).

8            Precisely what allegations are necessary to satisfy

9   this analysis I leave to judge Gonzalez in his wise

10  administration of the bankruptcy code.  But the allegations

11  should be a legally sufficient justification for bypassing the

12  normal regimen of first a preceding to avoid and therefore a

13  proceeding to recover from a subsequent transferee.

14           I think that will sufficiently explain my reasons for

15  reversal and I thank you for those interesting words.

16           MR. SHIMSHAK:  May I ask one clarifying question, your

17  Honor?

18           THE COURT:  Yes.

19           MR. SHIMSHAK:  I think this is implicit in what you've

20  prescribed but in dealing with any amended complaint it must

21  necessarily be true that the conditions you are talking about

22  as to the initial transferee in this case CL Holdings were true

23  as of the time that the complaint was filed.  In other words,

24  we can't --

25           THE COURT:  I can't say that because there is a window

                                                        40

      84GAAENRM                    Motions

1     time and I don't know how that would be -- I will not try to

2     clarify that.

3              MR. SHIMSHAK:  Okay.

4              THE COURT:  All right.  We will have a summary order

5     that captures this and these proceedings are now closed and the

6     case, the appeal is concluded.

7              MR. STERN:  Thank you very much, your Honor.

8              MR. SHIMSHAK:  Thank you, your Honor.

9                        o 0 o

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25