**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| Bernard L. Madoff Investment Securities LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | 11 Civ. 04212 (CM) |
| v. | |
| UBS AG, et al., | |
| Defendants. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-04285 (BRL) |
| UBS AG, UBS (LUXEMBOURG) SA, UBS FUND SERVICES (LUXEMBOURG) SA, UBS THIRD PARTY MANAGEMENT | |

COMPANY SA, ACCESS INTERNATIONAL ADVISORS LLC, ACCESS INTERNATIONAL ADVISORS EUROPE LIMITED, ACCESS INTERNATIONAL ADVISORS LTD., ACCESS PARTNERS (SUISSE) SA, ACCESS MANAGEMENT LUXEMBOURG SA (f/k/a ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) SA) as represented by its Liquidator MAITRE FERNAND ENTRINGER, ACCESS PARTNERS SA as represented by its Liquidator MAITRE FERNAND ENTRINGER, PATRICK LITTAYE, CLAUDINE MAGON DE LA VILLEHUCHET (a/k/a CLAUDINE DE LA VILLEHUCHET) in her capacity as Executrix under the Will of THIERRY MAGON DE LA VILLEHUCHET (a/k/a RENE THIERRY DE LA VILLEHUCHET), CLAUDINE MAGON DE LA VILLEHUCHET (a/k/a CLAUDINE DE LA VILLEHUCHET) individually as the sole beneficiary under the Will of THIERRY MAGON DE LA VILLEHUCHET (a/k/a RENE THIERRY DE LA VILLEHUCHET), PIERRE DELANDMETER, THEODORE DUMBAULD, LUXALPHA SICAV as represented by its Liquidators MAITRE ALAIN RUKAVINA and PAUL LAPLUME, ROGER HARTMANN, RALF SCHROETER, RENE EGGER, ALAIN HONDEQUIN, HERMANN KRANZ, BERNARD STIEHL, GROUPEMENT FINANCIER LTD.,

Defendants.

**REQUEST TO RE-DESIGNATE DOCUMENTS CONFIDENTIAL AND OBJECTION TO TRUSTEE'S MOTION FOR (I) A REPORT AND RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING PROCEDURES FOR ELECTRONIC DATA ROOMS; AND (III) AN ORDER MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER**

Access International Advisors LLC ("Access LLC"), for its request to re-designate documents confidential, and Access LLC and Claudine Magon de la Villehuchet, for their objection (the "Objection")[1] to the motion (the "Motion") of Irving H. Picard, as trustee (the "Trustee"), for entry of (I) a report and recommendation to the District Court for the appointment of Special Discovery Masters; (II) an order expanding the Case Management Procedures approved by the Court on November 10, 2010, granting access to the Trustee's existing electronic data room to additional defendants and establishing procedures for the creation of a separate electronic data room for documents produced to the Trustee; and (III) an Order modifying, in limited fashion, the Litigation Protective Order, dated June 6, 2011 (Dkt. 4137), including superseding all individual confidential agreements between the Trustee and any parties, respectfully state as follows.

## PRELIMINARY STATEMENT

1.      While a number of objections to the Motion have been filed, Access LLC presents a unique set of facts and request for relief. As will be described more fully below, in addition to objecting to the Trustee's Motion Access LLC seeks the opportunity to re-designate as confidential a small subset of its production made in response to a pre-litigation subpoena issued by the Trustee. Re-designation would cause no prejudice to the Trustee because any documents produced to the Trustee will remain in his possession for use in litigation involving Access LLC, and because Access LLC will not seek to re-designate any documents referred to in pleadings filed by the Trustee.

---

[1]    The Objection is timely. Although the original objection date to the Motion was August 31, 2011, the Trustee extended Access LLC and Mrs. de la Villehuchet's time to object until September 15, 2011.

2.  Access LLC complied in good faith with the Trustee's investigation of the fraud committed by Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC ("BMIS"). Because Access LLC was forced to close after Madoff's fraud decimated its business, it has limited resources to use to comply with its discovery obligations and to defend itself from litigation commenced by the Trustee. Access LLC produced all of its business records to the Trustee during the course of his investigation of BMIS. Now, over a year later, the Trustee seeks to make all documents produced to him during the course of his investigation available for review to all parties and related professionals, including over 5,000 defendants, in well over 900 adversary proceedings, including a selection of documents the Trustee has refused to re-designate as confidential.

3.  The relief sought by the Trustee is extraordinary not only in scope, but also for its disregard of fundamental privacy protections which should be afforded to the parties who produced documents to him. The Motion discards wholesale the concept of relevance in its approach to discovery and would render millions of documents available to thousands of litigants in hundreds of adversary proceedings commenced by the Trustee.

4.  Even the modest – and insufficient – protections afforded to producing parties would not be available to Access LLC because of an economic decision made at a time where the relief sought in the motion could not have been anticipated. After Access LLC produced over 4.6 million documents, the Trustee objected to Access LLC's designation of those documents as confidential. Faced with the staggering proposition of reviewing its entire production, Access LLC submitted to the Trustee and removed confidential designations from the documents it produced. But that decision, driven as it was by economic realities facing an entity with limited resources, should not act now to deprive Access LLC from the basic

4

protections afforded to litigants under the Federal Rules of Civil Procedure made applicable to this matter by the Federal Rules of Bankruptcy Procedure. Access LLC seeks the opportunity to be given notice by the Trustee when its documents are demanded for production by other parties, and the opportunity to object to their production on a case-by-case basis. As part of that general relief, Access LLC seeks leave of court to re-designate a tiny subset of its documents as confidential, in order to protect proprietary business information including private and confidential client information.

5. The Trustee's treatment of Mrs. de la Villehuchet demonstrates the breathtaking and poorly conceived scope of the relief sought in the Motion. Mrs. de la Villehuchet, upon commencement of an action against her, negotiated in good faith with the Trustee to resolve his claims. During the course of those negotiations, Mrs. de la Villehuchet produced documents, including private financial records and tax returns, all of which were marked confidential and provided solely in the context of compromise negotiations. When Mrs. de la Villehuchet produced those documents to the Trustee, she explicitly provided for their return or destruction upon the conclusion of negotiations. Now, the Trustee refuses to return or destroy the documents and by operation of the relief sought in the Motion, would make Mrs. de la Villehuchet's confidential personal financial information available to thousands of litigants and related professionals, even though her documents cannot be relevant to any action initiated by the Trustee.

6. The Trustee's Motion should be denied.

## BACKGROUND

7. Counsel for the Trustee issued a subpoena to Access LLC dated June 8, 2009, calling for the production of documents pursuant to Fed. R. Bankr. Pro. 2004 ("Rule 2004"). (the Trustee's subpoena to Access LLC is attached as Exhibit A to the Motion.)

8. Counsel for the Trustee also issued a Rule 2004 subpoena to Groupement Financier Ltd. dated March 6, 2009, care of "Access International."

9. By letter to the Trusted dated April 1, 2009, counsel for Access LLC advised the Trustee that Access LLC would produce documents, to the extent they were within its custody and control, and to the extent those documents were responsive to either subpoena.[2] (Ex. 1 to this Objection.)

10. Access LLC and the Trustee entered into a confidentiality agreement dated June 12, 2009, which allowed Access LLC to, among other things, identify documents being produced as "confidential." The agreement also permitted Access LLC to designate documents previously produced as confidential (the "Confidentiality Agreement"). (The Confidentiality Agreement is attached as Exhibit C to the Motion.)

11. Access LLC, cooperating with the Trustee's investigation of the BMIS fraud, made a number of document productions to the Trustee. However, it could not bear the cost of reviewing its electronic documents for responsiveness to the Trustee's Rule 2004 Subpoena. Therefore, by letter dated August 6, 2009, Access LLC produced all of its electronic documents to the Trustee as they were maintained in the ordinary course of its business. (Ex. 2 to this Objection.)

---

[2] That communication was also sent on behalf of Access International Advisors, Inc. ("Access Inc."). Access Inc. never received a subpoena from the Trustee, though it did agree to produce documents to the Trustee to the extent they were responsive to its subpoenas.

6

12.  All documents produced by Access LLC were designated confidential at the time of their production.

13.  Access LLC produced over 4.6 million documents to the Trustee, at considerable expense (the "Production").

14.  On June 3, 2010, almost a year after Access LLC completed the Production, counsel for the Trustee wrote to request the de-designation of Access LLC's documents as confidential. In that letter,[3] the Trustee suggested that Access LLC should identify which documents it produced to the Trustee were confidential under the terms of the litigation protective order then in place in the BMIS liquidation, but not the Confidentiality Agreement. (Ex. 3 to this Objection.)

15.  Unsurprisingly – because Access LLC lacked the financial resources to review the over 4.6 million documents produced to the Trustee – by letter dated June 15, 2010, Access LLC agreed not to object to the removal of confidential designations from all documents produced to the Trustee. (Ex. 4 to this Objection.)

16.  When Access LLC removed the confidentiality designations from its documents, it conditioned removal on the Trustee's use of the Production only in the United States, declining to authorize their use in foreign proceedings or their provision to third parties located abroad. Access LLC expressly reserved any and all rights available to it under applicable foreign law. Although the Trustee later objected to these conditions, this issue was never resolved. The

---

[3]  The letter was addressed to "Access International." Because the productions to the Trustee were made in response to a subpoena issued to Access LLC, we assume that the letter was directed to that entity.

7

Motion would violate the conditions placed on de-designation.[4] (*See* Ex. 4; the Trustee's response is attached as Ex. 5 to this Objection.)

17. In the Motion, the Trustee seeks to dissolve the various, separately negotiated confidentiality agreements entered into with parties that produced documents pursuant to Rule 2004. (Motion at ¶23.)

18. Among other things, the Trustee seeks to establish a second electronic data room that will be accessible by professionals acting for any of the over 5,000 defendants in the over 900 adversary proceedings initiated by the Trustee (Motion at ¶¶22, 32).

19. In the Motion, the Trustee seeks to place all documents produced to him, including documents produced and depositions taken pursuant to Rule 2004, into the second electronic data room. The only protections contemplated by the Trustee relating to access to that data room would be entry into a non-disclosure agreement and a practically meaningless limitation on viewing documents to professionals acting for defendants in BMIS-related adversary proceedings. (Motion at ¶¶22, 32.)

20. By letter dated August 31, 2011, Access LLC asked the Trustee whether any of its documents had been produced in response to any document requests in adversary proceedings pending under the main BMIS liquidation. That letter was never answered. (A copy of Access LLC's letter is attached to the Objection as Ex. 6.)

---

[4] The Trustee noted its objection to Access LLC's condition on the de-designation of its documents by letter dated November 24, 2010, even though Access LLC placed the condition on de-designation months earlier, on June 15, 2010. But the Trustee had already filed its original complaint against Access LLC on November 23, 2010, one day before it made its intention to ignore Access LLC's limitation known. By that point, the condition on de-designation was already violated because the original complaint included references to Access LLC's confidential documents. The Trustee's November 24 letter, purporting to render all Access LLC's documents de-designated while ignoring the condition placed on de-designation, was a nullity.

21. In attempting to resolve the Objection with the Trustee, Access LLC requested the right to re-designate certain documents confidential in order to gain the limited protections contemplated in the Motion. Access LLC estimates that, at most, 150,000 documents out of the over 4.6 million produced, representing only approximately 3.2 percent of the documents sent to the Trustee, would be subject to re-designation. Access LLC projects that this process could be concluded by the end of this month. Documents subject to re-designation would be limited to those containing private information relating to clients, including foreign investors in funds. Although re-designation would cause no hardship or prejudice to the Trustee, he refused to agree to this compromise. (A copy of Access LLC's letter to the Trustee requesting re-designation is attached as Ex. 7 to this Objection; a copy of the Trustee's response to Access LLC's letter is attached as Ex. 8.)

22. Access LLC and Mrs. de la Villehuchet are defendants in an adversary proceeding originally commenced by the Trustee in this Court that is now pending before Judge McMahon in the United States District Court for the Southern District of New York. *Picard v. UBS AG et al.*, No. 11 Civil 4212 (CM).

23. After commencement of the Trustee's suit, compromise negotiations were initiated on behalf of Mrs. de la Villehuchet. During the course of those negotiations, Mrs. de la Villehuchet made three productions to the Trustee on January 10, 2011, February 2, 2011 and March 2, 2011. In each of those productions, counsel for Mrs. de la Villehuchet noted that the contents thereof were confidential and provided for settlement purposes only, because they contained private financial information and included Mrs. de la Villehuchet's confidential, personal tax returns for relevant years. Each time Mrs. de la Villehuchet produced documents to

9

the Trustee, her counsel noted that, at the conclusion of settlement negotiations, documents should either be returned or destroyed.

24. At the conclusion of settlement negotiations, no compromise was reached. On September 9, 2011, counsel for Mrs. de la Villehuchet wrote to the Trustee and requested either the return or destruction of documents provided to him in the course of settlement negotiations. By telephone conference today, on September 15, 2011, counsel for the Trustee indicated that the documents would not be returned or destroyed, and that the Trustee intended to place Mrs. de la Villehuchet's private, confidential documents, including her personal tax returns, into the second electronic data room, notwithstanding Mrs. de la Villehuchet's ability to object to the Motion. (A copy of the September 9, 2011 letter is attached to this Objection as Ex. 9.)

25. In order to justify this extraordinary position, the Trustee noted a letter from Mrs. de la Villehuchet's counsel dated March 8, 2011. In that letter, Mrs. de la Villehuchet's counsel referred to a voice message left by counsel for the Trustee which asserted that the "for settlement purposes only" designation of Mrs. de la Villehuchet's documents was unacceptable in light of the then-existing protective order, notwithstanding the fact that the Trustee had already reviewed Mrs. de la Villehuchet's documents and negotiated with her lawyers without objection. Mrs. de la Villehuchet's counsel agreed that the documents provided to the Trustee would "fall under the ambit of the" then-existing Protective Order, but at no time waived her right to demand return or destruction of her documents following the conclusion of settlement negotiations. Mrs. de la Villehuchet reserved her right to object to disclosure going forward. (A copy of the March 8, 2011 letter is attached to this Objection as Ex. 10.)

26. The Trustee did not object to the manner by which documents were produced on behalf of Mrs. de la Villehuchet at the time of their production. Even when the Trustee called

10

regarding the applicability of the protective order, no mention was made of the Trustee's continuing obligation to return or destroy Mrs. de la Villehuchet's documents upon the conclusion of negotiations. The "return or destroy" condition on Mrs. de la Villehuchet's provision of documents to the Trustee in the context of settlement negotiations remains intact and should be enforced.

## STATEMENT OF OBJECTIONS

27. When Access LLC produced documents to the Trustee, it did so to comply with the Rule 2004 subpoenas issued by the Trustee. Access LLC expended significant resources to make the Production available to the Trustee and, in so doing, understood itself to be aiding the Trustee's investigation of the massive fraud perpetrated by Madoff and BMIS.

28. At no time did the Trustee indicate to Access LLC that its substantial Production would, one day, be made available to every professional related to a party to over 900 adversary proceedings. In the Motion itself, the Trustee notes that there are over 5,000 defendants to adversary proceedings filed in the BMIS liquidation. (Motion at ¶10.) The Trustee effectively seeks to make all of Access LLC's private business records available to the world. Moreover, because of Access LLC's de-designation of its documents – driven purely by practical realities – even the bare protections contemplated by the Motion would not be available to it. That is not fair, and contravenes and undermines Access LLC's good faith cooperation with the Trustee's investigative efforts.

29. Investigations of a debtor under Rule 2004 are considerably broader in scope than discovery in adversary proceedings under Bankruptcy Rule 7026 *et seq.*, which incorporate the discovery provisions of the Federal Rules of Civil Procedure. *In re Szadkowski*, 198 B.R. 140, 141 (Bankr. D. Md. 1996). Courts, comparing the two separate information gathering

mechanisms, have referred to the scope of Rule 2004 as "unfettered and broad" and "more in the nature of a fishing expedition." *In re Bennett Funding Grp.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (citing cases). "The purpose of such a broad discovery tool is to assist the trustee in revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed." *Id.* (noting also that Rule 2004 is a pre-litigation device used to investigate the debtor's rights) (citing cases). Once litigation commences and adversary proceedings are filed by the debtor, further investigations under Rule 2004 are improper and plaintiffs are limited to obtaining discovery under the discovery provisions of the Federal Rules of Civil Procedure. *In re Szadkowski*, 198 B.R. at 141. Because Rule 2004 "is meant to give the inquiring party broad power to investigate the estate, it does not provide the procedural safeguards offered by Fed.R.Bankr.P. 7026." *In re Bennett*, 203 B.R. at 28.

30.    When Access LLC cooperated with the Trustee and produced documents pursuant to a subpoena issued under Rule 2004, it did so in compliance with the Trustee's exercise of a broad investigative power under the U.S. Bankruptcy Code. The Trustee's Motion, however, seeks to avoid the inconvenience of complying with the ordinary discovery rules that apply in the adversary proceeding context, and purports to make all of the Trustee's Rule 2004 discovery available to any and all adversary proceeding defendants, notwithstanding the fact that Rule 2004 discovery is significantly broader in scope than discovery in adversary proceedings. *See In re Bennett*, 203 B.R. at 28 ("courts are wary of attempts to utilize Fed. R. Bankr. P. 2004 to avoid the restrictions of the Fed. R. Civ. P. in the context of adversary proceedings") (citing cases). The Trustee's attempt to throw up his hands in the face of vastly complex litigation that he himself initiated does not change the fundamentally inequitable nature of the relief sought in the

Motion, which would make investigative records available to third party litigants without a showing of relevance, without giving Access LLC an opportunity to object on a case-by-case basis, and without even giving Access LLC notice of the provision of its documents to a whole universe of third parties and related professionals. *See In re Szadkowski*, 198 B.R. at 142 ("[t]he Court will not allow litigants to utilize Rule 2004 as a substitute for discovery under the Federal Rules of Civil Procedure, especially where to do so would compromise the rights of parties subject to discovery requests.").[5]

31. Comparison of an investigation under Rule 2004 to discovery under Rules 7026 *et seq.* demonstrates the unfairness of the Trustee's request for relief. Access LLC could not have understood the removal of confidentiality designations of the Production made in connection with an investigation, which took place over a year before the Trustee filed the Motion, as abandoning basic protections under the Federal Rules of Civil and Bankruptcy Procedure, with implications reaching over 5,000 adversary proceeding defendants and their related professionals. The shifting context, from Rule 2004 investigation to adversary proceeding discovery, illustrates what Access LLC understood to be the context for the Production, and the stark, expansive and unfair relief sought in the Motion.

32. The Motion goes so far as to seek withdrawal of a fundamental protection which would otherwise be available to Access LLC, or any producing party: the inquiry into a document's relevance to a litigation prior to its production. Fed. R. Civ. Pro. 26(b)(1), made applicable to adversary proceedings under Fed. R. Bankr. Pro. 7026, states that, "[u]nless

---

[5] Although the facts of *In re Szadkowski* are different from those presented here, the thrust of that opinion is directly implicated: discovery under Rule 2004 cannot be used to prejudice the rights of a party otherwise available under the Federal Rules of Civil Procedure, made applicable to adversary proceedings by the Federal Rules of Bankruptcy Procedure, once adversary proceedings have commenced.

otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense . . . ." (emphasis added). *See In re Shur*, 225 B.R. 295, 298 (Bankr. E.D.N.Y. 1998) ("Sought for discovery must be 'relevant to the subject matter involved in the pending action.'") (citing Fed. R. Civ. P. 26(b)(1) and Fed. R. Bankr. P. 7026); *see also SEC v. Wang*, No. 88 Civ. 4461, 1989 WL 135558, at *1 (S.D.N.Y. May 22, 1989).

33. The Motion, by seeking to make the Production available to all adversary proceeding litigants and their related professionals, undermines the discovery protections of the Federal Rules because, in order to gain access to documents, an individual need only be a party to one of the myriad litigations filed by the Trustee. No showing of relevance is required to gain access to documents in the Trustee's proposed data rooms – it is only upon a request for production that some minimal protections are triggered.[6]

34. Yet even those minimal protections would not be afforded to Access LLC, based on its pre-litigation de-designation. As noted above, Access LLC could not have foreseen the Trustee's overwhelmingly broad approach to discovery upon the commencement of adversary proceedings related to the BMIS liquidation.

35. In addition to the foregoing, the Trustee has failed to meet the stringent standards imposed upon a party seeking to modify a protective order or a confidentiality agreement. In the

---

[6] Adversary proceeding defendants should be required to obtain discovery under the Federal Rules, which provide a ready mechanism for obtaining relevant documents from Access LLC under Fed. R. Civ. Pro. 45, applicable in adversary proceedings under Fed. R. Bankr. Pro. 9016. *See In re Teligent, Inc.*, 417 B.R. 197, 208 (Bankr. S.D.N.Y. 2009) (analyzing analogous circumstances involving a discovery demand seeking potentially privileged information, noting that "a party cannot show the substantial need necessary to obtain work product if it can obtain equivalent information through depositions or other means of discovery") (citing cases); *see also In re Szadkowski*, 198 B.R. at 141 n. 1 ("the Court finds that as to discovery in contested matters, 'the Federal Rules of Civil Procedure offer the preferable default . . . .'") (citation omitted).

Second Circuit, "[w]here there has been reasonable reliance by a party . . . a District Court should not modify a protective order . . . 'absent a showing of improvidence in the grant of [the protective] order or some extraordinary circumstance or compelling need.'" *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979). The same high bar applies to parties seeking to modify confidentiality agreements. *See US v. Oshatz*, 700 F. Supp. 696, 700-01 (S.D.N.Y. 1988) (holding that the *Martindell* standard applies even when there is merely a stipulation among the parties about the confidentiality of a deposition, as opposed to a formal protective order); *see also Botha v. Don King Prods., Inc.*, No. 97 Civ. 7587, 1998 WL 88745, at *2 (S.D.N.Y. Feb. 27, 1998) (applying the *Martindell* standard to situations where counsel for both parties informally agree to the confidentiality of a deposition). But in the Motion, the Trustee has made no showing of extraordinary circumstance or compelling need. Instead, the Trustee refers to a single, overreaching litigant's overbroad discovery request[7] which could be easily resisted on the grounds of relevance, and generally complains about dealing with discovery in the hundreds of cases he has brought before this Court. This barest of showings cannot satisfy the standards which apply to the extraordinary relief sought by the Trustee. *See Med. Diagnostic Imaging, PLLC v. Carecore Nat., LLC*, No. 06 Civ. 7746, 2009 WL 2135294, at *2 (S.D.N.Y. Jul. 16, 2009) (holding that the desire for efficiency does not constitute an extraordinary or compelling circumstance); *see also Maryland Cas. Co. v. W.R. Grace & Co.*, No. 83 Civ. 7451, 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994) (holding that judicial economy and the avoidance of duplicate discovery do not create extraordinary circumstances or compelling need).

---

[7] As one other objecting party has noted, however, the Trustee's reference to the document request by defendants in *Picard v. Merkin*, 09 AP 1182 (BRL) may have been overstated. *See* Defendants' [in *Picard v. Maxam Absolute Return Fund, L.P. et al.*, 10 AP 5342 (BRL)] Opposition to the Trustee's Motion at ¶12. (Dkt. 4324, Attachment 2.)

36. The Trustee's callous approach to documents produced to him by Mrs. de la Villehuchet during the course of settlement negotiations is defective for the reasons described above. Moreover, the relief called for in the Motion would make Mrs. de la Villehuchet's private, confidential financial records available to literally thousands of litgants and professionals with practically speaking, no protections to guard her valid rights to privacy and confidentiality. There can be absolutely no benefit to any party in making Mrs. de la Villehuchet's private records available in the manner contemplated in the Motion. Her personal finances cannot be relevant to any defendant or related adversary proceeding, and the cost to exclude those documents from the second electronic data room is slight or negligible.

37. Mrs. de la Villehuchet produced documents to the Trustee, relying on normal protections which operate in the context of settlement negotiations. Describing the strict standards applicable to modification of protective orders, the Second Circuit has acknowledged that without protections guaranteeing confidentiality, "parties would be less forthcoming in giving testimony and less willing to settle their disputes." *SEC v. TheStreet.com*, 273 F.3d at 230. The same policy consideration should guide the Court here. The Trustee, in the Motion, is taking advantage of Mrs. de la Villehuchet's good faith efforts to settle claims by making her private documents, designated confidential at the time they were produced and remaining confidential now, available to thousands of litigants. What is even more perplexing than the Trustee's disdain for the rules governing disclosure of confidential documents, is the fact that the Trustee has nothing whatsoever to gain by spreading Mrs. de la Villehuchet's tax returns to the wind. The Motion should be denied.

## CONCLUSION

38. In light of the foregoing, the Motion should be denied, and an order should be entered providing that no documents produced to the Trustee by Access LLC or Mrs. de la Villehuchet shall be made available to third parties, except upon a showing of relevance in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure, to the extent such documents are not privileged or subject to withholding under other applicable law or rules, including in the case of Mrs. de la Villehuchet, laws or rules governing the dissemination of documents produced in the course of compromise negotiations. *See, e.g.,* Fed. R. Evid. 408.

39. In addition to denying the Motion, an order should also be entered enforcing the conditions placed on the productions of documents made by Mrs. de la Villehuchet to the Trustee, requiring those documents, now that settlement negotiations are concluded, to be either returned or destroyed.

40. If negotiations with parties results in a modified set of procedures from those contemplated in the Motion, Access LLC may be prepared to agree to such procedures, upon review thereof, but only if Access LLC would be granted the ability to re-designate certain documents as confidential in order to be provided with notice upon any production by the Trustee and a case-by-case opportunity to object.

41. In any event, Access LLC seeks leave of court to re-designate part of the Production as confidential.

Dated: September 15, 2011

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

BY: _____
Robert W. Gottlieb
robert.gottlieb@kattenlaw.com
Brian A. Schmidt
brian.schmidt@kattenlaw.com

575 Madison Avenue
New York, New York 10022
(212) 940-8800

*Attorneys for Access International Advisors LLC and Claudine Magon de la Villehuchet*

18