Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

Hearing Date: October 19, 2011
Hearing Time: 10:00 A.M. EST

Objection Deadline: October 5, 2011
Time: 4:00 P.M. EST

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*And Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**SEVENTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
FEBRUARY 1, 2011 THROUGH MAY 31, 2011**

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ............................................................................. 1

II.  BACKGROUND .............................................................................................. 6

    A.   THE SIPA LIQUIDATION ....................................................................... 6

    B.   THE TRUSTEE, COUNSEL, AND CONSULTANTS ........................................ 8

    C.   PRIOR COMPENSATION ORDERS ............................................................ 9

III. SUMMARY OF SERVICES ............................................................................... 14

    A.   PROCESSING CUSTOMER CLAIMS ......................................................... 14

    B.   THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ................... 15

        i.    Avoidance actions, procedural orders to ensure efficient litigation thereof, and settlements ................................................................... 15

        ii.   Injunctions ....................................................................................... 18

        iii.  The allocation and distribution of customer property ................. 20

IV.  DETAILED DESCRIPTION OF SERVICES ........................................................... 21

    A.   MATTER 01 – COUNSEL TO THE TRUSTEE ............................................ 22

        i.    Trustee Investigation – Task Code 01 ........................................ 22

        ii.   Bankruptcy Court Litigation – Task Code 02 ........................... 23

        iii.  Feeder Funds – Task Code 03 ...................................................... 24

        iv.   Asset Research and Sale – Task Code 04 .................................. 24

        v.    Internal Meetings with Staff – Task Code 05 .......................... 24

        vi.   Billing – Task Code 07 .................................................................. 25

        vii.  Case Administration – Task Code 08 ......................................... 25

        viii. Banks – Task Code 09 .................................................................. 25

        ix.   Court Appearances – Task Code 10 ............................................. 26

        x.    Press Inquiries and Responses – Task Code 11 ....................... 26

        xi.   Document Review – Task Code 12 .............................................. 26

        xii.  Discovery - Depositions and Document Productions by the Trustee – Task Code 13 .......................................................................... 26

        xiii. International – Task Code 14 ......................................................... 27

        xiv.  Charities – Task Code 15 .............................................................. 28

        xv.   Access – Luxembourg – Task Code 17 ...................................... 28

## TABLE OF CONTENTS

(continued)

**Page**

B.      MATTER 02 – TRUSTEE TIME ................................................................ 28

    i.      Case Administration – Task Code 01 .................................................. 28

    ii.     Claims Review and Related Matters – Task Code 02............................ 29

    iii.    Trustee Investigation – Task Code 03 .................................................. 29

    iv.     Banks and Feeder Funds – Task Code 04 ............................................ 30

    v.      Asset Search, Recovery and Sale – Task Code 06................................. 30

    vi.     Avoidance Actions – Task Code 07...................................................... 31

    vii.    Bankruptcy Court Litigation and Related Matters – Task Code 08......... 31

    viii.   Non-Bankruptcy Court Litigation – Task Code 09................................ 32

    ix.     Court Appearance – Task Code 10 ...................................................... 32

    x.      Internal Office Meetings with Staff and Out of Office Meetings –
       Task Codes 11 and 12 ....................................................................... 32

    xi.     USAO and SEC/FINRA - Task Codes 13 and 14.................................. 32

    xii.    Trustee Report/Fee Application and Related Matters – Task Codes
       05 and 16........................................................................................ 33

    xiii.   Press Inquiries and Responses – Task Code 17 .................................... 33

    xiv.    Luxembourg Litigation – Task Code 18................................................ 33

C.      MATTER 03 – CHAIS ......................................................................... 33

D.      MATTER 04 – MERKIN ...................................................................... 34

E.      MATTER 05 – CUSTOMER CLAIMS ................................................... 35

F.      MATTER 06 – VIZCAYA ..................................................................... 36

G.      MATTER 07 – MADOFF FAMILY ........................................................ 36

H.      MATTER 08 – NORMAN LEVY............................................................ 37

I.      MATTER 09 – FAIRFIELD GREENWICH............................................... 38

J.      MATTER 10 – HARLEY ...................................................................... 39

K.      MATTER 11 – COHMAD SECURITIES CORPORATION ........................... 40

L.      MATTER 12 – PICOWER (Incorporating Fox & Marshall) ......................... 41

M.      MATTER 13 – KINGATE ..................................................................... 42

N.      MATTER 18 – THYBO ........................................................................ 42

O.      MATTER 19 – RUTH MADOFF............................................................. 43

# TABLE OF CONTENTS

(continued)

**Page**

| | | |
|---|---|---|
| P. | MATTER 20 –SHAPIRO | 43 |
| Q. | MATTER 21 – AVOIDANCE ACTION INVESTIGATION/LITIGATION | 44 |
| R. | MATTER 23 – CANAVAN | 44 |
| S. | MATTER 24 – ROBERT LURIA | 45 |
| T. | MATTER 25 – AMY LURIA | 45 |
| U. | MATTER 26 – Richard Stahl | 46 |
| V. | MATTER 27 – JP MORGAN CHASE | 46 |
| W. | MATTER 28 - WESTPORT | 47 |
| X. | MATTER 29 – RYE/TREMONT | 47 |
| Y. | MATTER 30 – HSBC (Incorporating Primeo, Alpha Prime and Herald) | 48 |
| Z. | MATTER 31 – KATZ/WILPON | 49 |
| AA. | MATTER 32 – LUXALPHA/UBS | 50 |
| BB. | MATTER 33 – NOMURA BANK INTERNATIONAL PLC | 51 |
| CC. | MATTER 34 - CITIBANK | 51 |
| DD. | MATTER 35 - NATIXIS | 51 |
| EE. | MATTER 36 – MERRILL LYNCH | 52 |
| FF. | MATTER 37 – ABN AMRO | 52 |
| GG. | MATTER 38 – BANCO BILBAO | 53 |
| HH. | MATTER 39 - FORTIS | 53 |
| II. | MATTER 40 – MEDICI/KOHN | 54 |
| JJ. | MATTER 41 - WHITECHAPEL | 55 |
| KK. | MATTER 42 - EQUITY TRADING | 55 |
| LL. | MATTER 43 – DEFENDER LIMITED | 55 |
| MM. | MATTER 44 – MACCABEE | 56 |
| NN. | MATTER 45 – LEVEY | 56 |
| OO. | MATTER 46 – GLANTZ | 57 |
| PP. | MATTER 47 – BONVENTRE | 58 |
| QQ. | MATTER 48 – BONGIORNO | 59 |
| RR. | MATTER 49 – GREENBERGER | 59 |

# TABLE OF CONTENTS
(continued)

**Page**

SS.    MATTER 50 – PITZ ........................................................................................... 60

TT.    MATTER 51 – CRUPI ........................................................................................ 60

UU.    MATTER 52 – FRIEDMAN ............................................................................... 61

VV.    MATTER 53 – MAGNIFY ................................................................................. 61

WW.    MATTER 54 – MENDELOW ............................................................................ 62

XX.    MATTER 55 – KUGEL ...................................................................................... 62

YY.    MATTER 56 – LIPKIN ...................................................................................... 63

ZZ.    MATTER 57 – PEREZ/O'HARA ....................................................................... 64

AAA.  MATTER 58 – PJ ADMINISTRATORS ........................................................... 64

BBB.   MATTER 59 – STANLEY SHAPIRO ............................................................... 65

CCC.   MATTER 60 – AVELLINO & BIENES .............................................................. 66

DDD.  MATTER 61 – MAXAM .................................................................................... 68

V.    COMPENSATION REQUESTED .................................................................................. 69

VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ........ 73

CONCLUSION ..................................................................................................................... 74

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, "Debtor"), respectfully submits this seventh application (the "Application") on behalf of the Trustee and itself for an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078 and 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing February 1, 2011 through and including May 31, 2011 (the "Compensation Period"), and (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period; and in support thereof, respectfully represents as follows:

## I.   **PRELIMINARY STATEMENT**

1.      The central decision made by the Trustee since he was "charged with sorting out decades of fraud" at BLMIS almost three years ago, and the flashpoint for almost every objection and appeal filed since, has been the calculation of "net equity," as defined under section 78*lll*(11)

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

and read in tandem with section 78fff-2(b) of SIPA.[2]  *In re Bernard L. Madoff Investment Sec.
LLC*, No. 10-2378, 2011 U.S. App. LEXIS 16884, at *4 (2d Cir. 2011).  After the conclusion of
the Compensation Period, but before the submission of this Application, the United States Court
of Appeals for the Second Circuit ruled that the Trustee's use of the Net Investment Method,
which calculates "net equity" under the "cash in, cash out" method, is "legally sound in light of
the circumstances of this case and the relevant statutory language."  *Id.* at *5.  The result of the
Circuit's affirmance of the Bankruptcy Court's net equity decision, 424 B.R. 122 (Bankr.
S.D.N.Y. 2010), implicates numerous aspects of "the unraveling of weaved-up sins" of Madoff's
Ponzi scheme.  *BLMIS*, 2011 U.S. App. LEXIS 16884, at *25-*26, n.8.

2.      For example, the Second Circuit's decision confirms what the Bankruptcy Code
and SIPA make clear: the Trustee has the power to avoid fraudulent transfers.  *Id.* at *36-*37,
n.11.  This Compensation Period found the Trustee and his counsel engaged in the nuts-and-bolts
of motion practice in hundreds of avoidance actions, with the ultimate goal of recovering
Customer Property, as that term is defined under section 78*lll*(4) of SIPA,[3] from those who
received fraudulent transfers from BLMIS and/or profited from Madoff's Ponzi scheme.

3.      In addition to arguing before the Second Circuit and pursuing the hundreds of
avoidance actions before this Court, the United States District Court for the Southern District of
New York became a hotbed of activity for the Trustee during this Compensation Period.  Over
100 docket numbers were assigned to Madoff-related matters in which the Trustee is involved,
including motions for leave to appeal orders of the bankruptcy court, appeals of right from orders

---

[2] SIPA §§ 78fff-2(b) and 78*lll*(11) define "net equity" as "the dollar amount of the account or accounts of a
customer" that can be discharged by the Trustee only "insofar as such obligations are [1] ascertainable from the
books and records of the debtor or [2] are otherwise established to the satisfaction of the trustee."

[3] SIPA § 78*lll*(4) defines "Customer Property" as "cash and securities . . . at any time received, acquired, or held by
or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such
property transferred by the debtor, including property unlawfully converted."

of the bankruptcy court, and motions to withdraw the reference from the bankruptcy court. Thus far, every Order of this Court has been upheld. In the few cases where motions to withdraw the reference were granted, motions to dismiss are now being adjudicated before the District Court. The Trustee foresees more litigation before the Supreme Court of the United States, the Second Circuit, and District Court, in addition to the Bankruptcy Court, in future compensation periods.

4.    The purpose of this liquidation and related litigation is to recover Customer Property for the benefit of BLMIS customers and creditors. Since the last Application, in which the Trustee reported the total recovery of $7.6 billion to the BLMIS estate, the Trustee has added the settlement with several funds established by the Fairfield Greenwich Group that, among other things, reduced the funds' claims against the BLMIS estate and allows the Trustee to work with the Fairfield funds to pursue assets from the former owners and managers of Fairfield. Along with the $1.025 billion settlement entered into with the Tremont Group of funds shortly after the close of this Compensation Period, the Fund of Customer Property will exceed $8.6 billion, which represents just over 50% of the approximately $17.3 billion in principal that was lost in the Ponzi scheme by customers who filed claims.[4]

5.    And shortly, the Trustee will make the first distribution of these recovered funds, releasing more than $300 million[5] to customers whose claims have not been fully satisfied

---

[4] The $8.6 billion recovery includes settlements executed after the Compensation Period and some not yet approved by the Court.

[5] By virtue of certain settlements that have been approved since the filing and approval of the motion for allocation and distribution (described more fully herein at ¶¶ 56-59), the Trustee has additional funds to distribute to customers with allowed claims.

because their net equity claims as of the Filing Date[6] exceeded the statutory SIPA protection limit of $500,000.[7]

6.      Finally, the Trustee and his counsel have determined or deemed determined all but four of the 16,518 customer claims submitted to him.  Two of the four remaining claims were determined after the close of this Compensation Period.  The parties relating to the remaining two claims are currently in settlement discussions with the Trustee's counsel.

7.      Independent of these efforts, no administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in section 326(a) of the Bankruptcy Code is <u>not</u> applicable in a SIPA liquidation, *see* section 78fff(b) of SIPA, no applications filed by the Trustee have or will ever include a fee request equal to three (3%) percent (or any other percentage) of the total amount of recoveries made by the Trustee for the benefit of customers of BLMIS.  Rather, the fees and expenses of the Trustee and of all counsel to the Trustee (including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel") as described in ¶ 116 of the Fifth Interim Report for the Period Ending March 31, 2011 (ECF No. 4072), as well as Graf & Pitkowitz Rechtsanwälte GmbH ("Graf & Pitkowitz") (ECF No. 3930) and UGGC & Associés (the "UGGC Firm") (ECF No. 4038), both retained during this Compensation Period, and various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels

---

[6] In this case, the Filing Date is the date on which the Securities and Exchange Commission commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm.  *See* SIPA § 78*lll*(7)(B) and *infra* ¶ 13.

[7] The Trustee must hold a significant amount of these recoveries in reserve due to appeals and other unresolved issues.

Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and Osborne & Osborne, P.A. (the "Osborne Firm"), retained during this Compensation Period (ECF No. 4018)), and consultants are paid from administrative advances from the Securities Investor Protection Corporation ("SIPC"), as are all administrative costs incurred by the Trustee. The Court affirmed during the hearing regarding the fifth application, "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth App. Hr'g Tr. 32, Dec. 14, 2010.

8.      As the Trustee and his Counsel's fees and expenses are chargeable to the general estate and not to Customer Property, the payment of fees and expenses to the Trustee and any of his Counsel has absolutely no impact on recoveries that the Trustee has obtained and will obtain and that will be allocated to the fund of Customer Property for *pro rata* distribution to BLMIS customers whose claims have been allowed by the Trustee.

9.      SIPC plays a specific role regarding compensation in a liquidation proceeding such as this one, where the general estate is insufficient to pay trustee compensation and SIPC is required to advance funds to pay the costs of administration. *See* SIPA §§ 78fff(5) and 78fff-3(b)(2). This Application, as with all other compensation applications, has been carefully reviewed by SIPC, which includes an analysis of the time records and services rendered. Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding the billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, as described at ¶ 213, *infra*, and (ii) actual, necessary and reasonable expenses incurred within the Compensation Period.

10.     No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008. Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by initiating litigations and settlement negotiations for the return of Customer Property, including significant settlements and recoveries that will total over $8.6 billion, to be distributed by the Trustee. Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his pursuit of Customer Property. The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

11.     As this Court has recognized, "With respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest most complex sets of litigation that have come down the pike. It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm or any organization to deal with." Sixth Fee App. Hr'g Tr. 45-46.

## II.     BACKGROUND

### A.     THE SIPA LIQUIDATION

12.     On December 11, 2008, Madoff was arrested by federal agents and criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"), captioned *United States v. Madoff*, No. 08-MAG-2735 (the "Criminal Case").[8]

---

[8] On March 10, 2009, the Criminal Case was transferred to Judge Denny Chin and assigned a new docket number, No. 09-CR-213 (DC).

6

13.     Also on December 11, 2008 (the "Filing Date" under SIPA), the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff, et al.*, No. 08-CV-10791 (the "Civil Case").  The complaint alleged that the defendants engaged in fraud through the investment advisor ("IA") activities of BLMIS.

14.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the Civil Case with an application filed by SIPC.  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that the Debtor was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

15.     On that date, the District Court entered the Protective Decree (ECF No. 4), to which BLMIS consented, which, in pertinent part:

(a)     appointed the Trustee to liquidate the business of the Debtor pursuant to section 78eee(b)(3) of SIPA and fixed the Trustee's bond;

(b)     appointed B&H as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(c)     removed the case to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court" or "Court") pursuant to section 78eee(b)(4) of SIPA.

16.     By order dated December 23, 2008, this Court approved the Trustee's bond. (ECF No. 11).

17.     On February 4, 2009, after a noticed hearing, the Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee (ECF No. 69), finding that the Trustee and B&H are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a), and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the

Bankruptcy Code, and Bankruptcy Rule 2014(a).  Thus, the Trustee and B&H are qualified to serve in this proceeding.

## B.    THE TRUSTEE, COUNSEL, AND CONSULTANTS

18.    The Trustee is a member of B&H.[9]  He practices principally in the areas of corporate reorganizations, bankruptcy, and insolvency.  He was also a contributing author to Collier on Bankruptcy, 15th Edition Revised.

19.    The Trustee was admitted to practice before the Court in 1982.  He served as the first United States Trustee for the Southern District of New York in a pilot program from October 1, 1979, the effective date of the Bankruptcy Code, through May 15, 1982.  Prior to his tenure as United States Trustee, Mr. Picard was Assistant General Counsel with the SEC in Washington, D.C. for three and a half years during which his responsibilities included, among other things, disclosure and enforcement matters and bankruptcy reorganizations.  Before becoming Assistant General Counsel, he spent approximately four years in various legal positions in the SEC's then-Division of Corporate Regulation, where his responsibilities primarily involved bankruptcy reorganizations.  Prior thereto, Mr. Picard spent more than six years working in the securities industry.

20.    Mr. Picard has previously served as trustee in the following ten SIPA liquidations: Jay W. Kaufmann & Company (Bankr. S.D.N.Y., No TP 84-70064A (BRL)); Norbay Securities, Inc. (Bankr. E.D.N.Y., No. 186-0174-353); Investors Center Inc. (Bankr. E.D.N.Y., No 089-0017-21); Faitos & Co., Inc. (Bankr. E.D.N.Y., No 191-1085-260); U.S. Equity Management Corp. (Bankr. S.D.N.Y., No. 95/1284 (CB)); Euro-Atlantic Securities, Inc., (Bankr. S.D.N.Y. No. 98/9304A (BRL)); Hanover, Sterling & Co., Ltd. (Bankr. S.D.N.Y. No. 96/8396A (REG));

---

[9] The Trustee will pay over to B&H the full amount of any interim compensation and disbursements awarded to him.  *See* Third App. Hr'g Tr. 85.

Klein Maus & Shire, Inc. (Bankr. S.D.N.Y., No. 00/8193A (AJG)); Montrose Capital Management Ltd. (Bankr. S.D.N.Y., No. 01/8170A (CB)); and Park South Securities, LLC (Bankr. S.D.N.Y. No. 03-8024A (RDD)).  He has also served as counsel to SIPC as trustee in two liquidation proceedings.

21.    In rendering professional services to the Trustee in this SIPA proceeding, B&H's legal team has been composed of professionals with extensive experience in, among other fields, bankruptcy, securities, tax, corporate law, and litigation, permitting the Trustee to conduct this liquidation efficiently.  B&H professionals have worked closely with the Trustee and his other professionals to coordinate assignments in order to avoid duplication of effort, which is beneficial to the customers, creditors, and other interested parties of BLMIS.

22.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his Counsel, has undertaken a comprehensive investigation of all of the affairs of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of Counsel but also the services of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent, FTI Consulting ("FTI"), and several investigative and industry consultants (collectively referred to herein as "Consultants").

C.    **PRIOR COMPENSATION ORDERS**

23.    On August 6, 2009, the Court entered an order approving both the Trustee and B&H's First Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from December 15, 2009 through April 30, 2009.  (ECF No. 363).  The Court awarded the Trustee an interim allowance of $607,383.00 for professional services rendered and $45.00 as reimbursement for actual and

necessary expenses that the Trustee incurred during that period. An additional $151,845.75 in fees incurred by the Trustee during that period was held back and remained subject to approval by the Court. The Court awarded B&H an interim allowance of $11,729,855.86 for professional services rendered and $274,203.03 as reimbursement for actual and necessary expenses B&H incurred during that period. An additional $2,932,463.97 in fees incurred by B&H during that period was held back and remained subject to approval by the Court. At that time, the holdback amount was twenty percent (20%) of fees incurred by the Trustee and B&H.

24.     On December 17, 2009, the Court entered an order approving both the Trustee and B&H's Second Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from May 1, 2009 through September 30, 2009. (ECF No. 1078). The Court awarded the Trustee an interim allowance of $668,484.00 for professional services rendered and $921.25 as reimbursement for actual and necessary expenses that the Trustee incurred during that period. An additional $167,121.00 in fees incurred by the Trustee during that period was held back and remained subject to approval by the Court. The Court awarded B&H an interim allowance of $17,023,281.48 for professional services rendered and $280,681.62 as reimbursement for actual and necessary expenses B&H incurred during that period. An additional $4,255,820.37 in fees incurred by B&H during that period was held back and remained subject to approval by the Court.

25.     In that same order, the Court approved a reduction in the holdback from twenty percent (20%) to fifteen percent (15%) of fees incurred. As such, the Court authorized the Trustee to disburse previously deferred funds equal to 5% of total fees requested to date, which amounted to $79,741.69 for the Trustee and $1,797,074.52 for B&H.

10

26.     On May 6, 2010, the Court entered an order approving both the Trustee and B&H's Third Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2009 through January 31, 2010.   (ECF No. 2251).   The Court awarded the Trustee an interim allowance of $570,852.56 for professional services rendered and $77.66 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.   An additional $100,739.69 in fees incurred by the Trustee during that period was held back and remained subject to approval by the Court.   The Court awarded B&H an interim allowance of $20,301,472.46 for professional services rendered and $390,204.89 as reimbursement for actual and necessary expenses B&H incurred during that period.   An additional $3,582,612.79 in fees incurred by B&H during that period was held back and remained subject to approval by the Court.

27.     On September 14, 2010, the Court entered an order approving both the Trustee and B&H's Fourth Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2010 through May 31, 2010.   (ECF No. 2981).   The Court awarded the Trustee an interim allowance of $511,021.92 for professional services rendered and $39.63 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.   An additional $90,180.33 in fees incurred by the Trustee during that period was held back and remained subject to approval by the Court.   The Court awarded B&H an interim allowance of $28,884,304.29 for professional services rendered and $731,371.19 as reimbursement for actual and necessary expenses B&H incurred during that period.   An additional $5,097,230.16 in fees

incurred by B&H during that period was held back and remained subject to approval by the Court.

28.     On December 14, 2010, the Court entered an order approving both the Trustee and B&H's Fifth Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from June 1, 2010 through September 30, 2010.  (ECF No. 3207).  The Court awarded the Trustee an interim allowance of $581,960.34 for professional services rendered and $954.41 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $102,698.91 in fees incurred by the Trustee during that period was held back and remained subject to approval by the Court.  The Court awarded B&H an interim allowance of $38,522,476.35 for professional services rendered and $851,332.34 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $5,778,371.44 in fees incurred by B&H during that period was held back and remained subject to approval by the Court.

29.     In that same order, the Court approved a release from the holdback of $100,000.00 to the Trustee and $3,400,000.00 to B&H.  As such, the Court authorized the Trustee to disburse these previously deferred funds.

30.     The Court stated after reviewing the Fifth Interim Applications and hearing objections thereto, "[U)nder all of the circumstances, and notwithstanding the statutory command that this Court shall approve the fees, I am very well aware of the Herculean effort being utilized in the litigation arena to recoup funds for the benefit of the victims, and notwithstanding how the Court of Appeals, or ultimately the Supreme Court, rules [on the net equity dispute]."  Fifth App. Hr'g Tr. 33, Dec. 14, 2010.

31.     On June 1, 2011, the Court entered an order approving both the Trustee and B&H's Sixth Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2010 through January 31, 2011.   (ECF No. 4125).   The Court awarded the Trustee an interim allowance of $713,799.00 for professional services rendered and $31.50 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.   An additional $107,069.87 in fees incurred by the Trustee during that period was held back and remained subject to approval by the Court.   The Court awarded B&H an interim allowance of $43,177,049.10 for professional services rendered and $1,103,196.25 as reimbursement for actual and necessary expenses B&H incurred during that period.   An additional $6,476,557.36 in fees incurred by B&H during that period was held back and remained subject to approval by the Court.

32.     In that same order, the Court approved a reduction in the holdback from fifteen percent (15%) to ten percent (10%) of fees incurred.   As such, the Court authorized the Trustee to disburse previously deferred funds equal to 5% of total fees requested to date, which amounted to $113,304.32 for the Trustee and $5,375,338.62 for B&H.

33.     Objections were filed to each of the six fee applications.   (ECF Nos. 351, 1055, 2233, 2943, 3308, 4088).   Thereafter, motions were filed for leave to appeal the Court's Orders granting the Trustee and B&H's first, second, third, fifth and sixth fee applications and overruling the related objections.   The District Court denied the motions for leave to appeal the first and third fee orders.   *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. M-47, 2010 U.S. Dist. LEXIS 3037 (S.D.N.Y. Jan. 11, 2010); *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. M-47, 2010 U.S. Dist. LEXIS 81492 (S.D.N.Y. Aug. 6,

2010).  The motions for leave to appeal the second, fifth, and sixth fee orders remain pending before the District Court, No. 11-mc-285, No. 11-265 (DAB).

## III.    SUMMARY OF SERVICES

34.     A SIPA proceeding contemplates the processing of customer claims and the orderly liquidation of the business of a broker-dealer, with the return of Customer Property to the failed brokerage's customers.   Accordingly, the Trustee's and B&H's services, which are highlighted here and summarized in greater detail below, are comprised of the specific, critical tasks accomplished in aim of that objective.

## A.    PROCESSING CUSTOMER CLAIMS

35.     From the very beginning of this proceeding, the Trustee and B&H, together with AlixPartners and FTI, have been processing the customer claims submitted to him.  By statute, the Trustee must look at all the books and records of BLMIS in order to determine and evaluate each customer claim.  Given the duration and complexity of the fraud engaged in by Madoff, each account has a unique and often extended history, frequently involving multiple transfers between accounts.  Each claim, therefore, requires the Trustee to engage in extensive forensic analysis in order to reach an ultimate determination of each customer claim.

36.     The Trustee received 16,518 claims filed by a wide variety of individuals and entities who were victims of Madoff's fraud.  These claimants include customers who had accounts with BLMIS, in addition to thousands of individuals or entities who invested indirectly in BLMIS through various feeder funds and other entities.

37.     As of May 31, 2011, the date on which the Compensation Period ended, the Trustee had determined or deemed determined all but four of the 16,518 customer claims.  Of the 16,514 determined or deemed determined claims, 2,426 were allowed, and the Trustee committed to pay approximately $794.9 million in funds advanced to him by SIPC.  These

allowed claims total over $6.88 billion. The Trustee's efforts in determining and satisfying the remaining claims are ongoing.

38.     In an effort to accelerate SIPA protection for individual victims of BLMIS who were suffering hardship, the Trustee and B&H implemented a Hardship Program. As of May 31, 2011, the Trustee had received 394 Hardship Program applications and approved 275. The Trustee began a second phase of the Hardship Program in December 2010, in which the Trustee communicated to defendants in adversary proceedings that while the law requires the pursuit of avoidance actions to recover customer property, he will not pursue actions against BLMIS accountholders suffering proven hardship. As of May 31, 2011, the Trustee had received 204 Hardship Program applications from avoidance action defendants relating to 110 adversary proceedings. After reviewing the facts and circumstances presented in these applications and, in many cases, requesting additional verifying information, the Trustee has or is in the process of dismissing sixty-one avoidance actions against the related defendants. The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their hardship applications are pending. The Trustee urges customers to continue using the Hardship Program Hotline and the Hardship Program if they believe they qualify.

**B.      THE RECOVERY AND RETURN OF CUSTOMER PROPERTY**

      **i.      <u>Avoidance actions, procedural orders to ensure efficient litigation thereof, and settlements</u>**

39.     The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA. In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow up activities to enforce the Trustee's rights to the return of

Customer Property.  As a result of the investigative efforts of the Trustee, he initiated litigation against feeder funds and certain individuals, many of whom are well known to the public through the press and other media.

40.    As of May 31, 2011, the Trustee, through Counsel, filed 1,075 actions seeking to recover approximately $100 billion in funds from various feeders funds, banks, BLMIS customers, and Madoff family members and friends.

41.    The Trustee has also filed several motions before this Court that will govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures will ensure compliance with the Bankruptcy Code and SIPA, consistency, and transparency.

42.    For example, during this Compensation Period, the Trustee and B&H filed a Motion for an Order Establishing Procedures for an Electronic Data Room in order to allow discovery for all adversary proceedings of certain documents supporting some of the key elements of the Trustee's claims while balancing the privacy interests of BLMIS customers and others.  (ECF No. 3869).  A hearing on this Motion is scheduled before the Court for October 5, 2011.

43.    On March 14, 2011, the Trustee and B&H filed a Motion for Entry of Litigation Protective Order to permit the use of materials produced by any party in the lawsuits initiated by the Trustee that have been or are deemed to comprise or contain confidential material while balancing the privacy interests of any producing party.  (ECF No. 3928).  The Court entered the Order on June 6, 2011.  (ECF No. 4137).

44.    The Trustee, B&H attorneys, counsel for WNBC-TV, NBC News, CNBC, and the New York Times Company, and counsel for various interested defendants – including financial institutional and charitable organizations – worked throughout the Compensation Period to

determine whether certain information could remain under seal or redacted in accordance with the procedures established by the Court's November 10, 2010 Order Approving the Litigation Case Management Procedures (the "Litigation Procedures Order").  On April 12, 2011, the Court entered an Order directing the Trustee to unseal certain information related to the financial institutions and maintain the seal on information related to charitable organizations.  (ECF No. 4009).

45.    On April 26, 2011, certain BLMIS claimants filed a motion to compel the production of a report of the Trustee's investigative activities and financial affairs of BLMIS.  (ECF No. 4045).  B&H attorneys opposed the motion as a premature and improper discovery demand, and the Court denied the Motion on these grounds on June 21, 2011.  The claimants filed a motion for leave to appeal the Court's Order, which was denied by the District Court on August 18, 2011, No. 11-mc-00277 (S.D.N.Y.) (RMB) (ECF No. 5).

46.    Without the need for protracted litigation, the Trustee succeeded in recovering billions of dollars by virtue of settlements with a number of parties, including the Fairfield Greenwich Group, the Tremont Group, and Hadassah.  Because of the efforts made by the Trustee and Counsel, approximately $8.6 billion will have been recovered for the benefit of customers, though the $5 billion settlement with the estate of Jeffry Picower is the subject of appeal, as described further herein.[10]

47.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties, including customers against whom the Trustee has preference claims, which could result in recoveries for the benefit of customers without the delay and expense of litigation.

---

[10] The $8.6 billion recovery includes settlements executed after the Compensation Period and some not yet approved by the Court.

ii.    **Injunctions**

48.    In an effort to protect the potential fund of Customer Property that is being pursued by the Trustee and Counsel through litigation and settlement efforts, the Trustee has filed complaints and corresponding applications seeking to, among other things, preliminarily enjoin various plaintiffs from continuing to litigate actions or commencing new actions against various individuals and entities related to this liquidation proceeding, including certain Madoff family members, insiders, and international financial institutions.

49.    The Trustee has brought these applications on several grounds: (i) the plaintiffs' actions against individuals and entities related to the BLMIS liquidation proceeding violate the automatic stay and other stays in place; (ii) these actions threaten to impede the orderly administration of the BLMIS liquidation and usurp the jurisdiction of this Court by, among other things, undermining the claims administration process and circumventing the Court's determination of the proper formulation of a customer's net equity under SIPA; and (iii) the claims brought by the plaintiffs are duplicative and derivative of the Trustee's own claims and improperly seek to recover fraudulently transferred funds and Customer Property in violation of the stays.

50.    During this Compensation Period, the Court issued a decision in *Picard v. Stahl*, Adv. Pro. No. 10-03268 (BRL), preliminarily enjoining several actions brought by BLMIS claimants against the Madoff family defendants pending the completion of the Trustee's litigation against the family members. *Picard v. Stahl*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011). Several appeals have been filed from the Court's Order, Nos. 11-CV-02135, 11-CV-02246, and 11-CV-02392 (AKH).

51.    The Trustee filed *Picard v. Repex Ventures, S.A*, Adv. Pro. No. 11-03477 (BRL), seeking to enjoin three class action lawsuits, consolidated in *Repex Ventures, S.A. v. Madoff*, No.

09-CV-00289 (S.D.N.Y.) (RMB), brought by indirect BLMIS investors against the Herald, Primeo, and Thema feeder funds pending the completion of the Trustee's litigation against these and other financial institutions, feeder funds, and individuals in *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (BRL). The parties agreed to adjourn the motion and time to respond to the complaint pending the resolution of motions to dismiss filed by the feeder funds in the consolidated class action.

52.    The Trustee worked with the defendants in *Picard v. Canavan*, Adv. Pro. No. 10-3200 (BRL), and *Picard v. Dichter-Mad Family Partners*, Adv. Pro. No. 11-01271 (BRL), to resolve voluntarily the two respective preliminary injunction applications. The Trustee is opposing preliminary injunction applications sought in *Picard v. Mendelow*, Adv. Pro. No. 10-04283 (BRL).

53.    Two Picower-related preliminary injunctions remain pending before the District Court. First, an appeal of the preliminary injunction application granted by the Court in *Picard v. Fox*, Adv. Pro. No. 10-03114 (BRL), during the prior compensation period has been fully briefed, but not yet heard, No. 10-CV-04652 and No. 10-CV-07101 (JGK). Second, BLMIS claimants filed an appeal of a preliminary injunction entered by the Court pursuant to the terms of the settlement agreement with the estate of Jeffry Picower. This appeal has also been fully briefed, but not yet heard, Nos. 11-CV-01298 and 11-CV-01328 (JGK), and prevents the Trustee from distributing $5 billion to BLMIS customers until it is revolved.

54.    The Court also denied Robert Jaffe's motion in *Picard v. Cohmad Securities Corp.*, Adv. Pro. No. 10-01305 (BRL), to enjoin third-party lawsuits brought against him. *Picard v. Cohmad Securities Corp.*, 443 B.R. 291 (Bankr. S.D.N.Y. 2011). An appeal was filed, No. 11-CV-01993 (MGC), but voluntarily dismissed by Jaffe.

### iii.    The allocation and distribution of customer property

55.    The ultimate purpose of protecting and recovering the fund of Customer Property is to distribute those monies, as SIPA directs, to BLMIS customers and creditors and reimburse SIPC.

56.    On May 4, 2011, the Trustee filed a Motion For An Order Approving An Initial Allocation Of Property To The Fund Of Customer Property And Authorizing An Interim Distribution To Customers (the "Allocation Motion").  (ECF No. 4048).  The Allocation Motion was unopposed, and the Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers (the "Allocation Order") on July 12, 2011.  (ECF No. 4217).

57.    Pursuant to the Allocation Order, the Trustee will distribute more than $300 million to customers relating to 1,230 BLMIS accounts whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000.  $300 million is vastly less than the $7.6 billion recovered by the Trustee when he sought entrance of the Allocation Order; the difference is being held in reserve pending the resolution of numerous appeals, including the Second Circuit's "net equity" decision, only now resolved in favor of the Trustee and the customers of BLMIS, the appeals relating to the $5 billion Picower settlement, and the appeal relating to the settlement with the Levy family, discussed *infra* ¶ 107.

58.    The result of these appeals is that instead of being able to return almost 45% of the principal that BLMIS customers lost in Madoff's Ponzi scheme, the Trustee is only able to make an approximate 4.6% distribution of the Customer Fund to them at this time.

59.    Even so, the Trustee is returning significant dollars to customers.  The initial distribution will be over $300 million, which is greater than the $272 million that customers were

going to receive subject to the Trustee's Allocation Motion. This increase is the result of the Trustee's further settlements and recoveries after the Court entered the Allocation Order.

## IV.    DETAILED DESCRIPTION OF SERVICES

60.    Given the unprecedented fraud perpetrated by Madoff, the issues involved are complex, the discovery is wide-ranging, and the litigation through BLMIS is hotly contested. All of this requires an enormous effort by the Trustee and his Counsel for the benefit of the victims. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to the internal B&H matter numbers and task codes.

61.    Matters 01 and 02 are the general matter numbers used by B&H and the Trustee, respectively. These matter numbers utilize individual task codes for specific categories of work to permit a more detailed analysis of the fees incurred. For specific litigations or other discrete matters to which a large number of hours are or will be billed, new matter numbers are opened and used, each of which are described in more detail herein.

62.    Matter Numbers 03-61 (with the exception of Matter 05, which relates to customer claims) relate to litigation filed against various individuals, feeder funds, and entities.[11] In each of these matters, B&H attorneys perform the following tasks related to the individual actions: conduct legal research; draft internal memoranda; engage in internal meetings with B&H attorneys and the Trustee's Consultants regarding investigation and litigation strategy; draft and file pleadings, motions, and other related litigation documents; and engage in discussions with

---

[11] Matter Number 14 has been reserved for future use by B&H professionals. As litigation has developed, Matter Numbers 15 – Herald, 16 – Alpha Prime, and 17 – Primeo have been closed and incorporated with Matter Number 30 – HSBC, and Matter Number 22 – Fox & Marshall has been closed and incorporated with Matter Number 12 – Picower. The reserved and closed matter numbers will no longer be listed in the Application.

counsel for defendant(s). Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during this Compensation Period.

## A.     MATTER 01 – COUNSEL TO THE TRUSTEE

63.     This matter categorizes the time spent by B&H and encompasses the below enumerated tasks.

### i.     Trustee Investigation – Task Code 01

64.     This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets. During this Compensation Period, B&H attorneys:

- Initiated, participated in, and monitored as many as 170 pending and 81 potential international third-party proceedings and 246 domestic third-party proceedings involving Madoff and/or BLMIS.

- Continued the investigation of banks, feeder funds, auditors, insiders, Madoff friends and family members, former BLMIS employees, and all other Madoff-related parties.

- Continued the investigation of Madoff Securities International Limited ("MSIL").

- Coordinated efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), Federal Bureau of Investigation ("FBI"), Financial Industry Regulatory Authority ("FINRA"), SEC, and many other local, federal, and international officials involved in the investigation of Madoff and BLMIS.

- Reviewed copies of records obtained by the FBI and SEC and other information from the USAO and securities regulators.

- Reviewed and responded to information requests from the United States Congress.

- Communicated with the Trustee, SIPC, Windels Marx, Young Conaway, AlixPartners, FTI, and various other consultants regarding IA accounts and records of the transactions, business investments, and ventures between the potential insiders and BLMIS, Madoff, and Madoff family members.

- Discussed and conferenced with SIPC, Windels Marx, Young Conaway, International Counsel, and various government entities regarding investigation and litigation strategy.

- Prepared requests for discovery and negotiated other discovery-related issues with adversaries.

- Organized and reviewed documents received in response to third party inquiries and subpoenas.

**ii.** **Bankruptcy Court Litigation – Task Code 02**

65. This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding and the adversary proceedings filed by the Trustee. During this Compensation Period, B&H attorneys:

- Attended the hearing on February 15, 2011 admitting the will of Mark Madoff to probate.

- Prepared for and attended the hearing held on March 3, 2011 before the Second Circuit Court of Appeals on the direct appeal of the Bankruptcy Court's "Net Equity" decision.

- Drafted the briefing and prepared and attended the hearing held on March 17, 2011 on the motion to aside pursuant to Federal Rules of Civil Procedure 60(b) the $220 million settlement with the Levy heirs.

- Prepared and filed motions to unseal complaints and exhibits containing confidential information.

- Drafted and prepared for hearing held on June 1, 2011 on the motion for entry of the amended Litigation Protective Order to allow the use of produced material, while protecting the privacy interests of producing parties.

- Drafted the briefing and prepared to attend the hearing held on July 12, 2011 on the motion to allocate recovered funds as Customer Property and distribute unreserved funds to BLMIS customers.

- Drafted and filed various motions, pleadings, amended complaints, motions to dismiss, scheduling orders, pleadings, stipulations, and other documents submitted to the Bankruptcy Court in connection with ongoing motion practice in the main bankruptcy proceeding and avoidance actions.

- Prepared and filed Trustee reports and fee applications for the Trustee, B&H, and various International Counsel; prepared opposition papers to motion for leave to appeal the Court's Order granting the compensation of Trustee and B&H.

- Researched causes of action under the Bankruptcy Code and other bankruptcy-related legal issues that have been or will be brought by the Trustee.

- Developed case management procedures for avoidance actions.

- Prepared for filing foreign/special counsel retention applications.

### iii.    **Feeder Funds – Task Code 03**

66.    The Trustee has delegated teams of B&H attorneys to identify, investigate, and monitor potential feeder funds in the U.S. and abroad and bring actions against such funds for the recovery of estate assets.  Separate matter numbers have been assigned to feeder funds sued by the Trustee, discussed more fully at ¶¶ 98-100, 102, 108-115, 122-126, 143-147, 168-172, *infra*.

### iv.    **Asset Research and Sale – Task Code 04**

67.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.  During this Compensation Period, B&H:

- Liquidated certain loan participations owned by BLMIS.

- Conferred with and assisted the Trustee in negotiating and resolving the BLMIS leases.

- Drafted settlement agreement with Yacht Bull relating to Madoff's yacht.

- Conferred and worked with Windels Marx regarding BLM Air Charter and other issues relating to the airplane.

- Monitored Surge, Inc.'s operation of market-making platform and trading activities.

### v.    **Internal Meetings with Staff – Task Code 05**

68.    This category relates to time spent by B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided the duplication of efforts.

### vi.    Billing – Task Code 07

69.    This category relates to time spent by B&H attorneys and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correct any errors in time entries, write off certain time and expenses as agreed to by B&H, and other related tasks.

### vii.    Case Administration – Task Code 08

70.    This category relates to time spent assisting the efficient administration of the case.  During this Compensation Period, B&H:

- Conducted conflict checks.

- Implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents.

- Created protocols relating to discovery, filings, and external communications.

- Implemented and managed work flows between B&H and Consultants.

- Oversaw administrative aspects of the retention of experts, other professionals, and vendors, and monitored their ongoing activities.

- Maintained case files.

- Calendared and docketed all hearings, return dates, and deadlines in main liquidation proceeding and all other litigations.

- Monitored and tracked dockets of related proceedings.

- Managed and monitored staffing needs.

### viii.    Banks – Task Code 09

71.    Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized by this task code relates to the investigations of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and

subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Separate matter numbers have been assigned to banks sued by the Trustee, discussed more fully at ¶¶ 139-142, 145-147, 150-167, *infra*.

### ix.    Court Appearances – Task Code 10[12]

72.    This category relates to time spent by B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### x.    Press Inquiries and Responses – Task Code 11

73.    This category relates to time spent by B&H assisting the Trustee in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### xi.    Document Review – Task Code 12

74.    This category relates to time spent by B&H reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

### xii.    Discovery - Depositions and Document Productions by the Trustee – Task Code 13

75.    This category relates to time spent by B&H attorneys conducting depositions and preparing and responding to discovery requests issued in the ongoing litigations and by various third parties.  During this Compensation Period, B&H:

- Prepared, reviewed, finalized, and served subpoenas.

- Monitored subpoenas issued and documents produced in response, and followed up regarding deficient document productions.

---

[12] Many attorneys making court appearances bill their time for appearances to either Task Code 02 – Bankruptcy Court litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

- Prepared, reviewed, finalized, and served initial disclosures, case management plans, and motions for filing with the Bankruptcy Court to implement case-wide discovery procedures.

- Prepared, reviewed, finalized, and served discovery requests.

- Processed, uploaded, and analyzed incoming document productions.

- Responded to discovery requests served on the Trustee by defendants and third parties.

- Analyzed, tracked and processed BLMIS data.

- Coordinated with the Trustee's expert witnesses to prepare for trial.

- Researched foreign jurisdiction discovery laws.

- Oversaw work performed by the Trustee's vendors.

### xiii.    **International – Task Code 14**

76.    The fraud Madoff perpetrated through BLMIS has many international implications, involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including England, Gibraltar, Austria, Canada, Bermuda, the British Virgin Islands ("BVI"), the Cayman Islands, the Bahamas, Ireland, France, Luxembourg, Switzerland, and Spain.    These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery.    The investigation is made challenging by the broad array of anti-discovery laws, bank secrecy statutes, and other foreign legislation designed to limit discovery.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third party actions brought in Europe and the Caribbean.

xiv.    **Charities – Task Code 15**

77.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, sealing and subsequently unsealing complaints filed against charities, and corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts.

xv.    **Access – Luxembourg – Task Code 17**

78.    This category relates to the monitorship of an action brought in Luxembourg against Access Group, UBS, and the directors of LuxAlpha, a BLMIS feeder fund based in Luxembourg, and conferences with SIPC staff regarding the same.

## B.    MATTER 02 – TRUSTEE TIME

79.    This matter categorizes time spent by the Trustee and encompasses the below enumerated tasks.

i.    **Case Administration – Task Code 01**

80.    This category relates to the wind-down of the Debtor's business and other administrative matters.  During this Compensation Period, the Trustee:

- Reviewed communications received by the Trustee, the BLMIS office, or the Claims Processing Center, and prepared the appropriate response or ensured follow-up.

- Maintained brokerage accounts and money management account, and purchased and rolled-over Treasury bills.

- Retained, as necessary, additional consultants, expert witnesses, international counsel, and other advisors.

- Obtained SIPC administrative cash advances, communicated with AlixPartners concerning payment of bills submitted to the Trustee, reviewed and signed monthly SIPC-17 cash receipts and disbursement reports, reviewed monthly projected administrative budgets, and communicated with SIPC staff regarding the same.

28

- Reviewed monthly invoices of consultants and communicated with SIPC staff regarding the same and arranged for payment.

- Communicated with SIPC financial and operations staff to ensure efficient administration of finances.

- Prepared and revised responses to inquiries of various government agencies regarding BLMIS and the wind-down of the estate, including the Internal Revenue Service, SEC, and New York State Department of Tax & Finance.

- Communicated with B&H attorneys and AlixPartners regarding outstanding issues with vendors and negotiated and resolved outstanding estate obligations.

### ii.    Claims Review and Related Matters – Task Code 02

81.    This category relates to customer claims.  During this Compensation Period, the

Trustee:

- Reviewed in an ongoing manner and as necessary the submitted customer claim forms and supplements thereto, and reviewed any additional related BLMIS account documentation.

- Communicated with SIPC staff, B&H attorneys, and AlixPartners regarding the customer claims review process, the customer claims database, the reconciliation of IA accounts, and other matters of interest in determining claims and issuing determination letters.

- Reviewed and revised determinations; communicated by phone, letter, and email with customers and their representatives regarding review, allowance, or denial of particular claims (e.g., including the *pro rata* distribution of funds recovered to date); reviewed proposed customer assignments and releases to the extent of claims to be satisfied; and, when necessary, communicated with the B&H claims team and referred certain claims for follow-up and response.

- Engaged in settlement negotiations with customers against whom the Trustee has preference claims, i.e. those customers who withdrew money from a BLMIS account ninety (90) days prior to the Filing Date.

### iii.    Trustee Investigation – Task Code 03

82.    This category relates to the Trustee's investigation into BLMIS, Madoff, and

various assets.  During this Compensation Period, the Trustee:

- Discussed and conferenced both internally with B&H attorneys and externally with SIPC staff, Windels Marx, International Counsel, and various governmental entities regarding investigation and litigation strategy.

- Communicated with B&H attorneys, International Counsel, SIPC staff, Windels Marx, AlixPartners, and FTI regarding the IA accounts and records of the transactions, business investments, and ventures between the potential insiders and BLMIS, Madoff, and Madoff family members.

- Reviewed discovery received in response to issued subpoenas and from other third parties.

### iv.    Banks and Feeder Funds – Task Code 04

83.    The Trustee has delegated teams of B&H attorneys to identify, investigate, and monitor banks and feeder funds, and bring actions against such banks and feeder funds for the recovery of estate assets where possible.  For further discussion of the feeder fund litigations, please see ¶¶ 98-100, 102, 108-115, 122-126, 139-147, 150-172, *infra*.

### v.    Asset Search, Recovery and Sale – Task Code 06

84.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.  During this Compensation Period, the Trustee:

- Reviewed claims and supporting affidavits filed in connection with the settlement of various class actions involving securities held by BLMIS in its market making and trading capacities, and conferenced with AlixPartners regarding the same.

- Discussed with B&H attorneys the sale or restructuring of certain loan participations owned by BLMIS and followed up on other loan participation and restructuring matters.

- Discussed with broker the status of the securities remaining in the Trustee's account and sale possibilities.

### vi.       Avoidance Actions – Task Code 07

85.      As of May 31, 2011, 1,066 of the 1,075 actions filed by the Trustee and his Counsel are avoidance actions pending against feeder funds, banks, BLMIS customers, Madoff friends and family members, and other Madoff-insiders for the return of Customer Property.

86.      This category relates to the investigation and litigation strategy sessions engaged in by the Trustee with B&H attorneys, International Counsel, SIPC, AlixPartners, and FTI, communications with counsel for the defendants to the various avoidance actions, negotiations of potential settlement agreement, and the review of documents related to the various avoidance actions and potential settlements.

### vii.       Bankruptcy Court Litigation and Related Matters – Task Code 08

87.      This category relates to the review and filing of various motions and pleadings, and the initiation and prosecution of adversary proceedings in the Bankruptcy Court.  During this Compensation Period, the Trustee:

- Reviewed amended complaints, motions, pleadings, proposed orders, and other documents to be submitted to the Bankruptcy Court in connection with all avoidance actions.

- Reviewed the objections filed in response to the Trustee's determination of claims.

- Communicated regularly with the SIPC staff, B&H attorneys, and counsel for various customers who filed actions regarding customer claims, the "net equity" definition, and other issues.

- Monitored the Chapter 11 case of BLM Air Charter and communicated regularly with counsel for BLM Air Charter.

- Time spent by the Trustee in preparing his interim reports, which are required every six (6) months and summarize all activities conducted by the Trustee and all his Counsel within that reporting period, are also billed to this task code.

**viii.    Non-Bankruptcy Court Litigation – Task Code 09**

88.    B&H attorneys monitor all third-party actions, domestic and international, that may be related to BLMIS or Madoff.  This category relates to the Trustee's review of information related to such matters, and correspondence with the teams regarding their ongoing investigations and findings and the status of such third party litigations.

89.    The Trustee's time in this category also includes the review and execution of affidavits for foreign litigation, including those in Gibraltar, the British Virgin Islands, and the Cayman Islands.

**ix.    Court Appearance – Task Code 10**

90.    This category relates to time spent by the Trustee making court appearances as necessary.

**x.    Internal Office Meetings with Staff and Out of Office Meetings – Task Codes 11 and 12**

91.    This category relates to internal strategy meetings and training sessions between the Trustee and his professionals, as well as additional out-of-office meetings between the Trustee and other parties.

**xi.    USAO and SEC/FINRA - Task Codes 13 and 14**

92.    This category relates to communications with the various government agencies, such as the USAO, SEC, FINRA, and FBI, involved in the investigation of BLMIS, Madoff, and various assets.  During this Compensation Period, the Trustee:

- Coordinated efforts with the USAO, SEC, FINRA, FBI, and other local, federal, and international officials involved in this investigation.

- Obtained copies of records seized by the FBI and SEC, and other information from the USAO, FINRA, and other securities regulators.

- Engaged in telephone conferences, correspondence, and meetings with representatives of the USAO.

### xii.  Trustee Report/Fee Application and Related Matters – Task Codes 05 and 16

93.    In addition to the time spent preparing this Application, this category relates to time spent by the Trustee reviewing the monthly statements of the Trustee, B&H, Windels Marx, Young Conaway, the Osborne Firm, and International Counsel to correct any errors in time entries, write off certain time and expenses as agreed to by the Trustee for the benefit of SIPC, and respond to certain adjustments requested by SIPC after its review of each monthly fee statement.

### xiii.  Press Inquiries and Responses – Task Code 17

94.    This category relates to time spent by the Trustee responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences regarding BLMIS, Madoff, customer claims, and the recovery of funds.

### xiv.  Luxembourg Litigation – Task Code 18

95.    This category relates to time spent by the Trustee in monitoring an action brought in Luxembourg against Access Group, UBS, and the directors of LuxAlpha, a BLMIS feeder fund based in Luxembourg.

## C.    MATTER 03 – CHAIS[13]

96.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Stanley Chais, Pamela Chais, and a number of related entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.

---

[13] As with Matter 01, the remainder of the B&H matter numbers described herein is used by B&H professionals. The Trustee only utilizes Matter 02.

97.    In addition to the tasks outlined above in ¶ 62, during this Compensation period, B&H attorneys reviewed and analyzed the answers filed by the Chais Defendants to the complaint.  On February 24, 2011, the Court entered a Decision and Order granting the Trustee's motion to dismiss defendants' counterclaims and denying the motions to dismiss brought by defendants Mari Chais, Mark Chais, William Chais, Emily Chasalow and Wrenn Chais.  The Trustee also received leave to file an amended complaint against defendant Michael Chasalow, and B&H attorneys drafted the amended complaint.  B&H attorneys prepared for the initial case conference held on June 17, 2011.

### D.    MATTER 04 – MERKIN

98.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel Capital Corporation (together, the "Merkin Funds"), and J. Ezra Merkin (collectively, the "Merkin Defendants") seeking the return of more than $557 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants.  With leave of the Court, the Trustee filed a second amended complaint on December 23, 2009 asserting Merkin's personal liability for obligations of the partnerships.

99.    In addition to the tasks outlined in ¶ 62, during this Compensation period, B&H attorneys monitored arbitrations and other actions pending against the Merkin Defendants and have engaged in extensive discovery responding to the expansive requests of the Merkin Defendants.  The pre-trial conference was held on July 27, 2011.

100.    On November 17, 2010, the Court denied the Merkin Defendants' motion to dismiss in favor of the Trustee.  Defendant Bart M. Schwartz, as Receiver of Defendants Gabriel

Capital, L.P. and Ariel Fund Limited, filed a motion for leave to appeal, No. 11-mc-00012

(KMW).  B&H attorneys submitted briefing in opposition to the appeal and in support of the

Court's dismissal, and Judge Woods denied the motion on August 31, 2011, ECF No. 9.

## E.    MATTER 05 – CUSTOMER CLAIMS

101.    This matter categorizes time spent by B&H regarding customer claims.  During

this Compensation Period, B&H attorneys:

- Reviewed customer claim forms and supplements thereto and reviewed any additional related BLMIS IA account documentation.

- Assisted the Trustee in making determinations regarding customer claims, and prepared the Trustee's determination letters and the assignment and release forms for execution by customers.

- Communicated regularly by phone, letter, and email with customers or their representatives regarding claims procedure and process, status of claims review, and other matters of concern to customers.

- Reviewed objections to the Trustee's determination of claims and communicated regularly with the Trustee, SIPC, and counsel for the parties who filed the objections.  As of May 31, 2011, approximately 2,315 objections have been filed with the Bankruptcy Court.

- Continued the Trustee's Hardship Program, reviewed Hardship Applications, and communicated regularly with the Trustee, SIPC, and AlixPartners regarding the review and determination of Hardship applicants.

- Reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

- Communicated regularly with the Trustee, SIPC, and AlixPartners regarding the customer claims review process, the customer claims database, reconciliation of IA accounts, and other matters of interest in determining claims.

- Reviewed schedules of information prepared by AlixPartners and prepared additional reports for the Trustee and SIPC.

- Maintained and updated the Trustee website to provide public access to case filings and important case information.

- Continued the training of B&H attorneys and paraprofessionals to assist the Trustee in reviewing and determining customer claims.

## F.    MATTER 06 – VIZCAYA

102.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Vizcaya Partners Limited ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants. The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers. The Trustee filed an action against these additional defendants in Gibraltar Supreme Court for an injunction or freezing order, disclosure, and other relief.

103.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys reviewed and analyzed the answers filed by Bank Safra and Zeus to the amended complaint. Asphalia and Siam remain in default, which was entered by the Court on July 13, 2010.

## G.    MATTER 07 – MADOFF FAMILY

104.    This matter categorizes time spent by B&H attorneys pursuing the numerous avoidance actions against members of the Madoff family. The action against Peter B. Madoff, the estate of Mark D. Madoff, Andrew H. Madoff, and Shana D. Madoff (collectively, the "Family Defendants") seeks the return of nearly $200 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. A motion to dismiss is pending before the Court in this case.

105.    The Trustee also commenced an adversary proceeding against Marion Madoff, Peter Madoff's wife, to recover over $14 million in fictitious salary payments and other fraudulent conveyances.  During this Compensation Period, the Trustee granted Ms. Madoff several extensions of time to respond to the complaint.

106.    The Trustee commenced two adversary proceedings against members of Mark and Andrew Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff, and various proceedings against relatives of Bernard Madoff beyond his immediate family to recover preferences and fraudulent conveyances.  The Trustee also commenced two adversary proceedings against foundations created by and named for Mark and Andrew Madoff and their spouses.  These defendants have answered, moved to dismiss the complaints, or have otherwise received extensions of time to respond to the complaints against them.

## H.    MATTER 08 – NORMAN LEVY

107.    In January 2010, the Trustee reached a $220 million settlement agreement (the "Levy Settlement") with Jeanne Levy-Church and Francis N. Levy (collectively, the "Levys") to settle the Trustee's potential litigation claims against them regarding certain accounts held by the Levys and their family members.  This Court approved the Levy Settlement by Order on February 18, 2010.  Exactly one year later, certain BLMIS claimants filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to set aside the Levy Settlement.  (ECF No. 3860).  During this Compensation Period, B&H attorneys drafted an opposition to that motion.  The Court denied the motion on March 30, 2011, ECF No. 3984, and the claimants appealed. (ECF No. 4005).  The matter is before the District Court, 11-CV-3313 (DAB), and B&H attorneys drafted a counter-designation of the record and counter-designation of the issues on appeal, and prepared briefing in support of the Court's Orders.

## I.    MATTER 09 – FAIRFIELD GREENWICH

108.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Fairfield Sentry Limited, Greenwich Sentry Limited, L.P., and Greenwich Sentry Partners, L.P. (collectively, the "Fairfield Defendants") seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Defendants.

109.    In addition to the tasks outlined in ¶ 55, during this Compensation Period, B&H attorneys negotiated and finalized a settlement agreement to resolve the Trustee's claims against Fairfield Sigma, Fairfield Lambda, and Fairfield Sentry, a BVI fund that was Madoff's single, largest feeder fund.

110.    Fairfield Sentry is currently in Liquidation in the BVI and is represented by court-appointed Joint Liquidators.  By virtue of the settlement with the Joint Liquidators, the Trustee, among other things: (i) secured a Judgment against Fairfield Sentry, Fairfield Lambda, and Fairfield Sigma in excess of $3 billion; (ii) reduced Fairfield Sentry's customer claim from $960 million to $230 million; (iii) recovered $70 million for the fund of Customer Property; and (iv) received an assignment of all claims held by the Joint Liquidators against Fairfield's management entities and individuals, including founders Walter Noel, Jeffrey Tucker, and Andres Piedrahita, under which the Trustee, along with his own claims against these defendants, will keep the first $200 million of any recovery obtained by the Joint Liquidators.

111.    Equally important, the Trustee and the Joint Liquidators developed a comprehensive, joint-interest, and cooperative approach to any and all future recoveries tied to actions brought by the Trustee and/or by the Joint Liquidators in relation to Fairfield Sigma, Fairfield Lambda, and Fairfield Sentry.  Shortly after the close of the Compensation Period, High

Court Judge Edward Alexander Bannister, QC, of the BVI courts approved the settlement agreement by Order.

112.    The Trustee also negotiated and reached settlements with the two domestic feeder funds of the Fairfield Greenwich Group—Greenwich Sentry and Greenwich Sentry Partners— both of whom are debtors in Chapter 11 cases pending in this Court. Like the Fairfield Sentry settlement, the Trustee secured a reduction in customer claims of over $100 million, cooperation on future recoveries, and assignments of claims against the Fairfield management groups. Again, this Court approved these settlements shortly after the Compensation Period ended; the approval of Greenwich Sentry and Greenwich Sentry Partners' Chapter 11 plan remains pending.

113.    The Trustee has worked closely with the Joint Liquidators in connection with their ongoing action against redeemers. In addition, the Trustee continues to investigate and prepare recovery actions against subsequent transferees who received monies from Fairfield Sentry during the six-year period prior to Fairfield Sentry filing for bankruptcy, and expects to file these complaints during the next Compensation Period. The Trustee also continues to investigate, analyze, and evaluate all claims against existing defendants for possible settlement and/or continued litigation.

## J.    MATTER 10 – HARLEY

114.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Harley International (Cayman) Limited ("Harley") seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Harley. Harley is in liquidation in the Cayman Islands.

115.     In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys pursued collection on the summary and default judgments entered against Harley by this Court on November 10, 2010.

## K.      MATTER 11 – COHMAD SECURITIES CORPORATION

116.     This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), the principals, certain employees of Cohmad, and their family members who held BLMIS IA accounts (collectively, the "Cohmad Defendants") seeking the return of over $132 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants.  On August 1, 2011, this Court denied the motions to dismiss filed by the Cohmad Defendants.

117.     In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys filed a stipulation dismissing with prejudice defendants Robert Jaffe and M/A/S Capital Corporation from the adversary proceeding, drafted an opposition to Jaffe's motion to enforce the settlement order against third parties, and drafted a counter-designation of the record and counter-statement of the issues on appeal in support of the Court's denial of Jaffe's motion. Jaffe voluntarily dismissed his appeal, No. 11-CV-01993 (S.D.N.Y.) (MGC), on June 10, 2011.

118.     During the last compensation period, the Trustee filed 173 avoidance actions against 737 discrete defendants introduced to BLMIS by Cohmad seeking the return of over $878 million.   During the Compensation Period, B&H attorneys oversaw service of the complaints, engaged in settlement discussions with opposing counsel, evaluated hardship

applications, responded to motions, participated in initial case conferences, and generally engaged in all pre-litigation matters.

## L.    MATTER 12 – PICOWER (INCORPORATING FOX & MARSHALL)

119.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Jeffry M. Picower and Barbara Picower, both individually and as trustees for various foundations, and other various Picower entities (collectively, the "Picower Defendants") seeking the return of approximately $7.2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Defendants.  In December 2010, the Trustee reached a $5 billion settlement with the Picower Defendants.  Pursuant to the same agreement, the Government achieved a $2.2 billion civil forfeiture from the Picower Defendants.

120.    In addition to the tasks outlined in ¶ 62, certain BLMIS claimants filed an appeal of the settlement with the Picower Defendants and permanent injunction approved by the Court, No. 11-CV-01328 (JGK).  During this Compensation Period, B&H attorneys drafted and filed a counter-designation of the bankruptcy record on appeal and counter-statement of the issues on appeal, and prepared briefing in support of the Court's Order.

121.    One of the BLMIS claimants that objected to the Trustee's settlement also sought to intervene in, amend, or rescind the Government's forfeiture with the Picower Defendants. *United States of America v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 10-CV-09398 (S.D.N.Y.) (TPG).  On May 23, 2011, the District Court denied the Fox motion and entered a final judgment of forfeiture in favor of the Government, which was appealed to the Second Circuit on July 18, 2011, No. 11-2898.

## M.    MATTER 13 – KINGATE

122.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the "Kingate Defendants") seeking the return of approximately $395 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kingate Defendants.  A second amended complaint was filed on July 21, 2009, which increased the demand to $874 million.

123.    The Kingate Defendants are currently in liquidation in the British Virgin Islands.

124.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys continued to monitor third party actions filed against the Kingate Defendants.  In addition, on the basis of a disclosure order granted by the United Kingdom Court, the Trustee and B&H attorneys sought discovery in the United Kingdom and Europe relating to the Kingate Defendants.  B&H attorneys continued their review of documents received in response to third party inquiries and subpoenas.  The Trustee also filed a motion before the Bankruptcy Court for leave to file a third amended complaint and filed that complaint shortly after the close of the Compensation Period.

## N.    MATTER 18 – THYBO

125.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Thybo Asset Management Limited, Thybo Global Fund Limited, Thybo Return Fund Limited, and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return of approximately $63 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of

the Thybo Defendants.  The Trustee filed an amended complaint objecting to Thybo Stable Fund's $217 million customer claim.

126.    As with each of the matters in litigation, B&H attorneys conducted the tasks outlined in ¶ 62 during this Compensation Period.  B&H attorneys drafted and filed a second amended complaint against the Thybo Defendants, which was filed on February 10, 2011, and prepared briefing in opposition to a motion to dismiss, which was filed on August 24, 2011. Also on August 24, 2011, the Trustee and Thybo Defendants stipulated to the dismissal without prejudice of those portions of the Trustee's claims regarding tax payments and the equitable subordination of their customer claims; work leading to this stipulation occurred during this Compensation Period

## O.    MATTER 19 – RUTH MADOFF

127.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Ruth Madoff seeking the return of approximately $44 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Mrs. Madoff.

128.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys engaged in continued settlement discussions with counsel for Mrs. Madoff.  B&H attorneys also agreed to extend Mrs. Madoff's time to answer or otherwise respond to the Trustee's complaint to October 31, 2011.

## P.    MATTER 20 –SHAPIRO

129.    This matter categorizes time spent investigating and negotiating for the return of millions in fictitious profits from one of Madoff's earliest investors, Carl J. Shapiro and

43

individuals and entities referred to as the "Shapiro family." In December 2010, the Shapiro

Family agreed to forfeit subject to federal civil forfeiture law $625 million, of which $550

million would be paid to the Trustee pursuant to the settlement agreement and $75 million would

be paid to the Government.

130.    During this Compensation Period, the Trustee requested and reviewed discovery

and financial disclosure information for several individuals related to the Shapiro family against

whom the Trustee still maintains claims.

## Q.    MATTER 21 – AVOIDANCE ACTION INVESTIGATION/LITIGATION

131.    This matter categorizes time spent developing efficient and transparent litigation

procedures that apply to the hundreds of avoidance actions filed by the Trustee, coordinating

service of process, working to unseal various complaints, preparing preservation letters and

discovery requests and reviewing produced documents, communicating formally and informally

with counsel for various defendants, reviewing hardship applications, drafting extensions of time

to respond to various complaints and adjournments of pre-trial conferences, conducting

settlement negotiations and settling with various defendants, developing legal strategies and

witnesses that will be relevant to all actions, implementing internal processes to track and

manage the avoidance actions, and researching various issues relating to and raised in such

avoidance actions.

## R.    MATTER 23 – CANAVAN

132.    This matter categorizes time spent by B&H attorneys on the adversary proceeding

commenced by the Trustee against three BLMIS claimants, and the Trustee's related Application

for a Temporary Restraining Order, Enforcement of the Automatic Stay, and a Preliminary

Injunction. During the last compensation period, B&H attorneys obtained from the claimants a

voluntary dismissal without prejudice of their action against SIPC's Board of Directors and

CEO/President that was pending in the United States District Court for the District of New Jersey.

## S.    MATTER 24 – ROBERT LURIA

133.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Robert Luria and Robert Luria Partners ("Luria Defendants") seeking the return of approximately eighty thousand dollars under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, disallowance of their claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Robert Luria and Robert Luria Partners.

134.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, the Court held an initial hearing on the Trustee's motions to dismiss the Robert Luria Defendants' counterclaims and strike the fourteenth and fifteenth affirmative defenses.   The Court reserved its ruling and suggested that the parties consider consolidating and/or resolving the matter.

## T.    MATTER 25 – AMY LURIA

135.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Amy Luria and Amy Luria Partners LLC ("Amy Luria Defendants") seeking the return of approximately ninety-five thousand dollars under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, disallowance of their claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Amy Luria and Amy Luria Partners LLC.

136.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, the Court held an initial hearing on the Trustee's motions to dismiss the Amy Luria Defendants'

counterclaims and strike the fourteenth and fifteenth affirmative defenses.    The Court reserved its ruling and suggested that the parties consider consolidating and/or resolving the matter.

U.    **MATTER 26 – RICHARD STAHL**

137.    This matter categorizes time spent by B&H attorneys on the adversary proceeding commenced by the Trustee against Richard Stahl ("Stahl"), Reed Abend ("Abend"), and ten other plaintiffs that purport to be similarly situated (collectively, the "Stahl Plaintiffs"), and the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay, and a Preliminary Injunction (the "Stahl Application") of actions brought against members of the Madoff family ("Madoff Defendants') against whom the Trustee has also brought suit ("Madoff Actions').

138.    In addition to the tasks outlined in ¶ 62, during this Compensation period, B&H attorneys sought from the Stahl Plaintiffs a voluntary stay of the Madoff Actions and obtained two such stipulated stays.    On February 15, 2011, the Court entered an Order enforcing the automatic stay and enjoining the remaining Stahl Plaintiffs from continuing the four active Madoff Actions against the Madoff Defendants until the conclusion of Trustee's actions against the Madoff Defendants ("Stahl Order").    Certain of the Stahl Plaintiffs filed appeals of the Stahl Order with the District Court, Nos. 11-CV-02135, 11-CV-02246, and 11-CV-02392 (AKH).

V.    **MATTER 27 – JP MORGAN CHASE**

139.    This matter categorizes time spent by B&H attorneys pursuing the action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, the "JP Morgan Chase") seeking the return of approximately $5.4 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of JP Morgan Chase.

140.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, prepared and filed a second redacted complaint against JP Morgan Chase.  JP Morgan Chase filed a motion to withdraw the bankruptcy reference, No. 11-CV-00913 (CM), and B&H attorneys opposed the motion.  The District Court granted the motion.  B&H attorneys also prepared briefing in opposition to JP Morgan Chase's motion to dismiss.

## W.    MATTER 28 - WESTPORT

141.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. seeking the return of approximately $28 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Silverman, WNB, and PSCC Services, Inc.

142.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys prepared and filed a proof of claim in Silverman's individual chapter 11 bankruptcy case pending in the Bankruptcy Court for the District of Connecticut.  B&H attorneys participated in the meeting of Silverman's creditors conducted by the United States Trustee pursuant to section 341 of the Bankruptcy Code.  The Trustee is Silverman's largest creditor. B&H attorneys also granted WNB several extensions of time to respond to the complaint.

## X.    MATTER 29 – RYE/TREMONT

143.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Limited, Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Defendants") seeking the return of approximately $2.1 billion under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Defendants.

144.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys negotiated and finalized a settlement with the Tremont Defendants.  The Trustee will, among other things, recover in excess of $1 billion to the fund of Customer Property, and allow almost $3 billion in customer claims that will allow investors in the Tremont Defendants to recover a substantial portion of their losses.  The Court has yet to approve the settlement in full.

## Y.    MATTER 30 – HSBC (INCORPORATING PRIMEO, ALPHA PRIME AND HERALD)

145.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against HSBC Bank PLC, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC-entities (collectively, the "HSBC Defendants"), dozens of feeder funds, and individuals seeking the return of approximately $86 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the HSBC Defendants.

146.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys extended the time for some of the defendants to respond to the amended complaint and coordinated service of process on the numerous international defendants.  B&H attorneys opposed motions to withdraw the reference filed by the HSBC Defendants and UniCredit S.p.A. and Pioneer Alternative Investment Management Limited ("UCG/PAI"), two feeder funds, No. 11-CV-763, 11-CV-836 (JSR).  The District Court granted the motion.  HSBC and UCG/PAI

subsequently filed separate motions to dismiss the Trustee's common law claims, and B&H attorneys prepared oppositions to those motions.

147.    This matter also categorizes time spent by B&H attorneys on the adversary proceeding commenced by the Trustee against three class action lawsuits, consolidated in *Repex Ventures, S.A. v. Madoff*, No. 09-CV-00289 (S.D.N.Y.) (RMB), brought by indirect BLMIS investors against the Herald, Primeo, and Thema feeder funds pending the completion of the Trustee's litigation against these and other financial institutions, feeder funds, and individuals in *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (BRL), and the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay, and a Preliminary Injunction.    The parties agreed to adjourn the application and time to respond to the complaint pending the resolution of motions to dismiss filed by the feeder funds in the consolidated class action.

## Z.    MATTER 31 – KATZ/WILPON

148.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Saul B. Katz, in his individual capacity and as trustee of the Katz 2002 Descendants' Trust, Fred Wilpon, in his individual capacity, as trustee of the Wilpon 2002 Descendants' Trust, and as co-executor of the Estate of Leonard Schreier, and dozens of other entities and individuals (collectively, "Sterling") seeking the return of approximately $1 billion in fraudulent transfers—which includes approximately $300 million in fictitious profits and $700 million in principal—under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Sterling.

149.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys drafted, filed, and served the amended complaint under seal on Sterling and later

unsealed the complaint. The matter was referred to mediation before former-Governor Mario Cuomo and B&H attorneys attended numerous mediation sessions and negotiated in good faith. Sterling filed a motion to dismiss or, in the alternative, for summary judgment, and B&H attorneys responded on May 19, 2011. Sterling filed a motion to withdraw the reference in the District Court, No. 11-CV-03605 (JSR), and B&H attorneys responded, most of which was prepared during this Compensation Period. The reference was withdrawn subsequently, the Bankruptcy Court litigation stayed, and B&H attorneys prepared supplemental briefing on three narrow issues raised by Sterling in their motion to dismiss. The trial is scheduled to begin in the District Court the week of March 5, 2012, and the parties have begun discovery.

## AA.    MATTER 32 – LUXALPHA/UBS

150. This matter categorizes time spent by B&H attorneys pursuing the avoidance action against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, "UBS Defendants") seeking the return of $2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of UBS.

151. In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys extended the time for some of the defendants to respond to the amended complaint and coordinated service of process on the numerous international defendants. B&H attorneys continued to review produced documents. The UBS Defendants filed a motion to withdraw the bankruptcy reference, No. 11-CV-4212 (CM), on June 17, 2011, and B&H attorneys opposed the motion. The District Court granted the motion on August 3, 2011. B&H attorneys also prepared briefing in opposition to the motion to dismiss.

**BB.      MATTER 33 – NOMURA BANK INTERNATIONAL PLC**

152.      This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Nomura Bank International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura.

153.      In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys prepared and filed a motion to unseal the complaint.  B&H attorneys prepared for anticipated motion practice and engaged in settlement negotiations with certain defendants, which are ongoing.

**CC.      MATTER 34 - CITIBANK**

154.      This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Citibank.

155.      In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal and agreed to the extension of Citibank's time to respond to the complaint.  B&H attorneys prepared for anticipated motion practice and have engaged in settlement negotiations with certain defendants, which are ongoing.

**DD.      MATTER 35 - NATIXIS**

156.      This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/n/a Ixis Corporate & Investment

Bank, Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Limited (the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants.

157.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal and B&H attorneys granted the Natixis Defendants extensions of time to respond to the complaint. B&H attorneys also prepared for the filing of a motion to dismiss and have engaged in settlement negotiations with certain defendants, which are ongoing.

## EE.    MATTER 36 – MERRILL LYNCH

158.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Merrill Lynch International & Co. C.V. ("Merrill Lynch") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Merrill Lynch.

159.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys prepared and filed the complaint under seal, and the Trustee and Merrill Lynch stipulated to an agreement concerning waiver of service and the time by which Merrill Lynch shall respond to the complaint. B&H attorneys also prepared for anticipated motion practice.

## FF.    MATTER 37 – ABN AMRO

160.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (ABN Bank is presently known as The Royal Bank of Scotland, N.V.) and ABN AMRO Incorporated (together, "ABN") and Rye Select Broad Market

XL Fund, LP and Rye Select Broad Market XL Portfolio Limited (together, "Tremont XL Funds") seeking the return of approximately $671 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of ABN and the Tremont XL Funds.

161.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, the B&H attorneys granted the Tremont XL Funds' several extensions of time to respond to the complaint and prepared for anticipated motion practice.

## GG.    MATTER 38 – BANCO BILBAO

162.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of approximately $48 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of BBVA.

163.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, the Court unsealed the complaint and B&H attorneys granted BBVA several extensions of time to respond to the complaint.  B&H attorneys also prepared for anticipated motion practice.

## HH.    MATTER 39 - FORTIS

164.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/n/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (together, "Fortis") and Rye Select Broad Market XL Fund, LP and Rye Select Broad Market XL Portfolio Limited (collectively, the "Fortis Defendants")

seeking the return of approximately $267 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants.

165.     In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys granted the Fortis Defendants numerous extensions of time to respond to the complaint. B&H attorneys also prepared for anticipated motion practice and engaged in settlement negotiations with certain defendants, which are ongoing.

## II.     MATTER 40 – MEDICI/KOHN

166.     This matter categorizes time spent by B&H attorneys pursuing the avoidance and civil action against Sonja Kohn A/K/A Sonja Blau Kôhn A/K/A Sonja Blau A/K/A Sinja Kôhn A/K/A Sinja Blau A/K/A Sinja Türk, and numerous other financial institutions, entities, and individuals (the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants.

167.     In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys prepared and filed the an amended complaint against the Kohn Defendants and, for some defendants, extended the time to respond to the complaint, as well as coordinated service of process on the numerous international defendants.  The Kohn Defendants filed a motion to withdraw the bankruptcy reference, No. 11-CV-01181 (JSR), and B&H attorneys opposed the motion.  The District Court granted the motion.  B&H attorneys also prepared an opposition to the motion to dismiss.

## JJ.    MATTER 41 - WHITECHAPEL

168.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Whitechapel Management Limited and Granadilla Holdings Limited ("Whitechapel Defendants") seeking the return of approximately $10 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Whitechapel Defendants.

169.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys granted the Whitechapel Defendants extensions of time to respond to the complaint. B&H attorneys also began the process of obtaining a disclosure order in the British Virgin Islands.

## KK.    MATTER 42 - EQUITY TRADING

170.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Limited, and BNP Paribas Arbitrage ("Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants.

171.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys worked with special local counsel Higgs & Johnson to effect service on the foreign defendants. B&H attorneys negotiated with Equity Trading Defendants to unseal the complaint, which was approved by Stipulated Order on August 29, 2011. B&H attorneys also granted the Equity Trading Defendants several extensions of time to respond to the complaint, and the pretrial conference is scheduled to be held on November 30, 2011.

**LL.    MATTER 43 – DEFENDER LIMITED**

172.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Defender Limited, Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, Reliance International Research LLC, Tim Brockmann, and Justin Lowe ("Defender Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants.

173.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys granted the Defender Defendants extensions of time to respond to the complaint.

**MM.    MATTER 44 – MACCABEE**

174.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, John Greenberger Maccabee, Individually and as Trustee of the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, Sherry Morse Maccabee, Individually and as Trustee of the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust ("Maccabee Defendants") seeking the return of approximately $1.5 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maccabee Defendants.

175.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys unsealed the complaint and extended the Maccabee Defendants' time to respond to the

complaint. The Maccabee Defendants filed a motion to withdraw the bankruptcy reference, No. 11-CV-04937 (JSR), and B&H attorneys have prepared an opposition to the motion.

## NN.    MATTER 45 – LEVEY

176.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against the Frances Levey Revocable Living Trust, Wendy Kapner Revocable Trust, Wendy Kapner as trustee of Frances Levey Revocable Living Trust, grantor and trustee of Wendy Kapner Revocable Trust and individually, Joel Levey, as trustee of Wendy Kapner Revocable Trust, and James L. Kapner ("Levey Defendants") seeking the return of approximately $6.8 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Levey Defendants.

177.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys have engaged in settlement discussions with counsel for the Levey Defendants, which have since come to an end, and extended the time to respond to the complaint. B&H attorneys conducted a deposition of one of the Levey Defendants and attended the initial case conference.

## OO.    MATTER 46 – GLANTZ

178.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Richard M. Glantz, individually, as Trustee of the Richard M. Glantz 1991 Living Trust, The Edward R. Glantz Living Trust, The Thelma Glantz Living Trust, The Jerald Ostrin Trust, The Scott Ostrin Trust, The Glantz-Ostrin Trust I, and The Glantz-Ostrin Trust II, and as Executor of The Estate of Edward R. Glantz and the Estate of Thelma Glantz, Elaine Ostrin, individually and as Trustee of The Edward R. Glantz Living Trust, Jerald Ostrin, Scott Ostrin, The Richard M. Glantz 1991 Living Trust, The Edward R. Glantz Living Trust, The Estate of

Edward R. Glantz, The Thelma Glantz Living Trust, The Estate of Thelma Glantz, The Jerald Ostrin Trust, The Scott Ostrin Trust, The Glantz-Ostrin Trust I, The Glantz-Ostrin Trust Ii, Roberta Cohen, Taj Inayat A/K/A Taj Inayat-Khan A/K/A Carolyn Taj Glantz A/K/A Carolyn Buckmaster, Raleigh Dow Buckmaster, Sr., Barbara Buckmaster, Raleigh Dow Buckmaster, Jr., Drew Buckmaster, Owen Buckmaster, Joellen Buckmaster, Mirza Inayat Khan, Zia Inayat Khan, Zia's Children Education Trust, Nathan Johnson, individually and as Trustee of Zia's Children Education Trust, Christopher L. Dingman, Amanda Savasky, Austin Bosarge, Grace & Company, EJS Associates, L.P., Jelris & Associates, L.P., The Glantz Family Foundation, Inc., Merlin & Associates, Ltd., Enhancement Group, Lakeview Investment, LP, Vista Management Co., Buckmaster Farms, L.P., NTC & Co. LLP, as Former Custodian for an Individual Retirement Account for the Benefit of Richard M. Glantz, and NTC & Co. LLP, as Former Custodian for an Individual Retirement Account for the Benefit of Edward R. Glantz (the "Glantz Defendants") seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants.

179.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys received hardship applications from various defendants and analyzed their financial information.  The Trustee has dismissed certain defendants from the adversary proceeding based upon their hardship applications, and some hardship applications remain under review.  B&H attorneys have agreed to grant the remaining Glantz Defendants additional time to respond to the complaint.

**PP.    MATTER 47 – BONVENTRE**

180.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Daniel Bonventre and Barbara Bonventre ("Bonventre Defendants") seeking the return of approximately $12.6 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bonventre Defendants.

181.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys granted the Bonventre Defendants several extensions of time to respond to the complaint up to and including December 29, 2011, as the action was stayed pending the criminal case against the Bonventre Defendants.  B&H attorneys have received and reviewed the list of documents requested by the Bonventre Defendants.

**QQ.    MATTER 48 – BONGIORNO**

182.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Annette Bongiorno and Rudy Bongiorno ("Bongiorno Defendants") seeking the return of approximately $22 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bongiorno Defendants.

183.    The action was stayed through December 2011 because of the pending criminal case against Annette Bongiorno.

**RR.    MATTER 49 – GREENBERGER**

184.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Robert Greenberger and Phyllis Greenberger ("Greenberger Defendants") seeking

the return of over $500 thousand under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Greenberger Defendants.

185.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys entered into a stipulation to unseal the complaint.  B&H attorneys and the Greenberger Defendants engaged in settlement discussions, which were ultimately unsuccessful.  During that time, the Greenberger Defendants were granted several extensions of time to respond to the complaint.  B&H attorneys prepared for and attended the initial case conference held on May 9, 2011.  The Greenberger Defendants filed a motion to withdraw the bankruptcy reference, No. 11-CV-04928 (JSR), and B&H attorneys have prepared an opposition to the motion.

**SS.    MATTER 50 – PITZ**

186.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Enrica Cotellessa-Pitz and Thomas Pitz ("Pitz Defendants") seeking the return of over $3 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Pitz Defendants.

187.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys have engaged in ongoing settlement discussions with the Pitz Defendants.

**TT.    MATTER 51 – CRUPI**

188.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Jo Ann Crupi, individually, and in her capacity as beneficiary of Pensco Trust Company Custodian FBO Jo Ann Crupi, and as beneficiary of the Judith G. Bowen and Jo Ann Crupi Trust, Judith Bowen, individually, and in her capacity as beneficiary of NTC & Co. FBO

60

Judith Bowen, as beneficiary of the Judith G. Bowen and Jo Ann Crupi Trust, and as beneficiary of the Judith G. Bowen Tr, Guston & Guston, LLP, as custodian of Guston & Guston, LLP Attorney Trust Account, Debra E. Guston, as trustee for the Judith G. Bowen and Jo Ann Crupi Trust, and as trustee for the Judith G. Bowen Trust, and Pensco Trust Company, as former custodian of an Individual Retirement Account for the benefit of Jo Ann Crupi ("Crupi Defendants") seeking the return of over $8 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Crupi Defendants.

189.    The adversary proceeding was stayed through December 2011 because of pending criminal case against the Crupi Defendants.

## UU.    MATTER 52 – FRIEDMAN

190.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against S. Donald Friedman, Saundra Friedman, Broadway-Elmhurst Co. LLC, Ari Friedman, and NTC & Co. LLP, as former custodian of an Individual Retirement Account for the benefit of S. Donald Friedman ("Friedman Defendants") seeking the return of more than $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Friedman Defendants.

191.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys prepared and filed an amended complaint under seal, a simultaneous motion to unseal the amended complaint, and reviewed the answers filed by several of the Friedman Defendants.

## VV.    MATTER 53 – MAGNIFY

192.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd. II, Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Osnat Dodelson, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and Robert H. Book ("Magnify Defendants") seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants.

193.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys granted the Magnify Defendants several extensions to respond to the complaint. Defendant Special Situations Cayman Fund LP filed an answer with cross-claims, and B&H attorneys reviewed and prepared a response to the cross claims.

## WW.  MATTER 54 – MENDELOW

194.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Steven B. Mendelow, NTC & Co. LLP, as former custodian of an Individual Retirement Account for the benefit of Steven B. Mendelow, Nancy Mendelow, NTC & Co. LLP as former custodian of an Individual Retirement Account for the benefit of Nancy Mendelow, Cara Mendelow, Pamela Christian, C&P Associates, Ltd., and C&P Associates, Inc. ("Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants.

195.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys have entered into settlement discussions with the Mendelow Defendants.  Mendelow filed a motion to enforce the automatic stay against a third-party action filed against him in New York State Supreme Court.  The B&H attorneys prepared and filed a response to Mendelow's motion, and a hearing is scheduled before the Court on September 27, 2011.

## XX.    MATTER 55 – KUGEL

196.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against David L. Kugel, individually, as partner of David L. Kugel Partnership, as partner of David Kugel Partnership II, as trustee of Phyllis Kugel Revocable Living Trust and as trustee of David Kugel Trust, Phyllis Kugel, individually, as partner of the David L. Kugel Partnership, as partner of the David Kugel Partnership II, as trustee of the Phyllis Kugel Revocable Living Trust, and as trustee, David L. Kugel Partnership, David Kugel Partnership II, Craig Kugel, individually, as trustee of the David and Phyllis Irrevocable Trust, as trustee of the Phyllis Kugel Revocable Living Trust, and as trustee of the David Kugel Trust, Heather Kugel, NTC & Co. LLP, as former custodian of an Individual Retirement Account for the benefit of David L. Kugel, Delta Fund I, L.P., Delta Ventures (Cayman), Ltd., The David and Phyllis Kugel Irrevocable Trust, The Phyllis Kugel Revocable Living Trust, The David Kugel Trust, Cynthia Kugel, [C.K.1], and [C.K.2] ("Kugel Defendants") seeking the return of more than $22 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kugel Defendants.

197.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys granted several extensions of time for the Kugel Defendants to respond to the

complaint.  The Kugel Defendants filed a motion to withdraw the bankruptcy reference, No. 11-CV-04227 (JSR), but withdrew the motion on September 9, 2011.

## YY.    MATTER 56 – LIPKIN

198.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Irwin Lipkin, Carole Lipkin, Eric Lipkin, Erika Lipkin, individually, and in her capacity as Custodian UGMA/NJ for [C.L.], [D.L.], and [S.L.], [C.L.], by and through Erika Lipkin, parent and Custodian, [D.L.], by and through Erika Lipkin, parent and Custodian, [S.L.], by and through Erika Lipkin, parent and Custodian, Marc Lipkin, Russell Lipkin, and Karen Yokomizo Lipkin ("Lipkin Defendants") seeking the return of approximately $9 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lipkin Defendants.

199.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys reviewed and analyzed the answers filed by the Lipkin Defendants.  In June 2011, defendant Eric Lipkin pled guilty to criminal charges.

## ZZ.    MATTER 57 – PEREZ/O'HARA

200.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Jerome O'Hara, Bernadette O'Hara, O'Hara Family Partnership, Elizabeth Sarro, NTC & CO., LLP, as former custodian of an Individual Retirement Account for the benefit of Bernadette O'Hara, George Perez, and Jeanette Perez ("Perez/O'Hara Defendants") seeking the return of over $6 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Perez/O'Hara Defendants.

201.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys agreed to several extensions of time for the Perez/O'Hara Defendants to respond to the complaint.   The proceeding against Jerome O'Hara and George Perez was stayed through December 2011 because of pending criminal case against them.

### AAA.   MATTER 58 – PJ ADMINISTRATORS

202.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against American Securities Management, L.P., formerly known as American Securities, L.P., PJ Associates Group, L.P., doing business as PJ Administrator, L.L.C., PJ Associates Group GP Corp., PJ Administrator, L.L.C., formerly known as PJ Associates Group, L.P., American Securities Opportunity Fund, L.P., and Defendants XYZ 1 Through 187 ("PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits, under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants.

203.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys granted the PJ Defendants several extensions of time to respond to the original complaint and served an amended complaint.

### BBB.   MATTER 59 – STANLEY SHAPIRO

204.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against ABC Trust 1 [Redacted - Filed Under Seal], ABC Trust 2 [Redacted - Filed Under Seal], ABC Trust 3 [Redacted - Filed Under Seal], ABC Trust 4 [Redacted - Filed Under Seal], ABC Trust 5 [Redacted - Filed Under Seal], Jane Doe 1 [Redacted - Filed Under Seal], Jane Doe 2 [Redacted - Filed Under Seal], Jane Doe 3 [Redacted - Filed Under Seal], John Doe 1

[Redacted - Filed Under Seal], John Doe 2 [Redacted - Filed Under Seal], John Doe 3 [Redacted - Filed Under Seal], XYZ Co. 1 [Redacted - Filed Under Seal] / First Amended Complaint against Stanley Shapiro, individually, as general partner of S&R Investment Co., as trustee for LAD Trust, as trustee for David Shapiro 1989 Trust, as amended, and trustee for Leslie Shapiro 1985 Trust, as amended; Renee Shapiro, individually, as general partner of S&R Investment Co., as trustee for LAD Trust, as trustee for David Shapiro 1989 Trust, as amended, and as trustee for Leslie Shapiro 1985 Trust, as amended; S&R Investment Co.; LAD Trust; David Shapiro, individually and as trustee for Trust f/b/o [W.P.S.] & [J.G.S.]; Rachel Shapiro; David Shapiro 1989 Trust, as amended, Trust f/b/o [W.P.S.] & [J.G.S.]; Leslie Shapiro Citron; Leslie Shapiro 1985 Trust, as amended; Trust f/b/o [A.J.C.], [K.F.C.], and [L.C.C.], as amended, and Kenneth Citron, individually and as trustee for Trust f/b/o [A.J.C.], [K.F.C.], and [L.C.C.], as amended ("Shapiro Defendants") seeking the return of over $61.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants.

205.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys prepared, filed, and served the amended complaint.  B&H attorneys have also engaged in settlement negotiations with the Shapiro Defendants, which are ongoing.  The Shapiro Defendants filed a motion to withdraw the bankruptcy reference, No. 11-CV-05835 (JSR), to which B&H attorneys have prepared an opposition.

## CCC.  MATTER 60 – AVELLINO & BIENES

206.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Frank J. Avellino, individually, and as Trustee for Frank J. Avellino Revocable Trust Number One As Amended And Restated January 26, 1990, Frank J. Avellino Grantor

Retained Annuity Trust Under Agreement Dated June 24, 1992, Frank J. Avellino Grantor

Retained Annuity Trust Agreement Number 2 Under Agreement Dated June 24, 1992, Frank J.

Avellino Revocable Trust Number One Under Declaration of Trust Number One Dated June 10,

1988, Heather Carroll Lowles Trust U/A Dated June 29, 1990, Tiffany Joy Lowles Trust U/A

Dated June 29, 1990, Melanie Ann Lowles Trust U/A Dated June 29, 1990, Taylor Ashley

McEvoy Trust U/A Dated June 24, 1992, Madison Alyssa McEvoy Trust U/A Dated June 29,

1990, Grantor Retained Annuity Trust, Avellino Family Trust, Avellino & Bienes Pension Plan

& Trust, Michael S. Bienes, individually, and as Trustee for Glenn J. Dydo Irrevocable Trust

U/A August 12, 1988, Avellino & Bienes Pension Plan & Trust, Nancy C. Avellino,

individually, and as Trustee for Nancy Carroll Avellino Revocable Trust Under Trust Agreement

Dated May 18, 1992, the Rachel Anne Rosenthal Trust U/A Dated June 29, 1990, the Rachel

Rosenthal Trust #3, the Rachel Rosenthal Trust #2 U/A Dated June 24, 1992, Heather Carroll

Lowles Trust U/A Dated June 29, 1990, Tiffany Joy Lowles Trust U/A Dated June 29, 1990,

Melanie Ann Lowles Trust U/A Dated June 29, 1990, Taylor Ashley McEvoy Trust U/A Dated

June 24, 1992, Madison Alyssa McEvoy Trust U/A Dated June 29, 1990, Dianne K. Bienes,

individually, and as Trustee for Dianne K. Bienes Grantor Retained Annuity Trust 10/31/1997,

Thomas G. Avellino, Avellino & Bienes, Avellino Family Trust, Avellino & Bienes Pension

Plan & Trust, Grosvenor Partners, Ltd., Mayfair Ventures, G.P., St. James Associates, Strattham

Partners, Ascent, Inc., Kenn Jordan Associates, Mayfair Bookkeeping Services, Inc., 27 Cliff,

LLC, Glenn J. Dydo, Sandra Dydo, Joseph Avellino, Michael McEvoy, Lorraine McEvoy, The

Avellino Family Foundation, Inc., Optus Software, Inc., Rachel A. Rosenthal, Heather C.

Lowles, Tiffany J. Lowles, Melanie A. Lowles, Taylor A. Mcevoy, Madison A Mcevoy, Devon

Paxson, Roslyck Paxson, Frank J. Avellino Revocable Trust Number One As Amended And

Restated January 26, 1990, Frank J. Avellino Grantor Retained Annuity Trust Under Agreement Dated June 24, 1992, Frank J. Avellino Grantor Retained Annuity Trust Agreement Number 2 Under Agreement Dated June 24, 1992, Frank J. Avellino Revocable Trust Number One Under Declaration of Trust Number One Dated June 10, 1988, Nancy Carroll Avellino Revocable Trust Under Trust Agreement Dated May 18, 1992, the Rachel Anne Rosenthal Trust U/A Dated June 29, 1990, the Rachel Rosenthal Trust #3, the Rachel Rosenthal Trust #2 U/A Dated June 24, 1992, Glenn J. Dydo Irrevocable Trust U/A August 12, 1988, Irrevocable Trust U/A August 12, 1988 Dianne K. Bienes Grantor Retained Annuity Trust 10/31/1997, Heather Carroll Lowles Trust U/A Dated June 29, 1990, Iffany Joy Lowles Trust U/A Dated June 29, 1990, Melanie Ann Lowles Trust U/A Dated June 29, 1990, Taylor Ashley McEvoy Trust U/A Dated June 24, 1992, and Madison Alyssa McEvoy Trust U/A Dated June 29, 1990 ("A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants.

207.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys agreed to extend the time for the A&B Defendants to respond to the complaint.  Two defendants filed answers, which B&H attorneys have reviewed.  B&H attorneys received hardship applications from defendants Noble Avellino, Sterling Avellino, and Joseph Avellino and, after analysis of their financial information, determined to dismiss these defendants from the adversary proceeding.  Shortly after the end of the Compensation Period, the remaining A&B Defendants filed a motion to dismiss the complaint and a motion to withdraw the reference, No. 11-CV-03882 (JSR), to which B&H attorneys have prepared and filed oppositions.

## DDD.  MATTER 61 – MAXAM

208.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Maxam Absolute Return Fund, L.P., Maxam Absolute Return Fund, Ltd., Maxam Capital Management, LLC, Maxam Capital GP LLC Sandra L. Manzke Revocable Trust, Sandra L. Manzke, as Trustee and individually, Suzanne Hammond, Walker Manzke, and April Bukofser Manzke ("Maxam Defendants") seeking the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maxam Defendants.

209.    In addition to the tasks outlined in ¶ 62, during this Compensation Period, B&H attorneys filed an unsealed copy of the complaint and granted several extensions of time to respond to the complaint.  The Maxam Defendants filed a motion to withdraw the reference, No. 11-CV-03261 (JSR), and B&H prepared an opposition.  The parties agreed to continue discovery before the Bankruptcy Court, despite the motion to withdraw the reference.

## V.    COMPENSATION REQUESTED

210.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

211.    The Trustee expended 783.40 hours in the rendition of professional services and B&H expended 117,501.80 hours in the rendition of professional and paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in an average hourly discounted rate of $765.00 for Trustee and $453.80 for B&H for fees incurred.

212.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period beginning February 1, 2011 through May 31, 2011, and (ii) a draft of this Application.  In connection with four monthly statements each submitted by the Trustee and B&H and this Application, the Trustee voluntarily adjusted his fees by writing off $115,260.00 (in addition to the 10% public interest discount, as discussed below).  B&H voluntarily adjusted its fees by writing off $853,698.00 (in addition to the 10% public interest discount, as discussed below) and wrote off expenses customarily charged to other clients in the amount of $326,828.39.

213.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $66,589.00 for the Trustee and $4,969,731.85 for B&H.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in Chapter 11 cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

214.    Pursuant to the Second Amended Compensation Order, on March 18, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from February 1, 2011 through February 28, 2011 (the "February Fee Statements").  The Trustee's February Fee Statement reflected fees of $179,520.00 and $479.80.  B&H's February Fee Statement reflected fees of $11,306,432.00 and $254,388.38 in expenses.  SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the Trustee's February Fee Statement

reflected fees of $161,568.00, and B&H's February Fee Statement reflected fees of $10,175,788.80. After subtracting the Court-ordered 10% holdback, SIPC advanced $145,411.20 for services rendered by the Trustee and $479.80 for expenses incurred by the Trustee, $9,158,209.92 for services rendered by B&H and $254,388.38 for expenses incurred by B&H.

215. Pursuant to the Second Amended Compensation Order, on April 21, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from March 1, 2011 through March 31, 2011 (the "March Fee Statements"). The Trustee's March Fee Statement reflected fees of $198,390.00 and no expenses. B&H's March Fee Statement reflected fees of $13,160,148.50 and $503,964.51 in expenses. SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H. After such adjustments, the Trustee's March Fee Statement reflected fees of $178,551.00, and B&H's March Fee Statement reflected fees of $11,844,133.65. After subtracting the Court-ordered 10% holdback, SIPC advanced $160,695.90 for services rendered by the Trustee and $10,659,720.29 for services rendered by B&H, and $503,964.51 for expenses incurred by B&H.

216. Pursuant to the Second Amended Compensation Order, on May 20, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from April 1, 2010 through April 30, 2010 (the "April Fee Statements"). The Trustee's April Fee Statement reflected fees of $122,145.00 and no expenses. B&H's April Fee Statement reflected fees of $12,146,242.50 and $262,967.49 in expenses. SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H. After such adjustments, the Trustee's April Fee Statement reflected fees of

$109,930.50, and B&H's April Fee Statement reflected fees of $10,931,618.25. After subtracting the Court-ordered 10% holdback, SIPC advanced $98,937.45 for services rendered by the Trustee, $9,838,456.43 for services rendered by B&H, and $262,967.49 for expenses incurred by B&H.

217.    Pursuant to the Second Amended Compensation Order, on June 21, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from May 1, 2011 through May 31, 2011 (the "May Fee Statements"). The Trustee's May Fee Statement reflected fees of $165,835.00 and no expenses. B&H's May Fee Statement reflected fees of $13,084,495.50 and $249,635.93 in expenses. SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H. After such adjustments, the Trustee's May Fee Statement reflected fees of $149,251.50, and B&H's May Fee Statement reflected fees of $11,776,045.95. After subtracting the Court-ordered 10% holdback, SIPC advanced $134,326.35 for services rendered by the Trustee, $10,598,441.36 for services rendered by B&H, and $249,635.93 for expenses incurred by B&H.

218.    Exhibit B annexed hereto is a summary by task code of total hours expended and total fees for services rendered by the Trustee during the Compensation Period.

219.    Exhibit C annexed hereto provides a schedule of the Trustee's total expenses incurred during the Compensation Period for which reimbursement is requested. The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients.

220.    Exhibit D annexed hereto provides a schedule of B&H professionals and paraprofessionals who have provided services for the Debtor during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was

licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount. The 10% discount ($4,969,731.85, as described above in ¶ 213) is taken off the total cumulative amount billed, as reflected on Exhibit D.

221.    Exhibit E annexed hereto is a summary of services performed by B&H during the Compensation Period organized by B&H task code and matter number.

222.    Exhibit F annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H. The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients. B&H has not charged for a number of categories of expenses regularly charged to and paid by B&H's clients, including certain inter-office travel and related expenses (lodging, meals, airfare and other transportation). These expenses amount to a voluntary reduction of $326,828.39 (*see* ¶ 212).

223.    Exhibit G annexed hereto is a proposed order.

224.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case. No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

225.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee, and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

73

## VI.     THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

226.     Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate

application and after a hearing, "[t]he court shall grant reasonable compensation for services

rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the

attorney for such a trustee . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's

role in connection with applications for compensation and the consideration the Court should

give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by
> SIPC, the court shall award the amounts recommended by SIPC.  In determining
> the amount of allowances in all other cases, the court shall give due consideration
> to the nature, extent, and value of the services rendered, and shall place
> considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

227.     To the extent the general estate is insufficient to pay such allowances as an

expense of administration, SIPA § 78eee(b)(5)(E) requires SIPC to advance the funds necessary

to pay the compensation of the Trustee and B&H (*see* SIPA § 78fff-3(b)(2)).

228.     The Trustee has determined that, at this time, he has no reasonable expectation

that the general estate will be sufficient to make a distribution to general creditors or pay

administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief of

the Trustee.  Accordingly, any fees and expenses allowed by this Court will be paid from

advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

229.     Therefore, with respect to this Application, the Trustee and B&H request that

consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts

recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).

SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on October 19, 2011.

230.    The Trustee and B&H submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to SIPA § 78eee(b)(5).

## CONCLUSION

231.    The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $599,301.00 (of which $539,370.90 is to be paid currently and $59,930.10 is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee during the Compensation Period, and $479.80 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee in connection with the rendition of such services; (ii) allowing and awarding $44,727,586.65 (of which $40,254,828.00 is to be paid currently and $4,472,758.65 is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by B&H during the Compensation Period, and $1,270,956.31 as reimbursement of the actual and necessary costs and expenses incurred by B&H in connection with the rendition of such services; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       September 21, 2011

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/  *David J. Sheehan*

75

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

*Attorneys for Irving H. Picard, Esq. Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC And Bernard L. Madoff*