UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>Bernard L. Madoff Investment Securities LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | |

**ROYAL BANK OF CANADA'S OBJECTION TO THE TRUSTEE'S MOTION FOR (I) A REPORT AND RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING PROCEDURES FOR ELECTRONIC DATA ROOMS; AND (III) AN <u>ORDER MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER</u>**

Royal Bank of Canada ("RBC") respectfully submits its objection (the "Objection")[1] to the motion (the "Motion") of Irving H. Picard, as trustee (the "Trustee"), for entry of (I) a report and recommendation to the District Court for the appointment of Special Discovery Masters; (II) an order expanding the Case Management Procedures approved by the Court on November 10, 2010, granting access to the Trustee's existing electronic data room to additional defendants and

---

[1] RBC's objection is timely. Although the original objection date to the Motion was August 31, 2011, the Trustee extended RBC's time to object until September 21, 2011.

establishing procedures for the creation of a separate electronic data room for documents produced to the Trustee; and (III) an Order modifying, in limited fashion, the Litigation Protective Order, dated June 6, 2011 (Dkt. 4137), including superseding all individual confidential agreements between the Trustee and any parties.

**PRELIMINARY STATEMENT**

1. RBC complied in good faith with the Trustee's investigation of the Bernard L. Madoff Ponzi scheme. After it received a subpoena from the Trustee, it negotiated a confidentiality agreement and ultimately made a production of documents which it identified as confidential. The Trustee never quarreled with RBC's designation of its production as confidential, but now, almost two years later, seeks to terminate its confidentiality agreement with RBC and make the documents produced to it available to professionals acting for over 5,000 defendants in over 900 adversary proceedings.

2. The Trustee's approach to discovery would do away with the fundamental question of relevance, and make RBC's confidential documents available for review to thousands of professionals in cases having nothing to do with RBC.

3. Among other things, the Trustee's Motion establishes a process whereby producing parties, upon entry of an order called for by the Motion, must appeal to a special discovery master before their documents are made available for widespread review. But this process, which stands starkly in contrast to discovery under the Federal Rules, creates a mechanism by which all documents are presumed relevant to all litigations and are made available to thousands of known and unknown persons, notwithstanding the fact that they were produced as confidential to the Trustee.

4. The only basis the Trustee can point to for his expansive request is an

2

overreaching discovery demand by a single group of defendants in one of the hundreds of cases he has commenced to date. But even that discovery demand has already been dealt with within the context of the confidentiality agreements the Trustee now seeks to discard. Parties, including RBC, have consented to limited productions of their confidential documents in order to respond to that request. There is no reason similar demands, to the extent any are even made, cannot be dealt with within the parameters for discovery already in place.

5. The Trustee's motion should be denied.

## BACKGROUND

6. The Trustee issued a subpoena to RBC under Fed. R. Bankr. Pro. 2004 ("Rule 2004") dated July 28, 2009 (the "Subpoena"), calling for the production of documents in connection with the Trustee's investigation of Bernard L. Madoff Investment Securities LLC ("BMIS").

7. On August 14, 2009, RBC and the Trustee, by their counsel, entered into a confidentiality agreement which granted, among other things, RBC the right to designate portions of any production to the Trustee as confidential (the "RBC Confidentiality Agreement"). (A copy of the RBC Confidentiality Agreement is attached as Ex. 1 to this Objection.)

8. On September 30, 2009, RBC served the Trustee with its objections and responses to the Subpoena.

9. Also on September 30, 2009, RBC made a production of documents to the Trustee which included approximately 4,699 pages of paper documents and a DVD-ROM containing electronic documents (the "RBC Production"). All documents produced to the

Trustee, including electronic documents, were designated confidential according to the terms of the RBC Confidentiality Agreement.

10. The Trustee could have objected to RBC's designation of documents as confidential under the RBC Confidentiality Agreement. In particular, the agreement provides as follows:

> In the event the Trustee provides RBC notice that he disagrees with a confidentiality designation, RBC shall make an application to the Court within five (5) business days for a protective order to prevent further disclosure of the information beyond the terms of this Agreement.

(RBC Confidentiality Agreement at p1.) The Trustee never objected to RBC's designation of its production as confidential, which took place almost two years ago.

11. On February 16, 2010, the Court issued a protective order governing disclosure of confidential material in the lawsuits brought by the Trustee. (Dkt. 1951.) Under paragraph 27 of that order, individual confidentiality agreements, including the RBC Confidentiality Agreement, were not terminated, superseded, limited or otherwise modified.

12. On June 6, 2011 the Court entered a superseding protective order governing treatment of confidential material in litigation commenced by the Trustee. (Dkt. 4137.) The order provides, among other things, that confidential material can be produced to third parties if the producing party receives 10 days notice so that they "may seek a protective order or other appropriate remedy." (*Id.* at ¶12.) The June 6, 2011 order did not affect individual confidentiality agreements, including the RBC Confidentiality Agreement, which remains in effect and governs confidentiality of documents produced by RBC to the Trustee in response to the Subpoena. (*Id.* at ¶19.)

4

13. In the Motion, the Trustee describes document requests received from defendants in *Picard v. Merkin et al.*, No. 09 AP 1182 (BR), which appear to be extremely broad in scope.[2] (Motion at ¶14.)

14. In order to comply with the document requests in the *Merkin* case, the Trustee contacted producing parties with confidentiality agreements to determine whether they would consent to the release of documents previously produced and designated confidential. (Motion at ¶¶15-18.) On June 7, 2011, the Trustee contacted RBC to provide notice, as required under the RBC Confidentiality Agreement, of his intention to produce documents from the RBC Production in response to these discovery demands. (A copy of the Trustee's June 7, 2011 letter is attached hereto as Ex. 2.)

15. Upon receipt of the June 7, 2011 letter, RBC's counsel contacted the Trustee. The Trustee identified the document he intended to produce from the RBC Production to defendants in the *Merkin* action and RBC consented to its production, notwithstanding the fact that RBC had previously designated the document confidential.

16. In the Motion, the Trustee seeks to dissolve the various, separately negotiated confidentiality agreements entered into with parties who were asked to produce documents pursuant to Rule 2004. (Motion at ¶23.)

17. Among other things, the Trustee seeks to establish a second electronic data room that will be accessible by professionals acting for any of the over 5,000 defendants in the over 900 adversary proceedings initiated by the Trustee (Motion at ¶¶22, 32.)

---

[2] As one other objecting party has noted, however, the Trustee's reference to the document request by defendants in *Picard v. Merkin*, 09 AP 1182 (BRL) may be overstated. See Defendants' [in *Picard v. Maxam Absolute Return Fund, L.P. et al.*, 10 AP 5342 (BRL)] Opposition to the Trustee's Motion at ¶12. (Dkt. 4324, Attachment 2.)

5

18. In the Motion, the Trustee seeks to place all documents produced to him, including documents produced and depositions taken pursuant to Rule 2004, into the second electronic data room. The protections contemplated by the Trustee relating to access to that data room would be entry into a non-disclosure agreement and a practically meaningless limitation on viewing documents to professionals acting for defendants in BMIS-related adversary proceedings. (Motion at ¶¶22, 32.) The Trustee also proposed that producing parties should object to the inclusion of their documents in the second electronic data room upon entry of the order called for in the Motion. (Motion at ¶39.) But that process is cumbersome, and requires all producing parties to object to the inclusion of any of their documents in the second data room; otherwise, documents will be available for viewing to the entire host of BMIS litigants and related professionals, with only the minimal protections described above.

## STATEMENT OF OBJECTIONS

19. The Trustee has a substantial burden to overcome in order to modify pre-existing protective orders and confidentiality agreements, which he has not carried in the Motion. In the Second Circuit, "[w]here there has been reasonable reliance by a party . . . a District Court should not modify a protective order . . . 'absent a showing of improvidence in the grant of [the protective] order or some extraordinary circumstance or compelling need.'" *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)). The same high bar applies to parties seeking to modify confidentiality agreements. *See US v. Oshatz*, 700 F. Supp. 696, 700-01 (S.D.N.Y. 1988) (holding that the *Martindell* standard applies even where there is merely a stipulation among the parties about the confidentiality of a deposition, as opposed to a formal protective order); *Botha v. Don King Prods., Inc.*, No. 97 Civ. 7587, 1998 WL 88745, at *2 (S.D.N.Y. Feb. 27, 1998)

6

(applying the *Martindell* standard to situations where counsel for both parties informally agree to the confidentiality of a deposition). But in the Motion, the Trustee has made no showing of extraordinary circumstance or compelling need. Instead, the Trustee refers to a single, overreaching litigant's overbroad discovery request which could be easily resisted on the grounds of relevance, and generally complains about dealing with discovery in the hundreds of cases he has brought before this Court. This barest of showings cannot satisfy the standards which apply to the extraordinary relief sought by the Trustee. *See Med. Diagnostic Imaging, PLLC v. Carecore Nat., LLC*, No. 06 Civ. 7746, 2009 WL 2135294, at *2 (S.D.N.Y. Jul. 16, 2009) (holding that the desire for efficiency does not constitute an extraordinary or compelling circumstance); *see also Maryland Cas. Co. v. W.R. Grace & Co.*, No. 83 Civ. 7451, 1994 WL 419787, at *3 (S.D.N.Y. Aug 10, 1994) (holding that judicial economy and the avoidance of duplicative discovery do not create extraordinary circumstances or compelling need).

20. When RBC produced documents to the Trustee in response to the Subpoena, it relied on the agreement it made with the Trustee which contained protections covering its confidential and private documents. The Second Circuit has acknowledged the importance of protecting reliance on protective orders and, by extension, negotiated confidentiality agreements, because otherwise "parties would be less forthcoming in giving testimony and less willing to settle their dispute." *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001). The same policy consideration applies to RBC's production and cooperation with the Trustee's investigation. Rule 2004 is a mechanism designed to assist the Trustee in investigating the debtor's estate. *See In re Bennett Funding Grp.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (citations omitted). It would undermine cooperation with trustees collecting information under Rule 2004 to allow the Trustee to demand documents from parties like RBC, inducing cooperation by entering into

confidentiality agreements, only to have the Trustee turn around later and seek to abrogate agreed-upon confidentiality protections in order to avoid the inconveniences accompanying litigation the Trustee himself commenced.

21.     Moreover, investigations of a debtor under Rule 2004 are considerably broader in scope than discovery in adversary proceedings under Bankruptcy Rule 7026 *et seq.*, which incorporate the discovery provisions of the Federal Rules of Civil Procedure. *In re Szadkowski*, 198 B.R. 140, 141 (Bankr. D. Md. 1996). Courts, comparing the two separate information gathering mechanisms, have referred to the scope of Rule 2004 as "unfettered and broad" and "more in the nature of a fishing expedition." *In re Bennett Funding Grp.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (citing cases) (noting also that Rule 2004 is a pre-litigation device used to investigate the debtors rights) (citing cases). Once litigation commences and adversary proceedings are filed by the debtor, further investigations under Rule 2004 are improper and plaintiffs are limited to obtaining discovery under Bankruptcy Rules 7026-7037. *In re Szadkowski*, 198 B.R. at 141. Because Rule 2004 "is meant to give the inquiring party broad power to investigate the estate, it does not provide the procedural safeguards offered by Fed.R.Bankr.P. 7026." *In re Bennett*, 203 B.R. at 28. The Motion, however, seeks to substitute discovery under the Federal Rules with information obtained during the course of a Rule 2004 investigation, discarding basic procedural safeguards which would otherwise be available to producing parties like RBC along the way.

22.     The Motion goes so far as to seek withdrawal of a fundamental protection which would otherwise be available to RBC or any producing party: the inquiry into a document's relevance to a litigation prior to its production. Fed. R. Civ. Pro. 26(b)(1), made applicable to adversary proceedings under Fed. R. Bankr. Pro. 7026, states that, "[u]nless otherwise limited by

8

court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense . . . ." (emphasis added). *See In re Shur*, 225 B.R. 295, 298 (Bankr. E.D.N.Y. 1998) ("Sought for discovery must be 'relevant to the subject matter involved in the pending action.'") (citing Fed. R. Civ. P. 26(b)(1) and Fed. R. Bankr. P. 7026); *see also SEC v. Wang*, No. 88 Civ. 4461, 1989 WL 135558, at *1 (S.D.N.Y. May 22,1989).

23. The Motion, by seeking to make the RBC Production available to all adversary proceeding litigants and their related professionals, undermines the discovery protections of the Federal Rules because, in order to gain access to documents, an individual need only be a party to one of the myriad litigations filed by the Trustee. No showing of relevance is required to gain access to documents in the Trustee's proposed data rooms – it is only upon a request for production that some minimal protections are triggered.

24. The procedures called for in the RBC Confidentiality Agreement function, and have already been used once to allow a document produced by RBC and marked confidential to later be produced by the Trustee to the *Merkin* defendants on consent. The RBC Confidentiality Agreement, relied on by RBC when it produced documents to the Trustee, includes a ready mechanism to deal with overbroad discovery demands like those issued by the *Merkin* defendants, while addressing RBC's reasonable and valid concerns about privacy and confidentiality. There is no basis to disturb that agreement.

25. In addition, the Trustee's approach to objections to documents being placed in the second electronic data room is unwieldy and could not satisfy any producing party's reasonable confidentiality concerns. The Trustee proposes a system whereby parties, like RBC, should object to the inclusion of their documents in the second data room upon entry of the order called

9

for by the Motion. But that process incentivizes producing parties to make blanket objections – otherwise, documents previously marked as confidential and produced to the Trustee will immediately be made available to thousands of litigants and related professionals. Further, the Trustee's plan does nothing to address the concern that confidential documents will be available to parties in a substantial number of cases that lack any relevance at all to RBC or its production. Instead, the Trustee seeks to kick the question of relevance down the road to proposed Special Masters, while implementing a scheme whereby the default stance is to make documents, previously identified as confidential pursuant to agreement or under the Court's protective orders, generally available and subject only to the barest of protections from widespread dissemination.

26. The Trustee's approach fails to adequately address RBC's valid and reasonable confidentiality concerns, and the Motion, relying solely on inconvenience to the Trustee resulting from the myriad litigations initiated by him, does not overcome the otherwise stringent standards imposed on parties seeking to modify protective orders or eliminate previously negotiated and relied-upon confidentiality agreements.

## **CONCLUSION**

27. In light of the foregoing, the Motion should be denied, and an order should be entered providing that RBC's confidential documents should not be made available to third parties, except upon a showing of relevance in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure, to the extent such documents are not privileged or subject to withholding under other applicable law or rules. Any order entered by the Court should recognize and continue to uphold the validity of the Trustee's previously

negotiated confidentially agreements, including the RBC Confidentiality Agreement.

Dated:  September 21, 2011

           Respectfully submitted,

           KATTEN MUCHIN ROSENMAN LLP


BY:   /s/ Anthony L. Paccione

      Anthony L. Paccione
      anthony.paccione@kattenlaw.com
      Brian A. Schmidt
      brian.schmidt@kattenlaw.com

      575 Madison Avenue
      New York, New York 10022
      (212) 940-8800

      *Attorneys for Royal Bank of Canada*