KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Scott Davidson

KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Letitia A. McDonald (admitted *pro hac vice*)
Arthur C. Fahlbusch, Jr.

*Counsel for Bank of America*

Hearing Date:  October 5, 2011
Hearing Time:  10:00 A.M.
Objection Date:  September 21, 2011

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Trustee-Applicant,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                Debtor. | |

**BANK OF AMERICA'S OBJECTION AND RESERVATION OF RIGHTS REGARDING THE TRUSTEE'S MOTION FOR (I) A REPORT AND RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING PROCEDURES FOR ELECTRONIC DATA ROOMS; AND (III) AN ORDER MODIFYING THE <u>JUNE 6, 2011 LITIGATION PROTECTIVE ORDER</u>**

Bank of America ("Bank of America" or the "Bank"), by and through its undersigned

counsel, hereby submits this objection ("Objection") and reserves all rights regarding the motion

(the "Motion") by the Trustee for the Liquidation of Bernard L. Madoff Investment Securities

LLC [ECF No. 4290] for (I) a report and recommendation to the District Court for an

appointment of special discovery masters; (II) an order establishing procedures for electronic

data rooms ("E-Data Rooms"); and (III) an order modifying the June 6, 2011 Litigation

Protective Order, and states as follows:

BACKGROUND

1.      On or about December 15, 2008, Irving H. Picard was appointed Trustee for the

Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Baker Hostetler

was appointed as counsel for the Trustee.  As described more fully below, Baker Hostetler issued

approximately eight Federal Bankruptcy Rule 2004 ("Rule 2004") subpoenas for documents, and

one Rule 2004 subpoena for a deposition, to Bank of America in *SIPC v. Bernard L. Madoff*

*Investment Securities,* Adv. Pro. No. 08-01789-BRL.  Bank of America is not a defendant in an

adversary proceeding commenced by the Trustee.

A.      The Subpoenas and Productions

2.      In response to approximately seven Rule 2004 subpoenas issued by the Trustee's

counsel, Bank of America produced tens of thousands of pages of documents, including account

statements, and sought confidential treatment for the documents produced in response to those

subpoenas.  Those subpoenas requested documents concerning specific Bank customers and/or

account numbers.

3.      On February 16, 2010, this Court issued a protective order [ECF No. 1951] (the

"February Protective Order") that governed the disclosure of "confidential information" in all

1

proceedings brought by the Trustee.

4.      In connection with an eighth Rule 2004 subpoena, Bank of America produced tens of thousands of additional pages of documents to the Trustee concerning certain of the Bank's customers.  Bank of America designated those documents as Confidential under the February Protective Order and produced them expressly subject to the February Protective Order.  Moreover, the Trustee's counsel expressly agreed that those documents would be produced subject to, and treated in accordance with, the February Protective Order.  Those documents appear to relate to certain defendants in one adversary proceeding and, on September 19, 2011, the Trustee provided notice, under the Litigation Protective Order (as defined below), to the Bank's counsel of the Trustee's intent to produce those documents in that adversary proceeding.  Those documents include confidential personal information, financial information, and proprietary business information.  Further, a Bank of America employee appeared at a deposition in response to a Rule 2004 subpoena and that deposition transcript was designated Confidential under the February Protective Order.

5.      On June 6, 2011, this Court entered the "Litigation Protective Order" [ECF No. 4137], governing the treatment of Confidential material in the proceedings brought by the Trustee.  *See* Litigation Protective Order ¶ 20.  The Litigation Protective Order states that prior confidentiality agreements between a producing party and the Trustee still apply to materials produced before entry of the Litigation Protective Order.  *Id.* ¶ 19.  The Litigation Protective Order also provides, among other things, that a producing party must receive 10 business days' notice and "may seek a protective order or other appropriate remedy" before confidential materials are disclosed in another proceeding.  *Id.* ¶ 12.[1]

_____

[1]  The February Protective Order contains similar provisions.

2

B.      The Motion to Modify the Protective Order and Create E-Data Room 2

        6.      On August 15, 2011, counsel for Bank of America received a copy of the Motion.

        7.      On August 29, 2011, the Trustee's counsel agreed to extend Bank of America's time to object to the Motion until September 15, 2011.  At that time, the Trustee's counsel and Bank of America's counsel discussed the Motion, some concerns raised by it, and they agreed to speak again.  On September 12, 2011, the Bank's counsel and the Trustee's counsel again discussed the Motion and the Bank's counsel raised various concerns.  The Trustee's counsel was to consider the issues and, on September 19, 2011, the Bank's counsel called the Trustee's counsel inquiring of the status and left a message, but they have not spoken again.

        8.      On September 14, 2011, the hearing on the Motion was adjourned from September 22, 2011 until October 5, 2011 and, on that date, Bank of America obtained an extension until September 21, 2011 to file this objection to the Motion.  According to the Notice of Adjournment, dated September 14, 2011 [ECF No. 4355], the Trustee may file revised proposed orders three days before the October 5 hearing, which is 14 days after Bank of America's objections are due.

        9.      The Bank appreciates the logistical issues confronting the Trustee.  However, there is a substantial likelihood that the relief ultimately being sought by the Trustee, through revised proposed orders, will change three days before the October 5, 2011 hearing and fourteen days after Bank of America files this Objection.  Accordingly, Bank of America respectfully submits this Objection to the Motion and the current proposed order(s), and reserves its rights to further object to any revised proposed order(s) and/or relief requested by the Trustee.

3

<u>OBJECTION</u>

A.    <u>Bank of America Relied Upon the February Protective Order</u>

10.    Bank of America produced various documents with the express agreement and understanding that they were being produced subject to, and would be treated in accordance with, the Court's February Protective Order.[2]  The February Protective Order, as well as the Litigation Protective Order, requires the Trustee to notify Bank of America and pertinent customer(s) before any documents designated as Confidential may be shared with any third party.  After receiving notice, the producing party, the customer and/or the Trustee may seek a protective order within 10 business days or negotiate additional protections.  Under the relief sought in the Motion, however, it appears that notice would not be provided to customers before the documents were made available in the E-Data Room.

11.    Notably, documents produced include personal identifying information, confidential financial information and/or confidential proprietary commercial information of Bank of America's customers.  State and federal laws, rules, and regulations address the disclosure of financial information.  For example, in 1999 Congress enacted the Financial Services Modernization Act, also known as the Gramm-Leach-Bliley Act (the "Act").  Title V of the Act contains privacy provisions and sets forth the intent of Congress with respect to this important issue:  "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."  While the Act permits disclosure in certain circumstances, the Act is intended to provide, as the legislative history notes, "some of the strongest privacy protections ever to be enacted into any federal law,"

---

[2]  The February Protective Order has been amended twice, namely on November 10, 2010 and on June 6, 2011.

4

and represents "the most comprehensive federal privacy protection ever enacted by Congress."

Bank of America policy also restricts the disclosure of its customer's financial information.

Moreover, some of the documents produced by Bank of America contain commercial and

proprietary information of Bank of America.

B.       The Protection of the Protective Order Should Be Maintained

12.       Absent a showing of "extraordinary circumstance or compelling need," or

"improvidence" in the grant of a protective order, a protective order should not be modified

when there has been reasonable reliance upon it. *In re Sept. 11 Litig.* 262 F.R.D. 274, 277

(S.D.N.Y. 2009) (citation and internal quotation marks omitted).  Here, Bank of America relied

upon the February Protective Order, and its agreement with the Trustee's counsel, in producing

documents in response to a Rule 2004 subpoena.  According to the Second Circuit, "[w]here

there has been reasonable reliance by a party or deponent, a District Court should not modify a

protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the]

order or some extraordinary circumstance or compelling need.'"  *S.E.C. v. TheStreet.Com*, 273

F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp*., 594 F.2d 291, 296

(2d Cir. 1979)).[3]  Efficiency, ease of access and cost do not constitute the "extraordinary need"

or "compelling circumstance" required to modify a protective order.  *See Med. Diagnostic

Imaging, PLLC v. Carecore Nat'l, LLC*, Nos. 06 Civ. 13516 VM/THK, 06 Civ. 7764 CS/THK,

2009 WL 2135294, at *2 (S.D.N.Y. July 16, 2009) ("While the Court appreciates the need for

efficiency, it is hardly an extraordinary or compelling circumstance.").  Those concerns are

---

[3]  This standard has been applied to a confidentiality agreement made before a formal protective
order was entered.  *See, e.g., Botha v. Don King Prods., Inc.*, No. 97 Civ. 7587 (JGK), 1998 WL
88745, at *2 (S.D.N.Y. Feb. 27, 1998).

pertinent here given the nature of the documents produced.[4]  The Motion proposes to alter

existing processes afforded by the protective orders.  For example, less notice would be provided

and, as drafted, the asserted confidentiality designations appear to apply to documents in E-Data

Room 2.  However, even a "Professional's Eyes Only" designation would not necessarily

preclude competitors (including non-attorneys and consultants who work in the same field as the

Bank or its clients) or attorneys who are adverse to the Bank and/or its customers in other actions

from viewing this confidential information.

13.     The Motion proposes making the documents available in more than 900 adversary

proceedings, involving more than 5,000 parties, without any showing of relevance in any

particular proceeding.  However, the documents produced by Bank of America appear to relate

to specific individuals and/or entities and, thus, appear to only relate to certain specific adversary

proceedings.  Some documents may not even be relevant in any adversary proceeding.

Moreover, Rule 2004 permits broad discovery, all which may not be relevant in an adversary

proceeding.  *See In re Duratech Inds., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999) ("The scope of a

Rule 2004 examination is exceptionally broad and . . . 'affords few of the procedural safeguards

that an examination under Rule 26 of the Federal Rules of Civil Procedure does.'" (quoting *R*

*Energy Corp.*, 33 B.R. 451, 454 (Bankr. D. Mass. 1983)).

C.     Special Discovery Master's Fees

14.     Bank of America does not object to the appointment of Special Discovery

Masters.  Bank of America does, however, object to being required to pay the costs of a Special

Discovery Master as a non-party to the adversary proceedings in which these issues may be

---

[4]  According to the Second Circuit, courts should "refuse[] to permit [even the disclosure of judicial] records [which are normally public] to be used as sources of business information that might harm [a] litigant's competitive standing."  *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (citing *Schmedding v. May*, 85 Mich. 1, 48 N.W. 201, 201 (1891)).

litigated.  Under Rule 45, made applicable in this case pursuant to Rule 9016 of the Federal

Rules of Bankruptcy Procedure, the attorney issuing a subpoena is required to "take reasonable

steps to avoid imposing undue burden or expense on a person subject to the subpoena."  FED. R.

CIV. P. 45.  Rule 45 further requires the Court to "enforce this duty and impose an appropriate

sanction—which may include lost earnings and reasonable attorney's fees—on a party or

attorney who fails to comply."  *Id*.  Accordingly, the Special Discovery Master's fees should be

borne by the parties to that adversary proceeding.

WHEREFORE, for the foregoing reasons, Bank of America objects to the relief requested

in the Motion, and reserves all rights to object to any additional or modified relief the Trustee

may seek in any revised proposed order(s) submitted in connection with the Motion.


Dated: New York, New York
         September 21, 2011

                          KING & SPALDING LLP

                          By:   /s/  Arthur C. Fahlbusch, Jr.

                                 Scott Davidson
                                 KING & SPALDING LLP
                                 1185 Avenue of the Americas
                                 New York, New York  10036
                                 Telephone:  (212) 556-2100
                                 Facsimile:  (212) 556-2222

                                          and

                                 Letitia A. McDonald (admitted *pro hac vice*)
                                 Arthur C. Fahlbusch, Jr.
                                 KING & SPALDING LLP
                                 1180 Peachtree Street, N.E.
                                 Atlanta, Georgia 30309
                                 Telephone: (404) 572-4600
                                 Facsimile: (404) 572-5100

                                 *Counsel for Bank of America*