**Hearing Date: October 5, 2011 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Marco E. Schnabl
Jeremy A. Berman
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Attorneys for UniCredit S.p.A.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL)<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK PLC, et al.,<br><br>Defendants. | Adv. Pro. No. 09-1364 (BRL) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>SONJA KOHN, et al.,<br><br>Defendants. | Adv. Pro. No. 10-5411 (BRL) |

**OBJECTION TO TRUSTEE'S MOTION FOR AN ORDER (i) ABROGATING EXISTING CONFIDENTIALITY AGREEMENTS; (ii) ESTABLISHING PROCEDURES FOR AN ELECTRONIC DATA ROOM; AND (iii) APPOINTING TWO SPECIAL MASTERS**

UniCredit S.p.A. ("UCG"), by and through its undersigned counsel, respectfully submits this objection (the "Objection") to the motion of Irving H. Picard (the "Trustee") requesting entry of: (I) an order drastically modifying the Litigation Protective Order, dated June 6, 2011 (the "June 6 LPO") [Dkt. 4137], including superseding all individual confidentiality agreements between the Trustee and any parties; (II) a report and recommendation to the District Court for the appointment of Special Discovery Masters; and (III) an order expanding the Case Management Procedures approved by the Court on November 10, 2010 and establishing procedures for the creation of a separate electronic data room for documents produced to the Trustee that can be reviewed by all counsel for all parties (the "Motion").[1]

**PRELIMINARY STATEMENT**

The Trustee's Motion seeks to abrogate not only a confidentiality agreement with, among many others, UCG, but also a Litigation Protective Order entered only a little more than three months ago and an earlier Case Management Order. In addition, the Trustee seeks to impose on the defendants the costs of re-reviewing documents already produced pursuant to the existing confidentiality agreement and the potential costs of a special discovery master whose

---

[1] UCG submits this objection without prejudice to, and without waiver of, any rights, arguments or defenses it might otherwise have at law or in equity including, without limitations, its right to contest personal jurisdiction. UCG does not hereby submit to the jurisdiction of this Court. Production was made to the Trustee also by Pioneer Investment Management, Inc. ("PIM"), an indirect subsidiary of UCG which is not a party to adversary proceedings, pursuant to subpoena and to a letter-agreement of confidentiality dated December 1, 2009, which is attached as Exhibit B to the Declaration of Jeremy A. Berman. PIM therefore has an interest in the outcome of this application and in these objections to the extent they implicate its letter-agreement with the Trustee and the materials it produced to the Trustee thereunder.

2

role will be to determine whether documents should be placed in the e-data room. None of this is necessary or effective. All of it is wasteful and contrary to law.

The Trustee claims the June 6 LPO, which provides that "notice shall be provided to the producing party. . . ten (10) business days" before producing, "so that any of those parties may seek a protective order or other appropriate remedy," is "unworkable" in light of document requests that the Trustee received from defendants in *Picard v. Merkin,* Adv. Pro. No. 09-01182 (BRL). But, as recounted in the Affidavit of Edward J. Jacobs, Esq., counsel for the Trustee, this document request was received by the Trustee on January 14, 2011, <u>or approximately 5 months before the Court entered the Litigation Protective Order on June 6, 2011</u>. Surely, the Trustee knew of whatever difficulties it had with the *Merkin* document requests well before the entry into the June 6 LPO and yet chose to remain silent for months while negotiating that order with the defendants and while seeking its approval from this Court. That the Trustee acknowledges the fairness of the June 6 LPO is reflected in the Trustee's Response to Objection to Motion for Litigation Protective Order, dated May 26, 2011, which states:

> The Trustee seeks to establish a uniform and fair framework for dealing with discovery materials produced in this vast and complex proceeding. The Trustee has considered and compromised on several of the points raised by the many parties who have filed objections. For example, the Litigation Protective Order no longer abrogates prior confidentiality agreements that the Trustee entered into with various parties. It also now significantly limits the sharing and use of confidential information across cases and among parties.

(Dkt. 4097, at 2.)

Thus, the Trustee is now seeking to disavow and abrogate the very points he considered important in reaching agreement, on facts the Trustee was fully aware of when he made the quoted submission to the Court and upon which the Court relied. Principles of judicial

3

estoppel bar the taking of such inconsistent positions. *Republic of Ecuador v. Chevron Corp.* 638 F.3d 384, 397 (2d. Cir. 2011) ("The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.").

Any manageability issue here is one of the Trustee's own making. The Trustee chose to enter into confidentiality agreements with many parties. It cannot simply renege. The Trustee seeks to undo them all based solely on the experience in *Merkin*. But it is purely hypothetical whether another party will serve a similar request and there is no doubt the Trustee could have handled the *Merkin* document request in ways that would not have produced so many alleged difficulties. There is no reason for reviews of documents and uncontrolled e-data room access merely because the Trustee wants an easier way to produce document to third-parties.

## BACKGROUND

On December 15, 2008, United States District Court Judge Louis L. Stanton granted the Securities Investor Protection Corporation 's application to appoint Irving H. Picard as Trustee of Bernard L. Madoff Investment Securities LLC ("BLMIS") pursuant to the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa - 78lll (SIPC), and referred the BLMIS (SIPA) bankruptcy to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), where it was assigned to Bankruptcy Judge Burton R. Lifland.

Since his appointment, the Trustee has filed approximately 1,000 adversary proceedings, primarily to recover funds transferred from BLMIS under the avoidance and recovery sections of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code"). UCG is a defendant in an adversary proceeding captioned *Picard v. HSBC Bank PLC, et al.* (Adv. Pro. No. 09-1364 (BRL)) filed by the Trustee (the "HSBC Action"). UCG is also a defendant in

4

an adversary proceeding captioned *Picard* v. *Sonja Kohn, et al* (Adv. Pro. No. 10-5411(BRL)) also filed by the Trustee (the "Kohn Action").

Prior to commencing these actions, the Trustee issued subpoenas for discovery pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"). In February 2010, the Trustee directed a subpoena to UCG. Before agreeing to produce any documents in response to that subpoena, UCG and the Trustee entered into a confidentiality agreement (the "Confidentiality Agreement"), dated October 4, 2010.[2]

**The Court's Protective Orders**

On February 16, 2010, this Court issued an order (the "Protective Order"), which governed the disclosure of "confidential material" in all of the lawsuits brought by the Trustee. Pursuant to Paragraph 27 of the Protective Order, the Confidentiality Agreements were not terminated, superseded, limited, enhanced or otherwise modified. (Protective Order ¶ 27.)

On June 6, 2011, this Court entered the June 6 LPO, governing the treatment of "confidential material" in all of the lawsuits brought by the Trustee, which superseded the Protective Order. (June 6 LPO ¶ 20.) The June 6 LPO controls designations of "confidential material" made after the date of entry of the order, and provides that if a producing party and the Trustee had entered into a confidentiality agreement, that agreement continued to apply to documents or materials produced prior to the entry of the June 6 LPO. (June 6 LPO ¶ 19.) Thus, the Confidentiality Agreement remains in effect. With respect to future productions, the June 6 LPO provided that material could be designated confidential where

> "(a) in the good faith judgment of the party designating the material as CONFIDENTIAL such material contains trade secret or other confidential research, development, or commercial information; personal identifying

---

[2] A copy of the Confidentiality Agreement is Exhibit A to the Declaration of Jeremy A. Berman.

5

information; or other information the disclosure of which would breach a legal or contractual obligation or (b) otherwise is subject to protection under section 107(b) or (c) of the United States Bankruptcy Code, Bankruptcy Rules 9018 and 9037, and/or other applicable law."

(June 6 LPO ¶ 2.)

The Trustee's Motion seeks to walk away not only from the existing Confidentiality Agreement but also seeks to walk away from the June 6 LPO in two important respects: (1) as to Paragraph 19, the Trustee requests that it be modified to reflect that all confidentiality agreements are superseded; and (2) the Trustee now claims that it would be "unworkable" for him to obtain the consent of producing parties when material is requested within another adversary proceeding. The Trustee thus seeks leave from the requirements of the June 6 LPO to permit him to make documents produced by *any* defendant available to *all* counsel in *all* adversary proceedings.

## OBJECTION

### I. THE TRUSTEE HAS FAILED TO DEMONSTRATE AN EXTRAORDINARY CIRCUMSTANCE OR COMPELLING NEED SUFFICIENT TO SUPERSEDE THE UCG CONFIDENTIALITY AGREEMENT.

In the Second Circuit, where there has been reasonable reliance by a party on a protective order the court may not modify such an order absent a showing of "extraordinary circumstance" or "compelling need." *In re September 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (citing *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)); *see also SEC v. TheStreet.Com*, 273 F.3d 222, 230 (2d Cir. 2001) ("It is ... presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."); *In re Almatis B.V.*, 2010 WL 4877868, at *6 (Bankr. S.D.N.Y. Nov. 24, 2010) (quoting *Medical Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC*, 2009 WL 2135294,

6

at *1 (S.D.N.Y. July 16, 2009). Courts apply the same stringent standard to the modification of confidentiality agreements. *See U.S. v. Oshatz*, 700 F. Supp. 696, 700-01 (S.D.N.Y. 1988).[3]

Induced by the Confidentiality Agreement, UCG produced certain confidential material to the Trustee, including many documents that contain sensitive commercial information. Indeed, when UCG produced sensitive documents to the Trustee, it did so relying on the assurances of the Confidentiality Agreement that those documents would only be seen by the Trustee, and not ultimately placed in a communal data room to be seen by unrelated third parties with no interest in the Kohn Action or the HSBC Action.

The Trustee's sole basis for superseding the existing agreements is that they are supposedly "unworkable." (Mot. ¶ 23). The Trustee's unforeseen costs and administrative inconvenience do not make the agreements "unworkable," and as such it is an insufficient basis to supersede confidentiality agreements he entered into in good faith and which producing parties relied upon in producing confidential material. *See Med. Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC*, 2009 WL 2135294, at *2 (S.D.N.Y. July 16, 2009) (finding the that the "need for efficiency … is hardly an extraordinary or compelling circumstance"); *see also Maryland Cas. Co. v. WR. Grace & Co.*, 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994) (holding that judicial economy and the avoidance of duplicate discovery do not create extraordinary circumstances or compelling need); *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393, 404 (W.D. Va. 1987) (holding that saving time and expense was not a compelling reason to justify abrogating a protective order).

---

[3] PIM had produced materials to the Trustee even before UCG was served with a Rule 2004 subpoena. *See* note 1, above. PIM is not a party to any proceedings. Its letter-agreement of confidentiality with the Trustee cannot even arguably be regarded as a species of "protective order" subject, albeit in very exigent circumstances, to being modified in the interest of the efficient management of court proceedings. It is an agreement between private parties, far removed from the judicial power of abrogation, arguably even by Constitutional limitations.

7

Further, the Trustee's complaint that the normal discovery process is "unworkable" in these proceedings is a fiction as it is predicated upon the Trustee's discovery disputes solely with the *Merkin* defendants. As described in the Jacobs Affidavit, the defendants' discovery requests in *Merkin* were patently overbroad and unwarranted, and as such do not serve as an indication that such disputes will arise in other adversary proceedings. Regardless, under the controlling case law, this single instance, which was clearly of the Trustee's own making, is hardly a sufficient basis to warrant superseding existing confidentiality agreements.

## II. E-DATA ROOM 2 WOULD NOT SUFFICIENTLY PROTECT UCG'S NON-PUBLIC OR CONFIDENTIAL MATERIAL.

Due to foreign banking secrecy laws and other commercial realities, the data room procedures proposed by the Trustee may cause UCG to suffer serious commercial harm as certain documents produced by UCG must be kept absolutely confidential. As discussed further below, since access to E-Data Room 2 is unrestricted, even though it will contain highly sensitive documents, the Trustee's request must be denied.

The commercial harm that may be caused by placing UCG's documents in Data Room 2 are similar to the concerns that animate the protections offered by Federal Rule of Civil Procedure 26(c). Rule 26(c) protects trade secrets, confidential research, and developmental or commercial information and authorizes a court to enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c)(1)(A); (c)(7). Here, many of the documents that UCG has produced contain commercial information that, if viewed by others, could cause commercial harm and undue expense in the form of civil penalties. *See In re Powell*, 1998 WL 800110, at *2 (Bankr. D. Vt. Oct. 19, 1998) ("the exhibits [defendant] desires to keep confidential [have the] potential to do commercial

8

harm and the fact that the information was quite arguably a part of defendants efforts to gain competitive advantage are dispositive to the Court's decision to seal the exhibits").

Furthermore, producing all of UCG's information in a data room accessible by hundreds, and potentially thousands, of third parties violates federal discovery rules, which limits discovery to "any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P . 26(b)(1); *see also In re Almatis B.V.*, 2010 WL 4877868, at *3-6 (Bankr. S.D.N.Y. Nov. 24, 2010) (denying third party's request for production of confidential discovery materials to prepare litigation claims for a separate lawsuit because the moving party had not filed yet filed an action, and as a result the discovery sought could not possibly be relevant to any party's claim or defense).  That the Trustee has chosen to file approximately a thousand proceedings, and that these may in the aggregate be "burdensome," gives him no license to foist on UCG the task of protecting him from the obligation of treating the fruits of discovery from UCG (and from other parties) with the circumspection required by the rules of discovery that limit, except in rare circumstances, the "outflow" of the materials gathered by the Trustee beyond the pale of the cases in which they are collected.

Indeed, while the Trustee promises to review requested documents for relevance, any Outside Litigation Counsel can view, and potentially duplicate, all of UCG's documents, regardless of whether those documents are relevant or not to the claims and defenses of such parties.  Given that there it is generally impermissible for parties in other adversary proceedings to see unrelated third parties' productions, the Motion should be denied, especially given the confidential nature of many of the documents.

The Supreme Court has recognized that, in contrast to materials actually filed with the Court, material produced in discovery can be abused by parties seeking that discovery

9

and thus has endorsed the use of protective orders to guard against potential abuses of discovery. As the Supreme Court stated:

> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.
>
> * * *
>
> There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34-35 (1984). In short, alleged (self-imposed) burden is no basis for a discovery free-for-all, simply because that would be convenient to the Trustee.

### III.   USE OF SPECIAL MASTERS IN CASES AND PROCEEDINGS UNDER THE BANKRUPTCY CODE IS PROHIBITED.

The Trustee's request for the appointment of Special Discovery Masters must be denied because Bankruptcy Rule 9031 – Masters Not Authorized – prohibits the appointment of special masters in bankruptcy cases and proceedings.[4] Fed. R. Bankr. P. 9031 ("Rule 53 F.R.

---

[4] Notably, the adversary proceedings related to the BLMIS liquidation are cases under the Securities Investor Protection Act ("SIPA"), not the Bankruptcy Code. SIPA § 78fff(b) states that "[t]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11." SIPA does not contain any provisions concerning special masters or their appointment in SIPA proceedings. Thus, since the Bankruptcy Rules govern procedure in cases under title 11, *see* Bankruptcy Rule 1001, the Bankruptcy Rules apply in SIPA cases to the same extent as they apply in cases governed by the Bankruptcy Code. *See In re Fairfield Sentry Ltd.*, 452 B.R. 64 (Bankr. S.D.N.Y. 2011) (applying the Bankruptcy Rules to a SIPA

*(cont'd)*

10

Civ. P. does not apply in cases under the Code"). Furthermore, the Advisory Committee Note to Bankruptcy Rule 9031 states: "This rule precludes the appointment of masters in cases and proceedings under the Code." Fed. R. Bankr. P. 9031 Advisory Committee's Note.

Given the plain language of both Rule 9031 and its accompanying Advisory Committee Note, it is clear that neither a district judge nor a bankruptcy judge is authorized to appoint Special Discovery Masters in this case. *See Wittes v. Interco, Inc.* (In re Interco, Inc.), 139 B.R. 718, 721 (Bankr. E.D. Mo. 1992) ("Bankruptcy Rule 9031 precludes the appointment of masters in cases and proceedings under the Bankruptcy Code"); Collier on Bankruptcy (15th ed. rev.) ¶ 9031.01 ("It is the purpose of Rule 9031 that all matters that are to be tried in bankruptcy cases are to be tried by the bankruptcy judge or, in appropriate cases, by the district judge. In *either* event, the judge may not appoint a master pursuant to the procedures set out in Rule 53") (emphasis added); *see also* Paulette J. Delk, *Special Masters in Bankruptcy: The Case Against Bankruptcy Rule 9031*, 67 MO. L. REV. 29, 42 ("Given the language of Rule 9031, making FRCP 53 inapplicable in all bankruptcy cases, *no judge*, whether of the district court or bankruptcy court, is authorized to appoint a special master") (emphasis added).

In light of the foregoing, this Court need not consider whether to request that the District Court appoint Special Discovery Masters as the District Court is forbidden to appoint them pursuant to Bankruptcy Rule 9031, which rule is operative in both this Court and the District Court. *See* Fed. R. Bankr. P. 1001 ("The Bankruptcy Rules … govern procedure in cases under title 11 of the United States Code"); *see also Owens-Illinois, Inc. v. Rapid Am. Corp.* (In re Celotex Corp.), 124 F.3d 619, 629 (4th Cir. 1997) ("We have determined that this case is

---

*(cont'd from previous page)*
  proceeding); *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*, 443 B.R. 295, 300 (Bankr. S.D.N.Y. 2011) (same).

11

properly in federal district court on 'related to' jurisdiction under § 1334(b). The entire body of Bankruptcy Rules, therefore, applies to this action."); *Anderson v. F.D.I.C.*, 918 F.2d 1139, 1143 n. 3 (4th Cir. 1990) (citing Bankruptcy Rule 1001 and holding that Bankruptcy Rules apply to an action in federal district court based on "related to" jurisdiction under 28 U.S.C. § 1334(b)).

Notwithstanding the clear import of Rule 9031, the Trustee observes that special masters have been appointed in a few bankruptcy cases. While each of these cases is easily distinguishable from the present matter, more importantly, not one of these decisions considers whether Rule 9031 precludes a district court judge from appointing a special master. Indeed, not one of these decisions even mentions Rule 9031, and as such do not contradict the plain meaning of the rule as discussed above.

## CONCLUSION

For the foregoing reasons, UCG respectfully requests that the Court deny the Trustee's Motion.

Dated: New York, New York
September 22, 2011

        Respectfully submitted,

        /s/ *Jeremy A. Berman*
          Jeremy A. Berman

        Jeremy A. Berman (Jeremy.Berman@skadden.com)
        Marco E. Schnabl
        SKADDEN, ARPS, SLATE,
         MEAGHER & FLOM LLP
        Four Times Square
        New York, New York 10036
        (212) 735-3000

        *Attorneys for UniCredit S.p.A.*