Hearing Date: October 5, 2011 at 10:00 a.m.

Lewis J. Liman
Jeffrey A. Rosenthal
Members of the Firm
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel.: (212) 225-2000
Fax: (212) 225-3999
lliman@cgsh.com
jrosenthal@cgsh.com

*Attorneys for The Bank of New York Mellon Corporation
and Ivy Asset Management LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION<br><br>Plaintiff<br><br>vs.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | SIPA LIQUIDATION<br>No. 08-01789 (BRL)<br><br>Hon. Burton R. Lifland<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**OBJECTION TO TRUSTEE'S MOTION FOR
ENTRY OF AN ORDER ABROGATING EXISTING CONFIDENTIALITY
AGREEMENTS AND CREATING AN ELECTRONIC DATA ROOM**

The Bank of New York Mellon Corporation ("BNY Mellon") and Ivy Asset

Management LLC ("Ivy"), by and through their undersigned counsel Cleary Gottlieb Steen &

1

Hamilton LLP, hereby object to the Trustee's Motion for (I) A Report and Recommendation To The District Court For The Appointment Of Special Discovery Masters; (II) An Order Establishing Procedures For Electronic Data Rooms; and (III) An Order Modifying The June 6, 2011 Litigation Protective Order (the "Motion"). Rather than repeat those arguments that have already been made to this Court or that are being made contemporaneously herewith, BNY Mellon and Ivy join in and incorporate by reference the objections to the Motions filed by Plaza Investments International Limited [Dkt. No. 4323], by the MAXAM Defendants [Dkt. No. 4324], by Bank of America (except the arguments under heading "C") [Dkt. No. 4393], by Royal Bank of Canada [Dkt. No. 4390]; by Merrill Lynch International, by UniCredit S.p.A. (except the arguments under heading "III"), by the Sterling Defendants, and by UBS A.G.

A.    **The Trustee Seeks To Unilaterally Abrogate His Agreement With BNY Mellon and Ivy Upon Which They Have Relied In Producing Documents In This Litigation**

In addition to the reasons set forth in the objections incorporated herein, BNY Mellon and Ivy further object to the retroactive application of Paragraph A of the proposed Order Modifying the June 6, 2011 Litigation Protective Order, which provides that "[t]o the extent that a Producing Party and the Trustee have entered into an agreement regarding the confidentiality or non-disclosure of documents or discovery materials, such agreements shall be superseded by the June 6, 2011 Litigation Protective Order. All designations of material as **CONFIDENTIAL** shall be controlled by the June 6, 2011 Litigation Protective Order."

This provision purports to abrogate the confidentiality agreement executed by the Trustee and BNY Mellon (the "Confidentiality Agreement"), pursuant to which BNY Mellon and its subsidiary Ivy Asset Management LLC ("Ivy") reviewed, designated and produced hundreds of thousands of pages of documents. (See July 14, 2009 Letter from Maryanne Stanganelli to Jeffrey A. Rosenthal, Ex. A (defining confidential material as "confidential, non-

2

public business or financial information").) The Trustee benefitted from his agreement with BNY Mellon and Ivy: he obtained access to their documents quickly and without any protracted negotiations or litigation concerning the materiality of the documents sought for use in these proceedings. BNY Mellon and Ivy were assured that the documents produced would be treated as confidential, and they relied on that assurance to promptly produce to the Trustee all documents he requested. The Trustee now seeks to unilaterally abrogate that agreement solely on the basis that compliance imposes a routine administrative litigation expense.

The Trustee has failed to make the showing required to justify judicial abrogation of his agreement with BNY Mellon and Ivy. A protective order, once relied upon by the parties, cannot be modified or abrogated "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." See SEC v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001). The standard recognizes that it is "presumptively unfair for courts to modify protective orders." AT&T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005) (citing TheStreet.com, 273 F.3d at 230). And this is for good reason. If litigants could not rely on the enforcement of protective orders as agreed to, "parties would be less forthcoming in giving testimony and less willing to settle their dispute," increasing the cost and complexity of litigation and wasting judicial resources. Id. at 230. These are the very outcomes that protective agreements are meant to avoid. Because confidentiality agreements – by their nature – are designed to induce reliance, among the justifications that courts in this District have recognized as *insufficient* to justify modification of a confidentiality agreement is that one of the parties ultimately finds compliance with the agreement to be cumbersome. See, e.g., Med. Diagnostic Imaging, PLLC, Nos. 06 Civ. 7764 (CS) (THK), 06 Civ. 13516 (VM) (THK), 2009 WL 2135294, at *2 (S.D.N.Y. July 16, 2009) (holding that "the need for efficiency" is "hardly an

3

extraordinary or compelling circumstance."); Md. Casualty Co. v. W.R. Grace & Co., No. 83 Civ. 7451 (SWK) (LB), 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994) ("Although fostering judicial economy and avoiding duplicative discovery are laudable goals … they hardly amount to extraordinary circumstances or compelling need."). Particularly when weighed against the material prejudice to BNY Mellon and Ivy, the Trustee has failed to carry his burden.

**B.    Modifying The Standard For Designating "Confidential" Documents Would Be Highly Prejudicial To BNY Mellon and Ivy**

Abrogation of the Confidentiality Agreement would materially prejudice BNY Mellon and Ivy and require the expenditure of significant resources without any justification. The standards set forth in the June 6, 2011 Litigation Protective Order are markedly different from those in the Confidentiality Agreement, and thus its retroactive application to documents produced by BNY Mellon and Ivy pursuant to the Confidentiality Agreement would be wholly improper and highly prejudicial.[1] It would be time consuming and expensive, without any corresponding benefit, to require BNY Mellon and Ivy to re-review their entire production to meet these new standards the Trustee now wishes to impose despite his prior agreement. TheStreet.com, 273 F.3d at 230 ("We have been hesitant, therefore, to permit modifications of protective orders in part because such modifications unfairly disturb the legitimate expectations of litigants."); SEC v. Merrill Scott & Assocs., Ltd., 600 F.3d 1262, 1272 (10th Cir. 2010) ("Typically, when considering whether to modify a protective order, courts examine any tangible prejudice to the party opposing modification that outweighs the benefits of modification.").

---

[1] The Confidentiality Agreement permits BNY Mellon and Ivy to designate "confidential, non-public business or financial information" as confidential. (Ex. A, at 1.) The June 6 Litigation Protective Order, by contrast, limits designation to material only where "(a) in the good faith judgment of the party designating the material as CONFIDENTIAL such material contains trade secret or other confidential research, development, or commercial information; personal identifying information; or other information the disclosure of which would breach a legal or contractual obligation or (b) otherwise is subject to protection under section 107(b) or (c) of the United States Bankruptcy Code, Bankruptcy Rules 9018 and 9037, and/or other applicable law."

4

That the Trustee would be faced with requests for the production of BNY Mellon's or Ivy's documents was far from unforeseen, and the Confidentiality Agreement specifies a simple procedure for addressing such requests: the Trustee is required to provide reasonable notice that he has been requested to produce documents and to afford an extremely reasonable five-day period within which BNY Mellon or Ivy may object. (Confidentiality Agreement, Ex. A at 3.) The Trustee has used this procedure repeatedly, and in each instance BNY Mellon or Ivy have permitted the Trustee to disclose the confidential information (in one case agreeing not to object to the public use of such documents, in other cases not objecting to the production of such documents pursuant to confidentiality agreements). In no case has BNY Mellon or Ivy ever refused to review documents identified to them by the Trustee, nor have they asserted confidentiality with respect to documents without a good faith basis for doing so. The Trustee's demand that BNY Mellon and Ivy re-review their entire production simply because a new and different standard of confidentiality now suits his purposes would require the expenditure of significant financial resources without yielding any clear benefit to either the Trustee or those who seek documents from him. See also Omega Homes, Inc. v. Citicorp Acceptance Co., 656 F. Supp. 393, 404 (W.D. Va. 1987) (When "the proposed modification affects a protective order stipulated to by the parties, as opposed to one imposed by the court, it is clear that the shared and explicit assumption that discovery was for the purposes of one case alone goes a long way toward denying the movant's request without more.")

C. **The Trustee Offers No Valid Justification For Abrogating His Agreement With BNY Mellon and Ivy**

The Trustee cannot carry his burden of showing "extraordinary circumstance or compelling need." TheStreet.com, 273 F.3d at 229. Neither BNY Mellon nor Ivy object to the Motion insofar as it would seek to make uniform the *procedures* for seeking dedesignation of

documents designated as "Confidential" or otherwise responding to requests for production or subpoenas. What BNY Mellon and Ivy do object to is the Trustee's attempt to retroactively re-define the *standard* for evaluating whether BNY Mellon and Ivy's documents are properly designated.

There is no justification for modifying that portion of the Confidentiality Agreement governing what is properly designated as "Confidential" by BNY Mellon or Ivy. Doing so creates no efficiency for the Trustee (for whom the issue of whether a document has been properly designated will remain an issue, regardless of the applicable standard), but it is highly prejudicial to BNY Mellon and Ivy (who produced documents in reliance on the standard set forth in the Confidentiality Agreement). See, e.g., Id; Martindell, 594 F.2d 291, 296 ("[A] witness should be entitled to rely upon the enforceability of a protective order against any third parties...."); see also CBS Interactive, Inc. v. Etilize, Inc., 257 F.R.D. 195, 201 (N.D. Cal. 2009) ("A party asserting good cause [to modify a confidentiality order] bears the burden to show that specific prejudice or harm will result if the motion is not granted."). The Trustee is a highly sophisticated party who presumably understood the agreement he made. He should not be permitted to unilaterally renege on that agreement.

**D.    BNY Mellon and Ivy Also Object To The Inclusion Of Properly-Designated "Confidential" Documents In The Trustee's Proposed Electronic Data Room**

Finally, in addition to the more general objections to the Trustee's proposed Electronic Data Room shared with other parties, BNY Mellon and Ivy specifically object to the Trustee's proposal to include documents properly designated as "Confidential" within his proposed Electronic Data Room as contemplated in the proposed Order Establishing Procedures for Electronic Data Rooms. In a case of this size, with hundreds of parties located throughout the country and around the world, the designation of a document as "Confidential" would

quickly cease to have any meaningful benefit if it was then made available – without regard to relevance – to every party.

      This is not a case in which access to documents marked "Confidential" can be easily controlled or policed. See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig., 121 F.R.D. 147, 150 (D.P.R. 1988) (specifying stringent procedures to protect confidentiality in litigation involving multiple parties because "[t]he large number of parties using the Joint Document Depository in this case creates special concerns about safeguarding stamped confidential materials."). Under Federal Rule of Civil Procedure 26(b)(1) (made applicable in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7026), parties who cannot make any showing that particular documents are relevant to the claims asserted against them have no entitlement to documents produced to the Trustee, and permitting them to peruse documents stamped "Confidential" only invites accidental or intentional disclosure or use of such documents. This concern is particularly pronounced for financial institutions like BNY Mellon, for whom many direct competitors are also parties to this case. It is equally concerning both for BNY Mellon and Ivy to the extent that they have produced confidential information concerning the finances or investments of their clients, which would be made available in the Electronic Data Room.

      Limiting Electronic Data Room access to counsel of record does little to ameliorate this concern, as hundreds of attorneys throughout New York have or can be expected to enter appearances in this litigation, many of whom may have interests (or clients with interests) adverse to those of BNY Mellon and Ivy. In short, while BNY Mellon and Ivy understand that the Trustee's proposal might generate efficiencies for the Trustee, its adoption would be highly prejudicial to those who have produced *confidential* documents to the Trustee in reliance on his assurances that they would be treated as such.

7

Dated: September 22, 2011
      New York, New York

           Respectfully submitted,

           CLEARY GOTTLIEB STEEN & HAMILTON LLP

           By:   /s/ Jeffrey A. Rosenthal
                Lewis J. Liman
                Jeffrey A. Rosenthal
                Members of the Firm

           One Liberty Plaza
           New York, New York 10006
           (212) 225-2000
           (212) 225-3999 (facsimile)
           lliman@cgsh.com
           jrosenthal@cgsh.com

           *Attorneys for The Bank of New York Mellon Corporation and Ivy Asset Management LLC*