Hearing Date:  October 5, 2011 at 10:00 a.m.
Objection Deadline:  September 22, 2011 at 12:00 p.m.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Carmine D. Boccuzzi Jr.
David Y. Livshiz

*Attorneys for Citibank, N.A., Citicorp North America, Inc.,*
*Citigroup Global Markets Limited and Citi Hedge Fund Services Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | SIPA LIQUIDATION |
| Plaintiff-Applicant, | No. 08-01789 (BRL) |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Debtor. | |

**CITI DEFENDANTS' PARTIAL JOINDER OF OBJECTIONS TO THE TRUSTEE'S**
**MOTION FOR (I) A REPORT AND RECOMMENDATION TO THE DISTRICT**
**COURT FOR THE APPOINTMENT OF SPECIAL DISCOVERY MASTERS; (II) AN**
**ORDER ESTABLISHING PROCEDURES FOR ELECTRONIC DATA ROOMS; AND**
**(III) AN ORDER MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE**
**ORDER**

Citibank, N.A. ("Citibank"), Citicorp North America, Inc. ("CNAI"), Citigroup

Global Markets Limited ("CGML") and Citi Hedge Fund Services Ltd. ("Citi Hedge," and

collectively with Citibank, CNAI and CGML, the "Citi Defendants"), by their attorneys Cleary

Gottlieb Steen & Hamilton LLP, join and incorporate by reference the legal arguments made in

the objections of The Bank of New York Mellon Corporation ("BNY Mellon"), the Sterling

Equities and the related individuals and entities comprising the defendants in *Picard v. Katz*, 11-

CV-03605 (JSR) ("Sterling"), Royal Bank of Canada ("RBC"), Bank of America ("BofA"),

Merrill Lynch International and Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") and

points I and II of the objection of UniCredit S.p.A. to the Trustee's Motion For (I) A Report And

Recommendation To The District Court For The Appointment Of Special Discovery Masters;

(II) An Order Establishing Procedures For Electronic Data Rooms; And (III) An Order

Modifying The June 6, 2011 Litigation Protective Order, dated August 5, 2011 [Dkt. No. 4290]

(the "Motion").[1]   In support of these objections, the Citi Defendants respectfully state as follows:

1.      Citibank, CNAI and CGML are defendants in an adversary proceeding

commenced by the trustee (the "Trustee") for the liquidation of Bernard L. Madoff Investment

Securities LLC ("BLMIS"), Adv. Proc. No. 10-05345, which was filed under seal with this Court

on December 8, 2010.  Citi Hedge is a defendant in an adversary proceeding commenced by the

Trustee in this Court on April 17, 2009, Adv. Proc. No. 09-01161, and amended for the third

time on June 8, 2011 to add, among others, Citi Hedge as a defendant.

2.      On July 28, 2009, before commencing the present adversary proceeding

against CGML, the Trustee served a wide-ranging subpoena on an affiliate of CGML pursuant to

Bankruptcy Rule 2004 (the "Subpoena"), seeking, among other information, "any and all

documents" in CGML's possession concerning BLMIS or Fairfield Sentry.

3.      After receiving the Subpoena, CGML's counsel contacted the Trustee's

counsel and expressed CGML's willingness to cooperate in the Trustee's investigation, provided

the parties could agree on a confidentiality agreement.  Over the next month, counsel for CGML

---

[1]   The Citi Defendants make these objections without prejudice to or waiver of any rights or defenses in this matter or in any of the adversary proceedings related thereto, including without limitation defenses based upon lack of personal jurisdiction or improper service of process.

and the Trustee negotiated a confidentiality agreement, which was executed by the parties on

September 11, 2009.  <u>See</u> Letter from Thomas Long to Carmine Boccuzzi dated Sept. 11, 2009,

attached here as Exhibit A (the "Confidentiality Agreement" or "Agreement").

4.    The Confidentiality Agreement provides that CGML may designate "any

portion of, <u>or all</u>, of the documents produced" to the Trustee as "confidential," subject to

objection by the Trustee.  <u>Id.</u> at 1-2 (emphasis added).  The Agreement also bars the Trustee

from disclosing confidential information to third parties without first giving CGML an

opportunity to object.  <u>Id.</u> at 3.

5.    Relying on the protections of the Confidentiality Agreement, CGML

produced thousands of pages of documents to the Trustee.  These sensitive internal documents

identified potential and actual transactions contemplated and entered into by CGML and the

terms of these transactions.  These documents also evidenced CGML's internal risk approval

procedures.

6.    After this production, CGML continued to cooperate with the Trustee's

investigation.  In October and November of 2010, the Trustee deposed a present employee and a

former employee of Citigroup.  Both CGML and the Trustee designated these depositions as

"confidential" pursuant to the protective order entered by this Court on February 16, 2010.  <u>See</u>

Protective Order dated Feb. 16, 2010 (the "February Protective Order") [Dkt. No. 1951].

7.    Over a year before suing Citi Hedge, the Trustee delivered a Bankruptcy

Rule 2004 subpoena dated March 29, 2010 to Citi Hedge's office in Bermuda.  Citi Hedge

objected to that subpoena on several grounds, including but not limited to the fact that the

Trustee failed to properly serve that subpoena on Citi Hedge and that the subpoena did not have

extraterritorial effect.  Nevertheless, to avoid protracted litigation, Citi Hedge agreed to provide

the Trustee certain categories of responsive information in reliance on the Trustee's promise that

such information would be treated as confidential under the February Protective Order.  <u>See</u>

Letter from Christopher Moore to Frederick Chockley dated Oct. 13, 2010, attached here as

Exhibit B.  Relying on the confidentiality designations of the February Protective Order, Citi

Hedge produced highly sensitive documents to the Trustee.

   8. On February 1, 2011, the Trustee moved to amend the February Protective

Order so as to supersede all prior confidentiality agreements made with third parties.  <u>See</u> Exhibit

B to the Trustee's Motion for Entry of Litigation Protective Order at ¶ 20 [Dkt. No. 3819].  After

months of protracted negotiations following the filing of objections to the motion by CGML and

numerous other parties, on May 26, 2011, the Trustee agreed to maintain the prior confidentiality

agreements.  <u>See</u> Trustee's Response to Objection to Motion for Entry of Litigation Protective

Order, at 2 [Dkt. No. 4097].

   9. On August 5, 2011, just two months after the conclusion of those lengthy

negotiations that culminated in the Protective Order and the continued viability of the

Confidentiality Agreement, the Trustee once again reneged on his prior commitments by making

the present Motion, which seeks approval of an order that would modify the Protective Order to

entirely abrogate the Confidentiality Agreement.  The Motion also seeks to replace the

confidentiality regime established by the Protective Order with a wholly unprecedented

discovery mechanism that would allow counsel for "close to 5,000 defendants" in the Trustee's

"over 900 lawsuits" filed in this Court to peruse the Citi Defendants' productions to the Trustee,

which were made in reliance on the confidentiality protections of the Agreement and the

February Protective Order, in an "open file" electronic data room at their leisure.  <u>See</u> Motion ¶¶

10, 22.

10.    After several weeks of negotiations between the Trustee's counsel and several defendants in these adversary proceedings, including the Citi Defendants, the Trustee nevertheless continues to unjustifiably seek to abrogate the previous confidentiality agreements in place between the parties and to establish an "open file" electronic data room accessible by thousands of outside litigation counsel.  See September 22, 2011 Proposed Order Establishing Procedures For Electronic Data Rooms and Proposed Order Modifying The June 6, 2011 Litigation Protective Order, attached here as Exhibit C.

11.    To avoid burdening the Court with identical pleadings, the Citi Defendants join and incorporate by reference the arguments, in their entirety, made by BNY Mellon, Sterling, RBC, BofA, Merrill Lynch, and parts I and II of to the objection of UniCredit S.p.A. to the Motion and respectfully request that the Court deny the relief requested by the Trustee.

**CONCLUSION**

For all of the foregoing reasons and all of the reasons stated by BNY Mellon, Sterling, RBC, BofA, Merrill Lynch and parts I and II of the objection of UniCredit S.p.A., the Citi Defendants respectfully request that this Court deny the Trustee's Motion.

Dated: New York, New York
      September 22, 2011

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:    /s/ Carmine D. Boccuzzi

      Carmine D. Boccuzzi Jr.
      (cboccuzzi@cgsh.com)
      A Member of the Firm

One Liberty Plaza
New York, New York  10006-1470
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Citibank, N.A., Citicorp North America, Inc., Citigroup Global Markets Limited and Citi Hedge Fund Services Ltd.*


Of counsel:
 David Y. Livshiz
 Jerilin Buzzetta

# EXHIBIT A

# Baker Hostetler

Baker&Hostetler LLP

Capitol Square, Suite 2100
65 East State Street
Columbus, OH 43215-4260

T 614.228 1541
F 614 462 2616
www.bakerlaw.com

Thomas L Long
direct dial  614 462 2626
tlong@bakerlaw com

September 11, 2009

Carmine D  Boccuzzi, Jr.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006-1470

Re:    Confidentiality Agreement between Irving H. Picard, Esq., Trustee for the SIPA
       Liquidation of Bernard L  Madoff Investment Securities, LLC, and Citigroup
       Global Markets Holdings, LLC

Dear Carmine:

As previously discussed, Citigroup Global Markets Holdings, LLC ("CGMH") has agreed to produce certain documents to Irving H  Picard, Esq., Trustee for the liquidation of Bernard L. Madoff Investment Securities, LLC (hereinafter "Trustee") in response to a Rule 2004 subpoena issued in connection with Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, Adv. Pro. No. 08-01789-BRL, pending in the Bankruptcy Court for the Southern District of New York (hereinafter "SIPA Liquidation").  This letter memorializes CGMH's and the Trustee's agreement (hereinafter "Agreement") regarding documents produced to the Trustee that are designated by CGMH at the time of production to contain confidential, non-public business or financial information (hereinafter "Confidential Information").

CGMH and the Trustee agree that CGMH may designate as confidential any portion of, or all, of the documents produced pursuant to the July 28, 2009 Rule 2004 Subpoena served on CGMH.  At the time of production, all such documents shall be marked with the designation "CONFIDENTIAL"

In the event that CGMH inadvertently fails to designate as "CONFIDENTIAL" material or information constituting Confidential Information as defined herein at the time of production or disclosure, such failure shall not operate to waive CGMH's right to later designate such material or information as Confidential Information, but no party shall be held in breach of this Agreement if, in the interim, such material or information has been disclosed to any person(s) not authorized to receive Confidential Information under this Agreement, or has been used in a manner inconsistent with this Agreement  Once such belated designation has been made, however, the relevant materials or

Carmine D  Boccuzzi, Jr , Esq
September 11, 2009
Page 2

information shall be treated as Confidential Information in accordance with this
Agreement

Should the Trustee's counsel disagree with CGMH's designation of any
information as Confidential Information, the Trustee's counsel shall advise CGMH's
counsel of its disagreement and the reasons for the disagreement.  The Trustee's
counsel and CGMH's counsel shall confer in good faith to resolve the issue and, absent
a consensual resolution, CGMH may request, with notice to the Trustee and on an
expedited basis, that the Bankruptcy Court resolve the issue on no less than five (5)
business days' written notice to counsel for the Trustee (subject to the Bankruptcy
Court's availability), and the material in question shall be treated as Confidential
Information pending resolution of the issue.  Absent such application, the information
will no longer be deemed Confidential Information for the purposes of the Agreement.

The Trustee agrees that it may only use Confidential Information in connection
with the SIPA Liquidation and proceedings related to the SIPA Liquidation, and that
Confidential Information will not be disclosed in any matter whatsoever, in whole or in
part, except as (a) required by law or requested or required by any competent
regulatory, supervisory or governmental authority (subject to the notice and protective
order provisions of this Agreement); (b) agreed to in writing by the parties; or (c)
permitted or required by this Agreement.  The Trustee may, consistent with this
Agreement, disclose Confidential Information: (1) to the Trustee's counsel and the staff
and employees of his counsel, provided that the signature on this Agreement by a
member of Trustee's counsel shall constitute an agreement by all lawyers in, and staff
and employees of, that firm to be so bound, and (2) to experts, consultants and
professionals retained by the Trustee and Trustee's counsel, including FTI Consulting,
Inc. and other forensic and technology consultants, to assist with the investigation,
forensic reconstruction and validation of the underlying records of Bernard L. Madoff
Investment Securities LLC ("BLMIS"), and their staffs, provided that, before any
Confidential Information is disclosed to such persons or entities, counsel for the Trustee
or the Trustee shall inform the recipient of the obligations created by this Agreement
and the signature on this Agreement by a member of Trustee's counsel shall constitute
an agreement by all experts, consultants and professionals retained by the Trustee and
Trustee's counsel who receive Confidential Information to be bound by the Agreement.
The Trustee agrees that it shall be responsible to CGMH for any action or failure to act
that would constitute a breach or violation of this Agreement by any of its retained
experts, consultants or professionals.

In the event that any Confidential Information is used in any proceeding in the
SIPA Liquidation, it shall not lose its confidential status through such use, and the
Trustee and CGMH shall take all steps reasonably required to protect its confidentiality
during such use.  Counsel for the Trustee and CGMH shall confer and agree on such
procedures as are necessary to protect the confidentiality of Confidential Information or
the information contained therein used in the course of any proceeding in the SIPA
Liquidation    Unless otherwise ordered by the Bankruptcy Court, all Confidential
Information shall be filed under seal and kept under seal in accordance with the rules of
the Bankruptcy Court

The Trustee and CGMH agree that Confidential Information does not include
information or material which  (a) is made available to the public through means other
than disclosure by the Trustee, or (b) becomes available to the Trustee on a non-

Carmine D  Boccuzzi, Jr., Esq
September 11, 2009
Page 3

confidential basis from a source other than CGMH, including from the files of BLMIS or
elsewhere, provided that the Trustee has no reason to believe such source is bound by
a confidentiality agreement or otherwise prohibited from transmitting the information to
the Trustee by a contractual, legal or fiduciary obligation.

In the event that the Trustee is requested or required (by written questions,
interrogatories, requests for information or documents, subpoena, or any other process
employed in connection with a judicial, investigatory, regulatory or administrative
proceeding within or outside the SIPA Liquidation, or other provision of law determined
to be applicable by the Trustee in consultation with its counsel) to disclose any
Confidential Information, the Trustee shall provide to CGMH reasonable notice of
receipt of any such request (which shall be within ten (10) business days of receipt of
any such request where possible), identifying the Confidential Information sought and
enclosing a copy of the request   The Trustee shall give at least five (5) business days
notice before production or other disclosures are to be made   If CGMH is advised by
the Trustee in accordance with this Agreement of any such request, and CGMH does
not notify the Trustee in writing that it objects to the production or provision of the
Confidential Information within five (5) business days of receiving notice from the
Trustee, then the Trustee's compliance with the request for Confidential Information
shall not constitute a breach of this Agreement.  CGMH may seek a protective order or
other appropriate remedy limiting or barring production of the Confidential Information.
No such requested Confidential Information shall be produced while a timely motion by
CGMH or relevant non-party for a protective order, to quash or otherwise contest or
limit the production of the Confidential Information is pending   Notwithstanding
anything to the contrary herein, nothing in this Agreement shall prevent disclosure of
Confidential Information by the Trustee if such disclosure is required by an
administrative, regulatory or judicial order (subject to the notice and protective order
provisions of this Agreement)

If information subject to a claim of attorney-client privilege, protection under the
attorney work product doctrine, or any other privilege or immunity ("Privileged
Information") is inadvertently produced to the Trustee, such production shall in no way
prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or
other ground for withholding production to which CGMH would otherwise be entitled   If
the Trustee receives a claim of inadvertent production of Privileged Information, the
Trustee shall promptly return such Privileged Information to CGMH.  In addition, the
Trustee shall destroy all notes or work product reflecting the content of such Privileged
Information, and shall not use such Privileged Information, or the information contained
therein, for any purpose in the SIPA Liquidation or in any other action

The Trustee acknowledges that money damages would be an insufficient
remedy for any breach of this Agreement by the Trustee and that any such breach
would cause CGMH irreparable harm.  Accordingly, the Trustee also agrees that in the
event of any breach or threatened breach of this Agreement by the Trustee, CGMH
shall be entitled to equitable relief, including injunctive relief and specific performance,
without the requirement of posting a bond or other security   CGMH agrees that if
Confidential Information is disclosed in violation of this Agreement, CGMH may not
seek monetary damages and may only seek equitable relief in the bankruptcy court.

This Agreement may be modified or waived only by a separate writing signed by
the Trustee and CGMH expressly so modifying or waiving the Agreement.

Carmine D  Boccuzzi, Jr , Esq
September 11, 2009
Page 4


Please  countersign  to  indicate  your  agreement  and  return  at  your  earliest
convenience

Dated: September 11, 2009

_____
Carmine D. Boccuzzi, Jr
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006-1470
Telephone   (212) 225-2000
Facsimile   (212) 225-3999
E-mail:  cboccuzzi@cgsh.com

*Attorneys for Citigroup Global markets Holdings, LLC*

_____
Thomas L  Long
Baker & Hostetler LLP
65 East State Street, Suite 2100
Columbus, Ohio  43215
Telephone:  (614) 462-2626
Facsimile.   (614) 462-2616
E-mail.  tlong@bakerlaw com

*Attorneys for Irving H  Picard, Esq.*
*Trustee in the SIPA Liquidation of*
*Bernard L  Madoff Investment Securities LLC*

# EXHIBIT B

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial (212) 225-2868
E-Mail cmoore@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
ALLAN G. SPERLING
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER

DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER

KRISTOFER W. HESS
JUAN G. GIRALDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
RESIDENT PARTNERS

SANDRA M. ROCKS
ELLEN M. CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON JR
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
RESIDENT COUNSEL

October 13, 2010

VIA E-MAIL

Frederick W. Chockley III, Esq.
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

Re:  Securities Investor Protection Corp. v. Bernard L. Madoff Investment
Securities LLC, Adv. Pro. No. 08-01789 (BRL)

Dear Fritz:

I write in response to your letter of October 12, 2010, and further to our telephone conversation of this morning.

As discussed, Citi Hedge Fund Services, Ltd. ("Citi Hedge") is willing to provide the Trustee certain categories of information, as agreed from time to time between Citi Hedge and the Trustee, pursuant to the terms of the Proposed Amendments By The Trustee, dated September 17, 2010, which incorporate by reference the terms of the Protective Order entered by Judge Lifland on February 16, 2010, and which provide, among other things, that such agreement shall not constitute a waiver by Citi Hedge of any of its positions with respect to jurisdiction or any other rights or defenses it may have with respect to the Subpoena delivered to Citi Hedge on or about March 29, 2010 (the "Understanding"). A copy of the Understanding is attached hereto as Exhibit A.

Furthermore, the Trustee agrees that in the event the Liquidator objects to the production of any information sought by the Trustee from Citi Hedge, the Trustee will attempt in good faith to have any such dispute resolved in a proceeding to which both the Liquidator and the Trustee are parties.

Frederick W. Chockley III, Esq.                    Page 2                              October 13, 2010

        If the Trustee agrees to proceed on this basis, please counter-sign this letter and return it to me.  Upon receipt of your acknowledgment and agreement, Citi Hedge will, within two business days, provide the Trustee with the information identified in items 1-6 of my letter dated May 21, 2010.  In turn, the Trustee agrees that it is unnecessary at this time to serve a parallel subpoena on Citigroup, Inc.

Very truly yours,

Christopher P. Moore

ACKNOWLEDGED AND AGREED:

IRVING H. PICARD, ESQ.,
TRUSTEE FOR THE SIPA LIQUIDATION OF
BERNARD L. MADOFF INVESTMENT SECURITIES, LLC

By:  _____
Frederick W. Chockley III, Esq.

Enclosures

cc:  Arabella di Iorio, Esq.
     Ben Mays, Esq.
     Carmine D. Boccuzzi, Esq.
     David Y. Livshiz, Esq.
     John J. Burke, Esq.
     Trevor M. Stanley, Esq.

**PROPOSED AMENDMENTS BY THE TRUSTEE**

**SEPTEMBER 1, 2010**

   This firm represents Citi Hedge Fund Services, Ltd. ("Citi Hedge"). I write concerning the subpoena dated March 29, 2010 (the "Subpoena") delivered by Irving H. Picard, Esq., Trustee for the SIPA liquidation of Bernard L. Madoff Investment Securities, LLC ("Trustee") to Citi Hedge's office in Bermuda in connection with the above-referenced matter.

   As you know, Citi Hedge has objected to the Subpoena on several grounds, including, but not limited to, the Trustee's failure to serve the Subpoena properly and the Subpoena's lack of extraterritorial effect. See, e.g., Ltr. to Mr. Chockley from Mr. Moore, dated Apr. 22, 2010. Nevertheless, in an effort to avoid protracted litigation, if the Trustee will agree to the terms of this letter agreement (the "Agreement"), Citi Hedge would be willing to provide to the Trustee certain categories of information responsive to the Subpoena, as agreed from time to time between Citi Hedge and the Trustee (the "Responsive Information").

   Specifically, the Trustee and Citi Hedge hereby agree to the following:

   a)  The Trustee agrees that Citi Hedge has reserved any and all rights and objections it may have in respect of the Subpoena, including any and all objections based on the purported service, effectiveness and/or scope of the Subpoena, the lack of personal jurisdiction over Citi Hedge, as well as any and all specific objections to any particular document request contained in the Subpoena. The Trustee further agrees that Citi Hedge reserves all rights, objections and/or defenses to the Subpoena in any litigation, wherever brought, including, without limitation, in defending against any motion by the Trustee or any other party to compel the production of any information sought pursuant to the Subpoena or otherwise. For the avoidance of doubt, the parties agree that nothing in this Agreement shall operate or be construed as a waiver of any right, objection or defense of Citi Hedge, including, without limitation, as to the lack of effective service of the Subpoena or the lack of personal jurisdiction over Citi Hedge. The Trustee cannot and shall not argue that the production of any Responsive Information by Citi Hedge pursuant to this Agreement, including, without limitation, as described in my May 21, 2010 letter to you (the "May 21 Letter"), in any way operates or can be construed as a waiver of any right, objection or defense of Citi Hedge, including, without limitation, as to the lack of effective service of the Subpoena or the lack of personal jurisdiction over Citi Hedge.

   b)  Citi Hedge acknowledges that the Trustee reserves any right he may have to seek the production of all documents responsive to the Subpoena, and may assert any such rights in any litigation, wherever brought, concerning the Subpoena. For the avoidance of doubt, the parties agree that nothing in this Agreement shall operate or be construed as a waiver of any right the Trustee may have to seek the production of documents in addition to any Responsive Information provided by Citi Hedge, including, without limitation, pursuant to this Agreement and/or the May 21 Letter.

   c)  Citi Hedge is a party to administration agreements with Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (together with Kingate Global Fund, Ltd., the "Kingate Funds"), which provide that information relating to any party signatory to the agreement cannot be disclosed without the prior written consent of that party. In an abundance of caution, and to avoid

any potential dispute with the liquidator of the Kingate Funds (the "Liquidator"), Citi Hedge has requested that the Trustee, and the Trustee has agreed to, seek the Liquidator's consent for Citi Hedge to produce information sought by the Trustee under the Subpoena, except for information that will be provided by Citi Hedge pursuant to paragraphs 1 through 6 of the May 21 Letter.

d)      The Trustee and Citi Hedge agree that, for purposes of safeguarding confidential information that may be provided to the Trustee as a result of this Agreement, this Agreement incorporates the terms of the Protective Order issued by Judge Lifland on February 16, 2010.  A copy of the order hereby is made a part of this agreement and is attached hereto as if fully incorporated herein.

e)      The Trustee and Citi Hedge agree that this Agreement may be modified or waived only by a separate writing signed by the Trustee and Citi Hedge.

If the terms of this Agreement are acceptable, please countersign and return it to me at your earliest convenience.

# EXHIBIT C

**<u>EXHIBIT A</u>**



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>            Plaintiff, <br><br>       v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>            Defendant. | No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br>            Debtor. | |

## REPORT AND RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL DISCOVERY MASTERS

1.      The undersigned bankruptcy judge makes this Report and Recommendation to the District Court.

### Background

2.      On December 11, 2008, Bernard L. Madoff ("Madoff") was arrested by federal agents for violation of the criminal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court"), commencing the District Court Proceeding against Madoff and Bernard L. Madoff Investment Securities LLC ("BLMIS").  The District Court Proceeding remains pending in the District Court.  The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

3.      On December 12, 2008, the Honorable Louis L. Stanton entered an order appointing Lee S. Richards, Esq., as receiver for the assets of BLMIS (the "Receiver").

4.      On December 15, 2008, pursuant to SIPA section 78eee(a)(4)(A), the SEC consented to combining its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to SIPA section 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

5.      Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

   a.   appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA section 78eee(b)(3);

   b.   appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA section 78eee(b)(3); and

   c.   removed the case to the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") pursuant to SIPA section 78eee(b)(4).

By this Protective Decree, the Receiver was removed as receiver for BLMIS.

6.      By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the BLMIS estate.

7.      As part of his efforts to ascertain information, since late 2008 and pursuant to Bankruptcy Rule 2004, the Trustee has issued subpoenas to hundreds of individuals and entities (the "Subpoenaed Parties"). Many of the Subpoenaed Parties refused to produce requested information unless the Trustee entered into confidentiality agreements (the "Confidentiality

Agreements") that prohibit the Trustee from disclosing to any third party the information produced by the Subpoenaed Parties. Given the enormity of the investigation and time constraints, the Trustee entered into approximately seventy (70) Confidentiality Agreements. The Trustee has been successful in obtaining over five (5) million documents from approximately 441 parties.

8.     As a result of the investigation, the Trustee has filed over 900 lawsuits to date. The Trustee anticipates that the number of productions associated with those lawsuits will be enormous and that the volume of data at issue will grow exponentially.

9.     On January 14, 2011, defendants in Picard v. Merkin, Case No. 09-1182 ("Merkin Defendants"), sent to Trustee's counsel requests for the production of documents (the "Merkin Requests"). The Merkin Requests seek from the Trustee, among other things, turnover of the information the Trustee obtained, and is pursuing, from any third parties. The Bankruptcy Court recognizes that additional defendants may serve similar requests as other additional adversary proceedings commence document discovery.

10.     The Bankruptcy Court respectfully recommends the District Court appoint two Special Discovery Masters: a Special Discovery Master to resolve any discovery disputes in actions seeking solely fictitious profits in which a Notice of Applicability was filed ("Avoidance Actions") and a second Special Discovery Master to resolve any discovery disputes arising from all other actions, with the entry of the proposed Order Appointing Special Discovery Masters

(attached hereto as Exhibit 1), including all issues with respect to electronic discovery and the electronic data rooms.[1]

11.    The Bankruptcy Court also respectfully requests that the District Court confirm that there are no conflicts of interest between the Special Discovery Masters appointed and the cases and parties or their counsel in these adversary proceedings.  The Bankruptcy Court respectfully recommends that prior to appointment, the candidates for Special Discovery Master must make full public disclosure of all relations and contacts with parties or counsel in these cases and shall disclose his or her fees to be considered for appointment.

12.    Because of the thousands of parties and non-parties involved, and the sheer volume of discovery produced and to be produced, these adversary proceedings are far more complex than the typical liquidation and their related cases.  More than 16,000 SIPA customer claims have been submitted to the Trustee, seeking to recoup some portion of their lost investment.  The Trustee initiated more than 900 adversary proceedings, seeking to recover customer property.  Given the magnitude and complexity of discovery in these proceedings, the appointment of two Special Discovery Masters would aid the parties and this Court in resolving discovery disputes in an efficient, timely, and cost-effective manner.

**District Court's Authority to Appoint Special Discovery Masters**

13.    The District Court has the authority to appoint special masters.

Courts have . . . inherent power to provide themselves with appropriate instruments required for the performance of their duties.  This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties.

---

[1]  Given the size and scope of discovery in this case, the Bankruptcy Court permitted the Trustee to establish "electronic data rooms" to facilitate the production of documents which involve numerous parties and various discovery-related issues.

*In re Peterson*, 253 U.S. 300, 312-13 (1920) (citations omitted).

14.    District Courts may appoint special masters to assist in Bankruptcy Court proceedings.  See, e.g., In re Joint E. and S. Dist. Asbestos Litig.; In re Johns-Manville Corp., 120 B.R. 648 (E.D.N.Y. & Bankr. S.D.N.Y. 1990) (utilizing a Special Master in a joint proceeding with the District Court to evaluate the financial health of a trust and utilizing a "Special Advisor" in the bankruptcy proceeding to assist in organizing the restructuring of the trust); Anderson v. Lifeline Healthcare Group, Ltd., 986 F.2d 1426 (9th Cir. 1993) (special master from prior district court proceeding continued to serve as special master in subsequent bankruptcy proceeding to establish a plan of reorganization for debtor); Rudnick v. Allustiarte, 1992 WL 209552, at *1 (9th Cir. Aug. 31, 1992) ("Following the recommendation of the bankruptcy court, the district court appointed a Special Master [for the bankruptcy proceeding] . . . to conduct hearings and prepare an accounting of the [parties'] interests in Muzzy ranch."); In re Int'l Admin. Services, Inc., 408 F.3d 689, 696 (11th Cir. 2005).

15.    District Courts and Bankruptcy Courts have generally recognized the need for special masters in bankruptcy proceedings.  See, e.g., In re Int'l Admin. Serv., Inc., 408 F.3d 689, 696 (11th Cir. 2005) ("[B]ankruptcy court appointed a Special Master to oversee and administer discovery compliance"); Nellis v. Shugrue, 165 B.R. 115, 126 (S.D.N.Y. 1994) (District Court affirming this Bankruptcy Court "did not abuse its discretion in approving the settlement agreement, recommended by the Union after negotiation at arms-length and supervised by . . . the Special Advisor to the court").  In addition, the District Court Judges of the Western District of Pennsylvania found "the need for the expertise of Special Masters" in bankruptcy proceedings so compelling that they entered a standing order authorizing the bankruptcy courts of the district to freely designate and use special masters to assist the

bankruptcy court in resolving electronic discovery issues.  <u>In re Use of Special Masters for Electronic Discovery By U.S. Bankruptcy Judges</u>, No. 2:11-mc-94 (W.D. Pa. March 30, 2011), http://www.pawd.uscourts.gov/Documents/Forms/UseOfSpecialMastersForElectronicDiscovery.pdf.  The standing order implements this general policy in an effort to "enhance the efficient and cost effective administration of justice."  <u>Id</u>.

16.     The Bankruptcy Court respectfully recommends that the District Court appoint Special Discovery Masters.  Given the size and scope of discovery and the myriad of technical issues and discovery disputes that will inevitably arise, the Bankruptcy Court believes all parties and the Courts will benefit from the services of the Special Discovery Masters.

Dated:   New York, New York
          October __, 2011

_____
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

## ORDER APPOINTING SPECIAL DISCOVERY MASTERS

Before the Court is the Report and Recommendation of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which recommends that this Court appoint Special Discovery Masters for the above captioned SIPA Liquidation Proceeding and related proceedings thereto. After due deliberation, it is hereby

**ORDERED,** that the Bankruptcy Court's Report and Recommendation should be adopted in its entirety; and it is further

**ORDERED,** that in an effort to establish a uniform, efficient and fair framework for dealing with discovery in this vast and complex proceeding, I am appointing, after giving the parties notice and an opportunity to be heard (including the opportunity to recommend candidates), and after confirming that there is no basis for disqualification pursuant to Federal Rule of Civil Procedure 53(a)(2), _____ to serve as Special Master of the discovery activities in connection with avoidance actions where a Notice of Applicability is filed

("Avoidance Actions") and _____ to serve as Special Master of the

discovery activities in connection with all other actions.  The appointment of the Special

Discovery Masters is effective immediately.

**ORDERED THAT:**

1.      The Special Discovery Masters are directed to proceed with all reasonable

diligence in the performance of their duties.  The Special Discovery Masters are appointed to

resolve such discovery disputes that may arise, and which have been specifically referred to them

by the Bankruptcy Court, including electronic data rooms and discovery disputes related to

electronically stored information, questions of privilege, confidentiality, work product,

relevancy, scope and burden.

2.      The Special Discovery Masters may not communicate *ex parte* with the parties,

third parties or the Bankruptcy Court without the consent of all parties, except to arrange

scheduling matters.

3.      Each Special Discovery Master shall preserve, as a record of his/her activities, all

written submissions received from the parties, all written submissions sent to the parties and any

transcripts of hearings before the Special Discovery Master.  Each Special Discovery Master

shall file with the Clerk of the Bankruptcy Court such records upon the request of any party or

the Bankruptcy Court.  The Special Discovery Masters shall also file any order, report or

recommendation to the Bankruptcy Court.

4.      The Trustee shall pay for the reasonable costs of the Special Discovery Masters in

connection with the review of relevant background materials concerning these matters and for

good faith discovery disputes arising in the Avoidance Actions.  The costs of the Special

Discovery Master of all other actions shall be paid equally by the relevant party(ies) involved in the discovery issue or dispute pending before the Special Discovery Masters.

5.        Each Special Discovery Master shall be compensated at a rate of $_____ per hour. If a Special Discovery Master finds that he/she needs the assistance of a support staff employee or lawyer in his/her office, that expense shall be billed by the Special Discovery Master at the ordinary rates for those people, which shall not exceed the rate paid to the Special Discovery Master.

6.        After notice and a hearing, the Special Discovery Masters may, by order, impose upon a party or third party any non-contempt sanctions that the Special Discovery Masters deem appropriate, including those provided by Federal Rule of Civil Procedure 37 (made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7037) or Federal Rule of Civil Procedure 45 (made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9016), and may recommend a contempt sanction against a party or third party to the District Court.

7.        Any party may refer a discovery dispute to the appropriate Special Discovery Master by emailing a letter summarizing the discovery dispute to the Special Discovery Master at the email address [_____] or [_____], with notice to any other relevant party(ies) via email.

8.        Within five (5) business days of receiving a party's letter to the Special Discovery Master noticing the discovery dispute, the other party(ies) to the discovery dispute shall submit to the Special Discovery Master via email a letter response to the initiating party's letter to the Special Discovery Master (the "Response"), with notice to the other party(ies) via email.

9.      Within two (2) business days of the Responses, the Special Discovery Master shall schedule a telephone conference with the parties to mediate the discovery dispute.  The telephone conference shall be scheduled for a date no later than within five (5) business days from the date when the Special Discovery Master received the Responses.

10.      Within ten (10) business days after the telephone conference, the parties shall mediate the discovery dispute in good faith and work towards a resolution with the Special Discovery Master.  The Special Discovery Master shall not mediate discovery disputes until all relevant parties have been given an opportunity to submit Responses pursuant to Paragraph 9 above.

11.      If, after attempting to mediate the discovery dispute, the parties cannot reach agreement as to a resolution of the discovery dispute, the parties shall immediately request that the Special Discovery Master issue a ruling on the discovery dispute.  If such a request is made, the parties may request to brief the issue to the Special Discovery Master.  The parties shall have ten (10) business days to brief the issue, unless otherwise agreed or ordered by the Special Discovery Master, as follows:  (1) the opening brief shall be filed five (5) business days from the date the parties request a ruling; and (2) the response brief shall be filed five (5) business days after the opening brief is filed.  The Special Discovery Master shall issue its ruling within ten (10) business days from the date that the parties complete their briefing on the dispute.

12.      In accordance with Paragraph 15 of the Litigation Protective Order entered on June 6, 2011 [Dkt. 4137] in Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC, et al., Adv. Pro. No. 08-01789 (BRL), the Special Discovery Master may file under seal with the Clerk of the Bankruptcy Court any documents claimed by any party

4

to be **CONFIDENTIAL MATERIAL**, as defined in Paragraph 2 of the Litigation Protective Order.

13.    Any party may appeal any ruling of the Special Discovery Masters to the Bankruptcy Court by filing a motion within ten (10) business days from the date such ruling is issued.

14.    This Order may be amended at any time upon notice to the parties, and after such parties have an opportunity to be heard.

**ORDERED**, that this Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:   New York, New York
        October __, 2011

_____
HONORABLE _____
UNITED STATES DISTRICT COURT JUDGE

**EXHIBIT B**



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

## ORDER ESTABLISHING PROCEDURES FOR ELECTRONIC DATA ROOMS

Upon the motion (the "Motion")[1] of Irving H. Picard (the "Trustee"), as trustee for the

liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under

the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[2] and the

substantively consolidated estate of Bernard L. Madoff ("Madoff"), seeking entry of an order,

pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code"), and Rules 7016, 7026 and 9006 of the Federal Rules of Bankruptcy

---

[1]  All references to the "Motion" are references to the motion filed on August 5, 2011, requesting entry of:  (I) a report and recommendation to the District Court for the appointment of Special Discovery Masters; (II) an Order expanding the Case Management Procedures approved by the Court on November 10, 2010, granting access to the Trustee's existing electronic data room to additional defendants and establishing procedures for the creation of a separate electronic data room for documents produced to the Trustee; and (III) an Order modifying, in limited fashion, the Litigation Protective Order, dated June 6, 2011 [Dkt. 4137], including superseding all individual confidentiality agreements between the Trustee and any parties.  All terms not defined herein shall have such meanings as subscribed to them in the Motion.

[2]  For convenience, future reference to SIPA will not include "15 U.S.C."

Procedure (the "Bankruptcy Rules"), establishing Procedures for Electronic Data Rooms; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with section 78eee(b)(4) of SIPA, the Protective Decree, entered on December 15, 2008 by the

United States District Court for the Southern District of New York in Case No. 08 CV 10791,

and 28 U.S.C. §§ 157 and 1334; and it appearing that the relief requested in the Motion is in the

best interests of the estate and its customers; and due notice of the Motion having been given,

and it appearing that no other or further notice need be given; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and upon the proceedings before the Court and after due deliberation, it is hereby

ORDERED, that the relief requested in the Motion is granted; and it is further

ORDERED, that all Outside Litigation Counsel (as defined below) for defendants in this

and related adversary proceedings may be granted access to two electronic data rooms created by

the Trustee (collectively, the "Electronic Data Rooms"), solely on the bases described in this

Order.  The first data room ("E-Data Room 1") shall include documents relating to:  (1)

BLMIS's insolvency; and (2) BLMIS's fraud.  The second electronic data room ("E-Data Room

2") shall include:  (1) documents produced by, and deposition transcripts (including exhibits) of,

parties subpoenaed by the Trustee pursuant to Bankruptcy Rule 2004; and (2) documents

produced by, and deposition transcripts (including exhibits) of, defendants and third parties in

the adversary proceedings.  E-Data Room 2 shall not include those documents that, due to

contractual obligations, are no longer in the care, custody or control of the Trustee.  In addition,

E-Data Room 2 shall not include those documents that were provided to the Trustee for

settlement and/or mediation purposes only; and it is further

ORDERED, that notwithstanding the Litigation Protective Order, and any subsequent

2

amendments or modifications thereto, documents in E-Data Room 2 shall be designated by the

Trustee as "OLC Eyes Only" (as defined below).  The Trustee will provide access to documents

in E-Data Room 2 only to a party's outside litigation counsel ("Outside Litigation Counsel")

acting for that party in Adversary Proceeding No. 08-1789 and/or any related adversary

proceeding commenced by the Trustee against that party in this Court ("OLC Eyes Only").  The

Trustee shall provide access to E-Data Room 2 only to Outside Litigation Counsel of record in

one or more adversary proceedings provided that the Outside Litigation Counsel executes a Non-

Disclosure Agreement ("NDA") in substantially the form attached hereto as Exhibit 1.  Copies of

the Litigation Protective Order and NDA are available on the Trustee's website:

(http://www.madofftrustee.com/CourtFilings.aspx).  Executed copies of all NDAs shall be made

available on the Trustee's website.  While reviewing documents in E-Data Room 2, Outside

Litigation Counsel shall not print, download, duplicate or otherwise save or retain any

information from E-Data Room 2.  For the avoidance of doubt, third parties who are not

currently defendants to Adversary Proceeding No. 08-7189 and/or any related adversary

proceeding shall not be granted access to E-Data Room 2 under any circumstances; and it is

further

        **ORDERED**, that the documents produced by, and deposition transcripts (including

exhibits) of, parties subpoenaed by the Trustee pursuant to Bankruptcy Rule 2004 shall be placed

in E-Data Room 2, unless excluded from E-Data Room 2 as set forth below.  Any confidentiality

agreements that the Trustee entered into with any individual or entity producing documents or

information to the Trustee shall be superseded by the Litigation Protective Order dated June 6,

2011 (Docket No. 4137) (the "Litigation Protective Order"), and any subsequent amendments or

modifications thereto, with the exception of settlement agreements and agreements that protect

3

documents provided for settlement and/or mediation purposes only. Documents produced by

and deposition transcripts (including exhibits) of defendants and third parties ("Producing

Parties") in the adversary proceedings shall also be placed in E-Data Room 2, unless excluded

from E-Data Room 2 as set forth below. Documents provided to the Trustee in connection with

hardship applications, for settlement and/or mediation purposes only, or subject to or controlled

by a domestic or foreign court order will not be included in E-Data Room 2; and it is further

**ORDERED**, that Producing Parties may object to the inclusion in E-Data Room 2 of

those documents that contain highly sensitive commercial information, including, but not limited

to, trade secrets, the inclusion of which would create a substantial risk of serious commercial

harm to the Producing Party or its customers ("Excludable Material"). Subject to the procedures

below, Excludable Material will not be included in E-Data Room 2.

a) With respect to documents produced to the Trustee prior to the date of entry of

this Order, any Producing Party objecting to the inclusion of such material in E-

Data Room 2 may submit a letter to Baker & Hostetler LLP, counsel for the

Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane

T.C. Truong, Esq. (struong@bakerlaw.com), within sixty (60) days from the entry

of this Order, identifying, by beginning production Bates number, the documents

and the basis for exclusion. To the extent the Trustee disagrees that such

documents are Excludable Material, the Trustee and Producing Party shall meet

and confer. If the Trustee and the Producing Party do not reach agreement as to

the documents that are Excludable Material and thus shall be excluded from E-

Data Room 2, the Trustee and the Producing Party shall seek resolution from the

Court or from the appropriate Special Discovery Master, if appointed, pursuant to

4

the Order Appointing Special Discovery Masters, as to which documents are
Excludable Material.

b)        With respect to documents produced to the Trustee on or after the date of entry of
this Order, any parties objecting to the inclusion of such material in E-Data Room
2 shall do so upon production, by submitting a letter to Baker & Hostetler LLP,
counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn:
Sarah Jane T.C. Truong, Esq. (struong@bakerlaw.com), identifying, by beginning
production Bates number, the documents and the basis for exclusion.  To the
extent the Trustee disagrees that such documents are Excludable Material, the
Trustee and Producing Party shall meet and confer.  If the Trustee and the
Producing Party do not reach agreement as to the documents that are Excludable
Material and thus shall be excluded from E-Data Room 2, the Trustee and the
Producing Party shall seek resolution from the Court, or from the appropriate
Special Discovery Master, if appointed, pursuant to the Order Appointing Special
Discovery Masters, as to which documents are Excludable Material; and it is
further

ORDERED, that all requests for exclusion of documents from E-Data Room 2, as set
forth in above, shall be made in good faith and not for the purpose of delaying or obstructing the
ability of any other party to prepare for litigation in the adversary proceedings.  The Producing
Party shall be responsible for all costs and fees the Trustee incurs as a result of excessive, overly
broad and unreasonable requests, including attorneys' fees and Special Discovery Masters' fees.
Such requests shall also be subject to sanctions as the Court, or the Special Discovery Masters, if
appointed, shall determine; and it is further

5

**ORDERED**, that documents produced out of E-Data Room 2 shall only be used for purposes of this and related adversary proceedings; and it is further

**ORDERED**, that no party shall be deemed to have possession, custody, or control over documents merely by virtue of having access to E-Data Room 2; and it is further

**ORDERED**, that Outside Litigation Counsel may obtain access to E-Data Room 2 only after serving the Trustee with document requests to which documents contained in E-Data Room 2 may potentially be responsive.  The Trustee reserves the right to object to requests from outside counsel for access to E-Data Room 2, to the extent the request is overbroad, irrelevant, or based on a fishing expedition.  After executing the NDA and the Undertaking To Be Bound attached to the Litigation Protective Order (copies of both shall be sent to Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane T.C. Truong, Esq. (struong@bakerlaw.com)), Outside Litigation Counsel may review the documents contained in E-Data Room 2 and select documents requested for production out of E-Data Room 2; and it is further

**ORDERED**, that the Trustee and the Trustee's counsel will not monitor or track Outside Litigation Counsels' activities within E-Data Room 2; and it is further

**ORDERED**, that the documents selected by the requesting Outside Litigation Counsel (the "Requesting Party") will be reviewed by the Trustee for relevance and to apply redactions to personally identifiable information.  If the Trustee does not object to the production of the documents selected by the Requesting Party, the Trustee shall notify each Producing Party whose documents have been selected for production.  The Producing Party shall have ten (10) business days to object to the production of their documents in a letter addressed to the Trustee and the Requesting Party (the "Objection Letter") and reserves the right to object to such production on

6

any ground.  If the Producing Party does not submit an Objection Letter, the Trustee shall

produce the documents requested from E-Data Room 2.  If the Producing Party does submit an

Objection Letter, the Trustee, the Requesting Party and the Producing Party shall meet and

confer.  If the meet and confer process does not resolve the dispute, the Requesting Party may

file a motion to compel with the Court, or the appropriate Special Discovery Master, if

appointed.  The Requesting Party shall notify Baker & Hostetler LLP, counsel for the Trustee, 45

Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane T.C. Truong, Esq.

(struong@bakerlaw.com), and any Producing Party whose documents have been requested for

production out of E-Data Room 2, of the relief sought.  The Trustee and each relevant Producing

Party shall be given an opportunity to be heard as to the relief sought.  Upon resolution by the

Court or Special Discovery Master, the Trustee shall produce the documents approved for

production by the Court or the Special Discovery Master; and it is further

     **ORDERED**, that if the Trustee objects to the production of any documents selected by

the Requesting Party, the Trustee and the Requesting Party shall meet and confer.  If the Trustee

and the Requesting Party come to an agreement to produce the requested documents, the Trustee

shall notify each Producing Party whose documents the Trustee and the Requesting Party agree

should be produced from E-Data Room 2.  The Producing Party shall have ten (10) business days

to submit an Objection Letter addressed to the Trustee and the Requesting Party and reserves the

right to object to such production on any ground.  If the Producing Party does not submit an

Objection Letter, the Trustee shall produce the documents requested from E-Data Room 2.  If the

Producing does submit an Objection Letter, the Trustee, the Requesting Party and the Producing

Party shall meet and confer.  If the meet and confer process does not resolve the dispute, the

Requesting Party may file a motion to compel with the Court, or the appropriate Special

Discovery Master, if appointed.  The Requesting Party shall notify Baker & Hostetler LLP,

counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane

T.C. Truong, Esq. (struong@bakerlaw.com), and any Producing Party whose documents have

been requested for production out of E-Data Room 2, of the relief sought.  The Trustee and each

relevant Producing Party shall be given an opportunity to be heard as to the relief sought.  Upon

resolution by the Court or Special Discovery Master, the Trustee shall produce the documents

approved for production by the Court or the Special Discovery Master; and it is further

  **ORDERED** that documents designated as **CONFIDENTIAL** as of the date of the entry

of the Order Establishing Procedures for Electronic Data Rooms shall remain

**CONFIDENTIAL**, unless documents are de-designated pursuant to a court order or an

agreement between the Producing Party and the Trustee.  A resolution from the Court, or the

Special Discovery Masters, if appointed, that the Trustee shall produce material designated as

**CONFIDENTIAL MATERIAL** from E-Data Room 2 does not disturb the **CONFIDENTIAL**

designation of the materials, unless the Trustee or a Requesting Party has specifically requested

such relief; and it is further

  **ORDERED**, that any work product protection is not waived as to any work product

inadvertently placed in the data rooms, subject to the provisions of paragraph 14 of the Litigation

Protective Order, and any subsequent amendments or modifications thereto; and it is further

  **ORDERED,** that a violation of a party's obligations under the NDA shall be treated as a

violation of this Order and shall subject such party to such sanctions as the Court, or the Special

Discovery Masters, if appointed, shall determine after notice and a hearing; and it is further

  **ORDERED,** that the parties will need to agree to a fair allocation of costs associated

with production from the Electronic Data Rooms, or will seek relief from this Court, or from the

appropriate Special Discovery Master, if the Special Discovery Masters are appointed; and it is

further

   **ORDERED**, that compliance with these procedures shall not constitute, nor be construed

as, a waiver of a party's right to seek a protective order, confidentiality agreement, or other

similar relief with respect to the production of documents in any action not pending before the

Bankruptcy Court; and it is further

   **ORDERED,** that this Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.

Dated: New York, New York
    October \_\_, 2011

           _____
           HONORABLE BURTON R. LIFLAND
           UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT 1</u>**



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-_____ (BRL) |
| Plaintiff, | |
| v. | |
| _____, | |
| Defendant(s). | |

## NON-DISCLOSURE AGREEMENT FOR E-DATA ROOM 2

WHEREAS this non-disclosure agreement (the "Agreement") supplements the Litigation Protective Order entered on June 6, 2011 [Docket No. 4137] (the "Litigation Protective Order") entered in *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC, et al.,* Adv. Pro. No. 08-01789 (BRL), and any subsequent amendments or modifications thereto; and

WHEREAS, on October __, 2011, the Bankruptcy Court entered an Order Establishing Procedures for Electronic Data Rooms [Docket No. _____] (the "Data Room Order").  All capitalized terms not otherwise defined herein shall have the meanings given such terms in the

Litigation Protective Order; and

WHEREAS, in addition to the requirements set forth in the Litigation Protective Order, and any subsequent amendments or modifications thereto, this Agreement shall govern all materials provided in E-Data Room 2 (as defined in the Order Establishing Procedures for Electronic Data Rooms, entered on October __, 2011 [Dkt. ____]) and produced in connection with the above-captioned Adversary Proceeding (the "Adversary Proceeding"); and

WHEREAS, E-Data Room 2 has been designated "OUTSIDE LITIGATION COUNSELS' EYES ONLY."

_____ (the "Recipient") hereby represents to each of the following:

A.  My firm has been retained by the following defendant(s) in the Adversary Proceeding:

_____

B.  I have received a copy of the Litigation Protective Order and executed the attached

Undertaking and Consent To Be Bound (a copy of which has been or will be, concurrent with a

copy of this executed NDA, sent to Baker & Hostetler LLP, counsel for the Trustee, 45

Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane T.C. Truong, Esq.

(struong@bakerlaw.com)).

C.  I have carefully read and understand the provisions of the Litigation Protective Order.

Based on the foregoing representations, Recipient hereby agrees to each of the following:

1.      Recipient will abide by the terms of the Litigation Protective Order and any

subsequent amendments or modifications thereto as well as the additional requirements set forth

herein.  Any such agreement to abide by the terms of the Litigation Protective Order and any

subsequent amendments or modifications, however, does not prejudice defendants' ability to

object to any proposed amendment to the Litigation Protective Order.

2.      Recipient will not and shall ensure that its employees, agents, or staff will not

disclose any material placed in the data rooms nor the information contained therein to any

person, including, without limitation, its clients, other than (a) Recipient's employees, agents and

staff who need to know such information in connection with its representation of defendant in the Adversary Proceeding, provided that such individuals have executed this NDA.  All original executed NDAs shall be retained by Recipient, with a copy sent to Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane T.C. Truong, Esq. (struong@bakerlaw.com), which shall be made available on the Trustee's website.

3.      Recipient will not use any material placed in the data rooms, directly or indirectly, for any purpose whatsoever other than in connection with the Adversary Proceeding.  Violations of this provision may result in Recipient, its employees, agents or staff being held in contempt of the Court.

4.      Recipient understands that while reviewing documents in E-Data Room 2, Recipient shall not print, download, duplicate or otherwise save or retain any information from E-Data Room 2.

5.      Recipient understands that this agreement does not preclude Recipient from using documents obtained from sources other than E-Data Room 2 or limit the manner in which such documents may be used, irrespective of whether those documents are also in E-Data Room 2.

6.      If Recipient seeks to file any pleading or other document with the Bankruptcy Court that contains **CONFIDENTIAL MATERIAL**, as defined in the Litigation Protective Order and accordingly designated by the Producing Party, it will file such pleading or other document under seal.

7.      Recipient will take all appropriate measures to ensure that any **CONFIDENTIAL MATERIAL** that it may obtain is safeguarded consistent with the confidentiality protections set

3

forth herein including, without limitation, that its employees, agents and staff will keep all such material and any copies thereof in a locked container, cabinet, drawer, room or other safe place.

8.      Recipient understands that Paragraph 12 of the Litigation Protective Order, and any subsequent amendments or modifications thereto, requires that notice be given to the Producing Party whose material has been requested before any material produced to the Trustee is produced physically to a third party.

9.      Recipient understands that the Trustee or the Producing Party may designate materials produced out of E-Data Room 2 as **CONFIDENTIAL** in accordance with the Litigation Protective Order.  A resolution from the Court or the Special Discovery Masters, if appointed, that the Trustee shall produce **CONFIDENTIAL MATERIAL** from E-Data Room 2 does not disturb the **CONFIDENTIAL** designation of the materials, unless the Recipient has specifically requested such relief.

10.     Recipient understands that any work product protection is not waived as to any work product inadvertently placed in the data rooms, subject to the provisions of paragraph 14 of the Litigation Protective Order, and any subsequent amendments or modifications thereto.

11.     Recipient understands and agrees that violation of this Agreement is the equivalent of violation of a Bankruptcy Court order.

12.     Recipient consents to the exercise of personal jurisdiction by the Bankruptcy Court in connection with this Agreement and its obligations hereunder and the Litigation Protective Order and any subsequent amendments or modifications thereto.

4

13.    Recipient declares under penalty of perjury under the laws of the State of New

York that the foregoing is true and correct.

[Name of Recipient]

_____
By:  Name
Address:

_____
Date

**EXHIBIT C**



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

**ORDER MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER**

Upon the motion (the "Motion")[1] of Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff", and together with BLMIS the "Debtors"), seeking entry of an order pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 7016, 7026 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), modifying the Litigation Protective Order entered into by the Court on June 6, 2011 (the "Litigation Protective Order");

---

[1]  All references to the "Motion" are references to the motion filed on August 5, 2011, requesting entry of:  (I) a report and recommendation to the District Court for the appointment of Special Discovery Masters; (II) an Order expanding the Case Management Procedures approved by the Court on November 10, 2010, granting access to the Trustee's existing electronic data room to additional defendants and establishing procedures for the creation of a separate electronic data room for documents produced to the Trustee; and (III) an Order modifying, in limited fashion, the Litigation Protective Order, dated June 6, 2011 [Dkt. 4137], including superseding all individual confidentiality agreements between the Trustee and any parties.  All terms not defined herein shall have such meanings as subscribed to them in the Motion.

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with section 15 U.S.C. § 79eee(b)(4) of SIPA, the Protective Decree, entered on

December 15, 2008 by the United States District Court for the Southern District of New York

(the "District Court") in Case No. 08 CV 10791, and 28 U.S.C. §§ 157 and 1334; and it

appearing that the relief requested in the Motion is in the best interests of the estate and its

customers; and due notice of the Motion having been given, and it appearing that no other or

further notice need be given; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and upon the proceedings

before the Court and after due deliberation, it is hereby

     **ORDERED**, that the relief requested in the Motion is granted; and it is further

     **ORDERED**, that the Litigation Protective Order is modified as follows:

A.     To the extent that a Producing Party and the Trustee have entered into an agreement regarding the confidentiality or non-disclosure of documents or discovery materials, such agreements shall be superseded by the June 6, 2011 Litigation Protective Order, with the exception of settlement agreements and agreements that protect documents provided for settlement and/or mediation purposes only. All designations of material as **CONFIDENTIAL** shall be controlled by the June 6, 2011 Litigation Protective Order. Documents produced by, and deposition transcripts (including exhibits) of, parties subpoenaed by the Trustee pursuant to Bankruptcy Rule 2004 shall be placed in E-Data Room 2, unless excluded as set forth below. Documents produced by and deposition transcripts (including exhibits) of defendants and third parties ("Producing Parties") in the adversary proceedings shall also be placed in E-Data Room 2, unless excluded as set forth below. Documents provided to the Trustee in connection with hardship applications, for settlement and/or mediation purposes only, or subject to or controlled by a domestic or foreign court order will not be included in E-Data Room 2. Any Producing Parties may object to the inclusion of specified material, as set forth in the Order Establishing Procedures for Electronic Data Rooms, entered on October __, 2011 [Dkt. ____] and the Order Appointing Special Discovery Masters, entered on October __, 2011, in E-Data Room 2 (as defined in the Order Establishing Procedures for Electronic Data Rooms). Producing Parties may object to the inclusion in E-Data Room 2 of those documents that contain highly sensitive commercial information, including, but not limited to, trade secrets, the inclusion of which would create a substantial risk of serious commercial harm to the Producing Party or its customers ("Excludable

Material").  Subject to the procedures below, Excludable Material will not be included in E-Data Room 2.

1.     With respect to documents produced to the Trustee prior to entry of the Order Establishing Procedures for Electronic Data Rooms, any Producing Party may object to the inclusion of such material in E-Data Room 2 by submitting a letter to Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane T.C. Truong, Esq. (struong@bakerlaw.com), within sixty (60) days of the entry of the Order Establishing Procedures for Electronic Data Rooms, identifying, by beginning production Bates number, the documents and the basis for exclusion.  To the extent the Trustee disagrees that such documents are Excludable Material, the Trustee and Producing Party shall meet and confer.  If the Trustee and the Producing Party do not reach agreement as to the documents are Excludable Material and thus shall be excluded from E-Data Room 2, the Trustee and the Producing Party shall seek resolution from the Court or the appropriate Special Discovery Master, if appointed, pursuant to the Order Appointing Special Discovery Masters, as to which documents are Excludable Material.

2.     With respect to documents produced to the Trustee on or after the date of entry of the Order Establishing Procedures for Electronic Data Rooms, any Producing Party may object to the inclusion of such material in E-Data Room 2 by submitting a letter to Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane T.C. Truong, Esq. (struong@bakerlaw.com), identifying, by beginning production Bates number, the documents and the basis for exclusion.  To the extent the Trustee disagrees that such documents are Excludable Material, the Trustee and Producing Party shall meet and confer.  If the Trustee and the Producing Party do not reach agreement as to the documents are Excludable Material and thus shall be excluded from E-Data Room 2, the Trustee and the Producing Party shall seek resolution from the Court, or the appropriate Special Discovery Master, if appointed, pursuant to the Order Appointing Special Discovery Masters.

B.     All requests for exclusion of documents from E-Data Room 2, as set forth above, shall be made in good faith and not for the purpose of delaying or obstructing the ability of any other party to prepare for litigation in the adversary proceedings. The Producing Party shall be responsible for all costs and fees the Trustee incurs as a result of excessive, overly broad and unreasonable requests, including attorneys' fees and Special Discovery Masters' fees.  Such requests shall also be subject to sanctions as the Court, or the Special Discovery Masters, if appointed, shall determine.

C.     The Trustee may request upon a Producing Party and/or BLMIS customer that material designated as **CONFIDENTIAL MATERIAL**, as defined and governed by the Litigation Protective Order, be de-designated to allow disclosure of such

material in connection with discovery, including depositions.  Failure by the Producing Party or customer to object to the request within seven (7) business days will be deemed to be acquiescence to the request.  Should a Producing Party and/or BLMIS customer refuse to de-designate any such **CONFIDENTIAL MATERIAL**, the Trustee shall refer the matter to this Court, or to the appropriate Special Discovery Master, if appointed.  The Producing Party shall have the burden of demonstrating that the material designated as **CONFIDENTIAL MATERIAL** is **CONFIDENTIAL** under the terms of the Litigation Protective Order and should continue to be protected as designated.  Pending resolution of a dispute, there shall be no disclosure of the **CONFIDENTIAL MATERIAL** at issue.

D.      If the Trustee does not object to the production of the documents selected by a party's Outside Litigation Counsel (the "Requesting Party"), the Trustee shall notify each Producing Party whose documents have been selected for production. The Producing Party shall have ten (10) business days to object to the production of their documents in a letter addressed to the Trustee and the Requesting Party (the "Objection Letter") and reserves the right to object to such production on any ground.  If the Producing Party does not submit an Objection Letter, the Trustee shall produce the documents requested from E-Data Room 2.  If the Producing Party does submit an Objection Letter, the Trustee, the Requesting Party and the Producing Party shall meet and confer.  If the meet and confer process does not resolve the dispute, the Requesting Party may file a motion to compel with the Court, or the appropriate Special Discovery Master, if appointed.  The Requesting Party shall notify Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane T.C. Truong, Esq. (struong@bakerlaw.com), and any Producing Party whose documents have been requested for production out of E-Data Room 2, of the relief sought.  The Trustee and each relevant Producing Party shall be given an opportunity to be heard as to the relief sought.  Upon resolution by the Court or Special Discovery Master, the Trustee shall produce the documents approved for production by the Court or the Special Discovery Master.  If the Trustee objects to the production of any documents selected by the Requesting Party, the Trustee and the Requesting Party shall meet and confer.  If the Trustee and the Requesting Party come to an agreement to produce the requested documents, the Trustee shall notify each Producing Party whose documents the Trustee and outside counsel agree should be produced from E-Data Room 2.  The Producing Party shall have ten (10) business days submit an Objection Letter.  If the Producing Party does not submit an Objection Letter, the Trustee shall produce the documents requested from E-Data Room 2.  If the Producing does submit an Objection Letter, the Trustee, the Requesting Party and the Producing Party shall meet and confer.  If the meet and confer process does not resolve the dispute, the Requesting Party may file a motion to compel with the Court, or the appropriate Special Discovery Master, if appointed.  The Requesting Party shall notify Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Sarah Jane T.C. Truong, Esq. (struong@bakerlaw.com), and any Producing Party whose documents have been requested for production out of E-Data Room 2, of the relief

4

sought.  The Trustee and relevant Producing Parties shall be given an opportunity to be heard as to the relief sought.  Upon resolution by the Court or Special Discovery Master, the Trustee shall produce the documents approved for production by the Court or the Special Discovery Master.

E.      Documents designated as **CONFIDENTIAL** as of the date of the entry of the Order Establishing Procedures for Electronic Data Rooms shall remain **CONFIDENTIAL**, unless documents are de-designated pursuant to a court order or an agreement between the Producing Party and the Trustee.  A resolution from the Court, or the Special Discovery Masters, if appointed, that the Trustee shall produce material designated as **CONFIDENTIAL MATERIAL** from E-Data Room 2 does not disturb the **CONFIDENTIAL** designation of the materials, unless the Trustee or a Requesting Party has specifically requested such relief.

**ORDERED**, that this Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.

Dated:   New York, New York
          October __, 2011

_____
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

300180763