**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
dsheehan@bakerlaw.com
Regina L. Griffin
rgriffin@bakerlaw.com
Judith A. Selby
jselby@bakerlaw.com
Lourdes M. Slater
lslater@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively*
*Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     BACKGROUND ............................................................................................... 5

        A.    The February 2010 Protective Order ................................................... 5

        B.    The June 2011 Litigation Protective Order.......................................... 5

        C.    The Merkin Defendants' Requests........................................................ 5

        D.    Background of the Motion .................................................................... 7

        E.    The Revised Proposed Orders Clarify Procedures for E-Data Room 2 ................. 7

              1.    Material Included and Excluded ............................................... 7

              2.    Producing Parties May Object to Inclusion of Specified Material ............ 8

              3.    Access Will Be Limited to Outside Litigation Counsel for Non-Avoidance
                    Actions and Access Within E-Data Room 2 Will Be Restricted ............... 9

              4.    Producing Parties May Object to Production of Documents ..................... 9

              5.    The Revised Proposed Orders Prevent Production of Personally
                    Identifiable Information and Protect Confidential Information ............... 10

III.    ARGUMENT AND RESPONSES TO SPECIFIC OBJECTIONS ................................... 10

        A.    The Court Has Inherent Authority to Modify the Litigation Protective Order ..... 10

        B.    The Objecting Parties Cannot Establish Reasonable Reliance and the Trustee
              Has Established Extraordinary Circumstances and Compelling Need ................. 11

              1.    The Objecting Parties Conflate Confidentiality Agreements With  A
                    Protective Order and Cannot Establish Reasonable Reliance.................. 11

              2.    The Relief Sought Is Supported By Extraordinary
                    Circumstances and Compelling Need ....................................... 14

              3.    The Trustee Is Not Seeking To Make
                    the Material At Issue Publicly Available ................................. 15

              4.    The Remaining Cases Cited by Objecting Parties Are Inapposite ........... 17

        C.    Appointment of Special Discovery Masters ....................................... 20

D.    Royal Bank of Canada's Relevance Objection ..................................................... 22

E.    Bank of America's Objections ............................................................................. 23

    1.    Individuals' Sensitive Financial Documents Are Excludable .................. 23

    2.    The Allocation of Special Discovery Masters is Fair .............................. 23

F.    Access & de la Villehuchet Objections ............................................................... 24

IV.   CONCLUSION ................................................................................................................ 26

# TABLE OF AUTHORITIES

<u>CASES</u>

Allen v. City of New York,
420 F. Supp. 2d 295 (S.D.N.Y. 2006) ................................................................. 17

Botha v. King,
No. 97 Civ. 7587, 1998 WL 88745 (S.D.N.Y. Feb. 27, 1998) ..................................... 17, 18

Caxton Int'l, Ltd. v. Reserve Int'l Liquidity Fund, Ltd.,
No. 09 Civ. 782, 2009 WL 2365246 (S.D.N.Y. July 30, 2009) ........................................ 13

CBS Interactive, Inc. v. Etilize, Inc.,
257 F.R.D. 195 (N.D. Cal. 2009) ....................................................................... 13

Davis v. Transamerica Commercial Fin. Corp.,
No. 93 Civ. 5177, 1995 WL 534294 (N.D. Ill. Sept. 5, 1995) ........................................ 17

Dep't of Econ. Dev. v. Arthur Andersen & Co.,
924 F. Supp. 449 (S.D.N.Y. 1996) ..................................................................... 12

GAF Corp. v. Eastman Kodak Co.,
415 F. Supp. 129 (S.D.N.Y. 1976) ..................................................................... 17

Hamilton v. Atlas Turner, Inc.,
197 F. 3d 58 (2d Cir. 1999) .......................................................................... 25

In re Agent Orange Prod. Liab. Litig.,
104 F.R.D. 559 (E.D.N.Y. 1985) ...................................................................... 11

In re Duratech Ind., Inc.,
241 B.R. 283 (E.D.N.Y. 1999) ........................................................................ 11

In re EPDM Antitrust Litig.,
255 F.R.D. 308 (D. Conn. 2009) ...................................................................... 13

In re Interco, Inc.,
139 B.R. 718 (Bankr. E.D. Mo. 1992) ................................................................. 21

In re Interpictures, Inc.,
No. 99-5055, 2000 WL 232149 (2d Cir. Feb. 3, 2000) ................................................ 11

In re Ionosphere Clubs, Inc.,
156 B.R. 414 (S.D.N.Y. 1993) ........................................................................ 16

In re Joint E. and S. Dist. Asbestos Litig.,
120 B.R. 648 (E.D.N.Y. 1990) ...................................................................... 20, 21

In re Orion Pictures Corp.,
21 F.3d 24 (2d Cir. 1994) ............................................................................ 15

In re Rocco Dante Dinuilo,
177 B.R. 932 (E.D. Cal. 1993) ........................................................................ 22

In re Romeo J. Roy, Inc.,
32 B.R. 240 (Bankr. D. Me. 1983) ..................................................................... 20

In re Romeo J. Roy, Inc.,
740 F.2d 111 (1st Cir. 1984) ......................................................................... 20

In re San Juan Dupont Plaza Hotel Fire Litig.,
    121 F.R.D. 147 (D.P.R. 1988) ........................................................................... 15

In re Sept. 11 Litig.,
    262 F.R.D. 274 (S.D.N.Y. 2009) ...................................................................... 16

In re Symington,
    209 B.R. 678 (Bankr. D. Md. 1997) ................................................................. 22

Jochims v. Isuzu Motors, Ltd.,
    145 F.R.D. 499 (S.D. Iowa, 1992) .................................................................... 19

Maryland Cas. Co. v. W.R. Grace & Co.,
    No. 83 Civ. 7451, 1994 WL 419787 (S.D.N.Y. Aug. 10, 1994) ...................... 19

Martindell v. Int'l Telephone and Telegraph Co.,
    594 F.2d 291 (2d Cir. Mar. 12, 1979) ......................................................... 12, 19

Med. Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC,
    No. 06 Civ. 7764, 2009 WL 2135294 (S.D.N.Y. July 16, 2009) ................. 15, 18

Nellis v. Shugrue,
    165 B.R. 115 (S.D.N.Y. 1994)........................................................................... 21

Nixon v. Warner Communications,Inc.,
    435 U.S. 589 (1978)........................................................................................... 11

Omega Homes, Inc. v. Citicorp Acceptance Co.,
    656 F. Supp. 393 (W.D. Va. 1987) .............................................................. 11, 19

SEC v. Galleon Management, LP,
    274 F.R.D. 120 (S.D.N.Y. 2011) ...................................................................... 23

SEC v. Merrill Scott & Assocs., Ltd.,
    600 F.3d 1262 (10th Cir. 2010) ........................................................................ 17

SEC v. TheStreet.com,
    273 F.3d 222 (2d Cir. 2001)............................................................................... 16

U.S. v. Olano,
    507 U.S. 725 (1993)........................................................................................... 25

U.S. v. Oshatz,
    700 F. Supp. 696 (S.D.N.Y. 1988) ................................................................... 17

Washington v. William Morris Endeavor Entm't, LLC,
    No. 10 Civ. 9647, 2011 WL 3251504 (S.D.N.Y. July 20, 2011) ..................... 26

STATUTES AND RULES

11 U.S.C. §§ 101................................................................................................... 1

11 U.S.C. §105(a) ..................................................................................... 1, 10, 11

Fed. R. Bankr. P. 7026..................................................................... 1, 4, 9, 10

Fed. R. Bankr. P. 7037 ...................................................................... 23, 24

Fed. R. Civ. P. 26................................................................................... 11, 16

Fed. R. Civ. P. 37 .................................................................................................................. 23

Fed. R. Civ. P. 45 .............................................................................................................. 23, 24

OTHER AUTHORITIES

22A Laura Hunter Dietz et al., N.Y. Jur. 2d Contracts §500 (2011) ......................................... 26

**THE TRUSTEE'S RESPONSE TO OBJECTIONS TO MOTION FOR (I) A REPORT
AND RECOMMENDATION TO THE DISTRICT COURT FOR THE APPOINTMENT
OF SPECIAL DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING
PROCEDURES FOR ELECTRONIC DATA ROOMS; AND (III) AN ORDER
MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard

L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act,

15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L.

Madoff ("Madoff" and together with BLMIS, the "Debtors"), by and through his undersigned

counsel, pursuant to, *inter alia*, section 105(a) of the United States Bankruptcy Code, 11 U.S.C.

§§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 7016, 7026 and 9006 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), hereby submits his response to objections to

his motion for:  (I) a report and recommendation to the District Court for the appointment of

Special Discovery Masters; (II) an Order expanding the Case Management Procedures approved

by the Court on November 10, 2010, granting access to the Trustee's existing electronic data

room to additional defendants and establishing procedures for the creation of a separate

electronic data room for documents produced to the Trustee; and (III) an Order modifying, in

limited fashion, the Litigation Protective Order, dated June 6, 2011 [Dkt. 4137], including

superseding all individual confidentiality agreements between the Trustee and any parties (the

"Motion").[2]  In support of the Motion, the Trustee respectfully states as follows:

## I.    PRELIMINARY STATEMENT

The Trustee seeks to establish a uniform framework under the June 6, 2011 Litigation

Protective Order (the "Litigation Protective Order") for dealing with discovery in a fair, efficient

---

[1]  For convenience, future reference to SIPA will not include "15 U.S.C."

[2]  All terms not defined herein shall have such meanings as ascribed to them in the Motion.

and reasonable manner in these vast and complex proceedings.  The relief sought by the Trustee

is not being pursued for the Trustee's "convenience," (see Thybo Objection p. 3; UBS Objection

¶ 21), but in the both the spirit and letter of Rule 1001 of the Federal Rules of Bankruptcy

Procedure to "secure the just, speedy, and inexpensive determination of every action and

proceeding."

In an attempt to resolve concerns raised by a relatively small number of producing

parties, the Trustee's counsel conferred in good faith and on numerous occasions with opposing

counsel and compromised on several issues that addressed many of the concerns raised.  As a

result, **of the 16,000 parties served with the Motion, only fifteen (15)[3] objections were filed**

and, even as to those, many of the concerns raised are now addressed in the revised proposed

Order Establishing Procedures for Electronic Data Rooms (attached hereto as Exhibit B) and the

revised proposed Order Modifying the June 6, 2011 Litigation Protective Order (attached hereto

as Exhibit C).

Of note, only three objections were filed with respect to the Trustee's request for a

recommendation to the District Court for the appointment of Special Discovery Masters.  As

demonstrated in the Trustee's Motion and the proposed Report and Recommendation to the

District Court for the Appointment of Special Discovery Masters (attached hereto as Exhibit A),

the relief sought by the Trustee has frequently been utilized in this District and other Districts.  In

addition, the Trustee has proposed a fair allocation of Special Discovery Master fees.

---

[3]  After discussions with the Trustee, and pursuant to an understanding that further modifications to the proposed
orders would be made to address their concerns, three reservations of rights of were filed on behalf of the following
parties:  Thema, Hermes, and Lagoon Funds; Natixis S.A., Natixis Financial Products LLC and Bloom Asset
Holdings Fund; and Evenstad Family Defendants.  The Trustee has addressed each of the concerns raised in the
reservations of rights filed, as reflected in the revised proposed Orders (attached hereto as Exhibits B and C).
Windels Marx, the Trustee's counsel, is addressing the objection filed by Bank of New York Mellon and Ivy Asset.

The remaining objections concern generally the concepts of establishing E-Data Room 2 and superseding individual confidentiality agreements in favor of having all confidentiality designations governed by the Litigation Protective Order.  As noted in the Trustee's Motion and in this Reply, these reliefs are necessary and supported by law and practice.

Several of the objections misconstrue the process and the purpose of E-Data Room 2. To clarify, the revised proposed Orders (Exhibits B and C) provide:

1. The following documents will not be included in E-Data Room 2:  (i) documents provided to the Trustee in connection with hardship applications; (ii) documents provided to the Trustee for settlement and/or mediation purposes only; (iii) documents subject to or controlled by a domestic or foreign court order; (iii) information that this Court has previously ordered to remain under seal, pursuant to the Order Regarding Redactions in Complaints dated April 12, 2011 [Dkt. 4009]; or (iv) customer account records produced by financial institutions subject to the Gramm-Leach-Bliley Act (collectively referred to as "excluded material").

2. Producing Parties may object to the inclusion in E-Data Room 2 of those documents that contain highly sensitive commercial information, including, but not limited to, trade secrets, the inclusion of which would create a substantial risk of serious commercial harm to the Producing Party or its customers.  Producing parties may also object to the inclusion in E-Data Room 2 of those documents that are confidential by operation of foreign law upon a reasonable showing of the applicability of such law by the Producing Party.  Producing Parties may object to the inclusion in E-Data Room 2 of individuals' sensitive personal financial documents, including, but not limited to, individual income tax returns, personal

3

retirement account statements, bank account statements and home mortgage statements (collectively referred to as "excludable material").

3. Producing Parties will have sixty (60) days to object to inclusion of documents in E-Data Room 2.

4. No documents will be produced out of E-Data Room 2 without first providing notice to the relevant Producing Parties and giving them the opportunity to object.

5. Access to E-Data Room 2 will not be provided to defendants in the actions seeking solely fictitious profits in which a Notice of Applicability was filed (the "Avoidance Actions"). Access will only be provided to attorneys of record in the non-Avoidance Actions with whom the Trustee is engaged in active discovery under Bankruptcy Rule 7026 ("Outside Litigation Counsel") after the execution of a non-disclosure agreement.

6. The Trustee will restrict the requesting Outside Litigation Counsel's access within E-Data Room 2 according to the parameters agreed upon through the meet and confer process.

The Trustee respectfully requests that the Court grant the relief sought herein substantially in the form attached hereto as Exhibits A, B and C.[4]

---

[4] As set forth herein, the Trustee has attempted to resolve the concerns and objections raised by those parties who contacted him. While the Trustee succeeded in addressing many of the concerns raised, he was not able to resolve all of them. Nevertheless, as a result of the Trustee's efforts, the scope of objections has been narrowed. To the extent the Court would deem it helpful to further narrow the open issues, the Trustee would not object to the Court conducting a Chambers Conference either at the hearing or in advance of it.

## II.    <u>BACKGROUND</u>

### A.    The February 2010 Protective Order

The motion for entry of the February 16, 2010 Protective Order was filed on December 18, 2009.  The Trustee adjourned the hearing three times until February 4, 2010 to continue negotiations with five sets of objecting parties.  The negotiations resulted in the Trustee modifying the proposed order and ultimately the Protective Order was entered on consent in February 16, 2010.

### B.    The June 2011 Litigation Protective Order

The June 6, 2011 Litigation Protective Order has similar origins.  The Trustee moved for entry of the order in February of 2011 and received objections to the proposed order in March. The hearing was adjourned several times to permit negotiations and compromise with a handful of objecting parties, which primarily consisted of large financial institutions.  The Litigation Protective Order was entered on June 6, 2011 with only one affiliated group of defendants objecting: Thema, Lagoon, and Hermes Funds.

### C.    The Merkin Defendants' Requests

The Trustee is currently responding to document requests from defendants in the ordinary course of discovery in <u>Picard v. Merkin</u>, Adv. Pro. No. 09-01182 (BRL) ("Merkin Defendants") in the Unites States Bankruptcy Court for the Southern District of New York.  The Merkin Defendants' requests sought every document received from Rule 2004 subpoenas or voluntary productions as well as depositions and documents from other adversarial proceedings.  Jacobs Aff. ¶ 12.  The Trustee objected to these requests and engaged in a meet and confer process with the Merkin Defendants in the ordinary course of discovery.  Jacobs Aff. ¶ 13.  The Trustee and the Merkin Defendants continue to negotiate the scope of the Merkin Defendants' requests.

5

Pending these discussions, the Trustee applied a set of search terms to the database of over five (5) million documents received from Rule 2004 subpoenas and voluntary productions. Id. ¶ 14.  This search identified approximately 100,000 potentially responsive documents received from seventy-seven (77) producing parties.  Many of the documents bear confidentiality designations pursuant to either the Litigation Protective Order or fifty-two (52) confidentiality agreements, entered into before and after the entry of the Protective Order.  Id. ¶¶ 14-15.  The Trustee sent notices to all seventy-seven (77) parties, identifying the materials that were to be produced and providing notice and an opportunity to object if the documents were marked as confidential.  Because the terms of each confidentiality agreement were different, the form, content and response time for each notice varied.  The process often devolved into a protracted document-by-document discussion of responsiveness and confidentiality.  Id. ¶ 24.  Significantly, however, the various producing parties the Trustee has reached agreements with, realizing that their documents are indeed not confidential, have agreed that their documents can be produced to the Merkin Defendants (indeed, this point is raised in several of the objections filed, highlighting the weakness of the objectors' own arguments that their documents are confidential).

As discovery continues across the adversary proceedings and the need for such notices and procedures on a case-by-case basis grows exponentially, discovery will collapse under the burden and expense of ensuring the Trustee's compliance with approximately seventy (70) confidentiality agreements, each with varying terms, and the Litigation Protective Order.  Id. ¶¶ 30, 32.

6

### D.    Background of the Motion

The Trustee filed this Motion on August 5, 2011.  Subsequently, a small number of parties reached out to the Trustee's counsel to clarify the relief sought in the proposed orders. Most of the questions and concerns were addressed in phone calls.  The Trustee adjourned the original hearing on this Motion to continue discussions with approximately forty-five (45) parties in an effort to address any lingering concerns and to reach a mutually agreeable resolution.  On September 14, the Trustee filed a second Notice of Adjournment of Hearing to continue negotiations with the 45 parties.  During extensive, in-person and telephonic discussions and the exchange of several drafts, the Trustee was able to resolve some of the parties concerns. However, the Trustee was ultimately unable to come to full agreement with the 45 parties, and as a result, ten (10) objections were filed on September 21-22, 2011.

Three (3) other objections were filed in advance of the original hearing date and two (2) more objections were filed on September 15, 2011, in advance of the second hearing date.  The Trustee has attempted to engage in good faith negotiations with those parties, including MAXAM, in an effort to address their concerns and encourage them to withdraw their objections.

After discussions with these objecting parties, the Trustee has attached revised proposed orders to reflect compromises and agreements reached.  See Exhibits A, B and C.

### E.    The Revised Proposed Orders Clarify Procedures for E-Data Room 2

#### 1.    Material Included and Excluded

The Trustee proposes including in E-Data Room 2 material provided to the Trustee, including deposition transcripts and exhibits, whether provided pursuant to Bankruptcy Rule 2004 subpoenas or in the course of discovery in the adversary proceedings.  See Exhibit B ¶ 3;

Exhibit C ¶ B.  E-Data Room 2 will exclude those documents that, due to contractual

obligations, are no longer in the possession, custody or control of the Trustee or were provided to

the Trustee for settlement and/or mediation purposes only.  See Exhibit B ¶ 6; Exhibit C ¶ D.  In

addition, the following documents will not be included in E-Data Room 2:  (i) documents

provided to the Trustee in connection with hardship applications; (ii) documents provided to the

Trustee for settlement and/or mediation purposes only; (iii) documents subject to or controlled

by a domestic or foreign court order; (iii) information that this Court has previously ordered to

remain under seal, pursuant to the Order Regarding Redactions in Complaints dated April 12,

2011 [Dkt. 4009]; or (iv) customer account records produced by financial institutions subject the

Gramm-Leach-Bliley Act.  Id.

2.    Producing Parties May Object to Inclusion of Specified Material

Although the procedures proposed by the Trustee provide ample protection for

confidential documents, the Trustee recognizes that certain documents may require additional

safeguards from disclosure.  For that reason, the Trustee proposes that Producing Parties may

object to the inclusion in E-Data Room 2 of those documents that contain highly sensitive

commercial information, including, but not limited to, trade secrets, the inclusion of which

would create a substantial risk of serious commercial harm to the Producing Party or its

customers.  See Exhibit B ¶ 7; Exhibit C ¶ E.  Producing parties may also object to the inclusion

in E-Data Room 2 of those documents that are confidential by operation of foreign law upon a

reasonable showing of the applicability of such law by the Producing Party.  Id.  Producing

Parties may object to the inclusion in E-Data Room 2 of individuals' sensitive personal financial

documents, including, but not limited to, individual income tax returns, personal retirement

account statements, bank account statements and home mortgage statements.  Collectively, the

items in this paragraph are defined as "Excludable Material." <u>Id</u>. The revised proposed orders

set forth the procedures whereby Producing Parties may object to the inclusion in E-Data Room

2 of Excludable Material.  <u>See</u> Exhibit B ¶ 7; Exhibit C ¶ E.

>3.    Access Will Be Limited to Outside Litigation Counsel for Non-Avoidance
>      <u>Actions and Access Within E-Data Room 2 Will Be Restricted</u>

Access to E-Data Room 2 will not be provided to defendants in the actions seeking solely

fictitious profits in which a Notice of Applicability was filed (the "Avoidance Actions").  Access

will only be provided to attorneys of record in the non-Avoidance Actions with whom the

Trustee is engaged in active discovery under Bankruptcy Rule 7026 ("Outside Litigation

Counsel").  <u>See</u> Exhibit B ¶ 4; Exhibit C ¶ C.  The Outside Litigation Counsel may only obtain

access after serving document requests to which documents contained in E-Data Room 2 may

potentially be responsive.  Exhibit B ¶ 11.  The Trustee will meet and confer with the Outside

Litigation Counsel regarding whether access is warranted, and the Trustee reserves the right to

object to requests for access to E-Data Room 2 based on relevance or other objections.  <u>Id</u>.

Outside Litigation Counsel must sign a Non-Disclosure Agreement (attached hereto as Exhibit 1

to Exhibit B) and must sign the Undertaking and Consent To Be Bound (attached to the

Litigation Protective Order).  <u>Id</u>.  The Trustee will restrict the requesting Outside Litigation

Counsel's access within E-Data Room 2 according to the parameters agreed upon through the

meet and confer process. <u>See</u> Exhibit B ¶ 13; Exhibit C ¶ H.

>4.    <u>Producing Parties May Object to Production of Documents</u>

Outside Litigation Counsel may view documents and select them for production, but

cannot print, download, duplicate, save or retain any information from E-Data Room 2.  <u>See</u>

Exhibit B ¶ 4.  The revised proposed orders set forth the procedures to notify Producing Parties

whose documents have been requested for production (a broader notification than that provided

by the Litigation Protective Order).  <u>See</u> Exhibit B ¶¶ 14-15; Exhibit C ¶ H.  The Producing

Party may then object to the production to the Requesting Party.  <u>Id</u>.  This right is not currently

conferred by the Litigation Protective Order.  The revised proposed orders set forth the

procedures for resolving disputes relating to production of documents from E-Data Room 2.  <u>Id</u>.

     5.     The Revised Proposed Orders Prevent Production of Personally
             <u>Identifiable Information and Protect Confidential Information</u>

As noted above, the Trustee will exclude certain categories of documents and highly

confidential documents from E-Data Room 2 in the first instance.  For those documents that do

go into E-Data Room 2, the revised proposed orders maintain the protection of personally

identifiable information and information designated as **CONFIDENTIAL**.  Documents selected

for production from E-Data Room 2 by the requesting Outside Litigation Counsel will be

reviewed by the Trustee for any objections under the Federal Rules of Procedures and

Bankruptcy Rules, including, but not limited to, relevance and to apply redactions to personally

identifiable information.  <u>See</u> Exhibit B ¶ 13; Exhibit C ¶ H.  In addition, documents designated

as **CONFIDENTIAL** as of the date of the entry of the Order Establishing Procedures for

Electronic Data Rooms shall remain **CONFIDENTIAL**, unless documents are de-designated

pursuant to a court order or an agreement between the Producing Party and the Trustee.  <u>See</u>

Exhibit B ¶ 16; Exhibit C ¶ G.

### III.    <u>ARGUMENT AND RESPONSES TO SPECIFIC OBJECTIONS</u>

### A.    **The Court Has Inherent Authority to Modify the Litigation Protective Order**

The Court has, within its explicit statutory powers, discretion in equity to modify the

Litigation Protective Order. <u>See</u> 11 U.S.C. §105(a) (herein "Section 105").  Under Section 105,

the Court "may issue any order . . . that is necessary or appropriate to carry out the provisions of

this title." <u>Id</u>.  Under the Bankruptcy Rules, specifically Rule 7026, which incorporates Fed. R.

Civ. P. 26, the Court is empowered to issue protective orders for "good cause to protect a party

or person" from a variety of ills including "undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Because the Court acts in equity when issuing a protective order, the order remains

subject to modification by the petition of the parties or by the court <u>sua</u> <u>sponte</u> based upon

changing circumstances. 11 U.S.C. § 105(a); <u>see</u> <u>also</u> In re Duratech Ind., Inc., 241 B.R. 283,

287 (E.D.N.Y. 1999). According to the Second Circuit, it is the court's distinct area of

competence to "sift the circumstances surrounding any claim to avoid injustice and in doing so to

adopt that remedy which it deems most appropriate under circumstances." <u>In re Interpictures,</u>

<u>Inc.</u>, No. 99-5055, 2000 WL 232149, at *2 (2d Cir. Feb. 3, 2000) (citation omitted). Many

courts have recognized that protective orders are fashioned based on the needs of the case and as

those needs change, "[c]ourts further enjoy the discretion to lift or modify protective orders in

light of changed circumstances that eliminate a continued need for protection." <u>Omega Homes,</u>

<u>Inc. v. Citicorp Acceptance Co.</u>, 656 F. Supp. 393, 403 (W.D. Va. 1987); <u>see</u> <u>also</u> <u>Nixon v.</u>

<u>Warner Communications, Inc.</u>, 435 U.S. 589, 599 (1978); <u>In re Agent Orange Prod. Liab. Litig.</u>,

104 F.R.D. 559, 568 (E.D.N.Y. 1985). The Trustee seeks modification of the Litigation

Protective Order in light of changed circumstances, and the Court is fully empowered to make

those modifications.

**B.      The Objecting Parties Cannot Establish Reasonable Reliance and the Trustee
         Has Established Extraordinary Circumstances and Compelling Need**

    1.      The Objecting Parties Conflate Confidentiality Agreements With
              <u>A Protective Order and Cannot Establish Reasonable Reliance</u>

The parties who filed objections to the Motion ("Objecting Parties") allege that the

proposed modifications to the Litigation Protective Order improperly "abrogate" confidentiality

agreements, yet support their arguments with citations to opinions addressing <u>protective</u> <u>orders</u>

11

entered by a court.  See e.g., Martindell v. Int'l Telephone and Telegraph Co., 594 F.2d 291 (2d

Cir. Mar. 12, 1979).  However, the Trustee is not attempting to eliminate the protection of any

"confidential" material, but rather have the material all covered under a uniform standard set by

the Litigation Protective Order.  The Objecting Parties actually benefit from having their

confidential material controlled by the Litigation Protective Order, given that private

confidentiality agreements are not entitled to the same level of deference as orders of the court.

See Dep't of Econ. Dev. v. Arthur Andersen & Co., 924 F. Supp. 449, 487 (S.D.N.Y. 1996)

(stating use of the "'compelling need or extraordinary circumstances' test is misplaced" for

confidentiality agreements).  The Objecting Parties do not even attempt to explain why the

confidentiality agreements are entitled to the same deference as a protective order.

       The Objecting Parties cannot credibly argue that they did not anticipate that this Court

would enter a protective order at some point in the litigation when they executed their

confidentiality agreements for production of their documents.  In any event, there will be no

resultant detriment to the Objecting Parties if the modified Litigation Protective Order controls

the discovery process.  The modified Litigation Protective Order is a comprehensive order and

provides the same, if not better, protection than the confidentiality agreements, and includes

additional protections for late designations, claw-back provisions for inadvertently produced

privileged documents, and a standardized approach for productions to third parties.  Not one of

the Objecting Parties has provided a justification for why the confidentiality provisions of the

Litigation Protective Order are insufficient.

       Ironically, while most of the Objecting Parties argue they reasonably relied on

confidentiality agreements, other parties argue reasonable reliance on the Litigation Protective

Order.  Regardless, the Objecting Parties cannot claim to have reasonably believed that the

current Litigation Protective Order would not be permanent, particularly as the <u>express language</u> <u>of the Order anticipates the potential for amendments and modifications and itself superseded the</u> <u>prior February 16, 2010 Protective Order</u>.

In the Second Circuit, "the language of the order itself" has been held as a vital factor in determining the reasonableness of a party's reliance.  <u>In re EPDM Antitrust Litig.</u>, 255 F.R.D. 308, 318 (D. Conn. 2009).  Here, the Litigation Protective Order expressly contemplates modifications.  Even cases cited by the Objecting Parties explicitly state that "some protective orders may not merit a strong presumption against modification." <u>Caxton Int'l, Ltd. v. Reserve</u> <u>Int'l Liquidity Fund, Ltd.</u>, No. 09 Civ. 782, 2009 WL 2365246, at *4 (S.D.N.Y. July 30, 2009); <u>see</u> <u>also</u> <u>CBS Interactive, Inc. v. Etilize, Inc.</u>, 257 F.R.D. 195, 206 (N.D. Cal. 2009). Accordingly, objections based on such reasonable reliance are without merit.

Not only are the foregoing arguments meritless, but the Objecting Parties did not even designate all their "confidential" documents in good faith.  Many of the documents designated "confidential" are in fact not confidential at all.  The Objecting Parties exaggerate their initial effort to designate confidential documents, when in fact many were designated without regard to content, which has required, and continues to require, the Trustee to waste enormous time and resources in challenging inappropriate designations in an attempt to require multiple parties to de-designate.  Many of the Objecting Parties' confidentiality designations simply do not pass the straight-face test.  For example, HSBC, UBS and Bank of America designated as "confidential" "Out of Office AutoReply" emails.  In addition, the Sterling Defendants designated as "confidential" administrative SPAM filter emails, distasteful photographs and public news articles from thedeal.com, nytimes.com, bloomberg.com, nymag.com, propublica.com and portfolio.com.

13

2.    The Relief Sought Is Supported By
Extraordinary Circumstances and Compelling Need

Even if the Objecting Parties could establish reasonable reliance on either the Litigation

Protective Order or individual confidentiality agreements, the Trustee has demonstrated

extraordinary circumstances and compelling need for the relief sought.

The Objecting Parties not only ignore the clear prudence of establishing E-Data Room 2,

they go further to accuse the Trustee of almost purposeful "poor planning" and a lack of

foresight.  See e.g., Sterling Objection ¶ 9.  PJ argued that "[t]he Trustee charted his litigation

course, and, in fairness, must abide by it."  PJ Objection ¶ 7.  Others suggest that the Trustee was

less than honest in his dealings.  Unicredit Objection p. 3.  These arguments all ring false.  No

one, including the Trustee, could have foreseen the unimaginable scale of these litigations, the

volume of discovery involved or how so many parties would over-designate documents as

"confidential."  In late 2008, the Trustee commenced an urgent investigation into the finances

surrounding Madoff and BLMIS's fraud, which encompassed a Ponzi scheme on a previously

unimagined global scale.  The Bankruptcy Rule 2004 investigations were vital to uncovering

how the fraud was perpetrated and tracing assets.  The Trustee expedited the investigation, while

taking confidentiality concerns of the producing parties into account.[5]

As the litigation has expanded, continuing to abide by scores of different confidentiality

agreements has become unsustainable.  Despite Sterling's cries of "eviscerat[ion]" and

"extinguish[ing] of protections," and PJ's of "a wholesale elimination of rights," the Trustee is

---

[5]  One Objecting Party argues that the Trustee cannot take inconsistent positions based on the principle of judicial estoppel.  Unicredit S.p.A. Objection pp. 3-4.  However, there is no inconsistency in any of the factual or legal assertions the Trustee is making.  Rather, the issue is whether the Trustee can obtain modification of a protective order based on new circumstances or seek judicial intervention to standardize and harmonize an array of confidentiality agreements that pre-date the Litigation Protective Order and at times conflict with its uniform processes.

14

not trying to strip protections.  The proposed modifications do not void notice requirements; they simply standardize notice across the board to allow for ease of discovery.  They do not strip any Producing Party's rights to designate materials as confidential or exclude specified material from E-Data Room 2.  In addition, the proposed modification and procedures offer protections for **CONFIDENTIAL MATERIAL**, as defined in the Litigation Protective Order, that are comparable to, if not better than, those contained in the confidentiality agreements.

Many cases cited in the objections do no more than require these types of safeguards and procedures.  See e.g., Med. Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC, No. 06 Civ. 7764, 2009 WL 2135294, at *2 (S.D.N.Y. July 16, 2009); In re San Juan Dupont Plaza Hotel Fire Litig., 121 F.R.D. 147, 150 (D.P.R. 1988).  The procedures proffered by the Trustee are also eminently reasonable, as evidenced by the miniscule number of formal objections to the proposed modification—fifteen (15) out of over seventy (70) confidentiality agreements and over 16,000 noticed parties.

> 3.    The Trustee Is Not Seeking To Make
>       the Material At Issue Publicly Available

Many Objecting Parties make much of the "danger" of disclosure supposedly posed by E-Data Room 2, as if the Trustee aims to open the entire data room to the public.  See Sterling Objection ¶ 9; PJ Objection ¶ 12; UBS Objection ¶ 24; Plaza Objection ¶ 12; HSBC Objection ¶ 4; Citibank Objection ¶ 9.  The Trustee has no intention of publicly disclosing any documents via E-Data Room 2, and the Trustee has outlined for those parties the multiple layers of protection the procedures offer.   Unfortunately, the Trustee continues to be accused of something he has no intention of doing.

Bank of America cites In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994), a case that turned on the potential public disclosure of trade secrets and other confidential material.

Bank of America Objection fn. 4.  After noting that there is usually a right of public access for judicial records, the court held that the commercial documents at issue were not to be <u>publicly</u> disclosed due to the potential for commercial harm.  <u>Id</u>. at 28.  JPMorgan Chase and UBS both rely on another such case, <u>In re Ionosphere Clubs, Inc.</u>, 156 B.R. 414, 431 (S.D.N.Y. 1993).  JPMorgan Chase Objection ¶ 1; UBS AG Objection ¶ 31.  A creditor in this case similarly wanted to vacate the protective order to make protected material <u>public</u>.  The Trustee agrees that a protective order should protect confidential material.  As a result the Litigation Protective Order was entered and the Producing Parties have a mechanism to exclude highly confidential material from E-Data Room 2.

The Objecting Parties also cite two relatively recent cases that, on first blush, may appear to more closely approximate the action at hand than the others relied upon.  However, both cases are distinguishable based on the relief sought.  <u>In re Sept. 11 Litig.</u>, 262 F.R.D. 274 (S.D.N.Y. 2009), is the only case cited that even begins to approach this Action and its related adversary proceedings in scale.  The distinguishing factor here is thus not one of scale or scope; it is the type of relief requested in the modification.  The plaintiffs in that case asked the judge to "<u>vacate</u> the [protective order] and make all discovery <u>public</u>, except for information marked as Sensitive Security Information."  <u>Id</u>. at 277 (emphasis added).  Likewise, the movant in <u>SEC v. TheStreet.com</u>, 273 F.3d 222, 227 (2d Cir. 2001), "argued that the <u>public</u> had a strong interest in having access" to confidential materials, and asked the court to have the "Confidential Testimony unsealed." (Emphasis added.)  The Trustee does not debate that both motions were properly denied.  However, as the Trustee seeks relief that modifies the terms of the Litigation Protective Order, but maintains its core protections, these cases do not control the outcome of this Motion.

16

4.    The Remaining Cases Cited by Objecting Parties Are Inapposite

a.    The Trustee Is Not A Government Authority
Nor Is He Attempting An End-Run

Many of cases relied upon by the Objecting Parties stem from very different factual and

procedural postures.  Botha v. King, No. 97 Civ. 7587, 1998 WL 88745, at *2 (S.D.N.Y. Feb. 27,

1998) and SEC v. Merrill Scott & Assocs., Ltd., 600 F.3d 1262, 1272 (10th Cir. 2010), were both

cases where the government attempted an "end-run" around a potential assertion of Fifth

Amendment protections in a related criminal case, by seeking to modify a protective order to

access confidential civil information.  See also U.S. v. Oshatz, 700 F. Supp. 696 (S.D.N.Y.

1988); GAF Corp. v. Eastman Kodak Co., 415 F. Supp. 129 (S.D.N.Y. 1976).

Davis v. Transamerica Commercial Fin. Corp., No. 93 Civ. 5177, 1995 WL 534294

(N.D. Ill. Sept. 5, 1995), did not concern governmental parties, but similarly looked to modify a

protective order for reasons falling short of good faith.  In that case, a party attempted to modify

to "ratify his breach" post facto.  Id. at *3.  That type of end-run attempt has no bearing on a

legitimate motion such as the Trustee's.

b.    The Material At Issue Here Was Not
Created In Reliance On An Agreement

Other Objecting Parties rely on cases that cite Allen v. City of New York, 420 F. Supp.

2d 295, 300-01 (S.D.N.Y. 2006), in which the court observes that it presents "the classic

situation in which a party creates material during the course of litigation on the understanding

that it will be kept confidential."  However, the material at issue in this Action was preexisting

and not created in express reliance upon a confidentiality agreement, and is thus discoverable.

The issue in the adversary proceedings is not whether these materials should be produced at all,

but rather through what conduit.

17

A few Objecting Parties cite <u>Botha v. King</u>, No. 97 Civ. 7587, 1998 WL 88745, at *2 (S.D.N.Y. Feb. 27, 1998), where a deposition was taken the night before a trial upon oral assurances that its contents would remain confidential.  PJ refers to a small set of transcripts for depositions taken in express reliance on the Litigation Protective Order.  PJ Objection ¶ 6. However, PJ fails to acknowledge that deposition transcripts would not lose protection, as they would continue to be treated as "confidential" in the event they are produced out of E-Data Room 2.

<blockquote>c.    The Trustee Is Faced With Administrative Burden<br>and Prohibitive Costs Of An Unprecedented Scale</blockquote>

If any case presents "extraordinary circumstance or compelling need" for the use of discovery tools, such as a data room, this is it.  The use of these tools requires modification of the existing Litigation Protective Order.

Many Objecting Parties quote the same Southern District case in an attempt to discount this argument.  <u>See</u> <u>e.g.</u>, PJ Objection ¶ B; Plaza Objection ¶ 10.  In <u>Med. Diagnostic Imaging, PLLC. v. Carecore Nat'l, LLC</u>, No. 06 Civ. 7764, 2009 WL 2135294, at *1 (S.D.N.Y. July 16, 2009), a third party sought to intervene "solely for the purpose of requesting a modification" of the protective order to obtain discovery in a completely unrelated case, and was denied.  In addition, the court found that the third party intervenor would not bear most of the burden of discovery if the relief sought was not granted.  <u>Id</u>. at *2-3.  Compliance with HIPPA regulations further complicated the court's analysis.  The court was reluctant to "require the wholesale production of that material for use in other litigation, where the scope, relevance, and confidentiality of the discovery" had not been addressed." <u>Id</u>. at *4.  Here, the parties are known, they are the Trustee's adversaries.  The relevance is clear, the participants of the Madoff fraud did not operate in silos; rather they were all connected to each other.  Further, all of the

adversaries have comparable confidentiality obligations as established by the Litigation

Protective Order.  None of the uncertainties identified by that court is present in this case.

In Maryland Cas. Co. v. W.R. Grace & Co., No. 83 Civ. 7451, 1994 WL 419787, at *3

(S.D.N.Y. Aug. 10, 1994), which is heavily relied upon as well, the court found that "although

fostering judicial economy and avoiding duplicative discovery are laudable goals . . . they hardly

amount to extraordinary circumstances or compelling need."  See also Plaza Objection ¶ 10;

Bank of America Objection ¶ 12.  However, Maryland Cas. Co. was also a case arising from a

third party intervenor seeking to modify a protective order to which it was not a party.

The Objecting Parties also cite two cases in opposition to the relevancy of costs and

burden in modifying a protective order.  Neither case is of the same magnitude of this case.  In

the first case, Omega Homes, Inc. v. Citicorp Acceptance Co., 656 F. Supp. 393, 404 (W.D. Va.

1987), the court refused to permit the movant to share discovery with parties to only five other

cases, arguing it would "save considerable time and expense if the court grants them access to

the discovery in this case."  The court denied the modification, finding the cost argument not

"compelling enough." Id.

The second case, Jochims v. Isuzu Motors, Ltd., 145 F.R.D. 499, 501 (S.D. Iowa, 1992),

does not even apply the Martindell standard.  The Iowa court was not amenable to changing the

protective order, reasoning that the movant's desire to reduce the cost and waste of repetitive

discovery in similar lawsuits against Isuzu was "reasonably foreseeable." Id. at 502.  However,

again, that court's determination regarding the cost and burden in cases with a fraction of the

complexity does not establish a bright line rule that those considerations can never establish a

foundation for extraordinary circumstances or compelling need.

19

### C.    Appointment of Special Discovery Masters

MUUS and Unicredit object to the request for a recommendation for the appointment of a

Special Master.  MUUS objects that "the special master vehicle that the Trustee proposes . . .

does not comport with the rules."  MUUS Objection ¶ 1.  Both parties base their objections on

Bankruptcy Rule 9031.  However, MUUS and Unicredit misconstrue the nature of the remedy

requested by the Trustee.  The relief sought is not the appointment of a special master directly by

the District Court; rather, the Trustee asks that the Bankruptcy Judge make such a

recommendation.  This two tiered approach is consistent with the past practices regarding the use

of special masters in bankruptcy matters, as discussed below.

None of the cases cited by MUUS holds that Bankruptcy Courts are barred from

recommending the appointment of a special master under appropriate circumstances.  In In re

Romeo J. Roy, Inc., 32 B.R. 240 (Bankr. D. Me. 1983), the case turned on a question of

jurisdiction, and Bankruptcy Rule 9031 only arises in the discussion of the unique local rule in

question, "which in effect refers all bankruptcy cases to two bankruptcy 'masters.'"  Id. at 244.

Aside from the fact that this ruling was vacated upon the local rule change (see In re Romeo J.

Roy, Inc., 740 F.2d 111 (1st Cir. 1984)) and decided under the old Bankruptcy Rules, it is not

difficult to see how any statements regarding special masters would be inapposite.  A decision on

a blanket rule which automatically and improperly delegated all judicial duty is starkly different

than the recommendation requested.

Furthermore, despite MUUS's protestations of confusion (i.e. "Why those courts

disregarded Rule 9031 we do not know"), they are unable to discredit Second Circuit case law

and practice cited by the Trustee in his Motion.  For example, MUUS attempts to discount In re

Joint E. and S. Dist. Asbestos Litig., 120 B.R. 648 (E.D.N.Y. 1990), by saying that special

masters were only "delegated responsibility" in the "post-confirmation period." MUUS Obj. ¶ 5. Aside from MUUS's failure to explain why such a timing issue should matter for distinction purposes, that is simply not a correct reading of the case. Both the District and Bankruptcy Court utilized the special master in the bankruptcy proceedings, and they further appointed a "special advisor . . . to assist in the necessary restructuring of the Trust" in the bankruptcy proceeding itself. In re Joint E. and S. Dist. Asbestos Litig., 120 B.R. at 653.

MUUS also tries to minimize the role of a "special advisor" in Nellis v. Shugrue, 165 B.R. 115 (S.D.N.Y. 1994) a subsequent bankruptcy case in this District. MUUS Obj. ¶ 6. MUUS again offers its own ignorance as an argument, stating, "We have no idea what the 'Special Advisor's' actual role was in that case." MUUS Objection ¶ 6. MUUS also ignores that the appropriateness of the special advisor was noted with approval by the District Court in its affirmance. Nellis v. Shugrue, 165 B.R. at 126. MUUS's protestations do not change the fact that these cases from courts in the Second Circuit demonstrate that, under certain circumstances, special masters and advisors can be properly appointed in bankruptcy actions.

Unicredit makes an unwarranted leap of logic similar to MUUS's, stating: "[I]t is clear that neither a district judge nor a bankruptcy judge is authorized to appoint Special Discovery Masters in this case." Unicredit Objection ¶ 3. Unicredit's argument is even more poorly supported than MUUS's. The only case Unicredit cites for this argument is In re Interco, Inc., 139 B.R. 718 (Bankr. E.D. Mo. 1992), which provides no analysis and relates specifically to the circumstances of that case. In re Interco, Inc., 139 B.R. at 721 (denying a request for an appointment of a special master in another district to prepare proposed findings of fact). One treatise and one article are the only "authorities" Unicredit can find to support its assertion that

district court judges cannot appoint Special Masters.  Unicredit's overgeneralization is not supported by case law.

### D.     Royal Bank of Canada's Relevance Objection

RBC attempts to rebut the Motion by claiming that the Trustee "seeks to substitute discovery under the Federal Rules with information obtained during the course of a Rule 2004 investigation, discarding basic procedural safeguards which would otherwise be available to producing parties like RBC along the way."  RBC Objection p. 8.  But the Trustee is not seeking to substitute discovery under the Federal Rules for discovery obtained through Rule 2004 examinations.  Case law is clear, and the Trustee recognizes, that discovery under Rule 2004 versus discovery under the Federal Rules serve two separate and distinct purposes.  See, e.g., In re Symington, 209 B.R. 678, 684 (Bankr. D. Md. 1997) (describing Bankruptcy Rule 2004 as "an investigatory tool" that is "inquisitory rather than accusatory," whereas the purpose of discovery under the Federal Rules is for the prosecution of claims); In re Rocco Dante Dinuilo, 177 B.R. 932, 940 (E.D. Cal. 1993).  In any event, the Trustee's purpose in establishing E-Data Room 2 is to comply with his obligations to produce documents in his possession, custody and control, not to replace discovery under the Bankruptcy Rules with Rule 2004 discovery.

Additionally, RBC's argument that the Trustee requires no showing of relevance before allowing parties into the data room, and that this undermines the protections offered by the Federal Rules, is faulty.  The Trustee will require that parties demonstrate a need to enter the data room based on the fact that documents relevant to its claims and defenses are located there.

The objection that the Trustee is giving "open-file access" to defendants is likewise meritless.  Outside Litigation Counsel would only be given access if engaged in active discovery, within the parameters defined in the meet and confer process and after execution of a non-

disclosure agreement and the Undertaking to Be Bound to the Litigation Protective Order.

Courts have frequently found the use of non-disclosure agreements to be an effective safeguard

against the dissemination of confidential and privileged material.  The mechanisms in place

clearly protect against the improper disclosure of privileged and confidential information.  See

SEC v. Galleon Management, LP, 274 F.R.D. 120, 124 (S.D.N.Y. 2011) (holding that

defendants' interests were adequately protected where the Court's Protective Order limited the

disclosure of confidential discovery material to "parties and their counsel, witnesses and experts"

who signed non-disclosure agreements).  The requirement that parties who enter the data room

sign a non-disclosure agreement sufficiently protects the interests of those with confidential

documents in the data room.

>    **E.**    **Bank of America's Objections**

>    1.    Individuals' Sensitive Financial Documents Are Excluded

Bank of America states that the documents it produced to the Trustee contain personal

identifying information and confidential financial and/or proprietary information of its

customers.  The Trustee's revised proposed orders address this concern, and these materials will

be excluded from E-Data Room 2.  See Exhibit B ¶ 5; Exhibit C ¶ A.

>    2.    The Allocation of Special Discovery Masters is Fair

Bank of America also objects to the allocation of Special Discovery Master fees amongst

the parties involved in the dispute.  Bank of America cites to Fed. R. Civ. P. 45, stating that as a

non-party, it should not be subjected to Special Discovery Master fees as an undue burden and

expense.  However, Bank of America fails to recognize that Fed. R. Civ. P. 37 and Bankruptcy

Rule 7037 permit recovery of a prevailing movant's reasonable expenses, including attorney's

fees, from the party or deponent whose conduct necessitated the motion.  Rule 37 and

Bankruptcy Rule 7037 allow for the award of reasonable expenses against both a party and a

non-party.

A non-party's objection to the Trustee's production of documents from the E-Data Room

2 and the resulting intervention of the Special Discovery Master is akin to the ordinary situation

when a motion to compel is filed in response to a non-party's objection to a Rule 45 subpoena.

In the latter circumstance, the non-party, if unsuccessful in objecting to the subpoena, can be

ordered to pay reasonable expenses.  Similarly, an unsuccessful objection before the Special

Discovery Master could create the same result.  In this situation, the only difference is that a

Special Discovery Master, rather than the Court, decides whether the merits of the objection

should not exempt the objecting party from its obligation to pay reasonable expenses if it is

ultimately determined that the documents must be produced.  The Trustee merely seeks the fair

allocation of Special Discovery Master fees to all the parties involved in a dispute.

### F.    Access & de la Villehuchet Objections

Access International Advisors LLC ("Access") produced 4.6 million documents to the

Trustee, designating all 4.6 million documents as "confidential."  The Trustee requested in a

letter dated June 3, 2010 for Access to de-designate documents which, in good faith, do not meet

the criteria for "confidential," as defined in the February 2010 Protective Order.  In response,

Access voluntarily de-designated all of the documents.  See Access Objection, Exhibit 4.

Mrs. de la Villehuchet produced documents to the Trustee initially designated

"Confidential – For Settlement Purposes."  The production cover letters included a "return or

destroy" provision.  When the Trustee later indicated that these provisions were not adequately

coextensive with the February Protective Order and that the documents ought to be controlled

solely by the Protective Order, Mrs. de la Villehuchet's counsel acquiesced in a written letter

dated March 8, 2011.  See Access Objection, Exhibit 10.

Counsel for Access and Mrs. de la Villehuchet uses a response to the Motion as an

inappropriate forum to re-visit issues that have already been thoroughly negotiated with the

Trustee.  After waiving all rights to confidentiality designation under the Protective Order and

superseding prior production agreements, counsel for Access and Mrs. de la Villehuchet now

seeks to re-designate certain documents after foregoing that right for both parties.[6]  Access' letter

to the Trustee dated June 15, 2010 functioned as an express waiver of Access' confidentiality

rights under the February 2010 Protective Order.

Waiver is the "intentional relinquishment or abandonment of a known right."  Hamilton

v. Atlas Turner, Inc., 197 F. 3d 58, 61 (2d Cir. 1999) (quoting U.S. v. Olano, 507 U.S. 725

(1993)).  Access clearly elected to forego the right to designate documents as "confidential,"

thereby waiving that right in writing, when it replied that it "will not object to the removal of the

confidential designations from all documents produced to [the Trustee]."  Access Objection,

Exhibit 4.  That the Trustee's proposed use of the de-designated material was unforeseeable at

the time, as Access repeatedly claims, is neither a factor in finding waiver has occurred nor is it

persuasive.

Access also claims it conditioned de-designation of Access' documents as "confidential"

in the June 15, 2010 letter to the Trustee on a limitation of the documents' use.  The letter does

contain a section which seeks to prohibit use of the documents in foreign proceedings or outside

of the United States.  However, Access' language was not conditional and, even if the language

---

[6]  Access' objection also characterizes the Trustee's actions as in bad faith.  In fact, the Trustee is acting in good faith to balance the interests of all parties involved in this litigation and to facilitate discovery in accordance with the Litigation Protective Order.

were to be construed as such, the Trustee did not agree to Access' limitation.  In fact, the Trustee

objected to Access' attempt to impose this limitation on its waiver. Access Objection ¶ 16.

With regard to Mrs. de la Villehuchet, the March 8, 2011 letter expressly superseded all

prior confidentiality agreements regarding Mrs. de la Villehuchet's documents provided to the

Trustee.  Access Objection, Exhibit I.  In effect, Mrs. de la Villehuchet rescinded the prior

express confidentiality agreements by agreeing to the new contractual obligations in the March 8,

2011 letter.  22A Laura Hunter Dietz et al., N.Y. Jur. 2d Contracts §500 (2011).  The language in

the letter could not less ambiguously supersede prior controlling agreements: "We agree with

[the Trustee] that the documents we have provided in our recent production as well as all other

documents that we previously provided for Mrs. de la Villehuchet fall under the ambit of the

Protective Order."  Access Objection, Exhibit I.  The Trustee asks that the Court enforce in its

entirety the last-in-time superseding agreement between the parties regarding Mrs. de la

Villehuchet's documents.  See Washington v. William Morris Endeavor Entm't, LLC, No. 10

Civ. 9647, 2011 WL 3251504, *5 (S.D.N.Y. July 20, 2011) (where this court found the later

arbitration agreement controlling because it was the "last-in-time" agreement).

## IV.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that his Motion be granted

and that the Court enter the revised proposed orders submitted herewith.

Dated: New York, New York
      September 28, 2011

BAKER & HOSTETLER LLP

By: /s/ David J. Sheehan
      David J. Sheehan
      Regina L. Griffin
      Judith A. Selby
      Lourdes M. Slater

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and Bernard L. Madoff*

300181488