WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
Tel:  (212) 237-1000
Howard L. Simon (hsimon@windelsmarx.com)
Clark E. Alpert (calpert@windelsmarx.com)
Kim M. Longo (klongo@windelsmarx.com)

*Special Counsel to Irving H. Picard, Trustee for the
SIPA Liquidation of Bernard L. Madoff Investment
Securities LLC and the Substantively Consolidated
Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br> SIPA Liquidation <br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**TRUSTEE'S RESPONSE TO THE BANK OF NEW YORK MELLON
CORPORATION'S AND IVY ASSET MANAGEMENT LLC'S OBJECTION TO
TRUSTEE'S MOTION FOR (I) A REPORT AND RECOMMENDATION TO
THE DISTRICT COURT FOR THE APPOINTMENT OF SPECIAL
DISCOVERY MASTERS; (II) AN ORDER ESTABLISHING PROCEDURES FOR
ELECTRONIC DATA ROOMS; AND (III) AN ORDER MODIFYING THE
JUNE 6, 2011 LITIGATION PROTECTIVE ORDER**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of

Bernard L. Madoff Securities LLC ("BLMIS"), under the Securities Investor Protection

Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA"), and the substantively consolidated estate of

Bernard L. Madoff ("Madoff" and together with BLMIS, the "Debtors"), by and through

his undersigned special counsel, Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), hereby submits his reply to The Bank of New York Mellon Corporation's ("BNY Mellon") and Ivy Asset Management LLC's ("Ivy") Objection to the Trustee's Motion for (I) a Report and Recommendation to the District Court for the Appointment of Special Discovery Masters; (II) an Order Establishing Procedures for Electronic Data Rooms; and (III) an Order Modifying the June 6, 2011 Litigation Protective Order (the "Discovery Motion").

In support of the Discovery Motion, the Trustee respectfully states as follows:

## I.    Preliminary Statement

This Response is submitted in order to address certain facts and circumstances directly relevant to the Objection of BNY Mellon and Ivy (together, the "Objectant") to the Discovery Motion (the "Objection"), including, *inter alia*, Objectant's blanket assertion of confidentiality and the law applicable thereto.  In addition to the arguments herein, the undersigned hereby joins in, and incorporates by reference, the arguments set forth in Baker & Hostetler LLP's Response to Objections to the Discovery Motion, which response was filed on the date hereof (the "Baker Response").[1]

As set forth in his August 5, 2011 Motion, the Trustee seeks modification of the June 6, 2011 Litigation Protective Order ("LPO") (1) to make information produced by third parties and defendants available for discovery through an "E-Data Room" and (2) to provide that the LPO supersedes private confidentiality agreements.  Objectant's argument in opposition to the second portion of the Discovery Motion improperly

---

[1] The Trustee previously retained Windels Marx as special counsel with regard to a number of matters, including matters involving Ivy.  On December 8, 2010 Windels Marx commenced an avoidance action against, *inter alia*, Ivy, on behalf of the Trustee, and is handling all matters related to Ivy.

elevates Objectant's July 14, 2009 confidentiality agreement with the Trustee (the "Confidentiality Agreement") to the level of a protective order, arguing further that it would be improper to grant the Discovery Motion after Objectant relied upon the Confidentiality Agreement in producing documents.

Objectant also exaggerates the burden that a modification of the confidentiality agreement under which it has made a blanket designation would impose and the burden it has supposedly already undertaken--claiming that it "reviewed [and] designated" as confidential each specific document.  Objectant simply stamped every single document as "Confidential".  Many of the allegedly 'reviewed' documents are clearly not confidential-- for example, the dozens of emails (if not more) attaching the "Albourne Village Voice", an industry newsletter available to anyone in the hedge fund/private equity community.   Likewise, it is hard to imagine how an email forwarding (without comment) a December 11, 2008 Wall Street Journal 'alert' announcing Madoff's arrest could be confidential.

Correctly analyzed, the facts and the law strongly support the Trustee's position.

## II.    **Argument**

A.    <u>Objectant Conflates the Confidentiality Agreement with a Protective Order</u>.

Objectant objects to the proposed revisions to the LPO as a purportedly improper "abrogation" of the Confidentiality Agreement (Objection at p.2), yet supports its arguments with citations to opinions addressing *protective orders* signed by the court.[2]

---

[2] Although ¶19 of the LPO states that previously agreed-upon confidentiality agreements continue to apply as to documents exchanged prior to the entry of the LPO, that provision does not adjudicate the confidentiality of any documents; nor imbue Objectant's blanket production with deference; nor relieve Objectant of its burden of demonstrating particularized good cause for each of the documents produced, as discussed herein.

As discussed below, (1) private confidentiality agreements are not entitled to the same level of deference as given to orders of the court, and (2) the blanket nature of the Confidentiality Agreement here, where no analysis was performed as to any document at the time of designation, precludes the degree of deference given to actually-litigated protective orders.

As set forth in ¶42 of the Discovery Motion, parties cannot privately agree to prevent disclosure of materials in discovery by designating them as confidential. See Grumman Aerospace Corp. v. Titanium Metals Corp. of America, 91 F.R.D. 84, 87-88 (E.D.N.Y. 1981). Objectant attempts to avoid this common-sense principle by invoking inapposite case law stating that a *protective order* should not be modified after a party has reasonably relied upon it in producing discovery, in the absence of a showing of improvidence in granting the order or other extraordinary circumstances or compelling need. See S.E.C. v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001) and AT&T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005), cited by Objectant. As noted on pages 11-12 of the Baker Response, Objectant does not even attempt to explain why private confidentiality agreements should be given the same deference as a protective order entered by the Court.

The cases cited by Objectant are clearly distinguishable from the present motion. First, TheStreet.com, AT&T, Med. Diagnostic Imaging PLLC, 2009 WL 2135294 (S.D.N.Y. July 16, 2009), and Md. Casualty Co. v. W.R. Grace & Co., 1994 WL 419787 (S.D.N.Y. August 10, 1994) involve applications by intervenors or third parties to amend protective orders previously stipulated by the parties or ordered by the Court for cause. Those cases are inapplicable here, where there is no third party seeking to disrupt an

adjudicated or stipulated discovery process, and Objectant is arguing on the basis of a private agreement as opposed to an actual order of the court that has been entered for good cause.

The cases are further distinguishable in that they do not deal with the blanket designation of 100% of documents produced. In TheStreet.com, for example, the confidential information at issue was the portion of a particular deposition which had been designated confidential. Even standing alone, the fact that only a portion of the deposition was so designated distinguishes it from our case; clearly, some thought and diligence by the designating party went into the initial designation, rather than the blanket confidentiality claimed here.[3] Likewise, the parties in AT&T designated only "certain" documents confidential. Id. at 561. See also Sprint's appellate brief in AT&T, available at 2005 WL 3966034, in which Sprint explained that the "statement that Defendants designated all of the documents as confidential is wrong" and that "[i]n accordance with the Protective Order, Defendants only designated those documents that they believed, in good faith, contained proprietary or sensitive competitive information"; which included "materials regarding [Sprint's] internal business plans and organizational structure...; confidential customer contracts, agreements and other business arrangements to provide operator services...; [and] costs, revenue projections, and profit margins". Id. at *13.

By contrast here, Objectant designated every single document produced as confidential, without regard to its content. As noted above, this includes (by way of

---

[3] TheStreet.com further demonstrates that, even under its own strict standard, modification of a protective order is not immutable; in that case, the Second Circuit affirmed the modification of a protective order to allow disclosure to third parties of certain deposition transcripts, because third parties who did not agree to be bound by the protective order had been present when the depositions took place. 273 F.3d at 234.

example) a multitude of documents which are simply copies of widely available industry and news publications, to which no possible claim of proprietary or confidential information can be made. Thus, despite its claim to the contrary, Objectant could not have performed a 'good faith' review. See Fears v. Wilhelmina, 2003 WL 21737808 at *1 (S.D.N.Y. 2003) (the blanket designation of an entire production as confidential "suggests bad faith").

Thus, Objectant's rote recitation of The Street and AT&T offers no support.

B.    Objectant Cannot Demonstrate Reasonable Reliance on the Confidentiality Agreement Or The LPO When It Produced Documents To the Trustee.

Although Objectant maintains that it "reviewed… hundreds of thousands of pages of documents" in reliance upon the Confidentiality Agreement, it nonetheless designated every document as "confidential". Such a blanket designation cannot be said to have been made in reasonable reliance on the Agreement. Even under a protective order, there is an absence of reasonable reliance if a defendant "obtained the blanket protective order without making a particularized showing of good cause with respect to any individual document." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1138 (9th Cir. 2003).

Furthermore, the Objectant cannot argue that the LPO itself protects its document production from discovery. The materials Objectant seeks to protect were produced two years ago, before the LPO was entered by the Court, thereby precluding any argument that the materials were produced in reliance upon the Order. In any event, Paragraph 5 of the LPO prohibits "[e]xcessive, overly broad and unreasonable designations of CONFIDENTIAL MATERIAL".

C.    The Confidentiality Agreement Itself Reflects Awareness That The Designation
      May Be Changed In The Future, Thus Precluding 'Reasonable' Belief That It
      Would Not Be Challenged.

The Confidentiality Agreement contains provisions regarding challenging confidentiality designations and disclosure to third parties through discovery. Such provisions are inconsistent with the assertion that materials were produced in reliance upon an expectation that their confidentiality would be preserved into the future.[4]

> Where a protective order contains express language that limits the time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified.

TheStreet.com, 273 F.3d at 231. See also Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006)(provisions for resolving disputes as to discovery reflects parties' anticipation that disclosure to third parties could occur); Schiller, supra, at *3)(where a protective order allows a party to unilaterally designate discovery materials as confidential, the party challenging that designation is not seeking 'modification' of the protective order, and thus does not bear the burden of showing that the confidentiality designation should be lifted). Objectant has yet to substantiate its claims that the documents it produced are properly designated as "confidential", and thus retains the burden to demonstrate that it is entitled to a protective order. See Burns v. Bank of America, 2007 WL 1589437 at *15 (S.D.N.Y. 2007) (finding of good cause for designation must be based upon particular demonstration of potential harm).

---

[4] We agree with the observation at pages 12-13 of the Baker Response that the objecting parties could not have reasonably believed that the LPO would not be changed, particularly because the LPO expressly recognizes the possibility of amendments or modifications and itself superseded the February 16, 2010 Protective Order.

D.    Objectant's Claims That the Parties Can Deal With Discovery Issues as They Arise Are Misplaced.

Objectant argues that it has been cooperative, and has agreed to permit disclosure "in each instance" when requested (Objection at p.5).  This argument is also exaggerated, as detailed below; and, in any event, supports the Trustee's point that Objectant's blanket designations of all of its documents as confidential was unjustified in the first instance. As per the example set forth above, there are numerous publicly available documents which were improperly designated by Objectant as confidential.  In addition, the fact (which Objectant alludes to) that every time the Trustee has asked Objectant to allow for the disclosure of a set of documents, Objectant has agreed to disclose each and every document within that set, only calls into question Objectant's claim that it carefully reviewed documents prior to designation.  It is clear that any review to be undertaken by Objectant now will be the first such serious endeavor.

Objectant's claim regarding prior discussions also has no applicability here.  The previous disclosure issues were extremely limited (e.g., documents supporting the allegations in the Complaint), and applied to a finite number of objectively identifiable documents.  The anticipated requests for Objectant's documents now present a much different (and burdensome) scenario, because they will likely be broad and subjective. With so many potential parties seeking information, and so many potentially responsive documents, the logistics and burden to the Trustee of (1) identifying documents, and (2) requesting de-designation on a document-by-document basis, would simply be overwhelming.  This is particularly so in light of the blanket, 100% designation of confidentiality.  Moreover, the above authorities reflect that it is only the producing party which can truly advocate in favor of a document's confidentiality; and that it is illogical

to ask the receiving party to effectively argue for or against a confidentiality claim never articulated by the party directly familiar with the document. See Fears, supra at *1 ("[producing party]'s counsel is reminded that [it] bears the burden of proving the propriety of… confidentiality designations as to each document"); see also Factory Mut. Ins. Co. v. Insteel Industries, Inc., 212 F.R.D. 301, 303 (M.D.N.C. 2002) ("If good cause were not required to be shown when the order was initially entered, the party who later seeks to prevent disclosure of the information bears the burden of showing good cause").

Objectant also complains that it is being asked to "re-review" its production "because a new and different standard" of confidentiality would now apply (Objection at p.5). This is not the case. The same standard that applied in the past (or a conceptually indistinguishable standard) would still apply--the existence of a good faith basis to assert confidentiality, based on recognized principles such as the protection of proprietary information. Objectant is simply being asked to adhere to the same standards set forth in the June 6, 2010 Protective Order and prevailing jurisprudence at all relevant times.

E.    Objectant's Concerns of Disclosures To Competitors Are Overstated.

Objectant's expressed concern that confidential customer information may be revealed to third parties is overstated. Even under the modified LPO, the materials in the E-Data Room 2 will still be designated as "Attorneys' Eyes Only". The concern that materials would be 'leaked' to competitors of Objectant assumes that the reviewing attorneys would risk their professional careers by violating the modified LPO (and the confidentiality undertaking required by ¶18 of the LPO). Moreover, even in the absence of an 'Attorneys' Eyes Only' designation, discovery materials would not be freely

available to the general public. <u>Diversified Group, Inc. v. Daugerdas</u>, 217 F.R.D. 152, 158-59 (S.D.N.Y. 2003).

Objectant's complaints that the E-Data Room 2 will not provide the level of protection of confidentiality that was expressed in the protective order in <u>San Juan Dupont Plaza Hotel Fire Litigation</u>, 121 F.R.D. 147 (D.P.R. 1988), are misplaced. While that court addressed the creation of a physical, not electronic, data room (a "Depository" with file cabinets, <u>id.</u> at 150), that is a distinction without a difference. The procedures to be followed here pursuant to the modified LPO, including "attorneys eyes only" designation, and a process for responding to third party discovery requests, are functional equivalents.

F.    <u>"Blanket" Protective Orders Are Not Given The Deference Shown to Orders Making Particularized Designations of Confidentiality</u>.

Even if for the sake of argument one were to elevate the Confidentiality Agreement to the level of a Protective Order, good cause for 'modifying' that agreement exists. The Confidentiality Agreement adopts an 'umbrella' approach to confidentiality, rather than targeting specific documents. While the use of umbrella protective orders can ease the burden of the parties exchanging discovery between themselves, they can be overbroad and abusive, and are simply methods of postponing analytical issues. <u>See</u> <u>Schiller v. City of New York</u>, 2007 WL 136149, at *19 (S.D.N.Y. 2007); <u>Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation</u>, 255 F.R.D. 308, 319-20 (D.Conn. 2009) (noting that "blanket protective orders ... are by nature overinclusive and ... peculiarly subject to later modification," and that "[s]tipulated blanket orders are even less resistant to a reasonable request for modification") (internal quotations and citations omitted). A generalized protective order, postponing the actual examination of specific

documents for confidentiality, does not give rise to the treatment that was given to the protective order in The Street. See EPDM, supra. Moreover, "[a] protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause." EPDM, 255 F.R.D. at 321.

In sum, under any analysis, the generalized confidentiality undertaking at the threshold of this case does not preclude the present relief sought by the Trustee.

### III.    Conclusion

For all of the reasons set forth above and in the Baker Response, the Trustee requests that Objectant's Objection to the Discovery Motion be overruled and the Discovery Motion granted.

Dated: New York, New York
      September 28, 2011

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP

/s/ Howard L. Simon
Howard L. Simon (hsimon@windelsmarx.com)
Clark E. Alpert (calpert@windelsmarx.com)
Kim M. Longo (klongo@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

Special Counsel to Irving H. Picard, Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Substantively Consolidated Estate of Bernard L. Madoff