# EXHIBIT 4

## ACCOUNT ADMINISTRATION AGREEMENT

ACCOUNT ADMINISTRATION AGREEMENT, dated as of April 2, 2003, by and among P.J. Administrator LLC, as administrator (the "Administrator"), and the account participants set forth on Schedule A (each, an "Account Participant," and collectively, the "Account Participants").

### WITNESSETH

WHEREAS, each Account Participant has invested funds in a discretionary investment management account (the "Account") managed by Bernard L. Madoff Securities LLC or one or more of its affiliates ("Madoff") or desires to do so;

WHEREAS, each Account Participant who has invested funds in the Account desires to reconfirm the basis on which the Administrator (or its predecessors or persons performing similar functions (collectively, the "Predecessors")) has been acting for the Account Participant throughout the period the Account Participant has had its monies managed by Madoff;

WHEREAS, each Account Participant desires to set forth the basis on which the Administrator hereafter will act;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.     This Agreement shall take effect as of April 2, 2003.

2.     Each Account Participant hereby appoints the Administrator to serve as administrator for the Account in accordance with the terms of this Agreement and the Administrator hereby accepts such appointment. Each Account Participant acknowledges that the Administrator serves as administrator for multiple Account Participants in the Account. The Account shall be subject to the account agreement between the Administrator and Madoff, as such agreement may be in effect from time to time (the "Account Agreement"), a copy of the current version of which (as of the date hereof) is attached hereto. Each Account Participant who has invested its assets in the Account acknowledges that the Administrator and any Predecessor have acted on a basis substantially in accord with the terms of this Agreement throughout the period the Account Participant has had its monies managed by Madoff and ratifies all actions taken in respect of the Account before the date of this Agreement. Each Account Participant agrees to keep a minimum of $100,000 in the Account; provided that such minimum may be waived by the Administrator.

3.     Each Account Participant acknowledges that the Administrator and the Predecessors have not served, and the Administrator will not serve, as the Account Participant's investment adviser, or in any other fiduciary capacity, in respect of the Account. Each Account Participant acknowledges that neither the Administrator nor any Predecessor has made any recommendation or representation, express or implied:

- that an investment with Madoff is a suitable investment for such Account Participant;

- about Madoff or its activities or investment style or that the Administrator will monitor them, or that the Predecessor has monitored them, in any manner;

- that the Administrator or any Predecessor has performed, or that the Administrator will perform, any due diligence inquiry about Madoff or its activities or investment style;

- about the risks associated with an investment with Madoff; or

- about any prior or future performance of an investment with Madoff.

Each Account Participant agrees that the Administrator and each Predecessor had, and the Administrator has, no duty to make any evaluation concerning any of the foregoing matters on behalf of any Account Participant or to communicate any such evaluation made, directly or indirectly, on behalf of members of the family of William Rosenwald or accounts for their benefit. Copies of documentation provided to the Administrator by Madoff relating to the Account are available to the Account Participants upon request. Each Account Participant represents that the Account Participant has satisfied itself as to the appropriateness of its investment with Madoff, has not relied on the Administrator or any Predecessor or any person affiliated with the Administrator or any Predecessor in making its investment decision and is making the investment decision about Madoff independent of any other Account Participant. Each Account Participant represents that it has not relied, and will not rely, on any statements, whether or not expressed as an opinion, of the Administrator or any Predecessor (or any person in any way related to any of them) concerning anything about Madoff or an investment with Madoff. Each Account Participant agrees that neither the Administrator nor any other person shall have any duty to disclose to any Account Participant the investment decision of, any information received from, or other action of any other Account Participant.

4.      The Administrator shall have only the following duties relating to the Account and no other duties shall be inferred or implied:

(a)      The Administrator shall receive all correspondence and communications from Madoff or its designee concerning the Account and the assets held in the Account, including but not limited to account statements, tax forms, legal and contractual notices, proxy statements and other reports from issuers. The Administrator shall use commercially reasonable efforts to deliver to Madoff or its designee instructions or other communications concerning the addition or withdrawal of funds to the Account in accordance with the instructions of the Account Participants, to the extent consistent with the Account Agreement.

(b)      The Administrator shall use commercially reasonable efforts:

-2-

- to distribute to the Account Participants *pro rata* in accordance with their relative interests in the Account, all cash, securities or other assets distributed out of the Account by Madoff (other than in connection with a withdrawal by a particular Account Participant);

- to deliver over to Madoff, for deposit into the Account, all cash received for deposit from an Account Participant; and

- upon a withdrawal from the Account of any amount by an Account Participant, to distribute the amount, net of any reductions contemplated by this Agreement, to such Account Participant within a reasonable period of time after receipt thereof.

(c)    Each Account Participant agrees to provide written notice of withdrawal of funds from the Account or deposit of funds into the Account to the Administrator at least 10 business days before the effective date of such withdrawal or deposit. Each Account Participant recognizes that Madoff, from time to time, may not accept investments, may return investments and currently accepts investments and distributes from the Account at month-end only. The Administrator, in its sole discretion, at any time may refuse to accept additional funds for inclusion in the Account.

(d)    The Administrator shall use commercially reasonable efforts to maintain such records concerning the Account sufficient to track

- all deposits to and distributions from the Account,

- all earnings and losses in respect of the Account, and

- any expenses or other charges or amounts that may be charged to or deducted from the Account or that otherwise are the responsibility of one or more of the Account Participants under this Agreement, and

to determine the relative interest of each Account Participant in the Account at any given time. The Administrator shall provide to each Account Participant an annual statement of its funds held in the Account (the "Account Assets") and each such statement shall be deemed to be correct and final upon receipt thereof by the respective Account Participant, unless the Account Participant notifies the Administrator in writing to the contrary within 30 days of the date of delivery of such statement; *provided*, the Administrator shall be excused from such reporting obligation to the extent information is not available from or timely provided by Madoff. The Administrator shall not be responsible for any other reporting.

5.    The Account Participants understand and acknowledge that the Administrator shall have no discretionary authority over the investment of assets held in the Account; except the Administrator shall have the right to cause the Accountant Participant's interest in the Account to be liquidated in connection with the resignation by the Administrator as provided in Section 8.

-3-

6.      The Administrator (including each Predecessor), American Securities, L.P. and any of their respective affiliates, partners, members, officers, directors, employees and authorized persons, and members of the family of William Rosenwald, including his issue, and trusts for the benefit of members of the family of William Rosenwald (collectively, the "Indemnitees") shall not be liable for, and each Account Participant severally (but not jointly) agrees to indemnify and hold harmless each Indemnitee for, any action taken or omitted by it or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder, if any, in the absence of willful misconduct or actual fraud on its part. In no event shall any Indemnitee be liable (i) for the Administrator's acting in accordance with or relying upon any instruction, notice, demand, certificate or document from Madoff or any Account Participant or any person or entity acting on behalf of Madoff or any Account Participant, (ii) for any consequential, punitive or special damages, (iii),for the acts or omissions of its nominees, correspondents, designees or subagents, or (iv) for the performance of the Account or the actions or inactions of Madoff or its designee, including any failure to deliver timely any information to the Administrator, any failure to invest any amounts deposited in the Account or any failure to distribute, or delay in distributing, any amounts to the Administrator.

7.      The Administrator does not have any interest in the Account or Account Assets. Each Account Participant shall be responsible for and shall reimburse the Administrator upon demand for any transfer taxes or other taxes relating to the Account Participant's interest in the Account or ownership of the Account Assets and shall indemnify and hold harmless the Administrator for any such taxes the Administrator is obligated to pay. Any distributions from the Account shall be subject to withholding regulations then in force relating to United States federal, state and local taxes. Each Account Participant will provide the Administrator promptly with a completed Form W-9 (attached), and upon request, with any other required forms.

8.      The Administrator may resign at any time upon written notice to the Account Participants, which resignation shall be effective upon the earlier of the next scheduled date for withdrawals from the Account or 35 days following such notice. This Agreement shall terminate upon the distribution of all Account Assets from the Account. The provisions of Sections 6, 7 and 11 shall survive termination of this Agreement and/or the resignation of the Administrator. The Administrator also may resign at any time with respect to a particular Account Participant.

9.      This Agreement shall not be assignable by any Account Participant without the prior written consent of the Administrator.

10.     Each Account Participant hereby appoints the Administrator as its attorney-in-fact in connection with filing required certificates, notices and documents relating to the formation, maintenance and dissolution of the Account.

11.     The Administrator shall not receive any compensation for its services. Account Participants shall be responsible for all expenses, disbursements and advances incurred or made by the Administrator in connection with this Agreement or the Account, including without limitation with respect to accounting and legal expenses and any insurance or bond that the Administrator may (although is not required to) maintain in respect of the Account and the amounts held therein. The Account Participants shall bear such amounts *pro rata* in accordance

-4-

with their then respective interests in the Account, If such amounts are paid by the Administrator, Account Participants shall reimburse the Administrator for such amounts on the same *pro rata* basis. The Administrator may debit the Account for such amounts without prior notice to the Account Participants and subsequently cause such amounts to be allocated *pro rata* to the Account Participants in accordance with their respective interests at the time such amounts were incurred or paid. Notwithstanding the two preceding sentences, to the extent any such expenses, disbursements or advances are attributable to a particular Account Participant, the Administrator may allocate the amount to such Account Participant and debit the sub account of such Account Participant without prior notice.

12.    The Administrator shall make available upon request to an Account Participant a copy of any insurance policy or bond in effect relating to the Account, it being understood that the Administrator shall have no obligation to maintain any such insurance policy or bond, but may do so in its discretion.

13.    (a)    All notices, instructions or other communication shall be in writing and shall be deemed given if delivered personally, against written receipt, or mailed by overnight courier or registered or certified mail (return receipt requested), postage prepaid, to the Account Participants, to the addresses on file with the Administrator, and to the Administrator, to the following address: P.J. Administrator LLC, 666 Third Avenue, 29th Floor, New York, New York 10017, Attn.: David P. Steinmann and Wallace Aptman; provided that any such notice, instruction or communication from an Account Participant to be effective must clearly include, in bold, capitalized letters, prominently the words **"NOTICE UNDER MADOFF AGREEMENT"**, both in the body of the notice and on any envelope used to transmit the notice. The Administrator may amend its address for notice by giving notice of such change under this Section to the other parties. Each other party may amend its address for notice by giving notice of such change under this Section to the Administrator.

(b)    This Agreement shall be interpreted, construed, enforced and administered in accordance with the laws of the State of New York (without regard to conflicts of law rules). Except as otherwise permitted herein, this Agreement may be modified only by a written amendment signed by the Administrator and the Account Participants to be affected, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged. The rights and remedies conferred upon the parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional or subsequent rights or remedies. The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect. This Agreement shall not be construed to create among the parties, or their respective successors or assigns, the relationship of co-partners, joint venturers or any other similar relationship, the existence of which hereby is expressly denied by each of the parties. This Agreement shall constitute the entire agreement of the parties relating to the subject matter and supersedes all prior oral or written agreements in regard thereto. This Agreement may be executed by each of the parties hereto in any number of counterparts, on a single Schedule A on which all parties are named or on multiple Schedules A with one or more parties named, each of

which shall be deemed to be an original and all such counterparts shall together constitute one and the same agreement.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the day and year first written above.

**ADMINISTRATOR:**

P.J. ADMINISTRATOR LLC

By: _____
      Name:  David P. Steinmann
      Title:    Authorized Signatory


**ACCOUNT PARTICIPANTS:**

See Signatures on Schedule A

SSL-DOCS2 70067954v16

Schedule A

ACCOUNT PARTICIPANTS

Name and Address

Neil E. Botwinoff IRA
325 East 72nd Street
New York, New York 10021

_____
Neil E. Botwinoff

## ACCOUNT ADMINISTRATION AGREEMENT

ACCOUNT ADMINISTRATION AGREEMENT, dated as of April 2, 2003, by and among P.J. Administrator LLC, as administrator (the "Administrator"), and the account participants set forth on <u>Schedule A</u> (each, an "Account Participant," and collectively, the "Account Participants").

### WITNESSETH

WHEREAS, each Account Participant has invested funds in a discretionary investment management account (the "Account") managed by Bernard L. Madoff Securities LLC or one or more of its affiliates ("Madoff") or desires to do so;

WHEREAS, each Account Participant who has invested funds in the Account desires to reconfirm the basis on which the Administrator (or its predecessors or persons performing similar functions (collectively, the "Predecessors")) has been acting for the Account Participant throughout the period the Account Participant has had its monies managed by Madoff;

WHEREAS, each Account Participant desires to set forth the basis on which the Administrator hereafter will act;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    This Agreement shall take effect as of April 2, 2003.

2.    Each Account Participant hereby appoints the Administrator to serve as administrator for the Account in accordance with the terms of this Agreement and the Administrator hereby accepts such appointment. Each Account Participant acknowledges that the Administrator serves as administrator for multiple Account Participants in the Account. The Account shall be subject to the account agreement between the Administrator and Madoff, as such agreement may be in effect from time to time (the "Account Agreement"), a copy of the current version of which (as of the date hereof) is attached hereto. Each Account Participant who has invested its assets in the Account acknowledges that the Administrator and any Predecessor have acted on a basis substantially in accord with the terms of this Agreement throughout the period the Account Participant has had its monies managed by Madoff and ratifies all actions taken in respect of the Account before the date of this Agreement. Each Account Participant agrees to keep a minimum of $100,000 in the Account; provided that such minimum may be waived by the Administrator.

3.    Each Account Participant acknowledges that the Administrator and the Predecessors have not served, and the Administrator will not serve, as the Account Participant's investment adviser, or in any other fiduciary capacity, in respect of the Account. Each Account Participant acknowledges that neither the Administrator nor any Predecessor has made any recommendation or representation, express or implied:

- that an investment with Madoff is a suitable investment for such Account Participant;

- about Madoff or its activities or investment style or that the Administrator will monitor them, or that the Predecessor has monitored them, in any manner;

- that the Administrator or any Predecessor has performed, or that the Administrator will perform, any due diligence inquiry about Madoff or its activities or investment style;

- about the risks associated with an investment with Madoff; or

- about any prior or future performance of an investment with Madoff.

Each Account Participant agrees that the Administrator and each Predecessor had, and the Administrator has, no duty to make any evaluation concerning any of the foregoing matters on behalf of any Account Participant or to communicate any such evaluation made, directly or indirectly, on behalf of members of the family of William Rosenwald or accounts for their benefit. Copies of documentation provided to the Administrator by Madoff relating to the Account are available to the Account Participants upon request. Each Account Participant represents that the Account Participant has satisfied itself as to the appropriateness of its investment with Madoff, has not relied on the Administrator or any Predecessor or any person affiliated with the Administrator or any Predecessor in making its investment decision and is making the investment decision about Madoff independent of any other Account Participant. Each Account Participant represents that it has not relied, and will not rely, on any statements, whether or not expressed as an opinion, of the Administrator or any Predecessor (or any person in any way related to any of them) concerning anything about Madoff or an investment with Madoff. Each Account Participant agrees that neither the Administrator nor any other person shall have any duty to disclose to any Account Participant the investment decision of, any information received from, or other action of any other Account Participant.

4.    The Administrator shall have only the following duties relating to the Account and no other duties shall be inferred or implied:

(a)    The Administrator shall receive all correspondence and communications from Madoff or its designee concerning the Account and the assets held in the Account, including but not limited to account statements, tax forms, legal and contractual notices, proxy statements and other reports from issuers. The Administrator shall use commercially reasonable efforts to deliver to Madoff or its designee instructions or other communications concerning the addition or withdrawal of funds to the Account in accordance with the instructions of the Account Participants, to the extent consistent with the Account Agreement.

(b)    The Administrator shall use commercially reasonable efforts:

-2-

- to distribute to the Account Participants *pro rata* in accordance with their relative interests in the Account, all cash, securities or other assets distributed out of the Account by Madoff (other than in connection with a withdrawal by a particular Account Participant);

- to deliver over to Madoff, for deposit into the Account, all cash received for deposit from an Account Participant; and

- upon a withdrawal from the Account of any amount by an Account Participant, to distribute the amount, net of any reductions contemplated by this Agreement, to such Account Participant within a reasonable period of time after receipt thereof.

(c)    Each Account Participant agrees to provide written notice of withdrawal of funds from the Account or deposit of funds into the Account to the Administrator at least 10 business days before the effective date of such withdrawal or deposit. Each Account Participant recognizes that Madoff, from time to time, may not accept investments, may return investments and currently accepts investments and distributes from the Account at month-end only. The Administrator, in its sole discretion, at any time may refuse to accept additional funds for inclusion in the Account.

(d)    The Administrator shall use commercially reasonable efforts to maintain such records concerning the Account sufficient to track

- all deposits to and distributions from the Account,

- all earnings and losses in respect of the Account, and

- any expenses or other charges or amounts that may be charged to or deducted from the Account or that otherwise are the responsibility of one or more of the Account Participants under this Agreement, and

to determine the relative interest of each Account Participant in the Account at any given time. The Administrator shall provide to each Account Participant an annual statement of its funds held in the Account (the "Account Assets") and each such statement shall be deemed to be correct and final upon receipt thereof by the respective Account Participant, unless the Account Participant notifies the Administrator in writing to the contrary within 30 days of the date of delivery of such statement; *provided*, the Administrator shall be excused from such reporting obligation to the extent information is not available from or timely provided by Madoff. The Administrator shall not be responsible for any other reporting.

5.    The Account Participants understand and acknowledge that the Administrator shall have no discretionary authority over the investment of assets held in the Account; except the Administrator shall have the right to cause the Accountant Participant's interest in the Account to be liquidated in connection with the resignation by the Administrator as provided in Section 8.

-3-

6.    The Administrator (including each Predecessor), American Securities, L.P. and any of their respective affiliates, partners, members, officers, directors, employees and authorized persons, and members of the family of William Rosenwald, including his issue, and trusts for the benefit of members of the family of William Rosenwald (collectively, the "Indemnitees") shall not be liable for, and each Account Participant severally (but not jointly) agrees to indemnify and hold harmless each Indemnitee for, any action taken or omitted by it or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder, if any, in the absence of willful misconduct or actual fraud on its part. In no event shall any Indemnitee be liable (i) for the Administrator's acting in accordance with or relying upon any instruction, notice, demand, certificate or document from Madoff or any Account Participant or any person or entity acting on behalf of Madoff or any Account Participant, (ii) for any consequential, punitive or special damages, (iii),for the acts or omissions of its nominees, correspondents, designees or subagents, or (iv) for the performance of the Account or the actions or inactions of Madoff or its designee, including any failure to deliver timely any information to the Administrator, any failure to invest any amounts deposited in the Account or any failure to distribute, or delay in distributing, any amounts to the Administrator.

7.    The Administrator does not have any interest in the Account or Account Assets. Each Account Participant shall be responsible for and shall reimburse the Administrator upon demand for any transfer taxes or other taxes relating to the Account Participant's interest in the Account or ownership of the Account Assets and shall indemnify and hold harmless the Administrator for any such taxes the Administrator is obligated to pay. Any distributions from the Account shall be subject to withholding regulations then in force relating to United States federal, state and local taxes. Each Account Participant will provide the Administrator promptly with a completed Form W-9 (attached), and upon request, with any other required forms.

8.    The Administrator may resign at any time upon written notice to the Account Participants, which resignation shall be effective upon the earlier of the next scheduled date for withdrawals from the Account or 35 days following such notice. This Agreement shall terminate upon the distribution of all Account Assets from the Account. The provisions of Sections 6, 7 and 11 shall survive termination of this Agreement and/or the resignation of the Administrator. The Administrator also may resign at any time with respect to a particular Account Participant.

9.    This Agreement shall not be assignable by any Account Participant without the prior written consent of the Administrator.

10.    Each Account Participant hereby appoints the Administrator as its attorney-in-fact in connection with filing required certificates, notices and documents relating to the formation, maintenance and dissolution of the Account.

11.    The Administrator shall not receive any compensation for its services. Account Participants shall be responsible for all expenses, disbursements and advances incurred or made by the Administrator in connection with this Agreement or the Account, including without limitation with respect to accounting and legal expenses and any insurance or bond that the Administrator may (although is not required to) maintain in respect of the Account and the amounts held therein. The Account Participants shall bear such amounts *pro rata* in accordance

-4-

with their then respective interests in the Account, If such amounts are paid by the Administrator, Account Participants shall reimburse the Administrator for such amounts on the same *pro rata* basis. The Administrator may debit the Account for such amounts without prior notice to the Account Participants and subsequently cause such amounts to be allocated *pro rata* to the Account Participants in accordance with their respective interests at the time such amounts were incurred or paid. Notwithstanding the two preceding sentences, to the extent any such expenses, disbursements or advances are attributable to a particular Account Participant, the Administrator may allocate the amount to such Account Participant and debit the sub account of such Account Participant without prior notice.

      12.    The Administrator shall make available upon request to an Account Participant a copy of any insurance policy or bond in effect relating to the Account, it being understood that the Administrator shall have no obligation to maintain any such insurance policy or bond, but may do so in its discretion.

      13.    (a)    All notices, instructions or other communication shall be in writing and shall be deemed given if delivered personally, against written receipt, or mailed by overnight courier or registered or certified mail (return receipt requested), postage prepaid, to the Account Participants, to the addresses on file with the Administrator, and to the Administrator, to the following address: P.J. Administrator LLC, 666 Third Avenue, 29th Floor, New York, New York 10017, Attn.: David P. Steinmann and Wallace Aptman; provided that any such notice, instruction or communication from an Account Participant to be effective must clearly include, in bold, capitalized letters, prominently the words "NOTICE UNDER MADOFF AGREEMENT", both in the body of the notice and on any envelope used to transmit the notice. The Administrator may amend its address for notice by giving notice of such change under this Section to the other parties. Each other party may amend its address for notice by giving notice of such change under this Section to the Administrator.

      (b)    This Agreement shall be interpreted, construed, enforced and administered in accordance with the laws of the State of New York (without regard to conflicts of law rules). Except as otherwise permitted herein, this Agreement may be modified only by a written amendment signed by the Administrator and the Account Participants to be affected, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged. The rights and remedies conferred upon the parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional or subsequent rights or remedies. The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect. This Agreement shall not be construed to create among the parties, or their respective successors or assigns, the relationship of co-partners, joint venturers or any other similar relationship, the existence of which hereby is expressly denied by each of the parties. This Agreement shall constitute the entire agreement of the parties relating to the subject matter and supersedes all prior oral or written agreements in regard thereto. This Agreement may be executed by each of the parties hereto in any number of counterparts, on a single Schedule A on which all parties are named or on multiple Schedules A with one or more parties named, each of

-5-

which shall be deemed to be an original and all such counterparts shall together constitute one and the same agreement.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the day and year first written above.

**ADMINISTRATOR:**

P.J. ADMINISTRATOR LLC

By: _____

Name:  David P. Steinmann
Title:   Authorized Signatory

**ACCOUNT PARTICIPANTS:**

See Signatures on <u>Schedule A</u>

-6-

Schedule A

## ACCOUNT PARTICIPANTS

Robert E. Helpern IRA
50 Sutton Place South, Apt. 16A
New York, New York 10022

_____
Robert E. Helpern

## ACCOUNT ADMINISTRATION AGREEMENT

ACCOUNT ADMINISTRATION AGREEMENT, dated as of April 2, 2003, by and among P.J. Administrator LLC, as administrator (the "Administrator"), and the account participants set forth on Schedule A (each, an "Account Participant," and collectively, the "Account Participants").

### WITNESSETH

WHEREAS, each Account Participant has invested funds in a discretionary investment management account (the "Account") managed by Bernard L. Madoff Securities LLC or one or more of its affiliates ("Madoff") or desires to do so;

WHEREAS, each Account Participant who has invested funds in the Account desires to reconfirm the basis on which the Administrator (or its predecessors or persons performing similar functions (collectively, the "Predecessors")) has been acting for the Account Participant throughout the period the Account Participant has had its monies managed by Madoff;

WHEREAS, each Account Participant desires to set forth the basis on which the Administrator hereafter will act;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.      This Agreement shall take effect as of April 2, 2003.

2.      Each Account Participant hereby appoints the Administrator to serve as administrator for the Account in accordance with the terms of this Agreement and the Administrator hereby accepts such appointment. Each Account Participant acknowledges that the Administrator serves as administrator for multiple Account Participants in the Account. The Account shall be subject to the account agreement between the Administrator and Madoff, as such agreement may be in effect from time to time (the "Account Agreement"), a copy of the current version of which (as of the date hereof) is attached hereto. Each Account Participant who has invested its assets in the Account acknowledges that the Administrator and any Predecessor have acted on a basis substantially in accord with the terms of this Agreement throughout the period the Account Participant has had its monies managed by Madoff and ratifies all actions taken in respect of the Account before the date of this Agreement. Each Account Participant agrees to keep a minimum of $100,000 in the Account; provided that such minimum may be waived by the Administrator.

3.      Each Account Participant acknowledges that the Administrator and the Predecessors have not served, and the Administrator will not serve, as the Account Participant's investment adviser, or in any other fiduciary capacity, in respect of the Account. Each Account Participant acknowledges that neither the Administrator nor any Predecessor has made any recommendation or representation, express or implied:

- that an investment with Madoff is a suitable investment for such Account Participant;

- about Madoff or its activities or investment style or that the Administrator will monitor them, or that the Predecessor has monitored them, in any manner;

- that the Administrator or any Predecessor has performed, or that the Administrator will perform, any due diligence inquiry about Madoff or its activities or investment style;

- about the risks associated with an investment with Madoff; or

- about any prior or future performance of an investment with Madoff.

Each Account Participant agrees that the Administrator and each Predecessor had, and the Administrator has, no duty to make any evaluation concerning any of the foregoing matters on behalf of any Account Participant or to communicate any such evaluation made, directly or indirectly, on behalf of members of the family of William Rosenwald or accounts for their benefit. Copies of documentation provided to the Administrator by Madoff relating to the Account are available to the Account Participants upon request. Each Account Participant represents that the Account Participant has satisfied itself as to the appropriateness of its investment with Madoff, has not relied on the Administrator or any Predecessor or any person affiliated with the Administrator or any Predecessor in making its investment decision and is making the investment decision about Madoff independent of any other Account Participant. Each Account Participant represents that it has not relied, and will not rely, on any statements, whether or not expressed as an opinion, of the Administrator or any Predecessor (or any person in any way related to any of them) concerning anything about Madoff or an investment with Madoff. Each Account Participant agrees that neither the Administrator nor any other person shall have any duty to disclose to any Account Participant the investment decision of, any information received from, or other action of any other Account Participant.

4.      The Administrator shall have only the following duties relating to the Account and no other duties shall be inferred or implied:

(a)      The Administrator shall receive all correspondence and communications from Madoff or its designee concerning the Account and the assets held in the Account, including but not limited to account statements, tax forms, legal and contractual notices, proxy statements and other reports from issuers. The Administrator shall use commercially reasonable efforts to deliver to Madoff or its designee instructions or other communications concerning the addition or withdrawal of funds to the Account in accordance with the instructions of the Account Participants, to the extent consistent with the Account Agreement.

(b)      The Administrator shall use commercially reasonable efforts:

-2-

- to distribute to the Account Participants *pro rata* in accordance with their relative interests in the Account, all cash, securities or other assets distributed out of the Account by Madoff (other than in connection with a withdrawal by a particular Account Participant);

- to deliver over to Madoff, for deposit into the Account, all cash received for deposit from an Account Participant; and

- upon a withdrawal from the Account of any amount by an Account Participant, to distribute the amount, net of any reductions contemplated by this Agreement, to such Account Participant within a reasonable period of time after receipt thereof.

(c)    Each Account Participant agrees to provide written notice of withdrawal of funds from the Account or deposit of funds into the Account to the Administrator at least 10 business days before the effective date of such withdrawal or deposit. Each Account Participant recognizes that Madoff, from time to time, may not accept investments, may return investments and currently accepts investments and distributes from the Account at month-end only. The Administrator, in its sole discretion, at any time may refuse to accept additional funds for inclusion in the Account.

(d)    The Administrator shall use commercially reasonable efforts to maintain such records concerning the Account sufficient to track

- all deposits to and distributions from the Account,

- all earnings and losses in respect of the Account, and

- any expenses or other charges or amounts that may be charged to or deducted from the Account or that otherwise are the responsibility of one or more of the Account Participants under this Agreement, and

to determine the relative interest of each Account Participant in the Account at any given time. The Administrator shall provide to each Account Participant an annual statement of its funds held in the Account (the "Account Assets") and each such statement shall be deemed to be correct and final upon receipt thereof by the respective Account Participant, unless the Account Participant notifies the Administrator in writing to the contrary within 30 days of the date of delivery of such statement; *provided*, the Administrator shall be excused from such reporting obligation to the extent information is not available from or timely provided by Madoff. The Administrator shall not be responsible for any other reporting.

5.    The Account Participants understand and acknowledge that the Administrator shall have no discretionary authority over the investment of assets held in the Account; except the Administrator shall have the right to cause the Accountant Participant's interest in the Account to be liquidated in connection with the resignation by the Administrator as provided in Section 8.

6.      The Administrator (including each Predecessor), American Securities, L.P. and any of their respective affiliates, partners, members, officers, directors, employees and authorized persons, and members of the family of William Rosenwald, including his issue, and trusts for the benefit of members of the family of William Rosenwald (collectively, the "Indemnitees") shall not be liable for, and each Administrator's acting in accordance with or agrees to indemnify and hold harmless each Indemnitee for, any action taken or omitted by it or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder, if any, in the absence of willful misconduct or actual fraud on its part. In no event shall any Indemnitee be liable (i) for the Administrator's acting in accordance with or relying upon any instruction, notice, demand, certificate or document from Madoff or any Account Participant or any person or entity acting on behalf of Madoff or any Account Participant, (ii) for any consequential, punitive or special damages, (iii) for the acts or omissions of its nominees, correspondents, designees or subagents, or (iv) for the performance of the Account or the actions or inactions of Madoff or its designee, including any failure to deliver timely any information to the Administrator, any failure to invest any amounts deposited in the Account or any failure to distribute, or delay in distributing, any amounts to the Administrator.

7.      The Administrator does not have any interest in the Account or Account Assets. Each Account Participant shall be responsible for and shall reimburse the Administrator upon demand for any transfer taxes or other taxes relating to the Account Participant's interest in the Account or ownership of the Account Assets and shall indemnify and hold harmless the Administrator for any such taxes the Administrator is obligated to pay. Any distributions from the Account shall be subject to withholding regulations then in force relating to United States federal, state and local taxes. Each Account Participant will provide the Administrator promptly with a completed Form W-9 (attached), and upon request, with any other required forms.

8.      The Administrator may resign at any time upon written notice to the Account Participants, which resignation shall be effective upon the earlier of the next scheduled date for withdrawals from the Account or 35 days following such notice. This Agreement shall terminate upon the distribution of all Account Assets from the Account. The provisions of Sections 6, 7 and 11 shall survive termination of this Agreement and/or the resignation of the Administrator. The Administrator also may resign at any time with respect to a particular Account Participant.

9.      This Agreement shall not be assignable by any Account Participant without the prior written consent of the Administrator.

10.     Each Account Participant hereby appoints the Administrator as its attorney-in-fact in connection with filing required certificates, notices and documents relating to the formation, maintenance and dissolution of the Account.

11.     The Administrator shall not receive any compensation for its services. Account Participants shall be responsible for all expenses, disbursements and advances incurred or made by the Administrator in connection with this Agreement or the Account, including without limitation with respect to accounting and legal expenses and any insurance or bond that the Administrator may (although is not required to) maintain in respect of the Account and the amounts held therein. The Account Participants shall bear such amounts *pro rata* in accordance

-4-

with their then respective interests in the Account, If such amounts are paid by the Administrator, Account Participants shall reimburse the Administrator for such amounts on the same *pro rata* basis. The Administrator may debit the Account for such amounts without prior notice to the Account Participants and subsequently cause such amounts to be allocated *pro rata* to the Account Participants in accordance with their respective interests at the time such amounts were incurred or paid. Notwithstanding the two preceding sentences, to the extent any such expenses, disbursements or advances are attributable to a particular Account Participant, the Administrator may allocate the amount to such Account Participant and debit the sub account of such Account Participant without prior notice.

12.    The Administrator shall make available upon request to an Account Participant a copy of any insurance policy or bond in effect relating to the Account, it being understood that the Administrator shall have no obligation to maintain any such insurance policy or bond, but may do so in its discretion.

13.    (a)    All notices, instructions or other communication shall be in writing and shall be deemed given if delivered personally, against written receipt, or mailed by overnight courier or registered or certified mail (return receipt requested), postage prepaid, to the Account Participants, to the addresses on file with the Administrator, and to the Administrator, to the following address: P.J. Administrator LLC, 666 Third Avenue, 29th Floor, New York, New York 10017, Attn.: David P. Steinmann and Wallace Aptman; provided that any such notice, instruction or communication from an Account Participant to be effective must clearly include, in bold, capitalized letters, prominently the words "NOTICE UNDER MADOFF AGREEMENT", both in the body of the notice and on any envelope used to transmit the notice. The Administrator may amend its address for notice by giving notice of such change under this Section to the other parties. Each other party may amend its address for notice by giving notice of such change under this Section to the Administrator.

(b)    This Agreement shall be interpreted, construed, enforced and administered in accordance with the laws of the State of New York (without regard to conflicts of law rules). Except as otherwise permitted herein, this Agreement may be modified only by a written amendment signed by the Administrator and the Account Participants to be affected, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged. The rights and remedies conferred upon the parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional or subsequent rights or remedies. The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect. This Agreement shall not be construed to create among the parties, or their respective successors or assigns, the relationship of co-partners, joint venturers or any other similar relationship, the existence of which hereby is expressly denied by each of the parties. This Agreement shall constitute the entire agreement of the parties relating to the subject matter and supersedes all prior oral or written agreements in regard thereto. This Agreement may be executed by each of the parties hereto in any number of counterparts, on a single Schedule A on which all parties are named or on multiple Schedules A with one or more parties named, each of

SSL-DOCS2 70067954v16

which shall be deemed to be an original and all such counterparts shall together constitute one and the same agreement.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the day and year first written above.

**ADMINISTRATOR:**

P.J. ADMINISTRATOR LLC

By:

    Name:  David P. Steinmann
    Title:    Authorized Signatory

**ACCOUNT PARTICIPANTS:**

See Signatures on <u>Schedule A</u>

-6-

Schedule A

ACCOUNT PARTICIPANTS

Joel S. Hirschtritt IRA
1185 Park Avenue, Apt. 3A
New York, New York 10128

_____
Joel S. Hirschtritt

## ACCOUNT ADMINISTRATION AGREEMENT

ACCOUNT ADMINISTRATION AGREEMENT, dated as of April 2, 2003, by and among P.J. Administrator LLC, as administrator (the "Administrator"), and the account participants set forth on <u>Schedule A</u> (each, an "Account Participant," and collectively, the "Account Participants").

### WITNESSETH

WHEREAS, each Account Participant has invested funds in a discretionary investment management account (the "Account") managed by Bernard L. Madoff Securities LLC or one or more of its affiliates ("Madoff") or desires to do so;

WHEREAS, each Account Participant who has invested funds in the Account desires to reconfirm the basis on which the Administrator (or its predecessors or persons performing similar functions (collectively, the "Predecessors")) has been acting for the Account Participant throughout the period the Account Participant has had its monies managed by Madoff;

WHEREAS, each Account Participant desires to set forth the basis on which the Administrator hereafter will act;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.      This Agreement shall take effect as of April 2, 2003.

2.      Each Account Participant hereby appoints the Administrator to serve as administrator for the Account in accordance with the terms of this Agreement and the Administrator hereby accepts such appointment. Each Account Participant acknowledges that the Administrator serves as administrator for multiple Account Participants in the Account. The Account shall be subject to the account agreement between the Administrator and Madoff, as such agreement may be in effect from time to time (the "Account Agreement"), a copy of the current version of which (as of the date hereof) is attached hereto. Each Account Participant who has invested its assets in the Account acknowledges that the Administrator and any Predecessor have acted on a basis substantially in accord with the terms of this Agreement throughout the period the Account Participant has had its monies managed by Madoff and ratifies all actions taken in respect of the Account before the date of this Agreement. Each Account Participant agrees to keep a minimum of $100,000 in the Account; provided that such minimum may be waived by the Administrator.

3.      Each Account Participant acknowledges that the Administrator and the Predecessors have not served, and the Administrator will not serve, as the Account Participant's investment adviser, or in any other fiduciary capacity, in respect of the Account. Each Account Participant acknowledges that neither the Administrator nor any Predecessor has made any recommendation or representation, express or implied:

- that an investment with Madoff is a suitable investment for such Account Participant;

- about Madoff or its activities or investment style or that the Administrator will monitor them, or that the Predecessor has monitored them, in any manner;

- that the Administrator or any Predecessor has performed, or that the Administrator will perform, any due diligence inquiry about Madoff or its activities or investment style;

- about the risks associated with an investment with Madoff; or

- about any prior or future performance of an investment with Madoff.

Each Account Participant agrees that the Administrator and each Predecessor had, and the Administrator has, no duty to make any evaluation concerning any of the foregoing matters on behalf of any Account Participant or to communicate any such evaluation made, directly or indirectly, on behalf of members of the family of William Rosenwald or accounts for their benefit. Copies of documentation provided to the Administrator by Madoff relating to the Account are available to the Account Participants upon request. Each Account Participant represents that the Account Participant has satisfied itself as to the appropriateness of its investment with Madoff, has not relied on the Administrator or any Predecessor or any person affiliated with the Administrator or any Predecessor in making its investment decision and is making the investment decision about Madoff independent of any other Account Participant. Each Account Participant represents that it has not relied, and will not rely, on any statements, whether or not expressed as an opinion, of the Administrator or any Predecessor (or any person in any way related to any of them) concerning anything about Madoff or an investment with Madoff. Each Account Participant agrees that neither the Administrator nor any other person shall have any duty to disclose to any Account Participant the investment decision of, any information received from, or other action of any other Account Participant.

4.      The Administrator shall have only the following duties relating to the Account and no other duties shall be inferred or implied:

(a)      The Administrator shall receive all correspondence and communications from Madoff or its designee concerning the Account and the assets held in the Account, including but not limited to account statements, tax forms, legal and contractual notices, proxy statements and other reports from issuers. The Administrator shall use commercially reasonable efforts to deliver to Madoff or its designee instructions or other communications concerning the addition or withdrawal of funds to the Account in accordance with the instructions of the Account Participants, to the extent consistent with the Account Agreement.

(b)      The Administrator shall use commercially reasonable efforts:

-2-

- to distribute to the Account Participants *pro rata* in accordance with their relative interests in the Account, all cash, securities or other assets distributed out of the Account by Madoff (other than in connection with a withdrawal by a particular Account Participant);

- to deliver over to Madoff, for deposit into the Account, all cash received for deposit from an Account Participant; and

- upon a withdrawal from the Account of any amount by an Account Participant, to distribute the amount, net of any reductions contemplated by this Agreement, to such Account Participant within a reasonable period of time after receipt thereof.

(c)     Each Account Participant agrees to provide written notice of withdrawal of funds from the Account or deposit of funds into the Account to the Administrator at least 10 business days before the effective date of such withdrawal or deposit. Each Account Participant recognizes that Madoff, from time to time, may not accept investments, may return investments and currently accepts investments and distributes from the Account at month-end only. The Administrator, in its sole discretion, at any time may refuse to accept additional funds for inclusion in the Account.

(d)     The Administrator shall use commercially reasonable efforts to maintain such records concerning the Account sufficient to track

- all deposits to and distributions from the Account,

- all earnings and losses in respect of the Account, and

- any expenses or other charges or amounts that may be charged to or deducted from the Account or that otherwise are the responsibility of one or more of the Account Participants under this Agreement, and

to determine the relative interest of each Account Participant in the Account at any given time. The Administrator shall provide to each Account Participant an annual statement of its funds held in the Account (the "Account Assets") and each such statement shall be deemed to be correct and final upon receipt thereof by the respective Account Participant, unless the Account Participant notifies the Administrator in writing to the contrary within 30 days of the date of delivery of such statement; *provided*, the Administrator shall be excused from such reporting obligation to the extent information is not available from or timely provided by Madoff. The Administrator shall not be responsible for any other reporting.

5.     The Account Participants understand and acknowledge that the Administrator shall have no discretionary authority over the investment of assets held in the Account; except the Administrator shall have the right to cause the Accountant Participant's interest in the Account to be liquidated in connection with the resignation by the Administrator as provided in Section 8.

SSL-DOCS2 70067954v16

6.    The Administrator (including each Predecessor), American Securities, L.P. and any of their respective affiliates, partners, members, officers, directors, employees and authorized persons, and members of the family of William Rosenwald, including his issue, and trusts for the benefit of members of the family of William Rosenwald (collectively, the "Indemnitees") shall not be liable for, and each Account Participant severally (but not jointly) agrees to indemnify and hold harmless each Indemnitee for, any action taken or omitted by it or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder, if any, in the absence of willful misconduct or actual fraud on its part.  In no event shall any Indemnitee be liable (i) for the Administrator's acting in accordance with or relying upon any instruction, notice, demand, certificate or document from Madoff or any Account Participant or any person or entity acting on behalf of Madoff or any Account Participant, (ii) for any consequential, punitive or special damages, (iii) for the acts or omissions of its nominees, correspondents, designees or subagents, or (iv) for the performance of the Account or the actions or inactions of Madoff or its designee, including any failure to deliver timely any information to the Administrator, any failure to invest any amounts deposited in the Account or any failure to distribute, or delay in distributing, any amounts to the Administrator.

7.    The Administrator does not have any interest in the Account or Account Assets.  Each Account Participant shall be responsible for and shall reimburse the Administrator upon demand for any transfer taxes or other taxes relating to the Account Participant's interest in the Account or ownership of the Account Assets and shall indemnify and hold harmless the Administrator for any such taxes the Administrator is obligated to pay.  Any distributions from the Account shall be subject to withholding regulations then in force relating to United States federal, state and local taxes.  Each Account Participant will provide the Administrator promptly with a completed Form W-9 (attached), and upon request, with any other required forms.

8.    The Administrator may resign at any time upon written notice to the Account Participants, which resignation shall be effective upon the earlier of the next scheduled date for withdrawals from the Account or 35 days following such notice.  This Agreement shall terminate upon the distribution of all Account Assets from the Account.  The provisions of Sections 6, 7 and 11 shall survive termination of this Agreement and/or the resignation of the Administrator.  The Administrator also may resign at any time with respect to a particular Account Participant.

9.    This Agreement shall not be assignable by any Account Participant without the prior written consent of the Administrator.

10.    Each Account Participant hereby appoints the Administrator as its attorney-in-fact in connection with filing required certificates, notices and documents relating to the formation, maintenance and dissolution of the Account.

11.    The Administrator shall not receive any compensation for its services.  Account Participants shall be responsible for all expenses, disbursements and advances incurred or made by the Administrator in connection with this Agreement or the Account, including without limitation with respect to accounting and legal expenses and any insurance or bond that the Administrator may (although is not required to) maintain in respect of the Account and the amounts held therein.  The Account Participants shall bear such amounts *pro rata* in accordance

-4-

with their then respective interests in the Account, If such amounts are paid by the Administrator, Account Participants shall reimburse the Administrator for such amounts on the same *pro rata* basis. The Administrator may debit the Account for such amounts without prior notice to the Account Participants and subsequently cause such amounts to be allocated *pro rata* to the Account Participants in accordance with their respective interests at the time such amounts were incurred or paid. Notwithstanding the two preceding sentences, to the extent any such expenses, disbursements or advances are attributable to a particular Account Participant, the Administrator may allocate the amount to such Account Participant and debit the sub account of such Account Participant without prior notice.

12.    The Administrator shall make available upon request to an Account Participant a copy of any insurance policy or bond in effect relating to the Account, it being understood that the Administrator shall have no obligation to maintain any such insurance policy or bond, but may do so in its discretion.

13.    (a)    All notices, instructions or other communication shall be in writing and shall be deemed given if delivered personally, against written receipt, or mailed by overnight courier or registered or certified mail (return receipt requested), postage prepaid, to the Account Participants, to the addresses on file with the Administrator, and to the Administrator, to the following address: P.J. Administrator LLC, 666 Third Avenue, 29th Floor, New York, New York 10017, Attn.: David P. Steinmann and Wallace Aptman; provided that any such notice, instruction or communication from an Account Participant to be effective must clearly include, in bold, capitalized letters, prominently the words "NOTICE UNDER MADOFF AGREEMENT", both in the body of the notice and on any envelope used to transmit the notice. The Administrator may amend its address for notice by giving notice of such change under this Section to the other parties. Each other party may amend its address for notice by giving notice of such change under this Section to the Administrator.

(b)    This Agreement shall be interpreted, construed, enforced and administered in accordance with the laws of the State of New York (without regard to conflicts of law rules). Except as otherwise permitted herein, this Agreement may be modified only by a written amendment signed by the Administrator and the Account Participants to be affected, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged. The rights and remedies conferred upon the parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional or subsequent rights or remedies. The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect. This Agreement shall not be construed to create among the parties, or their respective successors or assigns, the relationship of co-partners, joint venturers or any other similar relationship, the existence of which hereby is expressly denied by each of the parties. This Agreement shall constitute the entire agreement of the parties relating to the subject matter and supersedes all prior oral or written agreements in regard thereto. This Agreement may be executed by each of the parties hereto in any number of counterparts, on a single Schedule A on which all parties are named or on multiple Schedules A with one or more parties named, each of

-5-

which shall be deemed to be an original and all such counterparts shall together constitute one and the same agreement.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the day and year first written above.

**ADMINISTRATOR:**

P.J. ADMINISTRATOR LLC

By: _____

Name:   David P. Steinmann
Title:   Authorized Signatory

**ACCOUNT PARTICIPANTS:**

See Signatures on Schedule A

-6-

Schedule A

## ACCOUNT PARTICIPANTS

Ralph A. Siciliano IRA
424 East 52nd Street, Apt. A
New York, New York 10022

_Ralph A. Siciliano_
Ralph A. Siciliano

# ACCOUNT ADMINISTRATION AGREEMENT

ACCOUNT ADMINISTRATION AGREEMENT, dated as of April 2, 2003, by and among P.J. Administrator LLC, as administrator (the "Administrator"), and the account participants set forth on Schedule A (each, an "Account Participant," and collectively, the "Account Participants").

## WITNESSETH

WHEREAS, each Account Participant has invested funds in a discretionary investment management account (the "Account") managed by Bernard L. Madoff Securities LLC or one or more of its affiliates ("Madoff") or desires to do so;

WHEREAS, each Account Participant who has invested funds in the Account desires to reconfirm the basis on which the Administrator (or its predecessors or persons performing similar functions (collectively, the "Predecessors")) has been acting for the Account Participant throughout the period the Account Participant has had its monies managed by Madoff;

WHEREAS, each Account Participant desires to set forth the basis on which the Administrator hereafter will act;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.      This Agreement shall take effect as of April 2, 2003.

2.      Each Account Participant hereby appoints the Administrator to serve as administrator for the Account in accordance with the terms of this Agreement and the Administrator hereby accepts such appointment. Each Account Participant acknowledges that the Administrator serves as administrator for multiple Account Participants in the Account. The Account shall be subject to the account agreement between the Administrator and Madoff, as such agreement may be in effect from time to time (the "Account Agreement"), a copy of the current version of which (as of the date hereof) is attached hereto. Each Account Participant who has invested its assets in the Account acknowledges that the Administrator and any Predecessor have acted on a basis substantially in accord with the terms of this Agreement throughout the period the Account Participant has had its monies managed by Madoff and ratifies all actions taken in respect of the Account before the date of this Agreement. Each Account Participant agrees to keep a minimum of $100,000 in the Account; provided that such minimum may be waived by the Administrator.

3.      Each Account Participant acknowledges that the Administrator and the Predecessors have not served, and the Administrator will not serve, as the Account Participant's investment adviser, or in any other fiduciary capacity, in respect of the Account. Each Account Participant acknowledges that neither the Administrator nor any Predecessor has made any recommendation or representation, express or implied:

- that an investment with Madoff is a suitable investment for such Account Participant;

- about Madoff or its activities or investment style or that the Administrator will monitor them, or that the Predecessor has monitored them, in any manner;

- that the Administrator or any Predecessor has performed, or that the Administrator will perform, any due diligence inquiry about Madoff or its activities or investment style;

- about the risks associated with an investment with Madoff; or

- about any prior or future performance of an investment with Madoff.

Each Account Participant agrees that the Administrator and each Predecessor had, and the Administrator has, no duty to make any evaluation concerning any of the foregoing matters on behalf of any Account Participant or to communicate any such evaluation made, directly or indirectly, on behalf of members of the family of William Rosenwald or accounts for their benefit. Copies of documentation provided to the Administrator by Madoff relating to the Account are available to the Account Participants upon request. Each Account Participant represents that the Account Participant has satisfied itself as to the appropriateness of its investment with Madoff, has not relied on the Administrator or any Predecessor or any person affiliated with the Administrator or any Predecessor in making its investment decision and is making the investment decision about Madoff independent of any other Account Participant. Each Account Participant represents that it has not relied, and will not rely, on any statements, whether or not expressed as an opinion, of the Administrator or any Predecessor (or any person in any way related to any of them) concerning anything about Madoff or an investment with Madoff. Each Account Participant agrees that neither the Administrator nor any other person shall have any duty to disclose to any Account Participant the investment decision of, any information received from, or other action of any other Account Participant.

4.    The Administrator shall have only the following duties relating to the Account and no other duties shall be inferred or implied:

(a)    The Administrator shall receive all correspondence and communications from Madoff or its designee concerning the Account and the assets held in the Account, including but not limited to account statements, tax forms, legal and contractual notices, proxy statements and other reports from issuers. The Administrator shall use commercially reasonable efforts to deliver to Madoff or its designee instructions or other communications concerning the addition or withdrawal of funds to the Account in accordance with the instructions of the Account Participants, to the extent consistent with the Account Agreement.

(b)    The Administrator shall use commercially reasonable efforts:

- to distribute to the Account Participants *pro rata* in accordance with their relative interests in the Account, all cash, securities or other assets distributed out of the Account by Madoff (other than in connection with a withdrawal by a particular Account Participant);

- to deliver over to Madoff, for deposit into the Account, all cash received for deposit from an Account Participant; and

- upon a withdrawal from the Account of any amount by an Account Participant, to distribute the amount, net of any reductions contemplated by this Agreement, to such Account Participant within a reasonable period of time after receipt thereof.

(c)    Each Account Participant agrees to provide written notice of withdrawal of funds from the Account or deposit of funds into the Account to the Administrator at least 10 business days before the effective date of such withdrawal or deposit. Each Account Participant recognizes that Madoff, from time to time, may not accept investments, may return investments and currently accepts investments and distributes from the Account at month-end only. The Administrator, in its sole discretion, at any time may refuse to accept additional funds for inclusion in the Account.

(d)    The Administrator shall use commercially reasonable efforts to maintain such records concerning the Account sufficient to track

- all deposits to and distributions from the Account,

- all earnings and losses in respect of the Account, and

- any expenses or other charges or amounts that may be charged to or deducted from the Account or that otherwise are the responsibility of one or more of the Account Participants under this Agreement, and

to determine the relative interest of each Account Participant in the Account at any given time. The Administrator shall provide to each Account Participant an annual statement of its funds held in the Account (the "Account Assets") and each such statement shall be deemed to be correct and final upon receipt thereof by the respective Account Participant, unless the Account Participant notifies the Administrator in writing to the contrary within 30 days of the date of delivery of such statement; *provided,* the Administrator shall be excused from such reporting obligation to the extent information is not available from or timely provided by Madoff. The Administrator shall not be responsible for any other reporting.

5.    The Account Participants understand and acknowledge that the Administrator shall have no discretionary authority over the investment of assets held in the Account; except the Administrator shall have the right to cause the Accountant Participant's interest in the Account to be liquidated in connection with the resignation by the Administrator as provided in Section 8.

SSL-DOCS2 70067954v16

6.     The Administrator (including each Predecessor), American Securities, L.P. and any of their respective affiliates, partners, members, officers, directors, employees and authorized persons, and members of the family of William Rosenwald, including his issue, and trusts for the benefit of members of the family of William Rosenwald (collectively, the "Indemnitees") shall not be liable for, and each Account Participant severally (but not jointly) agrees to indemnify and hold harmless each Indemnitee for, any action taken or omitted by it or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder, if any, in the absence of willful misconduct or actual fraud on its part. In no event shall any Indemnitee be liable (i) for the Administrator's acting in accordance with or relying upon any instruction, notice, demand, certificate or document from Madoff or any Account Participant or any person or entity acting on behalf of Madoff or any Account Participant, (ii) for any consequential, punitive or special damages, (iii),for the acts or omissions of its nominees, correspondents, designees or subagents, or (iv) for the performance of the Account or the actions or inactions of Madoff or its designee, including any failure to deliver timely any information to the Administrator, any failure to invest any amounts deposited in the Account or any failure to distribute, or delay in distributing, any amounts to the Administrator.

7.     The Administrator does not have any interest in the Account or Account Assets. Each Account Participant shall be responsible for and shall reimburse the Administrator upon demand for any transfer taxes or other taxes relating to the Account Participant's interest in the Account or ownership of the Account Assets and shall indemnify and hold harmless the Administrator for any such taxes the Administrator is obligated to pay. Any distributions from the Account shall be subject to withholding regulations then in force relating to United States federal, state and local taxes. Each Account Participant will provide the Administrator promptly with a completed Form W-9 (attached); and upon request, with any other required forms.

8.     The Administrator may resign at any time upon written notice to the Account Participants, which resignation shall be effective upon the earlier of the next scheduled date for withdrawals from the Account or 35 days following such notice. This Agreement shall terminate upon the distribution of all Account Assets from the Account. The provisions of Sections 6, 7 and 11 shall survive termination of this Agreement and/or the resignation of the Administrator. The Administrator also may resign at any time with respect to a particular Account Participant.

9.     This Agreement shall not be assignable by any Account Participant without the prior written consent of the Administrator.

10.     Each Account Participant hereby appoints the Administrator as its attorney-in-fact in connection with filing required certificates, notices and documents relating to the formation, maintenance and dissolution of the Account.

11.     The Administrator shall not receive any compensation for its services. Account Participants shall be responsible for all expenses, disbursements and advances incurred or made by the Administrator in connection with this Agreement or the Account, including without limitation with respect to accounting and legal expenses and any insurance or bond that the Administrator may (although is not required to) maintain in respect of the Account and the amounts held therein. The Account Participants shall bear such amounts *pro rata* in accordance

-4-

with their then respective interests in the Account, If such amounts are paid by the Administrator, Account Participants shall reimburse the Administrator for such amounts on the same *pro rata* basis. The Administrator may debit the Account for such amounts without prior notice to the Account Participants and subsequently cause such amounts to be allocated *pro rata* to the Account Participants in accordance with their respective interests at the time such amounts were incurred or paid. Notwithstanding the two preceding sentences, to the extent any such expenses, disbursements or advances are attributable to a particular Account Participant, the Administrator may allocate the amount to such Account Participant and debit the sub account of such Account Participant without prior notice.

12.    The Administrator shall make available upon request to an Account Participant a copy of any insurance policy or bond in effect relating to the Account, it being understood that the Administrator shall have no obligation to maintain any such insurance policy or bond, but may do so in its discretion.

13.    (a)    All notices, instructions or other communication shall be in writing and shall be deemed given if delivered personally, against written receipt, or mailed by overnight courier or registered or certified mail (return receipt requested), postage prepaid, to the Account Participants, to the addresses on file with the Administrator, and to the Administrator, to the following address: P.J. Administrator LLC, 666 Third Avenue, 29th Floor, New York, New York 10017, Attn.: David P. Steinmann and Wallace Aptman; provided that any such notice, instruction or communication from an Account Participant to be effective must clearly include, in bold, capitalized letters, prominently the words "NOTICE UNDER MADOFF AGREEMENT", both in the body of the notice and on any envelope used to transmit the notice. The Administrator may amend its address for notice by giving notice of such change under this Section to the other parties. Each other party may amend its address for notice by giving notice of such change under this Section to the Administrator.

(b)    This Agreement shall be interpreted, construed, enforced and administered in accordance with the laws of the State of New York (without regard to conflicts of law rules). Except as otherwise permitted herein, this Agreement may be modified only by a written amendment signed by the Administrator and the Account Participants to be affected, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged. The rights and remedies conferred upon the parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional or subsequent rights or remedies. The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect. This Agreement shall not be construed to create among the parties, or their respective successors or assigns, the relationship of co-partners, joint venturers or any other similar relationship, the existence of which hereby is expressly denied by each of the parties. This Agreement shall constitute the entire agreement of the parties relating to the subject matter and supersedes all prior oral or written agreements in regard thereto. This Agreement may be executed by each of the parties hereto in any number of counterparts, on a single Schedule A on which all parties are named or on multiple Schedules A with one or more parties named, each of

-5-

which shall be deemed to be an original and all such counterparts shall together constitute one and the same agreement.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the day and year first written above.

**ADMINISTRATOR:**

P.J. ADMINISTRATOR LLC

By: _____

Name:   David P. Steinmann
Title:    Authorized Signatory

**ACCOUNT PARTICIPANTS:**

See Signatures on Schedule A

-6-

Schedule A

## ACCOUNT PARTICIPANTS

Vincent J. Syracuse IRA
76 Trumbull Road
Manhasset, New York 11030

_____
Vincent J. Syracuse

*PJ*
*Mat(5*

## ACCOUNT ADMINISTRATION AGREEMENT

ACCOUNT ADMINISTRATION AGREEMENT, dated as of April 2, 2003, by and among P.J. Administrator LLC, as administrator (the "Administrator"), and the account participants set forth on Schedule A (each, an "Account Participant," and collectively, the "Account Participants").

### WITNESSETH

WHEREAS, each Account Participant has invested funds in a discretionary investment management account (the "Account") managed by Bernard L. Madoff Securities LLC or one or more of its affiliates ("Madoff") or desires to do so;

WHEREAS, each Account Participant who has invested funds in the Account desires to reconfirm the basis on which the Administrator (or its predecessors or persons performing similar functions (collectively, the "Predecessors")) has been acting for the Account Participant throughout the period the Account Participant has had its monies managed by Madoff;

WHEREAS, each Account Participant desires to set forth the basis on which the Administrator hereafter will act;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.     This Agreement shall take effect as of April 2, 2003.

2.     Each Account Participant hereby appoints the Administrator to serve as administrator for the Account in accordance with the terms of this Agreement and the Administrator hereby accepts such appointment. Each Account Participant acknowledges that the Administrator serves as administrator for multiple Account Participants in the Account. The Account shall be subject to the account agreement between the Administrator and Madoff, as such agreement may be in effect from time to time (the "Account Agreement"), a copy of the current version of which (as of the date hereof) is attached hereto. Each Account Participant who has invested its assets in the Account acknowledges that the Administrator and any Predecessor have acted on a basis substantially in accord with the terms of this Agreement throughout the period the Account Participant has had its monies managed by Madoff and ratifies all actions taken in respect of the Account before the date of this Agreement. Each Account Participant agrees to keep a minimum of $100,000 in the Account; provided that such minimum may be waived by the Administrator.

3.     Each Account Participant acknowledges that the Administrator and the Predecessors have not served, and the Administrator will not serve, as the Account Participant's investment adviser, or in any other fiduciary capacity, in respect of the Account. Each Account Participant acknowledges that neither the Administrator nor any Predecessor has made any recommendation or representation, express or implied:

- that an investment with Madoff is a suitable investment for such Account Participant;

- about Madoff or its activities or investment style or that the Administrator will monitor them, or that the Predecessor has monitored them, in any manner;

- that the Administrator or any Predecessor has performed, or that the Administrator will perform, any due diligence inquiry about Madoff or its activities or investment style;

- about the risks associated with an investment with Madoff; or

- about any prior or future performance of an investment with Madoff.

Each Account Participant agrees that the Administrator and each Predecessor had, and the Administrator has, no duty to make any evaluation concerning any of the foregoing matters on behalf of any Account Participant or to communicate any such evaluation made, directly or indirectly, on behalf of members of the family of William Rosenwald or accounts for their benefit. Copies of documentation provided to the Administrator by Madoff relating to the Account are available to the Account Participants upon request. Each Account Participant represents that the Account Participant has satisfied itself as to the appropriateness of its investment with Madoff, has not relied on the Administrator or any Predecessor or any person affiliated with the Administrator or any Predecessor in making its investment decision and is making the investment decision about Madoff independent of any other Account Participant. Each Account Participant represents that it has not relied, and will not rely, on any statements, whether or not expressed as an opinion, of the Administrator or any Predecessor (or any person in any way related to any of them) concerning anything about Madoff or an investment with Madoff. Each Account Participant agrees that neither the Administrator nor any other person shall have any duty to disclose to any Account Participant the investment decision of, any information received from, or other action of any other Account Participant.

4.    The Administrator shall have only the following duties relating to the Account and no other duties shall be inferred or implied:

(a)    The Administrator shall receive all correspondence and communications from Madoff or its designee concerning the Account and the assets held in the Account, including but not limited to account statements, tax forms, legal and contractual notices, proxy statements and other reports from issuers. The Administrator shall use commercially reasonable efforts to deliver to Madoff or its designee instructions or other communications concerning the addition or withdrawal of funds to the Account in accordance with the instructions of the Account Participants, to the extent consistent with the Account Agreement.

(b)    The Administrator shall use commercially reasonable efforts:

-2-

- to distribute to the Account Participants *pro rata* in accordance with their relative interests in the Account, all cash, securities or other assets distributed out of the Account by Madoff (other than in connection with a withdrawal by a particular Account Participant);

- to deliver over to Madoff, for deposit into the Account, all cash received for deposit from an Account Participant; and

- upon a withdrawal from the Account of any amount by an Account Participant, to distribute the amount, net of any reductions contemplated by this Agreement, to such Account Participant within a reasonable period of time after receipt thereof.

(c)     Each Account Participant agrees to provide written notice of withdrawal of funds from the Account or deposit of funds into the Account to the Administrator at least 10 business days before the effective date of such withdrawal or deposit. Each Account Participant recognizes that Madoff, from time to time, may not accept investments, may return investments and currently accepts investments and distributes from the Account at month-end only. The Administrator, in its sole discretion, at any time may refuse to accept additional funds for inclusion in the Account.

(d)     The Administrator shall use commercially reasonable efforts to maintain such records concerning the Account sufficient to track

- all deposits to and distributions from the Account,

- all earnings and losses in respect of the Account, and

- any expenses or other charges or amounts that may be charged to or deducted from the Account or that otherwise are the responsibility of one or more of the Account Participants under this Agreement, and

to determine the relative interest of each Account Participant in the Account at any given time. The Administrator shall provide to each Account Participant an annual statement of its funds held in the Account (the "Account Assets") and each such statement shall be deemed to be correct and final upon receipt thereof by the respective Account Participant, unless the Account Participant notifies the Administrator in writing to the contrary within 30 days of the date of delivery of such statement; *provided*, the Administrator shall be excused from such reporting obligation to the extent information is not available from or timely provided by Madoff. The Administrator shall not be responsible for any other reporting.

5.     The Account Participants understand and acknowledge that the Administrator shall have no discretionary authority over the investment of assets held in the Account; except the Administrator shall have the right to cause the Accountant Participant's interest in the Account to be liquidated in connection with the resignation by the Administrator as provided in Section 8.

-3-

6.    The Administrator (including each Predecessor), American Securities, L.P. and any of their respective affiliates, partners, members, officers, directors, employees and authorized persons, and members of the family of William Rosenwald, including his issue, and trusts for the benefit of members of the family of William Rosenwald (collectively, the "Indemnitees") shall not be liable for, and each Account Participant severally (but not jointly) agrees to indemnify and hold harmless each Indemnitee for, any action taken or omitted by it or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder, if any, in the absence of willful misconduct or actual fraud on its part. In no event shall any Indemnitee be liable (i) for the Administrator's acting in accordance with or relying upon any instruction, notice, demand, certificate or document from Madoff or any Account Participant or any person or entity acting on behalf of Madoff or any Account Participant, (ii) for any consequential, punitive or special damages, (iii) for the acts or omissions of its nominees, correspondents, designees or subagents, or (iv) for the performance of the Account or the actions or inactions of Madoff or its designee, including any failure to deliver timely any information to the Administrator, any failure to invest any amounts deposited in the Account or any failure to distribute, or delay in distributing, any amounts to the Administrator.

7.    The Administrator does not have any interest in the Account or Account Assets. Each Account Participant shall be responsible for and shall reimburse the Administrator upon demand for any transfer taxes or other taxes relating to the Account Participant's interest in the Account or ownership of the Account Assets and shall indemnify and hold harmless the Administrator for any such taxes the Administrator is obligated to pay. Any distributions from the Account shall be subject to withholding regulations then in force relating to United States federal, state and local taxes. Each Account Participant will provide the Administrator promptly with a completed Form W-9 (attached), and upon request, with any other required forms.

8.    The Administrator may resign at any time upon written notice to the Account Participants, which resignation shall be effective upon the earlier of the next scheduled date for withdrawals from the Account or 35 days following such notice. This Agreement shall terminate upon the distribution of all Account Assets from the Account. The provisions of Sections 6, 7 and 11 shall survive termination of this Agreement and/or the resignation of the Administrator. The Administrator also may resign at any time with respect to a particular Account Participant.

9.    This Agreement shall not be assignable by any Account Participant without the prior written consent of the Administrator.

10.    Each Account Participant hereby appoints the Administrator as its attorney-in-fact in connection with filing required certificates, notices and documents relating to the formation, maintenance and dissolution of the Account.

11.    The Administrator shall not receive any compensation for its services. Account Participants shall be responsible for all expenses, disbursements and advances incurred or made by the Administrator in connection with this Agreement or the Account, including without limitation with respect to accounting and legal expenses and any insurance or bond that the Administrator may (although is not required to) maintain in respect of the Account and the amounts held therein. The Account Participants shall bear such amounts *pro rata* in accordance

-4-

with their then respective interests in the Account. If such amounts are paid by the Administrator, Account Participants shall reimburse the Administrator for such amounts on the same *pro rata* basis. The Administrator may debit the Account for such amounts without prior notice to the Account Participants and subsequently cause such amounts to be allocated *pro rata* to the Account Participants in accordance with their respective interests at the time such amounts were incurred or paid. Notwithstanding the two preceding sentences, to the extent any such expenses, disbursements or advances are attributable to a particular Account Participant, the Administrator may allocate the amount to such Account Participant and debit the sub account of such Account Participant without prior notice.

12.    The Administrator shall make available upon request to an Account Participant a copy of any insurance policy or bond in effect relating to the Account, it being understood that the Administrator shall have no obligation to maintain any such insurance policy or bond, but may do so in its discretion.

13.    (a)    All notices, instructions or other communication shall be in writing and shall be deemed given if delivered personally, against written receipt, or mailed by overnight courier or registered or certified mail (return receipt requested), postage prepaid, to the Account Participants, to the addresses on file with the Administrator, and to the Administrator, to the following address: P.J. Administrator LLC, 666 Third Avenue, 29th Floor, New York, New York 10017, Attn.: David P. Steinmann and Wallace Aptman; provided that any such notice, instruction or communication from an Account Participant to be effective must clearly include, in bold, capitalized letters, prominently the words **"NOTICE UNDER MADOFF AGREEMENT"**, both in the body of the notice and on any envelope used to transmit the notice. The Administrator may amend its address for notice by giving notice of such change under this Section to the other parties. Each other party may amend its address for notice by giving notice of such change under this Section to the Administrator.

(b)    This Agreement shall be interpreted, construed, enforced and administered in accordance with the laws of the State of New York (without regard to conflicts of law rules). Except as otherwise permitted herein, this Agreement may be modified only by a written amendment signed by the Administrator and the Account Participants to be affected, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged. The rights and remedies conferred upon the parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional or subsequent rights or remedies. The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect. This Agreement shall not be construed to create among the parties, or their respective successors or assigns, the relationship of co-partners, joint venturers or any other similar relationship, the existence of which hereby is expressly denied by each of the parties. This Agreement shall constitute the entire agreement of the parties relating to the subject matter and supersedes all prior oral or written agreements in regard thereto. This Agreement may be executed by each of the parties hereto in any number of counterparts, on a single Schedule A on which all parties are named or on multiple Schedules A with one or more parties named, each of

-5-

which shall be deemed to be an original and all such counterparts shall together constitute one and the same agreement.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the day and year first written above.

**ADMINISTRATOR:**

P.J. ADMINISTRATOR LLC

By: _____
Name:    David P. Steinmann
Title:     Authorized Signatory


**ACCOUNT PARTICIPANTS:**

See Signatures on <u>Schedule A</u>

-6-

Schedule A

ACCOUNT PARTICIPANTS

Michael G. Tannenbaum IRA
48 Chestnut Ridge Road
Bedford Corners, New York 10549

_____
Michael G. Tannenbaum