**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Elizabeth A. Smith
Email: esmith@bakerlaw.com
Elyssa S. Kates
Email: ekates@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L.
Madoff*

**Hearing Date: December 21, 2011 at 10:00 a.m.**
**Objection Deadline: December 15, 2011**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-1789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**NOTICE OF MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION
105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING AN
AGREEMENT BY AND BETWEEN THE TRUSTEE AND UNITED STATES OF
AMERICA ON BEHALF OF THE INTERNAL REVENUE SERVICE**

PLEASE TAKE NOTICE that Irving H. Picard (the "Trustee"), as trustee for the

liquidation of the business of Bernard L. Madoff Investment Securities LLC under the

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), and the

substantively consolidated estate of Bernard L. Madoff, by and through his undersigned

counsel, will move (the "Motion") before the Honorable Burton R. Lifland, United States

Bankruptcy Judge, at the United States Bankruptcy Court, the Alexander Hamilton Customs

House, One Bowling Green, New York, New York 10004-1408, on December 21, 2011 at

10:00 a.m., or as soon thereafter as counsel may be heard, seeking entry of an order (the

"Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101

*et seq.*, and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), approving that certain agreement (the "Agreement") by and between

the Trustee and the United States of America, on behalf of the Internal Revenue Service, as

more particularly set forth in the Motion.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (i)

be in writing; (ii) conform to the Bankruptcy Rules, Local Bankruptcy Rules and General

Orders (which Local Bankruptcy Rules and General Orders may be found at

http://www.nysb.uscourts.gov/); (iii) specify the name of the objecting party and state with

specificity the basis of the objection(s) and the specific grounds therefor; (iv) be filed in

accordance with the electronic filing procedures for the United States Bankruptcy Court for

the Southern District of New York, with a proof of service, and a courtesy copy delivered to

the Chambers of the Honorable Burton R. Lifland, United States Bankruptcy Court, the

Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004-1408; and (v) be served upon Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Elizabeth A. Smith, Esq. and Elyssa S. Kates, Esq., so as to be received no later than **4:00 p.m. on December 15, 2011**.

Dated: New York, New York
      November 22, 2011

Respectfully submitted,

*/s/ Elyssa S. Kates*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Elizabeth A. Smith
Email: esmith@bakerlaw.com
Elyssa S. Kates
Email: ekates@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard,
Trustee for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L.
Madoff*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Elizabeth A. Smith
Email: esmith@bakerlaw.com
Elyssa S. Kates
Email: ekates@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

**Hearing Date: December 21, 2011 at 10:00 a.m.**
**Objection Deadline: December 15, 2011**

*Attorneys for Irving H. Picard, Trustee for*
*the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING
AN AGREEMENT BY AND BETWEEN THE TRUSTEE AND UNITED STATES
OF AMERICA ON BEHALF OF THE INTERNAL REVENUE SERVICE**

TO:    THE HONORABLE BURTON R. LIFLAND
       UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), and the substantively consolidated

estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the

"Debtors"), by and through his undersigned counsel, respectfully submits this motion (the

"Motion") seeking entry of an order (substantially in the form annexed hereto as Exhibit

"A"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et*

*seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), seeking approval of an agreement (the "Agreement")[1]

by and between the Trustee and the United States of America, on behalf of the Internal

Revenue Service (referred to herein as the "IRS"), and, in support thereof, the Trustee

respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    The Trustee has reached an agreement with the IRS that allows for the

recovery of transfers made by BLMIS and/or Madoff to the IRS purportedly on behalf of

foreign account holders (the "Foreign Accountholders") allegedly pursuant to the

requirements of sections 1441 and 1442 of the Internal Revenue Code of 1986 (the "Code").

This settlement (the "IRS Settlement") will bring approximately $326 million (the

---

[1] The form of Agreement is annexed hereto as Exhibit "B."

"Settlement Payment") into the BLMIS estate for eventual distribution to customers with valid claims. The Settlement Payment represents a significant recovery by the Trustee for the benefit of the fund of customer property (the "Customer Fund"). Thus, the Trustee submits that the IRS Settlement falls well within the range of reasonableness mandated by the relevant legal standard and therefore, the Trustee respectfully requests that the Court approve the settlement.

## BACKGROUND

2.    On December 11, 2008 (the "Filing Date"),[2] the U.S. Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through investment advisory activities of BLMIS.

3.    On December 15, 2008, pursuant to section 78eee (a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due, and accordingly, its customers needed the protection afforded by SIPA.

4.    On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i)    appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

---

[2] In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* section 78*lll*(7)(B) of SIPA.

        (ii)      appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

        (iii)     removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

5.      At a plea hearing (the "Plea Hearing") on March 12, 2009, in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement.  At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."  (Plea Hr'g Tr. at 23:14-17).  On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

6.      On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff.  On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

7.      Pursuant to section 78fff-1(a) of SIPA, the Trustee has the general powers of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, as amended from time to time (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA.  Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to the SIPA Proceeding to the extent consistent with SIPA.  Under SIPA, the Trustee is charged with the responsibility of marshaling and liquidating the assets of BLMIS, and recovering customer property for distribution to BLMIS' customers in satisfaction of allowed customer claims, including through the recovery of avoidable transfers.

### TRANSFERS MADE PURPORTEDLY ON ACCOUNT OF WITHHOLDING

8.      The Trustee, in the course of his investigation, identified certain payments (the "Payments") made by BLMIS or Madoff to the IRS, purportedly on behalf of the

Foreign Accountholders, allegedly pursuant to the requirements of sections 1441 and 1442 of the Code, which requires persons who pay income to non-resident aliens and foreign corporations to withhold tax equal to thirty percent (30%) of that income.[3]

9.    Since January 1, 2003, BLMIS made Payments on behalf of 145 Foreign Accountholders (identified on Exhibit "C" hereto) which totaled approximately $330 million. The Payments were reported to the IRS as federal income tax withholding relating to dividends paid to the accounts of the Foreign Accountholders. With respect to three of these Foreign Accountholders, the IRS erroneously paid certain refunds pursuant to claims made against the IRS relating to the Payments (the "Erroneously Paid Foreign Accountholders"). The total amount paid to the Erroneously Paid Foreign Accountholders is $4,224,884.10.

10.    The Trustee's investigation has revealed that there is no record of BLMIS having purchased or sold any securities for the benefit of the Foreign Accountholders, and in addition, there is no record of any dividends actually having been paid with respect to accounts held by the Foreign Accountholders. *See* Affidavit in Support of Trustee's Motion for Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving an Agreement by and Between the Trustee and United States of America on Behalf of the Internal Revenue

---

[3] The Code imposes an income tax withholding on certain categories of income paid to foreign investors including dividends, derived from U.S. sources. The withholding tax is payable to the United States Treasury. Pursuant to section 871 of the Code, a tax of 30 percent (30%) is imposed on the amount received from sources in the United States by a nonresident alien individual as dividends. Similarly, pursuant to section 881 of the Code, a tax of 30 percent is imposed on the amount received from sources within the United States by a foreign corporation as dividends. With respect to non-resident alien individuals or a foreign partnership, section 1441 of the Code requires a withholding tax from dividends equal to 30 percent (30%) thereof; similarly, with respect to foreign corporations, section 1442 of the Code requires a withholding tax from dividends equal to 30 percent (30%) thereof. *See* Treas. Reg. sections 1.1441-1 and 1.1442-1. The obligation to withhold applies to the payor of the dividend, whether it pays the dividend annually or at other intervals. *See* Treas. Reg. section 1.1441-2(b)(i) and (ii).

Service (the "Trustee's Affidavit") at ¶ 6.  Thus, the Payments made to the IRS falsely

identified the funds as income tax withholding, presumably to give the investment advisory

arm of BLMIS an air of legitimacy and to avoid any inquiries from the IRS; by making the

"withholding" payments, it would appear to the outside world that real stock was held in the

accounts at BLMIS and real dividends had been paid.  In furtherance of his Ponzi scheme,

Madoff annually filed Forms 1042, "Annual Withholding Tax Return for the United States

Source Income of Foreign Persons" falsely reporting millions of dollars as "taxes" withheld

and paid to the IRS for the years prior to 2008.  *Id.* at ¶ 6 and Exhibit "A".

11.    Upon learning of the fraudulent payment and reporting of the Payments by

Madoff, the Trustee made a claim against the IRS for return to the Trustee of the value of

the Payments made to the IRS since January 1, 2003, for eventual distribution to customers

with allowed claims. The IRS Settlement, as described below, involves the repayment of the

vast majority of the Payments.  This represents a significant recovery for the victims of the

Ponzi scheme.

## THE AGREEMENT AND CHANNELING INJUNCTION

12.    The principal terms and conditions of the Agreement are contained in the

form of Agreement attached as Exhibit "B" and should be reviewed for a complete account

of its terms.[4]

13.    The Agreement provides, in part, that:

- The IRS will pay $326 million to the Trustee in complete satisfaction
  and settlement of all claims by the Trustee against the IRS with
  respect to payments made by BLMIS and/or Madoff allegedly
  pursuant to the requirements of Code sections 1441 and 1442 with

---

[4] Terms not otherwise defined in this Motion shall have the meaning ascribed in the Agreement.  In
the event of any inconsistency between the terms provided in this Motion and the terms of the
Agreement, the Agreement shall prevail.

respect to the Foreign Accountholders. The Settlement Payment is being made for the benefit of BLMIS' customers with valid claims;

- Interest will accrue on the Settlement Payment if the Settlement Payment is not received by the Trustee within 180 days of the date the IRS Settlement is approved;

- The Trustee will continue any pending actions against certain Foreign Accountholders. To the extent the Trustee has commenced actions against the Erroneously Paid Foreign Accountholders, the Trustee shall continue those actions without any adjustment of the Erroneously Paid Foreign Accountholders' account balances. The Trustee shall adjust all other Foreign Accountholders' BLMIS account balances for purposes of any claims allowance or other pending proceedings and will credit all Payments out of the accounts for alleged withholding payments made to the IRS to the extent of those payments;

- The Trustee will release the IRS and its employees, attorneys, representatives, advisors and agents from any and all past, present and future claims or causes of action and from any and all allegations of liability or damages of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee against the IRS and that are based on, arise out of or relate in any way to any of the Payments allegedly made on behalf of Foreign Accountholders by BLMIS pursuant to the requirements of sections 1441 and 1442 of the Code;

- The Trustee will reserve approximately $103 million of the Settlement Payment (the "Reserve") for the purpose of satisfying any potential administrative decisions, settlements or judgments against the IRS or the Trustee that have been or may hereafter be entered with respect to the Payments. The Reserve shall not be available to satisfy certain excepted claims (the "Excepted Claims") which are defined below and in paragraph 5 of the Agreement. The Trustee may release the balance of the Reserve for distribution on the day that is two years and sixty days from the Settlement Approval Date (defined below), but shall retain a sufficient amount in the Reserve to satisfy any claims or actions that are still pending;

- The Trustee shall seek, and the Agreement shall be contingent upon, the issuance of a final and non-appealable Order by the Court that: (i) approves the Agreement; and (ii) contains a provision permanently enjoining (the "Channeling Injunction") any person, including any Foreign Accountholder (and including Erroneously Paid Foreign Accountholders), and anyone acting on his/her/its behalf or in concert

7

of participation with such Foreign Accountholder, from asserting any claim or action against the IRS or the Trustee which arises from or relates to any Payments allegedly made on behalf of a Foreign Accountholder and Erroneously Paid Foreign Accountholder by BLMIS pursuant to the requirements of Code sections 1441 and 1442, provided however, that such Channeling Injunction shall not bar claims or actions brought against the BLMIS estate by creditors or against the SIPA customer fund as customers so long as such creditors or customers filed claims in the SIPA Proceeding prior to the statutorily mandated claims bar date (the "Excepted Claims"). Additionally, the injunction will not affect the rights and defenses of any Foreign Accountholders and Erroneously Paid Foreign Accountholder presently engaged in litigation with the Trustee;

- If the Channeling Injunction provision in the Order is held to be invalid, inapplicable or unenforceable against any Foreign Accountholder and Erroneously Paid Foreign Accountholder and a court permits an action to proceed with respect to the Payments other than an Excepted Claim, any such accountholder seeking to assert a claim shall assert such claim in the Bankruptcy Court against the Trustee and not the IRS;

- The Order shall provide that if the IRS is rendered or adjudged liable to any person or entity, including any Foreign Accountholder and Erroneously Paid Foreign Accountholder, in respect of any claims or actions arising from or relating to the Payments, such liability will be satisfied by the Trustee from the Reserve; and

- The Agreement is subject to the entry of the Order and the Order becoming final and non-appealable (such date, the "Settlement Approval Date").

14.     As set forth above, as part of the Agreement, the Trustee is seeking a Channeling Injunction from this Court, pursuant to Section 105(a) of the Bankruptcy Code. The Trustee is seeking such relief because the IRS will turn over the Settlement Payment to the Trustee. Therefore, the Trustee will obtain control over the funds that could be the subject of any future refund action by a Foreign Accountholder.

## ARGUMENT

### THE AGREEMENT IS FAIR AND EQUITABLE
### AND IN THE BEST INTERESTS OF THE BLMIS ESTATE

**I.     The Terms of the Agreement Are Fair and Reasonable and Will Confer a
Significant Benefit on the Customer Fund.**

15.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the
trustee and after notice and a hearing, the court may approve a compromise or settlement."
Courts have held that in order to approve a settlement or compromise under Bankruptcy
Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and
equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs,
Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective
Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424
(1968)).

16.     The Second Circuit has stated that a bankruptcy court, in determining
whether to approve a compromise, should not decide the numerous questions of law and fact
raised by the compromise, but rather should "canvass the issues and see whether the
settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant
Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied sub nom. Cosoff v. Rodman*, 464 U.S. 822
(1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied sub nom. Benson
v. Newman*, 409 U.S. 1039 (1972)); *accord Nellis v. Shugrue*, 165 B.R. 115, 121-22
(S.D.N.Y. 1994); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purofied Down Prods.
Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to
determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group,
Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

9

17.    In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

        a.    the probability of success in the litigation;

        b.    the difficulties associated with collection;

        c.    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

        d.    the paramount interests of the creditors (or in this case, customers).
*Nellis v. Shugrue*, 165 B.R. at 122 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993)).

18.    The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purofied Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. *Nellis v. Shugrue*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

19.    The Trustee believes that the terms of the IRS Settlement fall well above the lowest point in the range of reasonableness and, accordingly, the Agreement should be approved by this Court. The Agreement resolves all issues regarding the Payments (the "Claims") without the need for litigation. Other than a small deduction for amounts erroneously paid by the IRS to the Erroneously Paid Foreign Accountholders, the IRS Settlement provides for the return of the vast majority of transfers made by Madoff since January 1, 2003, purportedly as income tax withholding with respect to foreign accounts. *See* Trustee's Affidavit at ¶ 7.

20. The Agreement also furthers the interests of the customers of BLMIS by adding a substantial amount of money to the Customer Fund. *Id.* Specifically, as a result of the IRS Settlement, approximately $326 million should be available for distribution to customers. *Id.*

21. As noted above, for purposes of any claims allowance or other pending adversary proceedings involving the Foreign Accountholders, the Trustee will adjust the Foreign Accountholders' BLMIS account(s) balance(s) by crediting back all recovered transfers comprising the IRS Settlement out of the accounts for the alleged withholding payments made, to the extent of those payments. The Trustee will credit each Foreign Accountholders' account (with the exception of the Erroneously Paid Foreign Accountholders) for each Payment that was made and will adjust the account balance as of the date of the specific payment. Utilizing this methodology, five Foreign Accountholders which were "net winners" previously become break-even accounts. One Foreign Accountholder changes from a "net winner" to a "net loser". The Foreign Accountholders (with the exception of the Erroneously Paid Foreign Accountholders) will receive credit for the monies recovered by the Trustee.

22. Given the time, cost and complexities involved in proceeding with litigation, the Trustee has determined that the proposed settlement with the IRS represents a fair compromise of the Claims. The Trustee's analysis of the proposed settlement shows that the BLMIS estate will recover the significant majority of the funds owed to the estate by the IRS. The IRS will have returned more than ninety-eight percent of the Payments that it received from BLMIS since January 1, 2003, for distribution to BLMIS' customers with allowed claims, without the Trustee having to incur the time and costs of litigation, an

11

unquestionably positive result. In light of those facts, the Trustee submits that it is in the best interests of the estate to settle with the IRS according to the terms set forth in the Agreement.

23.     The Trustee maintains that he would have prevailed at trial in recovering all Payments to the IRS. Yet, there is always a litigation risk. The Agreement allows the Trustee to avoid potentially protracted litigation. The ability to avoid the time and expense associated with litigating this matter, combined with the fact that the Agreement will result in a very substantial recovery, makes the settlement embodied by the Agreement extremely beneficial to BLMIS' customers.

## II.     An Injunction under Section 105(a) Is Warranted and Necessary.

24.     The Trustee seeks a narrowly tailored injunction, which, given the unique circumstances of the BLMIS liquidation in general and the IRS Settlement in particular, is both appropriate and necessary.

25.     The Agreement requires the Trustee to use his best efforts to obtain approval of the Order as promptly as practicable, which shall contain a permanent injunction from the Bankruptcy Court, pursuant to Section 105(a) of the Bankruptcy Code "permanently enjoining any person, including any Foreign Accountholder (including for the avoidance of doubt, any Erroneously Paid Foreign Accountholder), and anyone acting on its behalf or in concert or participation with such Foreign Accountholder, from asserting any claim or action against the IRS, the United States or the Trustee which arises from or relates to any Payments allegedly made on behalf of a Foreign Accountholder by BLMIS pursuant to the requirements of Code sections 1441 and 1442. . ." subject to certain exceptions. Agreement, ¶ 5.

a.    **The Injunction Is Narrowly Tailored and All Claims Subject to the Injunction Are Derivative of the Trustee's Claims.**

26.    This Court has subject matter jurisdiction to grant the injunction because the claims that the Trustee seeks to enjoin are direct claims over which the Trustee has "exclusive standing" to assert.

27.    Pursuant to 28 U.S.C. § 1334(b), district courts (and therefore bankruptcy courts) have original jurisdiction over civil proceedings "arising under" and "arising in" and "related to" cases under title 11. 28 U.S.C. § 1334(b). *See also In re Adelphia Commc'ns Corp.*, 2006 WL 1529357, at *6 (Bankr. S.D.N.Y. June 5, 2006). "Related to" jurisdiction to enjoin a third party dispute exists where the subject of the third party dispute is property of the estate or the dispute would have an effect on the estate. *In re Johns Manville Corp.*, 517 F.3d 52, 65 (2d Cir. 2008), *vacated & remanded on other grounds,* --- U.S. ---, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009), *aff'g in part & rev'g in part,* 600 F.3d 135 (2d Cir. 2010); *In re Delta Airlines, Inc.*, 374 B.R. 516, 525 (S.D.N.Y. 2007).

28.    This Court's recent decision in *In re Dreier LLP*, 2010 WL 1707737 (Bankr. S.D.N.Y. April 28, 2010), is instructive on the issue of subject-matter jurisdiction in a situation similar to that created by Madoff's Ponzi scheme. Marc S. Dreier ("Dreier"), who was the sole equity partner of Dreier LLP ("Dreier LLP"), committed an extensive fraud against his clients by selling them sham promissory notes (the "Notes") from 2004 to 2008. *Id.* at *1. GSO, an investment manager for certain purchasers of Notes, transferred over a hundred million dollars to Dreier LLP accounts. *Id.* at *3. When the fraud was revealed, Dreier and Dreier LLP filed bankruptcy cases. In an effort to settle potential avoidance actions against GSO, the Chapter 11 Trustee and Chapter 7 Trustee, along with GSO, entered into a settlement agreement, whereby GSO would contribute approximately $10

13

million, plus artwork with an approximate value of $3 million, to the debtors' estates in exchange for a release and injunction against third-party claims. *Id.* at *4.

29.    In considering subject-matter jurisdiction, the Court first found that it "plainly" had jurisdiction to bar general creditors of the estates from seeking to recover their claims from the funds at issue—the funds transferred by Dreier LLP to GSO. *Id.* at *15. The Court explained that principles stated in *Hirsch v. FDIC (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992), which recognized that the automatic stay barred an action by the FDIC to recover property that the debtor had transferred before bankruptcy, and *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 850 (Bankr. S.D.N.Y. 1994), which held that a bankruptcy trustee alone has standing to maintain avoidance actions, supported the *Dreier* holding. *Id.* at *15-16.    Based on these principles, the Court reasoned, the bankruptcy court could permanently enjoin "derivative" creditor claims on avoidance funds because "[a]bsent that power, the Trustees will be hampered in their ability to pursue and ultimately settle fraudulent transfer claims from a transferee fearful of paying twice for the same transfer—once on the Trustees' claim and a second time on the derivative claim." *Id.* at *16 (citing *SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992).[5]

---

[5] The Court in *Dreier* went on to determine that the injunction sought exceeded the Court's jurisdiction for reasons not applicable in this case. Specifically, the Court found that the *Dreier* injunction did not sufficiently identify the entities being released and was not limited to claims affecting the property of the estate or the administration of the estate. *In re Dreier LLP*, 2010 WL 1707737, at *16-17. Following this decision, the *Dreier* trustee filed a renewed motion for approval of the settlement agreement with a more tailored injunction. By order dated June 8, 2010, the Court approved the settlement and entered the injunction sought by the *Dreier* trustee [Case No. 08-15051 (SMB) ECF No. 610]. The injunction entered enjoined all creditors and parties in interest in the case from commencing or continuing any action against any of the released parties where the action is based on Marc Dreier's or Dreier LLP's misconduct and for which there is no independent basis to bring suit. The order granting the modified injunction was recently upheld by the District Court. *See In re Dreier LLP*, 2010 WL 3835179, at *4-5 (S.D.N.Y. Sept. 10, 2010).

14

30.    Here, the Trustee has "exclusive standing" to assert the causes of action because they belong to the Debtors' estate. *Picard v. Fox*, 2010 WL 1740885, at *5 (Bankr. S.D.N.Y. May 3, 2010); *McHale v. Alvarez (In re The 1031 Tax Group, LLC)*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008); *Goldin v. Primavera Familienstiftung, Tag Assocs. Ltd. (In re Granite Partners L.P.)*, 194 B.R. 318, 324-25 (Bankr. S.D.N.Y. 1996). The Second Circuit has stated that "[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *Picard v. Fox*, 2010 WL 1740885, at *5 (*quoting St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)).

31.    In addition to the above authorities, the proposed injunction is consistent with the injunction recently entered by the Court in *Dreier*, which excluded from the scope of the injunction actions where there is an independent basis on which to bring suit. *In re Dreier LLP*, 2010 WL 1707737, at *16-17, *aff'd*, 2010 WL 3835179, at *4-5 (S.D.N.Y. Sept. 10, 2010) (upholding injunction and endorsing *pro rata* distribution for similarly situated victims of a Ponzi scheme). The Trustee, in exercising his exclusive jurisdiction, has reached an agreement regarding the settlement of certain claims that belong to the Debtors' estate. An injunction is appropriate to avoid the re-litigation of claims asserted on behalf of all customers and creditors that have been resolved by the Trustee, particularly where the Trustee has resolved those claims in a manner enormously beneficial to the Estate.

32.    Further, the claims that the Trustee seeks to enjoin are those that would impact the administration of the liquidation. Courts have repeatedly enjoined suits against non-debtor third parties to protect the administration of the estate. *See, e.g.*, *In re Adelphia*,

2006 WL 1529357, at *4 ("The Bankruptcy Court's injunctive powers . . . include 'the power to enjoin the Defendants from proceeding against non-debtor third parties . . . where, as here, the actions against such third parties have at least a conceivable effect upon the Debtors or implicate the interpretation or enforcement of this Court's orders.'") (internal citation omitted); *In re AP Indus.*, 117 B.R. at 801–02 ("The large majority of the courts which have considered the question have held that the bankruptcy courts have the power to restrain legal action by creditors of the debtor against non-debtor third parties, in certain circumstances . . . .") (quoting *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 751 (Bankr. E.D. Pa. 1986)); *In re Calpine Corp.*, 365 B.R. at 409 n.20. Enjoining such claims is necessary to protect the proper administration of this liquidation.

33.     If these claims were allowed to be asserted, claimants would be permitted to side-step the jurisdiction of this Court, the claims processes this Court has put into place, the SIPA distribution scheme mandated by Congress, and the statutory bar date as determined by section 78*fff*-2(a)(3) of SIPA. *See generally SIPC v. BLMIS*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010).[6] In essence, those claimants would be inequitably obtaining property that should not be available to them based on the previous decisions of this Court regarding the claims administration process and the net equity calculation, to the detriment of other

---

[6] The standard for a Rule 7065 injunction is inapplicable when an injunction is sought under section 105 of the Bankruptcy Code. *See In re Lyondell Chem. Co.*, 402 B.R. 571, 588 n.37 (Bankr. S.D.N.Y. 2009). The Court may enjoin actions against the IRS if (i) a third party suit would impair the court's jurisdiction with respect to a case before it or (ii) the third party suits threaten to thwart or frustrate the debtor's reorganization efforts and the injunction is necessary to preserve or protect the debtor's estate. *See In re Keene Corp.*, 162 B.R. 935, 944 (Bankr. S.D.N.Y. 1994*); In re Calpine Corp.*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006); *Garrity v. Leffler (In re Neuman)*, 71 B.R. 567, 571 (S.D.N.Y. 1987). The Second Circuit recently upheld an anti-litigation injunction in the receivership context, finding that the injunction assisted the receiver in managing the receivership and maintaining control over receivership assets. *SEC v. Byers*, 609 F.3d 87, 92-93 (2d Cir. 2010). Similarly, in the instant case, the injunction sought would prevent interference with the administration of the BLMIS estate.

claimants who follow the Court's rules. *See SIPC v. BLMIS*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010); Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief entered on December 23, 2008 [ECF No. 12]. As this Court noted with respect to the defendants in *Picard v. Fox*, "any judgment awarded to the [*Fox* defendants] would exceed their entitlement to BLMIS distribution under SIPA and this Court's Net Equity Decision." *Picard v. Fox*, 2010 WL 1740885, at *10. Indeed, permitting those with allowable customer claims to pursue the IRS outside of the liquidation would create the potential for double recovery. Thus, in the absence of an injunction, potential claimants would be able to eviscerate the equitable distribution architecture that lies at the core of both SIPA and the Bankruptcy Code to their own individual benefit.

34.     Moreover, the Trustee is recovering the significant majority of the amount of the Payments made by BLMIS or Madoff to the IRS. It would be pointless to bring suit against the IRS when the IRS, by making the Settlement Payment, will have already returned the vast majority of the Payments to the Trustee. Once the Settlement Payment is made, the IRS will have relinquished control over the funds. It would be unjust to subject the IRS to the possibility of double exposure and protracted litigation with various claimants, particularly when the Order provides a mechanism for claimants to fairly enjoy the benefits of the Settlement Payment.

35.     Finally, the injunction is narrowly tailored, protecting the IRS only in relation to the Payments. The injunction and release are "narrowly drawn and are necessary to prevent relitigation of precisely the claims that were negotiated and resolved by the

17

Settlement Agreement," *In re Delta Airlines, Inc.*, 374 B.R. at 526. Accordingly, this Court has the authority to grant the injunction sought.

> **b.**    **The Customer Fund Will Receive Substantial Benefit from the IRS Settlement and the Unique Circumstances of the Case Make the Injunction Appropriate.**

36.    The IRS Settlement will bring approximately $326 million into the Customer Fund for distribution to customers with allowed claims. This amount represents a significant recovery for the benefit of customers. As such, the principles set forth in the controlling Second Circuit case, *Deutsche Bank AG v. Metromedia Fiber Network Inc. (In re Metromedia Fiber Network, Inc.*), 416 F.3d 136 (2d Cir. 2005), are satisfied. In *Metromedia*, the Second Circuit held that nonconsensual nondebtor releases and injunctions are proper "in truly unusual circumstances" where, among other things, the debtor's estate has received substantial consideration. 416 F.3d at 141-143; *see also SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Lambert Group, Inc.),* 960 F.2d 285, 293 (2d Cir. 1992); *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),* 280 F.3d 648, 657-58 (6th Cir. 2002).[7]

37.    The IRS Settlement represents a significant milestone in this liquidation proceeding. The Settlement Payment constitutes a significant recovery of the Trustee's demand amount against the IRS for the recovery of amounts paid by BLMIS to the IRS as backup withholding on behalf of Foreign Accountholders since January 1, 2003. The

---

[7] Although certain of the cited case law addresses injunctions in the context of a plan of reorganization, it is clear that injunctions pursuant to section 105 are not limited to reorganization proceedings. *See, e.g., Apostolou*, 155 F.3d at 882 (section 105 injunction applicable in liquidation proceeding); *In re AP Indus.*, 117 B.R. at 201 ("The court will have ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in a reorganization case."). The same principles apply to injunctions required in settlement agreements. *See In re Dreier LLP*, 2010 WL 1707737 (Bankr. S.D.N.Y. April 28, 2010); *see also In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358 (Bankr. S.D.N.Y. 2002).

increase in customer property by virtue of the IRS Settlement is dramatic and would constitute a significant increase in the amounts available for future *pro rata* distributions that will be made to BLMIS customers with allowed claims.   As this Court has already recognized in the *Picard v. Fox* proceedings, the IRS Settlement would provide a unique benefit to the estate that is certainly worthy of the protection of a carefully tailored injunction.  As the Court observed, an injunction pursuant to section 105(a) "is appropriate and necessary to preserve the integrity of the SIPA proceedings and the Trustee's settlement negotiations for the benefit of the BLMIS estate and all of its customer claimants." *Picard v. Fox*, 2010 WL 1740885, at *9.

38.      There is no doubt that the injunction is necessary and fair.  The IRS has made it clear to the Trustee that the in order to achieve a settlement, and as a precondition to such a settlement, the IRS and the U.S. Treasury must be protected from paying out the same claims more than once. The proposed injunction is, therefore, an essential part of the settlement.   Given the value of the proposed settlement, and that the Settlement Payment represents virtually all of the amount of the Payments, it is not surprising that the IRS wishes to have finality and be certain that it will not be required to satisfy the same claims twice. As this Court noted in *Picard v. Fox*, without an injunction, the IRS would be "fearful of paying twice for the same transfer." *Picard v. Fox*, 2010 WL 1740885, at *9 (quoting *In re Dreier LLP*, 2010 WL 1707737, at *16).  The Second Circuit has held that an injunction is appropriate in a situation where, but for the injunction, the settlement would be less likely to occur.  *See e.g., SEC v. Drexel Burnham Lambert Group, Inc.*, 960 F.2d at 293.  In such circumstances, the Court may use its powers to enjoin in order to foster the conclusion of a settlement by providing the finality sought by the IRS. *See, e.g., In re Johns-Mansville*

*Corp.*, 68 B.R. 618, 626 (Bankr. S.D.N.Y. 1986) (Lifland, J.) (enjoining further actions

against settling defendants under § 105(a) in order to "preserve the rights of all asbestos

claimants by establishing a corpus of funds from which all can collect" and to "prevent[] the

inequitable, piece-meal dismemberment of the debtor's estate . . . "), *aff'd*, 78 B.R. 407

(S.D.N.Y. 1987*), aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir.

1988).

39.    Accordingly the terms of the injunction seek to satisfy the requirements set

forth in *Metromedia*: the opportunity offered to the estate by the IRS Settlement must be

considered "unusual circumstances" and the IRS Settlement will provide a substantial

benefit to the BLMIS estate and in turn, BLMIS's customers.    As such, the narrow

injunction sought by the Trustee should be granted.

## CONCLUSION

40.    The Trustee submits that the Agreement should be approved for two

overarching reasons:  (a) to avoid lengthy and burdensome litigation, and (b) and because it

represents a reasonable compromise of the claims that benefits the estate and the customers

of BLMIS.  Accordingly, since the Agreement is well within the "range of reasonableness"

and confers a substantial benefit on the estate, the Trustee respectfully requests that the

Court enter an Order (i) approving the Agreement, and (ii) issuing the permanent injunction.

## NOTICE

41.    In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion

has been given to (i) SIPC; (ii) the SEC; (iii) the IRS; (iv) the United States Attorney for the

Southern District of New York; and (v) the Foreign Accountholders (including the

Erroneously Paid Foreign Accountholders). The Trustee shall notify, by way of the ECF

filing that will be made, each person or entity that has filed a notice of appearance in this

case.    Additionally, the Trustee will post this Motion, proposed order and Settlement Agreement on the Trustee's website, www.madofftrustee.com. The Trustee submits that no other or further notice need be given and respectfully requests that the Court find that such notice is proper and sufficient.

WHEREFORE, the Trustee respectfully requests entry of an Order (i) approving the settlement agreement between the Trustee on the one hand and the United States of America, on behalf of the IRS, on the other and (ii) enjoining customers and creditors of BLMIS who filed or could have filed claims in the liquidation from pursuing claims against the IRS, substantially in the form of Exhibit "A".

Dated: New York, New York
      November 22, 2011

Respectfully submitted,

/s/ Elyssa S. Kates
_____
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Elizabeth A. Smith
Email: esmith@bakerlaw.com
Elyssa S. Kates
Email: ekates@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

22