# EXHIBIT B

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "Agreement"), dated as of November 21, 2011, is made by and between Irving H. Picard, in his capacity as the trustee (the "Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act of 1970, as amended from time to time ("SIPA"), and estate of Bernard L. Madoff ("Madoff"), on the one hand, and the United States of America (the "United States"), on behalf of the Internal Revenue Service (the "IRS"), on the other hand (each of the Trustee and the IRS shall be referred to individually as a "Party", and collectively as the "Parties").

## BACKGROUND

A.   BLMIS and its predecessor were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.   On December 11, 2008, Madoff was arrested by federal agents for criminal offenses including securities fraud, investment adviser fraud, and mail and wire fraud. On December 11, 2008, the United States Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against, among others, BLMIS and Madoff captioned SEC v. BLMIS, et al., No. 08-CV-10791(LLS).

C.   On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 78eee(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 78eee(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 78eee(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

D.   On March 12, 2009, in connection with his scheme to conduct a massive Ponzi scheme through BLMIS, Madoff pleaded guilty to an 11 count information filed by the United States Attorney's Office for the Southern District of New York, which charged him with securities fraud, investment advisor fraud, mail fraud, wire fraud, two counts of international money laundering, money laundering, false statements, perjury, false filings with the SEC, and theft from an employee benefit plan. On June 12, 2009, Madoff was sentenced principally to 150 years' imprisonment.

E.   Pursuant to section 78fff-1(a) of SIPA, the Trustee has the general powers of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, as amended from time to time (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA.

Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to the SIPA Proceeding to the extent consistent with SIPA.

F. Under SIPA, the Trustee is charged with the responsibility to marshal and liquidate the assets of BLMIS, and to recover customer property for distribution to BLMIS customers in satisfaction of allowed customer claims, including through the recovery from BLMIS customers of preference payments and fraudulent transfers made to them by BLMIS.

G. Prior to December 15, 2008, BLMIS and/or Madoff made payments ("Payments") to the IRS, purportedly on behalf of foreign entities or persons which had accounts with BLMIS (the "Foreign Accountholders"), allegedly pursuant to the requirements of sections 1441 and 1442 of the Internal Revenue Code of 1986, as amended and in effect (the "Code"), which require persons who pay income to nonresident aliens and foreign corporations to withhold tax equal to 30% of the income.

H. There is no known record of BLMIS having purchased or sold any securities for the benefit of the Foreign Accountholders, and in addition, there is no record of any dividends actually having been paid with respect to accounts held by the Foreign Accountholders. Thus, the Payments made to the IRS falsely identified the funds as income tax withholding to give the investment advisory arm of BLMIS an air of legitimacy and to avoid any inquiries from the IRS.

I. The IRS has erroneously paid certain refund claims relating to Payments to certain Foreign Accountholders ("Erroneously Paid Foreign Accountholders").

J. Based on the foregoing, the Trustee and the United States wish to resolve the matters described above without the expense, delay, and uncertainty of litigation.

**NOW, THEREFORE**, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Trustee and the United States agree as follow:

## AGREEMENT

1. <u>Payment to Trustee</u>. With respect to payments made by BLMIS and/or Madoff allegedly pursuant to the requirements of Code sections 1441 and 1442, which require persons who pay income to nonresident aliens and foreign corporations to withhold tax equal to 30% of the income, in complete satisfaction and settlement of all claims by the Trustee against the United States, whether brought as a claim or suit for refund under the Code or an avoidance or other action under the Bankruptcy Code, or any other action which could be brought, the Trustee and the United States agree that the United States will make a payment of Three Hundred and Twenty-Six Million United States Dollars ($326,000,000.00) (the "Settlement Payment") to the Trustee for the benefit of BLMIS customers with valid claims. The Settlement Payment shall be paid to the Trustee by the United States in a reasonable period of time after the Settlement Approval Date, as defined in paragraph 6 herein. If the Settlement Payment is not received by the Trustee within 180 days of the Settlement Approval Date, then interest will accrue on the Settlement Payment beginning on the 181st day following the Settlement Approval

2

Date, at the applicable Federal rate published for short-term debt instruments bearing annual interest for the calendar month in which such interest begins to accrue, as set forth in section 1274 of the Code.

2.  **Foreign Accountholders Account Balances.** To the extent the Trustee has commenced actions in the Bankruptcy Court against the Erroneously Paid Foreign Accountholders seeking, among other things, recovery of Payments which ultimately resulted in the refund claims erroneously paid by the IRS, the Trustee shall continue those actions without any adjustment of the account balance. For purposes of any claims allowance or other pending adversary proceedings involving all other Foreign Accountholders, the Trustee shall adjust the Foreign Accountholders' BLMIS account balance by crediting all Payments out of the accounts for alleged withholding payments made to the IRS to the extent of those payments.

3.  **Release by Trustee.** In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under this Agreement, the Trustee shall release, remit and forever discharge the United States and its agencies (including the IRS), and its employees, attorneys, representatives, advisors and agents from any and all past, present and future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee against the United States or the IRS and that are based on, arise out of or relate in any way to any Payments allegedly made on behalf of Foreign Accountholders by BLMIS pursuant to the requirements of sections 1441 and 1442 of the Code. The release contained herein shall become effective upon the Trustee's actual receipt of the Settlement Payment without any further action by any of the Parties or the Bankruptcy Court.

4.  **Reserve of Settlement Payment by Trustee.** Upon payment of the Settlement Payment by the United States to the Trustee, One Hundred and Two Million, Nine Hundred and Ninety-Three Thousand, Seven Hundred and Twenty-Nine United States Dollars and Twenty-One Cents ($102,993,729.21) of the Settlement Payment (the "Reserve") shall be set aside by the Trustee for the purpose of satisfying any potential administrative decisions, settlements or judgments against the IRS, the United States or the Trustee that have been or may hereafter be entered with respect to any Payments; provided however, that the Reserve shall not be available to satisfy any Excepted Claims, as defined in paragraph 5 hereof. On the date that is two years and sixty days from the Settlement Approval Date, the Trustee may release for distribution to BLMIS customers the balance of the Reserve, provided however, that to the extent that on such date there exists any pending claim(s) or actions(s) with respect to the Payments, either administratively or judicially, an amount sufficient to satisfy such pending claims or actions shall continue to be maintained in the Reserve. At such time, the Trustee will confer with the United States to determine the appropriate amount, if any, for any continuing Reserve. The remaining

balance of the Reserve, if any, will be available for distribution to BLMIS customers only after the final resolution of all such pending claims and actions with respect to the Payments.

5. <u>Channeling Injunction</u>. The Trustee shall seek, and this Agreement shall be contingent upon, the issuance of a final and non-appealable order by the Bankruptcy Court that approves this Agreement (the "<u>Order</u>") and meets the conditions set forth in this paragraph. Specifically, such Order shall contain a provision permanently enjoining any person, including any Foreign Accountholder (including for the avoidance of doubt any Erroneously Paid Foreign Accountholder), and anyone acting on its behalf or in concert or participation with such Foreign Accountholder, from asserting any claim or action against the IRS, the United States or the Trustee which arises from or relates to any Payments allegedly made on behalf of a Foreign Accountholder by BLMIS pursuant to the requirements of Code sections 1441 and 1442; <u>provided however</u>, that such injunction shall not bar claims or actions brought against the BLMIS estate by creditors or against the SIPA customer fund as customers, provided that such creditors or customers filed claims in the SIPA Proceeding prior to the statutorily mandated claims bar date (the "<u>Excepted Claims</u>"). Moreover, nothing herein affects the rights and defenses of any of the Foreign Accountholders, including the Erroneously Paid Foreign Accountholders, presently engaged in litigation with the Trustee. The Order shall further provide that, to the extent that the foregoing provisions of the Order are held to be invalid or inapplicable or unenforceable against any Foreign Accountholder, including the Erroneously Paid Foreign Accountholders, and a court permits an action to proceed with respect to Payments other than an Excepted Claim, any such Foreign Accountholder seeking to assert a claim arising from or relating to Payments shall assert any such claim in the Bankruptcy Court against the Trustee, and not against the United States or the IRS because pursuant to this Agreement the United States is remitting funds to the Trustee (with the exception of the amounts paid previously to Erroneously Paid Foreign Accountholders). Further, the Order shall provide that if, notwithstanding the foregoing provisions of the Order, the United States or the IRS is nonetheless rendered or adjudged liable to any person or entity, including any Foreign Accountholder, in respect of any claims or actions arising from or relating to Payments allegedly made on behalf of a Foreign Accountholder by BLMIS pursuant to Code sections 1441 and 1442, whether by a final and non-appealable order, judgment, settlement agreement or otherwise, such liability shall be satisfied by the Trustee from the Reserve, provided however, that the United States will not accept an offer to settle any claim that will then be payable from the Reserve without first meeting and conferring with the Trustee. The Trustee shall provide the United States with a proposed form of the Order, which shall be subject to the United States' reasonable approval.

6. <u>Bankruptcy Court Approval; Effective Date; Termination; Reversal on Appeal</u>. This Agreement is subject to, and shall become effective and binding on the Parties upon the Order becoming final and non-appealable. The date that the Order becomes final and non-appealable shall be referred to herein as the "Settlement Approval Date." For purposes of this Agreement, the Order shall be considered "final and non-appealable" when (a) the time to appeal the Order has expired, or (b) if any appeal has been taken, any and all such appeals have been fully and finally resolved without material modification of the Order. The Trustee shall use his reasonable best efforts to obtain approval of such Order as promptly as practicable after the date of this Agreement. The Trustee shall provide the United States with a draft of any motion to the Bankruptcy Court for approval of this Agreement, which shall be subject to the United

States' reasonable approval. If this Agreement does not become effective (a) this Agreement (other than this paragraph) shall terminate and be null and void for all purposes, (b) all of the statements, consents and agreements contained in the Agreement (other than this paragraph) shall terminate and be null and void, and (c) neither the Trustee nor the United States may use or rely on any such statement, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, any case or proceeding relating to the SIPA Proceeding or any case or proceeding relating to BLMIS or Madoff.

7. <u>Cooperation</u>. The Trustee and the United States agree to reasonably cooperate in connection with enforcing this Agreement and the Order to extinguish any claims that may be asserted in violation of the Order.

8. <u>Authority</u>. The Department of Justice signatory represents and warrants to the Trustee as of the date hereof that she has the full power, authority and legal right to execute and deliver, and to perform the obligations under, this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of the obligations under, this Agreement.

9. <u>Further Assurances</u>. The Trustee and the United States shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

10. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between the Parties concerning the subject matter hereof, and supersedes all prior agreements, representations and understandings concerning the subject matter hereof.

11. <u>Amendments, Waiver</u>. This Agreement may not be terminated, amended or modified in any way except in a writing signed by the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

12. <u>Assignability</u>. No Party hereto may assign its rights under this Agreement without the prior written consent of the other Party hereto.

13. <u>Successors Bound</u>. This Agreement shall be binding upon and inure to the benefit of each of the Parties and to the Trustee's successors and permitted assigns.

14. <u>No Third Party Beneficiary</u>. The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

15. <u>Applicable Law</u>. This Agreement and any claim relating directly or indirectly to this Agreement shall be governed and construed in accordance with federal common law, the Code, the Bankruptcy Code and SIPA, to the extent state law applies, then in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof). Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

16. <u>Exclusive Jurisdiction</u>. The Parties agree that any action relating in any way to this Agreement must be brought only in the Bankruptcy Court, to the extent that Court has jurisdiction. No one shall bring, institute, prosecute or maintain any action pertaining in any way to this Agreement in any court other than the Bankruptcy Court. To the extent that any one maintains that the Bankruptcy Court lacks jurisdiction, that dispute must be heard, in the first instance, by the Bankruptcy Court.

17. <u>Captions and Rules of Construction</u>. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

18. <u>Counterparts; Electronic Copy of Signatures</u>. This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

19. <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

If to the Trustee:

Irving H. Picard
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
Fax: (212) 589-4201
Email: ipicard@bakerlaw.com

If to the IRS:

Jeannette Vargas
Chief, Tax & Bankruptcy Unit
Office of the United States Attorney
for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007
Fax: (212) 637-2686
Email: Jeannette.Vargas@usdoj.gov

with a copy to:

Elizabeth A. Smith
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
Fax: (212) 589-4201
Email: esmith@bakerlaw.com

[*Signature page follows*]

6

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

The Trustee for the liquidation proceedings of Bernard L. Madoff Investment Securities LLC and the substantively consolidated bankruptcy case of Bernard L. Madoff

By: IRVING H. PICARD, Trustee

_____

Sworn and subscribed before me this
21st day of November, 2011.

_____
Notary Public

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/20_13_

PREET BHARARA
United States Attorney
Attorney for the United States of America

By: /s/ Jeannette Vargas
JEANNETTE A. VARGAS
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, NY 10007
Tel: (212) 637-2678
Fax: (212) 637-2686
E-mail: jeannette.vargas@usdoj.gov

Sworn and subscribed before me this
22nd day of November, 2011.

_____
Notary Public

DAVID FARBER
NOTARY PUBLIC, State of New York
No. 01FA6214554
Qualified in New York County
Commission Expires Dec. 14, 2013