UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**AFFIDAVIT IN SUPPORT OF TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING AN AGREEMENT BY AND BETWEEN THE TRUSTEE AND UNITED STATES OF AMERICA ON BEHALF OF THE INTERNAL REVENUE SERVICE**

STATE OF NEW YORK   )
                    ) ss:
COUNTY OF NEW YORK  )

Irving H. Picard, being duly sworn, hereby attests as follows:

1. I am the trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"). I respectfully submit this Affidavit in support of the motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure, (i) approving an agreement (the "Settlement

Agreement") by and among the Trustee, on the one hand, and the United States of America (collectively, with its agencies, offices and employees, the "United States"), on behalf of the Internal Revenue Service (the "IRS"), on the other hand, and (ii) enjoining customers and creditors of BLMIS, who filed or could have filed claims in the BLMIS SIPA proceeding, from pursuing certain claims against the United States and the IRS.

2. I make this Affidavit based upon my own personal knowledge or upon information that I believe to be true.

3. All capitalized terms not defined herein have the meaning ascribed to them in the Settlement Agreement.

4. During the course of my investigation into BLMIS' dealings, certain payments were identified as having been made by BLMIS or Madoff to the IRS, purportedly on behalf of certain foreign accountholders (the "Foreign Accountholders"), allegedly pursuant to the requirements of sections 1441 and 1442 of the Internal Revenue Code (the "IRC"), as withholding taxes on income supposedly earned on the Foreign Accountholders' accounts (the "Payments").

5. The Payments were made on behalf of 145 Foreign Accountholders and totaled approximately $330 million. The Payments were reported as federal income tax withholding relating to dividends allegedly paid to the accounts of the Foreign Accountholders.

6. My investigation has revealed that there is no record of BLMIS having purchased or sold any securities for the benefit of the Foreign Accountholders, nor is there any record of any dividends actually having been paid with respect to accounts in the names of the Foreign Accountholders. I believe that the Payments made to the IRS falsely identified the funds as income tax withholding in order to give the investment advisory arm of BLMIS an air of

2

legitimacy and to avoid inquiries. In furtherance of his Ponzi scheme, Madoff annually filed Forms 1042, "Annual Withholding Tax Return for the United States Source Income of Foreign Persons," falsely reporting millions of dollars as "taxes" withheld and paid to the IRS for the years prior to 2008. A sample of some of the Forms 1042 filed by Madoff or BLMIS are annexed hereto collectively as Exhibit "A".

7. I believe that the terms of the Settlement Agreement fall well above the lowest point in the range of reasonableness and, accordingly, should be approved by this Court. Pursuant to the terms of the Settlement Agreement, the IRS will pay approximately $326 million (the "Settlement Payment") to the Trustee of the approximately $330 million transferred from BLMIS or Madoff to the IRS. The IRS refunded previously two of the Foreign Accountholders $4,224,884.10. Thus, the Trustee will recover for the benefit of the fund of customer property (the "Customer Fund") the net amount of the Payments, without the need for protracted and uncertain litigation. I will credit each Foreign Accountholders' account (with the exception of the two Foreign Accountholders which received refunds previously from the IRS) for each transfer that was made and will adjust the account balance as of the date of each specific transfer. Utilizing this methodology, five Foreign Accountholders which previously were "net winners" will become break even Foreign Accountholders. One Foreign Accountholder changes from a "net winner" to a "net loser." This Foreign Accountholder has not filed a claim.

8. The Settlement Agreement furthers the interests of customers with allowed claims by adding a substantial amount of money to the Customer Fund. Specifically, the Customer Fund will be enhanced by approximately $326 million, the net amount of tax withholding for the six-year period up to and including December 11, 2008.

9. Given the potential expenditure of time, cost, complexities and litigation risk that would be involved in proceeding with any litigation against the United States and/or IRS, I have determined, in my business judgment, that the Settlement Agreement represents a fair compromise of the Debtors' claims against the United States and IRS.

10. I am seeking the issuance of a channeling injunction because I have been informed that the United States will not enter into the Settlement Agreement, or make the Settlement Payment, in the absence of a channeling injunction. Additionally, I believe that the entry of a channeling injunction substantially in the form of the injunction contained in the proposed Order being submitted contemporaneously with the Motion is appropriate. I will be recovering the vast majority of the amount of the Payments and it would be unjust to potentially expose the United States to claims and double payments when the United States will be remitting the entire net amount of the Payments (that is, the total payments minus approximately $4 million that was erroneously paid to two Foreign Accountholders as refunds) to me for the benefit of the Customer Fund. Therefore, I will obtain control over the funds that could be the subject of any future refund action by a Foreign Accountholder.

11. In sum, I respectfully submit that the Settlement Agreement should be approved (a) to avoid lengthy and burdensome litigation and (b) because the Settlement Agreement represents a reasonable compromise.

Trustee for the SIPA liquidation proceeding of Bernard L. Madoff Investment Securities LLC and the substantively consolidated bankruptcy case of Bernard L. Madoff

_____
IRVING H. PICARD, Trustee

Sworn to and subscribed before me this
22nd day of November, 2011

_____
Notary Public

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/2013

5