**HERRICK, FEINSTEIN LLP**
Two Park Avenue
Joshua J. Angel
Frederick E. Schmidt, Jr.
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
jangel@herrick.com
eschmidt@herrick.com

**BEASLEY HAUSER KRAMER & GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939

**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

Attorneys for A & G Goldman Partnership, individually and on behalf of a similarly situated class

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
                                      :
In re:                                :   Adv. Pro. No. 08-1789 (BRL)
                                      :
SECURITIES INVESTOR PROTECTION        :   SIPA Liquidation
CORPORATION,                          :
                                      :   (Substantively Consolidated)
            Plaintiff-Applicant,      :
                                      :
      v.                              :
                                      :
BERNARD L. MADOFF INVESTMENT          :
SECURITIES LLC,                       :
                                      :
            Defendant.                :
                                      :
------------------------------------- x

**MOTION OF PICOWER CLASS ACTION PLAINTIFFS FOR A DETERMINATION THAT THE COMMENCEMENT OF SECURITIES CLASS ACTION LAWSUITS AGAINST NON-DEBTOR PARTIES IS NOT PROHIBITED BY A PERMANENT INJUNCTION ISSUED BY THIS <u>COURT OR VIOLATIVE OF THE AUTOMATIC STAY</u>**

A & G Goldman Partnership,[1] individually and on behalf of all other similarly situated (collectively, the "Picower Class Action Plaintiffs" or "Movants"), by and through their undersigned counsel, as and for their motion (the "Motion") for entry of an order determining that neither the injunction issued by this Court as part of its order, dated January 13, 2011, nor the automatic stay provisions (the "Automatic Stay") of section 362 of title 11 of the United States Code (the "Bankruptcy Code"), bar, prohibit, restrict or prevent Movants from commencing and prosecuting a securities law class action (the "Class Action") against certain non-debtor defendants (collectively, the "Picower Defendants") in the United States District Court for the Southern District of Florida (the "Florida District Court"), respectfully represent as follows:

## PRELIMINARY STATEMENT

1. As more fully set forth below, Movants respectfully submit that neither the permanent injunction issued by this Court nor the Automatic Stay restricts the commencement and prosecution of the Class Actions in the Florida District Court because:

    - The securities law claims asserted by the Movants against the Picower Defendants in the Class Actions are neither "duplicative" nor "derivative" of any claims the Trustee brought or could have brought against the Picower Defendants. Those claims, which belong to BLMIS's investors, are not of the type which could be asserted by the Trustee (as defined below). Moreover, as confirmed by recent decisions rendered by the District Court for the Southern District of New York, the Trustee does not have standing to assert claims against third parties on behalf of customers of BLMIS (as defined below).

    - Movants do not seek any relief against the Debtors (as defined below) or property of the Debtors' estate in the Class Action.

2. Unless barred by order of this Court, Movants intend to file a class action

---

[1] A & G Goldman Partnership, like all other class members, is a "net winner" having (i) received the return of its principal investment with BLMIS, (ii) not received the full amount reflected in its last BLMIS account statement; and (iii) incurred significant economic damages separate and apart from the returns reflected in its last BLMIS account statement.

2

complaint (the "Class Action Complaint") substantially in the form annexed hereto as Exhibit "A" (without exhibits) in the Florida District Court.

## BACKGROUND

**The Madoff/BMIS Bankruptcy Court Cases**

3. On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a Securities Violation Complaint in the United States District Court for the Southern District of New York against the estate of Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities LLC ("BLMIS", and together with Madoff, the "Debtors"). The SEC alleged, *inter alia*, that the Debtors engaged in fraud through investment advisor activities of BLMIS.

4. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), the SEC consented to a combination of its action with an application filed by the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLIMS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

5. On December 15, 2008, the District Court entered an order pursuant to SIPA which, in pertinent part:

- appointed Irving H. Picard (the "Trustee") as trustee for the liquidation of the business of BLMIS, pursuant to section 78eee(b)(3) of SIPA;

- removed the case to this Court pursuant to section 78eee(b)(4) of SIPA; and

- authorized the Trustee to take immediate possession of the property of the Debtors, wherever located.

6. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff.

3

On June 9, 2009, this Court entered an order substantively consolidating the chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

**The Picower Settlement**

7.       On May 12, 2009, the Trustee filed a complaint (the "Picower Complaint") commencing an adversary proceeding against certain of the Picower Parties (as defined below), captioned *Picard v. Picower*, Adv. Pro. No. 09-1197 (BRL), in which he alleged that prior to the Filing Date, BLMIS made payments or other transfers (the "Transfers") totaling more than $6.7 billion to one or more of the Picower Parties.  The Picower Complaint asserted claims under, *inter alia*, section 547 of the Bankruptcy Code for avoidance and recovery of alleged preferential transfers, sections 544 and 548 of the Bankruptcy Code for avoidance and recovery of alleged fraudulent conveyances and section 542 of the Bankruptcy Code for turnover of alleged assets of the Debtors' estates.  The Trustee has since asserted that BLMIS transferred to the Picower Parties an amount of at least approximately $7.2 billion.

8.       The Trustee thereafter entered into a settlement agreement (the "Picower Settlement Agreement") with what are referred to therein as the "Picower BLMIS Account Holders", "Adversary Proceeding Defendants," and the "Picower Releasees" (collectively referred to herein as the "Picower Parties").  The Trustee presented the Picower Settlement Agreement to the Court for approval by motion dated December 17, 2010 (the "Picower Settlement Motion").  The salient terms of the Picower Settlement Agreement are as follows:

- Barbara Picower, one of the Picower Parties, on behalf of herself and the other Picower Parties, agreed to forfeit to the United States Attorney's Office for the Southern District of New York (the "Government") the amount of $7,206,157,717, of which $5 billion was to be credited and paid over to the Trustee with the balance remaining with the Government.

- The Trustee provided a broad release to the Picower Parties "from any and all past, present or future claims or causes of action that are, have been, could have been or might in the future be asserted by the Trustee."

- The effectiveness of the Trustee Picower Release was conditioned on only two things: (i) receipt by the Trustee or the Government of the Bankruptcy Settlement Amount; and (ii) the entry of either a final order of this Court approving the Picower Settlement Agreement, or a final order of the District Court approving a forfeiture agreement between the Government and the Picower Parties.

9. On January 13, 2011, the Court entered an order (the "<u>Picower Settlement Order</u>") approving the Picower Settlement Agreement. A copy of the Picower Settlement Order is annexed hereto as <u>Exhibit "B"</u>.

10. The Picower Settlement Order contained the following permanent injunction provision:

> ORDERED, that any BLMIS customer or creditor of the BLMIS estate who filed or could have filed a claim in the liquidation, anyone acting on their behalf or in concert or participation with them, or anyone whose claim in any way arises from or is related to BLMIS or the Madoff Ponzi scheme, is hereby permanently enjoined from asserting any claim against the Picower BLMIS Accounts or the Picower Releasees ***that is duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower Releasees.*** (emphasis added).

11. Upon information and belief, the Government Settlement Amount has been paid into escrow for the benefit of the Government, and although orders of this Court and the District Court have been entered, neither order has become final due to pending appeals.

12. As set forth hereafter, the claims contained in the Class Action Complaint are neither "duplicative or derivative of the claims brought by the Trustee" nor claims "which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower

5

Releasees."[2]

**The Class Action Complaint**

13. Upon approval of this Court, Movants will commence the Class Action by filing the Class Action Complaint in the Florida District Court.

14. The Class Action Complaint asserts claims (the "Class Action Claims") under section 20(a) of the Securities Exchange Act of 1934 (as amended, the "Exchange Act") against the Picower Defendants, based on, among other things, the Picower Defendants' control and influence over the decision making, record-keeping, securities transaction recording, and flow of funds and assets at BLMIS, which resulted in the Picower Defendants receiving billions of dollars of unearned profits from BLMIS.

## ARGUMENT

### THE FILING AND PROSECUTION OF THE CLASS ACTION COMPLAINT DOES NOT VIOLATE THE PERMANENT INJUNCTION ENTERED BY THIS COURT

15. The Class Action Claims are neither "duplicative" nor "derivative" of any claims made by the Trustee against the Picower Defendants. In fact, neither the Trustee nor the pre-petition Debtor could have asserted the Movants' securities law claims against the Picower Defendants. Thus, the Movants are not barred under the Picower Settlement Order from asserting their securities law claims against the Picower Defendants.

    **A.** **Neither BLMIS Nor the Trustee Could Assert the Class Action Claims on Their Own Behalf**

16. The Class Action Claims cannot be asserted by the Trustee or BLMIS. The Class Action Claims are based on control person liability pursuant to section 20(a) of the Exchange Act. In order to assert a claim under Exchange Act section 20(a), a plaintiff must allege a

---

[2] Movants are aware that the Settlement Order and the permanent injunction therein are the subject of appeals to the District Court for the Southern District of New York. For the purposes of this Motion, Movants take no position on the issues raised in those appeals

6

primary violation of section 10(b) of the Exchange Act.  See, e.g., STMicroelectronics v. Credit Suisse Group, 775 F. Supp. 2d 525, 535 (E.D.N.Y. 2011).  A plaintiff asserting a claim under Exchange Act section 10(b) and Securities and Exchange Commission Rule 10b-5,[3] in turn, must be a "purchaser" or "seller" of securities in order to have standing.  See Amorosa v. Ernst & Young LLP, 682 F. Supp. 2d 351, 367-69 (S.D.N.Y. 2010).

17. Here, the Class Action Complaint alleges that the Picower Defendants controlled BLMIS and that BLMIS committed violations of section 10(b) of the Exchange Act and Rule 10b-5.  Neither BLMIS nor the Trustee (acting on behalf of BLMIS) would have standing to commence a § 20(a) action against the Picower Defendants because BLMIS was neither a "purchaser" nor "seller" of its own securities.

18. Furthermore, a primary violator, such as BLMIS, may not assert a § 20(a) claim against its alleged controller.  See In re Maxim Integrated Products, Inc. Derivative Litigation, 574 F. Supp. 2d 1046, 1067 (N.D. Cal. 2008) (dismissing § 20(a) claim where plaintiffs sued derivatively on behalf of primary violator).  Accordingly, even if BLMIS were a purchaser or seller of BLMIS securities, it still could not assert a § 20(a) claim because it was the primary violator of § 10(b) of the Exchange Act and Rule 10b-5.

19. The Trustee, therefore, could not assert a direct § 20(a) claim against the Picower Defendants, and the Movants' Class Action Claims are not subject to the injunction in the Picower Settlement Order.

### B.   The Trustee Does Not Have Standing to Assert the Class Action Claims on Behalf of BLMIS Investors

20. The Trustee does not have standing to commence and prosecute the Class Action

---

[3] Private rights of action for violations of section 10(b) of the Exchange Act are created by Securities and Exchange Commission Rule 10b-5 ("Rule 10b-5").  See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 126 S.Ct. 1503, 1509 (2006).

HF 7012566 v.11  #99999/1000  12/13/2011 05:38 PM

Claims on behalf of BLMIS's investors. Two recent District Court decisions have helped to define the limits of the Trustee's ability to assert claims on behalf of BLMIS creditors against third parties. Both decisions establish conclusively that the Trustee may not assert claims against third parties on behalf of BLMIS's investors.[4]

### 1.    Picard v. HSBC

21.    On July 15, 2009, the Trustee commenced an adversary proceeding (the "HSBC Action") against HSBC Bank PLC and certain of its affiliates (collectively, "HSBC"), seeking approximately $2 billion in preferential or fraudulent transfers, and an additional $6.6 billion in damages under common law theories such as unjust enrichment, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty. The Trustee alleged that HSBC failed to adequately investigate BLMIS despite the existence of red flags and indicia of fraud. The United States District Court for the Southern District of New York (Judge Rakoff) withdrew the reference to address a threshold issue of federal non-bankruptcy law; to wit, whether the Trustee had standing to pursue common law claims against third parties on behalf of BLMIS's customers.

22.    On July 28, 2011, Judge Rakoff rendered a decision dismissing the Trustee's customer claims against HSBC for lack of standing. See Picard v. HSBC Bank PLC, 454 B.R. 25 (S.D.N.Y. 2011) (copy attached as Exhibit "C"). The Court rejected the Trustee's arguments that he had standing, and held that "the Trustee does not have standing to bring his common law claims either on behalf of customers directly or as bailee of customer property, enforcer of SIPC's subrogation rights, or assignee of customer claims." 454 B.R. at 37.

### 2.    Picard v. JPMorgan Chase & Co.

23.    The Trustee also commenced two adversary proceedings against UBS AG and

---

[4] The decisions also note that BLMIS would be barred from asserting direct common law fraud claims under the doctrine of *in pari delicto*.

8

certain of its affiliates (collectively, "UBS," and the adversary proceeding against it, the "UBS Action") and JPMorgan Chase & Co. and certain of its affiliates (collectively, "JPM," and the adversary proceeding against it, the "JPM Action"). The causes of action asserted by the Trustee in the UBS and JPM Actions were substantially similar, and the reference of both actions to the Bankruptcy Court was withdrawn by the District Court (Judge McMahon) in order to address the issue of whether the Trustee had standing to pursue common law claims (including aiding and abetting fraud, breach of duty and conversion, and unjust enrichment) against third party banks such as UBS and JPM on behalf of BLMIS customers.

24.     JPM moved to dismiss the common law claims asserted by the Trustee. UBS move to dismiss as well, joining JPM's arguments, and on November 1, 2011, the District Court (Judge McMahon) issued its decision dismissing the Trustee's common law claims for lack of standing in both the UBS and JPM Actions. See Picard v. JPMorgan Chase & Co., 2011 WL 5170434 (S.D.N.Y. Nov. 1, 2011) (copy attached as Exhibit "D").

25.     In its decision the Court in the JPM Action ruled consistently with Judge Rakoff's reasoning in the HSBC decision and held, *inter alia*, that the Trustee's common law claims belonged to the creditors of BLMIS, not the Trustee and that the Trustee did not otherwise establish any other basis to confer him standing to bring the common law claims. 2011 WL 5170434 at *3-*5. Here, the Trustee likewise does not have standing to assert the Class Action Claims against the Picower Defendants on behalf of the BLMIS investors.

26.     Because the Trustee could not assert the Class Action Claims against the Picower Defendants, either as a direct claim of the BLMIS estate or derivatively on behalf of BLMIS's investors, the Class Action Claims are neither duplicative of nor derivative of claims brought by the Trustee against the Picower Defendants. Accordingly, it is respectfully submitted that the

9

Class Action Claims are not permanently enjoined by the Picower Settlement Order.

## THE AUTOMATIC STAY DOES NOT APPLY

27. Just as the Class Action is not barred by the permanent injunction in the Picower Settlement Order, it is also not subject to the Automatic Stay. The Class Action Claims do not fall within any of the categories of claims against the Debtors or property of their estates that are stayed by section 362 of the Bankruptcy Code. The Debtors are not named as parties, nor does the Class Action Complaint seek a judgment or other remedy or relief against the Debtors or their property, directly or indirectly. Importantly, the Class Actions <u>do not seek any of the proceeds of the Trustee's settlement with the Picower Defendants</u>. By its plain language, section 362(a)(1) of the Bankruptcy Code stays actions only against a debtor. Courts continually have held that the automatic stay is inapplicable to actions and proceedings against non-debtors. <u>See Teachers Ins. & Annuity Ass'n v. Butler</u>, 803 F.2d 61, 65 (2d Cir. 1986); <u>In re United Health Care Org.</u>, 210 B.R. 228, 232 (S.D.N.Y. 1997); <u>Ripely v. Mulroy</u>, 80 B.R. 17, 19 (E.D.N.Y. 1987). <u>See</u> <u>also</u> <u>Credit Alliance Corp. v. Williams</u>, 851 F.2d 119, 121 (4th Cir. 1988) ("The plain language of § 362 ... provides only for the automatic stay of judicial proceedings and enforcement of judgments against the debtor or the property of the estate.") (citation and internal quotations omitted).

28. Here, the Class Action Complaint asserts claims against only the Picower Defendants and not the Debtor. Moreover, the Class Action Claims will not affect property of the Debtor's estate. Nor will Movants be usurping or interfering with causes of action belonging to the Trustee. As set forth above, the Trustee does not have standing to assert § 20(a) claims against the Picower Defendants. Moreover, the Trustee has already settled his claims against the Picower Defendants and the Movants do not seek to upset that settlement. Accordingly, the

10

Automatic Stay does not apply to the Class Action Claims.

## CONCLUSION

For the reasons set forth above, the Movants respectfully request that the Court (a) enter an Order (i) determining that neither the permanent injunction contained in the Picower Settlement Order nor the Automatic Stay prohibits the Movants from commencing and fully prosecuting the Class Actions.

Dated:  New York, New York  
        December 13, 2011

Respectfully submitted,

    */s/Joshua J. Angel*

**HERRICK, FEINSTEIN LLP**  
Two Park Avenue  
New York, New York 10016  
Telephone: (212) 592-1400  
Facsimile: (212) 592-1500  
Joshua J. Angel  
Frederick E. Schmidt, Jr.

**BEASLEY HAUSER KRAMER & GALARDI, P.A.**  
505 South Flagler Drive, Suite 1500  
West Palm Beach, Florida 33401  
Telephone: (561) 835-0900  
Facsimile: (561) 835-0939

- and -

**BLACKNER, STONE & ASSOCIATES**  
123 Australian Avenue  
Palm Beach, Florida 33480  
Telephone: (561) 659-5754  
Facsimile: (561) 659-3184

Attorneys for A & G Goldman Partnership, individually and on behalf of a similarly situated class