# EXHIBIT C

United States District Court,
S.D. New York.
Irving H. PICARD, Plaintiff,
v.
HSBC BANK PLC, Alpha Prime Fund Limited, HSBC Securities Services (Luxembourg) S.A., HSBC Bank Bermuda Limited, HSBC Fund Services (Luxembourg) S.A., HSBC Private Bank (Suisse) S.A., HSBC Private Banking Holdings (Suisse) S.A., HSBC Bank (Cayman) Limited, HSBC Securities Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Institutional Trust Services (Bermuda) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Ireland) Limited, HSBC Holdings PLC, Defendants.
Irving H. Picard, Plaintiff,
v.
Alpha Prime Fund Limited, HSBC Bank PLC, HSBC Securities Services (Luxembourg) S.A., HSBC Bank Bermuda Limited, HSBC Fund Services (Luxembourg) S.A., HSBC Private Bank (Suisse) S.A., HSBC Private Banking Holdings (Suisse) S.A., HSBC Bank (Cayman) Limited, HSBC Securities Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Institutional Trust Services (Bermuda) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Ireland) Limited, HSBC Holdings PLC, UniCredit S.p.A., Pioneer Alternative Investment Management Limited, Defendants.

Nos. 11 Civ. 763 (JSR), 11 Civ. 836 (JSR).
July 28, 2011.

**Background:** Securities Investor Protection Act (SIPA) trustee sought to assert claims on behalf of customers of defunct brokerage firm against third parties that allegedly aided and abetted firm's principal in massive Ponzi scheme perpetrated on customers. Defendants moved to dismiss for lack of standing.

**Holdings:** The District Court, Jed S. Rakoff, J., held that:
(1) SIPA trustee did not have standing to pursue such customer claims, and
(2) even if trustee otherwise might have standing, the *Wagoner* rule barred trustee, as successor in interest to firm's principal, from pursuing such claims.

Dismissed.

West Headnotes

**[1] Securities Regulation 349B 185.21**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.21 k. Proceedings. Most Cited Cases

While common law claims that Securities Investor Protection Act (SIPA) trustee sought to assert on behalf of customers of defunct brokerage firm arose under state law, question of SIPA trustee's standing to bring such customer claims in federal court was matter of federal law. Securities Investor Protection Act of 1970, 15 U.S.C.A. § 78aaa et seq.

**[2] Federal Civil Procedure 170A 103.2**

170A Federal Civil Procedure
170AII Parties
170AII(A) In General
170Ak103.1 Standing
170Ak103.2 k. In general; injury or interest. Most Cited Cases

Article III standing is threshold issue in all federal cases, since putative plaintiffs who lack standing are not entitled to have their claims litigated in federal court. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[3] Federal Civil Procedure 170A 103.2**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

170A Federal Civil Procedure
170AII Parties
170AII(A) In General
170Ak103.1 Standing
170Ak103.2 k. In general; injury or interest. Most Cited Cases

**Federal Civil Procedure 170A ⚿103.3**

170A Federal Civil Procedure
170AII Parties
170AII(A) In General
170Ak103.1 Standing
170Ak103.3 k. Causation; redressability. Most Cited Cases

To have Article III standing, plaintiff must demonstrate: (1) concrete and particularized injury in fact, (2) that can be fairly traced to defendants' conduct, and (3) that can be redressed by favorable decision. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[4] Federal Civil Procedure 170A ⚿103.4**

170A Federal Civil Procedure
170AII Parties
170AII(A) In General
170Ak103.1 Standing
170Ak103.4 k. Rights of third parties or public. Most Cited Cases

To satisfy prudential limitations on standing, party must assert his own legal rights and interests and cannot rest his claim to relief upon legal rights or interests of third parties.

**[5] Bankruptcy 51 ⚿2154.1**

51 Bankruptcy
51II Courts; Proceedings in General
51II(B) Actions and Proceedings in General
51k2154 Rights of Action by or on Behalf of Trustee or Debtor
51k2154.1 k. In general; standing. Most Cited Cases

Even though bankruptcy trustee can seek to recover monies on behalf of estate that will ultimately be used to help satisfy creditors' claims, trustee does not have standing under the Bankruptcy Code to assert claims against third parties upon behalf of estate's creditors themselves, since trustee stands in shoes of debtor, not of creditors.

**[6] Bankruptcy 51 ⚿2154.1**

51 Bankruptcy
51II Courts; Proceedings in General
51II(B) Actions and Proceedings in General
51k2154 Rights of Action by or on Behalf of Trustee or Debtor
51k2154.1 k. In general; standing. Most Cited Cases

Common law doctrine of in pari delicto, which generally precludes wrongdoer from recovering from another wrongdoer, may prevent bankruptcy trustee from bringing claims even on behalf of the estate of misbehaving debtor.

**[7] Bankruptcy 51 ⚿2154.1**

51 Bankruptcy
51II Courts; Proceedings in General
51II(B) Actions and Proceedings in General
51k2154 Rights of Action by or on Behalf of Trustee or Debtor
51k2154.1 k. In general; standing. Most Cited Cases

While, under New York law, in pari delicto is an affirmative defense, in federal court prudential considerations deprive bankruptcy trustee of standing even to bring a claim that would be barred by in pari delicto.

**[8] Securities Regulation 349B ⚿185.21**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker-Dealers; Securities Investor Protection Corporation
349Bk185.21 k. Proceedings. Most Cited Cases

Provision of the Securities Investor Protection Act (SIPA) giving SIPA trustee authority to investigate and "report to the court any facts ascertained

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

by the trustee with respect to fraud, misconduct, mismanagement, and irregularities" did not grant SIPA trustee standing to pursue claims on behalf of customers of defunct brokerage firm against third parties that allegedly aided and abetted firm's principal in massive Ponzi scheme perpetrated on these customers. Securities Investor Protection Act of 1970, § 7(d)(3), 15 U.S.C.A. § 78fff–1(d)(3).

**[9] Securities Regulation 349B ⚷185.21**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.21 k. Proceedings. Most Cited Cases

While focus of the Securities Investor Protection Act (SIPA) is on protecting securities customers, the powers of SIPA trustee are cabined by title 11, which does not grant trustee standing to assert claims on behalf of creditors of estate. Securities Investor Protection Act of 1970, 15 U.S.C.A. § 78aaa et seq.

**[10] Securities Regulation 349B ⚷185.10**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.10 k. In general. Most Cited Cases

Under canon of ejusdem generis, term "customer property," as used in the Securities Investor Protection Act (SIPA), had to be interpreted as referring to assets similar to cash and securities, rather than to something as amorphous and contingent as putative cause of action possessed by customer of brokerage firm. Securities Investor Protection Act of 1970, 15 U.S.C.A. § 78aaa et seq.

**[11] Securities Regulation 349B ⚷185.21**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.21 k. Proceedings. Most Cited Cases

Rule promulgated pursuant to the Securities Exchange Act in order to protect customers by segregating customer property from broker-dealer's own assets did not give a Securities Investor Protection Act (SIPA) trustee standing to pursue claims on behalf of customers of defunct brokerage firm against third parties that allegedly aided and abetted firm's principal in massive Ponzi scheme perpetrated on customers. 17 C.F.R. § 240.15c3–3.

**[12] Securities Regulation 349B ⚷185.21**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.21 k. Proceedings. Most Cited Cases

Securities Investor Protection Act (SIPA) trustee was not bailee in common law sense, and did not have standing, pursuant to common law of bailment, to pursue claims on behalf of customers of defunct brokerage firm against third parties that allegedly aided and abetted firm's principal in massive Ponzi scheme perpetrated on customers; trustee was not seeking to return any recovered bailments to individual bailors as a bailee would, but instead was seeking to distribute customer property pro rata, pursuant to the SIPA distribution scheme. Securities Investor Protection Act of 1970, 15 U.S.C.A. § 78aaa et seq.

**[13] Bailment 50 ⚷1**

50 Bailment
50k1 k. Nature and elements in general. Most Cited Cases

Under New York law, no bailment can exist where the would-be bailee is a thief.

**[14] Securities Regulation 349B ⚷185.21**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.21 k. Proceedings. Most Cited Cases

Securities Investor Protection Act (SIPA) trustee did not have standing, as enforcer of the Securities Investor Protection Corporation's (SIPC's) subrogation rights, to pursue claims on behalf of customers of defunct brokerage firm against third parties that allegedly aided and abetted firm's principal in massive Ponzi scheme perpetrated on these customers; as the plain language of the Securities Investor Protection Act (SIPA) made clear, the SIPC was subrogated only to customer net equity claims against the estate, not to all customer claims against third parties. Securities Investor Protection Act of 1970, § 9(a), 15 U.S.C.A. § 78fff–3(a).

**[15] Securities Regulation 349B ⚷185.16**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.16 k. Customers' claims; who are customers. Most Cited Cases

**Securities Regulation 349B ⚷185.21**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.21 k. Proceedings. Most Cited Cases

While provision of the Securities Investor Protection Act (SIPA) authorized SIPA trustee to obtain assignments from customers whose claims he satisfied, he could obtain assignments only of customers' net equity claims against estate, and not of claims that customer possessed against third parties; thus, this provision did not give a SIPA trustee standing, as alleged assignee of customer claims, to pursue claims on behalf of customers of defunct brokerage firm against third parties that allegedly aided and abetted firm's principal in perpetration of massive Ponzi scheme. Securities Investor Protection Act of 1970, § 8(b), 15 U.S.C.A. § 78fff–2(b).

**[16] Securities Regulation 349B ⚷185.21**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.21 k. Proceedings. Most Cited Cases

Even if Securities Investor Protection Act (SIPA) trustee might otherwise have standing to pursue customer claims against third parties that allegedly aided and abetted brokerage firm's principal in massive Ponzi scheme perpetrated on its customers, *Wagoner* rule barred trustee, as successor in interest to firm's principal, from pursuing such claims.

**[17] Contribution 96 ⚷5(6.1)**

96 Contribution
96k2 Common Interest or Liability
96k5 Joint Wrongdoers
96k5(6) Particular Torts or Wrongdoers
96k5(6.1) k. In general. Most Cited Cases

**Securities Regulation 349B ⚷185.16**

349B Securities Regulation
349BI Federal Regulation
349BI(F) Liquidation of Broker–Dealers; Securities Investor Protection Corporation
349Bk185.16 k. Customers' claims; who are customers. Most Cited Cases

Securities Investor Protection Act (SIPA) trustee could not rely upon common law of contribution in order to seek contribution for payments that he would have to make pursuant to SIPA's distributive scheme to customers defrauded by Ponzi scheme from third parties who allegedly aided and abetted

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

brokerage firm's principal in perpetrating this scheme, where right to contribution was not expressly provided in statute pursuant to which these payments would be made. Securities Investor Protection Act of 1970, 15 U.S.C.A. § 78aaa et seq.

***27** Oren J. Warshavsky, Marc E. Hirschfield, Baker & Hostetler LLP, New York City, NY, for Plaintiff.

Evan A. Davis, Cleary Gottlieb Steen & Hamilton, LLP, Todd E. Duffy, Anderson Kill & Olick, P.C., James Elliot Lahm, Patrick Kevin Slyne, Stull Stull & Brody, New York, NY, Timothy Joseph Burke, Stull, Stull & Brody, Los Angeles, CA, Helen Davis Chaitman, Phillips Nizer LLP, New York, NY, for Defendants.

***28** *OPINION AND ORDER*

JED S. RAKOFF, District Judge.

Though it sometimes seems otherwise, not every litigant has the right to appear in federal court. A would-be litigant must first establish "standing" to pursue his or her claims, by demonstrating, among other things, the existence of a "case or controversy" and a personal stake in the outcome of the case. In this particular case, the Court is called upon to determine whether Irving Picard (the "Trustee"), the trustee appointed pursuant to the Securities Investor Protection Act for the consolidated liquidation of Bernard L. Madoff Investment Securities ("Madoff Securities"), has standing to pursue common law claims against third parties who allegedly violated a duty to Madoff Securities' *customers* by failing to detect Madoff's fraud. For the reasons stated herein, the Court answers this question in the negative and thus dismisses the Trustee's common law claims against the "HSBC Defendants" [FN1] and the "UCG/PAI Defendants." [FN2]

FN1. The HSBC Defendants consist of HSBC Bank PLC, HSBC Holdings PLC, HSBC Securities Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Securities Services (Bermuda) Limited, HSBC Bank (Cayman) Limited, HSBC Private Banking Holdings (Suisse) S.A., HSBC Private Bank (Suisse) S.A., HSBC Fund Services (Luxembourg) S.A., and HSBC Bank Bermuda Limited.

FN2. The UCG/PAI Defendants consist of UniCredit S.p.A. and Pioneer Alternative Investment Management Ltd.

By way of background, after it was revealed in December 2008 that Madoff Securities was "a giant Ponzi scheme," *SEC v. Madoff,* 08 Civ. 7891 (S.D.N.Y. Dec. 11, 2008), the company went into bankruptcy. *See Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC.,* Adv. Pro. No. 08–01789 (S.D.N.Y.Bankr.Dec. 11, 2008). Shortly thereafter, on December 15, 2008, the Trustee was appointed to manage the consolidated liquidation of Madoff Securities. On July 15, 2009, the Trustee commenced adversary proceeding No. 09–1364A (BRL) (the "Trustee's Action") in the Bankruptcy Court. The 165–page Amended Complaint in that action, filed on December 5, 2010, in addition to seeking to recover some $2 billion in preferential or fraudulent transfers (Counts 1–19), seeks to recover under various common law theories such as unjust enrichment, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty (Counts 20–24), no less than $6.6 billion in damages from the HSBC Defendants and approximately $2 billion in damages from a group of thirty-six other defendants, including the UCG/PAI Defendants—all premised on their alleged failure to adequately investigate Madoff Securities despite being confronted with "myriad red flags and indicia of fraud." Am. Compl. ¶¶ 1, 318, 332, 557.

[1] The question of whether the Trustee can pursue such common law claims, either on behalf

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

of customers or on behalf of the estate, raises substantial, unresolved issues of federal non-bankruptcy law.[FN3] Accordingly, on April 12, 2011, the Court withdrew the reference of this action to the Bankruptcy Court for the limited purpose of addressing two threshold issues of ***29** non-bankruptcy federal law: (1) whether the Trustee has standing to bring his common law claims against the HSBC Defendants and the UCG/PAI Defendants, and (2) whether the common law claims against these defendants are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"). *See* Order, April 13, 2011 (confirming April 12 ruling from the bench); *Picard v. HSBC Bank PLC,* 450 B.R. 406 (S.D.N.Y.2011) (elaborating the reasons for the withdrawal of the reference).

FN3. The Trustee asserts that his common law claims are brought under the common law of New York State. *See* Am. Compl. ¶¶ 537, 542, 547, 554. However, the question of standing to bring such claims in federal court is a matter of federal law. *See, e.g., Coyne v. American Tobacco Co.,* 183 F.3d 488 (6th Cir.1999) ("[S]tanding is a matter of federal law not state ... law.").

Both the HSBC Defendants and the UCG/PAI Defendants subsequently moved to dismiss the common law claims, contending that the Trustee lacks standing to bring these claims and that these claims are barred by SLUSA. Because the Court concludes that the Trustee lacks standing to assert the common law claims, the Court need not address whether these claims are preempted by SLUSA.

[2][3][4] Standing under Article III of the United States Constitution "is a threshold issue in all cases, since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 117 (2d Cir.1991). To meet Article III requirements, the Trustee must demonstrate (i) a concrete and particularized "injury in fact," (ii) that can be fairly traced to the defendants' conduct, and (iii) that can be redressed by a favorable decision. *Bogart v. Israel Aerospace Indus. Ltd.,* No. 09 Civ. 4783(LAP), 2010 WL 517582, at *3–4 (S.D.N.Y. Feb. 5, 2010) (citing *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263 (2d Cir.2006)). Moreover, to satisfy "prudential" limitations on standing, "a party must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " *Wight v. BankAmerica Corp.,* 219 F.3d 79, 86 (2d Cir.2000) (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

[5] Accordingly, even though a bankruptcy trustee can seek to recover monies on behalf of the debtor's estate that will ultimately be used to help satisfy creditors' claims, it is settled law that the federal Bankruptcy Code (Title 11, United States Code) does not itself confer standing on a bankruptcy trustee to assert claims against third parties on behalf of the estate's creditors themselves, because the trustee stands in the shoes of the debtor, not the creditors. *See Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972).

[6][7] When it comes to common law claims, moreover, a bankruptcy trustee is often barred from bringing claims on behalf of the debtor's estate because of the common law doctrine of *in pari delicto,* which generally precludes a wrongdoer like Madoff Securities from recovering from another wrongdoer. Although, under New York State law, *in pari delicto* is an affirmative defense, *see Kirschner v. KPMG LLP,* 15 N.Y.3d 446, 912 N.Y.S.2d 508, 938 N.E.2d 941, 960 (2010), in federal court prudential considerations deprive a bankruptcy trustee of standing to even bring a claim that would be barred by *in pari delicto. Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991).

The Trustee, seeking to overcome these two obstacles, asserts of number of convoluted theories,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

none of which is ultimately persuasive. The Trustee first asserts that he has standing to bring common law claims against third parties as bailee of the property of Madoff Securities' customers. On its face, this theory encounters the objection that, because the Trustee is ***30** seeking to recover on behalf of customers and the fund of customer property, rather than the estate itself, he is thus not asserting "his own legal rights and interests," *Warth,* 422 U.S. at 499, 95 S.Ct. 2197, because, as noted, Title 11 does not confer standing on the Trustee to bring claims on behalf of the bankrupt estate's creditors, *see id.* at 428–34. The Trustee, however, contends that his power to bring these claims is derived from laws other than Title 11. In particular, he argues that he derives such authority from the statute pursuant to which he was appointed, the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq. See* Am. Compl. ¶¶ 48, 50.

[8] Yet SIPA generally provides that a SIPA trustee is only "vested with the same powers ... as a trustee in a case under title 11," *see* 15 U.S.C. § 78fff–1(a), and further prescribes that "[t]o the extent consistent with the provisions of this chapter a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under ... title 11." 15 U.S.C. § 78fff(b). Nevertheless, the Trustee argues that other provisions of SIPA somehow implicitly afford the Trustee authority, beyond that afforded to a bankruptcy trustee, to bring common law claims against third parties on behalf of Madoff Securities' customers.

[9] Neither the language nor the structure of SIPA supports this conjecture. To be sure, the focus of SIPA is on protecting securities customers. Specifically, the purpose of a SIPA liquidation proceeding is "to deliver customer name securities to or on behalf of the customers of the debtor entitled thereto" and "to distribute customer property and (in advance thereof or concurrently therewith) otherwise satisfy net equity claims of customers." 15 U.S.C. § 78fff(a)(1).[FN4] But the powers of a SIPA trustee are still, as indicated, cabined by Title 11. Thus, for example, SIPA permits the trustee "to recover any property transferred by the debtor which, except for such transfer, would have been customer property *if and to the extent that such transfer is voidable or void under the provisions of Title 11.* " 15 U.S.C. § 78fff–2(c)(3) (emphasis supplied).

> FN4. Under SIPA, "customer property" means "cash and securities ... at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." 15 U.S.C. § 78*lll* (4).

Nevertheless, the Trustee contends that SIPA allows him to bring common law claims on behalf of customers that a Title 11 Trustee could not bring, and that this power, while not expressly granted, is implied by several provisions of SIPA, principally a provision that gives a SIPA trustee authority to investigate and "report to the court any facts ascertained by the trustee with respect to fraud, misconduct, mismanagement, and irregularities, and any causes of action available to the estate." 15 U.S.C. § 78fff–1(d)(3). The Trustee argues that this investigative authority would be "academic" if he could not use the information discovered in such investigations to commence law suits against third parties on behalf of defrauded customers.

To say this argument is a stretch would be to give it more credence than it deserves. That Congress would want a SIPA trustee to publicly report to a court, and hence to the public, any fraud the trustee uncovers is hardly an "academic" exercise. Conversely, to suggest that this duty to report implicitly confers a vast power on such a trustee to commence lawsuits he could not otherwise bring goes far beyond any accepted legal principle defining***31** implied rights of action, *see generally Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), or for that matter, any ordinary use of the English language.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Indeed, a very similar argument was expressly rejected by the Supreme Court in *Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). There, a bankruptcy trustee argued that he had standing to bring claims on behalf of debenture holders because 11 U.S.C. § 567(3) "gives the trustee the right, and indeed imposes the duty, to investigate fraud and misconduct and to report to the judge the potential causes of action 'available to the estate.' " *Caplin,* 406 U.S. at 428, 92 S.Ct. 1678. The Supreme Court disagreed, noting that "there is nothing in the section that enables [the trustee] to collect money not owed to the estate." *Id.*

[10] The Trustee also argues that since customer property is defined in SIPA to include securities, cash, and " *any other property of the debtor* which, upon compliance with applicable laws, rules and regulations, would have been set aside or held for the benefit of customers," the Trustee has the authority to bring common law claims on behalf of customers, either because they are claims seeking the recovery of customer property or because the rights to bring such claims (so-called *choses in action* ) are themselves "customer property." The first alternative is a classic example of bootstrapping: the fact that if the Trustee could bring these claims any recovery might be treated as customer property does not provide him with standing to bring the claims in the first instance. The second alternative not only suffers from the same defect but also involves a far too expansive reading of "customer property." In accordance with the familiar canon of construction known as *ejusdem generis* —which "instructs courts to interpret a general term in a statute that follows a list of more specific terms 'to embrace only objects of the same kind or class as the specific ones,' " *City of New York v. Permanent Mission of India to United Nations,* 618 F.3d 172, 183 (2d Cir.2010) (quoting *United States v. Amato,* 540 F.3d 153, 160 (2d Cir.2008))—the "other property of the debtor" must refer to assets similar to cash and securities, rather than something as amorphous and contingent as a putative lawsuit. Moreover, even if the definition of customer property could be so stretched as to include rights in putative lawsuits, this would not of itself convey standing on the Trustee to bring such a lawsuit. Indeed, if that were the case, then there would be no need for SIPA to expressly authorize the Trustee to recover customer property by bringing avoidance actions. Yet the only provision in SIPA that actually discusses how the Trustee is permitted to go about recovering customer property provides the Trustee with the authority to bring avoidance claims, not common law claims.[FN5]

FN5. The Trustee also suggests that a SIPA trustee's powers must be broadly construed because, according to the Congressional record, a SIPA trustee has "rights to reclaim specifically identified property ... and *shall have additional rights,* " *see* 116 Cong. Rec. S9096–9101 at 9099 (June 16, 1970) (emphasis supplied). However, it is now well settled that the unambiguous language of a statute cannot be broadened or changed by reference to the legislative history. Moreover, there is no warrant to imply broad standing authority that is not otherwise available to a bankruptcy trustee based on language found in the congressional record that is this vague.

[11] In addition to arguing that SIPA itself authorizes a SIPA trustee to bring common law claims as a bailee of customer property, the Trustee and the Securities Investor Protection Corporation ("SIPC") ***32** suggest that such authority is supplied by implication from Rule 15c3–3 of the Securities Exchange Act of 1934 (the "Exchange Act"). *See* 17 C.F.R. § 240.15c3–3. Rule 15c3–3 protects customers by segregating customer property from a broker-dealer's own assets in order to "facilitate the liquidations of insolvent broker-dealers and to protect customer assets in the event of a SIPA liquidation through a clear delineation in Rule 15c3–3 of specifically identifiable property of customers." Exchange Act Release No. 9856, Adoption

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

of Rule 15c3–3, 37 Fed. Reg. 25224, 25225 (Nov. 29, 1972).

As an initial matter, the Court is mystified by the suggestion that Rule 15c3–3—a rule that is undisputedly not a part of SIPA—may somehow confer upon a SIPA trustee broad authority that is neither available to an ordinary bankruptcy trustee nor provided by SIPA. Indeed, since SIPA sets forth the powers and duties of a SIPA trustee and expressly states that a SIPA trustee is vested with the same powers as an ordinary bankruptcy trustee, *see* 15 U.S.C. § 78fff–1, any additional rights would necessarily have to be provided by SIPA itself; and, as discussed above, SIPA conveys no authority to a SIPA trustee to bring the common law claims here in issue.

In any event, Rule 15c3–3 cannot be read to grant the Trustee additional standing, because the rule, which requires broker-dealers to segregate all cash in their possession for the benefit of customers, says *nothing* about a SIPA trustee's standing to bring common law claims against third parties. *See* 17 C.F.R. § 240.15c3–3 (2011). And the single case cited by the Trustee in support of this argument similarly says nothing about a SIPA trustee's standing to pursue common law claims on behalf of the fund of customer property. *See In re MJK Clearing. Inc.,* 286 B.R. 109, 132 (Bankr.D.Minn.2002) (holding simply that all cash reserves held by the debtor at the time of the trustee's appointment, including the "debtor's other, non-customer accounts such as banking accounts containing funds related to the debtor's stock loan/stock borrow business," constitute "customer property").

Finally, the Trustee and SIPC argue that the Trustee's standing to bring common law claims as bailee of customer property derives from the common law. As explained above with respect to Rule 15c3–3, the Court sees no warrant for inferring that some law other than SIPA, such as the common law, can vest a SIPA trustee with powers that are broader than the powers afforded an ordinary bankruptcy trustee under Title 11 or otherwise expressly provided for in SIPA itself.

[12][13] In any case, however, the Court is not persuaded by the argument that the common law of bailment permits the Trustee to bring the common law claims in this case. To begin with, the Trustee is not a bailee in the common law sense, because he is not seeking to "return any recovered bailments to the individual bailors," as a bailee would, but instead is seeking to distribute customer property *pro rata* pursuant to the SIPA distribution scheme. Moreover, while bailees may generally bring claims against third parties for the loss or destruction of bailed property in their possession, here the Trustee's claim is that the HSBC Defendants and UCG/PAI knowingly or recklessly "funneled" money into Madoff's Ponzi scheme, *see* Am. Compl. ¶¶ 8, 14, 21–22, 97, 213, 545, and thus the actionable conduct is alleged to have occurred *prior to* the bailment. A further complication is that the immediate effect of the moving defendants' alleged misconduct caused a *gain* in the value of the bailed property rather than a *loss.* Finally, under New ***33** York law, [FN6] no bailment can exist where the would-be bailee is a thief and, here, Madoff acquired investments with the intent to further his Ponzi scheme. *See, e.g., Pivar v. Graduate Sch. of Figurative Art,* 290 A.D.2d 212, 213, 735 N.Y.S.2d 522 (1st Dep't 2002) (explaining that a bailment arises only where the bailee obtains "lawful possession" of the bailed property "without present intent to appropriate" it).

FN6. SIPC argues that the federal common law, rather than New York common law, should be used to determine whether the Trustee has the authority to pursue claims under a bailment theory. In so arguing, SIPC contends that "through Rule 15c3–3 and SIPA ... the SEC and Congress consciously adapted general principles of bailment law to custodial practices in the securities industry," *see* Memorandum of Law of the Securities Investor Protection Corporation in Opposition to the Motions

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

to Dismiss of HSBC and UCG/PAI at 26. Of course, SIPC cannot dispute that the words "bailment," "bailee," and/or "bailor" appear nowhere in SIPA or in Rule 15c3–3. The mere fact that SIPA and Rule 15c3–3 mandate that customer property be maintained in a separate fund so as to elevate customers' claims above those of general creditors does not imply a bailment relationship whereby the Trustee is permitted to pursue common law claims against third parties on behalf of customers. In any case, whether the Trustee asserts bailee standing under the New York common law or the federal common law, the Court finds that, given the profound differences between the instant case and the typical bailee-bailor scenario envisioned by the common law, common law bailment principles, whether state or federal, cannot be extended to confer the Trustee with standing to assert common law fraud claims on behalf of customers.

In short, the Court rejects in its entirety the claim by the Trustee that he has standing to bring his common law claims as bailee of customer property.

[14] The Trustee's second asserted basis for standing to bring these claims is as enforcer of SIPC's subrogation rights. The Trustee argues that since he has distributed approximately $800 million to customers from funds advanced by SIPC, and since SIPC has assigned to the Trustee its subrogation rights for amounts advanced to Madoff Securities customers, he has standing to assert SIPC's subrogation rights for at least that amount against all defendants in this action.

SIPA directs SIPC to "advance to the trustee such moneys ... as may be required to pay or otherwise satisfy claims *for the amount by which the net equity of each customer exceeds his ratable share of customer property.* " 15 U.S.C. § 78fff–3(a) (emphasis supplied). "To the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers." *Id.* SIPA also provides that "[t]o the extent moneys of SIPC are used to satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers against the [broker-dealer]." 15 U.S.C. § 78fff–4(c). Finally, SIPA provides that "SIPC as subrogee may assert no claim against customer property until after the allocation thereof to customers as provided in section 78ff–2(c)." 15 U.S.C. § 78fff–3(a).

The plain language of SIPA thus makes clear that SIPC is only subrogated to customer *net equity claims against the estate,* not to all customer claims against third parties. Furthermore, any implied right of subrogation against third parties would subvert SIPA's provision detailing the priority of customer property distribution. Under this priority scheme, SIPC cannot recover as subrogee until the customers are made whole. 15 U.S.C. § 78fff–2(c)(1). Permitting the Trustee to assert SIPC's subrogation rights against third parties ***34** would permit SIPC to recover from third parties before customers' net equity claims had been fully satisfied.

The Trustee and SIPC also argue that, since SIPA grants SIPC "all other rights it may have at law or in equity," common law subrogation rights provide another basis for standing. The Court concludes, however, that this catch-all phrase appearing in SIPA's text cannot be read to contradict a more specific provision of SIPA; otherwise, as noted, SIPC would be permitted to recover before customers' net equity claims had been paid in full. In response, the Trustee argues that the priority scheme will not be violated in this case because "SIPC has agreed to defer receipt of any subrogation amounts." *See* Trustee's Memorandum of Law in Opposition to the Motions to Dismiss Filed by Defendants HSBC and UniCredit ("Trustee Mem.") at 22 n.10. However, the fact that SIPC has agreed

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

not to exercise its purported common law right in this particular case does not change the fact that the general theory of subrogee standing that is being asserted here, which permits the Trustee as enforcer of SIPC's subrogation rights to pursue common law claims of customers against third parties before all customer claims are satisfied, would violate SIPA's priority scheme.

The Court therefore concludes that the Trustee's subrogation enforcer theory, like his bailee theory, fails to provide a basis for his standing to pursue common law claims on behalf of Madoff Securities' customers against third parties. But no discussion of either of these theories would be complete without adverting to the decision that the Trustee and SIPC vociferously claim supports both of these theories, namely, *Redington v. Touche Ross & Co.,* 592 F.2d 617 (2d Cir.1978), *rev'd on other grounds,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In *Redington,* the Second Circuit held, first, that § 17(a) of the Exchange Act created a private right of action on the basis of which customers of a failed brokerage firm could bring suit against the broker's accountants for preparing misleading financial statements. *Id.* at 621. On that basis, the Second Circuit further held that SIPC (as subrogee of the customers whose claims it had paid) and the SIPA trustee (as bailee of customer property) had standing to pursue claims on behalf of the broker's customers against the accountant. *Id.* at 624.

The Supreme Court, however, promptly reversed *Redington's* primary holding that § 17(a) of the Exchange Act created a private right of action, *see Touche Ross & Co. v. Redington,* 442 U.S. 560, 571–72, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). As explained below, this also means, in context, that the secondary holding of *Redington* is no longer good law; but, even assuming *arguendo* that it is still good law, the secondary holding in *Redington* does not support the Trustee's arguments for standing to bring the common law claims in this case.

As to whether *Redington's* secondary holding is still good law, note that when the Supreme Court reversed the Second Circuit's primary determination that a private right of action existed under § 17(a) of the Exchange Act, the case was remanded for a determination as to whether there were other bases for exercising subject matter jurisdiction. Finding none, the Second Circuit affirmed the district court's dismissal of the case. *Redington v. Touche Ross & Co.,* 612 F.2d 68, 73 (1979). Thus, while the Supreme Court did not actually reach the standing issue in *Redington,* a reversal based on want of subject matter jurisdiction deprives *Redington* of any precedential value. *See, e.g., Labarbera v. Clestra Hauserman, Inc.,* 369 F.3d 224, 226 n. 2 (2d Cir.2004) (observing that ***35** when the district court is reversed for lack of subject matter jurisdiction, "the district court's authority is of no precedential value"); *Gutierrez v. Fox,* 141 F.3d 425, 426 (2d Cir.1998) ( "Without jurisdiction, any decision or ruling by the court would be a nullity.").[FN7]

FN7. The Trustee contends that the Supreme Court reversed on a "merits" issue rather than a "threshold" issue, citing *Morrison v. Nat'l Austl. Bank Ltd.,* —— U.S. ——, 130 S.Ct. 2869, 2877, 177 L.Ed.2d 535 (2010) ("[T]o ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question."). However, *Morrison* can be distinguished from *Redington* in that it concerned whether an accepted cause of action brought under § 10(b) was properly pled, not whether a right of action existed at all. *See, e.g., National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 456, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) ("[I]t is only if such a [private] right of action exists that we need consider whether the respondent had standing to bring the action and whether the District Court had jurisdiction to entertain it.").

Accordingly, a few years after *Redington,* Judge Milton Pollack of this Court—an acknowledged expert on securities law—felt empowered to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

reject the secondary holding of *Redington* in *Mishkin v. Peat, Marwick, Mitchell & Co.,* 744 F.Supp. 531, 557–58 (S.D.N.Y.1990), in which he held that a "liquidating trustee is not granted the power to bring fraud claims against third parties on behalf of customers." Relatedly, in *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), the Supreme Court itself, without reaching whether SIPC could sue third parties based on state law subrogation principles, observed that SIPA itself "makes no reference" to such rights and noted that SIPC's "theory of subrogation is fraught with unanswered questions," citing Judge Pollack's decision in *Mishkin. Holmes,* 503 U.S. at 270, 274–75, 112 S.Ct. 1311. Moreover, while the Trustee argues that subsequent decisions have reinforced the precedential value of *Redington,* this is incorrect. In *Holmes,* the Supreme Court expressed "no opinion" as to the standing decision in *Holmes,* 503 U.S. at 271 n. 17, 112 S.Ct. 1311, and in *Securities Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 71 (2d Cir.2000), the Second Circuit was able to "assume without deciding" that a SIPA trustee could sue as bailee because it then dismissed the claims at issue under Fed.R.Civ.P. 12(b)(6).

But even assuming *arguendo* that *Redington's* holding with respect to subrogee standing and bailee standing remains good law, *Redington* does not mandate the conclusion that the Trustee has standing, either as bailee or subrogee, to bring the common law claims it brings here. To begin with, *Redington* does not anywhere hold that a SIPA trustee has standing to pursue *common law claims* against third parties as bailee of customer property. The precise holding of *Redington* is limited to standing to bring an implied private right of action under Section 17(a) of the Exchange Act—a private right of action that the Supreme Court found did not exist. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 579, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) . This is an important distinction because, unlike the implied private right of action for failure to discharge a regulatory duty that was at issue in *Redington,* common law claims (such as those asserted here) generally require proof of individual reliance and causation, which may pose justiciability concerns in the context of a mass tort action by a SIPA trustee. Moreover, while in *Redington* the SIPA trustee sought damages against the bankrupt broker-dealer's *own* accountant, in this case the Trustee seeks damages against entities that provided no direct services to Madoff Securities or to ***36** customers of Madoff Securities. Thus, the Court concludes that *Redington* cannot be read to confer to the Trustee the standing he seeks in the instant case.

Put differently, the situation in *Redington* was more analogous to a traditional bailor-bailee scenario than anything at issue here. In *Redington,* the defendant-accountant was alleged to have breached a regulatory duty owed to all of the bailors, causing loss to the bailed property while in the broker-dealer's possession. In this case, the defendants are not alleged to have breached a regulatory duty owed to all Madoff Securities customers. Rather, the purported breach is alleged to have occurred *prior to* the bailment, since the HSBC Defendants and UCG/PAI Defendants are alleged to have poured money into Madoff Securities. And while the defendants' conduct purportedly prolonged Madoff's Ponzi scheme, resulting in losses to Madoff Securities customers, the immediate consequence of defendants' alleged breach was to cause a gain in the value of the bailment, rather than a loss. Finally, unlike in the instant case, there was no suggestion that the broker-dealer in *Redington* participated in a fraud whereby it intended to "appropriate" customer property. *See Pivar,* 290 A.D.2d at 213, 735 N.Y.S.2d 522.

As for *Redington's* holding that SIPC had standing to assert common law claims as subrogee, this was in the context of SIPA as it stood at that time. But, subsequently, in May of 1978, SIPA was amended to include the priority scheme that explicitly states that SIPC cannot recover as subrogee until the broker-dealer's customers are made whole.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Compare* SIPA of 1970, Pub. L. 91–598 §§ 6(c)(2)(B), 6(f), 84 Stat. 1636 (1970), *with* SIPA of 1978, Pub. L. 95–283, § 1, 92 Stat. 249 (1978). Thus, while at the time *Redington* was decided, the Trustee's common law theory of subrogation did not directly conflict with a provision in SIPA, the priority scheme enacted post-*Redington* forecloses the possibility that SIPC can be subrogated to customer claims against third parties. In short, *Redington* is no longer controlling in this case, if it ever was.

[15] The Trustee's third theory—mentioned only in a footnote in his brief—is that he also has standing to bring common law claims as an assignee of customer claims. While SIPA does authorize a SIPA trustee to obtain assignments from customers whose claims he satisfies, *see* 15 U.S.C. § 78fff–2(b), "[t]he subsection of SIPA authorizing assignments ... is titled 'Payments to customers' and concerns SIPC payments for *net equity claims* to customers," not customer claims against third parties. *Mishkin v. Peat, Marwick, Mitchell & Co.,* 744 F.Supp. 531, 554 (S.D.N.Y.1990). In addition to Judge Pollack's decision in *Mishkin,* at least three other courts have similarly concluded that a SIPA trustee lacks standing as assignee to bring customer claims against third parties, because "the assignments authorized by section 78fff–2(b) of SIPA do not extend to all claims of customers against third parties but, rather, only to a customer's net equity claim" against the estate. *In re Park S. Sec., LLC,* 326 B.R. 505, 514 (Bankr.S.D.N.Y.2005). *Accord Giddens v. D.H. Blair & Co.,* 280 B.R. 794, 803–04 (Bankr.S.D.N.Y.2002); *Securities Investor Protection Corp. v. BDO Seidman, LLP,* 49 F.Supp.2d 644, 654 n. 7 (S.D.N.Y.1999). Moreover, while the Trustee has purportedly received assignments from customers who have received SIPC advances for their losses of customer property, the Trustee appears to admit that he has received no assignments of customer claims against third parties. *See* Trustee Mem. at 22 n.11 ("The Trustee is further authorized to receive assignments from customers and ***37** creditors of the estate, however, to date he has not received such assignments.").

[16] Having determined that the Trustee does not have standing to bring his common law claims either on behalf of customers directly or as bailee of customer property, enforcer of SIPC's subrogation rights, or assignee of customer claims, it remains only to amplify why, as mentioned at the outset, the Trustee cannot bring his common law claims on behalf of the estate. This is because such claims are negatived by the common law doctrine of *in pari delicto,* which "bars a trustee from suing to recover for a wrong that [the debtor whose the estate he represents] essentially took part in." *Wight v. BankAmerica Corp.,* 219 F.3d 79, 87 (2d Cir.2000).

To be sure, under New York law, which substantively governs the common law claims here asserted, the *in pari delicto* doctrine is an affirmative defense (albeit one strictly enforced), rather than a bar to standing. But, as already noted, standing to bring any claim in a federal court is controlled by federal law, and in *Wagoner, supra,* the Second Circuit held that prudential considerations deprived a trustee from even having standing to bring in federal court a common law claim that is clearly defeated by the doctrine of *in pari delicto. See Wagoner,* 944 F.2d at 118. Here, given that the Trustee's own complaint is replete with allegations of Madoff's role as the "mastermind [ ]" of the fraud, *see, e.g.,* Am. Compl. ¶ 1, the *Wagoner* rule bars the Trustee as "successor in interest" to Madoff and Madoff Securities, from bringing common law fraud claims. Thus, the Trustee has no standing to pursue on behalf of the estate his common law claims against the HSBC Defendants and the UCG/ PAI Defendants.

For completeness, it may be added that, even assuming *arguendo* that the *in pari delicto* doctrine is simply an affirmative defense in federal court rather than a prudential bar to standing, the doctrine would still bar all of the Trustee's common law claims except perhaps for his contribution claim—which would fall for other reasons. New

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

York law defines the *in pari delicto* defense extremely broadly, *Kirschner v. KPMG LLP,* 15 N.Y.3d 446, 912 N.Y.S.2d 508, 938 N.E.2d 941, 958–59 (2010), and the New York Court of Appeals has held that even though it is an affirmative defense, "in pari delicto may be resolved on the pleadings in a state court action in an appropriate case," *id.* 912 N.Y.S.2d 508, 938 N.E.2d at 946 n. 3. Under New York law, the exceptions to the application of the bar of *in pari delicto* are few and narrow and the Trustee concedes that he has not presently asserted any of the very few exceptions to its application. *Cf. In re CBI Holding Co., Inc.*, 529 F.3d 432, 443 (2d Cir.2008) (innocent insider exception); *In re Refco Securities Litigation,* 779 F.Supp.2d 372, at 374–75, 2011 WL 1542508, at *1 (S.D.N.Y.2011) (adverse interest exception). While he goes on to vaguely suggest that one or more of these exceptions "might apply" depending on the complete factual record, the Court concludes that this issue can be properly resolved at the pleading stage, since the overwhelming wrongdoing of Madoff and his now-defunct company, Madoff Securities, is abundantly clear from the face of the Trustee's own complaint. *See, e.g.,* Am. Compl. ¶¶ 1, 2, 13, 39.

[17] The only common law claim asserted in the pleadings that, on the face of the pleadings, might conceivably escape the bar of *in pari delicto* is the claim for contribution (Count 24), since parties seeking contribution are necessarily *in pari delicto. See Barrett v. United States,* 853 F.2d 124, 128 n. 3 (2d Cir.1988); *Rotter v. Leahy,* 93 F.Supp.2d 487, 496 (S.D.N.Y.2000). The Trustee asserts a claim for ***38** contribution based on the fact that he has to pay customer claims pursuant to SIPA. Given that these payments are being made pursuant to a comprehensive statutory scheme, however, the Court concludes that the Trustee cannot rely on state law to seek contribution where a right to contribution is not expressly provided by a federal statute. *See, e.g., Lehman Brothers, Inc. v. Wu,* 294 F.Supp.2d 504 (S.D.N.Y.2003) ("[W]hether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law."). If Congress had intended to confer upon the Trustee authority to seek contribution for payments of customer claims, it would have said so in SIPA.

Even as a matter of state law, moreover, the Court concludes that the New York contribution statute is itself inapplicable to the instant case. New York's contribution statute provides that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." *See* N.Y. C.P.L.R. § 1401. Here, while the Trustee is obligated to pay customer claims pursuant to a statutory scheme, he is not subject to "liability for damages" in the sense contemplated by New York's contribution statute.

In sum, the Court concludes that all of the common law claims in the Amended Complaint (*i.e.,* Counts 20–24) must be dismissed. It follows that the Court need not address whether these claims are preempted by SLUSA. Accordingly, the Court grants the motions to dismiss the common law claims against the HSBC Defendants and the UCG/PAI Defendants.[FN8] The Clerk of the Court is hereby directed to close the two cases captioned as 11 Civ. 763 (JSR) and 11 Civ. 836 (JSR). The Court further directs that what remains of adversary proceeding No. 09–1364A (BRL) be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.

FN8. Although it seems clear that these claims would also have to be dismissed against any other defendant who appeared and so moved, no other such defendant has so moved.

SO ORDERED.

S.D.N.Y.,2011.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Picard v. HSBC Bank PLC
454 B.R. 25, 55 Bankr.Ct.Dec. 58

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.