**Objection Deadline: December 15, 2011 at 4:00 pm**
**Hearing Date:        December 21, 2011 at 10:00 am**

Susan Power Johnston
Martin Beeler
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Phone: (212) 841-1000
Fax:    (212) 841-1010

*Counsel to Pasifin Co. Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORATION,

    Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

    Defendant.
----------------------------------------------------------------x
In re:

BERNARD L. MADOFF,

    Debtor.
----------------------------------------------------------------x

Adversary Proceeding
No. 08-01789-BRL

SIPA Liquidation
(Substantively Consolidated)

**LIMITED OBJECTION OF PASIFIN CO. INC. TO TRUSTEE'S
PROPOSED SETTLEMENT WITH THE INTERNAL REVENUE SERVICE**

    Pasifin Co. Inc. ("Pasifin") files this limited objection to the Trustee's motion to approve

his settlement with the Internal Revenue Service (the "Approval Motion").  Pasifin does not

contest the economic terms of the proposed settlement reflected in the Trustee/IRS settlement

- 2 -

agreement (the "Settlement Agreement").  Pasifin rather objects to the settlement insofar as it provides for Pasifin's customer claim to be calculated in an improper manner that is inconsistent, *inter alia*, with the "net equity" methodology previously approved by this Court and affirmed on appeal by the Second Circuit.  Pasifin and the Trustee have agreed that the claim-calculation issue may properly be deferred to a later date if the Court is so inclined, but Pasifin presents this limited objection now to preserve the issue.  In support of its limited objection, Pasifin states as follows:

1.Pasifin is one of the 145 "Foreign Accountholders" listed on Exhibit C to the Approval Motion.  Pasifin filed a customer claim in this case on February 24, 2009.  The Trustee allowed Pasifin's claim, but reduced that claim in respect of payments made by BLMIS to the IRS for purported tax withholding.  The Trustee treated such payments to the IRS as "withdrawals" by Pasifin, even though the payments were to the IRS, not to Pasifin, and despite the fact that Pasifin earned no income on its BLMIS investment and thus owed no tax to the IRS.  Pasifin objected to the Trustee's claim calculation (docket number 2016).  Such objection has not yet been adjudicated.

2.Purported withholding tax paid by BLMIS to the IRS on behalf of Foreign Accountholders differs from other amounts transferred by Madoff to perpetuate his fraud because such payments to the IRS were associated with particular named customers.  In Pasifin's case, BLMIS filed 1042-S forms with the IRS reflecting Pasifin's purported withholding tax liability and sent checks to the IRS to cover that specific purported liability.  Because of this fact, a strong case can be made that amounts paid to the IRS in the names of Foreign Accountholders are the property of such Foreign Accountholders — not general customer property that may be recovered by the Trustee.  Indeed, that apparently was the Trustee's own view when he treated

- 3 -

amounts paid by BLMIS to the IRS as "withdrawals" on Pasifin's part in his Notice of Determination of Pasifin's customer claim.

3.  Notwithstanding this point and reserving its position, Pasifin does not object to the Trustee's recovery of $326 million from the IRS pursuant to the Settlement Agreement, or to the Trustee's treatment of such funds as general customer property — <u>provided</u> that Pasifin's customer claim is adjusted appropriately.

4.  Based on communications with Trustee's counsel, Pasifin understands that, if the Approval Motion is granted, the Trustee intends to credit Pasifin's customer claim for amounts paid by BLMIS to the IRS in Pasifin's name after January 1, 2003, but that the Trustee does <u>not</u> intend to credit Pasifin's claim in respect of amounts paid to the IRS in its name before January 1, 2003. The Trustee apparently intends to continue treating amounts paid by BLMIS to the IRS before January 1, 2003 as "withdrawals" on Pasifin's part that reduce its customer claim.

5.  Pasifin objects to the Approval Motion to the extent it seeks Court approval for calculating Pasifin's customer claim in this manner. First, the Trustee's position that amounts transferred to the IRS in Pasifin's name before January 1, 2003 constitute "withdrawals" by Pasifin is flatly inconsistent with the Trustee's treatment of amounts paid by BLMIS to the IRS as general customer property — not the property of Pasifin and other Foreign Accountholders. If amounts paid by BLMIS to the IRS are to be treated as general customer property recoverable by the Trustee rather than as the property of Pasifin and other Foreign Accountholders, then such amounts may not properly be treated as "withdrawals" on Pasifin's part. That is especially so because, if granted, the Approval Motion would enjoin Pasifin from pursuing any claim against the IRS based on the payment of purported withholding tax, whether such payment occurred before or after January 1, 2003.

- 4 -

6. Second and perhaps most significantly, the Trustee's approach is also flatly at odds with the cash in/cash out methodology for calculating customer claims approved by this Court in its "net equity" ruling (docket numbers 1999, 2020) and affirmed on appeal by the Second Circuit. Pursuant to the cash in/cash out net equity methodology approved by the courts, Pasifin's claim should be calculated simply by taking the total cash it invested with BLMIS at any time, and reducing that number by the total cash it received back at any time. Monies paid by BLMIS to the IRS before January 1, 2003 were not distributions to Pasifin or for Pasifin's benefit, and thus should not count as "cash out" to Pasifin — especially in light of the Approval Motion's injunction provision.

7. Indeed, treating BLMIS payments to the IRS before January 1, 2003 as distributions to Pasifin would improperly perpetuate Madoff's fraud — something that the Trustee has consistently asserted should not be done in determining customer claims. To the extent Madoff paid purported tax amounts to the IRS in the names of Pasifin and other Foreign Accountholders, he did so only to create the false impression that he was operating a legitimate business. Such payments conferred no benefit on Pasifin and other Foreign Accountholders because they earned no real income on their BLMIS investments, and there was thus no tax actually due to the IRS.

8. The Trustee apparently contends that Pasifin's customer claim should only be credited for amounts diverted to the IRS after January 1, 2003 because the IRS is only repaying diverted funds it received for the post-January 1, 2003 period pursuant to the Settlement Agreement. But that does not logically follow and is inconsistent with the cash in/cash out methodology. Assume that a customer invested funds with BLMIS in 2000 and that those monies were then diverted to another customer later in 2000 pursuant to the Ponzi scheme. In

that circumstance, the full amount of the investing customer's investment in 2000 would count as "cash in" for purposes of calculating its customer claim under the Court-approved methodology. The money diverted to another customer in 2000 would not constitute "cash out" because it was received by a third party, not by the victimized investor. The fact that funds were diverted outside the purported six-year clawback period, and that the Trustee thus could not recover them, would be of no relevance whatsoever in calculating the victimized customer's claim.

9. Similarly here, the fact that part of Pasifin's investment prior to 2003 was diverted to the IRS outside the clawback period — and thus cannot be recovered by the Trustee pursuant to his fraudulent transfer theory — has no relevance whatsoever in calculating Pasifin's customer claim. The funds diverted to the IRS before January 1, 2003 simply were not distributions to or for the benefit of Pasifin, regardless of whether the Trustee can recover them, and they thus should not be treated as "cash out" to Pasifin. The only funds that should properly be treated as "cash out" for purposes of calculating Pasifin's customer claim are monies actually received by Pasifin. Pasifin has provided the Trustee with an accounting of amounts it invested and amounts it received.

10. Finally, the Trustee's proposal to treat amounts paid by BLMIS to the IRS before January 1, 2003 as "withdrawals" that reduce Pasifin's customer claim is at odds with the Settlement Agreement itself. The Settlement Agreement defines "Payments" as all amounts paid by BLMIS to the IRS prior to December 15, 2008 on behalf of Foreign Accountholders. *See* Settlement Agreement, Recital G; Motion ¶ 8. The defined term "Payments" is not restricted to amounts paid to the IRS after January 1, 2003 — and, indeed, the Settlement Agreement makes no reference whatsoever to the January 1, 2003 date. The Settlement Agreement goes on to provide that Foreign Accountholders shall receive a credit for the full amount of "Payments"

- 6 -

made to the IRS, not just Payments made after January 1, 2003 — *i.e.*, it provides that <u>none</u> of the Payments shall be treated as withdrawals that reduce a Foreign Accountholder's customer claim.  *See* Settlement Agreement ¶ 2 ("the Trustee shall adjust the Foreign Accountholders' BLMIS account balance by crediting all Payments out of the accounts for alleged withholding payments made to the IRS to the extent of those payments").  The Trustee should be required to abide by this term of the Settlement Agreement.  For this additional reason, the Trustee should not be permitted to treat amounts paid by BLMIS to the IRS in Pasifin's name before January 1, 2003 as distributions to Pasifin that reduce the amount of its customer claim.

## Conclusion

For the foregoing reasons, amounts paid by BLMIS to the IRS in Pasifin's name before January 1, 2003 may not be treated as "withdrawals" by Pasifin that reduce the amount of its customer claim.  As noted, Pasifin and the Trustee have agreed that the issue concerning the proper calculation of Pasifin's claim may be determined by the Court at a later date if the Court is so inclined.

Dated:  New York, New York
       December 15, 2011

                                          Respectfully submitted,

                                           */s/ Susan Power Johnston*
                                          Susan Power Johnston
                                          Martin Beeler
                                          COVINGTON & BURLING LLP
                                          The New York Times Building
                                          620 Eighth Avenue
                                          New York, New York  10018
                                          phone:  (212) 841-1000
                                          fax:  (212) 841-1010
                                          email:  sjohnston@cov.com

>Dennis B. Auerbach (*pro hac vice* pending)
>COVINGTON & BURLING LLP
>1201 Pennsylvania Avenue, N.W.
>Washington, D.C.  20004-2401
>phone:  (202) 662-6000
>fax:  (202) 662-6291
>email:  dauerbach@cov.com
>
>Counsel to Pasifin Co. Inc.

- 8 -

## CERTIFICATE OF SERVICE

      I certify that on this 15th day of December, 2011, I caused the foregoing limited objection to be served by hand delivery, electronic mail, and first class mail, postage prepaid, to:

    Elizabeth A. Smith, Esq.
    Elyssa S. Kates, Esq.
    Baker & Hostetler LLP
    45 Rockefeller Center
    New York, New York 10111

                                           */s/ Martin Beeler*
                                           Martin Beeler