UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

SECURITIES INVESTOR PROTECTION
CORPORATION,                                                    Adv. Pro. No. 08-01789 (BRL)

       Plaintiffs                                             SIPA Liquidation

vs.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

       Defendant

---------------------------------------------------------------

## BRIEF IN OPPOSITION TO THE TRUSTEE'S MOTION TO AFFIRM TRUSTEE'S DETERMNATIONS DENYING CLAIMS OF CLAIMANTS WITHOUT BLMIS ACCOUNTS IN THEIR NAMES

**INTRODUCTION:**

A review of the Memorandums of Law submitted by the Trustee's attorneys and by the

Securities Investor's Protection Corporation in support of Trustees Motion to deny claims of

claimants without BLMIS accounts in their names indicates that the major premise of their

argument is that the claimant Siegel IRA (Claim No. 00618) did not have an account at BLMIS

and that therefore the Siegel IRA could not be a "customer" for SIPA purposes. It is the

contention of the claimant that in substance Beacon's account at BLMIS was its account to the

extent of its proportionate interest in Beacon and that this position is further supported with

regard to IRA accounts and other qualified plans by the definition of "plan Assets" contained in

Department of Labor Regulations. At issue is whether the Court will decide the bona fides of the

~ 1 ~



Trustee's position based upon the form of claimant's investment in BLMIS or on the substance

of that investment.

## BACKGROUND FACTS:

1. On July 1, 2002, Howard Siegel on behalf of Howard Siegel, IRA (Siegel IRA)

   commenced an investment with Beacon Associates LLCII in the amount of $400,000. At

   December 1, 2008 the net equity of the Siegel IRA investment in Beacon Associates

   LLCII had grown to $1,580,677 and the total account value had grown to $2,302,426.

2. Beacon Associates LLCII had approximately 72.71% of its assets invested in Bernard L.

   Madoff Investment Securities (BLMIS) and accordingly Siegel IRA suffered a Madoff

   loss in the amount of $1,674,125 and a reduction in its net equity attributable to Madoff

   in the amount of $1,149,310.

3. On March 2, 2009, Howard Siegel on behalf of Howard Siegel, IRA filed a SIPC claim

   with Irving H. Picard detailing the losses enumerated above.

4. The SIPC claim filed utilized the BLMIS account number 1B0118 which was the BLMIS

   account number for Beacon Associates LLC I and II.

5. The SIPC claim of the Siegel IRA was filed utilizing BLMIS account number for Beacon

   Associates LLC I and II because those entities were effectively acting as an agent or

   nominee on behalf of the Siegel IRA as principal or beneficial owner of its proportionate

   share of the BLMIS account number IB0118. Furthermore, pursuant to a Department of

Labor (DOL) regulation dealing with the definition of plan assets and plan investments, the Siegel IRA is deemed to have an undivided interest in its proportionate share of the underlying assets of Beacon LLC I and II one of which was its account at BLMIS.

6.  On December 8, 2009, the Trustee sent a determination letter (the "Determination Letter") rejecting the Siegel IRA claim stating that:

> *based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. – 78lll(2). Accordingly, your claim for securities and/or a credit balance is denied.*

## ARGUMENT:

7.  The Trustee's denial of the Siegel IRA claim solely on the basis that the Siegel IRA did not have a BLMIS account in its name is insufficient grounds and in of itself for a final determination of this matter. An examination is required of the facts surrounding Beacon Associates LLC's investment with BLMIS, SIPC's own rules for determining who the "customer" is with respect to an account, relevant case law on the subject, and DOL regulations that deal with the definition of plan assets. Claimant believes that an examination of these areas will result in the conclusion that the Siegel IRA has met its burden of proof to be considered a "customer" of BLMIS for SIPC purposes.

8.  One only needs to look at SIPC's own rules to determine that someone who is not named in the broker-dealer's books and records as an account holder can be a customer. SIPC's Series 100 rules particularly Rule 101-Individual Accounts provides at (a) that "all accounts held with a member by a person in his own name, <u>and those which under these rules are deemed his individual accounts</u>......" (b) <u>An account held with a member by an</u>

<u>agent or nominee for another person as principal or beneficial owner shall…be deemed to
be an individual account of such principal or beneficial owner.</u>

The plain meaning of Rule 101 (a) and (b) confirms that a person whose name does not
appear in the books and records of BLMIS can be the beneficial owner of an account that
does appear in BLMIS books and records under a different name, and thus qualify as a
customer for purposes of a SIPC recovery.

9.  Judicial interpretation of the definition of a customer for SIPC purposes and more
particularly the application of the rules to an agent-nominee/principal-beneficial owner
situation is sparse.  The trilogy of opinions from the Bankruptcy Court, District Court and
U.S. Court of Appeals, Second Circuit involving the customer status for SIPC purposes
of employee beneficiaries of a pension trust that had an account at Morgan, Kennedy &
Co., Inc., a liquidating broker-dealer, sheds some light on the criteria to be applied.

10. The liquidation of Morgan, Kennedy & Co., Inc. resulted in the rendering of three court
opinions concerning the "customer" status of an employee profit sharing trust and its
underlying employee beneficiaries.

The SIPC trustee took the position that each of the employee beneficiaries of the profit
sharing trust was a separate "customer" for purposes of recovery under SIPA.  SIPC
disagreed with its own trustee and took the position that it did not consider each
employee beneficiary as a separate customer but only the profit sharing trust as a single
entity "customer".  The issue as framed was argued in the bankruptcy court in *Securities*

*and Exchange Commission (Plaintiff) and Securities Investor Protection Corporation*

*(Applicant) v. Morgan, Kennedy & Co., Inc. et al. 1975 WL353 (S.D.N.Y.).*

The Bankruptcy Judge citing the legislative policy behind the creation of SIPA ruled that

each beneficiary of the trust was a separate "customer". The judge cited the Series 100

Rules adopted by SIPC for the proposition that beneficial ownership of an account is the

critical factor in determining who is to be considered a "customer". Rule 101(b) is cited

as specifically providing that where an account is held by an agent or nominee for

another person as a principal or beneficial owner...such account be deemed to be an

individual account of such principal or beneficial owner. The case was then appealed by

SIPC to the U. S. District Court for the Southern District. The District Court affirmed the

holding of the Bankruptcy Court that each of the employee beneficiaries was a separate

"customer", *Securities and Exchange Commission (Plaintiff) and Securities Investors*

*Protection Corporation (Applicant) v. Morgan Kennedy & Co., et al 1975 WL399*

*(S.D.N.Y.).* The District Court buttressed the reasoning of the Bankruptcy Court by

adding that for the purposes of SIPC's own Rule 101(b),

> *SIPC found itself comfortably able to look beyond the formalities of "title" and*
> *account designations to protect the "persons" affected with the kind of*
> *substantial interest Congress cared about.*

The Court then makes the compelling argument that:

> *elsewhere in SIPC's own Rules, there is no undeviating identity between an*
> *"account" and a "customer". It has overridden the identity even where the result*
> *has been to diminish the protection for individual beneficiaries.*

Citing Rule 101(c) where more than one trust account held for the same beneficiary is to

be combined so that the protection afforded is to one separate "customer" the Court states

that:

> *processing formal designation of "account" in that situation, SIPC has looked at the individual human "beneficiary" as the measure of protection. That approach should not be shunned when it is favorable to the real party in interest – the true investor with his small but vital stake and adopted only when it hurts.*

SIPC, having lost at both the Bankruptcy Court and District Court levels, appealed to the U.S. Court of Appeals for the Second Circuit where the lower Court decisions were reversed in favor of SIPC. It is important to review the basis of the reversal and whether there are sufficient facts with respect to Beacon's BLMIS account to distinguish this holding from the appropriate determination of "customer" status in Beacon's situation.

11. The U.S. Court of Appeals, Second Circuit in *Securities Investor Protection Corporation, Applicant-Appellant, Securities and Exchange Commission, Plaintiff v. Morgan, Kennedy & Co., Inc. et al, Defendant-Appelees 633F.2nd 1314 (1976)* essentially held in reversing,

> *that where title to the trust assets was held by three trustees who were responsible for the management of the trust and the investment of its assets, the account with the brokerage house was held in the trustee's names, the names of the various employee beneficiaries did not appear on the brokerage house's books or records, and control over the investment decisions was exercised solely by the trustees, who communicated regularly with the brokerage house with respect to all transactions, the employee beneficiaries did not qualify as "customers".*

12. A comparison of the criteria used by the Court of Appeals in arriving at its decision when compared with the factual background of a Beacon investor should in general yield a result classifying the Beacon investor as a "customer". When the particular facts of the Siegel IRA are grafted onto the general qualifications criteria for "customer" status, its claim for separate "customer" status is enhanced.

The Court denied "customer" status to the employee beneficiaries because the trust account was in the name of the trustees who had exclusive power to entrust the assets to

the debtor, to invest and reinvest, and to purchase and trade securities in the account as
they saw fit. The Court places additional emphasis on the fact that the employee
beneficiaries were neither investors nor traders with respect to the trust's brokerage
account.

Compare this to the Siegel IRA and Beacon's relationship to the BLMIS account. While
it is true that the BLMIS account through which the Siegel IRA invested was in the name
of Beacon, this was merely a means to an end for the Siegel IRA to invest with Bernard
Madoff (Madoff) and to partake in the steady returns for which Madoff was famous. An
attempt was made to invest the Siegel IRA directly with BLMIS but this attempt was
rebuffed because by 2001 BLMIS would no longer accept an IRA as a direct investor.
Shortly thereafter, an investment advisor referred the Siegel IRA to Beacon as a means to
circumvent BLMIS refusal to open new IRA accounts. Certainly, the position of the
Siegel IRA was that of an investor hoping to capitalize on the purported investment
acumen of Madoff not the Beacon fund managers. There is a clear difference between
the Siegel IRA position with respect to the BLMIS account and the relationship of the
employee beneficiaries which the Court found wanting as to the investor or customer
requirement.

Beacon's fund managers were mere transmitters of their investor's money to BLMIS.
Beacon was a conduit through which investors otherwise prevented from directly
investing with BLMIS, because they could not meet BLMIS minimum dollar amount for
investment or because the investment vehicle was an IRA, could gain access to an
account with BLMIS.

The Court makes issue of the fact that the employee beneficiaries lacked the ability to invest and reinvest and to purchase and trade securities with respect to the account and that the trust could do this as it saw fit. Clearly this was not the relationship of Beacon's fund managers with respect to the BLMIS account. The Beacon fund managers made no investment decisions with respect to the funds transmitted to BLMIS which was intended, but as has been unfortunately born out there were no investment decisions made at all. The Beacon fund managers' power to invest and reinvest in the BLMIS account is also illusory. Their power to invest and reinvest was controlled by the fund investors' contributions and withdrawals and BLMIS' willingness to accept new investments. One had to get advance permission to make an initial investment or increase an existing investment which the fund had to clear with BLMIS. The fund's relative percentage investment with BLMIS when compared with the fund's other investments was relatively consistent principally governed by BLMIS' willingness to accept new funds. In short, the Court's criteria for denying "customer" status to the employee beneficiaries are inapplicable to Beacon's investors. While the form of the investment with BLMIS required an intermediary as far as the Siegel IRA was concerned, the substance of the transaction was an investment by the Siegel IRA with BLMIS. In this situation, for the reasons stated, the lower Court's reasoning is more persuasive than the Appellate Court.

13. The legislative history regarding SIPA evidences a strong predilection to afford protection to the ultimate investor whose funds were invested, and not to limit the protection to a "straw man" whose only function was to transmit investors' funds to the brokerage account on their behalf and remit withdrawals on their command. Clearly, as

the facts unfortunately revealed, this was the only material role played by Beacon. It was

an agent for an undisclosed principal which brings the "customer" status determination

within the ambit of the previously discussed Series 100 Rules. As the lower Court in the

Morgan Kennedy & Co., trilogy pointed out,

> *these rules were adopted by SIPC to provide guidelines for identifying accounts of separate customers of member stockbrokers clearly recognize that <u>beneficial ownership of an account is the critical factor</u> in determining who is to be considered a "customer" of a stockbroker member" (emphasis added).*

14. The statute at 15 U.SC C 7811 (2), SIPC Series 100 Rules at Rule 101 (a) and (b), the

case law and the facts of Beacon's operation with respect to its BLMIS account support

the position that the Siegel IRA is a separate "customer" of BLMIS. There can be no

doubt that the Siegel IRA was the beneficial owner of Beacon's BLMIS account and that

this is the critical factor for "customer" status.

Sustaining separate "customer" status requires overcoming the position that although

Beacon investors are the beneficial owners of Beacon's BLMIS account, they should

nevertheless be aggregated together as one customer for SIPA purposes. While SIPC

Rules provide for aggregation of multiple accounts into one customer in certain

circumstances, logic dictates that it is necessary to disaggregate where a nominee or agent

has a single account on behalf of multiple beneficial owners. The beneficial owners of

the account should be disaggregated into separate customers of their proportionate share

of the single account maintained on their behalf. As the District Court in the Morgan,

Kennedy case stated on this point,

> *Piercing the formal designation of account" in that situation, SIPC has looked at the individual human "beneficiary" as the measure of protection. That approach should not be shunned when it is favorable to the real party in interest -- the true investor with his small but vital stake -- and adopted only when it hurts.*

In other words, finding the true beneficial owners of an account and providing them protection against loss remains the overriding purpose of SIPC. While aggregation of accounts into one "customer" is appropriate to avoid duplicate benefits in certain circumstances, disaggregation is appropriate to provide protection where to do otherwise would provide such diminished benefit to the true investors as to be inconsistent with the purpose for SIPC's creation and its legislative history.

15. With respect to IRA investors, there is additional support for the position that each IRA investor is the beneficial owner of its proportionate share of Beacon's BLMIS account. This support emanates from Department of Labor Regulation 29CFR Sect. 2510.3-101 Definition of "Plan Assets" – plan investments. The general rule of this regulation provides that where a plan (e.g. the Siegel IRA), invests in another entity and that entity (e.g. Beacon) is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940,

> *its assets include both the equity investment (e.g. the investment in Beacon) and an undivided interest in each of the underlying assets of the entity...(e.g. Beacon's account at BLMIS).*

There are two other tests that must be met for the underlying assets of the entity to be deemed plan assets. The entity must not be an "operating company" as that term is defined at 29 CFR Sect. 2510.3-101 (c). Beacon was not an operating company as it was not

> *"primarily engaged, directly or through a majority owned subsidiary in the production or sale of a product or service other than the investment of capital".*

The second test requires that equity participation in the entity by benefit plan investors is significant. 29 CFR Sect. 2510.3-101(f)(1) provides that,

*equity participation in an entity by benefit plan investors is "significant" on any date if immediately after the most recent acquisition of any equity interest in the entity, 25 percent or more of the value of any class of equity interests in the entity is held by benefit plan investors.*

Benefit plan investors is defined in 29 CFR Sect. 2510.3-101(f)(2) and includes an IRA.

Beacon in its offering memorandum at page 41 referred to the Department of Labor regulation,

> *Under a regulation of the DOL (Department of Labor) when an ERISA Plan or Individual Retirement Fund acquires an equity interest in an entity such as the company, which interest is not a publicly offered security, as is the case with the Membership Interests... If such Benefit Plan Investors (which includes ERISA Plans, Individual Retirement Funds and Non-ERISA Plans) own 25% or more of the Membership Interests..., the underlying assets of the Company will constitute plan assets... The Managing Member anticipates that 25% or more of the Membership Interests...will continue to be held by Benefit Plan Investors and accordingly, the underlying assets of the Company will continue to be deemed to be plan assets of the investing ERISA Plans and Individual Retirement Funds.*

Accordingly, on the basis of this DOL regulation, the underlying assets of Beacon will constitute plan assets. Howard Siegel, IRA will be deemed to have an individual interest in these assets. One of the Company's assets was its brokerage account at BLMIS. Howard Siegel, IRA as a Benefit Plan Investor is deemed to own directly its proportionate share of customer account No. 1B0118 and the underlying securities and cash contained therein. This entitles Howard Siegel, IRA to its own separate SIPC claim based on its loss as detailed in its previously filed claim.

## CONCLUSION:

It is clear from the Trustee's position in lumping together sixteen funds in this one proceeding that the Trustee believes that the form that the investment took is controlling. It is the claimant's position that the substance of the investment should control and that

within SIPA's own rules there is room for an individual's specific facts and the manner in which its fund interacted with BLMIS that would allow for the fund's account at BLMIS to be deemed that of the individual investor. It is clear that claimant's intention was to invest in BLMIS, that is was directed to Beacon by his investment advisor as the means to accomplish this investment. Claimant had no interest in the investment acumen of Beacon's managers and in fact they had none. Claimant was charged a management fee which in reality was an access fee to BLMIS. Beacon's managers did not provide any decision making with regard to when to invest, how much to invest and when to withdraw. Those decisions were effectively made between claimant and BLMIS. Beacon merely carried out claimant's investment instructions in a typical principal/agent relationship. As the principal and beneficial owner of its proportionate share of Beacon's BLMIS account, claimant should be deemed the "customer" for SIPC purposes.

Respectfully submitted,

Howard Siegel, on behalf of the Siegel IRA (Claim No. 006180)
154 Porto Vecchio Way
Palm Beach Gardens, FL  33418
561-493-8799
917-951-5962