# EXHIBIT B

### DISCRETIONARY INVESTMENT MANAGEMENT AGREEMENT

This Discretionary Investment Management Agreement (hereinafter the "Agreement")
made this *1st* day of *July*, 2002, by and between the **UPSTATE NEW YORK
BAKERY DRIVERS AND INDUSTRY PENSION FUND** (hereinafter the "Fund"), and the
Trustees of said Fund (hereinafter the "Board"), and **J.P. JEANNERET ASSOCIATES, INC.**
(hereinafter the "Investment Manager"),

### W I T N E S S E T H :

WHEREAS, the UPSTATE NEW YORK BAKERY DRIVERS AND INDUSTRY
PENSION FUND was established by the Board pursuant to an Agreement and Declaration of
Trust (hereinafter the "Trust Agreement").

WHEREAS, under the terms of said Trust Agreement, the Board is empowered to
designate an Investment Manager for the purpose of investing all or such part of the assets of the
Fund as may be designated by the Board for investment by any Investment Manager; and

WHEREAS, the Board desires the Investment Manager hereunder to manage and invest
certain assets belonging to the Fund (hereinafter the "Investment Account Assets") and said
Investment Manager is willing to manage, and invest such assets pursuant to the terms of this
Agreement;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants
herein contained, the Board and the Investment Manager do hereby covenant and agree as
follows:

1.    **DUTIES AND REPRESENTATIONS**

CUSTODIAL TRUST COMPANY (hereinafter the "Custodian") is the custodian of

certain assets belonging to the Fund.  Pursuant to the authority granted under the Trust

Agreement, the Board appoints the Investment Manager, as the Board's attorney-in-fact, to invest

and reinvest any and all assets deposited with the Custodian for investment by the Investment

Manager, as fully as the Board itself could do.

The Trustees acknowledge that in the event an investment is made by the Investment

Manager in Beacon Associates LLC or Beacon Associates LLC II, such assets invested are

custodied with Beacon Associates LLC or Beacon Associates LLC II.

The Investment Manager hereby accepts this appointment, hereby acknowledges that it is

a fiduciary with respect to the Fund Investment Account Assets, certifies that it is an "Investment

Manager" as that term is defined in ERISA Section 3(38), and agrees to supervise and direct the

investment of the Investment Account Assets in accordance with (i) the written investment policy

adopted by the Board  (hereinafter the "Investment Guidelines") simultaneously delivered

herewith to the Investment Manager, (ii) the current funding policy that has been established to

carry out the objectives of the Fund as communicated to the Investment Manager and (iii) the

requirements of the Employee Retirement Income Security Act of 1974, as amended (hereinafter

"ERISA").

Subject to the attached Investment Guidelines, the Investment Manager may, in its full

discretion and without obligation on its part to give prior notice to the Board, (a) buy, sell,

exchange, convert, and otherwise trade in any stocks, bonds, and other securities, and (b)

establish and execute security transactions, through accounts with such brokers or dealers as the

Investment Manager may select, except to the extent otherwise directed by the Board; provided,

however, that all such activities shall be conducted in a manner consistent with the Investment Guidelines, the Investment Manager's obligations hereunder, the requirements of ERISA and any other applicable local, state or federal laws or regulations.

The Board may from time to time amend the Investment Guidelines; provided, however, that the Investment Manager will not be bound to follow any such amended Investment Guidelines until it has received written or actual notice thereof from the Board.

2.    **BONDING AND LIABILITY INSURANCE**

The Investment Manager further agrees to maintain such dollar amount of liability insurance, and bonding coverage in compliance with Section 412 of ERISA, necessary to fully protect the Fund from any potential losses arising on account of the actions of the Investment Manager, as permissible hereunder. Evidence of insurance and bonding coverage acceptable to the Board shall be provided by the Investment Manager to the Board and shall provide that there will be no cancellation without a thirty (30) day prior written notice to the Board.

3.    **INVESTMENT ACCOUNT ASSETS**

The Investment Account Assets as defined herein shall consist of cash and investments belonging to the Fund deposited with the Custodian for investment by the Investment Manager, which shall be held for the exclusive benefit of the Fund, plus all new investments, reinvestments, and proceeds of the sale thereof, including, without limitations, all dividends and interest on investments, and all appreciation thereof and additions thereto, less depreciation thereof and withdrawals therefrom.

4.    **FIDUCIARY DUTY**

The Investment Manager shall perform its duties hereunder with the care, skill, prudence, and diligence, under the circumstances then prevailing, that a prudent man acting in a like

capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims, and shall diversify the Investment Account Assets so as to

minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do

so, and in accordance with the documents and instruments governing the Fund. All assets

managed by the Investment Manager are to be held for the exclusive benefit of participants and

beneficiaries of the Fund.

5.    **DISCRETION**

In addition to and not in limitation of the powers and discretions vested in the Board, by

law, the Investment Manager shall possess the following powers subject to the attached

Investment Guidelines:

(a)    To sell, exchange, convey, transfer, or otherwise dispose of, any securities

or property held by the Custodian for investment purposes, by private contract or at public

auction, and no person dealing with the Investment Manager shall be bound to see to the

application of the purchase money or to inquire into the validity, expedience, or propriety of any

such sale or other disposition; all such sale, purchase, or other instructions relating to security

transactions shall be communicated to the Custodian of the Fund, including written confirmation

to the Custodian, of all instructions which are so directed by the Investment Manager;

(b)    To employ suitable agents and counsel, with written approval of the Board

(who may be agents or counsel for the Board), and to pay their reasonable expenses and

compensation;

(c)    To make, execute, acknowledge, and deliver any and all documents of

transfer and conveyance and any and all other instruments that may be necessary or appropriate

to carry out the powers herein granted;

4

(d)    To settle, compromise, or submit to arbitration any claims, debts or damages due or owing to or from the Investment Account Assets, to commence or defend suits of legal or administrative proceedings, and to represent the Investment Account Assets in all suits and legal proceedings (such legal counsel as is necessary shall be the Fund's legal counsel);

(e)    To vote all stock proxies in a manner calculated to increase the value of Investment Asset Accounts and consistent with the Investment Manager's fiduciary duties under ERISA Section 404(a)(1), to keep accurate records of such voting, and to report to the Trustees on a regular basis regarding the manner in which stock proxies are voted.

(f)    The Board will instruct the Custodian, as the record owner, to complete and file any class action notices or proofs of claim, or the Board will complete and file the documentation itself.  The Investment Manager will not be responsible for the administrative filings.

6.    **EXPENSES**

The expenses incurred by the Investment Manager in the performance of its duties, to the extent that such expenses would have otherwise been incurred by the Fund for securities transactions and related fees or charges in the absence of the appointment of said Investment Manager, shall be a charge against and be paid out of the Investment Account Assets unless otherwise directed by the Board.  All taxes of any or all kinds whatsoever which may be levied or assessed under existing or future laws upon, or in respect of, the Investment Account Assets, or the income thereof, shall be paid from the Investment Account Assets.

7.    **ACCOUNTING AND REPORTING**

The Investment Manager shall keep accurate and detailed accounts of all investments, receipts, disbursements, and other transactions hereunder, and all accounts, books, and records

relating thereto shall be open to inspection and audit at all reasonable times by any person designated by the Board. Copies of all relevant financial records and reports shall be forwarded, as requested, to the independent qualified public accountant designated by the Board. The Investment Manager shall provide the Board with reports concerning the status of the Investment Account Assets on at least a quarterly basis, and it shall also provide to the Board, or to its designee, such other investment and financial information concerning the Investment Account Assets which the Board may deem relevant. Any such reports shall be made to the Board not later than forty-five (45) days after the end of each quarter. The Investment Manager shall also, if requested, forward a copy of all investment reports to each Trustee, the Fund Manager, Counsel, or to any other person, at appropriate times, as designated by the Board.

The Investment Manager shall also provide an annual report to the Board not later than 45 days after the end of the Fund's fiscal year, summarizing the status of the Investment Account Assets for the preceding year.

This Annual Report must include:

(1)  A full report on all proxy votes.

(2)  Verification of "Best Execution" on all security transactions as defined under DOL Regulations.

(3)  A full report on all commissions and other fees charged against the Investment Account Assets, including a representation that the Investment Manager's fees were paid pursuant to this Agreement.

(4)  Verification of compliance with PTE 77-4 (when applicable).

(5)  A statement that the Custodian has (or has not) performed satisfactorily in the Managers' transactions.

(6)  A statement that the Manager has (or has not) complied with the Investment Guidelines.

(7)    A statement that the Manager has (or has not) fulfilled its fiduciary duties and has (or has not) engaged in any prohibited transactions.

(8)    A verification of bonding coverage required by ERISA.

(9)    A verification of Errors and Omissions Coverage.

(10)   A full disclosure of any inquiries, actions, etc. by any regulatory agencies.

(11)   A disclosure of any litigation in which the Investment Manager is the Defendant.

The Board and the Investment Manager shall meet periodically, at their mutual convenience, to discuss all matters relevant to the Investment Account Assets, as well as at such other times as the Board may reasonably request.  The Investment Manager shall provide to the Trustees and to such other persons as the Trustees may designate, if requested, at least seven days in advance of any such meeting date, copies of all investment reports which may be discussed at the regular Board meeting.

8.    **INVESTMENT GUIDELINES AND TRUSTEE REPRESENTATIONS**

The Board hereby represents, warrants, and covenants to the Investment Manager that (a) a true and complete copy of the Trust Agreement shall be delivered to the Investment Manager upon request; (b) the Investment Guidelines as currently in effect shall be delivered to the Investment Manager and are currently attached hereto; (c) true and complete copies of each amendment to the Investment Guidelines will be delivered to the Investment Manager as promptly as practicable after the adoption thereof; (d) a true and complete copy of the Pension Plan promulgated by the Board shall be delivered to the Investment Manager upon request; (e) the Board constitutes all of the present Trustees of the Fund; and (f) it will not knowingly direct the Investment Manager to engage in a "prohibited transaction" as that term is defined in ERISA.

9.    **BEST EXECUTION**

Where the Investment Manager places orders for the purchase or sale of securities for the Investment Account, in selecting brokers or dealers to execute such orders, the Investment Manager is expressly authorized to consider the fact that a broker or dealer has furnished statistical, research, or other information or services that enhance the Investment Manager's investment research and portfolio management capability generally, to the extent permissible by applicable law.

In view of the fact that brokerage commissions are now a matter of negotiation, the Investment Manager specifically and expressly agrees that wherever and whenever possible, the rate of commission shall be negotiated as favorably as possible, considering the circumstances as noted above, on behalf of the Fund.  In all instances, the Board requires that the Investment Manager comply with Department of Labor regulations regarding "Best Execution."

10.    **COMPENSATION**

The compensation of the Investment Manager shall be calculated and paid quarterly, upon written authorization of the Board, based on the market value of the Investment Account Assets on the valuation date, and in accordance with the attached Schedule of Fees.

11.    **VALUATION OF INVESTMENT ACCOUNT ASSETS**

In computing the market value of any investment of the Investment Account Assets, each security listed on any National Securities Exchange shall be valued at the last sale price on the valuation date.  Listed stocks not traded on such date, and any unlisted stock regularly traded in the over-the-counter market, shall be valued at the latest available bid price quotation furnished to the Investment Manager by such sources as may be deemed appropriate and reliable by the

8

Investment Manager. Any other security shall be valued in such manner as determined in good

faith by the Investment Manager to reflect its fair market value.

12.    **TERMINATION**

This Agreement may be terminated by the Board upon written notice to the Investment

Manager, and by the Investment Manager upon ninety (90) days' written notice to the Board.

Fees paid in advance hereunder will be prorated to the date of termination as specified in the

notice of termination, and any unearned portion thereof will be refunded to the Board. No

assignment (as that term is defined in the Investment Advisors Act of 1940) of this Agreement

shall be made by either party without the written consent of the other party. Within forty-five

(45) days following the removal or resignation of the Investment Manager the Investment

Manager shall file with the Board a written account setting forth all investments, receipts,

disbursements, and other transactions effected by it during such fiscal year or during the period

from the close of the last fiscal year to the date of such removal or resignation. The foregoing

provisions, however, shall not preclude the Investment Manager from having its accounts

judicially settled if it so desires. In any proceeding for the judicial settlement of the accounts for

the Investment Manager or concerning the administration of the Investment Account Assets, the

Investment Manager and the Board shall be the only necessary parties.

13.    **NOTICE**

Unless otherwise specified herein, all notices, instructions, and advices with respect to

security transactions or any other matters contemplated by this Agreement shall be deemed duly

given when either delivered in writing to the addresses below or when deposited by first-class

mail addressed as follows:

(a) To the Board:

> Upstate New York Bakery Drivers and Industry Pension Fund
> State Tower Building, Suite 1103
> Syracuse, New York 13202
>
> Attn: Kathleen Sweeney, Administratrix

(b) To the Investment Manager:

> J.P. Jeanneret Associates, Inc.
> 100 East Washington Street
> Syracuse, New York 13202
>
> Attn: John P. Jeanneret, President

(c) To the Custodian:

| Income-Plus Fund Only | Beacon Associates LLC |
|---|---|
| Custodial Trust Company | & Beacon Associates LLC II |
| 101 Carnegie Center | 123 Main Street, Suite 900 |
| Princeton, NJ 08540-6231 | White Plains, NY 10601 |
| | |
| Attn: Kevin J. Darmody, Senior Vice-President | Attn: Joel Danziger, Esq. |

## 14.    GOVERNING LAW

This Agreement shall be governed by, and construed in accordance with the laws of the State of New York and applicable federal laws.

## 15.    AMENDMENTS

This Agreement may be amended at any time by mutual written agreement between the Board and the Investment Manager.

## 16.    CONFIDENTIALITY

All information and advice furnished by either party relating to this Agreement or the Fund shall be treated as confidential and shall not be disclosed to any third party except as may be required by law or as may be expressly permitted by the interested party.

17.    **ENTIRE AGREEMENT**

This Agreement, including the attached Schedule of Fees, constitutes the entire agreement

with respect to the relationship between the parties and supersedes all prior agreements.

18.    **RECEIPT OF FORM ADV. PART II**

The Board acknowledges receipt of the Investment Manager's current client disclosure

brochure, Form ADV, Part II, at least 48 hours prior to entering into this Agreement.

IN WITNESS WHEREOF, the Board and the Investment Manager have executed this

Agreement, and have evidenced their ratification and consent to be bound thereby, effective the

day and year first above written.

**BOARD OF TRUSTEES OF UPSTATE NEW
YORK BAKERY DRIVERS AND INDUSTRY
PENSION FUND**

DATED: 6/27/02                    By: _____
                                       UNION TRUSTEE

DATED: 6/28/02                    By: _____
                                       EMPLOYER TRUSTEE

**J.P. JEANNERET ASSOCIATES, INC.**

DATED: 6/25/02                    By: _____

Schedule of Fees

With respect to the Income – Plus Investment Fund, J.P. Jeanneret Associates, Inc. shall be paid a Basic Fee of three quarters of one percent (3/4 of 1%) per annum, in accordance with the provisions of paragraph 10 of this Agreement and the Offering Memorandum of the Income-Plus Investment Fund.  The Basic Fee will be billed quarterly and shall be payable within thirty (30) days from the end of said quarter.

The Investment Manager shall also be paid a Performance Fee equal to twenty percent (20%) of the gross investment returns in excess of ten percent (10%) per annum.  A Performance Fee for each calendar year shall be payable prior to January 31 of the next calendar year.  To the extent the gross investment returns during any calendar year do not exceed ten percent (10%), any shortfall shall be added to the following calendar years.  Such Performance Fee is implemented pursuant to the Income-Plus Investment Fund documents.

With respect to investment in the Beacon Associates LLC and/or Beacon Associates LLC II, the Investment Manager (independent of fees/commissions/expenses paid to Beacon Associates LLC and/or Beacon Associates LLC II) shall be paid three-quarters of one percent (3/4 of 1%) per annum, which will be billed on a quarterly basis.

INVESTMENT GUIDELINES TO BE FOLLOWED BY

J.P. JEANNERET ASSOCIATES, INC.

In the Investment of the Assets of

**UPSTATE NEW YORK BAKERY DRIVERS AND INDUSTRY PENSION FUND**

The following Investment Guidelines are provided such that the Investment Manager and the Board of Trustees of the Upstate New York Bakery Drivers and Industry Pension Fund have a clear mutual understanding of the investment policies and objectives relating to the investment of Fund assets by the Investment Manager pursuant to this Agreement. The provisions of these Investment Guidelines are set forth below:

(a)   The overall investment policy and objective for the Fund is a conservative investment policy with the objectives of preservation of capital and long-term growth of assets consistent with reduced levels of risk and volatility. The Fund designates the Investment Manager to manage a portion of the overall Fund Investments. The Investment Manager shall be expected to satisfy all provisions regarding fiduciary standards required by ERISA and/or the Upstate New York Bakery Drivers and Industry Pension Plan of this Fund.

(b)   The Fund assets allocated to this Investment Manager, as determined by the Trustees, may be invested in the Income-Plus Investment Fund. All such investments shall be made in accordance with the Offering Memorandum of the applicable investment program. With regard to the Income-Plus Investment, the following conditions govern:

(i)    All investments of assets of the Upstate New York Bakery Drivers and Industry Pension Fund, whether made by J.P. Jeanneret Associates, Inc. or Designated Managers (as that term is defined in the Trust Agreement establishing the Master Income-Plus Group Trust) must comply with investment guidelines provided by the Upstate New York Bakery Drivers and Industry Pension Fund.

(ii)   The Trustee of the Group Trust Fund, Custodial Trust Company, which is a custodian of the Trust assets, must expressly understand and agree that, to the extent required by ERISA, any authority or control respecting the disposition of assets of the Upstate New York Bakery Drivers and Industry Pension Fund that it has or exercises, or any authority or responsibility regarding investment advice with respect to any money or other property of the Upstate New York Bakery Drivers and Industry Pension Fund that it has or exercises, makes it a fiduciary within the meaning of Section 3(21) (A) of ERISA.

    (iii)    To the extent the provisions of the Trust Agreement establishing the Master Income-Plus Group Trust, or the Adoption Agreement, conflict with the Trust Agreement establishing and maintaining the Upstate New York Bakery Drivers and Industry Pension Fund ("Upstate New York Bakery Agreement"), the Upstate New York Bakery Agreement shall control.

    (iv)    J.P. Jeanneret Associates, Inc. agrees that it is responsible for the investment, management and disposition of assets of the Upstate New York Bakery Drivers and Industry Pension Fund by its Designated Managers.

    (v)    The Investment Manager, or its Designated Managers, as the case may be, may engage in convertible hedging, basis and spread trading, conversions, and reversals in relative value trading. Investments may also be made with Designated Managers employing other hedged strategies involving stocks, bonds, options on stocks, and other financial instruments.

    (vi)    The Investment Manager shall diversify the assets of monies in its Income-Plus Investment Fund among the numerous Designated Managers, and allocate the assets such that they are reasonably diversified among different designated managers and investment strategies, in order to minimize the risk of one strategy adversely affecting the investment return.

(c)    The Investment Manager shall provide to the Trustees, or to their designee, on at least a quarterly basis, or as reasonably requested by the Board of Trustees, all necessary information regarding performance of investments under the control of the Investment Manager.

(d)    The Investment Manager shall be expected to achieve an investment return which is greater than the median performance within a comparable universe of "fixed income" investment managers. In addition, the Investment Manager shall be expected to achieve a total investment return which exceeds the total return of a portfolio invested in the Lehman Brothers Government/Corporate Bond Index, during a reasonable period of time, as determined solely by the Board of Trustees.

(e)    Notwithstanding any other provisions of these Guidelines, the Investment Manager shall be permitted to invest assets managed by the Investment Manager in Beacon Associates LLC and/or Beacon Associates LLC II in such amounts as are expressly approved by the Trustees.

IN WITNESS WHEREOF, the Board and the Investment Manager have executed this

Discretionary Investment Management Agreement, and have evidenced their ratification and

consent to be bound thereby, effective the day and year first above written.

**BOARD OF TRUSTEES OF THE UPSTATE
NEW YORK BAKERY DRIVERS AND
INDUSTRY PENSION FUND**

DATED: 6/28/02

By: _____
UNION TRUSTEE

DATED: 6/27/02

By: _____
EMPLOYER TRUSTEE

**J.P. JEANNERET ASSOCIATES, INC.**

DATED: 6/25/02

By: _____

Print
Name: John P. Jeanneret

Title: President

msk\mgg\agmt\UNYBakeryDIMA-JPJ

15