Bisceglie & DeMarco, LLC
365 Rifle Camp Road
Woodland Park, NJ 07424
Telephone: (973) 742-8900
Facsimile: (973) 742-7999
Angelo R. Bisceglie, Jr., Esq.
Email: abisceglie@bd-lawfirm.com
Mark I. Silberblatt, Esq.
Email: msilberblatt@bd-lawfirm.com

*Attorneys for Upstate New York Bakery
Drivers and Industry Pension Fund*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,                                      :

                Plaintiff-Applicant,     :

                v.                           :

BERNARD L. MADOFF INVESTMENT        :
SECURITIES LLC,

                                 :

                Defendant.

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

-----------------------------------------------------
In re:                                            :

BERNARD L. MADOFF,                                :

                Debtor.             :

------------------------------------------------------------X

**MEMORANDUM OF LAW SUBMITTED BY**
**UPSTATE NEW YORK BAKERY DRIVERS**
**AND INDUSTRY PENSION FUND**
**IN OPPOSITION TO ERISA CWAA MOTION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................ii

Preliminary Statement......................................................................................1

Prior Proceedings............................................................................................1

Statement of Facts...........................................................................................2

Argument........................................................................................................4

     BY VIRTUE OF ERISA AND THE REGULATIONS THEREUNDER,
     THE UPSTATE FUND WAS A CUSTOMER OF BLMIS................................4

CONCLUSION................................................................................................8

# TABLE OF AUTHORITIES

## CASES

Appleton v. First Nat'l Bank of Ohio,
  62 F.3d 791, 801 (6th Cir. 1995)..................................................................7

In the Matter of Investors Sec. Corp.,
  8 B.R. 420, 426, 1980 Bankr. LEXIS 4713, at *17 (W.D. Pa. Bankr. 1980).................4

SEC v. Ambassador Church Fin./Dev. Group, Inc.,
  679 F.2d 608, 614 (6th Cir. 1982)..............................................................4, 7

SEC v. F.O. Baroff Co.,
  497 F.2d 280, 284 (2d Cir. 1974)..................................................................7

SIPC v. Exec. Sec. Corp.,
  556 F.2d 98, 99 (2d Cir. 1977).....................................................................7

In re Stalvey & Assocs., Inc.,
  750 F.2d 464, 470 (5th Cir. 1985)................................................................4

## STATUTES

15 U.S.C. §§78aaa-78lll ...............................................................................1

15 U.S.C. §78lll (2)..........................................................................4, 5, 6, 7

29 U.S.C. §1002(3)......................................................................................2

29 U.S.C. §1002(37)....................................................................................2

29 U.S.C. §1002 (42)...................................................................................5

## REGULATIONS

29 C.F.R. §2510.3-101 (2)..........................................................................5, 6

## OTHER

Internal Revenue Ruling 81-100...................................................................3

ii

## Preliminary Statement

This memorandum of law and the affidavit of Kathleen Sweeney Meck submitted herewith ("Sweeney Meck Affd.") are submitted on behalf of Upstate New York Bakery Drivers and Industry Pension Fund ("Upstate Fund"), pursuant to the Scheduling Order of this Court entered on November 8, 2011, and in opposition to the motion by Irving H. Picard, Trustee for the Liquidation of the Business of Bernard L. Madoff Investment Securities, LLC ("Trustee") for an order to affirm the Trustee's determinations denying the claims of claimants without BLMIS accounts in their names, namely investors in ERISA property (the "ERISA CWAA Motion").[*]

## Prior Proceedings

In a motion previously before this Court, the Trustee sought a determination that investors in certain Madoff "feeder funds" were not "customers" of BLMIS for purposes of the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§78aaa-78lll, and that the claims of such investors had properly been denied by the Trustee. When that motion was argued, the issue of whether ERISA plans which had invested in such funds would be deemed to be BLMIS customers was not before the Court.

On or about November 8, 2011 this Court issued a Scheduling Order which, among other things, directed the Trustee to file the ERISA CWAA Motion in order to resolve objections to claims that raised ERISA as a basis for determining their customer status, and further directed "any ERISA Claimant Without An Account who wishes to

---

[*] As set forth in detail below, the Upstate Fund's claim is based on its status as an ERISA fund and on its investment in Income-Plus Investment Fund. Numerous other ERISA funds invested in Income-Plus Investment Fund and it is expected that some if not all, of such funds will file memoranda of law in opposition to the Trustee's ERISA CWAA Motion. To the extent that the legal arguments set out in any such memoranda are applicable to the Upstate Fund, we respectfully refer to, and rely on, such legal arguments even if not set forth below.

1

participate in the briefing on this issue as it pertains to their claims and objections. . . to file a memorandum of law in opposition to the ERISA CWAA Motion," and to submit to the Trustee documentation and other factual "in support of the argument that ERISA and related regulations determine their "customer" status (the "ERISA Documentation").".

This memorandum of law and the ERISA Documentation submitted herewith (consisting of the Sweeney Meck Affd. and the exhibits attached thereto) are submitted pursuant to this Court's Scheduling Order, in opposition to the Trustee's ERISA CWAA Motion.

### Statement of Facts

The relevant facts are set out in the Upstate Fund's ERISA Documentation and briefly are as follows:

The Upstate Fund is, and at all times pertinent hereto has been, a Taft-Hartley pension plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Upstate Fund is an employee benefit plan, as defined in Section 3(3) of ERISA (29 U.S.C. §1002 (3)), and a multi-employer benefit plan, as defined in Section 3(37) of ERISA (29 U.S.C. §1002 (37)).

On or about July 1, 2002, the Upstate Fund entered into a Discretionary Investment Management Agreement with J.P. Jeanneret Associates, Inc. ("Jeanneret Associates"), pursuant to which Jeanneret Associates was designated an Investment Manager of the Upstate Fund. As such, and pursuant to ERISA, Jeanneret Associates was a fiduciary vis-à-vis the Upstate Fund. On or about July 31, 2002, at the advice of Jeanneret Associates, the Upstate Fund invested in an investment vehicle -- the Income-Plus Investment Fund ("Income-Plus") -- which invested substantial portions of its funds

with Bernard Madoff ("Madoff") in Bernard L. Madoff Investment Securities, LLC ("BLMIS"). Thereafter, on or about July 31, 2004 and January 31, 2007, the Fund made additional investments in Income-Plus.

Income-Plus, a tax-exempt "Group Trust" within the meaning of Internal Revenue Ruling 81-100, was created on December 15, 1993, for the purpose of pooling investment assets of certain qualified pension plans and entities governed by ERISA. The Upstate Fund was a "Participating Plan" or "Participating Entity" in Income-Plus as of the date in 2008 when this proceeding was filed. Under ERISA, Jeanneret Associates was the "investment manager" for the Group Trust and the Income-Plus Investment Fund.

Pursuant to its agreement with the Upstate Fund and the other participants in Income-Plus, Jeanneret Associates had sole and complete authority to manage Income-Plus' assets, and also had the authority to appoint managers to manage such assets. BLMIS was one of such managers from the inception of Income-Plus in 1993; additionally, in or about December 2007 Jeanneret Associates, acting on behalf of Income-Plus, also entered into various agreements with BLMIS authorizing BLMIS to undertake certain transactions on behalf of Income-Plus.

As a result of Madoff's fraud (which became public as a result of Madoff's confession and arrest on December 11, 2008) a substantial part of the Fund's investment in Income Plus became valueless, causing the Fund to incur substantial damages.

On or about February 27, 2009 the Upstate Fund filed its SIPC claim (Claim No. 005483) in this proceeding with respect to its investment in Income-Plus. On or about December 17, 2010 the Trustee issued his Determination of Claim, denying the

3

Upstate Fund's Claim No. 005483 on the ground that "[b]ased on a review of the available books and records of BLMIS by the Trustee's staff, [the Upstate Fund] did not have an account with BLMIS" and therefore was "not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. §78lll (2)."

### Argument

### BY VIRTUE OF ERISA AND THE REGULATIONS THEREUNDER, THE UPSTATE FUND WAS A CUSTOMER OF BLMIS

As a preliminary matter, it should be noted that although the Trustee denied the Upstate Fund's claim with respect to Income-Plus "based on a review of the available books and records of BLMIS," it is established that a broker's "books and records" are not dispositive in determining customer status. See In re Stalvey & Assocs., Inc., 750 F.2d 464, 470 (5th Cir. 1985) (reversing bankruptcy court's finding that claimant was "customer" under 15 U.S.C. §78lll (2) merely because his name was on the account; stating that the designation of the account constituted "a tenuous ground" for determining customer status); SEC v. Ambassador Church Fin./Dev. Group, Inc., 679 F.2d 608, 614 (6th Cir. 1982) (dismissing as irrelevant the fact that claimant "did not maintain a customer account in [its] name."). Indeed, courts have held that "[c]ustomer status under SIPA is not dependent upon official documentation in the Debtor's books." In the Matter of Investors Sec. Corp., 8 B.R. 420, 426, 1980 Bankr. LEXIS 4713, at *17 (W.D. Pa. Bankr. 1980).

Proceeding to the merits of the Upstate Fund's customer claim, 15 U.S.C. § 78lll (2) provides as follows:

> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired,

4

> or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and <u>any person who has deposited cash with the debtor for the purpose of purchasing securities.</u>

15 U.S.C. § 78lll (2) (emphasis added).

In its recent decision affirming this Court's prior determination that investors in BLMIS "feeder funds" were not BLMIS "customers" for purposes of SIPA, the United States District Court for the Southern District of New York relied heavily on the fact that such investors only had an interest in the "feeder funds" in which they had invested, and as a matter of law did not have an interest in the underlying assets which such "feeder fund" had invested with BLMIS. The District Court therefore held that BLMIS did not receive, acquire or possess any property of "feeder fund" investors (as opposed to the property of the "feeder funds" themselves); and accordingly, the District Court held that the "feeder fund" investors did not come within the above definition of customer.

The above reasoning does not apply in the case of ERISA fund investors such as the Upstate Fund in this case.

In 29 U.S.C. §1002 (42) ERISA defines "plan assets" in pertinent part as follows:

> (42) the term "plan assets" means plan assets as defined by such regulations as the Secretary [of Labor] may prescribe, except that under such regulations the assets of any entity shall not be treated as plan assets if, immediately after the most recent acquisition of any equity interesting the entity, less than 25 percent of the total value of such class of equity interest in the entity is held by benefit plan investors.

The relevant regulation with respect to "plan assets" is 29 C.F.R. § 2510.3-101 (2), which provides in pertinent part as follows:

5

(2) Generally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity. **However, in the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940 its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity**, unless it is established that—

(i)  The entity is an operating company, or
(ii) Equity participation in the entity by the benefit plan investors is not significant.

Therefore, any person who exercises authority or control respecting the management of disposition of such underlying asset, and any person who provides investment advice with respect to such assets for a fee(direct or indirect), is a fiduciary of the investing plan.

29 C.F.R. § 2510.3-101 (2) (emphasis added).

The Upstate Fund's investment in Income-Plus comes within the scope of 29 C.F.R. § 2510.3-101 (2), and accordingly, the underlying assets of Income-Plus were ERISA plan assets in which the Upstate Fund held both its respective equity interest and an undivided interest. Income-Plus held the Upstate Fund's ERISA plan assets in trust, and Income-Plus, acting on behalf and as a fiduciary of the Upstate Fund, entrusted the Upstate Fund's ERISA plan assets (including its undivided interest in Income-Plus' assets) to BLMIS for the purpose of purchasing securities.

Because BLMIS actually received, acquired, and took possession of the Upstate Fund's ERISA plan assets, in which the Upstate Fund retained an "undivided interest," the Upstate Fund effectively "deposited cash with the debtor [BLMIS]," and thus was a BLMIS customer within the plain reading of 15 U.S.C. § 78lll (2).

Another critical aspect of SIPA "customer" status is the fiduciary nature of the claimant's relationship with the debtor. A claimant that entrusts cash to a broker-dealer

6

for the purpose of trading securities "has a fiduciary relationship with the broker-dealer, and is entitled to the protection of the Act." Appleton v. First Nat'l Bank of Ohio, 62 F.3d 791, 801 (6th Cir. 1995); see SEC v. F.O. Baroff Co., 497 F.2d 280, 284 (2d Cir. 1974) (there must be "indicia of the fiduciary relationship between a broker and his public customer . . . ."); SIPC v. Exec. Sec. Corp., 556 F.2d 98, 99 (2d Cir. 1977) (claimants were mere lenders not SIPA customers where necessary indicia of fiduciary relationship were missing); SEC v. Ambassador Church Fin./Dev. Group, Inc., 679 F.2d 608, 614 (6th Cir. 1982) ("A person who becomes a creditor of a broker in some manner which does not involve securities trading or investment is not covered. In the case of a loan of securities to a broker there are no indicia of a fiduciary relationship between the lender and the broker.").

Not only did the Upstate Fund have a fiduciary relationship with BLMIS by virtue of its having "deposited cash with the debtor" under 15 U.S.C. § 78lll (2), BLMIS was also an ERISA fiduciary with respect to the Upstate Fund. As described above, Income-Plus held the Upstate Fund's ERISA plan assets in trust and was a fiduciary of the Upstate Fund. Those assets were impressed with a trust and were subject to ERISA's fiduciary obligations regardless of who held them. As such, the assets did not lose their status as ERISA plan assets when they were placed in the hands of BLMIS. Like Income-Plus, BLMIS held the Upstate Fund's ERISA plan assets in trust and exercised authority and control over the management and disposition of those assets. Thus, BLMIS was a fiduciary of the Upstate Fund, and the existence of a fiduciary relationship between the Upstate Fund and BLMIS further supports the conclusion that the Upstate Fund was a "customer" of BLMIS under SIPA.

## CONCLUSION

This Court should deny the Trustee's ERISA CWAA Motion, and the Upstate Fund's claim should be remitted to the Trustee for further proceedings herein.

Respectfully submitted,
BISCEGLIE & DEMARCO, LLC

By: _____
Mark I. Silberblatt
Attorneys for Claimant
*Upstate New York Bakery Drivers and Industry Pension Fund*
365 Rifle Camp Road
Woodland Park, NJ 07424
(973) 742-8900

and

711 Third Avenue, Suite 1803
New York, NY 10017
(212) 682-8089

8