Marc J. Kurzman (MK 2962)
SANDAK HENNESSEY & GRECO, LLP
707 Summer Street, 3rd Floor
Stamford, CT 06901
Tel: (203) 425-4200
Fax: (203) 325-8608

Peter N. Wang (PW 9216)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Phone: (212) 682-7474
Fax: (212) 687-2329
E-mail: pwang@foley.com

*Co-Counsel for Orthopaedic Specialty Group, P.C. Defined Contribution Pension Plan Participants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | SIPA LIQUIDATION |
| Plaintiff, | |
| v. | Adv. Pro. No. 08-01789 (BRL) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | **AFFIDAVIT OF HENRY BACKE IN SUPPORT OF THE OSG PLAN PARTICIPANTS' CUSTOMER CLAIMS** |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

------------------------------------------------------

STATE OF CONNECTICUT)
) ss. Fairfield
COUNTY OF FAIRFIELD)

HENRY BACKE, being duly sworn, hereby deposes and says:

1. I am over the age of eighteen (18) years and believe in the obligations of an oath.

2. I am an orthopedic surgeon and member of the board of directors of Orthopaedic Specialty Group P.C. ("OSG"). I also serve as a trustee of the Orthopaedic Specialty Group P.C. Defined Contribution Pension Plan a/k/a the Orthopaedic Specialty Group P.C. 401(k) Plan ("OSG Plan" or "Plan").

3. I make this affidavit on behalf of the 117 participants in the OSG Plan who filed Customer Claims with Trustee Irving H. Picard (the "Trustee") in accordance with the Court's December 23, 2008 Order, and whose Customer Claims were denied by the Trustee (the "OSG Plan Participants" or "Plan Participants"). This affidavit is based on my personal knowledge, information contained in the books and records of OSG and information provided to me by those involved in the administration of the OSG Plan during the time it maintained an account with Bernard L. Madoff Investment Securities LLC.

**OSG AND THE OSG PLAN**

4. OSG is a Fairfield, Connecticut surgical practice which has been in existence for over 75 years. OSG currently employs over 160 people including doctors, nurses, x-ray technicians, medical assistants, therapists and administrative personnel caring for the orthopedic needs of the insured and uninsured people of southwestern Connecticut.

2

4822-4492-2126.1

5. OSG created a retirement plan, now the OSG Plan, for its employees in the early 1970's. The OSG Plan has for years been designed in compliance with, and subject to, Section 401(a) and 401(k) of the Internal Revenue Code. Most OSG employees participate in the OSG Plan and most of the Plan Participants are non-physicians earning in the range of $28,000 to $130,000 per year.

6. The major provisions of the Plan are described in a Summary Plan Description ("SPD") which is provided to each OSG employee who participates in the Plan. The SPD in effect during the period of time the Plan maintained an account with Bernard L. Madoff Investment Securities LLC ("BLMIS") is attached as Exhibit A.

7. The OSG Plan is funded by:

    a. <u>401(k) contributions</u>: OSG Plan Participants who are current employees of OSG can elect to have a certain amount or percentage of their salary, which would otherwise be paid to them in cash, contributed on a pre-tax basis to their individual accounts in the Plan.

    b. <u>Rollover contributions</u>: Funds held for the benefit of OSG Plan Participants under other employers' qualified employee benefit plans and individual retirement accounts can generally be transferred into their individual accounts in the Plan. (Likewise, upon termination of employment, OSG Plan Participants are generally permitted to transfer the vested portion of their individual accounts in the Plan to their new employer's qualified employee benefit plan or an individual retirement account.)

    c. <u>Safe harbor contributions</u>: For purposes of satisfying certain non-discrimination requirements under Section 401(k) of the Code, OSG makes a special non-elective contribution, of up to 3% of compensation, to the accounts of all employees eligible to participate in the Plan, regardless of whether the employee-participants make salary reduction contributions to the Plan, and regardless of whether OSG makes any discretionary profit sharing contributions to the Plan during the year.

    d. <u>Profit sharing contributions</u>: OSG has the discretion to make annual non-elective contributions, which are allocated among the OSG Plan Participants in the proportion that the compensation of each Participant bears to the aggregate compensation of all of the OSG Plan Participants.

3

4822-4492-2126.1

8. An individual Plan account is created for each OSG employee who participates in the OSG Plan. Each OSG Plan Participant is immediately 100% vested in that portion of his/her account funded by 401(k) contributions, safe harbor contributions, and rollover contributions. A Plan Participant must, however, complete three years of service with OSG to have a non-forfeitable right to the profit sharing contributions made by OSG on his/her behalf.

9. OSG Plan Participants can withdraw the funds in their individual Plan accounts upon the occurrence of certain specified events, including the employee-participant's termination of employment, normal retirement date (i.e., age 65), attainment of age 59½, death, total and permanent disability, and certain financial hardships (in the event of a financial hardship, an employee-participant can elect a distribution from 401(k) contributions only). Additionally, OSG Plan Participants are permitted to take out loans against their individual accounts within the Plan (essentially loaning themselves their own money) -- a right they exercise not infrequently.

10. Records of the OSG Plan Participants' individual accounts within the OSG Plan are maintained by outside pension administrators. During the period 2003-2008 Pentec Actuaries and Consultants ("Pentec") served as the OSG Plan's outside administrator.

**TRANSFER OF THE PLAN PARTICIPANTS' ASSETS TO BLMIS**

11. In 1992 the trustees of the OSG Plan opened an account with BLMIS to invest in securities the funds being contributed into the OSG Plan by and on behalf of the OSG Individual Participants.

12. OSG thereafter periodically deposited with BLMIS, in a single payment, funds that collectively represented OSG Plan Participant 401(k) contributions, OSG Plan Participant roll-over contributions safe harbor contributions and profit sharing contributions. The purpose of

4

those deposits was to purchase securities. BLMIS generated credit advices for each deposit made by OSG into the Plan's BLMIS account. An example of a deposit and resulting credit advice is attached as Exhibit B.

13. The OSG Plan Participants were advised of the transfer of the Plan's assets to BLMIS and, after 1992, were continuously updated concerning BLMIS' stewardship of their retirement savings (as reported by BLMIS).

14. Conversely, the nature of the Plan, and the interests of the OSG Plan Participants in the Plan's assets, was explained to BLMIS. The executives of BLMIS were well aware that the Plan's assets belonged to the OSG Plan Participants.

15. From the inception of the relationship between the OSG Plan Participants and BLMIS, the trustees of the Plan dealt primarily with Maurice "Sonny" Cohn (Bernard Madoff's partner in Cohmad Securities). There were periodic discussions between the trustees and Mr. Cohen regarding investment objectives and how the OSG account should be invested to meet the needs and goals of the OSG Plan Participants whose funds had been entrusted to BLMIS.

16. Cohn was explicitly informed that the OSG Plan was funded by OSG employees and that substantial portions of the funds deposited by OSG with BLMIS were salary contributions and, in some cases, transfers of individual retirement accounts and proceeds from the surrendered life insurance policies owned by OSG Plan Participants.

17. In or about 1997, the trustees of the OSG Plan began dealing directly with BLMIS's Chief Financial Officer, Frank DiPascali. DiPascali was made aware, as Cohn had been before him, of how the OSG account was funded, and that it was maintained for the benefit of the OSG Plan Participants who had individual accounts in the OSG Plan.

4822-4492-2126.1

18. The Plan's trustees met every 12-18 months with Cohn and later DiPascali to discuss the performance of the Plan's BLMIS account and how it should be diversified to accommodate the needs of OSG employees who were at the beginning of their careers (longer term investors) and the needs of those employees who would soon be retiring (investors who would need earlier access to their 401(k) funds). The Plan's trustees discussed with BLMIS' representatives that risky or speculative investments would not be an appropriate use of the funds that were being sent by OSG to BLMIS since those funds belonged to the OSG Plan Participants who maintained accounts within the OSG Plan and upon which they were relying for retirement.

19. I also met with Mr. DiPascali in 2002 to discuss my personal roll-over of qualified funds into my Plan account. Mr. Dipascali reiterated to me that BLMIS was employing a "conservative" investment strategy appropriate for a pension plan funded with employee contributions.

20. Although DiPascali was aware that OSG's BLMIS account held pooled assets that belonged to the individual OSG Plan Participants, he insisted that the Plan Participants not contact him with individual investment questions. Rather, he required that all communications with the OSG Plan be through the Plan trustees.

21. BLMIS created and mailed provided to OSG thousands of trade confirmation showing the purchase and sale of securities and options with the funds that had been contributed by and on behalf of the OSG Plan Participants. Additionally, BLMIS generated quarterly Portfolio Management Reports reflecting the value of the Plan's BLMIS account and its annualized performance. Examples of the quarterly statements are attached as Exhibit C. That information was in turn provided by OSG to the outside Plan administrator (since 2003, Pentec)

6

which maintained the individual account ledgers for each OSG Plan Participant showing his/her allocable share of the BLMIS account. The outside Plan administrator provided reports to each OSG Plan Participant regarding his/her account balance (based on contributions to his/her account, withdrawals from the account, and reported investment gains, minus administrative expenses).

22. According to the BLMIS account statement for the period ending as of November 30, 2008, a copy of which is attached as Exhibit D, the Plan's BLMIS account on that date was worth in excess of $33,000,000.

23. Of that amount, that "net equity" entrusted by the OSG Plan Participants to BLMIS -- i.e. the value of the profit sharing contributions, 401(k) contributions, safe harbor contributions and roll-over contributions made by or for the benefit of each OSG Plan Participant -- was approximately $10.9 million. Attached as Exhibit E is a schedule showing each OSG Plan Participant's share of that net equity, based on contributions made to the Plan directly by the Participant (via 401(k) contributions, roll-over contributions and life insurance surrenders) or by OSG on behalf of the Participant (via safe harbor and profit sharing contributions). That schedule, which is based on the business records of OSG and Pentec, reflects that:

- More than $4.3 million of the Plan Participants' net equity represents their contributions <u>of their own salary.</u>

- More than $5 million of the Plan Participants' net equity represents OSG contributions made on behalf of the OSG Plan Participants and credited to their individual accounts within the Plan. Subject to the short vesting requirement for profit sharing contributions, those funds belong to the Individual Participants.

4822-4492-2126.1

- Roughly $913,000 of the Plan Participants' net equity represents other funds owned by the Plan Participants and held at one time in other employers' qualified employee benefit plans and individual retirement accounts. Those funds were "rolled over" into the OSG Plan Participants' individual accounts within the OSG Plan.

- Roughly $636,000 of the Plan Participants' net equity represents the proceeds of life insurance polices which had been surrendered by certain OSG physicians.

### THE OSG PLAN PARTICIPANTS' CUSTOMER CLAIMS

24. On October 4, 2009, Customer Claims were submitted to the Trustee on behalf of each of the OSG Plan Participants seeking "SIPC Coverage" only to the extent of each OSG Plan Participant's net equity.

25. Each of the 117 Customer Claims provided detailed information as to the source of the funds comprising each Plan Participants' account within the OSG Plan (which information is summarized in Exhibit E). By way of example, attached as Exhibit F is a copy of the Customer Claim filed on behalf of Linda Alexander. All of the funds comprising each Plan Participant's individual account within the Plan were entrusted to BLMIS for the purchase of securities.

26. Accompanying the Customer Claims was a letter brief prepared by OSG's counsel setting forth the legal basis for allowing the Customer Claims

27. A year after submitting their Customer Claims the OSG Plan Participants received from the Trustee notices dated October 22, 2010 denying their Customer Claims ("Adverse Determination"). A copy of the Adverse Determination notice provided to Ms. Alexander is

8

attached as Exhibit G. The Adverse Determination Notices provided to the other OSG Plan Participants are in identical form.

28. The notices did not address the Plan Participants' evidentiary submission or legal brief. Rather, they simply stated as follows:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. §78*lll*(2). Accordingly, your claim for securities and/or a credit balance is **DENIED.**

29. The Trustee's Adverse Determination ignores the fact that the OSG Plan Participants entrusted their funds to BLMIS, through the Plan's BLMIS account for the purchase of securities. The Trustee's Adverse Determination has deprived the OSG Plan Participants of their SIPC advances.

/s/ *Henry Backe*
Henry Backe

Sworn to before me this
16 day of January, 2012

/s/ *Nancy A. Heske*
Notary Public

9

4822-4492-2126.1