BLITMAN & KING LLP

Jennifer A. Clark (JC5102)

Jonathan M. Cerrito (*pro hac vice*)

Brian J. LaClair (BL3158)

Franklin Center, Suite 300

443 North Franklin Street

Syracuse, New York 13204-5412

Telephone: (315) 422-7111

Facsimile: (315) 471-2623

Email: jaclark@bklawyers.com
        jmcerrito@bklawyers.com
        bjlaclair@bklawyers.com

Hearing Date: May 23, 2012

Hearing Time: 10:00 a.m. EST

*Attorneys for 37 ERISA Plan Claimants Listed Below*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,
                Plaintiff,

         — *versus* —

BERNARD L. MADOFF INVESTMENT
SECURITIES, LLC,
             Defendant

Adversary Proceeding

No. 08-01789 (BRL)

SIPA Liquidation
(Substantively Consolidated)

------------------------------------------------------------------------x

In re BERNARD L. MADOFF,
             Debtor

------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO
## TRUSTEE'S MOTION FOR AN ORDER AFFIRMING TRUSTEE'S
## DETERMINATIONS DENYING CLAIMS OVER ERISA-RELATED OBJECTIONS

## TABLE OF CONTENTS

**Section**                                                                     **Page**

**PRELIMINARY STATEMENT** ................................................................. 1

**STATEMENT OF FACTS** ....................................................................... 2

  **A.**   **The ERISA Plan Claimants** ...................................................... 2

  **B.**   **ERISA Plan Asset Vehicles** ...................................................... 3

     **1.**   **Income-Plus** ..................................................................... 3

     **2.**   **Beacon and Andover** ....................................................... 5

**ARGUMENT** ........................................................................................... 7

**THE ERISA PLAN CLAIMANTS ARE "CUSTOMERS" OF BLMIS UNDER SIPA** ........ 7

  **A.**   **The ERISA Plan Claimants Entrusted Cash With BLMIS for the Purpose of Purchasing Securities** .................................................................. 9

     **1.**   **The ERISA Plan Claimants Owned the Assets Entrusted to BLMIS** ............. 9

     **2.**   **The ERISA Plan Claimants Had a Fiduciary Relationship With the PAVs and BLMIS** .......................................................................... 14

  **B.**   **The ERISA Plan Claimants Satisfy Other Indicia of Customer Status** ................. 17

**CONCLUSION** ........................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

Appleton v. First Nat'l Bank of Ohio, 62 F.3d 791 (6th Cir. 1995) ......................................... 9, 15

Azore Bank Ltd. v. SIPC (In re Bernard L. Madoff Inv. Secs., LLC), No. 1:11-CV-5683, slip op. at 10 (S.D.N.Y. Jan. 4, 2012) ................................................................ 8, 9, 10, 13, 18

Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd., 2008 U.S. Dist. LEXIS 25740, at *24 (S.D. Fla. March 31, 2008) ................................................................ 15

Donovan v. Bierwirth, 680 F.2d 263 (2d Cir. 1982) ...................................................... 17

Focht v. Heebner (In re Old Naples Sec., Inc.), 223 F.3d 1296 (11th Cir. 2000) ........................ 10

In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229 (2d Cir. 2011) ...................................... 8, 9

In re Primeline Sec. Corp., 295 F.3d 1100 (10th Cir. 2002) ............................................... 15

In re Stalvey & Assocs., Inc., 750 F.2d 464 (5th Cir. 1985) ............................................. 20

In the Matter of Investors Sec. Corp., 8 B.R. 420 (W.D. Pa. Bankr. 1980) ................................ 20

Newburger, Loeb & Co. v. Gross, 563 F.2d 1057n.22 (2d Cir. 1977) ........................................ 13

Prudential Ins. & Annuity Co. v. State Street Bank & Trust Co., 772 F. Supp. 2d 519 (S.D.N.Y. 2011) ................................................................................................ 19

SEC v. Ambassador Church Fin./Dev. Group, Inc., 679 F.2d 608 (6th Cir. 1982) ....................... 15

SEC v. F.O. Baroff Co., 497 F.2d 280 (2d Cir. 1974) .......................................... 15. 18

SEC v. Kenneth Bove & Co., 378 F. Supp. 697 (S.D.N.Y. 1974) ........................................... 8, 9

SIPC v. Bernard L. Madoff Inv. Secs. LLC, 454 B.R. 285 (Bankr. S.D.N.Y. 2011) .............. 3, 19

SIPC v. Morgan, Kennedy & Co., 533 F.2d 1314 (2d Cir. 1976) ......................................... 18, 19

SIPC, 454 B.R. at 295 ................................................................ 9, 10, 14, 17, 20

Tew v. Res. Mgmt. (In re ESM Gov't Secs., Inc.), 812 F.2d 1374 (11th Cir. 1987) .................... 8

**Statutes**

15 U.S.C. § 78fff-3(a)(5) ................................................................................ 14

15 U.S.C. § 78lll(2) ......................................................................................... 7, 8, 9, 13

15 U.S.C. §§ 78fff-2(b) ................................................................................................ 21

29 C.F.R. § 2509.75-2 (1992) ...................................................................................... 12

29 C.F.R. § 2510.3-101(a)(2) ................................................................................. 11, 15

29 C.F.R. § 2510.3-101(f)(1) ....................................................................................... 11

29 C.F.R. § 2510.3-101(h) ..................................................................................... 11, 12

29 C.F.R. § 2550.403a-1(a)-(b) .................................................................................... 19

29 C.F.R. 2550.403a-1 ........................................................................................... 15, 16

29 U.S.C. § 1002(21)(A)(i) .......................................................................................... 15

29 U.S.C. § 1002(42) ............................................................................................ 10, 11

29 U.S.C. § 1003(21)(A)(i) .......................................................................................... 16

29 U.S.C. § 1103 ................................................................................................... 15, 16

29 U.S.C. § 1104(a)(1)(A) ..................................................................................... 16, 17

29 U.S.C. §§ 1001-1461 ................................................................................................. 1

29 U.S.C. §§ 1132, 1104, 1106 ..................................................................................... 19

29 U.S.C. §§ 403(a) ...................................................................................................... 12

## PRELIMINARY STATEMENT

This memorandum of law is submitted by 37 employee benefit plans governed by the

Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. §§ 1001-

1461 ("ERISA Plan Claimants").[1] It is submitted in opposition to the motion of Irving H. Picard

("Trustee"), trustee for the substantively consolidated liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff ("Madoff"), for an

order affirming the Trustee's determinations denying claims over ERISA-related objections.  See

Dkt. No. 4521.

As discussed below, the Trustee improperly denied the ERISA Plan Claimants' claims

under the Securities Investor Protection Act of 1970 ("SIPA") as amended, 15 U.S.C. §§ 78aaa-

78lll, in connection with plan asset losses arising from the Madoff fraud, erroneously finding that

they were not "customers" within the meaning of SIPA.  As the evidence shows, the ERISA Plan

Claimants are "customers" entitled to the protection of SIPA since they entrusted their cash with

---

[1] The ERISA Plan Claimants include the following entities: Bricklayers and Allied Craftsmen Local 2 Annuity Fund; Bricklayers and Allied Craftworkers Local 2, Albany, New York, Health Benefit Fund; Bricklayers and Allied Craftworkers Local 2, Albany, New York, Pension Fund; Building Trade Employers Insurance Fund; Central New York Laborers' Annuity Fund; Central New York Laborers' Health and Welfare Fund; Central New York Laborers' Pension Fund; Central New York Laborers' Training Fund; Engineers Joint Welfare Fund; Engineers Joint Training Fund; International Brotherhood of Electrical Workers Local Union No. 43 and Electrical Contractors Pension Fund; International Brotherhood of Electrical Workers  Local No. 43 and Electrical Contractors Welfare Fund; I.B.E.W. Local 139 Pension Fund; I.B.E.W. Local 241 Pension Fund; I.B.E.W. Local 241 Welfare Benefits Fund; I.B.E.W. Local 325 Annuity Fund; I.B.E.W. Local 325 Pension Fund; I.B.E.W. Local 910 Annuity Fund; I.B.E.W. Local 910 Pension Fund; I.B.E.W. Local 910 Welfare Fund; I.B.E.W. Local 1249 Pension Fund; Laborers' Local 103 Annuity Fund; Laborers' Local 103 Welfare Fund; Laborers' Local 103 Pension Fund; New York State Lineman's Safety Training Fund; Oswego Laborers' Local No. 214 Pension Fund; Plumbers, Pipefitters and Apprentices Local No. 112 Health Fund; Roofers' Local 195 Annuity Fund; Roofers' Local 195 Health & Accident Fund; Roofers' Local 195 Pension Fund; Syracuse Builders Exchange, Inc./CEA Pension Plan; SEIU 1199Upstate Pension Fund; Service Employees Benefit Fund; Service Employees Pension Fund of Upstate New York; Local 73 Retirement Fund; Local 73 Annuity Fund; and Upstate Union Health & Welfare Fund.  The 37 ERISA Plan Claimants submitted a total of 50 claims seeking coverage under SIPA.

BLMIS through certain plan asset vehicles for the purpose of purchasing and selling securities.

The cash entrusted to BLMIS belonged to the ERISA Plan Claimants, <u>not</u> the plan asset vehicles.

BLMIS was a fiduciary of the ERISA Plan Claimants, who exercised control over and held the

ERISA Plan Claimants' cash in trust, and thus was legally obligated to act on behalf and in the

exclusive and best interest of the ERISA Plan Claimants.  For these reasons and others discussed

below, the ERISA Plan Claimants were indeed "customers" of BLMIS under SIPA.  As such, the

Trustee's motion to affirm his denial of their claims should be denied by the Court, and the

Trustee should be directed to promptly approve the ERISA Plan Claimants' customer claims.

## STATEMENT OF FACTS

### A.    The ERISA Plan Claimants

The ERISA Plan Claimants are employee benefit plans established pursuant to the Labor-

Management Relations Act, 29 U.S.C. §§ 141-197, and governed by ERISA.  <u>See</u> Affidavit of

Jennifer A. Clark in Opp'n to Tr.'s Mot. to Affirm Determinations Denying Claims Over

ERISA-Related Objs., sworn to Jan. 17, 2012 ("Clark Aff."), Exhibits A-C.[2]  Each ERISA Plan

Claimant had deposited cash with BLMIS through one or more of the following plan asset

vehicles as of the "filing date" in this proceeding as defined by Section 78lll(7) of SIPA: Income-

Plus Investment Fund ("Income-Plus"), Andover Associates LLC I ("Andover"), Beacon

Associates LLC I ("Beacon I"), and Beacon Associates LLC II ("Beacon II") (collectively "Plan

Asset Vehicles" or "PAVs").  <u>See</u> Clark Aff., Exs. N, O.

---

[2] Pursuant to the Court's Scheduling Order issued on November 8, 2011, the ERISA Plan
Claimants have submitted supporting documentation to the Trustee in the form of exhibits to Ms.
Clark's affidavit, but have not filed such documentation with the Court.  Nonetheless, for the
Court's convenience, certain relevant portions of the documents are attached hereto.  The ERISA
Plan Claimants reserve the right to submit to the Trustee and/or file with the Court additional
documents in accordance with the aforementioned Scheduling Order.

The ERISA Plan Claimants timely filed "customer" claims against BLMIS under SIPA.

See id. Ex. S.  The Trustee denied each such claim on the following grounds:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS.  Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2).  Accordingly, your Claim for securities and/or a credit balance is DENIED.

Id. Ex. T.  The ERISA Plan Claimants timely objected to the Trustee's denial of their customer claims.  See Dkt. Nos. 1923, 4068 , 4070.[3]

### B.    ERISA Plan Asset Vehicles

#### 1.    Income-Plus

Income-Plus was established pursuant to an Agreement of Trust, dated February 23, 1993, for the exclusive purpose of collectively investing the assets of participating qualified pension plans and other entities subject to ERISA.  See Clark Aff., Ex. D, Agmt. of Trust §§ 1.02(k), (m), 2.01.  Income-Plus is a tax-exempt "Group Trust" within the meaning of Section 501(a) of the Internal Revenue Code and Revenue Ruling 81-100 issued by the Internal Revenue Service, which limits participation in such group trusts to ERISA plans and certain types of governmental plans.  See id. Ex. D, Agmt. of Trust § 2.02; see also Rev. Rul. 81-100, 1981-1 C.B. 326, as modified by Rev. Rul. 2004-67, 2004-28 I.R.B. 28; Rev. Rul. 2011-1.  The Agreement of Trust appointed a Trustee to hold the assets of the employee pension and profit-sharing plans in trust.  See id. Ex. D, Agmt. of Trust § 3.03.

---

[3] On June 28, 2011, this Court issued a Memorandum-Decision and Order granting the Trustee's motion to affirm determinations denying the claims of non-ERISA investors in feeder funds.  See SIPC v. Bernard L. Madoff Inv. Secs. LLC, 454 B.R. 285, 292 (Bankr. S.D.N.Y. 2011) (expressly excluding from analysis entities that "do not include ERISA plans (and other entities whose property is treated as ERISA plan property), trusts, or pass-through, self-directed, or custodial investment vehicles such as banks, brokers or dealers.").

Twenty-two (22) ERISA Plan Claimants entrusted plan assets, in the form of cash, with BLMIS through Income-Plus.  See id. Ex. N.  As of November 30, 2008, 39% of the cash entrusted with Income-Plus by the aforementioned claimants was held by BLMIS.  See id. Ex. T. These claimants did so pursuant to the terms of private offering memoranda, dated December 15, 1993 and November 1, 2003, respectively ("Income-Plus Offering Memoranda"), and an Adoption Agreement.  See id. Exs. D, E.  The Income-Plus Offering Memoranda, which are substantially similar in all relevant respects, provide as follows:

> The assets of the Group Trust will constitute "plan assets" under regulations promulgated by the [U.S. Department of Labor].  The Investment Manager will therefore be deemed a fiduciary with respect to each investing Plan and the general prudence and fiduciary responsibility provisions of ERISA will be applicable to it and to the operations of the Group Trust.

Clark Aff., Ex. D at 22.

Under these offering memoranda, J.P. Jeanneret Associates, Inc. is the "Investment Manager" of Income-Plus and a fiduciary of the aforementioned claimants under ERISA.  See id., Ex. D at 22 ("The Investment Manager [of Income-Plus] will . . . be deemed a fiduciary with respect to each investing Plan and the general prudence and fiduciary responsibility provisions of ERISA will be applicable to it and to the operations of the Group Trust.").  As Investment Manager, J.P. Jeanneret Associates, Inc. possessed the authority to appoint "Sub-Managers" or "Designated Managers" to manage the plan assets of Income-Plus.  See id. Ex. D, Adopt. Agmt. at 5, Agmt. of Trust at § 3.07.  From its inception in 1993, Income-Plus used BLMIS as a "Designated Manager" to manage the plan assets of ERISA Plan Claimants and those claimants were aware that they were depositing and entrusting their plan assets with BLMIS through

Income-Plus.  See id. Exs D. at 1, 4-5; V.[4]   BLMIS was aware that he controlled, through

Income-Plus, ERISA plan assets.[5]

### 2.    Beacon and Andover

Beacon I and Beacon II (collectively "Beacon"), and Andover are limited liability

companies established under the laws of the State of New York.  See Clark Aff., Exs. J at 1, O at

1.  Twenty-two (22) ERISA Plan Claimants entrusted plan assets, in the form of cash, with

BLMIS through Beacon, and five (5) ERISA Plan Claimants entrusted plan assets with BLMIS

through Andover.  See id. Ex. E.  As of November 30, 2008, 74% of the cash entrusted with

Beacon by ERISA Plan Claimants was held by BLMIS.  See id. Ex. T.  As of that date, 24% of

the cash entrusted with Andover by ERISA Plan Claimants was held by BLMIS.  See id.

ERISA Plan Claimants who entrusted assets with BLMIS through Beacon did so pursuant

to the terms of confidential offering memoranda (collectively "Beacon Offering Memoranda").

See id. Ex. L, N, O.  ERISA Plan Claimants who entrusted assets with BLMIS through Andover

---

[4] BLMIS was identified in the offering memoranda by its unique investment strategy as follows:
"The Investment Manager . . . identified a number of hedging and arbitrage strategies utilized by
Designated Managers with whom the Investment Manager intends to invest substantially all of
the assets of the Investment Fund . . . . These include convertible hedging, basis and spreading
trading, conversions and reversals and relative value trading."  Clark Aff., Ex. D at 1, 4-5.
Further, J.P. Jeanneret Associates, Inc. identified BLMIS to ERISA Plan Claimants in one form
or another.  See id. Ex. V.

[5] The Agreement of Trust acknowledges that Designated Managers like BLMIS were subject to
the fiduciary requirements of ERISA, including the requirement that they comply with applicable
bonding requirements under Section 412 of ERISA.  See id. Ex. D, Agmt. of Trust §§ 7.01,
10.07, 13.01.  Indeed, BLMIS maintained a fidelity bond required of ERISA fiduciaries under
Section 412 of the statute, indicating that he was aware that he controlled, through Income-Plus,
ERISA plan assets.  See id. Ex. Q.  In addition, the proxy voting policies and procedures of J.P.
Jeanneret Associates, Inc. indicates that "In the case of proxies voted by Bernard L. Madoff
under authority granted by the Manager such proxies will be voted in accordance with the
recommendations of Corporate Management, unless it is otherwise inconsistent with the best
interest of any Plan's participants and beneficiaries," and BLMIS furnished proof of its
compliant proxy voting policies to Income-Plus.  Id. Ex. R.

also did so pursuant to the terms of a confidential offering memorandum ("Andover Offering Memorandum").  See id. Ex. F.

At all relevant times, ERISA plans held more than 25% of the equity interest of Beacon and Andover.  The Andover Offering Memorandum provides that "[Andover] anticipates that 25% or more of the Interests . . . will continue to be held by Benefit Plan Investors, and accordingly, the underlying assets of [Andover] will continue to be deemed to be plan assets of the investing ERISA Plans and Individual Retirement Funds."  Id. Ex. F at 38.  Further, the Andover Offering Memorandum provides that "[Andover] is, and will continue to be, a fiduciary with respect to . . . each investing ERISA Plan . . . ."  Id.  Similarly, the Beacon Offering Memoranda provides "the assets of [Beacon] are, and are expected to continue to be deemed, to be, plan assets . . . ."  Id. Ex. K at 41.  Those offering memoranda further provide that "[Beacon] is, and will continue to be, a fiduciary with respect to . . . each investing ERISA Plan and Individual Retirement Fund."  Id.

Pursuant to the Beacon Offering Memorandum, ERISA Plan Claimants granted Beacon the power to appoint investment managers to manage their plan assets.  See id. Ex. K at 2.[6] Pursuant to the Andover Offering Memorandum, ERISA Plan Claimants granted Andover the power to appoint investment managers to manage their plan assets.  See id. Ex. F at 2.  The Beacon Offering Memoranda acknowledge that by exercising control over the plan assets of the ERISA Plan Claimants, BLMIS served as a fiduciary to ERISA Plan Claimants: "The general prudence and fiduciary responsibility provisions of ERISA are, and will continue to be, applicable both to [Beacon] with respect to each investment made by [it] and to the entity or

---

[6] In addition, pursuant to the Beacon Operating Agreement, ERISA Plan Claimants appointed Beacon, the Managing Member, as their true and lawful agent and attorney-in-fact to make all or a portion of investment decisions with the property of the ERISA Plan Claimants.  See id. Exs. H, Op. Agmt. at 20, 42-43; Subscr. Agmt. at B-4; Ex. I, Subscr. Agmt at S-4.

entities chosen by the Managing Member to invest [its underlying assets]." Id. Ex. K at 41

(emphasis added)).  BLMIS was an entity selected by both Beacon and Andover to manage the

plan assets of ERISA Plan Claimants and those claimants were aware that they were depositing

and entrusting their plan assets with BLMIS through Beacon and Andover.  See id. Ex. H at 10;

Ex. W.[7]  BLMIS was aware that, through Beacon and Andover, it had control over ERISA plan

assets and was an ERISA fiduciary.  See id. Ex. P.

## ARGUMENT

## THE ERISA PLAN CLAIMANTS ARE "CUSTOMERS" OF BLMIS UNDER SIPA

Under SIPA, "customers" of failed brokerage firms are entitled to the protections of the

statute.  SIPA defines the term "customer" as follows:

> The term "customer" of a debtor means any person (including any person with
> whom the debtor deals as principal or agent) who has a claim on account of
> securities received, acquired, or held by the debtor in the ordinary course of its
> business as a broker or dealer from or for the securities accounts of such person
> for safekeeping, with a view to sale, to cover consummated sales, pursuant to
> purchases, as collateral security, or for purposes of effecting transfer.  The term
> "customer" includes any person who has a claim against the debtor arising out of
> sales or conversions of such securities, and any person who has deposited cash
> with the debtor for the purpose of purchasing securities . . . .

15 U.S.C. § 78lll(2).

This provision actually contains "three alternative definitions" of "customer."  Azore

Bank Ltd. v. SIPC (In re Bernard L. Madoff Inv. Secs., LLC), No. 1:11-CV-5683, slip op. at 10

---

[7] Prior to 2000, Beacon's offering documents specifically identified BLMIS as the funds'
investment manager and described his strategies, see Clark Aff., Ex. G at App'x; but in later
offering memoranda Beacon referred to BLMIS indirectly as the "Manager currently trading a
substantial majority of the Fund's assets" and describes his strategy as one that involves "split
conversion hedged option transaction," similar to the "split-strike" strategy for which BLMIS
was specifically known.  Clark Aff., Ex. H at 10.  The Andover offering documents also
indirectly refer to BLMIS as a manager employing strategies of "[h]edge/arbitrage activities,"
"securities arbitrage," "convertible arbitrage," and "fixed income arbitrage."  Id. Ex. F at 13.
Further, BLMIS was identified to the ERISA Plan Claimants in one form or another.  See id. Ex.
W.

(S.D.N.Y. Jan. 4, 2012).  First, a customer is "any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer."  15 U.S.C. § 78lll(2); see Azore Bank, No. 1:11-CV-5683 at 10.  Second, a customer is "any person who has a claim against the debtor arising out of sales or conversions of such securities."  Id.; see Azore Bank, No. 1:11-CV-5683 at 10.  Third, a customer is "any person who has deposited cash with the debtor for the purpose of purchasing securities."  Id.; see Azore Bank, No. 1:11-CV-5683 at 10, 15-17, 20-21.  If a claimant falls within any one of these three alternative definitions, he is a "customer" under SIPA.  See id.; see Azore Bank, No. 1:11-CV-5683 at 10.

Under the third definition of "customer," if a person "has deposited cash with the debtor for the purpose of purchasing securities," he is a customer entitled to protection under SIPA.  Id.; see In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229, 236 (2d Cir. 2011) ("Under SIPA, [t]he term 'customer' includes . . . any person who has deposited cash with the debtor for the purpose of purchasing securities." (internal quotation marks omitted)); Tew v. Res. Mgmt. (In re ESM Gov't Secs., Inc.), 812 F.2d 1374, 1376 (11th Cir. 1987) ("[I]t is the act of entrusting the cash to the debtor for the purpose of effecting securities transactions that triggers the customer status provisions."); SEC v. Kenneth Bove & Co., 378 F. Supp. 697, 699 (S.D.N.Y. 1974) ("The circumscribed class of customers protected under the Act [includes] those persons who have 'entrusted' property to the Debtor . . . ."); Azore Bank, No. 1:11-CV-5683 at 10 (describing the entrustment of cash for the purpose of purchasing securities as one of "three alternative definitions" of "customer" under SIPA (emphasis added)).

As discussed below, the ERISA Plan Claimants are "customers" within the meaning of SIPA. They entrusted cash with BLMIS for the purpose of purchasing securities. Thus, they possess the indicia of customer status required by the statute.

### A.    The ERISA Plan Claimants Entrusted Cash With BLMIS for the Purpose of Purchasing Securities

Any person who has entrusted cash with the debtor for the purpose of purchasing securities is a "customer" under SIPA. See 15 U.S.C. § 78lll(2); In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d at 236; Azore Bank, No. 1:11-CV-5683 at 10, 15-17, 20-21. Indeed, "the critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." In re Bernard L. Madoff Inv. Secs., LLC, 654 F.3d at 236 (quoting Appleton v. First Nat'l Bank of Ohio, 62 F.3d 791, 801 (6th Cir. 1995)) (emphasis omitted); Azore Bank, No. 1:11-CV-5683 at 17. The ERISA Plan Claimants owned the assets entrusted to BLMIS through the PAVs, granted BLMIS the authority and control to manage their assets, and expected BLMIS to manage those assets in accordance with its fiduciary obligations. Accordingly, the ERISA Plan Claimants are customers entitled to SIPC coverage.

### 1.    The ERISA Plan Claimants Owned the Assets Entrusted to BLMIS

The nature of the investor's property interest (or lack thereof) in the assets entrusted with the debtor is a "foundational element" of the customer analysis. SIPC, 454 B.R. at 295. The assets held by the broker-dealer must be the property of the investor. See id. at 299 (noting that "there was never 'actual receipt, acquisition, or possession of the property of a claimant" (emphasis in original)); Azore Bank, No. 1:11-CV-5683 at 15-16 (noting that debtor did not hold any property of the claimants because the property at issue belonged solely to third parties); see also SIPC v. Morgan, Kennedy & Co., 533 F.2d 1314, 1318 (2d Cir. 1976) ("broker-dealer held

no property belonging to any [claimant]"); Focht v. Heebner (In re Old Naples Sec., Inc.), 223

F.3d 1296, 1302 (11th Cir. 2000) ("[T]he question is whether there was actual receipt,

acquisition or possession of the property of a claimant by the brokerage firm under liquidation."

(internal quotation marks omitted)).  Thus, if a claimant cedes his property interest in certain

assets before they are entrusted with the debtor, he has not entrusted those assets with the debtor.

See Azore Bank, No. 1:11-CV-5683 at 26 ("[A]ppellants could not 'entrust[]' any cash or

securities to BLMIS since the cash and securities at issue belonged to the Feeder Funds."); SIPC,

454 B.R. at 299 (claimants could not have entrusted cash with BLMIS for the purpose of

purchasing securities where they only entrusted cash to a feeder fund for the purpose of

purchasing an ownership interest in the feeder fund itself).

       In this case, there is no question that the assets entrusted with BLMIS through the PAVs

were the ERISA Plan Claimants' property.  The ERISA Plan Claimants are employee benefit

plans governed by ERISA and regulations issued by the U.S. Department of Labor ("DOL") and

its Secretary.[8]  See Clark Aff., Exs. A-C.  ERISA provides that "the term 'plan assets' means

plan assets as defined by such regulations as the [DOL] Secretary may prescribe . . . ." 29 U.S.C.

§ 1002(42).  Under the DOL's "plan asset" regulation, when an ERISA plan invests in another

---

[8] The DOL recently reiterated its position that the property interest of the ERISA Plan Claimants
is determined pursuant to the plan asset regulation.  See DOL Advisory Opinion 2011-10A ("[I]n
situations outside the scope of the plan assets regulation (29 C.F.R. §2510.3-101), the assets of a
plan generally are identified on the basis of ordinary notions of property rights under non-ERISA
law." (emphasis added)).  Further, Congress enacted ERISA in response to the mismanagement
of monies in retirement plans and the resultant termination of such plans before the requisite
funds had been accumulated.  See Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S.
359, 374-75 (1980) (citing 29 U.S.C. § 1001(a)).  This often led to employees and their
beneficiaries being deprived of anticipated benefits.  See id.  In very simple terms, then, the
purpose of ERISA is to ensure that when a worker was promised a benefit, he or she would
actually receive it.  See id. at 375; 29 U.S.C. § 1001(a).

entity and investments by other such plans are significant, the ERISA plan's assets include its investment plus the underlying assets of the other entity.  The "plan asset rule" provides:

> In the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940 its assets include both the equity interest and <u>an undivided interest in each of the underlying assets of the entity</u>, unless . . . [e]quity participation in the entity by benefit plan investors is not significant.

29 C.F.R. § 2510.3-101(a)(2) (emphasis added).  Equity participation in an entity by ERISA plans is "significant" and the ERISA plan's assets include the assets of the investment vehicle if "25 percent or more of the value of any class of equity interests in the entity is held by benefit plan investors."  29 C.F.R. § 2510.3-101(f)(1); <u>see</u> 29 U.S.C. § 1002(42) (also referencing the 25% equity participation rule).

The plan asset rule further provides that if an ERISA plan invests in a tax exempt "group trust" within the meaning of Revenue Ruling 81-100, the ERISA plan's assets include the assets of the group trust.  The plan asset rule provides:

> Except where the entity is an investment company registered under the Investment Company Act of 1940, <u>when a plan acquires or holds an interest in any of the following entities its assets include its investment and an undivided interest in each of the underlying assets of the entity</u>: (i) A <u>group trust</u> which is exempt from taxation under section 501(a) of the Internal Revenue Code pursuant to the principles of Rev. Rul. 81–100, 1981–1 C.B. 326 . . . .

29 C.F.R. § 2510.3-101(h) (emphasis added).

Put simply, when an ERISA plan invests in (1) an entity in which other ERISA plans have invested and hold 25% or more of the equity interests, or (2) a group trust, that ERISA plan's assets include <u>both the investment and an undivided interest in each of the underlying</u>

assets of the entity. Such assets are the property of the plan, <u>not</u> the other entity, and must be held in trust.[9]

In this case, the assets that the ERISA Plan Claimants entrusted with BLMIS through Income-Plus, Andover, and Beacon (collectively "PAVs") constitute plan assets under the plan asset rule. Income-Plus is a tax-exempt "group trust" under Section 501(a) of the Internal Revenue Code and within the meaning of Revenue Ruling 81-100. <u>See</u> Clark Aff., Ex. D, Agmt. of Trust § 2.02; Rev. Rul. 81-100, 1981-1 C.B. 326 (limiting participation in such group trusts to ERISA plans and other similar plans), <u>as modified by</u> Rev. Rul. 2004-67, 2004-28 I.R.B. 28; Rev. Rul. 2011-1. It is not an investment company registered under the Investment Company Act of 1940. <u>See id.</u> Thus, under the plan asset rule, the ERISA Plan Claimants owned the assets placed with BLMIS; Income-Plus merely held them in trust. <u>See</u> 29 C.F.R. § 2510.3-101(h); 29 U.S.C. §§ 403(a). Indeed, Income-Plus's Agreement of Trust expressly appointed a Trustee to hold the assets of the employee pension and profit-sharing plans in trust, <u>see</u> Clark Aff., Ex. D, Agmt of Trust at 2, § 3.02; and the Offering Memoranda provide that "[t]he assets of the Group Trust will constitute 'plan assets' under regulations promulgated by the [DOL]." <u>Id.</u> Ex. D at 22.

While Beacon and Andover are not "group trusts" under 29 C.F.R. § 2510.3-101(h), they were entities in which other ERISA plans had invested and held 25% or more of the equity interests. The Andover Offering Memorandum provides that "[Andover] anticipates that 25% or more of the Interests . . . will continue to be held by Benefit Plan Investors, and <u>accordingly, the</u>

---

[9] This is a result specifically intended by plan asset regulation. In issuing the plan asset regulation, the DOL reversed its earlier position, under Interpretative Bulletin 75-2, that the acquisition by an ERISA plan of an equity interest in a corporation or a limited partnership generally would not cause the underlying assets of the corporation or partnership to become assets of the investing plan. <u>See</u> 29 C.F.R. § 2509.75-2 (1992).

underlying assets of [Andover] will continue to be deemed to be plan assets of the investing

ERISA Plans and Individual Retirement Funds." Clark Aff., Ex. F at 38. Similarly, the Beacon

Offering Memoranda provides "the assets of [Beacon] are, and are expected to continue to be

deemed, to be, plan assets . . . ." Clark Aff., Exs. J at 39, K at 41. Indeed, Beacon has confirmed

in writing in a letter to counsel for the ERISA Plan Claimants dated December 17, 2010, that "as

of November 30, 2008 and currently," more than 25% of the assets of Beacon were held by

ERISA plans. Clark Aff., Ex. L.[10]

Based upon ERISA and related regulations, as well as the terms of the relevant offering

documents, it is clear that the ERISA Plan Claimants, not the PAVs, owned the assets entrusted

with BLMIS. As such, the assets held by BLMIS in this case were the property of the ERISA

Plan Claimants. And it is clear that the property was entrusted to BLMIS "for the purpose of

purchasing securities." 15 U.S.C. § 78lll(2).[11]

The nature of the interests held by the ERISA Plan Claimants fundamentally

distinguishes their claims and status from the non-ERISA plan investors who merely purchased

ownership interests in feeder funds and whose cash became the sole property of the feeder funds.

See Azore Bank, 1:11-CV-5683 at 16, 20 (citing N.Y. Ltd. Liab. Co. § 601 ("A member has no

interest in specific property of the limited liability company."); Newburger, Loeb & Co. v.

Gross, 563 F.2d 1057, 1075 n.22 (2d Cir. 1977) ("[L]imited partners have no property right in

the partnership assets.")). Unlike the non-ERISA investors who invested in the feeder funds and

---

[10] Further, all PAVs filed Annual Returns/Reports of Employee Benefit Plan, also known as Form 5500s, in 2008. See Clark Aff., Ex. M. Only ERISA plans and ERISA plan asset vehicles are required to file such forms. See 29 U.S.C. §§ 1024, 1365.

[11] The various offering documents make very clear that the PAVs placed a portion of the ERISA Plan Claimants' assets with BLMIS for trading on the securities markets. See Clark Aff., Exs. F at 12-13; D at 1, 4-5; H at 10.

did not have a property interest in the feeder funds, the ERISA Plan Claimants' assets did not become the sole property of the PAVs.  Rather, the ERISA Plan Claimants' assets retained their character as plan assets and remained as such when they passed through the PAVs and were entrusted, on the ERISA Plan Claimants' behalf, with BLMIS.

The ERISA Plan Claimants have satisfied the "core" or "foundational element" of the customer analysis.  SIPC, 454 B.R. at 295.  They deposited and entrusted their cash with BLMIS for the purpose of purchasing securities.  Thus, they are entitled to customer status under SIPA.[12]

### 2.    The ERISA Plan Claimants Had a Fiduciary Relationship With the PAVs and BLMIS

As discussed, "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.  Such a would-be investor has a fiduciary relationship with the broker-dealer, and is entitled to the protection of the Act."

---

[12] Alternatively, the ERISA Plan Claimants are customers under Section 78fff-3(a)(5) of SIPA. Under that provision:

> [N]o advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established to the satisfaction of the trustee, from the books and records of the debtor or from the books and records of a broker or dealer or bank, or otherwise, that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank . . . , in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.

15 U.S.C. § 78fff-3(a)(5) (emphases added).  While a literal reading of that provision indicates that it applies only to customers who are "a broker or dealer or bank," the Trustee himself has admitted that it applies "where a fiduciary opens an account on a customer's behalf."  See Tr.'s Mem. of Law. Supp. Feeder Fund Investor Mot. at 15 n. 9 (Dkt. No. 2411).  In this case, the PAVs, as fiduciaries and agents of the ERISA Plan Claimants who held their ERISA plan assets in trust, opened accounts with BLMIS for the ERISA Plan Claimants and deposited the ERISA Plan Claimants' assets with BLMIS for the purpose of purchasing securities.  As such, the Trustee should have examined the books and records of the PAVs to determine if the ERISA Plan Claimants were customers of those entities and, thus, separate customers of BLMIS under Section 78fff-3(a)(5).

Appleton v. First Nat'l Bank of Ohio, 62 F.3d 791, 801 (6th Cir. 1995) (citation omitted); see

SIPC, 454 B.R. at 299 (noting that without showing entrustment, claimants cannot establish the

existence of a fiduciary relationship); see Appleton, 62 F.3d at 801; In re Primeline Sec. Corp.,

295 F.3d 1100, 1110 (10th Cir. 2002) ("Individuals must have a fiduciary relationship, rather

than a creditor-debtor relationship with their brokerage firm to qualify as a 'customer' under

SIPA."); SEC v. Ambassador Church Fin./Dev. Group, Inc., 679 F.2d 608, 614 (6th Cir. 1982)

("A person who becomes a creditor of a broker in some manner which does not involve

securities trading or investment is not covered.  In the case of a loan of securities to a broker

there are no indicia of a fiduciary relationship between the lender and the broker."); SEC v. F.O.

Baroff Co., Inc., 497 F.2d 280, 283 (2d Cir. 1974) ("Throughout the [House] report 'investors' is

used synonymously with 'customers,' indicating that, in the eyes of Congress, [SIPA] would

protect capital markets by instilling confidence in securities traders.").  As described above and

as further discussed below, the ERISA Plan Claimants entrusted their cash with BLMIS through

the PAVs and, as such, they necessarily have established a fiduciary relationship with BLMIS

indicative of their status as investors/customers protected by SIPA.

Under ERISA and related regulations, plan assets must be held in trust and any party who

exercises authority and control over such assets is a fiduciary of the plan.  See 29 U.S.C. § 1103;

29 C.F.R. 2550.403a-1; 29 U.S.C. § 1002(21)(A)(i).  Under the plan asset rule, "any person who

exercises authority or control respecting the management or disposition of [the] underlying assets

[of a PAV subject to the plan asset rule] . . . is a fiduciary of [the investing ERISA plan]."  See

29 C.F.R. § 2510.3-101(a)(2); see also Court Appointed Receiver of Lancer Offshore, Inc. v.

Citco Grp. Ltd., 2008 U.S. Dist. LEXIS 25740, at *24 (S.D. Fla. March 31, 2008).  As such, the

PAVs were fiduciaries of the ERISA Plan Claimants and held their assets in trust.  See 29 U.S.C. § 1103; 29 C.F.R. 2550.403a-1.[13]

BLMIS obtained the ERISA Plan Claimants' assets from the PAVs pursuant to his role as a sub-manager of the assets held in trust by the PAVs.  See Clark Aff., Exs. F at 12-13; D at 1, 4-5; H at 10.  The assets entrusted to BLMIS through the PAVs retained their character as ERISA plan assets; the assets were the property of the ERISA Plan Claimants.  See id.  BLMIS exercised authority and control respecting the management and disposition of those plan assets and therefore was a fiduciary of those ERISA plan assets.  See 29 U.S.C. § 1003(21)(A)(i).[14] Thus, the Beacon Offering Memoranda provide that: "The general prudence and fiduciary responsibility provisions of ERISA are, and will continue to be, applicable both to [Beacon] with respect to each investment made by [it] and to the entity or entities chosen by the Managing Member to invest [Beacon's] funds [i.e., BLMIS]."  Clark Aff., Exs. J at 39, K at 41 (emphasis added)).  Similarly, the Income-Plus Offering Memoranda acknowledge that BLMIS is a fiduciary by providing that "Designated Managers," such as BLMIS, "shall have the following powers and authority . . . exercisable by the Designated Manager without further direction or action by [Income-Plus]: . . . To purchase, receive, subscribe for, or otherwise acquire any securities or otherwise acquire any securities or other property and to retain in trust such

---

[13] Plan assets continue to be held in trust even where "securities of a plan are held in the name of a nominee or in street name, provided such securities are held on behalf of the plan by . . . [a] broker or dealer registered under the Securities Exchange Act of 1934, or a nominee of such broker or dealer . . . ."  29 C.F.R. § 2550.403a-1(a)-(b).

[14] As an ERISA fiduciary who held the ERISA Plan Claimants' assets in trust, BLMIS was required by law to "discharge [his] duties with respect to a plan solely in the interest of" and for the "exclusive purpose of providing benefits to participants and beneficiaries" of the ERISA Plan Claimants.  29 U.S.C. § 1104(a)(1)(A).  BLMIS was required by law to manage the ERISA Plan Claimants' assets "with an eye single to the interests of the participants and beneficiaries." Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982).  Indeed, ERISA fiduciary duties are "the highest known to the law."  Id. at 272 n.8.

securities or other property."  Clark Aff., Ex. D, Agmt. of Trust at § 3.02(a) (emphases added).

And, in each case, BLMIS knew that it was acquiring ERISA plan assets through a PAV and

knew that it was a fiduciary of those ERISA plan assets.  See id. Ex. D, Agmt. of Trust §§ 2.01,

13.01, 10.07.  In fact, for Beacon and Andover, BLMIS actually reviewed and/or modified their

offering memoranda.  Id. Ex. P.

Based on the foregoing, there is no doubt that BLMIS was a fiduciary of the ERISA Plan

Claimants.  As a fiduciary entrusted with the ERISA Plan Claimants' property, BLMIS owed the

ERISA Plan Claimants a special legal obligation – indeed, "the highest known to the law" –

whereby it was required to act "solely in the interest of" and for the "exclusive purpose of

providing benefits to [the] participants and beneficiaries" of the ERISA Plan Claimants.  29

U.S.C. § 1104(a)(1)(A));  see Donovan, 680 F.2d at 271.  As a fiduciary entrusted with property

of the ERISA Plan Claimants, BLMIS was their broker/dealer and they were his "customers"

entitled to the protection of SIPA.

## B.    The ERISA Plan Claimants Satisfy Other Indicia of Customer Status

As discussed above, the ERISA Plan Claimants have satisfied the third definition of

"customer" under SIPA.  Nonetheless, as discussed below, it is useful to note that they also

satisfy a number of the traditional indicia of "public investor" status considered by some courts

when identifying "customers" entitled to the protection of SIPA.[15]

The "constellation of cases" addressing the alternative definitions of "customer"

contained in SIPA have taken different approaches in their analyses.  See SIPC, 454 B.R. at 295

n.14.  Courts have been mindful of the underlying purpose of SIPA to protect "public investors,"

not lenders and other creditors without any connection to the broker-dealer's trading activities in

---

[15] As described in detail above, the ERISA Plan Claimants owned the property entrusted to
BLMIS, and thus they satisfy that indicia of "public investor" status.

17

securities markets. See SIPC v. Morgan, Kennedy & Co., 533 F.2d 1314, 1317 (2d Cir. 1976)

(noting that entities such as lenders that may fall within the literal definition of "customer" are

not customers because they are not the type of "public investor" the statute was meant to

protect); SEC v. F.O. Baroff Co., 497 F.2d 280, 284 (2d Cir. 1974) (same). In other words,

courts have placed "[e]mphasis on the customer as investor and purchaser/trader" in conducting

the customer analysis. Morgan Kennedy, 533 F.2d at 1317; see F.O. Baroff, 497 F.2d at 283

("The emphasis throughout [the legislative process] was on the customer as investor and trader,

not on others who might become creditors of the broker-dealer for independent reasons.").

        To that end, courts have looked to the traditional indicia of investor status in considering

the customer issue, including whether the broker-dealer held property belonging to the person;

whether the person had the legal capacity to have dealings with the broker-dealer or whether

there was "total incapacity" to have such dealings; whether the person had the power to control

investment decisions; and whether the person had securities accounts in his name or appeared in

the books and records of the broker-dealer. See Morgan Kennedy, 533 F.2d at 1318; Azore

Bank, No. 1:11-CV-5683 at 14. Courts have held that if a person cannot satisfy any of these

factors, he is not a customer under SIPA. See Morgan Kennedy, 533 F.2d at 1318 (no customer

status where claimants "possessed none of those attributes"); Azore Bank, No. 11-CV-5683 at 14

("The appellants did or had none of these things; they are therefore not 'customers' of BLMIS.").

The courts have not held, however, that a person must satisfy all of the factors; rather, the factors

are merely indicative of customer status and no one factor is dispositive. See SIPA, 454 B.R. at

295 n.14 (noting the various factors and stating that customer status in that case was "based on

the totality of circumstances").

18

In this case, the ERISA Plan Claimants satisfy many of the other indicia of a "customer" entitled to SIPA protection. First, as a result of their fiduciary relationship with BLMIS, the ERISA Plan Claimants necessarily had the legal capacity to "have dealings" with and exercise control over BLMIS. See Morgan Kennedy, 533 F.2d at 1318. ERISA entitled the ERISA Plan Claimants to pursue BLMIS for breach of fiduciary duties and for engaging in certain transactions prohibited by ERISA. See 29 U.S.C. §§ 1132, 1104, 1106; Prudential Ins. & Annuity Co. v. State Street Bank & Trust Co., 772 F. Supp. 2d 519, 540 (S.D.N.Y. 2011) (holding that breach of fiduciary duty claim against an ERISA fiduciary belongs to the Plan and its beneficiaries). In any event, it certainly cannot be said that there was a "total incapacity" to exercise control given the language of the offering memoranda, BLMIS's review of the offering memoranda, BLMIS's posting of a fidelity bond, and BLMIS's fiduciary status and obligations.

Second, the accounts were the ERISA Plan Claimants' accounts, even though the name of the PAVs, not the ERISA Plan Claimants', titled the account. The BLMIS accounts were established by the PAVs in their capacities as fiduciaries of the ERISA Plan Claimants and the accounts were funded with cash owned by the ERISA Plan Claimants. Further, under ERISA and related regulations, ERISA plan assets continue to be held in trust even where "securities of a plan are held in the name of a nominee or in street name, provided such securities are held on behalf of the plan by . . . [a] broker or dealer registered under the Securities Exchange Act of 1934, or a nominee of such broker or dealer . . . ." 29 C.F.R. § 2550.403a-1(a)-(b). Thus, whether BLMIS used the ERISA Plan Claimants' cash to acquire or hold securities "in the name of a nominee or a street name," e.g., "Beacon Associates LLC," he still held those assets in trust on behalf of the ERISA Plan Claimants. Id. In that vein, the Agreement of Trust for Income-Plus clearly provides that  BLIMS was authorized to: (1) "register or cause to be registered any

19

securities held by it in its own name or <u>in the name of a nominee with or without the addition of</u>

<u>words indicated that such securities are held in a fiduciary capacity</u>, to permit securities or other

property to be held by or in the name of others," and (2) "to hold securities or other property in

custodial accounts outside the jurisdiction of the district courts of the United States in

compliance with regulations adopted by the United States of Labor under Section 404(b) of

ERISA." <u>See</u> Clark Aff., Ex. D, Agmt. of Trust §§ 3.02, 3.08.  Finally, the ERISA Plan

Claimants were aware that they were depositing and entrusting their plan assets with BLMIS

through the PAVs.  <u>See id</u>. Exs. V, W.

　　　　Ultimately, contrary to the Trustee's position, an account titled in the name of the

customer is not a condition precedent to customer status under SIPA.  The title of an account on

the debtor's books and records is only one consideration in assessing customer status under

SIPA; it is not dispositive.  <u>See</u> <u>In re Stalvey & Assocs., Inc.</u>, 750 F.2d 464, 470 (5th Cir. 1985)

(reversing bankruptcy court's finding that claimant was "customer" under Section 78lll(2)

merely because his name was on the account; stating that the designation of the account

constituted "a tenuous ground" for determining customer status); <u>SEC v. Ambassador Church</u>,

679 F.2d 608, 614 (6th Cir. 1982) (dismissing as irrelevant the fact that claimant "did not

maintain a customer account in [its] name."); <u>In the Matter of Investors Sec. Corp.</u>, 8 B.R. 420,

426 (W.D. Pa. Bankr. 1980) ("Customer status under SIPA is not dependent upon official

documentation in the Debtor's books."); <u>SIPC</u>, 454 B.R at 287 (declining to hold "that an

investor must have a <u>specifically titled</u> account in the investor's name that <u>appears on the</u>

<u>debtor's available books and records</u> as an express requirement for obtaining customer status,"

and noting that "[t]here may be, for example, special circumstance accounts that provide for the

equivalent of a specifically titled account." (emphases in original)).  As SIPA provides, the

customer's net equity can be determined from the debtor's books and records <u>or</u> otherwise to the satisfaction of the bankruptcy trustee, implying that a specifically titled account in the investor's name is not an express requirement of customer status.  <u>See</u> 15 U.S.C. §§ 78fff-2(b).

The ERISA Plan Claimants are customers of BLMIS.  They have met the "foundational element" of the customer status: they deposited and entrusted their own cash to BLMIS, who held that cash in trust for the purpose of purchasing securities.  They also satisfy a number of the traditional indicia of customer status.  Accordingly, the ERISA Plan Claimants are customers entitled to the protection of SIPA.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Trustee's motion for an order affirming his determination denying claims over ERISA-related objections, and direct that the Trustee promptly approve the customer claims of the ERISA Plan Claimants.

Dated: January 17, 2012

Respectfully submitted,

BLITMAN & KING LLP

 s/ Jennifer A. Clark
Jennifer A. Clark (JC5102)
Jonathan M. Cerrito (*pro hac vice*)
Brian J. LaClair (BL3158)
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204-5412
Telephone: (315) 422-7111
Facsimile: (315) 471-2623
Email: jaclark@bklawyers.com
           jmcerrito@bklawyers.com
           bjlaclair@bklawyers.com

*Attorneys for Bricklayers and Allied Craftsmen Local 2 Annuity Fund; Bricklayers and Allied Craftworkers Local 2, Albany, New York, Health Benefit Fund; Bricklayers and Allied Craftworkers Local 2, Albany, New York, Pension Fund; Building Trade Employers Insurance Fund; Central New York Laborers' Annuity Fund; Central New York Laborers' Health and Welfare Fund; Central New York Laborers' Pension Fund; Central New York Laborers' Training Fund; Engineers Joint Welfare Fund; Engineers Joint Training Fund; International Brotherhood of Electrical Workers Local Union No. 43 and Electrical Contractors Pension Fund; International Brotherhood of Electrical Workers Local No. 43 and Electrical Contractors Welfare Fund; I.B.E.W. Local 139 Pension Fund; I.B.E.W. Local 241 Pension Fund; I.B.E.W. Local 241 Welfare Benefits Fund; I.B.E.W. Local 325 Annuity Fund; I.B.E.W. Local 325 Pension Fund; I.B.E.W. Local 910 Annuity Fund; I.B.E.W. Local 910 Pension Fund; I.B.E.W. Local 910 Welfare Fund; I.B.E.W. Local 1249 Pension Fund; Laborers' Local 103 Annuity Fund; Laborers' Local 103 Welfare Fund; Laborers' Local 103 Pension Fund; New York State Lineman's Safety Training Fund; Oswego Laborers' Local No. 214 Pension Fund; Plumbers, Pipefitters and Apprentices Local No. 112 Health Fund; Roofers' Local 195 Annuity Fund; Roofers' Local 195 Health & Accident Fund; Roofers' Local 195 Pension Fund; Syracuse Builders Exchange, Inc./CEA Pension Plan; SEIU 1199Upstate Pension Fund; Service Employees Benefit Fund; Service Employees Pension Fund of Upstate New York; Local 73 Retirement Fund; Local 73 Annuity Fund; and Upstate Union Health & Welfare Fund*