NAME OF OFFEREE _____   NO. _____

_____

_____


CONFIDENTIAL PRIVATE OFFERING MEMORANDUM


# INCOME-PLUS INVESTMENT FUND

(A Tax-Exempt Investment Fund Established
pursuant to The Master Income-Plus Group Trust)

_____

December 15, 1993

_____

**INVESTMENT MANAGER:**
**J.P. JEANNERET ASSOCIATES, INC.**

**TRUSTEE:**
**CUSTODIAL TRUST COMPANY**

_____

_____


THIS OFFERING IS NOT A PUBLIC OFFERING. THE SECURITIES OFFERED HEREBY HAVE NOT BEEN REGISTERED OR QUALIFIED WITH, NOR APPROVED BY, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAS SUCH COMMISSION OR ANY REGULATORY AUTHORITY PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT LAWFUL, OR IN WHICH THE PERSON MAKING SUCH OFFER OR SOLICITATION IS NOT QUALIFIED TO DO SO.

are taxed as ordinary income, the classification of such excess distributions for unrelated business taxable income purposes is uncertain. While the Internal Revenue Service has indicated in a recent private letter ruling that income from a PFIC that is the subject of a qualifying election would not be classified as unrelated business taxable income, such a ruling is applicable only to the taxpayer to whom it was issued, and the Group Trust in any event may not be able to make a qualifying election with respect to a particular PFIC. Furthermore, even if a Group Trust were to make a qualifying election in respect of a PFIC in which the Group Trust had invested, it is uncertain whether the amount includible in the Group Trust's gross income by reason of such election would constitute income from "debt-financed property" if and to the extent that the PFIC incurred indebtedness for the purpose of acquiring the investment giving rise to such income.

From time to time legislation has been introduced in Congress that would have the effect of treating any income attributable to certain PFICs as unrelated business taxable income. While such legislation has not been adopted, there can be no assurances that such measures will not be enacted in the future.

## ERISA CONSIDERATIONS

The Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the regulations promulgated thereunder by the United States Department of Labor (the "DOL") provide as a general rule that a fiduciary with respect to employee benefit plans ("Plans") subject to ERISA must discharge its responsibilities with respect to a Plan in a prudent manner and must consider several factors in determining whether to enter into an investment or engage in an investment course of action. If a fiduciary with respect to any such Plan breaches its responsibilities with regard to selecting an investment or an investment course of action for such Plan, the fiduciary may be held personally liable for losses incurred by the Plan as a result of such breach. Among the factors that should be considered are the diversification and liquidity of the Plan's portfolio, the potential return on the proposed investment and the place the proposed investment would occupy in the Plan's portfolio taken as a whole.

ERISA imposes certain duties and responsibilities on persons (including investment managers) who are deemed to be fiduciaries (within the meaning of Section 3(21) of ERISA) and prohibits them from entering into transactions involving plan assets with various parties in interest (within the meaning of Section 3(14) of ERISA) with respect to the Plan. Generally, under ERISA, the Plan trustees, named fiduciaries or duly appointed investment managers (within the meaning of Section 3(38) of ERISA) have exclusive authority and discretion to manage and control assets of the Plan. If any such "prohibited transaction" is entered into, certain excise taxes may be payable by the party in interest, and the Plan

fiduciaries may be liable to the Plan for any losses incurred.

The assets of the Group Trust will constitute "plan assets" under regulations promulgated by the DOL. The Investment Manager will therefore be deemed a fiduciary with respect to each investing Plan and the general prudence and fiduciary responsibility provisions of ERISA will be applicable to it and to the operations of the Group Trust. The Investment Manager does not expect that the applicability of these ERISA provisions to the Group Trust will interfere with the operations or the results of the Group Trust in any material way.

Certain prospective Participating Entities may currently maintain relationships with the Investment Manager under which the Investment Manager provides investment advisory and/or management services to the Plan. These relationships may cause the Investment Manager or such affiliates to be deemed to be fiduciaries of those Plans. The DOL has issued regulations defining the term "fiduciary" which provide that an investment advisor who renders investment advice to a Plan for a fee and who either has discretionary control over plan assets or renders advice pursuant to an understanding that such advice will serve as a primary basis for the Plan's investment decisions will be deemed a fiduciary but only with respect to that portion of the Plan's assets with respect to which the investment advisor renders such advice or has such discretion. The prior written authorization of an independent fiduciary of any Plan for which the Investment Manager or one of its affiliates acts as investment advisor or has a preexisting fiduciary relationship shall be obtained before assets of such Plan will be invested in the Group Trust. Further, if the Investment Manager acts as investment advisor to a Plan, it will eliminate its advisory fee charged to the Plan with respect to the amount of such Plan's investment in the Group Trust.

## ELIGIBILITY REQUIREMENTS

The acquisition of Units in the Investment Fund involves a degree of risk. See "RISK FACTORS" P. 11 to P. 14. Further, transfer of the Units is not permitted. Consequently, the Investment Manager has adopted as a general investor suitability standard that each prospective Participating Entity represent in writing that it is an Accredited Investor (as defined below) or a Sophisticated Investor (as defined below). The suitability standards referred to above and itemized below represent minimum suitability requirements for prospective Participating Entities and the satisfaction of such standards by a prospective Participating Entity does not necessarily mean that Units are a suitable investment for such Participating Entity.

This offering is made for purchase of Units only by (i) "Accredited Investors" as defined by Regulation D of the Act, and (ii) up to 35 "Sophisticated Investors", pursuant to an exemption

-22-