Helen Davis Chaitman  
Becker & Poliakoff LLP  
45 Broadway  
New York, NY 10006  
hchaitman@becker-poliakoff.com  
*Attorneys for J.X. Reynolds & Co.*  
*Deferred Profit Sharing Plan*

Hearing Date: May 23, 2011 at 10:00 A.M.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                           Plaintiff,<br><br>                v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                           Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                           Debtor. | |

**OPPOSITION OF J.X. REYNOLDS & CO. DEFERRED PROFIT SHARING PLAN TO TRUSTEE'S MOTION FOR APPROVAL OF THE TRUSTEE'S REJECTION OF ITS CUSTOMER CLAIM**

{N0007672}

## **PRELIMINARY STATEMENT**

J.X. Reynolds & Co., Deferred Profit Sharing Plan (the "Plan") is a qualified plan established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. The Plan is a "customer" under the Securities Investor Protection Act ("SIPA") and, as such, Irving H. Picard, the Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), must recognize its customer status. The Trustee improperly denied the Plan's claim because it did not have an account in its own name.

First, the Trustee argues that "indirect" investors who did not have a financial relationship with BLMIS and were not known to BLMIS as investors do not qualify as "customers" under SIPA. The Plan however does not fall into that category. While, the account at BLMIS was held in the name of its agent, the Plan, in fact, did have a financial relationship with BLMIS and the Plan was known to BLMIS. In fact, every deposit the Plan made was with a check from the Plan's account made payable directly to BLMIS and, on occasion, the Plan communicated in writing with BLMIS. See the Declaration of James Reynolds, dated January 13, 2012 (the "Reynolds Decl."), Ex. E and G. Hence, the Plan does not constitute an "indirect" investor, and its customer claim must be recognized.

Second, the Plan qualifies as a "customer" under the plain meaning of SIPA which does not require that a customer have an account in its own name. The critical inquiry is whether a customer deposits money with a broker for the purpose of purchasing securities. Here, it is indisputable that the Plan deposited funds with BLMIS – in some instances by directly delivering checks to BLMIS and, in every instance, by delivering checks payable from the Plan's account to BLMIS. It is also indisputable that BLMIS received the Plan's funds.

Lastly, the inter-relationship of SIPA and ERISA compels recognition of customer status

for claimants like the Plan. The Trustee's narrow interpretation of "customer" defeats the critical purposes of ERISA – the protection of an average working citizen and encouragement of savings for retirement. Second, pursuant to ERISA, BLMIS was a "functional" fiduciary to the Plan. Hence, the Trustee's position that no relationship existed between the Plan and BLMIS is inconsistent with the fiduciary obligations imposed upon BLMIS under ERISA.

Therefore, the Trustee must be compelled to recognize the customer claim of the Plan.

## FACTUAL BACKGROUND

The Plan respectfully refers the Court to the Reynolds Decl. submitted in opposition to the Trustee's Motion.

## ARGUMENT

### I. THE TRUSTEE HAS CONCEDED THAT CUSTOMERS LIKE THE PLAN ARE ENTITLED TO CUSTOMER STATUS

Counsel for the Trustee has conceded on the record that some investors, like the Plan, which did not have accounts in their own names, nevertheless are "customers" under SIPA:

> if customers had a relationship with BLMIS they could call up Bernie Madoff or they could do things with others who are within that organization. That may take them out of the role of just being an indirect investor and not being known to us but [sic] someone who does become known.

09/09/2009 Hrg. Tr. 17:7-11. The Trustee then went on to state that if a claimant discloses phone calls or emails, those facts would support customer status. *Id.* 17:22-25.

In his motion, the Trustee writes that investors who had "no securities accounts at the debtor, entrusted no cash or securities to the debtor, lacked any financial relationship with the debtor, received no account statements or other communications from the debtor, and had no transactions reflected on the books and records of the debtor" are not customers under SIPA. (Motion ¶ 8.) Under the Trustee's own criteria, the Plan is a customer for the following reasons:

{N0007672}                                    3

The Plan had a direct financial relationship with BLMIS. Although the Plan deposited its funds with BLMIS through an account held in the name of Petito Investment Group ("Petito") (the "Account"), Petito was an agent of the Plan and the Account was opened for the benefit of the Plan and other investors. (Reynolds Decl. ¶¶ 2-3.) The Plan and other investors were the beneficial owners of the funds in the Account. (*Id.* ¶ 3.) This was demonstrably known to BLMIS because the Plan deposited its funds into the Account **from its own checking account by checks payable to BLMIS**. (*Id.* ¶ 5.) At times, those checks were **delivered directly to BLMIS**. (*Id.*) Clearly, and as known to BLMIS, the assets entrusted to BLMIS were not owned by Petito but were owned by the Plan. Reynolds had at least one direct communication with an employee of BLMIS. (*Id.* ¶ 7.) In fact, the correspondence exchanged included a check that originated from the Plan's checking account for deposit at BLMIS. (*Id.* ¶ 7, Ex. G.) These unique facts compel the conclusion that the Plan is a "customer" under SIPA.

## II.   THE PLAN IS A CUSTOMER UNDER THE PLAIN LANGUAGE OF SIPA

The words of a statute are dispositive unless they are ambiguous. *See Kmart Corp. v. Cartier, Inc.,* 486 U.S. 281, 281 (1988) ("[i]f the statute is clear and unambiguous, courts must give effect to Congress' unambiguously expressed intent"); *Tyler v. Douglas,* 280 F.3d 116, 122 (2d Cir. 2001) ("[t]his court will look first to the plain language of a statute and interpret it by its ordinary, common meaning. If the statutory terms are unambiguous, our review generally ends and the statute is construed according to the plain meaning of its words") (citations omitted); *accord Greenery Rehab Group, Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998) (""If the statutory terms are unambiguous, our review generally ends and the statute is construed according to the plain meaning of its words.")

The Trustee is bound by the statutory definition of "customer" in SIPA:

{N0007672}                                                4

> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral, security, or for purposes of effecting transfer. **The term "customer" includes any person who has deposited cash with the debtor for the purpose of purchasing securities . . . [and] any person who has a claim against the debtor arising out of sales or conversions of such securities**.

15 U.S.C. § 78lll(2); emphasis added.

The Trustee relies on the fact that the Plan did not have an account in its own name with BLMIS. However, there is no requirement in SIPA that a customer have its funds held in an account in its name. In fact, in the first draft of the bill, there was no entitlement to SIPC insurance for any customer whose name or interest was not disclosed on the records of the broker/dealer "if such recognition would increase the aggregate amount of the insured customer accounts or insured liability in such closed broker or dealer." S. 2348, 91st Cong. Section 7(d)(June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug.4, 1969). The final bill dropped this restriction. Thus, clearly, Congress intended that customers would include investors through joint accounts.

Here, it is indisputable that the Plan made checks payable to BLMIS and in some instances delivered the checks directly to BLMIS (Reynolds Decl. ¶ 5.) Yet, courts have recognized investors as "customers" under SIPA even in cases where the funds were not *directly* delivered to the broker dealer. *See Ahammed v. SIPC (In re Primeline Sec. Corp.*, 295 F.3d 1100, 1107 (10th Cir. 2002) (upholding determination that investors were "customers" of the debtor under SIPA **even though investors made out their checks to a different entity**) (emphasis added); *see also Focht v. Heebner (In re Old Naples Securities, Inc.)*, 223 F.3d 1296,

1302 (11th Cir. 2000) ("Whether a claimant 'deposited cash with the debtor,' however, does not . . . depend simply on to whom the claimant handed her cash or made her check payable, or even where the funds were initially deposited.")

The critical fact is that there was "'actual receipt, acquisition or possession of the property'" of the Plan by BLMIS, *i.e.,* that the Plan entrusted cash to BLMIS for effectuation of a securities transaction.  *SIPC v. Wise (In re Stalvey & Assoc.)*, 750 F.2d 464, 469 (5th Cir. 1985) (quoting *SEC v. Kenneth Bove & Co.*, 378 F. Supp. 697, 700 (S.D.N.Y. 1974)); *see also SIPC v. Pepperdine University (In re Brentwood Securities, Inc.)*, 925 F.2d 325 (9th Cir. 1991) ("An investor is entitled to compensation from the SIPC only if he has entrusted cash or securities to a broker-dealer who becomes insolvent; if an investor has not so entrusted cash or securities, he is not a customer and therefore not entitled to recover from the SIPC trust fund.") .

Judge Cote's decision in *Aozora Bank Ltd. v. Securities Investor Protection Corporation, et. al.*, Case No. 11-CV-6553 (DLC), denying customer status to BLMIS claimants who invested through feeder funders does not govern this litigation (the "Feeder Fund Decision").  Judge Cote determined that "BLMIS did not receive, acquire, or possess any property of the appellants because the property at issue belonged solely to the Feeder Funds."  Feeder Fund Decision at 16.  Judge Cote concluded that "the moment each appellant used assets to purchase an ownership interest in a Feeder Fund, those assets became property not of the appellants but of the Feeder Fund."  *Id.* at 16-17.  Here, the Plan did not buy any interest in Petito.  On the contrary, the Plan wrote checks on its account made payable directly to BLMIS.  Therefore, the Plan is a "customer" entitled to an advance from SIPC and a claim against the fund of customer property.

**III.    THE TRUSTEE'S REFUSAL TO RECOGNIZE THE PLAN AS A CUSTOMER
         DEFEATS SIPA'S REMEDIAL PURPOSE**

The Trustee's position violates not only the clear mandate of the statute but also its intent. SIPA was enacted by Congress in 1970 to afford protection to securities "customers in the event broker-dealers with whom they transact business encounter financial difficulties and are unable to satisfy their obligations." *S.E.C. v. Alan F. Hughes, Inc.*, 461 F.2d 974, 977 (1972); *SIPC v. Barbour*, 421 U.S. 412, 415 (1975) ("Congress enacted the SIPA . . . to restore investor confidence in the capital markets[,] and upgrade the financial responsibility requirements for the registered brokers and dealers.).

As indicated in the House Report, the legislation was intended to accomplish two goals:

> it will establish immediately a substantial reserve fund which will provide protection to customers of broker-dealers similar to that formerly provided by the exchange trust funds. This will reinforce the confidence that investors have in the U.S. securities markets. In addition, the reported bill would provide for a strengthening of the financial responsibilities of broker-dealers.

H. Rep. No. 91-1613, 91st Cong., 2d Sess. (1970), 3.

On December 30, 1970, when President Nixon signed SIPA into law, he made the following statement:

> I am signing today the Securities Investor Protection Act of 1970. This legislation establishes the Securities Investor Protection Corporation (SIPC), a private nonprofit corporation, which will insure the securities and cash left with brokerage firms by investors against loss from financial difficulties or failure of such firms. . . . **Just as the Federal Deposit Insurance Corporation protects the user of banking services from the danger of bank failure, so will the Securities Investor Protection Corporation protect the user of investment services.**

http://www.presidency.ucsb.edu/ws/index.php?pid=2870 (emphasis added).

The Trustee's failure to recognize the Plan as a "customer" under SIPA is inconsistent with the requirement that SIPA, as a remedial statute, must be interpreted broadly. *In re First State Securities Corp.*, 34 B.R. 492, 496 (Bankr. S. D. Fla. 1983) ("SIPA is remedial legislation.

{N0007672}                                                7

As such it should be construed liberally to effect its purpose. . . . The purpose is the protection of the insolvent brokers' customers.") (citations omitted.); *accord In re Bell & Beckwith*, 66 B.R. 703, 705 (N.D. Ohio 1986) (same). If the Trustee's interpretation is upheld, he will deprive the Plan of the protections that were intended to be afforded by SIPA, including the advance of the SIPC funds.

## IV.   THE TRUSTEE'S DENIAL OF THE PLAN'S CLAIM IS INCONSISTENT WITH ERISA

Congress enacted ERISA to protect retirement assets of working people. *See Resolution Trust Corp. v. Financial Institutions Retirement Fund*, 71 F.3d 1553 (10th Cir. 1995) ("A cardinal principle of ERISA is that the assets of a pension plan shall be held for the exclusive purpose of providing benefits to participants and their beneficiaries."); *accord* 29 U.S.C. § 101(a) ("The Congress finds . . . that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest). Trustee's narrow interpretation "customer" under SIPA defeats ERISA's legislative purpose.

BLMIS' role as a fiduciary to the Plan pursuant to ERISA undercuts the Trustee's argument that no relationship existed between the Plan and BLMIS. "ERISA identifies two types of fiduciaries: named fiduciaries and functional fiduciaries." *Solis v. Plan Ben. Services, Inc.*, 620 F. Supp. 2d 131, 142 (D. Mass. 2009) (citing *Beddall v. State St. Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998)). A person is a functional fiduciary with respect to a plan to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such

{N0007672}                                    8

    plan, or has any authority or responsibility to do so, or (iii) he has
    any discretionary authority or discretionary responsibility in the
    administration of such plan.

29 U.S.C. § 1002(21)(A). "The key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets (such as by rendering investment advice)." *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) (citing *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 96 (1st Cir. 1982)); *see also Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20, 22 (1st Cir. 1996) (recognizing that execution of administrative tasks is generally insufficient to hold someone as functional fiduciary).

  Here, BLMIS did not simply have influence over the investment decisions for the Plan; it had the ultimate decision-making authority. BLMIS exercised authority and control over the management and disposition of the Plan's assets. Therefore, as a result of BLMIS' authority and control over the Plan's assets, BLMIS owed fiduciary duties to the Plan, like any other ERISA plan administrator or trustee. Thus, the Trustee's argument that no relationship existed between BLMIS and the Plan is unavailing.

## CONCLUSION

  For the reasons stated herein, the Plan respectfully requests that this Court order the Trustee to recognize the customer claim of the Plan.

January 17, 2012

              **BECKER & POLIAKOFF LLP**

              By: /s/ Helen Davis Chaitman
               45 Broadway
               New York, NY 10006
               (212) 599-3322
               *Attorneys for Attorneys for J.X. Reynolds &*
               *Co. Deferred Profit Sharing Plan*