**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman
HCHAITMAN@BECKER-POLIAKOFF.COM
45 Broadway
New York, New York 10006
Telephone (212) 599-3322

*Attorneys for J.X. Reynolds & Co.,*
*Deferred Profit Sharing Plan*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>                    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br>                    Debtor. | |

### DECLARATION IN OPPOSITION TO TRUSTEE'S MOTION TO AFFIRM DENIAL OF CLAIMS

JAMES REYNOLDS, declares the following:

1. I am the President of J.X. Reynolds & Co. ("Reynolds"), and the trustee for the J.X. Reynolds & Co. Deferred Profit Sharing Plan, an ERISA-qualified pension plan which was established for Reynolds' employees (the "Plan"). An excerpt from the Summary Plan Description identifying me as the trustee is annexed hereto as **Exhibit A**.

2. On March 26, 1998, the Petito Investment Group ("Petito"), as agent for the Plan and others, opened account number 1-ZA003-3-0 with Bernard L. Madoff Investment Securities

{N0007482 3}

LLC ("BLMIS") in Petito's name for the benefit of the Plan and other investors, at least one of which, upon information and belief, was also a qualified pension plan (the "Account").

3. The Plan and the other entities for whose benefit Petito opened the Account, were the beneficial owners of the Account. Petito provided certain services to the Plan, such as bookkeeping and preparing quarterly status reports and Schedule K-1's. Copies of the Activity Status Report for the Plan prepared by Petito for 2007 and 2008 are annexed hereto as **Exhibit B and C, respectfully.**

4. Petito maintained records detailing the allocable share of the Account owned by each beneficial owner. Each year, the Plan's share of the overall Account's profits was allocated in proportion to its deposits, withdrawals, and previous profits. Each year, the Plan received a Schedule K-1 reflecting its share of the profits. A Copy of the Plan's Schedule K-1 for 2008 prepared by Petito is annexed hereto as **Exhibit D**.

5. The Plan had a direct financial relationship with BLMIS. Between 1998 and 2002, the Plan gave BLMIS checks totaling $1,652,772.00 for investment through the Account (the "Funds"). The Plan deposited the Funds into the Account from its own checking account by checks drawn on the Fund's own account and made **payable to BLMIS and in some instances delivered directly to BLMIS**. Copies of the checks deposited with BLMIS are annexed hereto as **Exhibit E**.

6. In 2004, the Plan made its only withdrawal from the Account in the amount of $300,000. A true and accurate copy of the History of the Plan's deposits and withdrawals is annexed hereto as **Exhibit F**.

7. Even though the Account was in Petito's name, BLMIS was fully aware that Petito was investing the Funds for the Plan's benefit. Over the course of the investment, I

{N0007482 3}                                    2

personally communicated directly with BLMIS employee Frank DiPascali on at least one occasion. A copy of said correspondence is annexed hereto as **Exhibit G**.

8. Therefore, the bases for the Trustee's denial of indirect investor claims – that the claimants were not known to BLMIS and that they had no relationship with BLMIS – are not applicable to the Plan's claim. BLMIS accepted checks drawn on the Plan's checking account for deposit into the Account; I communicated directly with BLMIS concerning the Plan's investments.

9. The Plan's final account balance with BLMIS, as of November 30, 2008, was $ 3,570,002.33. *See* 11/30/2008 Activity Status Report, Ex. C. However, the Plan's "net investment" was $1,652,772. Thus, based upon the Second Circuit's decision on "net equity," I believe the Plan is entitled to SIPC insurance in the amount of $500,000.

10. The Plan timely submitted a customer claim to the Trustee.

11. By Notice of Trustee's Determination of Claim dated November 19, 2010, the Trustee denied the Plan's customer claim (Claim No. 012783) on the ground that the review of BLMIS' books and records revealed that the Plan did not have an account in its name.

12. On or about December 13, 2010 the Plan submitted an objection to the Trustee's determination of claim.

I declare under penalty of perjury that the foregoing is true and correct.

January 13, 2012.

_____
James Reynolds, as Trustee for the J.X. Reynolds & Co. Deferred Profit Sharing Plan