# EXHIBIT G

**BECKER & POLIAKOFF LLP**
Peter W. Smith, Esq.
Valerie Sirota, Esq.
11 Wharf Avenue, Suite 4
Red Bank, New Jersey 07701
(212) 599-3322

*Attorneys for Defendant The Moore*
*Estate Condominium Association, Inc.*

| | |
|---|---|
| SUSAN LEE,<br><br>Plaintiff,<br><br>vs.<br><br>MARY KAY MANN and THE MOORE<br>ESTATE CONDOMINIUM<br>ASSOCIATION, INC.,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION: MORRIS COUNTY<br><br>DOCKET NO.: C-9-10<br><br>Civil Action |

**TO:**   David B. Brady, Esq.
Brady & Correale, LLP
50 South Street
Morristown, NJ 07960
*Attorneys for Plaintiff*

Joseph Mezzacca, Jr., Esq.
Law Office of Joseph Mezzacca, Jr., Esq.
230 Main Street
Madison, NJ 07940
*Attorney for Defendant*
*Mary Kay Mann*

**PLEASE TAKE NOTICE** that pursuant to *Rule* 4:14-2, counsel the counsel for

the defendant The Moore Estate Condominium Association, Inc. will take the

videotaped deposition of Donald P. Schlachter. The videotaped deposition shall be

taken before a Court Reporter or some other officer authorized by law to take

depositions on <u>December 15, 2011, at 10:00 AM</u>, and from day to day until completed,

at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East, Suite 660,

Morristown, New Jersey 07960. Counsel is invited to attend and take such part in the examination as may be proper.

**PLEASE TAKE FURTHER NOTICE** that the attached subpoena directs the deponent to produce copies of all documents described therein on <u>December 9, 2011,</u> <u>at 10:00 AM</u>, at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East, Suite 660, Morristown, New Jersey 07960.

**PLEASE TAKE FURTHER NOTICE**, the deposition will be videotaped pursuant to *Rule* 4:14-9.

**BECKER & POLIAKOFF LLP**
*Attorneys for Defendant The Moore*
*Estate Condominium Association, Inc.*

Date: November 23, 2011          By: _Valerie Sirota /cb_
                                     Valerie Sirota

**BECKER & POLIAKOFF LLP**
Peter W. Smith, Esq.
Valerie Sirota, Esq.
11 Wharf Avenue, Suite 4
Red Bank, New Jersey 07701
(212) 599-3322

*Attorneys for Defendant The Moore*
*Estate Condominium Association, Inc.*

|  |  |
|---|---|
| SUSAN LEE,<br><br>Plaintiff,<br><br>vs.<br><br>MARY KAY MANN and THE MOORE ESTATE CONDOMINIUM ASSOCIATION, INC.,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION: MORRIS COUNTY<br><br>DOCKET NO.: C-9-10<br><br>Civil Action<br><br>**SUBPOENA FOR PRODUCTION OF DOCUMENTS and DEPOSITION TESTIMONY** |

**FROM THE STATE OF NEW JERSEY**

TO:    Donald P. Schlachter
       Professional Engineer
       37 Fieldstone Drive
       Somerville, NJ 08876

**YOU ARE HEREBY COMMANDED** to produce copies of all documents described in Schedule "A" attached to this subpoena on December 9, 2011, at 10:00 AM, at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East, Suite 660, Morristown, New Jersey 07960.

**YOU ARE FURTHER HEREBY COMMANDED** to attend and give testimony under oath before a Court Reporter or some other officer authorized by law to take depositions on December 15, 2011, at 10:00 AM, and from day to day until completed, at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East,

Suite 660, Morristown, New Jersey 07960. Counsel is invited to attend and take such part in the examination as may be proper.

Pursuant to *Rule* 4:14-7(c) the materials you are hereby commanded to produce shall not be produced or released until the date specified herein. If you are notified that a motion to quash the subpoena has been filed, you shall not produce or release the within subpoena materials until ordered by the Court or you are notified that the release is consented to by all parties.

Failure to adhere according to the command of this subpoena may subject you to a penalty, damages in a civil suit and punishment for contempt of court.

**PLEASE TAKE NOTICE**, the deposition will be videotaped pursuant to *Rule* 4:14-9 of the Rules of Civil Practice and Procedure.

Date:  November 23, 2011          **/s/ Jennifer Perez**
                                  Clerk of the Court


                                  **BECKER & POLIAKOFF LLP**
                                  *Attorneys for Defendant The Moore*
                                  *Estate Condominium Association, Inc.*

                          By:     Valerie Sirota (cs)
                                  _____
                                  Valerie Sirota

## SCHEDULE "A"

## DEFINITIONS AND INSTRUCTIONS

1.     <u>You/Your</u>. The terms "You" and "Your" shall refer to Donald P. Schlachter.

2.     <u>Document</u>. The term "document" means writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations which are stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. The term document also refers to a collection of pages representing an electronic file. Emails, email attachments, databases, word processor documents, spreadsheets, and graphics files are all examples of electronic documents. Electronic documents shall be produced in their native format.

3.     <u>Action</u>. The term "Action" shall refer to the above captioned civil action bearing docket number C-9-10.

4.     <u>Susan Lee</u>. The term "Lee" shall refer to Plaintiff Susan Lee.

5.     <u>Mary Kay Mann</u>. The term "Mann" shall refer to Defendant Mary Kay Mann.

6.     <u>Lee's Unit</u>. The term "Lee's Unit" shall refer to the unit owned by Lee, which is located at 61 Pippins Way, Morris Township, New Jersey.

7.     <u>Mann's Unit</u>. The term "Mann's Unit" shall refer to the unit owned by Mann, which is located at 60 Pippins Way, Morris Township, New Jersey.

8.     <u>The Units</u>. The term "The Units" shall collectively refer to Lee's Unit and Mann's Unit.

9.    <u>Association</u>.  The term "Association" shall refer to Defendant The Moore Estate Condominium Association.

10.    <u>January 14, 2010 Report</u>.  The term "January 14, 2010 Report" shall refer to the January 14, 2010 report sent by you to Lee's attorney David B. Brady, Esq., a copy of which is attached hereto as **Exhibit A**.

11.    <u>June 6, 2010 Report</u>.  The term "June 6, 2010 Report" shall refer to the June 6, 2010 report sent by you to Lee's attorney David B. Brady, Esq., a copy of which is attached hereto as **Exhibit B**.

12.    <u>June 30, 2010 Report</u>.  The term "June 30, 2010 Report" shall refer to the June 30, 2010 report sent by you to Lee's attorney David B. Brady, Esq., a copy of which is attached hereto as **Exhibit C**.

13.    <u>Communication</u>. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

14.    <u>Person</u>. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

15.    <u>Concerning</u>. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

16.    <u>All/Each</u>. The terms "all" and "each" shall be construed as all and each.

17.    <u>And/Or</u>. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

18.    If you withhold any document, provide the legal ground for withholding the document and provide the following information for each document withheld:  (a) the type document; (ii) the general subject matter of the document; (iii) the date of the

document; and (iv) such other information as is sufficient so as to identify the document for a subpoena *duces tecum*.

19.     If any document is withheld under a claim of privilege or work product protection, furnish a list identifying each such document including the following information: (a) document date; (b) sender or author; (c) recipient; (d) subject matter of the document; and (e) the basis on which the document has been withheld.

20.     Where a responsive document has been destroyed, or is asserted to have been destroyed, state the approximate date of the destruction, the reason for its destruction, and the name of any person having knowledge of its destruction, and any person responsible for its destruction.

21.     If the information requested is stored in a computer or file or record generated by computer, produce a complete print-out of such information, and produce such information in its native electronic format.

22.     Each document is to be produced in its entirety, even if only a portion of the document relates to the identified subject matter. Where copies of otherwise identical documents bear additional notations, produce all non-identical copies in their entirety.

23.     These document requests are not intended to be duplicative. If a document is produced in response to one request, it need not be produced in response to another request.

## DOCUMENTS TO BE PRODUCED

1.      All documents identifying your area of expertise and qualifications in that area, including but not limited to, your curriculum vitae.

2.      All documents, agreements and communications (including the communications themselves), including drafts of same, concerning inspections at The Units.

3.      All documents, agreements and communications (including the communications themselves), including drafts of same, that you relied upon when reaching your opinion or conclusion.

4.      All documents concerning The Units.

5.      All documents and communications exchanged between and among you and Lee.

6.      All documents and communications exchanged between and among you and Mann.

7.      All documents and communications exchanged between and among you and the Association.

8.      All documents and communications exchanged between and among you and any person concerning this Action.

9.      All drafts relating to the January 14, 2010 Report.

10.     All drafts relating to the June 6, 2010 Report.

11.     All drafts relating to the June 30, 2010 Report.

12.     All documents and communications concerning the January 14, 2010 Report.

13. All documents and communications concerning the June 6, 2010 Report.

14. All documents and communications concerning the June 30, 2010 Report.

# EXHIBIT A

## DONALD P. SCHLACHTER
### PROFESSIONAL ENGINEER
37 FIELDSTONE DRIVE
SOMERVILLE, NJ 08876
908-231-1725          FAX 908-231-0451
e-mail: dpspe@optonline.net

14 JAN 10

David B. Brady, Esq.
Brady and Correale
50 South Street
Morristown NJ 07006

RECEIVED

JAN 19 2010

BRADY & CORREALE LLP

Re:   **Susan Lee**
      **61 Pippin's Way**
      **Morris Township, New Jersey**

Dear Mr. Brady:

At your request, I undertook a preliminary and noninvasive examination of the referenced premises in an effort to reach a preliminary determination of the source of what has been identified by your client as cigarette smoke entering her condominium unit from a neighboring downstairs unit. My procedure and findings are set forth below.

The Lee unit is a three-story condominium-type unit with a ground-floor exterior entry. The ground level consists of little space except the entrance, stairs, and a corridor connection to the garage. The second and third floors are the living levels for this unit. The unit is located above a unit below, has two exterior sides and two sides that abut other units.

I understand that Ms. Lee does not smoke and minimizes the use of any items that might contain odors or fragrances. Ms. Lee informed me that the cigareet smaell commenced shortly after a new neighbor who smokes moved into the downstairs unit. She stated that while the smell can at times be present throughout the unit, it is most pronounced in the kitchen, powder room, laundry/utility room, and master bedroom. On the day of the inspection, Ms. Lee told me that her neighbor had not been home for several days, so the odor was not as strong as usual.

Upon entry into the powder room, I immediately detected a noticeable odor, best described as stale cigarette smoke reminiscent of what might be encountered in a hotel room reserved for smokers. The powder room is entirely interior to the unit and, as a result, has no windows

I then entered the adjoining laundry/utility room, which is also entirely interior to the unit. In this room the odor was noticeably stronger. In examining this room, I found that there were a number of unsealed penetrations through the floor and walls of this room. The utility piping to the washer and dryer came through the walls via holes much larger than the piping and the voids around the pipes were open to the interior wall compartment. The dryer vent was found to be exiting through an unsealed opening much larger than the diameter of the pipe. At the time of the examination, there was evidence, in the form of moving lint deposits around the dryer vent pipe, of the constant inflow of air into

the laundry room. This room also contains an electrical panel and piping for a water softener.

In examining the master bathroom, I found a grill within the bedroom closet that, when removed, provides access to the plumbing beneath the Jacuzzi-type bathtub. Under the tub, there are a number of floor and wall penetrations for plumbing where the size of the openings are larger than the resident pipes with no sealant present to plug the voids.

Examination of the kitchen revealed that there is a void space between the back panel of the base cabinets and the finished gypsum wall. Typically the area behind the dishwasher would have no back panel and the finished gypsum wall would be directly behind the dishwasher unit.

From my review of the portions of the construction plans provided to you by the Township, it appears that the bathroom, living, and kitchen areas of the lower unit in this area of the building are directly below the living, kitchen, and bathroom areas of the Lee unit. Natural convection of air, resulting from temperature differences, will cause air to migrate into and out of units through various void spaces.

A noted condition, common to the rooms that I examined in the Lee unit, is that all have mechanical/plumbing/electrical components that would be run through walls from the lower unit to the upper unit. That fact combined with the lack of seals on any of the noted penetrations and the obvious air movement into the laundry/utility room around the dryer vent pipe evidences unwanted communication of air between floors via the spaces between the wall studs and the ceiling/floor joists.

Throughout the kitchen and living areas of the Lee unit, I observed recessed lighting fixtures, often referred to colloquially as "high hats". These fixtures penetrated the ceilings of the Lee unit and projected into the air space between the floor of the upper level and the ceiling of the lower level. In a stacked unit layout, it has been my experience that gypsum ceilings are installed in a configuration to provide a fire-rated separation between units, with minimum penetrations that are specially sealed.

While examining the Lee powder room, I removed the interior grill from the fan in the second level bathroom. It appears that the exhaust from the fan is piped into the space between two joists of the upper floor toward the interior living space. It has been my experience with this type of residential construction that the termination of these vents is often found within the floor/ceiling void and not outside of the unit where it should go. Accordingly, if the same construction technique was used in the lower unit, the discharge of the fan, as well as natural convection through this piping, would allow air from the lower unit to enter the floor space of the upper unit from where it could migrate into the upper unit.

Considering the Lee unit to be a "typical" unit as constructed in this building, it appears likely that there is unwanted communication of air between units through the framing of the common floor/ceiling areas and the common walls due to the lack of proper sealing of the utility penetrations, the improper venting of exhaust fans, other penetrations that permit air from the lower unit to travel into the Lee unit, and a possible failure to properly

David Brady, Esq.                         14 JAN 10                              Page 3
                                          Susan Lee

install or maintain materials to inhibit the spread of fire between units through the
spaces within the common framing.

Understanding that the offending smoke is originating in the unit directly beneath the
Lee unit, it is my opinion, within a reasonable degree of engineering certainty and based
upon the writer's education and experience and the limited scope of the inspection
performed to date, that smoke from the cigarettes being consumed in the lower unit is
travelling to the upper unit via improperly sealed openings in walls and ceilings that
represent poor construction practice and may constitute violations of code.

The foregoing represents my preliminary findings in this matter and is based on a
cursory, noninvasive inspection. In order to corroborate my findings, it will be necessary
to examine the lower unit for penetrations of the walls and ceilings and venting of
appliances, fans and living areas. Once that has been accomplished and my findings
confirmed, a plan for remediation of the units can be developed and implemented so as
to minimize or prevent the intrusion of air from the lower unit to the upper unit.

I trust this provides information that is helpful to you and your client. If you have any
questions for require anything further, please advise.

Yours truly,

Donald P. Schlachter
NJ Professional Engineer
License No. 23805

# EXHIBIT B

**DONALD P. SCHLACHTER**
**PROFESSIONAL ENGINEER**
**37 FIELDSTONE DRIVE**
**SOMERVILLE, NJ 08876**
908-231-1725            FAX 908-231-0451
e-mail: dpspe@optonline.net

06 JUN 10

· David B. Brady, Esq.
Brady and Correale
50 South Street
Morristown NJ 07006

Re:   **Susan Lee**
        **61 Pippin's Way**
        **Morris Township, New Jersey**

Dear Mr. Brady:

Pursuant to my previous report of 14 JAN 10, a "Tracer Gas Survey" was undertaken by Healthy Buildings International (HBI) and their report issued 05 JUN 10. I have reviewed that report and my comments are set forth below. This will serve as my first supplemental report in this matter.

The Lee unit is a three-story condominium-type unit with a ground-floor exterior entry. The ground level consists of little space except the entrance, stairs, and a corridor connection to the garage. The second and third floors are the living levels for this unit. The unit is located above a unit below (the Mann unit), has two exterior sides and two sides that abut other units.

The writer was present during the tracer gas survey performed at the referenced address, and witnessed the general findings that are now detailed in the report. It is clear from the HBI report, as concluded in my earlier report, that there is direct communication of air between the Mann unit on the lower level and the Lee unit on the upper level of the building directly above the Mann unit. The table on Page 3 of the report shows the highest infiltration rate of air to emanate from the Laundry Room in the Mann Unit. There is also a marked increase in the levels of tracer gas in the Lee unit when the bathroom exhaust fans in the Mann unit are operated.

On page 4 of the report, HBI identifies "probable pathways" of the air flowing between Mann and Lee that are consistent with my initial findings and corroborate that the tobacco smoke that Ms. Lee is experiencing is emanating from the Mann unit.

The writer undertook a review of the building code to determine what, if any, conditions therein may not have been met during the construction of the units. The actual date of the construction of the units in question is uncertain, but it appears that either the BOCA/1990 building code (effective in NJ on 01 JUL 90) or the BOCA/1993 building code (effective in NJ on 01 MAY 93) would have been the prevailing code at the time of construction.

Comparison of the two codes (for R-3 use type 5A construction) reveals that the requirements for fire separation of units, the type of floor/ceiling assemblies, the requirements for ventilation, the requirements for sound insulation, and other basic life safety and health requirements are essentially the same for both codes.

The requirement for the ceiling assembly was a one-hour rating in accordance with ASTM E119 that simply calls for either a single layer of 1/2-inch or 5/8-inch gypsum board type 'X' affixed to the joists with no insulation. The codes further required that penetrations of this ceiling, such as for the high-hat lighting fixtures found within the units, be sealed and/or firestopped in an acceptable manner. None of the fixtures was removed for examination, so it was not determined what, if any, firestopping treatment was given to those penetrations, or if the fixtures themselves were compliant. Since the HBI report identifies these fixtures as a "probable pathway" for the migration of air, further investigation of the type of fixture and firestopping that was provided is necessary.

Additionally, the penetrations within the framing, floor spaces, and ceiling spaces for the plumbing and electrical systems that travel between the units would require the same firestopping. It appears from both my initial examination and the HBI report that these penetrations are not sealed/firestopped and should be considered to be "probable pathways" for the migration of air into the Lee unit.

It is the writer's understanding that the mechanical code at the time of the construction required mechanical ventilation from bathrooms, kitchens, and dryers to be discharged at the exterior of the building. It appears from both my initial examination and the HBI report that the exhaust fans from the bathrooms in the units in question discharge into the plenum space between the floor/ceiling joists in violation of the code. Also, it appears from the HBI findings that the discharge from the Mann dryer may be connected to the discharge of the Lee dryer. Also noted during the testing was an unducted vent in the wall of the dining room of the Lee unit that allowed air flow from the plenum space between the ceiling joists of the Mann unit to migrate to the Lee unit.

Review of the codes also revealed that they are consistent in requiring sound transmission control insulation between units in all floor/ceiling assemblies which might have reduced or prevented some of the air migration. No examination was made to determine the presence of such insulation. This should be investigated further.

It is my recommendation that, as a minimum, the following tasks be undertaken to eliminate the migration of unwanted air from the Mann unit to the Lee unit:

❖ Separation of the dryer vent systems and discharge of both dryers to the exterior of the building;

❖ Extension of the bathroom vent systems to discharge to the exterior of the building;

❖ Examination of and upgrade, as necessary, the ceiling penetrations in the Mann unit to provide for the required firestopping and proper fixture type;

David Brady, Esq.                    06 JUN 10                    Page 3
                                     Susan Lee

- ❖ Examination of and upgrade, as necessary, all common wall penetrations in both units to provide for the required firestopping and prevent the unwanted migration of air into the Lee unit;

- ❖ Location and sealing of all floor/ceiling penetrations associated with electrical, plumbing, and mechanical systems that pass between the units;

- ❖ Examination for and upgrade, as necessary, the required sound transmission control insulation; and,

- ❖ Location, ducting, and sealing of all unducted passages within the walls and ceilings of the units.

The foregoing list is not inclusive of all potential paths of air migration. Additional paths will likely be identified as a more thorough examination and the repairs/upgrades take place.

I trust this provides information that is helpful to you and your client. If you have any questions or require anything further, please advise.


Yours truly,

Donald P. Schlachter
NJ Professional Engineer
License No. 23805

# EXHIBIT C

## DONALD P. SCHLACHTER
### PROFESSIONAL ENGINEER
#### 37 FIELDSTONE DRIVE
#### SOMERVILLE, NJ 08876
908-231-1725            FAX 908-231-0451
e-mail: dpspe@optonline.net

30 JUN 10

David B. Brady, Esq.
Brady and Correale
50 South Street
Morristown NJ 07006

Re:    **Susan Lee**
       **61 Pippin's Way**
       **Morris Township, New Jersey**

Dear Mr. Brady:

Pursuant to my supplemental report of 06 JUN 10, it is this writer's understanding that a mediation was undertaken, at which time it was agreed that the "first focus" of the elimination of the smoke migration is to be the sealing of penetrations. At your request, I have attempted to outline the primary areas of investigation and repair to be undertaken by a contractor in this regard.

In order for a contractor to prepare a reasonable cost proposal for the work to be done, I have been asked to provide a plan of the work. I do not think it is possible to prepare a complete plan of repairs, so I have set forth below a list of the primary areas of concern identified in the investigations and studies to date along with a basic scope of repairs to be done. This will serve as a guide for a contractor to evaluate the level of labor and materials required to complete the "first focus", and is complemented by the sketches of the two floor plans provided as part of the Andreas report of 07 JUN 10. It will not be possible to ascertain the location or repair methods for all the voids until such time as internal inspection of the wall and floor void spacing between the framing can be completed. The internal inspection should be undertaken using a borescope and interior finishes should be removed only as a last resort for inspection and only as required to complete the work.

In general, all paths found to allow smoke migration between units are to be sealed using code-compliant materials and methods. This includes, but is not limited to such materials as crack sealing using low or no VOC firecaulking, and filling of voids with noncombustible, nontoxic, low or no VOC material.

- Provide proper seals (firecaulking or equivalent) around all recessed lighting fixtures in the Mann unit that will eliminate any passage of air through the fixture

into the ceiling/floor plenum space between Mann and Lee. This may require replacement of the fixtures with an assembly designed for firestopping and/or draftstopping. These fixtures were noted in the ceilings of the living room, kitchen, and hallway during the inspections.

- Provide proper seals (firecaulking or equivalent) around all electrical penetrations (receptacles, switches, etc.) in perimeter and interior walls of the Mann unit to prevent migration of smoke into the wall cavity. This will consist of a sealing of the penetration of the wire into the wall cavity, sealing the openings in the wall outlet box, and providing gaskets under receptacle and switch plates. Consideration should be given to the same level of sealing in the Lee unit to assure no paths for migration where electrical boxes are in walls in common with the Mann unit below.

- Provide proper seals (firecaulking or equivalent) around all floor and wall penetrations for the passage of vents, plumbing piping, and electrical wiring into the Lee unit. These void areas will be found in the spaces between framing members in both floors and walls of both units. They will be primarily located in the bathrooms and utility room, but investigation of the kitchen and living room must be undertaken to determine what, if any, correction is necessary. The contractor should consider sealing these penetrations at the ceiling level of the Mann unit, as well, to prevent entry of any smoke into the floor/ceiling plenum space.
    - o There appears to be an unducted vent at the floor level of the Lee unit dining room in the area above the bathrooms of the Mann unit that provides a path for smoke migration from the floor/ceiling plenum space into the Lee unit. This should be evaluated for its required use and ducted or eliminated, as appropriate.

- Investigate, and correct, as necessary, the dryer vent connections from both the Mann and Lee units to assure separate ducted connections to the exterior of the building.

- Provide separate hard-duct connection of the bathroom fans from both the Mann unit and the Lee unit to the exterior of the building.

- investigate, and correct as necessary, the passage of smoke from the Mann unit to the Lee unit via the stairwell. This may entail the removal of the surface finish material beneath the stairway from ground level to the Lee unit and the application of sealant to the underside of the stairway millwork where voids are found.

- Provide for a postmitigation tracer gas analysis to assure that the smoke migration has been eliminated.

David Brady, Esq.                    30 JUN 10                    Page 3
                                     Susan Lee

The foregoing list is not inclusive of all potential paths of air migration. Additional paths will likely be identified as a more thorough examination and the repairs/upgrades take place. After contractors have performed their inspections, evaluations, and provided their proposals, it would be prudent for Mr. Andreas and me to review the proposals to assure that the proposed repairs will be suitable and the scopes of work are complete.

I trust this provides information that is helpful to you and your client. If you have any questions or require anything further, please advise.


Yours truly,


Donald P. Schlachter
NJ Professional Engineer
License No. 23805

**BECKER & POLIAKOFF LLP**
Peter W. Smith, Esq.
Valerie Sirota, Esq.
11 Wharf Avenue, Suite 4
Red Bank, New Jersey 07701
(212) 599-3322

*Attorneys for Defendant The Moore*
*Estate Condominium Association, Inc.*

| | |
|---|---|
| SUSAN LEE,<br><br>                               Plaintiff,<br><br>            vs.<br><br>MARY KAY MANN and THE MOORE<br>ESTATE CONDOMINIUM<br>ASSOCIATION, INC.,<br><br>                               Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION: MORRIS COUNTY<br><br>DOCKET NO.: C-9-10<br><br>Civil Action |

**TO:**   David B. Brady, Esq.
Brady & Correale, LLP
50 South Street
Morristown, NJ 07960
*Attorneys for Plaintiff*

Joseph Mezzacca, Jr., Esq.
Law Office of Joseph Mezzacca, Jr., Esq.
230 Main Street
Madison, NJ 07940
*Attorney for Defendant*
*Mary Kay Mann*

**PLEASE TAKE NOTICE** that pursuant to *Rule* 4:14-2, counsel for the

defendant The Moore Estate Condominium Association, Inc. will take the videotaped

deposition of Dean F. Tyler.  The videotaped deposition shall be taken before a Court

Reporter or some other officer authorized by law to take depositions on <u>December 19,</u>

<u>2011, at 10:00 AM</u>, and from day to day until completed, at the offices of Becker &

Poliakoff, 1776 on the Green, 67 Park Place East, Suite 660, Morristown, New Jersey

07960. Counsel is invited to attend and take such part in the examination as may be proper.

PLEASE TAKE FURTHER NOTICE that the attached subpoena directs the deponent to produce copies of all documents described therein on <u>December 9, 2011, at 10:00 AM</u>, at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East, Suite 660, Morristown, New Jersey 07960.

PLEASE TAKE FURTHER NOTICE, the deposition will be videotaped pursuant to *Rule* 4:14-9.

BECKER & POLIAKOFF LLP
*Attorneys for Defendant The Moore Estate Condominium Association, Inc.*

Date:  November 23, 2011          By:  *Valerie Sirota / co*
                                             Valerie Sirota

**BECKER & POLIAKOFF LLP**
Peter W. Smith, Esq.
Valerie Sirota, Esq.
11 Wharf Avenue, Suite 4
Red Bank, New Jersey 07701
(212) 599-3322

*Attorneys for Defendant The Moore
Estate Condominium Association, Inc.*

| | |
|---|---|
| SUSAN LEE, | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION: MORRIS COUNTY |
| Plaintiff, | |
| | DOCKET NO.: C-9-10 |
| vs. | |
| | Civil Action |
| MARY KAY MANN and THE MOORE | |
| ESTATE CONDOMINIUM | **SUBPOENA FOR PRODUCTION OF** |
| ASSOCIATION, INC., | **DOCUMENTS and DEPOSITION** |
| | **TESTIMONY** |
| Defendants. | |

**FROM THE STATE OF NEW JERSEY**

TO:    Dean F. Tyler
       Healthy Buildings International
       76 South Orange Avenue, Suite 107
       South Orange, NJ 07079

**YOU ARE HEREBY COMMANDED** to produce copies of all documents

described in Schedule "A" attached to this subpoena on <u>December 9, 2011, at 10:00</u>

<u>AM</u>, at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East, Suite

660, Morristown, New Jersey 07960.

**YOU ARE FURTHER HEREBY COMMANDED** to attend and give

testimony under oath before a Court Reporter or some other officer authorized by law

to take depositions on <u>December 19, 2011, at 10:00 AM</u>, and from day to day until

completed, at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East,

{N0005972}

Suite 660, Morristown, New Jersey 07960. Counsel is invited to attend and take such part in the examination as may be proper.

Pursuant to *Rule* 4:14-7(c) the materials you are hereby commanded to produce shall not be produced or released until the date specified herein. If you are notified that a motion to quash the subpoena has been filed, you shall not produce or release the within subpoena materials until ordered by the Court or you are notified that the release is consented to by all parties.

Failure to adhere according to the command of this subpoena may subject you to a penalty, damages in a civil suit and punishment for contempt of court.

**PLEASE TAKE NOTICE,** the deposition will be videotaped pursuant to *Rule* 4:14-9 of the Rules of Civil Practice and Procedure.

Date: November 23, 2011

**/s/ Jennifer Perez**
Clerk of the Court

**BECKER & POLIAKOFF LLP**
*Attorneys for Defendant The Moore*
*Estate Condominium Association, Inc.*

By: Valerie Sirota

Valerie Sirota

## SCHEDULE "A"

## DEFINITIONS AND INSTRUCTIONS

1.    You/Your. The terms "You" and "Your" shall refer to Dean F. Tyler.

2.    Document. The term "document" means writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations which are stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. The term document also refers to a collection of pages representing an electronic file. Emails, email attachments, databases, word processor documents, spreadsheets, and graphics files are all examples of electronic documents.  Electronic documents shall be produced in their native format.

3.    Action. The term "Action" shall refer to the above captioned civil action bearing docket number C-9-10.

4.    Susan Lee. The term "Lee" shall refer to Plaintiff Susan Lee.

5.    Mary Kay Mann. The term "Mann" shall refer to Defendant Mary Kay Mann.

6.    Lee's Unit. The term "Lee's Unit" shall refer to the unit owned by Lee, which is located at 61 Pippins Way, Morris Township, New Jersey.

7.    Mann's Unit. The term "Mann's Unit" shall refer to the unit owned by Mann, which is located at 60 Pippins Way, Morris Township, New Jersey.

8.    The Units. The term "The Units" shall collectively refer to Lee's Unit and Mann's Unit.

9.    Association. The term "Association" shall refer to Defendant The Moore Estate Condominium Association.

10.    June 5, 2010 Report. The term "June 5, 2010 Report" shall refer to the June 5, 2010 report sent by you to Lee's attorney David Brady, Jr. Esq., a copy of which is attached hereto as **Exhibit A**.

11.    Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12.    Person. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

13.    Concerning. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

14.    All/Each. The terms "all" and "each" shall be construed as all and each.

15.    And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16.    If you withhold any document, provide the legal ground for withholding the document and provide the following information for each document withheld:  (a) the type document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient so as to identify the document for a subpoena *duces tecum*.

17.    If any document is withheld under a claim of privilege or work product protection, furnish a list identifying each such document including the following information: (a) document date; (b) sender or author; (c) recipient; (d) subject matter of the document; and (e) the basis on which the document has been withheld.

18.    Where a responsive document has been destroyed, or is asserted to have been destroyed, state the approximate date of the destruction, the reason for its destruction, and the name of any person having knowledge of its destruction, and any person responsible for its destruction.

19.    If the information requested is stored in a computer or file or record generated by computer, produce a complete print-out of such information, and produce such information in its native electronic format.

20.    Each document is to be produced in its entirety, even if only a portion of the document relates to the identified subject matter.  Where copies of otherwise identical documents bear additional notations, produce all non-identical copies in their entirety.

21.    These document requests are not intended to be duplicative.  If a document is produced in response to one request, it need not be produced in response to another request.

## DOCUMENTS TO BE PRODUCED

1.    All documents identifying your area of expertise and qualifications in that area, including but not limited to, your curriculum vitae.

2.    All documents, agreements and communications (including the communications themselves), including drafts of same, concerning inspections at The Units.

3.    All documents, agreements and communications (including the communications themselves), including drafts of same, that you relied upon when reaching your opinion or conclusion.

4.     All documents concerning The Units.

5.     All documents and communications exchanged between and among you and Lee.

6.     All documents and communications exchanged between and among you and Mann.

7.     All documents and communications exchanged between and among you and the Association.

8.     All documents and communications exchanged between and among you and any person concerning this Action.

9.     All drafts relating to the June 5, 2010 Report.

10.    All documents and communications concerning the June 5, 2010 Report.

# EXHIBIT A



HBI Mid-Atlantic Region
76 South Orange Avenue
Suite 107
South Orange, NJ 07079
Tel: (973) 821-6259
Fax: (973) 821-5262
Email: hbine@healthybuildings.com
Web Site: www.healthybuildings.com

*IAQ Consulting Excellence Since 1980*

June 5, 2010

Mr. David Brady
Brady & Correale, LLP
50 South Street
Morristown, NJ 07960

Dear Mr. Brady:

## Tracer Gas Survey

Healthy Buildings International, Inc. (HBI) was asked to conduct a tracer gas survey at 61 Pippins Way in Morris Township, New Jersey. There have been complaints of environmental tobacco smoke (ETS) entering the condominium at 61 Pippins Way (Lee Condominium) from the adjoining first floor condominium (60 Pippins Way, Mann Condominium). The Lee condominium consists of:

> ➢ first floor - entry/garage

> ➢ second floor - living room, dining room, kitchen, guest bathroom, laundry room, master bedroom, master bathroom

> ➢ third floor – open area, bedroom, bath and back room

According to Ms. Lee, the ETS odors are the strongest on the second and, to lesser extent, the first floor. The third floor appears essentially unaffected. We noticed an ETS odor in the Lee unit particularly in the laundry room, guest bathroom, master closet and master bathroom. Our inspection was completed on May 24, 2010. This letter style report records our observations, measurements, analytical results, conclusions and recommendations. The goal of this survey was to determine if there an airborne pollutant pathway between the Mann unit and the Lee unit that would permit ETS generated in the Mann unit to migrate into the Lee unit.

## Methodology

The basic methodology for this survey was to release helium in the Mann unit and measure the helium concentrations, if any, in the Lee unit. Helium (He) was selected as the tracer gas as it is non-reactive and non-toxic at low concentrations. Moreover, it is not naturally present in high quantities in the environment. These characteristics make it ideal for airflow pattern analysis and leak testing, and allows for the identification of trace amounts of this gas down to the parts per million (ppm) level using a properly calibrated analyzer. Approximately 30 cubic feet of gas was used for this project. We initially discharged the He into specific small rooms (laundry room, bathroom, closet) and concluded the project by dosing the entire first floor of the Mann unit.

The Radiodetection MGD-2002 Multi-Gas Leak Locator was used as the tracer gas analyzer. This unit can measure He down to +/- 25ppm. Before tracer gas was released into the Mann unit, baseline readings





Integrated Consulting Services to meet the requirements of the U.S. Green Building Council's LEED™ rating system

Mr. David Brady ESQ
Brady & Correale, LLP
June 5, 2010
Page 2 of 4



Healthy Buildings
International

were established in each test area to account for temperature/humidity variations, and, after the first test, to account for any fugitive traces of He in the areas of concern. Our baseline readings before the tracer gas was released showed outdoor levels at 0-75 ppm, indoor Mann unit levels <25 ppm and indoor Lee unit levels from <25 ppm – 50 ppm.

The He was injected at a flow rate 0.5 liters per minute (lpm) to 1.5 lpm in the Mann unit over the testing period until steady-state conditions were achieved (the point at which the generation rate of He equals the dilution rate of the system.) via a calibrated needle valve flow controller fitted onto the compressed gas cylinder. The desired injection rate was targeted at a nominal 1,000 ppm. Given the airflow and target concentration, the injection rate to achieve steady state concentrations in the test space is expressed by:

$$G = [C*Q]/109 \ [28,320 \ mL/ft3]$$

Where G is the generation rate in milliliters per minute (mL/min); C is the desired target concentration in parts per billion (ppb); and Q is the dilution ventilation rate (CFM). 28,320 is a conversion factor.

Once steady state conditions were achieved (after approximately 15 minutes) leak tests were initiated at all adjoining areas. The results are shown in the following page.

Mr. David Brady ESQ
Brady & Correale, LLP
June 5, 2010
Page 3 of 4


Healthy Buildings
International

| Dosing Location | Baseline (ppm) | 1F Laundry Room (ppm) | 1F Master Closet | 1F Master Bath Bath Exhaust Fan OFF | 1F Master Bath Bath Exhaust Fan ON | 1F Guest Bath Exhaust Fan OFF | 1F Guest Bath Exhaust Fan ON | 1F Full Dose (1.5 lpm) of Kitchen Living room Dining room |
|---|---|---|---|---|---|---|---|---|
| Mann Unit, 60 Pippins Way | | | | | | | | |
| 1F Living Room | <25 | <100 | <100 | <100 | <100 | <100 | <100 | 525-675 |
| 1F Kitchen | <25 | <100 | <100 | <100 | <100 | <100 | <100 | 525-675 |
| 1F Dining Room | <25 | <100 | <100 | <100 | <100 | <100 | <100 | 525-675 |
| 1F Laundry Room | <25 | 1,250-1,900 | <100 | <100 | <100 | <100 | <100 | 525-675 |
| 1F Guest Bath | <25 | <100 | <100 | <100 | <100 | 1200-1375 | 1200-1375 | 525-675 |
| 1F Master Closet | <25 | <100 | 800-1400 | <100 | <100 | <100 | <100 | 525-675 |
| 1F Master Bath | <25 | <100 | <100 | 1225-1375 | 1225-1375 | <100 | <100 | 525-675 |
| 1F Master Bedroom | <25 | <100 | <100 | <100 | <100 | <100 | <100 | 525-675 |
| 1F Den | <25 | <100 | <100 | <100 | <100 | <100 | <100 | 525-675 |
| Lee Unit, 61 Pippins Way | | | | | | | | |
| 2F Living Room | <1 | | <100 | <100 | <100 | <100 | <100 | |
| 2F Kitchen | <25 | | <100 | <100 | | <100 | <100 | |
| 2F Dining Room | <25 | | <100 | <100 | | <100 | | |
| 2F Laundry Room | 25 | | <100 | <100 | <100 | <100 | | |
| 2F Guest Bath | 25 | | <100 | <100 | <100 | <100 | | |
| 2F Master Closet | <25 | <100 | <100 | <100 | | <100 | <100 | |
| 2F Master Bath | <25 | <100 | <100 | <100 | | <100 | <100 | |
| 2F Master Bedroom | <25 | <100 | <100 | <100 | | <100 | <100 | |

Dosing Area

Mr. David Brady ESQ
Brady & Correale, LLP
June 5, 2010
Page 4 of 4



Healthy Buildings
International

## Conclusions and Recommendations

Based on our recordings and observations, there is an airborne pollutant pathway between the Mann unit and the Lee unit. The most significant pathway was from the Mann laundry room to the Lee laundry room. The majority of the tracer gas was entering the Lee laundry room through the wall penetration for the Lee dryer vent. Interestingly, there was significant tracer gas migration from the Mann bathrooms to the Lee unit when the bathroom exhaust fans were turned on. It appeared that the Mann bathroom exhausts were vented into the Lee floor joists instead of being vented to the outdoors. Lastly, we confirmed an airborne pollutant pathway between the two units with the bathroom exhaust fans off when we dosed the entire Mann unit.

The probable pathways for the migration of odor/pollutants from the Mann unit to the Lee unit were:

> The clothes dryer chase

> Recessed "Can" lights installed in the ceiling of the Mann unit vent into the Lee unit floor joists

> The plumbing chases, particularly in the bathrooms

> The Mann unit exhaust fans venting into the Lee unit floor joist

> The dryer vent was inspected in the Lee unit. While the Mann dryer vent did not connect to the base of the Lee vent, it is probable that the vents connect at some point above the Lee laundry room based on the number of vents located on the roof. This issue could not be verified by tracer gas, but should be addressed in the remediation plan.

We recommend that these migration pathway issues be addressed to prevent ETS migration into the Lee unit. All restroom exhaust should be vented to the outdoors and the each clothes dryer should have a separate exhaust to the outdoors. An architect/engineer should review all mitigation strategies to determine their efficacy and verify the remedial work. Once airborne pollutant pathways have been sealed and the exhausts and vents are correctly ducted to the outdoors, we recommend repeating the Helium tracer gas survey to ensure the remedial steps were a success.

If you have any questions concerning this report, please contact me at dtyler@hbiamerica.com or 973.394.1330.

For Healthy Buildings International, Inc.

Dean F. Tyler, CIEC, LEED AP
Director, Northeast Region

Attachments: tables of results

**BECKER & POLIAKOFF LLP**
Peter W. Smith, Esq.
Valerie Sirota, Esq.
11 Wharf Avenue, Suite 4
Red Bank, New Jersey 07701
(212) 599-3322

*Attorneys for Defendant The Moore*
*Estate Condominium Association, Inc.*

| | |
|---|---|
| SUSAN LEE,<br><br>                              Plaintiff,<br><br>          vs.<br><br>MARY KAY MANN and THE MOORE<br>ESTATE CONDOMINIUM<br>ASSOCIATION, INC.,<br><br>                              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION: MORRIS COUNTY<br><br>DOCKET NO.: C-9-10<br><br>Civil Action |

**TO:**   David B. Brady, Esq.
Brady & Correale, LLP
50 South Street
Morristown, NJ 07960
*Attorneys for Plaintiff*

Joseph Mezzacca, Jr., Esq.
Law Office of Joseph Mezzacca, Jr., Esq.
230 Main Street
Madison, NJ 07940
*Attorney for Defendant*
*Mary Kay Mann*

**PLEASE TAKE NOTICE** that pursuant to *Rule* 4:14-2, counsel for the

defendant The Moore Estate Condominium Association, Inc. will take the videotaped

deposition of Alan S. Andreas.  The videotaped deposition shall be taken before a

Court Reporter or some other officer authorized by law to take depositions on

December 16, 2011, at 10:00 AM, and from day to day until completed, at the offices of

Becker & Poliakoff, 1776 on the Green, 67 Park Place East, Suite 660, Morristown, New

Jersey 07960. Counsel is invited to attend and take such part in the examination as may be proper.

**PLEASE TAKE FURTHER NOTICE** that the attached subpoena directs the deponent to produce copies of all documents described therein on <u>December 9, 2011,</u> <u>at 10:00 AM</u>, at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East, Suite 660, Morristown, New Jersey 07960.

**PLEASE TAKE FURTHER NOTICE**, the deposition will be videotaped pursuant to *Rule* 4:14-9.

**BECKER & POLIAKOFF LLP**
*Attorneys for Defendant The Moore*
*Estate Condominium Association, Inc.*

Date:  November 23, 2011                    By:  *Valerie Sirota* / ᴄᴅ
Valerie Sirota

**BECKER & POLIAKOFF LLP**
Peter W. Smith, Esq.
Valerie Sirota, Esq.
11 Wharf Avenue, Suite 4
Red Bank, New Jersey 07701
(212) 599-3322

*Attorneys for Defendant The Moore*
*Estate Condominium Association, Inc.*

| | |
|---|---|
| SUSAN LEE, | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION: MORRIS COUNTY |
| Plaintiff, | |
| | DOCKET NO.: C-9-10 |
| vs. | |
| | Civil Action |
| MARY KAY MANN and THE MOORE | |
| ESTATE CONDOMINIUM | **SUBPOENA FOR PRODUCTION OF** |
| ASSOCIATION, INC., | **DOCUMENTS and DEPOSITION** |
| | **TESTIMONY** |
| Defendants. | |

**FROM THE STATE OF NEW JERSEY**

TO:   Alan S. Andreas
      ASA Architectural Design
      221 Main Street
      Madison, NJ 07940

**YOU ARE HEREBY COMMANDED** to produce copies of all documents described in Schedule "A" attached to this subpoena on December 9, 2011, at 10:00 AM, at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East, Suite 660, Morristown, New Jersey 07960.

**YOU ARE FURTHER HEREBY COMMANDED** to attend and give testimony under oath before a Court Reporter or some other officer authorized by law to take depositions on December 16, 2011, at 10:00 AM, and from day to day until completed, at the offices of Becker & Poliakoff, 1776 on the Green, 67 Park Place East,

{N0005971}

Suite 660, Morristown, New Jersey 07960. Counsel is invited to attend and take such part in the examination as may be proper.

Pursuant to *Rule* 4:14-7(c) the materials you are hereby commanded to produce shall not be produced or released until the date specified herein. If you are notified that a motion to quash the subpoena has been filed, you shall not produce or release the within subpoena materials until ordered by the Court or you are notified that the release is consented to by all parties.

Failure to adhere according to the command of this subpoena may subject you to a penalty, damages in a civil suit and punishment for contempt of court.

**PLEASE TAKE NOTICE**, the deposition will be videotaped pursuant to *Rule* 4:14-9 of the Rules of Civil Practice and Procedure.

Date: November 23, 2011

/s/ **Jennifer Perez**
Clerk of the Court

**BECKER & POLIAKOFF LLP**
*Attorneys for Defendant The Moore*
*Estate Condominium Association, Inc.*

By: _____
Valerie Sirota

## SCHEDULE "A"

## DEFINITIONS AND INSTRUCTIONS

1.      <u>You/Your</u>. The terms "You" and "Your" shall refer to Alan S. Andreas.

2.      <u>Document</u>. The term "document" means writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations which are stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. The term document also refers to a collection of pages representing an electronic file. Emails, email attachments, databases, word processor documents, spreadsheets, and graphics files are all examples of electronic documents.  Electronic documents shall be produced in their native format.

3.      <u>Action</u>. The term "Action" shall refer to the above captioned civil action bearing docket number C-9-10.

4.      <u>Susan Lee</u>. The term "Lee" shall refer to Plaintiff Susan Lee.

5.      <u>Mary Kay Mann</u>.  The term "Mann" shall refer to Defendant Mary Kay Mann.

6.      <u>Lee's Unit</u>. The term "Lee's Unit" shall refer to the unit owned by Lee, which is located at 61 Pippins Way, Morris Township, New Jersey.

7.      <u>Mann's Unit</u>. The term "Mann's Unit" shall refer to the unit owned by Mann, which is located at 60 Pippins Way, Morris Township, New Jersey.

8.      <u>The Units</u>. The term "The Units" shall collectively refer to Lee's Unit and Mann's Unit.

{N0005971}                           3

9.     Association.  The term "Association" shall refer to Defendant The Moore Estate Condominium Association.

10.     June 7, 2010 Report.  The term "June 7, 2010 Report" shall refer to the June 7, 2010 report sent by you to Mann's attorney Joseph Mezzacca, Jr. Esq., a copy of which is attached hereto as **Exhibit A**.

11.     Communication.  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12.     Person.  The term "person" is defined as any natural person or any business, legal or governmental entity or association.

13.     Concerning.  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

14.     All/Each.  The terms "all" and "each" shall be construed as all and each.

15.     And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16.     If you withhold any document, provide the legal ground for withholding the document and provide the following information for each document withheld:  (a) the type document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient so as to identify the document for a subpoena *duces tecum*.

17.     If any document is withheld under a claim of privilege or work product protection, furnish a list identifying each such document including the following information: (a) document date; (b) sender or author; (c) recipient; (d) subject matter of the document; and (e) the basis on which the document has been withheld.

18.    Where a responsive document has been destroyed, or is asserted to have been destroyed, state the approximate date of the destruction, the reason for its destruction, and the name of any person having knowledge of its destruction, and any person responsible for its destruction.

19.    If the information requested is stored in a computer or file or record generated by computer, produce a complete print-out of such information, and produce such information in its native electronic format.

20.    Each document is to be produced in its entirety, even if only a portion of the document relates to the identified subject matter. Where copies of otherwise identical documents bear additional notations, produce all non-identical copies in their entirety.

21.    These document requests are not intended to be duplicative. If a document is produced in response to one request, it need not be produced in response to another request.

## DOCUMENTS TO BE PRODUCED

1.    All documents identifying your area of expertise and qualifications in that area, including but not limited to, your curriculum vitae.

2.    All documents, agreements and communications (including the communications themselves), including drafts of same, concerning inspections at The Units.

3.    All documents, agreements and communications (including the communications themselves), including drafts of same, that you relied upon when reaching your opinion or conclusion.

4.    All documents concerning The Units.

5.    All documents and communications exchanged between and among you and Lee.

6.    All documents and communications exchanged between and among you and Mann.

7.    All documents and communications exchanged between and among you and the Association.

8.    All documents and communications exchanged between and among you and any person concerning this Action.

9.    All drafts relating to the June 7, 2010 Report.

10.    All documents and communications concerning the June 7, 2010 Report.

# EXHIBIT A



**A  A ARCHITECTURAL DESIGN  LLC**
Alan S. Andreas, AIA, NCARB
221 Main Street, Madison, NJ  07940
T1    973.377.1313
T2    973.377.1561
F     973.377.1562
www.asaarchitectural.com

June 7, 2010

Joseph Mezzacca, Jr.
Attorney At Law
230 Main Street
Madison, NJ  07940

Dear Mr. Mezzacca;

Per your request and the request of your client, MaryKay Mann, I witnessed the helium
test administered by Ms. Lee's professional team on Monday, May 24th.

It is my professional opinion that the tests were administered correctly including the
establishment of a baseline for both the exterior and interior of each apartment.

Please note that the comments contained in my report below were prepared without the
final helium test results. The tests conducted on site presented evidence of leakage from
Ms. Mann's first floor unit into Ms. Lee's second floor unit.

The test revealed the following areas of possible infiltration:

1) From Ms. Mann's laundry room to Ms. Lee's laundry room/powder room:

   The infiltration is most likely occurring from utility pipes utilized by the washer
   and dryer. The natural process of convection draws the air from Ms. Mann's unit
   into Ms. Lee's unit.

2) From Ms. Mann's powder room to Ms. Lee's laundry room/powder room:

   The initial infiltration of this area was minimal until the exhaust fan was
   activated. Once the fan was operational, the levels of helium increased
   dramatically. This evidence leads me to believe the bathroom exhaust vent has
   been terminated within the floor joists and not to the exterior of the building as
   current codes mandate.

3) From Ms. Mann's master bathroom into Ms. Lee's master bathroom:

As in the case of the powder room, less air passage occurred until the master bathroom exhaust fan was activated. Once the fan was in operation, the presence of helium increased significantly. As in item #2, this evidence leads me to believe the bathroom exhaust vent has been terminated within the floor joists and not to the exterior of the building as current codes mandate.

In order to rectify the air passage from Ms. Mann's unit to Ms. Lee's unit, all penetrations between the units should be fire-caulked or sealed to eliminate the air movement. Secondly, both bathroom exhaust fans should be properly terminated at the exterior of the building, not within the floor joists.

I have attached sketches of both units depicting the areas I believe to be the source of infiltration.

Regards.

Alan S. Andreas, AIA, NCARB

MMA
Attachments

2



# REYNOLDS & COMPANY
## *The Managed Healthcare Consultants*

333 East 51st Street
New York, NY 10022
Phone: 212/826-1818
Fax:    212/838-7516

2500 Virginia Ave., NW, Suite 1405-N
Washington, D.C. 20037
Phone: 202/337-9177
Fax: 202/337-8615

353 Sacramento St., Suite 600
San Francisco, CA 94111
Phone: 415/773-2849

3/16/99

Mr. Dipascali:

I am enclosing a second check for the
Petito Investment group Account - ZA003
which I inadvertently did not include
in our earlier hand delivered envelope.

Thanks for your help. Please call if you have
any questions.

---

JX REYNOLDS & CO INC
PROFIT SHARING PLAN
333 EAST 51ST STREET
NEW YORK, NY 10022

1002
1-462/210
BRANCH 227

DATE 3/16/99

PAY TO THE ORDER OF   Bernard L. Madoff Investment Securities    $ 80,000.00

Eighty Thousand And 00/100                                    DOLLARS

REPUBLIC NATIONAL BANK OF NEW YORK
452 FIFTH AVENUE
NEW YORK, NY 10018-2706
BRANCH 227

FOR  Petito Investment group TID: 22-1509276

⑈021004823⑈   310296994⑈  1002