PROSKAUER ROSE LLP
Myron D. Rumeld
Anthony S. Cacace
Richard J. Corbi
Eleven Times Square
New York, New York 10036
Telephone:    212.969.3021
Facsimile:     212.969.2900
mrumeld@proskauer.com
acacace@proskauer.com
rcorbi@proskauer.com
*Attorneys for Eric S. Saretsky &*
*The Plan Administrator of the Sterling*
*Equities Associates Employee Retirement Plan*

Hearing Date:  May 23, 2012
Hearing Time:  10:00 AM (EST)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,

                                          Plaintiff,

                          v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                                          Defendant.

In re:

BERNARD L. MADOFF,

                                          Debtor.

------------------------------------------------------------------X

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO THE**
**MOTION FOR AN ORDER AFFIRMING THE TRUSTEE'S**
**DETERMINATIONS DENYING CLAIMS OVER ERISA-RELATED OBJECTIONS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................... 1

FACTS ........................................................................................................................................... 2

PROCEDURAL HISTORY ........................................................................................................... 4

ARGUMENT ................................................................................................................................. 6

I.     THE PLAN PARTICIPANTS SATISFY ALL RELEVANT
CRITERIA FOR DETERMINING CUSTOMER STATUS
UNDER SIPA.................................................................................................................... 6

II.    THE TRUSTEE'S PURPORTED GROUNDS FOR DENYING
"CUSTOMER" STATUS TO PARTICIPATS OF OTHER ERISA
PLANS ARE INAPPLICABLE TO THE PARTICIPANTS OF
THIS PLAN ....................................................................................................................... 8

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Aozora Bank Ltd.*,
   No. 11-CV-05683 (DLC), 2012 WL 28468 (S.D.N.Y. Jan 4, 2012) ..................................6, 7

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011) ..................................................................................8, 11

*Kurzweil v. Philip Morris Cos., Inc.*,
   No. 94 CV 2373 (MBM), 2001 WL 25700 (S.D.N.Y. Jan. 10, 2001) ..............................7, 12

*Rosenman Family, LLC v. Picard*,
   395 F. App'x 766 (2d Cir. 2010) ..............................................................................5

*Sec. Investor Prot. Corp. v, Bernard L. Madoff Inv. Sec. LLC*,
   454 B.R. 285 (S.D.N.Y. 2011) ................................................................................5

*Secs. Investor Prot. Corp. v. Exec. Sec. Corp.*,
   423 F. Supp. 94 (S.D.N.Y. 1976), *aff'd*,
   556 F.2d 98 (2d Cir. 1977) ................................................................................5, 8, 9

*Secs. Investor Prot. Corp v. Morgan, Kennedy & Co.*,
   533 F.2d 1314 (2d Cir. 1976) ........................................................................passim

*Stafford v. Giddens* (*In re New Times Sec. Servs.*),
   463 F.3d 125 (2d Cir. 2006) ....................................................................................5

STATUTES

15 U.S.C. § 78*lll(2)* ........................................................................................passim

29 U.S.C. § 1104(c) ......................................................................................2, 8

29 U.S.C. § 1104(c)(1) ......................................................................................3

29 U.S.C. § 1132(a) ......................................................................................1

Employee Retirement Income Security Act of 1974 ......................................................1

Eric S. Saretsky ("Saretsky"), a participant of the Sterling Equities Associates Employee

Retirement Plan (the "Plan"), and the Administrator of the Plan (the "Plan Administrator")

submit this Memorandum of Law in Opposition to the Motion For An Order To Affirm Trustee's

Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names,

Namely, Investors In ERISA Property (the "ERISA Claimants Without An Account Motion" or

"ERISA CWAA Motion") filed by Irving H. Picard, Trustee (the "Trustee") on November 14,

2011.[1]  *See* Docket Entry #4521.[2]

## PRELIMINARY STATEMENT

The ERISA CWAA Motion seeks affirmation of determinations by the Trustee denying a

variety of claims asserted on behalf of a large number of employee benefit plans governed by the

Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and/or the

participants of these plans.  The determinations are purportedly based on the finding that the

plans, or the individual participants of the plans, were not "customers" within the meaning of

Section 78*lll*(2) of the Securities Investor Protection Act ("SIPA").  15 U.S.C. § 78*lll*(2).

Whether or not upheld with respect to other plans and/or their participants, the Trustee's

determination is in error insofar as it is applied to participants of this Plan because it fails to

acknowledge fundamental differences between the operation of this Plan and other ERISA plans,

particularly with respect to the manner in which participants of the Plan decided to invest in

---

[1] As a Plan fiduciary, the Plan Administrator is responsible for the well-being of the Plan and its participants, and thus should be accorded standing to seek relief on behalf of Plan participants. Furthermore, under ERISA, both the plan administrator, as a plan fiduciary, and individual plan participants, have standing to seek plan-wide relief.  *See* 29 U.S.C. § 1132(a).

[2] "Docket Entry # __" refers to the Court docket of this action, *In re Bernard L. Madoff*, Adv. Pro. No. 08-01789 (BRL) (S.D.N.Y.).

Bernard L. Madoff Investment Securities, LLC ("BLMIS").  These distinctions entitle the Plan participants to be treated as "customers" with individual claims under SIPA.[3]

Unlike other plans, in which investments in BLMIS were typically made by a single fiduciary on behalf of all participants with respect to monies contributed by the employer plan sponsor, here each participant made individual investment decisions with respect to his/her account, containing both employer and employee contributions, and chose BLMIS among an array of available investment alternatives.  Thus, each plan participant was a "customer," within the literal and intended meaning of SIPA.

Accordingly, the participants of the Plan should be treated as "customers" within the meaning of Section 78*lll*(2) of SIPA, and each Plan participant is thus entitled to the Securities Investor Protection Corporation ("SIPC") advance in an amount up to $500,000.

## FACTS

The Plan is a participant-directed, defined contribution plan within the meaning of Section 404(c) of ERISA.  29 U.S.C. § 1104(c).  Contributions to the Plan are made through payroll deductions, at the election of Plan participants, and through matching contributions by the employer, Sterling Equities Associates ("Sterling").  Each participant has an individual account in the Plan in which his/her contributions, the employer's matching contributions, and

---

[3] As discussed further below, several of the grounds for overturning the Trustee's determination are already set forth in the letter brief submitted to the Trustee on behalf of the participants of the Orthopaedic Specialty Group PC Defined Contribution Pension Plan (the "OSG 3/3/09 Letter Brief") on March 3, 2009, which is incorporated herein by reference.  *See* Docket Entry # 3195-3.  Among other things, the OSG 3/3/09 Letter Brief discusses the distinction between traditional employee benefit plans, which invest employer contributions, and 401(k) plans, in which participants invest their own money.  This Plan contains the further distinction that its participants actually make the investment decisions.

investment earnings on those contributions are credited.  (*See* ERISA Documentation, Exhibit 1 at 4-7.)[4]

Unlike participants of ordinary defined benefit plans, participants of plans governed by Section 404(c)(1) of ERISA are individually responsible for determining how the assets in their accounts -- including both their contributions and employer matching contributions -- are invested.  As long as the plan administrator provides a variety of investment choices and adequate information about those choices, the administrator is not responsible for the investment choices made by the participants.  *See* 29 U.S.C. § 1104(c)(1).  Consistent with this statutory framework, the Plan provides a menu of investment alternatives, which is referenced in the Summary Plan Description (the "SPD") and from which participants can select for purposes of investing the money in their respective accounts or transferring monies already invested by them. (*See* ERISA Documentation, Exhibit 1 at 16-17 & Exhibit 2.)

During the period May 1, 1997 through December 12, 2008, BLMIS was one of the investment alternatives offered by the Plan.  Plan participants received an information sheet entitled "Discretionary Brokerage Account at Bernard L. Madoff Investment Securities," which informed the participants of Madoff's investment strategy, the history of the investment's annual returns, the fact that employee reports would be furnished quarterly and that employees were able to move in and out of the investment vehicle each quarter.  (*See* ERISA Documentation, Exhibit 3.)

---

[4] Pursuant to this Court's Scheduling Order dated November 8, 2011 (*see* Docket Entry #4507), Saretsky and the Plan Administrator timely transmitted documents in support of their Opposition to the ERISA CWAA Motion (the "ERISA Documentation") to the Trustee, with the understanding that the Trustee will collect all ERISA Documentation and make a unified submission to the Court at a later date.

Although the Plan combined the investments of each participant in a single account with BLMIS, each participant was separately credited for his/her investments in that account. Each Plan participant received a quarterly statement from EBS Benefit Solutions (a company that provided administrative support to the Plan) reflecting the value of the participant's individual investment in BLMIS. (*See* ERISA Documentation, Exhibit 4.) As of December 11, 2008, the net value of investments in the Plan's BLMIS account was $23,744,404.96, comprising investments by 179 Plan participants, including Saretsky. (*See* ERISA Documentation, Exhibit 2.)

## PROCEDURAL HISTORY

By letter dated June 11, 2009, the General Counsel of Sterling informed the Trustee that each participant of the Plan would be seeking relief under SIPA as individual "customers." (*See* ERISA Documentation, Exhibit 5.) The letter set forth various grounds supporting the argument that each participant in the Plan was a "customer" as defined by SIPA and that each should be treated as such in determining his/her eligibility for SIPC protection. (*See* ERISA Documentation, Exhibit 5.) On June 19, 2009, SIPC Customer Claims were submitted by the Plan and by Saretsky (along with the other Plan Participants). (*See* ERISA Documentation, Exhibits 6 & 7.) On November 12, 2010, the Trustee allowed the Plan's claim (Claim No. 9955) in the amount of $15,415,309.91 based on the "Net Investment Method." However, the Trustee denied the customer claim of Saretsky (Claim No. 010089) and the other individual Plan participants on the grounds that the Plan participants "did not have an account with BLMIS," and thus were not customers of BLMIS as that term is defined by SIPA. (*See* ERISA Documentation, Exhibit 8.) On December 9, 2010, Saretsky, and the other Plan participants, timely appealed the Trustee's determination. (*See* ERISA Documentation, Exhibit 9.)

On October 5, 2011, the Trustee moved this Court for a briefing schedule and hearing to affirm the Trustee's determinations regarding "ERISA Claimants Without An Account." *See* Docket Entry # 4432. On November 8, 2011, the Court entered a scheduling order, *see* Docket Entry # 4507, pursuant to which the Trustee filed the instant ERISA CWAA Motion, seeking a ruling that ERISA claimants without a BLMIS account in their respective names are not "customers" as defined by SIPA, and thus are not entitled to SIPC protection. *See* Docket Entry # 4521. The ERISA CWAA Motion sets forth the following grounds for denying the claims of individual participants:

- ERISA is not relevant to the determination of whether a claimant is a "customer" under SIPA.
- The "critical aspect" of determining who is a "customer" under SIPA is "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." SIPA § 78*lll*(2); *Stafford v. Giddens* (*In re New Times Sec. Servs.*), 463 F.3d 125, 128 (2d Cir. 2006); *see, e.g., Rosenman Family, LLC v. Picard*, 395 F. App'x 766, 768 (2d Cir. 2010); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 298 (S.D.N.Y. 2011).
- The claim of a customer must relate to an account with the debtor. SIPA § 78*lll*(2); *see, e.g., Secs. Investor Prot. Corp. v. Exec. Sec. Corp.*, 423 F. Supp. 94, 98 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 98 (2d Cir. 1977).
- ERISA claimants neither entrusted cash nor securities to BLMIS, nor had accounts in their respective names with BLMIS.
- *Secs. Investor Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976) is precedential.
- ERISA claimants "were not known to BLMIS, did not have a fiduciary relationship with BLMIS, had no power to entrust their assets to BLMIS for the purposes of investing or trading in securities, and controlled no investment decisions." Also, ERISA claimants "ceded all control over their investments to their ERISA-plan fiduciaries."
- There are no applicable sections of ERISA or its regulations that conflict with or are relevant to SIPA's definition of "customer."

*See* ERISA CWAA Motion at ¶¶ 19-24. These arguments are addressed below.

## ARGUMENT

### I

### THE PLAN PARTICIPANTS SATISFY ALL RELEVANT
### CRITERIA FOR DETERMINING CUSTOMER STATUS UNDER SIPA

The definition of the term "customer" is set forth in Section *78lll*(2) of SIPA as follows:

any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.  The term 'customer' includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities....

15 U.S.C. § 78lll(2).  This provision was recently analyzed in connection with a ruling affirming this Court's order denying "customer" status to investors (not connected to ERISA plans) in "Feeder Funds" that invested in BLMIS.  *See In re Aozora Bank Ltd.*, No. 11-CV-05683 (DLC), 2012 WL 28468, at *3 (S.D.N.Y. Jan 4, 2012).  Citing the Second Circuit's prior ruling in *Securities Investor Protection Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976), the district court identified the following factors as "indicative" of "customer status" under SIPA:

- Making purchases with, transacting business with, having dealings with, and being known by the broker-dealer;
- Owning property held by the broker-dealer;
- Having "exclusive power" over investment decisions made with the broker-dealer;
- Having a legal capacity to have dealings with the broker-dealer;
- Having securities accounts in one's name at the broker-dealer; and
- Having a name that appears on the broker-dealer's books or records.

*In re Aozora Bank Ltd.*, 2012 WL 28468 at *5.  The district court concluded that Feeder Fund investors could not satisfy any of these factors, *inter alia*, because: the Feeder Funds were

independent corporate entities that made independent investment decisions; and the investors in the Feeder Funds were merely partial owners in those entities by virtue of their investment in those entities. *Id.* Here, by contrast, the Plan participants are exclusively responsible for the investment of their money in BLMIS, and their investments were collectively made – through the Plan – in a BLMIS account. There was no intermediate investment or investment decision by an independent legal entity. Thus, the participants did not merely own a share of an entity that was invested in BLMIS. Rather, they each had an exclusive ownership interest in his/her own pension savings. *See supra* at 2-4; *See also Kurzweil v. Philip Morris Cos., Inc.*, No. 94 CV 2373 (MBM), 2001 WL 25700 (S.D.N.Y. Jan. 10, 2001) (finding that 401(k) plan participants are entitled to settlement recoveries of losses from stock fund investments based on their individual investment decisions, even though the plan made aggregate purchases and sales on the participants' behalf).

As a result, the same factors that led the court to reject customer status in *Morgan, Kennedy* and *In re Aozora Bank Ltd.* compel the contrary conclusion in this case. Specifically: the Plan participants are making purchases directly with BLMIS; BLMIS is aware of the Plan participants' investments by virtue of the account held in the Plan's name; the participants own the assets invested with BLIMS, and have "exclusive power" over their investment decisions with BLMIS; the employees have the legal authority (through the Plan) to deal with BLMIS; and the participants collectively have an account in the Plan's name. *See supra* at 2-4.

Accordingly, under the criteria established by the district court, the Plan participants are "customers" within the meaning of SIPA.

## II

### THE TRUSTEE'S PURPORTED GROUNDS FOR DENYING "CUSTOMER" STATUS TO PARTICIPANTS OF OTHER ERISA PLANS ARE INAPPLICABLE TO THE PARTICIPANTS OF THIS PLAN

A review of the arguments set forth by the Trustee in the ERISA CWAA Motion demonstrates why these arguments are not persuasive insofar as they are applied to the Plan participants and why the participants of this Plan are entitled to "customer" status under SIPA.

**Relevance of ERISA.** The Trustee contends that "ERISA has no bearing on the determination of whether a claimant is a 'customer' under SIPA" and "[t]he 'critical aspect' of determining who is a 'customer' under SIPA's narrow definition is "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.'" ERISA CWAA Motion at ¶19. While there is no dispute that the determination of whether the Plan participants are customers entitled to a recovery is determined under SIPA, ERISA certainly helps determine whether the criteria for "customer" status are satisfied. As explained above, because this particular plan is governed by Section 404(c) of ERISA, the Plan participants each made his/her own investment decisions and deposited his/her own money with BLMIS. Thus, each was a "customer," within the meaning contemplated by SIPA. *See* 29 U.S.C. § 1104(c); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 236 (2d Cir. 2011) (noting that the "critical aspect" of the definition of customer is the entrustment of cash or securities to the broker-dealer for investment purposes).

**Account with the Debtor.** The Trustee asserts that "[t]he claim of a customer must relate to an account with the debtor." ERISA CWAA Motion at ¶19. The Trustee relies on *Securities Investor Protection Corp. v. Executive Security Corp.*, 423 F. Supp. 94, 98 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 98 (2d Cir. 1977) in support of this proposition. The court in *Executive*

*Securities Corp.* upheld the Bankruptcy Court's ruling that a lender of stock to a broker-dealer

was not a "customer" under SIPA because the loan was not made in connection with "investment

or trading activity with the broker." *Id*. at 96. The court reasoned that "customers" are "limited

to persons who maintain accounts with broker-dealers and who trade or invest through them."

*Id*. at 98. Here, the Plan participants collectively maintained, and invested through, an account

with BLMIS entitled "Sterling Equities Employee Retirement Plan" and received credit from that

account for their individual investments. (*See* ERISA Documentation, Exhibit s 4, 6 &10.)

Thus, the Plan participants' claims relate to "an account with the debtor."

**Prior Second Circuit Authority.** The Trustee purports to rely on the Second Circuit's

ruling in *Securities Investor Protection Corp. v. Morgan, Kennedy & Co.*, while overlooking the

fundamental distinctions between the plan at issue in that case and here.[5] In *Morgan, Kennedy,*

the Court ruled that a profit sharing plan was a "customer" under SIPA, but that its participants

and beneficiaries were not "customers" because the plan's account at Morgan, Kennedy

Company (the debtor) was funded solely by the employer/plan sponsor, the account was in the

name of trustees of the plan only, and the trustees -- not the participants -- had the exclusive

authority to entrust assets to the debtor. 533 F.2d 1314, 1318 (2d Cir. 1976). In support of its

ruling, the Second Circuit also observed that the debtor did not hold assets belonging to any

individual participant, but instead held assets of the plan's trust, and participants did not have the

power to "trade or invest" assets with the debtor, *id.*; and that the participants of the plan did not

have a claim that could be reduced to "a specific monetary sum," since their respective interests

in the trust could not be valued until the actual distribution of the benefits was made. *Id.* at 1318

n.6.

---

[5] A fuller discussion of this case, and why its holding is distinguishable, appears in the OSG Plan
3/3/09 Letter Brief at 5-7. *See* Docket Entry 3195-3.

The ruling in *Morgan, Kennedy* was thus directly attributable to the specific characteristics of the plan involved. The characteristics of this Plan are different -- in fact, opposite -- with respect to all the material criteria identified by the Court in *Morgan, Kennedy*. Specifically: the Plan is funded, not merely by employer contributions, but by participant contributions that are then matched in part by employer contributions (*see* ERISA Documentation, Exhibit 1 at 4-7); the Plan participants have complete discretion as to whether to contribute to the plan, a decision that is no doubt influenced in part by their awareness of their investment options; regardless of the source of the contributions to his/her account, each participant determines how his/her account will be invested; and, the amount of each participant's investment with BMLIS can be determined with certainty. *See supra* at 2-4. Thus, whereas in *Morgan, Kennedy* the plan fiduciaries were singularly responsible for the investment of plan assets, here the Plan fiduciaries merely facilitated the decisions made by individual Plan participants.[6] Accordingly, the reasoning of the Second Circuit's decision in *Morgan, Kennedy* favors the conclusion that the Plan participants here are "customers" within the meaning of SIPA.

**BLMIS's Lack of Knowledge or Relationship with the Participants.** The Trustee contends that the participants are not entitled to "customer" status because they "were not known to BLMIS, did not have a fiduciary relationship with BLMIS, had no power to entrust their assets to BLMIS for the purposes of investing or trading in securities, and controlled no investment decisions." (ERISA CWAA Motion at ¶22.) Also, the Trustee states that ERISA claimants "ceded all control over their investments to their ERISA-plan fiduciaries." (ERISA CWAA

---

[6] Notably, in *Morgan, Kennedy* each participant of the plan did not file his or her own SIPC Customer Claim. *See* 533 F.2d at 1318 n.6. Here, each participant of the Plan timely submitted individual SIPC Customer Claims.

Motion at ¶22.)  For the reasons previously stated, the second contention is clearly wrong as

applied to this Plan:  the Plan participants, not the Plan fiduciaries, retained control over the

investment of their accounts.  *See supra* at 3.  The first contention is irrelevant because SIPA

does not purport to base the determination of customer status on whether the investor is "known"

to the broker dealer or whether there is a fiduciary relationship between the two.  Rather, as the

Trustee elsewhere concedes, the "critical aspect" of determining who is a "customer" under

SIPA is "the entrustment of cash or securities to the broker-dealer for the purposes of trading

securities."  *See supra* at 8.  In any event, as is evident from the account statements and "Annual

Reports to Fiduciaries" issued by BLMIS, BLMIS "knew" that it managed the retirement savings

of the participants of the "Sterling Equities Employees Retirement Plan."  (*See* ERISA

Documentation, Exhibits 4 & 10.)

      **Plan Participants Did Not Have Individual Accounts with BMLIS.**  Finally, the

Trustee contends that the individual participants' claims should be rejected because they did not

have "accounts in their respective names with BLMIS."  ERISA CWAA Motion at ¶ 20.  This

argument purports to be based on *dicta* in *Morgan, Kennedy*, where the court noted that the

participants in that case did not have accounts in their own names with the debtor and did not

appear in the books and records of the debtor.  *Morgan, Kennedy*, 533 F.2d at 1318.  The

observation is out of context, however, because the account in *Morgan, Kennedy* was in the

name of the trustees, who made the investment decision.  *Id.*  Here, the account is the name of

the plan, which collectively holds the investments of participants who make their own

investment decisions.  In any event, the Court's observations in *Morgan, Kennedy* about the

nomenclature of the account were peripheral to the Court's holding.  *See also In re Bernard L.*

*Madoff Inv. Sec.*, 654 F.3d 229, 236 (2d Cir. 2011) (noting that the "critical aspect" of the

definition of customer is the entrustment of cash or securities to the broker-dealer for investment purposes).[7]

To conclude, on the basis of this out-of-context *dictum*, that "customer" status is necessarily conditioned on the existence of an account in the name of the investor would inappropriately elevate form over substance.  For the reasons stated, there is no disputing that, notwithstanding the absence of individual accounts at BLMIS, each Plan participant made individual investment decisions that resulted in money from his/her individual Plan account being invested in BLMIS, and these investments were readily traceable back the participant's account holdings with the Plan.  (*See* ERISA Documentation, Exhibits 4 & 7.)  Thus, in the real sense of the term, each Plan participant was a "customer."  *See also Kurzweil* (discussed *supra* at 7.)

In short, the grounds asserted by the Trustee for denying "customer status," whether or not persuasive with respect to other types of plans, are inapplicable to the participants of a 401(k) plan, who invest their own money in the plan and determine how their contributions, as well as the employer contributions made on their behalf, are invested.

---

[7] As discussed more fully in the OSG Plan 3/3/09 Letter Brief**,** neither SIPA, nor its legislative history requires that investors have "accounts in their respective names" with the broker-dealer. *See* Docket Entry 3195-3 at 3-5.

## CONCLUSION

For the reasons set forth above, the Trustee's ERISA CWAA Motion should be denied

with respect to this participants of this Plan, the Plan participants should be treated as

"customers" under SIPA, the Plan participants should be afforded full SIPC protection and

receive an advance from SIPC in an amount up to $500,000.

Dated:    January 17, 2012
          New York, NY

PROSKAUER ROSE LLP

By:  s/ Richard J. Corbi
        Myron D. Rumeld
        Anthony S. Cacace
        Richard J. Corbi
Eleven Times Square
New York, New York 10036
Telephone:    212.969.3021
Facsimile:    212.969.2900
mrumeld@proskauer.com
acacace@proskauer.com
rcorbi@proskauer.com
*Attorneys for Eric S. Saretsky &*
*The Plan Administrator of the Sterling*
*Equities Associates Employee Retirement Plan*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION              :
CORPORATION,                                :
                                            :        Adv. Pro. No. 08-01789 (BRL)
                              Plaintiff,    :
                                            :        SIPA Liquidation
                    v.                      :
                                            :        (Substantively Consolidated)
BERNARD L. MADOFF INVESTMENT                :
SECURITIES LLC,                             :
                                            :
                              Defendant.    :
In re:                                      :
                                            :
BERNARD L. MADOFF,                          :
                                            :
                              Debtor.       :
-------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

I, Anthony S. Cacace, Esq., an attorney with the firm of Proskauer Rose LLP and

admitted to practice in the United States District Court for the Southern District of New York, do

hereby certify and affirm that on January 17, 2012, pursuant to the Court's November 8, 2011

Order (Docket Entry # 4507) I caused to be served, by UPS Overnight Delivery, this

Memorandum of Law in Support of Objection to Trustee's Determinations Denying Claims over

ERISA-Related Objections, and the supporting "ERISA Documentation" submitted therewith, in

the above-referenced action, upon:

Irving H. Picard
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2101 Cedar Springs Road, Suite 1100
Dallas, Texas 75201

_____s/Anthony S. Cacace_____
Anthony S. Cacace, Esq.

14