**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman
HCHAITMAN@BECKER-POLIAKOFF.COM
45 Broadway
New York, New York 10006
Telephone (212) 599-3322

*Attorneys for J.X. Reynolds & Co. Deferred Profit Sharing Plan, Jacqueline Green Rollover Account, and Wayne D. Green Rollover Account*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>         Plaintiff,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>         Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>         Debtor. | |

**CUSTOMERS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE**

{N0006244 4}         i

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**

INTRODUCTION ................................................................................................................ 1

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.      STANDARD FOR MANDATORY WITHDRAWAL ....................................................... 2

II.     MANDATORY WITHDRAWAL IS APPROPRIATE WITH RESPECT TO
THE ISSUES RAISED IN THE MOTION ................................................................... 4

     A.     THE MOTION REQUIRES SUBSTANTIAL CONSIDERATION OF
SIPA ........................................................................................................................4

     B.     THE MOTION REQUIRES SUBSTANTIAL CONSIDERATION OF
ERISA AND ITS INTEGRATION WITH SIPA .....................................................7

CONCLUSION ..................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahammed v. SIPC (In re Primeline Sec. Corp.),* 295 F. 3d 1100 (10th Cir. 2002) .......................5, 6

*Chemtura Corp. v. U.S.*, 2010 WL 1379752 (S.D.N.Y. March 26, 2010) ......................................4

*City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) ....................................................3

*Eastern Airlines, Inc. v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 1990 WL 5203 (S.D.N.Y. Jan. 24, 1990)..................................................................................................3

*Enron Power Mktg., Inc.* v. *Cal. Power Exch. Corp. (In re Enron Corp.),* 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) ...............................................................................................3

*In re First State Securities Corp.*, 34 B.R. 492 (Bankr. S. D. Fla. 1983) .........................................6

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) ..........................................................3, 4

*In re McCrory Corp.*, 160 B.R. 502 (S.D.N.Y. 1993) .....................................................................3

*Miller v. DeQuine (In re Stratton Oakmont, Inc.),* 2003 WL 22698876 (S.D.N.Y. Nov. 14, 2003) ......................................................................................................................................5

*New Times I*, 371 F.3d 68 (2d Cir. 2004)........................................................................................6

*Picard v. Flinn Investments LLC, et. al.*, 2011 WL 5921544 (Nov. 28, 2011) ...............................2

*Picard v. HSBC Bank PLC*, 450 B.R. 406 (S.D.N.Y. 2011) ...............................................2, 3, 5, 7

*Picard v. JPMorgan Chase Bank, N.A.*, 454 B.R. 307 (S.D.N.Y. 2011)..............................2, 3, 5, 7

*Rosenman Family, LLC v. Picard,* 401 B.R. 629 (Bankr. S.D.N.Y. 2009) .....................................5

*SEC v. Ambassador Church Financial Devel. Group, Inc.,* 679 F. 2d 608 (6th Cir. 1982) .............5

*SEC v. Kenneth Bove & Co.*, 378 F. Supp. 697 (S.D.N.Y. 1974).....................................................6

*SIPC v. Wise (In re Stalvey & Assoc.*), 750 F.2d 464 (5th Cir. 1985) .............................................6

**STATUTES & RULES**

15 U.S.C. § 78bbb...........................................................................................................................4

15 U.S.C. § 78lll(2).....................................................................................................................5, 6

28 U.S.C. § 157(d) .................................................................................................................. passim

29 U.S.C. §1002(21)(A) ................................................................................................................8

29 U.S.C. § 1102(c)(3) ..................................................................................................................8

29 U.S.C. § 1103 ...........................................................................................................................7

29 U.S.C. § 1109 ......................................................................................................................1, 7

Employee Retirement Income Security Act of 1974 ("ERISA"),
    29 U.S.C. § 1001, *et seq.* .................................................................................... passim

Securities Exchange Act of 1934 ..................................................................................................4

**INTRODUCTION**

J.X. Reynolds & Co. Deferred Profit Sharing Plan, Jacqueline Green Rollover Account and Wayne D. Green Rollover Account, as customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") that are qualified pension plans established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* or who invested through qualified ERISA plans (the "Customers"), respectfully submit this memorandum of law in support of their motion, pursuant to 28 U.S.C. § 157(d), for mandatory withdrawal from the bankruptcy court of the reference with respect to the Trustee's motion (the "Motion") seeking an order holding that the Customers are not "customers" under the Securities Investor Protection Act ("SIPA") entitled to insurance from the Securities Investor Protection Corporation ("SIPC"). Withdrawal is mandatory because the Motion requires substantial consideration of federal non-bankruptcy law.

**PRELIMINARY STATEMENT**

The Customers are ERISA-qualified plans or individual participants of such plans, whose funds were invested with BLMIS through accounts held in names other than those of the Customers. ERISA requires that, subject to certain exceptions, all assets of an employee-benefit plan be held in trust by one or more trustees. *See* 29 U.S.C. § 1109. Thus, the Customers were legally required to invest through ERISA plans held in the name of a trust. Yet, the Trustee has used that fact to deny the Customers' claims because the Customers did not have accounts at BLMIS in their own names. The Trustee's narrow interpretation of "customer," limited only to investors who maintained accounts in their own name, cannot be squared with ERISA's requirement that funds be maintained in a trust. Resolution of this issue requires a determination of how to integrate both SIPA and ERISA and only an Article III judge can make that determination.

{N0006244 4}                                                     1

The Customers submitted timely Customer claims to the Trustee pursuant to the Bankruptcy Court's December 23, 2008 Order Specifying Procedures for Filing, Determination and Adjudication of Claims. The Trustee denied the Customers' claims because the Customers' funds were not held in accounts in their names. The Customers filed timely objections to the Trustee's denial of claims. The Trustee has now moved for an order affirming his denial of claims. The Customers oppose the Trustee's Motion.

Withdrawal of the issues raised by the Motion is mandatory under 28 U.S.C. § 157(d) because resolution of the issues raised in the Motion will necessarily involve substantial interpretation of federal non-bankruptcy law, *i.e*., ERISA and SIPA. *See Picard v. JPMorgan Chase Bank, N.A.*, 454 B.R. 307, 316 (S.D.N.Y. 2011); *Picard v. HSBC Bank PLC*, 450 B.R. 406, 410 (S.D.N.Y. 2011).

Judge Rakoff has already withdrawn the reference to resolve one issue involving the inter-relation between ERISA, the Internal Revenue Code, and SIPA concerning whether mandatory IRA account withdrawals can constitute fraudulent transfers. *See Picard v. Flinn Investments LLC, et. al.*, 2011 WL 5921544, *4 (Nov. 28, 2011) (withdrawing reference to decide "whether provisions of the Internal Revenue Code that heavily tax undistributed portions of IRAs prevent the Trustee from avoiding IRA distributions that would otherwise be taxed"). Clearly, issues involving the integration of SIPA and ERISA fall, as well, within the mandatory withdrawal provisions of 28 U.S.C. § 157(d).

## ARGUMENT

### I. STANDARD FOR MANDATORY WITHDRAWAL

Mandatory withdrawal of the reference from a bankruptcy court is governed by 28 U.S.C. § 157(d), which provides, in relevant part:

{N0006244 4}                                                         2

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The basic principles governing withdrawal of the reference are well established. Withdrawal is mandatory pursuant to Section 157(d) "'where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding.'" *JPMorgan Chase Bank,* 454 B.R. at 312 (quoting *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)). "Consideration is 'substantial and material' when the case requires the bankruptcy judge to make a 'significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.'" *Id.* (quoting *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 WL 2711101, *2 (S.D.N.Y. Nov. 23, 2004)); *accord HSBC Bank PLC*, 450 B.R. at 409 (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)) (recognizing that "a litigant can *mandate* withdrawal of the bankruptcy reference where the movant shows that, absent the withdrawal, the bankruptcy judge would be obliged 'to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.'")

The purpose of §157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code.'" *In re Enron Corp.,* 2004 WL 2711101, at *2 (quoting *Eastern Airlines, Inc. v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)). Issues of non-bankruptcy law raised in the proceeding need not be "unsettled." *In re McCrory Corp.*, 160 B.R. 502, 505 (S.D.N.Y. 1993). Rather, it is adequate if the claims asserted merely involve "'substantial and material'" issues under non-bankruptcy law. *In re Enron*, 2004 WL 2711101 at

{N0006244 4}    3

*2 (*quoting Shugrue v. Air Line Pilots Ass'n Int'l* (*In re Ionosphere Clubs, Inc.*), 922 F.2d at 995).

Here, in fact, the issues are matters of first impression. "Where matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met." *Chemtura Corp. v. U.S.*, 2010 WL 1379752, *1 (S.D.N.Y. March 26, 2010) (citations omitted).

## II.   MANDATORY WITHDRAWAL IS APPROPRIATE WITH RESPECT TO THE ISSUES RAISED IN THE MOTION

The Motion raises issues requiring significant and novel interpretation of SIPA and ERISA, which require withdrawal of the reference.

### A.   THE MOTION REQUIRES SUBSTANTIAL CONSIDERATION OF SIPA

Issues involving substantial interpretation of SIPA involve substantial consideration of "other laws of the United States regulating organizations or activities affecting interstate commerce" and thus meet the requirement for mandatory withdrawal pursuant to Section 157(d). As Judge Rakoff wrote:

> [W]hile it is certainly true that SIPA liquidation proceedings may be brought in the bankruptcy court and that SIPA incorporates provisions of title 11 to the extent that they are consistent with SIPA, SIPA expressly provides that it shall be considered an amendment to, and section of, the Securities Exchange Act of 1934, and for this reason is codified in Title 15 (where securities laws are placed), rather than in Title 11 (where bankruptcy laws are placed). *See* 15 U.S.C. § 78bbb ("Except as otherwise provided in this chapter, the provisions of the Securities Exchange Act of 1934 ... apply as if this chapter constituted an amendment to, and was included as a section of, such Act."). The reason for this language and placement is that SIPA is, first and foremost, concerned with the protection of securities investors (as its very title states), whether in or outside the bankruptcy context. **A substantial issue under SIPA is therefore, almost by definition, an issue 'the resolution of [which] requires consideration of both title 11 and other laws of the United States.'**

{N0006244 4}                                                         4

*HSBC Bank PLC*, 450 B.R. at 410 (quoting 28 U.S.C. 157(d)) (emphasis added); *accord JPMorgan Chase Bank, N.A.*, 454 B.R. at 316 (rejecting Trustee's argument that SIPA is a bankruptcy statute and, therefore, its interpretation does not require mandatory withdrawal pursuant to Section 157(d)).

The principle legal issue in the Motion is the interpretation of the statutory definition of the term "customer" under SIPA, a statute that is part of the federal securities law. The Trustee relies on the fact that the Customers did not have accounts in their own names with BLMIS as the basis for denial of their customer claims. The Trustee's interpretation of "customer," however, is inconsistent with the plain language of SIPA, which contains no limitation on "customer" status to persons who have accounts in their own names. *See* 15 U.S.C. § 78lll(2)("The term "customer" includes . . . any person who has deposited cash with the debtor for the purpose of purchasing securities."); *see also, Rosenman Family, LLC v. Picard,* 401 B.R. 629, 635 (Bankr. S.D.N.Y. 2009) ("the mere act of entrusting . . . cash to the debtor for the purpose of effecting securities transactions . . . triggers customer status. . ."); *SEC v. Ambassador Church Financial Devel. Group, Inc.,* 679 F. 2d 608, 614 (6th Cir. 1982); *Ahammed v. SIPC (In re Primeline Sec. Corp.),* 295 F. 3d 1100, 1107 (10th Cir. 2002) ("SIPA does . . . protect claimants who try to attempt to invest through their brokerage firm but are defrauded by dishonest brokers  . . . . If a claimant intended to have the brokerage purchase securities on the claimant's behalf and reasonably followed the broker's instructions regarding payment, the claimant is a 'customer' under SIPA even if the brokerage or its agents misappropriate the funds"); *Miller v. DeQuine (In re Stratton Oakmont, Inc.),* 2003 WL 22698876 at *3 (S.D.N.Y. Nov. 14, 2003) ("Stratton Oakmont's conversion of Claimants' property makes the customers within the meaning of SIPA.").

The Trustee's interpretation is also inconsistent with non-bankruptcy law recognizing that funds need not be *directly* delivered to the broker-dealer by the customer for the customer to be considered a customer under SIPA. *See e.g.*, *In re Primeline Sec. Corp.*, 295 F.3d at 1107.

The Trustee's argument overlooks the critical inquiry determinative of customer status: whether the Customers deposited money with BLMIS for the purpose of purchasing securities. *See SIPC v. Wise (In re Stalvey & Assoc.)*, 750 F.2d 464, 469 (5th Cir. 1985) (quoting *SEC v. Kenneth Bove & Co.*, 378 F. Supp. 697, 700 (S.D.N.Y. 1974)) (recognizing that "'[t]o have a protected 'net equity' claim under the Act as a 'customer', the claimant must have *entrusted* his securities to the debtor in liquidation.") (emphasis in original). Notably, the statutory definition does not require that an investor have its own account with the broker dealer to qualify as a "customer." Surely, if Congress had intended to limit "customer" status to investors who had accounts in their own names, Congress could have defined "customer" as an account holder. Clearly, Congress did not do so. 15 U.S.C. § 78lll(2). The Trustee is imposing a limitation on customer status under SIPA which does not exist in the statute.

Moreover, if the Court were to look beyond the plain words of the statute, the Trustee's interpretation of "customer" is inconsistent with SIPA's legislative purpose. SIPA is a remedial statute enacted to "promot[e] investor confidence and provid[e] protection to investors." *New Times I*, 371 F.3d 68, 84 (2d Cir. 2004). As such, it is to be interpreted broadly to fulfill its remedial purpose. *See In re First State Securities Corp.*, 34 B.R. 492, 496 (Bankr. S. D. Fla. 1983) (recognizing that, as a remedial statute, SIPA should be interpreted liberally to effectuate its purpose of protecting insolvent brokers' customers.) Moreover, under ERISA, the Customers were required to invest through ERISA-qualifying plans, rather than in their own names. By

{N0006244 4}                                    6

failing to recognize the Customers as "customers," the Trustee has acted contrary to SIPA and advocated an interpretation of SIPA that is inconsistent with the statute's remedial purpose.

Because critical issues requiring substantial interpretation of SIPA and ERISA exist, withdrawal of the reference is mandatory. *See HSBC Bank PLC*, 450 B.R. at 410; *see also JPMorgan Chase Bank, N.A.*, 454 B.R. at 316.

### B. THE MOTION REQUIRES SUBSTANTIAL CONSIDERATION OF ERISA AND ITS INTEGRATION WITH SIPA

Determination of Claimants' customer claims will also require substantial consideration of other federal non-bankruptcy law, primarily ERISA. First, ERISA's requirement that, subject to certain exceptions, all assets of an employee-benefit plan be held in trust by one or more trustees (*see* 29 U.S.C. § 1109) necessarily compels the Customers' to have invested their funds through ERISA plans. Yet, the Trustee has used that fact to deny the Customers' claims. The Trustee's narrow interpretation of "customer" limited only to investors who maintained accounts in their own name cannot be squared with ERISA's requirement that funds be maintained in a trust. Resolution of the issue requires a determination of how to integrate both SIPA and ERISA and only an Article III judge can make that determination.

Finally, pursuant to ERISA, BLMIS held the pension plans' funds in trust for, *inter alia*, the Customers. BLMIS was, therefore, an ERISA fiduciary with respect to the individual Customers. ERISA dictates that plan assets must be held in trust by the plans' trustees. *See* 29 U.S.C. § 1103. The plan trustees, acting on behalf of the individual Customers, entrusted the assets of the plans to BLMIS to purchase securities for the benefit of the individual Customers. Those assets were impressed with a trust and, as such, the assets did not lose their status as ERISA plan assets when they were placed with BLMIS. BLMIS exercised authority and control over the management and disposition of those assets. Therefore, as a result of BLMIS'

{N0006244 4}                                7

authority and control over plan assets, BLMIS owed fiduciary duties to the Customers, like any other ERISA plan administrator or trustee. *See* 29 U.S.C. § 1102(c)(3); *see also* 29 U.S.C. §1002(21)(A). The position taken by the Trustee that Customers had no relationship with BLMIS is inconsistent with the fiduciary obligations that BLMIS assumed.

## CONCLUSION

For the reasons stated herein, the Customers respectfully request that the Court withdraw the reference on the Motion.

January 17, 2012

**BECKER & POLIAKOFF LLP**

By:  /s/ Helen Davis Chaitman
45 Broadway
New York, NY 10006
(212) 599-3322
*Attorneys for J.X. Reynolds & Co. Deferred Profit Sharing Plan*, *Jacqueline Green Rollover Account, and Wayne D. Green Rollover Account*