Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

Hearing Date: March 15, 2012
Hearing Time: 10:00 A.M. EST

Objection Deadline: March 8, 2012
Time: 4:00 P.M. EST

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
And Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**EIGHTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
JUNE 1, 2011 THROUGH SEPTEMBER 30, 2011**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.    BACKGROUND ..................................................................................... 5

    A.    The SIPA Liquidation ................................................................ 5

    B.    The Trustee, Counsel, and Consultants.................................... 6

    C.    Prior Compensation Orders...................................................... 8

III.    SUMMARY OF SERVICES .................................................................. 13

    A.    Processing Customer Claims .................................................. 13

    B.    The Recovery and Return of Customer Property.................... 15

        i.    Avoidance actions, procedural orders to ensure efficient litigation thereof, and settlements. ................................ 15

        ii.    The allocation and distribution of Customer Property............................ 18

IV.    DETAILED DESCRIPTION OF SERVICES........................................ 19

    A.    MATTER 01 ............................................................................. 20

        i.    Task Code 01: Trustee Investigation .................................. 20

        ii.    Task Code 02: Bankruptcy Court Litigation........................... 21

        iii.    Task Code 03: Feeder Funds.......................................... 22

        iv.    Task Code 04: Asset Research and Sale ................................ 22

        v.    Task Code 05: Internal Meetings with Staff ........................... 22

        vi.    Task Code 07: Billing ...................................................... 23

        vii.    Task Code 08: Case Administration ..................................... 23

        viii.    Task Code 09: Banks ..................................................... 23

        ix.    Task Code 10: Court Appearances ...................................... 24

        x.    Task Code 11: Press Inquiries and Responses........................ 24

        xi.    Task Code 12: Document Review ........................................ 24

        xii.    Task Code 13 Discovery: Depositions and Document Productions by the Trustee.......................... 24

        xiii.    Task Code 14: International.............................................. 25

        xiv.    Task Code 15: Charities.................................................. 26

        xv.    Task Code 17: Access – Luxembourg ................................. 26

        xvi.    Task Code 19: Non-Bankruptcy Litigation........................... 26

        xvii.    Task Code 20: Governmental Agencies ............................... 26

# TABLE OF CONTENTS
(continued)

**Page**

xviii. Task Code 21: Allocation ................................................................ 27

B. MATTER 03 – CHAIS ................................................................ 27

C. MATTER 04 – MERKIN ................................................................ 28

D. MATTER 05 – CUSTOMER CLAIMS ................................................................ 28

E. MATTER 06 – VIZCAYA ................................................................ 29

F. MATTER 07 – MADOFF FAMILY ................................................................ 30

G. MATTER 08 – NORMAN LEVY ................................................................ 31

H. MATTER 09 – FAIRFIELD GREENWICH ................................................................ 32

I. MATTER 10 – HARLEY ................................................................ 33

J. MATTER 11 – COHMAD SECURITIES CORPORATION ................................................................ 33

K. MATTER 12 – PICOWER ................................................................ 34

L. MATTER 13 – KINGATE ................................................................ 35

M. MATTER 18 – THYBO ................................................................ 36

N. MATTER 19 – RUTH MADOFF ................................................................ 36

O. MATTER 20 – CARL SHAPIRO ................................................................ 37

P. MATTER 21 – AVOIDANCE ACTION LITIGATION ................................................................ 37

Q. MATTER 26 – RICHARD STAHL ................................................................ 38

R. MATTER 27 – JP MORGAN CHASE ................................................................ 39

S. MATTER 28 - WESTPORT ................................................................ 40

T. MATTER 29 – RYE/TREMONT ................................................................ 40

U. MATTER 30 – HSBC ................................................................ 41

V. MATTER 31 – KATZ/WILPON ................................................................ 42

W. MATTER 32 – UBS/LIF ................................................................ 43

X. MATTER 33 – NOMURA BANK INTERNATIONAL PLC ................................................................ 44

Y. MATTER 34 - CITIBANK ................................................................ 45

Z. MATTER 35 - NATIXIS ................................................................ 45

AA. MATTER 36 – MERRILL LYNCH ................................................................ 46

BB. MATTER 37 – ABN AMRO ................................................................ 46

CC. MATTER 38 – BANCO BILBAO ................................................................ 47

DD. MATTER 39 - FORTIS ................................................................ 47

# TABLE OF CONTENTS
(continued)

|  |  | **Page** |
|---|---|---|
| EE. | MATTER 40 – MEDICI ENTERPRISE | 48 |
| FF. | MATTER 41 - WHITECHAPEL | 49 |
| GG. | MATTER 42 - EQUITY TRADING | 49 |
| HH. | MATTER 43 – DEFENDER | 50 |
| II. | MATTER 44 – MACCABEE | 50 |
| JJ. | MATTER 45 – LEVEY | 51 |
| KK. | MATTER 46 – GLANTZ | 51 |
| LL. | MATTER 47 – BONVENTRE | 52 |
| MM. | MATTER 48 – BONGIORNO | 53 |
| NN. | MATTER 49 – GREENBERGER | 53 |
| OO. | MATTER 50 – PITZ | 54 |
| PP. | MATTER 51 – CRUPI | 55 |
| QQ. | MATTER 52 – DONALD FRIEDMAN | 55 |
| RR. | MATTER 53 – MAGNIFY | 56 |
| SS. | MATTER 54 – MENDELOW | 57 |
| TT. | MATTER 55 – KUGEL | 58 |
| UU. | MATTER 56 – LIPKIN | 58 |
| VV. | MATTER 57 – PEREZ/O'HARA | 59 |
| WW. | MATTER 58 – PJ ADMINISTRATORS | 59 |
| XX. | MATTER 59 – STANLEY SHAPIRO | 60 |
| YY. | MATTER 60 – AVELLINO & BIENES | 61 |
| ZZ. | MATTER 61 – MAXAM | 62 |
| V. | COMPENSATION REQUESTED | 64 |
| VI. | THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED | 68 |
| CONCLUSION | | 69 |

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, "Debtor"), respectfully submits this eighth application (the "Application") on behalf of the Trustee and itself for an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078 and 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing June 1, 2011 through and including September 30, 2011 (the "Compensation Period"), and (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period; and in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The work completed by the Trustee and B&H during this Compensation Period yielded important results for BLMIS customers and the liquidation. The Trustee made an initial distribution from his recoveries to BLMIS customers of over $325 million relating to 1,232

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

BLMIS accounts.  The Trustee entered into settlements with two of the largest feeder funds of

BLMIS, amongst other settlements.  This Court issued a decision upholding the Trustee's

definition of "customer" under SIPA.  And importantly, the Second Circuit Court of Appeals

affirmed the Bankruptcy Court's decision that upheld the Trustee's "Net Investment Method" for

determining the value of net equity claims in this liquidation and blessed the manner in which the

Trustee has unwound Madoff's fraud.

2.      As the District Court recognized, the Trustee "has worked relentlessly over nearly

three years to bring assets that passed through BMIS back into the customer fund, in order to

restore nearly $20 billion in customer losses."  *Picard v. J.P. Morgan Chase & Co.*, No. 11 Civ.

00913, 2011 WL 5170434, at *1 (S.D.N.Y. Nov. 1, 2011) (CM).  Having successfully recovered

or entered into agreements to recover over 50% of the principal lost in the Ponzi scheme thus far,

the Trustee's efforts have been invaluable to all customers of BLMIS.

3.      No administration costs, including the compensation of the Trustee and his

counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS

customers.  Because the percentage commission schedule for trustees found in section 326(a) of

the Bankruptcy Code is not applicable in a SIPA liquidation, *see* section 78eee(b)(5)(C) of SIPA,

no applications filed by the Trustee have or will ever include a fee request equal to three (3%)

percent (or any other percentage) of the total amount of recoveries made by the Trustee for the

benefit of customers of BLMIS.  Rather, the fees and expenses of the Trustee and of all counsel

to the Trustee (including, but not limited to, B&H, various international special counsel retained

by the Trustee (collectively referred to herein as "International Counsel") as described in ¶ 117

of the Sixth Interim Report for the Period Ending September 30, 2011 (ECF No. 4529), and

various special counsel to the Trustee (collectively referred to herein as "Counsel"), including

Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and Osborne & Osborne, P.A. (the "Osborne Firm")), and consultants are paid from administrative advances from the Securities Investor Protection Corporation ("SIPC"), as are all administrative costs incurred by the Trustee. The Court affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth App. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee and his Counsel's fees and expenses are chargeable to the general estate and not to Customer Property, the payment of fees and expenses to the Trustee and any of his Counsel has absolutely no impact on recoveries that the Trustee has obtained and will obtain and that will be allocated to the fund of Customer Property for *pro rata* distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      SIPC plays a specific role regarding compensation in a liquidation proceeding such as this one, where the general estate is insufficient to pay trustee compensation and SIPC is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2). This Application, as with all other compensation applications, has been carefully reviewed by SIPC, which includes an analysis of the time records and services rendered. Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding the billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, as described at ¶ 197, *infra*, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

3

6.       During the hearing on the Seventh Interim Fee Applications, the Court characterized SIPC's handling of the fee review process:

> I have reviewed the type of review that SIPC has engaged in, in order to come to its opinion and recommendation that the fees are reasonable, appropriate, that the discounts based upon some of their insistence have been taken, and the standards they've used in making that determination are pretty much the standards that are applicable here in the Southern District or elsewhere under Title 11.  That is the rules, statutes, and considerations as to the way fees are looked at in an insolvency proceeding, and I am quite satisfied that their review is and has been appropriate, so that I'm not in a position to say that the review is such that it challenges the outcome.

Seventh App. Hr'g Tr. 25-26, Oct. 19, 2011.

7.       No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008.  Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by initiating litigations and settlement negotiations for the return of Customer Property, including significant settlements and recoveries that will total approximately $8.7 billion, to be distributed by the Trustee.[2]  Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his pursuit of Customer Property.  The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

8.       As this Court has recognized, "With respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest most complex sets of litigation that have come down the pike.  It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for

---

[2] As of the date of the hearing on this Application, the Trustee has recovered or entered into agreements to recover over $9 billion.

any law firm or any organization to deal with." Sixth Fee App. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

9.    On December 11, 2008, Madoff was arrested by federal agents and criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"), in a case captioned *United States v. Madoff*, No. 08 MJ 2735 (the "Criminal Case").[3]

10.    Also on December 11, 2008 (the "Filing Date" under SIPA), the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff, et al.*, No. 08 Civ. 10791 (S.D.N.Y.) (LLS) (the "Civil Case").  The complaint alleged that the defendants engaged in fraud through the investment advisor ("IA") activities of BLMIS.

11.    On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the Civil Case with an application filed by SIPC.  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that the Debtor was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

12.    On that date, the District Court entered the Protective Decree (ECF No. 4), to which BLMIS consented, which, in pertinent part:

---

[3] On March 10, 2009, the Criminal Case was transferred to Judge Denny Chin and assigned a new docket number, No. 09 Cr. 213 (DC).

5

> (a)     appointed the Trustee to liquidate the business of the Debtor pursuant to section 78eee(b)(3) of SIPA and fixed the Trustee's bond;
>
> (b)     appointed B&H as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and
>
> (c)     removed the case to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court" or "Court") pursuant to section 78eee(b)(4) of SIPA.

13.     By order dated December 23, 2008, this Court approved the Trustee's bond. (ECF No. 11).

14.     On February 4, 2009, after a noticed hearing, the Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee (ECF No. 69), finding that the Trustee and B&H are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a), and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).  Thus, the Trustee and B&H are qualified to serve in this proceeding.

## B.     THE TRUSTEE, COUNSEL, AND CONSULTANTS

15.     The Trustee is a member of B&H.[4]  He practices principally in the areas of corporate reorganizations, bankruptcy, and insolvency.  He was also a contributing author to Collier on Bankruptcy, 15th Edition Revised.

16.     The Trustee was admitted to practice before the Court in 1982.  He served as the first United States Trustee for the Southern District of New York in a pilot program from October 1, 1979, the effective date of the Bankruptcy Code, through May 15, 1982.  Prior to his tenure as United States Trustee, Mr. Picard was Assistant General Counsel with the SEC in

---

[4] The Trustee pays the full amount of any interim compensation and disbursements awarded to him to B&H.  *See* Third App. Hr'g Tr. 85.

Washington, D.C. for three and a half years during which his responsibilities included, among other things, disclosure and enforcement matters and bankruptcy reorganizations. Before becoming Assistant General Counsel, he spent approximately four years in various legal positions in the SEC's then-Division of Corporate Regulation, where his responsibilities primarily involved bankruptcy reorganizations. Prior thereto, Mr. Picard spent more than six years working in the securities industry.

17.     Mr. Picard has previously served as trustee in the following ten SIPA liquidations: *Jay W. Kaufmann & Company*, No. TP 84-70064A (Bankr. S.D.N.Y.) (BRL); *Norbay Sec., Inc.*, No. 186-0174-353 (Bankr. E.D.N.Y.); *Investors Center Inc.*, No 089-0017-21 (Bankr. E.D.N.Y.); *Faitos & Co., Inc.*, No. 191-1085-260 (Bankr. E.D.N.Y.); *U.S. Equity Management Corp.*, No. 95/1284 (Bankr. S.D.N.Y.) (CB); *Euro-Atlantic Securities, Inc.*, No. 98/9304A (Bankr. S.D.N.Y.) (BRL); *Hanover, Sterling & Co., Ltd.*, No. 96/8396A (Bankr. S.D.N.Y.) (REG); *Klein Maus & Shire, Inc.*, No. 00/8193A (Bankr. S.D.N.Y.) (AJG); *Montrose Capital Management Ltd.*, No. 01/8170A (Bankr. S.D.N.Y.) (CB); and *Park South Sec., LLC*, No. 03-8024A (Bankr. S.D.N.Y.) (RDD). He has also served as counsel to SIPC as trustee in two liquidation proceedings.

18.     In rendering professional services to the Trustee in this SIPA proceeding, B&H's legal team is composed of professionals with extensive experience in, among other fields, bankruptcy, securities, tax, corporate law, and litigation, permitting the Trustee to conduct this liquidation efficiently. B&H professionals have worked closely with the Trustee and his other professionals to coordinate assignments in order to avoid duplication of effort, which is beneficial to the customers, creditors, and other interested parties of BLMIS.

7

19.     The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his Counsel, has undertaken a comprehensive investigation of all of the affairs of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of Counsel but also the services of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent, FTI Consulting ("FTI"), and several investigative and industry consultants (collectively referred to herein as "Consultants").

## C.     PRIOR COMPENSATION ORDERS

20.     On August 6, 2009, the Court entered an order approving both the Trustee and B&H's First Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from December 15, 2009 through April 30, 2009.  (ECF No. 363).  The Court awarded the Trustee an interim allowance of $607,383.00 for professional services rendered and $45.00 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $151,845.75 in fees incurred by the Trustee during that period was held back and disbursement remains subject to approval by the Court.  The Court awarded B&H an interim allowance of $11,729,855.86 for professional services rendered and $274,203.03 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $2,932,463.97 in fees incurred by B&H during that period was held back and disbursement remains subject to approval by the Court.  At that time, the holdback amount was twenty percent (20%) of fees incurred by the Trustee and B&H.

21.     On December 17, 2009, the Court entered an order approving both the Trustee and B&H's Second Interim Applications for Allowance of Interim Compensation for Services

Rendered and Reimbursement of Actual and Necessary Expenses Incurred from May 1, 2009 through September 30, 2009. (ECF No. 1078). The Court awarded the Trustee an interim allowance of $668,484.00 for professional services rendered and $921.25 as reimbursement for actual and necessary expenses that the Trustee incurred during that period. An additional $167,121.00 in fees incurred by the Trustee during that period was held back and disbursement remains subject to approval by the Court. The Court awarded B&H an interim allowance of $17,023,281.48 for professional services rendered and $280,681.62 as reimbursement for actual and necessary expenses B&H incurred during that period. An additional $4,255,820.37 in fees incurred by B&H during that period was held back and disbursement remains subject to approval by the Court.

22.     In that same order, the Court approved a reduction in the holdback from twenty percent (20%) to fifteen percent (15%) of fees incurred. As such, the Court authorized the Trustee to disburse previously deferred funds equal to 5% of total fees requested to date, which amounted to $79,741.69 for the Trustee and $1,797,074.52 for B&H.

23.     On May 6, 2010, the Court entered an order approving both the Trustee and B&H's Third Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2009 through January 31, 2010. (ECF No. 2251). The Court awarded the Trustee an interim allowance of $570,852.56 for professional services rendered and $77.66 as reimbursement for actual and necessary expenses that the Trustee incurred during that period. An additional $100,739.69 in fees incurred by the Trustee during that period was held back and disbursement remains subject to approval by the Court. The Court awarded B&H an interim allowance of $20,301,472.46 for professional services rendered and $390,204.89 as reimbursement for actual

and necessary expenses B&H incurred during that period. An additional $3,582,612.79 in fees incurred by B&H during that period was held back and disbursement remains subject to approval by the Court.

24.     On September 14, 2010, the Court entered an order approving both the Trustee and B&H's Fourth Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2010 through May 31, 2010. (ECF No. 2981). The Court awarded the Trustee an interim allowance of $511,021.92 for professional services rendered and $39.63 as reimbursement for actual and necessary expenses that the Trustee incurred during that period. An additional $90,180.33 in fees incurred by the Trustee during that period was held back and disbursement remains subject to approval by the Court. The Court awarded B&H an interim allowance of $28,884,304.29 for professional services rendered and $731,371.19 as reimbursement for actual and necessary expenses B&H incurred during that period. An additional $5,097,230.16 in fees incurred by B&H during that period was held back and disbursement remains subject to approval by the Court.

25.     On December 14, 2010, the Court entered an order approving both the Trustee and B&H's Fifth Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from June 1, 2010 through September 30, 2010. (ECF No. 3207). The Court awarded the Trustee an interim allowance of $581,960.34 for professional services rendered and $954.41 as reimbursement for actual and necessary expenses that the Trustee incurred during that period. An additional $102,698.91 in fees incurred by the Trustee during that period was held back and disbursement remains subject to approval by the Court. The Court awarded B&H an interim allowance of

$38,522,476.35 for professional services rendered and $851,332.34 as reimbursement for actual and necessary expenses B&H incurred during that period. An additional $5,778,371.44 in fees incurred by B&H during that period was held back and disbursement remains subject to approval by the Court.

26.    In that same order, the Court approved a release from the holdback of $100,000.00 to the Trustee and $3,400,000.00 to B&H. As such, the Court authorized the Trustee to disburse these previously deferred funds.

27.    On June 1, 2011, the Court entered an order approving both the Trustee and B&H's Sixth Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2010 through January 31, 2011. (ECF No. 4125). The Court awarded the Trustee an interim allowance of $713,799.00 for professional services rendered and $31.50 as reimbursement for actual and necessary expenses that the Trustee incurred during that period. An additional $107,069.87 in fees incurred by the Trustee during that period was held back and disbursement remains subject to approval by the Court. The Court awarded B&H an interim allowance of $43,177,049.10 for professional services rendered and $1,103,196.25 as reimbursement for actual and necessary expenses B&H incurred during that period. An additional $6,476,557.36 in fees incurred by B&H during that period was held back and disbursement remains subject to approval by the Court.

28.    In that same order, the Court approved a reduction in the holdback from fifteen percent (15%) to ten percent (10%) of fees incurred. As such, the Court authorized the Trustee to disburse previously deferred funds equal to 5% of total fees requested to date, which amounted to $113,304.32 for the Trustee and $5,375,338.62 for B&H.

29.    Objections were filed to each of the six interim fee applications.  (ECF Nos. 351, 1055, 2233, 2943, 3308, 4088).  Thereafter, motions were filed for leave to appeal the Court's Orders granting the Trustee and B&H's First, Second, Third, Fifth and Sixth Interim Fee Applications and overruling the related objections.  The District Court denied the motions for leave to appeal the First, Third, and Fifth Orders.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. M-47, 2010 U.S. Dist. LEXIS 3037 (S.D.N.Y. Jan. 11, 2010) (GBD); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. M-47, 2010 U.S. Dist. LEXIS 81492 (S.D.N.Y. Aug. 6, 2010) (SAS); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 11 Misc. 285, 2011 U.S. Dist. LEXIS 139812 (S.D.N.Y. Dec. 6, 2011) (RPP).  The motions for leave to appeal the Second and Sixth Orders remain pending before the District Court.  Nos. M47-b and 11 Misc. 265 (DAB) respectively.

30.    On October 19, 2011, the Court entered an order approving both the Trustee and B&H's Seventh Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2011 through September 30, 2011.  (ECF No. 4471).  The Court awarded the Trustee an interim allowance of $539,370.90 for professional services rendered and $479.80 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $59,930.10 in fees incurred by the Trustee during that period was held back and disbursement remains subject to approval by the Court.  The Court awarded B&H an interim allowance of $40,254,828.00 for professional services rendered and $4,472,758.65 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $1,270,956.31 in fees incurred by B&H during that period was held back and disbursement remains subject to approval by the Court.

31.     No objections were filed to the Seventh Interim Fee Applications.

### III.    SUMMARY OF SERVICES

32.     A SIPA proceeding contemplates the processing of customer claims and the orderly liquidation of the business of a broker-dealer, with the return of Customer Property to the failed brokerage's customers.    Accordingly, the Trustee's and B&H's services, which are highlighted here and summarized in greater detail below, are comprised of the specific, critical tasks accomplished in aim of that objective.

### A.    PROCESSING CUSTOMER CLAIMS

33.     From the very beginning of this proceeding, the Trustee and B&H, together with AlixPartners and FTI, have been processing the customer claims submitted to him.  By statute, the Trustee must look at all the books and records of BLMIS in order to determine and evaluate each customer claim.  Given the duration and complexity of the fraud engaged in by Madoff, each account has a unique and often extended history, frequently involving multiple transfers between accounts.  Each claim, therefore, requires the Trustee to engage in extensive forensic analysis in order to reach an ultimate determination of each customer claim.

34.     The Trustee received 16,519 claims filed by a wide variety of individuals and entities who were victims of Madoff's fraud.  These claimants include customers who had accounts with BLMIS, in addition to thousands of individuals or entities who invested indirectly in BLMIS through various feeder funds and other entities.

35.     As of September 30, 2011, the date on which the Compensation Period ended, the Trustee determined or deemed determined all but two of them.  Of those determined, the Trustee allowed 2,419 claims and committed to pay approximately $795 million in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.  As of

September 30, 2011, the Trustee had allowed over $6.9 billion in customer claims. The Trustee's efforts in satisfying the remaining claims are ongoing.

36.     In an effort to accelerate SIPA protection for individual victims of BLMIS who were suffering hardship, the Trustee and B&H implemented a Hardship Program. The first phase of the Hardship Program, which began in December 2008, accelerated the determination of claims and the receipt of SIPC protection up to $500,000 for BLMIS customers. The Trustee received 394 hardship applications during this phase of the Program. The Trustee obtained advances from SIPC and issued 117 checks to applicants with allowed claims. The Trustee also worked in good faith with approved applicants to reconcile any disputed portion of their claims. Additionally, the Trustee assessed the information provided by the 394 applicants and, in the exercise of his discretion, decided not to commence avoidance actions against 249 applicants.

37.     The Trustee began a second phase of the Hardship Program in December 2010, in which the Trustee communicated to defendants in adversary proceedings that while the law requires the pursuit of avoidance actions to recover Customer Property, he will not pursue actions against BLMIS accountholders suffering proven hardship. As of September 30, 2011, the Trustee had received 342 Hardship Program applications from avoidance action defendants relating to 219 adversary proceedings. After reviewing the facts and circumstances presented in these applications and, in many cases, requesting additional verifying information, the Trustee has dismissed or is in the process of dismissing 129 avoidance actions against the related defendants. Receipt of Hardship Program applications and the Trustee's consideration of those applications continues. The Trustee has extended the time for applicants to answer or otherwise respond to avoidance action complaints while their hardship applications are pending. The

Trustee urges customers to continue using the Hardship Program Hotline and the Hardship Program if they believe they qualify.

**B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY**

   **i.    Avoidance actions, procedural orders to ensure efficient litigation thereof, and settlements.**

38.    The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow up activities to enforce the Trustee's rights to the return of Customer Property.  As a result of the investigative efforts of the Trustee, he initiated litigation against feeder funds and certain individuals, many of whom are well known to the public through the press and other media.

39.    The Trustee, through Counsel has spent considerable time prosecuting 1,031 pending actions seeking to recover over $101 billion in funds from various feeders funds, banks, BLMIS customers, and Madoff family members and friends.

40.    The Trustee has also filed several motions before this Court that will govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures will ensure consistency and transparency, as well as compliance with the Bankruptcy Code and SIPA.

41.    For example, on July 25, 2011, the Trustee and B&H moved for an Order Setting Time to Respond to the Summons and Complaint for Foreign Defendants in Adversary Proceedings in order to facilitate the procedural aspects of adversary proceedings involving defendants located outside the United States.  (ECF No. 4268).  Once the Trustee effectuates

service on those foreign defendants, the defendants have thirty days from that date to answer the complaints. The Court entered the Order on August 9, 2011. (ECF No. 4295).

42.    On August 5, 2011, the Trustee and B&H moved for a Report and Recommendation to the District Court for the Appointment of Special Discovery Masters. (ECF No. 4290). The Trustee sought an expansion of access to Data Room 1 to all adversarial proceeding defendants, the creation of Data Room 2 for documents produced by third parties, and the appointment of two Masters to assist in resolving the numerous discovery disputes that will arise in the adversary proceedings. A hearing on the Motion was held on December 21, 2011. At the hearing, the Judge requested that the Trustee bifurcate the requested relief into separate motions, resolve any outstanding objections, and re-submit the papers. On January 4, the Trustee filed a motion on presentment to expand access to Data Room 1 to all defendants. (ECF No. 4613). That motion was granted on January 12, 2012. (ECF No. 4624). The Trustee will submit additional motions seeking the creation of Data Room 2 and the appointment of a special discovery advisor shortly.

43.    Without the need for protracted litigation, the Trustee succeeded in recovering billions of dollars by virtue of settlements with a number of parties. During this Compensation Period, the Trustee settled fourteen cases for over $78.6 million.

44.    In addition, on May 2, 2011, this Court approved a settlement with Mount Capital Fund, a BLMIS Feeder Fund, which is in liquidation in the BVI. The Trustee accepted the liquidator's offer to return $43.5 million to the fund of Customer Property in exchange for the allowance of its claim for over $251 million.

45.    On June 10, 2011, this Court approved a settlement agreement between the Trustee and the Joint Liquidators for Fairfield Sentry Limited, Fairfield Sigma Limited, and

Fairfield Lambda Limited (collectively, the "Fairfield Funds"). *Picard v. Fairfield Sentry et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (BRL). On July 13, 2011, the Court entered consent judgments between the Trustee and Fairfield Lambda Limited in the amount of $52.9 million, Fairfield Sentry Limited in the amount of $3.054 billion, and Fairfield Sigma Limited in the amount of $752.3 million.

46.    On July 7, 2011, this Court approved a settlement between the Trustee, Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P. (collectively, the "Greenwich Funds"), wherein this Court entered judgment against Greenwich Sentry, L.P. in an amount over $206 million and against Greenwich Sentry Partners, L.P. in an amount over $5.9 million. *Id.* To implement this settlement agreement, the Court must confirm the plan in the jointly administered Chapter 11 proceeding of Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P. *In re Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P.*, Adv. Pro. No. 10-16229 (Bankr. S.D.N.Y.) (BRL). The plan confirmation hearing was held on December 22, 2011, and the Bankruptcy Court signed an Order confirming the plan.

47.    On September 22, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive associated with Tremont Group Holdings, Inc. in the amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.) (BRL). Following entry of this Court's Order Granting Trustee's Motion for Entry of Order Approving Agreement, certain objectors filed an appeal of the settlement on September 30, 2011, which is pending before United States District Judge George B. Daniels. *See* No. 11 Civ. 7330 (S.D.N.Y.) (GBD).

48.    Thus, the Trustee entered into settlement agreements during this Compensation Period that, once approved by this Court, will bring over $1.1 billion into the Customer Fund.

49.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that could result in additional recoveries for the benefit of customers without the delay and expense of litigation.

### ii.    The allocation and distribution of Customer Property.

50.    The ultimate purpose of protecting and recovering the fund of Customer Property is to distribute those monies, as SIPA directs, to BLMIS customers and creditors with allowed claims.

51.    On May 4, 2011, the Trustee sought entry of an order approving an initial allocation of property to the Customer Fund, and authorizing an interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the filing date exceeded the statutory SIPA protection limit of $500,000 (the "Allocation Motion").    The Allocation Motion was unopposed, and the Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers on July 12, 2011.

52.    On October 5, 2011, the Trustee distributed to BLMIS customers approximately $325 million—more than the amount initially approved by the Court—relating to 1,232 BLMIS accounts.[5]  Thirty-nine payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been previously fully satisfied.

53.    The allocation and distribution was initial and interim in nature because the Trustee anticipates: (i) recovering additional assets through litigation and settlements, and (ii) resolving the issues on appeal that require reserves.  Indeed, despite having recovered or entered into settlement agreements to recover approximately $8.7 billion, only approximately $325

---

[5] A small number of checks are pending distribution and await the completion of certain documentation.

million was available to the Trustee for distribution. Final resolution of several appeals and disputes will permit the Trustee to reduce the reserves he is required to maintain, which would allow for a greater distribution to customers in the future. As the Trustee has recovered or entered settlement agreements to recover over 50% of the principal lost in Ponzi scheme by customers with net equity claims, a distribution to customers without any reserves would be significant. The Trustee expects to seek authorization for further allocations and distributions upon the recovery of additional funds and the resolution of significant disputes.

## IV.    DETAILED DESCRIPTION OF SERVICES

54.    Given the unprecedented fraud perpetrated by Madoff, the issues involved are complex, the discovery is wide-ranging, and the litigation through BLMIS is hotly contested. All of this requires an enormous effort by the Trustee and his Counsel for the benefit of the victims. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to the internal B&H matter numbers and task codes.

55.    Matter Number 01 is the general matter number used for tasks that effect all actions taken by the Trustee and B&H, and task numbers have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

56.    Matter Numbers 03-62 (with the exception of Matter 05, which relates to customer claims) relate to specific litigation filed by the Trustee and B&H against various individuals, feeder funds, and entities.[6] In each of these matters, the Trustee and B&H attorneys

---

[6] As of June 1, 2011, the Trustee no longer uses Matter Number 02; his activities are reported with B&H. Matter Number 24 – Robert Luria and Matter Number 25 – Amy Luria have been closed and incorporated with Matter Number 21 – Avoidance Actions. Matter Number 30 – Canavan has been closed and opened as Matter Number One, Task Code 19. The reserved and closed matter numbers will no longer be listed in the Application. Matter numbers reserved or closed during prior compensation periods can be found in the respective interim fee applications.

perform several functions, including the following tasks related to the individual actions: conduct legal research; draft internal memoranda; engage in internal meetings with the Trustee's Consultants regarding investigation and litigation strategy; and engage in discussions with counsel for defendant(s). Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during this Compensation Period.

## A.    MATTER 01

57.    This matter categorizes the time spent by the Trustee and B&H and encompasses the below enumerated tasks.

### i.    Task Code 01: Trustee Investigation

58.    This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets. During this Compensation Period, the Trustee and B&H attorneys:

- Initiated, participated in, and monitored international proceedings involving BLMIS.

- Continued the investigation of banks, feeder funds, auditors, insiders, Madoff friends and family members, former BLMIS employees, and all other Madoff-related parties.

- Continued the investigation of Madoff Securities International Limited ("MSIL").

- Coordinated efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), Federal Bureau of Investigation ("FBI"), Financial Industry Regulatory Authority ("FINRA"), SEC, and many other local, federal, and international officials involved in the investigation of Madoff and BLMIS.

- Reviewed copies of records obtained by the FBI and SEC and other information from the USAO and securities regulators.

- Communicated with SIPC, Windels Marx, Young Conaway, AlixPartners, FTI, and various other consultants regarding IA accounts and records of the transactions, business investments, and ventures between the potential insiders and BLMIS, Madoff, and Madoff family members.

- Discussed and conferenced with SIPC, Windels Marx, Young Conaway, International Counsel, and various government entities regarding investigation and litigation strategy.

20

- Prepared requests for discovery and negotiated other discovery-related issues with adversaries.

- Organized and reviewed documents received in response to third party inquiries and subpoenas.

**ii.    Task Code 02: Bankruptcy Court Litigation**

59.     This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.  During this Compensation Period, the Trustee and B&H attorneys:

- Drafted and negotiated the Amended Litigation Protective Order, which was approved on June 6, 2011, after a hearing before the Bankruptcy Court on June 1, 2011.

- Prepared the proposed Order, which was approved on June 14, 2011, regarding the procedures for submitting stipulations extending time to respond to the Trustee's complaints and adjourning pre-trial conferences for all avoidance actions.

- Drafted and revised an opposition to a motion to compel Trustee records, and prepared for and attended June 21, 2011 hearing on motion, which was denied.

- Researched case law in preparation for response to appeals of indirect customer issue decision, entered by the Court on June 28, 2011.

- Drafted briefing and prepared for the hearing held on July 12, 2011 on the motion to allocate recovered funds as Customer Property and distribute unreserved funds to BLMIS customers.

- Drafted motion establishing procedures for the electronic data room and an order modifying the Amended Litigation Protective Order (the "Data Room Motion"), and reviewed objections to the Motion.

- Prepared scheduling motion on ERISA issue.

- Prepared and finalized motion to strike Lawrence Velvel's amicus brief on net equity issue.

21

### iii.    Task Code 03: Feeder Funds

60.     The Trustee has delegated teams of B&H attorneys to identify, investigate, and monitor feeder funds in the U.S. and abroad and bring actions against such funds for the recovery of Customer Property.  Separate matter numbers have been assigned to feeder funds sued by the Trustee, ¶¶ 81-82, 89-93, 99-103, 117-18, 139-41, 143-48, 177-78, 185-88, *infra*.

### iv.    Task Code 04: Asset Research and Sale

61.     This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.  During this Compensation Period, the Trustee and B&H attorneys:

- Liquidated certain loan participations owned by BLMIS.

- Negotiated and resolved the BLMIS leases.

- Drafted motion and obtained court approval for sale of Aston Martin and resolution of issues concerning title transfer.

- Conferred and worked with Windels Marx regarding BLM Air Charter and other issues relating to the airplane.

- Monitored Surge Trading's operation of market-making platform and trading activities, which ceased on August 31, 2011.

### v.    Task Code 05: Internal Meetings with Staff

62.     This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided the duplication of effort.

### vi.    Task Code 07: Billing & Trustee Reports

63.     This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correct any errors in time entries,

write off certain time and expenses as agreed to by B&H, prepare fee applications, respond to

motions for leave to appeal fee orders, prepare trustee reports, and other related tasks.

### vii. Task Code 08: Case Administration

64.     This category relates to time spent assisting the efficient administration of the

case.  During this Compensation Period, the Trustee and B&H attorneys:

- Conducted conflict checks.

- Implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents.

- Created protocols relating to discovery, filings, and external communications.

- Implemented and managed work flows between B&H and Consultants.

- Oversaw administrative aspects of the retention of experts, other professionals, and vendors, and monitored their ongoing activities.

- Maintained case files.

- Calendared and docketed all hearings, return dates, and deadlines in main liquidation proceeding and all other litigations.

- Monitored and tracked dockets of related proceedings.

- Managed and monitored staffing needs.

### viii. Task Code 09: Banks

65.     Primarily as a result of international and domestic feeder fund investigations, the

Trustee commenced investigations of numerous banks and other financial institutions involved

with BLMIS.  Time categorized by this task code relates to the investigations of target banks and

the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and

subpoenas, the review of responses to letters and subpoenas received from such banks and other

third parties, and the preparation of pleadings relating to claims that will be brought against such

banks.  Separate matter numbers have been assigned to banks sued by the Trustee, ¶¶ 79-80, 111-

14, 117-18, 121-38, *infra*.

### ix.    Task Code 10: Court Appearances[7]

66.    This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### x.    Task Code 11: Press Inquiries and Responses

67.    This category relates to time spent by the Trustee and B&H attorneys assisting the Trustee in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### xi.    Task Code 12: Document Review

68.    This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

### xii.    Task Code 13 Discovery: Depositions and Document Productions by the Trustee

69.    This category relates to time spent by the Trustee and B&H attorneys conducting depositions and preparing and responding to discovery requests issued in the ongoing litigations and by various third parties.  During this Compensation Period, the Trustee and B&H attorneys:

- Prepared, reviewed, finalized, and served subpoenas.

- Monitored subpoenas issued and documents produced in response, and followed up regarding deficient document productions.

- Prepared, reviewed, finalized, and served initial disclosures, case management plans, and motions for filing with the Bankruptcy Court to implement case-wide discovery procedures.

---

[7] Many attorneys making court appearances bill their time for appearances to either Task Code 02 – Bankruptcy Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

- Prepared, reviewed, finalized, and served discovery requests.

- Processed, uploaded, and analyzed incoming document productions.

- Responded to discovery requests served on the Trustee by defendants and third parties.

- Addressed the issue of de-designating confidential documents for production.

- Analyzed, tracked, and processed BLMIS data.

- Coordinated with the Trustee's expert witnesses to prepare for trial.

- Researched foreign jurisdiction discovery laws.

- Oversaw work performed by the Trustee's vendors.

**xiii.    Task Code 14: International**

70.    The fraud Madoff perpetrated through BLMIS has many international implications, involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including England, Gibraltar, Austria, Canada, Bermuda, the British Virgin Islands ("BVI"), the Cayman Islands, the Bahamas, Ireland, France, Luxembourg, Switzerland, and Spain. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power. This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery. The investigation is made challenging by the broad array of anti-discovery laws, bank secrecy statutes, and other foreign legislation designed to limit discovery. In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third party actions brought in Europe and the Caribbean.

### xiv.   **Task Code 15: Charities**

71.       This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, sealing and subsequently unsealing complaints filed against charities, and corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts.

### xv.   **Task Code 17: Access – Luxembourg**

72.       This category relates to the monitorship of an action brought in Luxembourg against Access Group, UBS, and the directors of LuxAlpha, a BLMIS feeder fund based in Luxembourg, and conferences with SIPC staff regarding the same.

### xvi.   **Task Code 19: Non-Bankruptcy Litigation**

73.       This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation, as well as time spent on *Picard v. Canavan*, Adv. Pro. No. 10-3200 (Bankr. S.D.N.Y.) (BRL), an adversary proceeding commenced by the Trustee against three BLMIS claimants and the related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay, and a Preliminary Injunction.  During the last compensation period, B&H attorneys adjourned the pre-trial conference in *Canavan* and the hearing on the preliminary injunction and cross motion, which is currently scheduled to be held on February 29, 2012.

### xvii.   **Task Code 20: Governmental Agencies**

74.       This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the U.S. Government Accountability Office, the Internal Revenue Service, various congressional Representatives, and other government agencies.

### xviii.   **Task Code 21: Allocation**

75.       This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property after the Court granted the Allocation

Motion, discussed *supra* ¶¶ 50-53.   The Trustee and B&H attorneys responded to customer inquiries, ensured the maintenance of reserves pending the resolution of pending appeals, coordinated the allocation of settlement recoveries accomplished after the Court granted the Allocation Motion to the fund of Customer Property and allowing the claims of the settling customers, established the payor bank account and transferred funds thereto, and engaged in other related activities to effectuate the distribution of approximately $325 million on October 5, 2011.

**B.     MATTER 03 – CHAIS**

76.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Chais, Pamela Chais, and a number of related entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.  *Picard v. Stanley Chais, et al.*, Adv. Pro. No. 09-01172 (Bankr. S.D.N.Y.) (BRL).

77.     In addition to the tasks outlined above in ¶ 56, during this Compensation period, B&H attorneys exchanged limited discovery with the Chais Defendants and participated in meetings with defense counsel related to, among other things, the demand amounts attributable to the various Chais Defendants under the Trustee's theories of recovery.  In addition, B&H analyzed the impact of ongoing state court actions brought by investors of Stanley Chais in California.

**C.     MATTER 04 – MERKIN**

78.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel

Capital Corporation (together, the "Merkin Funds"), and J. Ezra Merkin (collectively, the "Merkin Defendants") seeking the return of more than $557 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin, et al.*, Adv. Pro. No. 09-01182 (Bankr. S.D.N.Y.) (BRL). With leave of the Court, the Trustee filed a second amended complaint on December 23, 2009 asserting Merkin's personal liability for obligations of the partnerships.

79.    In addition to the tasks outlined in ¶ 56, during this Compensation period, B&H attorneys monitored arbitrations and other actions pending against the Merkin Defendants and have engaged in extensive discovery responding to the requests of the Merkin Defendants. The Merkin Defendants have recently produced approximately 100,000 documents in discovery and plan to produce more shortly. To date, B&H attorneys have deposed eight (8) individuals, including employees of Gabriel Capital Corporation and its fund managers, in connection with this case. The pre-trial conference and hearing about discovery disputes was held on November 8, 2011.

## D.    MATTER 05 – CUSTOMER CLAIMS

80.    This matter categorizes time spent by B&H regarding customer claims. During this Compensation Period, the Trustee and B&H attorneys:

- Reviewed customer claim forms and supplements thereto and reviewed any additional related BLMIS IA account documentation.

- Assisted the Trustee in making determinations regarding customer claims, and prepared the Trustee's determination letters and the assignment and release forms for execution by customers.

- Communicated regularly by phone, letter, and email with customers or their representatives regarding claims procedure and process, status of claims review, and other matters of concern to customers.

- Reviewed objections to the Trustee's determination of claims and communicated regularly with the Trustee, SIPC, and counsel for the parties who filed the objections. As of September 30, 2011, approximately 2,310 objections have been filed with the Bankruptcy Court.

- Continued the Trustee's Hardship Program, reviewed Hardship Applications, and communicated regularly with the Trustee, SIPC, and AlixPartners regarding the review and determination of Hardship applicants.

- Reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

- Communicated regularly with the Trustee, SIPC, and AlixPartners regarding the customer claims review process, the customer claims database, reconciliation of IA accounts, and other matters of interest in determining claims.

- Reviewed schedules of information prepared by AlixPartners and prepared additional reports for the Trustee and SIPC.

- Maintained and updated the Trustee website to provide public access to case filings and important case information.

- Continued the training of B&H attorneys and paraprofessionals to assist the Trustee in reviewing and determining customer claims.

## E. MATTER 06 – VIZCAYA

81. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Limited ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants. *Picard v. Vizcaya Partners Limited, et al.*, Adv. Pro. No. 09-01154 (Bankr. S.D.N.Y.) (BRL). The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"),

Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers.

82.     In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys coordinated service of a protective action in Gibraltar to preserve the Trustee's right to sue the Vizcaya Defendants, Asphalia, Zeus, Siam, Banque J. Safra (Suisse) SA, and Pictet et Cie for $180 million in transfers received from BLMIS.

## F.     MATTER 07 – MADOFF FAMILY

83.     This matter categorizes time spent by B&H attorneys pursuing the numerous avoidance actions against members of the Madoff family.  On October 2, 2009, the Trustee filed a complaint against Peter B. Madoff, Andrew H. Madoff, Mark D. Madoff, and Shana D. Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants.  *Picard v. Peter B. Madoff*, Adv. Pro. No. 09-01503 (Bankr. S.D.N.Y.) (BRL). On March 15, 2010, each of the defendants separately moved this Court to dismiss the Trustee's complaint.   B&H attorneys submitted briefing in opposition to the defendants' motions to dismiss and prepared for and attended a hearing on those motions on October 6, 2010.   On September 22, 2011, the Court denied in part and granted in part the motion to dismiss (ECF No. 55).  Defendant Andrew Madoff, individually, and as executor of the estate of Mark D. Madoff, filed a motion for leave to seek interlocutory review of the Bankruptcy Court's September 22, 2011 decision.  No. 11 MC 000379 (WHP).  B&H attorneys submitted briefing in opposition to that motion, and attended oral argument on November 22, 2011.  The District Court denied the Family Defendants' motion on December 22, 2011.

84.     On November 7, 2011, the Trustee filed an Amended Complaint against the Family Defendants seeking the return of over $225 million under SIPA, the Bankruptcy Code,

the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. The Trustee has agreed to extend the deadline for responding to the Amended Complaint for Andrew Madoff, both as an individual and as executor of the estate of Marc Madoff, until December 16, 2011, and the deadline for answering the Amended Complaint for Shana Madoff and Peter Madoff until January 16, 2012.

85.    The Trustee also commenced an adversary proceeding against Marion Madoff, Peter Madoff's wife, to recover over $14 million in fictitious salary payments and other fraudulent conveyances. *Picard v. Marion Madoff*, Adv. Pro. No. 10-04310 (Bankr. S.D.N.Y.) (BRL). During this Compensation Period, the Trustee has continued to grant Ms. Madoff several extensions of time to respond to the complaint.

86.    The Trustee has also commenced two adversary proceedings against members of Mark and Andrew Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff, and various proceedings against relatives of Bernard Madoff beyond his immediate family to recover preferences and fraudulent conveyances. Finally, the Trustee has commenced two adversary proceedings against foundations created by and named for Mark and Andrew Madoff and their spouses. These defendants have answered, moved to dismiss the complaints, or have otherwise received extensions of time to respond to the complaints against them.

## G.    MATTER 08 – NORMAN LEVY

87.    In January 2010, the Trustee reached a $220 million settlement agreement (the "Norman Levy Settlement") with Jeanne Levy-Church and Francis N. Levy (collectively, the "Levys") to settle the Trustee's potential litigation claims against them regarding certain accounts held by the Levys and their family members. This Court approved the Norman Levy

31

Settlement by Order on February 18, 2010. Exactly one year later, certain BLMIS claimants moved pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to set aside the Norman Levy Settlement. The Court denied the motion on March 30, 2011, and the claimants appealed.

88.     During this Compensation Period, B&H attorneys negotiated a briefing schedule and drafted an opposition to the appeal of the Levy Settlement. No. 11 Civ. 3313 (S.D.N.Y.) (DAB). The order of the bankruptcy court was affirmed by the District Court on February 16, 2012. No. 11 Civ. 3313 (S.D.N.Y.) (DAB) (ECF No. 22).

## H.    MATTER 09 – FAIRFIELD GREENWICH

89.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited (collectively the "Fairfield Funds"), Greenwich Sentry Limited, L.P., and Greenwich Sentry Partners, L.P. (collectively, the "Greenwich Funds") and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Limited (In Liquidation), et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (BRL). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

90.     During this Compensation Period, the Court approved settlements with the Fairfield Funds and the Greenwich Funds, explained in detail *supra* ¶¶ 45-46. B&H attorneys prepared for the hearing on the settlement agreements, held on June 7, 2011, and drafted responses to the objections to the settlements.

91.      B&H attorneys continued to pursue the Trustee's claims against the remaining
defendants in the Fairfield action, and monitored the Joint Liquidators' actions against former
shareholders who redeemed their Fairfield Fund shares.

## I.      MATTER 10 – HARLEY

92.      This matter categorizes time spent by the Trustee and B&H attorneys pursuing the
avoidance action against Harley International (Cayman) Limited ("Harley") seeking the return of
approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent
Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages
in connection with certain transfers of property by BLMIS to or for the benefit of Harley. *Picard*
*v. Harley International (Cayman) Limited*, Adv. Pro. No. 09-00187 (Bankr. S.D.N.Y.) (BRL).
Harley is in liquidation in the Cayman Islands.

93.      In addition to the tasks outlined in ¶ 56, during this Compensation Period, the
Trustee and B&H attorneys continued to pursue collection on the summary and default
judgments entered against Harley by this Court on November 10, 2010, including by preparing
complaints against subsequent transferees of the Harley transfers from BLMIS.

## J.      MATTER 11 – COHMAD SECURITIES CORPORATION

94.      This matter categorizes time spent by the Trustee and B&H attorneys pursuing the
avoidance action against Cohmad Securities Corporation ("Cohmad"), the principals, certain
employees of Cohmad, and their family members who held BLMIS IA accounts (collectively,
the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy
Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent
conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and
damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Cohmad Defendants. *Picard v. Cohmad Securities Corporation, et al.*, Adv. Pro. No. 09-01305 (Bankr. S.D.N.Y.) (BRL).

95.     In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys prepared an opposition to the Cohmad Defendants' motion for leave to appeal the Bankruptcy Court's denial of the Cohmad Defendants' motions to dismiss the amended complaint, entered on August 1, 2011.  Nos. 11 Misc. 00337, 00338 (S.D.N.Y.) (TPG); No. 11 Misc. 00352 (S.D.N.Y.) (RJS).  B&H attorneys also reviewed the answers filed by the Cohmad Defendants to the amended complaint.

## K.    MATTER 12 – PICOWER

96.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jeffry M. Picower and Barbara Picower, both individually and as trustees for various foundations, and other various Picower entities (collectively, the "Picower Defendants") seeking the return of approximately $7.2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Defendants. *Picard v. Jeffry M. Picower*, Adv. Pro. No. 09-01197 (Bankr. S.D.N.Y.) (BRL).  In December 2010, the Trustee reached a $5 billion settlement with the Picower Defendants.  Pursuant to the same agreement, the Government achieved a $2.2 billion civil forfeiture from the Picower Defendants.

97.     In addition to the tasks outlined in ¶ 56, certain BLMIS claimants filed two appeals of the settlement with the Picower Defendants and permanent injunction approved by the Court, Nos. 11 Civ. 01298 and 11 Civ. 01328 (S.D.N.Y.) (JGK).  During this Compensation Period, the Trustee and B&H attorneys drafted briefing in support of the Court's Order.  The appeal was heard on December 19, 2011.

98.     The Trustee will receive the Picower settlement through entry of either a final, nonappealable order approving the Picower Settlement or a final, nonappealable order of forfeiture in the Government's action.  Upon either event, the Trustee will seek the transfer of $5 billion to the BLMIS estate and Customer Fund.

## L.     MATTER 13 – KINGATE

99.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (together, the "Kingate Defendants") seeking the return of approximately $395 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kingate Defendants.  *Picard v. Kingate Global Fund, Ltd., et al.*, Adv. Pro. No. 10-01161 (Bankr. S.D.N.Y.) (BRL).   A second amended complaint was filed on July 21, 2009, which increased the demand to approximately $875 million.

100.    The Kingate Defendants are currently in liquidation proceedings in the BVI.

101.    In addition to the tasks outlined in ¶ 56, on June 8, 2011, B&H attorneys prepared, filed, and served a third amended complaint, which added a number of additional foreign defendants, significantly expanding the case.  The Trustee has extended the Kingate Defendants' time to respond to the third amended complaint.  The Trustee and B&H attorneys continued to monitor third party actions filed against the Kingate Defendants and continued their review of documents, including those received from third parties in response to the Trustee's inquiries and subpoenas.  The Trustee has also filed cases in England, the BVI, and Bermuda against many of the Kingate Defendants, requiring coordination of those actions.

## M.    MATTER 18 – THYBO

102.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Thybo Asset Management Limited, Thybo Global Fund Limited, Thybo Return Fund Limited, and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return of approximately $62 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants.  On February 10, 2011, the Trustee filed an amended complaint objecting to Thybo Stable Fund's $217 million customer claim and a second amended complaint.  *Picard v. Thybo Asset Management Limited, et al.*, Adv. Pro. No. 09-01365 (Bankr. S.D.N.Y.) (BRL).

103.    As with each of the matters in litigation, the Trustee and B&H attorneys conducted the tasks outlined in ¶ 56 during this Compensation Period.  On June 10, 2011, the Thybo Defendants moved to dismiss the second amended complaint.  B&H attorneys filed an opposition to the motion to dismiss on August 24, 2011.  Also on August 24, 2011, the Trustee and the Thybo Defendants stipulated to the dismissal without prejudice of those portions of the Trustee's claims regarding tax payments and the equitable subordination of their customer claims; work leading to this stipulation occurred during this Compensation Period.

## N.    MATTER 19 – RUTH MADOFF

104.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Ruth Madoff seeking the return of approximately $44 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of

property by BLMIS to or for the benefit of Mrs. Madoff. *Picard v. Ruth Madoff*, Adv. Pro. No. 09-01391 (Bankr. S.D.N.Y.) (BRL).

105.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, the Trustee and B&H attorneys engaged in continued settlement discussions with counsel for Mrs. Madoff, and continued to grant Mrs. Madoff extensions of time to respond to the complaint.

## O.    MATTER 20 – CARL SHAPIRO

106.    This matter categorizes time spent investigating and negotiating for the return of millions in fictitious profits from one of Madoff's earliest investors, Carl J. Shapiro, and individuals and entities referred to as the "Shapiro family."  In December 2010, the Shapiro family agreed to forfeit, subject to federal civil forfeiture law, $625 million, of which $550 million would be paid to the Trustee pursuant to the settlement agreement and $75 million would be paid to the Government.

107.    During this Compensation Period, in addition to the tasks outlined in ¶ 56, the Trustee and B&H attorneys requested and reviewed discovery and financial disclosure information, conducted research regarding salient issues of probate, estate and property law, and participated in preliminary settlement discussions with several individuals and entities related to the Shapiro family against whom the Trustee still maintains claims.

## P.    MATTER 21 – AVOIDANCE ACTION LITIGATION

108.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee; coordinating service of process; preparing preservation letters and discovery requests and reviewing produced documents; communicating formally and informally with counsel for various defendants; reviewing Hardship Program applications; drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences; conducting settlement negotiations and settling with various defendants; engaging in mediation with certain

defendants; considering Hardship Program applications; developing legal strategies and witnesses that will be relevant to all actions; implementing internal processes to track and manage the avoidance actions; and researching various issues relating to and raised in such avoidance actions.

109.    B&H attorneys also spent a substantial amount of time during this Compensation Period opposing motions to withdraw the bankruptcy reference.  As of September 30, 2011, certain defendants to the Trustee's avoidance actions filed seventy-five motions to withdraw the reference.  B&H attorneys participated in numerous chambers conferences to establish briefing schedules; prepared, filed, and served ten opposition briefs; reviewed and addressed particular issues raised in seven reply briefs; prepared for six oral arguments before the district court; and resolved two motions by stipulation.

## Q.    MATTER 26 – RICHARD STAHL

110.    This matter categorizes time spent by the Trustee and B&H attorneys on the adversary proceeding commenced by the Trustee against Richard Stahl, Reed Abend, Sandra Manzke, and other plaintiffs (collectively, the "Stahl Plaintiffs"), and the Trustee's related Application for Enforcement of the Automatic Stay and a Preliminary Injunction (the "Stahl Application") of actions brought by the Stahl Plaintiffs against members of the Madoff family against whom the Trustee has also brought suit.  *Picard v. Richard Stahl, et al.*, Adv. Pro. No. 10-03268 (Bankr. S.D.N.Y.) (BRL).

111.    Certain of the Stahl Plaintiffs filed appeals of this Court's grant of the Stahl Application (the "Stahl Decision and Order").  Nos. 11 Civ. 02135, 11 Civ. 02246, and 11 Civ. 02392 (S.D.N.Y.) (AKH).  During this Compensation Period, in addition to the tasks outlined in ¶ 56, B&H attorneys entered into stipulated orders modifying the briefing schedule in each of the appeal proceedings, and completed briefing in support of the Stahl Decision and Order.  On

38

November 17, 2011, the District Court heard oral argument and affirmed the Stahl Decision and Order from the bench.

112.    On July 27, 2011, the Retirement Program for the Employees of the Town of Fairfield, The Retirement Program for the Police Officers and Firemen of the Town of Fairfield, and the Town of Fairfield (the "Fairfield Plaintiffs") moved for limited relief from the Stahl Decision and Order to pursue their action against defendants other than Andrew Madoff, Mark Madoff, and Peter Madoff.   B&H attorneys prepared and filed a response to the motion, and entered into a consent order on September 8, 2011 that permitted the limited relief sought.

**R.   MATTER 27 – JP MORGAN CHASE**

113.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan") seeking the return of approximately $19 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of JP Morgan Chase.   *Picard v. JPMorgan Chase & Co, et al.*, Adv. Pro. No. 10-04932 (Bankr. S.D.N.Y.) (BRL).

114.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys prepared an opposition to the motion to dismiss filed by JPMorgan in the District Court on July 3, 2011.  No. 11 Civ. 00913 (S.D.N.Y.) (CM).   B&H attorneys prepared and filed an amended complaint against JPMorgan on June 24, 2011.   On November 1, 2011, the District Court dismissed the common law claims.   *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011).   An appeal of this Decision is now pending before the Second Circuit.

S.      **MATTER 28 - WESTPORT**

115.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. seeking the return of approximately $28 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Silverman, WNB, and PSCC Services, Inc. *Picard v. Robert L. Silverman, et al.*, Adv. Pro. No. 10-05418 (Bankr. S.D.N.Y.) (BRL).

116.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys have granted WNB several extensions of time to respond to the complaint and adjourned the pre-trial conference to March 21, 2012.  B&H attorneys continue to monitor Silverman's individual chapter 11 bankruptcy case pending in the Bankruptcy Court for the District of Connecticut, attended his 341 meeting before the United States Trustee, and prepared motions to extend the time to object to the dischargeability of Silverman's debt.

T.      **MATTER 29 – RYE/TREMONT**

117.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Limited, Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Funds") seeking the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Defendants.  *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.) (BRL).

118.     During this Compensation Period, the Court approved settlements with the Tremont Funds, explained in detail *supra* ¶ 47.  In addition to the tasks outlined in ¶ 56, the Trustee and B&H attorneys negotiated and finalized the settlement with the Tremont Funds, and prepared the settlement agreement for the Court to review.

## U.     MATTER 30 – HSBC

119.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC-entities (collectively, the "HSBC Defendants"), UniCredit S.p.A. and Pioneer Alternative Investment Management Limited (together, "UCG/PIA"), dozens of feeder funds, and individuals seeking the return of approximately $86 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the HSBC Defendants.  *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (BRL).

120.     In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys extended the time for certain defendants to respond to the amended complaint and coordinated service of process on numerous international defendants.  B&H attorneys prepared an opposition to the motions to dismiss filed by the thirteen HSBC-related defendants and, separately, UCG/PIA on May 3, 2011 in the District Court.  No. 11 Civ. 763 and No. 11 Civ. 836 (S.D.N.Y.) (JSR).  The District Court granted the motion on July 28, 2011, dismissing the Trustee's common law claims.  *Picard v. HSBC Bank plc*, 454 B.R. 25, 37-38 (S.D.N.Y. 2011) (the "HSBC Decision").  An appeal is now pending before the Second Circuit.

41

## V.    MATTER 31 – KATZ/WILPON

121.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Saul B. Katz, in his individual capacity and as trustee of the Katz 2002 Descendants' Trust, Fred Wilpon, in his individual capacity, as trustee of the Wilpon 2002 Descendants' Trust, and as co-executor of the Estate of Leonard Schreier, and dozens of other entities and individuals (collectively, the "Sterling Defendants") seeking the return of approximately $1 billion in fraudulent transfers—which includes approximately $300 million in fictitious profits and $700 million in principal—under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Sterling.  *Picard v. Saul B. Katz, et al.*, Adv. Pro. No. 10-05287 (Bankr. S.D.N.Y.) (BRL).

122.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys prepared an opposition to the motion to withdraw the bankruptcy reference filed by the Sterling Defendants on May 26, 2011.  No. 11 Civ. 03605 (S.D.N.Y.) (JSR).  The District Court withdrew the reference and, on July 7, 2011, the Sterling Defendants filed a motion to dismiss or, in the alternative, for summary judgment.  B&H attorneys prepared an opposition to the motion. The District Court granted the motion on September 27, 2011, dismissing the Trustee's claims based on constructive fraud under the Bankruptcy Code, actual and constructive fraud under the New York Debtor & Creditor Law, and for recovery of subsequent transfers pursuant to § 550 of the Code, holding that the "safe harbor" affirmative defense set forth in Bankruptcy Code § 546(e) is a bar—at the pleading stage—to those claims.  Preparation for trial, scheduled to commence in March 2012, began during this Compensation Period.

W.    **MATTER 32 – UBS/LIF**

123.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "UBS Defendants") seeking the return of $2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of UBS. *Picard v. UBS AG, et al.*, Adv. Pro. No. 10-04285 (Bankr. S.D.N.Y.) (BRL).

124.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys extended the time for some of the UBS Defendants to respond to the amended complaint and coordinated service of process on the numerous international defendants.   B&H attorneys continued to review produced documents.   On June 21, 2011, the UBS Defendants moved to withdraw the bankruptcy reference.   No. 11 Civ. 04212 (S.D.N.Y.) (CM).   On August 1, 2011, the UBS Defendants moved to dismiss the complaint.   B&H attorneys prepared oppositions to both.   B&H attorneys also prepared an amended complaint, which was filed on August 17, 2011.   On November 1, 2011, the District Court dismissed the common law claims, consistent with the JPMC decision.   *See Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011).   An appeal of this Decision is now pending before the Second Circuit.

125.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund and Landmark Investment Fund Ireland (together, the "LIF Defendants"), UBS entities, and other defendants seeking the return of approximately $2.36 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages

in connection with certain transfers of property by BLMIS.  *Picard v. UBS AG, et al.*, Adv. Pro. No. 10-05311 (Bankr. S.D.N.Y.) (BRL).

126.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted the defendants several extensions to respond to the complaint.  B&H attorneys also prepared an opposition to a motion to withdraw the bankruptcy reference filed on June 17, 2011.  No. 11 Civ. 04213 (S.D.N.Y.) (CM).   The Trustee and B&H attorneys negotiated a dismissal without prejudice of the common law claims asserted against the defendants, entered on July 11, 2011.  On July 27, 2011, the District Court denied the motion to withdraw the reference as to LIF Defendants because the claims against them "are garden-variety bankruptcy issues."  The District Court returned the LIF Defendants to the Bankruptcy Court for further proceedings.  B&H attorneys also negotiated a tolling agreement and dismissal of defendants Francisco Javier Botín-Sanz de Sautuola O'Shea and JB Capital Markets Sociedad de Valores, S.A., which was effective on August 22, 2011.

## X.    MATTER 33 – NOMURA BANK INTERNATIONAL PLC

127.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura Bank International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura. *Picard v. Nomura Bank International plc*, Adv. Pro. No. 10-05348 (Bankr. S.D.N.Y.) (BRL).

128.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted Nomura several extensions of time to respond to the complaint.  The Trustee and B&H attorneys engaged in settlement negotiations with Nomura, which are ongoing.

## Y.    MATTER 34 - CITIBANK

129.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Citibank.  *Picard v. Citibank, N.A., et al.*, Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y.) (BRL).

130.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys agreed to the extension of Citibank's time to respond to the complaint.  On July 26, 2011, Citibank moved to dismiss the complaint.  B&H attorneys began drafting an opposition to the dismissal motion pursuant to a negotiated briefing schedule, and the parties adjourned the hearing date to April 25, 2012.

## Z.    MATTER 35 - NATIXIS

131.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/n/a Ixis Corporate & Investment Bank, Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Limited (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants.  *Picard v. Natixis, et al.*, Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y.) (BRL).

132.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted the Natixis Defendants extensions of time to respond to the complaint.  On July

15 and September 1, 2011, the Natixis Defendants filed motions to dismiss and B&H attorneys began drafting oppositions to the motions pursuant to a negotiated briefing schedule.

## AA.    MATTER 36 – MERRILL LYNCH

133.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International & Co. C.V. ("Merrill Lynch") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Merrill Lynch. *Picard v. Merrill Lynch International*, Adv. Pro. No. 10-05346 (Bankr. S.D.N.Y.) (BRL).

134.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys and Merrill Lynch stipulated to an agreement waiving service and extending Merrill Lynch's time to respond to the complaint.  B&H attorneys also prepared for anticipated motion practice.

## BB.    MATTER 37 – ABN AMRO

135.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) and ABN AMRO Incorporated (together, "ABN") and Rye Select Broad Market XL Fund, LP and Rye Select Broad Market XL Portfolio Limited (together, "Tremont XL Funds") seeking the return of approximately $671 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of ABN and the Tremont XL Funds.  *Picard v. ABN AMRO Bank, N.A. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. Pro. No. 10-05354 (Bankr. S.D.N.Y.) (BRL).

136.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, the B&H attorneys granted ABN and the Tremont XL Funds' several extensions of time to respond to the complaint and prepared for anticipated motion practice.  On September 29, 2011, ABN and the Tremont XL Funds filed two motions to withdraw the bankruptcy reference that are currently pending in the District Court.  No. 11 Civ. 06848 and 11 Civ. 06878 (S.D.N.Y.) (JSR).

**CC.    MATTER 38 – BANCO BILBAO**

137.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of approximately $45 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of BBVA.  *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. Pro. No. 10-05351 (Bankr. S.D.N.Y.) (BRL).

138.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted BBVA several extensions of time to respond to the complaint.  On August 29, 2011, BBVA moved to dismiss the complaint and, on September 19, 2011, entered into a stipulated briefing schedule with the Trustee.

**DD.    MATTER 39 - FORTIS**

139.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/n/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited (collectively, the "Fortis Defendants") seeking the return of approximately $267 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent

47

conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants.  *Picard v. ABN AMRO Retained Custodial Services (Ireland) Limited, et al.*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y.) (BRL).

140.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted the Fortis Defendants numerous extensions of time to respond to the complaint. On September 29, 2011, the Fortis Defendants filed motions to withdraw the bankruptcy reference, which are currently pending in the District Court.  Nos. 11 Civ. 06849 and No. 11 Civ. 06877 (S.D.N.Y.) (JSR).

## EE.    MATTER 40 – MEDICI ENTERPRISE

141.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and civil action against Sonja Kohn, Unicredit S.p.A. ("UniCredit"), and numerous other financial institutions, entities, and individuals (collectively, the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants.  *Picard v. Sonja Kohn, et al.*, Adv. Pro. No. 10-05411 (Bankr. S.D.N.Y.) (BRL).

142.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys extended the time for certain of the Kohn Defendants to respond to the amended complaint and coordinated service of process on the numerous international defendants.   On February 17, 2011, the Kohn Defendants moved to withdraw the bankruptcy reference, and B&H attorneys prepared an opposition to the motion.  No. 11 Civ. 01181 (S.D.N.Y.) (JSR).  B&H

attorneys also prepared an opposition to the motion to dismiss the amended complaint filed by the Kohn Defendants on July 25, 2011.

## FF.    MATTER 41 - WHITECHAPEL

143.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Whitechapel Management Limited and Granadilla Holdings Limited (together, "Whitechapel Defendants") seeking the return of approximately $10 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Whitechapel Defendants.  *Picard v. Whitechapel Management Limited, et al.*, Adv. Pro. No. 10-05402 (Bankr. S.D.N.Y.) (BRL).

144.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted the Whitechapel Defendants extensions of time to respond to the complaint. The pre-trial conference is scheduled for March 21, 2012.  On September 29, 2011, B&H attorneys, through local counsel, applied for a disclosure order in the BVI seeking documents from the registered agent for Granadilla Holdings Limited.

## GG.    MATTER 42 - EQUITY TRADING

145.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Limited, and BNP Paribas Arbitrage (collectively, "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants.  *Picard v. Equity Trading Portfolio Limited, et al.*, Adv. Pro. No. 10-04457 (Bankr. S.D.N.Y.) (BRL).

146.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys and the Equity Trading Defendants negotiated and entered into a stipulation whereby the Equity Trading Defendants accepted service of process, the Trustee may file an amended complaint, and a briefing schedule was established.

## HH.    MATTER 43 – DEFENDER

147.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Defender Limited, Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, Reliance International Research LLC, Tim Brockmann, and Justin Lowe (collectively, the "Defender Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants.  *Picard v. Defender Limited, et al.*, Adv. Pro. No. 10-05229 (Bankr. S.D.N.Y.) (BRL).

148.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted the Defender Defendants extensions of time to respond to the amended complaint.  The pre-trial conference is scheduled for May 30, 2012.

## II.    MATTER 44 – MACCABEE

149.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, John Greenberger Maccabee, Individually and as Trustee of the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, Sherry Morse Maccabee, Individually and as Trustee of the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust (collectively, the "Maccabee Defendants") seeking the return of approximately $1.5 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

50

fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maccabee Defendants. *Picard v. John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, et al.*, Adv. Pro. No. 10-05407 (Bankr. S.D.N.Y.) (BRL).

150.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, the Maccabee Defendants moved to withdraw the bankruptcy reference, No. 11 Civ. 04937 (S.D.N.Y.) (JSR), and B&H attorneys prepared an opposition to the motion.

## JJ.    MATTER 45 – LEVEY

151.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Frances Levey Revocable Living Trust, Wendy Kapner Revocable Trust, Wendy Kapner as trustee of Frances Levey Revocable Living Trust, grantor and trustee of Wendy Kapner Revocable Trust and individually, Joel Levey, as trustee of Wendy Kapner Revocable Trust, and James L. Kapner (collectively, the "Levey Defendants") seeking the return of approximately $6.8 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Levey Defendants. *Picard v. Joel R. Levey, et al.*, Adv. Pro. No. 10-04282 (Bankr. S.D.N.Y.) (BRL); *Picard v. Aaron D. Levey, et al.*, Adv. Pro. No. 10-05441 (Bankr. S.D.N.Y.) (BRL).

152.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, defendants Joel Levey and Aaron Levey filed answers to the complaints, and B&H attorneys reviewed and analyzed them.  Discovery is ongoing.

## KK.    MATTER 46 – GLANTZ

153.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Richard M. Glantz, Elaine Ostrin, Jerald Ostrin, Scott Ostrin, Raleigh Dow Buckmaster, Sr., Barbara Buckmaster, Raleigh Dow Buckmaster, Jr., Drew Buckmaster,

Owen Buckmaster, Joellen Buckmaster, Mirza Inayat Khan, Zia Inayat Khan, and numerous trusts and entities (collectively, the "Glantz Defendants") seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants. *Picard v. Richard M. Glantz, et al.*, Adv. Pro. No. 10-05394 (Bankr. S.D.N.Y.) (BRL).

154.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys have continued to grant the Glantz Defendants additional time to respond to the complaint. B&H attorneys completed the review of Hardship Program applications and related materials on behalf of eight defendants, and entered into stipulations dismissing the action against those defendants based on the Hardship applications.

## LL.    MATTER 47 – BONVENTRE

155.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Daniel Bonventre and Barbara Bonventre (together, "Bonventre Defendants") seeking the return of approximately $12.6 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bonventre Defendants. *Picard v. Daniel Bonventre, et al.*, Adv. Pro. No. 10-04214 (Bankr. S.D.N.Y.) (BRL).

156.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted the Bonventre Defendants several extensions of time to respond to the complaint up to and including December 27, 2012, as the action was stayed pending the criminal case against Daniel Bonventre. See *United States v. Bonventre*, 10 Cr. 228 (S.D.N.Y.) (LTS).

B&H attorneys have received and reviewed the list of documents requested by the Bonventre Defendants.

## MM.  MATTER 48 – BONGIORNO

157.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Annette Bongiorno and Rudy Bongiorno (together, "Bongiorno Defendants") seeking the return of approximately $22 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bongiorno Defendants. *Picard v. Annette Bongiorno, et al.*, Adv. Pro. No. 10-04215 (Bankr. S.D.N.Y.) (BRL).

158.    The action was stayed up to and including December 27, 2012 because of the pending criminal case against Annette Bongiorno.  See *United States v. Bongiorno*, 10 Cr. 228 (S.D.N.Y.) (LTS).

## NN.  MATTER 49 – GREENBERGER

159.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert and Phyllis Greenberger (together, "Greenberger Defendants") seeking the return of over $500 thousand under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Greenberger Defendants. *Picard v. Robert and Phyllis Greenberger*, Adv. Pro. No. 10-05408 (Bankr. S.D.N.Y.) (BRL).

160.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys and the Greenberger Defendants engaged in settlement discussions, which were ultimately unsuccessful.  During that time, the Greenberger Defendants were granted several

extensions of time to respond to the complaint. B&H attorneys prepared for and attended the

initial case conference held on May 9, 2011. On July 14, 2011, the Greenberger Defendants

moved to withdraw the bankruptcy reference, and B&H prepared an opposition to the motion.

No. 11 Civ. 04928 (S.D.N.Y.) (JSR). The matter is currently pending in the District Court.

161.    This matter also incorporates time spent by the Trustee and B&H attorneys

pursuing the avoidance action against Michael Lieberbaum and Cynthia Lieberbaum (together,

"Lieberbaum Defendants") seeking the return of approximately $2.36 million under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

fraudulent conveyances and damages in connection with certain transfers of property by BLMIS

to or for the benefit of the Lieberbaum Defendants. *Picard v. Michael Lieberbaum, et al.*, Adv.

Pro. No. 10-05406 (Bankr. S.D.N.Y.) (BRL).

162.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H

attorneys prepared and filed a redacted complaint. On June 6, 2011, the Lieberbaum Defendants

filed a Notice of Applicability Of The Order Approving Litigation Case Management Procedures

For Avoidance Actions, which was thereafter withdrawn on August 23, 2011. B&H attorneys

and the Lieberbaum Defendants submitted a case management plan that was approved by the

Court on August 25, 2011. The pre-trial conference is scheduled for March 21, 2012.

## OO.    MATTER 50 – PITZ

163.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Enrica Cotellessa-Pitz and Thomas Pitz (together, "Pitz Defendants")

seeking the return of over $3 million under SIPA, the Bankruptcy Code, the New York

Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages

in connection with certain transfers of property by BLMIS to or for the benefit of the Pitz

Defendants. *Picard v. Cotellessa-Pitz, et al.*, Adv. Pro. No. 10-04213 (Bankr. S.D.N.Y.) (BRL).

164.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys engaged in settlement discussions with the Pitz Defendants.  The adversary proceeding was stayed up to and including February 29, 2012 because of the criminal case against Ms. Cotellessa-Pitz.  See *United States v. Cotellessa-Pitz*, 10 Cr. 228 (S.D.N.Y.) (LTS).

## PP.    MATTER 51 – CRUPI

165.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jo Ann Crupi, Judith Bowen, Debra E. Guston, Pensco Trust Company, as former custodian of an Individual Retirement Account for the benefit of Jo Ann Crupi, and numerous trusts (collectively, the "Crupi Defendants") seeking the return of over $8 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Crupi Defendants.  *Picard v. Jo Ann Crupi, et al.*, Adv. Pro. No. 10-04216 (Bankr. S.D.N.Y.) (BRL).

166.    The adversary proceeding was stayed up to and including February 29, 2012 because of the pending criminal case against Jo Ann Crupi.  See *United States v. Crupi*, 10 Cr. 228 (S.D.N.Y.) (LTS).  On September 6, 2011, B&H attorneys negotiated dismissal without prejudice of defendant Pensco Trust Company from the adversary proceeding.

## QQ.    MATTER 52 – DONALD FRIEDMAN

167.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against S. Donald Friedman, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman (collectively, the "Friedman Defendants") seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the Friedman Defendants. *Picard v. Saundra Friedman*, Adv. Pro. No. 10-05395 (Bankr. S.D.N.Y.) (BRL).

168.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys reviewed the answer filed by the Friedman Defendants and commenced discovery— including serving initial disclosures, document requests, interrogatories, and responses to the Friedman Defendants' written discovery requests—and made a rolling document production. The pre-trial conference in this action is scheduled for February 29, 2012.

## RR.    MATTER 53 – MAGNIFY

169.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd. II, Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Osnat Dodelson, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and Robert H. Book (collectively, the "Magnify Defendants") seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc., et al.*, Adv. Pro. No. 10-05279 (Bankr. S.D.N.Y.) (BRL).

170.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys continued their investigation of those Magnify Defendants located outside of the United States.  On August 31, 2011, two of the Magnify Defendants moved to dismiss the complaint based on the lack of jurisdiction, and B&H attorneys drafted an opposition.  In lieu of responding immediately to that motion, B&H attorneys prepared and filed an amended complaint against the Magnify Defendants on September 21, 2011, which incorporated the most current facts from the Trustee's investigation.  B&H attorneys then negotiated and stipulated to a revised

briefing schedule for the personal jurisdiction motion, and began researching and drafting an opposition to same.

**SS.    MATTER 54 – MENDELOW**

171.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, NTC & Co. LLP, as former custodian of an Individual Retirement Account for the benefit of Steven B. Mendelow, Nancy Mendelow, NTC & Co. LLP as former custodian of an Individual Retirement Account for the benefit of Nancy Mendelow, Cara Mendelow, Pamela Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants. *Picard v. Steven B. Mendelow, et al.*, Adv. Pro. No. 10-04283 (Bankr. S.D.N.Y.) (BRL).

172.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys engaged in extensive settlement discussions with the Mendelow Defendants.  Steven Mendelow previously moved in the Bankruptcy Court to enforce the automatic stay against a third-party action filed against him in the New York State Supreme Court.  B&H attorneys prepared and filed a response to Mendelow's motion.  The hearing has been adjourned several times and is now is scheduled before the Bankruptcy Court for March 28, 2012.  B&H attorneys also granted the Mendelow Defendants several extensions of time to respond to the complaint pending the outcome of the motion and have monitored the developments in the third party state court action.

TT.    **MATTER 55 – KUGEL**

173.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against David L. Kugel, Cynthia Kugel, Heather Kugel, and numerous trusts and entities (collectively, the "Kugel Defendants") seeking the return of more than $22 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kugel Defendants.  *Picard v. David L. Kugel, et al.*, Adv. Pro. No. 10-04217 (Bankr. S.D.N.Y.) (BRL).

174.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted several extensions of time for the Kugel Defendants to respond to the complaint.    On June 16, 2011, the Kugel Defendants moved to withdraw the bankruptcy reference.  No. 11 Civ. 04227 (S.D.N.Y.) (JSR).  The Kugel Defendants withdrew the motion on September 14, 2011.  Subsequently, the Trustee dismissed the adversary proceeding against the Kugel Defendants without prejudice after David Kugel pled guilty before the District Court in November 2011.  See *United States v. Kugel*, 10 Cr. 228 (S.D.N.Y.) (LTS).

UU.    **MATTER 56 – LIPKIN**

175.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Irwin Lipkin, Carole Lipkin, Eric Lipkin, Erika Lipkin, Marc Lipkin, Russell Lipkin, Karen Yokomizo Lipkin, and other individuals (collectively, the "Lipkin Defendants") seeking the return of approximately $9 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lipkin Defendants.  *Picard v. Irwin Lipkin, et al.*, Adv. Pro. No. 10-04218 (Bankr. S.D.N.Y.) (BRL).

58

176.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys have granted certain Lipkin Defendants extensions of time to respond to the complaint. In June 2011, defendant Eric Lipkin pled guilty to criminal charges.  See *United States v. Lipkin*, 10 Cr. 228 (S.D.N.Y.) (LTS).    For the remaining defendants, the pre-trial conference is scheduled to be held on February 29, 2012.

## VV.    MATTER 57 – PEREZ/O'HARA

177.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jerome O'Hara, Bernadette O'Hara, O'Hara Family Partnership, Elizabeth Sarro, George Perez, and Jeanette Perez (collectively, the "Perez/O'Hara Defendants") seeking the return of over $6 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Perez/O'Hara Defendants.    *Picard v. Jerome O'Hara, et al.*, Adv. Pro. No. 10-04272 (Bankr. S.D.N.Y.) (BRL).

178.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys interviewed a defendant Elizabeth Sarro.  The proceeding against Jerome O'Hara and George Perez was stayed through June 27, 2012 because of the pending criminal cases against them.  See *United States v. O'Hara*, 10 Cr. 228 (S.D.N.Y.) (LTS); *United States v. Perez*, 10 Cr. 228 (S.D.N.Y.) (LTS).

## WW.    MATTER 58 – PJ ADMINISTRATORS

179.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits, under SIPA,

the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants. *Picard v. American Securities Management, L.P., et al.*, Adv. Pro. No. 10-05415 (Bankr. S.D.N.Y.) (BRL).

180.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted the PJ Defendants extensions of time to respond to the complaint. Certain of the PJ Defendants approached the Trustee seeking to settle the claims against them and obtain dismissals from the adversary proceeding. B&H attorneys interviewed those defendants and negotiated their dismissals, which were effective on September 8 and 9, 2011. B&H attorneys prepared an amended complaint against the remaining defendants, which was filed on September 23, 2011.

## XX.    MATTER 59 – STANLEY SHAPIRO

181.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $61.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *Picard v. Stanley Shapiro, et al.*, Adv. Pro. No. 10-05383 (Bankr. S.D.N.Y.) (BRL).

182.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, B&H attorneys granted the Shapiro Defendants several extensions of time to respond to the complaint, reviewed the Shapiro Defendants BLMIS core account documents, and prepared the Trustee's initial disclosures. B&H attorneys also opposed the Shapiro Defendants' motion to withdraw the bankruptcy reference, which was filed on August 19, 2011. No. 11 Civ. 05835 (S.D.N.Y.)

(JSR).  Oral argument on the motion was held before the District Court on October 25, 2011, and the parties await the Court's decision.

## YY.   MATTER 60 – AVELLINO & BIENES

183.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants.  *Picard v. Frank J. Avellino, et al.*, Adv. Pro. No. 10-05421 (Bankr. S.D.N.Y.) (BRL) (the "A&B Action").

184.    In addition to the tasks outlined in ¶ 56, B&H attorneys agreed to extend the time for the A&B Defendants to respond to the complaint.  On June 6, 2011, certain A&B Defendants moved to dismiss the complaint in the Bankruptcy Court.  On June 7, 2011, certain A&B Defendants moved to withdraw the bankruptcy reference in the District Court.  No. 11 Civ. 03882 (S.D.N.Y.) (JSR).  The motion to withdraw the reference was fully briefed in the District Court.  On September 19, 2011, the District Court entered a Stipulation and Order between the Trustee and those A&B Defendants dismissing the common law claims under a tolling agreement that would allow the Trustee to reassert those claims within six months from a final non-appealable order and judgment concerning the HSBC Decision, or from any other court which determines that the Trustee is permitted to advance common law claims against third parties, such as the A&B Defendants, whichever order and judgment comes first.  Oral argument on the remaining issues was held on October 18, 2011.

61

185.    The Trustee and B&H attorneys also received and analyzed ten hardship applications, eight of which were subsequently granted, which resulted in the dismissal of those defendants from the proceeding.    A settlement agreement was successfully negotiated and executed with certain other A&B Defendants, dismissing them from the A&B Action.    In addition, B&H attorneys have prepared initial draft discovery demands, formulated a list of potential deponents, and sent preservation letters to financial institutions seeking the preservation of financial records relevant to the litigation.

186.    The motion to dismiss is being held in abeyance until the motion to withdraw the reference is decided; however, B&H attorneys drafted an opposition during this Compensation Period.

## ZZ.    MATTER 61 – MAXAM

187.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Maxam Absolute Return Fund, L.P., Maxam Absolute Return Fund, Ltd., Maxam Capital Management, LLC, Maxam Capital GP LLC, Sandra L. Manzke Revocable Trust, Sandra L. Manzke, as Trustee and individually, Suzanne Hammond, Walker Manzke, and April Bukofser Manzke (collectively, the "Maxam Defendants") seeking the return of approximately $100 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maxam Defendants.    *Picard v. Maxam Absolute Return Fund, L.P. et al.*, Adv. Pro. No. 10-05342 (Bankr. S.D.N.Y.) (BRL) (the "Maxam Action").

188.    In addition to the tasks outlined in ¶ 56, during this Compensation Period, the Maxam Defendants filed an answer to the complaint, which B&H attorneys reviewed and analyzed.    On May 13, 2011, the Maxam Defendants moved to withdraw the bankruptcy

reference. No. 11 Civ. 03261 (S.D.N.Y.) (JSR). The motion was fully briefed in the District Court. On July 15, 2011, the Court granted the motion, solely to resolve whether the Trustee has standing to bring the common law claims alleged in the Maxam Action, and whether the common law claims in the Trustee's Action are preempted by the Securities Litigation Uniform Standards Act.

189.    On August 28, 2011, the District Court entered a Stipulation and Order between the Trustee and the Maxam Defendants dismissing the common law claims under a tolling agreement that would allow the Trustee to reassert those claims within six months from a final non-appealable order and judgment concerning the HSBC Decision, or from any other court which determines that the Trustee is permitted to advance common law claims against third parties, such as the Maxam Defendants, whichever order and judgment comes first. The District Court referred the remainder of the case to the Bankruptcy Court on September 20, 2011.

190.    On September 22, 2011, B&H attorneys petitioned the Bankruptcy Court to enjoin an action for a declaratory judgment of non-liability brought in the Cayman Islands against the Trustee by Maxam Absolute Return Fund, L.P. On October 12, 2011, the Court enjoined the action based on Maxam's violation of the automatic stay.

## EEE.  MATTER 62 – SUBSEQUENT TRANSFERS

191.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS. Under Bankruptcy Code § 550, the Trustee may recover transfers from BLMIS to a direct customer or from any entity to whom the customer made transfers.

192.    During this Compensation Period, the Trustee commenced twenty-seven actions against subsequent transferees seeking to recover in excess of $1.3 billion. Nearly all of these

actions arose from transfers made by so-called "Feeder Funds," which had customer accounts at

BLMIS and received transfers from BLMIS, to the Funds' shareholders or partners.

193.    The Trustee's investigation is ongoing and additional recovery actions will be

filed.

## V.    COMPENSATION REQUESTED

194.    This Application has been prepared in accordance with the Amended Guidelines

for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended

Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan,

Esq., regarding compliance with the same is attached hereto as Exhibit A.

195.    The Trustee and B&H expended 130,596.50 hours in the rendition of professional

and paraprofessional services during the Compensation Period, resulting in an average hourly

discounted rate of $367.29 for fees incurred.[8]  The blended attorney rate is $432.92.

196.    Prior to filing this Application, in accordance with the Second Amended

Compensation Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting

forth the Trustee's and B&H's fees for services rendered and expenses incurred during the

Compensation Period beginning June 1, 2011 through September 30, 2011, and (ii) a draft of this

Application.  In connection with four monthly statements, the Trustee and B&H voluntarily

adjusted its fees by writing off $1,252,054.50 (in addition to the 10% public interest discount, as

discussed below), and wrote off expenses customarily charged to other clients in the amount of

$501,366.42.

---

[8] In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts
reflect combined amounts for Trustee and B&H.

197.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $5,329,707.95.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in Chapter 11 cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

198.    Pursuant to the Second Amended Compensation Order, on July 20, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from June 1, 2011 through June 30, 2011 (the "June Fee Statements").  The June Fee Statement reflected fees of $13,661,997.00 and expenses of $298,475.89.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the June Fee Statement reflected fees of $12,295,797.30.  After subtracting the Court-ordered 10% holdback, SIPC advanced $11,066,217.57 for services rendered and $298,475.89 for expenses incurred by the Trustee and B&H.

199.    Pursuant to the Second Amended Compensation Order, on August 23, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from July 1, 2011 through July 31, 2011 (the "July Fee Statements").  The July Fee Statement reflected fees of $13,004,816.00 and expenses of $179,452.85.  SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the July Fee Statement reflected fees of $11,704,334.40.  After subtracting the Court-ordered 10% holdback, SIPC advanced

$10,533,900.96 for services rendered and $179,452.85 for expenses incurred by the Trustee and B&H.

200.    Pursuant to the Second Amended Compensation Order, on September 21, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from August 1, 2011 through August 31, 2011 (the "August Fee Statements"). The August Fee Statement reflected fees of $13,473,701.00 and expenses of $580,928.64. SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H. After such adjustments, the August Fee Statement reflected fees of $12,126,330.90. After subtracting the Court-ordered 10% holdback, SIPC advanced $10,913,697.81 for services rendered and $580,928.64 for expenses incurred by the Trustee and B&H.

201.    Pursuant to the Second Amended Compensation Order, on October 26, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from September 1, 2011 through September 30, 2011 (the "September Fee Statements"). The September Fee Statement reflected fees of $13,156,565.50 and expenses of $186,476.08. SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H. After such adjustments, the September Fee Statement reflected fees of $11,840,908.95. After subtracting the Court-ordered 10% holdback, SIPC advanced $10,656,818.06 for services rendered and $186,476.08 for expenses incurred by the Trustee and B&H.

202.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Debtor during the Compensation Period, the capacity in which each individual is employed by B&H, the year in

66

which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount. The 10% discount ($5,329,707.95, as described above in ¶ 197) is taken off the total cumulative amount billed, as reflected on Exhibit C.

203.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by the B&H professionals.

204.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

205.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case. No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

206.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee, and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

207.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the

attorney for such a trustee . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's

role in connection with applications for compensation and the consideration the Court should

give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by
> SIPC, the court shall award the amounts recommended by SIPC.  In determining
> the amount of allowances in all other cases, the court shall give due consideration
> to the nature, extent, and value of the services rendered, and shall place
> considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

208.    To the extent the general estate is insufficient to pay such allowances as an

expense of administration, SIPA § 78eee(b)(5)(E) requires SIPC to advance the funds necessary

to pay the compensation of the Trustee and B&H (*see* SIPA § 78fff-3(b)(2)).

209.    While the Trustee has recovered or entered into agreements to recover over $9

billion to date, a significant portion of these funds must be held in reserve pending final

resolution of several appeals and disputes.

210.    Accordingly, the Trustee has determined that, at this time, he has no reasonable

expectation that the general estate will be sufficient to make a distribution to general creditors or

pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief

of the Trustee.  Any fees and expenses allowed by this Court will be paid from advances by

SIPC without any reasonable expectation by SIPC of recoupment thereof.

211.    Therefore, with respect to this Application, the Trustee and B&H request that

consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts

recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).

SIPC will file its recommendation to the Court with respect to this Application prior to the

hearing scheduled to be held on March 15, 2012.

68

212.    The Trustee and B&H submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to SIPA § 78eee(b)(5).

## **CONCLUSION**

213.    The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $47,967,371.55 (of which $43,170,634.40 is to be paid currently and $4,796,737.15 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $1,245,333.46 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       February 17, 2012

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/ *David J. Sheehan*
    Baker & Hostetler LLP
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    Irving H. Picard
    Email: ipicard@bakerlaw.com
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Seanna R. Brown
    Email: sbrown@bakerlaw.com
    Jacqlyn R. Rovine

Email: jrovine@bakerlaw.com

*Attorneys for Irving H. Picard, Esq. Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC And Bernard L. Madoff*