```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORTION,

        Plaintiff,

v.                                                          11 Civ. 3313 (DAB)
                                                            MEMORANDUM & ORDER

BERNARD L. MADOFF INVESTMENT
SECURITIES, LLC,

        Defendant.
------------------------------------x
In re:

BERNARD L. MADOFF,

        Debtor.
------------------------------------x
MARSHA PESHKIN, and a large group
of other customers of Bernard L.
Madoff Investment Securities LLC.,

        Appellants,

JEANNE LEVY-CHURCH, FRANCIS N. LEVY,
and IRVING H. PICARD, as Trustee for
the Liquidation of Bernard L. Madoff
Securities LLC,

        Appellees.
------------------------------------x
```

Deborah A. Batts, United State District Judge.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/16/12

1

Appellants, Marsha Peshkin and a large group of other customers of Bernard L. Madoff Investment Securities LLC ("BLMIS"), appeal the March 30, 2011 order of Bankruptcy Judge Burton R. Lifland (the "Order"), which denied Appellants' motion to set aside a prior bankruptcy court order approving a settlement between Trustee Irving H. Picard and the heirs of Norman F. Levy. For the reasons set forth herein, the Order of the Bankruptcy Court is AFFIRMED.

## I. BACKGROUND

Norman F. Levy ("Mr. Levy"), a New York City commercial real estate broker, invested a significant amount of his assets with BLMIS from the mid-1970s until the time of his death in 2005. Mr. Levy had established a number of accounts at BLMIS in his name, the names of his children, and for family and charitable trusts. (Mot. for Entry of Order Pursuant to Section 105(a) (Docket #1833[1]), Ex. A ("Settlement Agreement") ¶ H.) During the six years prior to December 11, 2008, when the Securities and Exchange Commission filed a complaint against BLMIS and Bernard L. Madoff, approximately $305,000,000.00 was withdrawn from these accounts in excess of the amount deposited in them. (Settlement Agreement ¶ I.) Furthermore, the Betty &

---

[1] References to docket numbers refer to 08-1789 (Bankr. S.D.N.Y.).

2

Norman F. Levy Foundation, a charitable organization, withdrew approximately $84,000,000.00 during this time period. (Settlement Agreement ¶ I.)

In the Trustee's judgment, the transfers made over this six-year period were recoverable, less the $84,000,000.00 donated to charity through the Betty and Norman Levy Foundation, pursuant to 11 U.S.C. §§ 544(b), 547, 548 and 550 ("Avoiding Powers Claims"). (Settlement Agreement ¶ M.)[2] As heirs to the Levy estate, Mr. Levy's children, Jeanne Levy-Church and Francis N. Levy (collectively, the "Levy Heirs" or "Levys"), approached the Trustee to settle all disputes pertaining to BLMIS without admitting liability. (Settlement Agreement ¶ N.)

Pursuant to the Settlement Agreement with the Trustee, the Levy Heirs agreed to pay $220,000,000.00 to customers of BLMIS in exchange for the Trustee's full release. (Settlement Agreement ¶¶ 2, 4.) On February 18, 2010, Judge Lifland approved the Settlement Agreement under Bankruptcy Rule 9019. (Feb. 18, 2010 Hr'g Tr. (Docket #1969) at 8:16-17.) In approving the settlement, Judge Lifland asserted, "It is clear that the Trustee has done his due diligence in recommending the

---

[2] This Court notes that in light of Judge Rakoff's recent decision in Picard v. Katz, __ F. Supp. 2d __, 2011 WL 4448638, at *2-*3 (S.D.N.Y. Sept. 27, 2011), finding that the "safe harbor" provision in section 546(e) of the Bankruptcy Code limits fraudulent transfer recovery from BLMIS customers to transactions within two years, the Trustee's estimate of the amount recoverable was, if anything, an overestimation.

3

settlement." (Id. at 8:18-20.) Further, in assessing the value of the settlement, Judge Lifland explained, "[I]t is clear that this settlement is well above the lowest rung in a range of reasonableness and is right on target in that regard." (Id. at 9:6-9.)

On February 18, 2011, Appellants moved to vacate the order of February 18, 2010 pursuant to Federal Rule of Civil Procedure 60(b)(2),(3), and (6), and Federal Rule of Bankruptcy Procedure 9024 (applying Rule 60 to cases under the Bankruptcy Code). (Notice of Motion (Docket #3860) at 1-2.) Appellants claimed that the Trustee deliberately "concealed explosive information which should have compelled denial of the Trustee's motion." (Brief of BLMIS Customers on Appeal from Order Denying Mot. to Vacate Settlement Order (hereinafter "Appellant's Brief") at 1-2.) More specifically, referencing information conveyed in a letter from SIPC President Stephen Harbeck (Chaitman Decl. (Docket # 3862), Ex. G (the "Harbeck Letter")), Appellants assert that the Trustee concealed the following: (1) Norman Levy financed Madoff's fraudulent scheme in an amount exceeding $100 billion from 1992 through 2001, and (2) the Levy Heirs had an outstanding $2 billion margin loan from BLMIS as of December 11, 2008. Id.

The Bankruptcy Court denied the motion to vacate the settlement because Appellants did not "adequately plead grounds

4

under Rule 60(b) to justify vacating the settlement approval order." Judge Lifland also struck as procedurally improper Appellants' Reply Brief which called for removal of the Trustee and counsel. (March 30, 2011 Hr'g Tr. (Docket # 3998), at 16-22.)

II. DISCUSSION

A.  Review of Bankruptcy Court Orders

District Courts are vested with appellate jurisdiction over final orders, decrees and judgments of bankruptcy courts under 28 U.S.C. § 158(a). Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a district court conducting appellate review may "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

District courts review bankruptcy court findings of fact for clear error and apply de novo review to their conclusions of law. See In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003); In re Adelphia Commc'ns Corp., 367 B.R. 84, 90-91 (S.D.N.Y. 2007); Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). A finding of fact is clearly erroneous if "the

reviewing court is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); In re CBI Holding Co., 529 F.3d 432, 449 (2d Cir. 2008).

When reviewing a Bankruptcy Court's decision to deny Rule 60(b) motions, the "final judgment is reviewed for abuse of discretion." Delcarpio v. Ticconic, 124 Fed. App'x 71, 72 (2d Cir. 2005); see also Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d. Cir. 1998). Furthermore, the Second Circuit has noted that, "An appeal from the denial of a Rule 60(b) motion 'raises only the question of whether the motion was properly disposed; it is not a vehicle for examining the underlying judgment itself.'" Delcarpio, 124 Fed. App'x at 72 (quoting Cody, Inc. v. Town of Woodbury, 179 F.3d 52, 56 (2d Cir. 1999). Accordingly, this Court will review the Bankruptcy Court's denial of the Rule 60(b) motion for abuse of discretion.

An abuse of discretion occurs when a bankruptcy court arrives at a decision that "(i) rests on an 'error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding,' or (ii) 'a decision that, though not necessarily the product of legal error or clearly erroneous factual finding[,] cannot be located within the range of permissible decisions.'" In re Teligent, Inc., 326 B.R. 219, 224 (S.D.N.Y. 2005)(quoting Schwartz v. Aquatic Dev. Group, Inc. (In

6

re Aquatic Dev. Group, Inc.), 352 F.3d 671, 678 (2d Cir. 2003)). The Court finds no such abuse of discretion here.

B.  Denial of motion to vacate based on Rule 60(b)

Appellants argue that the Bankruptcy Court abused its discretion in denying Appellants' motion to vacate the settlement order under Rule 60(b)(2), (3), and (6). (Appellants' Brief at 2-4.) This Court disagrees.

1. Rule 60(b) Standard for Relief

Rule 60(b)(2), (3), and (6), provides that:

> "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud [], misrepresentation, or misconduct by an opposing party;
>
> (6) any other reason that justifies relief."

Fed. R. Civ. P. 60(b). A "motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001); In re Spiegel, Inc., 385 B.R. 35, 39 (S.D.N.Y. 2008).

7

x

2. Rule 60(b)(2)

"The movant who seeks to obtain relief from judgment under Rule 60(b)(2) must meet an 'onerous standard' by showing that: 1) the newly discovered evidence was of facts in existence at the time of the dispositive proceedings; 2) he was justifiably ignorant of those facts despite due diligence; 3) the evidence is admissible and of such importance that it probably would have changed the outcome; and 4) the evidence is not merely cumulative or impeaching." Kim v. Columbia Univ., No. 06 Civ. 5365(RPP), 2011 WL 2019801, at *4-*5 (S.D.N.Y. May 19, 2011) (citing Int'l Bhd. of Teamsters, 247 F.3d at 392).

Here, Appellants claim that the Trustee "concealed" information pertaining to (1) Norman Levy's alleged financing of Madoff's fraudulent scheme in an amount exceeding $100 billion from 1992 through 2001, and (2) the Levy Heirs' outstanding $2 billion margin loan from BLMIS as of December 11, 2008.[3] (Appellants' Brief at 1-2.) Appellants claim, in an entirely conclusory fashion, that "the newly discovered information is of such magnitude that if known, it should have

---

[3] In the January 24, 2011 letter submitted by Scott Harbeck, President and CEO of the SIPC, Mr. Harbeck details the transaction history between Norman Levy and Mr. Madoff in the period between 1992 and 2001 totaling approximately $100 billion. (See Chaitman Decl. (Docket # 3862), Ex. G at 14-15.) Additionally, the Harbeck letter shows $8 billion of negative equity balances in the accounts of Jeffrey Picower and the Levy Heirs (approximately $6 billion of which belonged to Picower). (Id. at 10, n.3.)

8

led the bankruptcy court to refuse to approve the Settlement." Id. at 13. Appellants do not attempt to explain why this would be so.

The record here demonstrates that the Bankruptcy Court expressly considered the Levy transaction history during the Rule 60(b) hearing, yet maintained its support for the Settlement. (March 30, 2011 Hr'g Tr. (Docket # 3998) at 18:7-20.) The Bankruptcy Court noted that Appellants' argument "falsely assumes that because billions of dollars flowed between BLMIS and Norman Levy . . ., the ultimate fraudulent transfer liability of Norman Levy would have been adjudicated to be in that range." (Id. at 18:7-11.) Appellants entirely fail to rebut this finding. Nor have they put forth any legal theory whatsoever that would cast doubt on the Trustee's statement that the settlement represented the entire amount recoverable from the Levy heirs. Appellants' conclusory statements that the result would have been different had the information been disclosed are entirely insufficient.

Regarding the margin loan, Appellants correctly note that the Bankruptcy Court did not consider the $2 billion liability to BLMIS. That issue, however, was raised before the Bankruptcy Court for the first time in Appellants' Reply brief in support of their 60(b) motion, (see Mem. L. Supp. Mot. Set Aside Order (Docket #3861) (making no mention of any margin loan)), and the

9

Bankruptcy Court did not err in disregarding it. United States v. Greer, 285 F.3d 158, 170 n.3 (2d Cir. 2002) (finding an argument waived when raised for the first time in a reply brief); Chavez v. United States, 764 F.Supp.2d 638, 646 (S.D.N.Y. 2011) ("It is well-established that motions must be made in a party's moving papers, not in a reply brief.") Furthermore, even with respect to this evidence, Appellants have made no effort to explain why the information should have altered the Trustee's judgment regarding the amount recoverable from the Levy Heirs or the Bankruptcy Court's approval of the settlement. The Bankruptcy Court did not abuse its discretion in denying Appellants' Motion under Rule 60(b)(2).

3. Rule 60(b)(3)

Appellants next argue that the Trustee's "failure to disclose" to the Bankruptcy Court information pertaining to (1) the Levy Heirs' $2 billion debt and (2) the transaction history between Norman Levy and Madoff was "tantamount" to misrepresentation. (Appellants' Brief at 6.) As such, Appellants claim that the Bankruptcy Court abused its discretion in denying their 60(b)(3) motion. (Id.) This Court disagrees.

Rule 60(b)(3) allows the court to vacate an order upon a showing of "fraud [], misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). To prevail on a motion under Rule 60(b)(3), the movant "must show that the

10

conduct complained of prevented the moving party from fully and fairly presenting his case." State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004). "A Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." Aneja v. M.A. Angeliades, Inc., No. 05 Civ. 9678(LAP), 2010 WL 199681, at *1 (S.D.N.Y. Jan. 12, 2010) (quoting Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989)).

The Bankruptcy Court did not abuse its discretion when it found that "the [T]rustee's lack of a blow-by-blow account of the transactional history between BLMIS and Norman Levy does not justify the extraordinary relief sought by the movants . . ." (March 30, 2011 Hr'g Tr. (Docket # 3998) at 18:13-15.) Bankruptcy courts need not conduct a "mini-trial" of all the facts underlying settlement disputes. In re Chemtura Corp., et al., 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010) (explaining that the bankruptcy court need only be "apprised of those facts that are necessary to enable it to evaluate the settlement and make a considered and independent judgment about the settlement."). Further, in settlement cases, the court is permitted to rely upon "opinions of the trustee, the parties, and their attorneys." Id.; See also Official Comm. Of Unsecured Creditors

11

of Int'l Distr. Ctrs., Inc. v. James Talcott, Inc., 103 B.R. 420, 423 (S.D.N.Y. 1989).

Given that there was no requirement that the Trustee present absolutely every fact underlying the Settlement Agreement to the Bankruptcy Court, Appellants' conclusory allegations of "materiality" with respect to the information regarding the transaction history and margin loan are wholly insufficient to meet the "clear and convincing evidence" standard to warrant relief under 60(b)(3). The Bankruptcy Court did not abuse its discretion in denying relief under that section.

4. Rule 60(b)(6)

Rule 60(b)(6) permits a court to grant relief from a final order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case. Furthermore, it is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship[.]" Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (internal quotations and citations omitted).

Appellants' entire argument for relief under Rule 60(b)(6) is stated in one sentence, which reads, "As a result of the

12

Trustee's dishonest conduct, BLMIS customers have justifiably lost confidence in the judicial process." (Appellants' Brief at 19.) The Bankruptcy Court did not abuse its discretion in finding that Appellants' "loss of confidence in the judicial process" was not an "exceptional circumstance" warranting relief, where that "loss of confidence" was based entirely on the Trustee's failure to disclose information (1) that he was under no duty to disclose, and (2) that was not relevant to the merits of the settlement approval motion in any way that Appellants have managed to articulate.

C. Denial of reply brief

Finally, the Bankruptcy Court did not abuse its discretion when it refused to consider Appellants' reply papers. (See Appellants' Brief at 19.) The Second Circuit has held that, "[t]he Bankruptcy Court ha[s] the discretion not to consider an argument raised for the first time in the reply papers and it was not an abuse of discretion not to consider the argument." In re Teligent, Inc., 326 B.R. 219, 229 (S.D.N.Y. 2005); see also Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999); Section B.2, supra. Since Appellants raised the issue of disqualifying the Trustee and his counsel for the first time in reply papers, the Bankruptcy Court did not abuse its discretion when it refused to consider it.

13

III. CONCLUSION

The March 30, 2011 Order of the United States Bankruptcy Court, Judge Burton R. Lifland, is hereby AFFIRMED. The Clerk of Court is directed to CLOSE the docket in this case.

SO ORDERED.

Dated: New York, New York
February 16, 2012

Deborah A. Batts
United States District Judge

14