1

2  UNITED STATES BANKRUPTCY COURT

3  FOR THE SOUTHERN DISTRICT OF NEW YORK

4  Case No. 08-01789-brl

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7  SECURITIES INVESTOR PROTECTION CORPORATION,

8

9  v.

10

11  BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

12             Defendant.

13

14  - - - - - - - - - - - - - - - - - - - -x

15             United States Bankruptcy Court

16             One Bowling Green

17             Courtroom 623 (BRL)

18             New York, NY  10004-1408

19

20             March 15, 2012

21             10:00 AM

22

23  B E F O R E:

24  HON. BURTON R. LIFLAND

25  U.S. BANKRUPTCY JUDGE

Page 2

1    (cc-4678) Windels Marx Lane & Mittendorf, LLP's Seventh

2    Application for Interim Professional Compensation for Services

3    Rendered and Reimbursement of Actual and Necessary Expenses

4    Incurred from June 1, 2011 through September 30, 2011 for

5    Windels Marx Lane & Mittendorf, LLP, Special Counsel, period:

6    6/1/2011 to 9/30/2011, fee: $2,951,809.50, expenses:

7    $31,137.86.

8

9    (cc-4676) Baker & Hostetler LLP's Eight Application of Trustee

10   and for Allowance of Interim Compensation for Services Rendered

11   and Reimbursement of Actual and Necessary Expenses Incurred

12   from June 1, 2011 through September 30, 2011 for Baker &

13   Hostetler, LLP, Trustee's Attorney, period: 6/1/2011 to

14   9/30/2011, fee: $47,967,371.55, expenses: $1,245,333.46.

15

16   (4682) SCA Creque as Special Counsel to the Trustee Application

17   for Allowance of Interim Compensation for Services Rendered and

18   Reimbursement of Actual and Necessary Expenses Incurred from

19   June 1, 2011 to September 30, 2011 for SCA Creque, Special

20   Counsel, period: 6/1/2011 to 9/30/2011, fee: $70,919.59,

21   expenses: $1,084.80.

22

23   (4679) Taylor Wessing as Special Counsel to the Trustee

24   Application for Allowance of Interim Compensation for Services

25   Rendered and Reimbursement of Actual and Necessary Expenses

Page 3

1    Incurred from June 1, 2011 through September 30, 2011 for

2    Taylor Wessing, Special Counsel, period: 6/1/2011 to 9/30/2011,

3    fee: $1,476,052.11, expenses: $162,162.33.

4

5    (4680) UGGC & Associes as Special Counsel to the Trustee

6    Application for Allowance of Interim Compensation for Services

7    Rendered and Reimbursement of Actual and Necessary Expenses

8    Incurred from June 1, 2011 through September 30, 2011 for UGGC

9    & Associes, Special Counsel, period: 6/1/2011 to 9/30/2011,

10   fee: $18,297.83, expenses: $206.75.

11

12   (4681) Graf & Pitkowitz Rechtsanwalte GmbH as Special Counsel

13   to the Trustee Application for Allowance of Interim

14   Compensation for Services Rendered and Reimbursement of Actual

15   and Necessary Expenses Incurred from June 1, 2011 through

16   September 30, 2011 for Graf & Pitkowitz Rechtsanwalte GmbH,

17   Special Counsel, period: 6/1/2011 to 9/30/2011, fee:

18   $600,076.69, expenses: $44,587.04.

19

20   (4683) Attias & Levy as Special Counsel to the Trustee

21   Application for Allowance of Interim Compensation for Services

22   Rendered and Reimbursement of Actual and Necessary Expenses

23   Incurred from February 1, 2011 through September 30, 2011 for

24   Attias & Levy, Special Counsel, period: 2/1/2011 to 9/30/2011,

25   fee: $281,455.26, expenses: $23,263.85.

Page 4

1

2      (4686) Higgs & Johnson (formerly Higgs Johnson Truman Bodden &

3      Co.) as Special Counsel to the Trustee Application for

4      Allowance of Interim Compensation for Services Rendered and

5      Reimbursement of Actual and Necessary Expenses Incurred from

6      June 1, 2011 through September 30, 2011 for Higgs & Johnson

7      (formerly Higgs Johnson Truman Bodden & Co.), Special Counsel,

8      period: 6/1/2011 to 9/30/2011, fee: $82,541.25, expenses:

9      $6,607.19.

10

11     (4692) Greenfield Stein & Senior, LLP as Special Counsel to the

12     Trustee Application for Allowance of Interim Compensation for

13     Services Rendered and Reimbursement of Actual and Necessary

14     Expenses Incurred from April 20, 2011 through September 30,

15     2011 for Greenfield Stein & Senior, LLP, Special Counsel,

16     period: 4/20/2011 to 9/30/2011, fee: $8,248.05, expenses: $0.

17

18     (4684) Eugene F. Collins as Special Counsel to the Trustee

19     Application for Allowance of Interim Compensation for Services

20     Rendered and Reimbursement of Actual and Necessary Expenses

21     Incurred from June 1, 2011 through September 30, 2011 for

22     Eugene F. Collins, Special Counsel, period: 6/1/2011 to

23     9/30/2011, fee: $1,550.86, expenses: $217.99.

24

25     (4685) Schiltz & Schiltz as Special Counsel to the Trustee

Page 5

1    Application for Allowance of Interim Compensation for Services

2    Rendered and Reimbursement of Actual and Necessary Expenses

3    Incurred from June 1, 2011 through September 30, 2011 for

4    Schiltz & Schiltz, Special Counsel, period: 6/1/2011 to

5    9/30/2011, fee: $8,378.96, expenses: $544.63.

6

7    (4687) Kugler Kandestin, LLP as Special Counsel to the Trustee

8    Application for Allowance of Interim Compensation for Services

9    Rendered and Reimbursement of Actual and Necessary Expenses

10   Incurred from June 1, 2011 through September 30, 2011 for

11   Kugler Kandestin, LLP, Special Counsel, period: 6/1/2011 to

12   9/30/2011, fee: $1,748.85, expenses: $0.

13

14   (4688) Young Conaway Stargatt & Taylor LLP as Special Counsel

15   to the Trustee Application for Allowance of Interim

16   Compensation for Services Rendered and Reimbursement of Actual

17   and Necessary Expenses Incurred from June 1, 2011 through

18   September 30, 2011 for Young Conaway Stargatt & Taylor LLP,

19   Special Counsel, period: 6/1/2011 to 9/30/2011, fee:

20   $19,995.30, expenses: $425.35.

21

22   (4689) Williams, Barristers & Attorneys as Special Counsel to

23   the Trustee Application for Allowance of Interim Compensation

24   for Services Rendered and Reimbursement of Actual and Necessary

25   Expenses Incurred from June 1, 2011 through September 30, 2011

1   for Williams, Barristers & Attorneys, Special Counsel, period:

2   6/1/2011 to 9/30/2011, fee: $72,659.58, expenses: $950.00.

3

4   (4690) Werder Vigano as Special Counsel to the Trustee

5   Application for Allowance of Interim Compensation for Services

6   Rendered and Reimbursement of Actual and Necessary Expenses

7   Incurred from June 1, 2011 through September 30, 2011 for

8   Werder Vigano, Special Counsel, period: 6/1/2011 to 9/30/2011,

9   fee: $20,860.41, expenses: $53.57.

10

11   (4691) Mishcon de Reya as Special Counsel to the Trustee

12   Application for Allowance of Interim Compensation for Services

13   Rendered and Reimbursement of Actual and Necessary Expenses

14   Incurred from June 1, 2010 through October 26, 2010 as well as

15   Reimbursement of Fees Previously Held by SIPC for Mishcon de

16   Reya, Special Counsel, period: 6/1/2010 to 10/26/2010, fee:

17   $1,743,752.47, expenses: $139,765.97

18

19

20

21

22

23

24

25   Transcribed by:  Anna Maria Leon

Page 7

```
1    A P P E A R A N C E S :

2    BAKER HOSTETLER LLP

3         Trustees for Bernard L. Madoff Investment Securities, LLC

4         45 Rockefeller Plaza

5         New York, NY  10111

6

7    BY:   DAVID J. SHEEHAN, ESQ.

8         IRVING H. PICARD, ESQ.

9

10

11   SECURITIES INVESTOR PROTECTION CORPORATION

12        Counsel for Dispute Resolution

13        805 15th Street, N.W., Suite 800

14        Washington, D.C.  20005-2215

15

16   BY:   KEVIN H. BELL, ESQ.

17

18

19   WINDELS MARX LANE & MITTENDORF, LLP

20        Counsel for Bernard L. Madoff Investment Securities, LLC

21        156 West 56th Street

22        New York, NY  10019

23

24   BY:   HOWARD SIMON, ESQ.

25        ALAN NISSELSON, ESQ.
```

```
 1                     P R O C E E D I N G S

 2             MR. SHEEHAN:   Good morning, Your Honor.

 3             THE COURT:   Good morning.

 4             MR. SHEEHAN:   Good to see you.  How are you?

 5             THE COURT:   I'm fine.

 6             MR. SHEEHAN:   Good.

 7             As Your Honor well knows, this is the return date of

 8     an application by the Trustee for the approval of fees and

 9     allowances for himself, for his firm, and for a number of

10     foreign counsel that he has retained to assist him in the

11     liquidation of the BLMIS.  There is, I should note for the

12     record, no objection to any of these applications, but as I

13     have done in the past in reporting to Your Honor a bit on these

14     topics, although I know Your Honor has had the opportunity to

15     review the filings, I would like to just summarize briefly the

16     work that has been performed by each of these firms and why the

17     Trustee supports their application, and also to inform Your

18     Honor as some of the activities that are ongoing in each of

19     these cases, if I may do so.

20             THE COURT:   Please, go forward.

21             MR. SHEEHAN:   All right.

22             The first application I'm going to talk about is that

23     of Attias & Levy.  This is the firm that's been assisting us in

24     Gibraltar.  Your Honor actually has some intimate familiarity

25     with that since you through letters to the Gibraltar court have
```

Page 9

1   assisted us in ultimately returning the funds here to the

2   depository in this courthouse, and the default judgment that

3   was entered by Your Honor was instrumental in bringing those

4   parties to this courthouse and ultimately that matter will be

5   adjudicated before Your Honor.  That firm has spent a good deal

6   of time, 940 hours, working with us on that effort.  It has as

7   I pointed out been very successful to date and hopefully we'll

8   reach an ultimately victorious conclusion at the end.

9          The next firm is Eugene Collins, very small number of

10  hours.  That's because while the Thema Fund is a very

11  significant fund that we are focusing and investigating, the

12  activities in Ireland which is where the Thema Fund is

13  incorporated have been relatively minor, most of the activity

14  is taking place elsewhere.

15         Graf & Pitkowitz are a Vienna law firm.  The work

16  that they do for us principally orbits around the Sonja Kohn

17  matters.  Two principal defendants there are Bank Medici and

18  Bank Austria, which are both, of course, in Austria.  Recently

19  Judge Rakoff has seen fit to dismiss them from our RICO case.

20  That matter is now on appeal.  But there remain many, many

21  other defendants in that RICO action besides those two banks,

22  and we are working closely not only with -- and I think Your

23  Honor will find this interesting -- with our local

24  investigators and with our local counsel, but because of the

25  nature of the criminal proceedings there, Mr. Picard has been

08-01789-cgm    Doc 4736    Filed 03/16/12    Entered 03/19/12 15:38:57    Main Document
Securities Protection Corp. v. Madoff Securities, et al.
Pg 10 of 30

Page 10

1    designated a victim by virtue of representing the customers

2    here and if criminal authorities can share with us and have

3    shared with us very significant documentation that they've

4    achieved through their own investigations and through testimony

5    that they've taken.  We can't participate in the proceedings,

6    but we can share in the information, and we are continuing to

7    do that, and Graf & Pitkowitz were instrumental in making that

8    happen for us.

9            Greenfield Stein is an outfit that we've been using

10   mostly to work with us in preparing affidavits in connection

11   with filing different claims.  Their time is minimum as well.

12           Higgs & Johnson is in the Cayman Islands.  That's a

13   much more major matter.  That is Harley International and

14   Primeo Fund.  Both of those funds have liquidators in the

15   Cayman Islands.  We appear there, not regularly, but often in

16   connection with our local counsel.  There is, as you might

17   surmise, a dispute between the liquidators and ourselves with

18   regard to the assets, and ultimately the beneficiaries of who

19   will receive those assets.  So we have actively appeared there

20   in court and Higgs & Johnson is our local counsel that assists

21   us in that effort.

22           Again, a very small matter is Kugler Kandestin.  We

23   do have some activities, very minor, in Canada.  Occasionally

24   we reach out for them for bankruptcy law.  Our principal is in

25   Canada, again it's only a little over four hours.

08-01789-cgm    Doc 4736    Filed 03/16/12    Entered 03/19/12 15:38:57    Main Document
Securities Protection Corp. v. Madoff Securities, et al.
Pg 11 of 30

Page 11

1           Mishcon de Reya; Mishcon de Reya is an English law

2     firm that was originally retained by the Trustee to be its

3     principal counsel in London in connection with the various

4     litigation that's there.  That is the litigation against the

5     directors of MSIL, the Bernie Madoff matter enterprise that was

6     in London.  They've also worked with us with regard to the

7     Sonja Kohn freeze order, which I'll speak about in a minute,

8     and a number of other things.  What happened along the way,

9     unfortunately, was they developed a conflict, one that they

10    should have seen.  Unfortunately as a result of that conflict,

11    it was with Hassans bank that actually -- or Hassans law firm

12    that represents Sonja Kohn.  Can't explain how it got missed,

13    but it did.  There was a significant negotiation by the Trustee

14    and SIPC with regard to their work on the basis of a quantum

15    meruit analysis because a good deal of the legal research and

16    other work that they had done was utilized by us with Taylor

17    Wessing to advance those lawsuits.  We came to a negotiated

18    settlement at that amount, the discount that they've taken is

19    about 35 percent, very significant discount, on top of the 10

20    percent public interest discount.  So a total of 45 percent has

21    been dealt with by the Trustee and Trustee and SIPC

22    notwithstanding the fact that we had to replace counsel and the

23    difficulties that were engendered by that are recommending that

24    on that substantially reduced basis the Mishcon de Reya fees be

25    paid.

Securities Protection Corp. v. Madoff Securities, et al.

Page 12

1          Schitz & Schitz (verbatim) is in Luxenborg -- Schiltz

2     & Schiltz, I should say -- Luxenborg -- mispronounced that.  In

3     any event, Luxenborg is an -- how can I put this -- it's a

4     jurisdiction where many transactions as I guess we all surmise

5     by Luxemburg pass through it.  None of them ever really stay

6     there.  So we've been chasing things through Luxemburg.

7     Schiltz has been very helpful to do that -- helping us with

8     that.  It's not an area where we're going to be.  The Trustee

9     has been sued there which is the only reason, and it's along

10    with hundreds of other defendants.  He's just been named as a

11    nominal filing against him.  We have Schiltz monitoring it, but

12    we don't see it as a cause of action, no raising problems for

13    us.  We haven't brought it up to Your Honor's attention because

14    we don't think it merits getting Your Honor involved, and if we

15    do, we'll come back and see you on it.

16          Next one is Taylor Wessing.  Taylor Wessing has, as

17    you can see, almost 3,000 hours of time.  Taylor Wessing is the

18    firm that came on after Mishcon de Reya.  Since Mishcon de

19    Reya's defiling of the complaints in December, there have been

20    many applications before the Court in London, some significant

21    findings by the Court with regard to the various causes of

22    action.  As Your Honor well knows, we've entered into a

23    cooperation agreement which this court approved between

24    ourselves and Mr. Acres who is the liquidator, appointed, in

25    London with regard to MSIL.  That cooperation agreement gives

Securities Protection Corp. v. Madoff Securities, et al.

Page 13

1    us the opportunity to pursue various claims through his

2    standing by utilizing our law firm, Taylor Wessing.  And that

3    has given us the ability to sue all the directors there as well

4    as to sue Ms. Kohn for all the money she received out at MSIL,

5    as well as all the other claims that they have against her.  So

6    we have parallel actions against her, both here and in the

7    U.K., and they have been very successful.  Probably the most

8    successful thing has been, as I mentioned order, obtaining a

9    freezing order which gives us the ability to freeze her assets

10   worldwide.  It's sort of reflective of, I guess, the old order

11   of the British Empire that they can issue worldwide injunctions

12   but they do.  And apparently are honored, and we are using that

13   to enforce those throughout Europe at this time.

14          And in addition to that, we've had a great deal of

15   success in terms of getting discovery of the other side through

16   various statements, et cetera.  So they have been working with

17   us as I say very hard and over the last year, and I think we've

18   had some really good success.  That case will be on for trial

19   about a year from today.  So we are actively downgauged in what

20   is limited, pretrial discovery in the U.K. but we're working

21   towards that trial date.

22          UGGC Associates is in France.  Again, that is not a

23   jurisdiction where we have any litigation, but there are

24   ongoing criminal investigations and not unlike Austria, we are

25   working cooperatively with the criminal authorities there to --

Page 14

1    we assist them with information and they in turn assist us with

2    information.  It's not on the same formal level as Austria,

3    it's a very informal relationship at this point and it hasn't

4    really generated, quite frankly, a good deal help for us, but

5    we've had some assistance from them.  Probably the most

6    interesting one was is that if you'll remember the French

7    authorities released the ASR report that was filed by JPMorgan

8    Chase in October of 2008, noting that they found Bernie to be -

9    - Bernie Madoff to be a fraud, and they were withdrawing their

10   accounts from there.  That was released to us, it is now a

11   public document, and we relied upon that in our litigation.

12          Then we have a Swiss law firm, Werder Vigano.

13   They've been helpful to us, again, not a lot of time.  As I've

14   said before, Mr. Madoff's empire as it were stretched out

15   throughout Europe.  We have to chase it through all those

16   different entities, a good deal of it passed through

17   Switzerland and went out of Switzerland, so we use them for

18   that.

19          The Williams, Barristers are in Bermuda.  Bermuda is

20   the central location for Kingate.  Kingate is a large fund.

21   One that Your Honor is probably familiar with is the one where

22   they were going to finance their plane, but as a result of

23   certain activities, they were not able to get Deutsche Bank to

24   go forward with their claim.  And so as a result there is now

25   litigation between the Kingate liquidators and Deutsche Bank.

Securities Protection Corp. v. Madoff Securities, et al.

Page 15

1    But we're trying to enforce the funding of their claim.  But in

2    the meantime in Bermuda, there's Kingate Management Limited

3    that is the overall holding company that takes care of or held

4    the assets of and were the operational arm of Kingate.  Kingate

5    itself, the fund, is a BVI Corporation.  We are there as well.

6    We are active in both of those jurisdictions.  KML or Kingate

7    Management tried to wind up recently and enter an order giving

8    it the ability to destroy all of its records.  We've been

9    actively litigating that.  We've stopped that from happening.

10   We have a neutral court-appointed, at this point, receiver in

11   charge of that who is going to maintain those documents and

12   they will be available to us for litigation, and the way this

13   firm has been working with us on all of that.

14          So that in quick summary, Your Honor, is the work

15   that we have been doing in various jurisdictions around the

16   world.  The -- we have, of course, other applications here

17   before Your Honor.  I'd like to, just if I could, go through

18   those, too, but at this point, on those European applications,

19   I'd like to move at this time for their approval by the Court.

20          THE COURT:  Does anyone want to be heard?

21          MR. BELL:  Yes, Your Honor.  I want to address the -

22   - SIPC has filed a recommendation at Docket 4019 in support of

23   all of the applications, but for the record, I want to talk

24   about the Mishcon one, where there was the substantial

25   discount.  And included in that discount, and SIPC was

Page 16

1    intimately involved in those discussions, was an accounting for

2    the time of the learning curve by the successor law firm,

3    Taylor Wessing, as well as the time for the Baker lawyers that

4    were working on this.  So when Mr. Sheehan says there were

5    discussions, there were many discussions and SIPC is

6    recommending the number that is filed with this Court but does

7    support Mr. Sheehan's statement that it is a severe discount

8    and accordingly with regard to all of foreign counsel, SIPC

9    recommends that the applications as filed be approved.

10           Thank you, Your Honor.

11           THE COURT:   Does anyone else want to be heard?

12           Well, having heard the description and being well

13   aware of the worldwide activities started off by Bernie Madoff

14   and the sequelae is left for everybody else to follow all the

15   trails and the trails do lead almost everywhere in the world.

16   It is clear under the circumstances that a Herculean effort to

17   follow those trails has been involved both with counsel here in

18   the United States and counsel overseas.  And it is clear to the

19   Court that there is nothing really out of line in connection

20   with the applications that are before the Court, and under the

21   statute, the SIPC recommendation is almost a mandate for the

22   Court's approval and it appears that there has been a

23   substantial due diligence with respect to reviewing these

24   applications, and I will approve them.

25           MR. SHEEHAN:   Thank you, Your Honor.

Securities Protection Corp. v. Madoff Securities, et al.

1          There are just several other applications I'd like to

2     bring before Your Honor this morning.  Of course, two of them

3     are conflicts counsel that we've had; one from almost the

4     beginning is Windels Marx.  Mr. Nisselson is here in the

5     courtroom today, so is Howard Simon who works on this case on a

6     daily basis at this point.  The activity of those two firms --

7     that firm in this case has been, as I've reported throughout,

8     outstanding.  They do great work for the Trustee, they've been

9     involved in significant litigation matters before Your Honor

10    that I know Your Honor is familiar with.  They've been not only

11    a great assistance to us in conflict work, but because of the

12    scope and magnitude of the work, they've actually taken on

13    additional work that expands even beyond the conflicts work

14    itself.  So they've done an outstanding job with regard to the

15    litigation, the discovery, the monitoring of the litigation,

16    and working with us cooperatively on -- and in particular, the

17    family matters which come up on a fairly regular basis.

18          The other firm, of course, is that given the expanse

19    of the Madoff matter, even when you have a conflict counsel,

20    the conflict counsel can have conflicts.  So we have Young

21    Conaway also in the case who has assisted us in matters that

22    Windels has not been able to handle for us involving various

23    banking and other institutions.  Their work has been equally

24    good and in fact, beyond, it's been very good, for the Trustee.

25    They've done a very fine job for us, and in both instances the

Securities Protection Corp. v. Madoff Securities, et al.

Page 18

1    Trustee would recommend that those be approved as well.

2            Last but not least, of course, is the Baker firm,

3    which Your Honor I know also has a lot of familiarity with.  I

4    could go through a lot, if you will, background here this

5    morning.  I think I'll just if I may, Your Honor, talk about

6    some events over the last couple of months that I think are --

7    the months of this application that I think are important.

8            As Your Honor well knows, there's been a great deal

9    of activity in the District Court.  Ever since the withdrawal

10    of the reference in the HSBC matter, and even more importantly,

11    in the Picard Katz matter, there have been numerous motions

12    filed there for withdrawal of the references, as well as then

13    thereafter when the reference is withdrawn, motions to dismiss.

14    Those have involved literally hundreds if not thousands of

15    hours of work 'cause there are now approximately 400 to 500

16    cases that are potentially been withdrawn.  Only ten have been

17    withdrawn so far, but the potential is we've now scheduled

18    motions through almost the end of the year with regard to the

19    motion as to withdraw the reference.  It's become a totally

20    separate practice from what we had here before Your Honor,

21    dealing almost repetitively with the similar issues of 546

22    Antecedent Debt Stern Marshall and other related matters.

23            As Your Honor well knows, next week on Monday we will

24    start the Katz Wilpon trial.  Imbedded in that case are a

25    number of those issues.  Irrespective of the outcome, win,

Securities Protection Corp. v. Madoff Securities, et al.

Page 19

1    lose, or draw, we will be on appeal with regard to all of those

2    as well.  So there's been a tremendous amount of preparation

3    for that trial, reflective of the fact that those issues are

4    probably in the forefront in terms of getting those issues

5    reviewed on an appellate level.  Needless to say, many, many

6    hours have been spent preparing for that trial and getting it

7    ready.  It's been done on a very, very short-term basis, and so

8    while that time isn't really reflected in their application

9    before Your Honor, it has absorbed a good deal of our time

10   since last summer.

11          The other matters that we have before Your Honor, I'd

12   like -- I'm very happy to report that notwithstanding a lot of

13   the other activities I was just alluding to, we still managed

14   to settle a lot of cases, and right now the Trustee has

15   separate and apart from what is on hand at the U.S. Attorney's

16   office has collected well over $9 billion.  Our hope is, is

17   that as Your Honor well knows, there is a surcharge petition on

18   the net equity decision Your Honor rendered and which was

19   affirmed by the Second Circuit now pending in the Supreme

20   Court.  We're very confident that that surchiarity (phonetic)

21   will be denied.

22          The Trustee is working very hard to develop a plan

23   where additional, hopefully substantial distribution can take

24   place this summer once that's behind us.  We also have the

25   issue of the ERISA claimants which we've now scheduled before

08-01789-cgm    Doc 4736    Filed 03/16/12    Entered 03/19/12 15:38:57    Main Document
Securities Protection Corp. v. Madoff Securities, et al.
Pg 20 of 30

Page 20

1    Your Honor.  We are working on that.

2         We also have, and recently it came up in the Katz

3    Wilpon case the issue of the constant dollar, which is as Your

4    Honor knows, has been raised by the SEC and which was put to

5    the side under net equity field, but which is now back.  Judge

6    Rakoff has not indicated whether he's going to take that issue

7    as yet.  He's considering it in connection with his ruling in

8    our favor with regard to fictitious profits and whether or not

9    he should consider that.  He had initially refused to do so on

10   several motions to withdraw the reference, deeming it an issue

11   that should be decided by the Bankruptcy Court.  At this time,

12   however, even though it's on Friday, that he is taking a second

13   look at that, and he may, in fact, take it, I assume.

14        In any event -- so there's been lots of activity

15   orbiting around the motions to withdraw the reference, the

16   motion to dismiss, and Katz Wilpon, but when I talk about all

17   those other cases that are around the world, those go on on a

18   daily basis.  Nothing really stops those.  We coordinate and

19   direct and are involved in those on a daily basis.  There are

20   various teams at Baker that direct those individuals that work

21   with them on a daily basis.  Most of the actions we have over

22   there are parallel with actions we've filed here before Your

23   Honor, so in -- and many of those, as Your Honor knows, have

24   not had the motion to withdraw the reference filed.  It's a

25   very interesting phenomenon how that occurs, need not get into

Securities Protection Corp. v. Madoff Securities, et al.

Page 21

1    it here, but the bottom line is is that those cases there if

2    we're going to continue to progress before Your Honor; for

3    example, that is obviously the Madoff family matter, the Mirkin

4    matter, and others, which are here and will continue to be here

5    and which are being actively litigated as I speak.  So even

6    though there's a lot of attention drawn to the motions that are

7    before Judge Rakoff, there is a great deal of activity that's

8    occurring, if you will, somewhat behind the scenes in terms of

9    discovery, depositions, document discovery, et cetera.

10         Speaking of document discovery, as I think I've

11   mentioned before to Your Honor, we have 17 terabytes of

12   documents, that is warehouses full of documents.  We've managed

13   to bring them into several data rooms; one Your Honor has

14   already approved and are in form.  We're still working on the

15   order on data room 2, the issues there are extremely

16   complicated to try to satisfy everyone who may have an interest

17   there, but we're hopeful that that will happen so that third

18   party documents will also be available to counsel.

19         In the meantime, we're doing it on a one-off basis.

20   We have no choice but to do so, so what we're finding is we

21   have fairly significant, literally millions of documents being

22   produced on an individual case basis because we have no other

23   choice until we get that resolved.  That requires a great deal

24   of effort on our part to review those documents.  Our principal

25   concern is PII, personal identifiable information, as well as

Page 22

1   anything that might trigger other privacy concerns, so we're

2   very, very careful about, and we have to therefore redact a lot

3   of those documents or provide them in a way that they're

4   secure.  So as a result, there's a great deal of effort that's

5   spent on that.  We literally have at this point dozens of

6   people reviewing documents because of the vast nature of the

7   document demands that are being served on the Trustee in all of

8   the litigations.

9           So that, in a very general sense, Your Honor, tells

10  you the story of what we've been doing.  It's spelled out in

11  greater detail of course in the application, and we do file on

12  a regular basis our Trustee report which does summarize those

13  as well.  But based upon all of that effort, Your Honor, and

14  absent any objection, I'll move that the application of Baker

15  and the Trustee also be approved today.

16          THE COURT:   Does anyone want to be heard?

17          MR. BELL:   Yes, Your Honor.

18          SIPC has filed its recommendation on the Baker

19  application at Docket 4717.  Last Wednesday, the Government

20  Accountability Office issued its interim report on liquidation

21  -- on the Madoff's liquidation, and included in that was an

22  extensive review by the GAO of the fees and the applications

23  and the costs of this case.  And I'm pleased to report the GAO

24  in their report to Congress, which was the subject of the

25  hearing last Wednesday, said that this case is not out of the

1   ordinary from the usual practice and costs of other cases.

2   It's just larger.  And they reviewed our --

3          THE COURT:   Sixty-five billion dollars larger.

4          MR. BELL:   Yeah, Congressman Garrett has an intimate

5   knowledge of all the facts in this case and continually raises

6   questions which we answer with all speed and depth of

7   information for him.  The GAO report is GAO-12-414 and it's

8   available online on the Government's website.

9          The important thing, Your Honor, is that the GAO had

10  many meetings with the Securities Investor Protection

11  Corporation.  We provided them our recommendations.  We

12  provided them transcripts of the hearings on the fees and Your

13  Honor's statements to them, and in some of them, were even

14  incorporated into the GAO report.  And we did a review of one

15  month in what we do in our review of the -- our extensive --

16  SIPC's extensive review of the -- all applications on fees,

17  because SIPC takes its responsibility very seriously that

18  Congress has given us as the Court talks about the mandate

19  section of the statute.  And we have done the same with regard

20  to this fee application, and Mr. Sheehan is correct that the

21  motions to withdraw the reference, the MTWR process has created

22  a new wing in the Baker fee applications.  On a daily basis, I

23  personally am on the phone with Judge Rakoff's chambers with

24  regard to these, and I do think we are going into next year

25  already with the scheduling based on the ones that are

Securities Protection Corp. v. Madoff Securities, et al.

1    happening and Your Honor's order setting a bar date of April 2

2    will, I think, cause a greater flow of those motions to be

3    filed.

4           The important thing that is here is that this is a

5    large case, but as the SIPC's president testified last

6    Wednesday before Congress, the thing to remember, and the GAO

7    report talks about projection the Trustee has given that he

8    expects that the costs of the liquidation will exceed a billion

9    dollars, a billion point zero nine four, through the end of

10   2014, is that the Trustee has also achieved through remarkable

11   accomplishment of gathering nine point -- approximately $9.1

12   billion at the current time.  And Kingate, as Your Honor knows,

13   is a matter that was almost settled and there's litigation with

14   the claims buyer in the District Court matter between the

15   Kingate liquidators and Deutsche Bank which is public record.

16          And there are a number of other settlements that were

17   on the process on the doorstep of being finalized until we --

18   this MTWR wing of this case started gathering steam.  So it is,

19   you know, the last two times that I appeared before the Court,

20   I had hope, I still have hope, it's just going to be a longer

21   term hope, that victims will get satisfied, fully satisfied.

22   One other point that I would raise is that I was on -- and I

23   haven't told Mr. Sheehan this late last -- yesterday afternoon

24   -- I was on the phone call to Judge Rakoff's chambers on

25   constant dollars; the phone call that was raised by one of the

Securities Protection Corp. v. Madoff Securities, et al.

Page 25

1    parties that already had submitted, and on a motion to dismiss,

2    and that was fully briefed and argued, and was submitted to you

3    today, and they were trying to reopen it as to constant

4    dollars.  And Judge Rakoff clarified saying that while he may

5    or may not raise constant dollars in the Katz Wilpon case, it

6    was not prime for briefing.  And I did advise the Court that it

7    was my expectation, and Mr. Sheehan has confirmed that, that

8    pursuant to the comments in your opinion in the Second Circuit,

9    that as soon as we get a final, non-appealable order with

10   regard in that equity, and I am hopeful that by June of this

11   year we will be in that position, because the oppositions by

12   the Trustee and SIPC were filed late last week, that we will be

13   bringing a motion on constant dollars so this Court can have

14   the wisdom of all parties and we would look forward to the

15   opportunity to argue that matter before the Court.

16           In conclusion, I just say SIPC supports this

17   application by Baker.  It has made an extensive review as you

18   can see in certain paragraphs of the recommendation and its

19   suggestions on reductions have been graciously accepted by the

20   applicants and we would ask the Court to approve of the fees as

21   submitted.

22           Thank you, Your Honor.

23           THE COURT:   Does anyone else want to be heard?

24           I note that there's no filed response other than

25   SIPC's.  And in the past I've also called everybody's attention

Securities Protection Corp. v. Madoff Securities, et al.

Page 26

1    to the statute itself, which gives very little choice to the

2    Court unless there is some disruption with the three factors

3    that the Court must consider in the event that there is a non-

4    recommendation by SIPC.  But clearly, SIPC is recommending the

5    fees.  The Court's discretion, I think in 1978, was taken away

6    in connection with this matter.  Nevertheless, I am not here

7    just to listen to a lot of patting -- self-patting on the back,

8    and the Court's not unaware of the enormous amount of fees that

9    are involved here, nor is the Court unaware as to the reason

10   for it, and as to what benefits have accrued based upon the

11   expenditure of so much by way of fees.

12         As I indicated previously, Bernie Madoff has put this

13   matter on the world stage, the tentacles reach all over the

14   world, litigation all over the world, the Trustee's involvement

15   in counsel with realty to the Trustee's involvement is enormous

16   and there is extremely active litigation on the international

17   front and obviously on the domestic front.  There is no

18   question about the intensity of the litigation.  There is no

19   shortage -- aside from the fact that the three applications

20   before me, I'm not unaware of the fact that there's no shortage

21   of well-financed litigators on the other side of every piece of

22   litigation that's involved with the Trustee.  I don't know if

23   anybody is going to Congress to see how much victims and other

24   responsible, responsive parties are spending on their parts to

25   the litigation.  I dare say it probably equals or exceeds

Securities Protection Corp. v. Madoff Securities, et al.

Page 27

1   what's being surfaced before this Court.

2         It is clear that litigators continue to push with the

3   concomitant push back are necessary in complex litigation which

4   results in an amount of fees under the circumstances of this

5   case, and they're not at all surprising.  The other thing that

6   is not always to be seen as the case is the question of, did

7   the fees generate something worthy as a result of all of this?

8   Right now, on hold there is some $9 billion that has come in

9   that is awaiting distribution or not, based upon all of this

10  continued litigation.  In this respect, it's unfortunate in our

11  litigious society that the victims are not necessarily going to

12  get to see a major distribution in the immediate future unless

13  this litigation impasse can be resolved.  That means to some

14  extent that victims that don't fall in any equal way are being

15  re-victimized.  And that's the unfortunate result of what

16  perhaps is a plethora of litigation.  It would be better if the

17  parties could accommodate each other to some extent so that

18  this longines of some $9 billion can be broken to some large

19  extent.

20        With that, it's clear from the Court's observations

21  and remarks that I'm approving the applications that are before

22  me today.  And I will entertain an order.

23        MR. SHEEHAN:   Thank you, Your Honor.

24        Your Honor, I also -- the Trustee did bring with us

25  the interim report -- I don't know if you'd like a copy of it -

Securities Protection Corp. v. Madoff Securities, et al.

Page 28

```
 1      - by the GAO and I can hand that up to you as well.

 2                THE COURT:   Yeah, please.

 3                MR. SHEEHAN:   Thank you, Your Honor.

 4                THE COURT:   I've approved the order.

 5                MR. SHEEHAN:   Thank you, Your Honor.

 6

 7          (Whereupon these proceedings were concluded at 10:34 AM)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 29

```
 1                        I N D E X

 2

 3                        RULINGS

 4                                           Page      Line

 5   Fee Application of Windels Marx - approved    27        21

 6   Fee Application of Baker & Hostetler LLP      27        21

 7   - approved

 8   Fee Application of SCA Creque - approved      27        21

 9   Fee Application of Taylor Wessing - approved  16        24

10   Fee Application of UGGC & Associes - approved 16        24

11   Fee Application of Graf & Pitkowitz - approved 16       24

12   Fee Application of Attias & Levy - approved   16        24

13   Fee Application of Higgs & Johnson - approved 16        24

14   Fee Application of Greenfield Stein - approved 16       24

15   Fee Application of Eugene F. Collins          16        24

16   - approved

17   Fee Application of Schiltz & Schiltz          16        24

18   - approved

19   Fee Application of Kugler Kandestin           16        24

20   - approved

21   Fee Application of Young Conaway - approved   27        21

22   Fee Application of Williams - approved        16        24

23   Fee Application of Werder Vigano - approved   16        24

24   Fee Application of Mishcon de Reya - approved 16        24

25
```

1              C E R T I F I C A T I O N

2

3      I, Anna Maria Leon, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5

6

7

8      _____

9      ANNA MARIA LEON

10

11     Veritext

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15

16

17     Date:  March 15, 2012

18

19

20

21

22

23

24

25