BLITMAN & KING LLP
Jennifer A. Clark (JC5102)
Jonathan M. Cerrito (*pro hac vice*)
Brian J. LaClair (BL3158)
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204-5412
Telephone: (315) 422-7111
Facsimile: (315) 471-2623
Email: jaclark@bklawyers.com
        jmcerrito@bklawyers.com
        bjlaclair@bklawyers.com

Hearing Date: May 23, 2012
Hearing Time: 10:00 a.m. EST

*Attorneys for 37 ERISA Plan Claimants Listed Below*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | |
| Plaintiff, | : | Adversary Proceeding |
| | : | |
| — *versus* — | : | No. 08-01789 (BRL) |
| | : | |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | : | SIPA Liquidation |
| | : | (Substantively Consolidated) |
| Defendant | : | |

-----------------------------------------------------------------------x

| | |
|---|---|
| In re BERNARD L. MADOFF, | : |
| Debtor | : |

-----------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN OPPOSITION TO
## TRUSTEE'S MOTION FOR AN ORDER AFFIRMING TRUSTEE'S
## DETERMINATIONS DENYING CLAIMS OVER ERISA-RELATED OBJECTIONS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 2

THE ERISA PLAN CLAIMANTS ARE "CUSTOMERS" OF BLMIS UNDER SIPA ............... 2

    A.  The Definition of "Customer" Does Not Require an Account ..................................... 3

    B.  The ERISA Plan Claimants Had a Fiduciary Relationship With BLMIS and BLMIS
        Was Legally Obligated to Manage Their Assets Solely For Their Benefit .................. 7

    C.  The Assets Entrusted With BLMIS Belonged to the ERISA Plan Claimants ............. 9

        1.  SIPA Does Not Govern or Define Property Rights With Respect to Assets
            Entrusted to a Debtor ............................................................................. 9

        2.  The Plan Asset Regulation Governs an ERISA Plan's Property Interest in the
            Context of Investments ......................................................................... 11

        3.  The ERISA Plan Claimants Have a Contractual Property Interest in Each of the
            Underlying Assets of the PAVs, Including the BLMIS Account ........................... 18

CONCLUSION ..................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec., LLC),
  No. 1:11-CV-5683, 2011 U.S. Dist. LEXIS 150753 at *15 (S.D.N.Y. Jan. 4, 2012) ................ 3, 6, 9, 10

Bank of New York v. Janowick, 470 F.3d 264 (6th Cir. 2006) .................................................................. 12

Chevron U. S. A. Inc. v. Natural Res. Def. Council, Inc., 467 U. S. 837, 842-43 (1984) ........................... 6

Christensen v. Harris County, 529 U.S. 576 (2000) ................................................................................... 6

Collazos v. United States, 368 F.3d 190 (2d Cir. 2004) .............................................................................. 4

Cortes v. Midway Games, Inc., 2004 U.S. Dist. LEXIS 20795 (N.D. Ill. 2004) ........................................ 17

David P. Coldesina, DDS, PC Employee Profit Sharing Plan & Trust v.  Estate of Gary Simpler,
  407 F.3d 1126 (10th Cir. 2005) ............................................................................................................. 17

Donovan v. Bierwirth, 680 F.2d 263 (2d Cir. 1982) ................................................................................ 2, 8

Dudley Supermarket, Inc. v. TansAmerican Life Ins. Co., 302 F.3d 1 (1st Cir. 2002) ............................. 17

Egelhoff v. Egelhoff, 532 U.S. 141 (2001) ............................................................................................... 17

Focht v. Heebner (In re Old Naples Sec., Inc.), 223 F.3d 1296 (11th Cir. 2000) ................................. 4, 10

Galgay v. Gangloss, 677 F.Supp. 295 (M.D. Pa. 1987), aff'd 932 F.2d 959 (3d Cir. 1991) ..................... 19

Hattem v. Schwarzenegger, 449 F. 3d 423 (2d Cir. 2006) ................................................................. 14, 15

In re AEP ERISA Litig., 327 F. Supp. 2d 812 (S.D. Ohio 2004) ................................................................ 10

In re CMS Energy ERISA Litig., 312 F. Supp. 2d 898, 915-16 (E.D. Mich. 2004) .................................... 10

In re Lucent Death Benefits ERISA Litig., 541 F.3d 250 (3d Cir. 2008) ................................................... 19

In re Luna, 406 F.3d 1192 (10th Cir. 2005) ............................................................................................. 18

Info. Sys. & Networks Corp. v. Principal Life Ins. Co., 101 Fed. App'x 383 (4th Cir. 2004) ................... 17

Jackson v. United States, 555 U.S. 1163 (2009) .................................................................................. 12, 13

Kalda v. Sioux Valley Physician Partners, Inc., 481 F.3d 639 (8th Cir. 2007) .................................... 14, 18

Lloyd Capital Corp. v. Pat Henchar, Inc., 80 N.Y.2d 124 (N.Y. Ct. App. 1992) ....................................... 20

Mack v. CTC Ill. Trust Co., 2004 U.S. Dist. LEXIS 13997 (E.D. Pa. 2004) .............................................. 17

Madera v. Corporate Solutions, Inc., 2004 U.S. Dist. LEXIS 22530 (N.D. Tex. 2004)............................ 17

N.Y. State Conf. of Blue Cross & Blue Shield v. Travelers Ins. Co., 514 U.S. 645 (1995)...................... 15

Rankin v. Rots, 278 F. Supp. 2d 853 (E.D. Mich. 2003) ............................................................ 10

Russello v. United States, 464 U.S. 16 (1983)......................................................................4

Sec. & Exch. Comm'n v. F.O. Baroff Co., 497 F.2d 280 (2d Cir. 1974) ...................................... 8

Sec. & Exch. Comm'n v. Kenneth Bove & Co., 378 F. Supp. 697 (S.D.N.Y. 1974)................................ 3

Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 454 B.R. 285
    (Bankr. S.D.N.Y. 2011) ..................................................................................... 7, 9

Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co., 533 F.2d 1314 (2d Cir. 1976) .......................... 8, 10

Sec'y of Labor v. Fitzsimmons, 805 F.2d 682, 692-93 (7th Cir. 1986)...................................... 16

Securities Investor Protection Corp. v. Executive Securities Corp., 423 F. Supp. 94
    (S.D.N.Y. 1976)................................................................................................ 5, 10

Tew v. Res. Mgmt. (In re ESM Gov't Sec., Inc.), 812 F.2d 1374 (11th Cir. 1987) ...................... 3

United States v. Sforza, 326 F.3d 107 (2d Cir. 2003).................................................... 10

**Statutes**

15 U.S.C. § 78lll ........................................................................................................... 5

15 U.S.C. § 78lll(2)....................................................................................................2, 3, 7

15 U.S.C. §§ 78aaa-78lll ......................................................................................... 1, 10

29 U.S.C. § 1000(42) ............................................................................................... 11

29 U.S.C. § 1001(a) .................................................................................................. 12

29 U.S.C. § 1002(42) ............................................................................................... 16

29 U.S.C. § 1003(a) .................................................................................................. 12

29 U.S.C. § 1103 ..................................................................................................... 15

29 U.S.C. § 1104(a)(1)(A) .......................................................................................... 8

29 U.S.C. § 1135 ..................................................................................................... 16

29 U.S.C. § 1144(a) ................................................................................................. 14

29 U.S.C. § 1144(d)).................................................................................................. 10

iv

29 U.S.C. §§ 1001-1461 ................................................................................................................. 1

**Regulations**

29 C.F.R. § 2510.3-101 ........................................................................................................... 11, 13

29 C.F.R. § 2510.3-101(a)(2) ......................................................................................................... 12

29 C.F.R. § 2510.3-102 ........................................................................................................... 12, 13

29 C.F.R. 2510.3-101 ................................................................................................................... 13

## PRELIMINARY STATEMENT

This reply memorandum of law is submitted by 37 employee benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. §§ 1001-1461 ("ERISA Plan Claimants")[1] in opposition to the motion ("Motion") of Irving H. Picard ("Trustee"), trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff ("Madoff"), for an order affirming the Trustee's determinations denying claims over ERISA-related objections.  See Dkt. No. 4521.

As set forth in the ERISA Plan Claimants' opening brief, the Trustee improperly denied their claims under the Securities Investor Protection Act of 1970 ("SIPA") as amended, 15 U.S.C. §§ 78aaa-78lll, in connection with plan asset losses arising from the Madoff fraud, erroneously finding that they were not "customers" within the meaning of SIPA.  As discussed in more detail below, the Trustee's arguments in support of the Motion are unavailing.  As such, the Trustee's Motion should be denied by the Court, and the Trustee should be directed to promptly approve the ERISA Plan Claimants' customer claims.

---

[1] The ERISA Plan Claimants include the following entities: Bricklayers and Allied Craftsmen Local 2 Annuity Fund; Bricklayers and Allied Craftworkers Local 2, Albany, New York, Health Benefit Fund; Bricklayers and Allied Craftworkers Local 2, Albany, New York, Pension Fund; Building Trade Employers Insurance Fund; Central New York Laborers' Annuity Fund; Central New York Laborers' Health and Welfare Fund; Central New York Laborers' Pension Fund; Central New York Laborers' Training Fund; Engineers Joint Welfare Fund; Engineers Joint Training Fund; International Brotherhood of Electrical Workers Local Union No. 43 and Electrical Contractors Pension Fund; International Brotherhood of Electrical Workers  Local No. 43 and Electrical Contractors Welfare Fund; I.B.E.W. Local 139 Pension Fund; I.B.E.W. Local 241 Pension Fund; I.B.E.W. Local 241 Welfare Benefits Fund; I.B.E.W. Local 325 Annuity Fund; I.B.E.W. Local 325 Pension Fund; I.B.E.W. Local 910 Annuity Fund; I.B.E.W. Local 910 Pension Fund; I.B.E.W. Local 910 Welfare Fund; I.B.E.W. Local 1249 Pension Fund; Laborers' Local 103 Annuity Fund; Laborers' Local 103 Welfare Fund; Laborers' Local 103 Pension Fund; New York State Lineman's Safety Training Fund; Oswego Laborers' Local No. 214 Pension Fund; Plumbers, Pipefitters and Apprentices Local No. 112 Health Fund; Roofers' Local 195 Annuity Fund; Roofers' Local 195 Health & Accident Fund; Roofers' Local 195 Pension Fund; Syracuse Builders Exchange, Inc./CEA Pension Plan; SEIU 1199Upstate Pension Fund; Service Employees Benefit Fund; Service Employees Pension Fund of Upstate New York; Local 73 Retirement Fund; Local 73 Annuity Fund; and Upstate Union Health & Welfare Fund.  The 37 ERISA Plan Claimants submitted a total of 50 claims seeking coverage under SIPA.

## ARGUMENT

### THE ERISA PLAN CLAIMANTS ARE "CUSTOMERS" OF BLMIS UNDER SIPA

The ERISA Plan Claimants clearly fall within SIPA's definition of "customer," which

provides as follows:

> The term "customer" of a debtor means any person (including any person
> with whom the debtor deals as principal or agent) who has a claim on
> account of securities received, acquired, or held by the debtor in the
> ordinary course of its business as a broker or dealer from or for the
> securities accounts of such person for safekeeping, with a view to sale, to
> cover consummated sales, pursuant to purchases, as collateral security, or
> for purposes of effecting transfer.  The term "customer" includes any
> person who has a claim against the debtor arising out of sales or
> conversions of such securities, and <u>any person who has deposited cash
> with the debtor for the purpose of purchasing securities</u> . . . .

15 U.S.C. § 78lll(2) (emphasis added).  The ERISA Plan Claimants are "customers" under SIPA

because they "deposited cash with the debtor for the purpose of purchasing securities."  <u>Id.</u>

Specifically, the cash, i.e., plan assets entrusted to and stolen by BLMIS, belonged to the ERISA

Plan Claimants.  BLMIS was a fiduciary of the ERISA Plan Claimants and was legally obligated

to manage their assets "with an eye single to the interests of the[ir] participants and

beneficiaries."  <u>Donovan v. Bierwirth</u>, 680 F.2d 263, 271 (2d Cir. 1982).  Having established

these elements of the definition, the ERISA Plan Claimants need not, as incorrectly claimed by

the Trustee, show that BLMIS held an account in their names.[2]

---

[2] The SIPA claims of the ERISA Plan Claimants were not adjudicated, in whole or in part, by the decisions arising out of the Trustee's motion seeking an order affirming the denial of the claims of certain claimants who had invested in "feeder funds" that had accounts and invested with BLMIS (Dkt. No. 2416) ("Feeder Fund Motion").  The SIPA claims of the ERISA Plan Claimants who entrusted plan assets with BLMIS through the Income-Plus Investment Fund (<u>see</u> Clark Aff. in Opp'n to Tr.'s ERISA Mot. ¶¶ 6, 15) had not yet been denied by the Trustee at the time the Feeder Fund Motion was filed.  Further, the SIPA claims of the ERISA Plan Claimants who entrusted plan assets with BLMIS through Andover Associates LLC I, Beacon Associates LLC I, and/or Beacon Associates LLC II (<u>see</u> Clark Aff. in Opp'n to Tr.'s ERISA Mot. ¶¶ 7, 8, 15) were expressly excluded from the Trustee's Feeder Fund Motion.  <u>See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC</u>, 454 B.R. 285, 292 n.16 (Bankr. S.D.N.Y. 2011) (Lifland, J.) (excluding from adjudication the claims of "ERISA plans (and other entities whose property is treated as ERISA plan property)"); <u>id.</u> Hr'g Tr. at 10, 9-11, 51-53 (Oct. 19, 2010) (Dkt. No. 3062); Tr.'s Appellee Br., <u>Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec., LLC)</u>, No. 1:11-CV-5683, at 5 n.5 (S.D.N.Y. Nov. 4, 2011) (Dkt. No. 9) ("Claims of employee benefit plans that contended they were

### A.    The Definition of "Customer" Does Not Require an Account

The Trustee argues that the ERISA Plan Claimants are not "customers" under SIPA

because they are not account holders or persons for whom an account should have been opened

by BLMIS.  See Tr.'s Br. at 15-22.  That argument has absolutely no basis in the text of the

statute, case law, or other sources relied upon by the Trustee.

The definition of "customer" under SIPA contains three alternative definitions.  See 15

U.S.C. § 78lll(2); Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv.

Sec., LLC), No. 1:11-CV-5683, 2011 U.S. Dist. LEXIS 150753 at *15 (S.D.N.Y. Jan. 4, 2012).

If a person falls within any one of the three definitions, including the third definition ("any

person who has deposited cash with the debtor for the purpose of purchasing securities"), he is a

customer entitled to protection under SIPA.  See 15 U.S.C. § 78lll(2); Tew v. Res. Mgmt. (In re

ESM Gov't Sec., Inc.), 812 F.2d 1374, 1376 (11th Cir. 1987) ("[I]t is the act of entrusting the

cash to the debtor for the purpose of effecting securities transactions that triggers the customer

status provisions."); Sec. & Exch. Comm'n v. Kenneth Bove & Co., 378 F. Supp. 697, 699

(S.D.N.Y. 1974) ("The circumscribed class of customers protected under the Act [is] those

persons who have 'entrusted' property to the Debtor . . . .");  Aozora Bank, 2011 U.S. Dist.

LEXIS 150753 at *14-35 (analyzing each alternative definition of customer separately).

The ERISA Plan Claimants do not dispute that the first two definitions of "customer"

require that the person maintain an "account" with the debtor.  See 15 U.S.C. § 78lll(2); Aozora

Bank, 2011 U.S. Dist. LEXIS 150753 at *16-17, 20-21.  Specifically, the first definition

expressly mentions "securities received, acquired, or held . . . from or for the securities accounts

of such person," and the second definition incorporates that language by reference.  See id.

---

subject to ERISA were excluded from the motion below, even if they had invested in one of the Feeder Funds, see
ECF No. 3062 at 10-11, and will have the objections to their claims denials adjudicated shortly. (Motion for an
Order to Schedule Hearing on "Customer" Issue as it Relates to ERISA, ECF No. 4432).").

However, the third definition contains no such account requirement; it makes no mention of "accounts" and cannot reasonably be construed to incorporate an account requirement by reference.  See Collazos v. United States, 368 F.3d 190, 196 (2d Cir. 2004) ("Well-established principles of construction dictate that statutory analysis necessarily begins with the 'plain meaning' of a law's text and, absent ambiguity, will generally end there.").

Further, if Congress intended to include an account requirement in the third definition or limit its application to persons for whom an account should have been opened, as the Trustee suggests, it would have done so.  This is especially true given that the account requirement is expressly contained in the first definition and clearly incorporated by reference in the second definition.  See Russello v. United States, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)); accord Focht v. Heebner (In re Old Naples Sec., Inc.), 223 F.3d 1296, 1305-06 (11th Cir. 2000) ("ordinary course of business" requirement in first definition of "customer" under SIPA inapplicable to persons seeking coverage under third definition).

In this case, the plain meaning of the third definition of "customer" simply does not require a showing that the ERISA Plan Claimants were account holders or persons for whom an account should have been opened by BLMIS.  Further, since the first and second definitions contain an account requirement, it must be presumed that Congress intentionally and purposely excluded the account requirement from the third definition of "customer" under SIPA.[3]

---

[3] As the Trustee points out, Section 78lll(2) was amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1931 (2010).  While the amended version does not apply to SIPA liquidation proceedings filed before July 22, 2010, Congress has restructured the "customer" provision in such a way that it is clear that the third definition is a stand-alone provision, independent of any account requirement:

The Trustee's position is not supported by the plain meaning of the statute or case law. The Trustee erroneously quotes Securities Investor Protection Corp. v. Executive Securities Corp., 423 F. Supp. 94 (S.D.N.Y. 1976), for the proposition that under the third definition of customer, "'a customer is clearly limited to persons who maintain accounts with broker-dealers and who trade or invest through them.'" Tr.'s Br. at 16 (quoting Exec. Sec., 423 F. Supp. at 98). In citing that decision, the Trustee conveniently omits the footnote at the end of that passage, which makes it clear that the court's discussion was limited to the first "customer" definition; a definition that is not relied upon by ERISA Plan Claimants. Exec. Sec., 423 F. Supp. at 98 n.2. The Trustee similarly misconstrues In re First Interregional Equity Corp., 290 B.R. 265 (Bankr. D.N.J. 2003). In First Interregional Equity, the court stated that "to be a customer, 'the securities or cash must have been received, acquired, or held 'from or for the securities account' of the claimant,'" Tr.'s Br. at 16 (quoting First Interreg. Equity, 290 B.R. at 273-74), but did so in the midst of discussing the "three basic elements" of the first definition of customer. Again, the ERISA Plan Claimants do not rely on the first definition. In any event, to the extent that these cases or any others ignore the plain language of the statute and ignore that the "customer"

---

(2) Customer
    (A) In general
    The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral, security, or for purposes of effecting transfer.
    (B) Included persons
    The term "customer" includes—
        (i) any person who has deposited cash with the debtor for the purpose of purchasing securities;
        (ii) any person who has a claim against the debtor for cash, securities, futures contracts, or options on futures contracts received, acquired, or held in a portfolio margining account carried as a securities account pursuant to a portfolio margining program approved by the Commission; and
        (iii) any person who has a claim against the debtor arising out of sales or conversions of such securities.

15 U.S.C. § 78lll, as amended by Pub. L. 111-203, 124 Stat. 1931 (July 22, 2010).

provision contains three alternative and independent definitions, they must be disregarded by the Court.  See Aozora Bank, 2011 U.S. Dist. LEXIS 150753 at *15.

The Trustee cannot overcome the plain language of the statute and impose an account requirement on the third definition of customer by erroneously claiming that the U.S. Securities and Exchange Commission ("SEC") formally supports his position.  See Tr.'s Br. at 17.  The Trustee relies on a statement made by an assistant general counsel of the SEC in an amicus brief submitted in connection with the Feeder Fund Motion, but the SEC's interpretation of Section 78lll(2)'s requirement in that case is not entitled to any deference because the statutory provision it purports to interpret is unambiguous.  See Chevron U. S. A. Inc. v. Natural Res. Def. Council, Inc., 467 U. S. 837, 842-43 (1984) ("When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").  As discussed above, the statutory language with respect to the third "customer" definition is plain, and it contains no account requirement and does not limit its application to persons for whom an account should have been opened. Moreover, the assistant general counsel cites no authority for her position; her assertion itself is not a formal agency interpretation arrived at after a formal adjudication or notice-and-comment rulemaking pursuant to the Administrative Procedure Act.  See Christensen v. Harris County, 529 U.S. 576, 587 (2000) (no Chevron–style deference due for informal agency interpretations). Thus, the Trustee's reliance on an argument made by the SEC in a prior proceeding and his vague citation to several lengthy SEC regulations, none of which purport to interpret Section

78lll(2), does not change the fact that the clear and unambiguous language of the statute does not require an account under the third definition of customer.

Finally, contrary to the Trustee's assertions (see Tr.'s Br. at 20-21), the cases cited by the ERISA Plan Claimants do not stand for the proposition that a person without an account in his name is a "customer" only if the debtor should have opened an account.  Rather, those cases stand for the proposition that a person is a "customer" if he entrusts cash with the debtor for the purpose of purchasing securities, irrespective of any account considerations.  See ERISA Plan Claimants' Br. at 19-20; see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 454 B.R. 285, 287 n.16 (Bankr. S.D.N.Y. 2011) declining to hold "that an investor must have a specifically titled account in the investor's name that appears on the debtor's available books and records as an express requirement for obtaining customer status," and noting that "[t]here may be, for example, special circumstance accounts that provide for the equivalent of a specifically titled account." (emphases in original)).[4]

For all the foregoing reasons, the Court must reject the Trustee's unsupported claim that to be "customers," the ERISA Plan Claimants must be account holders or persons for whom an account should have been opened by BLMIS.  The plain language of the statute confers "customer" status simply by virtue of the fact that the ERISA Plan Claimants deposited cash with BLMIS for the purpose of purchasing securities.

### B.    The ERISA Plan Claimants Had a Fiduciary Relationship With BLMIS and BLMIS Was Legally Obligated to Manage Their Assets Solely For Their Benefit

The Trustee does not meaningfully dispute that the ERISA Plan Claimants had a fiduciary relationship with BLMIS.  Instead, the Trustee argues that the existence of a fiduciary

---

[4] As to the Trustee's argument that the Plan Asset Vehicles and the ERISA Plan Claimants cannot both be customers, see Tr.'s Br. at 18-19, the ERISA Plan Claimants' position is that the PAVs are not customers because the cash entrusted with BLMIS belonged to the ERISA Plan Claimants.

relationship does not, in and of itself, confer customer status on a party.  See Tr.'s Br. at 39-40.

The Trustee has misconstrued the ERISA Plan Claimants' position.  They do not rely solely on

the existence of a fiduciary relationship with BLMIS to establish customer status.  Indeed, as

discussed in their opening brief and below, they are customers because they entrusted their cash

with BLMIS for the purpose of purchasing securities.

Nonetheless, the significance of a fiduciary relationship in the context of assessing

"customer" status under SIPA should be not minimized.  It shows that the ERISA Plan Claimants

were not lenders or other creditors without any connection to BLMIS's trading activities in

securities markets; rather, they were "public investors" who entrusted cash with BLMIS for the

very purpose of entering the securities markets.  See Sec. Investor Prot. Corp. v. Morgan,

Kennedy & Co., 533 F.2d 1314, 1317 (2d Cir. 1976) (lenders are not customers because they are

not the type of "public investor" the statute was meant to protect); Sec. & Exch. Comm'n v. F.O.

Baroff Co., 497 F.2d 280, 283 (2d Cir. 1974) ("The emphasis throughout [the legislative process]

was on the customer as investor and trader, not on others who might become creditors of the

broker-dealer for independent reasons.").  In fact, the fiduciary duty that BLMIS owed to the

ERISA Plan Claimants was "the highest known to the law."  Donovan v. Bierwirth, 680 F.2d

263, 272 n.8 (2d Cir. 1982).  BLMIS was required by law to manage the ERISA Plan Claimants'

assets "with an eye single to the interests of the[ir] participants and beneficiaries," id. at 271, and

to discharge its duties solely in the interest of the ERISA Plan Claimants and its participants and

beneficiaries, see 29 U.S.C. § 1104(a)(1)(A).

Thus, as a fiduciary entrusted with property of the ERISA Plan Claimants, BLMIS was

their broker/dealer and they were his "customers" entitled to the protection of SIPA.

8

Accordingly, the Court must deny the Trustee's motion and direct the Trustee to approve the

SIPA claims of the ERISA Plan Claimants.

### C.    The Assets Entrusted With BLMIS Belonged to the ERISA Plan Claimants

The Trustee contends that the ERISA Plan Claimants are not customers because they do

not own the property entrusted to BLMIS.  See Tr.'s Br. at 32-39.  Simply put, the Trustee is

wrong.  In reaching his conclusion, the Trustee claims that SIPA governs the customer analysis

and under SIPA, state commercial law must be applied to define a party's property interest in the

assets entrusted to a debtor.  The Trustee's argument is faulty since SIPA itself does not govern

or define an investor's property interest in assets entrusted to a debtor and does not mandate how

the Trustee and the courts determine property interests.  While state law may be an appropriate

guide in certain instances, in this case, ERISA and related regulations specifically define what

constitutes property of an ERISA plan in the context of investments (the very case before the

Court).  Further, the ERISA Plan Claimants have a federal common law contractual property

interest in the assets entrusted with BLMIS.  To the extent that state law conflicts with and

frustrates this ERISA provision and its purpose, it is preempted.  For the reasons discussed

below, the Trustee's arguments to the contrary are unavailing.

### 1.    SIPA Does Not Govern or Define Property Rights
### With Respect to Assets Entrusted to a Debtor

Courts have clearly held that the nature of the investor's property interest (or lack

thereof) in the assets entrusted with the debtor is a "foundational element" of the customer

analysis.  Sec. Investor Prot. Corp., 454 B.R. at 295.  Indeed, the assets held by the broker-dealer

must be the property of the investor.  See id. at 299 (noting that "there was never 'actual receipt,

acquisition, or possession of the property of a claimant" (emphasis in original)); Aozora Bank,

2011 U.S. Dist. LEXIS 150753 at *15-16 (noting that debtor did not hold any property of the

9

claimants because the property at issue belonged solely to third parties); see also SIPC v. Morgan, Kennedy & Co., 533 F.2d 1314, 1318 (2d Cir. 1976) ("broker-dealer held no property belonging to any [claimant]"); In re Old Naples Sec., 223 F.3d at 1302 ("[T]he question is whether there was actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." (internal quotation marks omitted)).

SIPA, however, does not define or govern property rights with respect to assets entrusted to a debtor. See generally 15 U.S.C. §§ 78aaa-78lll. Typically, therefore, courts look outside of SIPA to other authorities to determine whether assets acquired by a debtor are the property of the customer. See Aozora Bank, 2011 U.S. Dist. LEXIS 150753 at *21-23; Sec. Investor Prot. Corp., 454 B.R. at 295-96, 304 n.32. In this case, ERISA governs the property rights of ERISA Plan Claimants to the assets entrusted to BLMIS. ERISA, therefore, merely informs the customer analysis under SIPA and determines the ERISA Plan Claimants' status vis-à-vis property interest in the assets entrusted with BLMIS. It does not preempt or otherwise represent an "'[a]lteration, amendment, modification, invalidation, impairment, or supercedure'" of SIPA, as the Trustee suggests. See Tr.'s Br. at 22 (quoting 29 U.S.C. § 1144(d)).[5]

---

[5] When confronted with two federal laws, the Court must construe them such that they exist in harmony. See United States v. Sforza, 326 F.3d 107, 111 (2d Cir. 2003) (the existence of duties under one federal statute does not, absent express Congressional intent to the contrary, preclude the imposition of overlapping duties under another federal statutory regime); In re CMS Energy ERISA Litig., 312 F. Supp. 2d 898, 915-16 (E.D. Mich. 2004) (duties under ERISA can exist in harmony with those owed under security laws); In re AEP ERISA Litig., 327 F. Supp. 2d 812 (S.D. Ohio 2004) (ERISA plan fiduciaries cannot use security laws to shield themselves from liability and defendants obligated to comply with both security laws and ERISA obligations; allowing recovery under ERISA does not supplant federal security disclosure laws); Rankin v. Rots, 278 F. Supp. 2d 853 (E.D. Mich. 2003) (duties under ERISA and duties under security laws can exist concomitantly).

### 2.    The Plan Asset Regulation Governs an ERISA Plan's Property Interest in the Context of Investments

In this case, the Court is confronted with ERISA employee benefit plans that invested plan assets in BLMIS through one or more Plan Asset Vehicles ("PAVs").[6] Given these facts, ERISA and related regulations exclusively govern the property rights of the ERISA Plan Claimants to those assets. In applying these ERISA regulations, the Court must find that the ERISA Plan Claimants owned the assets deposited with BLMIS, and, therefore, that they are customers under SIPA.

Section 3(42) of Title I of ERISA defines an employee benefit plan's property/assets as follows:

> [T]he term "plan assets" means plan assets as defined by such regulations as the Secretary may prescribe, except that under such regulations the assets of any entity shall not be treated as plan assets if, immediately after the most recent acquisition of any equity interest in the entity, less than 25 percent of the total value of each class of equity interest in the entity is held by benefit plan investors. For purposes of determinations pursuant to this paragraph, the value of any equity interest held by a person (other than such a benefit plan investor) who has discretionary authority or control with respect to the assets of the entity or any person who provides investment advice for a fee (direct or indirect) with respect to such assets, or any affiliate of such a person, shall be disregarded for purposes of calculating the 25 percent threshold. An entity shall be considered to hold plan assets only to the extent of the percentage of the equity interest held by benefit plan investors. For purposes of this paragraph, the term "benefit plan investor" means an employee benefit plan subject to part 4, any plan to which section 4975 of title 26 applies, and any entity whose underlying assets include plan assets by reason of a plan's investment in such entity.

29 U.S.C. § 1000(42). Pursuant to its authority, the U.S. Department of Labor ("DOL") issued a regulation which states that ERISA plans own the property in the following two specific contexts: (1) where an employee benefit plan invests assets by purchasing shares in a company, 29 C.F.R. § 2510.3-101; and (2) where contributions to a plan are withheld by an employer from

---

[6] The relevant PAVs in this case are the Income-Plus Investment Fund, Andover Associates LLC I, Beacon Associates LLC I, and Beacon Associates LLC II.

an employee's wages, 29 C.F.R. § 2510.3-102.  In the first context, the DOL expressly provides

that the property owned by an employee benefit plan includes the underlying assets of an entity

in which the employee benefit plan invests so long as total investments by employee benefit

plans is "significant."  <u>See</u> 29 C.F.R. § 2510.3-101(a)(2).[7]

The foregoing ERISA plan asset rule is far reaching in its coverage, applying to any

employer or union engaged in commerce or in any industry or activity affecting commerce.  <u>See</u>

29 U.S.C. § 1003(a).  It is designed to protect the assets of employee benefit plans and the

financial "soundness and stability" of such plans whenever, among other things, an employee

benefit plan invests in a PAV.  29 U.S.C. § 1001(a), Subtitle A, Title I.  The property interest

created by the plan asset rule exists for all purposes.  The rule does not, as erroneously contended

by the Trustee, exist solely for the purpose of imposing fiduciary duties under ERISA.  <u>See</u> <u>Bank</u>

<u>of New York v. Janowick</u>, 470 F.3d 264, 273-74 (6th Cir. 2006) (examining plan asset rule to

determine who owned money generated by an insurance company's reorganization; although the

rule was deemed inapplicable because the employee benefit plan had been terminated, the rule

was nevertheless examined outside context of fiduciary obligations); <u>Sec'y of Labor v. Doyle</u>,

No. 10-3598, 2012 U.S. App. LEXIS 6215 at *43-47 (3d Cir. March 27, 2012) (court applied

ordinary notions of property rights to determine ownership only after finding that plan asset rule

was inapplicable due to no PAV investment or participant contribution); <u>see also</u> <u>Jackson v.</u>

<u>United States</u>, 555 U.S. 1163 (2009) (vacating finding that property constituted plan assets and

---

[7] Specifically, this "plan asset rule" provides:

> In the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940 <u>its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity</u>, unless . . . [e]quity participation in the entity by benefit plan investors is not significant.

29 C.F.R. § 2510.3-101(a)(2) (emphasis added).

remanding for further consideration in light of the Solicitor General's position that "in situations not covered by the plan asset regulations, 'the assets of a plan generally are to be identified  on the basis of ordinary notions of property rights under non-ERISA law'" (quoting Brief of U.S. Solicitor General, Jackson v. United States, 2009 U.S. S. Ct. Briefs LEXIS 3517 at *11-12)).

Similarly, in DOL Advisory Opinion 94-31A (Sept. 9, 1994), in a context outside of fiduciary issues, the DOL examined the plan asset rule to determine whether the employee benefit plan owned the property.  Since the dispute did not involve either an investment by the employee benefit plan in a PAV (29 C.F.R. § 2510.3-101) or participant contributions (29 C.F.R. § 2510.3-102), the DOL examined ordinary notions of property rights to determine that the assets were owned by the plan.  The DOL provided the following framework to determine whether the plan owned the property:

> The Department of Labor (the Department) has promulgated regulations identifying plan assets when a plan invests in other entities (29 C.F.R. 2510.3-101) or when a participant pays or has amounts withheld by an employer for contribution to a plan (29 C.F.R. 2510.3-102). In other situations, the Department has indicated that the assets of an employee benefit plan generally are to be identified on the basis of ordinary notions of property rights.

DOL Adv. Op. 94-31A (Sept. 9, 1994) (emphasis added); accord DOL Adv. Op. 2003-05A (April 10, 2003) (plan asset rule examined to determine ownership rights; since plan terminated by trustees, plan asset rule inapplicable and issue governed by the terms of the contract and applicable state law); DOL Adv. Op. 92-02A (Jan. 17, 1992) (plan asset rule examined, but inapplicable to dispute concerning owner of stop loss policy since no PAV involved); see also DOL Adv. Op. 2011-10A (Dec. 11, 2012); FAB No. 2006-01 (April 19, 2006); DOL Adv. Op. 2005-08A (May 11, 2005); DOL Adv. Op. 1999-08A (May 20, 1999); DOL Adv. Op. 92-24A

(Nov. 11, 1992).[8]  Courts agree that the plan asset regulation determines the property interests of

employee benefit plans that invest in other entities, finding the DOL's analysis "thorough, valid

and particularly consistent."  Kalda v. Sioux Valley Physician Partners, Inc., 481 F. 3d. 639, 647

(8th Cir. 2007).

The law is clear; if an employee benefit plan invests in another entity, i.e., a PAV, the

plan asset regulation determines the plan's property interest.  This regulation is applicable

regardless of the situation before the Court; it is not limited to fiduciary breach situations.

Therefore, the regulation is applicable to the SIPA issue of who owned the cash deposited with

BLMIS.

> a.    Congress Intended For ERISA to Govern What Constitutes
>        Property of an ERISA Plan in the Context of Investments

Since the ERISA Plan Claimants invested in PAVs, the plan asset regulation is the sole

determinate of whether the property is owned by the ERISA Plan Claimants and whether BLMIS

owed them a fiduciary obligation.  New York State law does not, as incorrectly claimed by the

Trustee, determine their property interest.  To the extent that state law conflicts with and

frustrates Congress' intent and purpose of protecting employee benefit plans, ensuring their

financial stability, and ensuring uniform administration of plans, the state law is preempted by

ERISA.

ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to

any employee benefit plan."  29 U.S.C. § 1144(a).  A law "relates to" an employee benefit plan,

within the meaning of 29 U.S.C. § 1144(a), if the law has a "connection with" such plan.  Hattem

v. Schwarzenegger, 449 F. 3d 423, 428-32 (2d Cir. 2006).  The objectives of ERISA serve as a

---

[8] The Trustee disputes the relevance of certain advisory opinions, see Tr.'s Br. at 37 n.38; however, the DOL's position is clear that in the context of an ERISA plan's investment in a third party entity, the plan asset regulation, not ordinary notions of property rights, apply.

guide in determining whether a "connection with" exists.  Id. at 429.  Those objectives include

the creation of adequate safeguards concerning plan operation; the protection of the assets of

employee benefit plans from mismanagement and misuse; the provision of financial "soundness

and stability" for such plans; the general welfare and stability of commerce; the accumulation of

requisite funds so that participants are not deprived of benefits; and the application of minimum

standards to ensure the equitable character of such plans and their financial soundness.  See 29

U.S.C. § 1001(a).   In implementing these purposes, Congress aimed "to ensure that plans and

plan sponsors would be subject to a uniform body of benefits law."  Hattem, 449 F.3d at 429

(quoting N.Y. State Conf. of Blue Cross & Blue Shield v. Travelers Ins. Co., 514 U.S. 645, 656

(1995)).  Congress sought to prevent a conflict of substantive law that would require tailoring a

"plans . . . conduct to the peculiarities of the laws of each jurisdiction" and multiplicity of

regulation.  Id. at 429 (quoting Travelers Ins. Co., 514 U.S. at 657).

       An employee benefit plan's ownership of property is a central matter of plan

administration.  Any law or regulation defining property ownership affects the administration

and operation of the plan.  It determines the plan's ability to secure and pay benefits, the plan's

rights and obligations vis-a-via the property, and the participants' rights to benefits.  Further, any

law defining a plan's property interests ultimately determines whether the plan is obligated to

hold it in trust for the exclusive benefit of plan participants.  See 29 U.S.C. § 1103 ("[A]ll assets

of an employee benefit plan shall be held in trust by one or more trustees.); 26 U.S.C. § 401(a)

(requiring as a condition of tax-exemption that the employee benefit plan be "[a] trust created or

organized in the United States . . . for the exclusive benefit of his employees.); id. § 401(a)(2)

(requiring that no part of the property held by the trust be "used for, or diverted to, purposes

other than for the exclusive benefit of his employees or their beneficiaries.").

15

Congress manifested its intent to exclusively control the determination of an employee

benefit plan's property ownership whenever there is an investment in another entity.  It defined

the property or assets of employee benefit plans at Section 3(42) of ERISA.  <u>See</u> 29 U.S.C. §

1002(42).  This definition of property sets forth specific statutory rules to determine when a plan

owns property.  <u>See id.</u> ("[T]he assets of any entity shall not be treated as plan assets if,

immediately after the most recent acquisition of any equity interest in the entity, less than 25

percent of the total value of each class of equity interest in the entity is held by benefit plan

investors . . . ."); <u>Sec'y of Labor v. Doyle</u>, 2012 U.S. App. LEXIS 6215 at *42-47, n.32 (3d Cir.

March 27, 2012).  To implement this rule, Congress delegated broad regulatory authority to the

DOL, including plenary authority to define the property of an ERISA plan and to develop the

plan asset rule.  <u>See</u> <u>Sec'y of Labor v. Fitzsimmons</u>, 805 F.2d 682, 692-93 (7th Cir. 1986)

(DOL's interests include promoting the uniform application of the Act, protecting plan

participants and beneficiaries, and ensuring the financial stability of plan assets); 29 U.S.C. §

1135 ("[T]he Secretary may prescribe such regulations as he finds necessary and appropriate to

carry out the provisions of this title."); 29 U.S.C. § 1002(42) ("[T]he term 'plan assets' means

plan assets as defined by such regulations as the Secretary [of Labor] may prescribe . . . .").  This

plan asset rule, discussed at length above, is the rule consulted in the first instance to determine

whether the plan owns property.  And, upon a finding that the rule is inapplicable, federal

common law as developed under ERISA is examined by the DOL and the courts.

In this case, the plan asset rule, as the Trustee admits, addresses the property rights of the

ERISA Plan Claimants and, therefore, determines who is a fiduciary vis-a-vis the ERISA Plan

Claimants.  ERISA sets forth detailed regulations of fiduciary conduct.  Courts have consistently

held that any state law, even one of general applicability, directed to and connected with this area

16

of fiduciary conduct is preempted by ERISA.  See Info. Sys. & Networks Corp. v. Principal Life

Ins. Co., 101 Fed. App'x 383 (4th Cir. 2004); Dudley Supermarket, Inc. v. TansAmerican Life

Ins. Co., 302 F.3d 1 (1st Cir. 2002); Cortes v. Midway Games, Inc., 2004 U.S. Dist. LEXIS

20795 (N.D. Ill. 2004); Mack v. CTC Ill. Trust Co., 2004 U.S. Dist. LEXIS 13997 (E.D. Pa.

2004); Madera v. Corporate Solutions, Inc., 2004 U.S. Dist. LEXIS 22530 (N.D. Tex. 2004); see

also David P. Coldesina, DDS, PC Employee Profit Sharing Plan & Trust v.  Estate of Gary

Simpler, 407 F.3d 1126 (10th Cir. 2005) (key consideration is whether the claim impacts the

relationship among the principal ERISA entities).  This Court, therefore, must find that a state

law that deprives the ERISA Plan Claimants of a property interest in their cash and relieves

BLMIS of fiduciary responsibilities is preempted by ERISA.

The Trustee's position that the Court must ignore ERISA frustrates Congress' goal.  If

each state were allowed to determine a plan's property interest in PAVs, there would be

multiplicity of regulation and conflicting administration of employee benefit plans.  See

Egelhoff v. Egelhoff, 532 U.S. 141 (2001) (preemption of state law that changes designation of

an ERISA plan beneficiary).   There would be competing determinations concerning the identity

of plan property and competing determinations concerning fiduciary obligations.  This result was

not intended by Congress and, therefore, even though the state law does not specifically refer to

employee benefit plans and is one of general applicability, it is preempted by ERISA.  Similarly,

as discussed below, employing state law, as suggested by the Trustee, to deny the ERISA Plan

Claimants property ownership in the assets placed with BLMIS contradicts the plain meaning of

ERISA Plan Claimants' plan documents and negates their contractual rights to ownership of the

property deposited with BLMIS.[9]

---

[9] To be clear, the ERISA Plan Claimants do not argue that ERISA preempts SIPA.  Rather, they argue that the
property interest portion of the SIPA "customer" analysis is necessarily informed by outside authorities, and to the

3.      **The ERISA Plan Claimants Have a Contractual Property Interest in Each of the Underlying Assets of the PAVs, Including the BLMIS Account**

As discussed above, given ERISA's plan asset rules, the ERISA Plan Claimants owned the assets of the PAVs and, thus, owned the assets placed with BLMIS.  They are, therefore, customers under SIPA.  Nevertheless, as discussed below, even if the plan asset regulation did not apply, the ERISA Plan Claimants own the assets within the BLMIS account based on ordinary notions of property rights enforceable under federal common law.

Under well-established law, "the assets of [an employee benefit plan] include any property, tangible or intangible, in which the plan has a beneficial ownership interest."  Sec'y of Labor v. Doyle, 2012 U.S. App. LEXIS 6215 at *44 (3d Cir. 2012) ("[I]n the absence of plan asset rule, 'the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law.  In general, the assets of a welfare plan would include any property, tangible or intangible, in which the plan has a beneficial ownership interest.'" (quoting DOL Adv. Op. No. 93-14A (May 5, 1993)); see also Kalda v. Sioux Valley Physician Partners, Inc., 481 F.3d 639, 647 (8th Cir. 2007) (finding "the Secretary's reasoning in its rulings regarding 'plan assets' thorough, valid, and particularly consistent" and adopting the Secretary's definition); In re Luna, 406 F.3d 1192, 1199 (10th Cir. 2005) (considering dictionary definition of "asset" and noting that "[c]entral to the definition of "asset," then, is that the person or entity holding the asset has an ownership interest in a given thing, whether tangible or intangible").

A plan obtains a beneficial interest in particular property if, under common law principles, the property is held in trust for the benefit of the plan.  See DOL Adv. Op. 94-31A (Sept. 9, 1994).  The identification of property owned by employee benefit plans, outside the

---

extent that those outside authorities are state laws that conflict with and frustrate the purpose of ERISA, they are preempted.  See, supra, n.5.

context of the plan asset regulation, requires consideration of any contract or other legal

instrument involving the plan.  Id.  This method of determining a plan's property ownership is

consistent with Congressional intent under ERISA to foster the development of a body of federal

common law that encompasses traditional trust law principles, applied in light of the special

nature and purpose of employee benefit plans.  Id.; 120 Cong. Rec. 29,942 (1974), reprinted in

Leg. Hist. Vol. III, p. 4771 (remarks of senator Javits); H.R. Rep 93-533, pp. 11-13 (1973), Leg.

Hist., Vol. II, pp. 2358-2360.  The Third Circuit recently explained that, as a general rule, in

contexts outside the scope of the plan asset regulation:

> [T]he first step in identifying the property of an ERISA plan is to consult the
> documents establishing and governing the plan. Cf.  In re Lucent Death Benefits
> ERISA Litig., 541 F.3d 250, 254-55 (3d Cir. 2008).  A court should then, in light
> of these documents, consult contracts to which the plan is a party or other
> documents establishing the rights of the plan.  See, e.g., Metzler v. Solidarity of
> Labor Organizations Health & Welfare Fund, No. 95-7247, 1998 U.S. Dist.
> LEXIS 12565. 1998 WL 477964, *6 (S.D.N.Y. Aug. 14, 1998), aff'd 224 F.3d
> 128 (2d Cir. 2000) (per curiam), cert. denied 533 U.S. 928, 121 S. Ct. 2549, 150
> L. Ed. 2d 716 (2001); Galgay v. Gangloss, 677 F.Supp. 295, 301-02 (M.D. Pa.
> 1987), aff'd 932 F.2d 959 (3d Cir. 1991).

Doyle, 2012 U.S. App. LEXIS 6215 at *46.

In the instant case, the offering documents associated with the PAVs acknowledge and

provide that the ERISA Plan Claimants own an undivided property interest in each of the

underlying assets of the PAVs.  See Clark Aff. in Opp'n to Tr.'s Mot. (Dkt. No. 4635-1), Ex. D

at 22, Ex. F at 38, Ex. J at 39, Ex. K at 41 (stating that the underlying assets of the PAVs will

constitute plan assets of the investing ERISA plans).  The PAVs knew that the ERISA Plan

Claimants owned the property.  By contract, therefore, the assets deposited with BLMIS were the

assets of the ERISA Plan Claimants.  The ERISA Plan Claimants, therefore, meet the third definition of customer as they "deposited cash" with BLMIS.[10]

Furthermore, the Income Plus ERISA Plan Claimants, by virtue of their contract and the mandates of the Internal Revenue Code, owned the cash deposited with BLMIS.  Specifically, the Income-Plus Investment Fund is not a Limited Liability Company under state law.  Instead, it is a Group Trust under Revenue Ruling 81-100.  1981-1 C.B. 326, as clarified and modified by Rev. Rul. 2004-67, 2004-28 I.R.B. 28.  As such, ERISA Plan Claimants that entrusted their assets to the Income-Plus Investment Fund were required, by Revenue Ruling 81-100, to specifically adopt the terms and provisions of the Group Trust as part of their plan documents as follows:

> 4.02    Adoption of Group Trust Agreement.  The Participating Entity and the Participating Entity Signatory hereby represent and warrant that the governing documents of the Participating Entity contain a provision which incorporates by reference and adopts the terms and provisions of the Group Trust Agreement and that the adoption of the Group Trust Agreement by the Participating Entity will not conflict with any provisions of the Participating Entity (or the plan or any other contract or agreement under which such Participating Entity is maintained).

Clark Aff. Ex. D, Adoption Agmt., Art. IV, § 4.02.

As a result, the Income-Plus Investment Fund, by definition, is comprised solely of assets owned by the ERISA Plan Claimants.  The ERISA Plan Claimants that invested with BLMIS

---

[10] To the extent that the Trustee suggests that limited liability company law, and not the contractual arrangements between the ERISA Plan Claimants and the PAVs, governs the property interest issue, he is wrong.  In this instance, there is nothing preventing the parties from arriving at contractual understandings that deviate from general statutory provision that might otherwise be applicable.  See Lloyd Capital Corp. v. Pat Henchar, Inc., 80 N.Y.2d 124, 127 (N.Y. Ct. App. 1992) (holding that contract provisions that are contrary to statutory provisions are enforceable where the statutory provisions are merely malum prohibitum, in that the statute does not expressly provide that its violation will deprive the parties of their rights to sue on the contract and the denial of relief would be wholly out of proportion to the requirements of public policy).

through Income Plus are, therefore, investors who deposited cash with BLMIS.  Thus, they satisfy the definition of customers.[11]

Clearly, even in the absence of the plan asset rule, under general notions of property rights as provided by the parties' contracts, the ERISA Plan Claimants owned and had a property right in the assets deposited with BLMIS.  The ERISA Plan Claimants have satisfied the "core" or "foundational element" of the customer analysis.  They deposited and entrusted their cash with BLMIS for the purpose of purchasing securities.  Sec. Investor Prot. Corp., 454 B.R. at 295. Thus, they are entitled to customer status under SIPA.

## CONCLUSION

For all the foregoing reasons and authorities, the Court must deny the Trustee's motion for an order affirming his determination denying claims over ERISA-related objections.  Further, the Court must direct that the Trustee promptly approve the customer claims of the ERISA Plan Claimants.

---

[11] The structure of the PAVs and the contractual acknowledgements and agreements with the PAVs make them fundamentally different than the "Feeder Funds" that were the subject of prior court decision concerning non-ERISA investors.  Those "Feeder Funds" did not have significant investments by employee benefit plans and none of them represented or acknowledged that their investors would own the underlying assets of the "Feeder Funds."  In fact, the offering documents of all such "Feeders Funds" contained language expressly rejecting the plan asset rule and expressly stating that the investor did not own the assets as follows:

> The fiduciary [i.e, the employee benefit plan] executing this Agreement on behalf of such a New Limited Partner (the "Fiduciary") acknowledges that it is intended that the Partnership will not hold ERISA "plan assets" as defined by the Plan Assets Regulation (e.g., less than 25% of any class of equity interest of the Partnership will be owned by Benefit Plan Investors).  Accordingly, the New Limited Partner acknowledges that the General Partner has the authority to require the retirement or withdrawal of any limited partnership interest if the continued holding of such interest, in the opinion of the General Partner, could result in the Partnership being subject to ERISA or Section 4975 of the Code . . . .

Sheehan Decl. in Supp. of Tr.'s Feeder Fund Mot., Ex. 51, Greenwich Sentry, L.P. Subscription Agmt. at 4 (emphasis added).

Dated:  April 2, 2012

Respectfully submitted,

BLITMAN & KING LLP


 s/ Jennifer A. Clark
Jennifer A. Clark (JC5102)
Jonathan M. Cerrito (*pro hac vice*)
Brian J. LaClair (BL3158)
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204-5412
Telephone: (315) 422-7111
Facsimile: (315) 471-2623
Email: jaclark@bklawyers.com
        jmcerrito@bklawyers.com
        bjlaclair@bklawyers.com

*Attorneys for Bricklayers and Allied Craftsmen*
*Local 2 Annuity Fund; Bricklayers and Allied*
*Craftworkers Local 2, Albany, New York, Health*
*Benefit Fund; Bricklayers and Allied Craftworkers*
*Local 2, Albany, New York, Pension Fund; Building*
*Trade Employers Insurance Fund; Central New*
*York Laborers' Annuity Fund; Central New York*
*Laborers' Health and Welfare Fund; Central New*
*York Laborers' Pension Fund; Central New York*
*Laborers' Training Fund; Engineers Joint Welfare*
*Fund; Engineers Joint Training Fund; International*
*Brotherhood of Electrical Workers Local Union No.*
*43 and Electrical Contractors Pension Fund;*
*International Brotherhood of Electrical Workers*
*Local No. 43 and Electrical Contractors Welfare*
*Fund; I.B.E.W. Local 139 Pension Fund; I.B.E.W.*
*Local 241 Pension Fund; I.B.E.W. Local 241*
*Welfare Benefits Fund; I.B.E.W. Local 325 Annuity*
*Fund; I.B.E.W. Local 325 Pension Fund; I.B.E.W.*
*Local 910 Annuity Fund; I.B.E.W. Local 910*
*Pension Fund; I.B.E.W. Local 910 Welfare Fund;*
*I.B.E.W. Local 1249 Pension Fund; Laborers'*

22

*Local 103 Annuity Fund; Laborers' Local 103 Welfare Fund; Laborers' Local 103 Pension Fund; New York State Lineman's Safety Training Fund; Oswego Laborers' Local No. 214 Pension Fund; Plumbers, Pipefitters and Apprentices Local No. 112 Health Fund; Roofers' Local 195 Annuity Fund; Roofers' Local 195 Health & Accident Fund; Roofers' Local 195 Pension Fund; Syracuse Builders Exchange, Inc./CEA Pension Plan; SEIU 1199Upstate Pension Fund; Service Employees Benefit Fund; Service Employees Pension Fund of Upstate New York; Local 73 Retirement Fund; Local 73 Annuity Fund; and Upstate Union Health & Welfare Fund*