PROSKAUER ROSE LLP
Myron D. Rumeld
Anthony S. Cacace
Richard J. Corbi
Eleven Times Square
New York, New York 10036
Telephone: 212.969.3021
Facsimile: 212.969.2900
mrumeld@proskauer.com
acacace@proskauer.com
rcorbi@proskauer.com
*Attorneys for Eric S. Saretsky &
The Plan Administrator of the Sterling
Equities Associates Employee Retirement Plan*

Hearing Date: May 23, 2012
Hearing Time: 10:00 AM (EST)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

         Plaintiff,

     v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

         Defendant.

In re:

BERNARD L. MADOFF,

         Debtor.
----------------------------------------------------------------------X

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO THE
MOTION FOR AN ORDER AFFIRMING THE TRUSTEE'S
<u>DETERMINATIONS DENYING CLAIMS OVER ERISA-RELATED OBJECTIONS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ............................................................................................................................ 2

I.   NEITHER THE TRUSTEE NOR SIPC PROVIDE A BASIS FOR DISPUTING THE RELEVANCE OF THE PLAN PARTICIPANTS' CONTROL OVER THEIR INVESTMENTS WITH BLMIS .................................................................................................... 2

II.  THERE IS NO BASIS FOR LIMITING "CUSTOMER" STATUS UNDER SIPA TO CLAIMANTS THAT HAVE ACCOUNTS IN THEIR OWN NAMES WITH BLMIS ......................................................... 5

    A.   SIPA Does Not Limit the Definition of "Customer" to Account Holders ................................................................................. 5

    B.   The Plan's Legal Ownership of the Assets Does Not Deprive the Participants of "Customer" Status ............................................ 6

CONCLUSION ......................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Aozora Bank Ltd.*,
  No. 11-CV-05683 (DLC), 2012 WL 28468 (S.D.N.Y. Jan 4, 2012) ......................... 3

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011) ............................................................................. 2, 7

*Kurzweil v. Philip Morris Cos., Inc.*,
  No. 94 CV 2373 (MBM), 2001 WL 25700 (S.D.N.Y. Jan. 10, 2001) ..................... 8

*LaRue v. DeWolff, Boberg & Assocs.*,
  552 U.S. 248 (2008) ............................................................................................ 7

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*,
  666 F.3d 68 (2d Cir. 2011) .................................................................................. 7

*Plumbers & Steamfitters Local 490 Severance & Retirement Fund v. Appleton
  (In re First Ohio Securities Co.)*,
  No. 93-3313, 1994 WL 599433 (6th Cir. Nov. 1, 1994) ....................................... 3

*Securities Investor Protection Corp. v. Morgan, Kennedy & Co.*,
  533 F.2d 1314 (2d Cir. 1976) .............................................................................. 3

**STATUTES**

15 U.S.C. § 78*lll*(2) ................................................................................................ 7

29 U.S.C. § 1104(c)(1) ........................................................................................ 3, 4

Employee Retirement Income Security Act of 1974 ............................................. 1

Eric S. Saretsky ("Saretsky"), a participant of the Sterling Equities Associates Employee Retirement Plan (the "Sterling Plan" or the "Plan"), and the Administrator of the Plan (the "Plan Administrator") submit this Memorandum of Law in Reply to: (i) the Memorandum of Law in Support of the Trustee's Motion For An Order Affirming Trustee's Determinations Denying Claims over ERISA- Related Objections (the "Trustee's Brief") filed by Irving H. Picard, Trustee (the "Trustee") on March 2, 2012 (Docket Entry #4703)[1]; and, (ii) the Memorandum of Law of the Securities Investor Protection Corporation ("SIPC") in Support of Trustee's Motion For An Order Affirming Trustee's Determinations Denying Claims over ERISA- Related Objections (the "SIPC Brief"), filed by SIPC on March 2, 2012 (Docket Entry #4702).[2]

## PRELIMINARY STATEMENT

Neither the Trustee nor SIPC has offered a basis for disputing that: the Sterling Plan participants' investments in Bernard L. Madoff Investment Securities, LLC ("BLMIS") were held in the Plan for the participants' benefit; investments in BLMIS were made pursuant to the decisions of each of the individual Plan participants, who were free to direct that their Plan holdings be invested elsewhere; and the Plan fiduciaries exercised no discretion at all with respect to these investment decisions other than the initial decision to make BLMIS available as

---

[1] "Docket Entry # __" refers to the Court docket of this action, *In re Bernard L. Madoff*, Adv. Pro. No. 08-01789 (BRL) (S.D.N.Y.).

[2] The Trustee makes a half-hearted effort to contest the standing of Saretsky and the Plan Administrator to seek relief on behalf of other Plan participants. *See* Trustee's Brief at 7, n.4. Even though the Trustee elsewhere disputes the relevance of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") to these proceedings, he purports to rely on ERISA as limiting the Plan Administrator's standing to bring suits for breach of fiduciary duty under ERISA. But nothing in ERISA limits the Plan Administrator's standing to bring other suits on behalf of its participants. Nor does it preclude Saretsky from seeking class-wide relief on behalf of all Plan participants. In any event, were Saretsky and the Plan Administrator to prevail, the Trustee would be collaterally estopped from denying the claims of the other participants.

one of several investment alternatives. Instead, the Trustee and SIPC adopt arguments, based on a rigid application of their purported definition of "customer" under the Securities Investor Protection Act ("SIPA"), that directly conflict with the acknowledged purpose of the law: to protect those people who entrusted their money with a securities broker for the purpose of investing in securities. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 239 (2d Cir. 2011) (noting that the "principal purpose" of SIPA is to protect investors against financial losses due to the "insolvency of their brokers"). For the reasons stated below, and/or stated in the briefs submitted on behalf of the participants of the Orthopaedic Specialty Group PC Defined Contribution Pension Plan (the "OSG Participants") and the Jacqueline Green and Wayne Green Rollover Account (the "Green Participants"), which Saretsky and the Plan hereby incorporate by reference, neither the language nor the spirit of SIPA supports the Trustee's or SIPC's arguments.

## ARGUMENT

### I.

### NEITHER THE TRUSTEE NOR SIPC PROVIDE A BASIS FOR DISPUTING THE RELEVANCE OF THE PLAN PARTICIPANTS' CONTROL OVER THEIR INVESTMENTS WITH BLMIS

Neither the Trustee nor SIPC has offered a basis for disputing the essential feature that distinguishes the participants of the Sterling Plan from other ERISA Claimants: namely, that each of the participants of this Plan made the decision to invest his/her retirement savings in BLMIS, as opposed to other investment options offered by the Plan, such that the Plan and its fiduciaries served merely as pass-through vehicles to facilitate that investment choice. *See* Saretsky's and Plan's Memorandum of Law in Support of Objection to the Motion for an Order Affirming the Trustee's Determinations Denying Claims Over ERISA-Related Objections

2

("Sterling Brief") at 3 (Docket Entry #4643). SIPC's contention, that the Plan participants "had no power to dispose of the plan assets purportedly held by BLMIS for their benefit plans," (SIPC Brief at 15) is directly in conflict with Section 404(c) of ERISA, which clearly left the Plan participants with the exclusive discretion to determine how to invest the money in their Plan accounts. *See* 29 U.S.C. § 1104(c)(1). The Trustee's contention, that this is a "distinction without a difference," is equally disingenuous. Trustee's Brief at 28. The distinction between how investment decisions are made in this Plan and other plans is enormous, as it completely distinguishes the few case law authorities relied on by the Trustee and SIPC to deny the Plan participants the protection of SIPA.

The authority to make the investment decision sets the Plan participants apart from the Feeder Fund investors who were determined not to be "customers" under SIPA because those investors were merely partial owners in investment funds that invested in BLMIS. *See In re Aozora Bank Ltd.*, No. 11-CV-05683 (DLC), 2012 WL 28468, at *3 (S.D.N.Y. Jan 4, 2012). It similarly distinguishes the Plan participants from the participants in *Securities Investor Protection Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976), who were denied "customer" status because in that case the trustees of the plan -- not the participants -- had the exclusive authority to entrust plan assets to the debtor.[3]

The Trustee contends nevertheless that *Morgan, Kennedy* is "on all fours with respect to" the Plan participants because: (i) "only the trustees, on behalf of the plan, had the right to trade in the [BLMIS] account;" (ii) the participants had no ability to prevent the trustees of the Plan from removing BLMIS as an investment option; and (iii) the "only 'investment decision' the Sterling

---

[3] The Trustee's citation to the Sixth Circuit's unpublished decision in *Plumbers & Steamfitters Local 490 Severance & Retirement Fund v. Appleton (In re First Ohio Securities Co.)*, No. 93-3313, 1994 WL 599433 (6th Cir. Nov. 1, 1994) is of no significance since the decision provides no analysis of the legal standards set forth in *Morgan, Kennedy*.

3

Individual Claimants could make as to BLMIS was whether to direct the plan administrator to send certain funds to the Sterling BLMIS account (which contained the vast majority of the BLMIS investments), as opposed to one of the few options chosen by those in control of the Sterling Plan." Trustee's Brief 28-29.  In making these contentions, the Trustee turns a blind eye to the reality of how a participant directed plan under Section 404(c) of ERISA operates, even though he nowhere disputes the application of that unique provision.  *See* 29 U.S.C. § 1104(c)(1).

First, while the Plan Trustees may technically implement the investment instructions of individual Plan participants, they exercise no discretion with respect to that action.  It is precisely for that reason that ERISA removes from the trustees of participant-directed plans governed by Section 404(c) any fiduciary responsibility with respect to the investments directed by the Plan participants.  *See* 29 U.S.C. § 1104(c)(1); Sterling Brief at 3.

Second, although it is true that the Plan Trustees retain the limited authority to add or remove investment alternatives, it is the participants who decide whether to invest their contributions, as well as the employer contributions made on their behalf, in any particular investment alternative.  *See* Sterling Brief at 3.  It is the latter decision, not the former, which resulted in the investments in BLMIS, and the losses suffered by the Plan participants.

Third, the fact that the BLMIS account contained the majority of the Sterling Plan's assets in no way diminishes the fact that the exclusive role of each individual participant in deciding to invest his/her assets there.  Each participant was free to invest all or a portion of his/her Plan holdings in the other alternatives.  *See* Sterling Brief at 3.

4

In short, the Plan participants' retention of exclusive decision-making authority with respect to their investment in BLMIS distinguishes their circumstances from those of the other plan participants whose claims have been rejected, and thus, entitles them to SIPC protection.

## II.

### THERE IS NO BASIS FOR LIMITING "CUSTOMER" STATUS UNDER SIPA TO CLAIMANTS THAT HAVE ACCOUNTS IN THEIR OWN NAMES WITH BLMIS

Having failed to effectively dispute that the Plan participants were "investors," in the true sense of the word, insofar as they made the investment decision to deposit monies with BLMIS, the Trustee ultimately resorts to the argument that the Plan participants are nevertheless not protected by SIPA because they did not qualify as "customers." *See* Trustee's Brief at 15-19. Specifically, the Trustee argues that "customer" status does not lie because the Plan account at BLMIS was not in the name of the Plan participants, and legal title to that account rested with the Plan Trustees, rather than the participants. *See* Trustee's Brief at 18, 26. Under the Trustee's construction of SIPA, the statute will protect an investor who opened an account in his own name, but it will not protect an investor who made the same investments, pursuant to the same decision-making authority, if his/her assets are held in an account holding the investments of other investors who similarly, but independently, made the same investment decisions. A review of the statute and relevant authorities reveals that the Trustee's position is not only unprincipled, but is unsupported.

A. **SIPA Does Not Limit the Definition of "Customer" to Account Holders**

The Trustee contends that "[t]he definition of 'customer' in SIPA requires a customer to be an account holder or a person for whom an account should have been opened…. In other words, a 'customer' is the person who actually entrusted the property to the broker and who

5

would have been entitled to demand its direct return from the broker had no broker insolvency occurred." Trustee's Brief at 15.[4] In support of this contention, the Trustee purports to rely on: (i) a selective reading of SIPC's definition of "customer"; (ii) references to the definition of "customer" used by the Securities Exchange Commission ("SEC") in other contexts; and (iii) this Court's "net equity" determination, which calculates each "customer's" preferential share in "customer property" of the debtor based on a review of the debtor's books and records. *See* Trustee's Brief at 15-18. For the reasons stated by the OSG Participants and the Green Participants in their submissions, none of these arguments are persuasive. SIPA clearly supports the application of "customer" status where, as here, assets inuring to the benefit of Plan participants are entrusted in an account of the debtor. *See* Memo of Law in Opposition to Trustee's Motion for an Order Affirming Determinations Denying Claims over ERISA-Related Objections filed by the OSG Participants on January 17, 2012 (the "OSG Brief"), at 8-11 (Docket Entry #4631).

### B. The Plan's Legal Ownership of the Assets Does Not Deprive the Participants of "Customer" Status

The brief filed on behalf of the Green Participants also responds to the contention that that "customer" status does not extend to the participants because the Plan, not its participants, "owned, and deposited, the cash with BLMIS for the purpose of purchasing securities." Trustee's Brief at 24. *See* Claimants' Opposition to Trustee's Motion for Court Approval of His Denial of Claims of Investors Under ERISA-Protected Plans filed by Jacqueline Green Rollover

---

[4] The Trustee likewise argues that: since the Sterling Plan account with BLMIS was in the name of the Plan, only the Plan Administrator, as the authorized signatories of the "Account Holders," had legal authority to deposit or withdraw money from BLMIS; and that since the "Account Holders," unlike Plan participants, opened securities accounts at BLMIS, the accounts were in their names, the books and records reflected their deposits and withdrawals, and BLMIS sent them account statements and confirmations. *See* Trustee's Brief at 18. If, for the reasons stated, "customer" status is not limited to the account holders, then these arguments would similarly fail.

6

Account and Wayne Green Rollover Account on January 17, 2012 (the "Green Brief"), at 4-5 (Docket Entry #4637) (setting forth relevant case law supporting the proposition that the failure to deliver assets directly with the debtor does not strip investors of "customer" status under SIPA). Simply because the assets in each of the participants' Plan accounts is legally held by the Plan before they are deposited with BLMIS does not alter the fact that the participants entrusted "cash or securities" to BLMIS for the purposes of trading securities, in satisfaction of SIPA. *See* Section 78*lll*(2) of SIPA; 15 U.S.C. § 78*lll*(2); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (noting that the "critical aspect" of the definition of customer is the entrustment of cash or securities to the broker-dealer for investment purposes).

For that reason, the Supreme Court's holding in *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008), that a 401(k) plan participant's holdings are plan assets, and the corresponding ruling to that effect in *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68 (2d Cir. 2011), are immaterial to the question of whether the Plan participants are "customers." If anything, these decisions, when read in context, support a finding of "customer" status insofar as they recognize that plan participants who are responsible for plan investments made specifically on their behalf should have a direct right to seek recovery of losses from these investments. *See LaRue*, 552 U.S. at 256 (finding that, even though suits brought under Section 502(a)(2) of ERISA must seek recovery on behalf of the entire plan, participants can seek a recovery that inures to the benefit of their individual accounts, since, in the defined contribution context, it is the participants' individual accounts that are in need of statutory protection); *Milgram*, 666 F.3d at 74-76 (finding that the fact that the plan's assets were earmarked to pay benefits to participants did not excuse the plan from satisfying a judgment against it arising from the plan administrator's overpayment of benefits to plaintiff's spouse).

7

Similarly here, the mere fact that the Plan has legal title to the participants' Plan holdings should not preclude the Plan participants from obtaining relief from losses attributable to their investment decisions. *See also Kurzweil v. Philip Morris Cos., Inc.*, No. 94 CV 2373 (MBM), 2001 WL 25700, at *4 (S.D.N.Y. Jan. 10, 2001) (concluding that 401(k) plan participants were entitled to settlement recoveries of losses from stock fund investments based on their individual investment decisions, even though the plan made aggregate purchases and sales on the participants' behalf).

## CONCLUSION

For the reasons set forth above, the Trustee's ERISA CWAA Motion should be denied with respect to the participants of the Sterling Plan, the Plan participants should be treated as "customers" under SIPA, should be afforded full SIPC protection and should receive an advance from SIPC in an amount up to $500,000.

Dated:   April 2, 2012
         New York, NY

                                        PROSKAUER ROSE LLP


                                        By:  s/ Richard J. Corbi
                                             Myron D. Rumeld
                                             Anthony S. Cacace
                                             Richard J. Corbi
                                        Eleven Times Square
                                        New York, New York 10036
                                        Telephone:   212.969.3021
                                        Facsimile:   212.969.2900
                                        mrumeld@proskauer.com
                                        acacace@proskauer.com
                                        rcorbi@proskauer.com
                                        *Attorneys for Eric S. Saretsky &
                                        The Plan Administrator of the Sterling
                                        Equities Associates Employee Retirement Plan*

8