Marc J. Kurzman (MK 2962)
SANDAK HENNESSEY & GRECO, LLP
707 Summer Street, 3rd Floor
Stamford, CT 06901
Tel: (203) 425-4200
Fax: (203) 325-8608
Email: mkurzman@shglaw.com

Peter N. Wang (PW 9216)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Phone: (212) 682-7474
Fax: (212) 687-2329
E-mail: pwang@foley.com

*Co-Counsel for Orthopaedic Specialty Group, P.C. Defined Contribution Pension Plan Participants*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | ) ) ) ) | SIPA LIQUIDATION |
| Plaintiff, | ) ) ) | Adv. Pro. No. 08-01789 (BRL) |
| v. | ) ) | |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | ) ) ) | |
| Defendant. | ) ) | |

--------------------------------------------------------

In re:

BERNARD L. MADOFF,

      Debtor.

--------------------------------------------------------

**REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO TRUSTEE'S MOTION FOR AN ORDER AFFIRMING DETERMINATIONS DENYING CLAIMS <u>OVER ERISA-RELATED OBJECTIONS</u>**

4844-7075-6623.5

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

    A.    Entrustment is the Critical Factor
           in Determining "Customer" Status ........................................................................... 2

    B.    The Trustee Has Grafted Onto the
           Statute a Requirement Which Does Not Exist ............................................................ 3

    C.    The OSG Plan is a 401(k) Defined Contribution
           Plan, And As Such the Plan's Individual Depositors are
           Entitled to "Customer" Status to This Court's Consideration ................................... 6

    D.    The Trustee and SIPC Impose
           Requirements for "Customer" Status that Do Not Exist............................................ 6

CONCLUSION .................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page**

Ahammed v. SIPC (In re Primeline Sec. Corp.),
295 F.3d 1100 (10th Cir. 2002) ........................................................................................... 5

Allo v. Holy Cross School,
2000 WL 1808493 (E.D. La. Dec. 8, 2000) ........................................................................ 7

Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard Madoff Inv. Sec., LLC),
11-cv-5683 et al., 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012) ................................................ 2

In re Bernard L. Madoff Inv. Sec. LLC,
654 F.3d 229 (2d Cir. 2011) ............................................................................................ 2, 4

In re ESM Gov't Secs., Inc.
812 F.2d 1374 (11th Cir. 1987) ........................................................................................... 3

In the Matter of Investors Sec. Corp.,
6 B.R. 420 (Bankr. W.D. Pa. 1980) ..................................................................................... 5

Focht v. Heebner (In re Old Naples Securities, Inc.),
223 F.3d 1296 (11th Cir. 2000) ........................................................................................... 5

LaRue v. DeWolff, Boberg, and Assocs., Inc.,
552 U.S. 248 (2008) ......................................................................................................... 6-8

Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan,
666 F.3d 68 (2d Cir. 2011) ............................................................................................. 6, 7

Oppenheimer & Co., Inc. v. Neidhardt,
56 F.3d 352 (2d Cir. 1995) .................................................................................................. 5

Rosenman Family, LLC v. Picard,
395 Fed. Appx. 766 (2d. Cir. 2010) ..................................................................................... 2

SEC v. Ambassador Church,
679 F.2d 608 (6th Cir. 1982) ............................................................................................... 5

SEC v. Barbour,
421 U.S. 412 (1975) ............................................................................................................ 4

Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec's. LLC,
11-cv-6356-DLC, ECF 10, at 7 (Nov. 4, 2011) ................................................................... 2

## **TABLE OF AUTHORITIES**

**Page**

Sec. Investor Prot. Corp., v. Bernard L. Madoff Inv. Sec., LLC,
454 B.R. 285 (Bankr. S.D.N.Y. 2011) ............................................................................... 2, 4

Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.,
401 B.R. 629 (Bankr. S.D.N.Y. 2009) .................................................................................. 2

Secs. Investor Prot. Corp. v. Exec. Secs. Corp.,
556 F.2d 98 (2d Cir. 1977) .................................................................................................. 3

Rosenman Family, LLC v. Picard
420 B.R. 108 (S.D.N.Y. 2009) ............................................................................................. 2

Rosenman Family, LLC v. Picard
395 Fed. Appx. 766 (2d Cir. 2010) ...................................................................................... 3

### **Statutes**

15 U.S.C. § 78*lll*(2) ........................................................................................................ 3, 8

29 U.S.C § 18 ....................................................................................................................... 8

29 U.S.C. § 1002(34) ........................................................................................................... 8

The individual participants in the Orthopaedic Specialty Group P.C. Defined Contribution Pension Plan a/k/a the Orthopaedic Specialty Group P.C. 401(k) Plan ("OSG Plan" or "Plan")[1], by and through their attorneys, hereby file this Reply Memorandum of Law in Further Opposition to the Trustee's Motion for an Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections (the "Motion").

## INTRODUCTION

In their January 17, 2012 submissions to the Court, the OSG Plan Participants demonstrated that they had entrusted their own funds to BLMIS for the purchase of securities. Neither the Trustee nor SIPC offer any contrary evidence or argument to refute the fact that the funds were so entrusted. Instead, in their respective Reply Memoranda they essentially abandon the concept of entrustment as the touchstone for "customer" status and substitute the theory that one needs to have a direct, named account (or something akin to a direct account) with a broker dealer in order to qualify as a customer under SIPA.[2] But the operative statute contains no such formalistic requirement. Rather, the statute (and its underlying policy) addresses the substance of the investor's status, not simply its form. Both the language of SIPA § 78$lll$(2) and relevant case law requires that each OSG Plan Participant be regarded as a separate customer of BLMIS entitled to SIPC coverage for the loss of their net equity invested with BLMIS.

---

[1] All capitalized terms herein, not otherwise defined, have the definition afforded in the Plan Participants' Memorandum of Law in Opposition to Trustee's Motion for an Order Affirming Determinations Denying Claims Over ERISA-Related Objections, ECF No. 4631.

[2] Since the Trustees' Brief specifically addresses the OSG Plan Participants' Customer Claims, for the remainder of this Memorandum the OSG Plan Participants address the Trustee's arguments.

# ARGUMENT

### A.     Entrustment is the Critical Factor in Determining "Customer" Status

This is not the first time that the Court has addressed the general question of who qualifies as a "customer" for SIPA purposes.  The issue was extensively briefed, argued and considered in connection with the Trustee's June 11, 2010 motion (ECF No. 2411) to affirm its denial of customer status to investors in so-called Feeder Funds ("Feeder Funds Motion").  This Court, in ruling in favor of the Trustee; the District Court, in affirming that ruling; and the Second Circuit in its previous opinions on the subject, all recognized that "the critical aspect of the 'customer' definition is the <u>entrustment of cash or securities to the broker-dealer for the purposes of trading securities</u>."  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. 285, 298 (Bankr. S.D.N.Y. 2011) *aff'd by Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard Madoff Inv. Sec., LLC)*, 11-cv-5683 et al., 2012 WL 28468, at *6 (S.D.N.Y. Jan. 4, 2012), citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 236 (2d Cir. 2011) (emphasis added).  The Trustee argued that precise point in support of its position that Feeder Fund investors are not "customers" under SIPA.  Appellees Brief, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec's. LLC*, 11-cv-6356-DLC, ECF 10, at 7 (Nov. 4, 2011) ("Trustee's Appellate Brief").  This Court properly focused on whether claimants', "*own* money was ultimately invested with the debtor." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, LLC, 454 B.R. at 299 (internal citations omitted).  That same focus (on whether funds were entrusted to BLMIS for the purchase of securities) led this Court to dismiss the Rosenman family's complaint to claw back monies it sent to BLMIS for the purchase of securities.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 401 B.R. 629, 635 (Bankr. S.D.N.Y. 2009); *aff'd, Rosenman Family, LLC v. Picard*, 420 B.R. 108 (S.D.N.Y. 2009); *aff'd on other*

*grounds, Rosenman Family, LLC v. Picard*, 395 Fed. Appx. 766, 768 (2d. Cir. 2010).

There can be no serious dispute that each of the OSG Plan Participants entrusted their funds to BLMIS for the purchase of securities. Faced with that stark fact, the Trustee essentially abandons the concept of entrustment in his Reply Brief. But the concept can not be wished away – it remains the critical, operative element in determining "customer" status. ("[I]t is the act of *entrusting* the cash to the debtor for the purpose of effecting securities transactions that triggers the ... provisions [of SIPA]." (emphasis in original) *In re ESM Gov't Secs., Inc.,* 812 F.2d 1374, 1376 (11th Cir. 1987) (citing *Secs. Investor Prot. Corp. v. Exec. Secs. Corp.,* 556 F.2d 98 (2d Cir. 1977). And thus here, it is the OSG Plan Participants' entrustment of their funds to BLMIS for the indisputable purpose of purchasing securities that qualifies them as customers.

B.  **The Trustee Has Grafted Onto the Statute a Requirement Which Does Not Exist**

SIPA § 78*lll*(2) defines "customer" in two alternative ways: First, customer status is accorded to a person who has a claim on account of securities received, acquired or held by the broker dealer "from or for the securities account of such person." Second, customer status is accorded to "any person who has deposited cash with the debtor for the purpose of purchasing securities." There is no requirement in the statute that the cash deposited with the broker dealer be "from or for the securities account of such person". Nevertheless, the Trustee has grafted such a requirement onto the statute.

It would have been easy enough for Congress to draft the statute in a way which limited customer status only to those persons who opened an actual, named account with the broker dealer. In that case, the statute simply would have read:

> The term "customer" of a debtor mean any person (including a person with whom the debtor deals as principal or agent) who has a claim on account of

3

securities or cash received, acquired or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities account of such person for safekeeping with a view to sale, to cover consummated sales, pursuant to purchases as collateral security or for purposes of effecting transfer or for the purchase of securities.

But that is not how the statute was written. Instead, the statute was written to bring within the ambit of the "customer" definition persons who legitimately entrusted funds to the broker dealer to purchase securities regardless of whether a named account was opened for them. This is entirely consistent with the policy reasons – investor protection – underlying the statute. *SEC v. Barbour*, 421 U.S. 412, 421 (1975) ("Congress' primary purpose in enacting SIPA and creating the SIPC was, of course, the protection of investors."); *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 239 (2d Cir. 2011) ("The principal purpose of SIPA is to protect investors against financial losses arising from the insolvency of their brokers.").

Indeed, in approving the Trustee's denial of customer status to the Feeder Fund investors, this Court recognized that owning a brokerage account was not the only way to establish customer status under SIPA:

> Without securities accounts at, <u>or</u> entrusting securities or cash with, the debtor for the purpose of trading or investing in securities, the Objecting Claimants cannot establish the existence of a fiduciary relations with BLMIS akin to that of an investor and its broker-dealer.

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. at 299 (emphasis added).[3]

Even the Trustee recognized, as it must, that there are cases where customer status

---

[3] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. at 298 n.16, "[t]he Court declines, however, to hold as a universal principle that an investor must have a *specifically titled* accountin the investor's name that *appears on the debtor's available books and records* as an express requirement for obtaining customer status. There may be, for example, special circumstance accounts that provide for the equivalent of a specifically titled account."

4

has been accorded to persons who did not have an account with the failed broker dealer. *See Focht v. Heebner (In re Old Naples Securities, Inc.)*, 223 F.3d 1296 (11th Cir. 2000); *Ahammed v. SIPC (In re Primeline Sec. Corp.)*, 295 F.3d 1100 (10th Cir. 2002); *In the Matter of Investors Sec. Corp.*, 6 B.R. 420 (Bankr. W.D. Pa. 1980); *SEC v. Ambassador Church*, 679 F.2d 608 (6th Cir. 1982) The Trustee claims that these cases simply create a narrow judicial exception for situations where a account should have been opened. But none of these cases announce such a narrow judicial exception. Rather, they are based on the application of a statute that provides a flexible standard for qualification as a customer when the facts support entrustment and equitable relief. In *In re Old Naples Securities, Inc.*, 223 F.3d at 1302-03, and *In re Primeline Sec. Corp.*, 295 F.3d at 1107, the courts did not strictly apply the definition of "customer," and allowed investors who had given their money to an individual broker rather than the brokerage firm to be considered customers. *See also Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 357 (2d Cir. 1995) (individuals were "customers" of NASD member broker-dealer entitling them to arbitrate with the broker-dealer under the NASD arbitration code, even though their funds were never deposited into an account opened in their name, but were deposited instead into an account in the name of a third party fraudster). *SEC v. Ambassador Church*, 679 F.2d at 614, further illustrates the flexibility of the customer standard, finding that a church was entitled to customer status even when no account was maintained in the name of the church, precisely because it was unlikely that "Congress, in seeking to protect the assets of small transaction customers of broker-dealers, intended to make eligibility for protection depend on whether the broker complied with the rules of the SEC of practices of the trade." *See also In the Matter of Investors Sec. Corp.*, 6 B.R. at 424-426 (finding customer status is "not dependent upon official documentation in the Debtor's books" and that investor "must prove only that he entrusted case with the Debtor for the

5

purpose of purchasing securities.")

    **C.    The OSG Plan is a 401(k) Defined Contribution Plan, And As Such the Plan's Individual Depositors are Entitled to "Customer" Status to This Court's Consideration**

The Trustee relies heavily on *Morgan, Kennedy* but as the OSG Plan Participants demonstrated in their opening brief, the fact that the OSG Plan is a Defined Contribution Plan – where much of the money contributed came from the individuals participants, and not from the employer – makes all the difference in the world.

Blindly applying *Morgan, Kennedy* here would obliterate the important and necessary SIPA protection for 401(k) plan participants exactly contrary to what Congress intended in authorizing and encouraging such pension plans. The corollary to Congress encouraging investment in 401(k) profit sharing plans is that Congress offered the umbrella of SIPA protection to individual 401(k) profit sharing plan investors, like the OSG Plan Participants – just as is offered to other members of the public who invest in securities. If the Court were to decide that the OSG Plan Participants receive no SIPA protection, all 401(k) participants would be left without any SIPA protection. That cannot possibly have been Congress's intent.

    **D.    The Trustee and SIPC Impose Requirements for "Customer" Status that Do Not Exist**

Finally, the Trustee and SIPC rely on dicta and irrelevant citations to impose additional requirements for "customer" status in SIPA that simply do not exist. The Trustee and SIPC cite to *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68 (2d Cir. 2011) and *LaRue v. DeWolff, Boberg, and Assocs., Inc.*, 552 U.S. 248 (2008), as allegedly requiring that a plan participant must "own" the plan funds, in a named account, in order to be entitled to protection under SIPA. There is no such requirement under SIPA. A customer under SIPA includes "any person who has deposited cash with the debtor for the purpose of purchasing

6

4844-7075-6623.5

securities…." SIPA §78*lll*(2)(as amended through December 12, 2006).  There is no requirement in SIPA, explicit or otherwise, that a Plan participant have a named securities account to be deemed a "customer" as the Trustee and SIPC argue.  Further, *Milgram* and *LaRue* do not stand for this point: they address only whether a Plan participant has a right to bring an individual cause of action against the plan, which is distinct from the issue of whether a Plan participant should be considered a "customer" under SIPA.

Furthermore, in *Milgram*, the Court acknowledged that in a defined contribution plan the employee's benefits are a function of the "contributions—his own and those of his employer—that have been credited to his account…"[4] 666 F.3d at 76.  As such, the distinctive feature of a defined contribution plan is that the "employee rather than the employer" bears the risks associated with investment.  *Id.*  Thus, because the OSG Plan Participants bore the risk of the value of their accounts being reduced, they should be protected under SIPA from the misuse of the Plan's assets by BLMIS.  *Milgram's* contrary characterization of how a defined benefit plan operates actually supports the argument that the OSG Plan Participants should receive SIPA

---

[4] The plan language in *Milgram* also defined "benefits" as being earned "upon retirement" and, as such, the Court held that the plan's undistributed assets were owned by the plan trustee. *Milgram*, 666 F.3d at 74.  In contrast, the OSG Plan Participants are not entitled to benefits merely upon retirement. Instead, the Plan indicates that the OSG Plan Participants have a "permanent, nonforfeitable right to [amounts under the Plan]…" and are entitled to 100% of their benefits as soon as they are vested. (Plan Summary, p. 10, attached as Exhibit A to Henry Backe Affidavit, Dkt. 4632-1).  The OSG Plan Participants are 100% vested after three years of service, upon attainment of age 65, upon death, upon termination due to disability, and upon termination of the Plan.  Plan Summary, p. 10.  Additionally, the Plan makes clear that the OSG Plan Participants' own contributions are held in a trust fund, "held for the exclusive benefit of Plan Participants."  Plan Summary p. 26.  Therefore, the OSG Plan Participants are entitled to benefits under the Plan, and have a cognizable property interest in the Plan assets, at the time their benefits vest.  Unlike in *Milgram*, the Trustee cannot "own" the assets in the Plan once they are vested.  *See also Allo v. Holy Cross School,* 2000 WL 1808493 (E.D. La. Dec. 8, 2000) (where the court explained that a defined benefit plan is one where the individual does not own the assets of the plan but only a "promise of benefits."  By contrast, in a defined contribution plan the individual plan owner "holds his or her own account and the eventual benefits received by the plan member are tied exclusively to the level of earnings on those funds during the life of the plan.").

7

protection here.

The Trustee and SIPC rely on dicta in Justice Thomas's concurring opinion in *LaRue* to support their argument that in order to be a "customer" under SIPA, the plan assets must be owned by the participant. As already noted, *LaRue* held that a plan participant has the right to sue the plan to recover the impaired value of the assets in their individual accounts maintained for their benefit under the plan. In any event, Justice Thomas's concurrence (not adopted by the majority) cites no authority, and is clearly dicta and not binding (or even particularly relevant) here. *LaRue*, at 1029.

Justice Thomas's comment that Plan assets are allocated to an individual participant for "bookkeeping purposes" only, is also contrary to the definition of a "defined contribution plan", which is "a pension plan which provides for <u>an individual account for each participant</u> and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 18, 1002(34). Certainly, the statute does not suggest, in any way, that the individual account is to be treated as a "bookkeeping" entry, as Justice Thomas posited for purposes of his analysis. Phrased another way, there is every reason to regard the individual plan participants as "customers" under SIPA, both as a matter of law and policy; for purposes of Justice Thomas's analysis, there was no such reason.

## CONCLUSION

The OSG Plan Participants have established that they entrusted their funds to BLMIS for the purpose of purchasing securities. Accordingly, each is a "customer" of BLMIS as that term is defined at 15 U.S.C. § 78*lll*(2). Because SIPC was designed by Congress to

8

4844-7075-6623.5

protect individual investors from the insolvency of their stock brokers, and, most importantly because the OSG Plan Participants made individual decisions to entrust their own funds to BLMIS through a 401(k) plan, SIPC coverage should be extended to each of the OSG Plan Participants to the full extent of their vested interest (employee and employer contributions) in their individual Plan accounts.  In light of the above, we respectfully request that the Court deny the Trustee's Motion and treat the OSG Plan Participants' as "customers" under SIPA.

Dated: New York, New York
　　　　April 2, 2012

/s/ *Peter N. Wang*
Peter N. Wang
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Fax: (212) 687-2329
E-mail:pwang@foley.com

and
Marc J. Kurzman (MK 2962)
SANDAK HENNESSEY & GRECO, LLP
707 Summer Street, 3rd Floor
Stamford, CT 06901
Tel: (203) 425-4200
Fax: (203) 325-8608
Co-Counsel for Orthopaedic Specialty Group, P.C.
Defined Contribution Pension Plan Participants

9

4844-7075-6623.5