# EXHIBIT A

4/14 90 days

Tina Amw - 10/17

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Marc E. Hirschfield
Richard J. Bernard
Geraldine E. Ponto
Marc Skapof

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>ROBERT S. BERNSTEIN,<br><br>Defendant. | Adv. Pro. No. 10-04883 (BRL) |

**COMPLAINT**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff individually ("Madoff"), by and through his undersigned counsel, for his complaint (the "Complaint"), states as follows:

**NATURE OF PROCEEDING**

1. This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts. When added together, these statements purport that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts and was sentenced on June 29, 2009 to 150 years in prison. The within defendant ("Defendant") received avoidable transfers from BLMIS.

2. Defendant was a beneficiary of this Ponzi scheme. Since December 11, 2002, Defendant received the amount of $1,900,000 from BLMIS. The Trustee's investigation has revealed that $545,000 of this amount represented fictitious profits from the Ponzi scheme. Accordingly, Defendant has received $545,000 of other people's money. This action is brought to recover the fictitious profit amount so that this customer property can be equitably distributed among all of the victims of BLMIS.

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

3. This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001) ("DCL")), and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendant. The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS' defrauded customers.

**JURISDICTION AND VENUE**

4. This is an adversary proceeding commenced before the same Court before whom the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4).

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

6. Venue in this district is proper under 28 U.S.C. § 1409.

**DEFENDANT**

7. Upon information and belief, Defendant Robert S. Bernstein maintains his residence in Fort Lauderdale, Florida. Defendant holds a BLMIS account in the name, "Robert S. Bernstein," with the account address reported as Fort Lauderdale, Florida.

## BACKGROUND, THE TRUSTEE AND STANDING

8. On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court, which commenced the District Court Proceeding against Madoff and BLMIS. The District Court Proceeding remains pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

9. On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of BLMIS.

10. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

11. Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

a. appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding

b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c. removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

12. By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

13. At a Plea Hearing on March 12, 2009 in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 23, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* Madoff was sentenced on June 29, 2009 to 150 years in prison.

14. On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11, 2009 in the case entitled *United States v. DiPascali,* Case No. 09-CR-764 (RJS), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank

---

was commenced." 15 U.S.C. § 78*lll*(7)(B). Thus, even though the application for a protective decree was filed on December 15, 2008, the Filing Date in this action is December 11, 2008.

DiPascali at 46, *United States v. DiPascali*, No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (Docket No. 11).

15. As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

16. Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA section 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

17. Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

18. The Trustee has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

a. Defendant received "Customer Property" as defined in 15 U.S.C. §78*lll*(4);

b. BLMIS incurred losses as a result of the claims set forth herein;

c. BLMIS' customers were injured as a result of the conduct detailed herein;

d. SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for all of their losses;

e. the Trustee will not be able to fully satisfy all claims;

f. the Trustee, as bailee of customer property, can sue on behalf of the customer bailors;

g. the Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers, collectively, "Accountholders"). As of the date hereof, the Trustee has received multiple express unconditional assignments of the applicable Accountholders' causes of action, which actions could have been asserted against Defendant. As assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages. The Trustee brings this action on behalf of, among others, those defrauded customers of BLMIS who invested more money in BLMIS than they withdrew; and

h. SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding. SIPC has expressly conferred upon

the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds.

**THE FRAUDULENT PONZI SCHEME**

19. Founded in 1959, BLMIS began operations as a sole proprietorship of Madoff and later, effective January 2001, formed as a New York limited liability company wholly owned by Madoff. Since in or about 1986, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, proprietor, chairman, and chief executive officer, ran BLMIS together with several family members and a number of additional employees. BLMIS was registered with the SEC as a securities broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b). By that registration, BLMIS is a member of SIPC. BLMIS had three business units: investment advisory (the "IA Business"), market making and proprietary trading.

20. For certain accounts in the IA Business, BLMIS purported to participate in a capital appreciation/depreciation strategy, depending on whether the customer sought to generate gains or losses. For example, the strategy was executed by either purporting to purchase small groups of securities near lows and then purporting to sell those same securities at highs, or by purporting to short-sell securities near highs and then purporting to repurchase those securities near lows.

21. For other accounts, Madoff described the IA Business' strategy as a "split-strike conversion" strategy. Madoff promised these clients that their funds would be invested in a basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S. publicly traded companies. The basket of stocks would be intended to mimic the movement of the S&P 100 Index. Madoff asserted that he would carefully time purchases and sales to maximize value, but this meant that the clients' funds would intermittently be out of the market,

at which times they would purportedly be invested in U.S. issued securities and money market funds. The second part of the split-strike conversion strategy was the hedge of such purchases with option contracts. Madoff purported to purchase and sell S&P 100 Index option contracts that closely corresponded with the stocks in the basket, thereby controlling the downside risk of price changes in the basket of stocks.

22. Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in – or had been traded through – their accounts, as well as the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication. The security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious. At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts. *See* Plea Allocution of Bernard L. Madoff at 3, *United States v. Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Indeed, based on the Trustee's investigation to date and with the exception of isolated individual trades for certain clients other than Defendant, there is no record of BLMIS having cleared any purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing Corporation, the clearing house for such transactions.

23. Prior to his arrest, Madoff assured clients and regulators that he conducted all trades on the over-the-counter market after hours. To bolster that lie, Madoff periodically wired tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a London based entity substantially owned by Madoff and his family. There are no records that MSIL ever used the wired funds to purchase securities for the accounts of the IA Business clients.

24. Additionally, based on the Trustee's investigation to date, there is no evidence that BLMIS ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased and sold.

25. For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors. The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his associates and others, including Defendant, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

26. The payments to investors constituted an intentional misrepresentation of fact regarding the underlying accounts and were an integral and essential part of the fraud. The payments were necessary to validate the false account statements and were made to avoid detection of the fraud, to retain existing investors, and to lure other investors into the Ponzi scheme.

27. During the scheme, certain investors requested and received distributions of the so-called "profits" listed for their accounts, which were nothing more than fictitious profits. Other investors, from time to time, redeemed or closed their accounts, or removed portions of purportedly available funds, and were paid consistently with the statements they had been receiving. Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

28. When payments were made to or on behalf of these investors, including Defendant, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains. In reality, BLMIS had not invested the investors' principal as reflected in customer statements. In an attempt to conceal the ongoing fraud and thereby hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors the inflated amounts reflected in the falsified financial statements, including principal and/or fictitious profits.

29. BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due to the siphoning and diversion of new investments to fund redemptions requested by other investors, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

30. In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

31. In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration. The application represented, *inter alia*, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

32. Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New

York. Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

33. At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**THE TRANSFERS**

34. According to BLMIS' records, an account (No. 1ZB141) was maintained with BLMIS as set forth on Exhibit A (the "Account"). Upon information and belief, for the Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

35. The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Account was held in New York, New York, and Defendant sent funds to BLMIS and/or to BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Account and the purported conducting of trading activities. Between the date the Account was opened and the Filing Date, Defendant made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

36. During the six years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") to Defendant totaling at least $545,000 in fictitious profits from the Ponzi scheme. The Transfers received by Defendant constitute non-existent profits supposedly earned

in the Account, but, in reality, they were other people's money. The Transfers were made to or for the benefit of Defendant and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

37. The Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273 – 279 (McKinney 2001) total at least $545,000 and are referred to hereafter as the "Six Year Transfers." *See* Exhibit B, Column 11. The Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total at least $545,000 and are referred to hereafter as the "Two Year Transfers." *See* Exhibit B, Column 10.

38. The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers and any additional transfers and (ii) seek recovery of such additional transfers.

39. To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**COUNT ONE**
**FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551**

40. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

41. Each of the Two Year Transfers was made on or within two years before the Filing Date.

42. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

43. Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay, or defraud some or all of BLMIS' then existing and/or future creditors.

44. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendant pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

45. As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**COUNT TWO**
**FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(B), 550(a) AND 551**

46. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

47. Each of the Two Year Transfers was made on or within two years before the Filing Date.

48. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

49. BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers.

50. At the time of each of the Two Year Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfers.

51. At the time of each of the Two Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with BLMIS was an unreasonably small capital.

52. At the time BLMIS made each of the Two Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

53. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Defendant pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

54. As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**COUNT THREE**
**FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551**

55. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

56. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

57. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

58. Each of the Six Year Transfers was made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made each of the Six Year Transfers to or for the benefit of Defendant in furtherance of a fraudulent investment scheme.

59. As a result of the foregoing, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**COUNT FOUR**
**FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551**

60. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

61. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

62. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

63. BLMIS did not receive fair consideration for any of the Six Year Transfers.

64. BLMIS was insolvent, or became insolvent as a result of the Six Year Transfers.

65. As a result of the foregoing, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year

Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**COUNT FIVE**
**FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551**

66. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

67. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

68. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

69. BLMIS did not receive fair consideration for any of the Six Year Transfers.

70. At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Transfers was an unreasonably small capital.

71. As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**COUNT SIX**
**FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551**

72. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

73. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

74. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

75. BLMIS did not receive fair consideration for any of the Six Year Transfers.

76. At the time BLMIS made each of the Six Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

77. As a result of the foregoing, pursuant to DCL sections 275, 278 and/or 279 and sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant as follows:

i. On the First Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two

Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

ii. On the Second Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

iii. On the Third Claim for Relief, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

iv. On the Fourth Claim for Relief, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

v. On the Fifth Claim for Relief, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

vi. On the Sixth Claim for Relief, pursuant to DCL sections 275, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

vii. On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004, awarding the Trustee prejudgment interest from the date on which the Transfers were received;

viii. On all Claims for Relief, establishment of a constructive trust over the proceeds of the Transfers in favor of the Trustee for the benefit of BLMIS' estate;

ix. On all Claims for Relief, assignment of Defendant's income tax refunds from the United States, state, and local governments paid on fictitious profits during the course of the scheme;

x. On all Claims for Relief, awarding the Trustee all applicable interest, costs, and disbursements of this action; and

xi. On all Claims for Relief, granting Plaintiff such other, further, and different relief as the Court deems just, proper and equitable.

Date: November 12, 2010
New York, New York

By: /s/ Marc E. Hirschfield
/s/ Richard J. Bernard
/s/ Geraldine E. Ponto
/s/ Marc Skapof

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Richard J. Bernard
Email: rbernard@bakerlaw.com
Geraldine E. Ponto
Email: gponto@bakerlaw.com
Marc Skapof
Email: mskapof@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

Of Counsel:

**BAKER & HOSTETLER LLP**
303 East 17th Avenue, Suite 1100
Denver, Colorado 80203-1264
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
Laurin D. Quiat
Email: lquiat@bakerlaw.com
Paul S. Enockson
Email: penockson@bakerlaw.com
Erica Gann Kitaev
Email: ekitaev@bakerlaw.com

**Exhibit A**

| | |
|---|---|
| ROBERT S BERNSTEIN | 1ZB141 |

Exhibit B

BLMIS ACCOUNT NO. 1ZB141 - ROBERT S BERNSTEIN

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 9/24/1993 | CHECK | 200,000 | 200,000 | - | - | - | 200,000 | - | - | - |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 5/1/1995 | CHECK | 25,000 | 25,000 | - | - | - | 325,000 | - | - | - |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 1/2/1996 | CHECK | 50,000 | 50,000 | - | - | - | 425,000 | - | - | - |
| 2/20/1996 | CHECK | 50,000 | 50,000 | - | - | - | 475,000 | - | - | - |
| 4/21/1997 | CHECK | 50,000 | 50,000 | - | - | - | 525,000 | - | - | - |
| 6/23/1998 | CHECK | 25,000 | 25,000 | - | - | - | 550,000 | - | - | - |
| 9/5/2000 | CHECK | 75,000 | 75,000 | - | - | - | 625,000 | - | - | - |
| 5/25/2001 | CHECK | 50,000 | 50,000 | - | - | - | 675,000 | - | - | - |
| 1/8/2003 | CHECK | 75,000 | 75,000 | - | - | - | 750,000 | - | - | - |
| 5/28/2003 | CHECK | 50,000 | 50,000 | - | - | - | 800,000 | - | - | - |
| 11/8/2004 | CHECK | 25,000 | 25,000 | - | - | - | 825,000 | - | - | - |
| 9/28/2006 | CHECK | 100,000 | 100,000 | - | - | - | 925,000 | - | - | - |
| 10/25/2006 | CHECK | 105,000 | 105,000 | - | - | - | 1,030,000 | - | - | - |
| 5/29/2007 | CHECK | 25,000 | 25,000 | - | - | - | 1,055,000 | - | - | - |
| 7/26/2007 | CHECK | 100,000 | 100,000 | - | - | - | 1,155,000 | - | - | - |
| 8/7/2007 | CHECK | (1,900,000) | - | (1,900,000) | - | - | (745,000) | - | (545,000) | (545,000) |
| 5/23/2008 | CHECK | 200,000 | 200,000 | - | - | - | (545,000) | - | - | - |
| | | Total: | $ 1,355,000 | $ (1,900,000) | $ - | $ - | $ (545,000) | $ - | $ (545,000) | $ (545,000) |



MADC0725_00000002

# EXHIBIT B

Max Folkenflik, Esq.
FOLKENFLIK & McGERITY
1500 Broadway
21st Floor
New York, New York 10036
(212) 757-0400
max@fmlaw.net
*Attorneys for Robert S. Bernstein*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>Vs.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT S. BERNSTEIN,<br><br>Defendant. | Adv. Pro. No. 10-04883 (BRL) |

**ANSWER TO THE COMPLAINT**

Defendant Robert S. Bernstein (referred to herein as the "Defendant"), by his attorneys Folkenflik & McGerity, as and for his answer to the Complaint filed by Plaintiff Irwin H. Picard ("the Plaintiff"), Trustee for the Liquidation of Bernard L. Madoff Investment Securities ("BLMIS"), dated November 12, 2010, (the "Complaint"), respectfully alleges as follows:

**Nature of the Proceeding**

1. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 1 of the Complaint.

2. Denies each and every allegation contained in numbered Paragraph 2 of the Complaint.

3. Admits that Plaintiff alleges claims under the statutes cited in numbered Paragraph 3 of the Complaint, but otherwise denies each and every allegation contained in numbered Paragraph 3 of the Complaint.

**Jurisdiction and Venue**

4. Admits the first and second sentence of the allegations contained in numbered Paragraph 4 of the Complaint, but denies all other allegations of numbered Paragraph 4 of the Complaint.

5. Denies each and every allegation contained in numbered Paragraph 5 of the Complaint.

6. Admits each and every allegation contained in numbered Paragraph 6 of the Complaint.

**Defendant**

7. Admits each and every allegation contained in numbered Paragraph 7 of the Complaint.

**Background, the Trustee and Standing**

8. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 8 of the Complaint.

9. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 9 of the Complaint.

10. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 10 of the Complaint.

11. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 11 of the Complaint.

12. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 12 of the Complaint.

13. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 13 of the Complaint.

14. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 14 of the Complaint.

15. Denies and respectfully refer the Court to the text of SIPA and in particular section 78fff-2(c)(1) for a full and accurate statement of the knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 15 of the Complaint.

16. Admits each and every allegation contained in numbered Paragraph 16 of the Complaint.

17. Admits each and every allegation contained in numbered Paragraph 17 of the Complaint.

18. Denies each and every allegation contained in numbered Paragraph 18(a) – (h) of the Complaint.

**The Fraudulent Ponzi Scheme**

19. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 19 of the Complaint, but additionally alleges that none of the alleged facts were known by the Defendant prior to the public disclosure of those facts by the Trustee.

20. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 20 of the Complaint.

21. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 21 of the Complaint.

22. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 22 of the Complaint.

23. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 23 of the Complaint.

24. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 24 of the Complaint.

25. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 25 of the Complaint.

26. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 26 of the Complaint.

27. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 27 of the Complaint.

28. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 28 of the Complaint.

29. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 29 of the Complaint.

30. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 30 of the Complaint.

31. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 31 of the Complaint.

32. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 32 of the Complaint.

33. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 33 of the Complaint.

## **The Transfers**

34. Admits each and every allegation contained in numbered Paragraph 34 of the Complaint.

35. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in the first sentence of numbered Paragraph 35, but otherwise admits each and every other allegation contained in numbered Paragraph 35 of the Complaint.

36. Denies each and every allegation contained in numbered Paragraph 36 of the Complaint.

37. Denies each and every allegation contained in numbered Paragraph 37 of the Complaint.

38. Numbered paragraph 38 of the Complaint is a statement of the Trustee's legal position which does not require Defendant to plead in response.

39. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 39 of the Complaint.

**Count One – Fraudulent Transfer - 11 U.S.C. §§ 548(a)(1)(A), 550(a) and 551**

40. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-39 as if fully set forth herein.

41. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 41 of the Complaint.

42. Denies each and every allegation contained in numbered Paragraph 42 of the Complaint.

43. Denies each and every allegation contained in numbered Paragraph 43 of the Complaint.

44. Denies each and every allegation contained in numbered Paragraph 44 of the Complaint.

45. Denies each and every allegation contained in numbered Paragraph 45 of the Complaint.

**Count Two – Fraudulent Transfer - 11 U.S.C. §§ 548(a)(1)(B), 550(a) AND 551**

46. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-45 as if fully set forth herein.

47. Denies each and every allegation contained in numbered Paragraph 47 of the Complaint, except admits that certain amounts were redeemed by Robert S. Bernstein, LP, within two years of the filing date.

48. Denies each and every allegation contained in numbered Paragraph 48 of the Complaint.

49. Denies each and every allegation contained in numbered Paragraph 49 of the Complaint.

50. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 50 of the Complaint.

51. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 51 of the Complaint.

52. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in the numbered Paragraph 52 of the Complaint.

53. Denies each and every allegation contained in numbered Paragraph 53 of the Complaint.

54. Denies each and every allegation contained in numbered Paragraph 54 of the Complaint.

**Count Three - Fraudulent Transfer - New York Debtor And Creditor Law §§ 276, 278 and/or 279, and 11 U.S.C. §§ 544(b), 550(a) and 551**

55. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-54 as if fully set forth herein.

56. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 56 of the Complaint.

57. Denies each and every allegation contained in numbered Paragraph 57 of the Complaint.

58. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in the first sentence of numbered Paragraph 58, and otherwise denies each and every allegation contained in numbered Paragraph 58 of the Complaint.

59. Denies each and every allegation contained in numbered Paragraph 59 of the Complaint.

**Count Four - Fraudulent Transfer - New York Debtor and Creditor Law §§ 273 and 278 and/or 279, and 11 U.S.C. §§ 544(b), 550(a) and 551**

60. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-59 as if fully set forth herein.

61. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 61 of the Complaint.

62. Denies each and every allegation contained in numbered Paragraph 62 of the Complaint.

63. Denies each and every allegation contained in numbered Paragraph 63 of the Complaint.

64. Denies each and every allegation contained in numbered Paragraph 64 of the Complaint.

65. Denies each and every allegation contained in numbered Paragraph 65 of the Complaint.

**Count Five - Fraudulent Transfer - New York Debtor and Creditor Law §§ 274, 278 and/or 279, and 11 U.S.C. §§ 544(b), 550(a), and 551**

66. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-65 as if fully set forth herein.

67. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 67 of the Complaint.

68. Denies each and every allegation contained in numbered Paragraph 68 of the Complaint.

69. Denies each and every allegation contained in numbered Paragraph 69 of the Complaint.

70. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 70 of the Complaint.

71. Denies each and every allegation contained in numbered Paragraph 71 of the Complaint.

**Count Six - Fraudulent Transfer - New York Debtor and Creditor Law §§ 275, 278 and/or 279, and 11 U.S.C. §§ 544(b), 550(a), and 551**

72. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-71 as if fully set forth herein.

73. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 73 of the Complaint.

74. Denies each and every allegation contained in numbered Paragraph 74 of the Complaint.

75. Denies each and every allegation contained in numbered Paragraph 75 of the Complaint.

76. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 76 of the Complaint.

77. Denies each and every allegation contained in numbered Paragraph 77 of the Complaint.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**
**(FAILURE OF PROPER CALCULATION)**

78. Defendant repeats and realleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 77 above as if fully set forth herein.

79. In calculating the amounts which the Trustee claims to be avoidable, the Trustee has failed to properly calculate the amount of value of the investment of Defendant with BLMIS, including, among other things, failure to account for interest, failure to give the value as shown on the statements provided by BLMIS to Defendant which obligated BLMIS to make payments to Defendant in accordance with those statements, and in the alternative failure to give Defendant credit for the loss of the use of funds and/or the alternative value measurement of the what the funds invested with BLMIS would have earned to a properly managed account, failure to properly match withdrawals against new deposits, and, in particular, failure to properly account for new value supplied by Defendant to deposit into the accounts.

80. If proper calculations had been made, the amounts withdrawn from Defendant’s account would have been less than the properly computed value of the account and therefore no amount of the withdrawals from Defendant’s account is avoidable.

81. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**
**(GOOD FAITH)**

82. Defendant repeats and realleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 81 above as if fully set forth herein.

83. Each and every withdrawal of funds from the BLMIS account by Defendant was made in good faith, for fair value, without any actual or constructive notice of any fraud or wrongful conduct by BLMIS or fraudulent intent by BLMIS in making the transfers to Defendant from his account.

84. As a result of the foregoing, none of the amounts withdrawn by the Defendant from BLMIS is avoidable.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**
**(SAFE HARBOR)**

85. Defendant repeats and realleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 84 above as if fully set forth herein.

86. The Trustee may not avoid any of the transfers made to Defendant and his BLMIS account since to do so would result in an avoidance of settled securities transactions in violation of the safe harbor provided by 11 U.S.C. 546(e).

87. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**
**(LACHES)**

88. Defendant repeats and realleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 87 above as if fully set forth herein.

89. The Trustee's avoidance claims are in whole or in part barred by the equitable doctrine of laches.

90. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**
**(STATUE OF LIMITATIONS)**

91. Defendant repeats and realleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 90 above as if fully set forth herein.

92. The Trustee's avoidance claims are barred by the applicable statutes of limitations.

93. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE**
**(EQUITY)**

94. Defendant repeats and realleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 93 above as if fully set forth herein.

95. The Trustee's claims, if upheld, would lead to inequitable results and therefore should not be allowed by a court of equity.

96. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

Dated: New York, New York
January 6, 2012

Respectfully submitted,

**FOLKENFLIK & McGERITY**

By: /s/ Max Folkenflik
Max Folkenflik

1500 Broadway, 21st Floor
New York, New York 10036
Tel: (212) 757-0400
Fax: (212) 757-2010

*Attorneys for Defendants*

# EXHIBIT C

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Marc E. Hirschfield
Geraldine E. Ponto
Marc Skapof

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>ROBERT S. BERNSTEIN,<br><br>Defendant. | Adv. Pro. No. 10-04883 (BRL) |

**AMENDED COMPLAINT**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff individually ("Madoff"), by and through his undersigned counsel, for his amended complaint (the "Amended Complaint"), states as follows:

**NATURE OF PROCEEDING**

1. This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts. When added together, these statements purport that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts and was sentenced on June 29, 2009 to 150 years in prison. The within defendant ("Defendant") received avoidable transfers from BLMIS.

2. Defendant was a beneficiary of this Ponzi scheme. Since December 11, 2002, Defendant received the amount of $1,900,000 from BLMIS. The Trustee's investigation has revealed that between December 11, 2002 and December 11, 2008, Defendant received $545,000 in fictitious profits from the Ponzi scheme. Accordingly, Defendant received $545,000 of other people's money. The transfers of fictitious profits to or for the benefit of Defendant constitute avoidable transfers and are recoverable by the Trustee. This action is brought to recover the

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

fictitious profits so that this customer property can be equitably distributed among the holders of allowed claims in this SIPA proceeding.

3. This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq*. (McKinney 2001) ("DCL")), and other applicable law, for avoidance of fraudulent obligations and conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendant. The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of the BLMIS estate.

**JURISDICTION AND VENUE**

4. This is an adversary proceeding commenced before the same Court before which the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4).

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

6. Venue in this district is proper under 28 U.S.C. § 1409.

**DEFENDANT**

7. Upon information and belief, Defendant Robert S. Bernstein maintains his residence in Fort Lauderdale, Florida. Defendant holds a BLMIS account in the name, "Robert S. Bernstein," with the account address reported as Fort Lauderdale, Florida.

**BACKGROUND, THE TRUSTEE AND STANDING**

8. On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court, which commenced the District Court Proceeding against Madoff and BLMIS. The District Court Proceeding remains pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS.

9. On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of BLMIS.

10. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

11. Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

a. appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

---

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." 15 U.S.C. § 78*lll*(7)(B). Thus, even though the application for a protective decree was filed on December 15, 2008, the Filing Date in this action is December 11, 2008.

b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c. removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

**By this Protective Decree, the Receiver was removed as Receiver for BLMIS.**

12. By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

13. At a Plea Hearing on March 12, 2009 in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 23, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* Madoff was sentenced on June 29, 2009 to 150 years in prison.

14. On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11, 2009 in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank DiPascali at 46, *United States v. DiPascali*, No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (Docket No. 11).

15. As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS's customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS's assets, and the liquidation of BLMIS's assets is well underway. However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences, payouts of fictitious profits and/or other avoidable obligations and transfers to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

16. Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA section 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

17. Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

18. The Trustee has standing to bring these claims pursuant to applicable provisions of SIPA, including sections 78fff-1(a), 78fff(b) and 78fff-2(c)(3), and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

(a) BLMIS incurred losses as a result of the claims set forth herein;

(b) the Trustee is a bailee of customer funds entrusted to BLMIS for investment purposes;

(c) Defendant received "Customer Property" as defined in SIPA § 78*lll*(4);

(d) SIPC has not reimbursed, and will not fully reimburse, the customers for their losses;

(e) the Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim filing customers, collectively, "Accountholders"). To the extent the Trustee has received express assignments of certain BLMIS customer claims, which they could have asserted, the Trustee stands in the shoes of persons who have suffered injury-in-fact, and a distinct and palpable loss for which the Trustee is entitled to seek monetary damages;

(f) SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds; and

(g) the Trustee has the power and authority to avoid obligations, and avoid and recover transfers, pursuant to sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code, applicable state law including the DCL, and applicable provisions of SIPA, including §§ 78fff(b) and 78fff-2(c)(3).

**THE FRAUDULENT PONZI SCHEME**

19. Founded in or around 1959, BLMIS began operations as a sole proprietorship of Madoff and later, effective January 2001, formed as a New York limited liability company wholly owned by Madoff. Since in or about 1986, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, proprietor, chairman, and chief executive officer, ran BLMIS together with several family members and a number of

additional employees. BLMIS was registered with the SEC as a securities broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b). By that registration, BLMIS is a member of SIPC. BLMIS had three business units: investment advisory (the "IA Business"), market making and proprietary trading.

20. For certain accounts in the IA Business, BLMIS purported to participate in a capital appreciation/depreciation strategy, depending on whether the customer sought to generate gains or losses. For example, the strategy was executed by either purporting to purchase small groups of securities near lows and then purporting to sell those same securities at highs, or by purporting to short-sell securities near highs and then purporting to repurchase those securities near lows.

21. For other accounts, Madoff described the IA Business' strategy as a "split-strike conversion" strategy. Madoff promised these clients that their funds would be invested in a basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S. publicly traded companies. The basket of stocks would be intended to mimic the movement of the S&P 100 Index. Madoff asserted that he would carefully time purchases and sales to maximize value, but this meant that the clients' funds would intermittently be out of the market, at which times they would purportedly be invested in U.S. issued securities and money market funds. The second part of the split-strike conversion strategy was the hedge of such purchases with option contracts. Madoff purported to purchase and sell S&P 100 Index option contracts that closely corresponded with the stocks in the basket, thereby controlling the downside risk of price changes in the basket of stocks.

22. Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in – or had been traded through – their

accounts, as well as the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication. The security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious. At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts. *See* Plea Allocution of Bernard L. Madoff at 3, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Indeed, based on the Trustee's investigation to date and with the exception of isolated individual trades for certain clients other than Defendant, there is no record of BLMIS having cleared any purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing Corporation, the clearing house for such transactions.

23. Prior to his arrest, Madoff assured clients and regulators that he conducted all trades on the over-the-counter market after hours. To bolster that lie, Madoff periodically wired tens of millions of dollars to BLMIS's affiliate, Madoff Securities International Ltd. ("MSIL"), a London based entity substantially owned by Madoff and his family. There are no records that MSIL ever used the wired funds to purchase securities for the accounts of the IA Business clients.

24. Additionally, based on the Trustee's investigation to date, there is no evidence that BLMIS ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased and sold.

25. For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the

distributions to – or payments on behalf of – other investors. The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his associates and others, including Defendant, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

26. The payments to investors constituted an intentional misrepresentation of fact regarding the underlying accounts and were an integral and essential part of the fraud. The payments were necessary to validate the false account statements and were made to avoid detection of the fraud, to retain existing investors, and to lure other investors into the Ponzi scheme.

27. During the scheme, certain investors requested and received distributions of the so-called "profits" listed for their accounts, which were nothing more than fictitious profits. Other investors, from time to time, redeemed or closed their accounts, or removed portions of purportedly available funds, and were paid consistently with the statements they had been receiving. Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

28. When payments were made to or on behalf of these investors, including Defendant, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains. In reality, BLMIS had not invested the investors' principal as reflected in customer statements. In an attempt to conceal the ongoing fraud and thereby hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors the inflated amounts reflected in the falsified financial statements, including principal and/or fictitious profits.

29. BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due to the siphoning and diversion of new investments to fund redemptions requested by other investors, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

30. In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an investment adviser until September 2006.

31. In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration. The application represented, *inter alia*, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

32. Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York. Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

33. At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**THE ACCOUNT AGREEMENTS**

34. According to BLMIS's records, an account (No. 1ZB141) was maintained with BLMIS as set forth on Exhibit A (the "Account"). Upon information and belief, for the Account, a

"Customer Agreement," an "Option Agreement," and/or a "Trading Authorization Limited to Purchases and Sales of Securities and Options" (collectively, the "Account Agreements") were executed and delivered to BLMIS at its headquarters at 885 Third Avenue, New York, New York. Additionally, there were periodic customer statements, confirmations, and other communications made by BLMIS or Madoff and sent to Defendant (together with the Account Agreements, the "Account Documents").

35. The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Account was held in New York, New York, and Defendant sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Account and the purported conducting of trading activities. Between the date the Account was opened and the Filing Date, Defendant made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

## THE OBLIGATIONS

36. To the extent BLMIS or Madoff incurred obligations to the Defendant in connection with the Account Documents or any statements or representations made by BLMIS or Madoff, such obligations (collectively, the "Obligations") are avoidable under sections 105(a), 544(b) and 548(a) of the Bankruptcy Code, applicable provisions of DCL sections 273-279, and applicable provisions of SIPA, including §§ 78fff(b) and 78fff-1(b). BLMIS or Madoff incurred the Obligations as an integral part of and in furtherance of BLMIS's Ponzi scheme.

37. To the extent BLMIS or Madoff incurred the Obligations to the Defendant, such Obligations were incurred with actual intent to hinder, delay, or defraud then existing and/or future creditors.

38. To the extent BLMIS or Madoff incurred the Obligations, such Obligations were incurred when BLMIS was insolvent, had unreasonably small capital, and/or was unable to pay its debts as they matured. BLMIS was a massive Ponzi scheme, which, as a matter of law, was insolvent from its inception and, therefore, never capable of fulfilling its obligations to its creditors.

**THE TRANSFERS**

39. During the six years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") to Defendant of $545,000. The Transfers were made to or for the benefit of Defendant and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

40. The Transfers constitute fictitious profits supposedly earned in the Account, but, in reality, were other people's money.

41. The Transfers that occurred between December 11, 2002 and December 11, 2008 are referred to hereafter as the "Six Year Transfers." The Six Year Transfers are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and DCL sections 273-279, and total $545,000. See Exhibit B, Column 11. The Six Year Transfers are also avoidable to the extent they were made on account of the avoidable Obligations.

42. The Transfers that occurred between December 11, 2006 and December 11, 2008 are referred to hereafter as the "Two Year Transfers." The Two Year Transfers are avoidable and recoverable under sections 548(a), 550(a) and 551 of the Bankruptcy Code and applicable

provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and total $545,000. See Exhibit B, Column 10. The Two Year Transfers are also avoidable to the extent they were made on account of the avoidable Obligations.

43. The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Obligations and the Transfers and any additional or subsequent transfers and (ii) seek recovery of such additional transfers.

44. To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**COUNT ONE**
**FRAUDULENT TRANSFERS AND OBLIGATIONS – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551**

45. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

46. Each of the Two Year Transfers was made on or within two years before the Filing Date.

47. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

48. Each of the Two Year Transfers and the Obligations was made or incurred by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

49. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendant pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

50. The Obligations are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and applicable provisions of SIPA including sections 78fff(b) and 78fff-1(b).

51. As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and sections 78fff(b), 78fff-1(b), and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Two Year Transfers, (b) avoiding the Obligations, (c) directing that the Two Year Transfers and Obligations be set aside, and (d) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**COUNT TWO**
**FRAUDULENT TRANSFERS AND OBLIGATIONS – 11 U.S.C. §§ 548(a)(1)(B), 550(a) AND 551**

52. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

53. Each of the Two Year Transfers was made on or within two years before the Filing Date.

54. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

55. BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers and the Obligations.

56. At the time of each of the Two Year Transfers and at all times relevant to the Obligations, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfers.

57. At the time of each of the Two Year Transfers and at all times relevant to the Obligations, BLMIS was engaged in a business or a transaction, or was about to engage in a

business or transaction, for which any property remaining with BLMIS was an unreasonably small capital.

58. At the time BLMIS made each of the Two Year Transfers, and at all times relevant to the Obligations, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

59. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from Defendant pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

60. The Obligations are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and applicable provisions of SIPA including sections 78fff(b) and 78fff-1(b).

61. As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Two Year Transfers, (b) avoiding the Obligations, (c) directing that the Two Year Transfers and Obligations be set aside, and (d) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**COUNT THREE**
**FRAUDULENT TRANSFERS AND OBLIGATIONS – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551**

62. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

63. At all times relevant to the Six Year Transfers and Obligations, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

64. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

65. Each of the Six Year Transfers and Obligations was made by BLMIS with the actual intent to hinder, delay, or defraud then existing and/or future creditors of BLMIS. BLMIS made each of the Six Year Transfers and incurred the Obligations to or for the benefit of Defendant in furtherance of a fraudulent investment scheme.

66. As a result of the foregoing, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and (d) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**COUNT FOUR**
**FRAUDULENT TRANSFERS AND OBLIGATIONS – NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551**

67. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

68. At all times relevant to the Six Year Transfers and Obligations, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

69. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

70. BLMIS did not receive fair consideration for any of the Six Year Transfers or the Obligations.

71. BLMIS was insolvent, or became insolvent as a result of the Six Year Transfers or the Obligations.

72. As a result of the foregoing, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and (d) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

## COUNT FIVE
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

73. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

74. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

75. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

76. BLMIS did not receive fair consideration for any of the Six Year Transfers.

77. At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Transfers was an unreasonably small capital.

78. As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**COUNT SIX**
**FRAUDULENT TRANSFERS AND OBLIGATIONS – NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551**

79. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

80. At all times relevant to the Six Year Transfers and Obligations, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

81. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

82. BLMIS did not receive fair consideration for any of the Six Year Transfers or Obligations.

83. At the time BLMIS made each of the Six Year Transfers or incurred the Obligations, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

84. As a result of the foregoing, pursuant to DCL sections 275, 278 and/or 279 and sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b), and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the Obligations, (c) directing that the

Six Year Transfers and Obligations be set aside, and (d) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant as follows:

i. On the First Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) avoiding the Obligations, (c) directing that the Two Year Transfers and Obligations be set aside, and (d) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

ii. On the Second Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) avoiding the Obligations, (c) directing that the Two Year Transfers and Obligations be set aside, and (d) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

iii. On the Third Claim for Relief, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and (d) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

iv. On the Fourth Claim for Relief, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and

(d) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

v. On the Fifth Claim for Relief, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

vi. On the Sixth Claim for Relief, pursuant to DCL sections 275, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and (d) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS;

vii. On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004, awarding the Trustee prejudgment interest from the date on which the Transfers were received;

viii. On all Claims for Relief, establishing a constructive trust over the proceeds of the Transfers in favor of the Trustee for the benefit of BLMIS's estate;

ix. On all Claims for Relief, assigning of income tax refunds of Defendant from the United States, state and local governments paid on fictitious profits during the course of the scheme;

x. On all Claims for Relief, awarding the Trustee all applicable interest, costs, and disbursements of this action; and

xi. On all Claims for Relief, granting the Trustee such other, further, and different relief as the Court deems just, proper and equitable.

Date: January 24, 2012
New York, New York

By: /s/ Marc E. Hirschfield
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Geraldine E. Ponto
Email: gponto@bakerlaw.com
Marc Skapof
Email: mskapof@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

Of Counsel:

**BAKER & HOSTETLER LLP**
303 East 17th Avenue, Suite 1100
Denver, Colorado 80203-1264
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
Laurin D. Quiat
Email: lquiat@bakerlaw.com
Paul S. Enockson
Email: penockson@bakerlaw.com
Erica Gann Kitaev
Email: ekitaev@bakerlaw.com

**Exhibit A**

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| ROBERT S BERNSTEIN | 1ZB141 |

Exhibit B

BLMIS ACCOUNT NO. 1ZB141 - ROBERT S BERNSTEIN

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 9/24/1993 | CHECK | 200,000 | 200,000 | - | - | - | 200,000 | - | - | - |
| 6/21/1994 | CHECK | 100,000 | 100,000 | - | - | - | 300,000 | - | - | - |
| 5/1/1995 | CHECK | 25,000 | 25,000 | - | - | - | 325,000 | - | - | - |
| 11/30/1995 | CHECK | 50,000 | 50,000 | - | - | - | 375,000 | - | - | - |
| 1/2/1996 | CHECK | 50,000 | 50,000 | - | - | - | 425,000 | - | - | - |
| 2/20/1996 | CHECK | 50,000 | 50,000 | - | - | - | 475,000 | - | - | - |
| 4/21/1997 | CHECK | 50,000 | 50,000 | - | - | - | 525,000 | - | - | - |
| 6/23/1998 | CHECK | 25,000 | 25,000 | - | - | - | 550,000 | - | - | - |
| 9/5/2000 | CHECK | 75,000 | 75,000 | - | - | - | 625,000 | - | - | - |
| 5/25/2001 | CHECK | 50,000 | 50,000 | - | - | - | 675,000 | - | - | - |
| 1/8/2003 | CHECK | 75,000 | 75,000 | - | - | - | 750,000 | - | - | - |
| 5/28/2003 | CHECK | 50,000 | 50,000 | - | - | - | 800,000 | - | - | - |
| 11/8/2004 | CHECK | 25,000 | 25,000 | - | - | - | 825,000 | - | - | - |
| 9/28/2006 | CHECK | 100,000 | 100,000 | - | - | - | 925,000 | - | - | - |
| 10/25/2006 | CHECK | 105,000 | 105,000 | - | - | - | 1,030,000 | - | - | - |
| 5/29/2007 | CHECK | 25,000 | 25,000 | - | - | - | 1,055,000 | - | - | - |
| 7/26/2007 | CHECK | 100,000 | 100,000 | - | - | - | 1,155,000 | - | - | - |
| 8/7/2007 | CHECK | (1,900,000) | - | (1,900,000) | - | - | (745,000) | - | (545,000) | (545,000) |
| 5/23/2008 | CHECK | 200,000 | 200,000 | - | - | - | (545,000) | - | - | - |
| | | **Total:** | **$ 1,355,000** | **$ (1,900,000)** | **$ -** | **$ -** | **$ (545,000)** | **$ -** | **$ (545,000)** | **$ (545,000)** |



MADC0725_00000002

# EXHIBIT D

Max Folkenflik, Esq.
FOLKENFLIK & McGERITY
1500 Broadway
21st Floor
New York, New York 10036
(212) 757-0400
max@fmlaw.net
*Attorneys for Robert S. Bernstein*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>Vs.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT S. BERNSTEIN,<br><br>Defendant. | Adv. Pro. No. 10-04883 (BRL) |

## ANSWER TO THE AMENDED COMPLAINT

Defendant Robert S. Bernstein (referred to herein as the "Defendant"), by his attorneys Folkenflik & McGerity, as and for his answer to the Amended Complaint filed by Plaintiff Irwin H. Picard ("the Plaintiff"), Trustee for the Liquidation of Bernard L. Madoff Investment Securities ("BLMIS"), dated January 24, 2012, (the "Amended Complaint"), respectfully alleges as follows:

### Nature of the Proceeding

1. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 1 of the Amended Complaint.

2. Denies each and every allegation contained in numbered Paragraph 2 of the Amended Complaint.

3. Admits that Plaintiff alleges claims under the statutes cited in numbered Paragraph 3 of the Amended Complaint, but otherwise denies each and every allegation contained in numbered Paragraph 3 of the Amended Complaint.

### Jurisdiction and Venue

4. Admits the first and second sentence of the allegations contained in numbered Paragraph 4 of the Amended Complaint, but denies all other allegations of numbered Paragraph 4 of the Amended Complaint.

5. Denies each and every allegation contained in numbered Paragraph 5 of the Amended Complaint.

6. Admits each and every allegation contained in numbered Paragraph 6 of the Amended Complaint.

**Defendant**

7. Admits each and every allegation contained in numbered Paragraph 7 of the Amended Complaint.

**Background, the Trustee and Standing**

8. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 8 of the Amended Complaint.

9. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 9 of the Amended Complaint.

10. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 10 of the Amended Complaint.

11. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 11 of the Amended Complaint.

12. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 12 of the Amended Complaint.

13. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 13 of the Amended Complaint.

14. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 14 of the Amended Complaint.

15. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 15 of the Amended Complaint, and respectfully refers the Court to the text of SIPA and in particular section 78fff-2(c)(1) for a full and accurate statement of the content of that statute.

16. Admits each and every allegation contained in numbered Paragraph 16 of the Amended Complaint.

17. Admits each and every allegation contained in numbered Paragraph 17 of the Amended Complaint.

18. Denies each and every allegation contained in numbered Paragraph 18 and sub-paragraphs (a) – (g) of the Amended Complaint.

**The Fraudulent Ponzi Scheme**

19. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 19 of the Amended Complaint, but additionally alleges that none of the alleged facts were known by the Defendant prior to the public disclosure of those facts by the Trustee.

20. On information and belief, denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 20 of the Amended Complaint.

21. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 21 of the Amended Complaint.

22. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 22 of the Amended Complaint.

23. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 23 of the Amended Complaint.

24. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 24 of the Amended Complaint.

25. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 25 of the Amended Complaint.

26. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 26 of the Amended Complaint.

27. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 27 of the Amended Complaint.

28. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 28 of the Amended Complaint.

29. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 29 of the Amended Complaint.

30. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 30 of the Amended Complaint.

31. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 31 of the Amended Complaint.

32. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 32 of the Amended Complaint.

33. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 33 of the Amended Complaint.

**The Account Agreements**

34. Admits each and every allegation contained in numbered Paragraph 34 of the Amended Complaint.

35. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in the first sentence of numbered Paragraph 35, but otherwise admits each and every other allegation contained in numbered Paragraph 35 of the Amended Complaint.

**The Obligations**

36. Deny each and every allegation contained in numbered Paragraph 36 of the Amended Complaint.

37. Deny each and every allegation contained in numbered Paragraph 37 of the Amended Complaint, and additionally allege that the obligations to Defendant were made with the specific intent to defraud Defendant and only Defendant.

38. Deny knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 38 of the Amended Complaint.

**The Transfers**

39. Denies each and every allegation contained in numbered Paragraph 39 of the Amended Complaint.

40. Denies each and every allegation contained in numbered Paragraph 40 of the Amended Complaint.

41. Denies each and every allegation contained in numbered Paragraph 41 of the Amended Complaint.

42. Denies each and every allegation contained in numbered Paragraph 42 of the Amended Complaint.

43. Numbered paragraph 43 of the Amended Complaint is a statement of the Trustee's legal position which does not require Defendant to plead in response.

44. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 44 of the Amended Complaint.

**Count One**
**Fraudulent Transfers and Obligations - 11 U.S.C. §§ 548(a)(1)(A), 550(a) and 551**

45. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-44 as if fully set forth herein.

46. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 46 of the Amended Complaint.

47. Denies each and every allegation contained in numbered Paragraph 47 of the Amended Complaint.

48. Denies each and every allegation contained in numbered Paragraph 48 of the Amended Complaint.

49. Denies each and every allegation contained in numbered Paragraph 49 of the Amended Complaint.

50. Denies each and every allegation contained in numbered Paragraph 50 of the Amended Complaint.

51. Denies each and every allegation contained in numbered Paragraph 51 of the Amended Complaint.

**Count Two**
**Fraudulent Transfers and Obligations - 11 U.S.C. §§ 548(a)(1)(B), 550(a) and 551**

52. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-51 as if fully set forth herein.

53. Denies each and every allegation contained in numbered Paragraph 53 of the Amended Complaint, except admits that certain amounts were redeemed by Robert S. Bernstein within two years of the filing date.

54. Denies each and every allegation contained in numbered Paragraph 54 of the Amended Complaint.

55. Denies each and every allegation contained in numbered Paragraph 55 of the Amended Complaint.

56. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 56 of the Amended Complaint.

57. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 57 of the Amended Complaint.

58. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in the numbered Paragraph 58 of the Amended Complaint.

59. Denies each and every allegation contained in numbered Paragraph 59 of the Amended Complaint.

60. Denies each and every allegation contained in numbered Paragraph 60 of the Amended Complaint.

61. Denies each and every allegation contained in numbered Paragraph 61 of the Amended Complaint.

**Count Three**
**Fraudulent Transfers and Obligations - New York Debtor And Creditor Law §§ 276, 278 and/or 279, and 11 U.S.C. §§ 544(b), 550(a) and 551**

62. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-61 as if fully set forth herein.

63. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 63 of the Amended Complaint.

64. Denies each and every allegation contained in numbered Paragraph 64 of the Amended Complaint.

65. Denies each and every allegation contained in numbered Paragraph 65 of the Amended Complaint.

66. Denies each and every allegation contained in numbered Paragraph 66 of the Amended Complaint.

**Count Four**
**Fraudulent Transfers and Obligations - New York Debtor and Creditor Law §§ 273 and 278 and/or 279, and 11 U.S.C. §§ 544(b), 550(a) and 551**

67. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-66 as if fully set forth herein.

68. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 68 of the Amended Complaint.

69. Denies each and every allegation contained in numbered Paragraph 69 of the Amended Complaint.

70. Denies each and every allegation contained in numbered Paragraph 70 of the Amended Complaint.

71. Denies each and every allegation contained in numbered Paragraph 71 of the Amended Complaint.

72. Denies each and every allegation contained in numbered Paragraph 72 of the Amended Complaint.

**Count Five**
**Fraudulent Transfer - New York Debtor and Creditor Law §§ 274, 278 and/or 279, and 11 U.S.C. §§ 544(b), 550(a), and 551**

73. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-72 as if fully set forth herein.

74. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 74 of the Amended Complaint.

75. Denies each and every allegation contained in numbered Paragraph 75 of the Amended Complaint.

76. Denies each and every allegation contained in numbered Paragraph 76 of the Amended Complaint.

77. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 77 of the Amended Complaint.

78. Denies each and every allegation contained in numbered Paragraph 78 of the Amended Complaint.

**Count Six**
**Fraudulent Transfers and Obligations - New York Debtor and Creditor Law §§ 275, 278 and/or 279, and 11 U.S.C. §§ 544(b), 550(a), and 551**

79. Defendant repeats and incorporates by reference his responses to numbered paragraphs 1-78 as if fully set forth herein.

80. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 80 of the Amended Complaint.

81. Denies each and every allegation contained in numbered Paragraph 81 of the Amended Complaint.

82. Denies each and every allegation contained in numbered Paragraph 82 of the Amended Complaint.

83. Denies knowledge or information sufficient to form a belief as to the truth of allegations contained in numbered Paragraph 83 of the Amended Complaint.

84. Denies each and every allegation contained in numbered Paragraph 84 of the Amended Complaint.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**
**(FAILURE OF PROPER CALCULATION)**

85. Defendant repeats and re-alleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 84 above as if fully set forth herein.

86. In calculating the amounts which the Trustee claims to be avoidable, the Trustee has failed to properly calculate the amount of value of the investment of Defendant with BLMIS, including, among other things, failure to account for interest, failure to give the value as shown on the statements provided by BLMIS to Defendant which obligated BLMIS to make payments to Defendant in accordance with those statements, and in the alternative failure to give Defendant credit for the loss of the use of funds and/or the alternative value measurement of the what the funds invested with BLMIS would have earned to a properly managed account, failure to properly match withdrawals against new deposits, and, in particular, failure to properly account for new value supplied by Defendant to deposit into the accounts.

87. If proper calculations had been made, the amounts withdrawn from Defendant's account would have been less than the properly computed value of the account and therefore no amount of the withdrawals from Defendant's account is avoidable.

88. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**
**(GOOD FAITH)**

89. Defendant repeats and re-alleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 88 above as if fully set forth herein.

90. Each and every withdrawal of funds from the BLMIS account by Defendant was made in good faith, for fair value, without any actual or constructive notice of any fraud or wrongful conduct by BLMIS or fraudulent intent by BLMIS in making the transfers to Defendant from his account.

91. As a result of the foregoing, none of the amounts withdrawn by the Defendant from BLMIS is avoidable.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**
**(NO INTENT TO DEFRAUD OTHERS BY TRANSACTIONS WITH DEFENDANTS)**

92. Defendant repeats and re-alleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 91 above as if fully set forth herein.

93. To the extent that any transfer, withdrawal, or obligation was made to or by the Defendant from BLMIS, at the time of each such transfer, withdrawal, or obligation, BLMIS engaged in such acts with the express and sole intent to defraud Defendant. On information and belief, BLMIS was unaware of and indifferent to whether any of the transfers to, withdrawals by, or

obligations incurred by BLMIS with Defendant were known to any other victim of the BLMIS Ponzi scheme.

94. Defendant is unaware of any instance when any transfers to, withdrawals by or obligations to Defendant from BLMIS were made known to any other person by either Defendant or BLMIS with any intent to or had the effect of defrauding such persons, or of any instance where such knowledge was imparted with the intent to or had the effect of defrauding such persons.

95. Accordingly, none of the transfers, withdrawals or obligations is avoidable by the Trustee.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**
**(OBLIGATIONS NOT AVOIDABLE)**

96. Defendant repeats and re-alleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 95 above as if fully set forth herein.

97. To the extent that any obligations were incurred by BLMIS to Defendant, and such obligations were made with the intent to defraud Defendant, such obligations are at most voidable at the election of Defendant, in Defendant's sole discretion, and are not avoidable absent such an election, which has not occurred.

98. Accordingly, none of the transfers, withdrawals or obligations is avoidable by the Trustee.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**
**(SAFE HARBOR)**

99. Defendant repeats and re-alleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 98 above as if fully set forth herein.

100. The Trustee may not avoid any of the transfers made to Defendant and his BLMIS account since to do so would result in an avoidance of settled securities transactions in violation of the safe harbor provided by 11 U.S.C. 546(e).

101. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE**
**(LACHES)**

102. Defendant repeats and re-alleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 101 above as if fully set forth herein.

103. The Trustee's avoidance claims are in whole or in part barred by the equitable doctrine of laches.

104. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

**AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE**
**(STATUE OF LIMITATIONS)**

105. Defendant repeats and re-alleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 104 above as if fully set forth herein.

106. The Trustee's avoidance claims are barred by the applicable statutes of limitations.

107. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

**AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE**
**(EQUITY)**

108. Defendant repeats and re-alleges each and every allegation, admission, and denial of numbered Paragraphs 1 through 107 above as if fully set forth herein.

109. The Trustee's claims, if upheld, would lead to inequitable results and therefore should not be allowed by a court of equity.

110. As a result of the foregoing, none of the amounts withdrawn by Defendant from BLMIS is avoidable.

Dated: New York, New York
February 24, 2012

Respectfully submitted,

**FOLKENFLIK & McGERITY**

By: /s/ Max Folkenflik
Max Folkenflik
1500 Broadway, 21st Floor
New York, New York 10036
Tel: (212) 757-0400
Fax: (212) 757-2010

*Attorneys for Defendants*