**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| Vs. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
| Defendant. | |

In re:

BERNARD L. MADOFF,

Debtor.

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, Plaintiff, | Adv. Pro. No. 10-04883 (BRL) |
| v. | |
| ROBERT S. BERNSTEIN, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO WITHDRAW THE REEFERENCE

**FOLKENFLIK & McGERITY**

1500 Broadway, 21st Floor
New York, New York 10036
Tel:  (212) 757-0400
Fax" (212) 757-2010

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ........................................................................................................................ 1

FACTS ......................................................................................................................................... 3

ARGUMENT ............................................................................................................................... 4

POINT I-  WITHDRAWAL OF THE REFERENCE IS MANDATORY
BECAUSE THE RESOLUTION OF THE CAUSES OF ACTION
SET FORTH IN THE COMPLAINT REQUIRE THE
SIGNIFICANT INTERPRETATION OF SUBSTANTIAL AND
UNSETTLED ISSUES OF NON-BANKRUPTCY LAW ........................................... 4

    A.  The Trustee's Claims Require Computation of the Amount of the
Avoidable Transfers Which Raise Substantial and Material
Questions Concerning the Application of SIPA ....................................... 6

    B.  Adjudicating the Defendant's Defenses All Require Significant
Interpretation of Federal Non-Bankruptcy Law ....................................... 8

        1.  Defendant Has a Defense that the Transfers in Question Fall
Within the Section 546(e) Safe Harbor.  That Defense
Requires Significant Interpretation of Federal Non-
Bankruptcy Law ....................................................................... 8

        2.  The Defendant's *Fair Value* And *Good Faith* Defenses All
Raise Substantial and Material Questions of Federal
Securities Law with Respect to the Valuation of the
*Antecedent Debt* from BLMIS to Its Account Holders ................... 10

            (i)  Determining the Amount of Any *Antecedent Debt* Raises
Substantial and Material Issues of Law that Involves the
Intersection of SIPA, Securities Law and State Law ............. 12

            (ii)  Determining Whether the Defendant's Action is Good
Faith Requires Resolution of Significant and Material
Issues at the Intersection of Securities Law, SIPA,
Bankruptcy Law and State Law .......................................... 15

POINT II- DEFENDANT IS ENTITLED TO JURY TRIALS ON THE
TRUSTEE'S CLAIMS, WHICH CANNOT BE
CONDUCTED IN BANKRUPTCY COURT ....................................................... 17

A.  The Bankruptcy Court Lacks Constitutional Authority To Enter A
Final Judgment Against Defendant ......................................................................... 18

POINT III- TO THE EXTENT THAT THE WITHDRAWAL OF THE
REFERENCE IS NOT MANDATORY AS TO ANY ISSUES
OR NOT MANDATORY AT THIS TIME, COMPLETE
WITHDRAWAL OF THE REFERENCE SHOULD BE MADE
*FOR CAUSE* SO THAT ALL PROCEEDINGS MAY BE
EFFICIENTLY ADJUDICATED ............................................................................... 19

CONCLUSION ........................................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bear, Stearns Sec. Corp. v. Gredd,*
   2001 U.S. Dist. LEXIS 10324 (S.D.N.Y. July 23, 2001) ........................................................5

*Bear, Stearns Sec. Corp. v. Gredd,*
   2001 WL 840187 (S.D.N.Y. July 25, 2001) ..........................................................................6

*Chemtura Corp. v. United States,*
   2010 U.S. Dist. LEXIS 33258 (S.D.N.Y. Mar. 26, 2010) ....................................................5

*Enron Creditors Recovery Corp. v. Alfa S.A.B. de C.V.,*
   651 F.3d 329 (2d Cir. 2011) .................................................................................................9

*Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.),*
   2004 U.S. Dist. LEXIS 23868, 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) ....................9

*Granfinanciera, S.A. v. Nordberg,*
   492 U.S. 33 (1989) ......................................................................................................17, 18

*In re 131 Liquidating Corp.,*
   222 B.R. 209 (S.D.N.Y. 1998) ...........................................................................................18

*In re Bernard L. Madoff Inv. Sec. LLC,*
   654 F.3d 229 (2d Cir. N.Y. 2011) ...............................................................................passim

*In re Cablevision S.A.,*
   315 B.R. 818 (S.D.N.Y. 2004) .............................................................................................6

*In re Churchill Mortg. Inv. Corp.,*
   256 B.R. 664 (Bankr. S.D.N.Y. 2002) ..............................................................................16

*In re CIS Corp.,*
   172 B.R. 748 (S.D.N.Y. 1994) ...........................................................................................18

*In re Enron Corp.,*
   388 B.R. 131 (S.D.N.Y. 2008) .............................................................................................6

*In re Enron Corp.,*
   No. 04 Civ. 509 (MBM), 2004 WL 2149124 (S.D.N.Y. Sept. 23, 2004) .........................20

*In re Enron Power Marketing, Inc.,*
   No. 01 Civ. 7964, 2003 WL 68036 (S.D.N.Y. 2003) .......................................................19

*In re Foxmeyer Corp.*,
  286 B.R. 546 (Bankr. D. Del. 2002) ........................................................ 16

*In re Hooker Investments,Inc.*,
  937 F.2d 833 (2d Cir. 1991) .................................................................17

*In re Ionosphere Clubs, Inc.*,
  922 F.2d 984 ................................................................................2, 5

*In re Quebecor World (USA) Inc.*,
  453 B.R. 201 (S.D.N.Y. 2011) ..............................................................9

*In re The VWE Group*,
  359 B.R. 441 (S.D.N.Y. 2007) .............................................................19

*Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  454 B.R. 307 (S.D.N.Y. 2011) ............................................................5, 6

*Langenkamp v. Culp*,
  498 U.S. 42 (1990) ........................................................................ 17

*McCord v. Papantoniou*,
  316 B.R. 113 (E.D.N.Y. 2004) .............................................................17

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
  18 How. 272 (1856) ....................................................................... 18

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982) ........................................................................19

*Orion Pictures Corp. v. Showtime Networks*,
  4 F.3d 1095 (2d Cir. 1993) .................................................................20

*Picard v. Avellino*,
  11 Civ. 3882 (JSR), Slip Op. at 4-5 (S.D.N.Y. Mar. 11, 2012) ......................... 6, 10

*Picard v. Flinn*,
  463 B.R. 280 (S.D.N.Y. 2011) ........................................................... 12, 13

*Picard v. Flinn Invs., Inc.*,
  2011 U.S. DIST LEXIS 136627 ..................................................... *passim*

*Picard v. Greiff*,
  No. 11 Civ. 3775 (JSR) .....................................................................10

*Picard v.HSBC Bank PLC, et al.*,
  2011 U.S. Dist. LEXIS 44126 (S.D.N.Y. April 25, 2011) .................................6

*Picard v. Katz,*
    462 B.R. 447 2011 U.S. Dist. LEXIS 109593 ................................................................*passim*

*Picard v. Katz,*
    No. 11 Civ. 3605 (JSR) (S.D.N.Y. July 1, 2011) ............................................... 15

*Picard v. Maxam Absolute Return Fund, L.P.,*
    No. 11 Civ. 7428 (JSR) ..............................................................................................10

*Schoenthal v. Irving Trust Co.,*
    287 U.S. 92 (1932) .................................................................................................. 19

*Stern v. Marshall,*
    131 S. Ct. 2594 (2011) .......................................................................................... 18

**STATUTES**

11 U.S.C. § 548(c) ........................................................................................................ 16

11 U.S.C. § 548(d)(2)(A) ..............................................................................................12

28 U.S.C. § 157(d) ...................................................................................................... *passim*

28 U.S.C. § 157(e) ........................................................................................................17

11 USCS § 101 ..............................................................................................................8

11 USCS § 101, 741 ......................................................................................................8

11 USCS § 544, 545 ....................................................................................................11

11 USCS §§ 544, 545, 547, 548(a)(1)(B), and 548(b) ................................................8

11 USCS § 546 ..............................................................................................................9

11 USCS § 548 ..............................................................................................3, 7, 10, 11

11 USCS § 548(a)(1)(A) ..............................................................................................3, 9

11 USCS § 741(7) ........................................................................................................8

11 USCS § 761(4) ........................................................................................................9

Bankruptcy Code Sections 544 ............................................................................... 9, 11

section 544(b) of the Bankruptcy Code ......................................................................10

D.C.L. Section 273 ......................................................................................................4

D.C.L. Section 274..............................................................................................................4

D.C.L. Section 275..............................................................................................................4

D.C.L. Section 272............................................................................................................12

Rule 10b-10 under the Securities Exchange Act of 1934................................................12

**OTHER AUTHORITIES**

59 Fed. Reg. 59,612, 59,613 (Nov. 17, 1994) (to be codified at 17 C.F.R. pt. 240)....................13

17 C.F.R. § 240.10b-10 (2010)........................................................................................12

Seventh Amendment........................................................................................................ 17

U.S. Const. Art. I, Sec. 10......................................................................................... 14, 15

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| Vs. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, Plaintiff, | |
| v. | Adv. Pro. No. 10-04883 (BRL) |
| ROBERT S. BERNSTEIN, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO WITHDRAW THE REEFERENCE

Defendant Robert S. Bernstein (referred to herein as "Bernstein" or the "Defendant"), by his attorneys Folkenflik & McGerity, submits this Memorandum of Law in Support of his Motion to Withdraw the Reference.

### INTRODUCTION

This is an action by Irving Picard ("Picard"), the Trustee of the bankruptcy estate of Bernard L. Madoff Investments Securities, Inc. ("BLMIS"), seeking to "claw back" certain transfers made by BLMIS to its customer Bernstein. Recovery of the transfers is sought from Bernstein and also from each of the other Defendant who are all broadly alleged to have been

"subsequent transferees" of the initial transfers made to Bernstein.

  This motion seeks to withdraw the reference of this case to the bankruptcy court, which were made pursuant to standing order dated February 2, 2012 and its predecessor orders, and to have Trustee's claims and the Defendant's defenses heard in District Court where they may be tried, if a trial is necessary, before a jury.

  The withdrawal of the reference as to many, if not all, of the issues raised by this case, is mandatory. First, because to resolve those issues will require "substantial material consideration of non-Bankruptcy Code federal statutes." *See, In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2nd Cir. 1990; *Picard v. Flinn Invs., Inc.,* 2011 U.S. DIST LEXIS 136627. Second, because the issues involved in this action require the exercise of Article III judicial powers and cannot be exercised by the Article I Bankruptcy Judge. Third, because Defendant is entitled to a trial by jury in front of a District Court and cannot be compelled to a jury trial before the Bankruptcy Court.

  To the extent that withdrawal of the reference on all issues is not mandatory, it is warranted for "cause" under Section 157(d) because the most efficient use of judicial resources would be to try this entire case, up through and through trial, in one proceeding in the District Court.

## FACTS

Starting in September 1993, Bernstein maintained an account with BLMIS and was a victim of Bernard Madoff's infamous and unprecedented frauds. Deposits were made, repeatedly and regularly up until May 1997, ultimately totaling $1,155,000. The Trustee alleges that Bernstein received $545,000 in the distribution of purported "fictitious profits," meaning that distributions were made by BLMIS to Bernstein in excess of the $1,155,000 million Bernstein deposited into those accounts. The Trustee has, as a result, sued Bernstein to "claw back" the amount it received in excess of its contributions under various theories of "fraudulent conveyance."

Count 1 seeks to avoid as made with the actual intent to defraud under Section 548(a)(1)(A), transfers made by BLMIS to Bernstein. Count 2 seeks to avoid the same transfers as constructively fraudulent under Section 548(a)(1)(B). [1] Count 3 seeks to avoid the same transfers as made with the actual intent to defraud under New York Debtor and Credit Law ("D.C.L.") Section 276. [2] Count 4, Count 5 and 6 seek to avoid the same transfers as constructively fraudulent

_____

[1] Section 548 provides in relevant part:

§ 548. Fraudulent transfers and obligations

(a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily --

(A)   made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

11 USCS § 548

[2] § 276. Conveyance made with intent to defraud

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

NY CLS Dr & Cr § 276

3

respectively under D.C.L. Section 273, [3] D.C.L. Section 274[4] and D.C.L. Section 275.[5]

Bernstein substantial defenses to the claims brought by the Trustee.

## ARGUMENT

## POINT I

## WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE THE RESOLUTION OF THE CAUSES OF ACTION SET FORTH IN THE COMPLAINT REQUIRE THE SIGNIFICANT INTERPRETATION OF SUBSTANTIAL AND UNSETTLED ISSUES OF NON-BANKRUPTCY LAW

Title 28 U.S.C. § 157(d)[6] governs withdrawal of the reference of proceedings Bankruptcy

Court under the Standing Order.    That section provides that withdrawal of the reference is

mandatory "if the court determines that resolution of the proceeding requires consideration of both

title 11 and other laws of the United States regulating organizations or activities affecting interstate

---

[3]    § 273.  Conveyances by insolvent

    Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

    NY CLS Dr & Cr § 273

[4]    § 274.  Conveyances by persons in business

    Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

[5]    § 275.  Conveyances by a person about to incur debts

    Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

    NY CLS Dr & Cr § 275

[6]    Section 28 U.S.C. § 157(d) provides:

    The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court **shall**, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

    *See* 28 U.S.C. § 157(d) (emphasis supplied).

commerce." 28 U.S.C. § 157(d). However the law in this Circuit is somewhat narrower, and holds that mandatory withdrawal of the reference "is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990); accord, *Picard v. Flinn Invs., Inc.*, 2011 U.S. Dist. LEXIS 136627 (S.D.N.Y. 2011);

Section 157(d) is meant to "assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code." Sec. *Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 307, 312 (S.D.N.Y. 2011) *citing, Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 U.S. Dist. LEXIS 23868, 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (quoting *Eastern Airlines, Inc. v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 1990 U.S. Dist. LEXIS 741, 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)).

When a motion is made to withdraw the reference, it is not necessary for the Court to decide the merits of a claim or defense. *See, Chemtura Corp. v. United States*, 2010 U.S. Dist. LEXIS 33258 (S.D.N.Y. Mar. 26, 2010). Rather the issue is whether the claim or defense will require the Court to "interpret" matters of federal non-bankruptcy law as opposed to simply applying long settled principles. *Bear, Stearns Sec. Corp. v. Gredd*, 2001 U.S. Dist. LEXIS 10324 (S.D.N.Y. July 23, 2001). The question of mandatory withdrawal is "more easily" decided when the legal issues are matters of first impression. *Id.* But it is not necessary for the matter to be one of first impression, only that it require "substantial and material consideration." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990).

In this case, "substantial and material" issues of non-Bankruptcy law abound, and many are issues of first impression. This bankruptcy proceeding is conducted in accordance with SIPA, and

SIPA is a "non-Bankruptcy Code federal statute." SIPA is codified under Title 15 as a securities law. See, *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 454 B.R. 307, 316 (S.D.N.Y. 2011). A "substantial issue under SIPA is therefore, almost by definition, an issue 'the resolution of [which] requires consideration of both title 11 and other laws of the United States.'" *Picard v.HSBC Bank PLC, et al.*, 2011 U.S. Dist. LEXIS 44126, at 9 (S.D.N.Y. April 25, 2011). Many of the issues here are substantial issues involving SIPA. Many involve matters of first impression.

Similarly, a number of significant issues in this case require interpretation of securities laws. Where significant interpretation of the securities laws is required, courts routinely follow the statutory mandate and withdraw the bankruptcy reference. *See, e.g., Katz; Flinn; Avellino*; *Bear, Stearns Sec. Corp. v. Gredd*, 2001 WL 840187, at *4 (S.D.N.Y. July 25, 2001); *In re Cablevision S.A.*, 315 B.R. 818, 821 (S.D.N.Y. 2004); *In re Enron Corp.*, 388 B.R. 131, 140 (S.D.N.Y. 2008). Indeed, as the discussion below amply demonstrates, many if not most of the issues in this case sit squarely on the intersection of Bankruptcy law, SIPA and securities law. To resolve these issues requires the Court to give substantial and material consideration to all of those laws and, in some cases, to the Constitution as well.

## A. The Trustee's Claims Require Computation of the Amount of the Avoidable Transfers Which Raise Substantial and Material Questions Concerning the Application of SIPA

In order to prove its case, the Trustee must compute the award of the transfers which is avoidable. In this action, that seemingly simple task is extraordinarily complex.

The Trustee has determined that the amount contributed by BLMIS continues to their BLMIS accounts in their "Net Equity" and the withdrawals in excess of Net Equity are available. While the decision by the Second Circuit in *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 235 (2d Cir. N.Y. 2011) may have settled some aspects of the law in this Circuit with regard to

computation of Net Equity, it did not resolve all of them. The Court expressly reserved the question of "whether the Net Investment Method should be adjusted to account for inflation or interest, an issue on which the bankruptcy court has not yet ruled and which is not before us on this interlocutory appeal." *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 235, n. 6.

In addition, there are numerous other issues involving valuation of the account under SIPA, including questions that implicate the statute of limitations, such as whether the "fictitious profits" subject to avoidance under Section 548 include only the profits made in the two years within the statute or included "fictitious profits" "earned" after the entire decade of investment. *See, Picard v. Katz*, 462 B.R. 447, ___ 2011 U.S. Dist. LEXIS 109593, at 18, n.6. Similarly, there is the analogue question of whether the "fictitious profits" for purpose of the D.C.L. include only profits purportedly made in the 6 years within the statute for those claims, or extend for the full decade. *See, id.*

Another such question is whether any "new" contributions made should be applied against, and be absorbed in whole or in part by, *prior* "fictitious profits" or whether, instead, withdrawals after such a contribution are treated as a return of capitol until that new contribution is depleted. For example Bernstein made contributions through July 1997 and again in May 2008, but the Trustee calculated that new value was depleted by fictitious profits dating back to 1993. That issue implicates the statute of limitations. Under the Bankruptcy Law claims, all prior "fictitious profits" on which the statute ran are being sought to be "claw back" based on the unarticulated assumption that SIPA sanctioned accounting overrides the statute of limitations. The same is true, although to a lesser extent, as to the D.C.L. claims.

Addressing these various issues in computing "Net Equity" involves difficult questions of applying SIPA to these various factual situations. As the Second Circuit held in *In re Bernard L.*

*Madoff Inv. Sec. LLC,*

> [W]e conclude that the statutory language does not prescribe a single means of calculating "net equity" that applies in the myriad circumstances that may arise in a SIPA liquidation. *See Sec. & Exch. Comm'n v. Aberdeen Sec. Co.*, 480 F.2d 1121, 1123 (3d Cir. 1973) ("The intent of Congress to protect customers of financially distressed security dealers is clear, but the specifics of precise resolution of individual situations are clouded by the provisions of a statute which range far from the clarity of blue sky one might expect in this area of the law."); *McKenny v. McGraw (In re Bell & Beckwith)*, 104 B.R. 842, 848 (Bankr. N.D. Ohio 1989) (rejecting "plain meaning" arguments as to meaning of "allocation" under SIPA as "not persuasive"). Differing fact patterns will inevitably call for differing approaches to ascertaining the fairest method for approximating "net equity," as defined by SIPA. *See* 15 U.S.C. § 78fff-2(b)(2).

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 at 235.

Because each step in the valuation process will necessarily involve difficult questions under SIPA, the reference must be withdrawn so that an Article III court may resolve those issues.

## B. Adjudicating the Defendant's Defenses All Require Significant Interpretation of Federal Non-Bankruptcy Law

### 1. Defendant Has a Defense that the Transfers in Question Fall Within the Section 546(e) Safe Harbor. That Defense Requires Significant Interpretation of Federal Non-Bankruptcy Law

Withdrawal is mandatory here because the Trustee's claims against each of the Defendant (other than Count 1) requires that the Court apply federal securities (including SIPA) law in order to construe the "safe harbor" provisions of section 546(e)[7] of the Bankruptcy Code. Under section

---

[7] Section 546(e) provides:

> (e) Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title [11 USCS §§ 544, 545, 547, 548(a)(1)(B), and 548(b)], the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title [11 USCS § 101, 741, or 761], or settlement payment, as defined in section 101 or 741 of this title [11 USCS § 101 or 741], made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7) [11 USCS § 741(7)],

546(e), the Trustee is precluded from recovering transfers by a stockbroker (such as BLMIS) that were *either* "settlement payment[s]" *or* were made "in connection with" a "securities contract" on any basis other than section 548(a)(1)(A) (actual fraudulent intent). Accordingly, Counts 2 through 6, are subject to the Section 546(e) "safe harbor" defense.

In *Enron Creditors Recovery Corp. v. Alfa S.A.B. de C.V.*, 651 F.3d 329, 334 (2d Cir. 2011), the Second Circuit held that in order to apply Section 546(e), the Court is required to construe securities laws as well as bankruptcy law Section 546(e) which "stands at the intersection of two important national legislative policies on a collision course – the policies of bankruptcy and securities law." In *Enron*, the Second Circuit directed that the application of the section 546(e) safe harbor be governed by the "plain language" of the provision. *Id.* at 335; *see also, In re Quebecor World (USA) Inc.*, 453 B.R. 201, 215 (S.D.N.Y. 2011) ("The cumulative effect of this consistent circuit authority is to remove from consideration any mandated set of procedures or participants and to focus instead on applying the literal language of the statutory exemption to the facts presented."). The plain language of section 546(e) provides that, where that defense is upheld, the Trustee may not avoid any Transfer based on Bankruptcy Code Sections 544 (which is the basis for Counts 3 through 6) or 548(a)(1)(B) (which is the basis of Count 2).

In *Katz*, the court applied the Second Circuit's directive in *Enron* to hold that "[b]y its literal language, therefore, the Bankruptcy Code precludes the Trustee from bringing any action to recover from any of Madoff's customers any of the monies paid by [BLMIS] to those customers except in the case of actual fraud." 462 B.R. at 452. That holding is equally applicable here and

---

commodity contract, as defined in section 761(4) [11 USCS § 761(4)], or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title [11 USCS § 548(a)(1)(A)].

11 USCS § 546

provides a complete defense to Count 2 and part of Count 7. Insofar as they relate to transfers more than two years prior to the Filing Date, and thus necessarily must arise under the NY D.C.L. and section 544(b) of the Bankruptcy Code, *all* of the Trustee's avoidance and recovery claims against the Defendant in Counts 3 through 6 and part of Count 7 are foreclosed by section 546(e).

As Judge Rakoff recognized in *Flinn*, the application of section 546(e) in a SIPA proceeding such as this one necessarily requires significant *interpretation* of the federal securities laws, including SIPA, and thus its application requires withdrawal of the reference. Specifically:

> Whether § 546(e) applies depends on how a Court resolves numerous questions of securities law. For example, the Second Circuit has held not only that § 546(e) applies where a transfer completes a securities transaction, but also that completion of such a transaction need not involve a "purchase or sale" of securities. Thus, to determine whether § 546(e) applies to these cases, a court must determine, among other things, whether transfers from Madoff Securities completed securities transactions even though Madoff Securities never purchased or sold securities on these Defendants' behalves. The Bankruptcy Code provides little guidance on such a question, and a court must undertake "significant interpretation" of securities law in order to resolve it. Accordingly, as in *Katz*, the Court withdraws the reference to the bankruptcy court of the question of § 546(e)'s application.

*Flinn* at *4.

The Court reached the same conclusion recently in *Picard v. Avellino*, 11 Civ. 3882 (JSR), Slip Op. at 4-5 (S.D.N.Y. Mar. 11, 2012), withdrawing the reference in that case "for substantially the reasons stated in" *Flinn*. That analysis applies equally here. Withdrawal of the reference is mandatory. *See also* March 14, 2012 Order, *Picard v. Maxam Absolute Return Fund, L.P.*, No. 11 Civ. 7428 (JSR); Sept. 16, 2011 Order, *Picard v. Greiff*, No. 11 Civ. 3775 (JSR).

## 2. The Defendant's "Fair Value" And "Good Faith" Defenses All Raise Substantial and Material Questions of Federal Securities Law with Respect to the Valuation of the "Antecedent Debt" from BLMIS to Its Account Holders

The Defendant has multiple "fair value" "good faith" defenses. The avoidance claims under Section 548 are subject to the defense that the transfer was for fair value and in good faith of

10

Section 548(c)[8] (Counts 1 and 2).  The avoidance claims under section 544, which incorporates New York State Debtor and Creditor Law (D.C.L.) (Counts 3 through 6) are subject to the affirmative defense that the transfer was for fair value and in good faith of DCL §178.[9]

---

[8] Section 548(c) provides:

(b) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title [11 USCS § 544, 545, or 547], a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548

[9] § 278.  Rights of creditors whose claims have matured

1.  Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

a.  Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

NY CLS Dr & Cr § 278

    (i)    **Determining the Amount of Any "Antecedent Debt" Raises Substantial and Material Issues of Law that Involves the Intersection of SIPA, Securities Law and State Law**

Satisfaction of an antecedent debt is considered "value," both under the Bankruptcy fraudulent conveyance statutes, 11 U.S.C. § 548(d)(2)(A)("value" includes "satisfaction…of a present or antecedent debt of the debtor"), and under state law. *See*, D.C.L. § 272 ("Fair consideration is given for property, or obligation, a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied…").

There is no allegation that Bernstein received any transfers of money in excess of what the BLMIS statements showed was due to it (and it did not). The Trustee argues, however, that the conveyances in question were fraudulent because the "fictitious profits" reflected on the BLMIS statements did not create an obligation by BLMIS to its customer. As Judge Radoff recognized in *Picard v. Flinn*, 463 B.R. 280 (S.D.N.Y. 2011), this is a very different question than the issue of how the Trustee computes "Net Equity" under SIPA for the purpose of allocating insufficient assets among the BLMIS customers. *See, id.* at 284-85. The computation of net equity for that purpose was the issue resolved in *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 235 (2d Cir. N.Y. 2011). The legal significance of the BLMIS statements to its customers, however, involves not the relationship among all customers, but the bilateral relationship between BLMIS and each individual customer.

Certainly, were there no bankruptcy proceeding, the customer would be entitled to payment of all amounts shown on the customer statements, and we are not aware that the Trustee even argues the contrary position. Rule 10b-10 under the Securities Exchange Act of 1934 requires brokers to provide customers with confirmations of securities transactions. *See* Rule 10b-10, 17

C.F.R. § 240.10b-10 (2010). Brokerage firms customarily provide monthly statements collecting the transactional information on purchases and sales contained in the confirmations require by Rule 10b-10. BLMIS did so as to the accounts in question. These reports serve "basic investor protection functions by conveying information allowing investors to verify the terms of their transactions." *See* Confirmation of Transactions, 59 Fed. Reg. 59,612, 59,613 (Nov. 17, 1994) (to be codified at 17 C.F.R. pt. 240)

As a matter of law, the transactions reported on the statements are enforceable against the broker whether or not the broker actually makes the reported purchases and sales. "[A] person acquires a security entitlement" if his broker (1) indicates by book entry that a financial asset has been credited to the person's securities account . . . [or] (3) becomes obligated under other law, regulation, or rule to credit a financial asset to the person's securities account." NYUCC § 8-501(b). "The entitlement holder's rights against the securities intermediary do not depend on whether or when the securities intermediary acquired its interests." NYUCC § 8-501 Official Comment 3. Yet if Bernstein has an enforceable contract right against BLMIS, than the distributions from BLMIS to Bernstein were payment of an "antecedent debt." *Picard v. Flinn*, 463 B.R. at 284-85.

Effectively acknowledging this fact, and its importance for his fraudulent conveyance claims, the Trustee amended his Complaint in this action to seek avoidance of "obligations" from BLMIS to Bernstein, defined to specifically include obligations created by confirmations and monthly statements, on the ground that the "obligations" are voidable fraudulent preferences. Were the Trustee to succeed on that theory, then there would be no "antecedent debt" created by the monthly statements.

It is unclear exactly how the Trustee intends to frame his argument that these contractual

rights may be undone, but the arguments surely raise difficult questions involving SIPA, the

securities laws, state contract law, and potentially constitutional issues under the Contract Clause.

U.S. Const. Art. I, Sec. 10.

Judge Rakoff ruled in *Picard v. Flinn Invs., Inc.*, that this question raises a difficult

question of interpretation of securities law and withdrew the reference to decide it. As Judge

Rakoff held:

> Resolution of the issues this argument raises requires "significant interpretation" of the securities laws. On the one hand, in accordance with securities law, Madoff Securities regularly sent reports to the defendants updating them on their investments' performances. *See* 17 CFR § 240.10b-10 (requiring brokers like Madoff Securities to disclose information regarding trades to investors). At the time of the challenged transfers, the defendants could have enforced these reports against Madoff Securities. Moreover, the occurrence of fraud does not, by itself, mean that the securities laws do not apply. *See SEC v. Zandford*, 535 U.S. 813, 819, 122 S. Ct. 1899, 153 L. Ed. 2d 1 (2002) ("[A] broker who accepts payment for securities that he never intends to deliver . . . violates § 10(b) and Rule 10b-5."); see generally *In re Bernard L. Madoff Securities*, 654 F.3d at 236 ("While SIPA does not — and cannot — protect an investor against all losses, it 'does . . . protect claimants who attempt to invest through their brokerage firm but are defrauded by dishonest brokers.' (*quoting In re Primeline Secs. Corp.*, 295 F.3d 1100, 1107 (10th Cir. 2002))). On the other hand, because Madoff Securities' reports reflected only Madoff's imagination, recognizing these reports as antecedent debts would allow "the whim of the defrauder" to control how investments in the fraud are distributed among its many admittedly innocent victims. *In re Bernard L. Madoff Inv. Secs.*, 654 F.3d at 241. This is a difficult question, and the Court withdraws the reference to the bankruptcy court in order to undertake the "significant interpretation" of securities law necessary to resolve it.

*Picard v. Flinn Invs., Inc.*, 263 B.R. at 284-85.

Even were the Trustee to avoid the "obligations" created by the BLMIS monthly

statements, the Court would still be required to resolve whether *all* monthly statement

"obligations" were voidable, or merely *those that were made unsupported by "value"* from the

customers. Voiding all contractual obligations, even in pursuit of some purported concept of

"fairness" or "equity," would surely raise the issue of whether applying Bankruptcy Law or SIPA in that manner was an impairment of contracts in violation of Article I Section 10 of the Constitution.

Avoiding contracts which were not supported by consideration might be constitutionally defensible, but deciding which obligations were voidable raises intricate issues of exactly how to do the calculation, which contracts are avoidable and whether the "fictitious profit" obligation on any given monthly statement is eliminated in whole or merely in part. Those issues raise difficult questions of how to apply SIPA to the individual facts of the claims against each Defendant which are similar to those recognized by the Second Circuit in *In re Bernard L. Madoff*. Those issues, too, required mandatory withdrawal of the reference.

### (ii)    Determining Whether the Defendant's Action is Good Faith Requires Resolution of Significant and Material Issues at the Intersection of Securities Law, SIPA, Bankruptcy Law and State Law

In the context of avoidance claims under section 548(a)(1) (Counts 1 and 2), the Court has recognized that this "good faith" standard for the receipt of allegedly fraudulent transfers must, in the context of a SIPA proceeding, be "informed by federal securities law," *Katz*, 462 B.R. at 455, and accordingly that withdrawal of the bankruptcy reference is mandatory. *See* Hr'g Tr. at 33:9-20, *Picard v. Katz*, No. 11 Civ. 3605 (JSR) (S.D.N.Y. July 1, 2011) ("Here, the movants have made, in the Court's view, a more than plausible argument that the duty of inquiry of their clients in a securities context is governed by securities law and cannot be overridden after the fact by the bankruptcy law or by the interpretation of a non-bankruptcy law, SIPA, being asserted by the [T]rustee."); *see also Katz*, 462 B.R. at 455; *Avellino*, Slip Op. at 4. That reasoning applies equally to the Trustee's section 548(a)(1) claims in this case, and requires that the reference be withdrawn. *Avellino*, Slip Op. at 4 ("Determining whether the

15

different allegations in *each of the Trustee's complaints* plausibly suggest 'willful blindness' – which has historically been one of the law's most difficult concepts – will continue to require substantial and material consideration of the securities laws.") (*emphasis added*).

The Trustee's claims in this case also call upon the Court to consider the unanswered question of what standard of "good faith" applies to the Trustee's claims under section 276 of the D.C.L. and the "good faith" defense in D.C.L. § 278. In bankruptcy proceedings, courts have held that "11 U.S.C. § 548(c) and N.Y.D.C.L § 278(2) should be construed such that they are identical." *In re Foxmeyer Corp.*, 286 B.R. 546, 572 (Bankr. D. Del. 2002); *see also In re Churchill Mortg. Inv. Corp.*, 256 B.R. 664, 676 (Bankr. S.D.N.Y. 2002) (construing the provisions substantially identically). Defendant has not, however, found any cases that considered the appropriate standard with respect to the good faith provision of the D.C.L. in a SIPA proceeding.

Some Courts have applied a "notice" and "reasonably diligent investigation" standard in ordinary bankruptcies, *see, e.g., Churchill*, 256 B.R. at 676. Whether that standard can be applied in this SIPA proceeding raises substantial questions which the Court must resolve under SIPA and securities law. *See Avellino*, Slip Op. at 4 ("[B]ecause the securities laws do not ordinarily impose any duty on investors to investigate their brokers, *those laws foreclose any interpretation of 'good faith' that creates liability for a negligent failure to so inquire.*") (*emphasis added*); *Katz*, 462 B.R. at 455 ("Just as fraud, in the context of federal securities law, demands proof of scienter, so too 'good faith' in this context implies a lack of fraudulent intent."), *Katz*, 462 B.R. at 455 ("[I]f simply confronted with suspicious circumstances, [an investor] fails to launch an investigation of his broker's internal practices—and how could he do so anyway?—his lack of due diligence cannot be equated with a lack of good faith, at least so

far as section 548(c) is concerned as applied in the context of a SIPA trusteeship."). For this

reason as well, withdrawal of the bankruptcy reference to consider the issue is therefore mandated

under 28 U.S.C. § 157(d).

## POINT II

### DEFENDANT IS ENTITLED TO JURY TRIALS
### ON THE TRUSTEE'S CLAIMS, WHICH CANNOT
### BE CONDUCTED IN BANKRUPTCY COURT

It is well settled that a defendant who has not filed a proof of claim in bankruptcy, and who

is sued by a bankruptcy trustee for recovery of allegedly preferential or fraudulent conveyances,

has a Seventh Amendment right to present its case to a jury. *Granfinanciera, S.A. v. Nordberg*,

492 U.S. 33, 58-59 (1989) (holding that defendant in preference action had right to jury trial);

*Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) ("If a party does *not* submit a claim against the

bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by

filing what amounts to a legal action to recover a monetary transfer. In those circumstances

the preference defendant is entitled to a jury trial."); *In re Hooker Investments,Inc.*, 937 F.2d

833, 838 (2d Cir. 1991) ("[W]hen no claim against the estate is filed, an action to recover a

monetary preference is essentially a legal one, and the seventh amendment requires that the

defendant be afforded a jury trial.").

Bernstein has not filed SIPA claims, and accordingly he is entitled to have their claims for

avoidance of fraudulent transfers tried before a jury. However, only an Article III judge may

preside over a federal jury trial, absent consent by the parties to proceed before the Bankruptcy

Court. 28 U.S.C. § 157(e), *McCord v. Papantoniou*, 316 B.R. 113, 125 (E.D.N.Y. 2004)

("[D]efendant's consent to a jury trial in the bankruptcy court is required.").

Defendant's entitlement to a jury trial, standing alone, has been recognized by numerous courts in this district as sufficient basis for withdrawing the bankruptcy reference. *See, e.g., In re 131 Liquidating Corp.*, 222 B.R. 209, 211 (S.D.N.Y. 1998) ("[T]he district court may find that the inability of the bankruptcy court to hold the trial itself constitutes cause to withdrawal the reference."); *In re CIS Corp.*, 172 B.R. 748, 755 (S.D.N.Y. 1994) ("The fact that an adversary proceeding concerns non-core matters for which the right to jury trial is available is sufficient cause of discretionary withdrawal of reference.").

The Defendant will not consent to a jury trial in the Bankruptcy Court and, accordingly, are entitled to have the claims against them tried in the District Court.

### A.    The Bankruptcy Court Lacks Constitutional Authority To Enter A Final Judgment Against Defendant

Whether tried before a jury or not, the Trustee's claims invoke the judicial power of the United States and, accordingly, must proceed before an Article III judge. "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789 ... and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suits rests with Article III judges in Article III courts.'" *Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011); *see also Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856) ("To avoid misconstruction upon so gave a subject, we think it proper to state that we do not consider congress can ... withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty."). An action to recover money alleged to have been fraudulently transferred is precisely the type of action that had to be brought in a court of law in 1789, and which is required to be adjudicated before an Article III judge today. *Granfinanciera*, 492 U.S. at 46-47 ("[R]espondent would have had to bring his action to recover an alleged fraudulent conveyance of a determinate sum of money at

law in 18th-century England, and that a court of equity would not have adjudicated it.");

*Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94 (1932) ("In England, long prior to the enactment

of our first Judicial Act, common-law actions of trover and money had and received were

resorted to for the recovery of preferential payments by bankrupts."). Permitting the bankruptcy

court to enter a final judgment on the Trustee's claims would violate Article III of the

Constitution by "impermissibly remov[ing] ... 'the essential attributes of the judicial power'

from the Art. III district court, and ... vest[ing] those attributes in a non-Art. III adjunct."

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87 (1982).

      For this reason as well, withdrawal of the reference is mandatory.

### POINT III

**TO THE EXTENT THAT THE WITHDRAWAL OF THE REFERENCE IS
NOT MANDATORY AS TO ANY ISSUES OR NOT MANDATORY
AT THIS TIME, COMPLETE WITHDRAWAL OF THE REFERENCE
SHOULD BE MADE "FOR CAUSE" SO THAT ALL PROCEEDINGS
MAY BE EFFICIENTLY ADJUDICATED**

      While bankruptcy cases in this district are referred as a matter of course to the

bankruptcy court pursuant to Judge Preska's January 31, 2012 Standing Order (and its 1984

predecessor), it is "[t]he *district courts* [that] have original jurisdiction over all civil proceedings

'arising under title 11, or arising in or related to cases under title 11.'" *In re The VWE Group*, 359

B.R. 441, 445-46 (S.D.N.Y. 2007) (emphasis added) (quoting 28 U.S.C. § 1334(b)). "The

Second Circuit has identified a number of factors courts should consider when determining

whether withdrawal 'for cause' exists under § 157(d), including (1) whether the claim is core or

non-core; (2) whether the claim is legal or equitable; (3) whether the claim is triable by a jury; (4) the

most efficient use of judicial resources; (5) reduction of forum shopping; (6) conservation of estate and

non-debtor resources; and (7) uniformity of bankruptcy administration." *In re Enron Power*

*Marketing, Inc.*, No. 01 Civ. 7964, 2003 WL 68036, at *6 (S.D.N.Y. 2003) (citing *Orion Pictures Corp. v. Showtime Networks*, 4 F.3d 1095, 1101 (2d Cir. 1993)). "The Second Circuit has emphasized that the principal question underlying the *Orion* factors is efficient and consistent administration of the laws." *In re Enron Corp.*, No. 04 Civ. 509 (MBM), 2004 WL 2149124, at *3 (S.D.N.Y. Sept. 23, 2004).

Considered together, those factors weigh heavily in favor of permissively withdrawing the bankruptcy reference now because, among other reasons, many of the Trustee's claims require mandatory withdrawal and those claiming the heart of the issues in this case cannot efficiently be severed or separately tried. The Trustee's claims are triable to a jury. Only an Article III court can enter any final judgment on them. For these reasons, withdrawal of the reference in its entirety is justified "for cause."

## CONCLUSION

For all of these reasons, Defendant respectfully request that the matter be granted and the reference of this adversary proceeding to bankruptcy court be withdrawn in its entirety.

Dated: New York, New York
March 30, 2012

Respectfully submitted,

FOLKENFLIK & McGERITY

By:_____
Max Folkenflik
1500 Broadway, 21st Floor
New York, New York 10036
Tel: (212) 757-0400
Fax" (212) 757-2010

*Attorneys for Defendant*