Helen Davis Chaitman
Becker & Poliakoff LLP
45 Broadway
New York, NY 10006
hchaitman@becker-poliakoff.com
*Attorneys for Jacqueline Green Rollover Account and Wayne Green Rollover Account*

Hearing Date: May 23, 2011 at 10:00 A.M.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                Debtor. | |

**CLAIMANTS' REPLY BRIEF IN FURTHER OPPOSITION
TO TRUSTEE'S MOTION FOR COURT APPROVAL OF HIS DENIAL
OF CLAIMS OF INVESTORS UNDER ERISA-PROTECTED PLANS**

{N0011099 2 }

**INTRODUCTION**

The Greens[1] submit this reply brief in further opposition to Trustee's motion for court approval of his denial of claims of investors under ERISA-Protected Plans.[2]

**ARGUMENT**

I. **The Fact that the Greens Did Not Hold Accounts In Their Names at BLMIS is Not Dispositive of the Validity of Their Claims**

There is no requirement under SIPA that a SIPC claimant hold an account in his name. SIPA's definition of "customer" does not include a requirement that the "customer" be in "privity" with the broker or that the "customer have a "direct account" with the broker. *See* 15 U.S.C. § 78*lll*(2) (defining a customer as "any person who has a claim" or "any person who has deposited cash" under specified conditions); 15 U.S.C. § 78*lll*(2)(B)(i) ("customer includes . . . any person who has deposited cash with the debtor for the purpose of purchasing securities).

The requirement that the broker know the identity of the customer was specifically deleted from an earlier version of the statute. In the first draft of the bill, there was no entitlement to SIPC insurance for any customer whose name or interest was not disclosed on the records of the broker-dealer "if such recognition would increase the aggregate amount of the insured customer accounts or insured liability in such closed broker or dealer." S. 2348, 91st Cong. Section 7(d) (June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug.4, 1969). The final bill dropped this restriction.

---

[1] Capitalized terms not defined herein maintain the definitions set forth in the Claimants' Opposition to Trustee's Motion for Court Approval of His Denial of Claims of Investors under ERISA-Protected Plans and any accompanying declarations.

[2] While the Trustee alleges that the Greens have not established that they are investors in ERISA-protected plans, he states that ERISA status is assumed for purposes of this motion and will be litigated at a further time if the result of the hearing makes further fact-finding necessary. (Tr. Br. 12-13.) The Greens reserve their right to submit additional documentation to establish that ERISA applies to them, if necessary.

{N0011099 2 }                    2

Moreover, any ambiguity in the definition of "customer," and there is none here, should not be construed in favor of the Trustee because "SIPA is remedial legislation. As such, it should be construed liberally to effect its purpose." *Tcherepin v. Knight,* 389 U.S. 332 (1967). Finally, SIPA does not permit SIPC, by the promulgation of Rules, to change the definition of "customer" under the statute. *See* 15 U.S.C. § 78ccc(b)(4)(A).

For these reasons, courts have broadly construed the term "customer" to carry out the purposes of the statute. *E.g., SEC v. Ambassador Church*, 679 F.2d 608, 614 (6th Cir. 1982) (recognizing claimant as customer even though no customer account was held in its name); *Matter of Investors Sec. Corp.*, 6 B.R. 420, 426 (W.D. Pa. Bankr. 1980) ("Customer status under SIPA is not dependent upon official documentation in the Debtor's books."); *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 454 B.R. 285, 297, n. 16 (Bankr. S.D.N.Y. 2011) (declining "to hold as a universal principle that an investor must have a *specifically titled* account in the investor's name that *appears on the debtor's available books and records* as an express requirement for obtaining customer status") (emphasis in original).

Rather, "customer" status is accorded to any person who entrusts cash to a broker for the purpose of purchasing securities. *Appleton v. First National Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995) ("The critical aspect of the "customer" definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.") (citing *Ambassador Church*, 679 F.2d at 613); *SIPC v. Stratton Oakmont, Inc.* 229 B.R. 273, 279 (Bankr. S.D.N.Y. 1999) (recognizing "that SIPA protects customers of registered broker-dealers who have entrusted cash or securities in the ordinary course of business for purpose of trading and investing."); *Ahammed v. SIPC (In re Primeline Sec. Corporation)*, 295 F.3d 1100, 1106-07 (same); *Pitheckoff v. SIPC (In re Great Eastern*

*Sec., Inc.)*, 2011 WL 1345152, *4 (S.D.N.Y. April 5, 2011) (same) (citing *SIPC v. Pepperdine University, et al. (In re Brentwood Sec., Inc.)*, 925 F.2d 325, 327 (9th Cir. 1991)).

The Greens satisfy the "entrustment" requirement. They entrusted *their own funds* as well as employer contributions to BLMIS for the purpose of purchasing securities. The assets held by the Plan in the Account can be precisely allocated to the deposits made by or on behalf of the Greens. The Trustee's suggestion that the Greens should be denied customer status because the funds held by BLMIS were property of the Plan as opposed to that of beneficiaries of the Plan, such as the Greens, is meritless. The Plan held the funds in trust for its beneficiaries, like the Greens. *See* 29 U.S.C. § 1103. Employee benefit plan funds are trust funds; they are not available to employers for general use. Therefore, the Greens, like other beneficiaries of the Plan, have the ownership interest in their apportioned share.

## II.    *Morgan Kennedy* Supports Finding of "Customer" Status

The Trustee relies on *SIPC v. Morgan Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976) ("*Morgan Kennedy*") for the overly broad proposition that indirect investors can never qualify as a customer under SIPA. (Tr. Br. 27-28.) If that had been the Second Circuit's holding in *Morgan Kennedy*, the court could easily have so held. It did not. In assessing whether the plan participants of that particular plan qualify as "customers" under SIPA, the court examined the following plan attributes: whether the funds in the broker's hands belonged to the individual employee-participants; whether participants had "total incapacity" to deal with the broker-dealer; whether participants had investment decisions; and whether claimants were accountholders with the broker-dealer. Because "none of those attributes" were present in the plan, the court held that the plan

participants were not customers under SIPA. *Id.* at 1318 (emphasis added). This is not the situation here.

Here, <u>most</u> of the attributes absent in *Morgan Kennedy* are present: the assets held by BLMIS belong to the individual participants because contributions to the Plan were made by both the Greens and by the Greens' employer, for the Greens; the Greens had direct contact with BLMIS;[3] the Greens had vested interests in the funds; Plan assets were allocated to separate accounts for each beneficiary in its books and records; and the BLMIS account -- although held in the name of the Plan -- was held in its capacity as a fiduciary to the plan participants, including the Greens. Because the material plan attributes in *Morgan Kennedy* are directly opposite to the Plan in this case, the factors enunciated in *Morgan Kennedy* compel the recognition of customer status for the Greens.

The Trustee seems to argue that customer status must be denied unless all of the factors listed in *Morgan Kennedy* are present. That is clearly not the case. A determination of "customer" status is a fact intensive analysis based on the totality of the circumstances, not on the basis of one particular factor. *See Morgan Kennedy*, 533 F.2d at 1318.

### III. Existence of Fiduciary Relationship is an Aspect of "Customer" Status Under SIPA

The Trustee asserts that the existence of a fiduciary relationship is insufficient to confer "customer" status. (Tr. Br. 39-41.) On the contrary, in assessing "customer" status, courts generally look to whether the claim arises "out of the types of fiduciary rela-

---

[3] The Trustee suggests that the fact that the Greens had <u>direct</u> contact with BLMIS representatives is immaterial for purpose of this motion. (Tr. Br. at 42-44). This is simply not true. The Greens' communications with employees of BLMIS is one of the considerations under *Morgan Kennedy* that supports the finding of "customer" status. If the Greens had direct communications with employees of BLMIS, clearly, they did not have "total incapacity" to deal with BLMIS.

{N0011099 2 }    5

tionship . . . [that characterizes] the relationship between a broker-dealer and its customers." *In re Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. 285, 299-300 (Bankr. S.D.N.Y. 2011) (quotation marks and citation omitted). In fact, the "entrustment of securities to the broker-dealer for trading purposes" establishes that such investor "has a fiduciary relationship with the broker-dealer, and is entitled to the protection of the [SIPA]." *Appleton*, 62 F.3d at 801. Because the Greens entrusted cash to BLMIS for the purchase of securities, (*see* Part I. *supra*), a fiduciary relationship is established.

IV. **The District Court's Ruling in *Aozora Bank Ltd.* Does Not Undercut Finding of "Customer" Status in this Case**

This Trustee places undue reliance on this Court's decision in *In re Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. 285, which was affirmed by Judge Cote in *Aozora Bank Ltd. v. SIPC (In re Bernard L. Madoff Inv. Sec., LLC)*, 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012) ("*Aozora Bank Ltd.*"). That decision affirmed denial of customer status to BLMIS investors who invested in feeder funds, which then invested the funds with BLMIS. In concluding that the feeder fund investors were not "customers" under SIPA, this Court concluded, and the District Court affirmed, that the feeder funds were investing their own property with BLMIS – not the property of feeder fund claimants. *In re Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. at 297; *Aozora Bank Ltd.*, 2012 28468 at *6. The feeder fund claimants invested "*in,* not *through*" the feeder funds. *In re Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. at 297. This Court then went on to assess the *Morgan Kennedy* factors used to determine "customer" status. *Id.* at 301. It ultimately denied "customer" status to feeder fund investors because:

> [t]he Feeder Funds, and not the Objecting Claimants, opened accounts in their own names with BLMIS; had property interests in the assets in their accounts at BLMIS; had dealings with, and were therefore known to, BLMIS; had a fiduciary

{N0011099 2 }                                6

> relationship with BLMIS; had the power to entrust their own assets to BLMIS for the purpose of investing or trading in securities; and controlled all investment decisions

*Id.*

The nature of the Greens' investments is distinct from those of the feeder fund investors. The Greens retained ownership of the funds that <u>they and their employer</u> contributed. They invested through, not in the Plan; BLMIS was a fiduciary to the Greens. They had dealings with BLMIS employees and representatives. And they controlled their investment decisions. The fact that they did not have accounts in their own name at BLMIS was not dispositive in *Aozora* and it is not dispositive here. *See* Part I. *supra*.

### V. SIPC's View on Statutory Interpretation is Not Entitled to "Deference"

The Trustee argues that, to the extent this Court is doubtful as to whether ERISA claimants are "customers" under SIPA, the Court should defer to SIPC's interpretations of SIPA. (Tr. Br. at 41). The Second Circuit decision in *In re New Times Sec. Serv. Inc.*, 371 F.3d 68 (2d Cir. 2004) ("*New Times*"), cited by the Trustee in support of this point in reality undercuts his position. *In New Times*, the Second Circuit held that the views of SIPC were not entitled to deference in the interpretation of SIPA, particularly when its views differed from those of the Securities and Exchange Commission ("SEC"). *Id.* at 78-80. Similarly, SIPC is not entitled to deference here.

### VI. "Other Avenues of Recovery," if any, Do Not Relieve the Trustee of His Obligation to Recognize the Greens' Customer Claims

The Trustee suggests that the claimants may have an alternate avenue of recovery by "assert[ing] damage claims against those that were responsible for their [p]lan's involvement in BLMIS. . . ." (Tr. Br. 41.) "Other avenues of recovery" are irrelevant to the

motion at hand. It is not a consideration in determining "customer" status under SIPA. And the "possibility" of alternate sources of recovery does not relieve the Trustee of his obligation to comply with SIPA's definition of "customer."

## **CONCLUSION**

For the reasons stated herein, the Greens respectfully request that this Court hold that they are entitled to an advance from SIPC and a claim against the fund of customer property.

April 2, 2012

**BECKER & POLIAKOFF LLP**

By:    /s/ Helen Davis Chaitman
45 Broadway
New York, NY 10006
(212) 599-3322
*Attorneys for Jacqueline Green Rollover Account and Wayne Green Rollover Account*