Helen Davis Chaitman  
Becker & Poliakoff LLP  
45 Broadway  
New York, NY 10006  
hchaitman@becker-poliakoff.com  
*Attorneys for J.X. Reynolds & Co.*  
*Deferred Profit Sharing Plan*

Hearing Date: May 23, 2011 at 10:00 A.M.

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |

**REPLY BRIEF OF J.X. REYNOLDS & CO. DEFERRED**  
**PROFIT SHARING PLAN IN FURTHER OPPOSITION**  
**TO TRUSTEE'S MOTION FOR COURT APPROVAL OF HIS DENIAL**  
**OF CLAIMS OF INVESTORS UNDER ERISA-PROTECTED PLANS**

{N0011239 2 }

## PRELIMINARY STATEMENT

The Plan[1] submits this reply brief in further opposition to Trustee's motion for court approval of his denial of claims of investors under ERISA-Protected Plans[2].

## ARGUMENT

### I. The Fact that the Plan Did Not Hold an Account In its Name at BLMIS is Not Dispositive to Determination of Its "Customer" Status

There is no requirement under SIPA that a SIPC claimant hold an account in his name. SIPA's definition of "customer" does not include a requirement that the "customer" be in "privity" with the broker or that the "customer have a "direct account" with the broker. *See* 15 U.S.C. § 78*lll*(2) (defining a customer as "any person who has a claim" or "any person who has deposited cash" under specified conditions); 15 U.S.C. § 78*lll*(2)(B)(i) ("customer includes . . . any person who has deposited cash with the debtor for the purpose of purchasing securities).

The requirement that the broker know the identity of the customer was specifically deleted from an earlier version of the statute. In the first draft of the bill, there was no entitlement to SIPC insurance for any customer whose name or interest was not disclosed on the records of the broker/dealer "if such recognition would increase the aggregate amount of the insured customer accounts or insured liability in such closed broker or dealer." S. 2348, 91st Cong. Section 7(d) (June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug.4, 1969). The final bill dropped this restriction.

---

[1] Capitalized terms not defined herein maintain the definitions set forth in the Claimants' Opposition to Trustee's Motion for Court Approval of His Denial of Claims of Investors under ERISA-Protected Plans and an accompanying declaration of James Reynolds.

[2] While the Trustee alleges that the Plan has not established that it is an ERISA-protected plan, he states that ERISA status is assumed for purposes of this motion and will be litigated at a further time if the result of the hearing makes further fact-finding necessary. (Tr. Br. 12-13.) In any event, however, the Plan has provided to the Trustee documents supporting its status as an ERISA qualified plan in response to the Trustee's document request subsequent to filing its objection to the Trustee's motion.

{N0011239 2 }                                              2

Moreover, any ambiguity in the definition of "customer," and there is none here, should not be construed in favor of the Trustee because "SIPA is remedial legislation. As such, it should be construed liberally to effect its purpose." *Tcherepin v. Knight,* 389 U.S. 332 (1967). Finally, SIPA does not permit SIPC, by the promulgation of Rules, to change the definition of "customer" under the statute. *See* 15 U.S.C. § 78ccc(b)(4)(A).

For these reasons, courts have broadly construed the term "customer" to carry out the purposes of the statute. *E.g., SEC v. Ambassador Church*, 679 F.2d 608, 614 (6th Cir. 1982) (recognizing claimant as customer even though no customer account was held in its name); *Matter of Investors Sec. Corp.*, 6 B.R. 420, 426 (W.D. Pa. Bankr. 1980) ("Customer status under SIPA is not dependent upon official documentation in the Debtor's books."). In fact, this Court has already determined that there is a no <u>per se</u> rule that a claimant must be an account holder in order to qualify as a "customer" under SIPA. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 454 B.R. 285, 297, n. 16 (Bankr. S.D.N.Y. 2011) (declining "to hold as a universal principle that an investor must have a *specifically titled* account in the investor's name that *appears on the debtor's available books and records* as an express requirement for obtaining customer status") (emphasis in original). Similarly, counsel for the Trustee has conceded on the record that some investors, which did not have accounts in their own names, qualify as "customers" under SIPA under specified circumstances. *In re Bernard L. Madoff,* Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), 09/09/2009 Hrg. Tr. 17:7-11 (stating in circumstances where an investor had some sort of relationship with BLMIS, customer status would be recognized despite the fact that investor was not an account holder).

{N0011239 2}    3

Rather, "customer" status is accorded to any person who entrusts cash to a broker for the purpose of purchasing securities. *Appleton v. First National Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995) ("The critical aspect of the "customer" definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.") (citing *Ambassador Church*, 679 F.2d at 613); *SIPC v. Stratton Oakmont, Inc.* 229 B.R. 273, 279 (Bankr. S.D.N.Y. 1999) (recognizing "that SIPA protects customers of registered broker-dealers who have entrusted cash or securities in the ordinary course of business for purpose of trading and investing."); *Ahammed v. SIPC (In re Primeline Sec. Corporation)*, 295 F.3d 1100, 1106-07 (same); *Pitheckoff v. SIPC (In re Great Eastern Sec., Inc.)*, 2011 WL 1345152, *4 (S.D.N.Y. April 5, 2011) (same) (citing *SIPC v. Pepperdine University, et al. (In re Brentwood Sec., Inc.)*, 925 F.2d 325, 327 (9th Cir. 1991)).

The Plan satisfies the "entrustment" requirement. The Plan deposited funds with BLMIS for the purchase of securities. It is indisputable that the Plan made checks payable to BLMIS and in some instances delivered those checks directly to BLMIS.[3] It is similarly undisputed that those funds were actually received by BLMIS. *See SIPC v. Wise (In re Stalvey & Assoc.)*, 750 F.2d 464, 469 (5th Cir. 1985) (quoting *SEC v. Kenneth Bove & Co.*, 378 F. Supp. 697, 700 (S.D.N.Y. 1974)) (A critical fact in finding that the "entrustment" requirement is met is that there was "'actual receipt, acquisition or possession of the property'" by the broker-dealer). Hence, the Plan qualifies as a "customer" under SIPA.

## II. Existence of Fiduciary Relationship is a Sufficient Aspect of "Customer" Status Under SIPA

---

[3] The Trustee suggests that the fact that the Plan delivered one of its checks directly to BLMIS is immaterial for purpose of this motion. (Tr. Br. at 42-44). Notably, the Trustee does not even attempt to address the fact that the Plan made checks payable to BLMIS. Both of those facts are critical in that they establish a direct relationship with BLMIS and also further support the Plan's argument that it entrusted cash to BLMIS for the purchase of securities.

{N0011239 2 }    4

The Trustee asserts that the existence of a fiduciary relationship is insufficient to confer "customer" status. (Tr. Br. 39-41.)  On the contrary, in assessing "customer" status, courts generally look to whether the claim arises "out of the types of fiduciary relationship . . . [that characterizes] the relationship between a broker-dealer and its customers."  *In re Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. 285, 299-300 (Bankr. S.D.N.Y. 2011) (quotation marks and citation omitted).  In fact, the "entrustment of securities to the broker-dealer for trading purposes" establishes that such investor "has a fiduciary relationship with the broker-dealer, and is entitled to the protection of the [SIPA]."  *Appleton*, 62 F.3d at 801.  Because the Plan entrusted cash to BLMIS for the purchase of securities, (*see* Part I. *supra*), a fiduciary relationship is established.

### III. The District Court's Ruling in *Aozora Bank Ltd.* Does Not Undercut Finding of "Customer" Status in this Case

This Trustee places undue reliance on this Court's decision in *In re Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. 285, which was affirmed by Judge Cote in *Aozora Bank Ltd. v. SIPC (In re Bernard L. Madoff Inv. Sec., LLC)*, 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012) ("*Aozora Bank Ltd.*").  That decision affirmed denial of customer status to BLMIS investors who invested in feeder funds, which then invested the funds with BLMIS.  In concluding that the feeder fund investors were not "customers" under SIPA, this Court concluded, and the District Court affirmed, that the feeder funds were investing their own property with BLMIS – not the property of feeder fund claimants.  *In re Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. at 297; *Aozora Bank Ltd.*, 2012 28468 at *6.  The feeder fund claimants invested "*in,* not *through*" the feeder funds.  *In re Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. at 297.  This Court then went on to assess the *Morgan Kennedy*

factors used to determine "customer" status. *Id.* at 301. It ultimately denied "customer" status to feeder fund investors because:

> [t]he Feeder Funds, and not the Objecting Claimants, opened accounts in their own names with BLMIS; had property interests in the assets in their accounts at BLMIS; had dealings with, and were therefore known to, BLMIS; had a fiduciary relationship with BLMIS; had the power to entrust their own assets to BLMIS for the purpose of investing or trading in securities; and controlled all investment decisions

*Id.*

The nature of the Plan's investment is distinct from those of the feeder fund investors. Although the Plan deposited funds into the Account, which was held in the name of Petito, its agent, the Plan had a direct financial relationship with BLMIS. The Plan deposited funds into the Account from its own checking account by checks payable to BLMIS. The president of the Plan also had at least one written communication with an employee of BLMIS. Clearly, it was known to BLMIS that the assets entrusted to BLMIS were not owned by Petito but were owned by the Plan. That the Account was not in the Plan's name is not dispositive. *See* Part I. *supra*.

## IV. SIPC's View on Statutory Interpretation is Not Entitled to "Deference"

The Trustee argues that, to the extent this Court is doubtful as to whether ERISA claimants are "customers" under SIPA, the Court should defer to SIPC's interpretations of SIPA. (Tr. Br. at 41). The Second Circuit decision in *In re New Times Sec. Serv. Inc.*, 371 F.3d 68 (2d Cir. 2004) ("*New Times*"), cited by the Trustee in support of this point in reality undercuts his position. *In New Times*, the Second Circuit held that the views of SIPC were not entitled to deference in the interpretation of SIPA, particularly when its views differed from those of the Securities and Exchange Commission ("SEC"). *Id.* at 78-80. Similarly, SIPC is not entitled to deference here.

{N0011239 2 }  6

V. **"Other Avenues of Recovery," if any, Do Not Relieve the Trustee of His Obligation to Recognize the Plan's "Customer" Claim**

The Trustee suggests that the claimants may have an alternate avenue of recovery by "assert[ing] damage claims against those that were responsible for their [p]lan's involvement in BLMIS. . . ." (Tr. Br. 41.) "Other avenues of recovery" are irrelevant to the motion at hand. It is not a consideration in determining "customer" status under SIPA. And the "possibility" of alternate sources of recovery does not relieve the Trustee of his obligation to comply with SIPA's definition of "customer."

## CONCLUSION

For the reasons stated herein, the Plan respectfully requests that this Court order the Trustee to recognize the customer claim of the Plan.

April 2, 2012

                                         **BECKER & POLIAKOFF LLP**

                                         By: /s/ Helen Davis Chaitman
                                         45 Broadway
                                         New York, NY 10006
                                         (212) 599-3322
                                         *Attorneys for Attorneys for J.X. Reynolds*
                                         *& Co. Deferred Profit Sharing Plan*