JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel
  for Dispute Resolution
CHRISTOPHER H. LAROSA
Senior Associate General Counsel – Litigation
SECURITIES INVESTOR PROTECTION
  CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone:    (202) 371-8300
Facsimile:     (202) 371-6728
E-mail:          jwang@sipc.org
                    kbell@sipc.org
                    clarosa@sipc.org

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, ) ) ) | SIPA LIQUIDATION |
| Plaintiff ) ) | Case No. 08-01789 (BRL) |
| ) ) | (Substantively Consolidated) |
| v. ) ) | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, ) ) ) | |
| Defendant ) ) | |

**SUR-REPLY OF THE
SECURITIES INVESTOR PROTECTION CORPORATION
IN SUPPORT OF TRUSTEE'S MOTION FOR AN ORDER AFFIRMING TRUSTEE'S
DETERMINATIONS DENYING CLAIMS OVER ERISA-RELATED OBJECTIONS**

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................1

    A.    Ownership is an indispensable prerequisite to "customer" status ..........................3

    B.    The claimants here did not own any of the assets entrusted to BLMIS..................5

        1.    The plan assets rule does not preempt state trust and LLC law...................6

        2.    The ERISA Plan Claimants have no contractual interest
            in the property entrusted to BLMIS ............................................................10

        3.    J.X. Reynolds had no property interest
            sufficient for "customer" status .................................................................12

    C.    The claimants' remaining arguments revisit issues already decided.....................13

CONCLUSION........................................................................................................................14

CERTIFICATE OF SERVICE ................................................................................................15

# **TABLE OF AUTHORITIES**

**CASES:**                                                                                                                                **PAGE**

Aozora Bank Ltd.v. Sec. Investor Prot. Corp.
    (In re Bernard L. Madoff Inv. Secs. LLC),
    2012 WL 28468 (S.D.N.Y. Jan. 4, 2012) ..................................................................................2, 3

Bank of New York v. Janowick, 470 F.3d 264 (6th Cir. 2006),
    cert. den. sub nom., Southwire Co. v. Janowick, 552 U.S. 825 (2007) ..............................7

Brown v. Astro Holdings, Inc., 385 F.Supp.2d 519 (E.D. Pa. 2005) ......................................... 6-7

In re Brunswick Hosp. Center, Inc., 156 B.R. 896 (E.D.N.Y. 1993) ............................................6

Canario v. Lidelco, Inc., 782 F. Supp. 749 (E.D.N.Y. 1992) ........................................................7

Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,
    472 U.S. 559 (1985).................................................................................................................11

DeBreceni v. Graf Bros. Leasing, Inc., 828 F.2d 877 (1st Cir. 1987),
    cert. den. sub nom., New England Teamsters and
    Trucking Industry Pension Fund v. Graf, 484 U.S. 1064 (1988).........................................6

Hattem v. Schwarzenegger, 449 F.3d 423 (2d Cir. 2006) ...........................................................8, 9

Jackson v. United States, 555 U.S. 1163 (2009).............................................................................8

LaRue v. DeWolff, Boberg & Associates, Inc., 552 U.S. 248 (2008)....................................3, 4, 5

La Russo v. Paladino, 109 N.Y.S.2d 627 (N.Y. Sup. Ct. 1951),
    aff'd, 116 N.Y.S.2d 617 (N.Y. App. Div 1952) ...................................................................12

Milgram v. Orthopedic Associates Defined Contribution Pension Plan,
    666 F.3d 68 (2d Cir. 2011)..............................................................................................3, 4, 5

Matter of Minton Group, Inc., 46 B.R. 222 (Bankr. S.D.N.Y. 1985)...........................................12

In re New Times Secs. Servs., Inc., 463 F.3d 125 (2d Cir. 2006) ..............................................3, 5

Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011), aff'd sub nom.,
    In re Aozora Bank Ltd., 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012) .................................2, 3

Secretary of Labor v. Doyle, ___F.3d___, 2012 WL 1003547 (3d Cir. March 27, 2012) ..........7, 8

# TABLE OF AUTHORITIES
## (cont.)

**CASES:**                                                                                                              **PAGE**

SIPC v. Morgan Kennedy, Inc., 533 F.2d 1314 (2d Cir.), cert. den. sub nom.,
    Trustees of the Reading Body Works, Inc. v. Sec. Investor Prot. Corp.,
    426 U.S. 936 (1976)..................................................................................................3, 13

In re Suprema Specialties, Inc., 370 B.R. 517 (S.D.N.Y. 2007)
    aff'd, 309 Fed. Appx. 526 (2d Cir. 2009) ....................................................................6, 11

Matter of Weis Secs., Inc., 1977 WL 1043 (S.D.N.Y. Sept. 29, 1977) .........................................13

**STATUTES AND RULES:**

Employee Retirement Income Security Act of 1974, 29 U.S.C. §

1002...........................................................................................................................................6, 9
1056(d)(1) ....................................................................................................................................4
1103(a) ....................................................................................................................................3, 11
1144(d) ..............................................................................................................................5, 9, 10

N.Y. Ltd. Liab. Co. Law §

601..........................................................................................................................................6, 11

N.Y. P'ship Law §

51(1)...........................................................................................................................................12
51(2)(a) ......................................................................................................................................12
51(2)(b) ......................................................................................................................................12

**OTHER AUTHORITIES:**

Austin Wakeman Scott, 2A The Law of Trusts § 265.4 (4th ed 1988) ..........................................11

The Securities Investor Protection Corporation ("SIPC") submits this sur-reply in support of the motion ("Motion") of Irving H. Picard, as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor"), under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa et seq., and of Bernard L. Madoff ("Madoff"), for an order affirming his denial of the claims of certain claimants who purport to be "customers" under SIPA based on provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., and related Department of Labor ("DOL") regulations.

## ARGUMENT

The responses to the Trustee's Motion reflect a number of common assertions, including that: (1) the entrustment of property by a claimant to a liquidating SIPC-member is the key to eligibility for "customer" status; (2) ERISA deems the claimants to have engaged in such entrustment, notwithstanding their lack of any account or comparable relationship with BLMIS; and (3) a claimant need not have had an account in its name at a liquidating SIPC-member to qualify for "customer" status under SIPA. The responding claimants differ, however, in their approach to the second point. The Participant Claimants[1] acknowledge that they lacked legal title to any assets entrusted to BLMIS, but insist instead that a claimant can be deemed to have entrusted assets to a liquidating SIPC-member even though the claimant lacks title, or any other cognizable interest, in such assets. In contrast, the Plan Claimants, particularly the self-styled "ERISA Plan Claimants" - a group of 37 employee benefit plans that purchased interests in either Income Plus one or more of three BLMIS feeder funds - acknowledge that ownership is a prerequisite to entrustment, but contend that, by virtue of ERISA's "plan assets rule" and the

---

[1] The abbreviations used in this memorandum are identical to those used in SIPC's opening memorandum.

references to the same in the prospectuses and other offering material issued in connection with the interests that they purchased, they owned the assets entrusted to BLMIS by Income Plus and/or the feeder funds.

For the reasons discussed below, both groups of claimants are mistaken. Ownership is an indispensable prerequisite to entrustment, and a claimant cannot entrust to a SIPC-member assets that the claimant does not own. More broadly, a claimant cannot qualify as a "customer" under SIPA with respect to assets in which the claimant has no legally cognizable property interest. Further, ERISA's "plan assets rule" is of no help to the ERISA Plan Claimants because it does preempt otherwise applicable state trust and limited liability company ("LLC") law that provides that trust beneficiaries and LLC owners like the ERISA Plan Claimants do not hold title to trust and LLC assets, respectively. Likewise, the references to the "plan assets rule" in the offering memoranda cited by the ERISA Plan Claimants avail them nothing. As the full context of these memoranda makes clear, those references were not intended to displace otherwise applicable state law depriving the ERISA Plan Claimants of any interest in trust and LLC assets outside the context of Title I of ERISA.

Finally, the claimants' insistence that they need not have had accounts at BLMIS reflects an effort to relitigate an argument that this Court and the District Court considered and rejected in Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC, 454 B.R. 285 (Bankr. S.D.N.Y. 2011) ("BLMIS"), and Aozora Bank v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Secs. LLC), 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012) ("Aozora"), respectively. The claimants here add nothing to the argument made in those cases, and there is no reason to revisit the Court's earlier rejection of that argument.

2

**A. Ownership is an indispensable prerequisite to "customer" status**

As the Second Circuit stated, and as all of the claimants acknowledge, "the critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." In re New Times Secs. Servs., Inc., 463 F.3d 125, 128 (2d Cir. 2006). See also Aozora, 2012 WL 28468, at * 9. An investor cannot legally decide to entrust to a broker-dealer cash or securities that the investor does not own and in which it has no other cognizable property right, however. Indeed, this Court, among others, has recognized legal ownership of cash or securities held, or purportedly held, by a broker-dealer as a "foundational element" of "customer" status under SIPA; an indispensable prerequisite which a claimant must satisfy in order to have a colorable "customer" claim under SIPA. See BLMIS, 454 B.R. at 295, 299. See also SIPC v. Morgan, Kennedy & Co., 533 F.2d 1314, 1318 (2d Cir. 1976); Aozora, 2012 WL 28468 at ** 9-10. As noted, the ERISA Plan Claimants themselves expressly acknowledge this principle. (See ECF 4746 at 9-10.)

The Participant Claimants challenge this principle, but fail to offer any coherent rationale in support of their challenge. They acknowledge that ERISA requires that title to all ERISA plan assets be held by the plan trustee (see 29 U.S.C. § 1103(a)), but insist that, simply because they are participants in defined contribution plans, they had a sufficient interest in the assets of those plans to make them eligible for customer status under SIPA. (See ECF 4748 at 6-8; ECF 4750 at 6-8; ECF 4755 at 6-7.) Remarkably, in support of their position, Sterling and OSG invoke LaRue v. DeWolff, Boberg, and Assocs., Inc., 552 U.S. 248 (2008), and Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan, 666 F.3d 68 (2d Cir. 2011), the very cases that establish conclusively that a defined contribution plan, not its participants, owns the assets held by the plan. (See ECF 4748 at 7-8; ECF 4750 at 6-8.)

3

But both LaRue and Milgram made a clear distinction between a plan and its participants, and premised their holdings, in part, on the absence of participant property rights in plan property. Thus, in LaRue, for example, while the Supreme Court acknowledged that, under the express terms of ERISA, a plan beneficiary may sue a plan administrator for breach of fiduciary duty, the Court also explained that the participant can only bring such a suit "on behalf of a plan" and only for injuries to the plan, not "for individual injuries distinct from plan injuries." See LaRue, 552 U.S. at 253, 256.

Milgram is even more clear. In Milgram, a defined contribution plan participant sued the plan for erroneously transferring funds out of his plan "account." Milgram, 666 F.3d at 70-72. The plan invoked as a defense an ERISA's "anti-alienation" provision, which states that benefits provided under an ERISA-covered plan may not be assigned or alienated. Id. See also, 29 U.S.C. § 1056(d)(1). Specifically, the plan contended that entry of an award against it would harm plan participants because it would force the plan to reallocate assets from the "accounts" of those participants to the "account" of the plaintiff-participant. Milgram, 666 F.3d at 71.

The Second Circuit rejected the plan's argument, finding that the anti-alienation provision applies only to a plan participant's benefit rights, not to plan assets. The court explained that a defined contribution plan, not its participants, owns all assets held by the plan; that participants have no property rights in plan assets; and that "a single participant's 'account' is merely a bookkeeping entry that is used at the time of his retirement to determine what benefits he is entitled to receive." Milgram, 666 F.3d at 74. In light of these findings, the court concluded that an award could be entered against the Milgram plan for its misconduct, irrespective of the impact that such an award would have on the individual "accounts" of the plan's beneficiaries. Id. at 75-76.

4

LaRue and Milgram thus make crystal clear that a defined contribution plan beneficiary not only lacks title to any of the plan's assets, but also has no other rights or interest in those assets sufficient to confer "customer" status. Rather, the plan owns the assets and therefore only the plan can entrust those assets to the SIPC-member broker dealer, the sine qua non of customer status. New Times, 463 F.3d at 128.

### B. The claimants here did not own any of the assets entrusted to BLMIS

As noted, the Plan Claimants take a different tack. The ERISA Plan Claimants insist that ERISA's plan assets rule gave them proportional ownership of the assets entrusted to BLMIS by the income trust and BLMIS feeder funds in which they invested, while J.X. Reynolds & Co. Deferred Profit Sharing Plan ("J.X. Reynolds") asserts, without citation to any record support, that it had a direct relationship with BLMIS. Both claimants are mistaken.

The ERISA Plan Claimants contend that: (1) the plan assets rule preempts the state trust and LLC law providing that a trust beneficiary and an LLC owner have no property interest in trust or LLC assets; and (2) even in the absence of preemption, state trust and LLC law can be overridden by contract, which occurred here because the offering memoranda issued by the income trust and LLC feeder funds in which the ERISA Plan Claimants invested referenced the plan assets rule. The ERISA Plan Claimants' first contention is based on a misreading of several cases from outside this jurisdiction, continuing confusion of the scope of the definitions contained in Title I of ERISA, and a complete failure to grapple with Section 1144(d) of ERISA, which provides that preemption is precluded where it would alter the application of another federal statute. Their second contention is wrong as a matter of law and fact.

5

### 1. The plan assets rule does not preempt state trust and LLC law

The Income Trust and the feeder funds in which the Plan Claimants invested are all governed by New York law, which provides unequivocally that title to the assets of a trust or LLC is held by the trustee or LLC, and that the trust beneficiaries or LLC owners have no cognizable interest in those assets.  See, e.g., In re Suprema Specialties, Inc., 370 B.R. 517, 530 (S.D.N.Y. 2007) (an express trust cannot be created in New York without express intent to vest title to the trust res in the trustee), aff'd, 309 Fed. Appx. 526 (2d Cir. 2009); In re Brunswick Hosp. Center, Inc., 156 B.R. 896, 900 (E.D.N.Y. 1993) (same); N.Y. Ltd. Liab. Co. Law § 601 (McKinney 2011) ("[A] member has no interest in specific property of the limited liability company").  In arguing that these laws are preempted by the plan assets rule, the ERISA Plan Claimants contend that: (1) the plan assets rule applies outside the context of Subtitle I of ERISA, despite express language to the contrary in the statute; and (2) for purposes of ERISA's preemption provision, New York's trust and LLC laws "relate to" the subject ERISA plans because they would somehow interfere with ERISA fiduciary provisions.  In both instances, the ERISA Plan Claimants rely upon, but badly misread, cases from outside this jurisdiction.

Section 1002 of ERISA, which contains the "plan assets" definition that forms the source of the plan assets rule upon which the ERISA Plan Claimants place so much weight, provides expressly that the definitions in the section apply only for purposes of Title I of ERISA.  See 29 U.S.C. § 1002.  The courts have long recognized and accepted this limitation.  See, e.g., DeBreceni v. Graf Bros. Leasing, Inc., 828 F.2d 877, 879 (1st Cir. 1987) (Subchapter I definitions do not apply to Subchapter III of ERISA), cert. den. sub. nom., New England Teamsters and Trucking Industry Pension Fund v. Graf, 484 U.S. 1064 (1988); Brown v. Astro

6

Holdings, Inc., 385 F.Supp.2d 519, 527-28 (E.D. Pa. 2005); Canario v. Lidelco, Inc., 782 F. Supp. 749, 757 (E.D.N.Y. 1992).

In arguing the contrary, the ERISA Plan Claimants rely exclusively on a group of authorities that either have nothing to do with the plan assets rule or confirm that the rule applies only in the context of Title I of ERISA. In Bank of New York v. Janowick, 470 F.3d 264 (6th Cir. 2006), cert. den. sub nom., Southwire Co. v. Janowick, 552 U.S. 825 (2007), the Sixth Circuit adjudicated a dispute over the ownership of shares in an insurance company that had issued an annuity policy to the trustee of a terminating ERISA plan. Following the trustee's purchase of this policy, the insurance company "demutualized," i.e., converted from a mutual insurance company to a stock company. Janowick, 470 F.3d at 267-68. As part of that action, the insurance company issued shares in itself to compensate policy holders for their loss of governance rights previously held by the policy holders in the mutual company. Id. In resolving a dispute between the successor to the company that sponsored the terminating ERISA plan and the employee/beneficiaries of that plan regarding ownership of those shares, the Sixth Circuit found in favor of the employee/beneficiaries on the grounds that the trustee for the plan purchased the annuity for the benefit of the employee/beneficiaries and that the company "did not purchase any annuities…and was not the contract holder." Id. at 273. The court concluded that, because the company had no interest in the annuity, it had no interest in the shares offered as a substitute for the governance rights accompanying the annuity. Id. Most important for present purposes, the Sixth Circuit never mentioned the plan assets rule in Janowick, and certainly did not invoke the rule as the basis for its decision. See id.

The Third Circuit's decision in Secretary of Labor v. Doyle, ___F.3d___, 2012 WL 1003547 (3d Cir. March 27, 2012) is also inapposite. In Doyle, the court addressed the question

7

whether certain assets qualified as "plan assets" for purposes of a breach of fiduciary claim brought under ERISA by the Secretary of Labor against the fiduciaries of an ERISA plan. Doyle, 2012 WL 1003547, at * 1. At most, the court held that, for purposes of applying ERISA's fiduciary provisions, the court may look to non-ERISA law where the plan assets rule is inapplicable. Id. at ** 12-13. As the court made clear, however, its decision was grounded upon ERISA, and thus provides no support whatsoever for the notion that the plan assets rule applies outside that context. See id. at * 10 ("Identification of plan assets is essential to determining Doyle's fiduciary status" under ERISA). The remaining authorities cited by the ERISA Plan Claimants are irrelevant here for the same reason. See Jackson v. United States, 555 U.S. 1163 (2009) (vacating Fourth Circuit decision based upon Solicitor's General's position (expressed in its brief in support of certiorari, 2009 WL 133443) that general property law governs meaning of "plan assets" in criminal provision of ERISA); DOL Advisory Op. 94-31A (Sept. 9, 1994) (addressing the question whether assets contributed to a grantor trust "would constitute plan assets under Title I of ERISA" (emphasis added)).

The ERISA Plan Claimants' contention that New York's trust and LLC laws "relate to" ERISA plans within the meaning of ERISA's preemption provision is also devoid of support. The Second Circuit has made clear that state laws of general applicability, whose operation does not depend upon the existence of an ERISA plan, do not "relate to" such plans and are not preempted. Hattem v. Schwarzenegger, 449 F.3d 423, 429 (2d Cir. 2006). In this regard, the Second Circuit has explained that:

> '[T]he basic thrust of the pre-emption clause, then, was to avoid multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans,' … and to prevent frustrating plan administrators' obligations to calculate uniform benefits levels nationwide….

8

> In determining whether a particular state law runs afoul of these goals, the [(Supreme)] Court has instructed that preemption is not called for 'if the state law has only a tenuous, remote, or peripheral connection with covered plans, *as is the case with many laws of general applicability*.' … Furthermore, it is not sufficient that the law in question has an indirect economic effect on choices; rather, the law must actually dictate which choices *must* be made.
>
> ＊＊＊＊＊＊＊＊＊＊＊＊＊
>
> The law at issue therefore functioned irrespective of the existence of an ERISA plan and thus did not impermissibly create a 'reference to' an ERISA plan.

Hattem, 449 F.3d at 429, 433 (citations and quotations omitted, emphasis in original).

In opposition, the ERISA Plan Claimants cite a group of cases for the proposition that "any state law, even one of general applicability, directed to and connected with this area of fiduciary conduct is preempted by ERISA." (See ECF 4746 at 16-17.) But the state trust and LLC laws in question here do not interfere in any way with ERISA's fiduciary provisions. For purposes of those provisions, along with the balance of Title I of ERISA, the plan assets rule remains fully effective. Outside that context, however, where the plan assets rule, and the other rules and regulations arising from the definitions contained in Section 1002 of ERISA do not operate, under the express terms of that section, New York's trust and LLC laws remain in full effect. There is thus no conflict between the plan assets rule and New York property law, and therefore no basis for preemption.

Even if there were such a conflict, preemption would be precluded by Section 1144(d) of ERISA, which prohibits preemption where it would alter the application of another federal statute. See 29 U.S.C. § 1144(d). That, of course, is exactly what the ERISA Plan Claimants seek, as they hope to acquire "customer" status otherwise unavailable to them under SIPA on the basis of the preemption of New York trust and LLC law by ERISA's plan assets rule. The

9

ERISA Plan Claimants do not even bother to address Section 1144(d) directly. Instead, they contend that, even under New York law, they own the assets held entrusted to BLMIS by the Income Trust and feeder funds in which they invested because the offering memoranda issued by those entities made reference to the plan assets rule. That contention is erroneous for the reasons detailed below. See infra. The ERISA Plan Claimants therefore have no response to the preemption bar created by Section 1144(d), and that bar is fully operative here.

### 2. The ERISA Plan Claimants have no contractual interest in the property entrusted to BLMIS

As noted, the ERISA Plan Claimants rely heavily on the offering memoranda issued by the entities in which they invested, contending that these documents created contracts that incorporate the plan assets rule. While the offering memoranda to which the ERISA Plan Claimants point do reference the plan assets rule, they merely describe that rule and note that it will impose fiduciary obligations upon the managers of subject entities. More specifically, it is clear in context that statements in these memoranda to the effect that entity assets will be treated as "plan assets" of the investor/plans were intended to apply solely for purposes of the fiduciary provisions of Title I of ERISA, like the plan assets rule itself. (See, e.g., ECF 4635-1, Ex. D at 22 ("The assets of the Group Trust will constitute 'plan assets' under regulations promulgated by the DOL… [t]he Investment Manager will therefore be deemed a fiduciary with respect to each investing Plan…" (emphasis added); ECF 4635-1, Ex. F at 38 ("Depending upon the percentage of Interests purchased by Benefit Plan Investors…the underlying assets of the Company may be considered to be assets of ERISA Plans…[u]nder a regulation of the DOL…" (emphasis added))). In fact, all of the offering memoranda refer repeatedly to the assets held by the entities as being assets of the entities, indicating entity, not investor, ownership of the same. (See, e.g.,

10

ECF 4635-1, Ex. D at 13 ¶ 5, 14 ¶ 8; ECF 4635-1, Ex. F at 2 (describing asset allocation), 12 (referencing "Current Allocation of Fund Assets").

The matter is even clearer in light of the law applicable to these entities. Revenue Ruling 81-100, pursuant to which the Income Trust was established, provides that any trust in conformity with the ruling must "be maintained at all times as a domestic trust in the United States." See Rev. Rul 81-100. Trusts created pursuant to ERISA are governed by the "common law of trusts." See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570 (1985). Under the common law of trusts, the trustee, not the trust beneficiaries, holds title to trust property. Austin Wakeman Scott, 2A The Law of Trusts § 265.4 (4th ed 1988) ("From the traditional point of view, it would seem that the trustee is the legal owner of trust property…"). See also In re Suprema Specialties, Inc., 370 B.R. 517, 530 (S.D.N.Y. 2007) (under New York law, express trust requires an intent to vest title to the trust res in the trustee). As noted, ERISA itself expressly requires that title to trust property be vested in the trustee. See 29 U.S.C. § 1103(a). These principles confirm that the Income Trust is the owner of the assets formerly held by the trust and entrusted by its trustee to BLMIS, and suggests that the creators of the Income Trust understood that.

The same is true of these BLMIS feeder funds in which the ERISA Plan Claimants invested. All of those funds were established as LLCs under New York law, which provides expressly that LLC members have no interest in any of the LLC's assets. See N.Y. Ltd. Liab. Co. Law § 601 (McKinney 2011). Moreover, the operating agreements of the funds provide that New York governs them, unless otherwise provided in the agreements. The agreements contain nothing to the contrary, indicating, without doubt, that the creators of the funds intended the funds to hold title to all fund assets. (See, e.g., ECF 4635-1, Exs. G, I.)

### 3. J.X. Reynolds had no property interest sufficient for "customer" status

Unlike the ERISA Plan Claimants, J.X. Reynolds neither pushes the applicability of ERISA's preemption provision nor asserts that the offering memoranda issued by Petito, the BLMIS account holder in which J.X. Reynolds invested, vested in J.X. Reynolds ownership rights in assets held in that account. Instead, J.X. Reynolds asserts that Petito was acting as J.X. Reynolds's agent and that J.X. Reynolds made direct deposits into the account in Petito's name at BLMIS. (See ECF 4756 at 6.) J.X. Reynolds neither submits nor cites any record evidence in support of its position.

Moreover, Petito was a general partnership organized under New York law, in which J.X. Reynolds apparently purchased an interest as a general partner. (See ECF 4702 at 4.) Under New York's partnership law, a general partner is co-owner, with the other general partners, of specific partnership property, holding such property as a "tenant in partnership." See N.Y. P'ship Law § 51(1) (McKinney 2005). In that capacity, a general partner has an equal right, with the other general partners, to "possess specific partnership property for partnership purposes," but has no right to "possess such property for any other purpose without the consent of his partners." Id. at § 51(2)(a). Further, a general partner's rights regarding specific partnership property is not assignable by that partner individually. Id. at § 51(2)(b).

As a consequence, a general partner's interest as a partner "grants no individually exercisable rights to the partner," and "a partner has no personal right in any specific partnership property…" Matter of Minton Group, Inc., 46 B.R. 222, 224-25 (Bankr. S.D.N.Y. 1985) (quoting La Russo v. Paladino, 109 N.Y.S.2d 627, 630 (N.Y. Sup. Ct. 1951), aff'd, 116 N.Y.S.2d 617 (N.Y. App. Div. 1952)). Without such a right, a general partner's interest in partnership property is insufficient to confer "customer" status under SIPA as a matter of law, and J.X.

12

Reynolds's claim for the same therefore was properly denied. See, e.g., SIPC v. Morgan Kennedy, Inc., 533 F.2d 1314, 1318 (2d Cir. 1976), cert. den. sub nom., Trustees of the Reading Body Works, Inc. v. Sec. Inv. Prot. Corp., 426 U.S. 936 (1976); Matter of Weis Secs., Inc., 1977 WL 1043, at * 4 (S.D.N.Y. 1977) (SIPA intended to protect claimants with "an unrestricted right to receive on demand these securities which belong to them").

### C. The claimants' remaining arguments revisit issues already decided

The claimants' remaining arguments – e.g., that they need not have accounts in their own names at BLMIS – have already been considered by this Court and by the District Court in BLMIS and Aozora, respectively. For the reasons discussed in detail in those decisions, in the absence of a sufficient interest held in cash or securities held, or purportedly held, by BLMIS – which the claimants here manifestly lack - the claimants are ineligible for "customer" status.

## **CONCLUSION**

For the aforementioned reasons, the Court should enter an order granting the Trustee's motion and upholding the Trustee's denial of the customer claims of the Plan Claimants and the Participant Claimants.

DATED:  April 20, 2012

                                            Respectfully submitted,

                                            /s/  Josephine Wang
                                            JOSEPHINE WANG
                                            General Counsel

                                            KEVIN H. BELL
                                            Senior Associate General Counsel
                                             For Dispute Resolution

                                            CHRISTOPHER H. LAROSA
                                            Senior Associate General Counsel –
                                             Litigation

                                            SECURITIES INVESTOR
                                            PROTECTION CORPORATION
                                            805 Fifteenth Street, N.W., Suite 800
                                            Washington, D.C.  20005
                                            Telephone: (202) 371-8300
                                            Facsimile: (202) 371-6728
                                            E-mail: jwang@sipc.org
                                            E-mail: kbell@sipc.org
                                            E-mail: clarosa@sipc.org

## CERTIFICATE OF SERVICE

      IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing **SUR-REPLY OF THE SECURITIES INVESTOR PROTECTION CORPORATION IN SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER AFFIRMING TRUSTEE'S DETERMINATIONS DENYING CLAIMS OVER ERISA-RELATED OBJECTIONS** was served this 20th day of April 2012 upon counsel for those parties who receive electronic service through ECF and by electronic mail or United States first class mail, postage prepaid, upon those parties identified in the attachment hereto.

      /s/ Christopher H. LaRosa  
      CHRISTOPHER H. LAROSA