BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Fernando A. Bohorquez, Jr.
Regina L. Griffin

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT<br>SECURITIES LLC,<br><br>               Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of<br>Bernard L. Madoff Investment Securities LLC,<br><br>               Plaintiff,<br><br>    v.<br><br>SAUL B. KATZ, et al.,<br><br>               Defendants. | Adv. Pro. No. 10-05287 (BRL)<br><br>11 Civ.03605 (JSR)(HBP) |

**TRUSTEE'S MOTION AND MEMORANDUM FOR ENTRY OF ORDER**
**PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE**
**AND RULES 2002(a)(3) AND 9019(a) OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE APPROVING SETTLEMENT AGREEMENT**

TO:    THE HONORABLE JED S. RAKOFF
       UNITED STATES DISTRICT JUDGE

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation

of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff,"

and together with BLMIS, the "Debtors"), by and through the Trustee's undersigned counsel,

submits this motion and memorandum (the "Motion") seeking entry of an order, pursuant to

section 105(a) of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code")

and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), approving a settlement ("Settlement"), the terms and conditions of which

are set forth in the Settlement Agreement and Release (the "Agreement")[1] by and among the

Trustee and Saul B. Katz, Fred Wilpon, Mets Limited Partnership, and numerous related

individuals and entities (collectively, the "Defendants")[2] (each of the Trustee and each of the

---

[1] The Agreement with the schedules and exhibit attached is annexed hereto as Exhibit B. To the extent there is any discrepancy between this Motion and the Agreement, the Agreement controls. Capitalized terms not defined herein shall have the meaning set forth in the Agreement.

[2] By Order of this Court dated March 13, 2012 [ECF No. 175], 32 of the Defendants named in the Trustee's Amended Complaint were dismissed from the action as a result of the dismissal of various of the Trustee's claims, as follows: and Sterling Mets Associates, Sterling Mets Associates II, Mets One LLC, Mets Partners, Inc., C.D.S. Corp., Coney Island Baseball Holding Company L.L.C., Brooklyn Baseball Company L.L.C., 157 J.E.S. LLC, Air Sterling LLC, BAS Aircraft LLC, Bon-Mick, Inc., Charles 15 Associates, Charles 15 LLC, Charles Sterling LLC, Ruskin Garden Apartments LLC, SEE Holdings, I, SEE Holdings II, Sterling Brunswick Corporation, Sterling Equities Investors, Sterling Heritage L.L.C., Sterling Jet Ltd., Sterling Jet II Ltd., Sterling PathoGenesis Company, Sterling Third Associates, Valley Harbor Associates, Kimberly Wachtler, Minor 1, Minor 2, Michael Schreier, Realty Associates Madoff II, Sterling American Property III L.P., and Sterling American Property IV L.P. (collectively, "Dismissed Defendants") The remaining defendants in this action are Amy Beth Katz, Arthur Friedman, Bon Mick Family Partners L.P., Bruce N. Wilpon, Charles Sterling Sub LLC, College Place Enterprises LLC, Daniel Wilpon, David Katz, Dayle Katz, Debra Wilpon, Deyva Schreier Arthur, Edward M. Tepper, Elise C. Tepper, Estate of Leonard Schreier, FFB Aviation LLC, Fred Wilpon, Fred Wilpon Family Trust, FS Company L.L.C., Gregory Katz, Heather Katz Knopf, Howard Katz, Iris J. and Saul B. Katz Family Foundation, Inc., Iris Katz, Jacqueline G. Tepper, Jason Bacher, Jeffrey Wilpon, Jessica Wilpon, Judith Wilpon, Judy and Fred Wilpon Family Foundation, Inc., Katz 2002 Descendants' Trust, L. Thomas Osterman, Marvin B.

Defendants a "<u>Party</u>" and collectively, the "<u>Parties</u>").  In support of the Motion, the Trustee

respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Parties' Settlement averted a weeks-long jury trial that was scheduled to

commence on March 19, 2012.  At issue in the trial was the Trustee's recovery of a maximum of

approximately $303 million in withdrawals of principal invested by the Defendants with BLMIS

in the two years prior to commencement of its liquidation proceeding under the Securities

Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("<u>SIPA</u>").[3]  In addition, by this Court's Order

dated March 5, 2012, which granted the Trustee's motion for partial summary judgment, the

Defendants were liable to the Trustee for up to $83,309,162.  The Court indicated that it intended

to determine the amount and apportionment of the judgment debt by subsequent order,

potentially after further court proceedings.  It is certain that any judgment entered following the

trial would have resulted in one or more appeals that could have taken years to resolve.

---

Tepper, Mets II LLC, Mets Limited Partnership, Michael Katz, Natalie Katz O'Brien, Philip
Wachtler, Phyllis Rebell Osterman, Red Valley Partners, Richard Wilpon, Robbinsville Park
LLC, Robin Wilpon Wachtler, Ruth Friedman, Saul B. Katz, Saul B. Katz Family Trust, Scott
Wilpon, SEE Holdco LLC, Sterling 10 LLC, Sterling 15C L.L.C., Sterling 20 LLC, Sterling
Acquisitions LLC, Sterling American Advisors II L.P., Sterling American Property V L.P.,
Sterling Brunswick Seven L.L.C., Sterling DIST Properties LLC, Sterling Equities, Sterling
Equities Associates, Sterling Internal V LLC, Sterling Mets L.P., Sterling Thirty Venture LLC,
Sterling Tracing LLC, Sterling Twenty Five, LLC, Sterling VC IV LLC, Sterling VC V LLC,
Todd Katz, Valerie Wilpon, and Wilpon 2002 Descendants' Trust (collectively, "<u>Remaining
Defendants</u>").  References to the Defendants means collectively the Dismissed Defendants and
the Remaining Defendants in the Action.  Information with respect to investments and receipts
by specific Defendants and account holders with BLMIS is set forth in Schedules 1 and 2 to the
Agreement, as discussed in the Motion.

[3] The approximate $303 million was subject to downward adjustment in accordance with the
Court's March 14, 2012 Order [ECF No. 177], in which the Court ruled that Defendants had the
burden of proving, by a preponderance of the evidence as part of their affirmative defense, that
they received the transfers at issue in good faith.  The Court also indicated that the Trustee's
claim to recover withdrawals of principal was limited to withdrawals of principal invested with
BLMIS within two years of the Filing Date.

3

2.      Indeed, more than the over $386 million in two-year transfers of principal and
"fictitious profits" was at stake in the appellate process when the Trustee's intended appeal of
this Court's Opinion and Order dated September 27, 2011 [ECF No. 40] is taken into
consideration.  By that Opinion and Order, the Court dismissed various claims asserted by the
Trustee against the Defendants, including claims to avoid and recover fictitious profits they
withdrew from BLMIS beyond the two-year period preceding the Filing Date.  The Court also
held that the Trustee could avoid and recover transfers of principal during the relevant two-year
period only if Defendants were "willfully blind" to the BLMIS fraud.

3.      The Agreement represents a good faith, complete, and final Settlement between
the Trustee and the Defendants as to any and all disputes between them on the terms and
conditions as set forth in the Agreement.

4.      Not only have the Parties averted a protracted and expensive trial and lengthy
appeals through the Settlement, but also, and most important to the Trustee, the Settlement
enables the BLMIS customer fund to recoup fictitious profits received by the Defendants during
the six-year period prior to the commencement of BLMIS's SIPA proceeding.  Specifically,
under the Agreement, Defendants will make a settlement payment to the Trustee in the aggregate
sum of $162,000,000.00 ("Settlement Payment").  The Settlement Payment will increase the total
and percentage allocation to allowed claims of customers from the fund of customer property.
Moreover, the Settlement has been structured in such a way as to make the full amount of the
Settlement Payment collectable, despite Defendants' restrictive cash flow and lender covenants,
all of which were key factors that influenced the Trustee's decision to settle on the terms set
forth in the Agreement.  After reviewing the evidence developed during discovery, including
information not available to the Trustee at the time the complaint was filed, and a consideration

of the costs and uncertainty inherent in any litigation and the financial information of the

Defendants, the Trustee, in the exercise of his business judgment, determined that it would not be

appropriate to pursue the willful blindness claim and to resolve the remaining claims by this

Settlement rather than continue to litigate them.  For all of these reasons, the Trustee believes

that the Agreement is fair and in the best interests of the BLMIS customer fund and the Estate.

## BACKGROUND AND RELEVANT PROCEDURAL HISTORY

5.      On December 11, 2008 (the "Filing Date"), the Securities and Exchange

Commission ("Commission") filed a complaint in the United States District Court for the

Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV

10791).  The complaint alleged that the Debtors engaged in fraud through the investment advisor

activities of BLMIS.

6.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the

Commission consented to a combination of its own action with an application of the Securities

Investor Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(3) of SIPA,

SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to

meet its obligations to securities customers as they came due and, accordingly, its customers

needed the protection afforded by SIPA.

7.      On that date, the District Court entered the Protective Decree, to which BLMIS

consented, which, in pertinent part:

> (i)     appointed the Trustee for the liquidation of the business of BLMIS
>         pursuant to section 78eee(b)(3) of SIPA;
>
> (ii)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to
>         section 78eee(b)(3) of SIPA; and
>
> (iii)   removed the case to the United States Bankruptcy Court ("Bankruptcy
>         Court") pursuant to section 78eee(b)(4) of SIPA.

8.      At a plea hearing (the "Plea Hearing") on March 12, 2009, in the criminal action

filed against him by the United States Attorney's Office for the Southern District of New York,

Madoff pleaded guilty to an 11-count criminal information, which included securities fraud,

money laundering, theft and embezzlement counts.  At the Plea Hearing, Madoff admitted that

he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."  (Plea Hr'g Tr.

at 23:14-17).  On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

9.      On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff.

On June 9, 2009, the Bankruptcy Court entered an order substantively consolidating the chapter

7 estate of Madoff into BLMIS's estate in the SIPA liquidation proceeding (the consolidated

Madoff and BLMIS estates collectively are referred to as the "BLMIS Estate").

10.     On or about June 18, 2009, certain Defendants filed customer claims against the

BLMIS Estate in connection with the BLMIS accounts.

11.     On December 7, 2010, the Trustee filed a multi-count complaint in the

Bankruptcy Court (the "Action"), which was subsequently amended on March 18, 2011

("Amended Complaint") and which asserted claims against Defendants pursuant to sections 544,

547, 548, 550, 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), the New York Fraudulent

Conveyance Act (New York Debtor and Creditor Law (§§ 273-279) and the New York Civil

Procedures Law.  [Bankr. ECF Nos. 1 and 34].   Specifically, the Trustee's Amended Complaint

sought, among other relief, to avoid and recover all transfers of fictitious profits from BLMIS to

Defendants from the beginning of their investment relationship with BLMIS until December 11,

2008, as well as all transfers of principal from BLMIS to Defendants during the six years prior to

the commencement of the SIPA proceeding.  Since the litigation commenced, Defendants have

disputed any liability to the BLMIS Estate under all counts alleged in the Trustee's Amended

Complaint, including any liability as to transfers of fictitious profits.

12.    On March 20, 2011, Defendants filed a motion in the Bankruptcy Court to dismiss

the Amended Complaint or, in the alternative, for summary judgment ("Motion to Dismiss").

[Bankr ECF No. 56]

13.    On May 26, 2011, Defendants filed a motion to withdraw the reference of the

matter to the District Court, [ECF No. 1], and by Order dated July 5, 2011 [ECF No. 19], this

Court granted the motion and withdrew the automatic reference of the adversary proceeding to

the Bankruptcy Court for all purposes.  Since that date, the litigation has proceeded before this

Court.  Certain other salient opinions and orders affecting the outcome of the litigation are

mentioned below.

14.    By Order dated July 12, 2011 ("Bankruptcy Court's Allocation Order") [Bankr.

ECF No. 4217], the Bankruptcy Court approved the Trustee's initial allocation of property to the

customer property fund and authorized the Trustee to make an interim distribution to customers.

Pursuant to that Order, on or about October 5, 2011, the Trustee made a first interim distribution

to customers holding allowed claims as of September 30, 2011, in the approximate amount of

4.602% per dollar of their allowed claims.  No Defendant held an allowed claim as of that date,

and, therefore, no Defendant received a distribution at that time.

15.    By Opinion and Order dated September 27, 2011 [ECF No. 40], this Court

granted in part and denied in part the Defendants' Motion to Dismiss, dismissing various claims

alleged by the Trustee in the Amended Complaint, with the exception of Count 1, which sought

to avoid, pursuant to section 548(a)(1)(A) of the Bankruptcy Code, alleged intentional fraudulent

transfers from BLMIS to Defendants, and Count 11, which sought to equitably subordinate

7

Defendants' customer claims pursuant to section 510(c) of the Bankruptcy Code. By Order

dated September 28, 2011 [ECF No. 41], the Court sought further briefing from the Parties as to

how to calculate principal and profit during the relevant two-year period.

16.     By Opinion and Order dated January 17, 2012 [ECF No 78], this Court denied the

Trustee's motion to have certain key, adverse rulings addressing provisions of the Bankruptcy

Code certified for interlocutory appeal under 28 U.S.C. § 1292(b) or, alternatively, to have the

Court enter a final judgment as to those rulings under Federal Rule of Civil Procedure 54(b). By

that Opinion and Order, the Court also *sua sponte* reconsidered, and reversed, in part, its prior

decision to dismiss Count 9 of the Trustee's Amended Complaint, thereby reinstating the

Trustee's claim to recover subsequent transfers pursuant to section 550(a) of the Bankruptcy

Code in accordance with the Court's September 27, 2011 order.

17.     As discussed above, by Order dated March 5, 2012 [ECF No. 142], the Court

granted the Trustee's motion for partial summary judgment on the ground that Defendants did

not provide "value" to BLMIS in return for transfers of fictitious profits they received. By the

same Order, the Court denied Defendants' motion for summary judgment.

18.     Since the Bankruptcy Court's Order on February 10, 2011 [Bankr. ECF No. 19]

appointing former Governor Mario Cuomo as mediator, the Parties have met face-to-face on

several occasions, and each Party at times has separately met with the mediator to discuss in

good faith the prospects for settlement. The Parties also conducted frequent settlement

negotiations by telephone. Despite proceeding at a rapid pace on all fronts to prepare for trial,

including the preparation of documentary and testamentary evidence, contested pretrial motions

and other submissions required under this Court's Individual Rules, the preparation of expert and

lay witnesses for trial, the negotiations not only contemporaneously continued, but also intensified as the trial date drew closer.

19.     After extensive negotiations, the Parties reached a compromise. On March 16, 2012, counsel for the respective Parties signed a Memorandum of Understanding ("MOU") that was disclosed and filed on March 19, 2012 [ECF No. 180]. A copy of the MOU is attached to this Motion as Exhibit A. Even though binding and enforceable by its terms, the Parties' obligations as set forth in the MOU were made subject to Court approval pursuant to Bankruptcy Rule 9019, to be sought by no later than April 13, 2012, and any required lender approvals to be obtained by no later than that same date. The Parties also agreed to work expeditiously and in good faith to enter into definitive documentation reflecting the terms of the MOU and other terms customary for such agreements. The Agreement, including all schedules and the exhibit attached thereto and incorporated therein, is the definitive document that reflects all of the terms and conditions of the Parties' Settlement. As noted above, a copy of the Agreement is attached as Exhibit B to this Motion.

### THE TRUSTEE'S CLAIMS AGAINST DEFENDANTS

20.     To fulfill his statutory investigative obligation, 15 U.S.C. § 78fff-1(d), the Trustee, assisted by his counsel and consultants, investigated the investments and withdrawals by the Defendants. That investigation included, without limitation, the review and analysis of Defendants' transactional histories as reflected on the BLMIS account statements; correspondence and other records and documents available to the Trustee; interviews with third-parties, some of whom may have been called to testify at trial, a substantial review of third-party records and documents, and documents and testimony provided by certain Defendants under Bankruptcy Rule 2004.

Case 1:11-cv-03605-JSR   Document 185   Filed 05/04/12   Page 10 of 20

21.    As a result of that investigation, the Trustee determined that in the aggregate
Defendants withdrew $162,726,768 in excess of their principal investments within six years
before the Filing Date (the "Alleged Six-Year Profits").  Under the Parties' Settlement, the
amount of the Alleged Six-Year Profits has been rounded to $162,000,000.

22.    A detailed schedule of the Alleged Six-Year Profits reflecting the relevant BLMIS
account number, the account holder's name, the Defendant or Defendants related to each such
BLMIS account, the amount of the Alleged Six-Year Profits by account, and each Defendant's
proportionate (percentage) share of the Alleged Six-Year Profits is attached as Schedule 2 to the
Agreement.  *See* Schedule 2 to Exh. B to this Motion.

## DEFENDANTS' CLAIMS AGAINST THE BLMIS ESTATE

23.    Defendants filed numerous customer claims against the BLMIS Estate, including
with respect to accounts in which they had deposited more money than they had withdrawn.
Such accounts are sometimes referred to as "net loser" accounts.  A schedule of Defendant "net
loser" accounts reflecting the specific account number, account holder's name, the net equity in
each account, and the claim number that identifies the claim filed by each account holder is
attached as Schedule 1 to the Agreement.  *See* Schedule 1 to Exh. B to this Motion.

24.    On March 1, 2010, the Bankruptcy Court issued an opinion affirming the
Trustee's "net equity" calculation of customer claims as the difference between the amounts a
customer invested with BLMIS and the amounts that customer withdrew from BLMIS (the "Net
Investment Method").  On March 8, 2010, the Bankruptcy Court entered an order [Bankr. ECF
No. 2020], implementing the decision and certifying it for immediate appeal to the United States
Court of Appeals for the Second Circuit, which on August 16, 2011, upheld the Trustee's use of
the Net Investment Method as the proper basis for allowing customer claims in *In re Bernard L.
Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011) ("Second Circuit Net Equity Order"), *petition*

for cert. filed, Sterling Equities Assoc. v. Picard, No. 11-968, 2012 WL 396523 (Feb. 3, 2012).

Consistent with the Second Circuit Net Equity Order, the Trustee has determined the

Defendants' net equity claims in accordance with the Net Investment Method in the amount of

$177,563,039.08 (collectively, the "Defendant Net Equity Claims").

## OVERVIEW OF THE AGREEMENT

25.     Certain salient terms and conditions of the Agreement are briefly summarized

below.  As stated above, the Agreement is attached as Exhibit B and should be reviewed for a

complete account of other important terms, including with respect to mutual releases and the

representations and warranties of the Parties.

**Settlement Payment and Means of Satisfaction:**

26.     The Settlement Payment will be satisfied during the five, twelve-month periods

following the Effective Date ("Settlement Payment Term").  Following the Effective Date, the

Parties shall agree to specific dates for each period of the Settlement Payment Term, it being

understood that the first period shall run twelve months from the Effective Date and the second

through fifth periods shall each run twelve months following the end of the immediate prior

twelve-month period.  The first of such twelve-month periods shall be referred to as the "First

Period"; the second twelve-month period shall be referred to as the "Second Period"; and so on

through and including the "Fifth Period."  During the Settlement Payment Term, the Settlement

Payment may be made from multiple sources, as follows:

(a)     Assignment of Defendant Net Equity Claims.  Each Defendant

unconditionally and irrevocably shall assign to the Trustee by written assignment (each an

"Assignment" and collectively, the "Assignments") his, her or its Defendant Net Equity Claim

(collectively, the "Assigned Claims").

11

       (i)      The Trustee will allow the Defendant Net Equity Claims, which will then be entitled to 100% of all distributions made by the Trustee from BLMIS customer property or any other source of funds available to satisfy the claims of "good faith" customers of BLMIS (collectively, the "Assigned Claim Recoveries"), meaning customers that were not complicit in the fraud that BLMIS perpetrated on its customers, except that Defendant Net Equity Claims will not be entitled to receive an advance from SIPC, as provided for in 15 U.S.C. § 78fff-3.

       (ii)     Specifically, without limitation, the Assigned Claim Recoveries will be entitled to a distribution (x) from any forfeiture fund established by the U.S. Department of Justice pursuant to 28 C.F.R. Part 9, up to the amount of the Settlement Payment, and (y) of the 4.602% "catch- up" distribution in the approximate amount of $8,171,451 ("Catch-Up Payment") pursuant to the Bankruptcy Court's Allocation Order but not paid to the Defendants' Net Equity Claims.

       (iii)    In connection with any distribution made in respect of the Assigned Claims, the Trustee shall immediately and automatically apply any and all Assigned Claim Recoveries to reduce Defendants' obligations in respect of the Settlement Payment on a dollar-for-dollar basis.  Promptly thereafter (but not later than seven (7) calendar days), the Trustee shall provide written notice to Defendants (x) of any remaining balance of the Settlement Payment after Assigned Claim Recoveries have been so applied, and (y) if/when the Settlement Payment is fully satisfied.

       (iv)    During the First through the Third Periods of the Settlement Payment Term, Defendants' payment obligations pursuant to this Agreement are limited solely to Assigned Claim Recoveries, and, during such periods, no Defendant is obligated to make any

payment in excess of or in addition to Assigned Claim Recoveries. Upon full satisfaction of the
Settlement Payment at any time during the Settlement Payment Term, the Trustee shall promptly
(but not later than seven (7) calendar days) re-assign the Assigned Claims to Defendants by
executing and delivering an assignment to each of the Defendants or their designee(s), limited to
a maximum, potential recovery of the difference between the value of the aggregate amount of
the Defendant Net Equity Claims and the value of the Defendant Net Equity Claims previously
applied to reduce Defendants' obligations in respect of the Settlement Payment (such difference
being the "Tail Payment"). Upon full satisfaction of the Settlement Payment, Defendants shall
be entitled to receive any distributions in respect of Defendant Net Equity Claims up to the
amount of the Tail Payment on the same basis as "good faith" customers of BLMIS, including
any distribution made after the end of the Fifth Period.

        (v)     For the avoidance of doubt, unless and until the Settlement
Payment is fully satisfied, the Trustee shall have no obligation to re-assign the Assigned Claims
to the Defendants and the Defendants shall not be entitled to receive all or any part of the Tail
Payment.

        (b)     Defendants' Installment Payments. If the Settlement Payment is not fully
satisfied after applying all of the Assigned Claim Recoveries during the First through the Third
Periods of the Settlement Payment Term, the remaining unpaid amount (the "Remaining
Amount") shall be divided into two equal annual installments to be paid no later than the end of
the Fourth and Fifth Periods of the Settlement Payment Term. The Trustee shall immediately and
automatically apply any Assigned Claim Recoveries to the next due installment during the
Fourth and Fifth Periods of the Settlement Payment Term to reduce the Remaining Amount. If
the Trustee receives Assigned Claim Recoveries during the Fourth Period over the amount

necessary to satisfy the installment payment due in the Fourth Period, the Trustee will apply the

excess to the installment due in the Fifth Period.  The installment payments shall be made by

wire transfer of immediately available funds in accordance with written instructions provided by

the Trustee to Defendants no later than thirty (30) days prior to the relevant payment date.

> (c)    Each Defendant shall be responsible, on a several and not joint basis, for

his, her, or its proportionate share of the Remaining Amount in proportion to his, her, or its

proportionate share of the Alleged Six-Year Profits.  With respect to accounts held jointly or as

tenants in common, each Defendant shall be responsible, on a several and not joint basis, for his,

her, or its proportionate share of that account's proportionate share of the Remaining Amount. A

detailed schedule of the Alleged Six-Year Profits reflecting the relevant BLMIS account number,

the account holder's name, the Defendant or Defendants related to each such BLMIS account,

the amount of the Alleged Six-Year Profits by account, and each Defendant's proportionate

(percentage) share of the Alleged Six-Year Profits is attached as Schedule 2 to the Agreement.

> (d)    <u>Fred Wilpon and Saul Katz Guarantee</u>.  Fred Wilpon and Saul Katz

("<u>Guarantors</u>"), jointly and severally, irrevocably and unconditionally, and regardless of which

Defendant fails to pay his, her, or its proportionate share of the Remaining Amount, hereby

guarantee payment of the Remaining Amount owed to the Trustee up to an aggregate amount of

Twenty-Nine Million United States Dollars ($29,000,000) (the "<u>Guarantee</u>").  The Trustee shall

not recover on the Guarantee unless a Defendant has not paid in full his, her, or its proportionate

share of the Remaining Amount at the end of the Fourth and/or Fifth Periods of the Settlement

Payment Term.  If a Defendant does not pay his, her, or its proportionate share of the Remaining

Amount when it is due, the Trustee shall, within three (3) business days, make a written demand

14

of the Guarantors, who shall promptly (but not later than three (3) business days from the date of the Trustee's written demand) satisfy the demand.

(e)    Following the Effective Date, the Parties shall agree to specific dates for each of the First through the Fifth Periods of the Settlement Payment Term as follows:

| |
|---|
| EFFECTIVE DATE:  [Month/Date/2012] |
| END OF FIRST PERIOD:  Twelve calendar months following the Effective Date, or [Month/Date/2013] |
| END OF SECOND PERIOD:  Twelve calendar months following the end of the First Period, or [Month/Date/2014] |
| END OF THIRD PERIOD:  Twelve calendar months following the end of the Second Period, or [Month/Date/2015] |
| END OF FOURTH PERIOD:  Twelve calendar months following the end of the Third Period, or [Month/Date/2016] |
| END OF FIFTH PERIOD:  Twelve calendar months following the end of the Fourth Period, or [Month/Date/2017] |

(f)    The Trustee will continue to apply any Assigned Claim Recoveries that he receives during the Fourth and Fifth Periods of the Settlement Payment Term to reduce the Remaining Amount and to that extent thereby reduce the respective obligations of (i) the Defendants to pay the Remaining Amount, and (ii) Fred Wilpon's and Saul Katz's obligation under their Guarantee.

**Access to Financial Information**

27.    Pursuant to the terms of the MOU, Defendants agreed to provide the Trustee with reasonable access to financial information to enable the Trustee to confirm the financial basis for the Settlement and the representations made by Defendants in that regard.  In particular, Defendants represented (a) that they did not have near-term liquidity to fund a $162 million aggregate cash settlement and (b) that restrictive loan covenants precluded further borrowings

against assets.  The access to financial information afforded the Trustee by Defendants in accordance with the MOU confirmed these representations.

**Conditions**

28.     Defendants' obligations under the Agreement are subject to lender approvals to be obtained by no later than April 13, 2012.  The Agreement is subject to approval under Bankruptcy Rule 9019 by the District Court and the entry of the District Court's order approving the terms of this Agreement ("Approval Order").  A hearing before this Court to consider approval of the Agreement will be scheduled to occur as soon as practicable after April 13, 2012.

**Termination of Litigation**

29.     On or as soon as practical after the Effective Date, the Parties will file a stipulation of dismissal dismissing the Action with prejudice and without cost to any Party. Within three (3) business days after the Effective Date, Defendants shall withdraw their petition for a writ of *certiorari* filed with the United States Supreme Court from the Second Circuit Net Equity Order.  Except for certain exceptions set forth in the Agreement, Defendants agree not to pursue or join any other litigation involving the Trustee or SIPC arising out of or relating to BLMIS, Madoff, their liquidation proceeding and the BLMIS Estate, including filing any motion, memorandum or other court document in any BLMIS-related litigation to which they are not a party.  The Parties have agreed not to make any disparaging statement with respect to each other or the Settlement.

**Defendant General Creditor Claims**

30.     The Trustee has agreed to treat the Defendant General Creditor Claims, as defined in the Settlement Agreement, on the same basis as he treats the same types of claims asserted by "good faith" customers, including with respect to any recoveries to which such claims may be entitled.

08-01789-cgm Doc 4799-3 Filed 05/04/12 Entered 05/04/12 18:59:03 Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105 Pg 17 of 170

Case 1:1-cv-03605-JSR Document 185 Filed 05/04/12 Page 97 of 20

31.     As a result of the Trustee's and his counsel's investigation, and the Parties'

successful negotiations, aided by the Bankruptcy Court-appointed mediator, and after thorough

and deliberate consideration of the uncertainty, costs and risks inherent in all litigation, the

Trustee, in the exercise of his business judgment, determined that it was appropriate to reach a

business resolution in light of all of the facts and circumstances.

## RELIEF REQUESTED

32.     By this Motion, the Trustee respectfully requests that the Court enter an order,

substantially in the form of the proposed order annexed to this Motion as Exhibit C approving

the Settlement as memorialized in the Agreement.

## LEGAL DISCUSSION

33.     Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement." Courts have

held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), the

court should find that the compromise proposed is fair and equitable, reasonable, and in the best

interests of a debtor's estate. *Air Line Pilots Assoc., Int'l v. Am. Nat'l Bank & Trust Co. of

Chicago (In re Ionosphere Clubs, Inc.)*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F. 3d 600

(2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

Anderson*, 390 U.S. 414, 424 (1968)).

34.     The Second Circuit has stated that in determining whether to approve a

compromise, the court should not decide the numerous questions of law and fact raised by the

compromise, but rather should "canvass the issues and see whether the settlement 'fall[ s]below

the lowest point in the range of reasonableness."" *Cosoff v. Rodman (In re W T. Grant Co.)*, 699

F.2d 599, 608 (2d Cir.), *cert. denied Cosoff v. Romon*, 464 U.S. 822 (1983) (quoting *Newman v.

Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied* 409 U.S. 1039 (1972)); *see also In re Chemtura*,

439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010).   "[T]he court need not conduct a 'mini-trial' to

determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.,* 150 BR

519, 522 (S.D.N.Y. 1993).

35.    The factors that courts in the Second Circuit consider when approving bankruptcy

settlements are well established.  These interrelated factors are:

> (1) the balance between the litigation's possibility of success and
> the settlement's future benefits; (2) the likelihood of complex and
> protracted litigation, with its attendant expense, inconvenience, and
> delay, including the difficulty in collecting on the judgment; (3)
> the paramount interests of the creditors, including each affected
> class's relative benefits and the degree to which creditors either do
> not object to or affirmatively support the proposed settlement; (4)
> whether other parties in interest support the settlement; (5) the
> competency and experience of counsel supporting, and [t]he
> experience and knowledge of the bankruptcy court judge
> reviewing, the settlement; (6) the nature and breadth of releases to
> be obtained by officers and directors; and (7) the extent to which
> the settlement is the product of arm's length bargaining.

*Fox v. Picard (In re Madoff),* No. 10 Civ. 4652 (JGK), 2012 WL 990829, at *15 (S.D.N.Y.

March 26, 2012) (quoting *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re*

*Iridium Operating LLC),* 478 F.3d 452, 462 (2d Cir. 2007) (internal quotation marks and

citations omitted)).

36.    Even though the Court has discretion to approve settlements and must

independently evaluate the reasonableness of the settlement, *In re Rosenberg,* 419 B.R. 532, 536

(Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be

considered in determining whether a settlement is fair and equitable.  *In re Chemtura Corp.,* 439

B.R. at 594.  Finally, the Court should be mindful of the principle that "the law favors

compromise." *Vaughn v. Drexel Burnham Lambert Group, Inc.( In re Drexel Burnham Lambert*

*Group, Inc.),* 134 B.R at 499, 505 (quoting *In re Blair,* 538 F.2d 849, 851 (9th Cir. 1976)).

37.     This Court has presided over robust pre-trial motions in which the Parties have

extensively outlined the facts and the law in support of and in opposition to the Trustee's claims,

which have informed the Court of the Parties' relative positions.  In light of the posture of this

litigation, the Court can readily evaluate the factors discussed in paragraph 35 above and

determine that each of the factors analyzed in light of the facts of this matter overwhelmingly

supports approval of the Agreement.  The Court also has observed and heard from experienced

counsel who have advised the Parties in this matter, negotiated the MOU and the Agreement, and

who seek the Court's approval of the Agreement.

38.     The Settlement is fair and equitable and in the best interests of the BLMIS fund of

customer property and the Estate.  *See* Affidavit of Irving H. Picard in Support of the Motion

(the "Picard Af'd"), ¶12, a true and accurate copy of which has been filed contemporaneously

with this Motion.  Overall, the terms of the Agreement fall well above the lowest point in the

range of reasonableness and all of the following considerations influenced the Trustee's decision

to settle:

(a)     Benefit to Customer Fund.  The Agreement enables the Trustee to increase

the fund of customer property by the $162 million Settlement Payment, an amount that far

exceeds the maximum aggregate amount of $83,309,162 of two-year transfers of "fictitious

profits" to which the Trustee was entitled under the Court's summary judgment ruling.  Picard

Af'd ¶7.  Upon the Effective Date, the Assigned Claims will be entitled to the Catch-Up

Payment in the approximate amount of $8,171,451, which will immediately increase the fund of

customer property while simultaneously and automatically reducing Defendants' Settlement

Payment by that same amount.  *Id.* ¶9.  The BLMIS customer property fund similarly will benefit

each time the Trustee makes a further interim distribution during the Settlement Payment Term.
*Id.*

> (b) <u>Administrative Efficiency</u>. Through the Assignments, administering the

distributions to the Assigned Claims becomes virtually an electronic book entry, which facilitates

a contemporaneous paydown of Defendants' Settlement Payment with a commensurate increase

to the BLMIS customer fund. *Id.* The Assignments thus enable the Assigned Claims to be

centrally controlled by the Trustee, which is efficient and less costly. *Id.*

> (c) <u>Avoidance of the Cost and Delay of Further Litigation</u>. The Agreement

eliminates the expense and delay of the actual trial with the Defendants that would have lasted at

least two weeks, and the Parties' counsel working close to around the clock during that time. *Id.*

¶6. The Agreement eliminates the disruption that the trial would cause to the numerous

witnesses who would be standing by. The Agreement also eliminates the inevitable delay caused

by appeals from judgments entered by this Court in this proceeding, which benefits the BLMIS

fund of customer property and the Estate as a whole. *Id.* Regardless of which side prevailed at

trial, an appeal would have been taken from a final judgment and perhaps cross appeals. *Id.*

> (d) <u>Financial Considerations</u>. As discussed above, in accordance with the

MOU, Defendants have afforded counsel for the Trustee access to certain financial information

to confirm the financial basis for the Settlement and Defendants' representations related thereto.

Through review of the information made available to the Trustee's counsel, the Trustee has

confirmed Defendants' representations and the financial basis for the settlement. *Id.* ¶8.

Defendants' lack of near-term liquidity and restrictive lender covenants were factors bearing on

the Trustee's determination that the Settlement was the best means of recovering fictitious profits

received by Defendants and thereby increasing the fund of customer property. *See Id.* With

collectability of a favorable judgment in doubt, the Trustee found a way to structure the

Settlement from multiple payment sources that are not solely dependent upon the Defendants'

financial resources but rather on the Trustee's own ability to maximize the BLMIS customer

fund.  *Id.*¶9.  The Settlement is a practical and fair compromise of complex litigation that will

increase the fund of customer property and thus in the best interests of customers holding

allowed claims. *See Id.* ¶12.

> (e)   Finality.  The Agreement puts a final end to the Trustee's litigation against

Defendants and to Defendants' participation in any litigation involving the Trustee and the

BLMIS liquidation proceedings and achieves peace.  *Id.* ¶11.  The Parties undertook good faith

settlement negotiations that culminated with the signing of the MOU.  Even though Defendants'

agreement not to pursue further the appeal from the Second Circuit Net Equity Order, for

example, alone will not enable the Trustee to free funds that he holds in reserve pending the

outcome of appeals from favorable settlements, the Settlement is another positive step toward the

Trustee's goal of  distributing as much of the customer fund as possible, as soon as possible, to

innocent investors from the approximate $9 billion in recoveries and agreements to recover that

the Trustee and his counsel have achieved to date. *See Id.*  The Trustee still must maintain

sufficient reserves in case the Second Circuit's decision should be reversed and the claims of

"net winner" customers that have been denied to date become allowable and eligible for a

distribution from the customer fund. *See Id.*

39.    For all of the reasons discussed above, the Agreement is well within the "range of

reasonableness," *In re W.T. Grant Co.*, 699 F.2d at 608 (quoting *Newman v. Stein*, 464 F.2d at

693), and confers a substantial benefit on the BLMIS fund of customer property and the Estate.

The Trustee respectfully requests that the Court approve the Agreement.  *Id.*¶12.

08-01789-cgm Doc 4799-2 Filed 05/04/12 Entered 05/04/12 18:59:03 Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105  Pg 22 of 170
Case 11-cv-03605-JSR Document 85 Filed 05/04/12 Page 22 of 26

## NOTICE

40.    In accordance with Bankruptcy Rules 2002 and 9019, and the Order Establishing Notice Procedures and Limiting Notice entered by the Bankruptcy Court on December 5, 2011 ("Bankruptcy Court's Order Limiting Notice") [Bankr. ECF. No. 4560], notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) Davis Polk & Wardwell LLP, Attn: Robert F. Wise, Jr., Esq., 450 Lexington Avenue, New York, NY 10017.  Also in accordance with the Bankruptcy Court's Order Limiting Notice, the Trustee has provided notice by e-mail to interested parties in the SIPA liquidation proceeding pending before the Bankruptcy Court of the following:  the Motion filed with this Court and the ECF No. of the Motion on this Court's docket, together with the Case No. assigned by this Court; the date and time scheduled for the hearing at which this Court will consider the Motion; the date by which objections, if any, must be filed with this Court, and the name and address of the persons to be served with a copy of any objections.

WHEREFORE, the Trustee respectfully requests entry of an order substantially in the form of Exhibit C granting the relief requested in the Motion.

Respectfully submitted,

Dated: April 13, 2012
New York, New York

/s/ David J. Sheehan
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Fernando A. Bohorquez, Jr.
Email: fbohorquez@bakerlaw.com
Regina L. Griffin
Email: rgriffin@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
Bernard L. Madoff*

# EXHIBIT A

08-01789-smb Doc 4799-3 Filed 05/04/12 Entered 05/04/12 18:59:03 Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 1051 Pg 25 of 170

Case 1:11-cv-03605-JSR Document 185 Filed 05/04/12 Page 2 of 4

*Picard v. Katz, The Mets Ltd. Partnership*

*Docket as a:*

*11 civ 3605 (JSR)*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/12

## Memorandum of Understanding

The Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Defendants (the "Defendants") in the litigation (the "Madoff Litigation") captioned *Picard v. Katz, et al*, Civ. 03605 (JSR), agree to a final settlement (the "Settlement") on the terms set forth below.

1. <u>Legally Binding Agreement</u>. This agreement, which is made as of March 16, 2012, (the "Agreement") sets forth all of the material terms of the Settlement and is intended to be legally enforceable and binding on the parties.

2. <u>Mutual Releases</u>. The Trustee and the Defendants will release each other from any and all claims that have been or could have been asserted in the Madoff Litigation or any other present or future litigation or proceeding relating to or arising out of the liquidation of BLMIS (the "Trustee Claims"). Such releases shall exclude any claim arising out of the enforcement of this Agreement.

3. <u>Payment Obligations</u>. The Defendants will pay or cause to be paid to the Trustee an aggregate amount of $162 million (the "Settlement Payment"). The Settlement Payment will be made as follows:

   (a) The Defendants will unconditionally and irrevocably assign to the Trustee 100% of all recoveries in respect of their Customer Claims from any source, including from any forfeiture fund established by the U.S. Department of Justice pursuant to 28 C.F.R. Part 9 ("Customer Claim Recoveries"), up to and including the amount of the Settlement Payment during the five years from the date of court approval of this Agreement. For the avoidance of doubt, the Defendants will be entitled to retain any Customer Claim Recoveries in excess of the Required Payment.

   (b) During the first three years after the date of court approval of this Agreement, the Defendants' payment obligation hereunder is limited to Customer Claim Recoveries (i.e., during such three year period, the Defendants will be under no obligation to make any payments in excess of Customer Claim Recoveries).

   (c) If by the end of the third year, the payments to the Trustee from Customer Claim Recoveries have not satisfied the Settlement Payment, the remaining unpaid amount (the "Remaining Amount") shall be divided into two equal annual installments payable by Defendants at the end of the fourth and fifth years, less any additional Customer Claim Recoveries received and assigned to the Trustee during those years. Subject to paragraph 5 below, payment obligations pursuant to this clause (c) will be several, not joint, among the Defendants proportional to the respective "six year fictitious profits" claims against each Defendant, as set forth in the Madoff Litigation.

4. <u>Claims Against Madoff Estate and Similar Matters</u>. The Defendants' Customer Claims shall be allowed in full and will be entitled to full recovery thereon on the same basis as all other "good faith" BLMIS customers, except that (i) SIPC will not be obligated to "advance" funds to the

Defendants pursuant to SIPA Section 78 fff-3 and (ii) Customer Claim Recoveries will be assigned
as set forth above. "Customer Claims" means all claims of any Defendant against the BLMIS
Estate, the fund for victims of BLMIS established by the U.S. Department of Justice or any similar
fund for the benefit of BLMIS customers. The parties agree that Defendants' Customer Claims
total approximately $178 million.

5. Guarantee. Fred Wilpon and Saul Katz, jointly and severally, and on behalf of all
Defendants, will irrevocably and unconditionally guarantee the payment of the Remaining Amount
up to a total aggregate amount of $29 million.

6. Termination of Litigation. The parties will stipulate to the dismissal with prejudice of
the Madoff Litigation. The Defendants agree to terminate and not pursue any other litigation
involving the Trustee or SIPC arising out of or relating to BLMIS, including the "net equity"
appeal.

7. Announcements. The announcement of the Settlement will include a statement by the
Trustee that he has reviewed the evidence and determined that he will no longer pursue the willful
blindness claim against Defendants. All parties agree not to make any disparaging statement with
respect to each other or the Settlement.

8. Access to Information. From and after the date hereof until April 13, 2012, the
Defendants will provide the Trustee with reasonable access to information that enables the Trustee
to confirm the financial basis for the Settlement and the representations of the Defendants.

9. Conditions. Notwithstanding any provision of this Agreement to the contrary, the
obligations of the Trustee are subject to the approval of the Settlement by the District Court
pursuant to Bankruptcy Rule 9019. Notwithstanding any provision of this Agreement to the
contrary, the obligations of the Defendants under this Agreement are subject to the receipt of all
required lender approvals. The parties will seek to obtain the required approvals as expeditiously
as possible, but in no event later than April 13, 2012.

10. Definitive Documentation. The parties will work in good faith to enter into definitive
documentation reflecting the terms set forth above and other terms customary for agreements of
this type as expeditiously as reasonably possible, but in no event later than April 13, 2012. In the
event that the parties are not able to reach agreement with respect to any terms of the definitive
documentation by such date, those terms will be resolved through a process of binding arbitration,
with the arbitration to be conducted by a lawyer selected by former Governor Mario Cuomo. The
arbitrator's obligation will be to resolve any disagreement by reference the terms that are
customary for agreements of this type. Regardless of whether any terms are to be resolved through
arbitration, the Settlement shall be binding on the parties.

11. Governing Law. This Agreement will be governed by and construed in accordance
with the laws of the State of New York without regard to the conflict of law rules thereof that
would provide for the application of the law of any other jurisdiction, and each party consents to
the exclusive jurisdiction of the United States District Court for the Southern District of New York
with respect to any matter arising out of, or relating to, the Settlement.

12. Miscellaneous. This Agreement shall be binding upon and inure to the benefit of each
party hereto and their respective successors, heirs, personal representatives and estates. This

Agreement may be signed in any number of counterparts, each of which shall be deemed an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

For the SIPA Trustee for the Liquidation of Bernard L. Madoff Securities LLC

By: _____
      David J. Sheehan

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200

*Attorneys for Irving H. Picard, Esq.*
*Trustee for the Substantively*
*Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment*
*Securities LLC And Bernard Madoff*

For the Defendants

By: _____
      Robert F. Wise, Jr.

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendants*

# EXHIBIT B

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 29 of 170
Case 1:11-cv-03608-JSR   Document 185-2   Filed 04/18/12   Page 2 of 170

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IRVING H. PICARD,  :
 :
            Plaintiff,  :
 :
      - against -  :    11-CV-03605 (JSR)(HBP)
 :
SAUL B. KATZ, et al.,  :
 :
            Defendants.  :
 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made and entered into as

of April 13, 2012, by and among Irving H. Picard ("Trustee"), in his capacity as the trustee for

the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et*

*seq.* ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the

substantively consolidated estate of Bernard L. Madoff ("Madoff"), and Saul B. Katz, Fred

Wilpon, Richard Wilpon, Michael Katz, Jeffrey Wilpon, David Katz, Gregory Katz, Arthur

Friedman, L. Thomas Osterman, Marvin B. Tepper, Estate of Leonard Schreier, Jason Bacher,

Mets Limited Partnership, Sterling Mets L.P., Mets II LLC, FS Company L.L.C., Bon Mick

Family Partners L.P., Charles Sterling Sub LLC, College Place Enterprises LLC, FFB Aviation

LLC, Iris J. and Saul B. Katz Family Foundation Inc., Judy and Fred Wilpon Family Foundation,

Inc., Red Valley Partners, Robbinsville Park LLC, SEE Holdco, LLC, Sterling 10 LLC, Sterling

15C L.L.C., Sterling 20 LLC, Sterling American Advisors II L.P., Sterling Brunswick Seven

L.L.C., Sterling DIST Properties LLC, Sterling Equities, Sterling Equities Associates, Sterling

Internal V LLC, Sterling Thirty Venture LLC, Sterling Tracing LLC, Sterling Twenty Five LLC,

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 30 of 170

Case 1:11-cv-03608-JSR   Document 85-2   Filed 04/18/12   Page 3 of 70

Sterling VC IV LLC, Sterling VC V LLC, Saul B. Katz Family Trust, Fred Wilpon Family Trust,

Katz 2002 Descendants' Trust, Wilpon 2002 Descendants' Trust, Iris Katz, Judith Wilpon, Dayle

Katz, Debra Wilpon, Valerie Wilpon, Amy Beth Katz, Heather Katz Knopf, Howard Katz,

Natalie Katz O'Brien, Todd Katz, Bruce N. Wilpon, Daniel Wilpon, Jessica Wilpon, Robin

Wilpon Wachtler, Philip Wachtler, Scott Wilpon, Ruth Friedman, Phyllis Rebell Osterman, Elise

C. Tepper, Jacqueline G. Tepper, Edward M. Tepper, Devya Schreier Arthur, Sterling

Acquisitions LLC, and Sterling American Property V L.P. (collectively the "Remaining

Defendants"), and Sterling Mets Associates, Sterling Mets Associates II, Mets One LLC, Mets

Partners, Inc., C.D.S. Corp., Coney Island Baseball Holding Company L.L.C., Brooklyn

Baseball Company L.L.C., 157 J.E.S. LLC, Air Sterling LLC, BAS Aircraft LLC, Bon-Mick,

Inc., Charles 15 Associates, Charles 15 LLC, Charles Sterling LLC, Ruskin Garden Apartments

LLC, SEE Holdings I, SEE Holdings II, Sterling Brunswick Corporation, Sterling Equities

Investors, Sterling Heritage L.L.C., Sterling Jet Ltd., Sterling Jet II Ltd., Sterling PathoGenesis

Company, Sterling Third Associates, Valley Harbor Associates, Kimberly Wachtler, Minor 1,

Minor 2, Michael Schreier, Realty Associates Madoff II, Sterling American Property III L.P.,

and Sterling American Property IV L.P. (collectively the "Dismissed Defendants" and, together

with the Remaining Defendants, the "Defendants").  Each of the Trustee and each of the

Defendants shall be referred to herein as a "Party" and together as the "Parties."

## RECITALS

     A.     BLMIS and its predecessor were registered broker-dealers with the United States

Securities and Exchange Commission (the "Commission") and members of the Securities

Investor Protection Corporation ("SIPC");

     B.     On December 11, 2008, the Commission filed a complaint in the United States

District Court for the Southern District of New York (the "District Court") against BLMIS and

Madoff.  On December 12, 2008, the District Court entered an order which, among other things, appointed Lee S. Richards, Esq. as receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS));

C.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 78eee(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.  On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee as the trustee for the liquidation of the business of BLMIS under section 78eee(b)(3) of SIPA, removed the Receiver as the receiver for BLMIS, and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 78eee(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL);

D.      On April 13, 2009, an involuntary bankruptcy petition under chapter 7 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), was filed against Madoff. By Order dated June 2, 2009, the Bankruptcy Court substantively consolidated Madoff's estate into the BLMIS estate in the SIPA liquidation proceeding (the BLMIS estate consolidated with Madoff's estate collectively are referred to herein as the "BLMIS Estate");

E.      On or about June 18, 2009, certain Defendants filed customer claims in the SIPA liquidation proceeding in connection with their BLMIS accounts, including with respect to accounts in which they had deposited more money than they had withdrawn.  The Trustee often refers to such accounts as "net loser" accounts.

3

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 32 of 170
Case 9:11-cv-03608-JSR   Document 185-2   Filed 04/18/12   Page 5 of 170

F.      On March 1, 2010, the Bankruptcy Court issued an opinion affirming the
Trustee's calculation of customers' "net equity" claims as the difference between the amounts a
customer invested with BLMIS and the amounts that customer withdrew from BLMIS (the "Net
Investment Method").  On March 8, 2010, the Bankruptcy Court entered an order implementing
its decision and certifying it for immediate appeal to the United States Court of Appeals for the
Second Circuit, which on August 16, 2011, upheld the Trustee's use of the Net Investment
Method as a proper basis for calculating "net equity" claims in *In re Bernard L. Madoff Inv. Sec.
LLC*, 654 F.3d 229 (2d Cir. 2011) ("Second Circuit Net Equity Order"), *petition for cert. filed,
Sterling Equities Assoc. v. Picard*, No. 11-968, 2012 WL 396523 (Feb. 3, 2012);

G.      On December 7, 2010, the Trustee filed an action in the Bankruptcy Court
captioned *Picard v. Katz, et al.*, Adv. Pro. No. 10-5287 (BRL) (the "Action"), and on March 18,
2011, filed an amended complaint (the "Amended Complaint") in the Action, which asserted
claims under section 78fff-2(c)(3) of SIPA, sections 544(b), 547(b), 548(a), 550(a) and 551 of
the Bankruptcy Code, the New York Debtor and Creditor Law § 270 *et seq.*, and other laws;

H.      The Trustee alleged in the Amended Complaint, among other claims, that certain
Defendants received avoidable transfers of "fictitious profits" during the six-year period
preceding December 11, 2008 in the aggregate amount of One Hundred Sixty-Two Million
Seven Hundred Twenty-Six Thousand Seven Hundred Sixty-Eight United States Dollars
($162,726,768) (the "Alleged Six-Year Profits");

I.      Prior to the filing of the Action, the Trustee undertook discovery concerning
Defendants and their investments with BLMIS pursuant to Rule 2004 of the Federal Rules of
Bankruptcy Procedure ("Rule 2004 Discovery"), during which Defendants, among others,
produced documents to the Trustee and provided deposition testimony;

4

Case 1:11-cv-03608-JSR    Document 85-2    Filed 04/18/12    Page 6 of 70

J.    On March 20, 2011, Defendants filed a motion in the Bankruptcy Court to dismiss the Amended Complaint or, in the alternative, for summary judgment dismissing the Amended Complaint (the "Motion to Dismiss");

K.    On May 26, 2011, Defendants filed a motion pursuant to 28 U.S.C. § 157(d) in the District Court to withdraw the reference of the Action to the Bankruptcy Court;

L.    By Order dated July 1, 2011 and ruling on August 19, 2011, the District Court withdrew for all purposes the reference of the Action to the Bankruptcy Court, which included withdrawal of the Motion to Dismiss;

M.    By Order dated July 12, 2011 (the "Allocation Order"), the Bankruptcy Court approved the Trustee's initial allocation of property to the customer property fund and authorized the Trustee to make an interim distribution to customers holding allowed "net equity" claims. Pursuant to that Order, on or about October 5, 2011, the Trustee made a first interim distribution to customers holding allowed "net equity" claims as of September 30, 2011, in the approximate amount of 4.602% per dollar of their allowed "net equity" claims.  No Defendant held an allowed "net equity" claim as of that date, and, therefore, no Defendant received any portion of the distribution.

N.    On September 27, 2011, the District Court issued an Opinion and Order (the "Dismissal Order") denying in part and granting in part the Motion to Dismiss and dismissing all counts of the Amended Complaint except Count 1, which alleged that Defendants received intentional fraudulent transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code, and Count 11, which sought to equitably subordinate Defendants' claims pursuant to section 510(c) of the Bankruptcy Code;

O.    On October 7, 2011, the Trustee filed a motion (the "Certification Motion")

seeking certification of the rulings in the Dismissal Order for interlocutory appeal under 28

U.S.C. § 1292(b), or to have the District Court enter final judgment with respect to the dismissed

claims under Rule 54(b) of the Federal Rules of Civil Procedure.  On January 17, 2012, the

District Court issued an Opinion and Order denying the Certification Motion and reinstating

Count 9 of the Complaint insofar as it sought to avoid transfers under section 550(a) of  the

Bankruptcy Code in accordance with the Dismissal Order;

P.    Between August 12, 2011 and January 13, 2012, the Parties engaged in discovery

under Rules 26 through 34 of the Federal Rules of Civil Procedure, during which Defendants,

among others, produced documents to the Trustee and provided deposition testimony;

Q.    On January 26, 2012, Defendants filed a motion for summary judgment

dismissing all remaining counts of the Amended Complaint, and the Trustee filed a motion for

partial summary judgment as to Count 1 of the Amended Complaint insofar as his Count 1

claims sought to avoid an aggregate amount of Eighty Three Million Three Hundred Nine

Thousand One Hundred Sixty Two United States Dollars ($83,309,162) of transfers of "fictitious

profits" from BLMIS to Defendants during the two-year period preceding December 11, 2008;

R.    On March 5, 2012, the District Court issued an order setting forth the Court's

bottom line rulings denying Defendants' motion for summary judgment and granting the

Trustee's motion for partial summary judgment while leaving unresolved, although capped at the

$83,309,162 sought by the Trustee, the amount of "fictitious profits" received by Defendants that

were subject to avoidance;

S.    On March 16, 2012, the Parties executed a legally binding Memorandum of

Understanding (the "MOU"), in which they agreed to a final, binding, and legally enforceable

6

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 35 of 170
Case 9:11-cv-03608-JSR   Document 185-2   Filed 04/18/12   Page 8 of 70

settlement of the Action (the "Settlement"). The Parties agreed to work expeditiously and in good faith to enter into definitive documentation reflecting the terms of the MOU and other terms customary for such agreements;

T.      Pursuant to the MOU, the Trustee announced that, upon review of the evidence, he determined that he was no longer pursuing the willful blindness claims asserted against any Defendant; and

U.      On March 19, 2012, the District Court reviewed the MOU, which requires, among other things, approval of the Settlement by the District Court and any necessary approval by Defendants' lenders by no later than April 13, 2012.

**NOW, THEREFORE**, it is hereby **AGREED** by and among the Parties to the Agreement, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is recognized for all purposes, that:

1.      **Definitions**.  In addition to the definitions of various terms set forth elsewhere in this Agreement, the following terms shall have the following meanings as used in this Agreement:

(a)     "Approval Order" means the order of the District Court approving the terms of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

(b)     "Defendant General Creditor Claim" means any claim, other than a Defendant Net Equity Claim (defined below), asserted by any Defendant, with respect to amounts claimed to be held on account for such Defendant at BLMIS at the time of its bankruptcy, against (i) the BLMIS Estate or (ii) any forfeiture or other fund, established or yet to be established, for the benefit of BLMIS customers.  Defendants' rights and the Trustee's

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Case 1:11-cv-03608-JSR   Document 185-2   Filed 04/18/12   Page 9 of 170
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 36 of 170

obligations with respect to Defendant General Creditor Claims are set forth in paragraph 2(k)
below.

(c) "Defendant Net Equity Claim" means the "net equity" claim of any
Defendant in BLMIS's SIPA liquidation proceeding, which the Trustee has determined in
accordance with the Net Investment Method and which will be allowed in the aggregate amount
of One Hundred Seventy-Seven Million Five Hundred Sixty-Three Thousand Thirty-Eight
United States Dollars and Eight Cents ($177,563,039.08), regardless of the source of payment in
respect of such Claim. A schedule of each Defendant Net Equity Claim reflecting the specific
account number, account holder's name, the net equity in each account, and the claim number
that identifies the claim filed by each account holder is attached as Schedule 1 to the Agreement.
The Parties acknowledge and agree that if the Net Investment Method for calculating the value
of "net equity" claims is found to be incorrect or is otherwise modified, the Trustee will
retroactively adjust the calculation of the value of each Defendant Net Equity Claim to reflect the
new methodology

(d) "Effective Date" means the date on which the District Court enters the
Approval Order. The Parties acknowledge and agree that (i) prior to the Effective Date, the
following shall be delivered to the Trustee: (x) an executed Assignment, as defined below, of
each Defendant Net Equity Claim; and (y) an executed release (or executed acknowledgement of
release) of any lien, interest or encumbrance, held prior to the Assignment by any lender to the
Defendants or other third party, on or against any part, or all, of each Defendant Net Equity
Claim and/or Assigned Claim Recoveries (as defined below) up to the amount of the Settlement
Payment (as defined below) (such release or acknowledgement of release a "Release of Lien"),
which shall remain in effect until the Settlement Payment is paid in full, and (ii) on the Effective

8

Date, the Trustee shall deliver to Defendants an executed stipulation of dismissal to be filed on, or as soon as practicable following, the Effective Date.

2.      **Payment Obligation, Claims, and Related Matters**.  On the terms and subject to the conditions and limitations set forth in this Agreement, Defendants will pay or cause to be paid to the Trustee an aggregate amount of One Hundred Sixty-Two Million United States Dollars ($162,000,000) (the "Settlement Payment").  The Settlement Payment will be satisfied during the five, twelve-month periods following the Effective Date (the "Settlement Payment Term").  The first of such twelve-month periods shall be referred to as the "First Period"; the second twelve-month period shall run from the end of the First Period and be referred to as the "Second Period"; and each successive twelve-month Period thereafter shall run from the end of the prior Period through and including the "Fifth Period."  The Settlement Payment shall be satisfied by the following means:

(a)      Assignment of Defendant Net Equity Claims.  Each Defendant unconditionally and irrevocably agrees to assign to the Trustee by written assignment (individually, the "Assignment," and collectively, the "Assignments"), the form of which is attached hereto as Exhibit A, his, her or its Defendant Net Equity Claim (collectively, the "Assigned Claims") solely for the purpose of satisfying the Settlement Payment.  No assigned Defendant Net Equity Claim (or recovery in respect of a Defendant Net Equity Claim in excess of amounts necessary to satisfy the Settlement Payment) shall become property of the BLMIS estate nor be used for any purpose other than to satisfy the Settlement Payment.  The Trustee shall not transfer or assign any Defendant Net Equity Claim, except as expressly contemplated by this Agreement.

(b)   <u>Allowance of Defendant Net Equity Claims</u>.  The Trustee will allow the

Defendant Net Equity Claims, which will then be entitled to full recovery on the same basis as

"good faith" customers of BLMIS, except that Defendant Net Equity Claims will not be entitled

to receive an advance from SIPC, as provided for in 15 U.S.C. § 78fff-3.

(c)   <u>Assigned Claim Recoveries</u>.  The Assigned Claims will be entitled to

100% of all distributions made by the Trustee from BLMIS customer property or any other

payment of allowed claims of "good faith" customers of BLMIS from any source (collectively,

"<u>Assigned Claim Recoveries</u>"), including, but not limited to, (i) from any forfeiture fund

established by the U.S. Department of Justice pursuant to 28 C.F.R. Part 9 and (ii) the 4.602%

"catch-up" distribution in the amount of Eight Million One Hundred Seventy-One Thousand

Four Hundred Fifty-One United States Dollars ($8,171,451) made pursuant to the Bankruptcy

Court's Allocation Order but not previously paid in connection with any Defendant Net Equity

Claim.  The Trustee represents that, as of the Effective Date, there has been only one (1)

distribution from the fund of customer property to customers holding allowed "net equity"

claims, such distribution occurred on or about October 5, 2011, pursuant to the Bankruptcy

Court's Allocation Order, and was in the amount of 4.602% of customers' allowed "net equity"

claims.

(d)   In connection with any distribution made in respect of the Assigned

Claims, any and all Assigned Claim Recoveries shall immediately and automatically be applied

to reduce Defendants' obligations in respect of the Settlement Payment on a dollar-for-dollar

basis.  Promptly thereafter (but not later than seven (7) calendar days), the Trustee shall provide

written notice to Defendants (i) of any remaining balance of the Settlement Payment after

Assigned Claim Recoveries have been so applied and (ii) if/when the Settlement Payment is fully satisfied.

(e)    During the First through the Third Periods of the Settlement Payment Term, Defendants' payment obligations pursuant to this Agreement are limited solely to Assigned Claim Recoveries, and, during such periods, no Defendant is obligated to make any payment in excess of or in addition to Assigned Claim Recoveries. Upon full satisfaction of the Settlement Payment at any time during the Settlement Payment Term, the Trustee shall promptly (but not later than seven (7) calendar days) re-assign the Assigned Claims to Defendants by executing and delivering an assignment to each of the Defendants or their designee(s), limited to a maximum, potential recovery of the difference between the value of the aggregate amount of the Defendant Net Equity Claims and the value of the Defendant Net Equity Claims previously applied to reduce Defendants' obligations in respect of the Settlement Payment (such difference being the "Tail Payment"). Upon full satisfaction of the Settlement Payment, Defendants shall be entitled to receive in full any distributions in respect of Defendant Net Equity Claims on the same basis as "good faith" customers of BLMIS, including any distribution made after the end of the Fifth Period.

(f)    For the avoidance of doubt, unless and until the Settlement Payment is fully satisfied, the Trustee shall have no obligation to re-assign the Assigned Claims to the Defendants, and the Defendants shall not be entitled to receive all or any part of the Tail Payment.

(g)    Defendants' Installment Payments. If the Settlement Payment is not fully satisfied after applying all of the Assigned Claim Recoveries during the First through the Third Periods of the Settlement Payment Term, the remaining unpaid amount of the Settlement

11

Payment (the "Remaining Amount") shall be divided into two equal annual installments to be paid no later than the end of the Fourth and Fifth Periods of the Settlement Payment Term. Any and all Assigned Claim Recoveries received during the Fourth and Fifth Periods shall immediately and automatically be applied to the next due installment during the Fourth and Fifth Periods of the Settlement Payment Term to reduce the payment in respect of the Remaining Amount for that Period. If the installment payment for the Fourth Period is satisfied in full by Assigned Claim Recoveries, any excess will be applied to the Fifth Period installment. The annual installment payments shall be made by wire transfer of immediately available funds in accordance with written instructions provided by the Trustee to Defendants no later than thirty (30) days prior to the relevant payment date.

(h)     Each Defendant shall be responsible, on a several and not joint basis, for his, her, or its proportionate (*i.e.*, percentage) share of the Remaining Amount in proportion to his, her, or its proportionate share of the Alleged Six-Year Profits. With respect to accounts held jointly or as tenants in common, each Defendant shall be responsible, on a several and not joint basis, for his, her, or its proportionate share of that account's proportionate share of the Remaining Amount. A detailed schedule of the Alleged Six-Year Profits reflecting the relevant BLMIS account number, the account holder's name, the Defendant or Defendants related to each such BLMIS account, the amount of the Alleged Six-Year Profits by account, and each Defendant's proportionate share of the Alleged Six-Year Profits is attached as Schedule 2 to this Agreement.

(i)     Fred Wilpon and Saul Katz Guarantees. Fred Wilpon and Saul Katz ("Guarantors"), jointly and severally, irrevocably and unconditionally, and regardless of which Defendant fails to pay his, her, or its proportionate share of the Remaining Amount, hereby

12

guarantee payment of the Remaining Amount owed to the Trustee up to an aggregate amount of Twenty-Nine Million United States Dollars ($29,000,000) (the "Guarantee"). The Trustee shall not recover on the Guarantee unless a Defendant has not paid in full his, her, or its proportionate share of the Remaining Amount at the end of the Fourth and/or Fifth Periods of the Settlement Payment Term. In the event that a Defendant does not pay his, her, or its proportionate share of the Remaining Amount when it is due, the Trustee shall, within three (3) business days, make a written demand of the Guarantors, who shall promptly (but not later than three (3) business days from the date of the Trustee's written demand) satisfy the demand. Under no circumstances shall the aggregate amount of any payments made by the Guarantors in satisfaction of the Guarantee exceed $29,000,000.

(j)    Following the Effective Date, the Parties shall agree to specific dates for each of the First through the Fifth Periods of the Settlement Payment Term as follows:

| EFFECTIVE DATE: [Month/Date/2012] |
| --- |
| END OF FIRST PERIOD: Twelve calendar months following the Effective Date, or [Month/Date/2013] |
| END OF SECOND PERIOD: Twelve calendar months following the end of the First Period, or [Month/Date/2014] |
| END OF THIRD PERIOD: Twelve calendar months following the end of the Second Period, or [Month/Date/2015] |
| END OF FOURTH PERIOD: Twelve calendar months following the end of the Third Period, or [Month/Date/2016] |
| END OF FIFTH PERIOD: Twelve calendar months following the end of the Fourth Period, or [Month/Date/2017] |

(k)     The Trustee shall treat the Defendant General Creditor Claims on the same basis as he treats the same types of claims asserted by "good faith" customers, including with respect to any recoveries to which such claims will be entitled.

3.     **Mutual Releases.**

(a)     Except with respect to any rights and obligations arising under this Agreement (including rights and obligations relating to Defendant Net Equity Claims and Defendant General Creditor Claims), the Trustee, for himself and on behalf of BLMIS, Madoff, and the BLMIS Estate ("Trustee Releasors"), hereby fully, finally, and forever releases, remises, relinquishes, and discharges Defendants and their professionals and agents from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on willful blindness, strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown, that are, have been, could have been, or might in the future be, asserted by the Trustee against Defendants based on, arising out of, or relating in any way to Madoff,  BLMIS, their liquidation proceedings, the BLMIS Estate or any BLMIS account held in the name of any Defendant (the "Trustee Released Claims").

(b)     Except with respect to any rights and obligations arising under this Agreement (including rights and obligations relating to Defendant Net Equity Claims and Defendant General Creditor Claims), each of the Defendants for himself, herself or itself, and in

14

the case of a corporate or partnership Defendant, its shareholders, members, officers and

directors, partners, their successors in interest and assigns ("Defendant Releasors"), hereby fully,

finally, and forever releases, remises, relinquishes, and discharges the Trustee, his professionals

and agents and the BLMIS Estate from any and all claims or causes of action (including any suit,

petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of

liability or damages (including any allegation of duties, debts, reckonings, contracts,

controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of

whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or

contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence,

gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or

disbursements) known or unknown, that are, have been, could have been, or might in the future

be, asserted by Defendant Releasors against the Trustee based on, arising out of, or relating in

any way to Madoff,  BLMIS, their liquidation proceedings, the BLMIS Estate and any BLMIS

account held by any of the Defendants (the "Defendant Released Claims").

      (c)     With respect to any and all Trustee Released Claims or Defendant

Released Claims, the Trustee and Defendant Releasors shall expressly waive or be deemed to

have waived the provisions, rights, and benefits of California Civil Code § 1542 (to the extent it

applies herein) and any provisions, rights, and benefits conferred by any law of any state or

territory of the United States or principle of common law that is similar, comparable, or

equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

Except with respect to the rights and obligations arising under this Agreement, the Trustee and

Defendants each acknowledge that each may hereafter discover facts in addition to or different

from those that each now knows or believes to be true with respect to the subject matter of the

Trustee Released Claims or the Defendant Released Claims, respectively, but the Trustee and

Defendants each shall expressly have and shall be deemed to have fully, finally, and forever

settled, released, and discharged any and all Trustee Released Claims and Defendant Released

Claims, respectively, known or unknown, suspected or unsuspected, contingent or non-

contingent, whether or not concealed or hidden, which now exist or heretofore have existed,

upon any theory of law or equity now existing or coming into existence in the future, including

conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty,

law or rule, without regard to the subsequent discovery or existence or such different or

additional facts.

4.      **Termination of Litigation**.  On or as soon as practical after the Effective Date,

the Parties will file a stipulation of dismissal dismissing the Action with prejudice and without

cost to any Party.  Within three (3) business days after the Effective Date, Defendants shall

withdraw their petition for a writ of *certiorari* filed with the United States Supreme Court from

the Second Circuit Net Equity Order.  Defendants agree not to pursue or join any other litigation,

or to provide legal counsel to any other defendant involved in any litigation, involving the

Trustee or SIPC arising out of or relating to BLMIS, Madoff, their liquidation proceeding and

the BLMIS Estate, including filing any motion, memorandum or other court document, except

with respect to (i) any rights or obligations arising under this Agreement; (ii) the litigation

involving, among others, Eric Saretsky on behalf of the participants in the Sterling Equities

Employees Retirement Plan; and (iii) the litigation captioned *Picard v. Estate of Marjorie K.*

*Osterman, et al.* The Parties agree not to make any disparaging statement with respect to each other or the Settlement.

5.    **Conditions**.  Notwithstanding any provision of this Agreement to the contrary, the obligations of the Parties are subject to the receipt of (a) approval of the Settlement by the District Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and entry of the Approval Order, and (b) any required lender approvals, which shall be obtained by no later than April 13, 2012.

6.    **Representations and Warranties**.

(a)    The Trustee hereby represents and warrants to Defendants that, subject to the Approval Order: (i) he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder; (ii) this Agreement has been duly executed and delivered by the Trustee and constitutes the valid and binding agreement of the Trustee, enforceable against the Trustee in accordance with its terms; and (iii) in executing this Agreement, the Trustee has done so with the full knowledge of any and all rights that he may have with respect to the controversies herein compromised, and the Trustee has received or has had the opportunity to obtain independent legal advice from his counsel with regard to the facts relating to said controversies and with respect to the rights arising out of said facts.

(b)    Each Defendant, solely with respect to himself, herself, or itself, hereby represents and warrants to the Trustee that: (i) he, she, or it has the full power, authority, legal right and capacity to execute and deliver this Agreement and to perform his, her, or its respective obligations hereunder; (ii) he, she, or it has the full power, authority and legal right to execute and deliver to the Trustee the Assignment of his, her, or its Defendant Net Equity Claim, which has not previously been assigned, except pursuant to a lien that has been released as

17

contemplated in paragraph 1(d)(i)(y), in whole or in part; (iii) he, she, or it has taken such steps

and actions, as necessary, such that the holders of any obligations entitled to notice from such

Defendant have been given notice of this Agreement and Defendant's obligations to the Trustee

under this Agreement; (iv) he, she or it has obtained a Release of Lien, a copy of which shall be

provided to the Trustee prior to the Effective Date; (v) the Assigned Claim is free and clear of

any lien, claim, interest or encumbrance held by any third party; (vi) this Agreement has been

duly executed and delivered by such Defendant and constitutes the valid and binding agreement

of such Defendant, enforceable against such Defendant in accordance with its terms; and (vii) in

executing this Agreement, such Defendant has done so with the full knowledge of any and all

rights that such Defendant may have with respect to the controversies herein compromised, and

such Defendant has received or has had the opportunity to obtain independent legal advice from

his, her, or its attorneys with regard to the facts relating to said controversies and with respect to

the rights arising out of said facts.

    (c)     Each of the representations and warranties set forth in this paragraph 6

shall survive in perpetuity.

    7.    **Further Assurances**.  Each Party shall execute and deliver any document or

instrument reasonably requested by the other Party after the date of this Agreement to effectuate

the intent of this Agreement.

    8.    **Return, Destruction, and Confidentiality of Documents**.

    (a)     Notwithstanding any other provision of this Agreement, and pursuant to

the October 30, 2011 protective order entered in the Action, the provisions of which are

incorporated herein by reference, any Party that received documents designated or identified as

"Confidential" or "Highly Confidential" by any other Party that produced the documents (the

"Producing Party") at any time in connection with the Action, including during Rule 2004

Discovery, the mediation relating to the Action, or in relation to this Agreement, shall, within

thirty (30) days of the final disposition of the Action, (a) return to the offices of the Producing

Party's counsel all such documents, including any copies thereof, or (b) if the Producing Party

does not require return of such documents, certify to counsel for the Producing Party that all such

documents, including any copies thereof, have been destroyed.  For the avoidance of doubt, the

obligations under this paragraph to return documents to the Producing Party include documents

produced by the Trustee to the Defendants.

      (b)     The Trustee agrees to maintain at all times the confidentiality of all

information provided by Defendants, on or before the date hereof, that Defendants designated

"Confidential" or "Highly Confidential."

     9.     **Entire Agreement**.  This Agreement (including all schedules and any exhibits

hereto) constitutes the entire agreement and understanding between the Parties pertaining to the

subject matter hereof and supersedes any and all prior or contemporaneous agreements,

including the MOU, representations and understandings of the Parties concerning the subject

matter hereof.

     10.    **Amendment; Waiver**.  This Agreement may not be terminated, amended or

modified in any way except by written instrument signed by all Parties hereto or their

successors-in-interest.  No waiver of any provision of this Agreement shall be deemed to

constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver

constitute a continuing waiver.

     11.    **Assignment**.  This Agreement may not be assigned by any Party without the prior

written consent of the other Parties, provided that nothing herein shall prohibit any Defendant

that is a corporation, partnership, limited liability company, or other entity from pledging or

assigning its interest in this Agreement in connection with borrowings or the sale of all or

substantially all of such Defendant's assets.  In the event of such a pledge or assignment, the

obligations of such Defendant shall remain in full force and effect and shall not be impaired.

Any such assignor shall provide to the Trustee written notice of the assignment of its interest in

this Agreement within ten (10) business days thereafter.

      12.    **Successors**.  This Agreement shall be binding upon and inure to the benefit of

each Party and his, her, or its respective successors, heirs, estates, and personal representatives.

      13.    **Construction**.  This Agreement has been fully negotiated by the Parties.  Each

Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that

ambiguities in an agreement or contract may be construed against the drafter shall not apply in

the construction or interpretation of this Agreement.  Words used herein, regardless of the

number and gender specifically used, shall be deemed and construed to include any other

number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context

indicates is appropriate.  Any reference in this Agreement to a paragraph is to a paragraph of this

Agreement.  "Including" is not intended to be a limiting term.

      14.    **Headings**.  The headings in this Agreement are inserted only as a matter of

convenience and for reference and do not define, limit or describe the scope of this Agreement or

the scope or content of any of its provisions.

      15.    **Choice of Law**.  This Agreement and any claim related directly or indirectly to

this Agreement shall be governed by and construed in accordance with the laws of the State of

New York (without regard to the principle of conflicts of law thereof), the Bankruptcy Code, and

SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all

right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

16. **Choice of Forum**. Any action arising out of this Agreement, or relating to the performance or breach of the Parties hereunder or the interpretation hereof, shall be brought exclusively in the District Court, and each of the Parties (a) consents to jurisdiction in such court, (b) agrees that it will not bring any action relating to this Agreement, including the performance or breach or interpretation of this Agreement, in any court other than the District Court, and (c) agrees that any such action should, to the extent possible, be referred to Judge Jed S. Rakoff.

17. **WAIVER OF JURY TRIAL**. THE PARTIES EXPRESSLY AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY FOR ANY CLAIM, COUNTERCLAIM, ACTION, OR OTHER PROCEEDING ARISING UNDER OR RELATING TO THIS AGREEMENT, ANY RIGHTS OR OBLIGATIONS HEREUNDER, THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS OR THE RELATIONSHIP BETWEEN THE PARTIES, IN EACH CASE WHETHER SUCH CLAIM, COUNTERCLAIM, ACTION, OR OTHER PROCEEDING IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE.

18. **Expenses**. Each Party shall bear its respective expenses relating to or arising out of this Agreement, including, but not limited to, fees for attorneys and other advisors.

19. **Notices**. All notices, requests, demands, consents and communications necessary or required under this Agreement shall be in writing and shall be delivered by hand or sent by registered or certified mail (return receipt requested), by overnight courier (with confirmation), by facsimile (receipt confirmed), or by electronic means (receipt confirmed), in each case

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

All such notices, requests, demands, consents and other communications shall be deemed to have

been duly given or sent two (2) days following the date on which mailed, or on the date on which

delivered by courier or by hand or by facsimile or electronic transmission (receipt confirmed),

addressed as follows:

|  |  |
|---|---|
| If to the Trustee: | If to any Defendant: |
| Irving H. Picard<br>c/o Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Facsimile No.: (212) 589-4201 | c/o Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attention:  Robert F. Wise, Jr.<br>Karen E. Wagner<br>Dana M. Seshens<br>Facsimile No.:  (212) 701-5800 |
| with copies to: |  |
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Attention:  David J. Sheehan<br>Fernando A. Bohorquez, Jr.<br>Facsimile No.: (212) 589-4201 |  |

20.     **No Third-Party Beneficiaries**.  Nothing contained in this Agreement is intended

to confer any benefit upon any person or entity other than the Parties hereto and their respective

successors and permitted assigns.

21.     **Counterparts**.  This Agreement may be executed and delivered in any number of

counterparts, each of which so executed and delivered shall be deemed to be an original and all

of which shall constitute one and the same document.  Each Party may evidence its execution of

this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the

same effect as the delivery of an original signature.

08-01789-cgm   Doc 4789-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 51 of 170
Case 1:11-cv-03605-JSR   Document 185-2   Filed 04/13/12   Page 24 of 79

Each Party has caused this Agreement to be duly executed and delivered as of the date set
forth above.

> **Irving H. Picard, the Trustee for the liquidation
> proceedings of Bernard L. Madoff Investment
> Securities LLC and the substantively
> consolidated bankruptcy case of Bernard L.
> Madoff**
>
> _____
> Irving H. Picard

**SAUL B. KATZ**
_____
Saul B. Katz

**FRED WILPON**
_____
Fred Wilpon

**RICHARD WILPON**
_____
Richard Wilpon

**MICHAEL KATZ**
_____
Michael Katz

**JEFFREY WILPON**
_____
Jeffrey Wilpon

**DAVID KATZ**
_____
David Katz

**GREGORY KATZ**
_____
Gregory Katz

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 53 of 170
Case 1:11-cv-03605-JSR   Document 185-2   Filed 04/13/12   Page 26 of 79

**ARTHUR FRIEDMAN**

By:   Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:   Fred Wilpon, Co-administrator

By:   Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:   C.D.S. Corp., its general partner

By:   Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:   Mets Partners, Inc., its general partner

By:   David P. Cohen, Executive Vice
President

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 54 of 170
Case 1:11-cv-03605-JSR   Document 185-2   Filed 05/15/12   Page 27 of 70

**ARTHUR FRIEDMAN**

By:   Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:   Fred Wilpon, Co-administrator

By:   Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:   C.D.S. Corp., its general partner

By:   Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:   Mets Partners, Inc., its general partner

By:   David P. Cohen, Executive Vice
      President

08-01789-cgm    Doc 4789-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 55 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 38 of 79

**ARTHUR FRIEDMAN**

By:  Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:  Fred Wilpon, Co-administrator

By:  Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

By:  Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

By:  David P. Cohen, Executive Vice
President

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 56 of 170
Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 29 of 70

**ARTHUR FRIEDMAN**

By:  Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:  Fred Wilpon, Co-administrator

By:  Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

By:  Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

By:  David P. Cohen, Executive Vice
President

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 57 of 170
Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 30 of 70

**ARTHUR FRIEDMAN**

By:  Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:  Fred Wilpon, Co-administrator

By:  Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

By:  Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

By:  David P. Cohen, Executive Vice
President

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 58 of 170

Case 1:11-cv-03605-JSR   Document 185-2   Filed 04/13/12   Page 31 of 70

**Mets II LLC**

By:   Sterling Mets Associates II, its member

_[signature]_

   By:   Michael Katz, Partner


**FS COMPANY, L.L.C.**

By:   Sterling Heritage, L.L.C., its member

_[signature]_

   By:   Michael Katz, Managing Member


**CHARLES STERLING SUB LLC**

By:   Charles Sterling 15 LLC, its manager

_[signature]_

   By:   Michael Katz, Manager


**COLLEGE PLACE ENTERPRISES LLC**

_[signature]_

By:   Saul B. Katz, Member


**FFB AVIATION LLC**

_[signature]_

By:   Michael Katz, Manager


**IRIS J. & SAUL B. KATZ FAMILY
FOUNDATION INC.**

_[signature]_

By:   Saul B. Katz, Director

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 59 of 170
Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 32 of 70

**JUDY AND FRED WILPON FAMILY
FOUNDATION, INC.**

By:  Fred Wilpon, Director

**RED VALLEY PARTNERS**

By:  David Katz, Partner

**ROBBINSVILLE PARK, LLC**

By:  Michael Katz, Manager

**SEE HOLDCO, LLC**

By:  SEE Management, LLC, its manager

By:  Saul B. Katz, Member

**STERLING 10 LLC**

By:  Michael Katz, Manager

**STERLING 15C L.L.C.**

By:  Michael Katz, Member

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 60 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 33 of 70

**STERLING 20 LLC**

By:   Michael Katz, Manager


**STERLING AMERICAN ADVISORS II L.P.**

By:   Sterling Advisors II Corp., a general partner

By:   Michael Katz, Executive Vice President


**STERLING BRUNSWICK SEVEN L.L.C.**

By:   Michael Katz, Manager


**STERLING DIST PROPERTIES LLC**

By:   Michael Katz, Manager


**STERLING EQUITIES**

By:   Michael Katz, Senior Executive Vice
      Preseident


**STERLING EQUITIES ASSOCIATES**

By:   Michael Katz, Partner

08-01789-cgm   Doc 4789-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 61 of 170

Case 1:11-cv-03605-JSR   Document 165-2   Filed 04/13/12   Page 34 of 70

**STERLING INTERNAL V LLC**

By:   Michael Katz, Managing Member

**STERLING THIRTY VENTURE LLC**

By:   Michael Katz, Manager

**STERLING TRACING LLC**

By:   Michael Katz, Manager

**STERLING TWENTY FIVE LLC**

By:   Michael Katz, Manager

**STERLING VC IV LLC**

By:   Michael Katz, Manager

**STERLING VC V LLC**

By:   Michael Katz, Manager

**SAUL B. KATZ FAMILY TRUST**

By:   Michael Katz, Trustee

**FRED WILPON FAMILY TRUST**

By:   Richard Wilpon, Trustee

**KATZ 2002 DESCENDANTS' TRUST**

By:   Saul B. Katz, Trustee

**WILPON 2002 DESCENDANTS' TRUST**

By:   Fred Wilpon, Trustee

**IRIS KATZ**

_____
Iris Katz

**JUDITH WILPON**

_____
Judith Wilpon

**DAYLE KATZ**

_____
Dayle Katz

**DEBRA WILPON**

_____
Debra Wilpon

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 63 of 170

Case 1:11-cv-03605-JSR   Document 185-2   Filed 04/13/12   Page 36 of 70

**FRED WILPON FAMILY TRUST**

_____

By:   Richard Wilpon, Trustee

**KATZ 2002 DESCENDANTS' TRUST**

_____

By:   Saul B. Katz, Trustee

**WILPON 2002 DESCENDANTS' TRUST**

_____

By:   Fred Wilpon, Trustee

**IRIS KATZ**

_____

Iris Katz

**JUDITH WILPON**

_____

Judith Wilpon

**DAYLE KATZ**

_____

Dayle Katz

**DEBRA WILPON**

_____

Debra Wilpon

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 64 of 170

Case 1:11-cv-03605-JSR   Document 185-2   Filed 05/15/12   Page 37 of 70

**FRED WILPON FAMILY TRUST**

_____

By:  Richard Wilpon, Trustee


**KATZ 2002 DESCENDANTS' TRUST**

_____

By:  Saul B. Katz, Trustee


**WILPON 2002 DESCENDANTS' TRUST**

_____

By:  Fred Wilpon, Trustee


**IRIS KATZ**

_____

Iris Katz


**JUDITH WILPON**

_____

Judith Wilpon


**DAYLE KATZ**

_____

Dayle Katz


**DEBRA WILPON**

_____

Debra Wilpon

08-01789-cgm    Doc 4789-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 65 of 170
Case 1:11-cv-03609-JSR    Document 185-2    Filed 04/13/12    Page 38 of 70

**FRED WILPON FAMILY TRUST**

By:   Richard Wilpon, Trustee

**KATZ 2002 DESCENDANTS' TRUST**

By:   Saul B. Katz, Trustee

**WILPON 2002 DESCENDANTS' TRUST**

By:   Fred Wilpon, Trustee

**IRIS KATZ**

Iris Katz

**JUDITH WILPON**

Judith Wilpon

**DAYLE KATZ**

Dayle Katz

**DEBRA WILPON**

Debra Wilpon

**VALERIE WILPON**

_____
Valerie Wilpon


**AMY BETH KATZ**

_____
Amy Beth Katz


**HEATHER KATZ KNOPF**

_____
Heather Katz Knopf


**HOWARD KATZ**

_____
Howard Katz


**NATALIE KATZ O'BRIEN**

_____
Natalie Katz O'Brien


**TODD KATZ**

_____
Todd Katz


**BRUCE N. WILPON**

_____
Bruce N. Wilpon

08-01789-cgm  Doc 4799-2  Filed 05/04/12  Entered 05/04/12 18:59:03  Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105  Pg 67 of 170

Case 1:11-cv-03605-JSR  Document 185-2  Filed 04/13/12  Page 40 of 70

**VALERIE WILPON**

_____

Valerie Wilpon


**AMY BETH KATZ**

_____

Amy Beth Katz


**HEATHER KATZ KNOPF**

_____

Heather Katz Knopf


**HOWARD KATZ**

_____

Howard Katz


**NATALIE KATZ O'BRIEN**

_____

Natalie Katz O'Brien


**TODD KATZ**

_____

Todd Katz


**BRUCE N. WILPON**

_____

Bruce N. Wilpon

**VALERIE WILPON**

_____

Valerie Wilpon

**AMY BETH KATZ**

_____

Amy Beth Katz

**HEATHER KATZ KNOPF**

_____

Heather Katz Knopf

**HOWARD KATZ**

_____

Howard Katz

**NATALIE KATZ O'BRIEN**

_____

Natalie Katz O'Brien

**TODD KATZ**

_____

Todd Katz

**BRUCE N. WILPON**

_____

Bruce N. Wilpon

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 69 of 170

Case 1:11-cv-03605-JSR   Document 185-2   Filed 04/13/12   Page 42 of 70

**VALERIE WILPON**

_____
Valerie Wilpon

**AMY BETH KATZ**

_____
Amy Beth Katz

**HEATHER KATZ KNOPF**

_____
Heather Katz Knopf

**HOWARD KATZ**

_____
Howard Katz

**NATALIE KATZ O'BRIEN**

_____
Natalie Katz O'Brien

**TODD KATZ**

_____
Todd Katz

**BRUCE N. WILPON**

_____
Bruce N. Wilpon

08-01789-cgm    Doc 4789-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 70 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 43 of 70

**VALERIE WILPON**

_____

Valerie Wilpon


**AMY BETH KATZ**

_____

Amy Beth Katz


**HEATHER KATZ KNOPF**

_____

Heather Katz Knopf


**HOWARD KATZ**

_____

Howard Katz


**NATALIE KATZ O'BRIEN**

_____

Natalie Katz O'Brien


**TODD KATZ**

_____

Todd Katz


**BRUCE N. WILPON**

_____

Bruce N. Wilpon

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 71 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 44 of 70

**VALERIE WILPON**

_____

Valerie Wilpon

**AMY BETH KATZ**

_____

Amy Beth Katz

**HEATHER KATZ KNOPF**

_____

Heather Katz Knopf

**HOWARD KATZ**

_____

Howard Katz

**NATALIE KATZ O'BRIEN**

_____

Natalie Katz O'Brien

**TODD KATZ**

_____

Todd Katz

**BRUCE N. WILPON**

_____

Bruce N. Wilpon

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 72 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 45 of 70

**DANIEL WILPON**

_____
Daniel Wilpon

**JESSICA WILPON KAMEL**

_____
Jessica Wilpon Kamel

**ROBIN WILPON WACHTLER**

_____
Robin Wilpon Wachtler

**PHILIP WACHTLER**

_____
Philip Wachtler

**SCOTT WILPON**

_____
Scott Wilpon

**RUTH FRIEDMAN**

_____
Ruth Friedman

**PHYLLIS REBELL OSTERMAN**

_____
Phyllis Rebell Osterman

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 73 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 46 of 75

**DANIEL WILPON**

_____

Daniel Wilpon

**JESSICA WILPON KAMEL**

_____

Jessica Wilpon Kamel

**ROBIN WILPON WACHTLER**

_____

Robin Wilpon Wachtler

**PHILIP WACHTLER**

_____

Philip Wachtler

**SCOTT WILPON**

_____

Scott Wilpon

**RUTH FRIEDMAN**

_____

Ruth Friedman

**PHYLLIS REBELL OSTERMAN**

_____

Phyllis Rebell Osterman

Case 1:11-cv-03605-JSR    Document 185-2    Filed 05/15/12    Page 47 of 70

**DANIEL WILPON**

_____

Daniel Wilpon


**JESSICA WILPON KAMEL**

_____

Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____

Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____

Philip Wachtler


**SCOTT WILPON**

_____

Scott Wilpon


**RUTH FRIEDMAN**

_____

Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____

Phyllis Rebell Osterman

**DANIEL WILPON**

_____

Daniel Wilpon


**JESSICA WILPON KAMEL**

_____

Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____

Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____

Philip Wachtler


**SCOTT WILPON**

_____

Scott Wilpon


**RUTH FRIEDMAN**

_____

Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____

Phyllis Rebell Osterman

08-01789-cgm    Doc 4789-3    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 76 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 49 of 70

**DANIEL WILPON**

_____
Daniel Wilpon


**JESSICA WILPON KAMEL**

_____
Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____
Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____
Philip Wachtler


**SCOTT WILPON**

_____
Scott Wilpon


**RUTH FRIEDMAN**

_____
Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____
Phyllis Rebell Osterman

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 77 of 170
Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 90 of 170

**ELISE C. TEPPER**

_Elise C. Tepper_

Elise C. Tepper

**JACQUELINE G. TEPPER**

Jacqueline G. Tepper

**EDWARD M. TEPPER**

Edward M. Tepper

**DEVYA SCHREIER ARTHUR**

Devya Schreier Arthur

**STERLING ACQUISITIONS LLC**

By:  Michael Katz, Member

**ELISE C. TEPPER**

_____
Elise C. Tepper


**JACQUELINE G. TEPPER**

_____
Jacqueline G. Tepper


**EDWARD M. TEPPER**

_____
Edward M. Tepper


**DEVYA SCHREIER ARTHUR**

_____
Devya Schreier Arthur


**STERLING ACQUISITIONS LLC**

_____
By:   Michael Katz, Member

**ELISE C. TEPPER**

_____

Elise C. Tepper


**JACQUELINE G. TEPPER**

_____

Jacqueline G. Tepper


**EDWARD M. TEPPER**

_____

Edward M. Tepper


**DEVYA SCHREIER ARTHUR**

_____

Devya Schreier Arthur


**STERLING ACQUISITIONS LLC**

_____

By:   Michael Katz, Member

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 80 of 170

Case 1:11-cv-03608-JSR    Document 185-2    Filed 05/15/12    Page 83 of 170

**ELISE C. TEPPER**

_____

Elise C. Tepper


**JACQUELINE G. TEPPER**

_____

Jacqueline G. Tepper


**EDWARD M. TEPPER**

_____

Edward M. Tepper


**DEVYA SCHREIER ARTHUR**

_____

Devya Schreier Arthur


**STERLING ACQUISITIONS LLC**

_____

By:   Michael Katz, Member

**ELISE C. TEPPER**

_____

Elise C. Tepper

**JACQUELINE G. TEPPER**

_____

Jacqueline G. Tepper

**EDWARD M. TEPPER**

_____

Edward M. Tepper

**DEVYA SCHREIER ARTHUR**

_____

Devya Schreier Arthur

**STERLING ACQUISITIONS LLC**

_____

By:   Michael Katz, Member

**STERLING AMERICAN PROPERTY V L.P.**

By: Sterling American Advisors V LLC, its
general partner

By: Sterling Advisors V LLC, its managing
member

By: Sterling SAP V Equity Partners
LLC, its managing member

By: Michael Katz, Co-CEO

**STERLING METS ASSOCIATES**

By: Michael Katz, Partner

**STERLING METS ASSOCIATES II**

By: Michael Katz, Partner

**METS ONE LLC**

By: Sterling Mets Associates, its member

By: Michael Katz, Partner

**METS PARTNERS, INC.**

By: David P. Cohen, Executive Vice President

**STERLING AMERICAN PROPERTY V L.P.**

By:  Sterling American Advisors V LLC, its
general partner

  By:  Sterling Advisors V LLC, its managing
member

    By:  Sterling SAP V Equity Partners
LLC, its managing member

_____

By:  Michael Katz, Co-CEO

**STERLING METS ASSOCIATES**

_____

By:  Michael Katz, Partner

**STERLING METS ASSOCIATES II**

_____

By:  Michael Katz, Partner

**METS ONE LLC**

By:  Sterling Mets Associates, its member

_____

By:  Michael Katz, Partner

**METS PARTNERS, INC.**

_____

By:   David P. Cohen, Executive Vice President

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 84 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 87 of 170

**C.D.S. CORP.**

By:   Fred Wilpon, CEO

**CONEY ISLAND BASEBALL HOLDING COMPANY, L.L.C.**

By:   FS Company, L.L.C., its managing member

    By:   Sterling Heritage, L.L.C., its member

      By:   Michael Katz, Managing Member

**BROOKLYN BASEBALL COMPANY L.L.C.**

By:   FS Company, L.L.C., its managing member

    By:   Sterling Heritage, L.L.C, its member

      By:   Michael Katz, Managing Member

**157 J.E.S. LLC**

By:   Michael Katz, Manager

**AIR STERLING LLC**

By:   Michael Katz, Manager

**BAS AIRCRAFT LLC**

By:   Richard Wilpon, Manager

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 85 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 98 of 170

**BON-MICK FAMILY PARTNERS, L.P.**

By:  Bon Mick, Inc., its general partner

_____

    By:  Michael Katz, Vice President


**CHARLES 15 ASSOCIATES**

By:  Charles 15 LLC, a general partner

    By:  Charles Sterling 15 LLC, its manager

      By:  Michael Katz, Manager


**CHARLES 15 LLC**

By:  Charles Sterling 15 LLC, its manager

_____

    By:  Michael Katz, Manager


**CHARLES STERLING LLC**

By:  Charles Sterling 15 LLC, its manager

_____

    By:  Michael Katz, Manager


**RUSKIN GARDEN APARTMENTS LLC**

_____

By:  Saul B. Katz, Managing Member

**BON-MICK, INC.**

_____

By:    Michael Katz, Vice President

08-01789-cgm    Doc 4789-2    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 87 of 170
Case 1:11-cv-03605-JSR    Document 165-2    Filed 04/13/12    Page 80 of 70

**SEE HOLDINGS I**

By:   Michael Katz, Partner

**SEE HOLDINGS II**

By:   Saul B. Katz, Partner

**STERLING BRUNSWICK CORPORATION**

By:   Michael Katz, Manager

**STERLING EQUITIES INVESTORS**

By:   Michael Katz, Partner

**STERLING HERITAGE, L.L.C.**

By:   Michael Katz, Managing Member

**STERLING JET LTD.**

By:   Fred Wilpon, President

**STERLING JET II, LTD.**

By:   Saul B. Katz, President

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 88 of 170

Case qm-cv-03009-JSR    Document 185-2    Filed 04/13/12    Page 91 of 170

**STERLING PATHOGENESIS COMPANY**

_____
By:   Michael Katz, Partner


**STERLING THIRD ASSOCIATES**

_____
By:   Michael Katz, Partner


**VALLEY HARBOR ASSOCIATES**

_____
By:   Saul B. Katz, Partner


**KIMBERLY WACHTLER**

_____
Kimberly Wachtler


**MINOR 1**

_____
By:   Jeffrey Wilpon


**MINOR 2**

_____
By:   Jeffrey Wilpon


**MICHAEL SCHREIER**

_____
Michael Schreier

**STERLING PATHOGENESIS COMPANY**

By:  Michael Katz, Partner

**STERLING THIRD ASSOCIATES**

By:  Michael Katz, Partner

**VALLEY HARBOR ASSOCIATES**

By:  Saul B. Katz, Partner

**KIMBERLY WACHTLER**

Kimberly Wachtler

**MINOR 1**

By:  Jeffrey Wilpon

**MINOR 2**

By:  Jeffrey Wilpon

**MICHAEL SCHREIER**

Michael Schreier

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 90 of 170

Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 93 of 170

**STERLING PATHOGENESIS COMPANY**

By:  Michael Katz, Partner

**STERLING THIRD ASSOCIATES**

By:  Michael Katz, Partner

**VALLEY HARBOR ASSOCIATES**

By:  Saul B. Katz, Partner

**KIMBERLY WACHTLER**

Kimberly Wachtler

**MINOR 1**

By:  Jeffrey Wilpon

**MINOR 2**

By:  Jeffrey Wilpon

**MICHAEL SCHREIER**

Michael Schreier

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 91 of 170
Case 1:11-cv-03605-JSR    Document 185-2    Filed 04/13/12    Page 84 of 170

**REALTY ASSOCIATES MADOFF II**

By:   Fred Wilpon Family Trust, partner

By:   Richard Wilpon, Trustee

**STERLING AMERICAN PROPERTY III
L.P.**

By:   Sterling American Advisors III LLC, a
general partner

    By:   Sterling Advisors III LLC, a managing
member

    By:   Michael Katz, Executive Vice
President

**STERLING AMERICAN PROPERTY IV
L.P.**

By:   Sterling American Advisors IV LLC, a
general partner

    By:   Sterling Advisors IV LLC, a managing
member

    By:   Michael Katz, Senior Executive Vice
President

**SAUL B. KATZ**

_____

Saul B. Katz, in his capacity as Guarantor
as defined herein

**FRED WILPON**

_____

Fred Wilpon, in his capacity as Guarantor
as defined herein

Schedule 1

Summary of Allowed Net Equity Claims Against the BLMIS Estate
April 13, 2012

| Totals | 56 | | | $177,563,039.08 | |
|---|---|---|---|---|---|

| Account | Line 1 | Line 2 | Line 3 | Net Equity | Claim Number |
|---|---|---|---|---|---|
| 1KW001 | BON MICK FAMILY PARTNERS L P | | | $32,040.00 | 009928 |
| 1KW013 | DAYLE KATZ | | | $380,435.00 | 009930 |
| 1KW019 | MICHAEL KATZ | | | $306,936.04 | 009932 |
| 1KW061 | ELISE C TEPPER | | | $1,779,065.42 | 009937 |
| 1KW076 | JEFFREY S WILPON | & VALERIE WILPON JT TENANTS | | $3,104,689.36 | 009939 |
| 1KW108 | GREGORY KATZ | | | $178,937.89 | 009947 |
| 1KW109 | HOWARD KATZ | MICHAEL KATZ AS CUSTODIAN | | $48,125.00 | 009948 |
| 1KW110 | TODD KATZ | MICHAEL KATZ AS CUSTODIAN | | $34,073.00 | 009949 |
| 1KW206 | THE WILPON FAMILY 1997 | DESCENDANT'S TRUST | C/O STERLING EQUITIES | $220,000.00 | 009909 |
| 1KW209 | DANIEL WILPON | RICHARD A WILPON AS CUSTODIAN | | $282,659.14 | 009910 |
| 1KW242 | SAUL B KATZ FAMILY TRUST | | | $4,875,617.50 | 009913 |
| 1KW248 | DAYLE H & MICHAEL KATZ | FOUNDATION INC | | $617,000.00 | 009916 |
| 1KW260 | FRED WILPON FAMILY TRUST | | | $678,485.79 | 009920 |
| 1KW263 | MARVIN B TEPPER | | | $440,800.00 | 009921 |
| 1KW275 | L THOMAS OSTERMAN 1999 TRUST | | | $15,720.00 | 009923 |
| 1KW276 | PATRICIA THACKRAY 1999 TRUST | | | $21,220.00 | 009924 |
| 1KW302 | RUTH FRIEDMAN | | | $72,444.27 | 009902 |
| 1KW303 | ELISE TEPPER AS CUSTODIAN | FOR GRANDCHILDREN | | $144,365.50 | 009903 |
| 1KW305 | VALERIE AND JEFFREY S WILPON | FOUNDATION | | $70,050.00 | 009905 |
| 1KW309 | DAN KNOPF | HEATHER KNOPF JT TEN | C/O STERLING EQUITIES | $198,000.00 | 009898 |
| 1KW313 | STERLING THIRTY VENTURE LLC | TR | | $8,068,675.34 | 009897 |
| 1KW319 | THE TEPPER FAMILY FOUNDATION | | | $30,895.00 | 009894 |
| 1KW320 | THE DEBRA & RICHARD A WILPON | FOUNDATION | | $18,550.00 | 009887 |
| 1KW321 | THE PHYLLIS & THOMAS OSTERMAN | FAMILY FOUNDATION | | $92,500.00 | 009888 |
| 1KW330 | THE RUTH AND ARTHUR FRIEDMAN | FAMILY FOUNDATION | | $65,000.00 | 009889 |
| 1KW346 | ROBBINSVILLE PARK LLC | | | $239,000.00 | 009893 |
| 1KW347 | FS COMPANY LLC | | | $5,627,711.66 | 009886 |
| 1KW367 | ROBIN WACHTLER | & PHILIP WACHTLER JT/WROS | | $667,000.00 | 009883 |
| 1KW374 | METS II LLC | | | $3,556,888.64 | 009881 |
| 1KW384 | L THOMAS OSTERMAN | AND JILL PUPKE TIC | | $136,911.09 | 009879 |
| 1KW389 | SCOTT WILPON 2000 TRUST | RICHARD WILPON TRUSTEE | | $257,818.37 | 009878 |
| 1KW390 | JESSICA WILPON 2000 TRUST | RICHARD WILPON TRUSTEE | | $245,711.87 | 009877 |
| 1KW391 | KATZ 2002 DESCENDANTS TRUST | | | $70,500.00 | 009876 |
| 1KW396 | DEYVA ARTHUR | | | $306,000.00 | 009875 |
| 1KW402 | STERLING 10 LLC | STERLING EQUITIES | | $7,153,758.31 | 009872 |
| 1KW403 | RICHARD A WILPON | ANITA M TAPPY T.I.C | | $27,728.27 | 009870 |
| 1KW413 | CHARLES STERLING SUB LLC | (PRIMARY) | | $10,957,335.92 | 009871 |
| 1KW414 | CHARLES STERLING SUB LLC | (INTEREST) | | $5,302,466.42 | 009869 |
| 1KW420 | STERLING BRUNSWICK SEVEN LLC | | | $8,234,000.00 | 009868 |
| 1KW424 | HOWARD S KATZ | | C/O STERLING EQUITIES | $415,057.00 | 009866 |
| 1KW426 | GREGORY A KATZ | & AMY BETH KATZ JT/WROS | | $320,000.00 | 009865 |
| 1KW435 | STERLING INTERNAL V LLC | | C/O STERLING EQUITIES | $18,034,620.00 | 009863 |
| 1KW437 | STERLING ADVISORS IV LLC | | | $4,731,932.76 | 009862 |
| 1KW445 | WILPON 2002 DESCENDANT'S TRUST | | | $462,500.00 | 009861 |
| 1KW446 | THE THOMAS OSTERMAN FAMILY | 2006 GRANTOR TRUST | | $96,572.45 | 009860 |
| 1KW447 | STERLING TWENTY FIVE LLC | | | $36,728,168.21 | 009859 |
| 1KW455 | STERLING TRACING LLC | STERLING EQUITIES | ARTHUR FRIEDMAN | $24,523,164.00 | 009857 |
| 1KW457 | JACQUELINE TEPPER | | | $260,747.02 | 009856 |
| 1KW458 | NATALIE KATZ O'BRIEN | AND BRENDAN O'BRIEN JT WROS | | $570,000.00 | 009855 |
| 1KW460 | BRADOO-MOOMOO LLC | | C/O STERLING EQUITIES | $189,252.84 | 009854 |
| 1KW463 | STERLING VC IV LLC | STERLING EQUITIES | ATTN: ARTHUR FRIEDMAN | $1,933,625.00 | 009853 |
| 1KW464 | STERLING VC V LLC | STERLING EQUITIES | ATTN: ARTHUR FRIEDMAN | $11,803,944.00 | 009852 |
| 1KW465 | STERLING DIST PROPERTIES LLC | STERLING EQUITIES | ATTN: ARTHUR FRIEDMAN | $1,657,361.00 | 009851 |
| 1KW466 | COLLEGE PLACE ENTERPRISES LLC | | C/O STERLING EQUITIES | $2,960,000.00 | 009850 |
| 1KW467 | RV-RJW LLC | C/O STERLING EQUITIES | | $7,316,980.00 | 009849 |
| 1W0141 | JEFFREY S WILPON | & VALERIE WILPON JT/WROS | | $1,000,000.00 | 009847 |

1 of 1

08-01789-cgm Doc 4799-3 Filed 05/04/12 Entered 05/04/12 18:59:08 Trustees
Case 1:12-cv-03609-JSR Document 185-2 Filed 05/04/12 Page 87 of
Motion and Memorandum For Entry of Order Pursuant to Section 105 Pg 94 of 170

### Schedule 2

**Summary of Six-Year Transfers from BLMIS to Defendants in Excess of Principal**
**April 13, 2012**

| | Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 |
|---|---|---|---|---|---|---|
| Defendant(s) | | BLMIS Acct # | BLMIS Account Name | Total by Account | Proportionate Share | Proportionate Share - JT/TIC Accounts |
| Arthur Friedman<br>Ruth Friedman | | 1KW004 | ARTHUR FRIEDMAN & RUTH FRIEDMAN J/T WROS | $ 80,437 | 0.04943% | 0.02472%<br>0.02472% |
| Iris Katz | | 1KW014 | IRIS J KATZ C/O STERLING EQUITIES | $ 22,464,687 | 13.80516% | |
| Iris J. Katz and Saul B. Katz Family Foundation, Inc.<br>Judy and Fred Wilpon Family Foundation, Inc. | | 1KW016 | IRIS & SAUL KATZ FAM FDN INC AND JUDY & FRED WILPON FAMILY FDN INC TIC | $ 354,000 | 0.21754% | 0.10877%<br>0.10877% |
| Dayle Katz<br>Michael Katz | | 1KW020 | MICHAEL KATZ & DAYLE KATZ J/T WROS | $ 553,483 | 0.34013% | 0.17007%<br>0.17007% |
| Saul B. Katz | | 1KW024 | SAUL B KATZ | $ 7,108,639 | 4.36845% | |
| L. Thomas Osterman | | 1KW044 | L THOMAS OSTERMAN | $ 1,321,950 | 0.81237% | |
| Fred Wilpon | | 1KW067 | FRED WILPON | $ 1,680,520 | 1.03272% | |
| Judith Wilpon | | 1KW077 | JUDITH A WILPON C/O STERLING EQUITIES | $ 11,708,302 | 7.19507% | |
| Debra Wilpon<br>Richard Wilpon | | 1KW081 | RICHARD A WILPON & DEBRA WILPON J/T WROS | $ 1,131,467 | 0.69552% | 0.34766%<br>0.34766% |
| Iris J. Katz and Saul B. Katz Family Foundation, Inc. | | 1KW083 | IRIS KATZ & SAUL KATZ FAMILY FOUNDATION | $ 592,738 | 0.36425% | |
| College Place Enterprises LLC | | 1KW084 | COLLEGE PLACE ENTERPRISES PROFIT SHARING | $ 5,492,275 | 3.37515% | |
| Judy and Fred Wilpon Family Foundation, Inc. | | 1KW086 | JUDY WILPON & FRED WILPON FAM FDN INC | $ 2,011,180 | 1.23592% | |
| Philip Wachtler<br>Robin Wilpon Wachtler | | 1KW096 | PHILIP H WACHTLER AND ROBIN WILPON WACHTLER J/T WROS | $ 18,032 | 0.01108% | 0.00554%<br>0.00554% |
| Bruce N. Wilpon | | 1KW118 | BRUCE WILPON | $ 236,770 | 0.14550% | |
| Michael Katz<br>Saul B. Katz | | 1KW121 | MICHAEL KATZ & SAUL B KATZ TIC | $ 99,000 | 0.06084% | 0.03042%<br>0.03042% |
| Iris Katz | | 1KW154 | IRIS J KATZ C/O STERLING EQUITES | $ 258,080 | 0.15860% | |
| Judith Wilpon | | 1KW155 | JUDITH A WILPON C/O STERLING EQUITIES | $ 1,110,000 | 0.68213% | |
| Sterling 15C LLC | | 1KW156 | STERLING 15C LLC | $ 17,329,002 | 10.64914% | |
| Mets Limited Partnership | | 1KW192 | METS LIMITED PTR SPECIAL ATTN: LEN LABITA | $ 24,550,000 | 15.08664% | |
| Red Valley Partners | | 1KW198 | RED VALLEY PARTNERS | $ 233,000 | 0.14318% | |
| David Katz | | 1KW201 | DAVID M KATZ | $ 585,402 | 0.35975% | |
| Saul B. Katz | | 1KW238 | SAUL B KATZ - PM | $ 1,502,544 | 0.92335% | |
| Mets Limited Partnership | | 1KW247 | METS LIMITED PTR #2 ATTN LEN LABITA | $ 20,270,108 | 12.45653% | |
| Iris J. Katz and Saul B. Katz Family Foundation, Inc. | | 1KW252 | IRIS AND SAUL KATZ FAMILY FOUNDATION PM | $ 1,437,799 | 0.88357% | |
| Sterling Mets LP | | 1KW254 | STERLING METS LP-FUNDING ACCT PLYRS DEF SLRY OBL | $ 1,670,711 | 1.02670% | |
| Phyllis Rebell Osterman | | 1KW269 | PHYLLIS REBELL OSTERMAN | $ 107,000 | 0.06575% | |
| Saul B. Katz | | 1KW278 | SAUL B KATZ JI | $ 212,069 | 0.13032% | |
| Sterling Brunswick Corporation | | 1KW279 | STERLING BRUNSWICK CORP | $ 3,020 | 0.00186% | |
| Sterling Heritage LLC | | 1KW287 | STERLING HERITAGE LLC | $ 24,325 | 0.01495% | |
| Fred Wilpon Family Trust | | 1KW298 | FRED WILPON FAMILY TRUST TR | $ 1,156,806 | 0.71089% | |
| Saul B. Katz Family Trust | | 1KW299 | SAUL B KATZ TR | $ 421,762 | 0.25918% | |
| Sterling Equities Associates | | 1KW300 | STERLING EQUITIES | $ 800,000 | 0.49162% | |
| Debra Wilpon | | 1KW307 | DEBRA WILPON | $ 75,600 | 0.04646% | |
| Edward M. Tepper<br>Elise C. Tepper<br>Jacqueline G. Tepper | | 1KW308 | EDWARD TEPPER JACQUELINE TEPPER ELISE TEPPER TIC | $ 363,170 | 0.22318% | 0.07439%<br>0.07439%<br>0.07439% |
| Sterling Thirty Venture LLC | | 1KW314 | STERLING THIRTY VENTURE LLC B | $ 3,348,352 | 2.05765% | |
| Sterling Thirty Venture LLC | | 1KW315 | STERLING THIRTY VENTURE, LLC | $ 211,249 | 0.12982% | |
| Marvin B. Tepper | | 1KW322 | MARVIN B TEPPER DEFINED BENEFIT PLAN | $ 387,830 | 0.23833% | |
| Brooklyn Baseball Company LLC | | 1KW323 | BROOKLYN BASEBALL COMPANY | $ 329,354 | 0.20240% | |
| BAS Aircraft LLC | | 1KW325 | BAS AIRCRAFT LLC | $ 4,919 | 0.00302% | |
| Fred Wilpon<br>Saul B. Katz | | 1KW329 | FRED WILPON SAUL B KATZ TIC TAX ESCROW | $ 970,109 | 0.59616% | 0.29808%<br>0.29808% |
| Edward M. Tepper | | 1KW332 | EDWARD TEPPER | $ 206,346 | 0.12681% | |
| Saul B. Katz | | 1KW336 | SAUL B KATZ BRIAN HAHN JR TIC | $ 60,000 | 0.03687% | 0.03687% |
| Amy Beth Katz<br>Gregory Katz<br>Michael Katz | | 1KW345 | GREG KATZ AMY KATZ JT TEN MICHAEL KATZ TIC | $ 86,700 | 0.05328% | 0.01243%<br>0.01243%<br>0.02842% |
| 157 J.E.S. LLC | | 1KW348 | 157 J E S LLC | $ 389,682 | 0.23947% | |
| Coney Island Baseball Holding Company LLC | | 1KW349 | CONEY ISLAND BASEBALL HOLDING CO LLC | $ 29,426 | 0.01808% | |
| Michael Katz | | 1KW354 | MICHAEL KATZ-SEP | $ 108,243 | 0.06652% | |
| Sterling 20 LLC | | 1KW358 | STERLING 20 LLC | $ 181,023 | 0.11124% | |
| Sterling Equities | | 1KW359 | STERLING EQUITIES (GREENWOOD) C/O MATTHEW BERNSTEIN MS# NYC034091 | $ 38,499 | 0.02366% | |
| Saul B. Katz | | 1KW363 | SAUL B KATZ PAWLING REFINANCING | $ 59,061 | 0.03629% | |
| L. Thomas Osterman | | 1KW365 | L THOMAS OSTERMAN TRACING | $ 12,302 | 0.00756% | |
| Marvin B. Tepper | | 1KW366 | MARVIN B TEPPER TRACING | $ 27,007 | 0.01660% | |
| Estate of Leonard Schreier | | 1KW372 | ESTATE OF LEONARD J SCHREIER C/O SCHULTE ROTH & ZABEL KIM BAPTISTE ESQ | $ 263,836 | 0.16213% | |
| Saul B. Katz | | 1KW376 | VICKY SCHULTZ SAUL B KATZ TIC | $ 60,796 | 0.03736% | 0.03736% |
| Sterling Mets LP | | 1KW378 | STERLING METS (INSURANCE FUND | $ 350,000 | 0.21508% | |
| Arthur Friedman | | 1KW388 | ARTHUR FRIEDMAN ET AL. TIC | $ 45,153 | 0.02775% | 0.02775% |
| Fred Wilpon | | 1KW392 | FRED WILPON - APT TRACING | $ 10,495 | 0.00645% | |
| Saul B. Katz Family Trust | | 1KW407 | SAUL B KATZ FAMILY TRUST 2 C/O STERLING EQUITIES | $ 33,000 | 0.02028% | |

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 95 of 170

Case 1:11-cv-03605-JSR    Document 165-2    Filed 04/13/12    Page 98 of 170

**Schedule 2**

**Summary of Six-Year Transfers from BLMIS to Defendants in Excess of Principal**
**April 13, 2012**

| | Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 |
|---|---|---|---|---|---|---|
| Defendant(s) | | BLMIS Acct # | BLMIS Account Name | Total by Account | Proportionate Share | Proportionate Share - JT/TIC Accounts |
| Fred Wilpon Family Trust | | 1KW408 | FRED WILPON FAMILY TRUST 2 C/O STERLING EQUITIES | $ 159,778 | 0.09819% | |
| Arthur Friedman | | | | | | 0.03988% |
| David Katz | | | | | | 0.10011% |
| Estate of Leonard Schreier | | | | | | 0.15627% |
| Fred Wilpon | | | | | | 1.43815% |
| Fred Wilpon Family Trust | | | | | | 1.73197% |
| Jeffrey Wilpon | | | | | | 0.48834% |
| Katz 2002 Descendants' Trust | | 1KW412 | DAVID KATZ ET AL TIC | $ 13,244,256 | 8.13895% | 0.24335% |
| L. Thomas Osterman | | | | | | 0.16929% |
| Marvin B. Tepper | | | | | | 0.33207% |
| Michael Katz | | | | | | 0.23359% |
| Richard Wilpon | | | | | | 0.31172% |
| Saul B. Katz | | | | | | 0.97423% |
| Saul B. Katz Family Trust | | | | | | 1.59523% |
| Wilpon 2002 Descendants' Trust | | | | | | 0.32474% |
| Mets Limited Partnership | | 1KW423 | METS LIMITED PARTNERSHIP SHEA STADIUM | $ 9,101,837 | 5.59333% | |
| Arthur Friedman | | | | | | 0.03487% |
| David Katz | | | | | | 0.24047% |
| Elise C. Tepper | | | | | | 0.03973% |
| Estate of Leonard Schreier | | | | | | 0.04997% |
| Fred Wilpon | | | | | | 0.38640% |
| Fred Wilpon Family Trust | | | | | | 0.79480% |
| Gregory Katz | | | | | | 0.02941% |
| Iris J. Katz and Saul B. Katz Family Foundation, Inc. | | 1KW427 | SAUL B KATZ ET AL TIC | $ 5,690,849 | 3.49718% | 0.22256% |
| Jeffrey Wilpon | | | | | | 0.07358% |
| L. Thomas Osterman | | | | | | 0.04942% |
| Marvin B. Tepper | | | | | | 0.16930% |
| Michael Katz | | | | | | 0.10135% |
| Red Valley Partners | | | | | | 0.04371% |
| Richard Wilpon | | | | | | 0.16636% |
| Saul B. Katz | | | | | | 0.30044% |
| Saul B. Katz Family Trust | | | | | | 0.79480% |
| FFB Aviation LLC | | 1KW434 | FFB AVIATION LLC C/O STERLING EQUITIES | $ 112,975 | 0.06943% | |
| Sterling American Advisors II LP | | 1KW436 | STERLING AMERICAN ADVISORS II LP | $ 177,415 | 0.10903% | |
| SEE Holdco LLC | | 1KW449 | SEE HOLDCO LLC | $ 60,000 | 0.03687% | |
| Gregory Katz | | 1KW453 | GREG KATZ (TR) C/O STERLING EQUITIES | $ 2,398 | 0.00147% | |
| | | | | $ 162,726,768 | 100.00000% | |

Case 1:11-cv-03605-JSR   Document 185-2   Filed 04/13/12   Page 89 of 99

# EXHIBIT A

## ASSIGNMENT OF DEFENDANT NET EQUITY CLAIMS

The undersigned, _____ (the "Assignor"), a party to the Settlement

Agreement and Release (the "Settlement Agreement") approved by the District

Court for the Southern District of New York on May __, 2012, which resolved

*Picard v. Katz, et al.*, 11-CV-03605 (JSR) and which became effective on May __

2012, for good and valuable consideration, the receipt and sufficiency of which

are hereby acknowledged, does hereby absolutely, unconditionally and

irrevocably transfer and assign, to Irving H. Picard, as trustee (the "Trustee") for

the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C.

§§ 78aaa *et seq.*, of Bernard L. Madoff Investment Securities LLC ("BLMIS"), all

right, title and interest in and to the Assignor's Defendant Net Equity Claim[s] (as

such term is defined in the Settlement Agreement); <u>provided</u> that the Trustee's

rights with respect to the Assignor's Defendant Net Equity Claims assigned

hereby are set forth in the Settlement Agreement, the terms of which are

incorporated herein by reference as if restated herein in full.


IN WITNESS WHEREOF, dated the __ day of April, 2012.

Assignor:                                          Trustee:


_____            _____

# EXHIBIT C

Case 1:11-cv-03605-JSR    Document 185-3    Filed 04/16/12    Page 2 of 79

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT<br>SECURITIES LLC,<br><br>               Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of<br>Bernard L. Madoff Investment Securities LLC,<br><br>               Plaintiff,<br><br>       v.<br><br>SAUL B. KATZ, et al.,<br><br>               Defendants. | Adv. Pro. No. 10-05287 (BRL)<br><br>11-Civ.-03605 (JSR)(HBP) |

**ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FEDERAL RULE OF BANKRUPTCY**
**PROCEDURE 9019(a) APPROVING THE SETTLEMENT AGREEMENT**

Upon the motion and memorandum (the "Motion") of Irving H. Picard (the "Trustee"), as

trustee for the liquidation of Bernard L. Madoff Investment Securities LLC under the Securities

Investor Protection Act, 15 U.S.C. §§78aaa *et seq.*, substantively consolidated with the

bankruptcy estate of Bernard L. Madoff, seeking entry of an order, pursuant to 11 U.S.C.

§ 105(a) and Rules 2002 and 9019(a) of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules"), approving the settlement and compromise by and among the Trustee and

the Defendants; and it appearing that the relief requested by the Motion is necessary and in the

best interests of the customers of BLMIS, the estate and all parties in interest; and it appearing

that due and sufficient notice has been given to all parties in interest as required by Bankruptcy

Rules 2002 and 9019, and no other or further notice is necessary; and the Court having

considered the supporting affidavit of the Trustee and the supporting Declaration of Mario M.

Cuomo; and the Court having found and determined that the legal and factual bases set forth in

the Motion establish just cause for the relief granted herein; and after due deliberation, it is

hereby ORDERED:

    1.      The Motion is granted.

    2.      The Settlement Agreement dated April 13, 2012, entered into by and among the

Trustee and the Defendants, which is incorporated herein by reference as if reinstated herein in

full, together with any and all schedules, exhibits and ancillary documents referred to in the

Settlement Agreement, which are an integral part of the Settlement Agreement (collectively, the

"Agreement"), a copy of which is attached to this Order as Exhibit A, is authorized and approved

in its entirety.

    3.      Upon the Effective Date of the Agreement, the Parties are authorized, without the

need for further order of this Court, to execute, deliver, implement and fully perform any and all

obligations, instruments, documents and papers and to take any and all actions reasonably

necessary to consummate the Settlement Agreement.

    5.      This Order shall be effective and enforceable immediately upon entry.

    6.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the Settlement Agreement or this Order.

Date: New York, New York
_____, 2012

                              _____
                              JED S. RAKOFF
                              UNITED STATES DISTRICT JUDGE

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 101 of 170

Case 9:11-cv-03608-JSR   Document 185-3   Filed 04/13/12   Page 4 of 73

# EXHIBIT A

08-01789-cgm   Doc 4789-2   Filed 05/04/12   Entered 05/04/12 18:59:03   of Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 102 of 170
Case 1:11-cv-03605-JSR   Document 185-3   Filed 04/16/12   Page 5 of 79

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

IRVING H. PICARD,              :

           Plaintiff,     :

    - against -        :    11-CV-03605 (JSR)(HBP)

SAUL B. KATZ, et al.,      :

          Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made and entered into as of April 13, 2012, by and among Irving H. Picard ("Trustee"), in his capacity as the trustee for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), and Saul B. Katz, Fred Wilpon, Richard Wilpon, Michael Katz, Jeffrey Wilpon, David Katz, Gregory Katz, Arthur Friedman, L. Thomas Osterman, Marvin B. Tepper, Estate of Leonard Schreier, Jason Bacher, Mets Limited Partnership, Sterling Mets L.P., Mets II LLC, FS Company L.L.C., Bon Mick Family Partners L.P., Charles Sterling Sub LLC, College Place Enterprises LLC, FFB Aviation LLC, Iris J. and Saul B. Katz Family Foundation Inc., Judy and Fred Wilpon Family Foundation, Inc., Red Valley Partners, Robbinsville Park LLC, SEE Holdco, LLC, Sterling 10 LLC, Sterling 15C L.L.C., Sterling 20 LLC, Sterling American Advisors II L.P., Sterling Brunswick Seven L.L.C., Sterling DIST Properties LLC, Sterling Equities, Sterling Equities Associates, Sterling Internal V LLC, Sterling Thirty Venture LLC, Sterling Tracing LLC, Sterling Twenty Five LLC,

Sterling VC IV LLC, Sterling VC V LLC, Saul B. Katz Family Trust, Fred Wilpon Family Trust, Katz 2002 Descendants' Trust, Wilpon 2002 Descendants' Trust, Iris Katz, Judith Wilpon, Dayle Katz, Debra Wilpon, Valerie Wilpon, Amy Beth Katz, Heather Katz Knopf, Howard Katz, Natalie Katz O'Brien, Todd Katz, Bruce N. Wilpon, Daniel Wilpon, Jessica Wilpon, Robin Wilpon Wachtler, Philip Wachtler, Scott Wilpon, Ruth Friedman, Phyllis Rebell Osterman, Elise C. Tepper, Jacqueline G. Tepper, Edward M. Tepper, Devya Schreier Arthur, Sterling Acquisitions LLC, and Sterling American Property V L.P. (collectively the "Remaining Defendants"), and Sterling Mets Associates, Sterling Mets Associates II, Mets One LLC, Mets Partners, Inc., C.D.S. Corp., Coney Island Baseball Holding Company L.L.C., Brooklyn Baseball Company L.L.C., 157 J.E.S. LLC, Air Sterling LLC, BAS Aircraft LLC, Bon-Mick, Inc., Charles 15 Associates, Charles 15 LLC, Charles Sterling LLC, Ruskin Garden Apartments LLC, SEE Holdings I, SEE Holdings II, Sterling Brunswick Corporation, Sterling Equities Investors, Sterling Heritage L.L.C., Sterling Jet Ltd., Sterling Jet II Ltd., Sterling PathoGenesis Company, Sterling Third Associates, Valley Harbor Associates, Kimberly Wachtler, Minor 1, Minor 2, Michael Schreier, Realty Associates Madoff II, Sterling American Property III L.P., and Sterling American Property IV L.P. (collectively the "Dismissed Defendants" and, together with the Remaining Defendants, the "Defendants").  Each of the Trustee and each of the Defendants shall be referred to herein as a "Party" and together as the "Parties."

## RECITALS

A.      BLMIS and its predecessor were registered broker-dealers with the United States Securities and Exchange Commission (the "Commission") and members of the Securities Investor Protection Corporation ("SIPC");

B.      On December 11, 2008, the Commission filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and

Madoff. On December 12, 2008, the District Court entered an order which, among other things, appointed Lee S. Richards, Esq. as receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS));

C.    On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 78eee(a)(3) of SIPA alleging, *inter alia,* that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee as the trustee for the liquidation of the business of BLMIS under section 78eee(b)(3) of SIPA, removed the Receiver as the receiver for BLMIS, and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 78eee(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL);

D.    On April 13, 2009, an involuntary bankruptcy petition under chapter 7 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), was filed against Madoff. By Order dated June 2, 2009, the Bankruptcy Court substantively consolidated Madoff's estate into the BLMIS estate in the SIPA liquidation proceeding (the BLMIS estate consolidated with Madoff's estate collectively are referred to herein as the "BLMIS Estate");

E.    On or about June 18, 2009, certain Defendants filed customer claims in the SIPA liquidation proceeding in connection with their BLMIS accounts, including with respect to accounts in which they had deposited more money than they had withdrawn. The Trustee often refers to such accounts as "net loser" accounts.

3

F.      On March 1, 2010, the Bankruptcy Court issued an opinion affirming the

Trustee's calculation of customers' "net equity" claims as the difference between the amounts a

customer invested with BLMIS and the amounts that customer withdrew from BLMIS (the "Net

Investment Method").  On March 8, 2010, the Bankruptcy Court entered an order implementing

its decision and certifying it for immediate appeal to the United States Court of Appeals for the

Second Circuit, which on August 16, 2011, upheld the Trustee's use of the Net Investment

Method as a proper basis for calculating "net equity" claims in *In re Bernard L. Madoff Inv. Sec.*

*LLC*, 654 F.3d 229 (2d Cir. 2011) ("Second Circuit Net Equity Order"), *petition for cert. filed,*

*Sterling Equities Assoc. v. Picard*, No. 11-968, 2012 WL 396523 (Feb. 3, 2012);

G.      On December 7, 2010, the Trustee filed an action in the Bankruptcy Court

captioned *Picard v. Katz, et al.*, Adv. Pro. No. 10-5287 (BRL) (the "Action"), and on March 18,

2011, filed an amended complaint (the "Amended Complaint") in the Action, which asserted

claims under section 78fff-2(c)(3) of SIPA, sections 544(b), 547(b), 548(a), 550(a) and 551 of

the Bankruptcy Code, the New York Debtor and Creditor Law § 270 *et seq.*, and other laws;

H.      The Trustee alleged in the Amended Complaint, among other claims, that certain

Defendants received avoidable transfers of "fictitious profits" during the six-year period

preceding December 11, 2008 in the aggregate amount of One Hundred Sixty-Two Million

Seven Hundred Twenty-Six Thousand Seven Hundred Sixty-Eight United States Dollars

($162,726,768) (the "Alleged Six-Year Profits");

I.      Prior to the filing of the Action, the Trustee undertook discovery concerning

Defendants and their investments with BLMIS pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure ("Rule 2004 Discovery"), during which Defendants, among others,

produced documents to the Trustee and provided deposition testimony;

4

Case 3:11-cv-03608-JSR    Document 85-3    Filed 04/16/12    Page 9 of 79

J.      On March 20, 2011, Defendants filed a motion in the Bankruptcy Court to dismiss the Amended Complaint or, in the alternative, for summary judgment dismissing the Amended Complaint (the "Motion to Dismiss");

K.      On May 26, 2011, Defendants filed a motion pursuant to 28 U.S.C. § 157(d) in the District Court to withdraw the reference of the Action to the Bankruptcy Court;

L.      By Order dated July 1, 2011 and ruling on August 19, 2011, the District Court withdrew for all purposes the reference of the Action to the Bankruptcy Court, which included withdrawal of the Motion to Dismiss;

M.      By Order dated July 12, 2011 (the "Allocation Order"), the Bankruptcy Court approved the Trustee's initial allocation of property to the customer property fund and authorized the Trustee to make an interim distribution to customers holding allowed "net equity" claims. Pursuant to that Order, on or about October 5, 2011, the Trustee made a first interim distribution to customers holding allowed "net equity" claims as of September 30, 2011, in the approximate amount of 4.602% per dollar of their allowed "net equity" claims. No Defendant held an allowed "net equity" claim as of that date, and, therefore, no Defendant received any portion of the distribution.

N.      On September 27, 2011, the District Court issued an Opinion and Order (the "Dismissal Order") denying in part and granting in part the Motion to Dismiss and dismissing all counts of the Amended Complaint except Count 1, which alleged that Defendants received intentional fraudulent transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code, and Count 11, which sought to equitably subordinate Defendants' claims pursuant to section 510(c) of the Bankruptcy Code;

O.      On October 7, 2011, the Trustee filed a motion (the "Certification Motion")
seeking certification of the rulings in the Dismissal Order for interlocutory appeal under 28
U.S.C. § 1292(b), or to have the District Court enter final judgment with respect to the dismissed
claims under Rule 54(b) of the Federal Rules of Civil Procedure.  On January 17, 2012, the
District Court issued an Opinion and Order denying the Certification Motion and reinstating
Count 9 of the Complaint insofar as it sought to avoid transfers under section 550(a) of the
Bankruptcy Code in accordance with the Dismissal Order;

P.      Between August 12, 2011 and January 13, 2012, the Parties engaged in discovery
under Rules 26 through 34 of the Federal Rules of Civil Procedure, during which Defendants,
among others, produced documents to the Trustee and provided deposition testimony;

Q.      On January 26, 2012, Defendants filed a motion for summary judgment
dismissing all remaining counts of the Amended Complaint, and the Trustee filed a motion for
partial summary judgment as to Count 1 of the Amended Complaint insofar as his Count 1
claims sought to avoid an aggregate amount of Eighty Three Million Three Hundred Nine
Thousand One Hundred Sixty Two United States Dollars ($83,309,162) of transfers of "fictitious
profits" from BLMIS to Defendants during the two-year period preceding December 11, 2008;

R.      On March 5, 2012, the District Court issued an order setting forth the Court's
bottom line rulings denying Defendants' motion for summary judgment and granting the
Trustee's motion for partial summary judgment while leaving unresolved, although capped at the
$83,309,162 sought by the Trustee, the amount of "fictitious profits" received by Defendants that
were subject to avoidance;

S.      On March 16, 2012, the Parties executed a legally binding Memorandum of
Understanding (the "MOU"), in which they agreed to a final, binding, and legally enforceable

6

settlement of the Action (the "Settlement").  The Parties agreed to work expeditiously and in

good faith to enter into definitive documentation reflecting the terms of the MOU and other

terms customary for such agreements;

T.      Pursuant to the MOU, the Trustee announced that, upon review of the evidence,

he determined that he was no longer pursuing the willful blindness claims asserted against any

Defendant; and

U.      On March 19, 2012, the District Court reviewed the MOU, which requires, among

other things, approval of the Settlement by the District Court and any necessary approval by

Defendants' lenders by no later than April 13, 2012.

**NOW, THEREFORE**, it is hereby **AGREED** by and among the Parties to the

Agreement, for the good and valuable consideration set forth herein, the adequacy and

sufficiency of which is recognized for all purposes, that:

1.      **Definitions**.  In addition to the definitions of various terms set forth elsewhere in

this Agreement, the following terms shall have the following meanings as used in this

Agreement:

(a)      "Approval Order" means the order of the District Court approving the

terms of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

(b)      "Defendant General Creditor Claim" means any claim, other than a

Defendant Net Equity Claim (defined below), asserted by any Defendant, with respect to

amounts claimed to be held on account for such Defendant at BLMIS at the time of its

bankruptcy, against (i) the BLMIS Estate or (ii) any forfeiture or other fund, established or yet to

be established, for the benefit of BLMIS customers.  Defendants' rights and the Trustee's

obligations with respect to Defendant General Creditor Claims are set forth in paragraph 2(k)
below.

    (c)  "Defendant Net Equity Claim" means the "net equity" claim of any
Defendant in BLMIS's SIPA liquidation proceeding, which the Trustee has determined in
accordance with the Net Investment Method and which will be allowed in the aggregate amount
of One Hundred Seventy-Seven Million Five Hundred Sixty-Three Thousand Thirty-Eight
United States Dollars and Eight Cents ($177,563,039.08), regardless of the source of payment in
respect of such Claim.  A schedule of each Defendant Net Equity Claim reflecting the specific
account number, account holder's name, the net equity in each account, and the claim number
that identifies the claim filed by each account holder is attached as Schedule 1 to the Agreement.
The Parties acknowledge and agree that if the Net Investment Method for calculating the value
of "net equity" claims is found to be incorrect or is otherwise modified, the Trustee will
retroactively adjust the calculation of the value of each Defendant Net Equity Claim to reflect the
new methodology

    (d)  "Effective Date" means the date on which the District Court enters the
Approval Order.  The Parties acknowledge and agree that (i) prior to the Effective Date, the
following shall be delivered to the Trustee:  (x) an executed Assignment, as defined below, of
each Defendant Net Equity Claim; and (y) an executed release (or executed acknowledgement of
release) of any lien, interest or encumbrance, held prior to the Assignment by any lender to the
Defendants or other third party, on or against any part, or all, of each Defendant Net Equity
Claim and/or Assigned Claim Recoveries (as defined below) up to the amount of the Settlement
Payment (as defined below) (such release or acknowledgement of release a "Release of Lien"),
which shall remain in effect until the Settlement Payment is paid in full, and (ii) on the Effective

Date, the Trustee shall deliver to Defendants an executed stipulation of dismissal to be filed on, or as soon as practicable following, the Effective Date.

2. **Payment Obligation, Claims, and Related Matters**. On the terms and subject to the conditions and limitations set forth in this Agreement, Defendants will pay or cause to be paid to the Trustee an aggregate amount of One Hundred Sixty-Two Million United States Dollars ($162,000,000) (the "Settlement Payment"). The Settlement Payment will be satisfied during the five, twelve-month periods following the Effective Date (the "Settlement Payment Term"). The first of such twelve-month periods shall be referred to as the "First Period"; the second twelve-month period shall run from the end of the First Period and be referred to as the "Second Period"; and each successive twelve-month Period thereafter shall run from the end of the prior Period through and including the "Fifth Period." The Settlement Payment shall be satisfied by the following means:

(a) Assignment of Defendant Net Equity Claims. Each Defendant unconditionally and irrevocably agrees to assign to the Trustee by written assignment (individually, the "Assignment," and collectively, the "Assignments"), the form of which is attached hereto as Exhibit A, his, her or its Defendant Net Equity Claim (collectively, the "Assigned Claims") solely for the purpose of satisfying the Settlement Payment. No assigned Defendant Net Equity Claim (or recovery in respect of a Defendant Net Equity Claim in excess of amounts necessary to satisfy the Settlement Payment) shall become property of the BLMIS estate nor be used for any purpose other than to satisfy the Settlement Payment. The Trustee shall not transfer or assign any Defendant Net Equity Claim, except as expressly contemplated by this Agreement.

(b)    <u>Allowance of Defendant Net Equity Claims</u>.  The Trustee will allow the

Defendant Net Equity Claims, which will then be entitled to full recovery on the same basis as

"good faith" customers of BLMIS, except that Defendant Net Equity Claims will not be entitled

to receive an advance from SIPC, as provided for in 15 U.S.C. § 78fff-3.

(c)    <u>Assigned Claim Recoveries</u>.  The Assigned Claims will be entitled to

100% of all distributions made by the Trustee from BLMIS customer property or any other

payment of allowed claims of "good faith" customers of BLMIS from any source (collectively,

"<u>Assigned Claim Recoveries</u>"), including, but not limited to, (i) from any forfeiture fund

established by the U.S. Department of Justice pursuant to 28 C.F.R. Part 9 and (ii) the 4.602%

"catch-up" distribution in the amount of Eight Million One Hundred Seventy-One Thousand

Four Hundred Fifty-One United States Dollars ($8,171,451) made pursuant to the Bankruptcy

Court's Allocation Order but not previously paid in connection with any Defendant Net Equity

Claim.  The Trustee represents that, as of the Effective Date, there has been only one (1)

distribution from the fund of customer property to customers holding allowed "net equity"

claims, such distribution occurred on or about October 5, 2011, pursuant to the Bankruptcy

Court's Allocation Order, and was in the amount of 4.602% of customers' allowed "net equity"

claims.

(d)    In connection with any distribution made in respect of the Assigned

Claims, any and all Assigned Claim Recoveries shall immediately and automatically be applied

to reduce Defendants' obligations in respect of the Settlement Payment on a dollar-for-dollar

basis.  Promptly thereafter (but not later than seven (7) calendar days), the Trustee shall provide

written notice to Defendants (i) of any remaining balance of the Settlement Payment after

Assigned Claim Recoveries have been so applied and (ii) if/when the Settlement Payment is fully satisfied.

(e)      During the First through the Third Periods of the Settlement Payment Term, Defendants' payment obligations pursuant to this Agreement are limited solely to Assigned Claim Recoveries, and, during such periods, no Defendant is obligated to make any payment in excess of or in addition to Assigned Claim Recoveries.  Upon full satisfaction of the Settlement Payment at any time during the Settlement Payment Term, the Trustee shall promptly (but not later than seven (7) calendar days) re-assign the Assigned Claims to Defendants by executing and delivering an assignment to each of the Defendants or their designee(s), limited to a maximum, potential recovery of the difference between the value of the aggregate amount of the Defendant Net Equity Claims and the value of the Defendant Net Equity Claims previously applied to reduce Defendants' obligations in respect of the Settlement Payment (such difference being the "Tail Payment").  Upon full satisfaction of the Settlement Payment, Defendants shall be entitled to receive in full any distributions in respect of Defendant Net Equity Claims on the same basis as "good faith" customers of BLMIS, including any distribution made after the end of the Fifth Period.

(f)      For the avoidance of doubt, unless and until the Settlement Payment is fully satisfied, the Trustee shall have no obligation to re-assign the Assigned Claims to the Defendants, and the Defendants shall not be entitled to receive all or any part of the Tail Payment.

(g)      Defendants' Installment Payments.  If the Settlement Payment is not fully satisfied after applying all of the Assigned Claim Recoveries during the First through the Third Periods of the Settlement Payment Term, the remaining unpaid amount of the Settlement

11

Payment (the "Remaining Amount") shall be divided into two equal annual installments to be

paid no later than the end of the Fourth and Fifth Periods of the Settlement Payment Term. Any

and all Assigned Claim Recoveries received during the Fourth and Fifth Periods shall

immediately and automatically be applied to the next due installment during the Fourth and Fifth

Periods of the Settlement Payment Term to reduce the payment in respect of the Remaining

Amount for that Period. If the installment payment for the Fourth Period is satisfied in full by

Assigned Claim Recoveries, any excess will be applied to the Fifth Period installment. The

annual installment payments shall be made by wire transfer of immediately available funds in

accordance with written instructions provided by the Trustee to Defendants no later than thirty

(30) days prior to the relevant payment date.

      (h)    Each Defendant shall be responsible, on a several and not joint basis, for

his, her, or its proportionate (*i.e.*, percentage) share of the Remaining Amount in proportion to

his, her, or its proportionate share of the Alleged Six-Year Profits. With respect to accounts held

jointly or as tenants in common, each Defendant shall be responsible, on a several and not joint

basis, for his, her, or its proportionate share of that account's proportionate share of the

Remaining Amount. A detailed schedule of the Alleged Six-Year Profits reflecting the relevant

BLMIS account number, the account holder's name, the Defendant or Defendants related to each

such BLMIS account, the amount of the Alleged Six-Year Profits by account, and each

Defendant's proportionate share of the Alleged Six-Year Profits is attached as Schedule 2 to this

Agreement.

      (i)    Fred Wilpon and Saul Katz Guarantees. Fred Wilpon and Saul Katz

("Guarantors"), jointly and severally, irrevocably and unconditionally, and regardless of which

Defendant fails to pay his, her, or its proportionate share of the Remaining Amount, hereby

12

guarantee payment of the Remaining Amount owed to the Trustee up to an aggregate amount of

Twenty-Nine Million United States Dollars ($29,000,000) (the "Guarantee"). The Trustee shall

not recover on the Guarantee unless a Defendant has not paid in full his, her, or its proportionate

share of the Remaining Amount at the end of the Fourth and/or Fifth Periods of the Settlement

Payment Term. In the event that a Defendant does not pay his, her, or its proportionate share of

the Remaining Amount when it is due, the Trustee shall, within three (3) business days, make a

written demand of the Guarantors, who shall promptly (but not later than three (3) business days

from the date of the Trustee's written demand) satisfy the demand. Under no circumstances shall

the aggregate amount of any payments made by the Guarantors in satisfaction of the Guarantee

exceed $29,000,000.

    (j)  Following the Effective Date, the Parties shall agree to specific dates for

each of the First through the Fifth Periods of the Settlement Payment Term as follows:

| |
|---|
| EFFECTIVE DATE: [Month/Date/2012] |
| END OF FIRST PERIOD: Twelve calendar months following the Effective Date, or [Month/Date/2013] |
| END OF SECOND PERIOD: Twelve calendar months following the end of the First Period, or [Month/Date/2014] |
| END OF THIRD PERIOD: Twelve calendar months following the end of the Second Period, or [Month/Date/2015] |
| END OF FOURTH PERIOD: Twelve calendar months following the end of the Third Period, or [Month/Date/2016] |
| END OF FIFTH PERIOD: Twelve calendar months following the end of the Fourth Period, or [Month/Date/2017] |

       (k)     The Trustee shall treat the Defendant General Creditor Claims on the same basis as he treats the same types of claims asserted by "good faith" customers, including with respect to any recoveries to which such claims will be entitled.

     3.    **Mutual Releases**.

       (a)     Except with respect to any rights and obligations arising under this Agreement (including rights and obligations relating to Defendant Net Equity Claims and Defendant General Creditor Claims), the Trustee, for himself and on behalf of BLMIS, Madoff, and the BLMIS Estate ("Trustee Releasors"), hereby fully, finally, and forever releases, remises, relinquishes, and discharges Defendants and their professionals and agents from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on willful blindness, strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown, that are, have been, could have been, or might in the future be, asserted by the Trustee against Defendants based on, arising out of, or relating in any way to Madoff,  BLMIS, their liquidation proceedings, the BLMIS Estate or any BLMIS account held in the name of any Defendant (the "<u>Trustee Released Claims</u>").

       (b)     Except with respect to any rights and obligations arising under this Agreement (including rights and obligations relating to Defendant Net Equity Claims and Defendant General Creditor Claims), each of the Defendants for himself, herself or itself, and in

the case of a corporate or partnership Defendant, its shareholders, members, officers and directors, partners, their successors in interest and assigns ("Defendant Releasors"), hereby fully, finally, and forever releases, remises, relinquishes, and discharges the Trustee, his professionals and agents and the BLMIS Estate from any and all claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown, that are, have been, could have been, or might in the future be, asserted by Defendant Releasors against the Trustee based on, arising out of, or relating in any way to Madoff,  BLMIS, their liquidation proceedings, the BLMIS Estate and any BLMIS account held by any of the Defendants (the "Defendant Released Claims").

        (c)      With respect to any and all Trustee Released Claims or Defendant Released Claims, the Trustee and Defendant Releasors shall expressly waive or be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 (to the extent it applies herein) and any provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

        A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
        WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO
        EXIST IN HIS OR HER FAVOR AT THE TIME OF
        EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
        OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
        HER SETTLEMENT WITH THE DEBTOR.

Except with respect to the rights and obligations arising under this Agreement, the Trustee and

Defendants each acknowledge that each may hereafter discover facts in addition to or different

from those that each now knows or believes to be true with respect to the subject matter of the

Trustee Released Claims or the Defendant Released Claims, respectively, but the Trustee and

Defendants each shall expressly have and shall be deemed to have fully, finally, and forever

settled, released, and discharged any and all Trustee Released Claims and Defendant Released

Claims, respectively, known or unknown, suspected or unsuspected, contingent or non-

contingent, whether or not concealed or hidden, which now exist or heretofore have existed,

upon any theory of law or equity now existing or coming into existence in the future, including

conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty,

law or rule, without regard to the subsequent discovery or existence or such different or

additional facts.

        4.     **Termination of Litigation**.  On or as soon as practical after the Effective Date,

the Parties will file a stipulation of dismissal dismissing the Action with prejudice and without

cost to any Party.  Within three (3) business days after the Effective Date, Defendants shall

withdraw their petition for a writ of *certiorari* filed with the United States Supreme Court from

the Second Circuit Net Equity Order.  Defendants agree not to pursue or join any other litigation,

or to provide legal counsel to any other defendant involved in any litigation, involving the

Trustee or SIPC arising out of or relating to BLMIS, Madoff, their liquidation proceeding and

the BLMIS Estate, including filing any motion, memorandum or other court document, except

with respect to (i) any rights or obligations arising under this Agreement; (ii) the litigation

involving, among others, Eric Saretsky on behalf of the participants in the Sterling Equities

Employees Retirement Plan; and (iii) the litigation captioned *Picard v. Estate of Marjorie K.*

*Osterman, et al.* The Parties agree not to make any disparaging statement with respect to each other or the Settlement.

     5.    **Conditions**. Notwithstanding any provision of this Agreement to the contrary, the obligations of the Parties are subject to the receipt of (a) approval of the Settlement by the District Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and entry of the Approval Order, and (b) any required lender approvals, which shall be obtained by no later than April 13, 2012.

     6.    **Representations and Warranties**.

     (a)    The Trustee hereby represents and warrants to Defendants that, subject to the Approval Order: (i) he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder; (ii) this Agreement has been duly executed and delivered by the Trustee and constitutes the valid and binding agreement of the Trustee, enforceable against the Trustee in accordance with its terms; and (iii) in executing this Agreement, the Trustee has done so with the full knowledge of any and all rights that he may have with respect to the controversies herein compromised, and the Trustee has received or has had the opportunity to obtain independent legal advice from his counsel with regard to the facts relating to said controversies and with respect to the rights arising out of said facts.

     (b)    Each Defendant, solely with respect to himself, herself, or itself, hereby represents and warrants to the Trustee that: (i) he, she, or it has the full power, authority, legal right and capacity to execute and deliver this Agreement and to perform his, her, or its respective obligations hereunder; (ii) he, she, or it has the full power, authority and legal right to execute and deliver to the Trustee the Assignment of his, her, or its Defendant Net Equity Claim, which has not previously been assigned, except pursuant to a lien that has been released as

contemplated in paragraph 1(d)(i)(y), in whole or in part; (iii) he, she, or it has taken such steps

and actions, as necessary, such that the holders of any obligations entitled to notice from such

Defendant have been given notice of this Agreement and Defendant's obligations to the Trustee

under this Agreement; (iv) he, she or it has obtained a Release of Lien, a copy of which shall be

provided to the Trustee prior to the Effective Date; (v) the Assigned Claim is free and clear of

any lien, claim, interest or encumbrance held by any third party; (vi) this Agreement has been

duly executed and delivered by such Defendant and constitutes the valid and binding agreement

of such Defendant, enforceable against such Defendant in accordance with its terms; and (vii) in

executing this Agreement, such Defendant has done so with the full knowledge of any and all

rights that such Defendant may have with respect to the controversies herein compromised, and

such Defendant has received or has had the opportunity to obtain independent legal advice from

his, her, or its attorneys with regard to the facts relating to said controversies and with respect to

the rights arising out of said facts.

(c)     Each of the representations and warranties set forth in this paragraph 6

shall survive in perpetuity.

7.     **Further Assurances**.  Each Party shall execute and deliver any document or

instrument reasonably requested by the other Party after the date of this Agreement to effectuate

the intent of this Agreement.

8.     **Return, Destruction, and Confidentiality of Documents**.

(a)     Notwithstanding any other provision of this Agreement, and pursuant to

the October 30, 2011 protective order entered in the Action, the provisions of which are

incorporated herein by reference, any Party that received documents designated or identified as

"Confidential" or "Highly Confidential" by any other Party that produced the documents (the

"Producing Party") at any time in connection with the Action, including during Rule 2004

Discovery, the mediation relating to the Action, or in relation to this Agreement, shall, within

thirty (30) days of the final disposition of the Action, (a) return to the offices of the Producing

Party's counsel all such documents, including any copies thereof, or (b) if the Producing Party

does not require return of such documents, certify to counsel for the Producing Party that all such

documents, including any copies thereof, have been destroyed.  For the avoidance of doubt, the

obligations under this paragraph to return documents to the Producing Party include documents

produced by the Trustee to the Defendants.

   (b)  The Trustee agrees to maintain at all times the confidentiality of all

information provided by Defendants, on or before the date hereof, that Defendants designated

"Confidential" or "Highly Confidential."

  9.  **Entire Agreement**.  This Agreement (including all schedules and any exhibits

hereto) constitutes the entire agreement and understanding between the Parties pertaining to the

subject matter hereof and supersedes any and all prior or contemporaneous agreements,

including the MOU, representations and understandings of the Parties concerning the subject

matter hereof.

  10.  **Amendment; Waiver**.  This Agreement may not be terminated, amended or

modified in any way except by written instrument signed by all Parties hereto or their

successors-in-interest.  No waiver of any provision of this Agreement shall be deemed to

constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver

constitute a continuing waiver.

  11.  **Assignment**.  This Agreement may not be assigned by any Party without the prior

written consent of the other Parties, provided that nothing herein shall prohibit any Defendant

that is a corporation, partnership, limited liability company, or other entity from pledging or

assigning its interest in this Agreement in connection with borrowings or the sale of all or

substantially all of such Defendant's assets.  In the event of such a pledge or assignment, the

obligations of such Defendant shall remain in full force and effect and shall not be impaired.

Any such assignor shall provide to the Trustee written notice of the assignment of its interest in

this Agreement within ten (10) business days thereafter.

12.     **Successors**.  This Agreement shall be binding upon and inure to the benefit of

each Party and his, her, or its respective successors, heirs, estates, and personal representatives.

13.     **Construction**.  This Agreement has been fully negotiated by the Parties.  Each

Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that

ambiguities in an agreement or contract may be construed against the drafter shall not apply in

the construction or interpretation of this Agreement.  Words used herein, regardless of the

number and gender specifically used, shall be deemed and construed to include any other

number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context

indicates is appropriate.  Any reference in this Agreement to a paragraph is to a paragraph of this

Agreement.  "Including" is not intended to be a limiting term.

14.     **Headings**.  The headings in this Agreement are inserted only as a matter of

convenience and for reference and do not define, limit or describe the scope of this Agreement or

the scope or content of any of its provisions.

15.     **Choice of Law**.  This Agreement and any claim related directly or indirectly to

this Agreement shall be governed by and construed in accordance with the laws of the State of

New York (without regard to the principle of conflicts of law thereof), the Bankruptcy Code, and

SIPA.  Each Party hereby waives on behalf of itself and its successors and assigns any and all

right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

16. **Choice of Forum**. Any action arising out of this Agreement, or relating to the performance or breach of the Parties hereunder or the interpretation hereof, shall be brought exclusively in the District Court, and each of the Parties (a) consents to jurisdiction in such court, (b) agrees that it will not bring any action relating to this Agreement, including the performance or breach or interpretation of this Agreement, in any court other than the District Court, and (c) agrees that any such action should, to the extent possible, be referred to Judge Jed S. Rakoff.

17. **WAIVER OF JURY TRIAL**. THE PARTIES EXPRESSLY AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY FOR ANY CLAIM, COUNTERCLAIM, ACTION, OR OTHER PROCEEDING ARISING UNDER OR RELATING TO THIS AGREEMENT, ANY RIGHTS OR OBLIGATIONS HEREUNDER, THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS OR THE RELATIONSHIP BETWEEN THE PARTIES, IN EACH CASE WHETHER SUCH CLAIM, COUNTERCLAIM, ACTION, OR OTHER PROCEEDING IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE.

18. **Expenses**. Each Party shall bear its respective expenses relating to or arising out of this Agreement, including, but not limited to, fees for attorneys and other advisors.

19. **Notices**. All notices, requests, demands, consents and communications necessary or required under this Agreement shall be in writing and shall be delivered by hand or sent by registered or certified mail (return receipt requested), by overnight courier (with confirmation), by facsimile (receipt confirmed), or by electronic means (receipt confirmed), in each case

21

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

All such notices, requests, demands, consents and other communications shall be deemed to have

been duly given or sent two (2) days following the date on which mailed, or on the date on which

delivered by courier or by hand or by facsimile or electronic transmission (receipt confirmed),

addressed as follows:

| If to the Trustee: | If to any Defendant: |
|---|---|
| Irving H. Picard | c/o Davis Polk & Wardwell LLP |
| c/o Baker & Hostetler LLP | 450 Lexington Avenue |
| 45 Rockefeller Plaza | New York, New York 10017 |
| New York, New York 10111 | Attention:  Robert F. Wise, Jr. |
| Facsimile No.: (212) 589-4201 | Karen E. Wagner |
| | Dana M. Seshens |
| | Facsimile No.:  (212) 701-5800 |

with copies to:

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention:  David J. Sheehan
Fernando A. Bohorquez, Jr.
Facsimile No.: (212) 589-4201

20.     **No Third-Party Beneficiaries**.  Nothing contained in this Agreement is intended

to confer any benefit upon any person or entity other than the Parties hereto and their respective

successors and permitted assigns.

21.     **Counterparts**.  This Agreement may be executed and delivered in any number of

counterparts, each of which so executed and delivered shall be deemed to be an original and all

of which shall constitute one and the same document.  Each Party may evidence its execution of

this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the

same effect as the delivery of an original signature.

Each Party has caused this Agreement to be duly executed and delivered as of the date set

forth above.

**Irving H. Picard, the Trustee for the liquidation
proceedings of Bernard L. Madoff Investment
Securities LLC and the substantively
consolidated bankruptcy case of Bernard L.
Madoff**

Irving H. Picard

08-01789-cgm Doc 4799-3 Filed 05/04/12 Entered 05/04/12 18:59:03 Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105 Pg 125 of 170

Case 1:11-cv-03605-JSR Document 185-3 Filed 04/13/12 Page 28 of 70

**SAUL B. KATZ**

_____
Saul B. Katz


**FRED WILPON**

_____
Fred Wilpon


**RICHARD WILPON**

_____
Richard Wilpon


**MICHAEL KATZ**

_____
Michael Katz


**JEFFREY WILPON**

_____
Jeffrey Wilpon


**DAVID KATZ**

_____
David Katz


**GREGORY KATZ**

_____
Gregory Katz

**ARTHUR FRIEDMAN**

By:   Ruth Friedman, attorney-in-fact

_____

**L. THOMAS OSTERMAN**

_____
       L. Thomas Osterman

**MARVIN B. TEPPER**

_____
       Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

_____
By:   Fred Wilpon, Co-administrator

_____
By:   Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:   C.D.S. Corp., its general partner

_____
     By:   Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:   Mets Partners, Inc., its general partner

_____
     By:   David P. Cohen, Executive Vice
           President

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 127 of 170
Case 1:11-cv-03605-JSR    Document 185-3    Filed 05/15/12    Page 30 of 73

**ARTHUR FRIEDMAN**

By:   Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:   Fred Wilpon, Co-administrator

By:   Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:   C.D.S. Corp., its general partner

By:   Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:   Mets Partners, Inc., its general partner

By:   David P. Cohen, Executive Vice
      President

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 128 of 170

Case 1:11-cv-03605-JSR   Document 165-3   Filed 05/15/12   Page 31 of 73

**ARTHUR FRIEDMAN**

By:   Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:   Fred Wilpon, Co-administrator

By:   Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:   C.D.S. Corp., its general partner

By:   Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:   Mets Partners, Inc., its general partner

By:   David P. Cohen, Executive Vice
President

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 129 of 170

Case 1:11-cv-03605-JSR    Document 185-3    Filed 05/15/12    Page 32 of 73

**ARTHUR FRIEDMAN**

By:  Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:  Fred Wilpon, Co-administrator

By:  Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

By:  Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

By:  David P. Cohen, Executive Vice
President

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 130 of 170

Case 1:11-cv-03605-JSR   Document 165-3   Filed 05/15/12   Page 33 of 73

**ARTHUR FRIEDMAN**

_____

By:  Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

_____

L. Thomas Osterman

**MARVIN B. TEPPER**

_____

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

_____

By:  Fred Wilpon, Co-administrator

_____

By:  Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

_____

By:  Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

_____

By:  David P. Cohen, Executive Vice
President

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 131 of 170

Case 1:11-cv-03605-JSR    Document 185-3    Filed 05/15/12    Page 34 of 73

**Mets II LLC**

By:   Sterling Mets Associates II, its member

_____
   By:   Michael Katz, Partner


**FS COMPANY, L.L.C.**

By:   Sterling Heritage, L.L.C., its member

_____
   By:   Michael Katz, Managing Member


**CHARLES STERLING SUB LLC**

By:   Charles Sterling 15 LLC, its manager

_____
   By:   Michael Katz, Manager


**COLLEGE PLACE ENTERPRISES LLC**

_____
By:   Saul B. Katz, Member


**FFB AVIATION LLC**

_____
By:   Michael Katz, Manager


**IRIS J. & SAUL B. KATZ FAMILY
FOUNDATION INC.**

_____
By:   Saul B. Katz, Director

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 132 of 170

Case 1:11-cv-03605-JSR   Document 105-3   Filed 05/15/12   Page 35 of 73

**JUDY AND FRED WILPON FAMILY FOUNDATION, INC.**

By:   Fred Wilpon, Director

**RED VALLEY PARTNERS**

By:   David Katz, Partner

**ROBBINSVILLE PARK, LLC**

By:   Michael Katz, Manager

**SEE HOLDCO, LLC**

By:   SEE Management, LLC, its manager

By:   Saul B. Katz, Member

**STERLING 10 LLC**

By:   Michael Katz, Manager

**STERLING 15C L.L.C.**

By:   Michael Katz, Member

**STERLING 20 LLC**

By:   Michael Katz, Manager


**STERLING AMERICAN ADVISORS II L.P.**

By:   Sterling Advisors II Corp., a general partner

By:   Michael Katz, Executive Vice President


**STERLING BRUNSWICK SEVEN L.L.C.**

By:   Michael Katz, Manager


**STERLING DIST PROPERTIES LLC**

By:   Michael Katz, Manager


**STERLING EQUITIES**

By:   Michael Katz, Senior Executive Vice
      Preseident


**STERLING EQUITIES ASSOCIATES**

By:   Michael Katz, Partner

**STERLING INTERNAL V LLC**

By:   Michael Katz, Managing Member

**STERLING THIRTY VENTURE LLC**

By:   Michael Katz, Manager

**STERLING TRACING LLC**

By:   Michael Katz, Manager

**STERLING TWENTY FIVE LLC**

By:   Michael Katz, Manager

**STERLING VC IV LLC**

By:   Michael Katz, Manager

**STERLING VC V LLC**

By:   Michael Katz, Manager

**SAUL B. KATZ FAMILY TRUST**

By:   Michael Katz, Trustee

08-01789-cmm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 135 of 170

Case 1:11-cv-03605-JSR   Document 185-3   Filed 05/15/12   Page 38 of 73

**FRED WILPON FAMILY TRUST**

By: Richard Wilpon, Trustee


**KATZ 2002 DESCENDANTS' TRUST**

By: Saul B. Katz, Trustee


**WILPON 2002 DESCENDANTS' TRUST**

By: Fred Wilpon, Trustee


**IRIS KATZ**

Iris Katz


**JUDITH WILPON**

Judith Wilpon


**DAYLE KATZ**

Dayle Katz


**DEBRA WILPON**

Debra Wilpon

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 136 of 170

Case 1:11-cv-03605-JSR   Document 185-3   Filed 05/13/12   Page 39 of 73

**FRED WILPON FAMILY TRUST**

By:  Richard Wilpon, Trustee

**KATZ 2002 DESCENDANTS' TRUST**

By:  Saul B. Katz, Trustee

**WILPON 2002 DESCENDANTS' TRUST**

By:  Fred Wilpon, Trustee

**IRIS KATZ**

Iris Katz

**JUDITH WILPON**

Judith Wilpon

**DAYLE KATZ**

Dayle Katz

**DEBRA WILPON**

Debra Wilpon

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 137 of 170
Case 1:11-cv-03605-JSR   Document 185-3   Filed 05/15/12   Page 40 of 73

**FRED WILPON FAMILY TRUST**

By:   Richard Wilpon, Trustee

**KATZ 2002 DESCENDANTS' TRUST**

By:   Saul B. Katz, Trustee

**WILPON 2002 DESCENDANTS' TRUST**

By:   Fred Wilpon, Trustee

**IRIS KATZ**

Iris Katz

**JUDITH WILPON**

Judith Wilpon

**DAYLE KATZ**

Dayle Katz

**DEBRA WILPON**

Debra Wilpon

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 138 of 170

Case 1:11-cv-03605-JSR    Document 185-5    Filed 05/15/12    Page 41 of 73

**FRED WILPON FAMILY TRUST**

_____

By:   Richard Wilpon, Trustee


**KATZ 2002 DESCENDANTS' TRUST**

_____

By:   Saul B. Katz, Trustee


**WILPON 2002 DESCENDANTS' TRUST**

_____

By:   Fred Wilpon, Trustee


**IRIS KATZ**

_____

        Iris Katz


**JUDITH WILPON**

_____

        Judith Wilpon


**DAYLE KATZ**

_____

        Dayle Katz


**DEBRA WILPON**

_____

        Debra Wilpon

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 139 of 170

Case 1:11-cv-03608-JSR    Document 185-3    Filed 05/15/12    Page 42 of 73

**VALERIE WILPON**

_____
Valerie Wilpon


**AMY BETH KATZ**

_____
Amy Beth Katz


**HEATHER KATZ KNOPF**

_____
Heather Katz Knopf


**HOWARD KATZ**

_____
Howard Katz


**NATALIE KATZ O'BRIEN**

_____
Natalie Katz O'Brien


**TODD KATZ**

_____
Todd Katz


**BRUCE N. WILPON**

_____
Bruce N. Wilpon

08-01789-cm Doc 4799-2 Filed 05/04/12 Entered 05/04/12 18:59:02 Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105 Pg 140 of 170

Case 1:11-cv-03605-JSR Document 185-5 Filed 05/15/12 Page 43 of 73

**VALERIE WILPON**

_____

Valerie Wilpon


**AMY BETH KATZ**

_____

Amy Beth Katz


**HEATHER KATZ KNOPF**

_____

Heather Katz Knopf


**HOWARD KATZ**

_____

Howard Katz


**NATALIE KATZ O'BRIEN**

_____

Natalie Katz O'Brien


**TODD KATZ**

_____

Todd Katz


**BRUCE N. WILPON**

_____

Bruce N. Wilpon

08-01789-cgm    Doc 4799-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 141 of 170

Case 1:11-cv-03605-JSR    Document 185-3    Filed 05/15/12    Page 24 of 73

**VALERIE WILPON**

_____

Valerie Wilpon

**AMY BETH KATZ**

_____

Amy Beth Katz

**HEATHER KATZ KNOPF**

_____

Heather Katz Knopf

**HOWARD KATZ**

_____

Howard Katz

**NATALIE KATZ O'BRIEN**

_____

Natalie Katz O'Brien

**TODD KATZ**

_____

Todd Katz

**BRUCE N. WILPON**

_____

Bruce N. Wilpon

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 142 of 170

Case 1:11-cv-03605-JSR    Document 185-3    Filed 04/13/12    Page 45 of 73

**VALERIE WILPON**

_____
Valerie Wilpon


**AMY BETH KATZ**

_____
Amy Beth Katz


**HEATHER KATZ KNOPF**

_____
Heather Katz Knopf


**HOWARD KATZ**

_____
Howard Katz


**NATALIE KATZ O'BRIEN**

_____
Natalie Katz O'Brien


**TODD KATZ**

_____
Todd Katz


**BRUCE N. WILPON**

_____
Bruce N. Wilpon

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 143 of 170

Case 1:11-cv-03609-JSR   Document 185-3   Filed 05/15/12   Page 46 of 73

**VALERIE WILPON**

_____

Valerie Wilpon


**AMY BETH KATZ**

_____

Amy Beth Katz


**HEATHER KATZ KNOPF**

_____

Heather Katz Knopf


**HOWARD KATZ**

_____

Howard Katz


**NATALIE KATZ O'BRIEN**

_____

Natalie Katz O'Brien


**TODD KATZ**

_____

Todd Katz


**BRUCE N. WILPON**

_____

Bruce N. Wilpon

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 144 of 170

Case 1:11-cv-03605-JSR   Document 165-3   Filed 05/15/12   Page 47 of 73

**VALERIE WILPON**

_____

Valerie Wilpon


**AMY BETH KATZ**

_____

Amy Beth Katz


**HEATHER KATZ KNOPF**

_____

Heather Katz Knopf


**HOWARD KATZ**

_____

Howard Katz


**NATALIE KATZ O'BRIEN**

_____

Natalie Katz O'Brien


**TODD KATZ**

_____

Todd Katz


**BRUCE N. WILPON**

_____

Bruce N. Wilpon

08-01789-cgm    Doc 4789-2    Filed 05/04/12    Entered 05/04/12 18:59:03    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 145 of 170

Case 1:11-cv-03605-JSR    Document 185-3    Filed 05/15/12    Page 48 of 73

**DANIEL WILPON**

_____
Daniel Wilpon

**JESSICA WILPON KAMEL**

_____
Jessica Wilpon Kamel

**ROBIN WILPON WACHTLER**

_____
Robin Wilpon Wachtler

**PHILIP WACHTLER**

_____
Philip Wachtler

**SCOTT WILPON**

_____
Scott Wilpon

**RUTH FRIEDMAN**

_____
Ruth Friedman

**PHYLLIS REBELL OSTERMAN**

_____
Phyllis Rebell Osterman

08-01789-cmp Doc 4789-3 Filed 05/04/12 Entered 05/04/12 18:59:03 Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105 Pg 146 of 170

Case 1:11-cv-03605-JSR Document 185-3 Filed 05/15/12 Page 49 of 73

**DANIEL WILPON**

_____
Daniel Wilpon


**JESSICA WILPON KAMEL**

_____
Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____
Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____
Philip Wachtler


**SCOTT WILPON**

_____
Scott Wilpon


**RUTH FRIEDMAN**

_____
Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____
Phyllis Rebell Osterman

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:08   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 147 of 170

Case 1:11-cv-03605-JSR   Document 185-3   Filed 05/15/12   Page 30 of 73

**DANIEL WILPON**

_____

Daniel Wilpon

**JESSICA WILPON KAMEL**

_____

Jessica Wilpon Kamel

**ROBIN WILPON WACHTLER**

_____

Robin Wilpon Wachtler

**PHILIP WACHTLER**

_____

Philip Wachtler

**SCOTT WILPON**

_____

Scott Wilpon

**RUTH FRIEDMAN**

_____

Ruth Friedman

**PHYLLIS REBELL OSTERMAN**

_____

Phyllis Rebell Osterman

**DANIEL WILPON**

_____

Daniel Wilpon

**JESSICA WILPON KAMEL**

_____

Jessica Wilpon Kamel

**ROBIN WILPON WACHTLER**

_____

Robin Wilpon Wachtler

**PHILIP WACHTLER**

_____

Philip Wachtler

**SCOTT WILPON**

_____

Scott Wilpon

**RUTH FRIEDMAN**

_____

Ruth Friedman

**PHYLLIS REBELL OSTERMAN**

_____

Phyllis Rebell Osterman

08-01789-cgm   Doc 4789-3   Filed 05/04/12   Entered 05/04/12 18:59:08   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 149 of 170

Case 1:11-cv-03605-JSR   Document 135-5   Filed 04/13/12   Page 82 of 93

**DANIEL WILPON**

_____

Daniel Wilpon


**JESSICA WILPON KAMEL**

_____

Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____

Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____

Philip Wachtler


**SCOTT WILPON**

_____

Scott Wilpon


**RUTH FRIEDMAN**

_____

Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____

Phyllis Rebell Osterman

08-01789-cgm   Doc 4789-3   Filed 05/04/12   Entered 05/04/12 18:59:08   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 150 of 170

Case 1:11-cv-03605-JSR   Document 165-3   Filed 05/14/12   Page 83 of 79

**ELISE C. TEPPER**

_Elise C. Tepper_
_____
Elise C. Tepper


**JACQUELINE G. TEPPER**

_____
Jacqueline G. Tepper


**EDWARD M. TEPPER**

_____
Edward M. Tepper


**DEVYA SCHREIER ARTHUR**

_____
Devya Schreier Arthur


**STERLING ACQUISITIONS LLC**

_____
By:   Michael Katz, Member

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 151 of 170

Case 1:11-cv-03605-JSR    Document 185-3    Filed 05/15/12    Page 84 of 103

**ELISE C. TEPPER**

_____

Elise C. Tepper

**JACQUELINE G. TEPPER**

_____

Jacqueline G. Tepper

**EDWARD M. TEPPER**

_____

Edward M. Tepper

**DEVYA SCHREIER ARTHUR**

_____

Devya Schreier Arthur

**STERLING ACQUISITIONS LLC**

_____

By:   Michael Katz, Member

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 152 of 170

Case 1:11-cv-03605-JSR    Document 185-3    Filed 05/04/12    Page 85 of 103

**ELISE C. TEPPER**

_____

    Elise C. Tepper


**JACQUELINE G. TEPPER**

_____

    Jacqueline G. Tepper


**EDWARD M. TEPPER**

_____

    Edward M. Tepper


**DEVYA SCHREIER ARTHUR**

_____

    Devya Schreier Arthur


**STERLING ACQUISITIONS LLC**

_____

By:  Michael Katz, Member

08-01789-cgm    Doc 4789-3    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 153 of 170

Case 1:11-cv-03605-JSR    Document 165-3    Filed 05/15/12    Page 36 of 78

**ELISE C. TEPPER**

_____

    Elise C. Tepper

**JACQUELINE G. TEPPER**

_____

    Jacqueline G. Tepper

**EDWARD M. TEPPER**

_____

    Edward M. Tepper

**DEVYA SCHREIER ARTHUR**

_____

    Devya Schreier Arthur

**STERLING ACQUISITIONS LLC**

_____

By:  Michael Katz, Member

**ELISE C. TEPPER**

_____

Elise C. Tepper

**JACQUELINE G. TEPPER**

_____

Jacqueline G. Tepper

**EDWARD M. TEPPER**

_____

Edward M. Tepper

**DEVYA SCHREIER ARTHUR**

_____

Devya Schreier Arthur

**STERLING ACQUISITIONS LLC**

_____

By:  Michael Katz, Member

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:08   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 155 of 170
Case 1:11-cv-03605-JSR   Document 185-3   Filed 05/15/12   Page 88 of 103

**STERLING AMERICAN PROPERTY V L.P.**

By:  Sterling American Advisors V LLC, its
general partner

    By:  Sterling Advisors V LLC, its managing
member

        By:  Sterling SAP V Equity Partners
LLC, its managing member

        By:  Michael Katz, Co-CEO

**STERLING METS ASSOCIATES**

By:  Michael Katz, Partner

**STERLING METS ASSOCIATES II**

By:  Michael Katz, Partner

**METS ONE LLC**

By:  Sterling Mets Associates, its member

    By:  Michael Katz, Partner

**METS PARTNERS, INC.**

By:  David P. Cohen, Executive Vice President

**STERLING AMERICAN PROPERTY V L.P.**

By:  Sterling American Advisors V LLC, its
general partner

    By:  Sterling Advisors V LLC, its managing
member

        By:  Sterling SAP V Equity Partners
LLC, its managing member

          By:  Michael Katz, Co-CEO


**STERLING METS ASSOCIATES**

By:  Michael Katz, Partner


**STERLING METS ASSOCIATES II**

By:  Michael Katz, Partner


**METS ONE LLC**

By:  Sterling Mets Associates, its member

    By:  Michael Katz, Partner


**METS PARTNERS, INC.**

By:  David P. Cohen, Executive Vice President

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:08   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 157 of 170
Case 1:11-cv-03605-JSR   Document 185-3   Filed 05/15/12   Page 80 of 73

**C.D.S. CORP.**

By:  Fred Wilpon, CEO


**CONEY ISLAND BASEBALL HOLDING
COMPANY, L.L.C.**

By:  FS Company, L.L.C., its managing member

    By:  Sterling Heritage, L.L.C., its member

      By:  Michael Katz, Managing Member


**BROOKLYN BASEBALL COMPANY L.L.C.**

By:  FS Company, L.L.C., its managing member

    By:  Sterling Heritage, L.L.C, its member

      By:  Michael Katz, Managing Member


**157 J.E.S. LLC**

By:   Michael Katz, Manager


**AIR STERLING LLC**

By:   Michael Katz, Manager


**BAS AIRCRAFT LLC**

By:   Richard Wilpon, Manager

**BON-MICK FAMILY PARTNERS, L.P.**

By:  Bon Mick, Inc., its general partner

By:   Michael Katz, Vice President


**CHARLES 15 ASSOCIATES**

By:   Charles 15 LLC, a general partner

By:   Charles Sterling 15 LLC, its manager

By:  Michael Katz, Manager


**CHARLES 15 LLC**

By:   Charles Sterling 15 LLC, its manager

By:   Michael Katz, Manager


**CHARLES STERLING LLC**

By:   Charles Sterling 15 LLC, its manager

By:   Michael Katz, Manager


**RUSKIN GARDEN APARTMENTS LLC**

By:   Saul B. Katz, Managing Member

**BON-MICK, INC.**

_____

By:    Michael Katz, Vice President

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 160 of 170

Case 1:11-cv-03605-JSR    Document 185-3    Filed 04/13/12    Page 83 of 93

**SEE HOLDINGS I**

By:   Michael Katz, Partner

**SEE HOLDINGS II**

By:   Saul B. Katz, Partner

**STERLING BRUNSWICK CORPORATION**

By:   Michael Katz, Manager

**STERLING EQUITIES INVESTORS**

By:   Michael Katz, Partner

**STERLING HERITAGE, L.L.C.**

By:   Michael Katz, Managing Member

**STERLING JET LTD.**

By:   Fred Wilpon, President

**STERLING JET II, LTD.**

By:   Saul B. Katz, President

**STERLING PATHOGENESIS COMPANY**

By:   Michael Katz, Partner

**STERLING THIRD ASSOCIATES**

By:   Michael Katz, Partner

**VALLEY HARBOR ASSOCIATES**

By:   Saul B. Katz, Partner

**KIMBERLY WACHTLER**

Kimberly Wachtler

**MINOR 1**

By:   Jeffrey Wilpon

**MINOR 2**

By:   Jeffrey Wilpon

**MICHAEL SCHREIER**

Michael Schreier

08-01789-cgm   Doc 4799-2   Filed 05/04/12   Entered 05/04/12 18:59:08   Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105   Pg 162 of 170

Case 1:11-cv-03605-JSR   Document 165-3   Filed 05/15/12   Page 85 of 93

**STERLING PATHOGENESIS COMPANY**

By:  Michael Katz, Partner

**STERLING THIRD ASSOCIATES**

By:  Michael Katz, Partner

**VALLEY HARBOR ASSOCIATES**

By:  Saul B. Katz, Partner

**KIMBERLY WACHTLER**

Kimberly Wachtler

**MINOR 1**

By:  Jeffrey Wilpon

**MINOR 2**

By:  Jeffrey Wilpon

**MICHAEL SCHREIER**

Michael Schreier

08-01789-cgm    Doc 4799-3    Filed 05/04/12    Entered 05/04/12 18:59:08    Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105    Pg 163 of 170

Case 1:11-cv-03605-JSR    Document 185-3    Filed 04/13/12    Page 86 of 93

**STERLING PATHOGENESIS COMPANY**

By:  Michael Katz, Partner


**STERLING THIRD ASSOCIATES**

By:  Michael Katz, Partner


**VALLEY HARBOR ASSOCIATES**

By:  Saul B. Katz, Partner


**KIMBERLY WACHTLER**

Kimberly Wachtler


**MINOR 1**

By:  Jeffrey Wilpon


**MINOR 2**

By:  Jeffrey Wilpon


**MICHAEL SCHREIER**

Michael Schreier

08-01789-cgm Doc 4799-3 Filed 05/04/12 Entered 05/04/12 18:59:08 Trustees
Motion and Memorandum For Entry of Order Pursuant to Section 105 Pg 164 of 170

Case cgm-cv-03609-JSR Document 185-3 Filed 05/13/42 Page 87 of 70

**REALTY ASSOCIATES MADOFF II**

By: Fred Wilpon Family Trust, partner

By: Richard Wilpon, Trustee


**STERLING AMERICAN PROPERTY III L.P.**

By: Sterling American Advisors III LLC, a
   general partner

   By: Sterling Advisors III LLC, a managing
      member

      By: Michael Katz, Executive Vice
         President


**STERLING AMERICAN PROPERTY IV L.P.**

By: Sterling American Advisors IV LLC, a
   general partner

   By: Sterling Advisors IV LLC, a managing
      member

      By: Michael Katz, Senior Executive Vice
         President

**SAUL B. KATZ**

_____
Saul B. Katz, in his capacity as Guarantor
as defined herein


**FRED WILPON**

_____
Fred Wilpon, in his capacity as Guarantor
as defined herein

Summary of Allowed Net Equity Claims Against the BLMIS Estate
April 13, 2012

| Totals | 56 | | | $177,563,039.08 | |
|---|---|---|---|---|---|

| Account | Line 1 | Line 2 | Line 3 | Net Equity | Claim Number |
|---|---|---|---|---|---|
| 1KW001 | BON MICK FAMILY PARTNERS L P | | | $32,040.00 | 009928 |
| 1KW013 | DAYLE KATZ | | | $380,435.00 | 009930 |
| 1KW019 | MICHAEL KATZ | | | $306,936.04 | 009932 |
| 1KW061 | ELISE C TEPPER | | | $1,779,065.42 | 009937 |
| 1KW076 | JEFFREY S WILPON | & VALERIE WILPON JT TENANTS | | $3,104,689.36 | 009939 |
| 1KW108 | GREGORY KATZ | | | $178,937.89 | 009947 |
| 1KW109 | HOWARD KATZ | MICHAEL KATZ AS CUSTODIAN | | $48,125.00 | 009948 |
| 1KW110 | TODD KATZ | MICHAEL KATZ AS CUSTODIAN | | $34,073.00 | 009949 |
| 1KW206 | THE WILPON FAMILY 1997 | DESCENDANT'S TRUST | C/O STERLING EQUITIES | $220,000.00 | 009909 |
| 1KW209 | DANIEL WILPON | RICHARD A WILPON AS CUSTODIAN | | $282,659.14 | 009910 |
| 1KW242 | SAUL B KATZ FAMILY TRUST | | | $4,875,617.50 | 009913 |
| 1KW248 | DAYLE H & MICHAEL KATZ | FOUNDATION INC | | $617,000.00 | 009916 |
| 1KW260 | FRED WILPON FAMILY TRUST | | | $678,485.79 | 009920 |
| 1KW263 | MARVIN B TEPPER | | | $440,800.00 | 009921 |
| 1KW275 | L THOMAS OSTERMAN 1999 TRUST | | | $15,720.00 | 009923 |
| 1KW276 | PATRICIA THACKRAY 1999 TRUST | | | $21,220.00 | 009924 |
| 1KW302 | RUTH FRIEDMAN | | | $72,444.27 | 009902 |
| 1KW303 | ELISE TEPPER AS CUSTODIAN | FOR GRANDCHILDREN | | $144,365.50 | 009903 |
| 1KW305 | VALERIE AND JEFFREY S WILPON | FOUNDATION | | $70,050.00 | 009905 |
| 1KW309 | DAN KNOPF | HEATHER KNOPF JT TEN | C/O STERLING EQUITIES | $198,000.00 | 009898 |
| 1KW313 | STERLING THIRTY VENTURE LLC | TR | | $8,068,675.34 | 009897 |
| 1KW319 | THE TEPPER FAMILY FOUNDATION | | | $30,895.00 | 009894 |
| 1KW320 | THE DEBRA & RICHARD A WILPON | FOUNDATION | | $18,550.00 | 009887 |
| 1KW321 | THE PHYLLIS & THOMAS OSTERMAN | FAMILY FOUNDATION | | $92,500.00 | 009888 |
| 1KW330 | THE RUTH AND ARTHUR FRIEDMAN | FAMILY FOUNDATION | | $65,000.00 | 009889 |
| 1KW346 | ROBBINSVILLE PARK LLC | | | $239,000.00 | 009893 |
| 1KW347 | FS COMPANY LLC | | | $5,627,711.66 | 009886 |
| 1KW367 | ROBIN WACHTLER | & PHILIP WACHTLER JT/WROS | | $667,000.00 | 009883 |
| 1KW374 | METS II LLC | | | $3,556,888.64 | 009881 |
| 1KW384 | L THOMAS OSTERMAN | AND JILL PUPKE TIC | | $136,911.09 | 009879 |
| 1KW389 | SCOTT WILPON 2000 TRUST | RICHARD WILPON TRUSTEE | | $257,818.37 | 009878 |
| 1KW390 | JESSICA WILPON 2000 TRUST | RICHARD WILPON TRUSTEE | | $245,711.87 | 009877 |
| 1KW391 | KATZ 2002 DESCENDANTS TRUST | | | $70,500.00 | 009876 |
| 1KW396 | DEYVA ARTHUR | | | $306,000.00 | 009875 |
| 1KW402 | STERLING 10 LLC | STERLING EQUITIES | | $7,153,758.31 | 009872 |
| 1KW403 | RICHARD A WILPON | ANITA M TAPPY T.I.C | | $27,728.27 | 009870 |
| 1KW413 | CHARLES STERLING SUB LLC | (PRIMARY) | | $10,957,335.92 | 009871 |
| 1KW414 | CHARLES STERLING SUB LLC | (INTEREST) | | $5,302,466.42 | 009869 |
| 1KW420 | STERLING BRUNSWICK SEVEN LLC | | | $8,234,000.00 | 009868 |
| 1KW424 | HOWARD S KATZ | | C/O STERLING EQUITIES | $415,057.00 | 009866 |
| 1KW426 | GREGORY A KATZ | & AMY BETH KATZ JT/WROS | | $320,000.00 | 009865 |
| 1KW435 | STERLING INTERNAL V LLC | | C/O STERLING EQUITIES | $18,034,620.00 | 009863 |
| 1KW437 | STERLING ADVISORS IV LLC | | | $4,731,932.76 | 009862 |
| 1KW445 | WILPON 2002 DESCENDANT'S TRUST | | | $462,500.00 | 009861 |
| 1KW446 | THE THOMAS OSTERMAN FAMILY | 2006 GRANTOR TRUST | | $96,572.45 | 009860 |
| 1KW447 | STERLING TWENTY FIVE LLC | | | $36,728,168.21 | 009859 |
| 1KW455 | STERLING TRACING LLC | STERLING EQUITIES | ARTHUR FRIEDMAN | $24,523,164.00 | 009857 |
| 1KW457 | JACQUELINE TEPPER | | | $260,747.02 | 009856 |
| 1KW458 | NATALIE KATZ O'BRIEN | AND BRENDAN O'BRIEN JT WROS | | $570,000.00 | 009855 |
| 1KW460 | BRADOO-MOOMOO LLC | | C/O STERLING EQUITIES | $189,252.84 | 009854 |
| 1KW463 | STERLING VC IV LLC | STERLING EQUITIES | ATTN: ARTHUR FRIEDMAN | $1,933,625.00 | 009853 |
| 1KW464 | STERLING VC V LLC | STERLING EQUITIES | ATTN: ARTHUR FRIEDMAN | $11,803,944.00 | 009852 |
| 1KW465 | STERLING DIST PROPERTIES LLC | STERLING EQUITIES | ATTN: ARTHUR FRIEDMAN | $1,657,361.00 | 009851 |
| 1KW466 | COLLEGE PLACE ENTERPRISES LLC | | C/O STERLING EQUITIES | $2,960,000.00 | 009850 |
| 1KW467 | RV-RJW LLC | C/O STERLING EQUITIES | | $7,316,980.00 | 009849 |
| 1W0141 | JEFFREY S WILPON | & VALERIE WILPON JT/WROS | | $1,000,000.00 | 009847 |

Schedule 2

**Summary of Six-Year Transfers from BLMIS to Defendants in Excess of Principal**
**April 13, 2012**

| | Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 |
|---|---|---|---|---|---|---|
| | Defendant(s) | BLMIS Acct # | BLMIS Account Name | Total by Account | Proportionate Share | Proportionate Share - JT/TIC Accounts |
| | Arthur Friedman | 1KW004 | ARTHUR FRIEDMAN & RUTH FRIEDMAN J/T WROS | $ 80,437 | 0.04943% | 0.02472% |
| | Ruth Friedman | | | | | 0.02472% |
| | Iris Katz | 1KW014 | IRIS J KATZ C/O STERLING EQUITIES | $ 22,464,687 | 13.80516% | |
| | Iris J. Katz and Saul B. Katz Family Foundation, Inc. | 1KW016 | IRIS & SAUL KATZ FAM FDN INC and JUDY & FRED WILPON FAMILY FDN INC TIC | $ 354,000 | 0.21754% | 0.10877% |
| | Judy and Fred Wilpon Family Foundation, Inc. | | | | | 0.10877% |
| | Dayle Katz | 1KW020 | MICHAEL KATZ & DAYLE KATZ J/T WROS | $ 553,483 | 0.34013% | 0.17007% |
| | Michael Katz | | | | | 0.17007% |
| | Saul B. Katz | 1KW024 | SAUL B KATZ | $ 7,108,639 | 4.36845% | |
| | L. Thomas Osterman | 1KW044 | L THOMAS OSTERMAN | $ 1,321,950 | 0.81237% | |
| | Fred Wilpon | 1KW067 | FRED WILPON | $ 1,680,520 | 1.03272% | |
| | Judith Wilpon | 1KW077 | JUDITH A WILPON C/O STERLING EQUITIES | $ 11,708,302 | 7.19507% | |
| | Debra Wilpon | 1KW081 | RICHARD A WILPON & DEBRA WILPON J/T WROS | $ 1,131,467 | 0.69532% | 0.34766% |
| | Richard Wilpon | | | | | 0.34766% |
| | Iris J. Katz and Saul B. Katz Family Foundation, Inc. | 1KW083 | IRIS KATZ & SAUL KATZ FAMILY FOUNDATION | $ 592,738 | 0.36425% | |
| | College Place Enterprises LLC | 1KW084 | COLLEGE PLACE ENTERPRISES PROFIT SHARING | $ 5,492,275 | 3.37515% | |
| | Judy and Fred Wilpon Family Foundation, Inc. | 1KW086 | JUDY WILPON & FRED WILPON FAM FDN INC | $ 2,011,180 | 1.23592% | |
| | Philip Wachtler | 1KW096 | PHILIP H WACHTLER AND ROBIN WILPON WACHTLER J/T WROS | $ 18,032 | 0.01108% | 0.00554% |
| | Robin Wilpon Wachtler | | | | | 0.00554% |
| | Bruce N. Wilpon | 1KW118 | BRUCE WILPON | $ 236,770 | 0.14550% | |
| | Michael Katz | 1KW121 | MICHAEL KATZ & SAUL B KATZ TIC | $ 99,000 | 0.06084% | 0.03042% |
| | Saul B. Katz | | | | | 0.03042% |
| | Iris Katz | 1KW154 | IRIS J KATZ C/O STERLING EQUITES | $ 258,080 | 0.15860% | |
| | Judith Wilpon | 1KW155 | JUDITH A WILPON C/O STERLING EQUITIES | $ 1,110,000 | 0.68213% | |
| | Sterling 15C LLC | 1KW156 | STERLING 15C LLC | $ 17,329,002 | 10.64914% | |
| | Mets Limited Partnership | 1KW192 | METS LIMITED PTR SPECIAL ATTN: LEN LABITA | $ 24,550,000 | 15.08664% | |
| | Red Valley Partners | 1KW198 | RED VALLEY PARTNERS | $ 233,000 | 0.14318% | |
| | David Katz | 1KW201 | DAVID M KATZ | $ 585,402 | 0.35975% | |
| | Saul B. Katz | 1KW238 | SAUL B KATZ - PM | $ 1,502,544 | 0.92335% | |
| | Mets Limited Partnership | 1KW247 | METS LIMITED PTR #2 ATTN LEN LABITA | $ 20,270,108 | 12.45653% | |
| | Iris J. Katz and Saul B. Katz Family Foundation, Inc. | 1KW252 | IRIS AND SAUL KATZ FAMILY FOUNDATION PM | $ 1,437,799 | 0.88357% | |
| | Sterling Mets LP | 1KW254 | STERLING METS LP-FUNDING ACCT PLYRS DEF SLRY OBL | $ 1,670,711 | 1.02670% | |
| | Phyllis Rebell Osterman | 1KW269 | PHYLLIS REBELL OSTERMAN | $ 107,000 | 0.06575% | |
| | Saul B. Katz | 1KW278 | SAUL B KATZ JI | $ 212,069 | 0.13032% | |
| | Sterling Brunswick Corporation | 1KW279 | STERLING BRUNSWICK CORP | $ 3,020 | 0.00186% | |
| | Sterling Heritage LLC | 1KW287 | STERLING HERITAGE LLC | $ 24,325 | 0.01495% | |
| | Fred Wilpon Family Trust | 1KW298 | FRED WILPON FAMILY TRUST TR | $ 1,156,806 | 0.71089% | |
| | Saul B. Katz Family Trust | 1KW299 | SAUL B KATZ TR | $ 421,762 | 0.25918% | |
| | Sterling Equities Associates | 1KW300 | STERLING EQUITIES | $ 800,000 | 0.49162% | |
| | Debra Wilpon | 1KW307 | DEBRA WILPON | $ 75,600 | 0.04646% | |
| | Edward M. Tepper | 1KW308 | EDWARD TEPPER JACQUELINE TEPPER ELISE TEPPER TIC | $ 363,170 | 0.22318% | 0.07439% |
| | Elise C. Tepper | | | | | 0.07439% |
| | Jacqueline G. Tepper | | | | | 0.07439% |
| | Sterling Thirty Venture LLC | 1KW314 | STERLING THIRTY VENTURE LLC B | $ 3,348,352 | 2.05765% | |
| | Sterling Thirty Venture LLC | 1KW315 | STERLING THIRTY VENTURE, LLC | $ 211,249 | 0.12982% | |
| | Marvin B. Tepper | 1KW322 | MARVIN B TEPPER DEFINED BENEFIT PLAN | $ 387,830 | 0.23833% | |
| | Brooklyn Baseball Company LLC | 1KW323 | BROOKLYN BASEBALL COMPANY | $ 329,354 | 0.20240% | |
| | BAS Aircraft LLC | 1KW325 | BAS AIRCRAFT LLC | $ 4,919 | 0.00302% | |
| | Fred Wilpon | 1KW329 | FRED WILPON SAUL B KATZ TIC TAX ESCROW | $ 970,109 | 0.59616% | 0.29808% |
| | Saul B. Katz | | | | | 0.29808% |
| | Edward M. Tepper | 1KW332 | EDWARD TEPPER | $ 206,346 | 0.12681% | |
| | Saul B. Katz | 1KW336 | SAUL B KATZ BRIAN HAHN JR TIC | $ 60,000 | 0.03687% | 0.03687% |
| | Amy Beth Katz | 1KW345 | GREG KATZ AMY KATZ JT TEN MICHAEL KATZ TIC | $ 86,700 | 0.05328% | 0.01243% |
| | Gregory Katz | | | | | 0.01243% |
| | Michael Katz | | | | | 0.02842% |
| | 157 J.E.S. LLC | 1KW348 | 157 J.E.S LLC | $ 389,682 | 0.23947% | |
| | Coney Island Baseball Holding Company LLC | 1KW349 | CONEY ISLAND BASEBALL HOLDING CO LLC | $ 29,426 | 0.01808% | |
| | Michael Katz | 1KW354 | MICHAEL KATZ-SEF | $ 108,243 | 0.06652% | |
| | Sterling 20 LLC | 1KW358 | STERLING 20 LLC | $ 181,023 | 0.11124% | |
| | Sterling Equities | 1KW359 | STERLING EQUITIES (GREENWOOD) C/O MATTHEW BERNSTEIN MS# NYC034091 | $ 38,499 | 0.02366% | |
| | Saul B. Katz | 1KW363 | SAUL B KATZ PAWLING REFINANCINC | $ 59,061 | 0.03629% | |
| | L. Thomas Osterman | 1KW365 | L THOMAS OSTERMAN TRACING | $ 12,302 | 0.00756% | |
| | Marvin B. Tepper | 1KW366 | MARVIN B TEPPER TRACING | $ 27,007 | 0.01660% | |
| | Estate of Leonard Schreier | 1KW372 | ESTATE OF LEONARD J SCHREIER C/O SCHULTE ROTH & ZABEL KIM BAPTISTE ESQ | $ 263,836 | 0.16213% | |
| | Saul B. Katz | 1KW376 | VICKY SCHULTZ SAUL B KATZ TIC | $ 60,796 | 0.03736% | 0.03736% |
| | Sterling Mets LP | 1KW378 | STERLING METS INSURANCE FUND | $ 350,000 | 0.21508% | |
| | Arthur Friedman | 1KW388 | ARTHUR FRIEDMAN ET AL TIC | $ 45,153 | 0.02775% | 0.02775% |
| | Fred Wilpon | 1KW392 | FRED WILPON - APT TRACING | $ 10,495 | 0.00645% | |
| | Saul B. Katz Family Trust | 1KW407 | SAUL B KATZ FAMILY TRUST 2 C/O STERLING EQUITIES | $ 33,000 | 0.02028% | |

Case 1:11-cv-03605-JSR  Document 185-3  Filed 05/14/12  Page 31 of 33

**Schedule 2**

**Summary of Six-Year Transfers from BLMIS to Defendants in Excess of Principal**
**April 13, 2012**

| | | | Total by Account | Proportionate Share | Proportionate Share - JT/TIC Accounts |
|---|---|---|---|---|---|
| Defendant(s) | BLMIS Acct # | BLMIS Account Name | | | |
| Fred Wilpon Family Trust | 1KW408 | FRED WILPON FAMILY TRUST 2 C/O STERLING EQUITIES | $ 159,778 | 0.09819% | |
| Arthur Friedman | | | | | 0.03988% |
| David Katz | | | | | 0.10011% |
| Estate of Leonard Schreier | | | | | 0.15627% |
| Fred Wilpon | | | | | 1.43815% |
| Fred Wilpon Family Trust | | | | | 1.73197% |
| Jeffrey Wilpon | | | | | 0.48834% |
| Katz 2002 Descendants' Trust | 1KW412 | DAVID KATZ ET AL TIC | $ 13,244,256 | 8.13895% | 0.24335% |
| L. Thomas Osterman | | | | | 0.16929% |
| Marvin B. Tepper | | | | | 0.33207% |
| Michael Katz | | | | | 0.23359% |
| Richard Wilpon | | | | | 0.31172% |
| Saul B. Katz | | | | | 0.97423% |
| Saul B. Katz Family Trust | | | | | 1.59523% |
| Wilpon 2002 Descendants' Trust | | | | | 0.32474% |
| Mets Limited Partnership | 1KW423 | METS LIMITED PARTNERSHIP SHEA STADIUM | $ 9,101,837 | 5.59333% | |
| Arthur Friedman | | | | | 0.03487% |
| David Katz | | | | | 0.24047% |
| Elise C. Tepper | | | | | 0.03973% |
| Estate of Leonard Schreier | | | | | 0.04997% |
| Fred Wilpon Family Trust | | | | | 0.38640% |
| Gregory Katz | | | | | 0.79480% |
| Iris J. Katz and Saul B. Katz Family Foundation, Inc. | 1KW427 | SAUL B KATZ ET AL TIC | $ 5,690,849 | 3.49718% | 0.02941% |
| Jeffrey Wilpon | | | | | 0.22256% |
| L. Thomas Osterman | | | | | 0.07358% |
| Marvin B. Tepper | | | | | 0.04942% |
| Michael Katz | | | | | 0.16930% |
| Red Valley Partners | | | | | 0.10135% |
| Richard Wilpon | | | | | 0.04371% |
| Saul B. Katz | | | | | 0.16636% |
| Saul B. Katz Family Trust | | | | | 0.30044% |
| | | | | | 0.79480% |
| FFB Aviation LLC | 1KW434 | FFB AVIATION LLC C/O STERLING EQUITIES | $ 112,975 | 0.06943% | |
| Sterling American Advisors II LP | 1KW436 | STERLING AMERICAN ADVISORS II LP | $ 177,415 | 0.10903% | |
| SEE Holdco LLC | 1KW449 | SEE HOLDCO LLC | $ 60,000 | 0.03687% | |
| Gregory Katz | 1KW453 | GREG KATZ (TR) C/O STERLING EQUITIES | $ 2,398 | 0.00147% | |
| | | | $ 162,726,768 | 100.00000% | |

Case 1:11-cv-03605-JSR   Document 185-3   Filed 04/13/12   Page 72 of 73

# EXHIBIT A

## ASSIGNMENT OF DEFENDANT NET EQUITY CLAIMS

The undersigned, _____ (the "Assignor"), a party to the Settlement

Agreement and Release (the "Settlement Agreement") approved by the District

Court for the Southern District of New York on May __, 2012, which resolved

*Picard v. Katz, et al.*, 11-CV-03605 (JSR) and which became effective on May __

2012, for good and valuable consideration, the receipt and sufficiency of which

are hereby acknowledged, does hereby absolutely, unconditionally and

irrevocably transfer and assign, to Irving H. Picard, as trustee (the "Trustee") for

the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C.

§§ 78aaa *et seq.*, of Bernard L. Madoff Investment Securities LLC ("BLMIS"), all

right, title and interest in and to the Assignor's Defendant Net Equity Claim[s] (as

such term is defined in the Settlement Agreement); provided that the Trustee's

rights with respect to the Assignor's Defendant Net Equity Claims assigned

hereby are set forth in the Settlement Agreement, the terms of which are

incorporated herein by reference as if restated herein in full.


IN WITNESS WHEREOF, dated the __ day of April, 2012.

Assignor:                                    Trustee:


_____          _____