08-01789-cgm Doc 4799-3 Filed 05/04/12 Entered 05/04/12 18:59:03 Trustees
Affidavit in Support of Motion and Memorandum For Entry of Order  Pg 1 of 5
Case 1:11-cv-03605-JSR  Document 186  Filed 04/13/12  Page 1 of 5

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Fernando A. Bohorquez, Jr.
Regina L. Griffin

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard l. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAUL B. KATZ, et al.,<br><br>Defendants. | Adv. Pro. No. 10-05287 (BRL)<br><br>11- Civ.-03605 (JSR)(HBP) |

**TRUSTEE'S AFFIDAVIT IN SUPPORT OF MOTION AND MEMORANDUM FOR**
**ENTRY OF ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE**
**AND RULES 2002(a)(3) AND 9019(a) OF THE FEDERAL RULES OF**
<u>**BANKRUPTCY PROCEDURE APPROVING SETTLEMENT AGREEMENT**</u>

STATE OF NEW YORK    )
                                          ) ss:
COUNTY OF NEW YORK)

Irving H. Picard, being duly sworn, hereby attests as follows:

08-01789-cgm Doc 4799-3 Filed 05/04/12 Entered 05/04/12 18:59:03 Trustees
Affidavit in Support of Motion and Memorandum For Entry of Order  Pg 2 of 5

Case 1:11-cv-03605-JSR Document 186 Filed 04/13/12 Page 2 of 5

1. I am the trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff. I respectfully submit this affidavit in support of the motion (the "Motion") seeking entry of an order, pursuant to 11 U.S.C. § 105(a), and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure, approving the settlement (the "Settlement"), as memorialized in the Settlement Agreement dated April __, 2012, entered into by and among the Trustee and the Defendants ("Settlement Agreement").

2. I make this Affidavit based upon my own personal knowledge or upon information that I believe to be true. All capitalized terms not defined herein have the meaning ascribed to them in the Settlement Agreement submitted as Exhibit B to the Motion.

3. In the course of investigating the transfers from BLMIS to the Defendants and the claims against the Defendants in this matter, with the assistance of my counsel and consultants, and based upon a review of the BLMIS's books and records, interviews with, and review of documents submitted by, third parties, and discovery of the Defendants, I determined that certain Defendants had withdrawn in the aggregate $162,726,768 in fictitious profits from BLMIS during the six years prior to commencement of the SIPA liquidation proceeding, as alleged in the Amended Complaint in this matter.

4. Certain of the Defendants submitted customer claims against the BLMIS estate in the aggregate sum of $177,563,039.08, representing the amounts they had deposited with BLMIS over and above the amounts that they had withdrawn ("Defendant Net Equity Claims").

5. During the course of this litigation, I determined in my business judgment that a business resolution of the parties' disputes was in the best interests of the BLMIS customer fund and the estate as a whole.

08-01789-cgm Doc 4799-3 Filed 05/04/12 Entered 05/04/12 18:59:03 Trustees Affidavit in Support of Motion and Memorandum For Entry of Order Pg 3 of 5

Case 1:11-cv-03605-JSR Document 186 Filed 04/13/12 Page 3 of 5

6. In exercising my business judgment to settle this litigation, I considered the complexity of the issues raised in the litigation, the costs and risks of continuing the litigation to the point of judgment and the time and resources that would be expended by my counsel and consultants in continuing the litigation during a trial estimated to take two weeks or more. Based upon information provided by the Defendants concerning their financial condition, I considered the collectability of a judgment if I should prevail in the litigation. I also considered the advice of my counsel and the additional time and expense that would be incurred in the inevitable appeal from a favorable or adverse judgment.

7. Subject to financial diligence concerning the Defendants, in light of all of these facts and circumstances, I determined that the settlement terms, as set forth in the Memorandum of Understanding ("MOU"), furthered the interests of the customers of BLMIS, among other things, by adding $162,000,000 ("Settlement Payment") to the fund of customer property. The Settlement Payment represents the aggregate and rounded amount of the six-year fictitious profits received by Defendants, as alleged in the Amended Complaint, and exceeds the amount of the partial summary judgment of up to $83,309,162, obtained against the Defendants without further delay, expense and uncertainty.

8. Based upon financial information provided by Defendants since the MOU, and upon the advice of my counsel, we have become satisfied that Defendants' cash flow and lender covenants would not have enabled me to recover more for the BLMIS customer fund in the foreseeable future by litigating to the point of judgment.

9. The Settlement has been structured to facilitate administrative efficiency and cost effectiveness by an assignment of the Defendant Net Equity Claims. Those Claims will be assigned to me for the benefit of the fund of customer property. The assigned Net Equity Claims

08-01789-cgm Doc 4799-3 Filed 05/04/12 Entered 05/04/12 18:59:03 Trustees Affidavit in Support of Motion and Memorandum For Entry of Order Pg 4 of 5

Case 1:11-cv-03605-JSR Document 186 Filed 04/13/12 Page 4 of 5

will be allowed and all distributions in respect of those Claims will be made to the BLMIS customer fund until the Settlement Payment is fully satisfied. During the Settlement Payment Term negotiated by the Parties, each distribution from the fund of customer property on account of the Defendants' assigned Net Equity Claims will go back into the customer fund for *pro rata* distribution to all other BLMIS customers and commensurately will reduce the Defendants' Settlement Payment obligation. The Defendant New Equity Claims assigned to the Trustee will be entitled to a Catch-Up Payment of $8,171,451, representing the *pro rata* recovery that would have been made on account of such Claims with the first interim distribution to customers approved by the Bankruptcy Court. Recovery of the Settlement Payment is not dependent upon the Defendants' financial condition alone. Moreover, this process will be centralized with me and thus facilitate prompt recovery to customers and paydown of the Settlement Payment.

10. In addition to distributions from the fund of customer property, beginning in the fourth year following the Effective Date of the Settlement Agreement, if the Settlement Payment has not been fully satisfied by then, the Defendants will be obligated severally, but not jointly, to pay any shortfall in two, annual, lump-sum payments. The Settlement also requires the joint and several, unconditional personal guarantee of Saul Katz and Fred Wilpon up to $29,000,000. After full payment of the Settlement Payment, I will reassign to Defendants the Net Equity Claims up to the amount that represents the difference between the $177,563,039.08 and the $162,000,000 Settlement Payment.

11. The Defendants have agreed to no longer participate in any litigation involving the BLMIS Estate. Consistent with this obligation, they will withdraw their petition for *certiorari* from the Second Circuit Net Equity Order. Currently, due primarily to appeals from favorable settlements, I have had to reserve funds from the more than $9 billion that I have

08-01789-cgm   Doc 4799-3   Filed 05/04/12   Entered 05/04/12 18:59:03   Trustees
Affidavit in Support of Motion and Memorandum For Entry of Order    Pg 5 of 5

Case 1:11-cv-03605-JSR   Document 186   Filed 04/13/12   Page 5 of 5

recovered or have agreements to recover, which cannot be distributed to the innocent victims of Madoff's fraud. If the Second Circuit Net Equity Order should be reversed on appeal and, as a result, customers of BLMIS who withdrew more money from BLMIS than they deposited with BLMIS have allowable claims, those allowed claims would be entitled to a distribution. Under the Second Circuit Net Equity Order, those claims currently are not allowed. By withdrawing their petition for *certiorari*, the Defendants will not enable me to release the funds on reserve, but it is another step closer to that goal, so that more funds can be distributed as quickly as possible to innocent customers. By the Defendants' agreement to terminate their involvement in the BLMIS liquidation proceeding, we will conserve the resources that had been dedicated to litigating with Defendants.

12. For all of these reasons, I have determined in my business judgment that the Settlement, as memorialized in the Settlement Agreement, represents a fair, equitable and reasonable compromise of the Trustee's claims and is in the best interests of the fund of customer property and the BLMIS Estate. I respectfully ask that the Court approve the Settlement as memorialized in the Settlement Agreement.

/s/ Irving H. Picard
IRVING H. PICARD

Sworn to before me this 13th
day of April, 2012

/s/ Notary
Notary Public, State of New York
No. 01OL6220520
Qualified in New York County
Commission Expires April 12, 2014