**HERRRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10022-4728
Joshua J. Angel
Frederick E. Schmidt, Jr.
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
jangle@herrick.com
eschmidt@herrick.com

**BEASLEY HAUSER KRAMER**
**& GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone:  (561) 835-0900
Facsimile:  (561) 835-0939

**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

Attorneys for A&G Goldman Partnership and
Pamela Goldman, Individually and on behalf of a
similarly situated classes

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>           Plaintiff-Applicant,<br><br>           v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>           Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

## REPLY IN SUPPORT OF MOTION OF
## CLASS ACTION PLAINTIFFS FOR A DETERMINATION THAT THE
## COMMENCEMENT OF SECURITIES CLASS ACTION LAWSUITS AGAINST NON-
## DEBTOR PARTIES IS NOT PROHIBITED BY A PERMANENT INJUNCTION ISSUED
## BY THIS COURT OR VIOLATIVE OF THE AUTOMATIC STAY

A&G Goldman Partnership and Pamela Goldman, individually and on behalf of all others

similarly situated (collectively, the "Class Action Plaintiffs"), by and through their undersigned

counsel, as and for their reply in further support of their Motions to File a Securities Class Action

Lawsuit against Certain Non-Debtors (the "Motions")[1] (Doc. Nos. 4580, 4581), respectfully represent as follows:

## PRELIMINARY STATEMENT

The Class Action Plaintiffs, out of an abundance of caution, seek an order of this Court confirming that their Class Action Claims are not barred by the permanent injunction contained in the Court's Picower Settlement Order (the "Permanent Injunction"). They further seek confirmation that the prosecution of their Class Action Claims is not barred by the Automatic Stay. The Class Action Claims are neither "duplicative" nor "derivative" of claims which were or could have been asserted by the Trustee against the Picower Defendants. The Class Action Claims are federal securities law claims against the Picower Defendants for injuries suffered directly by *investors who purchased BLMIS Securities* at values which were artificially inflated.

As more fully set forth below, the Class Action Claims belong solely to the Class Action Plaintiffs who are the only plaintiffs with standing to pursue them. Although the Class Action Claims and the Trustee's claims are against the same parties and are based upon the same or similar facts, they seek to recover different damages for different injuries. While the damages sustained by the estate were occasioned by, and limited to, the fraudulent transfers made by BLMIS to the Picower Defendants, the damages sustained by the Class Action Plaintiffs were the result of injuries that arose from their purchase of overvalued securities and are measured by the difference between the value of their BLMIS securities at the time of purchase and the price paid by each purchaser.

Contrary to the Trustee's arguments, the Class Action Plaintiffs' damages are not dependent upon the approximately $7.2 billion that the Trustee alleges were fraudulently transferred by BLMIS to one or more of the Picower Defendants (collectively, the "Fraudulent

---

[1]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Motions.

HF 7389274v.5 #15628/0001

Transfers"). Importantly, the Class Action Plaintiffs do not seek to upset the Trustee's settlement with the Picower Defendants or any recovery of fraudulent transfers.

While the fraudulent transfers were the *raison d'etre* for the Trustee's avoidance claims against the Picower Defendants, the transfers are not critical to the Class Action Plaintiffs' federal securities law claims. Rather, the fraudulent transfers are nothing more than *evidence* of the Picower Defendants' control of BLMIS. Indeed, the damages sustained by the Class Action Plaintiffs for which the Picower Defendants are liable under federal securities law likely exceeds the $7.2 billion recovered by the Trustee and the United States Attorney on account of the Fraudulent Transfers. Moreover, the estate's claims against the Picower Defendants for avoidance and recovery of the Fraudulent Transfers (collectively, the "Fraudulent Transfer Claims") accrued independently and at different times than the Class Action Claims. While the estate's Fraudulent Transfer Claims accrued when the Picower Defendants received fraudulently transferred funds from BLMIS, the Class Action Claims accrued at the moment each investor purchased a BLMIS Security (hereafter defined).

The Trustee argues for an interpretation of the Permanent Injunction and the Automatic Stay that would be a departure from well-settled caselaw. The only relevant authority cited by the Trustee is this Court's decision in *Picard v. Stahl*, 443 B.R. 303 (Bankr. S.D.N.Y. 2011), which concerned only a preliminary (*i.e.* not permanent) injunction of a lawsuit which contained a federal securities claim among its many other counts. The Court did not decide in *Stahl* whether a permanent injunction of federal securities claims against non-debtor third parties could issue.

We have found no case in which a bankruptcy court has permanently enjoined federal securities laws claims—to our knowledge it has never occurred. In contrast, as more fully set forth below, there is extensive authority that holds that claims for violations of federal securities

3

law belong to *shareholders* and not to the bankrupt corporation, that such claims are not derivative of a bankrupt corporation's claims and that the prosecution of such claims is not stayed by section 362 of the Bankruptcy Code.

The contemporaneous litigation of federal securities claims and estate claims based upon the same underlying facts is commonplace and routine. Unlike the Trustee, who bases his legal conclusion upon the simple existence of overlapping facts, courts analyze whether or not the class/shareholders have suffered an injury particular to themselves. Such is the case here. The mere existence of common factual predicate has never been held to preclude assertion of federal securities claims against third parties on a permanent basis.

Here, the Class Action Plaintiffs' claims are based upon a federally established duty owing from the Picower Defendants directly to the purchasers of BLMIS Securities. The Class Action Plaintiffs' federal securities claims are neither duplicative nor derivative of the estate's fraudulent conveyance claim or other claim the estate may have against the Picower Defendants. Instead, the Class Action Claims are based upon established statutory remedies which render a control person directly liable to BLMIS shareholders for failing to act in good faith to prevent violations of the federal securities laws by BLMIS.

Lastly, in response to the Trustee's argument that the prosecution of the Class Action Claims would somehow undermine his ability to settle other avoidance claims, we are unaware of any other avoidance defendants who would have control liability under section 20(a) of the Exchange Act and the Trustee cites to none. Moreover, as the Trustee has conceded in other Madoff-related litigation and as this Court has already held, there is no basis to enjoin investor claims against the Picower Defendants because the Trustee has now <u>finally</u> <u>settled</u> and <u>released</u> his claims against those parties. The Picower Defendants are bound by the Settlement

HF 7389274v.5 #15628/0001

Agreement that this Court approved, and any third-party litigation against them could in no way affect or impact the resolution of those claims or otherwise affect the estate.

Accordingly, and because the Class Action Claims are non-derivative, the Court must find that the claims are not enjoined by the Permanent Injunction or the Automatic Stay. Indeed, the Court would lack jurisdiction to find any other way. *See Johns-Manville Corporation v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corporation)*, 600 F.3d 135, 152 (2d Cir. 2010) (affirming that "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate") (quoting *In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008)). Thus, the prosecution of the Class Action Claims is not barred by the Permanent Injunction, the Automatic Stay or any other order and should be permitted to proceed.

## ARGUMENT

The Trustee argues that prosecution of the Class Action Claims is enjoined by the Permanent Injunction because such claims are "duplicative" or "derivative" of claims the Trustee either asserted against the Picower Defendants or could have asserted against the Picower Defendants. In so doing, the Trustee goes to great lengths to conflate the Class Action Claims with the Trustee's fraudulent conveyance claims against the Picower Defendants. Indeed, the Trustee's opposition to the Motion is entirely predicated on the conflation of these two completely different claims. The Trustee's argument, however, misses the mark.

As set forth below, the Class Action Claims belong exclusively to the Class Action Plaintiffs. Although both the Trustee and the Class Action Plaintiffs assert claims against the Picower Defendants, and although those claims are based on the same or similar facts regarding the Madoff Ponzi scheme, the injuries to the shareholder Class Action Plaintiffs are different and the damages suffered by the Class Action Plaintiffs are different than those suffered by the

5

BLMIS estate.    Accordingly, the Class Action Claims are not stayed or enjoined by the

Permanent Injunction, the Automatic Stay or the Stay Orders.[2]

      **I.**      **The Class Action Claims Are Not Duplicative or Derivative of
Any Claims Belonging to the Trustee**

The Class Action Claims are neither duplicative nor derivative of the Trustee's claims

and are thus their prosecution is not prohibited by either the Permanent Injunction or the

Automatic Stay.  The Permanent Injunction states as follows:

> ORDERED, that any BLMIS customer or creditor of the BLMIS
> estate who filed or could have filed a claim in the liquidation,
> anyone acting on their behalf or in concert or participation with
> them, or anyone whose claim in any way arises from or is related
> to BLMIS or the Madoff Ponzi scheme, is hereby permanently
> enjoined from asserting any claim against the Picower BLMIS
> Accounts or the Picower Releasees ***that is duplicative or derivative
> of the claims brought by the Trustee, or which could have been
> brought by the Trustee against the Picower BLMIS Accounts or
> the Picower Releasees.*** (emphasis added).

It is well settled that shareholder claims against a corporation under federal securities law

are direct in nature and belong to shareholders, rather than to the corporation.  *See*, *e.g. Highland*

*Capital Management LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522

F.3d 575, 586-87 (5th Cir. 2008) (fraudulent inducement claims in connection with sale of bonds

are direct claims of bondholders); *Fisher v. Apostolou*, 155 F.3d 876, 878 (7th Cir. 1998)

(securities, commodities and common law fraud suits against third parties were not property of

the estate and, therefore, not subject to the automatic stay);  *In re Reliance Acceptance Group,*

*Inc.*, 235 B.R. 548, 555 (D. Del. 1999) ("The Shareholders' [federal securities law] claims are

not derivative and do not belong to the corporation"); *Official Unsecured Creditors' Committee*

*of Phar-Mor, Inc. v. Bowen (In re Phar-Mor, Inc.)*, 164 B.R. 903, 905 (W.D. Penn. 1994) ("First,

---

[2]   In his opposition papers, the Trustee argues that the Class Action Claims are stayed by separate orders entered by
the United States District Court for the Southern District of New York dated December 15, 2008, December 18,
2008 and February 9, 2009 (collectively, the "Stay Orders").

HF 7389274v.5 #15628/0001

we hold that the securities law and related claims asserted in the Equity Actions belong exclusively to the Equity Plaintiffs and are not a part of the 'property of the estate'. The claims of the Equity Plaintiffs seek recovery of money that they invested in Phar-Mor allegedly in reliance on the unqualified audit opinions of a non-bankrupt third party, Coopers. The claims and the alleged harm are distinct and personal to each Equity Plaintiff and are not derivative of the Debtor's claims against Coopers."); *Ochs v. Lipson (In re First Central Financial Corp.)*, 238 B.R. 9, 20 (Bankr. E.D.N.Y. 1999) (shareholders' action under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 "is not derivative in nature, it is a direct shareholders' suit. While some of the underlying facts in the [shareholder action] may be similar to those involved in the Trustee's mismanagement suit, the two lawsuits raise separate and discreet causes of action for breaches of different duties."); *Goldin v. Primavera Familienstiftung, TAG Associates, Ltd. (In re Granite Partners, L.P.)*, 194 B.R. 318, 327 (Bankr. S.D.N.Y. 1996) (securities law "fraudulent inducement claims … are direct and belong to shareholders…The trustee lacks standing to assert these claims, and [the shareholder] can do so without violating the automatic stay").

## A. The Class Action Claims Are Independent Federal Securities Law Claims Which Belong Solely to the Class Action Plaintiffs and Are Not Shared by the Estate.

The Class Action Plaintiffs have alleged that the commingled discretionary securities trading account created by BLMIS pursuant to which BLMIS obtained billions of dollars of customer monies is, in fact, a separate security issued by BLMIS (the "BLMIS Security" or, collectively, the "BLMIS Securities") (Complaints, ¶ 69). It is beyond dispute that the BLMIS Securities were issued in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and that BLMIS and Bernard L. Madoff, individually and collectively, made material misrepresentations and engaged in schemes to defraud in connection with the issuance

7

of the BLMIS Securities.    The Class Action Plaintiffs properly allege that the Picower Defendants were Control Persons in connection with the issuance of the BLMIS Securities pursuant to Section 20(a) of the Exchange Act (Complaints, ¶ 90-97).

Section 10(b) of the Securities Exchange Act of 1934 prohibits a seller of securities from employing "any manipulative or deceptive device or contrivance in contravention of [SEC] rules and regulations."    15 U.S.C. § 78j(b).    *Securities and Exchange Comm'n v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1466 (2d Cir. 1996).  Rule 10b-5 makes it unlawful

> (a) To employ any device, scheme, or artifice to defraud, or
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchaser or sale of any security.

17 C.F.R. § 240. 10b-5.

BLMIS violated section 10(b) and Rule 10b-5.    As set forth in the Class Action Complaint, the Picower Defendants are liable for those violations of section 10(b) and Rule 10b-5 as control persons under section 20(a) of the Exchange Act which provides that

> [e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t.

Pursuant to Section 20(a), the Picower Defendants are jointly and severally liable for the securities fraud violations committed by BLMIS and Madoff because the Picower Defendants failed to act in good faith to prevent such violations of the federal securities law.    *La Perfiere v.*

HF 7389274v.5 #15628/0001

*Vista,* 526 F. 3d 715, 725 (11th Cir. 2008) (noting that control persons have direct duty to shareholders to act in good faith to prevent violations of federal securities law).  Section 20(a) creates, and makes actionable solely by shareholders, independent federal duties owed to such shareholders by those who directly or indirectly control others engaged in conduct that violates the Exchange Act.  Under Section 20(a), a control person has a good faith duty to investors that is similar to a fiduciary duty, to exercise due care and supervision over those who issue securities or engage in other conduct pursuant to the Securities Exchange Act.  *See*, *e.g.*, *Carpenter v. Harris,* 504 F. 2d 388 (4th Cir. 1979) ("Clearly Congress had rejected an insurer's liability standards for controlling persons in favor of a fiduciary standard, a duty to take a good care".) (citing *SEC v. Lums, Inc.*, 365 F. Supp. 1046, 1063 (S.D.N.Y. 1973)); *Roche v. v. Rhoades*, 527 F.2d 880, 885 (3d Cir. 1978); *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir. 1973).

In order to properly plead control person liability, the Class Action Plaintiffs must show that BLMIS was the primary violator of section 10(b) and Rule 10b-5 and that the Picower Defendants controlled BLMIS.  *SEC v. First Jersey Securities, Inc.*, 101 F.3d at 1472 ("In order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant."); *STMicroelectronics v. Credit Suisse Group*, 775 F. Supp. 2d 525, 535 (E.D.N.Y. 2011) (same); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 309 (S.D.N.Y. 2005) ("…plaintiffs state a legally sufficient claim under this statute if they plead (1) a primary violation by a controlled person and (2) control of the primary violator by the defendant").

Given the requirement that a plaintiff must show both the existence of a primary violator and a controlling person to establish liability under section 20(a) of the Exchange Act, it is not surprising that shareholders cannot sue controlling persons derivatively through the corporation which is itself the primary violator.  *In re Maxim Integrated Products, Inc., Derivative*

9

*Litigation*, 574 F. Supp. 2d 1046, 1067 (N.D.Cal. 2008); *In re Verisign, Inc. Derivative Litigation*, 531 F. Supp. 2d 1173, 1213 (N.D.Cal. 2007) (noting that "it is logically impossible for a corporation on whose behalf a derivative action is brought to also be a primary violator").

As recently explained by the *In re Maxim Integrated Products, Inc., Derivative Litigation*, Court:

> In a direct action, a control person claim may be stated by alleging that the corporation was a primary violator and that the directors or officers controlled the corporation. Unlike a direct action, a derivative action is brought on behalf of the corporation, which means that the corporation cannot be a primary violator for control person purposes.

574 F. Supp. 2d at 1067.

Thus, as pled in the Class Action Complaint, the Picower Defendants owed the Class Action Plaintiffs a duty to exercise due care to prevent federal securities violations in their control of BLMIS and Madoff,. This duty runs directly to the Class Action Plaintiffs who were purchasers of BLMIS Securities and is separate and independent from other duties the Picower Defendants may have owed to BLMIS.

### B. The Class Action Claims Are Separate and Distinct From the Trustee's Fraudulent Conveyance Claims.

The duty owed by the Picower Defendants to the Class Action Plaintiffs is not duplicative, derivative or similar to the fraudulent conveyance claims asserted by the Trustee. First, the securities claims seek different damages. The estate's fraudulent conveyance claims sought to recover amounts fraudulently transferred to the Picower Defendants. In contrast, the Class Action Plaintiffs seek as damages the amount which they paid for the BLMIS securities which was in excess of the actual value of those securities on the date of purchase, (*i.e.*, 10(b) fraud damages).

Not only are the damages sought in the federal securities class action separate and distinct from those sought by the Trustee pursuant to the fraudulent conveyance claim, the claims

10

themselves are obviously separate and distinct.  The Class Action Plaintiffs seek damages based upon the failure of the Picower Defendants to make material disclosures and to otherwise supervise and prevent the fraudulent sale of securities.  The Class Action Plaintiffs were injured when they purchased BLMIS Securities at an inflated price.  The BLMIS estate was also injured by the Picower Defendants but its injury did not result from any purchase of BLMIS Securities.  Rather, the estate's injury occurred when BLMIS fraudulently transferred approximately $7.2 billion to the Picower Defendants.  This injury occurred independently of the injuries sustained by the Class Action Plaintiffs and at different times.  Clearly, the two claims, the claim for failing to prevent the sale of the securities, and the subsequent fraudulent conveyance claim, are distinct and separate claims.  Indeed, as pointed out by the Court in *Knauer v. Jonathan Roberts Financial*, 2002 WL 31431484 (S.D. Ind. Sept. 30, 2002), the bankruptcy estate benefited rather than being injured by the control person violations issues, as "the fraudulent securities transactions brought money into those entities." *Id.* at 7.

Because federal securities fraud claims are not duplicative or derivative of estate-based fraudulent conveyance or similar claims, courts have routinely refused to deem them property of the estate or violative of the automatic stay even when they are premised upon the same factual predicate upon which the estate pursues its claim against common defendants.  For example, in *Hayes v. Gross,* 982 F.2d 104 (3d Cir. 1992), the court made clear that shareholder federal securities fraud claims were not derivative or duplicative of estate fraud-based claims:

> An individual stockholder may sue officers and directors based on injury distinct from injury to the corporation.  Plaintiffs here seek to recover the difference between the allegedly inflated price paid for his stock and the price he would have paid had defendants made accurate statements . . . . Allowing plaintiff to pursue this claim will neither prejudice the corporation . . . nor permit a double recovery for the same injury.

11

Similarly, *In re First Central Financial Corp.*, 239 B.R. 9 (E.D.N.Y. 1999), the bankruptcy trustee sought to preliminarily enjoin a securities fraud class action against officers and directors of the debtor corporation in favor of the trustee's action against the same defendants. The court held that although the securities claims arose from the same facts as those claims assertable by the estate against the common defendants, the claims were neither duplicative nor derivative because they "raise separate and discreet causes of action for breaches of different duties." *Id*. at 20. *See also In re Reliance Acceptance Group, Inc.,* 235 B.R. 548 (D. Del. 1999) ("Shareholders securities lawsuit and the debtors' action may be against the same parties and may be based on the same or similar facts, they state different claims for relief. They seek relief for alleged breaches of different duties. They raise different injuries and they seek to recover different damages."); *Kernaghan v. Global Intellicom, Inc.*, 2000 WL 640653, at *15 (S.D.N.Y. May 17, 2000) (holding that section 362 and 105 stays do not apply to a 10b-5 securities fraud claim against a chairman and CEO of the debtor corporation because securities claims are "not derivative of his status as chairman and CEO. . . but rather premised upon [his] own conduct including . . . misrepresentations"); *Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y 1999) (refusing to stay investors' federal securities claims against an officer of the debtor corporation).

### C.   The Existence of Common Facts and a Common Defendant Does Not Bestow Standing On the Trustee to Assert the Class Action Claims on Behalf of the Estate.

The Trustee argues that because the Class Action Complaints and his avoidance complaint against the Picower Defendants allege the same or similar facts, that the Class Action Claims are somehow duplicative or derivative. The Trustee is wrong. As courts have overwhelmingly recognized, the existence of common parties and shared facts do not convert an otherwise direct claim against a third party into property of the estate. *See In re Seven Seas*

*Petroleum, Inc.*, 522 F.3d at 585 (noting that "…it is entirely possible for a bankruptcy estate and

a creditor to own separate claims against a third party arising out of the same general series of

events and broad course of conduct"); *Fisher v. Apostolou*, 155 F.3d at 880-82 (finding that third

party claims did not belong to the estate even where such claims were "claims to the same

limited pool of money, in the possession of the same defendants, as a result of the same acts,

performed by the same individuals, as part of the same conspiracy"); *Bankers Trust Co. v.

Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988) (holding that RICO claims were not duplicative or

derivative of bankruptcy estate's claims even though the plaintiff was "injured by the identical

transactions that injured the bankrupt corporation"); *In re Reliance Acceptance Group, Inc.*, 235

B.R. at 555 ("In this case, while the lawsuits filed by the Shareholders and by the Debtors may

be against the same parties and may be based on the same or similar facts, they state different

claims for relief.").

    In *In re Seven Seas Petroleum, Inc.*, the Fifth Circuit Court of Appeals addressed an

argument by a third party defendant which is identical to the Trustee's argument - that common

facts and common defendants equals a duplicative or derivative claim.   The Fifth Circuit

disposed of that argument as follows:

> As a preliminary matter, we recognize that the bondholders and
> Chesapeake are linked in a variety of ways to Seven Seas and the
> bankruptcy proceeding.  Both Chesapeake and the bondholders are
> creditors of Seven Seas, and the bondholders' claims against
> Chesapeake ultimately arise from the fact that the bondholders
> invested in the unsecured notes issued by Seven Seas.  However,
> the existence of common parties and shared facts between the
> bankruptcy and the bondholder' suit does not necessarily mean that
> the claims asserted by the bondholders are property of the estate.
> Indeed, as *Educators Group Health Trust* demonstrates, it is
> entirely possible for a bankruptcy estate and a creditor to own
> separate claims against a third party arising out of the same general
> series of events and broad course of conduct.  *See also Feld v. Zale
> Corp. (In re Zale Corp.)*, 62 F.3d 746, 753 (5th Cir. 1995) ("Shared
> facts between the third-party action and a debtor-creditor conflict

do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy [for the purposes of finding bankruptcy jurisdiction].").

*In re Seven Seas Petroleum, Inc.*, 522 F.3d at 585.

Consistent with the requirement to show control of BLMIS by the Picower Defendants, the Class Action Complaint alleges that the Picower Defendants caused BLMIS to make the $7.2 billion in fraudulent transfers to them. In addition, the Class Action Plaintiffs also plead other illustrations of the Picower Defendants' control over BLMIS such as their ability to direct BLMIS employees to create and document non-existent securities transactions. That the facts pleaded by the Trustee and the Class Action Plaintiffs are similar or even identical, however, is irrelevant. The key is that the Class Action Claims are direct claims owned by them.

### D. *St. Paul Fire & Marine Ins. v. PepsiCo, Inc.* Is Not Applicable Here.

The Trustee argues that *St. Paul Fire & Marine Ins. v. PepsiCo., Inc.,* 884 F. 2d 688 (2d Cir. 1989) prohibits the Class Action Plaintiffs from pursuing the Class Action Claims because as general claims, they belong to the Trustee. *St. Paul*, however, does not help the Trustee. The Class Action Claims are entirely different from the alter ego claims at issue in *St. Paul*. In its *St. Paul* decision, the Second Circuit stated:

> We agree with those courts that have held that the determination of whether a claim may be brought by a creditor of a bankrupt corporation outside of the bankruptcy proceedings depends on an analysis of state law. Under the Bankruptcy Code, the bankruptcy trustee may bring claims found, *inter alia*, on the rights of the debtor and on certain rights of the debtor's creditors. *see, e.g.* 11 U.S.C. §§ 541, 544, 547 (1982 & Supp. V 1987). Whether the rights belong to the debtor or the individual creditors is a question of state law, *see Morton v. National Bank (In re Morton)*, 866 F.2d 561, 563 (2d Cir. 1989). Thus the answer to the question whether PepsiCo's claims may be asserted by the bankruptcy trustee depends on an analysis of state alter ego and tort law. **If the claims asserted by PepsiCo in this action are property of the debtor (Lee Way Holding Co.) under state law and therefore properly brought by the trustee, and if PepsiCo has not alleged a direct injury traceable to Banner, PepsiCo does not have**

14

> *standing to assert those claims outside of the bankruptcy*
> *proceeding.*

*St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d at 700 (emphasis added).

Thus, the Second Circuit established a two-part test to determine if a creditor lacks standing to bring an action against a non-debtor third party:  (1) the claims must be property of the debtor under state law; and (2) the creditor must not be able to allege any direct injury traceable to the non-debtor third party.  But here, the Class Action Claims are not property of BLMIS under state law and, as discussed above, the injury to the Class Action Plaintiffs is direct and traceable to the Picower Defendants.

In order for *St. Paul* to apply, both the debtor and its creditors must share a common claim against a third party.  *See In re Parmalat Securities Litigation*, 377 F. Supp. 2d 390, 421 (S.D.N.Y. 2005) (finding that trustee must have independent standing to assert claims against third parties for *St. Paul* to apply).  In *St. Paul,* the claim at issue was an alter ego claim which *could have been asserted* by the debtor.  Here, as set forth above, the estate and the Class Action Plaintiffs do not share the Class Action Claim.  That claim belongs solely to investors who purchased BLMIS Securities.

The estate cannot plead the elements of a 10(b) or 20(a) claim and, therefore, cannot assert such claims.  BLMIS was not a purchaser of the BLMIS Securities and, accordingly, could not plead the elements of a federal securities claim for fraud in connection with the purchase thereof.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1973); *Birnbaum et al. v. Newport Steel Corp.* 193 F.2d 461 (1952).  Thus, the BLMIS estate lacks the authority to plead a Section 20(a) claim and, therefore, the assertion of the Section 20(a) claim cannot be duplicative or derivative of claims asserted or assertable by the estate.  *See Bloor v. Carro, Spanbock,* 754 F.2d 57, 62 n.4 (2d Cir. 1985) ("The Trustee in Bankruptcy has standing to represent only the

15

interests of a debtor corporation . . .  Therefore, he has no standing to assert claims of damages to the defrauded purchasers of securities . . . .  Because Section 10(b) provides a remedy only for harmed purchasers or sellers of securities, . . . only damages sustained as a result of its sale of securities may be considered here.")

In addition, BLMIS did not suffer any injury from the purchase of BLMIS Securities.  On the contrary, it benefited by customer purchases of the fraudulently issued securities because BLMIS was thus able to continue its Ponzi scheme to the detriment of BLMIS investors.  As in *Bloor*, the Trustee has no ability to assert federal securities claims under Sections 10(b) or 20(a) and suffered no securities-based injuries.  The fraudulent conveyance injuries suffered by the Estate occurred after the securities were sold and was not in connection with the purchase of those securities.  Accordingly, the Section 20(a) claims cannot be duplicative or derivative of the estate fraudulent conveyance claims. [3]

The Trustee also incorrectly argues that because the Class Action Claims are assertable by more than one creditor of BLMIS, the claims belong to the estate.  *St. Paul* does not help the Trustee.   The fact that claims may be assertable by many creditors does not render such claims property of a bankruptcy estate.  *See In re Seven Seas Petroleum, Inc.*, 522 F.3d at 588 ("We also wish to dispel any notion that a claim belongs to the estate or is otherwise only assertable by the trustee merely because it could be brought by a number of creditors instead of just one."); *see also, Picard v. JPMorgan Chase & Co.*, 2011 WL 5170434 at *15 (S.D.N.Y. Nov. 1, 2011)

---

[3]   The reasoning in Judge Koeltl's *Picard v. Fox* decision (discussed below) is not inconsistent with this analysis. Judge Koeltl found that the plaintiffs had not established that the bankruptcy estate lacked standing under the doctrine of *in pari delicto* even if it might be a valid affirmative defense, and, therefore could not rely on *in pari delicto* as a means to argue that the estate could not assert the claims asserted by plaintiffs in their Florida action. Here, it is a legal certainty that the estate cannot assert the elements of a 10(b) or 20(a) claims and, therefore, the Class Action Claims are unique claims which are neither duplicative nor derivative of any claim which the estate could assert.

(finding that for *St. Paul* to apply, claims must be assertable by debtor and, therefore, common to debtor <u>and</u> its creditors).

Indeed, *St. Paul* itself does not support the Trustee's position.  The Trustee quotes the following from the *St. Paul* in support of its argument that the Class Action Claims belong to him:

> If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.

*St. Paul Fire & Marine Ins.,* 884 F. 2d at 701.

Implicit in the Trustee's reliance on this passage is that *any creditor* of BLMIS could have asserted the Class Action Claims and, therefore, the claims belong to him.  What the Trustee ignores, however, is the fact that only investors who purchased BLMIS securities could assert the Class Action Claims.  While there are certainly many individual investors who could bring such claims, they are not by any means the only creditors in this case.  There are *many other creditors* who have not asserted customer claims, who never purchased a BLMIS security and who could not assert the Class Action Claims. Indeed, as the Trustee has reported in the *Trustee's Seventh Interim Report for the Period Ending March 31, 2012* [Docket No. 4793]:

> As of March 31, 2012, the Trustee had received 427 timely and twenty-one untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.

As the Trustee himself makes clear, there are hundreds of creditors other than those asserting customer claims.  Clearly, creditors such as vendors, taxing authorities and employees are not part of the proposed plaintiff class as they did not purchase any BLMIS Securities.  The Trustee's reliance on *St. Paul*, therefore, is without merit.

### E.    *Picard v. Fox* is Not Applicable Here

The Trustee also conflates the Class Action Claims with the state law claims asserted by Fox and argues that *Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd* No. 10 Civ. 4652 (JGK), 2012 WL 990829 (S.D.N.Y. Mar. 26, 2012) (Koeltl, J.) is dispositive here.  Again, that argument is without merit.  The Fox and Marshall claims were in no way related to the Class Action Claims which, as set forth above, belong solely to the Class Action Plaintiffs.  In *Fox*, Judge Koeltl's decision was premised upon his conclusion that Plaintiff had not alleged "any duty owed specifically to the Appellants by the Picower Defendants."  *Id.* at pg. 20.  Judge Koeltl's conclusion that the claims asserted by Fox and Marshall were general ones under *St. Paul* was also based upon his finding that the injury that was inflicted "[was] not by specific acts of the Picower Defendants directed toward the appellants themselves and not by violating the duty owed directly to the Appellants, but by a single set of actions that harmed BLMIS and all BLMIS customers in the same way and for the same reason." *Id.* at pg. 22.

Judge Koeltl applied *St. Paul's* reasoning based upon a factual finding that the claims asserted by appellants: (1) did not assert any independent duty owing to appellants; and (2) were claims whereby the harm suffered was suffered by both BLMIS and all BLMIS customers "in the same way and for the same reason."  *Id.* at 22.  Clearly, this reasoning is inapplicable in the instant case where the securities injuries suffered were suffered only by class members and not by BLMIS itself.  Indeed, case law recognizes that the analysis set forth in *St. Paul* has no application to federal securities claims because the estate does not share a common securities injury with the shareholders.  *See e.g.*, *In Re: Parmalat*, 377 F. Supp. at 421 (finding that "… a trustee has no standing to assert claims of damages to defrauded purchasers of securities" . . . "*St. Paul Fire & Marine Ins. Co.* does not help the plaintiff here, who seeks to recover for shareholders, most of whom are now pursuing a securities fraud action on their own behalf in another action before this Court.")  *See also Hirsch v. Arthur Andersen & Co.,* 72 F. 3d

18

1085, 1093 (2d Cir. 1995). ("Further, when creditors, such as the investors in the Colonial limited partnerships, have a claim for injury that is particularized as to them, they are <u>exclusively entitled</u> to pursue that claim and the bankruptcy trustee is precluded from doing so.") (emphasis added); *In re: Granite Partners, L.P.,* 194 B.R. 318, 325 (S.D.N.Y. 1998). ("A shareholder who suffers injury particular to itself can maintain an individual action even though the corporation also suffers injury from the same wrong.").

In sum, Judge Koeltl's reasoning employing *St. Paul* is inapplicable to the instant action where the estate suffered <u>no injury</u> as a result of the securities-based fraud and the creditors seek to collectively pursue a securities class action. This type of class action is an actionable claim even when the facts alleged overlap with the facts alleged by the estate in its claims against common defendants. *See e.g.*, *Bankers v. Rhodes*, 859 F. 2d 1096, 1106 (2d Cir. 1998) (finding that when a creditor and bankruptcy estate share claims arising from the same transaction, both have standing to pursue claims).

Here, because of the independent duties that the Picower Defendants owe to the Class Action Plaintiffs under Section 20(a) of the Exchange Act, and because BLMIS suffered no securities-based injury and, therefore, lacks standing to assert the class action securities claims, it would be unprecedented to permanently bar the Class Action Plaintiffs from pursuing their claims against the Picower Defendants. We are aware of no case in which a permanent injunction barring federal securities claims was entered in any bankruptcy case. *See e.g., In re: Continental Airlines,* 203 F.3d 203 (3d Cir. 2000) (refusing to enter a permanent injunction with respect to shareholder class action even when the company's insurance policy might be used to resolve shareholder claims). Indeed, contemporaneous litigation of bankruptcy estate claims and separate federal securities class actions against common defendants which each arise out of a

single fraud are commonplace. *See, e.g., Financial Acquisition Partners LP, v. Blackwell,* 440

F.3d 278 (5th Cir. 2006); *Yang v. Odom,* 392 F.3d 97 (3d Cir. 2004).

The Trustee's arguments that common claims asserted under federal securities laws may

only be asserted by the trustee under *St. Paul* is incorrect and controverted by the overwhelming

number of cases where federal securities class actions were pursued in parallel with estate class

actions against common defendants. The argument is also dangerous and would have the effect

of eviscerating the consumer protections established in 1934 under the Securities Exchange Act

with respect to all debtors.

><table><tr><td>F.</td><td>**The Class Action Plaintiff's Pursuit of Their Independent Claims Against the Picower Defendants Will Have No Effect On the Trustee's Ability to Settle Other Avoidance Claims.**</td></tr></table>

The trustee argues that "if the Picower Class Action Plaintiffs are permitted to go

forward, the trustee will be 'hampered' in his 'ability to pursue and ultimately settle fraudulent

transfer claims with other defendants who will be fearful of paying twice.'"  However, unlike the

Picower Defendants, we are not aware of any "other defendants" who, like the Picower

Defendants, were control persons of BLMIS. Thus, no other suit under the securities laws is

conceivable and the "fear" is unfounded.  Moreover, the Picower Defendants would not be

"paying twice" on the same claim.  Rather, as set forth above, they have paid back the $7.2

billion that they received from BLMIS as a fraudulent conveyance and they will have to pay

separate damages for the injuries caused to purchasers of BLMIS Securities based on violations

of federal securities laws.  In any event, the Trustee's concern is at best hypothetical.  The

Trustee points to no specific case which will be impacted in any way by applying the law and

permitting the securities class actions to go forward.

HF 7389274v.5 #15628/0001

Moreover, as the Trustee has conceded in other Madoff-related litigation, and as this Court has already held, there is no basis to enjoin investor claims against the Picower Defendants as the Trustee has now finally settled and released his claims against those parties. Specifically, in *Picard v. Cohmad Securities Corp., et al.,* 443 B.R. 391 (Bankr. S.D.N.Y. 2011), the Trustee sued Robert Jaffe for fraudulent conveyances arising from his involvement in the Madoff Ponzi Scheme. The trustee settled with Jaffe and released him of all claims that the trustee could have brought against Jaffe, just like he did with the Picower Defendants. *Id.* at 293-94. Jaffe then filed a motion to permanently enjoin a number of third-party actions brought against him by BLMIS investors, all of which sounded in fraud. In opposing the Jaffe motion, the Trustee argued specifically that the investor actions against Jaffe could have no effect on the estate in light of the trustee's settlement with Jaffe. Although the court found it did not have jurisdiction to address the motion, it also agreed with the Trustee's argument. This Court held the Section 105 injunction in favor of Jaffe "would be inappropriate, as the trustee has recovered all customer property of the BLMIS estate from [Jaffe], leaving nothing for this court to administer." *Id.* "Thus, [n]one of the judgments obtained by third-party plaintiffs have any effect on the BLMIS SIPA liquidation. . . Accordingly, based on the facts extant, there is no basis for a Section 105(a) injunction." *Id.* at 295. *Cohmad* is directly on point and the same finding is directly applicable to the Class Action Claims against the Picower Defendants.

Here there is a final binding settlement agreement between the Trustee and the Picower Defendants which provides for repayment of all funds transferred from BLMIS to the Picower Defendants. This settlement agreement is now final as the appeal of the government's forfeiture order has been dismissed.[4] It is quite simply a binding agreement between the Trustee and the Picower Defendants which cannot be impacted in any way by ongoing litigation against the

---

[4]  The settlement became effective upon the earlier to occur of the forfeiture order becoming a final order or this Court's order approving the settlement agreement becomes a final order.

HF 7389274v.5 #15628/0001

Picower Defendants.  As in *Cohmad*, the securities class actions do not impact the estate in any way, and the Trustee has no legitimate interest to prevent the litigation against the Picower Defendants, and this Court lacks subject matter jurisdiction to enjoin such litigation.

The Picower Defendants are bound by the Settlement Agreement that this Court approved and any third-party litigation against them could in no way effect or impact the resolution of those claims or otherwise affect the estate.  Accordingly, and because the Class Action Claims are non-derivative, the Court must find that the claims are not enjoined by the Permanent Injunction or the Automatic Stay.  Indeed, the Court would lack jurisdiction to find any other way.  *See Johns-Manville Corporation v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corporation)*, 600 F.3d 135, 152 (2d Cir. 2010) ("A bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate.") (quoting *In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008)).  Thus, the prosecution of the Class Action Claims is not barred by the Permanent Injunction, the Automatic Stay or any other order and should be permitted to proceed.

## CONCLUSION

Based on the foregoing reasons, the Class Action Plaintiffs respectfully request this Court to enter an order confirming that the Class Action Claims are not duplicative or derivative of any claim the Trustee asserted or could have asserted against the Picower Defendants and, accordingly, the prosecution of such claims are not prohibited by the Permanent Injunction, the Automatic Stay or the Stay Orders.  It is respectfully submitted that this Court should not interpret the Permanent Injunction, the Automatic Stay or any of the Stay Orders to be a permanent injunction of the litigation of third-party securities class actions which would have no impact whatsoever with respect to the ongoing estate and with respect to which the Plaintiffs have *bona fide* standing based upon independent injury and independent damages.  To do

22

otherwise would be an unprecedented application of the Automatic Stay and section 105 of the

Bankruptcy Code to stay the prosecution of independent non-derivative federal securities claims

and an improper exercise of subject matter jurisdiction under *Manville*.


Dated:   New York, New York
   May 16 , 2012

Respectfully submitted,


*/s/ Joshua J. Angel*
**HERRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
Joshua J. Angel
Frederick E. Schmidt, Jr.

**BEASLEY HAUSER KRAMER &
GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939
- and -
**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

Attorneys for A & G Goldman Partnership and
Pamela Goldman, individually and on behalf of
a similarly situated classes

23