```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
SECURITIES INVESTOR PROTECTION            :
CORPORATION,                              :
                Plaintiff,                :
                                          :
                                          :
                -v-                       :     12 Misc. 115 (JSR)
                                          :
BERNARD L. MADOFF INVESTMENT              :
SECURITIES LLC,                           :
                Defendant.                :
------------------------------------------x
In re:                                    :
                                          :
MADOFF SECURITIES                         :
------------------------------------------x
PERTAINS TO THE FOLLOWING CASES:          :
------------------------------------------x
IRVING H. PICARD,                         :
                Plaintiff,                :
                -v-                       :     11 Civ. 6524 (JSR)
PRIMEO FUND et al.,                       :
                Defendants.               :
------------------------------------------x
IRVING H. PICARD,                         :
                Plaintiff,                :
                -v-                       :     11 Civ. 6541 (JSR)
HERALD FUND SPC et al.,                   :
                Defendants.               :
------------------------------------------x
IRVING H. PICARD,                         :
                Plaintiff,                :
                -v-                       :     11 Civ. 6677 (JSR)
ALPHA PRIME FUND LIMITED et al.,          :
                Defendants.               :
------------------------------------------x
IRVING H. PICARD,                         :
                Plaintiff,                :
                -v-                       :     11 Civ. 6877 (JSR)
ABN AMRO BANK (IRELAND) LTD. et al.,      :
                Defendants.               :
------------------------------------------x
IRVING H. PICARD,                         :
                Plaintiff,                :
                -v-                       :     11 Civ. 6878 (JSR)
ABN AMRO BANK N.A. et al.,                :
                Defendants.               :
------------------------------------------x
```

USDC SDNY DOCUMENT ELECTRONICALLY FILED DATE FILED: 5/15/12

```
------------------------------------x
IRVING H. PICARD,                   :
              Plaintiff,            :
              -v-                   :        11 Civ. 7100 (JSR)
BANCO BILBAO VIZCAYA ARGENTENARIA,  :
S.A., et al.,                       :
              Defendants.           :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Each of the defendants in the above captioned cases seeks mandatory withdrawal of the reference to the bankruptcy court of the underlying adversarial proceeding brought against each of them respectively by plaintiff Irving H. Picard, the trustee appointed pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa et seq.[1] Because these motions raise identical questions of law, albeit in different combinations, the Court issues this one Memorandum Order to decide which aspects of the underlying proceedings will be withdrawn, and which not. In large part, the Court relies on the reasoning set forth in its opinions in Picard v. HSBC Bank, 450 B.R. 406 (S.D.N.Y. 2011), Picard v. Flinn Inv., LLC, 2011 WL 5921544 (S.D.N.Y. Nov. 28, 2011), and Picard v. Avellino, 2012 WL 826602 (S.D.N.Y. Feb. 29, 2012), which withdrew the reference in still other adversarial proceedings in the underlying bankruptcy of Bernard L. Madoff Investment Securities ("Madoff Securities").

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or

---

[1] The Court has stayed these motions with respect to certain defendants pending the approval of settlement agreements between those defendants and the Trustee. In light of such stays, this opinion does not apply to any motions by those defendants.

arising in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), the district court may refer actions within its bankruptcy jurisdiction to the bankruptcy judges of the district. The Southern District of New York has a standing order that provides for automatic reference.

Notwithstanding the automatic reference, the district court may, on its own motion or that of a party, withdraw the reference, in whole or in part, in appropriate circumstances. Withdrawal is mandatory "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). The Second Circuit has ruled that mandatory "[w]ithdrawal under 28 U.S.C. § 157(d) is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the bankruptcy court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990).

The defendants in these cases identify many issues that they believe require "substantial and material consideration" of non-bankruptcy federal laws regulating organizations or activities affecting interstate commerce, including important unresolved

3

issues under SIPA itself, a statute that has both bankruptcy and non-bankruptcy aspects and purposes. See In re Bernard L. Madoff Investment Securities, 654 F.3d 229, 235 (2d Cir. 2011) ("SIPA serves dual purposes: to protect investors, and to protect the securities market as a whole."); Picard v. HSBC Bank PLC, 450 B.R. 406, 410 (S.D.N.Y. 2011). The Court considers defendants' contentions in turn.

First, each of the defendants argues that the Court must withdraw the reference to consider whether SIPA and other securities laws alter the standard that the Trustee must meet in order to show that the defendants did not receive transfers in "good faith" under 11 U.S.C. § 548(c). The Court examined this issue in Avellino, and found that it merited withdrawal. 2012 WL 826602, at *1-*2. Accordingly, for the reasons stated in Avellino, the Court withdraws these cases in order to resolve this issue.[2]

---

[2] With respect to certain defendants, the Trustee argues that the fact that he seeks to recover subsequent transfers under § 550(a) rather than to avoid fraudulent transfers under § 548 renders § 548(c) inapplicable. The Court rejects this argument. Section 550(a) permits recovery of a subsequent transfer only "to the extent that a transfer is avoided under" § 548 or some other avoidance statute. Thus, if § 548(c) provides a defense against avoidance of the initial transfer, it also provides a defense against recovery of the subsequent transfer. Moreover, § 550(b) also provides a good faith defense for subsequent transferees. Given that the securities laws, as noted in Avellino, may require a different interpretation of good faith, the Court also withdraws the reference to the extent necessary to determine what "good faith" means under § 550(b).

4

Second, each of the defendants argues that § 546(e) of the Bankruptcy Code prevents the Trustee from avoiding transfers as fraudulent except under § 548(a)(1)(A) of that Code. For substantially the reasons stated in Flinn and Avellino, the Court withdraws the reference in each case in order to address this issue.[3]

Third, ABN Amro Bank (Ireland) Ltd. argues that the Trustee cannot avoid transfers that, under applicable securities laws, satisfied antecedent debts, providing value under 11 U.S.C. § 548(c). The Court considered this issue at length in Flinn, and concluded that it merited withdrawal of the reference. For the same reasons, the Court withdraws the reference in order to address this issue.[4]

Fourth, each of the defendants except Herald Fund SPC argues that the Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), prevents the bankruptcy court from finally resolving fraudulent transfer actions because resolution of such

---

[3] The Court plans to consolidate briefing on the merits of many issues, including the availability of the safe harbor created by § 546(e), in this case and many others in which defendants have sought withdrawal of the reference to the Bankruptcy Court. Nothing in this Memorandum Order alters or affects any current or future order consolidating briefing in multiple cases.

[4] For the reasons stated above in footnote two, the Court rejects any suggestion that § 550(a) renders § 548(c) inapplicable and further withdraws the reference to the extent necessary to determine what constitutes "value" under the defense provided by § 550(b).

5

actions requires an exercise of the "judicial Power" reserved for Article III courts. For substantially the reasons stated in Flinn and Avellino, the Court withdraws the reference in each case in order to address this issue.

Turning to new issues, each of the defendants except Herald Fund SPC argues that the Court must withdraw the reference to determine whether SIPA applies extraterritorially, permitting the Trustee to avoid or recover transfers that occurred abroad. "When a statute gives no clear indication of an extraterritorial application, it has none." Morrison v. Nat'l Australia Bank Ltd., 130 S. Ct. 2869, 2878 (2010). SIPA incorporates the Bankruptcy Code to the extent that the two do not conflict, 15 U.S.C. § 78fff(b), and the Bankruptcy Code defines a bankruptcy estate to include certain property of the debtor, "wherever located and by whomever held," 11 U.S.C. § 541. Nonetheless, in the context of avoidance actions, property the debtor has fraudulently transferred does not become part of the estate until the bankruptcy trustee has recovered it. In re Colonial Realty Co., 980 F.2d 125, 131 (2d Cir. 1992). Thus, whether the Trustee can invoke the Bankruptcy Code to avoid transfers that occurred abroad or to recover from subsequent transferees located outside the United States is unclear, particularly after Morrison. Compare In re Maxwell Comm'cn Corp., 186 B.R. 807, 818-20

6

(S.D.N.Y. 1995), with In re Interbulk, Ltd., 240 B.R. 195, 198-99 (Bankr. S.D.N.Y. 1999).

In these cases, however, determination of whether the avoidance provisions apply abroad depends on consideration of SIPA as well as the Bankruptcy Code. Under 15 U.S.C. § 78fff-2(c)(3), "the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property." Moreover, § 78fff-2(c)(3) also provides that property the debtor has fraudulently transferred "shall be deemed to have been the property of the debtor." Accordingly, the Court must analyze SIPA as well as the Bankruptcy Code in order to determine what constitutes "property of the debtor," and thus whether the avoidance provisions created by the Bankruptcy Code and incorporated by SIPA can reach transfers that occurred abroad. Because a "substantial issue under SIPA is[,] . . . almost by definition, an issue 'the resolution of [which] requires consideration of both title 11 and other laws of the United States,'" HSBC, 450 B.R. at 410 (quoting 28 U.S.C. § 157(d)), the Court withdraws the reference to address this issue.

Next, ABN Amro Bank (Ireland) Ltd. and ABN Amro Bank N.A. argue that the Court must withdraw the reference to address whether 11 U.S.C. § 546(g) limits the Trustee's power to avoid transfers they received. Under 11 U.S.C. § 546(g), "[n]otwithstanding sections 544, 545, 547, 548(a)(1)(B) and

7

548(b) of this title, the trustee may not avoid a transfer, made by or to (or for the benefit of) a swap participant or financial participant, under or in connection with any swap agreement." "[F]inancial participant" means an entity with swap agreements with "a total gross dollar value of not less than $1,000,000,000" at any time during the fifteen months preceding filing or "gross mark-to-market positions of not less than $100,000,000" during the same period. 11 U.S.C. § 101(22A)(A). The term "swap agreement" includes "total return" swaps, the kind of swap in which the defendants here allegedly participated. Id. § 101(53B)(A)(VI); Complaint dated December 8, 2010, Picard v. ABN Amro Bank (Ireland) Ltd., 11 Civ. 6877 (JSR), ¶¶ 9-10; Complaint dated December 8, 2010, Picard v. ABN Amro Bank N.A, 11 Civ. 6878 (JSR), ¶¶ 9-10. The definition of "swap agreement" also provides that the term "shall not be construed or applied so as to challenge or affect the characterization, definition, or treatment of any swap agreement under any other statute, regulation, or rule, including the Gramm-Leach-Bliley Act, the Legal Certainty for Bank Products Act of 2000, the securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934) and the Commodity Exchange Act." 11 U.S.C. § 101(53B)(B).

This issue merits withdrawal. While the Court may require further factual development in order to determine whether

8

defendants qualify as "financial participant[s]" in a swap, cf. Complaint dated December 8, 2010, Picard v. ABN Amro Bank (Ireland) Ltd., 11 Civ. 6877 (JSR), ¶ 67; Complait dated December 8, 2010, Picard v. ABN Amro Bank N.A, 11 Civ. 6878 (JSR), ¶ 67, if the defendants do qualify, resolution on the issue will depend on assessing whether defendants received transfers "in connection with" a "swap agreement," a term the Bankruptcy Code defines in part by reference to the securities laws. Thus, the Court must determine whether the understanding of "swap agreement" advocated by each party would "challenge or affect" the definitions of that term set forth in non-bankruptcy law. Accordingly, the Court withdraws this issue to undertake the "substantial and material consideration" of that law that it requires.[5]

Finally, Alpha Prime Fund Limited and Herald Fund SPC argue that the Court must withdraw the reference to determine whether SIPA prevents the Trustee from disallowing their claims to Madoff Securities' estate under 11 U.S.C. § 502(d). The Court, considering the merits of this issue, has previously found that SIPA suspends the normal application of § 502(d) in this context. Picard v. Katz, 462 B.R. 447, 456 (S.D.N.Y. 2011). Since SIPA

---

[5] The Court, once again, rejects any suggestion that, if § 546(g) provided a defense to the avoidance of an initial transfer, the Trustee could nonetheless recover from subsequent transferees under § 550(a).

9

governs, rather than the Bankruptcy Code, the Court withdraws the reference to undertake the consideration of SIPA required.

For the foregoing reasons, the Court withdraws the reference of these cases to the bankruptcy court for the limited purposes of deciding: (i) whether SIPA and other securities laws alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in "good faith" under 11 U.S.C. § 548(c); (ii) whether the Trustee may, consistent with non-bankruptcy law, avoid transfers that Madoff Securities purportedly made in order to satisfy antecedent debts; (iii) whether, in light of this Court's decision in Picard v. Katz, 11 U.S.C. § 546(e) applies, limiting the Trustee's ability to avoid transfers; (iv) whether, after the United States Supreme Court's recent decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), final resolution of claims to avoid transfers as fraudulent requires an exercise of "judicial Power," preventing the bankruptcy court from finally resolving such claims; (v) whether, if the bankruptcy court cannot finally resolve the fraudulent transfer claims in this case, it has the authority to render findings of fact and conclusions of law before final resolution; (vi) whether SIPA applies extraterritorially, permitting the Trustee to avoid or recover transfers that occurred abroad; (vii) whether defendants were "financial participant[s]" in swap agreements and received transfers from Madoff Securities "in

connection with" those agreements such that § 546(g) limits the Trustee's ability to avoid transfers; and (viii) whether SIPA prevents the Trustee from disallowing customer claims under 11 U.S.C. § 502(d).

Furthermore, because the issue of whether SIPA applies extraterritorially poses only a legal question, the Court finds that consolidated argument on and resolution of that issue in all of the adversarial proceedings that have identified it as a basis for withdrawal will promote judicial efficiency. Accordingly, the Court directs counsel for the Trustee to convene a conference call with the defendants who have raised this issue no later than May 23, 2012 so that the parties can schedule consolidated proceedings.

With respect to issues that are not subject to consolidated proceedings -- specifically, whether relevant defendants received transfers in good faith and whether they may invoke the safe harbor created by § 546(g) -- the parties should convene a separate conference call for each case no later than May 18, 2011 to schedule further proceedings. The Clerk of the Court is hereby ordered to close document number 1 on the docket of each case.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

11

Dated: New York, New York
       May 15, 2012