**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Adv. Pro. No. 08-01789 (BRL) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| Debtor. | (Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05287 (BRL) |
| Plaintiff, | 11-Civ.-03605 (JSR)(HBP) |
| v. | |
| SAUL B. KATZ, et al., | |
| Defendants. | |

## ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a) APPROVING THE SETTLEMENT AGREEMENT

Upon the motion and memorandum (the "Motion") of Irving H. Picard (the "Trustee"), as

trustee for the liquidation of Bernard L. Madoff Investment Securities LLC under the Securities

Investor Protection Act, 15 U.S.C. §§78aaa *et seq.*, substantively consolidated with the

bankruptcy estate of Bernard L. Madoff, seeking entry of an order, pursuant to 11 U.S.C.

§ 105(a) and Rules 2002 and 9019(a) of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules"), approving the settlement and compromise by and among the Trustee and

the Defendants; and it appearing that the relief requested by the Motion is necessary and in the

best interests of the customers of BLMIS, the estate and all parties in interest; and it appearing

that due and sufficient notice has been given to all parties in interest as required by Bankruptcy

Rules 2002 and 9019, and no other or further notice is necessary; and the Court having

considered the supporting affidavit of the Trustee and the supporting Declaration of Mario M.

Cuomo; and the Court having found and determined that the legal and factual bases set forth in

the Motion establish just cause for the relief granted herein; and after due deliberation, it is

hereby ORDERED:

1.  The Motion is granted.

2.  The Settlement Agreement dated April 13, 2012, entered into by and among the

Trustee and the Defendants, which is incorporated herein by reference as if reinstated herein in

full, together with any and all schedules, exhibits and ancillary documents referred to in the

Settlement Agreement, which are an integral part of the Settlement Agreement (collectively, the

"Agreement"), a copy of which is attached to this Order as Exhibit A, is authorized and approved

in its entirety.

3.  Upon the Effective Date of the Agreement, the Parties are authorized, without the

need for further order of this Court, to execute, deliver, implement and fully perform any and all

obligations, instruments, documents and papers and to take any and all actions reasonably

necessary to consummate the Settlement Agreement.

5.  This Order shall be effective and enforceable immediately upon entry.

6.  This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the Settlement Agreement or this Order.

Date: New York, New York
_____5/31____, 2012


JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                             :
IRVING H. PICARD,                                            :
                                                             :
                    Plaintiff,                               :
                                                             :
            - against -                                      :    11-CV-03605 (JSR)(HBP)
                                                             :
SAUL B. KATZ, et al.,                                        :
                                                             :
                    Defendants.                              :
                                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made and entered into as

of April 13, 2012, by and among Irving H. Picard ("Trustee"), in his capacity as the trustee for

the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa et

seq. ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the

substantively consolidated estate of Bernard L. Madoff ("Madoff"), and Saul B. Katz, Fred

Wilpon, Richard Wilpon, Michael Katz, Jeffrey Wilpon, David Katz, Gregory Katz, Arthur

Friedman, L. Thomas Osterman, Marvin B. Tepper, Estate of Leonard Schreier, Jason Bacher,

Mets Limited Partnership, Sterling Mets L.P., Mets II LLC, FS Company L.L.C., Bon Mick

Family Partners L.P., Charles Sterling Sub LLC, College Place Enterprises LLC, FFB Aviation

LLC, Iris J. and Saul B. Katz Family Foundation Inc., Judy and Fred Wilpon Family Foundation,

Inc., Red Valley Partners, Robbinsville Park LLC, SEE Holdco, LLC, Sterling 10 LLC, Sterling

15C L.L.C., Sterling 20 LLC, Sterling American Advisors II L.P., Sterling Brunswick Seven

L.L.C., Sterling DIST Properties LLC, Sterling Equities, Sterling Equities Associates, Sterling

Internal V LLC, Sterling Thirty Venture LLC, Sterling Tracing LLC, Sterling Twenty Five LLC,

Sterling VC IV LLC, Sterling VC V LLC, Saul B. Katz Family Trust, Fred Wilpon Family Trust,

Katz 2002 Descendants' Trust, Wilpon 2002 Descendants' Trust, Iris Katz, Judith Wilpon, Dayle

Katz, Debra Wilpon, Valerie Wilpon, Amy Beth Katz, Heather Katz Knopf, Howard Katz,

Natalie Katz O'Brien, Todd Katz, Bruce N. Wilpon, Daniel Wilpon, Jessica Wilpon, Robin

Wilpon Wachtler, Philip Wachtler, Scott Wilpon, Ruth Friedman, Phyllis Rebell Osterman, Elise

C. Tepper, Jacqueline G. Tepper, Edward M. Tepper, Devya Schreier Arthur, Sterling

Acquisitions LLC, and Sterling American Property V L.P. (collectively the "Remaining

Defendants"), and Sterling Mets Associates, Sterling Mets Associates II, Mets One LLC, Mets

Partners, Inc., C.D.S. Corp., Coney Island Baseball Holding Company L.L.C., Brooklyn

Baseball Company L.L.C., 157 J.E.S. LLC, Air Sterling LLC, BAS Aircraft LLC, Bon-Mick,

Inc., Charles 15 Associates, Charles 15 LLC, Charles Sterling LLC, Ruskin Garden Apartments

LLC, SEE Holdings I, SEE Holdings II, Sterling Brunswick Corporation, Sterling Equities

Investors, Sterling Heritage L.L.C., Sterling Jet Ltd., Sterling Jet II Ltd., Sterling PathoGenesis

Company, Sterling Third Associates, Valley Harbor Associates, Kimberly Wachtler, Minor 1,

Minor 2, Michael Schreier, Realty Associates Madoff II, Sterling American Property III L.P.,

and Sterling American Property IV L.P. (collectively the "Dismissed Defendants" and, together

with the Remaining Defendants, the "Defendants").  Each of the Trustee and each of the

Defendants shall be referred to herein as a "Party" and together as the "Parties."

## RECITALS

A.      BLMIS and its predecessor were registered broker-dealers with the United States

Securities and Exchange Commission (the "Commission") and members of the Securities

Investor Protection Corporation ("SIPC");

B.      On December 11, 2008, the Commission filed a complaint in the United States

District Court for the Southern District of New York (the "District Court") against BLMIS and

2

Madoff. On December 12, 2008, the District Court entered an order which, among other things, appointed Lee S. Richards, Esq. as receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS));

C.    On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 78eee(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee as the trustee for the liquidation of the business of BLMIS under section 78eee(b)(3) of SIPA, removed the Receiver as the receiver for BLMIS, and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 78eee(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL);

D.    On April 13, 2009, an involuntary bankruptcy petition under chapter 7 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), was filed against Madoff. By Order dated June 2, 2009, the Bankruptcy Court substantively consolidated Madoff's estate into the BLMIS estate in the SIPA liquidation proceeding (the BLMIS estate consolidated with Madoff's estate collectively are referred to herein as the "BLMIS Estate");

E.    On or about June 18, 2009, certain Defendants filed customer claims in the SIPA liquidation proceeding in connection with their BLMIS accounts, including with respect to accounts in which they had deposited more money than they had withdrawn. The Trustee often refers to such accounts as "net loser" accounts.

3

F.      On March 1, 2010, the Bankruptcy Court issued an opinion affirming the

Trustee's calculation of customers' "net equity" claims as the difference between the amounts a

customer invested with BLMIS and the amounts that customer withdrew from BLMIS (the "Net

Investment Method").  On March 8, 2010, the Bankruptcy Court entered an order implementing

its decision and certifying it for immediate appeal to the United States Court of Appeals for the

Second Circuit, which on August 16, 2011, upheld the Trustee's use of the Net Investment

Method as a proper basis for calculating "net equity" claims in *In re Bernard L. Madoff Inv. Sec.

LLC*, 654 F.3d 229 (2d Cir. 2011) ("Second Circuit Net Equity Order"), *petition for cert. filed,

Sterling Equities Assoc. v. Picard*, No. 11-968, 2012 WL 396523 (Feb. 3, 2012);

G.      On December 7, 2010, the Trustee filed an action in the Bankruptcy Court

captioned *Picard v. Katz, et al.*, Adv. Pro. No. 10-5287 (BRL) (the "Action"), and on March 18,

2011, filed an amended complaint (the "Amended Complaint") in the Action, which asserted

claims under section 78fff-2(c)(3) of SIPA, sections 544(b), 547(b), 548(a), 550(a) and 551 of

the Bankruptcy Code, the New York Debtor and Creditor Law § 270 *et seq.*, and other laws;

H.      The Trustee alleged in the Amended Complaint, among other claims, that certain

Defendants received avoidable transfers of "fictitious profits" during the six-year period

preceding December 11, 2008 in the aggregate amount of One Hundred Sixty-Two Million

Seven Hundred Twenty-Six Thousand Seven Hundred Sixty-Eight United States Dollars

($162,726,768) (the "Alleged Six-Year Profits");

I.      Prior to the filing of the Action, the Trustee undertook discovery concerning

Defendants and their investments with BLMIS pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure ("Rule 2004 Discovery"), during which Defendants, among others,

produced documents to the Trustee and provided deposition testimony;

4

J.      On March 20, 2011, Defendants filed a motion in the Bankruptcy Court to dismiss the Amended Complaint or, in the alternative, for summary judgment dismissing the Amended Complaint (the "Motion to Dismiss");

K.      On May 26, 2011, Defendants filed a motion pursuant to 28 U.S.C. § 157(d) in the District Court to withdraw the reference of the Action to the Bankruptcy Court;

L.      By Order dated July 1, 2011 and ruling on August 19, 2011, the District Court withdrew for all purposes the reference of the Action to the Bankruptcy Court, which included withdrawal of the Motion to Dismiss;

M.      By Order dated July 12, 2011 (the "Allocation Order"), the Bankruptcy Court approved the Trustee's initial allocation of property to the customer property fund and authorized the Trustee to make an interim distribution to customers holding allowed "net equity" claims. Pursuant to that Order, on or about October 5, 2011, the Trustee made a first interim distribution to customers holding allowed "net equity" claims as of September 30, 2011, in the approximate amount of 4.602% per dollar of their allowed "net equity" claims. No Defendant held an allowed "net equity" claim as of that date, and, therefore, no Defendant received any portion of the distribution.

N.      On September 27, 2011, the District Court issued an Opinion and Order (the "Dismissal Order") denying in part and granting in part the Motion to Dismiss and dismissing all counts of the Amended Complaint except Count 1, which alleged that Defendants received intentional fraudulent transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code, and Count 11, which sought to equitably subordinate Defendants' claims pursuant to section 510(c) of the Bankruptcy Code;

5

O.    On October 7, 2011, the Trustee filed a motion (the "Certification Motion") seeking certification of the rulings in the Dismissal Order for interlocutory appeal under 28 U.S.C. § 1292(b), or to have the District Court enter final judgment with respect to the dismissed claims under Rule 54(b) of the Federal Rules of Civil Procedure. On January 17, 2012, the District Court issued an Opinion and Order denying the Certification Motion and reinstating Count 9 of the Complaint insofar as it sought to avoid transfers under section 550(a) of the Bankruptcy Code in accordance with the Dismissal Order;

P.    Between August 12, 2011 and January 13, 2012, the Parties engaged in discovery under Rules 26 through 34 of the Federal Rules of Civil Procedure, during which Defendants, among others, produced documents to the Trustee and provided deposition testimony;

Q.    On January 26, 2012, Defendants filed a motion for summary judgment dismissing all remaining counts of the Amended Complaint, and the Trustee filed a motion for partial summary judgment as to Count 1 of the Amended Complaint insofar as his Count 1 claims sought to avoid an aggregate amount of Eighty Three Million Three Hundred Nine Thousand One Hundred Sixty Two United States Dollars ($83,309,162) of transfers of "fictitious profits" from BLMIS to Defendants during the two-year period preceding December 11, 2008;

R.    On March 5, 2012, the District Court issued an order setting forth the Court's bottom line rulings denying Defendants' motion for summary judgment and granting the Trustee's motion for partial summary judgment while leaving unresolved, although capped at the $83,309,162 sought by the Trustee, the amount of "fictitious profits" received by Defendants that were subject to avoidance;

S.    On March 16, 2012, the Parties executed a legally binding Memorandum of Understanding (the "MOU"), in which they agreed to a final, binding, and legally enforceable

6

settlement of the Action (the "Settlement"). The Parties agreed to work expeditiously and in good faith to enter into definitive documentation reflecting the terms of the MOU and other terms customary for such agreements;

T.      Pursuant to the MOU, the Trustee announced that, upon review of the evidence, he determined that he was no longer pursuing the willful blindness claims asserted against any Defendant; and

U.      On March 19, 2012, the District Court reviewed the MOU, which requires, among other things, approval of the Settlement by the District Court and any necessary approval by Defendants' lenders by no later than April 13, 2012.

**NOW, THEREFORE**, it is hereby **AGREED** by and among the Parties to the Agreement, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is recognized for all purposes, that:

1.      **Definitions**. In addition to the definitions of various terms set forth elsewhere in this Agreement, the following terms shall have the following meanings as used in this Agreement:

(a)      "Approval Order" means the order of the District Court approving the terms of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

(b)      "Defendant General Creditor Claim" means any claim, other than a Defendant Net Equity Claim (defined below), asserted by any Defendant, with respect to amounts claimed to be held on account for such Defendant at BLMIS at the time of its bankruptcy, against (i) the BLMIS Estate or (ii) any forfeiture or other fund, established or yet to be established, for the benefit of BLMIS customers. Defendants' rights and the Trustee's

7

obligations with respect to Defendant General Creditor Claims are set forth in paragraph 2(k) below.

(c)    "Defendant Net Equity Claim" means the "net equity" claim of any Defendant in BLMIS's SIPA liquidation proceeding, which the Trustee has determined in accordance with the Net Investment Method and which will be allowed in the aggregate amount of One Hundred Seventy-Seven Million Five Hundred Sixty-Three Thousand Thirty-Eight United States Dollars and Eight Cents ($177,563,039.08), regardless of the source of payment in respect of such Claim. A schedule of each Defendant Net Equity Claim reflecting the specific account number, account holder's name, the net equity in each account, and the claim number that identifies the claim filed by each account holder is attached as Schedule 1 to the Agreement. The Parties acknowledge and agree that if the Net Investment Method for calculating the value of "net equity" claims is found to be incorrect or is otherwise modified, the Trustee will retroactively adjust the calculation of the value of each Defendant Net Equity Claim to reflect the new methodology

(d)    "Effective Date" means the date on which the District Court enters the Approval Order. The Parties acknowledge and agree that (i) prior to the Effective Date, the following shall be delivered to the Trustee: (x) an executed Assignment, as defined below, of each Defendant Net Equity Claim; and (y) an executed release (or executed acknowledgement of release) of any lien, interest or encumbrance, held prior to the Assignment by any lender to the Defendants or other third party, on or against any part, or all, of each Defendant Net Equity Claim and/or Assigned Claim Recoveries (as defined below) up to the amount of the Settlement Payment (as defined below) (such release or acknowledgement of release a "Release of Lien"), which shall remain in effect until the Settlement Payment is paid in full, and (ii) on the Effective

8

Date, the Trustee shall deliver to Defendants an executed stipulation of dismissal to be filed on, or as soon as practicable following, the Effective Date.

2. **Payment Obligation, Claims, and Related Matters**. On the terms and subject to the conditions and limitations set forth in this Agreement, Defendants will pay or cause to be paid to the Trustee an aggregate amount of One Hundred Sixty-Two Million United States Dollars ($162,000,000) (the "Settlement Payment"). The Settlement Payment will be satisfied during the five, twelve-month periods following the Effective Date (the "Settlement Payment Term"). The first of such twelve-month periods shall be referred to as the "First Period"; the second twelve-month period shall run from the end of the First Period and be referred to as the "Second Period"; and each successive twelve-month Period thereafter shall run from the end of the prior Period through and including the "Fifth Period." The Settlement Payment shall be satisfied by the following means:

(a)    Assignment of Defendant Net Equity Claims. Each Defendant unconditionally and irrevocably agrees to assign to the Trustee by written assignment (individually, the "Assignment," and collectively, the "Assignments"), the form of which is attached hereto as Exhibit A, his, her or its Defendant Net Equity Claim (collectively, the "Assigned Claims") solely for the purpose of satisfying the Settlement Payment. No assigned Defendant Net Equity Claim (or recovery in respect of a Defendant Net Equity Claim in excess of amounts necessary to satisfy the Settlement Payment) shall become property of the BLMIS estate nor be used for any purpose other than to satisfy the Settlement Payment. The Trustee shall not transfer or assign any Defendant Net Equity Claim, except as expressly contemplated by this Agreement.

9

(b)   <u>Allowance of Defendant Net Equity Claims</u>.  The Trustee will allow the

Defendant Net Equity Claims, which will then be entitled to full recovery on the same basis as

"good faith" customers of BLMIS, except that Defendant Net Equity Claims will not be entitled

to receive an advance from SIPC, as provided for in 15 U.S.C. § 78fff-3.

(c)   <u>Assigned Claim Recoveries</u>.  The Assigned Claims will be entitled to

100% of all distributions made by the Trustee from BLMIS customer property or any other

payment of allowed claims of "good faith" customers of BLMIS from any source (collectively,

"<u>Assigned Claim Recoveries</u>"), including, but not limited to, (i) from any forfeiture fund

established by the U.S. Department of Justice pursuant to 28 C.F.R. Part 9 and (ii) the 4.602%

"catch-up" distribution in the amount of Eight Million One Hundred Seventy-One Thousand

Four Hundred Fifty-One United States Dollars ($8,171,451) made pursuant to the Bankruptcy

Court's Allocation Order but not previously paid in connection with any Defendant Net Equity

Claim.  The Trustee represents that, as of the Effective Date, there has been only one (1)

distribution from the fund of customer property to customers holding allowed "net equity"

claims, such distribution occurred on or about October 5, 2011, pursuant to the Bankruptcy

Court's Allocation Order, and was in the amount of 4.602% of customers' allowed "net equity"

claims.

(d)   In connection with any distribution made in respect of the Assigned

Claims, any and all Assigned Claim Recoveries shall immediately and automatically be applied

to reduce Defendants' obligations in respect of the Settlement Payment on a dollar-for-dollar

basis.  Promptly thereafter (but not later than seven (7) calendar days), the Trustee shall provide

written notice to Defendants (i) of any remaining balance of the Settlement Payment after

10

Assigned Claim Recoveries have been so applied and (ii) if/when the Settlement Payment is fully satisfied.

      (e)    During the First through the Third Periods of the Settlement Payment Term, Defendants' payment obligations pursuant to this Agreement are limited solely to Assigned Claim Recoveries, and, during such periods, no Defendant is obligated to make any payment in excess of or in addition to Assigned Claim Recoveries. Upon full satisfaction of the Settlement Payment at any time during the Settlement Payment Term, the Trustee shall promptly (but not later than seven (7) calendar days) re-assign the Assigned Claims to Defendants by executing and delivering an assignment to each of the Defendants or their designee(s), limited to a maximum, potential recovery of the difference between the value of the aggregate amount of the Defendant Net Equity Claims and the value of the Defendant Net Equity Claims previously applied to reduce Defendants' obligations in respect of the Settlement Payment (such difference being the "Tail Payment"). Upon full satisfaction of the Settlement Payment, Defendants shall be entitled to receive in full any distributions in respect of Defendant Net Equity Claims on the same basis as "good faith" customers of BLMIS, including any distribution made after the end of the Fifth Period.

      (f)    For the avoidance of doubt, unless and until the Settlement Payment is fully satisfied, the Trustee shall have no obligation to re-assign the Assigned Claims to the Defendants, and the Defendants shall not be entitled to receive all or any part of the Tail Payment.

      (g)    Defendants' Installment Payments. If the Settlement Payment is not fully satisfied after applying all of the Assigned Claim Recoveries during the First through the Third Periods of the Settlement Payment Term, the remaining unpaid amount of the Settlement

11

Payment (the "Remaining Amount") shall be divided into two equal annual installments to be paid no later than the end of the Fourth and Fifth Periods of the Settlement Payment Term. Any and all Assigned Claim Recoveries received during the Fourth and Fifth Periods shall immediately and automatically be applied to the next due installment during the Fourth and Fifth Periods of the Settlement Payment Term to reduce the payment in respect of the Remaining Amount for that Period. If the installment payment for the Fourth Period is satisfied in full by Assigned Claim Recoveries, any excess will be applied to the Fifth Period installment. The annual installment payments shall be made by wire transfer of immediately available funds in accordance with written instructions provided by the Trustee to Defendants no later than thirty (30) days prior to the relevant payment date.

(h)    Each Defendant shall be responsible, on a several and not joint basis, for his, her, or its proportionate (*i.e.*, percentage) share of the Remaining Amount in proportion to his, her, or its proportionate share of the Alleged Six-Year Profits. With respect to accounts held jointly or as tenants in common, each Defendant shall be responsible, on a several and not joint basis, for his, her, or its proportionate share of that account's proportionate share of the Remaining Amount. A detailed schedule of the Alleged Six-Year Profits reflecting the relevant BLMIS account number, the account holder's name, the Defendant or Defendants related to each such BLMIS account, the amount of the Alleged Six-Year Profits by account, and each Defendant's proportionate share of the Alleged Six-Year Profits is attached as Schedule 2 to this Agreement.

(i)    Fred Wilpon and Saul Katz Guarantees. Fred Wilpon and Saul Katz ("Guarantors"), jointly and severally, irrevocably and unconditionally, and regardless of which Defendant fails to pay his, her, or its proportionate share of the Remaining Amount, hereby

12

guarantee payment of the Remaining Amount owed to the Trustee up to an aggregate amount of Twenty-Nine Million United States Dollars ($29,000,000) (the "Guarantee"). The Trustee shall not recover on the Guarantee unless a Defendant has not paid in full his, her, or its proportionate share of the Remaining Amount at the end of the Fourth and/or Fifth Periods of the Settlement Payment Term. In the event that a Defendant does not pay his, her, or its proportionate share of the Remaining Amount when it is due, the Trustee shall, within three (3) business days, make a written demand of the Guarantors, who shall promptly (but not later than three (3) business days from the date of the Trustee's written demand) satisfy the demand. Under no circumstances shall the aggregate amount of any payments made by the Guarantors in satisfaction of the Guarantee exceed $29,000,000.

(j)       Following the Effective Date, the Parties shall agree to specific dates for each of the First through the Fifth Periods of the Settlement Payment Term as follows:

| |
|---|
| EFFECTIVE DATE:  [Month/Date/2012] |
| END OF FIRST PERIOD:  Twelve calendar months following the Effective Date, or [Month/Date/2013] |
| END OF SECOND PERIOD:  Twelve calendar months following the end of the First Period, or [Month/Date/2014] |
| END OF THIRD PERIOD:  Twelve calendar months following the end of the Second Period, or [Month/Date/2015] |
| END OF FOURTH PERIOD:  Twelve calendar months following the end of the Third Period, or [Month/Date/2016] |
| END OF FIFTH PERIOD:  Twelve calendar months following the end of the Fourth Period, or [Month/Date/2017] |

13

(k)    The Trustee shall treat the Defendant General Creditor Claims on the same

basis as he treats the same types of claims asserted by "good faith" customers, including with

respect to any recoveries to which such claims will be entitled.

3.    **Mutual Releases**.

(a)    Except with respect to any rights and obligations arising under this

Agreement (including rights and obligations relating to Defendant Net Equity Claims and

Defendant General Creditor Claims), the Trustee, for himself and on behalf of BLMIS, Madoff,

and the BLMIS Estate ("Trustee Releasors"), hereby fully, finally, and forever releases, remises,

relinquishes, and discharges Defendants and their professionals and agents from any and all past,

present, or future claims or causes of action (including any suit, petition, demand, or other claim

in law, equity or arbitration) and from any and all allegations of liability or damages (including

any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises,

damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct

or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability

or otherwise, based on willful blindness, strict liability, negligence, gross negligence, fraud,

breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known

or unknown, that are, have been, could have been, or might in the future be, asserted by the

Trustee against Defendants based on, arising out of, or relating in any way to Madoff,  BLMIS,

their liquidation proceedings, the BLMIS Estate or any BLMIS account held in the name of any

Defendant (the "Trustee Released Claims").

(b)    Except with respect to any rights and obligations arising under this

Agreement (including rights and obligations relating to Defendant Net Equity Claims and

Defendant General Creditor Claims), each of the Defendants for himself, herself or itself, and in

14

the case of a corporate or partnership Defendant, its shareholders, members, officers and

directors, partners, their successors in interest and assigns ("Defendant Releasors"), hereby fully,

finally, and forever releases, remises, relinquishes, and discharges the Trustee, his professionals

and agents and the BLMIS Estate from any and all claims or causes of action (including any suit,

petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of

liability or damages (including any allegation of duties, debts, reckonings, contracts,

controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of

whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or

contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence,

gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or

disbursements) known or unknown, that are, have been, could have been, or might in the future

be, asserted by Defendant Releasors against the Trustee based on, arising out of, or relating in

any way to Madoff,  BLMIS, their liquidation proceedings, the BLMIS Estate and any BLMIS

account held by any of the Defendants (the "Defendant Released Claims").

      (c)     With respect to any and all Trustee Released Claims or Defendant

Released Claims, the Trustee and Defendant Releasors shall expressly waive or be deemed to

have waived the provisions, rights, and benefits of California Civil Code § 1542 (to the extent it

applies herein) and any provisions, rights, and benefits conferred by any law of any state or

territory of the United States or principle of common law that is similar, comparable, or

equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

Except with respect to the rights and obligations arising under this Agreement, the Trustee and Defendants each acknowledge that each may hereafter discover facts in addition to or different from those that each now knows or believes to be true with respect to the subject matter of the Trustee Released Claims or the Defendant Released Claims, respectively, but the Trustee and Defendants each shall expressly have and shall be deemed to have fully, finally, and forever settled, released, and discharged any and all Trustee Released Claims and Defendant Released Claims, respectively, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts.

      4.    **Termination of Litigation**.  On or as soon as practical after the Effective Date, the Parties will file a stipulation of dismissal dismissing the Action with prejudice and without cost to any Party.  Within three (3) business days after the Effective Date, Defendants shall withdraw their petition for a writ of *certiorari* filed with the United States Supreme Court from the Second Circuit Net Equity Order.  Defendants agree not to pursue or join any other litigation, or to provide legal counsel to any other defendant involved in any litigation, involving the Trustee or SIPC arising out of or relating to BLMIS, Madoff, their liquidation proceeding and the BLMIS Estate, including filing any motion, memorandum or other court document, except with respect to (i) any rights or obligations arising under this Agreement; (ii) the litigation involving, among others, Eric Saretsky on behalf of the participants in the Sterling Equities Employees Retirement Plan; and (iii) the litigation captioned *Picard v. Estate of Marjorie K.*

*Osterman, et al.* The Parties agree not to make any disparaging statement with respect to each other or the Settlement.

5.  **Conditions**. Notwithstanding any provision of this Agreement to the contrary, the obligations of the Parties are subject to the receipt of (a) approval of the Settlement by the District Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and entry of the Approval Order, and (b) any required lender approvals, which shall be obtained by no later than April 13, 2012.

6.  **Representations and Warranties**.

(a)   The Trustee hereby represents and warrants to Defendants that, subject to the Approval Order: (i) he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder; (ii) this Agreement has been duly executed and delivered by the Trustee and constitutes the valid and binding agreement of the Trustee, enforceable against the Trustee in accordance with its terms; and (iii) in executing this Agreement, the Trustee has done so with the full knowledge of any and all rights that he may have with respect to the controversies herein compromised, and the Trustee has received or has had the opportunity to obtain independent legal advice from his counsel with regard to the facts relating to said controversies and with respect to the rights arising out of said facts.

(b)   Each Defendant, solely with respect to himself, herself, or itself, hereby represents and warrants to the Trustee that: (i) he, she, or it has the full power, authority, legal right and capacity to execute and deliver this Agreement and to perform his, her, or its respective obligations hereunder; (ii) he, she, or it has the full power, authority and legal right to execute and deliver to the Trustee the Assignment of his, her, or its Defendant Net Equity Claim, which has not previously been assigned, except pursuant to a lien that has been released as

17

contemplated in paragraph 1(d)(i)(y), in whole or in part; (iii) he, she, or it has taken such steps

and actions, as necessary, such that the holders of any obligations entitled to notice from such

Defendant have been given notice of this Agreement and Defendant's obligations to the Trustee

under this Agreement; (iv) he, she or it has obtained a Release of Lien, a copy of which shall be

provided to the Trustee prior to the Effective Date; (v) the Assigned Claim is free and clear of

any lien, claim, interest or encumbrance held by any third party; (vi) this Agreement has been

duly executed and delivered by such Defendant and constitutes the valid and binding agreement

of such Defendant, enforceable against such Defendant in accordance with its terms; and (vii) in

executing this Agreement, such Defendant has done so with the full knowledge of any and all

rights that such Defendant may have with respect to the controversies herein compromised, and

such Defendant has received or has had the opportunity to obtain independent legal advice from

his, her, or its attorneys with regard to the facts relating to said controversies and with respect to

the rights arising out of said facts.

   (c) Each of the representations and warranties set forth in this paragraph 6

shall survive in perpetuity.

   7. **Further Assurances**. Each Party shall execute and deliver any document or

instrument reasonably requested by the other Party after the date of this Agreement to effectuate

the intent of this Agreement.

   8. **Return, Destruction, and Confidentiality of Documents**.

   (a) Notwithstanding any other provision of this Agreement, and pursuant to

the October 30, 2011 protective order entered in the Action, the provisions of which are

incorporated herein by reference, any Party that received documents designated or identified as

"Confidential" or "Highly Confidential" by any other Party that produced the documents (the

18

"Producing Party") at any time in connection with the Action, including during Rule 2004 Discovery, the mediation relating to the Action, or in relation to this Agreement, shall, within thirty (30) days of the final disposition of the Action, (a) return to the offices of the Producing Party's counsel all such documents, including any copies thereof, or (b) if the Producing Party does not require return of such documents, certify to counsel for the Producing Party that all such documents, including any copies thereof, have been destroyed. For the avoidance of doubt, the obligations under this paragraph to return documents to the Producing Party include documents produced by the Trustee to the Defendants.

(b)    The Trustee agrees to maintain at all times the confidentiality of all information provided by Defendants, on or before the date hereof, that Defendants designated "Confidential" or "Highly Confidential."

9.    **Entire Agreement**. This Agreement (including all schedules and any exhibits hereto) constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, including the MOU, representations and understandings of the Parties concerning the subject matter hereof.

10.    **Amendment; Waiver**. This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties hereto or their successors-in-interest. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

11.    **Assignment**. This Agreement may not be assigned by any Party without the prior written consent of the other Parties, provided that nothing herein shall prohibit any Defendant

that is a corporation, partnership, limited liability company, or other entity from pledging or assigning its interest in this Agreement in connection with borrowings or the sale of all or substantially all of such Defendant's assets. In the event of such a pledge or assignment, the obligations of such Defendant shall remain in full force and effect and shall not be impaired. Any such assignor shall provide to the Trustee written notice of the assignment of its interest in this Agreement within ten (10) business days thereafter.

12.    **Successors**. This Agreement shall be binding upon and inure to the benefit of each Party and his, her, or its respective successors, heirs, estates, and personal representatives.

13.    **Construction**. This Agreement has been fully negotiated by the Parties. Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement. Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context indicates is appropriate. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Including" is not intended to be a limiting term.

14.    **Headings**. The headings in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.

15.    **Choice of Law**. This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principle of conflicts of law thereof), the Bankruptcy Code, and SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all

20

right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

16.    **Choice of Forum**. Any action arising out of this Agreement, or relating to the performance or breach of the Parties hereunder or the interpretation hereof, shall be brought exclusively in the District Court, and each of the Parties (a) consents to jurisdiction in such court, (b) agrees that it will not bring any action relating to this Agreement, including the performance or breach or interpretation of this Agreement, in any court other than the District Court, and (c) agrees that any such action should, to the extent possible, be referred to Judge Jed S. Rakoff.

17.    **WAIVER OF JURY TRIAL**. THE PARTIES EXPRESSLY AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY FOR ANY CLAIM, COUNTERCLAIM, ACTION, OR OTHER PROCEEDING ARISING UNDER OR RELATING TO THIS AGREEMENT, ANY RIGHTS OR OBLIGATIONS HEREUNDER, THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS OR THE RELATIONSHIP BETWEEN THE PARTIES, IN EACH CASE WHETHER SUCH CLAIM, COUNTERCLAIM, ACTION, OR OTHER PROCEEDING IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE.

18.    **Expenses**. Each Party shall bear its respective expenses relating to or arising out of this Agreement, including, but not limited to, fees for attorneys and other advisors.

19.    **Notices**. All notices, requests, demands, consents and communications necessary or required under this Agreement shall be in writing and shall be delivered by hand or sent by registered or certified mail (return receipt requested), by overnight courier (with confirmation), by facsimile (receipt confirmed), or by electronic means (receipt confirmed), in each case

21

addressed and copied as set forth on the applicable signature page hereto. A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

All such notices, requests, demands, consents and other communications shall be deemed to have

been duly given or sent two (2) days following the date on which mailed, or on the date on which

delivered by courier or by hand or by facsimile or electronic transmission (receipt confirmed),

addressed as follows:

|  |  |
|---|---|
| If to the Trustee: | If to any Defendant: |
| Irving H. Picard<br>c/o Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Facsimile No.: (212) 589-4201 | c/o Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attention: Robert F. Wise, Jr.<br>Karen E. Wagner<br>Dana M. Seshens<br>Facsimile No.: (212) 701-5800 |

with copies to:

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: David J. Sheehan
Fernando A. Bohorquez, Jr.
Facsimile No.: (212) 589-4201

20.    **No Third-Party Beneficiaries**. Nothing contained in this Agreement is intended

to confer any benefit upon any person or entity other than the Parties hereto and their respective

successors and permitted assigns.

21.    **Counterparts**. This Agreement may be executed and delivered in any number of

counterparts, each of which so executed and delivered shall be deemed to be an original and all

of which shall constitute one and the same document. Each Party may evidence its execution of

this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the

same effect as the delivery of an original signature.

22

Each Party has caused this Agreement to be duly executed and delivered as of the date set forth above.

**Irving H. Picard, the Trustee for the liquidation proceedings of Bernard L. Madoff Investment Securities LLC and the substantively consolidated bankruptcy case of Bernard L. Madoff**

_____
Irving H. Picard

SAUL B. KATZ

_____
Saul B. Katz


FRED WILPON

_____
Fred Wilpon


RICHARD WILPON

_____
Richard Wilpon


MICHAEL KATZ

_____
Michael Katz


JEFFREY WILPON

_____
Jeffrey Wilpon


DAVID KATZ

_____
David Katz


GREGORY KATZ

_____
Gregory Katz

**ARTHUR FRIEDMAN**

By:  Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:  Fred Wilpon, Co-administrator

By:  Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

By:  Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

By:  David P. Cohen, Executive Vice
President

**ARTHUR FRIEDMAN**

By:  Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:  Fred Wilpon, Co-administrator

By:  Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

By:  Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

By:  David P. Cohen, Executive Vice
President

**ARTHUR FRIEDMAN**

_____

By:  Ruth Friedman, attorney-in-fact


**L. THOMAS OSTERMAN**

_____

L. Thomas Osterman


**MARVIN B. TEPPER**

_____

Marvin B. Tepper


**ESTATE OF LEONARD SCHREIER**

_____

By:  Fred Wilpon, Co-administrator

_____

By:  Jason Bacher, Co-administrator


**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

_____

By:  Fred Wilpon, CEO


**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

_____

By:  David P. Cohen, Executive Vice
President

**ARTHUR FRIEDMAN**

By:  Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:  Fred Wilpon, Co-administrator

By:  Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

By:  Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

By:  David P. Cohen, Executive Vice
      President

**ARTHUR FRIEDMAN**

By:  Ruth Friedman, attorney-in-fact

**L. THOMAS OSTERMAN**

L. Thomas Osterman

**MARVIN B. TEPPER**

Marvin B. Tepper

**ESTATE OF LEONARD SCHREIER**

By:  Fred Wilpon, Co-administrator

By:  Jason Bacher, Co-administrator

**Mets Limited Partnership**

By:  C.D.S. Corp., its general partner

By:  Fred Wilpon, CEO

**Sterling Mets, L.P.**

By:  Mets Partners, Inc., its general partner

By:  David P. Cohen, Executive Vice
President

**Mets II LLC**

By:    Sterling Mets Associates II, its member

By:    Michael Katz, Partner


**FS COMPANY, L.L.C.**

By:    Sterling Heritage, L.L.C., its member

By:    Michael Katz, Managing Member


**CHARLES STERLING SUB LLC**

By:    Charles Sterling 15 LLC, its manager

By:    Michael Katz, Manager


**COLLEGE PLACE ENTERPRISES LLC**

By:    Saul B. Katz, Member


**FFB AVIATION LLC**

By:    Michael Katz, Manager


**IRIS J. & SAUL B. KATZ FAMILY
FOUNDATION INC.**

By:    Saul B. Katz, Director

**JUDY AND FRED WILPON FAMILY FOUNDATION, INC.**

By:   Fred Wilpon, Director


**RED VALLEY PARTNERS**

By:   David Katz, Partner


**ROBBINSVILLE PARK, LLC**

By:   Michael Katz, Manager


**SEE HOLDCO, LLC**

By:   SEE Management, LLC, its manager

By:   Saul B. Katz, Member


**STERLING 10 LLC**

By:   Michael Katz, Manager


**STERLING 15C L.L.C.**

By:   Michael Katz, Member

**STERLING 20 LLC**

By:  Michael Katz, Manager


**STERLING AMERICAN ADVISORS II L.P.**

By:  Sterling Advisors II Corp., a general partner

By:  Michael Katz, Executive Vice President


**STERLING BRUNSWICK SEVEN L.L.C.**

By:  Michael Katz, Manager


**STERLING DIST PROPERTIES LLC**

By:  Michael Katz, Manager


**STERLING EQUITIES**

By:  Michael Katz, Senior Executive Vice
      Preseident


**STERLING EQUITIES ASSOCIATES**

By:  Michael Katz, Partner

**STERLING INTERNAL V LLC**

By:   Michael Katz, Managing Member


**STERLING THIRTY VENTURE LLC**

By:   Michael Katz, Manager


**STERLING TRACING LLC**

By:   Michael Katz, Manager


**STERLING TWENTY FIVE LLC**

By:   Michael Katz, Manager


**STERLING VC IV LLC**

By:   Michael Katz, Manager


**STERLING VC V LLC**

By:   Michael Katz, Manager


**SAUL B. KATZ FAMILY TRUST**

By:   Michael Katz, Trustee

**FRED WILPON FAMILY TRUST**

By:  Richard Wilpon, Trustee

**KATZ 2002 DESCENDANTS' TRUST**

By:  Saul B. Katz, Trustee

**WILPON 2002 DESCENDANTS' TRUST**

By:  Fred Wilpon, Trustee

**IRIS KATZ**

Iris Katz

**JUDITH WILPON**

Judith Wilpon

**DAYLE KATZ**

Dayle Katz

**DEBRA WILPON**

Debra Wilpon

**FRED WILPON FAMILY TRUST**

By:  Richard Wilpon, Trustee

**KATZ 2002 DESCENDANTS' TRUST**

By:  Saul B. Katz, Trustee

**WILPON 2002 DESCENDANTS' TRUST**

By:  Fred Wilpon, Trustee

**IRIS KATZ**

Iris Katz

**JUDITH WILPON**

Judith Wilpon

**DAYLE KATZ**

Dayle Katz

**DEBRA WILPON**

Debra Wilpon

**FRED WILPON FAMILY TRUST**

By:   Richard Wilpon, Trustee

**KATZ 2002 DESCENDANTS' TRUST**

By:   Saul B. Katz, Trustee

**WILPON 2002 DESCENDANTS' TRUST**

By:   Fred Wilpon, Trustee

**IRIS KATZ**

Iris Katz

**JUDITH WILPON**

Judith Wilpon

**DAYLE KATZ**

Dayle Katz

**DEBRA WILPON**

Debra Wilpon

**FRED WILPON FAMILY TRUST**

_____

By:  Richard Wilpon, Trustee

**KATZ 2002 DESCENDANTS' TRUST**

_____

By:  Saul B. Katz, Trustee

**WILPON 2002 DESCENDANTS' TRUST**

_____

By:  Fred Wilpon, Trustee

**IRIS KATZ**

_____

Iris Katz

**JUDITH WILPON**

_____

Judith Wilpon

**DAYLE KATZ**

_____

Dayle Katz

**DEBRA WILPON**

_____

Debra Wilpon

**VALERIE WILPON**

_____
Valerie Wilpon


**AMY BETH KATZ**

_____
Amy Beth Katz


**HEATHER KATZ KNOPF**

_____
Heather Katz Knopf


**HOWARD KATZ**

_____
Howard Katz


**NATALIE KATZ O'BRIEN**

_____
Natalie Katz O'Brien


**TODD KATZ**

_____
Todd Katz


**BRUCE N. WILPON**

_____
Bruce N. Wilpon

**VALERIE WILPON**

_____
Valerie Wilpon


**AMY BETH KATZ**

_____
Amy Beth Katz


**HEATHER KATZ KNOPF**

_____
Heather Katz Knopf


**HOWARD KATZ**

_____
Howard Katz


**NATALIE KATZ O'BRIEN**

_____
Natalie Katz O'Brien


**TODD KATZ**

_____
Todd Katz


**BRUCE N. WILPON**

_____
Bruce N. Wilpon

**VALERIE WILPON**

_____

Valerie Wilpon


**AMY BETH KATZ**

_____

Amy Beth Katz


**HEATHER KATZ KNOPF**

_____

Heather Katz Knopf


**HOWARD KATZ**

_____

Howard Katz


**NATALIE KATZ O'BRIEN**

_____

Natalie Katz O'Brien


**TODD KATZ**

_____

Todd Katz


**BRUCE N. WILPON**

_____

Bruce N. Wilpon

**VALERIE WILPON**

_____
Valerie Wilpon


**AMY BETH KATZ**

_____
Amy Beth Katz


**HEATHER KATZ KNOPF**

_____
Heather Katz Knopf


**HOWARD KATZ**

_____
Howard Katz


**NATALIE KATZ O'BRIEN**

_____
Natalie Katz O'Brien


**TODD KATZ**

_____
Todd Katz


**BRUCE N. WILPON**

_____
Bruce N. Wilpon

**VALERIE WILPON**

_____
Valerie Wilpon


**AMY BETH KATZ**

_____
Amy Beth Katz


**HEATHER KATZ KNOPF**

_____
Heather Katz Knopf


**HOWARD KATZ**

_____
Howard Katz


**NATALIE KATZ O'BRIEN**

_____
Natalie Katz O'Brien


**TODD KATZ**

_____
Todd Katz


**BRUCE N. WILPON**

_____
Bruce N. Wilpon

**VALERIE WILPON**

_____
Valerie Wilpon


**AMY BETH KATZ**

_____
Amy Beth Katz


**HEATHER KATZ KNOPF**

_____
Heather Katz Knopf


**HOWARD KATZ**

_____
Howard Katz


**NATALIE KATZ O'BRIEN**

_____
Natalie Katz O'Brien


**TODD KATZ**

_____
Todd Katz


**BRUCE N. WILPON**

_____
Bruce N. Wilpon

**DANIEL WILPON**

_____
Daniel Wilpon


**JESSICA WILPON KAMEL**

_____
Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____
Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____
Philip Wachtler


**SCOTT WILPON**

_____
Scott Wilpon


**RUTH FRIEDMAN**

_____
Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____
Phyllis Rebell Osterman

**DANIEL WILPON**

_____
Daniel Wilpon


**JESSICA WILPON KAMEL**

_____
Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____
Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____
Philip Wachtler


**SCOTT WILPON**

_____
Scott Wilpon


**RUTH FRIEDMAN**

_____
Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____
Phyllis Rebell Osterman

**DANIEL WILPON**

_____

Daniel Wilpon


**JESSICA WILPON KAMEL**

_____

Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____

Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____

Philip Wachtler


**SCOTT WILPON**

_____

Scott Wilpon


**RUTH FRIEDMAN**

_____

Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____

Phyllis Rebell Osterman

**DANIEL WILPON**

_____
Daniel Wilpon


**JESSICA WILPON KAMEL**

_____
Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____
Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____
Philip Wachtler


**SCOTT WILPON**

_____
Scott Wilpon


**RUTH FRIEDMAN**

_____
Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____
Phyllis Rebell Osterman

**DANIEL WILPON**

_____

Daniel Wilpon


**JESSICA WILPON KAMEL**

_____

Jessica Wilpon Kamel


**ROBIN WILPON WACHTLER**

_____

Robin Wilpon Wachtler


**PHILIP WACHTLER**

_____

Philip Wachtler


**SCOTT WILPON**

_____

Scott Wilpon


**RUTH FRIEDMAN**

_____

Ruth Friedman


**PHYLLIS REBELL OSTERMAN**

_____

Phyllis Rebell Osterman

**ELISE C. TEPPER**

_Elise C. Tepper_
_____
Elise C. Tepper


**JACQUELINE G. TEPPER**

_____
Jacqueline G. Tepper


**EDWARD M. TEPPER**

_____
Edward M. Tepper


**DEVYA SCHREIER ARTHUR**

_____
Devya Schreier Arthur


**STERLING ACQUISITIONS LLC**

_____
By:   Michael Katz, Member

**ELISE C. TEPPER**

_____
Elise C. Tepper


**JACQUELINE G. TEPPER**

_____
Jacqueline G. Tepper


**EDWARD M. TEPPER**

_____
Edward M. Tepper


**DEVYA SCHREIER ARTHUR**

_____
Devya Schreier Arthur


**STERLING ACQUISITIONS LLC**

_____
By:   Michael Katz, Member

**ELISE C. TEPPER**

_____

Elise C. Tepper

**JACQUELINE G. TEPPER**

_____

Jacqueline G. Tepper

**EDWARD M. TEPPER**

_____

Edward M. Tepper

**DEVYA SCHREIER ARTHUR**

_____

Devya Schreier Arthur

**STERLING ACQUISITIONS LLC**

_____

By:   Michael Katz, Member

**ELISE C. TEPPER**

Elise C. Tepper

**JACQUELINE G. TEPPER**

Jacqueline G. Tepper

**EDWARD M. TEPPER**

Edward M. Tepper

**DEVYA SCHREIER ARTHUR**

Devya Schreier Arthur

**STERLING ACQUISITIONS LLC**

By:  Michael Katz, Member

**ELISE C. TEPPER**

_____

Elise C. Tepper


**JACQUELINE G. TEPPER**

_____

Jacqueline G. Tepper


**EDWARD M. TEPPER**

_____

Edward M. Tepper


**DEVYA SCHREIER ARTHUR**

_____

Devya Schreier Arthur


**STERLING ACQUISITIONS LLC**

By:  Michael Katz, Member

**STERLING AMERICAN PROPERTY V L.P.**

By:  Sterling American Advisors V LLC, its
general partner

    By:  Sterling Advisors V LLC, its managing
member

        By: Sterling SAP V Equity Partners
LLC, its managing member

        By:  Michael Katz, Co-CEO

**STERLING METS ASSOCIATES**

By:   Michael Katz, Partner

**STERLING METS ASSOCIATES II**

By:   Michael Katz, Partner

**METS ONE LLC**

By:  Sterling Mets Associates, its member

By:   Michael Katz, Partner

**METS PARTNERS, INC.**

By:  David P. Cohen, Executive Vice President

**STERLING AMERICAN PROPERTY V L.P.**

By:  Sterling American Advisors V LLC, its
general partner

    By:  Sterling Advisors V LLC, its managing
member

        By:  Sterling SAP V Equity Partners
LLC, its managing member

            _____

            By:  Michael Katz, Co-CEO


**STERLING METS ASSOCIATES**

_____

By:  Michael Katz, Partner


**STERLING METS ASSOCIATES II**

_____

By:  Michael Katz, Partner


**METS ONE LLC**

By:  Sterling Mets Associates, its member

    _____

    By:  Michael Katz, Partner


**METS PARTNERS, INC.**

_____

By:  David P. Cohen, Executive Vice President

C.D.S. CORP.

By:   Fred Wilpon, CEO


**CONEY ISLAND BASEBALL HOLDING COMPANY, L.L.C.**

By:   FS Company, L.L.C., its managing member

By:   Sterling Heritage, L.L.C., its member

By:   Michael Katz, Managing Member


**BROOKLYN BASEBALL COMPANY L.L.C.**

By:   FS Company, L.L.C., its managing member

By:   Sterling Heritage, L.L.C, its member

By:   Michael Katz, Managing Member


**157 J.E.S. LLC**

By:   Michael Katz, Manager


**AIR STERLING LLC**

By:   Michael Katz, Manager


**BAS AIRCRAFT LLC**

By:   Richard Wilpon, Manager

**BON-MICK FAMILY PARTNERS, L.P.**

By:   Bon Mick, Inc., its general partner

By:   Michael Katz, Vice President


**CHARLES 15 ASSOCIATES**

By:   Charles 15 LLC, a general partner

By:   Charles Sterling 15 LLC, its manager

By:  Michael Katz, Manager


**CHARLES 15 LLC**

By:   Charles Sterling 15 LLC, its manager

By:   Michael Katz, Manager


**CHARLES STERLING LLC**

By:   Charles Sterling 15 LLC, its manager

By:   Michael Katz, Manager


**RUSKIN GARDEN APARTMENTS LLC**

By:   Saul B. Katz, Managing Member

**BON-MICK, INC.**

By:   Michael Katz, Vice President

**SEE HOLDINGS I**

By:   Michael Katz, Partner

**SEE HOLDINGS II**

By:   Saul B. Katz, Partner

**STERLING BRUNSWICK CORPORATION**

By:   Michael Katz, Manager

**STERLING EQUITIES INVESTORS**

By:   Michael Katz, Partner

**STERLING HERITAGE, L.L.C.**

By:   Michael Katz, Managing Member

**STERLING JET LTD.**

By:   Fred Wilpon, President

**STERLING JET II, LTD.**

By:   Saul B. Katz, President

**STERLING PATHOGENESIS COMPANY**

By:  Michael Katz, Partner

**STERLING THIRD ASSOCIATES**

By:  Michael Katz, Partner

**VALLEY HARBOR ASSOCIATES**

By:  Saul B. Katz, Partner

**KIMBERLY WACHTLER**

Kimberly Wachtler

**MINOR 1**

By:  Jeffrey Wilpon

**MINOR 2**

By:  Jeffrey Wilpon

**MICHAEL SCHREIER**

Michael Schreier

**STERLING PATHOGENESIS COMPANY**

By:  Michael Katz, Partner

**STERLING THIRD ASSOCIATES**

By:  Michael Katz, Partner

**VALLEY HARBOR ASSOCIATES**

By:  Saul B. Katz, Partner

**KIMBERLY WACHTLER**

Kimberly Wachtler

**MINOR 1**

By:  Jeffrey Wilpon

**MINOR 2**

By:  Jeffrey Wilpon

**MICHAEL SCHREIER**

Michael Schreier

**STERLING PATHOGENESIS COMPANY**

By:  Michael Katz, Partner

**STERLING THIRD ASSOCIATES**

By:  Michael Katz, Partner

**VALLEY HARBOR ASSOCIATES**

By:  Saul B. Katz, Partner

**KIMBERLY WACHTLER**

Kimberly Wachtler

**MINOR 1**

By:  Jeffrey Wilpon

**MINOR 2**

By:  Jeffrey Wilpon

**MICHAEL SCHREIER**

Michael Schreier

**REALTY ASSOCIATES MADOFF II**

By:   Fred Wilpon ~~Family Trust, partner~~

By:   Richard Wilpon, Trustee


**STERLING AMERICAN PROPERTY III
L.P.**

By:   Sterling American Advisors III LLC, a
  general partner

  By:   Sterling Advisors III LLC, a managing
    member

    By:   Michael Katz, Executive Vice
      President


**STERLING AMERICAN PROPERTY IV
L.P.**

By:   Sterling American Advisors IV LLC, a
  general partner

  By:   Sterling Advisors IV LLC, a managing
    member

    By:   Michael Katz, Senior Executive Vice
      President

**SAUL B. KATZ**

Saul B. Katz, in his capacity as Guarantor
as defined herein

**FRED WILPON**

Fred Wilpon, in his capacity as Guarantor
as defined herein

Schedule 1

Summary of Allowed Net Equity Claims Against the BLMIS Estate
April 13, 2012

| Totals | 56 | | | $177,563,039.08 | |
|---|---|---|---|---|---|

| Account | Line 1 | Line 2 | Line 3 | Net Equity | Claim Number |
|---|---|---|---|---|---|
| 1KW001 | BON MICK FAMILY PARTNERS L P | | | $32,040.00 | 009928 |
| 1KW013 | DAYLE KATZ | | | $380,435.00 | 009930 |
| 1KW019 | MICHAEL KATZ | | | $306,936.04 | 009932 |
| 1KW061 | ELISE C TEPPER | | | $1,779,065.42 | 009937 |
| 1KW076 | JEFFREY S WILPON | & VALERIE WILPON JT TENANTS | | $3,104,689.36 | 009939 |
| 1KW108 | GREGORY KATZ | | | $178,937.89 | 009947 |
| 1KW109 | HOWARD KATZ | MICHAEL KATZ AS CUSTODIAN | | $48,125.00 | 009948 |
| 1KW110 | TODD KATZ | MICHAEL KATZ AS CUSTODIAN | | $34,073.00 | 009949 |
| 1KW206 | THE WILPON FAMILY 1997 | DESCENDANT'S TRUST | C/O STERLING EQUITIES | $220,000.00 | 009909 |
| 1KW209 | DANIEL WILPON | RICHARD A WILPON AS CUSTODIAN | | $282,659.14 | 009910 |
| 1KW242 | SAUL B KATZ FAMILY TRUST | | | $4,875,617.50 | 009913 |
| 1KW248 | DAYLE H & MICHAEL KATZ | FOUNDATION INC | | $617,000.00 | 009916 |
| 1KW260 | FRED WILPON FAMILY TRUST | | | $678,485.79 | 009920 |
| 1KW263 | MARVIN B TEPPER | | | $440,800.00 | 009921 |
| 1KW275 | L THOMAS OSTERMAN 1999 TRUST | | | $15,720.00 | 009923 |
| 1KW276 | PATRICIA THACKRAY 1999 TRUST | | | $21,220.00 | 009924 |
| 1KW302 | RUTH FRIEDMAN | | | $72,444.27 | 009902 |
| 1KW303 | ELISE TEPPER AS CUSTODIAN | FOR GRANDCHILDREN | | $144,365.50 | 009903 |
| 1KW305 | VALERIE AND JEFFREY S WILPON | FOUNDATION | | $70,050.00 | 009905 |
| 1KW309 | DAN KNOPF | HEATHER KNOPF JT TEN | C/O STERLING EQUITIES | $198,000.00 | 009898 |
| 1KW313 | STERLING THIRTY VENTURE LLC | TR | | $8,068,675.34 | 009897 |
| 1KW319 | THE TEPPER FAMILY FOUNDATION | | | $30,895.00 | 009894 |
| 1KW320 | THE DEBRA & RICHARD A WILPON | FOUNDATION | | $18,550.00 | 009887 |
| 1KW321 | THE PHYLLIS & THOMAS OSTERMAN | FAMILY FOUNDATION | | $92,500.00 | 009888 |
| 1KW330 | THE RUTH AND ARTHUR FRIEDMAN | FAMILY FOUNDATION | | $65,000.00 | 009889 |
| 1KW346 | ROBBINSVILLE PARK LLC | | | $239,000.00 | 009893 |
| 1KW347 | FS COMPANY LLC | | | $5,627,711.66 | 009886 |
| 1KW367 | ROBIN WACHTLER | & PHILIP WACHTLER JT/WROS | | $667,000.00 | 009883 |
| 1KW374 | METS II LLC | | | $3,556,888.64 | 009881 |
| 1KW384 | L THOMAS OSTERMAN | AND JILL PUPKE TIC | | $136,911.09 | 009879 |
| 1KW389 | SCOTT WILPON 2000 TRUST | RICHARD WILPON TRUSTEE | | $257,818.37 | 009878 |
| 1KW390 | JESSICA WILPON 2000 TRUST | RICHARD WILPON TRUSTEE | | $245,711.87 | 009877 |
| 1KW391 | KATZ 2002 DESCENDANTS TRUST | | | $70,500.00 | 009876 |
| 1KW396 | DEYVA ARTHUR | | | $306,000.00 | 009875 |
| 1KW402 | STERLING 10 LLC | | | $7,153,758.31 | 009872 |
| 1KW403 | RICHARD A WILPON | ANITA M TAPPY T.I.C | | $27,728.27 | 009870 |
| 1KW413 | CHARLES STERLING SUB LLC | (PRIMARY) | | $10,957,335.92 | 009871 |
| 1KW414 | CHARLES STERLING SUB LLC | (INTEREST) | | $5,302,466.42 | 009869 |
| 1KW420 | STERLING BRUNSWICK SEVEN LLC | | | $8,234,000.00 | 009868 |
| 1KW424 | HOWARD S KATZ | | C/O STERLING EQUITIES | $415,057.00 | 009866 |
| 1KW426 | GREGORY A KATZ | & AMY BETH KATZ JT/WROS | | $320,000.00 | 009865 |
| 1KW435 | STERLING INTERNAL V LLC | | C/O STERLING EQUITIES | $18,034,620.00 | 009863 |
| 1KW437 | STERLING ADVISORS IV LLC | | | $4,731,932.76 | 009862 |
| 1KW445 | WILPON 2002 DESCENDANT'S TRUST | | | $462,500.00 | 009861 |
| 1KW446 | THE THOMAS OSTERMAN FAMILY | 2006 GRANTOR TRUST | | $96,572.45 | 009860 |
| 1KW447 | STERLING TWENTY FIVE LLC | | | $36,728,168.21 | 009859 |
| 1KW455 | STERLING TRACING LLC | STERLING EQUITIES | ARTHUR FRIEDMAN | $24,523,164.00 | 009857 |
| 1KW457 | JACQUELINE TEPPER | | | $260,747.02 | 009856 |
| 1KW458 | NATALIE KATZ O'BRIEN | AND BRENDAN O'BRIEN JT WROS | | $570,000.00 | 009855 |
| 1KW460 | BRADOO-MOOMOO LLC | | C/O STERLING EQUITIES | $189,252.84 | 009854 |
| 1KW463 | STERLING VC IV LLC | STERLING EQUITIES | ATTN: ARTHUR FRIEDMAN | $1,933,625.00 | 009853 |
| 1KW464 | STERLING VC V LLC | STERLING EQUITIES | ATTN: ARTHUR FRIEDMAN | $11,803,944.00 | 009852 |
| 1KW465 | STERLING DIST PROPERTIES LLC | STERLING EQUITIES | ATTN: ARTHUR FRIEDMAN | $1,657,361.00 | 009851 |
| 1KW466 | COLLEGE PLACE ENTERPRISES LLC | | C/O STERLING EQUITIES | $2,960,000.00 | 009850 |
| 1KW467 | RV-RJW LLC | C/O STERLING EQUITIES | | $7,316,980.00 | 009849 |
| 1W0141 | JEFFREY S WILPON | & VALERIE WILPON JT/WROS | | $1,000,000.00 | 009847 |

1 of 1

**Schedule 2**

Summary of Six-Year Transfers from BLMIS to Defendants in Excess of Principal
April 13, 2012

| | Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 |
|---|---|---|---|---|---|---|
| | Defendant(s) | BLMIS Acct # | BLMIS Account Name | Total by Account | Proportionate Share | Proportionate Share - JT/TIC Accounts |
| | Arthur Friedman | 1KW004 | ARTHUR FRIEDMAN & RUTH FRIEDMAN J/T WROS | $ 80,437 | 0.04943% | 0.02472% |
| | Ruth Friedman | | | | | 0.02472% |
| | Iris Katz | 1KW014 | IRIS J KATZ C/O STERLING EQUITES | $ 22,464,687 | 13.80516% | |
| | Iris J. Katz and Saul B. Katz Family Foundation, Inc. | 1KW016 | IRIS & SAUL KATZ FAM FDN INC AND JUDY & FRED WILPON FAMILY FDN INC TIC | $ 354,000 | 0.21754% | 0.10877% |
| | Judy and Fred Wilpon Family Foundation, Inc. | | | | | 0.10877% |
| | Dayle Katz | 1KW020 | MICHAEL KATZ & DAYLE KATZ J/T WROS | $ 553,483 | 0.34013% | 0.17007% |
| | Michael Katz | | | | | 0.17007% |
| | Saul B. Katz | 1KW024 | SAUL B KATZ | $ 7,108,639 | 4.36845% | |
| | L. Thomas Osterman | 1KW044 | L THOMAS OSTERMAN | $ 1,321,950 | 0.81237% | |
| | Fred Wilpon | 1KW067 | FRED WILPON | $ 1,680,520 | 1.03272% | |
| | Judith Wilpon | 1KW077 | JUDITH A WILPON C/O STERLING EQUITES | $ 11,708,302 | 7.19507% | |
| | Debra Wilpon | 1KW081 | RICHARD A WILPON & DEBRA WILPON J/T WROS | $ 1,131,467 | 0.69532% | 0.34766% |
| | Richard Wilpon | | | | | 0.34766% |
| | Iris J. Katz and Saul B. Katz Family Foundation, Inc. | 1KW083 | IRIS KATZ & SAUL KATZ FAMILY FOUNDATION | $ 592,738 | 0.36425% | |
| | College Place Enterprises LLC | 1KW084 | COLLEGE PLACE ENTERPRISES PROFIT SHARING | $ 5,492,275 | 3.37515% | |
| | Judy and Fred Wilpon Family Foundation, Inc | 1KW086 | JUDY WILPON & FRED WILPON FAM FDN INC | $ 2,011,180 | 1.23592% | |
| | Philip Wachtler | 1KW096 | PHILIP H WACHTLER AND ROBIN WILPON WACHTLER J/T WROS | $ 18,032 | 0.01108% | 0.00554% |
| | Robin Wilpon Wachtler | | | | | 0.00554% |
| | Bruce N. Wilpon | 1KW118 | BRUCE WILPON | $ 236,770 | 0.14550% | |
| | Michael Katz | 1KW121 | MICHAEL KATZ & SAUL B KATZ TIC | $ 99,000 | 0.06084% | 0.03042% |
| | Saul B. Katz | | | | | 0.03042% |
| | Iris Katz | 1KW154 | IRIS J KATZ C/O STERLING EQUITES | $ 258,080 | 0.15860% | |
| | Judith Wilpon | 1KW155 | JUDITH A WILPON C/O STERLING EQUITIES | $ 1,110,000 | 0.68213% | |
| | Sterling 15C LLC | 1KW156 | STERLING 15C LLC | $ 17,329,002 | 10.64914% | |
| | Mets Limited Partnership | 1KW192 | METS LIMITED PTR SPECIAL ATTN: LEN LABITA | $ 24,550,000 | 15.08664% | |
| | Red Valley Partners | 1KW198 | RED VALLEY PARTNERS | $ 233,000 | 0.14318% | |
| | David Katz | 1KW201 | DAVID M KATZ | $ 585,402 | 0.35975% | |
| | Saul B. Katz | 1KW238 | SAUL B KATZ - PM | $ 1,502,544 | 0.92335% | |
| | Mets Limited Partnership | 1KW247 | METS LIMITED PTR #2 ATTN LEN LABITA | $ 20,270,108 | 12.45653% | |
| | Iris J. Katz and Saul B. Katz Family Foundation, Inc. | 1KW252 | IRIS AND SAUL KATZ FAMILY FOUNDATION PM | $ 1,437,799 | 0.88357% | |
| | Sterling Mets L.P | 1KW254 | STERLING METS LP-FUNDING ACCT PLYRS DEF SLRY OBl | $ 1,670,711 | 1.02670% | |
| | Phyllis Rebell Osterman | 1KW269 | PHYLLIS REBELL OSTERMAN | $ 107,000 | 0.06575% | |
| | Saul B. Katz | 1KW278 | SAUL B KATZ JI | $ 212,069 | 0.13032% | |
| | Sterling Brunswick Corporation | 1KW279 | STERLING BRUNSWICK CORP | $ 3,020 | 0.00186% | |
| | Sterling Heritage LLC | 1KW287 | STERLING HERITAGE LLC | $ 24,325 | 0.01495% | |
| | Fred Wilpon Family Trust | 1KW298 | FRED WILPON FAMILY TRUST TR | $ 1,156,806 | 0.71089% | |
| | Saul B. Katz Family Trust | 1KW299 | SAUL B KATZ TR | $ 421,762 | 0.25918% | |
| | Sterling Equities Associates | 1KW300 | STERLING EQUITIES | $ 800,000 | 0.49162% | |
| | Debra Wilpon | 1KW307 | DEBRA WILPON | $ 75,600 | 0.04646% | |
| | Edward M. Tepper | 1KW308 | EDWARD TEPPER JACQUELINE TEPPER ELISE TEPPER TIC | $ 363,170 | 0.22318% | 0.07439% |
| | Elise C. Tepper | | | | | 0.07439% |
| | Jacqueline G. Tepper | | | | | 0.07439% |
| | Sterling Thirty Venture LLC | 1KW314 | STERLING THIRTY VENTURE LLC B | $ 3,348,352 | 2.05765% | |
| | Sterling Thirty Venture LLC | 1KW315 | STERLING THIRTY VENTURE, LLC | $ 211,249 | 0.12982% | |
| | Marvin B. Tepper | 1KW322 | MARVIN B TEPPER DEFINED BENEFIT PLAN | $ 387,830 | 0.23833% | |
| | Brooklyn Baseball Company LLC | 1KW323 | BROOKLYN BASEBALL COMPANY | $ 329,354 | 0.20240% | |
| | BAS Aircraft LLC | 1KW325 | BAS AIRCRAFT LLC | $ 4,919 | 0.00302% | |
| | Fred Wilpon | 1KW329 | FRED WILPON SAUL B KATZ TIC TAX ESCROW | $ 970,109 | 0.59616% | 0.29808% |
| | Saul B. Katz | | | | | 0.29808% |
| | Edward M. Tepper | 1KW332 | EDWARD TEPPER | $ 206,346 | 0.12681% | |
| | Saul B. Katz | 1KW336 | SAUL B KATZ BRIAN HAHN JR TIC | $ 60,000 | 0.03687% | 0.03687% |
| | Amy Beth Katz | 1KW345 | GREG KATZ AMY KATZ JT TEN MICHAEL KATZ TIC | $ 86,700 | 0.05328% | 0.01243% |
| | Gregory Katz | | | | | 0.01243% |
| | Michael Katz | | | | | 0.02842% |
| | 157 J.E.S. LLC | 1KW348 | 157 J.E.S LLC | $ 389,682 | 0.23947% | |
| | Coney Island Baseball Holding Company LLC | 1KW349 | CONEY ISLAND BASEBALL HOLDING CO LLC | $ 29,426 | 0.01808% | |
| | Michael Katz | 1KW354 | MICHAEL KATZ-SEF | $ 108,243 | 0.06652% | |
| | Sterling 20 LLC | 1KW358 | STERLING 20 LLC | $ 181,023 | 0.11124% | |
| | Sterling Equities | 1KW359 | STERLING EQUITIES (GREENWOOD) C/O MATTHEW BERNSTEIN MS# NYC034091 | $ 38,499 | 0.02366% | |
| | Saul B. Katz | 1KW363 | SAUL B KATZ PAWLING REFINANCINC | $ 59,061 | 0.03629% | |
| | L. Thomas Osterman | 1KW365 | L THOMAS OSTERMAN TRACINC | $ 12,302 | 0.00756% | |
| | Marvin B. Tepper | 1KW366 | MARVIN B TEPPER TRACING | $ 27,007 | 0.01660% | |
| | Estate of Leonard Schreier | 1KW372 | ESTATE OF LEONARD J SCHREIER C/O SCHULTE ROTH & ZABEL KIM BAPTISTE ESQ | $ 263,836 | 0.16213% | |
| | Saul B. Katz | 1KW376 | VICKY SCHULTZ SAUL B KATZ TIC | $ 60,796 | 0.03736% | 0.03736% |
| | Sterling Mets LP | 1KW378 | STERLING METS (INSURANCE FUND) | $ 350,000 | 0.21508% | |
| | Arthur Friedman | 1KW388 | ARTHUR FRIEDMAN ET AL TIC | $ 45,153 | 0.02775% | 0.02775% |
| | Fred Wilpon | 1KW392 | FRED WILPON - APT TRACING | $ 10,495 | 0.00645% | |
| | Saul B. Katz Family Trust | 1KW407 | SAUL B KATZ FAMILY TRUST 2 C/O STERLING EQUITIES | $ 33,000 | 0.02028% | |

**Schedule 2**

**Summary of Six-Year Transfers from BLMIS to Defendants in Excess of Principal**
**April 13, 2012**

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 |
|---|---|---|---|---|---|
| Defendant(s) | BLMIS Acct # | BLMIS Account Name | Total by Account | Proportionate Share | Proportionate Share - JT/TIC Accounts |
| Fred Wilpon Family Trust | 1KW408 | FRED WILPON FAMILY TRUST 2 C/O STERLING EQUITIES | $ 159,778 | 0.09819% | |
| Arthur Friedman | 1KW412 | DAVID KATZ ET AL TIC | $ 13,244,256 | 8.13895% | 0.03988% |
| David Katz | | | | | 0.10011% |
| Estate of Leonard Schreier | | | | | 0.15627% |
| Fred Wilpon | | | | | 1.43815% |
| Fred Wilpon Family Trust | | | | | 1.73197% |
| Jeffrey Wilpon | | | | | 0.48834% |
| Katz 2002 Descendants' Trust | | | | | 0.24335% |
| L. Thomas Osterman | | | | | 0.16929% |
| Marvin B. Tepper | | | | | 0.33207% |
| Michael Katz | | | | | 0.23359% |
| Richard Wilpon | | | | | 0.31172% |
| Saul B. Katz | | | | | 0.97423% |
| Saul B. Katz Family Trust | | | | | 1.59523% |
| Wilpon 2002 Descendants' Trust | | | | | 0.32474% |
| Mets Limited Partnership | 1KW423 | METS LIMITED PARTNERSHIP SHEA STADIUM | $ 9,101,837 | 5.59333% | |
| Arthur Friedman | 1KW427 | SAUL B KATZ ET AL TIC | $ 5,690,849 | 3.497118% | 0.03487% |
| David Katz | | | | | 0.24047% |
| Elise C. Tepper | | | | | 0.05973% |
| Estate of Leonard Schreier | | | | | 0.04997% |
| Fred Wilpon | | | | | 0.38640% |
| Fred Wilpon Family Trust | | | | | 0.79480% |
| Gregory Katz | | | | | 0.02941% |
| Iris J. Katz and Saul B. Katz Family Foundation, Inc. | | | | | 0.22256% |
| Jeffrey Wilpon | | | | | 0.07558% |
| L. Thomas Osterman | | | | | 0.04942% |
| Marvin B. Tepper | | | | | 0.16930% |
| Michael Katz | | | | | 0.10135% |
| Red Valley Partners | | | | | 0.04371% |
| Richard Wilpon | | | | | 0.16636% |
| Saul B. Katz | | | | | 0.30044% |
| Saul B. Katz Family Trust | | | | | 0.79480% |
| FFB Aviation LLC | 1KW434 | FFB AVIATION LLC C/O STERLING EQUITIES | $ 112,975 | 0.06943% | |
| Sterling American Advisors II LP | 1KW436 | STERLING AMERICAN ADVISORS II LP | $ 177,415 | 0.10903% | |
| SEE Holdco LLC | 1KW449 | SEE HOLDCO LLC | $ 60,000 | 0.03687% | |
| Gregory Katz | 1KW453 | GREG KATZ (TR) C/O STERLING EQUITIES | $ 2,398 | 0.00147% | |
| | | | $ 162,726,768 | 100.00000% | |

## ASSIGNMENT OF DEFENDANT NET EQUITY CLAIMS

The undersigned, _____ (the "Assignor"), a party to the Settlement Agreement and Release (the "Settlement Agreement") approved by the District Court for the Southern District of New York on May __, 2012, which resolved *Picard v. Katz, et al.*, 11-CV-03605 (JSR) and which became effective on May __ 2012, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby absolutely, unconditionally and irrevocably transfer and assign, to Irving H. Picard, as trustee (the "Trustee") for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.*, of Bernard L. Madoff Investment Securities LLC ("BLMIS"), all right, title and interest in and to the Assignor's Defendant Net Equity Claim[s] (as such term is defined in the Settlement Agreement); provided that the Trustee's rights with respect to the Assignor's Defendant Net Equity Claims assigned hereby are set forth in the Settlement Agreement, the terms of which are incorporated herein by reference as if restated herein in full.

IN WITNESS WHEREOF, dated the __ day of April, 2012.

Assignor:                                          Trustee:

_____            _____