**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION                              Adv. Pro. No. 08-1789 (BRL)
CORPORATION,
                                                             SIPA LIQUIDATION
      Plaintiff,
                                                             (Substantively Consolidated)
   v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

      Defendant.
------------------------------------------------------------X
In re:

BERNARD L. MADOFF,

      Debtor.
------------------------------------------------------------X

APPEARANCES**:**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
By: David J. Sheehan
   Deborah H. Renner
   Tracy L. Cole
   Keith R. Murphy
   Marc Skapof
   Amy E. Vanderwal
   Matthew J. Moody
   George Klidonas

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

BEASLEY HAUSER KRAMER & GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939

BLACKNER, STONE & ASSOCIATES, P.A.
123 Australian Avenue
Palm Beach, Florida 33480
Telephone:    (561) 659-5754
Facsimile:    (561) 659-3184

HERRICK, FEINSTEIN LLP
Two Park Avenue
New York, New York 10016
Telephone:    (212) 592-1400
Facsimile:    (212) 592-1500
By:    Joshua J. Angel
       Frederick E. Schmidt, Jr.

*Attorneys for A & G Goldman Partnership and Pamela Goldman, individually and on behalf of a similarly situated class*

**BENCH MEMORANDUM DECISION AND ORDER DENYING MOTION OF PICOWER CLASS ACTION PLAINTIFFS FOR A DETERMINATION THAT THE COMMENCEMENT OF SECURITIES CLASS ACTION LAWSUITS AGAINST NON-DEBTOR PARTIES IS NOT PROHIBITED BY A PERMANENT INJUNCTION ISSUED BY THIS COURT OR VIOLATIVE OF THE AUTOMATIC STAY**

Before the Court are the motions of A & G Goldman Partnership ("A & G Goldman")[1] and Pamela Goldman[2] (together, the "Class Action Plaintiffs" or "Movants")[3], dated December 13, 2011 (the "Motions"). The Motions seek a determination that neither the injunction (the "Picower Injunction") issued by this Court as part of its order (the "Settlement Order"), dated January 13, 2011, nor the automatic stay provisions of section 362 of title 11 of the United States Code (the "Code"), bar, prohibit, restrict or prevent Class Action Plaintiffs from commencing

---

[1] *See* Motion of Picower Class Action Plaintiffs for a Determination that the Commencement of Securities Class Action Lawsuits Against Non-Debtor Parties is not Prohibited by a Permanent Injunction Issued by this Court or Violate of the Automatic Stay filed on behalf of A & G Goldman Partnership ("A & G Goldman Motion") (Dkt. No. 4580).

[2] *See* Motion of Picower Class Action Plaintiffs for a Determination that the Commencement of Securities Class Action Lawsuits Against Non-Debtor Parties is not Prohibited by a Permanent Injunction Issued by this Court or Violate of the Automatic Stay filed on behalf of Pamela Goldman ("Pamela Goldman Motion") (Dkt. No. 4581).

[3] A & G Goldman submitted a BLMIS customer claim, which was denied by the Trustee because A & G Goldman was a net winner that had withdrawn more funds than it deposited. Pamela Goldman submitted BLMIS customer claims, which the Trustee allowed and which have been fully satisfied through SIPC advances and an interim distribution from the fund of customer property.

2

and prosecuting a securities law class action (the "Class Action")[4] against the estate of Jeffry Picower and related defendants (the "Picower Defendants") in the United States District Court for the Southern District of Florida. For the reasons set forth below and at oral argument, the Motions are hereby DENIED.

## **BACKGROUND**[5]

On May 12, 2009, the Trustee filed a complaint (the "Complaint")[6] against the Picower Defendants alleging, *inter alia*, that they had received approximately $7.2 billion in withdrawals from BLMIS and knew or should have known that BLMIS was engaged in fraudulent activity. The Complaint sought recovery of the entire amount known at the time of filing to have been transferred from BLMIS to the Picower Defendants throughout the history of the Picower Defendants' accounts. Compl., ¶¶ 3, 4, 28, 57, 65-67.

In February 2010, Adele Fox ("Fox"), a BLMIS customer and creditor of the estate, brought putative class actions in federal court in Florida (the "Florida Actions") against the Picower Defendants. In that action, she was represented by Beasley Hauser Kramer & Galardi P.A., one of the firms which represents the Class Action Plaintiffs here as well. This Court enjoined the Florida Actions. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* ("*Fox I*"), 429 B.R. 423, 437 (Bankr. S.D.N.Y. 2010). Shortly thereafter, Fox appealed.

---

[4] A & G Goldman seeks to certify a class "who ha[s] not received and are not eligible to receive any payments directly or indirectly from SIPC or from the BLMIS estate on behalf of SIPC." *See* A & G Goldman Motion, Ex. A ("A & G Goldman Draft Compl."), ¶ 62. Pamela Goldman seeks certification of a class "who ha[s] not received sufficient payments directly or indirectly from SIPC or from the BLMIS estate on behalf of SIPC to cover the full amount of their losses." *See* Pamela Goldman Motion, Ex. A ("Pamela Goldman Draft Compl."), ¶ 62.

[5] For a detailed background of the mechanics of the Madoff Ponzi scheme and the events preceding the Trustee's complaints, see *SIPC v. BLMIS LLC (In re BLMIS)*, 424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010).

[6] Complaint against Jeffry M. Picower, individually and as trustee for the Picower Foundation, Barbara Picower, individually and trustee for the Trust FBO Gabrielle H. Picower and the Picower Foundation, Capital Growth Company, Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Company, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Co., Jeffry M. Picower, P.C., Decisions Incorporated, The Picower Foundation, The Picower Institute For Medical Research, The Trust FBO Gabrielle H. Picower (Adv. Pro. No. 09-01197) (Dkt. No. 1).

3

On December 17, 2010, the BLMIS Trustee entered into an agreement memorializing the Picower Settlement (the "Settlement Agreement"), which entailed the forfeiture and repayment of approximately $7.2 billion, of which $5 billion was to be paid to the BLMIS Trustee. This represented the return of 100 percent of the net withdrawals received by the Picower Defendants over the lifetime of their investments with BLMIS. In exchange, the Settlement Agreement provides for (i) the release of the Picower Defendants from all claims that the Trustee brought or could have brought against them in connection with BLMIS, as well as (ii) the prevention of putative plaintiffs filing lawsuits that are duplicative or derivative of the claims that the Picower Defendants settled. Specifically, the Settlement Agreement includes the Picower Injunction, which enjoins:

> [A]ny BLMIS customer or creditor of the BLMIS estate who filed or could have filed a claim, anyone acting on their behalf or in concert or participation with them, or anyone whose claim in any way arises from or relates to BLMIS or the Madoff Ponzi scheme, from asserting any claim against the Picower BLMIS Accounts (as identified on Attachment A to the Settlement Agreement) and the Picower Releasees (as identified on Attachment C to the Settlement Agreement) *that is duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee, against the Picower Defendants.*

Settlement Agreement, pp. 5-6 (emphasis added). In the Settlement Order, this Court approved the Settlement Agreement, which included the Picower Injunction. Fox appealed the Settlement Order as well.[7]

Less than three months ago, on March 26, 2012, the District Court upheld both *Fox I* and the Settlement Order. *See Picard v. Fox* ("*Fox II*"), No. 10-CIV-4652, 2012 WL 990829 (S.D.N.Y. Mar. 26, 2012). Specifically, Judge Koeltl looked past the nominal title of the movants' causes of action, which sounded in tort, in affirming this Court's finding that they were

---

[7] There were only three objectors to the Settlement Agreement, and only two—the appellants of *Fox I*—appealed the Settlement Order.

4

property of the estate, subject to both the automatic stay, as well as an injunction under Code section 105.  In so doing, the District Court emphasized that those causes of action were not substantively different than the Trustee's cause of action (the "New York Action") since they, *inter alia*, (i) were based on the same conduct as the Trustee's New York Action, (ii) did not derive from any duties owed by the Picower Defendants to the Florida Plaintiffs, and (iii) could have been asserted by any creditor of BLMIS.  The court also rejected the movants' arguments pertaining to the Trustee's purported lack of standing and the applicability of the Court of Appeals' 2008 opinion[8] in the long-running *Johns-Manville* case.

Despite this recent ruling directly on point, the Class Action Plaintiffs – two BLMIS *customers* who, like Fox and Marshall, filed *customer* claims – argue that the Court should not enjoin their "federal securities law claims" because they belong to *shareholders* and not the estate.  Furthermore, they contend that the Trustee lacks standing to bring those claims and this Court lacks jurisdiction to adjudicate them in light of *Johns-Manville*.  The Class Action Plaintiffs, however, have simply repeated, repackaged, and relabeled the wrongs alleged by the Trustee in an attempt to create independent claims where none exist.  In fact, they re-iterate allegations almost verbatim of not only the Trustee's Complaint, but also of the complaints their same counsel set forth in *Fox I*.  As such, the Court rejects the Plaintiffs' arguments and denies the Motion.

---

[8] *Travelers Casualty and Surety Co. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corporation)*. 517 F.3d 52 (2d Cir. 2008).

5

## DISCUSSION

"*It's déjà vu all over again.*"[9] The Class Action Plaintiffs are attempting to use inventive pleading to sidestep the automatic stay and the Picower Injunction. In affirming this Court's *Fox I* decision, Judge Koeltl warned against exactly this type of behavior:

> If potential creditors could bypass the automatic stay injunction by simply pleading around it, even when the substance of their claims—the wrongful acts pleaded, the relationships and duties between the actors, the nature of the damages suffered—was identical to the substance of an action already brought by a trustee, the bankruptcy laws' core purpose would be severely undermined, because some potential creditors could obtain payment of their claims in preference to and to the detriment of other creditors simply by styling their pleadings as sounding in tort.

*Fox II*, 2012 WL 990829, at *10 (internal quotation marks omitted). To prevent this, "a court must look to the body of the complaint, not to the plaintiff's designation or stated intention" in determining the nature of the wrong alleged. *Kramer v. W. Pac. Indus., Inc.* 546 A.2d 348, 352 (Del. 1988) (internal quotation marks omitted). Courts in this district therefore routinely "look[] past the nominal title of the cause of action pleaded in assessing whether or not a claim is in substance duplicative or derivative of a claim that is the property of the Trustee." *Fox II*, 2012 WL 990829, at *10 (citing *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 439 (S.D.N.Y. 1993), *aff'd,* 17 F.3d 600 (2d Cir. 1994)). Indeed, "[w]hile as a general matter a court should accept as true the allegations pleaded in a complaint at this stage in a case, that principle has limits." *Fox II*, 2012 WL 990829, at *10; *see also Matter of Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1187 (5th Cir. 1986) ("[T]he legislative intent underlying § 362[ ] should not be undermined by artful pleading that depends on form rather than substance." (citation and internal quotation marks omitted)).

---

[9] Lawrence Peter "Yogi" Berra, *available at* Yogi Berra Official Web Site, http://www.yogiberra.com/yogi-isms.html [last visited June 19, 2012].

1. **Identical Pleadings**

While titling their cause of action as a federal securities claim, the Class Action Plaintiffs' action is based on pleadings that are nearly identical to those of the Trustee. For example, both the Trustee and the Class Action Plaintiffs allege that: (i) BLMIS customers received monthly or quarterly statements that purported to show securities held in their accounts, but these statements and the transactions appearing thereon were almost completely fabricated, *compare* Pamela Goldman Draft Compl., ¶ 33, *and* A & G Goldman Draft Compl., ¶ 33, *with* Tr.'s Compl., ¶ 21; (ii) Picower directed BLMIS to create fraudulent trading records including backdated trades, *compare* Pamela Goldman Draft Compl., ¶ 49, *and* A & G Goldman Draft Compl., ¶ 49, *with* Tr.'s Compl., ¶ 4; and (iii) Picower, and not Madoff, was the largest beneficiary of Madoff's fraud, withdrawing more than $7.2 billion of other people's money, *compare* Pamela Goldman Draft Compl., ¶¶ 1, 46, 47, *and* A & G Goldman Draft Compl., ¶¶ 1, 46, 47, *with* Tr.'s Mem. of Law in Opp'n to Def.'s Partial Mot. To Dismiss at 2, (Adv. Pro. No. 09-01197) (Dkt. No. 11), p. 2.

Furthermore, it appears that not only have the Class Action Plaintiffs substantially parroted the Trustee's Complaint, they have also recycled their *own* pleadings: many of the allegations currently before the Court mimic those set out in the Fox[10] and Marshall[11] complaints, which this Court found to be duplicative of the Trustee's, a finding the District Court affirmed. For example, the Class Action Plaintiffs allege that Picower directed withdrawals from the Decisions, Inc. account in amounts more than $50 million several times a year, totaling approximately $6 billion; *compare* Pamela Goldman Draft Compl., ¶ 55, and A & G Goldman

---

[10] Affidavit in Support of The Trustee's Application For Temporary Restraining Order, Enforcement of Automatic Stay and Preliminary Injunction ("Trustee's Affidavit") (Adv. Pro. No. 10-03114) (Dkt. No. 3) Ex. F ("Fox Complaint").

[11] Trustee's Aff., Ex. G ("Marshall Complaint").

7

Compl., ¶ 55, *with* Fox Compl., ¶ 51, and Marshall Compl., ¶ 51; instructed BLMIS to backdate trades, which resulted in increases in certain accounts, *compare* Pamela Goldman Draft Compl., ¶ 58, and A & G Goldman Draft Compl., ¶ 58, *with* Fox Compl., ¶¶ 56-57, and Marshall Compl., ¶¶ 56-57; and generated paper profits, including annual returns greater than 100%, *compare* Pamela Goldman Draft Compl., ¶ 50, and A & G Goldman Draft Compl., ¶ 50, *with* Fox Compl., ¶ 43, and Marshall Compl., ¶ 43.[12]  In short, the "Plaintiffs' claims arise out of the same wrongs alleged in the Trustee's Complaint, committed by the same defendants, in connection with the same Ponzi scheme." *Fox I*, 429 B.R. at 435.

### 2. Common Harms / No Particularized Injury

The Class Action Plaintiffs argue that the Court should look past these common facts and focus on the differences between their allegations and the Trustee's with respect to the harms committed and damages alleged.  The Court declines to do so, as the Class Action Plaintiffs' claim is derivative of the Trustee's.  To assert an independent claim, "a creditor must have suffered an injury *significantly different* from the injuries to creditors in general." *Fox I*, 429 B.R. at 431 (internal quotation marks omitted) (emphasis added).  Indeed, the Second Circuit has specified, "[i]f a claim is a general one, with no *particularized injury* arising from it, and if that claim *could be brought by any creditor* of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989) (emphasis added); *see also In re Cabrini Med. Ctr.,* No. 09-14398, 2012 WL 2254386, at *7 (Bankr. S.D.N.Y. June 15, 2012)

---

[12] The extensiveness of the overlap among all of the abovementioned complaints is clearly set out in the attached Exhibit A, which the Trustee submitted with his opposition.  *See* Trustee's Opp'n to Motions of Class Action Plaintiffs to Proceed with their Proposed Class Actions (Dkt. No. 4797), Ex. A.  The Court has independently reviewed the Exhibit and finds it substantially reflects and links the cloning of the pleadings.

8

("[T]he injury cannot be a secondary effect from the harm done to the corporation." (citing *St. Paul*, 884 F.2d at 704) (internal quotation marks omitted)).

Plaintiffs' counsel unconvincingly attempts to plead a particularized injury by re-classifying actions relevant to all defendants under a different body of law and manufacturing a duty thereunder. Specifically, the Plaintiffs attempt to distinguish the actions of the Picower Defendants as against the Plaintiffs by creating a security[13] and concocting that Picower was a control person[14] at BLMIS who, therefore, owed a duty to the Plaintiffs under relevant securities law to prevent their purchasing fraudulent securities. In turn, the Plaintiffs argue their claims are not duplicative since (i) their injuries arose when they purchased securities worth less than the amount the Plaintiffs paid *to* BLMIS, while the Trustee pursued fraudulent transfers *from* BLMIS to the Picower Defendants, and (ii) this overpayment necessarily precedes BLMIS's payments to the Picower Defendants. These arguments, however, are unpersuasive. The Class Action Plaintiffs' claim is inadequately particularized, as the harms alleged are limited to "general direction and control and action to the detriment of all [BLMIS's] creditors." *Cabrini*, 2012 WL 2254386, at *8. Furthermore, all of these arguments, put the cart before the horse: but for the existence of the Ponzi scheme and the Picower Defendants' withdrawals therefrom, the Plaintiffs would not have "overpaid" in the first instance. Indeed, each of the Plaintiffs' arguments is based on a common harm: "the Picower defendants withdrawing funds from BLMIS to which they were not entitled . . . ." *Fox II*, 2012 WL 990829, at *9; *see also Fox I*,

---

[13] According to the Class Action Plaintiffs, "the commingled discretionary securities trading *account* created by BLMIS pursuant to which BLMIS obtained billions of dollars of customer monies *is, in fact, a separate security* issued by BLMIS." Reply in Support of Motion of Class Action Plaintiffs Determination that the Commencement of Securities Class Action Lawsuits Against Non-Debtor Parties is Not Prohibited by a Permanent Injunction Issued by this Court or Violative of the Automatic Stay ("Reply"), p. 7 (Dkt. No. 4813) (emphasis added).

[14] The Plaintiffs allege that "[t]he volume, pattern and practice of the Defendants' fraudulent withdrawals from BLMIS and their control over fraudulent documentation of underlying transactions at BLMIS establishes the Defendants' 'control person' liability under the federal securities laws." Draft A & G Partnership Compl., ¶ 41.

429 B.R. at 432 ("Whether sounding in bankruptcy, state law or common law, the claims asserted in the Florida Actions seek to redress a harm common to all BLMIS customer claimants and, consistent with the purposes of the automatic stay, belong exclusively to the Trustee."). Therefore, as was the case in the *Fox II* decision, "the very essence of the allegations against the Picower defendants is that they paid themselves out of assets that comprised other customers' accounts . . . ." *Id.* at *8 (noting that "like Picard's New York Action, [the Plaintiff's allegations] are based upon the same conduct by the Picower Defendants: involvement in the Madoff Ponzi scheme, and the transfer of billions of dollars in BLMIS-held customer funds to the Picower defendants").

### 3. Re-litigation of Net Equity Decision

Finally, this appears to be yet another attempt by the same counsel to re-litigate this Court's Net Equity Decision. *See SIPC v. BLMIS*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) *aff'd, In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011) (the "Net Equity Decision"); *see also Fox I*, 429 B.R. at 427 ("The Florida Plaintiffs are obviously disappointed at the economic impact on them from this Court's Net Equity decision."). Here the Plaintiffs emphasize that the damages they sustained "were the result of injuries that arose from their purchase of overvalued securities and are measured by the difference between the value of their BLMIS securities at the time of purchase [zero] and the price paid by each purchaser [the principal investment]." Reply, p. 2. Put differently, the Class Action Plaintiffs seek the repayment of their entire principal investments. Yet, the Net Equity Decision provides for the repayment of only net losses. An award of principal therefore would result in a windfall to not only the Class Action Plaintiffs, but also the classes they represent: net winners who are not entitled to any distributions and net losers who have already received disbursements from the

Trustee and SIPC would potentially receive amounts greater than those to which they are entitled.  *See Fox II*, 2012 WL 990829, at *14 (affirming this Court's application of the injunction under Code section 105 in part because "the Florida Actions, if successful, could result in distributions to BLMIS customers outside of the plan that was determined by the Net Equity Decision, and could result in inconsistent judgments"); *see also Fox I*, 429 B.R. at 436 ("As the Court presiding over the SIPA liquidation of BLMIS, this Court has sole jurisdiction over the administration and distribution of estate assets to customers.") (citing *Tennessee Student Assistance Corp. v. Hood,* 541 U.S. 440, 447 (2004)).

## CONCLUSION

For the foregoing reasons, the Motions are hereby DENIED.

**IT IS SO ORDERED.**

Dated: New York, New York  /s/ Burton R. Lifland
       June 20, 2012       United States Bankruptcy Judge

11