Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jessie Schweller
Email: jschweller@bakerlaw.com

Hearing Date: August 29, 2012
Hearing Time: 10:00 A.M.
Objection Deadline: August 22, 2012
Time: 4:00 P.M.

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**NINTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
OCTOBER 1, 2011 THROUGH JANUARY 31, 2012**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .................................................................. 1

II.   BACKGROUND ...................................................................................... 4

   A.    The SIPA Liquidation .................................................................. 4

   B.    The Trustee, Counsel, and Consultants........................................ 5

   C.    Prior Compensation Orders.......................................................... 5

III.  SUMMARY OF SERVICES .................................................................. 6

   A.    HARDSHIP PROGRAM .............................................................. 6

   B.    The Recovery and Return of Customer Property........................... 7

      i.    Recoveries Accomplished During This Compensation Period.................. 7

IV.   DETAILED DESCRIPTION OF SERVICES .......................................... 8

   A.    MATTER 01 .................................................................................. 9

      i.     Task Code 01: Trustee Investigation .................................... 9

      ii.    Task Code 02: Bankruptcy Court Litigation.......................... 10

      iii.   Task Code 03: Feeder Funds................................................. 13

      iv.    Task Code 04: Asset Research and Sale ............................... 14

      v.     Task Code 05: Internal Meetings with Staff ......................... 14

      vi.    Task Code 07: Billing & Trustee Reports.............................. 15

      vii.   Task Code 08: Case Administration ...................................... 15

      viii.  Task Code 09: Banks .......................................................... 16

      ix.    Task Code 10: Court Appearances ....................................... 17

      x.     Task Code 11: Press Inquiries and Responses....................... 17

      xi.    Task Code 12: Document Review ......................................... 17

      xii.   Task Code 13: Depositions and Document Productions by the
             Trustee............................................................................... 17

      xiii.  Task Code 14: International................................................... 19

      xiv.   Task Code 15: Charities....................................................... 19

      xv.    Task Code 19: Non-Bankruptcy Litigation............................ 20

      xvi.   Task Code 20: Governmental Agencies ................................ 20

      xvii.  Task Code 21: Allocation .................................................... 21

   B.    MATTER 03 – CHAIS ................................................................. 22

   C.    MATTER 04 – MERKIN .............................................................. 22

# TABLE OF CONTENTS

(continued)

**Page**

D.    MATTER 05 – CUSTOMER CLAIMS .................................................................. 23
      i.     Customer Claims ....................................................................... 23
      ii.    General Creditor Claims ......................................................... 24
      iii.   The Trustee Has Kept Customers Informed Of The Status Of The Claims Process .......................................................... 24

E.    MATTER 06 – VIZCAYA .................................................................................... 26

F.    MATTER 07 – MADOFF FAMILY ................................................................... 27

G.    MATTER 08 – NORMAN LEVY ...................................................................... 29

H.    MATTER 09 – FAIRFIELD GREENWICH ...................................................... 29

I.    MATTER 10 – HARLEY ................................................................................... 32

J.    MATTER 11 – COHMAD SECURITIES CORPORATION ............................. 33

K.    MATTER 12 – PICOWER .................................................................................. 33

L.    MATTER 13 – KINGATE .................................................................................. 35

M.    MATTER 18 – THYBO ...................................................................................... 36

N.    MATTER 19 – RUTH MADOFF ....................................................................... 37

O.    MATTER 21 – AVOIDANCE ACTION LITIGATION .................................... 37

P.    MATTER 26 – RICHARD STAHL .................................................................... 38

Q.    MATTER 27 – JP MORGAN CHASE ............................................................... 39

R.    MATTER 28 - WESTPORT ................................................................................ 39

S.    MATTER 29 – RYE/TREMONT ....................................................................... 40

T.    MATTER 30 – HSBC ......................................................................................... 41

U.    MATTER 31 – KATZ/WILPON ........................................................................ 43

V.    MATTER 32 – UBS/LIF .................................................................................... 45

W.    MATTER 33 – NOMURA BANK INTERNATIONAL PLC ............................ 46

X.    MATTER 34 - CITIBANK ................................................................................. 47

Y.    MATTER 35 - NATIXIS .................................................................................... 47

Z.    MATTER 36 – MERRILL LYNCH ................................................................... 48

AA.    MATTER 37 – ABN AMRO ............................................................................. 48

BB.    MATTER 38 – BANCO BILBAO ..................................................................... 49

CC.    MATTER 39 - FORTIS ...................................................................................... 50

DD.    MATTER 40 – MEDICI ENTERPRISE ............................................................ 50

# TABLE OF CONTENTS

(continued)

**Page**

EE.    MATTER 41 - WHITECHAPEL ................................................................... 51

FF.    MATTER 42 - EQUITY TRADING ............................................................... 52

GG.    MATTER 43 – DEFENDER ......................................................................... 52

HH.    MATTER 44 – MACCABEE ......................................................................... 53

II.    MATTER 45 – LEVEY ................................................................................ 54

JJ.    MATTER 46 – GLANTZ .............................................................................. 55

KK.    MATTER 47 – BONVENTRE ...................................................................... 56

LL.    MATTER 48 – BONGIORNO ...................................................................... 56

MM.    MATTER 49 – GREENBERGER ................................................................. 57

NN.    MATTER 50 – PITZ ................................................................................... 58

OO.    MATTER 51 – CRUPI ................................................................................ 58

PP.    MATTER 52 – DONALD FRIEDMAN ........................................................ 59

QQ.    MATTER 53 – MAGNIFY .......................................................................... 60

RR.    MATTER 54 – MENDELOW ...................................................................... 60

SS.    MATTER 55 – KUGEL ............................................................................... 61

TT.    MATTER 56 – LIPKIN ............................................................................... 62

UU.    MATTER 57 – PEREZ/O'HARA ................................................................ 62

VV.    MATTER 58 – PJ ADMINISTRATORS ...................................................... 63

WW.    MATTER 59 – STANLEY SHAPIRO .......................................................... 63

XX.    MATTER 60 – AVELLINO & BIENES ........................................................ 64

YY.    MATTER 61 – MAXAM ............................................................................. 65

ZZ.    MATTER 62 – SUBSEQUENT TRANSFERS .............................................. 66

V.    COMPENSATION REQUESTED ................................................................ 67

VI.    RELEASE OF THE HOLDBACK ............................................................... 71

VII.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ......... 71

VIII.    CONCLUSION ......................................................................................... 73

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the

"Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, the

"Debtor"), respectfully submits this ninth application (the "Application") on behalf of the

Trustee and itself for an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of

title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to section 78eee(b)(5)

of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and

Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly

Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126),

as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078 and 4125) (collectively,

the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation

for services performed by the Trustee and B&H for the period commencing October 1, 2011

through and including January 31, 2012 (the "Compensation Period"), (ii) reimbursement of the

Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period;

and (iii) release of $16 million of the holdback; and in support thereof, respectfully represents as

follows:

## I.    PRELIMINARY STATEMENT

1.     The work completed by the Trustee and B&H during this Compensation Period

yielded significant results for BLMIS customers and the liquidation.  As recognized by the

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

District Court, the Trustee "has worked relentlessly over nearly three years to bring assets that passed through [BLMIS] back into the customer fund, in order to restore nearly $20 billion in customer losses." *Picard v. J.P. Morgan Chase & Co.*, No. 11 Civ. 00913, 2011 WL 5170434, at *1 (S.D.N.Y. Nov. 1, 2011) (CM).  Through pre-litigation and other settlements, the Trustee has successfully recovered, or reached agreements to recover, more than $9.1 billion—over 50% of the principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.

2.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in section 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* section 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers.  Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel") and various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and Osborne & Osborne, P.A. (the "Osborne Firm"), and consultants, are paid out of administrative advances made by the Securities Investor Protection Corporation ("SIPC").  As this Court affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate."  Fifth App. Hr'g Tr. 32:15-17, Dec. 14, 2010.

2

3.      As the Trustee's and his Counsel's fees and expenses are chargeable to the general estate and not to the fund of customer property ("Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to Customer Fund for *pro rata* distribution to BLMIS customers whose claims have been allowed by the Trustee.

4.      In a liquidation proceeding such as this, where the general estate is insufficient to pay trustee compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration.  *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2). SIPC has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered.  Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding the billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein.  Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

5.      During the hearing on the Eighth Interim Fee Applications, this Court acknowledged the worldwide efforts of the Trustee and his counsel and approved the applications:

> Well, having heard the description and being well aware of the worldwide activities stared off by Bernie Madoff and the sequelae [sic] is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world. It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel herein the United States and counsel overseas.

Eighth App. Hr'g Tr. 16, Mar. 15, 2012.

6.      No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008.  Hundreds of thousands of hours have been

expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by initiating litigations and settlement negotiations for the return of customer property ("Customer Property"), including significant settlements, agreements to settle and recoveries that currently total more than $9.1 billion, to be distributed by the Trustee.  Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his pursuit of Customer Property.  The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

7.    As this Court has recognized, "With respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest most complex sets of litigation that have come down the pike.  It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm or any organization to deal with."  Sixth Fee App. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

8.    The Trustee and B&H's prior interim fee applications, each of which is fully incorporated herein,[2] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

---

[2] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); and June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676).

**B.    THE TRUSTEE, COUNSEL, AND CONSULTANTS**

9.    The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

10.    In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in legal areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

11.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach. The Trustee, with the assistance of his Counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities. To this end, the Trustee has engaged not only the services of Counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent, FTI Consulting ("FTI"), and several investigative and industry consultants (collectively referred to herein as the "Consultants").

**C.    PRIOR COMPENSATION ORDERS**

12.    The Trustee and B&H filed applications for interim allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and the Bankruptcy Court approved those applications:

| Applications | Orders Entered |
|---|---|
| First Applications (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363) |
| Second Applications (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Applications (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471) |
| Eighth Application (ECF No. 4676) | March 19, 2012 (ECF No. 4735) |

## III.    SUMMARY OF SERVICES

13.     A SIPA proceeding contemplates the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.  Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

## A.    HARDSHIP PROGRAM

14.     The Trustee and B&H implemented a Hardship Program in an effort to accelerate SIPA protection for BLMIS victims suffering hardship.  The first phase of this program is more fully described in prior interim fee applications.

15.     The Trustee expanded the Hardship Program into a second phase as he instituted avoidance actions.  While the Trustee's authority includes the pursuit of avoidance actions to recover Customer Property, the Trustee has not pursued avoidance actions against BLMIS accountholders suffering proven hardship.  In November 2010, the Trustee announced that to forego an avoidance action, the accountholder must submit financial and other pertinent information.  Through this program, the Trustee has worked with a substantial number of applicants to confirm their hardship status and forego the pursuit of an avoidance action.

16.     As of January 31, 2012, the Trustee had received 476 applications from avoidance action defendants relating to 303 adversary proceedings.   After reviewing the facts and circumstances presented in each application and, in many cases, the requested additional verification information, the Trustee dismissed, or was in the process of dismissing, 158 avoidance actions.  As of January 31, 2012, many of the applications were in various stages of review.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their hardship applications are pending.

17.     The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of this hotline, and the Trustee urges customers to continue to use this resource and the Hardship Program if they believe they qualify.  Further information and applications are available on the Trustee's website, www.madofftrustee.com.

**B.     THE RECOVERY AND RETURN OF CUSTOMER PROPERTY**

  **i.     <u>Recoveries Accomplished During This Compensation Period</u>**

18.     Without the need for protracted litigation, during this Compensation Period, the Trustee succeeded in settling 18 cases for approximately $390 million.  Currently, the Trustee has successfully recovered or reached agreements to recover more than $9.1 billion.

19.     The Trustee entered into settlements during and subsequent to this Compensation Period that will bring approximately $586 million into the Customer Fund.

20.     The Trustee is also engaged in ongoing settlement negotiations with a number of parties that could result in additional recoveries for the benefit of customers without the delay and expense of litigation.

21.     Through the end of this Compensation Period, the Trustee recovered approximately $316.7 million as a result of preference and other settlements that were made

pursuant to agreements subject to the Net Equity Dispute.  The United States Supreme Court recently declined to review the Net Equity Dispute and, with this ruling, the Trustee has moved forward with the next distribution of Customer Property to BLMIS customers.

## IV.    DETAILED DESCRIPTION OF SERVICES

22.    Given the unprecedented fraud perpetrated by Madoff, the issues involved are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his Counsel for the benefit of the victims. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during this Compensation Period, organized according to internal B&H matter numbers and task codes.

23.    Matter Number 01 is the general matter number used for tasks that affect all actions taken by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

24.    Matter Numbers 03-62 (with the exception of Matter Number 05, which relates to customer claims) relate to specific litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.[3]  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks related to the individual actions: conduct legal research; draft internal memoranda; engage in internal meetings with the Trustee's Consultants regarding investigation and litigation strategy; and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during this Compensation Period.

---

[3]  Reserved and closed matter numbers will not be listed in this Application.  Matter numbers reserved or closed during prior compensation periods can be found in the respective interim fee applications.

A.    **MATTER 01**

25.    This matter categorizes the time spent by the Trustee and B&H, and encompasses the below enumerated tasks.

i.    **Task Code 01: Trustee Investigation**

26.    This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

27.    The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

28.    During this Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.  B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff friends and family members, former BLMIS employees, and other Madoff-related parties, as well as continued the investigation of Madoff Securities International Limited ("MSIL").

29.    B&H attorneys coordinated efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), the Federal Bureau of Investigation ("FBI"), the the SEC, the Government Accountability Office ("GAO"), the United States Department of Justice ("DOJ"), and other local, federal, and international officials involved in the investigation of Madoff and BLMIS.

30.    In addition, B&H attorneys reviewed copies of records obtained by the FBI and the SEC, and other information from the USAO and securities regulators.  B&H attorneys also

9

communicated with SIPC, Windels Marx, Young Conaway, AlixPartners, FTI, and other consultants regarding IA accounts and records of the transactions, business investments, and ventures between potential insiders and BLMIS, Madoff, and Madoff family members.

31.    B&H attorneys discussed and conferenced with SIPC, Windels Marx, Young Conaway, International Counsel, and various government entities regarding investigation and litigation strategy, prepared requests for discovery and negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third party inquiries and subpoenas.

**ii.    Task Code 02: Bankruptcy Court Litigation**

32.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

33.    On February 18, 2010, this Court approved a pre-litigation settlement between the Trustee and the Estate of Norman F. Levy.  (ECF No. 1964).  This settlement resulted in the return of $220 million (the "Levy Settlement").  One year later, on February 18, 2011, certain customers moved to set aside the Court's Order approving the Levy Settlement.  (ECF No. 3861).  This Court denied the motion (ECF No. 3984), and the claimants filed an appeal on April 11, 2011.  (ECF No. 4005).

34.    On February 16, 2012, United States District Judge Deborah A. Batts issued a Memorandum and Order affirming this Court's order of March 30, 2011.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, No. 11 Civ. 03313, 2012 U.S. Dist. LEXIS 21740 (S.D.N.Y. Feb. 16, 2012) (DAB).  The District Court found that bankruptcy courts need not conduct a "mini-trial" of all the facts underlying settlement disputes and are entitled to rely upon the opinions of the trustee, the parties, and their attorneys.  *Id.* at *12.  Thus, the District Court

held that this Court did not abuse its discretion in denying the motion to vacate the settlement. *Id.* at \*7. The claimants subsequently appealed Judge Batts's decision to the Second Circuit. *See Peshkin v. Levy-Church*, No. 12-816 (2d Cir.). Briefing is currently scheduled through fall 2012. Because an appeal was taken from the District Court's order, the $220 million must remain in reserve and cannot be distributed to BLMIS customers until the appeal is finally resolved.

35.    On December 21, 2011, a $326 million settlement between the Trustee and the United States of America, on behalf of the Internal Revenue Service, was approved by this Court. (ECF No. 4602). One limited objection was filed by Pasifin Co. Inc., which will be addressed in the resolution of the Pasifin objection to the Trustee's determination of Pasifin's claim. (ECF No. 4597). The Trustee determined that BLMIS debited the accounts of 145 foreign account holders for alleged U.S. federal income tax withholding and paid to the IRS such withheld amounts related to alleged dividends. However, because no securities were purchased and thus no dividends were ever received by BLMIS, no amounts should have been withheld and transferred to the IRS. After receipt of the settlement payment, the specific accounts at issue were credited for the amounts transferred from 2002—2008. If eligible, a pro rata distribution was made to those accounts from the Customer Fund in accordance with the Trustee's First Allocation Motion and this Court's corresponding Order.

36.    During this Compensation Period, the Trustee and B&H attorneys researched case law and drafted briefing in opposition to appeals of the decision regarding the definition of "customer" under SIPA, entered by this Court on June 28, 2011. These appeals were assigned to United States District Judge Denise L. Cote. *See* No. 11 Civ. 05683 (S.D.N.Y.) (DLC). On

January 4, 2012, Judge Cote affirmed the June 28, 2011 order of this Court. *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 2011 U.S. Dist. LEXIS 150753 (S.D.N.Y. Jan. 4, 2012).

37.     On January 6, 2012, four appeals were taken from Judge Cote's decision to the United States Court of Appeals for the Second Circuit. *See Bricklayers and Allied Craftsman Local 2 Annuity Fund, et al. v. Sec. Inv. Prot. Corp., Irving H. Picard*, No. 12-410; *Sec. Inv. Prot. Corp., Irving H. Picard v Rosamilia, et al.*, No. 12- 437; *Sec. Investor Prot. Corp., Irving H. Picard v. Kruse, et al.*, No. 12-483; and *Upstate New York Bakery Drivers and Industry Pension Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-529 (2d Cir.). Briefing is currently scheduled to extend through Fall 2012.

38.     On October 5, 2011, the Trustee moved before this Court for an order establishing a briefing schedule and hearing to affirm the claims determinations with respect to, and adjudicate the objections of, ERISA claimants. (ECF No. 4432). The Bankruptcy Court entered a scheduling order on November 8, 2011. (ECF No. 4507).

39.     On November 14, 2011, the Trustee filed his Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections (ECF No. 4521) (the "ERISA Motion"). On or about January 17, 2012, approximately eighteen opposition briefs to the ERISA Motion were filed on behalf of various ERISA claimants. (ECF Nos. 4625-4628, 4631-4633, 4635, 4637-4643, 4652-4654). During the Compensation Period, the Trustee and B&H attorneys analyzed the filed objections and prepared to file a brief in support of the Trustee's motion. During the pendency of the above briefing, certain ERISA claimants also filed motions to withdraw the reference on the ERISA Motion from this Court to the District Court. On February 28, 2012 and March 1, 2012, these motions were accepted as related to the appeals decided by Judge Cote in *Aozora Bank*, 2011 U.S. Dist. LEXIS 150753 (S.D.N.Y. Jan. 4, 2011),

discussed above, and were re-assigned to her Honor.  Judge Cote withdrew the reference on April 20, 2012.

### iii.    **Task Code 03: Feeder Funds**

40.    As a result of the investigative efforts of the Trustee, litigation was initiated against feeder funds and certain individuals, many of whom are well known to the public through the press and other media.

41.    The Trustee, through Counsel, has spent considerable time prosecuting 1,031 pending actions seeking to recover over $101 billion in funds from various feeders funds, banks, BLMIS customers, and Madoff family members and friends.

42.    On October 4, 2011, a $43.5 million settlement between the Trustee and Mount Capital Fund, Ltd., a British Virgin Islands company in liquidation, and Mount Capital Asset Subsidiary Limited, a British Virgin Islands company in liquidation (collectively, "Mount Capital"), was approved by this Court.  *Picard v. Mount Capital Fund LTD, et al.*; Adv. Pro. No. 10-05123 (Bankr. S.D.N.Y.) (BRL).  (ECF No. 17).  Under the settlement, Mount Capital paid $43.5 Million to the Trustee.  Mount Capital received an allowed customer claim in the SIPA proceeding in the amount of $294,860,547.82 and received a SIPC customer advance under SIPA § 78fff-(a).

43.    On December 15, 2011 Defendants Plaza Investments International Limited and Notz Stucki Management (Bermuda) Limited filed a motion to dismiss the Trustee's complaint against them.  B&H attorneys and opposing counsel entered into a stipulation on January 31, 2012 adjourning the remaining briefing schedule due to the fact that many of the legal arguments contained in the motion to dismiss are currently pending before Judge Rakoff in the United States District Court for the Southern District of New York.

44.     The Trustee and his Counsel identify, investigate, and monitor feeder funds in the U.S. and abroad, and bring actions against such funds for the recovery of Customer Property. Separate matter numbers have been assigned to feeder funds sued by the Trustee.

### iv.     Task Code 04: Asset Research and Sale

45.     This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

46.     During this Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with Andrew Madoff's interest in Blow Styling Salon LLC and monitored the sale of the same.

47.     The Trustee and B&H attorneys inventoried the furniture and furnishings of the 17th Floor of the Lipstick Building and prepared a Notice of Abandonment.

48.     The Trustee and B&H attorneys monitored the sale and liquidation of NSX Holdings, an entity in which BLMIS was a significant shareholder.

49.     The Trustee and B&H attorneys monitored the closing of Surge Trading, and analyzed the impact of certain FINRA-related issues.

50.     The Trustee and B&H attorneys continued to work on valuing the intellectual property interest in Primex and strategized as to its sale.

### v.     Task Code 05: Internal Meetings with Staff

51.     This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

vi.    **Task Code 07: Billing & Trustee Reports**

52.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing trustee reports, and other related tasks.

vii.    **Task Code 08: Case Administration**

53.    This category relates to time spent assisting the efficient administration of the case.

54.    The Trustee has also filed several motions before this Court that will govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures will ensure consistency and transparency, as well as compliance with the Bankruptcy Code and SIPA.

55.    On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to steam line the procedures aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  The Court entered the Order on December 5, 2011.  (ECF No. 4560)

56.    On October 28, 2011, the Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  Thereafter, on January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012.  (ECF No. 4483).

57.     During this Compensation Period, the Trustee and B&H attorneys conducted conflict checks.

58.     The Trustee and B&H attorneys implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents.

59.     The Trustee and B&H attorneys created protocols relating to discovery, filings, and external communications.

60.     The Trustee and B&H attorneys implemented and managed work flows between B&H and Consultants.

61.     The Trustee and B&H attorneys oversaw administrative aspects of the retention of experts, other professionals, and vendors, and monitored their ongoing activities.

62.     The Trustee and B&H attorneys calendared and docketed all hearings, return dates, and deadlines in the main liquidation proceeding and all other litigations.

63.     The Trustee and B&H attorneys monitored and tracked dockets of related proceedings.

64.     The Trustee and B&H attorneys managed and monitored staffing needs.

**viii.    Task Code 09: Banks**

65.     Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

### ix.   Task Code 10: Court Appearances[4]

66.    This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### x.   Task Code 11: Press Inquiries and Responses

67.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### xi.   Task Code 12: Document Review

68.    This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

### xii.   Task Code 13: Depositions and Document Productions by the Trustee

69.    This category relates to time spent by the Trustee and B&H attorneys conducting depositions and preparing and responding to discovery requests issued in the ongoing litigations and by various third parties.

70.    On August 5, 2011, the Trustee and B&H moved for a Report and Recommendation to the District Court for the Appointment of Special Discovery Masters (the "Masters").  (ECF No. 4290).  The Trustee sought an expansion of access to Data Room 1 for all adversarial proceeding defendants, the creation of Data Room 2 for documents produced by third

---

[4] Many attorneys making court appearances bill their time for appearances to either Task Code 02 – Bankruptcy Court Litigation, or to the matter number that relates to that specific litigation, rather than to Task Code 10.

parties, and the appointment of two Masters to assist in resolving the numerous discovery disputes currently and potentially arising in the adversary proceedings.  A hearing on the motion was held on December 21, 2011.  At the hearing, the Judge requested that the Trustee bifurcate the requested relief into separate motions, resolve any outstanding objections, and re-submit the papers.  On January 4, 2012, the Trustee filed a motion on presentment to expand access to Data Room 1 to all defendants.  (ECF No. 4613).  That motion was granted on January 12, 2012. (ECF No. 4624).

71.    During this Compensation Period, the Trustee and B&H attorneys prepared, reviewed, finalized, and served subpoenas.

72.    The Trustee and B&H attorneys monitored subpoenas issued and documents produced in response, and followed up regarding deficient document productions.

73.    The Trustee and B&H attorneys prepared, reviewed, finalized, and served initial disclosures, case management plans, and motions for filing with the Bankruptcy Court to implement case-wide discovery procedures.

74.    The Trustee and B&H attorneys prepared, reviewed, finalized, and served discovery requests.

75.    The Trustee and B&H attorneys processed, uploaded, and analyzed incoming document productions.

76.    The Trustee and B&H attorneys responded to discovery requests served on the Trustee by defendants and third parties.

77.    The Trustee and B&H attorneys addressed the issue of de-designating confidential documents for production.

78.    The Trustee and B&H attorneys analyzed, tracked, and processed BLMIS data.

79.     The Trustee and B&H attorneys coordinated with the Trustee's expert witnesses to prepare for trial.

80.     The Trustee and B&H attorneys researched foreign jurisdiction discovery laws.

81.     The Trustee and B&H attorneys oversaw work performed by the Trustee's vendors.

### xiii.    Task Code 14: International

82.     The fraud Madoff perpetrated through BLMIS has many international implications, involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Gibraltar, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland.  These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.  This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions.  The investigation is made challenging by the broad array of anti-discovery laws, bank secrecy statutes, and other foreign legislation designed to limit discovery.  In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third party actions brought in Europe and the Caribbean.

### xiv.    Task Code 15: Charities

83.     This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the

representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

### xv.     Task Code 19: Non-Bankruptcy Litigation

84.     This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation, as well as time spent on *Picard v. Canavan*, Adv. Pro. No. 10-3200 (Bankr. S.D.N.Y.) (BRL), an adversary proceeding commenced by the Trustee against three BLMIS claimants and the related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay, and a Preliminary Injunction.  During the last compensation period, B&H attorneys adjourned the pre-trial conference in *Canavan* and the hearing on the preliminary injunction and cross motion, which is currently scheduled to be held on January 10, 2013.  In addition, the Trustee and B&H attorneys spent time investigating an action purportedly commenced against the Trustee in Marin County Superior Court as well as litigation in Delaware Bankruptcy Court where BLMIS was named as a defendant.

### xvi.     Task Code 20: Governmental Agencies

85.     This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the Office of the United States Attorney for the Southern District of New York, the Internal Revenue Service, various congressional Representatives, and other government agencies.

86.     In addition, the Trustee and B&H attorneys have spent considerable time cooperating with the GAO and responding to the GAO's requests for information.

### xvii.     Task Code 21: Allocation

87.     This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property after the Court granted the First Allocation Motion.

88.     The ultimate purpose of protecting and recovering the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

89.     On May 4, 2011, the Trustee sought entry of an order approving an initial allocation of property to the Customer Fund, and authorizing an interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the filing date exceeded the statutory SIPA protection limit of $500,000 (the "First Allocation Motion").  The Allocation Motion was unopposed, and the Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers on July 12, 2011.

90.     On October 5, 2011, the Trustee distributed to BLMIS customers approximately $325 million—more than the amount initially approved by the Court—relating to 1,232 BLMIS accounts.  Thirty-nine payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been previously satisfied.

91.     The Trustee and B&H attorneys responded to customer inquiries, coordinated the allocation of settlement recoveries accomplished after the Court granted the First Allocation Motion to the fund of Customer Property, established the payor bank account and transferred funds thereto, and engaged in other related activities to effectuate the distribution of approximately $325 million on October 5, 2011.

92.     On July 26, 2012, the Trustee filed a motion for a second allocation and second interim distribution, which will be the subject of future fee applications.

## B.     MATTER 03 – CHAIS

93.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Chais, Pamela Chais, and a number of related entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA,

the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants. *Picard v. Stanley Chais, et al.*, Adv. Pro. No. 09-01172 (Bankr. S.D.N.Y.) (BRL).

94.     In addition to the tasks outlined above, during this Compensation period, B&H attorneys met and conferred with defense counsel regarding discovery and other issues. B&H attorneys drafted discovery requests. On January 4, 2012, B&H attorneys filed an application with the Bankruptcy Court to enforce the automatic stay and enjoin certain state court actions brought by investors of Stanley Chais in California and by the California Attorney General.

## C.     MATTER 04 – MERKIN

95.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel Capital Corporation (together, the "Merkin Funds"), and J. Ezra Merkin (collectively, the "Merkin Defendants") seeking the return of more than $557 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin, et al.*, Adv. Pro. No. 09-01182 (Bankr. S.D.N.Y.) (BRL). With leave of the Court, the Trustee filed a second amended complaint on December 23, 2009 asserting Merkin's personal liability for obligations of the partnerships.

96.     In addition to the tasks outlined above, during this Compensation period, B&H attorneys continued to monitor arbitrations and related lawsuits seeking to confirm arbitration judgments. After a pretrial conference in November 2011, the court issued an order in December 2011 requiring defendants to produce various transcripts from various arbitrations in which they

participated.  The team also prepared for and conducted four depositions of defendants' employees and third party witnesses, and continued to review and catalogue additional documents obtained from defendants and third parties.

## D.    MATTER 05 – CUSTOMER CLAIMS

### i.    Customer Claims

97.    During the Compensation Period, the Trustee allowed $332,770,547.82 in customer claims.  This brings the total amount of allowed claims as of January 31, 2012 to $7,293,561,610.12.  The Trustee has paid or committed to pay approximately $798.4 million in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and exceeds the total aggregate payments made in all SIPA liquidations to date.

98.    During the Compensation Period, the Trustee reduced claims by approximately $5,339,110.52.

99.    As of January 31, 2012, there were 247 claims relating to 194 accounts that are "deemed determined," meaning that the Trustee has instituted litigation against those accountholders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under section 502(d) of the Bankruptcy Code.  Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.  Of the 16,519 claims received by the Trustee, only two remain undetermined and are under review by the Trustee and Counsel.

### ii.    General Creditor Claims

100.    As of January 31, 2012, the Trustee had received 427 timely and 21 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately

$1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 448 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $264.9 million. At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

101.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website, www.madofftrustee.com, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

102.    The Trustee Website includes features that allow the Trustee to share more information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website now includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQ's page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis. Public response to the upgrades performed on the Trustee Website has been positive. Monthly visits nearly tripled at the end of the first quarter in 2012, compared to the end of the fourth quarter of 2011, and the number of hits and repeat visitors to the Trustee Website have both more than doubled in the same period.

103.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of January 31, 2012, the Trustee and his professionals had received and responded to more than 6,181 e-mails from BLMIS customers and their representatives via the Trustee Website.

104.    The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of January 31, 2012, the Trustee, B&H, and the Trustee's professionals had fielded more than 7,615 hotline calls from claimants and their representatives.

105.    The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

106.    The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed Hardship Applications, and communicated regularly with the Trustee, SIPC, and AlixPartners regarding the review and determination of Hardship applicants.

107.    The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

108.    The Trustee and B&H attorneys communicated regularly with SIPC and AlixPartners regarding the customer claims review process, the customer claims database, reconciliation of IA accounts, and other matters of interest in determining claims.

E.    **MATTER 06 – VIZCAYA**

109.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Limited ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and

other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants. *Picard v. Vizcaya Partners Limited, et al.*, Adv. Pro. No. 09-01154 (Bankr. S.D.N.Y.) (BRL). The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers.

110.    During this Compensation Period, B&H attorneys coordinated service of a protective action to preserve the Trustee's right to sue the Vizcaya Defendants, Asphalia, Zeus, Siam, Banque J. Safra (Suisse) SA, and Pictet et Cie in Gibraltar for $180 million in transfers received from BLMIS.

## F.    MATTER 07 – MADOFF FAMILY

111.    This matter encompasses time spent by B&H attorneys pursuing numerous avoidance actions against members of the Madoff family. On October 2, 2009, the Trustee filed a Complaint against Peter B. Madoff, Andrew H. Madoff, the late Mark D. Madoff, and Shana D. Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. Pro. No. 09-01503 (Bankr. S.D.N.Y.) (BRL). On March 15, 2010, each of the defendants separately moved this Court to dismiss the Trustee's complaint. On September 22, 2011, this Court denied in part and granted in part the motions to dismiss. (ECF No. 55). Defendant Andrew Madoff, individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave to seek interlocutory review of the Bankruptcy Court's September 22, 2011 decision. Following briefing and oral argument, the District Court denied that motion on December 22, 2011. (ECF No. 74).

112.   In accordance with the Bankruptcy Court's September 22, 2011 decision, on November 7, 2011, the Trustee filed an Amended Complaint against the Family Defendants, identifying additional transfers to seek the return of over $225 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants.  Shana Madoff, Peter Madoff, and Andrew Madoff, both on his own behalf and as executor of the estate of Mark D. Madoff, each answered the Amended Complaint on January 17, 2012.

113.   On December 23, 2011, the Trustee filed a motion seeking leave to file a Second Amended Complaint, adding additional claims and defendants to the action against the Family Defendants.  On April 4, 2012, following briefing and oral argument, the Bankruptcy Court issued a Written Opinion denying in part and granting in part the Trustee's motion (ECF No. 106).

114.   The Trustee commenced two adversary proceedings against members of Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff.  *Picard v. Stephanie S. Mack*, Adv. Pro. No. 10-05328 (Bankr. S.D.N.Y.) (BRL); *Picard v. Deborah Madoff*, Adv. Pro. No. 10-05332 (Bankr. S.D.N.Y.) (BRL).  Amended Complaints were filed in these actions on February 7, 2012.  All defendants in both actions answered on March 23, 2012.  Deborah Madoff also moved to withdraw the reference from the Bankruptcy Court on April 2, 2012.  That motion is currently pending before the District Court. The pre-trial conferences in these cases are scheduled for August 22, 2012.

115.   The Trustee commenced two adversary proceedings against foundations created by and named for Andrew and the late Mark Madoff, and their spouses: *Picard v. Mark &*

*Stephanie Madoff Foundation*, Adv. Pro. No. 10-05325 (Bankr. S.D.N.Y.) (BRL); and *Picard v.*

*The Deborah and Andrew Madoff Foundation*, Adv. Pro. No. 10-05330 (Bankr. S.D.N.Y.)

(BRL).  The defendants in these cases have answered, and the pre-trial conferences are scheduled

for August 22, 2012.

116.    Finally, the Trustee instituted various proceedings against relatives of Bernard

Madoff beyond his immediate family to recover preferences and fraudulent conveyances.

Currently, the Trustee's cases styled *Picard v. Wiener Family Limited Partnership*, Adv. Pro.

No. 10-04323 (Bankr. S.D.N.Y.), *Picard v. NTC & Co. LLP*, Adv. Pro. No. 10-04293 (Bankr.

S.D.N.Y.), and *Picard v. Schaum & Wiener Profit Sharing Plan & Trust FBO Martin Schaum*,

Adv. Pro. No. 10-04329 (Bankr. S.D.N.Y.) remain pending.

## G.    MATTER 08 – NORMAN LEVY

117.    In January 2010, the Trustee reached a $220 million settlement agreement (the

"Norman Levy Settlement") with Jeanne Levy-Church and Francis N. Levy (collectively, the

"Levys") to settle the Trustee's potential litigation claims against them regarding certain

accounts held by the Levys and their family members.  This Court approved the Norman Levy

Settlement by Order on February 18, 2010.  Exactly one year later, certain BLMIS claimants

moved pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to set aside the Norman

Levy Settlement.  The Court denied the motion on March 30, 2011, and the claimants appealed

to the District Court.

118.    During this Compensation Period, B&H attorneys drafted an opposition to the

appeal of the Levy Settlement.   No. 11 Civ. 3313 (S.D.N.Y.) (DAB).   The order of the

Bankruptcy Court was affirmed by the District Court on February 16, 2012.  No. 11 Civ. 3313

(S.D.N.Y.) (DAB) (ECF No. 22).

119.    After the end of the Compensation Period, the claimants appealed the District Court's February 16, 2012 order.  No. 12-816 (2d Cir.)  This matter is currently pending before the Second Circuit Court of Appeals.  Briefing will extend through Fall 2012.

## H.    MATTER 09 – FAIRFIELD GREENWICH

120.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited (collectively the "Fairfield Funds"), Greenwich Sentry Limited, L.P., Greenwich Sentry Partners, L.P. (collectively, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds.  *Picard v. Fairfield Sentry Limited (In Liquidation), et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (BRL).  This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

121.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds").  *Picard v. Fairfield Sentry et al.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y.) (BRL) (ECF No. 95).  On July 13, 2011, the Court entered consent judgments between the Trustee and Fairfield Lambda Limited in the amount of $52.9 million (ECF No. 108), Fairfield Sentry Limited in the amount of $3.054 billion (ECF No. 109), and Fairfield Sigma Limited in the amount of $752.3 million (ECF No. 110).

One objection was filed by plaintiffs in a derivative action allegedly on behalf of Fairfield Sentry Limited, which was overruled by this Court on June 7, 2011. (ECF. No. 92).

122.    Under the terms of this settlement, Fairfield Sentry Limited agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidator for the Fairfield Funds agreed to make a $70 million payment to the Customer Fund. To date, the Fairfield Sentry Joint Liquidators have paid $24 million, of which $16 million was in cash and the $8 million balance was an offset against funds owed by the Trustee to Fairfield Sentry. The Joint Liquidator also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners; the Trustee retained his own claims against the management defendants. Further, the Trustee and the Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims. On or about July 8, 2011, Fairfield Sentry transferred $16 million to the Trustee, and the Trustee allowed Fairfield Sentry's claim of $78 million. When the remaining $46 million is paid, the Trustee will increase the allowed claim by $152 million to $230 million.

123.    On July 7, 2011, this Court approved a settlement between the Trustee, Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P. (collectively, the "Greenwich Funds"), wherein this Court entered judgment against Greenwich Sentry, L.P. in an amount over $206 million and against Greenwich Sentry Partners, L.P. in an amount over $5.9 million. *Picard v. Fairfield Sentry et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (BRL) (ECF No. 107). Three objections were filed to the proposed settlement agreement, but were subsequently withdrawn prior to this Court's July 7, 2011 Order. In this settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the

Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management, and agreed to share with the Trustee any recoveries they receive against service providers.

124.    To implement this settlement agreement, the Court was required to confirm the plan in the jointly administered Chapter 11 proceeding of Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P.  *In re Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P.*, Adv. Pro. No. 10-16229 (Bankr. S.D.N.Y.) (BRL).    The plan confirmation hearing was held on December 22, 2011.  The plan was confirmed subject to the resolution of issues unrelated to the settlement with the Trustee.  Those matters have been resolved.  The effective date of the plan was February 24, 2012.  With the settlement becoming effective, claims against the Fairfield Greenwich Group management have been assigned to the Trustee, Greenwich Sentry, and Greenwich Sentry Partners, and the BLMIS customer claims have been allowed in the amount of $35,000,000.00 and $2,011,304.00, respectively.

125.    The Trustee engaged in settlement negotiations with the remaining defendants in the Fairfield Sentry matter and entered into a stipulation setting a new schedule for the remaining defendants to respond to the Amended Complaint.

## I.    MATTER 10 – HARLEY

126.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Harley International (Cayman) Limited ("Harley") seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Harley.  *Picard v. Harley International (Cayman) Limited*, Adv. Pro. No. 09-01187 (Bankr. S.D.N.Y.) (BRL). Harley is in liquidation in the Cayman Islands.

31

127.    In addition to the tasks outlined above, during this Compensation Period, the Trustee and B&H attorneys continued to pursue collection on the summary and default judgments entered against Harley by this Court on November 10, 2010, including preparing complaints against subsequent transferees of the Harley transfers from BLMIS.

## J.    MATTER 11 – COHMAD SECURITIES CORPORATION

128.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), the principals, certain employees of Cohmad, and their family members who held BLMIS IA accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants.  *Picard v. Cohmad Securities Corporation, et al.*, Adv. Pro. No. 09-01305 (Bankr. S.D.N.Y.) (BRL).

129.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued to move forward with discovery, both propounding demands and responding to the demands of various defendants.

## K.    MATTER 12 – PICOWER

130.    This matter categorizes time spent by the Trustee and B&H attorneys in connection with the Trustee's litigation and settlement with Jeffry M. Picower ("Picower") and Barbara Picower, both individually and as trustees for various foundations, and related entities (collectively, the "Picower Defendants").  The Trustee's lawsuit sought recovery of nearly $7 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the Picower Defendants. *Picard v. Picower*, Adv. Pro. No. 09-01197 (Bankr. S.D.N.Y.) (BRL). Ultimately, the Trustee and the United States Attorney's Office for the Southern District of New York reached a settlement with the Picower Defendants. On January 13, 2011, this Court entered an Order approving the settlement entered into between the Trustee and Barbara Picower, as the executor of the estate of Mr. Picower, and on behalf of other Picower Defendants, in which Ms. Picower agreed to transfer $5 billion to the BLMIS estate for distribution by the Trustee in accordance with SIPA. Ms. Picower also entered into an agreement with the U.S. Attorney's office to forfeit $7.2 billion—$5 billion of which comprised her settlement with the Trustee, as well as an additional $2.2 billion—all of which will ultimately be distributed to Madoff victims (the "Settlement Order") (ECF No. 43).

131.    Fox, together with Susanne Stone Marshall ("Marshall"), appealed the Settlement Order. (ECF Nos. 45, 49). Fox and Marshall had previously brought putative class actions against the Picower Defendants in Florida that were enjoined by this Court in an order issued in May 2010 (the "Injunction Order") on the grounds, *inter alia*, that Fox and Marshall's claims against the Picower Defendants were derivative and duplicative of the Trustee's claims. Fox and Marshall both appealed to the District Court, and in December 2011, after preparing and filing papers in opposition, counsel for the Trustee argued the appeal before the Honorable John G. Koeltl of the United States District Court. On March 26, 2012, Judge Koeltl issued an Opinion and Order affirming the Settlement Order and the Injunction Order. *In re Bernard L. Madoff*, 2012 WL 990829 (S.D.N.Y. Mar. 26, 2012). Thereafter, counsel for Fox and Marshall again filed notices of appeal, this time to the Second Circuit, on or around April 24, 2012. *See In re Bernard L. Madoff*, Nos. 10-4652 (ECF No. 47) (S.D.N.Y.), 11-1298 (ECF No. 19) (S.D.N.Y.),

and 11-1328 (ECF No. 17) (S.D.N.Y.).  These appeals are currently pending and are subject to further briefing.

132.    The Forfeited Funds were released from escrow to the Trustee upon the entry of the final, nonappealable order of forfeiture and were included in the Trustee's motion for a second allocation and second interim distribution.

## L.    MATTER 13 – KINGATE

133.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the "Kingate Funds") seeking the return of approximately $875 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kingate Funds.  On June 8, 2011, B&H attorneys prepared, filed, and served a third amended complaint, which added a number of additional foreign defendants, significantly expanding the case.  *Picard v. Federico Ceretti, et al.*, Adv. Pro. No. 09-01161 (Bankr. S.D.N.Y.) (BRL).

134.    The Kingate Funds are currently in liquidation proceedings in the BVI and one of the foreign defendants, Kingate Management Limited, is currently in liquidation proceedings in Bermuda.

135.    The Kingate Funds and all other defendants have filed motions or joinders to the motions in the District Court to withdraw the reference from the Bankruptcy Court.  The motions have been fully briefed.

136.    B&H attorneys negotiated settlement terms with the liquidators for the Kingate Funds that were subject to the sale of the SIPA claims.  Subsequently, the Kingate Funds brought suit against Deutsche Bank Securities Inc. in connection with their attempts to fund the

settlement. *Kingate Global Fund Ltd. v. Deutsche Bank Securities Inc.*, No. 11 Civ. 9364 (DB) (S.D.N.Y.).

137.    In addition to the tasks outlined above, the Trustee has extended the defendants' time to respond to the third amended complaint while awaiting a determination from the District Court with respect to the motions to withdraw the reference.  The Trustee and B&H attorneys continued to monitor third party actions filed against the Kingate Defendants and the liquidation proceedings with respect to Kingate Management Limited.  The Trustee also recently intervened in an administrative action filed by certain of the foreign defendants in the BVI relating to litigation funding.  The Trustee's intervention was resolved by consent agreement limiting the use of defendants' funds for litigation purposes to an amount certain.

## M.    MATTER 18 – THYBO

138.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Thybo Asset Management Limited, Thybo Global Fund Limited, Thybo Return Fund Limited, and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return of approximately $62 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants.  On February 10, 2011, the Trustee filed an amended complaint objecting to Thybo Stable Fund's $217 million customer claim. *Picard v. Thybo Asset Management Limited, et al.*, Adv. Pro. No. 09-01365 (Bankr. S.D.N.Y.) (BRL).

139.    As with each of the matters in litigation, the Trustee and B&H attorneys conducted the tasks outlined above during this Compensation Period.  On December 2, 2011, B&H attorneys filed a supplemental memorandum of law in opposition to the Thybo Defendants' pending motion to dismiss.  Also during this Compensation Period, a stipulation

was entered setting a briefing schedule to address the Thybo Defendants' motion to withdraw the reference from the Bankruptcy Court.

## N.      MATTER 19 – RUTH MADOFF

140.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Ruth Madoff seeking the return of approximately $44 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Mrs. Madoff. *Picard v. Ruth Madoff*, Adv. Pro. No. 09-01391 (Bankr. S.D.N.Y.) (BRL).

141.    In addition to the tasks outlined above, during this Compensation Period, the Trustee and B&H attorneys continued to grant Mrs. Madoff extensions of time to respond to the complaint.

## O.      MATTER 21 – AVOIDANCE ACTION LITIGATION

142.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee; coordinating service of process; preparing preservation letters and discovery requests and reviewing produced documents; communicating formally and informally with counsel for various defendants; reviewing Hardship Program applications; drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences; conducting settlement negotiations and settling with various defendants; engaging in mediation with certain defendants; developing legal strategies and witnesses that will be relevant to all actions; implementing internal processes to track and manage the avoidance actions; and researching various issues relating to and raised in such avoidance actions.

143.     B&H attorneys also spent a substantial amount of time during this Compensation Period opposing motions to withdraw the bankruptcy reference.  As of January 31, 2012, certain defendants to the Trustee's avoidance actions filed one hundred and fifty two motions to withdraw the reference.  B&H attorneys participated in numerous chambers conferences to establish briefing schedules; prepared, filed, and served eleven opposition briefs; reviewed and addressed particular issues raised in ten reply briefs; and prepared for six oral arguments before the district court.  As of January 31, 2012, the Honorable Jed S. Rakoff issued at least two memorandum orders to withdraw the bankruptcy reference in a total of six actions on October 13, 2011 and November 28, 2011.

## P.     MATTER 26 – RICHARD STAHL

144.     This matter categorizes time spent by the Trustee and B&H attorneys on the adversary proceeding commenced by the Trustee against Richard Stahl, Reed Abend, and other third party plaintiffs (collectively, the "Stahl Plaintiffs"), and the Trustee's related Application for Enforcement of the Automatic Stay and a Preliminary Injunction (the "Stahl Application") of actions brought by the Stahl Plaintiffs against members of the Madoff family against whom the Trustee has also brought suit.  *Picard v. Stahl, et al.*, Adv. Pro. No. 10-03268 (Bankr. S.D.N.Y.) (BRL).

145.     In a prior compensation period, the Bankruptcy Court entered an order granting the Stahl Application ("Stahl Order").  Thereafter, several of the Stahl Plaintiffs appealed to the District Court.  During the current Compensation Period, the Trustee and B&H attorneys completed briefings for the appeals pending before the District Court, and on November 17, 2011, counsel for the Trustee argued at a hearing before the Honorable Judge Alvin K. Hellerstein in connection with the Stahl Plaintiffs' appeals. Following argument, Judge Hellerstein affirmed the Stahl Order from the bench (and thereafter entered an order on the

record in the Trustee's favor).  *See* Case Nos. 11 Civ. 02135, 11 Civ. 02246, and 11 Civ. 02392

(S.D.N.Y.) (AKH).   The Stahl Plaintiffs then appealed the District Court's decision to the

Second Circuit Court of Appeals under Case Nos. 11-5421 and 11-5428.    During this

Compensation Period, B&H attorneys prepared designations to the joint appendix for the Circuit

Court appeals and entered into stipulated orders modifying the briefing schedule.  These appeals

remain active and subject to additional briefing.

### Q.      MATTER 27 – JP MORGAN CHASE

146.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC,

and J.P. Morgan Securities Ltd. (collectively, "JPMorgan") seeking the return of approximately

$19 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and

other applicable law for preferences, fraudulent conveyances, and damages in connection with

certain transfers of property by BLMIS to or for the benefit of JPMorgan Chase.  *Picard v.

JPMorgan Chase & Co., et al.*, Adv. Pro. No. 10-04932 (Bankr. S.D.N.Y.) (BRL).

147.    In addition to the tasks outlined above, during this Compensation Period, B&H

attorneys prepared an appeal of the District Court's decision dismissing the Trustee's common

law claims against JPMC.  *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011).

The appeal has been fully briefed and is now pending before the Second Circuit.  The parties

stipulated to a stay of discovery pending the appeal.

### R.      MATTER 28 - WESTPORT

148.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division

of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. seeking the return of

approximately $28 million under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Silverman, WNB, and PSCC Services, Inc.  *Picard v. Robert L. Silverman, et al.*, Adv. Pro. No. 10-05418 (Bankr. S.D.N.Y.) (BRL).

149.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys consented to extensions of time by which WNB must respond to the complaint to September 14, 2012 and adjourned the pre-trial conference to September 20, 2012.  In furtherance of the Trustee's claims against Silverman, WNB, and PSCC Services, Inc., B&H attorneys continued to review and analyze documents obtained through pre-litigation discovery and informal discovery.  B&H attorneys also continued to monitor Silverman's individual chapter 11 bankruptcy case pending in the Bankruptcy Court for the District of Connecticut, analyzed issues concerning the dischargeability of Silverman's debt, and prepared motions to extend the time to object to the dischargeability of those debts.

## S.    MATTER 29 – RYE/TREMONT

150.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Limited, Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Funds") seeking the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Defendants.  *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.) (BRL).

151.    In addition, on December 21, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a

former chief executive associated with Tremont Group Holdings, Inc. (collectively, "Tremont")

in the amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. Pro. No. 10-

05310 (Bankr. S.D.N.Y.) (BRL) (ECF No. 38). In this settlement, Tremont agreed to deliver

$1.025 billion into an escrow account, which will ultimately be placed into the Customer Fund.

Upon the release of the settlement payments from the escrow account, the Trustee will allow

certain customer claims related to Tremont. Two objections to the settlement agreement were

filed by non-BLMIS customers, both of which were overruled by this Court. This Court entered

an Order Granting Trustee's Motion for Entry of Order Approving Agreement (ECF No. 38).

152. Certain objectors filed an appeal of the Tremont settlement on September 30,

2011. *See Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment

Securities LLC v. Tremont Group Holdings, Inc., et al.*, No. 11 Civ. 7330 (S.D.N.Y.) (GBD)

(ECF No. 1). Thereafter, Tremont filed a motion to dismiss the appeal, which was subsequently

joined by motions filed by the Trustee and parties subject to the settlement. (ECF Nos. 4, 6, 8,

12, and 14). The non-BLMIS customers who commenced the appeal opposed the dismissal.

(ECF Nos. 15, 16). On June 27, 2012, Judge George B. Daniels of the District Court granted the

motion to dismiss the appeal, and judgment was entered on June 28. (ECF Nos. 35, 36).

## T.    MATTER 30 – HSBC

153. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven

other HSBC-entities (collectively, the "HSBC Defendants"), UniCredit S.p.A. and Pioneer

Alternative Investment Management Limited (together, "UCG/PIA"), dozens of feeder funds,

and individuals seeking the return of approximately $8.8 billion under SIPA, the Bankruptcy

Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences,

fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS

to or for the benefit of the HSBC Defendants.  *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (BRL).

154.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys extended the time for certain defendants to respond to the amended complaint and coordinated service of process on numerous international defendants.  B&H attorneys prepared an opposition to the motions to dismiss filed by the thirteen HSBC-related defendants and, separately, by UCG/PIA on May 3, 2011 in the District Court.  No. 11 Civ. 763 and No. 11 Civ. 836 (S.D.N.Y.) (JSR).  The District Court granted the motion on July 28, 2011, dismissing the Trustee's common law claims.  *Picard v. HSBC Bank plc*, 454 B.R. 25, 37-38 (S.D.N.Y. 2011).  During this Compensation Period, B&H attorneys briefed the appeal, filing both their principal and reply briefs. Oral argument has not yet occurred and the appeal remains pending before the Second Circuit.

155.    During this Compensation Period, B&H attorneys also opposed motions to dismiss for lack of personal jurisdiction filed by various defendants that acted as service providers to the Alpha Prime fund and the Senator fund.  After those motions were opposed, these defendants, Regulus, Carruba, Tereo and Alpha Prime Asset Management, all agreed to engage in jurisdictional discovery prior to the Court ruling on their motions.  Jurisdictional discovery is underway and the motion to dismiss remains sub judice.

156.    Finally, during this Compensation Period, the Trustee moved to stay proceedings pending in the Cayman Islands against the Primeo Fund.  That motion was not granted.  The proceedings against the Primeo Fund continue to move forward, with the first set of hearings on preliminary issues scheduled for October 2012.

## U.     MATTER 31 – KATZ/WILPON

157.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Saul B. Katz, in his individual capacity and as trustee of the Katz 2002 Descendants' Trust, Fred Wilpon, in his individual capacity, as trustee of the Wilpon 2002 Descendants' Trust, and as co-executor of the Estate of Leonard Schreier, and dozens of other entities and individuals (collectively, the "Sterling Defendants") seeking the return of approximately $1 billion in fraudulent transfers—which includes approximately $300 million in fictitious profits and $700 million in principal—under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Sterling Defendants. *Picard v. Katz et al.*, Adv. Pro No. 10-05287 (Bankr. S.D.N.Y.) (BRL).  On September 27, 2011, the District Court dismissed the Trustee's claims based on constructive fraud under the Bankruptcy Code, actual and constructive fraud under the New York Debtor & Creditor Law, and for recovery of subsequent transfers pursuant to § 550 of the Code, holding that the "safe harbor" affirmative defense set forth in Bankruptcy Code § 546(e) is a bar—at the pleading stage—to those claims. *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. Sept. 27, 2011).  This decision reduced the Trustee's claims in the Katz-Wilpon Action from approximately $1 billion to less than $400 million.  In addition, in connection with the Trustee's fraudulent conveyance claims, the decision articulated a new heightened subjective standard of "willful blindness" that appears to be akin to a "conscious avoidance" standard derived from the criminal law context.  Finally, the Court held as a matter of law that Bankruptcy Code § 502(d) is "overridden" in a SIPA proceeding by SIPA §78fff-2(c)(3).

158.    During this Compensation Period, B&H attorneys prepared a Motion requesting the District Court to direct entry of final judgment under Federal Rule of Civil Procedure 54(b)

on Counts Two through Ten of the Amended Complaint and to certify to the Court of Appeals under 28 U.S.C. § 1292(b) an interlocutory appeal of the Court's rulings concerning "willful blindness" with respect to the Trustee's remaining claims, which was filed on October 9, 2011. On January 17, 2012, the Court denied the Trustee's motion to direct entry of final judgment. B&H attorneys also prepared briefing on the proper calculation of the Katz-Wilpon Defendants' avoidance liability and the Trustee's right to a jury followed; the Court granted the Trustee's request for a jury trial on November 23, 2011.

159.    Preparation for trial, scheduled to commence March 19, 2012, continued during this compensation period. B&H attorneys engaged in discovery from September 28, 2011 to January 13, 2012. During the discovery period, counsel for the Trustee issued requests for production to the Katz-Wilpon Defendants and twenty-six third parties for documents, receiving and reviewing a total of over 130,000 documents. During the discovery period, the Katz-Wilpon Defendants produced 75,000 documents and third parties produced 55,000 documents, which were reviewed by the B&H attorneys during this Compensation Period. The parties also conducted twenty-four depositions, including eight depositions of Katz-Wilpon Defendants or their affiliates, four depositions of expert witnesses and twelve depositions of third-party witnesses.

160.    During the Compensation Period, B&H attorneys coordinated the preparation of five expert reports for Steve Pomerantz, Bruce Dubinsky, Harrison J. Goldin, Lisa Collura and Matthew Greenblatt, all of which were provided to the Katz-Wilpon Defendants on November 22, 2011. On January 26, 2012, the Katz-Wilpon Defendants moved to exclude expert witnesses Harrison J. Goldin and Steve Pomerantz. That same day, the Trustee moved to exclude the Katz-

Wilpon Defendants' expert witness John Maine.  B&H attorneys also prepared opposition briefs to the Katz-Wilpon Defendants' motions to exclude during this Compensation Period.

161.    On January 26, 2012, the Katz-Wilpon Defendants filed a Motion for Summary Judgment on the Trustee's remaining claims to which the B&H attorneys prepared a response, and the Trustee filed a Motion for Partial Summary Judgment with respect to fictitious profits.

162.    Although it did not occur within this Compensation Period, the parties entered a final settlement agreement on April 13, 2012 that was ultimately approved by Judge Rakoff on May 31, 2012.

## V.    MATTER 32 – UBS/LIF

163.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy and common law claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants.  *Picard v. UBS AG, et al.*, Adv. Pro. No. 10-04285 (Bankr. S.D.N.Y.) (BRL).

164.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued to coordinate service of process on the international defendants and to review produced documents.  On August 1, 2011, the UBS Defendants moved to dismiss the complaint.  No. 11 Civ. 04212 (S.D.N.Y.) (CM).  On November 1, 2011, the District Court dismissed the common law claims, consistent with the JPMC decision.  *See Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011).  B&H attorneys prepared a brief to appeal this decision, which was filed in the Second Circuit on February 16, 2012.

165.    In addition, this matter incorporates work related to an action brought in Luxembourg by the Luxembourg liquidators of Luxalpha against Access Group, UBS, and the directors of LuxAlpha.  On May 12, 2010, three of the defendants named in the Luxembourg action, Patrick Littaye, Pierre Delandmeter, and Access Management Luxembourg, named the Trustee as a third party defendant in this action.  During this Compensation Period, B&H attorneys monitored the Luxembourg action against the Trustee and worked on preparing an application to enjoin this action, which was filed on April 19, 2012.

166.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund and Landmark Investment Fund Ireland (together, the "LIF Defendants"), UBS entities, and other defendants seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS.  *Picard v. UBS AG, et al.*, Adv. Pro. No. 10-05311 (Bankr. S.D.N.Y.) (BRL).

167.    During this Compensation Period, B&H attorneys granted the defendants several extensions to respond to the complaint.  B&H attorneys also negotiated a tolling agreement and dismissal of defendant Guillermo Morenés Maritategui, which was made effective on December 7, 2011.

## W.    MATTER 33 – NOMURA BANK INTERNATIONAL PLC

168.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura Bank International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of

Nomura.  *Picard v. Nomura Bank International plc*, Adv. Pro. No. 10-05348 (Bankr. S.D.N.Y.) (BRL).

169.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys granted Nomura two extensions of time to respond to the complaint.

## X.    MATTER 34 - CITIBANK

170.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Citibank.  *Picard v. Citibank, N.A., et al.*, Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y.) (BRL).

171.    During this Compensation Period, B&H attorneys and Citibank counsel agreed to a new schedule to respond to the Defendants' Motion to Dismiss.  On November 1, 2011, Citibank filed a Motion to Withdraw the Reference from the Bankruptcy Court.  B&H attorneys prepared and filed a response to the Citibank Motion to Withdraw the Reference.

## Y.    MATTER 35 - NATIXIS

172.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/n/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Limited (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of

property by BLMIS to or for the benefit of the Natixis Defendants. *Picard v. Natixis, et al.*, Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y.) (BRL).

173.    During this Compensation Period, B&H attorneys and the defendants entered into a stipulation setting a new schedule for the briefing on the Natixis Defendants' Motion to Dismiss. On December 20, 2011, the Natixis Defendants filed a Motion to Withdraw the Reference from the Bankruptcy Court. B&H attorneys began preparing a response to the Motion to Withdraw the Reference.

## Z.    MATTER 36 – MERRILL LYNCH

174.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International & Co. C.V. ("Merrill Lynch") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Merrill Lynch. *Picard v. Merrill Lynch International*, Adv. Pro. No. 10-05346 (Bankr. S.D.N.Y.) (BRL).

175.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys and Merrill Lynch stipulated to a schedule for Merrill Lynch to respond to the Complaint and rescheduled the pre-trial conference.

## AA.    MATTER 37 – ABN AMRO

176.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) and ABN AMRO Incorporated (together, "ABN"), and Rye Select Broad Market XL Fund, LP and Rye Select Broad Market XL Portfolio Limited (together, "Tremont XL Funds") seeking the return of approximately $671 million under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of ABN and the Tremont XL Funds. *Picard v. ABN AMRO Bank, N.A. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. Pro. No. 10-05354 (Bankr. S.D.N.Y.) (BRL).

177. During this Compensation Period, the Trustee and B&H attorneys began responding to ABN's Motion to Withdraw the Reference from the Bankruptcy Court.

178. During this Compensation Period, B&H attorneys engaged in settlement negotiations with Rye Select Broad Market XL Portfolio, which resulted in a settlement that was executed following the conclusion of the Compensation Period. Rye Select Broad Market XL Portfolio's Motion to Withdraw the Reference was stayed pursuant to the steps necessary to effectuate the settlement with the Trustee.

## BB.    MATTER 38 – BANCO BILBAO

179. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of approximately $45 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of BBVA. *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. Pro. No. 10-05351 (Bankr. S.D.N.Y.) (BRL).

180. In addition to the tasks outlined above, during this Compensation Period, on October 27, 2011, BBVA filed a Motion to Withdraw the Reference to the Bankruptcy Court. B&H attorneys began the process of responding to the Motion to Withdraw the Reference. In addition, B&H attorneys and BBVA entered into a stipulation rescheduling the briefing and hearing on BBVA's Motion to Dismiss the Complaint.

## CC.    MATTER 39 - FORTIS

181.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/n/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited (collectively, the "Fortis Defendants") seeking the return of approximately $267 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants.  *Picard v. ABN AMRO Retained Custodial Services (Ireland) Limited, et al.*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y.) (BRL).

182.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys drafted and filed responses to the Motions to Withdraw the Reference to the Bankruptcy Court filed by the Fortis Defendants and Rye Select Broad Market XL.  In addition, B&H attorneys negotiated a settlement with defendant Rye Select Broad Market XL Portfolio subject to approval of the Grand Court of the Cayman Islands in the Rye Select Broad Market XL Portfolio liquidation proceeding.  As a result of the pending settlement, briefing on the Rye Select Broad Market XL Portfolio Motion to Withdraw the Reference was stayed.

## DD.    MATTER 40 – MEDICI ENTERPRISE

183.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and civil action against Sonja Kohn, Unicredit S.p.A. ("UniCredit"), and numerous other financial institutions, entities, and individuals (collectively, the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18

U.S.C. §§ 1961, *et seq.*, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants. *Picard v. Sonja Kohn, et al.*, Adv. Pro. No. 10-05411 (Bankr. S.D.N.Y.) (BRL). This matter also covers work performed by B&H on the English matter *MSIL v. Raven*. The liquidator of MSIL, with the assistance of B&H was able to obtain a worldwide freeze against Sonja Kohn and certain of her entities in the amount of approximately £28 million.

184. In addition to the tasks outlined above, during this Compensation Period, B&H, on behalf of the Trustee, joined the Austrian criminal proceedings against Sonja Kohn, Bank Medici, and Bank Austria as a victim. The Trustee also assisted English counsel in drafting arguments to allow the free flow of information relating to Sonja Kohn's disclosure order. B&H also continued investigating Sonja Kohn and her co-conspirators throughout Europe.

## EE.    MATTER 41 - WHITECHAPEL

185. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Whitechapel Management Limited and Granadilla Holdings Limited (together, the "Whitechapel Defendants") seeking the return of approximately $10 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Whitechapel Defendants. *Picard v. Whitechapel Management Limited, et al.*, Adv. Pro. No. 10-05402 (Bankr. S.D.N.Y.) (BRL).

186. In addition to the tasks outlined above, during this Compensation Period, B&H attorneys, through local counsel, obtained a disclosure order in the BVI seeking documents from the registered agent for Granadilla Holdings Limited and reviewed the documents produced as a result of that disclosure order. The pre-trial conference is scheduled for August 22, 2012.

## FF.    MATTER 42 - EQUITY TRADING

187.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Limited, and BNP Paribas Arbitrage (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants. *Picard v. Equity Trading Portfolio Limited, et al.*, Adv. Pro. No. 10-04457 (Bankr. S.D.N.Y.) (BRL).

188.    The Equity Trading Defendants have filed motions or joinders to the motions in the District Court to withdraw the reference from the Bankruptcy Court. The District Court has included the motions in its orders for consolidated subject matter briefing and oral argument issued in May 2012.

189.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys and the Equity Trading Defendants negotiated and entered into a stipulation whereby the Equity Trading Defendants accepted service of process, the Trustee was given the right to file an amended complaint, and a briefing schedule was established. The pre-trial conference is scheduled for August 22, 2012.

## GG.    MATTER 43 – DEFENDER

190.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Defender Limited, Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, Reliance International Research LLC, Tim Brockmann, and Justin Lowe (collectively, the "Defender Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants.  *Picard v. Defender Limited, et al.*, Adv. Pro. No. 10-05229 (Bankr. S.D.N.Y.) (BRL).

191.    The Defender Defendants have filed motions in the District Court to withdraw the reference from the Bankruptcy Court.  The District Court has included the motions in its orders for consolidated subject matter briefing and oral argument issued in May 2012.

192.    Defendants Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann have filed motions in the bankruptcy court to dismiss for lack of personal jurisdiction.

193.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys negotiated with the Defender Defendants to establish a briefing schedule for the motions to dismiss and extensions of time to respond to the amended complaint.  The pre-trial conference is scheduled for December 19, 2012.

## HH.    MATTER 44 – MACCABEE

194.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, John Greenberger Maccabee, individually and as trustee of the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, Sherry Morse Maccabee, individually and as trustee of the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust (collectively, the "Maccabee Defendants") seeking the return of approximately $1.5 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maccabee Defendants.  *Picard v. John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, et al.*, Adv. Pro. No. 10-05407 (Bankr. S.D.N.Y.) (BRL).

195.    In addition to the tasks outlined above, during this Compensation Period, the Maccabee Defendants moved to withdraw the bankruptcy reference, No. 11 Civ. 04937 (S.D.N.Y.) (JSR), and B&H attorneys prepared an opposition to the motion.

## II.    MATTER 45 – LEVEY

196.    This matter reflects time invested by the Trustee and B&H attorneys pursuing four avoidance actions in which Joel Levey is a named defendant (collectively, the "Levey Actions").  The Levey Actions are as follows:  *Picard v. Joel Levey*, Adv. Pro. No. 10-04282 (Bankr. S.D.N.Y.) (BRL); *Picard v. Aaron Levey Revocable Living Trust, et al*., Adv. Pro. No. 10-04894 (Bankr. S.D.N.Y.) (BRL); *Picard v. Aaron Levey Revocable Living Trust*, *et al*., Adv. Pro. No. 10-05441 (Bankr. S.D.N.Y.) (BRL); and *Picard v. Frances Levey Revocable Living Trust, et al*., Adv. Pro. No. 10-05430 (Bankr. S.D.N.Y.) (BRL).

197.    Together with Joel Levey, the other named defendants in the Levey Actions are as follows: Aaron Levey Revocable Living Trust; Frances Levey Revocable Living Trust; Wendy Kapner Revocable Trust; Wendy Kapner; Sandra Moore; and James Kapner (collectively, the "Levey Defendants").  The individual Levey Defendants were named in their various capacities, including as grantor, trustee, and/or beneficiary.  The Levey Actions seek an aggregate recovery of approximately $6.8 million under SIPA, the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable law for the recovery of avoidable transfers and damages related to transfers made by BLMIS to or for the benefit of the Levey Defendants.

198.    During this Compensation Period, B&H attorneys communicated with counsel to the Levey Defendants regarding a global settlement of the Levey Actions.  B&H attorneys continued reviewing and analyzing initial disclosures and interrogatories served on the Trustee by the Levey Defendants and began drafting responses to the interrogatories.  B&H attorneys drafted interrogatories and served them on the Levey Defendants.  B&H attorneys began drafting

document requests to be served on the Levey Defendants and initial disclosures to be served on

Joel Levey. B&H attorneys reviewed documents and the deposition testimony of Joel Levey,

and analyzed the possibility of naming additional subsequent transferee defendants in certain of

the Levey Actions.

## JJ.    MATTER 46 – GLANTZ

199.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Richard M. Glantz, Elaine Ostrin, Jerald Ostrin, Scott Ostrin, Raleigh

Dow Buckmaster, Sr., Barbara Buckmaster, Raleigh Dow Buckmaster, Jr., Drew Buckmaster,

Owen Buckmaster, Joellen Buckmaster, Mirza Inayat Khan, Zia Inayat Khan, and numerous

trusts and entities (collectively, the "Glantz Defendants") seeking the return of more than $113

million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

applicable law for fraudulent conveyances and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Glantz Defendants. *Picard v. Richard M. Glantz,*

*et al.*, Adv. Pro. No. 10-05394 (Bankr. S.D.N.Y.) (BRL).

200.    In addition to the tasks outlined above, during this Compensation Period, B&H

attorneys have continued to grant the Glantz Defendants additional time to respond to the

complaint. B&H attorneys engaged in settlement discussions and reviewed Hardship Program

applications and related materials on behalf of several defendants. B&H attorneys entered into

stipulations dismissing the action against four defendants based on settlement, and entered into a

stipulation dismissing the action against one defendant based on a Hardship application.

## KK.    MATTER 47 – BONVENTRE

201.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Daniel Bonventre and Barbara Bonventre (together, the "Bonventre

Defendants") seeking the return of approximately $12.6 million under SIPA, the Bankruptcy

Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bonventre Defendants. *Picard v. Daniel Bonventre, et al.*, Adv. Pro. No. 10-04214 (Bankr. S.D.N.Y.) (BRL).

202.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys granted the Bonventre Defendants several extensions of time to respond to the complaint up to and including December 27, 2012, as the action was stayed pending the criminal case against Daniel Bonventre. See *United States v. Bonventre*, 10 Cr. 228 (S.D.N.Y.) (LTS). B&H attorneys have received and reviewed the list of documents requested by the Bonventre Defendants.

## LL.    MATTER 48 – BONGIORNO

203.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Annette Bongiorno and Rudy Bongiorno (together, the "Bongiorno Defendants") seeking the return of approximately $22 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bongiorno Defendants. *Picard v. Annette Bongiorno, et al.*, Adv. Pro. No. 10-04215 (Bankr. S.D.N.Y.) (BRL).

204.    The action was stayed through December 27, 2012 because of the pending criminal case against Annette Bongiorno. See *United States v. Bongiorno*, 10 Cr. 228 (S.D.N.Y.) (LTS).

## MM.   MATTER 49 – GREENBERGER

205.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert and Phyllis Greenberger (together, the "Greenberger

Defendants") seeking the return of over $500,000 under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Greenberger Defendants.  *Picard v. Robert and Phyllis Greenberger*, Adv. Pro. No. 10-05408 (Bankr. S.D.N.Y.) (BRL).

206.    On July 14, 2011, the Greenberger Defendants moved to withdraw the bankruptcy reference, and B&H prepared an opposition to the motion.  No. 11 Civ. 04928 (S.D.N.Y.) (JSR). During Compensation Period, the Motion to Withdraw was pending.

207.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Michael Lieberbaum and Cynthia Lieberbaum (together, the "Lieberbaum Defendants") seeking the return of approximately $2.36 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lieberbaum Defendants.  *Picard v. Michael Lieberbaum, et al.*, Adv. Pro. No. 10-05406 (Bankr. S.D.N.Y.) (BRL).

208.    In addition to the tasks outlined above, during this Compensation Period, in November 2011, in the case against the Lieberbaum Defendants, B&H attorneys prepared and served subpoenas *duces tecum* on third parties with knowledge and information relevant to the case and in December 2011, B&H attorneys reviewed documents produced in response to those subpoenas.  B&H attorneys also took the depositions of third party witnesses with knowledge relevant to the case in January 2012.

## NN.    MATTER 50 – PITZ

209.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Enrica Cotellessa-Pitz and Thomas Pitz (together, the "Pitz

Defendants") seeking the return of over $3 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Pitz Defendants. *Picard v. Cotellessa-Pitz, et al.*, Adv. Pro. No. 10-04213 (Bankr. S.D.N.Y.) (BRL).

210.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys engaged in settlement discussions with the Pitz Defendants. The adversary proceeding was stayed up to and including August 22, 2012 because of the criminal case against Ms. Cotellessa-Pitz. See *United States v. Cotellessa-Pitz*, 10 Cr. 228 (S.D.N.Y.) (LTS).

## OO.    MATTER 51 – CRUPI

211.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jo Ann Crupi, a former BLMIS employee, Judith Bowen, Debra E. Guston, Guston & Guston, LLP, Pensco Trust Company, as former custodian of an Individual Retirement Account for the benefit of Jo Ann Crupi, and numerous trusts (collectively, the "Crupi Defendants") seeking the return of over $8.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Crupi Defendants. *Picard v. Jo Ann Crupi, et al.*, Adv. Pro. No. 10-04216 (Bankr. S.D.N.Y.) (BRL). The Trustee alleges, among other things, that Ms. Crupi, as an employee of BLMIS, played a vital role in perpetuating the Ponzi scheme.

212.    During the reporting period, the Trustee's attorneys conducted further investigation of defendants Debra Guston and Guston & Guston, LLP in connection with certain transfers of property. As a result of the investigation, on December 8, 2011, B&H attorneys negotiated dismissal without prejudice of defendants Debra Guston and Guston & Guston, LLP

from the adversary proceeding.   While this matter was originally stayed because of the pending

criminal case against Jo Ann Crupi, this matter is now moving forward.  See *United States v.*

*Crupi*, 10 Cr. 228 (S.D.N.Y.) (LTS).   On December 28, 2011, Ms. Crupi and Ms. Bowen, on

behalf of themselves and certain other defendants, filed an answer to the adversary complaint.

## PP.    MATTER 52 – DONALD FRIEDMAN

213.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against S. Donald Friedman, individually and in his capacity as a beneficiary of

an individual retirement account, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari

Friedman (collectively, the "Friedman Defendants"), seeking the return of more than $19 million

under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

applicable law for fraudulent conveyances and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Friedman Defendants.  *Picard v. Friedman*, Adv.

Pro. No. 10-05395 (Bankr. S.D.N.Y.) (BRL).

214.    In addition to the tasks outlined above, during this Compensation Period, B&H

attorneys met and conferred with opposing counsel and continued discovery, including serving

responses to document requests and interrogatories and contention-based interrogatories.  B&H

attorneys also reviewed documents responsive to Defendants' document requests and made a

document production.  The pre-trial conference in this action is scheduled for June 27, 2012.

## QQ.    MATTER 53 – MAGNIFY

215.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Magnify Inc., Premero Investments Ltd., Strand International

Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Osnat

Dodelson, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and

Robert H. Book (collectively, the "Magnify Defendants") seeking the return of over $154 million

under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc., et al.*, Adv. Pro. No. 10-05279 (Bankr. S.D.N.Y.) (BRL).

216.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued their investigation of those Magnify Defendants located outside of the United States. B&H attorneys researched and drafted an opposition to a motion filed by two Magnify Defendants seeking to dismiss the amended complaint for lack of personal jurisdiction, and prepared for oral argument which was originally scheduled for January 10, 2012. As to those Magnify Defendants who answered the amended complaint, B&H attorneys met and conferred with defense counsel regarding the Trustee's claims and defendants' potential defenses.

**RR.    MATTER 54 – MENDELOW**

217.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela (Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants. *Picard v. Steven B. Mendelow, et al.*, Adv. Pro. No. 10-04283 (Bankr. S.D.N.Y.) (BRL).

218.    The Mendelow Defendants moved to withdraw the reference, which was granted. Previously, Mendelow moved in the Bankruptcy Court to enforce the automatic stay against a third-party action filed against him in the New York State Supreme Court. B&H attorneys

prepared and filed a response to Mendelow's motion. The hearing was adjourned several times. B&H attorneys also granted the Mendelow Defendants several extensions of time to respond to the complaint pending the outcome of the motion and have monitored the developments in the third party state court action.

## SS.    MATTER 55 – KUGEL

219.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against David L. Kugel, Phyllis Kugel, Craig Kugel, Heather Kugel, and several partnerships, trusts and other entities (collectively, the "Kugel Defendants") seeking the return of more than $22 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kugel Defendants. *Picard v. David L. Kugel, et al.*, Adv. Pro. No. 10-04217 (Bankr. S.D.N.Y.) (BRL).

220.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued developing the Trustee's case against the Kugel Defendants and consented to several extensions of time for the Kugel Defendants to respond to the complaint. On June 16, 2011, the Kugel Defendants moved to withdraw the bankruptcy reference, but withdrew their motion on September 14, 2011. No. 11 Civ. 04227 (S.D.N.Y.) (JSR). The Trustee dismissed the adversary proceeding against the Kugel Defendants with prejudice after David Kugel pled guilty to several federal crimes before the District Court in November 2011. See *United States v. Kugel*, 10 Cr. 228 (S.D.N.Y.) (LTS).

## TT.    MATTER 56 – LIPKIN

221.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Irwin Lipkin, Carole Lipkin, Eric Lipkin, Erika Lipkin, Marc Lipkin, Russell Lipkin, Karen Yokomizo Lipkin, and other individuals (collectively, the "Lipkin

Defendants") seeking the return of approximately $9 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lipkin Defendants.  *Picard v. Irwin Lipkin, et al.*, Adv. Pro. No. 10-04218 (Bankr. S.D.N.Y.) (BRL).

222.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys granted certain Lipkin Defendants extensions of time to respond to the complaint.  In June 2011, defendant Eric Lipkin pled guilty to criminal charges.  *See United States v. Lipkin*, 10 Cr. 228 (S.D.N.Y.) (LTS).  For the remaining defendants, the pre-trial conference is scheduled to be held on December 19, 2012.

## UU.    MATTER 57 – PEREZ/O'HARA

223.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jerome O'Hara, Bernadette O'Hara, O'Hara Family Partnership, Elizabeth Sarro, George Perez, and Jeanette Perez (collectively, the "Perez/O'Hara Defendants") seeking the return of over $6 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Perez/O'Hara Defendants.  *Picard v. Jerome O'Hara, et al.*, Adv. Pro. No. 10-04272 (Bankr. S.D.N.Y.) (BRL).  The proceeding against Jerome O'Hara and George Perez was stayed through September 14, 2012 because of the pending criminal cases against them.  See *United States v. O'Hara*, 10 Cr. 228 (S.D.N.Y.) (LTS); *United States v. Perez*, 10 Cr. 228 (S.D.N.Y.) (LTS).

## VV.    MATTER 58 – PJ ADMINISTRATORS

224.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and

numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants. *Picard v. American Sec. Management, L.P., et al.*, Adv. Pro. No. 10-05415 (Bankr. S.D.N.Y.) (BRL).

225.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys granted the PJ Defendants extensions of time to respond to the complaint.

## WW.  MATTER 59 – STANLEY SHAPIRO

226.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $61.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *Picard v. Stanley Shapiro, et al.*, Adv. Pro. No. 10-05383 (Bankr. S.D.N.Y.) (BRL).

227.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued to develop the Trustee's case against the Shapiro Defendants and consented to several extensions of time for the Shapiro Defendants to respond to the complaint.  B&H attorneys also argued the Trustee's opposition to the Shapiro Defendants' motion to withdraw the bankruptcy reference before the District Court.  No. 11 Civ. 05835 (S.D.N.Y.) (JSR).  The reference to the bankruptcy court was withdrawn on several issues on February 29, 2012.

## XX.    MATTER 60 – AVELLINO & BIENES

228.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants.  *Picard v. Frank J. Avellino, et al.*, Adv. Pro. No. 10-05421 (Bankr. S.D.N.Y.) (BRL).

229.    On June 6, 2011, certain A&B Defendants moved to dismiss the complaint in the Bankruptcy Court.  On June 7, 2011, certain A&B Defendants moved to withdraw the reference from Bankruptcy Court.  No. 11 Civ. 03882 (S.D.N.Y.) (JSR).  The motion to withdraw the reference was fully briefed in the District Court and oral argument was held on October 18, 2011.  The reference to the bankruptcy court was withdrawn on several issues on February 29, 2012.  The A&B Defendants are currently proceeding in a consolidated briefing before the District Court.  As such, the motion to dismiss briefing schedule has been vacated.

230.    While the above-referenced motions have been pending, B&H attorneys have continued to engage in discovery preparation.  Specifically, B&H attorneys refined a list of potential deponents and conferred with certain financial institutions regarding preservation letters sent by B&H attorneys to preserve financial records relevant to the litigation.

## YY.    MATTER 61 – MAXAM

231.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Maxam Absolute Return Fund, L.P., Maxam Absolute Return Fund, Ltd., Maxam Capital Management, LLC, Maxam Capital GP LLC, Sandra L. Manzke Revocable

Trust, Sandra L. Manzke, as trustee and individually, Suzanne Hammond, Walker Manzke, and April Bukofser Manzke (collectively, the "Maxam Defendants") seeking the return of approximately $100 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maxam Defendants. *Picard v. Maxam Absolute Return Fund, L.P. et al.*, Adv. Pro. No. 10-05342 (Bankr. S.D.N.Y.) (BRL).

232.    In addition to the tasks outlined above, during this Compensation Period, the Defendants filed a Second Motion to Withdraw the Reference on October 20, 2011, based on Judge Rakoff's decision in *Picard v. Katz*.   Defendants had previously filed a Motion to Withdraw the Reference based solely on the Trustee's standing to bring common law claims in July 2011.   That Motion was granted, but the Complaint was amended and the common law claims were dropped prior to briefing on the common law issues.   The case was subsequently referred back to the Bankruptcy Court.   Plaintiffs then filed a Second Motion to Withdraw the Reference during this Compensation Period based on issues such as antecedent debt, the standard for proving "good faith" under sections 548(c) and 550 of the Bankruptcy Code, and interpretations of 502(d) and 546(e) of the Bankruptcy Code.   The case was transferred back to the District Court as No. 11 Civ. 7428 and assigned to Judge Rakoff on October 27, 2011.   That motion was granted.

233.    On September 22, 2011, B&H attorneys petitioned the Bankruptcy Court to enjoin an action for a declaratory judgment of non-liability brought in the Cayman Islands against the Trustee by Maxam Absolute Return Fund, L.P.   On October 12, 2011, the Court enjoined the action based on Maxam's violation of the automatic stay and on October 14, 2011,

local counsel for the Trustee in the Cayman Islands received a Notice of Discontinuance. On

October 24, 2011, Maxam Limited filed a notice of appeal to the District Court. The appeal was

assigned to Judge Oetken and the parties briefed the motion in the District Court. The District

Court affirmed the Bankruptcy Court's order enjoining the Cayman action.

234.    The parties also engaged in discovery during the Compensation Period. In

November and December 2011, the parties exchanged requests for production and responses and

objections to those requests. The parties then engaged in discussions regarding the breadth and

scope of document discovery, including issues related to electronic document discovery. The

Trustee also noticed several depositions, including the Rule 30(b)(6) depositions of the four

entity defendants and the individual depositions of defendants. In addition, the Trustee's counsel

began the process of organizing, reviewing, and analyzing documents produced by Defendants in

an effort to prepare for depositions, anticipated motions, and trial.

## ZZ.    MATTER 62 – SUBSEQUENT TRANSFERS

235.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing

recovery actions against entities that received subsequent transfers of Customer Property from

BLMIS. Under Bankruptcy Code § 550, the Trustee may recover transfers from BLMIS to a

direct customer or from any entity to whom the customer made transfers.

236.    During this Compensation Period, the Trustee commenced eighteen additional

actions against subsequent transferees seeking to recover in excess of $850 million. Nearly all of

these actions arose from transfers made by "Feeder Funds," which had customer accounts at

BLMIS and received transfers from BLMIS, to the Funds' shareholders or partners. B&H

attorneys entered into stipulations with several defendants setting schedules for the response to

the previously filed subsequent transferee Complaints.

237.   The Trustee's investigation is ongoing and additional recovery actions will be filed.

## V.   COMPENSATION REQUESTED

238.   This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order.   Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

239.   The Trustee and B&H expended 134,431.00 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $357.86 for fees incurred.[5]   The blended attorney rate is $420.38.

240.   Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period beginning October 1, 2011 through January 31, 2012, and (ii) a draft of this Application.   In connection with four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $1,919,697.00 (in addition to the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $438,739.92.

241.   At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.   This discount has resulted in an additional voluntary reduction during the Compensation Period of $5,345,318.20.   The requested fees are reasonable

---

[5] In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

based on the customary compensation charged by comparably skilled practitioners in Chapter 11 cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

242.    Pursuant to the Second Amended Compensation Order, on November 22, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from October 1, 2011 through October 31, 2011 (the "October Fee Statement").  The October Fee Statement reflected fees of $12,392,354.50 and expenses of $186,796.62.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the October Fee Statement reflected fees of $11,153,119.05.  After subtracting the Court-ordered 10% holdback, SIPC advanced $10,037,807.15 for services rendered and $186,796.62 for expenses incurred by the Trustee and B&H.

243.    Pursuant to the Second Amended Compensation Order, on December 20, 2011, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from November 1, 2011 through November 30, 2011 (the "November Fee Statement").  The November Fee Statement reflected fees of $13,005,671.50 and expenses of $186,882.29.  SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the December Fee Statement reflected fees of $11,705,104.35.  After subtracting the Court-ordered 10% holdback, SIPC advanced $10,534,593.92 for services rendered and $186,882.29 for expenses incurred by the Trustee and B&H.

244.    Pursuant to the Second Amended Compensation Order, on January 26, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in

connection with this case regarding the period from December 1, 2011 through December 31, 2011 (the "December Fee Statement").    The December Fee Statement reflected fees of $13,119,937.00 and expenses of $259,651.72.    SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H.    After such adjustments, the December Fee Statement reflected fees of $11,807,943.30.    After subtracting the Court-ordered 10% holdback, SIPC advanced $10,627,148.97 for services rendered and $259,651.72 for expenses incurred by the Trustee and B&H.

245.    Pursuant to the Second Amended Compensation Order, on February 21, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from January 1, 2012 through January 31, 2012 (the "January Fee Statement").    The January Fee Statement reflected fees of $14,935,219.00 and expenses of $233,294.81.    SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H.    After such adjustments, the January Fee Statement reflected fees of $13,441,697.10.    After subtracting the Court-ordered 10% holdback, SIPC advanced $12,097,527.39 for services rendered and $233,294.81 for expenses incurred by the Trustee and B&H.

246.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Debtor during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

247.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by the B&H professionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

248.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

249.    Exhibit E annexed hereto is a calculation of the Holdback amounts and the release sought, explained below in Section IV.

250.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

251.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    <u>RELEASE OF THE HOLDBACK</u>

252.    The Compensation Order established an orderly, regular process for the allowance and payment of interim monthly compensation and reimbursement to the Trustee and B&H. (ECF Nos. 126, 1078, 4125).  Pursuant to the Compensation Order, payment of a percentage of the approved compensation—initially twenty percent (20%), subsequently reduced to fifteen

percent (15%), and thereafter further reduced to ten percent (10%)—is deferred through the conclusion of the liquidation period or until further order of the Court (the "Holdback").

253.    For this and prior Compensation Periods, the amount of the Holdback for the Trustee's and B&H's fees is $32,117,477.51, which includes $4,810,786.37 held back in connection with this Application.  The Trustee and B&H seek a release of the Holdback in the amount of $16 million, upon the consent and approval of SIPC.

254.    The SIPC recommendation filed in support of the fees and expenses requested in this Application will also support the release of the Holdback in the amount of $16 million for the Applicants.

255.    The Applicants and SIPC respectfully request that the Court authorize the release of Holdback payment to the Applicants in the amount of $16 million.

## VII.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

256.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

257.   To the extent the general estate is insufficient to pay such allowances as an expense of administration, SIPA § 78eee(b)(5)(E) requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H (*see* SIPA § 78fff-3(b)(2)).

258.   While the Trustee has recovered or entered into agreements to recover over $9 billion to date, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

259.   Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief of the Trustee.  Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

260.   Therefore, with respect to this Application, the Trustee and B&H request that consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on August 29, 2012.

261.   The Trustee and B&H submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to SIPA § 78eee(b)(5).

### VIII.   <u>CONCLUSION</u>

262.   The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and

disbursements requested herein, and respectfully requests that the Court enter Orders as follows:

(i) allowing and awarding $48,107,863.80 (of which $43,297,077.43 is to be paid currently and

$4,810,786.37 is to be held back through the conclusion of the liquidation period or until further

order of the Court) as an interim payment for professional services rendered by the Trustee and

B&H during the Compensation Period, and $866,625.44 as reimbursement of the actual and

necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition

of such services; (ii) releasing $16 million to the Trustee and B&H from the Holdback; and (iii)

granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
   August 1, 2012

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/ *David J. Sheehan*
  Baker & Hostetler LLP
  45 Rockefeller Plaza
  New York, New York 10111
  Telephone: (212) 589-4200
  Facsimile: (212) 589-4201
  Irving H. Picard
  Email: ipicard@bakerlaw.com
  David J. Sheehan
  Email: dsheehan@bakerlaw.com
  Seanna R. Brown
  Email: sbrown@bakerlaw.com
  Jessie Schweller
  Email: jschweller@bakerlaw.com

*Attorneys for Irving H. Picard, Esq. Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC And Bernard L. Madoff*

300187727