SECURITIES INVESTOR PROTECTION
 CORPORATION
805 15th Street, N.W., Suite 800
Washington, D. C.  20005
Telephone: (202) 371-8300
Facsimile**:** (202) 371-6728
Josephine Wang, General Counsel
Email: jwang@sipc.org
Kevin H. Bell, Senior Associate General Counsel
 for Dispute Resolution
Email: kbell@sipc.org

Hearing Date:  August 22, 2012
Hearing Time: 10:00 AM (EST)
Objection Deadline: August 8, 2012
Reply Deadline: August 15, 2012

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

      Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

      Defendant.

---

In re:

    BERNARD L. MADOFF,

      Debtor.

---

Adv. Pro. No. 08-01789 (BRL)
SIPA LIQUIDATION
(Substantively Consolidated)

**MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN SUPPORT OF TRUSTEE'S MOTION FOR AN ORDER APPROVING SECOND**
**ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND**
<u>**AUTHORIZING SECOND INTERIM DISTRIBUTION TO CUSTOMERS**</u>

      The Securities Investor Protection Corporation ("SIPC") submits this Memorandum of

Law in support of the Motion For An Order Approving Second Allocation Of Property To The

Fund of Customer Property And Authorizing Second Interim Distribution To Customers by the

Trustee for the liquidation of Bernard L. Madoff Securities, LLC ("BLMIS") ("Trustee's Motion"), filed in this liquidation proceeding under the Securities Investor Protection Act, 15 U.S.C. §78aaa *et seq.* ("SIPA").

## I. THE TRUSTEE'S SECOND ALLOCATION IS CONSISTENT WITH AND PROMOTES THE PRINCIPLES UNDERLYING SIPA

SIPA was enacted, *inter alia*, to "restore investor confidence in the capital markets, and upgrade the financial responsibility requirements for registered brokers and dealers." *SIPC v. Barbour*, 421 U.S. 412, 415 (1975). See *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997). This statutory scheme is "necessary to a comprehensive program of investor protection consistent not only with express congressional intent but with the high standards of financial responsibility which must prevail in the brokerage community," and to serve the objective of SIPA "that customer funds and securities not be exposed to risk of loss through broker-dealer insolvency." *See* Exchange Act Release No. 34-9856, 37 Fed. Reg. 25,224 at 25,225 (1972).

In part, SIPA advances its customer protection purpose "by according those claimants in a SIPA liquidation proceeding who qualify as 'customers' of the debtor priority over the distribution of 'customer property.' Each customer shares ratably in this fund of assets to the extent of the customer's net equity at the time of filing." *In re New Times Sec. Servs., Inc.*, 463 F.3d 125, 127 (2d Cir. 2006) (internal citations omitted). In the event the Fund of Customer Property proves insufficient to make the customers whole, SIPC provides protection – subject to statutory limitations – from the SIPC Fund.[1] In this way, Congress sought to insulate public customers, and the financial markets, from the adverse effects of the failure of a broker-dealer.

---

[1] In the BLMIS liquidation proceeding, SIPC has advanced or committed to advance over $802 million in the satisfaction of allowed customer claims.

2

*See In re Hanover Square Sec.*, 55 B.R. 235, 237 (Bankr. S.D.N.Y. 1985); *SEC v. F.O. Baroff Co.*, 497 F.2d 280, 281 (2d Cir. 1974) ("The object of [SIPA], and the function of [SIPC], is to protect the public customers of securities dealers from suffering the consequences of financial instability in the brokerage industry").

The Trustee's Motion accomplishes these goals. It continues to establish a framework for the orderly allocation of BLMIS's assets and for interim distributions of such property to BLMIS customers. It also seeks to bring BLMIS's Fund of Customer Property to the level that would have existed had BLMIS complied with the laws, rules, and regulations applicable to its financial responsibility requirements.

## II. THE TRUSTEE'S SECOND ALLOCATION AND INTERIM DISTRIBUTION IS CONSISTENT WITH THE FIRST INTERIM DISTRIBUTION AND SIPA

The Second Allocation and Second Interim Distribution is consistent with the First Allocation and Interim Distribution and with SIPA. The First Allocation and the First Interim Distribution, made pursuant to this Court's Order of July 12, 2011, put $335.5 million in the hands of customers with allowed claims relating to 1,243 accounts, or about 4.6% of each customer's allowed claim, unless the claim was fully satisfied. (Trustee's Motion, ¶ 7). In the Motion for First Allocation and First Distribution, the Trustee maintained a reserve pending a final and non-appealable order on the Net Equity Dispute.[2] (Trustee's Motion, ¶ 2) Those reserved funds are now available for distribution.

---

[2] On June 5, 2012, the United States Supreme Court denied the two remaining petitions for certiorari on the Net Equity Dispute. Thus, the Order of this Court has become final. *In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), *and cert. denied*, 2012 WL 396489 and 2012 WL 425188 (Jun. 25, 2012).

In this Second Allocation and Second Interim Distribution, the Trustee has proposed to maintain a reserve relating to the issue of whether customers who filed claims are entitled to an increase in the nominal amount of their net equity claims based on the time that elapsed while their funds were deposited with BLMIS, the so-called "Time-Based Damages" theory.

While the Trustee and SIPC fully agree that SIPA and its case law do not provide for any adjustment of the amount of customer claims for Time-Based Damages (Trustee's Motion, ¶¶ 10-15), the Trustee has proposed to maintain a reserve from the Second Distribution in case the disputed issues of law and fact as related to Time-Based Damages are resolved differently.

The Trustee's Motion (¶16) clearly spells out the three choices on a reserve for Time-Based Damages:

- No Reserve – distribute $3.019 billion, or 41.826% of each customer's allowed claim, unless the claim is fully satisfied;

- 3% Reserve – distribute $2.427 billion, or 33.541% of each customer's allowed claim, unless the claim is fully satisfied;

- 9% Reserve – distribute $1.493 billion, or 20.563% of each customer's allowed claim, unless the claim is fully satisfied.

As the Trustee aptly notes:

> For customers with allowed claims who have waited patiently for the last three and a half years to receive the fruits of the Trustee's success, the difference between these distribution percentages cannot be overstated.

(Trustee's Motion, ¶ 16).

Having weighed the merits of the Time-based Damages theory in light of applicable law, evaluated the merits of the objections to the Trustee's Motion, and considered the hardship to the victims through a continued holdback of their customer property, the Trustee has taken a middle of the road position. His motion for permission to make a distribution with a 3% Reserve makes

4

more than $934 million available for the Second Interim Distribution over a distribution with 9% Reserve. (Trustee's Motion, ¶ 17).

A Second Interim Distribution with a 3% Reserve means that a total of 1,229 customer accounts will receive a distribution of approximately 33.541% of their allowed net equity claims (Trustee's Motion, ¶73), in addition to the 4.6% received under the First Interim Distribution, or more than 38% of their allowed net equity claims. Of these 1,229 accounts, 181 will become fully satisfied, bringing the total number of fully satisfied account holders to 1,067. Thus, 1,048 accounts will remain partially satisfied and will participate in future distributions by the Trustee. (Trustee's Motion, ¶73).

The compromise (a reserve of 3% instead of 9%) proffered by the Trustee is reasonable against the handful of questionable objections to his Motion. As the Trustee notes in his reply to the objections, two of the objectors settled with the Trustee and waived their right to brief the Time-Based Damages issue. They should not now be allowed to engage in a collateral attack on the issue. One of the objectors actually is worse off under the Time-Based Damages theory. Another objection rests on incorrect facts. As to the last objection, that of the Aufziens, it should be noted that an overwhelming number of affected parties have *not* objected to the Trustee's Motion. In view of the reasonableness of the Trustee's proposed compromise, this Court should not permit the Aufziens, who are Net Winners and already has benefitted from the receipt of other customers' funds, to continue to benefit at their expense by holding up the distribution of funds that are rightfully the property of other customers.

## **CONCLUSION**

For the foregoing reasons, SIPC submits that the Trustee's Motion should be granted.

Date: August 15, 2012
       Washington, D.C.

                                                                           Respectfully submitted,

                                                         __/s/Josephine Wang_____
                                                         JOSEPHINE WANG
                                                         General Counsel

                                                         KEVIN H. BELL
                                                        Senior Associate General Counsel for
                                                         Dispute Resolution

                                                         SECURITIES INVESTOR
                                                           PROTECTION CORPORATION
                                                        805 15th Street N.W., Suite 800
                                                        Washington, D.C. 20005
                                                        Telephone: (202) 371-8300
                                                        Email: jwang@sipc.org
                                                        Email: kbell@sipc.org