**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Jorian Rose  
Email: jrose@bakerlaw.com  
Seanna R. Brown  
Email: sbrown@bakerlaw.com  

Hearing Date: August 22, 2012  
Hearing Time: 10:00 A.M. (EST)  
Objection Deadline: August 8, 2012  
Reply Deadline: August 15, 2012  

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　　Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　　Debtor. | |

**TRUSTEE'S REPLY TO OBJECTIONS TO TRUSTEE'S MOTION FOR AN ORDER APPROVING SECOND ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND AUTHORIZING SECOND INTERIM DISTRIBUTION TO CUSTOMERS**

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), by and through his undersigned counsel, respectfully submits this reply (the "Reply") to the objections to the Trustee's motion (the "Trustee's Motion") seeking an order approving (1) the second allocation of property ("Second Allocation") to the fund of customer property ("Customer Fund"), and (2) authorizing a second pro rata interim distribution ("Second Interim Distribution") to customers whose claims for customer protection under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*,[1] have been allowed for amounts exceeding the SIPA statutory advance limits and were not already satisfied by the initial pro rata interim distribution, filed on July 26, 2012 (ECF No. 4930),[2] and in support thereof, respectfully submits as follows:

## REPLY

1. The Trustee's Motion seeks authorization to make a second significant distribution to BLMIS customers with allowed claims. The amount of that distribution largely depends on the reserve that the Trustee is required to maintain relating to the issue of whether claimants are entitled to an increase of the nominal amount of their net equity claims based on the time that elapsed while their monies were deposited with BLMIS ("Time-Based Damages"). The Trustee's position on Time-Based Damages is well-known: SIPA does not provide for any adjustment of the amount of customer claims for Time-Based Damages.

2. Nonetheless, in the exercise of his business judgment and in an abundance of caution, the Trustee must maintain a reserve that anticipates that disputed issues of law and fact may be determined differently. While the Trustee is not required to maintain reserves for purely

---

[1] For convenience, subsequent references to sections of the Act shall follow the form: "SIPA § __."

[2] All capitalized terms not defined herein shall have the meaning ascribed in the Motion.

speculative outcomes or facially unreasonable arguments, here the Trustee should maintain a reserve amount that accounts for the various potential (if unlikely) outcomes of the Time-Based Damages dispute. Thus, instead of distributing on a cash in/cash out basis in accordance with the Second Circuit's ruling in the Net Equity Decision, *In re Bernard L. Madoff Investment Sec. LLC*, 654 F.3d 229, 229 (2d Cir. 2011), *cert. denied*, No. 11-969, 2012 WL 396489, No. 11-986, 2012 WL 425188 (June 25, 2012), and yet without agreeing that the Time-Based Damages dispute has any merit, the Trustee seeks approval to maintain a reserve sufficient to recalculate customer claims with a 3% interest rate ("3% Reserve").

3.    Based on the June 30, 2012 financials set forth in the Trustee's Motion, the 3% Reserve would permit the Trustee to distribute $2.427 billion, or 33.541% of each customer's allowed claim, unless the claim is fully satisfied. By seeking the 3% Reserve, the Trustee is trying to balance the harm to customers with allowed claims in the delay and decrease of their distributions while being mindful of the Time-Based Damages dispute. He submits that a 3% Reserve is sufficient to protect the interests of those seeking Time-Based Damages while limiting the harm to those customers with allowed claims.

4.    Three objections were filed to the Second Interim Distribution.[3]  S&P Associates, General Partnership ("S&P"), P&S Associates, General Partnership ("P&S"), and Anne Del Casino filed the first objection ("First Objection"). (ECF No. 4966). Martin, Richard

---

[3] A fourth objection was filed with this Court on August 13, 2012 by Christine Leja, appearing pro se. (ECF No. 4976). Ms. Leja filed a claim with the Trustee in connection with her investment in Anchor Hedge Fund Limited Class A, a feeder fund that invested with BLMIS. Accordingly, the Trustee denied Ms. Leja's claim. Ms. Leja's objection to the Trustee's determination of her claim was adjudicated in the Trustee's Motion for an Order to Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds. (ECF Nos. 2416, 2446). This Court and the United States District Court for the Southern District of New York affirmed the Trustee's denial of Ms. Leja's claim, among others. (ECF Nos. 3018, 4193, 4209); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011); *Aozora Bank Ltd. v. Sec. Prot. Investor Corp.*, No. 11 CV 5683, 2011 U.S. Dist. LEXIS 150753 (S.D.N.Y. Jan. 4, 2012). Therefore, Ms. Leja is not a "customer" of BLMIS within the meaning of SIPA § 78*lll*(2). Her objection raises issues not relevant to the Trustee's Motion and should be overruled.

2

and Steven Surabian filed the second objection (the "Surabian Objection"). (ECF No. 4965). Alan L. and Norma K. Aufzien, Jonathan M. Aufzien, Lisa S. Aufzien, Meredith Aufzien Bauer, and Leslie Aufzien Levine (the "Aufziens") filed the third objection (the "Aufzien Objection"). (ECF No. 4971).

5.  If the objectors are successful in requiring the Trustee to reserve 9% of the total net equity of all allowed and allowable claims pending the resolution of the Time-Based Damages issue ("9% Reserve"), which is the highest rate any objector has sought, then the Trustee can only distribute $1.493 billion, or 20.563% of each customer's allowed claim, unless the claim is fully satisfied. These objections, seeking a 9% Reserve, reduce the Second Interim Distribution by approximately $1 billion in otherwise available funds. These objections should be overruled, and a 3% Reserve ordered, for the reasons described below.

I.   **The S&P, P&S, Ann Del Casino and Aufzien Objections.**

6.  S&P, P&S, Ms. Del Casino and the Aufziens have not provided any relevant SIPA case in which Time-Based Damages were granted or relevant factual support. Notwithstanding their lack of any proffered legal or factual basis, they ask the Trustee to withhold $1 billion in available funds from BLMIS customers.

7.  The Trustee's position on the Time-Based Damages issue is the only one supported by law. As a general matter, none of the Objections have refuted the fact that SIPA contains no reference to net equity inflationary adjustments in the statute, and interest has never been included in a SIPA customer's net equity. *See SIPC v. Ambassador Church Financ.*, 788 F. 2d 1208, 1212 (6th Cir. 1986) ("Since the definition of 'net equity' does not include interest, we hold that the SIPA does not authorize the SIPC to pay interest, either to the trustee or directly to the debtor's customers."); *In re New Times Sec. Servs.*, 371 F.3d 68, 88 (2d Cir. 2003) (holding that claimants' net equity should be valued "according to the cash they initially provided to the

3

Debtors to purchase the Funds and should not include any bogus interest or dividend reinvestments").

8. Nor has any objector demonstrated that customer claims under SIPA include damages, with or without adjustments for the passage of time. *See, e.g.*, *Stafford v. Giddens (In re New Times Sec. Servs.)*, 463 F.3d 125, 129-30 (2d Cir. 2006) (holding SIPA does not protect against cases of dishonesty and fraud where customers were fraudulently induced by broker to swap securities for promissory notes); *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 421 (S.D.N.Y. 2003) ("Because claims for damages do not involve the return for customer property entrusted to the broker they are not the claims of 'customers' under SIPA . . . Even if it is assumed that their losses were caused by fraud, breach of contract, or a similar theory, they are general creditors.").

9. The Trustee's position is that to the extent any damages, interest, or time value of money are awarded, such a claim could only be appropriately paid from the general estate rather than the Customer Fund, in accordance with the priorities under SIPA. Even if the Trustee's position with respect to Time-Based Damages was somehow mistaken, an interest rate of 9% is not appropriate because it no longer has any relation to normal interest rates in the commercial world. *See Sriraman v. Patel*, 761 F. Supp. 2d 23, 26-27 (E.D.N.Y. 2011) ("Nine percent, in my view, is an absurd judgment rate in this day and age for any claim . . . By not indexing the interest rate in CPLR § 5004, New York law effectively creates a windfall for plaintiffs, who likely will recover far more in interest received from a defendant than had they made a short-term investment of a like amount of money."). Thus, the Trustee believes that no Time-Based Damages could be awarded here. Even if they were awarded, the Trustee respectfully submits that they would not be awarded with a 9% per annum interest rate factor.

10.     *S&P and P&S* - Additionally, pursuant to the Claims Procedures Order and the Settlement Order, the Trustee and S&P and P&S agreed to settle any and all claims and disputes the parties may have against each other with respect to BLMIS, S&P's BLMIS account, and S&P's avoidable transfers. By the terms of the settlements, both S&P and P&S waived their rights to engage in any controversy, including briefing the amount reserved for Time-Based Damages.  Should the Trustee's interpretation of net equity be incorrect, as it relates to Time-Based Damages or otherwise, then S&P and P&S's claims will be re-determined and they will share in any payments on a pro rata basis.  Because they cannot participate in substantive briefing on the Time-Based Damages issue, their collateral attack on the Time-Based Damages issue should be overruled.

11.     *Ann Del Casino* - Also, as discussed above, the difference between the amounts that Net Losers like Ms. Del Casino could receive in the Second Interim Distribution under the 3% Reserve and under the 9% Reserve is sizeable.  With the 3% Reserve, a total of 1,229 accounts will receive a distribution of approximately 33.541% of their net equity claim.  Of these 1,229 accounts, 181 will become fully satisfied, bringing the total of fully satisfied account holders to 1,067 (1,048 accounts will remain partially satisfied and be entitled to participate in future distributions).  In contrast, with the 9% Reserve, a total of 1,229 accounts will receive a distribution of approximately 20.563% of their net equity claim.  Of these 1,229 accounts, 100 will become fully satisfied, bringing the total of fully satisfied account holders to 986 (1,129 accounts will remain partially satisfied and be entitled to participate in future distributions). Based on the current value of the Customer Fund, Ms. Del Casino would receive a greater aggregate distribution under the Net Investment Method than she would if the Trustee was required to recalculate customer claims with a 9% interest rate factor.  Moreover, Ms. Del Casino

5

and other Net Losers will be forced to wait years to receive these funds that the Trustee is holding on their behalf.

12. *The Aufziens* - The Aufziens filed claims with the Trustee in connection with five BLMIS accounts. Under the Trustee's Net Investment Method, the Aufziens are Net Winners, in that they withdrew more cash from their BLMIS accounts than deposited. The Trustee commenced an adversary proceeding against them to recover the fictitious profits they received. *Picard v. Leslie Aufzien Levine, et al.*, Adv. Pro No. 10-04483 (Bankr. S.D.N.Y.) (BRL), No. 11 CV 09217 (JSR). The Aufziens failed to raise any arguments in their Objection to the Trustee's Motion and instead joined the First Objection.

13. The Trustee and counsel for defendants in certain avoidance actions conferred regarding a reservation of rights to be submitted as part of the proposed order on the Trustee's Motion. The proposed language was circulated for comment by certain defense counsel to more than four hundred other defense counsel. The reservation of rights preserves the ability of avoidance action defendants to argue the Time-Based Damages issue as it relates to their defenses under section 548(c) of the Bankruptcy Code, thereby precluding the need for avoidance action defendants such as the Aufziens to file objections to this Motion. The proposed language is as follows:

> Nothing in this Order or in the determination of the underlying motion (ECF No. 4930) constitutes a determination, or shall be deemed to have determined, whether (i) any net equity claim is or is not subject to adjustment for Time-Based Damages, or (ii) any defendant in an avoidance action commenced by the Trustee has a valid defense against the Trustee's avoidance claims, in whole or in part, under Section 548(c) of the Bankruptcy Code or otherwise under non-bankruptcy law arising from, relating to, or based on such defendant's assertion of a claim for or entitlement to any Time-Based Damages.

6

14. The Trustee submits that this language, if approved by the Court and made part of the order on the Trustee's Motion, should resolve the Aufzien Objection as it relates to their avoidance action.

15. The Aufziens, as defendants in pending avoidance actions, should not be permitted to delay distributions based on unsupported damages theories in those actions.

16. In sum, if S&P, P&S, Ms. Del Casino and the Aufziens wish to stall $1 billion in distributions, they should have provided relevant case law or facts that provide some basis for finding 9% is an appropriate interest rate adjustment to customer claims in a SIPA case. They have not and their objections should be overruled.

## II. The Surabian Objection

17. The Surabians object because the Motion does not identify who will receive payments under the Second Interim Distribution. This is untrue. The Motion is clear that allowed customers will receive as little as $1.493 billion and as much as $2.427 billion, to be distributed pro rata to customers with allowed customer claims. Because this Court has recognized that the Surabians were never customers or creditors of BLMIS,[4] they will not receive any of these funds and have no standing to object to the Motion.[5]

---

[4] *See Order*, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (BRL) (Bankr. S.D.N.Y. Apr. 19, 2012) (ECF No. 4779).

[5] The Surabians also objected to the Trustee's Motion for an Order to Schedule Hearing on "Customer" Issue notwithstanding an identical absence of standing. (ECF No. 2052). The Court overruled the objection and approved the Trustee's proposed briefing schedule. (ECF No. 2205). More recently, the Surabians filed the sole objection to the settlement between the Trustee and Trotanoy Investment Company, Ltd., et al. The objection was overruled by this Court and questioned as confusing and without basis. (Judge Lifland Tr. 8:1 May 16, 2012). The Surabians have also sought to be heard in response to the Scheduling Motion filed by the Trustee on the Time-Based Damages Issue, which the Trustee opposes for the same reasons asserted on each prior occasion. (ECF No. 4920).

WHEREFORE, the Trustee requests that the Court overrule the objections in their entirety and enter an order permitting the Trustee to maintain a reserve 3% of the total net equity of all allowed and allowable claims, pending the resolution of the Time-Based Damages issue.

Dated: New York, New York
       August 15, 2012

Respectfully submitted,

*/s/ David J. Sheehan*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

300258725