# **<u>EXHIBIT B</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | 12-MC-0115 (JSR) |
| In re:<br><br>MADOFF SECURITIES | |

CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS REGARDING ANTECEDENT DEBT
ISSUES ON BEHALF OF WITHDRAWAL DEFENDANTS,
AS ORDERED BY THE COURT ON MAY 12, 2012

*Filed by*

Richard A. Kirby
K&L GATES LLP
1601 K Street
Washington D.C. 20006
(202) 778-9000 (Telephone)
(202) 778-9100 (Facsimile)

*on behalf of all counsel listed below*

In enacting Section 28(a), "Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions." *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 383 (1996). Likewise, the Second Circuit recognizes that the 1934 Act preserves all state law claims: "in enacting the Securities Acts, Congress was aware of the long-established state securities acts and the well-developed common law of fraud. Consequently, Congress carefully preserved all existing remedies at law or in equity." *Murphy v. Gallagher*, 761 F.2d 878, 885 (2d Cir. 1985). The Trustee's position that SIPA displaces customer remedies beyond return of principal cannot be squared with the statute. To the contrary, SIPA should be construed to preserve these remedies to the maximum extent.

### 2. Defendants have federal and state law rights to retain interest in addition to principal under Section 548(c).

This Court has recognized, and the Trustee has conceded, that a customer's principal is within the scope of value contemplated by Section 548(c). Indeed, it is indisputable that every Madoff Securities customer had a right to rescission and to return of principal based on the admissions by the Trustee and Bernard Madoff of widespread fraud.[4] But value under Section 548(c) is not limited to the customer's principal. To the contrary, the customer's rescission rights include interest, which falls squarely within the definition of value under Section 548(c).

Each customer undeniably had a federal securities claim against Madoff Securities from the inception of the relationship, as the relationship itself was procured by fraud. The Trustee admits that Madoff Securities received payments in connection with the purchase and sale of securities but did not purchase any securities, instead sending brokerage statements to its customers that contained lies. These admissions establish that each customer had a Rule 10b-5

---

[4] Nothing herein waives any Defendant's right to dispute the actual scope and dimension of the fraud.

6

claim from the time of the original deposit of funds with the broker.[5] In this context, it is irrelevant whether the false representations related to the securities ostensibly to be purchased[6] or instead concerned the fraudulent investment contracts entered into with each Madoff Securities customer regarding the investment advisory services to be provided.[7] Thus, each customer had a federal claim to address these admitted violations of Rule 10b-5. The remedies for securities fraud, and therefore the value of such a claim, include rescission of the transaction, recovery of principal, *and* compensation for the loss of the time value of money, expressed here as an award of interest.[8]

---

[5] "[A] broker who accepts payment for securities that he never intends to deliver . . . violates § 10(b) and Rule 10b-5." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 n.10 (2006); *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (same); *see also Grippo v. Perazzo*, 357 F.3d 1218, 1220-24 (11th Cir. 2004) ("A plaintiff does not need to identify a specific security, or demonstrate that his money was actually invested in a security" to be afforded the protection of Rule 10b-5.).

[6] The defrauded customer has a federal claim for securities fraud whether or not a broker actually purchases the contemplated securities, in part because the customer has no means to confirm a transaction other than the account statement that the broker issues. *Schnorr v. Schubert*, 2005 WL 2019878, at *5 (W.D. Okla. Aug. 18, 2005) ("[U]nfulfilled promises to purchase securities qualify as *actual* purchases" for purposes of Rule 10b-5.); *see also Ormond v. Anthem, Inc.*, 2008 WL 906157, at *13 (S.D. Ind. Mar. 31, 2008) (Rule 10b-5 protects plaintiff who "thought they had purchased or sold a security.").

[7] An "investment contract" is any "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." *SEC v. Howey*, 328 U.S. 293, 298-99 (1946). "Congress' purpose in enacting the securities laws was to regulate *investments*, in whatever form they are made and by whatever name they are called." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990). Congress enacted a broad definition of "security," sufficient "to encompass virtually any instrument that might be sold as an investment." *Id*; *SEC v Edwards*, 540 U.S. 389, 393-94 (2004); *Greiff*, 2012 WL 1505349, at *4 (Madoff Securities customer agreements were "securities contracts").

[8] *See, e.g., Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 637 F.2d 77, 87 (2d Cir. 1980) ("In view of the high inflation rates that beset this period [during which the defendant exercised control over the defrauded plaintiff's investment], a damage award without prejudgment interest (or, indeed, even one that does include it) would not give [Plaintiff] full compensation for the losses he suffered at the hands of his fiduciary.").

7

The Securities Act of 1933 ("1933 Act") provides an express remedy for rescission in the case of misrepresentations in connection with the sale of securities. 15 U.S.C. § 77l(a)(2). Section 12(a)(2) of the 1933 Act provides that the victim may recover from the person who sold the security the "consideration paid for such security with interest thereon, less the amount of any income received thereon. . . ."[9] 15 U.S.C. § 77l(a)(2). In *Randall v. Loftsgaarden*, the Supreme Court found that the rescission remedy for Rule 10b-5 cases should be construed consistently with the express remedy in the 1933 Act. 478 U.S. 647, 662-63 (1986). Thus, not only is the rescission remedy well-settled for a violation of Rule 10b-5, but the inclusion of interest within its contours is fixed by the 1933 Act's express remedies.[10]

---

[9] The meaning of this provision is well-established. In adopting the rescission remedy in Section 12(a)(2), Congress borrowed from the existing common law, which recognized the right to interest in addition to return of principal as a remedy for rescission. *See Schott v. Maidsville Coal Min. P'ship*, 1979 WL 1245, at *4 (S.D.N.Y. Sept. 7, 1979) (finding that plaintiff is entitled to the purchase price of the securities, less any distributions made, plus interest on his § 12(a)(2) claim); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 53(4) (2010) ("Liability in restitution based on the payment or receipt of money normally includes prejudgment interest (a) from the date of payment to a conscious wrongdoer, a defaulting fiduciary, or a recipient otherwise at fault in the transaction concerned."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 354(1) (1981) ("If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled."). An interest award is necessary because the law recognizes a time value of money loss that must be compensated to make the victim of fraud whole. *Id.*

[10] *See, e.g., Bass v. Janney Montgomery Scott, Inc.*, 152 F. App'x 456, 458 (6th Cir. 2005) (rescission in Rule 10b-5 case includes return of consideration paid with interest thereon); *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1031 (9th Cir. 1999) (true rescission in a Rule 10b-5 case involves the return of consideration furnished plus interest); *see also Brick v. Dominion Mortg. & Realty Trust*, 442 F. Supp. 283, 303-04 (W.D.N.Y. 1977) (New Jersey blue sky statute providing for recovery of consideration paid for a security plus 6% interest effectively provides same recovery as Rule 10b-5); *see also Westinghouse Elec. Corp. v. '21' Intern. Holdings, Inc.*, 821 F. Supp. 212, 220 (S.D.N.Y. 1993) ("the legal standards to be applied in determining whether an injured party is entitled to rescission for violation of Rule 10b-5 and §§ 12(a)(2) and 17 are essentially the same as the standards developed in the common law fraud cases.") (internal cites omitted).

As a complement to their Rule 10b-5 claims, Section 29(b) of the 1934 Act also entitles Defendants to void their investment contracts and receive ancillary remedies.[11]

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract . . .

15 U.S.C. § 78cc(b).[12] Where Section 29(b) is invoked, the available remedy is rescission,[13] including return of the consideration paid and "interest thereon."

Defrauded Madoff Securities customers are also entitled to substantive state law tort remedies, including interest.[14] Indeed, New York law *compels* the award of interest under the circumstances here: "It has been the settled rule that interest must be allowed as a matter of right on recoveries for intentional tort with respect to property and property rights." *DeLong Corp. v. Morrison-Knudsen Co., Inc.*, 20 A.D.2d 104, 107 (N.Y. App. Div. 1963) (citing *Flamm v. Noble*,

---

[11] *See, e.g., American Gen. Ins. Co. v. Equitable Gen. Co.*, 493 F. Supp. 721, 767-68 (E.D. Va. 1980) (holding that plaintiffs were entitled to rescission and prejudgment interest from the date of the initial fraudulent transfer under 29(b)); *Cant v. A.G. Becker & Co., Inc.*, 384 F. Supp. 814, 816 (N.D. Ill. 1974) ("A failure to assess interest . . . would have the affect [sic] of allowing parties to speculate with the funds of innocent persons, without fully compensating such victims for the unlawful use of their assets."); *Scheve v. Clark*, 596 F. Supp. 592, 594 (E.D. Mo. 1984) (proper remedy in federal securities claims includes pre-judgment interest at a rate "which will adequately compensate the plaintiffs for the loss of the use of their money.").

[12] *See also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 387-88 (1970) (reading "void" in Section 29(b) to mean "voidable at the option of the innocent party").

[13] The same damage principles that govern the express rescission remedy in Section 12(a)(2) of the 1933 Act govern the parallel rescission remedy set forth in Section 29(b) of the 1934 Act. *See Randall*, 478 U.S. at 662-63 and discussion *supra.*

[14] New York courts have long recognized that fraud victims are entitled to either (i) disaffirm the contract by a prompt rescission; or (ii) stand on the contract and maintain an action at law for damages attributable to the fraud. *Big Apple Car, Inc. v. City of New York*, 204 A.D.2d 109, 110-11 (N.Y. App. Div. 1994).

296 N.Y. 262 (N.Y. 1947), *aff'd*, 14 N.Y.2d 346 (N.Y. 1964)), *aff'd*, 200 N.E.2d 557 (N.Y. 1964); *see also Purcell v. Long Island Daily Press Publ'g Co.*, 9 N.Y.2d 255, 257-58 (N.Y. 1961).

New York has codified and expanded this rule. *See* N.Y. C.P.L.R. § 5001(a) ("Interest shall be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property"); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 694-95 (2d Cir. 1983) (statutory enactment did not constrict common law rule); *see also DeLong Corp. v. Morrison-Knudsen Co., Inc.*, 14 N.Y.2d 346, 348 (N.Y. 1964). It is "New York's prevailing policy, interwoven into § 5001, that '[i]nterest must be added [in actions where persons are deprived of the use of money] if we are to make the plaintiff whole." *Mallis*, 717 F.2d at 695 (quoting *Prager v. New Jersey Fid. & Plate Glass Ins. Co.*, 245 N.Y. 1. 6 (N.Y. 1927).

Likewise, Madoff Securities customers held claims for breach of fiduciary duties from the inception of their relationship with Madoff Securities.[15] These claims also entitle Madoff Securities customers to interest in addition to principal;[16] indeed, the New York Court of Appeals

---

[15] The New York Court of Appeals has recently reaffirmed the viability of the common law claim for breach of fiduciary duty in the securities context, rejecting the notion that it is preempted by the Martin Act. *See Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 18 N.Y.3d 341, 351 (N.Y. 2011). In New York, a "broker who has discretionary powers over an account owes his client fiduciary duties." *Lowenbraun v. L.F. Rothschild*, 685 F. Supp. 336, 343 (S.D.N.Y. 1988). Where such a relationship exists, a broker's failure to invest in securities, thereby "abusing the position as broker-agent to gain profits at the client's expense," gives rise to a damages claim against the faithless fiduciary. *Id.*

[16] New York law recognizes that a breach of fiduciary duty entitles a claimant to pre-judgment interest. *Wolf v. Rand*, 258 A.D.2d 401, 403-04 (N.Y. App Div. 1999). Courts award prejudgment interest on equitable claims such as rescission because the plaintiff should be "compensated for being deprived of the use of its money." *USPS v. Phelps Dodge Refining Corp.*, 950 F. Supp. 504, 518 (E.D.N.Y. 1997). Similarly, courts applying the Restatement frequently provide interest payments in breach of fiduciary duty cases. *E.g., In re Estate of*

recently confirmed that compensation for loss of the time value of money is mandatory. *NML Capital v. Republic of Argentina*, 17 N.Y.3d 250, 265-66 (N.Y. 2011).[17] New York's statutory interest rate is 9%. N.Y. C.P.L.R. § 5004.

### 3. *Defendants' claims also entitle them to retain additional amounts under Section 548(c), such as lost opportunity costs.*

Defendants' legal claims carry rights in addition to rescission and recovery of principal with interest. While the amount of any given defendant's damages claim will vary depending on the facts, the existence of valid underlying legal claims for amounts in excess of principal cannot reasonably be disputed.

Federal securities fraud claims also include consequential damages, including out-of-pocket costs and lost opportunity damages. *See, e.g., Rolf*, 637 F.2d at 86-87; *Zeller v. Bogue Elec. Mfg. Corp.*, 476 F.2d 795, 803 (2d Cir. 1973) (consequential damages are available for federal securities law claims when they are established with certainty); *cf. Stevens v. Abbot, Proctor & Paine*, 288 F. Supp. 836, 850-51 (E.D. Va. 1968) (finding that percentage of capital gains taxes due to defendant's fraudulent conduct were recoverable as actual damages).

Likewise, New York courts have long recognized that fraud victims are entitled to recover consequential damages attributable to the fraud. *Big Apple Car, Inc*, 204 A.D.2d at 110-

---

*Newhoff*, 107 Misc.2d 589, 595-96 (N.Y. Surrogate's Ct. 1980) (measure of damages where initial investments of trust monies are found imprudent is "the amount of funds invested *plus the legal rate of interest* from the date of investments with appropriate credits for the moneys received on account of such investments.") (emphasis added).

[17] In *Capital*, the court recognized a distinct injury for the loss of use of funds, separate and apart from the obligation to return principal, because "plaintiffs are entitled to be compensated for the loss of the time value of that money – which can be accomplished only by awarding them statutory interest on the unpaid interest only payments." 17 N.Y.3d at 266. The court explained that "[a]bsent this component of damages, plaintiffs would be reimbursed only for their loss of use of the principal – and not for loss of use of the periodic interest payments, a separate injury." *Id.*