1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   CASE NO 08-01789-BRL

4   - - - - - - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6   SECURITIES INVESTOR PROTECTION CORPORATION,

7                   Plaintiff-Applicant,

8       - against -

9   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC., et al

10                  Defendant.

11  - - - - - - - - - - - - - - - - - - - - - - - - -x

12  In re:

13  BERNARD L. MADOFF,

14                  Debtor.

15  - - - - - - - - - - - - - - - - - - - - - - - - -x

16

17                  U.S. Bankruptcy Court

18                  One Bowling Green

19                  New York, New York

20                  August 22, 2012

21                  10:32 AM

22  B E F O R E :

23  HON. BURTON R. LIFLAND

24  U.S. BANKRUPTCY JUDGE

25  ECRO - F. FERGUSON

Page 2

1    Adversary proceeding: 08-01789-brl Securities Investor

2    Protection Corporation v. Bernard L. Madoff Investment

3    Securities, LLC

4

5    (cc-4930) Motion an Order Approving Second Allocation of

6    Property to the Fund of Customer Property and Authorizing

7    Second Interim Distribution to Customers

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Shelia Orms

```
 1   A P P E A R A N C E S :

 2   BAKER & HOSTETLER

 3        Attorneys for Trustee Irving H. Picard

 4        45 Rockefeller Plaza

 5        New York, NY 10111

 6

 7   BY:   DAVID J. SHEEHAN, ESQ.

 8         JORIAN L. ROSE, ESQ.

 9

10   SECURITIES INVESTOR PROTECTION CORPORATION

11        805 15th Street N.W.

12        Suite 800

13        Washington, D.C. 20005

14

15   BY:   KEVIN H. BELL, ESQ.

16

17   BECKER & POLIAKOFF

18        Attorneys for P&S Associates General Partnership,

19        S&P Associates General Partnership, Anne Del Casino

20        45 Broadway

21        8th Floor

22        New York, NY 10006

23

24   BY:   JULIE GORCHKOVA, ESQ.

25
```

1   PRYOR CASHMAN LLP

2        Attorneys for Group of Avoidance Defendants

3        7 Times Square

4        New York, NY 10036-6569

5

6   BY:   RICHARD LEVY, JR., ESQ.

7

8   LOEB & LOEB

9        Attorneys for Alan and Norma Aufzien

10        345 Park Avenue

11        New York, NY 10154

12

13   BY:   DEBRA WEINSTEIN MINOFF, ESQ.

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2             THE CLERK:  SIPC v. BLMIS.

 3             THE COURT:  Good morning, all.

 4             MS. GORCHKOVA:  Good morning, Your Honor.

 5             MR. SHEEHAN:  Good morning, Your Honor.

 6             THE COURT:  All of the parties who have submitted

 7     papers to the Court requested a chambers conference this

 8     morning.  I accommodated them then.  The goal was to see if

 9     there can be some accord.  I don't necessarily agree that

10     against this background there has to be negotiations about how

11     much money goes to the victims.  And under all of those

12     circumstances, it appears that there is no accord.  That

13     doesn't bother me at all because I am prepared to rule based

14     upon everything I have before me.  And so let's go forward with

15     the motion.

16             MR. SHEEHAN:  Thank you, Your Honor.

17             MR. BELL:  Thank you, Your Honor.

18             MR. SHEEHAN:  As Your Honor points out, this is a

19     momentous day in the history of the Madoff case.  After three

20     and a half years, we are now in a position to make a very

21     substantial distribution to the victims in this case.

22             The amounts are well laid out in the application to

23     Your Honor, and what we have tried to do is to suggest to Your

24     Honor the context in which this should be considered.  And by

25     that, I mean that there is, of course, the motion that we've
```

1    scheduled next week with regard to the interest factor or time

2    value or constant dollar, whichever you wish to characterize it

3    as.  And as with everything in this case, there is nothing

4    that's easy.  We, of course, had to wait until net equity was

5    resolved, and we also had to wait until the appeals were

6    resolved with regard to the Picower settlement.

7         We now have a substantial sum of money, but we still

8    have to take into account the fact that there is still

9    unresolved, which was not even ripe until after net equity was

10   resolved, the issue of whether or not a constant dollar

11   component should be attributed to the customer claim body.  So

12   in anticipation of that, what we have submitted to Your Honor,

13   and the papers are very clear and I'm going to not go into them

14   in any detail, a proposal with regard to a 3 percent holdback

15   with regard to that.

16        Again, I won't go into it in detail.  I think Your

17   Honor has read the papers.  I know you have.  So and the other

18   end of the spectrum, of course, is 9 percent, which is the

19   maximum amount that's been sought by many of the people who

20   have objected through the course of these proceedings, and

21   there are literally hundreds of objections.  However, what's

22   very, very important for this morning's hearing is, is that

23   notwithstanding the fact that many people filed the objection

24   and many of them sought the 9 percent, when we filed our

25   application, as Your Honor well knows, we received virtually no

Page 7

1   objections to our 3 percent solution.  As a matter of fact,

2   many, many people by their silence have voted in favor of the 3

3   percent recommendation.

4        What we have received are three objections.  Your

5   Honor is aware, of course, of all of them.  I won't go through

6   them in detail, but suffice it to say that the first two, the

7   S&P P&S are people who have settled with the trustee and

8   therefore have really no stake in this proceeding other than

9   ultimately the outcome of a distribution based on that

10  settlement.

11       The other people are another individual who will

12  actually benefit from a 3 percent as opposed to 9.  Both of

13  those individuals are represented by Becker and Poliakoff.  And

14  in both situations, they would both be better off with a 3

15  percent distribution than they would be with a 9, and yet they

16  are objecting.

17       The others are people represented by the Loeb and Loeb

18  firm, the Aufzien objections.  Those are individuals who are

19  net winners that have no standing whatsoever here in the sense

20  that they're not going to receive any distribution here.  The

21  claims have already been denied, and the only thing they've

22  done here today is join in the objections of Mrs. Chaitman.

23       So arrayed against the trustee's application here this

24  morning, Your Honor, is what we believe to be a very weak,

25  unsupported position that there should be something other than

08-01789-cgm   Doc 5014   Filed 08/27/12   Entered 08/31/12 13:19:40   Main Document
MADOFF; SIPC, SECURITIES INVESTOR PROTECTION VS. BERNARD L. MADOFF INVESTMENT SECURITIES, LLC
Pg 8 of 24

Page 8

1  3 percent, which has been recommended by the trustee.  In the

2  context in which we are operating here today, 3 percent we

3  believe is a generous reserve based upon the fact that what is

4  occurring throughout the world in terms of interest rates when

5  you can only get less than a 1 percent return on a T-bill.  In

6  many, many other instances, you cannot invest money anywhere

7  close to that.

8         We've examined and gone through the history of this,

9  and it will come out during the course of the proceedings that

10  are about to start next week, that in fact no matter how you

11  calculate this we are being very, very conservative with our 3

12  percent recommendation to Your Honor.  So we would recommend

13  here this morning that the trustee be authorized to make the

14  allocation, as has been laid out in our application, and

15  secondly, that that application include within it a 3 percent

16  reserve.

17         Thank you, Your Honor.

18         MR. BELL:  Good morning, Your Honor.  One thousand

19  three hundred and forty-six days ago, Judge Stanton signed the

20  protective order on SIPC's application to appoint Irving Picard

21  trustee and to remove the BLMIS Liquidation proceeding to this

22  Court.  In those 1,346 days the trustee has collected or agreed

23  or been approved to collect over $9.1 billion.  He has

24  distributed 335.5 million.  That is an average collection of

25  about 6.7 -- average daily collection of about $6.9 million

MADOFF; SIPC, LIBR v. MADOFF INVESTMENT SECURITIES, LLC

1   that have, but for the $335.5 million, not gotten to the victim

2   net losers here.

3        Counsel for the limited objectors has been an obstacle

4   in the past to getting money to the net losers here.  In

5   January 2011, this Court approved the Picower settlement.

6   Counsel, with others, objected at that hearing and filed an

7   appeal.  It took 582 days for the trustee to get possession of

8   that $5 billion, which fortunately is included in this proposed

9   distribution to the victim net losers.

10       The trustee's motion is an effort to distribute funds

11  to net loser claimants, who are still without 1,346 days later

12  the funds they entrusted to Bernie Madoff.  Who really can

13  object to such a wonderful event?  People have received all

14  their principal back, like the Aufziens, and other people's

15  money, and a number of the clients of the counsel for the

16  limited objectors.

17       Counsel for the limited objection, who represents both

18  net winners and net losers, represents both net winners and net

19  losers.  Based on representations in court papers filed by said

20  counsel, SIPC estimates counsel represents 129 net losers who

21  will be injured by over $22 million if this Court accepts

22  counsel's 9 percent reserve.

23       More than three years ago in this Court, SIPC raised

24  such an inherent conflict by that counsel to represent net

25  winners and net losers.  Said counsel also has stated in

MADOFF SIPE; SECURITIES INVESTOR PROTECTION v. BERNARD L. MADOFF INVESTMENT SECURITIES, LLC

                                                              Page 10

1    testimony to Congress -- may I approach with that testimony,

2    Your Honor?

3              THE COURT:  Sure.

4              MR. BELL:  Said counsel has stated in testimony to

5    Congress at the red tab that the constant dollar approach posed

6    by the United States Securities and Exchange Commission in its

7    papers to this Court on net equity has no basis in laws, a

8    position with which SIPC agrees.  But counsel also has

9    attacked, and that's the green tab, SIPC and the trustee for

10   not promptly getting money to the net losers, the victims here.

11             What is counsel now proposing to do but move from a 3

12   percent to a 9 percent reserve at a cost of $934 million,

13   almost a billion, to the net losers on a flimsy theory, which

14   at least we know the three -- the constant dollar, according to

15   her in her testimony to Congress, has no basis in law based on

16   the SIPA statute and delay the distribution of a billion

17   dollars to the net losers, some of whom counsel represents.

18             SIPC agrees with counsel in her congressional

19   testimony that constant dollar has no basis in law, but for

20   purposes of getting dollars to the net losers, SIPC has agreed

21   with the trustee to a 3 percent reserve to get $2.427 billion

22   to the net losers.  We support the trustee's motion, and we

23   hope the Court could enter an order accordingly.

24             Thank you, Your Honor.

25             MS. GORCHKOVA:  Good morning, Your Honor.  July

MADOFF; SIPC; BERNARD L. MADOFF INVESTMENT SECURITIES, LLC

Page 11

1   Gorchkova from Becker, Poliakoff.  We represent P&S Associates,

2   S&P Associates and Anne Del Casino.

3        We along with other BLMI claimants posit that we are

4   entitled to 9 percent interest on the investments that were

5   made.  That amount is in compliance with federal securities law

6   and New York State law, which provides for a 9 percent interest

7   rate.  The trustee proposes a 3 percent interest rate to be

8   held in reserve with respect to the issue of time-based damages

9   issue in this motion.  That amount, however, is insufficient in

10  light of the fact that it is our position that we are entitled

11  to 9 percent.  The issue of how much or if any amount BLMI

12  class members are entitled to is subject to a motion, the

13  briefing for which is before Your Honor next week.

14       In this motion, the trustee, acknowledging the fact

15  that an appeal from this order may preclude any distribution

16  whatsoever, indicated and represented to the Court, along with

17  all the other -- every other BLMI customer, that to the extent

18  there is an objection to a 3 percent proposal he will set the

19  reserve at 9 percent or a lower amount greater than 3 percent

20  agreed upon by the parties.

21       THE COURT:  That's in the face of a threatened appeal.

22       MS. GORCHKOVA:  I am not sure that there was any

23  threat of an appeal when that paper was filed.  We have

24  indicated that we will ask for a stay and appeal the ruling.

25  However, that was a representation made by the trustee's office

MADOFF; SIPC; IRVING H. PICARD vs. BERNARD L. MADOFF INVESTMENT SECURITIES, LLC

Page 12

1    in their opening papers prior to any discussions.

2            THE COURT:  So the parties have been negotiating over

3    a settlement percentage based upon the threat of an appeal.

4            MS. GORCHKOVA:  Well, we requested in light of the

5    fact that --

6            THE COURT:  Because that's a fact, isn't it?

7            MS. GORCHKOVA:  That is not a fact.

8            THE COURT:  Oh, okay.

9            MS. GORCHKOVA:  I deny that.

10           In light of that representation, we request that the

11   Court merely require the trustee to hold him to his word and

12   set a reserve of 9 percent.  The issue of how much interest, if

13   any --

14           THE COURT:  Your group is not willing to take anything

15   less of a percentage?

16           MS. GORCHKOVA:  We conferred earlier this morning in

17   an attempt to reach an agreement, and we were able to reach an

18   agreement at 5 percent.  I do not have authority at this time

19   to accept any amount lower than a 5 percent reserve.

20           The issue of whether BLMI's customers are entitled to

21   interest and what that interest should be should be

22   appropriately adjudicated by the district court.  We have filed

23   a motion to withdraw the reference as to that issue.  It

24   involves -- the determine of that issue involves an interplay

25   between SIPA and the trustee's position that it does not

MADOFF; SIPC; BERNARD L. MADOFF INVESTMENT SECURITIES, LLC

Page 13

1    provide for any interest and federal securities law, which

2    entitled an investor -- a defrauded investor to interest, as

3    well as New York State laws.

4        Lastly, I want to point out that the 30 -- 3 percent

5    that's proposed by the trustee is arbitrary.  There is no basis

6    for it.  There is no evidence for how that number is derived or

7    what effect it would have.

8        In light of that, we respectfully request that Your

9    Honor require the trustee to set forth a 9 percent reserve so

10   that the parties can properly and fully brief the issue that is

11   subject to a different motion that's not yet pending.  Thank

12   you.

13       THE COURT:  Thank you.

14       MS. MINOFF:  Good morning, Your Honor.  My name is

15   Debra Minoff from Loeb and Loeb, and we represent the Aufzien

16   family.  Our clients are Alan and Norma Aufzien.  They are not

17   institutional investors.  They actually are individuals that

18   were early long-time investors in the Madoff fund, invested

19   $300,000 in 1993 and have only taken out $50,000 more above

20   their deposit, and just wanted to state that for the record to

21   demonstrate that it's not just institutional firms that are

22   seeking to request the reserve to be 9 percent.

23       As set forth in our joinder to Ms. Chaitman's

24   objection to the trustee's motion, we request that the trustee

25   reserve 9 percent rather than an arbitrarily reached number of

MADOFF; SIPC; SIPC; BERNARD L. MADOFF INVESTMENT SECURITIES, LLC

Page 14

1   3 percent.  In the absence of case law determining what

2   interest rate should apply, we request that the Court allow a

3   reserve of 9 percent until there has been a full evidentiary

4   hearing and the merits can be addressed by both on the parties.

5        Further, we also require -- request that the -- we

6   also just simply request that the Court be willing to honor the

7   trustee's -- we had inferred from the trustee's motion and

8   earlier statements that they would agree to a 9 percent reserve

9   if there were any objections.  So therefore, we just would like

10  to hold off for the month until there has been a full hearing

11  -- briefing on the merits as the schedule for briefing is

12  already teed up.

13       Thank you.

14       MR. SHEEHAN:  Go right ahead.  Go right ahead, Mr.

15  Levy.

16       MR. LEVY:  Good morning, Your Honor.  Richard Levy of

17  Pryor Cashman.  Your Honor, I represent a group of customer

18  defendants in adversary proceedings as well as other customer

19  claimants in the case.

20       I rise to advise the Court that contrary to the

21  dispute that the parties have talked about where there is one

22  limited matter which there is an agreement between the trustee

23  and parties I represent and similarly situated parties, and

24  that is given that the scheduling of the substantive

25  proceedings on the time-based damages motion abides a decision

MADOFFMADOFF; SIECURIMADOFF AND OFADOFF INVESTMENT SECURITIES, LLC

Page 15

1   by Your Honor next week and subsequent briefing on the actual

2   issue of whether or not there is any entitlement to time-based

3   damages and if so, the basis and amount.

4           Mr. Sheehan's office and I have reached an agreement,

5   which is embodied in paragraph 13 of the trustee's reply, on

6   language to be included in the order today.

7           THE COURT:  I am well aware of it.

8           MR. LEVY:  I just wanted to make sure, Your Honor,

9   that you were aware of the fact that we had agreed on that and

10  that that is -- the understanding is that the decision today

11  will have no impact substantively on the proceedings to follow

12  before Your Honor.

13          THE COURT:  That is correct, and that would apply to

14  all the parties, including Ms. Chaitman's clients.

15          MR. LEVY:  I understand, Your Honor, just wanted to

16  make sure that our agreed language is satisfactory to the Court

17  and finds its way into the order.

18          THE COURT:  It is indeed satisfactory to the Court.

19          MR. LEVY:  Thank you, Your Honor.

20          MR. SHEEHAN:  Very, very briefly, Your Honor, if I

21  may, with regard to the issue of whether or not we were

22  negotiating in the face of the threat of an appeal, that's

23  absolutely true.  In fact, if you read our application, we

24  point out in paragraph 22, if the trustee is forced to submit a

25  9 percent order.  In other words, what we were trying to

MADOFF, SIPC, SECURITIES AND ALTERNATIVE INVESTMENT SECURITIES, LLC

Page 16

1    achieve here today wasn't any recognition of the validity of

2    the objection to 3 percent but trying to avoid the consequences

3    of an appeal.

4         However, what we also did, which is what we would urge

5    Your Honor to do here this morning, we gave the alternative.

6    The alternative was or as so ordered by the Court.  In other

7    words, we were very satisfied to have Your Honor call us here

8    this morning, but if we could reach an accommodation, we would

9    try to.  In the absence of an accommodation, we would prefer

10   obviously for Your Honor to rule and we would recommend that it

11   be the 3 percent.

12        Lastly, Your Honor, I should put on the record that

13   there will be, just so that everyone is aware of it and I want

14   to make it public, that there is a record date that we'll have

15   to establish with regard to a cutoff for the distribution, and

16   the trustee has determined that that date should be September

17   12th.  So I just want to put that on the record if I may.

18        That's all we have, Your Honor.

19        THE COURT:  Do you want to be heard?

20        MS. GORCHKOVA:  Not at this time, no.

21        THE COURT:  Well, I'm just curious.  You do represent

22   both winners and losers, and apparently, from the record here,

23   there are assertions that some of your clients fare better

24   under the trustee's proposal than under your 9 percent

25   proposal.  Do you want to take that up?

MADOFF; SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES, LLC

Page 17

1        MS. GORCHKOVA:  I don't have the specifics of Ms.

2    Casino's investment.  I know that, as Mr. Sheehan pointed out,

3    P&S and S&P have settled so -- and an argument was made that

4    they have no interest and should not be part of this objection.

5    It is my --

6        THE COURT:  Well, if it's true that some of your

7    clients fare better under the trustee's proposal than under

8    your 9 percent, I'm just curious as to whether your clients are

9    fully aware of those positions because it is interesting that

10   the firm represents people across the board.  And it does seem

11   to me to be somewhat inconsistent.  Of course, it's not a

12   problem if they're informed.

13       MS. GORCHKOVA:  It's not -- we're not --

14       THE COURT:  Are your clients informed of the results

15   of the positions that are taken by each side?

16       MS. GORCHKOVA:  To the extent that our clients

17   participate, I am sure they are informed, Your Honor.

18       THE COURT:  Very well.

19       MS. GORCHKOVA:  We're not with --

20       THE COURT:  Thank you.  Do you have anything else?

21       MS. GORCHKOVA:  The only thing I would add is that

22   we're not requesting that money be taken away from net losers.

23   That's not what we're trying to do here.  We are simply asking

24   --

25       THE COURT:  It was just a simple statement that

1    apparently is factual unless I see or hear otherwise that's in

2    the papers that some of your clients fare better under the

3    trustee's 3 percent proposal than under your 9 percent

4    proposal.

5              MS. GORCHKOVA:  I have not seen the specifics of what

6    clients those are and I am not aware of that.

7              THE COURT:  Very well.  Is there anything else?

8              The question before the Court pertains to the amount

9    the trustee has to set aside from the distribution as a reserve

10   for upcoming litigation regarding whether customers are

11   entitled to an increase of their claims based upon the time

12   that elapsed while their monies were deposited with BLMIS.

13   We'll call that the time-based damages issue.

14             The trustee seeks to set a reserve of 3 percent,

15   permitting a distribution of $2.427 billion to customers with

16   allowed claims or 33.541 percent of those claims.  A few, and I

17   emphasize the word few, objectors request a reserve of 9

18   percent, which is the highest rate to which objecting claimants

19   have asserted they are entitled and which would limit the

20   trustee's distribution to $1.493 billion or 20.56 percent of

21   each customer's allowed claim.

22             While the Court refrains from addressing the merits of

23   the time-based damages issue, it will not countenance leverage

24   based upon considerations of appellate procedures in connection

25   with whatever the Court does.  Parties have every right to

08-01789-cgm   Doc 5014   Filed 08/27/12   Entered 08/31/12 13:19:40   Main Document
Pg 19 of 24
MADOFF; SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES, LLC

Page 19

1    appeal any time they want.  But to the extent that that is

2    leverage in conjunction in -- connection with a Court's

3    determination of a matter on the merits, it is not something

4    that the Court takes into account, nor should it.

5            So a holdback reflecting the astronomical rate of 9

6    percent, which is the extreme outer bounds of interest rates

7    potentially applicable under the New York Civil Practice Law

8    and Rules and which may not even be relevant here, causes me to

9    find after reviewing all of the submissions, including that of

10   SIPC, that the trustee's 3 percent middle-of-the-road position,

11   which takes into account the hardship to victims through a

12   continued holdback of their property, is appropriate.

13   Accordingly, the trustee's motion is granted.

14           Over the past three and a half years, hundreds if not

15   thousands of lawyers have submitted thousands if not millions

16   of pages of briefing in connection with litigation regarding

17   the litany of issues emanating from the largest Ponzi scheme in

18   history.  This deluge of litigation has perhaps at times

19   obfuscated the simple fact that the overarching purpose of this

20   SIPA proceeding is to expeditiously alleviate the plight of

21   customers who suffered losses at the hands of Madoff.  See in

22   re Bernard Madoff, 654 F.3d 229, 240, the Second Circuit, 2011,

23   holding, "SIPA is intended to expedite the return of a customer

24   property," unquote.

25           This fact cannot be overlooked here.  However, where

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 20

1    the Court is -- this Court is -- this fact cannot be overlooked

2    here.  However, where the Court is plainly confronted with the

3    choice of permitting a distribution of either 1.5 or 2.4

4    billion dollars to these victims, the difference between these

5    quantities for individuals who have waited patiently for the

6    last three and a half years for compensation for their losses

7    cannot be overstated.  Indeed, that difference of nearly $950

8    million is almost three times the total sum that has been

9    distributed via the customer fund since its inception.  Even

10   the amount of 5 percent, which from the colloquy here today

11   might prove acceptable to the objectors, results in an amount

12   equal or almost equal to the amount of the first distribution

13   to victims who have been waiting years for that.  So that while

14   thousands of potential objectors recognize the magnitude of

15   this difference and elected not to object to the instant

16   motion, the handful of litigious parties, only one of whom

17   apparently is a net loser, contest that the distribution should

18   be capped at $1.5 billion in order to provide a larger reserve

19   should these parties who speculate that their theories

20   regarding the time-based damages issue will prove meritorious.

21   The Court declines to deny nearly $1 billion to more than 1,000

22   Madoff victims who have already lost so much just to cover a

23   litigation-based contingency that may or may not transpire.

24        It's worth noting that one of the objectors is

25   actually worse off under the higher time-based damages reserve

MADOFF, SIPC; SECURITIES INVESTOR PROTECTION v. MADOFF INVESTMENT SECURITIES, LLC

1    rate.  And I'm further unpersuaded by the objections from the

2    net winners who have already benefited from receipts of other

3    customers' funds and who continue to benefit at their expense

4    by holding up the distribution of funds that are teed up for

5    distribution to other customers.

6            Finally, the objections that are unrelated to the

7    reserve amount are I find frivolous, and they were set forth by

8    individuals who I've already found previously lack standing as

9    their claims have been denied and accordingly overruled.  As

10   such, to reiterate, the distribution motion is granted.  The

11   trustee shall maintain a 3 percent reserve for the time-based

12   damage issue.

13           MR. SHEEHAN:  Thank you, Your Honor.

14           MR. BELL:  Thank you, Your Honor.

15           THE COURT:  Submit an appropriate order.

16           MR. SHEEHAN:  Yes, we will, Your Honor.  Thank you

17   very much.

18           MS. GORCHKOVA:  We request that the distribution be

19   stayed pending a review by the district court.

20           THE COURT:  Denied.

21           MS. GORCHKOVA:  Thank you, Your Honor.

22           THE COURT:  Unless you want to put a billion-dollar

23   bond, then I would grant it.

24           MS. GORCHKOVA:  No, I don't have authority to put up a

25   billion-dollar bond.

Page 22

1          THE COURT:  You don't have authority apparently to

2     deal with a lot of things this morning, including what I

3     considered to be an appropriate compromise.

4          MS. GORCHKOVA:  Noted, Your Honor.

5          MR. LEVY:  Thank you, Your Honor.

6        (Whereupon these proceedings were concluded at 10:53 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 23

1                        I N D E X

2

3                          RULINGS

4                                              Page      Line

5   Motion on Order Approving Second            19        13

6   Allocation of Property to the Fund of

7   Customer Property and Authorizing Second

8   Distribution to Customers -- Granted

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

1

### CERTIFICATION

2

3          I, Sheila G. Orms, certify that the foregoing is a

4     correct transcript from the official electronic sound recording

5     of the proceedings in the above-entitled matter.

6

      Dated:  August 23, 2012

7

8     **Sheila**    Digitally signed by Sheila Orms
                     DN: cn=Sheila Orms, o, ou,
                     email=digital1@veritext.com,
9     **Orms**      c=US
                     Date: 2012.08.27 17:31:38
                     -04'00'
10

11     Signature of Approved Transcriber

12

13

14

      Veritext

15

      200 Old Country Road

16

      Suite 580

17

      Mineola, NY 11501

18

19

20

21

22

23

24

25