1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   CASE NO 08-01789-brl

4   - - - - - - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6   SECURITIES INVESTOR PROTECTION CORPORATION,

7                    Plaintiff-Applicant,

8       - against -

9   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC., et al

10                  Defendant.

11  - - - - - - - - - - - - - - - - - - - - - - - - -x

12  In re:

13  BERNARD L. MADOFF,

14                  Debtor.

15  - - - - - - - - - - - - - - - - - - - - - - - - -x

16

17                U.S. Bankruptcy Court

18                One Bowling Green

19                New York, New York

20                September 5, 2012

21                10:04 AM

22  B E F O R E :

23  HON. BURTON R. LIFLAND

24  U.S. BANKRUPTCY JUDGE

25  ECRO - EMMANUEL

1    Adversary proceeding: 08-01789-brl Securities Investor

2    Protection Corporation v. Bernard L. Madoff Investment

3    Securities, LLC, et al

4

5    (cc-4920) Motion for Order Scheduling Hearing on Trustee's

6    Motion Affirming Denial of Time-Based Damages Adjustment to

7    Customer Claims

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Shelia Orms

Page 3

1    A P P E A R A N C E S :

2    BAKER & HOSTETLER

3         Attorneys for Trustee Irving H. Picard

4         45 Rockefeller Plaza

5         New York, NY 10111

6

7    BY:   DAVID J. SHEEHAN, ESQ.

8         SEANNA BROWN, ESQ.

9

10   SECURITIES INVESTOR PROTECTION CORPORATION

11        805 15th Street N.W.

12        Suite 800

13        Washington, D.C. 20005

14

15   BY:   KEVIN H. BELL, ESQ.

16

17   WEIL, GOTSHAL & MANGES, LLP

18        Attorneys for Blue Star Investors, LLC

19        700 Louisiana

20        Suite 1600

21        Houston, Texas  77002-2755

22

23   BY:   ALFREDO R. PEREZ, ESQ.

24

25

Page 4

1

2  SCHULTE ROTH & ZABEL LLP

3        Attorneys for Objectors

4        919 Third Avenue

5        New York, NY  10022

6

7  BY:   MARK RICHARDSON, ESQ.

8        MARCY RESSLER HARRIS, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2         THE COURT:  Be seated.

3         THE CLERK:  SIPC v BLMIS.

4         (Pause)

5         MR. SHEEHAN:  Good morning, David Sheehan from Baker

6    Hostetler for the Trustee.

7         MR. BELL:  Kevin Bell with -- for the Securities

8    Investor Protection Corporation.

9         MS. HARRIS:  Good morning, Marcy Harris from Schulte

10   Roth & Zabel for the objectors.

11        MR. RICHARDSON:  Mark Richardson, Schulte Roth &

12   Zabel.

13        MR. PEREZ:  Alfredo Perez for Weil Gotshal for one of

14   the objectors, Your Honor.

15        THE COURT:  Yes.

16        MR. SHEEHAN:  Your Honor, this is the return date of

17   the trustee's motion for a scheduling order with regard to what

18   we're terming the time based issue, referred by the SEC as

19   constant dollar.  That is, whether or not there is, as part of

20   their net calculation an interest factor that should be part of

21   that analysis.  And our position, obviously, is that it should

22   not.

23        However, that issue is for another day.  Today we're

24   here to talk about the scheduling of that.  And we have a few

25   objections to even that application.  Two of them I don't think

Page 6

1    we need to dally too long with, the Serabians (ph) who have

2    appeared here many times without standing, whose claim has been

3    expunged, and which we believe should be dismissed out of hand

4    by the Court.  We also have the --

5            THE COURT:  Are the Serabians here or represented?

6            (No response)

7            MR. SHEEHAN:  Thank you, Your Honor.

8            THE COURT:  The answer is no.

9            MR. SHEEHAN:  And then Mr. and Mrs. Chambers wrote a

10   letter which we filed with the Court, they'd sent it to us,

11   which is, in a way, an objection, but again I don't believe

12   they're really rejecting to the notion of an interest factor.

13   They think that there should be one.  They agreed with us on

14   the three percent, and with Your Honor's ruling, of course.

15   But that is noted.  I don't believe that stands in the way of

16   ruling in the trustee's favor this morning.

17           One objection, however, that we do need to address is

18   the HH1 objection.  And I'd like to, if I could, just because I

19   know Your Honor's familiar with the papers, just to sort of

20   talk about how we got here.  Because it's -- I think by going

21   through that history it reveals the outcome of what should

22   happen here.

23           One is this, is we had a bar date.  It's called July

24   2009, there was a motion made, Your Honor is fully familiar

25   with it, by those who were concerned that they did not want to

Page 7

1     file a claim.  The trustee had already announced what his

2     position was, is that it was money in and money out, and that

3     was the way we were going to determine customers claims.

4          And Your Honor at that time recalled -- I recall Your

5     Honor saying, well, it's a Hopson's choice and one you're going

6     to have to make, whether you're going to file a claim or not.

7     HH1 made a decision not to file a claim, a tactical decision

8     not to file that claim, not to participate as a customer in

9     these proceedings, or as a customer complainant.

10         So now later on what happens is, they do get sued, and

11    there's an avoidance action filed by the trustee, because they

12    in fact are net winners, and receive fictitious profits which

13    need to be returned to the customer fund.

14         At that time, there was a flurry of activity in the

15    district court that Your Honor has a vague familiarity with in

16    terms of antecedent debt, and a host of other issues that are

17    being decided by Judge Rakoff.  Another tactical decision is

18    made.  That decision is made to join into those proceedings and

19    move for a withdrawal of the reference and is granted, with

20    regard to the issue of antecedent debt.  And that issue is now

21    currently before Judge Rakoff.  It's been briefed and argued

22    and awaiting decision.

23         Judge Rakoff, along the way, had also decided that he

24    was not going to deal with the issue of constant dollar, as he

25    called it.  He saw it as a customer issue, one that within the

Page 8

1    four corners of the statute rightly belong before Your Honor.

2    A decision that Your Honor should arrive at after reviewing the

3    statute and reading the briefs and hearing from all sides.

4         So what we have here this morning is an attempt by HH1

5    to suggest to Your Honor, well, not withstanding those two

6    tactical decisions that we made, we're not liking the outcome.

7    Because the way you framed the motion, trustee, you said that

8    since we can't file a claim we can't participate here.  Well,

9    they shouldn't.  They're part of the customer fund.  They're

10   not a customer claimant.  They made a tactical decision not to

11   participate.  We didn't make that decision, they did.

12        Then what happened is, is when they found out that

13   Judge Rakoff wasn't going to take into account --

14        THE COURT:  Other similarly situated have filed

15   claims; is that correct?

16        MR. SHEEHAN:  That's correct, Your Honor.  Many, many

17   people similarly situated have filed claims.

18        THE COURT:  Including some of the HH1 --

19        MR. SHEEHAN:  Indeed, Your Honor.  Some of the HH1

20   participants --

21        THE COURT:  Represented by counsel here this morning.

22        MR. SHEEHAN:  Correct, Your Honor, that's absolutely

23   right.

24        So rather than persist, Your Honor, let me just go

25   right to the bottom line.  Put bluntly, HH1 just does not have

Page 9

1    standing here.  What we have is an issue of cost of dollar

2    rightly decided by Judge Rakoff that should be decided by Your

3    Honor, it's rightly here, it's your decision.

4            THE COURT:  Well, some members of the HH1 do have

5    standing here.

6            MR. SHEEHAN:  And they do.  And they indeed will be

7    heard, and they will participate in this proceeding.  So, Your

8    Honor, we would obviously maintain that the HH1 participant

9    here should not have standing and should not be able to

10   participate.

11           One last thing, it's administrative, I wanted to alert

12   Your Honor to it.  As Your Honor knows, HH1 also had concerns

13   with our scheduling.  We worked out something we believe

14   adjusts everything by three weeks.  Later on, I can put it on

15   the record for Your Honor and see if Your Honor is amenable to

16   that suggested change.  Thank you, Your Honor.

17           MR. BELL:  Your Honor, the bar date's ineluctable.  If

18   you didn't file a claim, you lost, you said that in February of

19   '09 when we had an issue before you and you talked about

20   Hobson's Choice.  Both the Second Circuit and the Tenth Circuit

21   have so ruled.  Some HH1 claimants are a part of this motion,

22   others are not.  And that's -- SPIC supports the trustee's

23   position.  Thank you, Your Honor.

24           MS. HARRIS:  Good morning, Your Honor.

25           THE COURT:  Good morning.

Page 10

1          MS. HARRIS:  I'm here on behalf of -- the client is

2     HHI No. 2 Trust, that's one of the clients that we're here for

3     today and there are other clients.  HHI-2 did file a claim, in

4     fact, but there are other clients that did not.

5          But the issue here today is not as the trustee

6     presents it.  It doesn't have to do with the bar date and

7     claims.  The issue here is how to calculate net equity, and as

8     Your Honor knows, several years ago, the Court dealt with that

9     issue and the Second Circuit affirmed this Court's decision in

10    a decision that said, how do you calculate net equity.

11         The issue today and that we seek to brief on the next

12    cycle is whether the net equity calculation should be adjusted

13    for a constant dollar adjustment, whether the time value of

14    money should be included in that calculation.  It's not

15    strictly a customer claim issue.  It transcends those who filed

16    claims.  It's a customer net equity issue.

17         SIPC requires the trustee to determine the net equity

18    of each and every customer.  Some customers have positive net

19    equity and those are the ones who may be entitled to recover

20    from SIPC and from the pool of customer property.  Other

21    customers have negative net equity, and those are the customers

22    whom the trustee has brought avoidance action claims against,

23    and seeks to recover their transfers.

24         The question that the Court will address in the next

25    briefing cycle is whether net equity for all customers,

Page 11

1    positive net equity and negative net equity should be adjusted

2    for inflation or put on the constant dollar adjustment, so that

3    regardless of when you became an investor in Madoff, you're

4    treated equivalently.  That's the issue here.  It's not a bar

5    date issue.

6           And the avoidance action defendants, those who have

7    been sued by the trustee and face avoidance claims have real

8    actual standing to be heard in this court on the issue of how

9    to calculate net equity.  Because if the Court determines how

10   to calculate net equity and they're not allowed to participate,

11   their rights may be permanently taken away and they may be

12   irreparably harmed.

13          So they're here today not because they filed or didn't

14   file claims, but because they are customers for whom an equity

15   determination has been made, that's how the trustee decided how

16   much to seek to avoid from them.  And the issue that remains to

17   be briefed on net equity is whether the net equity calculation

18   should be adjusted to take into account the time value of

19   money.

20          The issues relating to calculation of time value --

21   calculation of net equity and whether it should or should not

22   include an adjustment for the time value of money is not an

23   issue that's being addressed in the district court.  The

24   district court judge refused to hear that issue.  He said it's

25   probably a bankruptcy court decision.  That's why the trustee

Page 12

1    has sought to have the calculation determined by this court on

2    a briefing schedule that we're prepared to agree to.  But it's

3    not the same issue as the antecedent debt issue that has been

4    heard and will be determined in the district court.

5         So the suggestion that it's the same issue or that

6    there's going to be confusion or a risk of inconsistent

7    decisions to the courts is not correct.  The issue has been --

8    they're separate issues and we're not seeking to address issues

9    that have been before the district court judge and in the

10   district court, neither the papers, the litigants or the Court

11   agreed to address the issue that's before this Court.

12        I just want to point out also that previously the

13   trustee himself has acknowledged that the methodology for

14   calculating net equity affects all customers, not simply those

15   with positive net equity who may have filed customer claims.

16   The trustee in his words said, and I quote, "The trustee's

17   duties are to the estate and the customer class as a whole.

18   Unless the net investment method is used to calculate both net

19   equity claims and avoidance amounts of principal and fictitious

20   profits, SIPC and the Bankruptcy Code would apply unequally to

21   BLMIS account holders and would contravene the Second Circuit

22   net investment ruling.  Nothing in the Bankruptcy Court,

23   SIPC --"

24        THE COURT:  Correct me if I'm wrong, you've moved to

25   withdraw the reference on the avoidance action; is that

Page 13

1   correct?

2          MS. HARRIS:  On certain issues relating to the

3   avoidance actions.

4          THE COURT:  Right.  And that's pending before Judge

5   Rakoff, or that's already been determined, he's withdrawn the

6   reference.

7          MS. HARRIS:  As to certain issues, but not as to the

8   constant dollar issue which is the issue that's been briefed.

9          THE COURT:  But he's withdrawing the reference with

10  respect to the avoidance actions.  I don't have your avoidance

11  action here; is that correct?

12         MS. HARRIS:  I didn't hear you, I'm sorry.

13         THE COURT:  I don't have your avoidance action here,

14  am I correct?

15         MS. HARRIS:  He only -- I don't believe that is

16  correct.

17         THE COURT:  He has to make a determination on that,

18  and I should respect that, and I should wait and abide by that.

19         MS. HARRIS:  If that's the Court's determination, then

20  we would ask to stay briefing on an issue that affects

21  avoidance action defendants.  Judge Rakoff has indicated that

22  he will rule on all of the Madoff matters pending before him he

23  believes by year end.  It's already September and the briefing

24  schedule that's been proposed will put this matter to hearing

25  in January.

Page 14

1          THE COURT:  And he's referred a very narrow issue

2     before me, and that's the constant dollar issue.

3          MS. HARRIS:  That is exactly the issue that we're --

4          THE COURT:  No question about that.

5          MS. HARRIS:  The constant dollar issue is the --

6          THE COURT:  Okay.

7          MS. HARRIS:  -- issue that we seek to address.

8          THE COURT:  Yes.

9          MS. HARRIS:  And have the Court address.

10          THE COURT:  Do you have anything else?

11          MS. HARRIS:  I didn't hear you?

12          THE COURT:  Do you have anything else?

13          MS. HARRIS:  I just wanted to address the briefing

14     schedule that will be proposed, and that is, we would like an

15     opportunity to respond to any position that the SEC may take,

16     and I don't think that was part of the briefing that was going

17     to be proposed.

18          THE COURT:  The SEC hasn't taken any position; is that

19     correct?

20          MR. SHEEHAN:  Not that -- with regard to this

21     application here, but as Your Honor knows, during the net

22     equity briefing --

23          THE COURT:  I understand that, yes.

24          MR. SHEEHAN:  Right.  But as of today, no, they have

25     not.

Page 15

1           THE COURT:  That's been an inside Washington affair

2    and not a Bankruptcy Court matter.

3           MR. SHEEHAN:  Refer to Mr. Bell to all things inside

4    Washington.

5           MR. BELL:  Your Honor, the Commission has told in

6    light of certain happenings in their staffing, the Commission

7    is reconsidering its position on constant dollar some time in

8    the near future.  They've --

9           THE COURT:  They've been doing that consideration

10   dance for a number of months, if not a year.

11          MR. BELL:  We await the phone call.

12          THE COURT:  Very well.

13          MR. PEREZ:  Your Honor, Alfredo Perez.  I don't have

14   anything to add to what Ms. Harris said, but I will make the

15   practical comment that just for purposes of judicial

16   efficiency, it might be in the Court's interest to have both

17   the preference defendants as well as the customers who filed

18   claims arguing this issue before the Court, as opposed to kind

19   of doing it seriatim as the case may be.

20          MS. HARRIS:  And, Your Honor, may I just be heard on

21   one more issue?

22          I just want to point out that the avoidance action

23   defendants, notwithstanding having removed and sought

24   withdrawal and remove the action to federal court in the

25   district court, there's still parties in this court, in this

Page 16

1    proceeding.  They still have to get adjournments from the

2    trustee to file answers or motions to dismiss against the

3    pending avoidance actions --

4            THE COURT:  I assume that collegially --

5            MS. HARRIS:  -- that have been brought.

6            THE COURT:  -- you continue to cooperate with each

7    other until there's some definitive word from any of the

8    courts.

9            MS. HARRIS:  My point, though, is that there's still

10   defendants before this court.  Otherwise, they wouldn't have to

11   keep getting extensions.  The matter wouldn't be on the

12   schedule in this court.  And so either we would ask that the

13   Court defer hearing briefing until after the district court

14   rules, and then there's the matter can be remanded.  There's no

15   issue.

16           THE COURT:  The district court has remanded a specific

17   issue for me to determine and --

18           MS. HARRIS:  This is --

19           THE COURT:  -- there's no reason that I should counter

20   that by just sitting back and playing ping pong with the

21   district court.  This is an issue which has been placed

22   squarely before me, and the parties are geared up for it.

23           MS. HARRIS:  But all of the parties are geared up for

24   it.

25           THE COURT:  Do you have anything else, ma'am?

Page 17

1            MS. HARRIS:  No, that's it.

2            THE COURT:  Thank you.

3            MR. SHEEHAN:  Nothing further, Your Honor.

4            THE COURT:  Well, despite everything that I've had

5      before me, the first place, let me respond to the -- what may

6      or may not be an objection, that of the Chambers' parties.

7      It's not clear to me whether this letter belonged in connection

8      with the distribution motion or with this particular motion,

9      but I find no particular merit to it at this point in time.  It

10     may be a point of contention when I deal with the matter on the

11     merits, but this is a scheduling hearing.  And essentially, it

12     does not deal with the issue of scheduling.

13           And I agree with the trustee with respect to the -- I

14     guess I can call them a family.

15           MR. SHEEHAN;  The Serabians, Your Honor.

16           THE COURT:  The Serabian family or group for the same

17     reasons, namely standing and also the failure to really address

18     the issues before me by them.  That objection, to the extent it

19     is an objection, and it to the extent it goes to the merits of

20     any determination I have to make and with respect also to their

21     standing, I find that there is no merit to the document they

22     filed and it's overruled.

23           With respect to the main issue before me, I've

24     reviewed all of the papers, and that there may be some overlap

25     in connection with the matters that are pending before the

Page 18

1    district court and here.  Clearly, the matter pending before me

2    is a really narrow one, and if I may be so bold as to

3    paraphrase what I have before me in the most simplistic terms,

4    because as you -- those who practice before me, know that I do

5    adhere to the so-called KISS principle, which is Keep It Simple

6    Stupid in the vernacular.

7          Basically, I have a very simple issue before me, to

8    determine and come down with yes, claims should be based upon

9    the period of time that money was with Bernie Madoff, or no,

10   the claimants are not entitled to an enhancement.  And that

11   basically is the request that the trustee has made as the issue

12   before me.  And I will restrict the briefing to that.

13         I agree that with respect to the HHI group to the

14   extent that there has been a volition not to file a claim and

15   bring the matter before me, that it's not great afoul if they

16   don't take part in the briefing before me, because they are

17   still well represented by the same counsel.  And so the

18   positions that they take with respect to enhancement or not

19   will be articulated and heard.

20         How it plays out before Judge Rakoff, since the matter

21   has been withdrawn with respect to the avoidance action and

22   with respect to the other damage issues that are clearly before

23   him, I am not in any position, nor do I intend to deal with

24   that matter.  It's already -- those matters are already briefed

25   and before him.

Page 19

1              So, folks, what we're dealing with is the very simple

2      issue as I framed it, enhancement or not.

3              MR. SHEEHAN:  Thank you, Your Honor.  The -- I do have

4      an order, Your Honor.

5              THE COURT:  I'll entertain it.

6              MR. SHEEHAN:  Thank you.

7              THE COURT:  I've approved the order.

8              MR. SHEEHAN:  Thank you, Your Honor.  As I said during

9      argument, I wanted to just briefly put on the record the

10     proposed schedule and I have a suggestion that may accommodate

11     the concerns of counsel with regard to the SEC.

12             As I said we moved everything out about three weeks,

13     and obviously I'll provide your clerks with the -- this in

14     writing as well, but the trustee's brief would be due on

15     October 12th, objections a month later on, November 12th.  SEC

16     response, if any, would be November 19th, a week later.  And

17     then trustee's reply would be on December 18th, and the hearing

18     would be on January 10th.

19             My suggestion would be this, depending upon -- as Ms.

20     Harris said, she may or may not want to reply to the SEC, I

21     think we could address at that time, Your Honor, I'd like to

22     not try to build in more time than is necessary here.  You

23     know, we had the reserve, we're trying to get this issue moved

24     forward.  We'd like to keep it.  I think we've moved around

25     these dates enough to accommodate concerns about the Jewish

Page 20

1    holidays, which I think were very appropriate.  So we'd like to

2    stick with this schedule and if we need to adjust it at any

3    point, we can come back to Your Honor.  I know Your Honor's

4    always receptive to hearing counsel with regard to those

5    issues.

6              THE COURT:  Thank you all.  I assume you will

7    cooperate with each other with respect to the scheduling.

8              MR. SHEEHAN:  Thank you, Your Honor.

9              MS. HARRIS:  Thank you.

10   (Proceeding concluded at 10:26 AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 21

1                           I N D E X

2

3                           RULINGS

4                                            Page      Line

5    Motion for Order Scheduling Hearing      17        16

6    on Trustee's Motion Affirming Denial

7    of Time-Based Damages Adjustment to

8    Customer Claims

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 22

1

### CERTIFICATION

2

3          I, Sheila G. Orms, certify that the foregoing is a

4    correct transcript from the official electronic sound recording

5    of the proceedings in the above-entitled matter.

6

     Dated:   September 6, 2012

7

8    Sheila          Digitally signed by Sheila Orms
                      DN: cn=Sheila Orms, o, ou,
                      email=digital1@veritext.com,
9    Orms             c=US
                      Date: 2012.09.07 13:01:08 -04'00'

10

11     Signature of Approved Transcriber

12

13

     Veritext

14

     200 Old Country Road

15

     Suite 580

16

     Mineola, NY 11501

17

18

19

20

21

22

23

24

25