# **EXHIBIT B**

! 033

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,       :

                       Plaintiff,     :

SECURITIES INVESTOR PROTECTION            :       72 Civ. 5112
CORPORATION,
                       Applicant,     :

         -against-                              :

HORIZON SECURITIES, INC.,                 :

                       Defendant.     :

------------------------------------x

       DECISION ON TRUSTEE'S OBJECTION TO
       CLAIM OF CHARON STYX ASSOCIATES

Appearances:

   BURNS, VAN KIRK, GREENE & KAFER, ESQS.,
   By:   ALAN PALWICK, ESQ., and
        GARY M. LACHMAN, ESQ.,
   Attorneys for Trustee

   WACHTELL, LIPTON, ROSEN & KATZ, ESQS.,
   By:   STEVEN M. BARNA, ESQ.,
   Attorneys for Charon Styx Associates

ASA S. HERZOG, BANKRUPTCY JUDGE:

       The trustee herein objects to the claim filed in these proceedings by Charon Styx Associates for the sum of $25,425.00,

on the ground that Charon is not a "customer" within the meaning of §6(c)(2)(A)(ii) of the Securities Investor Protection Act of 1970 [SIPA].

The controlling facts are not in dispute: The debtor, on September 11, 1972, sold 10,000 shares of the common stock of Nutrition People, Inc., [NUTRITION] for which it was a market maker, at $4.00 per share for a total of $40,000 to Charon, a small "hedge fund or mutual fund." The shares of stock were delivered to Charon on September 13, 1972.

On September 19, 1972, Charon agreed to sell the said 10,000 shares of Nutrition back to the debtor at $4-1/4 per share for a net aggregate of $42,375.00. The settlement date for this transaction, as noted on the confirmation of the sale, was 30 days, i.e., October 19, 1972. Charon was using Neuberger & Berman, a broker, as its agent in the transaction, and on October 19, 1972, a messenger from that brokerage firm attempted to deliver to debtor the entire block of 10,000 shares of Nutrition. However, debtor was unable to pay for the stock on that

day and DeFilippo, its president, spoke to Charon and the broker and advised them that the debtor could not accept delivery. The parties then agreed that the shares would be delivered from time to time as debtor was able to pay for it. Accordingly, Neuberger & Berman made four deliveries of 1,000 shares each on October 19, 20 and 25, 1972 and November 2, 1972, against a payment on each of those days of $4,237.50, for a total of 4,000 shares against payment of $16,000.

The remaining 6,000 shares of Nutrition were never paid for and were retained by Charon. Counsel for Charon stipulated: "I would also stipulate that 6,000 shares were taken back and held by Charon Styx." He also stipulated that Charon's claim "does relate to the 6,000 shares" and that "no payment was received for those 6,000 shares."

Based on these facts I must find that Charon is not a "customer" of the debtor within the meaning of SIPA §6(c)(2)(A)(ii). Charon sold the 10,000 shares of Nutrition to the debtor on a delivery against payment basis, as is

clearly disclosed from the letter dated December 29, 1972 from Charon to the trustee, which reads in part:

> ". . . Horizon Securities were unable to pay the full amount due and agreed to pick up from Neuberger & Berman (our prime brokers) 1000 shares each day against payment of $4,237.50. They picked up a total of 4,000 shares against payment of $16,950.00, copies of the advices are enclosed, leaving a balance due us of $25,425.00 representing 6,000 shares."

It is also a fact that none of the remaining 6,000 shares described in said letter were in the debtor's possession on the "filing date."

Section 6(c)(2)(A)(ii) defines customers as persons having claims (on the "filing date") on account of securities

> "received, acquired, or <u>held by the debtor</u> from or for the account of such persons (I) for safekeeping, or (II) with a view to sale, or (III) <u>to cover consummated sales</u>, or (IV) pursuant to purchases, or (V) as collateral security, or (VI) by way of loans of securities by such persons to the debtor. . . ." (emphasis added)

I remarked in <u>SEC, SIPC v. J. S. Salmon Co., Inc.</u>, 72 Civ. 560 (objection to the claim of Galaxy Fund, Inc.), where the facts were almost identical, that although SIPA

5

may not be a masterpiece of clarity, it is clear and unequivocal in this respect: one can be a "customer" only if his property has been "received, acquired or held" by the debtor as of the "filing date." Charon sold securities to the debtor on a delivery versus payment basis and on the "filing date," the 6,000 shares of Nutrition had not been "received, acquired or held" by the debtor. They were, in fact, on that date in the possession of Charon.

The primary purpose of SIPA is to protect public investors by providing funds to cover losses on securities or cash which belong to a customer and which the debtor should have, but failed to, hold for the customer's account on the "filing date." The intent of Congress in enacting SIPA was to protect persons who <u>entrusted</u> property to the debtor. This was clearly not the case in this instance.

Counsel for Chandor suggests that this court misreads the definition of a "customer" in SIPA §6(c)(2)(A)(ii). I think not. The history of SIPA and the entire tenor of the Act clearly shows the Congressional intent to protect the small investor public from losses (to the limited

extent specified) resulting from a failing broker's inability on the "filing date" to deliver cash or stock belonging to the customer. Those having claims for a breach of contract, as is the case here, may participate in the debtor's general estate, but they do not otherwise come within the protection afforded by the Act.

Charon argues that the transaction constituted an open contractual commitment which the trustee was obliged to complete pursuant to SIPA §6(d) which provides:

> "The Trustee shall complete those contractual commitments of the debtor relating to transactions in securities which were made in the ordinary course of the debtor's business and which were outstanding on the filing date. . . ."

But it is clear that the transaction between debtor and Charon was not the open contractual commitment intended by SIPA §6(d) to be completed by the trustee. The House report on SIPA stated that [SIPA §6(d)] is "designed to minimize the disruption caused by the failure of a broker-dealer, precluding the 'domino effect' of such failure. Accordingly the bill requires the trustee to complete all

the debtor's open contractual commitments relating to securities transactions in which a customer had an interest." The section was designed to deal not with all orders placed with the insolvent broker but rather with those involving inter-broker orders which were incomplete on the filing date. 3 Collier on Bankruptcy, 14th Ed., ¶60.91(3), p. 1268.

In SEC v. Aberdeen Securities, Inc., et al. (claim of Seligsohn), 480 F.2d 1121 (3d Cir.), cert. den. sub. nom. Seligsohn v. SEC, 94 S.Ct. 841 (1973), it was held that undertakings involving only the debtor and his customers are not the contractual commitments contemplated by SIPA §6(d). The court said:

> "Our review of the legislative history of the Act and the testimony by various witnesses before committees of both the Senate and the House convinces us that <u>the open contractual commitments covered by §6(d) are those between the debtor and another broker-dealer.</u>
>
> "The securities industry was concerned with the 'domino effect' of the financial difficulties of one broker extending to others with whom he dealt and wished to isolate problems to the one who was insolvent if at all possible. However, there was considerable sentiment in

Congress to limit the protection of the Act to customers and not to extend it to transactions between brokers. The compromise ultimately agreed upon was to provide for completion of interbroker or interdealer transactions only when the interest of a customer on either side was involved.

"<u>If the order by a customer for the purchase or sale of a specific security has been placed by the debtor with another broker and remains uncompleted on the filing date, then the Trustee is required to complete the transaction. Similarly, if an order has been placed with the debtor by another broker on behalf of his customer, then performance would be required.</u>" 480 F.2d at 1125-1126 (emphasis added)

In the case under consideration the transaction which took place on September 19, 1972 was between the debtor and the claimant Charon. This was a direct sale by an institutional investor <u>acting on its own behalf, not through a broker</u>, and does not constitute an open contractual commitment contemplated by SIPA §6(d). The claimant's broker acted only as an agent for the purpose of delivering the stock in accordance with the agreement between the parties. The record of the trial of the issues is barren of any proof of an interbroker transaction.

9

Charon is a general creditor of the estate to the extent of damages suffered as a result of the breach of the debtor's agreement to take and pay for the remaining 6,000 shares of Nutrition. The trustee's objection is sustained.

Settle order in conformity to the foregoing on 5 days' notice.

Dated: New York, New York

MAY 31 1974 , 1974

 _____
ASA S. HERZOG
Bankruptcy Judge