**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*And Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |

## TRUSTEE'S EIGHTH INTERIM REPORT
## FOR THE PERIOD ENDING SEPTEMBER 30, 2012

# TABLE OF CONTENTS

**Page**

I.      EXECUTIVE SUMMARY ......................................................................... 1

II.     BACKGROUND .................................................................................. 3

III.    FINANCIAL CONDITION OF ESTATE ............................................... 3

IV.     ADMINISTRATION OF THE ESTATE .............................................. 4

    A.      Marshaling And Liquidating The Estate Assets ................................. 4

    B.      Retention Of Professionals ................................................................. 5

V.      CLAIMS ADMINISTRATION ........................................................... 5

    A.      Claims Processing .............................................................................. 5

        i.      Customer Claims ...................................................................... 5

        ii.     General Creditor Claims .......................................................... 6

        iii.    The Trustee Has Kept Customers Informed Of The Status Of The
               Claims Process ......................................................................... 6

        iv.     The Hardship Program ............................................................. 7

    B.      Objections To Claims Determinations ................................................ 9

    C.      Settlements Of Customer Claims Disputes ......................................... 10

VI.     PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ......... 11

    A.      Net Equity Dispute ............................................................................. 11

    B.      Time-Based Damages ......................................................................... 14

    C.      "Customer" Definition ....................................................................... 15

        i.      Feeder Fund Claimants ............................................................ 15

        ii.     ERISA Claimants ..................................................................... 17

VII.    RECOVERIES AND CONTINGENCIES ........................................... 18

    A.      Recoveries Accomplished During Prior Report Periods .................... 18

    B.      Recoveries Accomplished During This Report Period ....................... 19

    C.      Earlier Settlements ............................................................................. 20

VIII.   THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO
        CUSTOMERS ...................................................................................... 25

    A.      The Customer Fund ............................................................................. 25

    B.      The Trustee's Initial Allocation of Property to the Fund of Customer
        Property and Authorizing An Interim Distribution to Customers ....... 26

    C.      The Trustee's Second Allocation of Property to the Fund of Customer
        Property and Authorizing the Second Interim Distribution to Customers .......... 27

# TABLE OF CONTENTS
(continued)

**Page**

D. The General Estate .................................................................................. 28

IX. LITIGATION ............................................................................................ 29

   A. The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals ................................................................. 29

      i. The HSBC Action ................................................................... 30

      ii. The JPMorgan Action ............................................................ 31

      iii. The Luxalpha Action ............................................................. 33

         (a) Luxalpha ..................................................................... 33

         (b) The Luxembourg Investment Fund ("LIF") Action .................... 34

         (c) The Trotanoy Action ................................................... 34

         (d) The Oreades Action .................................................... 34

         (e) The Access Luxembourg Injunction ............................. 35

         (f) Banque Degroof Action ............................................... 36

      iv. The Kohn Action .................................................................... 36

      v. The Katz-Wilpon Action ........................................................ 38

      vi. Other Proceedings Relating to Motions To Withdraw ............ 42

         (a) The Administrative Order ............................................ 42

         (b) Consolidated Briefing Orders ...................................... 42

         (c) The 546(e) Appeal ...................................................... 45

   B. The Bankruptcy Court and Related Appeals ................................... 46

      i. Avoidance Actions ................................................................. 47

      ii. Subsequent Transferee Actions .............................................. 48

      iii. *Picard v. ABN AMRO Bank N.A.* .......................................... 48

      iv. *Picard v. ABN AMRO (Ireland) Ltd.* ..................................... 49

      v. *Picard v. Citibank* ................................................................. 50

      vi. *Picard v. Cohmad Sec. Corp.* ................................................ 51

      vii. *Picard v. Defender* ............................................................... 52

      viii. *Picard v. Friedman, et al.* ..................................................... 53

      ix. *Picard v. Irwin Lipkin, et al.* ................................................. 54

      x. *Picard v. J. Ezra Merkin, et al.* ............................................. 54

      xi. *Picard v. Kingate* ................................................................. 57

      xii. *Picard v. Magnify Inc., et al.* ............................................... 58

# TABLE OF CONTENTS
(continued)

**Page**

xiii.    *Picard v. Maxam Absolute Return Fund, L.P. et al.* ................................ 59

xiv.    *Picard v. Michael Lieberbaum, et al.* ...................................... 60

xv.    *Picard v. Peter B. Madoff, et al.* ....................................... 61

xvi.    *Picard v. Richard M. Glantz, et al.* ....................................... 64

xvii.    *Picard v. Stanley Chais, et al.*................................................. 66

C.    Injunction Proceedings.......................................................... 68

(a)    *Picard v. Fox*, Adv. Pro. No. 10-03114 (BRL), Case Nos. 10-04652, 10-cv-07101, and 10-cv-07219 (JGK); *Picard v. Picower*, Adv. Pro. No. 09-01197 (BRL), Case Nos. 11-cv-01328, 11-cv-01298 (JGK); *In re Bernard L. Madoff Inv. Sec. LLC*, 12-1645 and consolidated cases (2d Cir.) ................... 69

(b)    *Picard v. Stahl*, Adv. Pro. No. 10-03268 (BRL), Case Nos. 11-cv-02246, 11-cv-02135, 11-cv-02392 (AKH), Case Nos. 11-5421 and 11-5428 (2d Cir.) .................................... 70

(c)    *Picard v. Hall*, Adv. Pro. No. 12-01001 (BRL).......................... 71

(d)    *Picard v. Maxam Absolute Return Fund et al.*, Adv. Pro. No. 10-05342 (BRL) ................................................. 72

(e)    *Picard v. Schneiderman*, Adv. Pro. No. 12-01778 (BRL)........... 73

(f)    *Goldman Lift-Stay Motions,* Adv. Pro. No. 08-01789 (BRL)...... 73

(g)    *Picard v. Access Management Luxembourg S.A.,* Adv. Pro. No. 12-01563 (BRL) ................................................. 74

X.    INTERNATIONAL INVESTIGATION AND LITIGATION........................................ 75

i.    Austria and Italy................................................. 75

ii.    Bermuda................................................. 75

iii.    BVI and the Cayman Islands ................................................. 76

iv.    England ................................................. 77

v.    Gibraltar ................................................. 77

vi.    Ireland ................................................. 78

vii.    Switzerland and Luxembourg ................................................. 78

XI.    FEE APPLICATIONS AND RELATED APPEALS................................................. 78

A.    Objections to Prior Fee Applications................................................. 78

B.    Ninth Fee Application ................................................. 79

XII.    CONCLUSION................................................. 80

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the "Debtors"), respectfully submits his Eighth Interim Report (this "Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2]  Pursuant to the Claims Procedures Order, the Trustee shall file additional interim reports every six (6) months.  This Report covers the period between April 1, 2012 and September 30, 2012 (the "Report Period").

## I.    EXECUTIVE SUMMARY

1.    As recognized by the District Court, the Trustee "has worked relentlessly over nearly three years to bring assets that passed through [Bernard L. Madoff Investment Securities LLC] back into the customer fund, in order to restore nearly $20 billion in customer losses." *Picard v. J.P. Morgan Chase & Co.*, 460 B.R. 84, at *1 (S.D.N.Y. Nov. 1, 2011).  Through pre-litigation and other settlements, the Trustee has successfully recovered, or reached agreements to recover, more than $9.2 billion—over 50% of the currently estimated principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS.

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.) (BRL), unless otherwise noted.

2.     The Trustee made his second interim distribution from the Customer Fund during this Report Period, distributing approximately $2.5 billion to customers with allowed claims. When combined with the approximately $351 million first interim distribution and $803.7 million of advances committed by the Securities Investor Protection Corporation ("SIPC"),[3] the Trustee has distributed approximately $3.7 billion to BLMIS customers to date.  This represents a significant milestone in this litigation, with 1,074 BLMIS accounts fully satisfied.  The 1,074 fully satisfied accounts represent approximately 50% of accounts with allowed claims.

3.     The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H") and Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel")), continued to litigate hundreds of individual cases before this Court, the District Court for the Southern District of New York, the Court of Appeals for the Second Circuit, the United States Supreme Court, and dozens of international courts.

4.     This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history.  Billions of dollars and thousands of people and entities located across the world were involved in this fraud.  The Trustee continues to work diligently to coordinate the administration, investigation, and litigation to maximize efficiencies and reduce costs.

5.     All Interim Reports, along with a complete docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com.

---

[3] SIPC has committed to pay over $800 million to date.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

6.      The United States Government Accountability Office also issued its second and final report during this Report Period on certain aspects of this liquidation which may be of interest to customers, creditors, and other parties.  A copy can be located at http://www.gao.gov/assets/650/648237.pdf.    A copy of the first report can be located at http://www.gao.gov/products/GAO-12-414.

## II.      BACKGROUND

7.      The Trustee's prior interim reports, each of which is fully incorporated herein,[4] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

## III.      FINANCIAL CONDITION OF ESTATE

8.      No administration costs, including the compensation of the Trustee and his counsel, are being paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers.   Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid from administrative advances from the SIPC.   These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has or will obtain.  Thus, recoveries from litigation, settlements, and other means will be available in their entirety for the satisfaction of customer claims.

9.      A summary of the financial condition of the estate as of September 30, 2012 is provided in Exhibit A attached hereto.

---

[4] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report) (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report) (ECF No. 4529); and October 1, 2011 to March 31, 2012 (the "Seventh Interim Report) (ECF No. 4793).

10.     This summary reflects cash, cash equivalents, and other short-term liquid assets in the amount of $ 244,307,050 and securities in the amount of $5,147,968,833.

11.     As detailed in <u>Exhibit A</u>, as of September 30, 2012, the Trustee requested and SIPC advanced $1,432,796,387.80, of which $795,340,197.93 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account,[5] and approximately $637,456,189.87 was used for administrative expenses.

## IV.     ADMINISTRATION OF THE ESTATE

### A.     <u>Marshaling And Liquidating The Estate Assets</u>

12.     The Trustee and his Counsel have worked diligently to investigate, examine, and evaluate the Debtor's activities, assets, rights, liabilities, customers, and other creditors.  Thus far, the Trustee has been successful in recovering or entering into agreements to recover a significant amount of assets for the benefit of customers, totaling over $9.2 billion.  For a more detailed discussion of prior recoveries, *see* Section V.B. of the First Interim Report, Section IV of the Second, Amended Third, and Fourth Interim Reports, Section VII of the Fifth Interim Report, Section IV of the Sixth Interim Report, and Section VII of the Seventh Interim Report.

13.     The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities.  As of the Seventh Interim Report, the Trustee had received distributions from seven of these class action settlements totaling over $91,000.  The Trustee has not and will not receive any distributions from the eighth class action settlement.  In addition, the Trustee has identified claims that BLMIS may have in one hundred and twenty five

---

[5] The Trustee must receive an executed assignment and release form from each customer before releasing an advance of funds from SIPC.  Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims that have been determined is less than the amount of SIPC advances committed by the Trustee. *See supra* note 3.

other class action suits also arising out of its proprietary and market making activities. The Trustee has filed proofs of claim in ninety of these cases and, based on a review of relevant records, has declined to pursue claims in twenty additional cases. Subject to the completion of a review of relevant records, the Trustee intends to file claims in the remaining fifteen cases. As of September 30, 2012, the Trustee has recovered approximately $457,912.83 from settlements relating to thirty-two of the ninety claims filed directly by the Trustee, of which approximately $99,075.03 was recovered during this Report Period.

**B.    Retention Of Professionals**

14.    In addition to the professionals already retained by the Trustee, during the Report Period and pursuant to orders of this Court, the Trustee retained La Tanzi, Spaulding & Landreth, P.C., as special counsel to represent him in Massachusetts. (ECF No. 4968).

## V.    CLAIMS ADMINISTRATION

**A.    Claims Processing**

**i.    Customer Claims**

15.    During the Report Period, the Trustee allowed $281,251,849.19 in customer claims, primarily relating to the customer claims of Katz-Wilpon and the Trotanoy Investment Company, Ltd. This brings the total amount of allowed claims as of September 30, 2012 to $7,653,221,327.39. The Trustee has paid or committed to pay approximately $803,677,373.62 million in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.

16.    During the Report Period, the Trustee reduced claims by approximately $149,374,631.63.

17.   As of September 30, 2012, there are 179 claims relating to 129 accounts that are "deemed determined," meaning that the Trustee has instituted litigation against those accountholders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under section 502(d) of the Bankruptcy Code.  Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.  Of the 16,519 claims received by the Trustee, only two remain undetermined and are under review by the Trustee and Counsel.

###   ii.   General Creditor Claims

18.   As of September 30, 2012, the Trustee had received 427 timely and twenty-one untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 427 claims and $1.7 billion, the Trustee has received ninety-four general creditor claims and forty-nine broker-dealer claims totaling approximately $264.9 million.  At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

###   iii.   The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

19.   Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website, www.madofftrustee.com, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

20.    The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the Trustee on litigation matters, a detailed distribution page, an FAQ's page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

21.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of September 30, 2012, the Trustee and his professionals had received and responded to more than 7,000 e-mails via the Trustee Website from BLMIS customers and their representatives.

22.    The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of September 30, 2012, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,000 calls from claimants and their representatives.

23.    In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.    The Hardship Program

24.    At the commencement of claims administration, the Trustee established the Hardship Program to accelerate the determination of claims and the receipt of SIPC protection up to $500,000 for individual account holders who were dealing with hardship. An individual could

qualify for the Hardship Program if he or she filed a claim and was: (i) unable to pay for necessary living or medical expenses; (ii) over 65 years old and forced to reenter the work force after retirement; (iii) declaring personal bankruptcy; (iv) unable to pay for the care of dependents; or (v) suffering from extreme financial hardship beyond the identified circumstances.

25.    As of December 11, 2010, the Trustee had received 394 Hardship Program applications.  The Trustee obtained advances from SIPC and issued 119 checks to hardship applicants with allowed claims.  The Trustee also worked in good faith with approved applicants to reconcile any disputed portions of their claims.  Of the 394 Hardship Program applications received prior to December 11, 2010, the Trustee assessed the information provided and, in the exercise of his discretion, decided not to commence avoidance actions against 249 hardship applicants.

26.    The Trustee expanded the Hardship Program into a second phase as he instituted avoidance actions.  While the law requires the Trustee to pursue avoidance actions to recover customer property, the Trustee has stated that he will not pursue avoidance actions against BLMIS accountholders suffering proven hardship.  In order to forego an avoidance action, the Trustee needed financial information about the accountholder.  Thus, the Trustee announced in November 2010 that the Hardship Program would focus on avoidance action defendants and requested that accountholders come forward to share information regarding their hardships. Through this program, the Trustee has worked with a substantial number of hardship applicants who were subject to avoidance actions to confirm their hardship status and forego the pursuit of an avoidance action.

27.    In the second phase of the Hardship Program, as of September 30, 2012, the Trustee had received 491 applications from avoidance action defendants relating to 310 adversary proceedings.    After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee has dismissed, or is in the process of dismissing, 190 avoidance actions against the related defendants.    As of September 30, 2012, there were 83 applications still under review and 218 that were otherwise resolved because they were either (i) withdrawn by the applicant, (ii) deemed withdrawn for failure of the applicant to pursue the application, (iii) denied for lack of hardship or (iv) referred for consideration of settlement.

28.    The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.    A large number of potential applicants have been assisted by the Trustee through the use of the Hotline, and the Trustee urges customers to continue using this resource and the Hardship Program if they believe they qualify.    Further information and applications are available on the Trustee's website, www.madofftrustee.com.

## B.    Objections To Claims Determinations

29.    As required by the Claims Procedures Order and described in each determination letter ("Determination Letter") sent by the Trustee, claimants of BLMIS have thirty days from the mailing of a Determination Letter to object to the Trustee's determination of their claim. Claimants that disagree with the Trustee's determination of their claim must file with the Court a written opposition setting forth the grounds of disagreement and provide the Trustee with the same.    A hearing date will be obtained by the Trustee, and claimants will be notified of that date. As of September 30, 2012, 2,310 objections (which includes duplicates, amendments, and supplements) have been filed with the Court.    These objections relate to 4,301 unique claims and 1,148 BLMIS accounts.

30.     The following objections, among others, have been asserted: (i) Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with the Debtor; (ii) the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method;" (iii) claimants should receive interest on deposited amounts; (iv) the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments; (v) claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits; (vi) each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account; and (vii) there is no legal basis for requiring the execution of a Partial Assignment and Release prior to prompt payment of a SIPC advance.

31.     The Trustee has departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

## C.     Settlements Of Customer Claims Disputes

32.     The Trustee has continued settlement negotiations with customers who withdrew funds from their BLMIS Accounts within ninety days of the Filing Date.[6]  Such withdrawals are preferential transfers recoverable by the Trustee under Bankruptcy Code §§ 547(b) and 550(a), which are applicable in this proceeding pursuant to SIPA §§ 78fff(b) and 78fff-2(c)(3).  To settle potential preference actions against these customers, the Trustee has proposed that the customers

---

[6] In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm.  *See* Section 78*lll*(7)(B) of SIPA, 15 U.S.C. § 78*lll*(7)(B).

agree to authorize the Trustee to deduct the preferential amount from the initial payment advanced by SIPC pursuant to section 78fff-3(a)(1) of SIPA. The allowed claim is thus calculated based on the amount of money the customer deposited with BLMIS for the purchase of securities, <u>less</u> subsequent withdrawals, <u>plus</u> the preferential amount. The customer will be entitled to receive an additional distribution from the Customer Fund based on the total amount of the allowed claim.

33.    As of September 30, 2012, the Trustee had reached agreements relating to 521 accounts and with the IRS (which did not have a BLMIS account), recovering $7,226,341,105.31 billion in litigation, pre-litigation, and avoidance action settlements. These litigation, pre-litigation, and avoidance action settlements have allowed the Trustee to avoid the litigation costs that would have been necessary to obtain and collect judgments from these customers.

## VI.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

### A.    <u>Net Equity Dispute</u>

34.    For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method. Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

35.    This Court issued a decision on March 1, 2010 upholding the Trustee's Net Investment Method as the only interpretation consistent with the plain meaning and legislative history of the statute, controlling Second Circuit precedent, and considerations of equity and practicality. (ECF No. 2020); *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr.

S.D.N.Y. 2010).  This Court certified an immediate appeal to the United States Court of Appeals

for the Second Circuit (ECF No. 2467), which heard oral argument on March 3, 2011.

36.     On August 16, 2011, the Second Circuit affirmed this Court's decision and the

Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee

to discharge claims for securities under SIPA "upon the false premise that customers' securities

positions are what the account statements purport them to be."  I*n re Bernard L. Madoff Inv. Sec.

LLC*, 654 F.3d 229, 241 (2d Cir. 2011).  Any calculation other than the Net Investment Method

would "aggravate the injuries caused by Madoff's fraud."  *Id*. at 235.  Instead, the Net

Investment Method prevents the "whim of the defrauder" from controlling the process of

unwinding the fraud. *Id*. at 241.

37.     Under the Second Circuit's decision, the relative position of each BLMIS

customer account must be calculated based on "unmanipulated withdrawals and deposits" from

its opening date through December 2008. *Id*. at 238.  If an account has a positive cash balance,

that accountholder is owed money from the estate.  As a corollary, if an account has a negative

cash balance, the accountholder owes money to the estate. Both the recovery and distribution of

customer property in this case are centered on the principle that the Trustee cannot credit

"impossible transactions."  If he did, then "those who had already withdrawn cash deriving from

imaginary profits in excess of their initial investment would derive additional benefit at the

expense of those customers who had not withdrawn funds before the fraud was exposed." *Id*.

38.     First, the Second Circuit found, "in the context of this Ponzi scheme—the Net

Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a

trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims

unfairly ahead of others.'"  *Id*. at 242 n.10 *(quoting Jackson v. Mishkin (In re Adler, Coleman*

*Clearing Corp.)*, 263 B.R. 406, 463 (S.D.N.Y. 2001)).  Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers" or those who have yet to recover their initial investment.

39.     Next, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id*. at 240.  Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'" *Id.* at 241 (quoting *In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)).  Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id*. at 235.

40.     On September 6, 2011, certain claimants filed a petition for panel rehearing, or, in the alternative, for rehearing en banc.  *See* No. 10-2378 (2d Cir.) (ECF Nos. 505, 537). The panel that determined the appeal considered the request for panel rehearing, and the active members of the Court considered the request for rehearing en banc, and, on November 8, 2011, both denied the petition.  (ECF No. 551).

41.     Three petitions for certiorari were filed with the Supreme Court.  On June 25, 2012, the Supreme Court denied certiorari.  *Ryan v. Picard*, *cert denied*, 80 U.S.L.W. 3707 (U.S. June 25, 2012) (No. 11-969); *Velvel v. Picard*, *cert denied*, 80 U.S.L.W. 3707 (U.S. June 25,

13

2012) (No. 11-986).  Certiorari was also dismissed with respect to one appeal.  *Sterling Equities*

*Assocs. v. Picard*, 132 S. Ct. 2712 (June 4, 2012).

**B.    Time-Based Damages**

42.    Following the United States Supreme Court decision denying certiorari regarding

the Net Investment Method, on July 17, 2012, the Trustee filed a motion (the "Scheduling

Motion") (ECF No. 4920) for an order (the "Scheduling Order") requesting approval for a

briefing schedule regarding the question of whether customer claims should be recalculated with

an interest factor or a constant dollar adjustment ("Time-Based Damages Issue").

Approximately 1,200 objections raised the Time-Based Damages Issue.  There are numerous

theories of law that claimants raised, all of which seek some increase in their customer claims

based upon the amount of time they invested with BLMIS.  Most commonly, they seek an

increase in their claims based on the time they were invested with BLMIS using the New York

prejudgment rate of 9% per annum, lost opportunity cost damages, or the consumer price index

to take inflation into account.  The Trustee is using "Time-Based Damages" as an umbrella term.

43.    Two objections (ECF Nos. 4957 and 5004) were filed in response to the Trustee's

Scheduling Motion by HHI Investment Trust #2 and Blue Star Investors, LLC, among others

(collectively, the "HHI Parties").  Martin, Richard, and Steven Surabian (the "Surabians") also

filed an objection.  (ECF No. 4952). A letter was filed by Sidney and Ethel Chambers.  (ECF No.

4999).  The Trustee filed responses (ECF Nos. 5001 and 5009) asserting, among other things, a

lack of standing by the HHI Parties and the Surabians.

44.    On September 5, 2012, the Court approved the Scheduling Order establishing the

scope and schedule for briefing of Time-Based Damages overruling the objections and

scheduling a hearing on the Trustee's motion (the "Time-Based Damages Motion") to be held on

January 10, 2013.  In its order, the Court stated that the sole purpose of the Time-Based Damages

14

Motion would be to resolve the legal issues raised in the claims and objections relating to the Time-Based Damages Issue, leaving the factual issue to be heard at a later date.

45.    On October 12, 2012, the Trustee filed his Time-Based Damages Motion and Memorandum of Law for an Order Affirming Trustee's Calculations of Net Equity and Denying Time-Based Damages.  (ECF Nos. 5038 and 5039).  The Trustee's position that customer claims under SIPA should not include Time-Based Damages was supported by SIPC in its Memorandum of Law filed the same day.  (ECF No. 5036).

## C.    "Customer" Definition

### i.    Feeder Fund Claimants

46.    The Trustee's position is that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in section 78*lll*(2) of SIPA.  Where it appears that claimants did not have an account in their names at BLMIS ("Claimant Without An Account"), they are not customers of BLMIS under SIPA and the Trustee has denied their claims for securities and/or a credit balance.

47.    On June 11, 2010, the Trustee filed a Motion For An Order To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds.  (ECF Nos. 2410-2413, 2416).  The motion addressed only those claimants whose claims emanated from their direct or indirect investments in sixteen so-called Feeder Funds that, in turn, had accounts with and invested directly with BLMIS.

48.    This Court held a hearing on October 19, 2010.  On June 28, 2011, this Court issued a Memorandum Decision and Order affirming the Trustee's denial of these claims, (ECF Nos. 3018, 4193, 4209); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011).

15

49.    This Court found that, in light of the plain language of SIPA and relevant case law, the investor-claimants did not qualify as "customers" under SIPA.  This Court found that the objecting claimants invested in, not through, the Feeder Funds, and had no individual accounts at BLMIS.  It was the Feeder Funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased ownership interests in the Feeder Funds.  This Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

50.    This Court put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . ."  *Sec. Inv. Protection Corp.*, 454 B.R. at 290.

51.    Twenty-seven Notices of Appeal were filed and the appeals were assigned to United States District Judge Denise L. Cote.  *See* No. 11 Civ. 05683 (S.D.N.Y.) (DLC).  On January 4, 2012, Judge Cote affirmed the June 28, 2011 order of this Court.  *See Aozora Bank Ltd. v. Sec. Prot. Investor Corp.*, 2011 U.S. Dist. LEXIS 150753 (S.D.N.Y. Jan. 4, 2012).  In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition' excludes persons like the appellants who invest in separate third-party corporate entities like their Feeder Funds, that in turn invest their assets with the debtor."  *Id.* at *19.  Thus,

16

the District Court held that the Feeder Funds were the BLMIS customers and the appellants were precluded from seeking separate recoveries as additional SIPA claimants. *Id.* at *23.

52.    On January 6, 2012, four appeals were taken from Judge Cote's decision to the United States Court of Appeals for the Second Circuit. *See Bricklayers and Allied Craftsman Local 2 Annuity Fund, et al. v. Securities Investor Protection Corporation, Irving H. Picard*, No. 12-410; *Securities Investor Protection Corporation, Irving H. Picard v Rosamilia, et al.*, No. 12-437; *Securities Investor Protection Corporation, Irving H. Picard v. Kruse, et al.*, No. 12-483; and *Upstate New York Bakery Drivers and Industry Pension Fund v. Securities Investor Protection Corporation, Irving H. Picard*, No. 12-529 (2d Cir.).  Briefing has been completed before the Second Circuit and the parties are awaiting argument and/or a decision.

## ii.    ERISA Claimants

53.    Carved out from the above briefing and proceedings was the impact of ERISA and related regulations on the determination of "customer" status under SIPA.  Accordingly, on October 5, 2011, the Trustee moved before this Court for an order establishing a briefing schedule and hearing to affirm the claims determinations with respect to, and adjudicate the objections of ERISA claimants.  (ECF No. 4432).  This Court entered a scheduling order on November 8, 2011 (ECF No. 4507).

54.    On November 14, 2011, the Trustee filed the Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections (ECF No. 4521) (the "ERISA Motion").  On or around January 17, 2012, approximately eighteen opposition briefs to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4625-4628, 4631-4633, 4635, 4637-4643, 4652-4654).  On March 2, 2012, the Trustee filed his Memorandum in Support of the Trustee's Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4703).  On April 2,

2012, five replies to the ERISA Motion were filed on behalf of various ERISA claimants. (ECF

Nos. 4746, 4748, 4750, 4755, 4756). The Trustee's sur-reply was filed on April 20, 2012.

55.     During the pendency of the above briefing, certain ERISA claimants also filed

motions to withdraw the reference on the ERISA Motion from this Court to the District Court.

*See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 CV 01039 (S.D.N.Y.)

(DLC), on behalf of J.X. Reynolds & Co. Deferred Profit Sharing Plan, Jacqueline Green

Rollover Account and Wayne D. Green Rollover Account; *Sec. Inv. Prot. Corp. v. Bernard L.

Madoff Inv. Sec. LLC*, No. 12 CV 01139 (S.D.N.Y.) (DLC), on behalf of 37 ERISA Plan

claimants. On February 28, 2012 and March 1, 2012, these motions were accepted as related to

the appeals decided by Judge Denise Cote in *Aozora Bank*, 2011 U.S. Dist. LEXIS 150753

(S.D.N.Y. Jan. 4, 2011), discussed above, and were re-assigned to her Honor. Judge Cote

withdrew the reference on April 20, 2012.

56.     On July 25, 2012, the District Court granted the Trustee's ERISA Motion. *See

Sec. Inv. Prot. Corp. v. Jacqueline Green Rollover Account, et al.*, No. 12 CV 1039, 2012 U.S.

Dist. LEXIS 104024 (S.D.N.Y. July 25, 2012). The District Court found that the ERISA

claimants were not "customers" under SIPA because they did not deposit money with BLMIS for

the purchase of securities and did not own the assets of the ERISA plans that were deposited

with BLMIS. *Id.* No appeal was taken from this opinion and order.

## VII.     RECOVERIES AND CONTINGENCIES

### A.     Recoveries Accomplished During Prior Report Periods

57.     In the Sixth Interim Report and the Seventh Interim Report, the Trustee reviewed

the significant settlements entered into during those and prior report periods. Prior to this Report

Period, the Trustee had recovered or reached agreements to recover more than $9.1 billion for

the benefit of BLMIS customers.  Sixth Interim Report ¶¶ 52-63; Seventh Interim Report ¶¶ 56-62.

**B.**      **Recoveries Accomplished During This Report Period**

58.      During this Report Period, the Trustee settled eighteen cases for a total recovery of $115,264,478.89 million.  Currently, the Trustee has successfully recovered or reached agreements to recover more than $9.2 billion.

59.      The Trustee successfully negotiated a settlement with defendant Trotanoy Investment Company, Ltd. ("Trotanoy") in *Picard v. Trotanoy, et al.*, Adv. Pro. No. 10-05208 (Bankr. S.D.N.Y.) (BRL) (the "Trotanoy Action").  A motion to approve the settlement was filed on March 26, 2012. (ECF No. 50).  Trotanoy has settled with the Trustee in the approximate amount of $28,960,000.00.  Under the terms of the settlement, Trotanoy will have an allowed customer claim in the SIPA proceeding in the amount of $65,267,299.00.  This Court approved the settlement at a hearing on May 15, 2012.

60.      On April 13, 2012, the Trustee filed in the District Court a Motion for Settlement for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement in the Katz-Wilpon Matter in the amount of $162 million in *Picard v. Saul B. Katz*, No. 11 Civ. 03605 (S.D.N.Y.) (JSR) (ECF Nos. 184-187).  The District Court approved the settlement at a hearing on June 1, 2012.  As of September 30, 2012, a total of $67,381,433.27 has been recovered related to this settlement agreement.

61.      In addition to the recoveries related to the Trotanoy and Katz-Wilpon settlement agreements outlined above, the Trustee settled an additional 16 cases in this Report Period for a total recovery of $18,923,045.62.  Thus, the Trustee entered into settlements during this Report Period that brought $115,264,478.89 into the Customer Fund.

19

C.    **Earlier Settlements**

62.    On February 18, 2010, this Court approved a pre-litigation settlement between the Trustee and the Estate of Norman F. Levy.  (ECF No. 1964).  This settlement resulted in the return of $220 million (the "Levy Settlement").  One year later, on February 18, 2011, certain customers moved to set aside the Court's Order approving the Levy Settlement.  (ECF No. 3861).  This Court denied the motion (ECF No. 3984), and the claimants filed an appeal on April 11, 2011 (ECF No. 4005).

63.    On February 16, 2012, United States District Judge Deborah A. Batts issued a Memorandum and Order affirming this Court's order of March 30, 2011.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, No. 11 Civ. 03313, 2012 U.S. Dist. LEXIS 21740 (S.D.N.Y. Feb. 16, 2012) (DAB).  The District Court found that bankruptcy courts need not conduct a "mini-trial" of all the facts underlying settlement disputes and are entitled to rely upon the opinions of the trustee, the parties, and their attorneys. *Id.* at *12.  Thus, the District Court held that this Court did not abuse its discretion in denying the motion to vacate the settlement. *Id.* at *7.  The claimants subsequently appealed Judge Batts's decision to the Second Circuit. *See Peshkin v. Levy-Church*, No. 12-816 (2d Cir.).  Briefing before the Second Circuit has been completed.  Because an appeal was taken from the District Court's order, the $220 million must remain in reserve and cannot be distributed to BLMIS customers until the appeal is finally resolved.

64.    On June 10, 2011, this Court approved a settlement agreement between the Trustee and the Joint Liquidators for Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds"). *Picard v. Fairfield Sentry et al.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y.) (BRL) (ECF No. 95).  On July 13, 2011, this Court entered consent judgments between the Trustee and Fairfield Lambda Limited in the amount of

$52.9 million (ECF No. 108), Fairfield Sentry Limited in the amount of $3.054 billion (ECF No. 109), and Fairfield Sigma Limited in the amount of $752.3 million (ECF No. 110). One objection was filed by plaintiffs in a derivative action allegedly on behalf of Fairfield Sentry Limited, which was overruled by this Court on June 7, 2011. (ECF. No. 92).

65.      Under the terms of this settlement, Fairfield Sentry Limited agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidator for the Fairfield Funds agreed to make a $70 million payment to the Customer Fund. To date, the Fairfield Sentry Joint Liquidators have paid $24 million, of which $16 million was in cash and the $8 million balance was an offset against funds owed by the Trustee to Fairfield Sentry. The Joint Liquidator also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners; the Trustee retained his own claims against the management defendants. Further, the Trustee and the Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims. On or about July 8, 2011, Fairfield Sentry transferred $16 million to the Trustee, and the Trustee allowed Fairfield Sentry's claim of $78 million. When the remaining $46 million is paid, the Trustee will increase the allowed claim by $152 million to $230 million.

66.      On July 7, 2011, this Court approved a settlement between the Trustee, Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P. (collectively, the "Greenwich Funds"), wherein this Court entered judgment against Greenwich Sentry, L.P. in an amount over $206 million and against Greenwich Sentry Partners, L.P. in an amount over $5.9 million. *Picard v. Fairfield Sentry et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (ECF No. 107). Three objections were filed to the proposed settlement agreement, but were subsequently withdrawn prior to this Court's July 7, 2011 order. In this settlement, the Greenwich Funds

agreed to permanently reduce their net equity claim from approximately $143 million to over $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned the Trustee all of their claims against Fairfield Greenwich Group management, as well as agreed to share with the Trustee any recoveries they accomplish against service providers.

67.    To implement this settlement agreement, the Court was required to confirm the plan in the jointly administered Chapter 11 proceeding of Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P. *In re Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P.*, Case No. 10-16229 (Bankr. S.D.N.Y.) (BRL). The plan confirmation hearing was held on December 22, 2011. The plan was confirmed subject to the resolution of issues unrelated to the settlement with the Trustee. Those matters have been resolved. The effective date of the plan was February 24, 2012. With the settlement becoming effective, claims against the Fairfield Greenwich Group management have been assigned to the Trustee, Greenwich Sentry, and Greenwich Sentry Partners, and the BLMIS customer claims have been allowed in the amount of $35,000,000.00 and $2,011,304.00, respectively.

68.    On June 6, 2012, the Trustee filed three additional adversary proceedings naming as defendants entities, trusts, or family members who received transfers of customer property paid to Fairfield Greenwich Group partners as part of the management and incentive fees paid by Fairfield Sentry, Ltd. The cases are *Picard v. RD Trust*, Adv. Pro. No. 12-01701 (Bankr. S.D.N.Y.) (BRL), *Picard v. Barrenche, Inc.*, Adv. Pro. No. 12-01702 (Bankr. S.D.N.Y.) (BRL) and *Picard v. Toub*, Adv. Pro. No. 12-01703 (Bankr. S.D.N.Y.) (BRL). Those three cases along with the claims against the Fairfield Greenwich Group management entities and partners in

*Picard v. Fairfield Sentry, Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y.) remain pending in this Court.

69.      In addition, on December 21, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025 billion.  *Picard v. Tremont Group Holdings, Inc.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.) (BRL) (ECF No. 38).   In this settlement, Tremont agreed to deliver $1.025 billion into an escrow account, which will ultimately be placed into the fund of customer property.  Upon the release of the settlement payments from the escrow account, the Trustee will allow certain customer claims related to Tremont.  Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  This Court entered an Order Granting Trustee's Motion for Entry of Order Approving Agreement.  (ECF No. 38).

70.      Certain objectors filed an appeal of the Tremont settlement on September 30, 2011.  *See Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Tremont Group Holdings, Inc., et al.*, No. 11 Civ. 7330 (S.D.N.Y.) (GBD) (ECF No. 1).  Thereafter, Tremont filed a motion to dismiss the appeal, which was subsequently joined by motions filed by the Trustee and parties subject to the settlement.  (ECF Nos. 4, 6, 8, 12, and 14).  The non-BLMIS customers who commenced the appeal opposed the dismissal. (ECF Nos. 15, 16).  On June 26, 2012, United States District Judge George B. Daniels granted the motion to dismiss and a judgment was entered on the docket on June 28, 2012.  (ECF No. 36).  The objectors subsequently filed a Notice of Appeal on July 27, 2012.  (ECF No. 37).  The

Second Circuit so-ordered a stipulation of dismissal of the appeal on October 25, 2012.  (ECF

No. 39); No. 12-3052 (2d Cir.) (ECF No. 58).

71.     On January 13, 2011, this Court entered an Order (the "Picower Settlement

Order") approving the $5 billion settlement between the Trustee and the Estate of Jeffry M.

Picower, et al. ("Picower Defendants").  *Picard v. Picower*, Adv. Pro. No. 09-01197 (Bankr.

S.D.N.Y.) (BRL).    BLMIS claimants Adele Fox ("Fox") and Susanne Stone Marshall

("Marshall"), who brought actions against the Picower Defendants in Florida, appealed the

Picower Settlement Order.  (ECF Nos. 45, 49).  On March 26, 2012, United States District Judge

John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and

permanently enjoining certain duplicative or derivative actions against the Picower Defendants.

*In re Bernard L. Madoff*, 2012 U.S. Dist. LEXIS 41262 (S.D.N.Y. Mar. 26, 2012).  An appeal of

Judge Koeltl's decision is pending before the Second Circuit.  *See In re Bernard L. Madoff*, No.

12-1645 (2d Cir.), and consolidated cases.

72.     A forfeiture action against the estate of Jeffry M. Picower resulted in the

additional recovery of more than $2.2 billion to the United States Government (the "Picower

Forfeiture"), which is intertwined with the Trustee's Picower settlement.  *See United States v.*

*$7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on*

*Schedule A*, No. 10 Civ. 09398 (S.D.N.Y.) (TPG).  On May 23 and 24, 2011, United States

District Judge Thomas P. Griesa entered a final order of forfeiture in favor of the United States.

(ECF No. 17).  The Second Circuit dismissed an appeal of Judge Griesa's order, and on June 8,

2012, a final order of forfeiture was issued.  *See United States v. $7,206,157,717 On Deposit at*

*JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 11-2898 (2d Cir.)

(ECF No. 85).

73.    Because the time to appeal the final order of forfeiture expired, the Trustee received the Picower settlement funds.  The settlement amount of $5 billion has been transferred to the BLMIS estate and the Customer Fund.  Part of the proceeds from the Picower settlement has been distributed to customers, and the balance will be distributed in due course.

74.    Through the end of this Report Period, the Trustee recovered $441,932,860.42 as a result of preference and other settlements that were made pursuant to agreements subject to the Net Equity Dispute.  Although the main Net Equity Dispute has been finally determined, ancillary issues relating to Net Equity, such as Time-Based Damages, remain pending.  As such, these amounts are held in reserve.

## VIII.    THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

### A.    <u>The Customer Fund</u>

75.    In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's estate.  The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate.  Customers holding allowable claims are entitled to share in the Customer Fund based on each customer's Net Equity as of the filing date, to the exclusion of general creditors.  SIPA § 78fff-2(c).

76.    In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims).  Each element of the equation—the

customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

77.     There are many unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves.  Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the customer fund, or the "numerator" (taking reserves into account); (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account); and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

**B.     The Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers**

78.     On May 4, 2011, the Trustee moved for an initial allocation and pro rata interim distribution of the Customer Fund to customers whose claims had not been fully satisfied because their net equity claims as of the filing date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "First Allocation" and "First Interim Distribution").  (ECF No. 4048).  This motion was unopposed, and the Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers on July 12, 2011.  (ECF No. 4217).

79.     Through the prior report period, the Trustee distributed to BLMIS customers approximately $325 million—more than the amount initially approved by the Court—relating to 1,232 BLMIS accounts.  Thirty-nine payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.  After March 31, 2012, the Trustee distributed an additional $25.5 million to those who qualified for the First Interim Distribution.

80.     The First Allocation and First Interim Distribution was initial and interim in nature because the Trustee anticipated: (i) recovering additional assets through litigation and settlements, and (ii) resolving the issues on appeal that require reserves.

**C.     The Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing the Second Interim Distribution to Customers**

81.     In the year since the Trustee made the First Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, as well as the resolution of issues on appeal that had required reserves.

82.     In particular, the United States Supreme Court resolved the Net Equity Dispute on June 25, 2012, and the Trustee received the Picower settlement funds after the final order of forfeiture became final and nonappealable on July 16, 2012.

83.     Thus, the Trustee was prepared to make a second, significant distribution to BLMIS customers, in an amount as great as $3.019 billion, or 41.826% of each customer's allowed claim, unless the claim had been fully satisfied.  However, in order to maintain adequate reserves for the Time-Based Damages Issue, the Trustee was unable to distribute the entire $3.019 billion.

84.     On July 26, 2012, the Trustee filed a motion seeking entry of an order approving the second allocation of property to the Customer Fund, and authorizing the second interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the filing date exceeding the statutory SIPA protection limit of $500,000 (respectively, the "Second Allocation" and "Second Interim Distribution").  (ECF No. 4930).

85.     In connection with the Second Interim Distribution, the Trustee proposed holding in reserve an amount sufficient for the Trustee to pay Time-Based Damages assuming an interest rate of three percent (the "3% Reserve") or, in the alternative, nine percent (the "9% Reserve").

Four objections were made to the Trustee's motion, seeking the imposition of the 9% Reserve. (ECF Nos. 4965, 4966, 4971, 4976).

86.    On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% Reserve.  (ECF No. 4997).

87.    Thus, on September 20, 2012, the Trustee distributed $2.479 billion, or 33.541% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to September 20, 2012, an additional $59.967 million was distributed, bringing the total Second Interim Distribution amount to $2.539 billion.   Upon completion of the Second Interim Distribution, nearly fifty percent of the allowed customer claims have been satisfied.   The Second Interim Distribution was made to 1,241 BLMIS accounts, and thirty-seven payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

88.    Final resolution of the remaining appeals and disputes will permit the Trustee to further reduce the reserves he is required to maintain, which will allow for a greater distribution to customers in the future.  The Trustee expects to seek authorization for further allocations and distributions upon the recovery of additional funds and the resolution of significant disputes.

**D.    The General Estate**

89.    If the Trustee were able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

90.    All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are general creditors of the BLMIS estate.  The Trustee is

working diligently on behalf of the entire BLMIS estate and seeks to satisfy all creditor claims in this proceeding.

## IX.    LITIGATION

91.    Other major developments have occurred during this Report Period in the Trustee's avoidance actions and bank/feeder fund litigations. As the Trustee has more than 1,000 lawsuits pending, this Report does not discuss each of them in detail but instead endeavors to provide a summary of those matters with the most activity during the Report Period.

## A.    The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals

92.    Many of the defendants in the litigations brought by the Trustee have moved to withdraw the reference from this Court to the District Court.  These motions commenced with the HSBC, JPMorgan, UBS, and Kohn Actions. These complaints had common law and/or RICO claims in addition to avoidance counts under the Bankruptcy Code.  Then, the defendants in the Katz-Wilpon avoidance action moved to withdraw the reference, which was granted by the District Court.  Subsequently, hundreds of defendants began seeking similar relief.  The District Court has withdrawn the reference in numerous cases and heard or has pending before it numerous motions to dismiss.  On March 5, 2012, this Court entered an administrative order directing all defendants in the Trustee's litigations to file motions to withdraw the reference by April 2, 2012 (the "Administrative Order").  *See Administrative Order Establishing Deadline for Filing Motions to Withdraw the Reference, SIPC v. BLMIS (In re Madoff Sec.)*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.) (ECF No. 4707).  As of the date of this Report, defendants in approximately 791 avoidance actions commenced by the Trustee in this Court have filed approximately 463 motions to withdraw the reference and filed approximately 410 joinders to these motions.

### i.      The HSBC Action

93.      On July 15, 2009, the Trustee and B&H commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS.  *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (BRL) (the "HSBC Action").  After further investigation, the Trustee filed an Amended Complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS. (ECF No. 35).

94.      The thirteen HSBC-related defendants and, separately, UniCredit S.p.A. and Pioneer Alternative Investment Management Limited, moved to withdraw the reference.  On April 14, 2011, United States District Judge Jed S. Rakoff withdrew the reference to consider the Trustee's standing to assert common law claims.  *Picard v. HSBC Bank plc,* No. 11 Civ. 00836 (S.D.N.Y.) (JSR) (ECF Nos. 20, 23).

95.      On May 3, 2011, the same defendants filed Motions to Dismiss.  (ECF Nos. 24-27).  The Trustee and SIPC opposed the motions.  (ECF Nos. 32-36).  On July 28, 2011, the District Court dismissed the Trustee's common law claims, holding that the Trustee lacked standing, under any theory, to assert them.  *Picard v. HSBC Bank plc*, 454 B.R. 25, 37-38 (S.D.N.Y. 2011).  This reduced the Trustee's claims in the HSBC Action from approximately $8.9 billion to less than $2.2 billion.  The District Court returned the remainder of the HSBC Action to this Court for further proceedings.

96.      On December 15, 2011, the Trustee appealed the District Court's decision to the Second Circuit.  *See Picard v. HSBC Bank PLC, et al.,* 11-5175 and *Picard v. HSBC Bank PLC, et al.*, No. 11-5207 (2d Cir.).  The Trustee filed his appellate briefs on February 16, 2012, and

SIPC intervened in the appeals.  (ECF Nos. 76-85; 76-80).  On April 26, 2012, the Trustee and

SIPC each filed reply briefs to the oppositions that were filed to the Trustee's appellate briefs.

(ECF Nos. 165-166; 135-136).  Oral argument is scheduled for November 21, 2012.

97.    The District Court returned several of the Trustee's bankruptcy claims to this

Court.  However, various defendants in this action moved to withdraw the reference from this

Court and those motions have been granted, at least in part, by the District Court.  These

defendants are participating in a variety of motions which are before the District Court on

common briefing, including the application of section 546(e) of the Bankruptcy Code to the

Trustee's claims, the application of SIPA and the Bankruptcy Code to claims abroad, and the

standard of good faith.  Those motions remain pending.

### ii.    The JPMorgan Action

98.    On December 2, 2010, the Trustee and B&H commenced an action against

JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P.

Morgan Securities Ltd (the "JPMorgan Defendants").  *Picard v. JPMorgan Chase*, Adv. Pro. No.

10-04932 (Bankr. S.D.N.Y.) (BRL) (the "JPMorgan Action").  On February 8, 2011, the

JPMorgan Defendants moved for withdrawal of the reference.  *Picard v. JPMorgan Chase,* No.

11 Civ. 00913 (S.D.N.Y.) (CM) (the "JPMorgan Withdrawn Action").  The District Court

granted the motion on May 4, 2011.  (ECF No. 30).

99.    On November 23, 2010, the Trustee and B&H commenced an action against UBS

AG, numerous other UBS entities, Access International Advisors LLC, numerous other Access

entities, several individuals and the Luxalpha SICAV and Groupement Financier funds.  *Picard*

*v. UBS AG*, Adv. Pro. No. 10-04285 (Bankr. S.D.N.Y.) (BRL) (the "Luxalpha Action" and the

"Luxalpha Defendants").  On June 21, 2011, the Luxalpha Defendants moved for withdrawal of

the reference.   *Picard v. UBS AG,* No. 11 Civ. 04212 (S.D.N.Y.) (CM) (the "Luxalpha

Withdrawn Action"). On July 14, 2011, the District Court withdrew the reference and accepted the Luxalpha Action as related to the JPMorgan Action.

100.    On July 3, 2011, the JPMorgan Defendants filed a Motion to Dismiss. *JPMorgan Withdrawn Action*, (ECF Nos. 32-34). The Trustee filed an Amended Complaint against the JPMorgan Defendants on June 24, 2011. (ECF No. 50). On August 1, 2011, the JPMorgan Defendants renewed their Motion to Dismiss. (ECF Nos. 56-58). On August 1, 2011, the Luxalpha Defendants (with the exception of some of the individual defendants) filed a Motion to Dismiss. (ECF Nos. 17, 18). The Trustee filed an Amended Complaint in the Luxalpha Action on August 17, 2011, and the Luxalpha Defendants' Motion to Dismiss was deemed directed at the Amended Complaint. *Luxalpha Withdrawn Action*, (ECF No. 23). The Trustee and SIPC opposed the Motions. *JPMorgan Withdrawn Action*, (ECF Nos. 61-66); *Luxalpha Withdrawn Action*, (ECF No. 27).

101.    On November 1, 2011, the District Court dismissed the Trustee's common law and contribution claims in both the JPMorgan and Luxalpha Actions (the "November 1 Order"). *Picard v. J.P. Morgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011). The District Court returned the remainder of the Actions to this Court for further proceedings.

102.    On November 10, 2011, the Trustee filed a motion to direct entry of final judgment under Federal Rule of Civil Procedure 54(b) as to Counts Twenty-One through Twenty-Eight of the Amended Complaint. *JPMorgan Withdrawn Action*, (ECF Nos. 71, 72). On November 30, 2011, the District Court held that there was no just reason for delay and certified its November 1 Order as final (the "JPMorgan Rule 54(b) Judgment"). (ECF No. 74). On December 5, 2011, the District Court held that there was no just reason for delay and certified its November 1 Order as final as to the Luxalpha Defendants (the "Luxalpha Rule 54(b)

Judgment"). *Luxalpha Withdrawn Action*, (ECF No. 38).  The JPMorgan Rule 54(b) Judgment

was then entered on December 1, 2011 and the Luxalpha Rule 54(b) Judgment was entered on

December 7, 2011.  *JPMorgan Withdrawn Action*, (ECF No. 75); *Luxalpha Withdrawn Action*,

(ECF No. 39).

103.    On February 16, 2012, the Trustee filed his briefs appealing the November 1

Order in both the JPMorgan and Luxalpha Actions, and SIPC intervened in the appeals.  *See*

*Picard v. JPMorgan Chase & Co., et al.,* 11-5044 (2d Cir.) and *Picard v. UBS AG, et al.*, 11-

5051 (2d Cir.).    On April 5, 2012, the JPMorgan and Luxalpha Defendants opposed the

respective appeals of the November 1 Order.  On April 26, 2012, the Trustee and SIPC filed their

respective reply briefs.  Oral argument before the Second Circuit is scheduled for November 21,

2012.  The remaining claims against the JPMorgan and Luxalpha Defendants, which were not

dismissed and are thus not subject to the appeal, are pending before the Bankruptcy Court.

Those claims are, pursuant to the agreement of the parties, stayed pending the outcome of the

appeal.

### iii.    The Luxalpha Action

#### (a)    Luxalpha

104.    On April 27, 2012, a number of the Luxalpha Defendants moved in this Court to

dismiss the Amended Complaint in the Luxalpha Action for lack of personal jurisdiction, with

one of these defendants also moving to dismiss for forum non conveniens.  *Luxalpha Action*,

(ECF Nos. 98-115).    On August 17, 2012, the Trustee submitted a consolidated brief in

opposition to the motions to dismiss for lack of personal jurisdiction and forum non conveniens.

(ECF Nos. 127-129).

### (b)  The Luxembourg Investment Fund ("LIF") Action

105.    On April 27, 2012, a number of the defendants in the action *Picard v. UBS AG*,
Adv. Pro. No. 10-05311 (Bankr. S.D.N.Y.) (BRL) (the "LIF Action") moved in this Court to
dismiss the complaint for lack of personal jurisdiction, with one of these defendants also moving
to dismiss for forum non conveniens.  (ECF Nos. 104-114).  On August 17, 2012, the Trustee
submitted a consolidated brief in opposition to the motions to dismiss for lack of personal
jurisdiction and forum non conveniens.  (ECF Nos. 131-134).

### (c)  The Trotanoy Action

106.    On April 4, 2012, non-party objectors, the Surabians, filed an objection to the
March 26, 2012 motion for approval of a settlement agreement reached between the Trustee and
Trotanoy, Hyposwiss Private Bank Geneve S.A., and Palmer Fund Management Services
Limited, in the Trotanoy Action.  (ECF No. 53).  On April 30, 2012, the Trustee filed a response
to the objection of the Surabians.  (ECF No. 55.)  On May 15, 2012, this Court held a hearing,
overruled the Surabians' objection, and approved the settlement.  (ECF No. 59).  On June 4,
2012, this Court entered a stipulation dismissing the settling defendants with prejudice.  (ECF
No. 61.)  On June 28, 2012, this Court entered a stipulation dismissing without prejudice the
remaining defendant, Access International Advisors Ltd.  (ECF No. 65.)  On June 29, 2012, the
Trotanoy Action adversary proceeding was designated as closed by this Court.

### (d)  The Oreades Action

107.    On April 13, 2012, the District Court issued an order partially withdrawing the
reference and consolidating the briefing of issues presented by *Stern v. Marshall* for all
defendants who had moved to withdraw the reference on this ground, which included defendants
named in *Picard v. Oreades SICAV*, No. 11-cv-07763 (S.D.N.Y.) (the "Oreades Action").  *In re:
Madoff Securities*, No. 12-MC-00115 (S.D.N.Y.) (JSR) (ECF No. 4).  On May 15, 2012, the

District Court included the Oreades Action in an order partially withdrawing the reference and consolidating briefing on the common law standing and SLUSA issues. *Oreades Action*, (ECF No. 20). Also on May 15, 2012, the District Court included the Oreades Action in an order partially withdrawing the reference and consolidating briefing on the Section 546(e) issue for certain defendants. (ECF No. 21). On June 6, 2012, the District Court included the Oreades Action in an order partially withdrawing the reference and consolidating briefing on extraterritoriality application of SIPA and the Bankruptcy Code for certain defendants. (ECF No. 24).

### (e)    The Access Luxembourg Injunction

108.    On April 19, 2012, the Trustee and B&H commenced an action against Access Management Luxembourg, S.A., Patrick Littaye, and Pierre Delandmeter (the "Access Injunction Defendants") seeking an injunction preventing these parties from litigating an action they have filed against the Trustee in Luxembourg. *Picard v. Access Management Luxembourg, S.A.*, No. 12-01563 (Bankr. S.D.N.Y.) (BRL) (the "Access Injunction").

109.    On July 20, 2012, the Access Injunction Defendants moved to withdraw the reference, seeking the District Court's consideration of the issues of personal jurisdiction and the effect of the Second Circuit's *China Trade* decision. No. 12-cv-05597 (S.D.N.Y.) (ECF Nos. 1-3). On August 1, 2012, the Trustee submitted a brief in opposition to the motion to withdraw the reference. (ECF No. 11). On August 27, 2012, the District Court issued a decision withdrawing the reference on the issue of *China Trade*, but denying withdrawal of the reference on the issue of personal jurisdiction, and deferring further briefing on the issue of China Trade pending resolution of the personal jurisdiction issue by this Court. *In re: Madoff Securities*, No. 12-MC-00115 (S.D.N.Y) (ECF No. 373).

110.    On August 24, 2012, the Access Injunction Defendants filed an opposition to the Trustee's application for an injunction, and a motion to dismiss on the grounds of personal jurisdiction and failure to state a claim. *Picard v. Access Management Luxembourg, S.A.*, No. 12-cv-05597 (S.D.N.Y.) (JSR) (ECF Nos. 14-18). On September 24, 2012, the Trustee filed his opposition papers to this submission. *Access Injunction*, (ECF. Nos. 22-24).

### (f)    Banque Degroof Action

111.    On June 6, 2012, the Trustee and B&H commenced an action against Banque Degroof SA/NV, other Banque Degroof entities, Access International Advisors LLC, other Access entities, Aforge Finance Holding, other Aforge entities, and the Elite Stability SICAV Stablerock Compartment fund. *Picard v. Banque Degroof SA/NV*, Adv. Pro. No. 12-01691 (Bankr. S.D.N.Y.) (BRL). The complaint seeks recovery of subsequent transfers from these defendants.

### iv.    The Kohn Action

112.    On December 10, 2010, the Trustee commenced an adversary proceeding (the "Kohn Action") against Sonja Kohn ("Kohn"), Bank Medici, UniCredit Bank Austria AG ("Bank Austria"), UniCredit S.p.A. ("UniCredit), Pioneer Asset Management ("Pioneer"), Alessandro Profumo ("Profumo"), and dozens of individuals, trusts, and nominee companies (collectively, the "Kohn Defendants"). *Picard v. Kohn*, Adv. Pro. No. 10-5411 (Bankr. S.D.N.Y.) (BRL). The Trustee alleges that the Kohn Defendants participated in an illegal scheme and conspired to feed over $9.1 billion into Madoff's Ponzi scheme.

113.    On February 22, 2011, UniCredit, Bank Austria, Pioneer, and Profumo moved to withdraw the reference as to certain of the Trustee's claims against them. *Picard v. Kohn*, No. 11 Civ. 01181 (S.D.N.Y.) (JSR). The Trustee and SIPC opposed the motion. (ECF Nos. 15-17). On June 6, 2011, Judge Rakoff granted the motion to consider the Trustee's standing to assert his

RICO claims and to determine whether those claims are otherwise barred.  (ECF Nos. 34, 55, 56).

114.    On July 25, 2011, UniCredit, Bank Austria, Pioneer, and Profumo filed Motions to Dismiss the Trustee's RICO and common law claims.  (ECF Nos. 38-41, 44-47, 49-50).  The Trustee and SIPC opposed the Motions to Dismiss.  (ECF Nos. 51-54).  On February 22, 2012, Judge Rakoff dismissed the RICO and common law claims as to those defendants and returned the remainder of the claims to this Court.  (ECF No. 69).

115.    On March 21, 2012 the Trustee initiated an appeal within the 30-day time period prescribed by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure to preserve the Trustee's right to appeal.  (ECF No. 70).

116.    On April 5, 2012, the Trustee filed a stipulation of withdrawal of the appeal with the Second Circuit, without prejudice, which effectively stays the appeal initiated by the Trustee on March 21, 2012.  This stipulation makes clear that the withdrawal is without prejudice and the Trustee has until April 5, 2012 to reinstate the appeal.  The Trustee agreed with the appellees that he would seek the entry of a final judgment under Rule 54(b) before reinstating the appeal.

117.    Since the April 2, 2012 Administrative Order, thirty-two of the Kohn Defendants have moved to withdraw the reference, including UniCredit and Pioneer (ECF. Nos. 70-75), Bank Austria AG, and Kohn and certain of her family members and related companies (ECF Nos. 89-94).  This is the first time that Kohn has appeared in the Kohn Action.

118.    On April 6, 2012, the Trustee filed the Second Amended Complaint and Amended RICO Case Statement in this Court.  (ECF. No. 97).

119.    On April 10, 2012, the Trustee dismissed Gianfranco Gutty as a defendant in the Kohn Action.  (ECF No. 100).

120.    On May 10, 2012 the Trustee entered into a stipulation to formally dismiss Hassans International Law Firm.  (ECF No. 104).

121.    On August 10, 2012 the Clerk of the Bankruptcy Court entered a default against defendant Daniele Cosulich, on a motion made by the Trustee on August 9, 2012.  (ECF Nos. 114, and 112).

122.    On August 31, 2012 the Clerk entered a default against defendants Yakov Lantzitsky and Sharei Halacha Jerusalem, Inc., on a motion made by the Trustee on August 30, 2012.  (ECF Nos. 122, 123, 116, and 118).

**v.    The Katz-Wilpon Action**

123.    On December 7, 2010, the Trustee and B&H commenced an adversary proceeding against Saul Katz, Fred Wilpon, and dozens of individuals, trusts, and entities seeking approximately $1 billion (the "Katz-Wilpon Defendants").  *Picard v. Saul B. Katz*, Adv. Pro. No. 10-05287 (Bankr. S.D.N.Y.) (BRL) (the "Katz-Wilpon Action").  The Complaint seeks to avoid and recover fictitious profits, as well as principal investments made by the Katz-Wilpon Defendants, because the Trustee alleged that they knew or should have known that Madoff's investment advisory business was predicated on fraud.

124.    On May 26, 2011, the Katz-Wilpon Defendants moved for withdrawal of the reference.  No. 11 Civ. 03605 (S.D.N.Y.) (ECF No. 1).  On July 5, 2011, the District Court withdrew the reference to consider: (i) whether, in connection with the Katz-Wilpon Defendants' affirmative defense of good faith to the Trustee's fraudulent conveyance claims, SIPA (which incorporates the Bankruptcy Code) and the New York Debtor & Creditor Law improperly impose a retroactive duty of inquiry on the Katz-Wilpon Defendants that they did not previously have under federal securities laws; (ii) whether the Katz-Wilpon Defendants were owed an antecedent debt by BLMIS as set forth on their customer statements that would preclude the

Trustee's fraudulent conveyance claims; and (iii) whether Bankruptcy Code § 546 provides a "safe harbor" for the fraudulent transfers made by BLMIS to the Katz-Wilpon Defendants. (ECF No. 19; ECF No. 33, Tr. 32-34).

125.    On July 7, 2011, the Katz-Wilpon Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF Nos. 20-28). The Trustee and SIPC opposed the Motion. (ECF Nos. 29-32).

126.    On September 27, 2011, the District Court dismissed the Trustee's claims based on constructive fraud under the Bankruptcy Code, actual and constructive fraud under the New York Debtor & Creditor Law, and for recovery of subsequent transfers pursuant to § 550 of the Code, holding that the "safe harbor" affirmative defense set forth in Bankruptcy Code § 546(e) is a bar—at the pleading stage—to those claims. (ECF No. 40); *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011). This decision reduced the Trustee's claims in the Katz-Wilpon Action from approximately $1 billion to less than $400 million. In addition, in connection with the Trustee's fraudulent conveyance claims, the decision articulated a new heightened subjective standard of "willful blindness" that appears to be akin to a "conscious avoidance" standard derived from the criminal law context. Finally, the Court held as a matter of law that Bankruptcy Code § 502(d) is "overridden" in a SIPA proceeding by SIPA §78fff-2(c)(3).

127.    The District Court entered a Case Management Plan, and scheduled trial to begin on March 19, 2012. (ECF No. 42). On November 23, 2011, the District Court granted the Trustee's request for a jury trial. (ECF No. 71).

128.    The parties engaged in discovery from September 28, 2011 to January 13, 2012. (ECF No. 42). During the discovery period, counsel for the Trustee subpoenaed the Katz-Wilpon Defendants and twenty-six third parties for documents, receiving and reviewing a total of

over 130,000 documents.  During the discovery period, the Katz-Wilpon Defendants produced

75,000 documents and third parties produced 55,000 documents.  The parties also conducted

twenty-four depositions, including eight depositions of Katz-Wilpon Defendants or their

affiliates, four depositions of expert witnesses and twelve depositions of third-party witnesses.

129.    On November 22, 2011, the Trustee provided to the Katz-Wilpon Defendants the

expert reports of Steve Pomerantz, Bruce Dubinsky, Harrison J. Goldin, Lisa Collura, and

Matthew Greenblatt.  The Katz-Wilpon Defendants provided to the Trustee the expert report of

John Maine.  On January 26, 2012, the Defendants moved to exclude expert witnesses Harrison

J. Goldin and Steve Pomerantz. (ECF Nos. 80, 101, 105).  That same day, the Trustee moved to

exclude the Katz-Wilpon Defendants' expert witness John Maine.  (ECF Nos. 82-84).  The

parties exchanged opposition briefs on these motions to exclude on February 9, 2012 and reply

briefs on February 16, 2012.  (ECF Nos. 112-117, 130-131, 136-137).  On February 23, 2012,

the Court held oral argument on the exclusion of these expert witnesses and, ruling from the

bench, granted all three motions, excluding the testimony of Goldin, Pomerantz and Maine.

(ECF Nos. 139-140).

130.    On January 26, 2012, the Katz-Wilpon Defendants filed a Motion for Summary

Judgment on the Trustee's remaining claims. (ECF Nos. 79, 86-87, 90-99, 103-104, 109-110).

That same day, the Trustee filed a Motion for Partial Summary Judgment with respect to

fictitious profits.  (ECF Nos. 81, 85, 88-89, 100, 102, 107-08).  On February 23, 2012, the

District Court held oral argument on the Trustee's Motion for Partial Summary Judgment and the

Katz-Wilpon Defendants' Motion for Summary Judgment.  (ECF Nos. 139-140).  In a March 5,

2012 order, the District Court denied the Katz-Wilpon Defendants' Motion for Summary

Judgment and granted the Trustee's Motion for Partial Summary Judgment in the amount of two-year fictitious profit transfers.  (ECF No. 142).

131.   On March 14, 2012, the District Court issued an order holding that the burden of proving the absence of willful blindness under 11 U.S.C. § 548(c) rested with the Katz-Wilpon Defendants.  (ECF No. 177).

132.   On March 16, 2012, the Friday before the start of trial, the parties entered a Memorandum of Understanding outlining the parameters of a settlement in the amount of $162 million, which is the amount of fictitious profits withdrawn over the six-year period.  (ECF No. 180).  Judge Rakoff reviewed the terms of the Memorandum of Understanding on March 19, 2012, at which time he set April 13, 2012 as the date for the parties to enter a final settlement agreement and for the Trustee to file a Bankruptcy Rule 9019 motion for an order approving the settlement.  (ECF Nos. 182-83).

133.   On April 13, 2012, the Trustee filed a Motion for Settlement for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement.  (ECF Nos. 184-87).

134.   On June 1, 2012, Judge Rakoff entered an Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement.  (ECF No. 192).

135.   On June 6, 2012, a stipulation and Order of Voluntary Dismissal of the Trustee's claims against the Katz-Wilpon Defendants was entered pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. (ECF No. 193).

### vi.     Other Proceedings Relating to Motions To Withdraw

#### (a)     The Administrative Order

136.    On March 5, 2012, this Court entered the Administrative Order which stated: "[i]n the interest of administrative efficiency, this Court has been informed by Judge Rakoff, and hereby notifies all parties to the Adversary Proceedings, that the District Court will automatically regard untimely any motion to withdraw . . . if such motion is not filed on or before April 2, 2012." *Id.*  Pursuant to the Administrative Order, 438 motions to withdraw and 409 joinders to these motions were filed by the April 2, 2012 deadline, implicating a total of 768 adversary proceedings (accounting for overlap in actions as some motions and joinders were filed in the same matters).

137.    As of the date of this Report, a total of 463 motions to withdraw and 410 joinders have been filed, altogether implicating a total of 791 adversary proceedings.

#### (b)     Consolidated Briefing Orders

138.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw, facilitating consolidated briefing on common issues raised in the motions to withdraw.  The common issues included:

- whether the United States Supreme Court's decision in *Stern v. Marshall* (the "Stern Issues") precluded the bankruptcy court from entering final judgment on the Trustee's claims and therefore mandated withdrawal of the reference to bankruptcy court.  *See* Order dated April 13, 2012, No. 12 MC 115 (S.D.N.Y.) (ECF No. 4);

- whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense of antecedent debt (the "Antecedent Debt Issue").  *See* Order dated May 16, 2012, No. 12 MC 115 (S.D.N.Y.) (ECF No. 107);

- whether standing issues (the "Standing Issues") bar the Trustee's common law claims against certain defendants by virtue of the doctrine of *in pari delicto* and/or the Securities Litigation Uniform Standards Act of 1998 (SLUSA), as well as whether the Trustee is entitled to accept assignments

42

or assert the "insider exception" to *in pari delicto*. *See* Order dated May 15, 2012, No. 12 MC 115 (S.D.N.Y.) (ECF No. 114);

- whether section 546(e) of the Bankruptcy Code precludes the Trustee's claims against certain defendants against whom the Trustee has alleged knew or should have known that Madoff was running a Ponzi scheme (the "Bad Faith Section 546(e) Issue"). *See* Order dated May 15, 2012, No. 12 MC 115 (S.D.N.Y.) (ECF No. 119);

- whether the Trustee is entitled to employ section 502(d) of the Bankruptcy Code against defendants accused of receiving avoidable transfers (the "Section 502(d) Issue"). *See* Order dated June 1, 2012, No. 12 MC 115 (S.D.N.Y.) (ECF No. 155);

- whether the United States Supreme Court's ruling in *Morrison v. National Australia Bank*, as applied to SIPA or the Bankruptcy Code, bars the Trustee's claims against certain defendants (the "Extraterritoriality Issue"). *See* Order dated June 6, 2012, No. 12 MC 115 (S.D.N.Y.) (ECF No. 167);

- whether SIPA or the Securities laws alter the standards for determining good faith under either sections 548(c) or 550(b) of the Bankruptcy Code (the "Good Faith Standard") issues. *See* Order dated June 23, 2012, No. 12 MC 115 (S.D.N.Y.) (ECF No. 197);

139. The *Stern* Issues were raised by hundreds of defendants. The defendants moving papers were filed on May 4, 2012, the Trustee's opposition papers were filed on May 25, 2012, and the defendants' reply papers were filed on June 11, 2012. Judge Rakoff heard oral argument on June 18, 2012, and the *Stern* Issues remain *sub judice*.

140. The Antecedent Debt Issues also were raised by hundreds of defendants, who filed their motion on June 25, 2012. The Trustee's opposition papers were filed on July 25, 2012 and the defendants' reply papers were filed on August 8, 2012. Oral argument was held by Judge Rakoff on August 25, 2012 and the Antecedent Debt Issues remain *sub judice*.

141. The Standing Issues were raised by various defendants. The defendants filed two sets of moving papers on August 3, 2012, the Trustee's opposition papers were filed on

September 14, 2012, and the defendants' reply papers were filed on October 5, 2012. Judge Rakoff heard oral argument on October 15, 2012, and the Standing Issues remain *sub judice*.

142.    Various defendants raised the Section 502(d) Issue and joined in the moving papers filed on July 13, 2012. The Trustee's opposition papers were filed on September 12, 2012 and the defendants' reply papers were filed on September 28, 2012. Oral argument was held by Judge Rakoff on October 9, 2012 and the Section 502(d) Issue remains *sub judice*.

143.    The Bad Faith Section 546(e) Issues were raised by various defendants who filed two sets of moving papers on July 27, 2012. The Trustee filed a consolidated opposition on September 28, 2012, and the defendants are required to reply on or before October 19, 2012. Oral argument on the Bad Faith Section 546(e) Issues is scheduled for October 30, 2012.

144.    The Extraterritoriality Issue was joined by various defendants, who filed their moving papers on July 13, 2012. The Trustee filed opposition papers on August 17, 2012 and the defendants filed reply papers on August 31, 2012. Judge Rakoff held oral argument on September 21, 2012 and the Extraterritoriality Issues remain *sub judice*.

145.    The Good Faith Standard Issues were raised by various defendants who filed two main sets of moving papers on July 20, 2012. The defendants were permitted to file six supplemental briefs on August 10, 2012. On August 31, 2012, the Trustee filed a consolidated opposition to the two main sets of moving papers. On September 14, 2012, the Trustee filed a consolidated opposition to the six supplemental briefs. On September 14, 2012, the defendants filed two replies in support of the main moving papers. On September 28, 2012, the defendants filed six replies in support of the six supplemental memoranda. Oral argument on the Good Faith Standard Issues was conducted by Judge Rakoff on October 12, 2012. The Good Faith Standard Issues remain *sub judice*.

(c)      The 546(e) Appeal

146.    On April 27, 2012 the District Court entered an order dismissing certain claims in seventy-eight adversary proceedings in the *Picard v. Greiff*, Adv. Pro. No. 11-03775 (Bankr. S.D.N.Y.) (BRL), *Picard v. Blumenthal* (Adv. Pro. No. 11-04293), *Picard v. Goldman* (Adv. Pro. No. 11-04959) and *Picard v. Hein* (Adv. Pro. No. 11-04936) groups of actions.  *See* Order, No. 12 MC 115 (S.D.N.Y. April 30, 2012) (ECF No. 57).  These claims included (1) preferences under Section 547 of the Bankruptcy Code; (2) constructive fraudulent transfers under Section 548(a)(l)(B) of the Bankruptcy Code; and (3) actual and constructive fraudulent transfers or fraudulent conveyances under provisions of the New York Debtor & Creditor Law incorporated by Section 544(b) of the Bankruptcy Code (the "Dismissed Claims").  The Dismissed Claims did not include those claims proceeding under Sections 548(a)(l)(A) and 550(a) of the Bankruptcy Code.

147.    On April 30, 2012, the District Court entered an Opinion and Order explaining the reasons for its decision.  *See Picard v. Greiff*, No. 12 MC 115, 2012 U.S. Dist. LEXIS 70109 (S.D.N.Y. April 30, 2012).  On May 15, 2012, the District Court entered a Supplemental Opinion and Order to make explicit that Section 546(e) of the Bankruptcy Code applies to the Trustee's claims for avoidance and recovery of preferential transfers under Section 547 of the Bankruptcy Code.  *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Madoff Securities)*, No. 12-mc-0115 (S.D.N.Y.) (JSR) (ECF No. 101).

148.    On June 21, 2012, the Trustee and SIPC each filed notices of appeal in the Second Circuit from these Orders.  On or about June 21, 2012, the Second Circuit opened Case Nos. 12-2497 and 12-2557 in relation to the notices of appeal filed by the Trustee.  On or about June 21, 2012, the Second Circuit opened Case Nos. 12-2500 and 12-2616 in relation to the notices of appeal filed by SIPC.  The Second Circuit, *sua sponte*, consolidated Case Nos. 12-2497 and 12-

45

2500 under Case No. 12-2497. The Second Circuit Court, *sua sponte*, consolidated Case Nos. 12-2557 and 12-2616 under Case No. 12-2557.

149.    On August 13, 2012, the Trustee and SIPC filed notices of appeal to a subsequent judgment entered by the District Court relating to the 546(e) appeal. On or about September 10, 2012, the Second Circuit opened Case Nos. 12-3440 and 12-3585 in relation to the notices of appeal filed by the Trustee. On or about September 10, 2012, the Second Circuit opened Case Nos. 12-3422 and 12-3582 in relation to the notices of appeal filed by SIPC. The Second Circuit, *sua sponte*, consolidated Case Nos. 12-3422, 12-3440, 12-3583, and 12-3585 under Case No. 12-3422.

150.    The appeal will specifically address whether section 546(e) of the Bankruptcy Code should be applied to the Trustee's avoidance actions and whether a defendant's invocation of a defense under section 546(e) of the Bankruptcy Code mandates withdrawal of the reference to Bankruptcy Court under 28 U.S.C. § 157(d). By order of the Second Circuit, the Trustee's time to file his opening brief is extended to December 13, 2012 or thirty days after Judge Rakoff issues a ruling in the related 546(e) proceedings pending before the District Court. *See, e.g.*, *In re Bernard L. Madoff Investment Securities LLC*, 12-2497(L) (2d Cir. Sept. 14, 2012) (ECF No. 73); *see* Order dated May 15, 2012, *In re Madoff Securities*, No. 12 MC 115 (S.D.N.Y. May 16, 2012) (ECF No. 119).

B.    **The Bankruptcy Court and Related Appeals**

151.    During this period of voluminous activity before the District Court on motions to withdraw the reference, motions to dismiss, and trial preparation, adversary proceedings that had not been withdrawn to the District Court proceeded before this Court. Certain decisions of this Court in the matters described herein were appealed to the District Court and decided by various

judges of that Court.  After entry of the Administrative Order, certain defendants in these actions moved to withdraw the reference from this Court.

### i.    Avoidance Actions

152.    Prior to December 10, 2010, the Trustee filed approximately 1,000 avoidance actions seeking the return of fictitious profits received by the defendants in those actions (the "Fictitious Profits Litigation").  Since then, and during the Report Period, the Trustee has undertaken a multitude of tasks to prosecute the actions.

153.    As a preliminary matter, many of the defendants in the Fictitious Profits Litigation moved to withdraw the bankruptcy reference on a number of grounds.  The Trustee engaged in briefing with respect to whether the reference should be withdrawn and where the District Court did withdraw the reference on certain issues, the Trustee briefed the motions to dismiss that followed.

154.    With respect to cases remaining in the Bankruptcy Court, the Trustee undertook a multitude of tasks with respect to those litigations.  Because of the uncertainty surrounding the motions to withdraw the reference, the Trustee agreed with many of the defendants to extend their time to respond to the Trustee's complaints and entered into numerous stipulations to extend same.  Additionally, the Trustee considered hardship applications and where appropriate, agreed to dismiss certain defendants from the actions.  In other cases, the parties engaged in settlement negotiations which led to the resolution of certain actions or a narrowing of the open issues.  Certain defendants requested an early mediation of their cases.  Where the Trustee concurred in that request, the parties engaged in mediations, some of which resulted in a settlement of the actions.  In certain cases, the parties engaged in fact and expert discovery during the Report Period.

### ii. Subsequent Transferee Actions

155. Since April 1, 2012, the Trustee has filed 49 new actions seeking the recovery of subsequent transfers from BLMIS feeder funds. To date, the Trustee has brought a total of 82 adversary proceedings seeking recovery of just over $6 billion in subsequent transfers from 182 defendants who redeemed money from Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited, Harley International (Cayman) Ltd., Kingate Global Fund Ltd., and Kingate Euro Fund Ltd. The Trustee has completed service of process in all but 15 adversary proceedings, for which the Trustee is currently in the process of effectuating international service of process.

156. To date, the subsequent transferee defendants have filed 63 motions seeking to withdraw the reference 61 of which have been granted. In addition to the motions to withdraw the reference, one motion to dismiss has been filed by a subsequent transferee defendant in the Bankruptcy Court. The motion to dismiss has been fully briefed. This Court held a hearing on the motion to dismiss on August 8, 2012. The motion to dismiss is currently under consideration.

### iii. *Picard v. ABN AMRO Bank N.A.*

157. On December 8, 2010, the Trustee and B&H commenced an action against ABN AMRO Bank N.A. (presently known as The Royal Bank of Scotland N.V.), ABN AMRO Incorporated, (collectively the "ABN/RBS Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited Ltd. *Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (Bankr. S.D.N.Y.) (BRL) (the "ABN/RBS Action").

158. On September 30, 2011, the ABN/RBS Defendants moved for withdrawal of the reference. *Picard v. ABN AMRO Bank N.A.*, No. 11 Civ. 6878 (S.D.N.Y.) (JSR) (ECF Nos. 1-3). On January 11, 2012, the Trustee and SIPC opposed the motion. (ECF Nos. 12-14). On January

27, 2012, the ABN/RBS Defendants filed reply papers.  (ECF No. 15).  The District Court

granted the motion on May 15, 2012, allowing the ABN/RBS Defendants to move to dismiss as

to the issues of 550(a) and 546(g).  (ECF No. 21).

159.   On June 18, 2012, the ABN/RBS Defendants filed a motion to dismiss the

Trustee's Complaint claiming the safe harbor of 546(g) bars the Trustee's subsequent transferee

claims.  (ECF Nos. 29-31).  On August 14, 2012, the Trustee filed an Amended Complaint.

(ECF No. 32).  On September 5, 2012, the ABN/RBS Defendants filed a motion to dismiss the

Trustee's Amended Complaint, again claiming the safe harbor of 546(g) bars the Trustee's

subsequent transferee claims.  (ECF Nos. 33-35).  On September 25, 2012, the Trustee and SIPC

opposed the motion.  (ECF Nos. 36-37).  On August 28, 2012, the ABN/RBS Defendants filed

reply papers.  (ECF No. 38).  Oral argument is currently scheduled to be held on November 1,

2012.

### iv.    *Picard v. ABN AMRO (Ireland) Ltd.*

160.   On December 8, 2010, the Trustee and B&H commenced an action against ABN

AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Solutions Bank (Ireland) Limited), ABN

Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Solutions Custodial Services (Ireland) Ltd.)

(collectively the "ABN (Ireland) Defendants"), Rye Select Broad Market XL Fund, LP, Rye

Select Broad Market XL Portfolio Limited.  *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No.

10-05355 (Bankr. S.D.N.Y.) (BRL) (the "ABN (Ireland) Action").

161.   On September 30, 2011, the ABN AMRO Defendants moved for withdrawal of

the reference.  *Picard v. ABN AMRO (Ireland) Ltd.,* No. 11 Civ. 6877 (S.D.N.Y.) (JSR) (ECF

No. 1-3).  On January 11, 2012, the Trustee opposed the motion to withdraw the reference.  (ECF

Nos. 13-14).  On January 27, 2012, the ABN AMRO Defendants filed reply papers.  (ECF Nos.

15-16).  The District Court granted the motion on May 15, 2012, allowing the ABN (Ireland) Defendants to move to dismiss as to the issues of 550 and 546(g).  (ECF No. 22).

162.    On June 13, 2012, the ABN (Ireland) Defendants filed a motion to dismiss the Trustee's Complaint claiming the safe harbor of 546(g) bars the Trustee's subsequent transferee claims.  (ECF Nos. 27-29).  On July 3, 2012, the Trustee filed an Amended Complaint.  (ECF No. 33).  On July 24, 2012, the ABN (Ireland) Defendants filed a motion to dismiss the Trustee's Amended Complaint, again claiming the safe harbor of 546(g) bars the Trustee's subsequent transfer claims.  (ECF Nos. 34-36).  On August 14, 2012, the Trustee and SIPC opposed the motion to dismiss the Amended Complaint.  (ECF Nos. 37-38).  On August 28, 2012, the ABN (Ireland) Defendants filed reply papers. (ECF Nos. 39-40).

### v.    *Picard v. Citibank*

163.    On December 8, 2010, the Trustee and B&H commenced an action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited ("Citigroup").  *Picard v. Citibank*, Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y.) (BRL) (the "Citigroup Action").  On November 2, 2011, Citigroup moved for withdrawal of the reference.  *Picard v. Citibank,* No. 11 Civ. 7825 (S.D.N.Y.) (JSR) (ECF Nos. 1-3).  On March 2, 2012, the Trustee opposed the motion to withdraw the reference, and oral argument was held on May 1, 2012.  (ECF Nos. 13-15).  On July 2, 2012, the District Court granted Citigroup's motion, allowing Citigroup to move to dismiss as to the issues of 550(a) and 546(g).  No. 12 MC 115 (JSR) (ECF No. 214).

164.    On August 15, 2012, Citigroup filed a motion to dismiss claiming that the safe harbor of 546(g) bars Trustee's subsequent transferee claims.  *Picard v. Citibank,* No. 11 Civ. 7825 (S.D.N.Y.) (JSR) (ECF Nos. 25-28).  On August 24, 2012, the Trustee and SIPC opposed

Citibank's motion dismiss.  (ECF Nos. 30-31).  On August 31, 2012, Citigroup filed reply

papers.  (ECF No. 32).

      **vi.**    ***Picard v. Cohmad Sec. Corp.***

165.    On June 22, 2009, the Trustee and B&H commenced an adversary proceeding

against Madoff-insiders Cohmad Securities Corporation, Maurice ("Sonny") J. Cohn, Marcia B.

Cohn, and several other defendants (the "Cohmad Defendants").  *Picard v. Cohmad Sec. Corp.*,

Adv. Pro. No. 09-01305 (Bankr. S.D.N.Y.) (BRL).  The Complaint seeks to avoid and recover of

fictitious profits withdrawn by the Cohmad Defendants and the return of commissions and fees

transferred directly from BLMIS to Sonny Cohn and Cohmad.  On October 8, 2009, the Trustee

filed an Amended Complaint.  (ECF No. 82).  The Cohmad Defendants filed numerous Motions

to Dismiss, which the Trustee and B&H opposed.  (ECF No. 135).

166.    On August 1, 2011, this Court issued its Memorandum Decision and Order

Denying Defendants' Motions to Dismiss Trustee's Complaint.  (ECF No. 209).  This Court

found that the Trustee had adequately pled that the transfers received by the Cohmad Defendants

in excess of their principal were not transferred for reasonably equivalent value, and that

Cohmad and Sonny Cohn lacked good faith in receiving commissions from Madoff.  *Picard v.

Cohmad Sec. Corp.*, 454 B.R. 317, at *10 (Bankr. S.D.N.Y. 2011).

167.    Certain of the Cohmad Defendants filed a Motion for Leave to Appeal, (ECF Nos.

212-13), which remains pending before United States District Judge Thomas P. Griesa.  *See

Picard v. Cohmad Sec. Corp.,* No. 11 MC 00337 (S.D.N.Y.) (TPG).

168.    Meanwhile, the parties have engaged in discovery.  The Trustee has served

discovery on all parties, and discovery is ongoing.

169.    In March and April 2012, the Cohmad Defendants moved to withdraw the

reference from this Court.  The Cohmad Defendants have participated in common briefing on the

issue of the application of section 546(e) to the Trustee's claims, as well as the appropriate standard of good faith to be pled in connection with sections 548 and 550 of the Bankruptcy Code.

    **vii.**    *Picard v. Defender*

170.    On December 5, 2010, the Trustee and B&H commenced an adversary proceeding against Defender Limited, and individuals and companies responsible for its creation and management. *Picard v. Defender Limited, et al.*, Adv. Pro. No. 10-05229 (Bankr. S.D.N.Y.) (BRL) (the "Defender Action").

171.    The defendants named in the Defender Action are: Defender Limited, Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann (collectively the "Foreign Defendants"), and Reliance International Research, LLC, and Justin Lowe (collectively the "Domestic Defendants"). On April 2, 2012, the Foreign Defendants and the Domestic Defendants separately moved to withdraw the reference. (ECF Nos. 24, 28). On May 18, 2012, United States District Judge Jed S. Rakoff withdrew the reference in part for the Foreign Defendants and the Domestic Defendants to consider the Trustee's standing to assert common law claims and issues related to the Securities Litigation Uniform Standards Act ("SLUSA"). No. 12-cv-02800 (S.D.N.Y.) (JSR) (ECF No. 7); No. 12-cv-02871 (S.D.N.Y) (JSR) (ECF No. 7). In that same order, Judge Rakoff consolidated the cases with others into case 12-mc-00115 and issued a consolidated briefing schedule.

172.    On April 27, 2012, defendants Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann (the "Moving Defendants") filed a motion to dismiss for lack of personal jurisdiction. *Defender Action*, (ECF No. 36). The Trustee opposed the motion. (ECF No. 49). By stipulation, the Moving Defendants must file their reply brief on or before October 26, 2012. (ECF No. 54). This motion remains pending.

173.    On August 3, 2012, as part of the consolidated briefing schedule under 12-mc-00115, defendants, including all defendants in the Defender Action, filed a motion to dismiss all common law claims asserted against them by the Trustee.  No. 12-mc-00115 (S.D.N.Y.) (ECF No. 270).  On September 14, 2012, the Trustee and B&H filed a brief in opposition to this motion (ECF No. 342), and the defendants filed a reply brief October 5, 2012 (ECF No. 378).  Judge Rakoff heard oral argument on this motion on October 15, 2012, and this motion remains pending.

### viii.    *Picard v. Friedman, et al.*

174.    On December 9, 2010, the Trustee commenced an adversary proceeding in this Court, seeking to recover fraudulent transfers from S. Donald Friedman, individually and as a beneficiary of an Individual Retirement Account, Saundra Friedman, Ari Friedman, Broadway-Elmhurst Co. LLC and NTC & Co. LLP.  NTC & Co. LLP was subsequently voluntarily dismissed as a defendant.  *Picard v. Friedman, et al.*, Adv. Pro. No. 10-5395 (Bankr. S.D.N.Y.) (BRL).  The Complaint alleges that the defendants received fraudulent transfers from BLMIS in bad faith.  The Complaint was amended on March 31, 2011 (ECF No. 13) to add allegations concerning newly-discovered transfers after defendants sought to dismiss the action on February 18, 2011.  (ECF Nos. 7, 8).  The defendants answered the Amended Complaint on May 13, 2011.

175.    On March 30, 2012, Defendants moved to withdraw the reference to the District Court.  The motion was docketed as *Picard v. Friedman, et al.,* No. 12-02343 (S.D.N.Y.) (JSR).  The motion has been granted, in part, respecting certain discrete issues common to numerous withdrawal motions filed in Madoff-related adversary proceedings.  Defendants, acting collectively with other defendants in such adversary proceedings, have moved to dismiss the case in connection with certain of those discrete issues.  The motion has been deemed denied

53

respecting one issue, mandatory withdrawals from Individual Retirement Accounts, and briefing has been completed or is ongoing respecting the other discreet issues.

176.   Discovery in the Trustee's action has continued to proceed pending a decision from the District Court resolving the motions to dismiss concerning common issues.  During the Report Period, a so-ordered case management plan was entered.  *Picard v. Friedman, et al.*, Adv. Pro. No. 10-5395 (ECF No. 52).

### ix.   *Picard v. Irwin Lipkin, et al.*

177.   On November 12, 2010, the Trustee and B&H commenced an adversary proceeding against defendants and former BLMIS employees Irwin Lipkin and Eric Lipkin, and their family members.  *Picard v. Irwin Lipkin, et al.*, Adv. Pro. No. 10-4218 (Bankr. S.D.N.Y.) (BRL).  Irwin Lipkin is the father of Eric Lipkin.  The Complaint seeks $9,175,967.00 in damages.

178.   Eric Lipkin was subsequently charged with a six count indictment by the United States Attorney's Office, asserting that he manufactured customer statements to reflect false holdings of customer accounts and falsified the books and records of BLMIS.  Eric Lipkin entered into a cooperation agreement and, on June 6, 2011, pleaded guilty to all six counts.  He is awaiting sentencing.  Irwin Lipkin was expected to enter a guilty plea on September 13, 2012 but this date was adjourned.  The Trustee is continuing to pursue litigation against the remaining non-indicted defendants.

### x.   *Picard v. J. Ezra Merkin, et al.*

179.   On May 7, 2009, the Trustee and B&H commenced an adversary proceeding against sophisticated money manager and Madoff associate J. Ezra Merkin and his funds, Gabriel Capital, L.P., Ariel Fund Ltd., Ascot Partners, L.P., and Gabriel Capital Corporation (collectively, the "Merkin Defendants").  *Picard v. J. Ezra Merkin*, Adv. Pro. No. 09-01182

(Bankr. S.D.N.Y.) (BRL). The Complaint alleges that Merkin knew or should have known that Madoff's IA business was predicated on fraud, and seeks the avoidance and recovery of almost $500 million in preference payments and fraudulent transfers to the Merkin Defendants. On August 6, 2009, the Trustee and B&H filed an Amended Complaint. (ECF No. 10).

180. On November 4, 2009, Bart M. Schwartz, as Receiver ("Receiver") of defendants Ariel Fund Limited and Gabriel Capital, L.P., filed a Motion to Dismiss the Complaint, as did the remaining defendants in the proceeding. (ECF Nos. 16, 22). The Trustee opposed the motions. (ECF Nos. 29-30). The Trustee and B&H received leave to file a Second Amended Complaint (ECF No. 46), and did so on December 23, 2009 (ECF No. 49). The Merkin Defendants renewed their motions to dismiss (ECF Nos. 53, 55), which the Trustee opposed (ECF Nos. 62-63).

181. On November 17, 2010, this Court entered its Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss Trustee's Complaint. (ECF No. 84); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010). Among other holdings, the Court held that the Trustee sufficiently pleaded his federal and state law claims seeking to avoid and to recover actual and constructive fraudulent transfers. The Court also held that the Funds were not entitled at the pleading stage to dismissal of the Trustee's actual fraudulent transfer claims pursuant to the section 548(c) "good faith transferee" affirmative defense. In addition, the Court held that the Funds were not, at the pleading stage, entitled to dismissal of the Bankruptcy Code-based constructive fraudulent transfer claims pursuant to the section 546(e) "safe harbor" affirmative defense.

182. The Receiver filed a Motion for Leave to Appeal the Court's Memorandum Decision and Order. (ECF No. 90); 11 MC 00012 (S.D.N.Y.) (KMW). On August 31, 2011,

United States District Judge Kimba M. Wood denied the motion. *Picard v. Merkin* (*In re Bernard L. Madoff Inv. Sec. LLC*), No. 11 MC 00012, 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011). Among other findings, Judge Wood determined that there were no "substantial grounds for difference of opinion as to the correctness of the standards relied on by the Bankruptcy Court in its refusal—at the pleading stage—to dismiss on the grounds of [the Merkin Defendants'] § 546(e) affirmative defense." *Id.* at *12.

183. This Court entered a Discovery Order on December 7, 2011. *Picard v. J. Ezra Merkin*, Adv. Pro. No. 09-01182 (Bankr. S.D.N.Y.) (BRL) (ECF No. 116). On April 2, 2012, Bart M. Schwartz, as Receiver of Defendants Ariel Fund Limited and Gabriel Capital, L.P., filed a motion to withdraw the reference and marked the Merkin case as related to the Katz-Wilpon Action. (ECF No. 119). The District Court subsequently withdrew the reference only as to certain limited issues.

184. In connection with ongoing discovery, on May 30, 2012, the Trustee and the Merkin Defendants agreed to submit a 120-day extension to the Case Management Plan and appointed an arbitrator to adjudicate discovery disputes. (ECF No. 127). The parties jointly agreed to appoint Melanie Cyganowski as binding arbitrator. To date, arbitrator Cyganowski has heard several disputes between the parties regarding third-party documents and bank records. In July 2012, the Trustee and B&H successfully argued for an extension of discovery deadlines, and the served additional interrogatories and requests for production upon the Merkin Defendants. On July 18, 2012, the arbitrator also ruled in favor of the Trustee and ordered the production of bank records from JP Morgan Chase, JP Morgan Chase for Bear Stearns and Citibank for accounts associated with Gabriel Capital Corporation and J. Ezra Merkin.

185.    During this Report Period, the Trustee also continued preparing for fact witness depositions and expert discovery by conducting extensive and ongoing analysis of documents produced by the Merkin Defendants and from third parties.  Since April 2012, the Trustee has issued seventeen Rule 45 documents subpoenas, and has fifteen depositions scheduled for the months of October and November 2012.  On October 3, 2012, the parties entered a Third Amended Case Management Plan.  (ECF No. 130).

186.    Subsequent to a press release on June 25, 2012 by the New York Attorney General ("NYAG") announcing a settlement with the Merkin Defendants, the Trustee prepared and filed with this Court comprehensive injunction pleadings and a complaint seeking to enjoin the NYAG and others from consummating the settlement or transferring or otherwise dissipating any assets.  *Picard v. Schneiderman*, Adv. Pro. No. 12-01778 (Bankr. S.D.N.Y.) (BRL) (ECF Nos. 1,3).  The NYAG and other settling parties filed a motion to withdraw the reference in response (ECF No. 17), and that motion was fully briefed as of October 11, 2012.  In accordance with a stipulation and order entered into among the parties, following a determination of the motion to withdraw the reference by the District Court, further briefing on the Trustee's injunction application will take place.

### xi.    *Picard v. Kingate*

187.    All defendants have moved to withdraw the reference, and all defendants have participated in briefing certain common issues before the United States District Court.  The issue of the effect, if any, upon the Trustee's right to prosecute his avoidance and other claims under the United States Supreme Court decision in *Stern v. Marshall* has been fully briefed and oral argument was held on June 18, 2012.  The defendants in the Kingate litigation submitted briefs on the issues of the applicability of 546(e), the Trustee's burden to prove the heightened standard

of willful blindness, and SLUSA.  The proceedings commenced by the Trustee in the U.K. are currently stayed.

### xii.   *Picard v. Magnify Inc., et al.*

188.   On December 6, 2010, the Trustee filed a complaint against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the "Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), sections 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants.  *Picard v. Magnify Inc., et al.*, Adv. Pro. No. 10-05279 (Bankr. S.D.N.Y.) (BRL).  On September 21, 2011, the Trustee filed an amended complaint in the action.  (ECF No. 39).

189.   On April 2, 2012, defendants Robert H. Book and R.H. Book LLC moved to withdraw the reference to the District Court for the Southern District of New York on several grounds.  The motion was docketed as No. 12-cv-02482 (S.D.N.Y.) (JSR).  The motion has been granted, in part, respecting certain discrete issues common to numerous withdrawal motions filed in Madoff-related adversary proceedings. Defendants, acting collectively with other defendants in such adversary proceedings, have moved to dismiss the case in connection with certain of those discrete issues.  Briefing has been completed or is ongoing respecting these discrete issues.

190.   Defendant Kurt Brunner moved to dismiss the Trustee's complaint for lack of personal jurisdiction on September 1, 2011, and supplemented this motion with regard to allegations in the amended complaint on November 3, 2011.  *Picard v. Magnify Inc., et al.*, Adv. Pro. No. 10-05279 (Bankr S.D.N.Y.) (ECF Nos. 32, and 48, respectively).  On June 14, 2012,

this Court held a hearing on Mr. Brunner's motion to dismiss for lack of personal jurisdiction. This Court denied the motion and ordered jurisdictional discovery over Mr. Brunner related to "the degree to which Brunner controlled and profited from [defendants] Magnify, Premero and Strand." This Court entered an order to this effect on June 15, 2012. (ECF No. 97). Following this order, the Trustee drafted and served written discovery on Mr. Brunner, and has since received responses. The Trustee has also made arrangements to depose Mr. Brunner per the court's order permitting jurisdictional discovery. The parties have agreed to extend the deadline for the close of jurisdictional discovery past the current deadline of October 30, 2012.

191.    On July 18, 2012, the Trustee's counsel in Israel filed a motion to halt the voluntary liquidation of the defendant Yeshaya Horowitz Association and transfer the liquidation to a court-supervised liquidation before the Jerusalem District Court.

192.    In addition to this activity, and pursuant to the parties' Case Management Plan, the Trustee has served document requests on several of the defendants, served subpoenas pursuant to Fed. R. Civ. P. 45 on certain third party banks, and served amended initial disclosures to all defendants.

### xiii.    *Picard v. Maxam Absolute Return Fund, L.P. et al.*

193.    During this Report Period, United States District Judge J. Paul Oetken issued a ruling on May 4, 2012 affirming this Court's Order Pursuant to Sections 362(a) and 105(a) of the Bankruptcy Code Enforcing the Automatic Stay, Stay Orders, and SIPA and Granting Trustee's Application for an Injunction, dated October 12, 2011. *Maxam v. Picard*, No. 11-cv-08629 (S.D.N.Y.) (JPO) (ECF No. 16). That order had enjoined an action filed by Maxam Absolute Return Fund Limited in the Cayman Islands against the Trustee. The defendants timely filed an appeal with the Second Circuit (Case No. 12-2194) and the appeal remains pending. In addition, the defendants filed a Motion for Judgment on the Pleadings on May 24, 2012. The Trustee

worked to prepare a response to that motion until Judge Rakoff stayed all motions pertaining to common briefing issues.  The parties also engaged in substantial discovery during this time.

> ### xiv.    *Picard v. Michael Lieberbaum, et al.*

194.    On December 10, 2010, the Trustee brought an avoidance action against husband and wife Michael and Cynthia Lieberbaum (collectively, the "Lieberbaums"), seeking to recover $2,364,600 in principal and fictitious profits.  *Picard v. Michael Lieberbaum*, *et al.*, Adv. Pro. No. 10-05406 (Bankr. S.D.N.Y.) (BRL).  The Trustee alleges that the Lieberbaums profited from the Ponzi scheme and from a personal relationship with the Madoff through the annual receipt of side, off-the-books payments of thousands of dollars of cash, which spanned approximately thirty years.  In addition to the cash, in or around 1989, Mr. Lieberbaum, who was a broker at Morgan Stanley, also orchestrated an arrangement with Madoff, whereby Madoff allegedly allowed Mr. Lieberbaum to use BLMIS's name and BLMIS's trading account to trade options for himself.  Because the Lieberbaums received hundreds of thousands of dollars in cash from BLMIS and because Mr. Lieberbaum acted with Madoff to violate several FINRA, NASD, and other regulations, the complaint alleges that the Lieberbaums knew or should have known that BLMIS was involved in fraudulent activity.

195.    The Lieberbaums filed an answer to the Trustee's complaint, counterclaims, and a demand for a jury trial on April 18, 2011.  (ECF No. 5).  On August 25, 2011, this Court entered a Case Management Plan.  (ECF No. 21).  On February 21, 2012, this Court entered an Amended Case Management Plan.  (ECF No. 26).  During the course of discovery, the Trustee has served document requests on various third parties, taken the depositions of several third-party witnesses, prepared objections and responses to the Lieberbaums' document requests, produced documents responsive to Lieberbaums' document requests, and prepared and served

document requests and interrogatories on the Lieberbaums.  Discovery ends January 31, 2013 and all dispositive motions must be filed by September 3, 2013.

     **xv.**   *Picard v. Peter B. Madoff, et al.*

196.  On October 2, 2009, the Trustee and B&H commenced an adversary proceeding against Peter Madoff, Andrew Madoff, Shana Madoff, and Mark Madoff (the "Family Defendants").  *Picard v. Peter B. Madoff*, Adv. Pro. No. 09-01503 (Bankr. S.D.N.Y.) (BRL). The complaint sought to avoid and recover preferential transfers, fraudulent transfers, and damages for breach of fiduciary duty, negligence, unjust enrichment, constructive trust, and accounting.  On March 15, 2010, the Family Defendants filed a Motion to Dismiss the complaint.  (ECF Nos. 13-19).  The Trustee and B&H opposed the motion.  (ECF No. 25).

197.  On September 22, 2011, this Court filed its Memorandum Decision And Order Denying In Part And Granting In Part Defendants' Motion To Dismiss Trustee's Complaint. (ECF No. 55); *Picard v. Peter B. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011).  This Court upheld the Trustee's common law claims for breach of fiduciary duty, negligence, unjust enrichment, constructive trust, and accounting.  In so doing, the Court determined that the Trustee's common law claims: (i) were not barred by the doctrine of *in pari delicto* or the related *Wagoner* Rule because the Family Defendants were alleged to be insiders and fiduciaries of BLMIS; and (ii) were not preempted by the Martin Act because those claims were unrelated to the fraudulent investment advice given by Madoff to customers of the IA Business.  This Court also ruled that because the New York Attorney General has no enforcement power under the Martin Act to bring the types of claims asserted in the Trustee's Complaint, which do not require proof of scienter, the common law claims would not interfere with the Martin Act's statutory enforcement mechanism.

198.    This Court dismissed the certain of the Trustee's claims for a failure to identify the transfers with the requisite particularity, noting that "[r]ectifying the majority of these pleading deficiencies upon amendment should not prove to be a Herculean task." *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, at *7. This Court granted leave to the Trustee to amend his complaint.

199.    On October 6, 2011, Andrew Madoff and the Estate of Mark Madoff filed a Motion for Leave to Appeal the Bankruptcy Court's decision, (ECF Nos. 56-57), which was assigned to United States District Judge William H. Pauley, III. *See* No. 11 MC 00379 (S.D.N.Y.) (WJP). On December 22, 2011, Judge Pauley issued a decision denying the Motion for Leave to Appeal.

200.    On November 7, 2011, the Trustee filed an Amended Complaint that identified the date and amount of each transfer alleged in the action. *Picard v. Peter B. Madoff*, Adv. Pro. No. 09-01503 (Bankr. S.D.N.Y.) (BRL) (ECF No. 64). The Amended Complaint also increased the amount sought from the Family Defendants from over $198 million to over $226 million. This increase was due, in part, to the ongoing nature of the Trustee's investigation, which uncovered additional fraudulent transfers to the Family Defendants in various forms.

201.    On December 23, 2011, the Trustee filed a Motion for Leave to File a Second Amended Complaint. (ECF No. 71). In his Proposed Second Amended Complaint, the Trustee sought to name as defendants Mark Madoff's widow, Stephanie S. Mack, Mark Madoff's ex-spouse, Susan Elkin, and Andrew Madoff's wife, Deborah Madoff (collectively, the "Spouse Defendants"). The Trustee also sought to add additional fraudulent transfer claims against the initial defendants, as well as subsequent transferee claims against both the initial and the Spouse Defendants. Lastly, the Trustee sought to make certain clarifications with regard to previously

asserted fraudulent transfer claims.  The Spouse Defendants and Andrew Madoff, individually and as Executor of the Estate of Mark Madoff, opposed the Motion.  (ECF Nos. 89, 91, 94 and 96).

202.    This Court heard oral arguments on the Trustee's motion on April 3, 2012.  On April 4, 2012, this Court issued a Memorandum Decision and Order Denying in Part and Granting in Part the Trustee's Motion for Leave to File a Second Amended Complaint.  (ECF No. 106).  The Court granted the Trustee leave to name Stephanie S. Mack and Deborah Madoff as defendants with respect to certain common law causes of action as to which the statute of limitation had not yet run.  The Court denied leave to name the Spouse Defendants as defendants with respect to the bankruptcy causes of action and certain common law causes of action for which the statute of limitation had expired.  The Court granted the Trustee leave to pursue additional fraudulent transfer claims against the initial defendants, as well as subsequent transferee claims against both the initial defendants and the Spouse Defendants.  Finally, the Court granted the Trustee leave to make the necessary clarifications with regard to previously asserted claims.

203.    On April 2, 2012, putative defendants Stephanie S. Mack and Deborah Madoff moved to withdraw the reference in this case, notwithstanding that they were not yet named as defendants.  (ECF Nos. 100, 104).  In their moving papers (ECF Nos. 101, 105), Ms. Mack and Ms. Madoff noted that while they had not yet been named as defendants, they were nevertheless filing the motion to withdraw the reference by the Court-instituted April 2, 2012 deadline out of an abundance of caution.  They both argued, in part, that the cases against them ought to be precluded by the rule of *in pari delicto*, specifically, because they were not insiders of BLMIS, as to whom Courts have recognized a narrow exception to this rule.  While Ms. Mack's motion

sought withdrawal of the reference only with respect to the claims against her, Ms. Madoff's motion sought to withdraw the reference with respect to the entire case. Ms. Madoff also filed a separate motion to withdraw the reference in the related action filed against her by the Trustee. *Picard v. Deborah Madoff, et al.*, Adv. Pro. No. 10-05332 (Bankr. S.D.N.Y.) (ECF Nos. 22, 23).

204.    On September 14, 2012, the Trustee filed his memorandum of law in opposition to the withdrawal motion filed by Ms. Mack and Ms. Madoff to the District Court. No. 12-mc-00115 (S.D.N.Y.) (ECF No. 344). Ms. Mack and Ms. Madoff filed a reply memorandum in further support of their motion. (ECF No. 378). Judge Rakoff heard oral argument by all parties on the motion to withdraw on October 16, 2012.

205.    On June 29, 2012, Peter Madoff pled guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion. Specifically, Peter Madoff pled guilty to one count of conspiracy to (a) commit securities fraud, (b) falsify records of an investment adviser, (c) falsify records of a broker-dealer, (d) make false filings with the Securities and Exchange Commission, (e) commit mail fraud, (f) falsify statements in relation to documents required by ERISA, and (g) obstruct and impede the lawful governmental function of the Internal Revenue Service. He also pled guilty to one count of falsifying records of an investment advisor. *See U.S. v. O'Hara, et al.*, No 10-cr-00228 (LTS) (ECF No. 246) (the "Preliminary Forfeiture Order"). Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the government. In addition, the Preliminary Forfeiture Order covered certain significant property owned by Shana Madoff that was forfeited under the same plea agreement.

xvi.    ***Picard v. Richard M. Glantz, et al.***

206.    On December 9, 2010, the Trustee and B&H commenced an adversary proceeding against Richard Glantz and several related individuals and entities. The Trustee

alleges that Richard Glantz, and his deceased father, Edward Glantz, created and managed entities that pooled many millions of dollars of investor funds to be funneled into BLMIS. *See Picard v. Richard M. Glantz, et al.*, Adv. Pro. No. 10-5394 (Bankr. S.D.N.Y.) (BRL).  The Trustee further alleges that, after Richard Glantz, Edward Glantz and entities they created and managed were sued by the SEC for violations of the federal securities laws and were permanently enjoined from future securities laws violations, Richard Glantz and Edward Glantz arrived at a new arrangement with Madoff which resulted in Richard Glantz and Edward Glantz receiving fraudulent side payments.  In addition, Richard Glantz continued to funnel his own money, his family's money, and other people's money into BLMIS though new entities.  The Trustee alleges that the defendants collectively withdrew more than $113,000,000.00 in principal and profit from BLMIS.

207.    To date, the Trustee has dismissed thirteen defendants in this matter.  There are twenty-six defendants remaining in this adversary proceeding.

208.    On February 1, 2012, the remaining defendants moved in this Court to dismiss the complaint.  The Trustee and counsel for the defendants subsequently entered into a stipulation, which was so ordered by the Court on April 2, 2012, pursuant to which the Trustee had until May 16, 2012 to amend the Complaint.  (ECF No. 37).  The defendants had until June 27, 2012 to either supplement their motion to dismiss or file a new motion to dismiss.

209.    On March 31, 2012, all the remaining defendants filed a motion to withdraw the reference.  (ECF.  No. 34).

210.    On April 11, 2012, the motion to withdraw the reference was referred to Judge Rakoff.  *See* No. 12-cv-02778 (S.D.N.Y.) (JSR).  On May 15, May 16, June 1 and June 25, 2012,

the District Court entered orders withdrawing the reference, in part, for the limited purpose of hearing and determining certain common issues. (ECF Nos. 7, 9, 10, 11).

211.    The Trustee and defendants entered into a stipulation, which was so ordered by this Court on September 12, 2012, pursuant to which the Trustee has until January 18, 2013 to amend the Complaint. (ECF. No. 41). The Defendants may either supplement their motion to dismiss or file a new motion to dismiss by March 1, 2013.

      **xvii.**   *Picard v. Stanley Chais, et al.*

212.    On May 1, 2009, the Trustee filed a complaint against Stanley Chais and Pamela Chais, certain members of their family, and a number of related trusts and entities (collectively, the "Chais Defendants") seeking the return of more than $1.3 billion under SIPA §§ 78fff(b) and 78fff-2(c)(3), sections 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants (the "Chais Action"). *Picard v. Chais*, Adv. Pro. No., 09-1172 (Bankr. S.D.N.Y.) (BRL).

213.    On January 12, 2012, the Trustee filed an action (the "Hall Action"), pursuant to sections 362(a) and 105(a) of the Bankruptcy Code and sections 78eee(a)(3) and 78eee(b)(2)(B) of SIPA, seeking to (i) enforce the December 15, 2008 stay order and related orders ("Stay Orders") of the United States District Court for the Southern District of New York and the automatic stay in the liquidation proceeding, (ii) declare that competing actions brought by certain third party plaintiffs (the "Third Party Plaintiffs"), including the Attorney General for the State of California, against Chais and certain others of the Chais Defendants in various jurisdictions (collectively, the "Third Party Actions") violate the Stay Orders and the automatic stay and are void *ab initio* as against the Chais Defendants; and (iii) preliminarily enjoin the

Third Party Plaintiffs from litigating the Third Party Actions or any other actions against any of the Chais Defendants pending the completion of the Chais Action.  *Picard v. Hall*, Adv. Pro. No., 12-1001 (Bankr. S.D.N.Y.) (BRL).

214.    On April 2, 2012, certain of the defendants moved to withdraw the reference to the District Court for the Southern District of New York on several grounds.  *See Picard v. Chais*, No. 12-cv-02371 (S.D.N.Y) (JSR); *Picard v. Chais*, No. 12-cv-02658 (S.D.N.Y.) (JSR). Both motions have been granted, in part, respecting certain discrete issues common to numerous withdrawal motions filed in Madoff-related adversary proceedings.  The moving defendants, acting collectively with other defendants in such adversary proceedings, have moved to dismiss the case in connection with certain of those discrete issues.  Briefing has been completed or is ongoing respecting these discrete issues.

215.    On May 1, 2012, the Trustee filed a Reply Memorandum of Law in Support of Trustee's Application for Enforcement of Automatic Stay and Preliminary Injunction in the Hall Action.  *Picard v. Hall*, Adv. Pro. No. 12-1001 (Bankr. S.D.N.Y) (ECF No. 23).  On June 6, 2012, the Trustee filed a Supplemental Brief in Support of Trustee's Application for Enforcement of Automatic Stay and Preliminary Injunction, filed June 6, 2012 in the Hall Action. (ECF No. 28).  On July 3, 2012, the Trustee filed a Supplemental Reply Brief in Support of Trustee's Application for Enforcement of Automatic Stay and Preliminary Injunction, in the Stay Action. (ECF No. 32).

216.    On July 18, 2012, by order of this Court, the parties in the Chais Action and the Hall Action were ordered to participate in a joint mediation of both actions.  *Picard v. Chais*, Adv. Pro. No., 09-1172 (Bankr. S.D.N.Y.) (ECF No.128).  The Trustee prepared a confidential

mediation statement for submission the appointed mediator, James L. Garrity, Jr., on October 1, 2012.  The mediation is currently scheduled to begin on October 30, 2012.

217.    In addition to this activity, the Trustee has drafted a proposed case management plan regarding discovery in the Chais Action and readied an amended complaint for filing with additional factual allegations regarding defendant Michael Chasalow.  Per a stipulation with Mr. Chasalow, the Trustee has until November 19, 2012 to file the amended complaint in the Chais Action.  (ECF No. 130).

## C.    Injunction Proceedings

218.    The Trustee has commenced numerous injunction actions seeking to enjoin third-party lawsuits brought against defendants who also have been named as defendants in the Trustee's avoidance actions. During the Report Period, there were significant developments in the Bankruptcy Court and the District Court with respect to the Trustee's injunction proceedings, including with respect to Picower Defendants, the Family Defendants, the Chais Defendants, the Maxam Absolute Return Fund L.P. and related entities (the "Maxam Defendants"), the Merkin Defendants, and Access Management Luxembourg S.A. and related entities (the "Luxembourg Defendants").  Through these proceedings, the Trustee has sought to enforce the automatic stay established by section 362 of the Bankruptcy Code and to enjoin third-party actions under section 105 of the Code in order to facilitate the orderly administration of the BLMIS liquidation, and to preserve assets from which the Trustee may recover for the benefit of all BLMIS customers.  As a result of his efforts, very significant rulings favoring the estate have been obtained.

(a)    *Picard v. Fox*, Adv. Pro. No. 10-03114 (BRL), Case Nos. 10-04652, 10-cv-07101, and 10-cv-07219 (JGK); *Picard v. Picower*, Adv. Pro. No. 09-01197 (BRL), Case Nos. 11-cv-01328, 11-cv-01298 (JGK); *In re Bernard L. Madoff Inv. Sec. LLC*, 12-1645 and consolidated cases (2d Cir.)

219.    On March 31, 2010, the Trustee commenced an adversary proceeding in this Court, *Picard v. Fox*, Adv. Pro. No. 10-03114 (Bankr. S.D.N.Y.) (BRL), seeking to enjoin third-party actions that were commenced against the Picower Defendants by Adele Fox, Susanne Marshall, and classes they purport to represent (the "Fox Plaintiffs").

220.    Following significant briefing and argument, this Court held that: (i) the automatic stay and the December 15, 2008 stay order of the District Court apply, and hence the third-party actions are void *ab initio*; and (ii) preliminarily enjoined the actions pending the Trustee's settlement with the Picower Defendants or completion of the Trustee's Picower litigation.  *Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010).  The Fox Plaintiffs appealed the decision to the District Court.

221.    In connection with the Trustee's avoidance action in *Picard v. Picower,* Adv. Pro. No. 09-01197 (Bankr. S.D.N.Y.) (BRL), the Trustee subsequently reached a settlement with the Picower Defendants.  The Trustee then moved for approval of his settlement with the Picower Defendants and for the issuance of a permanent injunction in connection therewith.  On January 13, 2011, this Court issued an order approving the settlement and granting the requested injunction.  (ECF No. 43.)  The Fox Plaintiffs appealed this decision as well.

222.    The appeals were consolidated, and the propriety of this Court's rulings as to the injunctions and the settlement was argued by the Trustee and the Fox Plaintiffs on December 19, 2011.  On March 26, 2012, U.S. District Judge John G. Koeltl issued a written opinion affirming this Court's opinion in *Fox,* and the order approving the settlement between the Trustee and the Picower Defendants, and the related injunction.  *See Picard v. Fox*, 848 F. Supp. 2d 469

(S.D.N.Y. 2012). Judge Koeltl held that the Trustee's settlement with the Picower Defendants was "extraordinarily beneficial" to the BLMIS estate, and that the third-party actions were "substantively duplicative" of the Trustee's Picower litigation. *Id.* at 473, 481. Judge Koeltl also held that the third-party actions commenced by the Fox Plaintiffs were properly enjoined because they "plainly [. . .] jeopardize[d] the estate's ability to recover fraudulently transferred assets from the Picower Defendants . . . ." *Id.* at 486.

223. The Fox Plaintiffs filed notices of appeal of Judge Koeltl's order to the Second Circuit Court on April 24, 2012. The appeal is pending as Case No. 12-1645, together with consolidated cases. The appellate case has been fully briefed and a hearing has been scheduled for the week of November 19, 2012.

>    **(b)    *Picard v. Stahl*, Adv. Pro. No. 10-03268 (BRL), Case Nos. 11-cv-02246, 11-cv-02135, 11-cv-02392 (AKH), Case Nos. 11-5421 and 11-5428 (2d Cir.)**

224. On May 27, 2010, the Trustee commenced an adversary proceeding in this Court, *Picard v. Stahl,* Adv. Pro. No. 10-03268 (Bankr. S.D.N.Y.) (BRL), seeking to enjoin third-party actions commenced against the Madoff Defendants by Richard Stahl, Reed Abend, and a number of other unrelated plaintiffs (collectively, the "Stahl Plaintiffs"). The Trustee has brought an avoidance action against the Madoff Defendants in this Court. *Picard v. Peter B. Madoff*, Adv. Pro. No. 10-01503 (Bankr. S.D.N.Y.) (BRL).

225. This Court found that the automatic stay and the December 15, 2008 stay order of the District Court applied, and held that the third-party actions are void *ab initio* as against the Family Defendants. As an alternative part of the ruling, this Court also preliminarily enjoined the actions pending the completion of the Trustee's litigation against the Family Defendants. *Picard v. Stahl*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011). Several of the Stahl Plaintiffs appealed this decision.

226.    Following briefing and argument, on November 17, 2011, United States District Judge Alvin K. Hellerstein issued a bench ruling and summary order affirming this Court's opinion. *In re Bernard L. Madoff Inv. Sec. LLC*, Case No. 11-cv-2392 (AKH), 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011). Judge Hellerstein found that the third-party actions created "a waste of personal assets that the trustee seeks to recover" and that "the profusion of [the third-party] lawsuits makes it extremely difficult for the trustee to run his lawsuit expeditiously and economically in the interests of the creditors of the estate." *Id*. at 15. Judge Hellerstein recognized that "it's the rationale behind Section 362 and Section 105 to favor the trustee . . . ," and held that a preliminary injunction was proper "to allow the trustee the ability to pursue his actions and obtain rulings and finality on those rulings because the trustee is acting for the benefit of all creditors and not just a few." *Id.* at 13.

227.    The Stahl Plaintiffs have filed joint appeals of Judge Hellerstein's ruling with the Second Circuit, which are pending under Case Nos. 11-5421 and 11-5428. The appellate case has been fully briefed and a hearing has not yet been scheduled.

### (c)    *Picard v. Hall*, Adv. Pro. No. 12-01001 (BRL)

228.    On January 4, 2012, the Trustee commenced an adversary proceeding in this Court captioned *Picard v. Hall*, Adv. Pro. No. 12-01001 (Bankr. S.D.N.Y.) (BRL), seeking to enjoin several third-party actions against the Chais Defendants commenced by Douglas Hall, Steven Heimoff, and certain other plaintiffs, including the Office of the California Attorney General (collectively, the "Hall Plaintiffs"). The Trustee has brought an avoidance action against the Chais Defendants in this Court. *Picard v. Chais*, Adv. Pro. No. 10-01172 (Bankr. S.D.N.Y.) (BRL).

229.     The actions brought by the Hall Plaintiffs, among other things, threaten assets of the estate and the administration of the estate, and therefore the Trustee sought to enjoin the actions while his case against the Chais Defendants proceeds.

230.     This Court ordered mediation of the *Hall* proceeding, together with the Trustee's underlying avoidance action against the Chais Defendants and the Hall Plaintiffs' actions. The mediation proceeding is ongoing.

    **(d)     *Picard v. Maxam Absolute Return Fund et al.*, Adv. Pro. No. 10-05342 (BRL)**

231.     In his avoidance action against the Maxam Defendants, *Picard v. Maxam Absolute Return Fund et al.*, Adv. Pro. No. 10-05342 (Bankr. S.D.N.Y.) (BRL), the Trustee moved to enjoin an action commenced by the Maxam Defendants against Irving Picard in the Cayman Islands (the "Cayman Action") in violation of the automatic stay and the *Barton* doctrine. Through that action, the Maxam Defendants sought relief in a foreign court that they were not liable on the claims brought by the Trustee in the United States.

232.     Following briefing and argument, on October 12, 2011, this Court issued a bench memorandum decision and order agreeing with the Trustee and granting his application on the grounds that the Cayman Islands action violated the automatic stay, the District Court Stay Orders, SIPA, and the *Barton* doctrine. *See Picard v. Maxam Absolute Return Fund L.P.*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011). In the decision, this Court recognized that the bankruptcy automatic stay has worldwide reach. *See id.* at 115.

233.     On appeal, the District Court affirmed this Court in full. *See In re Bernard L. Madoff Inv. Sec. LLC*, 474 B.R. 76 (S.D.N.Y. 2012). The District Court held that the automatic stay had extraterritorial reach, that the Cayman Action violated the stay, that this Court properly exercised its injunctive authority, and that the interests of comity did not bar the injunction.

234.    The Maxam Defendants have appealed the District Court's decision to the Second Circuit.  The appeal is pending as Case No. 12-2194 and briefing is under way.

### (e)    *Picard v. Schneiderman*, Adv. Pro. No. 12-01778 (BRL)

235.    On August 1, 2012, the Trustee commenced an adversary proceeding in this Court captioned *Picard v. Schneiderman,* Adv. Pro. No. 12-01778 (Bankr. S.D.N.Y.) (BRL), seeking to enjoin a settlement (the "Settlement") by the New York Attorney General and others (the "Settling Plaintiffs") with Merkin Defendants purporting to resolve third-party actions by the Settling Plaintiffs with the Merkin Defendants.  The Trustee has sued the Merkin Defendants to recover fraudulent transfers in a separate proceeding.  *Picard v. Merkin*, Adv. Pro. No. 09-01182 (Bankr. S.D.N.Y.) (BRL).

236.    The Settling Plaintiffs moved to withdraw the reference, and the Merkin Defendants have joined the motion.  The withdrawal action is pending in District Court under Case Number 12 Civ. 06733.  Briefing was completed on October 11, 2012.

### (f)    *Goldman Lift-Stay Motions,* Adv. Pro. No. 08-01789 (BRL)

237.    In December 2011, A.G. Goldman and Pamela Goldman (the "Goldman Plaintiffs") moved before this Court to lift the automatic stay so that they could file putative securities class actions against the Picower estate and related entities.  Some of the counsel for the named plaintiffs are also representing the Fox Plaintiffs.  The Trustee opposed the lift-stay motions on the grounds articulated, among others, by Judge Koeltl in his decision and order affirming the Picower settlement and enforcing the automatic stay and injunction with respect to the Fox Plaintiffs.

238.    On June 20, 2012, this Court issued an order denying the Goldman Plaintiffs' motion.  *See Sec. Inv. Prot. Corp. v. In re Bernard L. Madoff Inv. Sec. LLC*, 477 B.R. 351, *2-3 (Bankr. S.D.N.Y. 2012).  The Court reasoned that the plaintiffs were using "inventive pleading"

to circumvent the automatic stay because their pleadings were identical to the Fox Plaintiffs'

enjoined actions. *Id*. at *2. The Court further held that the plaintiffs failed to assert any

particularized injury suffered by them, and that the plaintiffs were seeking to re-litigate the net

equity decision. *Id*. 22.

239.   The Goldman Plaintiffs appealed to the District Court. The appeal is pending

under Case Number 12 Civ. 06109 and briefing is under way.

> **(g)     *Picard v. Access Management Luxembourg S.A.,* Adv. Pro. No. 12-
>          01563 (BRL)**

240.   On April 19, 2012, the Trustee commenced an adversary proceeding in this Court

captioned *Picard v. Access Management Luxembourg S.A.*, Adv. Pro. No. 12-01563 (Bankr.

S.D.N.Y.) (BRL), seeking to enjoin the Luxembourg Defendants, third party plaintiffs who are

also defendants in an adversary proceeding commenced by the Trustee, from proceeding with a

third-party writ in a civil action in Luxembourg impleading the Trustee as representative of the

consolidated estates of BLMIS and Madoff, and seeking an indemnity from the BLMIS estate.

The Trustee has brought an avoidance action against the Luxembourg Defendants in this Court.

*Picard v. UBS AG*, Adv. Pro. No. 10-04285 (Bankr. S.D.N.Y.) (BRL).

241.   The Luxembourg Defendants moved before the District Court to withdraw the

reference, in part based on personal jurisdiction grounds. *See Picard v. Access Management

Luxembourg S.A.*, 12-CV-05597 (S.D.N.Y.) (ECF No. 1). The District Court granted the motion

in part and denied the motion in part. *See In re Madoff Secs*, 12 Misc. 0115 (S.D.N.Y.) (ECF

No. 373). Briefing before the District Court is on hold pending resolution of the personal

jurisdiction issues before this Court.

## X.    INTERNATIONAL INVESTIGATION AND LITIGATION

242.    The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad; (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or otherwise, to prevent the dissipation of funds properly belonging to the estate; (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate; and (iv) retaining International Counsel to assist the Trustee in these efforts, when necessary.  More than seventy of the actions filed in this Court involve international defendants, and the Trustee also has actions pending in the United Kingdom, Bermuda, the British Virgin Islands (BVI), Gibraltar, and the Cayman Islands, among other countries.

243.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

### i.    Austria and Italy

244.    The Trustee has actively investigated certain banks, institutions, and individuals located in these jurisdictions.  The Kohn and HSBC Actions, both discussed above, name several Austrian and Italian defendants, including Sonja Kohn, Bank Austria, and UniCredit S.p.A.

### ii.    Bermuda

245.    The Trustee is actively investigating various BLMIS-related entities, their officers and directors, and transfers of funds to and through Bermuda.  In addition, in December 2010, the Trustee filed protective actions in Bermuda against several HSBC-related entities in order to preserve the Trustee's ability to bring causes of action in that jurisdiction, as well as an action in the Bankruptcy Court against Bermuda-based Whitechapel Management Limited.  *Picard v. Whitechapel Management Ltd.*, Adv. Pro. No. 10-05402 (Bankr. S.D.N.Y.) (BRL).  The Trustee

is also continuing to actively monitor legal proceedings taking place in Bermuda that involve several BLMIS-related entities.

### iii.    BVI and the Cayman Islands

246.    The Trustee has discovered and is actively investigating the involvement of no fewer than twenty BVI-based feeder funds that funneled money into the Ponzi scheme.   In particular, the Trustee has investigated and filed complaints in the Bankruptcy Court against BVI-based Kingate Global Fund Ltd., Kingate Euro Fund Ltd., the Bank of Bermuda, Thybo Asset Management Ltd., Thybo Global Fund Ltd., Thybo Return Fund Ltd., Thybo Stable Fund Ltd., Hermes International Fund Limited, Lagoon Investment Limited, Thema Fund Ltd, Thema Wise Investments Ltd., Lagoon Investment Trust, Defender Limited, Equity Trading Portfolio, and Granadilla Holdings Limited.  *See, e.g.*, *Picard v. Kingate*, Adv. Pro. No. 09-01161 (Bankr. S.D.N.Y.) (BRL); *Picard v. Thybo*, Adv. Pro. No. 09-01365 (Bankr. S.D.N.Y.) (BRL); *Picard v. Defender Limited*, Adv. Pro. No. 10-05229 (Bankr. S.D.N.Y.) (BRL).   In addition, the Trustee has filed numerous claim forms against several feeder funds in BVI that preserve the Trustee's right to pursue claims in that jurisdiction.

247.    The Trustee has investigated and filed complaints in the Bankruptcy Court against Cayman Islands-based Harley International (Cayman) Ltd. ("Harley"), *Picard v. Harley*, Adv. Pro. No. 09-01187 (Bankr. S.D.N.Y.) (BRL) (the "Harley Adversary Proceeding"), Herald Fund SPC, and Primeo Fund, the latter two of which are defendants in the HSBC Action.  The Trustee has also filed a complaint in the Cayman Islands against Harley and Primeo Fund.  Earlier this year, the Trustee's substantive claims against Harley were dismissed by mutual consent.  The Trustee nevertheless retains the right to enforce the default judgment entered against Harley in the Harley Adversary Proceedings in certain instances.  A hearing was held the week of October 15, 2012 for the determination of preliminary issues in the Primeo action.

### iv.    England

248.    The Trustee, who was granted recognition as a foreign representative for the purpose of gathering evidence, has continued to investigate MSIL and work with MSIL's joint liquidators ("MSIL Liquidators").  In December 2010, the Trustee filed suit in England, together with MSIL (in liquidation) against MSIL's former directors and Sonja Kohn (the "MSIL Action").  In connection with that lawsuit, the Trustee and the MSIL Liquidators sought freezing orders and document disclosure from Sonja Kohn.  In early 2012, the Court issued a freezing and disclosure order against Sonja Kohn and granted BLMIS access to the results of the disclosure order.  In addition, the Trustee has filed protective claims in England against Kingate-related individuals and entities and against HSBC and related entities.  A trial is scheduled in the MSIL Action for June 2013.

### v.    Gibraltar

249.    After extensive investigation, the Trustee brought both domestic and Gibraltar-based actions against Vizcaya Partners Ltd. ("Vizcaya"), Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra"), Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam").  *Picard v. Vizcaya*, Adv. Pro. No. 09-01154 (Bankr. S.D.N.Y.) (BRL). Vizcaya, Siam, Asphalia, and Zeus failed to appear or answer the Trustee's amended complaint in this Court.  Accordingly, this Court granted the Trustee's Motion for Default Judgment on August 3, 2010.  Thereafter, Zeus and the Trustee entered into a stipulation pursuant to which the Trustee agreed to vacate the default judgment against Zeus, and Zeus agreed not to oppose the Trustee's application to the Supreme Court of Gibraltar for the transfer of over $60 million that had been held in Zeus's account at Bank Safra and was placed in the custody of the Gibraltar Supreme Court.  This Court approved the stipulation on November 23, 2010.

250.    The Trustee filed an application in the Gibraltar Supreme Court for the repatriation of those funds to the United States, which was granted. Those funds were deposited in the Court's registry on August 8, 2011.

251.    The Trustee has also served a protective action in Gibraltar to preserve his right to sue Vizcaya, Bank Safra, Asphalia, Zeus, Siam, Banque J. Safra (Suisse) SA, and Pictet et Cie for $180 million in transfers received from BLMIS.

252.    In addition, in September of 2012, the Trustee filed an action in the Gibraltar courts opposing and seeking to join to the Trustee's existing proceedings in Gibraltar a petition filed by Mr. Robert Faissal against Vizcaya (the "Faissal Action"). The Faissal Action seeks to adjourn a default judgment entered in the BVI against Vizcaya.

### vi.    Ireland

253.    The Trustee investigated Ireland-based Thema International Fund plc and included the feeder fund as a defendant in the HSBC Action. The Trustee has continued to investigate this fund and related entities and issued subpoenas in connection with the investigation.

### vii.    Switzerland and Luxembourg

254.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS-related entities and various feeder funds, management companies, and individuals, discussed above.

## XI.    FEE APPLICATIONS AND RELATED APPEALS

### A.    Objections to Prior Fee Applications

255.    Objections were filed to six of the eight fee applications submitted by the Trustee and B&H. Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee and B&H's fee applications

and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186-190, the Trustee's Fourth Interim Report ¶¶ 163-166, the Trustee's Fifth Interim Report ¶¶ 134-143, and the Trustee's Sixth Interim Report ¶¶ 131-142.  No decisions have been entered on motions for leave to appeal the second fee order, No. M47-b (S.D.N.Y.), or sixth fee order, No. 11 MC 00265 (S.D.N.Y.).

## B.      Ninth Fee Application

256.    On August 1, 2012, the Trustee and his counsel filed the Ninth Application for Interim Compensation for Services Rendered Reimbursement of Actual and Necessary Expenses Incurred with the Bankruptcy Court.  (ECF No. 4936).  Counsel and international special counsel also filed applications for Interim Professional Compensation.  (ECF Nos. 4937, 4938, 4939, 4940, 4941, 4942, 4943, 4944, 4945, 4946, 4947, 4948, 4949, 4950, 4951).  No objections were filed.

257.    At the hearing on August 29, 2012, the Trustee, his counsel, and SIPC were heard and provided a description of the services rendered and the reasons for which the compensation sought in the Eighth Interim Fee Application was reasonable.  This Court subsequently entered the Ninth Interim Fee Order approving the Ninth Interim Fee Applications.  (ECF No. 5012).  No motion for leave to appeal the Ninth Interim Fee Order was filed.

## XII.    CONCLUSION

258.    The foregoing report represents a summary of the status of this proceeding and

the material events that have occurred through September 30, 2012, unless otherwise indicated.

This Report will be supplemented and updated with further interim reports.


Dated:  New York, New York                      Respectfully submitted,
        November 5, 2012

**Baker & Hostetler LLP**
45 Rockefeller Plaza                            *s/ Irving H. Picard*
New York, New York 10111                        ─────────────────────────
Telephone: (212) 589-4200                       Irving H. Picard
Facsimile: (212) 589-4201                       **Baker & Hostetler LLP**
David J. Sheehan                                45 Rockefeller Plaza
Email: dsheehan@bakerlaw.com                    New York, New York 10111
Seanna R. Brown                                 Telephone: (212) 589-4200
Email: sbrown@bakerlaw.com                      Facsimile: (212) 589-4201
                                                Email: ipicard@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*      *Trustee for the Substantively Consolidated*
*Substantively Consolidated SIPA Liquidation*          *SIPA Liquidation of Bernard L. Madoff*
*of Bernard L. Madoff Investment Securities*           *Investment Securities LLC and*
*LLC And Bernard L. Madoff*                            *Bernard L. Madoff*