Baker & Hostetler LLP                    Hearing Date: December 19, 2012
45 Rockefeller Plaza                     Hearing Time: 10:00 A.M.
New York, New York 10111                 Objection Deadline: December 12, 2012
Telephone: (212) 589-4200                Time: 4:00 P.M.
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TENTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR**
**ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM**
**FEBRUARY 1, 2012 THROUGH JUNE 30, 2012**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.    BACKGROUND ..................................................................................... 5

    A.    THE SIPA LIQUIDATION ...................................................... 5

    B.    THE TRUSTEE, COUNSEL, AND CONSULTANTS ................... 5

    C.    PRIOR COMPENSATION ORDERS ....................................... 6

III.    SUMMARY OF SERVICES .................................................................. 6

    A.    HARDSHIP PROGRAM .......................................................... 6

    B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ................... 8

        i.    Recoveries Accomplished During This Compensation Period ................. 8

IV.    DETAILED DESCRIPTION OF SERVICES ........................................... 8

    A.    MATTER 01 .......................................................................... 9

        i.    Task Code 01: Trustee Investigation ................................. 9

        ii.    Task Code 02: Bankruptcy Court Litigation .......................... 11

        iii.    Task Code 03: Feeder Funds .............................................. 14

        iv.    Task Code 04: Asset Research and Sale ............................. 15

        v.    Task Code 05: Internal Meetings with Staff ......................... 15

        vi.    Task Code 07: Billing & Trustee Reports ............................. 15

        vii.    Task Code 08: Case Administration .................................... 16

        viii.    Task Code 09: Banks ....................................................... 17

        ix.    Task Code 10: Court Appearances ..................................... 17

        x.    Task Code 11: Press Inquiries and Responses ....................... 18

        xi.    Task Code 12: Document Review ......................................... 18

        xii.    Task Code 13: Depositions and Document Productions by the Trustee ....................................................................... 18

        xiii.    Task Code 14: International ................................................ 19

        xiv.    Task Code 15: Charities .................................................... 20

        xv.    Task Code 19: Non-Bankruptcy Litigation ............................ 20

        xvi.    Task Code 20: Governmental Agencies ............................... 20

        xvii.    Task Code 21: Allocation .................................................. 21

    B.    MATTER 03 – CHAIS ........................................................... 22

    C.    MATTER 04 – MERKIN ......................................................... 22

# TABLE OF CONTENTS

(continued)

**Page**

D.    MATTER 05 – CUSTOMER CLAIMS .................................................... 23

    i.    Customer Claims.......................................................................... 23

    ii.    General Creditor Claims ............................................................. 24

    iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process ........................................................................... 24

E.    MATTER 06 – VIZCAYA ................................................................... 26

F.    MATTER 07 – MADOFF FAMILY ...................................................... 27

G.    MATTER 08 – NORMAN LEVY .......................................................... 30

H.    MATTER 09 – FAIRFIELD GREENWICH ........................................... 30

I.    MATTER 10 – HARLEY .................................................................... 33

J.    MATTER 11 – COHMAD SECURITIES CORPORATION ........................ 33

K.    MATTER 12 – PICOWER .................................................................. 34

L.    MATTER 13 – KINGATE ................................................................... 35

M.    MATTER 18 – THYBO ...................................................................... 37

N.    MATTER 19 – RUTH MADOFF .......................................................... 38

O.    MATTER 21 – AVOIDANCE ACTION LITIGATION .................................. 39

P.    MATTER 26 – RICHARD STAHL ........................................................ 41

Q.    MATTER 27 – JP MORGAN CHASE ................................................... 42

R.    MATTER 28 - WESTPORT.................................................................. 43

S.    MATTER 29 – RYE/TREMONT.......................................................... 44

T.    MATTER 30 – HSBC ....................................................................... 45

U.    MATTER 31 – KATZ/WILPON ........................................................... 46

V.    MATTER 32 – UBS/LIF .................................................................... 48

W.    MATTER 33 – NOMURA BANK INTERNATIONAL PLC ........................... 50

X.    MATTER 34 - CITIBANK .................................................................. 51

Y.    MATTER 35 - NATIXIS .................................................................... 52

Z.    MATTER 36 – MERRILL LYNCH ....................................................... 53

AA.    MATTER 37 – ABN AMRO ................................................................ 53

BB.    MATTER 38 – BANCO BILBAO .......................................................... 55

CC.    MATTER 39 - FORTIS ...................................................................... 55

DD.    MATTER 40 – MEDICI ENTERPRISE .................................................. 57

# TABLE OF CONTENTS

(continued)

**Page**

EE.    MATTER 41 - WHITECHAPEL .................................................................. 58

FF.    MATTER 42 - EQUITY TRADING ............................................................. 58

GG.    MATTER 43 – DEFENDER ...................................................................... 59

HH.    MATTER 44 – MACCABEE ...................................................................... 60

II.    MATTER 45 – LEVEY ............................................................................... 61

JJ.    MATTER 46 – GLANTZ ............................................................................ 61

KK.    MATTER 47 – BONVENTRE ................................................................... 62

LL.    MATTER 48 – BONGIORNO ................................................................... 63

MM.    MATTER 49 – GREENBERGER .............................................................. 64

NN.    MATTER 50 – PITZ .................................................................................. 64

OO.    MATTER 51 – CRUPI ............................................................................... 65

PP.    MATTER 52 – DONALD FRIEDMAN ...................................................... 66

QQ.    MATTER 53 – MAGNIFY ........................................................................ 66

RR.    MATTER 54 – MENDELOW .................................................................... 68

SS.    MATTER 55 – KUGEL .............................................................................. 69

TT.    MATTER 56 – LIPKIN .............................................................................. 70

UU.    MATTER 57 – PEREZ/O'HARA ............................................................... 70

VV.    MATTER 58 – PJ ADMINISTRATORS .................................................... 71

WW.    MATTER 59 – STANLEY SHAPIRO ....................................................... 71

XX.    MATTER 60 – AVELLINO & BIENES ..................................................... 72

YY.    MATTER 61 – MAXAM ............................................................................ 73

ZZ.    MATTER 62 – SUBSEQUENT TRANSFERS ........................................... 75

AAA.    MATTER 63 – CITRUS ............................................................................. 75

BBB.    MATTER 65 – LEGACY ............................................................................ 76

V.    COMPENSATION REQUESTED ..................................................................... 77

VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ......... 80

VII.    CONCLUSION ................................................................................................. 82

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this tenth application (the "Application") on behalf of the Trustee and itself for an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to section 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing February 1, 2012 through and including June 30, 2012 (the "Compensation Period"); and (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period; and in support thereof, respectfully represents as follows:

## I.   **PRELIMINARY STATEMENT**

1.     The work completed by the Trustee and B&H during this Compensation Period yielded significant results for BLMIS customers and the liquidation.  As recognized by the District Court, the Trustee "has worked relentlessly over nearly three years to bring assets that

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

passed through [BLMIS] back into the customer fund, in order to restore nearly $20 billion in customer losses." *Picard v. J.P. Morgan Chase & Co.*, No. 11-00913, 2011 WL 5170434, at *1 (S.D.N.Y. Nov. 1, 2011) (CM).   Through pre-litigation and other settlements, which were approved by this Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, more than $9.1 billion as of June 30, 2012 —over 50% of the principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.

2.    On September 20, 2012, the Trustee, with this Court's approval, distributed $2.479 billion, or 33.541% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.    Subsequent to September 20, 2012, an additional $59.967 million was distributed.   When combined with the approximately $351 million first interim distribution and $803.7 million of advances committed by the Securities Investor Protection Corporation ("SIPC"),[2] the Trustee has distributed approximately $3.7 billion to BLMIS customers to date. This represents a significant milestone in this litigation, with 1,074 BLMIS accounts fully satisfied.   The 1,074 fully satisfied accounts represent approximately 50% of accounts with allowed claims.

3.    No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in section 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* section 78eee(b)(5)(C) of SIPA,

---

[2] SIPC has committed to pay over $800 million to date.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and Osborne & Osborne, P.A. (the "Osborne Firm"), and consultants, are paid out of administrative advances made by SIPC. As this Court affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his Counsel's fees and expenses are chargeable to the general estate and not to the fund of customer property ("Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to Customer Fund for *pro rata* distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      In a liquidation proceeding such as this, where the general estate is insufficient to pay trustee compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2). SIPC has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered. Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding the billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable

rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Applications, this Court acknowledged the worldwide efforts of the Trustee and his counsel and approved the applications:

> Well, having heard the description and being well aware of the worldwide activities stared off by Bernie Madoff and the sequelae [sic] is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world. It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel herein the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012.

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008. Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by initiating litigations and settlement negotiations for the return of customer property ("Customer Property"), including significant settlements, agreements to settle and recoveries that totaled more than $9.1 billion as of June 30, 2012. Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his pursuit of Customer Property. The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

8.      As this Court has recognized, "With respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest most complex sets of litigation that have come down the pike. It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for

any law firm or any organization to deal with."  Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1,

2011.

## II.    **BACKGROUND**

### A.    **THE SIPA LIQUIDATION**

9.    The Trustee and B&H's prior interim fee applications, each of which is fully

incorporated herein,[3] have detailed the circumstances surrounding the filing of this case and the

events that have taken place during prior phases of this proceeding.

### B.    **THE TRUSTEE, COUNSEL, AND CONSULTANTS**

10.    The Trustee and B&H's prior interim fee applications have detailed the

description of the Trustee's background and experience.

11.    In rendering professional services to the Trustee, B&H has utilized a legal team

comprised of professionals with extensive experience in legal areas such as bankruptcy,

securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation

efficiently.

12.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long

in duration, and broad in its geographical reach.  The Trustee, with the assistance of his Counsel,

has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related

individuals and entities.  To this end, the Trustee has engaged not only the services of Counsel,

but also those of forensic accountants and legal experts, including, but not limited to,

---

[3] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); and October 1, 2012 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936).

AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent, FTI Consulting ("FTI"), and several investigative and industry consultants (collectively referred to herein as the "Consultants").

## C.    PRIOR COMPENSATION ORDERS

13.    The Trustee and B&H filed applications for interim allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| Applications | Orders Entered |
|---|---|
| First Applications (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363) |
| Second Applications (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Applications (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471) |
| Eighth Application (ECF No. 4676) | March 19, 2012 (ECF No. 4735) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012) |

## III.    SUMMARY OF SERVICES

14.    A SIPA proceeding contemplates the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.  Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

## A.    HARDSHIP PROGRAM

15.    The Trustee and B&H implemented a Hardship Program in an effort to accelerate SIPA protection for BLMIS victims suffering hardship.  The first phase of this program is more fully described in prior interim fee applications.

16.     The Trustee expanded the Hardship Program into a second phase at the time he commenced avoidance actions.  While the Trustee's authority includes the pursuit of avoidance actions to recover Customer Property, the Trustee has not pursued avoidance actions against BLMIS accountholders suffering proven hardship.  In November 2010, the Trustee announced that to forego an avoidance action, the account holder must submit financial and other pertinent information.  Through this program, the Trustee has worked with a substantial number of applicants to confirm their hardship status and forego the pursuit of an avoidance action.

17.     As of June 30, 2012, the Trustee had received 484 applications from avoidance action defendants relating to 314 adversary proceedings.  After reviewing the facts and circumstances presented in each application and, in many cases, the requested additional verification information, the Trustee dismissed, or was in the process of dismissing, avoidance actions against 178 defendants.  As of June 30, 2012, there were 142 applications still under review and 174 that were resolved because they were either (i) withdrawn by the applicant, (ii) deemed withdrawn for failure of the applicant to pursue the application, (iii) denied for lack of hardship or (iv) referred for consideration of settlement.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

18.     The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of this hotline.

**B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY**

**i.    Recoveries Accomplished During This Compensation Period**

19.    Without the need for protracted litigation, during this Compensation Period, the Trustee succeeded in settling 14 cases for $185,152,348.00.  As of June 30, 2012, the Trustee has successfully recovered or reached agreements to recover more than $9.1 billion.

20.    The Trustee entered into settlements during and subsequent to this Compensation Period that will bring an additional $349,390,439.62 into the Customer Fund.

21.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that could result in additional recoveries for the benefit of customers without the delay and expense of litigation.

22.    Through the end of this Compensation Period, the Trustee recovered $442,072,203.37 as a result of preference and other settlements that were made pursuant to agreements subject to the Net Equity Dispute.  The United States Supreme Court declined to review the Net Equity Dispute and, with this ruling, the Trustee recently made his second interim distribution from the Customer Fund, distributing approximately $2.5 billion to customers with allowed claims.

**IV.    DETAILED DESCRIPTION OF SERVICES**

23.    Given the unprecedented fraud perpetrated by Madoff, the issues involved are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his Counsel for the benefit of the victims. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during this Compensation Period, organized according to internal B&H matter numbers and task codes.

24.    Matter Number 01 is the general matter number used for tasks that affect all actions taken by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

25.    Matter Numbers 03-62 (with the exception of Matter Number 05, which relates to customer claims) relate to specific litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.[4]  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks related to the individual actions: conduct legal research; draft internal memoranda; engage in internal meetings with the Trustee's Consultants regarding investigation and litigation strategy; and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during this Compensation Period.

## A.    MATTER 01

26.    This matter categorizes the time spent by the Trustee and B&H, and encompasses the below enumerated tasks.

### i.    Task Code 01: Trustee Investigation

27.    This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

28.    The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received,

---

[4]  Reserved and closed matter numbers will not be listed in this Application.  Matter numbers reserved or closed during prior compensation periods can be found in the respective interim fee applications.

and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

29.     During this Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.   B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff friends and family members, former BLMIS employees, and other Madoff-related parties, as well as continued the investigation of Madoff Securities International Ltd. ("MSIL").

30.     B&H attorneys coordinated efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), the Federal Bureau of Investigation ("FBI"), the SEC, the Government Accountability Office ("GAO"), the United States Department of Justice ("DOJ"), and other local, federal, and international officials involved in the investigation of Madoff and BLMIS.

31.     In addition, B&H attorneys reviewed copies of records obtained by the FBI and the SEC.   B&H attorneys also communicated with SIPC, Windels Marx, Young Conaway, AlixPartners, FTI, and other consultants regarding investment advisor ("IA") accounts and records of the transactions, business investments, and ventures between potential insiders and BLMIS, Madoff, and Madoff family members.

32.     B&H attorneys discussed and conferenced with SIPC, Windels Marx, Young Conaway, International Counsel, and various government entities regarding investigation and litigation strategy, prepared requests for discovery and negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

ii.    **Task Code 02: Bankruptcy Court Litigation**

33.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

34.    On February 18, 2010, this Court approved a pre-litigation settlement between the Trustee and the Estate of Norman F. Levy. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Ser.*, No. 08-01789 (Bankr. S.D.N.Y) (BRL) (ECF No. 1964). This settlement resulted in the return of $220 million (the "Levy Settlement"). One year later, on February 18, 2011, certain customers moved to set aside the Court's Order approving the Levy Settlement. (ECF No. 3861). This Court denied the motion (ECF No. 3984), and the claimants filed an appeal on April 11, 2011. (ECF No. 4005).

35.    On February 16, 2012, United States District Judge Deborah A. Batts issued a Memorandum and Order affirming this Court's order of March 30, 2011. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, No. 11-03313, 2012 U.S. Dist. LEXIS 21740 (S.D.N.Y. Feb. 16, 2012) (DAB). The District Court found that bankruptcy courts need not conduct a "mini-trial" of all the facts underlying settlement disputes and are entitled to rely upon the opinions of the trustee, the parties, and their attorneys. *Id.* at *12. Thus, the District Court held that this Court did not abuse its discretion in denying the motion to vacate the settlement. *Id.* at *7. The claimants subsequently appealed Judge Batts's decision to the Second Circuit. *See Peshkin v. Levy-Church*, No. 12-816 (2d Cir.). Briefing before the Second Circuit has been completed. Because an appeal was taken from the District Court's order, the $220 million must remain in reserve and cannot be distributed to BLMIS customers until the appeal is finally resolved.

36.    On the issue of the "customer" definition under SIPA, this Court issued a Memorandum Decision and Order affirming the Trustee's denial of these claims. (ECF Nos. 3018, 4193, 4209); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011).  Appeals were taken from this decision and assigned to United States District Judge Denise L. Cote.  *See Aozora Bank Ltd.v. Sec. Investor Prot. Corp.*, No. 11-05683 (S.D.N.Y.) (DLC).  On January 4, 2012, Judge Cote affirmed this Court's June 28, 2011 Order. *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 2011 U.S. Dist. LEXIS 150753 (S.D.N.Y. Jan. 4, 2012).

37.    On January 6, 2012, four appeals were taken from Judge Cote's decision to the Second Circuit.  *See Bricklayers & Allied Craftsman Local 2 Annuity Fund, et al. v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-410; *Sec. Investor Prot. Corp., Irving H. Picard v. Rosamilia, et al.*, No. 12-437; *Sec. Investor Prot. Corp., Irving H. Picard v. Kruse, et al.*, No. 12-483; and *Upstate New York Bakery Drivers & Indus. Pension Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-529 (2d Cir.). During this Compensation Period, the Trustee and B&H attorneys researched case law and drafted briefing in opposition to appeals of the decision regarding the definition of "customer" under SIPA.   Briefing has been completed before the Second Circuit and the parties are awaiting argument.

38.    On October 5, 2011, the Trustee moved before this Court for an order establishing a briefing schedule and hearing to affirm the claims determinations of ERISA claimants.  (ECF No. 4432).  This Court entered a scheduling order on November 8, 2011.  (ECF No. 4507).

39.    On November 14, 2011, the Trustee filed his Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections (ECF No. 4521) (the "ERISA Motion").  On or around January 17, 2012, approximately eighteen opposition briefs to

12

the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4625–4628, 4631–4633, 4635, 4637–4643, 4652–4654).    On March 2, 2012, the Trustee filed his Memorandum in Support of the Trustee's Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4703).  On April 2, 2012, five replies to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4746, 4748, 4750, 4755, 4756).  The Trustee's sur-reply was filed on April 20, 2012.  (ECF No. 4781).

40.    During the pendency of the above briefing, certain ERISA claimants also filed motions to withdraw the reference on the ERISA motion from this Court to the District Court. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-01039 (S.D.N.Y.) (DLC), on behalf of J. X. Reynolds & Co. Deferred Profit Sharing Plan, Jacqueline Green Rollover Account and Wayne D. Green Rollover Account; *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-01139 (S.D.N.Y.) (DLC), on behalf of 37 ERISA Plan claimants.  On February 28, 2012 and March 1, 2012, these motions were accepted as related to the appeals decided by Judge Cote in *Aozora Bank*, 2011 U.S. Dist. LEXIS 150753 (S.D.N.Y. Jan. 4, 2011), discussed above, and were re-assigned to Her Honor.  Judge Cote withdrew the reference on April 20, 2012.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-01039 (S.D.N.Y.) (DLC) (ECF No. 7).

41.    On July 25, 2012, the District Court granted the Trustee's ERISA Motion.  *See Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account, et al.*, No. 12-1039, 2012 U.S. Dist. LEXIS 104024 (S.D.N.Y. July 25, 2012).  The District Court found that the ERISA claimants were not "customers" under SIPA because they did not deposit money with BLMIS for

the purchase of securities and did not own the assets of the ERISA plans that were deposited with BLMIS. *Id.* No appeal was taken from this opinion and order.

### iii.    **Task Code 03: Feeder Funds**

42.    As a result of the investigative efforts of the Trustee, litigation was initiated against feeder funds and certain individuals, many of whom are well known to the public through the press and other media.

43.    The Trustee, through Counsel, has spent considerable time prosecuting 1,031 pending actions seeking to recover over $101 billion in funds from various feeders funds, banks, BLMIS customers, and Madoff family members and friends.

44.    On December 15, 2011 Defendants Plaza Investments International Ltd. and Notz Stucki Management (Bermuda) Ltd. filed a motion to dismiss the Trustee's complaint against them.  B&H attorneys and opposing counsel entered into a stipulation on January 31, 2012 adjourning the remaining briefing schedule due to the fact that many of the legal arguments contained in the motion to dismiss are currently pending before United States District Court Judge Jed S. Rakoff in the United States District Court for the Southern District of New York.

45.    On May 15, 2012, this Court approved a $28.96 Million settlement with Trotanoy Investment Company Ltd., a Guernsey open ended investment company. *Picard v. Trotanoy et al.*, Adv. Pro. No. 10-05208 (Bankr. S.D.N.Y.) (BRL) (ECF No. 59).  Under the settlement, Trotanoy paid $28.96 million to the Trustee.  Trotanoy received an allowed customer claim in the SIPA proceeding in the amount of $65,267,299.69 and received a SIPC customer advance under SIPA § 78fff-3(a)(1).

46.    The Trustee and his Counsel identify, investigate, and monitor feeder funds in the U.S. and abroad, and bring actions against such funds for the recovery of Customer Property. Separate matter numbers have been assigned to feeder funds sued by the Trustee.

     **iv.**     **Task Code 04: Asset Research and Sale**

47.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

48.    During this Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with Andrew Madoff's interest in Blow Styling Salon LLC and monitored the sale of the same.

49.    The Trustee and B&H attorneys conducted due diligence and participated in telephone conferences in connection with Andrew Madoff's efforts to sell certain interests of Madoff Energy LLC and affiliates.

50.    The Trustee and B&H attorneys continued to monitor the closing of Surge Trading, submitted a claim in connection with its out-of-court liquidation, and analyzed the impact of certain FINRA-related issues.

51.    The Trustee and B&H attorneys also continued to work on valuing the intellectual property interest in Primex and strategized as to its sale.

     **v.**     **Task Code 05: Internal Meetings with Staff**

52.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

     **vi.**     **Task Code 07: Billing & Trustee Reports**

53.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications,

responding to motions for leave to appeal fee orders, preparing trustee reports, and other related tasks.

      **vii.**    **Task Code 08: Case Administration**

54.    This category relates to time spent assisting the efficient administration of the case.

55.    The Trustee has also filed several motions before this Court that will govern the treatment of and procedures related to the efficient litigation of these actions. These procedures will ensure consistency and transparency, as well as compliance with the Bankruptcy Code and SIPA.

56.    On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to steam line the procedures aspects of service in the main proceeding and all related adversary proceedings. (ECF No. 4469). The Court entered the Order on December 5, 2011. (ECF No. 4560)

57.    On October 28, 2011, the Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012. (ECF No. 4483). Thereafter, on January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012. (ECF No. 4483).

58.    During this Compensation Period, the Trustee and B&H attorneys conducted conflict checks.

59.    The Trustee and B&H attorneys implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents.

60.    The Trustee and B&H attorneys created protocols relating to discovery, filings, and external communications.

61.     The Trustee and B&H attorneys implemented and managed work flows between B&H and Consultants.

62.     The Trustee and B&H attorneys oversaw administrative aspects of the retention of experts, other professionals, and vendors, and monitored their ongoing activities.

63.     The Trustee and B&H attorneys calendared and docketed all hearings, return dates, and deadlines in the main liquidation proceeding and all other litigations.

64.     The Trustee and B&H attorneys monitored and tracked dockets of related proceedings.

65.     The Trustee and B&H attorneys managed and monitored staffing needs.

**viii.   Task Code 09: Banks**

66.     Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

**ix.     Task Code 10: Court Appearances[5]**

67.     This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

---

[5] Many attorneys making court appearances bill their time for appearances to either Task Code 02 – Bankruptcy Court Litigation, or to the matter number that relates to that specific litigation, rather than to Task Code 10.

      x.       **Task Code 11: Press Inquiries and Responses**

68.     This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

      xi.     **Task Code 12: Document Review**

69.     This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

      xii.    **Task Code 13: Depositions and Document Productions by the Trustee**

70.     This category relates to time spent by the Trustee and B&H attorneys conducting depositions and preparing and responding to discovery requests issued in the ongoing litigations and by various third parties.

71.     On August 5, 2011, the Trustee and B&H moved for a Report and Recommendation to the District Court for the Appointment of Special Discovery Masters (the "Masters"). (ECF No. 4290). The Trustee sought an expansion of access to Data Room 1 for all adversarial proceeding defendants, the creation of Data Room 2 for documents produced by third parties, and the appointment of two Masters to assist in resolving the numerous discovery disputes currently and potentially arising in the adversary proceedings. A hearing on the motion was held on December 21, 2011. At the hearing, the Judge requested that the Trustee bifurcate the requested relief into separate motions, resolve any outstanding objections, and re-submit the papers. On January 4, 2012, the Trustee filed a motion on presentment to expand access to Data Room 1 to all defendants. (ECF No. 4613). That motion was granted on January 12, 2012. (ECF No. 4624).

72.     During this Compensation Period, the Trustee and B&H attorneys prepared, reviewed, finalized, and served subpoenas.

73.     The Trustee and B&H attorneys monitored subpoenas issued and documents produced in response, and followed up regarding deficient document productions.

74.     The Trustee and B&H attorneys prepared, reviewed, finalized, and served initial disclosures, case management plans, and motions for filing with this Court to implement case-wide discovery procedures.

75.     The Trustee and B&H attorneys prepared, reviewed, finalized, and served discovery requests.

76.     The Trustee and B&H attorneys processed, uploaded, and analyzed incoming document productions.

77.     The Trustee and B&H attorneys responded to discovery requests served on the Trustee by defendants and third parties.

78.     The Trustee and B&H attorneys addressed the issue of de-designating confidential documents for production.

79.     The Trustee and B&H attorneys analyzed, tracked, and processed BLMIS data.

80.     The Trustee and B&H attorneys coordinated with the Trustee's expert witnesses to prepare for trial.

81.     The Trustee and B&H attorneys researched foreign jurisdiction discovery laws.

82.     The Trustee and B&H attorneys oversaw work performed by the Trustee's vendors.

**xiii.    <u>Task Code 14: International</u>**

83.     The fraud Madoff perpetrated through BLMIS has many international implications, involving foreign individuals, feeder funds, and international banking institutions.

The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Gibraltar, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland.  These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.  This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions.  The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.  In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean.

### xiv.    Task Code 15: Charities

84.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

### xv.    Task Code 19: Non-Bankruptcy Litigation

85.    This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

### xvi.    Task Code 20: Governmental Agencies

86.    This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the USAO, the Internal Revenue Service, various congressional Representatives, and other government agencies.

87.     In addition, time was spent by the Trustee and B&H attorneys meeting with the GAO and responding to the GAO's requests for information.

### xvii.   Task Code 21: Allocation

88.     This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

89.     The ultimate purpose of protecting and recovering the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

90.     On May 4, 2011, the Trustee sought entry of an order approving an initial allocation of property to the Customer Fund, and authorizing an interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the filing date exceeded the statutory SIPA protection limit of $500,000 (the "First Allocation Motion").  The First Allocation Motion was unopposed, and this Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers on July 12, 2011.  (ECF No. 4217).

91.     On and after October 5, 2011, the Trustee distributed to BLMIS customers approximately $350 million—more than the amount initially approved by the Court—relating to 1,293 BLMIS accounts.  Thirty-nine payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been previously satisfied.

92.     During this Compensation Period, B&H attorneys prepared the motion for a second allocation and second interim distribution, which was filed on July 26, 2012 (the "Second Allocation Motion").  (ECF No. 4930).

93.     On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% reserve.  (ECF No. 4997).

21

B.      **MATTER 03 – CHAIS**

94.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Chais, Pamela Chais, and a number of related entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants. *Picard v. Stanley Chais, et al.*, Adv. Pro. No. 09-01172 (Bankr. S.D.N.Y.) (BRL).

95.     In addition to the tasks outlined above, during this Compensation period, B&H attorneys met and conferred with counsel for the Chais Defendants regarding discovery and other issues.  B&H attorneys also drafted and filed several pleadings in the related action to enforce the automatic stay and enjoin certain state court actions brought by investors of Stanley Chais in California and by the California Attorney General.   These documents included a Reply Memorandum of Law in Support of Trustee's Application for Enforcement of Automatic Stay and Preliminary Injunction and a Supplemental Brief in Support of Trustee's Application for Enforcement of Automatic Stay and Preliminary Injunction.  B&H attorneys also drafted various motions and pleadings related to two motions to withdraw the reference to the District Court filed by certain of the Chais Defendants on April 2, 2012. *Picard v. Mark Chais, et al.,* No. 12-02371 (S.D.N.Y.) (JSR); *Picard v. Stanley Chais, et al.,* No. 12-02658 (S.D.N.Y.) (JSR).

C.      **MATTER 04 – MERKIN**

96.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel Capital Corporation (together, the "Merkin Funds"), and J. Ezra Merkin (collectively, the "Merkin Defendants") seeking the return of more than $557 million under SIPA, the Bankruptcy

Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin, et al.*, Adv. Pro. No. 09-01182 (Bankr. S.D.N.Y.) (BRL). With leave of the Court, the Trustee filed a second Amended Complaint on December 23, 2009 asserting Merkin's personal liability for obligations of the partnerships.

97.     During this Compensation period, the team prepared for and conducted two depositions of third-party witnesses. The team reviewed and catalogued over 5,500 new documents obtained from four newly issued Rule 45 subpoenas on third parties of interest and also completed the review and production of documents to the Merkin Defendants. In addition, B&H attorneys continued to monitor arbitrations and related lawsuits seeking to confirm arbitration judgments. After a status conference in May 2012, the Court granted the Trustee's request for a 120 day extension of the Case Management Plan. In June 2012, the parties negotiated and submitted a joint request to the Court that resulted in the appointment of Melanie Cyganowski as binding arbitrator to resolve discovery disputes between the parties. On June 15, 2012, the arbitrator ruled in favor of the Trustee's proposed discovery extensions.

**D.     MATTER 05 – CUSTOMER CLAIMS**

    **i.     <u>Customer Claims</u>**

98.     During the Compensation Period, the Trustee allowed $179,934,735.75 in customer claims. This brings the total amount of allowed claims as of June 30, 2012 to $7,473,496,345.87. As of June 30, 2012, the Trustee has paid or committed to pay $802,277,028.08 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and exceeds the total aggregate payments made in all SIPA liquidations to date.

99.    During the Compensation Period, the Trustee reduced claims by approximately $138,666,240.63.

100.    As of June 30, 2012, there were 237 claims relating to 187 accounts that are "deemed determined," meaning that the Trustee has instituted litigation against those accountholders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under section 502(d) of the Bankruptcy Code.  Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.  Of the 16,519 claims received by the Trustee, only two remain undetermined and are under review by the Trustee and Counsel.

### ii.    General Creditor Claims

101.    As of June 30, 2012, the Trustee had received 427 timely and 21 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.6 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 448 claims and $1.6 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $264.9 million.  At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

102.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website, www.madofftrustee.com, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a)

meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

103.    The Trustee Website includes features that allow the Trustee to share more information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQ's page, and a timeline of important events.   The Trustee Website is monitored and updated on a daily basis. Public response to the upgrades performed on the Trustee Website has been positive.

104.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants.  As of June 30, 2012, the Trustee and his professionals had received and responded to more than 7,000 e-mails from BLMIS customers and their representatives via the Trustee Website.

105.    The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns.  As of June 30, 2012, the Trustee, B&H, and the Trustee's professionals had fielded more than 7,700 hotline calls from claimants and their representatives.

106.    The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

107.    The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed Hardship Applications, and communicated regularly with the Trustee, SIPC, and AlixPartners regarding the review and determination of Hardship applicants.

108.    The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

109.    The Trustee and B&H attorneys communicated regularly with SIPC and AlixPartners regarding the customer claims review process, the customer claims database, reconciliation of IA accounts, and other matters of interest in determining claims.

E.    **MATTER 06 – VIZCAYA**

110.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Ltd. ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants. *Picard v. Vizcaya Partners Ltd., et al.*, Adv. Pro. No. 09-01154 (Bankr. S.D.N.Y.) (BRL). The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers.

111.    During this Compensation Period, B&H attorneys moved forward with discovery and received and reviewed document productions from Defendants Bank Safra and Zeus. In addition, B&H attorneys continued to review and prepare any further documents for supplemental productions to Safra (Gibraltar). B&H attorneys analyzed each defendant's liabilities and the litigation strategy. Furthermore, B&H attorneys monitored the *Rubin v.*

*Eurofinance SA* hearings before the UK Supreme Court.  On October 24, 2012, the UK Supreme

Court issued its decision, which may impact the Trustee's foreign proceedings.

**F.      MATTER 07 – MADOFF FAMILY**

112.    This matter encompasses time spent by B&H attorneys pursuing numerous

avoidance actions against members of the Madoff family.  On October 2, 2009, the Trustee filed

a Complaint against Peter B. Madoff, Andrew H. Madoff, the late Mark D. Madoff, and Shana

D. Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent

conveyances, and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Family Defendants.  *Picard v. Peter B. Madoff*, Adv. Pro. No. 09-01503

(Bankr. S.D.N.Y.) (BRL).  On March 15, 2010, each of the defendants separately moved this

Court to dismiss the Trustee's complaint. (ECF Nos. 13–19)  On September 22, 2011, this Court

denied in part and granted in part the motions to dismiss.  (ECF No. 55).  Defendant Andrew

Madoff, individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave

to seek interlocutory review of this Court's September 22, 2011 decision.   (ECF No. 56).

Following briefing and oral argument, the District Court denied that motion on December 22,

2011.  (ECF No. 74).

113.    In accordance with this Court's September 22, 2011 decision, on November 7,

2011, the Trustee filed an Amended Complaint against the Family Defendants, identifying

additional transfers to seek the return of over $225 million under SIPA, the Bankruptcy Code,

the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent

conveyances, and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. Pro. No. 09-01503 (Bankr.

S.D.N.Y.) (BRL) (ECF No. 64).  Shana Madoff, Peter Madoff, and Andrew Madoff, both on his

own behalf and as executor of the estate of Mark D. Madoff, each answered the Amended Complaint on January 17, 2012. (ECF Nos. 78, 79, 80).

114.    On December 23, 2011, the Trustee filed a motion seeking leave to file a Second Amended Complaint, adding additional claims and defendants to the action against the Family Defendants. (ECF No. 71). On April 4, 2012, following briefing and oral argument, this Court issued a written opinion denying in part and granting in part the Trustee's motion.  (ECF No. 106).  On May 4, 2012, the Trustee filed a Second Amended Complaint against the Family Defendants, and named as additional defendants Mark Madoff's widow, Stephanie S. Mack, and Andrew Madoff's wife, Deborah Madoff.  (ECF No. 113).  The Trustee also named Mark Madoff's ex-wife, Susan Elkin, as a subsequent transferee defendant.  Defendants Andrew Madoff, the Estate of Mark Madoff, Shana Madoff, and Ms. Elkin answered the Second Amended Complaint on July 2, 2012.  (ECF Nos. 124, 125, 126).  The Trustee has adjourned the time for Peter Madoff, Stephanie S. Mack, and Deborah Madoff to respond to the Second Amended Complaint.  (ECF Nos. 128, 134).

115.    The Trustee commenced two adversary proceedings against members of Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff.  *Picard v. Stephanie S. Mack*, Adv. Pro. No. 10-05328 (Bankr. S.D.N.Y.) (BRL); *Picard v. Deborah Madoff*, Adv. Pro. No. 10-05332 (Bankr. S.D.N.Y.) (BRL).  Amended Complaints were filed in these actions on February 7, 2012.  (ECF Nos. 23 and 13 respectively). All defendants in both actions answered on March 23, 2012.  (ECF Nos. 30 and 20 respectively). Deborah Madoff also moved to withdraw the reference from this Court on April 2, 2012. (ECF No. 22).  That motion is currently pending before the District Court.

116.    The Trustee commenced two adversary proceedings against foundations created by and named for Andrew and the late Mark Madoff, and their spouses: *Picard v. Mark & Stephanie Madoff Foundation*, Adv. Pro. No. 10-05325 (Bankr. S.D.N.Y.) (BRL); and *Picard v. Deborah & Andrew Madoff Found.*, Adv. Pro. No. 10-05330 (Bankr. S.D.N.Y.) (BRL).    The defendants in these cases have answered, and the pre-trial conferences are scheduled for January 30, 2013.  (ECF Nos. 19 and 23 respectively).

117.    The Trustee commenced various adversary proceedings against Madoff's relatives beyond his immediate family to recover preferences and fraudulent conveyances.  Currently, the Trustee's cases styled *Picard v. Wiener Family Ltd. P'ship*, Adv. Pro. No. 10-04323 (Bankr. S.D.N.Y.), *Picard v. NTC & Co. LLP*, Adv. Pro. No. 10-04293 (Bankr. S.D.N.Y.), and *Picard v. Schaum & Wiener Profit Sharing Plan & Trust FBO Martin Schaum*, Adv. Pro. No. 10-04329 (Bankr. S.D.N.Y.) remain pending.

118.    On June 29, 2012, Peter Madoff pled guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion.  Specifically, Peter Madoff pled guilty to one count of conspiracy to (a) commit securities fraud, (b) falsify records of an investment adviser, (c) falsify records of a broker-dealer, (d) make false filings with the Securities and Exchange Commission, (e) commit mail fraud, (f) falsify statements in relation to documents required by ERISA, and (g) obstruct and impede the lawful governmental function of the Internal Revenue Service.  He also pled guilty to one count of falsifying records of an investment advisor.  *See U.S. v. O'Hara, et al.*, No 10-00228 (LTS) (ECF No. 246) (the "Preliminary Forfeiture Order").  Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the government.  In addition,

the Preliminary Forfeiture Order covered certain significant property owned by Shana Madoff that was forfeited under the same plea agreement.

### G.   MATTER 08 – NORMAN LEVY

119.   In January 2010, the Trustee reached a $220 million settlement agreement (the "Norman Levy Settlement") with Jeanne Levy-Church and Francis N. Levy (collectively, the "Levys") to settle the Trustee's potential litigation claims against them regarding certain accounts held by the Levys and their family members.  This Court approved the Norman Levy Settlement by order on February 18, 2010.  (ECF No. 1964).  Exactly one year later, certain BLMIS claimants moved pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to set aside the Norman Levy Settlement.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.) (BRL) (ECF No. 3861). This Court denied the motion on March 30, 2011, and the claimants appealed to the District Court.  On February 16, 2012, Judge Batts issued a Memorandum and Order affirming this Court's order.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, No. 11-3313 (S.D.N.Y.) (DAB) (ECF No. 22).

120.   During this Compensation Period, the claimants appealed the District Court's February 16, 2012 Order.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, No. 12-816 (2d Cir. May 16, 2011).  Argument is scheduled before the Second Circuit for December 17, 2012.

### H.   MATTER 09 – FAIRFIELD GREENWICH

121.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwhich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants

seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation), et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (BRL). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

122.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). *Picard v. Fairfield Sentry et al.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y.) (BRL) (ECF No. 95). On July 13, 2011, the Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110). One objection was filed by plaintiffs in a derivative action allegedly on behalf of Sentry, which was overruled by this Court on June 7, 2011. (ECF. No. 92).

123.    Under the terms of this settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. As of June 30, 2012, the Joint Liquidators have paid $24 million, of which $16 million was in cash and the $8 million balance was an offset against funds owed by the Trustee to Sentry. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners; the Trustee retained his own claims

31

against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims. On or about July 8, 2011, Sentry transferred $16 million to the Trustee, and the Trustee allowed Sentry's claim of $78 million. When the remaining $46 million is paid, the Trustee will increase the allowed claim by $152 million to $230 million.

124.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (BRL) (ECF No. 107). Three objections were filed to the proposed settlement agreement, but were subsequently withdrawn prior to this Court's July 7, 2011 Order. In this settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management, and agreed to share with the Trustee any recoveries they receive against service providers.

125.    To implement this settlement agreement, the Court was required to confirm the plan in the jointly administered Chapter 11 proceeding of Greenwich Sentry and Greenwich Sentry Partners. *In re Greenwich Sentry, L.P. & Greenwich Sentry Partners, L.P.*, Case No. 10-16229 (Bankr. S.D.N.Y.) (BRL). The plan confirmation hearing was held on December 22, 2011. The plan was confirmed subject to the resolution of issues unrelated to the settlement with the Trustee. Those matters have been resolved. The effective date of the plan was February 24, 2012. (ECF No. 342). With the settlement becoming effective, claims against the Fairfield

32

Greenwich Group management have been assigned to the Trustee; and Greenwich Sentry's and Greenwich Sentry Partners' claims have been allowed in the amount of $35,000,000.00 and $2,011,304.00, respectively.

126.    The Trustee engaged in settlement negotiations with the remaining defendants in the Sentry matter and entered into a stipulation setting a new schedule for the remaining defendants to respond to the Amended Complaint. *Picard v. Fairfield Sentry et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (BRL) (ECF No. 114).

## I.    MATTER 10 – HARLEY

127.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Harley International (Cayman) Ltd. ("Harley") seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Harley. *Picard v. Harley Int'l (Cayman) Ltd.*, Adv. Pro. No. 09-01187 (Bankr. S.D.N.Y.) (BRL).  Harley is in liquidation in the Cayman Islands.

128.    In addition to the tasks outlined above, during this Compensation Period, the Trustee and B&H attorneys continued to pursue collection on the summary and default judgments entered against Harley by this Court on November 10, 2010 and to pursue Harley's subsequent transferees.

## J.    MATTER 11 – COHMAD SECURITIES CORPORATION

129.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), the principals, certain employees of Cohmad, and their family members who held BLMIS IA accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy

Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp., et al.*, Adv. Pro. No. 09-01305 (Bankr. S.D.N.Y.) (BRL).

130.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued to move forward with discovery, both propounding demands and responding to the demands of various defendants.

## K.     MATTER 12 – PICOWER

131.    This matter categorizes time spent by the Trustee and B&H attorneys in connection with the Trustee's litigation and settlement with Jeffry M. Picower ("Picower") and Barbara Picower, both individually and as trustees for various foundations, and related entities (collectively, the "Picower Defendants"). The Trustee's lawsuit sought recovery of nearly $7 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Defendants. *Picard v. Picower*, Adv. Pro. No. 09-01197 (Bankr. S.D.N.Y.) (BRL).

132.    On January 13, 2011, this Court entered an Order (the "Picower Settlement Order") approving the $5 billion settlement between the Trustee and the Estate of Jeffry M. Picower, et al. (ECF No. 43). BLMIS claimants Adele Fox ("Fox") and Susanne Stone Marshall ("Marshall"), who brought actions against the Picower Defendants in Florida, appealed the Picower Settlement Order. (ECF Nos. 45, 49). On March 26, 2012, United States District Judge John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and permanently enjoining certain duplicative or derivative actions against the Picower Defendants.

*In re Bernard L. Madoff*, 2012 U.S. Dist. LEXIS 41262 (S.D.N.Y. Mar. 26, 2012).  Thereafter,

counsel for Fox and Marshall again filed notices of appeal, this time to the Second Circuit.  *See*

*In re Bernard L. Madoff*, No. 10-4652 (S.D.N.Y.) (ECF No. 47); *In re Bernard L. Madoff*, 11-

1298 (S.D.N.Y.) (ECF No. 19); *In re Bernard L. Madoff*, 11-1328 (S.D.N.Y.) (ECF No. 17).

These appeals are currently pending and oral argument has been scheduled for December 6,

2012.

133.    A forfeiture action against the estate of Jeffry M. Picower resulted in the

additional recovery of more than $2.2 billion to the United States Government (the "Picower

Forfeiture"), which is intertwined with the Trustee's Picower settlement.  *See United States v.*

*$7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on*

*Schedule A*, No. 10 Civ. 09398 (S.D.N.Y.) (TPG).   On May 23 and 24, 2011, United States

District Judge Thomas P. Griesa entered a final order of forfeiture in favor of the United States.

(ECF No. 17).  The Second Circuit dismissed an appeal of Judge Griesa's order, and on June 8,

2012, a final order of forfeiture was issued.  *See United States v. $7,206,157,717 On Deposit at*

*JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 11-2898 (2d Cir.)

(ECF No. 85).

134.    Because the time to appeal the final order of forfeiture expired, the settlement

amount of $5 billion has been transferred to the BLMIS estate and the Customer Fund.  Part of

the proceeds from the Picower settlement has been distributed to customers, and the balance will

be distributed in due course.

## L.    MATTER 13 – KINGATE

135.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the

"Kingate Funds") seeking the return of approximately $875 million under SIPA, the Bankruptcy

Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kingate Funds.  On June 8, 2011, B&H attorneys prepared, filed, and served a third Amended Complaint, which added a number of additional foreign defendants, significantly expanding the case.  *Picard v. Federico Ceretti, et al.*, Adv. Pro. No. 09-01161 (Bankr. S.D.N.Y.) (BRL) (ECF No. 32).

136.    The Kingate Funds are currently in liquidation proceedings in the BVI and one of the foreign defendants, Kingate Management Ltd., is currently in liquidation proceedings in Bermuda.

137.    The Kingate Funds and all other defendants have filed motions or joinders to the motions in the District Court to withdraw the reference from this Court.  *Picard v. Kingate Global Fund, Ltd., et al.*, No. 12-02441 (S.D.N.Y.) (JSR) (ECF No. 1).  The motions have been fully briefed and argued before the District Court.

138.    B&H attorneys negotiated settlement terms with the liquidators for the Kingate Funds that were subject to the sale of their SIPA claims.  Subsequently, the Kingate Funds brought suit against Deutsche Bank Securities Inc. in connection with their attempts to fund the settlement.  *See Kingate Global Fund Ltd. v. Deutsche Bank Sec. Inc.*, No. 11-9364 (S.D.N.Y.) (DB).

139.    In addition to the tasks outlined above, the Trustee has extended the defendants' time to respond to the third Amended Complaint while awaiting a determination from the District Court with respect to the motions to withdraw the reference.  The Trustee and B&H attorneys continued to monitor third-party actions filed against the Kingate Defendants and the liquidation proceedings with respect to Kingate Management Ltd.  The Trustee also recently

intervened in an administrative action filed by certain of the foreign defendants in the BVI relating to litigation funding.  The Trustee's intervention was resolved by consent agreement limiting the use of defendants' funds for litigation purposes to an amount certain.

## M.    MATTER 18 – THYBO

140.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Thybo Asset Management Ltd., Thybo Global Fund Ltd., Thybo Return Fund Ltd., and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return of approximately $62 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants.  On February 10, 2011, the Trustee filed an Amended Complaint objecting to Thybo Stable Fund's $217 million customer claim.  *Picard v. Thybo Asset Mgmt. Ltd., et al.*, Adv. Pro. No. 09-01365 (Bankr. S.D.N.Y.) (BRL) (ECF No. 20).

141.    As with each of the matters in litigation, the Trustee and B&H attorneys conducted the tasks outlined above during this Compensation Period.  On December 2, 2011, B&H attorneys filed a supplemental memorandum of law in opposition to the Thybo Defendants' pending motion to dismiss.  *Picard v. Thybo Asset Mgmt.*, Adv. Pro. No. 09-01365 (ECF No. 43).  A stipulation was then entered setting a briefing schedule to address the Thybo Defendants' motion to withdraw the reference from this Court.  *Picard v. Thybo Asset Mgmt. Ltd.*, No. 11-7576 (S.D.N.Y.) (JSR) (ECF No. 7).  Accordingly, on February 14, 2012, the Trustee filed a memorandum of law in opposition to the Thybo Defendants' motion to withdraw the reference. (ECF No. 12).  The Thybo Defendants filed a Reply brief on March 2, 2012.  (ECF No. 13).  Before the District Court ruled on the motion to withdraw, on April 13, 2012, the District Court instituted a new briefing protocol for pending motions to withdraw, requiring

consolidated briefing on common issues raised in the filed motions to withdraw.  *See, e.g.*, *In re Madoff Sec.*, 12-MC-00115 (S.D.N.Y. April 13, 2012) (JSR) (ECF No. 4) (the "*Stern v. Marshall* Consolidated Briefing Order").   The Thybo Defendants are actively participating in the consolidated briefings to determine (1) whether 11 U.S.C. § 546(e) applies to this case, limiting the Trustee's ability to avoid transfers; (2) whether SIPA and other securities laws alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in "good faith" under 11 U.S.C. § 548(c); and (3) whether the District Court should withdraw the reference in light of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), which, according to the Thybo Defendants, holds that this Court lacks the "judicial power" necessary to enter final judgment on the claims at issue in their case.  *See* Order Ex. A., *In re Madoff Sec.*, No. 12 MC 115 (S.D.N.Y. May 16, 2012) (ECF No. 119) (the "Section 546(e) Order"); Order Ex. A., *In re Madoff Sec.*, No. 12 MC 115 (S.D.N.Y. June 25, 2012) (ECF No. 197) (the "Good Faith Order"); Order Ex. A. *In re Madoff Sec.*, No. 12 MC 115 (S.D.N.Y. April 13, 2012) (ECF No. 4) (the "*Stern* Order"). On July 3, 2012, Judge Rakoff issued an Order as to the Thybo Defendants' fully briefed motion to withdraw the reference, stating that the Thybo Defendants raised the same issues that the Court previously arranged for consolidated briefing, and directed the Thybo Defendants to continue to proceed according to the procedures arranged for consolidated briefing.  *See* Order, *Picard v. Thybo Asset Mgmt. Ltd., et al.*, No. 11-7576 (S.D.N.Y. July 5, 2012) (JSR) (ECF No. 17).

**N.    MATTER 19 – RUTH MADOFF**

142.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Ruth Madoff seeking the return of approximately $44 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of

property by BLMIS to or for the benefit of Mrs. Madoff. *Picard v. Ruth Madoff*, Adv. Pro. No. 09-01391 (Bankr. S.D.N.Y.) (BRL).

143.    In addition to the tasks outlined above, during this Compensation Period, the Trustee and B&H attorneys continued to grant Mrs. Madoff extensions of time to respond to the complaint.

## O.    MATTER 21 – AVOIDANCE ACTION LITIGATION

144.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee; coordinating service of process; preparing preservation letters and discovery requests and reviewing produced documents; communicating formally and informally with counsel for various defendants; reviewing Hardship Program applications; drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences; conducting settlement negotiations and settling with various defendants; engaging in mediation with certain defendants; developing legal strategies and witnesses that will be relevant to all actions; implementing internal processes to track and manage the avoidance actions; and researching various issues relating to and raised in such avoidance actions.

145.    B&H attorneys also spent a substantial amount of time during this Compensation Period opposing motions to withdraw the reference.  On March 5, 2012, this Court issued the Administrative Order setting April 2, 2012 as the final deadline for filing motions to withdraw the reference to this Court.  *See* Administrative Order Establishing Deadline for Filing Motions to Withdraw the Reference, *SIPC v. BLMIS (In re Madoff Sec.)*, Adv. Pro. No. 08-01789 (Bank. S.D.N.Y. Mar. 5, 2012) (ECF No. 4707) (the "Administrative Order").  The Administrative Order states: "[i]n the interest of administrative efficiency, this Court has been informed by Judge Rakoff, and hereby notifies all parties to the Adversary Proceedings, that the District Court will automatically regard untimely any motion to withdraw . . . if such motion is not filed on or

before April 2, 2012." *Id.* at 1–2.   Pursuant to the Administrative Order, 438 motions to withdraw and 409 joinders to these motions were filed by the April 2, 2012 deadline, implicating a total of 768 adversary proceedings (accounting for overlap in actions as some motions and joinders were filed in the same matters). To date, a total of 463 motions to withdraw have been filed, a total of 410 joinders, altogether implicating a total of 791 adversary proceedings. During the Compensation Period, B&H attorneys participated in numerous chambers conferences to establish briefing schedules; prepared, filed, and served twenty opposition briefs; reviewed and addressed particular issues raised in twenty-two reply briefs; and prepared for two oral arguments before the District Court.

146.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw, facilitating consolidated briefing on common issues raised in the filed motions to withdraw. Accordingly, the Trustee, SIPC, and the relevant defendants negotiated agreed orders providing for the partial withdrawal of the reference to address the following discrete legal issues raised in the relevant motions to withdraw:

- ***Stern v. Marshall Issues.***  *See* Order, No. 12-00115 (S.D.N.Y. April 13, 2012) (ECF No. 4);

- ***Antecedent Debt Issues.***  *See* Order, No. 12-00115  No. 12 MC 115 (S.D.N.Y. May 15, 2012) (ECF No. 107);

- ***Standing and SLUSA Issues.***  *See* Order, No. 12-00115, (S.D.N.Y. May 16, 2012) (ECF No. 114);

- ***Section 546(e) Issues.***  *See* Order, No. 12-00115, (S.D.N.Y. May 16, 2012) (ECF No. 119);

- ***Section 502(d) Issues.***  *See* Order, No. 12-00115 (S.D.N.Y. June 1, 2012) (ECF No. 155);

- ***Extraterritoriality Issues***.  *See* Order, No. 12-00115 (S.D.N.Y. June 7, 2012) (ECF No. 167);

- ***"Good Faith" Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b).***  *See* Order, No. 12-00115 (S.D.N.Y. June 25, 2012) (ECF No. 197); and

- ***Section 550(a) Issues.***  *See* Order, No. 12-00115 (S.D.N.Y. Aug. 22, 2012) (ECF No. 314).

## P.    MATTER 26 – RICHARD STAHL

147.    This matter categorizes time spent by the Trustee and B&H attorneys on the adversary proceeding commenced by the Trustee against Richard Stahl, Reed Abend, and other third-party plaintiffs (collectively, the "Stahl Plaintiffs"), and the Trustee's related Application for Enforcement of the Automatic Stay and a Preliminary Injunction (the "Stahl Application") of actions brought by the Stahl Plaintiffs against members of the Madoff family (the "Madoff Defendants") against whom the Trustee has also brought suit.  *Picard v. Stahl*, Adv. Pro. No. 10-03268 (Bankr. S.D.N.Y.) (BRL).

148.    In a prior compensation period, this Court entered an order granting the Stahl Application.  (ECF No. 50); *Picard v. Stahl*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011).  This Court found that the automatic stay and the December 15, 2008 stay order of the District Court applied, and held that the third-party actions are void *ab initio* as against the Madoff Defendants.  *Id*. This Court also preliminarily enjoined the actions pending the completion of the Trustee's litigation against the Madoff Defendants.  *Id*.

149.    Several of the Stahl Plaintiffs (the "Stahl Appellants") appealed this decision to the District Court.  Following briefing and argument, on November 17, 2011, United States District Judge Alvin K. Hellerstein issued a bench ruling and summary order affirming this Court's opinion.  *In re Bernard L. Madoff Inv. Sec. LLC*, No. 11-2392, 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011) (AKH).  Judge Hellerstein found that the third-party actions created "a waste of personal assets that the trustee seeks to recover" and that "the profusion of [the third-party] lawsuits makes it extremely difficult for the trustee to run his lawsuit expeditiously and economically in the interests of the creditors of the estate."  *Id*. at 15.  Judge Hellerstein recognized that "it's the rationale behind Section 362 and Section 105 to favor the trustee . . . ," and held that a preliminary injunction was proper "to allow the trustee the ability to pursue his actions and obtain rulings and finality on those rulings because the trustee is acting for the benefit of all creditors and not just a few."  *Id*. at 13.

150.    Thereafter, the Stahl Appellants filed joint appeals of Judge Hellerstein's ruling with the Second Circuit, which are pending under case numbers 11-5421 and 11-5428.  During this Compensation Period, B&H attorneys prepared opposition papers and briefing to the joint appeal, including the preparation of designations to the joint appendix for the appellate cases, stipulated orders modifying the briefing schedule, and the research for and preparation of the Trustee's Appellee brief.  At this time, the appellate cases are fully briefed, however, a hearing has not been scheduled.

## Q.    MATTER 27 – JP MORGAN CHASE

151.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan") seeking the return of approximately $19 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and

other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of JPMorgan Chase.  *Picard v. JPMorgan Chase & Co., et al.*, Adv. Pro. No. 10-04932 (Bankr. S.D.N.Y.) (BRL).

152.    During this Compensation Period, B&H attorneys prepared an appeal of the District Court's decision dismissing the Trustee's common law claims against JPMorgan.  *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011).  The appeal was argued before the Second Circuit on November 21, 2012.  *Picard v. JPMorgan Chase & Co., et al.*, No. 11-5044 (2d Cir.).  The parties stipulated to a stay of discovery pending the appeal.  In addition, B&H attorneys prepared a motion to intervene in a class action concerning JPMorgan.  *Shapiro v. JPMorgan Chase & Co., et al.*, No. 11-8331 (S.D.N.Y.) (CM) (MHD) (ECF No. 30).

## R.    MATTER 28 - WESTPORT

153.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. ("PSCC") seeking the return of approximately $28 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Silverman, WNB, and PSCC.  *Picard v. Robert L. Silverman, et al.*, Adv. Pro. No. 10-05418 (Bankr. S.D.N.Y.) (BRL).

154.    During this Compensation Period, B&H attorneys prepared inquiries and analyzed responses provided by counsel for WNB relating to the factual and legal issues raised by the lawsuit.  In addition, B&H attorneys addressed and successfully resolved a third-party subpoena and document request.  In furtherance of the Trustee's claims, additional research was performed into potential defenses of WNB, and the team worked with AlixPartners to analyze and review

43

challenged transfers, and WNB's treatment of funds and customer balances.  Additional review of documents obtained was done to examine red flags and due diligence.  B&H attorneys also continued to monitor Silverman's individual Chapter 11 bankruptcy case pending in the United States Bankruptcy Court for the District of Connecticut, and prepared motions to extend the time to object to the dischargeability of those debts.

## S.    MATTER 29 – RYE/TREMONT

155.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Funds") seeking the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Defendants.  *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.) (BRL).

156.    In addition, on December 21, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025 billion.  *Picard v. Tremont Group Holdings, Inc.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.) (BRL) (ECF No. 38).  In this settlement, Tremont agreed to deliver $1.025 billion into an escrow account, which will ultimately be placed into the Customer Fund.  Upon the release of the settlement payments from the escrow account, the Trustee will allow certain customer claims related to Tremont.  Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  This Court entered an Order Granting Trustee's Motion for Entry of Order Approving Agreement.  (ECF No. 38).

44

157.    Certain objectors filed an appeal of the Tremont settlement on September 30, 2011.  *See Picard v. Tremont Group Holdings, Inc., et al.*, No. 11-7330 (S.D.N.Y.) (GBD) (ECF No. 1).  Thereafter, Tremont filed a motion to dismiss the appeal, which was subsequently joined by motions filed by the Trustee and parties subject to the settlement.  (ECF Nos. 4, 6, 8, 12, 14).  The non-BLMIS customers who commenced the appeal opposed the dismissal.  (ECF Nos. 15, 16).  On June 27, 2012, United States District Judge George B. Daniels granted the motion to dismiss the appeal, and judgment was entered on June 28.  (ECF Nos. 35, 36).

158.    On July 27, 2012, the non-BLMIS objectors filed an appeal with the Second Circuit. (ECF No. 37).  Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal and the appeal was dismissed on October 25, 2012. (ECF No. 39).  The terms of the settlement, therefore, have been implemented.

## T.    MATTER 30 – HSBC

159.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC-entities (collectively, the "HSBC Defendants"), UniCredit S.p.A. and Pioneer Alternative Investment Management Ltd. (together, "UCG/PIA"), dozens of feeder funds, and individuals seeking the return of approximately $8.8 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the HSBC Defendants.  *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (BRL).

160.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys extended the time for certain defendants to respond to the Amended Complaint and coordinated service of process on numerous international defendants.  B&H attorneys prepared

an opposition to the motions to dismiss filed by the thirteen HSBC-related defendants and, separately, by UCG/PIA on May 3, 2011 in the District Court. *Picard v. HSBC Bank plc*, No. 11-763 (S.D.N.Y.) (JSR) (ECF. No. 35); *Picard v. HSBC Bank plc*, No. 11-836 (S.D.N.Y.) (JSR) (ECF. No. 34). The District Court granted the motion on July 28, 2011, dismissing the Trustee's common law claims. *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011). During this Compensation Period, B&H attorneys briefed the appeal, filing both their principal and reply briefs. Oral argument before the Second Circuit took place on November 21, 2012.

161.    During this Compensation Period, B&H attorneys also opposed motions to dismiss for lack of personal jurisdiction filed by various defendants that acted as service providers to the Alpha Prime fund and the Senator fund. After those motions were opposed, these defendants, Regulus, Carruba, Tereo and Alpha Prime Asset Management, all agreed to engage in jurisdictional discovery prior to the Court ruling on their motions. Jurisdictional discovery is underway and the motion to dismiss remains *sub judice*.

162.    Finally, during this Compensation Period, the Trustee moved to stay proceedings pending in the Cayman Islands against the Primeo Fund. That motion was not granted. The proceedings against the Primeo Fund continue to move forward.

## U.    MATTER 31 – KATZ/WILPON

163.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Saul B. Katz, in his individual capacity and as trustee of the Katz 2002 Descendants' Trust, Fred Wilpon, in his individual capacity, as trustee of the Wilpon 2002 Descendants' Trust, and as co-executor of the Estate of Leonard Schreier, and dozens of other entities and individuals (collectively, the "Katz-Wilpon Defendants") seeking the return of approximately $1 billion in fraudulent transfers—which includes approximately $300 million in fictitious profits and $700 million in principal—under SIPA, the Bankruptcy Code, and the New

York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Sterling Defendants. *Picard v. Katz et al.*, Adv. Pro No. 10-05287 (Bankr. S.D.N.Y.) (BRL) (the "Katz-Wilpon Action").   On September 27, 2011, the District Court dismissed the Trustee's claims based on constructive fraud under the Bankruptcy Code, actual and constructive fraud under the New York Debtor & Creditor Law, and for recovery of subsequent transfers pursuant to § 550 of the Bankruptcy Code, holding that the "safe harbor" affirmative defense set forth in § 546(e) of the Bankruptcy Code is a bar—at the pleading stage—to those claims. *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011).   This decision reduced the Trustee's claims in the Katz-Wilpon Action from approximately $1 billion to less than $400 million.   In addition, in connection with the Trustee's fraudulent conveyance claims, the decision articulated a new heightened subjective standard of "willful blindness" that appears to be akin to a "conscious avoidance" standard derived from the criminal law context.   Finally, the District Court held as a matter of law that section 502(d) of the Bankruptcy Code is "overridden" in a SIPA proceeding by section 78fff-2(c)(3) of SIPA.

164.    On January 26, 2012, the Katz-Wilpon Defendants filed a Motion for Summary Judgment on the Trustee's remaining claims. (ECF Nos. 79, 86–87, 90–99, 103–104, 109–110). That same day, the Trustee filed a Motion for Partial Summary Judgment with respect to fictitious profits. (ECF Nos. 81, 85, 88–89, 100, 102, 107–108).   On February 23, 2012, the District Court held oral argument on the Trustee's Motion for Partial Summary Judgment and the Katz-Wilpon Defendants' Motion for Summary Judgment. (ECF Nos. 139–140).   In a March 5, 2012 order, the District Court denied the Katz-Wilpon Defendants' Motion for Summary

Judgment and granted the Trustee's Motion for Partial Summary Judgment in the amount of two-year fictitious profit transfers. *Picard v. Katz*, No. 11-03605 (S.D.N.Y.) (JSR) (ECF No. 142).

165.    On March 16, 2012, the Friday before the start of trial, the parties entered a Memorandum of Understanding outlining the parameters of a settlement in the amount of $162 million, which is the amount of fictitious profits withdrawn over the six-year period. (ECF No. 180). Judge Rakoff reviewed the terms of the Memorandum of Understanding on March 19, 2012, at which time he set April 13, 2012 as the date for the parties to enter a final settlement agreement and for the Trustee to file a Bankruptcy Rule 9019 motion for an order approving the settlement. (ECF Nos. 182–183).

166.    On April 13, 2012, the Trustee filed a Motion for Settlement for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement.  (ECF Nos. 184-87).

167.    On June 1, 2012, Judge Rakoff entered an Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement. (ECF No. 192).  B&H attorneys worked on implementing the terms of the settlement.  On June 6, 2012, a stipulation and Order of Voluntary Dismissal of the Trustee's claims against the Katz-Wilpon Defendants was entered pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.  (ECF No. 193).

## V.    MATTER 32 – UBS/LIF

168.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy and common law claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants. *Picard v. UBS AG, et al.*, Adv. Pro. No. 10-04285 (Bankr. S.D.N.Y.) (BRL).

169.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund and UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS. *Picard v. UBS AG, et al.*, Adv. Pro. No. 10-05311 (Bankr. S.D.N.Y.) (BRL).

170.    During this Compensation Period, on April 27, 2012, a number of the Luxalpha Defendants and LIF Defendants moved in this Court to dismiss the Amended Complaint in both actions for lack of personal jurisdiction, with one of these defendants also moving to dismiss for *forum non conveniens*.  The LIF and Luxalpha teams reviewed and analyzed the numerous motions to dismiss and worked on preparing the oppositions to the motions.  This work included legal analysis; factual analysis; meeting with Luxembourg counsel in Luxembourg to prepare an affidavit in support of our opposition to the motion to dismiss for *forum non conveniens*; identifying the voluminous exhibits for the oppositions and conferring with opposing counsel regarding de-designation of the exhibits for filing; and drafting the oppositions.  During this Compensation Period, work also continued on the Trustee's appellate papers seeking relief in the Second Circuit from the District Court's dismissal of the Trustee's common law and contribution claims in the Luxalpha matter.

171.    In addition, this matter incorporates work related to an action brought in Luxembourg by the Luxembourg liquidators of Luxalpha against Access Group, UBS, and the

directors of Luxalpha.  On April 19, 2012, the Trustee and B&H commenced an action against Access Management Luxembourg, S.A., Patrick Littaye, and Pierre Delandmeter seeking an injunction preventing these parties from litigating an action they have filed against the Trustee in Luxembourg.  *Picard v. Access Mgmt. Luxembourg, S.A.*, No. 12-01563 (Bankr. S.D.N.Y.) (BRL).

172.    In addition, this matter incorporates the work in *Picard v. Trotanoy Investment Co. Ltd.*, *et al.*, Adv. Pro. No. 10-05208 (Bankr. S.D.N.Y.) (BRL) (the "Trotanoy Action"). During this Compensation Period, the Trustee opposed Trotanoy's motion to withdraw the reference and opposed motions to dismiss on personal jurisdiction grounds filed by other defendants.  The Trustee then negotiated and finalized a settlement, and on March 26, 2012, filed a motion for approval of the settlement.  On April 4, 2012, non-party objectors Steven Surabian, Richard Surabian, and Martin M. Surabian (collectively, "the Surabians") filed an objection to the motion for approval of a settlement agreement.  On April 30, 2012, the Trustee filed a response to the objection of the Surabians.  On May 15, 2012, this Court held a hearing, overruled the Surabians' objection, and approved the settlement.

173.    In addition, this matter incorporates work on a new matter commenced by the Trustee on June 6, 2012, against Banque Degroof SA/NV, other Banque Degroof entities, Access International Advisors LLC, other Access entities, Aforge Finance Holding, other Aforge entities, and the Elite Stability SICAV Stablerock Compartment fund.  *Picard v. Banque Degroof SA/NV*, Adv. Pro. No. 12-01691 (Bankr. S.D.N.Y.) (BRL).  The complaint seeks recovery of subsequent transfers from these defendants.

W.    **MATTER 33 – NOMURA BANK INTERNATIONAL PLC**

174.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura Bank International plc ("Nomura") seeking the return of

approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura. *Picard v. Nomura Bank Int'l plc*, Adv. Pro. No. 10-05348 (Bankr. S.D.N.Y.) (BRL).

175.   During this Compensation Period, on June 6, 2012, the Trustee amended the complaint to, among other things, change the name of the defendant from Nomura Bank International, plc to Nomura International, plc.

176.   Also during the Compensation Period, Nomura filed a motion in the District Court to withdraw the reference from this Court.  In orders issued in May and June 2012, the District Court included the Nomura motion to dismiss for consolidated subject-matter briefing and oral argument.  During this Compensation Period, B&H attorneys began preparing responses to the consolidated motions to withdraw the reference.

177.   In addition to the tasks outlined above, the Trustee has extended Nomura's time to respond to the complaint while awaiting a determination from the District Court with respect to the motions to withdraw the reference.

## X.   MATTER 34 - CITIBANK

178.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citigroup") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Citigroup.  *Picard v. Citibank,* Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y.) (BRL).

179.    On November 2, 2011, Citigroup moved for withdrawal of the reference in the District Court.  *Picard v. Citibank*, No. 11-7825 (S.D.N.Y.) (JSR) (ECF Nos. 1–3).  During this Compensation Period, B&H attorneys filed a brief in opposition to the Citigroup motion to withdraw the reference, and oral argument was held in the District Court on May 1, 2012.  (ECF Nos. 13–15).

180.    The District Court has included the motions in its orders for consolidated subject matter briefing and oral argument issued in May and June 2012. During this Compensation Period, B&H attorneys continued preparing responses to the motions to withdraw the reference.

181.    In addition to the tasks outlined above, B&H attorneys on behalf of the Trustee has reached agreement with Citigroup to extend the time to respond to their motion to dismiss the complaint filed on July 26, 2011, while awaiting a determination from the District Court with respect to the motions to withdraw the reference.  *Picard v. Citibank,* Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y.) (BRL) (ECF No. 19).

## Y.    MATTER 35 - NATIXIS

182.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/n/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants.  *Picard v. Natixis, et al.*, Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y.) (BRL).

183.    The Natixis Defendants have filed motions in the District Court to withdraw the reference from this Court.  The District Court has include these motions in its orders for

consolidated subject matter briefing and oral argument issued in May and June 2012. During this Compensation Period, B&H attorneys continued preparing responses to the motions to withdraw the reference.

184.    In addition to the tasks outlined above, the Trustee has extended the defendants' time to respond to the complaint while awaiting a determination from the District Court with respect to the motions to withdraw the reference.

## Z.    MATTER 36 – MERRILL LYNCH

185.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International & Co. C.V. ("Merrill Lynch") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Merrill Lynch. *Picard v. Merrill Lynch Int'l*, Adv. Pro. No. 10-05346 (Bankr. S.D.N.Y.) (BRL).

186.    Merrill Lynch filed a motion in the District Court to withdraw the reference from this Court. In an order issued in June 2012, the District Court included the Merrill Lynch motion to withdraw the reference for consolidated subject matter briefing and oral argument. During this Compensation Period, B&H attorneys continued preparing responses to the consolidated motions to withdraw the reference.

187.    In addition to the tasks outlined above, the Trustee has extended Merrill Lynch's time to respond to the complaint while awaiting a determination from the District Court with respect to the motions to withdraw the reference.

## AA.    MATTER 37 – ABN AMRO

188.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of

Scotland, N.V.) and ABN AMRO Incorporated (together, "ABN"), and Rye Select Broad Market XL Fund, LP and Rye Select Broad Market XL Portfolio Ltd. (together, "Tremont XL Funds") seeking the return of approximately $671 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of ABN and the Tremont XL Funds. *Picard v. ABN AMRO Bank, N.A. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. Pro. No. 10-05354 (Bankr. S.D.N.Y.) (BRL).

189.    During this Compensation Period, the Trustee and B&H attorneys continued responding to ABN's Motion to Withdraw the Reference from this Court. *Picard v. ABN AMRO Bank, N.A.*, No. 11-6878 (S.D.N.Y.) (JSR).  On May 15, 2012, the District Court entered an order withdrawing the reference of this case for the limited purpose of determining whether relevant defendants received transfers in good faith and whether they may invoke the safe harbor created by section 546(g) of the Bankruptcy Code. (ECF No. 23).  In addition, the District Court has included ABN's motion to withdraw the reference in its orders for consolidated subject matter briefing and oral argument issued in May and June 2012, and B&H attorneys continued preparing responses to the motions to withdraw the reference on consolidated subject matter issues.

190.    Additionally, during this Compensation Period, B&H attorneys finalized a settlement with Rye Select Broad Market XL Portfolio.  Rye Select Broad Market XL Portfolio's motion to withdraw the reference was stayed pursuant to the steps necessary to effectuate the settlement with the Trustee. *Picard v. ABN AMRO (Ireland) Ltd.*, No. 11-6877 (S.D.N.Y.) (JSR) (ECF Nos. 1–3).  On June 15, 2012, a stipulation and order withdrawing Rye Select Broad

Market XL Portfolio's motion to withdraw the reference pursuant to the terms of the settlement agreement was signed and entered by Judge Rakoff. (ECF No. 26).

191.    In addition to the tasks outlined above, the Trustee has extended the defendants' time to respond to the complaint while awaiting a determination from the District Court with respect to the motions to withdraw the reference.

## BB.    MATTER 38 – BANCO BILBAO

192.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of approximately $45 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of BBVA. *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. Pro. No. 10-05351 (Bankr. S.D.N.Y.) (BRL).

193.    BBVA has filed motions in the District Court to withdraw the reference from this Court. *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, No. 11-07100 (S.D.N.Y.) (JSR) (ECF. Nos. 1–3).  In orders issued in May and June 2012, the District Court included the BBVA motions for consolidated subject matter briefing and oral argument. (ECF Nos. 20–24).  During this Compensation Period, B&H attorneys continued preparing responses to the consolidated motions to withdraw the reference.

194.    In addition to the tasks outlined above, the Trustee has extended BBVA's time to respond to the complaint while awaiting a determination from the District Court with respect to the motions to withdraw the reference.

## CC.    MATTER 39 - FORTIS

195.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions

Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/n/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. (collectively, the "Fortis Defendants") seeking the return of approximately $267 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants. *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd., et al.*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y.) (BRL).

196.    During this Compensation Period, the Trustee and B&H attorneys continued responding to the Fortis Defendants' motion to withdraw the reference from this Court. *Picard v. ABN AMRO (Ireland) Ltd.*, No. 11-6877 (S.D.N.Y.) (JSR) (ECF Nos. 1–3).  On May 15, 2012, the District Court entered an order withdrawing the reference of this case for the limited purpose of determining whether relevant defendants received transfers in good faith and whether they may invoke the safe harbor created by Bankruptcy Code section 546(g).  (ECF No. 22).  On June 13, 2012, pursuant to the District Court's May 15, 2012 order, the Fortis Defendants filed a motion to dismiss the Trustee's Complaint claiming the safe harbor of 546(g) bars the Trustee's subsequent transferee claims.  (ECF Nos. 27–29).

197.    The District Court has included the Fortis Defendants' motion to withdraw the reference in its orders for consolidated subject matter briefing and oral argument issued in May and June 2012, and B&H attorneys continued preparing responses to the motions to withdraw the reference on consolidated subject matter issues.

198.    In addition to the tasks outlined above, the Trustee has extended the Fortis Defendants' time to respond to the complaint while awaiting a determination from the District Court with respect to the motions to withdraw the reference.

## DD.    MATTER 40 – MEDICI ENTERPRISE

199.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and civil action against Sonja Kohn, Unicredit S.p.A. ("UniCredit"), and numerous other financial institutions, entities, and individuals (collectively, the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants. *Picard v. Sonja Kohn, et al.*, Adv. Pro. No. 10-05411 (Bankr. S.D.N.Y.) (BRL). This matter also covers work performed by B&H on the English matter *MSIL v. Raven*. The liquidator of MSIL, with the assistance of B&H, was able to obtain a worldwide freeze against Sonja Kohn and certain of her entities in the amount of approximately £28 million.

200.    In addition to the tasks outlined above, during this Compensation Period, the Trustee has participated in certain Austrian criminal proceedings against Sonja Kohn, Bank Medici, and Bank Austria as a victim and in certain Liechtenstein criminal proceedings against Sonja Kohn and Urszula Radel-Leszczynski.  The Trustee also assisted English counsel in drafting arguments to allow the free flow of information relating to Sonja Kohn's disclosure order.  B&H also continued investigating Sonja Kohn and her co-conspirators throughout Europe.

## EE.    MATTER 41 - WHITECHAPEL

201.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Whitechapel Management Ltd. and Granadilla Holdings Ltd. (together, the "Whitechapel Defendants") seeking the return of approximately $10 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Whitechapel Defendants. *Picard v. Whitechapel Mgmt. Ltd., et al.*, Adv. Pro. No. 10-05402 (Bankr. S.D.N.Y.) (BRL).

202.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys completed their review of the documents produced as a result of the disclosure order that the Trustee earlier obtained in the BVI seeking documents from the registered agent for Granadilla Holdings Ltd.

203.    On August 16, 2012, the Trustee and B&H attorneys dismissed the proceeding against the Whitechapel Defendants because the entities were dissolved and were unable to be served.

## FF.    MATTER 42 - EQUITY TRADING

204.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Ltd., Equity Trading Fund Ltd., and BNP Paribas Arbitrage (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants. *Picard v. Equity Trading Portfolio Ltd., et al.*, Adv. Pro. No. 10-04457 (Bankr. S.D.N.Y.) (BRL).

205.    The Equity Trading Defendants have filed motions, or joinders to the motions in the District Court, to withdraw the reference from this Court.  The District Court has included the motions in its orders for consolidated subject matter briefing and oral argument issued in May 2012.

206.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys and the Equity Trading Defendants renegotiated the right to file an amended complaint, and a briefing schedule was established.  The pre-trial conference is scheduled for December 19, 2012.

## GG.    MATTER 43 – DEFENDER

207.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Defender Ltd., Reliance Management (BVI) Ltd., Reliance Management (Gibraltar) Ltd., Reliance International Research LLC, Tim Brockmann, and Justin Lowe (collectively, the "Defender Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants.  *Picard v. Defender Ltd., et al.*, Adv. Pro. No. 10-05229 (Bankr. S.D.N.Y.) (BRL).

208.    On April 2, 2012, the Defender Defendants filed motions in the District Court to withdraw the reference from this Court. (ECF Nos. 24, 28.)  The District Court has partially granted these motions and included these motions in its orders for consolidated subject matter briefing and oral argument issued in May 2012.

209.    On April 27, 2012, defendants Reliance Management (BVI) Ltd., Reliance Management (Gibraltar) Ltd., and Tim Brockmann filed a motion in this Court to dismiss for lack of personal jurisdiction.  (ECF No. 36).  During this Compensation Period, B&H attorneys

worked on preparing the Trustee's opposition papers to that motion, which were filed on August 17, 2012. (ECF No. 49). The moving defendants filed their reply papers on October 26, 2012. (ECF Nos. 55–56). Oral argument is schedule for December 19, 2012.

210.    In addition to supporting the Trustee's opposition papers to the motions identified above, during this Compensation Period, B&H attorneys negotiated with the Defender Defendants to establish a briefing schedule for the motion to dismiss and extensions of time to respond to the complaint. The pre-trial conference is scheduled for December 19, 2012.

## HH.    MATTER 44 – MACCABEE

211.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, John Greenberger Maccabee, individually and as trustee of the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust, Sherry Morse Maccabee, individually and as trustee of the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust (collectively, the "Maccabee Defendants") seeking the return of approximately $1.5 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maccabee Defendants. *Picard v. John Greenberger Maccabee & Sherry Morse Maccabee Living Trust, et al.*, Adv. Pro. No. 10-05407 (Bankr. S.D.N.Y.) (BRL).

212.    On July 19, 2011, the Maccabee Defendants moved to withdraw the reference. *Picard v. Maccabee,* No. 11-04937 (S.D.N.Y.) (JSR) (ECF No. 2). B&H attorneys prepared an opposition to the motion, which was filed on December 16, 2011. (ECF No. 10). During this Compensation Period, Judge Rakoff partially denied the Maccabee Defendants' motion to

withdraw the reference and also issued orders deeming the reference partially withdrawn on certain issues.  (ECF Nos. 14, 15).

## II.        MATTER 45 – LEVEY

213.    This matter reflects time invested by the Trustee and B&H attorneys pursuing four avoidance actions in which Joel Levey is a named defendant (collectively, the "Levey Actions").  The Levey Actions are as follows:  *Picard v. Joel Levey*, Adv. Pro. No. 10-04282 (Bankr. S.D.N.Y.) (BRL); *Picard v. Aaron Levey Revocable Living Trust, et al.*, Adv. Pro. No. 10-04894 (Bankr. S.D.N.Y.) (BRL); *Picard v. Aaron Levey Revocable Living Trust*, *et al.*, Adv. Pro. No. 10-05441 (Bankr. S.D.N.Y.) (BRL); and *Picard v. Frances Levey Revocable Living Trust, et al.*, Adv. Pro. No. 10-05430 (Bankr. S.D.N.Y.) (BRL).

214.    Together with Joel Levey, the other named defendants in the Levey Actions are as follows: Aaron Levey Revocable Living Trust; Frances Levey Revocable Living Trust; Wendy Kapner Revocable Trust; Wendy Kapner; Sandra Moore; and James Kapner (collectively, the "Levey Defendants").  The individual Levey Defendants were named in their various capacities, including as grantor, trustee, and/or beneficiary.  The Levey Actions seek an aggregate recovery of approximately $6.8 million under SIPA, the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable law for the recovery of avoidable transfers and damages related to transfers made by BLMIS to or for the benefit of the Levey Defendants.

215.    During this Compensation Period, B&H attorneys continued to discuss a global settlement of the Levy Actions with counsel to the Levey Defendants.  Discovery has been adjourned, but is to pick up at the end of 2012.

## JJ.        MATTER 46 – GLANTZ

216.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Richard M. Glantz and numerous other individuals, trusts and entities

(collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants. *Picard v. Richard M. Glantz, et al.*, Adv. Pro. No. 10-05394 (Bankr. S.D.N.Y.) (BRL).

217.    Following the filing of the complaint in this action, certain defendants were dismissed based on hardship, settlement or other reasons. On February 1, 2012 the remaining defendants filed a motion to dismiss. (ECF Nos. 26–30). The parties subsequently entered into stipulations extending the Trustee's time to amend the complaint in response to the motion to dismiss. On March 31, 2012, the defendants filed in the District Court a motion to withdraw the reference. *Picard v. Glantz*, No. 12-02778 (S.D.N.Y.) (JSR) (ECF Nos. 1–3). Judge Rakoff partially denied the defendants' motion to withdraw, however, he issued orders deeming the reference partially withdrawn to address certain issues to the majority of the avoidance actions brought by the Trustee in this SIPA proceeding. (ECF Nos. 10–12).

218.    During the Compensation Period, B&H attorneys engaged in work related to these motions. In addition to the tasks outlined above, during this Compensation Period, B&H attorneys analyzed the issues raised in the motion to dismiss, and developed factual and legal arguments. B&H attorneys also engaged in settlement discussions and reviewed Hardship Program applications and related materials on behalf of several defendants. During this Compensation Period, stipulations were so-ordered dismissing the action against two defendants based on settlements, and against two defendants based on no liability.

## KK.    MATTER 47 – BONVENTRE

219.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Daniel Bonventre and Barbara Bonventre (together, the "Bonventre

Defendants") seeking the return of approximately $12.6 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bonventre Defendants. *Picard v. Daniel Bonventre, et al.*, Adv. Pro. No. 10-04214 (Bankr. S.D.N.Y.) (BRL).

220.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys granted the Bonventre Defendants several extensions of time to respond to the complaint up to and including December 27, 2012, as the action was stayed pending the criminal case against Daniel Bonventre. *Picard v. Daniel Bonventre, et al.*, Adv. Pro. No. 10-04214 (Bankr. S.D.N.Y.) (BRL) (ECF No. 14); *see United States v. O'Hara*, 10 Cr. 228 (S.D.N.Y.) (LTS). B&H attorneys have received and reviewed the list of documents requested by the Bonventre Defendants.

## LL.    MATTER 48 – BONGIORNO

221.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Annette Bongiorno and Rudy Bongiorno (together, the "Bongiorno Defendants") seeking the return of approximately $22 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bongiorno Defendants. *Picard v. Annette Bongiorno, et al.*, Adv. Pro. No. 10-04215 (Bankr. S.D.N.Y.) (BRL).

222.    The action was stayed through December 27, 2012 because of the pending criminal case against Annette Bongiorno. *See United States v. O'Hara et al.*, 10 Cr. 228 (S.D.N.Y.) (LTS).

## MM.    MATTER 49 – GREENBERGER

223.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert and Phyllis Greenberger (together, the "Greenberger Defendants") seeking the return of over $500,000 under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Greenberger Defendants. *Picard v. Robert & Phyllis Greenberger*, Adv. Pro. No. 10-05408 (Bankr. S.D.N.Y.) (BRL).

224.    On July 14, 2011, the Greenberger Defendants moved to withdraw the bankruptcy reference, and B&H prepared an opposition to the motion. *Picard v. Robert Greenberger & Phyllis Greenberger*, No. 11-04928 (S.D.N.Y.) (JSR) (ECF No. 1, 12, 13).  On May 4, 2012, the Greenberger Defendants filed a motion to dismiss.  (ECF No. 22).  During the Compensation Period, B&H attorneys prepared and filed an amended complaint in response to the Greenberger Defendants' motion to dismiss.  (ECF No. 28).  At the end of this Compensation Period, Judge Rakoff partially denied the Greenberger Defendants' motion to withdraw the reference and also issues orders deeming the reference partially withdrawn on certain issues.  (ECF No. 30–31).

## NN.    MATTER 50 – PITZ

225.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Enrica Cotellessa-Pitz and Thomas Pitz (together, the "Pitz Defendants") seeking the return of over $3 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Pitz Defendants. *Picard v. Cotellessa-Pitz, et al.*, Adv. Pro. No. 10-04213 (Bankr. S.D.N.Y.) (BRL).

226.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys engaged in settlement discussions with the Pitz Defendants.  The adversary proceeding was stayed up to and including August 22, 2012 because of the criminal case against Ms. Cotellessa-Pitz.  *See United States v. O'Hara et al.*, 10 Cr. 228 (S.D.N.Y.) (LTS).

## OO.    MATTER 51 – CRUPI

227.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jo Ann Crupi, a former BLMIS employee, Judith Bowen, Debra E. Guston, Guston & Guston, LLP, Pensco Trust Company, as former custodian of an Individual Retirement Account for the benefit of Jo Ann Crupi, and numerous trusts (collectively, the "Crupi Defendants") seeking the return of over $8.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Crupi Defendants.  *Picard v. Jo Ann Crupi, et al.*, Adv. Pro. No. 10-04216 (Bankr. S.D.N.Y.) (BRL). The Trustee alleges, among other things, that Ms. Crupi, as an employee of BLMIS, played a vital role in perpetuating the Ponzi scheme.

228.    During the reporting period, the Trustee's attorneys conducted further investigation of defendants Debra Guston and Guston & Guston, LLP in connection with certain transfers of property.  As a result of the investigation, on December 8, 2011, B&H attorneys negotiated dismissal without prejudice of defendants Debra Guston and Guston & Guston, LLP from the adversary proceeding.  (ECF No. 22).  While this matter was originally stayed because of the pending criminal case against Jo Ann Crupi, this matter is now moving forward.  *See United States v. O'Hara et al.*, 10 Cr. 228 (S.D.N.Y.) (LTS).  On December 28, 2011, Ms. Crupi and Ms. Bowen, on behalf of themselves and certain other defendants, filed an answer to the adversary complaint.  *Picard v. Crupi*, Adv. Pro. No. 10-04216 (BRL) (ECF No. 25).

## PP.    MATTER 52 – DONALD FRIEDMAN

229.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against S. Donald Friedman, individually and in his capacity as a beneficiary of an individual retirement account, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman (collectively, the "Friedman Defendants"), seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Friedman Defendants. *Picard v. Friedman*, Adv. Pro. No. 10-05395 (Bankr. S.D.N.Y.) (BRL).

230.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys met and conferred with opposing counsel and continued discovery, including serving responses to contention-based interrogatories, amended initial disclosures, and notices of Defendants' depositions.  Discovery was conducted pursuant a case management plan submitted to the Court by B&H attorneys and so-ordered during this Compensation Period.  (ECF No. 52). The Trustee reviewed documents produced by the Friedman Defendants and produced documents to Friedman Defendants, including a production of over 6,000 documents.  The Trustee has completed a rolling document production, pending the need to supplement the production as appropriate.  In addition, the Trustee issued subpoenas to non-party banks and reviewed documents produced in response to the subpoenas.

## QQ.    MATTER 53 – MAGNIFY

231.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Osnat Dodelson, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and

Robert H. Book (collectively, the "Magnify Defendants") seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc., et al.*, Adv. Pro. No. 10-05279 (Bankr. S.D.N.Y.) (BRL).

232.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued their investigation of those Magnify Defendants located outside of the United States.    B&H attorneys participated in an oral argument of a motion filed by Kurt Brunner seeking to dismiss the Amended Complaint for lack of personal jurisdiction, which was denied and jurisdictional discovery over that defendant was ordered.    B&H attorneys negotiated and entered a case management plan with the Magnify Defendants.    B&H attorneys drafted and served jurisdictional discovery requests for Kurt Brunner.    B&H attorneys drafted and served requests for production of documents on several of the Magnify Defendants, drafted and served initial disclosures on all Magnify Defendants, and made an initial production of certain BLMIS account documents on all Magnify Defendants.    B&H attorneys assisted in the drafting of a motion by the Trustee's counsel in Israel to halt the voluntary liquidation of the defendant Yeshaya Horowitz Association and transfer the liquidation to a court-supervised liquidation before the Jerusalem District Court.    B&H attorneys also drafted various motions, briefs, and pleadings related to a motion to withdraw the reference to the District Court filed by Robert H. Book and R.H. Book LLC on April 2, 2012. *Picard v. Robert H. Book, et al.*, No. 12-02482 (S.D.N.Y.) (JSR).

233.    In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate

(Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Apfelbaum Defendants. *Picard v. Estate (Succession) of Doris Igoin, et al.*, Adv. Pro. No. 10-04336 (Bankr. S.D.N.Y.) (BRL).

234.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued their investigation of the Apfelbaum Defendants, who are located outside of the United States.    B&H attorneys filed an amended complaint against the Apfelbaum Defendants.  B&H attorneys researched and drafted the Trustee's opposition to a motion filed by the Apfelbaum Defendants seeking to dismiss the Amended Complaint for lack of personal jurisdiction and forum non conveniens.    B&H attorneys also drafted various motions and pleadings related to a motion to withdraw the reference to the District Court filed by the Apfelbaum Defendants on April 2, 2012. *Picard v. Estate (Succession) of Doris Igoin, et al.*, No. 12-02872 (S.D.N.Y.) (JSR).

RR.    **MATTER 54 – MENDELOW**

235.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela (Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Mendelow Defendants. *Picard v. Steven B. Mendelow, et al.*, Adv. Pro. No. 10-04283 (Bankr. S.D.N.Y.) (BRL).

236.    The Mendelow Defendants moved to withdraw the reference, which was granted. *Picard v. Mendelow*, No. 11-07680 (S.D.N.Y.) (JSR) (ECF No. 1).    Previously, Mendelow moved in this Court to enforce the automatic stay against a third-party action filed against him in the New York State Supreme Court.    B&H attorneys prepared and filed a response to Mendelow's motion.    After the hearing was adjourned several times, the plaintiffs in the state court actions voluntarily agreed to stay their actions against Steven Mendelow pending the outcome of the Trustee's action.    B&H attorneys have continued to monitor the developments in the third-party state court action as discovery has continued against the remaining defendants. B&H attorneys have granted the Mendelow Defendants several extensions of time to respond to the complaint.    Their answer is currently due in January 2013 pending the outcome of the consolidated briefing before Judge Rakoff.    (ECF No. 46).

## SS.    MATTER 55 – KUGEL

237.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against David L. Kugel, Phyllis Kugel, Craig Kugel, Heather Kugel, and several partnerships, trusts and other entities (collectively, the "Kugel Defendants") seeking the return of more than $22 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kugel Defendants. *Picard v. David L. Kugel, et al.*, Adv. Pro. No. 10-04217 (Bankr. S.D.N.Y.) (BRL). In November 2011, the Trustee dismissed the adversary proceeding against the Kugel Defendants with prejudice after David Kugel pled guilty to several federal crimes before the

District Court in November 2011.  *See United States v. O'Hara et al.*, 10-00228 (S.D.N.Y.)
(LTS).

## TT.    MATTER 56 – LIPKIN

238.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the
avoidance action against Irwin Lipkin, Carole Lipkin, Eric Lipkin, Erika Lipkin, Marc Lipkin,
Russell Lipkin, Karen Yokomizo Lipkin, and other individuals (collectively, the "Lipkin
Defendants") seeking the return of approximately $9 million under SIPA, the Bankruptcy Code,
the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances
and damages in connection with certain transfers of property by BLMIS to or for the benefit of
the Lipkin Defendants.  *Picard v. Irwin Lipkin, et al.*, Adv. Pro. No. 10-04218 (Bankr. S.D.N.Y.)
(BRL).

239.    In addition to the tasks outlined above, during this Compensation Period, B&H
attorneys granted certain Lipkin Defendants extensions of time to respond to the complaint.  In
June 2011, defendant Eric Lipkin pled guilty to criminal charges.  *See United States v. O'Hara et
al.*, 10-00228 (S.D.N.Y.) (LTS).   For the remaining defendants, the pre-trial conference is
scheduled to be held on December 19, 2012.

## UU.    MATTER 57 – PEREZ/O'HARA

240.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the
avoidance action against Jerome O'Hara, Bernadette O'Hara, O'Hara Family Partnership,
Elizabeth Sarro, George Perez, and Jeanette Perez (collectively, the "Perez/O'Hara Defendants")
seeking the return of over $6 million under SIPA, the Bankruptcy Code, the New York
Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages
in connection with certain transfers of property by BLMIS to or for the benefit of the
Perez/O'Hara Defendants.  *Picard v. Jerome O'Hara, et al.*, Adv. Pro. No. 10-04272 (Bankr.

S.D.N.Y.) (BRL). The Trustee's adversary proceeding against Jerome O'Hara and George Perez was stayed through December 14, 2012 because of the pending criminal cases against them. *See United States v. O'Hara et al.*, 10-00228 (S.D.N.Y.) (LTS).

## VV.   MATTER 58 – PJ ADMINISTRATORS

241.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants. *Picard v. American Sec. Mgmt., L.P., et al.*, Adv. Pro. No. 10-05415 (Bankr. S.D.N.Y.) (BRL).

242.   In addition to the tasks outlined above, during this Compensation Period, B&H attorneys granted the PJ Defendants extensions of time to respond to the complaint.

## WW.  MATTER 59 – STANLEY SHAPIRO

243.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $61.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *Picard v. Shapiro, et al.*, Adv. Pro. No. 10-05383 (Bankr. S.D.N.Y.) (BRL).

244.   In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued to develop the Trustee's case against the Shapiro Defendants and consented

to several extensions of time for the Shapiro Defendants to respond to the complaint.  After

Judge Rakoff withdrew the reference on several issues, the Shapiro Defendants' filed a motion to

dismiss various claims of the Amended Complaint in the District Court.  That motion remains

pending in the District Court.  *Picard v. Shapiro, et al.*, No. 11-05835 (S.D.N.Y.) (JSR) (ECF

No. 25).

## XX.    MATTER 60 – AVELLINO & BIENES

245.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C.

Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities

(collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

fraudulent conveyances and damages in connection with certain transfers of property by BLMIS

to or for the benefit of the A&B Defendants.  *Picard v. Avellino, et al.*, Adv. Pro. No. 10-05421

(Bankr. S.D.N.Y.) (BRL).

246.    On June 6, 2011, certain A&B Defendants moved to dismiss the complaint in this

Court.  (ECF No. 23).  That same day, certain A&B Defendants moved to withdraw the reference

from Bankruptcy Court.  *Picard v. Frank J. Avellino, et al.*, No. 11-03882 (S.D.N.Y.) (JSR)

(ECF No. 1).  The motion to withdraw the reference was fully briefed in the District Court and

oral argument was held on October 18, 2011.  The reference to this Court was withdrawn on

several issues on February 29, 2012.   (ECF No. 20).   The A&B Defendants are currently

proceeding in a consolidated briefing before the District Court on the issues withdrawn.  As

such, the motion to dismiss has been held in abeyance and therefore the briefing schedule has

been vacated.  *See Picard v. Frank J. Avellino, et al.*, No. 11-03882 (S.D.N.Y.) (JSR).

72

247.    While the above-referenced motions have been pending, B&H attorneys have undertaken several tasks for this adversary proceeding.    Specifically, B&H attorneys have continued to engage in discovery preparation, case assessment and strategy, and the review and disposition of Hardship Applications.

## YY.    MATTER 61 – MAXAM

248.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Maxam Absolute Return Fund, L.P., Maxam Absolute Return Fund, Ltd., Maxam Capital Management, LLC, Maxam Capital GP LLC, Sandra L. Manzke Revocable Trust, Sandra L. Manzke, as trustee and individually, Suzanne Hammond, Walker Manzke, and April Bukofser Manzke (collectively, the "Maxam Defendants") seeking the return of approximately $100 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maxam Defendants.    *Picard v. Maxam Absolute Return Fund, L.P., et al.*, Adv. Pro. No. 10-05342 (Bankr. S.D.N.Y.) (BRL).

249.    In addition to the tasks outlined above, during this Compensation Period, Judge Rakoff granted the defendants' Second Motion to Withdraw the Reference (filed in October 2011) by Order dated May 14, 2012.    *Picard v. Maxam Absolute Return Fund, L.P., et al.*, No. 11-7428 (S.D.N.Y.) (JSR) (ECF Nos. 1, 22).    On May 24, 2012, the defendants' filed a Motion for Judgment on the Pleadings.    Before the Trustee had the opportunity to file opposition, the motion was stayed by Judge Rakoff's order directing consolidated briefing on the "good faith" issue.    (ECF No. 31).    Whether the Trustee must file opposition to the Motion for Judgment on the Pleadings will therefore depend on Judge Rakoff's anticipated ruling.

250.    On September 22, 2011, B&H attorneys petitioned this Court to enjoin an action for a declaratory judgment of non-liability brought in the Cayman Islands against the Trustee by Maxam Absolute Return Fund, Ltd ("Maxam Ltd."). *Picard v. Maxam Absolute Return Fund, L.P. et al.*, Adv. Pro. No. 10-05342 (Bankr. S.D.N.Y.) (BRL) (ECF No. 43). On October 12, 2011, this Court enjoined the action based on Maxam Limited's violation of the automatic stay (ECF No. 54) and on October 14, 2011, local counsel for the Trustee in the Cayman Islands received a Notice of Discontinuance. On October 24, 2011, Maxam Ltd. filed a notice of appeal to the District Court. (ECF No. 64). The appeal was assigned to United States District Judge J. Paul Oetken, and the parties briefed the motion in the District Court. By Memorandum and Order dated May 4, 2012, the District Court affirmed this Court's order enjoining the Cayman action. *Maxam v. Picard,* No. 11-08629 (S.D.N.Y.) (JPO) (ECF No. 16). Defendants filed a Notice of Appeal on May 29, 2012, and the case remains pending before the Second Circuit. *Maxam v. Picard,* No. 12-2194 (2d Cir.).

251.    The parties also engaged in discovery during this Compensation Period. Based on written discovery exchanged between the parties, B&H attorneys created a protocol and undertook an extensive review of documents within his databases for the production of responsive documents to the Maxam Defendants. The Trustee also noticed several depositions, including the Rule 30(b)(6) depositions of the four entity defendants and the individual depositions of defendants. On May 16, 2012, B&H attorneys deposed a witness designated by Defendants as a Rule 30(b)(6) representative regarding topics related to Maxam's information technology process and procedures and the preservation of documents related to this case. In addition, B&H attorneys began the process of organizing, reviewing, and analyzing documents

produced by the Maxam Defendants in an effort to prepare for depositions, anticipated motions, and trial.

## ZZ.   MATTER 62 – SUBSEQUENT TRANSFERS

252.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.  Under § 550 of the Bankruptcy Code, the Trustee may recover transfers from BLMIS to a direct customer or from any entity to whom the customer made transfers.

253.     During this Compensation Period, the Trustee commenced eighteen additional actions against subsequent transferees seeking to recover in excess of $850 million.  Nearly all of these actions arose from transfers made by "Feeder Funds," which had customer accounts at BLMIS and received transfers from BLMIS, for the funds' shareholders or partners.  B&H attorneys entered into stipulations with several defendants setting schedules for the response to the previously filed subsequent transferee Complaints.  The Trustee engaged in motion practice before this Court involving multiple subsequent transferee defendants which resulted in notices to preserve the Trustee's claims being issued to the beneficial owners of the accounts in which the subsequent transfers were deposited.

254.     The Trustee's investigation is ongoing and additional recovery actions will be filed.

## AAA.  MATTER 63 – CITRUS

255.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citrus Investment Holdings Ltd. ("Citrus") seeking the return of over $17 million under SIPA and the Bankruptcy Code in connection with certain transfers of property by BLMIS to or for the benefit of Citrus.  *Picard v. Citrus Investment Holdings Ltd.*, Adv. Pro. No. 10-04471 (Bankr. S.D.N.Y.) (BRL).

256.    On March 30, 2012, Citrus filed a motion to withdraw the reference to the District Court, for consideration of (1) the Section 546(e) "safe harbor", (2) the applicable "good faith" standard (3) Citrus's right to claim a Section 502 offset, and (4) Citrus's entitlement to a jury trial. *Picard v. Citrus Investment Holdings Ltd.*, No. 12-02435 (S.D.N.Y.) (the "Citrus Action") (ECF Nos. 1–3).  On May 16, 2012, Judge Rakoff included the Citrus Action in a consolidated order partially withdrawing the reference and dismissing certain claims under Section 546(e), and facilitating a Second Circuit appeal on the issue.  (ECF No. 11).  On June 21, 2012 Judge Rakoff included the Citrus action in an order partially withdrawing the reference and consolidating the briefing on the applicable "good faith" standard for avoidance of certain transfers.  (ECF No. 12).

## BBB.  MATTER 65 – LEGACY

257.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC, HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.  *Picard v. Legacy Capital Ltd., et al.*, Adv. Pro. No. 10-05286 (Bankr. S.D.N.Y.) (BRL).

258.    In addition to the tasks outlined above, during this Compensation Period, B&H attorneys continued their factual investigation of the Legacy Capital Defendants.  This ongoing investigation includes, in part, the review of documents relating to the Legacy Capital Defendants' facilitation of investments of other people's money through BLMIS.

## V.    COMPENSATION REQUESTED

259.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

260.    The Trustee and B&H expended 179,055.00 hours in the rendition of professional and paraprofessional services during this Compensation Period, resulting in an average hourly discounted rate of $382.70 for fees incurred.[6]  The blended attorney rate is $399.79.

261.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during this Compensation Period, and (ii) a draft of this Application.  In connection with the five monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $2,640,131.50 (in addition to the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $519,326.17.

262.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $6,852,394.65.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in Chapter 11 cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

---

[6] In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

263.    Pursuant to the Second Amended Compensation Order, on March 21, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from February 1, 2012 through February 29, 2012 (the "February Fee Statement").  The February Fee Statement reflected fees of $15,255,294.50 and expenses of $194,872.76.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the February Fee Statement reflected fees of $13,729,765.05.  After subtracting the Court-ordered 10% holdback, SIPC advanced $12,356,788.55 for services rendered and $194,872.76 for expenses incurred by the Trustee and B&H.

264.    Pursuant to the Second Amended Compensation Order, on April 20, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from March 1, 2012 through March 31, 2012 (the "March Fee Statement").  The March Fee Statement reflected fees of $14,061,142.50 and expenses of $229,625.91.  SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the March Fee Statement reflected fees of $12,655,028.25.  After subtracting the Court-ordered 10% holdback, SIPC advanced $11,389,525.43 for services rendered and $229,625.91 for expenses incurred by the Trustee and B&H.

265.    Pursuant to the Second Amended Compensation Order, on May 21, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from April 1, 2012 through April 30, 2012 (the "April Fee Statement").  The April Fee Statement reflected fees of $13,504,906.50 and expenses of $153,825.71.  SIPC's staff made certain adjustments and suggestions, which were adopted by

the Trustee and B&H.  After such adjustments, the April Fee Statement reflected fees of $12,655,028.25.  After subtracting the Court-ordered 10% holdback, SIPC advanced $11,389,525.43 for services rendered and $153,825.71 for expenses incurred by the Trustee and B&H.

266.    Pursuant to the Second Amended Compensation Order, on June 20, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from May 1, 2012 through May 31, 2012 (the "May Fee Statement").  The May Fee Statement reflected fees of $13,560,064.50 and expenses of $349,891.95.  SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the May Fee Statement reflected fees of $12,204,058.05.  After subtracting the Court-ordered 10% holdback, SIPC advanced $10,983,652.25 for services rendered and $349,891.95 for expenses incurred by the Trustee and B&H.

267.    Pursuant to the Second Amended Compensation Order, on July 23, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from June 1, 2012 through June 30, 2012 (the "June Fee Statement").  The June Fee Statement reflected fees of $12,142,538.50 and expenses of $110,101.61.  SIPC's staff made certain adjustments and suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the June Fee Statement reflected fees of $10,928,284.65.  After subtracting the Court-ordered 10% holdback, SIPC advanced $9,835,456.19 for services rendered and $110,101.61 for expenses incurred by the Trustee and B&H.

268.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during this Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

269.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofesionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

270.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

271.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

272.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

273.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate

application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

274.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

275.    While the Trustee has recovered or entered into agreements to recover over $9.1 billion as of June 30, 2012, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

276.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief of the Trustee.  Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

277.    Therefore, with respect to this Application, the Trustee and B&H request that consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).

SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on December 19, 2012.

278.    The Trustee and B&H submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section § 78eee(b)(5) of SIPA.

## VII.    CONCLUSION

279.    The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $61,671,551.85 (of which $55,504,396.69 is to be paid currently and $6,167,155.16 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $1,038,317.94 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      November 28, 2012

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/  *David J. Sheehan*
    Baker & Hostetler LLP
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    Irving H. Picard
    Email: ipicard@bakerlaw.com
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Seanna R. Brown
    Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC And Bernard L. Madoff*