Hearing Date: February 13, 2013, at 10:00 AM

ROBERT J. KAPLAN
*Attorney for MUUS Independence Fund LP*
*and Michael W. Sonnenfeldt*
15 Maiden Lane
Suite 703
New York, NY 10038
(212) 964-0600
*lawkap@aol.com*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORATION,                                                                Adv. Pro. No. 08-01789 (BRL)

                  Plaintiff-Applicant,                          SIPA LIQUIDATION
                                                                        (Substantively Consolidated)
                  v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                  Defendant.
------------------------------------------------------------------x
In re:

BERNARD L. MADOFF,

                  Debtor.
------------------------------------------------------------------x

**MEMORANDUM FOR MUUS INDEPENDENCE FUND LP AND**
**MICHAEL W. SONNENFELDT IN RESPONSE TO THE TRUSTEE'S**
**TIME-BASED DAMAGES MOTION**

      MUUS Independence Fund LP ("MIF") and Michael W. Sonnenfeldt ("Sonnenfeldt"), by

their attorney, Robert J. Kaplan, respectfully submit the following response to the Trustee's

- 1 -

time-based damages motion:

1. MIF and Sonnenfeldt are the defendants in Adv. Proc. No. 10-04445, which is one of many Avoidance Actions that have been brought by the Trustee. MIF had an account at BLMIS, which was closed prior to the revelation of Madoff's wrongdoing and the consequent filing of this case.[1] Because it was unclear at the early stages of this case how persons, such as MIF, who had been customers of BLMIS would be treated under SIPA, MIF (which was then represented by different counsel) filed what was denominated a "protective claim" (SIPA Claim No. 005720) to safeguard potential "customer" rights that it might have as a result of being a BLMIS customer. As it turned out, "customer" rights were not available, because MIF had not had a "loser" account with BLMIS, and it therefore fell outside the parameters of this court's "net equity" decision regarding who is and is not entitled to "customer" protection under SIPA.

2. The order scheduling the Trustee's time-based damages motion for hearing [the "Scheduling Order", Dkt. No. 5022] states that "The *sole* purpose of the Time-Based Damages Motion shall be to resolve the legal issues raised in the claims and objections relating to the Time-Based Damages Issue *as a component for calculation of customer claims* ." [emphasis added] Since, as a "winner", MIF does not have a "net equity customer claim" [Scheduling Order, page 4], the issue of time-based damages is, given the limitation that the Scheduling Order placed on present briefing, inconsequential to MIF *in its present context.* MIF does, however, want to make clear that, irrespective of how the Court ultimately decides whether "customer" claims" should be "adjusted" for a "time" factor, the issue of "time" damages continues to be

---

[1] Sonnenfeldt did not have an account at BLMIS. He is the managing member of a limited liability company, MUUS CAPITAL ADVISORS LLC ("MCAL"). MIF is a limited partnership, and MCAL is its general partner.

relevant in a *different* context, namely, whether "interest" or "time value" should reduce the amount of the *avoidance* claims that the Trustee has asserted against MIF (and others similarly situated).

3. While MIF does not believe that the Court is confused as to this crucial distinction (and the limitation that the Scheduling Order placed on present briefing seems to confirm this), it does appear to MIF that counsel for certain other interested parties are confusing the treatment of the "time" issue in different contexts. With all due respect to counsel for such other parties, they are mixing apples and oranges. In the *customer claim context,* the operative statutory standard is "net equity". Whether *net equity* includes a "time" component is the *only* issue on which the Court has requested briefing and that it is deciding at this time. In contradistinction, in the *avoidance context,* the operative statutory standard is not "net equity". Rather, in *that* context, the operative statutory language is whether BLMIS had a "debt" to the recipient of the allegedly fraudulent transfer. *See*, 11 U.S.C. 548(d)(2)(A).

4. "Debt" is a defined term (11 U.S.C. 101[12]), [2] and the Second Circuit has held that it means the "broadest possible definition of debt", including "any possible right to payment" and "any possible obligation to make payment". *See, Mazzeo v. United States of America*, 131 F.3d 295, 301-02 (2d Cir. 1997).

5. By its terms, the applicable statute (11 U.S.C. 548(d)(2)(A)) allows for one -- *and only one* -- exception to the broad definition of "debt", namely, "an unperformed promise to furnish support to the debtor or to a relative of the debtor".

---

[2] 11 U.S.C. 101 states, "In this title the following definitions shall apply:" 11 U.S.C. 548(d)(2)(A) is part of "this title".

- 3 -

6. However this Court may resolve the issue of whether *customer claims* can be adjusted for "time", the Court will, in a different context (avoidance actions), someday have to decide whether the Trustee's refusal to recognize interest or time value as a "possible right to payment" is an impermissible attempt to add a *second exception* to the *single exception* that Congress authorized to the broad definition of "debt" in 11 U.S.C. 548(d)(2)(A). [3]

---

[3] Tracking the language of the Second Circuit, whether a "debt" existed entails considering whether BLIMS had "any" "possible" obligation to pay interest to someone whose money had been detained by BLMIS under false pretenses. This "any possible" standard requires looking to *all* possible bases of liability that BLMIS had to the persons to whom it made payments. Those "any possible" bases included the quasi-contractual liability ("money had and received") that BLMIS had to persons who had been deceived into investing with it, because money had and received liability kicks in where deception exists. *See*, *Cumis Insurance Society, Inc. v. Dominic*, 1997 U.S. Dist. LEXIS 3814 (S.D.N.Y. 1997) [Sotomayor, J.] *See also*, *Foote v. Ffoulke*, 55 A.D. 617, 67 N.Y.S. 368 (1st Dep't, 1900). When, as here, fraud or deception existed, money had and received liability is unaffected by the fact that the deceiver had an "agreement" with the deceivee (which was itself a product of fraud). *See*, *Bangkok Crafts Corporation v. Capitolo Di San Pietro in Vaticano,* 2007 U.S. Dist. LEXIS 42639 (S.D.N.Y. 2007) at **24-27.

The Trustee has overlooked the point that when, as here, the "any possible" obligation to make payment included a quasi-contractual obligation under money had and received theory, the "debt" for interest on the wrongfully detained money did *not* magically disappear simply because someone received their "principal" back. Indeed, New York's highest court has specifically held otherwise. *See, Board of Education of the Cold Spring Harbor Central School District v. Rettaliata,* 78 N.Y.2d 128, 572 N.Y.S.2d 885 (1991)[the *Cold Spring* case]. The court in *Bayou* made the same error, apparently because no one had briefed the money had and received issue to that court, thereby leaving it to rely solely on a 1928 case, rather than the Court of Appeals' superseding pronouncement in *Cold Spring* several decades later.

These points are not pertinent to whether "time" is a factor that affects "net equity", because "net equity" -- which concerns *customer claims* -- is a different concept from "debt" -- which affects the *scope of avoidance*. Because the Scheduling Order is limited to customer claims/net equity, the Court does not have to reach these points in the present context. They will, however, like other issues, eventually have to be addressed in the avoidance/debt context.

7. Given the Scheduling Order's limitation on current briefing, further discussion of these issues will have to wait for another day and another context. In fairness to the Court and other counsel, however, we wanted to make clear that, at this juncture, apples and oranges should not be mixed.

Dated:   New York, New York
         December 3, 2012

Respectfully submitted,

*s/ Robert J. Kaplan*
_____
ROBERT J. KAPLAN
*Attorney for MUUS Independence Fund LP and Michael W. Sonnenfeldt*
15 Maiden Lane
Suite 703
New York, NY 10038
(212) 964-0600
*lawkap@aol.com*