**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman
hchaitman@beckerny.com
45 Broadway
New York, New York 10006
Telephone (212) 599-3322
*Attorneys for the Customers*
*listed on Exhibit A to the December 3, 2012*
*declaration of Helen Davis Chaitman*

Hearing Date:  February 13, 2013 at 10 a.m.
Objection Deadline:  December 3, 2012

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br>Debtor. | |

---

## CUSTOMERS' OBJECTION TO TRUSTEE'S MOTION FOR AN ORDER DENYING TIME-BASED DAMAGES

---

On the brief:

    Helen Davis Chaitman, Esq.
    Julie Gorchkova, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .............................................................................................................................. 2

I.    SIPA INCORPORATES TIME-BASED DAMAGES BY REQUIRING SIPC TRUSTEES TO REPLACE STOLEN SECURITIES AT THEIR CURRENT MARKET VALUE ......................................................................................................................... 2

II.   THE TRUSTEE IS REQUIRED TO PAY INTEREST TO CUSTOMERS UNDER SIPA, THE FEDERAL SECURITIES LAWS, AND NEW YORK STATE LAW .......... 6

    A.    The 1934 Securities Exchange Act requires payment of 9% interest ........................... 7

    B.    The Securities Act of 1933 requires the payment of 9% interest ................................. 9

    C.    New York aw requires the payment of 9% interest ..................................................... 11

III.  THERE IS NO SUPPORT FOR THE TRUSTEE'S DENIAL OF INTEREST .............. 12

IV.  SIPA DOES NOT PROVIDE DIFFERENT RULES IN PONZI SCHEME CASES ...... 12

V.   COMPLYING WITH THE STATUTORY MANDATE THAT CUSTOMER CLAIMS BE ALLOWED WITH INTEREST IS NOT INCONSISTENT WITH FRAUDULENT TRANSFER LAW ....................................................................................................... 16

VI.  THE SECOND CIRCUIT'S NET EQUITY DECISION DID NOT DETERMINE THE PRESENT ISSUE ....................................................................................................... 17

CONCLUSION ......................................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alfano v. CIGNA Life Ins. Co. of New York*, 2009 WL 890626 (April 2, 2009) ............................9

*Barkley v. United Homes, LLC*, 848 F. Supp.2d 248 (E.D.N.Y. 2012) .........................................11

*Brown v. Stinson*, 821 F. Supp. 910 (S.D.N.Y. 1993) ..................................................................11

*Collier v. Granger*, 258 F. Supp. 717 (S.D.N.Y. 1966)................................................................11

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)....................................................................15

*Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480 (D.Conn. 2002)..........13, 16, 17

*Dicello v. Jenkins (In re Int'l Loan Network, Inc.)*, 160 B.R. 1 (Bankr. D.D.C. 1993)................17

*Donnell v. Kowell*, 533 F.3d 762 (9th Cir. 2008) .......................................................................17

*Focht v. Athens (In re Old Naples Secs., Inc.)*, 311 B.R. 607 (M.D. Fla. 2002) ..........................12

*In re Bernard L. Madoff Inv. Securities LLC*, 654 F.3d 229 (2011) .............................................18

*In re Bernard L. Madoff Securities LLC* (2d Cir. 2011) ................................................................6

*In re Crazy Eddie Securities Litigation,* 948 F. Supp. 1154 (E.D.N.Y. 1996) .....................8, 9, 11

*In re Lehman Bros. Inc.,* 474 B.R. 139 (Bankr. S.D.N.Y. 2012)....................................................3

*In re Livent, Inc.*, 360 F. Supp.2d 568 (S.D.N.Y. 2005)................................................................9

*In re New Times Sec. Servs., Inc.*, 463 F.3d 125 (2d Cir. 2006)....................................................18

*In re New Times Sec. Servs. Inc.*, Case No. 00-8178 (Bankr. E.D.N.Y.) (JBR)....................3, 4, 5

*Kaufman v. AllState New Jersey Ins. Co.*, 561 F.3d 144 (3d Cir. 2009)........................................15

*Kmart Corp. v. Cartier, Inc.,* 486 U.S. 281 (1988)......................................................................15

*Lustig v. Weisz & Assocs. Inc. (In re Unified Commercial Capital Inc.)*, 260 B.R. 343
(Bankr. W.D.N.Y. 2001).......................................................................................14, 15, 16

*Mallis v. Bankers Trust Co.*, 717 F.2d 683 (2d Cir. 1982) ..........................................................11

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabbit*, 547 U.S. 71 (2006) ...................................8

*Merrill v. Abbott (In re Independent Clearing House Co.)*
    77 B.R. 843 (D.Utah 1987) ........................................................................14, 15, 17

*Morgenthaler v. First Unum Life Ins. Co.*, 2006 WL 2463656 (S.D.N.Y. Aug. 22, 2006)..............9

*Myron v. Chicoine*, 678 F.2d 727 (7th Cir. 1982)....................................................6, 7, 8

*Procter & Gamble Distribution Co. v. Sherman*, 2 F.2d 165 (S.D.N.Y. 1924)..............................6

*Quintel Corp., N.V. v. Citibank, N.A.*, 606 F. Supp. 898 (S.D.N.Y. 1985)....................................11

*Rafoth v. Bailey (In re Baker & Getty Fin. Serv., Inc.)*, 88 B.R. 792 (Bankr. N.D.Ohio
    1988) ........................................................................................................17

*Ravis v. Day (In re Investors Sec. Corp.)*, 6 B.R. 420 (Bankr. W.D.Pa. 1980) ..............................7

*Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 637 F.2d 77 (2d Cir. 1980)..........................................8

*Sanders v. John Nuveen & Co.*, 524 F.2d 1064 (7th Cir. 1975) ..................................................6, 7

*Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995)........................................................................17

*SEC v. Ambassador Church Finance/Development Group, Inc. (In re Atkeison, Jr.)*, 446
    F. Supp. 844 (M.D.Tenn. 1977)............................................................................7

*SEC v. Drexel Burnham Lambert, Inc.*, 837 F. Supp. 587 (S.D.N.Y. 1993), *aff'd*, 16 F.3d
    520 (2d Cir. 1994)................................................................................................8

*SEC v. Moran*, 994 F. Supp. 286 (S.D.N.Y. 1996) ..................................................................8

*SEC v. Musella*, 748 F. Supp. 1028 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990) ............9

*SEC v. Tannenbaum*, 2007 WL 2089326 (E.D.N.Y. July 19, 2007) ..............................................8

*SEC v. Zandford*, 535 U.S. 813 (2002) ....................................................................................8

*Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412 (1975) ......................................18

*Securities Investor Protection Corp. v. C.J. Wright & Co., Inc. (In re C.J. Wright & Co.)*,
    162 B.R. 597 (Bankr. M.D.Fla. 1993) ..................................................................12

*Securities Investor Protection Corporation v. Ambassador Church Finance Development
    Group, Inc.*, 788 F.2d 1208, 1209-10 (6th Cir. 1986)..........................................12

*Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 84 F.3d 1286 (10th Cir. 1996)..............17

*Sheehan v. Met. Life Ins. Co.*, 2005 WL 1020874 ....................................................................9

*Sigefus v. Porter*, 179 U.S. 116 (1900) ..................................................................................7

*Von Gunten v. Neilson (In re Slatkin)*, 243 Fed. Appx. 255 (9th Cir. 2007) ................................17

STATUTES AND RULES

17 C.F.R. § 300.500 ................................................................................................................4

17 C.F.R. § 240.10b-5 .........................................................................................................7, 8

15 U.S.C. § 77l(a)(2) ............................................................................................................10

15 U.S.C. § 78bb(a)(2) ....................................................................................................11, 12

15 U.S.C. § 78bbb ..................................................................................................................7

15 U.S.C. § 78fff-1(b)(1) ..................................................................................................2, 6, 10

15 U.S.C. § 78fff-2(b)(2) ........................................................................................................2

15 U.S.C. § 78j(b) ..................................................................................................................7

CPLR § 5001.......................................................................................................................8, 11

CPLR § 5004.........................................................................................................................12

Securities Act of 1933...........................................................................................................9, 10

Securities Exchange Act of 1934 ............................................................................................7

Uniform Fraudulent Transfer Act ...........................................................................................13

OTHER AUTHORITIES

H.R. Rep. 95-746, 95th Cong., 1st Sess. (1977) ...................................................................4

*How SIPC Protects You,* SECURITIES INVESTOR PROTECTION CORPORATION, 3
(2011), http:// www. sipc. org/ pdf/ HSPY_ English_ 2011.pdf................................................2

Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html ............................................................5

**INTRODUCTION**

All of the customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") listed

on Exhibit A to the accompanying declaration of Helen Davis Chaitman (the "Customers") re-

spectfully submit this memorandum of law in opposition to the Trustee's motion (the "Motion")

for an order denying interest, time value of money, or inflation adjustments to Customers (the

"Time-Based Damages").

**PRELIMINARY STATEMENT**

Congress enacted the Securities Investor Protection Act ("SIPA") in 1970 in order to en-

hance investor protection.   The Securities Investor Protection Corporation ("SIPC") was formed,

pursuant to SIPA, to carry out the purposes of the statute.   Yet, somehow, by 2008, SIPC had

figured out a way to turn the Act on its head:   instead of functioning to protect investors, SIPC

has functioned to hurt them.

The Motion is a perfect example of this subversion of SIPC's statutory purpose:   before

SIPA was enacted, a defrauded customer was clearly entitled under the securities laws to pre-

judgment interest on his stolen money.   Yet, the Trustee and SIPC now argue, without the sup-

port of any provision of SIPA, that a customer is not entitled to interest.   Instead, the dishonest

broker and his successor – the SIPA trustee – are entitled to deny a customer any appreciation on

his investment, no matter how long ago he made that investment, all to enrich the brokerage in-

dustry whose members constitute SIPC.

It is not the function of the courts to subvert the plain language of SIPA in order to enrich

the brokerage industry at the expense of defrauded customers.   Our democratic system is based

upon the fundamental precept that the legislature writes the law and the courts enforce it.   There

is no basis in the law to deny Customers the prejudgment interest that Congress mandated they

receive.

**ARGUMENT**

I.   **SIPA INCORPORATES TIME-BASED DAMAGES BY REQUIRING SIPC
     TRUSTEES TO REPLACE STOLEN SECURITIES AT THEIR CURRENT
     MARKET VALUE**

Under SIPA's statutory scheme, Congress mandated that SIPC should protect a custom-

er's "legitimate expectations" based on his brokerage statements and replace securities even if

the broker stole the customer's money and never purchased the securities.   Thus, SIPA provides

that a SIPA trustee should promptly go into the market and replace any securities missing from a

customer's account at the time of the liquidation, regardless of the present price of those securi-

ties:

> [T]he trustee shall ---
>
> (1) deliver securities to or on behalf of customers to the maximum
> extent practicable in satisfaction of customer claims for securities
> of the same class and series of an issuer.

15 U.S.C. § 78fff-1(b)(1).

> [T]he court shall . . .
>
> (2) with respect to claims relating to, or net equities based upon,
> securities of a class and series of an issuer which are ascertainable
> from the books and records of the debtor or are otherwise estab-
> lished to the satisfaction of the trustee, authorize the trustee to de-
> liver securities of such class and series if and to the extent availa-
> ble to satisfy such claims in whole or in part, with partial deliveries
> to be made pro rata to the greatest extent considered practicable by
> the trustee.

15 U.S.C. § 78fff-2(b)(2).  *See also, How SIPC Protects You,* SECURITIES INVESTOR PRO-

TECTION CORPORATION, 3 (2011), http:// www. sipc. org/ pdf/ HSPY_ English_ 2011.pdf

(SIPC advertises that it "replaces missing stocks and other securities where it is possible to do so

… **even when investments have increased in value**.") (emphasis added); *see also In re Lehman Bros. Inc.,* 474 B.R. 139, 146 (Bankr. S.D.N.Y. 2012) ("One of the primary purposes of SIPA is to return securities entrusted by investors to a financially troubled broker-dealer.").

SIPC's president, Stephen Harbeck, confirmed this mandate in *In re New Times Sec. Servs. Inc.*, Case No. 00-8178 (Bankr. E.D.N.Y.) (JBR), a long-running Ponzi scheme case where the broker had never purchased the securities listed on the customers' statements. As Mr. Harbeck acknowledged, if customers are led to believe, as they were by BLMIS, that "real, exist-ing" securities had been purchased for their accounts but they had never been purchased, those customers are entitled to the full value of their securities positions as of the filing date – even if the securities tripled in value:

> MR. HARBECK: **Even if they're not there**.
>
> THE COURT: Even if they're not there.
>
> MR. HARBECK: Correct.
>
> THE COURT: **In other words, if the money was diverted, converted –**
>
> MR. HARBECK: And the **securities were never purchased.**
>
> THE COURT: Okay.
>
> MR. HARBECK: **And, if those positions triple, we will gladly give the people their securities positions.**

July 28, 2000 Tr. at 37-38, *In re New Times Sec. Servs. Inc.* (Bankr. E.D.N.Y. 2000) (emphasis added).

The mandate of compensation at current market value is clear from SIPA's legislative history. For example, Congressman Robert Eckhardt commented when SIPA was amended in 1978:

> One of the greatest shortcomings of the procedure under the 1970 Act, to be remedied by [the 1978 amendments] is the failure to meet legitimate customer expectations of receiving what was in their account at the time of their broker's insolvency.
>
> \*      \*      \*
>
> A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, never purchased, or even stolen, this is not always possible. Accordingly, [when this is not possible, **customers] will receive cash based on the market value as of the filing date.**

H.R. Rep. 95-746, 95th Cong., 1st Sess. (1977) at 21 (emphasis added).

SIPC's Series 500 Rules, 17 C.F.R. 300.500, enacted pursuant to SIPA, provide for the classification of claims in accordance with the "legitimate expectations" of a customer based upon the written transaction confirmations sent by the broker to the customer.

Until the BLMIS case, both SIPC and the Securities and Exchange Commission ("SEC") acknowledged that a customer who entrusted his money to an SEC-regulated broker who operated a Ponzi scheme is entitled to replacement securities up to $500,000, even where the broker never purchased the securities and even though the securities, on paper, might have tripled in value.

Consistent with Harbeck's representation to the bankruptcy court, in the Second Circuit both SIPC and the SEC assured the Court of Appeals in *New Times* that SIPC would replace securities in a customer's account so long as the customer's statements reflected the purchase of securities. SIPC wrote in its Second Circuit brief:

> [R]easonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transaction reality. Thus, for example, **where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and**

**the debtor instead converted the cash deposited by the claimant to fund that purchase** . . . [T]his emphasis on reasonable and legitimate claimant expectations frequently yields much greater 'customer' protection than would be the case if transaction reality, not claimant expectations, were controlling, as this Court's earlier opinion in this liquidation well illustrates.

Brief of Appellant SIPC, 2005 U.S. 2d Cir. Briefs LEXIS 259, at *35-36 (Dec. 30, 2005), *New Times II* (citing *New Times*)(emphasis added)

In an *amicus curiae* brief in the *New Times* case, the SEC wrote:

Our view [is] that when possible, SIPA should be interpreted consistently with a customer's legitimate expectations based on confirmations and account statements.

Br. of the SEC, Amicus Curiae, In Partial Support of the Position of Appellants and In Partial Support of the Position of Appellees at 13, *New Times I* (No. 02-6166).

As late as December 16, 2008 – five days **after** Madoff's confession, SIPC's general counsel, Josephine Wang, assured the public, through a statement to the press that a Madoff customer is entitled to the securities in his account:

Based on a conversation with the SIPC general counsel, Josephine Wang, if clients were presented statements and had reason to believe that the securities were in fact owned, the SIPC will be required to buy these securities in the open market to make the customer whole up to $500K each.  So if Madoff client number 1234 was given a statement showing they owned 1000 GOOG shares, even if a transaction never took place, the SIPC has to buy and replace the 1000 GOOG shares.

December 16, 2008 Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html.

While we recognize that, in affirming this Court's ruling, the Second Circuit held that the Trustee had the discretion, under the facts he alleged in the BLMIS case (which to this day have not been proven), to allow claims only for a Customer's net investment, that decision expressly did not determine a Customer's entitlement to Time-Based Damages.  In fact, the following colloquy occurred at the oral argument in the Second Circuit between counsel for the SEC and Judge Leval:

{N0022002 }                                    5

MR. CONLEY:  There is a separate issue, a distinct issue, which relates to whether the net equity claims should be valued in constant dollars, which is a position that the Commission took, does take; however, the Bankruptcy Court decided in a scheduling order to set that aside and to consider that only after this initial determination is made. And so returning to the statute, in our view the Bankruptcy Court correctly rejected two arguments –

JUDGE LEVAL: So that issue of the constant dollars or the inflation-adjusted dollars is not before us now?

MR. CONLEY: It's not, Your Honor.

March 3, 2011 Tr. at 63:12-25, *In re Bernard L. Madoff Securities LLC* (2d Cir. 2011).

As set forth below, the award of Time-Based Damages to Customers is compelled by SIPA, the federal securities laws, and New York state law.

## II.     THE TRUSTEE IS REQUIRED TO PAY INTEREST TO CUSTOMERS UNDER SIPA, THE FEDERAL SECURITIES LAWS, AND NEW YORK STATE LAW

The Trustee's position that a dollar invested in 1960, when BLMIS started to accept customer funds, is equal to a dollar withdrawn in 2008 is unsustainable.  "[I]n modern financial communities a dollar today is worth more than a dollar next year, and to ignore the interval as immaterial is to contradict well-settled beliefs about value." *Procter & Gamble Distribution Co. v. Sherman*, 2 F.2d 165, 166 (S.D.N.Y. 1924) (Hand J); *see also Myron v. Chicoine*, 678 F.2d 727, 734 (7th Cir. 1982) ("'[U]nless the plaintiff is paid interest for the entire time that he is deprived of the use of his money, he will not receive full compensation.'") (quoting *Sanders v. John Nuveen & Co.*, 524 F.2d 1064, 1075 (7th Cir. 1975)).

Although the SIPA definition of "net equity" does not explicitly mention Time-Based Damages, there is a very good reason for that:  The SIPA statutory scheme mandates that customers' securities will be replaced at the current market value.  *See* 15 U.S.C. § 78fff-1(b)(1). Hence, there was no reason for Congress to incorporate Time-Based Damages; they were unnecessary because Congress mandated that customer securities be replaced at their current market

value, regardless of how much the securities had appreciated over the time of the customer's in-
vestment. It is fundamental that people invest in the securities markets in order to see their sav-
ings appreciate. In *Myron v. Chicoine*, the Seventh Circuit noted that, by entering into a securi-
ties transaction, "the investor has manifested his intention to utilize the funds for the production
of income." 678 F.2d at 733-34. Thus, "'unless the plaintiff is paid interest for the entire time
that he is deprived of the use of his money, he will not receive full compensation.'" *Id.* at 734
(quoting *Sanders*, 524 F.2d at 1075); *see generally*, D. Dobbs, Remedies s 3.5 (1973); *Sigefus v.
Porter*, 179 U.S. 116, 118-20 (1900).

It is only because the Trustee has taken a previously unprecedented position in allowing
claims only for a customer's net investment that the necessity of recognizing Time-Based Dam-
ages becomes apparent. If Time-Based Damages are denied, then the entire SIPA statutory
scheme is nullified, customers' legitimate expectations are destroyed, and the Customers are de-
prived of entitlements they had before SIPA's enactment.

A.      **The 1934 Securities Exchange Act requires payment of 9% interest**

SIPA provides that "the provisions of the Securities Exchange Act of 1934 [(the "1934
Act")] . . . apply as if this chapter constituted an amendment to, and was included as a section of,
such Act." 15 U.S.C. § 78bbb; *see also SEC v. Ambassador Church Finance/Development
Group, Inc. (In re Atkeison, Jr.)*, 446 F. Supp. 844, 848 (M.D.Tenn. 1977) (definition of "securi-
ty" in the 1934 Act was controlling under SIPA by virtue of § 78bbb); *Ravis v. Day (In re Inves-
tors Sec. Corp.)*, 6 B.R. 420, 424 (Bankr. W.D.Pa. 1980) (same).

A claim under section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17
C.F.R. § 240.10b-5 promulgated thereunder, exists when a broker receives payment in connec-
tion with the purchase of securities but does not purchase any securities. *See Merrill Lynch,
Pierce, Fenner & Smith Inc. v. Dabbit*, 547 U.S. 71, 85 n.10 (2006) (quoting *SEC v. Zandford*,

535 U.S. 813, 819 (2002))("'[A] broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds, violates § 10b and Rule 10b-5.'").

Thus, each Customer has a 10b-5 claim under the 1934 Act.  And each Customer cannot be fully compensated without an award of prejudgment interest.  *See Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 637 F.2d 77, 87 (2d Cir. 1980) (damage award without interest would not fully compensate plaintiff); *In re Crazy Eddie Securities Litigation,* 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) (award of prejudgment is necessary to compensate party for the loss of the use of money); *Myron*, 678 F.2d at 733-734; *SEC v. Drexel Burnham Lambert, Inc.*, 837 F. Supp. 587, 609, 612 (S.D.N.Y. 1993), *aff'd*, 16 F.3d 520 (2d Cir. 1994) (awarding prejudgment interest where defendants participated in a "blatant scheme to defraud" in violation of Rule 10b-5); *SEC v. Tannenbaum*, 2007 WL 2089326, *5 (E.D.N.Y. July 19, 2007) (quoting *SEC v. Moran*, 994 F. Supp. 286, 295 (S.D.N.Y. 1996) ("'Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity.'")).  Therefore, an award of interest is critical in this case to compensate Customers for the loss of the use of their money, in many cases, over decades.

The Trustee argues that, even if prejudgment interest is appropriate, the Court should not use the 9% rate set forth in New York's CPLR § 5001 because the 9% rate is not applicable to federal securities law claims, only to state claims.  (Tr. Br. at 18, n. 8 and 9.)  One could fairly ask, then, why the Trustee has sought 9% interest pursuant to CPLR § 5001 in all of the avoidance actions he has brought against innocent Customers.  Surely, if innocent Customers are liable, in the Trustee's view, for 9% interest on money they withdrew, the Trustee, who stands in

the shoes of BLMIS, should willingly credit Customers with 9% interest on their net invest-ments.

Moreover, the Trustee ignores the fact that courts in this Circuit have looked to state law to determine the appropriate prejudgment interest rate. *See In re Crazy Eddie Securities Litigation*, 948 F. Supp. at 1167 ("[F]ederal courts have ordinarily looked to state law in determining the appropriate interest rate."); *SEC v. Musella*, 748 F. Supp. 1028, 1032 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990) (holding that New York district court "may use the rate of interest used to calculate prejudgment interest under New York law in calculating prejudgment interest in federal securities law cases."); *In re Livent, Inc.*, 360 F. Supp.2d 568, 572 (S.D.N.Y. 2005) (awarding prejudgment interest at the rate of 9% for full compensation); *Alfano v. CIGNA Life Ins. Co. of New York*, 2009 WL 890626, *7 (April 2, 2009) (collecting cases in which courts have awarded prejudgment interest at the rate of 9%); *Morgenthaler v. First Unum Life Ins. Co.*, 2006 WL 2463656, *4 (S.D.N.Y. Aug. 22, 2006); *Sheehan v. Met. Life Ins. Co.*, 2005 WL 1020874, at **2-3 (S.D.N.Y. April 29, 2005).

While the Trustee may feel that 9% is too high, his remedy lies in Congress or in the New York legislature. We live in a democracy, pursuant to which representatives are elected by the people; they pass the laws; and the court's enforce them.

## B.    The Securities Act of 1933 requires the payment of 9% interest

An award of interest to a defrauded securities customer is also an explicit remedy under the Securities Act of 1933 (the "1933 Act") which provides that a victim of securities fraud may recover from the person who sold the security the "consideration paid for such security **with interest thereon**, less the amount of any income received thereon. . . ." 15 U.S.C. § 77l(a)(2) (emphasis added.)

The Trustee argues that Congress did not intend for Customers to receive Time-Based Damages on their net equity claims because "although Congress explicitly provided for interest and inflation-based adjustments in other parts of SIPA, it failed to do so in the net equity definition." (Tr. Br. at 10.)  The Trustee overlooks the fact that SIPA expressly requires SIPC to replace missing securities at their current market value (*see* 15 U.S.C. § 78fff-1(b)(1)), implicitly incorporating a time-based damages concept.  It is the Trustee and SIPC, for the first time in SIPA's history, who have departed from SIPC's traditional acknowledgment that customers are entitled to the fulfillment of their legitimate expectations and, instead, are entitled only to a claim for their net investment.

But, having abandoned the mandate of SIPA, the Trustee cannot escape the provisions of the securities laws that SIPA expressly incorporates.  Interest is explicitly required for victims of securities fraud in the 1933 Act (*see* 15 U.S.C. § 77*l*(a)(2)) and has  regularly been awarded for securities fraud claims under the 1934 Act (*see* Part II.A *supra*).

SIPC, by citing to various statutes that are not part of the federal securities laws, further argues that where Congress intends for a constant dollars recalculation, it expressly states so. (SIPC Br. 10-12.)  This argument, however, ignores the fact that Congress mandated that customers' securities be replaced at their current market value – a mandate that SIPC honored from 1970 – 2008.  SIPC also ignores the fact that Congress explicitly incorporated the 1933 Act which requires that interest be paid to a defrauded customer.  *See* 15 U.S.C. § 77*l*(a)(2).  Additionally, courts have consistently awarded interest in securities fraud cases under section 10(b) of the 1934 Act.

 For the first time in SIPA's history, SIPC has been permitted to ignore customers' legitimate expectations and allow their claims only for their net investment, often over decades.  To

allow SIPC to go even further, and deprive Customers of Time-Based Damages will abrogate entirely the purposes of SIPA to enhance the protection of securities customers. Indeed, the statute will deprive them of rights guaranteed by the securities laws.

**C.** **New York aw requires the payment of 9% interest**

The 1934 Act, which is incorporated into SIPA, contains a "Rule of Construction" that explicitly preserves state law rights and remedies. *See* 15 U.S.C. § 78bb(a)(2) ("The rights and remedies provided by this chapter shall be <u>in addition</u> to any and all other rights and remedies that may exist at law or in equity."). This provision makes absolutely clear that Congress intended to enhance investor protection by enacting SIPA, not diminish it, as SIPC has sought to do.

NY CPLR § 5001 provides that interest is mandatory for certain types of claims, including damages arising out of "an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." Courts have consistently held that claims for fraud, including securities fraud, are actions that fall within the scope of the "possession of enjoyment of property" clauses of § 5001 and that prejudgment interest must be awarded on these claims. *See Mallis v. Bankers Trust Co.*, 717 F.2d 683, 695 (2d Cir. 1982) (interest awarded as a matter of right in securities fraud case pursuant to CPLR § 5001); *Collier v. Granger*, 258 F. Supp. 717, 718 (S.D.N.Y. 1966) (same); *Barkley v. United Homes, LLC*, 848 F. Supp.2d 248, 269 (E.D.N.Y. 2012) (quoting *In re Crazy Eddie Securities Litigation*, 948 F. Supp. at 1166) ("Under New York law, awarding prejudgment interest on damages awarded for fraud is mandatory."); *Brown v. Stinson*, 821 F. Supp. 910, 916 (S.D.N.Y. 1993) (interest awarded in fraud case pursuant to CPLR §5001); *Quintel Corp., N.V. v. Citibank, N.A.*, 606 F. Supp. 898, 913 (S.D.N.Y. 1985) (same). Pursuant to CPLR § 5004, the default rate of prejudgment interest is 9%. *See* § NY CPLR § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute.") Therefore, Customers are entitled to an award of interest at 9%.

{N0022002 }                                    11

### III.    THERE IS NO SUPPORT FOR THE TRUSTEE'S DENIAL OF INTEREST

Citing only three cases, the Trustee argues that courts that have denied interest to cus-
tomers under SIPA.  None of these cases supports the Trustee's position here.  In *Securities In-*
*vestor Protection Corporation v. Ambassador Church Finance Development Group, Inc.*, the
Sixth Circuit considered whether customers are entitled to interest on their claims from the date
of the SIPA liquidation to the date of payment because SIPC unjustifiably delayed seven and
one-half years before paying the claims.  788 F.2d 1208, 1209-10 (6th Cir. 1986).  The Sixth
Circuit held that SIPA did not provide for **postpetition** interest unless a surplus exists.  *Id.* at
1210-11.  The case has nothing to do with the issue here:  whether customers are entitled to
**prepetition** interest for the decades that BLMIS had the use of their money.

In *Focht v. Athens (In re Old Naples Secs., Inc.)*, 311 B.R. 607 (M.D. Fla. 2002), and  *Se-*
*curities Investor Protection Corp. v. C.J. Wright & Co., Inc. (In re C.J. Wright & Co.)*, 162 B.R.
597 (Bankr. M.D.Fla. 1993), the issue raised here was not presented to or considered by the
courts.  Nor did the courts consider the requirement of prejudgment interest under the federal se-
curities laws or New York state law.  *See* 15 U.S.C. § 78bb(a)(2).  Thus, these cases do not sup-
port the Trustee's position here.

### IV.    SIPA DOES NOT PROVIDE DIFFERENT RULES IN PONZI SCHEME CASES

The Trustee asks this Court to read into SIPA a provision that is totally absent from the
statutory scheme: that in Ponzi scheme cases, securities customers are not entitled to interest.
(Tr. Br. at 21.)  But where Congress has specifically provided for the payment of interest, neither
the Trustee, nor SIPC, nor this Court, has the power to ignore that mandate.  Charles Ponzi was
certainly well–known to members of Congress in 1970; and the frequent incidence of Ponzi
scheme liquidations under SIPA up until 2008 was also well-known to Congress from 1970 -
2008.  Surely, if Congress had intended for victims of Ponzi schemes not to have the full protec-

tion of SIPA, Congress could have easily amended the statute to so state. Yet, the statute was never amended as the Trustee would like this Court to amend it. It is the function of Congress, not the courts, to re-write statutes. *See Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 491-92 (D.Conn. 2002) (holding that to read into plain language of a statute an exception is to usurp the function of the legislature).

Several courts have recognized that they lack the power to "legislate" a Ponzi scheme exception. For example, in *In re Carrozzella & Richardson*, the court rejected the trustee's attempt to create a *per se* exception for Ponzi schemes. There, the issue was whether the Ponzi schemer received reasonably equivalent value in exchange for interest payments made to defendants. 286 B.R. at 486. The bankruptcy court held that the trustee was not entitled to recover interest payments from the defendants. *Id.* at 482. The trustee argued that the bankruptcy court ignored "a body of case-law developed in Ponzi scheme cases which holds that the so-called 'investment contract' is illegal and unenforceable to the extent that it purports to provide a return in excess of the deposit." *Id.* at 486. The district court agreed with the bankruptcy court that "there is nothing in the plain language of either the Bankruptcy Code or Connecticut's Uniform Fraudulent Transfer Act suggesting an illegality exception to the 'reasonably equivalent value' requirement." *Id.* at 491. The district court explained that "[t]o create what is perceived by some to be an 'equitable' exception to the plain language of the statute is to usurp the function of the legislature." *Id*

Similarly in *Lustig v. Weisz & Assocs. Inc. (In re Unified Commercial Capital Inc.)*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001)("*Unified Commercial*"), the court held that payment of interest to an innocent investor in accordance with a contractual obligation is satisfaction of an antecedent debt and cannot be voided by the trustee. There, the trustee brought adversary pro-

ceedings against investors in a Ponzi scheme seeking to void interest payments made by the

debtor.  The trustee acknowledged that the debtor had a contractual obligation to pay interest (*id.*

at 348), but, relying on *Merrill v. Abbott (In re Independent Clearing House Co.)*("*Clearing

House")*, 77 B.R. 843 (D.Utah 1987), he argued that, because the debtor was engaged in a Ponzi

scheme, permitting defendants to keep the interest is contrary to public policy because the de-

fendants would be unjustly enriched at the expense of other investors, some of whom did not

even receive a return of their principal investment.  *Id.*

    The argument is identical to the Trustee's argument here.  The court rightly criticized

*Clearing House*, finding that it permitted the trustee to effectuate a reallocation of the debtor's

assets – a matter that is left to Congress:

> By forcing the square peg facts of a "Ponzi" scheme into the round
> holes of the fraudulent conveyance statutes in order to accomplish
> a further reallocation and redistribution to implement a policy of
> equality of distribution in the name of equity, I believe that many
> courts have done a substantial injustice to those statutes and have
> made policy decisions that should be made by Congress.
>
> **If the law is to be that it is against public policy for an innocent
> investor victim of a "Ponzi" scheme to enforce the contractual
> obligation of the bankrupt schemer to pay reasonable interest
> for the use (loan) of funds, I believe that law should be enacted
> by Congress, not by the courts.**
>
> Furthermore, if the use (loan) of funds for a period of time is not to
> be considered value or fair consideration to support the payment of
> reasonable contractual interest simply because the bankrupt entity
> receiving the use (loan) of the funds was engaged in a "Ponzi"
> scheme, I believe that Congress should specify that in the Bank-
> ruptcy Code, rather than for the courts to continue to ignore what is
> clearly value and fair consideration under the applicable fraudulent
> conveyance statutes.

*Id.* (emphasis added).

    The *Unified Commercial* court further rejected the trustee's argument, which is identical

to the argument asserted here, "that it is more 'just' to require that an innocent investor victim

who received reasonable contractual interest return it so that it can be redistributed among the

investors who did not recover all of their principal[:]"

> I do not believe that partial solution is more 'fair' or 'just' than al-
> lowing that victim to keep the interest. Furthermore, I believe that
> the majority of the general public would agree that allowing those
> victims to keep their interest is as fair or even a more fair solution.
> All of the investors took a series of risks when they loaned sub-
> stantial sums to [the debtor], including that they might not be re-
> paid any of their principal, only a portion of their principal or their
> principal and none or not all of their contractual interest. However,
> each investor expected to be repaid their principal plus contractual
> interest. The risks also included the possibility that [the debtor]
> might be engaged in a fraudulent scheme or even a "Ponzi"
> scheme. I believe that even the other innocent investor victims who
> did not recover any or all of their principal, if they were able to put
> aside their own self interest, would not find it unfair or unjust that
> other innocent investor victims received the very benefits for
> which all of the investors bargained and contracted, which was to
> be repaid their principal together with contractual interest.

*Id.* at 351.

SIPA does not permit a trustee to ignore the securities laws; in fact, they are expressly in-

corporated into the statute.  Nor does SIPA allow this Court to ignore the statute.  *See Kmart*

*Corp. v. Cartier, Inc.,* 486 U.S. 281, 281 (1988) ("[i]f the statute is clear and unambiguous,

courts must give effect to Congress' unambiguously expressed intent"); *accord Kaufman v. All-*

*State New Jersey Ins. Co.*, 561 F.3d 144 (3d Cir. 2009) (quoting *Conn. Nat'l Bank v. Germain*,

503 U.S. 249, 253-54 (1992)) ("'In interpreting a statute, the Court looks first to the statute's

plain meaning and, if the statutory language is clear and unambiguous, the inquiry comes to an

end.'").  Obviously, the Trustee and SIPC don't want to pay interest to Customers because they

want to enrich SIPC's members at the expense of the Customers.  Their selfish interests, howev-

er, are not grounds for this Court to ignore the law.

V.    **COMPLYING WITH THE STATUTORY MANDATE THAT CUSTOMER CLAIMS BE ALLOWED WITH INTEREST IS NOT INCONSISTENT WITH FRAUDULENT TRANSFER LAW**

The Trustee argues that an award of Time-Based Damages would conflict with his avoidance powers that permit him to claw back all transfers in excess of the principal investment. First, of course, the Trustee's right to claw back all transfers in excess of net investments has not been determined by the courts and is vigorously contested. Second, the Trustee is suing innocent Customers to claw back not only the money they innocently withdrew from their accounts but also 9% interest on that money. Thus, he has embraced the proverbial "heads I win, tails you lose" philosophy in order to enrich the brokerage industry at the expense of defrauded customers. This is hardly consistent with the intention of Congress in enacting an investor protection statute.

Third, the Trustee disregards cases recognizing that a lender to a fraudulent business provides value in exchange for the interest paid on a loan. For instance, in *In re Unified Commercial Capital Inc.*, the court dismissed the trustee's constructive fraudulent transfer claims to recover interest payments, holding as a matter of law, that a fraudulent enterprises receives "value" when it discharges its obligation to pay "reasonable contractual interest." 260 B.R. at 353. The court acknowledged "the universally accepted fundamental commercial principal that, when you loan an entity money for a period of time in good faith, you have given value and are entitled to a reasonable return." *Id.* at 351 (footnote omitted). Similarly, in *In re Carrozzella & Richardson*, the court rejected the trustee's claim to recover interest payments and held that the interest payments were not avoidable under the Bankruptcy Code or New York law because the payment of interest satisfied a debt owed to the defendants. 286 B.R. at 486.

The Trustee argues that he is entitled to recover all transfers made to a customer in excess of the customer's principal payments. (Tr. Br. at 22.) But some of the cases relied on by the Trustee are inapposite because they involve the issue of whether investors are entitled to keep

their fictitious profits, not whether a customer is entitled to Time-Based Damages from the time

of investment. *See Scholes v. Lehmann*, 56 F.3d 750, 757-758 (7th Cir. 1995) (discussing effects

of allowing defendant "to retain his profit"); *Donnell v. Kowell*, 533 F.3d 762, 766 (9th Cir.

2008) (defendant "challenges a judgment requiring him, as an innocent investor, to disgorge his

profits. . . .").

Here, the issue is whether Customers are entitled to appreciation on their investments.

This issue was not even before the courts in the cases relied on by the Trustee.

The Trustee relies on a number of cases which followed *In re Independent Clearing

House Co.*, where the court created an "equity" exception in Ponzi schemes that is not statutorily

based. *See Von Gunten v. Neilson (In re Slatkin)*, 243 Fed. Appx. 255, 259 (9th Cir. 2007),

*Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 84 F.3d 1286, 1290 (10th Cir. 1996), *Di-

cello v. Jenkins (In re Int'l Loan Network, Inc.)*, 160 B.R. 1, 16 (Bankr. D.D.C. 1993), *Rafoth v.

Bailey (In re Baker & Getty Fin. Serv., Inc.)*, 88 B.R. 792, 795-96 (Bankr. N.D.Ohio 1988).

Where Congress has established a complete statutory scheme, courts lack the power to create

such exceptions.

## VI.    THE SECOND CIRCUIT'S NET EQUITY DECISION DID NOT DETERMINE THE PRESENT ISSUE

The Trustee's reliance on the Second Circuit's net equity decision is misplaced; nothing

in that decision permits the Trustee to ignore Customers' entitlement to 9% interest.  As Judge

Leval clarified at the oral argument, that issue was expressly not before the Court.  Moreover, the

Second Circuit held that the Trustee had discretion to utilize the net investment method under the

"extraordinary facts of this case" **as represented by the Trustee, but not proven to this day**.

*In re Bernard L. Madoff  Inv. Securities LLC*, 654 F.3d 229, 238 (2011).  We note, on this point,

that despite the Trustee's representation to the Second Circuit that no securities had been pur-

chased for Customers, in the minimal discovery we have succeeded in obtaining from the Trustee to date concerning a single Customer, we have found documents proving that, in fact, **BLMIS did purchase securities for that customer**. A copy of a trade ticket confirming BLMIS' purchase of treasury bills for one customer is attached to the December 3, 2012 declaration of Helen Davis Chaitman as **<u>Exhibit B</u>**.

Where the Second Circuit specifically clarified that the issue of Time-Based Damages was not before them, it is absurd for the Trustee to suggest that the Second Circuit's decision somehow implicitly abrogated the Customers' entitlement to Time-Based Damages. This is particularly so because such an action would frustrate SIPA's primary goal of enhancing protection for customers of a failed broker. *See Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 415 (1975) (recognizing that one of the primary goals of SIPA is to protect investors); *accord In re New Times Sec. Servs., Inc.*, 463 F.3d 125, 127 (2d Cir. 2006) ("The principal purpose of SIPA is to protect investors against financial losses arising from the insolvency of their brokers.") If customers of a failed broker are not entitled to interest on their investment, SIPA in fact decreases, not increases, the relief that would otherwise be available under federal securities laws. Clearly, such a position undermines the principal purpose of SIPA and cannot be accepted.

**CONCLUSION**

For the foregoing reasons, the Court should order the Trustee to allow 9% interest to all

Customers.

December 3, 2012

BECKER & POLIAKOFF LLP

By:   */s/ Helen Davis Chaitman*
45 Broadway
New York, NY 10006
(212) 599-3322
hchaitman@beckerny.com

*Attorneys for the Customers listed on Exhibit A to the December 3, 2012 declaration of Helen Davis Chaitman*

**CERTIFICATE OF SERVICE**

      I, Chelsey Davis, hereby certify that I caused a true and correct copy of the foregoing documents to be served upon the parties in this action who receive electronic service through CM/ECF.  I certify under penalty of perjury that the foregoing is true and correct.

Dated: December 3, 2012

                                                */s/ Chelsey Davis*