**K&L | GATES**

K&L Gates LLP
1601 K Street NW
Washington, DC  20006-1600

T  202.778.9000          www.klgates.com

Richard A Kirby
D  202.661.3730
F  202.778.9100
richard.kirby@klgates.com

December 7, 2012

**VIA ECF AND HAND DELIVERY**

Hon. Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, NY  10004

Re:     Motion to Intervene in the Contested Matter of the Trustee's Motion for an Order
        Rejecting an Inflation Adjustment to the Trustee's Calculations of "Net Equity" in
        *Securities Inv. Protection Corp. v. Bernard L. Madoff Inv. Securities LLC, (In re
        Bernard L. Madoff),* No. 08-1789.

Dear Judge Lifland:

        We submit this letter at the Court's request to provide background on our clients'
rights to intervene in the above-entitled contested matter and to request that the Court set a
briefing schedule for the proposed Motion to Intervene.  (For the Court's convenience, the
proposed Memorandum of Law in Support of the Motion that our clients would file is
enclosed herewith.)  We anticipate that numerous similarly situated persons would join in
this intervention motion.

        This dispute arises from the Trustee's pending Motion for an Order Rejecting an
Inflation Adjustment to the Trustee's Calculations of "Net Equity" ("Trustee's Motion"),
which is set before the Court for a hearing on February 13, 2013.  The Trustee has sought to
limit the potential objectors to that Motion to those persons who filed customer claims in the
SIPA proceeding and who then subsequently filed objections to the Trustee's calculation
methodology for their claims.  Our clients are defendants in pending adversary proceedings
commenced by the Trustee to avoid and recover transfers from Madoff Securities.  They
comprise two categories of Madoff customers with significant economic interests in the

K&L|GATES

Judge Burton R. Lifland
December 7, 2012
Page 2

outcome of the Trustee's motion who are not currently authorized participants in the briefing before the Court:

> (1)      persons who filed customer claims in the SIPA proceeding, but who did not file formal objections to the Trustee's claim determination or who filed customer claims but who do not appear on exhibits annexed to the Cheema declaration submitted in connection with the Trustee's brief, yet who the Trustee has stated in claim determination letters will be bound by the outcome of this Motion (the "Claimant-Intervenors"); and

> (2)      persons who did not file customer claims in the SIPA proceeding but whose potential liability in the related avoidance actions filed by the Trustee in this case is a function of the Trustee's net equity computation and, thus, as a practical matter will be directly affected by this Court's decision on the Trustee's Motion (the "Clawback-Intervenors").

As more fully described in the enclosed Memorandum, both groups of Intervenors satisfy the criteria for intervention and should be heard by the Court.

Bankruptcy Rules 2018(a) and 7024[1] anticipate that persons having an economic or similar interest in a contested matter may intervene to protect their interests. The Trustee has stated that he views the Claimant-Intervenors' request for intervention as unnecessary. Yet, the Trustee is estopped by his own conduct and statements from contesting that the Claimant-Intervenors' pecuniary interests are directly affected by the Motion, as detailed in the enclosed Memorandum. Despite discussion, however, the Trustee has to date refused to agree that Claimant-Intervenors may participate, thus necessitating the requested motion to intervene.

The Trustee has also indicated that he opposes the right of the Clawback-Intervenors to intervene, again necessitating motion practice. Each of the Clawback-Intervenors is a defendant in an avoidance action where the Trustee seeks to recover allegedly fraudulent transfers that Madoff Securities made to the Clawback-Intervenor. They have a demonstrable financial stake in the outcome of these proceedings and should be heard.

The Trustee's position that the Clawback-Intervenors do not have a substantial interest in the pending Motion is contrary to the position he has taken both before this Court

---

[1]  Local Rule 9014-1 states that Fed. R. Civ. P. 24, as incorporated in Bankruptcy Rule 7024, "shall apply in contested matters."

K&L|GATES

Judge Burton R. Lifland
December 7, 2012
Page 3

and before the District Court.  In the litigation over the Clawback-Intervenors' value defenses now pending before the District Court, the Trustee insists that each good faith defendant is only entitled to retain as "value" the amount of his customer "net equity," as defined under SIPA.  Indeed, in common briefing before District Judge Rakoff in July 2012, the Trustee asserted:  "In a SIPA liquidation such as this, 'value' is inextricably tied to the calculation of Defendants' net equity...."[2]  Thus, the Trustee's position has been that the determination of SIPA "net equity" is determinative of, and identical to, the amount any Clawback-Intervenor can assert as a "value" defense in the Trustee's fraudulent transfer suits.  The Trustee's statement to this Court that if an adjustment for inflation were made to "net equity" calculations "the amount the Trustee would otherwise be able to recover [in the avoidance actions] would be subject to risk of reduction" is similar, and wholly inconsistent with his position that the Clawback-Intervenors lack standing to be heard here.  Trustee's Br. at 27.

The Trustee's contention that value under the fraudulent transfer statutes is limited to the calculation of "net equity" under SIPA is erroneous.  But the Clawback-Intervenors have real and significant pecuniary interests in the outcome of the Trustee's Motion.  Whatever the Court rules here regarding an inflationary adjustment to "net equity" may, as the Trustee has acknowledged, directly affect the amount of any Clawback-Intervenor's "value" defense.  The Clawback-Intervenors thus have a direct economic stake in the manner in which the Court directs the Trustee to compute customer claims, and a compelling statutory and Constitutional due process right to be heard and intervene in this contested proceeding.  If individual defendants are denied standing to be heard in this matter now, they will necessarily be forced to litigate the issue in multiple individual proceedings.  Thus, intervention promotes both efficiency and judicial economy, and is in the interest of all parties.

Our clients seek, through intervention, the opportunity to participate in the current proceedings and, if the Court grants the objecting Customers' request for an order directing the Trustee to adjust the net equity determination for inflation, on the question of the assumptions and adjustment protocols to implement that order.  *See* Dkt # 5133, Customer Opp. Br. at 27.  For all these reasons, and those set out in the enclosed Memorandum, we therefore respectfully request the Court's permission to file a motion to intervene to protect their interests and fix a schedule for a hearing thereon.

---

[2]  Trustee Mem. in Opp. to Consolidated Mem. of Law in Support of Mot. to Dismiss Regarding Antecedent Debt Issues, Civ. Case No. 11-03605 (JSR), Dkt. #252 (July 25, 2012) at 6.

K&L|GATES

Judge Burton R. Lifland
December 7, 2012
Page 4

Respectfully submitted,

K&L GATES LLP

By:___/s/ *Richard A. Kirby*_____

        Richard A. Kirby

cc:     David Sheehan (VIA ECF)
        Jorian Rose (VIA ECF)
        Josephine Wang (VIA ECF)
        Kevin Bell (VIA ECF)
        Christopher LaRosa (VIA ECF)

Enclosure

K&L|GATES

**PROPOSED DRAFT**
**Related to the Contested Motion for Order Rejecting Inflation Adjustment**
**Set for Hearing on February 13, 2013 at 10:00 a.m.**

Richard A. Kirby
Laura K. Clinton
Catherine A. LaRose
K&L GATES LLP
1601 K Street
Washington D.C. 20006
(202) 778-9000 (Telephone)
(202) 778-9100 (Facsimile)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE IN THE
CONTESTED MATTER OF THE TRUSTEE'S MOTION FOR AN ORDER
REJECTING AN INFLATION ADJUSTMENT TO THE TRUSTEE'S CALCULATIONS
OF NET EQUITY**

**PROPOSED DRAFT**

Movants seek leave to intervene, pursuant to Rule 2018(a) of the Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules"), in the contested matter raised by the pending Motion for an Order Affirming Trustee's Calculations of Net Equity and Denying Time-Based Damages ("Trustee's Motion").  The Trustee's Motion is set for hearing before this Court on February 13, 2013.  Movants seek intervention for the limited purpose of being heard before this Court and in any subsequent related proceeding on the issues raised in the Trustee's Motion regarding whether his net equity determinations must be adjusted for inflation or constant dollars.

## PRELIMINARY STATEMENT

The Trustee's Motion seeks improperly to limit the participants in the briefing to those persons who filed customer claims in the SIPA proceeding and who then subsequently filed objections to the Trustee's calculation methodology for their claims.[1]  The Court's September 5, 2012 scheduling order on the Trustee's Motion ("Scheduling Order") also suggests that the objecting parties should be limited to the class of "claimants" delimited by the Trustee.  Scheduling Order, Dkt. #5022.  Movants are persons who will be equally affected by the Court's ruling but who are not listed among the objecting parties listed in the addenda to the Scheduling Order or the Trustee's Motion.  Bankruptcy Rule 2018(a) anticipates that persons like Movants, having an economic or similar interest in a contested matter, may intervene to protect their interests.  Because the Court's ruling on the Trustee's Motion may adjudicate as a practical matter Movants' rights, but Movants may not otherwise have an opportunity to be heard under the Court's Scheduling Order, they bring this motion.

---

[1]   *See* Trustee's Motion for Order Scheduling Hearing on Trustee's Motion Affirming Denial of Time-Based Damages Adjustment to Customer Claims, Dkt. #4920.

**PROPOSED DRAFT**

Movants are all defendants in pending adversary proceedings commenced by the Trustee

to avoid and recover transfers from Madoff Securities.  They include two distinct classes of

persons whose pecuniary interests will be directly affected by the outcome of the Trustee's

motion:

(1)    persons who filed customer claims in the SIPA proceeding, but who did not file
       formal objections to the Trustee's claim determination or who filed customer
       claims but who do not appear on exhibits to the Cheema declaration submitted in
       connection with the Trustee's brief, yet who the Trustee has stated will be bound
       by the outcome of this Motion (the "Claimant-Intervenors"); and

(2)    persons who did not file customer claims in the SIPA proceeding but whose
       potential liability in the related avoidance actions filed by the Trustee in this case
       is a function of the Trustee's net equity computation and, thus, as a practical
       matter will be directly affected by this Court's decision on the Trustee's Motion
       (the "Clawback-Intervenors").

Both groups of Movants satisfy the criteria for intervention under Bankruptcy Rule 2018(a) and

should be heard by the Court.

The Trustee is estopped by his own conduct and statements from contesting that the

Claimant-Intervenors' pecuniary interests will be directly affected by the Motion.  The Trustee

has repeatedly confirmed that he intends to apply retroactively any decisions related to "net

equity" issues– including any recalculation of claim amounts – even to previously determined

customer claims.  Because the Trustee will apply any ruling here to their customer claims, the

Claimant-Intervenors have ample pecuniary interest in the proceedings, which demonstrates

cause for intervention.  Any Claimant-Intervenor's failure to object to the Trustee's prior

calculation of a customer claim is irrelevant in the face of the Trustee's stated intent to apply

future rulings retroactively.

Likewise, the Trustee is estopped by his own conduct from denying that the Clawback-

Intervenors will also be materially affected by the manner in which the Court directs the Trustee

to compute customer claims.  Each of the Clawback-Intervenors is a defendant in an avoidance

3

action where the Trustee seeks to recover allegedly fraudulent transfers that Madoff Securities made to the Clawback-Intervenor.  In calculating the amount of his avoidance claims, the Trustee employed the same methodology he used to calculate customer net equity claims.  Further, in the litigation over the Clawback-Intervenors' value defenses now pending before the District Court, the Trustee insists each Clawback-Intervenor's "value" defense will depend, dollar-for-dollar, on the calculation of "net equity" that is approved in these proceedings.  If the Court directs the Trustee to adjust the amount of customer claims for inflation or constant dollars, the Trustee's avoidance claims will need to be correspondingly recalculated.  Because this recalculation would significantly affect the amount of the transfers subject to potential avoidance, thus materially changing the amounts for which the Clawback-Intervenors may be liable, the Clawback-Intervenors have a material pecuniary interest that will be directly affected by the result of the Court's ruling on the Trustee's Motion.

This Court's prior ruling denying standing to be heard to specific avoidance defendants who did not file claims in the SIPA proceeding does not present an obstacle to the present motion.[2]  That order was entered without the benefit of the Trustee's subsequently filed Motion. In papers filed after the scheduling conference, the Trustee has now expressly claimed that the amount of avoidance claims could be subject to "risk of reduction" if an inflation adjustment is allowed.  Trustee Br. at 27.[3]  Under such circumstances, the Clawback-Intervenors have an undeniable due process right to be heard on the inflation adjustment issue.

---

[2] *See* Scheduling Order dated September 5, 2012, Dkt. # 5022; Hr'g Tr. of September 5, 2012 at 18.

[3] In particular, the Trustee has opposed application of an inflation adjustment, in part, on the basis that if the adjustment is made it "would undoubtedly be used by defendants as defenses to the Trustee's avoidance actions."  If those defenses are successful, "it is estimated that the Trustee's avoidance recoveries could be reduced by as much as approximately $330 million using an inflationary adjustment." Tr. Br. at 27.  The Trustee further argues that "the total

4

**PROPOSED DRAFT**

**ARGUMENT**

**Movants Should Be Granted Leave to Intervene Under Bankruptcy Rule 2018(a).**

Bankruptcy Rule 2018(a) provides that "after hearing on such notice as the court directs

and for cause shown, the court may permit any interested entity to intervene … with respect to

any specified matter." Fed. R. Bankr. P. 2018(a). In evaluating a request for intervention under

this rule, courts consider whether (1) the interested party has shown "cause" for intervention; (2)

whether intervention would cause any delay or prejudice; and (3) whether the interests of the

movants are already adequately represented by the parties in the case. *In re Ionosphere Clubs,

Inc.*, 101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989); *Southern Blvd., Inc. v. Martin Paint Stores*, 207

B.R. 57, 62 (S.D.N.Y 1997).[4] Movants meet these criteria, and the Court should grant the

motion to intervene.

---

amount to be reallocated using an inflationary adjustment is approximately $575 million," and
"the inflationary adjustment would create new claimants (who were formerly net winners), and
larger claims from both previous net winners and certain other losers." *Id.* In other words, the
Trustee has now unambiguously acknowledged the potential significant effect on the avoidance
actions of a constant dollar adjustment. At a bare minimum, he has conceded that the constant
dollar adjustment provides the avoidance action defendants with another potential defense and
has thereby acknowledged the Clawback-Intervenors' clear pecuniary interest in the matter
presently before the Court. In fact, in apparent recognition of the potential strength of that
defense, the Trustee even had his financial expert analyze the potential impact of these defenses.

[4] Local Bankruptcy Rule 9014-1 also makes applicable Fed. R. Civ. P. 24 (as incorporated into
Bankruptcy Rule 7024). Rule 24(a) permits a person to intervene as of right in an action where
the applicant: (1) files a timely motion; (2) asserts an interest relating to the property or
transaction that is the subject of the action; (3) is so situated that without intervention the
disposition of the action may, as a practical matter, impair or impede its ability to protect its
interest; and (4) has an interest not adequately represented by the other parties. Fed. R. Civ. P.
24(a)(2); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994). Likewise, permissive
intervention is appropriate under Rule 24(b)(2) where the movant "has a claim or defense that
shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).
Courts look to the intervention provisions of Rule 24 to guide their interpretation of its
Bankruptcy Rule analog. *See, e.g., In re Macrose Indus. Corp.*, 186 B.R. 789, 795, 798
(E.D.N.Y. 1995) (looking to Rule 24 in context of motion to intervene under Bankruptcy Rules

**PROPOSED DRAFT**

    (1)    <u>Movants Have Cause for Intervention.</u>

An interested party can show "cause" under Rule 2018(a) by demonstrating an economic

or similar interest in the case as a whole, or merely one aspect of it. *In re Ionosphere Clubs, Inc.*,

101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989) (organization concerned with the rights of consumers

could assert an economic or similar interest in case); *see also In re Macrose Indus. Corp.*, 186

B.R. 789, 795, 798 (E.D.N.Y. 1995) (intervention permitted where movant had a security interest

in the collateral at issue in an adversary proceeding); *In re Berkshire Foods Inc.*, 302 B.R. 587,

589 (Bankr. N.D. Ill 2003) (party with pecuniary interest permitted to intervene in bankruptcy

proceeding).  Both groups of Movants have direct pecuniary interests in the outcome of the

Trustee's Motion, and therefore have shown cause for intervention.

    (a)  *Claimant-Intervenors Have Shown Cause for Intervention*

The Trustee recognizes that the Claimant-Intervenors have direct monetary interests that

will be affected by any ruling on the pending Motion, as he has stated that he will apply the

ruling retroactively, even to previously determined claims. *See* Kirby Decl. Exhibit A, Example

Determination of Claim Letter ("Should a final and unappealable court order determine that the

Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the

determination of customer claims, the Trustee will be bound by that order and will apply it

retroactively to all previously determined customer claims in accordance with the Court's

order.").  The outcome of the Trustee's Motion will directly affect the calculation of the

---

7024 and 2018); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989)
(analogizing to Rule 24(b) in context of deciding motion to intervene under Bankruptcy Rule
2018).  As demonstrated above, Movants satisfy both the Rule 24(a) test for intervention as of
right and Rule 24(b) permissive intervention standards.

**PROPOSED DRAFT**

Claimant-Intervenors' customer claims, and thus the amounts they can recover from the SIPA

priority claim process. Therefore, by the Trustee's own statements, there can be no reasonable

dispute that these Movants have a direct pecuniary interest in the Trustee's Motion and therefore

have shown cause to be heard on the Trustee's method of computation of customer claims.

Whether the Claimant-Intervenors previously objected to the Trustee's calculations is

irrelevant, as he will apply any ruling retroactively. It is a basic requirement of due process that

parties whose rights are to be affected have a right to be heard. *See, e.g.*, *Fuentes v. Shevin*, 407

U.S. 67, 80 (1972) ("For more than a century the central meaning of procedural due process has

been clear: 'Parties whose rights are to be affected are entitled to be heard. . .'") (internal

citations omitted). The Trustee's claim determination letter did not put claimants on notice that

they were relinquishing all rights to be heard in subsequent proceedings related to the calculation

of their claims. *See* Kirby Decl. Exhibit A, Example Determination of Claim Letter ("Nothing in

this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or

claims held by you in having your customer claim re-determined in accordance with any such

Court order.").

Any notion that the Trustee could calculate some customer claims differently from others

is a fundamentally flawed interpretation of SIPA and is inconsistent with the Trustee's stated

intent to accord all persons the benefit of any finally determined computation methodology.

Kirby Decl. Exhibit A (Trustee will be bound by final order and "will apply it retroactively to **all**

**previously determined claims** in accordance with the Court's order."). Because the Trustee

lacks discretion to employ varying methodologies in calculating identical customer claims,

whether the Claimant-Intervenors objected to prior calculations is irrelevant to their right to be

heard on the Trustee's Motion.

7

**PROPOSED DRAFT**

There is nothing in the Trustee's letter that can be construed as a customer's knowing and

voluntary waiver of the right to be heard on the issue of constant dollar claim adjustments in the

SIPA claim process.  The right to be heard on a matter affecting an individual's property rights is

governed by the Due Process clause of the Fifth Amendment to the Constitution.  A waiver of

constitutional rights must be clear, and courts accord every reasonable presumption against such

a waiver.  *Fuentes v. Shevin*, 407 U.S. at 94-95 n. 31 (1972) (finding no waiver where the

contractual language on its face did not amount to a waiver); *see also Stamicarbon, N.V. v. Amer.*

*Cyanamid Co.*, 506 F.2d 532 (2d Cir. 1974) (no waiver of right to public trial where licensing

agreement requiring reasonably best efforts at non-disclosure signed more than four years before

present action did not clearly waive right).

In 2009, at the time of issuance of the Trustee's claim determination letters, the

possibility of a constant dollar adjustment had not been raised by any party in the Madoff

Securities proceeding, let alone been identified as one of the issues of interpretation of net

equity.  While many customers filed objections to their claim determinations on the basis that a

constant dollar or inflation based adjustment was necessary, the issue was not formally raised for

consideration until this Court scheduled original briefing on the net equity determination.  *See*

Order Scheduling Net Equity Briefing, Dkt. #457.  Subsequently, the SEC filed a brief taking the

position that the net equity computation needed to be adjusted for constant dollars, SEC

Memorandum, Dkt # 1052.  However, the issue of the need to adjust the net equity determination

for constant dollars was not reached by this Court and likewise was expressly reserved in the

Second Circuit's 2011 net equity decision.  *In re Bernard L Madoff Investment Securities LLC*,

654 F.3d 229, 234, n. 6 (2d Cir. 2011).  The present Trustee's Motion is the first that is

specifically directed to a determination of the constant dollar issue and is a direct result of the

8

**PROPOSED DRAFT**

reservation of the issue by the Second Circuit.  Thus the failure to object to the claim

determination letters from the Trustee cannot be construed as an intentional and knowing waiver

of a right to be heard on the constant dollar issue that is only now before the Court.

(b)  *Clawback-Intervenors Have Shown Cause for Intervention*

The Clawback-Intervenors also show cause for intervention.  By the Trustee's own logic,

the Clawback-Intervenors will be materially affected by the manner in which the Trustee

computes the amount of customer claims, since the Trustee has used the same methodology to

determine the amounts sought in the avoidance actions in which they are current defendants.  *See*

Kirby Decl. Exhibit B (Pearlman Complaint).  In calculating these amounts, the Trustee employs

an unadjusted dollars in/dollars out methodology without any adjustment for inflation or constant

dollars, the very same methodology used by the Trustee to determine the net equity claims of

customers.  The Trustee has, moreover, repeatedly asserted an exact equivalence between the

calculated amount of any defendant's "net equity" and the amount of that avoidance defendant's

"value" defense, saying the two are "inextricably tied."[5]  The Clawback-Intervenors do not

concede in any respect that the amount of "value" that any good-faith defendant can assert as a

defense under the fraudulent transfer statutes is limited to, or legally equivalent to, such

defendant's allowable "net equity" claim under SIPA.  But if the Trustee's position is adopted,

the rulings in this Court on whether to include an inflation adjustment to "net equity" will

directly affect the Clawback-Intervenors' "value" defenses.  Thus, should the Court direct the

Trustee to adjust the amount of SIPA customer claims for inflation or constant dollars, the

---

[5] Trustee Mem. in Opp. to Consolidated Mem. of Law in Support of Mot. to Dismiss Regarding
Antecedent Debt Issues, Civ. Case No. 11-03605 (JSR), Dkt. #252 (July 25, 2012) at 6.

9

**PROPOSED DRAFT**

Trustee will be compelled to recalculate the amounts sought in his avoidance claims, materially

affecting the defenses to those claims.[6]

The Trustee is thus estopped from denying that Clawback-Intervenors lack standing –

because the Trustee has repeatedly insisted, in substance, that they do have standing.  The

Trustee has asserted before the District Court that net equity calculations affect all customers

(both claimants and avoidance action defendants), stating that "Unless the Net Investment

Method is used to calculate both net equity claims and avoidance amounts of principal and

fictitious profits, SIPA and the Bankruptcy Code would apply unequally to BLMIS

accountholders and would contravene the Second Circuit Net Investment Ruling."[7]  The Trustee

reiterated the same theme in common briefing before District Judge Rakoff in July 2012, stating

"In a SIPA liquidation such as this, 'value' is inextricably tied to the calculation of Defendants'

net equity...."[8]  The Trustee persists on this point again before this Court, stating that if an

adjustment for inflation or constant dollars were made to Net Equity calculations "the amount the

Trustee would otherwise be able to recover [in the avoidance actions] would be subject to risk of

reduction."  Trustee's Br. at 27.  As any such adjustment will certainly affect the amount that the

Trustee may seek to recover from the Clawback-Intervenors, and the potential monetary impact

---

[6] Movants do not concede in any manner that the Trustee's avoidance claims are valid, properly calculated, and/or well founded in fact or law.  Further, as noted above, they do not concede in any manner that "value" under the fraudulent transfer statutes is limited to "net equity" under SIPC.

[7] Trustee's Reply to Amicus Brief on "Reset to Zero" Methodology at 2, *Picard v. Katz*, Civ. Case No. 11-03605 (JSR), Dkt. #75 (Dec. 6, 2011).

[8] Trustee Mem. in Opp. to  Consolidated Mem. of Law in Support of Mot. to Dismiss Regarding Antecedent Debt Issues, Civ. Case No. 11-03605 (JSR), Dkt. #252 (July 25, 2012) at 6.

to each defendant may be substantial,[9] the Clawback-Intervenors have a direct and substantial

pecuniary interest in the matter before the Court.

These acknowledgements by the Trustee should persuade this Court to allow the

Clawback-Intervenors to be heard on the issue of whether a constant dollar or inflation

adjustment should be made to the Trustee's net equity determinations.  Contrary to the Trustee's

position before the Court at the time of the earlier motion, the issues actually briefed are not

limited only to the question of the amount of a SIPA claim determination.  *See* Transcript of

Hearing, September 5, 2012, at 8.  The Trustee has sought now in his motion to broaden the

issue, acknowledging the potential effect on the parallel avoidance actions and thereby requiring

reconsideration of the need for intervention by persons likely to be affected in those actions.

Given his own expansion of the issues before this Court, the Trustee's position that the

Clawback-Intervenors should not be heard should be rejected

Both classes of Movants thus have direct pecuniary interests in the Court's ruling.  This

satisfies Bankruptcy Rule 2018(a)'s standard for intervention as well as the "direct, substantial,

and legally protectable" interest required by Rule 24(a).  *See Washington Elec. Coop., Inc. v.*

*Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990); *see also Provident*

*Bank v. Community Home Mortgage Corp.*, No. 02-cv-5219, 2005 WL 1801654 at \*3 (E.D.N.Y.

July 28, 2005) (finding a direct interest where actions stemmed from same underlying fraud,

involving same collateral, assignments, and security interests).  Disposition of the Trustee's

Motion will, as a practical matter, impair or impede the ability of the Movants to protect those

---

[9] Under one method of calculation, utilizing the Department of Labor, Bureau of Labor Statistics CPI index for determining the inflation adjustment, the amount of the Trustee's net equity determination for certain customers results in a reduced financial impact ranging from $1.7 million to $11.7 million, or a percentage reduction ranging from 14% to 70%.. Kirby Decl.at ¶ 4.

interests.  *Cf. Oneida Indian Nation of Wisconsin v. New York*, 732 F.2d 261 (2d Cir. 1984)

(intervention under Rule 24 allowed where there was a substantial likelihood that the claims and

interests of the proposed intervenors could be adversely affected, at least by the principles of

stare decisis, arising out of a final judgment).  Movants must be allowed to intervene to protect

their interests here.

Alternatively, under Fed. R. Civ. P. 24(b)(2), permissive intervention is appropriate

where the movant "has a claim or defense that shares with the main action a common question of

law or fact."  Fed. R. Civ. P. 24(b)(1)(B); *see also Provident Bank*, 2005 WL 1801654 at *10

(E.D.N.Y. July 28, 2005) (noting that permissive intervention was warranted when movant's

claim and main action had common questions of law and fact arising from the same underlying

fraud).  It is indisputable that Movants' interest in the calculation of their own customer claims

and the calculation of the claims against them in the avoidance actions share common questions

of law and fact with the issues in the present motion.[10]  All of the claims and defenses arise from

alleged acts and omissions of Madoff Securities, and their disposition is governed by SIPA and

the Bankruptcy Code, and their interplay in the proceedings.  As District Judge Rakoff

repeatedly concluded in ordering common briefing on many distinct legal questions, common

issues predominate in these proceedings, and it is in the interests of all parties and judicial

---

[10] The constant dollar or inflation adjustment issue is very different from the separate issue now
pending before Judge Rakoff in consolidated common proceedings on the scope of the value
defense available to defendants, and whether they have a right under Section 548(c) to retain
amounts shown to be available by non-bankruptcy substantive law as antecedent debts.  The
Trustee's efforts to conflate the two issues in this Motion by, among other things, labeling the
issue one of "time-based *damages*," should be rejected.  The issues are distinct and have
different legal underpinnings.

**PROPOSED DRAFT**

efficiency to permit all interested parties to be able to participate in that briefing, rather than

consider the issues piecemeal.[11]

> (2)      Intervention Will Not Cause Delay or Prejudice.

Having demonstrated cause for intervention, Movants' participation in the briefing before

the Court will not cause either delay or prejudice.  *See Southern Blvd., Inc. v. Martin Paint*

*Stores*, 207 B.R. 57, 62 (S.D.N.Y 1997).  Movants notified the Court of their proposed

intervention and their opposition to the Trustee's Motion in compliance with the schedule set

forth in this Court's scheduling order on September 5, 2012, as modified on November 7, 2012.[12]

Movants do not anticipate any delay to the current schedule by allowing intervention, but rather

seek to intervene only on the narrow issue of whether customer claims should be subject to an

adjustment on the basis of constant dollars.  Movants have provisionally joined in the

consolidated submission filed by other customers in opposition to the Trustee's and SIPC's

briefs and would propose to address any further arguments opposing an inflation adjustment

going forward.  *See* Dkt # 5133.  The Trustee and SIPC will have ample opportunity to respond

to Movants' papers well before the February 13, 2013 hearing date.  .

If intervention is denied, however, Movants will be irredeemably prejudiced as they will

be unable to protect their rights on an issue that has direct effects on their pecuniary interests.

---

[11] *See, e.g.*, Order, *In re: Madoff Securities*, No. 12-MC-00115 (JSR) (S.D.N.Y. April 13, 2012)
(ECF No.4); Order, *In re: Madoff Securities*, No. 12-MC-00115 (JSR) (S.D.N.Y. April 19, 2012)
(ECF No. 22).

[12] The motion is timely under Rule 24.  To determine the timeliness of a motion to intervene
under the federal rule, the courts look to:  (1) the length of time the applicant knew or should
have known of his interest before making the motion; (2) prejudice to existing parties resulting
from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the
presence of unusual circumstances militating for or against a finding of timeliness.  *Farmland
Dairies v. Commissioner of N.Y. State Dep't of Agric. and Mkts.*, 847 F.2d 1038, 1043 (2d Cir.
1988) (*citing United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987)).  All of these factors
favor Movants.

There are no unusual circumstances militating against intervention.  To the contrary, if individual

defendants are denied standing to be heard on this issue now and in this forum, they will

necessarily be forced to litigate the same issue in multiple individual proceedings.  Such a result

would be a waste of both public and private resources, injecting an unnecessary level of

uncertainty and delay into multiple proceedings.  Intervention promotes both efficiency and

judicial economy, and is in the interest of all parties.

      (3)      <u>Movants are not adequately represented by other parties</u>.

Unlike Rule 24, Bankruptcy Rule 2018 contains no express requirement that a movant

show that its interests are not adequately represented by existing parties.  The Rule seems to

contemplate that once cause for intervention is shown, intervention is mandatory and the

question of adequacy of representation does not arise.  Due Process principles also strongly favor

granting limited intervention.

Even under Rule 24, however, Movants' burden to show inadequacy of representation is

"minimal," as "Rule [24] is satisfied if the applicant shows that the representation 'may be'

inadequate." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1982).

While an intervenor's interests may be adequately represented by a class representative,[13] a

fiduciary,[14] or the government acting in the public interest,[15] Movants are not represented by

such agents in this proceeding.  Where, as here, the Movants' interests are not represented by

existing parties, the Court should allow them to be heard.

---

[13] *See, e.g.*, *Andujar v. Weinberger*, 69 F.R.D 690, 697 (S.D.N.Y. 1976) (denying motion to intervene where proposed intervenors now had opportunity to be part of certified class).

[14] *See, e.g.*, *Jones v. Prince George's County, M.D.*, 348 F.3d 1014, 1019 (D.C. Cir. 2003) (fiduciary duty sufficed to show adequate representation).

[15] *See, e.g.*, *United States v. Hooker Chem. & Plastics Corp.*, 101 F.R.D. 451, 456 (S.D.N.Y. 1984) (denying motion to intervene where parties made no showing that their interests were not adequately represented by government).

As a practical matter, Movants' interests are not perfectly aligned with the existing parties in this action. Movants are all victims of Madoff's fraud, but each proposed intervenor is differently situated procedurally and factually. Movants have constitutional concerns about the Trustee's attempts to foreclose them from being heard (see above). Because of the procedural and factual differences, the Movants have valid concerns that are unlikely to be addressed by the other parties before the Court.

While existing parties may have aligned interests with Movants, it would be inappropriate to conclude that the Movants' interests are "adequately represented" by unrelated parties. For example, a party might settle out of the case early, allocate fewer resources to particular issues, or direct counsel to take a legal position with which the proposed intervenor would disagree. The proposed intervenor would then be left with no one to protect his or her interests. Additionally, excluding Movants could also raise difficult representation problems and potentially put undue and arbitrary financial burdens on clients. The inefficiencies created by litigating the same issues within multiple proceedings strongly counsel in favor of intervention.

In proceedings before District Judge Rakoff, that Court has repeatedly directed that the "constant dollar" issue even in the context of an avoidance action be determined in the first instance by this Court. *See, e.g.*, *Picard v. Greiff*, __ F.Supp.2d __, 2012 WL 1505349, at *9 n.10 (S.D.N.Y. April 30, 2012) ("The defendants might well establish, for example, that under a "constant dollar" approach, Madoff Securities owed them a reasonable return of interest on their investment. This Court, however, has declined to withdraw the reference to address this question, and the bankruptcy court will decide it on remand."). As a practical matter, therefore, the Trustee's Motion may be the only chance for all Movants to be heard on this critical defense issue.

**PROPOSED DRAFT**

## CONCLUSION

For the foregoing reasons, Movants request that the motion to intervene be granted and

that Movants be given the opportunity to be heard on the constant dollar/inflation adjustment

issue.

Dated: December __, 2012
        Washington, D.C.

                                  Respectfully submitted,

                                  K&L GATES LLP

                                      **DRAFT**

                                By: _____

                                    Richard A. Kirby
                                    Laura Clinton
                                    Catherine LaRose
                                    1601 K Street, NW
                                    Washington, DC 20006
                                    (202) 778-9000 (telephone)
                                    (202) 778-9100 (facsimile)
                                    richard.kirby@klgates.com
                                    laura.clinton@klgates.com
                                    catherine.larose@klgates.com

16