**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Debtor, | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                Plaintiff,<br>v.<br><br>SAUL B. KATZ, et al.,<br><br>                Defendants. | Adv. Pro. No. 10-05287 (BRL)<br><br><br><br>11 Civ. 03605 (JSR) (HBP) |

**TRUSTEE'S REPLY TO AMICUS BRIEF ON "RESET TO ZERO" METHODOLOGY**

                BAKER & HOSTETLER LLP
                45 Rockefeller Plaza
                New York, New York 10111
                Telephone: (212) 589-4200
                Facsimile: (212) 589-4201

                *Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**Table of Contents**

**Page**

Introduction ...................................................................................................................................1

Discussion .....................................................................................................................................2

    I.     The "Reset to Zero" Methodology Results In A Skewed Application Of Law To BLMIS Accountholders That Runs Afoul Of The Second Circuit Ruling. ................................................................................................................2

Conclusion.....................................................................................................................................5

## Table of Authorities

**Page(s)**

**CASES**

*In re Bernard L. Madoff Inv. Sec.*,
  --- F.3d ---, 2011 WL 3568936 (2d Cir. Aug. 16, 2011) .............................................. 1, 2, 3, 4

*Picard v. Greiff*,
  No. 11 CV 3775 (JSR) ............................................................................................................ 1

*Picard v. Katz*,
  --- F. Supp. 2d ----, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) .................................. 1, 2, 4

**STATUTES**

11 U.S.C. § 548(c) ............................................................................................................................ 3

15 U.S.C. § 78aaa *et seq.* ................................................................................................................. 1

Irving H. Picard (the "Trustee"), trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), respectfully submits this reply to the Amicus Brief On "Reset To Zero" Methodology ("Amicus Defendants") pursuant to this Court's order entered on November 28, 2011 ("November 28 Order") [ECF No. 72].[1]

## Introduction

Recognizing the Trustee's duties of "recovering and distributing customer property," the Second Circuit ruled that the "method Mr. Picard selected for carrying out his responsibilities under SIPA [was] legally sound under the statute." *In re Bernard L. Madoff Inv. Sec.*, -- F.3d --, 2011 WL 3568936, at *4-5 (2d Cir. Aug. 16, 2011). As endorsed by the Second Circuit,[2] the Net Investment Method determines whether the cash position of each account was positive or negative as of December 11, 2008. Customers were given full credit for all deposits or "reinvestments" that occurred during the life of the account, contrary to the Amicus Defendants' assertion. Am. Br 1. Thus, applying the Net Investment Method to all BLMIS accounts determines: (i) the amount of the net equity claim, or (ii) the amount of fictitious profits received.

The Amicus Defendants advance the "Reset to Zero Method," which would apply differing reconciliation methodologies to BLMIS customer accounts depending on which

---

[1] The order entered on November 28 relates to the Court's order entered on September 28, 2011 ("September 28 Order") [ECF No. 41], and the Court's Opinion and Order dated September 27, 2011, *Picard v. Katz*, -- F. Supp. 2d ---, 2011 WL 4448638, at *4 n.6 (S.D.N.Y. Sept. 27, 2011) [ECF No. 40]. The Trustee has previously briefed "footnote 6," and incorporates herein each of those submissions. [ECF Nos. 63, 69]. *See also Picard v. Greiff*, No. 11 CV 3775 (JSR) [ECF No. 33].

[2] The Second Circuit has ruled that use of anything but the Net Investment Method to determine net equity claims in this liquidation would be "legal error." Net Investment Ruling, at *17.

methodology minimizes their personal liability—the Reset to Zero Method to some customers and a hybrid Net Investment/Reset to Zero Method to others. As set forth below, these methodologies have anomalous results and unfairly eliminate the beneficial principal balances of some customers in order to insulate other customers from avoidable transfers. The Trustee's duties are to the estate and the customer class as a whole and he must "achieve a fair allocation of resources among the customers." Net Investment Ruling, at *31. Unless the Net Investment Method is used to calculate both net equity claims and avoidance amounts of principal and fictitious profits, SIPA and the Bankruptcy Code would apply unequally to BLMIS accountholders and would contravene the Second Circuit Net Investment Ruling. Nothing in the Bankruptcy Code, SIPA, or the Net Investment Ruling permits this inequitable result.

Nor should the Reset to Zero Method be allowed to undermine the Second Circuit-approved claims determination process and unfairly subject customers to avoidance litigation in order to have their net equity claim allowed. Hundreds of claims have been allowed in accordance with the Second Circuit ruling and have received distributions. The Trustee cannot isolate the net equity calculation from what is avoidable without unraveling that claims determination process.

## Discussion

**I.    The "Reset to Zero" Methodology Results In A Skewed Application Of Law To BLMIS Accountholders That Runs Afoul Of The Second Circuit Ruling.**

As advanced by Amicus Defendants, the Reset to Zero Method erases the history of an account prior to December 11, 2006 and determines whether an account is a net winner or net loser based solely on the transactions during the two-year period. Even Amicus Defendants recognize, however, that this Method cannot be uniformly applied to all accounts. The exceptions to the application of the Reset to Zero Method result in numerous permutations that preclude fair allocation among customers in contravention of SIPA and the Net Investment

2

Ruling.[3]

Under the Net Investment Ruling, net losers have a net equity claim for the difference between their life-to-date deposits and withdrawals. The Reset to Zero Method wipes out the customers' investment history prior to December 11, 2006. This inevitably shifts accounts that were net losers under the Net Investment Method to net winners under the Reset to Zero Method and impermissibly conflicts with the Second Circuit ruling.

The case of Fred A. Daibes Madoff Securities Trust ("Daibes"), No. 11 CV 08475, identified on Annex B to the Amicus Brief, is illustrative. Under the Net Investment Method, Daibes has a net equity claim of $2.1 million over the seven-plus year history of the account. As of December 11, 2006, this account had a positive principal balance of $10.5 million. During the two-year period, Daibes withdrew $8.4 million more than he deposited. Therefore, if the Reset to Zero Method were applied (the positive principal balance were zeroed out), then Dabies would have no net equity claim and would be subject to an avoidance action of over $8 million dollars, in violation of the Second Circuit's ruling.[4]

In an attempt to harmonize the Reset to Zero Method with the Second Circuit ruling, the Amicus Defendants propose that customers such as Daibes could raise "antecedent debt"— calculated over the life of the account—as an affirmative defense under § 548(c) to the Trustee's putative avoidance action for the amount of their principal. However, the Amicus Defendants

---

[3] To the extent that the *Katz* decision were to be modified on appeal to permit the Trustee to avoid transfers beyond the two-year period, the Reset to Zero Method, if applied by this Court, would itself have to be reset to six years and/or the time period governed by the "discovery rule" under the New York Debtor & Creditor Law. Thousands of accounts would once again shift between all of the sub-classes of customer categories described herein and would raise endless permutations.

[4] The Reset to Zero Method would similarly result in the denial of net equity claims and create avoidance liability for hundreds, if not thousands, of customers who have allowable net equity claims under the Net Investment Method.

3

fail to explain how this affirmative defense would apply to net loser accounts that have no activity in the two-year period and would not be subject to an avoidance action under the Reset to Zero Method, and yet the Reset to Zero Method would void their net equity claim.

Applying the Reset to Zero Method to net winner accounts results in equally disparate treatment that also contradicts the Net Investment Ruling. Net winner accounts that have only deposits in the two-year period appear to have a net equity claim in the guise of a positive balance as of December 11, 2008 under the Reset to Zero Method. In reality, however, such accounts do not have a net equity claim. On the other hand, those net winner accounts with positive balances at December 11, 2006 and who withdrew remaining principal and fictitious profits during the two-year period are harmed by the Reset to Zero Method because the amount of withdrawals in the two-year period (previously considered the return of principal under the Net Investment Method) are now considered avoidable transfers of fictitious profits. Sixteen accounts of the Amicus Defendants fall into this latter category resulting in additional avoidance liability of $66.1 million.

The account history for AHT Partners L.P. ("AHT"), No. 11 CV 8488, identified on Annex B, clearly illustrates this point. AHT opened its account on April 19, 2000 with a deposit of $10 million. Between that time and December 11, 2006, AHT made no additional deposits and made nine withdrawals totalling $8.6 million, resulting in a positive principal balance of $1.4 million as of December 11, 2006. During the two-year period, AHT made one deposit of $8 million and made five withdrawals totaling $12.3 million. Under the Net Investment Method, AHT is a net winner of $2.9 million ($18 million deposited minus $20.9 million withdrawn), all of which would be avoidable because the gross withdrawals in the two-year period exceed that amount. However, under the Reset to Zero Method, the portion of the withdrawals considered

4

the return of such principal ($1.4 million) is now considered fictitious profits as the principal has been reset to zero. Therefore, under the Reset to Zero Method, AHT received a total of $4.3 million of fictitious profits, resulting in an additional $1.4 million of avoidance liability.

The narrow subset of customers that the Reset to Zero Method is truly aimed at is net winners who had a negative balance at the start of the two-year period and had both deposits and withdrawals in the two-year period. Their deposits and withdrawals are netted from December 2006 to December 2008, permitting them a clean slate prior to December 2006 and looking only at the transactional history within the two-year period to determine their avoidance liability. This scenario insulates avoidable transfers for a small group of customers at the expense of fairly allocating available resources among all customers. The Net Investment Method approved by the Second Circuit must be applied to calculate both net equity claims and avoidable amounts of principal and fictitious profits in order to ensure that all BLMIS customers are treated equally.

## Conclusion

For the foregoing reasons, the Trustee respectfully requests that the Court rule that the Net Investment Method applies for purposes of determining the quantum of avoidable transfers.

| | |
|---|---|
| Date: December 6, 2011<br>New York, New York | By: */s/ David J. Sheehan*<br>**BAKER & HOSTETLER LLP**<br>45 Rockefeller Plaza |
| Of Counsel:<br>Oren J. Warshavsky<br>Email: owarshavsky@bakerlaw.com<br>Lan Hoang<br>Email: lhoang@bakerlaw.com<br>Seanna R. Brown<br>Email: sbrown@bakerlaw.com | New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Email: dsheehan@bakerlaw.com<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff* |

300189307

5