**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN OPPOSITION TO THE SURABIANS' MOTION TO FILE LATE OBJECTION TO**
**EXPUNGEMENT MOTION, MOTION TO VACATE EXPUNGEMENT ORDER, AND**
**MOTION TO SUBPOENA MADOFF**

SECURITIES INVESTOR PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, D.C. 20005
Telephone:  (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
NATHANAEL S. KELLEY
Staff Attorney

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE CASE.................................................................................................2

ARGUMENT ......................................................................................................................4

    I.      THE MOTION TO VACATE AND OBJECTION MOTION ARE
           BASELESS ..............................................................................................4

          A.      The Surabians' Failure to Respond Was Willful ........................................6

          B.      The Surabians Have No Meritorious Defense to the
               Expungement Motion...................................................................................9

          C.      The Reconsideration of the Expungement Order Would
               Prejudice the Trustee..................................................................................10

    II.     THE SURABIANS HAVE PROVIDED INSUFFICIENT GROUNDS
           TO JUSTIFY THE SUBPOENA MOTION.........................................................11

CONCLUSION....................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

<u>CASES:</u>                                                                                                 <u>PAGE</u>

*In re Adler Coleman Clearing Corp.*, 204 B.R. 111 (Bankr. S.D.N.Y. 1997) ...............................9

*American Alliance Insurance Co. v. Eagle Insurance Co.*, 92 F.3d 57 (2d Cir. 1996) .........6, 9, 10

*Atkins v. City of New York*, 856 F. Supp. 755 (E.D.N.Y. 1994) ............................................ 11-12

*Barnes v. Black*, 544 F.3d 807 (7th Cir. 2008) ...............................................................12

*In re Barquet Group, Inc.*, 477 B.R. 454 (Bankr. S.D.N.Y.),
    *aff'd*, 2012 WL 6582367 (S.D.N.Y. Dec. 17, 2012) ....................................................6, 7, 8

*Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*,
    221 F.R.D. 410 (S.D.N.Y. 2004) ......................................................................................8

*In re Enron, Inc.*, 325 B.R. 114 (Bankr. S.D.N.Y. 2005) ................................................5

*In re Enron, Inc.*, 326 B.R. 46 (Bankr. S.D.N.Y. 2005) ...............................................10

*In re Fairpoint Commc'ns, Inc.*, 462 B.R. 75 (Bankr. S.D.N.Y. 2012)....................................7, 10

*Gaglio v. Silverman (In re Suprema Specialties, Inc.)*, 330 B.R. 40 (S.D.N.Y. 2005).................10

*Haywood v. Hudson*, 1993 WL 150317 (E.D.N.Y. Apr. 23, 1993)...............................................12

*In re JWP Info. Servs, Inc.*, 231 B.R. 209 (Bankr. S.D.N.Y. 1999) ..............................5, 6, 8, 9, 11

*King v. First Am. Investigations, Inc.*, 287 F.3d 91(2d Cir.),
    *cert. den.,* 537 U.S. 960 (2002) .........................................................................4

*Murray v. Dist. of Columbia*, 52 F.3d 353 (D.C. Cir. 1995) ...........................................9

*Picard v. Harvey E. Rothenberg Revocable Trust*, No. 12-5717 (JSR)
    (S.D.N.Y. January 14, 2013)...........................................................................7

*Pioneer Investment Service. Co v. Brunswick Associates L.P.*, 507 U.S. 380 (1993) ....................6

*Twitty v. Ashcroft*, 712 F. Supp. 2d 30 (D. Conn. 2009)..............................................12

## <u>TABLE OF AUTHORITIES</u>

**<u>STATUTES AND RULES:</u>**                                                                                    **<u>PAGE</u>**

Federal Rule of Civil Procedure

60(b).........................................................................................................................................4, 5
60(b)(1) ......................................................................................................................................5

Federal Rule of Bankruptcy Procedure

3008............................................................................................................................................5
9024............................................................................................................................................5

United States Bankruptcy Code, as amended, 11 U.S.C. §

502(j)......................................................................................................................................4, 5

By order dated April 19, 2012 (the "Expungement Order"), this Court granted a motion by Irving H. Picard (the "Trustee"), as trustee for the consolidated liquidation under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and the estate of Bernard L. Madoff ("Madoff"),[1] to expunge the claims filed by Martin M. Surabian, Richard Surabian, and Steven Surabian (the "Surabians") in the liquidation of BLMIS on the grounds that the Surabians never invested with or through BLMIS. The Expungement Order left the Surabians without standing in the liquidation. (Docket No. 4779.) [2]

Now, over eight months later, the Surabians have filed a series of motions (collectively, the "Motions") seeking to regain standing. The Motions include:

- the Motion to File Late Opposition to Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS, filed on January 2, 2013 (Docket No. 5186) ("Objection Motion");

- the Motion to Vacate Order and Judgment of Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS Regarding the Surabians' Claims, filed on January 22, 2013 (Docket No. 5206) ("Motion To Vacate"); and

- the Motion to Subpoena Bernard L. Madoff , filed on January 2, 2013 (Docket No. 5188) ("Subpoena Motion").

The Securities Investor Protection Corporation ("SIPC") submits this memorandum of law in opposition to the Surabians' Motions. For the reasons explained below, the Motions should be denied.

---

[1] For convenience, references to provisions of SIPA shall omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main bankruptcy proceeding pending before the United States Bankruptcy Court for the Southern District of New York, captioned *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.) (BRL), unless otherwise noted.

## STATEMENT OF THE CASE

On December 23, 2008, upon a motion by the Trustee, this Court entered an order in this proceeding establishing procedures governing, *inter alia*, the filing and determination of "customer" claims, and the adjudication of any "customer" claim determination objections under SIPA. (Docket No. 12.) Under the procedures, claimants could file claims with the Trustee. The Trustee would determine the claims and notify each claimant of his determination in writing and of the claimant's right to request judicial review of the determination if the claimant disagreed with it. This Court would then adjudicate the claim and the Trustee's disposition thereof.

Pursuant to this claims process, the Surabians filed eight claims. (*See* Declaration of Amy Vanderwal, dated February 27, 2013 ("Vanderwal Decl."), Ex. A.) In researching the claims, the Trustee and his staff found no evidence in BLMIS's records that the Surabians had invested in or through BLMIS, and the Surabians provided no evidence to the contrary. Accordingly, on December 9, 2009, the Trustee issued a determination denying the Surabians' claims. (Vanderwal Decl. Ex. B.) The Surabians objected to the Trustee's determination on January 4, 2010. (Docket No. 1209.)

On March 16, 2012, the Trustee filed the Third Omnibus Motion to Expunge Claims and Objections of Claimants That Did Not Invest with BLMIS or in Entities That Invested in BLMIS, including the claims filed by the Surabians (the "Expungement Motion"). (Docket No. 4732.) On April 19, 2012, this Court granted the Trustee's motion and expunged, *inter alia*, all of the Surabians' claims on the grounds that the Surabians did not invest with BLMIS or in entities that invested with BLMIS (the "Expungement Order"). (Docket No. 4779.) The Surabians thus no longer had any claims or objections remaining in this liquidation. As

2

described in greater detail in the Trustee's Opposition and accompanying Declaration of Amy

Vanderwal, the Surabians received notice of the Expungement Motion, both through service of

the motion (as confirmed by the affidavit of service filed by the Trustee; Docket No. 4733), and

by a personal phone call from a legal assistant for Trustee's counsel who notified the Surabians

of a change in the hearing date on the Motion.  (Vanderwal Decl. Ex. E.)  Nevertheless, the

Surabians filed no opposition to the Trustee's Motion and did not otherwise participate in the

matter.  The Trustee mailed a copy of the Expungement Order to the Surabians on April 20,

2012. (Docket No. 4792.)

        Despite having their claims expunged, the Surabians continued to insinuate themselves in

the BLMIS liquidation through frivolous challenges to the Trustee's actions, as explained in

greater detail in the Trustee's Opposition.  Time and again, the Trustee argued in opposition to

the Surabians' various motions that the Surabians lacked standing, citing the Expungement

Order—a point not lost upon the Surabians.  In his August 15, 2012 response to the Surabians'

objection to the Trustee's motion for a second interim distribution, the Trustee refuted the

Surabians' arguments and further responded that the Surabians lacked standing to bring an

objection, citing the Expungement Order.  (Docket No. 4984.)  In his August 24, 2012 reply to

the Surabians' objection to a motion for a scheduling order, the Trustee again cited the

Expungement Order in arguing that the Surabians lacked standing.  (Docket No. 5001.)  And in

his September 4, 2012 opposition to the Surabians' motion to remove the Trustee, the Trustee

again responded that the Surabians lacked standing, citing the Expungement Order.  (Docket No.

5019.)  Revealingly, in their September 12, 2012 reply in further support of their motion to

remove the Trustee, the Surabians responded directly to the standing argument, calling it

3

unsupported (despite the Trustee's citation to the Expungement Order) and asserting that they had never received the Expungement Order.  (Docket No. 5028, at 4–5.)

Finally, in January 2013, the Surabians filed the series of motions seeking to reestablish their claims and regain standing.  On January 2, 2013, the Surabians filed the Objection Motion (Docket No. 5186), together with the related Objection to the Third Omnibus Motion (the "Objection").  (Docket No. 5187.)  Also on January 2, 2013, the Surabians filed the Subpoena Motion, hoping to prove what no documentary evidence in the possession of BLMIS or the Surabians has yet indicated: that they opened accounts with Madoff.  (Docket No. 5188.)  On January 22, 2013, the Surabians filed the Motion to Vacate, asserting Rule 60(b) grounds to vacate the Expungement Order.  (Docket No. 5206.)  These Motions are addressed below.[3]

## ARGUMENT

## I. THE MOTION TO VACATE AND OBJECTION MOTION ARE BASELESS

The Motion to Vacate and the Objection Motion (together the "Reconsideration Motions") seek essentially the same relief: the reconsideration of this Court's Expungement Order.  Indeed, there are not separate procedural mechanisms for these motions; both are properly considered as motions to reconsider a judgment pursuant to section 502(j) of the

---

[3] Completing their attack upon the Expungement Order, the Surabians also filed a Notice of Appeal from the Expungement Order (the "Appeal") (Docket No. 5208), as well as a Motion to File a Late Appeal of the Expungement Order (the "Motion to File Late Appeal") (included as part of the Objection Motion, Docket No. 5186).  Both the Appeal and the Motion to File a Late Appeal are not before the Court at this time, but, suffice to say, both are untimely.  Even though an appeal has been taken of the Expungement Order, this Court still has jurisdiction to hear a motion to vacate under Rule 60(b).  *See King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir.) ("[A] Rule 60(b) motion can be made even though an appeal has been taken and is pending." (internal quotations omitted)), *cert. den.*, 537 U.S. 960 (2002).

4

Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3008. Accordingly, this Memorandum treats the Reconsideration Motions together.

Section 502(j) states, in pertinent part: "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). Rule 3008 similarly provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." Fed. R. Bankr. Proc. 3008. When considering a motion for reconsideration, courts in this District have looked to Rule 60(b) standards. *In re Enron, Inc.*, 325 B.R. 114, 117 (Bankr. S.D.N.Y. 2005).[4]

The basis for reconsideration asserted by the Surabians—that they never received the Expungement Motion or Order—falls closest to a plea for reconsideration pursuant to Rule 60(b)(1), which provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ." Fed. R. Civ. Proc. 60(b)(1).[5] Essentially, the determination of whether the Surabians' failure to respond amounts to excusable neglect "is an equitable one, taking account of all relevant circumstances. The key question is whether [the movant's] behavior entitles it to equitable relief." *In re JWP Info. Servs, Inc.*, 231 B.R. 209, 211 (Bankr. S.D.N.Y. 1999) (internal citations omitted).

---

[4] Federal Rule of Bankruptcy Procedure 9024, entitled "Relief from Judgment or Order," provides that Federal Rule of Civil Procedure 60 applies in cases under the Bankruptcy Code. Fed. R. Bankr. Proc. 9024.

[5] The subsections cited by the Surabians, 60(b)(9) and (11), do not exist.

5

In defining excusable neglect, courts in this Circuit look either to the Supreme Court's decision in *Pioneer Investment Service. Co v. Brunswick Associates L.P.*, 507 U.S. 380 (1993) (defining "excusable neglect" for a late filed claim) or the Second Circuit's decision in *American Alliance Insurance Co. v. Eagle Insurance Co.*, 92 F.3d 57 (2d Cir. 1996) (defining "excusable neglect" for a default judgment).  *See In re JWP Info. Servcs.* 231 B.R. at 211–12.  In *Pioneer*, the Supreme Court identified four factors to be considered: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  507 U.S. at 395.  The Second Circuit, in *American Alliance*, applied a more lenient, three-factor test for excusable neglect: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." 92 F.3d at 59 (internal quotation omitted).

As explained below, the Surabians cannot meet even the more lenient *American Alliance* standard, making an analysis under *Pioneer* unnecessary.  The Surabians bear "a heavy burden because Rule 60 provides extraordinary relief and is, therefore, generally viewed with disfavor." *In re Barquet Group, Inc.*, 477 B.R. 454, 460–61 (Bankr. S.D.N.Y.), *aff'd*, 2012 WL 6582367 (S.D.N.Y. Dec. 17, 2012).  That extraordinary relief should not be granted here.

A.    **The Surabians' Failure to Respond Was Willful**

The Surabians assert that they failed to respond to the Expungement Motion or Order because they never received them.  This conclusory assertion, without any evidence to support it, does not overcome the presumption that the Surabians received both the Motion and Order.

6

"A rebuttable presumption that an addressee received a mailed notice arises when the mailing party submits sufficient evidence to demonstrate the notice was properly addressed and mailed." *In re Barquet Group*, 477 B.R. at 462 n.7 (internal quotations omitted). Sufficient evidence consists of an affidavit submitted by the individual who mailed the notice or supervised the mailing of the notice. *Id.* "This presumption of receipt is 'very strong' and 'can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary . . . . Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary.'" *Id.* (quoting *In re Fairpoint Commc'ns, Inc.*, 462 B.R. 75, 81 n.7 (Bankr. S.D.N.Y. 2012)); *see also* Order, *Picard v. Harvey E. Rothenberg Revocable Trust*, No. 12-5717 (JSR) (S.D.N.Y. January 14, 2013) (Docket No. 19) ("Singer's affidavit does little more than deny receipt, which is insufficient to rebut the presumption of service created by Ms. Campbell's affidavit."). (Vanderwal Decl. Ex. F.)

Here, the Trustee contemporaneously filed an affidavit of service of the Expungement Motion (Docket No. 4733) as well as an affidavit of service of the Expungement Order. (Docket No. 4792.) The Trustee went even further, having a legal assistant call the Surabians to advise them of a change in the hearing date. (Vanderwal Ex. E.) The Surabians, on the other hand, have done no more than claim that they never received the Expungement Motion or Expungement Order. This conclusory statement does not overcome the presumption of receipt. Having received the Expungement Motion and Order, the Surabians' failure to respond to them in a timely fashion was willful.

Even if one takes the Surabians at their word that they never received the Expungement and Order, the Surabians knew of the Expungement Order by September 12, 2012, at the latest, when they responded to the Trustee's argument that they lacked standing to seek the removal of

7

the Trustee.  (Docket No. 5028, at 4–5.)  When the Trustee cited to the Expungement Order which disallowed their claims, the Surabians did not investigate the Expungement Order or inquire with this Court as to its status.  Instead, they merely stated that they never received it, implicitly arguing that it either did not exist or that it did not affect them.

An unreasonable delay in bringing a reconsideration motion factors into the willfulness of the failure to respond and weighs against the equities of granting the motion.  "In the context of a motion to reconsider an order, parties should file a motion as soon as they discover that grounds may exist to warrant reconsideration."  *In re Barquet Group*, 477 B.R. at 463.  In *In re JWP Information Services*, the movant received notice of the trustee's motion to expunge the movant's claim sixteen days after the motion was granted.  231 B.R. at 212.  While the court may have found excusable neglect had the movant promptly sought reconsideration, the movant instead waited over nine months before moving for reconsideration.  *Id.* The court observed that "[i]t is [the movant's] actions after he became aware of the existence of the Trustee's motion combined with [the movant's] internal error that reaches the level of wilfulness."  *Id.* (noting that, upon receipt of service, the movant made no attempt to determine the status of the motion to expunge its claim); *see also Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, 221 F.R.D. 410, 414 (S.D.N.Y. 2004) (denying motion to vacate where movant's counsel waited two-and-a-half months after discovering default before moving to vacate, even though movant showed a meritorious defense and a lack of prejudice to the non-movant).  Thus, even if the Surabians could overcome the presumption that they never received the Expungement Motion and Order, that does not excuse their willful and unreasonable delay in bringing the Reconsideration Motions upon learning of the existence of the Order.

8

**B.      The Surabians Have No Meritorious Defense to the Expungement Motion**

The second factor for reconsideration requires that the Surabians demonstrate a meritorious defense should the Expungement Order be reopened.  "[T]he movant must provide the district court with reason to believe that vacating the judgment will not be an empty exercise or a futile gesture."  *Murray v. Dist. of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995).  A meritorious defense is one which "is good at law so as to give the factfinder some determination to make." *Am. Alliance*, 92 F.3d at 61.  Nevertheless, "the defendant must present evidence beyond conclusory denials, and such evidence, if proven at trial, would constitute a complete defense." *In re JWP Info. Servs.*, 231 B.R. at 213 (internal citations omitted).  For example, in *In re JWP Information Services*, the trustee moved to expunge the movant's claim because it had no documentary evidence of how it calculated its claim.  *Id.*  In its motion for reconsideration, the movant only mustered a conclusory sentence regarding how it reached the claimed amount— "[a]rguably . . . not a defense."  *Id.*  In finding that the movant had not presented a meritorious defense, the court further noted that "[a]fter seven months, [the movant] has produced no documentation to support" its claim.  *Id.*

Despite having nearly a year to respond to the Expungement Motion, and over three years since the Trustee denied their claims, the Surabians likewise have yet to present any evidence that they opened accounts with Madoff or BLMIS.  As claimants, the Surabians bear the burden of establishing their claim and of rebutting the Trustee's determination that they did not hold accounts at BLMIS.  *See In re Adler Coleman Clearing Corp.*, 204 B.R. 111, 115 (Bankr. S.D.N.Y. 1997) ("[T]he Claimants must prove that they are 'customers' and that the equity in the Deposit Accounts is 'customer property' under SIPA.").  They have yet to meet this burden.

9

The Trustee originally denied the Surabians' claims in December 2009 on the basis that BLMIS's records contained no evidence of accounts in their names. The Surabians filed an objection to the Trustee's determination, but they failed to support their objection with any documentary evidence of their accounts—account statements from BLMIS, canceled checks, evidence of transactions into or out of BLMIS accounts, tax returns reflecting investments, or any other indicia. No evidence has been produced since. Their repeated assertion that they opened an account with Madoff only states a claim—it does not prove it or even create a genuine issue of fact. Having failed to raise an issue beyond conclusory statements for the fact finder to determine, the Surabians have no meritorious defense. Reopening the Expungement Order would thus be a futile gesture and a waste of this Court's time and resources.

## C.    The Reconsideration of the Expungement Order Would Prejudice the Trustee

Finally, under *American Alliance*, courts look to the prejudice that reopening the order would cause to the non-moving party. In bankruptcy cases, courts in this District also examine whether reopening the order will cause prejudice to the bankruptcy estate. *In re FairPoint Communs.*, 462 B.R. at 82. "[A] court should consider the impact that the granting of relief may have on the administration of the bankruptcy case, specifically, on the claims adjudication process." *In re Enron, Inc.*, 326 B.R. 46, 53 (Bankr. S.D.N.Y. 2005).[6]

Here, granting the Surabians' Reconsideration Motions would prejudice the Trustee and the claims administration process, forcing the Trustee to re-litigate motions and putting previous

---

[6] The District Court for this District has further mused that "defaulting parties greatly exacerbate 'the law's delay,'" with appeals and other proceedings "consum[ing] additional resources of the parties and additional time." *Gaglio v. Silverman (In re Suprema Specialties, Inc.)*, 330 B.R. 40, 53 n.5 (S.D.N.Y. 2005). "In effect, appellants' disregard of the procedural rules has succeeded in derailing this litigation for a considerable period, no doubt inflicting some difficult-to-quantify prejudice on the" non-moving party. *Id.*

claims determinations and distributions in doubt.  While the Surabians' willful disregard for the

Expungement Order and their lack of a meritorious defense are enough to require denial of the

Reconsideration Motions, the prejudice to the Trustee and the BLMIS estate confirm that the

equities of the case lie firmly in the Trustee's favor.  *See In re JWP Info. Servs.*, 231 B.R. at 213

("However, in this case, [the movant's] delay was wilful and knowing. In this context, the

Debtor's creditors lose the finality of the calculation of the value of their claims due to [the

movant's] intentional delay.  This is an inequitable result." (internal citation omitted)).

## II.  THE SURABIANS HAVE PROVIDED INSUFFICIENT GROUNDS TO JUSTIFY THE SUBPOENA MOTION

Unable to produce a shred of documentary evidence indicating that they invested in or

through BLMIS, the Surabians instead seek to burden this Court and further interfere with this

liquidation by deposing Bernard L. Madoff.  The slight chance of a benefit which such a

deposition might produce is greatly outweighed by the costs and burden of going forward with it.

Accordingly, the Surabians' Subpoena Motion must be denied.

As a preliminary matter, the Surabians' use of a subpoena is improper.  The testimony of

a federal prisoner is properly obtained by requesting that a court issue a writ of habeas corpus ad

testificandum directing the custodian of the prisoner to produce the prisoner in court.   In

analyzing a writ of habeas corpus ad testificandum, courts look at the following three factors:

"[1] whether the prisoner's presence will substantially further the resolution of the case, [2] the

security risks presented by the prisoner's transportation and safekeeping, and [3] whether the suit

can be stayed until the prisoner is released without prejudice to the cause asserted."  *Atkins v.*

*City of New York*, 856 F. Supp. 755, 757 (E.D.N.Y. 1994) (internal quotations omitted).

11

Regarding the first factor, the court must consider not just whether the "expected testimony would be relevant, but rather, whether such testimony is *necessary*. This determination depends ultimately upon whether the probative value of the testimony justifies the expense and security risk associated with transporting an inmate to court from a correctional facility." *Id.* at 758. If the expected testimony will not advance the movant's case substantially, a writ is unwarranted. *See Haywood v. Hudson*, 1993 WL 150317, at *6 (E.D.N.Y. Apr. 23, 1993). So too here. Madoff's testimony in court will not further the resolution of the Surabians' claims, as standing on its own, it has no probative value. Any testimony given by Madoff, a convicted fraudster and liar, must still be substantiated by documentary evidence which the Surabians have yet to produce. Any deposition would thus be a fruitless exercise.

Furthermore, any relevance that Madoff's testimony might have must be balanced against the second factor: the security risks and costs presented by the prisoner's transportation and safekeeping. Bringing Madoff before this Court from his prison cell in Butner, North Carolina, will require substantial coordination between different agencies from different jurisdictions, at great taxpayer expense. The transportation and appearance of such a high-profile prisoner will demand increased security due to the attention it will draw from the media as well as other claimants. *See Barnes v. Black*, 544 F.3d 807, 810 (7th Cir. 2008) (Posner J.) ("'Writting' prisoners to a distant court entails cost and even danger."); *Twitty v. Ashcroft*, 712 F. Supp. 2d 30, 33 (D. Conn. 2009) (denying a writ of habeas corpus ad testificandum, despite the importance of the prisoner's testimony, in light of security and cost concerns).

The security issues and cost of granting a writ of habeas corpus ad testificandum for Madoff to appear before this Court greatly outweigh the little, if any, probative value of Madoff's testimony. Indeed, the spurious value of Madoff's testimony would not even justify

12

attempts to depose Madoff by other, less costly means, such as video conference.  Accordingly,

the Subpoena Motion should be denied.

### <u>CONCLUSION</u>

Because the Surabians have not demonstrated the excusable neglect necessary to warrant

reconsideration of the Expungement Order, and because they have failed to justify the heavy

burden of subpoenaing Madoff, this Court should deny the Surabians' Motions.

Dated:  February 28, 2013
Washington, D.C.

Respectfully submitted,

JOSEPHINE WANG
General Counsel

/s/ Kevin H. Bell
KEVIN H. BELL
Senior Associate General Counsel for Dispute
Resolution

NATHANAEL S. KELLEY
Staff Attorney

SECURITIES INVESTOR PROTECTION
CORPORATION
805 15th Street, N.W.
Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: nkelley@sipc.org

13