**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant, | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |

**TRUSTEE'S OBJECTION TO MOTIONS TO RECONSIDER ORDER EXPUNGING
CLAIMS AND OBJECTIONS OF CLAIMANTS THAT DID NOT INVEST WITH
<u>BLMIS OR ENTITIES THAT INVESTED IN BLMIS</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

        A.     Procedural Background................................................................................. 2

        B.     The Surabians' Purported Claims ................................................................ 3

        C.     Expungement of the Surabians' Claims and Objections............................. 4

        D.     The Surabians' Attempts to Insert Themselves into the BLMIS Liquidation................................................................................................... 6

        E.     The Surabians' Motions for Reconsideration ............................................. 7

ARGUMENT .................................................................................................................................. 9

    I.     THE MOTIONS FOR RECONSIDERATION SHOULD BE DENIED ............... 9

        A.     The Surabians' Failure to Respond was Willful ...................................... 10

        B.     The Surabians Do Not Have a Legally Supportable Defense .................. 12

        C.     The Trustee Would be Prejudiced if the Motions for Reconsideration Were Granted ................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Adler Coleman Clearing Corp.*,
   204 B.R. 111 (Bankr. S.D.N.Y. 1997) ................................................................................ 12

*American Alliance Ins. Co. v. Eagle Ins. Co.*,
   92 F.3d 57 (2d Cir. 1996) ....................................................................................... 10, 12, 14

*In re Armstrong*,
   No. 02-4106, 2004 WL 1173161 (10th Cir. May 27, 2004) ................................................ 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 08, 2011),
   *cert. dismissed*, 132 S. Ct. 2712 (2012), *cert. den.*, 133 S. Ct. 25, 133 S. Ct. 24 (2012) .......... 3

*In re Brentwood Sec., Inc.*,
   925 F.2d 325 (9th Cir. 1991) ............................................................................................. 12

*In re Enron, Inc.*,
   325 B.R. 114 (Bankr. S.D.N.Y. 2005) ............................................................................... 10

*In re Enron, Inc.*
   326 B.R. 46 (Bankr. S.D.N.Y. 2005) ................................................................................. 14

*In re Fairpoint Commc'ns, Inc.*,
   462 B.R. 75 (Bankr. S.D.N.Y. 2012) ............................................................................. 9, 10

*Gucci America, Inc. v. Gold Center Jewelry*,
   158 F.3d 631 (2d Cir. 1998) .............................................................................................. 10

*In re JWP Info. Servs., Inc.*,
   231 B.R. 209 ........................................................................................................ 10, 12, 14

*King v. First. Am. Investigations, Inc.*,
   287 F.3d 91 (2d Cir. 2002) .................................................................................................. 8

*Leon v. Murphy*,
   988 F.2d 303 (2d Cir. 1993) .............................................................................................. 11

*Nolan v. City of Yonkers*,
   168 F.R.D. 140 (S.D.N.Y. 1996) ....................................................................................... 11

*Picard v. Harvey E. Rothenberg Revocable Trust*,
   No. 12 Civ. 5717 (JSR) (S.D.N.Y. Jan. 14, 2013), ECF No. 19 ........................................ 11

# TABLE OF AUTHORITIES
## (Continued)

                                                                                                                                Page(s)

*Picard v. Picower*,
    Adv. No. 09-01197 (BRL) (Bankr. S.D.N.Y. Jan. 13, 2011), ECF No. 43 .............................. 6

*Picard v. Trotanoy Inv. Co.*,
    Adv. No. 10-05208 (Bankr. S.D.N.Y. Apr. 4, 2012), ECF No. 53............................................ 6

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*,
    507 U.S. 380 (1993)................................................................................................................10

*Sec. Exch. Comm'n v. Madoff*,
    No. 08-10791 (S.D.N.Y. Dec. 11, 2008) ..................................................................................2

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*,
    No. 11 Civ. 3313(DAB), 2012 WL 527426 (S.D.N.Y. Feb. 16, 2012) ....................................9

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.) ..........................................................................1

*In re Simeon*,
    421 F.3d 467 (2d Cir. 2005)......................................................................................................7

*Surabian v. HSBC Bank USA*,
    No. 11-10053-DPW (D. Mass. Mar. 26, 2012), ECF No. 33 ..................................................13

*Surabian v. Picard*,
    12-civ-07999-KBF (S.D.N.Y. Jan. 28, 2013)...........................................................................7

*Surabian v. Picard*,
    13-cv-00935-JGK (S.D.N.Y. Feb. 8, 2013) .............................................................................7

*Surabian v. Residential Funding Co., LLC*,
    No. 11-1212 (1st Cir. Sept. 28, 2011), *cert. denied*, No. 11-9337 (May 22, 2012)................13

*United States v. Int'l Bhd. Of Teamsters*,
    247 F.3d 370 (2d Cir. 2001)......................................................................................................9

*United States v. Madoff*,
    No. 08-MAG-2735 (S.D.N.Y. filed Dec. 11, 2008) .................................................................2

*United States v. Madoff*,
    No. 09-CR-213(DC) (S.D.N.Y. Mar. 12, 2009), ECF No. 57 ..................................................2

*In re Worldcom, Inc.*,
    No. 02-13533 (AJG), 2006 WL 2400094 (Bankr. S.D.N.Y. Aug. 16, 2006)....................10, 11

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**STATUTES**

11 U.S.C. § 502(j) ................................................................................................................9

15 U.S.C. §§ 78aaa *et seq.* ...................................................................................................1

15 U.S.C. § 78eee(a)(3) .........................................................................................................2

15 U.S.C. § 78eee(a)(4)(A) ...................................................................................................2

15 U.S.C. § 78eee(b)(3) .........................................................................................................2

15 U.S.C. § 78eee(b)(4) .........................................................................................................2

15 U.S.C. § 78fff-2(a)(3) .......................................................................................................3

15 U.S.C. §78fff-2(b) ..........................................................................................................12

15 U.S.C. § 78fff–2(b)(2) ......................................................................................................5

**RULES**

Fed. R. Bankr. P. 9024 ..........................................................................................................9

Fed. R. Civ. P. 60(b) ................................................................................................8, 9, 10

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.*("SIPA")[1], and the estate of Bernard L. Madoff ("Madoff"), individually, by and through his undersigned counsel, respectfully objects to the motions, filed by Steven, Richard and Martin Surabian (the "Surabians"), [ECF No. 5206][2] requesting reconsideration of this Court's Order Granting Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS. [ECF No. 4779.]

## PRELIMINARY STATEMENT

The Surabians have repeatedly attempted to insert themselves into these proceedings despite the fact that there is no evidence of them ever having an account at BLMIS. These repeated attempts make the instant motion that much more absurd. Having been told by this Court in its ruling on their frivolous objections and multiple times by the Trustee in pleadings filed in response to those objections, that they do not have standing to participate because their claims have been expunged, they now argue that they did not learn of the expungement of their claims until December of 2012 and thus should be allowed to request reconsideration of the expungement order. Setting aside the fact that this simply cannot be true, there is no legal or factual basis for a reconsideration of this Court's order. The Surabians have not, in the more than ten months since the order was entered, provided any additional support for their claims. The Surabians' motions should be denied.

---

[1] For convenience, future references to SIPA shall omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main bankruptcy proceeding pending before the United States Bankruptcy Court for the Southern District of New York, captioned *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

**STATEMENT OF FACTS**

    A.    **Procedural Background**

As is well known, on December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-billion dollar securities fraud scheme in the United States District Court for the Southern District of New York ("District Court"), captioned *United States v. Madoff*, No. 08-MAG-2735 (S.D.N.Y. filed Dec. 11, 2008). Also on December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS. *Sec. Exch. Comm'n v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 11, 2008) (the "SEC Action").

On December 15, 2008, pursuant to § 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the SEC Action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to § 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

On that date, the District Court entered a protective decree, to which BLMIS consented, which, in pertinent part: (i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to § 78eee(b)(3) of SIPA; (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to § 78eee(b)(3) of SIPA; and (iii) removed the case to the Bankruptcy Court pursuant to § 78eee(b)(4) of SIPA.

On March 12, 2009, Madoff pled guilty to an eleven-count criminal information. At the March 12, 2009 plea hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *See* Plea Hr'g Tr. at 23:14–17, *United States v. Madoff*,

2

No. 09-CR-213(DC) (S.D.N.Y. Mar. 12, 2009), ECF No. 57. On June 29, 2009, Madoff was sentenced to 150 years in prison for his crimes.

### B.     The Surabians' Purported Claims

The Trustee sought and obtained a court order to implement a customer claims process in accordance with SIPA. Following an application by the Trustee dated December 21, 2008, the Bankruptcy Court entered the Claims Procedures Order. [ECF No. 12.] By the mandatory statutory bar date for filing claims under § 78fff-2(a)(3) of SIPA, the Trustee had received over 16,500 customer claims, including eight claims filed by the Surabians (collectively, the "Surabian Claims"). *See* Declaration of Amy Vanderwal, dated February 27, 2013 ("Vanderwal Decl."), Ex. A. The Trustee denied the Surabian Claims on December 8, 2009 because there was no evidence in the books and records of BLMIS that they ever invested any money, either directly or indirectly, with BLMIS. *See* Vanderwal Decl., Ex. B. On January 4, 2010, the Surabians filed an objection to the Trustee's claim determinations ("Opposition to Determination"). [ECF No. 1209.]

Thereafter, the Trustee received a letter from the Surabians, dated August 23, 2010, seeking reconsideration of the disallowance of their claims. Vanderwal Decl., Ex. C. The Trustee responded, by letter dated August 30, 2010, and informed the Surabians that they had provided no factual or legal basis on which the Trustee could reconsider the denial of their claims. Vanderwal Decl. Ex. D. Despite this correspondence, the Surabians did not provide any documentation to support their claims.

In fact, the Surabians have never produced any documentary evidence that their supposed multi-million dollar accounts ever existed or were funded by them. As set forth in the Third Omnibus Motion (as defined below), there is no record of the Surabians' investment in the BLMIS books and records. *See generally In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229,

3

232 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), *cert. den.*, 133 S. Ct. 25, 133 S. Ct. 24 (2012) (discussing BLMIS records). The Surabians' explanations for their lack of records strain credulity.

The Surabians assert in their Opposition to Determination that in spring of 2006, over two years before the BLMIS case filing, they tried to liquidate their multi-million dollar accounts but were convinced by Madoff to remain invested and, after this attempt, they no longer received statements from BLMIS. [ECF No. 1209]. Despite the millions of dollars reputedly at stake, they do not indicate any steps they took in response, in the over two and a half year time period that followed before the BLMIS liquidation commenced. In addition, the Surabians have asserted in their Opposition to Determination that their home in Lantana, Florida was broken into in the spring or summer of 2006. Though they then believed nothing was stolen other than a humidor and some cigars, they are now of the view that their BLMIS statements were also stolen "to prevent exposing Madoffs [sic] scheme to [sic] early." *Id.* at ¶ 23. The Surabians' Claims also refer to the possibility of stolen records stating "we have had several burglaries at our business and home and we now believe these papers may have been taken during these burglaries." *See* Vanderwal Decl. Ex. A.

Though they cannot produce a single account statement, they claim to know (i) that there were no sales or withdrawals related to their accounts and (ii) exactly how many shares of what securities were supposedly in each account and have attached to their Claims lists of securities held, the number of shares and the date of each transaction. It is difficult to understand how the Surabians' possess such information without any written records. *See* Vanderwal Decl., Ex. A.

    **C.**    **Expungement of the Surabians' Claims and Objections**

On March 16, 2012, the Trustee filed a motion (the "Third Omnibus Motion") seeking to have the Bankruptcy Court expunge any and all claims and objections filed by or on behalf of

4

claimants that did not invest with BLMIS or claimants that invested in entities unrelated to BLMIS, which included the Surabian Claims. [ECF No. 4732.]

On March 16, 2012, the Trustee sent to the Surabians by U.S. Mail the Trustee's Third Omnibus Motion and a notice of hearing thereon. Also on March 16, 2012, a legal assistant at Baker & Hostetler LLP filed an Affidavit of Service for the Third Omnibus Motion, which certified that the Surabians were served (the "Affidavit of Service"). [ECF No. 4733.]

On April 17, 2012, the Bankruptcy Court adjourned the hearing on the Third Omnibus Motion from Wednesday, April 18, 2012 at 10:00 a.m. to Thursday April 19, 2012 at 10:00 a.m. Because the Trustee was concerned about the Surabians travelling to New York only to find the hearing rescheduled, later that same day a legal assistant at Baker & Hostetler LLP, Oleg Bitman, contacted Mr. Steven Surabian by telephone at 6:10 p.m. to inform him that the hearing had been adjourned. Mr. Surabian thanked Mr. Bitman for the notice and stated that he would most likely not attend the hearing. Vanderwal Decl. Ex. E. On April 18, 2012, the Trustee's claims and noticing agent sent to the Surabians by U.S. Mail an Amended Notice of Adjournment of Hearing and a Notice of Agenda. [ECF Nos. 4772, 4774.] Also on April 18, 2012, the Trustee's claims and noticing agent filed Affidavits of Mailing certifying that the Surabians were served. [ECF Nos. 4775, 4776.]

Through the claims administration process described above, or in response to the Third Omnibus Motion, the Surabians could have provided the Trustee with credible information that showed that the Surabians invested directly with BLMIS or through another BLMIS account holder. They did not. As a result, on April 19, 2012, after notice and a hearing—at which the Surabians did not appear—this Court expunged the Surabians' claims and objection with prejudice pursuant to section 78fff–2(b)(2) of SIPA and the Claims Procedures Order (the

5

"Claims Order"). [ECF No. 4779.] A copy of the Claims Order was sent to the Surabians on April 23, 2012. Also, on April 24, 2012, an Affidavit of Mailing was filed by the Trustee's counsel certifying that the Surabians were served (the "Affidavit of Mailing"). [ECF No. 4792.]

### D.     The Surabians' Attempts to Insert Themselves into the BLMIS Liquidation

The Surabians have filed numerous baseless pleadings in these proceedings:

- The Surabians objected to the Trustee's Motion for an Order to Schedule Hearing on "Customer" Issue. [ECF No. 2133.] The Court overruled the objection and approved the Trustee's proposed briefing schedule. [ECF No. 2205.]

- The Surabians filed an objection to the settlement with the Estate of Jeffry M. Picower. [ECF No. 3641.] The Surabians' objection was overruled. *See Picard v. Picower*, Adv. No. 09-01197 (BRL) (Bankr. S.D.N.Y. Jan. 13, 2011), ECF No. 43.

- The Surabians filed the sole objection to the settlement between the Trustee and Trotanoy Investment Company, Ltd., et al. *See Picard v. Trotanoy Inv. Co.*, Adv. No. 10-05208 (Bankr. S.D.N.Y. Apr. 4, 2012), ECF No. 53. The objection was overruled by this Court and questioned as confusing and without basis. Hr'g Tr., 8:1, *Picard v. Trotanoy*, Adv. No. 10-05208, ECF No. 60.

- The Surabians objected to the Trustee's Motion for a Second Interim Distribution. [ECF No. 4965.] This Court overruled the Surabians' objection for lack of standing. [Hr'g Tr. 21:6, Aug. 22, 2012, ECF No. 5014.] ("Finally, the objections that are unrelated to the reserve amount are I find frivolous, and they were set forth by individuals who I've already found previously lack standing as their claims have been denied and accordingly overruled.")

- On August 1, 2012, the Surabians filed an objection to the Trustee's Motion Seeking a Scheduling Order with respect to the Time-Based Damages Issue. [ECF. No. 4952.] The Trustee filed a reply again arguing the Surabians lack standing. [ECF No. 5001.] On September 5, 2012, the Court entered a scheduling order and denied the Surabians' objection.

- On August 23, 2012, the Surabians filed a Motion to Remove Irving H. Picard as Trustee. [ECF 5003.] The Trustee objected to the Surabian's motion, again arguing that the Surabians lacked standing. [ECF No. 5019.] The Surabians replied to the Trustee's objection on September 12, 2012. [ECF No. 5028.] The Bankruptcy Court denied the motion on November 14, 2012. [ECF. No. 5080.] On November 30, 2012, the

6

- Suriabians filed a notice of appeal of that decision. [ECF No. 5136.] That appeal is now pending before Judge Koeltl. *See Surabian v. Picard*, 13-cv-00935-JGK (S.D.N.Y. Feb. 8, 2013).

- On September 19, 2012, the Surabians filed a late Notice of Appeal of Order Approving Second Interim Distribution to Customers. [ECF No. 5031]. The Trustee objected to this appeal as untimely and on January 7, 2013, the Surabians filed a Motion to File Late Appeal of the Order Approving Second Allocation of Property to the Fund of Customer Property and Authorizing Second Interim Distribution to Customers. [ECF No. 5209.] The Trustee moved to dismiss the appeal and on January 25, 2013, the appeal was dismissed as untimely by Judge Forrest of the District Court. *Surabian v. Picard*, 12-civ- 07999-KBF (S.D.N.Y. Jan. 28, 2013), ECF No. 15.

- Finally, and related to the Motions for Reconsideration and Motion to File Late Notice of Appeal addressed herein, the Surabians filed, on January 2, 2013, a motion to subpoena Bernard L. Madoff. [ECF No. 5188.]

**E.    The Surabians' Motions for Reconsideration**

The latest baseless attempts to participate in the claims process come in the form of two motions that appear to seek the same relief and are the subject of this Objection. First, a Motion to File a Late Opposition to the Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants That Did Not Invest With BLMIS or in Entities that Invested in BLMIS and Motion to File Late Notice of Appeal of Order Granting Approval, was filed by the Surabians on January 2, 2013 (the "January 2nd Motion") [ECF No. 5186] together with the related Objection to the Third Omnibus Motion (the "Objection"). [ECF No. 5187.] In connection therewith and without obtaining authorization from the court, the Surabians also filed a Notice of Appeal of the Claims Order on January 7, 2013 [ECF No. 5208], more than eight months after entry of the Claims Order.[3] In the January 2nd Motion, the Surabians assert that

---

[3] The Trustee and the Surabians have agreed that the portion of the January 2nd Motion that seeks leave to file a late notice of appeal will be addressed separately. Pursuant to a Notice of Adjournment of Briefing Schedules filed January 31, 2013, a status conference will be held on March 20, 2013 to set briefing schedules and hearing dates on this matter. [ECF No. 5212.] The notice of appeal does not affect this Court's ability to determine the instant motions. Because the Notice of Appeal was not timely, the district court lacks jurisdiction to consider the appeal and jurisdiction thus remains with this Court to resolve the instant motions. *See In re Simeon*, 421 F.3d 467 (2d Cir.

7

they should be able to file an objection to the Third Omnibus Motion because they did not receive notice of the Third Omnibus Motion or the Claims Order until December 22, 2012. As discussed in detail below, that is simply not true.

Subsequently, on January 22, 2012, the Surabians filed a Motion to Vacate Order and Judgment of Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS Regarding the Surabians' Claims [ECF No. 5206] (the "January 22nd Motion" and collectively with the January 2nd Motion, the "Reconsideration Motions"). The January 22nd Motion relies on Rule 60(b) and again asserts that the Surabians did not receive notice of the hearing on the Third Omnibus Motion. The January 22nd Motion also asserts that if Bernard Madoff is subpoenaed in accordance with the Surabians' request, his testimony would support the existence of their claims. The Trustee's investigation of the BLMIS books and records has revealed nothing that would suggest that this could be at all likely, and the Surabians have failed to provide the Trustee with any documentary evidence that they had accounts with BLMIS. Because the Reconsideration Motions appear to seek the same relief, the Trustee will address them as one. For the reasons that follow, the Motions for Reconsideration should be denied.

---

2005) (if notice of appeal is not filed timely, the appellate court does not have jurisdiction to consider it). *See also In re Armstrong*, No. 02-4106, 2004 WL 1173161 (10th Cir. May 27, 2004). In any event, a Rule 60(b) motion can be made even when an appeal is pending. *King v. First. Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002).

8

# ARGUMENT

## I.  THE MOTIONS FOR RECONSIDERATION SHOULD BE DENIED

The Surabians ask this Court to reconsider its Order expunging their Claims. There is no basis for such extraordinary relief under the existing circumstances and the Motions for Reconsideration should be denied.

Section 502(j) of the Bankruptcy Code allows a court to reconsider a previously disallowed claim based on the "equities of the case." 11 U.S.C. § 502(j); *In re Fairpoint Commc'ns, Inc.*, 462 B.R. 75, 79 (Bankr. S.D.N.Y. 2012). Motions seeking reconsideration are reviewed in accordance with Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024. *Id.*

Rule 60(b)(1)[4] provides in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect . . . .

Fed. R. Civ. P. 60(b). Because of the importance of ensuring finality in decisions of the courts, a "motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. Of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*, No. 11 Civ. 3313(DAB), 2012 WL 527426 (S.D.N.Y. Feb. 16, 2012). The Surabians have not made and cannot make any such showing.

---

[4] The January 22nd Motion relies on subsections (9) and (11) of Rule 60(b). (January 22nd Motion at 1.) Because these subsections do not exist, the Trustee has made an assumption that the Surabians intended to rely upon subsection (1). The Trustee reserves his rights in the event the Surabians intended to seek relief on a different basis.

9

The Bankruptcy Code does not define "excusable neglect," however, the Second Circuit in *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57 (2d Cir. 1996) has enunciated a three factor test to determine whether excusable neglect can be demonstrated for purposes of Rule 60(b). *See also In re Fairpoint Commc'ns, Inc.*, 462 B.R. 75; *In re Enron, Inc.*, 325 B.R. 114 (Bankr. S.D.N.Y. 2005).[5] These factors include (i) whether the failure to respond was willful; (ii) whether the movant had a legally supportable defense, and (iii) the amount of prejudice that the non-movant would incur if the court granted the motion. A consideration of each of these factors weighs heavily in favor of the denial of the Surabians' Motions for Reconsideration.

### A.    The Surabians' Failure to Respond was Willful

In the context of a failure to respond to a claims objection, the relevant consideration with regard to the first *American Alliance* factor is "whether the claimant made a conscious decision to allow a hearing to go forward without response." *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2006 WL 2400094, at *3 (Bankr. S.D.N.Y. Aug. 16, 2006). *See also In re Enron, Inc.*, 325 B.R. at 118-19 ("the fact that the movants knew that the action was pending and failed to respond, thereby allowing a default to be entered against them, was sufficient to satisfy the willful factor").

The failure to respond does not need to be in bad faith. Indeed, in *Gucci America, Inc. v. Gold Center Jewelry*, the court, after determining that the movants had notice of a pending action against them and intentionally decided not to respond and to allow a default to be entered against them, held that, while acting in good faith, the conduct was deliberate and thus the default should

---

[5] Courts in this district have also found it appropriate to apply the less lenient test promulgated in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380 (1993). *In re Fairpoint Commc'ns, Inc.*, 462 B.R. at 80, n. 6 (citing *In re JWP Info. Servs., Inc.*, 231 B.R. 209, 211–12) . Under *Pioneer*, courts consider (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *Pioneer,* 507 U.S. at 387–97. Because the Surabians cannot satisfy even the less stringent *American Alliance* test, it is not necessary to also consider the *Pioneer* factors.

10

not be reversed. 158 F.3d 631, 635 (2d Cir. 1998). The Surabians were aware of the Third Omnibus Motion and failed to act. Their assertions to the contrary are belied by the facts.

The Surabians were served, at the same addresses where they have received numerous other pleadings, on March 16, 2012. [ECF No. 4733.] The Affidavit of Service creates a "very strong" presumption that service of the Third Omnibus Motion and the related notice of hearing was, in fact, effectuated. *See, e.g.*, *Nolan v. City of Yonkers*, 168 F.R.D. 140, 144 (S.D.N.Y. 1996). A mere denial by the Surabians of receipt without any evidence to overcome this presumption is not sufficient. *Id.* at 144 ("[t]he mere denial of receipt of service . . . is insufficient to overcome the presumption of validity of the process server's affidavit"); *see also* Order, *Picard v. Harvey E. Rothenberg Revocable Trust*, No. 12 Civ. 5717 (JSR) (S.D.N.Y. Jan. 14, 2013), ECF No. 19 (affidavit that did little more than deny receipt of order is insufficient to rebut the presumption of service). Vanderwal Decl, Ex. F. The Surabians have not offered "some proof that the regular office procedure [of the Trustee] was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993).

Not only are the Surabians unable to rebut the presumption that they received notice of the Third Omnibus Motion, but Steven Surabian had a telephone conversation with a legal assistant at the Trustee's law firm who informed Mr. Surabian that the hearing had been re-scheduled by the Bankruptcy Court. Vanderwal Decl., Ex. E. Mr. Surabian replied that he was not likely to attend. *Id.* It is therefore disingenuous for the Surabians to now argue that they did not have notice of the Third Omnibus Motion. To the contrary, the Surabians "made a conscious decision to allow a hearing to go forward without response" and thus cannot now seek to alter the result. *In re Worldcom*, 2006 WL 2400094, at *3.

11

### B. The Surabians Do Not Have a Legally Supportable Defense

Even if there was any way to characterize the conduct of the Surabians as anything other than willful, their request for reconsideration of the Claims Order must be denied because they have no legally supportable defense in the underlying litigation. In determining whether a defense is meritorious, a defense does not have to be completely persuasive but does have to "give the factfinder some determination to make." *In re JWP Info. Servs.*, 231 B.R. at 213 (*citing American Alliance*, 92 F.3d at 61). Here, there is absolutely no evidence that suggests the Surabians had accounts with BLMIS and thus no determination for this court to make regarding the appropriateness of the expungement of the Surabians' claims.

The burden to demonstrate that they were customers of BLMIS who could potentially hold claims is on the Surabians. Because, under SIPA, customers receive priority status in the distribution of certain property, a potential claimant has the burden of demonstrating his or her status as a customer. *See In re Brentwood Sec., Inc.*, 925 F.2d 325, 328 (9th Cir. 1991) (claimants have the burden of proving they are customers by establishing that they entrusted cash or securities to the broker); *In re Adler Coleman Clearing Corp.*, 204 B.R. 111, 115 (Bankr. S.D.N.Y. 1997) (same). SIPA itself makes the potential claimant's burden clear as it requires that the obligations of the debtor be determined by an examination of the books and records of the debtor or be "otherwise established to the *satisfaction of the trustee*." SIPA §78fff-2(b) (emphasis added). The Surabians have inarguably failed to satisfy this burden.[6]

The Trustee has, as required by SIPA, reviewed the books and records of BLMIS and has not found any indication that the Surabians were customers of BLMIS. In addition, the Surabians have not produced a single document demonstrating that they were accountholders,

---

[6] The argument that the Surabians have repeatedly made that they were on a "customer" list was simply the result of some confusion on their part—their names were on a service list appended to a certificate of service, not in a filing by the Trustee specifying who the Trustee had identified as customers.

12

nor provided evidence satisfactory to the Trustee that securities were purchased for them, as required by SIPA §78fff-2(b)(2). Putting aside their assertion regarding a burglary, which strains credulity to say the least, the Surabians have been unable to produce account numbers, account statements, cancelled checks, tax returns showing dividends or any other of the possible documents that could serve as evidence of an account.[7]

The only evidence that the Surabians seek to provide to the Trustee and this Court is the testimony of Bernard Madoff, a convicted felon who has admitted to operating an enormous Ponzi scheme.[8] Madoff's credibility is highly questionable at best, and his testimony would be of little probative value. Further, the likelihood that Madoff's testimony would resolve this matter is extremely doubtful, given his decades-long record of dishonesty and the overwhelming evidence that the Surabians do not have claims against the estate.

Because the Surabians cannot present any evidence that would alter this Court's decision that the Surabians do not hold valid claims, there is no basis for a reconsideration of the Claims Order.[9]

---

[7] The Trustee also notes that no other purported customer of BLMIS has come forward to argue that, despite a lack of any BLMIS records, he or she was a direct account holder.

[8] The Trustee further opposes this request for the reasons contained in the Trustee's Objection to Motion of Steven, Richard and Martin Surabian to Subpoena Bernard L. Madoff dated February 28, 2013.

[9] The actions taken by the Surabians in this case appear to be part of a larger pattern of vexatious litigation not limited to this proceeding. For example, Judge Woodlock of the United States District Court, District of Massachusetts dismissed an action brought by Steven Surabian against HSBC Bank USA, NA, as trustee for Sequoia Mortgage Trust and in so doing stated:

The Plaintiffs, who have had several lessons from several judges in this Court and in the Court of Appeals about their duty to allege plausible claims in their pleadings continue here to view their allegations as infinitely mutable. They attempt to avoid their pleading responsibilities by offering implausible and unpled factual contentions in their briefing and to request the court make leaps of logic. Unless pleading responsibilities are to lose all rigor, this approach must be rejected. Accordingly, I grant Defendant's motion to dismiss.

Memorandum and Order, *Surabian v. HSBC Bank USA*, No. 11-10053-DPW (D. Mass. Mar. 26, 2012), ECF No. 33 (Vanderwal Decl., Ex. G). *See also Surabian v. Residential Funding Co., LLC, fka Residential Funding Corp.*, No. 11-1212 (1st Cir. Sept. 28, 2011), *cert. denied*, No. 11-9337 (May 22, 2012) (Vanderwal Decl. Ex. H).

13

### C. The Trustee Would be Prejudiced if the Motions for Reconsideration Were Granted

The third and final *American Alliance* factor involves a consideration of the amount of prejudice that granting the reconsideration of the order in question would cause the debtor. *American Alliance*, 92 F.3d at 59. This factor also incorporates a determination of the prejudice to the bankruptcy estate and particularly the impact on the claims process. *In re Enron Inc.*, 326 B.R. 46, 53 (Bankr. S.D.N.Y. 2005). Here, the prejudice to the BLMIS estate and the integrity of the claims process is significant and weighs against the granting of reconsideration.

In order to effectively and efficiently administer a claims process of the size in this case, the Trustee must not be put in the position of having to re-litigate motions when there is no realistic chance of a different outcome. Further, putative claimants must have the responsibility to read and respond to pleadings. This is particularly true here where the Trustee took affirmative steps to ensure these movants had actual notice of the re-scheduled hearing on their claims. Finally, the Trustee and BLIMIS customers must also have finality with respect to motions relating to the expungement of claims and their related objections. *See, e.g.*, *In re JWP Info. Servs., Inc.*, 231 B.R. at 213 (delay in filing motion was prejudicial to debtor's estate and its creditors who had a right to have their claims determined with finality). The Trustee could not accurately calculate amounts for distribution to customers with valid claims if holders of expunged claims could pop up months and years after the final determination of their claims and re-open those determinations.

Finally, the Surabians cannot overcome the fact that they have waited this long to act despite the fact that the expungement of their claims by the Claims Order has been repeatedly referenced in filings by the Trustee in response to the numerous pleadings they have filed with

14

this Court as well as by this Court. The Surabians cannot now, after so much time is passed, decide that they would like another bite at the apple.

The prejudice to the estate and the claims process weighs against any reconsideration of the Claims Order.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that this Court deny the Motions for Reconsideration.

Dated: New York, New York
February 28, 2013

Respectfully submitted,

/s David J. Sheehan
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*