**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant, | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor. | |

**TRUSTEE'S OBJECTION TO MOTION OF STEVEN, RICHARD**
**AND MARTIN SURABIAN TO SUBPOENA BERNARD L. MADOFF**

## TABLE OF CONTENTS

**Page No.**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 2

    A.    Procedural Background. ............................................................................................. 2

    B.    The Court-Ordered Claims Administration Process. .............................................. 3

    C.    Expungement of the Surabians' Claims and Objections. ........................................ 3

    D.    The Surabians' History of Frivolous Motions. ........................................................ 4

    E.    The Surabians' Efforts to Compel Madoff to Appear and Testify at
          Hearings Concerning Surabians' Status as Customers of BLMIS ......................... 5

ARGUMENT .................................................................................................................................. 6

    A.    The Motion is Procedurally Deficient. ..................................................................... 6

    B.    The Facts Weigh Decidedly Against Compelling Madoff's Appearance. ............ 7

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Atkins v. City of New York*,
 856 F. Supp. 755 (E.D.N.Y. 1994) ...............................................................................................7

*In re Bona*,
 124 B.R. 11 (S.D.N.Y 1991) .........................................................................................................7

*In re Burrell*,
 186 B.R. 230 (Bankr. E.D. Tenn. 1995) ....................................................................................8, 9

*Conti v. Laroque (In re Heinze)*,
 Adv. No. 08-09012, 2008 WL 6934492 (Bankr. M.D.N.C. Aug. 23, 2008) ...............................7

*In re Larson*,
 232 B.R. 396 (Bankr. W.D. Wis. 1999) ....................................................................................6, 7

*Mills v. Fenger*,
 No. 98CV34A, 2008 WL 2357619 (W.D.N.Y. June 4, 2008) ....................................................6

*Picard v. Picower*,
 Adv. No. 09-01197 (BRL) (Bankr. S.D.N.Y. Jan. 13, 2011) ......................................................4

*Picard v. Trotanoy Inv. Co.*,
 Adv. No. 10-05208 (Bankr. S.D.N.Y. May 16, 2012) .................................................................5

*Rucker v. Johnson (In re Rucker)*,
 458 B.R. 287 (Bankr. D.S.C. 2011) .............................................................................................6

*Sec. Exch. Comm'n v. Madoff*,
 No. 08-10791 (S.D.N.Y. Dec. 11, 2008) .....................................................................................2

*Surabian v. Picard*,
 13-cv-00935-JGK (S.D.N.Y. Feb. 8, 2013) .................................................................................5

*Surabian v. Picard*,
 No. 12 Civ. 07999 (KBF) (S.D.N.Y.) ......................................................................................5, 6

*Twitty v. Ashcroft*,
 712 F. Supp. 2d 30 (D. Conn. 2009) ............................................................................................7

*United States v. Gotti*,
 784 F. Supp. 1011 (E.D.N.Y. 1992) ............................................................................................6

*United States v. Madoff*,
    No. 08-MAG-2735 (S.D.N.Y. filed Dec. 11, 2008) ...................................................................2

*United States v. Madoff*,
    No. 09-CR-213(DC) (S.D.N.Y. Mar. 12, 2009) ......................................................................2

*In re WHET, Inc.*,
    14 B.R. 695 (Bankr. S.D.N.Y 1981)........................................................................................7

**STATUTES**

17 C.F.R. § 240.10b-5...................................................................................................................2

15 U.S.C. §§ 78aaa *et seq.* ............................................................................................................1

15 U.S.C. § 78fff-2(b)..........................................................................................................3, 8, 9

15 U.S.C. § 78eee(a)(3) .................................................................................................................2

15 U.S.C. § 78eee(a)(4)(A)............................................................................................................2

15 U.S.C. § 78eee(b)(3) .................................................................................................................2

15 U.S.C. § 78eee(b)(4) .................................................................................................................2

15 U.S.C. § 78fff-2(a)(3) ...............................................................................................................3

15 U.S.C. § 78fff–2(b)(2) ..............................................................................................................4

15 U.S.C. § 78j(b)..........................................................................................................................2

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.,* ("SIPA")[1], and the estate of Bernard L. Madoff ("Madoff"), individually, by and through his undersigned counsel, respectfully opposes the motion filed by Steven, Richard and Martin Surabian (the "Surabians") on January 2, 2013 ("Motion") [ECF No. 5188] seeking a subpoena to compel Madoff to attend and testify at hearings before this Court regarding whether the Surabians invested money with BLMIS.

## PRELIMINARY STATEMENT

The Surabians are no strangers to this Court. To the contrary, exactly the opposite is true: the Surabians have offered numerous frivolous motions and objections in these proceedings and the present Motion is no different. Despite the Court having already expunged their claims, the Surabians want the Court to revisit its prior order by compelling Madoff to attend and testify at hearings in the hope that he will testify the Surabians were customers who invested money with BLMIS. Not only is the Motion procedurally deficient, but it is unclear this Court has the authority to grant the relief requested. Even if it did, the Surabians have not demonstrated cause to grant their Motion because the testimony is not necessary or appropriate. Further, any value to be gained by Madoff's testimony is far outweighed by the burdens associated with such testimony. The Motion is simply another frivolous and untimely attempt to challenge the Court's order expunging their claims. As such, the Motion should be denied.

---

[1] For convenience, future references to SIPA shall omit "15 U.S.C."

**STATEMENT OF FACTS**

 A. **Procedural Background.**

As is well known, on December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-billion dollar securities fraud scheme in violation of § 78j(b) and 17 C.F.R. § 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"), captioned *United States v. Madoff*, No. 08-MAG-2735 (S.D.N.Y. filed Dec. 11, 2008). Also on December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS. *Sec. Exch. Comm'n v. Madoff,* No. 08-10791 (S.D.N.Y. Dec. 11, 2008) (the "SEC Action").

On December 15, 2008, pursuant to § 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the SEC Action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to § 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

On that date, the District Court entered a protective decree, to which BLMIS consented, which, in pertinent part: (i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to § 78eee(b)(3) of SIPA; (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to § 78eee(b)(3) of SIPA; and (iii) removed the case to this Court pursuant to § 78eee(b)(4) of SIPA.

On March 12, 2009, Madoff pled guilty to an eleven-count criminal information. At the March 12, 2009 plea hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *See* Plea Hr'g Tr. at 23:14–17, *United States v. Madoff*,

2

No. 09-CR-213(DC). On June 29, 2009, Madoff was sentenced to 150 years in prison for his crimes. Madoff began serving his sentence at the Butner Federal Correctional Complex in Butner, North Carolina ("Butner") on July 14, 2009, and remains incarcerated at Butner.

### B.     The Court-Ordered Claims Administration Process.

The Trustee sought and obtained a court order to implement a customer claims process in accordance with SIPA. Following an application by the Trustee dated December 21, 2008, this Court entered the Claims Procedures Order. [ECF No. 12.] By the mandatory statutory bar date for filing claims under § 78fff-2(a)(3) of SIPA, the Trustee had received over 16,500 customer claims, including eight claims timely filed by the Surabians. *See* Declaration of Amy Vanderwal, dated February 27, 2013, Ex. A. The Trustee denied the Surabians' claims on December 8, 2009 because there was no evidence in the books and records of BLMIS that they ever invested any money, either directly or indirectly, with BLMIS, nor did they "otherwise established to the satisfaction of the trustee" that they had accounts with BLMIS and that they were owed money by BLMIS. *Id.*, Ex. B; SIPA § 78fff-2(b). On January 4, 2010, the Surabians filed an objection to the Trustee's claim determinations. [ECF No. 1209.]

### C.     Expungement of the Surabians' Claims and Objections.

On March 16, 2012, the Trustee filed a motion ("Third Omnibus Motion") seeking to have this Court expunge any and all claims and objections filed by or on behalf of (i) claimants that did not invest with BLMIS, or (ii) claimants that invested in entities unrelated to BLMIS, which included the Surabians. [ECF No. 4732.] Through the claims administration process described above, or in response to the Third Omnibus Motion, the Surabians could have provided the Trustee with credible information that showed that the Surabians invested directly with BLMIS or through another BLMIS account holder. They did not. As a result, on April 19, 2012, after notice and a hearing—at which the Surabians did not appear—this Court expunged the

3

Surabians' claims and objection with prejudice pursuant to § 78fff–2(b)(2) of SIPA and the Claims Procedures Order. [ECF No. 4779.] Nine months later, on January 23, 2013, the Surabians appealed the order expunging their claims and objection. [ECF Nos. 5208, 5209.] Also, on January 2, 2013, the Surabians filed a Motion to File a Late Opposition to the Trustee's Third Omnibus Motion to Expunge Claims and Objections That Did Not Invest With BLMIS or in Entities that Invested in BLMIS and Motion to File Late Notice of Appeal of Order Granting Approval, together with the related Objection to Third Omnibus Motion. [ECF Nos. 5186, 5187.] On January 22, 2013, the Surabians filed a Motion to Vacate Order and Judgment of Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS Regarding the Surabians' Claims. [ECF No. 5206.] The Trustee is simultaneously filing an objection to those motions and also intends to seek dismissal of the appeal of the order expunging their claims and objections (the "Claims Reconsideration Objection").

        **D.**       **The Surabians' History of Frivolous Motions.**

The Surabians have filed numerous baseless objections and motions in these proceedings, even after the Court expunged their claims:

- The Surabians objected to the Trustee's Motion for an Order to Schedule Hearing on "Customer" Issue. [ECF No. 2133.] The Court overruled the objection and approved the Trustee's proposed briefing schedule. [ECF No. 2205.]

- The Surabians filed an objection to the settlement with the Estate of Jeffry M. Picower. [ECF No. 3641]. The Surabians' objection was overruled. *See Picard v. Picower*, Adv. No. 09-01197 (BRL) (Bankr. S.D.N.Y. Jan. 13, 2011), ECF No. 43.

- The Surabians filed the sole objection to the settlement between the Trustee and Trotanoy Investment Company, Ltd., et al. *See Picard v. Trotanoy Investment Company, Ltd., et al.*, Adv. No. 10-05208, (Bankr. S.D.N.Y. Apr. 4, 2012), ECF No. 53. The objection was overruled by this Court and questioned as confusing

4

and without basis. Hr'g Tr., 8:1, *Picard v. Trotanoy*, Adv. No. 10-05208, ECF No. 60.

- The Surabians objected to the Trustee's Motion for a Second Interim Distribution. [ECF No. 4965.] This Court overruled the Surabians' objection for lack of standing. [Hr'g Tr. 21:6, Aug. 22, 2012, ECF No. 5014.] ("Finally, the objections that are unrelated to the reserve amount are I find frivolous, and they were set forth by individuals who I've already found previously lack standing as their claims have been denied and accordingly overruled.")

- On August 1, 2012, the Surabians filed an objection to the Trustee's Motion Seeking a Scheduling Order with respect to the Time-Based Damages Issue. [ECF No. 4952.] The Trustee filed a reply again arguing the Surabians lack standing. [ECF No. 5001.] On September 5, 2012, the Court entered a scheduling order and denied the Surabians' objection.

- On August 23, 2012, the Surabians filed a Motion to Remove Irving H. Picard as Trustee. [ECF No. 5003.] The Trustee objected to the Surabians' motion, again arguing that the Surabians lack standing. [ECF No. 5019.] The Surabians replied to the Trustee's objection on September 12, 2012. [ECF No. 5028.] The Bankruptcy Court denied the motion on November 14, 2012. [ECF No. 5080.] On November 30, 2012, the Surabians filed a notice of appeal of that decision. [ECF No. 5136.] That appeal is now pending before Judge Koeltl. *See Surabian v. Picard*, 13-cv-00935-JGK (S.D.N.Y. Feb. 8, 2013).

- On September 19, 2012, the Surabians filed a late Notice of Appeal of Order Approving Second Interim Distribution to Customers. [ECF No. 5031.] The Trustee objected to this appeal as untimely and on January 7, 2013, the Surabians filed a Motion to File Late Appeal of the Order Approving Second Allocation of Property to the Fund of Customer Property and Authorizing Second Interim Distribution to Customers. [ECF No. 5209.] The Trustee moved to dismiss the appeal and on January 25, 2013, the appeal was dismissed as untimely by Judge Forrest of the District Court. *Surabian v. Picard*, No. 12 Civ. 07999 (KBF), ECF No. 15.

E.     **The Surabians' Efforts to Compel Madoff to Appear and Testify at Hearings Concerning Surabians' Status as Customers of BLMIS.**

The Surabians filed the present Motion on January 2, 2013 seeking a subpoena to compel Madoff to "attend and testify [at] all hearings involving the Surabians and to testify to his knowledge [regarding] the Surabians being customers of BLMIS." [ECF No. 5188.] The Motion further asks that the Court "issue a Subpoena for . . . Madoff to appear at [the

5

Bankruptcy Court] to testify as to his knowledge regarding the Surabians being customers and the amount of deposits they made to BLMIS and appear for all additional hearings involving the Surabians." *Id.* For the reasons that follow, the Motion should be denied.

## ARGUMENT

### A.    The Motion is Procedurally Deficient.

As a preliminary matter, the Motion does not satisfy the procedural requirements needed to obtain the relief the Surabians seek—to compel Madoff to attend and testify at hearings before this Court that they allegedly invested with BLMIS.

When seeking to compel a person who is incarcerated to attend hearings before a bankruptcy court, the movant must file a motion requesting the bankruptcy court to issue a writ of habeas corpus ad testificandum.[2] *See, e.g., In re Larson*, 232 B.R. 396 (Bankr. W.D. Wis. 1999). A subpoena compelling the attendance of an incarcerated individual is insufficient to grant the relief the Surabians seek. *United States v. Gotti*, 784 F. Supp. 1011, 1012 (E.D.N.Y. 1992) (explaining that a subpoena compels an individual to appear, whereas a writ of habeas corpus ad testificandum compels the custodian of the potential witness to produce the individual). The relief the Surabians seek is not available by means of a subpoena, but only by way of a writ of habeas corpus ad testificandum. Accordingly, the Motion should be denied.[3]

---

[2] Some courts have questioned whether a bankruptcy court can issue writs of habeas corpus, including writs of habeas corpus ad testificandum. *See, e.g., Rucker v. Johnson (In re Rucker)*, 458 B.R. 287 (Bankr. D.S.C. 2011). In that instance, the bankruptcy court certifies the motion to the court with authority to issue the writ. *See, e.g., Larson*, 232 B.R. at 398. Moreover, it is an open question in courts within the Second Circuit as to whether they are authorized to issue a writ of habeas corpus ad testificandum outside their territorial jurisdiction. *See, e.g., Mills v. Fenger*, No. 98CV34A, 2008 WL 2357619, at *3-4 (W.D.N.Y. June 4, 2008) (questioning authority to issue writ of habeas corpus ad testificandum where prisoner incarcerated in Florida).

[3] To the extent that the Surabians seek relief that is different than as stated in their Motion, the Trustee reserves all rights to request a supplement to this brief or to file a sur-reply.

6

B.      **The Facts Weigh Decidedly Against Compelling Madoff's Appearance.**

Even if the Motion satisfied the necessary procedural requirements, the Surabians have not met their burden of establishing the Court should grant a writ of habeas corpus ad testificandum.

A movant seeking a habeas corpus writ bears the burden to establish it is entitled to such relief. *In re Bona*, 124 B.R. 11, 16 (S.D.N.Y 1991). The decision to issue a writ of habeas corpus ad testificandum is committed to the court's "sound discretion." *Atkins v. City of New York*, 856 F. Supp. 755, 757 (E.D.N.Y. 1994); *Twitty v. Ashcroft*, 712 F. Supp. 2d 30, 32 (D. Conn. 2009). When deciding whether to issue a writ, courts consider: (1) whether the prisoner's presence will "substantially further" the case's resolution; (2) the expenses required for the prisoner's transportation and safe keeping; and (3) if the suit can be stayed until the prisoner is released without prejudice. *In re WHET, Inc.*, 14 B.R. 695, 697 n.10 (Bankr. S.D.N.Y 1981) (*citing Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977)); *Atkins*, 856 F. Supp. at 757. Courts also consider: (1) the interests of the inmate presenting testimony in person rather than by deposition; (2) whether the matter at issue is substantial; and (3) potential security risks. *Larson*, 232 B.R. at 398-99 (*citing Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976)).

No single factor is dispositive. *Id.* at 399. The key question courts address is not simply whether the prisoner's testimony would be relevant, but rather if that testimony would be necessary, and whether it would advance the movant's case. *Atkins*, 856 F. Supp. at 758. Resolution of this question depends on whether the probative value of the testimony justifies the expense and security risk of transporting the prisoner. *Id.* Courts can consider other means by which to introduce the prisoner's testimony which do not require the prisoner's physical presence, including telephonic appearances. *Conti v. Laroque (In re Heinze)*, Adv. No. 08-

7

09012, 2008 WL 6934492, at *2 (Bankr. M.D.N.C. Aug. 23, 2008). A writ should be issued only when the prisoner's physical presence will contribute significantly to a fair adjudication of the issue at hand. *In re Burrell*, 186 B.R. 230, 233 (Bankr. E.D. Tenn. 1995).

Here, all the factors weigh against issuing the writ. The likelihood of Madoff's in-court testimony resolving this issue is slim and his testimony would have little probative value. The Surabians have known since December 2009 that the Trustee disputed their claim because there is no evidence in the books and records of BLMIS they ever invested in BLMIS. And yet during the more than three years that have elapsed, the Surabians have failed to produce any evidence demonstrating they ever had a customer relationship with BLMIS. SIPA § 78fff-2(b). The Surabians failed to explain how much and how they invested with BLMIS. They failed to provide bank records from any financial institutions that demonstrate the flow of their funds, cancelled checks, receipts from BLMIS, trade confirmations, tax returns, or any record whatsoever. Without burdening the Court, the Trustee incorporates each of the arguments from the Third Omnibus Motion and the Claims Reconsideration Objection that the Surabians have otherwise failed to properly show the existence of a customer relationship at any time. *See* Third Omnibus Motion, ECF No. 4732, and Claims Reconsideration Objection (filed simultaneously herewith).

Yet the Surabians argue at this late date that Madoff's testimony will substantiate their claim against the estate. This is pure speculation. The Surabians have no knowledge as to what Madoff's testimony will be. Madoff's credibility is highly questionable, and his testimony would be of little probative value where the books and records of BLMIS conclusively establish that the Surabians did not invest with BLMIS. Further, the Surabians have alleged that Madoff orchestrated the theft of their BLMIS statements during a break in at their home in Lantana,

8

Florida "to prevent exposing Madoffs [sic] scheme to [sic] early." [ECF No. 1209.] Not only have no others made such an outlandish allegation, but even if it were true, it only serves to weaken Madoff's credibility further, if possible. Nonetheless, even if Madoff were to testify favorably for the Surabians, given his lack of credibility and without corroborating evidence of any kind, this would not be enough to meet the Surabians' burden of proving customer status. *See* SIPA §78fff-2(b) (SIPA requires that the obligations of the debtor be determined by an examination of the books and records of the debtor or be "otherwise established to the satisfaction of the trustee.").

Moreover, in deciding whether to enter a writ of habeas corpus ad testificandum, a court weighs the expense and potential harm of compelling a prisoner to attend a hearing. *See Burrell*, 186 B.R. at 233–34 (benefit gained by debtor's physical presence outweighed by expense and danger of transporting debtor). The public attention that Madoff would attract coming before this Court is all but certain. Providing safe transportation and housing of a high-profile criminal such as Madoff would require the expenditure of significant financial and personnel resources. Given the low probative value of Madoff's testimony without any independent verifiable corroborating evidence, his presence is far outweighed by the expense and difficulties of transporting him from Butner to this Court.

The Surabians have not met their burden to demonstrate Madoff's testimony before this Court is necessary or appropriate. As indicated above, Madoff's testimony would not be credible, it would have little probative value, and would not resolve this issue. For these reasons, the Motion should be denied.

## **CONCLUSION**

For these reasons, the Trustee respectfully requests that this Court deny the Surabians'

Motion.

Dated: New York, New York  
February 28, 2013

Respectfully submitted,

/s/ David J. Sheehan  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Jorian L. Rose  
Email: jrose@bakerlaw.com  
Seanna Brown  
Email: sbrown@bakerlaw.com

Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

Dena S. Kessler  
Baker & Hostetler LLP  
1050 Connecticut Avenue NW  
Suite 1100  
Washington, DC 20036  
Telephone: (202) 861-1600  
Facsimile: (202) 861-1783

*Of counsel*