Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Adv. Case No. 08-01789(BRL)

4  - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5

6  SECURITIES INVESTOR PROTECTION CORPORATION,

7            Plaintiff,

8         v.

9  BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, ET AL.,

10           Defendants.

11 - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12

13           U.S. Bankruptcy Court

14           One Bowling Green

15           New York, New York

16

17           March 13, 2013

18           10:13 AM

19

20 B E F O R E :

21 HON BURTON R. LIFLAND

22 U.S. BANKRUPTCY JUDGE

23

24 ECR OPERATOR: S. HIBBERT

25

1  Hearing re:  Adversary proceeding: 08-01789-brl Securities
2  Investor Protection Corporation v. Bernard L. Madoff
3  Investment Securities, LLC, et al., (cc-5230) Motion for an
4  Order Approving Third Allocation of Property to the Fund of
5  Customer Property and Authorizing Third Interim Distribution
6  to Customers

25  Transcribed by:  Jamie Gallagher

```
 1  APPEARANCES:
 2  SECURITIES INVESTOR PROTECTION CORPORATION
 3        General Counsel for SIPC
 4        805 15th Street, N.W.
 5        Suite 800
 6        Washington, DC 20005
 7
 8  BY:   KEVIN H. BELL, ESQ.
 9
10  BAKER HOSTETLER
11        Attorney for
12        45 Rockefeller Plaza
13        New York, NY 10111
14
15  BY:   DAVID J. SHEEHAN, ESQ.
16
17
18
19
20
21
22
23
24
25
```

1           P R O C E E D I N G S

2           THE COURT: Be seated, please.

3           THE CLERK: SIPC v. BMIS.

4           MR. SHEEHAN: Good morning, Your Honor.

5           THE COURT: Good morning.

6           MR. SHEEHAN: David Sheehan, Baker Hostetler for

7    the trustee, Irving Picard. Excuse me.

8           MR. BELL: Kevin Bell for the Securities

9    Investment Protection Corporation.

10          MR. SHEEHAN: Your Honor, this is a fairly

11   momentous day in the continuing history, I think, of the

12   Madoff case. We are here today on the return date of the

13   Trustee's motion for approval by this Court of his third

14   interim allocation distribution to customers with allowed

15   claims.

16          The history is pretty well laid out in the papers

17   that we submitted to Your Honor. There's only a few things

18   that I'd like to highlight, and to also note that we did

19   receive on item that could be characterized as an objection,

20   but I think that would be inappropriate. I think Mr. Gross

21   is basically complaining, as he has many times, to the fact

22   that his claim was denied. And in that form, he has

23   suggested that this distribution should not take place.

24   It's not directed at, and we had filed papers in response to

25   that.

1           THE COURT: Is Mr. Gross here today? No,
2    apparently not.
3           MR. SHEEHAN: So, other than that, I have no
4    comment and I know Your Honor sill do whatever is necessary
5    with regard to that objection. I don't see how it in any
6    way could withstand scrutiny in terms of what we're trying
7    to accomplish here today.
8           But in any event, what we have before Your Honor
9    is, as I say, the third interim allocation. We've had two
10   prior allocations. As a result of today's allocation, we
11   will be distributing -- the trustee will be distributing
12   over $500 million.
13          I think it's important to note that that is as a
14   result of a settlement that Your Honor approved some months
15   ago, the Tremont settlement for over a billion dollars, but
16   through various appeals, we could not make a distribution of
17   that until now. Those appeals have all been resolved.
18   We've added that to the amount of the numerator that we
19   could then distribute. As we lay out in great detail, Your
20   Honor knows that we have in fact collected $9.3 billion and
21   to date have distributed well over 4 billion of that through
22   two interim distributions.
23          Today will take us to over $5.4 billion in terms
24   of distributions to customers out of that 9.3.
25          The reason, as Your Honor knows from our papers

1  and from the statute, is that we cannot distribute all the
2  funds, not only because there are certain litigations that
3  are outstanding, we believe the appeal is yet to be fully
4  finalized.  There are -- although we did have that approved
5  by the Second Circuit at the time, within which to take sure
6  (indiscernible - 00:02:51) has not run, so we did not
7  include that.
8           There are other types of settlements like that
9  that are out there and other litigations deemed determined
10 as we explained, where we have a 502(d) claim against many
11 of the bad faith claimants.
12          THE COURT:  Assuming that cert. is denied by the
13 Supreme Court, does this allegation comprehend the addition
14 of what's being held up based upon the request for cert?  Or
15 do you have to come back and include a distribution in the
16 -- a supplemental application?
17          MR. SHEEHAN:  We're going -- we did not include
18 it, Your Honor, because we have other matters that are also
19 pending that we anticipate fully that there will be a second
20 interim distribution of almost equal, if not exceeding the
21 magnitude of today's.
22          And we thought that rather than giving them out in
23 small parcels, we would give them out in more substantial
24 fashion.  So, that's what we've done with that.  So, it's
25 not included in today's application.  It will be included

1   shortly in another application that we'll make to Your
2   Honor, which will include that as well as other amounts that
3   we've -- will be available for the trustee to distribute, as
4   I say, as much as we've done today, if not exceeding that
5   amount.  So, we've made that decision, Your Honor.
6            If Your Honor thinks that we should make an
7   amendment to this allocation and bring it forward faster, we
8   can certainly do that.  It's probably at about -- adding to
9   the distribution, which in this case is a lot of money.  And
10  we understand that.  Today is about 5 percent.  $500 million
11  is -- it's about a penny a hundred million.
12           In any event, Your Honor, just a decision we made
13  in connection with other things that are happening when it
14  was happening, Your Honor, so that's what we did.
15           We also were concerned quite frankly about
16  receiving objection from someone who is handling that
17  (indiscernible - 00:04:41), who's had a history of objecting
18  in these proceedings.  And I'm not suggested that Your Honor
19  would have countenanced that objection, but we wanted to get
20  this through as quickly as possible to get this $500 million
21  out.  And we made that decision as well.
22           So, in any event, Your Honor, where we are today
23  is as I said, we have before Your Honor an application for a
24  third interim allocation.  That will bring the full
25  allocation to date, distributions I should say, to $5.4

1  billion.  We will have fully satisfied over 50 percent of
2  the allowed claims.
3          We have -- I think Your Honor demonstrated that
4  this is only the beginning.  Even though we're five years
5  into the case, we've only collected $9.3 billion out of the
6  17.  We believe over the next 18 months we will collect many
7  billions more of that through litigation, as well as through
8  settlements, and there will be more distributions of this
9  nature forthcoming, not only, as I say, in the next
10 succeeding months of this year, but certainly over the next
11 18 months as well.
12         So, as I said, a momentous day, I think, in the
13 day of the history of this case.  And I would ask that Your
14 Honor approve the order that we've submitted to you.
15         THE COURT:  Does anyone want to be heard?
16         MR. BELL:  Your Honor, I'm -- Kevin Bell on behalf
17 of SIPC.
18         This allocation's -- and interim distribution's in
19 compliance not only with the provisions of SIPA, but it's
20 purposes.  I would note its purpose at 78, triple F,
21 (a)(1)(B) and its provision at triple F-2(c)(1)(B) and (C).
22         This allocation's in constinence [sic] with our
23 prior discussions with the Court on the first two
24 allocations.  SIPC's goal always is to get to 100 percent.
25 This will get to about 43 cents on the dollar, more than

1    1,106 accounts with allowed claims will be fully satisfied,

2    which is more than 50 percent as Mr. Sheehan said.

3            SIPC urges the Court to approve this motion to

4    enable the trustee to get another almost five cents in the

5    hands of the victims who have claims that have been allowed.

6            Thank you, Your Honor.

7            THE COURT:  Does anyone else want to be heard?

8            Well, with respect at first to the objection

9    that's been filed.  To the extent it's an objection, it is

10   apparently more in the nature of a reaction to the claims

11   adjudication process and the venue for the determination of

12   the gross claims still remains open to them.

13           There's been a determination, but the proceedings

14   and the procedures exist.  They've appeared, as I understand

15   it, in the District Court.

16           So, suffice it to say that the document that's

17   filed is really misplaced and perhaps is misfired as it

18   inappropriately seeks to object to the distribution to a

19   large, large number of victims.  And as an aside, some of

20   the victims have already sold off to claims purchasers.  So,

21   indeed there is a variant interest in the distribution here.

22           I do commend to anybody who's really interested to

23   take a look at the motion papers and the description and the

24   summary of this request for an allocation -- this

25   allocation, because it contains a lot of the history and the

1    basis for going forward that's just been described by Mr.

2    Sheehan here this morning.

3            And it leads me to ask a question with respect to

4    some of the items contained in the motion, which is really a

5    report -- a condition report with respect to the

6    administration of the Madoff estate.

7            And that is, for purposes of distribution, just

8    take for example distributees who receive funds out of

9    forfeiture funds that are in the hands of clarities, and

10   that will be made available to -- for distribution, which I

11   would imagine include distributees that have also filed

12   claims here and have a potential for recovery here under

13   claims allowance allocation.

14           Is there the intention, as it's expressed here on

15   page 23, of applying a hodgepodge rule, which means you

16   can't get more than you claimed for if you get funds coming

17   to you from other estates or from other distributions?

18           MR. SHEEHAN:  Yes, Your Honor.  As we do lay out

19   in the application, what we have done since the appointment

20   of Mr. Greedan (ph) as special master, the trustee and his

21   counsel met with him on more than one occasion.  I can state

22   for the record that the trustee has supplied a great deal of

23   information to Mr. Greedan to assist him in this endeavor.

24           THE COURT:  I just used that as one example, but

25   my thinking goes beyond that.

```
 1              MR. SHEEHAN:  Well --
 2              THE COURT:  There are claimants who have brought
 3    third party actions.  It's quite notorious about the
 4    litigation that's ongoing with respect to the potential for
 5    distributions and those third party actions.  And many of
 6    those distributees, I imagine, are also claimants.
 7              Is the hodgepodge rule going to apply there?
 8              MR. SHEEHAN:  Well, yes it will, Your Honor.  As a
 9    matter of fact, recently there was a settlement that's taken
10    place where the Fairfield pension settled the case in the
11    Maxim (ph) case, which is currently pending and is on appeal
12    in the Second Circuit.  We are fully engaged with counsel
13    there.  We have not taken the position of enjoining that.
14    The amounts are too insubstantial.  Again, trustee's
15    discretion.
16              What we will do, however, is take that -- those
17    funds into account when we do ultimately make a distribution
18    to them because they are deemed determined claimant, that we
19    believe eventually we will settle with them.
20              But they're part and parcel of the whole Maxim
21    litigation.  So, these things get a bit complicated, but we
22    do exercise, as I say, the trustee's discretion not to
23    enjoin everything that's going on out there.  As Your Honor
24    well knows, there are literally dozens and dozens of
25    litigations.  We're not going to enjoin all of those, but we
```

1   are going to take into account that moneys have been

2   obtained by those individuals and to the extent that we can

3   determine that and make an appropriate adjustment, which we

4   will in cooperation with counsel for those claimants, those

5   adjustments will be made so that people -- the hodgepodge

6   rule will apply.  We will not have people receiving 110 or

7   120 percent of the claim.

8           THE COURT:  Well that may be news for some claims

9   purchasers.

10          MR. SHEEHAN:  Pardon, Your Honor?

11          THE COURT:  That may be news to come claims

12  purchasers.

13          MR. SHEEHAN:  Well, you know -- as Your Honor

14  knows, and I'm very happy to state this in open court that

15  they're on their own.  That's up to them to protect

16  themselves.  That's not the trustee's job or anyone else's.

17  If they haven't saw through all of the ramifications of

18  what's occurring in this courtroom and paid attention to it,

19  well, that's unfortunately their lookout so to speak, it's

20  not ours.

21          THE COURT:  Very well.  Does anyone else want to

22  be heard?

23          There's clear or clarient [sic] cry out for the

24  Court to move quickly with this distribution, which does

25  help the victims and those who are allied with the victims.

1              Your application is granted.  The Gross filing,
2    which if you want to consider it as an objection, is
3    overruled.
4              MR. SHEEHAN:  Thank you, Your Honor.  Can I submit
5    the order?
6              THE COURT:  Yes.  I have approved the order.
7              MR. SHEEHAN:  Thank you very much, Your Honor.
8              THE COURT:  Thank you.
9              MR. SHEEHAN:  Have a good day.
10         (Whereupon these proceedings were concluded at 10:26
11   A.M.)

1                            I N D E X

2                            RULINGS

3                                                  Page       Line

4    Motion for an Order Approving Third            13          1

5    Allocation of Property to the Fund of

6    Customer Property and Authorizing Third

7    Interim Distribution to Customers

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1        C E R T I F I C A T I O N
2
3    I, Jamie Gallagher, certify that the foregoing transcript is
4    a true and accurate record of the proceedings.
5
6
7
8
9
     Veritext
10
     200 Old Country Road
11
     Suite 580
12
     Mineola, NY 11501
13
     Date:  March 14, 2013
14
15
16
17
18
19
20
21
22
23
24
25