**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

-------------------------------------------------------X

SECURITIES INVESTOR PROTECTION CORPORATION,

Plaintiff,

v.

BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

Defendant.

-------------------------------------------------------X

In re:

BERNARD L. MADOFF,

Debtor.

-------------------------------------------------------X

SIPA LIQUIDATION

No. 08-01789 (BRL)

(Substantively Consolidated)

APPEARANCES:

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
By: David J. Sheehan
Jorian L. Rose
Seanna R. Brown
Amy Vanderwal
Edward J. Jacobs

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

SECURITIES INVESTOR PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
By: Kevin H. Bell
Nathanael S. Kelley

STEVEN SURABIAN, *pro se*
RICHARD SURABIAN, *pro se*
MARTIN SURABIAN, *pro se*
P.O. Box 397
W. Hyannisport, MA 02672
Telephone: (508) 688-4613

**MEMORANDUM DECISION AND ORDER DENYING SURABIANS' (I) VACATE MOTION, (II) LATE OPPOSITION MOTION, (III) MADOFF SUBPOENA MOTION, AND (IV) RECORDS SUBPOENA MOTION**

Before the Court are four motions (the "Motions") of Martin M. Surabian, Richard Surabian, and Steven Surabian (the "Surabians"), which they have combined and styled with questionable interrelatedness, to: (I) Vacate Order and Judgment of Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS Regarding the Surabians' Claims Mentioned in Trustee's Exhibit A (the "Vacate Motion") (Dkt. No. 5206); (II) File Late Opposition to Trustee's Third Omnibus Motion to Expunge Claime [sic] and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS (the "Late Opposition Motion") (Dkt. No. 5186); (III) Subpoena Bernard L. Madoff (the "Madoff Subpoena Motion") (Dkt. No. 5188); and (IV) Subpoena the Books and Records of BLMIS and Bernard L. Madoff and to Subpoena the Records of SIPC and the Trustee Concerning the Customers and Payments to Customers and How They Were Determined to be Customers of BLMIS (the "Records Subpoena Motion") (Dkt. No. 5290).

## PRELIMINARY STATEMENT

The Surabians are familiar parties in this Court. Indeed, they have injected themselves into the Madoff proceeding numerous times, filing many frivolous pleadings,[1] often with scant or no legal support.[2] For example, in the past three years, the Surabians have filed, among other pleadings, five objections to the Trustee's motions, none of which involved the Surabians' alleged customer claims and all of which have been overruled. *See* Exhibit A, Tabs 1–5.

To date, there is absolutely no probative evidence emerging from BLMIS's books and records that the Surabians ever invested with Madoff, nor have the Surabians themselves ever offered any documentation evidencing their alleged customer status, despite numerous opportunities to do so.[3] Still, even without any documentation in hand,[4] the Surabians appear to know (i) that there were no sales or withdrawals related to their BLMIS accounts and (ii) exactly how many shares of what securities were supposedly in each account and have attached to their Claims lists of securities held, the number of shares and the date of each transaction.[5] *See* Declaration of Amy Vanderwal in Support of Trustee's Objection [hereinafter "Vanderwal Decl."] (Dkt. No. 5252), Ex. A. It is implausible that the Surabians are in possession of such information without any written records or documentation.

---

[1] Contrary to the Surabians' contentions, this Court has previously held their pleadings to be "frivolous," without "grounds," "confusing," and "incomprehensible." *See* Hr'g Tr. (Dkt. No. 5014), 21:7; Hr'g Tr. (Dkt. No. 5115), 15:8; *Picard v. Trotanoy*, Adv. No. 10-05208, Hr'g Tr. (Dkt. No. 60), 8:1, 8.

[2] For a list of the pleadings filed by the Surabians in this Court, see Trustee's Objection to Motion to Reconsider Order Expunging Claims and Objections of Claimants That Did Not Invest With BLMIS Or Entities That Invested in BLMIS [hereinafter "Trustee's Objection to Reconsideration Motion"] (Dkt. No. 5250), pp. 6–7, and incorporated and attached hereto as Exhibit A.

[3] The Trustee notes in its opposition that no other purported customer of BLMIS has argued that, despite a lack of any BLMIS records, he or she was nevertheless a customer of BLMIS. *See* Trustee's Objection to Reconsideration Motion, p. 13 n.7.

[4] Here, one is reminded of the expression "the emperor has no clothes."

[5] At the hearing held on April 25, 2013, the Trustee pointed to the temporal nonexistence of many of the listed securities.

Although the Court sympathizes with any party's status as a *pro se* litigant, it is unwilling to waste further time and resources where, over a substantial period of time and numerous opportunities given, the Surabians have failed to support their bare allegations with even a shred of documentary evidence.[6] For the reasons set forth below and at oral argument, the Surabians' self-styled Vacate Motion, Late Opposition Motion, Madoff Subpoena Motion and Records Subpoena Motion are all hereby DENIED.

**BACKGROUND**

SIPA commenced the instant liquidation proceedings after it was revealed, in December of 2008, that Madoff was operating a Ponzi scheme through his investment advisory company, Bernard L. Madoff Investment Securities ("BLMIS"). Irving Picard was subsequently appointed as the trustee (the "Trustee") for BLMIS and, in that capacity, has received over 16,500 alleged customer claims, including eight filed by the Surabians.[7] In December of 2009, the Trustee denied the Surabians' claims, as there was no evidence of their investment with BLMIS in its books and records. *See* Vanderwal Decl., Ex. B. In response, the Surabians sent a letter to the Trustee, seeking reconsideration of his denial, *see* Vanderwal Decl., Ex. C., and filed an objection with the Court regarding the same, *see* Opposition to Trustee's Determination of Claim (Dkt. No. 1209). In August of 2010, the Trustee, by letter, repeated his earlier finding, concluding that there was no basis to reconsider, as the Surabians had yet to provide any documentation of investment with BLMIS. *See* Vanderwal Decl., Ex. D.

---

[6] In another bootstrap endeavor, the Surabians challenge the Trustee's and SIPC's claim that they provided no evidence of their investment accounts by now quixotically asserting that they supplied that evidence by confirming each other's accounts. *See* Surabians' Reply Brief in Support of Motion to Reconsider and Motion to Subpoena Bernard L. Madoff [hereinafter "Surabian Reply"] (Dkt. No. 5287), p. 3.

[7] Claim Numbers 001895; 001896; 001897; 001802; 001897; 001949; 002185; 002186; and 003367. *See* Vanderwal Decl., Ex. A.

On March 16, 2012, the Trustee filed a motion with the Court to expunge all claims and objections filed by or on behalf of claimants that did not invest with BLMIS or claimants that invested in entities unrelated to BLMIS (the "Expungement Motion") (Dkt. No. 4732). This motion sought to expunge the Surabians' claims, among others. *See id.* at Ex. A. The Trustee sent to the Surabians, via U.S. Mail, notice of hearing for the Expungement Motion (the "Expungement Hearing"), scheduled for April 18, 2012. *See* Affidavit of Service (Dkt. No. 4733). Subsequently, the hearing was adjourned one day, and the Trustee served on the Surabians the notice of the adjournment of the Expungement Hearing. *See* Amended Notice of Adjournment of Hearing (Dkt. No. 4771); Affidavit of Service (Dkt. No. 4772). In addition, on April 17, 2012, the Trustee alleges, and the Surabians do not deny, that one of the Trustee's legal assistants, Oleg Bitman, called and spoke with Steven Surabian at 6:10 p.m. to inform him of the Expungement Hearing's adjournment to April 19, 2012. *See* Vanderwal Decl., Ex. E. The Surabians did not object to the Expungement Motion, nor did they attend the hearing. The Court granted the Expungement Motion and entered an order (the "Expungement Order") (Dkt. No. 4779) expunging, among others, the Surabians' claims and objection with prejudice pursuant to section 78fff-2(b)(2) of SIPA.

On August 23, 2012, the Surabians filed a motion to remove Picard as Trustee (the "Removal Motion") *(*Dkt. No. 5003), which is currently on appeal before Judge Koeltl in the district court, *In re Bernard L. Madoff*, 13-CV-00935 (S.D.N.Y. 2012). On September 4, 2012, the Trustee objected to the Surabians' Removal Motion, arguing that the Surabians lacked standing as a result of the Expungement Order. *See* Trustee's Objection to Motion to Remove Irving H. Picard as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff (Dkt. No. 5019), ¶ 6. On September

12, 2012, the Surabians, in their reply, claimed that they never received notice of either the Expungement Motion or Order. *See* Reply to Trustee's Objection to Motion to Remove Irving H. Picard as Trustee Substantially Consolodated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff [hereinafter "Removal Motion Reply"] (Dkt. No. 5028), ¶ 4. At a hearing held on November 15, 2012, this Court denied the Removal Motion, finding that there was no cause shown indicating the Trustee's incompetence or prejudice. *See* Removal Motion Transcript (Dkt. No. 5115), 15:11–14; Order Denying Motion to Remove Irving H. Picard as Trustee Substantially Consolodated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff (Dkt. No. 5080).

On January 2, 2013, the Surabians filed the Late Opposition Motion, as well as the Madoff Subpoena Motion. Then, on January 22, 2013, the Surabians filed the Vacate Motion. Finally, on March 22, 2013, the Surabians filed the Records Subpoena motion. A hearing was held on these four motions on April 25, 2013.[8]

## DISCUSSION

### I. Motion to Vacate and Late Objection Motion

In their Motion to Vacate and Late Opposition Motion, the Surabians request that this Court vacate its Expungement Order and permit the Surabians to file a late opposition to the Trustee's Expungement Motion pursuant to Rules 60(b)(9) and 60(b)(11). This Court treats these motions as seeking reconsideration of the Expungement Order under Rule 60(b)(1), because Rules 60(b)(9) and 60(b)(11) do not exist, and the movants' status as *pro se* litigants

[8] On January 7, 2013, the Surabians also filed a Notice of Appeal of the Expungement Order [hereinafter the "Notice of Appeal"] (Dkt. No. 5208). Although the Surabians have filed the Notice of Appeal, motions made under Federal Rule of Civil Procedure ("Rule") 60(b) can be heard even where an appeal is pending. *See King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002) ("This Circuit allows a [lower] court . . . to entertain and *deny* the rule 60(b) motion without the [appellate] court's permission") (internal quotations omitted); *see also* Fed. R. Bankr. P. 8002(b) (stating a notice of appeal filed before or during pendency of motion to alter or amend the judgment does not become effective until the entry of the order disposing of the last outstanding motion).

permits the Court to construe their pleadings as raising "the strongest arguments that they suggest." *See In re Enron Corp.*, 352 B.R. 363, 366 (Bankr. S.D.N.Y. 2006).

Motions to reconsider are reviewed in accordance with Rule 60(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9024. *See In re Fairpoint Commc'ns, Inc.*, 462 B.R. 75, 79 (Bankr. S.D.N.Y. 2012). Rule 60(b) motions are "generally not favored" and are "properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *In re Journal Register Co.*, No. 09-10769, 2010 WL 5376278, at *2 (Bankr. S.D.N.Y. Dec. 23, 2010).

Rule 60(b)(1) provides that a court may relieve a party from an order based on "mistake, inadvertence, surprise, or excusable neglect." Although the Bankruptcy Code does not define "excusable neglect," the Second Circuit in *American Alliance Insurance Co. v. Eagle Insurance Co.* developed a three factor test to determine whether excusable neglect exists under Rule 60(b)(1).[9] 92 F.3d 57 (2d Cir. 1996). In particular, the *American Alliance* test analyzes whether a movant may be relieved from an order by weighing (i) whether the movant's failure to respond was willful, (ii) whether the movant has a meritorious defense, and (iii) "the degree of prejudice that the non-movant would suffer if the court granted the motion." *In re Journal Register*, 2010 WL 5376278, at *2. Each factor will be analyzed in turn.

[9] Courts in the Second Circuit have also applied a more stringent test for interpreting excusable neglect, announced in *Pioneer Investment Services Co. v. Brunswick Associates Ltd.*, 507 U.S. 380 (1993). *See, e.g.*, *In re Lehman Bros. Holding Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010); *see also In re JWP Info. Servs., Inc.*, 231 B.R. 209, 211 (Bankr. S.D.N.Y. 1999) (stating the *American Alliance* test is "more lenient" than the *Pioneer* test). Under the *Pioneer* standard, courts consider "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. In any event, since the *Pioneer* standard is more stringent and the Surabians' motions fail under *American Alliance*, then their motions also clearly fail under *Pioneer*. *See infra* Part I, §§ 1–3.

*1. Willfulness*

To find willfulness, the Court must find that the movant's failure to act was not a result of negligence or carelessness. *See American Alliance*, 92 F.3d at 59–60; *In re FairPoint Commc'ns*, 462 B.R. at 80. Indeed, the willfulness standard necessitates a finding akin to the movant's "cognitive decision to allow a hearing on its Claim to proceed and the Order to be entered without its response," although the failure to respond need not be in bad faith. *In re Enron, Inc.*, 325 B.R. 114, 119 (Bankr. S.D.N.Y. 2005). The Surabians claim that they did not act willfully by failing to object to the Expungement Motion or attend the Expungement Hearing because they did not receive the Expungement Motion or Order until December 22, 2012, eight months after the Expungement Order was entered by this Court.

The evidence, however, points to the Surabians' willful decision to abstain from participating in the adjudication of the Expungement Motion. The Surabians concede that they received notice of the Expungement Hearing to be held on April 19, 2012. In particular, the Surabians do not contest that a legal assistant from the Trustee's office called and informed Steven Surabian directly that the Expungement Hearing was to take place on April 19, 2012, having been adjourned from the day before, and that Mr. Surabian replied that he would likely not attend the hearing. Although the Surabians now claim that they were unaware at that time the Expungement Motion targeted them, they chose not to follow up, at the least, on Mr. Bitman's phone call. *Cf. In re Bernard L. Madoff*, No. 12-CV-7999 (S.D.N.Y. Jan. 25, 2013) (Dkt. No. 15), p. 3 (stating that the Surabians, even though they are proceeding *pro se*, "are charged with reviewing the docket and understanding the Federal Rules of Bankruptcy Procedure"). For this reason, the Court finds that the Surabians' failure to participate in the adjudication of the Expungement Motion was willful.

Moreover, although the Surabians argue that they did not receive the Expungement Motion or Order until December of 2012, the Surabians indisputably received notice of these pleadings in connection with their Removal Motion. Indeed, the Surabians' reply filed in September of 2012 (three months before the alleged December enlightenment) reflects their awareness of the Expungement Order. *See* Removal Motion Reply, ¶ 4. Still, it was not until more than three months later, in January of 2013, that the Surabians filed the instant motions. When parties seek reconsideration of an order, they "should file a motion as soon as they discover that grounds may exist to warrant reconsideration." *In re Barquet Group*, 477 B.R. at 463. A delay of at least three months in filing is inexcusable, *see id.* (finding that a delay of over two months, "while likely not the result of bad faith, should have been minimized"), and illustrates an "indifference to bankruptcy procedures," *In re JWP Info. Servs.*, 231 B.R. at 213.

*2. Meritorious Defense*

Next, the *American Alliance* test inquires whether the movant has a legally supportable or meritorious defense. *See In re Barquet Group*, 477 B.R. at 463. A meritorious defense is one that "is good at law so as to give the factfinder some determination to make," although it need not be "ultimately persuasive at this stage." *American Alliance*, 92 F.3d at 61 (quotation omitted); *In re JWP Info. Servs*, 231 B.R. at 213; *see, e.g.*, *American Alliance,* 92 F.3d at 61 (finding insurer's assertion that a policy had been cancelled to be sufficient as a meritorious defense where insurer sought rule 60(b) relief from a default judgment in connection with that policy).

The Court finds that the Surabians do not have a meritorious defense. As a preliminary matter, SIPA section 78fff-2(b) requires that the obligations of the debtor be demonstrated by an examination of its books and records or be "otherwise established to the satisfaction of the

trustee." Moreover, SIPA customers have the burden to demonstrate their customer status. *See Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Surabians have not established that they can meet this burden. After a diligent review of BLMIS's books and records,[10] the Trustee has found no evidence that the Surabians ever invested with Madoff. Nor have the Surabians provided any evidence that would otherwise satisfy the Trustee. *See In re MF Global Inc.,* No. 11-2790, 2013 WL 1683915, at **6–7 (Bankr. S.D.N.Y. Apr. 18, 2013) (holding claimants were not entitled to SIPA customer status where debtor's books and records did not reflect that they held securities accounts nor did they put forth documents evidencing valid securities accounts).

The Surabians argue that they have a meritorious defense because they "have corroborating affidavits that they opened accounts with Madoff directly," *see* Surabian Reply, p. 3. Yet, the affidavits were not attached to their motion, and were only received by the Court the week before the hearing. *See* Response to Trustee's Request for Documents (Dkt. No. 5324). These affidavits are nothing more than self-serving reiterations of their prior arguments to the Court and constitute the only "evidence" submitted by the Surabians to support their claims. Indeed, in the three years since the their claims were denied, the Surabians have been unable to produce account numbers, account statements, cancelled checks, tax returns showing dividends, or any other documents that evidence their self-proclaimed multi-million dollar investments.[11]

[10] *See* Expungement Motion, Exhibit B (Affidavit of Matthew Cohen in Support of the Trustee's Third Omnibus Motion Seeking to Expunge Claims and Objections of Claimants That Did Not Invest with BLMIS or in Entities That Invested in BLMIS), ¶ 6 (swearing that "as consultant to the Trustee and Claims Agent [AlixPartners] in the above-captioned case, after conducting a diligent review of BLMIS books and records, we have not identified any BLMIS accounts for which the claims and objections were filed, submitted by or on behalf of those Claimants identified on Exhibit A as attached to the Third Omnibus Motion," which included the Surabians).

[11] Instead of providing the Court with evidence of their BLMIS investments, the Surabians attempt to explain their lack of evidence. Specifically, the Surabians set forth in their affidavits that they had several break-ins to their houses and business and only a year later "discovered that not only were [they] not receiving any more statements

At bottom, the Surabians' conclusory allegations of investment with BLMIS have never been supported by *any* corroborating evidence, let alone any evidence that either proves or creates an issue of fact as to the Surabians' alleged investment.

Next, the Surabians assert that they have a defense because "Madoff's testimony will support the Surabians [sic] Claims," *see* Vacate Motion, ¶ 11. This desperate attempt to use Madoff, a convicted fraudster serving a 150 year prison sentence, to support their claims is nevertheless insufficient. Madoff's testimony, which would likely raise several credibility concerns, is incapable of satisfying either the Trustee or this Court that the Surabians were indeed investors of BLMIS, when his purported testimony has not been otherwise substantiated by documentary evidence of any kind. *See SIPC v. Cont'l Capital Inv. Servs., Inc. (In re Cont'l Capital Inv. Servs., Inc.)*, No. 03-3370, 2008 WL 4533665, at *4 (Bankr. N.D. Ohio Oct. 1, 2008) (holding no issue of fact existed surrounding an alleged claimant's customer status where the claimant merely contended that the debtor made representations to him that an account was established and maintained in the claimant's name, but failed to provide any corroborating evidence).

In conclusion, the Surabians have offered nothing that constitutes a meritorious defense.

*3. Prejudice*

The final *American Alliance* factor requires the Court to analyze the prejudice the debtor and the bankruptcy estate would suffer if the Surabians' motions were granted. *See In re FairPoint Commc'ns*, 462 B.R. at 82.

The Surabians allege that there is no prejudice to the Trustee because they "are not asking for another bite [of the apple], [as] they were never even shown the apple prior to late December

---

but all the past statements were missing." *See* Response to Trustee's Request for Documents, Affidavit of Martin M. Surabian, ¶¶ 5–6; Affidavit of Richard Surabian, ¶¶ 5–6; Affidavit of Steven Surabian, ¶¶ 5–6.

2012." *See* Surabian Reply, p. 5. However, the Surabians' argument is disingenuous because the Court has found that they had notice of the Expungement Hearing, prior to December of 2012, as the Trustee's office called and spoke with Steven Surabian in April of 2012 and the Surabians referenced the Expungement Order in one of their pleadings in September of 2012.

Instead, the Court finds reconsidering the Expungement Motion would prejudice the BLMIS estate. Indeed, the Trustee's responsibility to efficiently administer a claims process in a large case such as this necessitates that the Trustee not be required to re-litigate motions that lack the practical possibility of a different outcome. Moreover, courts must be mindful that excusing a claimant for failure to properly respond to notice could result in "ramifications to the efficiency and finality of the claims adjudication process." *In re FairPoint Commc'ns*, 462 B.R. at 82. In assessing the extent of these ramifications and whether they constitute a prejudice to the non-moving party, courts assess whether the moving party undertook measures to lessen the effects of its neglect. *See, e.g.*, *id.*; *In re Enron*, 325 B.R. at 120. Here, the Surabians did not undertake such measures. Instead, they not only failed to respond to documents served upon them, but also chose not to investigate the applicability of a hearing with respect to their own claims, despite being called directly by the Trustee's office and being appraised of the Expungement Order in September of 2012. Furthermore, there was a delay of more than nine months from when the Surabians received actual notice of the Expungement Hearing and when they filed the instant motions. *See In re JWP Info. Servs.*, 231 B.R. at 212 (finding a delay that was willful and knowing was prejudicial to the debtor's estate and its creditors).

In conclusion, this Court finds that reconsideration of the Expungement Order is not warranted because the Surabians' failure to respond was willful, they do not possess a

meritorious defense to the Expungement Motion, and reconsideration would prejudice the Debtor's estate and its creditors.

## II. The Madoff Subpoena Motion

The next motion, the Madoff Subpoena Motion, seeks to subpoena Madoff to testify on behalf of the Surabians. As a preliminary matter, the Trustee and SIPC each point out in their responses that a subpoena is ineffective to compel a federal prisoner to testify and must be brought in the form of a writ of *habeas corpus ad testificandum*. *See United States v. Gotti*, 784 F. Supp. 1011, 1012 (E.D.N.Y. 1992). In turn, in their reply papers, the Surabians acknowledge that the Madoff Subpoena Motion "can and should be viewed" as a request to issue a writ of *habeas corpus ad testificandum*. *See* Surabian Reply, p. 8. Accordingly, the Court will treat this motion as such.

Turning to the merits, pursuant to sections 2241(c)(5) and 1651(a) of Title 28 of the United States Code, a federal court is permitted to issue a writ of *habeas corpus ad testificandum* when necessary to direct the custodian of a federal prisoner to produce the prisoner for an appearance in court. *Atkins v. City of New York*, 856 F. Supp. 755, 757 (E.D.N.Y. 1994). Whether a writ of *habeas corpus ad testificandum* is necessary is "committed to the sound discretion" of the court, taking into account such factors as: "(i) whether the prisoner's presence will substantially further the resolution of the case; (ii) the security risks presented by the prisoner's transportation and safekeeping; and (iii) whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted." *Id*. Here, because Madoff was sentenced to 150 years in prison, forgoing the possibility of a stay, the analysis will focus on whether Madoff's testimony will substantially further the case and the security risks involved if said testimony were permitted.

The Court finds that Madoff's testimony will not substantially further the Surabians' case. First, the Surabians' contention that Madoff will testify that they invested in BLMIS directly with him is pure speculation, as the Surabians have offered nothing more than their conclusory statements to support this allegation. Second, even if Madoff testifies in accordance with the Surabians' allegations, his testimony by itself is unlikely to establish that the Surabians are customers of BLMIS, as (i) the Surabians have failed to offer any corroborating evidence that would further Madoff's testimony and (ii) given that he is a convicted fraudster, Madoff's testimony likely lacks credibility, *see* Fed. R. Evid. 609(a)(2) (requiring the admission of evidence of a criminal conviction where the elements of the crime committed require proving or the witness admitting to a dishonest act or false statement in order to impeach the witness).

Furthermore, there are significant cost and security considerations associated with allowing Madoff to testify in this Court. Whenever a prisoner is brought to testify, it "entails costs and even danger." *Thomas v. O'Brien*, No. 5:08-CV-0318, 2011 WL 5452012, at *5 (N.D.N.Y. Nov. 8, 2011) (quoting *Barnes v. Black*, 544 F.3d 807, 810 (7th Cir. 2008)). Here, there would be substantial costs associated with transporting and housing Madoff. *See Thomas*, 2011 WL 542012, at *5 (stating that costs of transporting and housing a prisoner is "not insignificant, particularly given ever-shrinking budgets for governmental agencies"). Security would also be necessary to eliminate the possibility of escape and to prevent any harm to the prisoner. Likewise, the heightened media attention surrounding Madoff's appearance in court would require extra security to protect the parties, the Court, and courthouse personnel.

In conclusion, the little, if any, probative value of Madoff's testimony, in conjunction with the cost and security concerns associated with transporting Madoff to this Court, militate in favor of denial of a writ of *habeas corpus ad testificandum*. Moreover, the diminutive value of

Madoff's testimony in the instant case does not even justify any less costly means of obtaining said testimony, such as a deposition or video conference.

**III. Motion to Subpoena the Books and Records of BLMIS, the Trustee and SIPA**

The Surabians' final motion, the Records Subpoena Motion, seeks to subpoena the books and records of BLMIS, as well as the records of the Trustee and SIPC. The Surabians first seek the books and records of BLMIS in order to "see were [sic] their assets may have gone and to show this Court that they did invest with BLMIS . . . ." Records Subpoena Motion, ¶ 7. The Surabians base their request on the fact that "[i]t is the Trustee that claims the records do not show any evidence of the Surabians being customers," and that they "do not believe the Trustee or SIPC or that the Trustee and SIPC looked diligently." Surabian Reply to Records Subpoena Motion [hereinafter "Records Reply"] (Dkt. No. 5308), p. 10. Additionally, the Surabians seek the records of the Trustee and SIPC to ascertain which customers have allowed claims and how the claim determinations were made. They base this request on their belief that "they meet most of all the standards the other customers meet" and the "Trustee did not act justly and did not have the customers of BLMIS best interest [sic] involved when the Trustee determined the Surabians were not Customers." *Id.* at 11.[12]

As is true with any discovery sought, the issuance of a subpoena under Rule 45 is analyzed under the requirements of Rule 26(b), made applicable herein by Bankruptcy Rules 9016 and 7026, respectively. *See During v. City Univ. of New York*, No. 05-CV-6992, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006); *Zinke v. United States Dep't of Treasury (In re Zinke)*,

[12] The Surabians also make the vaporous allegation that the Trustee is discriminating against them because they are "anti-Zionists and true Israelites." Records Reply, p. 2. This is the same argument that the Surabians previously articulated against Madoff, accusing him of stealing their assets because Madoff was a "Zionist" and did not like "the fact that not only were the Surabians not Zionists but were Anti-Zionists." Removal Motion, ¶ 20. As before, this unlikely allegation is just the latest example of the Surabians' elusive attempt to circumvent their pleading requirements.

157 B.R. 528, 530 n.2 (E.D.N.Y. 1993) ("Federal Rule 26, made applicable herein by Bankruptcy Rule 7026, governs the issuance of subpoenas").

As a preliminary matter, Rule 26(b)(1) requires that the materials sought in a subpoena be relevant. *See* Fed. R. Civ. P. 26(b)(1). Specifically, the Rule provides:

> Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense . . . . For good cause, the court may order discovery of any matter *relevant* to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

*Id.* (emphasis added). Although the relevancy standard has been interpreted by courts as applying broadly, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quotation omitted). Indeed, Rule 26 discovery requests should not be "based on pure speculation or conjecture," and many courts have "routinely decline[d] to authorize fishing expeditions." *Surles v. Air France*, No. 00-CV-5004, 2001 WL 815522, at *4 (S.D.N.Y. July 19, 2001).

Even where the subpoena seeks relevant material, Rule 26(b)(2) requires the court to limit the scope of discovery sought where it is unduly burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C); *In re Residential Capital, LLC*, 480 B.R. 529, 542 (Bankr. S.D.N.Y. 2012) ("Rule 26(b)(2) directs the court to limit or forbid unduly burdensome discovery.") (quotation omitted); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003) (indicating "Rule 26(b)(2) imposes general limitations on the scope of discovery in the form of a 'proportionality test'"). Rule 26(b)(2) requires the court to:

> limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit,

> considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). The Surabians' discovery requests will be addressed under this framework below.

1. *Neither the books and records of BLMIS nor those of the Trustee and SIPC are relevant to the Surabians' claims.*

The Surabians' request to examine the books and records of BLMIS must be denied because the materials they seek are not "relevant to their claims or defenses." Not only has the Trustee performed a thorough search of BLMIS's books and records and found no connection to the Surabians' claimed investments, the Surabians themselves have never offered any documentation or corroborative evidence that they invested in BLMIS. Without such evidence, it is unwarranted to permit the Surabians to embark on a fishing expedition through BLMIS's records in an attempt to now somehow support their baseless allegations. "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery,* not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d. 1318, 1327 (Fed. Cir. 1990).

The Surabians' motion to subpoena the records of the Trustee and SIPC to ascertain the allowed claims and their determination process also seek discovery that is neither relevant to the Surabians' claims or defenses nor the subject matter of this proceeding. Any information regarding BLMIS customers and their claim determinations has no impact on the Surabians' claims. Indeed, as discussed *supra*, the Surabians carry the burden to establish that they are customers of BLMIS. *See* SIPA § 78fff-2(b) (requiring the obligations of the debtor to be demonstrated by an examination of its books and records or be "otherwise established to the

satisfaction of the trustee"). Information regarding the customers that have claims against the BLMIS estate and how their claims were determined in no way evidences the Surabians' investment.

2. *Even if the requested discovery were relevant, the subpoenas are unduly burdensome.*

Even assuming arguendo that the subpoenas seek relevant discovery, which they do not, the discovery request must be denied as unduly burdensome. Under Rule 26(b)(2)(C), the Court must weigh the burden and expense of a discovery request against "the likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). First, the Surabians' subpoena seeks *all* of BLMIS's books and records. The burden and expense resulting from requiring the Trustee to turn over millions of pages of documents necessarily outweighs the slight, if any, benefit that can be revealed from the requested material. Second, the Surabians' subpoena also seeks the records of the Trustee and SIPC pertaining to *all* allowed customers, and how they were determined to be customers. Again, there is no benefit to the Surabians that can be revealed from this discovery that can outweigh the burden suffered by the Trustee and SIPC if required to produce the millions of pages of data that they have amassed in the claims determination process.

Additionally, to the extent that it is relevant, the claims determination process has been made public and is readily available to the Surabians. *See* Claims Procedure Order (Dkt. No. 12). Any discovery seeking how customer claims have been determined must be rejected. *See* Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: (i) the discovery sought . . . can be obtained from some other source that is more convenient").

## CONCLUSION

The Surabians have failed to demonstrate the excusable neglect necessary to warrant reconsideration of the Expungement Order, and have also failed to justify the heavy burden of permitting Madoff to testify. Additionally, the Surabians have failed to establish that (i) the records they seek are relevant and (ii) the subpoenas are not overly burdensome. Accordingly, the Vacate Motion, Late Opposition Motion, Madoff Subpoena Motion, and Records Subpoena are all DENIED.[13]

**IT IS SO ORDERED**.

Dated: New York, New York
April 25, 2013

/s/ Burton R. Lifland
UNITED STATES BANKRUPTCY JUDGE

[13] Pursuant to a bench ruling issued at the hearing on April 25, 2013, the (i) Motion For Late Appeal of Distribution Order was addressed and denied and (ii) Motion for Late Appeal of Expungement Order was not determined by this Court, as that appeal is currently pending in the District Court. *See* Minute Order (Dkt. No. 5325), Ex. A (Bench Ruling Denying Motion For Late Appeal of Distribution Order and Refraining from Ruling on the Motion For Late Appeal of Expungement Order).