Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

Hearing Date:  May 29, 2013
Hearing Time:  10:00 a.m. (EST)
Objection Deadline:  May 22, 2013
Time:  4:00 p.m.

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**ELEVENTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
JULY 1, 2012 THROUGH NOVEMBER 30, 2012**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................. 1

II. BACKGROUND ..................................................................................... 5

    A. THE SIPA LIQUIDATION ................................................................ 5

    B. THE TRUSTEE, COUNSEL AND CONSULTANTS ........................ 5

    C. PRIOR COMPENSATION ORDERS ................................................ 6

III. SUMMARY OF SERVICES ................................................................... 7

    A. HARDSHIP PROGRAM .................................................................... 8

    B. THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ........ 9

        i. Recoveries Accomplished During The Compensation Period ................. 9

IV. DETAILED DESCRIPTION OF SERVICES ........................................... 9

    A. MATTER 01 ..................................................................................... 10

        i. Task Code 01: Trustee Investigation ................................. 10

        ii. Task Code 02: Bankruptcy Court Litigation ................................. 12

        iii. Task Code 03: Feeder Funds ................................. 15

        iv. Task Code 04: Asset Research and Sale ................................. 15

        v. Task Code 05: Internal Meetings with Staff ................................. 16

        vi. Task Code 07: Billing and Trustee Reports ................................. 16

        vii. Task Code 08: Case Administration ................................. 16

        viii. Task Code 09: Banks ................................. 17

        ix. Task Code 10: Court Appearances ................................. 18

        x. Task Code 11: Press Inquiries and Responses ................................. 18

        xi. Task Code 12: Document Review ................................. 18

        xii. Task Code 13: Depositions and Document Productions by the Trustee ................................. 18

        xiii. Task Code 14: International ................................. 19

        xiv. Task Code 15: Charities ................................. 20

        xv. Task Code 19: Non-Bankruptcy Litigation ................................. 20

        xvi. Task Code 20: Governmental Agencies ................................. 20

        xvii. Task Code 21: Allocation ................................. 20

    B. MATTER 03 – CHAIS ................................. 22

    C. MATTER 04 – MERKIN ................................. 22

# TABLE OF CONTENTS
(continued)

**Page**

| | | | |
|---|---|---|---|
| D. | | MATTER 05 – CUSTOMER CLAIMS | 24 |
| | i. | Customer Claims | 24 |
| | ii. | General Creditor Claims | 25 |
| | iii. | The Trustee Has Kept Customers Informed Of The Status Of The Claims Process | 26 |
| E. | | MATTER 06 – VIZCAYA | 27 |
| F. | | MATTER 07 – MADOFF FAMILY | 28 |
| G. | | MATTER 08 – NORMAN LEVY | 31 |
| H. | | MATTER 09 – FAIRFIELD GREENWICH | 31 |
| I. | | MATTER 10 – HARLEY | 34 |
| J. | | MATTER 11 – COHMAD SECURITIES CORPORATION | 34 |
| K. | | MATTER 12 – PICOWER | 35 |
| L. | | MATTER 13 – KINGATE | 36 |
| M. | | MATTER 18 – THYBO | 38 |
| N. | | MATTER 19 – RUTH MADOFF | 39 |
| O. | | MATTER 21 – AVOIDANCE ACTION LITIGATION | 39 |
| P. | | MATTER 26 – RICHARD STAHL | 43 |
| Q. | | MATTER 27 – JP MORGAN CHASE | 44 |
| R. | | MATTER 28 – WESTPORT | 45 |
| S. | | MATTER 29 – RYE/TREMONT | 45 |
| T. | | MATTER 30 – HSBC | 47 |
| U. | | MATTER 31 – KATZ/WILPON | 48 |
| V. | | MATTER 32 – UBS/LIF | 50 |
| W. | | MATTER 33 – NOMURA BANK INTERNATIONAL PLC | 52 |
| X. | | MATTER 34 – CITIBANK | 53 |
| Y. | | MATTER 35 – NATIXIS | 54 |
| Z. | | MATTER 36 – MERRILL LYNCH | 55 |
| AA. | | MATTER 37 – ABN AMRO | 56 |
| BB. | | MATTER 38 – BANCO BILBAO | 57 |
| CC. | | MATTER 39 – FORTIS | 58 |
| DD. | | MATTER 40 – MEDICI | 59 |

# TABLE OF CONTENTS

(continued)

**Page**

EE.    MATTER 41 – WHITECHAPEL ................................................................. 60

FF.    MATTER 42 – EQUITY TRADING ........................................................... 61

GG.    MATTER 43 – DEFENDER ....................................................................... 62

HH.    MATTER 44 – MACCABEE ...................................................................... 63

II.    MATTER 45 – LEVEY ............................................................................... 63

JJ.    MATTER 46 – GLANTZ ............................................................................ 64

KK.    MATTER 47 – BONVENTRE ................................................................... 65

LL.    MATTER 48 – BONGIORNO .................................................................... 66

MM.    MATTER 49 – GREENBERGER .............................................................. 66

NN.    MATTER 50 – PITZ ................................................................................... 67

OO.    MATTER 51 – CRUPI ............................................................................... 67

PP.    MATTER 52 – DONALD FRIEDMAN ..................................................... 68

QQ.    MATTER 53 – MAGNIFY ......................................................................... 69

RR.    MATTER 54 – MENDELOW ..................................................................... 71

SS.    MATTER 56 – LIPKIN .............................................................................. 71

TT.    MATTER 57 – PEREZ/O'HARA ............................................................... 72

UU.    MATTER 58 – PJ ADMINISTRATORS .................................................... 73

VV.    MATTER 59 – STANLEY SHAPIRO ....................................................... 73

WW.    MATTER 60 – AVELLINO & BIENES ..................................................... 74

XX.    MATTER 61 – MAXAM ............................................................................ 75

YY.    MATTER 62 – SUBSEQUENT TRANSFERS .......................................... 76

ZZ.    MATTER 63 – CITRUS ............................................................................. 77

AAA.    MATTER 65 – LEGACY ........................................................................... 78

BBB.    MATTER 66 – LIEBERBAUM ................................................................. 79

CCC.    MATTER 72 – PLAZA .............................................................................. 79

V.    COMPENSATION REQUESTED ............................................................. 80

VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ........ 84

VII.    CONCLUSION .......................................................................................... 85

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the

"Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, the

"Debtor"), respectfully submits this eleventh application (the "Application") on behalf of the

Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of

the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of

SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local

Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of

Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on

December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second

Amended Compensation Order"), allowing and awarding (i) interim compensation for services

performed by the Trustee and B&H for the period commencing July 1, 2012 through and

including November 30, 2012 (the "Compensation Period"); and (ii) reimbursement of the

Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period;

and in support thereof, respectfully represents as follows:

## I.    **PRELIMINARY STATEMENT**

1.    The work completed by the Trustee and B&H during the Compensation Period

yielded significant results for BLMIS customers and the liquidation.  The District Court's words

from over a year ago are still apt.  As recognized by the United States District Court for the

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

Southern District of New York (the "District Court"), the Trustee "has worked relentlessly over nearly three years to bring assets that passed through [BLMIS] back into the customer fund, in order to restore nearly $20 billion in customer losses." *Picard v. J.P. Morgan Chase & Co.*, No. 11-00913 (CM), 2011 WL 5170434, at *1 (S.D.N.Y. Nov. 1, 2011).  Through pre-litigation and other settlements, which were approved by this Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, approximately $9.29 billion as of November 30, 2012 -- approximately 53% of the principal lost in the Ponzi scheme by those who filed claims -- for the benefit of all customers of BLMIS with an allowed claim.

2.      On October 5, 2011, the Trustee, with this Court's approval, distributed $311.854 million, or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to October 5, 2011, an additional $189.183 million was distributed as catch-up payments, bringing the total first interim distribution amount to $501.037 million.

3.      On September 19, 2012, the Trustee, with this Court's approval, distributed $2.479 billion, or 33.541% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to September 19, 2012, an additional $1.156 billion was distributed as catch-up payments, bringing the total second interim distribution amount to $3.635 billion.

4.      On March 29, 2013, the Trustee, with this Court's approval, distributed approximately $506.23 million, or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to March 29, 2013, an additional $1.25 million has been distributed.  When combined with the approximately $501.04 million first interim distribution, the $3.635 billion second interim distribution and $807.2 million of advances committed by the Securities Investor Protection Corporation ("SIPC"),[2] the Trustee has

---

[2] SIPC has committed to pay over $803 million to date.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed

2

distributed approximately $5.45 billion to BLMIS customers to date.    This represents a significant milestone in this litigation, with 1,106 BLMIS accounts fully satisfied.  The 1,106 fully satisfied accounts represent more than 50% of accounts with allowed claims.

5.    No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers.   Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), Greenfield Stein & Senior LLP ("Greenfield"), and La Tanzi, Spaulding & Landreth, P.C. ("La Tanzi"), and consultants, are paid out of administrative advances made by SIPC.  As this Court affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

6.    As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will

---

assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

be allocated to the Customer Fund for *pro rata* distribution to BLMIS customers whose claims have been allowed by the Trustee.

7.      In a liquidation proceeding such as this, where the general estate is insufficient to pay trustee compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration.  *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2). SIPC has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered.  Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein.  Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

8.      During the hearing on the Eighth Interim Fee Application, this Court acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities stared off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world.  It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012.

9.      No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008.  Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by litigating and settling cases for the return of customer property ("Customer Property").  Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his protection of

Customer Property.  The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

10.     As this Court has recognized, "[w]ith respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest most complex sets of litigation that have come down the pike.  It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm or any organization to deal with."  Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.     BACKGROUND

### A.     THE SIPA LIQUIDATION

11.     The Trustee and B&H's prior interim fee applications, each of which is fully incorporated herein,[3] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

### B.     THE TRUSTEE, COUNSEL AND CONSULTANTS

12.     The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

13.     In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

---

[3] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); October 1, 2012 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); and February 1, 2012 to June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097).

14.     The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

## C.     PRIOR COMPENSATION ORDERS

15.     The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| Applications | Orders Entered[4] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[5] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |

## III.    SUMMARY OF SERVICES

16.    A SIPA proceeding contemplates the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.  Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

---

[4] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258), to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee.  The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCA Creque, an additional $0.60 became due and owing to that firm.

[5] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

## A.    HARDSHIP PROGRAM

17.    The Trustee and B&H implemented a Hardship Program in an effort to accelerate SIPA protection for BLMIS victims suffering hardship.  The first phase of this program is more fully described in prior interim fee applications.  Based on the information received, the Trustee did not sue approximately 250 individuals.

18.    The Trustee expanded the Hardship Program into a second phase at the time he commenced avoidance actions.  While the Trustee's authority includes the pursuit of avoidance actions to recover Customer Property, the Trustee has not pursued avoidance actions against BLMIS account holders suffering proven hardship.  In November 2010, the Trustee announced that, to forego an avoidance action, the account holder must submit financial and other pertinent information.  Through this program, the Trustee has worked with a substantial number of applicants to confirm their hardship status and dismissed defendants in avoidance actions.

19.    As of November 30, 2012, the Trustee had received 493 applications from avoidance action defendants relating to 312 adversary proceedings.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee has dismissed 194 Hardship Program applicants-defendants from avoidance actions.  As of November 30, 2012, there were 83 applications still under review and 219 that were resolved because they were either (i) withdrawn by the applicant, (ii) deemed withdrawn for failure of the applicant to pursue the application, (iii) denied for lack of hardship or (iv) referred for consideration of settlement.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

20.     The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of this hotline.

## B.     THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

### i.     Recoveries Accomplished During The Compensation Period

21.     Without the need for protracted litigation, during the Compensation Period, the Trustee succeeded in settling twelve cases for $168,333,931.61.  As of November 30, 2012, the Trustee has successfully recovered or reached agreements to recover approximately $9.29 billion.

22.     The Trustee entered into settlements during and subsequent to the Compensation Period that will bring an additional $29,582,500.00 into the Customer Fund.

23.     The Trustee is also engaged in ongoing settlement negotiations with a number of parties that could result in additional recoveries for the benefit of customers without the delay and expense of litigation.

24.     Through the end of the Compensation Period, the Trustee recovered $442,057,203.37 as a result of preference and other settlements that were made pursuant to agreements subject to the net equity dispute.  The United States Supreme Court declined to review the net equity dispute and, with this ruling, the Trustee recently filed a motion for the third allocation and distribution from the Customer Fund, which was granted by this Court on March 13, 2013.  Pursuant to this motion, the Trustee distributed approximately $507.5 million to customers with allowed claims.

## IV.     DETAILED DESCRIPTION OF SERVICES

25.     Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly

9

contested.  All of this requires an enormous effort by the Trustee and his counsel for the benefit

of the victims.  The following is a more detailed synopsis of the significant services rendered by

the Trustee and B&H during the Compensation Period, organized according to internal B&H

matter numbers and task codes.

26.    Matter Number 01 is the general matter number used for tasks by the Trustee and

B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to

permit a more detailed analysis of the fees incurred.

27.    Matter Numbers 03-72 (with the exception of Matter Number 05, which relates to

customer claims) relate to litigation brought by the Trustee and B&H against various individuals,

feeder funds, and entities.[6]  In each of these matters, the Trustee and B&H attorneys perform

several functions, including the following tasks: conduct legal research; draft internal

memoranda; engage in internal meetings regarding investigation and litigation strategy; and

engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the

description of each matter will be limited to matter-specific tasks and case activity that occurred

during the Compensation Period.

## A.    MATTER 01

28.    This matter categorizes the time spent by the Trustee and B&H, and encompasses

the below enumerated tasks.

### i.    Task Code 01: Trustee Investigation

29.    This category relates to time spent with respect to the investigation into BLMIS,

Madoff, and various assets.

---

[6]  Reserved and closed matter numbers will not be listed in this Application.  Matter numbers reserved or closed
during prior compensation periods can be found in the respective interim fee applications.

30.     The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

31.     During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.  B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties, as well as continued the investigation of Madoff Securities International Ltd. ("MSIL").

32.     B&H attorneys coordinated efforts with the United States Attorney's Office for the Southern District of New York (the "USAO"), the Federal Bureau of Investigation (the "FBI"), the Securities and Exchange Commission (the "SEC"), the Government Accountability Office (the "GAO"), the United States Department of Justice (the "DOJ"), and other local, federal, and international officials involved in the investigation of Madoff and BLMIS.

33.     B&H attorneys discussed and conferenced with SIPC, Windels Marx, Young Conaway, International Counsel, and various government entities regarding investigation and litigation strategy, prepared requests for discovery and negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

ii.    **Task Code 02: Bankruptcy Court Litigation**

34.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

35.    On February 18, 2010, this Court approved a pre-litigation settlement between the Trustee and the Estate of Norman F. Levy. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.)*, No. 08-01789 (BRL) (Bankr. S.D.N.Y), ECF No. 1964. This settlement resulted in the return of $220 million (the "Levy Settlement"). One year later, on February 18, 2011, certain customers moved to set aside the Court's Order approving the Levy Settlement. (ECF No. 3861). This Court denied the motion (ECF No. 3984), and the claimants filed an appeal on April 11, 2011. (ECF No. 4005).

36.    On February 16, 2012, United States District Judge Deborah A. Batts issued a Memorandum and Order affirming this Court's order of March 30, 2011. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, No. 11 Civ. 3313 (DAB), 2012 U.S. Dist. LEXIS 21740 (S.D.N.Y. Feb. 16, 2012). The District Court found that bankruptcy courts need not conduct a "mini-trial" of all the facts underlying settlement disputes and are entitled to rely upon the opinions of the trustee, the parties, and their attorneys. *Id.* at *12. Thus, the District Court held that this Court did not abuse its discretion in denying the motion to vacate the settlement. *Id.* at *7. The claimants subsequently appealed Judge Batts's decision to the United States Court of Appeals for the Second Circuit (the "Second Circuit"). *See Peshkin v. Levy-Church*, No. 12-816-cv (2d Cir. 2012). The Second Circuit issued a summary order affirming the judgment of the District Court. *See Peshkin v. Levy-Church*, No. 12-816, 2012 U.S. App. LEXIS 26101 (2d Cir. Dec. 21, 2012), ECF No. 96.

12

37.     On the issue of the "customer" definition under SIPA, this Court issued a Memorandum Decision and Order affirming the Trustee's denial of these claims (the "June 28, 2011 Order"). (ECF Nos. 3018, 4193, 4209); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011).   Appeals were taken from this decision and assigned to United States District Judge Denise L. Cote.  *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, Nos. 11 Civ. 5683 (DLC), 11 Civ. 5805 (DLC), 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012). On January 4, 2012, Judge Cote affirmed this Court's June 28, 2011 Order.  *Id.*, ECF No. 11.

38.     On January 6, 2012, four appeals were taken from Judge Cote's decision to the Second Circuit.  *See Bricklayers & Allied Craftsman Local 2 Annuity Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-410; *Sec. Investor Prot. Corp., Irving H. Picard v. Rosamilia*, No. 12-437; *Sec. Investor Prot. Corp., Irving H. Picard v. Kruse*, No. 12-483; and *Upstate New York Bakery Drivers & Indus. Pension Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-529 (2d Cir.). During the Compensation Period, the Trustee and B&H attorneys researched case law and drafted a brief in opposition to appeals of the decision regarding the definition of "customer" under SIPA.   Oral argument was held before the Second Circuit on January 25, 2013.  On February 22, 2013, the Second Circuit affirmed the decisions of the District and Bankruptcy Courts.  *See Kruse v. Picard*, 2013 U.S. App. LEXIS 3774 (2d Cir. Feb. 22, 2013).

39.     On October 5, 2011, the Trustee moved before this Court for an order establishing a briefing schedule and hearing to affirm the claims determinations of ERISA claimants.  (ECF No. 4432).  This Court entered a scheduling order on November 8, 2011.  (ECF No. 4507).

40.     On November 14, 2011, the Trustee filed his Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections (ECF No. 4521) (the

"ERISA Motion").  On or around January 17, 2012, approximately eighteen opposition briefs to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4625–4628, 4631–4633, 4635, 4637–4643, 4652–4654).    On March 2, 2012, the Trustee filed his Memorandum in Support of the Trustee's Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4703).  On April 2, 2012, five replies to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4746, 4748, 4750, 4755, 4756).  The Trustee's sur-reply was filed on April 20, 2012.  (ECF No. 4781).

41.    During the pendency of the above briefing, certain ERISA claimants also filed motions to withdraw the reference on the ERISA Motion from this Court to the District Court.  *See Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC (S.D.N.Y. Aug. 6, 2012) (filed on behalf of J. X. Reynolds & Co. Deferred Profit Sharing Plan, Jacqueline Green Rollover Account and Wayne D. Green Rollover Account); *Sec. Investor Prot. Corp. v. I.B.E.W. Local 241 Pension Fund*, No. 12-cv-01139-DLC (S.D.N.Y. Aug. 6, 2012), on behalf of thirty-seven ERISA plan claimants.  On February 28, 2012 and March 1, 2012, these motions were accepted as related to the appeals decided by Judge Cote in *Aozora Bank*, 2011 U.S. Dist. LEXIS 150753, discussed above, and were re-assigned to Her Honor.  Judge Cote withdrew the reference on April 20, 2012.  *Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC (S.D.N.Y.), ECF No. 7.

42.    On July 25, 2012, the District Court granted the Trustee's ERISA Motion.  *See Id.*, ECF No. 29.  The District Court found that the ERISA claimants were not "customers" under SIPA because they did not deposit money with BLMIS for the purchase of securities and did not

14

own the assets of the ERISA plans that were deposited with BLMIS.  *Id.*  No appeal was taken from this opinion and order.

### iii.    Task Code 03: Feeder Funds

43.    This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors.  The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad, and bring actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### iv.    Task Code 04: Asset Research and Sale

44.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

45.    During the Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with Andrew Madoff's interest in Blow Styling Salon LLC and monitored the sale of the same.

46.    The Trustee and B&H attorneys conducted due diligence and participated in telephone conferences in connection with Andrew Madoff's efforts to sell certain interests of Madoff Energy LLC and affiliates.

47.    The Trustee and B&H attorneys continued to monitor the completion of Surge Trading's out-of-court liquidation, and the Trustee received final payment on his claim.

48.    The Trustee and B&H attorneys conducted and monitored the initial public offering of Stemline Therapeutics, Inc. and related activities.

49.    The Trustee and B&H attorneys monitored and conducted due diligence regarding the estate's interest in Abtech Industries, Inc.

50.      The Trustee and B&H attorneys also continued to work on valuing the intellectual property interest in Primex and strategized as to its sale.

**v.      Task Code 05: Internal Meetings with Staff**

51.      This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

**vi.      Task Code 07: Billing and Trustee Reports**

52.      This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

**vii.      Task Code 08: Case Administration**

53.      This category relates to time spent assisting the efficient administration of the case.

54.      The Trustee filed several motions before this Court that will govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures will ensure consistency and transparency, as well as compliance with the Bankruptcy Code and SIPA.

55.      On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

16

56.    On October 28, 2011, this Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  Thereafter, on January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012.  (ECF No. 4483).

57.    During the Compensation Period, the Trustee and B&H attorneys conducted conflict checks; implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents; created protocols relating to discovery, filings, and external communications; implemented and managed work flows between B&H and Consultants; oversaw administrative aspects of the retention of experts, other professionals and vendors, and monitored their ongoing activities; calendared and docketed all hearings, return dates, and deadlines in the main liquidation proceeding and all other litigations; monitored and tracked dockets of related proceedings; and managed and monitored staffing needs.

####    viii.    **Task Code 09: Banks**

58.    Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

### ix.    Task Code 10: Court Appearances[7]

59.    This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### x.    Task Code 11: Press Inquiries and Responses

60.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### xi.    Task Code 12: Document Review

61.    This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

### xii.    Task Code 13: Depositions and Document Productions by the Trustee

62.    This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter and responding to discovery propounded to the Trustee by various third parties.

63.    During the Compensation Period, the Trustee and B&H attorneys prepared, reviewed, finalized, and served subpoenas; monitored subpoenas issued and documents produced in response, and followed up regarding deficient document productions; prepared, reviewed, finalized, and served initial disclosures, case management plans, and motions for filing with this Court to implement case-wide discovery procedures; prepared, reviewed, finalized, and served

---

[7] Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

discovery requests; processed, uploaded, and analyzed incoming document productions; responded to discovery requests served on the Trustee by defendants and third parties; addressed the issue of de-designating confidential documents for production; analyzed, tracked, and processed BLMIS data; coordinated with the Trustee's expert witnesses to prepare for trial; researched foreign jurisdiction discovery laws; and oversaw work performed by the Trustee's vendors.

### xiii.    Task Code 14: International

64.    The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Gibraltar, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

65.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions. The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

66.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

xiv.    **Task Code 15: Charities**

67.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

xv.    **Task Code 19: Non-Bankruptcy Litigation**

68.    This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

xvi.    **Task Code 20: Governmental Agencies**

69.    This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the USAO, the Internal Revenue Service, various congressional Representatives, and other government agencies.  The Trustee and B&H attorneys also met with the USAO and participated in conference calls with them.

70.    In addition, the Trustee and B&H attorneys met with the GAO and responded to the GAO's requests for information.

xvii.    **Task Code 21: Allocation**

71.    This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

72.    The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

73.    On May 4, 2011, the Trustee sought entry of an order approving an initial allocation of property to the Customer Fund, and authorizing an interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the filing date exceeded the statutory SIPA protection limit of $500,000 (the "First Allocation Motion").  The

First Allocation Motion was unopposed, and this Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers on July 12, 2011.  (ECF No. 4217).

74.    On and after October 5, 2011, the Trustee distributed to BLMIS customers approximately $501 million—more than the amount initially approved by the Court—relating to 1,300 BLMIS accounts.  Thirty-nine payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been previously satisfied.

75.    The Trustee filed a motion for a second allocation and second interim distribution on July 26, 2012 (the "Second Allocation Motion").  (ECF No. 4930).  On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% reserve.  (ECF No. 4997).

76.    On September 19, 2012, the Trustee commenced the Second Interim Distribution. In connection with the Second Interim Distribution, the Trustee distributed $2.479 billion, or 33.541% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to September 19, 2012, an additional $1.156 billion was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $3.635 billion. Upon completion of the Second Interim Distribution, nearly 50% of the accounts with allowed customer claims have been satisfied. The Second Interim Distribution was made to 1,286 BLMIS account holders, and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

77.    The Trustee's Third Interim Distribution was approved by this Court on March 13, 2013 and will be covered in a future fee application.

B.     **MATTER 03 – CHAIS**

78.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the
avoidance action against Stanley Chais, Pamela Chais, and a number of related entities
(collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA,
the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for
preferences, fraudulent conveyances, and damages in connection with certain transfers of
property by BLMIS to or for the benefit of the Chais Defendants.  *Picard v. Chais*, Adv. No. 09-
01172 (BRL) (Bankr. S.D.N.Y.).

79.     In addition to the tasks outlined above, during the Compensation period, B&H
attorneys participated in the mediation ordered by this Court on July 18, 2012 in *Picard v. Chais*
and the related action to enforce the automatic stay and enjoin certain state court third-party
actions brought by investors of Stanley Chais and by the California Attorney General.  The
mediation was originally scheduled for October 30–31, 2012, but was rescheduled to February
12–14, 2013 due to Hurricane Sandy.  B&H attorneys also drafted various motions and pleadings
related to two motions to withdraw the reference to the District Court (docketed as Nos. 12-cv-
02371 (JSR) and 12-cv-02658 (JSR) (S.D.N.Y.)) filed by certain of the Chais Defendants on
April 2, 2012.

C.     **MATTER 04 – MERKIN**

80.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the
avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel
Capital Corporation (together, the "Merkin Funds") and J. Ezra Merkin ("Merkin") (collectively,
the "Merkin Defendants") seeking the return of more than $557 million under SIPA, the
Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for
preferences and fraudulent conveyances in connection with certain transfers of property by

BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin*, Adv. No. 09-01182 (BRL) (Bankr. S.D.N.Y.).

81.    During the Compensation Period, B&H attorneys advanced the litigation of the Merkin case.  They advanced discovery disputes before the court-appointed discovery arbitrator; served and responded to supplemental interrogatories, document requests and requests for admissions; negotiated a limitation on the scope of production of additional third-party documents in the Trustee's possession; reviewed and produced third-party red flag and due diligence documents; and obtained a Court order defining the scope of documents to be produced by the Trustee that were subject to destruction under the terms of a settlement with a third party.

82.    On other discovery fronts, B&H attorneys engaged in good faith negotiations with the Merkin Defendants in connection with multiple discovery deficiencies.  Those disputes were heard by the discovery arbitrator on November 13, 2012.  B&H attorneys are awaiting a decision from the arbitrator on those issues, as well as the Trustee's corresponding request for an extension of the discovery deadlines as a result of the Merkin Defendants' discovery deficiencies.

83.    During the Compensation Period, B&H attorneys continued preparing for fact witness depositions and expert discovery by conducting extensive review and analysis of documents produced by the Merkin Defendants and from other third parties.  B&H attorneys' tasks included identification of, preparation for and conducting depositions of fact witnesses, including financial industry representatives and former investors.  They also coordinated discovery concerning third-party witnesses and further worked to refine and narrow the potential witnesses they plan to depose and conducted additional research on third parties and former employees of the Merkin Defendants.

84.    Following the June 25, 2012 announcement by the New York Attorney General ("NYAG") of a settlement among the NYAG and the receivers for the Merkin Funds, the Trustee filed a complaint, extensive memorandum of law and related papers seeking an injunction to prevent the dissipation of the Merkin Defendants' assets. *Picard v. Schneiderman (In re Bernard L. Madoff)*, Adv. No. 12-01778 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 1–3. Following that filing, the Merkin Defendants advised the Trustee of their intention to file a motion to withdraw the reference of the injunction application, and the Trustee and the defendants entered into a briefing schedule for the motion to withdraw the reference. As part of the briefing schedule stipulation negotiated by the Trustee's counsel, the NYAG settlement is subject to a standstill agreement pending the hearing on the injunction application. The NYAG and other Merkin Defendants thereafter filed a joint motion to withdraw the reference ("MTWR") of the injunction application. *Picard v. Schneiderman*, 12-cv-06733 (S.D.N.Y. Sept. 5, 2012), ECF No. 1. The Trustee and SIPC filed papers in opposition to the MTWR, ECF Nos. 9–10, and following the submission of the Merkin Defendants' reply brief on October 11, 2012, the matter was fully briefed. After argument and a hearing in November 2012, the District Court granted the MTWR in December 2012, ECF No. 14, and briefing on the Trustee's substantive injunction application followed thereafter. The injunction application was heard by the District Court on March 25, 2013. An opinion was issued on April 15, 2013 denying the Trustee's application. An appeal will follow.

## D.    MATTER 05 – CUSTOMER CLAIMS

### i.    Customer Claims

85.    During the Compensation Period, the Trustee allowed $331,271,001.52 in customer claims, bringing the total amount of allowed claims as of November 30, 2012 to $7,804,767,347.39. As of November 30, 2012, the Trustee has paid or committed to pay

$803,677,373.62 in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and exceeds the total aggregate payments made in all SIPA liquidations to date.

86.    During the Compensation Period, the Trustee reduced claims by approximately $19,672,874.00.

87.    As of November 30, 2012, 179 claims relating to 129 accounts were "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.  Of the 16,519 claims received by the Trustee, only 2 remained undetermined as of November 30, 2012.  Both claims were determined subsequent to November 30, 2012.

### ii.    **General Creditor Claims**

88.    As of November 30, 2012, the Trustee had received 427 timely and 21 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.6 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 448 claims and $1.6 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $264.9 million.  At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii. The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

89.     Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

90.     The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

91.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of November 30, 2012, the Trustee and his professionals had received and responded to more than 7,000 e-mails from BLMIS customers and their representatives via the Trustee Website.

92.     The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of November 30, 2012, the Trustee, B&H, and the Trustee's professionals had fielded more than 7,700 hotline calls from claimants and their representatives.

93.    The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

94.    The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review process, the customer claims database, reconciliation of investment advisory accounts (the "BLMIS IA Accounts"), and other matters of interest in determining claims.

95.    The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

E.    **MATTER 06 – VIZCAYA**

96.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Ltd. ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants. *Picard v. Vizcaya Partners Ltd.*, Adv. No. 09-01154 (BRL) (Bankr. S.D.N.Y.).  The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers.

97.    During the Compensation Period, B&H attorneys continued to proceed with discovery and formulated document review protocols with defendant Bank Safra.  B&H attorneys prepared responses to Zeus's document requests and subsequent correspondence

regarding objections.  B&H attorneys reviewed documents produced by third parties relevant to this matter.  In addition, B&H attorneys composed and filed an amended pre-trial schedule.  On October 24, 2012, the UK Supreme Court issued its decision in *Rubin v. Eurofinance*,[8] which will impact the Trustee's foreign proceedings.

## F.    MATTER 07 – MADOFF FAMILY

98.    This matter categorizes time spent by B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.  On October 2, 2009, the Trustee filed a complaint against Peter Madoff, Andrew Madoff, the late Mark Madoff, and Shana Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants.  *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.) (ECF No. 1).  On March 15, 2010, each of the defendants separately moved this Court to dismiss the Trustee's complaint.  (ECF Nos. 13–19).  On September 22, 2011, this Court denied in part and granted in part the motions to dismiss.  (ECF No. 55). Defendant Andrew Madoff, individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave to seek interlocutory review of this Court's September 22, 2011 decision. (ECF No. 56).  Following briefing and oral argument, the District Court denied that motion on December 22, 2011.  (ECF No. 74).

99.    In accordance with this Court's September 22, 2011 decision, on November 7, 2011, the Trustee filed an amended complaint against the Family Defendants, identifying additional transfers to seek the return of over $225 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent

---

[8] [2012] UKSC 46 (S.C.) (appeal taken from Eng.), *available at*
http://www.supremecourt.gov.uk/decided-cases/docs/UKSC_2011_0209_Judgment.pdf.

transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.), ECF No. 64.  Shana Madoff, Peter Madoff, and Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, each answered the amended complaint on January 17, 2012. (ECF Nos. 78, 79, 80).

100.    On December 23, 2011, the Trustee filed a motion seeking leave to file a second amended complaint, adding additional claims and defendants to the action against the Family Defendants. (ECF No. 71). On April 4, 2012, following briefing and oral argument, this Court issued a written opinion denying in part and granting in part the Trustee's motion. (ECF No. 106).  On May 4, 2012, the Trustee filed a second amended complaint against the Family Defendants and named as additional defendants Mark Madoff's widow, Stephanie Mack, and Andrew Madoff's wife, Deborah Madoff. (ECF No. 113).  The Trustee also named Mark Madoff's ex-wife, Susan Elkin, as a subsequent transferee defendant.  Defendants Andrew Madoff, the Estate of Mark D. Madoff, Shana Madoff, and Ms. Elkin answered the second amended complaint on July 2, 2012.  (ECF Nos. 124–126).  On April 2, 2012, Stephanie Mack and Deborah Madoff moved to withdraw the reference from this Court, and their motions are pending before the District Court.  (ECF Nos. 101, 104).  The Trustee has adjourned the time for Peter Madoff, Stephanie Mack, and Deborah Madoff to respond to the second amended complaint.  (ECF Nos. 128, 134).[9]

---

[9] As indicated in the previous fee application, on June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion.  Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the United States of America.  Subsequently, on February 6, 2013, Peter Madoff was dismissed from this action in connection with the entry of a Consent Judgment in the amount of $90,390,500.00.  (ECF No. 145).  On February 7, 2013, the Trustee dismissed a separate adversary proceeding against Marion Madoff through a Notice of Voluntary Dismissal with Prejudice. *Picard v. Marion Madoff*, Adv. No. 10-04310 (BRL) (Bankr. S.D.N.Y.) (ECF. No. 17).

101.    The Trustee commenced two adversary proceedings against members of Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff. *Picard v. Stephanie S. Mack*, Adv. No. 10-05328 (BRL) (Bankr. S.D.N.Y.); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (BRL) (Bankr. S.D.N.Y.). Amended complaints were filed in these actions on February 7, 2012. *Picard v. Mack*, Adv. No. 10-05328 (ECF No. 23); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (ECF No. 13). All defendants in both actions answered on March 23, 2012. *Picard v. Mack*, Adv. No. 10-05328 (ECF No. 30); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (ECF No. 20). Deborah Madoff also moved to withdraw the reference from this Court on April 2, 2012. *Picard v. Deborah Madoff*, Adv. No. 10-05332 (ECF No. 22). That motion is currently pending before the District Court. The pre-trial conference for these actions in this Court is currently scheduled for May 29, 2013. *Picard v. Mack*, Adv. No. 10-05328 (ECF No. 38); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (ECF No. 33).

102.    The Trustee commenced two adversary proceedings against foundations created by and named for Andrew and the late Mark Madoff, and their spouses: *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325 (BRL) (Bankr. S.D.N.Y.); and *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330 (BRL) (Bankr. S.D.N.Y.). The defendants in these cases have answered, and the pre-trial conferences are currently scheduled for May 29, 2013. *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325 (ECF No. 21); *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330 (ECF No. 25).

103.    The Trustee commenced various adversary proceedings against Madoff's relatives beyond his immediate family to recover preferences and fraudulent conveyances. Currently, the Trustee's cases styled *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323 (Bankr.

S.D.N.Y.), *Picard v. NTC & Co. LLP*, Adv. No. 10-04293 (Bankr. S.D.N.Y.), and *Picard v. Schaum & Wiener Profit Sharing Plan & Trust FBO Martin Schaum*, Adv. No. 10-04329 (Bankr. S.D.N.Y.) remain pending.

## G.   MATTER 08 – NORMAN LEVY

104.   In January 2010, the Trustee reached a $220 million settlement (the "Norman Levy Settlement") with Jeanne Levy-Church and Francis N. Levy (collectively, the "Levys") to settle the Trustee's potential litigation claims against them regarding certain accounts held by the Levys and their family members.  This Court approved the Norman Levy Settlement by order dated February 18, 2010.  (ECF No. 1964).  Exactly one year later, certain BLMIS claimants moved pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to set aside the Norman Levy Settlement.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.)*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), ECF No. 3861. This Court denied the motion on March 30, 2011, and the claimants appealed to the District Court.  On February 16, 2012, Judge Batts issued a Memorandum and Order affirming this Court's order ("February 16, 2012 Order").  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC,* No. 11 Civ. 3313; (DAB), 2012 U.S. Dist. LEXIS 21740 (S.D.N.Y. Feb. 16, 2012).

105.   The claimants appealed the District Court's February 16, 2012 Order.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, No. 12-816-cv (2d Cir. May 16, 2011). On December 21, 2012, the Second Circuit issued a summary order affirming the judgment of the District Court.  *Peshkin v. Levy-Church*, 489 F. App'x 519 (2d Cir. 2012).  No further appeal has been taken.

## H.   MATTER 09 – FAIRFIELD GREENWICH

106.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd.

("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwhich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y. May 18, 2009), ECF No. 1. This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

107.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). *Id.*, ECF No. 95. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million, *Id.*, ECF No. 108, Sentry in the amount of $3.054 billion, *Id.*, ECF No. 109, and Sigma in the amount of $752.3 million, *Id.*, ECF No. 110.

108.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his

own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

109.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y.), ECF No. 107. In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management, and agreed to share with the Trustee any recoveries they receive against service providers.

110.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to common briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court.

111.    On June 6, 2012, the Trustee filed two additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.) and *Picard v. Alix Toub*, Adv. No. 12-01703 (BRL) (Bankr. S.D.N.Y.). The defendants in the Barrenche and Toub actions have not yet been served with or responded to the Trustee's complaints.

112.    On November 6, 2012, in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a

motion seeking preliminary approval of a settlement. *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM) (S.D.N.Y.), ECF No. 997. On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement. *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (BRL) (Bankr. S.D.N.Y.), ECF No. 2.

113.     As of November 30, 2012, the Trustee and the remaining defendants have entered into stipulations extending the response date to the Trustee's complaints while awaiting the rulings by the District Court on the issues subject to common briefing and hearings.

## I.     MATTER 10 – HARLEY

114.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Harley International (Cayman) Ltd. ("Harley") seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Harley. *Picard v. Harley Int'l (Cayman) Ltd.*, Adv. No. 09-01187 (BRL) (Bankr. S.D.N.Y.). Harley is in liquidation in the Cayman Islands.

115.     In addition to the tasks outlined above, during the Compensation Period, the Trustee and B&H attorneys continued to pursue collection on the summary and default judgments entered against Harley by this Court on November 10, 2010 and to pursue Harley's subsequent transferees. (ECF No. 15).

## J.     MATTER 11 – COHMAD SECURITIES CORPORATION

116.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), its principals, certain employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy

Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (BRL) (Bankr. S.D.N.Y.).

117.    During the Compensation Period, B&H attorneys continued to move forward with discovery, both propounding demands and responding to the demands of various defendants.

## K.    MATTER 12 – PICOWER

118.    This matter categorizes time spent by the Trustee and B&H attorneys in connection with the Trustee's litigation and settlement with Jeffry M. Picower ("Picower") and Barbara Picower, both individually and as trustees for various foundations, and related entities (collectively, the "Picower Defendants").  The Trustee's lawsuit sought recovery of nearly $7 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Defendants.  Picard v. Picower, Adv. No. 09-01197 (BRL) (Bankr. S.D.N.Y.).

119.    On January 13, 2011, this Court entered an Order (the "Picower Settlement Order") approving the $5 billion settlement between the Trustee and the Estate of Jeffry M. Picower et al.  (ECF No. 43).  BLMIS claimants Adele Fox ("Fox") and Susanne Stone Marshall ("Marshall"), who brought actions against the Picower Defendants in Florida, appealed the Picower Settlement Order.  (ECF Nos. 45, 49).  On March 26, 2012, United States District Judge John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and permanently enjoining certain duplicative or derivative actions against the Picower Defendants. *Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012).  Thereafter, counsel for Fox and Marshall

again filed notices of appeal, this time to the Second Circuit.  *See In re Bernard L. Madoff Inv. Sec., LLC*, No. 10-Civ-4652 (JGK) (S.D.N.Y.), ECF No. 47; *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, 11-Civ-1298 (JGK) (S.D.N.Y.), ECF No. 19; *Fox v. Picard (In re Bernard L. Madoff)*, 11-Civ-1328 (JGK) (S.D.N.Y.), ECF No. 17).  These appeals are currently pending, and oral argument was heard on December 6, 2012.  *See In re Bernard L. Madoff Inv. Sec., LLC*, 12-1645bk (2d Cir. Dec. 6, 2012).

120.    A forfeiture action against the estate of Jeffry M. Picower resulted in the additional recovery of more than $2.2 billion to the United States Government (the "Picower Forfeiture"), which is intertwined with the Trustee's Picower settlement.  *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 10 Civ. 09398 (TPG) (S.D.N.Y.).  On May 23 and 24, 2011, United States District Judge Thomas P. Griesa entered a final order of forfeiture in favor of the United States. (ECF Nos. 16, 17).  The Second Circuit dismissed an appeal of Judge Griesa's order, and on June 8, 2012, a final order of forfeiture was issued.  *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 11-2898 (2d Cir. June 8, 2012), ECF No. 85.

121.    Because the time to appeal the final order of forfeiture expired, the settlement amount of $5 billion was transferred to the BLMIS estate and the Customer Fund.  Part of the proceeds from the Picower settlement has been distributed to customers, and the balance will be distributed in due course.

## L.    MATTER 13 – KINGATE

122.    This matter categorizes time spent by the Trustee and B&H attorneys in pursuing the avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the "Kingate Funds"), and other defendants, seeking, among other relief, the avoidance and recovery

under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law of preferential and fraudulent transfers made by BLMIS to or for the benefit of the Kingate Funds in the approximate total amount of $875 million.[10] On June 8, 2011, B&H attorneys prepared, filed, and served a third amended complaint, which added a number of additional foreign defendants, significantly expanding the case. *Picard v. Federico Ceretti*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.), ECF No. 32 ("U.S. Action").

123.    The Kingate Funds are in liquidation proceedings in the British Virgin Islands and Bermuda under the auspices of court-appointed joint liquidators.  The management company for the Kingate Funds and one of the foreign defendants in the U.S. Action, Kingate Management Limited ("KML"), is also in a liquidation proceeding in Bermuda, which is being administered by the Official Receiver of Bermuda.

124.    The Kingate Funds and all other defendants have filed motions in the District Court, or joinders to such motions, to withdraw the reference from this Court on various grounds. *Picard v. Kingate Global Fund, Ltd.*, No. 12-cv-02441 (JSR) (S.D.N.Y.), ECF No. 1.  The motions were fully briefed and argued before the District Court.  Pending a resolution of all issues before the District Court, the Trustee has extended the time for the defendants in the U.S. Action to answer or otherwise respond to the third amended complaint by various stipulations filed with this Court.

125.    By an order of the Bermuda Civil Court (the "Bermuda Court") dated October 3, 2012, upon application of the Kingate Funds' joint liquidators seeking leave to pursue their

---

[10] As a result of a settlement between the Trustee and the United States of America on behalf of the Internal Revenue Service, approved by order of this Court dated December 21, 2011, the aggregate amount of the alleged transfers has been adjusted to approximately $825 million.  *See* Order, Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.), No. 08-01789 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2011), ECF No. 4602.

claims against Kingate Management and other defendants in Bermuda, the Bermuda Court lifted the litigation stay that was in effect in that jurisdiction and granted other relief in favor of the joint liquidators. On the basis that the Kingate Funds were seeking to recover property that had been transferred from BLMIS, which was Customer Property that the Trustee was seeking to recover in the U.S. Action, the Trustee prepared and filed a complaint for declaratory and injunctive relief against the Kingate Funds, and an application to preliminarily enjoin the joint liquidators from prosecuting the Kingate Funds' claims against KML and other defendants in Bermuda. Upon request of the joint liquidators, and in light of the Trustee's desire, if possible and in the best interests of the estate, to settle all disputes between the parties on a global basis, the Trustee consented to extend the joint liquidators' deadline to answer the complaint and the preliminary injunction application.

126.    In furtherance of global settlement negotiations with the Kingate Funds, the Trustee's representatives, including counsel and financial consultants, participated in several meetings with representatives of the Kingate Funds. The Trustee and his attorneys continue to prepare for litigation here and abroad should a global settlement be unavailing despite the Trustee's best efforts.

## M.    MATTER 18 – THYBO

127.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Thybo Asset Management Ltd., Thybo Global Fund Ltd., Thybo Return Fund Ltd., and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return of approximately $62 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants. On February 10, 2011, the Trustee filed an amended complaint that also objected to

Thybo Stable Fund's $217 million customer claim. *Picard v. Thybo Asset Mgmt. Ltd.*, Adv. No. 09-01365 (BRL) (Bankr. S.D.N.Y. Feb. 10, 2011), ECF No. 20.

128.    On July 3, 2012, Judge Rakoff issued an Order as to the Thybo Defendants' fully briefed motion to withdraw the reference, stating that the Thybo Defendants raised the same issues that the District Court previously arranged for consolidated briefing, and directed the Thybo Defendants to continue to proceed according to the procedures arranged for consolidated briefing. *See Order, Picard v. Thybo Asset Mgmt. Ltd.*, No. 11-cv-07576 (JSR) (S.D.N.Y. July 5, 2012), ECF No. 17.

## N.    MATTER 19 – RUTH MADOFF

129.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Ruth Madoff seeking the return of approximately $44 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Mrs. Madoff. *See Picard v. Ruth Madoff*, Adv. No. 09-01391 (BRL) (Bankr. S.D.N.Y. Aug. 3, 2009).

130.    During the Compensation Period, the Trustee and B&H attorneys continued to grant Mrs. Madoff extensions of time to respond to the complaint.

## O.    MATTER 21 – AVOIDANCE ACTION LITIGATION

131.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee; coordinating service of process; preparing preservation letters and discovery requests and reviewing produced documents; communicating formally and informally with counsel for various defendants; reviewing Hardship Program applications; drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences; conducting

settlement negotiations and settling with various defendants; engaging in mediation with certain defendants; developing legal strategies and witnesses that will be relevant to all actions; implementing internal processes to track and manage the avoidance actions; and researching various issues relating to and raised in such avoidance actions.

132.    B&H attorneys also spent time addressing motions to withdraw the reference filed after the April 2, 2012 final deadline for withdrawal motions established pursuant to the Administrative Order issued by this Court.  *See* Administrative Order Establishing Deadline for Filing Motions to Withdraw the Reference, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.)*, Adv. No. 08-01789 (Bank. S.D.N.Y. Mar. 5, 2012), ECF No. 4707 (the "Administrative Order").   The Administrative Order stated: "[i]n the interest of administrative efficiency, this Court has been informed by Judge Rakoff, and hereby notifies all parties to the Adversary Proceedings, that the District Court will automatically regard untimely any motion to withdraw . . . if such motion is not filed on or before April 2, 2012."  *Id*. at 1–2.

133.    B&H attorneys reviewed all motions to withdraw the reference filed after the April 2, 2012 deadline to determine whether the motions were timely or should be regarded as untimely as specified in the Administrative Order.

134.    B&H attorneys determined that several motions filed during the Compensation Period were timely because the Trustee served the summons and complaint in the various actions after the April 2, 2012 deadline.  B&H attorneys then analyzed the arguments raised in the motions to withdraw the reference to determine which Consolidated Briefings Orders (as defined below) these motions should be added to, and accordingly, drafted consent orders to allow the corresponding actions to be part of the relevant Consolidated Briefings Orders, and also reviewed any relevant rulings.

135.    B&H attorneys challenged at least two motions to withdraw the reference on timeliness issues pursuant to the Administrative Order, including:

- *Picard v. Harvey E. Rothenberg Rev Trust UAD 7/24/02*, Adv. No. 10-05072 (BRL), No. 12-cv-05717 (JSR) (S.D.N.Y. July 25, 2012) (such motion was not resolved during the Compensation Period); and

- *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.)*, Adv. No. 08-01789 (BRL), No. 12-cv-06093 (JSR) (S.D.N.Y. Aug. 9, 2012) ("Customer Motion to Withdraw the Reference").

136.    For each of the above motions, B&H attorneys participated in chambers conferences to establish briefing schedules; prepared, filed, and served oppositions; reviewed and addressed particular issues raised in reply; and prepared for oral arguments before the District Court.  On October 1, 2012, Judge Rakoff issued an order denying the Customer Motion to Withdraw the Reference on the basis that he had previously declined to withdraw the reference on "time-based damages" issues on several prior occasions.  He stated that the motion was untimely under the April 2, 2012 deadline and found that counsel failed to show good cause as to why the failure to timely meet the deadline should be excused.

137.    Prior to the Compensation Period, in April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw the reference, facilitating consolidated briefing on common issues raised in the filed motions to withdraw. Accordingly, the Trustee, SIPC, and the relevant defendants negotiated agreed orders providing for the partial withdrawal of the reference to address the following discrete legal issues raised in the relevant motions to withdraw (the "Consolidated Briefing Orders"):

- ***Stern v. Marshall Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), ECF No. 4;

- ***Antecedent Debt Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 107;

- ***Standing and SLUSA Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 114;

- ***Section 546(e) Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 119;

- ***Section 502(d) Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155;

- ***Extraterritoriality Issues***.  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 7, 2012), ECF No. 167;

- ***"Good Faith" Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b).***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), ECF No. 197; and

- ***Section 550(a) Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), ECF No. 314.

138.    During the Compensation Period, for each of the Consolidated Briefing Orders, B&H attorneys prepared, filed, and served opposition briefs; reviewed and addressed particular issues raised in reply briefs; and prepared for oral arguments before the District Court addressing each of the issues raised in the Consolidated Briefing Orders. No rulings were issued during the Compensation Period.

## P.    MATTER 26 – RICHARD STAHL

139.    This matter categorizes time spent by the Trustee and B&H attorneys on the adversary proceeding commenced by the Trustee against Richard Stahl, Reed Abend, and other third-party plaintiffs (collectively, the "Stahl Plaintiffs"), and the Trustee's related Application for Enforcement of the Automatic Stay and a Preliminary Injunction (the "Stahl Application") of actions brought by the Stahl Plaintiffs against Andrew Madoff, Mark Madoff, Peter Madoff, Ruth Madoff and Shana Madoff (collectively, the "Madoff Defendants") against whom the Trustee has also brought suit. *Picard v. Stahl*, Adv. No. 10-03268 (BRL) (Bankr. S.D.N.Y. Dec. 15, 2011).

140.    In a prior compensation period, this Court entered an order granting the Stahl Application. *Picard v. Stahl*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011).  This Court found that the automatic stay and the December 15, 2008 stay order of the District Court applied, and held that the third-party actions are void *ab initio* as against the Madoff Defendants. *Id*. This Court also preliminarily enjoined the actions pending the completion of the Trustee's litigation against the Madoff Defendants. *Id*.

141.    Several of the Stahl Plaintiffs (the "Stahl Appellants") appealed this decision to the District Court.  Following briefing and argument, on November 17, 2011, United States District Judge Alvin K. Hellerstein issued a bench ruling and summary order affirming this Court's opinion. *Retirement Program for Emps. of Fairfield v. Picard (In re Bernard L. Madoff Inv. Sec., LLC,)* No. 11CV2392 (AKG), 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011).  Judge Hellerstein found that the third-party actions created "a waste of personal assets that the trustee seeks to recover" and that "the profusion of [the third-party] lawsuits makes it extremely difficult for the trustee to run his lawsuit expeditiously and economically in the interests of the creditors of the estate." *Id*. at *15.  Judge Hellerstein recognized that "it's the rationale behind Section

362 and Section 105 to favor the trustee . . . ," and held that a preliminary injunction was proper "to allow the trustee the ability to pursue his actions and obtain rulings and finality on those rulings because the trustee is acting for the benefit of all creditors and not just a few." *Id*. at *13.

142.    Thereafter, the Stahl Appellants filed joint appeals of Judge Hellerstein's ruling with the Second Circuit.  *See In re Bernard L. Madoff Inv. Sec., LLC*, No. 11-5421 (2d Cir.); *In re Bernard L. Madoff Inv. Sec., LLC*, No. 11-5428 (2d Cir.).  During the Compensation Period, B&H attorneys reviewed the reply brief filed by the Stahl Appellants and prepared for oral argument, including performing research.  The Second Circuit heard argument on the appeal on January 25, 2013 and issued a decision upholding the Trustee's injunction on February 20, 2013.  *In re Bernard L. Madoff Inv. Sec., LLC*, No. 11-5421 (2d Cir.), ECF No. 106.

## Q.    MATTER 27 – JP MORGAN CHASE

143.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan") seeking the return of approximately $19 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of JPMorgan Chase.  *Picard v. JPMorgan Chase & Co.*, Adv. No. 10-04932 (BRL) (Bankr. S.D.N.Y.).

144.    During the Compensation Period, the appeal of the District Court's decision dismissing the Trustee's common law claims against JPMorgan, *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011), was argued before the Second Circuit on November 21, 2012.  *Picard v. JPMorgan Chase & Co.*, No. 11-5044 (2d Cir.).  The parties stipulated to a stay of discovery pending the appeal.

### R.    MATTER 28 – WESTPORT

145.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. ("PSCC") seeking the return of approximately $28 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Silverman, WNB, and PSCC.  *Picard v. Robert L. Silverman*, Adv. No. 10-05418 (BRL) (Bankr. S.D.N.Y. May 19, 2011).

146.    During the Compensation Period, B&H attorneys prepared inquiries and analyzed responses provided by counsel for WNB relating to the factual and legal issues raised by the lawsuit.  In furtherance of the Trustee's claims, additional research was performed into potential defenses of WNB and WNB's treatment of funds and customer balances.  B&H attorneys met with counsel for WNB to discuss these issues.  B&H attorneys also continued to monitor Silverman's individual chapter 11 bankruptcy case pending in the United States Bankruptcy Court for the District of Connecticut, and prepared motions to extend the time to object to the dischargeability of those debts.  In addition, B&H attorneys responded to a potential third-party subpoena relating to ongoing litigation.  The team monitored the progress of other lawsuits being pursued against WNB.

### S.    MATTER 29 – RYE/TREMONT

147.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Funds") seeking the return of approximately $2.1 billion under SIPA,

the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Funds. *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (BRL) (Bankr. S.D.N.Y.).

148.    On September 22, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (BRL) (Bankr. S.D.N.Y.), ECF No. 38. Pursuant to this settlement, Tremont delivered $1.025 billion into an escrow account, which was placed into the Customer Fund, and the Trustee allowed certain customer claims related to Tremont. Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. This Court entered an Order Granting Trustee's Motion for Entry of Order Approving Agreement. (ECF No. 38).

149.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc.*, No. 11-7330 (GBD) (S.D.N.Y.), ECF No. 1. Thereafter, Tremont filed a motion to dismiss the appeal, which was subsequently joined by motions filed by the Trustee and parties subject to the settlement. (ECF Nos. 4, 6, 8, 12, 14). The non-BLMIS customers who commenced the appeal opposed the dismissal. (ECF Nos. 15, 16). On June 27, 2012, United States District Judge George B. Daniels granted the motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

150.    On July 27, 2012, the non-BLMIS objectors filed an appeal with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint

stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). The terms of the settlement, therefore, have been implemented.

151.    Pursuant to the Tremont settlement, Tremont delivered $1.025 billion into an escrow account on November 6, 2012. The settlement payment was released from the escrow account to the Trustee on February 8, 2013. Accordingly, the Trustee allowed certain customer claims related to Tremont.

## T.    MATTER 30 – HSBC

152.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC-entities (collectively, the "HSBC Defendants"), UniCredit S.p.A. and Pioneer Alternative Investment Management Ltd. (together, "UCG/PIA"), dozens of feeder funds, and individuals seeking the return of approximately $8.8 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the HSBC Defendants. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y. Nov. 30, 2012).

153.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys extended the time for certain defendants to respond to the amended complaint and coordinated service of process on numerous international defendants. B&H attorneys prepared an opposition to the motions to dismiss filed by the thirteen HSBC-related defendants and, separately, by UCG/PIA on May 3, 2011 in the District Court. *Picard v. HSBC Bank plc*, No. 11 Civ. 763 (JSR) (S.D.N.Y.) (ECF. No. 35); *Picard v. HSBC Bank plc*, No. 11 Civ. 836 (JSR) (S.D.N.Y.) (ECF. No. 34). The District Court granted the motion on July 28, 2011, dismissing the Trustee's common law claims. *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y.

2011).  During the Compensation Period, B&H attorneys briefed the appeal, filing both their principal and reply briefs.  Oral argument before the Second Circuit took place on November 21, 2012.

154.    During the Compensation Period, B&H attorneys also worked on the appeal of Judge Rakoff's dismissal of the common law claims against the HSBC Defendants and UCG/PIA.

155.    Finally, during the Compensation Period, the Trustee took part in proceedings pending in the Cayman Islands against the Primeo Fund, involving a variety of issues related to the Trustee's standing.

## U.    MATTER 31 – KATZ/WILPON

156.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Saul B. Katz, in his individual capacity and as trustee of the Katz 2002 Descendants' Trust, Fred Wilpon, in his individual capacity, as trustee of the Wilpon 2002 Descendants' Trust, and as co-executor of the Estate of Leonard Schreier, and dozens of other entities and individuals (collectively, the "Katz-Wilpon Defendants") seeking the return of approximately $1 billion in fraudulent transfers—which includes approximately $300 million in fictitious profits and $700 million in principal—under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Katz-Wilpon Defendants.  *Picard v. Katz*, Adv. No. 10-05287 (BRL) (Bankr. S.D.N.Y.) (the "Katz-Wilpon Action").

157.    On September 27, 2011, the District Court dismissed the Trustee's claims based on constructive fraud under the Bankruptcy Code, actual and constructive fraud under the New York Debtor and Creditor Law, and for recovery of subsequent transfers pursuant to § 550 of the

Bankruptcy Code, holding that the "safe harbor" affirmative defense set forth in § 546(e) of the Bankruptcy Code is a bar—at the pleading stage—to those claims. *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011).

158.    On January 26, 2012, the Katz-Wilpon Defendants filed a Motion for Summary Judgment on the Trustee's remaining claims. (ECF Nos. 79, 86–87, 90–99, 103–104, 109–110). That same day, the Trustee filed a Motion for Partial Summary Judgment with respect to fictitious profits. (ECF Nos. 81, 85, 88–89, 100, 102, 107–108).   On February 23, 2012, the District Court heard oral argument on the Trustee's Motion for Partial Summary Judgment and the Katz-Wilpon Defendants' Motion for Summary Judgment. (ECF Nos. 139–140).  In a March 5, 2012 order, the District Court denied the Katz-Wilpon Defendants' Motion for Summary Judgment and granted the Trustee's Motion for Partial Summary Judgment in the amount of two-year fictitious profit transfers. *Picard v. Katz*, No. 11-03605 (JSR) (S.D.N.Y.), ECF No. 142.

159.    On March 16, 2012, the Friday before the start of trial, the parties entered a Memorandum of Understanding outlining the parameters of a settlement in the amount of $162 million, which is the amount of fictitious profits withdrawn over the six-year period. (ECF No. 180). Judge Rakoff reviewed the terms of the Memorandum of Understanding on March 19, 2012, at which time he set April 13, 2012 as the date for the parties to enter a final settlement agreement and for the Trustee to file a Bankruptcy Rule 9019 motion for an order approving the settlement. (ECF Nos. 182–183).

160.    On April 13, 2012, the Trustee filed a Motion for Settlement for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement.  (ECF Nos. 184-87).

161.    On June 1, 2012, Judge Rakoff entered an Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement. (ECF No. 192).  On June 6, 2012, a stipulation and Order of Voluntary Dismissal of the Trustee's claims against the Katz-Wilpon Defendants was entered pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.  (ECF No. 193).

162.    Since entry of the Order of Voluntary Dismissal, the Trustee's counsel has engaged in various steps to effectuate the terms of the settlement, including but not limited to, complying with the settlement agreement document destruction protocols and protective order, allocating and distributing funds attributable to defendants' SIPA claims to the settlement amount, and perfecting the Trustee's security interests in defendants' SIPA claims.

## V.    MATTER 32 – UBS/LIF

163.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy and common law claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants.  *Picard v. UBS AG*, Adv. No. 10-04285 (BRL) (Bankr. S.D.N.Y. Oct. 22, 2012).

164.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund and UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable

law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS. *Picard v. UBS AG*, Adv. No. 10-05311 (BRL) (Bankr. S.D.N.Y. Oct. 22, 2012).

165.    During the Compensation Period, on August 17, 2012, the Trustee and B&H filed their opposition papers to the motions to dismiss the amended complaint filed by a number of the Luxalpha Defendants and LIF Defendants in this Court for lack of personal jurisdiction and *forum non conveniens*. *Id.*, ECF 132; Amended Complaint, *Picard v. UBS AG*, No. 11-cv-04212 (CM) (S.D.N.Y. Aug. 17, 2011), ECF No. 23.    The LIF and Luxalpha teams reviewed and analyzed the numerous motions to dismiss and worked on preparing the oppositions to the motions.  This work included legal analysis, factual analysis, preparing an affidavit in support of the Trustee's oppositions to the motions to dismiss for *forum non conveniens*, identifying the voluminous exhibits for the oppositions and conferring with opposing counsel regarding de-designation of the exhibits for filing, and drafting the oppositions.

166.    During the Compensation Period, work also continued on the Trustee's appeal seeking relief in the Second Circuit from the District Court's dismissal of the Trustee's common law and contribution claims in the Luxalpha matter, for which oral argument was heard by a panel of the Second Circuit on November 21, 2012.    *Picard v. UBS Fund Services (Luxembourg)*, No. 11-5051bk (2d Cir. Nov 21, 2012).

167.    In addition, this matter incorporates work related to an action brought in Luxembourg by the Luxembourg liquidators of Luxalpha against Access Group, UBS, and the directors of Luxalpha.  On April 19, 2012, the Trustee and B&H commenced an action against Access Management Luxembourg, S.A., Patrick Littaye, and Pierre Delandmeter (collectively, the "Third Party Plaintiffs") seeking an injunction preventing these parties from litigating an action they have filed against the Trustee in Luxembourg.  *Picard v. Access Mgmt. Luxembourg,*

*S.A.*, Adv. No. 12-01563 (BRL) (Bankr. S.D.N.Y.).  The Third Party Plaintiffs subsequently filed opposition papers to the Trustee's injunction application, moved to withdraw the reference to the District Court, (ECF Nos. 14–17), and later moved to dismiss the Trustee's action for lack of personal jurisdiction and failure to state a claim. (ECF Nos. 33–40).  On August 1, 2012, the Trustee prepared and filed opposition papers to Third Party Plaintiffs' motion to withdraw the reference.  *Picard v. Access Mgmt. Luxembourg S.A.*, No. 12 MC 115 (JSR) (S.D.N.Y.), ECF No. 266.  Then, on September 24, 2012, the Trustee prepared and filed opposition papers to Third Party Plaintiffs' motion to dismiss for lack of jurisdiction and failure to state a claim. *Picard v. Access Mgmt. Luxembourg, S.A.*, Adv. No. 12-01563, ECF No. 22.

168.    In addition, this matter incorporates work on an action commenced by the Trustee on June 6, 2012, against Banque Degroof SA/NV, other Banque Degroof entities, Access International Advisors LLC, other Access entities, Aforge Finance Holding, other Aforge entities, and the Elite Stability SICAV Stablerock Compartment fund.  *Picard v. Banque Degroof SA/NV*, Adv. No. 12-01691 (BRL) (Bankr. S.D.N.Y.).  The complaint seeks recovery of subsequent transfers from these defendants.  During the Compensation Period, the Trustee and B&H attorneys worked to ensure service and acknowledgement of service of the complaint on each named defendant.

## W.    MATTER 33 – NOMURA BANK INTERNATIONAL PLC

169.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura Bank International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura.  *Picard v. Nomura Bank Int'l plc*, Adv. No. 10-05348 (BRL) (Bankr. S.D.N.Y.).

170.    During the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included the Nomura motion to withdraw the reference in consolidated subject matter briefing and oral argument.  During the Compensation Period, B&H attorneys prepared responses to defendants' consolidated subject matter briefing, which were filed in July, August, and September 2012.  B&H attorneys also prepared for and participated in oral argument on the consolidated subject matter briefing in August, September, October, and November 2012.

171.    In addition to the tasks outlined above, the Trustee extended Nomura's time to respond to the amended complaint while awaiting a determination from the District Court with respect to the consolidated subject matter briefing.  *Id.*, ECF Nos. 45–46.

## X.    MATTER 34 – CITIBANK

172.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citigroup") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citigroup.  *Picard v. Citibank,* Adv. No. 10-05345 (BRL) (Bankr. S.D.N.Y.).

173.    During the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included Citigroup's motion to withdraw the reference in consolidated subject matter briefing and oral argument.  B&H attorneys prepared responses to defendants' consolidated subject matter briefing, which were filed in August, September, and November 2012.  B&H attorneys also prepared for and participated in oral argument on the consolidated subject matter briefing in August, September, and November 2012.

174.    On August 15, 2012, Citigroup also moved to dismiss in the District Court based on § 546(g) of the Bankruptcy Code. *Picard v. Citibank,* No. 11 Civ. 7825 (JSR) (S.D.N.Y.), ECF Nos. 25–27. B&H attorneys prepared a response to Citigroup's motion, which was filed on August 24, 2012. *Id.*, ECF No. 31. B&H attorneys also prepared for and participated in oral argument on that motion on November 29, 2012. *Id.*, ECF No. 33.

175.    In addition to the tasks outlined above, B&H attorneys, on behalf of the Trustee, reached an agreement with Citigroup to extend the Trustee's time to respond to the motion to dismiss the complaint filed in this Court on July 26, 2011, while awaiting determinations from the District Court with respect to the consolidated subject matter briefing as well as Citigroup's motion to dismiss based on § 546(g) of the Bankruptcy Code. *Picard v. Citibank,* Adv. No. 10-05345 (BRL) (Bankr. S.D.N.Y.), ECF No. 56.

## Y.    MATTER 35 – NATIXIS

176.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants. *Picard v. Natixis*, Adv. No. 10-05353 (BRL) (Bankr. S.D.N.Y.).

177.    During the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included the Natixis Defendants' motion to withdraw the reference in consolidated subject matter briefing and oral argument. During the Compensation Period, B&H attorneys prepared responses to defendants' consolidated subject

matter briefing, which were filed in September 2012. B&H attorneys also prepared for and participated in oral argument on the consolidated subject matter briefing in October and November 2012.

178.    In addition to the tasks outlined above, B&H attorneys, on behalf of the Trustee, reached an agreement with the Natixis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with regard to the consolidated subject matter briefing. *Picard v. Natixis*, Adv. No. 10-05353 (BRL) (Bankr. S.D.N.Y.), ECF No. 54.

## Z.    MATTER 36 – MERRILL LYNCH

179.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International & Co. C.V. ("Merrill Lynch") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Merrill Lynch. *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (BRL) (Bankr. S.D.N.Y.).

180.    During the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included the Merrill Lynch motion to withdraw the reference in consolidated subject matter briefing and oral argument. B&H attorneys prepared responses to defendants' consolidated subject matter briefing, which were filed in August, September, and November 2012. B&H attorneys also prepared for and participated in oral argument on the consolidated subject matter briefing in September, October, and November 2012.

181.    In addition to the tasks outlined above, the Trustee has extended Merrill Lynch's time to respond to the complaint while awaiting a determination from the District Court with

respect to the consolidated subject matter briefing. *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (BRL) (Bankr. S.D.N.Y.), ECF No. 39.

## AA.    MATTER 37 – ABN AMRO

182.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) and ABN AMRO Incorporated (together, "ABN"), and Rye Select Broad Market XL Fund, LP and Rye Select Broad Market XL Portfolio Ltd. (together, "Tremont XL Funds") seeking the return of approximately $571 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of ABN and the Tremont XL Funds. *Picard v. ABN AMRO Bank, N.A. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. No. 10-05354 (BRL) (Bankr. S.D.N.Y.).

183.    During the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included ABN's motion to withdraw the reference in consolidated subject matter briefing and oral argument. B&H attorneys prepared responses to defendants' consolidated subject matter briefing, which were filed in August and September 2012. B&H attorneys also prepared for and participated in oral argument on the consolidated subject matter briefing in September, October, and November 2012.

184.    During the Compensation Period, B&H attorneys also prepared an amended complaint against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN Amended Def.") and Rye Select Broad Market XL Fund, LP, which was filed on August 8, 2012. *Picard v. ABN AMRO Bank*, Adv. No. 10-05354 (ECF No. 47). On September 5, 2012, ABN moved in the District Court to dismiss the amended complaint based on § 546(g) of the Bankruptcy Code. *Picard v. ABN AMRO Bank, N.A. (presently known as The Royal Bank*

*of Scotland, N.V.*), No. 11 Civ. 6878 (JSR) (S.D.N.Y.), ECF Nos. 33–35.  B&H attorneys prepared a response to ABN's motion, which was filed on September 25, 2012.  *Id.*, ECF No. 37. B&H attorneys also prepared for and participated in oral argument on that motion on November 29, 2012.

185.    In addition to the tasks outlined above, the Trustee has extended the defendants' time to respond to the amended complaint while awaiting determinations from the District Court with respect to the consolidated subject matter briefing, as well as ABN's motion to dismiss based on § 546(g) of the Bankruptcy Code.  *Picard v. ABN AMRO Bank*, Adv. No. 10-05354 (ECF Nos. 50–51).

## BB.    MATTER 38 – BANCO BILBAO

186.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of approximately $45 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of BBVA.  *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. No. 10-05351 (BRL) (Bankr. S.D.N.Y.).

187.    During the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included BBVA's motion to withdraw the reference to the Bankruptcy Court in consolidated subject matter briefing and oral argument. B&H attorneys prepared responses to defendants' consolidated subject matter briefing, which were filed in August and September 2012.  B&H attorneys also prepared for and participated in oral argument on the consolidated subject matter briefing in September, October, and November 2012.

188.    In addition to the tasks outlined above, on September 7, 2012, B&H attorneys, on behalf of the Trustee, reached an agreement with BBVA providing that BBVA will either supplement or renew its motion to dismiss the complaint, and extending the Trustee's time to respond to the motion. *Id.*, ECF No. 57.

## CC.    MATTER 39 – FORTIS

189.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants. *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv. No. 10-05355 (BRL) (Bankr. S.D.N.Y.).

190.    During the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included the Fortis Defendants' motions to withdraw the reference in consolidated subject matter briefing and oral argument. B&H attorneys prepared responses to defendants' consolidated subject matter briefing, which were filed in July, August, and September 2012. B&H attorneys also prepared for and participated in oral argument on the consolidated subject matter briefing in August, September, October, and November 2012.

191.    During the Compensation Period, B&H attorneys also prepared an amended complaint against the Fortis Defendants and Rye Select Broad Market XL Fund, LP, which was filed on July 3, 2012. *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv.

No. 10-05355 (ECF No. 42).  On September 5, 2012, the Fortis Defendants moved in the District

Court to dismiss the amended complaint based on § 546(g) of the Bankruptcy Code.  *Picard v.*

*ABN AMRO Retained Custodial Services (Ireland) Ltd.*, No. 11 Civ. 6877 (JSR) (S.D.N.Y.),

ECF No. 34–36.  B&H attorneys prepared a response to ABN's motion, which was filed on

September 25, 2012.  *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, 11 Civ.

6877 (ECF No. 38).  B&H attorneys also prepared for and participated in oral argument on that

motion on November 29, 2012.

192.    In addition to the tasks outlined above, the Trustee has extended the Fortis

Defendants and Rye Select Broad Market XL Fund, LP's time to respond to the amended

complaint while awaiting a determination from the District Court with respect to the motions to

withdraw the reference.  *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv.

No. 10-05355 (ECF Nos. 44–55).

## DD.    MATTER 40 – MEDICI

193.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance and civil action against Sonja Kohn, Unicredit S.p.A. ("UniCredit"), and numerous

other financial institutions, entities, and individuals (collectively, the "Kohn Defendants")

seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New

York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18

U.S.C. §§ 1961, *et seq.*, and other applicable law for preferences, fraudulent transfers, fraudulent

conveyances, and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Kohn Defendants.  *Picard v. Kohn*, Adv. No. 10-05411 (BRL) (Bankr.

S.D.N.Y. Dec. 17, 2012).  This matter also covers work performed by B&H on the English

matter *Madoff Sec. Int'l Ltd. (MSIL) v. Raven & Ors*, [2011] EWHC (Civ) 3102 (Eng.).  The

liquidator of MSIL, with the assistance of B&H attorneys, was able to obtain a worldwide freeze

against Sonja Kohn and certain of her entities in the amount of approximately £28 million.  Trial in this matter is scheduled to commence in London in June 2013.

194.    In addition to the tasks outlined above, during the Compensation Period, the Trustee participated in certain Austrian criminal proceedings against Sonja Kohn, Bank Medici, and Bank Austria as a victim and, in certain Liechtenstein criminal proceedings, against Sonja Kohn and Urszula Radel-Leszczynski as a private participant.  The Trustee also assisted his English counsel in relation to certain matters regarding Sonja Kohn under the English court's order, preparing an application for cross-examination of Sonja Kohn relating to these documents, and enforcing the worldwide freezing order.  B&H attorneys also continued investigating Sonja Kohn and her co-conspirators throughout Europe.

## EE.    MATTER 41 – WHITECHAPEL

195.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Whitechapel Management Ltd. and Granadilla Holdings Ltd. (together, the "Whitechapel Defendants") seeking the return of approximately $10 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Whitechapel Defendants.  *Picard v. Whitechapel Mgmt. Ltd.*, Adv. No. 10-05402 (BRL) (Bankr. S.D.N.Y. Dec. 9, 2010), ECF No. 1.

196.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys arranged for payment of third-party out-of-pocket costs in producing documents in accordance with the terms of the disclosure order that the Trustee earlier obtained in the BVI seeking documents from the registered agent for Granadilla Holdings Ltd.

197.    On August 16, 2012, the Trustee and B&H attorneys dismissed the proceeding against the Whitechapel Defendants because the defendant entities had been dissolved and could not be served with process.  (ECF No. 9).

## FF.    MATTER 42 – EQUITY TRADING

198.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Ltd., Equity Trading Fund Ltd., and BNP Paribas Arbitrage (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants.  *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (BRL) (Bankr. S.D.N.Y. Dec. 1, 2010), ECF No. 2.

199.    The Equity Trading Defendants filed motions, or joinders to the motions in the District Court, to withdraw the reference from this Court.  (ECF Nos. 16, 17,18,21).  The District Court included the motions in its orders for consolidated subject matter briefing and oral argument issued in May 2012.

200.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys and the Equity Trading Defendants renegotiated the right to file an amended complaint and revised the briefing schedule for any motions in response to the amended complaint.  (ECF No. 34).  B&H attorneys prepared a litigation action plan and conducted an in-depth document review in contemplation of renewed litigation.  The pre-trial conference is scheduled for July 31, 2013.

### GG.    MATTER 43 – DEFENDER

201.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Defender Ltd., Reliance Management (BVI) Ltd., Reliance Management (Gibraltar) Ltd., Reliance International Research LLC, Tim Brockmann, and Justin Lowe (collectively, the "Defender Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants. *Picard v. Defender Ltd.*, Adv. No. 10-05229 (BRL) (Bankr. S.D.N.Y. Dec. 5, 2010), ECF No. 1.

202.    On April 2, 2012, the Defender Defendants filed motions in the District Court to withdraw the reference from this Court. (ECF Nos. 24, 28).  The District Court partially granted these motions and included these motions in its orders for consolidated subject matter briefing and oral argument issued in May 2012.

203.    On April 27, 2012, defendants Reliance Management (BVI) Ltd., Reliance Management (Gibraltar) Ltd., and Tim Brockmann filed a motion in this Court to dismiss for lack of personal jurisdiction.  (ECF No. 36).  During the Compensation Period, B&H attorneys prepared the Trustee's opposition papers to that motion, which were filed on August 17, 2012 (ECF No. 49), and prepared for the oral argument.  The moving defendants filed their reply papers on October 26, 2012.  (ECF Nos. 55–56).  The oral argument was scheduled for December 19, 2012, but at the scheduled hearing, this Court converted the hearing into a Rule 16 conference on the motion to dismiss.

204.    In addition to supporting the Trustee's opposition papers to the motions identified above, during the Compensation Period, B&H attorneys negotiated the dismissal without prejudice of the adversary proceeding as against defendant Justin Lowe in exchange for a series

of discovery-related obligations accepted by Mr. Lowe.  Mr. Lowe was dismissed without prejudice on November 29, 2012.  (ECF No. 58).  The B&H attorneys also negotiated with the Defender Defendants to establish extensions of time to respond to the complaint.

## HH.   MATTER 44 – MACCABEE

205.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust (the "Trust"), John Greenberger Maccabee, individually and as trustee of the Trust, and Sherry Morse Maccabee, individually and as trustee of the Trust (collectively, the "Maccabee Defendants") seeking the return of approximately $1.5 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers and fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maccabee Defendants.  *Picard v. John Greenberger Maccabee & Sherry Morse Maccabee Living Trust*, Adv. No. 10-05407 (BRL) (Bankr. S.D.N.Y.).

206.    On July 19, 2011, the Maccabee Defendants moved to withdraw the reference. *Picard v. Maccabee*, No. 11 Civ. 04937 (JSR) (S.D.N.Y.), ECF No. 2.  During the Compensation Period, the Maccabee Defendants joined motions to dismiss based on § 546(e) and § 548(c) of the Bankruptcy Code and elected to participate in common-briefing related to those motions. The Trustee prepared and filed oppositions to the motions to dismiss.  *See* discussion *supra* Section (IV)(O).

## II.   MATTER 45 – LEVEY

207.    This matter reflects time invested by the Trustee and B&H attorneys pursuing four avoidance actions in which Joel Levey is a named defendant (collectively, the "Levey Actions").  The Levey Actions are as follows:  *Picard v. Joel Levey*, Adv. No. 10-04282 (BRL)

(Bankr. S.D.N.Y.); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-04894 (BRL)

(Bankr. S.D.N.Y.); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-05441 (BRL)

(Bankr. S.D.N.Y.); and *Picard v. Frances Levey Revocable Living Trust*, Adv. No. 10-05430

(BRL) (Bankr. S.D.N.Y.).    The action against Joel Levey, Adv. No. 10-04282, is a bad-faith

action and seeks the recovery of fictitious profit and principal.

208.    Together with Joel Levey, the other named defendants in the Levey Actions are

Aaron Levey Revocable Living Trust, Frances Levey Revocable Living Trust, Wendy Kapner

Revocable Trust, Wendy Kapner, Sandra Moore, and James Kapner (collectively, the "Levey

Defendants").    The individual Levey Defendants were named in their various capacities,

including as grantor, trustee, and/or beneficiary.    The Levey Actions seek an aggregate recovery

of approximately $6.8 million under SIPA, the Bankruptcy Code, the New York Debtor and

Creditor Law, and other applicable law for the recovery of avoidable transfers and damages

related to transfers made by BLMIS to or for the benefit of the Levey Defendants.

209.    During the Compensation Period, B&H attorneys moved forward with discovery

in the Levey Actions.

## JJ.    MATTER 46 – GLANTZ

210.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Richard M. Glantz and numerous other individuals, trusts and entities

(collectively, the "Glantz Defendants"), seeking the return of more than $113 million under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable

law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection

with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants.

*Picard v. Richard M. Glantz*, Adv. No. 10-05394 (BRL) (Bankr. S.D.N.Y. Dec. 9, 2010).

211.    Following the filing of the complaint in this action, certain defendants were dismissed based on hardship, settlement or other reasons.  On February 1, 2012 the remaining defendants filed a motion to dismiss.  (ECF Nos. 26–30).  The parties subsequently entered into stipulations extending the Trustee's time to amend the complaint in response to the motion to dismiss.  On March 31, 2012, the defendants filed a motion to withdraw the reference in the District Court.  *Picard v. Glantz*, No. 12-cv-02778 (JSR) (S.D.N.Y. July 12, 2012), ECF Nos. 1–3.  Judge Rakoff partially granted the motions to withdraw the reference to address certain issues to the majority of the avoidance actions brought by the Trustee in this SIPA proceeding.  (ECF Nos. 10–12).

212.    During the Compensation Period, B&H attorneys engaged in work related to these motions.  In addition to the tasks outlined above, B&H attorneys entered into stipulations regarding the timing of filing an amended complaint in response to the motion to dismiss.  B&H attorneys also worked on amending the complaint, as well as resolving claims involving certain defendants, including through the review of Hardship Program applications and settlements with certain subsequent transferee defendants.

## KK.    MATTER 47 – BONVENTRE

213.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Daniel Bonventre and Barbara Bonventre (together, the "Bonventre Defendants") seeking the return of approximately $12.6 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bonventre Defendants.  *Picard v. Daniel Bonventre*, Adv. No. 10-04214 (BRL) (Bankr. S.D.N.Y.).

214.    During the Compensation Period, B&H attorneys granted the Bonventre

Defendants several extensions of time to respond to the complaint up to and including December

27, 2012, as the action was stayed pending the criminal case against Daniel Bonventre.  *Id.*, ECF

No. 14; *see United States v. O'Hara*, 10 Cr. 228 (LTS) (S.D.N.Y.).

## LL.    MATTER 48 – BONGIORNO

215.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Annette Bongiorno and Rudy Bongiorno (together, the "Bongiorno

Defendants") seeking the return of approximately $22 million under SIPA, the Bankruptcy Code,

the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers,

fraudulent conveyances and damages in connection with certain transfers of property by BLMIS

to or for the benefit of the Bongiorno Defendants.  *Picard v. Annette Bongiorno*, Adv. No. 10-

04215 (BRL) (Bankr. S.D.N.Y.).

216.    The action was stayed through December 27, 2012 due to the pending criminal

case against Annette Bongiorno.  *See United States v. O'Hara*, 10 Cr. 228.

## MM.   MATTER 49 – GREENBERGER

217.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Robert and Phyllis Greenberger (together, the "Greenberger

Defendants") seeking the return of over $500,000 under SIPA, the Bankruptcy Code, the New

York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and

damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Greenberger Defendants.  *Picard v. Robert & Phyllis Greenberger*, Adv. No. 10-05408 (BRL)

(Bankr. S.D.N.Y.).

218.    On July 14, 2011, the Greenberger Defendants moved to withdraw the reference,

and B&H attorneys prepared an opposition to the motion.  *Picard v. Robert Greenberger &*

*Phyllis Greenberger*, No. 11-cv-04928 (JSR) (S.D.N.Y.), ECF Nos. 1, 12, 13.    During the

Compensation Period, the Greenberger Defendants joined motions to dismiss based on § 546(e)

and § 548(c) of the Bankruptcy Code and elected to participate in common briefing related to

those motions.    The Trustee and B&H attorneys prepared and filed oppositions to the motions to

dismiss.    *See* discussion *supra* Section (IV)(O).

## NN.    MATTER 50 – PITZ

219.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Enrica Cotellessa-Pitz and Thomas Pitz (together, the "Pitz

Defendants") seeking the return of over $3 million under SIPA, the Bankruptcy Code, the New

York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent

conveyances and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Pitz Defendants.    *Picard v. Cotellessa-Pitz*, Adv. No. 10-04213 (BRL) (Bankr.

S.D.N.Y.).

220.    The adversary proceeding was stayed up to and including March 20, 2013 due to

the criminal case against Ms. Cotellessa-Pitz.    *See United States v. O'Hara*, 10 Cr. 228.

## OO.    MATTER 51 – CRUPI

221.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Jo Ann Crupi, a former BLMIS employee, Judith Bowen, Debra E.

Guston, Guston & Guston, LLP, Pensco Trust Company, as former custodian of an individual

retirement account for the benefit of Jo Ann Crupi, and numerous trusts (collectively, the "Crupi

Defendants") seeking the return of over $8.7 million under SIPA, the Bankruptcy Code, the New

York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent

conveyances and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Crupi Defendants. *Picard v. Jo Ann Crupi*, Adv. No. 10-04216 (BRL) (Bankr. S.D.N.Y.).

222.    The action was stayed through March 20, 2013 due to the pending criminal case against Ms. Crupi. *See United States v. O'Hara*, 10 Cr. 228.

## PP.    MATTER 52 – DONALD FRIEDMAN

223.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against S. Donald Friedman, individually and in his capacity as a beneficiary of an individual retirement account, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman (collectively, the "Friedman Defendants"), seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Friedman Defendants. *Picard v. Friedman*, Adv. No. 10-05395 (BRL) (Bankr. S.D.N.Y.).

224.    During the Compensation Period, B&H attorneys met and conferred with opposing counsel and continued discovery, including preparing to depose the Friedman Defendants. Discovery was conducted pursuant to an amended case management plan submitted to the Court by B&H attorneys and so ordered during the Compensation Period. (ECF No. 63). B&H attorneys produced over 7,000 documents to the Friedman Defendants' counsel after an extensive review of documents in BLMIS files and documents produced by third parties. B&H attorneys also issued non-party subpoenas for documents to the Friedman Defendants' former accounting firm and related entities, and met and conferred with opposing counsel regarding counsel's objection to producing tax records. In addition, B&H attorneys reviewed document productions by the Friedman Defendants and non-party banks and engaged in several meet and

confers with opposing counsel to address continuing deficiencies with the Friedman Defendants' productions and issues concerning the attorney-client privilege.

## QQ.    MATTER 53 – MAGNIFY

225.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Osnat Dodelson, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and Robert H. Book (collectively, the "Magnify Defendants") seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (BRL) (Bankr. S.D.N.Y.).

226.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys continued their investigation of the Magnify Defendants located outside of the United States.    B&H attorneys negotiated and entered an amended case management plan with the Magnify Defendants.    (ECF No. 101).    B&H attorneys drafted and served written jurisdictional discovery requests for defendant Kurt Brunner, and received responses to those requests.    B&H attorneys conducted a deposition of Mr. Brunner as part of court-ordered jurisdictional discovery.    Jurisdictional discovery over Mr. Brunner is ongoing; the deadline to conclude jurisdictional discovery over Mr. Brunner has been extended to March 15, 2013 by stipulation of the parties.    B&H attorneys also prepared responses to discovery requests by Defendants Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc.

227.    B&H attorneys also assisted in the drafting of a responsive pleading by the Trustee's counsel in Israel related to the Trustee's motion to halt the voluntary liquidation of the defendant Yeshaya Horowitz Association and transfer the liquidation to a court-supervised liquidation before the Jerusalem District Court.  B&H attorneys also drafted various motions, briefs, and pleadings related to a motion to withdraw the reference filed by defendants Robert H. Book and R.H. Book LLC on April 2, 2012. *Picard v. Robert H. Book*, No. 12-02482  (JSR) (S.D.N.Y.).

228.    In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate (Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Apfelbaum Defendants.  *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (BRL) (Bankr. S.D.N.Y.).

229.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys continued their investigation of the Apfelbaum Defendants, who are located outside of the United States.  B&H attorneys prepared for and attended a hearing on the Apfelbaum Defendants' motion seeking to dismiss the Trustee's amended complaint for lack of personal jurisdiction and *forum non conveniens*.  On October 23, 2012, this Court adjourned the hearing on the Apfelbaum Defendants' motion to dismiss and ordered jurisdictional discovery.  B&H attorneys drafted and served jurisdictional discovery requests on the Apfelbaum Defendants.

Jurisdictional discovery over the Apfelbaum Defendants is ongoing; the deadline to conclude jurisdictional discovery of the Apfelbaum Defendants has been extended to March 15, 2013 by stipulation of the parties. B&H attorneys also drafted various motions and pleadings related to a motion to withdraw the reference filed by the Apfelbaum Defendants on April 2, 2012. *Picard v. Estate (Succession) of Doris Igoin*, No. 12-02872 (JSR) (S.D.N.Y.).

## RR.    MATTER 54 – MENDELOW

230.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela (Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants. *Picard v. Steven B. Mendelow*, Adv. No. 10-04283 (BRL) (Bankr. S.D.N.Y.).

231.    The Mendelow Defendants moved to withdraw the reference, which was granted in part. *Picard v. Mendelow*, No. 11 Civ. 07680 (JSR) (S.D.N.Y.), ECF No. 14. B&H attorneys have continued to monitor the developments in the third-party state court action against Stephen B. Mendelow, as discovery has continued against the remaining defendants in that action. B&H attorneys have granted the Mendelow Defendants several extensions of time to respond to the complaint. Their answer is currently due in April 2013.

## SS.    MATTER 56 – LIPKIN

232.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Irwin Lipkin, Carole Lipkin, Eric Lipkin, Erika Lipkin, Marc Lipkin, Russell Lipkin, Karen Yokomizo Lipkin, and other individuals (collectively, the "Lipkin

Defendants") seeking the return of approximately $9 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lipkin Defendants. *Picard v. Irwin Lipkin*, Adv. No. 10-04218 (BRL) (Bankr. S.D.N.Y.).

233.    During the Compensation Period, defendant Irwin Lipkin was indicted on criminal charges and the sentencing of defendant Eric Lipkin, who has pleaded guilty to criminal charges, was postponed. *See United States v.O'Hara*, 10-cr-00228.    B&H attorneys granted certain of the Lipkin Defendants extensions of time to respond to the complaint, and prepared and agreed to a second amended case management plan. *Picard v. Lipkin*, Adv. No. 10-04218, ECF No. 66.   For the remaining Lipkin Defendants, the next pre-trial conference is scheduled to be held on June 26, 2013.

## TT.    MATTER 57 – PEREZ/O'HARA

234.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jerome O'Hara, Bernadette O'Hara, the O'Hara Family Partnership, Elizabeth Sarro, George Perez, and Jeanette Perez (collectively, the "Perez/O'Hara Defendants") seeking the return of over $6 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Perez/O'Hara Defendants.   *Picard v. O'Hara*, Adv. No. 10-04272 (BRL) (Bankr. S.D.N.Y.).

235.    The Trustee's adversary proceeding against Jerome O'Hara, George Perez, and the other Perez/O'Hara Defendants effectively has been stayed through April 24, 2013 due to the pending criminal cases against them. *See United States v. O'Hara*, 10-cr-00228.

## UU.    MATTER 58 – PJ ADMINISTRATORS

236.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants. *Picard v. American Sec. Mgmt., L.P.*, Adv. No. 10-05415 (BRL) (Bankr. S.D.N.Y.).

237.    During the Compensation Period, B&H attorneys granted the PJ Defendants extensions of time to respond to the amended complaint pending the disposition of the common briefing before Judge Rakoff.

## VV.    MATTER 59 – STANLEY SHAPIRO

238.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $61.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *Picard v. Shapiro*, Adv. No. 10-05383 (BRL) (Bankr. S.D.N.Y.).

239.    During the Compensation Period, B&H attorneys continued to develop the Trustee's case against the Shapiro Defendants and consented to several extensions of time for the Shapiro Defendants to respond to the complaint. After Judge Rakoff withdrew the reference on several issues, the Shapiro Defendants filed a motion to dismiss various claims of the amended

complaint in the District Court. *Picard v. Shapiro*, No. 11-cv-05835 (JSR) (S.D.N.Y.), ECF No. 25. Judge Rakoff recently ruled on several issues raised by the Shapiro Defendants in their motion. (ECF Nos. 36, 37).

## WW.  MATTER 60 – AVELLINO & BIENES

240.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (BRL) (Bankr. S.D.N.Y.).

241.    On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint in this Court. (ECF No. 23). That same day, certain A&B Defendants moved to withdraw the reference. *Picard v. Frank J. Avellino*, No. 11-03882 (JSR) (S.D.N.Y.), (ECF Nos. 1-3). The motion to withdraw the reference was fully briefed in the District Court and oral argument was held on October 18, 2011. The reference to this Court was withdrawn on several issues on February 29, 2012. (ECF No. 20). The A&B Defendants are currently proceeding in a consolidated briefing before the District Court on the issues withdrawn. As such, the motion to dismiss has been held in abeyance and the briefing schedule has been vacated. *See Picard v. Frank J. Avellino*, No. 11-03882 (JSR) (S.D.N.Y.).

242.    While the above-referenced motions have been pending, B&H attorneys have continued to engage in discovery preparation, case assessment and strategy, and the review and disposition of Hardship Applications.

## XX.    MATTER 61 – MAXAM

243.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Maxam Absolute Return Fund, L.P., Maxam Absolute Return Fund, Ltd., Maxam Capital Management, LLC, Maxam Capital GP LLC, Sandra L. Manzke Revocable Trust, Sandra L. Manzke, as trustee and individually, Suzanne Hammond, Walker Manzke, and April Bukofser Manzke (collectively, the "Maxam Defendants") seeking the return of approximately $100 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maxam Defendants.  *Picard v. Maxam Absolute Return Fund, L.P.*, Adv. No. 10-05342 (BRL) (Bankr. S.D.N.Y.).

244.    On September 22, 2011, B&H attorneys petitioned this Court to enjoin an action for a declaratory judgment of non-liability brought in the Cayman Islands against the Trustee by Maxam Absolute Return Fund, Ltd ("Maxam Ltd.").  (ECF Nos. 42, 43).  On October 12, 2011, this Court enjoined the action based on Maxam Limited's violation of the automatic stay (ECF No. 54), and on October 14, 2011, local counsel for the Trustee in the Cayman Islands received a Notice of Discontinuance.  On October 24, 2011, Maxam Ltd. filed a notice of appeal to the District Court. (ECF No. 64).  The appeal was assigned to United States District Judge J. Paul Oetken, and the parties briefed the motion in the District Court.  By Memorandum and Order dated May 4, 2012, the District Court affirmed this Court's order enjoining the Cayman action. *Maxam v. Picard,* No. 11-08629 (JPO) (S.D.N.Y.), ECF No. 15.  Maxam filed a Notice of Appeal on May 29, 2012.  *Maxam v. Picard,* No. 12-2194 (2d Cir.).  On September 11, 2012, during the Compensation Period, Maxam Ltd. filed their opening appellate brief with the Second

Circuit. (ECF No. 41). The Trustee subsequently prepared and filed his opposition brief on December 11, 2012. (ECF No. 62).

245. The parties also engaged in discovery during the Compensation Period. Based on written discovery exchanged between the parties, B&H attorneys undertook an extensive review of documents within the Trustee's possession, custody and/or control for the production of responsive documents to the Maxam Defendants. The Trustee made multiple productions of hundreds of thousands of pages of documents to the Maxam Defendants during the Compensation Period, including confidential documents produced to the Trustee by third parties that required noticing in accordance with this Court's June 6, 2011 Litigation Protective Order, as well as other applicable confidentiality agreements. The Trustee also served supplemental written discovery requests on the Maxam Defendants and responded to supplemental requests served by the Maxam Defendants. In addition, B&H attorneys spent significant time reviewing, analyzing, and organizing documents produced by the Maxam Defendants in an effort to prepare for depositions, anticipated motions, and trial. Such work assisted the Trustee in bringing an application to this Court to expand the number of depositions the Trustee may take in this action.

## YY.  MATTER 62 – SUBSEQUENT TRANSFERS

246. This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS. Under § 550 of the Bankruptcy Code, the Trustee may recover transfers from BLMIS to a direct customer or from any entity to whom the customer made transfers.

247. During the Compensation Period, the Trustee briefed and presented argument before this Court on the Bureau of Labor Insurance's motion to dismiss in *Picard v. Bureau of Labor Insurance,* Adv. No 11-02732 (Bank. S.D.N.Y.) (BRL) on issues of personal jurisdiction, the Foreign Sovereign Immunities Act, alleged extraterritorial application of SIPA and the

Bankruptcy Code, and the effect of the Trustee's settlement with Fairfield Sentry, the initial transferee. On October 11, 2012, this Court denied the motion to dismiss. *Id.*, ECF No. 51.

248.     The Trustee filed amended complaints in response to motions to dismiss filed by ABN Amro Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Limited) in *Picard v. ABN Amro Bank (Ireland) Ltd.*, Adv. No. 10-05355 (BRL) (Bankr. S.D.N.Y.) (ECF No. 42) and by ABN Amro Bank N.V. (f/k/a The Royal Bank of Scotland, N.V.) in *Picard v. ABN Amro Bank N. V.*, Adv. No. 10-05354 (BRL) (Bankr. S.D.N.Y.).  (ECF No. 47).

249.     The Trustee also briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to common briefing and hearings.

250.     As of November 30, 2012, the Trustee and the subsequent transfer defendants had entered into stipulations extending the response date to the Trustee's complaints and amended complaints while awaiting the ruling by the District Court on the issues subject to common briefing and hearings.

251.     The Trustee's investigation is ongoing and additional recovery actions will be filed.

## ZZ.   MATTER 63 – CITRUS

252.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citrus Investment Holdings Ltd. ("Citrus") seeking the return of over $17 million under SIPA and the Bankruptcy Code in connection with certain transfers of property by BLMIS to or for the benefit of Citrus. *Picard v. Citrus Investment Holdings Ltd.*, Adv. No. 10-04471 (BRL) (Bankr. S.D.N.Y.).

253.     On March 30, 2012, Citrus filed a motion to withdraw the reference to the District Court, for consideration of (1) the Section 546(e) "safe harbor", (2) the applicable "good faith"

standard (3) Citrus' right to claim a Section 502 offset, and (4) Citrus's entitlement to a jury trial. *Picard v. Citrus Investment Holdings Ltd.*, No. 12-02435 (S.D.N.Y.), ECF Nos. 1–3) (the "Citrus Action").  On May 16, 2012, Judge Rakoff included the Citrus Action in a consolidated order partially withdrawing the reference and dismissing certain claims under § 546(e) of the Bankruptcy Code, thereby providing the basis for a Second Circuit appeal on the issue, which appeal is pending.  (ECF No. 11).  On June 21, 2012 Judge Rakoff included the Citrus Action in an order partially withdrawing the reference and consolidating the briefing on the applicable "good faith" standard for avoidance of certain transfers.  (ECF No. 12).

### AAA.  MATTER 65 – LEGACY

254.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC, HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.   *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y.).

255.    During the Compensation Period, B&H attorneys continued their factual investigation of the Legacy Capital Defendants.  This ongoing investigation includes, in part, the review of documents relating to the Legacy Capital Defendants' facilitation of investments of other people's money through BLMIS, and discussions with counsel for the Legacy Capital Defendants regarding discovery and other issues.

**BBB.  MATTER 66 – LIEBERBAUM**

256.   This matter characterizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Michael Lieberbaum and Cynthia Lieberbaum (together, the "Lieberbaum Defendants") seeking the return of approximately $2.36 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lieberbaum Defendants.  *Picard v. Michael Lieberbaum*, Adv. No. 10-05406 (BRL) (Bankr. S.D.N.Y.).

257.   During the Compensation Period, discovery in this matter was ongoing.  B&H attorneys produced documents responsive to the Lieberbaum Defendants' document requests, drafted and issued several subpoenas *duces tecum* on various third parties with knowledge and information relevant to this case, reviewed documents produced to the Trustee in response to these subpoenas, conducted depositions and interviews of additional third-party witnesses, served document requests on the Lieberbaum Defendants, negotiated and obtained consent from the Lieberbaum Defendants to increase the number of depositions each party may take without seeking Court permission, and noticed the depositions of the Lieberbaum Defendants and additional third parties.

**CCC.  MATTER 72 – PLAZA**

258.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Plaza Investments International Limited and Notz, Stucki Management (Bermuda) Limited (collectively, the "Plaza Defendants") seeking the return of approximately $235 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with

certain transfers of property by BLMIS to or for the benefit of the Plaza Defendants. *Picard v. Plaza Invs. Int'l Ltd.*, Adv. No. 10-04284 (BRL) (Bankr. S.D.N.Y.).

259.    On July 12, 2012, Judge Rakoff issued an order as to the Plaza Defendants' fully briefed motion to withdraw the reference, stating that the Plaza Defendants raised the same issues that the District Court previously arranged for consolidated briefing, and directed the Plaza Defendants to continue to proceed according to the procedures arranged for consolidated briefing. *See* Order, *Picard v. Plaza Invs. Int'l Ltd.*, No. 12-cv-02646 (JSR) (S.D.N.Y. July 12, 2012), ECF No. 15.  As of November 30, 2012, those issues remained under consideration by the District Court.

## V.    COMPENSATION REQUESTED

260.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

261.    The Trustee and B&H expended 135,003.30 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $363.89 for fees incurred.[11]  The blended attorney rate is $426.03.

262.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application.  In connection with the five monthly

---

[11] In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

statements, the Trustee and B&H voluntarily adjusted their fees by writing off $3,330,646.50 (in addition to the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $417,152.32.

263.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $5,458,553.80.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in chapter 11 cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

264.    Pursuant to the Second Amended Compensation Order, on August 22, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from July 1, 2012 through July 31, 2012 (the "July Fee Statement").  The July Fee Statement reflected fees of $11,687,147.00 and expenses of $314,182.92.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the July Fee Statement reflected fees of $10,518,432.30.    After subtracting the Court-ordered 10% holdback, SIPC advanced $9,466,589.07 for services rendered and $314,182.92 for expenses incurred by the Trustee and B&H.

265.    Pursuant to the Second Amended Compensation Order, on September 21, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from August 1, 2012 through August 31, 2012 (the "August Fee Statement").  The August Fee Statement reflected fees of $12,828,899.50 and expenses of $163,930.03.  SIPC's staff requested certain adjustments and made suggestions,

which were adopted by the Trustee and B&H.  After such adjustments, the August Fee Statement reflected fees of $11,546,009.55.  After subtracting the Court-ordered 10% holdback, SIPC advanced $10,391,408.60 for services rendered and $163,930.03 for expenses incurred by the Trustee and B&H.

266.    Pursuant to the Second Amended Compensation Order, on October 23, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from September 1, 2012 through September 30, 2012 (the "September Fee Statement").  The September Fee Statement reflected fees of $11,035,529.50 and expenses of $399,294.54.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the September Fee Statement reflected fees of $9,931,976.55.  After subtracting the Court-ordered 10% holdback, SIPC advanced $8,938,778.90 for services rendered and $399,294.54 for expenses incurred by the Trustee and B&H.

267.    Pursuant to the Second Amended Compensation Order, on November 28, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from October 1, 2012 through October 31, 2012 (the "October Fee Statement").  The October Fee Statement reflected fees of $10,281,160.00 and expenses of $130,248.45.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the October Fee Statement reflected fees of $9,253,044.00.  After subtracting the Court-ordered 10% holdback, SIPC advanced $8,327,739.60 for services rendered and $130,248.45 for expenses incurred by the Trustee and B&H.

268.    Pursuant to the Second Amended Compensation Order, on December 21, 2012, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from November 1, 2012 through November 30, 2012 (the "November Fee Statement").   The November Fee Statement reflected fees of $8,752,802.00 and expenses of $151,227.32.   SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.   After such adjustments, the November Fee Statement reflected fees of $7,877,521.80.   After subtracting the Court-ordered 10% holdback, SIPC advanced $7,089,769.62 for services rendered and $151,227.32 for expenses incurred by the Trustee and B&H.

269.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

270.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofesionals.   The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

271.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

272.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services

rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

273.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

274.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

275.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

276.    While the Trustee has recovered or entered into agreements to recover more than $9.29 billion as of November 30, 2012, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

277.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief of the Trustee.  Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

278.    Therefore, with respect to this Application, the Trustee and B&H request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on May 29, 2013.

279.    The Trustee and B&H submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VII.    CONCLUSION

280.    The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $49,126,984.20 (of which $44,214,285.79 is to be paid currently and $4,912,698.41 is to be held back through the conclusion of the liquidation period or until further

order of the Court) as an interim payment for professional services rendered by the Trustee and

B&H during the Compensation Period, and $1,158,883.26 as reimbursement of the actual and

necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition

of such services; and (ii) granting such other and further relief as the Court may deem just and

proper.

Dated: New York, New York
        April 29, 2013

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: * /s/  David J. Sheehan*
        Baker & Hostetler LLP
        45 Rockefeller Plaza
        New York, New York 10111
        Telephone: (212) 589-4200
        Facsimile: (212) 589-4201
        Irving H. Picard
        Email: ipicard@bakerlaw.com
        David J. Sheehan
        Email: dsheehan@bakerlaw.com
        Seanna R. Brown
        Email: sbrown@bakerlaw.com
        Heather R. Wlodek
        Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC And Bernard L. Madoff*