**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*And Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>    Plaintiff-Applicant, <br><br>    v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>    Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br>    Debtor. | |

**TRUSTEE'S NINTH INTERIM REPORT**
**FOR THE PERIOD ENDING MARCH 31, 2013**

# TABLE OF CONTENTS

**Page**

I.    EXECUTIVE SUMMARY ................................................................................... 1

II.   BACKGROUND ............................................................................................... 3

III.  FINANCIAL CONDITION OF ESTATE.......................................................... 3

IV.   ADMINISTRATION OF THE ESTATE ........................................................... 4

    A.    Marshaling And Liquidating The Estate Assets ..................................... 4

    B.    Retention Of Professionals ....................................................................... 5

V.    CLAIMS ADMINISTRATION........................................................................... 5

    A.    Claims Processing..................................................................................... 5

        i.    Customer Claims.............................................................................. 5

        ii.   General Creditor Claims ................................................................. 6

        iii.  The Trustee Has Kept Customers Informed Of The Status Of The
              Claims Process ............................................................................... 6

        iv.   The Hardship Program.................................................................... 7

    B.    Objections To Claims Determinations..................................................... 9

    C.    Settlements Of Customer Claims Disputes............................................. 10

VI.   PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ........................ 11

    A.    Net Equity Dispute................................................................................. 11

    B.    Time-Based Damages ............................................................................. 13

    C.    "Customer" Definition ........................................................................... 15

VII.  RECOVERIES AND CONTINGENCIES ....................................................... 19

    A.    Recoveries Accomplished During Prior Report Periods ...................... 19

    B.    Recoveries Accomplished During This Report Period.......................... 19

    C.    Earlier Settlements ................................................................................. 20

VIII. THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO
       CUSTOMERS................................................................................................. 25

    A.    The Customer Fund................................................................................. 25

    B.    The Trustee's Initial Allocation of Property to the Fund of Customer
        Property and Authorizing An Interim Distribution to Customers ....................... 26

    C.    The Trustee's Second Allocation of Property to the Fund of Customer
        Property and Authorizing the Second Interim Distribution to Customers.......... 27

    D.    The Trustee's Third Allocation of Property to the Fund of Customer
        Property and Authorizing the Third Interim Distribution to Customers............. 29

    E.    The General Estate ................................................................................. 30

# TABLE OF CONTENTS

(continued)

**Page**

| | | |
|---|---|---|
| IX. | LITIGATION | 30 |
| | A. | The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals | 30 |
| | | i. | The HSBC Action | 31 |
| | | ii. | The JPMorgan Action | 33 |
| | | iii. | The Luxalpha Action | 35 |
| | | | (a) | Luxalpha, The Luxembourg Investment Fund ("LIF") and Access Injunction Actions | 35 |
| | | | (b) | The Oreades Action | 36 |
| | | | (c) | Banque Degroof Action | 36 |
| | | iv. | The Kohn Action | 37 |
| | | v. | Other Proceedings Relating to Motions To Withdraw | 39 |
| | | | (a) | The Administrative Order | 39 |
| | | | (b) | Consolidated Briefing Orders | 40 |
| | | | (c) | The 546(e) Appeal | 43 |
| | B. | The Bankruptcy Court and Related Appeals | 45 |
| | | i. | Avoidance Actions | 45 |
| | | ii. | Subsequent Transferee Actions | 46 |
| | | iii. | *Picard v. ABN AMRO Bank N.A.* | 47 |
| | | iv. | *Picard v. ABN AMRO (Ireland) Ltd.* | 49 |
| | | v. | *Picard v. Citibank* | 50 |
| | | vi. | *Picard v. Cohmad Sec. Corp.* | 52 |
| | | vii. | *Picard v. Defender* | 53 |
| | | viii. | *Picard v. Friedman* | 54 |
| | | ix. | *Picard v. Irwin Lipkin* | 56 |
| | | x. | *Picard v. J. Ezra Merkin* | 56 |
| | | xi. | *Picard v. Kingate* | 61 |
| | | xii. | *Picard v. Magnify Inc.* | 62 |
| | | xiii. | *Picard v. Maxam Absolute Return Fund, L.P.* | 64 |
| | | xiv. | *Picard v. Michael Lieberbaum* | 66 |
| | | xv. | *Picard v. Peter B. Madoff* | 67 |
| | | xvi. | *Picard v. Richard M. Glantz* | 71 |
| | | xvii. | *Picard v. Stanley Chais* | 73 |

# TABLE OF CONTENTS
(continued)

|  |  |  |  | **Page** |
|---|---|---|---|---|
| | C. | Injunction Proceedings | | 74 |
| | | (a) | *Picard v. Fox*, Adv. No. 10-03114 (BRL), Case Nos. 10-04652, 10-cv-07101, and 10-cv-07219 (JGK); *Picard v. Picower*, Adv. No. 09-01197 (BRL), Case Nos. 11-cv-01328, 11-cv-01298 (JGK); *In re Bernard L. Madoff Inv. Sec., LLC*, 12-1645 and consolidated cases (2d Cir.) | 75 |
| | | (b) | *Picard v. Stahl*, Adv. No. 10-03268 (BRL), Case Nos. 11-cv-02246, 11-cv-02135, 11-cv-02392 (AKH), Case Nos. 11-5421 and 11-5428 (2d Cir.) | 76 |
| | | (c) | *Picard v. Hall*, Adv. No. 12-01001 (BRL) | 78 |
| | | (d) | *Picard v. Maxam Absolute Return Fund*, Adv. No. 10-05342 (BRL) | 79 |
| | | (e) | *Picard v. Schneiderman*, Adv. No. 12-01778 (BRL) | 80 |
| | | (f) | *Goldman Lift-Stay Motions,* Adv. No. 08-01789 (BRL) | 80 |
| | | (g) | *Picard v. Access Mgmt. Luxembourg S.A.,* Adv. No. 12-01563 (BRL) | 81 |
| | | (h) | *Picard v. Kingate Global Fund, Ltd.*, Adv. No. 12-01920 (Bankr. S.D.N.Y.) | 82 |
| | | (i) | *Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-2047 (Bankr. S.D.N.Y.), No. 12-9408 (S.D.N.Y.) | 82 |
| X. | | | INTERNATIONAL INVESTIGATION AND LITIGATION | 83 |
| | | i. | Austria and Italy | 84 |
| | | ii. | Bermuda | 84 |
| | | iii. | BVI and the Cayman Islands | 84 |
| | | iv. | England | 85 |
| | | v. | Gibraltar | 86 |
| | | vi. | Ireland | 87 |
| | | vii. | Switzerland and Luxembourg | 87 |
| XI. | | | FEE APPLICATIONS AND RELATED APPEALS | 88 |
| | A. | | Objections to Prior Fee Applications | 88 |
| | B. | | Tenth Fee Application | 88 |
| | C. | | Eleventh Fee Application | 89 |
| XII. | | | CONCLUSION | 90 |

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the estate of

Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the

"Debtors"), respectfully submits his Ninth Interim Report (this "Report") pursuant to SIPA

§ 78fff-1(c) and this Court's Order on Application for an Entry of an Order Approving Form and

Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination,

and Adjudication of Claims; and Providing Other Relief entered on December 23, 2008 (the

"Claims Procedures Order") (ECF No. 12).[2]  Pursuant to the Claims Procedures Order, the

Trustee shall file additional interim reports every six (6) months.  This Report covers the period

between October 1, 2012 and March 31, 2013 (the "Report Period").

## I.    EXECUTIVE SUMMARY

1.    The District Court's words from over a year ago are still apt.  As recognized by

the United States District Court for the Southern District of New York (the "District Court"), the

Trustee "has worked relentlessly over nearly three years to bring assets that passed through

[Bernard L. Madoff Investment Securities LLC] back into the customer fund, in order to restore

nearly $20 billion in customer losses."  *Picard v. J.P. Morgan Chase & Co.*, 460 B.R. 84, at 88

(S.D.N.Y. 2011).  Through pre-litigation and other settlements, the Trustee has successfully

recovered, or reached agreements to recover, more than $9.33 billion—more than 53% of the

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

currently estimated principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS.

2.      The Trustee made his third interim distribution from the Customer Fund during this Report Period, distributing approximately $507.48 million to customers with allowed claims. When combined with the approximately $501.03 million first interim distribution, the $3.64 billion second interim distribution, and $807.18 million of advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"),[3] the Trustee has distributed approximately $5.45 billion to BLMIS customers to date.  This represents a significant milestone in this litigation, with 1,106 BLMIS accounts fully satisfied.  The 1,106 fully satisfied accounts represent approximately 51% of accounts with allowed claims.

3.      The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel")), continued to litigate hundreds of individual cases before this Court, the District Court, the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the United States Supreme Court (the "Supreme Court"), and dozens of international courts.

4.      This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history.  Billions of dollars and thousands of people and entities located across the world were involved in this fraud.  The

---

[3] SIPC has advanced over $800 million to date to the Trustee to pay allowed claims.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

Trustee continues to work diligently to coordinate the administration, investigation, and litigation to maximize efficiencies and reduce costs.

5.      All Interim Reports, along with a complete docket and substantial information about this liquidation proceeding, are located on the Trustee Website, www.madofftrustee.com.

## II.      BACKGROUND

6.      The Trustee's prior interim reports, each of which is fully incorporated herein,[4] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

## III.      FINANCIAL CONDITION OF ESTATE

7.      No administration costs, including the compensation of the Trustee and his counsel, are being paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers.  Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid from administrative advances from SIPC. These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has or will obtain.  Thus, recoveries from litigation, settlements, and other means will be available in their entirety for the satisfaction of customer claims.

8.      A summary of the financial condition of the estate as of March 31, 2013 is provided in Exhibit A attached hereto.

9.      This summary reflects cash and cash equivalents in the amount of $173,664,449.00 and short-term United States Treasuries in the amount of $4,391,869,491.00.

---

[4] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); and April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066).

10.      As detailed in <u>Exhibit A</u>, as of March 31, 2013, the Trustee requested and SIPC advanced $1,743,493,862.39, of which $802,424,645.11 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account,[5] and approximately $741,369,217.28 was used for administrative expenses.

## IV.      ADMINISTRATION OF THE ESTATE

### A.      Marshaling And Liquidating The Estate Assets

11.      The Trustee and his Counsel have worked diligently to investigate, examine, and evaluate the Debtor's activities, assets, rights, liabilities, customers, and other creditors.  Thus far, the Trustee has been successful in recovering or entering into agreements to recover a significant amount of assets for the benefit of customers, totaling over $9.3 billion.  For a more detailed discussion of prior recoveries, *see* Section V.B. of the First Interim Report; Section IV of the Second, Amended Third, and Fourth Interim Reports; Section VII of the Fifth Interim Report; Section IV of the Sixth Interim Report; and Section VII of the Seventh and Eighth Interim Reports.

12.      The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities.  As of the Eighth Interim Report, the Trustee had received distributions from seven of these class action settlements totaling over $91,000.  The Trustee has not and will not receive any distributions from the eighth class action settlement.  In addition, the Trustee has identified claims that BLMIS may have in 135 other class action suits also arising out of its proprietary and market making activities.  The Trustee has filed proofs of

---

[5] The Trustee must receive an executed assignment and release form from each customer before releasing an advance of funds from SIPC.  Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims that have been determined is less than the amount of SIPC advances committed by the Trustee.  *See supra* note 3.

claim in 94 of these cases and, based on a review of relevant records, has declined to pursue claims in 26 additional cases. Subject to the completion of a review of relevant records, the Trustee intends to file claims in the remaining 15 cases. As of March 31, 2013, the Trustee has recovered $529,404.76 from settlements relating to 39 of the 94 claims filed directly by the Trustee, of which $71,491.93 was recovered during the Report Period.

**B.    Retention Of Professionals**

13.    In addition to the professionals already retained by the Trustee, during the Report Period and pursuant to orders of this Court, the Trustee retained Triay Stagnetto Neish, as special counsel to represent him in Gibraltar (ECF No. 5076), and Ritter & Ritter as special counsel to represent him in Liechtenstein (ECF No. 5220).

## V.    CLAIMS ADMINISTRATION

**A.    Claims Processing**

**i.    Customer Claims**

14.    During the Report Period, the Trustee allowed $3,418,802,369.86 in customer claims, primarily relating to the customer claims of Tremont Group Holdings, Inc., Beacon Associates LLC, and Andover Associates LP. This brings the total amount of allowed claims as of March 31, 2013 to $11,072,023,697.25. The Trustee has paid or committed to pay $807,177,373.62 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.

15.    During the Report Period, the Trustee reduced claims by approximately $453,980.00.

16.    As of March 31, 2013, there are 171 claims relating to 122 accounts that are "deemed determined," meaning that the Trustee has instituted litigation against those

accountholders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code.  Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### ii.      General Creditor Claims

17.      As of March 31, 2013, the Trustee had received 427 timely and 21 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 427 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $264.9 million.  At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.      The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

18.      Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

19.      The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall liquidation.  In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer

Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

20.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals who follow up with a return e-mail or telephone call to the claimants. As of March 31, 2013, the Trustee and his professionals had received and responded to more than 7,000 e-mails via the Trustee Website from BLMIS customers and their representatives.

21.     The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of March 31, 2013, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,000 calls from claimants and their representatives.

22.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.     The Hardship Program

23.     At the commencement of claims administration, the Trustee established the Hardship Program to accelerate the determination of claims and the receipt of SIPC protection up to $500,000 for individual account holders who were dealing with hardship. An individual could qualify for the Hardship Program if he or she filed a claim and was: (i) unable to pay for necessary living or medical expenses; (ii) over 65 years old and forced to reenter the work force after retirement; (iii) declaring personal bankruptcy; (iv) unable to pay for the care of dependents; or (v) suffering from extreme financial hardship beyond the identified circumstances.

24.     As of December 11, 2010, the Trustee had received 394 Hardship Program applications.  The Trustee obtained advances from SIPC and issued 119 checks to hardship applicants with allowed claims.  The Trustee also worked in good faith with approved applicants to reconcile any disputed portions of their claims.  Of the 394 Hardship Program applications received prior to December 11, 2010, the Trustee assessed the information provided and, in the exercise of his discretion, decided not to commence avoidance actions against 249 hardship applicants.

25.     The Trustee expanded the Hardship Program into a second phase as he instituted avoidance actions.  While the law requires the Trustee to pursue avoidance actions to recover customer property, the Trustee has stated that he will not pursue avoidance actions against BLMIS accountholders suffering proven hardship.  In order to forego an avoidance action, the Trustee needed financial information about the accountholder.  Thus, the Trustee announced in November 2010 that the Hardship Program would focus on avoidance action defendants and requested that accountholders come forward to share information regarding their hardships. Through this program, the Trustee has worked with a substantial number of hardship applicants who were subject to avoidance actions to confirm their hardship status and forego the pursuit of an avoidance action.

26.     In the second phase of the Hardship Program, as of March 31, 2013, the Trustee had received 494 applications from avoidance action defendants relating to 313 adversary proceedings.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee has dismissed 194 Hardship Program applicants-defendants from avoidance actions.  As of March 31, 2013, there were 78 applications still under review and 222 that were otherwise resolved because they were either (i)

withdrawn by the applicant, (ii) deemed withdrawn for failure of the applicant to pursue the application, (iii) denied for lack of hardship, or (iv) referred for consideration of settlement.

27.    The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of the Hotline, and the Trustee urges customers to continue using this resource and the Hardship Program if they believe they qualify.  Further information and applications are available on the Trustee Website.

**B.    Objections To Claims Determinations**

28.    As required by the Claims Procedures Order and described in each determination letter sent by the Trustee ("Determination Letter"), BLMIS claimants have thirty days from the date of a Determination Letter to object to the Trustee's determination of their claim.  Claimants who disagree with the Trustee's determination of their claim must file with the Court a written opposition setting forth the grounds of disagreement and provide the Trustee with the same.  A hearing date will be obtained by the Trustee, and claimants will be notified of that date.  As of March 31, 2013, 2,311 objections (which include duplicates, amendments, and supplements) have been filed with the Court.  These objections relate to 4,300 unique claims and 1,155 BLMIS accounts.

29.    The following objections, among others, have been asserted: (i) Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS; (ii) the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method"; (iii) claimants should receive interest on deposited amounts; (iv) the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments; (v) claimants paid income taxes on

distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits; (vi) each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account; and (vii) there is no legal basis for requiring the execution of a Partial Assignment and Release prior to prompt payment of a SIPC advance.

30.    The Trustee has departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

C.    **Settlements Of Customer Claims Disputes**

31.    The Trustee has continued settlement negotiations with customers who withdrew funds from their BLMIS accounts within ninety days of the Filing Date.[6]  Such withdrawals are preferential transfers recoverable by the Trustee under Bankruptcy Code §§ 547(b) and 550(a), which are applicable in this proceeding pursuant to SIPA §§ 78fff(b) and 78fff-2(c)(3).  To settle potential preference actions against these customers, the Trustee has proposed that the customers agree to authorize the Trustee to deduct the preferential amount from the initial payment advanced by SIPC pursuant to § 78fff-3(a)(1) of SIPA.  The allowed claim is thus calculated based on the amount of money the customer deposited with BLMIS for the purchase of securities, less subsequent withdrawals, plus the preferential amount.  The customer will be entitled to receive an additional distribution from the Customer Fund based on the total amount of the allowed claim.

32.    As of March 31, 2013, the Trustee had reached agreements relating to 538 accounts and with the IRS (which did not have a BLMIS account), recovering $8,349,117,294.68

---

[6] In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm.  *See* § 78*lll*(7)(B) of SIPA, 15 U.S.C. § 78*lll*(7)(B).

in litigation, pre-litigation, and avoidance action settlements. These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have been necessary to obtain and collect judgments from these customers.

## VI.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

### A.    <u>Net Equity Dispute</u>

33.    For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method. Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

34.    This Court issued a decision on March 1, 2010 upholding the Trustee's Net Investment Method as the only interpretation consistent with the plain meaning and legislative history of the statute, controlling Second Circuit precedent, and considerations of equity and practicality. (ECF No. 2020); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff Inv. Sec., LLC)*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010). This Court certified an immediate appeal to the Second Circuit (ECF No. 2467), which heard oral argument on March 3, 2011.

35.    On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities positions are what the account statements purport them to be." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff Inv. Sec., LLC)*, 654 F.3d 229, 241 (2d Cir. 2011). Any calculation other than the Net Investment Method would "aggravate the

11

injuries caused by Madoff's fraud." *Id.* at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id.*

36.    Under the Second Circuit's decision, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id.* at 238. If an account has a positive cash balance, that accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of customer property in this case are centered on the principle that the Trustee cannot credit "impossible transactions." *Id.* at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id.* at 238.

37.    First, the Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'" *Id.* at 242 n.10 *(quoting Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 463 (S.D.N.Y. 2001)). Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers" or those who have yet to recover their initial investment.

38.    Next, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money

entrusted to Madoff for the purpose of making investments." *Id.* at 240. Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'" *Id.* at 241 (*quoting In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)). Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id.* at 235.

39.      On September 6, 2011, certain claimants filed a petition for panel rehearing, or, in the alternative, for rehearing en banc. *Sterling Equities Assocs. v. Picard (In re Bernard L. Madoff Inv. Secs., LLC)*, No. 10-2378 (2d Cir.), ECF Nos. 505, 537. The panel that determined the appeal considered the request for panel rehearing, and the active members of the Court considered the request for rehearing en banc, and on November 8, 2011, both denied the petition. (ECF No. 551).

40.      Three petitions for certiorari were filed with the Supreme Court. On June 25, 2012, the Supreme Court denied certiorari in two of the petitions. *Ryan v. Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012). Certiorari was also dismissed with respect to one appeal. *Sterling Equities Assocs. v. Picard*, 132 S. Ct. 2712 (2012).

## B.      Time-Based Damages

41.      Following the Supreme Court decision denying certiorari regarding the Net Investment Method, on July 17, 2012, the Trustee filed a motion (the "Scheduling Motion") (ECF No. 4920) for an order (the "Scheduling Order") requesting a briefing schedule regarding the question of whether customer claims should be recalculated with an interest factor or a constant dollar adjustment ("Time-Based Damages Issue"). Approximately 1,200 objections raised the Time-Based Damages Issue. Claimants raised numerous theories of law, all of which

seek some increase in their customer claims based upon the amount of time they invested with BLMIS. Most commonly, they seek an increase in their claims based on the time they were invested with BLMIS using the New York prejudgment rate of 9% per annum, lost opportunity cost damages, or the consumer price index to take inflation into account. The Trustee is using "Time-Based Damages" as an umbrella term.

42.    Two objections were filed in response to the Trustee's Scheduling Motion by HHI Investment Trust #2 and Blue Star Investors, LLC, among others (collectively, the "HHI Parties") (ECF Nos. 4957, 5004). Martin, Richard, and Steven Surabian (the "Surabians") also filed an objection. (ECF No. 4952). A letter was filed by Sidney and Ethel Chambers. (ECF No. 4999). The Trustee filed responses asserting, among other things, a lack of standing by the HHI Parties and the Surabians. (ECF Nos. 5001, 5009).

43.    After a hearing on September 5, 2012, at which the Court heard argument on behalf of non-claimant avoidance defendants, the HHI Parties, it approved the Scheduling Order establishing the scope and schedule for briefing of Time-Based Damages, overruling the objections, and scheduling a hearing on the Trustee's motion (the "Time-Based Damages Motion") to be held on January 10, 2013. (ECF No. 5022). In its order, the Court stated that the sole purpose of the Time-Based Damages Motion would be to resolve the legal issues raised in the claims and objections relating to the Time-Based Damages Issue. *Id.*

44.    On October 12, 2012, the Trustee filed his Time-Based Damages Motion and Memorandum of Law for an Order Affirming Trustee's Calculations of Net Equity and Denying Time-Based Damages. (ECF Nos. 5038, 5039). The Trustee's position that customer claims under SIPA should not include Time-Based Damages was supported by SIPC in its Memorandum of Law filed the same day. (ECF No. 5036).

14

45.    On or around December 3, 2012, ten briefs were filed on behalf of various BLMIS customers objecting to the Trustee's Time-Based Damages Motion.  On December 10, 2012, the Securities and Exchange Commission ("SEC") filed its brief on the Time-Based Damages Motion.  (ECF No. 5142).

46.    On or around December 7, 2012, a group of customers similarly situated to the HHI Parties in that they had not filed timely claims, sought to move to intervene in the Time-Based Damages Motion on the same bases that the HHI Parties had objected to the Scheduling Order.  (ECF No. 5141).  The Trustee objected (ECF No. 5184), and the Court denied the request to intervene.  (ECF No. 5185).  After the Court denied the request to intervene, the Trustee and a third group of similarly-situated customers, in that they had not filed timely claims, stipulated that they were covered by the Court's previous order denying the request to intervene.  (ECF No. 5224).  Appeals were taken by these customers from the Court's denials to intervene; one is pending in the District Court and one remains to be docketed.  *See In re Bernard L. Madoff Investment Securities LLC*, No. 13-cv-1300 (TPG) (S.D.N.Y.).

47.    On or around December 17, 2012, certain parties calling themselves the "Customer Group" requested discovery from the Trustee and his professionals in connection with the Time-Based Damages Motion.  (ECF No. 5133).  Thereafter, this Court entered an amended scheduling order that adjourned the remaining deadlines for the Time-Based Damages Motion.  (ECF No. 5212).  The Trustee and the Customer Group have engaged in discovery since that time.  The hearing on the Trustee's Time-Based Damages Motion will be set thereafter in accordance with the Court's amended scheduling order.

C.    **"Customer" Definition**

48.    The Trustee's position is that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78*lll*(2) of SIPA.  Where it appears

15

that claimants did not have an account in their names at BLMIS ("Claimant Without An Account"), they are not customers of BLMIS under SIPA and the Trustee has denied their claims for securities and/or a credit balance.

49.    On June 11, 2010, the Trustee filed a Motion For An Order To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds.  (ECF Nos. 2410–2413, 2416).  The motion addressed only those claimants whose claims emanated from their direct or indirect investments in sixteen so-called feeder funds that, in turn, had accounts with and invested directly with BLMIS.

50.    This Court held a hearing on October 19, 2010.  On June 28, 2011, this Court issued a Memorandum Decision and Order affirming the Trustee's denial of these claims. (ECF Nos. 3018, 4193, 4209); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff Inv. Sec., LLC)*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011).

51.    This Court found that, in light of the plain language of SIPA and relevant case law, the investor-claimants did not qualify as "customers" under SIPA.  This Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts at BLMIS.  It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased ownership interests in the feeder funds.  This Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

52.    This Court put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked

property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to

BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received

no account statements or other communications from BLMIS and had no transactions reflected

on the books and records of BLMIS . . . ." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv.

Sec., LLC*, 454 B.R. at 290.

53.    Twenty-seven Notices of Appeal were filed and the appeals were assigned to

United States District Judge Denise L. Cote.  *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*,

No. 11-cv-05683 (DLC) (S.D.N.Y.).  On January 4, 2012, Judge Cote affirmed the June 28, 2011

order of this Court.  *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y.

2012).  In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the

'customer' definition excludes persons like the appellants who invest in separate third-party

corporate entities like their feeder funds, that in turn invest their assets with the debtor." *Id.* at

123.  Thus, the District Court held that the feeder funds were the BLMIS customers and the

appellants were precluded from seeking separate recoveries as additional SIPA claimants.  *Id.* at

129–30.

54.    On January 6, 2012, four appeals were taken from Judge Cote's decision to the

Second Circuit.  *See Bricklayers and Allied Craftsman Local 2 Annuity Fund v. Sec. Investor

Prot. Corp., Irving H. Picard*, No. 12-410; *Rosamilia v. Sec. Investor Prot. Corp., Irving H.

Picard*, No. 12-437; *Kruse v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-483; *Upstate

N.Y. Bakery Drivers and Indus. Pension Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No.

12-529.  On February 22, 2013, the Second Circuit affirmed the decisions of the District and

Bankruptcy Courts.  *See Kruse v. Sec. Investor Prot. Corp., Irving H. Picard*, 708 F.3d 422 (2d

Cir. 2013).

55.     On another matter involving the interpretation of the "customer" definition, on October 5, 2011, the Trustee moved before this Court for an order establishing a briefing schedule and hearing to affirm his determination that ERISA did not alter his denial of "customer" status to certain claimants.  (ECF No. 4432).  This Court entered a scheduling order on November 8, 2011.  (ECF No. 4507).

56.     On November 14, 2011, the Trustee filed his Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections (ECF No. 4521) (the "ERISA Motion").  On or around January 17, 2012, approximately eighteen opposition briefs to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4625–4628, 4631–4633, 4635, 4637–4643, 4652–4654).   On March 2, 2012, the Trustee filed his Memorandum in Support of the Trustee's Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4703).  On April 2, 2012, five replies to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4746, 4748, 4750, 4755, 4756).  The Trustee's sur-reply was filed on April 20, 2012.  (ECF No. 4781).

57.     During the pendency of the above briefing, certain ERISA claimants also filed motions to withdraw the reference on the ERISA Motion from this Court to the District Court. *See Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC (S.D.N.Y. Aug. 6, 2012) (filed on behalf of J. X. Reynolds & Co. Deferred Profit Sharing Plan, Jacqueline Green Rollover Account and Wayne D. Green Rollover Account); *Sec. Investor Prot. Corp. v. I.B.E.W. Local 241 Pension Fund*, No. 12-cv-01139-DLC (S.D.N.Y. Aug. 6, 2012), on behalf of thirty-seven ERISA plan claimants.  On February 28, 2012 and March 1, 2012, these motions were accepted as related to the appeals decided by Judge Cote in *Aozora Bank*, 480 B.R.

117 (S.D.N.Y. 2012), discussed above, and were re-assigned to Her Honor. Judge Cote withdrew the reference on April 20, 2012. *Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC (S.D.N.Y.), ECF No. 7.

58.     On July 25, 2012, the District Court granted the Trustee's ERISA Motion. *See Id.*, ECF No. 29. The District Court found that the ERISA claimants were not "customers" under SIPA because they did not deposit money with BLMIS for the purchase of securities and did not own the assets of the ERISA plans that were deposited with BLMIS. *Id.* No appeal was taken from this opinion and order.

## VII.    RECOVERIES AND CONTINGENCIES

### A.    Recoveries Accomplished During Prior Report Periods

59.     In the Sixth Interim Report, the Seventh Interim Report, and the Eighth Interim Report, the Trustee reviewed the significant settlements entered into during those and prior report periods. Prior to this Report Period, the Trustee had recovered or reached agreements to recover more than $9.2 billion for the benefit of BLMIS customers. *See* Trustee's Sixth Interim Report ¶¶ 52–63, ECF No. 4529; Trustee's Seventh Interim Report ¶¶ 56–62, ECF No. 4793; Trustee's Eighth Interim Report ¶¶ 57–61, ECF No. 5066.

### B.    Recoveries Accomplished During This Report Period

60.     During this Report Period, the Trustee settled eighteen cases for a total recovery of $97,776,189.37. Currently, the Trustee has successfully recovered or reached agreements to recover more than $ 9.33 billion.

61.     In *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (BRL) (Bankr. S.D.N.Y.), following the dismissal of the appeal of the settlement, pursuant to the terms of the settlement agreement, the Trustee and the defendants deposited funds with an escrow agent. Upon the expiration of the escrow period, the escrow agent released the escrow funds to the

Trustee and the agent for certain of the Tremont funds, as well as the liquidators of Insurance Portfolio.  On February 8, 2013, the Trustee received the Tremont settlement payment in the amount of $1.025 billion.  In the Eighth Interim Report, the Trustee reported the history of the Tremont settlement proceeding leading to the dismissal of the appeal of the settlement approval order.

C.      **Earlier Settlements**

62.      On February 18, 2010, this Court approved a pre-litigation settlement between the Trustee and the Estate of Norman F. Levy.  (ECF No. 1964).  This settlement resulted in the return of $220 million (the "Levy Settlement").  One year later, on February 18, 2011, certain customers moved to set aside the Court's Order approving the Levy Settlement.  (ECF No. 3861).  This Court denied the motion (ECF No. 3984), and the claimants filed an appeal on April 11, 2011 (ECF No. 4005).

63.      On February 16, 2012, United States District Judge Deborah A. Batts issued a Memorandum and Order affirming this Court's order of March 30, 2011.  *See Levy-Church v. Picard*, No. 11 Civ. 03313 (DAB), 2012 U.S. Dist. LEXIS 21740 (S.D.N.Y. Feb. 16, 2012).  The District Court found that bankruptcy courts need not conduct a "mini-trial" of all the facts underlying settlement disputes and are entitled to rely upon the opinions of the trustee, the parties, and their attorneys.  *Id.* at *12.  Thus, the District Court held that this Court did not abuse its discretion in denying the motion to vacate the settlement.  *Id.* at *7.  The claimants subsequently appealed Judge Batts's decision to the Second Circuit.  *See Peshkin v. Levy-Church*, No. 12-816 (2d Cir. Feb. 29, 2012).  The Second Circuit affirmed the rulings of Judges Batts and Lifland.  *In re Bernard L. Madoff Inv. Sec., LLC*, 489 Fed. Appx. 519, 520 (2d Cir. 2012).

64.     On June 10, 2011, this Court approved a settlement between the Trustee and the Joint Liquidators for Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds").   *Picard v. Fairfield Sentry*, Adv. No. 09-1239 (BRL) (Bankr. S.D.N.Y.), ECF No. 95.  On July 13, 2011, this Court entered consent judgments between the Trustee and Fairfield Lambda Limited in the amount of $52.9 million (ECF No. 108), Fairfield Sentry Limited in the amount of $3.054 billion (ECF No. 109), and Fairfield Sigma Limited in the amount of $752.3 million (ECF No. 110).  One objection was filed by plaintiffs in a derivative action allegedly on behalf of Fairfield Sentry Limited, which was overruled by this Court on June 7, 2011.  (ECF No. 92).

65.     Under the terms of this settlement, Fairfield Sentry Limited agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.  Additionally, the Joint Liquidator for the Fairfield Funds agreed to make a $70 million payment to the Customer Fund.  To date, the Fairfield Sentry Joint Liquidators have paid $70 million, of which $16 million was in cash, $8 million was an offset against funds owed by the Trustee to Fairfield Sentry, and $46 million was an offset from the Trustee's second interim distribution per the settlement agreement.  The Joint Liquidator also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners; the Trustee retained his own claims against the management defendants.  Further, the Trustee and the Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.  On or about July 8, 2011, Fairfield Sentry transferred $16 million to the Trustee, and the Trustee allowed Fairfield Sentry's claim of $78 million.  The remaining $46 million was paid on or about November 28, 2012.  As a result of the $46 million payment, the Trustee increased the allowed claim by $152 million to $230 million.

66.     On July 7, 2011, this Court approved a settlement between the Trustee, Greenwich Sentry, L.P., and Greenwich Sentry Partners, L.P. (collectively, the "Greenwich Funds"), wherein this Court entered judgment against Greenwich Sentry, L.P. in an amount over $206 million and against Greenwich Sentry Partners, L.P. in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y.), ECF No. 107.  Three objections were filed to the proposed settlement agreement, but were subsequently withdrawn prior to this Court's July 7, 2011 order.  In this settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to over $37 million, for a combined reduction of over $105.9 million.  Additionally, the Greenwich Funds assigned the Trustee all of their claims against Fairfield Greenwich Group management, as well as agreed to share with the Trustee any recoveries they accomplish against service providers.

67.     To implement this settlement agreement, the Court was required to confirm the plan in the jointly administered Chapter 11 proceeding of Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P.  *In re Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P.*, Adv. No. 10-16229 (BRL) (Bankr. S.D.N.Y.).  The plan confirmation hearing was held on December 22, 2011.  The plan was confirmed subject to the resolution of issues unrelated to the settlement with the Trustee.  Those matters have been resolved.  The effective date of the plan was February 24, 2012.  With the settlement becoming effective, claims against the Fairfield Greenwich Group management have been assigned to the Trustee, Greenwich Sentry, and Greenwich Sentry Partners, and the BLMIS customer claims have been allowed in the amount of $35,000,000.00 and $2,011,304.00, respectively.

68.     On June 6, 2012, the Trustee filed three additional adversary proceedings naming as defendants entities, trusts, or family members who received transfers of customer property

22

paid to Fairfield Greenwich Group partners as part of the management and incentive fees paid by Fairfield Sentry, Ltd. The cases are *Picard v. RD Trust*, Adv. No. 12-01701 (BRL) (Bankr. S.D.N.Y.), *Picard v. Barrenche, Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.) and *Picard v. Toub*, Adv. No. 12-01703 (BRL) (Bankr. S.D.N.Y.). Those three cases, along with the claims against the Fairfield Greenwich Group management entities and partners in *Picard v. Fairfield Sentry, Ltd*., Adv. No. 09-1239 (Bankr. S.D.N.Y.), remain pending before this Court.

69.    In addition, on December 21, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (BRL) (Bankr. S.D.N.Y.), ECF No. 38. In the settlement, Tremont agreed to deliver $1.025 billion into an escrow account for the benefit of the fund of customer property upon the order becoming final. Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. This Court entered an Order Granting Trustee's Motion for Entry of Order Approving Agreement. (ECF No. 38).

70.    Certain objectors filed an appeal of the Tremont settlement on September 30, 2011. *See Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Inv. Sec., LLC v. Tremont Group Holdings, Inc.*, No. 11 Civ. 7330 (GBD) (S.D.N.Y.), ECF No. 1. Thereafter, Tremont filed a motion to dismiss the appeal, which was subsequently joined by motions filed by the Trustee and parties subject to the settlement. (ECF Nos. 4, 6, 8, 12, 14). The non-BLMIS customers who commenced the appeal opposed the dismissal. (ECF Nos. 15, 16). On June 26, 2012, United States District Judge George B. Daniels granted the motion to dismiss, and a judgment was entered on the docket on June 28, 2012. (ECF No. 36). The objectors

subsequently filed a Notice of Appeal on July 27, 2012. (ECF No. 37). The Second Circuit so-ordered a stipulation of dismissal of the appeal on October 25, 2012. (ECF No. 39); *See also Picard v. Lakeview Investment, LP*, No. 12-3052 (2d Cir.), ECF No. 58. Thereafter, Tremont deposited the $1.025 billion into the escrow account. The funds with interest were transferred from the escrow account to the Trustee in February 2013. Part of the proceeds from the Tremont settlement were distributed to customers with allowed claims as part of the Third Interim Distribution (see Section VIII(D) *infra*), and the balance will distributed in due course.

71.    On January 13, 2011, this Court entered an Order (the "Picower Settlement Order") approving the $5 billion settlement between the Trustee and the Estate of Jeffry M. Picower ("Picower Defendants"). *Picard v. Picower*, Adv. No. 09-01197 (BRL) (Bankr. S.D.N.Y.). BLMIS claimants Adele Fox ("Fox") and Susanne Stone Marshall ("Marshall"), who brought actions against the Picower Defendants in Florida, appealed the Picower Settlement Order. (ECF Nos. 45, 49). On March 26, 2012, United States District Judge John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and permanently enjoining certain duplicative or derivative actions against the Picower Defendants. *Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y.). An appeal of Judge Koeltl's decision is pending before the Second Circuit. *See In re Bernard L. Madoff*, No. 12-1645 (2d Cir.), and consolidated cases.

72.    A forfeiture action against the estate of Jeffry M. Picower resulted in the additional recovery of more than $2.2 billion to the United States Government (the "Picower Forfeiture"), which is intertwined with the Trustee's Picower settlement. *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 10 Civ. 09398 (TPG) (S.D.N.Y.). On May 23 and 24, 2011, United States District Judge Thomas P. Griesa entered a final order of forfeiture in favor of the United States.

(ECF No. 17).  The Second Circuit dismissed an appeal of Judge Griesa's order, and on June 8, 2012, a final order of forfeiture was issued.  *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 11-2898 (2d Cir.), ECF No. 85.

73.    Because the time to appeal the final order of forfeiture expired, the Trustee received the Picower settlement funds.  The settlement amount of $5 billion was transferred to the BLMIS estate and the Customer Fund.  Part of the proceeds from the Picower settlement has been distributed to customers, and the balance will be distributed in due course.  *See* discussion, Section VII(C).

74.    Through the end of the Report Period, the Trustee recovered $446,671,083.30 as a result of preference and other settlements that were made pursuant to agreements subject to the Net Equity Dispute.  Although the main Net Equity Dispute has been finally determined, ancillary issues relating to Net Equity, such as Time-Based Damages, remain pending.  As such, these amounts are held in reserve.

## VIII.   THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

### A.    The Customer Fund

75.    In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's estate.  The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate.  Customers holding allowable claims are entitled to share in the Customer Fund based on

each customer's Net Equity as of the filing date, to the exclusion of general creditors.   SIPA § 78fff-2(c).

76.      In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims).   Each element of the equation—the customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

77.      There are many unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves.   Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the customer fund, or the "numerator" (taking reserves into account); (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account); and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

**B.      The Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers**

78.      On May 4, 2011, the Trustee moved for an initial allocation and pro rata interim distribution of the Customer Fund to customers whose claims had not been fully satisfied because their net equity claims as of the filing date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "First Allocation" and "First Interim Distribution").   (ECF No. 4048).   This motion was unopposed, and the Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers on July 12, 2011.   (ECF No. 4217).

79. On October 5, 2011, the Trustee distributed $311.854 million, or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to October 5, 2011, the Trustee distributed an additional $189.183 million to those who qualified for the First Interim Distribution, bringing the total First Interim Distribution amount to $501.037 million. The First Interim Distribution was made to 1,300 BLMIS accounts, and thirty-nine payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

80. The First Allocation and First Interim Distribution was initial and interim in nature because the Trustee anticipated (i) recovering additional assets through litigation and settlements, and (ii) resolving the issues on appeal that require reserves.

## C. The Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing the Second Interim Distribution to Customers

81. During the year after the Trustee made the First Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, as well as the resolution of issues on appeal that had required reserves.

82. In particular, the Supreme Court resolved the Net Equity Dispute on June 25, 2012, and the Trustee received the Picower settlement funds after the final order of forfeiture became final and nonappealable on July 16, 2012.

83. Thus, the Trustee was prepared to make a second significant distribution to BLMIS customers in an amount as great as $3.019 billion, or 41.826% of each customer's allowed claim, unless the claim had been fully satisfied. However, in order to maintain adequate reserves for the Time-Based Damages Issue, the Trustee was unable to distribute the entire $3.019 billion.

84.    On July 26, 2012, the Trustee filed a motion seeking entry of an order approving the second allocation of property to the Customer Fund and authorizing the second interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the filing date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Second Allocation" and "Second Interim Distribution").  (ECF No. 4930).

85.    In connection with the Second Interim Distribution, the Trustee proposed holding in reserve an amount sufficient for the Trustee to pay Time-Based Damages assuming an interest rate of three percent (the "3% Reserve") or, in the alternative, nine percent (the "9% Reserve"). Four objections were made to the Trustee's motion, seeking the imposition of the 9% Reserve. (ECF Nos. 4965, 4966, 4971, 4976).

86.    On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% Reserve.  (ECF No. 4997).

87.    Thus, on September 19, 2012, the Trustee distributed $2.479 billion, or 33.541% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to September 19, 2012, an additional $1.156 billion was distributed, bringing the total Second Interim Distribution amount to $3.635 billion.  The Second Interim Distribution was made to 1,286 BLMIS accounts, and thirty-nine payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**D.     The Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing the Third Interim Distribution to Customers**

88.     In the months since the Second Interim Distribution, the Trustee recovered significant additional assets thorough litigation and settlements, particularly the Tremont settlement. *See* discussion *supra* in Section VII(C).

89.     On February 13, 2013, the Trustee filed a motion seeking entry of an order approving the third allocation of property to the Customer Fund and authorizing the third interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the filing date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Third Allocation" and "Third Interim Distribution").  (ECF No. 5230).

90.     In connection with the Third Interim Distribution, the Trustee proposed holding reserves in connection with the Levy settlement appeal, the Internal Revenue Service (the "IRS") settlement and net loser accounts currently in litigation.  *Id.*

91.     On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing a Third Interim Distribution to Customers.  (ECF No. 5271).

92.     Thus, on March 29, 2013, the Trustee distributed $506,227,483.65, or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to March 29, 2013, an additional $1,252,103.62 was distributed, bringing the total Third Interim Distribution amount to $507,479,587.27.  Upon completion of the Third Interim Distribution, approximately fifty percent of the allowed customer claims were satisfied.  The Third Interim Distribution was made to 1,104 BLMIS accounts, and twenty-six payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

93.    Final resolution of the remaining appeals and disputes will permit the Trustee to further reduce the reserves he is required to maintain, which will allow for a greater distribution to customers in the future.  The Trustee expects to seek authorization for further allocations and distributions upon the recovery of additional funds and the resolution of significant disputes.

## E.    <u>The General Estate</u>

94.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

95.    All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are general creditors of the BLMIS estate.  The Trustee is working diligently on behalf of the entire BLMIS estate and seeks to satisfy all creditor claims in this proceeding.

## IX.    LITIGATION

96.    Other major developments have occurred during the Report Period in the Trustee's avoidance actions and bank/feeder fund litigations.  As the Trustee has more than 1,000 lawsuits pending, this Report does not discuss each of them in detail but instead summarizes those matters with the most activity during the Report Period.

## A.    <u>The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals</u>

97.    Many of the defendants in the litigations brought by the Trustee moved to withdraw the reference from this Court to the District Court.  These motions commenced with the HSBC, JPMorgan, UBS, and Kohn Actions.  These complaints had common law and/or Racketeer Influenced and Corrupt Organizations Act ("RICO") claims in addition to avoidance counts under the Bankruptcy Code.  Then, the defendants in the Katz-Wilpon avoidance action

moved to withdraw the reference, which was granted by the District Court. Subsequently, hundreds of defendants began seeking similar relief.

98.    The District Court has withdrawn the reference in numerous cases and heard or has pending before it numerous motions to dismiss. On March 5, 2012, this Court entered an administrative order directing all defendants in the Trustee's litigations to file motions to withdraw the reference by April 2, 2012 (the "Administrative Order"). *See* Administrative Order Establishing Deadline for Filing Motions to Withdraw the Reference, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re BLMIS, LLC.)*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y. Mar. 5, 2012) (ECF No. 4707). As of the end of the Report Period, defendants in approximately 791 avoidance actions commenced by the Trustee in this Court have filed approximately 463 motions to withdraw the reference and approximately 410 joinders to these motions.

### i.    The HSBC Action

99.    On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action"). After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS. *HSBC Bank plc*, Adv. No. 09-01364, ECF No. 35.

100.    The thirteen HSBC-related defendants and, separately, UniCredit S.p.A. and Pioneer Alternative Investment Management Limited, moved to withdraw the reference. On April 14, 2011, United States District Judge Jed S. Rakoff withdrew the reference to consider the

Trustee's standing to assert common law claims.  *Picard v. HSBC Bank plc*, No. 11 Civ. 00836 (JSR) (S.D.N.Y.), ECF Nos. 20, 23.

101.    On May 3, 2011, the same defendants filed motions to dismiss.  (ECF Nos. 24–27).  The Trustee and SIPC opposed the motions.  (ECF Nos. 32–36).  On July 28, 2011, the District Court dismissed the Trustee's common law claims, holding that the Trustee lacked standing, under any theory, to assert them.  *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011).  The District Court returned the remainder of the HSBC Action to this Court for further proceedings.  *Id.* at 38.

102.    On December 15, 2011, the Trustee appealed the District Court's decision to the Second Circuit.  *See Picard v. HSBC Bank PLC*, No. 11-5175 (2d Cir.); *Picard v. HSBC Bank PLC*, No. 11-5207 (2d Cir.).  The Trustee filed his appellate briefs on February 16, 2012 (ECF Nos. 76–85), and SIPC intervened in the appeals (ECF No. 75).  On April 26, 2012, the Trustee and SIPC each filed reply briefs (ECF Nos. 165,166) to the oppositions that were filed to the Trustee's appellate briefs.  (ECF Nos. 135, 136)  Oral argument was held on November 21, 2012.

103.    The District Court returned several of the Trustee's bankruptcy claims to this Court.  However, various defendants in this action moved to withdraw the reference from this Court and those motions have been granted, at least in part, by the District Court.  These defendants are participating in a variety of motions which are before the District Court on common briefing, including the application of § 546(e) of the Bankruptcy Code to the Trustee's claims (the "546(e) Issue"), the application of SIPA and the Bankruptcy Code to claims abroad, and the standard of good faith.  Judge Rakoff issued a "bottom line" order on the 546(e) Issue and a full decision on April 15, 2013.  *See* discussion *infra* in Section IX(A)(v)(b); *see also*

Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec., LLC)*,

12 MC 0115 (JSR) (S.D.N.Y. Feb. 12, 2013), ECF No. 439.  The other issues remain pending.

104.    The Trustee is engaged in certain foreign proceedings with some of these

defendants as well.  This includes the Trustee's participation in proceedings against one of the

feeder fund defendants, Primeo, in Cayman.  *See* discussion *infra* in Section X(iii).

### ii.    The JPMorgan Action

105.    On December 2, 2010, the Trustee commenced an action against JPMorgan Chase

& Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities

Ltd (the "JPMorgan Defendants").  *Picard v. JPMorgan Chase*, Adv. No. 10-04932 (BRL)

(Bankr. S.D.N.Y.) (the "JPMorgan Action").  On February 8, 2011, the JPMorgan Defendants

moved for withdrawal of the reference.  *Picard v. JPMorgan Chase*, No. 11-cv-00913 (CM)

(S.D.N.Y.), ECF Nos. 1–3 (the "JPMorgan Withdrawn Action").  The District Court granted the

motion on May 4, 2011.  (ECF No. 30).

106.    On November 23, 2010, the Trustee commenced an action against UBS AG,

numerous other UBS entities, Access International Advisors LLC, numerous other Access

entities, several individuals and the Luxalpha SICAV and Groupement Financier funds (the

"Luxalpha Action" and the "Luxalpha Defendants").  *Picard v. UBS AG*, Adv. No. 10-04285

(BRL) (Bankr. S.D.N.Y.).  On June 21, 2011, the Luxalpha Defendants moved for withdrawal of

the reference.  *Picard v. UBS Fund Servs. (Luxembourg) SA*, No. 11-cv-04212 (CM) (S.D.N.Y.),

ECF Nos. 1–3 (the "Luxalpha Withdrawn Action").  On July 14, 2011, the District Court

withdrew the reference and accepted the Luxalpha Action as related to the JPMorgan Action.

*Luxalpha Withdrawn Action*, ECF No. 12 and docket.

107.    On July 3, 2011, the JPMorgan Defendants filed a motion to dismiss.  *JPMorgan*

*Withdrawn Action*, ECF Nos. 32–34.  The Trustee filed an amended complaint against the

JPMorgan Defendants on June 24, 2011. (ECF No. 50). On August 1, 2011, the JPMorgan Defendants renewed their motion to dismiss. (ECF Nos. 56–58). On August 1, 2011, the Luxalpha Defendants (with the exception of some of the individual defendants) filed a motion to dismiss. (ECF Nos. 17, 18). The Trustee filed an amended complaint in the Luxalpha Action on August 17, 2011, and the Luxalpha Defendants' motion to dismiss was deemed directed at the amended complaint. *Luxalpha Withdrawn Action*, ECF No. 23. The Trustee and SIPC opposed the motions. *JPMorgan Withdrawn Action*, ECF Nos. 61–66; *Luxalpha Withdrawn Action*, ECF No. 27.

108.    On November 1, 2011, the District Court dismissed the Trustee's common law and contribution claims in both the JPMorgan and Luxalpha Actions (the "November 1 Order"). *Picard v. J.P. Morgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011). The District Court returned the remainder of the Actions to this Court for further proceedings. *Id.*

109.    On November 10, 2011, the Trustee filed a motion for entry of final judgment under Federal Rule of Civil Procedure 54(b) as to counts twenty-one through twenty-eight of the amended complaint. *JPMorgan Withdrawn Action*, ECF Nos. 71, 72. On November 30, 2011, the District Court held that there was no just reason for delay and certified its November 1 Order as final (the "JPMorgan Rule 54(b) Judgment"). (ECF No. 74). On December 5, 2011, the District Court held that there was no just reason for delay and certified its November 1, 2011 Order as final as to the Luxalpha Defendants (the "Luxalpha Rule 54(b) Judgment"). *Luxalpha Withdrawn Action*, ECF No. 38. The JPMorgan Rule 54(b) Judgment was then entered on December 1, 2011, and the Luxalpha Rule 54(b) Judgment was entered on December 7, 2011. *JPMorgan Withdrawn Action*, ECF No. 75; *Luxalpha Withdrawn Action*, ECF No. 39.

110.    On February 16, 2012, the Trustee filed his briefs appealing the November 1 Order in both the JPMorgan and Luxalpha Actions, and SIPC intervened in the appeals. *See Picard v. JPMorgan Chase & Co.*, No. 11-5044 (2d Cir.), ECF Nos. 79–87; *Picard v. UBS AG*, No. 11-5051 (2d Cir.), ECF Nos. 79–79.    On April 5, 2012, the JPMorgan and Luxalpha Defendants opposed the respective appeals of the November 1 Order. *JPMorgan*, No. 11-5044, ECF No. 110; *UBS AG¸* No. 11-5051, ECF Nos. 98–101.    On April 26, 2012, the Trustee and SIPC filed their respective reply briefs. *JPMorgan*, No. 11-5044, ECF Nos. 130, 131; *UBS AG¸* No. 11-5051, ECF Nos. 139, 138.    Oral argument before the Second Circuit took place on November 21, 2012.

111.    The remaining claims against the JPMorgan and Luxalpha Defendants, which were not dismissed and are thus not subject to the appeal, are pending before this Court. Pursuant to the agreement of the parties, those claims are stayed pending the outcome of the appeal.

### iii.    The Luxalpha Action

#### (a)    Luxalpha, The Luxembourg Investment Fund ("LIF") and Access Injunction Actions

112.    For this period, the Luxalpha and Access Actions largely proceeded on parallel tracks due to the defendants' coordinated motions to dismiss for lack of personal jurisdiction and *forum non conveniens*. *Picard v. UBS AG*, Adv. No. 10-05311 (BRL) (Bankr. S.D.N.Y.) , ECF No. 106 (the "LIF Action"); and *Picard v. Access Mgmt. Luxembourg, S.A.*, Adv. No. 12-01563 (BRL) (Bankr. S.D.N.Y.), ECF No. 33 (the "Access Injunction").    During October and November 2012, counsel for the Trustee analyzed the defendants' reply briefs on the motions to dismiss and prepared for oral argument on the various motions.    On December 19, 2012, the Court held a hearing on the motions to dismiss, but rather than hearing oral argument, the Court

converted the hearing into a Rule 16 conference and ordered the parties to further meet and confer on the issues in dispute with the goal of narrowing the issues that the Court would ultimately have to determine. That meet-and-confer process, which began in December 2012 and has continued through March 2013, involves efforts by the Trustee to negotiate with counsel for numerous defendants across the three Actions, as well as *Picard v. Defender*, which has defendants in common with the LIF Action. Adv. No. 10-05229 (BRL) (Bankr. S.D.N.Y.); *see* discussion *infra* Section IX(B)(vii). Although the Trustee has made progress toward narrowing the number of defendants and parties in dispute, that meet-and-confer process remains ongoing.

### (b) The Oreades Action

113. The Trustee has entered into a series of stipulations with the defendants in *Picard v. Oreades Sicav*, Adv. No. 10-05120 (BRL) (Bankr. S.D.N.Y.) (the "Oreades Action") pending determination of the Common Briefing issues (*see* discussion *infra* in Section IX(A)(v)(b)), by Judge Rakoff that are relevant to the Oreades Action. The last stipulation was entered on December 31, 2012, which extended the defendants' time to respond to the complaint until April 24, 2013, with a May 29, 2013 pretrial conference date. (ECF No. 27).

### (c) Banque Degroof Action

114. On November 28, 2012, the Banque Degroof-related defendants in *Picard v. Banque Degroof SA/NV*, Adv. No. 12-01691 (BRL) (Bankr. S.D.N.Y.) (the "Banque Degroof Action") filed a motion to withdraw the reference on several grounds. *Picard v. Banque Degroff SA/NV*, 12-CV-8709 (JSR) (S.D.N.Y.), ECF Nos. 1–3. A stipulation so-ordered by Judge Rakoff on December 7, 2012 permitted those defendants to join the Common Briefing (see discussion *infra* in Section IX(A)(v)(b)) on the issues that were the subject of their motion to withdraw the reference. (ECF No. 11). The remaining Access-related defendants joined the motion to withdraw the reference on December 7, 2012 (ECF No. 7), and were permitted to join the

Common Briefing by a stipulation so-ordered by Judge Rakoff on February 3, 2013.  (ECF No. 12).  The Trustee and the defendants in the Banque Degroof Action have entered into a series of stipulations extending the time by which defendants must respond to the complaint.  The most recent stipulation was entered into on December 31, 2012, which established the response deadline as April 24, 2013 and a pretrial conference date of May 29, 2013.  (ECF No. 34).

### iv.    The Kohn Action

115.    On December 10, 2010, the Trustee commenced an adversary proceeding (the "Kohn Action") against Sonja Kohn ("Kohn"), Bank Medici, UniCredit Bank Austria AG ("Bank Austria"), UniCredit S.p.A. ("UniCredit), Pioneer Asset Management ("Pioneer"), Alessandro Profumo ("Profumo"), and dozens of individuals, trusts, and nominee companies (collectively, the "Kohn Defendants").  *Picard v. Kohn*, Adv. No. 10-5411 (BRL) (Bankr. S.D.N.Y.).  The Trustee alleges that the Kohn Defendants participated in an illegal scheme and conspired to feed over $9.1 billion into Madoff's Ponzi scheme.

116.    On February 22, 2011, UniCredit, Bank Austria, Pioneer, and Profumo moved to withdraw the reference as to certain of the Trustee's claims against them.  *Picard v. Kohn*, No. 11 Civ. 01181 (JSR) (S.D.N.Y.).  The Trustee and SIPC opposed the motion.  (ECF Nos. 15–17).  On June 6, 2011, Judge Rakoff granted the motion to consider the Trustee's standing to assert his RICO claims and to determine whether those claims are otherwise barred.  (ECF Nos. 34, 55, 56).

117.    On July 25, 2011, UniCredit, Bank Austria, Pioneer, and Profumo filed motions to dismiss the Trustee's RICO and common law claims.  (ECF Nos. 38–41, 44–47, 49–50).  The Trustee and SIPC opposed the motions to dismiss.  (ECF Nos. 51–54).  On February 22, 2012, Judge Rakoff dismissed the RICO and common law claims as to those defendants and returned the remainder of the claims to this Court.  (ECF No. 69).

118.     On March 21, 2012 the Trustee initiated an appeal within the 30-day time period prescribed by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure to preserve the Trustee's right to appeal.  (ECF No. 70).

119.     On April 5, 2013, the Trustee filed a supplemental stipulation with the Second Circuit, which continues to stay the appeal initiated by the Trustee on March 21, 2012.  *Picard v. Kohn*, No. 12-1106 (2d Cir.), ECF No. 18.  This supplemental stipulation makes clear that the appeal was initially withdrawn on April 5, 2012 without prejudice and that the Trustee now has until April 4, 2014 to reinstate the appeal.  The Trustee agreed with the appellees that he would seek the entry of a final judgment under Rule 54(b) before reinstating the appeal.

120.     Since entry of the Administrative Order, thirty-two of the Kohn Defendants have moved to withdraw the reference, including UniCredit and Pioneer (*Kohn*, No. 11 Civ. 01181, ECF Nos. 70–75), Bank Austria, Kohn and certain of her family members and related companies (ECF Nos. 89, 94).  This is the first time that Kohn has appeared in the Kohn Action.

121.     On April 6, 2012, the Trustee filed the second amended complaint and amended RICO case statement in this Court.  (ECF No. 97).

122.     On April 10, 2012, the Trustee dismissed Gianfranco Gutty as a defendant in the Kohn Action.  (ECF No. 100).

123.     On May 10, 2012 the Trustee entered into a stipulation to formally dismiss Hassans International Law Firm.  (ECF No. 104).

124.     On August 10, 2012 the Clerk of this Court entered a default against defendant Daniele Cosulich, on a motion made by the Trustee on August 9, 2012.  (ECF Nos. 114, 112).

125.    On August 31, 2012 the Clerk entered a default against defendants Yakov Lantzitsky and Sharei Halacha Jerusalem, Inc., on a motion made by the Trustee on August 30, 2012.  (ECF Nos. 122, 123, 116, 118).

126.    On November 16, 2012 the Trustee filed a motion for judicial assistance for service of process on defendants in Liechtenstein and Austria.  (ECF Nos. 145, 146).

127.    On December 17, 2012 the Court signed an order issuing requests for international judicial assistance for service of process on defendants in Liechtenstein and Austria.  (ECF Nos. 151, 152).

> **v.    Other Proceedings Relating to Motions To Withdraw**
>
> **(a)    The Administrative Order**

128.    On March 5, 2012, this Court entered the Administrative Order which stated: "[i]n the interest of administrative efficiency, this Court has been informed by Judge Rakoff, and hereby notifies all parties to the Adversary Proceedings, that the District Court will automatically regard untimely any motion to withdraw . . . if such motion is not filed on or before April 2, 2012."  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. No. 08-01789, ECF No. 4707.  Pursuant to the Administrative Order, 438 motions to withdraw and 409 joinders to these motions were filed by the April 2, 2012 deadline, implicating a total of 768 adversary proceedings (accounting for overlap in actions as some motions and joinders were filed in the same matters).

129.    As of the end of the Report Period, a total of 483 motions to withdraw and 424 joinders have been filed, altogether implicating a total of 806 adversary proceedings.

### (b)    Consolidated Briefing Orders

130.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw, facilitating consolidated briefing on common issues raised in the motions to withdraw (the "Common Briefing").  The common issues included:

- whether the Supreme Court's decision in *Stern v. Marshall* (the "Stern Issues") precluded the bankruptcy court from entering final judgment on the Trustee's claims and therefore mandated withdrawal of the reference to bankruptcy court.  131 S. Ct. 2594 (2011); *see* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff Inv. Sec., LLC)*, No. 12 MC 0115 (JSR) (S.D.N.Y. Apr. 13, 2012), ECF No. 4;

- whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense of antecedent debt (the "Antecedent Debt Issue").  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 107;

- whether standing issues (the "Standing Issues") bar the Trustee's common law claims against certain defendants by virtue of the doctrine of *in pari delicto* and/or the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), as well as whether the Trustee is entitled to accept assignments or assert the "insider exception" to *in pari delicto*.  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 114;

- whether § 546(e) of the Bankruptcy Code precludes the Trustee's claims against certain defendants against whom the Trustee has alleged knew or should have known that Madoff was running a Ponzi scheme (the "Bad Faith § 546(e) Issue").  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 119;

- whether the Trustee is entitled to employ § 502(d) of the Bankruptcy Code against defendants accused of receiving avoidable transfers (the "§ 502(d) Issue").  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155;

- whether the Supreme Court's ruling in *Morrison v. National Australia Bank Ltd.*, as applied to SIPA or the Bankruptcy Code, bars the Trustee's claims against certain defendants (the "Extraterritoriality Issue").  130 S. Ct. 2869 (2010); *see* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 6, 2012), ECF No. 167; and

- whether SIPA or the securities laws alter the standards for determining good faith under either §§ 548(c) or 550(b) of the Bankruptcy Code (the

"Good Faith Standard Issues").  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 23, 2012), ECF No. 197.

131.    The *Stern* Issues were raised by hundreds of defendants.  The defendants' moving papers were filed on May 4, 2012 (ECF No. 78), the Trustee's opposition papers were filed on May 25, 2012 (ECF No. 141), and the defendants' reply papers were filed on June 11, 2012 (ECF No. 176).  Judge Rakoff heard oral argument on June 18, 2012.  Judge Rakoff issued a decision on January 4, 2013 (the "*Stern* Decision"), ruling that the Bankruptcy Court could not issue a final decision on the Trustee's fraudulent transfer claims.  Opinion and Order, ECF No. 427.  The *Stern* Decision indicates that the Bankruptcy Court may be able to render rulings where a defendant filed a claim.  *Id.* at 19.  In the *Stern* Decision, Judge Rakoff found that the Bankruptcy Court could issue a report and recommendation, and referred the Trustee's cases back to the Bankruptcy Court subject to the other pending rulings.  *Id.*

132.    The Antecedent Debt Issue was also raised by hundreds of defendants, who filed their motion on June 25, 2012.  (ECF No. 196).  The Trustee's opposition papers were filed on July 25, 2012 (ECF No. 252), and the defendants' reply papers were filed on August 8, 2012 (ECF No. 273).  Oral argument was held by Judge Rakoff on August 25, 2012.  The Antecedent Debt Issue remains *sub judice.*

133.    The Standing Issues were raised by various defendants.  The defendants filed two sets of moving papers on August 3, 2012 (ECF Nos. 269, 270, 271), the Trustee's opposition papers were filed on September 14, 2012 (ECF No. 342), and the defendants' reply papers were filed on October 5, 2012 (ECF No. 383).  Judge Rakoff heard oral argument on October 15, 2012.  The Standing Issues remain *sub judice*.

134.    Various defendants raised the § 502(d) Issue and joined in the moving papers filed on July 13, 2012.  (ECF Nos. 231–33).  The Trustee's opposition papers were filed on

September 12, 2012 (ECF No. 336), and the defendants' reply papers were filed on September 28, 2012 (ECF No. 369).  Oral argument was held by Judge Rakoff on October 9, 2012.  On February 12, 2013, Judge Rakoff issued a "bottom line" ruling indicating that the Trustee may invoke section 502(d) of the Bankruptcy Code.  (ECF No. 439).  Judge Rakoff indicated that an opinion setting forth the basis for Judge Rakoff's ruling will issue in due course.

135.    The Bad Faith § 546(e) Issue was raised by various defendants who filed two sets of moving papers on July 27, 2012.  (ECF Nos. 259–261). The Trustee filed a consolidated opposition on September 28, 2012 (ECF No. 370), the defendants submitted a reply on October 19, 2012 (ECF No. 400), and oral argument was held on November 26, 2012.  On February 12, 2013, Judge Rakoff issued a "bottom line" ruling indicating that under certain circumstances, the Trustee's complaints should not be dismissed at the pleading stage solely on the basis of defendants' invocation of § 546(e) of the Bankruptcy Code.  (ECF No. 439).  On April 15, 2013, Judge Rakoff issued an opinion setting forth the basis for his ruling, and indicated that the Trustee's claims are not precluded under § 546(e) of the Bankruptcy Code in cases where the Trustee "sufficiently alleges that the transferee from whom [the Trustee] seeks to recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protection of Section 546(e)'s safe harbor."  (ECF No. 460).

136.    The Extraterritoriality Issue was joined by various defendants, who filed their moving papers on July 13, 2012.  (ECF Nos. 234–36).   The Trustee filed opposition papers on August 17, 2012 (ECF No. 310), and the defendants filed reply papers on August 31, 2012 (ECF No. 322).  Judge Rakoff held oral argument on September 21, 2012.  The Extraterritoriality Issue remains *sub judice*.

137.    The Good Faith Standard Issues were raised by various defendants who filed two main sets of moving papers on July 20, 2012.  (ECF Nos. 242, 243).  The defendants were permitted to file six supplemental briefs on August 10, 2012.  (ECF Nos. 276, 282–86, 292).  On August 31, 2012, the Trustee filed a consolidated opposition to the two main sets of moving papers.  (ECF No. 324).  On September 14, 2012, the Trustee filed a consolidated opposition to the six supplemental briefs.  (ECF No. 347).  On September 14, 2012, the defendants filed two replies in support of the main moving papers.  (ECF No. 345, 346).  On September 28, 2012, the defendants filed six replies in support of the six supplemental memoranda.  (ECF Nos. 361–64, 366, 367).  Oral argument on the Good Faith Standard Issues was conducted by Judge Rakoff on October 12, 2012.  The Good Faith Standard Issues remain *sub judice*.

### (c)    The 546(e) Appeal

138.    On April 27, 2012 the District Court entered an order dismissing certain claims in seventy-eight adversary proceedings in the *Picard v. Greiff*, Adv. No. 11-03775 (BRL) (Bankr. S.D.N.Y.), *Picard v. Blumenthal*, Adv. No. 11-04293 (BRL) (Bankr. S.D.N.Y.), *Picard v. Goldman*, Adv. No. 11-04959 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Hein*, Adv. No. 11-04936 (BRL) (Bankr. S.D.N.Y.) actions.  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. April 30, 2012), ECF No. 57.  These claims included (1) preferences under § 547 of the Bankruptcy Code; (2) constructive fraudulent transfers under § 548(a)(l)(B) of the Bankruptcy Code; and (3) actual and constructive fraudulent transfers or fraudulent conveyances under provisions of the New York Debtor & Creditor Law incorporated by § 544(b) of the Bankruptcy Code (the "Dismissed Claims").  The Dismissed Claims did not include those claims proceeding under § 548(a)(l)(A) and § 550(a) of the Bankruptcy Code.

139.    On April 30, 2012, the District Court entered an Opinion and Order explaining the reasons for its decision.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re*

*Picard v. Greiff, et al.*), 476 B.R. 715 (S.D.N.Y. 2012).  On May 15, 2012, the District Court entered a Supplemental Opinion and Order to make explicit that § 546(e) of the Bankruptcy Code applies to the Trustee's claims for avoidance and recovery of preferential transfers under § 547 of the Bankruptcy Code.  Supplemental Opinion and Order, No. 12 MC 0115 (JSR), ECF No. 101. [7]

140.    On June 21, 2012, the Trustee and SIPC each filed notices of appeal in the Second Circuit from these Orders.  On or about June 21, 2012, the Second Circuit opened Case Nos. 12-2497 and 12-2557 in relation to the notices of appeal filed by the Trustee.  On or about June 21, 2012, the Second Circuit opened Case Nos. 12-2500 and 12-2616 in relation to the notices of appeal filed by SIPC.  The Second Circuit, *sua sponte*, consolidated Case Nos. 12-2497 and 12-2500 under Case No. 12-2497.  The Second Circuit, *sua sponte*, also consolidated Case Nos. 12-2557 and 12-2616 under Case No. 12-2557.

141.    On August 13, 2012, the Trustee and SIPC filed notices of appeal to a subsequent judgment entered by the District Court relating to the 546(e) appeal.  On or about September 10, 2012, the Second Circuit opened Case Nos. 12-3440 and 12-3585 in relation to the notices of appeal filed by the Trustee.  On or about September 10, 2012, the Second Circuit opened Case Nos. 12-3422 and 12-3582 in relation to the notices of appeal filed by SIPC.  The Second Circuit, *sua sponte*, consolidated Case Nos. 12-3422, 12-3440, 12-3582, and 12-3585 under Case No. 12-3422.

---

[7] Judge Rakoff's interpretation of § 546(e) would limit the Trustee's avoidance action claims to those pursued under § 548(a)(1)(A) of the Bankruptcy Code, and would prohibit preference actions brought under § 547 and claims brought under state law fraudulent conveyance statutes.  As a result, if Judge Rakoff's interpretation of § 546(e) is upheld, the Trustee will be prohibited from pursuing preference and state law fraudulent conveyance claims totaling approximately $1.8 billion, but will remain able to pursue avoidance actions seeking the return of approximately $1.5 billion in fraudulent conveyances occurring within the two years prior to the BLMIS bankruptcy filing.

142.    The appeal will specifically address whether § 546(e) of the Bankruptcy Code should be applied to the Trustee's avoidance actions and whether a defendant's invocation of a defense under § 546(e) of the Bankruptcy Code mandates withdrawal of the reference to the Bankruptcy Court under 28 U.S.C. § 157(d).  By order of the Second Circuit, the Trustee's time to file his opening brief was extended to the later of December 13, 2012 or thirty days after Judge Rakoff issued a ruling in the related § 546(e) proceedings pending before the District Court.  *See, e.g.*, *In re Bernard L. Madoff Investment Securities LLC*, 12-2497(L) (2d Cir. Sept. 14, 2012), ECF No. 73; *see* Order dated May 15, 2012, *In re Madoff Securities*, No. 12 MC 0115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 119.  As a result of the April 15, 2013 Order, the Trustee's appeal brief is due on May 15, 2013.

## B.    The Bankruptcy Court and Related Appeals

143.    During this period of voluminous activity before the District Court on motions to withdraw the reference, motions to dismiss, and trial preparation, adversary proceedings that had not been withdrawn to the District Court proceeded before this Court.  Certain decisions of this Court in the matters described herein were appealed to the District Court and decided by various judges of that Court.  After entry of the Administrative Order, certain defendants in these actions moved to withdraw the reference from this Court.

### i.    Avoidance Actions

144.    Prior to December 10, 2010, the Trustee filed approximately 1,000 avoidance actions seeking the return of fictitious profits received by the defendants in those actions (the "Fictitious Profits Litigation").  Since then, and during the Report Period, the Trustee has undertaken a multitude of tasks to prosecute the actions.

145.    As a preliminary matter, many of the defendants in the Fictitious Profits Litigation moved to withdraw the bankruptcy reference on a number of grounds.  The Trustee

engaged in briefing with respect to whether the reference should be withdrawn and where the District Court did withdraw the reference on certain issues, the Trustee briefed the motions to dismiss that followed.

146.    With respect to cases remaining in the Bankruptcy Court, because of the uncertainty surrounding the motions to withdraw the reference, the Trustee agreed with many of the defendants to extend their time to respond to the Trustee's complaints and entered into numerous stipulations to extend same.    Additionally, the Trustee considered hardship applications and where appropriate, agreed to dismiss certain defendants from the actions.    In other cases, the parties engaged in settlement negotiations which led to the resolution of certain actions or a narrowing of the open issues.    Certain defendants requested an early mediation of their cases.    Where the Trustee concurred in that request, the parties engaged in mediations, some of which resulted in a settlement of the actions.    In certain cases, the parties engaged in fact and expert discovery during the Report Period.

### ii.    Subsequent Transferee Actions

147.    To date, the Trustee has brought a total of eighty-two adversary proceedings seeking recovery of just over $7.2 billion in subsequent transfers from 150 defendants who redeemed money from Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited, Harley International (Cayman) Ltd., Kingate Global Fund Ltd., and Kingate Euro Fund Ltd.    The Trustee has completed service of process in all but seven adversary proceedings, for which the Trustee is currently in the process of effectuating international service of process on the remaining 9 defendants.

148.    The subsequent transferee defendants filed motions to withdraw the reference which were granted by United States District Judge Rakoff and resulted in Common Briefing by the Trustee and the defendants.    Among the issues affecting the subsequent transfer cases are the

46

Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the avoidance of initial transfers through the settlement with Fairfield Sentry, Greenwich Sentry, Greenwich Sentry Partners, and various Tremont funds under Bankruptcy Code § 550, application of SLUSA, and the Trustee's standing to assert claims assigned to him.  To date, the District Court has issued a "bottom line" order regarding Bankruptcy Code § 550, has limited the application of the 546(g) safe harbor, and set out a new standard under Bankruptcy Code § 546(e) for those with actual knowledge of BLMIS' securities fraud.  *See* discussion *supra* in Section IX(A)(v)(b).

149.    Two subsequent transferee defendants filed motions to dismiss in the Bankruptcy Court.  Briefing on one motion has not yet been completed.  In the second motion, *Picard v. Bureau of Labor Insurance*, the defendant sought to dismiss based on the Foreign Sovereign Immunities Act, lack of personal jurisdiction, improper extraterritorial application of SIPA and the Bankruptcy Code, the failure to avoid the initial transfers to Fairfield Sentry through the Fairfield Sentry settlement, and the statute of limitations under Bankruptcy Code § 550.  Adv. No. 11-02732 (BRL) (Bankr. S.D.N.Y.), ECF No. 8–10.  On October 11, 2012 the Bankruptcy Court denied the motion to dismiss on all grounds.  (ECF No. 51).

### iii.    *Picard v. ABN AMRO Bank N.A.*

150.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank N.A. (presently known as The Royal Bank of Scotland N.V.), ABN AMRO Incorporated (collectively, the "ABN/RBS Defendants"), and Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited Ltd. (collectively, the "Tremont XL Funds") seeking the return of approximately $571 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of the ABN/RBS

Defendants and the Tremont XL Funds.  *Picard v. ABN AMRO Bank N.A.*, Adv. No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (the "ABN/RBS Action").

151.    On September 30, 2011, the ABN/RBS Defendants moved for withdrawal of the reference.  *Picard v. ABN AMRO Bank N.A.*, No. 11 Civ. 6878 (JSR) (S.D.N.Y.), ECF Nos. 1–3. On January 11, 2012, the Trustee and SIPC opposed the motion.  (ECF Nos. 12–14).  On January 27, 2012, the ABN/RBS Defendants filed reply papers.  (ECF No. 15).  The District Court granted the motion on May 15, 2012, allowing the ABN/RBS Defendants to move to dismiss as to the issue of Bankruptcy Code § 546(g).  (ECF No. 21).  The ABN/RBS Defendants participated in Common Briefing as to the Stern Issues, the Extraterritoriality Issues, the Bad Faith § 546(e) Issue and the Good Faith Standard Issues.  The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(v)(b).

152.    On June 18, 2012, the ABN/RBS Defendants filed a motion to dismiss the Trustee's complaint, claiming the safe harbor of Bankruptcy Code § 546(g) bars the Trustee's subsequent transferee claims.  (ECF Nos. 29–31).  On August 14, 2012, the Trustee filed an amended complaint.  (ECF No. 32).  On September 5, 2012, the ABN/RBS Defendants filed a motion to dismiss the Trustee's amended complaint, again claiming the safe harbor of Bankruptcy Code § 546(g) bars the Trustee's subsequent transferee claims.  (ECF Nos. 33–35). On September 25, 2012, the Trustee and SIPC opposed the motion.  (ECF Nos. 36, 37).  On October 5, 2012, the ABN/RBS Defendants filed reply papers.  (ECF No. 38).  On November 29, 2012, the District Court heard oral argument on the ABN/RBS Defendants' motion to dismiss jointly with two other motions raising Bankruptcy Code § 546(g) (the "546(g) Motions").  On February 15, 2013, the District Court issued a bottom-line order partially denying and partially

granting the 546(g) Motions, with an opinion explaining the bottom-line order to follow. (ECF No. 39).

153.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice in connection with a settlement agreement between the parties. *Picard v. ABN AMRO Bank N.A*., Adv. No. 10-05354 (BRL) (Bankr. S.D.N.Y.), ECF No. 56.

### iv.    *Picard v. ABN AMRO (Ireland) Ltd.*

154.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Solutions Bank (Ireland) Limited), ABN Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Solutions Custodial Services (Ireland) Ltd.) (collectively, the "ABN (Ireland) Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the ABN (Ireland) Defendants. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. No. 10-05355 (BRL) (Bankr. S.D.N.Y.) (the "ABN (Ireland) Action").

155.    On September 30, 2011, the ABN (Ireland) Defendants moved for withdrawal of the reference. *Picard v. ABN AMRO (Ireland) Ltd.*, No. 11 Civ. 6877 (JSR) (S.D.N.Y.), ECF Nos. 1–3.  On January 11, 2012, the Trustee opposed the motion to withdraw the reference. (ECF Nos. 13–14).  On January 27, 2012, the ABN (Ireland) Defendants filed reply papers. (ECF Nos. 15–16).  The District Court granted the motion on May 15, 2012, allowing the ABN (Ireland) Defendants to move to dismiss as to the issue of Bankruptcy Code § 546(g). (ECF No. 22).  The ABN (Ireland) Defendants participated in Common Briefing as to the Stern Issues, the

Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the Good Faith Standard Issues and the Antecedent Debt Issue. The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(v)(b).

156.    On June 13, 2012, the ABN (Ireland) Defendants filed a motion to dismiss the Trustee's complaint, claiming the safe harbor of Bankruptcy Code § 546(g) bars the Trustee's subsequent transferee claims. (ECF Nos. 27–29). On July 3, 2012, the Trustee filed an amended complaint. (ECF No. 33). On July 24, 2012, the ABN (Ireland) Defendants filed a motion to dismiss the Trustee's amended complaint, again claiming the safe harbor of Bankruptcy Code § 546(g) bars the Trustee's subsequent transfer claims. (ECF Nos. 34–36). On August 14, 2012, the Trustee and SIPC opposed the motion to dismiss the amended complaint. (ECF Nos. 37–38). On August 28, 2012, the ABN (Ireland) Defendants filed reply papers. (ECF Nos. 39–40). On November 29, 2012, the District Court heard oral argument on the ABN (Ireland) Defendants' motion to dismiss jointly with two other motions raising the 546(g) Motions. On February 15, 2013, the District Court issued a bottom-line order partially denying and partially granting the 546(g) Motions, with an opinion explaining the bottom-line order to follow. (ECF No. 41).

157.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice in connection with a settlement agreement between the parties. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. No. 10-05355 (BRL) (Bankr. S.D.N.Y.) (ECF No. 50).

### v.    *Picard v. Citibank*

158.    On December 8, 2010, the Trustee commenced an action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citigroup") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent

transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citigroup. *Picard v. Citibank*, Adv. No. 10-05345 (BRL) (Bankr. S.D.N.Y.) (the "Citigroup Action").

159.    On November 2, 2011, Citigroup moved for withdrawal of the reference. *Picard v. Citibank*, No. 11 Civ. 7825 (JSR) (S.D.N.Y.) (ECF Nos. 1–3). On March 2, 2012, the Trustee opposed the motion to withdraw the reference, and oral argument was held on May 1, 2012. (ECF Nos. 13–15). On July 2, 2012, the District Court granted Citigroup's motion, allowing Citigroup to move to dismiss as to the issues of 550(a) and 546(g), and directing Citigroup to participate in Common Briefing as to the Bad Faith § 546(e) Issue and the Good Faith Standard Issues. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec., LLC)*, 12 MC 0115 (JSR) (S.D.N.Y. July 3, 2012), ECF No. 214. The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(v)(b).

160.    On August 15, 2012, Citigroup filed a motion to dismiss, claiming that the safe harbor of 546(g) bars Trustee's subsequent transferee claims. *Picard v. Citibank*, No. 11 Civ. 7825 (JSR) (S.D.N.Y.) (ECF Nos. 25–28). The Trustee and SIPC opposed Citigroup's motion, (ECF Nos. 30–31), and Citigroup filed reply papers. (ECF No. 32). On November 29, 2012 the District Court held oral argument on Citigroup's motion to dismiss jointly with two other motions raising the 546(g) Motions. On February 15, 2013, the District Court issued a bottom-line order partially granting and partially denying the 546(g) Motions, with an opinion explaining the bottom-line order to follow. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec., LLC)*, 12 MC 0115 (JSR), ECF No. 451.

161.    On October 5, 2012, Citigroup filed a motion to dismiss based on § 550 of the Bankruptcy Code, asserting that the Trustee must first obtain a judgment of avoidance as to the

initial transferees before pursuing recovery of subsequent transfers from Citigroup. *Id.*, ECF No.

384.  The Trustee and SIPC filed opposition papers on November 13, 2012, and the Court heard

oral argument on December 3, 2012.  (ECF Nos. 409, 410).  On December 12, 2012, Judge

Rakoff issued a bottom-line ruling denying defendants' motion to dismiss in its entirety.  (ECF

No. 422).

>    **vi.    *Picard v. Cohmad Sec. Corp.***

162.    On June 22, 2009, the Trustee commenced an adversary proceeding against

Madoff insiders Cohmad Securities Corporation ("Cohmad"), Maurice ("Sonny") J. Cohn

("Sonny Cohn"), Marcia B. Cohn, and several other defendants (collectively, the "Cohmad

Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances,

disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in

connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad

Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (BRL) (Bankr. S.D.N.Y.).

163.    The complaint seeks to avoid and recover the fictitious profits withdrawn by the

Cohmad Defendants and the return of commissions and fees transferred directly from BLMIS to

Sonny Cohn and Cohmad.  On October 8, 2009, the Trustee filed an amended complaint.  (ECF

No. 82).  The Cohmad Defendants filed numerous motions to dismiss, which the Trustee

opposed.  (ECF No. 135).

164.    On August 1, 2011, this Court issued its Memorandum Decision and Order

Denying Defendants' Motions to Dismiss Trustee's Complaint.  (ECF No. 209).  This Court

found that the Trustee had adequately pleaded that the transfers received by the Cohmad

Defendants in excess of their principal were not transferred for reasonably equivalent value, and

that Cohmad and Sonny Cohn lacked good faith in receiving commissions from Madoff.  *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 332–34 (Bankr. S.D.N.Y. 2011).

165.    Certain of the Cohmad Defendants filed a motion for leave to appeal which remains pending before United States District Judge Thomas P. Griesa.  *See Picard v. Cohmad Sec. Corp.*, No. 11 MC 00337 (TPG) (S.D.N.Y.), ECF Nos. 212–13.

166.    Meanwhile, the parties have engaged in discovery.  The Trustee has served discovery on all parties, and discovery is ongoing.

167.    In March and April 2012, the Cohmad Defendants moved to withdraw the reference from this Court.  *Picard v. Cohmad*, 12-cv-02676 (JSR) (S.D.N.Y.), ECF No. 1.  The Cohmad Defendants have also participated in Common Briefing as to the Bad Faith § 546(e) Issue and the Good Faith Standard Issues.  *See* discussion *supra* in Section (IX)(A)(v)(b).

### vii.    *Picard v. Defender*

168.    On December 5, 2010, the Trustee commenced an adversary proceeding against Defender Limited, Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann (collectively, the "Foreign Defendants"), and Reliance International Research, LLC, and Justin Lowe (collectively, the "Domestic Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Domestic Defendants and the Foreign Defendants.  *Picard v. Defender Ltd.*, Adv. No. 10-05229 (BRL) (Bankr. S.D.N.Y.) (the "Defender Action").

169.    On November 29, 2012, the Trustee filed a notice of voluntary dismissal without prejudice of Justin Lowe.  (ECF No. 58).

170.   On April 2, 2012, the Foreign Defendants and the Domestic Defendants separately moved to withdraw the reference.  (ECF Nos. 24, 28).  On May 16, 2012, United States District Judge Jed Rakoff withdrew the reference in part for the Foreign Defendants and the Domestic Defendants to consider the Trustee's standing to assert common law claims and issues related to SLUSA.   No. 12-cv-02800 (JSR) (S.D.N.Y.), ECF No. 7; No. 12-cv-02871 (JSR) (S.D.N.Y), ECF No. 7.  In that same order, Judge Rakoff consolidated the cases with others into Case No. 12 MC 0115 and issued a consolidated briefing schedule.  The Defendants in the Defender Action participated in Common Briefing as to the Standing Issues.  The District Court's disposition of this Common Briefing issue is discussed *supra* in Section IX(A)(v)(b).

171.   On April 27, 2012, defendants Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann (the "Moving Defendants") filed a motion to dismiss for lack of personal jurisdiction.  *Defender Action*, ECF No. 36.  The Trustee opposed the motion.  (ECF No. 49).  The Moving Defendants filed their reply brief on October 26, 2012.  (ECF No. 55).  This motion remains pending.

**viii.   *Picard v. Friedman***

172.   On December 9, 2010, the Trustee commenced an adversary proceeding seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of S. Donald Friedman, individually and as a beneficiary of an individual retirement account, Saundra Friedman, Ari Friedman, Broadway-Elmhurst Co. LLC and NTC & Co. LLP.   *Picard v. Friedman*, Adv. No. 10-5395 (BRL) (Bankr. S.D.N.Y.).  NTC & Co. LLP was subsequently voluntarily dismissed as a defendant.  The complaint alleges that the defendants received fraudulent transfers from BLMIS in bad faith.  The complaint was amended on March 31, 2011

(ECF No. 13), to add allegations concerning newly-discovered transfers after defendants sought to dismiss the action on February 18, 2011 (ECF Nos. 7, 8).  The defendants answered the amended complaint on May 13, 2011.  (ECF No. 26).

173.    On March 30, 2012, the defendants moved to withdraw the reference to the District Court.  *See Picard v. Friedman*, No. 12-cv-02343 (JSR) (S.D.N.Y.).  The District Court granted the motion by orders entered on May 16, 2012 and June 25, 2012, allowing defendants to move to dismiss as to the Stern Issues, the Antecedent Debt Issue, the Bad Faith § 546(e) Issue, and the issue whether the Trustee may not avoid mandatory withdrawals from individual retirement accounts.  (ECF Nos. 7, 8).  The defendants participated in Common Briefing on these issues.  *See id.*  The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(v)(b).

174.    Discovery in the Trustee's action has continued to proceed pending resolution of all the motions to dismiss concerning common issues.  During the Report Period, an amended case management order was entered by this Court.  *Picard v. Friedman*, Adv. No. 10-05395 (BRL) (Bankr. S.D.N.Y.), ECF No. 63.  The Trustee reviewed an extensive number of documents produced by non-party banks and the defendants.  The Trustee prepared forensic copies of the defendants' hard drives and is currently reviewing documents produced therefrom. The Trustee likewise engaged in several meet and confers with opposing counsel to address continuing deficiencies with the defendants' productions and attorney-client privilege issues.

175.    In addition, the Trustee issued non-party subpoenas for documents to the defendants' former accounting firm and related entities, and is currently reviewing documents produced pursuant to the subpoenas.  The Trustee also has obtained handwriting samples from

certain former BLMIS employees relevant to the *Friedman* proceeding and is preparing to take the defendants' depositions.

### ix.   *Picard v. Irwin Lipkin*

176.   On November 12, 2010, the Trustee commenced an adversary proceeding against defendants and former BLMIS employees Irwin Lipkin and Eric Lipkin, and their family members (collectively, the "Lipkin Defendants") seeking the return of approximately $9 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lipkin Defendants. *Picard v. Irwin Lipkin*, Adv. No. 10-4218 (BRL) (Bankr. S.D.N.Y.).

177.   Eric Lipkin was subsequently charged with a six count indictment by the United States Attorney's Office, asserting that he manufactured customer statements to reflect false holdings of customer accounts and falsified the books and records of BLMIS. *See United States v. O'Hara*, 10-cr-228 (LTS) (S.D.N.Y.). Eric Lipkin entered into a cooperation agreement and, on June 6, 2011, pleaded guilty to all six counts. He is awaiting sentencing.

178.   Irwin Lipkin, the father of Eric Lipkin, was also subsequently indicted for, among other things, conspiracy to commit securities fraud and falsifying statements. Irwin Lipkin pleaded guilty on November 8, 2012, and is also awaiting sentencing. *Id.* The Trustee is continuing to pursue litigation against the remaining non-indicted defendants.

### x.   *Picard v. J. Ezra Merkin*

179.   On May 7, 2009, the Trustee commenced an adversary proceeding against sophisticated money manager and Madoff associate J. Ezra Merkin and his funds, Gabriel Capital, L.P., Ariel Fund Ltd., Ascot Partners, L.P., and Gabriel Capital Corporation (collectively, the "Merkin Defendants") alleging that Merkin knew or should have known that

Madoff's investment advisory business ("IA Business") was predicated on fraud, and seeking the return of more than $557 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin*, Adv. No. 09-01182 (BRL) (Bankr. S.D.N.Y.). On August 6, 2009, the Trustee filed an amended complaint. (ECF No. 10).

180.     On November 4, 2009, Bart M. Schwartz, as Receiver ("Receiver") of defendants Ariel Fund Limited and Gabriel Capital, L.P., filed a motion to dismiss the complaint, as did the remaining defendants in the proceeding. (ECF Nos. 16, 22). The Trustee opposed the motions. (ECF Nos. 29–30). The Trustee received leave to file a second amended complaint (ECF No. 46) and filed such complaint on December 23, 2009 (ECF No. 49). The Merkin Defendants renewed their motions to dismiss (ECF Nos. 53, 55), which the Trustee opposed (ECF Nos. 62– 63).

181.     On November 17, 2010, this Court entered its Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss Trustee's Complaint. (ECF No. 84); *see also Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010). Among other holdings, the Court held that the Trustee sufficiently pleaded his federal and state law claims seeking to avoid and to recover actual and constructive fraudulent transfers. The Court also held that the Funds were not entitled at the pleading stage to dismissal of the Trustee's actual fraudulent transfer claims pursuant to the § 548(c) "good faith transferee" affirmative defense. *Picard v. Merkin*, 440 B.R. at 256–57. In addition, the Court held that the Funds were not, at the pleading stage, entitled to dismissal of the Bankruptcy Code-

based constructive fraudulent transfer claims pursuant to the § 546(e) "safe harbor" affirmative

defense. *Id.* at 266 n.25.

182.    The Receiver filed a Motion for Leave to Appeal the Court's Memorandum

Decision and Order. (ECF No. 90); *see also Picard v. Merkin*, 11-MC-0012 (KMW) (S.D.N.Y.

Jan. 1, 2011). On August 31, 2011, United States District Judge Kimba M. Wood denied the

motion. *Picard v. Merkin*, No. 11-MC-0012(KMW), 2011 WL 3897970 (S.D.N.Y. Aug. 31,

2011). Among other findings, Judge Wood determined that there were no "substantial grounds

for difference of opinion as to the correctness of the standards relied on by the Bankruptcy Court

in its refusal—at the pleading stage—to dismiss on the grounds of [the Merkin Defendants']

§ 546(e) affirmative defense." *Id.* at *12.

183.    This Court entered a discovery order on December 7, 2011. *Picard v. Merkin*,

Adv. No. 09-01182 (BRL), ECF No. 116. On April 2, 2012, Bart M. Schwartz, as Receiver of

Defendants Ariel Fund Limited and Gabriel Capital, L.P., filed a motion to withdraw the

reference and marked the Merkin case as related to the Katz-Wilpon Action. *Id.*, ECF No. 119.

The District Court subsequently withdrew the reference only as to certain limited issues.

184.    In connection with ongoing discovery, on May 30, 2012, the Trustee and the

Merkin Defendants agreed to submit a 120-day extension to the case management plan and

appointed an arbitrator to adjudicate discovery disputes. (ECF No. 127). The parties jointly

agreed to appoint Melanie Cyganowski as binding arbitrator. To date, Judge Cyganowski has

heard several disputes between the parties regarding third-party documents and bank records. In

July 2012, the Trustee successfully argued for an extension of discovery deadlines, and

additional interrogatories and requests for production were thereafter served upon the Merkin

Defendants. On July 18, 2012, Judge Cyganowski also ruled in favor of the Trustee and ordered

the production of bank records from JP Morgan Chase, JP Morgan Chase for Bear Sterns and Citibank for accounts associated with Gabriel Capital Corporation and J. Ezra Merkin.

185.    On October 3, 2012, the parties entered into a third amended case management plan.  (ECF No. 130).

186.    On October 24, 2012, the Trustee submitted a motion to compel discovery responses from the Merkin Defendants to Judge Cyganowski.  The Trustee also requested a six-month extension of all discovery deadlines as a result of the Merkin Defendants' discovery deficiencies.    On November 17, 2012, Judge Cyganowski held an in-person hearing. Supplemental papers were submitted to Judge Cyganowski in December 2012 and January 2013 by the parties.

187.    On March 15, 2013, Judge Cyganowski issued a ruling granting in substantial part, and denying in part, the Trustee's motion to compel.  Among other things, the order granted the Trustee's requested six-month extension of the third amended case management plan, compelled the Merkin Defendants to comply with Federal Rule of Civil Procedure 34(b) by identifying how their production corresponds with the Trustee's document requests, and required the Merkin Defendants to produce their underlying financial records from their banks and other financial institutions.

188.    During the Report Period, the Trustee also continued preparing for fact witness depositions and expert discovery by conducting extensive and ongoing analysis of documents produced by the Merkin Defendants and from third parties.  Since October 2012, the Trustee has taken seven depositions and scheduled eleven additional depositions. The Trustee has also issued three additional subpoenas for documents from the Merkin Defendants' banks.    With the

extension of discovery, the Trustee is in the process of evaluating additional witnesses that the Trustee may seek to depose.

189.    Subsequent to a press release on June 25, 2012 by the New York Attorney General ("NYAG") announcing a settlement with the Merkin Defendants, the Trustee prepared and filed with this Court comprehensive injunction pleadings and a complaint seeking to enjoin the NYAG and others from consummating the settlement, transferring, or otherwise dissipating any assets. *Picard v. Schneiderman*, Adv. No. 12-01778 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 1, 3. In response, the NYAG and other settling parties filed a motion to withdraw the reference (ECF No. 17), and that motion was fully briefed as of October 11, 2012. *Picard v. Schneiderman*, 12-cv-06733 (S.D.N.Y.), ECF Nos. 10, 11. In accordance with a stipulation and order entered into by the parties, following a determination of the motion to withdraw the reference by the District Court, the NYAG settlement is subject to a standstill agreement pending the hearing on the injunction application.  (ECF No. 53).

190.    The NYAG and other Merkin Defendants thereafter filed a joint motion to withdraw the reference (the "Joint MTWR") of the injunction application. The Trustee and SIPC filed papers in opposition to the Joint MTWR, and following the submission of the defendants' reply brief on October 11, 2012, the matter was fully briefed. After argument and a hearing in November, the District Court granted the Joint MTWR in December, and briefing on the Trustee's substantive injunction application followed thereafter. The injunction application was fully briefed as of early March 2013, and oral argument took place on March 25, 2013 before the District Court. An opinion was issued on April 15, 2013 denying the Trustee's application. An appeal will follow.

xi.    *Picard v. Kingate*

191.    On April 17, 2009, the Trustee commenced an adversary proceeding against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the "Kingate Funds"), and other defendants, seeking, among other relief, the avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law of preferential and fraudulent transfers made by BLMIS to or for the benefit of the Kingate Funds in the approximate total amount of $875 million.[8]  On June 8, 2011, the Trustee filed and served a third amended complaint, which added a number of additional foreign defendants, significantly expanding the case.  *Picard v. Federico Ceretti*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.), ECF No. 32.

192.    The Kingate Defendants participated in Common Briefing on issues that were the subject of consolidated briefing orders entered by the District Court.  On January 4, 2013, the District Court issued an Opinion and Order ruling that, in light of the Supreme Court's decision in *Stern v. Marshall*, the Bankruptcy Court has the power to hear the Trustee's avoidance claims and to enter proposed findings of fact and conclusions of law.  Opinion and Order, *In re Bernard L. Madoff, LLC*, No. 12 MC 0115 (JSR), ECF No. 427.  In certain matters where the Trustee has disallowed a customer claim under § 502(d) of the Bankruptcy Code, which the District Court found was applicable to the Trustee's avoidance actions by an order dated February 12, 2013, the Bankruptcy Court may have the power to enter a final order.  A further discussion of this Common Briefing issue is contained *supra* in Section IX(A)(v)(b).

---

[8] As a result of a settlement between the Trustee and the United States of America on behalf of the Internal Revenue Service, approved by order of this Court dated December 21, 2011, the aggregate amount of the alleged transfers has been adjusted to approximately $825 million.  *See* Order, Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.), No. 08-01789 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2011), ECF No. 4602.

193.    By Order dated February 12, 2013, the District Court ruled that the Trustee must allege that initial and subsequent transferees had actual knowledge of BLMIS's fraud to except the transfers from the safe harbor of § 546(e).  (ECF No. 435).  A discussion of the District Court's bottom-line rulings involving § 502(d) and § 546(e) of the Bankruptcy Code, together with the issue of SLUSA, is contained *supra* in Section IX(A)(v)(b).  The Trustee and his counsel await a ruling and opinion with respect to SLUSA.

194.    The proceedings commenced by the Trustee in the United Kingdom are currently stayed.  By an order of the Supreme Court of Bermuda dated October 10, 2012, the Kingate Funds were permitted to proceed with their litigation claims pending in Bermuda seeking a recovery against Kingate Management Limited and other defendants named by the Trustee that would interfere with the Trustee's avoidance action before this Court.  The Trustee, therefore, filed before this Court a complaint for declaratory and injunctive relief against the Kingate Funds, together with an application for a preliminary injunction.  While the parties discuss a global settlement of all issues between them, the Trustee has agreed to extend the Kingate Funds' time to answer the injunction action.

**xii.    *Picard v. Magnify Inc.***

195.    On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the "Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of

the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (BRL) (Bankr. S.D.N.Y.). On September 21, 2011, the Trustee filed an amended complaint in the action. (ECF No. 39).

196.    On April 2, 2012, defendants Robert H. Book and R.H. Book LLC moved to withdraw the reference to the District Court on several grounds. *See Picard v. Magnify, Inc.*, No. 12-cv-02482 (JSR) (S.D.N.Y.).   The motion has been granted, in part, respecting certain Common Briefing issues. These defendants, acting collectively with other defendants in such adversary proceedings at the direction of the District Court, have filed briefs in connection with certain of those Common Briefing issues.  Briefing has been completed respecting these common issues.

197.    Defendant Kurt Brunner moved to dismiss the Trustee's complaint for lack of personal jurisdiction on September 1, 2011, and supplemented this motion with regard to allegations in the amended complaint on November 3, 2011.  *Picard v. Magnify*, Adv. No. 10-05279 (BRL), ECF Nos. 32, 48.  On June 14, 2012, this Court held a hearing on Mr. Brunner's motion to dismiss for lack of personal jurisdiction.  This Court denied the motion and ordered jurisdictional discovery over Mr. Brunner related to "the degree to which Brunner controlled and profited from [defendants] Magnify, Premero and Strand" and entered an order to this effect on June 15, 2012.  (ECF No. 97).  Following this order, the Trustee reviewed responses to written discovery served on Mr. Brunner and conducted a deposition of Mr. Brunner on November 7 and 8, 2012.  By stipulation of the parties so ordered by this Court, the parties have extended the deadline for the close of jurisdictional discovery past the current deadline of May 15, 2013. (ECF No. 105).  The Trustee has also extended the deadline for the close of jurisdictional discovery to May 15, 2013 in *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (BRL) (Bankr. S.D.N.Y. filed Nov. 30, 2010), a pending avoidance action against defendants

who have ties to the late founder of several of the Magnify Defendants.  Ongoing discovery in each action may result in information relevant to both actions.

198.    The Trustee's counsel in Israel filed an application to halt the voluntary liquidation of the defendant Yeshaya Horowitz Association ("YHA") and transfer the liquidation to a court-supervised liquidation before the Jerusalem District Court.  On November 11, 2012, the Trustee's counsel in Israel filed an answering pleading in response to YHA's liquidator's response to the Trustee's application.  On February 7, 2013, the Jerusalem District Court held a hearing on the Trustee's application.  At this hearing, YHA's liquidator represented to the court that the liquidation had been terminated by resolution of YHA's board; the Jerusalem District Court ordered YHA to serve the Trustee with a copy of the resolution terminating the voluntary liquidation within 30 days and to provide at least 21 days' notice to the court and the Trustee before commencing any future liquidation.  To date, YHA has not served the Trustee with a copy of the resolution terminating the voluntary liquidation.

199.    In addition to this activity, and pursuant to the parties' case management plan, the Trustee has received and reviewed documents served in response to written discovery requests to several of the defendants and prepared subpoenas pursuant to Federal Rules of Civil Procedure 45 on certain third-party banks.

**xiii.    *Picard v. Maxam Absolute Return Fund, L.P.***

200.    On December 8, 2010, the Trustee commenced an avoidance action against Maxam Absolute Return Fund, L.P., Maxam Absolute Return Fund, Ltd., Maxam Capital Management, LLC, Maxam Capital GP LLC, Sandra L. Manzke Revocable Trust, Sandra L. Manzke, as trustee and individually, Suzanne Hammond, Walker Manzke, and April Bukofser Manzke (collectively, the "Maxam Defendants") seeking the return of approximately $98 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maxam Defendants. *Picard v. Maxam Absolute Return Fund, L.P.*, Adv. No. 10-05342 (BRL) (Bankr. S.D.N.Y.).

201.    During the Report Period, discovery continued in the Maxam case. The Trustee's counsel reviewed, analyzed and organized a multitude of documents produced by the Maxam Defendants on a rolling basis and prepared work product instrumental in assisting with further necessary discovery, factual investigation, witness identification, and pretrial strategy. The Trustee's counsel produced thousands of documents in the Trustee's possession, custody, and control, and engaged in additional written discovery, including drafting affirmative requests and responding to supplemental document requests and interrogatories. In addition, the Trustee's counsel had a dispute with the Maxam Defendants regarding the number of depositions that could be taken in the case, resulting in a chambers conference with Judge Lifland in December 2012.

202.    On July 11, 2011, Maxam Absolute Return Fund, Ltd. ("Maxam Limited") filed a motion in the Grand Court of the Cayman Islands against the Trustee, seeking declaratory relief from the Trustee's lawsuit filed in this Court. On September 22, 2011, the Trustee's counsel submitted an application to this Court seeking to enforce the automatic stay and enjoin the Cayman action. This Court granted the application and entered an order on October 12, 2011 finding that the Cayman action violated the automatic stay, at least one District Court Stay Order, and was void *ab initio*. Maxam Limited thereafter discontinued its action in the Cayman Islands and appealed Judge Lifland's ruling to the District Court. On May 4, 2012, the Honorable J. Paul Oetken of the District Court affirmed this Court's order. On May 29, 2012, Maxam Limited filed a Notice of Appeal of Judge Oetken's ruling to the Second

Circuit.  Maxam Limited filed its opening brief on September 11, 2012.  A significant amount of time was spent during the Report Period preparing the Trustee's brief to the Second Circuit, which was filed on December 12, 2012.  *Maxam v. Picard*, No. 12-2194-bk (2d Cir. Dec. 11, 2012), ECF No. 62.  *See* discussion *infra* in Section IX(C)(d).

#### xiv.    *Picard v. Michael Lieberbaum*

203.    On December 10, 2010, the Trustee commenced an avoidance action against husband and wife Michael and Cynthia Lieberbaum (collectively, the "Lieberbaums"), seeking the return of approximately $2.36 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lieberbaums.  *Picard v. Michael Lieberbaum*, Adv. No. 10-05406 (BRL) (Bankr. S.D.N.Y.).  The Trustee alleges that the Lieberbaums profited from the Ponzi scheme and from a personal relationship with Madoff through the annual receipt of side, off-the-books payments of thousands of dollars of cash, which spanned approximately thirty years.  In addition to the cash, in or around 1989, Mr. Lieberbaum, who was a broker at Morgan Stanley, also orchestrated an arrangement with Madoff, whereby Madoff allegedly allowed Mr. Lieberbaum to use BLMIS's name and BLMIS's trading account to trade options for himself.  (ECF Nos. 1, 2).  Because the Lieberbaums received hundreds of thousands of dollars in cash from BLMIS and because Mr. Lieberbaum acted with Madoff to violate several FINRA, NASD, and other regulations, the complaint alleges that the Lieberbaums knew or should have known that BLMIS was involved in fraudulent activity.  *Id.*

204.    The Lieberbaums filed an answer to the Trustee's complaint, counterclaims, and a demand for a jury trial on April 18, 2011.  (ECF No. 5).  On August 25, 2011, this Court entered a case management plan.  (ECF No. 21).  On January 25, 2013, this Court entered the

fourth amended case management plan. (ECF No. 38). During the course of discovery, the Trustee has served document requests on various third parties, served subpoenas for handwriting exemplars on former BLMIS employees, taken the depositions of several third-party witnesses and interviewed other potential third-party witnesses, produced documents responsive to the Lieberbaums' document requests, noticed the depositions of the Lieberbaums, and begun the process of identifying experts needed to prove the Trustee's case. The Trustee and the Lieberbaums also have engaged in substantive settlement conversations. Discovery ends April 29, 2013, and all dispositive motions must be filed by December 2, 2013.

### xv.    *Picard v. Peter B. Madoff*

205.    On October 2, 2009, the Trustee commenced an adversary proceeding against Peter Madoff, Andrew Madoff, Shana Madoff, and the late Mark Madoff (the "Family Defendants") seeking the return of approximately $198 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages for breach of fiduciary duty, negligence, unjust enrichment, constructive trust, and accounting in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.). On March 15, 2010, the Family Defendants filed a motion to dismiss the complaint. (ECF Nos. 13–19). The Trustee opposed the motion. (ECF No. 25).

206.    On September 22, 2011, this Court filed its Memorandum Decision And Order Denying In Part And Granting In Part Defendants' Motion To Dismiss Trustee's Complaint. (ECF No. 55); *Picard v. Peter B. Madoff (In re Bernard L. Madoff Inv. Sec., LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011). This Court upheld the Trustee's common law claims for breach of fiduciary duty, negligence, unjust enrichment, constructive trust, and accounting. In so doing, the Court determined that the Trustee's common law claims (i) were not barred by the doctrine

of *in pari delicto* or the related *Wagoner* Rule because the Family Defendants were alleged to be insiders and fiduciaries of BLMIS, and (ii) were not preempted by the Martin Act because those claims were unrelated to the fraudulent investment advice given by Madoff to customers of the IA Business.  (ECF Nos. 123, 124).  This Court also ruled that because the NYAG has no enforcement power under the Martin Act to bring the types of claims asserted in the Trustee's complaint, which do not require proof of scienter, the common law claims would not interfere with the Martin Act's statutory enforcement mechanism.  (ECF No. 127).

207.    This Court dismissed certain of the Trustee's claims for a failure to identify the transfers with the requisite particularity, noting that "[r]ectifying the majority of these pleading deficiencies upon amendment should not prove to be a Herculean task." *Id.* 107.  This Court granted leave to the Trustee to amend his complaint. *Id.*

208.    On October 6, 2011, Andrew Madoff and the Estate of Mark Madoff filed a Motion for Leave to Appeal the Bankruptcy Court's decision (ECF Nos. 56–57), which was assigned to United States District Judge William H. Pauley, III. *See Picard v. Estate of Mark D. Madoff*, No. 11 MC 00379 (WJP) (S.D.N.Y.).  On December 22, 2011, Judge Pauley issued a decision denying the Motion for Leave to Appeal.  (ECF No. 12).

209.    On November 7, 2011, the Trustee filed an amended complaint that identified the date and amount of each transfer alleged in the action. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.), ECF No. 64.  The amended complaint also increased the amount sought from the Family Defendants from over $198 million to over $226 million.  This increase was due, in part, to the ongoing nature of the Trustee's investigation, which uncovered additional fraudulent transfers to the Family Defendants in various forms.

210.    On December 23, 2011, the Trustee filed a Motion for Leave to File a Second Amended Complaint.  (ECF No. 71).  In his proposed second amended complaint, the Trustee sought to name as defendants Mark Madoff's widow, Stephanie Mack, Mark Madoff's ex-spouse, Susan Elkin, and Andrew Madoff's wife, Deborah Madoff (collectively, the "Spouse Defendants").  *Id.*  The Trustee also sought to add additional fraudulent transfer claims against the initial defendants, as well as subsequent transferee claims against both the initial and the Spouse Defendants.  *Id.*  Lastly, the Trustee sought to make certain clarifications with regard to previously asserted fraudulent transfer claims.  *Id.*  The Spouse Defendants and Andrew Madoff, individually and as Executor of the Estate of Mark Madoff, opposed the motion.  (ECF Nos. 89, 91, 94, 96).

211.    This Court heard oral arguments on the Trustee's motion on April 3, 2012.  On April 4, 2012, this Court issued a Memorandum Decision and Order Denying in Part and Granting in Part the Trustee's Motion for Leave to File a Second Amended Complaint.  (ECF No. 106).  The Court granted the Trustee leave to name Stephanie Mack and Deborah Madoff as defendants with respect to certain common law causes of action as to which the statute of limitation had not yet run.  *Id.*  The Court denied leave to name the Spouse Defendants as defendants with respect to the bankruptcy causes of action and certain common law causes of action for which the statute of limitation had expired.  *Id.*  The Court granted the Trustee leave to pursue additional fraudulent transfer claims against the initial defendants, as well as subsequent transferee claims against both the initial defendants and the Spouse Defendants.  Finally, the Court granted the Trustee leave to make the necessary clarifications with regard to previously asserted claims.  *Id.*

212.    On April 2, 2012, putative defendants Stephanie Mack and Deborah Madoff moved to withdraw the reference in this case, notwithstanding that they were not yet named as defendants. (ECF Nos. 100, 104). In their moving papers (ECF Nos. 101, 105), Ms. Mack and Ms. Madoff noted that while they had not yet been named as defendants, they were nevertheless filing the motion to withdraw the reference by the Court-instituted April 2, 2012 deadline out of an abundance of caution. *Id.* They both argued, in part, that the cases against them ought to be precluded by the rule of *in pari delicto*, specifically, because they were not insiders of BLMIS, as to whom Courts have recognized a narrow exception to this rule. *Id.* While Ms. Mack's motion sought withdrawal of the reference only with respect to the claims against her (ECF No. 101), Ms. Madoff's motion sought to withdraw the reference with respect to the entire case (ECF No. 105). Ms. Madoff also filed a separate motion to withdraw the reference in the related action filed against her by the Trustee. *Picard v. Deborah Madoff*, Adv. No. 10-05332 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 22, 23.

213.    On September 14, 2012, the Trustee filed his memorandum of law in opposition to the withdrawal motion filed by Ms. Mack and Ms. Madoff to the District Court. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec., LLC)*, 12 MC 0115 (JSR) (S.D.N.Y. Sept. 14, 2012), ECF No. 344. Ms. Mack and Ms. Madoff filed a reply memorandum in further support of their motion. (ECF No. 378). Judge Rakoff heard oral argument by all parties on the motion to withdraw on October 16, 2012.

214.    On June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion. Specifically, Peter Madoff pleaded guilty to one count of conspiracy to (a) commit securities fraud, (b) falsify records of an investment adviser, (c) falsify records of a broker-dealer, (d) make false filings with the SEC, (e)

commit mail fraud, (f) falsify statements in relation to documents required by ERISA, and (g) obstruct and impede the lawful governmental function of the IRS. He also pleaded guilty to one count of falsifying records of an investment advisor. *See United States v. O'Hara*, 10 Cr. 228 (LTS) (S.D.N.Y.), ECF No. 246 (the "Preliminary Forfeiture Order"). Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the United States Government. In addition, the Preliminary Forfeiture Order covered certain significant property owned by Shana Madoff that was forfeited under the same plea agreement.

215.    On February 6, 2013, Peter Madoff consented to the entry of judgment against him in the amount of $90,390,500.00, the full amount of the Trustee's claims against him. (ECF No. 145). Under the consent judgment, the Trustee will forebear from seeking to enforce the judgment as long as Peter Madoff makes reasonable efforts to cooperate with the Trustee in the Trustee's efforts to recover funds for the BLMIS Estate. *Id.*

216.    As part of the consent judgment, the Trustee agreed to forebear from seeking recovery against Shana Madoff and to dismiss the Trustee's action against Marion Madoff. *Id.* On February 7, 2013, the Trustee voluntarily dismissed, with prejudice, the adversary proceeding against Marion Madoff. *Picard v. Marion Madoff*, Adv. No. 10-04310 (BRL) (Bankr. S.D.N.Y. Feb. 7, 2013), ECF No. 16. On March 19, 2013, the Court so-ordered a stipulation dismissing with prejudice the adversary proceeding against Shana Madoff. *Picard v. Peter Madoff*, Adv. No. 09-01503 (BRL), ECF No. 148.

### xvi.    *Picard v. Richard M. Glantz*

217.    On December 9, 2010, the Trustee commenced an adversary proceeding against Richard Glantz and several related individuals and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code,

the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent

transfers, fraudulent conveyances and damages in connection with certain transfers of property

by BLMIS to or for the benefit of the Glantz Defendants.    The Trustee alleges that Richard

Glantz, and his deceased father, Edward Glantz, created and managed entities that pooled many

millions of dollars of investor funds to be funneled into BLMIS. *See Picard v. Richard M.

Glantz*, Adv. No. 10-05394 (BRL) (Bankr. S.D.N.Y.).    The Trustee further alleges that, after

Richard Glantz, Edward Glantz and entities they created and managed were sued by the SEC for

violations of the federal securities laws and were permanently enjoined from future securities

laws violations, Richard Glantz and Edward Glantz arrived at a new arrangement with Madoff

which resulted in Richard Glantz and Edward Glantz receiving fraudulent side payments.    (ECF

No. 1).    In addition, Richard Glantz continued to funnel his own money, his family's money, and

other people's money into BLMIS though new entities.    *Id.*

218.    To date, the Trustee has dismissed fifteen defendants in this matter.    There are

twenty-four defendants remaining in this adversary proceeding.    (ECF Nos. 11, 31, 43).

219.    On February 1, 2012, the remaining defendants moved in this Court to dismiss the

complaint.    The Trustee and counsel for the defendants subsequently entered into a stipulation,

which was so-ordered by the Court on April 2, 2012, pursuant to which the Trustee had until

May 16, 2012 to amend the complaint.    (ECF No. 37).    The defendants had until June 27, 2012 to

either supplement their motion to dismiss or file a new motion to dismiss.

220.    On March 31, 2012, all the remaining defendants filed a motion to withdraw the

reference.    (ECF No. 34).

221.    On April 11, 2012, the motion to withdraw the reference was referred to Judge

Rakoff.    *See Picard v. Glantz*, No. 12-cv-02778 (JSR) (S.D.N.Y.), ECF Nos. 1–3.    On May 15,

May 16, June 1 and June 25, 2012, the District Court entered orders withdrawing the reference, in part, for the limited purpose of hearing and determining certain common issues.  (ECF Nos. 7, 9, 10, 11).

222.    The Trustee and defendants entered into a stipulation, which was so ordered by this Court on January 17, 2013, pursuant to which the Trustee has until May 17, 2013 to amend the complaint.  *Picard v. Glantz*, Adv. No. 10-05394 (BRL), ECF No. 42.  The defendants may either supplement their motion to dismiss or file a new motion to dismiss by June 28, 2013.

### xvii.    *Picard v. Stanley Chais*

223.    On May 1, 2009, the Trustee commenced an action against Stanley Chais and Pamela Chais, certain members of their family, and a number of related trusts and entities (collectively, the "Chais Defendants") seeking the return of more than $1.3 billion under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants (the "Chais Action").  *Picard v. Chais*, Adv. No. 09-1172 (BRL) (Bankr. S.D.N.Y.).

224.    On April 2, 2012, certain of the defendants moved to withdraw the reference to the District Court on several grounds.  *See Picard v. Chais*, No. 12-cv-02371 (S.D.N.Y) (JSR); *Picard v. Chais*, No. 12-cv-02658 (JSR) (S.D.N.Y.).  Both motions have been granted, in part, respecting certain Common Briefing issues.  The moving defendants, acting collectively with other defendants in such adversary proceedings at the direction of the District Court, have filed briefs in connection with certain of those discrete issues.  Briefing has been completed respecting these Common Briefing issues.

225.    On July 18, 2012, by order of this Court, the parties in the Chais Action and the Hall Action were ordered to participate in a joint mediation of both actions.  *Picard v. Chais*, Adv. No. 09-1172 (Bankr. S.D.N.Y.), ECF No.128.  The mediation took place on February 12, 13 and 14, 2013.  The parties are still engaged in follow-up discussions related to the mediation.

226.    In addition to this activity, the Trustee has drafted a proposed case management plan regarding discovery in the Chais Action and readied an amended complaint for filing with additional factual allegations regarding defendant Michael Chasalow.  Per a stipulation with Mr. Chasalow, the Trustee has until June 28, 2013 to file the amended complaint in the Chais Action. (ECF No. 133).

## C.    Injunction Proceedings

227.    The Trustee has commenced numerous injunction actions seeking to enjoin third-party lawsuits brought against defendants who also have been named as defendants in the Trustee's avoidance actions. During the Report Period, there were significant developments in the Bankruptcy Court, the District Court, and the Second Circuit with respect to the Trustee's injunction proceedings, including with respect to the Picower Defendants, the Family Defendants, the Chais Defendants, the Maxam Defendants, the Merkin Defendants, Access Management Luxembourg S.A. and related entities (the "Luxembourg Defendants"), Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (the "Kingate Funds"), and a class of investors in feeder funds operated by the Fairfield Greenwich Group (the "Fairfield Class Plaintiffs"). Through these proceedings, the Trustee has sought to enforce the automatic stay established by § 362 of the Bankruptcy Code and related District Court stays, and to enjoin third-party actions under § 105 of the Bankruptcy Code in order to facilitate the orderly administration of the BLMIS liquidation, and to preserve assets from which the Trustee may recover for the benefit of

74

all BLMIS customers.  As a result of these efforts, very significant rulings favoring the estate have been obtained.

> (a) ***Picard v. Fox*, Adv. No. 10-03114 (BRL), Case Nos. 10-04652, 10-cv-07101, and 10-cv-07219 (JGK); *Picard v. Picower*, Adv. No. 09-01197 (BRL), Case Nos. 11-cv-01328, 11-cv-01298 (JGK); *In re Bernard L. Madoff Inv. Sec., LLC*, 12-1645 and consolidated cases (2d Cir.)**

228.    On March 31, 2010, the Trustee commenced an adversary proceeding in this Court, *Picard v. Fox*, Adv. No. 10-03114 (BRL) (Bankr. S.D.N.Y.), seeking to enjoin third-party actions that were commenced against the Picower Defendants by Adele Fox, Susanne Marshall, and classes they purport to represent (the "Fox Plaintiffs").

229.    Following significant briefing and argument, this Court held that the automatic stay and the December 15, 2008 stay order of the District Court apply, and hence, the third-party actions are void *ab initio*.  *Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010).  Additionally, this Court preliminarily enjoined the actions pending the Trustee's settlement with the Picower Defendants or completion of the Trustee's Picower litigation.  *Id.*  The Fox Plaintiffs appealed the decision to the District Court.  (ECF No. 51, 52).

230.    In connection with the Trustee's avoidance action in *Picard v. Picower,* Adv. No. 09-01197 (BRL) (Bankr. S.D.N.Y.), the Trustee subsequently reached a settlement with the Picower Defendants.  The Trustee then moved for approval of his settlement with the Picower Defendants and for the issuance of a permanent injunction in connection therewith.  (ECF No. 25).  On January 13, 2011, this Court issued an order approving the settlement and granting the requested injunction.  (ECF No. 43.)  The Fox Plaintiffs appealed this decision as well.  (ECF Nos. 44, 45, 49).

231.    The appeals were consolidated, and the propriety of this Court's rulings as to the injunctions and the settlement was argued by the Trustee and the Fox Plaintiffs on December 19,

2011.  On March 26, 2012, United States District Judge John G. Koeltl issued a written opinion affirming this Court's opinion in *Fox* and the order approving the settlement between the Trustee and the Picower Defendants, as well as the related injunction.  *See Picard v. Fox*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012).  Judge Koeltl held that the Trustee's settlement with the Picower Defendants was "extraordinarily beneficial" to the BLMIS estate, and that the third-party actions were "substantively duplicative" of the Trustee's Picower litigation.  *Id.* at 473, 481.  Judge Koeltl also held that the third-party actions commenced by the Fox Plaintiffs were properly enjoined because they "plainly [. . .] jeopardize[d] the estate's ability to recover fraudulently transferred assets from the Picower Defendants . . . ."  *Id.* at 486.

232.    The Fox Plaintiffs filed notices of appeal of Judge Koeltl's order to the Second Circuit on April 24, 2012.  The appeal is pending as Case No. 12-1645, together with consolidated cases.  A hearing took place on November 19, 2012, and the parties are awaiting a decision.

> **(b)    *Picard v. Stahl*, Adv. No. 10-03268 (BRL), Case Nos. 11-cv-02246, 11-cv-02135, 11-cv-02392 (AKH), Case Nos. 11-5421 and 11-5428 (2d Cir.)**

233.    On May 27, 2010, the Trustee commenced an adversary proceeding in this Court, *Picard v. Stahl*, Adv. No. 10-03268 (BRL) (Bankr. S.D.N.Y.), seeking to enjoin third-party actions commenced against Andrew Madoff, Mark Madoff, Peter Madoff, Ruth Madoff and Shana Madoff (collectively, the "Madoff Defendants") by Richard Stahl, Reed Abend, and a number of other unrelated plaintiffs (collectively, the "Stahl Plaintiffs").  The Trustee has brought an avoidance action against the Madoff Defendants in this Court.  *See Picard v. Peter B. Madoff*, Adv. No. 10-01503 (BRL) (Bankr. S.D.N.Y.); *see* discussion *supra* Section IX(B)(xv).

234.    This Court found that the automatic stay and the December 15, 2008 stay order of the District Court applied, and held that the third-party actions are void *ab initio* as against the

Madoff Defendants.  *Picard v. Stahl*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011).  As an alternative part of the ruling, this Court also preliminarily enjoined the actions pending the completion of the Trustee's litigation against the Madoff Defendants.  *Id.*  Several of the Stahl Plaintiffs appealed this decision.  *Picard v. Stahl*, Adv. No. 10-03268, ECF Nos. 51–53.

235.    Following briefing and argument, on November 17, 2011, United States District Judge Alvin K. Hellerstein issued a bench ruling and summary order affirming this Court's opinion.  *In re Bernard L. Madoff Inv. Sec., LLC*, No. 11-cv-2392 (AKH), 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011).  Judge Hellerstein found that the third-party actions created "a waste of personal assets that the trustee seeks to recover" and that "the profusion of [the third-party] lawsuits makes it extremely difficult for the trustee to run his lawsuit expeditiously and economically in the interests of the creditors of the estate."  *Id.* at *15.  Judge Hellerstein recognized that "it's the rationale behind § 362 and § 105 to favor the trustee . . . ," and held that a preliminary injunction was proper "to allow the trustee the ability to pursue his actions and obtain rulings and finality on those rulings because the trustee is acting for the benefit of all creditors and not just a few."  *Id.* at *13.

236.    The Stahl Plaintiffs filed joint appeals of Judge Hellerstein's ruling with the Second Circuit which were pending as *Picard v. Lautenberg*, Nos. 11-5421 and 11-5428 (2d Cir.).  On February 20, 2013, the Second Circuit issued a decision in favor of the Trustee affirming the issuance of the preliminary injunction.  *See Picard v. Lautenberg*, No. 11-5421, 2013 WL 616269 (2d Cir. Feb. 20, 2013).  The Second Circuit found that § 105(a) applied in a SIPA liquidation, and that the injunction issued by the bankruptcy court "serves the legitimate purpose of 'preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court . . . .'"  *Id.* at *1–2 (citation omitted).  The Second Circuit

further found that "[w]ere it not for the Preliminary Injunction, there would ensue a chaotic rush to the courthouse—or rather, multiple courthouses—of those seeking assets that the trustee claims are properly part of the BLMIS estate . . .", which would "run counter to SIPA's objective of furthering 'the prompt and orderly liquidation of SIPC members.'" *Id.* at *2 (citation omitted). The Second Circuit likewise found that the Stahl Plaintiffs' actions would have an "'immediate adverse economic consequence for the debtor's estate' if allowed to proceed . . . in as much as, if successful, they would draw down assets almost all of which could otherwise be expected to return to the BLMIS estate as a consequence of the Trustee's fraudulent transfer action." *Id.*

237. The Second Circuit also denied a subsequent motion to reinstate the appeal filed by certain of the Lautenberg Plaintiffs.

### (c)    *Picard v. Hall*, Adv. No. 12-01001 (BRL)

238. On January 4, 2012, the Trustee commenced an adversary proceeding in this Court captioned *Picard v. Hall*, Adv. No. 12-01001 (BRL) (Bankr. S.D.N.Y.), seeking to enjoin several third-party actions against the Chais Defendants commenced by Douglas Hall, Steven Heimoff, and certain other plaintiffs, including the Office of the California Attorney General (collectively, the "Hall Plaintiffs"). The Trustee has brought an avoidance action against the Chais Defendants in this Court. *Picard v. Chais*, Adv. No. 10-01172 (BRL) (Bankr. S.D.N.Y.).

239. The actions brought by the Hall Plaintiffs, among other things, threaten assets of the estate and the administration of the estate; therefore, the Trustee sought to enjoin the actions while his case against the Chais Defendants proceeds.

240. This Court ordered mediation of the *Hall* proceeding, together with the Trustee's underlying avoidance action against the Chais Defendants and the Hall Plaintiffs' actions. A

lengthy mediation took place over the course of three days; however, the matter has yet to reach a resolution.

(d)    *Picard v. Maxam Absolute Return Fund* , Adv. No. 10-05342 (BRL)

241.    In his avoidance action against the Maxam Defendants, *Picard v. Maxam Absolute Return Fund*, Adv. No. 10-05342 (BRL) (Bankr. S.D.N.Y.), the Trustee moved to enjoin an action commenced by the Maxam Defendants against the Trustee in the Cayman Islands (the "Cayman Action") in violation of the automatic stay and the *Barton* doctrine. Through that action, the Maxam Defendants sought relief in a foreign court, claiming that they were not liable on the claims brought by the Trustee in the United States.

242.    Following briefing and argument, on October 12, 2011, this Court issued a bench memorandum decision and order agreeing with the Trustee and granting his application on the grounds that the Cayman Action violated the automatic stay, the District Court Stay Orders, SIPA, and the *Barton* doctrine. *See Picard v. Maxam Absolute Return Fund L.P.*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011).   In the decision, this Court recognized that the bankruptcy automatic stay has worldwide reach. *See id.* at 115.

243.    On appeal, the District Court affirmed this Court in full.  *See In re Bernard L. Madoff Inv. Sec., LLC*, 474 B.R. 76 (S.D.N.Y. 2012).  The District Court held that the automatic stay had extraterritorial reach, that the Cayman Action violated the stay, that this Court properly exercised its injunctive authority, and that the interests of comity did not bar the injunction.  *Id.* at 82–85.

244.    The Maxam Defendants have appealed the District Court's decision to the Second Circuit, and briefing is complete.  A hearing date has not yet been scheduled.  *Maxam v. Picard*, No. 12-2194-bk (2d Cir. Dec. 11, 2012).

(e)    ***Picard v. Schneiderman*, Adv. No. 12-01778 (BRL)**

245.    On August 1, 2012, the Trustee commenced an adversary proceeding in this Court captioned *Picard v. Schneiderman*, Adv. No. 12-01778 (BRL) (Bankr. S.D.N.Y.), seeking to enjoin a settlement (the "Settlement") by the NYAG and others (the "Settling Plaintiffs") with the Merkin Defendants purporting to resolve third-party actions by the Settling Plaintiffs with the Merkin Defendants.  The Trustee sued the Merkin Defendants to recover fraudulent transfers in a separate proceeding.  *Picard v. Merkin*, Adv. No. 09-01182 (BRL) (Bankr. S.D.N.Y.).

246.    Upon requests by the Settling Plaintiffs and Merkin Defendants, and after oral argument, the District Court withdrew the reference of the Trustee's injunction action.

247.    Following the withdrawal, the Trustee continued with briefing in connection with his application for a preliminary injunction of the NYAG's and the state court receivers' settlement with the Merkin Defendants.  On January 25, 2013, the NYAG, Bart M. Schwartz, as liquidator of Ariel Fund Limited and Gabriel Capital, L.P., David Pitofsky, as receiver of Ascot Partners, L.P., J. Ezra Merkin and Gabriel Capital Corporation (the "Injunction Defendants") filed their opposition briefs, and in February, the team prepared for and drafted a comprehensive reply brief, which was filed on February 21, 2013.  The team also worked on sealing issues in light of the confidential nature of several documents critical to the reply, and addressed these issues with opposing counsel and the District Court.  The Injunction Defendants filed their sur-replies on March 5, 2013.  A hearing on the injunction action took place on March 25, 2013, and the parties are awaiting a decision.

(f)    ***Goldman Lift-Stay Motions,* Adv. No. 08-01789 (BRL)**

248.    In December 2011, A.G. Goldman and Pamela Goldman (the "Goldman Plaintiffs") moved before this Court to lift the automatic stay so that they could file putative securities class actions against the Picower estate and related entities.  *Sec. Investor Prot. Corp.*

*v. Bernard L. Madoff Inv. Sec*, Adv. No. 08-01789, ECF No. 4581.  Some of the counsel for the named plaintiffs are also representing the Fox Plaintiffs.  The Trustee opposed the lift-stay motions on the grounds articulated, among others, by Judge Koeltl in his decision and order affirming the Picower settlement and enforcing the automatic stay and injunction with respect to the Fox Plaintiffs.  (ECF No. 4797).

249.    On June 20, 2012, this Court issued an order denying the Goldman Plaintiffs' motion.  *See Sec. Investor Prot. Corp. v. In re Bernard L. Madoff Inv. Sec., LLC*, 477 B.R. 351, 352–53 (Bankr. S.D.N.Y. 2012).  The Court reasoned that the plaintiffs were using "inventive pleading" to circumvent the automatic stay because their pleadings were identical to the Fox Plaintiffs' enjoined actions.  *Id*. at 354–55.  The Court further held that the plaintiffs failed to assert any particularized injury suffered by them, and that the plaintiffs were seeking to re-litigate the net equity decision.  *Id*. At 357

250.    The Goldman Plaintiffs appealed to the District Court.  The appeal is pending. *See A & G Goldman P'ship v. Picard*, No. 12-cv-06109 (RJS) (S.D.N.Y. Aug. 10, 2012). Briefing has been completed, but a hearing has not yet been scheduled.

(g)    ***Picard v. Access Mgmt. Luxembourg S.A., Adv. No. 12-01563 (BRL)***

251.    On April 19, 2012, the Trustee commenced an adversary proceeding in this Court captioned *Picard v. Access Mgmt. Luxembourg S.A*., Adv. No. 12-01563 (BRL) (Bankr. S.D.N.Y.), seeking to enjoin the Luxembourg Defendants—third-party plaintiffs who are also defendants in an adversary proceeding commenced by the Trustee—from proceeding with a third-party writ in a civil action in Luxembourg impleading the Trustee as representative of the consolidated estates of BLMIS and Madoff, and seeking an indemnity from the BLMIS estate. The Trustee previously brought an avoidance action against the Luxembourg Defendants in this

Court, which remains pending.   *Picard v. UBS AG*, Adv. No. 10-04285 (BRL) (Bankr. S.D.N.Y.).

252.    The Luxembourg Defendants moved before the District Court to withdraw the reference, in part based on personal jurisdiction grounds.   *See Picard v. Access Mgmt. Luxembourg S.A.*, 12-CV-05597 (JSR) (S.D.N.Y.), ECF No. 1.   The District Court granted the motion in part and denied the motion in part.   *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff Inv. Sec., LLC)*, No. 12 MC 0115 (JSR) (S.D.N.Y.), ECF No. 373.   Briefing before the District Court is on hold pending resolution of the personal jurisdiction issues before this Court, concerning which the parties are currently undertaking meet and confer conferences.

      (h)    ***Picard v. Kingate Global Fund, Ltd.*, Adv. No. 12-01920 (Bankr. S.D.N.Y.)**

253.    On October 22, 2012, the Trustee moved to enjoin an action in Bermuda (the "Bermuda Action") filed by the Kingate Funds against certain management defendants (the "Management Defendants") that the Trustee also named as defendants in the Trustee's action against the Kingate Funds.  (ECF No. 1).

254.    Negotiations between the parties are ongoing.  This Court entered a so-ordered stipulation extending the response deadline to April 24, 2013, extending the Trustee's and SIPC's reply deadline to May 24, 2013, and adjourning the hearing to June 12, 2013 at 10:00 a.m.  (ECF No. 12).

      (i)    ***Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-2047 (Bankr. S.D.N.Y.), No. 12-9408 (S.D.N.Y.)**

255.    On November 29, 2012, the Trustee moved to enjoin a proposed class-action settlement in the District Court between the Fairfield Class Plaintiffs and managing entities and principals of feeder funds operated by the Fairfield Greenwich Group.  If effectuated, the

settlement would recover the same funds sought by the Trustee as subsequent transfers in his underlying avoidance action, and would greatly decrease the value of the claims against the managing entities and principals assigned to the Trustee by the feeder funds in connection with the Trustee's settlement with the funds.

256.    The Honorable Victor Marrero, who is overseeing the class action and settlement, granted defendants' motion to withdraw the reference, and the parties completed briefing of the injunction application.  *Picard v. Fairfield Greenwich Ltd.*, No. 12-9408, ECF Nos. 30, 37–39, 49.  Thereafter, on March 20, 2013, without oral argument, Judge Marrero issued a decision denying the Trustee's injunction application.  *Picard v. Fairfield Greenwich, Ltd.*, No. 12 CIV 9408, 2013 WL 1149933 (S.D.N.Y. Mar. 20, 2013).  The Trustee has advised the parties and the District Court of his intention to appeal the decision and is seeking to obtain a consensual stay while that appeal takes place.

257.    In addition, Judge Marrero denied a separate motion by the Trustee to intervene in the underlying class action suit that was proceeding before the District Court.  The Trustee is incorporating this denial into his pursuit of the appeal.

## X.    INTERNATIONAL INVESTIGATION AND LITIGATION

258.    The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary.  More than seventy of the actions filed in this Court involve international defendants, and the Trustee also has actions

pending in the United Kingdom, Bermuda, the British Virgin Islands (BVI), Gibraltar, and the Cayman Islands, among other countries.

259.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

### i.    Austria and Italy

260.    The Trustee has actively investigated certain banks, institutions, and individuals located in these jurisdictions.  The Kohn and HSBC Actions, both discussed *supra*, name several Austrian and Italian defendants, including Sonja Kohn, Bank Austria, and UniCredit S.p.A.

### ii.    Bermuda

261.    The Trustee is actively investigating various BLMIS-related entities, their officers and directors, and transfers of funds to and through Bermuda.  In addition, in December 2010, the Trustee filed protective actions in Bermuda against several HSBC-related entities in order to preserve the Trustee's ability to bring causes of action in that jurisdiction, as well as an action in the Bankruptcy Court against Bermuda-based Whitechapel Management Limited.  *Picard v. Whitechapel Mgmt. Ltd.*, Adv. No. 10-05402 (BRL) (Bankr. S.D.N.Y.).  The Trustee is also continuing to actively monitor legal proceedings taking place in Bermuda that involve several BLMIS-related entities, including, in particular, the winding-up of Kingate Management Limited, a defendant in *Picard v. Kingate*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.).

### iii.    BVI and the Cayman Islands

262.    The Trustee has discovered and is actively investigating the involvement of no fewer than twenty BVI-based feeder funds that funneled money into the Ponzi scheme.  In particular, the Trustee has investigated and filed complaints in the Bankruptcy Court against BVI-based Kingate Global Fund Ltd., Kingate Euro Fund Ltd., the Bank of Bermuda, Thybo Asset Management Ltd., Thybo Global Fund Ltd., Thybo Return Fund Ltd., Thybo Stable Fund

Ltd., Hermes International Fund Limited, Lagoon Investment Limited, Thema Fund Ltd, Thema Wise Investments Ltd., Lagoon Investment Trust, Defender Limited, Equity Trading Portfolio, and Granadilla Holdings Limited. *See, e.g.*, *Picard v. Kingate*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.); *Picard v. Thybo*, Adv. No. 09-01365 (BRL) (Bankr. S.D.N.Y.); *Picard v. Defender Ltd.*, Adv. No. 10-05229 (BRL) (Bankr. S.D.N.Y.). In addition, the Trustee has filed numerous claims against several feeder funds in BVI that preserve the Trustee's right to pursue claims in that jurisdiction.

263. The Trustee has investigated and filed complaints in the Bankruptcy Court against Cayman Islands-based Harley International (Cayman) Ltd. ("Harley"), *Picard v. Harley*, Adv. No. 09-01187 (BRL) (Bankr. S.D.N.Y.) (the "Harley Adversary Proceeding"), Herald Fund SPC, and the Primeo Fund, the latter two of which are defendants in the HSBC Action. The Trustee has also filed a complaint in the Cayman Islands against Harley and the Primeo Fund. The Trustee's substantive claims against Harley in the Cayman courts were dismissed by mutual consent last year. The Trustee nevertheless retains the right to enforce the default judgment entered against Harley in the Harley Adversary Proceeding in certain instances. A hearing was held in October 2012 for the determination of preliminary issues in the Cayman action against the Primeo Fund. The hearing sought to determine, *inter alia*, whether the Trustee could, as a matter of Cayman law, bring avoidance actions in the Cayman Islands under both Cayman and United States law. The court held that the Trustee could bring those actions under Cayman law, but not United States law. That ruling was subsequently appealed by both parties. No date has been set for the hearing of the appeal.

### iv.    England

264. The Trustee, who was granted recognition as a foreign representative for the purpose of gathering evidence, has continued to investigate Madoff Securities International

Limited ("MSIL") and work with MSIL's joint liquidators ("MSIL Liquidators"). In December 2010, the Trustee filed suit in England, together with MSIL (in liquidation) against MSIL's former directors and Sonja Kohn (the "MSIL Action"). In connection with that lawsuit, the Trustee and the MSIL Liquidators sought freezing orders and document disclosure from Sonja Kohn. In early 2012, the Court issued a freezing and disclosure order against Sonja Kohn and granted BLMIS access to the results of the disclosure order. In addition, the Trustee has filed protective claims in England against Kingate-related individuals and entities and against HSBC and related entities. A trial is scheduled in the MSIL Action for June 2013.

### v.    Gibraltar

265.    After extensive investigation, the Trustee brought both domestic and Gibraltar-based actions against Vizcaya Partners Ltd. ("Vizcaya"), Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra"), Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam"). *Picard v. Vizcaya*, Adv. No. 09-01154 (BRL) (Bankr. S.D.N.Y.). Vizcaya, Siam, Asphalia, and Zeus failed to appear or answer the Trustee's amended complaint in this Court. Accordingly, this Court granted the Trustee's motion for default judgment on August 3, 2010. (ECF No. 49). Thereafter, Zeus and the Trustee entered into a stipulation pursuant to which the Trustee agreed to vacate the default judgment against Zeus; Zeus agreed not to oppose the Trustee's application to the Supreme Court of Gibraltar for the transfer of over $60 million that had been held in Zeus's account at Bank Safra and was placed in the custody of the Gibraltar Supreme Court. This Court approved the stipulation on November 23, 2010. (ECF No. 56).

266.    The Trustee filed an application in the Gibraltar Supreme Court for the repatriation of those funds to the United States, which was granted. Those funds were deposited in the Court's registry on August 8, 2011.

267.    The Trustee has also served a protective action in Gibraltar to preserve his right to sue Vizcaya, Bank Safra, Asphalia, Zeus, Siam, Banque J. Safra (Suisse) SA, and Pictet et Cie for $180 million in transfers received from BLMIS.  A case management conference scheduled for May 2013 was recently canceled by the Court to be rescheduled for later this year.

268.    In addition, in September 2012, the Trustee filed an action in the Gibraltar courts opposing and seeking to join to the Trustee's existing proceedings in Gibraltar a petition filed by Mr. Robert Faissal against Vizcaya (the "Faissal Action").  The Faissal Action seeks to adjourn the enforcement of a default judgment entered in the BVI against Vizcaya.  A case management conference to schedule a trial on this issue will be scheduled for later this year.

269.    Following the UK Supreme Court's judgment in *Rubin v. Eurofinance,* defendants Vizcaya and Asphalia have moved to dismiss the Trustee's actions in Gibraltar that seek to enforce the default judgment entered against them in the United States, and to release assets that have been frozen by the Gibraltar action.  A hearing was held in March 2013 and will be continued on May 6, 2013.

### vi.    Ireland

270.    The Trustee investigated Ireland-based Thema International Fund plc and included the feeder fund as a defendant in the HSBC Action.  The Trustee has continued to investigate this fund and related entities.

### vii.    Switzerland and Luxembourg

271.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS-related entities and various feeder funds, management companies, and individuals, discussed above.  In addition, the Trustee has moved to enjoin a third-party proceeding in Luxembourg relating to a dispute involving Luxalpha, its investors, and its service providers, that names the Trustee as a third-party defendant.

87

## XI.    FEE APPLICATIONS AND RELATED APPEALS

### A.    Objections to Prior Fee Applications

272.    Objections were filed to six of the eleven fee applications submitted by the Trustee and B&H. Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186–90, ECF No. 2207, the Trustee's Fourth Interim Report ¶¶ 163–66, ECF No. 3038, the Trustee's Fifth Interim Report ¶¶ 134–43, ECF No. 4072, and the Trustee's Sixth Interim Report ¶¶ 131–42, ECF No. 4529. No decisions have been entered on motions for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.), or Sixth Interim Fee Order, No. 11 MC 00265 (S.D.N.Y.).

### B.    Tenth Fee Application

273.    On November 28, 2012, the Trustee and his counsel filed the Tenth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2012 through and including June 30, 2012 with the Bankruptcy Court. (ECF No. 5097). Counsel and international special counsel also filed applications for Interim Professional Compensation. (ECF Nos. 5098–5111, 5113). No objections were filed.

274.    At the hearing on December 19, 2012, the Trustee, his counsel, and SIPC were heard and provided a description of the services rendered and the reasons for which the compensation sought in the Tenth Interim Fee Application was reasonable. This Court subsequently entered the Tenth Interim Fee Order approving the Tenth Interim Fee Applications. (ECF No. 5161). No motion for leave to appeal the Tenth Interim Fee Order was filed.

C.      **Eleventh Fee Application**

275.    On April 29, 2013, the Trustee and his counsel filed the Eleventh Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from July 1, 2012 through and including November 30, 2012 with the Bankruptcy Court.   (ECF No. 5333).   Counsel and international special counsel also filed applications for Interim Professional Compensation.   (ECF Nos. 533–5348).   A hearing is scheduled for May 29, 2013.  (ECF No. 5349).

## XII.    CONCLUSION

276.    The foregoing report represents a summary of the status of this proceeding and the material events that have occurred through March 31, 2013, unless otherwise indicated.  This Report will be supplemented and updated with further interim reports.


Dated:  New York, New York                           Respectfully submitted,
        April 30, 2013

**Baker & Hostetler LLP**
45 Rockefeller Plaza                                 */s/ Irving H. Picard*
New York, New York 10111                             Irving H. Picard
Telephone: (212) 589-4200                            **Baker & Hostetler LLP**
Facsimile: (212) 589-4201                            45 Rockefeller Plaza
David J. Sheehan                                     New York, New York 10111
Email: dsheehan@bakerlaw.com                         Telephone: (212) 589-4200
Seanna R. Brown                                      Facsimile: (212) 589-4201
Email: sbrown@bakerlaw.com                           Email: ipicard@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com                          *Trustee for the Substantively Consolidated*
                                                     *SIPA Liquidation of Bernard L. Madoff*
*Attorneys for Irving H. Picard, Trustee for the*    *Investment Securities LLC and*
*Substantively Consolidated SIPA Liquidation*        *Bernard L. Madoff*
*of Bernard L. Madoff Investment Securities*
*LLC And Bernard L. Madoff*