Page 1

1    United States Bankruptcy Court

2    Southern District Of New York

3    Case No. 08-01789-brl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - X

5

6    In The Matter Of:

7

8    Securities Investor Protection Corporation,

9

10   V.

11

12   Bernard L. Madoff Investment Securities, LLC. et al

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - X

14

15                    U.S. Bankruptcy Court

16                    One Bowling Green

17                    New York, New York

18

19                    April 25, 2013

20                    10:04 A.M.

21

22   B E F O R E:

23   Hon Burton Lifland

24   U.S. Bankruptcy Judge

25

Page 2

1    Hearing Re: Trustees Motion For An Order Affirming Trustees

2    Calculations Of Net Equity And Denying Time Based Damages

3

4    Objection To Trustee's Third Omnibus Motion To Expunge

5    Claims And Objections Of Claimants That Did Not Invest With

6    BLMIS Or In Entities That Invested In BLMIS

7

8    Motion To Approve Motion To Subpoena The Books And Records

9    Of BLMIS And Bernard L. Madoff And Motion To Subpoena The

10   Records Of SIPC And The Trustee Concerning The Customers And

11   Payments To Customers And How They Were Determined To Be

12   Customers Of BLMIS

13

14   Motion To Vacate Order And Judgment Of Trustees Third

15   Omnibus Motion To Expunge Claims And Objections Of Claimants

16   That Did Not Invest With BLMIS Or Entities That Invested In

17   BLMIS Regarding The Surabians Claims Mentioned I Trustees

18   Exhibit A.

19

20   Motion To Approve Motion To File Late Opposition To Trustees

21   Third Omnibus Motion To Expunge Claims And Objections Of

22   Claimants That Did Not Invest With BLMIS Or In Entities That

23   Invested In BLMIS And Motion To File Late Notice Of Appeal

24   Of Order Granting Approval

25

1    Motion To File Late Appeal Of The Order Approving The

2    Trustees Motion For An Order Granting The Second Interim

3    Distribution To Customers Of BLMIS

4

5    Motion To Subpoena Bernard L. Madoff On January 2, 2013

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed By:  Lee M. Sapp

25

Page 4

1    A P P E A R A N C E S :

2    SIPC

3         Attorneys For Securities Investigator

4         805 15th Street Now Suite 800

5         Washington, D.C. 20005-2215

6

7    By:  Nathanael S. Kelley, Esq.

8

9    BAKER HOSTETLER

10        Attorneys For the Trustee

11        45 Rockefeller Plaza

12        New York, NY 10111

13

14   By:  Jorian L. Rose

15

16   STEVEN SURABIAN

17        (No Address Information Provided)

18

19   By:  Steven Surabian, Pro Se

20

21

22

23

24

25

1              P R O C E E D I N G S

2              The Court: Be seated please.  Madoff.

3              MR. ROSE: Good morning, Your Honor.  Jorian Rose

4      for the Trustee, Irving Picard and with me is Daniel Kelly

5      and Amy Vanderwal from Baker Hostetler. Nathanel Kelly is

6      for SiPC of course, Your Honor.

7              THE COURT: Mr. Surabian?

8              MR. SURABIAN: Yes, Steve Surabian.

9              THE COURT: Steven?

10             MR. SURABIAN: Yes, okay.

11             THE COURT: Good Morning.

12             MR. SURABIAN: Morning. Should I --

13             THE COURT: Please.

14             MR. SURABIAN: We're here today on four motions

15     that the Surabians have before this court.  One being the

16     either expungement -- I mean -- the expungement order which

17     we want to vacate or have reconsidered.  Another motion is a

18     motion to file a late opposition to the expungement motion.

19     Third one is a motion for subpoena Bernie Madoff.  I guess

20     it's a writ of testimony over something.  And the fourth one

21     is the subpoena to -- the records of BLMS --

22             THE COURT: Books and records yes.

23             MR. SURABIAN: Okay.  So we're here today cause

24     back in 1992 the Surabians opened up eight accounts directly

25     with Bernie Madoff.  And in 19 -- or 2008 or 09', the

1    Trustee denied the claims by the Surabians.  Surabians filed

2    the opposition which you said they would be given a hearing.

3    I don't know if the hearing was the expungement motion but

4    they say they mailed the expungement motion in March or

5    April of 2012.  The Surabians never received the expungement

6    motion.

7            So therefore when they were called and told that

8    the expungement motion would be postponed and if the

9    Surabians were going to be coming I told the person I spoke

10   to, no cause it didn't involve the Surabians as far as I was

11   concerned.  He never mentioned that it was for the Surabians

12   or anything like that.

13           Now in -- in the meantime we've had several other

14   motions before the court and objections I filed and the

15   Trustee has stated, Oh, the Surabians don't have status and

16   this and that.  We've always said we don't know what he's

17   talking about.  Not once has he ever attached the motion or

18   even the order.  But even if the order was attached now that

19   I see the order, the order never specifically says the

20   Surabians.  And unless you have the motion in front of you

21   with the exhibit saying the Surabians.

22           We did not get that until late December of 2012.

23   And I received that after I filed the -- an appeal on the

24   removal of the Trustee.  Then I received that and I -- the

25   Surabians timely filed an objection to that and we filed

Page 7

1    several other motions.

2            So now we're here today is are the Surabians

3    entitled of reconsideration cause we didn't show up or we

4    didn't file an objection to a motion we never heard about.

5    And the Trustee says oh they mailed it. I don't want to get

6    into whether they mailed it or not, they could have. Did the

7    Surabians receive it?   No.   They haven't shown any proof

8    that the Surabians received it.   And the Surabians testified

9    they did not receive it.   In fact, I mailed a document to

10   David J. Sheehan just a few weeks ago express mail to 45

11   Rockafella Place and that was returned to me. And I got

12   notified it.   So I'm just saying things do get returned,

13   things do get lost in the mail.

14           Now was the Surabians supposed to look at every

15   document that ever was filed concerning BLMS to see if it

16   involved them?   First of all I couldn't afford it cause

17   it's not like it can go online and get it for free. You've

18   got to access the documents.   So that's out -- in a way

19   that's -- that's the first issue here.

20           The second issues are of course would be the

21   opposition to the expungement motion to file a late

22   opposition for the same similar reasons.  We didn't receive

23   timely the motion to file a -- what would be considered a

24   timely opposition.

25           Now as for the records of BLMS in the subpoena in

Page 8

1    Bernie Madoff.  The trustee himself in SiPC specifically

2    always refer to the books and records.  They claim the

3    Surabians aren't in them.  Surabians aren't sure we're not

4    in them.  We've never seen the books and records.  As far as

5    we're concerned we probably could be in there.  We'd like

6    the opportunity to see if we are in there cause the

7    Surabians aren't brining up let's -- let's go on a fishing

8    expedition.  It's the Trustee's themselves who says Oh

9    they're not in it and we're not going to pay them.  And the

10   other thing that the Surabians want to see the records on is

11   to see just what records the custom is that the Trustee paid

12   actually presented to.  You know they want us to do --  show

13   documents -- and this is only now the Trustee has never

14   asked for anything.  And 20 years ago, I'm being honest we

15   don't have any records but the Trustee has never asked.  And

16   he's never --

17            THE COURT: What do you mean you have no records?

18            MR. SURABIAN: Act -- like no statements, Your

19   Honor, no.  I don't have that right now.

20            THE COURT: If you made investments what about

21   records of those investments?  What about tax returns?

22            MR. SURABIAN: There was no need to put it in tax

23   returns we never sold anything or did anything regarding

24   that.  So it just sat there, that's how -- I mean I'm being

25   honest, the -- the -- especially my mother she was not a --

1    she was a worry wart I guess so I'll leave it there and it

2    looked like it was doing good and she was happy.  So that's

3    what we did.

4            And -- I mean that -- I can keep going on but I

5    mean that -- that summed everything if you read the -- the

6    motions and the reply to the motions --

7            THE COURT: I -- I've read all the motions.

8            MR. SURABIAN: So that's really what it comes down

9    to. I would like the expungement order vacated so then I

10   could argue that again and I also need the records in Bernie

11   Madoff to make testimony as to his records.  He's the one

12   who compiled the records so that's my argument, okay.  Thank

13   you.

14           MR. ROSE: Your Honor, at the outset for the

15   Surabians to successfully seek reconsideration they must

16   show some form of excusable neglect for failing to respond

17   to the objection.  They have not.  It's unclear whether or

18   not the Surabians or acknowledge receipt of the claims

19   objections in order but didn't understand them.  And whether

20   or not they applied to them or whether or not they're

21   claiming they didn't receive them.  They make different

22   contentions in different places.

23           For example in the Surabians June 15th, 2012 reply

24   in support of their objection to the Tracnow(Phonetic)

25   settlement they respond to the Trustee's brief which raised

Page 10

1    the standing issue and described the expungment of their

2    claim.  The Surabians reply cites the third omnibus claims

3    expungement order, the ECF number and they argue that it

4    doesn't apply to them.  And that's an ECF 63 in -- in an

5    adversary -- adversary 105208.  The Trustee's pleading that

6    they were responding to was filed on April 30th,

7    approximately nine months before the Surbaian's instant

8    motions.

9          The Trustees representative actually called the

10   Surabians to inform them of the date of the hearing change.

11   But they argue they didn't understand that that motion

12   applied to them.

13         Even today they say they shouldn't be required to

14   read every pleading.  And they also say -- and they -- they

15   certainly do also argue that they haven't received the --

16   they never receive the -- the motion to their knowledge.

17   Notwithstanding which argument they're actually making the

18   Surabians contend that they didn't receive the motion also

19   until December 22nd, 2013.  Whichever argument is

20   attributable to them doesn't in the Trustee's view really

21   matter because the mere denial without some evidence in

22   support is insufficient to overcome the presumption they

23   receive the claims objections.  And they didn't file the

24   instant motions for at least nine months after learning the

25   existence of the order by their -- by their own pleadings.

Page 11

1   And after they were explicitly told and informed in that

2   pleading that their claims were expunged.

3            And I would just point out, Your Honor, that there

4   is prejudice to the Trustee here and to other net losers to

5   the extent that the Surabian's claims are ultimately allowed

6   this is money that will come from other net losers and they

7   failed to act for nine months filing multiple pleadings,

8   motions without standing to do so.

9            Putting aside whether or not the Surabian's could

10  actually demonstrate excusimal neglect there's no point that

11  would be served by reconsidering the third omnibus claims

12  order they failed to provide any evidence that they actually

13  invested in Madoff.

14           SIPA section 78 triple "F" 2b2 dictates that

15  customer status will be established through the books and

16  records of the debtor or otherwise to the satisfaction of

17  the Trustee.  The Trustee found no evidence that the

18  Surabian's entrusted any money to BLMIS or ever opened a

19  BLMIS account after his representatives did a thorough

20  inquiry of the debtors books and records.  This leaves only

21  the possibility that the Surabians could demonstrate through

22  other means that they were customers.  The Surabians have

23  provided no credible evidence of having entrusted money to

24  BLMIS.  They provide no correspondence, no tax returns, no

25  canceled checks, these records should exist and they've

1   existed for other customers.  Instead they provide only what

2   seem to be implausible stories that they're account

3   documents were stolen after they allegedly inquired about

4   the return of their money.  They have inferred it was Madoff

5   that stole their records and they're the only customer that

6   have -- has made this claim.

7          The Surabian's are also the only customers that

8   were allegedly buy and hold customers by BLMIS.  These

9   claims are inconsistent with every other customer in this

10  case.  As the court is aware prior to the -- the collapse of

11  BLMIS, BLMIS customers who asked for their money back, got

12  their money back.  And that's the subject of -- in most

13  cases and that's the subject of litigation in many courts.

14         Many of the stocks that were supposedly purchased

15  for them didn't exist as they claim in their -- in their

16  plan.  While we haven't done an extensive review of their --

17  their supposed stock portfolio they claimed they purchased

18  Bank of New York, Melon Stock in -- in the 90's when Bank of

19  New York and Mellon merged in 2007.  The same with Molson

20  Coors, Molson Coors merged in 2005 so they could not have

21  purchased that stock at the time they say they did.  Both KB

22  Holm and Oracle changed their names in 2000 and 95'

23  respectively and the Surabians used the name that existed at

24  the time they filed the claim not the original purchase

25  names.

Page 13

1          The Surabian's have apparently no records but they

2    remember the month, year and amount of stock for 276 stock

3    purchases over multiple years in some cases over 17 years

4    ago.

5          They had accounts with Madoff with potential

6    millions, tens of millions and they didn't follow up after

7    their sto -- after their -- their statements stopped coming.

8    The Surabians allegations of having invested in BLMIS are

9    simply not credible or plausible and do not provide any

10   evidence that they entrusted anything in any fashion to

11   BLMIS.  They have not met their burden and their burden is

12   their burden not the Trustee's burden to disprove.

13          The Trustee respectfully requests the motions to

14   reconsider the expungement be denied.

15          Your Honor, the Surabians also have moved to

16   subpoena the books and records of BLMIS as well as -- as to

17   compel Madoff's testimony.  The Trustee has directed a

18   thorough review of the books and records of BLMIS and there

19   is no record of an account, no correspondence, nothing that

20   mentions the Surabian's accounts or investment.

21          In short there's nothing relevant to their motion

22   to produce.  The request cannot be reasonably calculated to

23   find any discoverable evidence cause there's no reference

24   since Surabian's in the books and records.  The only

25   information in the Trustee's possession relates to other

Page 14

1   claimants and this is no relationship and cannot support the

2   Surabians goal to become -- to be treated as BLMIS

3   customers.  It would be incredibly time consuming,

4   burdensome expensive to -- and it would require the -- the

5   turnover of confidential customer information to be produced

6   to parties who are third parties to this proceeding in every

7   way.

8           The Surabian's argue it is unfair that they have

9   to prove customer status while the other BLMIS customers do

10  not.  And the court may recall the Trustees professionals

11  painstakingly reviewed all the transactions, all the

12  deposits, all the withdrawals, all the bank information to

13  formulate the net investment of each customer.  The

14  Surabians arguments are simply misinformed because the

15  Trustee has verified each and every customer transaction for

16  every customer whose claim he is allowed and he's not simply

17  relying on the word of Mr. Madoff.

18          The Surabians also attempt to support their motion

19  by asking the court to require Mr. Madoff to testify by writ

20  of Habeus Corpus.  The Surabians repeatedly called Mr.

21  Madoff a liar and worse, they accuse him of breaking and

22  entering and stealing their accounts by their own arguments

23  they undermine their own motion from the Trustee's

24  perspective Madoff credibility would be of little weight or

25  no weight to this claims proceeding.  The Surabians cannot

Page 15

1    meet the standard that's applicable here.  Meaning that they

2    would have to show Madoff's testimony is necessary and would

3    advance the matter.

4             In short, little would be gained from an

5    evidentiary perspective from requiring Madoff to testify.

6    And this assumes the court -- that the court has the ability

7    to compel his testimony which isn't clear by -- by this case

8    law in this circuit.

9             It would also be extremely costly, burdensome and

10   it would be an amazing amount of administration given this

11   particular -- this particular prisoner.  In short the cost

12   benefit analysis clearly weighs in favor of denying the

13   Surabian's motion to compel Madoff's testimony.  Thank you,

14   Your Honor.

15            THE COURT: You want to be heard Mr. Surabian?

16            MR. SURABIAN: Yeah, all right.  I just wrote down

17   two things here.

18            THE COURT: Sure.

19            MR. KELLEY: Your Honor, could I -- I'm Mr. Kelly I

20   came from SiPC.

21            THE COURT: Sorry, go ahead.

22            MR. ROSE: Sorry.

23            MR. KELLEY: Your Honor, I -- I actually --

24   Nathanel Kelly for Securities Investor Protection

25   Incorporation.  I fully agree with the -- the Trustees

Page 16

1    arguments and the Trustee's position in this case.  And I

2    would just -- so I won't repeat what the Trustee has said

3    and I also won't repeat what is in our papers too much at

4    least.  And I would just add that the discover request, both

5    the subpoena for the books and records and for the -- the --

6    the request to depose Mr. Madoff is not relevant to the

7    current legal position that the Surabians are taking whereby

8    their seeking reconsideration of the expungement motion.

9    Neither -- neither request would help them in their argument

10   that they did not receive the -- the papers.  And so the

11   discovery is unwarranted at this time.  And as -- the

12   Trustee has -- the Trustee's counsel has argued even if

13   their claims themselves were at issue there would be the --

14   the requested records would be extremely burdensome to

15   produce and in many cases such as in customer claims

16   determinations they are  -- contain confidential matters.

17   And it is not -- discovery is not warranted at this time.

18   Thank you, Your Honor.

19              THE COURT: Mr. Surabian?

20              MR. SURABIAN: In regards to like he said in the

21   June 14th of maybe one of our oppositions, the Surabians

22   oppositions they refer to the expungement motion and they --

23   you know we do claim that it doesn't involve us.  Because

24   like he said if you were to read the expungement motion

25   order it doesn't refer to the Surabians.  It would only note

1   or refer to the Surabians if we had the motion in front of

2   us which we never did.  Now he says we -- how can you prove

3   you didn't get -- and other than testifying that we didn't

4   get it.  He hasn't shown this court that we did get it.

5   There's no proof that the Surabians got it, he hasn't shown.

6   A lot of his other documents that's from the Trustee goes

7   out with by either express mail or priority mail which they

8   probably have a record.  I don't believe -- if they had a

9   record they'd -- they'd have a record, they didn't send it.

10  And the gentlemen from their office their called in his

11  affidavit he doesn't note that he told the Surabians it

12  involved the Surabians, he just called up and said you know

13  the expungment motion has been postponed -- well I'm not

14  coming down to New York for -- if you were to read the

15  expungement motion it says to expunge claims that -- from

16  people that were not customer of BLMS.  Well the Surabians

17  were customers of BLMS.

18          If it had said something like to expunge the

19  claims of customers, the Trustee determined were not

20  customers then we might have said okay, hey that involved

21  Surabians.  The other way, I'm not here to defend people who

22  are not customers of BLMS so it didn't involve the Surabians

23  and we have no objection get rid of them.

24          And the -- now the other books that the debtor --

25  they keep referring to the books.  This was compiled by the

1   man who committed the biggest fraud in U.S. history.  Now

2   they even said in their testimony that oh the Surabians want

3   to subpoena this man in their own testimony they say that

4   he's a thief, he's this and that, yes he is but he may be

5   able to shed light on the fact of what was compiled in his

6   books and records.  But to just take the books and records

7   this is -- this wasn't a fraud that was committed in July of

8   2008 where everything was accurate up until 2008 and then

9   Bernie Madoff stole some money and took off.  Then you can

10  say the books and records up until July of 2008 could have

11  been accurate.  This was a fraud that was conceived,

12  manipulated from day one and I don't know when day one was.

13  You would know better than I would but from day one it was

14  planned.  I guess I thought he was buying stock and from

15  what I read he never bought any stock but I don't know how

16  he got away with that but he got away with it.

17          THE COURT: And he was able to keep very specific

18  lists on the stock attributable to each one of the customers

19  have been identified.

20          MR. SURABIAN: Yeah -- they -- they -- he had a --

21          THE COURT: He was able to do that.

22          MR. SURABIAN: He had a big record.

23          THE COURT: Apparently anybody's able to do that if

24  they were so inclined.

25          MR. SURABIAN: So -- so that's -- that's the

Page 19

1    records and books and records that the Trustee is basing

2    their payment schedule on.  And that's what the Surabians

3    want to see, they refer to it.  We don't come up and say oh

4    we want to see the books and records, they're only argument

5    is the books and records.

6              THE COURT: What about the litany of stocks that

7    are attributable to your claim that the Trustee has

8    identified apparently were not in existence in the form that

9    you put down that contemporaneously on a temporal basis they

10   never existed back in the time you claim?

11             MR. SURABIAN: I'd have to look and see what the

12   notes were and why I put it down like -- like that in the --

13   in how I was compiling the records from what -- what I had

14   in my notes you know.  So I can't -- I can't argue that

15   here. Now it's the first time he's bringing that evidence

16   up.  I would actually say it should almost be stricken cause

17   that was not given -- he's never used that in an argument

18   before where I could have researched --

19             THE COURT: It isn't a question of using the

20   argument it's a document that you supplied.

21             MR. SURABIAN: Well I could have been here today

22   with the prepared information --

23             THE COURT: It's a document that you supplied.

24             MR. SURABIAN: Yeah I know I would have been here

25   with the answer.

1           THE COURT: All right.

2           MR. SURABIAN: I -- this is something that I can't

3    answer that just without seeing everything and -- and going

4    over the records myself.  You know he said something and --

5    and I -- we -- the court might want to just say yes we want

6    to believe that and it may be true.

7           THE COURT: Well then they do have -- then you do

8    claim to have records?

9           MR. SURABIAN: I have notes you know that were

10   compiled over the -- and it was only over the two year

11   period.  So that -- that's -- you know I'd have to be able

12   to go over --

13          THE COURT: You have anything else Mr. Surabian?

14          MR. SURABIAN: Yeah -- I had that on -- and when he

15   says how the -- you know we still had three years from the

16   time -- or at least that's how I thought we had three years

17   to sue -- if we identify all the bankruptcy we would have

18   three years to sue him anyways in Federal Court, I would

19   have tried to do that in probably Boston.  But and then they

20   -- they mentioned how the records are confidential -- I mean

21   may -- I don't -- I don't see where the Trustee is like a

22   attorney client relationship with -- he -- he's the Trustee,

23   he's the attorney for the customers of BMS or the alleged

24   customers of BLMS so I don't think that's confidentiality

25   when we're seeking to get the records.  And you've just --

Page 21

1    like we said he keeps referring to records but remember the

2    records were compiled by Bernie Madoff himself.

3              And now -- and one thing on SiPC, SiPC's -- I just

4    want to say on SiPC, SiPC is always listed in their let's

5    say service record.  It always said customers of BLMS and

6    then the Surabians were listed as customers of BLMS.  This

7    last time just for the -- you know they now changed it from

8    customer of BLMS then goes down -- and then they had an

9    attached exhibit "A" and they list the Surabian's name.

10             So up until this last time under SiPC the

11   Surabians always start well SiPC's got them down a customers

12   of BLMS so you know we were listed under -- even in the

13   booklets where it says customers of BLMS at least the

14   Surabians were always listed.  And we said well maybe things

15   are going to work out and then we -- we -- I did not know

16   the expungement order, I was even here in November -- I --

17   to be honest, I didn't know what he was talking about the

18   expungement order referring to the Surabians until then all

19   of a sudden in December once I received it, we did timely

20   file from the time we received it to vacate or to recon --

21   motion to reconsider that motion and under that rule 60 you

22   have a year. Now they want to say well we knew a head of

23   time but we didn't.

24             Nowhere has the Trustees stated that they've sent

25   us other than the beginning or that the Surabians have ever

Page 22

```
1    received the expungement motion, that's the key issue here.

2    Cause other than that he states there's 30 million records

3    or I don't know how many records, I can't get into the -- I

4    don't have access to -- to get into the records so I can

5    read that motion.

6            It's -- the main thing is that and I guess we need

7    the -- if that's -- if we're -- if the motion is vacated we

8    do need the records and we do need the testimony from Bernie

9    Madoff.  And I do need the approved -- the allowed motion to

10   file a late opposition cause we didn't receive the motion

11   timely.

12           THE COURT: You have anything else Mr. Surabian?

13           MR. SURABIAN: No that's going to be it, thank you.

14           THE COURT: Thank you.

15           MR. ROSE: Just quickly, Your Honor.  The Surabians

16   were clearly listed on the -- on the third omnibus claims

17   objection on the -- on exhibit "A" there too with -- with

18   ten other names, nine other names it wasn't a multiple page

19   list, it was a very short list.  And Madoff kept the -- his

20   fraud going for 30 some odd years because he did return

21   people's money when they asked.  So Your Honor I think that

22   the claim that -- that he broke into the Surabians house to

23   steal the records and hid their records just doesn't --

24   doesn't fly with anything else that we've seen in this case.

25   And, Your Honor, lastly I would just say the Trustee would
```

Page 23

1   notice -- he's reconciled with professionals all of the cash

2   transactions and he would notice a hole if there was such a

3   hole for deposits that weren't credited back to a customer.

4   Thank you, Your Honor.

5          MR. SURABIAN: Can I say one more thing, Your

6   Honor?

7          THE COURT: Sure.

8          MR. SURABIAN: On the matter of returning money, I

9   -- I mean he returned the money to his so called I would say

10   friends. So of course he returned that money.  I don't who

11   else he returned money to.  I couldn't sit here and say well

12   he returned it to this one and we're the only ones.  Maybe

13   no one else asked, maybe some people are -- were in the same

14   position but as from what I only can read that everyone says

15   these were mostly a -- a group of select people that he knew

16   himself so kind of -- he only paid his friends. Thank you.

17          THE COURT: Okay thank you all.  I have before me a

18   telephone book size of papers and pleadings in connection

19   with all of these motions and as I indicated to Mr. Surabian

20   I have read all of them.  And I have before me today the

21   motions which as you described as sort of self styled but

22   never the less they are sufficiently coherent for me to pars

23   through them and make appropriate determinations.

24          There's a bit of an overlap in connection with the

25   matters that are before me today.  And with respect to the

Page 24

1    bulk of the motions I am prepared and will be issuing an

2    order and an opinion shortly perhaps even within 24 hours

3    but as to two of the motions that are pending before me they

4    are determinable as or can be disposed of as a matter of

5    law.  And wanted to clear the dockets, I will determine

6    those and I will issue the following bench ruling which

7    deals with the motion for late appeal of distribution order

8    and refraining from ruling on the motion for late appeal of

9    an expungement order.  And the bench ruling which will be

10   made a part of a demitted order today is as follows.

11            "There are two motions that are scheduled to be

12   addressed today among others.  One the Surabians -- the

13   Surabians motion to file late appeal of the order approving

14   the Trustee's motion for an order granting the second

15   interim distribution to customers of BLMS known as motion

16   for late appeal of distribution order see docket number

17   5209.  And two, the Surabian's motion to file late notice of

18   appeal of order granting approval of the expungement motion

19   or known as quote, motion for late appeal of expungement

20   order, see docket number 5186.

21

22            "As the motion for late appeal of distribution

23   order must be denied as a matter of law the court will do so

24   now and foreclose further unnecessary briefing.  Bankruptcy

25   rule 8002 provides that a notice of appeal must be filed

Page 25

1    within 14 days of the entry of the order appealed from.  See

2    federal rules of bankruptcy procedure 8002.

3            Parties can request extensions of time in limited

4    circumstances but quote, an extension of time for filing a

5    notice of appeal may not exceed 21 days from the expiration

6    of the time for filing a notice of appeal unless --

7    otherwise prescribed by this rule or 14 days from the entry

8    of the order granting the motion whichever is later unquote,

9    see Federal rules of bankruptcy procedure 8002 c2.

10           Parties can request extensions of time in limited

11   circumstances but quote, an extension of time for filing a

12   notice of appeal may not exceed 21 days from the expiration

13   of the time for filing a notice of appeal unless --

14   otherwise prescribed by this rule or 14 days from the entry

15   of the order granting the motion whichever is later.

16   Unquote, see Federal rules of bankruptcy procedure 8002

17   (c)2.

18           The Surabians filed the motion for late appeal of

19   distribution order on January 7th, 2013 after having already

20   filed a notice of appeal with the District Court on December

21   19th, 2012.  Judge Forest denied the appeal as untimely

22   because the deadline to appeal was September 5, 2012.  In re

23   Bernard L. Madoff 12 civ. 7999 docket number 15, page 3,

24   Southern District of New York, January 25th, 2013.

25           As noted by Judge Forest, quote, the Surabians

Page 26

1    appeal is untimely they neither met the 14 day deadline to

2    file a timely notice of appeal nor did they move for an

3    extension within the 21 days following that deadline,

4    unquote. Id at 2 and 3, emphasis added in the original.

5            See also Ginsberg and Martin on the bankruptcy

6    section 1.06c fifth addition supplement 2012, quote, once

7    the 35 days have run no notice of appeal can be filed under

8    any circumstances, unquote.  For the same reason that the

9    untimely appeal for late appeal a distribution order is

10   denied.  Likewise the Surabians motion for late appeal of

11   expungement order lodged here would appear untimely as it

12   was filed nearly nine months after the court entered the

13   expungement order.  See Federal rules of bankruptcy

14   proceeding 8002 (c)2.  While the Surabians claim they had no

15   notice of the order according to bankruptcy rule 9022(a)

16   lack of notice does not prevent the running of this

17   deadline, see Federal rules of bankruptcy procedure 9022(a)

18   quote, lack of notice of the entry does not affect the time

19   to appeal or relieve or authorize the court to relieve a

20   party for failure to appeal within the time allowed,

21   unquote.

22           Moreover, as explained by Judge Forest the

23   Surabians even though proceeding pro se are charged with

24   reviewing the docket and understanding the Federal rules of

25   bankruptcy procedure, unquote. In re Bernard L. Madoff civ.

Page 27

1    7999 docket number 15 page 3. See also Seamen against

2    Immigrants Savings Bank, 421 fed. third 167, Second Circuit

3    2005 the Pecurium decision holding that a pro se litigant's

4    failure to comply with the filing deadlines for a notice of

5    appeal set out bank -- set out in bankruptcy rule 8002 meant

6    that the District Court lacked jurisdiction over the

7    litigants appeal.

8            Nevertheless as the appeal of the expungent or an

9    expungement order is now docketed in the District Court and

10   appears to be currently pending there I will refrain from

11   issuing a ruling as the newly docketed appeal is now subject

12   to disposition under the District Court's motion practice.

13   See in re Bernard L. Madoff 13 civ. 2649 docket number 1

14   Southern District New York April 23rd, 2013."

15           As I indicated earlier this bench ruling which

16   disposes of one and refrains for the reasons set forth from

17   exposing with the other motion will be made part of a

18   demitted order today and I will hand you a copy of it, Mr.

19   Surabian. You have some copies for the parties?

20           With respect to the balance of the motions before

21   me as I indicated earlier, decision reserved but I shall be

22   issuing an opinion decision very shortly.  Thank you all.

23

24           (Whereupon Proceedings Concluded At 10:38 A.M.)

25

1              C E R T I F I C A T I O N

2

3    I, Lee M. Sapp, Certify That The Foregoing Transcript Is A

4    True And Accurate Record Of The Proceedings.

5

6

7

8    Aaert Certified Electronic Transcriber Cet**D-596

9

10   Veritext

11   200 Old Country Road

12   Suite 580

13   Mineola, Ny  11501

14

15                     Date:  April 26, 2013

16

17

18

19

20

21

22

23

24

25