UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION
CORPORATION,

          Plaintiff,

    v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC.
          Defendant.       /

In re:

BERNARD L. MADOFF,
          Debtor.       /

Adv. Pro. No. 08-01789(REG)

SIPA Liquidation

(Substantively)

RECEIVED
MAY 22 2013
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

**STATEMENT OF ISSUES AND DESIGNATION OF THE CONTENTS OF THE RECORD ON APPEAL BY CUSTOMERS OF BERNARD L. MADOFF SECURITIES LLC, AND BERNARD L. MADOFF FROM ORDERS ENTERED BY THE BANKRUPTCY COURT ON APRIL 25, 2013 BY BURTON R. LIFLAND, UNITED STATES BANKRUPTCY JUDGE**

Steven Surabian, Richard Surabian and Martin M. Surabian (deceased) ("Surabians") as customers of Bernard l. Madoff Investment Securities LLC, hereby submit the following statement of issues to be presented and designation of record items to be included in the record on appeal to the United States District Court for the Southern District of New York in connection with the Notice of Appeal by the Surabians in the above-captioned case mailed on May 7, 2013 and filed on May 9, 2013.

**STATEMENT OF ISSUES ON APPEAL**

1. Did the Bankruptcy Court error in Denying Surabians Motion For Late Appeal Of Distribution Order and Refraining From Ruling On The Motion For Late Appeal Of

Expungement Order?

2. The Surabians were not served the Expungement Motion till nine months late, did the Bankruptcy Court error in claiming "Likewise, the Surabians' Motion For Late Appeal Of Expungement Order, lodged here, would appear untimely as it was filed nearly nine months after the Court entered the Expungement Order" even-thought the Surabians were not served till nearly nine months after the Motion and Order were filed?

3. Is Bankruptcy Rule 8002 intended for Non-Plaintiffs, Non-Defendants or Non-Debtors?

4. Is Bankruptcy Rule 8002 intended for Non-Plaintiffs, Non-Defendants or Non-Debtors that were not served the Motion or Order, Appealed TIMELY once they were served?

5. Did the Bankruptcy Cpurt error by failing to deny or grant the Surabians motion to File Late Opposition to Trustee's Third Omnibus Motion to Expunge Claims [sic]and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS (the "Late Opposition Motion") (Dkt. No. 5186)?

6. Did the Bankruptcy Court error in stating "Contrary to the Surabians' contentions, this Court has previously held their pleadings to be "frivolous,","? Surabians never received an Order were the Court stated the Surabians Motions were frivolous, prior to the August 8, 2012 outcome were the Bankruptcy Court "found the objection "frivolous" as "they were set forth by individuals who I've already found previously lack standing as their claims have been denied" this was due to the fact the Surabians never received the Motion or Order and the Court did not attach with the August 8, 2012 Order.

7. Did the Bankruptcy Court error regarding Motions or Oppositions by the Surabians, where the Bankruptcy Court stated, were without "grounds," "confusing," and "incomprehensible."?

8. Did the Bankruptcy Court error in stating "To date, there is absolutely no probative evidence emerging from BLMIS's books and records that the Surabians ever invested with Madoff" when these books and records have not been put into evidence?

9. Did the Bankruptcy Court error in stating "It is implausible that the Surabians are in possession of such information without any written records or documentation" when the Surabian have been denied access to the records and books and were the Court without the records and books determined the Surabians were not in those books or records and then states "Still, even without any documentation in hand, claiming here, one is reminded of the expression "the emperor has no cloths," the Surabians appear to know (i) that there were no sales or withdrawals related to their BLMIS accounts and (ii) exactly how many shares of what securities were supposedly in each account and have attached to their Claims list of securities held, the number of share and the date of each transaction"?

10. Did the Bankruptcy Court error in stating as if fact "At the hearing held on April 25, 2013, the Trustee pointed to the temporal nonexistence of many of the listed securities" when no evidence was supplied to the Court or the Surabians, and were mere unsupported allegations?

11. Did the Bankruptcy Court error by claiming "it is unwilling to waste further time and resources where, over a substantial period of time and numerous opportunities given, the Surabians have failed to support their bare allegations with even a shred of documentary evidence," when the Court admits the Surabians supplied that evidence by confirming each other's accounts referring to Surabians' Reply Brief in Support of Motion to Reconsider and Motion to Subpoena Bernard L. Madoff and then Denying the Surabians access to Bernard L. Madoff and the records and books of BLMIS?

12. Did the Bankruptcy Court error by stating "In December of 2009, the Trustee denied the Surabians' claims, as there was no evidence of their investments with BLMIS in its books and records", when the books and records were not produced as evidence, shouldn't this prove the Surabians were customers?

13. The Bankruptcy Court acknowledged the Surabians filed an objection with the Court regarding the Trustee's denying the Surabians claims which then entitled the Surabians to a Court Hearing, the Bankruptcy Court never notified the Surabians of a Court hearing, did the Bankruptcy Court error by expunging the Surabians Claims without notifying the Surabians of a hearing?

14. Was the Trustee being prejudicial in denying the Surabians claims by claiming what evidence the Surabians provided to the Trustee as proof that the Surabians opened accounts with Madoff himself was not sufficient when some if not most of the allowed customers provided no more evidence?

15. Did the Bankruptcy Court error in Expunging the Surabians claims, without the Court notifying the Surabians of a Court hearing to review the Trustee's denying of the Surabians Claims, which the Surabians were entitled to, simply because the Trustee claims the Surabians were mailed a Motion to Expunge their Claims without suppling proof of mailing by way of a post office receipt and an acknowledgment that the Surabians received the Motion?

16. Did the Bankruptcy Court Error in excepting as proof that the Surabians knew of the Motion to Expunge the Surabians Claims simply by the fact that one of the Trustee's legal assistants, Oleg Bitman, called and spoke with Steven Surabian at 6:10 p.m. on April 17, 2012 that a Expungement Hearing to be held the next morning, informed Steven Surabian of the

Expungement Hearing's adjournment to April 19, 2012 without ever informing Steven Surabian that the Expungement Hearing involved the Surabians wherefore the Surabians did not attend the hearing?

17. Did the Bankruptcy Court error in concluding, the Court finds that reconsideration of the Expungement Order is not warranted because the Surabians' failure to respond was willful, they do not possess a meritorious defense to the Expungement Motion and reconsideration would prejudice the Debtor's estate and its creditors?

18. Did the Bankruptcy Court error in concluding the Surabians failure to oppose Trustee's Expungement Motion was willful even after being informed that the Surabians never received the Motion till late in December, almost nine months after hearing and that the Court never informed the Surabians of the scheduled hearing or the fact the Trustee never showed that the Surabians ever received the Notice of Motion or the Motion?

19. Did the Bankruptcy Court error in "concluding, the evidence, however, points to the Surabians' willful decision to abstain from participating in the adjudication of the Expungement Motion", when the Surabians were only told of an Expungement Hearing only less than forty (40) hours prior to the hearing and not being informed that the Expungement involved the Surabians?

20. Where the Surabians at fault for not following up on a Motion that they were lead to believe did not involve then and would the Surabians' then need to follow up on all hearings that did not involve them on the threat that they may involve the Surabian, thus forcing the Surabians to obtain those documents, in excess of tens of thousands of documents?

21. Does the docket reveal that the Surabians are the target of the Expungement Motion?

22. Does the Order which the Surabians seek to Vacate or have the Bankruptcy Court Reconsider on face value indicate the Surabians Claims were Expunged?

23. Are the Surabians at fault for not getting ahold of the Ten's of thousands of documents filed in the BLMIS case to check if buried within is a reference to the Surabians?

24. Is the fact that the Surabians are told the Expungement Order involved the Surabians by the Trustee in September of 2012, when the Surabians still thought it was for people that did not have accounts with BLMIS which did not involve the Surabians because they had accounts directly with Bernard L. Madoff himself and were the Trustee did not supply the Motion and on review of the Order, no one could determine the Surabians claims were Expunged, proof enough that the Surabians should have then Motioned for Reconsideration or is the time tolled from when the Surabians actually receive the Motion which includes the Expungement of the Surabians?

25. In finding discrepancies were Rule 60 would become involved, how long does someone have to file a Motion under Rule 60 before it becomes willful neglect prior to the one year limit?

26. Did the Surabians act timely in seeking a Motion to Vacate Order by filing their Motion within a few weeks if not days after discovering that grounds exist to warrant reconsideration?

27. Did the Bankruptcy Court error in determining that the Surabians' Motion to Vacate Order was same as Motion for Reconsideration because a Motion to reconsider is not the same as Motion to Vacate? Motion to Vacate is just that, to start over, Motion to Reconsider is to reconsider the facts which the Surabians were not allowed to present.

28. Did the Surabians present a Meritorious Defense in presenting their Rule 60 Motion to Vacate the Order.

29. How could the Surabians present a Meritorious Defense to the Motion to Expunge the Surabians claims when the Surabians were not informed timely of the Expungement Motion prior to hearing date of April 19, 2012.

30. Since the Trustee states that the claims that were paid were based on the books and records of BLMIS and that the Surabians were not in those books or records, are not the Surabians entitled to those same books and records to present a Meritorious Defense?

31. Did the Bankruptcy Court error in causing the Surabians undue Prejudice by claiming the Surabians have been unable to produce account numbers, account statements, canceled checks, tax returns showing dividends, when the paid claims did not produce same other than maybe fraudulent account statements prepared by the United States biggest conspirator to Fraud?

32. Did the Bankruptcy Court error in claiming the Surabians Affidavits worthless in the United States, as the Surabians parents and grand-parents testimony was worthless at the turn of the last century in the occupied territory in the Ottoman Empire, as a non-Turk, non-Muslin's word meant nothing compared to a Muslin's which the Surabians are not, but are anti-Zionist which the Bankruptcy Court made a point to specify.

33. Did the Bankruptcy Court error in claiming Undue Prejudice to the Trustee?

34. Did the Bankruptcy Court error by claiming the Surabians argument that their Motion is not asking for another bite [of the apple], [as] they were never even shown the apple prior to late December 2012 is disingenuous because the Court has found that they had notice of the Expungement Hearing which the Surabians were lead to believe did not involve the Surabians just forty hours prior to the hearing?

35. Did the Bankruptcy Court error with prejudice in the Courts claim that the Trustee not be

required to re-litigate motions that lack the practical possibility of a different outcome when the Court does not know what evidence the Surabians would submit if the Order was Vacated and the Trustee continues to Motion to Expunge the Surabians claims, which would include Bernard L. Madoff's testimony as well as the Books and records of BLMIS as these Motions are on Appeal and would prejudice the BLMIS estate?

36. Did the Bankruptcy Court error again by claiming the Surabians not only failed to respond to documents served upon them, but also chose not to investigate applicability of a hearing with respect to their own claims, despite being called directly by the Trustee's office and being appraised of the Expungement Order in September of 2012 even though the Trustee never showed proof that the Surabians ever received the Motion timely, or the fact the Trustee's office never informed the Surabians the Motion involved them and the fact that was only forty hours prior to hearing, not enough time to prepare even if the Surabians were informed the Hearing was involving them and with respect to the September 2012 notice, the Surabians were not presented with the motion so they as anyone else would assume the Trustee was trying affix the Order to the Surabians unjustly as no Motion was attached to any reference to the Motion?

37. Did the Bankruptcy Court error in its sound discretion in sound discretion by Denying the Surabians Motion for the federal court to issue a writ of *habeas corpus ad testificandum* based on whether Madoff's testimoney will substantially further the case and the security risks involved if said testimony were permitted?

38. Did the Bankruptcy Court error in finding that Madoff's testimony will not substantially further the Surabians' case?

39. Did the Bankruptcy Court error in finding that even if Madoff testifies in accordance with

the Surabians' allegations, his testimony by itself is unlikely to establish that the Surabians are customers of BLMIS?

40. Did the Bankruptcy Court error in finding that given that Madoff is a convicted fraudster, Madoff's testimony likely lakes credibility, given the fact that the Trustee has paid out and determined customers based on Madoff's Books and Records.

40. Did the Bankruptcy Court error in finding the costs associated with transporting and housing Madoff out weight the stealing of the Surabians assets and justifies the continued fraud committed against the Surabians?

42. Did the Bankruptcy Court error in finding that *Neither the books and records of BLMIS nor those of the Trustee and SIPC are relevant to the Surabians' claims*?

43. Did the Bankruptcy Court error in finding that Not only has the Trustee performed a thorough search of BLMIS's books and records and found no connection to the Surabians' claimed investments when the books and records were never produced as evidence and the Trustee admitted that there is over thirty million documents in BLMIS's records?

44. Did the Bankruptcy Court error in finding the Surabians themselves have never offered any documentation or corroborative evidence that they invested in BLMIS and as such the discovery the Surabians seek will not assist the Surabians to prove their claims?

45. Did the Bankruptcy Court error in finding that the Surabians' motion to subpoena the records of the Trustee and SIPC to ascertain the allowed claims and their determination process also seek discovery that is neither relevant to the Surabians' claims or defenses nor the subject matter of this proceeding and claiming any information regarding BLMIS customers and their claim determination has no impact on the Surabians' claims, even if this would prove prejudice

on the part of the Trustee against the Surabians?

46. Did the Bankruptcy Court error in finding SIPC section 78fff-2(b) (requiring the obligations of the debtor to be demonstrated by an examination of its books and records, when the books and records were prepared by even in the Courts own words to be a Frauder and Felon or be "otherwise established to the satisfaction of the trustee") when the Trustee will not except from the Surabians what was excepted from others including but not limited to books and records and testimony of Madoff?

47. Did the Bankruptcy Court error in showing prejudice toward the Surabians by concluding Information regarding the customers that have claims against the BLMIS estate and how their claims were determined in no way evidences the Surabians' investment.

48. Did the Bankruptcy Court error by finding that *Even if the requested discovery were relevant, the subpoenas are unduly burdensome*?

49. Is it a excusable neglect when a customer in a Bankruptcy as large as the BLMIS case, were the customer is one of ten thousand claimants, does not receive a timely motion to Expunge their claims and were the Bankruptcy Court never notified that customer of a hearing and after the hearing, the Order Expunging the Claims does not reference the Customer by name and that customer does not receive the Motion naming him as being involved in the Expungement by an attached document till nine months later and after receiving the documents files timely Appeal?

50. Did the Bankruptcy Cour error by finding the Surabians have failed to establish that (i) the records they seek are relevant, when the Trustee keeps referring to those very same documents as his proof that the Surabians were not customers of BLMIS and (ii) the subpoenas are not overly burdensome when the Trustee has himself charged the estate over a quarter Billion

($250,000,000.00) dollars.

## DESIGNATION OF THE CONTENTS OF THE RECORD ON APPEAL

1. Trustee's Motion for an Order to Schedule Hearing on "Customer" Issues".

2. Surabian's Objection to Trustee's Motion.

3. The Court Order regarding Motion.

3. The Trustee Settlement Motion between the Trustee and the Estate of Jeffry M. Picower.

4. Surabians' Objection to the Settlement Motion.

5. The Court Order regarding Picower Settlement Motion.

6. Trustee's Settlement Motion between the Trustee and Trotanoy Investment Company, Ltd.

7. Surabians' Objection to Settlement Motion.

8. Court Order regarding Trotanoy Settlement Motion.

9. Trustee's Motion Seeking a Scheduling Order with respect to the Time-Based Damage Issues.

10. Surabians' Objection to Trustee's Motion for a Second Interim Distribution.

11. Court Order regarding Trustee's Motion for a Second Interim Distribution.

12. Surabians' Motion to Remove Irving H. Picard as Trustee.

13. Surabians' Reply to Objections.

14. Court Order regarding Surabians Motion to Remove Trustee.

15. Surabians' Notice of Appeal of Order Approving Second Interm Distribution to Customers.

16. Surabian's Notice of Appeal JURY DEMAND of the Court's denial of Motion to Remove Irving H. Picard as Trustee.

17. Surabians' Motion to File Late Appeal of the Order Approving Second Distribution to

Customers.

18. Court Order Granting Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS.

19. Notice of Appeal of Order Granting Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS.

20. Designation of the Contents of the Record on Appeal and Statement of Issues Expungement Order.

21. Surabians Motion to file Late Appeal of Expungement Order.

22. Surabians Objection to Expungement Motion.

23. Surabians March 8, 2013 letter to Judge Lifland,J Request to Strike.

24. Trustee's March 14, 2013 letter in response to Request to Strike.

25. Order Denying Surabian's Request to Strike.

26. Surabians Response to Trustee's Request for Documents.

27. Surabians Motion to Subpoena the Books and Records of BLMIS and Berndar L. Madoff and Motion to Subpoena the Records of SIPC and the Trustee Concerning the Customers and Payments to Customers and how they were Determined to be Customers of BLMIS.

28. Surabians Reply to Trustee's Objection to Steven, Richard and Martin Surabian's Motion to Subpoena the Books and Records of BLMIS and Bernard L. Madoff and Motion to Subpoena the Records of SIPC and the Trustee Concerning the Customers and Payments to Customers and How they were Determined to be Customers of BLMIS.

29. Surabians Notice of Motion and Motions to File Late Opposition and Motion to File Late

Appeal and Motion to Subpoena Bernard L. Madoff and Motion to File Late Appeal From August 22, 2012 Order Authorizing Second Interim Distribution to Customers.

30. Notice of Motion to Vacate Order and Judgment of Trustee's Allowed Motion to Expunge Surabians Claims and Objections.

31. Claimants Martin M. Surabian, Richard Surabian and Steven Surabian's Motion to Vacate Order and Judgement of Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS Regarding the Surabians Claims Mentioned in Trustee's Exhibit A.

32. Statement of Issues and Designation of the Contents of the Record on Appeal by Customers of Bernard L. Madoff Securities LLC, and Bernard L. Madoff from Orders Entered by the Bankruptcy Court.

33. Customers Martin M. Surabian's Motion to File Late Opposition to Trustee's Third Omnibus Motion to Expunge Claime and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS and Motion to File Late Notice of Appeal of Order Granting Approval.

34. April 23, 2013 Notice of Agenda for Matters Scheduled for Hearing on April 25, 2013 at 10:00 A.M. Contested Matter with all accompanying Documents.

35. The Bench Ruling Denying Motion For Late Appeal of Distribution Order and Refraining from Ruling on the Motion for Late Appeal of Expungement Order.

36. Memorandum Decision and Order Denying Surabians' (I) Vacate Motion, (II) Late Opposition Motion, (III) Madoff Subpoena Motion, and (IV) Records Subpoena Motion.

37. Any other Documents that relate or refer to the Surabians that the Surabians are unaware of

or omitted by mistake.

_____  _____  _____
Steven Surabian Pro se    Richard Surabian Pro se    Martin M. Surabian Pro se
1230 Rt. 28               P.O. Box 397               P.O. Box 397
S. Yarmouth, MA 02664     W. Hyannisport, MA 02672   W. Hyannisport, MA 02672
(508) 688-4613            (508) 579-9834             (Deceased)

I certify that this 20th day of May 2013, a true copy of the Designation of the Contents of the Record on Appeal and Statement of Issues were served by 1st class US Mail postage prepaid on David J. Sheehan, Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111.

_____
Steven Surabian