**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,
Trustee for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L.
Madoff*

Presentment Date: June 28, 2013
Time: 12:00 p.m.

Objections Due: June 28, 2013
Time: 11:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

### TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO SECTION 78fff(a) OF THE SECURITIES INVESTOR PROTECTION ACT AND SECTIONS 363 AND 105(a) OF THE BANKRUPTCY CODE AUTHORIZING THE SALE OF ESTATE PROPERTY

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and Bernard L. Madoff ("Madoff" and together with BLMIS, the "Debtors"), by and through his undersigned counsel, for his motion (the "Motion") for entry of an order, pursuant to section 78fff(a) of SIPA and sections 363 and 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), authorizing the Trustee to retain auctioneers to sell certain artwork owned by BLMIS or Madoff and previously displayed in the BLMIS offices, as further described below, respectfully represents as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to section 78eee(b)(4) of SIPA and the order (the "Protective Decree") entered on December 15, 2008 by the Honorable Louis L. Stanton, United States District Judge, United States District Court for the Southern District of New York in Case No. 08 CV 10791, and 28 U.S.C. §§ 157 and 1334. [ECF No. 4] Venue is proper in this district pursuant to section 78eee(b)(4) of SIPA and 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 78fff(a) of SIPA, sections 363 and 105(a) of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

### BACKGROUND

2. As is well known, on December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-billion dollar securities fraud scheme

in violation of section 10(b)(5) of the Securities Exchange Act and § 78j(b) of SIPA in the United States District Court for the Southern District of New York ("District Court"), captioned *United States v. Madoff*, No. 08-MAG-2735 (S.D.N.Y. filed Dec. 11, 2008). Also on December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS. *Sec. Exch. Comm'n v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 11, 2008) (the "SEC Action").

3.  On December 15, 2008, pursuant to § 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the SEC Action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to § 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

4.  On that date, the District Court entered a protective decree, to which BLMIS consented, which, in pertinent part: (i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to § 78eee(b)(3) of SIPA; (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to § 78eee(b)(3) of SIPA; and (iii) removed the case to the Bankruptcy Court pursuant to § 78eee(b)(4) of SIPA.

5.  On March 12, 2009, Madoff pleaded guilty to an eleven-count criminal information. At the March 12, 2009 plea hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *See* Plea Hearing Transcript at 23:14–17, *United States v. Madoff*, No. 09-CR-213(DC) (S.D.N.Y. Mar. 12, 2009). On June 29, 2009, Madoff was sentenced to 150 years in prison for his crimes.

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

6.      In accordance with his statutory responsibilities, the Trustee has marshaled the assets of BLMIS and has been liquidating BLMIS's assets for the benefit of the estate's customers and creditors.

7.      As part of this process, the Trustee has determined that it is now appropriate to sell certain art work, prints, posters and carpets (collectively, the "Artwork") owned by BLMIS or Madoff which were previously either displayed in the BLMIS offices in the Lipstick Building at 885 Third Avenue or at BLMIS's back-up office at the Bulova Centre in Queens or were in storage at the BLMIS warehouse in Long Island City. The Artwork includes pieces by Jasper Johns, Roy Lichtenstein, Andy Warhol and Henri Matisse and is insured at a value in excess of $575,000. A description of the Artwork is found on Exhibit A attached hereto.[2]

8.      Shortly after the commencement of the BLMIS liquidation, and in accordance with section 78fff-1(a)(1) of SIPA, the Trustee retained Helen D. Lally as an art consultant (the "Consultant") with SIPC's approval.

9.      The Consultant catalogued the Artwork and coordinated the appropriate storage thereof. The Artwork has been in climate-controlled storage since June of 2009 with Cirkers Fine Art Storage and Logistics, a fine art storage facility located in Manhattan. The Trustee obtained and has maintained insurance on the Artwork since the commencement of the case. The Artwork is currently generating no revenue and is burdening the estate with expenses associated with storage fees and insurance fees which total approximately $16,000 per year.

10.     Since her retention, the Consultant has monitored the market for sales of pieces similar to those comprising the Artwork to determine the best time and method for the liquidation of the Artwork. With respect to timing, the Consultant has advised the Trustee that

---

[2] There is a small group of additional items not listed on Exhibit A currently stored at the warehouse in Long Island City. These pieces, primarily prints and posters, are of relatively little value but will also be included in the proposed sales.

4

300288616.2

the art market, like the economy generally, has recently improved. Specifically, spring sales for comparable artwork were quite strong. The Consultant has therefore recommended that the Artwork be offered for sale at auction this year at the fall sales, which occur in October and November.

11. The Trustee, with the assistance of the Consultant, has investigated various methods for the disposition of the Artwork and initiated discussions with several auction houses to gauge interest in selling the Artwork. Given the varied nature of the pieces involved, the Consultant has advised that utilizing more than one auction house will maximize the potential return on the Artwork. After soliciting and evaluating proposals from several auction houses, the Consultant has recommended that the Artwork be auctioned by Sotheby's and by Stair Galleries, located in Hudson, New York ("Stair"). Stair is a full-service auction house, selling a wide range of paintings and decorative arts. They have been in business since 2001 and have sold over $50 million in art since their inception. Their sales are promoted through printed catalogues, advertisements in general and trade publications and through e-mail and their client base includes collectors, decorators and dealers. Sotheby's has agreed to sell the majority of the pieces with the remainder, including the posters, carpets and certain decorative items, to be auctioned by Stair. Stair auctions of certain items may occur prior to the fall sales.

12. In order to meet the deadline for the fall art sales, the Artwork will need to be delivered to the auction houses no later than July 31, 2013 to allow them to catalogue the pieces and prepare them for auction.

13. It is possible that certain pieces will not sell at the auctions or will be pulled prior to the auction if it is determined that it would be appropriate to sell such items at a later time. If necessary, any such items would be auctioned at subsequent sales, including at the spring 2014 art sales which will occur in May.

300288616.2

5

14. The Trustee will negotiate the fees that will be incurred in connection with the sale in an effort to minimize costs. However, in accordance with SIPA, BLMIS will be credited with the gross proceeds of the sales, notwithstanding any costs incurred for the payment of commission, transportation fees, storage fees, insurance, and fees associated with inclusion in the auction catalogues. While there will be storage and insurance costs for the short period of time between delivery of the Artwork to the auction houses and the auctions, the rates charged by the auction houses are lower than those currently being incurred.

## RELIEF REQUESTED

15. The Trustee requests entry of an Order, substantially in the form of Exhibit B attached hereto, authorizing the Trustee to (i) retain Sotheby's and Stair to store the Artwork and sell it at auction (ii) coordinate the later sale of pieces not sold at the Fall sales without seeking further leave of the Court, and (iii) to execute any necessary documents to implement the foregoing.

## BASIS FOR RELIEF REQUESTED

A. <u>SIPA requires the liquidation of the Debtors' business.</u>

16. Section 78fff(a) of SIPA outlines the purposes of a SIPA liquidation and provides in relevant part that: "[t]he purposes of a liquidation proceeding under this chapter shall be . . . (4) to liquidate the business of the debtor." Thus, the Trustee has an affirmative duty to liquidate the property and wind-down the business operations of the Debtors, including the sale of the Artwork.

17. Pursuant to section 78fff-1(a)(1), SIPC has approved the Trustee's retention of the auction houses and is in favor of the sale of the Artwork. The U.S. Attorney's Office for the Southern District of New York has not objected to the proposed sales.

B.  The sale of the Artwork is in accordance with sections 363 and 105 of the Bankruptcy Code and should be authorized.

18. Sections 363 and 105 of the Bankruptcy Code apply to liquidations under SIPA. *See* § 78fff(b) ("a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11."). Section 363 permits a trustee to "use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b). Section 105(a) of the Bankruptcy Code authorizes the court to enter any order necessary or appropriate to carry out the provisions of the Code. 11 U.S.C. § 105(a).

19. The Trustee submits that ample authority exists for the Court's approval of the retention of Sotheby's and Stair, and the sale of the Artwork pursuant to sections 363 and 105 of the Bankruptcy Code, and such sale should be authorized by this Court. While Section 363(b) is devoid of any standards to be applied to a trustee's request to sell assets, a wide body of case law has evolved containing the judicial standards governing sales of assets.

20. In *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), the Second Circuit determined that a sale of assets could be approved if the debtor could demonstrate an "articulated business justification" for the sale. *Id.* at 1070; *see also, In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir.2007); *In re General Motors Corp.*, 407 B.R. 463, 490 (Bankr. S.D.N.Y. 2009); *In re Thomson McKinnon Sec., Inc.*, 120 B.R. 301 (Bankr. S.D.N.Y. 1990); *In re Channel One Commc'ns*, 117 B.R. 493 (Bankr. E.D. Mo. 1990).

21. Under the business judgment rule, courts give deference to a debtor's reasonable business decision and should not interfere absent a showing of bad faith, self-interest, or negligence. *In re Grubb & Ellis Co. et al.*, No. 12 Civ. 10685, 2012 WL 1036071, at *4 (Bankr. S.D.N.Y. Mar. 27, 2012); *In re Global Crossing Ltd.*, 295 B.R. 726, 743–44 (Bankr. S.D.N.Y.

2003). A debtor satisfies this standard if it acts on an informed basis, in good faith, and in the honest belief that the proposed action is in the best interest of the company. *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Global Crossing Ltd.*, 295 B.R. at 743–44.

22. In addition to requiring sound business reasons to approve a sale pursuant to section 363(b) of the Bankruptcy Code, many courts have required a showing that the price to be obtained for the assets be fair and reasonable and the sale to the proposed purchaser was negotiated in good faith. *In re MF Global Inc.*, 467 B.R. at 730. If a valid business justification exists there is a strong presumption these conditions are satisfied. *Id.*

23. The Trustee has determined, in accordance with his sound business judgment, that the retention of Sotheby's and Stair to facilitate the sale of the Artwork will allow the Trustee to maximize the value obtained therefor and will increase the assets of the estate available for distribution to customers. The Consultant, after an evaluation of the available options, has determined that each auction house selected has the ability to expose the Artwork to an appropriately broad market.

24. The auction process will allow the Trustee to obtain the best possible value for the Artwork as the competitive bidding process provides assurance that the highest and best offer for the Artwork is received from a good faith purchaser. The Trustee believes that the auctions will encourage participation by a wide range of bidders and expose the Artwork to a broad and competitive market.

25. Finally, courts often require that "fair and accurate notice" be given of the proposed sale under section 363(b) of the Bankruptcy Code. *See, e.g., In re MF Global Inc.*, 467 B.R. at 730; *In re Delaware & Hudson Ry.*, 124 B.R. at 176; *Channel One*, 117 B.R. at 496. Fair and accurate notice should inform all interested parties of the liquidation of the debtor's business, disclose accurately the terms of the sale, explain the effect of the sale upon the debtor's

business, and explain why the sale is in the best interests of the debtor's estate. *Delaware & Hudson*, 124 B.R. at 180.

26.     The Trustee submits that the notice given herein has sufficiently alerted parties in interest to the contemplated sale.

## NOTICE

27.     Notice of this Motion will be provided by U.S. mail, postage prepaid, or email to: (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service and; (iv) the United States Attorney's Office for the Southern District of New York. The Trustee shall also serve, via the ECF filing that will be made, each person or entity that has filed a notice of appearance in this case. The Trustee submits that no other or further notice need be given.

**WHEREFORE**, the Trustee respectfully requests that the Court (a) enter an order substantially in the form attached hereto as Exhibit B, granting the relief requested herein; and (b) grant such other and further relief to the Trustee as the Court deems proper.

Dated: New York, New York
       June 21, 2013

*/s/ Amy Vanderwal*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,
Trustee for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L.
Madoff*

300288616.2