Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
dsheehan@bakerlaw.com
Jorian Rose
jrose@bakerlaw.com
Amy E. Vanderwal
avanderwal@bakerlaw.com
Seanna R. Brown
sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC And
Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
TRUSTEE'S MOTION FOR AN ORDER AFFIRMING
TRUSTEE'S CALCULATIONS OF NET EQUITY
AND DENYING TIME-BASED DAMAGES**

300287882

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ..................................................................................................... 2

    A.    No Statutory or Other Basis for Time-Based Damages Exists ............................ 2

        1.    SIPA Does Not Permit Time-Based Damages............................................ 2

        2.    Claimants Have Failed to Identify Any Other Persuasive Authority
            to Support Their Request for Time-Based Damages ................................. 5

            (a)    There is No Legal Precedent for Claimants' Position ................... 5

            (b)    Time-Based Damages Are Subordinated Damages Claims........... 7

    B.    Claimants Are Attempting to Re-Litigate Net Equity ........................................... 9

    C.    New York Statutory Interest is Inapplicable as a Matter of Law ........................ 11

    D.    This Court Should Give No Weight to The Hart Report ..................................... 12

        1.    The Hart Report Lacks Reliable Principles and Methodologies.............. 13

        2.    The Hart Report Offers Impermissible Legal Conclusions ..................... 14

        3.    The Hart Report Contains Speculative and Irrelevant "Opinions".......... 15

        4.    The Hart Report is Inaccurate .................................................................. 16

    E.    Judicial Estoppel Has No Application ................................................................ 17

    F.    The Court Should Not Defer To The SEC To The Extent That It Supports
        The Use Of Constant Dollars.............................................................................. 19

    G.    Certain Claimants Lack Standing ...................................................................... 21

CONCLUSION..................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Algarin v. N.Y.C. Dep't of Correction,*
   460 F. Supp. 2d 469 (S.D.N.Y. 2006)................................................................13, 16

*In re Bernard L. Madoff Inv. Sec. LLC,*
   654 F.3d 229 (2d Cir. 2011).................................................................. *passim*

*Calvert v. Radford (In re Consol. Meridian Funds)*
   487 B.R. 263 (Bankr. W.D. WA 2013) ...............................................................11

*Cappiello v. ICD Publ'ns, Inc.,*
   No. 12-2636-cv, 2013 WL 2991038, at *4 (2d Cir. June 18, 2013) .......................................12

*In re Carrozzella & Richardson,*
   286 B.R. 480 (Bankr. D. Conn. 2002) ...............................................................5

*Chandler v. Bombardier,*
   44 F.3d 80 (2d Cir. 1994)...............................................................8

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC),*
   439 B.R. 284 (S.D.N.Y. 2010)...............................................................12

*Commodity Futures Trading Comm'n v. Walsh,*
   712 F.3d 735 (2d Cir. 2013)................................................................. *passim*

*Compania Embotelladora Del Pacifico v. Pepsi Cola Co.,*
   650 F. Supp. 2d 314 (S.D.N.Y. 2009)...............................................................13

*Daubert v. Merrell Dow Pharm., Inc.,*
   509 U.S. 579 (1993)...............................................................12, 14

*Di Bella v. Hopkins,*
   403 F.3d 102 (2d Cir. 2005)...............................................................14

*Focht v. Athens (In re Old Naples Sec., Inc.),*
   311 B.R. 607 (Bankr. M.D. Fla. 2002) ...............................................................8

*Gen. Elec. Co. v. Joiner,*
   522 U.S. 136 (1997)...............................................................14

*Grand River Enters. Six Nations, Ltd. v. King,*
   783 F. Supp. 2d 516 (S.D.N.Y. 2011)...............................................................12

ii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Horowitz v. Am. Int'l Group, Inc.*,
No. 09 Civ. 7312(PAC), 2010 WL 3825737 (S.D.N.Y. Sept. 30, 2010), *aff'd*, 498 F.
App'x 51 (2d Cir. 2012)........................................................................................................9

*Hygh v. Jacobs*,
961 F.2d 359 (2d Cir. 1992)..........................................................................................14, 15

*Intellivision v. Microsoft Corp.*,
484 F. App'x 616 (2d Cir. 2012) ........................................................................................18

*Jacobson Family Invs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
955 N.Y.S.2d 338 (1st Dep't 2012) .....................................................................................9

*Kansas v. Colorado*,
533 U.S. 1 (2001)..................................................................................................................8

*In re Klein, Maus & Shire, Inc.*,
301 B.R. 408 (Bankr. S.D.N.Y. 2003) .................................................................................7

*Lewis v. Parish of Terrebonne*,
894 F.2d 142 (5th Cir. 1990) .............................................................................................16

*Li v. Aponte*,
05 Civ. 6237 (NRB), 2009 WL 1285928 (S.D.N.Y. May 5, 2009).......................................14

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008)...............................................................................................15

*Manufacturer's & Traders Trust Co. v. Reliance Ins. Co.*,
838 N.Y.S.2d 806 (2007).....................................................................................................12

*Mulvaney Mechanical, Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*,
288 F.3d 491 (2d Cir. 2002), *vacated and remanded,* 538 U.S. 918 (2002), *aff'd on
reh'g*, 351 F.3d 43 (2d Cir. 2003) .......................................................................................18

*In re MV Securities, Inc.*,
48 B.R. 156, 157 (Bankr. S.D.N.Y. 1985) ...........................................................................7

*New Hampshire v. Maine*,
532 U.S. 742 (2001)............................................................................................................18

*In re New Times Sec. Servs.*,
371 F.3d 68 (2d Cir. 2004).........................................................................................7, 8, 20

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)..........................................................................................12, 14

iii

## TABLE OF AUTHORITIES
### (continued)

*Plumbers and Steamfitters Local 490 Severance and Ret. Fund v. Appleton (In re First Ohio Sec. Co.)*,
No. 93-3313, 1994 WL 599433 (6th Cir. Nov. 1, 1994) ..........................................7

*Primavera Familienstifung v. Askin*,
130 F. Supp. 2d 450 (S.D.N.Y. 2001), *modified*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001) ....................................................................................................................13

*Rodal v. Anesthesia Group of Onondaga, P.C.*,
369 F.3d 113 (2d Cir. 2004)....................................................................................18

*Sec. Investor Prot. Corp. v. Ambassador Church Finance/Development Grp., Inc.*,
788 F.2d 1208 (6th Cir. 1986) ..................................................................................5

*Sec. Investor Prot. Corp. v. C. J. Wright & Co., Inc. (In re C.J. Wright & Co.)*,
162 B.R. 597 (Bankr. M.D. Fla. 1993) .....................................................................8

*SEC v. Aberdeen Sec. Co., Inc.*,
480 F.2d 1121 (3d Cir. 1973), *cert. denied sub nom. Seligsohn v. SEC*, 414 U.S. 1111 (1973)......................................................................................................................7

*SEC v. Credit Bancorp, Ltd.*,
290 F.3d 80 (2d Cir. 2002)........................................................................................6

*SEC v. Sec. Investor Prot. Corp.*,
872 F. Supp. 2d. 1 (D.C. Cir. July 3, 2012), *appeal filed, SEC v. Sec. Investor Prot. Corp.*, 12-5286 (D.C. Cir. Aug. 31, 2012)..............................................................20

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)................................................................................................20

*Troll Co. v. Uneeda Doll Co.*,
483 F.3d 150 (2d Cir. 2007)....................................................................................18

*In re Unified Commercial Capital, Inc.*,
260 B.R. 343 (Bankr. W.D.N.Y. 2001), *aff'd* 2002 WL 32500567 (W.D.N.Y. June 21, 2002) ..................................................................................................................5

*U.S. v. City of Warren*,
138 F.3d 1083 (6th Cir. 1998) ..................................................................................8

*In re Weis Sec., Inc.*,
No. 73 Civil 2332, 1976 WL 820 (S.D.N.Y. Aug. 2, 1976)......................................7

## RULES

Fed. R. Evid. 702 .................................................................................12, 13, 15, 16

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

## STATUTES

15 U.S.C. § 78aaa *et seq.* .................................................................................................1

15 U.S.C. § 78ddd(f) ........................................................................................................4

15 U.S.C. § 78fff-2(b) ......................................................................................................3

15 U.S.C. § 78fff-2(c)(1)(B) ............................................................................................4

15 U.S.C. §78fff-2(c)(B) ..................................................................................................2

15 U.S.C. §78*lll*(11) .......................................................................................................3

28 U.S.C. § 1961 ............................................................................................................12

N.Y. C.P.L.R. § 5004 (McKinney 2011) .......................................................................11

## OTHER AUTHORITIES

12 C.F.R. § 330.3(i)(1) .....................................................................................................5

17 C.F.R. §240.15c3-3 ..............................................................................................21, 22

2 Dan B. Dobbs, *Dobbs Law of Remedies: Damages-Equity-Restitution* 364–72 (2d ed. 1993) ............................................................................................................................8

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, §§ 929H(a), 124 Stat. 1856, 1931 (2010) ....................................................................4

H.R. REP. NO. 95-746 (1977) ...........................................................................................4

Norman J. Singer, *Statutes and Statutory Construction* § 46.07 (6th ed. 2000)..............4

S. REPORT NO. 95-763..........................................................................................................4

Sec. Exchange Act § 10(b)(5) (1934) ...............................................................................7

Treas. Reg. §§ 1.1275-7(b)(1), 7(g) .................................................................................9

v

Irving H. Picard, trustee ("Trustee")[1] for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[2] and for Bernard L. Madoff ("Madoff") (collectively, "Debtor"), by and through his undersigned counsel, respectfully submits this Reply Memorandum of Law in Support of Trustee's Motion For An Order Affirming Trustee's Calculations of Net Equity and Denying Time-Based Damages, to affirm the Trustee's determination that net equity, as that term is defined under SIPA, does not include interest, time value of money, or inflation adjustments such as constant dollar (collectively, "Time-Based Damages"),[3] and states as follows:

## I. INTRODUCTION

Claimants fail to articulate any reasoned legal or equitable basis for an award of Time-Based Damages. This is not surprising given that SIPA does not permit the inclusion of damages in the calculation of net equity. Any attempt to recover Time-Based Damages is merely a poorly disguised effort by Claimants to once again revisit the net equity decision in order to edge the value of their claims closer to the last statement amounts invented by Madoff. And they attempt to gain this edge at the expense of other claimants recovering principal, something which equity cannot countenance.

The Trustee has considered the law, the equities, and the practical and timing issues involved in determining the net equity approach he has espoused, and has concluded that money

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Trustee's Opening Brief.

[2] For convenience, future reference to SIPA will not include "15 U.S.C."

[3] There are numerous theories of law that objecting claimants (the "Claimants") have raised, all of which seek some increase in their customer claims based upon the amount of time they invested with BLMIS. Most commonly, they seek an increase in their claims based on the time they were invested with BLMIS using the New York prejudgment rate of 9% per annum, lost opportunity cost damages, or the consumer price index to take inflation into account. The Trustee is using "Time-Based Damages" as an umbrella term.

in, money out is not only correct as a legal matter, but is also more equitable and produces the

best overall result for customers.  The Securities and Exchange Commission ("SEC") has not

determined otherwise.  In fact, the SEC has retreated from its earlier position that net equity in

this case should necessarily be calculated on the basis of constant dollars and has left the issue up

to this Court.  *See* Mem. of Law of the Securities and Exchange Commission Supporting a

Constant Dollar Approach to Valuing Customers' Net Equity Claims for Fictitious Securities

Positions, ECF No. 5142 (the "SEC Br.").

Claimants' attempts, in the Supplemental Briefing, to discount the cost, delay, and actual

impact on recoveries of implementing a Time-Based Damages scheme, are unconvincing and

inaccurate and serve to underline the flaws with their approach.  The Trustee, after considering

all relevant factors, has identified what he believes to be the appropriate method for valuing

claims and, as the Second Circuit has held, such a decision is entitled to deference.  It is certainly

the case that his approach "is not clearly inferior to other methods under consideration."  *In re

Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 238 n.7 (2d Cir. 2011).  Thus, the Trustee

respectfully requests that this Court uphold the Trustee's determination that net equity should be

calculated based upon the Trustee's Net Investment Method, without any adjustments for Time-

Based Damages.

## II.  ARGUMENT

### A.    No Statutory or Other Basis for Time-Based Damages Exists

#### 1.    SIPA Does Not Permit Time-Based Damages

The hurdle the Claimants cannot overcome is that SIPA does not allow for Time-Based

Damages.  SIPA provides that customer property of the debtor be distributed "to customers of

such debtor, who shall share ratably in such customer property on the basis and to the extent of

their respective net equities . . . ."  SIPA §78fff-2(c)(B).  Net equity is in turn defined as the

2

"dollar amount of the account or accounts of a customer, to be determined by . . . calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer . . . ." SIPA §78lll(11). SIPA does not provide that "net equity" is increased by the length of time assets are in a customer account.

When, as here, there are no actual securities to be valued, a customer's net equity claim is determined from the books and records of the broker. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 237. The books and records of BLMIS identify balances in customer accounts and do not reflect interest payments, inflationary adjustments, or the application of any other type of Time-Based Damages. There is no argument that BLMIS accounts had a guaranteed rate of interest or inflationary factor associated with them. The books and records of BLMIS therefore do not support the inclusion of Time-Based Damages in the calculation of net equity.

Faced with these barriers, Claimants attempt to argue by analogy, using other sections of SIPA, that the payment of Time-Based Damages is appropriate. First, Claimants look to the requirement that, in making distributions to customers, "all securities shall be valued as of the close of business on the filing date" (SIPA § 78fff-2(b)), to argue that SIPA implicitly incorporates Time-Based Damages. However, Time-Based Damages bear no relationship to securities investments. Claimants overlook the fact that, though the value of securities is variable and subject to market risk, SIPA does not guarantee a particular return over time. What the structure of SIPA therefore actually evinces is a legislative belief that customers are entitled to the benefits or burdens of their own investment decisions. The application of Time-Based Damages would impose an arbitrary scheme that is inconsistent with the language and intent of

3

SIPA.[4]  Further, other sections of SIPA explicitly provide for interest.  *See, e.g.*, SIPA §§ 78jjj, 78ddd(f).  Moreover, the recent amendments to SIPA provide for some statutory limits to rise with inflation.[5]  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, §§ 929H(a), 124 Stat. 1856, 1931 (2010).  The fact that such a reference was not included in the net equity definition reveals the intent of Congress with respect to Time-Based Damages.  *See* 2A Norman J. Singer, *Statutes and Statutory Construction* § 46.07 (6th ed. 2000) ("Where one section of a statute contains a particular provision, omission of the same provisions from a similar section is significant to show different legislative intent for the two sections.")

Next, Claimants assert that SIPA's requirement that customer property be allocated "ratably" to customers somehow requires the inclusion of Time-Based Damages, arguing that "ratable" sharing requires a "fair" allocation.  SIPA § 78fff-2(c)(1)(B); *see* Customers' Brief Opposing Trustee's Motion for an Order Rejecting an Inflation Adjustment to the Calculation of "Net Equity" 17, ECF No. 5133 (the "Loeb Br.").  However, this ratable allocation can be made only "on the basis and to the extent of their respective net equities."  SIPA § 78fff-2(c)(1)(B).  Because the definition of "net equity" makes no provision for Time-Based Damages, this analogy cannot be sustained.  Indeed, a re-allocation of customer property to account for Time-

---

[4] The legislative history on the 1978 amendments to SIPA also fails to support the application of Time-Based Damages.  The Securities Investor Protection Act Amendment of 1978, declared that "A principal underlying purpose of the bill" is to permit a customer to receive securities rather than just cash.  "Under present law, . . . it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account."  S. REPORT NO. 95-763, at 2 (1978).  It continued that the amendment "will enable the customer to pursue his investment objectives without being disturbed by the forced sale of securities, a result which also has resulted in unfavorable tax consequences for some investors."  *Id.*  Similarly, the House report stated, that by returning the contents of customer accounts "in the form they existed on the filing date," the amendments "would allow [the customer] to continue to exercise investment prerogatives and to avoid oftentimes adverse tax consequences."  H.R. REP. NO. 95-746, at 21 (1977).  Other than a recital that the bill was not expected to have an inflationary impact (*id.* at 26), inflation was never mentioned in these reports, nor is there any discussion of giving interest or other Time-Based Damages to customers.

[5] *See* Trustee's Opening Brief at 8, n.4, 10.

4

Based Damages would be inconsistent with SIPA because it would incorporate arbitrary values not recognized by statute.

### 2. Claimants Have Failed to Identify Any Other Persuasive Authority to Support Their Request for Time-Based Damages

#### (a) There is No Legal Precedent for Claimants' Position

Claimants have failed to identify a single SIPA case in which Time-Based Damages were awarded. Additionally, Claimants' attempts to distinguish the cases relied upon by the Trustee on their specific facts do not change the general approach taken by courts considering the payment of interest on claims in a SIPA proceeding. In short, "SIPA does not authorize the SIPC to pay interest, either to the trustee or directly to the debtor's customers . . ." *Sec. Investor Prot. Corp. v. Ambassador Church Finance/Development Grp., Inc.*, 788 F.2d 1208, 1212 (6th Cir. 1986).

Certain Claimants incorrectly argue that emerging case law supports an inflation adjustment. *See* Loeb Br. 22. However, the cases relied upon involve an adjustment for inflation in bankruptcy proceedings when the relevant contract specifically provided for the payment of interest. *See In re Carrozzella & Richardson*, 286 B.R. 480, 484, n.7 (Bankr. D. Conn. 2002); *In re Unified Commercial Capital, Inc.*, 260 B.R. 343, 351 (Bankr. W.D.N.Y. 2001), *aff'd* 2002 WL 32500567 (W.D.N.Y. June 21, 2002). These cases are in stark contrast with this SIPA proceeding where nothing in the books and records of BLMIS suggested that certain interest rates were promised to customers.[6]

These same Claimants, in their initial memorandum, anticipated the Second Circuit's ruling on an inflation adjustment in *Commodity Futures Trading Comm'n v. Walsh*, 712 F.3d

---

[6] For similar reasons, Claimants' reference to the fact that insurance provided by the Federal Deposit Insurance Corporation ("FDIC") includes interest on accounts held at failed financial institutions is irrelevant—the FDIC regulations specifically provide for the payment of interest. Loeb Br. 18; 12 C.F.R. § 330.3(i)(1).

735 (2d Cir. 2013). Loeb Br. 23. By the time these Claimants filed their Supplemental

Memorandum of Law, they had backed away from *Walsh*. *See* Customers' Corrected

Supplemental Brief Opposing Trustee's Motion for an Order Rejecting an Inflation Adjustment

to the Calculation of "Net Equity" at 3 n.2, ECF No. 5332 (the "Supplemental Brief" or "Supp.

Br."). This is not surprising given that the Second Circuit in *Walsh* approved a distribution

scheme in a Ponzi scheme securities receivership over the objection of a customer who wanted to

include Time-Based Damages in evaluating relative claims. *Walsh*, 712 F.3d at 755–56. The

receiver argued that such an adjustment would result in some parties recovering more than they

invested before other victims recovered their principal, a fact equally true in this case. *Walsh*

also involved a fraud lasting in excess of twelve years. *Id.* at 742. The Second Circuit found no

authority requiring an inflation adjustment as a matter of law, distinguishing cases cited by the

customer stating "[the customer] has not cited any authority that supports the proposition that an

inflation adjustment is required as a matter of law when there is to be a distribution of assets to a

group of similarly situated victims and those assets are insufficient to make all of the victims

whole." *Id.* at 755.

The Second Circuit held that the lower court, in evaluating the receiver's plan of

distribution, has "'equitable authority . . . to treat all the fraud victims alike (in proportion to their

investments) and order a pro rata distribution.'" *Id.* at 749 (citing *SEC v. Credit Bancorp, Ltd.*,

290 F.3d 80, 88 (2d Cir. 2002)). Moreover, doing so was "especially appropriate for fraud

victims of a Ponzi scheme." *Id.* (citing *SEC v. Credit Bancorp, Ltd.*, 290 F.3d at 89). While

*Walsh* was a receivership and not a SIPA proceeding, contrary to Claimants' assertions, a recent

Second Circuit decision denying the payment of Time-Based Damages in circumstances

involving the distribution of limited assets following a Ponzi scheme is undoubtedly relevant.

6

Even if SIPA did not preclude the payment of Time-Based Damages, *Walsh* suggests that such

damages are not payable when there are insufficient assets to fully satisfy all claims.[7]

**(b)     Time-Based Damages Are Subordinated Damages Claims**

The lack of legal support for the payment of Time-Based Damages in SIPA proceedings

is entirely consistent with the priority scheme created by SIPA.  Customers of failed brokerages

receive a priority of payment with respect to their customer property.  *See In re Weis Sec., Inc.*,

No. 73 Civil 2332, 1976 WL 820, at *6 (S.D.N.Y. Aug. 2, 1976).  There is no such priority for

damages claims.  While damages can be the subject of claims in a SIPA case, those claims are

relegated to general estate status and can only be paid from property other than customer

property.  *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 420–21 (Bankr. S.D.N.Y. 2003).  They

are not "customer claims," even when the persons asserting them are characterized as customers

for other purposes, and they are not eligible for SIPC advances.  As such, SIPA does not provide

restitution for fraud on the part or a broker; but instead operates to return investment property

that customers have purchased or entrusted to brokers.  *See Plumbers and Steamfitters Local 490*

*Severance and Ret. Fund v. Appleton (In re First Ohio Sec. Co.),* No. 93-3313, 1994 WL

599433, at *1 (6th Cir. Nov. 1, 1994) ("SIPA is intended to protect investors against a broker-

dealer's insolvency; it is not designed to achieve restitution for fraud."); *SEC v. Aberdeen Sec.*

*Co., Inc.*, 480 F.2d 1121 (3d Cir. 1973), *cert. denied sub nom. Seligsohn v. SEC*, 414 U.S. 1111

(1973).  For these reasons, neither interest nor adjustments for inflation can be included in the

calculation of net equity.

---

[7] Claimants' analogy to securities fraud cases is also inapposite.  The fact that remedies for a breach of § 10(b)(5) of the 1934 Securities Exchange Act may include prejudgment interest is not relevant here.  Distributions under SIPA are not based on securities fraud, and, in fact, a securities fraud cause of action cannot be paid for out of customer funds–it is a non-priority claim that can only be paid from the general estate.  *See, e.g., In re New Times Sec. Servs.*, 463 F.3d at 129–30 (claimants not customers under SIPA when fraudulently induced by broker to swap securities for promissory notes); *In re MV Securities, Inc.*, 48 B.R. 156, 157 (Bankr. S.D.N.Y. 1985) (investor fraudulently induced to sell securities she held through the broker and buy bonds with the money did not have a customer claim).

7

Interest is a form of damages.  The only SIPA cases identified to this Court that consider the payment of interest hold that it is not permissible.  *See In re New Times Sec. Servs.*, 371 F.3d 68, 88 (2d Cir. 2004); *Focht v. Athens (In re Old Naples Sec., Inc.)*, 311 B.R. 607, 616, 617 (Bankr. M.D. Fla. 2002); *Sec. Investor Prot. Corp. v. C. J. Wright & Co., Inc. (In re C.J. Wright & Co.)*, 162 B.R. 597, 610 (Bankr. M.D. Fla. 1993).  Claimants have offered no contrary SIPA precedent.

The SEC acknowledges that an adjustment for interest is not appropriate because it "would necessarily require a judgment about the risk of the investment (a judgment that may be impossible in the case of fictitious securities or, as here, Madoff's fictitious trading scheme . . ." SEC Br. 11–12.  However, the SEC suggests that an inflation adjustment could be appropriate in certain circumstances and tries to distinguish inflation adjustments from interest.  However, as discussed below, inflation adjustments are also classified as damages and thus do not benefit from any priority of payment.[8]

The cases cited by the SEC demonstrate that inflation is simply an aspect of damages, albeit one that is normally subsumed in an interest award.  Interest is intended to cover the harm caused by both inflation and lost opportunity costs.  *See Kansas v. Colorado*, 533 U.S. 1 at 10, n.2 (2001); *U.S. v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998); *Chandler v. Bombardier*, 44 F.3d 80, 83–84 (2d Cir. 1994).  Not only does an inflation adjustment constitute damages, but it is a form of damages for which, standing alone, there is very limited legal tradition.  *See generally* 2 Dan B. Dobbs, *Dobbs Law of Remedies: Damages-Equity-Restitution* 364–72 (2d ed. 1993).  There is no precedent at all for reading its use into a statute that does not

---

[8] Further, for reasons discussed in greater detail below, inflation adjustments can be just as arbitrary as interest adjustments.  *See infra* Section II.D.4.

expressly provide for it, particularly, where the statute otherwise provides a detailed calculation methodology.

When an inflation adjustment occurs, such as with respect to the treasury bills referenced by the SEC (SEC Br. 13), it is treated as income, or profit, on which income taxes need be paid. Treas. Reg. §§ 1.1275-7(b)(1), 7(g).  Adjustments are not treated as a return of the property that was invested.  Similarly, when insurance covers "loss" of money, that loss is not measured against constant dollars, but rather against the actual dollars that went missing.  *See., e.g.*, *Jacobson Family Invs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 955 N.Y.S.2d 338 (1st Dep't 2012) (only the actual cash investment in Madoff scheme can be the subject of a "loss" under an insurance policy that did not separately define the term) (citing *Horowitz v. Am. Int'l Group, Inc.*, No. 09 Civ. 7312(PAC), 2010 WL 3825737, at *6 (S.D.N.Y. Sept. 30, 2010), *aff'd*, 498 F. App'x 51 (2d Cir. 2012) (same)).

Under SIPA, the priority granted to customer claims only applies to loss of customer property.  In addition, because SIPA operates in insolvency situations, there is no aggrieved plaintiff recovering directly from a wrongdoer who needs to be prevented from profiting from his wrong.  There are only other deprived customers, competing against each other for inadequate amounts of customer property.  None are entitled to make a profit before others at least receive the return of their principal investment, and nothing in SIPA requires or allows otherwise.

**B.**      **Claimants Are Attempting to Re-Litigate Net Equity**

Both Claimants and the SEC identify customers' expectations as relevant to the instant inquiry.  Claimants assert that they had a legitimate expectation of being compensated for the time value of money, while the SEC states that the settled expectations of customers are relevant to a determination regarding whether an adjustment for inflation is appropriate.

300287882

Claimants could not have expected to receive adjustments for inflation or other damages on the monies they invested with BLMIS. Because customers invested with BLMIS as opposed to putting their money in a bank account, prior to the BLMIS filing, customer expectations were certainly not based on the consumer price index or similar markers. Customers presumably hoped that by entrusting their money to Madoff it would gain in value and expected Madoff to be choosing securities to buy and sell. Such securities, had they existed, had the capability of losing as well as gaining money, regardless of inflation. What Claimants must therefore actually be arguing is they "expected" to receive their last statement balance or, at the very least, something closer to it than the amount that the Net Investment Method provides.

There are almost endless views on what subjectively would be the most "fair" way to divide up limited funds following a fraud such as this one, whether it be by need, by duration, by the purposes for which money was invested, by the individual investor's status and market experience, by the nature of the investor's relationship to the perpetrator, by overall percentage of recovery, by tracing whether some of the original deposit could be deemed to still remain with the debtor, by mere net dollars, or by some other factor. The briefs and the SEC and the Claimants focus on only one of these issues: the duration of the investment. However, in a zero-sum game, each and every method for adjusting customer claims will benefit some customers at the expense of others.

As the Second Circuit confirmed in the Net Equity Decision, the proper way to divide limited assets among equally innocent defrauded customers is to divide them in proportion to the amount they actually lost in the scheme, so that no one can profit before all are made whole. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238–39. Exclusion of Time-Based Damages is also more consistent with other case law holding that even innocent persons who profited from

Ponzi schemes must return amounts above their principal investments, so others can be made whole before profits are made. *See Calvert v. Radford (In re Consol. Meridian Funds)* 487 B.R. 263 (Bankr. W.D. WA 2013) (recipients of transfers in a Ponzi scheme are not entitled to retain interest over their principal investment). Contrary to Claimants' arguments, the Trustee is not suggesting the Time-Based Damages are not available solely because this is a Ponzi scheme, but it is certainly true that Time-Based Damages should not be considered in a Ponzi scheme before all principal is returned. *See Walsh*, 712 F.3d at 755.

Further, the Trustee has concluded that this method is not only the most straightforward, but it is also the most equitable, and a long line of case authority supports this view. *See* Trustee's Opening Br. 20–21. As a matter of law, this method cannot be deemed "clearly inferior" to other methods under consideration, even if some customers might prefer a different arrangement. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238 n.7.

## C.   New York Statutory Interest is Inapplicable as a Matter of Law

Certain Claimants attempt to allege that they should be paid interest on their claims at a rate of 9 percent pursuant to the New York State prejudgment interest statute. N.Y. C.P.L.R. § 5004 (McKinney 2011). As this Court held in refusing to require the Trustee to hold back distribution funds at that rate, "the astronomical rate of 9 percent, which is the extreme outer bounds of interest rates potentially applicable under the New York Civil Practice Law and Rules . . . may not even be relevant here." Hr'g Tr. 19:5-8, Aug. 22, 2012, ECF No. 5014. Indeed, it is not.

The New York interest statute does not apply on its face, even if SIPA permitted its recoveries to vary by the state in which the insolvent stockbroker happened to be conducting business—which it does not. This is because (i) a SIPA recovery is not a New York cause of

action,[9] and (ii) this is a liquidation involving a common pot of money, not a lawsuit for recovery against a wrongdoer.   In the context of a SIPA claims process, there is no judgment against a culpable party to which prejudgment interest could attach.   According to the highest court in New York, that fact is fatal to recovery of interest.   *Manufacturer's & Traders Trust Co. v. Reliance Ins. Co.*, 838 N.Y.S.2d 806 (2007) (prejudgment interest was not allowed under the New York statute because there was no "sum awarded" against a culpable party); *see also Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284, 337–38 (S.D.N.Y. 2010) (New York prejudgment interest requires actual judgment).[10]   SIPA does not permit the payment of interest but even if it did, the New York State interest rate would have no application.

## D.   **This Court Should Give No Weight to The Hart Report**

This Court should give no weight to the report of Timothy H. Hart (the "Hart Report"), ECF No. 5331, submitted in connection with the Customers' Supplemental Brief because it is neither reliable nor relevant.   Federal Rule of Evidence 702 requires the court to "act as a gatekeeper to ensure that expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"   Fed. R. Evid. 702; *Grand River Enters. Six Nations, Ltd. v. King*, 783 F. Supp. 2d 516, 526 (S.D.N.Y. 2011) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).   The Federal Rules of Evidence require that an expert's opinions are consistent with

---

[9] See, for example, *Cappiello v. ICD Publ'ns, Inc.*, in which the Second Circuit confirmed that the plaintiff was entitled to post-judgment interest at .25%, the rate calculated in accordance with 28 U.S.C. § 1961, following the entry of a judgment by the district court, as opposed to the 9% New York rate sought.   No. 12-2636-cv, 2013 WL 2991038, at *4 (2d Cir. June 18, 2013).

[10] In contrast, in an avoidance action, this requirement of a judgment for recovery against someone is met, which explains why the Trustee appropriately sought to reserve in those litigations—brought partially under New York Law—the right to recover New York statutory interest.

300287882

this mandate.  *See Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (quoting *Kumho*, 526 U.S. at 152).

The Hart Report is replete with all the classic characteristics of expert testimony routinely excluded by courts under Rule 702.  It is sprinkled with generalized legal conclusions and impermissible speculation, and it lacks any reliable principles, methods, or foundation.  The "opinions" presented are of the "because I say so" variety routinely excluded by courts in this Circuit.  Accordingly, the Hart Report should not be given any weight by this Court.

### 1.    The Hart Report Lacks Reliable Principles and Methodologies

The Hart Report does not demonstrate any semblance of a methodology, much less a reliable one.  *See, e.g.*, *Compania Embotelladora Del Pacifico v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 319-20 (S.D.N.Y. 2009) (excluding expert testimony for lack of a methodology); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001), *modified*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001) (excluding experts for failing to demonstrate they have made use of their expertise by way of a methodology).

To be admissible, expert testimony must be both helpful and reliable.  The Hart Report is neither.  Mr. Hart rehashes the Claimants' legal arguments and, without a meaningful review of the record or learned materials, presents counsels' theory of why the inflation-adjusted method is the more appropriate method for calculation of claims.  This lack of methodology is dispositive. *See, e.g.*, *Algarin v. N.Y.C. Dep't of Correction*, 460 F. Supp. 2d 469, 477 (S.D.N.Y. 2006) ("[a]n anecdotal account of one expert's experience, however extensive or impressive the numbers it encompasses, does not by itself equate to a methodology").

Mr. Hart also fails to rebut the Trustee's concerns regarding the cost and delay associated with a Time-Based Damages reallocation.  The Trustee, having administered the BLMIS liquidation for the past four and a half years, has estimated the length of time that it will take to

13

make any adjustments to net equity. Mr. Hart, who has no experience in a SIPA liquidation and has extremely limited knowledge of the BLMIS data, is not in a position to evaluate the complexity involved.[11] His "opinions" connect to the facts through nothing more than his "*ipse dixit.*" *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the experts"); *Nimely*, 414 F.3d at 399 (courts exclude *ipse dixit* expert conclusions); *Li v. Aponte*, 05 Civ. 6237 (NRB), 2009 WL 1285928, at *6 (S.D.N.Y. May 5, 2009) (excluding expert opinion presented without documented support). Without a discernible methodology, the Hart Report is neither helpful nor reliable.

## 2.    The Hart Report Offers Impermissible Legal Conclusions

The briefing before this Court makes clear that the question of whether Time-Based Damages can be awarded is one of law. Thus, broad statements regarding inflation adjustments generally have no bearing on these proceedings where the Trustee is bound by the statutory strictures of SIPA. Accordingly, to the extent it seeks to provide a legal opinion or legal conclusion, the Hart Report exceeds the bounds of the matters upon which an expert can testify.

An expert is not permitted to provide legal opinions or legal conclusions as those roles are the province of the court. *Hygh v. Jacobs*, 961 F.2d 359, 363–64 (2d Cir. 1992); *Di Bella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) ("[Expert witness] statements embodying legal conclusions exceed[] the permissible scope of opinion testimony under the Federal Rules of Evidence.") (internal citation omitted). While an expert report can give an opinion on an issue of fact that the trier of fact will eventually decide, the Trustee respectfully contends the Court

---

[11] Mr. Hart's suggestion that the process for re-determining net equity is "redundant and repetitive" because of the levels of review involved is baseless. The BLMIS liquidation is a SIPA proceeding and appropriate SIPC procedures need to be utilized, as they are in all significant SIPA liquidations.

should disregard the Hart Report to the extent it attempts to offer an opinion on a legal issue to be decided by the Court. *Hygh*, 961 F.2d at 363–64.

Further, the Hart Report has not been provided to counter an expert report submitted by the Trustee. To the contrary, the Declaration of Robert J. Rock (the "Rock Declaration"), submitted by the Trustee in conjunction with his Opening Brief, was provided only to demonstrate the calculations considered by the Trustee in reaching his decision regarding Time-Based Damages. ECF. No. 5041. While the Trustee does not object to the Claimants' responding to the calculations in the Rock Declaration, the parties did not contemplate engaging in expert discovery at this juncture. *See* Trustee Opening Br. at 26 n.13 (regarding need for further proceedings on the specific methodology to be used in the event that a court rules that Time-Based Damages are to be awarded).

### 3.    The Hart Report Contains Speculative and Irrelevant "Opinions"

The Hart Report consists of speculation and conjecture. Mr. Hart posits, for example, that:

- In my opinion, if Mr. Sehgal's time estimate is correct, five man-months is a very long time to spend constructing a model as simple as the model required for inflation adjusted damages. Hart Report ¶ 28 n.8.

- In my opinion, the process to calculate the claims and review these claims using an inflation adjusted calculation method *should be straight forward* and *should not be time consuming*. Hart Report ¶ 30 (emphasis added).

- *I would not expect* that any model would need to be built from scratch. Hart Report ¶ 30 (emphasis added).

- *[I] would expect* the quality control review of calculations to be done within a matter of weeks unless the model they build produces significant errors, which *I would not expect*. Hart Report ¶ 30 (emphasis added).

These generalized "opinions" fail to meet Rule 702 requirements for admissibility. *See, e.g.*, *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008)

300287882

("proffered expert testimony should be excluded if it is speculative or conjectural") (internal quotations and citations omitted); *Algarin*, 460 F. Supp. 2d at 477 (excluding expert report that "cannot be read to express any more than simply his personal disagreement").

Similarly, Mr. Hart's commentary that the Trustee's "representations are not reasonable or supported by evidence" (Hart Report ¶ 27); that these "representations are contradicted by the testimony of AlixPartners" (*Id.*); and that "neither Mr. Rock nor Mr. Sehgal provided any substantive or specific justification" (Hart Report ¶ 28) are all improper. Because these "opinions" are lacking in any expert foundation, and fall outside Mr. Hart's professed experience, they amount to the type of conjecture and speculation violative of Rule 702. *See Lewis v. Parish of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990) ("[a]n expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture").

### 4.    The Hart Report is Inaccurate

The Hart Report and the Supplemental Briefing misstate the impact of an adjustment for Time-Based Damages and the burden associated with calculating and implementing such a re-allocation of customer property.

While the Trustee does not dispute Mr. Hart's statements regarding basic principles of finance and the operation of inflation, these statements have no relevance in a SIPA proceeding where the calculation of damages is excluded from the calculation of net equity. In addition, as discussed above, applying an inflation adjustment to BLMIS accounts is inconsistent with the purposes of brokerage accounts for trading in the securities market. The market does not provide inflation adjustments to investors, the market provides for gains and losses—essentially, performance adjustments.

Depending on the securities that were supposedly in customers' accounts, the value of an account may have been greater or less than the value when adjusted for inflation. If the twenty-

16

one accounts used in the Hart Report had invested in the S&P 500 Index, the vast majority of those accounts would show a performance balance that is both <u>lower</u> than the balance adjusted for inflation and lower than the balance calculated on a cash-in, cash-out basis in accordance with the Net Investment Method, thus illustrating the volatility of the market and the risk associated with investing. *See* Declaration of Vineet Sehgal ¶ 7, July 18, 2013.

Further, the Hart Report does not dispute that the application of Time-Based Damages will lead to unintended consequences but still favors such a re-allocation despite this inequitable result. It is not the case that applying an adjustment for inflation or some other time-based adjustment will result merely in those who invested longer receiving a benefit related to the length of their investment. To the contrary, because of the large number of feeder fund claimants, whose claims represent more than $12 billion of the total allowed customer claim estimate of $17.5 billion, the majority of funds re-allocated would move among feeder funds. These feeder funds primarily invested in the last ten years of the Ponzi scheme and will distribute the re-allocated funds to their investors on any basis they choose. They will receive the bulk of these re-allocated funds because of the size of their investments, not because of the length of time that they were invested with BLMIS. This arbitrary and inequitable result underlines the inappropriateness of Time-Based Damages, even if one sets aside the statutory prohibition.

Finally, Claimants and Mr. Hart overlook that the Trustee has an obligation to ensure that any re-calculations are correct. The Trustee owes a duty to this Court and to the defrauded customers of BLMIS and cannot merely rush through a re-allocation process, regardless of the views of Claimants' "expert," an individual with little direct knowledge of the BLMIS liquidation or SIPA liquidations in general.

**E.    <u>Judicial Estoppel Has No Application</u>**

300287882

Contrary to Claimants' arguments, the doctrine of judicial estoppel does not preclude the Trustee's position that calculating claims to include Time-Based Damages would harm customers by creating significant delay and expense. *See* Supp. Br. 19–22. Claimants suggest that because the Trustee proposed, and the Court agreed, that the Time-Based Damages issue be briefed after the resolution of the appropriate methodology for calculating net equity, the Trustee is somehow precluded from informing the Court about the logistics of attempting a re-allocation. That is not the case.

Judicial estoppel bars a party from taking a position when (1) the party took a clearly inconsistent factual position in a prior proceeding, and (2) that position was adopted by the court in some manner, such as by the entry of a judgment. *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 155 n.7 (2d Cir. 2007); *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). The "purpose of the doctrine 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment,' and because judicial estoppel is designed 'to prevent improper use of judicial machinery,' it is 'an equitable doctrine invoked by a court at its discretion.'" *Intellivision v. Microsoft Corp.*, 484 F.App'x 616, 619 (2d Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). Further, judicial estoppel is discretionary, so even if both elements are satisfied, a court may refuse to apply it. *Mulvaney Mechanical, Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 288 F.3d 491, 504 (2d Cir. 2002), *vacated and remanded,* 538 U.S. 918 (2002), *aff'd on reh'g*, 351 F.3d 43 (2d Cir. 2003) (noting that judicial estoppel is a "discretionary doctrine").

Here, judicial estoppel does not apply because the Trustee is not taking inconsistent stances, or otherwise contradicting a position that he espoused earlier in these proceedings. The

300287882

fact that the hearing on Time-Based Damages was scheduled for after resolution of the net equity issue does not now preclude the Trustee from noting that adjusting for the time value of money would result in a delay that would harm customers.  As the Trustee explained in his September 11, 2009 letter to the Court, the time value of money would not have been implicated had the Last Statement Method been adopted.  *See* Richard A. Kirby Decl. Ex. D, Apr. 26, 2013, ECF. No. 5330.  On September 5, 2012, less than three months after the petitions for *certiorari* regarding the Second Circuit's net equity decisions were denied, the Court entered a scheduling order to brief this question.  (ECF. No. 5022).  Thus, only when the Last Statement Method was rejected did the Time-Based Damages issue become ripe for adjudication.  Considering the issue any sooner would have required lengthy and expensive briefing of an issue that may or may not have been relevant.

In short, the Trustee's request that the Time-Based Damages issue and net equity be heard separately does not implicate judicial estoppel, nor does it represent a "self-created delay" that constitute grounds for denying the Trustee's Motion.  Supp. Br. 22.  The Time-Based Damages issue was irrelevant until the resolution of Net Equity, and the Trustee's request that these issues be heard separately is not a factual position that the Trustee is now contradicting. The Trustee is merely informing the Court that, based on his experience with the data and the BLMIS liquidation generally, calculating and applying the re-allocation sought by Claimants would be time-consuming and costly.  The two issues are distinct and not contradictory.

## F.    The Court Should Not Defer To The SEC To The Extent That It Supports The Use Of Constant Dollars

Claimants argue that, to the extent the SEC supports the use of constant dollars, SIPC and the Trustee should defer to that position, given that SIPC is, to some degree, structurally subordinate to the SEC.  Setting aside the fact that denying Claimants' request for Time-Based

Damages is not inconsistent with the SEC's position regarding the BLMIS liquidation because
the SEC has taken no position regarding whether it would be appropriate, based on the expense,
delay and expectations of customers to award such damages, deference is not appropriate in this
case.

The SEC's position is only entitled to deference to the extent it has the power to
persuade. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *In re New Times Sec. Servs.*, 371
F.3d 68, 76 (2d Cir. 2004); *In re Bernard L. Madoff Inv. Sec. LLC,* 654 F.3d 229, 235 (2d Cir.
2011). Where its position is contrary to case law and indeed contradicts positions it has taken in
prior cases,[12] there is no reason to accord it any additional weight. *See SEC v. Sec. Investor
Prot. Corp.*, 872 F. Supp. 2d. 1, 9 (D.C. Cir. July 3, 2012) (SEC position on the meaning of a
SIPA defined term was not entitled to deference when it did not square with the prior position of
the SEC nor readily reconcile with the statutory language; contrary position of SIPC upheld.),
*appeal filed, SEC v. Sec. Investor Prot. Corp.*, 12-5286 (D.C. Cir. Aug. 31, 2012).

The SEC acknowledges that it its position on Time-Based Damages would create results
inconsistent with its Customer Protection Rule, enacted in conjunction with SIPA to ensure that a
broker sets aside sufficient property that, upon its liquidation, each customer can have his or her
own investment property returned. SEC Br. 15–16; 17 C.F.R. §240.15c3-3. The SEC's sole
justification for this inconsistency is that, because the SEC is suggesting that constant dollars be

---

[12] In *In re New Times Sec. Servs.*, the Second Circuit concluded that the "SEC and SIPC are in agreement that the
Claimants' net equity should be valued according to the cash they initially provided to the Debtors to purchase the
Funds and should not include any bogus interest or dividend reinvestments." 371 F.3d at 88. Thus, the SEC
position gave no increase on account of time value of money for claimants who held what proved to be imaginary
securities even though it placed them at a relative disadvantage in comparison to other claimants who had ordered
and paid for specific real dividend-producing securities that debtor simply never actually purchased. The New
Times fraud lasted 17 years. The SEC cannot plausibly be suggesting that a Time-Based Damages re-allocation was
not appropriate in a fraud that lasted 17 years but might be in a fraud that lasted longer. It must be the circumstances
of the fraud and not its specific length that is determinative. *See also Walsh*, in which the SEC opposed the
suggestion that the Receiver's initial distribution to long-term investors account for inflation. 712 F.3d at 744.

used only in special circumstances involving either fictitious securities or fictitious investment schemes, any broker indulging in those particular species of fraud is likely not concerned with SEC rules. This is hardly a legitimate basis for creating a gap between net equity and amounts required to be held in reserve to protect customer funds in the event of a broker's liquidation.

Notwithstanding the SEC's current position, the rules the SEC enacted to work in tandem with SIPA reflect its understanding of what is supposed to happen under a SIPA liquidation and that understanding does not encompass inflating investment dollars beyond their original face amount. Even if the Court were to defer to the position taken by the SEC, an award of Time-Based Damages would still not be appropriate because, when the relative costs and benefits of making such an adjustment are considered, the additional cost, administrative delay and the expectations of customers weigh against the payment of Time-Based Damages.

## G.   **Certain Claimants Lack Standing**

Certain Claimants lack standing to assert objections in this matter. As the Court will recall, by letter dated December 7, 2012, Richard Kirby, counsel for many of the objectors herein sought leave from the Court to file a motion to intervene in the Time-Based Damages briefing. (ECF No. 5141). Mr. Kirby sought this relief on behalf of two groups of clients: (i) defendants in avoidance actions filed by the Trustee who did not file claims in the BLMIS liquidation (the "Non-Claimants"); and (ii) defendants in avoidance actions filed by the Trustee who submitted claims to the Trustee but did not object to the determination thereof (the "Non-Objectors"). The Non-Claimants and the Non-Objectors have successfully sought the removal of their avoidance actions to the District Court for the Southern District of New York (the "District Court").

The Trustee opposed the request, by letter dated December 12, 2012 with respect to the Non-Claimants and proposed addressing the standing of the Non-Objectors in this Reply

300287882

Memorandum. (ECF No. 5184). This Court denied the request for leave sought by the Non-Claimants (ECF No. 5185) and they have appealed this decision to the District Court.

As the Trustee stated in his December 12 letter, the Non-Objectors, who filed claims but failed to object to the Trustee's notices of claim determination, have no right to participate in these proceedings. On December 23, 2008, this Court entered a claims procedure order specifying the procedures for filing, determining and adjudicating customer claims (the "Claims Procedure Order") (ECF No. 12). The Claims Procedure Order provides that unless the claimant files an opposition to the Trustee's determination of the claim "within thirty (30) days of the date on which the Trustee mails his determination to the claimant," then "the Trustee's determination shall be deemed approved by the Court and binding on the claimant." *Id.* at 7. Accordingly, the Trustee's determination of the Non-Objectors' claims is final, although they may benefit from any adjustment to net equity should one be ordered by the Court. But the Non-Objectors failed to preserve their rights to participate in this proceeding.[13] Though they themselves cannot participate in this Motion, because their counsel also represents valid objectors, both net winners and net losers, the interests of the Non-Objectors will be well-represented and any position that they would take regarding any enhancement to net equity has and will be articulated and heard.

In addition, certain Claimants will not be economically impacted by the Court's determination of this issue. There is no potential Time-Based Damages adjustment that could result in certain Claimants receiving a distribution. Thus, consistent with this Court's Order

---

[13] However, as noted in determination letters sent by the Trustee to those who filed customer claims, should the Trustee be required to make any adjustment to net equity, it will apply to all claimants with valid claims.

300287882

regarding standing for Non-Claimants, these individuals and entities lack standing to participate in this matter.[14]

## CONCLUSION

For all of the reasons set out above and in the Trustee's Opening Brief, the Trustee's Motion should be granted. The Trustee respectfully requests that the Court uphold the Trustee's determination that net equity should be calculated based upon the Trustee's Net Investment Method, without any adjustments for Time-Based Damages.

Dated: New York, New York
        July 18, 2013

By: */s/ David J. Sheehan*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

---

[14] Certain other Claimants have raised issues in their objections that are irrelevant or beyond the scope of this Motion, *see, e.g.*, ECF No. 5118, which this Court has defined narrowly as "whether the Objecting Claimants are entitled to time-based damages adjustments to their net equity customer claims to be paid from the fund of customer property." Scheduling Order 4, Sept. 5, 2012, ECF No. 5022. Consequently, the Trustee has limited his briefing to this issue and will not address extraneous issues raised, such as the starting date of the fraud, whether securities were ever actually purchased and factual issues regarding specific accounts.

23