**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
dsheehan@bakerlaw.com
Karin Scholz Jenson
kjenson@bakerlaw.com
Edward J. Jacobs
ejacobs@bakerlaw.com
Sarah Jane T.C. Truong
struong@bakerlaw.com

| | |
|---|---|
| Hearing Date: | September 17, 2013 |
| Hearing Time: | 10:00 a.m. |
| Objection Deadline: | August 14, 2013 |
| Reply Deadline: | August 28, 2013 |

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively*
*Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |

**TRUSTEE'S AMENDED MOTION FOR AN ORDER:**
**(I) ESTABLISHING PROCEDURES FOR THIRD-PARTY DATA ROOMS; AND**
**(II) MODIFYING THE JUNE 6, 2011 LITIGATION PROTECTIVE ORDER**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff" and together with BLMIS, the "Debtors"), by and through his undersigned counsel, pursuant to, *inter alia*, section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 7016, 7026 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby submits his amended motion for: (I) an Order Establishing Procedures for Third-Party Data Rooms; and (II) an Order Modifying, in limited fashion, the Litigation Protective Order, dated June 6, 2011 [ECF No. 4137] (the "Amended Motion").

The Trustee has engaged in discovery in a number of cases and, as detailed below, the Trustee's experience in those cases demonstrates why the Third-Party Data Rooms are critical to facilitate efficient and cost-effective discovery and to minimize discovery disputes relating to third-party documents. The Trustee, the defendants, and third parties who, pursuant to Bankruptcy Rule 2004 subpoenas or in discovery in the adversary proceedings, produce documents to the Trustee or are examined or deposed by the Trustee (the "Producing Parties") all would benefit from a more streamlined procedure that addresses all parties' concerns regarding completeness of production, costs, and confidentiality and privacy of sensitive information. The Trustee's Amended Motion and proposed Orders seek to address these issues as well as the concerns raised in the objections filed relating to the prior motion seeking similar relief.

In support of the Amended Motion, the Trustee respectfully states as follows:

## I. JURISDICTION

This Court has jurisdiction to consider the Amended Motion pursuant to 28 U.S.C.

§§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. PROCEDURAL BACKGROUND

On August 5, 2011, the Trustee filed a motion (the "Original Motion") seeking to

establish a uniform framework under the June 6, 2011 Litigation Protective Order [ECF No.

4290] (the "Litigation Protective Order") for dealing with discovery in a fair, efficient and

reasonable manner in these vast and complex proceedings. The Trustee requested entry of: (I) a

report and recommendation to the District Court for the appointment of Special Discovery

Masters; (II) an Order expanding the Case Management Procedures approved by the Court on

November 10, 2010 [ECF No. 3140], granting access to the Trustee's existing electronic data

room to additional defendants and establishing procedures for the creation of a separate

electronic data room for documents produced to the Trustee; and (III) an Order modifying, in

limited fashion, the Litigation Protective Order, dated June 6, 2011 [ECF No. 4137], including

superseding all individual confidentiality agreements between the Trustee and any parties.[1]

Only fifteen (15) objections were filed to the Trustee's Original Motion by Producing

Parties (the "Objecting Parties"). None contained objections to the Trustee's request for an

Order expanding the Case Management Procedures approved by the Court on November 10,

2010 [ECF No. 3140], to grant access to the Trustee's existing electronic data room to

---

[1] All terms not defined herein shall have such meanings as ascribed to them in the Original Motion.

This Amended Motion supersedes the Original Motion, and the Trustee respectfully requests that the Court grant the relief requested in this Amended Motion.

defendants in non-Avoidance Actions.[2]  The Trustee resolved concerns that were communicated

to the Trustee relating to E-Data Room 1[3] and, as a result, filed a Notice of Presentment of

Proposed Order Establishing Expanded Access to Electronic Data Room 1 to the Court on

January 4, 2012 [ECF No. 4613].  No objections were filed, and on January 12, 2012, the Court

entered an Order Establishing Expanded Access to Electronic Data Room 1 [ECF No. 4624].

In an attempt to resolve concerns raised by the small number of Objecting Parties relating

to the Trustee's requests for entry of an Order establishing procedures for the creation of a

second electronic data room and an Order modifying, in limited fashion, the Litigation Protective

Order, the Trustee's counsel conferred in good faith and on numerous occasions with opposing

counsel and compromised on several issues that addressed many of the concerns raised.  As

stated in the Trustee's Reply [ECF Nos. 4426, 4427] to objections to the Motion, many of the

concerns raised were addressed in the revised proposed Orders attached to the Trustee's Reply.

After the submission of the Reply, the Trustee continued to confer with opposing counsel

and resolved the overwhelming concerns of the Objecting Parties.  The resolutions reached with

the Objecting Parties who withdrew their objections were reflected in revised proposed Orders

that were submitted to the Court on December 16, 2011.  On December 21, 2011, the Court held

a conference in Chambers.  In recognition of the procedural posture of many of the Trustee's

adversary proceedings, in particular, the pending motions to withdraw the reference on various

legal issues before the District Court, it was determined that the proposed orders concerning the

creation of a third-party electronic data room was not ripe at that time.  Instead, the Trustee

---

[2] "Avoidance Actions" are defined as actions seeking solely fictitious profits in which a Notice of Applicability was filed pursuant to the Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order, dated November 10, 2010 [ECF No. 3141].

[3] E-Data Room 1 includes documents relating to:  (1) BLMIS's insolvency; and (2) BLMIS's fraud.  [ECF No. 4624]

submitted a more limited motion seeking the Order Establishing Expanded Access to Electronic Data Room 1 [ECF No. 4624]. The Court has not ruled on the full scope of the Original Motion.[4]

The time has now come to revisit the establishment of an additional electronic data room. Specifically, the District Court has now ruled on most of the issues raised in the motions to withdraw the reference on various legal issues, and any remaining rulings are expected shortly. As such, the Trustee anticipates that discovery is imminent in most of the adversary proceedings in which motions to withdraw the reference were filed.

In this Amended Motion, the Trustee respectfully requests this Court enter: (1) an Order establishing procedures for electronic data rooms (the "Third-Party Data Rooms") to house certain documents received by the Trustee, transcripts of examinations conducted pursuant to Bankruptcy Rule 2004, and transcripts of depositions conducted in litigation (attached hereto as Exhibit A); and (2) an Order modifying, in limited fashion, the Litigation Protective Order in order to facilitate the establishment and use of the Third-Party Data Rooms (attached hereto as Exhibit B).[5]

---

[4] As of December 21, 2011, only two objections to the Original Motion remained unresolved—MUUS Independence Fund LP and Michael W. Sonnenfeldt (collectively, "MUUS") and Bank of America refused to withdraw their objections. However, Bank of America's objection has been addressed in the revised proposed Orders submitted in connection with this Amended Motion—third parties to discovery disputes are removed from any cost-sharing. MUUS's objection that Avoidance Action defendants would not have access to the Third-Party Data Rooms is irrelevant in that the Third-Party Documents are largely irrelevant to the claims and defenses at issue in Avoidance Actions.

In addition, counsel for defendants in *Picard v. Merkin* (namely, Mr. Merkin and Gabriel Capital Corporation (the "Merkin Defendants")) appeared at the conference in chambers on December 21, 2011, despite not having filed an objection to the Original Motion. The Merkin Defendants failed to articulate their specific concerns either during the chambers conference or in discussions with the Trustee after the chambers conference.

[5] Given the size and scope of discovery in this case, the Court permitted the Trustee to establish "electronic data rooms" to facilitate the production of documents which involve numerous parties and various discovery-related issues. *See* Order Establishing Litig. Case Mgmt. Procedures for Avoidance Actions and Amending the Feb. 16, 2010 Protective order, Nov. 10, 2010 [ECF No. 3140]. In addition to the existing E-Data Room 1 and the Third-

In advance of filing this Amended Motion, the Trustee provided a copy of a draft version of this Amended Motion to counsel for a majority of the Objecting Parties,[6] and this Amended Motion reflects and incorporates input the Trustee received from these Objecting Parties. As a result of those discussions, these Objecting Parties do not oppose the relief requested in this Amended Motion.

### III.  RELIEF SOUGHT

Because of the thousands of parties and non-parties involved, and the sheer volume of discovery produced and to be produced, these adversary proceedings are far more complex than the typical liquidation and their related cases. More than 16,000 SIPA customer claims have been submitted to the Trustee, seeking to recoup some portion of their lost investment. The Trustee initiated more than 900 adversary proceedings, seeking to recover customer property. In order to manage discovery in the over 900 adversary proceedings involving close to 5,000 defendants, in addition to third parties who are not defendants in those actions, and encompassing millions of documents, the Trustee respectfully seeks the following:

First, the Trustee seeks the establishment of Third-Party Data Rooms pursuant to the procedures set forth in Exhibit A and outlined below. Second, in order to streamline the process

---

Party Data Rooms that are the subject of this motion, the Trustee reserves the right to seek additional data rooms in the future.

[6] The Trustee has negotiated with the following counsel for Objecting Parties in connection with this Amended Motion, and each of the following have consented to the proposed Orders, without waiving any defenses regarding personal jurisdiction: Cleary Gottlieb Steen & Hamilton LLP (on behalf of Citibank, N.A., Citicorp North America, Inc., Citigroup Global Markets Limited, Citi Hedge Fund Services Ltd., Citibank (Switzerland) AG, and Citivic Nominees Ltd.; Thybo Asset Management Limited and Thybo Stable Fund Ltd.; HSBC Bank plc, HSBC Holdings plc, HSBC Securities Services (Luxembourg) S.A., HSBC Fund Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, HSBC Bank Bermuda Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Securities Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Bank (Cayman) Limited, HSBC Private Banking Holdings (Suisse) S.A., HSBC Private Bank (Suisse) S.A., Somers Dublin Limited, Somers Nominees (Far East) Limited); Skadden, Arps, Slate, Meagher & Flom LLP (on behalf of UniCredit S.p.A.); Wachtell, Lipton, Rosen & Katz (on behalf of JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd.); and Gibson, Dunn & Crutcher (on behalf of UBS AG).

for providing notice to the Producing Parties that their confidential documents have been

requested and to facilitate the establishment and use of the Third-Party Data Rooms, the Trustee

also seeks a limited modification to the Litigation Protective Order (attached hereto as Exhibit

B).

      A.    <u>Limited Modification of the Litigation Protective Order</u>

Paragraph 12 of the Litigation Protective Order sets forth the procedures whereby a party

receiving confidential material must provide notice to the Producing Party if the Producing

Party's confidential documents have been requested for further disclosure by the receiving party.

As to Paragraph 12, the Trustee requests that it be modified as set forth below and in the attached

proposed Order.  The notification procedures set forth in detail below would streamline the

process for providing Producing Parties notification that their confidential documents have been

requested for production.

Paragraph 2 of the Litigation Protective Order specifies what material may be designated

as confidential.  Paragraph 19 provides that individual confidentiality agreements apply to

documents produced to the Trustee prior to entry of the Litigation Protective Order.  As to

Paragraph 19, the Trustee requests that it be modified to reflect that any individual

confidentiality agreements between the Trustee and any Producing Party with language

("Individual Confidentiality Standard") that differs from Paragraph 2 of the Litigation Protective

Order will continue to control confidentiality designation of documents produced to the Trustee

prior to the date of the Litigation Protective Order, so long as the Producing Parties follow the

procedures specified in the next paragraph (and in Paragraph 10 of the Order attached hereto as

Exhibit A and Paragraph I of the Order attached hereto as Exhibit B).  However, in all other

aspects, the Litigation Protective Order will control.

Producing Parties may request that their Individual Confidentiality Standard continue to control the designation of documents produced to the Trustee prior to the entry of the Litigation Protective Order.  Such request must be submitted in a letter to Baker & Hostetler LLP, counsel for the Trustee, at MadoffDataRooms@bakerlaw.com, within thirty (30) days from entry of Orders substantially in the form of Exhibits A and B attached hereto.  The letter must:  1) attach the relevant confidentiality agreement; 2) identify the relevant language in the individual confidentiality agreement (i.e., the Individual Confidentiality Standard); and 3) identify the documents, by beginning Bates production number, produced and designated as confidential prior to the date of the Litigation Protective Order pursuant to the individual confidentiality agreement (and not subsequently de-designated).  If such a letter is submitted, the Individual Confidentiality Standard will govern the designation of the identified documents.  If such a letter is not submitted to the Trustee within thirty (30) days from entry of Orders substantially in the form of Exhibits A and B attached hereto, then Paragraph 2 of the Litigation Protective Order will govern.[7]

With respect to the Third-Party Data Rooms, the Third-Party Confidential Data Room will contain a full text field that provides the Individual Confidentiality Standard for each document, where relevant.  Any productions out of the Third-Party Confidential Data Room will contain a load file that includes this full text field.  In addition, a user manual for the Third-Party Data Rooms will, in an appendix, include a full list of Producing Parties whose documents are governed by Individual Confidentiality Standards and the Individual Confidentiality Standard is that applies to that Producing Party's documents.

---

[7] The Trustee and a Producing Party may agree to a reasonable limited extension to the thirty-day time period, if the Producing Party demonstrates circumstances that warrant an extension.

B.     Procedures for the Third-Party Data Rooms

The Trustee will create two Third-Party Data Rooms—one data room to contain non-confidential Third-Party Documents (the "Third-Party Non-Confidential Data Room") and a second data room to contain confidential Third-Party Documents (the "Third-Party Confidential Data Room").  Non-confidential Third-Party Documents will be viewable and searchable in the Third-Party Non-Confidential Data Room.  Confidential Third-Party Documents will be searchable, but not viewable, in the Third-Party Confidential Data Room.

The Third-Party Data Rooms will contain the following:  (i) all documents produced to the Trustee in response to Bankruptcy Rule 2004 subpoenas (the "Rule 2004 Documents"); (ii) documents produced to the Trustee voluntarily; (iii) documents produced to the Trustee in actions where discovery has commenced, in response to discovery requests served on defendants pursuant to Federal Rules of Civil Procedure, including Federal Rules of Civil Procedure 26, 30, 33, 34, and 36, made applicable by Bankruptcy Rules 7026, 7030, 7033, 7034, and 7036, or in response to subpoenas served on non-parties to those action pursuant to Federal Rule of Civil Procedure 45, made applicable by Bankruptcy Rule 9016 (collectively, the "Litigation Documents"); (iv) transcripts of parties examined pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Examinations"); and (v) transcripts of parties and non-parties deposed in litigation (the "Litigation Depositions") (collectively, the "Third-Party Documents").

The following documents will not be included in the Third-Party Data Rooms:  (i) documents provided to the Trustee in connection with hardship applications; (ii) documents provided to the Trustee with restrictions on use and/or disclosure in connection with possible settlement and/or mediation; (iii) documents subject to or controlled by a domestic or foreign court order; (iv) those documents that, due to contractual obligations, are no longer under the

care, custody or control of the Trustee; (v) documents produced to the Trustee in discovery in the

Avoidance Actions; (vi) exhibits to Rule 2004 Examinations and Litigation Depositions, which

will be provided in the Third-Party Data Rooms as they were originally produced to the Trustee;

and (vii) documents or data identified as being a record of Cohmad Securities Corporation

("Cohmad"), a company that shared office space with BLMIS, and/or where the original

custodian identified was a Cohmad employee.

Access to the Third-Party Data Rooms will not be provided in the Avoidance Actions.

Access to the Third-Party Data Rooms will only be provided to attorneys of record for

defendants in the non-Avoidance Actions ("Outside Litigation Counsel") with whom the Trustee

is engaged in active discovery under Bankruptcy Rule 7026 after the execution of a non-

disclosure agreement.   Defendants will bear the costs of:  (i) the software licenses for any users

having access to the Third-Party Data Room; and (ii) production of documents out of the Third-

Party Data Rooms, which amount to copying costs ordinarily taxed to a requesting party under

Federal Rule of Civil Procedure 34(a).  Outside Litigation Counsel may also request electronic

productions of documents in text-searchable format.

Producing Parties will be provided access to the Third-Party Confidential Data Room for

the limited purposes of providing consent to the disclosure of confidential documents requested

or to object to the disclosure of confidential documents.  Producing Parties will provide the

Trustee the name of up to three designated representatives per Producing Party, each of whom

may receive credentials to access the Third-Party Confidential Data Room, for this purpose

within thirty (30) days of entry of the Order attached hereto as Exhibit A.  The Trustee will bear

the costs of the software licenses for one designated representative for each Producing Party who

is not a defendant in an action brought by the Trustee.  Within seven (7) days of entry of an

9

Order in substantially the form of Exhibit A attached hereto, the Trustee will provide Producing Parties who have already produced documents subject to this Order as of the date of its entry with instructions on how to designate their representative(s) via an electronic portal, including how to substitute designated representatives.[8]  The Trustee shall not be obligated to provide notice to any Producing Party who does not designate a representative within thirty (30) days after entry of the Order attached hereto as Exhibit A.  To the extent any technical issues result in Producing Parties being unable to access the electronic portal during the thirty-day period for designating representatives, the thirty-day period following entry of the Order attached hereto as Exhibit A for designating representatives will be extended for a time period commensurate with the time period in which the electronic portal is not accessible.

Documents designated as confidential as of the date of the entry of this Order will be placed in the Third-Party Confidential Data Room.[9]  Placement of confidential documents in or production of confidential documents from the Third-Party Confidential Data Room does not disturb the confidential designation of the materials, unless the Trustee or Outside Litigation Counsel has specifically requested such relief.  Any Outside Litigation Counsel receiving documents via the Third-Party Data Rooms must redact any personally identifiable information ("PII") to the extent required by Bankruptcy Rule 9037 and applicable law.

When Third-Party Documents are added to the Third-Party Data Rooms (i.e., documents fit the criteria set forth above for inclusion in the Third-Party Data Rooms), Outside Litigation Counsel with access to the Third-Party Data Rooms will receive notice.  By making the Third-

---

[8] With respect to documents produced after entry of the Order attached hereto as Exhibit A, designation of representatives for Producing Parties shall be in accordance with Paragraph 13 of the Order attached hereto as Exhibit A.

[9] If documents are de-designated pursuant to a court order or an agreement of the Producing Party so designating the documents, then those de-designated documents will be placed in the Third-Party Non-Confidential Data Room.

Party Documents available to defendants in non-Avoidance Actions through their Outside

Litigation Counsel, the Trustee will have satisfied his obligations under Federal Rules of Civil

Procedure 26 and 34 to make documents available to defendants in non-Avoidance Actions.

Counsel for the Trustee will not be liable for any technical issues concerning the data

room caused by technical constraints, errors, or malfunctions beyond the Trustee's control.  Any

inadvertent disclosure resulting from technical constraints, errors, or malfunctions will not be

construed as a waiver of any Producing Party's rights, and such documents will be subject to

clawback.

With respect to documents produced after the entry of the Orders attached hereto as

Exhibits A and B, upon production, Producing Parties shall provide the following information in

a production cover letter, to the extent any of the following information is applicable:  (i) the

documents (listed in an Excel file document-by-document by Beginning Bates and Ending Bates

for each document) that are designated as confidential pursuant to the Litigation Protective

Order; (ii) the documents (listed in an Excel file document-by-document by Beginning Bates and

Ending Bates for each document) that are designated confidential pursuant to an Individual

Confidentiality Standard, if applicable pursuant to Paragraph 10 of the Order attached hereto as

Exhibit A and Paragraph I of the Order attached hereto as Exhibit B; (iii) the documents (listed

in an Excel file document-by-document by Beginning Bates and Ending Bates for each

document) that should be excluded from the Third-Party Data Rooms pursuant to Paragraph 4 of

the Order attached hereto as Exhibit A; and (iv) the designated representative authorized for that

production to provide consent to the disclosure of confidential documents requested or to object

11

to the disclosure of confidential documents.[10]  Failure to provide such information in a

production cover letter shall result in a waiver by the Producing Parties to:  (i) any confidential

designations; (ii) any objections to inclusion of the documents in the Third-Party Data Rooms;

and/or; (iii) notification that documents have been requested for disclosure.  For the avoidance of

doubt, notwithstanding Paragraph 13 of the Order attached hereto as Exhibit A and Paragraph L

of the Order attached hereto Exhibit B, Paragraphs 7 and 14 of the Litigation Protective will still

apply with respect to:  (i) inadvertent failure to designate confidential material as confidential or

incorrect designations of confidential material (Paragraph 7 of the Litigation Protective Order)[11];

and (ii) inadvertent production or disclosure of any document or other material otherwise

protected by the attorney-client privilege, work product protection or a joint defense/common

interest privilege (Paragraph 14 of the Litigation Protective Order).[12]  The Trustee shall include

in the instructions accompanying any requests for documents (including any requests for the

production of documents or any subpoenas requesting documents from Producing Parties) the

language set forth in this Paragraph.

---

[10] Electronic productions containing documents designated as confidential shall also be accompanied by a database
load file containing a field identifying if a document has been designated confidential.

[11] Paragraph 7 of the LPO states in relevant part:

> "In the event that a producing party inadvertently fails to designate **CONFIDENTIAL
> MATERIAL** as **CONFIDENTIAL** or incorrectly designates **CONFIDENTIAL MATERIAL**,
> that party may make a late designation or change the designation by notifying in writing all parties
> to whom the **CONFIDENTIAL MATERIAL** has been disclosed . . . ."

[12] Paragraph 14 of the LPO states in relevant part:

> "The inadvertent production or disclosure of any document or other material (the "Inadvertent
> Production") otherwise protected by the attorney-client privilege, work product protection or a
> joint defense/common interest privilege shall not constitute or be deemed as a waiver or forfeiture
> of any such privilege or immunity . . . ."

Documents produced out of the Third-Party Data Rooms shall only be used by Outside Litigation Counsel for purposes of the non-Avoidance Actions, initiated by the Trustee, in which defendants are represented by Outside Litigation Counsel.

If a defendant in a non-Avoidance Action serves the Trustee with requests for production of documents that implicate Third-Party Documents, the Trustee will provide his responses and objections. The Trustee reserves the right to object to requests for access to the Third-Party Data Rooms based on relevance or other objections. The Trustee's objections may include any basis that would otherwise be available to object to the production of documents under the Federal Rules of Civil Procedure, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York, or any other applicable law or case law. Where appropriate and non-objectionable, the Trustee will direct Outside Litigation Counsel to the Third-Party Data Rooms. The Trustee and Outside Litigation Counsel will meet and confer regarding whether access to the Third-Party Data Rooms is warranted, including with regard to the scope of relevant documents in the Third-Party Data Rooms. Outside Litigation Counsel for such defendant may request access to the Third-Party Data Rooms. After sending the Trustee an executed non-disclosure agreement (the "NDA"), attached as Exhibit 1 to the Proposed Order Establishing Procedures for Third-Party Data Rooms, Outside Litigation Counsel for such defendant will be provided access to the Third-Party Data Rooms.

With respect to non-confidential Third-Party Documents, Outside Litigation Counsel may execute searches over and view any non-confidential documents in the Third-Party Non-Confidential Data Room. Outside Litigation Counsel may also request a production of documents out of the Third-Party Non-Confidential Data Room. An alert will be sent to the

13

designated representative(s) of the Producing Party(ies) whose non-confidential documents have been requested for production.

With respect to confidential Third-Party Documents, Outside Litigation Counsel may execute searches over the Third-Party Confidential Data Room.  Outside Litigation Counsel will be provided with Bates numbers for each document that results from their searches and the name of the Producing Party that corresponds to each document.  Outside Litigation Counsel may tag documents they would like to view.  An alert will be sent to the designated representative of the Producing Party(ies) whose confidential documents have been requested for viewing.

The Producing Party will have ten (10) business days to respond to the alert by selecting the documents to be released in the Third-Party Confidential Data Room.  The Producing Party may either approve or deny the release of its documents.

If the Producing Party approves the release of documents, the Producing Party's documents that have been approved for release will be released to the Outside Litigation Counsel requesting the documents.  If the Producing Party does not respond within the 10-business day time period, all of the Producing Party's documents that have been requested will be released to the Outside Litigation Counsel requesting the documents.  The Outside Litigation Counsel requesting the documents can then view the released documents and tag documents they would like produced out of the Third-Party Confidential Data Room.

If the Producing Party denies the release of any documents, those documents that have been denied will not be released.  The Producing Party and the Outside Litigation Counsel requesting the documents may negotiate regarding the release of the denied documents.  The denied documents will not be released to the Outside Litigation Counsel requesting the documents for viewing unless the Producing Party subsequently approves the release in the

14

Third-Party Data Room.  If the Producing Party continues to deny the release of its confidential

documents, the Outside Litigation Counsel requesting the documents may seek relief from the

Court, including moving the Court to compel disclosure.

[*INTENTIONALLY LEFT BLANK*]

The procedures for the Third-Party Non-Confidential Data Room are illustrated below:



The procedures for the Third-Party Confidential Data Room are illustrated below:



The Third-Party Data Rooms equitably balance the legitimate concerns of the Producing

Parties regarding confidentiality, the needs of defendants in non-Avoidance Action to access

relevant information to defend the adversary proceedings brought by the Trustee, and the

Trustee's obligations to make relevant information that he intends to rely upon available to

defendants in non-Avoidance Actions.  The Third-Party Data Rooms also will also reduce the

burdens on the Trustee, defendants, and non-parties in the non-Avoidance Actions, ensuring

efficient and cost-effective discovery involving the Third-Party Documents.  Accordingly, the

Trustee respectfully requests that the Court grant to the Trustee's relief and enter Orders

substantially in the form attached hereto as Exhibit A and Exhibit B.

## IV.  BASIS FOR RELIEF

Bankruptcy Code section 105(a) provides in relevant part that the "court may issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title."  11 U.S.C. §105(a).  The Bankruptcy Court has authority to approve the Order Establishing

Procedures for a Third-Party Data Room and the Order Modifying the June 6, 2011 Litigation

Protective Order.  *Id.*  Bankruptcy Code section 105(a) provides in relevant part that the "court

may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  *Id.*

> Section 105 specifically codifies what are traditionally called 'inherent powers' to
> give the Bankruptcy Courts the necessary ability to manage the cases on their
> docket.  It is imperative that courts have the necessary authority to manage the
> arguments and conduct of parties to ensure judicial efficiency and to do justice.
> These powers are 'necessary to the exercise of all others.'

*Johnson v. McDow (In re Johnson)*, 236 B.R. 510, 521 (D.D.C. 1999) (citations omitted); *see*

*also In re Walker*, 195 B.R. 187, 208 (Bankr. D.N.H. 1996) (noting the "inherent power of any

court to manage litigation pending before it"); Order in Aid of Confirmation, Pursuant to Section

18

105(a) and 105(d) of the Bankr. Code, Establishing Pre-Confirmation Process to Resolve Certain

Inter-Creditor Issues, *In re Adelphia Commc'n Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y.

Aug. 4, 2005), ECF No. 8044 (order approving electronic data rooms and case management

procedures pursuant to the court's equitable powers codified in Bankruptcy Code section

105(a)); Avoidance Action Discovery Procedures, *In re Enron Corp.*, No. 01-16034 (AJG)

(Bankr. S.D.N.Y. Nov. 18, 2004), ECF No. 22012 (same).

Federal Rule of Civil Procedure 16, made applicable by Bankruptcy Rule 7016, provides

the Court with considerable discretion to adopt and implement procedures that will aid in the

administration of the adversary proceedings.  For instance, Federal Rule of Civil Procedure

16(a), made applicable by Bankruptcy Rule 7016, in relevant part, authorizes courts to enter

orders for the purposes of:

> (1) expediting disposition of the action; (2) establishing early and continuing
> control so that the case will not be protracted because of lack of management;
> (3) discouraging wasteful pretrial activities; . . . [and] (5) facilitating settlement.

Federal Rules of Civil Procedure 26(b)(1) and 26(b)(2)(C), made applicable by Federal

Rule of Bankruptcy Procedure 7026, authorize the Bankruptcy Court, by order, to limit discovery

where, among other things, the discovery would create an undue burden or could be obtained in a

less burdensome manner.  Federal Rule of Civil Procedure 26(b)(2)(C), made applicable by

Bankruptcy Rule 7026, authorizes this Court to "limit the frequency or extent of discovery

otherwise allowed by these rules or by local rule if it determines that:  (i) the discovery sought is

unreasonably cumulative or duplicative, or can be obtained from some other source that is more

convenient. . . ."  Moreover, Federal Rule of Civil Procedure 34(b)(2)(E), made applicable by

Federal Rule of Bankruptcy Procedure 7034, authorizes the Court to establish procedures for

document production.

19

This Court has already permitted the establishment of E-Data Room 1. In addition, courts in the Bankruptcy Court for the Southern District of New York have entered orders establishing procedures for electronic data rooms in order to facilitate discovery of millions of pages of documents. *See, e.g.,* Order in Aid of Confirmation, Pursuant to Section 105(a) and 105(d) of the Bankr. Code, Establishing Pre-Confirmation Process to Resolve Certain Inter-Creditor Issues, *In re Adelphia*, No. 02-41729, ECF No. 8044; Avoidance Action Discovery Procedures, *In re Enron Corp.*, No. 01-16034, ECF No. 22012; *see also*, Order Establishing Litig. Case Mgmt. Procedures for Avoidance Actions and Amending the Feb. 16, 2010 Protective Order at Ex. A p. 4, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, ECF No. 3141 (authorizing Trustee to use electronic data rooms for production of documents in Avoidance Actions).

Courts have also approved the establishment of data rooms at the federal appellate level. *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F. 3d 30, 47 (1st. Cir. 2009). Indeed, the appellate court in *Nat'l Ass'n of Chain Drug Stores* explicitly noted in the class action context that the creation of a data room may streamline discovery in related lawsuits. *Id*. Moreover, the court noted that it was within the district court's authority to create a data room, since it protected the defendants against "duplicative discovery." *Id*. (emphasis added).

## V. ARGUMENT

A.    The Third-Party Data Rooms Will Streamline Discovery,
      Reduce the Burdens on All Parties, and Minimize
      Discovery Disputes With Respect to Third-Party Documents

Without the Third-Party Data Rooms, based on experience to date, counsel for the Trustee believes that a large portion of discovery would entail counsel for the Trustee negotiating

with various defendants over the search terms that would be used to cull information and

litigating issues relating to the scope of production.  With the Third-Party Data Rooms, the

defendants (through their Outside Litigation Counsel) can identify for themselves which

documents they would like produced and will reduce the likelihood of discovery disputes.  The

defendants (through their Outside Litigation Counsel) can decide the search terms or

methodology they will employ to search for relevant documents in the Third-Party Data Room.

The Third-Party Data Rooms are also the only feasible way to comply with the Trustee's

obligation to supplement his discovery responses as more cases enter into discovery.  In matters

where discovery has commenced, the Trustee has issued numerous requests for productions of

documents to defendants and numerous subpoenas to third parties in those litigations.  The

Trustee has also taken the depositions of several parties and non-parties to date.  The Trustee

continues to issue new requests, deposition notices, and subpoenas as discovery progresses.  The

number of documents that the Trustee has received to date via Rule 2004 subpoenas and in

discovery in active litigation exceeds five (5) million.  The Trustee has examined over 100

parties pursuant to Bankruptcy Rule 2004 and over twenty-five (25) parties and non-parties in

litigation.  The Third-Party Data Rooms will allow defendants (through their Outside Litigation

Counsel) access to additional Third-Party Documents as they are produced to the Trustee.

By making the Third-Party Documents available to defendants in non-Avoidance Actions

(through their Outside Litigation Counsel) via the Third-Party Data Rooms, the Trustee will have

satisfied his obligations under Federal Rules of Civil Procedure 26 and 34 to make documents

available to defendants in non-Avoidance Actions.  In *In re Adelphia*, the U.S. Bankruptcy Court

for the Southern District of New York entered an order establishing procedures for document

discovery that, in relevant part, provided procedures for the creation and maintenance of a virtual

data room similar to the one that the Trustee seeks.  *See* Order in Aid of Confirmation, Pursuant to Section 105(a) and 105(d) of the Bankr. Code, Establishing Pre-Confirmation Process to Resolve Certain Inter-Creditor Issues at 5-7, *In re Adelphia*, No. 02-41729, ECF No. 8044. District courts have also ordered that placing documents in a data room constituted production. *See e.g., In re Bridgestone/Firestone, Inc.*, 129 F. Supp. 2d 1207, 1213 (S.D. Ind. 2001) ("A party fully satisfies its obligation to produce documents to the parties to the Class Action Cases and the Personal Injury Cases by placing those documents in the Depository . . ."); Order Supplementing the Aug. 23, 2002 Order Re: Discovery Protocol and Scheduling, *In re Pac. Gas and Elec. Co.*, No. 01-30923 (DM) (Bankr. N.D. Cal. Oct. 4, 2002), ECF No. 10483 (order establishing physical data room because it was a sound and economical response to the logistical difficulties inherent in this multi-party contested matter).

Moreover, the Third-Party Data Rooms will give the Producing Parties greater control over the protection of their confidential information.  The Third-Party Documents are continually subject to Requests for Production of Documents made to the Trustee in other adversary proceedings.  Production of the Third-Party Documents is incredibly burdensome and expensive. As explained in the Original Motion, the Trustee was forced to embark on an arduous path after defendants in the *Picard v. Merkin* (Adv. Proc. No. 09-01182) (BRL) and *Picard v. Katz* (Adv. Proc. No. 10-05287) (BRL) actions requested documents produced by third parties.  The complexities of that undertaking have increased exponentially for the Trustee, the defendants, and the Producing Parties since the filing of the Original Motion, as more cases have entered into discovery.  The Trustee has made productions in the *Picard v. Maxam* (Adv. Proc. No. 10-05342) (BRL) and *Picard v. Friedman* (Adv. Proc. No. 10-05395) (BRL) cases, among others. The productions in those cases have been similarly burdensome and expensive, despite attempts

to limit productions by, for example, agreeing to limit productions to agreed-upon search terms. For instance, in the *Maxam* case, even though the Trustee and counsel for the *Maxam* defendants agreed upon search terms that were responsive to various requests for production, the Trustee was required to notice more than 40 Producing Parties regarding the production of their confidential documents.  The coordination of those letters alone, along with the various communications with Producing Parties regarding the need to produce their documents, was time consuming, costly to the estate, and burdensome.  Interestingly, in both the *Merkin* and *Maxam* cases, certain Producing Parties refused to allow the Trustee to produce their documents to defendants, and counsel for the Producing Parties and defendants conferred separately, without input from the Trustee – which is exactly the communication that the Third-Party Data Room will require and facilitate.

Many Producing Parties have received multiple notices from the Trustee in a short period of time for productions of documents requested by defendants in multiple adversary proceedings. In an attempt to reduce this burden on both the Trustee and the Producing Parties, the Trustee has spent considerable time and effort in attempting to persuade Producing Parties to de-designate their confidential documents. The Trustee has been successful in persuading some Producing Parties to de-designate documents that were improperly designated as confidential.  However, Producing Parties have been very hesitant to de-designate their confidential documents, as exemplified by the issues that arose with the Court in connection with the filings of the Trustee's oppositions to various motions to dismiss in *Picard v. UBS AG* (Adv. Proc. No. 10-04285) (BRL), *Picard v. UBS AG* (Adv. Proc. No. 10-05311) (BRL), and *Picard v. Defender Ltd.*, (Adv. Proc. No. 10-05229) (BRL).

The Third-Party Data Rooms will provide defendants with a level playing field and

access to the documents in the possession of the Trustee and will reduce the costs to all parties

and third parties.

        B.    <u>PII Will Be Adequately Protected From Disclosure</u>

        In order to decrease the burdens on all parties and non-parties in the adversary

proceedings, the Trustee has requested that Producing Parties de-designate their documents that

contain PII.  As a compromise, the Trustee has offered to redact any PII prior to production of

documents to defendants.  In addition, in an abundance of caution, the Trustee has attempted to

redact PII from documents prior to production to defendants.  However, the redaction of PII

requires page-by-page review of millions of documents, which requires hundreds of hours of

attorney time and costs millions of dollars, a very costly burden on the estate.

        Placement of the Third-Party Documents in the Third-Party Data Rooms without

requiring the Trustee to redact PII complies with relevant rules and regulations.  Documents

containing PII will be adequately protected in two ways:  (i) access to the Third-Party Data

Rooms will be limited to Outside Litigation Counsel; and (ii) prior to filing, use, or disclosure of

documents, defendants will redact PII.  Requiring defendants to redact PII from documents they

retrieve from the Third-Party Data Rooms is consistent with the plain language of Bankruptcy

Rule 9037, which puts the onus on "a party or nonparty making the filing" to redact PII.  Fed. R.

Bnkr. P. 9037(a).

        C.    <u>Allocation of Costs of Production is Proper</u>

        It is also proper to allocate the production costs of downloading and printing documents

from the Third-Party Data Rooms, as such costs are analogous to fees for copying documents,

which are ordinarily borne by the party seeking production.  *Zubulake v. UBS Warburg LLC*, 216

F.R.D. 280, 283 (S.D.N.Y. 2003) (citing Fed. R. Civ. Pro. 34(a) for the proposition that the

producing party's photocopying costs "of course, will be paid by" the requesting party).  *See also, N. Natural Gas Co. v. Approx. 9117.53 Acres in Pratt, Kingman and Reno Counties, Kan.*, No 10-Civ.-1232, 2012 WL 1108547, at *5 (D. Kan. March 31, 2012) (the court noted that "in order to minimize the cost of production" of the information requested in the document request, plaintiff only had to collect the materials in a central data room, and the defendant would then review the materials and mark documents which they wished to have copied, with the requesting party paying for any copies).

Moreover, allocation for production costs and redaction of PII is not unprecedented in the Bankruptcy Courts.  Indeed, the United States Bankruptcy Court for the Northern District of Ohio recently entered an Order (without opinion) establishing an electronic data room and requiring, *inter alia*, that these same burden and costs be shifted to the requesting parties.  Order Authorizing the Trustee to Use Estate Prop. Under 11 U.S.C. § 363 for the Operation of an Elec. Data Room, *In re Fair Fin. Co.*, No. 10-50494 (Bankr. N.D. Ohio July 12, 2012), ECF No. 997. In *Fair Finance*, the bankruptcy judge approved the allocation of the costs of maintaining the Data Room and of production from the Data Room as set forth in the Trustee's motion papers in an effort to "avoid an undue burden upon the estate."  *Id*. at 1.  The specific relief requested in the trustee's Motion for a Data Room was incorporated into the Court's Order.  *Id*.  The relief, in relevant part, included:

1.    That the defendants will bear their own software licensing costs, as they should not be able to charge as many attorneys as they would like per month to the estate.

2.    The defendants will bear their own costs for any services they request from [the vendor], such as having [the vendor's] technicians run searches for them.

3.    The defendants will bear their own costs for the documents produced to them.  [The vendor] charges 1 cent per page to bates-label TIFF

documents, 2 cents per page for optional optical character recognition, and 3 cents per page to bates-label documents that must be converted to TIFF images, plus the cost of the medium that the data is produced to them on ($250 per hard drive, $25 per CD, and $35 per DVD).

4.      If a defendant selects a document for production, the defendant is responsible for redacting any information which must be redacted, such as personally identifiable information or HIPAA-protected information.  The [software] program has a user-friendly redaction tool which will allow the defendant's reviewers to redact any sensitive information from documents before requesting that the Trustee produce the document.

Trustee's Application for an Order (1) Authorizing the Trustee to Use Estate Prop. Under 11 U.S.C. § 363 to Maintain an Elec. Data Room for Purposes of the Adversary Proceedings Related to the Fair Fin. Bankr. (2) Establishing Procedures and Protocols for Providing Defendants in the Adversary Proceedings Access to the Data Room, and (3) Approving and Allocating the Costs of Maintaining the Data Room and of Prods. from the Data Room at 22-23, *Fair Fin. Co.*, No. 10-50494, ECF No. 989.  Accordingly, as set forth herein, the proposed allocation of discovery costs and burdens is warranted under modern case law precedent, the Order in the *Fair Finance* bankruptcy proceedings, and the particular facts of this case.

Given the administrative difficulty and delays in resolution of the cases that the Trustee would experience in handling production outside of the Third-Party Data Room, and the secure access to information the defendants in non-Avoidance Actions (through their Outside Litigation Counsel) would have based upon the Trustee's secure production in the Third-Party Data Rooms, it is appropriate for this Court, pursuant to its authority under Section 105(a) of the Bankruptcy Code and Fed. R. Civ. Pro. 26(b), to authorize the Trustee to establish the Third-Party Data Rooms with the procedures and terms described herein.

The Third-Party Data Rooms will also be in full compliance with Fed. R. Civ. Pro. 34. As directed by Rule 34, the Third-Party Data Rooms will be organized so that it will be easy for

26

defendants in non-Avoidance Actions (through their Outside Litigation Counsel) to see and

search new incoming productions.  This method of production is authorized by, and fully

consistent with the spirit of, Rule 34.  *See Rowlin v. Ala. Dep't of Pub. Safety*, 200 F.R.D. 459,

462 (M.D. Ala. 2001) (observing that under Rule 34, "it is up to the producing party to decide

how it will produce its records, provided that the records have not been maintained in bad faith").

D.     Modification of Paragraph 19 of the Litigation Protective Order is Appropriate

With respect to the request that the Paragraph 19 of the Litigation Protective Order be

modified as set forth above, the Objecting Parties who objected to the Original Motion on the

basis that their individual confidentiality agreements should not be superseded ultimately

withdrew their objections.  During negotiations between the Trustee and the Objecting Parties, a

compromise was reached whereby any Producing Party with a confidentiality agreement would

have the ability to request that language in the individual confidentiality agreement that differs

from Paragraph 2 of the Litigation Protective Order will continue to control confidentiality

designation of documents produced to the Trustee prior to the date of the Litigation Protective

Order, but that the Litigation Protective Order would control in all other aspects.

The Court and Producing Parties should take comfort that confidentiality and privacy

considerations will be adequately safeguarded for numerous reasons: (1) the proposed Orders do

not seek to impose new parameters involving the designation of documents as confidential and

will not disrupt current designations of documents as confidential; (2) the proposed Orders and

the Litigation Protective Order safeguards documents designated confidential; (3) only Outside

Litigation Counsel for defendants in non-Avoidance Actions will access the Third-Party Data

Rooms; (4) Producing Parties will have the ability to control who access their confidential

documents; and (5) attorneys who plan to use any document in a court filing are mandated by

27

relevant rules and regulations to redact for PII. *See Alpha Funding Group, Inc. v. Cont'l Funding*, 17 Misc. 3d 959, 968, 848 N.Y.S.2d 825, 833-34 (2007) (finding that confidentiality concerns are covered by the confidentiality agreement which allows for marking documents confidential, restricting their use to preparing for and conducting litigation, limiting disclosure to the court and certain designated "qualified persons," and requiring return of the documents at the conclusion of the litigation).

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that his Amended Motion be granted and that the Court grant the relief sought herein substantially in the form attached hereto as Exhibits A and B.

## NOTICE

Notice of this Amended Motion and proposed Orders have been provided by U.S. Mail, postage prepaid, or email to (i) all parties that have filed a notice of appearance in this case and in all adversary proceedings; (ii) SIPC; (iii) the SEC; (iv) the Internal Revenue Service; and (v) the United States Attorney for the Southern District of New York.

The Trustee will also provide by U.S. Mail, postage prepaid, or email, notice of this Amended Motion and proposed Orders to all of the Producing Parties immediately upon filing.

Dated: New York, New York
       July 24, 2013

BAKER & HOSTETLER LLP

By: */s/ David J. Sheehan*

       David J. Sheehan
       Karin Scholz Jenson
       Edward J. Jacobs
       Sarah Jane T.C. Truong

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and Bernard L. Madoff*

300272383