Adjourned Hearing Date: September 10, 2013
Adjourned Hearing Time: 10:00 A.M. EST

Richard A. Kirby
Laura K. Clinton
Martha Rodriguez Lopez
K&L GATES LLP
1601 K Street
Washington D.C. 20006
(202) 778-9000 (Telephone)
(202) 778-9100 (Facsimile)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |

## **CUSTOMER OPPOSITION TO TRUSTEE OBJECTION TO STANDING**

More than seven months ago, Claimants sought leave to intervene on a limited basis in the Trustee's Motion. Letter to Judge Lifland on behalf of Estate of Doris Pearlman, et al., with attachments, Dkt. No. 5141 (the "Intervention Motion"). As customers of Madoff Securities who filed timely proofs of claim, Claimants have a direct and cognizable interest in the method the Trustee uses to calculate their claims. As defendants in parallel adversary avoidance actions in which the Trustee bases his claims on the same computation methodology, Claimants have an additional and distinct interest in the effect the Court's ruling will have on their adversary

1

actions. Claimants have thus amply satisfied their constitutional standing to participate and be heard on the Trustee's Motion. Even absent constitutional standing, Claimants are entitled to intervene under Federal Rule 24 and its Bankruptcy Rule analogues under these circumstances.

Contrary to the Trustee's assertions, Claimants have not waived standing or their right to be heard on the Motion. *See* Reply Memorandum of Law in Support of Trustee's Motion for an Order Affirming Trustee's Calculations of Net Equity and Denying Time-Based Damages, Dkt. 5415 ("Tr. Reply"). Despite having seven additional months to oppose Claimants' request to intervene, the Trustee does not cite any legal authority for the proposition that Claimants should not be heard.[1]

### A. Claimants have Article III standing to participate in the Motion because the Court's ruling on the Trustees' Motion will impact their interests.

Claimants have constitutional standing and must be allowed to participate in the Trustee's Motion. Claimants have a direct economic stake in the manner in which the Court directs the Trustee to compute customer claims, and a compelling due process right to be heard in this contested proceeding. Specifically, the application of the Trustee's calculation methodology to the claims will cause an (1) injury in fact that is actual or imminent rather than conjectural or hypothetical; (2) the injury is "fairly traceable" to the conduct complained of (i.e., adverse adjudication of the pending motion); and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010*); Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560–61 (1992).

Disposition of the Trustee's Motion may, as a practical matter, impair or impede Claimants' right to protect their interests. First, the ongoing proceedings regarding the constant

---

[1] The Trustee's brief on standing is the first articulation of the Trustee's position on Claimants' standing. The Trustee did not oppose Claimants' December 2013 request to intervene. Instead, he deferred for later briefing the standing of customers with filed claims who had not formally objected to the Trustee's determination of their claim. Letter Response, Dkt. No. 5184, Jan. 3, 2013.

2

dollar adjustment of claims directly affects Claimants because the Trustee has used this methodology to deny their claims. The Trustee has also conceded that all claim determinations will be retroactively subject to the Court's order. *Picard v. Pearlman*, No. 10-4504, Dkt. 1 ("Determination Claim Letter") ("Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order.")

The Trustee claims that application of a Time-Based Adjustment would not result in a distribution from the estate to Claimants. This assertion is unsupported by evidence, and should not be given weight. Moreover, some Claimants – those with longstanding investments and only minimal withdrawals in excess of deposits – might be entitled to an affirmative net equity claim and recovery if a universal inflation adjustment were applied. However, even if the Trustee's assertion were true, the Trustee cannot fairly argue that an adjustment would not affect the parallel avoidance actions against the Claimants. The Trustee has asserted a direct link between the antecedent debt "value" issues and the issues in the present motion by arguing that an enhanced award would be inconsistent with his avoidance powers, and providing factual evidence of the prospective adjustment to the parallel avoidance actions. Tr. Br. 22-24; Rock Decl., Dkt. # 5041 at 4("[T]he Trustee has commenced avoidance actions against certain parties who withdrew more money from BLMIS than they deposited, and those parties have asserted defenses to the avoidance actions based upon, among other things, the amount of their deposits in BLMIS. I have determined that the differential between the total net winner balances under the

3

Net Investment Method and the balances for those same accounts after the Inflationary Adjustment would decrease by an amount equal to approximately $330 million.")

Second, Claimants have a separate and direct interest in the Motion because the Trustee also commenced avoidance actions against them and has claimed that the same methodology he used to calculate their claims should apply to determine their avoidance exposure. A determination that the Trustee must adjust his computation of customer claims thus could have a direct effect on the amount, if any, for which the Trustee would be able to seek avoidance in his parallel avoidance actions.[2] Because this recalculation might affect the amount subject to potential avoidance, thus materially changing the amounts for which Claimants may be liable, Claimants have another pecuniary interest that will be directly affected by the result of the Bankruptcy Court's ruling on the Trustee's Motion.

While the Trustee now asserts that he will oppose the extension of the Court's ruling here to the Claimants' avoidance actions, that position is contradicted by his earlier position on this motion and elsewhere.[3] In any event, the question of standing does not depend on the parties' likelihood of success in subsequent proceedings. A party has standing where the practical effect

---

[2] In support of his equitable argument against a constant dollar adjustment, the Trustee invited the Court to consider the impact that a constant dollar adjustment would have in the parallel avoidance actions. Tr. Br. at 22-24. The Trustee's witness computed the effect that a constant dollar adjustment would have on the avoidance actions. Rock Decl. at 4.

[3] The Trustee has asserted that net equity calculations affect all customers, since they form the basis of both the net equity claims and the avoidance actions. Trustee's Reply to Amicus Brief on "Reset to Zero" Methodology at 2, Civ. Case No. 11-3605 (JSR), Dkt. # 75 (Dec. 6, 2011) ("Unless the Net Investment Method is used to calculate both net equity claims and avoidance amounts of principal and fictitious profits, SIPA and the Bankruptcy Code would apply unequally to BLMIS accountholders and would contravene the Second Circuit Net Investment Ruling");. Trustee Mem. in Opp. to Consolidated Mem. of Law in Support of Mot. To Dismiss Regarding Antecedent Debt Issues, Civ. Case No. 11-3605 (JSR), Dkt. # 252 at 6 ("In SIPA liquidation such as this, 'value' is inextricably tied to the calculation of Defendants' net equity").In the Trustee's present motion, he concedes that an adjustment to the net equity computation for inflation or constant dollars <u>could</u> reduce the amount that he would otherwise recover in the avoidance actions. Tr. Br. at 27.

4

of a court order is a significant increase in the likelihood that the plaintiff will ultimately obtain relief that directly redresses its injury. *Utah v. Evans*, 536 U.S. 452, 463-64 (2002).

The Trustee has taken widely inconsistent positions on the linkage issue. He has directly tied the calculation of net equity to the Claimants' potential avoidance exposure. *In re Madoff Sec.*, No. 12-mc-0115-JSR (S.D.N.Y.), Dkt. No. 252 at pp. 6-7, Jul. 25, 2012 (Trustee's brief on antecedent debt: "The Net Equity Calculation . . . Fixes 'Value' As Principal Invested" and "'value' is inextricably tied to the calculation of [avoidance] Defendants' net equity . . . ."). Now he seeks to deprive Claimants of the right to be heard on this important issue by denying a potential connection. The Trustee cannot have it both ways.

In light of their clear standing and interests at stake, due process requires that Claimants be given a chance to be heard now in response to the Trustee's arguments. *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 528 (2d Cir. 1999) (denying parties with standing the right to seek redress for their alleged injuries would raise serious due process concerns.)

**B. Claimants have not waived their right to participate even though they did not file objections to the Trustee's determination pursuant to the Case Schedule.**

Whether the Claimants filed formal objections to the Trustee's determination of their claims is irrelevant. There is nothing in the Trustee's Determination Letter that can be construed as a knowing and voluntary waiver of the constitutional right to be heard on the computation of the claim or on the parallel issue of the amounts the Trustee seeks to avoid.[4] *Fuentes v. Shevin*, 407 U.S. 67, 94-95 n.31 (1972) (no waiver where the contractual language on its face did not amount to a waiver). The Determination Letter concedes that the Trustee's computation is not

---

[4] The Claim Determination Letter makes no reference to Claimants' rights under 11 U.S.C. § 502(j) and Local Rule 3002, which allow for the reconsideration of a claim for cause, and therefore Claimants cannot be said to have waived those rights either.

5

final until his methodology is approved by the Court, and assures Claimants that their claim will be subject to revision if the Court orders any adjustment. *See* Determination Claim Letter.

Likewise, Claimants' rights to be heard cannot be precluded by a Court Procedure Order that predated the articulation of the constant dollar issue. The Court Procedure Order was issued in December 2008, days after the filing of the SIPA petition. Dkt No. 12. In 2009, at the time of issuance of the Trustee's claim determination letters, the possibility of a constant dollar adjustment had not been raised by any party in the Madoff Securities proceeding, let alone been identified as one of the issues of interpretation of net equity. Nor did the Determination Letter inform Claimants that the Trustee would later file avoidance actions against them seeking to recover amounts computed using the same method. Indeed, the avoidance complaints against all of the Claimants were filed <u>after</u> the 30 days response period to the Determination Letter. *See, e.g.*, *Picard v. Pearlman*, No. 10-4504, Dkt. No. 1 (Attaching the Determination Claim, sent on June 3, 2010, as an Exhibit to an adversary proceeding complaint filed on November 2010).

While some customers later filed objections to their claim determinations on the basis that a constant dollar or inflation-based adjustment was necessary, the issue was formally raised for consideration when this Court scheduled the briefing on the net equity determination. *See* Order Scheduling Net Equity Briefing, Dkt. No. 457. As part of that briefing, the SEC took the position that the net equity computation needed to be adjusted for constant dollars, SEC Memorandum, Dkt No. 1052. Whether the Trustee needed to adjust the net equity determination for constant dollars was deferred by this Court and expressly reserved in the Second Circuit's 2011 net equity decision. *In re Bernard L Madoff Investment Securities LLC*, 654 F.3d 229, 234, n. 6 (2d Cir. 2011). Neither the Scheduling Order nor the Determination Letter should be read to

6

bar Claimants from participating in the first proceeding specifically directed to a determination of an issue vital to their rights as both Claimants and avoidance action defendants.

**C. Claimants have an independent right to intervene in the Motion pursuant to Bankruptcy Rules 2018 and 7024.**

Claimants have an independent right to intervene pursuant to Bankruptcy Rules 2018 and 7024 because prospective intervenors do not need to establish their own constitutional standing for intervention. *U.S. Postal Service v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978) ("Existence of case or controversy having been established as between [plaintiff and defendant], there was no need to impose the standing requirement upon the proposed intervenor."); *see also San Juan County, UT v. US*, 503 F.3d 1163,1171-72 (10th Cir. 2007) ("parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing"). As discussed in detail in Claimants' timely motion to intervene, Claimants amply satisfy the requirements of Bankruptcy Rules 2018(a) and 7024, and should be allowed to intervene as of right. Intervention Motion, Dkt. No. 5141, p. 9-19. Claimants have an interest in the calculation of their own customer claims, and also have a direct pecuniary interest in the potential corresponding reduction of the avoidance claims asserted against them by the Trustee. And while Claimants may be able to argue that the avoidance claims against them should be recomputed at a later date, they could be prejudiced by doing so against the potential precedent set by this Court in their absence. *Cf. Liquidators of Lehman Bros. Australia Ltd. v. Lehman Bros. Special Fin. Inc.*, 697 F.3d 74, 76-77 (2d. Cir. 2012) (holding that a bankruptcy court's denial of intervention was a final, appealable order because a bankruptcy court's order denying intervention that is "tantamount to a denial with prejudice" requires a pragmatic approach to ensure parties are not "foreclosed altogether from proceedings that they may be entitled to join"); *Natural Res. Def. Council v. Costle*, 561 F.2d 904,910 (D.C. Cir. 1977) ("it is not enough to deny intervention under 24(a)(2) because

[movants] may vindicate their interests in some later, albeit more burdensome, litigation."). Given the importance of the potential outcome of these proceedings, intervention would also preserve Claimants' rights to participate in any appeal that may follow the Court's ruling on the inflation adjustment issue.

The Trustee contends that other parties can adequately represent Claimants' interests, but the fact that counsel for some Claimants also represent clients who objected to the Determination Letter is no basis to deny intervention. Adequate representation is not determined by whether an existing party could or should represent petitioners, but whether the existing party's interests are "so similar to those of appellants that adequacy of representation [is] assured." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132-33 (2d Cir. 2001). Each Claimant is differently situated, has different personal circumstances and motivations and is entitled to be heard with respect to the Court's rulings. Counsel representing multiple clients cannot be deemed to represent the interests of absent parties expressly excluded from the Bankruptcy Court proceedings.

Alternatively, under Fed. R. Civ. P. 24(b), permissive intervention is appropriate because Claimants share a common question of law and fact with the Trustee's Motion, and there would be little or no additional burden to the Trustee – either in cost or delay – in permitting intervention. Fed. R. Civ. P. 24(b)(1)(B) (intervention is appropriate when intervenors have "a claim or defense that shares with the main action a common question of law or fact."); *see also Provident Bank v. Cmty. Home Mortgage Corp.*, 02-CV-5219 (DRH/JO), 2005 WL 1801654 at *10 (E.D.N.Y. July 28, 2005) (permissive intervention should be liberally granted, and was warranted when movant's claim and main action had common questions of law and fact arising from the same underlying fraud); *U.S.P.S.*, 579 F.2d at 191-92 (recognizing that permissive intervention is appropriate where "intervention will significantly contribute to full development

8

of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."). Denying intervention, however, could foreclose certain Claimants from having a full opportunity to be heard on this important issue.

## CONCLUSION

For the foregoing reasons, Claimants have constitutional standing and, alternatively, they are entitled to intervene, so that they may be heard on the constant dollar/inflation adjustment issue.

Dated: August 9, 2013
Washington, D.C.

Respectfully submitted,

K&L GATES LLP

By:  /s/ Richard A. Kirby
Richard A. Kirby
Laura Clinton
Martha Rodriguez-Lopez
1601 K Street, NW
Washington, DC 20006
(202) 778-9000 (telephone)
(202) 778-9100 (facsimile)
richard.kirby@klgates.com
laura.clinton@klgates.com
martha.rodriguezlopez@klgates.com

*Attorneys for the Customers identified on Schedule A as being represented by K&L Gates LLP*

LOEB & LOEB LLP

By:  /s/ Daniel B. Besikof
P. Gregory Schwed
Walter H. Curchack
Daniel B. Besikof
345 Park Avenue

9

        New York, NY  10154
        Tel:  (212) 407-4000
        Fax:  (212) 407-4990

*Attorneys for the Customers identified on Schedule A identified as being represented by Loeb & Loeb LLP*

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:    /s/ Elise S. Frejka
       Philip Bentley
       Elise S. Frejka
       Jason S. Rappaport
       1177 Avenue of the Americas
       New York, NY  10036
       Tel:  (212) 715-9100
       Fax:  (212) 715-8000

*Attorneys for the Customers identified on Schedule A identified as being represented by Kramer Levin Naftalis & Frankel LLP*