Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

Hearing Date:  October 16, 2013
Hearing Time:  10:00 a.m. (EST)
Objection Deadline:  October 7, 2013
Time:  4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TWELFTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
DECEMBER 1, 2012 THROUGH APRIL 30, 2013**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT .................................................................. 1

II.     BACKGROUND ...................................................................................... 5

        A.      THE SIPA LIQUIDATION ..................................................... 5

        B.      THE TRUSTEE, COUNSEL AND CONSULTANTS ....................... 6

        C.      PRIOR COMPENSATION ORDERS ............................................. 6

III.    SUMMARY OF SERVICES ..................................................................... 7

        A.      HARDSHIP PROGRAM ............................................................. 8

        B.      THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ........ 9

                i.       Recoveries Accomplished During The Compensation Period ............. 9

IV.     DETAILED DESCRIPTION OF SERVICES ................................................ 10

        A.      MATTER 01 ........................................................................ 10

                i.       Task Code 01: Trustee Investigation ...................................... 11

                ii.      Task Code 02: Bankruptcy Court Litigation ............................ 11

                iii.     Task Code 03: Feeder Funds .................................................. 13

                iv.      Task Code 04: Asset Research and Sale ................................... 14

                v.       Task Code 05: Internal Meetings with Staff ............................ 14

                vi.      Task Code 07: Billing and Trustee Reports .............................. 14

                vii.     Task Code 08: Case Administration ........................................ 15

                viii.    Task Code 09: Banks ............................................................ 16

                ix.      Task Code 10: Court Appearances .......................................... 16

                x.       Task Code 11: Press Inquiries and Responses .......................... 16

                xi.      Task Code 12: Document Review ............................................ 17

                xii.     Task Code 13: Depositions and Document Productions by the
                         Trustee ................................................................................ 17

                xiii.    Task Code 14: International ................................................... 17

                xiv.     Task Code 15: Charities ........................................................ 18

                xv.      Task Code 19: Non-Bankruptcy Litigation ............................. 18

                xvi.     Task Code 20: Governmental Agencies ................................... 19

                xvii.    Task Code 21: Allocation ...................................................... 19

        B.      MATTER 03 – CHAIS ........................................................... 21

        C.      MATTER 04 – MERKIN ......................................................... 22

# TABLE OF CONTENTS

(continued)

**Page**

D.  MATTER 05 – CUSTOMER CLAIMS ............................................................ 24

    i.  Customer Claims ............................................................................ 24

    ii.  General Creditor Claims .............................................................. 25

    iii.  The Trustee Has Kept Customers Informed Of The Status Of The Claims Process ............................................................................. 25

E.  MATTER 06 – VIZCAYA ......................................................................... 27

F.  MATTER 07 – MADOFF FAMILY ............................................................ 27

G.  MATTER 09 – FAIRFIELD GREENWICH ................................................. 31

H.  MATTER 11 – COHMAD SECURITIES CORPORATION ............................ 34

I.  MATTER 12 – PICOWER ......................................................................... 34

J.  MATTER 13 – KINGATE ......................................................................... 36

K.  MATTER 18 – THYBO ............................................................................ 38

L.  MATTER 21 – AVOIDANCE ACTION LITIGATION ................................... 39

M.  MATTER 26 – RICHARD STAHL .............................................................. 41

N.  MATTER 27 – JP MORGAN CHASE ........................................................ 43

O.  MATTER 28 – WESTPORT ...................................................................... 43

P.  MATTER 29 – RYE/TREMONT ............................................................... 44

Q.  MATTER 30 – HSBC ............................................................................... 46

R.  MATTER 32 – UBS/LIF .......................................................................... 47

S.  MATTER 33 – NOMURA INTERNATIONAL PLC ..................................... 48

T.  MATTER 34 – CITIBANK ........................................................................ 49

U.  MATTER 35 – NATIXIS ........................................................................... 50

V.  MATTER 36 – MERRILL LYNCH ............................................................ 52

W.  MATTER 37 – ABN AMRO ..................................................................... 52

X.  MATTER 38 – BANCO BILBAO .............................................................. 54

Y.  MATTER 40 – MEDICI ............................................................................ 55

Z.  MATTER 42 – EQUITY TRADING ........................................................... 56

AA.  MATTER 43 – DEFENDER ....................................................................... 56

BB.  MATTER 45 – LEVEY ............................................................................. 58

CC.  MATTER 46 – GLANTZ .......................................................................... 58

DD.  MATTER 52 – DONALD FRIEDMAN ........................................................ 59

# TABLE OF CONTENTS

(continued)

**Page**

EE.    MATTER 53 – MAGNIFY ................................................................................. 60

FF.    MATTER 54 – MENDELOW................................................................................. 63

GG.    MATTER 58 – PJ ADMINISTRATORS ............................................................ 63

HH.    MATTER 59 – STANLEY SHAPIRO.................................................................. 64

II.    MATTER 60 – AVELLINO & BIENES.............................................................. 65

JJ.    MATTER 61 – MAXAM ....................................................................................... 65

KK.    MATTER 62 – SUBSEQUENT TRANSFERS ................................................. 67

LL.    MATTER 65 – LEGACY........................................................................................ 68

MM.    MATTER 66 – LIEBERBAUM ............................................................................ 68

NN.    MATTER 72 – PLAZA .......................................................................................... 69

OO.    MATTER 73 – BNP PARIBAS ........................................................................... 70

V.    COMPENSATION REQUESTED ...................................................................... 71

VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ........ 75

VII.    CONCLUSION......................................................................................................... 77

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this twelfth application (the "Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing December 1, 2012 through and including April 30, 2013 (the "Compensation Period"); and (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period, and in support thereof, respectfully represents as follows:

## I.    **PRELIMINARY STATEMENT**

1.    The work completed by the Trustee and B&H during the Compensation Period yielded significant results for BLMIS customers and the liquidation. The District Court's words from almost two years ago are still apt. As recognized by the United States District Court for the

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

Southern District of New York (the "District Court"), the Trustee "has worked relentlessly over nearly three years to bring assets that passed through [BLMIS] back into the customer fund, in order to restore nearly $20 billion in customer losses." *Picard v. J.P. Morgan Chase & Co.*, 460 B.R. 84, 89 (S.D.N.Y. 2011). Through pre-litigation and other settlements, which were approved by this Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, approximately $9.34 billion as of April 30, 2013—approximately 53% of the principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.

2.      On October 5, 2011, the Trustee, with this Court's approval, distributed $311.854 million, or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to October 5, 2011 and through the end of the Compensation Period, an additional $189.365 million was distributed as catch-up payments, bringing the total first interim distribution amount to $501.219 million.[2]

3.      On September 19, 2012, the Trustee, with this Court's approval, distributed $2.479 billion, or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to September 19, 2012 and through the end of the Compensation Period, an additional $1.157 billion was distributed as catch-up payments, bringing the total second interim distribution amount to $3.637 billion.[3]

4.      On March 29, 2013, the Trustee, with this Court's approval, distributed approximately $506.227 million, or 4.721% of each BLMIS customer's allowed claim, unless

---

[2] Subsequent to the Compensation Period ending on April 30, 2013, an additional $1.169 million was distributed as catch-up payments, bringing the total first interim distribution amount to $502.387 million through September 23, 2013.

[3] Subsequent to the Compensation Period ending on April 30, 2013, an additional $8.52 million was distributed as catch-up payments, bringing the total second interim distribution amount to $3.645 billion through September 23, 2013.

the claim had been fully satisfied. Subsequent to March 29, 2013 and through the end of the Compensation Period, an additional $1.438 million was distributed, bringing the total third interim distribution amount to $507.666 million.[4] When combined with the approximately $501.219 million first interim distribution, the $3.637 billion second interim distribution and approximately $807.7 million of advances committed by the Securities Investor Protection Corporation ("SIPC"),[5] the Trustee has distributed approximately $5.453 billion to BLMIS customers through the end of the Compensation Period. This represents a significant milestone in this litigation, with 1,106 BLMIS accounts fully satisfied. The 1,106 fully satisfied accounts represent more than 50% of accounts with allowed claims.

5.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers. Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, see § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young

---

[4] Subsequent to the Compensation Period ending on April 30, 2013, an additional $1.199 million was distributed as catch-up payments, bringing the total third interim distribution amount to $508.864 million through September 23, 2013.

[5] SIPC committed to pay approximately $807.7 million through April 30, 2013 and approximately $808.7 million through September 23, 2013. The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

Conaway Stargatt & Taylor, LLP ("Young Conaway"), Greenfield Stein & Senior LLP ("Greenfield"), and La Tanzi, Spaulding & Landreth, P.C. ("La Tanzi"), and consultants, are paid out of administrative advances made by SIPC.  As this Court affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate."  Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

6.    As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for *pro rata* distribution to BLMIS customers whose claims have been allowed by the Trustee.

7.    In a liquidation proceeding such as this, where the general estate is insufficient to pay trustee compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration.  *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2).  SIPC has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered.  Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein.  Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

8.    During the hearing on the Eighth Interim Fee Application, this Court acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else

4

to follow all the trails and the trails do lead almost everywhere in the world.  It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

9.    No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008.  Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by litigating and settling cases for the return of customer property ("Customer Property").  Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his protection of Customer Property.  The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

10.    As this Court has recognized, "[w]ith respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest most complex sets of litigation that have come down the pike.  It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm or any organization to deal with."  Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

11.    The Trustee and B&H's prior interim fee applications, each of which is fully incorporated herein,[6] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

---

[6] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application")

## B.  THE TRUSTEE, COUNSEL AND CONSULTANTS

12.    The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

13.    In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

14.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

## C.  PRIOR COMPENSATION ORDERS

15.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

---

(ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); October 1, 2012 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); February 1, 2012 June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097); and July 1, 2012 to November 30, 2012 (the "Eleventh Interim Fee Application") (ECF No. 5333).

| Applications | Orders Entered[7] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[8] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | June 5, 2013 (ECF No. 5383) |

## III.    SUMMARY OF SERVICES

16.    A SIPA proceeding contemplates the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.  Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

---

[7] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258), to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee.  The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCA Creque, an additional $0.60 became due and owing to that firm.

[8] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

A.    **HARDSHIP PROGRAM**

17.    The Trustee and B&H implemented a Hardship Program in an effort to accelerate SIPA protection for BLMIS victims suffering hardship.  The first phase of this program is more fully described in prior interim fee applications.  Based on the information received, the Trustee did not sue approximately 250 individuals.

18.    The Trustee expanded the Hardship Program into a second phase at the time he commenced avoidance actions.  While the Trustee's authority includes the pursuit of avoidance actions to recover Customer Property, the Trustee has not pursued avoidance actions against BLMIS account holders suffering proven hardship.  In November 2010, the Trustee announced that, to forego an avoidance action, the account holder must submit financial and other pertinent information.  Through this program, the Trustee has worked with a substantial number of applicants to confirm their hardship status and dismissed defendants in avoidance actions.

19.    As of April 30, 2013, the Trustee had received 494 applications from avoidance action defendants relating to 313 adversary proceedings.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 196 Hardship Program applicants-defendants from avoidance actions.  As of April 30, 2013, there were 76 applications still under review and 222 that were resolved because they were either (i) withdrawn by the applicant, (ii) deemed withdrawn for failure of the applicant to pursue the application, (iii) denied for lack of hardship or (iv) referred for consideration of settlement.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

20.     The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of this hotline.

## B.     THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

### i.     Recoveries Accomplished During The Compensation Period

21.     Without the need for protracted litigation, during the Compensation Period, the Trustee succeeded in settling eighteen cases for $36,897,800.00.  As of April 30, 2013, the Trustee has successfully recovered approximately $9.34 billion.

22.     The Trustee entered into settlements subsequent to the Compensation Period that will bring an additional $56,197,711.99 into the Customer Fund.

23.     The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, could result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

24.     Through the end of the Compensation Period, the Trustee recovered $452,905,944.69 as a result of preference and other settlements that were made pursuant to agreements subject to the net equity dispute.  The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.  Due to the release from escrow of the funds received from the Tremont settlement, the Trustee filed a motion for the third allocation and distribution from the Customer Fund, which was granted by this Court on March 13, 2013.  Pursuant to this motion, the Trustee distributed approximately $507.7 million to customers with allowed claims through the end of the Compensation Period[9].

---

[9] Through September 23, 2013, the Trustee has distributed $508,864,383.75 in connection with the third allocation and distribution from the Customer Fund.

## IV.    DETAILED DESCRIPTION OF SERVICES

25.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims.  The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

26.    Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

27.    Matter Numbers 03-73 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.[10]  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

### A.    MATTER 01

28.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

---

[10]  Reserved and closed matter numbers will not be listed in this Application.  Matter numbers reserved or closed during prior compensation periods can be found in the respective interim fee applications.

### i.      Task Code 01: Trustee Investigation

29.      This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

30.      The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA. In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

31.      During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS. B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties, as well as continued the investigation of Madoff Securities International Ltd. ("MSIL").

32.      B&H attorneys discussed and conferenced with SIPC, Windels Marx, Young Conaway, and International Counsel regarding investigation and litigation strategy, prepared requests for discovery and negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

### ii.      Task Code 02: Bankruptcy Court Litigation

33.      This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

34.      On February 18, 2010, this Court approved a pre-litigation settlement between the Trustee and the Estate of Norman F. Levy. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec., LLC (In re Madoff Sec.)*, No. 08-01789 (BRL) (Bankr. S.D.N.Y), ECF No. 1964. This

settlement resulted in the return of $220 million (the "Levy Settlement"). One year later, on

February 18, 2011, certain customers moved to set aside the Court's Order approving the Levy

Settlement. (ECF No. 3861). On March 30, 2011, this Court denied the motion (ECF No. 3984),

and the claimants filed an appeal on April 11, 2011. (ECF No. 4005).

     35.    On February 16, 2012, United States District Judge Deborah A. Batts issued a

Memorandum and Order affirming this Court's order of March 30, 2011. *Sec. Investor Prot.*

*Corp. v. Bernard L. Madoff Inv. Sec., LLC*, No. 11 Civ. 3313 (DAB), 2012 U.S. Dist. LEXIS

21740 (S.D.N.Y. Feb. 16, 2012). The District Court found that bankruptcy courts need not

conduct a "mini-trial" of all the facts underlying settlement disputes and are entitled to rely upon

the opinions of the trustee, the parties, and their attorneys. *Id.* at *12. Thus, the District Court

held that this Court did not abuse its discretion in denying the motion to vacate the settlement.

*Id.* at *7. The claimants subsequently appealed Judge Batts's decision to the United States Court

of Appeals for the Second Circuit (the "Second Circuit"). *See Peshkin v. Levy-Church*, No. 12-

816-cv (2d Cir. 2012). The Second Circuit issued a summary order affirming the judgment of

the District Court. *See Peshkin v. Levy-Church*, No. 12-816, 2012 U.S. App. LEXIS 26101 (2d

Cir. Dec. 21, 2012), ECF No. 96. No further appeal was taken from this order. As such, the

Second Circuit's summary order is now final. The $220 million Levy Settlement is now

available for distribution.

     36.    On the issue of the "customer" definition under SIPA, this Court issued a

Memorandum Decision and Order affirming the Trustee's denial of these claims (the "June 28,

2011 Order"). (ECF Nos. 3018, 4193, 4209); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011). Appeals were taken from this decision and

assigned to United States District Judge Denise L. Cote. *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, Nos. 11 Civ. 5683 (DLC), 11 Civ. 5805 (DLC), 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012). On January 4, 2012, Judge Cote affirmed this Court's June 28, 2011 Order. *Id.*, ECF No. 11.

37.    On January 6, 2012, four appeals were taken from Judge Cote's decision to the Second Circuit. *See Bricklayers & Allied Craftsman Local 2 Annuity Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-410; *Sec. Investor Prot. Corp., Irving H. Picard v. Rosamilia*, No. 12-437; *Sec. Investor Prot. Corp., Irving H. Picard v. Kruse*, No. 12-483; and *Upstate New York Bakery Drivers & Indus. Pension Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-529 (2d Cir.). During the Compensation Period, the Trustee and B&H attorneys researched case law and drafted a brief in opposition to appeals of the decision regarding the definition of "customer" under SIPA.    Oral argument was held before the Second Circuit on January 25, 2013.    On February 22, 2013, the Second Circuit affirmed the decisions of the District and Bankruptcy Courts. *See Kruse v. Picard*, 2013 U.S. App. LEXIS 3774 (2d Cir. Feb. 22, 2013). No further appeals were taken from the Second Circuit's ruling.    As such, the order is now final.

### iii.    Task Code 03: Feeder Funds

38.    This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors.  The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and bring actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

iv.    **Task Code 04: Asset Research and Sale**

39.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

40.    During the Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with the accelerated redemption of Abtech Holdings, Inc. promissory notes; conducted due diligence in connection with Andrew Madoff's interest in Abel Automatics Inc. and monitored the sale of the same; conducted due diligence in connection with the liquidating payment of NSX Holdings Liquidating Trust; conducted due diligence and participated in telephone conferences in connection with Andrew Madoff's efforts to sell certain interests of Madoff Energy LLC and affiliates; conducted and monitored the initial public offering of Stemline Therapeutics, Inc. and related activities and strategized as to its sale; and continued to value the intellectual property interest in Primex, evaluate corporate governance issues and strategize as to its sale.

41.    During the Compensation Period, the Trustee continued to recover funds from securities class action settlements respecting securities that BLMIS purchased and sold prior to December 11, 2008 in connection with its proprietary trading and market making operations.

v.    **Task Code 05: Internal Meetings with Staff**

42.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

vi.    **Task Code 07: Billing and Trustee Reports**

43.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the

statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

     **vii.**    **Task Code 08: Case Administration**

44.    This category relates to time spent assisting the efficient administration of the case.

45.    The Trustee filed several motions before this Court that will govern the treatment of and procedures related to the efficient litigation of these actions. These procedures will ensure consistency and transparency, as well as compliance with the Bankruptcy Code and SIPA.

46.    On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings. (ECF No. 4469). This Court entered the Order on December 5, 2011. (ECF No. 4560).

47.    On October 28, 2011, this Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012. (ECF No. 4483). Thereafter, on January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012. (ECF No. 4483).

48.    During the Compensation Period, the Trustee and B&H attorneys conducted conflict checks; implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents; created protocols relating to discovery, filings, and external communications; implemented and managed work flows between B&H and Consultants; oversaw administrative aspects of the retention of experts, other

15

professionals and vendors, and monitored their ongoing activities; calendared and docketed all hearings, return dates, and deadlines in the main liquidation proceeding and all other litigations; monitored and tracked dockets of related proceedings; and managed and monitored staffing needs.

### viii.    Task Code 09: Banks

49.    Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

### ix.    Task Code 10: Court Appearances[11]

50.    This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### x.    Task Code 11: Press Inquiries and Responses

51.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

---

[11] Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

xi. **Task Code 12: Document Review**

52.     This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

xii. **Task Code 13: Depositions and Document Productions by the Trustee**

53.     This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter and responding to discovery propounded to the Trustee by various third parties.

54.     During the Compensation Period, the Trustee and B&H attorneys prepared, reviewed, finalized, and served subpoenas; monitored subpoenas issued and documents produced in response, and followed up regarding deficient document productions; prepared, reviewed, finalized, and served initial disclosures, case management plans, and motions for filing with this Court to implement case-wide discovery procedures; prepared, reviewed, finalized, and served discovery requests; processed, uploaded, and analyzed incoming document productions; responded to discovery requests served on the Trustee by defendants and third parties; addressed the issue of de-designating confidential documents for production; analyzed, tracked, and processed BLMIS data; coordinated with the Trustee's expert witnesses to prepare for trial; researched foreign jurisdiction discovery laws; researched and drafted the Trustee's Amended Motion for an Order Establishing Procedures for Third-Party Data Rooms and Modifying the June 6, 2011 Litigation Protective Order and engaged in pre-filing negotiations for counsel for certain defendants regarding same; and oversaw work performed by the Trustee's vendors.

xiii. **Task Code 14: International**

55.     The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions.

The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands, Canada, the Cayman Islands, England, France, Gibraltar, Guernsey, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland.  These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

56.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions.  The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

57.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

### xiv.    Task Code 15: Charities

58.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

### xv.    Task Code 19: Non-Bankruptcy Litigation

59.    This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

18

xvi.    **Task Code 20: Governmental Agencies**

60.     This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the United States Attorney's Office for the Southern District of New York, the Internal Revenue Service, various congressional Representatives, and other government agencies.

61.     In addition, the Trustee and B&H attorneys met with the Government Accountability Office (the "GAO") and responded to the GAO's requests for information.

xvii.    **Task Code 21: Allocation**

62.     This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

63.     The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

64.     On May 4, 2011, the Trustee sought entry of an order approving an initial allocation of property to the Customer Fund, and authorizing an interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the filing date exceeded the statutory SIPA protection limit of $500,000 (the "First Allocation Motion").  The First Allocation Motion was unopposed, and on July 12, 2011, this Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers.  (ECF No. 4217).

65.     From October 5, 2011 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $501.219 million[12], or 4.602% of each BLMIS

---

[12] Subsequent to the Compensation Period ending on April 30, 2013, an additional $1.169 million was distributed as catch-up payments, bringing the total first interim distribution amount to $502.387 million through September 23, 2013.

customer's allowed claim, unless the claim had been fully satisfied. The first interim distribution was made to 1,301 BLMIS account holders, and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been previously satisfied.

66.    On July 26, 2012, the Trustee filed a motion for a second allocation and second interim distribution to customers. (ECF No. 4930). On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% reserve. (ECF No. 4997).

67.    From September 19, 2012 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $3.637 billion[13], or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. The second interim distribution was made to 1,287 BLMIS account holders, and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

68.    On February 13, 2013, the Trustee filed a motion for a third allocation and third interim distribution to customers. (ECF No. 5230). On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing a Third Interim Distribution to Customers, with a 3% reserve. (ECF No. 5271).

---

[13] Subsequent to the Compensation Period ending on April 30, 2013, an additional $8.52 million was distributed as catch-up payments, bringing the total second interim distribution amount to $3.645 billion through September 23, 2013.

69.     From March 29, 2013 through the end of the Compensation Period, the Trustee distributed approximately $507.666 million[14], or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.   Upon completion of the third interim distribution, more than 50% of the accounts with allowed customer claims have been satisfied. The third interim distribution was made to 1,105 BLMIS account holders, and 26 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

## B.     MATTER 03 – CHAIS

70.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Chais, Pamela Chais, and a number of related entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.  *Picard v. Chais*, Adv. No. 09-01172 (BRL) (Bankr. S.D.N.Y.).

71.     In addition to the tasks outlined above, during the Compensation period, B&H attorneys participated in the mediation ordered by this Court on July 18, 2012 in *Picard v. Chais* and the related action to enforce the automatic stay and enjoin certain state court third-party actions brought by investors of Stanley Chais and by the California Attorney General.  The mediation took place from February 12–14, 2013, and discussions related to the mediation continue between the parties.   B&H attorneys also continued their investigation of the Chais

---

[14] Subsequent to the Compensation Period ending on April 30, 2013, an additional $1.199 million was distributed as catch-up payments, bringing the total third interim distribution amount to $508.864 million through September 23, 2013.

Defendants and likely recipients of subsequent transfers from the Chais Defendants-related
BLMIS accounts.   Certain of the Chais Defendants also filed two motions to withdraw the
reference to the District Court on April 2, 2012 (docketed as Nos. 12-cv-02371 (JSR) and 12-cv-
02658 (JSR) (S.D.N.Y.)).   B&H attorneys previously drafted various motions and pleadings
related to these motions to withdraw the reference and continue to pursue legal remedies related
to certain orders entered by the District Court.

## C.    MATTER 04 – MERKIN

72.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the
avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel
Capital Corporation (together, the "Merkin Funds") and J. Ezra Merkin ("Merkin") (collectively,
the "Merkin Defendants") seeking the return of more than $557 million under SIPA, the
Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for
preferences and fraudulent conveyances in connection with certain transfers of property by
BLMIS to or for the benefit of the Merkin Defendants.  *Picard v. J. Ezra Merkin*, Adv. No. 09-
01182 (BRL) (Bankr. S.D.N.Y.).

73.    During the Compensation Period, B&H attorneys continued to advance the
litigation of the Merkin case.   They served additional document requests and third party
subpoenas, interviewed potential witnesses, and conducted a jury focus-group exercise with
DOAR Litigation Consulting.    Moreover, the court-appointed discovery arbitrator, Judge
Melanie Cyganowski, issued two favorable opinions resolving several key discovery disputes in
the Trustee's favor.   In March 2013, the arbitrator issued her third decision, which (i) granted an
extension of the case management schedule, (ii) ordered the Merkin Defendants to specifically
identify by bates range documents that are responsive to the Trustee's document requests, (iii)
ordered the Merkin Defendants to produce their financial records, and (iv) ordered the Merkin

Defendants to serve an updated privilege log within five business days of any new production. In April 2013, the arbitrator issued her fourth decision, denying most of the Merkin Defendants' requests for heightened levels of confidential treatment of certain tax records.

74.     On other discovery fronts, B&H attorneys engaged in good faith negotiations with the Merkin Defendants in connection with the favorable discovery rulings issued by the arbitrator in her March ruling.  The team continued to press the Merkin Defendants to comply with that order through written demand letters and meet and confers.

75.     During the Compensation Period, B&H attorneys continued preparing for fact witness depositions and expert discovery by conducting extensive review and analysis of documents produced by the Merkin Defendants and from other third parties.  B&H attorneys' tasks included identification of, preparation for and conducting interviews of potential fact witnesses, including financial industry representatives, former investors, and other individuals identified by the Merkin Defendants in their litigation with the New York Attorney General (the "NYAG").  They also continued to analyze potential subsequent transfers to Mr. Merkin's wife and family members and, as a result, issued a Rule 2004 subpoena to Mrs. Lauren Merkin.

76.     Following the June 25, 2012 announcement by the NYAG of a settlement among the NYAG and the receivers for the Merkin Funds, the Trustee filed a complaint, extensive memorandum of law and related papers seeking an injunction to prevent the dissipation of the Merkin Defendants' assets.  *Picard v. Schneiderman (In re Bernard L. Madoff)*, Adv. No. 12-01778 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 1–3.  Following that filing, the Merkin Defendants advised the Trustee of their intention to file a motion to withdraw the reference of the injunction application, and the Trustee and the defendants entered into a briefing schedule for the motion to withdraw the reference.  As part of the briefing schedule stipulation negotiated by the Trustee's

counsel, the NYAG settlement is subject to a standstill agreement pending the hearing on the injunction application. The NYAG and other Merkin Defendants thereafter filed a joint motion to withdraw the reference of the injunction application. *Picard v. Schneiderman*, 12-cv-06733 (S.D.N.Y. Sept. 5, 2012), ECF No. 1. The Trustee and SIPC filed papers in opposition to the motion to withdraw the reference, ECF Nos. 9–10, and following the submission of the Merkin Defendants' reply brief on October 11, 2012, the matter was fully briefed. After argument and a hearing in November 2012, the District Court granted the motion to withdraw the reference in December 2012 and briefing on the Trustee's substantive injunction application followed thereafter. (ECF No. 14). The injunction application was heard by the District Court on March 25, 2013. An opinion was issued on April 15, 2013 denying the Trustee's application. (ECF No. 53). An appeal was filed on June 6, 2013.

## D.    MATTER 05 – CUSTOMER CLAIMS

### i.    Customer Claims

77.    During the Compensation Period, the Trustee allowed $3,271,197,349.86 in customer claims, bringing the total amount of allowed claims as of April 30, 2013 to $11,075,964,697.25. As of April 30, 2013, the Trustee has paid or committed to pay $807,677,373.62 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.

78.    During the Compensation Period, the Trustee reduced claims by approximately $128,533,035.34.

79.    As of April 30, 2013, 170 claims relating to 121 accounts were "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties. The complaints filed by the Trustee in those litigations set forth the express

grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied. Of the 16,519 claims received by the Trustee, the final two claims were determined during the Compensation Period.

### ii.    General Creditor Claims

80.    As of April 30, 2013, the Trustee had received 427 timely and 21 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 448 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $264.9 million. At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

81.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

82.    The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-

to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

83.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of April 30, 2013, the Trustee and his professionals had received and responded to more than 7,000 e-mails from BLMIS customers and their representatives via the Trustee Website.

84.     The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of April 30, 2013, the Trustee, B&H, and the Trustee's professionals had fielded more than 7,700 hotline calls from claimants and their representatives.

85.     The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

86.     The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review process, the customer claims database, reconciliation of investment advisory accounts (the "BLMIS IA Accounts"), and other matters of interest in determining claims.

87.     The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

E.    **MATTER 06 – VIZCAYA**

88.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Ltd. ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants.  *Picard v. Vizcaya Partners Ltd.*, Adv. No. 09-01154 (BRL) (Bankr. S.D.N.Y.).  The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers.

89.    During the Compensation Period, B&H attorneys continued to advance discovery. B&H attorneys held a meet and confer with all counsel to address all outstanding discovery issues, reviewed documents for relevance and production in response to the Vizcaya Defendants' document requests and reviewed documents produced by third parties relevant to this matter. B&H attorneys coordinated with consultants on background investigations on persons of interest and collaborated with foreign counsel with regard to the Trustee's foreign proceedings in Gibraltar, including opposing a motion to strike the proceeding seeking to enforce the Trustee's default judgment against Vizcaya and Asphalia and addressing complex issues of law.

F.    **MATTER 07 – MADOFF FAMILY**

90.    This matter categorizes time spent by B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.  On October 2, 2009, the Trustee filed a complaint against Peter Madoff, Andrew Madoff, the late Mark Madoff, and Shana Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent transfers,

fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.), ECF No. 1.  On March 15, 2010, each of the defendants separately moved this Court to dismiss the Trustee's complaint.  (ECF Nos. 13–19).  On September 22, 2011, this Court denied in part and granted in part the motions to dismiss.  (ECF No. 55). Defendant Andrew Madoff, individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave to seek interlocutory review of this Court's September 22, 2011 decision. (ECF No. 56).  Following briefing and oral argument, the District Court denied that motion on December 22, 2011.  (ECF No. 74).

91.    In accordance with this Court's September 22, 2011 decision, on November 7, 2011, the Trustee filed an amended complaint against the Family Defendants, identifying additional transfers and seeking the return of over $225 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.), ECF No. 64.  Shana Madoff, Peter Madoff, and Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, each answered the amended complaint on January 17, 2012. (ECF Nos. 78, 79, 80).

92.    On December 23, 2011, the Trustee filed a motion seeking leave to file a second amended complaint, adding additional claims and defendants to the action against the Family Defendants. (ECF No. 71). On April 4, 2012, following briefing and oral argument, this Court issued a written opinion denying in part and granting in part the Trustee's motion. (ECF No. 106).  On May 4, 2012, the Trustee filed a second amended complaint against the Family

Defendants and named as additional defendants Mark Madoff's widow, Stephanie Mack, and Andrew Madoff's wife, Deborah Madoff. (ECF No. 113). The Trustee also named Mark Madoff's ex-wife, Susan Elkin, as a subsequent transferee defendant. Defendants Andrew Madoff, the Estate of Mark D. Madoff, Shana Madoff, and Ms. Elkin answered the second amended complaint on July 2, 2012. (ECF Nos. 124–126). On April 2, 2012, Stephanie Mack and Deborah Madoff moved to withdraw the reference from this Court, and their motions are pending before the District Court. (ECF Nos. 101, 104). The Trustee has adjourned the time for Stephanie Mack and Deborah Madoff to respond to the second amended complaint. (ECF Nos. 128, 134, 139, 141, 149, 152, 154).

93.      On June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion. Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the United States of America. Subsequently, on February 6, 2013, Peter Madoff was dismissed from this action in connection with the entry of a Consent Judgment in the amount of $90,390,500.00. (ECF No. 145). On February 7, 2013, the Trustee dismissed a separate adversary proceeding against Marion Madoff through a Notice of Voluntary Dismissal with Prejudice. *Picard v. Marion Madoff*, Adv. No. 10-04310 (BRL) (Bankr. S.D.N.Y.), ECF No. 17.

94.      In connection with Peter Madoff's plea agreement, his daughter, defendant Shana Madoff also forfeited to the United States of America substantially all of her assets that were the subject of the Trustee's claims against her. Subsequently, on March 18, 2013, the Trustee dismissed the case against Shana Madoff with prejudice. (ECF No. 148).

95.      The Trustee commenced two adversary proceedings against members of Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard

and Ruth Madoff. *Picard v. Stephanie S. Mack*, Adv. No. 10-05328 (BRL) (Bankr. S.D.N.Y.);

*Picard v. Deborah Madoff*, Adv. No. 10-05332 (BRL) (Bankr. S.D.N.Y.). Amended complaints

were filed in these actions on February 7, 2012. *Picard v. Mack*, Adv. No. 10-05328, ECF No.

23; *Picard v. Deborah Madoff*, Adv. No. 10-05332, ECF No. 13. All defendants in both actions

answered on March 23, 2012. *Picard v. Mack*, Adv. No. 10-05328, ECF No. 30; *Picard v.

Deborah Madoff*, Adv. No. 10-05332, ECF No. 20. Deborah Madoff also moved to withdraw

the reference from this Court on April 2, 2012. *Picard v. Deborah Madoff*, Adv. No. 10-05332,

ECF No. 22. That motion is currently pending before the District Court. The pre-trial

conference for these actions in this Court is currently scheduled for October 2, 2013. *Picard v.

Mack*, Adv. No. 10-05328, ECF No. 42; *Picard v. Deborah Madoff*, Adv. No. 10-05332, ECF

No. 37.

96.    The Trustee commenced two adversary proceedings against foundations created

by and named for Andrew and the late Mark Madoff and their spouses: *Picard v. Mark &

Stephanie Madoff Found.*, Adv. No. 10-05325 (BRL) (Bankr. S.D.N.Y.) and *Picard v. Deborah

& Andrew Madoff Found.*, Adv. No. 10-05330 (BRL) (Bankr. S.D.N.Y.). The defendants in

these cases have answered, and the pre-trial conferences are currently scheduled for October 2,

2013. *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, ECF No. 25; *Picard v.

Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, ECF No. 29.

97.    The Trustee commenced various adversary proceedings against Madoff's relatives

beyond his immediate family to recover preferences and fraudulent conveyances. Currently, the

Trustee's cases styled *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323 (Bankr.

S.D.N.Y.), *Picard v. NTC & Co. LLP*, Adv. No. 10-04293 (Bankr. S.D.N.Y.), and *Picard v.

*Schaum & Wiener Profit Sharing Plan & Trust FBO Martin Schaum*, Adv. No. 10-04329 (Bankr. S.D.N.Y.) remain pending.

## G.    MATTER 09 – FAIRFIELD GREENWICH

98.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwhich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y. May 18, 2009), ECF No. 1. This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

99.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). *Id.*, ECF No. 95. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million, *Id.*, ECF No. 108, Sentry in the amount of $3.054 billion, *Id.*, ECF No. 109, and Sigma in the amount of $752.3 million, *Id.*, ECF No. 110.

100.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint

Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

101.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y.), ECF No. 107. In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

102.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing (as defined herein in Section L) and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court.

103.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (BRL) (Bankr. S.D.N.Y.), Picard *v. Barrenche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (BRL) (Bankr.

S.D.N.Y.). RD Trust has not yet been served with the Trustee's complaint. None of the defendants in the three actions have yet responded to the Trustee's complaints.

104.    On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement. *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM) (S.D.N.Y.), ECF No. 997.   On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement. *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (BRL) (Bankr. S.D.N.Y.), ECF No. 2. On December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court. (ECF No. 11).   On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.,* 12 Civ. 9408(VM) (S.D.N.Y.), ECF No. 30.   On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the Anwar settlement. (ECF No. 59).   On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the Trustee's application for an injunction against the implementation of the Anwar settlement. (ECF No. 61).

105.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the Anwar action. (ECF 1054).   On March 8, 2013, the District Court deemed the pre-motion conference letter to be a motion to intervene and denied the Trustee's request. (ECF No. 1071).   On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the Anwar action.  (ECF. 1106).

106.     As of April 30, 2013, the Trustee and the remaining defendants have entered into stipulations extending the response date to the Trustee's complaints while awaiting the rulings by the District Court on the issues subject to Common Briefing and hearings.

## H.     MATTER 11 – COHMAD SECURITIES CORPORATION

107.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), its principals, certain employees of Cohmad (the "Cohmad Registered Representatives"), and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants.  *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (BRL) (Bankr. S.D.N.Y.).

108.     This matter also includes time spent by the Trustee and B&H attorneys pursuing avoidance actions against BLMIS customers who were referred to BLMIS by the Cohmad Defendants and are net winners.

109.     During the Compensation Period, B&H attorneys continued to move forward with discovery, both propounding demands and responding to the demands of various defendants.

## I.     MATTER 12 – PICOWER

110.     This matter categorizes time spent by the Trustee and B&H attorneys in connection with the Trustee's litigation and settlement with Jeffry M. Picower ("Picower") and Barbara Picower, both individually and as trustees for various foundations, and related entities (collectively, the "Picower Defendants").  The Trustee's lawsuit sought recovery of nearly $7 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Defendants. *Picard v. Picower*, Adv. No. 09-01197 (BRL) (Bankr. S.D.N.Y.).

111.    On January 13, 2011, this Court entered an Order (the "Picower Settlement Order") approving the $5 billion settlement between the Trustee and the Estate of Jeffry M. Picower  (ECF No. 43).  BLMIS claimants Adele Fox ("Fox") and Susanne Stone Marshall ("Marshall"), who brought actions against the Picower Defendants in Florida, appealed the Picower Settlement Order.  (ECF Nos. 45, 49).  On March 26, 2012, United States District Judge John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and permanently enjoining certain duplicative or derivative actions against the Picower Defendants. *Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012).  Thereafter, counsel for Fox and Marshall again filed notices of appeal, this time to the Second Circuit. *See In re Bernard L. Madoff Inv. Sec., LLC*, No. 10-Civ-4652 (JGK) (S.D.N.Y.), ECF No. 47; *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, 11-Civ-1298 (JGK) (S.D.N.Y.), ECF No. 19; *Fox v. Picard (In re Bernard L. Madoff)*, 11-Civ-1328 (JGK) (S.D.N.Y.), ECF No. 17).  These appeals are currently pending, and oral argument was heard on December 6, 2012. *See In re Bernard L. Madoff Inv. Sec., LLC*, 12-1645bk (2d Cir. Dec. 6, 2012).

112.    A forfeiture action against the estate of Jeffry M. Picower resulted in the additional recovery of more than $2.2 billion to the United States Government (the "Picower Forfeiture"), which is intertwined with the Trustee's Picower settlement. *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 10 Civ. 09398 (TPG) (S.D.N.Y.).  On May 23 and 24, 2011, United States District Judge Thomas P. Griesa entered a final order of forfeiture in favor of the United States.

(ECF Nos. 16, 17). The Second Circuit dismissed an appeal of Judge Griesa's order, and on June 8, 2012, a final order of forfeiture was issued. *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 11-2898 (2d Cir. June 8, 2012), ECF No. 85.

113. Because the time to appeal the final order of forfeiture expired, the settlement amount of $5 billion was transferred to the BLMIS estate and the Customer Fund. Part of the proceeds from the Picower settlement has been distributed to customers, and the balance will be distributed in due course.

## J.    MATTER 13 – KINGATE

114. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the "Kingate Funds"), and other defendants, seeking, among other relief, the avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law of preferential and fraudulent transfers made by BLMIS to or for the benefit of the Kingate Funds in the approximate total amount of $875 million.[15] On June 8, 2011, B&H attorneys prepared, filed, and served a third amended complaint, which added a number of additional foreign defendants, significantly expanding the case. *Picard v. Federico Ceretti*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.), ECF No. 32 ("U.S. Action").

115. The Kingate Funds are in liquidation proceedings in the British Virgin Islands and Bermuda under the auspices of court-appointed joint liquidators. The management company for

---

[15] As a result of a settlement between the Trustee and the United States of America on behalf of the Internal Revenue Service, approved by order of this Court dated December 21, 2011, the aggregate amount of the alleged transfers has been adjusted to approximately $825 million. *See* Order, Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.), No. 08-01789 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2011), ECF No. 4602.

the Kingate Funds and one of the foreign defendants in the U.S. action, Kingate Management Limited ("KML"), is also in a liquidation proceeding in Bermuda, which is being administered by the Official Receiver of Bermuda.

116.    The Kingate Funds and all other defendants filed motions in the District Court, or joinders to such motions, to withdraw the reference from this Court on various grounds.  *Picard v. Kingate Global Fund, Ltd.*, No. 12-cv-02441 (JSR) (S.D.N.Y.), ECF No. 1.  The motions were fully briefed and argued before the District Court.  Pending a resolution of all issues before the District Court, the Trustee has continued to extend the time for the defendants in the U.S. action to answer or otherwise respond to the third amended complaint by various stipulations filed with this Court.

117.    By an order of the Bermuda Civil Court (the "Bermuda Court") dated October 3, 2012, upon application of the Kingate Funds' joint liquidators seeking leave to pursue their claims against Kingate Management and other defendants in Bermuda, the Bermuda Court lifted the litigation stay that was in effect in that jurisdiction and granted other relief in favor of the joint liquidators.  On the basis that the Kingate Funds were seeking to recover property that had been transferred from BLMIS, which was Customer Property that the Trustee was seeking to recover in the U.S. action, the Trustee prepared and filed a complaint for declaratory and injunctive relief against the Kingate Funds and an application to preliminarily enjoin the joint liquidators from prosecuting the Kingate Funds' claims against KML and other defendants in Bermuda.  Upon request of the joint liquidators, and in light of the Trustee's desire, if possible and in the best interests of the estate, to settle all disputes between the parties on a global basis, the Trustee has continued to extend the joint liquidators' deadline to answer the complaint and the preliminary injunction application.

118.    In furtherance of global settlement negotiations with the Kingate Funds, the Trustee's counsel has had frequent telephonic communications and meetings with counsel for the joint liquidators of the Kingate Funds, and both parties have taken steps toward documenting a settlement on the terms under negotiation.  The Trustee and his attorneys continue to prepare for litigation here and abroad should a global settlement be unavailing despite the Trustee's best efforts.

## K.    MATTER 18 – THYBO

119.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Thybo Asset Management Ltd., Thybo Global Fund Ltd., Thybo Return Fund Ltd., and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return of approximately $62 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants.  On February 10, 2011, the Trustee filed an amended complaint that also objected to Thybo Stable Fund Ltd.'s $217 million customer claim.  *Picard v. Thybo Asset Mgmt. Ltd.*, Adv. No. 09-01365 (BRL) (Bankr. S.D.N.Y. Feb. 10, 2011), ECF No. 20.

120.    On July 3, 2012, Judge Rakoff issued an Order as to the Thybo Defendants' fully briefed motion to withdraw the reference, stating that the Thybo Defendants raised the same issues that the District Court previously arranged for Common Briefing (as defined herein in Section L) and directing the Thybo Defendants to continue to proceed according to the procedures arranged for Common Briefing.  *See* Order, *Picard v. Thybo Asset Mgmt. Ltd.*, No. 11-cv-07576 (JSR) (S.D.N.Y. July 5, 2012), ECF No. 17.  As of April 30, 2013, a number of those issues remained under consideration by the District Court.

L.    **MATTER 21 – AVOIDANCE ACTION LITIGATION**

121.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, preparing preservation letters and discovery requests and reviewing produced documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

122.    B&H attorneys also spent time addressing motions to withdraw the reference filed after the April 2, 2012 final deadline for withdrawal motions established pursuant to the Administrative Order issued by this Court.  *See* Administrative Order Establishing Deadline for Filing Motions to Withdraw the Reference, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.)*, Adv. No. 08-01789 (Bank. S.D.N.Y. Mar. 5, 2012), ECF No. 4707 (the "Administrative Order").  The Administrative Order stated: "[i]n the interest of administrative efficiency, this Court has been informed by Judge Rakoff, and hereby notifies all parties to the Adversary Proceedings, that the District Court will automatically regard untimely any motion to withdraw . . . if such motion is not filed on or before April 2, 2012." *Id*. at 1–2.

123.    B&H attorneys reviewed all motions to withdraw the reference filed after the April 2, 2012 deadline to determine whether the motions were timely or should be regarded as untimely as specified in the Administrative Order.

124.    B&H attorneys determined that several motions filed during the Compensation Period were timely because the Trustee served the summons and complaint in the various actions

after the April 2, 2012 deadline.  B&H attorneys then analyzed the arguments raised in the motions to withdraw the reference to determine which Consolidated Briefing Orders (as defined below) these motions should be added to, and accordingly, drafted consent orders to allow the corresponding actions to be part of the relevant Consolidated Briefing Orders, and also reviewed any relevant rulings.

125.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw the reference, facilitating consolidated briefing on common issues raised in the motions to withdraw ("Common Briefing").  Accordingly, the Trustee, SIPC, and the relevant defendants negotiated agreed orders providing for the partial withdrawal of the reference to address the following discrete legal issues raised in the relevant motions to withdraw (the "Consolidated Briefing Orders"):

- ***Stern v. Marshall Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), ECF No. 4;

- ***Antecedent Debt Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 107;

- ***Standing and SLUSA Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 114;

- ***Section 546(e) Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 119;

- ***Section 502(d) Issues.***  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155;

- ***Extraterritoriality Issues***.  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 7, 2012), ECF No. 167;

- ***"Good Faith" Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b).*** *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), ECF No. 197; and

- ***Section 550(a) Issues.*** *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), ECF No. 314.

## M.   MATTER 26 – RICHARD STAHL

126.   This matter categorizes time spent by the Trustee and B&H attorneys on the adversary proceeding commenced by the Trustee against Richard Stahl, Reed Abend, and other third-party plaintiffs (collectively, the "Stahl Plaintiffs"), and the Trustee's related Application for Enforcement of the Automatic Stay and a Preliminary Injunction (the "Stahl Application") of actions brought by the Stahl Plaintiffs against Andrew Madoff, Mark Madoff, Peter Madoff, Ruth Madoff and Shana Madoff (collectively, the "Madoff Defendants") against whom the Trustee has also brought suit. *Picard v. Stahl*, Adv. No. 10-03268 (BRL) (Bankr. S.D.N.Y. Dec. 15, 2011).

127.   In a prior compensation period, this Court entered an order granting the Stahl Application. *Picard v. Stahl*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011). This Court found that the automatic stay and the December 15, 2008 stay order of the District Court applied, and held that the third-party actions are void *ab initio* as against the Madoff Defendants. *Id.* This Court also preliminarily enjoined the actions pending the completion of the Trustee's litigation against the Madoff Defendants. *Id.*

128.   Several of the Stahl Plaintiffs (the "Stahl Appellants") appealed this decision to the District Court. Following briefing and argument, on November 17, 2011, United States District Judge Alvin K. Hellerstein issued a bench ruling and summary order affirming this Court's opinion. *Retirement Program for Emps. of Fairfield v. Picard (In re Bernard L. Madoff*

*Inv. Sec., LLC*,) No. 11CV2392 (AKG), 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011). Judge

Hellerstein found that the third-party actions created "a waste of personal assets that the trustee

seeks to recover" and that "the profusion of [the third-party] lawsuits makes it extremely difficult

for the trustee to run his lawsuit expeditiously and economically in the interests of the creditors

of the estate." *Id.* at *15. Judge Hellerstein recognized that "it's the rationale behind Section

362 and Section 105 to favor the trustee . . . ," and held that a preliminary injunction was proper

"to allow the trustee the ability to pursue his actions and obtain rulings and finality on those

rulings because the trustee is acting for the benefit of all creditors and not just a few." *Id.* at *13.

129.    Thereafter, the Stahl Appellants filed joint appeals of Judge Hellerstein's ruling

with the Second Circuit. *See In re Bernard L. Madoff Inv. Sec., LLC*, No. 11-5421 (2d Cir.); *In

re Bernard L. Madoff Inv. Sec., LLC*, No. 11-5428 (2d Cir.). The Second Circuit heard argument

on January 25, 2013. Shortly thereafter, the Second Circuit issued a summary order affirming

the Bankruptcy Court's decision on section 105(a) and dismissing as moot the appeal of the

Bankruptcy Court's decision about the automatic stay. *See In re Bernard L. Madoff Inv. Sec.

LLC*, 512 Fed. App'x 18 (2d Cir. 2013). The Second Circuit ruled that section 105(a) applies in

a SIPA liquidation and section 105(a) is to be "construed liberally to enjoin suits that might

impede the . . . process of liquidation." *Id.* at 20 (internal quotation marks omitted). The Second

Circuit further found that "were it not for the Preliminary Injunction, there would ensue a chaotic

rush to the courthouse—or rather, multiple courthouses—of those seeking assets that the trustee

claims are properly part of the BLMIS estate." *Id.*

130.    The Stahl Appellants' motion to reinstate the appeal of the automatic stay issue

has been denied. The Second Circuit's mandate was issued on April 3, 2013. The deadline to

file a petition for certiorari to the Supreme Court has passed.

131. During the Compensation Period, B&H attorneys prepared for oral argument, including performing legal research. B&H attorneys also prepared a motion to publish the Second Circuit's order and prepared a brief opposing the Stahl Appellants' motion to reinstate the appeal of the automatic stay issue.

## N. MATTER 27 – JP MORGAN CHASE

132. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan") seeking the return of approximately $19 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of JPMorgan Chase. *Picard v. JPMorgan Chase & Co.*, Adv. No. 10-04932 (BRL) (Bankr. S.D.N.Y.).

133. The appeal of the District Court's decision dismissing the Trustee's common law claims against JPMorgan, *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011), was argued before the Second Circuit on November 21, 2012. *Picard v. JPMorgan Chase & Co.*, No. 11-5044 (2d Cir.). The parties stipulated to a stay of discovery pending the appeal. During the Compensation Period, B&H attorneys prepared for the case to move forward, pending a decision from the Second Circuit, which was issued on June 20, 2013.

## O. MATTER 28 – WESTPORT

134. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. ("PSCC") seeking the return of approximately $28 million under SIPA, the Bankruptcy Code, the New York

Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Silverman, WNB, and PSCC. *Picard v. Robert L. Silverman*, Adv. No. 10-05418 (BRL) (Bankr. S.D.N.Y.).

135.    During the Compensation Period, B&H attorneys prepared inquiries relating to the factual and legal issues the lawsuit raises and analyzed the documents and written responses provided by WNB's counsel.  In furtherance of the Trustee's claims, B&H attorneys performed additional research with respect to WNB's potential defenses and its treatment of funds and customer balances.  In connection with Silverman's chapter 11 case, B&H attorneys negotiated a stipulation allowing the Trustee's claim in Silverman's individual chapter 11 bankruptcy case, which is pending in the United States Bankruptcy Court for the District of Connecticut, and after consideration of Silverman's financial position, reached a resolution with Silverman and his counsel concerning the treatment the Trustee's claim will receive under Silverman's plan of reorganization. B&H attorneys also monitored the progress of several other lawsuits against WNB and Silverman and continued to consider alternative litigation strategies.

## P.    MATTER 29 – RYE/TREMONT

136.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Funds") seeking the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Funds.  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (BRL) (Bankr. S.D.N.Y.).

137.    On September 22, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025 billion.  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (BRL) (Bankr. S.D.N.Y.), ECF No. 38.  Pursuant to this settlement, Tremont delivered $1.025 billion into an escrow account, which was placed into the Customer Fund, and the Trustee allowed certain customer claims related to Tremont.  Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  This Court entered an Order Granting Trustee's Motion for Entry of Order Approving Agreement.  (ECF No. 38).

138.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011.  *See Picard v. Tremont Group Holdings, Inc.*, No. 11-7330 (GBD) (S.D.N.Y.), ECF No. 1.  Thereafter, Tremont filed a motion to dismiss the appeal, which was subsequently joined by motions filed by the Trustee and parties subject to the settlement.  (ECF Nos. 4, 6, 8, 12, 14).  The non-BLMIS customers who commenced the appeal opposed the dismissal.  (ECF Nos. 15, 16).  On June 27, 2012, United States District Judge George B. Daniels granted the motion to dismiss the appeal, and judgment was entered on June 28, 2012.  (ECF Nos. 35, 36).

139.    On July 27, 2012, the non-BLMIS objectors filed an appeal with the Second Circuit. (ECF No. 37).  Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012.  (ECF No. 39).  The terms of the settlement, therefore, have been implemented.

140.    Pursuant to the Tremont settlement, Tremont delivered $1.025 billion into an escrow account on November 6, 2012.  The settlement payment was released from the escrow

account to the Trustee on February 8, 2013. Accordingly, the Trustee allowed certain customer claims related to Tremont.

## Q.   MATTER 30 – HSBC

141.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), UniCredit S.p.A., and Pioneer Alternative Investment Management Ltd. (together, "UCG/PIA"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., Herald Fund SpC – Herald (Lux) SICAV, Primeo Fund, Alpha Prime Fund, and Senator Fund, as well as individuals affiliated with those funds. The Trustee's complaint seeks $8.8 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and common law causes of action. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y. Nov. 30, 2012).

142.   In addition to the tasks outlined above, during the Compensation Period, B&H attorneys extended the time for certain defendants to respond to the amended complaint and coordinated service of process on numerous international defendants. B&H attorneys prepared an opposition to the motions to dismiss filed by the thirteen HSBC-related defendants and, separately, by UCG/PIA on May 3, 2011 in the District Court. *Picard v. HSBC Bank plc*, No. 11 Civ. 763 (JSR) (S.D.N.Y.), ECF. No. 35; *Picard v. HSBC Bank plc*, No. 11 Civ. 836 (JSR) (S.D.N.Y.), ECF. No. 34. The District Court granted the motions on July 28, 2011, dismissing the Trustee's common law claims. *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011). During the Compensation Period, B&H attorneys briefed the appeal, filing both their principal and reply briefs. Oral argument before the Second Circuit took place on November 21, 2012, and a decision denying the appeal was issued in June 2013.

46

143.    During the Compensation Period, the Trustee took part in proceedings pending in the Cayman Islands involving the Primeo Fund and Herald Fund.

## R.    MATTER 32 – UBS/LIF

144.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy and common law claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants. *Picard v. UBS AG*, Adv. No. 10-04285 (BRL) (Bankr. S.D.N.Y. Oct. 22, 2012).

145.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS. *Picard v. UBS AG*, Adv. No. 10-05311 (BRL) (Bankr. S.D.N.Y. Oct. 22, 2012).

146.    On December 19, 2012, the Trustee participated in a hearing in this Court regarding the motions to dismiss the amended complaint filed by a number of the Luxalpha Defendants and the LIF Defendants for lack of personal jurisdiction and *forum non conveniens.*

147.    In addition, this matter incorporates work related to an action brought in Luxembourg by the Luxembourg liquidators of Luxalpha against Access Group, UBS, and the directors of Luxalpha. On April 19, 2012, the Trustee and B&H commenced an action against Access Management Luxembourg, S.A., Patrick Littaye, and Pierre Delandmeter (collectively,

the "Third Party Plaintiffs") seeking an injunction preventing these parties from litigating an action they have filed against the Trustee in Luxembourg. *Picard v. Access Mgmt. Luxembourg, S.A.*, Adv. No. 12-01563 (BRL) (Bankr. S.D.N.Y.).  The Third Party Plaintiffs subsequently filed opposition papers to the Trustee's injunction application, moved to withdraw the reference to the District Court, (ECF Nos. 14–17), and later moved to dismiss the Trustee's action for lack of personal jurisdiction and failure to state a claim. (ECF Nos. 33–40).  On December 19, 2012, the Trustee participated in a hearing in this Court regarding the motion to dismiss the amended complaint for lack of personal jurisdiction filed by the Third Party Plaintiffs.

148.    In addition, this matter incorporates work on an action commenced by the Trustee on June 6, 2012, against Banque Degroof SA/NV, other Banque Degroof entities, Access International Advisors LLC, other Access entities, Aforge Finance Holding, other Aforge entities, and the Elite Stability SICAV Stablerock Compartment fund. *Picard v. Banque Degroof SA/NV*, Adv. No. 12-01691 (BRL) (Bankr. S.D.N.Y.).   The complaint seeks recovery of subsequent transfers from these defendants.

## S.    MATTER 33 – NOMURA INTERNATIONAL PLC

149.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (BRL) (Bankr. S.D.N.Y.).

150.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included Nomura's motion to withdraw the reference in Common Briefing and oral argument.

48

151.    During the Compensation Period, B&H attorneys prepared for and participated in oral argument on certain Common Briefing issues.  The Trustee also extended Nomura's time to respond to the amended complaint while awaiting determinations from the District Court with respect to several Common Briefing issues.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 47–48.

152.    Finally, as part of Common Briefing, on January 4, 2013, the District Court entered a decision on *Stern v. Marshall,* and on April 15, 2013, it entered a decision on § 546(e) of the Bankruptcy Code.  B&H attorneys have also spent time preparing for continued litigation in this action in light of these decisions.

## T.    MATTER 34 – CITIBANK

153.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank.  *Picard v. Citibank,* Adv. No. 10-05345 (BRL) (Bankr. S.D.N.Y.).

154.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included Citibank's motion to withdraw the reference in Common Briefing and oral argument.

155.    On August 15, 2012, Citibank moved to dismiss in the District Court based on § 546(g) of the Bankruptcy Code.  *Picard v. Citibank,* No. 11 Civ. 7825 (JSR) (S.D.N.Y.), ECF Nos. 25–27.  B&H attorneys prepared a response to Citibank's motion, which was filed on

August 24, 2012. *Id.*, ECF No. 31. B&H attorneys also prepared for and participated in oral argument on that motion on November 29, 2012. *Id.*, ECF No. 33.

156.    During the Compensation Period, B&H attorneys prepared for and participated in oral argument on certain Common Briefing issues.

157.    Additionally, during the Compensation Period, B&H attorneys, on behalf of the Trustee, extended the Trustee's time to respond to Citibank's motion to dismiss the complaint filed in this Court, while awaiting determinations from the District Court with respect to Common Briefing, as well as Citibank's motion to dismiss based on § 546(g) of the Bankruptcy Code. *Picard v. Citibank,* Adv. No. 10-05345 (BRL) (Bankr. S.D.N.Y. Apr. 19, 2013), ECF No. 61.

158.    On February 15, 2013, the District Court issued a bottom-line decision on Citibank's motion to dismiss the complaint based on § 546(g) of the Bankruptcy Code. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re Madoff Securities)*, 12-MC-00115 (JSR) (S.D.N.Y.), ECF No. 451.

159.    Finally, as part of Common Briefing, on January 4, 2013, the District Court entered a decision on *Stern v. Marshall*, ECF No. 427, and on April 15, 2013, it entered a decision on § 546(e) of the Bankruptcy Code. *Picard v. Citibank*, No. 11 Civ. 7825 (JSR) (S.D.N.Y.), ECF No. 35. B&H attorneys have also spent time preparing for continued litigation in this action.

## U.    MATTER 35 – NATIXIS

160.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million

under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants. *Picard v. Natixis*, Adv. No. 10-05353 (BRL) (Bankr. S.D.N.Y.).

161.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included the Natixis Defendants' motion to withdraw the reference in Common Briefing and oral argument.

162.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with the Natixis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with regard to Common Briefing. *Picard v. Natixis*, Adv. No. 10-05353 (BRL) (Bankr. S.D.N.Y.), ECF No. 55, 56.

163.    On March 19, 2013, the District Court issued an omnibus order indicating that by prior orders of the District Court, the motion to withdraw the reference filed by certain of the Natixis Defendants was to be closed without prejudice to renewal after all of the issues subject to Common Briefing have been fully adjudicated by a final order of the District Court, should any issues remain outstanding at that point. *Picard v. Natixis*, No. 11 Civ. 9501 (JSR) (S.D.N.Y.), ECF No. 16.

164.    Finally, as part of Common Briefing, the District Court entered decisions on *Stern v. Marshall* and § 546(e) of the Bankruptcy Code. *In re Madoff Sec.*, 12-MC-00115, ECF No. 427; *Picard v. Natixis,* No. 11 Civ. 9501 (JSR) (S.D.N.Y. Apr. 15, 2013), ECF No. 17. B&H attorneys have also spent time preparing for continued litigation in this action.

## V.    MATTER 36 – MERRILL LYNCH

165.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (BRL) (Bankr. S.D.N.Y.).

166.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included MLI's motion to withdraw the reference in Common Briefing and oral argument.

167.    During the Compensation Period, B&H attorneys prepared for and participated in oral argument on certain Common Briefing issues.  The District Court issued opinions on *Stern v. Marshall* and § 546(e) of the Bankruptcy Code.  *Picard v. Merrill Lynch Int'l*, 12-cv-03486 (S.D.N.Y.), ECF Nos. 7, 9.  B&H attorneys have spent time preparing for continued litigation in this action in light of these decisions.

168.    In addition, during the Compensation Period, the Trustee and B&H attorneys entered into stipulations with counsel for MLI extending MLI's time to answer or otherwise respond to the complaint while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 41, 42.

## W.    MATTER 37 – ABN AMRO

169.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN") seeking the return of approximately $237 million under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of ABN. *Picard v. ABN AMRO Bank, N.A. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. No. 10-05354 (BRL) (Bankr. S.D.N.Y.).

170.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included ABN's motion to withdraw the reference in Common Briefing and oral argument.

171.    In September 2012, ABN moved in the District Court to dismiss the amended complaint based on § 546(g) of the Bankruptcy Code. *Picard v. ABN AMRO Bank, N.A. (presently known as The Royal Bank of Scotland, N.V.)*, No. 11 Civ. 6878 (JSR) (S.D.N.Y.), ECF Nos. 33–35.

172.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, extended the defendants' time to respond to the amended complaint while awaiting determinations from the District Court with respect to Common Briefing, as well as ABN's motion to dismiss based on § 546(g) of the Bankruptcy Code. *Picard v. ABN AMRO Bank*, Adv. No. 10-05354 (ECF Nos. 54, 55, 58).

173.    On February 15, 2013, the District Court issued a bottom-line decision on ABN AMRO's motion to dismiss the amended complaint based on § 546(g) of the Bankruptcy Code. *In re Madoff Sec.*, 12-MC-00115, ECF No. 451.

174.    On February 27, 2013, as a result of a settlement, B&H attorneys, on behalf of the Trustee, filed a notice of voluntary dismissal of Rye Select Broad Market XL Fund, L.P. in this Court. *Picard v. ABN AMRO Bank*, Adv. No. 10-05354 (BRL) (Bankr. S.D.N.Y.), ECF No. 56.

175.    Finally, as part of Common Briefing, the District Court entered decisions on *Stern v. Marshall* and § 546(e) of the Bankruptcy Code.  *In re Madoff Sec.*, 12-MC-00115 (JSR) (S.D.N.Y.), ECF No. 427; *Picard v. ABN AMRO Bank, N.A. (presently known as The Royal Bank of Scotland, N.V.)*, No. 11 Civ. 6878 (JSR) (S.D.N.Y.), ECF No. 40.  B&H attorneys also spent time preparing for continued litigation in this action.

## X.    MATTER 38 – BANCO BILBAO

176.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of at least $45 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of BBVA.  *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. No. 10-05351 (BRL) (Bankr. S.D.N.Y.).

177.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included BBVA's motion to withdraw the reference in Common Briefing and oral argument.

178.    During the Compensation Period, the District Court issued opinions on *Stern v. Marshall* and § 546(e) of the Bankruptcy Code.  *In re Madoff Sec.*, 12-MC-00115 (JSR) (S.D.N.Y.), ECF Nos. 427, 439.  B&H attorneys spent time preparing for continued litigation in this action in light of these decisions.

179.    In addition, the Trustee and B&H attorneys entered into stipulations with counsel for BBVA extending BBVA's time to supplement or alternatively withdraw its pending motion to dismiss and adjourning the hearing on its then pending motion to dismiss while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. No. 10-05351 (BRL) (Bankr. S.D.N.Y.), ECF No. 62, 63.

## Y.     MATTER 40 – MEDICI

180.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and civil action against Sonja Kohn, Unicredit S.p.A. ("UniCredit"), and numerous other financial institutions, entities, and individuals (collectively, the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants.  *Picard v. Kohn*, Adv. No. 10-05411 (BRL) (Bankr. S.D.N.Y. Dec. 17, 2012).  This matter also covers work performed by B&H attorneys on the English matter *Madoff Sec. Int'l Ltd. (MSIL) v. Raven & Ors*, [2011] EWHC (Civ) 3102 (Eng.). The liquidator of MSIL, with the assistance of B&H attorneys, was able to obtain a worldwide freeze against Sonja Kohn and certain of her entities in the amount of approximately £28 million. Trial in this matter commenced in London in June 2013 and concluded on July 18, 2013.  The matter is under advisement.

181.    In addition to the tasks outlined above, during the Compensation Period, the Trustee participated in certain Austrian criminal proceedings against Sonja Kohn, Bank Medici, and Bank Austria as a victim and, in certain Liechtenstein criminal proceedings, against Sonja Kohn and Urszula Radel-Leszczynski as a private participant.  The Trustee also assisted his English counsel in relation to certain matters regarding Sonja Kohn under the English court's order, including preparing for cross-examination of Sonja Kohn, and enforcing the worldwide freezing order.  B&H attorneys also continued investigating Sonja Kohn and her co-conspirators throughout Europe.

**Z.    MATTER 42 – EQUITY TRADING**

182.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Ltd., Equity Trading Fund Ltd., and BNP Paribas Arbitrage (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants. *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (BRL) (Bankr. S.D.N.Y. Dec. 1, 2010), ECF No. 2.

183.    The Equity Trading Defendants filed motions, or joinders to the motions, in the District Court to withdraw the reference from this Court.  (ECF Nos. 16–18, 21).  The District Court included the motions in its orders for Common Briefing and oral argument.

184.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys and the Equity Trading Defendants renegotiated the right to file an amended complaint and revised the briefing schedule for any motions in response to the amended complaint.  (ECF Nos. 34–35).  B&H attorneys prepared a litigation action plan and conducted an in-depth document review in contemplation of renewed litigation.  The pre-trial conference is scheduled for March 26, 2014.

**AA.    MATTER 43 – DEFENDER**

185.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Defender Ltd., Reliance Management (BVI) Ltd., Reliance Management (Gibraltar) Ltd., Reliance International Research LLC, Tim Brockmann, and Justin

Lowe[16] (collectively, the "Defender Defendants") seeking the return of over $93 million under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable

law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection

with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants.

*Picard v. Defender Ltd.*, Adv. No. 10-05229 (BRL) (Bankr. S.D.N.Y. Dec. 5, 2010), ECF No. 1.

186.    On April 2, 2012, the Defender Defendants filed motions in the District Court to

withdraw the reference from this Court. (ECF Nos. 24, 28).  The District Court partially granted

these motions and included these motions in its orders for Common Briefing and oral argument.

187.    On April 27, 2012, defendants Reliance Management (BVI) Ltd., Reliance

Management (Gibraltar) Ltd., and Tim Brockmann filed a motion in this Court to dismiss for

lack of personal jurisdiction.  (ECF No. 36).  During the Compensation Period, B&H attorneys

prepared for the oral argument on that motion, which was scheduled for December 19, 2012.

However, at the scheduled hearing, this Court converted the hearing into a Rule 16 conference

on the motion to dismiss.

188.    In addition to preparing for the oral argument and participating in the Rule 16

conference on the motion identified above, during the Compensation Period, B&H attorneys met

and conferred with counsel, pursuant to this Court's instructions at the Rule 16 conference, with

respect to the motion to dismiss and to attempt to narrow the issues to be determined by this

Court.  The B&H attorneys also negotiated with the Defender Defendants to establish extensions

of time to respond to the complaint.  (ECF Nos. 62 and 65).  The pre-trial conference is

scheduled for October 2, 2013.

---

[16] On November 29, 2012, the Trustee dismissed without prejudice the adversary proceeding as against
defendant Justin Lowe.  (ECF No. 58).

**BB.    MATTER 45 – LEVEY**

189.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing four avoidance actions in which Joel Levey is a named defendant (collectively, the "Levey Actions").  The Levey Actions are as follows:  *Picard v. Joel Levey*, Adv. No. 10-04282 (BRL) (Bankr. S.D.N.Y.); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-04894 (BRL) (Bankr. S.D.N.Y.); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-05441 (BRL) (Bankr. S.D.N.Y.); and *Picard v. Frances Levey Revocable Living Trust*, Adv. No. 10-05430 (BRL) (Bankr. S.D.N.Y.).  The action against Joel Levey, Adv. No. 10-04282, is a bad-faith action and seeks the recovery of fictitious profit and principal.

190.    Together with Joel Levey, the other named defendants in the Levey Actions are Aaron Levey Revocable Living Trust, Frances Levey Revocable Living Trust, Wendy Kapner Revocable Trust, Wendy Kapner, Sandra Moore, and James Kapner (collectively, the "Levey Defendants").  The individual Levey Defendants were named in their various capacities, including as grantor, trustee, and/or beneficiary.  The Levey Actions seek an aggregate recovery of approximately $6.8 million under SIPA, the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable law for the recovery of avoidable transfers and damages related to transfers made by BLMIS to or for the benefit of the Levey Defendants.

191.    During the Compensation Period, B&H attorneys conducted document review in anticipation of discovery and/or motion practice.  They also drafted requests for admission to further narrow the scope of the litigation and bolster the Trustee's action.

**CC.    MATTER 46 – GLANTZ**

192.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Richard M. Glantz and numerous other individuals, trusts and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants.  *Picard v. Richard M. Glantz*, Adv. No. 10-05394 (BRL) (Bankr. S.D.N.Y. Dec. 9, 2010).

193.    Following the filing of the complaint in this action, certain defendants were dismissed based on hardship, settlement or other reasons.  On February 1, 2012 the remaining defendants filed a motion to dismiss.  (ECF Nos. 26–30).  The parties subsequently entered into stipulations extending the Trustee's time to amend the complaint in response to the motion to dismiss.  On March 31, 2012, the defendants filed a motion to withdraw the reference in the District Court.  *Picard v. Glantz*, No. 12-cv-02778 (JSR) (S.D.N.Y. July 12, 2012), ECF Nos. 1–3.  Judge Rakoff partially granted the motion to withdraw the reference to address certain issues related to the majority of the avoidance actions brought by the Trustee in this SIPA proceeding.  (ECF Nos. 10–12).

194.    During the Compensation Period, B&H attorneys engaged in work related to these motions.  In addition to the tasks outlined above, B&H attorneys entered into stipulations regarding the timing of filing an amended complaint in response to the motion to dismiss.  B&H attorneys also worked on amending the complaint, as well as resolving claims involving certain defendants, including through the review of Hardship Program applications and settlements with certain subsequent transferee defendants.

## DD.    MATTER 52 – DONALD FRIEDMAN

195.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against S. Donald Friedman, individually and in his capacity as a beneficiary of an individual retirement account, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman (collectively, the "Friedman Defendants"), seeking the return of more than $19 million

under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Friedman Defendants. *Picard v. Friedman*, Adv. No. 10-05395 (BRL) (Bankr. S.D.N.Y.).

196.    During the Compensation Period, B&H attorneys met and conferred with opposing counsel and continued discovery, particularly document discovery.  Discovery was conducted pursuant to a second amended case management plan submitted to the Court by B&H attorneys and so ordered during the Compensation Period.  (ECF No. 75).  Pursuant to the case management plan, B&H attorneys served over twenty third-party subpoenas and engaged in an intensive review of documents produced pursuant to such subpoenas.  B&H attorneys succeeded in obtaining a forensic imaging of certain of the Friedman Defendants' hard drives and reviewed thousands of documents recovered from the hard drives.  B&H attorneys also reviewed hundreds of documents produced by the Friedman Defendants' former accountant.

197.    In connection with these productions, B&H attorneys corresponded with opposing counsel regarding potentially privileged documents identified in the document productions.

198.    B&H attorneys performed case management projects, including establishing a discovery plan, preparing monthly data-tracking and case status reports, and submitting preservation letters to third parties possessing documents relevant to the case.   B&H attorneys also conducted research on various topics and met with the Trustee's retained expert on handwriting analysis.

## EE.    MATTER 53 – MAGNIFY

199.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Osnat

Dodelson, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and Robert H. Book (collectively, the "Magnify Defendants") seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (BRL) (Bankr. S.D.N.Y.).

200.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys continued their investigation of the Magnify Defendants located outside of the United States.    B&H attorneys participated in ongoing court-ordered jurisdictional discovery over defendant Kurt Brunner; the deadline to conclude jurisdictional discovery over Mr. Brunner has been extended to October 18, 2013 by stipulation of the parties.    B&H attorneys received and reviewed document productions from defendants Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc. as part of ongoing discovery between the parties.    B&H attorneys also continue to produce documents in response to discovery requests by Defendants Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc.

201.    On February 7, 2013, B&H attorneys attended a hearing in Jerusalem, Israel, regarding the Trustee's motion to halt the voluntary liquidation of the defendant Yeshaya Horowitz Association and transfer the liquidation to a court-supervised liquidation before the Jerusalem District Court.    B&H attorneys also assisted in the drafting of various additional pleadings related to the Trustee's transfer motion in Israel, resulting in the Yeshaya Horowitz Association's withdrawal from liquidation.    Defendants Robert H. Book and R.H. Book LLC

also filed a motion to withdraw the reference on April 2, 2012. *Picard v. Robert H. Book*, No.

12-02482 (JSR) (S.D.N.Y.). B&H attorneys previously drafted various motions and pleadings

related to this motion to withdraw the reference and continue to pursue legal remedies related to

certain orders entered by the District Court.

202.    In addition to the *Picard v. Magnify* action, this matter also encompasses time

spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate

(Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the

"Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify

Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, the New

York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent

conveyances and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Apfelbaum Defendants. *Picard v. Estate (Succession) of Doris Igoin*, Adv. No.

10-04336 (BRL) (Bankr. S.D.N.Y.).

203.    During the Compensation Period, B&H attorneys continued their investigation of

the Apfelbaum Defendants, who are located outside of the United States. B&H attorneys also

participated in ongoing court-ordered jurisdictional discovery over the Apfelbaum Defendants;

the deadline to conclude jurisdictional discovery of the Apfelbaum Defendants has been

extended to October 18, 2013 by stipulation of the parties. As part of ongoing jurisdictional

discovery, B&H attorneys received and reviewed responses to discovery requests on the

Apfelbaum Defendants. The Apfelbaum Defendants filed a motion to withdraw the reference on

April 2, 2012. *Picard v. Estate (Succession) of Doris Igoin*, No. 12-02872 (JSR) (S.D.N.Y.).

B&H attorneys previously drafted various motions and pleadings related to this motion to

withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

## FF.    MATTER 54 – MENDELOW

204.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela (Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants. *Picard v. Steven B. Mendelow*, Adv. No. 10-04283 (BRL) (Bankr. S.D.N.Y.).

205.    The Mendelow Defendants moved to withdraw the reference, which was granted in part. *Picard v. Mendelow*, No. 11 Civ. 07680 (JSR) (S.D.N.Y.), ECF No. 14. B&H attorneys have continued to monitor the developments in the third-party state court action against Stephen B. Mendelow, as discovery has continued against the remaining defendants in that action. B&H attorneys have granted the Mendelow Defendants several extensions of time to respond to the complaint. Their answer is currently due on November 1, 2013.

## GG.    MATTER 58 – PJ ADMINISTRATORS

206.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the PJ Defendants. *Picard v. American Sec. Mgmt., L.P.*, Adv. No. 10-05415 (BRL) (Bankr. S.D.N.Y.).

207.    During the Compensation Period, B&H attorneys reviewed documents in preparation for potentially amending the Trustee's complaint and granted the PJ Defendants extensions of time to respond to the amended complaint pending the disposition of Common Briefing before Judge Rakoff.

## HH.    MATTER 59 – STANLEY SHAPIRO

208.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $61.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *See Picard v. Shapiro*, Adv. No. 10-05383 (BRL) (Bankr. S.D.N.Y.).

209.    During the Compensation Period, B&H attorneys continued to develop the Trustee's case against the Shapiro Defendants and consented to extending the time for the Shapiro Defendants to respond to the amended complaint before the Bankruptcy Court. The Shapiro Defendants withdrew the reference to the Bankruptcy Court and filed a motion to dismiss the amended complaint before the District Court. *Picard v. Shapiro*, No. 11-cv-05835 (JSR) (S.D.N.Y.), ECF No. 25. After initially ruling on certain issues, Judge Rakoff recently ruled on one further issue raised by the Shapiro Defendants in their motion. (ECF Nos. 36, 37). One or more issues still remain to be decided by Judge Rakoff in the District Court.

## II.    MATTER 60 – AVELLINO & BIENES

210.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (BRL) (Bankr. S.D.N.Y.).

211.    On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint in this Court.  (ECF No. 23).  That same day, certain A&B Defendants moved to withdraw the reference.  *Picard v. Frank J. Avellino*, No. 11-03882 (JSR) (S.D.N.Y.), ECF Nos. 1–3.  The motion to withdraw the reference was fully briefed in the District Court and oral argument was held on October 18, 2011.  The reference to this Court was withdrawn on several issues on February 29, 2012.  (ECF No. 20).  The Trustee and the A&B Defendants participated in Common Briefing before the District Court on the issues withdrawn.  While the District Court rendered decisions on most of the issues, at least one issue withdrawn remains pending.  As such, the motion to dismiss will continue to be held in abeyance.

212.    While the above-referenced motions have been pending, B&H attorneys have continued to engage in discovery preparation, document review, and case assessment and strategy.

## JJ.    MATTER 61 – MAXAM

213.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Maxam Absolute Return Fund, L.P., Maxam Absolute Return Fund,

Ltd., Maxam Capital Management, LLC, Maxam Capital GP LLC, Sandra L. Manzke Revocable

Trust, Sandra L. Manzke, as trustee and individually, Suzanne Hammond, Walker Manzke, and

April Bukofser Manzke (collectively, the "Maxam Defendants") seeking the return of

approximately $100 million under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent

conveyances and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Maxam Defendants. *Picard v. Maxam Absolute Return Fund, L.P.*, Adv. No.

10-05342 (BRL) (Bankr. S.D.N.Y.).

214.    On September 22, 2011, B&H attorneys petitioned this Court to enjoin an action

for a declaratory judgment of non-liability brought in the Cayman Islands against the Trustee by

Maxam Absolute Return Fund, Ltd. ("Maxam Ltd."). (ECF Nos. 42, 43). On October 12, 2011,

this Court enjoined the action based on Maxam Ltd.'s violation of the automatic stay (ECF No.

54), and on October 14, 2011, local counsel for the Trustee in the Cayman Islands received a

Notice of Discontinuance. On October 24, 2011, Maxam Ltd. filed a notice of appeal to the

District Court. (ECF No. 64). The appeal was assigned to United States District Judge J. Paul

Oetken, and the parties briefed the motion in the District Court. By Memorandum and Order

dated May 4, 2012, the District Court affirmed this Court's order enjoining the Cayman action.

*Maxam v. Picard,* No. 11-08629 (JPO) (S.D.N.Y.), ECF No. 15. Maxam filed a notice of appeal

on May 29, 2012. *Maxam v. Picard,* No. 12-2194 (2d Cir.). On September 11, 2012, Maxam

Ltd. filed its opening appellate brief with the Second Circuit. (ECF No. 41). The Trustee

subsequently prepared and filed his opposition brief on December 11, 2012. (ECF No. 62).

215.    The parties also engaged in discovery during the Compensation Period. Based on

written discovery exchanged between the parties, the Trustee reviewed, analyzed, and made

multiple productions of thousands of pages of documents to the Maxam Defendants, including

confidential documents produced to the Trustee by third parties. In turn, the Maxam Defendants

made multiple productions of documents to the Trustee. B&H attorneys spent significant time

reviewing, analyzing, and organizing documents produced by the Maxam Defendants in an effort

to prepare for depositions, anticipated motions, and trial. In addition, B&H attorneys spent time

reviewing issues pertaining to the parallel case against some of the Maxam Defendants filed by

the Town of Fairfield Pension Fund in Connecticut State Court, which settled during the

Compensation Period.

216.    On August 26, 2013, the Trustee filed a motion under Rule 9019 with this Court

to approve a settlement with the Maxam Defendants which will result in payment of all of the

Trustee's claims. (ECF No. 111). This Court scheduled a hearing for consideration of the

motion for September 17, 2013. On September 17, 2013, this Court approved the settlement

between the Trustee and the Maxam Defendants. (ECF 118).

**KK.    MATTER 62 – SUBSEQUENT TRANSFERS**

217.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing

recovery actions against entities that received subsequent transfers of Customer Property from

BLMIS. Under § 550 of the Bankruptcy Code, the Trustee may recover transfers from BLMIS

to a direct customer or from any entity to whom the customer made transfers.

218.    Prior to the Compensation Period, the Trustee briefed and presented argument at

hearings before the District Court on issues raised by subsequent transfer defendants, as well as

other defendants, that were subject to Common Briefing and hearings.

219.    As of April 30, 2013, the Trustee and the subsequent transfer defendants had

entered into stipulations extending the response date to the Trustee's complaints and amended

complaints while awaiting the ruling by the District Court on the issues subject to Common Briefing and hearings.

220.    The Trustee's investigation is ongoing and additional recovery actions will be filed.

## LL.    MATTER 65 – LEGACY

221.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC, HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.    *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y.).

222.    During the Compensation Period, B&H attorneys continued their factual investigation of the Legacy Capital Defendants.  This ongoing investigation includes, in part, the review of documents relating to the Legacy Capital Defendants' facilitation of investments of other people's money through BLMIS and actual knowledge of or willful blindness to the fraud at BLMIS.  B&H attorneys are also identifying and preparing to interview individuals with relevant knowledge of the Legacy Capital Defendants.

## MM.   MATTER 66 – LIEBERBAUM

223.    This matter characterizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Michael Lieberbaum and Cynthia Lieberbaum (together, the

"Lieberbaum Defendants") seeking the return of approximately $2.36 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lieberbaum Defendants. *Picard v. Michael Lieberbaum*, Adv. No. 10-05406 (BRL) (Bankr. S.D.N.Y.).

224.    During the Compensation Period, the Lieberbaum Defendants and the Trustee participated in settlement negotiations. While settlement negotiations were ongoing, limited discovery in this matter continued. B&H attorneys produced documents responsive to the Lieberbaum Defendants' document requests and drafted and issued several subpoenas *duces tecum* on various third parties with knowledge and information relevant to this case, including subpoenas for handwriting samples from key BLMIS employees. The Trustee rejected the settlement offer from the Lieberbaum Defendants and continues to complete discovery.

## NN.    MATTER 72 – PLAZA

225.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Plaza Investments International Limited and Notz, Stucki Management (Bermuda) Limited (collectively, the "Plaza Defendants") seeking the return of approximately $235 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Plaza Defendants. *Picard v. Plaza Invs. Int'l Ltd.*, Adv. No. 10-04284 (BRL) (Bankr. S.D.N.Y.).

226.    On July 12, 2012, Judge Rakoff issued an order as to the Plaza Defendants' fully briefed motion to withdraw the reference, stating that the Plaza Defendants raised the same issues that the District Court previously arranged for Common Briefing and directed the Plaza Defendants to continue to proceed according to the procedures arranged for Common Briefing.

*See* Order, *Picard v. Plaza Invs. Int'l Ltd.*, No. 12-cv-02646 (JSR) (S.D.N.Y. July 12, 2012), ECF No. 15.  As of April 30, 2013, a number of those issues remained under consideration by the District Court.

**OO.    MATTER 73 – BNP PARIBAS**

227.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing actions against BNP Paribas S.A., BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas (Canada), BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Investment Partners Luxembourg S.A., BNP Paribas Securities Services -- Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, "BNP Paribas") seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of BNP Paribas.  *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.,* Adv. No. 12-01576 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.,* Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV,* Adv. No. 10-05120 (BRL) (Bank. S.D.N.Y. 2010); and *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (BRL) (Bank. S.D.N.Y. 2010) (collectively, the "BNP Paribas Proceedings").

228.    Prior to the Compensation Period, the District Court included BNP Paribas' motions to withdraw the reference as part of Common Briefing pending in the District Court. During the Compensation Period, the District Court issued several opinions related to Common Briefing.  The Trustee and B&H attorneys reviewed and analyzed these rulings as they relate to the BNP Paribas Proceedings.  The Trustee and B&H attorneys also continued to prepare for

litigation in the BNP Paribas Proceedings in light of the District Court's opinions by conducting further legal and factual research.

229.    In addition to the tasks outlined above, B&H attorneys, on behalf of the Trustee, reached an agreement with BNP Paribas to extend the time to respond to the Trustee's complaints in the BNP Paribas Proceedings, while the parties await additional rulings from the District Court with respect to Common Briefing.

## V.    COMPENSATION REQUESTED

230.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

231.    The Trustee and B&H expended 121,219.30 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $385.88 for fees incurred.[17]  The blended attorney rate is $452.86.

232.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application.  In connection with the five monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $2,812,330.00 (in addition to the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $363,714.60.

---

[17] In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

233.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $5,197,304.35.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in chapter 11 cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

234.    Pursuant to the Second Amended Compensation Order, on January 24, 2013, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from December 1, 2012 through December 31, 2012 (the "December Fee Statement").  The December Fee Statement reflected fees of $7,587,904.05 and expenses of $288,192.10.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the December Fee Statement reflected fees of $7,292,462.40.  After subtracting the Court-ordered 10% holdback, SIPC advanced $6,563,216.16 for services rendered and $288,118.44 for expenses incurred by the Trustee and B&H.

235.    Pursuant to the Second Amended Compensation Order, on February 21, 2013, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from January 1, 2013 through January 31, 2013 (the "January Fee Statement").  The January Fee Statement reflected fees of $9,545,040.90 and expenses of $260,814.28.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the January Fee Statement reflected fees of $9,258,310.80.  After subtracting the Court-ordered 10% holdback,

72

SIPC advanced $8,332,479.72 for services rendered and $257,775.58 for expenses incurred by the Trustee and B&H.

236.    Pursuant to the Second Amended Compensation Order, on March 25, 2013, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from February 1, 2013 through February 28, 2013 (the "February Fee Statement").  The February Fee Statement reflected fees of $9,878,463.45 and expenses of $241,094.58.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the February Fee Statement reflected fees of $9,380,108.70.  After subtracting the Court-ordered 10% holdback, SIPC advanced $8,442,097.83 for services rendered and $241,094.58 for expenses incurred by the Trustee and B&H.

237.    Pursuant to the Second Amended Compensation Order, on April 24, 2013, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from March 1, 2013 through March 31, 2013 (the "March Fee Statement").  The March Fee Statement reflected fees of $10,505,554.65 and expenses of $325,654.63.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the March Fee Statement reflected fees of $10,172,146.05.  After subtracting the Court-ordered 10% holdback, SIPC advanced $9,154,931.45 for services rendered and $323,106.45 for expenses incurred by the Trustee and B&H.

238.    Pursuant to the Second Amended Compensation Order, on May 22, 2013, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from April 1, 2013 through April 30, 2013 (the

"April Fee Statement"). The April Fee Statement reflected fees of $11,025,396.00 and expenses of $247,868.48. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the April Fee Statement reflected fees of $10,672,711.20. After subtracting the Court-ordered 10% holdback, SIPC advanced $9,605,440.08 for services rendered and $237,239.92 for expenses incurred by the Trustee and B&H.

239.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

240.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofesionals. The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

241.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

242.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case. No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

243.    To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

244.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

245.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

246.    While the Trustee has recovered or entered into agreements to recover approximately $9.34 billion as of April 30, 2013, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

247.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or

pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief

of the Trustee.  Any fees and expenses allowed by this Court will be paid from advances by

SIPC without any reasonable expectation by SIPC of recoupment thereof.

248.    Therefore, with respect to this Application, the Trustee and B&H request that

consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by

SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its

recommendation to the Court with respect to this Application prior to the hearing scheduled to be

held on October 16**,** 2013.

249.    The Trustee and B&H submit that the request for interim allowance of

compensation and expenses made by this Application is reasonable and complies with the

provisions of the Bankruptcy Code governing applications for compensation and reimbursement

of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VII.    CONCLUSION

250.    The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $46,775,739.15 (of which $42,098,165.24 is to be paid currently and $4,677,573.91 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $1,347,334.97 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
         September 23, 2013

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ David J. Sheehan*
     Baker & Hostetler LLP
     45 Rockefeller Plaza
     New York, New York 10111
     Telephone: (212) 589-4200
     Facsimile: (212) 589-4201
     Irving H. Picard
     Email: ipicard@bakerlaw.com
     David J. Sheehan
     Email: dsheehan@bakerlaw.com
     Seanna R. Brown
     Email: sbrown@bakerlaw.com
     Heather R. Wlodek
     Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC And Bernard L. Madoff*