Baker & Hostetler LLP

45 Rockefeller Plaza

New York, New York 10111

Telephone: (212) 589-4200

Facsimile: (212) 589-4201

Irving H. Picard

Email: ipicard@bakerlaw.com

David J. Sheehan

Email: dsheehan@bakerlaw.com

Seanna R. Brown

Email: sbrown@bakerlaw.com

Heather R. Wlodek

Email: hwlodek@bakerlaw.com

Hearing Date:  December 12, 2013

Hearing Time:  10:00 a.m. (EST)

Objection Deadline:  December 5, 2013

Time:  4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**THIRTEENTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM MAY 1, 2013 THROUGH JULY 31, 2013**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .................................................................. 1

II.   BACKGROUND ..................................................................................... 6

    A.    THE SIPA LIQUIDATION.............................................................. 6

    B.    THE TRUSTEE, COUNSEL AND CONSULTANTS ....................... 6

    C.    PRIOR COMPENSATION ORDERS ............................................... 7

III.  SUMMARY OF SERVICES ..................................................................... 8

    A.    HARDSHIP PROGRAM ................................................................. 8

    B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ... 9

        i.    Recoveries Accomplished During The Compensation Period................ 9

IV.   DETAILED DESCRIPTION OF SERVICES ............................................. 10

    A.    MATTER 01 .................................................................................. 11

        i.      Task Code 01: Trustee Investigation ...................................... 11

        ii.     Task Code 02: Bankruptcy Court Litigation........................... 12

        iii.    Task Code 03: Feeder Funds................................................... 12

        iv.     Task Code 04: Asset Research and Sale .................................. 12

        v.      Task Code 05: Internal Meetings with Staff ........................... 13

        vi.     Task Code 07: Billing and Trustee Reports............................. 13

        vii.    Task Code 08: Case Administration ........................................ 13

        viii.   Task Code 09: Banks .............................................................. 14

        ix.     Task Code 10: Court Appearances .......................................... 15

        x.      Task Code 11: Press Inquiries and Responses......................... 15

        xi.     Task Code 12: Document Review ........................................... 15

        xii.    Task Code 13: Depositions and Document Productions by the
                Trustee..................................................................................... 15

        xiii.   Task Code 14: International...................................................... 16

        xiv.    Task Code 15: Charities .......................................................... 17

        xv.     Task Code 19: Non-Bankruptcy Litigation............................. 17

        xvi.    Task Code 20: Governmental Agencies .................................. 17

        xvii.   Task Code 21: Allocation ....................................................... 17

    B.    MATTER 03 – CHAIS .................................................................... 19

    C.    MATTER 04 – MERKIN ................................................................ 20

# TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|

D.   MATTER 05 – CUSTOMER CLAIMS .................................................................. 22

      i.   Customer Claims........................................................................................ 22

      ii.   General Creditor Claims ......................................................................... 23

      iii.   The Trustee Has Kept Customers Informed Of The Status Of The Claims Process ......................................................................................... 23

E.   MATTER 06 – VIZCAYA ..................................................................................... 25

F.   MATTER 07 – MADOFF FAMILY ..................................................................... 26

G.   MATTER 09 – FAIRFIELD GREENWICH......................................................... 29

H.   MATTER 11 – COHMAD SECURITIES CORPORATION .............................. 32

I.   MATTER 13 – KINGATE ...................................................................................... 33

J.   MATTER 18 – THYBO .......................................................................................... 34

K.   MATTER 21 – AVOIDANCE ACTION LITIGATION ..................................... 35

L.   MATTER 27 – JP MORGAN CHASE .................................................................. 37

M.   MATTER 28 – WESTPORT .................................................................................. 38

N.   MATTER 30 – HSBC .............................................................................................. 39

O.   MATTER 32 – UBS/LIF ........................................................................................ 40

P.   MATTER 33 – NOMURA INTERNATIONAL PLC........................................... 42

Q.   MATTER 34 – CITIBANK .................................................................................... 43

R.   MATTER 35 – NATIXIS ....................................................................................... 43

S.   MATTER 36 – MERRILL LYNCH....................................................................... 44

T.   MATTER 40 – MEDICI ......................................................................................... 45

U.   MATTER 42 – EQUITY TRADING ..................................................................... 46

V.   MATTER 43 – DEFENDER ................................................................................... 47

W.   MATTER 46 – GLANTZ ....................................................................................... 48

X.   MATTER 52 – DONALD FRIEDMAN ............................................................... 49

Y.   MATTER 53 – MAGNIFY ..................................................................................... 50

Z.   MATTER 54 – MENDELOW ................................................................................. 52

AA.   MATTER 58 – PJ ADMINISTRATORS .............................................................. 53

BB.   MATTER 59 – STANLEY SHAPIRO................................................................... 54

CC.   MATTER 60 – AVELLINO & BIENES ................................................................ 54

DD.   MATTER 61 – MAXAM ........................................................................................ 55

# TABLE OF CONTENTS

(continued)

**Page**

    EE.    MATTER 62 – SUBSEQUENT TRANSFERS ................................................... 56

    FF.    MATTER 65 – LEGACY ...................................................................................... 57

    GG.    MATTER 66 – LIEBERBAUM ........................................................................... 58

    HH.    MATTER 72 – PLAZA ....................................................................................... 58

    II.    MATTER 73 – BNP PARIBAS .......................................................................... 59

V.    COMPENSATION REQUESTED ...................................................................................... 60

VI.    RELEASE OF THE HOLDBACK ..................................................................................... 64

VII.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ........ 64

VIII.    CONCLUSION .................................................................................................................. 67

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the

"Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, the

"Debtor"), respectfully submits this thirteenth application (the "Application") on behalf of the

Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of

the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of

SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local

Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of

Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on

December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second

Amended Compensation Order"), allowing and awarding (i) interim compensation for services

performed by the Trustee and B&H for the period commencing May 1, 2013 through and

including July 31, 2013 (the "Compensation Period"), (ii) reimbursement of the Trustee's and

B&H's actual and necessary expenses incurred during the Compensation Period, and (iii) release

of $8,755,062.54 of the holdback, and in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The work completed by the Trustee and B&H during the Compensation Period

yielded significant results for BLMIS customers and the liquidation.  As recognized by the

United States District Court for the Southern District of New York (the "District Court"), the

---

[1]References hereinafter to provisions of SIPA shall omit "15 U.S.C."

Trustee "has worked relentlessly over nearly three years to bring assets that passed through [BLMIS] back into the customer fund, in order to restore nearly $20 billion in customer losses." *Picard v. J.P. Morgan Chase & Co.*, 460 B.R. 84, 89 (S.D.N.Y. 2011). Through pre-litigation and other settlements, which were approved by this Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, more than $9.35 billion as of July 31, 2013—more than 53% of the $17.5 billion of principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.[2]

2.      On October 5, 2011, the Trustee, with this Court's approval, distributed $311.854 million, or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to October 5, 2011 and through the end of the Compensation Period, an additional $189.843 million was distributed as catch-up payments, bringing the total first interim distribution amount to $501.697 million.[3]

3.      On September 19, 2012, the Trustee, with this Court's approval, distributed $2.479 billion, or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to September 19, 2012 and through the end of the Compensation Period, an additional $1.161 billion was distributed as catch-up payments, bringing the total second interim distribution amount to $3.640 billion.[4]

---

[2] Almost $20 billion of principal was lost in the Ponzi scheme in total. Of the $20 billion, approximately $17.5 billion of principal was lost by those who filed claims.

[3] Subsequent to the Compensation Period ending on July 31, 2013, an additional $13.937 million was distributed as catch-up payments, bringing the total first interim distribution amount to $515.634 million through November 21, 2013.

[4] Subsequent to the Compensation Period ending on July 31, 2013, an additional $101.623 million was distributed as catch-up payments, bringing the total second interim distribution amount to $3.742 billion through November 21, 2013.

4.      On March 29, 2013, the Trustee, with this Court's approval, distributed approximately $506.227 million, or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to March 29, 2013 and through the end of the Compensation Period, an additional $1.929 million was distributed, bringing the total third interim distribution amount to $508.156 million.[5]  When combined with the approximately $501.697 million first interim distribution, the $3.640 billion second interim distribution and approximately $808.677 million of advances committed by the Securities Investor Protection Corporation ("SIPC"),[6] the Trustee has distributed approximately $5.459 billion to BLMIS customers through the end of the Compensation Period.[7]  This represents a significant milestone in this litigation, with 1,106 BLMIS accounts fully satisfied through the end of the Compensation Period.  The 1,106 fully satisfied accounts represent more than 50% of accounts with allowed claims.

5.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers.  Rather, all fees, expenses, and

---

[5]Subsequent to the Compensation Period ending on July 31, 2013, an additional $14.297 million was distributed as catch-up payments, bringing the total third interim distribution amount to $522.453 million through November 21, 2013.

[6]SIPC committed to pay approximately $808.677 million through July 31, 2013 and approximately $811.247 million through November 21, 2013.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer.  Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

[7]The Trustee has distributed approximately $5.591 billion to BLMIS customers to date.

administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), Greenfield Stein & Senior LLP ("Greenfield"), and La Tanzi, Spaulding & Landreth, P.C. ("La Tanzi"), and consultants, are paid out of administrative advances made by SIPC. As this Court affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

6.    As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for *pro rata* distribution to BLMIS customers whose claims have been allowed by the Trustee.

7.    In a liquidation proceeding such as this, where the general estate is insufficient to pay trustee compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2). SIPC has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered. Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable

rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

8.      During the hearing on the Eighth Interim Fee Application, this Court acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world.  It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

9.      No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008.  Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by litigating and settling cases for the return of customer property ("Customer Property").  Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his protection of Customer Property.  The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

10.     As this Court has recognized, "[w]ith respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest most complex sets of litigation that have come down the pike.  It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm or any organization to deal with."  Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II. BACKGROUND

### A. THE SIPA LIQUIDATION

11.    The Trustee and B&H's prior interim fee applications, each of which is fully incorporated herein,[8] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

### B. THE TRUSTEE, COUNSEL AND CONSULTANTS

12.    The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

13.    In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

14.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting

---

[8] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); October 1, 2011 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); February 1, 2012 to June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097); July 1, 2012 to November 30, 2012 (the "Eleventh Interim Fee Application") (ECF No. 5333); and December 1, 2012 to April 30, 2013 (the "Twelfth Interim Fee Application") (ECF No. 5490).

("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

### C.    PRIOR COMPENSATION ORDERS

15.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| Applications | Orders Entered[9] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[10] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | October 17, 2013 (ECF No. 5547) |

[9]On March 7, 2013, this Court entered an Errata Order (ECF No. 5258), to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCA Creque, an additional $0.60 became due and owing to that firm.

[10]This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

III.    **SUMMARY OF SERVICES**

16.    A SIPA proceeding contemplates the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.  Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

A.    **HARDSHIP PROGRAM**

17.    The Trustee and B&H implemented a Hardship Program in an effort to accelerate SIPA protection for BLMIS victims suffering hardship.  The first phase of this program is more fully described in prior interim fee applications.  Based on the information received, the Trustee did not sue approximately 250 individuals.

18.    The Trustee expanded the Hardship Program into a second phase at the time he commenced avoidance actions.  While the Trustee's authority includes the pursuit of avoidance actions to recover Customer Property, the Trustee has not pursued avoidance actions against BLMIS account holders suffering proven hardship.  In November 2010, the Trustee announced that, to forego an avoidance action, the account holder must submit financial and other pertinent information.  Through this program, the Trustee has worked with a substantial number of applicants to confirm their hardship status and dismissed defendants in avoidance actions.

19.    As of July 31, 2013, the Trustee had received 495 applications from avoidance action defendants relating to 314 adversary proceedings.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 197 Hardship Program applicants-defendants from avoidance actions.  As of July 31, 2013, there were 74 applications still under review and 224 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of

the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

20.    The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of this hotline.

**B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY**

**i.    <u>Recoveries Accomplished During The Compensation Period</u>**

21.    Without the need for protracted litigation, during the Compensation Period, the Trustee succeeded in settling thirteen cases for $7,018,327.99.  As of July 31, 2013, the Trustee had successfully recovered approximately $9.35 billion.

22.    The Trustee entered into settlements subsequent to the Compensation Period that will bring an additional $153,774,331.00 into the Customer Fund.

23.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, could result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

24.    Through the end of the Compensation Period, the Trustee recovered $452,905,944.69 as a result of preference and other settlements that were made pursuant to agreements subject to the net equity dispute.  The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

25.    Due to the release from escrow of the funds received from the Tremont settlement, the Trustee filed a motion for the third allocation and distribution from the Customer Fund, which was granted by this Court on March 13, 2013.  Pursuant to this motion, the Trustee

distributed approximately $508.156 million to customers with allowed claims through the end of the Compensation Period[11].

## IV.    DETAILED DESCRIPTION OF SERVICES

26.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims.  The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

27.    Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

28.    Matter Numbers 03-73 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.[12]  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks:  conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

---

[11]Through November 21, 2013, the Trustee has distributed $522.453 million in connection with the third allocation and distribution from the Customer Fund.

[12]Reserved and closed matter numbers will not be listed in this Application.  Matter numbers reserved or closed during prior compensation periods can be found in the respective interim fee applications.

### A.    MATTER 01

29.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

### i.    Task Code 01: Trustee Investigation

30.    This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

31.    The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

32.    During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.  B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties, as well as continued the investigation of Madoff Securities International Ltd. ("MSIL").

33.    B&H attorneys discussed and conferenced with SIPC, Windels Marx, Young Conaway, and International Counsel regarding investigation and litigation strategy, prepared requests for discovery and negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

ii.  **Task Code 02: Bankruptcy Court Litigation**

34.     This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

35.     During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations.  They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including bankruptcy matters, privilege and evidence.

iii.  **Task Code 03: Feeder Funds**

36.     This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors.  The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and bring actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

iv.  **Task Code 04: Asset Research and Sale**

37.     This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

38.     During the Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with the liquidation of assets held by Madoff Family, LLC; monitored the public filings of Stemline Therapeutics, Inc. and strategized as to its sale; conducted due diligence in connection with certain interests of Madoff Energy LLC and its affiliates; and continued to value the intellectual property interest in Primex, evaluate corporate governance issues and strategize as to its sale.

39.     During the Compensation Period, the Trustee continued to recover funds from securities that BLMIS purchased and sold prior to December 11, 2008 in connection with its proprietary trading operations.

###### v.     Task Code 05: Internal Meetings with Staff

40.     This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

###### vi.     Task Code 07: Billing and Trustee Reports

41.     This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

###### vii.     Task Code 08: Case Administration

42.     This category relates to time spent assisting the efficient administration of the case.

43.     The Trustee filed several motions before this Court that will govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures will ensure consistency and transparency, as well as compliance with the Bankruptcy Code and SIPA.

44.     On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main

proceeding and all related adversary proceedings. (ECF No. 4469). This Court entered the Order on December 5, 2011. (ECF No. 4560).

45.    On October 28, 2011, this Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012. (ECF No. 4483). Thereafter, on January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012. (ECF No. 4483).

46.    During the Compensation Period, the Trustee and B&H attorneys conducted conflict checks; implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents; created protocols relating to discovery, filings, and external communications; implemented and managed work flows between B&H and Consultants; oversaw administrative aspects of the retention of experts, other professionals and vendors, and monitored their ongoing activities; calendared and docketed all hearings, return dates, and deadlines in the main liquidation proceeding and all other litigations; monitored and tracked dockets of related proceedings; and managed and monitored staffing needs.

### viii.    Task Code 09: Banks

47.    Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS. Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks. Separate matter numbers have been assigned to banks sued by the Trustee.

### ix.    Task Code 10: Court Appearances[13]

48.    This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### x.    Task Code 11: Press Inquiries and Responses

49.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### xi.    Task Code 12: Document Review

50.    This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

### xii.    Task Code 13: Depositions and Document Productions by the Trustee

51.    This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter and responding to discovery propounded to the Trustee by various third parties.

52.    During the Compensation Period, the Trustee and B&H attorneys prepared, reviewed, finalized, and served subpoenas; monitored subpoenas issued and documents produced in response, and followed up regarding deficient document productions; prepared, reviewed, finalized, and served initial disclosures, case management plans, and motions for filing with this Court to implement case-wide discovery procedures; prepared, reviewed, finalized, and served

---

[13]Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

discovery requests; processed, uploaded, and analyzed incoming document productions; responded to discovery requests served on the Trustee by defendants and third parties; addressed the issue of de-designating confidential documents for production; analyzed, tracked, and processed BLMIS data; coordinated with the Trustee's expert witnesses to prepare for trial; researched foreign jurisdiction discovery laws; finalized and filed the Trustee's Amended Motion for an Order Establishing Procedures for Third-Party Data Rooms and Modifying the June 6, 2011 Litigation Protective Order and engaged in post-filing activities with producing parties and certain defendants regarding same; and oversaw work performed by the Trustee's vendors.

### xiii.    Task Code 14: International

53.    The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands, Canada, the Cayman Islands, England, France, Gibraltar, Guernsey, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

54.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions. The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

55.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

### xiv.    Task Code 15: Charities

56.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

### xv.    Task Code 19: Non-Bankruptcy Litigation

57.    This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

### xvi.    Task Code 20: Governmental Agencies

58.    This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the United States Attorney's Office for the Southern District of New York, the Internal Revenue Service, various congressional representatives, and other government agencies.

### xvii.    Task Code 21: Allocation

59.    This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

60.    The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

61.    On May 4, 2011, the Trustee sought entry of an order approving an initial allocation of property to the Customer Fund, and authorizing an interim distribution to customers

whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (the "First Allocation Motion"). The First Allocation Motion was unopposed, and on July 12, 2011, this Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers. (ECF No. 4217).

62.     From October 5, 2011 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $501.697 million,[14] or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. The first interim distribution was made to 1,303 BLMIS account holders, and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been previously satisfied.

63.     On July 26, 2012, the Trustee filed a motion for a second allocation and second interim distribution to customers. (ECF No. 4930). On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% reserve. (ECF No. 4997).

64.     From September 19, 2012 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $3.640 billion,[15] or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. The second interim distribution was made to 1,289 BLMIS account holders, and 39 payments went to claimants who

---

[14]Subsequent to the Compensation Period ending on July 31, 2013, an additional $13.937 million was distributed as catch-up payments, bringing the total first interim distribution amount to $515.634 million through November 21, 2013.

[15]Subsequent to the Compensation Period ending on July 31, 2013, an additional $101.623 million was distributed as catch-up payments, bringing the total second interim distribution amount to $3.742 billion through November 21, 2013.

qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

65.     On February 13, 2013, the Trustee filed a motion for a third allocation and third interim distribution to customers.  (ECF No. 5230).  On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing a Third Interim Distribution to Customers, with a 3% reserve.  (ECF No. 5271).

66.     From March 29, 2013 through the end of the Compensation Period, the Trustee distributed approximately $508.156 million,[16] or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Upon completion of the third interim distribution, more than 50% of the accounts with allowed customer claims have been satisfied. The third interim distribution was made to 1,107 BLMIS account holders, and 26 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

### B.     MATTER 03 – CHAIS

67.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Chais, Pamela Chais, and a number of related entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for preferences, fraudulent conveyances, and damages in connection with certain transfers of

---

[16]Subsequent to the Compensation Period ending on July 31, 2013, an additional $14.297 million was distributed as catch-up payments, bringing the total third interim distribution amount to $522.453 million through November 21, 2013.

property by BLMIS to or for the benefit of the Chais Defendants. *Picard v. Chais*, Adv. No. 09-01172 (BRL) (Bankr. S.D.N.Y.).

68.     In addition to the tasks outlined above, during the Compensation period, B&H attorneys continued to participate in mediation discussions pursuant to the mediation ordered by this Court on July 18, 2012 in *Picard v. Chais* and the related action to enforce the automatic stay and enjoin certain state court third-party actions brought by investors of Stanley Chais and by the California Attorney General.  B&H attorneys also continued their investigation of the Chais Defendants and likely recipients of subsequent transfers from the Chais Defendants-related BLMIS accounts.

69.     Certain of the Chais Defendants also filed two motions to withdraw the reference to the District Court on April 2, 2012 (docketed as Nos. 12 Civ. 02371 (JSR) and 12 Civ. 02658 (JSR) (S.D.N.Y.)).  B&H attorneys previously drafted various motions and pleadings related to these motions to withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

## C.     MATTER 04 – MERKIN

70.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation, and Merkin's funds: Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., and Ascot Fund Limited (together, the "Merkin Defendants") alleging that Merkin knew or was willfully blind to the fact that Madoff's investment advisory business was predicated on fraud, and seeking the return of nearly $560 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by

BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin*, Adv. No. 09-01182 (BRL) (Bankr. S.D.N.Y.).

71.     During the Compensation Period, B&H attorneys continued to advance the litigation of the Merkin case. Following favorable rulings by the court-appointed discovery arbitrator, including an order in March 2013, the Trustee's counsel continued to press the Merkin Defendants to comply with all aspects of the arbitrator's rulings through written demand letters, as well as multiple meet and confers.

72.     B&H attorneys also analyzed the flow of funds from BLMIS to the Merkin Defendants and pursued Rule 2004 discovery from Lauren Merkin who, along with her husband, received subsequent transfers of funds or was the beneficiary of subsequent transfers to Merkin and other third parties.

73.     During the Compensation Period, B&H attorneys continued preparing for fact witness depositions and expert discovery by conducting extensive and ongoing analysis of documents produced by the Merkin Defendants and from other third parties.  B&H attorneys' tasks included identification of, preparation for and conducting interviews and depositions of potential fact witnesses, including financial industry representatives, and other third parties and defendant witnesses.  The Trustee continued to issue additional document requests to the Merkin Defendants.  B&H attorneys also issued additional subpoenas for documents from other third parties.

74.     During the Compensation Period, B&H attorneys devoted significant time and effort to preparing the third amended complaint, which alleges that Merkin had knowledge of, or was willfully blind to the fraud at BLMIS.  The third amended complaint was filed on August

21

30, 2013 in accordance with an agreed schedule among the Trustee and the Merkin Defendants, and approved by the Court.

75.     Following a June 25, 2012 announcement by the New York Attorney General ("NYAG") of a settlement among the NYAG and the receivers for the Merkin Funds, the Trustee filed a complaint, extensive memorandum of law and related papers seeking an injunction seeking to enjoin the NYAG and the Merkin Defendants from consummating the settlement, and from transferring or otherwise dissipating any assets. *Picard v. Schneiderman (In re Bernard L. Madoff)*, Adv. No. 12-01778 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 1–3. The NYAG and other Merkin Defendants thereafter filed a joint motion to withdraw the reference of the injunction application, which the District Court granted. *Picard v. Schneiderman*, 12 Civ. 06733 (S.D.N.Y.), ECF Nos. 1, 12. Following oral argument on March 25, 2013, the District Court denied the Trustee's application on April 15, 2013. (ECF No. 53).

76.     During the Compensation Period, the Trustee appealed the District Court's decision to the Second Circuit. *Picard v. Schneiderman*, 13-1785 (2d. Cir. May 7, 2013). The Trustee filed his opening appellate brief on June 6, 2013, the Merkin Defendants and the receivers for the funds filed their responses on July 19, 2013, and the Trustee filed his reply brief on August 7, 2013. Oral argument before the Second Circuit took place on October 10, 2013, and the matter is awaiting decision.

### D.     MATTER 05 – CUSTOMER CLAIMS

#### i.     <u>Customer Claims</u>

77.     During the Compensation Period, the Trustee allowed $10,391,693.80 in customer claims, bringing the total amount of allowed claims as of July 31, 2013 to $11,086,356,391.05. As of July 31, 2013, the Trustee has paid or committed to pay $808,677,373.62 in cash advances from SIPC. This is the largest commitment of SIPC funds of

any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.

78.     As of July 31, 2013, 164 claims relating to 119 accounts were "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code.  Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### ii.     General Creditor Claims

79.     As of July 31, 2013, the Trustee had received 427 timely and 21 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 448 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $264.9 million.  At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

80.     Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

81.    The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

82.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of July 31, 2013, the Trustee and his professionals had received and responded to more than 7,000 e-mails from BLMIS customers and their representatives via the Trustee Website.

83.    The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of July 31, 2013, the Trustee, B&H, and the Trustee's professionals had fielded more than 7,700 hotline calls from claimants and their representatives.

84.    The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

85.    The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review

process, the customer claims database, reconciliation of investment advisory accounts (the "BLMIS IA Accounts"), and other matters of interest in determining claims.

86.     The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

### E.     MATTER 06 – VIZCAYA

87.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Ltd. ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants. *Picard v. Vizcaya Partners Ltd.*, Adv. No. 09-01154 (BRL) (Bankr. S.D.N.Y.).  The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers.

88.     During the Compensation Period, B&H attorneys continued to advance discovery, including the review of documents for relevance and production in response to the Vizcaya Defendants' document requests.  B&H attorneys coordinated with consultants on background investigations on persons of interest.  B&H attorneys also collaborated with foreign counsel with regard to the Trustee's foreign proceedings in Gibraltar, including preparations for a hearing on a motion to strike the proceeding seeking to enforce the Trustee's default judgment against Vizcaya and Asphalia.  Following the Trustee's success on opposing the motion, B&H attorneys continued to work with foreign counsel in preparation for the appeal of the Gibraltar Court decisions brought by Vizcaya and Asphalia.

F.    **MATTER 07 – MADOFF FAMILY**

89.    This matter categorizes time spent by B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.  On October 2, 2009, the Trustee filed a complaint against Peter Madoff, Andrew Madoff, the late Mark Madoff, and Shana Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants.  *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.), ECF No. 1.  On March 15, 2010, each of the defendants separately moved this Court to dismiss the Trustee's complaint.  (ECF Nos. 13–19).  On September 22, 2011, this Court denied in part and granted in part the motions to dismiss.  (ECF No. 55). Defendant Andrew Madoff, individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave to seek interlocutory review of this Court's September 22, 2011 decision. (ECF No. 56).  Following briefing and oral argument, the District Court denied that motion on December 22, 2011.  (ECF No. 74).

90.    In accordance with this Court's September 22, 2011 decision, on November 7, 2011, the Trustee filed an amended complaint against the Family Defendants, identifying additional transfers and seeking the return of over $225 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.), ECF No. 64.  Shana Madoff, Peter Madoff, and Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, each answered the amended complaint on January 17, 2012.  (ECF Nos. 78, 79, 80).

26

91.     On December 23, 2011, the Trustee filed a motion seeking leave to file a second amended complaint, adding additional claims and defendants to the action against the Family Defendants. (ECF No. 71). On April 4, 2012, following briefing and oral argument, this Court issued a written opinion denying in part and granting in part the Trustee's motion. (ECF No. 106).    On May 4, 2012, the Trustee filed a second amended complaint against the Family Defendants and named as additional defendants Mark Madoff's widow, Stephanie Mack, and Andrew Madoff's wife, Deborah Madoff. (ECF No. 113).    The Trustee also named Mark Madoff's ex-wife, Susan Elkin, as a subsequent transferee defendant.    Defendants Andrew Madoff, the Estate of Mark D. Madoff, Shana Madoff, and Ms. Elkin answered the second amended complaint on July 2, 2012.    (ECF Nos. 124–126).    On April 2, 2012, Stephanie Mack and Deborah Madoff moved to withdraw the reference from this Court, and their motions are pending before the District Court.    (ECF Nos. 101, 104).    The Trustee has adjourned the time for Stephanie Mack and Deborah Madoff to respond to the second amended complaint.    (ECF Nos. 128, 134, 139, 141, 149, 152, 154, 157, 159, 165).

92.     On June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion.  Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the United States of America.  Subsequently, on February 6, 2013, Peter Madoff was dismissed from this action in connection with the entry of a Consent Judgment in the amount of $90,390,500.00. (ECF No. 145).  On February 7, 2013, the Trustee dismissed a separate adversary proceeding against Marion Madoff through a Notice of Voluntary Dismissal with Prejudice.  *Picard v. Marion Madoff*, Adv. No. 10-04310 (BRL) (Bankr. S.D.N.Y.), ECF No. 17.

93.    In connection with Peter Madoff's plea agreement, his daughter, defendant Shana Madoff, also forfeited to the United States of America substantially all of her assets that were the subject of the Trustee's claims against her.    Subsequently, on March 18, 2013, the Trustee dismissed the case against Shana Madoff with prejudice.  (ECF No. 148).

94.    The Trustee commenced two adversary proceedings against members of Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff.  *Picard v. Stephanie S. Mack*, Adv. No. 10-05328 (BRL) (Bankr. S.D.N.Y.); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (BRL) (Bankr. S.D.N.Y.).  Amended complaints were filed in these actions on February 7, 2012.  *Picard v. Mack*, Adv. No. 10-05328, ECF No. 23; *Picard v. Deborah Madoff*, Adv. No. 10-05332, ECF No. 13.  All defendants in both actions answered on March 23, 2012.  *Picard v. Mack*, Adv. No. 10-05328, ECF No. 30; *Picard v. Deborah Madoff*, Adv. No. 10-05332, ECF No. 20.  Deborah Madoff also moved to withdraw the reference from this Court on April 2, 2012.  *Picard v. Deborah Madoff*, Adv. No. 10-05332, ECF No. 22.    That motion is currently pending before the District Court.    The pre-trial conference for these actions in this Court is currently scheduled for December 18, 2013.  *Picard v. Mack*, Adv. No. 10-05328, ECF No. 48; *Picard v. Deborah Madoff*, Adv. No. 10-05332, ECF No. 43.

95.    The Trustee commenced two adversary proceedings against foundations created by and named for Andrew and the late Mark Madoff and their spouses: *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325 (BRL) (Bankr. S.D.N.Y.) and *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330 (BRL) (Bankr. S.D.N.Y.).  The defendants in these cases have answered, and the pre-trial conferences are currently scheduled for December

18, 2013. *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, ECF No. 30; *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, ECF No. 35.

96.      The Trustee commenced various adversary proceedings against Madoff's relatives beyond his immediate family to recover preferences and fraudulent conveyances.  Currently, the Trustee's cases styled *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323 (Bankr. S.D.N.Y.), *Picard v. NTC & Co. LLP*, Adv. No. 10-04293 (Bankr. S.D.N.Y.), and *Picard v. Schaum & Wiener Profit Sharing Plan & Trust FBO Martin Schaum*, Adv. No. 10-04329 (Bankr. S.D.N.Y.) remain pending.

### G.      MATTER 09 – FAIRFIELD GREENWICH

97.      This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwhich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds.  *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y. May 18, 2009).  This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

98.      On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint

29

Liquidators"). (ECF No. 95). On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million, ECF No. 108, Sentry in the amount of $3.054 billion, ECF No. 109, and Sigma in the amount of $752.3 million, ECF No. 110.

99.     As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

100.     On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y.), ECF No. 107. In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

101.     On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing (as defined herein) and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court.

102.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (BRL) (Bankr. S.D.N.Y.), Picard *v. Barrenche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (BRL) (Bankr. S.D.N.Y.).  None of the defendants in the three actions have yet responded to the Trustee's complaints.

103.    On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement.  *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM) (S.D.N.Y.), ECF No. 997.  On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement. *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (BRL) (Bankr. S.D.N.Y.), ECF No. 2.   On December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court. (ECF No. 11).  On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.,* 12 Civ. 9408(VM) (S.D.N.Y.), ECF No. 30.  On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the Anwar settlement.  (ECF No. 59).  On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the Trustee's application for an injunction against the implementation of the Anwar settlement. (ECF No. 61).

104.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the Anwar action.  (ECF 1054).  On March 8, 2013, the

District Court deemed the pre-motion conference letter to be a motion to intervene and denied the Trustee's request. (ECF No. 1071). On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the Anwar action. (ECF. 1106).

105. Briefing on both appeals of the Anwar decisions was completed on June 7, 2013. Oral argument on the appeals was set for October 10, 2013.

106. As of April 30, 2013, the Trustee and the remaining defendants have entered into stipulations extending the response date to the Trustee's complaints while awaiting the rulings by the District Court on the issues subject to Common Briefing (as defined herein) and hearings.

## H.    MATTER 11 – COHMAD SECURITIES CORPORATION

107. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), its principals, certain employees of Cohmad (the "Cohmad Registered Representatives"), and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (BRL) (Bankr. S.D.N.Y.).

108. This matter also includes time spent by the Trustee and B&H attorneys pursuing avoidance actions against BLMIS customers who were referred to BLMIS by the Cohmad Defendants and are net winners.

109. During the Compensation Period, B&H attorneys continued to move forward with discovery and developing the cases at issue.

## I.    MATTER 13 – KINGATE

110.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the "Kingate Funds"), and other defendants, seeking, among other relief, the avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law of preferential and fraudulent transfers made by BLMIS to or for the benefit of the Kingate Funds in the approximate total amount of $875 million.[17]    On June 8, 2011, B&H attorneys prepared, filed, and served a third amended complaint, which added a number of additional foreign defendants, significantly expanding the case. *Picard v. Federico Ceretti*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.), ECF No. 32 (the "U.S. Action").

111.    The Kingate Funds are in liquidation proceedings in the British Virgin Islands and Bermuda under the auspices of court-appointed joint liquidators.  The management company for the Kingate Funds and one of the foreign defendants in the U.S. action, Kingate Management Limited ("KML"), is also in a liquidation proceeding in Bermuda, which is being administered by the Official Receiver of Bermuda.

112.    The Kingate Funds and all other defendants filed motions in the District Court, or joinders to such motions, to withdraw the reference from this Court on various grounds. *Picard v. Kingate Global Fund, Ltd.*, No. 12 Civ. 02441 (JSR) (S.D.N.Y.), ECF No. 1.  The motions were fully briefed and argued before the District Court.  Pending a resolution of all issues before the District Court, the Trustee has continued to extend the time for the defendants in the U.S.

---

[17]As a result of a settlement between the Trustee and the United States of America on behalf of the Internal Revenue Service, approved by order of this Court dated December 21, 2011, the aggregate amount of the alleged transfers has been adjusted to approximately $825 million.  *See* Order, Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.), No. 08-01789 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2011), ECF No. 4602.

action to answer or otherwise respond to the third amended complaint by various stipulations filed with this Court.

113.    By an order of the Bermuda Civil Court (the "Bermuda Court") dated October 3, 2012, upon application of the Kingate Funds' joint liquidators seeking leave to pursue their claims against Kingate Management and other defendants in Bermuda, the Bermuda Court lifted the litigation stay that was in effect in that jurisdiction and granted other relief in favor of the joint liquidators.  On the basis that the Kingate Funds were seeking to recover property that had been transferred from BLMIS, which was Customer Property that the Trustee was seeking to recover in the U.S. action, the Trustee prepared and filed a complaint for declaratory and injunctive relief against the Kingate Funds and an application to preliminarily enjoin the joint liquidators from prosecuting the Kingate Funds' claims against KML and other defendants in Bermuda.  Upon request of the joint liquidators, and in light of the Trustee's desire, if possible and in the best interests of the estate, to settle all disputes between the parties on a global basis, the Trustee has continued to extend the joint liquidators' deadline to answer the complaint and the preliminary injunction application.

114.    In furtherance of global settlement negotiations with the Kingate Funds, the Trustee's counsel has continued to discuss settlement with counsel for the joint liquidators of the Kingate Funds, and both parties have taken steps toward documenting a settlement on the terms under negotiation.  The Trustee and his attorneys continue to prepare for litigation here and abroad should a global settlement be unavailing despite the Trustee's best efforts.

**J.    MATTER 18 – THYBO**

115.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Thybo Asset Management Ltd., Thybo Global Fund Ltd., Thybo Return Fund Ltd., and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return

34

of approximately $62 million under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection

with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants. On

February 10, 2011, the Trustee filed an amended complaint that also objected to Thybo Stable

Fund Ltd.'s $217 million customer claim. *Picard v. Thybo Asset Mgmt. Ltd.*, Adv. No. 09-01365

(BRL) (Bankr. S.D.N.Y. Feb. 10, 2011), ECF No. 20.

116.    On July 5, 2012, Judge Rakoff issued an order as to the Thybo Defendants' fully

briefed motion to withdraw the reference, stating that the Thybo Defendants raised the same

issues that the District Court previously arranged for Common Briefing (as defined herein) and

directing the Thybo Defendants to continue to proceed according to the procedures arranged for

Common Briefing. *See* Order*, Picard v. Thybo Asset Mgmt. Ltd.*, No. 11 Civ. 07576 (JSR)

(S.D.N.Y. July 5, 2012), ECF No. 17. As of July 31, 2013, a number of those issues remained

under consideration by the District Court.

117.    B&H attorneys also worked with legal counsel for the Thybo Defendants to adjust

the schedule for a hearing on a motion by the Thybo Defendants to dismiss the Trustee's

amended complaint. (ECF No. 24). On February 15, 2013, the parties entered into a stipulation

further adjourning the hearing on the Thybo Defendants' motion to dismiss, in light of the

common legal issues that were being addressed in the motion to withdraw the reference

proceedings. (ECF No. 55).

## K.    MATTER 21 – AVOIDANCE ACTION LITIGATION

118.    This matter categorizes time spent litigating the hundreds of avoidance actions

filed by the Trustee, coordinating service of process, preparing preservation letters and discovery

requests and reviewing produced documents, communicating formally and informally with

counsel for various defendants, reviewing Hardship Program applications, drafting extensions of

time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

119.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw the reference, facilitating consolidated briefing on common issues raised in the motions to withdraw ("Common Briefing").    Accordingly, the Trustee, SIPC, and the relevant defendants negotiated agreed orders providing for the partial withdrawal of the reference to address the following discrete legal issues raised in the relevant motions to withdraw (the "Consolidated Briefing Orders").

120.    Upon the completion of consolidated briefings on the selected legal issues, the District Court issued various Common Briefing rulings.    During the Compensation Period, B&H attorneys reviewed and analyzed the effect of those rulings on the Trustee's avoidance actions. The District Court has issued rulings on the following issues:

- **Stern v. Marshall Issues.**  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), ECF No. 4; *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46 (S.D.N.Y. 2013);

- **Antecedent Debt Issues.**  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 107; *See also*, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 WL 5651285 (S.D.N.Y. Oct. 15, 2013);

- **Section 546(e) Issues.**  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 119; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), ECF No. 439; *Sec.*

*Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013); and

- ***Section 550(a) Issues.*** *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), ECF No. 314; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Dec. 12, 2012); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 WL 5813881 (S.D.N.Y. Oct. 28, 2013).

121.    As of the end of the Compensation Period, the District Court had issued a bottom line order for the following legal issue, for which briefing already has been completed.  A fuller opinion and order is forthcoming.

- ***Section 502(d) Issues.*** *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), ECF No. 435.

122.    As of the end of the Compensation Period, the District Court had not yet issued rulings on the following Common Briefing issues, for which briefing already has been completed:

- ***Standing and SLUSA Issues.*** *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 114;

- ***Extraterritoriality Issues***. *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 7, 2012), ECF No. 167; and

- ***"Good Faith" Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b).*** *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), ECF No. 197.

### L.    MATTER 27 – JP MORGAN CHASE

123.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities

LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan") seeking the return of approximately $19 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of JPMorgan Chase. *Picard v. JPMorgan Chase & Co.*, Adv. No. 10-04932 (BRL) (Bankr. S.D.N.Y. Dec. 2, 2010).

124.    The appeal of the District Court's decision dismissing the Trustee's common law claims against JPMorgan, *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011), was decided on June 20, 2013.  *Picard v. JPMorgan Chase & Co.*, 721 F.3d 54 (2d Cir. 2013).  The parties had stipulated to a stay of discovery pending the appeal, which was lifted in accord with that stipulation on or about July 11, 2013.

125.    During the Compensation Period, B&H attorneys prepared for the case to move forward, which included, among other things, the negotiation and preparation of a case management order.  B&H attorneys also began preparing a petition for writ of certiorari to the Supreme Court seeking reversal of the Second Circuit's decision, which was filed in October 2013.

**M.    MATTER 28 – WESTPORT**

126.    This matter summarizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. ("PSCC") (collectively, the "Westport Defendants") seeking the return of approximately $28 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by

BLMIS to or for the benefit of Silverman, WNB, and PSCC.  *Picard v. Robert L. Silverman*, Adv. No. 10-05418 (BRL) (Bankr. S.D.N.Y.).

127.    During the Compensation Period, B&H attorneys analyzed documents and responses from the Westport Defendants concerning the legal issues raised in the lawsuit.  B&H attorneys also monitored the litigation and results of several other lawsuits against WNB, and continued to consider alternative litigation strategies.

128.    In connection with Silverman's chapter 11 case, on May 21, 2013, the Bankruptcy Court for the District of Connecticut entered an order granting Silverman's motion to approve his stipulation with the Trustee, which provides for allowance of the Trustee's filed claim.  B&H attorneys also further negotiated the treatment of the Trustee's claim in Silverman's chapter 11 case after consideration of Silverman's financial position, and addressed plan confirmation issues with Mr. Silverman's counsel.

## N.    MATTER 30 – HSBC

129.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), UniCredit S.p.A., and Pioneer Alternative Investment Management Ltd. (together, "UCG/PIA"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., Herald Fund SpC – Herald (Lux) SICAV, Primeo Fund, Alpha Prime Fund, and Senator Fund, as well as individuals affiliated with those funds.  The Trustee's complaint seeks $8.8 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and common law causes of action. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y. Nov. 30, 2012).

130.    During the Compensation Period, B&H attorneys extended the time for certain defendants to respond to the amended complaint and coordinated service of process on numerous international defendants.  B&H attorneys prepared an opposition to the motions to dismiss filed by the thirteen HSBC-related defendants and, separately, by UCG/PIA on May 3, 2011 in the District Court.  *Picard v. HSBC Bank plc*, No. 11 Civ. 763 (JSR) (S.D.N.Y.), ECF. No. 35; *Picard v. HSBC Bank plc*, No. 11 Civ. 836 (JSR) (S.D.N.Y.), ECF. No. 34.  The District Court granted the motions on July 28, 2011, dismissing the Trustee's common law claims.  *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011).  B&H attorneys briefed the appeal, filing both their principal and reply briefs.  Oral argument before the Second Circuit took place on November 21, 2012, and a decision denying the appeal was issued in June 2013.

131.    During the Compensation Period, the Trustee took part in proceedings pending in the Cayman Islands involving the Primeo Fund and Herald Fund.

### O.    MATTER 32 – UBS/LIF

132.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy and common law claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants.  *Picard v. UBS AG*, Adv. No. 10-04285 (BRL) (Bankr. S.D.N.Y. Oct. 22, 2012).

133.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS. *Picard v. UBS AG*, Adv. No. 10-05311 (BRL) (Bankr. S.D.N.Y. Oct. 22, 2012).

134.    On December 19, 2012, the Trustee participated in a hearing in this Court regarding the motions to dismiss the amended complaint filed by a number of the Luxalpha Defendants and the LIF Defendants for lack of personal jurisdiction and *forum non conveniens.* At the hearing, the Court directed the parties to meet and confer on the issues in dispute with the goal of narrowing the issues before the Court. The Trustee has made progress toward narrowing the number of defendants and parties in dispute—in particular, on June 18, 2013, the Trustee entered into a stipulation whereby Defendant UBS (Luxembourg) S.A. withdrew its motion to dismiss for lack of personal jurisdiction in both actions, and certain of the defendants in the Luxalpha action were dismissed without prejudice. (Luxalpha ECF No. 154; LIF ECF No. 157). The Trustee's meet-and-confer process with respect to certain other defendants in the actions remains ongoing.

135.    In addition, this matter incorporates work related to an action brought in Luxembourg by the Luxembourg liquidators of Luxalpha against Access Group, UBS, and the directors of Luxalpha. On April 19, 2012, the Trustee and B&H commenced an action against Access Management Luxembourg, S.A., Patrick Littaye, and Pierre Delandmeter (collectively, the "Third-Party Plaintiffs") seeking an injunction preventing these parties from litigating an action they have filed against the Trustee in Luxembourg. *Picard v. Access Mgmt. Luxembourg, S.A.*, Adv. No. 12-01563 (BRL) (Bankr. S.D.N.Y.). The Third-Party Plaintiffs subsequently filed opposition papers to the Trustee's injunction application, moved to withdraw the reference to the District Court, (ECF Nos. 14–17), and later moved to dismiss the Trustee's action for lack

of personal jurisdiction and failure to state a claim. (ECF Nos. 33–40).  On December 19, 2012,

the Trustee participated in a hearing in this Court regarding the motion to dismiss the amended

complaint for lack of personal jurisdiction filed by the Third-Party Plaintiffs.  At the hearing, the

Court directed the parties to meet and confer on the issues in dispute with the goal of narrowing

the issues before the Court, which meet and confer remains ongoing.

136.    In addition, this matter incorporates work on an action commenced by the Trustee

on June 6, 2012, against Banque Degroof SA/NV, other Banque Degroof entities, Access

International Advisors LLC, other Access entities, Aforge Finance Holding, other Aforge

entities, and the Elite Stability SICAV Stablerock Compartment fund.  *Picard v. Banque Degroof

SA/NV*, Adv. No. 12-01691 (BRL) (Bankr. S.D.N.Y.).    The complaint seeks recovery of

subsequent transfers from these defendants.

### P.    MATTER 33 – NOMURA INTERNATIONAL PLC

137.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Nomura International plc ("Nomura") seeking the return of

approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages

in connection with certain transfers of property by BLMIS to or for the benefit of

Nomura.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

138.    Prior to the Compensation Period, by orders issued by the District Court during

the spring and summer of 2012, the District Court included Nomura's motion to withdraw the

reference in Common Briefing and oral argument.

139.    During the Compensation Period, B&H attorneys, on behalf of the Trustee,

reached agreements with Nomura to extend Nomura's time to respond to the amended complaint

while awaiting determinations from the District Court with respect to Common Briefing. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (BRL) (Bankr. S.D.N.Y. ), ECF No. 49.

140.    In addition, during the Compensation Period, B&H attorneys also spent time preparing for continued litigation in this action.

### Q.    MATTER 34 – CITIBANK

141.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank. *Picard v. Citibank,* Adv. No. 10-05345 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

142.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included Citibank's motion to withdraw the reference in Common Briefing and oral argument.

143.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, extended the Trustee's time to respond to Citibank's motion to dismiss the complaint filed in this Court, while awaiting determinations from the District Court with respect to Common Briefing. *Picard v. Citibank,* Adv. No. 10-05345 (BRL) (Bankr. S.D.N.Y. Apr. 19, 2013), ECF No. 62.

144.    In addition, during the Compensation Period, B&H attorneys also spent time preparing for continued litigation in this action.

### R.    MATTER 35 – NATIXIS

145.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate &

Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants. *Picard v. Natixis*, Adv. No. 10-05353 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

146.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included the Natixis Defendants' motion to withdraw the reference in Common Briefing and oral argument.

147.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with the Natixis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. Natixis*, Adv. No. 10-05353 (BRL) (Bankr. S.D.N.Y.), ECF No. 57.

148.    In addition, during the Compensation Period, B&H attorneys also spent time preparing for continued litigation in this action.

### S.    MATTER 36 – MERRILL LYNCH

149.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

150.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included MLI's motion to withdraw the reference in Common Briefing and oral argument.

151.    While awaiting determinations from the District Court with respect to Common Briefing, the Trustee and B&H attorneys entered into stipulations with counsel for MLI extending MLI's time to answer or otherwise respond to the complaint. *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (BRL) (Bankr. S.D.N.Y.), ECF No. 43.

152.    In addition, during the Compensation Period, B&H attorneys also spent time preparing for continued litigation in this action.

### T.    MATTER 40 – MEDICI

153.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and civil action against Sonja Kohn, UniCredit Bank Austria AG ("Bank Austria"), Bank Medici AG ("Bank Medici"), and numerous other financial institutions, entities, and individuals (collectively, the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants. *Picard v. Kohn*, Adv. No. 10-05411 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

154.    This matter also covers work performed by B&H attorneys on the English matter *Madoff Securities International Limited v. Raven & Ors*, [2011] EWHC (Civ) 3102 (Eng.).  The liquidator of MSIL, with the assistance of B&H attorneys, obtained a worldwide freezing order against Sonja Kohn and certain of her entities in the amount of approximately £28 million.  Trial in this matter commenced in London in June 2013 and concluded on July 18, 2013.  The Trustee

45

also assisted his English counsel with respect to the aforementioned trial.  On October 18, 2013, the English court ruled against MSIL's joint liquidators.

155.    In addition to the tasks outlined above, during the Compensation Period, the Trustee continued to exercise his rights as a civil participant in certain criminal proceedings against Sonja Kohn, Bank Medici, and Bank Austria, among others, in Austria and Liechtenstein. He also continued his ongoing investigation against the Kohn Defendants in Austria, Liechtenstein, Italy, Gibraltar, the British Virgin Islands, and New York.

### U.    MATTER 42 – EQUITY TRADING

156.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Ltd., Equity Trading Fund Ltd., and BNP Paribas Arbitrage (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants.  *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (BRL) (Bankr. S.D.N.Y. Dec. 1, 2010), ECF No. 2.

157.    The Equity Trading Defendants filed motions, or joinders to the motions, in the District Court to withdraw the reference from this Court.  (ECF Nos. 16, 21).  The District Court included the motions in its orders for Common Briefing and oral argument.

158.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys and the Equity Trading Defendants renegotiated the right to file an amended complaint and revised the briefing schedule for any motions in response to the amended complaint.  (ECF Nos. 40, 42).  B&H attorneys spent time preparing for continued litigation in this action.  The pre-trial conference is scheduled for March 26, 2014.

46

### V.    MATTER 43 – DEFENDER

159.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Defender Ltd., Reliance Management (BVI) Ltd., Reliance Management (Gibraltar) Ltd., Reliance International Research LLC, Tim Brockmann, and Justin Lowe[18] (collectively, the "Defender Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants. *Picard v. Defender Ltd.*, Adv. No. 10-05229 (BRL) (Bankr. S.D.N.Y. Dec. 5, 2010).

160.    On April 2, 2012, the Defender Defendants filed motions in the District Court to withdraw the reference from this Court.  (ECF Nos. 24, 28).  The District Court partially granted these motions and included these motions in its orders for Common Briefing and oral argument.

161.    On April 27, 2012, defendants Reliance Management (BVI) Ltd., Reliance Management (Gibraltar) Ltd., and Tim Brockmann filed a motion in this Court to dismiss for lack of personal jurisdiction.  (ECF No. 36).  The Trustee opposed the motion.  (ECF No. 49). The moving defendants filed their reply brief on October 26, 2012.  (ECF No. 55).  This Court converted the hearing on this motion, scheduled for December 19, 2012, into a Rule 16 conference and directed the parties to meet and confer with respect to the motion.  This motion to dismiss remains pending.

162.    During the Compensation Period, B&H attorneys continued to confer with counsel, pursuant to this Court's instructions at the Rule 16 conference, with respect to the motion to dismiss and to attempt to narrow the issues to be determined by this Court.  B&H

---

[18]On November 29, 2012, the Trustee dismissed without prejudice the adversary proceeding as against defendant Justin Lowe.  (ECF No. 58).

attorneys also negotiated with the Defender Defendants to establish extensions of time to respond to the complaint. On July 18, 2013, the parties filed a stipulation extending the Defender Defendants' time to respond to the complaint to December 20, 2013. (ECF No. 68). The pre-trial conference is scheduled for January 29, 2014.

### W.    MATTER 46 – GLANTZ

163.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Richard M. Glantz and numerous other individuals, trusts and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants. *Picard v. Richard M. Glantz*, Adv. No. 10-05394 (BRL) (Bankr. S.D.N.Y. Dec. 9, 2010).

164.    Following the filing of the complaint in this action, certain defendants were dismissed based on hardship, settlement or other reasons. On February 1, 2012, the remaining defendants filed a motion to dismiss. (ECF Nos. 26–30). The parties subsequently entered into stipulations extending the Trustee's time to amend the complaint in response to the motion to dismiss. On March 31, 2012, the defendants filed a motion to withdraw the reference in the District Court. *Picard v. Glantz*, No. 12 Civ. 02778 (JSR) (S.D.N.Y. July 12, 2012), ECF Nos. 1–3. Judge Rakoff partially granted the motion to withdraw the reference to address certain issues related to the majority of the avoidance actions brought by the Trustee in this SIPA proceeding. (ECF Nos. 10–12). Some of those issues remain under consideration by the District Court.

165.    During the Compensation Period, B&H attorneys engaged in work related to these motions, including entering into an agreement regarding the timing of filing an amended

complaint in response to the motion to dismiss.  B&H attorneys also continued to work on amending the complaint.  In addition, B&H attorneys continued to work on resolving claims against certain defendants, including through the review of Hardship Program applications and through settlements with certain subsequent transferee defendants.

166.     During the Compensation Period, settlements in principle were reached with three subsequent transferee defendants. Agreements were drafted and negotiated with opposing counsel with the settlements to be concluded, including execution of agreements and payments to the Trustee, after the Compensation Period.

## X.     MATTER 52 – DONALD FRIEDMAN

167.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against S. Donald Friedman, individually and in his capacity as a beneficiary of an individual retirement account, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman (collectively, the "Friedman Defendants"), seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Friedman Defendants.  *Picard v. Friedman*, Adv. No. 10-05395 (BRL) (Bankr. S.D.N.Y. Dec. 9, 2010).

168.     During the Compensation Period, B&H attorneys continued document discovery. B&H attorneys issued additional subpoenas for third-party documents, including subpoenas to the Friedman Defendants' accountants, and engaged in an extensive review of thousands of documents produced thereby.  B&H attorneys also met and conferred with opposing counsel to resolve objections to subpoenas to third parties related to the Friedman Defendants, including objections to producing tax returns.

169.    In connection with these productions, B&H attorneys corresponded with opposing counsel regarding potentially privileged documents identified in the document productions by the Friedman Defendants' former accountants.

170.    In addition, B&H attorneys prepared draft requests for admissions and coordinated an effort with the Trustee's consultants to review documents relevant to tracing transfers from BLMIS to the Friedman Defendants.

171.    B&H attorneys also performed case management projects, including preparing annotations to the complaint, creating a master log of key case documents, organizing a chronology of important events, and developing a case assessment memorandum.  Additionally, B&H attorneys performed monthly data-tracking analyses and submitted a preservation letter to a third-party bank concerning alleged subsequent fraudulent transfers to the Friedman Defendants.  B&H attorneys further conducted research on various topics, including privilege issues, tracing issues, and the admission of documents from BLMIS files into evidence.

### Y.    MATTER 53 – MAGNIFY

172.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Osnat Dodelson, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and Robert H. Book (collectively, the "Magnify Defendants") seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants.  *Picard v. Magnify Inc.*, Adv. No. 10-05279 (BRL) (Bankr. S.D.N.Y. Dec. 6, 2010).

173.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys continued their investigation of the Magnify Defendants located outside of the United States.    B&H attorneys participated in ongoing court-ordered jurisdictional discovery over defendant Kurt Brunner; the deadline to conclude jurisdictional discovery over Mr. Brunner has been extended to December 20, 2013 by stipulation of the parties.    B&H attorneys continued their review of document productions received from defendants Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc. as part of ongoing discovery between the parties.    B&H attorneys also continue to produce documents in response to discovery requests by Defendants Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc.

174.    Defendants Robert H. Book and R.H. Book LLC also filed a motion to withdraw the reference on April 2, 2012. *Picard v. Robert H. Book*, No. 12-02482  (JSR) (S.D.N.Y.). B&H attorneys previously drafted various motions and pleadings related to this motion to withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

175.    In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate (Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for

the benefit of the Apfelbaum Defendants. *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (BRL) (Bankr. S.D.N.Y. Nov. 30, 2010).

176.    During the Compensation Period, B&H attorneys continued their investigation of the Apfelbaum Defendants, who are located outside of the United States. B&H attorneys also participated in ongoing court-ordered jurisdictional discovery over the Apfelbaum Defendants; the deadline to conclude jurisdictional discovery of the Apfelbaum Defendants has been extended to December 20, 2013 by stipulation of the parties. As part of ongoing jurisdictional discovery, B&H attorneys requested supplemental responses to discovery requests on the Apfelbaum Defendants. B&H attorneys also negotiated with counsel for the Apfelbaum Defendants as to a proposed motion for the appointment of a commissioner under the Hague Convention to supervise the deposition on consent of Laurence Apfelbaum in Paris, France as part of court-ordered jurisdictional discovery. The Apfelbaum Defendants filed a motion to withdraw the reference on April 2, 2012. *Picard v. Estate (Succession) of Doris Igoin*, No. 12-02872 (JSR) (S.D.N.Y.). B&H attorneys previously drafted various motions and pleadings related to this motion to withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

## Z.    MATTER 54 – MENDELOW

177.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela (Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property

by BLMIS to or for the benefit of the Mendelow Defendants.  *Picard v. Steven B. Mendelow*, Adv. No. 10-04283 (BRL) (Bankr. S.D.N.Y. Nov. 23, 2010).

178.    The Mendelow Defendants moved to withdraw the reference, which was granted in part.  *Picard v. Mendelow*, No. 11 Civ. 07680 (JSR) (S.D.N.Y.), ECF No. 14.  B&H attorneys continue to monitor the developments in the third-party state court action against Stephen B. Mendelow, as discovery has continued against the remaining defendants in that action.  B&H attorneys granted the Mendelow Defendants several extensions of time to respond to the complaint.  Their answer is currently due on January 17, 2014.

179.    B&H attorneys continue to analyze the current state of the law, the evidence and facts learned thus far, as well as the litigation strengths and weaknesses..

180.    In addition, B&H attorneys spent time preparing for continued litigation in this action.

**AA.    MATTER 58 – PJ ADMINISTRATORS**

181.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants.  *Picard v. American Sec. Mgmt., L.P.*, Adv. No. 10-05415 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

182.    During the Compensation Period, B&H attorneys spent time preparing for continued litigation in this action, granted the PJ Defendants extensions of time to respond to the

amended complaint pending the disposition of Common Briefing before Judge Rakoff, and dismissed deceased defendant Sol Aptman on February 12, 2013.

### BB.    MATTER 59 – STANLEY SHAPIRO

183.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $61.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *See Picard v. Shapiro*, Adv. No. 10-05383 (BRL) (Bankr. S.D.N.Y.).

184.    Prior to the Compensation Period, the Shapiro Defendants withdrew the reference to the Bankruptcy Court and filed a motion to dismiss the amended complaint before Judge Rakoff in the District Court. *Picard v. Shapiro*, No. 11 Civ. 05835 (JSR) (S.D.N.Y.), ECF No. 25. While Judge Rakoff has ruled on many of the issues raised by the Shapiro Defendants in their motion (ECF Nos. 36, 37), one or more issues still remain to be decided by Judge Rakoff.

185.    During the Compensation Period, B&H attorneys continued to develop the Trustee's case against the Shapiro Defendants and consented to extending the time for the Shapiro Defendants to respond to the amended complaint before the Bankruptcy Court.

### CC.    MATTER 60 – AVELLINO & BIENES

186.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

187.    On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint in this Court. (ECF No. 23). That same day, certain A&B Defendants moved to withdraw the reference. *Picard v. Avellino*, No. 11-03882 (JSR) (S.D.N.Y.), ECF Nos. 1–3. The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011. The reference to this Court was withdrawn on several issues on February 29, 2012. (ECF No. 20). The Trustee and the A&B Defendants participated in Common Briefing before the District Court on the issues withdrawn. While the District Court rendered decisions on most of the issues, at least one issue withdrawn remains pending. As such, the motion to dismiss will continue to be held in abeyance.

188.    While the above-referenced motions have been pending, B&H attorneys have continued to engage in discovery preparation, document review, and case assessment and strategy.

### DD.    MATTER 61 – MAXAM

189.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Maxam Absolute Return Fund, L.P., Maxam Absolute Return Fund, Ltd., Maxam Capital Management, LLC, Maxam Capital GP LLC, Sandra L. Manzke Revocable Trust, Sandra L. Manzke, as trustee and individually, Suzanne Hammond, Walker Manzke, and April Bukofser Manzke (collectively, the "Maxam Defendants") seeking the return of $97.8 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maxam

Defendants. *Picard v. Maxam Absolute Return Fund, L.P.*, Adv. No. 10-05342 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

190.    During the Compensation Period, discovery continued while the parties negotiated a settlement.  With respect to discovery, B&H attorneys prepared for depositions, including the review and organization of documents pertaining to witnesses to be deposed.  B&H attorneys also investigated and analyzed potentially relevant third-parties to be interviewed or deposed.  In addition, the Trustee's counsel had a dispute with the Maxam Defendants regarding documents claimed as privileged.  The parties ultimately entered into a stipulation regarding the Maxam Defendants' privileged documents and the use of many documents in the litigation.  The parties also entered into a stipulation dismissing a pending Second Circuit appeal without prejudice while the parties negotiated the settlement.  *Maxam v. Picard,* No. 12-2194 (2d. Cir July 23, 2013), ECF No. 103.

191.    B&H attorneys also spent considerable time working to negotiate the settlement of this matter.  On August 26, 2013, the Trustee filed a motion under Rule 9019 with this Court to approve a settlement with the Maxam Defendants which will result in payment of all of the Trustee's claims.  (ECF No.  111).  On September 17, 2013, this Court approved the settlement between the Trustee and the Maxam Defendants.  (ECF No. 118).

### EE.    MATTER 62 – SUBSEQUENT TRANSFERS

192.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.  Under § 550 of the Bankruptcy Code, the Trustee may recover transfers from BLMIS to a direct customer or from any entity to whom the customer made transfers.

193.   Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to Common Briefing and hearings.

194.   As of April 30, 2013, the Trustee and the subsequent transfer defendants had entered into stipulations extending the response date to the Trustee's complaints and amended complaints while awaiting the ruling by the District Court on the issues subject to Common Briefing and hearings.

195.   The Trustee's investigation is ongoing, and additional recovery actions against other subsequent transferees likely will be filed in the future.

### FF.   MATTER 65 – LEGACY

196.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC, HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.  *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. Dec. 6, 2010).

197.   During the Compensation Period, B&H attorneys commenced review of Rule 2004 discovery and third-party productions relevant to the claims against the Legacy Capital Defendants.  B&H attorneys also worked with the Mintz Group to procure information regarding the Legacy Capital Defendants and relevant third-party witnesses.  In addition, B&H attorneys spent time preparing for continued litigation in this action.

### GG.    MATTER 66 – LIEBERBAUM

198.    This matter characterizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Michael Lieberbaum and Cynthia Lieberbaum (together, the "Lieberbaum Defendants") seeking the return of approximately $2.36 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lieberbaum Defendants.  *Picard v. Michael Lieberbaum*, Adv. No. 10-05406 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

199.    During the Compensation Period, discovery in this matter continued. The Trustee produced documents responsive to the Lieberbaum Defendants' document requests and participated in a meet and confer regarding productions of documents by the Lieberbaum Defendants in response to the Trustee's document requests. The Trustee also noticed the depositions of and served document requests on several third-party witnesses, took the depositions of other third-party witnesses, and obtained handwriting exemplars from key BLMIS employees.  Additionally, the Trustee began to identify and work with potential expert witnesses.

### HH.    MATTER 72 – PLAZA

200.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Plaza Investments International Limited and Notz, Stucki Management (Bermuda) Limited (collectively, the "Plaza Defendants") seeking the return of approximately $235 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Plaza Defendants.  *Picard v. Plaza Invs. Int'l Ltd.*, Adv. No. 10-04284 (BRL) (Bankr. S.D.N.Y.).

201.    On July 12, 2012, Judge Rakoff issued an order as to the Plaza Defendants' fully briefed motion to withdraw the reference, stating that the Plaza Defendants raised the same issues that the District Court previously arranged for Common Briefing and directed the Plaza Defendants to continue to proceed according to the procedures arranged for Common Briefing. *See* Order, *Picard v. Plaza Invs. Int'l Ltd.*, No. 12 Civ. 02646 (JSR) (S.D.N.Y. July 12, 2012), ECF No. 15.  As of July 31, 2013, a number of those issues remained under consideration by the District Court.

202.    B&H attorneys also worked with legal counsel for the Plaza Defendants to adjust the schedule for a hearing on a motion by the Plaza Defendants to dismiss the Trustee's complaint.  (ECF No. 19).  On May 22, 2013, the parties entered into a stipulation further adjourning the hearing on the Plaza Defendants' motion to dismiss, in light of the common legal issues that were being addressed in the motion to withdraw the reference proceedings.  (ECF No. 35).

## II.    MATTER 73 – BNP PARIBAS

203.    This matter categorizes time spent by the Trustee and B&H attorneys in five adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas (Canada), BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Investment Partners Luxembourg S.A., BNP Paribas Securities Services—Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS.  *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.,* Adv. No. 12-01576 (BRL) (Bankr.

S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.,* Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV,* Adv. No. 10-05120 (BRL) (Bank. S.D.N.Y. 2010); and *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (BRL) (Bank. S.D.N.Y. 2010) (collectively, the "BNP Paribas Proceedings").

204.    Prior to the Compensation Period, the BNP Paribas Defendants filed motions to withdraw the reference which were granted by United States District Judge Rakoff and resulted in consolidated subject matter briefing pending in the District Court.  Among the issues affecting the BNP Paribas Proceedings are the extraterritoriality of the Bankruptcy Code, the safe harbor under Bankruptcy Code section 546(e), the recovery of avoided or avoidable transfers under Bankruptcy Code section 550, and the measure of good faith under Bankruptcy Code sections 548 and 550.

205.    During the Compensation Period, the District Court issued opinions related to the safe harbor under Bankruptcy Code section 546(e) and the recovery of transfers under Bankruptcy Code section 550.  The Trustee and B&H attorneys reviewed and analyzed these rulings as they relate to the BNP Paribas Proceedings and continued to prepare for litigation in light of the District Court's opinions.

206.    B&H attorneys, on behalf of the Trustee, reached agreements with the BNP Paribas Defendants to extend the time to respond to the Trustee's complaints in the BNP Paribas Proceedings while the parties await additional rulings from the District Court with respect to the consolidated subject matter briefing.

## V.    COMPENSATION REQUESTED

207.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended

Compensation Order. Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

208.    The Trustee and B&H expended 82,039.00 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $426.45 for fees incurred.[19]  The blended attorney rate is $450.77.

209.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application. In connection with the three monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $1,725,697.44 (in addition to the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $215,678.36.

210.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,498,558.25. The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

211.    Pursuant to the Second Amended Compensation Order, on June 25, 2013, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from May 1, 2013 through May 31, 2013 (the "May Fee Statement"). The May Fee Statement reflected fees of $11,204,388.45 and expenses of $233,160.87. SIPC's staff requested certain adjustments and made suggestions, which were

---

[19]In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

adopted by the Trustee and B&H. After such adjustments, the May Fee Statement reflected fees of $10,799,624.25. After subtracting the Court-ordered 10% holdback, SIPC advanced $9,719.661.83 for services rendered and $233,145.87 for expenses incurred by the Trustee and B&H.

212.   Pursuant to the Second Amended Compensation Order, on July 25, 2013, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from June 1, 2013 through June 30, 2013 (the "June Fee Statement"). The June Fee Statement reflected fees of $10,653,690.60 and expenses of $149,603.36. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the June Fee Statement reflected fees of $10,285,157.70. After subtracting the Court-ordered 10% holdback, and subject to further adjustment, SIPC will advance up to $9,256,641.93 for services rendered and up to $149,603.36 for expenses incurred by the Trustee and B&H.

213.   Pursuant to the Second Amended Compensation Order, on August 22, 2013, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from July 1, 2013 through July 31, 2013 (the "July Fee Statement"). The July Fee Statement reflected fees of $10,828,647.45 and expenses of $430,114.10. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the July Fee Statement reflected fees of $10,402,242.30. After subtracting the Court-ordered 10% holdback, and subject to further adjustment, SIPC will advance up to $9,362,018.07 for services rendered and up to $427,463.84 for expenses incurred by the Trustee and B&H.

214.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

215.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofesionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

216.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

217.    Exhibit E annexed hereto is a calculation of the Holdback amounts and the release sought, explained below in Section VI.

218.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

219.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    **RELEASE OF THE HOLDBACK**

220.    The Compensation Order established an orderly, regular process for the allowance and payment of interim monthly compensation and reimbursement to the Trustee and B&H. (ECF Nos. 126, 1078, 4125).  Pursuant to the Compensation Order, payment of a percentage of the approved compensation – initially twenty percent (20%), subsequently reduced to fifteen percent (15%), and thereafter further reduced to ten percent (10%) – is deferred through the conclusion of the liquidation period or until further order of the Court (the "Holdback").

221.    For this and prior Compensation Periods, the amount of the Holdback for the Trustee's and B&H's fees is $35,020,250.14, which includes $3,148,702.42 held back in connection with this Application.  The Trustee and B&H seek a release of the Holdback in the amount of $8,755,062.54, upon the consent and approval of SIPC.

222.    The SIPC recommendation filed in support of the fees and expenses requested in this Application will also support the release of the Holdback in the amount of $8,755,062.54 for the Applicants.

223.    The Applicants and SIPC respectfully request that this Court authorize the release of Holdback payment to the Applicants in the amount of $8,755,062.54.

## VII.    **THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED**

224.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC. In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

225.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H. *See* SIPA § 78fff-3(b)(2).

226.    While the Trustee has recovered or entered into agreements to recover approximately $9.35 billion as of July 31, 2013, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

227.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses. The Trustee has been advised by SIPC that it concurs in this belief of the Trustee. Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

228.    Therefore, with respect to this Application, the Trustee and B&H request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on December 12, 2013.

229.    The Trustee and B&H submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the

provisions of the Bankruptcy Code governing applications for compensation and reimbursement

of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VIII.    CONCLUSION

230.    The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $31,487,024.25 (of which $28,338,321.83 is to be paid currently and $3,148,702.42 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $810,213.07 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; (ii) releasing $8,755,062.54 to the Trustee and B&H from the Holdback; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        November 21, 2013

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  /s/  David J. Sheehan
        Baker & Hostetler LLP
        45 Rockefeller Plaza
        New York, New York 10111
        Telephone: (212) 589-4200
        Facsimile: (212) 589-4201
        Irving H. Picard
        Email: ipicard@bakerlaw.com
        David J. Sheehan
        Email: dsheehan@bakerlaw.com
        Seanna R. Brown
        Email: sbrown@bakerlaw.com
        Heather R. Wlodek
        Email: hwlodek@bakerlaw.com

        *Attorneys for Irving H. Picard, Trustee*
        *for the Substantively Consolidated SIPA*
        *Liquidation of Bernard L. Madoff Investment*
        *Securities LLC And Bernard L. Madoff*

67