WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
Tel:  (212) 237-1000
Howard L. Simon
Email: hsimon@windelsmarx.com

Hearing Date: December 12, 2013
Hearing Time:  10:00 a.m. EST
Objection Deadline: December 5, 2013
Time: 4:00 p.m. EST

*Special Counsel to Irving H. Picard, Esq., Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*Alan Nisselson, the Chapter 7 Trustee of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| | SIPA Liquidation |
| Plaintiff-Applicant, | (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TWELFTH APPLICATION OF WINDELS MARX LANE & MITTENDORF, LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM MAY 1, 2013 THROUGH JULY 31, 2013 AND REQUEST FOR PARTIAL RELEASE OF HOLDBACK**

Windels Marx Lane & Mittendorf, LLP ("Windels Marx" or the "Firm") as special

counsel to Irving H. Picard as trustee (the "Trustee") for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS" or

"Debtor"), and to Alan Nisselson as trustee (the "Chapter 7 Trustee") for the Chapter 7

{10904667:3}

estate of Bernard L. Madoff ("Madoff"), pursuant to the Orders of this Court dated July 16, 2009 [Docket No. 327] and November 23, 2011 [Docket No. 4547], respectfully submits this application (the "Twelfth Application") for an order pursuant to section 78eee(b)(5) of the Securities Investor Protection Act ("SIPA"), 15 U.S.C.§ 78eee(b)(5), sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), allowing and awarding interim compensation for services performed by Windels Marx for the period commencing May 1, 2013 through and including July 31, 2013 (the "Compensation Period") in the amount of $1,590,346.00 of which 80%, or $1,272,276.80 is to be paid currently and 20%, or $318,069.20, is to be deferred through the conclusion of the liquidation proceeding or further order of the Court**,** and reimbursement of Windels Marx's actual and necessary expenses incurred during the Twelfth Compensation Period in the amount of $7,737.22, plus release of $2,604,724.22  from the "holdback" accrued in connection with the Firm's First through Twelfth fee applications, and in support thereof, respectfully represents as follows:

## I.      PRELIMINARY STATEMENT

1.      During this Twelfth Compensation Period, Windels Marx continued to assist the Trustee and his counsel, Baker & Hostetler LLP ("Baker"), in their efforts to recover customer property for the victims of Madoff's fraud.

2.      Among other things, Windels Marx continued its preparations for, and participated in, the mediation of a significant bad faith action.  Windels Marx also continued its investigation into the facts and legal theories supporting the fraudulent conveyance actions against certain other insiders, feeder funds, and investment advisors

previously filed by the Firm.  We also continued our investigations into certain subsequent transferees of BLMIS Customer Property for which complaints were previously filed.

3.      In addition, Windels Marx, in coordination with Baker and the Trustee's consultants, continued to work on the three actions against entities owned by members of the Madoff family and on the over 30 "Good Faith" adversary proceedings that were in each case previously commenced by Windels Marx.

4.      The following discussion and the materials attached to this Twelfth Application cover the major categories of services for which allowance of compensation is sought.

## II.      PROCEDURAL BACKGROUND

The SIPA Liquidation

5.      On December 11, 2008, the United States Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against defendants Madoff and BLMIS (Case No. 08 CV 10791) (the "SEC Action").  The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

6.      In the SEC Action, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(3) of the SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

7.      On December 15, 2008, District Judge Stanton granted the SIPC application, which among other things:

- appointed Irving H. Picard as the SIPA Trustee for the liquidation of the business of BLMIS pursuant to 15 U.S.C. § 78eee(b)(3);

- appointed Baker as counsel to the SIPA Trustee pursuant to 15 U.S.C. § 78eee(b)(3); and

- removed the liquidation proceeding (the "BLMIS Liquidation") to this Court pursuant to 15 U.S.C. § 78eee(b)(4).

The Bernard L. Madoff Chapter 7 Case

8.      On April 13, 2009, Blumenthal & Associates Florida General Partnership, Martin Rappaport Charitable Remainder Unitrust, Martin Rappaport, Marc Cherno and Steven Morganstern (collectively, the "Petitioning Creditors"), through their attorneys, Milberg LLP, filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against Madoff.

9.      On April 16, 2009, the Petitioning Creditors filed a motion to appoint a trustee in Madoff's case, and on that same date, the Court entered an Order to Show Cause Why the Court Should Not Enter an Order Directing the United States Trustee to Appoint an Interim Trustee.

10.      On April 20, 2009, the Court entered an Order directing the Office of the United States Trustee for the Southern District of New York (the "UST") to appoint an interim trustee to perform the duties of trustee as set forth in Bankruptcy Code §§ 701 and 704, pursuant to which the UST appointed Alan Nisselson as the Chapter 7 Trustee on April 21, 2009.

11.     On April 24, 2009, the Court entered an Order authorizing and empowering the Chapter 7 Trustee to retain Windels Marx to represent him in the Madoff case, effective as of April 21, 2009.

12.     On May 5, 2009, the SIPA Trustee and SIPC filed a joint motion for entry of an order pursuant to section 105(a) of the Bankruptcy Code substantively consolidating the Madoff estate into the BLMIS Liquidation (the "Substantive Consolidation Motion").

13.     On June 4, 2009, after the Chapter 7 Trustee filed a Response to the Substantive Consolidation Motion, the Court entered a Consent Order ("Consent Order") [Docket No. 252] which, among other things:

- approved the Substantive Consolidation Motion, nunc pro tunc to December 11, 2008;

- ordered that the Chapter 7 Trustee would remain trustee to the Madoff estate and would continue to have all powers, rights, claims, and interests of a Chapter 7 trustee pursuant to, among others, Chapters 5 and 7 of the Bankruptcy Code;

- directed that the Trustee would have all the duties and powers of a SIPA trustee and of a Chapter 7 trustee, other than those specifically granted to the Chapter 7 Trustee as indicated above; and

- ordered that the Chapter 7 Trustee would be authorized to use as his counsel any counsel or special counsel retained by the Trustee, after consultation with, and the approval of, the Trustee and SIPC.

14.     On July 16, 2009, this Court entered an Order granting the Trustee's motion to retain Windels Marx as special counsel on behalf of the consolidated estate, *nunc pro tunc* as of June 9, 2009 [Docket No. 327], finding that Windels Marx is disinterested pursuant to provisions section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) and is therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

15.     On November 23, 2011, this Court entered an Order [Docket No. 4547] making certain provisions of this Court's Order Establishing Procedures Governing Interim Monthly Compensation of the Trustee and Baker & Hostetler LLP, amended and superseded in its entirety on June 1, 2011, applicable to Windels Marx, *nunc pro tunc* as of June 1, 2011.

## III.     SPECIAL COUNSEL'S EXPERIENCE

16.     Windels Marx engages in the general practice of law, and has substantial expertise in such areas as bankruptcy, commercial litigation, securities, tax and corporate law.

17.     In particular, the senior Windels Marx attorneys in charge of this matter specialize in advising Chapter 7 and Chapter 11 bankruptcy trustees in connection with complex bankruptcy litigation related to, among other things, asset analysis and recovery.

## IV.     SUMMARY OF SERVICES

18.     The services rendered by Windels Marx during the three-month Twelfth Compensation Period are described below.  In rendering professional services to the Trustee and the Chapter 7 Trustee, Windels Marx's legal team has been composed of

professionals with extensive experience in bankruptcy and complex commercial litigation, securities, tax, and corporate law.

19.    Windels Marx professionals have worked closely with the Trustee, his counsel Baker, and the Trustee's other retained professionals to coordinate their efforts in order to maximize efficiency and to avoid any duplication of effort.

20.    This Twelfth Application is intended to serve as a summary description of the more significant services rendered by Windels Marx during the Twelfth Compensation Period. The following section provides an overview of those services, sorted by the matter and task codes used by Windels Marx for specific categories of work.

21.    Matter Number 02 is the general matter number used for tasks that affect all proceedings commenced by Windels Marx on behalf of the Trustee, and task numbers have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.[1]

22.    Matter Numbers 03-20 relate to specific projects, adversary proceedings, or groups of adversary proceedings commenced, being handled, and/or being supervised by Windels Marx on behalf of the Trustee. Common tasks conducted by Windels Marx in these projects, adversary proceedings, or groups of adversary proceedings include the drafting of reports, analyses, and internal memoranda; the filing of papers and the scheduling of matters with the Bankruptcy and/or District Courts; on-going coordination with Baker regarding investigation and litigation strategy; and/or discussions with opposing counsel regarding representation, service, and appearance issues, extensions of

---

[1] Matter 01 is reserved for certain non-billable time entries.

time to respond, adjournments of pre-trial conferences, discovery, and settlement.  For the sake of brevity, the descriptions of specific projects, adversary proceedings, or groups of adversary proceedings in paragraphs 23 through 59 below will not repeat these common tasks, but will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

## A.      MADOFF  GENERAL (MATTER 02)

### Task Code 004: Case Administration (502.9 hours)

23.      This category relates to various case management tasks, including (i) research projects and memoranda of general applicability for use by Windels Marx and/or Baker, (ii) the on-going review and reporting internally and to SIPC and Baker on the status of cases and case-wide issues, (iii) procedural tasks covering all or substantially all Windels Marx cases, (iv) the on-going review, organizing, and docketing of case-related information into Baker's and Windels Marx's central databases for use across all Windels Marx and Baker teams, and (v) other general administrative tasks.

24.      Time entries during this Compensation Period related to, among other things, (i) legal research projects performed at the request of Baker, (ii) work on issues raised in the motions to withdraw the reference and related court decisions filed in many of the Firm's cases, and (iii) review and analysis of legal and factual issues common to all of the Firm's subsequent transferee cases.

### Task Code 007: Fee Application (71.1 hours)

25.      This category relates to the Firm's preparation of Windels Marx's monthly billing statements to SIPC, as well as Windels Marx's Applications for Interim

Compensation, and the time spent by attorneys and paraprofessionals in reviewing the Windels Marx billing statements before they are submitted to SIPC, to ensure that time was properly billed, to correct any errors in time entries, to write off certain time and expenses as agreed to by Windels Marx for the benefit of SIPC, and to respond to certain adjustments requested by SIPC after its review of the monthly billing statements and draft fee application.

### Task Code 020: Internal Office Meetings (20.5 hours)

26.    This category covers internal Windels Marx strategy and case management sessions related to the Firm's pending adversary proceedings. Through these internal meetings and discussions, Windels Marx seeks to ensure the effective use of the time of all timekeepers working on matters, to avoid duplicative efforts, and to provide a consistent approach to the approximately 60 adversary proceedings and legal matters being handled by the Firm.

### Task Code 041: Discovery, Document Review, Document Production (362.0 hours)

27.    This category relates to discovery and related issues not specific to a Windels Marx case, such as document productions in response to third party subpoenas, productions of documents produced by parties with whom Baker has a conflict, confidentiality issues concerning these document productions, and other discovery-related work that is responsive to special requests from Baker or applicable generally to Windels Marx's cases.

28.    Time entries during this Compensation Period related to, among other things, (i) working with Baker on issues related to obtaining discovery from foreign third-

parties, (ii) working on tracking preservation notices sent to certain banks and related preservation notice issues, (iii) working with Baker on issues related to the service list of the Firm's defendants and producing parties for Baker's motion to establish the third-party data rooms, ultimately served and filed on July 24, 2013, and issues raised by certain producing parties regarding inclusion of their documents in the data rooms, and (iv) working with the Baker Discovery Management Team on general discovery protocols and issues impacting the Firm's Madoff cases.

### Task Code 042: Bankruptcy Court Litigation (171.3 hours)

29.      This category covers all litigation brought by Windels Marx on behalf of the Trustee other than adversary proceedings against BLMIS Investment Advisor customers, including (i) fraudulent conveyance cases against Hoboken Radiology LLC, *Picard v Hoboken Radiology LLC*, Adv. Pro. No. 10-05386 (Bankr. S.D.N.Y.) (BRL), PetcareRX, *Picard v. PetCareRX*, Adv. Pro. No. 10-05392 (Bankr. S.D.N.Y.) (BRL), and a number of charities (which proceedings are under seal), (ii) a breach of loyalty action against a foreign consultant to the Trustee, *Picard v. Ewald Weninger, et al*., Adv. Pro. No. 11-01680 (Bankr. S.D.N.Y.) (BRL), and (iii) the on-going representation of the Trustee as a creditor in the bankruptcy case, pending in the Bankruptcy Court in the District of Connecticut, of a BLMIS Investment Advisor customer, *In re Robert Silverman*, 11-50504 (Bankr. D. Conn.) (AHWS).

30.      Time entries during this Compensation Period related to (i) work on the amended reorganization plan, amended disclosure statement, and other filings in order to continue the Trustee's rights in *In re Robert Silverman,* (ii) the negotiation and evaluation

(with Trustee input) of potential settlements in and/or dismissals of certain of the charity and other cases, and (iii) the settlement and dismissal of the Ewald Weninger action, and (iv) working on issues related to the effects of certain District Court decisions as relates to certain of these cases.

## B.   GOOD FAITH PROCEEDINGS (MATTER 07) (<u>252.4 hours</u>)

31.    This category relates to over 30 "Good Faith" adversary proceedings that Windels Marx commenced on behalf of the Trustee against BLMIS Investment Advisor net winner customers to recover approximately $229 million in fictitious profits paid out by BLMIS.

32.    In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period included (i) negotiating, documenting, and finalizing settlements in two good faith cases and dismissing same, (ii) assessing settlement potential in certain other good faith cases and addressing possible mediation, (iii) working on discovery issues, and productions of documents in the context of settlement negotiations and/or mediation, in certain good faith cases, and (iv) updating Baker attorneys with good faith "snapshots" and other requested case summaries.

## C.   MADOFF FAMILY ENTITIES (MATTER 08) (<u>71.5 hours</u>)

33.    This category relates to three cases against certain Madoff family-owned entities and Madoff family members seeking in the aggregate over $30 million in transfers from BLMIS that were used to capitalize and fund certain Madoff family personal business ventures. *Picard v. Madoff Technologies LLC, et al.,* Adv. Proc. No. 10-0483 (Bankr. S.D.N.Y.) (BRL); *Picard v. Madoff Family LLC, et al.,* Adv. Pro. No. 10-03485 (Bankr.

S.D.N.Y.) (BRL); *Picard v. Madoff Energy Holdings*, Adv. Pro. No. 10-034184 (Bankr. S.D.N.Y.) (BRL).

34.    In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related to (i) researching and analyzing issues in connection with a possible settlement with certain of the defendants, (ii) negotiating and obtaining approvals for such settlement, and (iii) updating Baker attorneys with briefing reports and other requested case information.

**D.    IVY/BEACON (MATTER 09) (<u>1.0 hours</u>)**

35.    This category relates to an adversary proceeding commenced against Ivy, Beacon, and 26 other defendants to avoid and recover $114 million in avoidable transfers and to subordinate claims. *Picard v. Beacon Associates, et al.*, Adv. Pro. No. 10-05356 (Bankr. S.D.N.Y.) (BRL).

36.    Remaining time entries during this Compensation Period related solely to issues regarding the Ivy/Beacon documents and confirmation that the settlement of the related SDNY actions is proceeding as expected.

**E.    BLUMENFELD (MATTER 10) (<u>1,345.8 hours</u>)**

37.    This category relates to a fraudulent conveyance action to avoid and recover approximately $100 million in avoidable transfers from Edward Blumenfeld, a close friend and business partner of Madoff, and 58 other defendants, and to subordinate claims. *Picard v. Edward Blumenfeld, et al.*, Adv. Pro. No. 10-04474 (Bankr. S.D.N.Y.) (BRL).

38.    In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related primarily to preparing for mediation and amending the

complaint, including the following actions: (i) reviewing documents, drafting memoranda, and legal research and factual analysis, (ii) drafting mediation statements and reply statements and preparing mediation material for the mediator, and (iii) participating in the mediation and post-mediation follow-up.

## F.    CREDIT SUISSE (MATTER 12) (**25.8 hours**)

39.    This category relates to an avoidance action filed on December 12, 2011 to recover subsequent transfers of BLMIS Customer Property from certain BLMIS feeder funds to Defendants totaling over $375 million. *Picard v. Credit Suisse AG, et al.,* Adv. Pro. No. 11-02925 (Bankr. S.D.N.Y.) (BRL).

40.    In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related to (i) the review and analysis of documents regarding transfers and supporting allegations in the complaint and (ii) drafting memoranda on factual and legal issues.

## G.    SOLON CAPITAL (MATTER 13) (**1.9 hours**)

41.    This category relates to an avoidance action filed on January 17, 2012, amended July 30, 2012, to recover subsequent transfers of BLMIS Customer Property from a BLMIS feeder fund to Defendant totaling approximately $2 million. *Picard v. Solon Capital, Ltd.*, Adv. Pro. No. 12-01025 (Bankr. S.D.N.Y.) (BRL).

42.    In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related to (i) the analysis of transfers and (ii) drafting stipulations extending defendant's time to respond and adjourning the pre-trial conference.

## H.    ZEPHYROS (MATTER 14) (**2.0 hours**)

43.     This category relates to an avoidance action filed on April 5, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendant totaling over $114 million. *Picard v. Zephyros Limited*, Adv Pro. No. 12-01278 (Bankr. S.D.N.Y.) (BRL).

44.     In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related to (i) the analysis of transfers and (ii) drafting stipulations extending defendant's time to respond and adjourning the pre-trial conference.

**I.     MISTRAL (MATTER 15) (2.0 hours)**

45.     This category relates to an avoidance action filed on April 5, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendant totaling approximately $3.4 million.  *Picard v. Mistral (SPC)*, Adv Pro. No. 12-01273 (Bankr. S.D.N.Y.) (BRL).

46.     In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related to (i) the analysis of transfers and (ii) drafting stipulations extending defendant's time to respond and adjourning the pre-trial conference.

**J.     SOCIETE GENERALE (MATTER 16) (17.0 hours)**

47.     This category relates to an avoidance action filed on May 30, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendants totaling over $162 million.  *Picard v. Societe Generale Private Banking (Suisse) S.A. (f/k/a SG Private Banking Suisse S.A.)*, Adv Pro. No. 12-01677 (Bankr. S.D.N.Y.) (BRL).

48.    In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related to (i) the analysis of transfers and issues related to allegations in the complaint and (ii) drafting stipulations extending defendant's time to respond and adjourning the pre-trial conference.

**K.    ROYAL BANK OF CANADA (MATTER 17) (11.5 hours)**

49.    This category contains entries related to two avoidance actions. The first action relates to an avoidance action filed on June 6, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendants totaling over $100 million. *Picard v. Royal Bank of Canada*, Adv Pro. No. 12-01699 (BRL).

50.    The second action under Matter 17 relates to an avoidance action filed on June 6, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendants totaling over $80 million. *Picard v. Banque Internationale a Luxembourg S.A. (f/k/a Dexia Banque Internationale a Luxembourg S.A.*, Adv. Pro. No. 12-01698 (BRL).

51.    In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related to (i) the analysis of transfers and (ii) drafting stipulations extending defendant's time to respond and adjourning the pre-trial conference.

**L.    CREDIT SUISSE (as successor-in-interest to Clariden Leu) (MATTER 18) (6.7 hours)**

52.    This category relates to an avoidance action filed on May 30, 2012, amended July 30, 2012, to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendant totaling over $49 million. *Picard v. Credit Suisse AG.,*

*as successor-in-interest to Clariden Leu AG and Bank Leu AG*, Adv Pro. No. 12-01676 (BRL).

53.     In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related to (i) the analysis of transfers and (ii) drafting stipulations extending defendant's time to respond and adjourning the pre-trial conference.

**M.     TRINCASTAR (MATTER 19) (1.8 hours)**

54.     This category relates to an avoidance action filed on September 22, 2011 to recover subsequent transfers of Customer Property from a BLMIS feeder fund to Defendant totaling approximately $13.3 million. *Picard v. Trincastar Corp.*, 11-02731 (BRL).

55.     In addition to the tasks outlined in ¶ 22, time entries during this Compensation Period related to (i) the analysis of transfers and (ii) drafting stipulations extending defendant's time to respond and adjourning the pre-trial conference.

**N.     COORDINATED CASES (MATTER 20) (233.5 hours)**

56.     This category relates to a group of eight international subsequent transferee cases, filed by Baker and staffed with Baker attorneys, which Howard Simon is supervising, with limited work by other Windels attorneys, to facilitate the coordination of common information, issues, and documents between the firms and take advantage of staffing efficiencies.

57.     Time entries during this Compensation Period related to (i) the research, analysis, and drafting of memoranda on numerous factual and legal issues, (ii) reviewing

and coding documents for relevance and use in amending complaints, and (iii) working on amended complaints.

## O.    LARGE CASE DOCUMENT REVIEWS (MATTER 21) (**1,419.6 hours**)

58.    This category relates to the First Level, Second Level, and additional reviews of the documents produced in large case adversary proceedings. The time charges in this matter are billed at special reduced rates negotiated with SIPC.

59.    Time entries during this Compensation Period related to (i) the First and Second Level, Quality Control, and Hot/Critical and other targeted document reviews, (ii) the supervision and oversight of such reviews, (iii) work on review protocols and strategies, and the creation of targeted searches, to create efficiencies in connection with the reviews, and (iv) the creation of indices and summaries of selected documents in preparation for mediation.

## V.    COMPENSATION REQUESTED

60.    During the Twelfth Compensation Period, Windels Marx expended 4,520.3 hours in the rendition of professional and paraprofessional services on behalf of the Trustee and the Chapter 7 Trustee, resulting in a blended attorney hourly rate of $394.38 for fees incurred.

61.    Prior to filing this Twelfth Application, Windels Marx provided to SIPC (i) its May 1, 2013 through July 31, 2013 monthly statements setting forth the Firm's total fees for services rendered and expenses incurred on behalf of the consolidated estate for each month during the period May 1, 2013 through July 31, 2013 in the aggregate amount

of $1,888,366.67[2] and $10,301.05, respectively, and (ii) a draft of this Twelfth Application. The Firm wrote off certain unbilled and billed time, and SIPC's staff made certain additional adjustments and suggestions, which were adopted by Windels Marx. After such write-offs and adjustments (and the 10% discount), Windels Marx's May 1, 2013 through July 31, 2013 monthly statements reflected total fees and expenses of $1,590,346.00 and $7,737.22, respectively.

62.    Specifically, Windels Marx's total fees and expenses for this Twelfth Compensation Period were $1,888,366.67 and $10,301.05, respectively. In connection with preparing each of the three monthly statements and this Twelfth Application, Windels Marx voluntarily (i) wrote off unbilled time of $69,900.00, (ii) wrote off billed time of $51,415.60, and (iii) reduced its total remaining fees of $1,767,051.11 to $1,590,346.00 by discounting the Firm's rates by 10% at SIPC's request (resulting in a voluntary reduction of $298,020.67, or approximately 15.78% of Windels Marx's total fees). Windels Marx also agreed to write off expenses customarily charged to other clients in the amount of $2,563.83, resulting in $7,737.22 of remaining expenses. Such fees and expenses are reasonable based on the customary compensation charged by comparably skilled practitioners in the Chapter 7 and 11 Cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market. Total hours expended after all reductions equal 4,520.30.

---

[2] Note that this amount is after reduction of billable rates for attorneys and staff in connection with the document review performed under Matter 21, as negotiated with SIPC and as described in paragraph 58, *supra*.

63.    In addition to the fees sought in this application, with the approval and support of SIPC, Windels Marx requests a release of $2,604,724.22 from the holdback, which represents 50% of all amounts (i) previously held back and not released to the Firm and (ii) contemplated to be held back pursuant to this Twelfth Application.[3]

64.    There is no agreement or understanding among the Trustee, Windels Marx or any other person, other than members of Windels Marx, for sharing of compensation to be received for services rendered in this case.

65.    This Twelfth Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"). Pursuant to the Local Guidelines, the certification of Howard L. Simon, Esq. regarding compliance with the same is attached hereto as Exhibit A.

66.    Exhibit B annexed hereto provides a schedule of Windels Marx professionals and paraprofessionals who have provided services for the Debtors during the Twelfth Compensation Period, the capacity in which each individual is employed by the Firm, the year in which each attorney was licensed to practice law, the hourly billing rate charged by Windels Marx for services provided by each individual and the aggregate number of hours billed by each individual. The 10% discount (as described above) is already reflected in the total amount billed.

---

[3] In connection with Windels Marx's First through Twelfth Fee Applications, $5,399,448.44 was, or is contemplated to be, held back. By order dated September 14, 2010, the Court approved the release of $190,000.00 from the holdback of Windels Marx's First and Second Fee Applications. Windels Marx now requests that $2,604,724.22 be released, calculated as 50% of $5,399,448.44 less $190,000.00, or $5,209,448.44.

67.     Exhibit C annexed hereto provides a schedule of the expenses for which reimbursement is requested.  The requested expenses are customarily charged to and paid by Windels Marx's bankruptcy and non-bankruptcy clients.  At SIPC's request, Windels Marx has not charged for local travel expenses and overtime meals, which categories of expenses are regularly charged to and paid by Windels Marx's clients (*see* ¶62).

68.     Exhibit D annexed hereto is a summary by matter and task code of services performed by Windels Marx from May 1, 2013 through July 31, 2013.

69.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Twelfth Compensation Period, but were not classified or processed prior to the preparation of this Twelfth Application, Windels Marx reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.     WINDELS MARX'S REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

70.     Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred ... by a trustee ..."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this Chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by

SIPC. In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendations of SIPC.

71.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of Windels Marx (see section 78fff-3(b)(2) of SIPA).

72.    Based on the allocation process set forth in SIPA, the Trustee has determined at this time that he has no reasonable expectation that the general estate will be sufficient to make any distribution to general creditors or pay any administrative expenses. That is, the Trustee believes that any assets allocated to the BLMIS general estate will be exhausted prior to his being able to reimburse SIPC fully. The Trustee has been advised by SIPC that it concurs with this belief of the Trustee. Accordingly, any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

73.    Therefore, with respect to this Twelfth Application, Windels Marx requests that consistent with section 78eee(b)(5)(C) of SIPA, the Court "award the amounts recommended by SIPC." See In re Bell & Beckwith, 112 B.R. 876 (Bankr. N.D. Ohio 1990). Windels Marx expects that SIPC will file its recommendation to the Court with respect to this Twelfth Application prior to the hearing, currently scheduled for [December 12, 2013].

74.    Windels Marx submits that the request for interim allowance of compensation made through this Twelfth Application is reasonable and complies with the

provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

## VII.    CONCLUSION

75.    Windels Marx respectfully submits that the services rendered during the Twelfth Compensation Period merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter an Order: (i) allowing and awarding $1,590,346.00 (of which 80%, or $1,272,276.80, is to be paid currently, and 20%, or $318,069.20 is to be deferred through the conclusion of the liquidation proceeding) as an interim payment for professional services rendered by Windels Marx during the Twelfth Compensation Period, and $7,737.22 as reimbursement of the actual and necessary costs and expenses incurred by the Firm in connection with the rendition of such services, plus a release of $2,604,724.22 from the "holdback" accrued in connection with the Firm's First through Twelfth fee applications; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
            November 21, 2013

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Special Counsel for Irving H. Picard, Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Alan Nisselson, the Chapter 7 Trustee of Bernard L. Madoff*

/s/ Howard L. Simon
Howard L. Simon (hsimon@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215

{10904667:3}                                    -22-