KACHROO LEGAL SERVICES P.C.
Gaytri D. Kachroo
Gaytri Kachroo
245 Park Avenue, 39th Floor
New York, NY 10167
Tel: (212) 372-8939
Fax: (617) 864-1125

*Attorneys for The Diana Melton Trust, Dated 12/05/05*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | ) ) ) | |
| Plaintiff-Applicant, | ) ) | Adv. Pro. No. 08-01789 (BRL) |
| v. | ) ) | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | ) ) ) | (Substantively Consolidated) |
| Defendant. | ) ) | |
| In re: | ) ) ) | |
| BERNARD L. MADOFF, | ) ) | |
| Defendant. | ) ) | |

---

**CUSTOMER'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION SEEKING WITHDRAWAL OF THE REFERENCE**

1

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 4

    I.   Withdrawal Is Mandatory ................................................................... 4

        A.   The Standard For Mandatory Withdrawal Of The Reference ...................................... 4

        B.   Timeliness ................................................................................................ 5

        C.   Resolution of the Customer Claims Raise Significant Issues of Non-Bankruptcy law. ........................................................................................... 7

        D.   The Trustee's Determination Conflicts with Federal Securities Laws. ..................... 11

    II.  Cause to Withdraw The Reference Exists ........................................................ 15

        A.   Standard for Withdrawal "For Cause" ................................................... 15

        B.   Cause Exists to Withdraw the Reference .............................................. 16

    III. The Reference To The Bankruptcy Court Has Been Withdrawn In ComparAble Cases . 17

CONCLUSION ............................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Chemtura Corp. v. U.S.*, Case No. 10 Civ. 503 (RMB), 2010 U.S. Dist. LEXIS 33258, *7
(S.D.N.Y. Mar. 26, 2010 ............................................................................................. 5
*City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991 ............................ 4
*HSBC Bank PLC*, 2011 U.S. Dist. LEXIS 44126 ...................................................... 5, 11
*In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 466 (S.D.N.Y. 2001) ................... 9
*In re Cablevisions S.A.*, 315 B.R. 818 (S.D.N.Y. 2004) ................................................. 5
*In re Dana Corp.*, 379 B.R. 449, 459 (S.D.N.Y. 2007 ................................................... 5
In re Enron Corp., 388 B.R. 131 (S.D.N.Y. 2008 ........................................................... 5
*In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990 ..................................... 4
*In re Manhattan Investment Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006 ....................... 5
*In re New Times Securities Services, Inc.*, 371 F.3d 68, 84 (2d Cir. 2004 ............... 7, 13
*In re Sharp Int'l Corp.*, 403 F.3d ............................................................................. 11, 12
*In re Sharp Int'l Corp.*, 403 F.3d 43, 55 (2d Cir. 2005) ............................................... 11
*JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 57645 ..................................... 5, 7
*Lustig v. Weisz & Assocs., Inc.*, 260 B.R. 343, 345-46 (Bankr. W.D.N.Y. 2001) ....... 10
*Orlick v. Kozyack*, 309 F.3d 1325, 1332-33 (11th Cir. 2002) ...................................... 10
*Picard v. HSBC Bank PLC*, Case No. 11 Civ. 763 (JSR), 2011 U.S. Dist. LEXIS 44126, *7
(S.D.N.Y. Apr. 25, 2011 ............................................................................................. 4
*Picard v. JPMorgan Chase Bank, N.A.*, Case No. 11 Civ. 0913 (CM), 2011 U.S. Dist. LEXIS
57645, *8 (S.D.N.Y. May 23, 2011 ............................................................................ 4
*See generally Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) ...................................... 8
*Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) .......................................................... 14
*Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 321 (S.D. Tex. 1999) ...................... 15

**Statutes**

11 U.S.C. § 101(53A) ..................................................................................................... 13
11 U.S.C. § 104 ................................................................................................................ 9
11 U.S.C. § 546(e) ......................................................................................................... 13
11 U.S.C. § 548(a)(1)(B) ................................................................................................. 9
11 U.S.C. § 548(c) ......................................................................................................... 11
11 U.S.C. §§ 101(5)(A), (12) ......................................................................................... 12
11 U.S.C. 548(c) ............................................................................................................ 13
15 U.S.C. § 78ccc(a)(2)(A) ............................................................................................ 14
15 U.S.C. § 78fff(b) ......................................................................................................... 7
15 U.S.C. § 78fff-2(c)(1)(B), (C), ................................................................................. 14
15 U.S.C. § 78lll(12) ...................................................................................................... 13
15 U.S.C. §§ 78aaa ........................................................................................................... 1
15 U.S.C. §§ 78fff-2(b) and (c)(1), 78fff-3 ...................................................................... 7
17 C.F.R. § 240.10B-10 ................................................................................................. 11
28 U.S.C. § 157(d) ................................................................................................... 1, 4, 6
N.Y. Debt. & Cred. Law § 278 ...................................................................................... 13
New York Debtor and Creditor Law § 270 ....................................................................... 2

**Other Authorities**

H.R. Rep. No. 91-1613, at 2-4 (1970 ..................................................................................... 7, 13
H.Rep. No. 420, 97th Cong., 2d Sess. 1 (1982) .......................................................................... 13

## INTRODUCTION

The Diana Melton Trust, Dated 12/05/05 ("DMT") submits this Memorandum of Law in support of its motion for permissive and / or mandatory withdrawal of its customer claim from the bankruptcy court, pursuant to 28 U.S.C. § 157(d). The reference should be withdrawn because the Trustee's denial of DMT's proof of claim raises significant and novel questions of first impression under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa, *et seq.*, and other federal non-bankruptcy law. *See* 28 U.S.C. § 157(d) ("The district court shall . . . withdraw a proceeding if . . . resolution of the proceeding requires consideration of both Title 11 and other laws of the United States."). The Trustee's determination and DMT's objection to that determination are found at *Objection to Trustee's Determination of Claim, Adv. Pro. No. 08-01789* (BRL) (ECF No.s 874 and 874-1).

## PRELIMINARY STATEMENT

DMT's present BLMIS account (account number 1ZA699) is a successor to, or assignee or transferee from, one or more prior accounts ("Transferor Accounts"). The Transferor Accounts were opened with Bernard L. Madoff Investment Securities LLC ("BLMIS") with an initial deposit of $125,000 in 1992, followed by three deposits of $75,000, $70,000 and $50,000 between 1992 and 1996. Total aggregate deposits stipulated on the Trustee's Determination were $320,000. In or around August 2007, the Transferor Accounts were wholly transferred to DMT. Prior to the transfer, $665,210 was withdrawn from the Transferor Accounts". After the transfer, $62,500 was withdrawn by DMT.

The Diana Melton Trust's final BLMIS statement for Account Number 1ZA699, dated November 30, 2008, states that DMT owns securities valued at $1,120,005.21 ("Final BLMIS Statement")

In December 2008, eleven years after withdrawals were first made from the Transferor Accounts and approximately 16 months after the account was transferred to DMT from the account, Madoff's fraud was exposed. There is no dispute that DMT was an innocent investor without any knowledge of the fraud whatsoever.

DMT submitted a proof of claim to Irving H. Picard Trustee for the liquidation of BLMIS ("Trustee"). In a Notice of Determination dated October 19, 2009, the Trustee denied DMT's claim in full, taking the position that DMT's aggregated withdrawals dating back to 1997 (totaling $727,500) were greater than DMT's aggregated deposits (totaling $320,000), leaving a net deficit of $407,500. The Trustee did not initiate an avoidance action to seek to recover the net deficit.

The Trustee has taken this identical position in numerous adversary proceedings he has initiated pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 550(a) and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001)), and other applicable laws regarding avoidance of fraudulent transfers, seeking to recover investors' purportedly fictitious profits (the "clawback actions").

Had the Trustee initiated such a clawback action against DMT, DMT would have had an opportunity to challenge the Trustee's authority to take into account DMT's withdrawals in determining DMT's proof of claim, including moving to dismiss the Complaint on multiple grounds based on federal and state securities laws and the United States Constitution.

In this case, grounds for both mandatory and permissive withdrawal of the reference have arisen. As explained below, withdrawal of the reference is mandatory here because this matter requires substantial and material consideration of federal non-bankruptcy law. Specifically, DMT

2

intends to raise the following issues to this Court, should the reference be withdrawn: (i) non-bankruptcy law prohibits the Trustee from effectively avoiding transfers that BLMIS made in order to satisfy antecedent debts owed to DMT; (ii) Section 546(e) of the Bankruptcy Code limits the Trustee's right to effectively avoid transfers to only those transfers made within the two (2) years immediately preceding the SIPA filing; and (iii) the final resolution of this controversy requires an exercise of "judicial power," as described in the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), which prevents the bankruptcy court from finally resolving such claims.

To the extent that this Court finds withdrawal is not mandatory, "cause" exists to require a permissive withdrawal of the reference. Indeed, even if the legal questions at issue were first ruled upon by the bankruptcy court, the parties would still be entitled to *de novo* review by the United States District Court. Thus, judicial economy weighs heavily in favor of having the questions at issue decided in the first instance by the United States District Court.

This Court has previously already granted many motions to withdraw the reference based upon comparable grounds, including motions made by defendants in claw back actions brought by the Trustee. See, e.g., *Picard v. Flinn Invs., LLC*, 11 Civ. 52223 (JSR), 2011 U.S. Dist. LEXIS 136627 (S.D.N.Y. Nov. 29, 2011); *Picard v. Goldman*, 11 Civ. 4959 *JSR), 2011 U.S. Dist. LEXIS 136627 (S.D.N.Y. Nov. 29, 2011); *Picard v. Hain*, 11 Civ. 4936 (JSR), 2011 U.S. Dist. LEXIS 136627 (S.D.N.Y. Nov. 29, 2011); *Picard v. Blumenthal*, 11 Civ. 4293 (JSR), 2011 U.S. Dist. LEXIS 136627 (S.D.N.Y. Nov. 29, 2011); *Picard v. Greiff*, 11 Civ. 3775 (JSR), 2011 U.S. Dist. LEXIS 136627 (S.D.N.Y. Nov. 29, 2011); *Picard v. Katz*, 11 Civ. 03605 (JSR), 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011); *Picard v. Kohn*, 11 Civ. 1181 (JSR), 2011 U.S. Dist. LEXIS 101261 (S.D.N.Y. Sept. 6, 2011); *Picard v. HSBC Bank PLC*, 450 B.R. 406 (S.D.N.Y.

3

2011). (the "Reference Withdrawal Cases"). The instant case presents issues similar to those raised in the foregoing cases. Accordingly, for these reasons, and those described in greater detail below, DMT's Motion should be granted.[1]

## ARGUMENT

## I. WITHDRAWAL IS MANDATORY

### A. The Standard For Mandatory Withdrawal Of The Reference

Mandatory withdrawal of the reference is governed by 28 U.S.C. § 157(d), which provides:

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Withdrawal of the reference is mandatory in a proceeding involving "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *Picard v. HSBC Bank PLC*, Case No. 11 Civ. 763 (JSR), 2011 U.S. Dist. LEXIS 44126, *7 (S.D.N.Y. Apr. 25, 2011) (citing *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)). Where consideration of non-Bankruptcy Code federal statutes is "substantial and material," withdrawal is mandatory. *Picard v. JPMorgan Chase Bank, N.A.*, Case No. 11 Civ. 0913 (CM), 2011 U.S. Dist. LEXIS 57645, *8 (S.D.N.Y. May 23, 2011) (citing *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)).

---

[1]    Numerous other defendants in adversary proceedings commenced against them by the Trustee related to BLMIS have filed similar motions to withdraw the reference to the Bankruptcy Court. DMT has adopted and incorporated certain arguments made by those parties to the extent applicable to this case. Further, DMT reserves its right to raise additional arguments in the event the Court determines that the bankruptcy reference in another relevant proceeding should be withdrawn based upon grounds not currently raised herein.

The SIPA statute is a federal securities law codified in Title 15. Accordingly, the District Court has held that resolution of a substantial issue arising under the SIPA statute is "almost by definition" an issue which "requires consideration of both Title 11 and other laws of the United States." *HSBC Bank PLC*, 2011 U.S. Dist. LEXIS 44126 at *10; *See also JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 57645 at *20-21 ("Thus, an issue that requires significant interpretation of SIPA undoubtedly requires consideration of laws other than Title 11. Regardless of a bankruptcy court's familiarity with a statute outside of Title 11, the requirements for mandatory withdrawal are satisfied if the proceeding requires consideration of a law outside of Title 11.").

Cases involving significant interpretation of federal securities laws have routinely been withdrawn. See, e.g., In re Enron Corp., 388 B.R. 131 (S.D.N.Y. 2008); *In re Cablevisions S.A.*, 315 B.R. 818 (S.D.N.Y. 2004). Withdrawal of the reference is particularly appropriate "where matters of first impression are concerned." *See Chemtura Corp. v. U.S.*, Case No. 10 Civ. 503 (RMB), 2010 U.S. Dist. LEXIS 33258, *7 (S.D.N.Y. Mar. 26, 2010) (citing *In re Manhattan Investment Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006)). Withdrawal is similarly mandatory where there appears to be a conflict between the Bankruptcy Code and other federal laws, such as SIPA. *HSBC Bank PLC*, 2011 U.S. Dist. LEXIS 44126 at *4. Withdrawal is mandatory even where a federal statute "only arguably conflicts" with the Bankruptcy Code. *In re Dana Corp.*, 379 B.R. 449, 459 (S.D.N.Y. 2007) (withdrawing reference where general goals of CERCLA statute arguably conflicted with general goals of Bankruptcy Code).

**B.    Timeliness**

As a preliminary matter, the deadline stipulated in the *Administrative Order Establishing Deadline for Filing Motions to Withdraw the Reference, Adv. Pro. No. 08-01789* (BRL) (Bank.

5

S.D.N.Y. Mar. 5, 2012) (ECF No. 4707) (the "Withdrawal Motion Deadline")  does not apply to the instant motion. The Withdrawal Motion Deadline pertains only to adversary proceedings, as opposed to the instant contested matter.

The instant motion is furthermore timely in accordance with 28 U.S.C. § 157(d), as there has been no unreasonable delay and the debtors are not prejudiced by any delay *See In re Texaco Inc.*, 84 B.R. 911, 919-20 (S.D.N.Y. 1988).

Any delay in seeking withdrawal of the reference is not attributable to DMT. Upon submitting its objection to the Trustee's determination, DMT had a legitimate expectation that the Trustee would either i) reconsider its determination – thus avoiding the need for a judicial determination on withdrawable issues such as those outlined above, or ii) arrange for a hearing in the bankruptcy court – as it is required to do – at which time DMT could have made a motion such as this to withdraw the reference.

To DMT's knowledge, no such hearing or formal trigger point occurred. In order to keep costs to a minimum and so as not to cause unnecessary additional proceedings in the bankruptcy process, DMT patiently awaited a response. DMT, however, can no longer justify waiting indefinitely for a forum in which the basis of the Trustee's determination against it can be tested.

The Trustee furthermore cannot be prejudiced by withdrawal of the reference at this time, as he has been on full notice of DMT's legal position regarding the Trustee's determination through its detailed objection to the same. In addition, no costs have been incurred in respect of this controversy as the matter has not progressed and it appears that no steps have been taken within the bankruptcy court system or by the Trustee to resolve the same.

C.    **Resolution of the Customer Claims Raise Significant Issues of Non-Bankruptcy law.**

In this case, the Trustee's position against DMT requires substantial and material consideration of non-bankruptcy law, including SIPA and other federal securities laws. The position taken by the Trustee in his determination of DMT's proof of claim raises issues of first impression and creates conflicts between the Bankruptcy Code and federal securities laws. Thus, withdrawal of the reference is mandatory for any of the independent reasons set forth below.

1)    **The Trustee's Determination Raises Issues of First Impression.**

"Where matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met." *JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 57645 at *8-9. Here, the Trustee's determination of DMT's proof of claim presents novel issues regarding (1) whether the basis Trustee's denial of DMT's claim is inconsistent with the SIPA statute and therefore prohibited; and (2) whether SIPA and other state or federal laws mandate that the Trustee account for the time value of money when calculating a customer's "net equity" claim.

2)    **The Determination Conflicts with the Purpose of SIPA.**[2]

SIPA is a remedial statute. The legislation was designed "to provide protection to customers of broker dealers [and] reinforce confidence that investors have in the U.S. securities markets." *See In re New Times Securities Services, Inc.*, 371 F.3d 68, 84 (2d Cir. 2004) (citing H.R. Rep. No. 91-1613, at 2-4 (1970)). SIPA protects innocent investors by giving customers of

---

[2]    To the extent that the issues under sections C and D of this brief have been or are currently under review in related proceedings to which DMT is not a party, it is submitted that due to the factors in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), DMT should be afforded an opportunity to assert its position in front of an Article III Court, as Defendants to the various adversary proceedings initiated by the Trustee have been able to do.

broker-dealers priority status in liquidations and up to $500,000 as an advance on customer claims. *See* 15 U.S.C. §§ 78fff-2(b) and (c)(1), 78fff-3.

To effectuate its purpose, SIPA incorporates the Bankruptcy Code, but only "[t]o the extent consistent with the provisions" of the SIPA statute. 15 U.S.C. § 78fff(b). SIPA was designed to protect investors like DMT and indeed the Transferor Accounts. It is undisputed that neither the Transferor Account holders nor DMT were innocent investors and their principals had no knowledge, or reason to know, of the Madoff fraud. Indeed, the cash withdrawals the Trustee seeks to charge against DMT – which were made by an entity not party to these proceedings - date back to as long as eleven years before the fraud was uncovered and ten years before DMT actually owned the account. Here, however, the Trustee is using the avoidance powers of the Bankruptcy Code to deny DMT's proof of claim on the basis of a fraudulent transfer in a SIPA liquidation proceeding intended to protect, not penalize, innocent investors such as DMT.

The Trustee's use of the Bankruptcy Code as a sword against innocent investors is inconsistent with SIPA and therefore conflicts with Section 78fff(b), which provides that the Bankruptcy Code is only incorporated to the extent consistent with the SIPA statute. *See generally Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) ("[R]emedial legislation should be construed broadly to effectuate its purposes.").

### 3)    The Trustee's Determination Fails to Account for the Time Value of Money.

The Trustee's "net investment" method for calculating customer claims fails to account for the time value of money in the context of a decades-long Ponzi scheme and, therefore, violates SIPA, the Bankruptcy Code and general creditor/debtor laws. As discussed above, the net investment method simply compares all the deposits to all the withdrawals over the life of a

8

customer's BLMIS account. If the withdrawals exceed the deposits, then the Trustee concludes that the customer received "fictitious profits" and its proof of claim is denied on this basis. However, irrespective of the fact that such withdrawals were made by an entirely separate entity not party to these proceedings, this method erroneously equates $100,000 deposited 20 years ago to $100,000 withdrawn many years later. This fails to account for the time value of money, including inflation, opportunity cost, and even minimal return through other investment. In DMT's case, the Trustee compares $320,000 of principal deposits between 1992 and 1996 to a total of $727,500 in withdrawals over the course of the subsequent decade without adjusting for inflation and / or other factors.

Moreover, the Trustee's failure to account for the time value of money would be a valid defense in an avoidance action under the Bankruptcy Code. To prove a fraudulent transfer, the Trustee has to show that the debtor received less than the "reasonably equivalent value" for the transfer. 11 U.S.C. § 548(a)(1)(B). Reasonably equivalent value has been "equated to something akin to fair market value." *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 466 (S.D.N.Y. 2001). The fair market value of $320,000 deposited up to seventeen to twenty-one years ago far exceeds $320,000 deposited today. Accordingly, the Trustee's net investment method does not comport with the Bankruptcy Code. Indeed, even the Bankruptcy Code itself accounts for the time value of money by requiring adjustments to certain dollar figures within the Code every three years based on the Consumer Price Index. *See* 11 U.S.C. § 104.

The SEC specifically objected to the Trustee's net investment method based on its failure to use a "constant dollar" approach:

> [T]he Commission disagrees with the Trustee's view that principles applicable in Ponzi scheme cases limit the claims of BLMIS customers to the actual net cash they invested . . .. Moreover, the Commission is concerned that such principles could be interpreted to require calculation of claims in current dollars as of the

9

> dates of investments and withdrawals. This could preclude calculation of the
> claim in constant dollars, adjusting for the effects of inflation, which the
> Commission believes is the appropriate method of determining net equity in this
> case.

SEC Brf. at p. 9, [BLMIS Bankr. Dkt. No. 1052]. Courts also have held that the "for value"

defense is available to victims of Ponzi schemes based on the time value of their deposits. *See*

*Orlick v. Kozyack*, 309 F.3d 1325, 1332-33 (11th Cir. 2002) (affirmative defense of transfer "for

value" allowed under Section 548(c)); *Lustig v. Weisz & Assocs., Inc.*, 260 B.R. 343, 345-46

(Bankr. W.D.N.Y. 2001) (it is a "universally accepted fundamental commercial principal that,

when you loan an entity money for a period of time in good faith, you have given value and are

entitled to a reasonable return" even in the context of a Ponzi scheme).

In the context of a SIPA liquidation and a Ponzi scheme of unprecedented magnitude and

duration, the issue of the time value of money is a matter of first impression and, accordingly,

withdrawal of the reference is mandatory.

## 4) The Trustee's Determination Impermissibly Takes Into Account Withdrawals of a Third Party

The Trustee has not alleged any basis for reducing the balance in the Transferor Accounts

at the time of the transfer under applicable state law, which is governing pursuant to the decision

in *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443 (2007), and has not alleged any

basis to avoid or reduce said balance pursuant to the avoidance powers of the Bankruptcy Code.

Instead, the reduction (a) is an attempt to assert an avoidance power retroactively, to assert such

a power as against the owner of the Transferor Accounts who is not a party to this Case; (b) has

no basis in any statute or rule – but importantly non in bankruptcy law (d) is subject to various

defenses in state and federal law; and (e) is an improper attempt to impose liability on a

transferee of the initial transferee without alleging or satisfying the conditions of section 550(b)

of the Bankruptcy Code. The Trustee should be required to redetermine The Diana Melton Trust's claim by recognizing the full amounts transferred from any Transferor Accounts.

### D.    The Trustee's Determination Conflicts with Federal Securities Laws.

Withdrawal of the bankruptcy reference is also mandatory because the Trustee's claims create conflicts between the Bankruptcy Code and other federal laws, including SIPA. *HSBC Bank PLC*, 2011 U.S. Dist. LEXIS 44126 at *4.

### 1)    The Alleged Fraudulent Transfers / Fictitious Profits Were Payments in Satisfaction of an Antecedent Debt.

SIPA allows a trustee to recover fraudulent transfers only "to the extent that such transfer is voidable or void under the provisions of Title 11." 15 U.S.C. § 78fff-2(c)(3).   A transfer is not voidable or void under Title 11 if the transfer was made in satisfaction of an antecedent debt. *See* 11 U.S.C. § 548(c); *In re Sharp Int'l Corp.*, 403 F.3d 43, 55 (2d Cir. 2005). Here, each withdrawal from DMT's BLMIS account – or indeed the Transferor Accounts – was a payment in satisfaction of an antecedent debt pursuant to federal securities laws, which create enforceable obligations owed by a broker to the customer based on the securities listed in the brokerage account statements, regardless of whether those securities were actually purchased.

As an initial matter, DMT was a customer of a registered broker-dealer subject to SEC regulations and federal and state securities laws. Those regulations and securities laws require broker-dealers to send customers account statements and trade confirmations. *See* Rule 10b-10, 17 C.F.R. § 240.10B-10; NASD Rule 2340 (Customer Account Statements; *See* NYSE Rule 409 (Statements of Accounts to Customers).

These brokerage statements create enforceable obligations. Under Article 8 of the New York Uniform Commercial Code, a customer obtains an enforceable ownership right against the broker for the securities listed on the brokerage statement. NYUCC § 8-501(b) ("a person acquires a security entitlement[3] if a securities intermediary[4] . . . indicates by book entry that a financial asset has been credited to the person's securities account."). That is, "once a [broker] has acknowledged that it is carrying a position in a [security] for its customer or participant, the [broker] is obligated to treat the customer or participant as entitled to the [security]." NYUCC § 8-501 cmt. 2.

The obligation created by the issuance of a brokerage statement is owed regardless of whether the broker actually purchases the securities listed on the statement. Section 8-501(c) provides that "a person has a security entitlement even though the [broker] does not itself hold the [security]." NYUCC § 8-501(c); *See also* NYUCC § 8-501 cmt. 3 ("The entitlement holder's rights against the [broker] do not depend on whether the [broker] acquired its interests.").

Accordingly, BLMIS owed DMT the securities listed on DMT's account statements and, at the time of each withdrawal, BLMIS was satisfying its antecedent obligation to pay the balances reflected in the statements. In the context of the Bankruptcy Code, these withdrawals are payments in satisfaction of an antecedent debt.[5] It is well-settled that payments in satisfaction of antecedent debts cannot constitute a fraudulent conveyance. *In re Sharp Int'l Corp.*, 403 F.3d at 54 ("[A] conveyance which satisfies an antecedent debt made while the debtor

---

[3]  A "security entitlement" is defined as "the rights and property interest of an entitlement holder with respect to a financial asset." NYUCC § 8-102(a)(17). It is a "package of rights and interests that a person has against the person's securities intermediary and the property held by the intermediary." NYUCC § 8-503 cmt. 2.

[4]  A "securities intermediary" includes a broker. NYUCC § 8-102(a)(14)(ii).

[5]  A "debt" is defined as "liability on a claim," and a "claim" is "a right to payment , whether or not such right is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. §§ 101(5)(A), (12).

12

is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another."). Indeed, the satisfaction of a debt is a complete defense to a fraudulent conveyance claim under Section 548(c) of the Bankruptcy Code. 11 U.S.C. 548(c); *See also* N.Y. Debt. & Cred. Law § 278.

Based on the foregoing, DMT's withdrawals were in partial satisfaction of the antecedent debt owed by BLMIS and are not "voidable or void" under SIPA. 15 U.S.C. § 78fff-2(c)(3). Resolution of this argument requires substantial and material interpretation of SIPA and other federal securities laws, mandating withdrawal of the reference.

## 2) The Bankruptcy Code "Safe Harbor" Defense Requires Substantial and Material Interpretation of SIPA.

Bankruptcy Code Section 546(e) provides an exception to constructive fraudulent transfer actions where the transfer is a "settlement payment made by . . . [a] stockbroker . . . in connection with a securities contract . . . ." 11 U.S.C. § 546(e). BLMIS was a registered broker-dealer and the transfers at issue were settlement payments in connection with Account Agreements. Although the Trustee may dispute whether BLMIS was a stockbroker because it did not purchase securities, the definitions under SIPA are much broader. *See, e.g.*, 15 U.S.C. § 78lll(12) ("The term 'persons registered as brokers or dealers' includes any person who is a member of a national securities exchange other than a government securities broker . . . ."). Similarly, the definition of "stockbroker" under the Bankruptcy Code does not require that the debtor act as a broker-dealer at all times. 11 U.S.C. § 101(53A). Moreover, the purpose of Section 546(e) of the Bankruptcy Code and the overall purpose of SIPA is to promote investor confidence and protect market stability. *See* H.Rep. No. 420, 97th Cong., 2d Sess. 1 (1982); *In re New Times Securities Services, Inc.*, 371 F.3d 68, 84 (2d Cir. 2004) (citing H.R. Rep. No. 91-

1613, at 2-4 (1970)).  Accordingly, these statutes should be construed broadly to effectuate these purposes.  *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967).

More generally, if BLMIS or Madoff had not been a stockbroker, then SIPA would not apply at all.  *See* 15 U.S.C. § 78ccc(a)(2)(A) (SIPC membership shall be "all persons registered as brokers or dealers").  Accordingly, in a SIPA liquidation, the debtor should be treated as a "stockbroker."  The issues raised by the Trustee's claims require substantial and material interpretation of SIPA and its interaction with the Bankruptcy Code. Accordingly, withdrawal of the reference is mandatory.

### 3)    The Trustee's Determination Violates SIPA § 78fff-2(c)(3).

A SIPA Trustee may only use the avoidance provisions of the Bankruptcy Code when "customer property is not sufficient to pay in full" the claims in the priorities set forth under SIPA. 15 U.S.C. § 78fff-2(c)(3).  In this case, the only claims are first to satisfy customer claims and then to satisfy SIPC claims as subrogee for the claims of customers.  *See* 15 U.S.C. § 78fff-2(c)(1)(B), (C); *see also* Trustee Motion at ¶ 38 [BLMIS Bankr. Dkt. No. 4048] (acknowledging that only subsections (1)(B) and (1)(C) are relevant for claim distribution).

As of August 23, 2011, the Trustee had determined 99.99% of all customer claims, and allowed claims totaling $6,961,691,021, on which SIPC has advanced a total of $794,890, 347. *See* http://www.madofftrustee.com/Status.aspx.  Accordingly, the Trustee must have less than $6,961,691,021 in customer property to have standing to bring avoidance actions.  However, in the Trustee's Fifth Interim Report for the Period Ending March 31, 2011, the Trustee disclosed he has recovered more than $7.6 billion.  Trustee Report at ¶ 4 [BLMIS Bankr. Dkt. No. 4072]. This $7.6 billion figure does not include an additional $2.2 billion government forfeiture relating to the Picower Estate.  *See id.* at ¶ 68.  Given that the Trustee has marshaled more than sufficient

assets to satisfy all customer claims, the Trustee is violating SIPA Section 78fff-2(c)(3) by bringing these avoidance actions. *See* 15 U.S.C. § 78fff-2(c)(3); *Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 321 (S.D. Tex. 1999) ("Section 78fff-2(c)(3) comes into effect when the customer's property held by the debtor is not sufficient to pay customers' claims in full.").

The resolution of this issue similarly requires substantial and material interpretation of SIPA, mandating withdrawal of the reference.

> **4)   Section 546(e) of the Bankruptcy Code Limits the Trustee to a Two Year Claw Back**

## II.   CAUSE TO WITHDRAW THE REFERENCE EXISTS

### A.   Standard for Withdrawal "For Cause"

Under 28 U.S.C. § 157(d), "[t]he District Court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Id. (emphasis added). While "cause" is not defined in the statute, the Second Circuit has set forth several factors to be considered in the analysis. Specifically, in *In re Orion Pictures Corp.,* 4 F.3d 1095 (2d Cir. 1993), *cert den.*, 511 U.S. 1026, 114 S.Ct. 1418 (1994), the Court identified the following factors (the "*Orion* factors") pertinent to the analysis:

(1) the nature of the claim or proceeding -- that is, whether it is core or non-core;

(2) whether the claim or proceeding is legal or equitable;

(3) whether withdrawal is consistent with expediting the bankruptcy process and promoting judicial efficiency;

(4) the need to avoid confusion and discourage forum shopping; and

(5) uniformity in administering bankruptcy law.

B.    <u>Cause Exists to Withdraw the Reference</u>

If this Court finds that withdrawal of the reference is not mandatory, the Court should still exercise its discretion and withdraw the reference because "cause" exists to do so based on the foregoing factors.

To the extent that the instant matter could be considered a core proceeding, which typically has favored resolution in bankruptcy courts, that factor is not dispositive. *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, No. 11 civ. 5994, 2011 WL 5244463, at *4 (S.D.N.Y. Nov. 2, 2011) ("the Bankruptcy Court's power to enter final judgments on matters is not coextensive with what the statute considers 'core.'").

The other *Orion* factors weigh in favor of withdrawing the reference. The Trustee's determination of DMT's proof of claim and the claims of numerous other BLMIS customers raises novel and important, at issue in this matter are legal questions regarding the nature of antecedent debt, applicability of the safe harbor provision of the Bankruptcy Code, and the judicial power of the bankruptcy court. Because the Bankruptcy Court lacks final adjudicative authority to decide these questions, factors of judicial economy and the avoidance of confusion and forum shopping weigh heavily in favor of withdrawal of the reference. Indeed, the Southern District of New York has held that "where the Bankruptcy Court lacks final adjudicative authority, the remaining *Orion* considerations will often tend to point toward withdrawal, for the same reasons they did when the question asked was whether or not the actions were core[.]" Id. at *7. Because the bankruptcy court does not have the final power to adjudicate the Trustee's claims, there is "no advantage to allowing the matter to be heard in Bankruptcy Court, because [the District Court] will eventually need to review the Article I Court's determinations *de novo . .*

*. i.e.*, as the statute would have them treated if they were 'noncore.'" Id. Accordingly, DMT has

established "cause" under 28 U.S.C. § 157(d), warranting a withdrawal of the reference.

## III.    THE REFERENCE TO THE BANKRUPTCY COURT HAS BEEN WITHDRAWN IN COMPARABLE CASES

This Court has already ruled that withdrawal of the reference is mandatory for the

purposes of deciding: "(i) whether the Trustee may, consistent with non-bankruptcy law, avoid

transfers that Madoff Securities purportedly made in order to satisfy antecedent debts; [and] (ii)

whether, in light of this Court's decision in *Picard v. Katz*, 11 U.S.C. § 546(e) applies, limiting

the Trustee's ability to avoid transfers." *Picard v. Flinn Investments, LLC, et al.*, Case No. 11-

cv-04293-JSR, 2011 U.S. Dist. LEXIS 136627, at *27 (S.D.N.Y. Nov. 29, 2011). This Court has

consistently withdrawn the reference in numerous cases on these grounds. *See, e.g., Picard v.

Greiff*, Case No. 11-cv-03775-JSR, Doc. No. 19 (S.D.N.Y. Sep. 16, 2011); *Picard v. Katz*, Case

No. 11-cv-3605-JSR, 2011 U.S. Dist. LEXIS 109595 (S.D.N.Y. Sep. 27, 2011). These exact

issues are raised in the instant motion.


## CONCLUSION

Based on the foregoing, the resolution of the Trustee's determination against DMT

requires significant interpretation of federal non-bankruptcy law, including matters of first

impression and resolution of conflicts between the Bankruptcy Code and federal securities laws.

Accordingly, DMT respectfully requests that the Court order mandatory and or discretionary

withdrawal of the reference.

Dated: December 20, 2013

KACHROO LEGAL  SERVICES P.C.
Gaytri  D. Kachroo
Gaytri  Kachroo
245 Park Avenue,  39th Floor
New York, NY 10167
Tel: (212) 372-8939
Fax: (617) 864-1125

*Attorneys for The Diana Melton Trust, Dated 12/05/05*