Page 1

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - - - - - - - - - - - - - - x

 4   SECURITIES INVESTOR PROTECTION

 5   CORPORATION,

 6                   Plaintiff,

 7           v.                      Case No. 08-01789(SMB)

 8   BERNARD L. MADOFF INVESTMENT

 9   SECURITIES,

10                   Defendant.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   IRVING H. PICARD, TRUSTEE FOR

13   THE LIQUIDATION OF B,

14                   Plaintiff,

15           v.                      Case No. 10-04445(SMB)

16   MUUS INDEPENDENCE FUND LP,

17                   Defendant.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR

20   THE LIQUIDATION OF B,

21                   Plaintiff,

22           v.                      Case No. 10-04601(SMB)

23   LEIF,

24                   Defendant.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

1                    U.S. Bankruptcy Court

2                    One Bowling Green

3                    New York, New York

4

5                    January 29, 2014

6                    10:01 AM

7

8    B E F O R E :

9    HON STUART M. BERNSTEIN

10   U.S. BANKRUPTCY JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1    Hearing re:  Laurence Leif's Letter Request to Remove Judge

2    Cyganowski as Mediator

3

4    Hearing re:  Pre-Trial Conference

5

6    Hearing re:  Counsel for Leif's Letter Request to File a

7    Motion to Remove Judge Cyganowski as Mediator

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

Page 4

```
 1    A P P E A R A N C E S :

 2    BAKER HOSTETLER

 3          Attorneys for the Trustee

 4          45 Rockefeller Plaza

 5          New York, NY 10111-0100

 6

 7    BY:  OREN J. WARSHAVSKY, ESQ.

 8          MARC E. HIRSCHFIELD, ESQ.

 9          HEATHER J. MCDONALD, ESQ.

10

11    LAW OFFICES OF ROBERT J. KAPLAN

12          Attorney for the Defendants

13          15 Maiden Lane

14          New York, NY 10038

15

16    BY:  ROBERT J. KAPLAN, ESQ.

17

18    MILBERT LLP

19          Attorney for Mr. Leif

20          One Pennsylvania Plaza

21          New York, NY 10119

22

23    BY:  MATTHEW A. KUPILLAS, ESQ.

24

25
```

```
1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.  Picard v. Muus?

3    Who wants to start?

4              MR. WARSHAVSKY:  Good morning, Your Honor, Oren

5    Warshavsky for the trustee.

6              We have -- today's schedule is a first pretrial

7    conference, Your Honor, and essentially I guess we wanted to

8    make sure that a pretrial order and everything that --

9              THE COURT:  Uh-huh.

10             MR. WARSHAVSKY:  -- we discussed, all of the

11   procedural matters with Judge Lifland, and I guess we wanted

12   to make sure that met with Your Honor's rules and we could

13   still go forward and submit a bench memoranda, submit the

14   pretrial -- joint pretrial order with exhibits, see if there

15   were any things -- anything Your Honor wanted.

16             THE COURT:  As I understand it you're just going

17   forward on your first claim for relief, which is the two-

18   year intentional fraud claim --

19             MR. WARSHAVSKY:  Correct, Your Honor.

20             THE COURT:  -- under the Code.

21             MR. WARSHAVSKY:  That's correct, Your Honor.

22             THE COURT:  And how long do you think it'll take

23   you to put on your direct case?

24             MR. WARSHAVSKY:  We think it'll take anywhere from

25   a day to a day and a half.
```

Page 6

```
 1              THE COURT:  Why?

 2              MR. WARSHAVSKY:  Well, we have expert -- three

 3    expert witnesses, we were taking into account time for

 4    cross-examination, we have to prove to Ponzi scheme, we have

 5    to show what the records are, and then go through the

 6    transcripts, and so out of an abundance of caution we -- I

 7    would tell you that three witnesses with cross-examine and

 8    exhibits hopefully it will go shorter, but I don't want to

 9    commit --

10              THE COURT:  Okay.

11              MR. WARSHAVSKY:  -- to a shorter time frame and

12    then come back and have it take longer.

13              THE COURT:  All right.

14              Yes, sir?

15              MR. KAPLAN:  Good morning, Your Honor, Robert

16    Kaplan for the defendants.

17              I was actually hoping that over the next month or

18    so when we work on the pretrial order that the plaintiff and

19    I could try to work out, to the extent we could, stipulated

20    facts, et cetera on the case both in terms of their claim

21    and in terms of our defense so that we can hopefully narrow

22    the issues.

23              I think that ultimately there are some legal

24    issues that Your Honor will have to address.

25              THE COURT:  What do you think those are?
```

Page 7

1          MR. KAPLAN:  I think that they're issues that

2     actually were ones that were -- had been addressed by Judge

3     Rakoff in his decision back in October and I think Judge

4     Rakoff had a lot of briefing before, which I was not a party

5     to.

6          My clients actually have a different view in terms

7     of how those issues should have been argued, whether or not

8     Your Honor will come out differently from Judge Rakoff on

9     that I don't know, whether an Appellate Court will come out

10    differently I don't know, but I do believe that it would be

11    helpful to brief the issues that Judge Rakoff --

12          THE COURT:  But which issues?

13          MR. KAPLAN:  Two issues.  Primarily two issues, I

14    don't want to -- I don't want to limit it to two issues --

15          THE COURT:  Sure.

16          MR. KAPLAN:  -- but primarily two.

17          One would be Judge Rakoff had a view that in terms

18    of the application of the -- what he called the value

19    defense to a situation involving SIPA that you had to treat

20    what he called the customer property estate differently from

21    what he called the general estate, and he said so therefore,

22    although a defense might be a good defense generally in

23    bankruptcy if you were dealing with a non, quotes, "customer

24    property estate."  If you're dealing with a, quotes,

25    "customer property estate" the defense would not be good.

Page 8

```
 1    I'm basically --

 2              THE COURT:  I don't understand.  How would it --

 3    how would it be -- you're talking about 548(c)?

 4              MR. KAPLAN:  Yes, 548(c).

 5              THE COURT:  How would it work differently with

 6    customer property as opposed to a general bankruptcy case?

 7              MR. KAPLAN:  Well, what Judge Rakoff said in his

 8    decision, as I understand it, is that because the SIPA

 9    statute basically says that customers should have their own

10    customer property estate to allow someone who is the target

11    of a -- of an avoidance action to assert a defense that

12    would diminish the customer property estate would put the

13    Bankruptcy Code at odds with SIPA and --

14              THE COURT:  Just tell me how it works differently.

15    Under 548(c) the defense is value --

16              MR. KAPLAN:  Right.

17              THE COURT:  -- and good faith.

18              MR. KAPLAN:  Yes.

19              THE COURT:  Right?  And a trustee is just trying

20    to recover what he calls the profit --

21              MR. KAPLAN:  Yes.

22              THE COURT:  -- in excess of what you received over

23    what you paid, and there's no -- are you saying you gave

24    value for that?

25              MR. KAPLAN:  Yes.
```

Page 9

```
 1              THE COURT:  And how did you give value?

 2              MR. KAPLAN:  Okay.  So, Your Honor, it's our view

 3    that the premise in the Bayou (ph) case, which Judge Rakoff

 4    also --

 5              THE COURT:  How did you give value?  That's all

 6    I'm asking.

 7              MR. KAPLAN:  Okay.

 8              THE COURT:  What value did you give --

 9              MR. KAPLAN:  The value --

10              THE COURT:  -- for the profit?

11              MR. KAPLAN:  -- the value that we gave was that my

12    client --

13              THE COURT:  Right.

14              MR. KAPLAN:  -- apart from all the other claims

15    that it might have had against the Madoff estate had a --

16    the Madoff estate owed a debt to my client within the

17    meaning of the Bankruptcy Code --

18              THE COURT:  Right.

19              MR. KAPLAN:  -- for money had and received.

20              THE COURT:  Right.

21              MR. KAPLAN:  All right?  And the Bayou Court said

22    that all you can get back is principal under the theory of

23    restitution.

24              THE COURT:  The Bayou Court isn't the only court

25    that said that.
```

Page 10

1          MR. KAPLAN:  I -- no, I understand, there's been a

2     number of courts since then that have said that as well.

3          THE COURT:  So what's the difference?

4          MR. KAPLAN:  Okay.  The Bayou Court cited to a

5     1928 case for that proposition.

6          THE COURT:  That proposition that all you get is

7     your profit -- all you get -- that the trustee can recover

8     the profit and you're only entitled to what you put in in

9     principal doesn't -- it may go back to 1927, but there are a

10    lot of cases that say that in this circuit and in other

11    circuits.  Sholes (ph) -- the Sholes case in the Seventh

12    Circuit says that.  So just tell me why it's different now.

13         MR. KAPLAN:  All right.  The reason I believe it's

14    different is because I believe that a claim for money hadn't

15    received based on a decision by the New York Court of

16    Appeals, which would define what the concept of debt would

17    be under the Bankruptcy Code in terms of value, the New York

18    Court of Appeals said that a debt for money hadn't received

19    is not satisfied by the return of the principal but it

20    requires -- requires payment of interest on the principal.

21         THE COURT:  You can make that argument, I've seen

22    that argument made in Ponzi scheme cases that didn't involve

23    SIPA.  Make that argument.

24         Okay, what other arguments, what other legal

25    issues are there?

1          MR. KAPLAN:  The other issue is that in terms of

2    calculating the amount of the profit what the trustee has

3    done is we have a situation where MIF, the Muus Independence

4    Fund, opened an account with BLMIS, the Madoff company --

5          THE COURT:  Uh-huh.

6          MR. KAPLAN:  -- back in I think it was 2002, and

7    they opened the account with $2.8 million and then they

8    added additional money to that afterwards.  A few years

9    after they added another --

10          THE COURT:  My understanding of the trustee's

11   argument is it wasn't really $2.8 million, that was just a

12   bookkeeping entry that Madoff created and it was really

13   $1.7 million or something like that.

14          MR. KAPLAN:  Yes, but he bases that on the fact

15   that another company, not Muus Independence Fund, but

16   another company had originally invested with Madoff

17   $1.7 million, that that company's account grew to

18   $2.8 million, that that company then became a limited

19   partner in Muus Independence Fund.

20          THE COURT:  Uh-huh.

21          MR. KAPLAN:  Muus Independence Fund was a

22   partnership that had various partners there.  That company

23   became a limited partner of Muus Independence Fund, bought a

24   subscription for I think it was approximately 14- or

25   $15 million.  Part of the subscription amount that they paid

1    was by taking the money out of their -- out of their BLMIS

2    account and giving it to Muus.

3              THE COURT:  Uh-huh.

4              MR. KAPLAN:  That was their contribution to Muus,

5    and Muus then opened an account --

6              THE COURT:  I understand that issue, that's

7    certainly a real issue in the case.

8              MR. KAPLAN:  Yeah.  And so we believe that, you

9    know, that that computation of -- that they're taking

10   $1.2 million away from MIF because of the fact that another

11   company had gotten a profit, and that other company hasn't

12   been sued by the trustee, that other company can't be sued

13   by the trustee because not only is it beyond the two-year

14   statute, it's even beyond the six-year statute.

15             THE COURT:  Okay.  All right.  Thank you.

16   Anything else?

17             MR. WARSHAVSKY:  Nothing -- I could -- we can

18   respond, Your Honor, with what our theory of the case is but

19   I think Your Honor --

20             THE COURT:  Well, I know --

21             MR. WARSHAVSKY:  -- already articulated it.

22             THE COURT:  -- what your theory of the case is and

23   I understand particularly how you -- your theory of how you

24   computed the money that went in in the first place.

25             MR. WARSHAVSKY:  Right.

```
 1              THE COURT:  And, you know, he's certainly got an

 2    argument about that and we'll just hear it at trial, so I

 3    look forward to your pretrial order.  Thank you.

 4              MR. KAPLAN:  Thank you, Your Honor.

 5              MR. WARSHAVSKY:  Thank you, Your Honor.

 6              THE COURT:  Okay.  Are all the parties here on the

 7    other matter, the Leif matter?

 8              MR. KUPILLAS:  Yes.

 9              THE COURT:  Okay.

10              MR. KUPILLAS:  Well, Your Honor, I'm here on

11    behalf of Mr. Leif for the avoidance action.

12              THE COURT:  I understand, you're Mr. Kupillas?

13              MR. KUPILLAS:  Kupillas, yes.

14              THE COURT:  Yes, Mr. Leif wanted to argue on the

15    phone, it's not my practice to allow people to argue on the

16    phone, so I said he could listen only or he could come up --

17              MR. KUPILLAS:  I understand that.

18              THE COURT:  -- but he has not chosen to listen in

19    as I understand it; is that correct?

20              MR. KUPILLAS:  That's correct, Your Honor.

21              THE COURT:  All right.  But I will still entertain

22    what I guess is his motion to disqualify the mediator.

23              MR. KUPILLAS:  Yes.

24              THE COURT:  Go ahead.

25              MR. KUPILLAS:  Yes, Your Honor, good morning.
```

1            THE COURT:  Good morning.

2            MR. KUPILLAS:  The circumstances behind Mr. Leif's

3    request are somewhat an extraordinary coincidence.  You've

4    read the papers --

5            THE COURT:  I've read the papers, I've seen the

6    segment.

7            MR. KUPILLAS:  Right.  Now, you know, Mr. Leif

8    believed Judge Cyganowski was not responsive to his

9    question.

10            I have a great deal of respect for Judge

11    Cyganowski, I'm sure she's an able and fair mediator, and I

12    recognize reasonable people can have different opinions

13    about the tone and the content of the back and forth between

14    Mr. Leif and Judge Cyganowski, but if this mediation is to

15    have any chance of success Mr. Leif has to believe in the

16    process, the fairness of the process, the fairness of the

17    mediator, and really all Mr. Leif is asking here is to

18    appoint -- for you to appoint a new mediator or for us to

19    select a new mediator among ourselves so we can give this

20    mediation --

21            THE COURT:  Uh-huh.

22            MR. KUPILLAS:  -- a chance of success, which I

23    think we're all eager to do.

24            The trustee has not actively opposed the relief

25    Mr. Leif is seeking, I don't think it would result in any

```
 1    prejudice at all.  I think it's a straightforward request

 2    for relief, Your Honor.

 3              MS. MCDONALD:  Good morning, Your Honor, Heather

 4    McDonald on behalf of the trustee.

 5              We find nothing in the video that we saw to

 6    indicate that Judge Cyganowski should be disqualified as a

 7    mediator.

 8              That said we will respect whatever order the Court

 9    chooses to enter in this regard.

10              THE COURT:  But let me ask you something,

11    Mr. Kupillas.  You wrote a letter saying that you wanted to

12    make a motion.

13              MR. KUPILLAS:  Yes.

14              THE COURT:  Do you have anything to add to your

15    letter or you want me to just treat your letter as the

16    motion?

17              MR. KUPILLAS:  I think you could treat the letter

18    as a motion, I was acting in accordance with the late --

19              THE COURT:  Okay.

20              MR. KUPILLAS:  -- Judge (indiscernible - 00:10:35)

21    --

22              THE COURT:  All right.

23              MR. KUPILLAS:  -- practices for a premotion

24    letter.

25              THE COURT:  All right.
```

Page 16

1           Before the Court are two related letter requests

2   pertaining to Lawrence E. Leif, a former customer of Bernard

3   L. Madoff Investment Securities LLC, hereinafter Madoff.

4           Both letters, one by Leif and one by his counsel,

5   asked me to disqualify the court-appointed mediator, Melanie

6   L. Cyganowski, Esquire.

7           For the reasons that follow the Court declines to

8   disqualify the mediator without prejudice to the parties

9   right to mutually agree on a different mediator.

10          Leif maintained several accounts with Madoff in

11  multiple capacities.  At issue are two of these accounts, an

12  IRA account and another investment account, hereinafter the

13  investment account.

14          He submitted a customer claim form for his IRA

15  account to Irving H. Picard, trustee for the Securities

16  Investor Protection Act Liquidation of Madoff.  The trustee

17  partially allowed the IRA claim in the amount of $272,260.60

18  and paid that amount to Leif.

19          On August 2, 2010 Leif objected to the partial

20  disallowance of this claim, hereinafter the claim dispute.

21  The claim dispute is pending and Leif represents himself pro

22  se.

23          Leif is also a defendant in an avoidance action

24  commenced by the trustee on December 1, 2010 in connection

25  with the investment account.  See Picard v. Leif adversary

1    proceeding number 10-04601, hereinafter the Leif action.

2              The trustee seeks to clawback $1.466 million under

3    the net investment method.

4              Matthew Kupillas of the law firm of Milberg LLP

5    represents Leif in the Leif action and has moved to dismiss

6    the complaint.

7              On October 21, 2013 the Court referred the claim

8    dispute and the Leif action to mediation pursuant to the

9    adoption of procedures governing mediation of matters and

10   the use of early neutral evaluation mediation/volitary (sic)

11   arbitration in bankruptcy cases and adversary proceedings,

12   an order docketed on December 1, 2009 and any amendments

13   thereto, hereinafter the general order, and the litigation

14   case management procedures for avoidance action case number

15   08-1789 at ECF docket number 3141.

16             By separate order in the adversary proceeding the

17   Court appointed Cyganowski to mediate both disputes pursuant

18   to general order Section 2.2(b) concluding that they

19   required, "an appropriately experienced mediator", (order

20   directing mediation, dated October 21, 2013, ECF document

21   number 22.)

22             Leif and Cyganowski had a prior encounter

23   regarding the Madoff matter that forms the basis for the

24   disqualification requests.

25             On May 6, 2011 both appeared on a Fox business

1   news segment called, "Chasing Bernie Madoff: Victims Speak

2   out."

3             Cyganowski, a former bankruptcy judge,

4   participated as the bankruptcy expert on an panel that

5   included a criminal defense lawyer and a CPA.  The on-stage

6   audience consisted of Madoff investors who had apparently

7   been sued by the trustee in clawback actions.  Leif was a

8   member of the on-stage group.

9             The segment, which lasted for roughly ten minutes,

10  focused to a degree on the plight of investors who had paid

11  income taxes on distributions they were now being asked to

12  return.

13            At one point Leif asks Cyganowski whether the IRS

14  or the U.S. government was subject to clawbacks.  The

15  moderator deflected the question to the CPA who responded

16  that in theory the IRS would give investors a rebate on

17  taxes they had paid.

18            Not satisfied Leif again asked Cyganowski whether

19  investors who were sued for clawbacks could in turn sue the

20  U.S. government to get clawbacks.  Cyganowski responded in

21  substance that the investor could not bring a clawback

22  action against the government, that as the CPA had stated,

23  the investor should file and seek a refund and that she was

24  not a tax expert.  This was the entire encounter between

25  Leif and Cyganowski.

Page 19

1              In the January 7, 2014 letter requesting

2      disqualification of Cyganowski as mediator of the claim

3      dispute Leif charged that he would be unable to receive a

4      full and fair hearing from Cyganowski during the mediation.

5      He alleged that he and Cyganowski "had a heated debate on

6      several issues," and Leif "found her to be -- to have

7      preconceived notions on what is morally right for the

8      victims."

9              On January 10, 2014 the trustee responded by

10     letter that, "Nothing contained [in the video segment]

11     warrants Judge Cyganowski's disqualification as mediator in

12     this matter."

13             Separately on January 13, 2014 Kupillas wrote to

14     the Court on Leif's behalf seeking permission to file a

15     motion to replace Cyganowski as mediator with regard to the

16     Leif action, although in court today he has stated that he's

17     prepared to treat this letter as the motion.

18             The letter stated that correctly or incorrectly

19     Leif lacked confidence that he would receive a full and fair

20     hearing from Cyganowski and this lack of confidence should

21     be a sufficient reason to appoint someone who has the full

22     trust of all the parties.

23             The trustee responded the next day that, "It is

24     our continued position that this prior encounter between

25     Mr. Leif and Judge Cyganowski provides no basis to believe

Page 20

1    that Judge Cyganowski will be unable to serve as fair and

2    impartial mediator of the parties' pending disputes."

3              Leif's letter request to disqualify Cyganowski is

4    denied.

5              She was appointed as mediator pursuant to the

6    Court's general order which provides at Section 2.3 that the

7    mediator is subject to disqualification under 28 U.S.C. §455

8    to the same extent as a judge would be.

9              A judge must disqualify himself or herself in any

10   proceeding in which his or her impartiality might be

11   reasonably questioned, 28 U.S.C. §455(a), or where he has a

12   personal bias or prejudice concerning a party.  28 U.S.C.

13   §455(b)(1).

14             Section 2.3 also incorporates the standards for

15   disqualification for bias or prejudice set forth in 28

16   U.S.C. §144, but under both statutes the test for

17   disqualification is an objective one that asks whether a

18   disinterested and reasonably observer knowing all the facts

19   would question the judge's impartiality regardless of

20   whether the judge was actually partial or biased.  Thorp

21   (ph) versus Zimmer, Inc. 590 Fed. Supp. 2d, 492 at 498,

22   (S.D.N.Y. 2008).

23             Here Leif failed to show a reasonable basis to

24   believe that Cyganowski is partial or biased.

25             The Court watched the video of the Fox News

Page 21

1    segment and reviewed the transcript.  The interaction

2    between Leif and Cyganowski was brief, did not discuss the

3    specific facts of Leif's case, and Cyganowski remained

4    respectful and sympathetic throughout the entire segment.

5    The exchange was not heated, as Leif contends, and

6    Cyganowski did not display a preconceived notice "on what is

7    morally right for the victims," and she was not asked to

8    expound on a question of morality.

9            Instead Leif asked her a straightforward legal

10   question, could the clawback defendants bring a clawback

11   action against the government presumably as a subsequent

12   transferee?  She did not think so, she admitted she was not

13   a tax expert, and ultimately she deferred to the CPA's

14   answer.

15           In the end Leif did not get the answer he wanted,

16   but this is not a basis for her recusal.  See Shaw versus

17   Kuwait Airways Corporation, 211 Westlaw 3278912 at page 2

18   (S.D.N.Y. July 26, 2011).

19           Kupillas' request for recusal fairs no better.  In

20   substance he argues that even if Leif has no reasonable

21   basis to lack confidence in Cyganowski's impartiality his

22   subjective belief should be sufficient to disqualify

23   Cyganowski.  This eviscerates the objective test recognized

24   by the courts and "the judge need not recuse himself based

25   on the subjective view of a party no matter how strong that

Page 22

1   view is held."  United States versus Simons 918, Fed. 2d.

2   592 at 599, (Sixth Circuit 1990).

3           Accordingly the letter requests to disqualify

4   Cyganowski are denied, the foregoing is without prejudice to

5   mutually agree to a substitute mediator if they believe that

6   a different mediator will advance the goal of mediation, but

7   any such agreement is subject to further order of the Court.

8           Settle an order on notice.  Thank you.

9           MR. KUPILLAS:  Thank you, Your Honor.

10          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

11          THE COURT:  Okay.

12       (Whereupon these proceedings were concluded at 10:21

13   AM)

14

15

16

17

18

19

20

21

22

23

24

25

Page 23

1                              **I N D E X**

2

3                              RULINGS

4                                                    Page        Line

5      Letter Requests to disqualify Cyganowski        16           1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    Dawn          Digitally signed by Dawn South
                    DN: cn=Dawn South, o, ou,
6    South         email=digital1@veritext.com,
                    c=US
7                   Date: 2014.01.30 15:05:32 -05'00'

8    AAERT Certified Electronic Transcriber CET**D-408

9     Veritext

10   330 Old Country Road

11   Suite 300

12   Mineola, NY 11501

13

14   Date:  January 29, 2014

15

16

17

18

19

20

21

22

23

24

25