**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani
Robert S. Loigman
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Telecopier: (212) 849-7100

*Attorneys for Kingate Global Ltd. and Kingate Euro Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES INVESTOR PROTECTION CORPORATION,**<br><br>          **PLAINTIFF-APPLICANT,**<br><br>**V.**<br><br>**BERNARD L. MADOFF INVESTMENT SECURITIES LLC,**<br><br>          **DEFENDANT.** | **NO. 08-01789 (SMB)**<br><br><br>**SIPA LIQUIDATION**<br><br><br>**(SUBSTANTIVELY CONSOLIDATED)** |
| **IN RE:**<br>**BERNARD L. MADOFF,**<br>          **DEBTOR.** | |
| **IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC**<br><br>          **PLAINTIFF**<br><br>**V.**<br><br>**KINGATE GLOBAL FUND, LTD., by its Liquidators, and KINGATE EURO FUND, LTD., by its Liquidators.**<br><br>          **DEFENDANTS.** | **Adv. Pro. No. 12-01920 (SMB)** |

**MEMORANDUM IN SUPPORT OF OPPOSITION OF KINGATE GLOBAL FUND, LTD. AND KINGATE EURO FUND, LTD. TO TRUSTEE'S APPLICATION FOR <u>ENFORCEMENT OF AUTOMATIC STAY AND INJUNCTION</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND .........................................................................................4

    A.    The Kingate Funds ..........................................................................4

    B.    The Kingate Funds' Investment Manager and Related Parties ...............................5

    C.    The Kingate Funds' Claims ...................................................................5

    D.    The Trustee Has Long Been Aware of the Kingate Funds' Claims .......................6

    E.    The Trustee's Subsequently-Filed Claims Against the Bermuda
Defendants ..........................................................................................8

    F.    The Common Interest Agreement between the Trustee and the Kingate
Funds ..................................................................................................9

    G.    The Trustee's New Challenge to the Kingate Funds' Claims................................9

ARGUMENT ...............................................................................................................10

    A.    The Automatic Stay Imposed by Section 362(a) Does Not Apply ......................10

        1.    There is No Basis for Applying the Automatic Stay Under Section
362(a)(1) ..............................................................................11

        2.    There is No Basis for Applying the Automatic Stay Under Section
362(a)(3) ..............................................................................14

            (a)    The Estate Does Not Have a Property Interest in the
Kingate Funds' Claims .................................................14

            (b)    The Claims Are Not Subject to the Stay Simply Because
They Are Asserted Against a Third-Party Also Sued by the
Estate ......................................................................18

    B.    The Trustee Cannot Fulfill the Requirements for Imposition of an
Injunction Under Section 105 ................................................................19

        1.    The Section 105(a) Factors Are Not Satisfied Here ..................................20

        2.    The Trustee's "Race to the Courthouse" Argument Is Without
Merit....................................................................................24

3.    The Second Circuit's *China Trade* Decision Prohibits the
Bankruptcy Court from Enjoining the Claims in the Bermuda
Action................................................................................................26

C.    The Trustee Cannot Challenge The Bermuda Action After More Than a
Three-Year Delay...............................................................................28

CONCLUSION..........................................................................................................31

# TABLE OF AUTHORITIES

**Page**

## Cases

*Baker v. Andover Assocs. Mgmt. Corp.*,
   924 N.Y.S.2d 307 (Sup. Ct. Westchester Cnty. 2009)............................................15

*Boles v. Turner (In re Enivid, Inc.)*,
   364 B.R. 139 (Bankr. D. Mass. 2007) ....................................................24

*China Trade & Development Corp. v. M.V. Choong Yong*,
   837 F.2d 33 (2d Cir. 1987)...............................................................26

*City of New York v Exxon Corp.*,
   932 F.2d 1020 (2d Cir. 1991)..............................................................24

*Crysen/Montenay Energy Co. v. Esselen Assocs., Inc.*
   *(In re Crysen/Montenay Energy Co.)*,
   902 F.2d 1098 (2d Cir. 1990)..................................................... 12-13

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000)..............................................................24

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
   980 F.2d 125 (2d Cir. 1992).......................................................... 11-12

*Fisher v. Apostolou*,
   155 F.3d 876 (7th Cir. 1998) .......................................................20, 21

*Fox v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*,
   429 B.R. 430 (Bankr. S.D.N.Y. 2010)......................................... *passim*

*Fox v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*,
   848 F. Supp. 2d 469 (S.D.N.Y. 2012)...................................................20

*Garrity v. Leffler (In re Neuman)*,
   71 B.R. 567 (S.D.N.Y. 1987)............................................................22

*Gucci v. Sinatra (In re Gucci)*,
   197 Fed. App'x 58, 60 (2d Cir. 2006)............................................. 28-29

*Highland Capital Mgmt. LP v. Chesapeake Energy Corp.*
   *(In re Seven Seas Petroleum Inc.)*,
   522 F.3d 575 (5th Cir. 2008) ............................................................16

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995)..........................................................14, 19

*Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*,
   475 F.3d 56 (2d Cir. 2007)...............................................................26

*In re A&P Indus., Inc.*,
117 B.R. 789 (Bankr. S.D.N.Y. 1990)...................................................................................11

*In re Chiles Power Supply Co., Inc.*,
264 B.R. 533 (Bankr. W.D. Mo. 2001).................................................................................23

*In re Granite Partners, L.P.*,
194 B.R. 318 (Bankr. S.D.N.Y. 1996)............................................................................19, 25

*In re Phar-Mor, Inc. Secs. Litig.*,
164 B.R. 903 (W.D. Pa. 1994)..................................................................................16, 19, 24

*In re Probulk*, 407 B.R. 56
(Bankr. S.D.N.Y. 2009).......................................................................................................23

*In re Reliance Acceptance Grp., Inc.*,
235 B.R. 548 (D. Del. 1999)............................................................................................16, 24

*In re Saunders*,
101 B.R. 303 (Bankr. N.D. Fla. 1989)..................................................................................12

*In re Smith Corset Shops, Inc.*,
696 F.2d 971 (1st Cir. 1982)................................................................................................29

*In re Wingspread Corp.*,
92 B.R. 87 (Bankr. S.D.N.Y. 1988).....................................................................................22

*Jamaica Shipping Co. Ltd. v. Orient Shipping Rotterdam B.V.*
*(In re Millennium Seacarriers, Inc.)*,
458 F.3d 92 (2d Cir. 2006)...................................................................................................27

*Job v. Calder (In re Calder)*,
907 F.2d 953 (10th Cir. 1990) .............................................................................................30

*Kagan v. Saint Vincents Catholic Med. Ctrs. of N.Y.*
*(In re Saint Vincents Catholic Med. Ctrs. of N.Y.)*,
449 B.R. 209 (S.D.N.Y. 2011).............................................................................................22

*Keene Corp. v. Coleman (In re Keene Corp.)*,
164 B.R. 844 (Bankr. S.D.N.Y. 1994)............................................................................12, 13

*Lautenberg Found. v. Picard*
*(In re Bernard L. Madoff Inv. Secs. LLC)*,
512 Fed. App'x 18 (2d Cir. 2013).........................................................................................12

*Lyondell Chem. Co. v. Centerpoint Energy Gas Servs., Inc.*
*(In re Lyondell Chem. Co.)*,
402 B.R. 571 (Bankr. S.D.N.Y. 2009)........................................................................22, 27-28

*Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*,
2014 WL 103988 (2d Cir. Jan. 13, 2014) ...................................................................12, 13, 17

*Matthews v. Rosene*,
739 F.2d 249 (7th Cir. 1984) ................................................................................................29

*Nevada Power Co. v. Calpine Corp.*
    *(In re Calpine)*, 354 B.R. 45 (Bankr. S.D.N.Y. 2007)............................................................22

*Picard v. Fairfield Greenwich Ltd.*,
    490 B.R. 59 (S.D.N.Y. 2013)................................................................................. *passim*

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011).................................................................. *passim*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Securities, LLC)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010)..................................................................11

*Picard v. Schneiderman*,
    491 B.R. 27 (S.D.N.Y. 2013)................................................................................. *passim*

*Picard v. Stahl*,
    443 B.R. 295 (Bankr. S.D.N.Y. 2011)................................................................. *passim*

*SSR II, LLC v. John Hancock Life Ins. Co. (U.S.A.)*,
    37 Misc. 3d 1204(A) (Sup. Ct. N.Y. Cnty. 2012)................................................15

*Stonington Capital Appreciation 1994 Fund, L.P. v.*
    *Lernout & Hauspie Speech Products N.V. (In re Stonington Prtnrs., Inc.)*,
    310 F.3d 118 (3d Cir. 2002)................................................................................27

*Thornton v. First State Bank of Joplin*,
    4 F.3d 650 (8th Cir. 1993) .................................................................................30

## **Statutes**

11 U.S.C. § 105(a) ........................................................................................................20

11 U.S.C. § 362(a) ........................................................................................................10

Defendants Kingate Global Fund Ltd. ("Kingate Global") and Kingate Euro Fund Ltd. ("Kingate Euro" and, collectively with Kingate Global, the "Kingate Funds" or the "Funds") respectfully submit this memorandum of law in support of the opposition to the Trustee's application for enforcement of the automatic stay and injunction.

## PRELIMINARY STATEMENT

Prior to the collapse of Bernard Madoff's fraudulent BLMIS operation, the Kingate Funds invested more than $1.7 billion in BLMIS. The Funds are massive "net losers"; they invested $800 million more than they withdrew over their many years as investors. Having fallen victim to Madoff, the two Kingate Funds are now subject to a permanent liquidation process under the direction of the High Court of Justice of the British Virgin Islands (the "BVI Court").

For years, the Kingate Funds were managed by Kingate Management Limited ("Kingate Management"), their Bermuda-based investment manager. Thus from the very outset of their formal liquidations, the Kingate Funds investigated claims against Kingate Management and related parties. As the only entities that paid Kingate Management, the Kingate Funds have unique claims that no other investor could possibly assert, including claims for the return of the management fees they paid. The Joint Liquidators of the Kingate Funds, as well as their legal counsel, frequently and openly discussed these claims with counsel to the Trustee starting as early as December 2009.

In December 2010, after obtaining authorization from both the BVI Court and the Supreme Court of Bermuda, the Kingate Funds, through their court-appointed liquidators, commenced claims against Kingate Management and related entities, including Kingate Management's advisors and owners, in the Supreme Court of Bermuda. The Trustee was immediately aware of the action, and discussed the case with the Kingate Funds' counsel less

1

than a week after the action was commenced.  Indeed, in prolonged settlement discussions between the Kingate Funds and the Trustee that have spanned several years, the parties have frequently discussed the Kingate Funds' claims and the specific defendants against whom those claims are asserted.  The Trustee has long recognized that these are valuable claims that the Kingate Funds, and the Kingate Funds alone, have a right to assert against their own managers.

Nearly two years after the Kingate Funds commenced their action, however, the Trustee abruptly underwent a purported about-face; instead of acknowledging the Funds' claims in the Bermuda Action, the Trustee decided to challenge them.  Specifically, for the first time since the Bermuda Action was commenced, the Trustee asserted that the Kingate Funds cannot pursue claims *against their own manager* because, the Trustee posits, those claims, or the proceeds of those claims, are property of the BLMIS estate.  Nearly six months *after* the Kingate Funds commenced their action in Bermuda, the Trustee brought claims in New York against the same defendants, asserting that those defendants are subsequent transferees of the Kingate Funds' withdrawals from BLMIS (notwithstanding the Kingate Funds' undeniable and massive losses). The Trustee asserts that his claims in New York take precedence over the Kingate Funds' claims in Bermuda, and that the Kingate Funds must therefore forego their action to recover the fees that they paid to their managers.[1]

The Trustee's adversary proceeding, and this application for an injunction in particular, is wholly without basis.  As an initial matter, having waited years to seek such relief, and having encouraged the Kingate Funds to pursue their claims (and expend resources in doing so) during

---

[1]    The Trustee suggests that he commenced his action seeking recovery from the same set of defendants in April 2009, and that the Kingate Funds commenced their action "almost two years later." (Tr. Mem. at 2.)  The record is clear:  the Trustee did not assert claims against Kingate Management and its related parties until May 2011, almost six months after the Kingate Funds sued those defendants.  The Trustee's purposefully misleading chronology is inexcusable.

that period, the Trustee cannot now invoke the automatic stay of section 362.  The doctrine of laches bars such inequitable and untimely efforts.

Substantively, the Trustee's claims fare no better.  First, the money that the Trustee is now pursuing from the alleged subsequent transferees is plainly not property of the BLMIS estate.  Unless and until those transfers are avoided, and the money recovered by the estate, property held by the common defendants does not belong to the BLMIS estate.

Second, the claims asserted by the Kingate Funds in their Bermuda action are not subject to the section 362 automatic stay:  (a) far from being common to all BLMIS creditors, the claims belong solely to the Kingate Funds; (b) the claims are not asserted against the Trustee or the BLMIS estate; and (c) the Kingate Funds brought these claims wholly independent from any claims the Trustee has asserted or could assert.  Indeed, the Kingate Funds are the direct—and the only—parties to have suffered as the result of Kingate Management's conduct.  The Kingate Funds' claims against their own managers are quintessential investor claims that only the Kingate Funds themselves have standing to pursue.

The Trustee's application fails for other reasons, as well.  Under these circumstances, the Trustee cannot possibly fulfill the Bankruptcy Code § 105 requirements for imposition of an injunction.  Moreover, the Trustee's attempt to enjoin claims in a foreign proceeding—claims brought by entities that, much like the BLMIS estate, are being administered in formal court-supervised liquidation proceedings—cannot be squared with the Second Circuit's *China Trade* doctrine, which sets sharp limits on the issuance of "anti-foreign-suit injunctions."  There is no need to reach these issues, however, as the Trustee's newly-minted claims are devoid of any legal basis.

The Trustee has commenced this novel adversary proceeding, and sought the imposition of unprecedented relief, not because he believes that the claims belong to the BLMIS estate.  The Trustee's conduct prior to filing this action belies any such assertion.  Rather, the Trustee now seeks an injunction to create leverage in negotiations with the Kingate Funds that have not resulted in a settlement.  That does not, of course, provide a legal basis for relief.  The Trustee's application should be denied.

## FACTUAL BACKGROUND

### A.    The Kingate Funds

The Kingate Funds were investors in, and victims of, BLMIS.  As the Trustee has acknowledged, the Kingate Funds collectively invested more than $1.7 billion dollars in BLMIS.  (Trustee's Third Amended Complaint, ¶ 8, attached as Exhibit A to the Declaration of Robert S. Loigman (the "Loigman Dec.").)  The Kingate Funds were massive net losers.  Applying the Trustee's "net equity" methodology (i.e., subtracting out their withdrawals from BLMIS), the Kingate Funds lost *$800 million* by the time Madoff's fraud collapsed.  (Loigman Dec. ¶ 3 n.2.) The investors in the Kingate Funds, like direct investors in BLMIS, have little hope of ever recovering all of their invested capital.

As a result of their massive losses, on May 8, 2009, the Kingate Funds were placed into provisional liquidation and provisional liquidators were appointed.  On June 4, 2009, permanent liquidation orders were issued, and thus the two funds became the subjects of a permanent liquidation process under the direction of the BVI Court.  (Loigman Dec. ¶ 3.)  The current court-appointed Joint Liquidators are William Tacon and Stuart Mackellar.  The Joint Liquidators are officers of the court.  (Affidavit of Mark Guy Chudleigh (the "Chudleigh Aff.") ¶ 7.)

**B.**    **The Kingate Funds' Investment Manager and Related Parties**

The Kingate Funds were managed by Kingate Management, a Bermuda-based company that operated solely as the Funds' manager.  As the Trustee has alleged, over a several year period, Kingate Management "collected hundreds of millions in fees from the Kingate Funds, its sole source of revenue."  (Loigman Dec. Ex. A (Third Amended Complaint), ¶ 118.)

Kingate Management, in turn, contracted with FIM Limited and FIM Advisers LLP (collectively, "FIM") to act as Kingate Management's consultants in connection with the management of the two Kingate Funds.  (Loigman Dec. ¶ 4, Loigman Dec. Exs. B-G.)  FIM was created and operated by Carlo Grosso and Federico Ceretti, the same two individuals who, through a series of trusts, were the ultimate owners of Kingate Management.  (Loigman Dec. ¶ 5.)

**C.**    **The Kingate Funds' Claims**

At the very outset of their appointment by the BVI Court, the Joint Liquidators and their advisors began investigating and analyzing potential claims against Kingate Management, FIM, Grosso, Ceretti, and the various trusts that own Kingate Management (the "Bermuda Defendants").  As a simple example of such a claim, the Kingate Funds paid management fees to Kingate Management that were based on the stated value of the Funds' assets.  Because those asset values were incorrect—as a result of the false reports disseminated by BLMIS—the management fees paid to Kingate Management were hugely inflated.

In order to file these claims, the Joint Liquidators applied for and obtained orders from both the BVI and Bermuda Courts.  (Chudleigh Aff. ¶ 10.)  On December 22, 2010, having received such authorizations, the Kingate Funds commenced an action in the Bermuda Supreme

Court against Kingate Management and the related parties (the "Bermuda Action").[2]  (Loigman

Dec. ¶ 6; Chudleigh Aff. ¶ 10.)  The action states claims against the Bermuda Defendants for

unjust enrichment arising from the Bermuda Defendants' receipt of unearned management fees,

and for damages for breach of contract and negligence flowing from duties owed directly to the

Kingate Funds.  No other BLMIS customer has asserted, or possibly could assert, similar claims

against the Bermuda Defendants.

**D.    The Trustee Has Long Been Aware of the Kingate Funds' Claims**

Since the summer of 2009, more than a year before the claims were commenced, the

Joint Liquidators and their counsel have openly discussed these claims with the Trustee's

counsel.  For example, before the Kingate Funds filed the Bermuda Action:

- On December 15, 2009, counsel for the Joint Liquidators spoke with Frederick Chockley and Marc Hirschfield, counsel to the Trustee, to explain that Kingate Management and FIM were primary targets for potential claims by the Kingate Funds.  (Loigman Dec. ¶ 7(a).)

- On February 25, 2010, counsel for the Joint Liquidators sent to Messrs. Chockley and Hirschfield discovery demands they had served upon Kingate Management and FIM.  Additional discovery demands were similarly provided to the Trustee's counsel on March 12, 2010.  (Loigman Dec. ¶ 7(b), Loigman Dec. Ex. H.)

- On April 28, 2010, the Trustee's counsel provided questions to the Joint Liquidators to ask Messrs. Grosso and Ceretti in formal interviews.  The Trustee's counsel explained that it was doing so because of the Trustee's common interest with the Joint Liquidators.  (Loigman Dec. ¶ 7(c).)

Less than a week after the claims were filed, the Trustee's counsel spoke directly with

counsel to the Joint Liquidators to discuss the claims.  (Loigman Dec. ¶ 7(d).)  In August 2011,

the Joint Liquidators provided a complete copy of the complaint in the Bermuda Action to the

---

[2]  On October 1, 2007, the Bermuda Supreme Court adopted the Guidelines for communications between courts in cross-border insolvency proceedings that were first promulgated by the American Law Institute in '*Transnational Insolvency: Principles of Cooperation Among the NAFTA Countries*' and subsequently adopted by the International Insolvency Institute.  The Guidelines "are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved."

Trustee. (Loigman Dec. ¶ 7(e).)[3]  Discussions about the Kingate Funds' Bermuda Action have

remained active during each of the subsequent years. (Loigman Dec. ¶ 8.)

   The Kingate Funds and the Trustee have also discussed the Kingate Funds' claims in

Bermuda on countless occasions while negotiating a potential resolution to the Trustee's claims

against the Kingate Funds.  Notwithstanding the Kingate Funds' massive losses as the result of

Madoff's fraud, shortly after the collapse of BLMIS, the Trustee initiated an adversary

proceeding against the Kingate Funds seeking the return of amounts withdrawn from BLMIS.

As is typical in such cases, the Trustee and his counsel have long been negotiating potential

resolutions of that action with the Joint Liquidators and their counsel.  Since the outset of those

negotiations, the parties have repeatedly discussed the Kingate Funds' claims against the

Bermuda Defendants.  (Loigman Dec. ¶ 8.)  Prior to filing this application on October 22, 2012,

the Trustee never—not once—contended that the Kingate Funds had improperly asserted claims

---

[3]   When he initiated this proceeding, the Trustee attempted to evade the fact that the Bermuda
Action had been pending for nearly two years by claiming that "it ha[d] not materially progressed." (Tr.
Mem. at 2 & 9.)  That bald assertion is incorrect.  The Kingate Funds have taken a variety of steps to
advance the Bermuda Action.  The Funds sought and obtained sanction to proceed against the Bermuda
Defendants from both the Bermuda Court and the BVI Court. (Chudleigh Aff. ¶ 10.)  After the initial
writ was issued, the Kingate Funds (a) framed and drafted detailed particulars to support their claims
based on extensive documentary records, (b) negotiated service with multiple defendants outside of the
Bermuda jurisdiction, (c) addressed extensive applications before the BVI Court filed by the various
trustee defendants to the Bermuda Proceedings for permission to defend against the Kingate Funds'
claims and to fund the defense from the trusts, (d) successfully participated—in conjunction with the
Trustee—in the hearing of an application before the Bermuda Court to wind-up KML and to appoint the
Official Receiver of Bermuda as its provisional liquidator in place of its previous  provisional liquidators,
(e) sought and obtained relief from the Bermuda Court, which ordered the lifting of the KML stay to
enable the action to proceed against KML, (f) engaged in extensive exchanges of pleadings and amended
pleadings with KML and the other defendants, including a Court hearing of an application to re-amend
the Kingate Funds' pleadings (which was initially resisted by the Bermuda Defendants but then resolved
by agreement), (g) engaged in negotiations with KML and the other Bermuda Defendants regarding case
management directions, and (h) commenced extensive document management and review. (*Id.* ¶ 11)
Through a portion of this time in 2012, the Trustee and the Joint Liquidators were operating pursuant to a
Common Interest Agreement that specifically addressed proceedings in Bermuda.  The Common Interest
Agreement eventually expired pursuant to its terms. (*Id.*)

against their own investment manager and related parties. Completely to the contrary, the Trustee repeatedly has acknowledged the viability of those claims.

E.    **The Trustee's Subsequently-Filed Claims Against the Bermuda Defendants**

Nearly six months *after* the Kingate Funds commenced the Bermuda Action, in May 2011 the Trustee amended his adversary proceeding against the Kingate Funds to add claims against the Bermuda Defendants.

Even prior to commencing his claims against the Bermuda Defendants, the Trustee had been advised of infirmities with his claims against them. The Trustee's claims assert that, by virtue of the management fees paid to Kingate Management, the Bermuda Defendants received subsequent transfers of the Kingate Funds' withdrawals from BLMIS. On several occasions, however, the Trustee has received information demonstrating that a substantial majority of management fees paid to Kingate Management *never came from BLMIS*. Rather, the Kingate Funds maintained accounts with investor deposits and used those accounts to pay the majority of their management fees. On July 15, 2010, counsel for the Joint Liquidators sent to the Trustee's counsel a preliminary tracing analysis demonstrating that a substantial majority of money paid by the Kingate Funds to Kingate Management never flowed through BLMIS. (Loigman Dec. ¶ 9, Loigman Dec. Ex. J.) Several months later, on November 12, 2010, counsel for the Joint Liquidators provided a more detailed analysis (subject to further revision, if required), again demonstrating that most payments to Kingate Management did not involve monies withdrawn from BLMIS. (Loigman Dec. ¶ 9, Loigman Dec. Ex. K.) Separate and apart from the Joint Liquidators' analyses, in January 2012, the trust defendants in the Bermuda Action provided the Trustee with yet another, much more detailed analysis demonstrating that the substantial majority of money used to pay Kingate Management's fees was never held by BLMIS. (Loigman Dec. ¶ 9.) The Trustee has never provided a response to the multiple tracing analyses.

F.      **The Common Interest Agreement between the Trustee and the Kingate Funds**

In January 2012, long after both the Kingate Funds and the Trustee had commenced

claims against the Bermuda Defendants, the Joint Liquidators and the Trustee entered into a

common interest agreement with respect to certain actions relating to Kingate Management in

Bermuda.  (Loigman Dec. ¶ 10.)  The agreement arose because each of the Trustee and the

Kingate Funds were pursuing claims against some of the same defendants in Bermuda.  The

agreement expired several months later.

G.      **The Trustee's New Challenge to the Kingate Funds' Claims**

On October 15, 2012, for the very first time, the Trustee asserted in a letter to the Joint

Liquidators' counsel that the Kingate Funds' claims against the Bermuda Defendants were

barred by the automatic stay under section 362 of the Bankruptcy Code.  Although the Trustee

had been aware of the Kingate Funds' claims for more than three years, the letter demanded a

response by 4:00 p.m. the following day.  (Loigman Dec. ¶ 11.)

The Kingate Funds provided a detailed response to the Trustee later that week.  (Loigman

Dec. ¶ 11.)  The response made it clear that the Kingate Funds' claims against their own

investment manager, seeking to recover fees that they (and no one else) paid to their manager,

are properly asserted by the Kingate Funds, and cannot belong to the BLMIS estate.  The Trustee

never replied to the letter or sought any further discussion of the issue.  Rather, the following

Monday evening, on October 22, 2012, the Trustee filed this adversary proceeding.[4]

---

[4]   On January 24, 2014, counsel for the Kingate Funds asked that the Trustee advise, by February
1, 2014, whether the Trustee intended to amend his complaint in this action.  The Trustee did not respond
to that inquiry by the requested date.

**ARGUMENT**

A.        **The Automatic Stay Imposed by Section 362(a) Does Not Apply**[5]

Nearly two years after learning of claims that are now pending in the Bermuda Action, the Trustee suddenly asserted that the automatic stay imposed by 11 U.S.C. § 362(a) ("Section 362(a)") bars the Kingate Funds from proceeding with the claims they have asserted to redress harms that only they suffered.[6]  The Bermuda Action involves neither property of the estate nor claims asserted against the debtor and consequently, because the automatic stay does not apply under the plain language of Section 362(a), the Trustee's belated attempt to "enforce" the automatic stay must be rejected.

---

[5]   In addition to claiming that the automatic stay applies, the Trustee also alleges that the Bermuda Action is enjoined by stay orders issued by the United States District Court for the Southern District of New York on December 15, 2008, December 18, 2008, and February 9, 2009, Case No. 08-10791 (collectively the "Stay Orders").  For the reasons stated herein, the Trustee's assertion that the Bermuda Action "violates" or is otherwise enjoined by the Stay Orders must also be rejected.

[6]   Section 362(a) provides in pertinent part that:  "[e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of— (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . ."  11 U.S.C. § 362(a)(1)-(6).

1.      There is No Basis for Applying the Automatic Stay Under Section
362(a)(1)[7]

In an attempt to squeeze the Bermuda Action within the ambit of the automatic stay, the

Trustee insists that the Kingate Funds' claims against their own manager, seeking return of what

they—and only they—paid to their manager, are actually claims seeking to recover fraudulent

transfers or claims against the debtor.  This contention is baseless and must be rejected.

The Trustee cites no authority for his now-rejected argument that claims seeking to

recover for a particularized injury, like the Kingate Funds' breach of duty and negligent

management claims, are actually fraudulent transfer claims.  *See Picard v. Fairfield Greenwich

Ltd.*, 490 B.R. 59, 67 n.5 (S.D.N.Y. 2013) (rejecting the Trustee's attempt to stretch the stay's

reach to independent claims against non-debtors and stating that "while the Trustee may have a

fraudulent conveyance action pending . . . that [ ] does not transform the nature of the claims at

issue . . . and subsume and extinguish the otherwise independent legal claims of the [ ]

Plaintiffs").  Instead, intent on evading the conclusion reached by the *Fairfield* court, the Trustee

cites cases that either involved claims asserted against a trustee or that stand for nothing more

than the proposition that a claimant cannot seek to recover a fraudulent transfer.  *See In re A&P

Indus., Inc.*, 117 B.R. 789, 794 (Bankr. S.D.N.Y. 1990) (involving claims asserted against the

debtors' directors and officers and the crisis management firm retained to manage the debtor that

"[e]ssentially . . . center[ed] upon the allegation that the

[ ] [t]ransaction constituted a fraudulent transfer of the Debtor's property"); *see also In re*

---

[7]    To the extent that the Trustee argues that the Kingate Funds' claims involve property of the
estate because the Funds may recover some monies that the Trustee alleges were transferred to the
Bermuda Defendants as fraudulent conveyances, this argument must be rejected.  11 U.S.C. § 541(a)
("Section 541(a)") establishes that, as a matter of law, funds "do not become 'property of the estate'
unless and until they are recovered through a successful avoidance action . . . ."  *See Picard v. Merkin (In
re Bernard L. Madoff Inv. Securities, LLC)*, 440 B.R. 243, 271 (Bankr. S.D.N.Y. 2010); *see also FDIC v.
Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992).

*Colonial Realty*, 980 F.2d at 131-32 (concluding that the automatic stay precluded the FDIC from recovering fraudulent transfers from defendants); *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 850, 854 (Bankr. S.D.N.Y. 1994) (refusing to permit creditors to pursue claims common to all creditors against actors closely tied *to* the debtor); *see also In re Saunders*, 101 B.R. 303, 306 (Bankr. N.D. Fla. 1989) (finding that a creditor's claims against "entities or individuals to whom the debtor had allegedly transferred certain assets for the purpose of hindering, delaying, or defrauding creditors" were subject to the automatic stay); *see Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 113-115 (Bankr. S.D.N.Y. 2011) (finding the stay barred claims asserted *against the Trustee*).  None of these cases even suggests—let alone supports a finding—that the claims asserted in the Bermuda Action are actually claims to avoid and recover fraudulent transfers.

Similarly, none of the Trustee's cases concerning other torts or claims supports his contention that the Kingate Funds' claims are somehow fraudulent transfer claims or otherwise claims against the Trustee or BLMIS.  *See, e.g.*, *Picard v. Stahl*, 443 B.R. 295, 312-14 (Bankr. S.D.N.Y. 2011) (holding that plaintiffs "assert[ed] violations of duties owed derivatively to all customers and creditors . . . , the breach of which resulted in losses to all Madoff victims" and determining that certain of the plaintiffs' claims for "loss of deferred compensation and back pay" were claims that must be asserted against the debtor), *aff'd*, *Lautenberg Found. v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 512 Fed. App'x 18 (2d Cir. 2013); *see also Fox*, 429 B.R. 430, 431-32 (Bankr. S.D.N.Y. 2010), *aff'd*, *Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 2014 WL 103988 (2d Cir. Jan. 13, 2014) (affirming bankruptcy court's determination that claims belonged to the debtor because they were asserted to redress a harm common to all BLMIS customers); *see also Crysen/Montenay Energy Co. v. Esselen Assocs.,*

12

*Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101-1103 (2d Cir. 1990) (concluding

that tort claim did not belong to plaintiff, but recognizing that, if the plaintiff had a direct

interest, the claim would not belong to debtor alone and automatic stay would not apply); *see*

*also Keene*, 164 B.R. at 854 (holding that the automatic stay barred individual assertion of claims

alleging "a general, indirect injury to the creditor" that would increase assets available to satisfy

all creditor claims).

The Trustee's cases here stand only for the proposition that the automatic stay applies if a

party asserts (1) a claim that is a fraudulent transfer or its equivalent or (2) a claim against the

debtor itself.  But, not one of the cases cited by the Trustee suggests that a breach of contract or

breach of duty of care action asserted to redress a direct harm to a party—i.e., the type of claims

asserted by the Kingate Funds in the Bermuda Action—is such a fraudulent transfer action or

claim against the estate.  Nor could the cases possibly so hold.  Courts routinely permit parties

like the Kingate Funds, including in Madoff-related cases, to assert claims against third-parties

where those claims seek a remedy for a distinct injury visited upon the plaintiff.  *See Fairfield*,

490 B.R. at 68 (holding that the "stay clearly cannot be extended to the non-debtor," where

plaintiffs asserted claims that were "in no way contingent on the Fairfield Defendants' possible

liability to the BLMIS estate") (internal quotations omitted); *see also Picard v. Schneiderman*,

491 B.R. 27, 36 (S.D.N.Y. 2013) ("Because the NYAG's and Receiver's actions are independent

claims against a non-debtor, the Trustee cannot seek application of the automatic stay under

Section 362(a)(1).").  None of the Trustee's cases compels a different result here—to the

contrary, at least one of the cases upon which the Trustee so heavily relies embraces the rule

followed in *Fairfield* and *Schneiderman*.  *Marshall*, 2014 WL 103988 at *4-6 (recognizing that

"'when creditors . . . have a claim for injury that is particularized as to them, they are exclusively

entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so,'" but, because claims at issue were generalized, holding that the claims did belong to the estate). The Trustee's attempt to impose the automatic stay pursuant to Section 362(a)(1) must be rejected.

2.    <u>There is No Basis for Applying the Automatic Stay Under Section 362(a)(3)</u>

(a)    *The Estate Does Not Have a Property Interest in the Kingate Funds' Claims*

The Trustee's next claim that the automatic stay imposed by Section 362(a)(3) applies is also erroneous because the claims asserted in the Bermuda Action are not "property of the estate."  In the Second Circuit, a cause of action is "property of the estate" where "[it] is a general one, with no particularized injury arising from it . . . that [ ] . . . could be brought by any creditor of the debtor . . . ."  *Stahl*, 443 B.R. at 311-312 (noting that, in such circumstances, "the trustee is the proper person to assert the claim") (citing *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)); *see Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995).  "'[I]f the cause of action does not explicitly or implicitly allege harm *to the debtor*, then the cause of action could not have been asserted by the debtor . . . and thus is not property of the estate."  *Stahl*, 443 B.R. at 312 (emphasis added); *see also Fox*, 429 B.R. at 431 (recognizing that "'if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate.'").  In short, where, as here, a claim seeks to redress a "particularized injury," it is not property of the estate.

Courts determining which party can assert a claim seek first to determine which party's rights are at issue.  "Whether [ ] rights belong to the debtor or the individual creditors is a question of state law."  *Hirsch*, 72 F.3d at 1093.  In New York, and generally, a stranger to a relationship—like the Trustee, here—cannot assert a claim for unjust enrichment, breach of

14

contract, and breach of the duties of care against the Kingate Funds' managers. *See, e.g.*, *Baker v. Andover Assocs. Mgmt. Corp.*, 30 Misc.3d 1218(A), 22, 924 N.Y.S.2d 307 (Sup. Ct. Westchester Cnty. 2009) ("It is uncontested that the breach of fiduciary duty, negligent misrepresentation and gross negligence claims are contingent upon there being a relationship of privity (or a near privity relationship). Because the Verified Complaint is bereft of any such allegations, these claims cannot stand") (citation omitted); *see also SSR II, LLC v. John Hancock Life Ins. Co. (U.S.A.)*, 37 Misc. 3d 1204(A), at *3 (Sup. Ct. N.Y. Cnty. 2012) (holding that "claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment fail because the underlying duties do not relate directly or derivatively to [plaintiff]. . . . [Plaintiff] lacks standing. They were owed no duty relating to their three causes of action . . . .").

The Kingate Funds' claims in the Bermuda Action seek redress for particularized injuries arising from the Funds' relationship with Kingate Management and parties related to Kingate Management. No other BLMIS customer had a relationship with Kingate Management (or the other Bermuda Defendants) and, as a result, under New York law, no other BLMIS customer could bring the claims asserted in the Bermuda Action. *See SSR II*, 37 Misc. 3d 1204(A) at *3; *Baker*, 30 Misc.3d 1218(A) at 22. In other words, the claims plead in the Bermuda Action are not common to all BLMIS customers and are, consequently, not claims that the Trustee would have standing to assert. This fact is a critical one. As explained below, the reason that the courts concluded in *Stahl* and *Marshall* that claims belonged to the estate was because they were common to all creditors. Here, in contrast, there is no basis to wrestle away from the Kingate Funds claims that belong only to them.

15

It is no surprise, given that well established principles foreclose the Trustee from

asserting the Kingate Funds' direct claims, that facts similar to the ones at hand have compelled

other courts to hold that such causes of action do not belong to a debtor's estate.  For example, in

*Schneiderman*, the district court concluded that, because Schneiderman asserted "independent

claims based on separate facts, theories, and duties than the Trustee's fraudulent transfer claims

against Merkin," Schneiderman's claims did not belong to the estate.  491 B.R. at 36.  Likewise,

in *Fairfield*, the district court held that the stay could not apply where it found that the plaintiffs

had brought "an action wholly independent of the BLMIS estate that alleges, among other things,

violations by the Fairfield Defendants of . . . alleged duties flowing directly from the Fairfield

Defendants to the Anwar plaintiffs."  490 B.R. at 67-68.  Similarly, in *In re Reliance Acceptance

Grp., Inc.*, 235 B.R. 548 (D. Del. 1999), the court stated that "while the lawsuits filed by the

Shareholders and by the Debtors may be against the same parties and may be based on the same

or similar facts, they state different claims for relief.  They seek relief for alleged breaches of

different duties.  They allege different injuries.  And they seek to recover different damages."

235 B.R. at 555.  The court concluded that, because only the plaintiffs could have asserted their

claims, the claims did not belong to the estate.  *Id*. at 555-56; *see also Highland Capital Mgmt.

LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum Inc.)*, 522 F.3d 575, 585-86 (5th

Cir. 2008) (rejecting the bankruptcy court's and district court's conclusion that various tort

claims asserted against secured bondholders and a consulting firm belonged to the debtor's

estate, and finding that—like here—the claims were asserted to redress a harm specific to the

bondholders); *In re Phar-Mor, Inc. Secs. Litig.*, 164 B.R. 903, 905 (W.D. Pa. 1994) (concluding

that the bankruptcy court had correctly refused to find that the automatic stay applied to "claims

of the [ ] Plaintiffs seek[ing] recovery of money that they invested . . . allegedly in reliance on

the unqualified audit opinions of a non-bankrupt third party [ ].  The claims and the alleged harm are distinct and personal to each [ ] Plaintiff and are not derivative of the Debtor's claims against [defendant] . . . .");  *cf. Marshall*, 2014 WL 103988 at *5-9 (distinguishing derivative causes of action from direct causes of action and holding that plaintiffs had brought derivative claims because they had "not alleged that the Picower Defendants took any [ ] 'particularized' actions aimed at BLMIS customers.").  The well established principles of law reflected in these cases (and recognized by the cases the Trustee relies upon) mandate that the claims asserted in the Bermuda Action plainly are not property of the BLMIS estate.  Indeed, as in *Schneiderman*, the individual nature of the claims is clear because only the Kingate Funds—not other BLMIS customers—have claims against the Bermuda Defendants.

The Trustee's cases do not militate in favor of a result contrary to *Fairfield* and *Schneiderman*.  In *Stahl*, for example, the court found that the plaintiffs' claims were subject to the automatic stay because the plaintiffs "[we]re not seeking to redress a particularized injury or alleging harm caused directly to them by the Madoff Defendants.  Rather, the Third Party Actions assert violations of duties owed derivatively to all customers and creditors by virtue of the Madoff Defendants' positions generally at BLMIS, the breach of which resulted in losses to all Madoff victims."  *See Stahl*, 443 B.R. at 312.  Likewise, in *Fox*, the named plaintiffs, who were also BLMIS customers, asserted claims "on behalf of a similarly situated class of BLMIS customers" against Jeffry Picower (and related entities), purported participants in the BLMIS fraud.  *Fox*, 429 B.R. at 429.  This Court found that the plaintiffs "[i]n substance . . . [sought] to redress the depletion of the BLMIS customer property fund, a harm that derivatively injures all customer claimants in the BLMIS liquidation," and that "[n]owhere do the [ ] Plaintiffs contend that the [ ] Defendants owed a separate duty, or caused a separate harm to them."  *Id*. at 431-32.

Finally, *Maxam* involved a suit *against the Trustee* in which the fund sought "a declaration that Maxam Limited is not liable to the Trustee . . . ." *Maxam*, 460 B.R. at 113, 114-115.

The Trustee's cases have no bearing on the facts here. The Kingate Funds—and the Kingate Funds alone—had a direct relationship with, and had duties owing from, the Bermuda Defendants. The Kingate Funds—and the Kingate Funds alone—were harmed by the conduct alleged in the Bermuda Action. And thus, under binding Second Circuit law and the very cases the Trustee cites, the Kingate Funds' claims in the Bermuda Action belong to the Kingate Funds, and *not* to the Trustee.

> (b)  *The Claims Are Not Subject to the Stay Simply Because They Are Asserted Against a Third-Party Also Sued by the Estate*

The Trustee contends that the automatic stay must apply because, if the Kingate Funds successfully prosecute the Bermuda Action, that will reduce the monies available to satisfy the Trustee's claims against the same third-parties. This position is patently absurd. The fact that a party may recover from the same "pocket" as the bankruptcy estate is not sufficient, on its own, to bar a party from pursuing its rights through assertion of a cause of action. *See Schneiderman*, 491 B.R. at 37-38 (rejecting this argument and holding that the Trustee's "conclusory and speculative assertions that . . . if the settlement goes forward, the Merkin defendants would be unable to pay any fraudulent transfer judgment" did not justify extending the stay); *see also Fairfield*, 490 B.R. at 68-69 (rejecting "the Trustee's legal theory [that] the mere presence of a limited pool of assets possessed by a target of a bankruptcy estate's adversary proceeding, in and of itself, can convert wholly unrelated and independent claims by non-creditors filed against that non-debtor target into 'acts to collect or recover a claim against the debtor' merely because they 'prejudice the Trustee's ability to pursue his claims,' and recognizing that "[s]uch an expansive interpretation of § 362 would obliterate the requirement that stayed actions bear some relation to

18

the 'debtor' and would enable the Trustee to subjugate independent legal claims of parties unrelated to the bankruptcy estate merely because both parties seek recovery from the same limited pool of fund"); *Phar-Mor*, 164 B.R. at 905-906 (noting the absence of any authority that elevates the claims of a debtor over the claims of equity owners, even when there is a potential shortfall in assets available for recovery); *see also In re Granite Partners, L.P.*, 194 B.R. 318, 337-38 (Bankr. S.D.N.Y. 1996) (rejecting the argument that dissipation of insurance proceeds alone implicated the automatic stay and stating that "[w]e are not convinced that an action by a third party to recover a judgment against another third party, whose liability may be covered under an insurance policy that also grants the debtor separate rights, implicates the automatic stay"). Indeed, where a creditor, like the Kingate Funds, owns a claim, courts routinely allow plaintiffs, including in BLMIS-related cases, to litigate (or settle) claims against defendants also being sued by a trustee or debtor.[8] *See, e.g.*, *Schneiderman*, 491 B.R. at 36-39; *Fairfield*, 490 B.R. at 70, 72; *Stahl*, 443 B.R. at 311-312 (discussing which entity "owns" claims); *see also Hirsch*, 72 F.3d at 1093 (same). It would be impossible to list all of the cases in which creditors or shareholders have pursued claims against the same defendants targeted by the estates in which they have claims. Were there any merit to the Trustee's "depletion of assets" theory, all such cases would be derailed from the outset.

## B.    The Trustee Cannot Fulfill the Requirements for Imposition of an Injunction Under Section 105

Despite two years having elapsed between the filing of the Bermuda Action and the Trustee's application, the Trustee insisted in his application that the Bermuda Action "poses a

---

[8]    *See, e.g.*, *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244 (S.D.N.Y. 2011); *In re Banco Santander Secs.-Optimal Litig.*, 732 F. Supp. 2d 1305 (S.D. Fla. 2010) (dismissing certain claims on grounds unrelated to the automatic stay); *In re Herald, Primeo, and Thema Secs. Litig.*, No. 09 Civ. 289 (RMB), 2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011); *Wailea Partners, L.P. v. HSBC Bank, N.A.*, Case No. 3:11-cv-03544, Dkt. No. 42 (N.D. Cal. 2011) (dismissed on grounds other than the automatic stay or Section 105(a)).

clear threat to the jurisdiction of this Court," and thus should be enjoined pursuant to 11 U.S.C. §

105(a) ("Section 105(a)").  Trustee Mem. at 21.  The assertion that the Kingate Funds' long-

pending (and court-sanctioned) claims against *their* managers has any effect on this Court's

jurisdiction—let alone that the Bermuda Action "threatens" this Court's jurisdiction—is absurd.

### 1.    The Section 105(a) Factors Are Not Satisfied Here

Under Section 105(a),[9] a bankruptcy court may enjoin suits if:  (i) a third-party suit would

impair the court's jurisdiction with respect to a case before it, or (ii) the third-party suits threaten

to thwart or frustrate the debtor's reorganization efforts and the stay is necessary to preserve or

protect the debtor's estate.  *See, e.g.*, *Fox v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*

*("Fox II")*, 848 F.Supp.2d 469, 486 (S.D.N.Y. 2012); *see Fox*, 429 B.R. at 436; *see Stahl*, 443

B.R. at 318; *see  Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998).  Neither requirement is

satisfied here.

First, the Bermuda Action has no impact whatsoever on this Court's jurisdiction.  To be

clear, it is worth repeating that, in the Bermuda Action, the two Kingate Funds are suing the

parties that were responsible for managing the Funds.  The action does not, in any way, prevent

the Trustee from pursuing his separate and distinct claims against the Bermuda Defendants, and

does not, in any way, prevent this Court from ordering any appropriate relief in connection with

the Trustee's claims.[10]

_____

[9]    Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is
necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for
the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*,
taking any action or making any determination necessary or appropriate to enforce or implement court
orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).

[10]    As noted above, the Trustee's claims are not strong, given that the substantial majority of the
fees paid to Kingate Management did not come from BLMIS at all; rather, those fees were paid from
amounts held by the Kingate Funds that had never been invested in BLMIS.  But this Court need not
resolve the merits of the Trustee's claims against the Bermuda Defendants in connection with this
application.

Unable to demonstrate any effect on this Court's jurisdiction, the Trustee cites a series of inapposite cases involving (1) assertion of claims against a trustee, and (2) assertion of claims common to *all* creditors that, as a result, belong to the estate.  Cases in the latter category typically target defendants at the heart of the debtor's fraud that participated in conduct affecting all of the creditors; that is, defendants this Court has described as "precisely the non-debtors against whom third-party actions 'will have an immediate adverse economic consequence for the debtor's estate.'"  *Stahl*, 443 B.R. at 316-18 (quotations omitted); *see also Maxam*, 460 B.R. at 113-115 (describing nature of claims in context of stay analysis); *Fox*, 429 B.R. at 429, 431-32, 435.

The Trustee's heavy reliance on the Seventh Circuit's decision in *Fisher*, for example, demonstrates why the Kingate Funds' claims in Bermuda have no impact on this Court's jurisdiction over the Trustee's action.  In *Fisher*, a group of 244 investors in a bankrupt commodities business—out of 450 "similarly situated investors"—sued the accomplices of the principal fraudster, who had disappeared when the fraud was disclosed.  The court explained that the hundreds of plaintiffs stood "in exactly the same position as the rest of the aggrieved investors," and that they were seeking redress for "identical" harms suffered by all investors in the company.  155 F.3d at 881.  As a result, their claims were "so closely related" to the estate that they had to "wait their turn behind the trustee, who has the responsibility to recover assets for the estate on behalf of the creditors as a whole."  *Id.*[11]  Like the plaintiffs in *Schneiderman* and *Fairfield*, the Kingate Funds have asserted claims against their own managers for money that

---

[11]    In evaluating the impact on the estate, the *Schneiderman* court differentiated between claims like those in *Fox* (and *Fisher*) and claims similar to those held by the Kingate Funds.  *Schneiderman*, 491 B.R. at 40 ("Unlike in *Fox*, the independent claims at issue in the settled actions are not so 'closely related' to those belonging to the estate that the settlement risks 'converting the bankruptcy proceeding into a race to the courthouse that would derail the bankruptcy proceedings.") (citation omitted).

the Kingate Funds, *and no other investor*, paid to those managers.  Their claims, in contrast to

those of the *Fisher* and *Fox* plaintiffs, are not "related" to the estate at all, let alone "so closely

related" as to impact this Court's jurisdiction with respect to the estate's claims.

Simply put, none of the cases cited by the Trustee has any relevance to the Kingate

Funds' targeted and long-standing claims.  In contrast to both *Stahl* and *Fisher*, the claims in the

Bermuda Action are not asserted against parties closely related to the debtor, which claims

would be common to virtually all of the debtor's creditors.  Unlike *Maxam*, the claims in the

Bermuda Action are not asserted against the Trustee.  And unlike *Fox*, *Fisher*, and *Stahl*, the

Kingate Funds do not stand in the same position as other BLMIS customers with respect to the

Bermuda Defendants.[12]  The Trustee cannot cite a single similar case in which a bankruptcy

court has opted to exercise its power to issue an injunction under Section 105(a).

---

[12]    The remainder of the cases cited by the Trustee involve claims against parties closely situated to the debtors, *e.g.*, insurers, or, unlike the Bermuda Action, involve issues that are close to, if not at, the center of the bankruptcy process, *e.g.*, sale of the debtor's assets.  *See Nevada Power Co. v. Calpine Corp. (In re Calpine)*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2007) (enjoining plaintiff's suits against a non-debtor co-plaintiff that had served as a surety on certain agreements with the debtor because "the liability of Fireman's [wa]s contingent on Calpine's liability to [plaintiff].  The claims against Fireman's are based on the identical facts as [plaintiff's] claims against Calpine and are inextricably tied to those claims"); *Garrity v. Leffler (In re Neuman)*, 71 B.R. 567, 572-74 (S.D.N.Y. 1987) (enjoining debtor's action to determine whether license to operate the nursing home was property of the estate and stating that "forays to other forums to determine what is property of the estate for purposes of bankruptcy law are not only time-consuming, but disrupt the heart of the duties that the court is designed to perform"); *see also In re Wingspread Corp.*, 92 B.R. 87, 91-92 (Bankr. S.D.N.Y. 1988) (enjoining action where plaintiff sought a determination of ownership of certain claims sold as part of debtor's bankruptcy process because if the plaintiff succeeded in the action, "the integrity of the bankruptcy sales process would be seriously undermined"); *Kagan v. Saint Vincents Catholic Med. Ctrs. of N.Y. (In re Saint Vincents Catholic Med. Ctrs. of N.Y.)*, 449 B.R. 209, 217-18 (S.D.N.Y. 2011) (finding that plaintiff's causes of action constituted "property of the estate" and enjoining the plaintiff's action because "[a]llowing . . . [it] to continue [ ] would have the effect of exerting control over property of the estate . . . ." (citation and internal quotation marks omitted)); *Lyondell Chem. Co. v. Centerpoint Energy Gas Servs., Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 577-82, 584, 590-94 (Bankr. S.D.N.Y. 2009) (enjoining plaintiffs from asserting claims on guaranties provided by a non-debtor where such claims could potentially lead to the non-debtor being placed in an involuntary bankruptcy, stating that "each of the entities owned directly and indirectly by [non-debtor guarantor] . . . is an important part of the *integrated operations* of the Debtor and nondebtors," and finding that the plaintiffs were unlikely to recover much even if the court did not enjoin the action (emphasis in original)).

Second, there is no basis to assert that the Bermuda Action "threaten[s] to thwart or frustrate the debtor's reorganization efforts and the stay is necessary to preserve or protect the debtor's estate." *Fox II*, 848 F.Supp.2d at 486. Any such claim fails for multiple reasons. First, BLMIS is not reorganizing; it is liquidating. Thus, there are no "reorganization efforts" capable of disruption. Second, even if there were a reorganization at issue, the Bermuda Action does not involve property of the BLMIS estate. Thus cases like *In re Chiles Power Supply Co., Inc.*, 264 B.R. 533, 538 (Bankr. W.D. Mo. 2001), and *In re Probulk*, 407 B.R. 56, 59-60 (Bankr. S.D.N.Y. 2009), both of which directly and expressly implicated property of the estate, have no relevance. And because the Bermuda Action does not involve property of the BLMIS estate, a stay cannot be justified in order to "preserve or protect" the estate.

Moreover, unlike cases such as *Stahl*, in which the third-party claimants' actions burdened the Trustee in the administration of the BLMIS estate, the Kingate Funds' Bermuda Action has had just the opposite effect. At the request of the Trustee, for example, the Kingate Funds consulted with the Trustee prior to conducting interviews of certain of the Bermuda Defendants to obtain specific information requested by the Trustee. Indeed, for a portion of 2012, the Kingate Funds and the Trustee operated pursuant to a common interest agreement with respect to certain proceedings in Bermuda involving the Bermuda Defendants. And the Trustee and the Joint Liquidators worked together in Bermuda to challenge the permanent appointment of Kingate Management's provisional liquidators on the grounds of their manifest conflicts. Far from interfering with the Trustee's efforts, the Kingate Funds' continued prosecution of its claims in the Bermuda Action have served to assist the Trustee with his claims.[13]

---

[13]    Similarly, the Trustee's assertions that the existence of the Bermuda Action somehow impedes his ability to "effectively prosecute his action" and raises the "possibility of inconsistent decisions," Trustee Mem. at 24-25, are without merit. The Trustee has not explained how continued prosecution of the Bermuda Action—which has been pending longer than the Trustee's claims against the

2.      The Trustee's "Race to the Courthouse" Argument Is Without Merit

The Trustee erroneously contends that a Section 105(a) injunction here would prevent a "race to the courthouse."  Trustee Mem. at 24-25.

As an initial matter, multiple courts have rejected the "race to the courthouse" rationale as a basis for awarding injunctions under Section 105(a).  In *Reliance Acceptance*, the court rejected the very same argument, finding that the risk that a common defendant might have insufficient funds did not justify elevating the debtor's claims over those of a creditor with its own direct claims.  235 B.R. at 561-62.  The court in *Phar-Mor* similarly declined to enjoin independent claims pursuant to Section 105(a), explaining that "the Debtor has no greater rights to assert its claims against [defendant] than the [ ] Plaintiffs precisely because the [ ] Plaintiffs are not attempting to assert claims belonging to the Debtor."  164 B.R. at 907.  The court continued, "the Bankruptcy Code was designed to protect the Debtor and to prioritize claims by creditors and equity owners against the Debtor's estate.  It was not designed to destroy independent claims that the creditors and equity owners may have against non-bankrupt entities, or place a higher priority on the Debtor's claims against such entities."  *Id.* at 908; *see also Boles v. Turner (In re Enivid, Inc.)*, 364 B.R. 139, 157 (Bankr. D. Mass. 2007) (holding that "[w]hile the amount of insurance proceeds available to the Plan Trustees will be reduced, that is not so extraordinary a circumstance as to warrant . . . [issuing] an injunction under § 105(a) . . . .");  *see*

Bermuda Defendants—has any negative effect on the Trustee's pursuit of his claims.  And, unlike the case of *City of New York v Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991), in which the court found that enjoining the City of New York's action under the "first filed" rule served interests of "judicial economy" because the two cases "involve[d] identical parties and present the same issue," the Trustee's avoidance action and the Kingate Funds' direct claims involve *neither* the same parties nor the same issues.  Because the two actions concern different subject matter, the Bermuda Action—which, under the "first filed" rule noted in *Exxon*, should be permitted to proceed in any event—is not duplicative of the Trustee's action.  *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("The [duplicative litigation] doctrine is [ ] meant to protect parties from 'the vexation of concurrent litigation over the same subject matter.'") (citation omitted).

*also Granite Partners*, 194 B.R. at 337-338 (refusing to enjoin claims despite risk that the claims would dissipate insurance proceeds otherwise available to satisfy estate claims).

As these courts have recognized, where individual creditors have standing to assert their own claims, a bankruptcy trustee has no greater right to pursue claims against third-parties than individual creditors do. Applied here, there is no reason to prioritize the Trustee's avoidance claims against the Bermuda Defendants over the Kingate Funds' claims for the return of fees that they (and *only* they) paid to their managers. Moreover, as noted by the court in *Phar-Mor*, the Bankruptcy Code was not "designed to destroy" creditors' "independent claims." It must be recognized that, if an injunction were to issue here, there is a serious risk that the Kingate Funds' claims against the Bermuda Defendants—and thus the only way for them to recover the massive fees that they paid over many years—might be lost *in their entirety*. In the event that the Kingate Funds are enjoined from pursuing claims in Bermuda, the Bermuda Defendants will almost certainly move to strike the action, and there is a real risk that such motions would be successful if there is an extended period without prosecution of those claims. (Chudleigh Aff. ¶¶ 12-13.)

Finally, as a factual matter, there is no reason to believe that failure to award an injunction here actually encourages any "race to the courthouse." The Kingate Funds initiated their claims against the Bermuda Defendants more than three years ago. Far from racing to the courthouse to assert those claims, the Joint Liquidators and their counsel discussed the claims with the Trustee for more than a year before the Bermuda Action was filed. And the Trustee did not add the Bermuda Defendants to his action for many months after that. Plainly, there was no race to the courthouse, and wiping out claims that were filed more than three years ago will serve only to promote late-filed, strategically motivated objections.

3.  <u>The Second Circuit's *China Trade* Decision Prohibits the Bankruptcy
Court from Enjoining the Claims in the Bermuda Action</u>

The injunctive relief the Trustee seeks, if granted, would violate the doctrine articulated

by the Second Circuit in *China Trade & Development Corp. v. M.V. Choong Yong*, 837 F.2d 33

(2d Cir. 1987). *China Trade* establishes that "an anti-foreign-suit injunction should be 'used

sparingly', . . . and should be granted 'only with care and great restraint.'" *Id.* at 36. As the

Second Circuit has explained, "due regard for principles of international comity and reciprocity

require a delicate touch in the issuance of anti-foreign suit injunctions," and "the pendency of a

suit involving the same parties and same issues does not alone form the basis for such an

injunction." *Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 65 (2d Cir. 2007).

Under *China Trade*, the threshold requirements to justify enjoining a foreign proceeding

are "(1) the parties must be the same in both matters, and (2) resolution of the case before the

enjoining court must be dispositive of the action to be enjoined." *China Trade*, 837 F.2d at 35.

> When these threshold requirements are met, five factors are suggested in
> determining whether the foregoing action should be enjoined: (1) frustration of a
> policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a
> threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the
> proceedings in the other forum prejudice other equitable considerations; or (5)
> adjudication of the same issues in separate actions would result in delay,
> inconvenience, expense, inconsistency, or a race to judgment.

> *Id*.

As an initial matter, it is plain that *China Trade* applies here. The Trustee attempts to

avoid the circuit precedent by arguing that the automatic stay needs no "parallel proceeding"

(i.e., foreign proceeding) to apply, and if applicable to Section 105(a) claims, *China Trade* would

"frequently" prevent bankruptcy courts from being able "to enforce the automatic stay and

related Stay Orders . . . ." Trustee Mem. at 33. The plain language of the *China Trade* test does

not, however, contemplate the carve-outs to its applicability that the Trustee attempts to

manufacture. Nor is the frequency of *China Trade*'s application relevant. Rather, as the Second

Circuit made clear, it is inappropriate for U.S. courts to interfere with the orderly conduct of

foreign proceedings without a complete evaluation of principles of comity. That proper

evaluation should not be bypassed simply because a case involves a bankruptcy or an asserted

application of Section 105(a).

As the Second and Third Circuits have held, *China Trade* does apply in the bankruptcy

context. *See Jamaica Shipping Co. Ltd. v. Orient Shipping Rotterdam B.V. (In re Millennium*

*Seacarriers, Inc.)*, 458 F.3d 92, 97-98 (2d Cir. 2006) (rejecting bankruptcy court's conclusion

that *China Trade* did not apply to applications for preliminary injunction and remanding for

consideration of *China Trade*); *see also Stonington Capital Appreciation 1994 Fund, L.P. v.*

*Lernout & Hauspie Speech Products N.V. (In re Stonington Prtnrs., Inc.)*, 310 F.3d 118, 128-29

(3d Cir. 2002) (rejecting the argument that there is a "bankruptcy" exception to the anti-suit

injunction inquiry and remanding to the bankruptcy court "to apply the approach to anti-suit

injunctions . . . developed . . . and to consider comity concerns . . . ."). Here, in particular, (a)

where the foreign action was authorized by the BVI and Bermuda Courts and filed more than

three years ago, (b) where it was initiated by the court-appointed liquidators of investment funds

subject to formal liquidation proceedings, (c) where it asserts claims that were known to, and

extensively discussed with, the Trustee *prior* to filing, and (d) where the foreign action is

pending in a jurisdiction—one in which the plaintiffs are subject to a court supervised

liquidation—that has subscribed to internationally recognized trans-national insolvency

guidelines, considerations of comity and reciprocity are paramount.[14]

---

[14]    The Trustee further attempts to evade *China Trade* by pointing to inapposite decisions
reviewing the issuance of Section 105(a) injunctions that either did not analyze *China Trade* or involved
facts that are absent here, i.e., the filing in a foreign court of an action *against the Trustee* that involved
the same parties and issues. *See* Trustee Mem. at 34 (citing *In re Lyondell Chem. Co.*, 402 B.R. 571 [sic]

Turning to the substance of the *China Trade* test, it is clear that the threshold requirements for issuance of an injunction are not met. First, the parties to the Bermuda Action are not the same as those in the Trustee's Action. The Bermuda Action is between the Kingate Funds, their managers, and the entities that owned and controlled their managers. The Trustee is not a party to that action. Second, resolution of the Trustee's action will not dispose of the claims at issue in the Bermuda Action. Whether the Kingate Funds have a right to recover from their managers is not in any way dependent on whether the Trustee has viable claims against *any* of the defendants in his action. The two actions present entirely distinct claims. Under binding law, accordingly, even if an injunction were otherwise appropriate under Section 105(a)—which, for the reasons noted, it is not—principles of comity and reciprocity reflected in *China Trade* foreclose enjoining the Bermuda Action.[15]

## C.    The Trustee Cannot Challenge the Bermuda Action After More Than a Three-Year Delay

In all events, the Trustee's belated attempt to invoke the stay and enjoin the Bermuda Action is barred by the doctrine of laches. Application of laches is appropriate where a defendant can establish three elements: "(1) that he lacked knowledge that the claim might be asserted against him; (2) that the plaintiff delayed asserting the claim despite the opportunity to do so; and (3) that he would be prejudiced if the claim were now allowed to go forward." *Gucci*

---

at 590-94 (Bankr. S.D.N.Y. 2009), and *Maxam*, 460 B.R. at 113, 122 (applying *China Trade* because "both suits involve the Trustee and Maxam Limited, and resolution of the Trustee's action in this Court is dispositive of the Cayman Action which seeks a determination of non-liability in the Trustee's action.").

[15]    Even if the two prerequisites for issuing injunctive relief were satisfied, an injunction would still be inappropriate under *China Trade* because the five listed factors disfavor issuance of an injunction. For example, the Bermuda Action is not vexatious in any way, is not (as discussed above) a threat to this Court's jurisdiction, and does not create any delay in the adjudication of the Trustee's action. Because the threshold requirements are not met, however, there is no need to address these factors.

*v. Sinatra* (*In re Gucci*), 197 Fed. App'x 58, 60 (2d Cir. 2006) (citing *Rapf v. Suffolk Cnty.*, 755

F.2d 282, 292 (2d Cir. 1985)).  Here, all three elements are easily satisfied.

First, the Kingate Funds have been actively developing and pursuing their claims in the

Bermuda Action for more than three years.  Until the Trustee filed this application, they had no

reason to suspect that the Trustee would attempt to block those claims; indeed, they have openly

discussed the claims with the Trustee and his counsel since the summer of 2009.

Second, the Trustee could have invoked the stay and sought an injunction at any time.

He chose, however, to wait three years, and to seek the stay as a strategic tool to influence

negotiations.

Third, the Kingate Funds would undoubtedly be prejudiced if the proceeding is permitted

to go forward.  As the Trustee well knows, the Joint Liquidators and their counsel have expended

substantial time and resources on the pursuit of their claims in the Bermuda Action.  And any

threat to the continuation of those claims places at risk one of the Kingate Funds' most

substantial assets; i.e., their claims to recover the hundreds of millions of dollars in management

fees that they paid over the course of more than a decade.

Faced with similar facts, courts have applied laches to preclude a debtor or trustee from

raising the automatic stay after a long delay—like the multi-year delay here.  *See, e.g.*,

*Schneiderman*, 491 B.R. at 34-35; *Fairfield*, 490 B.R. at 73-74; *cf. In re Smith Corset Shops,*

*Inc.*, 696 F.2d 971, 977 (1st Cir. 1982) (applying equitable principles to hold that a debtor "could

not remain stealthily silent . . . and then turn around and successfully sue the [creditors] for the

alleged conversion of the goods.  We do not think Congress envisioned any such misuse of

the automatic stay"); *Matthews v. Rosene*, 739 F.2d 249, 251-52 (7th Cir. 1984) (stating that "[a]

33-month delay rarely can be reasonable unless excused" and affirming the lower courts'

decision that laches was proper where the debtor waited thirty-three months before challenging the state court's jurisdiction); *see also Thornton v. First State Bank of Joplin*, 4 F.3d 650, 653 (8th Cir. 1993); *cf. Job v. Calder* (*In re Calder*), 907 F.2d 953, 956-57 (10th Cir. 1990) (applying equitable principles to bar debtor from objecting to a creditor's claim on grounds that the creditor had obtained the judgment leading to its claim after the debtor filed his petition).

In applying laches to bar the Trustee's claims, the *Schneiderman* court, which analyzed facts similar to those at hand, emphasized that (1) the "Trustee sought no judicial action to stay the NYAG's action until the filing of the instant action in August 2012, more than three years later" and (2) "the Trustee could have acted at any of a number of points in the history of these cases to enforce the automatic stay . . .  Instead, . . . the Trustee allowed these cases to proceed for over three years before attempting to enforce the automatic stay.  It is clear, therefore, that the Trustee unreasonably and inexcusably slept on his rights."  *Schneiderman*, 491 B.R. at 33-35 (recognizing also the prejudice to the plaintiffs of imposing the stay after a prolonged period); *see also Fairfield*, 490 B.R. at 74 (applying laches and noting that the "Trustee waited on the sidelines for nearly four years prior to seeking to declare the *Anwar* Action void *ab initio*, watching while the parties expended significant resources litigating the *Anwar* Action . . . .").  As in *Fairfield* and *Schneiderman*, the Trustee stood still for years while the Kingate Funds, with the Trustee's full knowledge and acquiescence, expended resources pursuing their independent claims in the Bermuda Action.  The "Trustee's [s]tay [a]pplication is a textbook example of unreasonable delay [that] [sh]ould be barred as untimely under the equitable doctrine of laches." *Fairfield*, 490 B.R. at 74.  The Kingate Funds, and their many investors, should not be forced to suffer the consequences of the Trustee's decision to engage in a sudden and long-delayed about-face.

## CONCLUSION

For the reasons set forth above, the Joint Liquidators respectfully request that the

Court deny the Trustee's application and grant such other further relief as this Court deems

appropriate.

Dated: February 18, 2014
      New York, New York

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

/s/ Robert S. Loigman
Susheel Kirpalani
Robert S. Loigman

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone No.:  (212) 849-7000

*Counsel to Joint Liquidators of Kingate
Global Fund Ltd. and Kingate Euro Fund Ltd.*