# KINGATE MANAGEMENT LIMITED

- AND -

# KINGATE GLOBAL FUND, LTD.

- AND -

# FIM LIMITED

---
# CONSULTING SERVICES AGREEMENT
---

Attorney Eyes Only

KING_DIL_000691

**CONSULTING SERVICES AGREEMENT** made as of the 1st day of December 1995 by and between:

**Kingate Management Limited** ("Kingate"), a company incorporated under Bermuda law;

**Kingate Global Fund, Ltd.**(the "Fund") a company incorporated under the laws of the Territory of the British Virgin Islands; and

**FIM Limited** ("FIM"), a company incorporated under the laws of England and regulated by the Investment Management Regulatory Organisation Limited ("IMRO") in carrying on investment business relevant to this Agreement.

**WHEREAS**

(A) the Fund invests its assets by selecting a number of funds and investment management firms (the "Investment Advisors") who are appointed to manage the Fund's assets;

(B) the Fund currently has 3 (three) Classes of Common Shares, called respectively "Class A", "Class B" and "DM Class" and may, in the future, create further Classes of Shares;

(C) the Fund has appointed Kingate as Manager of the Class A Shares and as Co-Manager with respect to the Class B Shares and the DM Class Shares under the terms of Management and Co-Management Agreements by and between Kingate and the Fund;

(D) Kingate has engaged FIM to act as a consultant to Kingate with respect to the allocation of the assets of the Fund's Class A Shares among different equity and fixed-income markets, currencies and asset classes, under the terms of a Consulting Services Agreement effective November 1, 1994 for an initial term to expire on December 31, 1995;

(E) Kingate wishes to amend and replace the Consulting Services Agreement effective November 1, 1994 and wishes to engage FIM to act as Consultant with respect to the investment of the assets comprised in each Class of Shares in the Fund currently outstanding or to be created in the future.

**NOW THEREFORE**, in consideration of premises and mutual agreements hereinafter set forth, the parties hereto agree as follows:

*Appointment of the Consultant.* Effective December 1, 1995 and until this Agreement is terminated in accordance with clause 7 hereof, Kingate hereby appoints FIM as Consultant to Kingate to render consulting services with respect to the investments of the assets of each Class of Shares of the Fund currently outstanding or to be created in the future.

2. *Acceptance by the Consultant.* FIM hereby accepts such appointment as Consultant to Kingate as a "non-private customer" for IMRO purposes, and agrees to render such consulting services in accordance with the terms and conditions of this Agreement.

3. *Duties of FIM.* Without limiting the foregoing, FIM shall:

    (a) analyse trends in the world's economies and financial markets (including equity, fixed-income and money markets, currencies and commodities markets) and recommend to

Attorney Eyes Only
KING_DIL_000692

       Kingate an allocation of the Fund's assets in a manner consistent with the Fund's investment objectives and methodology;

(b) research, screen and nominate for selection by Kingate investment advisors that may be appointed by Kingate to manage the Fund's assets in a manner consistent with the Fund's investment objectives and methodology;

(c) advise Kingate concerning all actions which may appear to FIM that the Fund should take to carry into effect the purchase and sale of investments pursuant to clauses 3.(a) and 3.(b) above;

(c) provide relevant information covering the performance of each asset allocation, asset class and investment advisor recommended to Kingate;

(e) monitor on a continuing basis each recommendation and implementation of approved recommendations concerning the allocation of the Fund's assets and the appointment of investment advisors, including identification of additional or alternative asset allocations and investment advisors;

(f) prepare such reports as Kingate may request for inclusion in the annual or other reports of the Fund;

(g) provide such information as Kingate may require on matters related to the investment of the Fund's assets including, inter alia, such information as Kingate may require to calculate the value of each Class of Shares of the Fund;

(h) as requested, attend investment meetings with Kingate, its representatives and consultants;

(i) in general, comply with any reasonable requests made by Kingate.

4. *Other Agreements and Obligations.* It is understood that:

(a) FIM shall not have any power to enter into transactions on behalf of, or in any other way to bind, Kingate or the Fund and nothing herein contained shall be deemed to create or constitute a partnership between FIM, Kingate and the Fund;

(b) FIM may have business arrangements and/or consulting contracts with other persons, firms or organisations and other accounts for which it may act as consultant, investment supervisor, investment manager or otherwise;

(c) FIM may give advice and make recommendations to other clients which may differ from, may be the same as or similar to the advice and recommendations given and made to Kingate provided FIM acts in good faith and follows a consistent policy with respect to each client;

(d) personnel of FIM may be involved in the supervision and management of other investment companies, other investment programs or consulting activities;

(e) FIM may, at its own expense and under its own responsibility, employ or hire other consultants to assist it in the performance of its duties under the term of this Agreement;

Attorney Eyes Only

KING_DIL_000693

(f) Kingate may have consultancy agreements with other consultants while this Agreement is in force;

(g) Kingate shall at all times keep FIM fully informed of its investment objectives and methodology, its cash requirements, the investments comprised in the portfolio of each Class of Shares and the affairs of the Fund in so far as they are relevant to the duties to be performed by FIM under the terms of this Agreement.

5. *Remuneration.* In consideration for the services thereof, Kingate hereby agrees to pay to FIM the fees specified in Exhibit B.

6. *Liability.* FIM shall not be liable to Kingate, the Fund or its shareholders for any error of judgement or for any loss suffered by the Fund in connection with the subject matter of this Agreement howsoever any such loss may have occurred unless such loss arises from negligence, wilful default, fraud or dishonesty in the performance or non-performance by FIM or persons designated by it of its obligations or duties.

Kingate and the Fund hereby undertake to hold harmless and indemnify FIM against all actions proceedings claims costs demands and expenses which may be brought against, suffered or incurred by FIM by reason of its performance or non-performance of its duties under the terms of this Agreement (other than due to negligence, wilful default, fraud or dishonesty on the part of FIM or persons designated by it) including all legal professional and other expenses incurred by FIM or persons designated by it in the performance of its obligations or duties and including indemnity obligations owed by FIM to persons designated by it (except such as shall arise from negligence, wilful default, fraud, dishonesty in the performance of such obligations or duties).

7. *Term.* This Agreement shall come into force as of the date hereof and continue in effect for an initial term to end on December 31, 1996 and shall be automatically renewed for subsequent terms of one year unless terminated at the end of the initial or a subsequent term by 30 days' notice given by one party to the others.

Any party may terminate this Agreement at any time if one of the other parties shall go into liquidation (except a voluntary liquidation for the purposes of reconstruction or amalgamation upon terms previously approved in writing by the other parties) or be unable to pay its debts or is insolvent or deemed to be insolvent or if a receiver is appointed of any of the assets of the parties. Any party may terminate this Agreement at any time if one of the other parties shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the other parties requiring it to do so to do to make good such breach.

This Agreement shall terminate forthwith upon the termination of the Manager or Co-Manager Agreements between Kingate and the Fund. Kingate and the Fund may terminate this Agreement at any time if FIM ceases to be permitted by applicable law or regulation to act as consultant, or if FIM ceases to be authorised by IMRO. FIM may terminate this Agreement at any time if it becomes unlawful for FIM to act as consultant pursuant to this Agreement.

On termination of the appointment of FIM under the provisions of this Clause, FIM shall be entitled to receive the fees referred-to in Exhibit B up to the effective date of termination but shall not be entitled to compensation in respect of such termination; and FIM shall deliver or procure to be delivered to Kingate, or as it shall direct, all books of account, records, other registers, correspondence, documents and assets relating to the affairs of or belonging to the Kingate or the Fund in the possession of or under the control of FIM.

8. *Records.* FIM agrees to hold for a period of three years all books of account, records, other registers, correspondence, documents and assets relating to the object matter of this Agreement, and to make them available for inspection by Kingate or the Fund.

9. *Confidentiality.* During and after the continuance of this Agreement, FIM agrees to maintain strict confidentiality in respect to Kingate and the Fund.

10. *Representations and Warranties.* FIM, Kingate and the Fund represent and warrant that information with respect to them and annexed hereto as Exhibit A is correct and each agrees to furnish each other with such information, authorisation and documentation as the others may from time to time require to enable it to carry out its obligations under this Agreement.

    *Authority.* Each of the parties to this Agreement hereby represents and warrants that it is duly authorised and empowered to execute, deliver and perform this Agreement and that such action does not conflict with or violate any provision of law, rule or regulation or contract or deed of trust to which it is a party.

12. *Amendments.* Any provision of this Agreement may be amended only if the parties so agree in writing.

13. *Assignment.* FIM may not assign this Agreement without the prior written agreement of Kingate and the Fund.

14. *Notices.* Any notice given by one party to the other under this Agreement shall be in writing and shall be delivered by hand or by telefax or mailed by registered or certified mail or by courier to the address shown on Exhibit A. A notice delivered by hand shall be deemed to be served upon such service. A notice delivered by telefax shall be deemed to have been given at the close of business on the day on which it is sent. A notice delivered by mail or courier shall be deemed to have been given at the expiration of seventy-two hours after posting. Evidence that the notice was properly addressed, faxed or stamped and put into the post or given to a courier shall be conclusive evidence of service A party may by notice hereunder to the other party designate a different address.

15. *Complaints.* FIM has in operation a written complaints procedure in accordance with IMRO rules for the effective consideration and proper handling of complaints from customers. Kingate and the Fund have the right to complain directly to FIM concerning the services rendered by FIM under the terms of this Agreement. FIM shall address to Kingate and the Fund a written reply within ten (10) days of receipt of such complaint, and the complaint shall be considered as settled if Kingate and the Fund do not indicate otherwise within one month of receipt of such reply. If within two months after the complaint is made it has not been resolved to the satisfaction of Kingate and the Fund, the complaint shall be notified to IMRO by FIM. Kingate and the Fund have the right to make complaints to the United Kingdom's Investment Ombudsman.

16. *Governing Law.* This Agreement shall be governed by, and construed in accordance with, the laws of Bermuda, and the parties hereto irrevocably agree to submit to the non-exclusive jurisdiction of the courts of Bermuda.

*********************

Attorney Eyes Only

KING_DIL_000695

IN WITNESS WHEREOF this Agreement has been duly executed on behalf of the parties on the day and year first above written.

Signed for and on behalf of
KINGATE MANAGEMENT LIMITED     by: _____
                                    Christopher Wetherill

Signed for and on behalf of
KINGATE GLOBAL FUND, LTD.      by: _____
                                    Keith R. Bish

Signed for and on behalf of
FIM LIMITED                    by: _____
                                    Carlo Grosso

Attorney Eyes Only                                                     KING_DIL_000696

# EXHIBIT A

### *INFORMATION REGARDING THE PARTIES*

| | |
|---|---|
| **KINGATE MANAGEMENT LIMITED** | c/o Hemisphere Management Limited<br>Hemisphere House<br>9 Church Street<br>P.O. Box HM 951<br>Hamilton HM DX Bermuda<br><br>Authorised Party: Christopher Wetherhill |
| **KINGATE GLOBAL FUND, LTD.** | c/o HWR Services Limited<br>Craigmuir Chambers<br>P.O. Box 71<br>Road Town, Tortola<br>British Virgin Islands<br><br>Authorised Party: Keith R. Bish |
| **FIM Limited** | 6-8 Sackville Street<br>London W1X 1DD<br>United Kingdom<br><br>Authorised Party: Carlo Grosso |

Attorney Eyes Only                                                                                                                                KING_DIL_000697

## EXHIBIT B

### *FEE SCHEDULE*

In consideration for the services detailed under Clause 3 of this Agreement, FIM shall be entitled to receive such fees as may be agreed from time to time between Kingate, the Fund and FIM. Such fees shall not abate and may be supplemented by reference to any other remuneration of FIM.

2. Such fees (payable to the extent that Kingate receives its management fee under the terms of its Management or Co-Management Agreement with the Fund) shall be no less than:

    - 0.50%   (one-half of one percent) per annum of the Net Asset Value of the Fund (being the sum of the Net Asset value of each Class of Shares of the Fund calculated in accordance to the Information Memorandum of each Class of Shares of the Fund), and

    - US$ 300,000 (three hundred thousand U.S. dollars)

3. Such fees shall be payable in twelve equal monthly instalments of the greater of 1/12th of 0.50% (one twelfth of one-half percent) of the Net Asset Value of the Fund calculated as of the close of business on the last Business Day of each calendar month (as defined in the Fund's Information Memorandum) and US$ 25,000 (twenty five thousand U.S. dollars). The first payment shall be due as of the last Business Day of the month of December 1995 and subsequent payments shall be due as of the last Business Day of each calendar month.

4. FIM shall at its own expense employ such staff as may be necessary for the proper performance of its duties under the terms of this Agreement, except that reasonable travel expenses as mutually agreed in advance by the parties may be reimbursed by Kingate to FIM upon presentation of statement by FIM.

Attorney Eyes Only

KING_DIL_000698