| | |
|---|---|
| **From:** | Robert Dakis |
| **Sent:** | Friday, March 12, 2010 3:51 PM |
| **To:** | Chockley, Frederick W.; Hirschfield, Marc E. |
| **Cc:** | Robert Loigman; Joseph Hammond; Sarah Rubin |
| **Subject:** | BLMIS -- Kingate |
| **Attachments:** | 100226 Letter to WQ.PDF; 100226 Letter to FIM.PDF |

Fritz,

As discussed on today's call, attached hereto is recent correspondence between the Joint Liquidators and counsel to KML and FIM regarding the Joint Liquidators' document requests.

Best,

Robert

**Robert K. Dakis**
**Quinn Emanuel Urquhart &Sullivan, LLP**
**51 Madison Avenue, 22nd Floor**
**New York, NY 10010**
**Direct: (212) 849-7447**
**Main Phone: (212) 849-7000**
**Main Fax:  (212) 849-7100**
E-mail:  robertdakis@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**ZC ZOLFO COOPER**

26 February 2010

**By email: DDwyer@wq.bm**

Wakefield Quin
31 Victoria Street
Hamilton
HM10

P.O. Box 4571
2nd Floor, Palm Grove House
Wickhams Cay, Road Town
Tortola
British Virgin Islands VG1110
t: +1 284 494 9600
f: +1 284 494 9601
www.zolfocooper.com

Dear Dennis

**Kingate Global Fund, Limited and Kingate Euro Fund, Limited – in Liquidation (the "Companies")**

I refer to your letter of 25 January and our previous correspondence.

I will not in this letter rehearse my complaints about KML's desultory response to date to my requests for the handing over and production of documents, but I do wish to put you on notice of certain matters and also to revert to a suggestion made in your letter of 19 January 2010.

1. As this point has not been made clear in your letters informing me how KML's document production (according to the program unilaterally undertaken by it, about which I will be writing separately) is progressing, I want to make it clear that I am expecting to receive documents in two broad categories, namely (i) those to which I am entitled as constituting part of the Companies' own books and records; and (ii) documents belonging to KML but relating to the Companies. KML undoubtedly has documents in the first category (for example, communications made and received in the name of one or other of the Companies, or by Chris Wetherhill as director of one or other of them, or by KML or Mr Wetherhill as their agent), and of course it has its own.

2. The distinction is one of importance, since I consider the liquidators entitled as of right to receive documents in the first category, as property of the Companies. Documents of KML will be produced by KML in response to requests from the Liquidators otherwise compellable under s.195 of the Companies Act. The first category will include any privileged documents, since the privilege is that of the Companies; whereas of course KML may assert privilege to privileged documents in the second category.

3. Please confirm that my expectation will be met.

4. It is also important because I have now been waiting some 9 months for documents that form part of the books and records of the Companies, and the lack of them has been and continues to be a cause of serious possible prejudice to the conduct of these liquidations and the expectations and rights of the Companies' creditors and members. In your letter of 19 January, you wrote that completion of the review of the 100,000 emails "will probably not be until mid to late March". In light of the history, I am unable to allow this to continue beyond mid-March, and so I also write to let you know that I am treating 15 March 2010 as a deadline beyond which I am not prepared to see this go. It will not be a convincing reason for delay beyond that date to say that KML (or your firm for that matter) has insufficient resources to work any faster: As you know, KML received literally hundreds of millions of dollars in fees from the two Companies; if it does not have enough funds for this duty to be

**ZC ZOLFO COOPER**

performed at a more reasonable speed, no doubt its owners can put some of that money back so that it can. Beyond this deadline we will be in court.

5. Turning to the suggestion in your letter of 19 January, this was to transmit material on an interval basis. I wish to accept that offer, so shall be grateful if you would kindly make arrangements to produce now to Mark Chudleigh what has been reviewed up to today's date, and between now and 15 March to produce the balance at weekly intervals as from today.

I look forward to hearing from you.

Yours sincerely

*[signature]*

**W R Tacon**
Joint Liquidator

**ZC ZOLFO COOPER**

26 February 2010

FIM Advisors LLP
Buchanan House
3 St James's Square
London
SW1Y 4JU

P.O. Box 4571
2nd Floor, Palm Grove House
Wickhams Cay, Road Town
Tortola
British Virgin Islands VG1110
t: +1 284 494 9600
f: +1 284 494 9601
www.zolfocooper.com

**By email pniel@fim-group.com**

*For the attention of Philip Niel*

Dear Sirs

**Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd – in Liquidation (the "Funds")**

I refer to your letter of 4 January 2010.

1. May I take it please that, just as on occasions (such as in your letter under reply) you answer letters addressed to FIM Limited, when I address questions to and make requests of you – FIM Advisers LLP – you will respond on behalf of yourselves and also FIM Limited?

2. When I use the word 'FIM' in isolation in this letter I refer to you and/or FIM Limited.

3. We take it that the reference in the second paragraph of your letter of 4 January to a bullet point question under the heading 'KML' is a reference to my letter to FIM Limited dated 24 November 2009. Assuming that is correct,

    3.1 Would you please answer the first bullet point question, viz., "In what way and by what steps did FIM establish Kingate Global? Were the founder shares issued to FIM Limited, or any other persons connected with FIM Limited? If not, how did FIM Limited establish Kingate Global, and what was its connection?" You acknowledge that this question relates to the Funds.

    3.2 It is true that other questions under that heading relate to KML and FIM, but they also relate to the Funds, as I believe you are well aware.

    3.3 As stated at the start of that heading, FIM 'established' Kingate Global. As the question in 3.1 above indicates, I do not know the answer to it, so nor do I know what (if any) FIM's role was in the subsequent establishment of Kingate Euro Fund Limited, (although I am generally aware of the commercial reasoning behind its establishment) and I would like to know that too.

    3.4 KML was the 'manager' of the Funds. The relationship between the Funds and KML was not merely contractual: there was a common director, Mr. Wetherhill and under BVI legislation, any fund must have a manager. But since almost everything the Fund did was delegated to KML almost all the questions I or any other outsider has about the Funds lead to KML. As I know that you are perfectly well aware of this, the implication in your letter that questions I have asked you about KML do not also

1

relate to the Funds is remarkable. To reinforce this I should mention that in June 2009 Mr. Wetherhill told me that the only business of KML was to manage the Funds. In these circumstances, every question I ask you about KML relates to the Funds.

3.5   KML, on behalf of the Funds, contracted with FIM. FIM was paid fees for the consultancy services it provided to the Funds. The Funds invested all their assets in BLMIS. FIM's principals were in regular personal contact with Mr. Madoff. Mr. Madoff perpetrated one of the largest and most serious frauds of recent times, one consequence of which is that the Funds lost all but a tiny fraction of their property. Enormous fees - hundreds of millions of dollars - were paid by the Funds to KML, for doing what amounted to very little. I have every reason to believe that KML distributed its vast profits to its owners. KML's registered shareholders are professed nominees. Mr. Wetherhill, albeit a director of KML, tells me that he does not know who its beneficial owners are. FIM was in regular close contact and communication with Mr. Wetherhill, even in relation to arranging visits by the Funds' auditors to BLMIS and Mr. Madoff in New York. I should add that KML has been particularly unco-operative with me in producing documents of and relating to the Funds, including the Funds own documents, held on KML's computer servers. I believe that FIM can elucidate the true relationships between the Funds, their manager, their manager's and the Funds' consultant, ownership of the Funds' manager (which received substantial fees from the Funds) and the ultimate destinations and recipients of those sums. Such information is of importance to me in carrying out my investigations into the businesses of the Funds. The questions under the heading you refer to do indeed relate to FIM, but they also relate to the Funds, which is why I have asked you to answer them.

3.6   I appreciate your concern that the answer to one question may lead to another. Unfortunately, that is frequently a feature of enquiries liquidators have to make; it is usually not possible to ask all relevant questions at once. Accordingly, I cannot give you the confirmation you request in your final paragraph. I have tried to limit questions and requests for documents to those I have considered to be most important and at the same time minimising inconvenience to you, rather than, for example, asking you to produce all documents in your possession or power 'relating to' the Funds. I am disappointed you do not appear to recognise my approach to be constructive, targeted and pragmatic.

3.7   The enormity of the fraud carried out by Mr. Madoff will certainly not have been lost on you or your advisers. The Funds lost billions of dollars in purported investments analysed by FIM in its regular reports to KML for the benefit of the Funds. FIM's role in the Funds' structures currently leaves a great deal to be explained. I have little doubt that any court that I ask to assist me in getting to the bottom of these matters by examining FIM's officers and producing the documents I have so far asked for, and more, will readily do so.

I look forward to your co-operation. If you do not provide it by answering the questions I have asked you, by 5 March 2010, I will immediately move to apply for the assistance of the English Court.

If you have any questions with regard to this letter, kindly contact Mr. Richardson.

Yours faithfully

W R Tacon
Joint Liquidator

2