# EXHIBIT 2



SECURITIES INVESTOR PROTECTION CORPORATION
805 FIFTEENTH STREET, N.W., SUITE 800
WASHINGTON, D.C. 20005-2215
(202) 371-8300    FAX (202) 371-6728
WWW.SIPC.ORG

OFFICE OF THE GENERAL COUNSEL

September 13, 2013

**BY HAND DELIVERY**

Honorable Scott Garrett
Chairman
Subcommittee on
Capital Markets and
Government Sponsored
Enterprises
United States Congress
Washington, D.C. 20515

Honorable Carolyn Maloney
Ranking Member
Subcommittee on
Capital Markets and
Government Sponsored
Enterprises
United States Congress
Washington, D.C. 20515

RE: **Your Letter of August 30, 2013**

Dear Congressman Garrett and Congresswoman Maloney:

In response to your letter of August 30, 2013, a copy of which is enclosed, we are pleased to provide the below information relating to Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Stanford Group Company ("SGC"). The liquidation of BLMIS under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA"), is proceeding before the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). No SIPA proceeding has been initiated with respect to SGC.

The requests for information are set forth below in bold print, followed by our responses.

**1) In a letter dated February 16, 2011, the Subcommittee requested detailed information concerning the 138 accounts in the BLMIS case with Net Investment Method balances, at closing, exceeding $10 million and with aggregate claims representing roughly 80 percent in dollar value of all the claims deemed eligible for SIPA assistance. We need updated and additional information regarding each of these accounts. For each account, please provide the following information: NIM claim amount; Final Statement amount; term of account relationship; aggregate number of withdrawals; aggregate value of withdrawals; type of accountholder (LLP, LLC, etc.); domicile of accountholder; current status of claim; if claim resolved by settlement, provide details of settlement; distributions from SIPC Fund; and distributions from customer property.**

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 2

Response:

Please see the chart attached as Exhibit 1, which contains information relating to 131 BLMIS accounts that have an allowed claim of $10 million or more or are accounts in litigation with the Trustee with a net balance of $10 million or more. The difference between the previously reported 138 accounts and the 131 accounts that currently fall within this category is attributable largely to settlements with the Trustee or a change in the status of the claim. For example, several account holders withdrew their claims, remitted funds, or offset related accounts as part of settlements with the Trustee.

2) **The Table presenting basic facts on the account history of the 44 unresolved accounts, as of March 2011, indicates that 24 of these accounts had withdrawals averaging 100 or more per annum and in many cases aggregating hundreds of millions, even billions. These 24 accounts have aggregate claims for priority allocation of customer property of roughly $7.3 billion, representing some 40 percent of eligible claims. There is a high probability that these professional institutional investors were using BLMIS as a high-yielding transaction account for idle funds awaiting a more profitable investment opportunity. Given that the Trustee has defended NIM as a necessary means to provide for equitable distribution of customer property, does SIPC have any reservations with treating these accounts as "net losers" and deserving of preferential equitable treatment?**

Response:

The calculation of a customer's net equity as the difference between what the broker owes the customer and what the customer owes the broker on the filing date is the formula provided under 15 U.S.C. section 78lll(11). The calculation of the customer's net equity under SIPA determines what the customer is owed, if anything, and in the terminology of the BLMIS case, whether the customer is a "net loser" or a "net winner." The BLMIS Trustee's calculation of net equity was upheld by the Second Circuit which concluded that it was "legally sound under the language of the statute." In re Bernard L. Madoff Investment Securities LLC, 654 F.3d 229, 231 (2d Cir. 2011), cert. den., 133 S. Ct. 24 and 25 (2012). SIPC supports the position that is required under, and consistent with, SIPA.

3) **Please provide the following information detailing distributions by the Trustee in the BLMIS case: aggregate distributions by number of accounts and dollar value; subdivide foregoing by source (SIPC Fund and customer property); number of accounts and aggregate value of accounts for which NIM claim was satisfied by a SIPC Fund distribution; number of accounts and aggregate dollar value for which NIM claim was satisfied by SIPC Fund and customer property distributions.**

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 3

Response:

    Please see the chart attached as Exhibit 2, which presents aggregate information for accounts with allowed claims that are currently eligible for a distribution.

**4) What is the current dollar value of the customer property recovered and available for distribution in the BLMIS case, and the current dollar value of customer property for which recovery is a certainty? What are the amounts currently being reserved for the completion of ongoing or anticipated litigation?**

Response:

    As of July 31, 2013, the current dollar value of customer property recovered is $9,353,905,295.02. The Trustee has made three distributions totaling $4,656,427,096.30 to customers, returned $102,805,012.23 to SIPC as subrogee to customers with fully-satisfied claims, and is reserving an additional $918,498.83 related to SIPC subrogation for customers that have not returned the necessary forms. This leaves $4,593,754,687.66 on hand for future distributions. Of that amount, $4,363,648,161.14 is held in reserve and $230,106,526.52 is currently available for distribution in the BLMIS case. Because distribution of the latter amount would return approximately $0.01 on the dollar, the Trustee has not yet sought court approval to distribute those funds.

    The reserves maintained by the Trustee are in connection with disputed claims and settlement agreements. The reserves for disputed claims include both the potential claims of those customers in avoidance action litigation with the Trustee as well as the ongoing litigation regarding the issue of whether BLMIS customers are entitled to time-based damages as part of their net equity claims. In addition, the Trustee is required to maintain reserves relating to certain settlement agreements such as those with the Internal Revenue Service. For purposes of interim distributions, the Trustee must establish sufficient reserves to ensure that he will be able to make a pro rata distribution to all potentially eligible claimants, whether or not their claims are currently allowed.

    Below is a summary of the Trustee's recoveries, distributions, and various reserves maintained by the Trustee as of July 31, 2013:

| Category | Current Amount |
| --- | --- |
| Total Recoveries as of 7/31/13 | $9,353,905,295.02 |
|  |  |
| Less: |  |
| Amount Distributed From Customer Fund - Customers | $4,656,427,096.30 |
| Amount Distributed From Customer Fund - SIPC Subrogation | $102,805,012.23 |
| Settlement Based Reserve | $222,804,436.42 |

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 4

| Deemed Determined Reserve | $2,768,686,677.98 |
|---|---|
| Time-Based Damages Reserve | $1,372,157,046.74 |
| SIPC Subrogation Reserve | $918,498.83 |
| **Total Exclusions** | **$9,123,798,768.50** |
| **Amount Available** | **$230,106,526.52** |

With regard to customer property not yet recovered by the Trustee, the return of those many billions of dollars is the subject of litigation. While the Trustee is confident that he will achieve continued success on behalf of BLMIS customers, the vicissitudes of litigation make it impossible for the Trustee to predict how much he will recover in the future.

5) **Using the stratified schedule presented on page 5 of SIPC's responses to the Subcommittee, dated September 7, 2010, please expand the schedule to show the current status of each strata, showing distributions by source; number of accounts satisfied; number of accounts not yet satisfied; and current number of accounts with outstanding claims and the aggregate value of those claims by strata.**

Response:

Please see the chart attached as Exhibit 3, which contains information relating to 2,297 BLMIS accounts that have an allowed claim or are accounts in litigation with the Trustee with a positive net balance. The difference between the previously reported-on 2,319 accounts and the 2,297 accounts that currently fall within this category is attributable largely to settlements with the Trustee and the corresponding change in the status of the claim resolution. For example, several account holders withdrew their claims, remitted funds, or offset related accounts as part of settlements with the Trustee.

6) **For illustrative purposes, assume that the next distribution of customer property in the BLMIS case will amount to $1 billion. Please show how that sum will be distributed by amount and account numbers to the stratified table as it currently stands, including the number of additional accounts, if any, for which claims will be satisfied. Additionally, please include the share in dollars to be returned to SIPC as subrogee. At what point in the distribution of customer property is it estimated that all of the claims in stratas 1, 2, and 3 of the table will have been satisfied?**

Response:

Please see the chart provided herewith as Exhibit 4.

The largest customer in strata 3 has an allowed claim of $4.99 million. In order to satisfy all of the claims in stratas 1, 2, and 3, the Trustee would need to make aggregate distributions of

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 5

approximately 90%. For example, using round numbers, a claimant with an allowed amount of $5 million would receive a SIPC advance of $500,000. In order for the Trustee to make that claimant whole from the fund of customer property, the Trustee would need to distribute $4,500,000.00, or a 90% distribution. To date, the Trustee has made distributions that aggregate to approximately 43%, fully satisfying approximately 51% of accounts with an allowed claim. Thus, any customer owed $875,000 or less has been fully satisfied in the proceeding. With a 90% distribution, the Trustee would fully satisfy approximately 88% of currently allowed claims.

**7) From the total amount of customer property distributions made to date in the BLMIS case, what is the total value reimbursed to SIPC as subrogee for accounts fully satisfied? When the Trustee distributes all of the $9.3 billion he currently expects to have available, what percentage of the $807 million in SIPC "advances" will be recaptured through SIPC's subrogated position?**

Response:

To date, SIPC has received payments for its subrogation claims of $102,805,012.23 related to 1,106 fully satisfied accounts. As noted above in the response to Request No. 4, there are an additional 13 accounts entitled to payments from SIPC advances and the Trustee's first three distributions but that have not yet returned the necessary forms. Upon receipt of those forms, the claims related to those accounts will be fully satisfied and SIPC will be entitled to an aggregate subrogation payment of $918,498.83, which will be paid when the funds are distributed to the underlying customers. As for accounts related to claims that have not yet been allowed, the amount of SIPC's subrogation claims will continue to increase as those additional claims are fully satisfied.

The amounts that will be paid to each customer and SIPC as subrogee depend on the outcome of pending litigation. At this point, it is impossible to predict with any certainty the amount of customer claims that will ultimately be fully satisfied and the total amount to be paid to SIPC as subrogee. Hypothetically, however, assume that the customer accounts that are currently in litigation (deemed determined) are allowed for the amount of their net investment. Also assume that a court issues a final ruling that net equity does not include time-based damages. In those circumstances, the total amount of SIPC advances would increase to $853,781,438.07 and SIPC's subrogation would increase to $149,878,237.40. If the $9.3 billion were distributed in accordance with the hypothetical assumptions just described, the percentage of SIPC's subrogation claim that would be recaptured would be 17.55%.

**8) Please provide the current aggregate expenditures related to the Madoff liquidation by function (legal fees, accounting fees, other consulting services, general administration, etc.). What is the current forecast of total expenditures by function to complete the liquidation?**

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 6

<u>Response</u>:

After notice and hearing, the Bankruptcy Court approved eleven fee applications by the Trustee and all counsel (general and special counsel, both foreign and domestic) to the Trustee. Through the eleventh fee applications which were based on services rendered through November 30, 2012, the total amounts awarded were $483,354,059.24 for fees and $14,760,496.78 for expenses. The Trustee and all counsel are expected to file their next applications for compensation in the month of September 2013.

Report No. 52, attached to the Trustee's Ninth Interim Report, dated April 30, 2013, lists the following cumulative amounts for the other requested expenditures: general administration ($37,699,783.25), consultants fees, including accounting fees ($256,578,270.79), consultants expenses ($11,482,212.06), investment banker fees ($1,050,000.00), sales tax ($1,132,892.87), mediator fees ($876,829.30), mediator expenses ($6,335.34), receiver expenses ($6,449.08), receiver consultant fees ($316,000.00), receiver consultant expenses ($15,000.00), receiver counsel fees ($300,000.00). See http://www.madofftrustee.com/document/dockets/003426-trusteereportinterimreport08-01789docket5351.pdf.

**9) Please provide the functional expenditure totals involved in the Trustee's major law suits, and the current status of those cases in terms of recovery. Given that the Picower accounts, at closing, showed indebtedness to BLMIS of between $7 and 8 billion, how much were the legal fees to collect this indebtedness?**

<u>Response</u>:

As previously noted, through July 31, 2013, the Trustee recovered approximately $9.3 billion for the benefit of customers. As detailed in the response to Request No. 8, amounts expended in the liquidation proceeding through the periods referenced in Response No. 8, which include, among other things, legal costs, have totaled approximately $807 million. The Trustee's major law suits are in progress and are at various stages of litigation. To detail amounts and thus, the time expended on each, would provide insight into the allocation of resources to particular lawsuits, as deemed appropriate by the Trustee and his counsel, and provide a tactical advantage to the defendants in the cases, at the risk of compromising or derailing the litigation to the detriment of customers for whom the Trustee seeks recovery.

**10) To date, please provide the aggregate amount paid for professional services by the Trustee and by his law firm serving as counsel to the Trustee. In a report to the Subcommittee on the BLMIS liquidation, prepared by the Government Accountability Office (GAO), the Trustee advised that he contributed his Trustee compensation to his law firm, but, because of the firm's confidentiality policy, was unable to disclose his contractual**

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 7

arrangement with the firm concerning sharing of firm revenues generated by him. Has the Trustee or the firm shared those contractual details with SIPC? If not, do you believe that such information should be publicly available, given that the Trustee's appointment, powers, and service all derive from the Securities Investor Protection Act (SIPA), a public law?

Response:

The aggregate amount paid for professional services by the Trustee and his counsel is provided in the response to Request No. 8 above.

Pursuant to a methodology developed, and refined, since the inception of SIPC, the legal department of the Corporation reviews all time and billing records of any trustee and counsel designated by SIPC and appointed by the courts. This procedure has been followed in the BLMIS case. SIPC has reviewed all of Mr. Picard's time records for which he has sought compensation, and all time records by the legal professionals at Baker & Hostetler. In the course of its review, SIPC staff has questioned services rendered and/or amounts billed, and where appropriate, adjustments to amounts sought have been made.

Fee applications filed by SIPA trustees and their counsel are public. Pursuant to 15 U.S.C. section 78eee(b)(5)(C), SIPC has filed a Recommendation with the Bankruptcy Court with respect to each fee application by the Trustee and counsel in the BLMIS case. SIPC is satisfied that the work for which compensation has been court-approved has been necessary and appropriate. The Bankruptcy Court has made its own independent assessments and has agreed. The very few objections to the fee applications in this high profile case have been overruled by the Bankruptcy Court and its rulings upheld by the District Court.

SIPC has not asked for the details of how Baker & Hostetler divides the fees paid to the Trustee and counsel. Under 15 U.S.C. section 78eee(b)(3), "[t]he persons appointed as trustee and as attorney for the trustee may be associated with the same firm." Furthermore, while sharing of compensation generally is prohibited in bankruptcy, sharing is allowed between members of a professional association or partnership. See 11 U.S.C. §504(b)(1), 503(b)(2) and 330(a)(1). See also Bankruptcy Rule 2016 (excluding from a fee application "details of any agreement by the applicant for the sharing of compensation as a member ... of a firm of lawyers..."). Given the fact that SIPC has very closely reviewed the work done and the billings, how the fees are divided is not relevant to whether the work was done correctly and efficiently.

It should be noted that an extensive review of SIPC's fee review procedures, among other topics, was conducted by the SEC's Office of Compliance Inspections and Examinations and Division of Market Regulation, and that a report thereon was issued on April 30, 2003. A number of recommendations respecting fee review were made by the SEC staffs in their report. All of the recommendations were adopted and implemented by SIPC. The SEC did not recommend that SIPC seek access to information as to how fees are shared between a trustee and counsel.

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 8

11) At the close of this fiscal year, what is SIPC's forecast of its cash on hand? What is SIPC's current budget for general administration? For the next five fiscal years, what are the current forecasts for income from the assessments of member firms? In the management of its overall resources, does SIPC maintain a segregated reserve for potential SIPC payments to customers of failed member firms or is income from investments and assessments administered as a single pooled fund? In its report to the Subcommittee, the GAO reported the average annual assessment and the median annual assessment in 2010. Please update those numbers for 2012, and also for the same period please provide the average annual assessment for the top five broker-dealer members (aggregated to avoid identifying any firm).

Response:

SIPC's fiscal year is the calendar year. It is anticipated that at the end of 2013 the SIPC Fund will contain approximately $1.94 billion. Assessments on SIPC members are currently based on one quarter of one percent of net operating revenue of each member. Estimates for 2014 and 2015 income from assessments are $400 million per year. Pursuant to SIPC's Bylaws, which are approved by the SEC, once SIPC reaches the "Target Balance" of $2.5 billion, assessments under the current Bylaws will revert to a minimum assessment. Upon reaching the Target Balance it is anticipated that the Corporation will review the demands upon the Fund and the current state of the industry, and make a determination as to whether the Target Balance, last established in 2009, should be adjusted.

Pursuant to 15 U.S.C. section 78ddd(a)(1), all income is deposited in the SIPC Fund, and all expenditures are paid from the SIPC Fund.

The average annual assessment for 2012 was $94,950 per firm with a median annual assessment of $2,500. The average annual assessment for the top five broker-dealer members in 2012 was $23,147,000.

12) Section 7(d) of the SIPA directs the Trustee to prepare and submit to SIPC a report on the Trustee's investigation of the acts, conduct, property, liabilities, and financial condition of the debtor and any other matter to the extent relevant to the liquidation proceeding. Please provide the Subcommittee with a copy of this investigative report for the BLMIS case.

Response:

Since the commencement of the liquidation proceeding, the Trustee has issued nine interim reports, copies of which are at www.madofftrustee.com. The reports respectively are dated April 30, 2013, November 5, 2012, April 25, 2012, November 15, 2011, May 16, 2011, October 29, 2010, April 19, 2010, November 23, 2009, and July 9, 2009. The reports, together with the complaints filed by the Trustee in the numerous lawsuits that he has brought and

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 9

information compiled on the Trustee's web site, offer details of the Trustee's investigation of the Debtor and its acts, conduct, liabilities, and financial condition. However, as noted in the most recent report, the Trustee's investigation, which covers activities that span the globe, actively continues. Furthermore, the Trustee continues to cooperate substantially and to share information with law enforcement officials in their investigations of BLMIS, and in the criminal actions that have ensued against participants in the BLMIS fraud. Once the Trustee's investigation is completed and any risk of compromising criminal inquiries and law enforcement actions has passed, the Trustee will be in a position to complete his investigatory report to the Court under section 7(d).

**13) Due to SIPC's resistance to obeying a direct instruction from the SEC to initiate a SIPA liquidation of the failed broker-dealer firm owned and controlled by Allen Stanford, the SEC has pursued an Enforcement Action against SIPC (currently being litigated on appeal with the DC Circuit Court). To date, what has SIPC expended for the retention of private law firms and what does it forecast will be future such costs? Have there been any other additional costs to the SIPC for defending this case-such as marketing, public relations, etc.?**

<u>Response</u>:

At the outset, SIPC would note that the suggestion that it engaged in "resistance to obeying a direct instruction from the SEC" is incorrect. SIPC did not "disobey" any "instruction" from the SEC. Although the SEC has the authority to require SIPC to take certain actions, such as the adoption and repeal of bylaws and rules, the SEC does not have the authority to require SIPC to initiate a liquidation proceeding.

In this case, SIPC concluded that the law did not permit the initiation of a liquidation proceeding because there were no customers eligible for protection in the Stanford-Antiguan bank fraud. The SEC Staff initially agreed with SIPC before reversing course several years later. Congress provided a remedy for precisely this type of situation, in which the SEC and SIPC disagree. Under 15 U.S.C. section 78ggg(b), the SEC initiated a lawsuit to resolve the matter. The United States District Court for the District of Columbia, on facts stipulated by the SEC and SIPC, determined that under any relevant burden of proof, the SEC had not demonstrated that SIPC should be ordered by the Court to initiate a liquidation proceeding. The case is on appeal to the United States Court of Appeals for the District of Columbia.

SIPC's legal expenditures to date are approximately $2.7 million. Anticipated future legal expenditures are $230,000.

There have been other additional costs such as litigation support for counsel at a cost of approximately $320,000.

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 10

14) In defense of the SEC's Enforcement Action, SIPC has taken the position that the SEC was influenced by political pressure in order to vote to overturn the SIPC's previous position that Stanford Group Company did not have customers in need of protection. Was the SIPC aware that in November 2009, the Stanford Victims Coalition ("SVC") formally asked the Commission to review the SIPC's decision stated in an April 2009 letter to the Receiver for Stanford Group Company and Stanford International Bank?

Response:

SIPC was aware of activities by the Stanford Victims Coalition. However, those were not the activities to which SIPC was referring when noting in its legal papers that the SEC's lawsuit appeared to follow from political pressure.

15) Was the SIPC aware that during the period between November 2009 and May 2011, just prior to the Commission's vote on how to respond to the SVC's November 2009 request, that the SVC had participated in numerous discussions with the SEC about their request - including meetings with counsel for each of the Commissioners - and submitted thousands of customer documents neither the SEC or the SIPC had ever seen? It appears the Stanford victims simply exercised their right under the SIPA to ask the SEC, as the authority over the SIPC, for a review of the SIPC's decision since the victims themselves have no means to seek a judicial review of the matter. Do you disagree that the process that took place, while time-intensive, was exactly what was intended when SIPC v. Barbour determined that individual investors cannot sue SIPC to force a liquidation under the SIPA? Or, alternatively, do you believe that SIPC should have the sole authority to determine when a liquidation is commenced?

Response:

The SEC and the securities self-regulatory organizations are responsible for gathering the fact information that may form the basis for the commencement of a SIPA liquidation proceeding. It is crucial that these investigatory bodies have access to such relevant fact information as will enable SIPC to determine whether grounds exist to initiate a proceeding. Under the circumstances, SVC's meetings with the Commissioners and its submission of documents were reasonable and indeed, consistent with the SEC's responsibilities under SIPA. SIPC has never stated otherwise, or that it should have unreviewable authority to determine when a liquidation proceeding is commenced. 15 U.S.C. section 78ggg(b) provides a legal methodology for resolving the situation when, as in the Stanford-Antiguan bank fraud, the SEC and SIPC differ. That methodology was used in the Stanford-Antiguan bank matter, and the Court held that SIPC's position was correct.

16) During SIPC's review of the Stanford Group Company, did SIPC or its Board ever make an offer to settle with the customers of that SIPC-member firm? If so, what was the

Honorable Scott Garrett
Honorable Carolyn Maloney
September 13, 2013
Page 11

nature of the offer? Was a SIPA liquidation proceeding pending at that time? If not, does SIPC believe it has the authority to settle with customers of a SIPC-member firm outside of a SIPA-authorized and Federal District Court-approved liquidation proceeding?

**Response:**

SIPC did not make any offer to settle with the offshore CD purchasers in the Stanford-Antiguan bank fraud. SIPC and the SEC did discuss the possibility of resolving their dispute over the initiation of a liquidation proceeding. Notwithstanding the parties' best efforts, no settlement could be reached.

SIPC's powers are set forth in 15 U.S.C. section 78ccc(b). These powers include the power "to do any and all other acts and things as may be necessary or incidental to the conduct of its business and the exercise of all other rights and powers granted to SIPC..." While SIPC has the authority to settle any dispute which might arise in the course of its business, the Stanford CD purchasers/fraud victims were not customers as defined in SIPA.

Very truly yours,

Stephen P. Harbeck
President and CEO

Encs.

SPH/pmd

cc (w/encs.):
Irving H. Picard, Trustee
David J. Sheehan, Esq.

| ID | Net Equity | 11/30/2008 Fictitious Equity | Term of Acct Relationship (Years) | Aggregate W/D | Aggregate Value of W/D | Type of Entity | Domicile | Current Status of Claim | Settlement (Y/N) | Allowed Amount | SIPC Distribution | FCP to Claimant |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | ($94,824,318.92) | $14,567,639.27 | 12.78 | 1,266 | $227,874,203.92 | | BAHAMAS | Determined | Yes | $11,425,781.90 | $500,000.00 | $4,899,260.63 |
| 2 | $4,000,000.00 | $7,207,096.10 | 2.61 | 2 | $6,000,000.00 | Trust | NJ | Determined | Yes | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 3 | $9,806,038.00 | $44,768,254.29 | 15.93 | 326 | $31,964,569.61 | GP | FL | Determined | Yes | $10,131,036.00 | $500,000.00 | $4,344,886.93 |
| 4 | $10,000,000.00 | $16,465,542.74 | 4.78 | | $0.00 | | NY | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 5 | $10,000,000.00 | $10,002,500.00 | 0.04 | | $0.00 | | FL | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 6 | $10,000,000.00 | $11,808,663.23 | 1.67 | | $0.00 | | MN | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 7 | $10,000,000.00 | $22,031,150.50 | 0.70 | | $0.00 | | DE | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 8 | $10,000,000.00 | $49,421,043.50 | 13.51 | | $0.00 | | CA | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 9 | $10,000,000.00 | $24,836,484.64 | 8.44 | | $0.00 | | CA | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 10 | $10,000,000.00 | $0.00 | 0.02 | | $0.00 | | NY | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 11 | $10,000,000.00 | $34,428,340.36 | 10.88 | | $0.00 | | MD | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 12 | $10,000,000.00 | $33,580,141.83 | 16.14 | 1 | $1,000,000.00 | | NY | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 13 | $10,000,000.00 | $11,710,089.65 | 1.46 | | $0.00 | | MN | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 14 | $10,000,000.00 | $11,180,836.73 | 1.63 | | $0.00 | | MD | Determined | No | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 15 | $10,152,300.00 | $54,056,559.85 | 14.83 | 9 | $2,654,000.00 | | DC | Determined | Yes | $10,152,300.00 | $500,000.00 | $4,353,204.72 |
| 16 | $10,700,000.00 | $12,915,529.19 | 1.35 | | $0.00 | | NJ | Determined | No | $10,700,000.00 | $500,000.00 | $4,600,162.00 |
| 17 | $10,271,000.00 | $55,745,260.57 | 6.40 | | $0.00 | | NY | Determined | No | $10,271,000.00 | $500,000.00 | $4,404,152.09 |
| 18 | $10,490,000.00 | $18,467,670.16 | 4.56 | 12 | $5,850,000.00 | LP | GA | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 19 | $10,527,272.73 | $35,973,103.15 | 13.34 | 24 | $10,000,000.00 | | FL | Determined | Yes | $10,527,272.73 | $500,000.00 | $4,515,105.28 |
| 20 | $10,680,230.74 | $30,089,857.26 | 9.45 | 12 | $2,474,077.88 | | NY | Determined | No | $10,680,922.32 | $500,000.00 | $4,579,872.55 |
| 21 | $10,680,922.32 | $15,019,230.74 | 12.81 | 25 | $5,000,000.00 | | NC | Determined | No | $10,700,000.00 | $500,000.00 | $4,287,900.00 |
| 22 | $10,700,000.00 | $14,270,239.01 | 4.51 | 1 | $1,000,000.00 | | NY | Determined | No | $10,700,000.00 | $500,000.00 | $4,588,053.00 |
| 23 | $10,961,182.41 | $46,032,038.93 | 15.99 | 93 | $83,541,957.24 | LLP | NY | Determined | No | $10,981,182.41 | $500,000.00 | $4,673,871.00 |
| 24 | $10,957,335.92 | $20,359,013.65 | 4.16 | 55 | $9,477,000.00 | LLP | NY | Determined | No | $10,957,335.92 | $500,000.00 | $4,769,921.20 |
| 25 | $10,936,341.00 | $17,306,734.01 | 7.60 | 32 | $9,679,000.00 | NFC | NY | Determined | Yes | $10,680,922.32 | $0.00 | $4,653,396.07 |
| 26 | $10,925,000.00 | $35,973,103.15 | 13.34 | 24 | $10,070,000.00 | GP | FL | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 27 | $11,000,000.00 | $34,772,517.18 | 19.10 | 3 | $1,000,000.00 | | MN | Determined | No | $11,000,000.00 | $500,000.00 | $4,716,690.00 |
| 28 | $11,150,000.00 | $33,321,020.39 | 1.78 | | $0.00 | | CA | Determined | No | $11,150,000.00 | $500,000.00 | $4,781,908.50 |
| 29 | $11,150,000.00 | $18,043,206.31 | 5.37 | 7 | $10,250,000.00 | | DC | Determined | No | $0.00 | $500,000.00 | $0.00 |
| 30 | $11,325,000.00 | $20,609,224.15 | 3.92 | 6 | $2,700,000.00 | | FL | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 31 | $11,362,122.17 | $20,209,480.14 | 6.92 | 2 | $1,115,950.00 | | FL | Determined | No | $11,382,122.17 | $500,000.00 | $4,660,540.17 |
| 32 | $11,500,000.00 | $20,949,889.92 | 6.82 | 1 | $5,000,000.00 | | NY | Determined | No | $11,500,000.00 | $500,000.00 | $4,931,085.00 |
| 33 | $11,500,000.00 | $17,335,739.16 | 3.61 | | $0.00 | | FL | Determined | No | $11,500,000.00 | $500,000.00 | $5,036,262.50 |
| 34 | $11,750,000.00 | $33,467,195.65 | 12.98 | | $0.00 | | CA | Determined | No | $11,750,000.00 | $500,000.00 | $5,038,282.50 |
| 35 | $11,750,000.00 | $13,273,556.89 | 1.11 | 60 | $650,000.00 | | NY | Determined | No | $11,750,000.00 | $500,000.00 | $5,004,413.15 |
| 36 | $11,803,944.00 | $12,278,867.08 | 0.47 | 1 | $33,556.00 | LLC | CAYMAN ISLANDS | Determined | Yes | $11,803,944.00 | $0.00 | $5,062,208.50 |
| 37 | $11,947,565.78 | $19,713,752.91 | 7.11 | | $0.00 | | CO | Determined | Yes | $11,947,565.76 | $500,000.00 | $5,122,595.79 |
| 38 | $12,267,447.55 | $29,051,570.90 | 9.30 | 835 | $3,614,452.44 | LP | NETHERLANDS | Determined | Yes | $15,887,448.56 | $500,000.00 | $6,803,803.27 |
| 39 | $12,500,000.00 | $17,105,118.06 | 2.72 | | $0.00 | | CA | Determined | No | $12,500,000.00 | $500,000.00 | $5,359,875.00 |
| 40 | $12,600,000.00 | $16,838,044.35 | 6.52 | 1 | $5,400,000.00 | | NJ | Determined | No | $12,600,000.00 | $500,000.00 | $5,402,754.00 |
| 41 | $12,853,342.26 | $30,209,412.93 | 14.99 | 87 | $18,460,313.09 | | FL | Determined | Yes | $12,817,397.62 | $500,000.00 | $5,495,971.93 |
| 42 | $13,000,000.00 | $22,957,875.52 | 8.84 | | $0.00 | | FL | Determined | No | $13,000,000.00 | $500,000.00 | $5,574,270.00 |
| 43 | $13,400,422.88 | $19,191,374.66 | 6.55 | 4 | $1,167,269.47 | | CO | Determined | No | $13,400,422.83 | $500,000.00 | $5,745,867.32 |
| 44 | $13,648,229.45 | $18,042,639.01 | 10.86 | 61 | $3,552,997.77 | | FL | Determined | Yes | $13,825,796.43 | $500,000.00 | $5,929,363.27 |
| 45 | $13,746,109.10 | $53,460,782.12 | 12.94 | 34 | $33,647,937.50 | | GA | Determined | Yes | $14,146,108.10 | $500,000.00 | $6,065,709.58 |
| 46 | $14,000,000.00 | $14,353,792.62 | 0.31 | 3 | $4,000,000.00 | | NY | Determined | Yes | $10,000,000.00 | $500,000.00 | $4,287,900.00 |
| 47 | $14,000,000.00 | $29,144,676.18 | 11.16 | 1 | $10,000,000.00 | | NY | Determined | No | $14,000,000.00 | $500,000.00 | $6,003,060.00 |
| 48 | $14,000,000.00 | $23,543,194.66 | 4.76 | 1 | $4,000,000.00 | | MN | Determined | No | $14,000,000.00 | $500,000.00 | $6,003,060.00 |
| 49 | $14,142,792.28 | $27,318,160.85 | 15.99 | 16 | $10,448,000.00 | | CA | Determined | No | $14,142,792.28 | $500,000.00 | $6,067,378.53 |
| 50 | $14,150,000.00 | $15,650,131.70 | 1.02 | 2 | $17,300,000.00 | | NY | Determined | No | $14,150,000.00 | $500,000.00 | $6,099,537.75 |
| 51 | $14,225,000.00 | $53,460,782.12 | 7.03 | 8 | $27,514,000.00 | | MD | Determined | No | $14,225,000.00 | $500,000.00 | $6,256,903.55 |
| 52 | $14,592,000.00 | $26,003,495.49 | 2.17 | | | | RI | Determined | No | $14,592,000.00 | $500,000.00 | $0.00 |
| 53 | $14,800,000.00 | $17,375,211.92 | 0.02 | | $0.00 | LLC | NY | Deemed Determined | No | $0.00 | $0.00 | $0.00 |

| ID | Net Equity | 11/30/2008 Fictitious Equity | Term of Acct Relationship (Years) | Aggregate W/D | Aggregate Value of W/D | Type of Entity | Domicile | Current Status of Claim | Settlement (Y/N) | Allowed Amount | SIPC Distribution | FCP to Claimant |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 54 | $15,000,000.00 | $16,573,215.18 | 1.48 | - | $0.00 | | OH | Determined | No | $15,000,000.00 | $500,000.00 | $5,431,350.00 |
| 55 | $15,415,309.91 | $24,256,422.97 | 11.56 | 156 | $7,471,556.30 | | NY | Determined | No | $15,415,309.91 | $500,000.00 | $5,909,930.73 |
| 56 | $15,600,000.00 | $23,400,932.61 | 0.71 | - | $0.00 | | FL | Determined | No | $15,600,000.00 | $500,000.00 | $6,609,124.00 |
| 57 | $16,000,000.00 | $20,440,727.33 | 2.57 | 2 | $4,000,000.00 | | NY | Determined | No | $16,000,000.00 | $500,000.00 | $6,800,640.00 |
| 58 | $16,425,000.00 | $21,615,294.98 | 2.55 | - | $0.00 | | NY | Determined | No | $16,425,000.00 | $500,000.00 | $7,042,875.75 |
| 59 | $16,500,000.00 | $25,912,194.33 | 8.18 | 4 | $30,500,000.00 | | NY | Determined | No | $16,500,000.00 | $500,000.00 | $7,075,035.00 |
| 60 | $17,179,853.22 | $56,489,398.97 | 11.60 | 2 | $15,000,000.00 | | FL | Determined | No | $17,179,853.22 | $500,000.00 | $7,366,549.27 |
| 61 | $17,650,000.00 | $41,322,619.20 | 13.02 | 15 | $59,350,000.00 | | NY | Determined | No | $17,650,000.00 | $500,000.00 | $7,568,149.50 |
| 62 | $17,701,268.89 | $23,639,944.37 | 4.56 | - | $0.00 | | CA | Determined | No | $17,701,268.89 | $500,000.00 | $7,590,127.08 |
| 63 | $17,781,517.72 | $25,836,267.30 | 4.73 | 1 | $238,482.26 | | CA | Determined | No | $17,781,517.72 | $500,000.00 | $7,615,991.19 |
| 64 | $18,000,000.00 | $40,165,799.97 | 6.77 | - | $0.00 | | FL | Determined | No | $18,000,000.00 | $500,000.00 | $7,718,220.00 |
| 65 | $18,034,620.00 | $29,954,606.09 | 2.38 | 8 | $51,102,500.00 LLC | | NY | Determined | Yes | $18,034,620.00 | $0.00 | $7,733,064.71 |
| 66 | $20,296,030.00 | $33,843,301.80 | 7.71 | 2 | $9,100,000.00 NPO | | NY | Determined | Yes | $20,296,030.00 | $500,000.00 | $9,000,302.10 |
| 67 | $18,490,000.00 | $33,843,301.80 | 7.71 | 2 | $9,100,000.00 NPO | | NY | Determined | Yes | $18,490,000.00 | $500,000.00 | $8,192,095.25 |
| 67 | $19,105,145.29 | $38,191,325.13 | 15.47 | 39 | $7,935,000.00 | | CA | Determined | No | $19,105,145.29 | $500,000.00 | $8,387,989.60 |
| 68 | $19,515,356.25 | $28,781,356.65 | 4.28 | 9 | $8,087,043.00 | | NY | Determined | No | $19,515,356.25 | $500,000.00 | $8,490,942.00 |
| 69 | $19,800,000.00 | $23,040,653.19 | 7.53 | 2 | $7,700,000.00 | | NY | Determined | No | $19,800,000.00 | $500,000.00 | $8,661,655.37 |
| 70 | $19,800,297.07 | $27,377,477.61 | 7.94 | 35 | $6,267,395.00 PA | | PA | Determined | Yes | $20,200,297.07 | $500,000.00 | $8,657,353.17 |
| 71 | $19,957,333.15 | $68,435,036.33 | 14.63 | 35 | $34,725,146.18 LP | | DC | Determined | Yes | $19,257,336.15 | $500,000.00 | $8,575,800.00 |
| 72 | $20,000,000.00 | $20,500,313.40 | 0.36 | 30 | $0.00 | | BRITISH VIRGIN ISLANDS | Determined | No | $20,000,000.00 | $500,000.00 | $8,575,800.00 |
| 73 | $20,000,000.00 | $20,931,921.99 | 0.42 | - | $0.00 | | FL | Determined | No | $20,000,000.00 | $500,000.00 | $8,644,172.55 |
| 74 | $20,159,454.63 | $20,992,986.29 | 9.72 | 17 | $9,850,000.00 | | FL | Determined | No | $20,159,454.63 | $500,000.00 | $9,335,105.38 |
| 75 | $21,770,809.38 | $37,444,809.33 | 10.57 | - | $0.00 | | NY | Determined | No | $21,770,809.38 | $500,000.00 | $9,335,105.38 |
| 76 | $22,522,000.00 | $32,548,482.96 | 3.93 | 5 | $7,675,000.00 LLC | | VA | Determined | Yes | $26,522,000.00 | $500,000.00 | $9,877,747.13 |
| 77 | $22,598,828.11 | $67,196,924.95 | 11.10 | 54 | $35,085,275.00 | | NY | Determined | Yes | $23,036,328.11 | $500,000.00 | $9,841,902.71 |
| 78 | $22,998,653.67 | $41,639,283.43 | 12.95 | 7 | $3,920,000.00 | | DC | Determined | No | $22,998,653.67 | $500,000.00 | $9,852,170.00 |
| 79 | $23,000,000.00 | $29,994,430.31 | 4.67 | 2 | $3,000,000.00 | | CA | Determined | No | $28,000,000.00 | $500,000.00 | $9,852,170.00 |
| 80 | $23,940,000.00 | $43,194,006.85 | 8.80 | 54 | $105,625,000.00 | | NJ | Determined | Yes | $19,297,722.82 | $500,000.00 | $6,988,299.71 |
| 81 | $24,425,105.17 | $38,039,274.79 | 6.46 | 625 | $14,574,557.15 Corp. | | BAHAMAS | Determined | Yes | $29,572,998.64 | $500,000.00 | $12,680,606.09 |
| 82 | $24,523,164.00 | $29,097,840.23 | 1.89 | 25 | $4,095,000.00 LLC | | NY | Determined | Yes | $24,523,164.00 | $0.00 | $10,515,197.49 |
| 83 | $25,000,000.35 | $27,537,056.05 | 1.48 | - | $0.00 | | FL | Determined | No | $25,000,000.35 | $500,000.00 | $10,719,750.15 |
| 84 | $26,876,764.26 | $44,507,020.84 | 5.83 | 8 | $12,850,000.00 | | NV | Determined | No | $26,876,764.26 | $500,000.00 | $11,524,487.75 |
| 85 | $27,356,790.00 | $30,634,375.89 | 1.88 | 1 | $2,910,000.00 | | PA | Determined | No | $27,356,790.00 | $500,000.00 | $11,730,292.25 |
| 86 | $29,950,000.00 | $39,372,278.99 | 14.92 | 5 | $8,760,000.00 | | NJ | Determined | No | $29,950,000.00 | $500,000.00 | $12,842,260.50 |
| 87 | $31,400,000.00 | $73,535,872.05 | 13.53 | 8 | $13,600,000.00 | | NY | Determined | No | $31,400,000.00 | $500,000.00 | $13,464,008.00 |
| 88 | $33,383,089.44 | $44,818,405.17 | 8.57 | 6 | $2,800,830.66 | | FL | Determined | No | $33,383,089.44 | $500,000.00 | $14,314,324.92 |
| 89 | $33,763,004.00 | $73,696,937.20 | 13.06 | 5 | $5,200,000.00 NPO | | MN | Determined | Yes | $35,853,004.00 | $500,000.00 | $15,287,651.58 |
| 90 | $34,501,515.51 | $41,929,414.74 | 8.99 | 727 | $8,528,240.49 Indiv. | | UNITED KINGDOM | Determined | Yes | $35,091,816.51 | $500,000.00 | $15,083,343.15 |
| 91 | $35,000,000.00 | $52,272,264.03 | 4.76 | - | $0.00 | | NJ | Determined | No | $35,000,000.00 | $500,000.00 | $15,007,650.00 |
| 92 | $35,000,000.00 | $14,429,156.94 | 4.15 | - | $0.00 | | CA | Determined | No | $35,000,000.00 | $500,000.00 | $15,002,650.00 |
| 93 | $36,307,299.69 | $153,819,492.58 | 10.28 | 1,076 | $179,893,211.58 Investmt Co. | | BRITISH VIRGIN ISLANDS | Determined | Yes | $65,267,299.69 | $500,000.00 | $27,935,985.43 |
| 94 | $36,728,168.21 | $49,532,366.02 | 1.90 | 27 | $8,162,450.00 LLC | | NY | Determined | Yes | $26,728,168.21 | $0.00 | $15,748,671.23 |
| 95 | $37,000,000.00 | $43,798,195.07 | 2.53 | - | $0.00 | | MN | Deemed Determined | Yes | $43,132,000.00 | $500,000.00 | $18,434,570.29 |
| 96 | $39,123,000.00 | $42,898,978.96 | 1.77 | 182 | $0.00 Foreign Corp. | | SWITZERLAND | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 97 | $38,741,922.30 | $45,165,600.75 | 4.65 | - | $0.00 | | MD | Determined | No | $36,741,922.30 | $500,000.00 | $15,512,148.86 |
| 98 | $40,000,000.00 | $40,687,283.52 | 0.19 | - | $0.00 LP | | MD | Determined | Yes | $40,000,000.00 | $500,000.00 | $17,151,600.00 |
| 99 | $43,330,766.45 | $60,245,715.12 | 9.56 | 817 | $25,574,812.53 Indiv. | | UNITED KINGDOM | Determined | Yes | $44,353,566.45 | $500,000.00 | $19,018,537.23 |
| 100 | $45,609,778.46 | $101,496,759.93 | 10.47 | 173 | $26,941,101.01 | | FL | Determined | No | $45,609,778.46 | $500,000.00 | $19,557,016.90 |
| 101 | $48,600,000.00 | $53,266,638.84 | 1.92 | 1 | $5,000,000.00 | | MA | Determined | No | $48,600,000.00 | $500,000.00 | $20,839,194.00 |
| 102 | $49,100,000.00 | $0.00 | 0.03 | - | $0.00 | | CAYMAN ISLANDS | Determined | No | $49,100,000.00 | $500,000.00 | $21,053,569.00 |
| 103 | $55,590,112.68 | $238,455,305.06 | 11.50 | 1,182 | $211,359,887.22 LP | | BERMUDA | Deemed Determined | Yes | $60,590,112.68 | $500,000.00 | $24,659,234.42 |
| 104 | $66,249,759.00 | $133,576,322.15 | 3.44 | 451 | $20,073,000.00 Int'l Bus. Co. | | ST LUCIA | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 105 | $118,082,000.00 | $189,128,047.45 | 5.65 | 695 | $133,135,000.00 Banking | | BRITISH VIRGIN ISLANDS | Determined | No | $0.00 | $0.00 | $0.00 |
| 106 | $136,480,500.00 | $215,967,370.93 | 7.04 | 23 | $91,363,000.00 | | MD | Deemed Determined | No | $136,480,500.00 | $500,000.00 | $58,521,473.60 |

Exhibit 1: Response to Request #1 of August 30, 2013 Letter

| ID | Net Equity | 11/30/2008 Fictitious Equity | Term of Acct Relationship (Years)[1] | Aggregate W/D | Aggregate Value of W/D | Type of Entity[2] | Domicile[3] | Current Status of Claim | Settlement (Y/N) | Allowed Amount[4] | SIPC Distribution | FCP to Claimant |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 107 | $138,324,742.00 | $357,739,733.97 | 13.85 | 8 | $25,150,300.00 | LLC | NY | Determined | Yes | $156,857,924.52 | $500,000.00 | $68,349,787.49 |
| 108 | $140,439,146.45 | $314,053,923.63 | 16.06 | 92 | $281,122,629.00 | LP | NY | Determined | Yes | $35,000,000.00 | $500,000.00 | $15,897,050.00 |
| 109 | $145,053,402.31 | $215,615,947.48 | 2.11 | 265 | $40,000,000.00 | BVI Bus. Co. | BRITISH VIRGIN ISLANDS | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 110 | $162,099,980.00 | $182,491,890.24 | 2.28 | 224 | $95,150,000.00 | Banking | LUXEMBOURG | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 111 | $153,700,000.00 | $308,082,181.62 | 8.36 | 11 | $119,700,000.00 | LP | NY | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 112 | $174,107,053.98 | $308,511,739.21 | 8.36 | 896 | $52,792,946.02 | Mutual Fund | CAYMAN ISLANDS | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 113 | $215,297,030.00 | $271,265,062.05 | 2.44 | 9 | $97,800,000.00 | LP | CT | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 114 | $220,885,141.79 | $734,956,539.95 | 12.94 | 1,336 | $535,554,858.21 | Int'l Bus. Co. | BRITISH VIRGIN ISLANDS | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 115 | $226,018,404.07 | $1,351,885,900.21 | 15.93 | 35 | $748,344,709.00 | LP | NY | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 116 | $250,671,000.00 | $349,007,258.01 | 5.50 | 624 | $149,420,000.00 | Banking | BERMUDA | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 117 | $255,234,226.87 | $403,394,134.41 | 6.61 | 756 | $40,062,463.79 | Int'l Bus. Co. | BRITISH VIRGIN ISLANDS | Determined | Yes | $298,734,226.87 | $500,000.00 | $126,894,249.14 |
| 118 | $255,600,000.00 | $261,170,208.48 | 0.74 | 77 | $0.00 | Banking | LUXEMBOURG | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 119 | $260,519,425.00 | $414,017,644.69 | 3.26 | 475 | $488,300,000.00 | Co. Sub. | LUXEMBOURG | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 120 | $281,824,315.23 | $733,520,822.37 | 12.04 | 1,186 | $252,244,952.07 | Int'l Bus. Co. | JERSEY | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 121 | $311,160,517.01 | $1,100,277,442.97 | 12.45 | 1,301 | $735,536,905.92 | Banking | IRELAND | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 122 | $392,538,759.03 | $730,244,947.24 | 11.62 | 1,157 | $74,765,250.97 | Banking | BRITISH VIRGIN ISLANDS | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 123 | $441,000,000.00 | $490,876,411.39 | 1.59 | 166 | $93,000,000.00 | Investmt Co. | BRITISH VIRGIN ISLANDS | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 124 | $507,434,522.87 | $1,073,151,344.67 | 7.27 | 814 | $619,287,477.13 | LP | CAYMAN ISLANDS | Determined | Yes | $507,434,522.87 | $500,000.00 | $217,582,049.06 |
| 125 | $540,789,800.00 | $606,659,533.62 | 5.66 | 677 | $344,050,000.00 | Int'l Bus. Co. | CAYMAN ISLANDS | Determined | Yes | $755,789,800.00 | $500,000.00 | $324,075,194.10 |
| 126 | $541,660,194.77 | $3,247,733,777.14 | 15.15 | 1,856 | $3,946,907,314.47 | Int'l Bus. Co. | BRITISH VIRGIN ISLANDS | Determined | Yes | $230,000,000.00 | $500,000.00 | $98,621,700.00 |
| 127 | $578,862,952.73 | $2,714,140,684.49 | 14.78 | 1,503 | $406,997,047.27 | Int'l Bus. Co. | BRITISH VIRGIN ISLANDS | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 128 | $762,483,766.35 | $1,299,399,404.66 | 4.72 | 577 | $751,566,000.00 | Investmt Co. | LUXEMBOURG | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 129 | $1,177,316,492.75 | $1,894,086,134.64 | 4.70 | 536 | $567,800,000.00 | Banking | CAYMAN ISLANDS | Deemed Determined | No | $0.00 | $0.00 | $0.00 |
| 130 | $1,442,608,674.88 | $2,919,834,627.74 | 11.87 | 1,169 | $224,657,225.12 | | BAHAMAS | Determined | Yes | $1,570,108,675.00 | $500,000.00 | $673,246,898.73 |
| 131 | $1,647,687,625.00 | $2,346,123,780.12 | 14.93 | 29 | $395,390,000.00 | LP | NY | Determined | Yes | $2,447,687,625.00 | $500,000.00 | $1,049,543,976.73 |

Notes:

1. "Term of Acct Relationship (Years)" calculated by taking the date of first cash transaction and subtracting from December 11, 2008.

2. "Type of Entity" data extracted from complaints filed by the Trustee against defendants on this schedule. This information is available for 50 of the 131 accounts included in this schedule. This information is not available for 81 of the 131 accounts because no complaint was filed for these 81 accounts.

3. "Domicile" information is the address reflected in BLMIS Books & Records at filing date, except for IDs 9, 18, and 95. The address for these accounts is extracted from the claim form.

4. "Allowed Amount" represents the Net Equity of each account as of the filing date or as adjusted by a settlement.

Exhibit 3: Response to Request #5 of August 30, 2013 Letter

### Data Provided on September 7, 2010

| Category | Account Count | (Aug 23, 2010) |
|---|---|---|
| 1 - Up to $999K | 1,204 | $381,921,324.59 |
| 2 - $1M to $2.99M | 626 | $1,096,526,388.57 |
| 3 - $3M to $4.99M | 198 | $754,648,856.41 |
| 4 - $5M to $9.99M | 153 | $1,027,403,169.73 |
| 5 - $10M and + | 138 | $14,026,555,101.15 |
| Grand Total | 2,319 | $17,287,052,840.45 |

### Data Current as of 8/31/2013

| Category | Account Count | Allowed Amount[1] | SIPC Committed | Fund of Customer Property Distributions (FCP) | SIPC Committed + FCP | To Satisfy Amount | Accounts Satisfied by SIPC Committed | Accounts Satisfied by SIPC Committed + FCP | To Satisfy Accounts |
|---|---|---|---|---|---|---|---|---|---|
| **Allowed Accounts** | | | | | | | | | |
| 1 - Up to $999K | 1,184 | $388,335,653.13 | $319,677,373.62 | $62,790,933.90 | $382,468,307.52 | $5,867,345.61 | 879 | 227 | 78 |
| 2 - $1M to $2.99M | 577 | $1,005,725,056.58 | $286,000,000.00 | $431,244,847.13 | $717,244,847.13 | $288,480,209.45 | - | - | 577 |
| 3 - $3M to $4.99M | 170 | $654,804,021.20 | $83,000,000.00 | $280,773,416.30 | $363,773,416.30 | $291,030,604.90 | - | - | 170 |
| 4 - $5M to $9.99M | 144 | $961,592,627.44 | $69,000,000.00 | $412,321,302.74 | $481,321,302.74 | $480,271,324.70 | - | - | 144 |
| 5 - $10M and + | 107 | $8,090,899,032.70 | $51,000,000.00 | $3,469,296,596.24 | $3,520,296,596.24 | $4,570,602,436.46 | - | - | 107 |
| Sub-Total | 2,182 | $11,101,356,391.05 | $808,677,373.62 | $4,656,427,096.30 | $5,465,104,469.92 | $5,636,251,921.13 | 879 | 227 | 1,976 |
| **Deemed Determined Accounts** | | | | | | | | | |
| Category | Account Count | Net Equity | | | | | | | |
| 1 - Up to $999K | 55 | $18,033,663.32 | | | | | | | |
| 2 - $1M to $2.99M | 18 | $29,361,351.73 | | | | | | | |
| 3 - $3M to $4.99M | 10 | $37,393,496.65 | | | | | | | |
| 4 - $5M to $9.99M | 8 | $52,400,477.43 | | | | | | | |
| 5 - $10M and + | 24 | $6,319,622,970.85 | | | | | | | |
| Sub-Total | 115 | $6,456,811,959.98 | | | | | | | |
| **Grand Total** | 2,297 | $17,558,168,351.03 | | | | | | | |

Notes:
1. The data provided for the 2,182 accounts with an allowed claim is based on their allowed amount.

Exhibit 4: Response to Request #5 of August 30, 2013 Letter

| Category | Account Count | Allowed Amount[1] | Data Current as of 8/31/2013 ||||| Hypothetical 4th Distribution of $1B[2,3] |||
|---|---|---|---|---|---|---|---|---|---|---|
| | | | SIPC Committed | Fund of Customer Property Distributions (FCP) | SIPC Committed + FCP | To Satisfy Amount | Accounts Satisfied by SIPC Committed | Accounts Satisfied by SIPC Committed + FCP | To Satisfy Accounts | Fund of Customer Property Distributions | SIPC Subrogation | Change in Accounts Satisfied by SIPC | Change in Accounts Satisfied by SIPC + FCP | Change in To Satisfy Accounts |
| **Allowed Accounts** | | | | | | | | | | | | | | |
| 1 - Up to $999K | 1,184 | $388,395,653.13 | $319,677,373.62 | $62,790,933.90 | $382,468,307.52 | $5,867,345.61 | 879 | 227 | 78 | $1,867,144.27 | $16,905,001.29 | | | (33) |
| 2 - $1M to $2.99M | 577 | $1,005,725,056.58 | $286,000,000.00 | $431,244,847.13 | $717,244,847.13 | $288,480,209.45 | | | 577 | $49,616,749.24 | | | | |
| 3 - $3M to $4.99M | 170 | $654,804,021.20 | $83,000,000.00 | $280,773,416.30 | $363,773,416.30 | $291,030,604.90 | | | 170 | $31,653,226.38 | | | | |
| 4 - $5M to $9.99M | 144 | $961,592,627.44 | $69,000,000.00 | $412,321,302.74 | $481,321,302.74 | $480,271,324.70 | | | 144 | $40,463,397.01 | | | | |
| 5 - $10M and + | 107 | $8,090,839,032.70 | $51,000,000.00 | $3,469,296,596.24 | $3,520,296,596.24 | $4,570,602,436.46 | | | 107 | $391,114,059.24 | | | | |
| **Sub-Total** | 2,182 | $11,101,356,391.05 | $808,677,373.62 | $4,656,427,096.30 | $5,465,104,469.92 | $5,636,251,921.13 | 879 | 227 | 1,076 | $519,734,566.75 | $16,905,001.29 | | | (33) |
| **Deemed Determined Accounts** | | | | | | | | | | | | | | |
| Category | Account Count | Net Equity | | | | | | | | | | | | |
| 1 - Up to $999K | 55 | $18,033,663.32 | | | | | | | | | | | | |
| 2 - $1M to $2.99M | 18 | $29,361,351.73 | | | | | | | | | | | | |
| 3 - $3M to $4.99M | 10 | $37,393,495.65 | | | | | | | | | | | | |
| 4 - $5M to $9.99M | 8 | $52,409,477.43 | | | | | | | | | | | | |
| 5 - $10M and + | 24 | $6,319,622,970.85 | | | | | | | | | | | | |
| **Sub-Total** | 115 | $6,456,811,959.98 | | | | | | | | | | | | |
| **Grand Total** | 2,297 | $17,558,168,351.03 | | | | | | | | | | | | |

Notes:
1. The data provided for the 2,182 accounts with an allowed claim is based on their allowed amount.
2. This hypothetical 4th Distribution of $1B assumes the Trustee maintains all current reserves for Time Based Damages, Deemed Determined, and Settlement related reserves.
3. Details & Breakout of $1B hypothetical 4th Distribution:
   1. Numerator: $1,000,000,000.00
   2. Denominator: $20,683,128,614.97 (Time Based Damages Denominator)
   3. Shares: $0.04834 (Numerator / Denominator)
   4. Amount Distributed to 2,182 Allowed Accounts: $519,734,566.75
   5. Amount held in reserve from this hypothetical 4th distribution is: $480,265,433.25 (Reserves are for Time Based Damages, Deemed Determined Accounts, and SIPC Subrogation).

Exhibit 2: Response to Request #3 of August 30, 2013 Letter

| Category | Count of Allowed Accounts[1] | Allowed Amount | SIPC Committed Amount | Total Distributions from Fund of Customer Property | Total SIPC Committed Plus Distributions 1-3 | Subrogation Payment to SIPC[2] |
|---|---|---|---|---|---|---|
| Fully Satisfied by SIPC Advances | 879 | $182,177,373.62 | $182,177,373.62 | $0.00 | $182,177,373.62 | $77,197,337.35 |
| Fully Satisfied by SIPC Advances + FCP Distributions | 227 | $153,870,424.48 | $113,500,000.00 | $40,370,424.50 | $153,870,424.50 | $25,607,674.88 |
| Partially Satisfied by SIPC Advances + FCP Distributions | 1,076 | $10,765,308,592.95 | $513,000,000.00 | $4,616,056,671.81 | $5,129,056,671.81 | $0.00 |
| TOTALS | 2,182 | $11,101,356,391.05 | $808,677,373.62 | $4,656,427,096.30 | $5,465,104,469.92 | $102,805,012.23 |

Notes:

1. This analysis does not include the 115 Deemed Determined accounts that are in litigation with the Trustee and have not had their claim allowed. (See exhibit 3 for additional details on the deemed determined accounts).

2. An additional $918,498.83 of SIPC Subrogation is held in reserve related to accounts that have not returned the Partial Assignment and Release (PAR) or returned the PAR after the SIPC subrogation payment was made.