**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman hchaitman@bplegal.com
Peter W. Smith psmith@bplegal.com
Julie Gorchkova jgorchkova@bplegal.com
45 Broadway
New York, New York 10006
Telephone (212) 599-3322

*Attorneys for Defendants Listed on*
*Exhibits A & B Attached to Notice of*
*Motions to Dismiss*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>DEFENDANTS LISTED ON EXHIBITS A and B ATTACHED TO THE NOTICE OF MOTIONS TO DISMISS,<br><br>        Defendants. | Adv. Pro. Nos. listed on Exhibits A and B to Notices of Motion to Dismiss |

### DEFENDANTS' OMNIBUS REPLY BRIEF
### IN FURTHER SUPPORT OF MOTIONS TO DISMISS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.    THE TRUSTEE'S FINANCIAL STAKE IN HIS QUASI-
GOVERNMENTAL DECISIONS VIOLATES THE DEFENDANTS' DUE
PROCESS RIGHTS .................................................................................................... 1

    A.  The Trustee is a Quasi-Governmental Actor ........................................................ 2

    B.  The Disinterestedness Hearing Did Not Constitute Sufficient Notice and
Opportunity to be Heard Because the Trustee Withheld Material
Information Concerning His Compensation from the BLMIS Customers
and the Court ................................................................................................... 5

    C.  The Trustee's Position that His Compensation Has No Bearing on the
Performance of His Duties is Incredible and Irrelevant .................................... 6

    D.  The Trustee Has Admitted He Receives as Compensation a Percentage of
the Fees Paid by SIPC to B&H ........................................................................ 7

II.    THE TRUSTEE HAS NO AUTHORITY UNDER SIPA § 78fff-2(c)(3) TO
PURSUE THESE AVOIDANCE ACTIONS ............................................................. 8

III.    THE TRUSTEE CANNOT RELY ON STATUTORY AUTHORIZATION
TO ESTABLISH ARTICLE III INJURY .................................................................. 10

    A.  The Trustee Cannot Rely on Statutory Authorization to Plead Article III
Standing ........................................................................................................ 10

    B.  The *In Pari Delicto* Defense Bars the Trustee's Actions .................................... 11

IV.    THE TRUSTEE'S CALCULATION OF DEFENDANTS' CLAWBACK
EXPOSURE DEPRIVES THE DEFENDANTS OF AN INTEREST IN
PROPERTY IN VIOLATION OF THE DUE PROCESS CLAUSE ........................ 12

V.    THE TRUSTEE HAS FAILED TO PLEAD THAT THE TRANSFERS
WERE MADE WITH ACTUAL INTENT TO DEFRAUD CREDITORS ............... 14

VI.    THE TRUSTEE'S CLAIMS TO AVOID OBLIGATIONS MUST BE
DISMISSED .............................................................................................................. 16

    A.  SIPA Does Not Authorize Avoidance of Obligations .......................................... 16

    B.  The Complaints Fail to Identify the Obligations to be Avoided ........................... 17

    C.  The Trustee's Method of Avoiding Obligations is Inconsistent with the
Law ............................................................................................................... 17

VII.    SOME OF THE COMPLAINTS IMPROPERLY COMBINE ACCOUNTS
AND FAIL TO ADEQUATELY PLEAD THE CLAIMS ........................................ 18

VIII.    THE SUBSEQUENT TRANSFEREE CLAIMS MUST BE DISMISSED ............... 19

IX.    THE TRUSTEE CANNOT DISALLOW UNIDENTIFIED CLAIMS OF
ACCOUNTS NOT SUBJECT TO AVOIDANCE ACTIONS ................................. 21

CONCLUSION........................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*, 1998 WL 551972 (Bankr. S.D.N.Y. Aug. 24, 1998) ................................................................................................................5

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011) ............................12

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004)..........................................................................................9

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284 (S.D.N.Y. 2010)..............................................15

*Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480 (D.Conn. 2002)........8

*Dillon v. Axxsys Int'l, Inc.*, 185 Fed. App'x 823 (11th Cir. 2006).................................15

*In re Dinova*, 212 B.R. 437 (2d Cir. B.A.P. 1997) ..........................................................6

*Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008) .............................................................13

*In re Dreier LLP*, 452 B.R. 451 (Bankr. S.D.N.Y. 2011)........................................20, 21

*Drenis v. Haligiannis*, 452 F. Supp.2d 418 (S.D.N.Y. 2006) ........................................15

*Fannie Mae v. Olympia Mortg. Corp.*, 2006 WL 2802093 (E.D.N.Y. Sept. 28, 2006) ............................................................................................................................17

*Germain v. The Connecticut National Bank*, 988 F. 2d 1323 (2d Cir. 1993) .................5

*Gibson v. Berryhill*, 411 U.S. 564 (1973) .......................................................................6

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) ...................................12

*Handelman v. Weiss*, 368 F. Supp. 258 (S.D.N.Y. 1973)...........................................3, 4

*In Picard v. Taylor (In re Park South Securities, LLC)*, 326 B.R. 505 (Bankr. S.D.N.Y. 2005) ....................................................................................................11, 12

*In re Int'l Mgmt. Assocs., LLC*, 2009 WL 6506657 (Bankr. N.D. Ga. Dec. 1, 2009) ............................................................................................................................15

*Kmart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988).........................................................8

*In re Lloyd Securities, Inc.*, 163 B.R. 242 (Bankr. E.D. Pa. 1994).................................3

*Mathews v. Eldridge,* 424 U.S. 319 (1976)................................................................6

*Miller v. Austin*, 72 B.R. 893 (S.D.N.Y. 1987)........................................................10

*Picard v. Chais*, 445 B.R. 206 (Bankr. S.D.N.Y. 2011).........................................23

*Picard v. Cohmad Sec. Corp.*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011).....................23

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr.
    S.D.N.Y. 2011) .............................................................................................19, 20, 23

*Picard v. Merkin*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010)...............................19, 20, 21

*Picard v. Roman*, 12 Civ. 2318 (JSR), 2012 WL 5816849 (S.D.N.Y. Nov. 13,
    2012) ...............................................................................................................11

*In re Plaza Hotel Corp.,* 111 B.R. 882 (Bankr. E.D. Cal. 1990) ............................6

*Raines v. Byrd,* 521 U.S. 811 (1997) ....................................................................12

*Rosenman Family, LLC v. Picard*, 395 F. App'x 766 (2d Cir. 2010)........................11

*Rothman v. Gregor,* 220 F.3d 81 (2d Cir. 2000)....................................................9

*Scholas v. Lehmann*, 56 F.3d 750 ........................................................................15

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    499 B.R. 416 (S.D.N.Y. 2013)......................................................................13, 17

*SIPC v. Barbour*, 421 U.S. 412 (1975) .............................................................4, 16

*United Church or the Medical Center v. Medical Center Commission*, 689 F.2d
    693 (7th Cir. 1982)...........................................................................................6

*Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976) ...........................3

*U.S. ex rel. Yellowtail v. Little Horn State Park*, 828 F. Supp. 780 (D. Mont.
    1992) ...............................................................................................................12

## Statutes & Rules

11 U.S.C. § 502(d) ..............................................................................................22, 23

11 U.S.C. § 548(a)(1)..............................................................................................17

15 U.S.C. 78fff-2(c)(3) ..........................................................................................16

15 U.S.C. § 78bbb.................................................................................................16

15 U.S.C. § 78ccc(a)(1) ........................................................................................3

15 U.S.C. § 78ccc(c)(2) ........................................................................................4

15 U.S.C. § 78fff-1(c) ........................................................................................10

15 U.S.C. § 78fff-1(d)(3) ......................................................................................9

15 U.S.C. § 78fff-2(b) ......................................................................................9, 22

15 U.S.C. § 78fff-2(c)(1)(D) ................................................................................9

15 U.S.C. § 78fff-2(c)(3) ..........................................................................8, 16, 17

15 U.S.C. § 78fff-3(a) ........................................................................................22

15 U.S.C. §78fff-4(c) .........................................................................................22

15 U.S.C. § 78fff(a)(1)(B) ..................................................................................22

15 U.S.C. § 78fff(b) ...........................................................................................16

15 U.S.C. § 78fff-b .............................................................................................16

15 U.S.C. § 78iii(e)(1) ..........................................................................................4

15 U.S.C. § 78kkk(a) ..........................................................................................10

Fed. R. Bankr. P. 7012 ..........................................................................................1

**Other Authorities**

Carlyn Kolker and Christopher Scinta, "Madoff Trustee Picard May Take Five
    Years to Pay Back Investors" dated January 21, 2009, at Bloomberg.com, at 1 ......................2

Collier on Bankruptcy § 548.11[1][a][ii] (16th ed. 2012) ......................................17, 18

## INTRODUCTION

Defendants submit this omnibus reply brief in further support of their motions to dismiss the Complaints filed in their respective adversary proceedings, pursuant to Rule 12(b)(1), (2), and (6) of the Rules made applicable by Rule 7012 of the Bankruptcy Rules.[1] Defendants also join in and adopt the arguments asserted in pending motions to dismiss filed in the innocent investor BLMIS adversary proceedings listed in Appendix A to the Trustee's February 20, 2014 letter [Case No.: 08-01789, Doc. 5678].

## ARGUMENT

Given the page limitations, Defendants cannot reply to all of the arguments made by the Trustee and by SIPC in their opposition briefs. However, they are by no means conceding any of their arguments and will address each of them at oral argument.

## I. THE TRUSTEE'S FINANCIAL STAKE IN HIS QUASI-GOVERNMENTAL DECISIONS VIOLATES THE DEFENDANTS' DUE PROCESS RIGHTS

Relying on United States Supreme Court cases, the Defendants argue that the Trustee's percentage interest in the unprecedented legal fees paid to his law firm violates the Defendants' right to due process of law. Put very simply, the Trustee gets a percentage of the fees paid to his firm – now exceeding $500 million – so that he is enriched by every single fraudulent transfer case he files. His obvious self-interest unconstitutionally clouds his judgment – particularly when, by law, he is required to be a fiduciary to all BLMIS customers and put their interests ahead of his own. (Moving Br. at 5-8.) Although the Trustee continues to conceal the actual **percentage** he receives, neither the Trustee nor SIPC denies that he **does indeed receive** as compensation from B&H a percentage of the fees paid to B&H by SIPC. Moreover, the fact that

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning ascribed in the Defendants' Omnibus Memorandum of Law in Support of Motions to Dismiss (the "Moving Brief").

he and SIPC have refused to disclose the precise percentage he receives is evidence that they recognize that his compensation is violative of Defendants' due process rights.

### A.    The Trustee is a Quasi-Governmental Actor

SIPC and the Trustee argue that the Trustee is not a governmental or a quasi-governmental actor. (Tr. Br. at 11-12; SIPC Br. 3-4.)  The Trustee focuses on the fact that he is no longer the special master appointed by the Department of Justice to distribute funds forfeited to the United States by Madoff co-conspirators Carl Shapiro and the Picower parties.  This is a red-herring for two reasons.  (Tr. Br. at 11-12.)  First, at the time he instituted 1,000 fraudulent transfer actions against innocent BLMIS customers, he was the special master appointed by the Department of Justice, and he retained that position for more than two years while he enjoyed his percentage of the fees paid to prosecute the 1,000 fraudulent transfer actions.

Second, the argument is demonstrably false.  While SIPC argues that "the Trustee does not make decisions for SIPC[,]" (SIPC Br. at 4), their argument is contradicted by former-SEC Chairman Mary Shapiro, SIPC's President Stephen Harbeck, and Congressman Scott Garrett, the Chairman of the Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises, of the House Financial Services Committee (the "Subcommittee").  Ms. Shapiro and Mr. Harbeck have both separately publicly recognized the Trustee as a decision-maker for SIPC, and Ms. Shapiro has in fact acknowledged that it is the Trustee – not the SEC – who makes the decision to sue innocent customers as fraudulent transferees.  (10/31/13 Chaitman Decl., Ex. 3[2]; *see also* Carlyn Kolker and Christopher Scinta, "Madoff Trustee Picard May Take Five Years to Pay Back Investors" dated January 21, 2009, at Bloomberg.com, at 1).

---

[2] References to the "10/31/13 Chaitman Decl." refer to the October 31, 2013 declaration of Helen Davis Chaitman, Esq., previously submitted to the Court in support of the motions.

Moreover, in 2011, Chairman Garrett and other Representatives launched an investigation into the Trustee's conduct with respect to the liquidation of BLMIS, as well as his and B&H's compensation.   (February 21, 2014 Declaration of Helen Davis Chaitman, Esq. (the "2/21/14 Chaitman Decl."), Ex. 1 at 2.)  They did so because the Subcommittee has direct supervision of SIPC and of SIPA liquidations, which are managed by SIPC-appointed trustees.   Indeed, the Representatives of the Subcommittee felt that the specific economic arrangement the Trustee has with B&H should be "publicly available" given that "the Trustee's appointment, powers, and service all derive from [SIPA], a public law[.]"  (2/21/14 Chaitman Decl., Ex. 2 at 7.)

The Trustee and SIPC argue that the Trustee cannot be a quasi-governmental actor since SIPC was established by Congress as a nonprofit corporation, not an agency or establishment of the United States Government. (Tr. Br. at 11; SIPC Br. at 4.)  But courts recognize that SIPC employees represent governmental interests despite the fact that SIPC is not technically a governmental agency.  *See e.g., Handelman v. Weiss*, 368 F. Supp. 258, 263 (S.D.N.Y. 1973) ("The attorney for SIPC is in many ways a representative of governmental interests."); *Woods v. Covington County Bank*, 537 F.2d 804, 816-17 (5th Cir. 1976); *In re Lloyd Securities, Inc.*, 163 B.R. 242, 253 (Bankr. E.D. Pa. 1994) (SIPC "is . . . not a totally private body, entirely independent from governmental attachment.").  Therefore, it is irrelevant that SIPA § 78ccc(a)(1) – which is the sole authority on which SIPC and the Trustee rely – categorizes SIPC as a nonprofit corporation.

The *Handelman* court rejected the argument that SIPC and Trustee make here, and this Court is bound by that decision.  In *Handelman*, the court barred an attorney who formally assisted another attorney in the representation of a SIPA trustee from representing a plaintiff, in a later litigation, related to the liquidation that he worked on as the SIPA trustee's counsel.  In

reaching that decision, the court relied upon the Disciplinary Rule that prohibits a lawyer from accepting private employment in a matter in which he had substantial responsibility while he was a public employee, like the Trustee and SIPC. The plaintiffs' attorneys unsuccessfully made the same argument that the Trustee and SIPC make here:  that counsel was not a public, *i.e.*, government employee and, hence, this rule did not apply.  *See Handelman*, 368 F. Supp. at 263.  The court rejected this argument, holding that, while counsel "may not technically have been a public employee[,]" disqualification was warranted because "[t]he attorney for SIPC is in many ways a representative of governmental interests."  *Id*.  The *Handelman* court's analysis is binding on this Court:

> SIPA was enacted in response to the financial crisis of 1969-70 which had led to the failure of several brokerage firms and resulted in customers losses in excess of $130 million.  As part of its efforts to protect the public investor, Congress created SIPC, a non-profit corporation whose membership consists of registered brokers and dealers, and members of the national securities exchange. SIPC administers an insurance program designed to protect the customers of its members. SIPC is not a federal agency and cannot regulate its members; it is, however, responsible for helping to develop procedures designed to detect the approaching financial difficulties of its members (15 U.S.C. § 78iii(e)(1)), and it has made a practice of securing detailed financial reports on certain aspects of debtors' businesses. 73 Colum.L.Rev., *supra,* note 9 at 820. The Board of Directors is appointed by the Government: one by the Secretary of the Treasury; one by the Federal Reserve Board; and five by the President with the advice and consent of the Senate. 15 U.S.C. § 78ccc(c)(2).

*Id.* (footnotes omitted).

As the Supreme Court recognized in *SIPC v. Barbour,* SIPC has the characteristics of a governmental entity.  Customers of a broker-dealer have no implied private right of action under SIPA to compel SIPC to exercise its statutory authority.  *See* 421 U.S. 412, 420 (1975).  Moreover, SIPC's actions are substantially scrutinized by the Government.  *See id.* (noting that the SEC has substantial supervision over SIPC's operations; SIPC is required to report to Congress and the President; SIPC is required to provide its books and records to the SEC and the Comptroller

General).  Finally,  SIPC is protected by sovereign immunity.  *See In re Adler*, *Coleman Clearing Corp.*, 1998 WL 551972, *31 (Bankr. S.D.N.Y. Aug. 24, 1998)

The only way the Trustee can distinguish the Supreme Court cases on which Defendants rely is to argue that they do not involve due process violations **by a SIPA trustee**.  (Tr. Br. at 12, n. 16).  But, obviously, the Supreme Court was stating a rule of law that would apply to any person acting as a governmental or quasi-governmental actor.  If a town prosecutor violates the due process clause when he receives a percentage of the fines that he levies, the Trustee, too, violates the due process clause when he receives a percentage of the fees earned by B&H as a result of the Trustee's decision to file and prosecute 1,000 fraudulent transfer actions against innocent BLMIS customers.  (Moving Br. at 6.)

### B.    The Disinterestedness Hearing Did Not Constitute Sufficient Notice and Opportunity to be Heard Because the Trustee Withheld Material Information Concerning His Compensation from the BLMIS Customers and the Court

The Trustee assures this Court there are no procedural due process violations in connection with his conduct because "due process was afforded through notice and an opportunity to be heard at the hearing on disinterestedness of the Trustee and his counsel." (Tr. Br. at 14.)  But he fails to inform the Court that, at that time, he withheld from the Court and from the creditor body the fact that his contract with B&H entitles him to a percentage of the fees paid by SIPC to B&H. In fact, up until June 1, 2011, the Trustee repeatedly misrepresented to BLMIS customers and the Court that he does not receive any portion of the fees that B&H receives from SIPC.  (*See e.g.*, 10/31/13 Chaitman Decl., Ex. 1 at 14:15-21.)  The Trustee's concealment of that information is particularly unfortunate in light of  his fiduciary obligation to BLMIS customers, including the Defendants.  *See Adler, Coleman Clearing*, 1998 WL 551972 at *17 ("The parties agree that a SIPA trustee owes a fiduciary duty to the customers and creditors of a liquidating broker dealer akin to the fiduciary duty a bankruptcy trustee owes a debtor's estate and creditors"); *Germain v.*

*The Connecticut National Bank,* 988 F. 2d 1323, 1330 n. 8 (2d Cir. 1993).  Additionally, disclo-

sure of all material information is essential to the Court's duty to monitor the integrity of the

proceedings before it.  *See In re Plaza Hotel Corp.,* 111 B.R. 882, 891 (Bankr. E.D. Cal. 1990).

It is truly bizarre that the Trustee would conceal material information from the creditor body and

the Court and then argue that creditors and the Court are bound by the prior ruling –made in ig-

norance – concerning the Trustee's disinterestedness.

   The Trustee forgets that due process requires giving interested parties all material infor-

mation and a **meaningful** opportunity to present objections.  *See Mathews v. Eldridge,* 424 U.S.

319, 333 (1976) (the fundamental requirement of due process is the opportunity to be heard in a

meaningful manner); *accord In re Dinova*, 212 B.R. 437, 444 (2d Cir. B.A.P. 1997) ("Obviously

the purpose of 'notice and a hearing' is to enable parties to respond to facts and law tendered in

support of the motion.").  "To decide the adequacy of notice, '[c]ourts must look to the totality of

the circumstances[.]'"  *Dinova*, 212 B.R. at 443 (internal citation omitted).  One of the circum-

stances the courts consider is prejudice to the aggrieved party.  *See id.*  The Trustee's affirmative

misrepresentation, early in the case, of his compensation arrangement nullifies any suggestion

that Defendants have waived their right to object to his percentage compensation arrangement.

(Tr. Br. at 14.)

    **C.**    **The Trustee's Position that His Compensation Has No Bearing on the Per-
   formance of His Duties is Incredible and Irrelevant**

   As a result of this case, the Trustee will end up richer than Madoff ever was.  Thus, we

should not be surprised that he argues that his compensation "is not relevant to his ability to per-

form his job and satisfy his statutorily-mandated duties." (Tr. Br. at 15.)  No less a court than the

United States  Supreme Court has a different view.  *See* Moving Br. at 6; *see also Gibson v. Ber-

ryhill*, 411 U.S. 564 (1973); *United Church or the Medical Center v. Medical Center Commis-*

*sion*, 689 F.2d 693 (7th Cir. 1982).   Under those cases, the Defendants have been denied due

process of law because the Trustee, as a quasi-governmental officer, has made the decision to sue

the Defendants and enjoys a huge economic reward for having made that decision.

**D.**     **The Trustee Has Admitted He Receives as Compensation a Percentage of the Fees Paid by SIPC to B&H**

Despite his duty of absolute candor, the Trustee misleads the Court by suggesting that he

does not receive a percentage of the fees paid to B&H.  (Tr. Br. at 15-16.)  Yet he himself admit-

ted to Judge Lifland in open court that he receives a percentage of the fees.  He simply claimed

the percentage was not nearly 35 or 50 percent.  (10/31/13 Chaitman Decl., Ex. 2 at 32:20-23.)

As Ms. Chaitman explained to Judge Rakoff:

> MS CHAITMAN: What I stated in the objection to the fees is I have been told this was the case, and if it was the case, I felt it raised due process issues.
>
> At the argument, Mr. Picard stood up and said that the percentage he gets is no-where near what Ms. Chaitman said it was. So we now have Mr. Picard on the record in the transcript that we provided to your Honor admitting that he is paid a percentage of the fees paid to Baker & Hostetler, which is directly contrary to the affidavit which he submitted to the Court which gave the very, very strong im-pression that he doesn't even receive his compensation, the fees that are allocated to his time. For example, in a typical period, a four-month period or three-month period, Baker & Hostetler may receive $40 million, and Mr. Picard's proportion of that is 4 million, or in addition it's 4 million for Mr. Picard's time. What Mr. Pi-card said on the record -- and your Honor has the transcript -- is my percentage is nowhere near what Ms. Chaitman says it was.

(Cremona Decl., Ex. 4 at 12:23-13:15.)[3]  Although the Trustee may quibble about the percentage

he receives (Tr. Br. at 15-16), he has admitted he receives a percentage and that is the due pro-

cess violation.

Lastly, the Trustee argues that the district court already "rebuked" this argument.  (Tr. Br.

at 15.)  We do not comprehend the legal significance of a "rebuke," but, in any event, all Judge

---

[3] References to the "Cremona Decl." refer to the January 17, 2014 declaration of Nicholas Cremona, Esq., submitted in opposition to Defendants' Motions to Dismiss.

Rakoff did was deny Defendants' motion to withdraw the reference. He explicitly stated that he was "not dealing with the merits of any issue . . . , [but] . . .dealing with the question of whether there's a basis for withdrawal from reference." (Cremona Decl., Ex. 4 at 4:3-6.)

## II.    THE TRUSTEE HAS NO AUTHORITY UNDER SIPA § 78fff-2(c)(3) TO PURSUE THESE AVOIDANCE ACTIONS

SIPA § 78fff-2(c)(3) is clear: a SIPA trustee is allowed to bring avoidance actions **only** when there are insufficient funds in the estate to pay allowed customer claims and reimburse SIPC for the amounts paid in SIPC insurance. The Trustee has violated SIPA – and caused untold devastation to thousands of people –  by utilizing the avoidance provisions of the Code to sue approximately 6,000 innocent customers, including the Defendants, despite the fact that he is holding sufficient customer property to pay all allowed customer claims, inclusive of the SIPC advances. (Moving Br. at 8-11.) The Trustee and SIPC argue that the fact that the Trustee **now** has sufficient funds to satisfy all allowed claims is irrelevant.   (Tr. Br. at 17-18; SIPC Br. at 6) and that the Court should not enforce SIPA as written because that may lead to increased administrative costs or complicate the manner in which a liquidation is administered. SIPC has estimated that the administrative costs in this case will exceed $1 billion. Hence, SIPC cannot conceivably be serious in arguing that the administrative costs will be **increased** if the Trustee decides not to pursue fraudulent transfer claims against 6,000 innocent BLMIS customers.

Neither SIPC, nor this Court, has the power to re-write SIPA. It must be enforced as written. *See Kmart Corp. v. Cartier, Inc.,* 486 U.S. 281, 281 (1988) ("[i]f the statute is clear and unambiguous, courts must give effect to Congress' unambiguously expressed intent"); *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 491-92 (D.Conn. 2002) (holding that to read an exception into the plain language of a statute is to usurp the function of the legislature). If Congress intended for the SIPA filing date to be used as the date for the valuation of the

fund of customer property, it would have explicitly stated so in the statute. And, in fact, in other provisions of SIPA, where the filing date is the triggering event, that is precisely what Congress did. *See e.g.* SIPA § 78fff-2(b) ("For purposes of distributing securities to customers, all securities shall be valued as of the close of business on the filing date."); SIPA § 78fff-2(c)(1)(D)("For purposes of allocating customer property under this paragraph, securities . . . shall be valued as of the close of business on the filing date.")

SIPC and the Trustee argue that there are insufficient funds in the estate to cover all allowable claims.[4] But here, again, the Trustee's financial interest in the pursuit of 1,000 fraudulent transfer actions clouds his judgment. For example, SIPC argues that the $2.2 billion forfeited to the United States Attorney's Office as part of the settlement with the Picower parties is not part of the fund of customer property because it was not recovered by the Trustee. (SIPC Br. at 7.) Yet, the Trustee's counsel publicly represented that "every penny" of the $7.2 billion settlement with the Picower parties would be distributed to BLMIS customers.[5]

The Trustee also makes the self-serving argument that he may, in the future, allow additional claims. (Tr. Br. at 18; SIPC Br. at 7.) This argument should be rejected for two reasons. First, the Trustee has previously reported that, as of October 2013, he determined 100% of the claims.[6] Second, the Court cannot accept the Trustee's self-serving, unsubstantiated assertion in utter disregard of his reporting obligations to BLMIS customers and the Court. *See* SIPA §

---

[4] This Court may take judicial notice of the information on the Trustee's website and in public filings pertaining to (i) the amount of total allowable claims, (ii) the amount available in the fund of customer property; and (iii) the Trustee's determinations of claims. *Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir. 2000) (stating that the court may take judicial notice of court documents); *accord Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir. 2004) (noting that courts "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss").

[5] Release of Irving H. Picard, "$7.2 BILLION RECOVERY AGREEMENT WITH ESTATE OF JEFFRY PICOWER AND PICOWER-RELATED INVESTORS," dated December 17, 2010, at 1, available at <http://www.madofftrustee.com/statements-07.html>.

[6] http://www.madofftrustee.com/claims-03.html

78fff-1(d)(3) (requiring trustee to report to court on any matter relevant to liquidation proceed-

ing); SIPA § 78kkk(a) (requiring trustee to furnish to customers all information provided to SIPC

unless it is determined that disclosure is not in the public interest); SIPA § 78fff-1(c); *see also*

*Miller v. Austin*, 72 B.R. 893, 898 (S.D.N.Y. 1987) (acknowledging a duty to provide infor-

mation to SIPA customer as a party in interest).   The Trustee has burdened 6,000 innocent

BLMIS customers with fraudulent transfer actions and yet, despite his expenditure of more than

$130 million as of January 2011 on forensic accountants, to this day, the Trustee has not pointed

to a single "additional" claim he may allow in the future.  This is entirely too convenient:  If he

disclosed the specifics, we would be able to refute his contentions.  He does not do so because he

releases only such information as is consistent with his self-serving interests – again demonstrat-

ing the fundamental violation of Defendants' due process rights by the Trustee's compensation

arrangement.

## III.    THE TRUSTEE CANNOT RELY ON STATUTORY AUTHORIZATION TO ES-TABLISH ARTICLE III INJURY

The Defendants argue that the Trustee lacks Article III standing to bring these suits be-

cause he cannot establish "injury in fact."  (Moving Br. at 11-16.)  In opposing this argument, the

Trustee relies on his statutory authorization despite the fact that the Supreme Court has repeated-

ly held that, if someone lacks Article III injury, Congress cannot grant it.

### A.    The Trustee Cannot Rely on Statutory Authorization to Plead Article III Standing

With nothing better to say in response to the Defendants' argument, SIPC and the Trustee

argue that SIPA empowers the Trustee with authority to bring avoidance actions.  (Tr. Br. at 5;

SIPC Br. at 8-9.)  But, as the Supreme Court has repeatedly made clear, Congress lacks the pow-

er, by statute, to create Article III standing.  Thus, the provisions of SIPA and of the Code are

irrelevant.  As the authority cited in the Moving Brief demonstrates, the existence of a particular-

ized injury under Article III must be established irrespective of a Congressional statutory grant of a right to sue. (Moving Br. at 17-18.)

SIPC and the Trustee argue – inaccurately – that Judge Rakoff held that the Trustee has standing to sue. (Tr. Br. at 4 citing *Picard v. Roman*, 12 Civ. 2318 (JSR), 2012 WL 5816849 (S.D.N.Y. Nov. 13, 2012).) The Trustee is once again conflating a decision on the merits with a decision to deny withdrawal of the bankruptcy reference. All Judge Rakoff did in *Roman* was deny the motion to withdraw the reference. Thus, the Court never reached the merits of the issue. *See id.* at *1. The Trustee and SIPC also rely heavily on *Rosenman Family, LLC v. Picard*, 395 F. App'x 766 (2d Cir. 2010), which was an action by a BLMIS customer seeking declaratory and injunctive relief for the immediate return of funds. The issue before the court was whether the investor qualified as a "creditor" or a "customer" of BLMIS under SIPA. The issue of the Trustee's standing to bring an avoidance action was not raised at all.

## B. The *In Pari Delicto* Defense Bars the Trustee's Actions

The Trustee argues that, although the *in pari delicto* doctrine applies to common law actions brought by a trustee, it is inapplicable to causes of action for which the Code explicitly confers standing on a trustee. (Tr. Br. at 7-8.) The Trustee does not, and cannot explain, however, why he would have Article III standing to assert a fraudulent transfer claim when he lacks Article III standing to assert a common law claim. His answer that the Code gives him standing is untenable in view of the Supreme Court's holding that Congress cannot grant Article III standing by statute.

Although he cannot distinguish the Supreme Court cases, the Trustee relies on *In Picard v. Taylor (In re Park South Securities, LLC),* 326 B.R. 505 (Bankr. S.D.N.Y. 2005), where the bankruptcy court held that the *Wagoner* rule, based on the *in pari delicto* doctrine, does not apply to fraudulent transfer claims. The *Taylor* court made the same mistake that the Trustee makes: it

ignored the Supreme Court cases on which Defendants rely. *See* 326 B.R. at 513. But the law is clear that Congress cannot eliminate the constitutional requirement that a plaintiff must personally suffer an Article III injury to have standing to assert a claim. *See Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979); *accord Raines v. Byrd,* 521 U.S. 811, 820, n. 3 (1997). Indeed, "a naked statutory grant of standing, absent a 'distinct and palpable injury,' violates Article III." *U.S. ex. rel. Yellowtail v. Little Horn State Park*, 828 F. Supp. 780, 785 (D. Mont. 1992) (internal citation omitted.) Thus, the fact that the Code or SIPA purports to give the Trustee certain avoidance powers or that the definition of "property of the estate" arguably permits him to bring these actions does not obviate the Trustee's obligation to demonstrate that he suffered a distinct and palpable injury.

## IV.    THE TRUSTEE'S CALCULATION OF DEFENDANTS' CLAWBACK EXPOSURE DEPRIVES THE DEFENDANTS OF AN INTEREST IN PROPERTY IN VIOLATION OF THE DUE PROCESS CLAUSE

The Defendants argue that the Trustee has violated their rights to due process of law by (a) failing to credit them, dollar-for-dollar, with new deposits made during the Reach-Back Period; and (b) failing to credit them, dollar-for-dollar, with the value of transfers they received from other BLMIS account holders outside of the Reach-Back Period. (Moving Br. at 22-25.) Instead of responding to the substance of Defendants' argument, the Trustee and SIPC rely upon the Second Circuit's approval of the Trustee's valuation methodology in *In re Bernard L. Madoff Inv. Sec. LLC,* 654 F.3d 229 (2d Cir. 2011) (the "*Net Equity Decision*"). (Tr. Br. at 20-21; SIPC Br. at 16.) However, the *Net Equity Decision* simply determined that the Trustee had the discretion to use the net investment method **for the purpose of calculating a customer's net equity claim** in a SIPA liquidation. (Tr. Br. at 21; SIPC Br. at 16.) "Net equity" has no place in determining whether the Trustee can recover property from customers under the fraudulent transfer laws. The term has never appeared in any fraudulent transfer law, whether state, or federal.

The Trustee and SIPC also rely heavily on Judge Rakoff's decision in *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 499 B.R. 416 (S.D.N.Y. 2013) (the "*Antecedent Debt Decision*") regarding "antecedent debt." However, the *Antecedent Debt Decision*, which the Defendants acknowledged in their Moving Brief, did not examine whether the Trustee's methodology violates **substantive constitutional rights** by stripping the Defendants of the protections provided by the applicable limitations period and by failing to give them credit for new deposits made within the Reach-Back period. In fact, the district court ignored the line of cases establishing that a trustee must credit, dollar-for-dollar, payments to the debtor within the Reach-Back period against a defendant's clawback exposure. (Moving Br. at 23-24.) Instead, the district court relied on *Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008), in adopting the Trustee's methodology for calculating clawback exposure. *See Antecedent Debt Decision*, 499 B.R. at 427. This reliance was misplaced because the *Donell* court did not consider how new deposits during the clawback period should be treated because no new deposits of principal were made during the clawback period in that case. Rather, in *Donell*, the creditor wanted the court to distinguish between transfers that were repayment of principal from interest payments during the clawback period. 533 F.3d at 773-74. The court rejected the creditor's argument because such tracing would have been "unmanageable in practice." *Id.* at 774. Thus, *Donell* has no impact on the Defendants' argument here.

No court has yet considered the issue raised here: that the failure to give Defendants full credit against their clawback exposure for the deposits they made within the Reach-Back period, and the failure to give Defendants full credit for inter-account transfers beyond the Reach-Back period, are violations of Defendants' rights to due process of law.

## V.    THE TRUSTEE HAS FAILED TO PLEAD THAT THE TRANSFERS WERE MADE WITH ACTUAL INTENT TO DEFRAUD CREDITORS

The Trustee and SIPC dispute the Defendants' contention that BLMIS was not a Ponzi scheme.  (Tr. Br. at 24; SIPC Br. at 17.)  However, in other filings, the Trustee has been forced to modify the allegation that BLMIS was a Ponzi scheme to the allegation that **BLMIS' investment advisory business** was a Ponzi scheme.  The investment advisory business employed 12 of BLMIS' 200 employees – all under one legal entity – BLMIS.  No court has yet decided the issue of whether it is appropriate to utilize the "Ponzi scheme presumption" when only 6% of an entity's employees are involved in a fraud and 94% of the entity's employees are involved in a legitimate business.

Moreover, while the Trustee has never argued that the trading business of BLMIS, which employed 94% of BLMIS' employees, was a Ponzi scheme, and while he has never sought to claw back payments to the Wall Street firms that were regular customers of BLMIS' trading business, the Trustee ignores the testimony of his own expert who admitted that investment advisory customers' money was deposited "directly and indirectly" into the BLMIS trading accounts.[7]  Thus, BLMIS was one entity, and it cannot fairly be said that BLMIS was a Ponzi scheme.

The Trustee argues that there is no legal or logical basis for Defendants' assertion that the Ponzi scheme presumption should apply only to transfers to equity investors.  (Tr. Br. at 26-28.)  Yet, both law and common sense justify treating customers of an SEC-regulated broker-dealer differently from equity investors in a Ponzi scheme.  Although the Trustee cites cases that apply a Ponzi scheme presumption to allow recovery of amounts paid to investors in excess of their principal, those decisions fail to address the unique issues that arise when recovery is sought

---

[7] *In re Bernard L. Madoff*, No. 08-01789 (Bankr. S.D.N.Y.), Doc. No. 524, at ¶¶ 9, 17, 18, 19, 26, 27.

from innocent customers of a scheme perpetrated by a fiduciary such as an SEC-regulated bro-ker-dealer.  (Tr. Br. at 26-27 (citing *Drenis v. Haligiannis*, 452 F. Supp.2d 418 (S.D.N.Y. 2006) (involving sales of limited partnership interests in non-broker investment vehicles); *Scholas v. Lehmann*, 56 F.3d 750 (same); *In re Int'l Mgmt. Assocs., LLC*, 2009 WL 6506657 (Bankr. N.D. Ga. Dec. 1, 2009) (involving defendants who were equity investors in the debtors); *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284 (S.D.N.Y. 2010) (involving recovery from limited partners who redeemed equity inter-ests ahead of creditors); *Dillon v. Axxsys Int'l, Inc.*, 185 Fed. App'x 823 (11th Cir. 2006) (involv-ing claims brought by investors who purchased shares in internet business against the company's co-founders).)

Defendants, like other BLMIS customers, were not equity investors in the business of BLMIS, but were customers who deposited money with a registered broker-dealer for the pur-pose of having BLMIS manage their savings.  Whatever the merits of the Ponzi scheme excep-tion, it does not apply to the facts of this case.  It makes sense  to say that dividends paid to equi-ty investors in a non-existent business should be recovered because there was never a business that could have generated an equity return.  However, that rationale has no applicability to cus-tomers of a bank or brokerage firm who entrust their own funds to be managed by the firm.  De-fendants did not purchase equity interests in BLMIS; they established a debtor/creditor relation-ship with BLMIS by entrusting BLMIS with the management of their savings.

Indeed, SIPA was enacted to enhance the protections afforded to customers of an SEC-regulated broker-dealer.  And yet, as the Trustee and SIPC have interpreted the statute, it de-prives customers of substantial rights.  For example:

1.    Prior to SIPA, a customer whose broker stole his money and did not pur-chase securities  was entitled, under the Securities Exchange Act, to inter-est from the date of the theft.  Yet, the Trustee exercised his discretion in

this case to deprive customers of a right to appreciation – even over 50
years.

2.    Prior to SIPA, and since the 1500's, it was a defense to a fraudulent trans-
fer action that the transfer reduced an antecedent debt. Yet, as argued by
the Trustee and SIPC, and as held by Judge Rakoff, SIPA took that five
hundred year old defense away from customers.

3.    Prior to SIPA, and in every other area of the law, people were entitled to
rely on the statute of limitations as a statute of repose. Yet, according to
the Trustee and SIPC, securities customers post-SIPA are not entitled to
the protections of the statute of limitations.

Thus, the application of the "Ponzi scheme" presumption to customers of a registered

broker-dealer frustrates SIPA's underlying purpose of protecting customers when their broker

fails. *See* SIPA § 78bbb; *Barbour*, 421 U.S. at 421. SIPA, as the Trustee and SIPC seek to have

it interpreted, will destroy public confidence in the capital markets even though the intent was

precisely the opposite.[8]

## VI.    THE TRUSTEE'S CLAIMS TO AVOID OBLIGATIONS MUST BE DISMISSED

### A.    SIPA Does Not Authorize Avoidance of Obligations

The Trustee and SIPC rely on SIPA §§ 78fff-b and 78fff-2(c)(3) for the Trustee's authori-

ty to avoid obligations. (Tr. Br. 30-31; SIPC Br. at 21-22.) But neither provision grants the

Trustee that authority. SIPA empowers the Trustee with the same avoidance powers of a bank-

ruptcy trustee but only "[t]o the extent consistent with the provisions of this Act [*i.e.*, SIPA]."

*See* SIPA § 78fff(b). SIPA allows a trustee to recover property only, not avoid obligations. *See*

SIPA § 78fff-2(c)(3) ("[w]henever customer property is not sufficient to pay in full the claims . .

. , the trustee **may recover any property transferred** by the debtor which, except for such

---

[8] The motivation for this, of course, is that SIPC – which consists of all SEC-regulated broker-dealers – is required
to assess its members to fund SIPC insurance. Obviously, SIPC's members want to pay as little as possible to fund
SIPC insurance and they have done so. For the entire period from 1996 through 2008, each SIPC member paid $150
per year to SIPC in exchange for which it was entitled to assure its customers that their securities accounts were in-
sured up to $500,000. Yes, that is $150 per year per firm. Thus, Goldman Sachs, Merrill Lynch, JPMorgan Chase –
each firm paid $150 per year to buy $500,000 of insurance for every one of its millions of customers.

transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11.") (emphasis added). Thus, although the Code expressly permits avoidance of "obligations," 11 U.S.C. § 548(a)(1), SIPA only permits the recovery of voidable transfers of property. SIPA § 78fff-2(c)(3). Therefore, the Trustee has no power to avoid obligations.

### B. The Complaints Fail to Identify the Obligations to be Avoided

The Trustee provides no meaningful response to the Defendants' argument that the complaints fail to identify any particular fraudulent obligations to be avoided. Despite his contention that the "[c]omplaints adequately plead . . . the obligations incurred by BLMIS," neither the Trustee's memorandum in opposition to the motions nor the complaints provide any information about the nature of those obligations. (Tr. Br. at 31) In fact, the Complaints contain nothing more than vague and generalized allegations that "[t]o the extent BLMIS or Madoff incurred obligations" to Defendants, "such obligations . . . are avoidable . . . ." *See e.g.,* RAR Complaint ¶ 41; *see also* ¶¶ 42-43. Since the Defendants cannot ascertain from the complaints what obligations the Trustee seeks to avoid or what defenses may apply, these claims must be dismissed as insufficiently pled. *See* Collier on Bankruptcy § 548.11[1][a][ii] (16th ed. 2012); *Fannie Mae v. Olympia Mortg. Corp.*, 2006 WL 2802093, *9 (E.D.N.Y. Sept. 28, 2006).

### C. The Trustee's Method of Avoiding Obligations is Inconsistent with the Law

The Defendants argue that the Trustee cannot avoid BLMIS' obligations to the Defendants that arose from federal securities statutes and state law. (Moving Br. at 32-33.) In response, the Trustee, relying on the *Antecedent Debt Decision*, argues that the "Defendants cannot rely on federal and state law to 'increase the amount to which a customer is entitled from the customer property estate.'" (Tr. Br. at 32 (quoting *Antecedent Debt Decision*, 499 B.R. at 426).) This

argument is a *non sequitur*.  The amount which the Defendants are entitled to recover from the estate is not at issue here.

In the Moving Brief, the Defendants also argued that, even if SIPA permitted the avoidance of obligations – which it does not – the Trustee was barred from avoiding those obligations that were incurred beyond the Reach-Back Period.  (Moving Br. at 34-35.)  The Trustee's only response is that he "is seeking to avoid obligations in the same manner as he seeks to avoid transfers. . . ."  This fails to address the Defendants' argument in any meaningful way.  (Tr. Br. at 33.) The Trustee provides no legal basis for his authority to avoid obligations that were incurred beyond the Reach-Back Period and these claims should be dismissed.

## VII.    SOME OF THE COMPLAINTS IMPROPERLY COMBINE ACCOUNTS AND FAIL TO ADEQUATELY PLEAD THE CLAIMS

The Trustee and SIPC acknowledge that each account held by a customer in different capacities must be treated separately for purposes of distribution but, nevertheless, they dispute the applicability of that principle to the calculation of clawback exposure.  (Tr. Br. at 24; SIPC at 33.)  They provide no legal authority supporting their position.  Indeed, separate treatment of defined accounts is a fundamental premise of SIPA.  Therefore, the Complaints, in which the Trustee aggregates transfer amounts between accounts of different accountholders and combines accounts and claims, violate that basic premise.

SIPC and the Trustee argue that the Defendants provide no legal basis for asserting that the Trustee must file separate complaints for each account held by an individual and/or entity. (Tr. Br. at 33; SIPC at 24-25.)  But their argument overlooks the fundamental principle that a complaint, at a minimum, must be sufficiently detailed "to give the defendant full notice of the claims that are being asserted and to allow the defendant to prepare an adequate answer, with affirmative defenses and counterclaims."  Collier on Bankruptcy § 548.11[1][a][ii].  The Trus-

tee's complaints that combine multiple unrelated accounts, such as the Alpern Complaint, fail to satisfy that minimum standard.

## VIII.    THE SUBSEQUENT TRANSFEREE CLAIMS MUST BE DISMISSED

The Trustee argues that the Defendants must individually identify the deficiencies in each of the 128 cases where subsequent transferee claims are asserted, to prevail on the dismissal of the subsequent transferee claims.  (Tr. Br. at 34.)  That is not the case.  It would be pointless for the Defendants to identify the shortcomings in each of those complaints  because all of the complaints filed against the Defendants, who are "good-faith" transferees,  contain essentially the same boiler-plate, inadequate, subsequent transferee claims.

This Court has already determined in *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011) (the "*Family Action*"), that the Trustee's subsequent transferee claim that was based on virtually the same  allegations that the Trustee asserts against the Defendants, was insufficiently pled.  (Moving Br. at 37.)  The Trustee acknowledges that the subsequent transferee claim in the *Family Action* was dismissed because it "'merely allege[d] that '[o]n information and belief, some or all of the transfers were subsequently transferred by one or more [of the Defendants] to another Family Defendant, either directly or indirectly' without providing any sort of estimate of the amount of the purported Subsequent Transfer, or when or how such Transfer occurred." (Tr. Br. at 36 (quoting *Family Action*, 458 B.R. at 119).)  The Complaints here suffer from the same deficiencies.  For instance, in the RAR Complaint, the Trustee pleads allegations that are **identical** to the ones the Court found insufficient in the *Family Action*.

The Trustee tries to analogize the Complaints with the Trustee's complaint in *Picard v. Merkin*, Adv. No., 09-1182 (BRL) (Bankr. S.D.N.Y.), which this Court concluded was adequately pled.  However, the *Merkin* complaint contained specific allegations that are lacking in the

Complaints here. *See Picard v. Merkin*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010). The Trustee argues that the Complaints "contain sufficient information to satisfy the standard set out by this Court in *Merkin*." (Tr. Br. at 36.) But this Court has already rejected that argument when it considered the complaint in the *Family Action* that contains substantially similar, if not identical, speculative and vague allegations to the ones at issue here:

> Here, the Complaint merely alleges that "[o]n information and belief, some or all of the transfers were subsequently transferred by one or more [of the Defendants] to another Family Defendant, either directly or indirectly" without providing any sort of estimate of the amount of the purported Subsequent Transfer, or when or how such Transfer occurred.
>
> \* \* \*
>
> Indeed, the complaint in *Merkin I* identified the subsequent transfers in predetermined amounts in the Funds' Offering Memoranda, which was attached as an exhibit, and "thus adequately apprises the Merkin Defendants, the alleged recipients of these fees, of which transactions are claimed to be fraudulent and why, when they took place, how they were executed and by whom." 440 B.R. at 270 (internal quotations omitted). No such information is provided here.

458 B.R. at 119-120.

The Trustee tries to overcome the deficiencies in the Complaints by arguing that "the relevant Complaints' allegations and exhibits set forth the precise manner in which the funds that originated with specific BLMIS accounts were transferred to the **initial transferee defendants**." (Tr. Br. at 36 (emphasis added).) But it is the lack of specificity concerning the subsequent transfers, not the initial transfers, that renders the subsequent transferee claims defective.

The Trustee's subsequent transferee claims fail to plead "the 'necessary vital statistics – the who, when, and **how much**' of the purported transfers to establish an entity as a subsequent transferee of the funds." *In re Dreier LLP*, 452 B.R. 451, 464 (Bankr. S.D.N.Y. 2011) (internal citation omitted) (emphasis added). As the *Dreier* court recognized, the *Merkin* complaint passed muster because "[it] detailed the predetermined amounts of fees and commissions that

were sent to the subsequent transferees, as [were] described in a 'Public Offering Memorandum,' and attached as an exhibit to the complaint." *Id.* at 465. Thus, "the complaint adequately apprised the defendants—recipients of fees and commissions—of the claims against them because the complaint specified which transactions are claimed to be fraudulent and why, when they took place, how they were executed and by whom." *Id.* (internal quotation marks and citation omitted).

The subsequent transferee claims against the Defendants do not pass muster under *Merkin.* They do not involve subsequent transfers in the form of commissions and fees in ascertainable amounts. The Trustee does not identify the dates of the alleged transfers, the amounts of the alleged transfers, or how the alleged transfers to the subsequent transferees occurred. Accordingly, consistent with the Court's ruling in the *Family Action*, the subsequent transferee claims must be dismissed.

## IX. THE TRUSTEE CANNOT DISALLOW UNIDENTIFIED CLAIMS OF ACCOUNTS NOT SUBJECT TO AVOIDANCE ACTIONS

The Trustee and SIPC acknowledge that SIPA requires that each account held by a customer in different capacities be treated separately for purposes of distribution. But they maintain that this principle has no application in a disallowance of claim context. (Tr. Br. at 38; SIPC Br. at 28.) The disallowance of claims, however, and distribution of claims are two sides of the same coin. Therefore, the determination of whether a claim is properly disallowed should be interpreted consistently with the same methodology used for the determination of claims.

SIPC argues that, if the Trustee is not permitted to disallow a defendant's claim in connection with one account until after an avoidance action is resolved relating to another account, that defendant "initially would receive a windfall from the liquidation process" because "a trustee first would have to satisfy a [d]efendant's claim for one account, then bring an avoidance ac-

tion on that [d]efendant's other account, and having won, take back from the [d]efendant, if nec-essary and if still available, by litigation, the customer property distributed to him and the SIPC funds received by him." (SIPC Br. at 27-28.)

Again, the Trustee has frustrated the fundamental purpose of SIPA which was to effect prompt distribution of available property and funds to satisfy net equity claims. This is not a "windfall." Congress made absolutely clear its intent to minimize the devastation to customers of an insolvent broker/dealer through prompt payments of net equity claims. *See* SIPA § 78fff(a)(1)(B) (recognizing that the purpose of the liquidation proceeding is to "as promptly as possible satisfy net equity claims of customers"); *see also* SIPA §78fff-4(c); SIPA § 78fff-3(a); SIPA § 78fff-2(b) (emphasis added). Yet despite SIPA's mandate for prompt payment of claims, the Trustee unconscionably continues to delay paying the net equity claims by taking meritless positions.

The Trustee and SIPC try to justify the Trustee's defiance of SIPA's mandate by relying on Section 502(d) of the Code. (Tr. Br. at 38-39; SIPC at 27-28.) But their reliance is misplaced because SIPA has its own provisions dealing with the claims allowance process that does not give a SIPA trustee authority to delay payments to a customer based upon activity in an account separate from the one that is subject to an avoidance action. While SIPA incorporates select por-tions of the Code for purposes of the liquidation proceeding, it does so only "to the extent [the Code is] consistent with the provisions" of SIPA. *See* SIPA § 78fff(b).

Lastly, the Trustee argues that this Court and the district court have already found that that he adequately pled his claims to disallow SIPA claims for those BLMIS accounts *not* subject to avoidance." (Tr. Br. at 39.) None of the cases on which he relies supports his position. First, it is unclear from the complaints in those cases whether the Trustee sought to disallow customer claims that involved BLMIS accounts *not* subject to avoidance. Moreover, none of those cases

addressed the precise issue raised here.  In *Picard v. Chais*, the issues before the Court were (1)

whether the defendants' SIPA claims were supported by BLMIS' books and records and (2)

whether a SIPA claim fell within the definition of a "claim" under Section 502(d).  445 B.R. 206,

239 (Bankr. S.D.N.Y. 2011).  Similarly, in *Picard v. Cohmad Sec. Corp.*, this Court concluded

that "[t]he Trustee has sufficiently pled . . .  to disallow the [d]efendants' SIPA claims as not

supported by BLMIS books and records, as well as under section 502(d) of the Code."  454 B.R.

317, 341 (Bankr. S.D.N.Y. 2011).  In the *Family Action*, the Court merely concluded that Section

502(d) applied to SIPC claims.  458 B.R. at 120-121.  Clearly, the *Chais*, *Cohmad*, or *Family*

*Action* Courts did not consider, let alone determine, whether the Trustee can disallow a claim for

a  BLMIS account that is not the subject of the avoidance action.

## CONCLUSION

        For the foregoing reasons, and those set forth in Defendants' Moving Brief, the Defend-

ants respectfully request that the Court dismiss the Complaints.

Dated: February 21, 2014                    **BECKER & POLIAKOFF LLP**

                                            By: /s/ Helen Davis Chaitman
                                                Helen Davis Chaitman
                                                Peter W. Smith
                                                Julie Gorchkova
                                                45 Broadway
                                                New York, NY 10006
                                                (212) 599-3322
                                                HCHAITMAN@BPLEGAL.COM
                                                *Attorneys for Defendants*