LAW OFFICE OF
RICHARD E. SIGNORELLI
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠
*Attorneys for Defendants The Lustig Family
1990 Trust and David I. Lustig, individually
and in his capacity as Trustee for The Lustig
Family 1990 Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | |
| | : | Adv. Pro. No. 08-01789 (SMB) |
| | : | |
| Plaintiff-Applicant, | : | SIPA LIQUIDATION |
| | : | |
| v. | : | (Substantively Consolidated) |
| | : | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : | |
| | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| BERNARD L. MADOFF, | : | |
| | : | |
| Debtor. | : | |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| IRVING PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | : | |
| | : | Adv. Pro. No. 10-4417 (SMB) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OF LAW IN** |
| | : | **SUPPORT OF DEFENDANTS'** |
| v. | : | **MOTION TO DISMISS OR,** |
| | : | **ALTERNATIVELY, FOR A** |
| THE LUSTIG FAMILY 1990 TRUST, et al., | : | **STAY** |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------------x

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES...............................................................................................iii

PRELIMINARY STATEMENT ...............................…...........................................................1

BACKGROUND..............................…...........................................................................2

ARGUMENT...............................................…….….................................................................5

POINT I

THE TRUSTEE LACKS STANDING
AND IS NOT AUTHORIZED TO
MAINTAIN THIS ACTION UNDER SIPA..........................…....................................6

POINT II

THE TRUSTEE FAILS TO PLEAD FRAUD
WITH THE REQUISITE PARTICULARITY............……...................................9

POINT III

THE TRUSTEE INCORRECTLY CALCULATED
THE "VALUE" GIVEN TO THE DEBTOR
AND THE AMOUNT OF "FICTITIOUS
PROFITS" THAT MAY BE AVOIDED............................……….............................12

POINT IV

THE TRUSTEE FAILS TO ADEQUATELY
PLEAD A CLAIM FOR RECOVERY
OF SUBSEQUENT TRANSFERS...........……..................................................14

POINT V

THE TRUSTEE CANNOT CONVERT
A SUBSEQUENT TRANSFEREE INTO A
BENEFICIARY OF THE INITIAL TRANSFERS...........…….................................15

i

POINT VI

THE TRUST'S ACCOUNT IS STATUTORILY-
PROTECTED FROM THE TRUSTEE'S CLAIMS...........……..............................................17

POINT VII

THIS ACTION SHOULD BE DISMISSED
BECAUSE DEFENDANTS INTEND TO DEMAND
A JURY TRIAL AND WILL NOT CONSENT
TO THIS COURT CONDUCTING SUCH A TRIAL..........……….....................................19

POINT VIII

ALTERNATIVELY, THE COURT
SHOULD STAY THIS ACTION .........………...................................................................19

POINT IX

JOINDER IN OTHER MOTIONS TO
DISMISS FILED IN SIMILAR CASES .........………........................................................21

CONCLUSION...............……….........................................................................................22

# TABLE OF AUTHORITIES

## Cases

Alfa S.A.B. de C.V. v. Enron Creditors Rec. Corp., 422 B.R. 423 (S.D.N.Y. 2009)…...........17

American Tissue, Inc. v. Arthur Andersen, LLP, 275 F.Supp.2d 398 (S.D.N.Y. 2003)..................5

Andrew Velez Constr., Inc. V. Consolidated Edison Co. of N.Y., Inc.,
    373 B.R. 262 (Bankr. S.D.N.Y. 2007)........................……........................................6, 9

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)...............................................……......................5

Balaber-Strauss v. Lawrence, 264 B.R. 303 (S.D.N.Y. 2001)...........……….........................10

Bonded Fin. Svcs. v. European Amer. Bank, 838 F.2d 890 (7th Cir. 1988)…...........................16

Cunningham v. Brown, 265 U.S. 1 (1924)...................................………......................10

Daly v. Deptula (In re Carrozzella & Richardson), 286 B.R. 480 (D. Conn. 2002)......................10

Enron Creditors Rec. Corp. v. J.P. Morgan Sec., 407 B.R. 17 (Bankr. S.D.N.Y. 2009)…...........17

Erickson v. Pardus, 551 U.S. 89 (2007)...........................................………....................2 n.2

Gowan v. Amaranth LLC (In re Dreier LLP), 452 B.R. 451 (Bankr. S.D.N.Y. 2011)..................14

Gowan v. Novator Credit Mgmt., 452 B.R. 467 (Bankr. S.D.N.Y. 2011)..............................14, 17

In re Bullion Reserve of N. Amer., 922 F.2d 544, 548 (9th Cir. 1991)…......................................16

In re Ford, 415 B.R. 51, 61 (Bankr. N.D.N.Y. 2009)…......................................................18 n.11

In re Glenn, 430 B.R. 56 (Bankr. N.D.N.Y. 2010)…….........................................................18

In re Jamesway Corp., 235 B.R. 329 (Bankr. S.D.N.Y. 1999)…….........................................18 n.11

In re Keil, 88 F.2d 7 (2nd Cir. 1937)…….................................................................17-18

In re Madoff Sec., 499 B.R. 416 (S.D.N.Y. 2013)..............................................................7

In re Madoff Sec., 490 B.R. 46 (S.D.N.Y. 2013).........................................................1, 5

IRR Supply Ctrs., Inc. v. Phipps, 217 B.R. 427 (Bankr. W.D.N.Y. 1998)........................... 18 n.11

Marshall v. Picard, 2014 U.S. App. LEXIS 600 (2nd Cir. Jan. 13, 2014)..................................8 n.7

Morgan v. Gordon, 450 B.R. 402 (W.D.N.Y. 2011)…….................................................................17

Musselman v. Home Ins. Co. of Indiana,
    1990 U.S. Dist. LEXIS 10235 (S.D.N.Y. Aug. 7, 1990)....................................................20

Nisselson v. Softbank AM Corp., 361 B.R. 369 (Bankr. S.D.N.Y. 2007)................................9-10

Orlick v. Kozyak (In re Fin. Fed. Title & Trust, Inc.), 309 F.3d 1325 (11th Cir. 2002)................10

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2nd Cir. 1998)..........................................5-6

Picard v. Greiff, 476 B.R. 715 (S.D.N.Y. 2012).............................................................12, 18 n.11

Picard v. Madoff, 458 B.R. 87 (Bankr. S.D.N.Y. 2011)...............................................................14

Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.),
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)......................................................................................14

Stern v. Marshall, 131 S.Ct. 2594 (2011).........................................................................................5
.
U.S. Bank Nat. Assoc. v. Perlmutter, 470 B.R. 659 (E.D.N.Y. Mar. 16, 2012)............................20

**Statutes**

11 U.S.C. § 105...................................................……….......................................................1, 20

11 U.S.C. § 105(a)...............................................................................................................20 n.13

11 U.S.C. § 502(d)...................................................……….......................................................5

11 U.S.C. § 507.........................................................………................................................20

11 U.S.C. § 544(b)...................................................……….......................................................4

11 U.S.C. § 546(e)...........................................................………...........................................4, 18

11 U.S.C. § 548(a)(1)(A)...........................................………....…....1, 3, 4, 6, 9, 10, 12, 13 n.10

11 U.S.C. § 548(a)(1)(B)...........................................................……….....................................3-4

11 U.S.C. § 548(c)...........................................…………..............................................12, 16

11 U.S.C. § 550(a)...........................................…………..............................5, 9, 12, 15, 17

11 U.S.C. § 550(a)(1)............................................…………...........................................15

11 U.S.C. § 550(a)(2)............................................…………...........................................15

11 U.S.C. § 550(b)...........................................…………...........................................15-16

15 U.S.C. § 78fff(e)................................................................................................20

15 U.S.C. § 78fff-2(c)(3).....................................................................................6, 8-9

15 U.S.C. § 78fff-2(c)(1)(A)-(D).....................................................................6, 7 n.6

28 U.S.C. § 157(e)...............................................................................................19

**Rules**

Fed. R. Bankr. P. 7009.......................................…………................................................1, 6

Fed. R. Bankr. P. 7012(b)..................................…………...............................................1, 5

Fed. R. Civ. P. 9(b)...........................................…………..............................................1, 6, 9

Fed. R. Civ. P. 12(b)(1).....................................………….............................................1, 5

Fed. R. Civ. P. 12(b)(6).....................................………….............................................1, 5

N.Y. C.P.L.R. § 5205…......................................................................................18

N.Y. C.P.L.R. § 5205(c)……..........................................................................18, 18 n.11

N.Y. C.P.L.R. § 5205(c)(5)……....................................................................18

Defendants The Lustig Family 1990 Trust ("Trust") and David I. Lustig

("Lustig"), individually and in his capacity as Trustee for The Lustig Family 1990 Trust

(collectively, "Defendants"), respectfully submit this memorandum of law in support of their

motion to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(1) and (6) of the Federal Rules

of Civil Procedure and Rules 7009 and 7012(b) of the Federal Rules of Bankruptcy Procedure or,

alternatively, for a stay of this action pursuant to 11 U.S.C. § 105.[1]

## **PRELIMINARY STATEMENT**

As an initial matter, this Court does not have the power to "finally decide" this

action.  At most, this Court may "recommend proposed findings of fact and conclusions of law,

which the district court would then review de novo."  In re Madoff Sec., 490 B.R. 46, 55

(S.D.N.Y. 2013).  As discussed below, the Complaint in this action should be dismissed in its

entirety because:

> (1) the Trustee lacks standing and is not authorized to maintain this action under
>
> the Securities Investor Protection Act ("SIPA");
>
> (2) the Trustee fails to adequately plead that the transfers at issue were made "with
>
> actual intent to hinder, delay, or defraud" as required under 11 U.S.C. §
>
> 548(a)(1)(A);
>
> (3) the Trustee incorrectly calculated the "value" represented by the principal
>
> investments in the Trust's account and the amount of "fictitious profits", if any,
>
> that may be avoided under § 548(a)(1)(A);
>
> (4) the Trustee fails to adequately plead a claim for recovery of subsequent

---

[1]The other originally-named defendant, Eileen A. Lustig, was dismissed from this action
pursuant to a so-ordered stipulation entered on May 24, 2011.

transfers;

(5) the Trustee cannot recover the initial transfers from Lustig individually on the

theory that he was the beneficiary of those transfers;

(6) the Trust's account is exempt from the Trustee's claims under New York

state law; and

(7) insofar as Defendants have a right to a trial by jury, they at the present

time respectfully intend to demand such a trial and do not consent to this Court

conducting such a trial.

Alternatively, to the extent the Court finds that any part of this action should not

be dismissed because it cannot be determined whether the assets recovered by the Trustee and the

United States Department of Justice Department ("Justice Department") are sufficient to pay all

claims against the estate, this action should be stayed until such time as such a determination can

be made.

## BACKGROUND[2]

Bernard L. Madoff Investment Securities LLC ("BLMIS") was a securities broker-

dealer registered with the Securities and Exchange Commission ("SEC") and regulated under the

Securities Exchange Act of 1934.  (Compl. ¶ 21).  It operated three lines of business: investment

advisory, market-making and proprietary trading. (Id.).  In its investment advisory business

BLMIS managed various types of accounts in which it agreed to trade in publicly-issued

---

[2]The facts set forth in this section are derived from the allegations in the Complaint,
which may be accepted as true for purposes of this motion only.  See Erickson v. Pardus, 551
U.S. 89, 93-94 (2007).  A copy of the Complaint is attached as Exhibit A to the Declaration of
Bryan Ha submitted herewith.  Unless otherwise stated, all the exhibits referenced herein are
attached to that declaration.

securities for its customers and issued periodic statements to its customers showing the securities held in or traded through their accounts and the values of their accounts. (Id. ¶¶ 22-24).

The Trust held an account with BLMIS, Account No. 1ZB268. (Id. ¶¶ 7, 36; Exh B to Compl.). A Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options were executed and delivered to BLMIS in connection with the account. (Compl. ¶ 36).

Over the life of the account withdrawals totaling $25,950,000 were allegedly made from the account. (Exh. B to Compl.). There is no allegation that the withdrawals were not made in good faith. The Trustee does not allege that Defendants knew or should have known of Madoff's fraud. They are, indisputably, innocent parties.

Of the total amount withdrawn from the account, $22,608,664 represented principal that had been deposited into the account. (Id.). According to the Trustee, the remaining $4,241,336 "represented fictitious profits from the Ponzi scheme."[3] (Compl. ¶ 2; Exh. B to Compl.).

The Complaint contains seven causes of action. In Count One, the Trustee seeks to avoid the withdrawals of alleged "fictitious profits" as actual fraudulent transfers under § 548(a)(1)(A). (Compl. ¶¶ 48-53). In Count Two, the Trustee seeks to avoid these withdrawals as

_____

[3]However, as set forth in the Declaration of David I. Lustig dated April 28, 2011, that was submitted to the Trustee in connection with Defendants' request that the Trustee discontinue this action against them, the sum that the Trustee claims constitutes "fictitious profits" includes a $5,000,000 withdrawal made on July 24, 2007, that was immediately reinvested back into BLMIS through a feeder fund called Lakeview Investment, LP, which in turn invested the money with other BLMIS feeder funds. That entire amount was lost as a result of Madoff's fraud. Taking that loss into account, less a payment that the Trust subsequently received from a settlement with one of the underlying feeder funds, it is apparent that Defendants did not actually receive any "fictitious profits" as the Trustee alleges.

3

constructive fraudulent transfers under § 548(a)(1)(B).  (Id. ¶¶ 54-62).  In Counts Three through

Six, the Trustee seeks to avoid these withdrawals as actual and constructive fraudulent transfers

under the New York Debtor and Creditor Law ("NYDCL") pursuant to § 544(b).  (Id. ¶¶ 63-85).

In Count Seven, the Trustee seeks recovery of subsequent transfers from Lustig individually on

the theory that he was a subsequent transferee of the initial transfers alleged to be avoidable in

Counts One through Six.[4]  (Id. ¶¶ 86-91).  The Complaint does not, however, identify any of the

alleged subsequent transfers.

On March 30, 2012, Defendants filed a motion to withdraw the reference as to

various issues, including the issue of whether 11 U.S.C. § 546(e)'s safe harbor applies in the

context of Madoff's fraud and bars the avoidance claims brought by the Trustee under §

548(a)(1)(B) and under § 544(b) and the NYDCL.  The motion was granted and the reference

was withdrawn as to those issues.  On May 23, 2012, the District Court (Rakoff, J.) entered a

final judgment dismissing the Trustee's avoidance claims under § 548(a)(1)(B) and under §

544(b) and the NYDCL in this and other adversary proceedings pursuant to § 546(e).[5]

Accordingly, the only claims remaining in this action are: (1) Count One, in which

the Trustee seeks to avoid the withdrawals of "fictitious profits" as actual fraudulent transfers

under § 548(a)(1)(A); and (2) Count Seven, insofar as it seeks recovery of subsequent transfers of

---

[4]The Complaint identified both Lustig and Eileen A. Lustig, each in their individual
capacity, as "Subsequent Transferee Defendants".  (Compl., p. 2).  As noted above, Eileen A.
Lustig was dismissed from this action pursuant to a so-ordered stipulation entered on May 24,
2011.

[5]The Trustee has filed an appeal from this final judgment.  That appeal is currently
pending in the Second Circuit Court of Appeals.  See In re Madoff Sec., No. 12-2557-bk-L (2nd
Cir.).

4

the initial transfers alleged to be avoidable in Count One from Lustig individually on the theory

that he was a subsequent transferee of those transfers.  See 11 U.S.C. § 550(a) (trustee may only

recover a transfer from a subsequent transferee "to the extent that [the] transfer is avoided").

## ARGUMENT

As an initial matter, pursuant to Stern v. Marshall, 131 S.Ct. 2594 (2011) and

other Supreme Court precedent, this Court "may not finally decide avoidance actions except

conceivably in the process of resolving identical claims under § 502(d)[.]"  See In re Madoff

Sec., 490 B.R. at 55.  The Trustee has not asserted a claim under 11 U.S.C. § 502(d) in this

action.  Defendants do not consent to the adjudication of this action by this Court.  Accordingly,

this Court does not have the power to "finally decide" this action.  At most, the Court may

"recommend proposed findings of fact and conclusions of law, which the district court would

then review de novo."  In re Madoff Securities, 490 B.R. at 55.

Fed. R. Civ. P. 12(b)(1) and (6), made applicable in this adversary proceeding by

Fed. R. Bankr. P. 7012(b), permit dismissal of a complaint for lack of subject matter jurisdiction

and for failure to state a claim upon which relief may be granted, respectively.  A challenge to a

plaintiff's standing to bring suit "amounts to an objection to the court's subject matter

jurisdiction."  American Tissue, Inc. v. Arthur Andersen, LLP, 275 F.Supp.2d 398, 403

(S.D.N.Y. 2003).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "An affirmative

defense may be raised by a pre-answer motion to dismiss under Rule12(b)(6), without resort to

summary judgment procedure, if the defense appears on the face of the complaint."  Pani v.

Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2nd Cir. 1998).

Fed. R. Civ. P. 9(b) requires that, in alleging fraud, "a party must state with

particularity the circumstances constituting [the] fraud[.]"  See Fed. R. Bankr. P. 7009.  This

heightened pleading standard applies to actual fraudulent transfer claims under § 548(a)(1)(A).

See Andrew Velez Constr., Inc. v. Consolidated Edison Co. of N.Y., Inc., 373 B.R. 262, 269

(Bankr. S.D.N.Y. 2007).

## POINT I

### THE TRUSTEE LACKS STANDING
### AND IS NOT AUTHORIZED TO
### MAINTAIN THIS ACTION UNDER SIPA

The Complaint in this action should be dismissed in its entirety because the

Trustee lacks standing and is not authorized to maintain this action under SIPA.  Under SIPA §

78fff-2(c)(3), a trustee is only authorized to bring an avoidance action under the Bankruptcy

Code to recover property transferred by the debtor when there are insufficient funds in the estate

to pay allowed customer claims and certain other specified claims. Section 78fff-2(c)(3)

provides:

> Whenever customer property is not sufficient to pay in full the
> claims set forth in subparagraphs (A) through (D) of [§ 78fff-
> 2(c)(1)], the trustee may recover any property transferred by the
> debtor which, except for such transfer, would have been customer
> property if and to the extent that such transfer is voidable or void
> under the provisions of Title 11.

15 U.S.C. § 78fff-2(c)(3).  If the fund of customer property is sufficient to satisfy the claims

specified in § 78fff-2(c)(1)(A)-(D), then the trustee has no power to bring an avoidance action to

6

recover any property transferred by the debtor.[6]  See In re Madoff Sec., 499 B.R. 416, 420

(S.D.N.Y. 2013) ("to the extent that existing 'customer property is not sufficient to pay in full'

those statutorily identified claims, the trustee is empowered by SIPA to [bring an avoidance

action to] 'recover any property transferred by the debtor which, except for such transfer, would

have been customer property").

Here, the Trustee alleges in the Complaint that "SIPC has not reimbursed, and

statutorily cannot fully reimburse, all customers for all of their losses" and that "the Trustee will

not be able to fully satisfy all claims[.]" (Compl. ¶ 20(d), (e)).  Accordingly, as alleged in the

Complaint, the Trustee purports to exercise his authority to bring this avoidance action under §

78fff-2(c)(3): "the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue

recovery from customers who received preferences and/or payouts of fictitious profits to the

detriment of other defrauded customers whose money was consumed by the Ponzi scheme."

---

[6]SIPA § 78fff-2(c)(1) specifies that the fund of customer property must be used to pay
claims as follows:

> (A) first, to SIPC in repayment of advances made by SIPC pursuant
> to section 78fff-3(c)(1) of this title, to the extent such advances
> recovered securities which were apportioned to customer property
> pursuant to section 78fff(d) of this title;
>
> (B) second, to customers of such debtor, who shall share ratably in
> such customer property on the basis and to the extent of their
> respective net equities;
>
> (C) third, to SIPC as subrogee for the claims of customers;
>
> (D) fourth, to SIPC in repayment of advances made by SIPC
> pursuant to section 78fff-3(c)(2) of this title.

15 U.S.C. § 78fff-2(c)(1).

7

(Compl. ¶ 17). The Trustee alleges that, "[a]bsent this or other recovery actions, the Trustee will

be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-

2(c)(1)." (Id.).

However, the fund of customer property is sufficient to pay all claims in this case.

To date, the Trustee has allowed customer claims totaling $11.402 billion. (Exh. B). As of

February 7, 2014, the Trustee has recovered (and will be recovering pursuant to settlement

agreements that he has entered into) approximately $9.790 billion for the customer property fund.

(Exh. C). In addition to that sum, there are approximately $4.443 billion available from the

Justice Department to compensate customers with allowed claims: (1) $2.2 billion that the

Justice Department received in connection with the Jeffrey Picower settlement that will be

"distributed to victims of the fraud"[7]; and (2) approximately $2.243 billion that "will flow to 'net

loser' victims of Madoff's fraud" pursuant to the Justice Department's and the Trustee's

settlements with JPMorgan Chase Bank. (Exh. D, p. 3). The Justice Department has established

a "Madoff Victim Fund" to distribute this money to victims of Madoff's fraud who have

"'allowed' claims in the Madoff bankruptcy proceedings." (Exh. E).

In sum, there is approximately $14.233 billion available to pay the customer

claims in this case. This sum exceeds the total amount of all allowed claims by approximately

$2.831 billion ($14.233 billion minus $11.402 billion). Notably, this $2.831 billion surplus is

sufficient to satisfy all the general unsecured claims that have been filed against BLMIS. The

total amount of all the unsecured claims is approximately $1.7 billion. (Exh. F, p. 10).

Accordingly, because § 78fff-2(c)(3) only authorizes the Trustee to seek

---

[7]Marshall v. Picard, 2014 U.S. App. LEXIS 600, at *10 and n.6 (2nd Cir. Jan. 13, 2014).

8

avoidance under the Bankruptcy Code when the fund of customer property is insufficient to pay all claims, the Trustee lacks standing and is not authorized to bring this avoidance action under SIPA. The Complaint should therefore be dismissed.

## POINT II

## THE TRUSTEE FAILS TO PLEAD FRAUD
## WITH THE REQUISITE PARTICULARITY

As noted above, the only claims remaining in this action are (1) Count One, in which the Trustee seeks to avoid the withdrawals of "fictitious profits" as actual fraudulent transfers under § 548(a)(1)(A); and (2) Count Seven, insofar as it seeks recovery of subsequent transfers of the initial transfers alleged to be avoidable in Count One from Lustig individually on the theory that he was a subsequent transferee of those initial transfers. As discussed below, Count One must be dismissed because the Trustee fails to adequately plead that the transfers at issue were made "with actual intent to hinder, delay, or defraud" as required under § 548(a)(1)(A). Because the transfers at issue in Count One are thus not avoidable, Count Seven must also be dismissed. See § 550(a) (trustee may only recover a transfer from a subsequent transferee "to the extent that [the] transfer is avoided").

Actual fraudulent transfer claims under § 548(a)(1)(A) must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). See Andrew Velez Constr., 373 B.R. at 269. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." See Nisselson v. Softbank AM Corp., 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) ("courts take a more liberal view when examining allegations of actual fraud . . . in the context of a fraudulent conveyance, since a trustee is an outsider to the transaction who must

plead fraud from second-hand knowledge") (internal quotation marks and citation omitted).

Here, the Trustee makes no effort to describe the particular facts and circumstances concerning the transactions at issue to show that they were made with fraudulent intent as required under § 548(a)(1)(A).  Instead, the Trustee relies solely on the Ponzi scheme presumptions – which essentially excuse him from having to establish that the transactions were made with fraudulent intent – by simply affixing the Ponzi scheme label to BLMIS's operations.  However, the facts as shown in documents filed in the case do not support application of the Ponzi scheme label or reliance on the Ponzi scheme presumptions here.

The essential features of a Ponzi scheme as established in the caselaw are: (1) little or no legitimate underlying business; (2) the promise of exorbitant returns over a short finite period of time; (3) early scheduled payment of such returns to early (or "top") investors; (4) the need to attract new money in order to pay the exiting top investors; and (5) the scheme's inevitable failure.  See Cunningham v. Brown, 265 U.S. 1, 7-8 (1924); Orlick v. Kozyak (In re Fin. Fed. Title & Trust, Inc.), 309 F.3d 1325, 1327 n.2 (11th Cir. 2002); Daly v. Deptula (In re Carrozzella & Richardson), 286 B.R. 480, 482-84 nn. 2 and 7 (D. Conn. 2002); Balaber-Strauss v. Lawrence, 264 B.R. 303, 305-306 (S.D.N.Y. 2001).

None of those features are present here, other than the failure of Madoff's scheme and his arrest.  First, BLMIS operated legitimate trading businesses.  It was "largely involved in legitimate trading with institutional counterparties."  (Declaration of Joseph Looby ("Looby Decl.") ¶ 28).[8]  Documents referenced in the Trustee's complaints and the records of the

---

[8]See Securities Inv. Prot. Corp. v. Bernard L. Madoff Invest. Sec., Inc., Adv. Pro. No. 08-01789 (SMB), Declaration Of Joseph Looby In Support Of Trustee's Motion For Order Upholding Trustee's Determination Denying "Customer" Claims For Amount Listed On Last

Bankruptcy Court case, including the Trustee's First Interim Report[9] and the Looby Decl., show

that BLMIS was once one of the largest traders of securities. It employed 200 people, 94% of

whom conducted trades equal to 10% of the daily volume on the New York Stock Exchange.

See Randall Smith, *Wall Street Mystery Features a Big Board Rival*, Wall Street Journal, Dec.

16, 1992. The Looby Decl. makes it clear that customers' money was used to purchase securities

in BLMIS's legitimate trading operation. Money was deposited "directly and indirectly" into the

BLMIS trading account. (Looby Decl. ¶¶ 9, 17, 18, 19, 26, 27). As of the date of the

commencement of the SIPC liquidation proceedings, BLMIS had legitimate trades and securities

positions outstanding that ultimately yielded proceeds of more than $334 million. (Trustee's

First Interim Report ¶¶ 30-34). In addition, the Trustee successfully sold BLMIS's market-

making operation for approximately $25.5 million. (Id. ¶¶ 24-28).

       Second, BLMIS investors used their accounts just like investors in any brokerage

firm would use their accounts. They deposited and withdrew money from their accounts as

needed and to the extent there were funds available in their accounts. There is no pattern of early

investors being paid with later investors' money and then exiting. Many early investors in fact

stayed invested with BLMIS until the fraud was discovered, while there were new customers who

opened accounts and then withdrew all their money within the same year. Further, there was no

finite period of investment. There was no deadline for investments. The BLMIS operations

---

Customer Statement, Affirming Trustee's Determination Of Net Equity, And Expunging Those
Objections Relating To The Determination Of Net Equity filed on October 16, 2009 [Dkt. No.
524-1].

    [9]See Securities Inv. Prot. Corp. v. Bernard L. Madoff Invest. Sec., Inc., Adv. Pro. No. 08-
01789 (SMB), Trustee's First Interim Report For The Period December 11, 2008 through June
30, 2009 [Dkt. No. 314].

continued for decades.   Customers were free to deposit and withdraw from their accounts at any

time.  Finally, when Madoff was arrested, there were securities and cash worth hundreds of

millions of dollars in the BLMIS accounts.

In short, the facts do not support application of the Ponzi scheme label or

reliance on the Ponzi scheme presumptions in this case.  Accordingly, Count One must be

dismissed because the Trustee fails to adequately plead that the transfers at issue were made

"with actual intent to hinder, delay, or defraud" as required under § 548(a)(1)(A).  Because those

are thus not avoidable, Count Seven must also be dismissed.  See § 550(a).

### POINT III

### THE TRUSTEE INCORRECTLY CALCULATED<br>THE "VALUE" GIVEN TO THE DEBTOR<br>AND THE AMOUNT OF "FICTITIOUS<br>PROFITS" THAT MAY BE AVOIDED

Section 548(c) provides for an affirmative defense to actual fraudulent claims

under 548(a)(1)(A).  Pursuant to § 548(c), transfers are not avoidable to the extent they were

taken "for value and in good faith[.]" 11 U.S.C. § 548(c).  "[D]efendants can prevail on their

motion to dismiss [] claims [under § 548(a)(1)(A)] if they prove that, 'on the face of the

complaint[s],' they can invoke the affirmative defense provided by § 548(c)." Picard v. Greiff,

476 B.R. 715, 723-24 (S.D.N.Y. 2012).

Here, there is no question as to Defendants' good faith.  There is no allegation that

the transfers at issue were not made in good faith or that Defendants knew or should have known

of Madoff's fraud.  Defendants are, indisputably, innocent parties.  Thus the only question is

whether (and to what extent) the withdrawals at issue were made "for value."

12

It is not disputed that the principal sums deposited into the Trust's account constitute "value" given to the debtor.  To the extent the withdrawals from the account consist of such principal, they were clearly made for "value" and thus are not avoidable.  The Trustee concedes all that.  The problem here though is that in calculating the amount of the deposits made into the account (and thus the "value" given to the debtor), the Trustee failed to take into consideration the effects of inflation.  The SEC has generally supported an inflation adjustment on both legal and equitable grounds.  (See Memorandum of Law of the Securities and Exchange Commission Supporting a Constant Dollar Approach to Valuing Customers' Net Equity Claims for Fictitious Securities Positions, Dec. 10, 2012 ("SEC Mem.") (ECF Dkt. No. 5142)). According to the SEC, "an inflation adjustment should provide a more accurate calculation of the real-dollar value of the customer's net investment[.]" (SEC Mem. p. 1).  The SEC noted that "[b]ecause of the unusually long duration of Madoff's Ponzi scheme, the effects of inflation may be more pronounced than in a case of a scheme of shorter duration, so the benefits of an adjustment here may be significant."  (Id. at 16).  That is especially true here, as the Trust's account was opened and money was deposited into the account beginning in or about 1995. (Exh. B to Compl.).

By not adjusting for inflation the Trustee incorrectly calculated the "value" to the debtor represented by the principal investments in the Trust's account, and thus also incorrectly calculated the amount of "fictitious profits", if any, that may be avoided under § 548(a)(1)(A).[10]

---

[10]On September 10, 2013, Judge Lifland issued a decision denying an inflation-based adjustment to net equity claims for the purposes of claims allowance and distribution of estate property.  The decision did not address an inflation-based adjustment for purposes of determining "value" in connection with an avoidance claim under § 548(a)(1)(A).

13

Accordingly, Count One and Count Seven must be dismissed.

**POINT IV**

**THE TRUSTEE FAILS TO ADEQUATELY
PLEAD A CLAIM FOR RECOVERY
OF SUBSEQUENT TRANSFERS**

Count Seven must also be dismissed because the Trustee fails to adequately plead a claim for recovery of subsequent transfers.  "To establish an entity as a subsequent transferee, courts have required that the complaint contain the 'necessary vital statistics – the who, when, and how much' of the purported transfers[.]" Gowan v. Novator Credit Mgmt., 452 B.R. 467, 478 (Bankr. S.D.N.Y. 2011) (quoting Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.), 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).  The complaint must at a minimum provide some "specificity with respect to the [s]ubsequent [t]ransfers so as to put the Defendants on notice as to which ones the Trustee seeks to recover[.]"  Picard v. Madoff, 458 B.R. 87, 120 (Bankr. S.D.N.Y. 2011).  A complaint that alleges that subsequent transfers were made to subsequent transferees "without providing any sort of estimate of the amount of the purported [s]ubsequent [t]ransfer, or when or how such [t]ransfer occurred",  is insufficient to state a claim for recovery from subsequent transferees.  Id. at 119-20; see Gowan v. Amaranth LLC (In re Dreier LLP), 452 B.R. 451, 465 (Bankr. S.D.N.Y. 2011) (allegation that the defendant received subsequent transfers, with "no specific facts to back up the allegation", insufficient to state claim for recovery from subsequent transferees); Novator, 452 B.R. at 480 ("conclusory and speculative allegations" insufficient to support claim "that the transfers were subsequently transferred to the [defendants]").

Here, the Complaint fails to adequately plead a claim for recovery of subsequent

14

transfers.  In connection with Count Seven, the Trustee alleges "[o]n information and belief" that

"the Subsequent Transfers were transferred by Defendants to Subsequent Transferee

Defendants." (Compl. ¶ 88).  The term "Subsequent Transfers" is defined, circularly, as "the

Transfers [that] were subsequently transferred by Defendants to Subsequent Transferee

Defendants[.]" (Id. ¶ 40).  No specific facts are alleged in the Complaint to back up these vague

and conclusory allegations.  The Complaint does not identify any of the alleged subsequent

transfers.  It is devoid of any specific information as to any of the alleged subsequent transfers.

No information is provided as to the amount of any of the alleged subsequent transfers, or when

or how they were made or to whom they were made.  Notably, the table attached as Exhibit B to

the Complaint only identifies the initial transfers made from BLMIS to its customer.  It does not

identify any of the alleged subsequent transfers to subsequent transferees.  (Exh. B to Compl.).

As it stands, the Complaint provides no notice whatsoever as to which subsequent transfers the

Trustee is seeking to recover.

        In short, the Complaint fails to adequately state a claim for recovery of subsequent

transfers.  Accordingly, Count Seven must be dismissed in its entirety.

## POINT V

### THE TRUSTEE CANNOT CONVERT
### A SUBSEQUENT TRANSFEREE INTO A
### BENEFICIARY OF THE INITIAL TRANSFERS

        Section 550(a) permits the Trustee to seek recovery of an avoidable transfer from:

(a) the initial transferee; (b) the "entity for whose benefit" the initial transfer was made; or (c) a

subsequent transferee.  11 U.S.C. § 550(a)(1), (2).  Significantly, under § 550(b), a subsequent

transferee – but not an initial transferee or beneficiary of the initial transfer – has a defense to

15

recovery if he (1) took for value, "including satisfaction or securing of a present or antecedent

debt"; (2) in good faith; and (3) without knowledge of the voidability of the initial transfer.  11

U.S.C. § 550(b).  The "value" given by the subsequent transferee need only be sufficient to

support a simple contract, similar to the protections provided to *bona fide* purchasers for value

under various state laws.  And unlike the "value" required under § 548(c), "value" here means

the value given to the transferor, not to the debtor (i.e., BLMIS).  See Bonded Fin. Svcs. v.

European Amer. Bank, 838 F.2d 890, 897 (7th Cir. 1988) ("Transferees and other purchasers

generally deal only with the previous person in line; they give value, if at all, to their transferors

(or the transferors' designees).").

      In this case, the Trustee attempts to bypass the protections afforded to subsequent

transferees by alleging that Lustig, in his individual capacity, was not only a subsequent

transferee but also a beneficiary of the initial transfers:

> To the extent the funds transferred from BLMIS were for the
> benefit of the Subsequent Transferee Defendants [i.e., Lustig],
> Subsequent Transferee Defendants are the initial transferees of
> such transfers and are included in the definition of Defendants for
> purposes of the allegations herein.

(Compl. ¶ 2).  However, these allegations fail because a later recipient of an initial transfer is

necessarily a subsequent transferee, and not an initial transferee or beneficiary of the initial

transfer.  See In re Bullion Reserve of N. Amer., 922 F.2d 544, 548 (9th Cir. 1991) ("A

subsequent transferee cannot be an entity for whose benefit the initial transfer was made, even if

the subsequent transferee actually receives a benefit from the initial transfer."); Bonded, 838 F.2d

at 895 (same).

      Moreover, the Trustee's allegations are totally conclusory.  The Trustee fails to

16

allege any facts to support the allegations that funds were in fact transferred for the benefit of

Lustig individually, such as the basis for his status as a beneficiary and which transfers were

purportedly made for his benefit.  See Novator, 452 B.R. at 478 (dismissing as "conclusory and

conclusive" claims that an alleged subsequent transferee was also a beneficiary of the initial

transfers).  Essentially, the Trustee's allegations imply that any benefit, however indirect or

incidental, is sufficient to transform an entity into a "beneficiary" of the initial transfer who may

be held responsible for the entire amount of the initial transfer.    That is wrong.  To the contrary,

for  "beneficiary" status under § 550(a), the benefit received "must be 'direct, ascertainable and

quantifiable' and must correspond to, or be commensurate with, the value of the property that

was transferred." Enron Creditors Rec. Corp. v. J.P. Morgan Sec., 407 B.R. 17, 33 (Bankr.

S.D.N.Y. 2009) (citation omitted), rev'd on other grounds, Alfa S.A.B. de C.V. v. Enron

Creditors Rec. Corp., 422 B.R. 423 (S.D.N.Y. 2009).

Accordingly, the Complaint must be dismissed as to Lustig to the extent the

Trustee seeks to recover the initial transfers from him individually on the theory that he was a

beneficiary of those transfers.

**POINT VI**

**THE TRUST'S ACCOUNT IS STATUTORILY-
PROTECTED FROM THE TRUSTEE'S CLAIMS**

The BLMIS account at issue in this case is in the name of the Trust. (Compl. ¶¶ 7,

36; Exh B to Compl.).  As such, it is statutorily exempt from the claims of judgment creditors

such as the Trustee.

"[I]t is well-settled that exemption provisions are to be construed liberally."

Morgan v. Gordon, 450 B.R. 402, 405 (W.D.N.Y. 2011); In re Keil, 88 F.2d 7, 8 (2nd Cir. 1937)

17

("Exemption statutes are to be liberally construed[.]").  The Trustee "bears the burden of proof

to establish that the exemption is improper." In re Glenn, 430 B.R. 56, 58 (Bankr. N.D.N.Y.

2010).

N.Y. C.P.L.R. § 5205 exempts certain categories of personal property from

judgment creditors' claims.  "In general they are what the legislature deems to be the necessities

of life, which not even a person's judgment creditors should be allowed to reach."  David D.

Siegel, New York Practice § 490 (5th ed. 2011).  The Trust's account is exempt under CPLR §

5205(c), which provides that  "all property while held in trust for a judgment debtor, where the

trust has been created by, or the fund so held in trust has proceeded from, a person other than the

judgment debtor, is exempt from application to the satisfaction of a money judgment."

This exemption is subject to the exception that transfers to a trust are not exempt

if "deemed to be fraudulent conveyances under article ten of the debtor and creditor law [i.e., the

NYDCL]."  CPLR § 5205(c)(5).  This exception is not applicable here, however, in light of the

District Court's determination that all of the Trustee's avoidance claims under the NYDCL are

barred by § 546(e).

Accordingly, the Trustee's claims to avoid withdrawals from the Trust's account

must be dismissed.[11]

---

[11] The District Court had rejected a similar argument in Grieff.  See Grieff, 476 B.R. at
729 n.13.  However, in Grieff the District Court did not address the fact that the exception under
CPLR § 5205(c)(5) applies only to fraudulent conveyances under the NYDCL and that the
Trustee's claims under the NYDCL are barred by § 546(e).  See id.  In any event, this Court is
not bound by the District Court's decision in that action.  See In re Jamesway Corp., 235 B.R.
329, 337 n.1 (Bankr. S.D.N.Y. 1999) ("We find that where the bankruptcy court sits in a multi-
judge district, it is not bound by principles of stare decisis by the decision of a district court in
that district.") (citing cases); In re Ford, 415 B.R. 51, 61 (Bankr. N.D.N.Y. 2009) ("In carefully
considering this issue, this court respectfully concludes that principles of *stare decisis* do not

## POINT VII

### THIS ACTION SHOULD BE DISMISSED
### BECAUSE DEFENDANTS INTEND TO DEMAND
### A JURY TRIAL AND WILL NOT CONSENT
### TO THIS COURT CONDUCTING SUCH A TRIAL

Insofar as Defendants have a right to a trial by jury in this case, they presently intend to exercise this right and demand a trial by jury. However, this Court may conduct a jury trial only "if specially designated to exercise such jurisdiction by the district court and with the express consent of all parties." 28 U.S.C. § 157(e) (emphasis added). Defendants do not presently consent to this Court conducting the jury trial in this action. Accordingly, this action should be dismissed in the absence of such consent.[12]

## POINT VIII

### ALTERNATIVELY, THE COURT
### SHOULD STAY THIS ACTION

Alternatively, to the extent that any part of this action is not dismissed because it cannot be determined whether the assets recovered by the Trustee and the Justice Department are sufficient to pay all claims in this case, Defendants respectfully submit that this action should be stayed until such time as such a determination can be made.

A bankruptcy court "has the authority to enter a complete stay of an adversary

---

control the outcome of the resolution of the matter before it and finds that it is not bound by the district court's [decision]."); but see IRR Supply Ctrs., Inc. v. Phipps, 217 B.R. 427, 430 (Bankr. W.D.N.Y. 1998) (bankruptcy court bound by district court decision in multi-judge district).

[12]As previously noted, Defendants respectfully reserve their right to reconsider their position on this issue at a later stage of this case.

proceeding" pursuant to 11 U.S.C. § 105.[13] <u>Musselman v. Home Ins. Co. of Indiana</u>, 1990 U.S.

Dist. LEXIS 10235, at *5 (S.D.N.Y. Aug. 7, 1990). "The determination whether to issue a stay is

committed to the court's sound discretion." <u>U.S. Bank Nat. Assoc. v. Perlmutter</u>, 470 B.R. 659,

684 (E.D.N.Y. Mar. 16, 2012). The factors that courts consider in determining whether to grant a

stay include the following: (1) the private interests of the plaintiffs in proceeding expeditiously

versus any prejudice caused to the plaintiffs by the delay; (2) the private interests and burdens on

the defendants; (3) the interests of the court; and (4) the interests of persons not parties to the

proceeding. <u>See id.</u> at 685 (citations omitted). "In balancing these factors, the basic goal is to

avoid prejudice." <u>Id.</u> (quotation marks and citations omitted).

   These factors weigh in favor of a stay in this case. <u>First</u>, the Trustee will not

suffer any prejudice from a stay as the Trustee and the Justice Department have already recovered

more than enough assets to pay all allowed customer claims and general unsecured claims.

Permitting this action to go forward at this point would only prejudice the general estate, as the

Trustee will incur substantial fees and costs in litigating this proceeding which SIPC – which has

been advancing funds to the Trustee to cover such fees and costs – may ultimately seek to

recover from the estate pursuant to SIPA § 78fff(e). SIPC's claim to recover such fees and costs

would have priority over other general unsecured claims. <u>See</u> SIPA § 78fff(e); 11 U.S.C. § 507.

   <u>Second</u>, Defendants would be substantially burdened by having to devote

resources to litigating this action which may be moot once all the funds recovered by the Trustee

and the Justice Department are disbursed and all allowed customer claims and general unsecured

---

[13]Title 11 U.S.C. § 105(a) authorizes a bankruptcy court to issue "any order, process, or
judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]"

20

claims against the estate are satisfied.  No purpose is served by imposing this burden on innocent parties like the Defendants when the funds recovered are sufficient to satisfy all claims.

Third, a stay will promote judicial economy and allow the Court to avoid expending judicial resources overseeing litigation – against innocent victims of Madoff's fraud – that may ultimately be moot.  Fourth, a stay would benefit non-parties who would otherwise be burdened with non-party discovery in this case.  It is anticipated that discovery in this action will include depositions and document discovery from various non-party witnesses who participated in or have knowledge of Madoff's fraud.

In sum, Defendants respectfully submit that the relevant factors weigh in favor of granting a stay of this action.

## POINT IX

## JOINDER IN OTHER MOTIONS TO
## DISMISS FILED IN SIMILAR CASES

Defendants adopt by reference any arguments made in other motions to dismiss filed by similarly-situated defendants in other BLMIS adversary proceedings to the extent such arguments are applicable and beneficial to them.

21

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated:  New York, New York
February 28, 2014

Respectfully submitted,

LAW OFFICE OF
RICHARD E. SIGNORELLI

By:    /s/ Richard E. Signorelli
_____
Richard E. Signorelli (RS-7976)
Bryan Ha (BH-5295)
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com[SM]
www.nycLITIGATOR.com[SM]
Attorneys for Defendants The Lustig Family
1990 Trust and David I. Lustig, individually
and in his capacity as Trustee for The Lustig
Family 1990 Trust

FILING AND SERVICE VIA ELECTRONIC FILING

22