MILBERG LLP
Matthew Gluck
Matthew A. Kupillas
Jennifer L. Young
Joshua E. Keller
One Pennsylvania Plaza
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

*Attorneys for the Trust U/W/O Harriet Myers*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05401 (SMB) |
| Plaintiff, | |
| v. | |
| ESTATE OF ELEANOR MYERS a/k/a ELEANOR BLOCK a/k/a LEE BLOCK, | |
| TRUST U/W/O HARRIET MYERS, | |
| MARK E. BLOCK, in his capacity as Personal | |

Representative and Beneficiary of the Estate of
Eleanor Myers, and as Trustee of the Trust
U/W/O Harriet Myers,

GERALD J. BLOCK, individually and as
Beneficiary of the Estate of Eleanor Myers,

MELISSA MYERS, as Beneficiary of the Trust
U/W/O Harriet Myers, and

JASON MYERS as Beneficiary of the Trust
U/W/O Harriet Myers,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT TRUST U/W/O HARRIET MYERS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   FACTS ................................................................................................ 2

  A.    Madoff's Fraud and Defendant's Loss ................................................. 2

  B.    Procedural Posture ........................................................................... 4

III.  ARGUMENT ......................................................................................... 6

  A.    Under Section 548(c), Defendant May Retain the Transfers From BLMIS
        Because They Were Received "For Value" and in "Good Faith" ......................... 7

     1.    Defendant Held Rescission and Damages Claims Against BLMIS ........... 9

     2.    The Antecedent Debt Constitutes "Value," and the Transfers Cannot
           Be Avoided .................................................................................. 12

  B.    The Trustee Fails to State a Claim to Avoid Obligations ..................................... 14

     1.    SIPA Does Not Permit Avoidance of Obligations .................................... 15

     2.    The Complaint Fails to Identify the Purportedly Avoidable
           Obligations .................................................................................. 18

     3.    The Trustee Cannot Avoid Obligations Already Satisfied ...................... 19

     4.    The Trustee Cannot Avoid Obligations Incurred Beyond the Two-
           Year "Reach Back" Period .............................................................. 20

     5.    Obligations that Arise by Statute or Regulatory Process are Not
           Avoidable .................................................................................... 22

IV.   CONCLUSION .................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alnwick v. European Micro Holdings, Inc.*,
   281 F. Supp. 2d 629 (E.D.N.Y. 2003) ................................................................19

*Am. Gen. Ins. Co. v. Equitable Gen. Co.*,
   493 F. Supp. 721 (E.D. Va. 1980) .....................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................6

*In re Asia Global Crossing, Ltd.*,
   333 B.R. 199 (Bankr. S.D.N.Y. 2005) ...............................................17, 18, 19, 22

*In re Asia Global Crossing, Ltd.*,
   344 B.R. 247 (Bankr. S.D.N.Y. 2006) ...............................................................21

*Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.)*,
   264 B.R. 303 (S.D.N.Y. 2001) .......................................................................7, 12

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*,
   256 B.R. 664 (Bankr. S.D.N.Y. 2000) ................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................6

*BFP v. Resolution Trust Corp.*,
   511 U.S. 531 (1994) ............................................................................................9

*Big Apple Car, Inc. v. City of New York*,
   204 A.D.2d 109 (1st Dep't 1994) ......................................................................11

*Boguslavsky v. Kaplan*,
   159 F.3d 715 (2d Cir. N.Y. 1998) .....................................................................11

*Breeden v. Thomas (In re Bennett Funding Group, Inc.)*,
   No. 98-40892, 1999 Bankr. LEXIS 1843 (Bankr. N.D.N.Y. Apr. 29, 1999) ............8, 9, 12, 14

*Brown v. Brandenburg (In re McGee)*,
   No. 99-5037, 2000 Bankr. LEXIS 1865 (Bankr. E.D. Ky. Nov. 22, 2000) ...........................13

*Brown v GE Capital Corp. (In re Foxmeyer Corp.)*,
   290 B.R. 229 (Bankr. D. Del. 2003) ..................................................................18

*Butner v. United States*,
    440 U.S. 48 (1979) ........................................................................................................13

*Daly v. Deptula (In re Carrozzella & Richardson)*,
    286 B.R. 480 (D. Conn. 2002) ......................................................................................14

*Daly v. Fusco (In re All-Type Printing, Inc.)*,
    274 B.R. 316 (Bankr. D. Conn. 2002) ..........................................................................13

*DeLong Corp. v. Morrison-Knudsen Co., Inc.*,
    20 A.D.2d 104 (1st Dep't 1963) ...................................................................................12

*Donell v. Kowell*,
    533 F.3d 762 (9th Cir. 2008) ........................................................................................13

*Fannie Mae v. Olympia Mortg. Corp.*,
    No. 04-4971, 2006 U.S. Dist. LEXIS 70175 (E.D.N.Y. Sept. 28, 2006) ...............19

*FCC v. Nextwave Pers. Commc'ns, Inc. (In re Nextwave Pers. Commc'ns, Inc.)*,
    200 F.3d 43 (2d Cir. 1999) ....................................................................................19, 22

*Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*,
    371 F.3d 397 (8th Cir. 2004) ..........................................................................................9

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
    353 U.S. 222 (1957) ......................................................................................................16

*Grippo v. Perazzo*,
    357 F.3d 1218 (11th Cir. 2004) ....................................................................................10

*In re Hannover Corp.*,
    310 F.3d 796 (5th Cir. 2002) ..........................................................................................8

*Lamie v. United States Tr.*,
    540 U.S. 526 (2004) ......................................................................................................16

*Lehman Bros. Holdings v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings)*,
    469 B.R. 415 (Bankr. S.D.N.Y. 2012) .........................................................................21

*In re Lucar Enter., Inc.*,
    49 B.R. 717 (Bankr. S.D. Fla. 1985) ...........................................................................14

*Mazzeo v. United States (In re Mazzeo)*,
    131 F.3d 295 (2d Cir. 1997) ...........................................................................................8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ..........................................................................................................9

*Nat'l Union Fire Ins. Co. v. Camp (In re Government Sec. Corp.)*,
   972 F.2d 328 (11th Cir. 1992) ........................................................................17

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart
   Convenience Stores, Inc.)*,
   351 F.3d 86 (2d Cir. 2003)..............................................................................15

*O'Toole v. Karnani (In re Trinsum Group, Inc.)*,
   460 B.R. 379 (Bankr. S.D.N.Y. 2011) .............................................................20

*Official Committee v. Hancock Park Capital II, L.P. (In re Fitness Holdings)*,
   714 F.3d 1141 (9th Cir. 2013) ....................................................................12, 13

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998)...............................................................................7, 8

*Picard v. Flinn Invs., Inc.*,
   463 B.R. 280 (S.D.N.Y. 2011) (Rakoff, J.) .......................................................4

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
   458 B.R. 87 (Bankr. S.D.N.Y. 2011) ..................................................................6

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
   440 B.R. 243 (Bankr. S.D.N.Y. 2010) ...............................................................3

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   132 S. Ct. 2065 (2012)......................................................................................16

*In re Revco D.S.*,
   No. 88-1308, 1990 Bankr. LEXIS 2966 (Bankr. D. Ohio Dec. 17, 1990) ...........18

*Rolf v. Blyth, Eastman Dillon & Co., Inc.*,
   637 F.2d 77 (2d Cir. 1980)................................................................................10

*Scalp & Blade v. Advest, Inc.*,
   765 N.Y.S.2d 92 (4th Dep't 2003).....................................................................11

*Schnorr v. Schubert*,
   No. 05-0303, 2005 WL 2019878 (W.D. Okla. Aug. 18, 2005) .............................10

*SEC v. Zandford*, 535 U.S. 813 (2002) .................................................................10

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
   403 F.3d 43 (2d Cir. 2005)................................................................................12

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
   No. 12-0115 (S.D.N.Y. entered May 16, 2012) ...................................................2

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*,
      476 B.R. 715 (S.D.N.Y. 2012) .......................................................................... *passim*

*SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.)*,
      499 B.R. 416 (S.D.N.Y. 2013) ...............................................................................7

*Southeast Waffles, LLC v. IRS (In re Southeast Waffles, LLC)*, 702 F.3d 850 (6th Cir.
      2012) .....................................................................................................................22

*Stevens v. Abbot, Proctor & Paine*,
      288 F. Supp. 836 (E.D. Va. 1968) .........................................................................10

*Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co*,
      549 U.S. 443 (2007) ...............................................................................................13

*In re UBS Auction Rate Sec. Litig.*,
      No. 08-2967, 2009 U.S. Dist. LEXIS 26385 (S.D.N.Y. Mar. 30, 2009) ...............10

*U.S. Bank N.A. v. Verizon Commc'ns, Inc.*,
      No. 10-01842, 2012 U.S. Dist. LEXIS 106576 (N.D. Tex. July 31, 2012) ............18

*United States v. Ron Pair Enters., Inc.*,
      489 U.S. 235 (1989) ...............................................................................................16

*USPS v. Phelps Dodge Ref. Corp.*,
      950 F. Supp. 504 (E.D.N.Y. 1996) .........................................................................11

*Zaresky v. E.F. Hutton & Co.*,
      509 F. Supp. 68 (S.D.N.Y. 1981) ...........................................................................10

### STATUTES

11 U.S.C. § 101 ................................................................................................................8

11 U.S.C. § 105(a) .........................................................................................................15

11 U.S.C. § 546(e) ..................................................................................................... *passim*

11 U.S.C. § 548(a)(1) ................................................................................................ *passim*

11 U.S.C. § 548(c) ..................................................................................................... *passim*

11 U.S.C. § 548(d)(2)(A) ...........................................................................................8, 13

11 U.S.C. § 550(b)(2) ....................................................................................................26

11 U.S.C. § 749(a) .........................................................................................................17

15 U.S.C. § 78bb(a)(2) ....................................................................................................9

15 U.S.C. § 78bbb ................................................................................................................9

15 U.S.C. § 78cc(b) ...........................................................................................................11

15 U.S.C. § 78fff-2(c)(3) ...............................................................................................2, 16

15 U.S.C. § 78fff(a) ...........................................................................................................16

15 U.S.C. § 78fff(b) .......................................................................................................7, 15

CPLR § 5001(a) .................................................................................................................11

CPLR § 5004 ......................................................................................................................11

**RULES**

Fed. R. Bankr. P. 7009 .........................................................................................................6

Fed. R. Civ. P. 9(b) ..............................................................................................................6

**OTHER AUTHORITIES**

Collier on Bankruptcy § 548.03[4][a] (16th ed. 2012) .....................................................20

Collier on Bankruptcy § 548.03[4][b] (16th ed. 2012) .....................................................19

Collier on Bankruptcy § 548.11[1][a][ii] (16th ed. 2012) ................................................19

16 N.Y. Jur. 2d § 2 .............................................................................................................12

## I.    PRELIMINARY STATEMENT

Defendant Trust U/W/O Harriet Myers ("Defendant") submits this memorandum of law in support of its Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure).    This lawsuit is one of more than approximately 1,000 actions commenced in late 2010 by Irving H. Picard, as Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA").    In this case, the Trustee seeks to recover certain amounts that Defendant, a customer of BLMIS and an innocent victim of the fraud, withdrew from its BLMIS account.    The Complaint also asserts claims against a number of other defendants, either as initial transferees and/or as subsequent transferees of transfers from multiple BLMIS accounts.

The Trustee's Amended Complaint ("Complaint")[1] asserts avoidance claims under various provisions of the Bankruptcy Code and New York's Debtor & Creditor Law.    However, as a result of proceedings in the District Court, the Trustee's only remaining avoidance claims against Defendant are those under Bankruptcy Code Section 548(a)(1)(a) for avoidance of actual fraudulent transfers during the federal two-year "reach back" period.    *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."), *appeal pending, In re Madoff Sec.*, No. 12-2557 (2d Cir.).    The District Court dismissed the Trustee's constructive fraudulent transfer claims asserted under Section 548(a)(1)(B) and state law avoidance claims, which sought to avoid transfers made during a six-year "reach back" period.    *Id.*; *see also* Consent Order Granting Rule 54(b)

---

[1] A copy of the Complaint is attached hereto as Exhibit 1.  All citations herein to "¶ ___" refer to the Complaint.

Certification and Final Judgment ("Final Judgment"), *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-0115 (S.D.N.Y. entered May 16, 2012) (ECF No.109). Defendant now moves to dismiss the Trustee's remaining claims for the following reasons.

First, Section 548(c) of the Bankruptcy Code provides a defense against avoidance of an alleged fraudulent transfer to the extent it was received "for value" and in "good faith." Defendant held claims against BLMIS for, among other things, violation of the federal securities laws, fraud, and breach of fiduciary duty, entitling Defendant to a rescission remedy or damages. BLMIS's payments to Defendant satisfied those antecedent debts, such that the amounts were received "for value". Defendant's good faith is established on the face of the Complaint.

Second, the Trustee's attempt to avoid "obligations" BLMIS owed to Defendant is flawed as a matter of statutory construction. The plain language of Section 78fff-2(c)(3) of SIPA, which specifies the Trustee's avoidance powers in a SIPA liquidation, permits the recovery only of "property transferred" to the extent that such "transfers" are avoidable under the Bankruptcy Code. SIPA does not permit avoidance of "obligations." Moreover, the Trustee failed to plead any particular obligations to be avoided and, in any event, cannot reach obligations that no longer exist, that were incurred beyond the reach back period, or that arose by statute or regulatory process.

## II.    FACTS

### A.    Madoff's Fraud and Defendant's Loss

The Complaint alleges that Defendant is a former customer of BLMIS. ¶ 8. BLMIS was a securities broker-dealer registered with the Securities and Exchange Commission ("SEC") and regulated under the Securities Exchange Act of 1934, and it was a member of the Securities Investor Protection Corporation ("SIPC"). ¶ 25. BLMIS operated three lines of business -- an

investment advisory operation, a market making operation, and a proprietary trading operation.[2]

*Id.*

The Complaint alleges that Defendant's BLMIS account at issue here, 1CM316, was opened in 1994.  *See* Exhibit B to Complaint.  Thereafter, Defendant received monthly BLMIS account statements and trade confirmations reflecting purported trades in listed securities.  ¶ 28.  Although the Defendant was unaware that BLMIS was a fraud, money was periodically withdrawn from Defendant's BLMIS account.  *See* Exhibit B to Complaint.

In December 2008, Madoff's fraud was exposed, and it was revealed that the brokerage account statements and trade confirmations that BLMIS sent its customers were fraudulent.  ¶¶ 14, 28.  Instead of investing customer deposits, BLMIS used this money to "prop up" its "legitimate" business lines and pay amounts owed to other customers.  ¶ 31.  The Trustee acknowledges that Defendant is an innocent victim of BLMIS's fraud.  ¶¶ 26-39 (describing Madoff's "intentional misrepresentations" and efforts to conceal his fraud).[3]

BLMIS's fraud resulted in significant losses for the account at issue here.  Nonetheless,

---

[2] Although the Trustee alleges that BLMIS operated as a Ponzi scheme, ¶ 31, the Complaint alleges that only the investment advisory operation was a fraud. ¶ 26-31.  Moreover, the Trustee previously confirmed that BLMIS's other business lines were "largely involved in legitimate trading with institutional counterparties."  Decl. of Joseph Looby ¶ 28, *SIPC v. Bernard L. Madoff Inv. Sec. LLC.*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. July 9, 2009) (ECF No. 451).  In particular, the Trustee's forensic accountant acknowledged that "neither of these business units would have been viable without the fraudulent IA Business, the proceeds of which were used to sustain those business operations from at least 2007 forward."  *Id.* ¶ 27.  At this stage in the case, there has been no discovery regarding whether and to what extent BLMIS was operating as a Ponzi scheme or when the fraudulent activities began.

[3] *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 673 (Bankr. S.D.N.Y. 2000) ("It is important here to note what the Trustee does not allege. There is no allegation in the complaints and no claim by the Trustee that the Brokers had any knowledge of the Ponzi scheme."); *Compare Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010) (noting that complaint was "replete" with allegations that transfers were received in bad faith with knowledge of the alleged fraud).

the Trustee seeks to recover from Defendant $528,000 in alleged fraudulent transfers during the two-year reach back period, as well as associated obligations.  ¶ 2.

### B.    Procedural Posture

On December 11, 2008, BLMIS was placed into liquidation pursuant to SIPA.  ¶ 14.  The Trustee was thereafter appointed to administer the liquidation of BLMIS under SIPA.  ¶¶ 15-18. Exercising the avoidance powers of a bankruptcy trustee conferred by SIPA (¶ 17), the Trustee commenced the action against Defendant in the Bankruptcy Court, among hundreds of similar actions against innocent transferee defendants, to recover certain alleged fictitious profits BLMIS paid, asserting claims for two-year constructive and actual fraudulent transfers under Section 548(a)(1)(A)-(B) of the Bankruptcy Code and six-year actual and constructive fraudulent conveyances under New York's Debtor & Creditor Law, made applicable under Section 544(b) of the Bankruptcy Code.

On June 28, 2011, Defendant filed a Motion for Mandatory Withdrawal of the Reference (ECF No. 14) pursuant to 28 U.S.C. Section 158(d), urging that certain arguments to be raised on a motion to dismiss implicated significant issues of federal non-bankruptcy law.  On November 28, 2011, the District Court withdrew the reference on several issues.  *See Picard v. Flinn Invs., Inc.*, 463 B.R. 280, 288 (S.D.N.Y. 2011) (Rakoff, J.).  Thereafter, Defendant filed a Motion to Dismiss in the District Court, raising arguments within the scope of the reference withdrawal, including arguments that Section 546(e) barred certain of the Trustee's claims and that Section 548(c) was a defense to avoidance because BLMIS's account statements, which constituted enforceable securities entitlements under Article 8 of the Uniform Commercial Code, created an antecedent debt BLMIS's satisfaction of which could not be avoided.

On December 14, 2011, the Trustee amended his initial complaint to expand his claims to seek avoidance of obligations BLMIS owed Defendant, presumably to undercut Defendant's

Section 548(c) defense premised on the argument that BLMIS's account statements were enforceable obligations forming an antecedent debt.  ¶¶ 42-44.  Consistent with the initial complaint, the Complaint seeks to recover all withdrawals from Defendant's BLMIS account during the two-year and six-year reach back periods, to the extent that (according to the Trustee) Defendant did not give "value" to BLMIS for those withdrawals.  ¶¶ 45-48.  The Trustee continued to calculate the "value" given by Defendant as the difference between all deposits over the life of the account, less all withdrawals over the life of the account -- *including withdrawals preceding the statutory reach back period*.  *See* Exhibit B to Complaint.  The Trustee alleges that any amounts withdrawn in excess of total deposits are recoverable to the extent such withdrawals occurred during the two-year reach back period.  *Id*.

The motion to dismiss proceeded before the District Court, which ultimately ruled that Section 546(e) limits the Trustee's claims to the avoidance of actual fraudulent transfers during the two-year reach back period under Section 548(a)(1)(A).  *SIPC v. Bernard L. Madoff Inv. Sec. LLP (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012), *appeal pending*, *In re Madoff Sec.*, No. 12-2557-L (2d Cir.).  Accordingly, the Trustee's constructive fraudulent transfer claims under Section 548(a)(1)(B) and state law avoidance claims were dismissed.  *Id*.; *see also* Final Judgment, No. 12-0115 (S.D.N.Y. entered May 16, 2012) (ECF No.109).  However, the District Court rejected the argument that BLMIS's account statements created an antecedent debt the satisfaction of which could not be avoided under Section 548(c).[4]  *Greiff*, 476 B.R. at 723-28.  The District Court stated that this ruling applied "*very narrowly*, reaching only this unusual kind of 'creditor' whose claims to profits depend upon enforcing fraudulent representations."  *Id*. at 727 (emphasis added).  The District Court left open whether Defendant

---

[4] If this ruling is appealed and reversed, it will dispose of the Trustee's claims in their entirety.

could establish a Section 548(c) defense based on other theories. *Id*. at 727 n.10 ("The defendants might well establish, for example, that under a 'constant dollar' approach, Madoff Securities owed them a reasonable return of interest on their investment.).

As a result of the District Court's ruling, the only claims against Defendant currently remaining in this action are the Trustee's actual fraudulent conveyance claims asserted pursuant to Section 548(a)(1)(A). *Id*. at 722 ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."). Defendant now seeks dismissal of those claims for the reasons described herein.

## III.    ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

While a court must accept as true all of the factual allegations in the complaint, this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Rule 9(b) (made applicable through Fed. R. Bankr. P. 7009) applies to claims for actual fraudulent transfer. *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 106 (Bankr. S.D.N.Y. 2011). To satisfy the Rule 9(b) pleading standard, a bankruptcy trustee must

plead facts sufficient "to provide detailed notice of fraud claims to defending parties." *Id*. "Such

is not the case here where opacity, rather than particularity, best describes the allegations." *Id*.

Defenses that appear on the face of the complaint are properly before the court on a

motion to dismiss. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An

affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6),

without resort to summary judgment procedure, if the defense appears on the face of the

Complaint."); *Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.)*, 264 B.R. 303,

306 (S.D.N.Y. 2001) (affirming bankruptcy court's dismissal on the pleadings based on

application of Section 548(c) in Ponzi scheme case).

### A.    Under Section 548(c), Defendant May Retain the Transfers From BLMIS Because They Were Received "For Value" and in "Good Faith"[5]

As noted above, the Trustee's avoidance powers are delineated by SIPA, which

incorporates the Bankruptcy Code's avoidance provisions.    15 U.S.C. § 78fff(b).    The

Bankruptcy Code in turn includes a "value" defense to avoidance, providing that "a transferee . .

. that takes for value and in good faith . . . may retain any interest transferred . . . to the extent

that such transferee . . . gave value to the debtor in exchange for such transfer . . . ." 11 U.S.C. §

548(c); *see also Greiff*, 476 B.R. at 723 ("[T]he defendants can prevail on their motion to dismiss

---

[5]  On October 15, 2013, District Judge Rakoff ruled on these issues in connection with motions to dismiss involving 299 actions that named hundreds of other similarly situated innocent transferee defendants.  Specifically, Judge Rakoff ruled on "whether and how th[e] 'value' limitation [under 11 U.S.C. § 548(c)] applies in the context of [the Trustee's] avoidance and recovery actions." *SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.)*, 499 B.R. 416, 418 (S.D.N.Y. 2013).  Defendant was not a party to those proceedings.  Judge Rakoff's October 15th Order specifically rejected the notion that state and federal claims for rescission or damages that BLMIS customers may have had against BLMIS constitutes "value" under 548(c) "as against the Madoff Securities customer property estate under SIPA." *See id*. at 422, 430.  To the extent this ruling binds Defendant here, Defendant is asserting the arguments herein to preserve any rights to participate in any challenge to the rulings from Judge Rakoff's October 15, 2013 Order.

these claims if they prove that, on the face of the complaint[s], they can invoke the affirmative defense provided by § 548(c).").[6]    The Bankruptcy Code defines "value" to include the "satisfaction . . . of a present or antecedent debt of the debtor."  11 U.S.C. § 548(d)(2)(A).  Value is determined at the time of the transfer.  *In re Hannover Corp.*, 310 F.3d 796, 802 (5th Cir. 2002) ("[T]he fact that an option has become worthless in no way proves that it was worthless at an earlier date.  [C]onsistent with economic reality, this and other circuits unequivocally hold that for purposes of § 548 the value of an investment, even a risky one, . . . is to be determined at the time of purchase."); *Breeden v. Thomas (In re Bennett Funding Group, Inc.)*,  No. 98-40892, 1999 Bankr. LEXIS 1843, at *33 (Bankr. N.D.N.Y. Apr. 29, 1999) ("[V]alue must be determined as of the date of the transfer, and not in light of subsequent events.").

Although antecedent debt is not defined, the term "debt" is broadly defined as "liability on a claim," 11 U.S.C. § 101(12), and a "claim" includes a "right to payment" whether or not that right has been liquidated or reduced to a judgment.  *See* 11 U.S.C. §§ 101(5)(A), (12). "[T]he terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor."  *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 302 (2d Cir. 1997).  "[T]he term 'debt' is sufficiently broad to cover any possible obligation to make payment."  *Id*.

---

[6] No extrinsic evidence is required to show that Defendant meets the "good faith" requirement of Section 548(c), because that defense appears of the face of the Complaint. *Pani*, 152 F.3d at 74. The Trustee does not allege that Defendant acted in bad faith in receiving payments from BLMIS, or knew or recklessly disregarded the existence of the Madoff Ponzi scheme.  To the contrary, the Complaint's allegations demonstrate that BLMIS went to extraordinary lengths to hide the truth from its customers, and that Defendant is an innocent victim of the fraud.  ¶¶ 25-39 (describing Madoff's "intentional misrepresentations" and efforts to conceal his fraud). Although the Trustee previously argued that Madoff's fraud should be imputed to Defendant, the District Court rejected this argument.  *Greiff*, 476 B.R. at 724 n.9 ("[T]he Trustee cannot impute Madoff Securities' bad faith to them.").

### 1. Defendant Held Rescission and Damages Claims Against BLMIS

Under various substantive non-bankruptcy laws, at the time it withdrew the amounts at issue in this lawsuit, Defendant held claims against BLMIS for rescission or damages arising from BLMIS's conduct. Those rights arose at the time of the fraud. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544-45 (1994) ("[T]he Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law."); *Breeden*, 1999 Bankr. LEXIS 1843, at *34 ("Because [the debtors] had not yet filed for bankruptcy on January 1, 1996, Defendant's rights against them would have been governed by state law, not the Bankruptcy Code, and the benefit which the Debtors obtained by the release of these rights must be valued accordingly.").

SIPA expressly incorporates the provisions of the Securities Exchange Act of 1934 (the "1934 Act"), of which SIPA is a part. 15 U.S.C. § 78bbb ("Except as otherwise provided in this Act, the provisions of the Securities Exchange Act of 1934 apply as if this Act constituted an amendment to, and was included as a section of, such Act."). Section 28(a)(2) of the 1934 Act contains a "Rule of Construction" that expressly preserves state law rights and remedies. *See* 15 U.S.C. § 78bb(a)(2) ("[T]he rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity."); *see also Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 401 (8th Cir. 2004) (noting in SIPA case that "[s]tate law governs the resolution of property rights within a bankruptcy proceeding").

The allegations in the Complaint establish that, at the time it made its withdrawals, Defendant held claims against BLMIS for violation of Section 10(b) of the 1934 Act and Rule 10b-5. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 n.10 (2006) ("[A] broker who accepts payment for securities that he never intends to deliver, or who sells customer

9

securities with the intent to misappropriate the proceeds, violates § 10(b) and Rule 10b-5.");

*SEC v. Zandford*, 535 U.S. 813, 819 (2002) (same); *see also Grippo v. Perazzo*, 357 F.3d 1218,

1220-24 (11th Cir. 2004) ("A plaintiff does not need to identify a specific security, or

demonstrate that his money was actually invested in securities" to be afforded the protections of

Section 10(b) and Rule 10b-5); *Schnorr v. Schubert*, No. 05-0303, 2005 WL 2019878, at *5

(W.D. Okla. Aug. 18, 2005) ("[U]nfulfilled promises to purchase securities qualify as actual

purchases" for purposes of Rule 10b-5.).

The remedies for Section 10(b) and Rule 10-b-5 violations may include rescission of the

transaction, and recovery of principal and interest. *See In re UBS Auction Rate Sec. Litig.*, No.

08-2967, 2009 U.S. Dist. LEXIS 26385, at *13 (S.D.N.Y. Mar. 30, 2009) (noting that in a

Section 10b-5 case "plaintiffs [must] choose between rescinding a transaction and being paid

restitution on the one hand and holding the defrauder to the bargain and recovering out-of-pocket

losses resulting from the fraudulent transaction on the other hand"); *see also Rolf v. Blyth,*

*Eastman Dillon & Co., Inc.,* 637 F.2d 77, 87 (2d Cir. 1980) ("In view of the high inflation rates

that beset this period [during the fraud], a damage award without prejudgment interest . . . would

not give [Plaintiff] full compensation for the losses he suffered at the hands of his fiduciary.").[7]

---

[7] Courts have also held that consequential damages for federal securities fraud may include taxes
paid by the injured party. *See, e.g., Zaresky v. E.F. Hutton & Co.*, 509 F. Supp. 68, 73 (S.D.N.Y.
1981) ("[T]he proper measure of damages . . . for churning is not the change in market value of a
portfolio but the amount of commissions, fees, interest and taxes paid to defendant because of
illegal activity. The restitution measure of damages is utilized in churning cases where it is
impossible to know what securities would have been in the account but for defendant's fraud.");
*Stevens v. Abbot, Proctor & Paine*, 288 F. Supp. 836, 850-51 (E.D. Va. 1968) (finding that a
percentage of capital gains taxes due to defendant's fraudulent conduct was recoverable as actual
damages). To the extent BLMIS's false reports of earnings caused Defendant to incur and pay
taxes on fictitious gains, Defendant's damages claims against BLMIS include the taxes BLMIS
caused Defendant to pay and constitute "value" under Section 548(c).

Complementing the Rule 10b-5 claims, Section 29(b) of the 1934 Act also entitles Defendant to void its investment contracts and obtain prejudgment interest. 15 U.S.C. § 78cc(b) (providing that "[e]very contract made in violation of any provision of this title . . . shall be void"); *see, e.g.*, *Boguslavsky v. Kaplan*, 159 F.3d 715, 722 (2d Cir. N.Y. 1998) ("Section 29(b) provides for the rescission of a contract if the contract violates any provision of the Act or its regulations."); *Am. Gen. Ins. Co. v. Equitable Gen. Co.*, 493 F. Supp. 721, 767-68 (E.D. Va. 1980) (holding that plaintiffs were entitled to rescission and prejudgment interest from the date of the initial fraudulent transfer under 29(b)).

Defrauded BLMIS customers also hold state law claims for common law fraud and breach of fiduciary duty, which allow for rescission and restitution or damages, including the right to interest. *See* CPLR § 5001(a) ("Interest shall be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property");[8] *USPS v. Phelps Dodge Ref. Corp.*, 950 F. Supp. 504, 518 (E.D.N.Y. 1996) (noting that an award of pre-judgment interest on a rescission claim ensures "that the plaintiff [will] be compensated for being deprived of  the use of its money"); *Scalp & Blade v. Advest, Inc.*, 765 N.Y.S.2d 92, 102 (4th Dep't 2003) ("Plaintiff [brokerage customers] are not necessarily limited to recovering the value of their lost capital, and might well recover compensatory damages calculated in part on the basis of general market performance. . . . Indeed, plaintiffs have alleged deliberate and flagrant self-dealing and dishonesty on the part of defendant[] [brokers]."); *Big Apple Car, Inc. v. City of New York*, 204 A.D.2d 109, 110-11 (1st Dep't 1994) ("[A] defrauded party to a contract may elect to either disaffirm the contract by a prompt rescission or stand on the contract and thereafter maintain an action at law for damages

---

[8] The New York statutory interest rate is 9%.  CPLR § 5004.

attributable to the fraud."); *DeLong Corp. v. Morrison-Knudsen Co., Inc.*, 20 A.D.2d 104, 107 (1st Dep't 1963) ("It has been the settled rule that interest must be allowed as a matter of right on recoveries for intentional tort with respect to property and property rights."), *aff'd*, 14 N.Y.2d 346 (1964); *see also* 16 N.Y. Jur. 2d § 2 ("Where damages have been sustained, . . . they may be recovered as an incident to an action in equity for a rescission.").

### 2.    The Antecedent Debt Constitutes "Value," and the Transfers Cannot Be Avoided

Payments that satisfy an antecedent debt are generally not avoidable.  *See, e.g.*, *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 54 (2d Cir. 2005) ("[A] conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another."); *Balaber-Strauss v. Lawrence  (In re Churchill Mortg. Inv. Corp.)*, 264 B.R. at 308 (holding that Ponzi schemer's payments to brokers satisfied an antecedent debt thus precluding avoidance under 548(a)(1)(A)-(B)); *Breeden*, 1999 Bankr. LEXIS 1843, at *25-26 (holding that debtor's fraud liability "falls within the Code's broad definition of a 'debt,' and as such, the Debtors' payments to Defendant -- which incidentally served to satisfy Defendant's unasserted, undiscovered, and possibly unimagined tort rights -- operated as the satisfaction of an antecedent debt, and hence as an exchange for value under Code § 548(c)").

Defendant is unaware of a Second Circuit case ruling on whether federal securities claims existing from the time of a broker's fraudulent inducement may form the basis of valid antecedent debts whose satisfaction constitutes value under Section 548(c). However, a recent Ninth Circuit decision, *Official Committee v. Hancock Park Capital II, L.P. (In re Fitness Holdings)*, 714 F.3d 1141 (9th Cir. 2013), makes clear that "antecedent debt" is determined for purposes of "value" in Section 548 by reference to the applicable non-bankruptcy law that

12

establishes the transferee's entitlement.  Noting that "[t]he Code ... broadly defines 'debt' as

liability on virtually any type of 'right to payment'," and relying on the Supreme Court decisions

in *Travelers* and *Butner*,[9] the Ninth Circuit held that where a transfer is alleged to have been

made in repayment of an antecedent debt, "the court must determine whether the purported

'debt' constituted *a right to payment under state law*." *Id.* at 1147 (italics added).  In this respect,

*Fitness Holdings* confirms that "value" and "debt" for purposes of Section 548 are questions

determined by state law, and that the term "state law" is viewed "expansively" to include "claims

that have their source in federal law." *Id.* at 1146 n.6 (citations omitted).[10]

As Defendant held the foregoing claims against BLMIS, BLMIS's payments to

Defendant satisfied those antecedent debts, thus constituting "value" pursuant to Section 548(c).

*See Daly v. Fusco (In re All-Type Printing, Inc.)*, 274 B.R. 316, 324 (Bankr. D. Conn. 2002)

("[Debtor's ]payment [p]romise created a 'debt' owing to [creditor] -- *i.e.* the Retirement Debt. .

. . Satisfaction of an antecedent debt is explicitly acknowledged . . . to be 'value' for purposes of

fraudulent transfer analysis."); *Brown v. Brandenburg (In re McGee)*, No. 99-5037, 2000 Bankr.

LEXIS 1865, at *27 (Bankr. E.D. Ky. Nov. 22, 2000) ("If a defrauded purchaser of a security

---

[9] *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co*, 549 U.S. 443 (2007), and *Butner v. United States*, 440 U.S. 48 (1979).

[10] Judge Rakoff's recent October 15th  antecedent debt ruling does not even mention the *Fitness Holdings* decision.  Moreover, Judge Rakoff relied on a prior Ninth Circuit decision for the conclusion that the only cognizable value that could be conferred upon an investor in a Ponzi case is the person's invested principal. *See Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008).  But *Fitness Holdings* is significant as the most recent decision from the Ninth Circuit on the meaning of the statutory terms "debt" and "value" in Section 548, and thereby calls into question the viability of *Donell* as persuasive authority – even in the Ninth Circuit – for limiting the scope of "value" to the retention of a brokerage customer's principal in a Ponzi clawback case, notwithstanding clear substantive non-bankruptcy law rights to payment for more than principal under both state and federal law. *Fitness Holdings* recognizes that such rights to payment under substantive non-bankruptcy law are "antecedent debts" within the meaning of Section 548(d)(2)(A).

were required to forfeit to a common fund (the bankruptcy estate) all income received on the security in order to share in the distribution of that fund pro rata with other defrauded purchasers of the security, some of whom are not being sued for contribution to the fund because the amount of income they received on the security is too small to warrant action against them, *the measure of damages provisions of the [securities fraud] statute would be frustrated in an inequitable manner.*") (emphasis added); *Breeden*, 1999 Bankr. LEXIS 1843, at *31-32 ("[If] the contract was found to be unenforceable because of the Debtors' fraud, CPLR §§ 5001 and 5004 would have entitled Defendant to damages . . . . *It thus follows that those payments that were in excess of Defendant's original investment amount, but less than the equivalent of nine percent interest, served to reduce the antecedent liability of the Debtors and thus constituted 'value' by the plain language of Code § 548(d)(1).*") (emphasis added); *In re Lucar Enter., Inc.*, 49 B.R. 717, 718 (Bankr. S.D. Fla. 1985) (holding that debtor's payment to bank satisfied an antecedent debt, which could not be avoided); *accord Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 491 (D. Conn. 2002) ("In exchange for the interest [the Ponzi scheme] paid to the Defendants, the Debtor received a dollar-for-dollar forgiveness of a contractual debt.  [If] these Defendants had not been paid the interest owed, they would have been creditors of the Debtor's bankruptcy estate, asserting claims for unpaid interest.").

Accordingly, the Trustee's claims must be dismissed in their entirety.

### B.    The Trustee Fails to State a Claim to Avoid Obligations[11]

The Trustee amended the initial complaint to add an allegation that "[t]o the extent that BLMIS or Madoff incurred obligations to the Defendant in connection with the Account

---

[11] The District Court determined that this issue did not need to be decided in the withdrawn proceedings resulting in the *Greiff* decision.  *Greiff*, 476 B.R. at 728 n.12.  The question of the effect of the statutory limitations on the Trustee's avoidance power with respect to "obligations incurred" has not previously been adjudicated in the BLMIS proceedings.

Documents or any statements or representations made by BLMIS or Madoff, such obligations . . . are avoidable . . . ."  ¶¶ 42-44.

As discussed below, the Trustee's claims fail, because (1) SIPA does not permit avoidance of obligations; (2) even if it did, the Trustee's allegations are not sufficiently pled; (3) the Trustee seeks to avoid obligations that no longer exist; (4) the Trustee seeks to avoid obligations that were incurred beyond the reach back period; and (5) obligations that arise by statute or regulatory process are not avoidable.[12]

### 1.    SIPA Does Not Permit Avoidance of Obligations

The Trustee seeks to avoid obligations pursuant to Section 548(a)(1)(A) of the Bankruptcy Code and Sections 78fff(b) and 78fff-1(b) of SIPA.  ¶ 42.[13]  These claims must be dismissed because SIPA does not permit avoidance of obligations.

SIPA empowers the Trustee to assert the same avoidance powers as a bankruptcy trustee, but only "[t]o the extent consistent with the provisions of this Act [i.e., SIPA]."  15 U.S.C. § 78fff(b).  Regarding avoidance, SIPA provides that "[w]henever customer property is not sufficient to pay in full [customer] claims . . . , the trustee *may recover any property transferred by the debtor* which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11 of the United States

---

[12] Because the Complaint does not identify the "obligations" the Trustee seeks to avoid, Defendant is unable to ascertain all potential defenses to the Trustee's claims.  If the Trustee identifies the particular obligations he seeks to avoid, Defendant reserves the right to file an additional motion to dismiss those claims.

[13] The Trustee also cites Section 105(a) of the Bankruptcy Code, which authorizes a bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  However, Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law."  *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.),* 351 F.3d 86, 92 (2d Cir. 2003).

Code."  15 U.S.C. § 78fff-2(c)(3) (emphasis added).  This provision only allows the Trustee to recover "property transferred," not obligations.  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.").

Under controlling rules of statutory construction, Section 78fff-2(c)(3), the specific SIPA avoidance provision, which omits reference to obligations, takes precedence over any other generalized grant of avoidance powers to the Trustee.  *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228 (1957) ("However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment."); *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general."); *Lamie v. United States Tr.*, 540 U.S. 526, 538 (2004) (holding that courts should not add an "absent word" to a statute, especially when there is a "plain, nonabsurd meaning in view").

Thus, while the Bankruptcy Code expressly permits avoidance of "obligations," 11 U.S.C. § 548(a)(1), SIPA only permits the recovery of *voidable transfers of property*.  15 U.S.C. § 78fff-2(c)(3).  This limitation is consistent with SIPA's purpose, which is to marshal customer property for distribution to customers holding net equity claims.[14]  *See* 15 U.S.C. § 78fff(a); *see*

---

[14] Congress never included "obligations" within the purview of avoidance remedies in stockbroker liquidation proceedings under either the bankruptcy laws or SIPA.  When SIPA was adopted in 1970, the Bankruptcy Act of 1898 (30 Stat. 544) then in effect, as amended by the Chandler Act of 1938 (52 Stat. 840), provided that in non-stockbroker bankruptcy cases "every transfer made and every obligation incurred by a debtor" was subject to avoidance.  *See* Bankruptcy Act of 1898, 61d(2)-(4), formerly codified at 11 U.S.C. § 101 (1970), *repealed by*
(footnote continued)

*also Nat'l Union Fire Ins. Co. v. Camp (In re Government Sec. Corp.)*, 972 F.2d 328, 331 (11th Cir. 1992) ("The purpose of SIPA is to return to customers of brokerage firms their property or money."). Avoiding an obligation simply renders it unenforceable against the debtor. *See In re Asia Global Crossing, Ltd.*, 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005) (noting that when an obligation is avoided the "obligation is rendered unenforceable, [and] there is nothing to return" to the estate). This does not result in any increase in customer property for distribution.

In *In re Asia Global Crossing, Ltd.*, the court addressed whether a guaranty was a "transfer" or an obligation" in the context of Bankruptcy Code Section 502(d), which, like SIPA, mentions avoidance of "transfers," but not "obligations." *Id.* at 202-03 (discussing 11 U.S.C. § 502(d)). The court noted that Section 502(d) focuses only on avoidable "transfers" and omits reference to "obligations":

---

Pub. L. No. 95-598, §§ 401(a), 402(a) (1978) (eff. Oct. 1, 1979). The Chandler Act of 1938 added Section 60e to the Bankruptcy Act to address stockbroker liquidations, for which a trustee's avoidance power was limited to reaching "a transfer" of any property "which, except for such transfer, would have been part of the [separate and segregated fund] recovered by the trustee for the benefit of such fund if such transfer is voidable or void under the provisions of this Act." *Id.* § 60e(5), formerly codified at 11 U.S.C. § 96 (1970), *repealed by* Pub. L. No. 95-598, §§ 401(a), 402(a) (1978) (eff. Oct. 1, 1979). The 1938 stockbroker provisions did not mention the avoidance of obligations.

The bankruptcy avoidance powers in Sections 548 and 544 of the Bankruptcy Code enacted in 1978 are substantively the same as in the prior bankruptcy law. Both empower a trustee to challenge transfers *and* obligations. In contrast, the stockbroker liquidation provisions in Subchapter III of Chapter 7 of the Bankruptcy Code limit avoidance to "transfer[s] of property," without any mention of "obligations." *See* 11 U.S.C. § 749(a).

Likewise, the 1970 SIPA statute, as with the current text of SIPA, omitted the phrase "obligations incurred." § 6(c)(2)(D), 84 Stat. 1650 (1970). Although Congress amended SIPA in 1978, the phrase "obligations incurred" was not added at that time, *see* Pub. L. No. 95-283, 92 Stat. 261 (1978), *as amended* Pub. L. No. 95-598, § 308(*l*), 92 Stat. 2675 (1978), or in any later amendments. *See* Historical and Statutory Notes to the provisions of SIPA, 15 U.S.C.A. ch. 2B-1 - Securities Investor Protection (West 2009 & Supp. 2011).

> Section 502(d) is not . . . coextensive with the avoidance provisions available to the trustee. The Bankruptcy Code allows a trustee to avoid both transfers and obligations in appropriate circumstances. *See* 11 U.S.C. §§ 544, 548. If the trustee avoids a "transfer," he can recover the property transferred or the value of the property under § 550. If, on the other hand, he avoids an obligation, the obligation is rendered unenforceable, there is nothing to return . . . . In short, § 502(d) applies to avoidable transfers but does not apply to avoidable obligations.

*Id.* at 202; *cf. U.S. Bank N.A. v. Verizon Commc'ns, Inc.*, No. 10-01842, 2012 U.S. Dist. LEXIS 106576, at *12 (N.D. Tex. July 31, 2012) ("While a debtor can recover under Section 550 for a transfer of property, it cannot recover under Section 550 for an obligation incurred."); *Brown v GE Capital Corp. (In re Foxmeyer Corp.)*, 290 B.R. 229, 234 (Bankr. D. Del. 2003) (holding that trustee could not avoid obligations because "only transfers of property are remediable under § 550(a)(1)"); *In re Revco D.S.*, No. 88-1308, 1990 Bankr. LEXIS 2966, at *67 (Bankr. D. Ohio Dec. 17, 1990) ("Section 502(d) limits its application . . . to a fraudulent transfer, while omitting any reference to incurrence of an avoidable obligation.").

As SIPA only authorizes the Trustee to avoid transfers of property, the Trustee's claims to avoid obligations must be dismissed.

### 2.    The Complaint Fails to Identify the Purportedly Avoidable Obligations

On the most basic level, the Trustee's allegations are deficient because they fail to identify the purportedly avoidable fraudulent obligations. Instead, the Complaint contains only vague and generalized allegations that "[t]o the extent BLMIS or Madoff incurred obligations" to Defendant, "such obligations . . . are avoidable . . . ." ¶ 42; *see also* ¶¶ 43-44 (containing similarly vague references to obligations). Although the Trustee sets forth the date and amount of each purportedly avoidable *transfer*, no such information is included regarding purportedly avoidable *obligations*. *See* Exhibit B to Amended Complaint (listing the dates and amounts of all allegedly avoidable transfers).

18

"At a minimum, the complaint must be sufficiently specific to give the defendant full notice of the claims that are being asserted and to allow the defendant to prepare an adequate answer, with affirmative defenses and counterclaims."  Collier on Bankruptcy § 548.11[1][a][ii] (16th ed. 2012); *see also Fannie Mae v. Olympia Mortg. Corp*., No. 04-4971, 2006 U.S. Dist. LEXIS 70175, at *33 (E.D.N.Y. Sept. 28, 2006) (dismissing claims because complaint "does not identify how many transfers plaintiff is challenging or the specific dates and amounts of those transfers"); *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 646 (E.D.N.Y. 2003) (same).

Defendant cannot ascertain from the Complaint what obligations the Trustee seeks to avoid or what defenses may apply.  Accordingly, these claims must be dismissed as insufficiently pled.

### 3.    The Trustee Cannot Avoid Obligations Already Satisfied

The term "obligation" is not defined in the Bankruptcy Code or SIPA.  Courts analyzing this term hold that "[i]n most situations, [an] 'obligation' will impose a 'debt' on the obligor, and give a 'claim' to the obligee."  *In re Asia Global Crossing, Ltd.*, 333 B.R. 199, 203 (Bankr. S.D.N.Y. 2005) (quoting Black's Law Dictionary).  "Generally an obligation is incurred when a debtor becomes legally obligated to pay."  *FCC v. Nextwave Pers. Commc'ns, Inc. (In re Nextwave Pers. Commc'ns, Inc.)*, 200 F.3d 43, 56 (2d Cir. 1999); *see also* Collier on Bankruptcy § 548.03[4][b] (16th ed. 2012) ("Most cases hold that an obligation is incurred when it becomes legally binding under applicable nonbankruptcy law.").

Again, it is unclear what obligations the Trustee seeks to avoid.  However, as discussed above, BLMIS owed Defendant various obligations under federal and state substantive law. BLMIS's payments to Defendant satisfied those obligations.  Once those obligations were satisfied, the "debt" ceased to exist and there was no longer an "obligation."  *See* Complaint

19

Exhibit B. The Trustee cannot avoid obligations that no longer exist, and cannot go back in time to retroactively avoid obligations that have already been satisfied. *See O'Toole v. Karnani (In re Trinsum Group, Inc.)*, 460 B.R. 379, 388 (Bankr. S.D.N.Y. 2011) ("Since the notes were executed outside of the two-year reach-back period, the Distributing Agent cannot seek to avoid the obligations the Debtors owe to the Defendants on account of these notes. Specifically, the transfers are viewed as paying an antecedent debt (the notes), and it is presumed the transfers were made 'for value.'").

Indeed, the Code provides for avoidance of obligations because, "[j]ust as avoiding a transfer brings back assets to the estate to increase distributions, avoiding an obligation decreases the claims against the already existing estate assets, which then proportionately increases creditor dividends." Collier on Bankruptcy §548.03[4][a] (16th ed. 2012). The Trustee's claims would not serve this purpose, given that Defendant has never sought to recover against the estate on debts BLMIS already satisfied.

> ### 4.    The Trustee Cannot Avoid Obligations Incurred Beyond the Two-Year "Reach Back" Period

Notably, the Trustee only sought to avoid obligations once Defendant raised an antecedent debt defense. Presumably, the Trustee added this allegation because, as discussed above, a payment made in satisfaction of an enforceable obligation is an antecedent debt that cannot be avoided. *See* 11 U.S.C. § 548(c). In other words, in order to avoid the transfers identified in the Complaint, the Trustee determined that he must first avoid the obligations pursuant to which the transfers were made. Collier on Bankruptcy § 548.03[4][a] (16th ed. 2012) ("Avoiding an obligation is distinct from avoiding a transfer made pursuant to the obligation.").

But the Bankruptcy Code does not permit the Trustee to avoid *all* obligations going back decades. This would undercut the protections afforded by Section 546(e)'s safe harbor, which by definition, protects "transfers made . . . *in connection with a securities contract*." 11 U.S.C. § 546(e) (emphasis added). Rather, the Trustee may only avoid obligations incurred during the two-year reach back period:

> Plaintiff [debtors] are not correct that th[e] notional ability to assert that an obligation is not exempt from avoidance is an acceptable means to whittle away at or undermine the effectiveness of the [Section 546(e)] safe harbor[]. . . . The Guarantees are not transfers themselves, yet they are resistant to successful challenge because they connect so directly to transfers that are exempt and beyond reach. A transfer made in connection with a securities contract remains unavoidable regardless of whether the Guarantees could potentially be avoided. . . . Despite the fact that the term 'transfer' as used in section 546(e) does not explicitly encompass obligations . . . , certain observations . . . confirm the logic of extending safe harbor protection for transactions that involve transfers that are connected to obligations . . . . Dismissal is appropriate because pursuit of these counts ultimately leads to safe-harbored transfers that may not be avoided.

*Lehman Bros. Holdings v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings)*, 469 B.R. 415, 444-46 (Bankr. S.D.N.Y. 2012). Accordingly, any obligations incurred beyond the two-year reach back period may not be avoided, and thus form a basis for Defendant's Section 548(c) antecedent debt defense, as discussed above.

Yet, the Complaint, though far from clear, apparently seeks to avoid *all* obligations BLMIS ever incurred over the life of the customer-broker relationship. ¶¶ 42-44. To the extent that the claims seek to avoid obligations incurred beyond the "reach back" period, they must be dismissed. *See In re Asia Global Crossing, Ltd.*, 344 B.R. 247, 256 (Bankr. S.D.N.Y. 2006) (rejecting trustee's "use of a time-barred right to avoid a fraudulent obligation as a defense to the underlying claim").

### 5.    Obligations that Arise by Statute or Regulatory Process are Not Avoidable

As discussed above, the term "obligation," as used in Section 548(a)(1), refers to legally enforceable obligations between the debtor and a third party. *See, e.g.*, *In re Asia Global Crossing, Ltd.*, 333 B.R. at 203 ("The Bankruptcy Code does not . . . define an 'obligation,' but it presumably means '[a] formal binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person or set of persons.'").  "In most situations, therefore, the 'obligation' will impose a 'debt' on the obligor, and give a 'claim' to the obligee." *Id.*

Obligations that arise by statute or regulatory process, as opposed to contractual bargaining between the parties, are not avoidable.  *See Nextwave*, 200 F.3d at 55 (holding that $4.74 billion obligation to the FCC could not be avoided because it was incurred as part of the FCC's system for allocating spectrum licenses); *see also Southeast Waffles, LLC  v. IRS (In re Southeast  Waffles, LLC*) 702 F.3d 850, 859 (6th Cir. 2012) ("Tax penalties arise not through contractual bargaining but by operation of statute, and no value is or can be given in exchange. It would defy common sense to find that debtors could avoid such penalties when the IRS was doing only what the tax statutes require.").

The obligations BLMIS owed Defendant arose by operation of the federal securities statutes, of which SIPA is a part -- not through any contractual bargaining.  Accordingly, the obligations arise under statute and cannot be avoided.[15]

---

[15] Section 548(c)'s antecedent debt defense also applies to "obligations."  11 U.S.C. § 548(c). Should the Trustee identify the obligations he seeks to avoid, Defendant reserves the right to raise this and any other applicable defenses.

IV.    **CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion to dismiss.


Dated:    February 3, 2014


Respectfully submitted,


s / Matthew A. Kupillas
Matthew Gluck
Matthew A. Kupillas
Jennifer L. Young
Joshua E. Keller
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Parvin K. Aminolroaya
77 Water Street, 26th Floor
New York, NY 10005
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for the Trust U/W/O Harriet Myers*