Page 1

```
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
 4   In the Matter of:
 5   SECURITIES INVESTOR PROTECTION
 6   COMPANY,
 7                 Plaintiff,
 8            v.                      Case No. 08-01789(SMB)
 9   BERNARD L. MADOFF INVESTMENT
10   SECURITIES, LLC, ET AL.,
11                 Defendants.
12   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
13
14                 U.S. Bankruptcy Court
15                 One Bowling Green
16                 New York, New York
17
18                 February 20, 2014
19                 10:01 AM
20
21
22
23   B E F O R E :
24   HON STUART M. BERNSTEIN
25   U.S. BANKRUPTCY JUDGE
```

1  Hearing re: Conference Re: Inter Account Transfer Issue

25 Transcribed by: Dawn South

```
 1  A P P E A R A N C E S :
 2  BAKER HOSTETLER
 3       Attorneys for the Trustee
 4       45 Rockefeller Plaza
 5       New York, NY 10111
 6
 7  BY:  DAVID J. SHEEHAN, ESQ.
 8       LOURA ALAVERDI, ESQ.
 9       BIK CHEEMA, ESQ.
10
11  LOWENSTEIN SANDLER LLP
12       65 Livingston Avenue
13       Roseland, NJ 07068
14
15  BY:  BRUCE BUECHLER, ESQ.
16
17  SECURITIES INVESTOR PROTECTION CORPORATION
18       Attorney for SIPC
19       805 15th St., N.W.
20       Suite 800
21       Washington, D.C. 20005-2215
22
23  BY:  KEVIN H. BELL, ESQ.
24
25
```

```
 1                P R O C E E D I N G S
 2            THE COURT:  Please be seated.  Good morning.
 3   Madoff.  Good morning.
 4            MR. SHEEHAN:  Good morning, Your Honor.
 5            THE COURT:  I scheduled this conference because
 6   some issues have come up I guess in connection with what
 7   I'll call the Lowenstein motion or the trust motion just to
 8   make it simple.
 9            I guess, Mr. Sheehan, you had expressed a concern
10   that there was a common legal issue regarding whether or not
11   the net investment method applied to inter-account
12   transfers.
13            MR. SHEEHAN:  That's correct, Your Honor.
14            THE COURT:  Okay.  I don't understand them to be
15   challenging that.  They're accepting the net investment
16   method and they're arguing, for reasons we don't have to get
17   into today, that the transfer never occurred.
18            MR. SHEEHAN:  I understand that --
19            THE COURT:  Is that what you're -- am I right?
20            MR. BUECHLER:  Your Honor, Bruce Buechler of
21   Lowenstein Sandler.
22            That is correct, we're not challenging what I'll
23   call the cash in, cash out methodology that's been accepted
24   by the -- this Court and the Court of Appeals, we're
25   challenging how it's being applied to the facts of my
```

1  client's claims.

2        We had been asking, as set forth in our papers,

3  the trustee and his counsel to deal with this issue for over

4  a year plus and they had told us they would file such a

5  motion on a group basis by the end of December.  When they

6  didn't we just --

7        THE COURT:  Let me just stop you for a minute.

8        MR. BUECHLER:  Right.  But we're not challenging

9  --

10        THE COURT:  But how can I grant the relief in your

11  motion without the presence of your transferee?  You're

12  asking me to invalidate a transfer and the transferee isn't

13  here.

14        MR. BUECHLER:  I'm not sure I understand Your

15  Honor's question.  The transferee --

16        THE COURT:  You're arguing that this transfer

17  never occurred, right?  That's the way I read your papers.

18        MR. BUECHLER:  Based on the methodology used --

19        THE COURT:  I understand, but you're --

20        MR. BUECHLER:  Yes.

21        THE COURT:  -- arguing that a transfer never

22  occurred and the transferee may disagree.

23        Do we know if this transferee has a claim or

24  pulled any money out of the account?

25        MR. BUECHLER:  Your Honor, we do know that, the

1    transferee is an entity called Judaic Heritage --

2            THE COURT:  Right.

3            MR. BUECHLER:  -- they have no claim and there was

4    you no clawback proceeding ever commenced against that

5    party.

6            THE COURT:  No, that's -- I'm asking you a

7    different question.  Did they ever withdraw money?

8            MR. SHEEHAN:  Yes, Your Honor, they did.

9            THE COURT:  Yeah, so how can you get the money?

10    You're getting -- just answer my procedural question.

11            How can I make a determination that this transfer

12    never occurred and grant you the relief that you're

13    ultimately seeking, the allowance of your claim for what you

14    say was in the account, without the transferee as a party to

15    this proceeding?

16            MR. BUECHLER:  Your Honor, we have plenty of time

17    if you want us to notice the transferee.

18            THE COURT:  I don't know how you're going to bring

19    him into a claim objection.  Don't you have to start an

20    adversary proceeding, join the transferee, maybe join

21    Mr. Picard, maybe file it here, maybe file it in State

22    Court, you know, argue -- or seek a declaratory judgment

23    that a transfer never occurred?

24            MR. BUECHLER:  Your Honor, we --

25            THE COURT:  I'm just -- don't you have to have the

1  transferee present?  Forget about the procedural mechanism
2  for a minute.
3           MR. BUECHLER:  We don't believe so, Your Honor.
4  We can provide the Court with the documentation as to what
5  happened with the --
6           THE COURT:  I know what happened --
7           MR. BUECHLER:  -- transferee's --
8           THE COURT:  -- but the transferee is going to say
9  it occurred.  Is the transferee going to give back the
10 money?
11          MR. BUECHLER:  There's no ability for the
12 transferee to do that, the transferee -- the time period for
13 the trustee to bring a clawback proceeding expired, and
14 based upon prior negotiations no -- no --
15          THE COURT:  So you think -- just as a matter of
16 law you think I can invalidate a transfer without the
17 transferee being a party to the suit.
18          MR. BUECHLER:  Your Honor, it's not an issue of
19 invalidating the transfer, it's whether the transfer
20 occurred as to whether my client is a net winner or loser
21 and has a claim against this bankruptcy estate.
22          THE COURT:  But don't you have to invalidate the
23 transfer in order to be a net winner?
24          MR. BUECHLER:  Your Honor --
25          THE COURT:  I'm sorry, net loser.

1                MR. BUECHLER: -- our view is the transfer, given

2    their calculation, never occurred.  And remember, the

3    transfer that they allege occurred include both principal

4    and --

5                THE COURT:  You keep saying that, but --

6                MR. BUECHLER:  -- the fictitious --

7                THE COURT:  -- how do I ever decide that without

8    the transferee being here?

9                MR. BUECHLER:  How does the transferee impact

10   that, Your Honor?

11               THE COURT:  Well the transferee may say it did

12   occur.

13               MR. BUECHLER:  But the transferee has no claim

14   against the estate at this point in time and the trustee has

15   no clawback right, so how does that impact?

16               THE COURT:  All right.  All right.  Let me hear

17   from the other side.

18               MR. SHEEHAN:  Your Honor, if I may just to -- and

19   I don't want to start arguing the motion, but I think --

20               THE COURT:  No, you don't have to argue the

21   merits, it's just --

22               MR. SHEEHAN:  No, but just --

23               THE COURT:  -- it struck me when I read the papers

24   that I cannot grant the relief, even if he's right, in the

25   absence of the transferee.

Page 9

1          MR. SHEEHAN: But in responding to Your Honor's
2  question as to why we believe this falls into the category
3  of all the other 440 similar inter-account transfer matters,
4  what actually happened here, despite the characterization by
5  the Fishman trust here, there's two charitable remainder
6  trusts, the Fishman remainder trust. Madoff was instructed,
7  and we have evidence of this, to make a transfer to the
8  Judaic charity. That transfer was made --
9          THE COURT: Uh-huh.
10         MR. SHEEHAN: -- the Judaic charity then took the
11 money out.
12         When we do our inter-account transfer we give
13 credit when there is money, principal, in that account,
14 there was principal, it went out of both Fishman accounts
15 into the Judaic account. By the way, the Judaic account is
16 also a Fishman charity, all right, so this is all family
17 connected.
18         So the two charitable remainder trusts transferred
19 to Judaic, Judaic then takes the money out.
20         We make the decision, on our discretion as
21 trustee, not to sue a charity. Whether we should have or
22 not that's history at this point. We did not sue them for
23 clawback, as we did not sue many charities, because there
24 were many charities that were impacted by Madoff.
25         But there is no uniqueness to this, this is indeed

1   a transfer from an account where they transferred in

2   addition to principal fictitious profits.  When the money

3   came out the Judaic trust got not only the principal but

4   fictitious profits, which we -- for which we did not sue.

5              This is an inter-account transfer under the net

6   equity calculation, it's very traditional, it's not

7   different.  They can try to characterize it any way they

8   want but that's what it is.

9              THE COURT:  But he's not -- he's not challenging

10  the net -- the computation of the net equity, he's saying

11  that because of that computation where you only rely on cash

12  in, cash out that the transfer didn't occur.

13             Let's forget about the merits.  Do you believe

14  that I could grant relief without the presence of the

15  transferee?

16             MR. SHEEHAN:  I believe that because I look at it

17  as a traditional net equity calculation.  The transferee at

18  that point, all right, Your Honor, is not -- I don't

19  disagree with Mr. Buechler that the transferee is a part of

20  it from our perspective.  Our perspective is the calculation

21  was correct.

22             If they have a problem with the transferee ,who

23  didn't give them their money back, that's their problem.

24  All right?  That's not my problem.

25             THE COURT:  I understand that.

1        All right, look, if you both think that I don't

2  need the presence of the transferee to decide this then I

3  guess I'll decide it in the absence of the presence of the

4  transferee, but I don't think that this is -- the claim

5  that's being raised is -- is part of this larger issue

6  regarding whether the net equity applies to or how it

7  applies to the -- these intercompany transfers -- or these

8  inter-account transfers.

9        MR. SHEEHAN:  Your Honor, I'm not going to try to

10  convince Your Honor of that here this morning, I

11  respectfully disagree, and I think when we ultimately have

12  it before you Your Honor will see that what they've dressed

13  up here is essentially just an inter-account transfer that

14  they don't like happened, they don't like what happened with

15  the money, and they want to get it back, but that's --

16        THE COURT:  All right.

17        MR. SHEEHAN:  -- neither here nor there.

18        We're very happy to brief this motion separately,

19  and then Your Honor we would like to, you know --

20        THE COURT:  Are there any -- are there any factual

21  issues?

22        MR. BUECHLER:  Your Honor, I haven't seen the

23  reply, but I don't believe there are any factual issues

24  between us, we haven't discussed that, but I don't believe

25  that there are.

1         MR. SHEEHAN:  I don't believe so either, Your
2    Honor, unless it becomes -- unless somehow the transferee
3    does become part of this, but I don't see that here this
4    morning.
5         THE COURT:  All right.  So how do you propose we
6    proceed?  It's your motion, you tell me.
7         MR. BUECHLER:  Your Honor, we have filed the
8    motion, it's returnable on right now for hearing dated
9    April 2 with an objection deadline of March 5 and reply
10   deadline of March 19th, which are dates that my associate
11   worked out with, I'll be candid I don't recall -- I don't
12   know who in chambers they spoke to, they did speak to
13   Mr. (indiscernible - 00:08:06) Rose, my associate at --
14        THE COURT:  I see him sitting back there.
15        MR. BUECHLER:  Right.  About the dates, you know,
16   we had tried them, so arguably is we'd like to proceed on
17   that calendar.  If they need a little more time we're
18   willing to adjust that calendar if they need more time to do
19   a reply.
20        MR. SHEEHAN:  If anything we need another week,
21   Judge.
22        THE COURT:  That's fine.
23        I have to tell you this just strikes me as a
24   question of New York law whether they intended to transfer
25   their account.  If that's what you intended the fact that

1   there was something less in there that you thought I don't

2   know how that makes a difference, but you can go ahead and

3   brief it and I'll decide the motion.

4           MR. SHEEHAN:  All right, fine, Your Honor, and we

5   would like to, if I may while we're here, Your Honor --

6           THE COURT:  Uh-huh.

7           MR. SHEEHAN:  -- respectfully there are now 439

8   other inter-account transfers, we are going to file with

9   Your Honor, and we'll work this out with your chambers, a

10  scheduling motion, we've done this in the past.

11          THE COURT:  Okay.

12          MR. SHEEHAN:  We did it with net equity, with

13  customer status, with time-based damages, all of those were

14  done on a scheduling order basis so that on that basis

15  everyone gets to participate.

16          THE COURT:  That's fine.

17          MR. SHEEHAN:  All right?

18          THE COURT:  I just -- this just sounds like a

19  different kind of --

20          MR. SHEEHAN:  If Your Honor sees it --

21          THE COURT:  -- one off dispute.

22          MR. SHEEHAN:  If Your Honor sees it that way

23  that's the way we're going to deal with it.

24          THE COURT:  Well are any other -- maybe I should

25  ask you, are there -- to your knowledge are there any other

1   claimants who are contending that somehow a transfer didn't

2   occur?

3           MR. SHEEHAN:  I don't know that there's anyone

4   that's saying it exactly the way -- that's the -- I was

5   going to say the beauty of the Madoff case, I don't know if

6   that would be the right adjective -- but in any event is

7   that every case has its own factual story to it, Your Honor,

8   I would not doubt that there are other cases, I don't know

9   of any offhand, but I think this is somewhat unique --

10          THE COURT:  Okay.

11          MR. SHEEHAN:  -- from the standpoint of how

12  they're characterizing what transpired, not from what we

13  believe the underlying facts will prove.

14          THE COURT:  It doesn't sound like there's a

15  factual dispute.

16          MR. SHEEHAN:  I guess I don't either, Your Honor,

17  so I don't understand why the net equity calculation doesn't

18  apply and their claim gets denied.

19          So you know, if they authorize a transfer --

20          THE COURT:  Well, they have -- but they have a

21  different argument.  They're saying that the transfer never

22  occurred.

23          MR. SHEEHAN:  The transfer occurred.

24          THE COURT:  Well but they're saying it didn't,

25  and --

1               MR. SHEEHAN:  Well how are they going prove that?
2   We have the books and records.
3               THE COURT:  I don't know.
4               MR. SHEEHAN:  The transfer occurred to the Judaic,
5   the Judaic gave the money, they took the money, they cashed
6   the check --
7               THE COURT:  Right.
8               MR. SHEEHAN:  -- and it's their charity, the
9   Judaic.
10              Maybe we do need a little discovery to show you,
11  Your Honor, what's going on here in terms of the fact that
12  the Fishmans don't like the outcome here, right?
13              THE COURT:  Well you have to books and records
14  which show that a transfer occurred on --
15              MR. SHEEHAN:  Absolutely.
16              THE COURT:  -- the books and records and then you
17  have books and records which show the cash in, cash out of
18  the -- of the transferee, right?
19              MR. SHEEHAN:  Correct.
20              THE COURT:  So I don't know if you need discovery.
21              MR. SHEEHAN:  I didn't think I did either, but I'm
22  starting to wonder if they can simply say if those are the
23  facts they didn't happen I don't know what the magic wand is
24  here but that doesn't change the fact that it did.
25              THE COURT:  Why don't you see if you can enter

Page 16

1  into a stipulation of facts in connection with this matter
2  in terms of --
3          MR. SHEEHAN:  Happy to do that, Your Honor.
4          THE COURT:  -- what happened with these accounts.
5          MR. SHEEHAN:  Whatever we can work out.
6          THE COURT:  It doesn't -- it doesn't sound like
7  there's a major dispute and it's mostly a legal issue.
8          In terms of your other motion you can tee it up --
9          MR. SHEEHAN:  All right.  We will, Your Honor.
10         THE COURT:  -- in the same way that you did the
11 other ones.  Just contact Ms. Vogel (ph).
12         MR. SHEEHAN:  We will, Your Honor.
13         THE COURT:  All right.
14         MR. SHEEHAN:  All right, thank you.
15         MR. BUECHLER:  Thank you, Judge.
16         THE COURT:  All right, thanks.
17         MR. BUECHLER:  Have a good morning.
18     (Whereupon these proceedings were concluded at 10:12
19 AM)
20
21
22
23
24
25

1            C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5
      **Dawn South**    Digitally signed by Dawn South
6                       DN: cn=Dawn South, o, ou,
                        email=digital1@veritext.com,
                        c=US
7                       Date: 2014.02.21 12:47:46 -05'00'

8    AAERT Certified Electronic Transcriber CET**D-408

9

10   Veritext

11   330 Old Country

12   Suite 300

13   Mineola, NY 11501

14

15   Date:   February 21, 2014

16

17

18

19

20

21

22

23

24

25