**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>         Debtor. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>         Plaintiff,<br><br>v.<br><br>DEFENDANTS LISTED ON APPENDIX A ATTACHED HERETO,<br><br>         Defendants. | Adv. Pro. Nos. listed on Appendix A Attached Hereto |

**DECLARATION OF NICHOLAS J. CREMONA, PURSUANT TO 28 U.S.C. § 1746,**
**IN SUPPORT OF TRUSTEE'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Pursuant to 28 U.S.C. § 1746, NICHOLAS J. CREMONA hereby declares as follows:

1.      I am a partner at Baker & Hostetler LLP, counsel for Irving H. Picard, Plaintiff in the above captioned action, and I submit this declaration in opposition to the Motions to Dismiss (collectively, the "Motions") filed by Defendants listed on Appendix A,[1] in which Defendants move this Court to dismiss the complaints filed by the Trustee.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Transcript of Hearing, *In re Madoff Sec.,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 14, 2014).

---

[1] Appendix A is attached to the Trustee's memorandum of law in opposition to the Motions (the "Opposition").

3.     Attached hereto as Exhibit 2 is a true and correct copy of the Letter from select defense counsel to the Honorable Jed S. Rakoff, dated May 9, 2013.

4.     Attached hereto as Exhibit 3 is a true and correct copy of the Letter from Baker & Hostetler LLP, counsel for Plaintiff Irving H. Picard, to the Honorable Jed S. Rakoff, dated May 10, 2013.

5.     Attached hereto as Exhibit 4 is a true and correct copy of the Partnership Account Agreement between Bernard L. Madoff Investment Securities LLC ("BLMIS"), L.H. Rich Companies, N.R. Investment Associates, and M.R. Investment Associates.

6.     Attached hereto as Exhibit 5 are true and correct copies of letters from L.H. Rich Companies, requesting withdrawals from its BLMIS account, dated May 31, 2000, December 21, 2004, January 11, 2006, and March 17, 2008.

7.     Attached hereto as Exhibit 6 is a true and correct copy of the Letter from L.H. Rich Companies, requesting a change of address, dated February 24, 1997.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 10, 2014
New York, New York                          */s/ Nicholas J. Cremona*
                                             Nicholas J. Cremona

# EXHIBIT 1

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   SECURITIES INVESTMENTS,        Case No. 08-1789(SMB)

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  U.S. Bankruptcy Court

13                  One Bowling Green

14                  New York, New York

15

16

17                  February 14, 2014

18                  11:01 AM

19

20

21

22

23  B E F O R E :

24  HON STUART M. BERNSTEIN

25  U.S. BANKRUPTCY JUDGE

Page 2

1    Hearing re:  Conference Re:  Request for Consolidated

2    Briefing in Madoff (08-1789) in connection with Dkt. Nos.

3    5641, 5644, and 5648.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

**Page 3**

1   A P P E A R A N C E S :

2   DENTONS US LLP

3        Attorney for Defendants

4        1221 Avenue of the Americas

5        New York, NY 10020-1089

6

7   BY:  CAROLE NEVILLE, ESQ.

8

9   K&L GATES LLP

10        Attorney for Defendants

11        1601 K Street NW

12        Washington, D.C. 20006-1600

13

14   BY:  RICHARD A. KIRBY, ESQ.

15

16   LOEB & LOEB LLP

17        Attorneys for Defendants

18        345 Park Avenue

19        New York, NY 10154

20

21   BY:  P. GREGORY SCHWED, ESQ.

22        DANIEL B. BESIKOF, ESQ.

23

24

25

**Page 4**

```
 1   BECKER & POLIAKOFF, LLP

 2        Attorney for Defendants

 3        45 Broadway

 4        8th Floor

 5        New York, NY 10006

 6

 7   BY:  JULIE GORCHKOVA, ESQ.

 8

 9   PRYOR CASHMAN LLP

10        Attorney for Defendants

11        7 Times Square

12        New York, NY 10036-6569

13

14   BY:  RICHARD LEVY, JR., ESQ.

15

16   BAKER HOSTETLER

17        Attorneys for the Trustee

18        45 Rockefeller Plaza

19        New York, NY 10111

20

21   BY:  DAVID J. SHEEHAN, ESQ.

22        NICHOLAS J. CREMONA, ESQ.

23        EDWARD J. JACOBS, ESQ.

24

25
```

**Page 5**

1    SECURITIES INVESTOR PROTECTION CORPORATION

2         Attorney for SIPC

3         805 15th St., N.W.

4         Suite 800

5         Washington, D.C. 20005-2215

6

7    BY:  KEVIN H. BELL, ESQ.

8

9    WINDELS MARX LANE & MITTENDORF, LLP

10        Counsel of Record for the Trustee

11        156 West 56th Street

12        New York, NY 10019

13

14   BY:  ALAN NISSELSON, ESQ.

15        KIM M. LONGO, ESQ.

16

17   MILBERG LLP

18        Attorney for Defendants

19        One Pennsylvania Plaza

20        New York, NY 10119

21

22   BY:  JOSHUA E. KELLER, ESQ.

23

24

25

Page 6

```
 1   KRAMER LEVIN NAFTALIS & FRANEKEL LLP

 2        Attorneys for Defendants

 3        1177 Avenue of the Americas

 4        New York, NY 10036

 5

 6   BY:  ELISE S. FREJKA, ESQ.

 7        PHILIP BENTLEY, ESQ.

 8

 9   SCHULTE ROTH & ZABEL LLP

10        Attorney for Defendants

11        919 Third Avenue

12        New York, NY 10022

13

14   BY:  JENNIFER M. OPHEIM, ESQ.

15

16   BRYAN CAVE LLP

17        Attorney for Defendants

18        1290 Avenue of the Americas

19        New York, NY 10104-3300

20

21   BY:  THOMAS J. SCHELL, ESQ.

22

23

24

25
```

Page 7

```
  1                    P R O C E E D I N G S

  2              THE CLERK:  All rise.

  3              THE COURT:  Please be seated.  Good morning.

  4      Madoff.

  5              I scheduled this conference because I had received

  6      a letter, I guess by K&L, which implied that I shouldn't

  7      decide a pending motion to dismiss, so --

  8              MS. NEVILLE:  Not from K&L, Your Honor.

  9              THE COURT:  All right.  Well, I'll hear you any

 10      way, Ms. Neville.

 11              MS. NEVILLE:  But Carole Neville from Dentons.

 12              I am a member of the defense group that sent that

 13      letter to you, and I think that my colleagues at some point

 14      would like to put their appearances on the record, but the

 15      firms are K&L Gates and Dentons and Kleinberg, Kaplan,

 16      Kramer Levin, Loeb & Loeb, Milberg, Pryor Cashman, Schulte,

 17      and Seeger Weiss.

 18              And the request we have, Your Honor, is for a case

 19      management order that includes a consolidated docket, a

 20      briefing schedule on common issues, and coordinated

 21      discovery.

 22              And I think if I have two minutes to tell you a

 23      little bit about the history of the case --

 24              THE COURT:  Go ahead.

 25              MS. NEVILLE:  -- it will explain why we're asking
```

1    for this.

2         The trustee filed about 1,000 actions -- avoidance

3    actions, 800 of them or so -- and I'm sure Mr. Sheehan can

4    give me the correct number -- are against the so-called good

5    faith defendants, my clients, and the clients of this

6    defense group.

7         The trustee is seeking only recovery of profits,

8    there's no argument that they all acted in good faith

9    without knowledge of the fraud.

10        Right from the beginning of the case we

11   coordinated the briefing on major issues, and I think it was

12   contemplated that we would remain before Judge Lifland and

13   continue that consolidated briefing.

14        What happened is that we actually moved to

15   withdraw the reference and Judge Rakoff withdrew the

16   reference of certain issues, four or five discreet issues,

17   one of which is very important for this consideration of

18   this case management.  It's whether or not 546(e) provides a

19   safe harbor for the transactions of our clients.

20        Judge Rakoff ruled in our favor, the issue is now

21   before the Second Circuit on the trustee's appeal, and that

22   case -- or that decision of Judge Rakoff divided the cases

23   that were pending, the 800 or so, into different buckets.

24        There are those cases that are completely disposed

25   of by the two-year limitation or by the elimination of

1    preference claims.  There are those cases that are

2    substantially disposed of by the 546(e).  The trustee had

3    some formula which determined what was substantial effect.

4    And so those cases are before Your Honor but they are on

5    extensions of our time to answer or otherwise move to either

6    April or July.

7              I don't know how many cases fall into that bucket

8    but probably hundreds.

9              THE COURT:  Isn't the 546(e) issue on appeal to

10   the Second Circuit?

11             MS. NEVILLE:  Yes, it's before the Second Circuit,

12   it's scheduled to be heard on March 5th, and it does dispose

13   not only of those cases which are fully disposed of or

14   substantially disposed of but it affects even those cases

15   which are now pending before Your Honor.

16             I have an example.  I have a case where there are

17   three accounts in one cause -- in one complaint.  Two of

18   those accounts were closed before 2007.  So if we prevail on

19   the 546(e) two of the accounts -- defendants are out of the

20   action.

21             While the 546(e) was working its way up to the

22   Second Circuit and it's consolidated and we worked very hard

23   to coordinate 6- or 800 cases before the Second Circuit on

24   this issue, Judge Rakoff ruled on other issues as well, but

25   he sent the cases back from Dentons, Pryor Cashman, and

Page 10

1      Milberg to Judge Lifland.  We -- we were out of sync with

2      the other defendants in that regard and we all moved to

3      dismiss the cases on other grounds last March.

4              Those motions to dismiss are pending, they've

5      never been docketed, the trustee has never replied.  I think

6      there might be 80 of them.  So that's another bucket.

7              And finally there's the group that has come back

8      to Your Honor because the defendants had answered, and so

9      they are now in the trial discovery schedule.

10             So we have cases that are completely suspended on

11     motions to extend the time to answer or move, pending

12     motions, and answers that are moving towards discovery and

13     trial.

14             Now these complaints are all cookie cutter,

15     there's virtually no difference in the allegations in any of

16     the complaints, and the issues that are raised by the

17     complaints, there are a lot of common issues that have never

18     been briefed anywhere, and -- or never been decided.

19             Now I'll give you an example.  The 80 complaints

20     that came back in our -- in pending motions to dismiss have

21     a cause of action to avoid obligations.

22             THE COURT:  Uh-huh.

23             MS. NEVILLE:  That has never been decided.

24     Defenses of subsequent transferees have never been decided.

25     And there are a number of other issues that probably fall

1  into that category which we would like to brief on a common

2  briefing schedule.

3       Now I know that Ms. Chaitman (ph) has a number --

4  128 motions to dismiss pending before Your Honor, and those

5  raise a number of the same issues as our motions to dismiss,

6  so we think it makes some sense to coordinate the 200 or so

7  briefs on virtually the same issues.

8       I think that pretty much describes what our

9  thinking is.  Coordination really has been the benchmark of

10  this case right from the get go.

11      The defense group -- our defense group has really

12  not only coordinated amongst ourselves but tried to

13  coordinate with all the other outside counsel to -- to make

14  sure that everybody had a chance to be heard on the -- on

15  the most important issues, and we think that that practice

16  should continue.

17      What we were thinking is that if there was a

18  consolidated docket like Judge Rakoff had you could see

19  where a motion came on or something came on in discovery so

20  that if people knew that that issue affected them they could

21  intervene or notify the Court that they wanted to

22  participate in the briefing on that.

23      So there are some issues I think we could identify

24  right off the top of our heads which we think could be

25  jointly briefed and others which may come up as the briefing

Page 12

1    progresses.

2            And then I think I would defer to some of those

3    people who are actually in the discovery process to talk

4    about what kind of coordination they would like to see in

5    those cases that are proceeding to trial and discovery.

6            But what is really out there, everybody is going

7    to be in the same place eventually, and if a group moves way

8    ahead issues may be decided that affect those who are still

9    on the extension -- in the extension period and they may not

10   have an opportunity to participate in the -- in the decision

11   on that.

12           So that's what we're trying to figure out a way to

13   avoid.

14           THE COURT:  Well, I have a motion before me which

15   raises 14 points or 14 arguments.

16           MS. NEVILLE:  Oh, I'm sorry.

17           THE COURT:  Shut off your phone, please.

18           MS. NEVILLE:  It's probably my daughter.

19           THE COURT:  All right.  Well, shut it off, please.

20           MS. NEVILLE:  I apologize, Your Honor.  I'm sorry.

21           THE COURT:  I was saying I had a motion before me

22   that raises 14 points.  Which issues do you want to -- which

23   issues do you want to brief?

24           MS. NEVILLE:  There are a number of issues that I

25   think Ms. Chaitman actually came into and briefed along

1   without us.  I think, for example, any subsequent transferee

2   defenses, any defenses --

3            THE COURT:  Well she doesn't really raise

4   subsequent transferee defenses, she says that their -- the

5   pleading is inadequate with respect to some of the --

6            MS. NEVILLE:  Well, I --

7            THE COURT:  -- with respect to some of the

8   allegations of subsequent transfer liability.

9            MS. NEVILLE:  That is clearly the case in our

10  motions to dismiss as well, because all that the complaint

11  would say is they got some money, it was for their benefit,

12  that's the end of the story, and I think what we would want

13  to go a step further on that, it's not adequately pled but

14  there are defenses that could be raised that somewhere down

15  the road we would want to raise.

16           THE COURT:  Well why would I decide that on a

17  motion to dismiss?

18           MS. NEVILLE:  You don't need to decide it on a

19  motion to dismiss, I think you'll dismiss all the subsequent

20  transferees on the basis of inadequate pleading frankly.

21           THE COURT:  Uh-huh.  So what's wrong with the way

22  it's --

23           MS. NEVILLE:  Okay.  Here's one -- here's another

24  one.

25           THE COURT:  -- what's wrong with the way it's

1    raised in the briefs?

2            MS. NEVILLE:  What about the application --

3            THE COURT:  Ms. Neville, what's wrong with the way

4    it's raised in the current briefs?

5            MS. NEVILLE:  I -- you know, Your Honor, I'm

6    sorry, I don't know what the trustee responded to in that

7    particular -- on that particular case, I only know --

8            THE COURT:  But my recollection is -- my

9    recollection is he responded that Judge Lifland I think had

10   decided this issue already in the context of another case.

11           MS. NEVILLE:  Well, Judge Lifland never heard that

12   issue, so I --

13           THE COURT:  I don't know.

14           MS. NEVILLE:  Your Honor, there also are IRAs that

15   are protected under state law by the CPLR, and I'm not sure

16   whether Ms. Chaitman raised that issue.

17           THE COURT:  She raised that issue.

18           MS. NEVILLE:  And that issue -- that issue needs

19   to be further briefed.

20           THE COURT:  What's wrong with the way it's briefed

21   now?  In other words if you had made a motion to intervene

22   you would have to convince me that the current -- would

23   people please shut off their phones or we're just going to

24   take phones at the door.

25           If you were going to intervene you would have to

1    explain to me why whoever was pushing this issue now was not

2    adequately representing your interests.  So, you know, my

3    question is the same for every one of these issues.

4              MS. NEVILLE:  I can't answer specifically which

5    issue is inadequate, but I don't -- I don't want to see and

6    none of us want to see issues that affect a large number of

7    people get decided on a single brief.

8              THE COURT:  Let me ask you a question.

9              MS. NEVILLE:  Now, if you --

10             THE COURT:  I have a trial scheduled, one of the

11   first trials is scheduled at the end of March which may

12   dispose of some of the issues you raise.  Not the pleading

13   issues but some of the issues that are raised.  Should I not

14   have that trial are you saying?

15             MS. NEVILLE:  Yes, you should not have that trial.

16             THE COURT:  And when -- do I start to try the

17   cases only when everybody is ready?

18             MS. NEVILLE:  Your Honor, I think we have to

19   figure out what a procedure is, but why would we go ahead

20   and decide issues that are going affect thousands of

21   defendants?  Because in each of these 800 cases there are

22   multiple defendants.  So would you want to go ahead and

23   decide an issue that's been briefed by one person or that's

24   been advanced by one person that's going to affect thousands

25   of defendants?

1            THE COURT:  Well I have to decide it any way.

2    Your concern --

3            MS. NEVILLE:  But not without the input of the

4    people -- other people out there who have -- who have that

5    issue in their case who may brief it is a completely

6    different way and raise different issues before you.

7            THE COURT:  Well but, you know, that's true in any

8    litigation, and even if I were to decide -- let me finish.

9            MS. NEVILLE:  Okay.

10           THE COURT:  Even if I were to decide an issue one

11   way on a current motion if you come forward with other

12   arguments that haven't been considered then they'll be

13   considered.  If you make the same argument on the same facts

14   the result is going to be the same.

15           MS. NEVILLE:  I know, Your Honor, but this is --

16           THE COURT:  That's definition of insanity.

17           MS. NEVILLE:  -- for -- this is a unique case

18   because -- well it's not unique in fraud cases but there are

19   so many cases pending there that it really does call out for

20   some kind of coordination.

21           If there's one case that's proceeding to trial I

22   don't understand why it makes a difference in the great

23   scheme of things when thousands of defendants are affected

24   to continue that trial at least for a period of time so that

25   people can assess whether there's a reason to intervene, a

1    basis for intervention, and to help the Court hear all of

2    the arguments.

3           I mean we've been immersed in this case for five

4    years.  We're not trying to delay things, we just want to

5    have them decided properly.

6           THE COURT:  Okay.  Yes, sir.

7           MR. KIRBY:  Richard Kirby from K&L Gates, I was

8    the principal author of that letter.  I would like to just

9    speak to two things.

10           One I'm part of the group that is looking at a

11    discovery schedule, and one of the points that we raised was

12    that we wanted to have some kind of orderly coordinated

13    discovery.

14           What I think the practical and what should happen

15    here is that the parties should sit down with the trustee

16    and try to work out something that would be workable.  We've

17    had two meetings with the trustee, we've not been able to

18    reach a consensus schedule.  We think that if the Court

19    directs the trustee to work on a consensus schedule we can

20    probably work through the issues and present you with some

21    kind of consensus schedule on that.  So that's one issue.

22           On the issue of the -- that -- and further comment

23    to Ms. Neville's consideration of common issues, what we're

24    asking for is an -- we don't get under the current system

25    unless somebody goes and search the docket for 1,000 cases

1    we do not get notice of motions and hearings, okay?  That's

2    the key point.  If we had appropriate notice and if we

3    thought there was an issue that had not been adequately

4    briefed we would at least have the opportunity to be heard

5    at that point.  But our problem is, is with all these cases

6    it's hard to keep track.  We just don't have the capacity.

7    Where the trustee sits with one as the one plaintiff on all

8    these they have the ability to understand that.

9              They're -- and so what we're asking for is a

10   system that would provide for a regular notice of issues

11   that we would have an opportunity to be heard.

12             For example, one of the issues that's raised, as I

13   understand it in the pending motion, is a question of the

14   trustee's standing, and that's a threshold issue that

15   affects all of the cases.  We definitely would want to be

16   heard on that issue.  And as long as we have a reasonable

17   time to be heard I don't think it would interfere even with

18   -- I understand the current schedule is that the Court's had

19   a full hearing on that, but that's the kind of thing we

20   would have.

21             We would also like relief from the obligation to

22   file a formal motion for intervene in the case, because one

23   of the points that we raise is Rule 42 allows the Court

24   discretion to consolidate issues of -- issues of law and

25   fact, and as we go forward in the case there may well be

```
 1    common issues of fact.
 2           For example, let's suppose that some of the people
 3    wish to contest the issue of a Ponzi scheme, whether there
 4    was a Ponzi scheme, whether there was insolvency, I would
 5    hope the Court would not want to have 1,000 trials on that
 6    issue.
 7           THE COURT:  I know in the Dreier case I'm having
 8    consolidated trials on these two issues.
 9           MR. KIRBY:  Right.
10           So my thought is, is that there's got to be a way
11    that the parties can work out to the -- and present
12    something appropriate to the Court that would permit us to
13    come to a system where, okay, this is a common issue, we
14    reach agreement on that and then we can schedule an
15    appropriate trial on that kind of issue.  It's the same
16    thing on there's something as important as trustee standing.
17    Whether it's ripe at this point is an issue, but we think
18    that there are important issues as to trustee standing that
19    need to be heard and ought to be -- the Court ought to have
20    the benefit of our views before it decides.
21           Look, we understand each case and under the system
22    it's a separate adversary proceeding and a different party
23    might look at it a little differently, they're always free
24    to do that, that's their right, but we think the Court ought
25    to have the benefit of our views before it decides that
```

Page 20

1    issue so that it will be simpler in the administration of

2    these cases.

3              Those are our two -- those are our points.

4              THE COURT:  Okay.

5              MR. KIRBY:  Thank you.

6              THE COURT:  Why don't you wait, Mr. Sheehan.

7              MR. SHEEHAN:  Oh, I'm sorry.

8              THE COURT:  Let's just --

9              MR. SHEEHAN:  All right, thank you, Your Honor.

10             THE COURT:  Okay, go ahead.

11             MR. SCHWED:  Greg Schwed of Loeb & Loeb

12   representing various defendants.

13             Just following up on Mr. Kirby and Ms. Neville's

14   point, the mechanics of such a notice I think could be

15   handled --

16             THE COURT:  That seems to be the easiest --

17             MR. SCHWED:  I think it is.  We did it in the --

18   with Judge Rakoff, he didn't want a formal intervention

19   motion in a case that we wanted to be heard on and he simply

20   ordered a five-page amicus brief, which was perfectly

21   adequate for the purpose of not burdening the Court with

22   excessive motions but allowing that kind of input.

23             Thank you, Your Honor.

24             THE COURT:  All right.

25             MS. GORCHKOVA:  Good morning, Julie Gorchkova of

```
 1    Becker & Poliakoff.  We represent the defendants in the 128

 2    avoidance actions in which a motion to dismiss have been

 3    filed.  In addition to that we also have two other cases

 4    that are currently on a separate track.

 5              First I want to say that we join in in the

 6    intervenors' request for consolidated briefing of various

 7    common issues as well as consolidated discovery process.

 8              THE COURT:  Did you consult with them before you

 9    made your motions to dismiss?

10              MS. GORCHKOVA:  I'm not sure whether we consulted

11    with intervenors when we filed the motions, but I think that

12    raises an important point that I actually wanted to address,

13    which is sort of a background context in which this motion

14    to dismiss was filed.

15              Since December of 2010 the trustee has been

16    extending the deadlines to file answers and/or motions to

17    dismiss to the complaints.

18              At the time right before our motion to dismiss was

19    filed the deadline to file a responsive pleading to any

20    complaints was November 1st.  In mid October we reached out

21    to the trustee's office inquiring whether additional

22    extensions would be granted.  The trustee's office responded

23    that they are -- they intend to extend the deadlines through

24    January but that there will be a modification to the

25    stipulation order.
```

Page 22

1           Going back and forth the parties were unable to

2     agree to a clause in the order, because as the order was

3     drafted it required us to notify the trustee's office within

4     30 days of the death of one of our clients.  We couldn't

5     agree to that because sometimes we don't learn about the

6     death of our clients until we're informed so we respectfully

7     requested that the order be modified to put in a language

8     that we would be required to notify the trustee within 30

9     days of learning of a death of a client.

10          Unfortunately the parties couldn't reach an

11    agreement on that so we were forced to file motions to

12    dismiss in 128 cases under approximately a 5-day deadline.

13          So we filed the motions to dismiss after the

14    trustee and SIPC had filed their briefs and response, my

15    understanding is that various counsel for the intervenors

16    have reached out to my colleague, Helen Chaitman, advising

17    her that they would like to be heard on various issues

18    because these -- our motions to dismiss raises issues that I

19    believe are common to pretty much all avoidance action

20    defendants.

21          We think it's fair that parties should not be

22    bound be potential decisions -- determinations based on our

23    motion without --

24          THE COURT:  Well they won't be bound by potential

25    decisions.

1        MS. GORCHKOVA:  Bound by determinations made on

2    common issues that we briefed.

3        So after we -- after we spoke to the intervenors

4    we reached out to the trustee's counsel to see if they would

5    agree to stay the submission and the final briefing of our

6    motion to dismiss in anticipation that there will be some

7    sort of a case management conference, and if Your Honor

8    decides that consolidated briefing on common issues is

9    appropriate that our motion, as well as any consolidated

10   briefing, should be put on the same -- on the same track.

11       And sort of a unique issue as to our clients, to

12   the extent that the Court does order consolidated briefing

13   we would like our reply brief to be put on the same briefing

14   schedule as the consolidated briefing, because the trustee,

15   there's a possibility that new issues will be raised or the

16   trustee and the SIPC will provide responses that were not --

17   that were not addressed in our initial briefing and we would

18   like to have an opportunity to be able to respond to any new

19   arguments that are made or any new issues that arise.  But

20   if our reply brief schedule, which is currently due next

21   Friday with the consent of the trustee's office, if -- if

22   we're -- if we have to submit a reply brief by next Friday

23   and Your Honor orders consolidated briefing our clients will

24   be precluded from briefing potential new issues and would be

25   bound by determinations that they did not have an

Page 24

1   opportunity to brief.

2          THE COURT:  Would you explain to me again why you

3   had to make a motion to dismiss but nobody else did?

4          MS. GORCHKOVA:  Because we could not agree on a

5   clause and the stipulation extending time to respond that

6   required us to notify the trustee's office within 30 days of

7   a death of a client.

8          THE COURT:  But wouldn't everybody else have the

9   same problem?

10         MS. GORCHKOVA:  I -- my understanding is that that

11  was an issue for other attorneys but --

12         THE COURT:  Okay.

13         MS. GORCHKOVA:  -- I'm not sure how, but I know

14  that our position was we did not want to be bound by that

15  clause, because given the amount of -- the number of

16  (indiscernible - 00:23:54) defendants we have in 128 actions

17  it has -- it has been our experience that we're not

18  immediately in some instances notified --

19         THE COURT:  I understand that.

20         MS. GORCHKOVA:  -- about the death of a client.

21         THE COURT:  I understand that, but I'm just

22  wondering why everybody else didn't have the same problem.

23         MS. NEVILLE:  We did, Your Honor, we did have to

24  file motions to dismiss in 80 of our cases because the

25  trustee did not extend the time to answer or otherwise --

Page 25

1               THE COURT:  Okay.

2               MS. NEVILLE:  So those -- those are defendants

3       whose transactions fell more within the two-year period than

4       the six-year period.

5               THE COURT:  All right.

6               MS. GORCHKOVA:  And just one other point on the

7       consolidated briefing.  We believe that that process has

8       been successful before Judge Rakoff, it simplified the

9       process.  Similarly here we think that it would simplify the

10      process for the Court.  It would enable the Court to issue

11      one decision on common issues as opposed to having to render

12      multiple decisions, and it would also streamline that --

13              THE COURT:  Let me ask you a question.  If I

14      approve a procedure for consolidated briefing and someone

15      chooses not to submit a brief am I still bound by the

16      determination?

17              MS. GORCHKOVA:  If they're given an opportunity to

18      brief the issue and they're not -- if they did not agree --

19      and they do not brief that issue I believe that they would

20      be bound.

21              THE COURT:  What if it's an issue regarding

22      subject matter jurisdiction?

23              MS. GORCHKOVA:  I would think that if it's an

24      issue of subject matter jurisdiction and it was briefed and

25      that person had an opportunity to brief it then yes.

1            THE COURT:  All right.

2            MS. GORCHKOVA:  One other point -- one other point

3    that's unique.

4            We have -- as I mentioned earlier -- we have two

5    cases that are on a different sort of procedural track.

6    They were not part of our 128 motions to dismiss.  One of

7    the -- in one of those cases we retained -- we were retained

8    subsequent to the filing of the motion.

9            The answers have been filed in those cases, it's

10    Misinbaum (ph) adversary proceeding 104878 and Cotlekoff

11    (ph) adversary proceeding 105130, the answers were filed but

12    there were no motions ever filed.  My understanding is

13    (indiscernible - 99L25L95) discovery is complete.

14            To the extent that the Court does order -- does

15    decide to proceed with some sort of consolidated briefing

16    and consolidated discovery we would like those cases to be

17    included in this group.

18            THE COURT:  All right, thank you.

19            MS. GORCHKOVA:  Thank you.

20            MR. LEVY:  Your Honor?

21            THE COURT:  Yes, Mr. Levy.

22            MR. LEVY:  Can I just amplify in response to --

23    Richard Levy of Pryor Cashman.

24            The question that you asked Ms. Gorchkova a moment

25    ago about whether a party would be bound by a consolidated

Page 27

1    proceeding I think the answer is as follows, and it's the

2    way it seemed to work in front of Judge Rakoff.  He

3    consolidated a whole series of cases involving all of the

4    parties who were before him on the withdrawn cases,

5    established a master docket, established consolidated

6    proceedings for particular issues, and allowed parties to

7    brief on those.  So I think it bound everybody who had

8    notice and an opportunity to be heard in this umbrella

9    proceeding.

10            So I think in that respect a determination by Your

11   Honor on a particular issue probably, I'm fairly certain it

12   would bind all of the parties who were parties to the

13   consolidated proceeding.

14            With respect to the subject matter issue if it's

15   an issue Your Honor decides on the consolidated proceeding

16   same conclusion.  If it's a subject matter jurisdiction

17   issue that has not been raised well we all know that subject

18   matter jurisdiction is not waived.

19            THE COURT:  All right.  Mr. Sheehan?

20            MR. SHEEHAN:  Your Honor, I'm going break this

21   down into two things.  One is the motion and the other is

22   cooperation with regard to discovery.  I think they're two

23   separate issues and I want to clarify something with regard

24   to what was just said about my colleague, Ms. Chaitman.

25            Everyone agreed -- everyone agreed last November

1    that to the modification to the procedures order that they

2    would let us know within 30 days if their client passed

3    away.  There's a reason for that.  If we don't file a claim

4    things moves very rapidly and we're not in a position

5    necessarily to keep track of everyone.  There's over 825

6    parties here.  So we thought it was a reasonable request.

7    Everyone agreed to it, including, you know, the Denton (sic)

8    firm.  The only one who didn't agree was Mrs. Chaitman

9    because she said she couldn't figure it out so she made a

10   motion.  So that's the state of that fare.

11           Your Honor obviously has familiarly with the

12   motion, I don't intend to argue it here this morning, but

13   what's very, very clear is that all of my colleagues who are

14   now suggesting they need another bite at the apple, all in

15   some way or another participated in a vast majority of these

16   issues either before Judge Lifland or before Judge Rakoff,

17   and indeed in many instances they're asking you to

18   reconsider what Judge Rakoff has already decided.

19           Now as I said, I don't want to argue that motion

20   here this morning, but I make that point for this reason,

21   they're suggesting wait a minute, you can't allow this brief

22   by Ms. Chaitman to go forward, you know, we need an

23   opportunity to be heard, we're getting shut out.  That's

24   just not so.  That's just not so.

25           So what we have before Your Honor is, is a motion

1   that's fully briefed, absent a reply brief.  We responded to

2   that.  They should reply to it and we should be heard on

3   March 12th as scheduled.  Your Honor will decide those

4   issues, and I believe that those issues, except for the

5   extraneous that are out there, and there is a standing issue

6   whether Mr. Nisselson should be the plaintiff or whether

7   Mr. Becard (ph) should be the plaintiff.  I agree, that

8   unique issue has not been briefed before, and if somebody

9   wants to brief that we're more than willing to engage in

10  that again if they think they need a second bite at that

11  apple, but I think it's been fully briefed and it's before

12  Your Honor and it's ripe for resolution.

13         And quite frankly what does it represent?  Just to

14  go back historically as Ms. -- you know, as was done here

15  before by Ms. Neville.  What are we looking at?  This is a

16  Ponzi scheme.  These are fictitious profit cases.  There is

17  $3.2 billion at stake in those 825 cases.  That's

18  $3.2 billion that the net losers don't have and haven't had

19  for five years while we're waiting for this to get resolved.

20  All of these complaints have been outstanding for over three

21  years.

22         We did have an excursion, so to speak, into the

23  District Court where many issues were debated before Judge

24  Rakoff and he did issue decisions with regard to those and

25  it did take two and a half years to resolve, and that's

1    fine, but enough is enough.

2            Now before Your Honor we have a fully briefed

3    omnibus motion with all those issues ripe for decision, we

4    believe now in fairness -- in fairness to all of those

5    folks, all of those losers, all those people to whom we can

6    make a distribution once these are all resolved, because one

7    thing that I agree with Mrs. Neville on, these are

8    straightforward cases.  This is a fictitious profits case.

9    We proved the amount, we proved the Ponzi scheme, even Judge

10   Rakoff agreed with that in Picard (ph) versus Katz (ph).  We

11   were granted it was an $83 million judgment on that very

12   topic.

13           So what we're talking about here is getting those

14   cases to move and move rapidly.  Which is a segway into the

15   other issue, and that is how do we work together?

16           Well working together doesn't mean all 825 cases

17   work in lock step, that would be quite frankly unmanageable

18   and unworkable.  So what we suggested, and which my

19   colleagues know about and I believe Your Honor is familiar

20   with this concept was, yes, we're aware of 546(e) and the

21   argument on March 5, so what we did is we break those cases

22   down into three traunches.

23           The first traunch being those cases that are only

24   two-year cases, which would not be affected by Judge Rakoff,

25   and have more than 50 percent of the amount is in the two-

1    year period.  All right?

2            So we have a -- then we have another group of

3    cases and those cases had to answer on January 17, and

4    that's why you have before Your Honor a number of cases

5    where we've actually had answers.  One hundred cases where

6    there are answers and recollects in 70 of those cases we've

7    already had initial case management conferences.  Those

8    cases are moving forward.  We're on path to get those cases

9    ready before Your Honor for an eventual trial if they don't

10   settle in the interim.

11           Then the second traunch is those cases where the

12   two-year number plus the six-year number is, you know, makes

13   it -- it's more than 50 percent of the numbers in the six-

14   year period.  Those cases we have for April.

15           And then the last is in July, and those cases were

16   all the numbers in the six-year period.

17           THE COURT:  What is the April date?

18           MR. SHEEHAN:  April --

19           THE COURT:  No, no --

20           MR. SHEEHAN:  -- 17th.

21           THE COURT:  -- no, what is the significance for

22   that?

23           MR. SHEEHAN:  It is -- well we broke them out,

24   Your Honor, is, is that group has more than 50 percent of

25   the number in the six-year period.  So we pushed them out

1    and hope --

2              THE COURT:  But what's supposed to happen in

3    April?

4              MR. SHEEHAN:  Pardon?

5              THE COURT:  What is supposed to happen in April?

6              MR. SHEEHAN:  They're supposed to either answer or

7    otherwise move --

8              THE COURT:  Okay.

9              MR. SHEEHAN:  -- or we will at that time extend it

10   again because of the 546(e) overhang from the circuit.  And

11   then in July they're all the six-year number.

12             To us it makes little sense for all those cases to

13   be moving at the same time or that the cases that are

14   already before Your Honor by way of answer or motion by

15   virtue of the January 17 date should somehow be stayed and

16   somehow put to the side while we're waiting for the others

17   to catch up.

18             As I -- as we've already demonstrated in 100 of

19   those cases they're moving forward.  We have answers, we've

20   had initial case management conferences, just what we

21   thought would happen has happened.

22             The hiccup here is this attempt to latch onto

23   Mrs. Chaitman's motion and suggest Your Honor let's call

24   everything to a halt, let's just wait until that gets

25   resolved and all the cases, you know, the litigation

1   procedures order somehow gets stayed while that happens.

2   Why should that happen?  We have 100 cases that are moving.

3   Your Honor can handle the motion.

4           With regard to working together there are three

5   things we agree we should work on, and working with the

6   clerk of the court here I think we could put together a

7   common docket.  I think Your Honor -- you know, we can work

8   that out with our adversaries and with the clerk of the

9   court and if the clerk of the court is amenable to that I

10  see no reason why that couldn't happen.

11          I also agree that probably it would work, as we

12  have in cases that Your Honor is already familiar with in

13  both Merkin (ph) and Leaf (ph), we have, you know, Judge

14  Cyganowski working as a discovery master or as a mediator in

15  the alternative.  We could do that too, we could have a

16  discovery master here so we didn't burden Your Honor with a

17  lot of discovery applications.

18          And then the last thing we could do is we could

19  coordinate depositions.  So, for example, we have Ms. -- you

20  know, Mr. Davinsky (ph) who I think Your Honor is familiar

21  with from the Muse (ph) case which you eluded to is going to

22  be tried at the end of March, he's going to testify with

23  regard to insolvency.  There's no reason to have 100

24  depositions, we could coordinate that, make him available so

25  that everyone would have the opportunity to depose

1    Mr. Davinsky who wished to do so and we'd make his report

2    available to everyone.  We can make that effort.

3            In other words, the trustee is not suggesting that

4    he will not cooperate here and that he will not move on a

5    consolidated basis where it makes sense and we can work with

6    the Court to make that happen, but that doesn't mean

7    everything stops, we don't move forward, this motion doesn't

8    get heard, and that cases that are already answered

9    shouldn't be moving forward together.

10            That's our position.

11            THE COURT:  Okay, thank you.

12            Does anyone else want to be heard?

13            MR. BELL:  Your Honor, Kevin Bell from the

14    Securities Investor Protection Corporation.

15            Today is 1,791 in the Madoff liquidations since

16    the filing date.  During those --

17            THE COURT:  You've got a way to go before it's

18    jaundice and jaundice, but go ahead.

19            MR. BELL:  During those days, Your Honor, over

20    1,100 people who have allowed claims have not gotten the

21    money.  We are in the good faith actions going against net

22    winners who have fictitious profits that belong to those net

23    losers.  Any delay in moving that forward is very difficult

24    for me as the attorney on the case to talk to those net

25    losers who call up and say, why am I not getting my money?

1          We had the excursion to Judge Rakoff where he

2     decided a lot of the issues, I'm not going to repeat what

3     SIPC filed in its response to the motion, we believe that

4     the hearing should go forward on March 12th with regard to

5     those issues.

6          We also believe that what Mr. Sheehan has posed on

7     the -- on handling the litigation is something that SIPC

8     supports.  SIPC oversees the case, recommends to the Court

9     on fees, we want to make it as efficient and as effective as

10    possible, but we don't want to wind up in a quagmire where a

11    year from now or God forbid another 365 days where we'll be

12    over 2,000 days, we haven't gotten to resolution.

13         It's $3.2 billion of other peoples' money these

14    defendants have as SIPC and the trustee allege and we would

15    ask the Court to keep the litigation procedures orders in

16    place, to continue with the hearing that's scheduled on

17    March 12th, to have the defendants reply.  They've gotten

18    extensions, they should reply, we should have the hearing,

19    it's ripe to be decided on the issues that Mr. Sheehan

20    pointed out, we can have further briefing on the standing

21    issue which was an issue that hadn't been addressed before.

22         Thank you, Your Honor.

23         THE COURT:  Okay, thank you.

24         MS. NEVILLE:  Your Honor, may I just respond to --

25         THE COURT:  Wait a minute, wait a minute.

1          MS. NEVILLE:  Oh, I'm sorry.

2          THE COURT:  We have someone who hasn't had a

3     chance yet.

4          MR. NISSELSON:  This will be short, Your Honor.

5     Alan Nisselson, Windels Marx Lane & Mittendorf.

6          THE COURT:  Speak into the microphone.  Thanks.

7          MR. NISSELSON:  Your Honor, my firm is counsel of

8     record for the trustee on several of the proceedings before

9     Your Honor and we'd just like to say we support what

10    Mr. Sheehan has said.

11         THE COURT:  Okay.  Thank you.

12         MS. NEVILLE:  Just briefly.

13         First of all the case management order provides

14    for mediation before a hearing on any of these motions, so

15    there really isn't -- there is a real reason why the hearing

16    on Ms. Chaitman's motion should not go forward.

17         THE COURT:  Well are her clients mediating?

18         MS. NEVILLE:  I don't think so, Your Honor.

19         THE COURT:  So aren't they ready to go forward

20    then?

21         MS. NEVILLE:  They were supposed to mediate, I

22    don't know whether the trustee ever --

23         THE COURT:  Are they --

24         MS. NEVILLE:  -- offered that.

25         THE COURT:  Mr. Sheehan, are those -- are those

```
 1    cases in mediation?

 2            MR. SHEEHAN:  No they're not, but Judge Lifland

 3    had decided to bypass the mediation and --

 4            THE COURT:  Okay.

 5            MR. SHEEHAN:  -- address the motion.

 6            MS. NEVILLE:  The -- well they -- our cases are

 7    still pending -- our motions to dismiss, and I can assure

 8    Your Honor that we did not brief issues that were decided by

 9    Judge Rakoff, so everything in our motions -- the antecedent

10    debt was briefed again because we were not part of the

11    briefing before Judge Rakoff.  Other than that all of the --

12            THE COURT:  Did you -- did you have the

13    opportunity participate in that briefing?

14            MS. NEVILLE:  Not really, we got cut out by -- by

15    some administrative accident.

16            THE COURT:  That I don't understand.  Couldn't you

17    seek to intervene or put in a brief?  See that's part of the

18    concern I expressed.  To the extend you're going to be

19    bound --

20            MS. NEVILLE:  We filed a --

21            THE COURT:  -- if you don't --

22            MS. NEVILLE:  We filed a motion to -- to appear in

23    that and it did not get transferred in time, so we never got

24    heard in that motion.

25            But, Your Honor, I did participate with the
```

Page 38

1   defense group as we briefed it so I didn't really feel like

2   I was cut out of things.  All of the other issues are new.

3            And we've heard this speech about other people's

4   money for a very long time.  The trustee is sitting on a

5   huge fund and there's $4 billion in the visits' fund that

6   Richard Greedon (ph) is now seeking to dispense.  We believe

7   that the customers who actually lost money could be fully

8   compensated by the money the trustee is holding --

9            THE COURT:  That's an argument that's --

10           MS. NEVILLE:  -- and the $4 billion --

11           THE COURT:  -- that's currently before me.

12           MS. NEVILLE:  Yes.

13           THE COURT:  Although it doesn't sound appropriate

14   for a motion to dismiss.  Wouldn't I have to go outside the

15   record to figure that out?

16           MS. NEVILLE:  On the -- on the standing issue?

17   Well there is --

18           THE COURT:  If the argument is that there's

19   already enough money out there --

20           MS. NEVILLE:  Your Honor could rely on the public

21   record because the trustee published very detailed reports

22   on the claims that have been allowed and the money that is

23   being held by him, and --

24           THE COURT:  But there are also claims subject to

25   objection, right?

Page 39

1          MS. NEVILLE:  There are only 263 claims that have

2     not been decided.

3          THE COURT:  How much do they aggregate?

4          MS. NEVILLE:  I'm not exactly sure.

5          THE COURT:  I would have to go outside the record

6     and look at that wouldn't I?

7          MS. NEVILLE:  I think we have that in the record

8     as well.  Rick, do we have that in the record?

9          THE COURT:  And what's the interest -- what's the

10    interest rate that's accrued on all those claims in five

11    years?  What's the interest that's accrued?

12         MS. NEVILLE:  Your Honor, we don't believe that

13    any interest should accrue.  That's another issue we'd like

14    to brief is the prejudgment interest, but at the --

15         THE COURT:  Isn't that up on appeal also?

16         MS. NEVILLE:  -- treasury rate --

17         UNIDENTIFIED SPEAKER:  Yes, Your Honor.

18         MS. NEVILLE:  -- it's --

19         THE COURT:  I'm not going decide any issues that

20    are before the Second Circuit anymore than I'm going to

21    decide issues that are currently before the Supreme Court.

22         MS. NEVILLE:  Your Honor, that issue is not before

23    the Second Circuit.

24         THE COURT:  I thought --

25         THE COURT:  There are two issues before the Second

Page 40

1    Circuit right now.  546(e) and the inflation adjustment.

2    Those with the two issues.

3              THE COURT:  All right.  Yes.

4              MR. SCHWED:  If I might just the mechanical

5    question it seemed as if there is one question which both

6    sides agree upon and that's the master docket which we have

7    discussed in the past and I think there was general

8    agreement but it's not happened.  I don't know if it

9    requires a perfunctory order from the Court or how it should

10   be done to make it happen so there are dual entries

11   essentially --

12             THE COURT:  Uh-huh.

13             MR. SCHWED:  -- individual adversary proceedings,

14   and a master calendar, but that would go a long way toward I

15   think addressing some of the problems we've raised here.

16             I defer to Your Honor obviously in terms of the

17   best way to handle that.

18             THE COURT:  Well it seems to me that's the easiest

19   thing to deal with, because even if you can't have a

20   consolidated docket the trustee could send out an email

21   blast to everybody saying these motions were filed in these

22   cases go look at the docket sheets.

23             MR. SCHWED:  That would be fine as well, Your

24   Honor.

25             THE COURT:  That's an easy one, but the problem I

1   have with -- yes, sir.

2          MR. KIRBY:  Just one quick point.

3          On the issue of discovery we think it is a much

4   broader issue that we need to coordinate on than the issue

5   identified by Mr. Sheehan.

6          THE COURT:  All right.  Let me deal with the

7   motions and the consolidated motions.

8          I mean in principal I don't disagree with you,

9   Ms. Neville, but the problem is I have 1,000 cases that have

10  to be tried and maybe another 1,000 claims objections, or

11  whatever the number is, that have to be resolved, and what

12  you're really suggesting and what caught my ear is when you

13  said don't try the case, it's scheduled for trial, is then

14  all these proceedings can't move any faster than the slowest

15  case.  So if somebody calls up and they say, oh, I can't be

16  in town I need an extension, I have to -- I'm going away on

17  a vacation with my kids that slows everything up.

18         If you can come up with a proposal which makes

19  sense I'll certainly hear it, but right now I have a pending

20  motion to dismiss, it's been out there for a while,

21  apparently you found out about it because I suspect that

22  what was contributed to writing the letter that I got and my

23  intention is to decide that motion.  It doesn't stop people

24  from making other motions and raising arguments that I

25  haven't considered.

Page 42

```
 1              If I decide it one way based on a certain argument
 2    and you make the same argument it's probably going to be
 3    decided the same way, but I don't know of any better way to
 4    deal with and start to try these 1,000 cases.
 5              MS. NEVILLE:  Well, Your Honor, I think there are
 6    two different things --
 7              THE COURT:  I mean the bottom line is I'm not
 8    going stay anything.
 9              MS. NEVILLE:  There are two different things here.
10    One is the consolidated briefing and the other is the things
11    -- the cases moving to trial.
12              In the consolidated briefing if you gave us two
13    more weeks we would intervene and Ms. Chaitman --
14              THE COURT:  You haven't even told me what issues
15    you want to brief.
16              MS. NEVILLE:  -- or put our motions on the
17    calendar, because we've got -- our motions have been pending
18    since last March.  So that we at least can move in lock stop
19    with Ms. Chaitman.  That isn't stopping the trial, that is
20    just moving 10 or more issues together with almost 200
21    cases.
22              THE COURT:  Uh-huh.
23              MS. NEVILLE:  So that's one thing I would ask Your
24    Honor.
25              I can't really speak to the trial issues since
```

Page 43

1    none of my cases I haven't answered in any of my cases.

2              THE COURT:  All right.  So the proposal is to put

3    the pending motions to dismiss on a track.

4              MR. SHEEHAN:  Well I haven't looked down recently

5    but they're the same as what they just filed, you know, I

6    don't know if that helps or not.

7              THE COURT:  Well why don't you just file an answer

8    and I'll just read all the papers at the same time?  I'm not

9    going to decide Ms. Chaitman's motions from the bench.

10             MR. SHEEHAN:  No, I understand that, Your Honor.

11             THE COURT:  Yeah.

12             MR. SHEEHAN:  Fine.

13             THE COURT:  When can you file -- what is it 180

14   separate motions or --

15             MR. SHEEHAN:  I think there's -- I think it boils

16   down to 35 actually.

17             MS. NEVILLE:  Is it only --

18             MR. SHEEHAN:  It may represent -- you know,

19   there's always a distinction here the parties versus claims,

20   et cetera, so I think there's actually 35 motions, may

21   represent as in, you know, many more people.

22             MS. NEVILLE:  Yes.

23             MR. SHEEHAN:  I'd have to look, Your Honor, but

24   we'd want to file again one brief in response to all of

25   those arguments.

 1              I don't know, after saying all I said this morning

 2    I don't want to take a lot of time here, so I'd say three

 3    weeks we'll have an answer.

 4              THE COURT:  So you'll file your response to their

 5    motions in three weeks?

 6              MR. SHEEHAN:  Yes.

 7              MR. BELL:  And SIPC will also, Your Honor.

 8              THE COURT:  Okay.

 9              MS. NEVILLE:  And then can we -- may we put our

10    responses on the same track with Ms. Chaitman's?

11              THE COURT:  I will -- I mean my -- Ms. Chaitman's

12    motion is scheduled for what the 12th, I'll hear it then.

13              UNIDENTIFIED SPEAKER:  It's scheduled for the

14    16th.

15              THE COURT:  Whatever the date is.

16              MS. GORCHKOVA:  I'm sorry, Your Honor.

17              UNIDENTIFIED SPEAKER:  12th.

18              MS. NEVILLE:  Even though the issues overlap?

19              THE COURT:  I don't know what the issues are in

20    their motion, but then we're getting back into the same --

21              MS. NEVILLE:  I know.

22              THE COURT:  -- concern that I expressed, then

23    somebody else is going to want to join in and file a motion

24    to dismiss, and you know, it'll be 2017 before I start to

25    consider these things.

1              MS. NEVILLE:  Well, Your Honor, those people who

2     have not moved to dismiss have either moved to answer or

3     they have lengthy extensions to answer.

4              THE COURT:  But you have a filed motion -- you

5     have filed motions and you're telling me they've been

6     pending for a year now.

7              MS. NEVILLE:  Yes.

8              THE COURT:  So I have less concern with you

9     because you've teed up your issues.  Some of those issues

10    may have already been resolved by Judge Rakoff, I don't

11    know, but --

12             MS. NEVILLE:  Only one, the antecedent debt.

13             MR. SHEEHAN:  I have a suggestion, Your Honor,

14    we'll respond to all their motions.

15             THE COURT:  All right.

16             MR. SHEEHAN:  The ones they just filed and the

17    ones they filed a year ago.  They're the same motions as far

18    as I'm concerned.  We will respond to the 57 that were just

19    filed and the 35 they filed last year, we'll file a response

20    -- an omnibus response to all of their outstanding motions

21    so we get rid of all of them.

22             THE COURT:  Okay.

23             MR. SHEEHAN:  One way or another.

24             THE COURT:  Three weeks?  Three weeks from today

25    is -- what's the last Friday in first week of March?

1          MR. SHEEHAN:  March 7th.

2          THE COURT:  March 7th, that's three weeks, right?

3          MR. SHEEHAN:  Can we get Monday?  They'll have the

4     weekend.  (Indiscernible - 00:47:48).

5          THE COURT:  March 10th.  All right.

6          MR. SHEEHAN:  All right.

7          THE COURT:  Omnibus response.

8          MR. SHEEHAN:  Thanks, Your Honor.

9          THE COURT:  I would appreciate it if you would

10    write a letter just identifying those adversary proceedings

11    that are --

12         MR. SHEEHAN:  Absolutely, Your Honor.

13         MS. NEVILLE:  So, Your Honor, I guess what -- all

14    I'm asking then --

15         THE COURT:  And I'll give you a week to file the

16    reply?

17         MS. NEVILLE:  Fine.

18         So that actually puts us very close to being on

19    the same calendar as Ms. Chaitman's motions.

20         THE COURT:  Well you can certainly tell me why.

21         MS. NEVILLE:  It would be very nice to have them

22    all heard at the same time, Your Honor.

23         THE COURT:  I said I'll consider it, all right?

24         MS. NEVILLE:  Thank you.  Thank you.

25         THE COURT:  But I'm not changing the argument date

1    for the Chaitman motions.

2             Now with respect to discovery that's a separate

3    problem.  You don't want your guy appearing in 1,000

4    separate depositions.

5             MR. SHEEHAN:  Absolutely not, Your Honor, and I

6    think there are common witnesses that we could offer for

7    deposition, such as Mr. Davinsky, and there may be others.

8             Difficulty is, is that, for example, in earlier

9    cases we've proffered witnesses from FTI, which assisted us

10   throughout this process in connection with the transfers

11   themselves, and each of the transfers obviously is different

12   in each of the cases.

13            THE COURT:  Yes.

14            MR. SHEEHAN:  So I don't know that we could

15   consolidate that, and --

16            THE COURT:  Well --

17            MR. SHEEHAN:  -- other than those -- and these

18   cases I don't know that we have any other witnesses, because

19   as I said earlier, it's the transfers and the Ponzi, and

20   once -- that's our case.

21            THE COURT:  You know there's a common question I

22   guess on whether there's a Ponzi scheme.  Some people --

23            MR. SHEEHAN:  No question about that.

24            THE COURT:  -- have raised that, there's a common

25   question whether the debtor was insolvent, there's different

1   periods of time I suppose, but --

2          MR. SHEEHAN:  And Mr. Davinsky addresses both of

3   those issues in his report and we would offer him.  You

4   know, it doesn't have to be --

5          THE COURT:  Look, it makes sense it seems to me in

6   the first instance to negotiate or try and work something

7   out with the opposing -- with the opposing group, if that's

8   an appropriate phrase, and I'll schedule another conference

9   and make the appointment of a discovery mediator if

10  something like that makes sense.

11         MR. SHEEHAN:  That makes -- we agree.  We don't

12  disagree.

13         THE COURT:  All right.  Let me schedule another

14  hearing in this matter, let's say March 18th.

15         MR. SHEEHAN:  Fine, Your Honor.

16         THE COURT:  That's four weeks from now.  And that

17  hearing will deal with discovery, whether or not there's a

18  protocol to discovery.

19      (Pause)

20         THE COURT:  Anything else?

21         MR. SHEEHAN:  Your Honor, one last item.

22         You know, the -- it hasn't really been directly

23  addressed -- the LPO, we feel as though it should be --

24  remain in place, it should remain active, we should still

25  move forward with our cases, that the stay that our

1    adversaries have asked for here should not be imposed, that

2    we should be moving forward on each of these --

3                THE COURT:  I haven't -- I'm issuing any stays.

4                MR. SHEEHAN:  Thank you, Your Honor.

5                THE COURT:  All right.  Thank you.

6                MR. SHEEHAN:  Thank you, Judge.

7                THE COURT:  Thank you.

8         (Whereupon these proceedings were concluded at 11:53

9    AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 50

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    AAERT Certified Electronic Transcriber CET**D-408

9    Veritext

10   330 Old Country Road

11   Suite 300

12   Mineola, NY 11501

13   Date:  February 19, 2014

14

15

16

17

18

19

20

21

22

23

24

25

[& - answers]                                                                                          Page 1

**&**

**&**   3:16 4:1 5:9 6:1,9
   7:16 20:11 21:1
   36:5

**0**

**00:23:54**   24:16
**00:47:48**   46:4
**08-1789**   1:7 2:2

**1**

**1,000**   8:2 17:25 19:5
   41:9,10 42:4 47:3
**1,100**   34:20
**1,791**   34:15
**10**   42:20
**100**   32:18 33:2,23
**10006**   4:5
**10019**   5:12
**10020-1089**   3:5
**10022**   6:12
**10036**   6:4
**10036-6569**   4:12
**10104-3300**   6:19
**10111**   4:19
**10119**   5:20
**10154**   3:19
**104878**   26:10
**105130**   26:11
**10th**   46:5
**11501**   50:12
**1177**   6:3
**11:01**   1:18
**1221**   3:4
**128**   11:4 21:1 22:12
   24:16 26:6
**1290**   6:18
**12th**   29:3 35:4,17
   44:12,17
**14**   1:17 12:15,15,22
**156**   5:11
**15th**   5:3
**1601**   3:11
**16th**   44:14
**17**   31:3 32:15
**17th**   31:20
**180**   43:13

**18th**   48:14
**19**   50:13
**1st**   21:20

**2**

**2,000**   35:12
**200**   11:6 42:20
**20005-2215**   5:5
**20006-1600**   3:12
**2007**   9:18
**2010**   21:15
**2014**   1:17 50:13
**2017**   44:24
**263**   39:1

**3**

**3.2**   29:17,18 35:13
**30**   22:4,8 24:6 28:2
**300**   50:11
**330**   50:10
**345**   3:18
**35**   43:16,20 45:19
**365**   35:11

**4**

**4**   38:5,10
**408**   50:8
**42**   18:23
**45**   4:3,18

**5**

**5**   22:12 30:21
**50**   30:25 31:13,24
**546**   8:18 9:2,9,19,21
   30:20 32:10 40:1
**5641**   2:3
**5644**   2:3
**5648**   2:3
**56th**   5:11
**57**   45:18
**5th**   9:12

**6**

**6**   9:23

**7**

**7**   4:11
**70**   31:6
**7th**   46:1,2

**8**

**80**   10:6,19 24:24
**800**   5:4 8:3,23 9:23
   15:21
**805**   5:3
**825**   28:5 29:17
   30:16
**83**   30:11
**8th**   4:4

**9**

**919**   6:11
**99125195**   26:13

**a**

**aaert**   50:8
**ability**   18:8
**able**   17:17 23:18
**absent**   29:1
**absolutely**   46:12
   47:5
**accident**   37:15
**accounts**   9:17,18,19
**accrue**   39:13
**accrued**   39:10,11
**accurate**   50:4
**acted**   8:8
**action**   9:20 10:21
   22:19
**actions**   8:2,3 21:2
   24:16 34:21
**active**   48:24
**addition**   21:3
**additional**   21:21
**address**   21:12 37:5
**addressed**   23:17
   35:21 48:23
**addresses**   48:2
**addressing**   40:15
**adequate**   20:21
**adequately**   13:13
   15:2 18:3
**adjustment**   40:1
**administration**
   20:1
**administrative**
   37:15

**advanced**   15:24
**adversaries**   33:8
   49:1
**adversary**   19:22
   26:10,11 40:13
   46:10
**advising**   22:16
**affect**   12:8 15:6,20
   15:24
**aggregate**   39:3
**ago**   26:25 45:17
**agree**   22:2,5 23:5
   24:4 25:18 28:8
   29:7 30:7 33:5,11
   40:6 48:11
**agreed**   27:25,25
   28:7 30:10
**agreement**   19:14
   22:11 40:8
**ahead**   7:24 12:8
   15:19,22 20:10
   34:18
**alan**   5:14 36:5
**allegations**   10:15
   13:8
**allege**   35:14
**allow**   28:21
**allowed**   27:6 34:20
   38:22
**allowing**   20:22
**allows**   18:23
**alternative**   33:15
**amenable**   33:9
**americas**   3:4 6:3,18
**amicus**   20:20
**amount**   24:15 30:9
   30:25
**amplify**   26:22
**answer**   9:5 10:11
   15:4 24:25 27:1
   31:3 32:6,14 43:7
   44:3 45:2,3
**answered**   10:8 34:8
   43:1
**answers**   10:12
   21:16 26:9,11 31:5
   31:6 32:19

**antecedent** 37:9
45:12
**anticipation** 23:6
**anymore** 39:20
**apologize** 12:20
**apparently** 41:21
**appeal** 8:21 9:9
39:15
**appear** 37:22
**appearances** 7:14
**appearing** 47:3
**apple** 28:14 29:11
**application** 14:2
**applications** 33:17
**appointment** 48:9
**appreciate** 46:9
**appropriate** 18:2
19:12,15 23:9 38:13
48:8
**approve** 25:14
**approximately**
22:12
**april** 9:6 31:14,17
31:18 32:3,5
**argue** 28:12,19
**argument** 8:8 16:13
30:21 38:9,18 42:1
42:2 46:25
**arguments** 12:15
16:12 17:2 23:19
41:24 43:25
**asked** 26:24 49:1
**asking** 7:25 17:24
18:9 28:17 46:14
**assess** 16:25
**assisted** 47:9
**assure** 37:7
**attempt** 32:22
**attorney** 3:3,10 4:2
4:10 5:2,18 6:10,17
34:24
**attorneys** 3:17 4:17
6:2 24:11
**author** 17:8
**available** 33:24
34:2

**avenue** 3:4,18 6:3
6:11,18
**avoid** 10:21 12:13
**avoidance** 8:2 21:2
22:19
**aware** 30:20

**b**

**b** 1:23 3:22
**back** 9:25 10:7,20
22:1 29:14 44:20
**background** 21:13
**baker** 4:16
**bankruptcy** 1:1,12
1:25
**based** 22:22 42:1
**basis** 13:20 17:1
34:5
**becard** 29:7
**becker** 4:1 21:1
**beginning** 8:10
**believe** 22:19 25:7
25:19 29:4 30:4,19
35:3,6 38:6 39:12
**bell** 5:7 34:13,13,19
44:7
**belong** 34:22
**bench** 43:9
**benchmark** 11:9
**benefit** 13:11 19:20
19:25
**bentley** 6:7
**bernstein** 1:24
**besikof** 3:22
**best** 40:17
**better** 42:3
**billion** 29:17,18
35:13 38:5,10
**bind** 27:12
**bit** 7:23
**bite** 28:14 29:10
**blast** 40:21
**boils** 43:15
**bottom** 42:7
**bound** 22:22,24
23:1,25 24:14 25:15
25:20 26:25 27:7
37:19

**bowling** 1:13
**break** 27:20 30:21
**brief** 11:1 12:23
15:7 16:5 20:20
23:13,20,22 24:1
25:15,18,19,25 27:7
28:21 29:1,9 37:8
37:17 39:14 42:15
43:24
**briefed** 10:18 11:25
12:25 14:19,20
15:23 18:4 23:2
25:24 29:1,8,11
30:2 37:10 38:1
**briefing** 2:2 7:20
8:11,13 11:2,22,25
21:6 23:5,8,10,12
23:13,14,17,23,24
25:7,14 26:15 35:20
37:11,13 42:10,12
**briefly** 36:12
**briefs** 11:7 14:1,4
22:14
**broader** 41:4
**broadway** 4:3
**broke** 31:23
**bryan** 6:16
**bucket** 9:7 10:6
**buckets** 8:23
**burden** 33:16
**burdening** 20:21
**bypass** 37:3

**c**

**c** 3:1 7:1 50:1,1
**calendar** 40:14
42:17 46:19
**call** 16:19 32:23
34:25
**called** 8:4
**calls** 41:15
**capacity** 18:6
**carole** 3:7 7:11
**case** 1:7 7:18,23
8:10,18,22 9:16
11:10 13:9 14:7,10
16:5,17,21 17:3
18:22,25 19:7,21

20:19 23:7 30:8
31:7 32:20 33:21
34:24 35:8 36:13
41:13,15 47:20
**cases** 8:22,24 9:1,4
9:7,13,14,23,25
10:3,10 12:5 15:17
15:21 16:18,19
17:25 18:5,15 20:2
21:3 22:12 24:24
26:5,7,9,16 27:3,4
29:16,17 30:8,14,16
30:21,23,24 31:3,3
31:4,5,6,8,8,11,14
31:15 32:12,13,19
32:25 33:2,12 34:8
37:1,6 40:22 41:9
42:4,11,21 43:1,1
47:9,12,18 48:25
**cashman** 4:9 7:16
9:25 26:23
**catch** 32:17
**category** 11:1
**caught** 41:12
**cause** 9:17 10:21
**cave** 6:16
**certain** 8:16 27:11
42:1
**certainly** 41:19
46:20
**certified** 50:8
**certify** 50:3
**cet** 50:8
**cetera** 43:20
**chaitman** 11:3
12:25 14:16 22:16
27:24 28:8,22 42:13
42:19 47:1
**chaitman's** 32:23
36:16 43:9 44:10,11
46:19
**chance** 11:14 36:3
**changing** 46:25
**chooses** 25:15
**circuit** 8:21 9:10,11
9:22,23 32:10 39:20
39:23 40:1

**claim** 28:3
**claims** 9:1 34:20
  38:22,24 39:1,10
  41:10 43:19
**clarify** 27:23
**clause** 22:2 24:5,15
**clear** 28:13
**clearly** 13:9
**clerk** 7:2 33:6,8,9
**client** 22:9 24:7,20
  28:2
**clients** 8:5,5,19 22:4
  22:6 23:11,23 36:17
**close** 46:18
**closed** 9:18
**colleague** 22:16
  27:24
**colleagues** 7:13
  28:13 30:19
**come** 10:7 11:25
  16:11 19:13 41:18
**comment** 17:22
**common** 7:20 10:17
  11:1 17:23 19:1,13
  21:7 22:19 23:2,8
  25:11 33:7 47:6,21
  47:24
**compensated** 38:8
**complaint** 9:17
  13:10
**complaints** 10:14
  10:16,17,19 21:17
  21:20 29:20
**complete** 26:13
**completely** 8:24
  10:10 16:5
**concept** 30:20
**concern** 16:2 37:18
  44:22 45:8
**concerned** 45:18
**concluded** 49:8
**conclusion** 27:16
**conference** 2:1 7:5
  23:7 48:8
**conferences** 31:7
  32:20

**connection** 2:2
  47:10
**consensus** 17:18,19
  17:21
**consent** 23:21
**consider** 44:25
  46:23
**consideration** 8:17
  17:23
**considered** 16:12
  16:13 41:25
**consolidate** 18:24
  47:15
**consolidated** 2:1
  7:19 8:13 9:22
  11:18 19:8 21:6,7
  23:8,9,12,14,23
  25:7,14 26:15,16,25
  27:3,5,13,15 34:5
  40:20 41:7 42:10,12
**consult** 21:8
**consulted** 21:10
**contemplated** 8:12
**contest** 19:3
**context** 14:10 21:13
**continue** 8:13 11:16
  16:24 35:16
**contributed** 41:22
**convince** 14:22
**cookie** 10:14
**cooperate** 34:4
**cooperation** 27:22
**coordinate** 9:23
  11:6,13 33:19,24
  41:4
**coordinated** 7:20
  8:11 11:12 17:12
**coordination** 11:9
  12:4 16:20
**corporation** 5:1
  34:14
**correct** 8:4
**cotlekoff** 26:10
**counsel** 5:10 11:13
  22:15 23:4 36:7
**country** 50:10

**court** 1:1,12 7:3,9
  7:24 9:9 10:22
  11:21 12:14,17,19
  12:21 13:3,7,16,21
  13:25 14:3,8,13,17
  14:20 15:8,10,16
  16:1,7,10,16 17:1,6
  17:18 18:23 19:5,7
  19:12,19,24 20:4,6
  20:8,10,16,21,24
  21:8 22:24 23:12
  24:2,8,12,19,21
  25:1,5,10,10,13,21
  26:1,14,18,21 27:19
  29:23 31:17,19,21
  32:2,5,8 33:6,9,9
  34:6,11,17 35:8,15
  35:23,25 36:2,6,11
  36:17,19,23,25 37:4
  37:12,16,21 38:9,11
  38:13,18,24 39:3,5
  39:9,15,19,21,24,25
  40:3,9,12,18,25
  41:6 42:7,14,22
  43:2,7,11,13 44:4,8
  44:11,15,19,22 45:4
  45:8,15,22,24 46:2
  46:5,7,9,15,20,23
  46:25 47:13,16,21
  47:24 48:5,13,16,20
  49:3,5,7
**court's** 18:18
**cplr** 14:15
**cremona** 4:22
**current** 14:4,22
  16:11 17:24 18:18
**currently** 21:4
  23:20 38:11 39:21
**customers** 38:7
**cut** 37:14 38:2
**cutter** 10:14
**cyganowski** 33:14

  **d**

**d** 7:1 50:8
**d.c.** 3:12 5:5
**daniel** 3:22

**date** 31:17 32:15
  34:16 44:15 46:25
  50:13
**daughter** 12:18
**david** 4:21
**davinsky** 33:20
  34:1 47:7 48:2
**dawn** 2:25 50:3
**day** 22:12
**days** 22:4,9 24:6
  28:2 34:19 35:11,12
**deadline** 21:19
  22:12
**deadlines** 21:16,23
**deal** 40:19 41:6
  42:4 48:17
**death** 22:4,6,9 24:7
  24:20
**debated** 29:23
**debt** 37:10 45:12
**debtor** 1:9 47:25
**december** 21:15
**decide** 7:7 13:16,18
  15:20,23 16:1,8,10
  26:15 29:3 39:19,21
  41:23 42:1 43:9
**decided** 10:18,23,24
  12:8 14:10 15:7
  17:5 28:18 35:2,19
  37:3,8 39:2 42:3
**decides** 19:20,25
  23:8 27:15
**decision** 8:22 12:10
  25:11 30:3
**decisions** 22:22,25
  25:12 29:24
**defendants** 3:3,10
  3:17 4:2,10 5:18
  6:2,10,17 8:5 9:19
  10:2,8 15:21,22,25
  16:23 20:12 21:1
  22:20 24:16 25:2
  35:14,17
**defense** 7:12 8:6
  11:11,11 38:1
**defenses** 10:24 13:2
  13:2,4,14

**defer**  12:2 40:16
**definitely**  18:15
**definition**  16:16
**delay**  17:4 34:23
**demonstrated**  32:18
**denton**  28:7
**dentons**  3:2 7:11,15 9:25
**depose**  33:25
**deposition**  47:7
**depositions**  33:19 33:24 47:4
**describes**  11:8
**detailed**  38:21
**determination**  25:16 27:10
**determinations**  22:22 23:1,25
**determined**  9:3
**difference**  10:15 16:22
**different**  8:23 16:6 16:6 19:22 26:5 42:6,9 47:11,25
**differently**  19:23
**difficult**  34:23
**difficulty**  47:8
**directly**  48:22
**directs**  17:19
**disagree**  41:8 48:12
**discovery**  7:21 10:9 10:12 11:19 12:3,5 17:11,13 21:7 26:13 26:16 27:22 33:14 33:16,17 41:3 47:2 48:9,17,18
**discreet**  8:16
**discretion**  18:24
**discussed**  40:7
**dismiss**  7:7 10:3,4 10:20 11:4,5 13:10 13:17,19,19 21:2,9 21:14,17,18 22:12 22:13,18 23:6 24:3 24:24 26:6 37:7 38:14 41:20 43:3

44:24 45:2
**dispense**  38:6
**dispose**  9:12 15:12
**disposed**  8:24 9:2 9:13,14
**distinction**  43:19
**distribution**  30:6
**district**  1:2 29:23
**divided**  8:22
**dkt**  2:2
**docket**  7:19 11:18 17:25 27:5 33:7 40:6,20,22
**docketed**  10:5
**door**  14:24
**drafted**  22:3
**dreier**  19:7
**dual**  40:10
**due**  23:20

**e**

**e**  1:23,23 3:1,1 5:22 7:1,1 8:18 9:2,9,19 9:21 30:20 32:10 40:1 50:1
**ear**  41:12
**earlier**  26:4 47:8,19
**easiest**  20:16 40:18
**easy**  40:25
**edward**  4:23
**effect**  9:3
**effective**  35:9
**efficient**  35:9
**effort**  34:2
**either**  9:5 28:16 32:6 45:2
**electronic**  50:8
**elimination**  8:25
**elise**  6:6
**eluded**  33:21
**email**  40:20
**enable**  25:10
**engage**  29:9
**entries**  40:10
**esq**  3:7,14,21,22 4:7 4:14,21,22,23 5:7 5:14,15,22 6:6,7,14 6:21

**essentially**  40:11
**established**  27:5,5
**et**  43:20
**eventual**  31:9
**eventually**  12:7
**everybody**  11:14 12:6 15:17 24:8,22 27:7 40:21
**exactly**  39:4
**example**  9:16 10:19 13:1 18:12 19:2 33:19 47:8
**excessive**  20:22
**excursion**  29:22 35:1
**experience**  24:17
**explain**  7:25 15:1 24:2
**expressed**  37:18 44:22
**extend**  10:11 21:23 24:25 32:9 37:18
**extending**  21:16 24:5
**extension**  12:9,9 41:16
**extensions**  9:5 21:22 35:18 45:3
**extent**  23:12 26:14
**extraneous**  29:5

**f**

**f**  1:23 50:1
**fact**  18:25 19:1
**facts**  16:13
**fair**  22:21
**fairly**  27:11
**fairness**  30:4,4
**faith**  8:5,8 34:21
**fall**  9:7 10:25
**familiar**  30:19 33:12,20
**familiarly**  28:11
**far**  45:17
**fare**  28:10
**faster**  41:14
**favor**  8:20

**february**  1:17 50:13
**feel**  38:1 48:23
**fees**  35:9
**fell**  25:3
**fictitious**  29:16 30:8 34:22
**figure**  12:12 15:19 28:9 38:15
**file**  18:22 21:16,19 22:11 24:24 28:3 43:7,13,24 44:4,23 45:19 46:15
**filed**  8:2 21:3,11,14 21:19 22:13,14 26:9 26:11,12 35:3 37:20 37:22 40:21 43:5 45:4,5,16,17,19,19 46:15
**filing**  26:8 34:16
**final**  23:5
**finally**  10:7
**fine**  30:1 40:23 43:12 46:17 48:15
**finish**  16:8
**firm**  28:8 36:7
**firms**  7:15
**first**  15:11 21:5 30:23 36:13 45:25 48:6
**five**  8:16 17:3 20:20 29:19 39:10
**floor**  4:4
**folks**  30:5
**following**  20:13
**follows**  27:1
**forbid**  35:11
**forced**  22:11
**foregoing**  50:3
**formal**  18:22 20:18
**formula**  9:3
**forth**  22:1
**forward**  16:11 18:25 28:22 31:8 32:19 34:7,9,23 35:4 36:16,19 48:25 49:2
**found**  41:21

**four** 8:16 48:16
**franekel** 6:1
**frankly** 13:20 29:13
30:17
**fraud** 8:9 16:18
**free** 19:23
**frejka** 6:6
**friday** 23:21,22
45:25
**front** 27:2
**fti** 47:9
**full** 18:19
**fully** 9:13 29:1,11
30:2 38:7
**fund** 38:5,5
**further** 13:13 14:19
17:22 35:20

**g**

**g** 7:1
**gates** 3:9 7:15 17:7
**general** 40:7
**getting** 28:23 30:13
34:25 44:20
**give** 8:4 10:19 46:15
**given** 24:15 25:17
**go** 7:24 11:10 13:13
15:19,22 18:25
20:10 28:22 29:14
34:17,18 35:4 36:16
36:19 38:14 39:5
40:14,22
**god** 35:11
**goes** 17:25
**going** 12:6 14:23,25
15:20,24 16:14 22:1
27:20 33:21,22
34:21 35:2 37:18
39:19,20 41:16 42:2
42:8 43:9 44:23
**good** 7:3 8:4,8
20:25 34:21
**gorchkova** 4:7
20:25,25 21:10 23:1
24:4,10,13,20 25:6
25:17,23 26:2,19,24
44:16

**gotten** 34:20 35:12
35:17
**granted** 21:22
30:11
**great** 16:22
**greedon** 38:6
**green** 1:13
**greg** 20:11
**gregory** 3:21
**grounds** 10:3
**group** 7:12 8:6 10:7
11:11,11 12:7 17:10
26:17 31:2,24 38:1
48:7
**guess** 7:6 46:13
47:22
**guy** 47:3

**h**

**h** 5:7
**half** 29:25
**halt** 32:24
**handle** 33:3 40:17
**handled** 20:15
**handling** 35:7
**happen** 17:14 32:2
32:5,21 33:2,10
34:6 40:10
**happened** 8:14
32:21 40:8
**happens** 33:1
**harbor** 8:19
**hard** 9:22 18:6
**heads** 11:24
**hear** 7:9 17:1 41:19
44:12
**heard** 9:12 11:14
14:11 18:4,11,16,17
19:19 20:19 22:17
27:8 28:23 29:2
34:8,12 37:24 38:3
46:22
**hearing** 2:1 18:19
35:4,16,18 36:14,15
48:14,17
**hearings** 18:1
**held** 38:23

**helen** 22:16
**help** 17:1
**helps** 43:6
**hiccup** 32:22
**historically** 29:14
**history** 7:23
**holding** 38:8
**hon** 1:24
**honor** 7:8,18 9:4,15
10:8 11:4 12:20
14:5,14 15:18 16:15
20:9,23 23:7,23
24:23 26:20 27:11
27:15,20 28:11,25
29:3,12 30:2,19
31:4,9,24 32:14,23
33:3,7,12,16,20
34:13,19 35:22,24
36:4,7,9,18 37:8,25
38:20 39:12,17,22
40:16,24 42:5,24
43:10,23 44:7,16
45:1,13 46:8,12,13
46:22 47:5 48:15,21
49:4
**hope** 19:5 32:1
**hostetler** 4:16
**huge** 38:5
**huh** 10:22 13:21
40:12 42:22
**hundred** 31:5
**hundreds** 9:8

**i**

**identified** 41:5
**identify** 11:23
**identifying** 46:10
**immediately** 24:18
**immersed** 17:3
**implied** 7:6
**important** 8:17
11:15 19:16,18
21:12
**imposed** 49:1
**inadequate** 13:5,20
15:5
**included** 26:17

**includes** 7:19
**including** 28:7
**indiscernible** 24:16
26:13 46:4
**individual** 40:13
**inflation** 40:1
**informed** 22:6
**initial** 23:17 31:7
32:20
**input** 16:3 20:22
**inquiring** 21:21
**insanity** 16:16
**insolvency** 19:4
33:23
**insolvent** 47:25
**instance** 48:6
**instances** 24:18
28:17
**intend** 21:23 28:12
**intention** 41:23
**interest** 39:9,10,11
39:13,14
**interests** 15:2
**interfere** 18:17
**interim** 31:10
**intervene** 11:21
14:21,25 16:25
18:22 37:17 42:13
**intervenors** 21:6,11
22:15 23:3
**intervention** 17:1
20:18
**investments** 1:7
**investor** 5:1 34:14
**involving** 27:3
**iras** 14:14
**issue** 8:20 9:9,24
11:20 14:10,12,16
14:17,18,18 15:1,5
15:23 16:5,10 17:21
17:22 18:3,14,16
19:3,6,13,15,17
20:1 23:11 24:11
25:10,18,19,21,24
27:11,14,15,17 29:5
29:8,24 30:15 35:21
35:21 38:16 39:13

39:22 41:3,4,4

**issues**   7:20 8:11,16
8:16 9:24 10:16,17
10:25 11:5,7,15,23
12:8,22,23,24 15:3
15:6,12,13,13,20
16:6 17:20,23 18:10
18:12,24,24 19:1,8
19:18 21:7 22:17,18
23:2,8,15,19,24
25:11 27:6,23 28:16
29:4,4,23 30:3 35:2
35:5,19 37:8 38:2
39:19,21,25 40:2
42:14,20,25 44:18
44:19 45:9,9 48:3

**issuing**   49:3

**it'll**   44:24

**item**   48:21

**j**

**j**   4:21,22,23 6:21

**jacobs**   4:23

**january**   21:24 31:3
32:15

**jaundice**   34:18,18

**jennifer**   6:14

**join**   21:5 44:23

**jointly**   11:25

**joshua**   5:22

**jr**   4:14

**judge**   1:25 8:12,15
8:20,22 9:24 10:1
11:18 14:9,11 20:18
25:8 27:2 28:16,16
28:18 29:23 30:9,24
33:13 35:1 37:2,9
37:11 45:10 49:6

**judgment**   30:11

**julie**   4:7 20:25

**july**   9:6 31:15 32:11

**jurisdiction**   25:22
25:24 27:16,18

**k**

**k**   3:11

**k&l**   3:9 7:6,8,15
17:7

**kaplan**   7:15

**katz**   30:10

**keep**   18:6 28:5
35:15

**keller**   5:22

**kevin**   5:7 34:13

**key**   18:2

**kids**   41:17

**kim**   5:15

**kind**   12:4 16:20
17:12,21 18:19
19:15 20:22

**kirby**   3:14 17:7,7
19:9 20:5,13 41:2

**kleinberg**   7:15

**knew**   11:20

**know**   9:7 11:3 14:5
14:6,7,13 15:2 16:7
16:15 19:7 24:13
27:17 28:2,7,22
29:14 30:19 31:12
32:25 33:7,13,20
36:22 40:8 42:3
43:5,6,18,21 44:1
44:19,21,24 45:11
47:14,18,21 48:4,22

**knowledge**   8:9

**kramer**   6:1 7:16

**l**

**lane**   5:9 36:5

**language**   22:7

**large**   15:6

**latch**   32:22

**law**   14:15 18:24

**leaf**   33:13

**learn**   22:5

**learning**   22:9

**lengthy**   45:3

**letter**   7:6,13 17:8
41:22 46:10

**levin**   6:1 7:16

**levy**   4:14 26:20,21
26:22,23

**liability**   13:8

**lifland**   8:12 10:1
14:9,11 28:16 37:2

**limitation**   8:25

**line**   42:7

**liquidations**   34:15

**litigation**   16:8
32:25 35:7,15

**little**   7:23 19:23
32:12

**llp**   3:2,9,16 4:1,9
5:9,17 6:1,9,16

**lock**   30:17 42:18

**loeb**   3:16,16 7:16,16
20:11,11

**long**   18:16 38:4
40:14

**longo**   5:15

**look**   19:21,23 39:6
40:22 43:23 48:5

**looked**   43:4

**looking**   17:10 29:15

**losers**   29:18 30:5
34:23,25

**lost**   38:7

**lot**   10:17 33:17 35:2
44:2

**lpo**   48:23

**m**

**m**   1:24 5:15 6:14

**madoff**   2:2 7:4
34:15

**major**   8:11

**majority**   28:15

**making**   41:24

**management**   7:19
8:18 23:7 31:7
32:20 36:13

**march**   9:12 10:3
15:11 29:3 30:21
33:22 35:4,17 42:18
45:25 46:1,2,5
48:14

**marx**   5:9 36:5

**master**   27:5 33:14
33:16 40:6,14

**matter**   1:5 25:22,24
27:14,16,18 48:14

**mean**   17:3 30:16
34:6 41:8 42:7

44:11

**mechanical**   40:4

**mechanics**   20:14

**mediate**   36:21

**mediating**   36:17

**mediation**   36:14
37:1,3

**mediator**   33:14
48:9

**meetings**   17:17

**member**   7:12

**mentioned**   26:4

**merkin**   33:13

**microphone**   36:6

**mid**   21:20

**milberg**   5:17 7:16
10:1

**million**   30:11

**mineola**   50:12

**minute**   28:21 35:25
35:25

**minutes**   7:22

**misinbaum**   26:10

**mittendorf**   5:9 36:5

**modification**   21:24
28:1

**modified**   22:7

**moment**   26:24

**monday**   46:3

**money**   13:11 34:21
34:25 35:13 38:4,7
38:8,19,22

**morning**   7:3 20:25
28:12,20 44:1

**motion**   7:7 11:19
12:14,21 13:17,19
14:21 16:11 18:13
18:22 20:19 21:2,13
21:18 22:23 23:6,9
24:3 26:8 27:21
28:10,12,19,25 30:3
32:14,23 33:3 34:7
35:3 36:16 37:5,22
37:24 38:14 41:20
41:23 44:12,20,23
45:4

motions 10:4,11,12
10:20 11:4,5 13:10
18:1 20:22 21:9,11
21:16 22:11,13,18
24:24 26:6,12 36:14
37:7,9 40:21 41:7,7
41:24 42:16,17 43:3
43:9,14,20 44:5
45:5,14,17,20 46:19
47:1
move 9:5 10:11
30:14,14 32:7 34:4
34:7 41:14 42:18
48:25
moved 8:14 10:2
45:2,2
moves 12:7 28:4
moving 10:12 31:8
32:13,19 33:2 34:9
34:23 42:11,20 49:2
multiple 15:22
25:12
muse 33:21

**n**

n 3:1 7:1 50:1
n.w. 5:3
naftalis 6:1
necessarily 28:5
need 13:18 19:19
28:14,22 29:10 41:4
41:16
needs 14:18
negotiate 48:6
net 29:18 34:21,22
34:24
never 10:5,5,17,18
10:23,24 14:11
37:23
neville 3:7 7:8,10,11
7:11,25 9:11 10:23
12:16,18,20,24 13:6
13:9,18,23 14:2,3,5
14:11,14,18 15:4,9
15:15,18 16:3,9,15
16:17 24:23 25:2
29:15 30:7 35:24
36:1,12,18,21,24

37:6,14,20,22 38:10
38:12,16,20 39:1,4
39:7,12,16,18,22
41:9 42:5,9,16,23
43:17,22 44:9,18,21
45:1,7,12 46:13,17
46:21,24
neville's 17:23
20:13
new 1:2,14,14 3:5
3:19 4:5,12,19 5:12
5:20 6:4,12,19
23:15,18,19,24 38:2
nice 46:21
nicholas 4:22
nisselson 5:14 29:6
36:4,5,7
nos 2:2
notice 18:1,2,10
20:14 27:8
notified 24:18
notify 11:21 22:3,8
24:6
november 21:20
27:25
number 8:4 10:25
11:3,5 12:24 15:6
24:15 31:4,12,12,25
32:11 41:11
numbers 31:13,16
nw 3:11
ny 3:5,19 4:5,12,19
5:12,20 6:4,12,19
50:12

**o**

o 1:23 7:1 50:1
objection 38:25
objections 41:10
obligation 18:21
obligations 10:21
obviously 28:11
40:16 47:11
october 21:20
offer 47:6 48:3
offered 36:24
office 21:21,22 22:3
23:21 24:6

oh 12:16 20:7 36:1
41:15
okay 13:23 16:9
17:6 18:1 19:13
20:4,10 24:12 25:1
32:8 34:11 35:23
36:11 37:4 44:8
45:22
old 50:10
omnibus 30:3 45:20
46:7
once 30:6 47:20
ones 45:16,17
opheim 6:14
opportunity 12:10
18:4,11 23:18 24:1
25:17,25 27:8 28:23
33:25 37:13
opposed 25:11
opposing 48:7,7
order 7:19 21:25
22:2,2,7 23:12
26:14 28:1 33:1
36:13 40:9
ordered 20:20
orderly 17:12
orders 23:23 35:15
ought 19:19,19,24
outside 11:13 38:14
39:5
outstanding 29:20
45:20
overhang 32:10
overlap 44:18
oversees 35:8

**p**

p 3:1,1,21 7:1
page 20:20
papers 43:8
pardon 32:4
park 3:18
part 17:10 26:6
37:10,17
participate 11:22
12:10 37:13,25
participated 28:15

particular 14:7,7
27:6,11
parties 17:15 19:11
22:1,10,21 27:4,6
27:12,12 28:6 43:19
party 19:22 26:25
passed 28:2
path 31:8
pause 48:19
pending 7:7 8:2
9:15 10:4,11,20
11:4 16:19 18:13
37:7 41:19 42:17
43:3 45:6
pennsylvania 5:19
people 11:20 12:3
14:23 15:7 16:4,4
16:25 19:2 30:5
34:20 41:23 43:21
45:1 47:22
people's 38:3
peoples 35:13
percent 30:25 31:13
31:24
perfectly 20:20
perfunctory 40:9
period 12:9 16:24
25:3,4 31:1,14,16
31:25
periods 48:1
permit 19:12
person 15:23,24
25:25
ph 11:3 26:10,11
29:7 30:10,10 33:13
33:13,20,21 38:6
philip 6:7
phone 12:17
phones 14:23,24
phrase 48:8
picard 30:10
place 12:7 35:16
48:24
plaintiff 18:7 29:6,7
plaza 4:18 5:19
pleading 13:5,20
15:12 21:19

**please** 7:3 12:17,19
  14:23
**pled** 13:13
**plus** 31:12
**point** 7:13 18:2,5
  19:17 20:14 21:12
  25:6 26:2,2 28:20
  41:2
**pointed** 35:20
**points** 12:15,22
  17:11 18:23 20:3
**poliakoff** 4:1 21:1
**ponzi** 19:3,4 29:16
  30:9 47:19,22
**posed** 35:6
**position** 24:14 28:4
  34:10
**possibility** 23:15
**possible** 35:10
**potential** 22:22,24
  23:24
**practical** 17:14
**practice** 11:15
**precluded** 23:24
**preference** 9:1
**prejudgment** 39:14
**present** 17:20 19:11
**pretty** 11:8 22:19
**prevail** 9:18
**principal** 17:8 41:8
**probably** 9:8 10:25
  12:18 17:20 27:11
  33:11 42:2
**problem** 18:5 24:9
  24:22 40:25 41:9
  47:3
**problems** 40:15
**procedural** 26:5
**procedure** 15:19
  25:14
**procedures** 28:1
  33:1 35:15
**proceed** 26:15
**proceeding** 12:5
  16:21 19:22 26:10
  26:11 27:1,9,13,15

**proceedings** 27:6
  36:8 40:13 41:14
  46:10 49:8 50:4
**process** 12:3 21:7
  25:7,9,10 47:10
**proffered** 47:9
**profit** 29:16
**profits** 8:7 30:8
  34:22
**progresses** 12:1
**properly** 17:5
**proposal** 41:18 43:2
**protected** 14:15
**protection** 5:1
  34:14
**protocol** 48:18
**proved** 30:9,9
**provide** 18:10 23:16
**provides** 8:18 36:13
**pryor** 4:9 7:16 9:25
  26:23
**public** 38:20
**published** 38:21
**purpose** 20:21
**pushed** 31:25
**pushing** 15:1
**put** 7:14 22:7 23:10
  23:13 32:16 33:6
  37:17 42:16 43:2
  44:9
**puts** 46:18

### q

**quagmire** 35:10
**question** 15:3,8
  18:13 25:13 26:24
  40:5,5 47:21,23,25
**quick** 41:2
**quite** 29:13 30:17

### r

**r** 1:23 3:1 7:1 50:1
**raise** 11:5 13:3,15
  15:12 16:6 18:23
**raised** 10:16 13:14
  14:1,4,16,17 15:13
  17:11 18:12 23:15
  27:17 40:15 47:24

**raises** 12:15,22
  21:12 22:18
**raising** 41:24
**rakoff** 8:15,20,22
  9:24 11:18 20:18
  25:8 27:2 28:16,18
  29:24 30:10,24 35:1
  37:9,11 45:10
**rapidly** 28:4 30:14
**rate** 39:10,16
**reach** 17:18 19:14
  22:10
**reached** 21:20
  22:16 23:4
**read** 43:8
**ready** 15:17 31:9
  36:19
**real** 36:15
**really** 11:9,11 12:6
  13:3 16:19 36:15
  37:14 38:1 41:12
  42:25 48:22
**reason** 16:25 28:3
  28:20 33:10,23
  36:15
**reasonable** 18:16
  28:6
**received** 7:5
**recollection** 14:8,9
**recollects** 31:6
**recommends** 35:8
**reconsider** 28:18
**record** 5:10 7:14
  36:8 38:15,21 39:5
  39:7,8 50:4
**recovery** 8:7
**reference** 8:15,16
**regard** 10:2 27:22
  27:23 29:24 33:4,23
  35:4
**regarding** 25:21
**regular** 18:10
**relief** 18:21
**rely** 38:20
**remain** 8:12 48:24
  48:24

**render** 25:11
**repeat** 35:2
**replied** 10:5
**reply** 23:13,20,22
  29:1,2 35:17,18
  46:16
**report** 34:1 48:3
**reports** 38:21
**represent** 21:1
  29:13 43:18,21
**representing** 15:2
  20:12
**request** 2:1 7:18
  21:6 28:6
**requested** 22:7
**required** 22:3,8
  24:6
**requires** 40:9
**resolution** 29:12
  35:12
**resolve** 29:25
**resolved** 29:19 30:6
  32:25 41:11 45:10
**respect** 13:5,7 27:10
  27:14 47:2
**respectfully** 22:6
**respond** 23:18 24:5
  35:24 45:14,18
**responded** 14:6,9
  21:22 29:1
**response** 22:14
  26:22 35:3 43:24
  44:4 45:19,20 46:7
**responses** 23:16
  44:10
**responsive** 21:19
**result** 16:14
**retained** 26:7,7
**richard** 3:14 4:14
  17:7 26:23 38:6
**rick** 39:8
**rid** 45:21
**right** 7:9 8:10 11:10
  11:24 12:19 19:9,24
  20:9,24 21:18 25:5
  26:1,18 27:19 31:1
  38:25 40:1,3 41:6

**41:19 43:2 45:15**
**46:2,5,6,23 48:13**
**49:5**
**ripe** 19:17 29:12
**30:3 35:19**
**rise** 7:2
**road** 13:15 50:10
**rockefeller** 4:18
**roth** 6:9
**rule** 18:23
**ruled** 8:20 9:24

**s**

**s** 3:1 6:6 7:1
**safe** 8:19
**saying** 12:21 15:14
**40:21 44:1**
**says** 13:4
**schedule** 7:20 10:9
**11:2 17:11,18,19,21**
**18:18 19:14 23:14**
**23:20 48:8,13**
**scheduled** 7:5 9:12
**15:10,11 29:3 35:16**
**41:13 44:12,13**
**schell** 6:21
**scheme** 16:23 19:3
**19:4 29:16 30:9**
**47:22**
**schulte** 6:9 7:16
**schwed** 3:21 20:11
**20:11,17 40:4,13,23**
**search** 17:25
**seated** 7:3
**second** 8:21 9:10,11
**9:22,23 29:10 31:11**
**39:20,23,25**
**securities** 1:7 5:1
**34:14**
**see** 11:18 12:4 15:5
**15:6 23:4 33:10**
**37:17**
**seeger** 7:17
**seek** 37:17
**seeking** 8:7 38:6
**segway** 30:14
**send** 40:20

**sense** 11:6 32:12
**34:5 41:19 48:5,10**
**sent** 7:12 9:25
**separate** 19:22 21:4
**27:23 43:14 47:2,4**
**series** 27:3
**settle** 31:10
**sheehan** 4:21 8:3
**20:6,7,9 27:19,20**
**31:18,20,23 32:4,6**
**32:9 35:6,19 36:10**
**36:25 37:2,5 41:5**
**43:4,10,12,15,18,23**
**44:6 45:13,16,23**
**46:1,3,6,8,12 47:5**
**47:14,17,23 48:2,11**
**48:15,21 49:4,6**
**sheets** 40:22
**short** 36:4
**shut** 12:17,19 14:23
**28:23**
**sic** 28:7
**side** 32:16
**sides** 40:6
**significance** 31:21
**similarly** 25:9
**simpler** 20:1
**simplified** 25:8
**simplify** 25:9
**simply** 20:19
**single** 15:7
**sipc** 5:2 22:14 23:16
**35:3,7,8,14 44:7**
**sir** 17:6 41:1
**sit** 17:15
**sits** 18:7
**sitting** 38:4
**six** 25:4 31:12,13,16
**31:25 32:11**
**slowest** 41:14
**slows** 41:17
**smb** 1:7
**somebody** 17:25
**29:8 41:15 44:23**
**sorry** 12:16,20 14:6
**20:7 36:1 44:16**

**sort** 21:13 23:7,11
**26:5,15**
**sound** 38:13
**south** 2:25 50:3
**southern** 1:2
**speak** 17:9 29:22
**36:6 42:25**
**speaker** 39:17
**44:13,17**
**specifically** 15:4
**speech** 38:3
**spoke** 23:3
**square** 4:11
**st** 5:3
**stake** 29:17
**standing** 18:14
**19:16,18 29:5 35:20**
**38:16**
**start** 15:16 42:4
**44:24**
**state** 14:15 28:10
**states** 1:1
**stay** 23:5 42:8 48:25
**stayed** 32:15 33:1
**stays** 49:3
**step** 13:13 30:17
**stipulation** 21:25
**24:5**
**stop** 41:23 42:18
**stopping** 42:19
**stops** 34:7
**story** 13:12
**straightforward**
**30:8**
**streamline** 25:12
**street** 3:11 5:11
**stuart** 1:24
**subject** 25:22,24
**27:14,16,17 38:24**
**submission** 23:5
**submit** 23:22 25:15
**subsequent** 10:24
**13:1,4,8,19 26:8**
**substantial** 9:3
**substantially** 9:2,14
**successful** 25:8

**suggest** 32:23
**suggested** 30:18
**suggesting** 28:14,21
**34:3 41:12**
**suggestion** 45:13
**suite** 5:4 50:11
**support** 36:9
**supports** 35:8
**suppose** 19:2 48:1
**supposed** 32:2,5,6
**36:21**
**supreme** 39:21
**sure** 8:3 11:14
**14:15 21:10 24:13**
**39:4**
**suspect** 41:21
**suspended** 10:10
**sync** 10:1
**system** 17:24 18:10
**19:13,21**

**t**

**t** 50:1,1
**take** 14:24 29:25
**44:2**
**talk** 12:3 34:24
**talking** 30:13
**teed** 45:9
**tell** 7:22 46:20
**telling** 45:5
**terms** 40:16
**testify** 33:22
**thank** 20:5,9,23
**26:18,19 34:11**
**35:22,23 36:11**
**46:24,24 49:4,5,6,7**
**thanks** 36:6 46:8
**thing** 18:19 19:16
**30:7 33:18 40:19**
**42:23**
**things** 16:23 17:4,9
**27:21 28:4 33:5**
**38:2 42:6,9,10**
**44:25**
**think** 7:13,22 8:11
**10:5 11:6,8,15,23**
**11:24 12:2,25 13:1**
**13:12,19 14:9 15:18**

**think** 17:14,18 18:17
19:17,24 20:14,17
21:11 22:21 25:9,23
27:1,7,10,22 29:10
29:11 33:6,7,20
36:18 39:7 40:7,15
41:3 42:5 43:15,15
43:20 47:6
**thinking** 11:9,17
**third** 6:11
**thomas** 6:21
**thought** 18:3 19:10
28:6 32:21 39:24
**thousands** 15:20,24
16:23
**three** 9:17 29:20
30:22 33:4 44:2,5
45:24,24 46:2
**threshold** 18:14
**time** 9:5 10:11
16:24 18:17 21:18
24:5,25 32:9,13
37:23 38:4 43:8
44:2 46:22 48:1
**times** 4:11
**today** 34:15 45:24
**told** 42:14
**top** 11:24
**topic** 30:12
**town** 41:16
**track** 18:6 21:4
23:10 26:5 28:5
43:3 44:10
**transactions** 8:19
25:3
**transcribed** 2:25
**transcriber** 50:8
**transcript** 50:3
**transfer** 13:8
**transferee** 13:1,4
**transferees** 10:24
13:20
**transferred** 37:23
**transfers** 47:10,11
47:19
**traunch** 30:23
31:11

**traunches** 30:22
**treasury** 39:16
**trial** 10:9,13 12:5
15:10,14,15 16:21
16:24 19:15 31:9
41:13 42:11,19,25
**trials** 15:11 19:5,8
**tried** 11:12 33:22
41:10
**true** 16:7 50:4
**trustee** 4:17 5:10
8:2,7 9:2 10:5 14:6
17:15,17,19 18:7
19:16,18 21:15 22:8
22:14 23:14,16
24:25 34:3 35:14
36:8,22 38:4,8,21
40:20
**trustee's** 8:21 18:14
21:21,22 22:3 23:4
23:21 24:6
**try** 15:16 17:16
41:13 42:4 48:6
**trying** 12:12 17:4
**two** 7:22 8:25 9:17
9:19 17:9,17 19:8
20:3 21:3 25:3 26:4
27:21,22 29:25
30:24,25 31:12
39:25 40:2 42:6,9
42:12

**u**

**u.s.** 1:12,25
**uh** 10:22 13:21
40:12 42:22
**umbrella** 27:8
**unable** 22:1
**understand** 16:22
18:8,13,18 19:21
24:19,21 37:16
43:10
**understanding**
22:15 24:10 26:12
**unfortunately**
22:10
**unidentified** 39:17
44:13,17

**unique** 16:17,18
23:11 26:3 29:8
**united** 1:1
**unmanageable**
30:17
**unworkable** 30:18

**v**

**vacation** 41:17
**various** 20:12 21:6
22:15,17
**vast** 28:15
**veritext** 50:9
**versus** 30:10 43:19
**views** 19:20,25
**virtually** 10:15 11:7
**virtue** 32:15
**visits** 38:5

**w**

**wait** 20:6 28:21
32:24 35:25,25
**waiting** 29:19 32:16
**waived** 27:18
**want** 12:22,23
13:12,15 15:5,6,22
17:4 18:15 19:5
20:18 21:5 24:14
27:23 28:19 34:12
35:9,10 42:15 43:24
44:2,23 47:3
**wanted** 11:21 17:12
20:19 21:12
**wants** 29:9
**washington** 3:12
5:5
**way** 7:10 9:21 12:7
12:12 13:21,25 14:3
14:20 16:1,6,11
19:10 27:2 28:15
32:14 34:17 40:14
40:17 42:1,3,3
45:23
**we've** 17:3,16,17
31:5,6 32:18,19
38:3 40:15 42:17
47:9

**week** 45:25 46:15
**weekend** 46:4
**weeks** 42:13 44:3,5
45:24,24 46:2 48:16
**weiss** 7:17
**west** 5:11
**willing** 29:9
**wind** 35:10
**windels** 5:9 36:5
**winners** 34:22
**wish** 19:3
**wished** 34:1
**withdraw** 8:15
**withdrawn** 27:4
**withdrew** 8:15
**witnesses** 47:6,9,18
**wondering** 24:22
**words** 14:21 34:3
**work** 17:16,19,20
19:11 27:2 30:15,17
33:5,7,11 34:5 48:6
**workable** 17:16
**worked** 9:22
**working** 9:21 30:16
33:4,5,14
**write** 46:10
**writing** 41:22
**wrong** 13:21,25
14:3,20

**x**

**x** 1:4,10

**y**

**yeah** 43:11
**year** 8:25 25:3,4
30:24 31:1,12,12,14
31:16,25 32:11
35:11 45:6,17,19
**years** 17:4 29:19,21
29:25 39:11
**york** 1:2,14,14 3:5
3:19 4:5,12,19 5:12
5:20 6:4,12,19

**z**

**zabel** 6:9

# EXHIBIT 2

May 9, 2013

Honorable Jed S. Rakoff        Via E-mail: amy_marshak@nysb.uscourts.gov
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Madoff Securities*, 12-mc-115 (Dkt. Nos. 199, 273, 333) (antecedent debt litigation)

Dear Judge Rakoff:

      This letter is submitted on behalf of numerous defendants in the pending consolidated proceedings concerning the antecedent debt defense in the *Madoff* case. We write to draw the Court's attention to a recent Ninth Circuit decision, *Official Committee v. Hancock Park Capital II, L.P. (In re Fitness Holdings)*, -- F.3d --, 2013 WL 1800000 (April 30, 2013), which bears directly on the issues before the Court. A copy of the slip opinion is enclosed.

      *Fitness Holdings* addresses the question of how "antecedent debt" is determined for purposes of "value" in Section 548. Noting that "[t]he Code . . . broadly defines 'debt' as liability on virtually any type of 'right to payment'," and relying on the Supreme Court decisions in *Travelers* and *Butner*,[1] the Ninth Circuit held that where a transfer is alleged to have been made in repayment of an antecedent debt, "the court must determine whether the purported 'debt' constituted *a right to payment under state law*." Slip Op. at 10-12 (italics added). Thus, *Fitness Holdings* confirms that "value" and "debt" for purposes of Section 548 are state law questions, and that the term "state law" is viewed "expansively" and may include "claims that have their source in federal law." *Id.* at 11 n.6 (citations omitted).

      The Trustee relies on a prior Ninth Circuit decision to contend that the only cognizable value in a Ponzi case is a customer's invested principal. *See Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008). *Fitness Holdings* is significant as the most recent decision from the Ninth Circuit on the meaning of the statutory terms "debt" and "value" in Section 548. The decision calls into question the continuing viability of *Donell* as persuasive authority – even in the Ninth Circuit – for limiting "value" to retention of a brokerage customer's principal in a clawback case, notwithstanding that customer's right to more than principal under both state and federal substantive non-bankruptcy law. As detailed in the antecedent debt briefing before the Court, at the time of the various transfers, defendants held a variety of substantive law state and federal claims that give rise to their rights to payment of more than principal. *Fitness Holdings*

---

[1] *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co*, 549 U.S. 443 (2007); *Butner v. United States*, 440 U.S. 48 (1979).

Honorable Jed S. Rakoff
May 9, 2013
Page 2

recognizes that such rights to payment under substantive non-bankruptcy law are "antecedent debts" within the meaning of Section 548(d)(2)(A).

Respectfully submitted,

Enclosure

**K&L GATES LLP**

By: /s/ Richard A. Kirby
        Richard A. Kirby
        Laura L. Clinton

1601 K Street NW
Washington, DC 20006
(202) 778-9000
richard.kirby@klgates.com

**LOEB & LOEB LLP**

By: /s/ P. Gregory Schwed
        P. Gregory Schwed
        Daniel B. Besikof

345 Park Avenue, 20th Floor
New York, NY 10154
(212) 407-4815
gschwed@loeb.com

**DENTONS US LLP**

By: /s/ Carole Neville
        Carole Neville, Esq.

1221 Avenue of the Americas
New York, NY 10020
(212) 768-6889
carole.neville@dentons.com

Honorable Jed S. Rakoff
May 9, 2013
Page 3


**KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP**

By:/s/ David J. Mark
    Marc E. Kasowitz
    Daniel J. Fetterman
    David J. Mark

1633 Broadway
New York, NY 10019
(212) 506-1710
dmark@kasowitz.com


**KLEINBERG, KAPLAN, WOLFF
& COHEN, P.C.**

By:/s/ Matthew J. Gold
    Matthew J. Gold

551 Fifth Avenue
New York, NY 10176
(212) 880-9827 (Telephone)
mgold@kkwc.com


**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**

By:/s/ Elise S. Frejka
    Philip Bentley
    Elise S. Frejka
    Jason Rappaport

1177 Avenue of the Americas
New York, NY 10036
(212) 715-9281
efrejka@kramerlevin.com

Honorable Jed S. Rakoff
May 9, 2013
Page 4

**KUDMAN TRACHTEN ALOE LLP**

By:/s/ Paul H. Aloe_____
    Paul H. Aloe

The Empire State Building
350 Fifth Avenue, Suite 4400
New York, NY 10118
(212) 868-1010
paloe@kudmanlaw.com

**PRYOR CASHMAN LLP**

By:  /s/ Richard Levy, Jr.
      Richard Levy, Jr.

7 Times Square
New York, New York 10036
212-421-4100
rlevy@pryorcashman.com

**STUTMAN TREISTER & GLATT**

By:/s/ William P. Weintraub_____
    William P. Weintraub

675 Third Avenue
Suite 2216
New York, New York 10017
(212) 235-0810
wweintraub@stutman.com

# EXHIBIT 3

# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

May 10, 2013

<u>Via E-mail (with permission to Amy_Marshak@nysd.uscourts.gov)</u>

Oren J. Warshavsky
direct dial: 212.589.4624
owarshavsky@bakerlaw.com

Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:    *SIPC v. BLMIS*, 12-mc-00115-JSR

Dear Judge Rakoff:

We represent the Trustee, Irving Picard (the "Trustee") and submit this letter in response to the Defendants' letter submitting *Official Comm. of Unsecured Creditors of the Estate of Fitness Holdings Int'l, Inc. v. Hancock Park Capital II, L.P., (In re Fitness Holdings Int'l, Inc.)*, No. 11-56677, 2013 WL 1800000 (9th Cir. Apr. 30, 2013) ("*Fitness Holdings*") as supplemental authority in connection with the common briefing on the issue of "Antecedent Debt." This submission is made pursuant to the May 9, 2013 telephonic conferences among the parties and Your Honor's Chambers. The Securities Investor Protection Corporation joins in this letter.

The Trustee submits that this issue is not properly before the Court. As Defendants admitted in their main brief on this issue (Docket 199), the Court instructed that the parties "not repeat arguments made and decided in [*Sec. Investor Prot. Corp. v. Bernard L. Madoff Sec. LLC*, 476 B.R. 715, 724 (S.D.N.Y. 2012) ("*Greiff*")] . . ." Yet Defendants argument concerning *Fitness Holdings* duplicates the arguments made and decided in *Greiff*.

In *Fitness Holdings*, the court considered whether to apply state law when determining whether debt should be characterized as equity in a fraudulent transfer action. Relying on two Supreme Court cases, *Fitness Holdings* holds that state law determines property rights in a bankruptcy case, "unless Congress has spoken," particularly in the context of "claim[s]" and "right[s] to payment." *Fitness Holdings*, at *3-4 (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007) and *Butner v. United States*, 440 U.S. 48 (1979)). In *Greiff*, this Court cited

*Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa
Denver    Houston    Los Angeles    New York    Orlando    Washington, DC*

Honorable Jed S. Rakoff
May 10, 2013
Page 2

*Travelers* and *Butner* with approval on the same issue, holdings that a "claim" typically refers "to a right to payment recognized under state law," but that state law does not apply if "some federal interest requires a different result." *Greiff*, 476 B.R. at 724 (S.D.N.Y. 2012) (internal quotations omitted). Defendants' reliance on *Fitness Holdings* clearly goes beyond the issue on "Antecedent Debt," and should be ignored.

Furthermore, Defendants ignore both this Court's prior ruling and the statute itself, as it is clear that "Congress has spoken." Defendants' tenuous claims rooted in state law do not constitute "value" under section 548, whether under *Butner* and *Travelers* (and therefore *Fitness Holdings*) or otherwise. Here, 15 U.S.C. § 78*lll*(11) defines "net equity" explicitly, and preempts any state law property rights that could otherwise inform a protected "customer" claim in a SIPA liquidation. Finally, New York State law is clear that it is inapplicable here. *See* U.C.C. § 8-503 cmt.1 (2009) ("[A]pplicable insolvency law governs how the various parties having claims against the firm are treated. For example, the distributional rules for stockbroker liquidation proceedings under the Bankruptcy Code and Securities Investor Protection Act . . . provide that all customer property is distributed pro rata among all customers . . . .").

Even if this were not the case, Defendants' reliance on *Fitness Holdings* is meritless. *Fitness Holdings* is a case about a loan payment made by the debtor to its sole shareholder—here there is no loan and Defendants are not shareholders. Defendants argue that *Fitness Holdings* overrules another Ninth Circuit decision, *Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008), cited with approval in *Greiff*. The *Fitness Holdings* court does not even mention *Donell*, and Defendants cite neither any factual nor legal issues in common among the cases. The reason is obvious: *Fitness Holdings* is irrelevant to *Donell* and this case. As such, it is neither supplemental authority nor relevant, and should be ignored.

We appreciate Your Honor's continued attention to this matter.

Respectfully submitted,

Oren J. Warshavsky

cc:    All Counsel of Record

300280862.5

# EXHIBIT 4



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

ACCOUNT NUMBER

## PARTNERSHIP ACCOUNT AGREEMENT

To:  Bernard L. Madoff Investment Securities
     885 Third Avenue
     New York, New York 10022

In connection with your carrying a partnership account (which may be a joint venture) in the name of   L. H. Rich Companies                              , a duly organized partnership or joint venture (referred to herein as the "Partnership") of which each of the following persons is a General Partner:

| Print Name(s) of General Partner(s) | Signature(s) of General Partner(s) |
|---|---|
| N. R. Investment Associates | _Jack Polack_ Jack Polack, Trustee/Partner |
| M. R. Investment Associates | _James Polack_ James Polack, Trustee/Partner |
| | |
| | |

(attach additional pages hereto if necessary)

by signing above, each General Partner hereby confirms that such person has unlimited liability for the obligations of the Partnership and each and every General Partner shall have authority on behalf of the Partnership to establish and maintain one or more accounts with Bernard L. Madoff Investment Securities.

The authority hereby conferred and the representations herein made shall remain in effect until written notice to the contrary is received by you.

Bernard L. Madoff Investment Securities is instructed to direct all notices or communications including demands, notices, confirmations, reports and statements of account, for the Partnership in connection with the Partnership account as follows:

Name:   David Stern                          Address:   1705 Second Avenue, Suite 409

                                                        Rock Island, Illinois   61201

X _Jack Polack / James Polack_
(Signature of General Partner)
Jack Polack, Trustee Partner          James Polack, Trustee, Partner
of NR Investment Assocaites            of MR Investment Associates

(Print Name of General Partner)

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00055094

# EXHIBIT 5

# ARIA MANAGEMENT COMPANY
## 1515 FIFTH AVENUE, SUITE 104
## MOLINE, ILLINOIS  61265
### 309-762-7700   FAX 309-762-7300

March 17, 2008

Mr. Bernard Madoff
Madoff Securities
885 Third Avenue
New York, NY   10022

Dear Mr. Madoff:

Please use this letter as your written authorization of the L. H. Rich Companies' desire
to withdraw $1,800,000 from our Madoff Securities account #1-ZB250-3.

Please have the proceeds wired to:

> US Bank
> Minneapolis, MN
> ABA #091000022
> Dain Rauscher
> Account #160230097208
> For Further Credit:  L. H. Rich Companies
>                      Account #1101-4896-5818

If you have any questions, please contact me at the above telephone number.

Sincerely,

David P. Stern

DPS/kas

fax (212) 838-4061

LHRICH

5 - 3/18

madoff withdrawal

AMF00055076

# ARIA MANAGEMENT COMPANY
## 1515 FIFTH AVENUE, SUITE 104
## MOLINE, ILLINOIS   61265
### 309-762-7700    FAX 309-762-7300

F𝒆D

January 11, 2006

Mr. Bernard Madoff
Madoff Securities
885 Third Avenue
New York, NY   10022

Dear Mr. Madoff:

Please use this letter as your written authorization of the L. H. Rich Companies' desire
to withdraw $2,000,000 from our Madoff Securities account #1-ZB250-3 effective at
the end of the current month of January 31, 2006.

Please have the proceeds wired to:

     US Bank
     Minneapolis, MN
     ABA #091000022
     Dain Rauscher
     Account #160230097208
     For Further Credit:   L. H. Rich Companies
                     Account #1101-4896-5818

*LHRICH*
*5-1/31*
*4.2 mil*

If you have any questions, please contact me at the above telephone number.

Sincerely,

David P. Stern

DPS/kas

*fax (212) 838-4061*

madoff withdrawal.doc

AMF00055077

# ARIA MANAGEMENT COMPANY
### 1515 FIFTH AVENUE, SUITE 104
### MOLINE, ILLINOIS  61265
### 309-762-7700    FAX 309-762-7300

*Address*

*Profile : LH RICH*

December 21, 2004

Mr. Bernard Madoff
Madoff Securities
885 Third Avenue
New York, NY  10022

Dear Mr. Madoff:

Please use this letter as your written authorization of the L. H. Rich Companies' desire
to withdraw $500,000 from our Madoff Securities account #1-ZB250-3 effective at the
end of the current year ending December 31, 2004.

Please have the proceeds wired to:

      US Bank
      Minneapolis, MN
      ABA #091000022
      Dain Rauscher
      Account #160230097208
      For further credit:  L. H. Rich Companies
                 Account #1101-4896-5818

If you have any questions, please contact me at the above telephone number.

Sincerely,

David P. Stern

DPS/kas

*fax (212) 838-4061*

AMF00055080

# ARIA MANAGEMENT COMPANY

1515 FIFTH AVENUE, SUITE 104
MOLINE, ILLINOIS 61265
309-762-7700
FAX 309-762-7300

May 31, 2000

Mr. Bernard Madoff
Madoff Securities
885 Third Avenue
New York, NY   10022

Dear Mr. Madoff:

Please use this letter as your written authorization of the L. H. Rich Companies' desire to withdraw $250,000 from Madoff Securities effective at the end of the current quarter ending June 30, 2000.

If you have any questions, please contact me at the above telephone number.

Sincerely,

*David P. Stern*

David P. Stern

/kas

AMF00055082

# EXHIBIT 6

# ARIA MANAGEMENT COMPANY

1705 SECOND AVENUE, SUITE 409
P.O. BOX 5196
ROCK ISLAND, ILLINOIS 61204
309-786-2100

February 24, 1997

Mr. Bernard L. Madoff
Madoff Investment Securities
885 Third Avenue
New York, New York   10022

Dear Mr. Madoff: 1- ZB25030

Please change the address of the following investor to:

L. H. Rich Companies

1515 Fifth Avenue, Suite 104
Moline, Illinois   61265

Telephone:          309-762-7700
FAX:                309-762-7300

If you have any questions or need additional information, please contact us.

Sincerely,

David P. Stern

DPS/kas

AMF00055083