**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>SUSANNE STONE MARSHALL; ADELE FOX; MARSHA PESHKIN; RUSSELL OASIS; A & G GOLDMAN PARTNERSHIP; and PAMELA GOLDMAN,<br><br>Defendants. | Adv. Pro. No. _____ (SMB)<br><br><br>**COMPLAINT** |

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation

of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), and the estate of Bernard L.

Madoff ("Madoff"), by and through his undersigned counsel, as and for his Complaint, alleges as

follows:

## NATURE OF THE ACTION

1.      The Trustee commences this adversary proceeding to prevent certain third party

plaintiffs, whose names appear in the caption above as defendants herein (collectively, the "Class

Action Plaintiffs"), from undermining this Court's continuing jurisdiction over the estate of

BLMIS and its customers' property.  By seeking relief from the U.S. District Court for the

Southern District of Florida ("the Florida District Court") to file actions (the "Class Actions")

against the estate of Jeffrey M. Picower ("Picower") and Capital Growth Company; Decisions,

Inc.; Favorite Funds; JA Primary Limited Partnership; JA Special Limited Partnership; JAB

Partnership; JEMW Partnership; JF Partnership; JFM Investment Companies; JLN Partnership;

JMP Limited Partnership; Jeffry M. Picower Special Company; Jeffry M. Picower, P.C.; the

Picower Foundation; John Doe Trustees of the Picower Foundation; the Picower Institute of

Medical Research; the Trust F/B/O Gabrielle H. Picower; Barbara Picower, individually, and as

executor of the estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for

the Trust F/B/O Gabriel H. Picower (collectively with Picower, the "Picower Defendants"), the

Class Action Plaintiffs violate the permanent injunction entered by this Court on January 13,

2011 (the "Permanent Injunction") and the automatic stay, impair this Court's jurisdiction, and

threaten the orderly administration of the BLMIS estate.

2.      Accordingly, the Trustee respectfully requests that the Court: (i) enforce the

Permanent Injunction and the automatic stay in these proceedings; and (ii) otherwise enjoin the

Class Action Plaintiffs, and anyone acting on behalf of the Class Action Plaintiffs, from proceeding with the Class Actions or any other action related to BLMIS against any of the Picower Defendants without first obtaining leave of this Court.

## JURISDICTION AND VENUE

3.      This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791, and was referred to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

4.      This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).  The Trustee consents to the entry of final orders or judgments by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgments consistent with Article III of the U.S. Constitution.

5.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b) and 1409.

6.      An action for a declaratory judgment and injunctive relief is properly commenced as an adversary proceeding pursuant to Rules 7001(2), 7001(7) and 7001(9) of the Federal Rules of Bankruptcy Procedure.

7.      This court has personal jurisdiction over the Class Action Plaintiffs pursuant to Bankruptcy Rule 7004(f).

## DEFENDANTS

8.      Defendant Susanne Stone Marshall (a/k/a Suzanne Stone Marshall) ("Marshall") is a named plaintiff in the proposed Second Amended Complaint, *Fox, et al. v. Picower, et al.*,

3

Case No. 10-80252 (S.D. Fla. filed February 16, 2010), ECF No. 28-3 ("Fox Second Amended Complaint") and was a BLMIS customer.

9.     Defendant Adele Fox ("Fox") is a named plaintiff in the Fox Second Amended Complaint and was a BLMIS customer.

10.    Defendant Marsha Peshkin ("Peshkin") is a named plaintiff in the Fox Second Amended Complaint and was a BLMIS customer.

11.    Defendant Russell Oasis ("Oasis") is a named plaintiff in the Fox Second Amended Complaint and was a limited partner in BLMIS customer RAR Entrepreneurial Fund.

12.    Defendant A & G Goldman Partnership ("A&G Goldman") is a named plaintiff in the proposed Complaint, *A & G Goldman Partnership, et al. v. Picower, et al.*, Case No. 14-80012 (S.D. Fla. filed Jan. 6, 2014), ECF No. 1-2 ("New Goldman Complaint") and was a BLMIS customer.

13.    Defendant Pamela Goldman is a named plaintiff in the proposed New Goldman Complaint and was a BLMIS customer.

## BACKGROUND, THE TRUSTEE AND STANDING

14.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including, *inter alia*, securities fraud, investment advisor fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, which remains pending in the District Court.  The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

15.    On December 12, 2008, the Honorable Louis L. Stanton of the District Court entered an order that appointed Lee S. Richards, Esq., as receiver for the assets of BLMIS.

16.    On December 15, 2008, pursuant to 15 U.S.C. § 78eee(a)(4)(A), the SEC

consented to a combination of its own action with an application of the Securities Investor

Protection Corporation ("SIPC").  Thereafter, pursuant to 15 U.S.C. § 78eee(a)(4)(B), SIPC filed

an application in the District Court alleging, *inter alia*, that BLMIS could not meet its obligations

to securities customers as they came due, and, accordingly, its customers needed the protections

afforded by SIPA.

17.    Also on December 15, 2008, Judge Stanton granted SIPC's application and

entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

a.    appointed the Trustee for the liquidation of the business of BLMIS

pursuant to 15 U.S.C. § 78eee(b)(3);

b.    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to 15

U.S.C. § 78eee(b)(3);

c.    removed the case to this Court pursuant to 15 U.S.C. § 78eee(b)(4), and

removed the receiver.

18.    In an order entered on December 15, 2008, the District Court declared that "all

persons and entities are stayed, enjoined and restrained from directly or indirectly . . . interfering

with any assets or property owned, controlled or in the possession of [BLMIS]."  *SEC v. Bernard*

*L. Madoff*, 08-CIV-10791 (LLS), ECF No. 4 ¶ IV (reinforcing automatic stay); *see also* Order on

Consent Imposing Preliminary Injunction Freezing Assets and Granting Other Relief Against

Defendants, Dec. 18, 2008, ECF No. 8 ¶ IX ("no creditor or claimant against [BLMIS], or any

person acting on behalf of such creditor or claimant, shall take any action to interfere with the

control, possession or management of the assets subject to the receivership."); Partial Judgment

on Consent Imposing Permanent Injunction and Continuing Other Relief, Feb. 9, 2009, ECF No.

18 ¶ IV (incorporating and making the December 18, 2008 stay order permanent). (These orders are collectively referred to as the "Stay Orders.")

19.    By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

20.    On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court entered an order substantively consolidating the chapter 7 estate of Madoff into the SIPA Proceeding.

21.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York.  At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."  (Plea Hr'g Tr. at 23: 14-17.)  Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." (*Id.* at 23: 20-21.)  On June 29, 2009, Madoff was sentenced to 150 years in prison.

22.    At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme.  DiPascali admitted that no purchases or sales of securities took place in connection with customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

23.    As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed

customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its

creditors.  The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and

recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and

others to the detriment of defrauded, innocent customers whose money was consumed by the

Ponzi scheme.  Absent the recovery actions, the Trustee cannot satisfy the claims described in

subparagraphs (A) through (D) of 15 U.S.C. § 78fff-2(c)(1).

24.     Pursuant to section 78fff-1(a) of SIPA, the Trustee has the general powers of a

bankruptcy trustee in a case under the Bankruptcy Code.  Chapters 1, 3, 5 and subchapters I and

II of chapter 7 of the Bankruptcy Code are applicable to this case, to the extent consistent with

SIPA.

25.     In addition to the powers of a bankruptcy trustee, the Trustee has broader powers

granted by SIPA pursuant to 15 U.S.C. §§ 78aaa *et seq.*

26.     The Trustee is a real party in interest and has standing to bring these claims under

15 U.S.C. § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§

323(b) and 704(a)(1), because, among other reasons, the Class Actions violate the Permanent

Injunction and the automatic stay, impair this court's jurisdiction, and threaten the orderly

administration of the BLMIS estate.

### THE COURT-ORDERED CLAIMS ADMINISTRATION PROCESS

27.     On December 23, 2008, this Court entered a Claims Procedure Order, which

implemented a customer claims process in accordance with SIPA.  The Class Action Plaintiffs

participated in this process.  All the Class Action Plaintiffs filed customer claims in the BLMIS

except Oasis.  All the Class Action Plaintiffs' claims have been determined.  Marshall, Peshkin,

and Pamela Goldman have received payments from the Trustee through SIPC advance and

distributions from the customer property fund.

## THE NET EQUITY DECISION

28.     In liquidation proceedings, SIPA provides that customers with allowed claims share *pro rata* in customer property to the extent of their net equity, as defined in section 78*lll*(11) of SIPA.  Consistent with SIPA, the Trustee determined that each customer's net equity should be calculated by crediting the amount of cash the customer deposited into its BLMIS account, less any amounts withdrawn from the customer's BLMIS account, referred to as the "net investment method."  Many customers, including Fox, argued that their net equity should have been calculated based on the last customer statement they received from BLMIS, including whatever fictitious profits were reflected on that statement.

29.     The Bankruptcy Court approved the Trustee's use of the net investment method and affirmed the Trustee's calculation of net equity.  The Second Circuit affirmed the Net Equity Decision.  It found that other methods would "aggravate the injuries caused by Madoff's fraud," and that reliance on the fictitious profits shown on customer statements "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations."  On June 25, 2012, the United States Supreme Court denied *certiorari*.

## THE TRUSTEE'S AVOIDANCE ACTION

30.     The Trustee filed a complaint against Jeffry M. Picower (now deceased) and the other Picower Defendants on May 12, 2009 (the "Trustee's Action").  The complaint identified more than $6.7 billion in net withdrawals that the Trustee alleged the Picower Defendants had received from BLMIS.  The complaint alleged that the Picower Defendants knew or should have known that BLMIS was engaged in fraud and sought recovery of the entire amount known at the time of filing to have been transferred from BLMIS to the Picower Defendants throughout the history of the Picower Defendants' BLMIS accounts.

8

31.     After filing the complaint, the Trustee identified additional transfers from BLMIS

to the Picower Defendants, bringing the total amount of net withdrawals sought by the Trustee to

$7.2 billion.

### THE FIRST FLORIDA PUTATIVE CLASS ACTIONS

#### The Fox and Marshall Complaints

32.     On February 16 and 17, 2010, just two weeks after oral argument in the

Bankruptcy Court on the net equity issue, Fox and Marshall each filed a putative class action

("Initial Florida Complaints") against the Picower Defendants in Florida District Court ("Initial

Florida Actions," including the "Fox Action" and "Marshall Action") seeking to circumvent the

anticipated net equity decision.

33.     Between them, Fox and Marshall sought to represent a "class" of all BLMIS

customers whose claims would not be fully satisfied by the Trustee using his net equity

calculation.  Fox sought to certify a class of net winners.  Marshall sought to certify a class on

behalf of "all SIPA Payees, but only with respect to claims, or portions thereof, not assigned to

the Trustee."  Neither putative class was ever certified.

34.     Fox and Marshall conceded that "the factual allegations in [their] respective

Florida complaints are virtually identical to those made" by the Trustee in his complaint.  Both

complaints copied the factual allegations contained in the Trustee's Action, added a new caption,

and relabeled the causes of action.  Both of the Initial Florida Complaints against the Picower

Defendants alleged, in substance: that the Picower Defendants withdrew billions of dollars from

Madoff's Ponzi scheme under the circumstances alleged in the Trustee's complaint; that those

circumstances suggested that the Picower Defendants were not only aware of but were complicit

in the Ponzi scheme; and that the Picower Defendants' conduct in making these withdrawals

under the circumstances alleged constituted conversion through the theft of funds from the accounts of Fox, Marshall and other BLMIS customers.

35.    These allegations parroted the Trustee's fraudulent transfer allegations against the Picower Defendants. Fox and Marshall alleged that they and other BLMIS customers were damaged as a result of the fraudulent transfers that the Picower Defendants received from BLMIS. Similar to the proposed "new" complaints by the Class Action Plaintiffs, the prior Fox and Marshall complaints alleged that BLMIS and the Picower Defendants engaged in a conspiracy to "steal the funds" of other customers; specifically, that "Picower and Defendants converted the cash in other innocent BLMIS customers' accounts for their own personal benefit with the acquiescence and assistance of Madoff and BLMIS." The complaints sought, among other things, disgorgement of the profits that the Picower Defendants received from BLMIS and a constructive trust over the Picower Defendants' assets.

### The Bankruptcy Court's Enforcement of the Automatic Stay and Issuance of a Preliminary Injunction

36.    At the time Fox and Marshall filed their complaints, the Trustee was in settlement negotiations with the Picower Defendants. Because the Initial Florida Actions would interfere with the Trustee's claims, upend the SIPA priority distribution scheme, and hinder settlement discussions with the Picower Defendants, on March 31, 2010, the Trustee filed an application in the Bankruptcy Court seeking, among other things to enforce the automatic stay and preliminarily enjoin Fox and Marshall and their counsel from litigating against the Picower Defendants, pending the completion of the Trustee's settlement with the Picower Defendants.

37.    On May 3, 2010, this Court held that the Initial Florida Actions violated the automatic stay and at least one stay order of the District Court. The Court declared the Initial Florida Actions void *ab initio* and issued a preliminary injunction under section 105(a) of the

Bankruptcy Code.  *Id.*  The Court further found an imminent threat to the BLMIS estate from the

Florida Actions and held that an extension of the stay was appropriate and necessary to, among

other things, "preserve the integrity of the SIPA proceedings and the Trustee's settlement

negotiations . . . ."  Fox and Marshall appealed that order.

## The Picower Settlement

38.     While the Trustee was pursuing his action against and potential settlement with

the Picower Defendants, the government also was in discussions with the Picower Defendants'

counsel.

39.     After months of extensive negotiations, the Trustee and the Picower Defendants

reached an agreement under which the Picower estate agreed to return $5 billion to the BLMIS

estate.  Simultaneously, the Picower estate agreed to forfeit the $5 billion and an additional

amount of approximately $2.2 billion to the government.  When these amounts were combined in

this global settlement, 100 percent of the net withdrawals received by the Picower Defendants

over the lifetime of their investments with BLMIS became available for eventual distribution to

BLMIS victims, without the need for litigation.

40.     In exchange for the benefits to the BLMIS estate, the settlement agreement

contains a release of all claims that the Trustee brought or could have brought against the

Picower Defendants in connection with BLMIS.  Because of the importance to the Picower

Defendants of precluding suits on claims they were settling, the Trustee agreed to use his

reasonable best efforts to seek a narrowly tailored permanent injunction from the Bankruptcy

Court.  The permanent injunction would exclude from its scope actions where there is an

independent basis on which to bring suit against the Picower Defendants.  The injunction was

identified by the Picower Defendants as an essential part of the settlement.

### The Bankruptcy Court's Approval of the Settlement
### and Issuance of a Permanent Injunction

41.    On December 17, 2010, the Trustee moved for an order approving the settlement agreement and entering a permanent injunction under section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure.  Fox and Marshall filed objections.  Out of the approximately 16,000 creditors of the BLMIS estate, only one other objection was filed to this landmark settlement.  The Bankruptcy Court overruled Fox and Marshall's objections and approved the settlement on January 13, 2011.

42.    Judge Lifland found that the permanent injunction was necessary and appropriate to carry out the provisions of the Bankruptcy Code, to prevent any entity from exercising control or possession over property of the estate, to preclude actions that would have a conceivable effect or adverse impact upon the BLMIS estate or on the administration of the liquidation proceeding, and/or to avoid relitigation or litigation of claims that were or could have been asserted by the Trustee on behalf of all customers and creditors.

43.    Judge Lifland stated at the hearing that: "[t]he injunction is narrow.  It deals with duplicative and parallel claims of the trustee. . . .  And you cannot expect any settlor to make a settlement with a potential possibility of being sued twice over the same causes of action and claims."  Accordingly, Judge Lifland approved the settlement agreement and issued the following Permanent Injunction:

> [A]ny BLMIS customer or creditor of the BLMIS estate . . . is hereby permanently enjoined from asserting any claim against the Picower BLMIS Accounts or the Picower Releasees that is duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower Releasees . . . .

The Court stated on the record that the Permanent Injunction applied to Fox's and Marshall's putative class actions, and that the cases were barred.

**The District Court's Decision and Order Affirming the Bankruptcy Court's Order**

44.     Fox and Marshall appealed the orders declaring the Initial Florida Actions void *ab initio*, the approval of Picower settlement, and the preliminary and permanent injunctions.  These appeals were consolidated and heard by the Honorable John G. Koeltl.  Judge Koeltl rejected each of Fox's and Marshall's arguments, holding that the Bankruptcy Court was "plainly correct in finding that the Florida Actions violated the automatic stay," because they were a "transparent effort" to pursue claims that "were duplicative of claims brought by the Trustee and that belonged to the Trustee on behalf of all creditors of BLMIS."  *Picard v. Fox*, 848 F. Supp. 2d 469 473 (S.D.N.Y. 2012).

45.     The District Court further upheld the validity of the Permanent Injunction, finding that the Bankruptcy Court has jurisdiction to permanently enjoin actions "that are derivative or duplicative of claims brought by the trustee, or that could have been brought by the trustee in the first instance," and concluded that the Fox and Marshall actions violated the Permanent Injunction.

**The Second Circuit's Decision Affirming the
Permanent Injunction As Against Fox and Marshall**

46.     On January 13, 2014, the Second Circuit affirmed the District Court and upheld the Permanent Injunction as against Fox and Marshall.  The Second Circuit held that the Initial Florida Actions "impermissibly attempt to 'plead around'" the Permanent Injunction because the Initial Florida Actions "allege nothing more than steps necessary to effect the Picower defendants' fraudulent withdrawals of money from BLMIS, instead of 'particularized' conduct directed at BLMIS customers."  It further held that the Bankruptcy Court had jurisdiction to enjoin duplicative or derivative claims, like those in the Florida Actions, because they "undoubtedly have an effect on the bankruptcy estate . . . ."

13

47.     The Second Circuit held that the Florida Actions were derivative of the Trustee's Action because the allegations in the Florida complaints "echo" those made by the Trustee.  The Second Circuit ruled that the Initial Florida Actions did not contain particularized claims because they "do not allege that the Picower defendants made . . . misrepresentations to BLMIS customers," and found rather that the "alleged injuries are inseparable from, and predicated upon, a legal injury to the estate—namely, the Picower [D]efendants' fraudulent withdrawals from their BLMIS accounts of what turned out to be other BLMIS customers' funds."  The Second Circuit further held that Fox's and Marshall's complaints "have not alleged that the Picower defendants took any . . . 'particularized' actions aimed at BLMIS customers," such as making misrepresentations to Fox and Marshall.

48.     Notably, Fox and Marshall argued to the Second Circuit that the allegations in their complaint, at their "core," amounted to a claim that Picower has "ensured the fraud's success by inducing [them] and other customers to invest (and remain invested) in BLMIS."  The Second Circuit specifically rejected this argument:  "[a]llegations that the Picower [D]efendants knowingly reaped the benefits of Madoff's scheme through fraudulent withdrawals, and effected such withdrawals through backdating trades and recording fictional profits, does not amount to a particularized claim that they directly participated in defrauding BLMIS customers by inducing them to invest."  The Second Circuit also rejected Fox's and Marshall's argument that their claims were non-derivative because they sought damages not available in an avoidance action, finding that the "claimed damages, also suffered by all BLMIS customers, still remain mere secondary harms flowing from the Picower defendants' fraudulent withdrawals and the resulting depletion of BLMIS funds."

## THE SAME COUNSEL ATTEMPT TO BRING THE GOLDMAN CLASS ACTIONS

### The Goldman Class Action Complaints

49.      While the Fox and Marshall appeal was pending, the Goldman Plaintiffs sought permission from this Court to file two putative class actions in Florida District Court in 2011. (the "Initial Goldman Actions" and "Initial Goldman Complaints"). While Pamela Goldman sought to represent so-called "net losers," A&G Goldman sought to represent "net winners." Together, they sought to represent customers and creditors already before the Bankruptcy Court, and for whom the Bankruptcy Court had already determined equitable distributions in accordance with the net equity method approved by the Second Circuit.

50.      Instead of calling them fraudulent transfers or conspiracy to defraud, the Goldman Plaintiffs alleged that Picower was a "control person" under section 20(a) of the Exchange Act with respect to BLMIS and participated with BLMIS in violations of Rule 10b-5 of the Exchange Act.  The purported federal securities laws violations were based on the Picower Defendants' withdrawals from BLMIS: "The volume, pattern and practice of the Defendants' fraudulent withdrawals from BLMIS and their control over fraudulent documentation of underlying transactions at BLMIS establishes the Defendants' 'control person' liability under the federal securities laws."

51.      The alleged wrongdoing by Picower consisted of his fraudulent transfers from BLMIS, which mirrored allegations in the Trustee's complaint.  They also mirrored the allegations in the Initial Florida Complaints by Fox and Marshall, which were already held to be nothing but a rehash of the Trustee's allegations.

**The Bankruptcy Court Held the Goldman Claims Duplicative and Derivative of Those of
the Trustee and Enforced the Automatic Stay and Enjoined the Goldman Plaintiffs From
Proceeding**

52.     On June 20, 2012, the Bankruptcy Court held that the Initial Goldman Actions
violate the Permanent Injunction and the automatic stay.  *See In re Madoff*, 477 B.R. 351.

53.     The Bankruptcy Court held that the Goldman Plaintiffs were violating the
Permanent Injunction and the automatic stay for three main reasons.  First, the Court found that
despite the "nominal title" of their causes of action, the Initial Goldman Actions raised issues
substantially "identical" to the Trustee's Picower complaint.  Specifically, the Court found that
"the Plaintiffs' action is based on pleadings that are nearly identical to those of the Trustee," that
they "substantially parroted the Trustee's Complaint," and also "mimic those set out in the Fox
and Marshall complaints, which this Court found to be duplicative of the Trustee's, a finding the
District Court affirmed."  The Court recounted numerous examples of overlap between the
Goldman Plaintiffs' allegations and those of the Trustee, as well as those of Fox and Marshall,
and cited an exhibit, originally submitted by the Trustee, which "substantially reflects and links
the cloning of the pleadings."

54.     Second, the Bankruptcy Court found the Goldman Plaintiffs' claims to be
"derivative of the Trustee's."  Indeed, the court found that the alleged harms are "limited to
'general direction and control and action to the detriment of all [BLMIS's] creditors.'"  Thus, the
Court found that the Goldman Plaintiffs did not state a particularized injury against the Picower
Defendants.

55.     Third, the Bankruptcy Court found that the Initial Goldman Complaints, like the
Fox and Marshall complaints, were simply "yet another attempt by the same counsel to re-
litigate [the] Net Equity Decision."

**The District Court Affirmed the Bankruptcy Court's Decision and Order**

56.    On September 30, 2013, Judge Richard J. Sullivan affirmed the Bankruptcy

Court's decision and upheld the Permanent Injunction as applied to the Initial Goldman

Complaints.  *A & G Goldman Partnership v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*,

12-6109, 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013).  The District Court held that the

Goldman Plaintiffs' claims were derivative of the Trustee's fraudulent transfer claims.  *Id.* at *6–

11.  The District Court held that the Goldman Plaintiffs' claims "are not bona fide securities

fraud claims," and found instead that, aside from allegations listing the elements of a securities

fraud claim, "all of the allegations in the Complaint refer exclusively to the Picower Defendants'

fraudulent withdrawals."  *Id.* at *6–7.  The District Court recognized that the Goldman

Complaints pled "nothing more than that the Picower Defendants traded on their *own* BLMIS

accounts," allege fraudulent trading activity that BLMIS conducted "*for the Picower*

*Defendants*," and that, "[i]n other words, the Complaints plead nothing more than that the

Picower Defendants fraudulently withdrew money from BLMIS."

57.    The District Court further held that "the parts of the Complaints that do discuss

aspects of the BLMIS fraud unconnected to the Picower Defendants' accounts noticeably *lack*

any allegation that the Picower Defendants were involved in such fraud . . ." and that "with

respect to the clearest examples of BLMIS's fraud to other customers, the Goldman Complaints

are completely silent about the Picower Defendants' involvement."

58.    The District Court held that the Goldman Plaintiffs had brought "simply

deceptively labeled fraudulent conveyance claims."  Accordingly, the District Court held the

claims came "within the plain scope of the [Permanent] Injunction."  The Goldman Plaintiffs did

not appeal the District Court's decision.

## THE GOLDMAN AND FOX PLAINTIFFS AGAIN TAKE ACTION IN FLORIDA

### The Goldman Plaintiffs Seek a Declaration That Their Amended Complaint Does Not Violate the Permanent Injunction

59.     On January 6, 2014, the Goldman Plaintiffs commenced a new action in the Florida District Court seeking a declaration that neither the Permanent Injunction nor the automatic stay bars the Goldman Plaintiffs from filing a "new" class action complaint against the Picower Defendants.  The action was assigned to District Judge Kenneth Marra.  The Goldman Plaintiffs are represented by the Beasley Hauser and Blackner Stone law firms.  The declaratory judgment action attaches the New Goldman Complaint, a class action complaint that the Goldman Plaintiffs seek to have declared not in violation of the automatic stay or the Permanent Injunction.

60.     Rehashing the same formalistic arguments rejected by the District Court, the Goldman Plaintiffs assert that their claims rest on different legal theories, have different elements, seek different damages, are subject to different proof, and are subject to a different statute of limitations than the Trustee's claims against the Picower Defendants.  The Goldman Plaintiffs also include a general allegation that the Picower Defendants directed BLMIS to make misrepresentations to BLMIS customers, and likewise attempts to assert a claim under section 20(a) of the Exchange Act against the Picower Defendants for loss in the value of their investment in the "BLMIS Discretionary Trading Program," which is their new name for BLMIS's Investment Advisory business.  However, the New Goldman Complaint is substantively identical to the former Goldman complaint that was held to be barred under the Permanent Injunction.  It does not contain any factual allegations that Picower took any specific action with respect to other customers' accounts, or indeed took any action at BLMIS outside of his own accounts.  Instead, trying to get around the deficiencies in their prior pleading, the

Goldman Plaintiffs now allege that Picower knew that the false trading in his own BLMIS accounts would result in false asset values in other BLMIS customers' accounts because those other accounts did not reflect cash transfers from their accounts to Picower. As a result of Picower's activity within his own accounts, the Goldman Plaintiffs allege, "the account records of other BLMIS customers falsely overstated the assets therein and their investment performance. BLMIS customers consequently unknowingly overpaid for BLMIS securities." These allegations are entirely conclusory, and do not cure the deficiencies in the prior Goldman complaint.

61.    The Goldman Plaintiffs have moved for summary judgment on their request for declaratory relief in the New Goldman Action. The Goldman Plaintiffs have also filed a notice of pendency of Fox and Marshall's motion to re-open their action.

## Fox and Marshall Move to Re-Open the Florida Class Action

62.    Following the New Goldman Complaint activity, in February 18, 2014, Fox and Marshall, together with Peshkin and Oasis and purportedly representing a putative class of plaintiffs, moved in the Florida District Court before Senior District Judge Kenneth Ryskamp to re-open the Fox Class Action, Case No. 10-80252, and for leave to file a second amended complaint ("Motion to Re-open"). The Fox Plaintiffs are represented by the law firm of Becker Poliakoff and Becker Poliakoff attorney Helen Chaitman.

63.    The Fox Plaintiffs appended to the Motion to Re-open a draft Fox Second Amended Complaint (or "Fox SAC"). The Fox Second Amended Complaint does little more than re-label the same allegations made in the Initial Florida Complaints. The Fox SAC's chief innovation is to manufacture a claim under Section 20(a) of the Exchange Act against the Picower Defendants on allegations that are virtually identical to those in the New Goldman Complaint. As a result, the Fox SAC is substantively no different from either the complaints in

19

the Initial Florida Action or the New Goldman Complaint, relying on the same conclusory

allegations: that the Picower Defendants knew that their actions in their own accounts would

affect other BLMIS accounts, and that such conduct is tantamount to a misrepresentation to other

BLMIS customers.

64.    Second, the Fox SAC now states affirmatively what it previously urged to the

Second Circuit, specifically that Picower's conduct with respect to his accounts generally

"induced" other customers to invest with BLMIS.  Notably, the allegations are framed as a

general statement that Picower "induced" Madoff to make misrepresentations and omissions to

BLMIS customers, rather than alleging any conduct by Picower toward any other customer.

Like the New Goldman Complaint, the Fox Second Amended Complaint alleges that Picower

knew that the false trading in his accounts resulted directly in false trading in other BLMIS

customers' accounts.  Thus, as with the New Goldman Complaint, the Fox Second Amended

Complaint does not allege any specific conduct by Picower outside of directing trades and

related misconduct concerning his own accounts.

65.    The Fox Plaintiffs also allege that certain allegations are made "according to

Madoff."  Madoff is entirely unreliable, as even after confessing and during his conviction by the

District Court, he continued to assert that he acted alone.  Even if this Court were to give weight

to alleged statements by Madoff, which it should not, the allegations are conclusory and the Fox

Plaintiffs' failure to allege any specific communications by the Picower Defendants to any

BLMIS customer shows that these allegations are yet another redo of the same allegations

rejected by the District Court and Second Circuit.

66.    The Fox Second Amended Complaint drops all the claims from the Initial Florida

Complaints except for a claim under Florida's RICO statute, and replaces them with claims

under Section 20(a) of the Exchange Act, the federal RICO statute, and state-law tort claims for

aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and non-normative tort

for intentional and unprivileged infliction of temporal harm.

67.    The Fox Second Amended Complaint also differs from the Initial Florida

Complaint in that two new named plaintiffs have been added, Peshkin and Oasis, and the class

definition no longer distinguishes between net winners and net losers.  Both the Fox Second

Amended Complaint and the New Goldman Complaint also strip previous allegations of any

references to the Trustee's Picower allegations, and re-word their previous allegations as

necessary to try to avoid the word-for-word parroting of the previous versions of their

complaints.  That said, the new complaints still do little more than mimic the Trustee's

complaint.

68.    The Class Action Plaintiffs' claims remain duplicative and derivative of the

Trustee's Action.

69.    Because the Class Action Plaintiffs' claims are duplicative and derivative of the

Trustee's action against the Picower Defendants, the Class Actions are barred both by the

Permanent Injunction and the automatic stay.  The basis for the Class Action Plaintiffs' claim is

their allegation that Picower knowingly withdrew fictitious profits from the Picower Defendants'

BLMIS accounts.  (*Compare* Initial Florida Complaints ¶ 39, with Fox SAC ¶ 46; *compare*

Initial Goldman Complaints ¶ 10, with New Goldman Complaint ¶ 64.)  The "conspiracy" the

Fox Plaintiffs allege is one between BLMIS and the Picower Defendants to allow the Picower

Defendants to "steal the funds" of other investors through these withdrawals.  (*Compare* Initial

Florida Complaints ¶ 54, *with* Fox SAC ¶¶ 137, 161.)  There are no allegations that the Picower

Defendants had any contact with the Class Action Plaintiffs.  The only conduct alleged on the

part of the Picower Defendants is in connection with their withdrawals *from their own accounts*.

(*Compare* Initial Florida Complaints ¶¶ 49–50, with Fox SAC ¶¶ 44–46, 48, 52; *compare* Initial

Goldman Complaints ¶¶ 2, 48–51, 56, 58–61, *with* New Goldman Complaint ¶¶ 65, 69–70, 72–

73.)

      70.    The Class Actions violate the District Court Stay Orders as well.

      71.    Further litigation of the Class Actions would also allow the Class Action Plaintiffs

to circumvent the Permanent Injunction and automatic stay, undermining this Court's jurisdiction

and interfering with the administration of the liquidation.

## COUNT ONE
## DECLARATORY RELIEF

      72.    The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Complaint as if fully alleged herein.

      73.    The Trustee seeks a declaration that the Class Actions violate the Permanent

Injunction.  This declaratory relief is warranted because the Class Actions are derivative and

duplicative of the Trustee's claims and hence fall within the scope of the Permanent Injunction.

      74.    The Trustee also seeks a declaration that the Class Actions violate the automatic

stay provisions under 11 U.S.C. § 362(a) and the Stay Orders, and would therefore be void *ab*

*initio* if filed.  This declaratory relief is warranted because by seeking to bring claims that are

property of the estate, the Class Actions improperly seek to recover on a claim against BLMIS

and/or Madoff in violation of 11 U.S.C. § 362(a)(1) and seek to obtain possession of property of

BLMIS and/or Madoff in direct violation of 11 U.S.C. § 362(a)(3) and the Stay Orders.

      75.    The Court has authority pursuant to sections 105(a) and 362(a) of the Bankruptcy

Code to issue declaratory relief because this controversy is actual and justiciable, and the Court

has jurisdiction over matters affecting BLMIS property and the effective and equitable administration of the estate of BLMIS and/or Madoff.

## COUNT TWO
## PRELIMINARY INJUNCTIVE RELIEF

76.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully alleged herein.

77.    The Trustee seeks an Order pursuant to section 105(a) of the Bankruptcy Code, made relevant to these proceedings by section 78fff(b) of SIPA, enjoining the Class Action Plaintiffs and anyone acting on behalf of the Class Action Plaintiffs from proceeding with the Class Actions or any other action related to BLMIS against any of the Picower Defendants without first obtaining leave of this Court.

78.    Specifically, the Trustee requests that this Court enjoin the prosecution of the Class Actions for, without limitation, the following reasons:

a.    The Class Actions improperly infringe on the jurisdiction of this Court by seeking to side-step this Court's jurisdiction to interpret and enforce the Permanent Injunction

b.    There is an inadequate remedy at law to protect the administration of the liquidation and an injunction is necessary to preserve and protect the Trustee's settlement efforts, including efforts to gather and collect customer property for the benefit of the victims who have filed customer claims.

c.    An injunction will avoid the possibility of inconsistent decisions and will ensure preservation of uniformity of decision.

d.      An injunction will avoid the risk that the Permanent Injunction be eroded by incremental exceptions by a court interpreting the Permanent Injunction other than this Court.

e.      The injunction will not harm the public interest, and, in fact, is in the best interest of BLMIS customers and the orderly administration of the claims administration process and the SIPA proceeding before this Court.

79.    The Trustee believes that the injunction requested herein is necessary and appropriate to carry out his duties in accordance with the provisions of SIPA and the Bankruptcy Code and that any further prosecution of the Class Actions, would seriously impair and potentially defeat this Court's ability to administer the BLMIS proceedings.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Class Action Plaintiffs:

*i.*       declaring that the Class Actions violate the Permanent Injunction and automatic stay provisions under 11 U.S.C. § 362(a) and the Stay Orders;

*ii.*      enjoining the Class Action Plaintiffs and anyone acting on behalf of the Class Action Plaintiffs from proceeding with the Class Actions or any other action related to BLMIS against any of the Picower Defendants without first obtaining leave of this Court;

*iii.*     granting the Trustee such other relief as the Court deems just and proper.


Dated: New York, New York
        March 11, 2014

                              ___/s/David J. Sheehan_____
                              Baker & Hostetler LLP
                              45 Rockefeller Plaza
                              New York, New York 10111
                              Telephone: (212) 589-4200
                              Facsimile: (212) 589-4201
                              David J. Sheehan
                              Email: dsheehan@bakerlaw.com
                              Deborah H. Renner
                              Email: drenner@bakerlaw.com
                              Tracy L. Cole
                              Email: tcole@bakerlaw.com
                              Keith R. Murphy
                              Email: kmurphy@bakerlaw.com
                              Amy Vanderwal
                              Email: avanderwal@bakerlaw.com
                              Ferve Ozturk
                              Email: fozturk@bakerlaw.com
                              Matthew J. Moody
                              Email: mmoody@bakerlaw.com


                              *Attorneys for Irving H. Picard, Trustee for the*
                              *Substantively Consolidated SIPA Liquidation*
                              *of Bernard L. Madoff Investment Securities*
                              *LLC and the Estate of Bernard L. Madoff*