# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-1789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-1197 (BRL) |
| Plaintiff, | |
| v. | |
| JEFFRY M. PICOWER, individually and as trustee for the Picower Foundation, *et al*., | |
| Defendants. | |

**ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING AN AGREEMENT BY AND AMONG THE TRUSTEE AND THE PICOWER BLMIS ACCOUNT HOLDERS AND ISSUING A PERMANENT INJUNCTION**

Upon the motion dated December 17, 2010 (the "Motion") of Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), seeking entry of an order, pursuant to

sections 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. and Rules 2002

and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the

agreement dated as of December 17, 2010, by and among the Trustee on the one hand and

Barbara Picower, the executor (the "Executor") of the estate of Jeffry M. Picower (the "Picower

Estate") and the other Picower BLMIS Accounts[1] on the other hand, in the form annexed hereto

(the "Agreement") [also at ECF No. 25, at Exhibit A][2]; and the Court having considered the

Affidavit of Irving Picard dated December 17, 2010 in support of the Motion [ECF No. 25, at

Exhibit D], all objections to the Motion and responses thereto (collectively, the "Objections"),

including those by Adele Fox ("Fox") as representative of a putative class of similarly situated

plaintiffs, Susanne Stone Marshall ("Marshall") as representative of a putative class of similarly

situated plaintiffs, and Steven, Richard and Martin Surabian (all collectively, the "Objectors");

and it further appearing that the relief sought in the Motion is appropriate based upon the record

of the hearing held before this Court on January 13, 2011 to consider the Motion; and after due

deliberation and sufficient cause appearing therefor; the Court hereby makes the following

findings of fact and conclusions of law.  The findings and conclusions set forth herein constitute

the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such.  To the extent

that any of the following conclusions of law constitute findings of fact, they are adopted as such.

## FINDINGS OF FACT:

A.     Mr. Picower was an attorney, accountant and businessman who invested

with BLMIS over several decades through numerous accounts (identified on Attachment A to the

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement.
[2] References herein to "ECF No. ___" shall refer to docket entry numbers in the above-captioned adversary
proceeding, 09-1197 (BRL).

Agreement) held in Mr. Picower's name, in the name of family members, associates, corporations or partnerships through which Mr. Picower transacted business, not-for-profit entities he founded and funded, or retirement plans for which he served as a trustee.  For purposes of this Order, the Picower Estate shall be considered to be one of the Picower BLMIS Accounts.

B.      On May 12, 2009, the Trustee filed a Complaint (the "Complaint") commencing an adversary proceeding against certain of the Picower BLMIS Accounts (the "Adversary Proceeding Defendants" or "Picower Defendants"), captioned *Picard v. Picower, et al.*, No. 09-1197 (BRL), in which he alleged that prior to the Filing Date, BLMIS made payments or other transfers (the "Transfers") totaling more than $6.7 billion to one or more of the Picower Defendants.  [ECF No. 1].  The details with regard to the Transfers are principally set forth in the Complaint and are incorporated herein by reference.

C.      The Picower Defendants filed a motion seeking to dismiss the Complaint (the "Motion to Dismiss") on July 31, 2009.  [ECF No. 6].  The Trustee filed his Opposition to the Motion to Dismiss on September 30, 2009 (the "Opposition"), in which the Trustee identified additional Transfers to the Picower Defendants, bringing the total value of Transfers received by them to more than $7.2 billion.  [ECF No. 11].  Subsequently, the Picower Defendants filed a Reply on November 25, 2009.  [ECF No. 16].

D.      The Trustee believes that all of the Transfers are recoverable as set forth in the Complaint and the Opposition.  The Picower Defendants dispute that they are liable for the return of the Transfers.  After a review of the relevant records and discussions with Picowers' counsel concerning the factual background and certain legal arguments, as well as certain records not available to the Trustee at the time of the filing of the Complaint and the Opposition, and a

consideration of the costs and uncertainty inherent in any litigation, the Trustee, in the exercise

of his business judgment, has determined that it is appropriate to resolve this matter rather than

litigate the allegations in the Complaint.

E.     In the course of the Trustee's investigation into the Picower BLMIS

Accounts, certain margin loans owed by certain of the Picower BLMIS Accounts to BLMIS

were identified (the "Margin Loans").  The Trustee determined that certain Picower BLMIS

Accounts borrowed on margin from BLMIS and, when the Ponzi scheme collapsed in December

of 2008, there was a considerable balance owed on these Margin Loans.

F.     According to the Trustee, the Margin Loans were funded by the

investments of other customers in connection with Madoff's Ponzi scheme, and appear to have

been the primary vehicle through which Transfers were made to the Picower BLMIS Accounts.

G.     The Picower Settlement involves the repayment of a substantial portion of

the value of the Margin Loans and will return $5 billion to the BLMIS estate for distribution to

customers with allowed claims.  This represents a significant recovery for the victims of the

Ponzi scheme, while at the same time it collects a substantial debt owed to the BLMIS estate.

Moreover, when combined with the monies that the Picower Estate is forfeiting to the

Government, one hundred percent of the net withdrawals received by the Picower BLMIS

Accounts will have been returned for distribution to Madoff victims, whether by the Trustee or

by the Government.

H.     The Government has commenced a forfeiture action captioned *United*

*States of America v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account*

*Numbers Set Forth on Schedule A*, No. 10 CV 9398, in the District Court.  The Government and

Mrs. Picower have also entered into a Stipulation and Order of Settlement ("Forfeiture

Stipulation"), which the Government has presented to the District Court and has been "so ordered" by the District Court.

I.      Because the Bankruptcy Settlement Amount was derived from the Forfeited Funds, the Bankruptcy Settlement Amount will never revert to Mrs. Picower or the Picower BLMIS Account Holders.  Rather, the Bankruptcy Settlement Amount will remain available for distribution to customers with allowed claims.

J.      The Picower BLMIS Accounts have agreed to withdraw the Picower Customer Claims that they filed in the liquidation proceeding, resulting in a decrease of over billions of dollars in the amount for which the Trustee will have to reserve pending final determination of the Net Equity issue.

K.      The Trustee believes that the terms of the Picower Settlement fall well above the lowest point in the range of reasonableness and, accordingly has stated that the Agreement should be approved by this Court.

L.      Three objections by Objectors were filed and received by this Court prior to the deadline for objections.  The Court has fully considered each of these objections.

## CONCLUSIONS OF LAW:

1.      This Court has subject matter jurisdiction to consider the Motion and the relief requested therein, including granting the permanent injunction sought, in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York dated July 10, 1984 (Ward, Acting C.J.).

2.      Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1409.

3.      Proper, timely, adequate and sufficient notice of the Motion, the hearing thereon, and the related objection deadline has been given in accordance with Bankruptcy Rules

2002 and 9019. The foregoing notice constitutes good, appropriate and sufficient notice, and no other or further notice need be given.

4.      The suggestion by certain Objectors that the negotiations among the Trustee, the Government and the Picower Defendants were not at arms' length is not credible, particularly given that the Agreement and forfeiture to the Government will result in the recovery of one hundred percent of the Picower Defendants' net withdrawals from BLMIS. Accordingly, no discovery in connection with either the settlement negotiations or the adversary proceeding is warranted, nor is discovery necessary or warranted for any other reason raised by any of the Objectors.

5.      The Court has considered the probability of success in the litigation, the difficulties associated with collection, the complexity of the litigation, and the attendant expense, inconvenience, and delay, and the paramount interest of the customers and other creditors. In addition, the Court may credit and consider the opinion of the Trustee and his counsel in determining whether a settlement is fair and equitable.

6.      The Court concludes that the Settlement falls well above the lowest point in the range of reasonableness, and is fair, reasonable, equitable and in the best interests of the BLMIS Estate.

7.      The Agreement will confer a significant benefit on BLMIS customers.

8.      An injunction under Sections 105(a) and 362(a) of the Bankruptcy Code is warranted and necessary. Issuance of the permanent injunction, precluding prosecution of actions by third parties against the Picower BLMIS Accounts or the Picower Releasees that are duplicative or derivative of claims belonging to the Trustee, is necessary and appropriate to carry out the provisions of the Bankruptcy Code, to prevent any entity from exercising control or

possession over property of the estate, to preclude actions that would have a conceivable effect or adverse impact upon the Debtors' estate or on the administration of the liquidation proceeding, and/or to avoid relitigation or litigation of claims that were or could have been asserted by the Trustee on behalf of all customers and creditors.

9.      The injunction sought is narrowly tailored and is necessary to prevent third parties from commencing actions that would adversely impact on the Debtors' estate and interfere with its orderly administration.[3]

10.      Objectors Fox and Marshall are creditors of BLMIS over whom this Court has personal jurisdiction and against whom the Court can issue a permanent injunction.

For all of the foregoing reasons, it is hereby

ORDERED, that the Motion is granted in its entirety; and it is further

ORDERED, that the Agreement between the Trustee on the one hand and the Picower BLMIS Accounts on the other hand is hereby approved, and the parties to the Agreement are authorized and directed to take such action as is necessary to effectuate the terms of the Agreement; and it is further

ORDERED, that any BLMIS customer or creditor of the BLMIS estate who filed or could have filed a claim in the liquidation, anyone acting on their behalf or in concert or participation with them, or anyone whose claim in any way arises from or is related to BLMIS or the Madoff Ponzi scheme, is hereby permanently enjoined from asserting any claim against the Picower BLMIS Accounts or the Picower Releasees that is duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower Releasees; and it is further

---

[3] To the extent that Federal Rule of Bankruptcy Procedure 7065 applies, the injunction provided for in this Order satisfies subsection (d) thereof by setting forth the reasons for its issuance, the specific terms thereof, and describes in reasonable detail the act or acts restrained or required.

ORDERED, that all Objections to the Motion are overruled; and it is further

ORDERED, that this Court shall retain jurisdiction over any and all disputes arising

under or otherwise relating to this Order.


Dated: New York, New York
      January 13, 2011


                 /s/Burton R. Lifland
                 HONORABLE BURTON R. LIFLAND
                 UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## AGREEMENT BETWEEN TRUSTEE AND THE PICOWER
## BLMIS ACCOUNT HOLDERS

## AGREEMENT

This AGREEMENT, dated as of December 17, 2010, is made by and among IRVING H. PICARD, in his capacity as trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq., as amended ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), on the one hand, and the ESTATE OF JEFFRY M. PICOWER (the "Picower Estate"), by Barbara Picower ("Mrs. Picower"), as Executor of the Picower Estate and on behalf of the Picower BLMIS Accounts (defined in paragraph E hereof), on the other hand (each of the Trustee and Mrs. Picower, a "Party", and both, the "Parties").

## BACKGROUND

A.    BLMIS and its predecessor was a registered broker-dealer and a member of the Securities Investor Protection Corporation ("SIPC").

B.    On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud. On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against, among others, BLMIS and Madoff, captioned SEC v. BLMIS, et al., No. 08-CV-10791(LLS).

C.    On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 78eee(a)(3) of SIPA alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 78eee(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 78eee(b)(4) of SIPA, where it is currently pending as SIPC v. BLMIS, No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

D.    At a plea hearing on March 12, 2009, in the case captioned United States v. Madoff, No. 09-CR-213 (DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS. On June 29, 2009, Madoff was sentenced to 150 years in prison.

E.    Jeffry M. Picower ("Mr. Picower") was an attorney, accountant and businessman who maintained accounts at BLMIS on behalf of himself, his family members, corporations, and partnerships; pension plans for which he served as a trustee; and not-for-profit entities he founded and funded (the account holders and their accounts, collectively, the

"Picower BLMIS Accounts"), identified on Attachment A hereto. Mr. Picower made decisions concerning deposits into and withdrawals from the Picower BLMIS Accounts. For purposes of this Agreement, the Picower Estate shall be considered to be one of the Picower BLMIS Accounts.

  F. On May 13, 2009, the Trustee filed a complaint (the "Complaint") commencing an adversary proceeding captioned Picard v. Picower, et al., No. 09-1197 (BRL) (the "Picower Adversary Proceeding") against Mr. Picower and certain of the Picower BLMIS Account Holders (collectively, the "Adversary Proceeding Defendants") seeking to avoid and recover under 11 U.S.C. §§ 544(b), 547, 548 and 550 and the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) (collectively, the "Avoiding Powers Claims") more than $6.7 billion of transfers or other payments (the "Transfers") made to one or more of the Adversary Proceeding Defendants prior to the collapse of BLMIS. The amount that the Trustee seeks to avoid in the Picower Adversary Proceeding was subsequently increased to $7.2 billion.

  G. Prior to July 2, 2009, SIPA customer claims were filed with the Trustee with respect to the following Picower BLMIS Accounts: Jeffry M. Picower, Barbara Picower, Capital Growth Company, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JLN Partnership, Jeffry M. Picower Special Co., The Picower Foundation and ACF Services Corporation Money Purchase Pension Plan (collectively, the "Picower Customer Claims"). The Picower Customer Claims numbers are indicated on Attachment A hereto.

  H. On July 31, 2009, the Adversary proceeding Defendants moved to dismiss the Complaint on a variety of grounds (the "Motion to Dismiss"). The Trustee responded to the Motion to Dismiss on September 30, 2009 and on November 25, 2009, the Adversary Proceeding Defendants filed a reply. A hearing on the Motion to Dismiss has not been held and the Court has not ruled on the Motion to Dismiss.

  I. In September 2009, Mr. and Mrs. Picower initiated discussions with the Trustee aimed at resolving the issues set forth in the Complaint and the Motion to Dismiss.

  J. On October 25, 2009, Mr. Picower passed away. Mr. Picower's Last Will and Testament dated October 15, 2009, was submitted for probate to the Surrogate's Court of the State of New York, New York County, and Mrs. Picower was thereafter duly appointed as the executor of the Estate. Through counsel, Mrs. Picower continued the discussions with the Trustee for the purposes of clarifying some of the facts alleged in the Complaint and to resolve the outstanding issues to reach a settlement with the Trustee.

  K. Mrs. Picower, on behalf of the Adversary Proceeding Defendants, disputed the legal and factual bases of liability set forth in the Complaint. In the months since the Complaint was filed, the Trustee has conducted extensive additional investigation. As a result, he has become aware of information, not known to him previously, that provides context for some of the allegations made in the Complaint concerning rates of return for certain of the Adversary Proceeding Defendants. While the Trustee believes that he would prevail at trial in recovering the Transfers from the Adversary Proceeding Defendants, he recognizes that there is

always litigation risk, particularly with respect to the Transfers that occurred beyond the six-year period preceding the Filing Date.

L.    By March 2010, the Trustee had reached agreement with Mrs. Picower that the Picower Estate would resolve the Trustee's claims against the Adversary Proceeding Defendants by payment to the Trustee of an amount between $4.8 billion and $5.0 billion. Ultimately, Mrs. Picower agreed that the Picower Estate would pay to the Trustee the sum of $5.0 billion to resolve the Picower Adversary Proceeding. Mrs. Picower's agreement with the Trustee, however, was contingent on Mrs. Picower reaching an agreement with the United States Attorney's Office for the Southern District of New York (the "Government") to resolve potential civil forfeiture liability of the Picower Estate pursuant to 18 U.S.C. § 981(a)(1)(C). As a result of subsequent negotiations with the Government, Mrs. Picower, on behalf of the Estate and the Picower BLMIS Accounts, agreed to forfeit to the Government $7,206,157,717 (the "Forfeited Funds") for distribution to Madoff fraud victims, representing an amount equal to the net funds withdrawn from BLMIS by the Picower BLMIS Accounts. The Government, and the Trustee further agreed that up to $5.0 billion of the Forfeited Funds (the "Bankruptcy Settlement Amount") would be credited to the Trustee and would thereafter be paid over to the Trustee for distribution to Madoff fraud victims.

M.    The proposed Stipulation and Order of Settlement between the Government and Mrs. Picower that effectuates the forfeiture agreement (the "Forfeiture Stipulation," annexed hereto as Attachment B), will be submitted to the District Court for approval. It requires Mrs. Picower, upon execution of the Forfeiture Stipulation, to cause the Forfeited Funds to be wired into one or more escrow accounts (the "Escrow Accounts") that have been established at JPMorgan Chase Bank, N.A. (the "Escrow Agent") pursuant to an escrow agreement (the "Escrow Agreement") executed by and among the Picower Estate, the Trustee, the Government, and, with respect to certain sections only, SIPC. Once Mrs. Picower has fulfilled her obligations as Executor under this Agreement and the Forfeiture Settlement to cause the Forfeited Funds to be wired into the Escrow Accounts, Mrs. Picower, the Estate, the Picower BLMIS Accounts, the Picower Adversary Defendants, and the Picower Releasees shall have no further payment obligations whatsoever under this Agreement.

N.    On March 31, 2010, the Trustee filed a complaint ("Fox/Marshall Complaint") commencing an adversary proceeding in the Bankruptcy Court captioned Picard v. Fox, et al., No. 10-3114 (BRL), seeking a temporary restraining order and preliminary injunction ("Preliminary Injunction") preventing the continuation of certain lawsuits commenced against certain of the Adversary Proceeding Defendants, as more particularly set forth in the Fox/Marshall Complaint. The Bankruptcy Court issued a temporary restraining order on April 1, 2010 and a Preliminary Injunction was entered on April 27, 2010.

O.    Based on the foregoing, the Parties wish to settle their disputes about the matters described above without the expense, delay, and uncertainty of litigation.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Trustee and Mrs. Picower agree as follow:

## AGREEMENT

1.    Agreement To Bankruptcy Court Jurisdiction. Mrs. Picower, on behalf of the
Picower Estate and the Picower BLMIS Accounts, agrees to the jurisdiction of the Bankruptcy
Court for purposes of the SIPA Proceeding and the Picower Adversary Proceeding.

2.    Payment. Upon execution of the Forfeiture Stipulation, Mrs. Picower will
cause the Forfeited Funds to be wired into the Escrow Accounts. The Escrow Agent will release
funds up to the Bankruptcy Settlement Amount within two (2) business days (a) to the Trustee
upon receipt of written notice provided jointly by the Trustee and Mrs. Picower, with a copy of a
final and non-appealable 9019 Order (as defined in paragraph 6 hereof) (the "Final 9019 Order")
attached; or (b) to the Government upon written notice jointly provided by the Trustee, Mrs.
Picower, and the Government, with a copy of a final, non-appealable order of forfeiture attached.
For purposes of this Agreement, an order shall be considered "final and non-appealable" when
(i) the time to appeal the order has expired, or (ii) if any appeal has been taken, any and all such
appeals have been fully and finally resolved without material modification of the order.

3.    Release By Trustee. In consideration for the covenants and agreements in this
Agreement and for other good and valuable consideration, the receipt and sufficiency of which
are hereby acknowledged, except with respect to any rights arising under this Agreement, upon
the Trustee's or the Government's receipt of funds up to the Bankruptcy Settlement Amount, the
Trustee, on behalf of himself, his attorneys, agents and advisors, and BLMIS and its estate, shall
release, remit and forever discharge each of the persons and entities listed on Attachment C
hereto (collectively, the "Picower Releasees") and each of their executors, administrators,
attorneys, agents, trustees, heirs and assigns, from any and all past, present and future claims or
causes of action (including any suit, petition, demand, or other claim in law, equity or
arbitration) and from any and all allegations of liability or damages (including any allegation of
duties, debts, reckonings, contracts, controversies, agreements, promises, damages,
responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or
indirect, asserted or unasserted, known or unknown, absolute or contingent, in tort, contract,
federal or state statutory liability, including, without limitation, under SIPA or the Bankruptcy
Code, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of
fiduciary duty, unjust enrichment, constructive trust, fraudulent transfer, or otherwise (including
attorneys' fees, costs or disbursements), that are, have been, could have been or might in the
future be asserted by the Trustee, on behalf of himself, his attorneys, agents and advisors, and
BLMIS and its estate, against any of the Picower Releasees and each of their executors,
administrators, attorneys, agents, trustees, heirs and assigns, and that arise out of, are based on,
or relate in any way to BLMIS, the Picower BLMIS Accounts, the Adversary Proceeding
Defendants, or the Picower Releasees. Subject to paragraph 6 below, the releases contained
herein shall become effective upon the Trustee's or the Government's actual receipt of funds up
to the Bankruptcy Settlement Amount without any further action by any of the Parties.

4.    Release By The Picower Releasees. In consideration for the covenants and
agreements in this Agreement and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged, except with respect to any rights arising under
this Agreement, upon the Trustee's or the Government's receipt of funds up to the Bankruptcy
Settlement Amount, each of the Picower Releasees, by having an authorized representative sign

a Release Subscription for each Picower Releasee, hereby releases, remits and forever discharges the Trustee and all his agents, BLMIS and its estate, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future, arising out of or in any way related to BLMIS. Subject to paragraph 6 hereof, the release contained herein shall become effective upon the Trustee's or the Government's actual receipt of funds up to the Bankruptcy Settlement Amount without any further action by any of the Parties.

     5.    Dismissal Of Picower Adversary Proceeding.  Within six (6) business days of the earlier to occur of (a) the entry of the Final 9019 Order (as defined in Paragraph 6) by a court of competent jurisdiction, or (b) the Government's actual receipt of funds up to the Bankruptcy Settlement Amount, the Trustee will file a Notice of Dismissal dismissing the Picower Adversary Proceeding with prejudice and without costs to any of the Parties. From the date of this Agreement through the earliest to occur of (a) or (b) of this paragraph, the Picower Adversary Proceeding shall be stayed and no further actions may be taken by any of the Parties thereto.

     6.    Bankruptcy Court Approval; Effective Date.  This Agreement is subject to, and shall become effective and binding on the Parties, upon the earliest to·occur of (a) the entry of a final and non-appealable order by a court of competent jurisdiction approving the Trustee's Motion for Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving an Agreement By and Between the Trustee and the Picower Estate and Enjoining Certain Claims (the "Final 9019 Order"); or (b) the entry of a final and non-appealable order approving the Forfeiture Stipulation. Once this Agreement becomes effective and binding on the Parties hereto, all of the provisions herein, including the releases contained in paragraphs 3 and 4, shall become and remain effective and binding on the Parties, and shall remain in full force and effect, even if no Final 9019 Order ever is entered, and even if funds up to the Bankruptcy Settlement Amount are released to the Government under paragraph 6 of the Forfeiture Stipulation, and not to the Trustee under this Agreement. The only circumstance in which this Agreement shall *not* become effective and binding is in the event that no final and non-appealable orders are entered approving either the Final 9019 Order or the Forfeiture Stipulation. In such case, and only in such case, (i) the Forfeited Funds would be returned to the Estate, less any amounts paid by the Trustee to Mrs. Picower for or in reimbursement of tax payments made by Mrs. Picower during escrow of the Forfeited Funds; (ii) this Agreement, including the releases in paragraphs 3 and 4 hereof, would not take effect and would become null and void for all purposes; (iii) the stay of the Picower Adversary Proceeding would be lifted and the Trustee, on the one hand, and the Adversary Proceeding Defendants, on the other hand, would continue to litigate their respective claims and defenses in the Picower Adversary Proceeding; (iv) the Picower Customer Claims would not be withdrawn; and (v) the Parties could not use or rely on any statement herein in the Picower Adversary Proceeding or in any public statement or other litigation relating to BLMIS or Madoff.

     7.    Permanent Injunction.  The Trustee shall use his reasonable best efforts to obtain approval of the Final 9019 Order as promptly as practicable after the date of this Agreement. The Final 9019 Order shall include an order by the Bankruptcy Court pursuant to, *inter alia*, section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065 (the

"Permanent Injunction Order"), permanently enjoining any customer or creditor of the BLMIS estate, anyone acting on their behalf or in concert or participation with them, or any person whose claim in any way arises from or relates to BLMIS or the Madoff Ponzi scheme, from asserting any claim against the Estate, the Picower BLMIS Accounts, the Picower Adversary Defendants or the Picower Releasees that is duplicative or derivative of any claim brought by the Trustee, or which could have been brought by the Trustee against the Estate, the Picower BLMIS Accounts, the Picower Adversary Defendants or the Picower Releasees (the "Permanent Injunction"). Following entry of the Final 9019 Order, the Trustee shall use his reasonable best efforts to oppose challenges, if any, to the scope, applicability or enforceability of the Permanent Injunction.

8.    Cooperation.  Upon reasonable request of the Trustee, Mrs. Picower agrees reasonably to cooperate with the Trustee in connection with any efforts to obtain approval of the Final 9019 Order and to enforce it to extinguish any claims that may be asserted in violation of the Final 9019 Order.

9.    Withdrawal Of Claims.  Each of the Picower Customer Claims shall be deemed withdrawn with prejudice when the releases in paragraphs 3 and 4 hereof become binding and effective, without any further action necessary by any of the Parties.

10.   Termination Of BLMIS Account Agreements with BLMIS.  All agreements between the Picower BLMIS Accounts and BLMIS shall be deemed terminated when the releases in paragraphs 3 and 4 hereof become binding and effective, without any further action necessary by any of the Parties

11.   Authority.  Mrs. Picower hereby represents and warrants to the Trustee as of the date hereof that she has the full power, authority and legal right to execute and deliver, and to perform obligations on behalf of the Picower Estate and the Picower BLMIS Accounts under this Agreement.

12.   Further Assurances.  The Trustee and Mrs. Picower shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

13.   Entire Agreement.  This Agreement constitutes the entire agreement and understanding between and among the Parties hereto and supersedes all prior agreements, representations and understandings concerning the subject matter hereof.

14.   Amendments, Waiver.  This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

15.   Assignability.  No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

16.   <u>Successors Bound</u>.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and the Picower Releasees, and on and their respective successors and permitted assigns.

17.   <u>No Third Party Beneficiary</u>.  Except as expressly provided in paragraphs 3 and 4, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties and the Picower Releasees and their respective successors and permitted assigns.

18.   <u>No Admission of Liability or Wrongdoing</u>.  By entering into this Agreement, Mrs. Picower does not admit and she expressly denies that she, Mr. Picower, the Picower BLMIS Accounts, the Picower Adversary Defendants, or any of the Picower Releasees have any liability to the Trustee, owe any sums to the Trustee other than sums up to the Bankruptcy Settlement Amount, or have any liability or owe any sums to any other persons or entities, other than to the Government under the terms of the Forfeiture Stipulation, arising from or related to BLMIS or the Madoff Ponzi scheme.  Furthermore, Mrs. Picower does not admit and expressly denies that she, Mr. Picower, any of the Picower BLMIS Accounts, or any of the Picower Releasees engaged in any wrongdoing arising from or related to BLMIS or the Madoff Ponzi scheme, or had any knowledge thereof.

19.   <u>Applicable Law</u>.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

20.   <u>Exclusive Jurisdiction</u>.  The Parties agree that any action for breach or enforcement of this Agreement may be brought only in the Bankruptcy Court.  No Party shall bring, institute, prosecute or maintain any action pertaining to the enforcement of any provision of this Agreement in any court other than the Bankruptcy Court.

21.   <u>Captions and Rules Of Construction</u>.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a paragraph is to a paragraph of this Agreement.  "Includes" and "including" are not limiting.

22.   <u>Counterparts; Electronic Copy Of Signatures</u>.   This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.  The Picower Releasees may evidence their execution of the Release Subscription by delivery to the Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

23.   <u>Notices</u>.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

08-01789-cgm    Doc 5810-1    Filed 09/11/14    Entered 09/11/14 15:01:48    Exhibit A -
09-01197-smb    Doc 43-1    Filed 09/11/14    Entered 09/11/14 16:30:24    Exhibit A -
Part b    Pg 18 of 30
Part b    Pg 18 of 30

If to the Trustee:

Irving H. Picard
E: ipicard@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F: (212) 589-4201

with copies to:

David J. Sheehan
E: dsheehan@bakerlaw.com
Marc Hirschfield
E: mhirschfield@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F: (212) 589-4201

If to Mrs. Picower or the Picower Releasees,
c/o:

William D. Zabel
E: william.zabel@srz.com
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
F: (212) 610-1459

Marcy Ressler Harris
E:  marcy.harris@srz.com
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
F: (212) 593-5955

[*Signature page follows*]

8

09-01197-smb    Doc 43-1    Filed 03/11/14    Entered 03/11/14 16:30:22    Exhibit A -
Part 2    Pg 19 of 30

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff

By: _____

Name: Irving H. Picard

Title: Trustee


ESTATE OF JEFFRY M. PICOWER

_____
Barbara Picower, as Executor

## RELEASE SUBSCRIPTION

The undersigned is a "Picower Releasee" as defined in the Agreement dated as of December 17, 2010, by and among Irving H. Picard, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended, of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and Barbara Picower, as executor of the Estate of Jeffry M. Picower and on behalf of the Picower BLMIS Accounts, on the other hand. For and in consideration of the Trustee's release of the undersigned under paragraph 3 of the Agreement, the undersigned subscribes to the release set forth in paragraph 4 of the Agreement (and only to such release) with the same force and effect as if the undersigned were a party to the Agreement. By signing this Subscription, the undersigned does not become a Party to the Agreement and is not undertaking any rights or obligations under any other provisions of the Agreement, except that paragraphs 10, 19, 20, 22, and 23 of the Agreement apply to this Subscription as though such paragraphs were a part of this Subscription.

Dated _____, 201_.

_____

By: _____
       Name:
       Title:

ATTACHMENT A:  PICOWER BLMIS ACCOUNTS

| Account Number | Account Name | Claim No. |
|---|---|---|
| 100407 | DECISIONS INC SPECIAL | |
| 100416 | JEFFRY M. PICOWER | |
| 101006 | JMP INVESTMENT CO | |
| 101007 | JEFFRY M. PICOWER | |
| 101017 | JMP PERSONAL | |
| 101607 | JEFFRY M. PICOWER | |
| 101610 | PICSON MANAGEMENT GROUP | |
| 101615 | JEFFRY M. PICOWER #2 | |
| 1C1006 | CAPITAL GROWTH COMPANY | 012674, 013298 |
| 1D0010 | DECISIONS INCORPORATED | |
| 1D0011 | DECISIONS INC #2 | |
| 1D0030 | DECISIONS INC #3 | |
| 1D0032 | DECISIONS INC #4 | |
| 1D0036 | DECISIONS INC #5 | |
| 1D0082 | DECISIONS INCORPORATED #6 | |
| 1E0123 | ACF SERVICES CORPORATION MONEY PURCHASE PENSION PLAN | 12672, 013401 |
| 1F0002 | FAVORITE FUND | |
| 1J0001 | JA PRIMARY LTD PARTNERSHIP | |
| 1J0002 | JAB PARTNERSHIP | 012670, 013311 |
| 1J0003 | JEMW PARTNERSHIP | 012673, 013299 |
| 1J0004 | J F PARTNERSHIP | 012677, 013400 |
| 1J0005 | JFM INVESTMENT CO | |
| 1J0008 | JLN PARTNERSHIP | 012676, 013649 |
| 1J0009 | JMP LIMITED PARTNERSHIP | |
| 1J0024 | JA SPECIAL LTD PARTNERSHIP | 012678, 013547 |
| 1M0046 | THE RETIREMENT INCOME PLAN FOR EMPLOYEES OF MONROE SYSTEMS FOR BUSINESS, INC. | |
| 1P0017 | THE PICOWER INSTITUTE FOR MEDICAL RESEARCH | |
| 1P0018 | TRUST FBO GABRIELLE H PICOWER | |
| 1P0019 | BARBARA PICOWER | 012675, 013312 |
| 1P0020 | TRUST FBO GABRIELLE H PICOWER | |
| 1P0021 | JEFFRY M PICOWER | 012669, 013313 |
| 1P0022 | JEFFRY M PICOWER, P. C. | |
| 1P0023 | JEFFRY M PICOWER SPECIAL CO | 012671, 013671 |
| 1P0024 | THE PICOWER FOUNDATION | 012939 |

ATTACHMENT B:  FORFEITURE STIPULATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **STIPULATION AND ORDER OF** |
| Plaintiff, ) | **SETTLEMENT** |
| ) | |
| - against - ) | No. 10 Civ. 9398 (TPG) |
| ) | |
| $7,206,157,717 ON DEPOSIT AT ) | ECF CASE |
| JP MORGAN CHASE BANK, N.A., ) | |
| IN THE ACCOUNTS SET FORTH ON ) | |
| SCHEDULE A, ) | |
| ) | |
| Defendant in rem. ) | |
| ) | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/17/10

The United States Attorney's Office for the Southern District of New York, by Preet

Bharara, United States Attorney (the "Office" or the "Government"); and the estate of Jeffry M.

Picower (the "Estate"), by its representative, Barbara Picower (in such capacity, the "Estate

Representative"), and its attorneys, Schulte Roth & Zabel LLP, hereby enter into this stipulation

and order (the "Stipulation") and stipulate and agree as follows:

WHEREAS, on December 17, 2010, the Government filed a verified complaint seeking

forfeiture of all right, title, and interest in $7,206,157,717 on deposit at JP Morgan Chase Bank,

N.A., in the accounts set forth on Schedule A to the complaint, and all property traceable thereto

(the "Defendant in rem"), pursuant to 18 U.S.C. § 981(a)(1)(C), as property that constitutes and

is derived from proceeds traceable to specified unlawful activity, as that term is defined in 18

U.S.C. § 1956(c)(7) (the "Complaint");

WHEREAS, the Complaint alleges that the Defendant in rem is derived from proceeds

traceable to offenses orchestrated by Bernard L. Madoff ("Madoff") that were part of a scheme

to defraud investors of Bernard L. Madoff Investment Securities LLC and its predecessor,

Bernard L. Madoff Investment Securities (collectively and separately, "BLMIS");

WHEREAS, the Complaint further alleges that the Defendant in rem is property traceable

to transfers made from accounts at BLMIS held or controlled, directly or indirectly, by Jeffry M.

Picower (collectively, the "Picower Accounts," which, for the avoidance of doubt, are the

accounts set forth in Schedule B to the Complaint);[1]

WHEREAS, after Jeffry M. Picower's death on October 25, 2009, the Estate

Representative was duly appointed as the Executor of the Estate by the New York County

Surrogate's Court on or about January 4, 2010;

WHEREAS, the Estate Representative understands that the Government seeks to forfeit

the Defendant in rem, and that the Office will request that such property, if forfeited to the

United States, be distributed to victims of the BLMIS fraud through the process of remission,

consistent with applicable Department of Justice regulations;

WHEREAS, in light of information made public after the BLMIS fraud was uncovered in

December 2008, the Estate Representative does not dispute (a) that the Picower Accounts

received funds from BLMIS that were proceeds of, and traceable to, conduct constituting

specified unlawful activity perpetrated by Madoff and others; and (b) that the Defendant in rem

(i) constitutes property that is the proceeds of, or traceable to, conduct constituting specified

---

[1]  In certain instances, multiple BLMIS account numbers were associated with a particular
Picower Account.  In certain other instances, the name of the account holder associated with
a particular Picower Account at BLMIS changed.  The Parties acknowledge that the list of
account numbers and account names in Schedule B to the Complaint does not identify each
separate account number or account name for the Picower Accounts.

unlawful activity perpetrated by Madoff, and/or (ii) may be considered a substitute *res* for such property;

WHEREAS, however, were this matter to be litigated, the Estate Representative would assert that Jeffry M. Picower and the other Picower Parties, as that term is defined in paragraph 9, below, (a) had no involvement in, knowledge of, or participation in the BLMIS fraud, the conduct constituting specified unlawful activity committed by Madoff and others, or any other criminal or unlawful activity occurring at BLMIS, and (b) were innocent owners of all assets transferred to them from BLMIS at all relevant times;

WHEREAS, the Estate Representative nevertheless wishes to divest the Estate of any and all funds received from BLMIS so that such funds may be returned to the victims of the fraud, and to use the remaining assets of the Estate primarily to establish a charitable foundation in accordance with Jeffry M. Picower's last Will and wishes;

WHEREAS, the Estate Representative and the Office (each a "Party," and together, the "Parties") wish to resolve this action without litigation on the terms set forth herein and to further the goal of compensating the victims of the fraud perpetrated through BLMIS;

WHEREAS, simultaneously with entering into this Stipulation, the Estate Representative is entering into an agreement with the trustee appointed under section 5(b)(3) of the Securities Investor Protection Act of 1970, as amended ("SIPA"), in the consolidated liquidations of BLMIS and Madoff (the "SIPA Trustee") providing for the transfer of funds from the Estate to the SIPA Trustee in settlement of an adversary proceeding filed by the SIPA Trustee against certain of the Picower Parties (the "Bankruptcy Settlement," a copy of which is attached hereto as Exhibit A), which is subject to the approval of the United States Bankruptcy Court for the Southern District of New York; and

3

WHEREAS, the Office intends to credit against the amount being forfeited to the Government (the "Forfeiture Amount," which, for the avoidance of doubt, is equal to $7,206,157,717) the amount actually transferred to the SIPA Trustee pursuant to the Bankruptcy Settlement, up to $5,000,000,000 (the "Bankruptcy Settlement Amount"), and understands that the SIPA Trustee intends to distribute those funds to the victims of the fraud perpetrated through BLMIS, in accordance with SIPA;

The Parties hereby stipulate and agree, and the Court orders, as follows:

1.      The recitals above form an integral part of this Stipulation and are fully incorporated herein.

2.      The Estate Representative agrees to forfeit the Defendant in rem to the Government, on the terms set forth herein, in full satisfaction of the Government's claims for forfeiture as alleged in the Complaint. The Clerk of this Court is hereby directed to forthwith issue a Warrant for the Arrest of the Defendant in rem (the "Warrant"). In the event that, for whatever reason, the Government is unable to execute the Warrant on the full Forfeiture Amount, this Stipulation shall be null and void just as if the Court had not approved it, pursuant to paragraph 17, below.

3.      Simultaneously with her execution of this Stipulation, the Estate Representative shall cause the Forfeiture Amount to be wired into one or more escrow accounts (the "Escrow Accounts") that shall be established at JP Morgan Chase Bank, N.A. (the "Escrow Agent"), pursuant to that certain escrow agreement by and among the Estate Representative, the Government, the SIPA Trustee, the Escrow Agent, and, as set forth therein, the Securities Investor Protection Corporation ("SIPC") (the "Escrow Agreement," a copy of which is attached hereto as Exhibit B). Any and all costs associated with the Escrow Accounts, including but not

4

limited to any and all costs for its establishment and operation (the "Escrow Costs"), are to be paid by SIPC and are, in no event, to be paid by the Government or the Estate Representative, or to be paid from the Forfeiture Amount or any other funds or property in the Escrow Accounts. Once the Estate Representative has caused the full Forfeiture Amount to be deposited into the Escrow Accounts, the Estate Representative shall have no further obligation under this Stipulation to provide any funds or property for forfeiture.

4. The Government agrees to credit the Bankruptcy Settlement Amount against the Forfeiture Amount. The Forfeiture Amount less the Bankruptcy Settlement Amount is referred to in this Stipulation as the "Settlement Funds."

5. Within three business days of the date that the Court approves this Stipulation, the Government and the Estate Representative shall each execute a Notice For Release of Settlement Funds, in the form annexed to the Escrow Agreement as Exhibit A. The Government shall then cause the fully-executed Notice For Release of Settlement Funds to be delivered to the Escrow Agent pursuant to the terms of the Escrow Agreement, whereupon the Escrow Agent shall confirm the instructions and release the Settlement Funds, plus any interest or appreciation that has been accrued or paid and is attributable to such property, by wire in same day funds to the following account maintained by the United States Marshals Service, or to such other accounts that may be designated by the Government pursuant to the terms of the Escrow Agreement ("the USMS Account"):

> ABA #021030004
> ALC #00008154
> U.S. Marshals Service
> c/o Federal Reserve Bank of New York
> 33 Liberty Street
> New York, New York 10045
> Reference: To Be Supplied by the Government

5

6.      The Escrow Agent shall release funds in the Bankruptcy Settlement Amount, not

to exceed $5,000,000,000, to or at the direction of the SIPA Trustee, upon satisfaction of all

conditions precedent to the Bankruptcy Settlement and pursuant to the terms of the Bankruptcy

Settlement and the Escrow Agreement.  Within five business days thereafter, pursuant to the

terms of the Escrow Agreement, the Escrow Agent shall transfer to the USMS Account, for

forfeiture in accordance with the instructions in the preceding paragraph, any remaining funds in

the Escrow Accounts, including but not limited to funds attributable to interest or appreciation

accrued or paid in connection with any portion of the Forfeiture Amount.  The Escrow Agent

shall thereafter terminate the Escrow Accounts in accordance with the Escrow Agreement.

7.      In the event that this Stipulation has been approved by the Court, but (a) the

Bankruptcy Settlement Amount has not been paid to the SIPA Trustee pursuant to the terms of

the Bankruptcy Settlement within three years of the date hereof, or (b) the Bankruptcy

Settlement is rejected by a final and non-appealable order of a court of competent jurisdiction,

whichever is sooner, then within five business days thereof, the Government and the Estate

Representative shall each execute a Notice For Release of Forfeited Funds, in the form annexed

to the Escrow Agreement as Exhibit C.  The Government shall then cause the fully-executed

Notice For Release of Forfeited Funds to be delivered to the Escrow Agent pursuant to the terms

of the Escrow Agreement, whereupon the Escrow Agent shall confirm the instructions and

release the Bankruptcy Settlement Amount, together with any remaining funds in the Escrow

Accounts, including but not limited to funds attributable to interest or appreciation accrued or

paid in connection with any portion of the Forfeiture Amount, by wire in same day funds to the

USMS Account, for forfeiture in accordance with the instructions in paragraph 5, above.  The

6

Escrow Agent shall thereafter terminate the Escrow Accounts in accordance with the Escrow Agreement.

8.      The Estate and the Estate Representative shall not file, or cause any other person or entity to file, or assist any other person or entity in filing, any claim to the Defendant in rem, or in any other way interfere with or delay the forfeiture of the Defendant in rem.

9.      The Parties hereby fully and finally compromise, settle, release, and dispose of:

(a) any and all civil claims under the asset forfeiture and/or money laundering statutes that the United States has asserted or could assert in connection with BLMIS, Madoff, and the specified unlawful activity described in the Complaint, including any receipt of money and any transfers of money received from BLMIS (collectively, beginning with the phrase "in connection with," referred to herein as the "Covered Conduct") against any of the following people, entities, or property:

(i)      Jeffry M. Picower, the Estate, the Estate Representative, Barbara Picower, Capital Growth Company, Favorite Fund, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Company, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Co., Jeffry M. Picower, P.C., Decisions Incorporated, Decisions Incorporated #2, Decisions Incorporated #3, Decisions Incorporated #4, Decisions Incorporated #5, Decisions Incorporated #6, the Picower Foundation, the Picower Institute for Medical Research, Trust FBO Gabrielle H. Picower, Trust FBO Abe Picower, Picson Management Group, Decisions Incorporated Special, Jeffry M. Picower D P Partnership, Jeffry M. Picower #2, Decisions Incorporated L Account, JMP Investment, Jeffry M. Picower, P.C., Employee Profit Sharing Plan, Jeffry M. Picower Money-Purchase

7

Pension Plan, Decisions Incorporated Money Purchase Pension Plan, Explanations Incorporated Money Purchase Pension Plan, April C. Freilich, ACF Services Corporation, ACF Services Corporation Money-Purchase Pension Plan, Apple Securities Management Incorporated, and the Retirement Income Plan for Employees of Monroe Systems for Business, Inc., and each of their respective officers, employees, partners, agents, predecessors, successors, assigns, heirs, and representatives (collectively, the "Picower Parties");

        (ii)     any property currently in the custody, control, or possession of any of the Picower Parties; and

        (iii)    any property currently in the custody, control, or possession of any other person or entity that was received from any of the Picower Parties, including but not limited to recipients of any grants made by the Picower Foundation or the Picower Institute for Medical Research, solely to the extent that such property is traceable to the Picower Accounts; and

        (b)     any and all claims or defenses that any of the Picower Parties (to the extent that such Picower Parties are within the control of the Estate Representative) may or could assert against the Government related to the Covered Conduct.

The claims and defenses encompassed in subparagraphs (a) and (b) shall be referred to as the "Settled Claims." For the avoidance of doubt, (i) no employee or insider of BLMIS is a Picower Party within the meaning of this Stipulation and this Stipulation is not intended to release, and the Settled Claims do not include, any claim against any employee or insider of BLMIS, or any property in the custody, control, or possession of any employee or insider of BLMIS; (ii) this Stipulation is not intended to release, and the Settled Claims do not include, any criminal liability

8