for any individual or entity whatsoever; and (iii) notwithstanding the existence or outcome of any claims to the Forfeiture Amount or the Defendant in rem, the releases set forth in this paragraph shall remain in full force and effect.

10. The Estate Representative represents and warrants that (a) to the best of her knowledge and belief, the Estate is currently the sole owner of the Defendant in rem; and (b) the Estate Representative is authorized to enter into this Stipulation and each of its terms and conditions, and to legally bind the Estate, herself in her individual capacity (as to paragraphs 9(b), 12, and 13), and the Picower Parties (to the extent such Picower Parties are within the control of the Estate Representative), thereto. In the event that either of these representations or warranties is untrue, then, notwithstanding paragraphs 3 and 9 above, any and all claims of the United States described therein shall not be released and shall not be part of the term "Settled Claims," but this Stipulation shall in all other respects remain in full force and effect.

11. The Defendant in rem represents the total net amount of withdrawals received by the Picower Parties from BLMIS through, and as reflected in account statements for, the Picower Accounts. The Estate Representative represents and warrants that she is not aware that any of the Picower Parties received property or funds from BLMIS except through, and as reflected in account statements for, the Picower Accounts. In the event that information is received or discovered by the Government after the date of this Stipulation showing that the Picower Parties received additional funds or property from BLMIS or Madoff, directly or indirectly, other than through, and as reflected in account statements for, the Picower Accounts, then, notwithstanding paragraphs 3 and 9 above, the Government shall be free to assert any and all claims, including but not limited to civil forfeiture claims, against such funds or property, or against property traceable thereto, or to bring any and all claims against the Picower Parties and seek any and all

9

available remedies (which shall not be limited to the value of such funds or property), <u>provided, however</u>, that any such claims asserted against the Picower Parties and any remedies sought shall be on account of such funds or property and not on account of the Defendant in rem, but the releases set forth in paragraph 9 of this Stipulation shall otherwise remain in full force and effect.

12. Upon reasonable request of the Government, the Estate Representative agrees, on behalf of the Estate, the Picower Accounts, and each of the Picower Parties (to the extent they are within the control of the Estate Representative), to reasonably cooperate with the Government in connection with responding to any claims asserted against the Forfeiture Amount or the Defendant in rem. Nothing in this paragraph shall require any of the Picower Parties to waive the attorney-client privilege, the work product doctrine, or any other privilege, immunity, or statutory or constitutional right or protection.

13. The Picower Parties (to the extent that they are within the control of the Estate Representative) are hereby barred from asserting any claim against the United States of America or any agency, instrumentality, agent, or employee thereof, and from assisting others in asserting any such claim, in connection with the Settled Claims, including but not limited to any claims for costs or attorneys' fees.

14. This Stipulation does not constitute an admission of liability or fault on the part of the Picower Parties. Notwithstanding any other provision of this Stipulation, the forfeiture provided for herein does not constitute a fine, penalty, or punitive damages.

15. The Parties hereby agree that this Stipulation, including the Exhibits hereto, is the entire understanding of the Parties with respect to the subject matter of this Stipulation and it is intended to be the complete and exclusive statement thereof. The Parties agree that each

10

participated equally in the preparation of this Stipulation, and that no provision shall be construed against any other Party as draftsman.

16. The Parties do not intend to confer any benefit by or under this Stipulation upon any person or entity other than the Government and the Picower Parties. No person or entity shall be entitled to assert any rights under this Stipulation other than the Government and the Picower Parties, nor shall any person or entity other than the Government and the Picower Parties be permitted to use this Stipulation as evidence of an admission regarding any claim, right, or defense that such person or entity may assert.

17. Notwithstanding anything to the contrary herein, this Stipulation is expressly subject to and contingent upon approval of the Court. If this Stipulation, or any portion hereof, is rejected by the Court or if it is overturned or modified on appeal, then (i) all funds transferred to the Government by the Escrow Agent pursuant to this Stipulation shall be returned to the Estate, and (ii) this Stipulation shall be null and void and have no further force and effect and, in such event, neither this Stipulation nor any negotiations and writings in connection herewith shall in any way be construed as or deemed to be evidence of an admission on behalf of any Party hereto regarding any claim or right that such Party may have against any other Party hereto. Notwithstanding the foregoing sentence, to the extent that the USMS Account lacks sufficient funds to return to the Estate the full amount of the funds transferred to the Government by the Escrow Agent pursuant to this Stipulation, then (a) the Government shall, solely to that extent, be relieved of its obligation to return funds to the Estate pursuant to clause (i) of the foregoing sentence, and (b) any civil liability of the Picower Parties to the Government for any claim referred to in the releases set forth in paragraph 9, above, shall be reduced to the extent of any funds not so returned to the Estate. In the event that this Stipulation, or any portion hereof, is

rejected by the Court or if it is overturned or modified on appeal, the Parties hereto agree to negotiate in good faith to revise the terms of this Stipulation accordingly, such that in full satisfaction of the Picower Parties' civil liability the full Forfeiture Amount will be available for distribution to victims of the fraud perpetrated through BLMIS.

18. For purposes of this Stipulation, an order shall be considered "final and non-appealable" when (a) the time to appeal the order has expired, or (b) if any appeal has been taken, any and all such appeals have been fully and finally resolved without material modification of the order.

19. After (a) the time for filing claims to the Defendant in rem has expired, or (b) if any claims have been filed, any and all such claims have been resolved, the Government shall seek entry of a final order of forfeiture in respect of any property forfeited in this action.

20. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

21. This Stipulation may not be changed, modified, or amended except in a writing signed by the Parties and/or their counsel and approved by the Court.

22. This Stipulation may be executed in any number of counterparts and shall constitute one agreement, binding upon all Parties hereto as if all Parties signed the same document. Further, all facsimile and digital images of signatures shall be treated as originals for all purposes.

23. The Court shall retain exclusive jurisdiction with respect to any and all issues or disputes that may arise in connection with this Stipulation and its enforcement.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

12

**SO ORDERED:**

Dated: December 17, 2010
New York, New York

/s/ Thomas P. Griesa
HON. THOMAS P. GRIESA
UNITED STATES DISTRICT JUDGE

**AGREED TO BY:**

Dated: December 17, 2010
New York, New York

PREET BHARARA
United States Attorney
Attorney for the United States of America

/s/ MLS
MATTHEW L. SCHWARTZ
BARBARA A. WARD
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Tel.: (212) 637-1945/1048
Facsimile: (212) 637-2937
E-mail: matthew.schwartz@usdoj.gov

Dated: December __, 2010
New York, New York

BARBARA PICOWER, in her capacity as
Estate Representative

Dated: December __, 2010
New York, New York

SCHULTE, ROTH & ZABEL LLP
Attorneys for the Estate Representative

MARCY RESSLER HARRIS, ESQ
GARY STEIN, ESQ.
919 Third Avenue
New York, New York 10022
Tel.: (212) 756-2000
Facsimile: (212) 593-5955
E-mail: marcy.harris@srz.com

13

**SO ORDERED:**

Dated: December __, 2010
New York, New York

_____
HON. THOMAS P. GRIESA
UNITED STATES DISTRICT JUDGE

**AGREED TO BY:**

Dated: December __, 2010
New York, New York

PREET BHARARA
United States Attorney
Attorney for the United States of America

_____
MATTHEW L. SCHWARTZ
BARBARA A. WARD
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Tel.: (212) 637-1945/1048
Facsimile: (212) 637-2937
E-mail: matthew.schwartz@usdoj.gov

Dated: December __, 2010
New York, New York

*Barbara Picower*
BARBARA PICOWER, in her capacity as
Estate Representative

Dated: December 17, 2010
New York, New York

SCHULTE, ROTH & ZABEL LLP
Attorneys for the Estate Representative

*Marcy R Harris*
MARCY RESSLER HARRIS, ESQ
GARY STEIN, ESQ.
919 Third Avenue
New York, New York 10022
Tel.: (212) 756-2000
Facsimile: (212) 593-5955
E-mail: marcy.harris@srz.com

# EXHIBIT A

# BANKRUPTCY STIPULATION

## AGREEMENT

This AGREEMENT, dated as of December 17, 2010, is made by and among IRVING H. PICARD, in his capacity as trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq., as amended ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), on the one hand, and the ESTATE OF JEFFRY M. PICOWER (the "Picower Estate"), by Barbara Picower ("Mrs. Picower"), as Executor of the Picower Estate and on behalf of the Picower BLMIS Accounts (defined in paragraph E hereof), on the other hand (each of the Trustee and Mrs. Picower, a "Party", and both, the "Parties").

## BACKGROUND

A. BLMIS and its predecessor was a registered broker-dealer and a member of the Securities Investor Protection Corporation ("SIPC").

B. On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud. On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against, among others, BLMIS and Madoff, captioned SEC v. BLMIS, et al., No. 08-CV-10791(LLS).

C. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 78eee(a)(3) of SIPA alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 78eee(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 78eee(b)(4) of SIPA, where it is currently pending as SIPC v. BLMIS, No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

D. At a plea hearing on March 12, 2009, in the case captioned United States v. Madoff, No. 09-CR-213 (DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS. On June 29, 2009, Madoff was sentenced to 150 years in prison.

E. Jeffry M. Picower ("Mr. Picower") was an attorney, accountant and businessman who maintained accounts at BLMIS on behalf of himself, his family members, corporations, and partnerships; pension plans for which he served as a trustee; and not-for-profit entities he founded and funded (the account holders and their accounts, collectively, the

"Picower BLMIS Accounts"), identified on Attachment A hereto. Mr. Picower made decisions concerning deposits into and withdrawals from the Picower BLMIS Accounts. For purposes of this Agreement, the Picower Estate shall be considered to be one of the Picower BLMIS Accounts.

F. On May 13, 2009, the Trustee filed a complaint (the "Complaint") commencing an adversary proceeding captioned Picard v. Picower, et al., No. 09-1197 (BRL) (the "Picower Adversary Proceeding") against Mr. Picower and certain of the Picower BLMIS Account Holders (collectively, the "Adversary Proceeding Defendants") seeking to avoid and recover under 11 U.S.C. §§ 544(b), 547, 548 and 550 and the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) (collectively, the "Avoiding Powers Claims") more than $6.7 billion of transfers or other payments (the "Transfers") made to one or more of the Adversary Proceeding Defendants prior to the collapse of BLMIS. The amount that the Trustee seeks to avoid in the Picower Adversary Proceeding was subsequently increased to $7.2 billion.

G. Prior to July 2, 2009, SIPA customer claims were filed with the Trustee with respect to the following Picower BLMIS Accounts: Jeffry M. Picower, Barbara Picower, Capital Growth Company, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JLN Partnership, Jeffry M. Picower Special Co., The Picower Foundation and ACF Services Corporation Money Purchase Pension Plan (collectively, the "Picower Customer Claims"). The Picower Customer Claims numbers are indicated on Attachment A hereto.

H. On July 31, 2009, the Adversary proceeding Defendants moved to dismiss the Complaint on a variety of grounds (the "Motion to Dismiss"). The Trustee responded to the Motion to Dismiss on September 30, 2009 and on November 25, 2009, the Adversary Proceeding Defendants filed a reply. A hearing on the Motion to Dismiss has not been held and the Court has not ruled on the Motion to Dismiss.

I. In September 2009, Mr. and Mrs. Picower initiated discussions with the Trustee aimed at resolving the issues set forth in the Complaint and the Motion to Dismiss.

J. On October 25, 2009, Mr. Picower passed away. Mr. Picower's Last Will and Testament dated October 15, 2009, was submitted for probate to the Surrogate's Court of the State of New York, New York County, and Mrs. Picower was thereafter duly appointed as the executor of the Estate. Through counsel, Mrs. Picower continued the discussions with the Trustee for the purposes of clarifying some of the facts alleged in the Complaint and to resolve the outstanding issues to reach a settlement with the Trustee.

K. Mrs. Picower, on behalf of the Adversary Proceeding Defendants, disputed the legal and factual bases of liability set forth in the Complaint. In the months since the Complaint was filed, the Trustee has conducted extensive additional investigation. As a result, he has become aware of information, not known to him previously, that provides context for some of the allegations made in the Complaint concerning rates of return for certain of the Adversary Proceeding Defendants. While the Trustee believes that he would prevail at trial in recovering the Transfers from the Adversary Proceeding Defendants, he recognizes that there is

2

always litigation risk, particularly with respect to the Transfers that occurred beyond the six-year period preceding the Filing Date.

L. By March 2010, the Trustee had reached agreement with Mrs. Picower that the Picower Estate would resolve the Trustee's claims against the Adversary Proceeding Defendants by payment to the Trustee of an amount between $4.8 billion and $5.0 billion. Ultimately, Mrs. Picower agreed that the Picower Estate would pay to the Trustee the sum of $5.0 billion to resolve the Picower Adversary Proceeding. Mrs. Picower's agreement with the Trustee, however, was contingent on Mrs. Picower reaching an agreement with the United States Attorney's Office for the Southern District of New York (the "Government") to resolve potential civil forfeiture liability of the Picower Estate pursuant to 18 U.S.C. § 981(a)(1)(C). As a result of subsequent negotiations with the Government, Mrs. Picower, on behalf of the Estate and the Picower BLMIS Accounts, agreed to forfeit to the Government $7,206,157,717 (the "Forfeited Funds") for distribution to Madoff fraud victims, representing an amount equal to the net funds withdrawn from BLMIS by the Picower BLMIS Accounts. The Government, and the Trustee further agreed that up to $5.0 billion of the Forfeited Funds (the "Bankruptcy Settlement Amount") would be credited to the Trustee and would thereafter be paid over to the Trustee for distribution to Madoff fraud victims.

M. The proposed Stipulation and Order of Settlement between the Government and Mrs. Picower that effectuates the forfeiture agreement (the "Forfeiture Stipulation," annexed hereto as Attachment B), will be submitted to the District Court for approval. It requires Mrs. Picower, upon execution of the Forfeiture Stipulation, to cause the Forfeited Funds to be wired into one or more escrow accounts (the "Escrow Accounts") that have been established at JPMorgan Chase Bank, N.A. (the "Escrow Agent") pursuant to an escrow agreement (the "Escrow Agreement") executed by and among the Picower Estate, the Trustee, the Government, and, with respect to certain sections only, SIPC. Once Mrs. Picower has fulfilled her obligations as Executor under this Agreement and the Forfeiture Settlement to cause the Forfeited Funds to be wired into the Escrow Accounts, Mrs. Picower, the Estate, the Picower BLMIS Accounts, the Picower Adversary Defendants, and the Picower Releasees shall have no further payment obligations whatsoever under this Agreement.

N. On March 31, 2010, the Trustee filed a complaint ("Fox/Marshall Complaint") commencing an adversary proceeding in the Bankruptcy Court captioned Picard v. Fox, et al., No. 10-3114 (BRL), seeking a temporary restraining order and preliminary injunction ("Preliminary Injunction") preventing the continuation of certain lawsuits commenced against certain of the Adversary Proceeding Defendants, as more particularly set forth in the Fox/Marshall Complaint. The Bankruptcy Court issued a temporary restraining order on April 1, 2010 and a Preliminary Injunction was entered on April 27, 2010.

O. Based on the foregoing, the Parties wish to settle their disputes about the matters described above without the expense, delay, and uncertainty of litigation.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Trustee and Mrs. Picower agree as follow:

3

## AGREEMENT

1. **Agreement To Bankruptcy Court Jurisdiction.** Mrs. Picower, on behalf of the Picower Estate and the Picower BLMIS Accounts, agrees to the jurisdiction of the Bankruptcy Court for purposes of the SIPA Proceeding and the Picower Adversary Proceeding.

2. **Payment.** Upon execution of the Forfeiture Stipulation, Mrs. Picower will cause the Forfeited Funds to be wired into the Escrow Accounts. The Escrow Agent will release funds up to the Bankruptcy Settlement Amount within two (2) business days (a) to the Trustee upon receipt of written notice provided jointly by the Trustee and Mrs. Picower, with a copy of a final and non-appealable 9019 Order (as defined in paragraph 6 hereof) (the "Final 9019 Order") attached; or (b) to the Government upon written notice jointly provided by the Trustee, Mrs. Picower, and the Government, with a copy of a final, non-appealable order of forfeiture attached. For purposes of this Agreement, an order shall be considered "final and non-appealable" when (i) the time to appeal the order has expired, or (ii) if any appeal has been taken, any and all such appeals have been fully and finally resolved without material modification of the order.

3. **Release By Trustee.** In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under this Agreement, upon the Trustee's or the Government's receipt of funds up to the Bankruptcy Settlement Amount, the Trustee, on behalf of himself, his attorneys, agents and advisors, and BLMIS and its estate, shall release, remit and forever discharge each of the persons and entities listed on Attachment C hereto (collectively, the "Picower Releasees") and each of their executors, administrators, attorneys, agents, trustees, heirs and assigns, from any and all past, present and future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, asserted or unasserted, known or unknown, absolute or contingent, in tort, contract, federal or state statutory liability, including, without limitation, under SIPA or the Bankruptcy Code, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, unjust enrichment, constructive trust, fraudulent transfer, or otherwise (including attorneys' fees, costs or disbursements), that are, have been, could have been or might in the future be asserted by the Trustee, on behalf of himself, his attorneys, agents and advisors, and BLMIS and its estate, against any of the Picower Releasees and each of their executors, administrators, attorneys, agents, trustees, heirs and assigns, and that arise out of, are based on, or relate in any way to BLMIS, the Picower BLMIS Accounts, the Adversary Proceeding Defendants, or the Picower Releasees. Subject to paragraph 6 below, the releases contained herein shall become effective upon the Trustee's or the Government's actual receipt of funds up to the Bankruptcy Settlement Amount without any further action by any of the Parties.

4. **Release By The Picower Releasees.** In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under this Agreement, upon the Trustee's or the Government's receipt of funds up to the Bankruptcy Settlement Amount, each of the Picower Releasees, by having an authorized representative sign

4

a Release Subscription for each Picower Releasee, hereby releases, remits and forever discharges the Trustee and all his agents, BLMIS and its estate, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future, arising out of or in any way related to BLMIS. Subject to paragraph 6 hereof, the release contained herein shall become effective upon the Trustee's or the Government's actual receipt of funds up to the Bankruptcy Settlement Amount without any further action by any of the Parties.

5. <u>Dismissal Of Picower Adversary Proceeding</u>. Within six (6) business days of the earlier to occur of (a) the entry of the Final 9019 Order (as defined in Paragraph 6) by a court of competent jurisdiction, or (b) the Government's actual receipt of funds up to the Bankruptcy Settlement Amount, the Trustee will file a Notice of Dismissal dismissing the Picower Adversary Proceeding with prejudice and without costs to any of the Parties. From the date of this Agreement through the earliest to occur of (a) or (b) of this paragraph, the Picower Adversary Proceeding shall be stayed and no further actions may be taken by any of the Parties thereto.

6. <u>Bankruptcy Court Approval; Effective Date</u>. This Agreement is subject to, and shall become effective and binding on the Parties, upon the earliest to occur of (a) the entry of a final and non-appealable order by a court of competent jurisdiction approving the Trustee's Motion for Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving an Agreement By and Between the Trustee and the Picower Estate and Enjoining Certain Claims (the "Final 9019 Order"); or (b) the entry of a final and non-appealable order approving the Forfeiture Stipulation. Once this Agreement becomes effective and binding on the Parties hereto, all of the provisions herein, including the releases contained in paragraphs 3 and 4, shall become and remain effective and binding on the Parties, and shall remain in full force and effect, even if no Final 9019 Order ever is entered, and even if funds up to the Bankruptcy Settlement Amount are released to the Government under paragraph 6 of the Forfeiture Stipulation, and not to the Trustee under this Agreement. The only circumstance in which this Agreement shall *not* become effective and binding is in the event that no final and non-appealable orders are entered approving either the Final 9019 Order or the Forfeiture Stipulation. In such case, and only in such case, (i) the Forfeited Funds would be returned to the Estate, less any amounts paid by the Trustee to Mrs. Picower for or in reimbursement of tax payments made by Mrs. Picower during escrow of the Forfeited Funds; (ii) this Agreement, including the releases in paragraphs 3 and 4 hereof, would not take effect and would become null and void for all purposes; (iii) the stay of the Picower Adversary Proceeding would be lifted and the Trustee, on the one hand, and the Adversary Proceeding Defendants, on the other hand, would continue to litigate their respective claims and defenses in the Picower Adversary Proceeding; (iv) the Picower Customer Claims would not be withdrawn; and (v) the Parties could not use or rely on any statement herein in the Picower Adversary Proceeding or in any public statement or other litigation relating to BLMIS or Madoff.

7. <u>Permanent Injunction</u>. The Trustee shall use his reasonable best efforts to obtain approval of the Final 9019 Order as promptly as practicable after the date of this Agreement. The Final 9019 Order shall include an order by the Bankruptcy Court pursuant to, *inter alia*, section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065 (the

5

"Permanent Injunction Order"), permanently enjoining any customer or creditor of the BLMIS estate, anyone acting on their behalf or in concert or participation with them, or any person whose claim in any way arises from or relates to BLMIS or the Madoff Ponzi scheme, from asserting any claim against the Estate, the Picower BLMIS Accounts, the Picower Adversary Defendants or the Picower Releasees that is duplicative or derivative of any claim brought by the Trustee, or which could have been brought by the Trustee against the Estate, the Picower BLMIS Accounts, the Picower Adversary Defendants or the Picower Releasees (the "Permanent Injunction"). Following entry of the Final 9019 Order, the Trustee shall use his reasonable best efforts to oppose challenges, if any, to the scope, applicability or enforceability of the Permanent Injunction.

8. Cooperation. Upon reasonable request of the Trustee, Mrs. Picower agrees reasonably to cooperate with the Trustee in connection with any efforts to obtain approval of the Final 9019 Order and to enforce it to extinguish any claims that may be asserted in violation of the Final 9019 Order.

9. Withdrawal Of Claims. Each of the Picower Customer Claims shall be deemed withdrawn with prejudice when the releases in paragraphs 3 and 4 hereof become binding and effective, without any further action necessary by any of the Parties.

10. Termination Of BLMIS Account Agreements with BLMIS. All agreements between the Picower BLMIS Accounts and BLMIS shall be deemed terminated when the releases in paragraphs 3 and 4 hereof become binding and effective, without any further action necessary by any of the Parties

11. Authority. Mrs. Picower hereby represents and warrants to the Trustee as of the date hereof that she has the full power, authority and legal right to execute and deliver, and to perform obligations on behalf of the Picower Estate and the Picower BLMIS Accounts under this Agreement.

12. Further Assurances. The Trustee and Mrs. Picower shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

13. Entire Agreement. This Agreement constitutes the entire agreement and understanding between and among the Parties hereto and supersedes all prior agreements, representations and understandings concerning the subject matter hereof.

14. Amendments, Waiver. This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

15. Assignability. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

6

16. <u>Successors Bound</u>. This Agreement shall be binding upon and inure to the benefit of each of the Parties and the Picower Releasees, and on and their respective successors and permitted assigns.

17. <u>No Third Party Beneficiary</u>. Except as expressly provided in paragraphs 3 and 4, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties and the Picower Releasees and their respective successors and permitted assigns.

18. <u>No Admission of Liability or Wrongdoing</u>. By entering into this Agreement, Mrs. Picower does not admit and she expressly denies that she, Mr. Picower, the Picower BLMIS Accounts, the Picower Adversary Defendants, or any of the Picower Releasees have any liability to the Trustee, owe any sums to the Trustee other than sums up to the Bankruptcy Settlement Amount, or have any liability or owe any sums to any other persons or entities, other than to the Government under the terms of the Forfeiture Stipulation, arising from or related to BLMIS or the Madoff Ponzi scheme. Furthermore, Mrs. Picower does not admit and expressly denies that she, Mr. Picower, any of the Picower BLMIS Accounts, or any of the Picower Releasees engaged in any wrongdoing arising from or related to BLMIS or the Madoff Ponzi scheme, or had any knowledge thereof.

19. <u>Applicable Law</u>. This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

20. <u>Exclusive Jurisdiction</u>. The Parties agree that any action for breach or enforcement of this Agreement may be brought only in the Bankruptcy Court. No Party shall bring, institute, prosecute or maintain any action pertaining to the enforcement of any provision of this Agreement in any court other than the Bankruptcy Court.

21. <u>Captions and Rules Of Construction</u>. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

22. <u>Counterparts; Electronic Copy Of Signatures</u>. This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature. The Picower Releasees may evidence their execution of the Release Subscription by delivery to the Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

23. <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

7

| | |
|---|---|
| If to the Trustee: | If to Mrs. Picower or the Picower Releasees, c/o: |
| Irving H. Picard<br>E: ipicard@bakerlaw.com<br>Baker & Hostetler LLP<br>45 Rockefeller Center, Suite 1100<br>New York, NY 10111<br>F: (212) 589-4201 | William D. Zabel<br>E: william.zabel@srz.com<br>Schulte Roth & Zabel LLP<br>919 Third Avenue<br>New York, NY 10022<br>F: (212) 610-1459 |
| with copies to: | |
| David J. Sheehan<br>E: dsheehan@bakerlaw.com<br>Marc Hirschfield<br>E: mhirschfield@bakerlaw.com<br>Baker & Hostetler LLP<br>45 Rockefeller Center, Suite 1100<br>New York, NY 10111<br>F: (212) 589-4201 | Marcy Ressler Harris<br>E: marcy.harris@srz.com<br>Schulte Roth & Zabel LLP<br>919 Third Avenue<br>New York, NY 10022<br>F: (212) 593-5955 |

[*Signature page follows*]

8

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff

By: *Irving H. Picard*

Name: Irving H. Picard

Title: Trustee

ESTATE OF JEFFRY M. PICOWER

*Barbara Picower*

Barbara Picower, as Executor

## RELEASE SUBSCRIPTION

The undersigned is a "Picower Releasee" as defined in the Agreement dated as of December 17, 2010, by and among Irving H. Picard, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended, of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and Barbara Picower, as executor of the Estate of Jeffry M. Picower and on behalf of the Picower BLMIS Accounts, on the other hand. For and in consideration of the Trustee's release of the undersigned under paragraph 3 of the Agreement, the undersigned subscribes to the release set forth in paragraph 4 of the Agreement (and only to such release) with the same force and effect as if the undersigned were a party to the Agreement. By signing this Subscription, the undersigned does not become a Party to the Agreement and is not undertaking any rights or obligations under any other provisions of the Agreement, except that paragraphs 10, 19, 20, 22, and 23 of the Agreement apply to this Subscription as though such paragraphs were a part of this Subscription.

Dated _____, 201\_.

_____

By: _____
    Name:
    Title:

## ATTACHMENT A: PICOWER BLMIS ACCOUNTS

| Account Number | Account Name | Claim No. |
|---|---|---|
| 100407 | DECISIONS INC SPECIAL | |
| 100416 | JEFFRY M. PICOWER | |
| 101006 | JMP INVESTMENT CO | |
| 101007 | JEFFRY M. PICOWER | |
| 101017 | JMP PERSONAL | |
| 101607 | JEFFRY M. PICOWER | |
| 101610 | PICSON MANAGEMENT GROUP | |
| 101615 | JEFFRY M. PICOWER #2 | |
| 1C1006 | CAPITAL GROWTH COMPANY | 012674, 013298 |
| 1D0010 | DECISIONS INCORPORATED | |
| 1D0011 | DECISIONS INC #2 | |
| 1D0030 | DECISIONS INC #3 | |
| 1D0032 | DECISIONS INC #4 | |
| 1D0036 | DECISIONS INC #5 | |
| 1D0082 | DECISIONS INCORPORATED #6 | |
| 1E0123 | ACF SERVICES CORPORATION MONEY PURCHASE PENSION PLAN | 12672, 013401 |
| 1F0002 | FAVORITE FUND | |
| 1J0001 | JA PRIMARY LTD PARTNERSHIP | |
| 1J0002 | JAB PARTNERSHIP | 012670, 013311 |
| 1J0003 | JEMW PARTNERSHIP | 012673, 013299 |
| 1J0004 | J F PARTNERSHIP | 012677, 013400 |
| 1J0005 | JFM INVESTMENT CO | |
| 1J0008 | JLN PARTNERSHIP | 012676, 013649 |
| 1J0009 | JMP LIMITED PARTNERSHIP | |
| 1J0024 | JA SPECIAL LTD PARTNERSHIP | 012678, 013547 |
| 1M0046 | THE RETIREMENT INCOME PLAN FOR EMPLOYEES OF MONROE SYSTEMS FOR BUSINESS, INC. | |
| 1P0017 | THE PICOWER INSTITUTE FOR MEDICAL RESEARCH | |
| 1P0018 | TRUST FBO GABRIELLE H PICOWER | |
| 1P0019 | BARBARA PICOWER | 012675, 013312 |
| 1P0020 | TRUST FBO GABRIELLE H PICOWER | |
| 1P0021 | JEFFRY M PICOWER | 012669, 013313 |
| 1P0022 | JEFFRY M PICOWER, P. C. | |
| 1P0023 | JEFFRY M PICOWER SPECIAL CO | 012671, 013671 |
| 1P0024 | THE PICOWER FOUNDATION | 012939 |

ATTACHMENT B: FORFEITURE STIPULATION

08-01789-smb Doc 5810-2 Filed 03/11/14 Entered 03/11/14 15:01:48 Exhibit A Pg 20 of 20

## ATTACHMENT C: PICOWER RELEASEES

Jeffry M. Picower
Estate of Jeffry M. Picower
Barbara Picower as Executor of Estate of Jeffry M. Picower
Barbara Picower
Capital Growth Company
Favorite Fund
JA Primary Limited Partnership
JA Special Limited Partnership
JAB Partnership
JEMW Partnership
JF Partnership
JFM Investment Company
JLN Partnership
JMP Limited Partnership
Jeffry M. Picower Special Co.
Jeffry M. Picower, P.C.
Decisions Incorporated
Decisions Inc #2
Decisions Inc #3
Decisions Inc #4
Decisions Inc #5
Decisions Incorporated #6
The Picower Foundation
The Picower Institute for Medical Research
Gabrielle Picower
Trust FBO Gabrielle H. Picower
Trust FBO Abe Picower
Picson Management Group
Decisions Incorporated Special
Jeffry M. Picower D P Partnership
Jeffry M. Picower #2
Decisions Incorporated L Account
JMP Investment
Jeffry M. Picower, P.C. Employee Profit Sharing Plan
Jeffry M. Picower Money Purchase Pension Plan
Decisions Incorporated Money Purchase Pension Plan
Explanations Incorporated Money Purchase Pension Plan
April C. Freilich
ACF Services Corporation
ACF Services Corporation Money-Purchase Pension Plan
Apple Securities Management Incorporated
The Retirement Income Plan for Employees of Monroe Systems for Business, Inc.