# EXHIBIT B

## ESCROW AGREEMENT

## ESCROW AGREEMENT
### (Litigation Settlement Escrow)

THIS ESCROW AGREEMENT (as the same may be amended or modified from time to time pursuant hereto, this "Escrow Agreement") is made and entered into as of December 17, 2010, by and among Barbara Picower, as Executor of the Estate of Jeffry M. Picower (the "Estate Representative"), the United States Attorney's Office for the Southern District of New York, by Preet Bharara, United States Attorney (the "Government"), and Irving H. Picard, the SIPA Trustee ("SIPA Trustee") for the liquidation proceeding pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), of Bernard L. Madoff Investment Securities LLC and the substantively consolidated Chapter 7 case of Bernard L. Madoff ("Madoff"), and the Securities Investor Protection Corporation ("SIPC") (the SIPA Trustee, the Estate Representative, the Government, and, solely for purposes of Sections 5, 7-10, 12, and 13 but not any other Section of this Escrow Agreement, SIPC, each a "Party" and collectively, the "Parties"), and JPMorgan Chase Bank, National Association (the "Escrow Agent").

**WHEREAS**, in connection with entry into (i) a Stipulation and Order of Settlement (the "Stipulation") executed by and among the Estate Representative and the Government and (ii) an Agreement executed by and among the Estate Representative and the SIPA Trustee (the "Agreement"), the Estate Representative agreed to establish two escrow accounts ( collectively, the "Escrow Account") subject to the terms and conditions set forth herein.

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants hereinafter set forth, each of the Parties and the Escrow Agent agree as follows:

1.      **Appointment**. The Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

2.      **Total Forfeiture Fund.** The Estate Representative agrees to deposit with the Escrow Agent the sum of $7,206,157,717 (the "Escrow Deposit"). The Escrow Agent shall hold the Escrow Deposit in two non-interest bearing accounts, one in the name of "JPM AS ESC AGT FOR B PICOWER, AS EST EXEC OF J PICOWER, US GOVT, IRVING PICARD, AS SIPA TRUSTEE, AND SIPC" in the amount of $2,206,157,717 (the "Settlement Funds") and one in the name of "JPM AS ESC AGT FOR B PICOWER, AS EST EXEC OF J PICOWER, US GOVT, IRVING PICARD, AS SIPA TRUSTEE, AND SIPC" in the amount of $5,000,000,000 (the "Bankruptcy Settlement Amount"), and, subject to the terms and conditions hereof, shall invest and reinvest the Escrow Deposit and the proceeds thereof (the "Total Forfeiture Fund") as directed in Section 3. The Escrow Agent agrees to hold the Total Forfeiture Fund as Escrow Agent for the Estate Representative, the SIPA Trustee, and the Government subject to the terms and conditions of this Escrow Agreement. The Escrow Agent shall not distribute or release the Total Forfeiture Fund except in accordance with the express terms and conditions of this Escrow Agreement.

3.      **Investment of Total Forfeiture Fund.** During the term of this Escrow Agreement, the Total Forfeiture Fund shall be invested in obligations issued or guaranteed by the United States of America. The Settlement Funds shall be invested by the Escrow Agent in overnight repurchase agreements to the extent possible, and segregated from the remainder of the Total Forfeiture Fund. The Bankruptcy Settlement Amount shall be invested in United States Treasury securities with a maturity of ninety days if possible and if not, shall remain in the applicable account. The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Total Forfeiture Fund or the purchase, sale, retention or other disposition of any investment described herein. The Escrow Agent shall not have any liability for any loss sustained as a result of any investment made pursuant to the terms of this Escrow Agreement or for the failure of the Parties  to give the Escrow Agent instructions to invest or reinvest the Total Forfeiture Fund. The Escrow Agent shall have the right to liquidate any

1

investments held only in order to provide funds necessary to make required payments under Section 4 of this Escrow Agreement.

4.      **Disposition and Termination.** (a) Within two (2) Business Days after receipt (and confirmation of instructions pursuant to Section 11) by the Escrow Agent of a Notice for Release of Settlement Funds in the form of Exhibit A hereto, duly executed by the Estate Representative and an authorized representative of the Government, and attaching a copy of the Stipulation that has been "so ordered" by the United States District Court for the Southern District of New York (the "Court"), the Escrow Agent shall release the Settlement Funds plus any interest or appreciation that has been accrued and paid and is attributable to the Settlement Funds, by wire of same day funds to the accounts maintained by the United States Marshals Service, or to such other accounts that may be designated by the Government (the "USMS Accounts").

(b)      Within [two (2)] Business Days after receipt (and confirmation of instructions pursuant to Section 11) by the Escrow Agent of a Notice for Release of the Bankruptcy Settlement Amount in the form of Exhibit B hereto, duly executed by the Estate Representative and the SIPA Trustee and (a) attaching a final, non-appealable order of the Bankruptcy Court or another court of competent jurisdiction approving the Agreement by and between the SIPA Trustee and the Estate Representative (the "Bankruptcy Settlement"), or (b) attaching a final, non-appealable order of forfeiture, whichever occurs first, the Escrow Agent shall release the Bankruptcy Settlement Amount to an account maintained by the SIPA Trustee (the "SIPA Trustee Account").

(c)      If the Settlement Funds previously have been released to the USMS Account pursuant to Section 4(a) above, and (i) the Bankruptcy Settlement Amount has been released by the Escrow Agent to the SIPA Trustee in accordance with Section 4(b), (ii) no order was entered by the Bankruptcy Court prior to the entry of a final, non-appealable order of forfeiture, or (iii) a final non-appealable order was entered rejecting the Bankruptcy Settlement, the Escrow Agent shall transfer within two (2) Business Days after receipt (and confirmation of instructions pursuant to Section 11) by the Escrow Agent of a Notice for Release of Forfeited Funds any and all funds in the Escrow Account to the USMS Account in accordance with the instructions set forth in Section 4(a) above, and shall terminate the Escrow Account. For the avoidance of doubt, such funds shall include, in the events described in clause (i) hereof, any interest or appreciation that has been accrued and paid and is attributable to the Bankruptcy Settlement Amount. If the events described in paragraphs (ii) or (iii) occur, any funds up to the Bankruptcy Settlement Amount that were transferred to the Trustee by the Escrow Agent pursuant to Section 4(b) will be, to the extent they have not been distributed by the Trustee, transferred to the USMS Account from the SIPA Trustee Account in accordance with the Stipulation, and consistent with SIPA and the forfeiture laws, in same day funds, within five (5) business days of receipt of instructions from the Government by the Trustee.

(d)      In the event that the Stipulation has been approved by the District Court, but (a) the Bankruptcy Settlement Amount has not been paid to the SIPA Trustee pursuant to the terms of the Bankruptcy Settlement within three years of the date hereof, or (b) the Bankruptcy Settlement is rejected by a final and non-appealable order, whichever is sooner, then within five business days thereof, the Government and the Estate Representative shall each execute a Notice For Release of Forfeited Funds, in the form annexed to the Escrow Agreement as Exhibit C. Within two (2) Business Days after receipt (and confirmation of instructions pursuant to Section 11) by the Escrow Agent of a fully-executed Notice for Release of Forfeited Funds, the Escrow Agent shall transfer to the USMS Account any remaining funds in the Escrow Account, including the Bankruptcy Settlement Amount plus any interest or appreciation that has been accrued and paid and is attributable to the Bankruptcy Settlement Amount, by wire in same day funds to the USMS Account, for forfeiture in accordance with the instructions in the Stipulation. The Escrow Agent shall thereafter terminate the Escrow Accounts.

(e)      For the avoidance of doubt, any order of any court shall be considered final and non-appealable for purposes of the Stipulation, the Agreement, and this Escrow Agreement only when (i) the time to appeal such order has expired, or (ii) if any appeal of such order has been taken, any and all such appeals have been fully and finally resolved without material modification of the order.

5.      **Escrow Agent.** (a) The Escrow Agent shall have only those duties as are specifically and expressly provided herein, which shall be deemed purely ministerial in nature, and no other duties shall be implied. The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to

2

comply with, the terms and conditions of any other agreement, instrument or document between the Parties, in connection herewith, if any, including without limitation the Stipulation and/or the Agreement, nor shall the Escrow Agent be required to determine if any person or entity has complied with any such agreements, nor shall any additional obligations of the Escrow Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Escrow Agreement. The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, document, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper Party or Parties without inquiry and without requiring substantiating evidence of any kind. The Escrow Agent shall not be liable to any Party, any beneficiary or other person for refraining from acting upon any instruction setting forth, claiming, containing, objecting to, or related to the transfer or distribution of the Total Forfeiture Fund, or any portion thereof, unless such instruction shall have been delivered to the Escrow Agent in accordance with Section 11 below and the Escrow Agent has been able to satisfy any applicable security procedures as may be required thereunder. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request. The Escrow Agent shall have no duty to solicit any payments which may be due it or the Total Forfeiture Fund, including, without limitation, the Escrow Deposit, nor shall the Escrow Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder, provided, however, that nothing in this Section 5(a) is intended to relieve the Escrow Agent of any duties or obligations arising under Section 11 of this Escrow Agreement.

(b)     The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in good faith except to the extent such conduct constitutes gross negligence or willful misconduct. The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through affiliates or agents. The Escrow Agent may consult with counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in accordance with, or in reliance upon, the advice or opinion of any such counsel, accountants or other skilled persons. In the event that the Escrow Agent shall be uncertain or believe there is some ambiguity as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall refrain from taking any action and its sole obligation shall be to keep safely the Total Forfeiture Fund until it shall be given a direction in writing by the Parties which eliminates such ambiguity or uncertainty to the satisfaction of Escrow Agent or by a final and non-appealable order or judgment of a court of competent jurisdiction. The Parties agree to pursue any redress or recourse in connection with any dispute between or among the Parties without making the Escrow Agent a party to the same. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

6.     **Succession.** (a) The Escrow Agent may resign and be discharged from its duties or obligations hereunder by giving ninety (90) days advance notice in writing of such resignation to the Parties, specifying a date when such resignation shall take effect. If the Parties have failed to appoint a successor escrow agent prior to the expiration of ninety (90) days following receipt of the notice of resignation, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon all of the Parties hereto. Escrow Agent's sole responsibility after such ninety (90) day notice period expires shall be to hold the Total Forfeiture Fund (without any obligation to reinvest the same) and to deliver the same to a designated substitute escrow agent, if any, or in accordance with the directions of a final order or judgment of a court of competent jurisdiction, at which time of delivery Escrow Agent's obligations hereunder shall cease and terminate. In accordance with Section 7, the Escrow Agent shall have the right to repayment of an amount equal to any amount due and owing to the Escrow Agent, plus any costs and expenses the Escrow Agent shall reasonably believe may be incurred by the Escrow Agent in connection with the termination of this Escrow Agreement.

(b)     The Escrow Agent may be removed (with or without cause) and a new escrow agent appointed by an agreement by and between the Government and the SIPA Trustee. In such event, the Government the SIPA Trustee shall deliver ten (10) days advance written notice to the Escrow Agent and the Estate Representative of such removal together with written instructions authorizing delivery of this Escrow Agreement together with the Total

3

Forfeiture Fund and any interests earned thereon, and any and all related instruments or documents to a successor escrow agent.

(c)    Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

7.    **Compensation and Reimbursement.**  SIPC agrees to advance to the SIPA Trustee, in accordance with SIPA, and the SIPA Trustee agrees to pay to the Escrow Agent funds sufficient to pay or reimburse the Escrow Agent's written requests for repayment submitted to the SIPA Trustee, for all expenses, disbursements and advances, including, without limitation, reasonable attorney's fees and expenses, incurred or made by the Escrow Agent in connection with (a) the establishment of the Escrow Account and the execution of this Escrow Agreement and (b) the performance of services under this Escrow Agreement, including reasonable compensation for services rendered hereunder, along with any fees or charges for accounts, including those levied by any governmental authority which the Escrow Agent may impose, charge or pass-through, which unless otherwise agreed in writing, shall be described in Schedule 2 attached hereto.  The obligations set forth in this Section 7 (such amounts, the "Escrow Costs") shall survive the termination of this Escrow Agreement and the resignation, replacement or removal of the Escrow Agent.

8.    **Indemnity.**  SIPC shall indemnify, defend and save harmless the Escrow Agent and its affiliates and their respective successors, assigns, agents and employees (the "Indemnitees") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, litigation, investigations, costs or expenses (including, without limitation, the reasonable and documented fees and expenses of outside counsel and experts and their staffs and all expense of document location, duplication and shipment) (collectively "Losses") arising out of or in connection with (i) the Escrow Agent's execution of and performance under this Escrow Agreement, including for tax reporting or withholding, the enforcement of any rights or remedies under or in connection with this Escrow Agreement, or as may arise by reason of any act, omission or error of the Indemnitee, except in the case of any Indemnitee to the extent that such Losses are finally adjudicated by a court of competent jurisdiction to have been caused by the gross negligence or willful misconduct of such Indemnitee, or (ii) its following any instructions or other directions, whether joint or, to the extent expressly permitted by this Escrow Agreement, singular, from the Parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof.  The indemnity obligations set forth in this Section 8(a) shall survive the resignation, replacement or removal of the Escrow Agent or the termination of this Escrow Agreement.

9.    **Patriot Act Disclosure/Taxpayer Identification Numbers/Tax Reporting.**

**Patriot Act Disclosure.**  (a) Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it. Accordingly, the Parties acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the Parties identity including without limitation name, address and organizational documents ("identifying information"). The Parties agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

(b)    Prior to the date, if any, upon which a final and non-appealable order of forfeiture is entered, all interest or other income earned on the Total Forfeiture Fund shall be allocated, solely for tax purposes, to the Estate Representative in accordance with applicable law, and such allocated income shall be reported, as and to the extent required by law, by the Escrow Agent to the IRS, or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow Deposit by the Estate Representative as if such income had been distributed during such year, notwithstanding that such income has not been so distributed.  Any other tax returns required to be filed will be prepared and filed by the Estate Representative with the IRS and any other taxing authority as required by law.  The Parties acknowledge and agree that the Escrow Agent shall have no responsibility

4

for the preparation and/or filing of any income, franchise or any other tax return with respect to the Escrow Account or the Total Forfeiture Fund or for any income earned by the Escrow Deposit. The Parties further acknowledge and agree that SIPC agrees to advance to the SIPA Trustee, in accordance with SIPA, and the SIPA Trustee agrees to pay to the Estate Representative, funds sufficient to pay or reimburse the Estate Representative's written requests for payment or repayment submitted to the SIPA Trustee for amounts equal to the taxes payable, on a quarterly basis, with respect to the income reported on IRS Form 1099 or 1042S (or such other appropriate form) as income earned on the investment of any sums held in the Total Forfeiture Fund for such quarter, which taxes shall in turn be paid by the Estate Representative with such tax distribution. The Escrow Agent shall not be responsible for calculating any amounts due to the Estate Representative under the foregoing sentence  The Escrow Agent shall withhold any taxes it deems appropriate from any distributions made pursuant to this Escrow Agreement, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities.   The Escrow Agent shall provide the Estate Representative with customary information rights and access to the Escrow Account, including information related to income earned on the Escrow Deposit, to permit the Estate Representative to prepare any tax or other filing deemed necessary or advisable by the Estate Representative with respect to the Total Forfeiture Fund, the Escrow Deposit or the Escrow Accounts.

10.     **Notices.**  All communications hereunder shall be in writing and except for communications from the Parties setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of funds, including but not limited to funds transfer instructions (all of which shall be specifically governed by Section 11 below), shall be deemed to be duly given when sent:

    (a) by facsimile;
    (b) by overnight courier; or
    (c) by prepaid registered mail, return receipt requested;

to the appropriate notice address set forth below or at such other address as any Party hereto may have furnished to the other Parties in writing by registered mail, return receipt requested.

| | |
|---|---|
| If to Estate Representative | Barbara Picower, as Executor of the Estate of Jeffry M. Picower<br>c/o Schulte Roth & Zabel LLP<br>919 Third Avenue<br>New York, New York 10022<br>Attention:  Marcy R. Harris, Esq.<br>Tel No.: (212) 756-2000<br>Fax No.: (212) 593-5955 |
| If to Government | United States Attorney's Office<br>Southern District of New York<br>One St. Andrew's Plaza<br>New York, New York 10007<br>Attention:  Matthew L. Schwartz<br>Tel No.: (212) 637-1945<br>Fax No.: (212) 637-2937 |
| If to the SIPA Trustee | Irving H. Picard, as Trustee<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Attention:  David J. Sheehan<br>Tel No.: (212) 589-4616<br>Fax No.: (212) 589-4201 |
| If to SIPC | Securities Investor Protection Corporation<br>805 Fifteenth Street, N.W. |

5

Suite 800
Washington, DC 20005
Attention: Josephine Wang
Tel No.: (202) 371-8300
Fax No.: (202) 371-6728

If to the Escrow Agent     JPMorgan Chase Bank, N.A.
Escrow Services
4 New York Plaza
21st Floor
New York, New York 10004
Attention: Christopher Fasouletos/Greg Kupchynsky
Fax No.: 212- 623- 6168

Notwithstanding the above, in the case of communications delivered to the Escrow Agent, such communications shall be deemed to have been given on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the above-referenced office. For purposes of this Escrow Agreement, "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the notice address set forth above is authorized or required by law or executive order to remain closed.

11.    **Security Procedures.** (a) Notwithstanding anything to the contrary as set forth in Section 10, any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of funds, including but not limited to any such funds transfer instructions that may otherwise be set forth in a written instruction permitted pursuant to Section 4 of this Escrow Agreement, may be given to the Escrow Agent only by confirmed facsimile and no instruction for or related to the transfer or distribution of the Total Forfeiture Fund, or any portion thereof, shall be deemed delivered and effective unless the Escrow Agent actually shall have received such instruction by facsimile at the number provided to the Parties by the Escrow Agent in accordance with Section 10 and as further evidenced by a confirmed transmittal to that number.

(b) In the event funds transfer instructions, including funds transfer instructions in the form annexed hereto in Exhibits A and B, are so received by the Escrow Agent by facsimile, the Escrow Agent shall seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule 1 hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. Each funds transfer instruction shall be executed by an authorized signatory identified on the list of such authorized signatories set forth on Schedule 1 hereto. The persons and telephone numbers for authorized signatures and call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. If the Escrow Agent is unable to contact any of the authorized signatories identified in Schedule 1, the Escrow Agent is hereby authorized both to receive written instructions from and seek confirmation of such instructions by telephone call-back to, for the Government, the Chief of the Asset Forfeiture Unit, United States Attorney's Office for the Southern District of New York, (212) 637-2800; and for the SIPA Trustee, Marc E. Hirschfield, Esq., Baker & Hostetler LLP, (212) 589-4610. The Escrow Agent may rely upon the confirmation of anyone purporting to be such person. The Escrow Agent may rely solely upon any account numbers or similar identifying numbers provided by the Parties to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank. The Parties acknowledge that the security procedures set forth in this Section 11 are commercially reasonable.

12.    **Compliance with Court Orders.** In the event that any funds in the Escrow Account shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Escrow Agreement, the Escrow Agent is hereby directed to promptly notify the Parties to this Escrow Agreement and to cooperate with any r easonable request of any or all of the Parties to oppose, challenge or vacate such attachment, garnishment, levy or court order, judgment or decree. Notwithstanding the foregoing, the Escrow Agent shall be authorized, in its reasonable discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and shall make reasonable best efforts to notify the Parties as set forth in the preceding

6

paragraph prior to doing so. In the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the Parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

13.    **Miscellaneous.** (a)(i) Until such time as entry of (A) a final non-appealable order regarding forfeiture, or (B) a final non-appealable order approving the Bankruptcy Settlement, the provisions of this Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by the Escrow Agent and the Parties. (ii) Upon entry of (A) a final non-appealable order regarding forfeiture final, or (B) a final non-appealable order approving the Bankruptcy Settlement, whichever is earlier, the provisions of this Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by the Escrow Agent, the Government, the SIPA Trustee, and SIPC. Neither this Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by the Escrow Agent or any Party, except as provided in Section 6, without the prior consent of the Escrow Agent and the other Parties.

(b)    This Escrow Agreement and any claim related directly or indirectly to this Escrow Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the United States, or to the extent that state law controls, the laws of the State of New York. Each Party and the Escrow Agent irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds. No claim shall be commenced, prosecuted, or continued in any forum other than the United States District Court for the Southern District of New York or the United States Bankruptcy Court for the Southern District of New York and, to the extent those courts lack jurisdiction, in the courts of the State of New York located in the City and County of New York, and each of the Parties and the Escrow Agent hereby submits to the jurisdiction of such courts, except that the Government does not submit to jurisdiction of the courts of the State of New York. The Parties and the Escrow Agent hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Parties and the Escrow Agent further hereby waives all right to a trial by jury in any action, lawsuit, proceeding or counterclaim (whether based on contract, tort, or otherwise) arising or relating to this Escrow Agreement. To the extent that in any jurisdiction, the Estate Representative, the SIPA Trustee, or SIPC may now or hereafter be entitled to claim for itself or its assets, immunity from suit, execution, attachment (before or after judgment) or other legal process, such party shall not claim, and it hereby irrevocably waives, such immunity only insofar as it relates to or arises out of this Escrow Agreement.

(c)    No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

(d)    This Escrow Agreement and its Exhibits and Schedules may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the parties to this Escrow Agreement or its Exhibits or Schedules may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

(e)    If any provision of this Escrow Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction. A person who is not a party to this Escrow Agreement shall have no right to enforce any term of this Escrow Agreement. The Parties represent, warrant and covenant that each document, notice, instruction or request provided by such Party to Escrow Agent shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the Parties hereto to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written. Except as expressly provided in Section 8 above, nothing in this Escrow Agreement, whether express or implied, shall be construed to give to any person or entity other than the Escrow Agent and the Parties any legal or equitable right, remedy, interest or claim under or in respect of this Escrow Agreement or any funds escrowed hereunder.

7

IN WITNESS WHEREOF, the Parties hereto have executed this Escrow Agreement as of the date set forth above.

ESTATE OF JEFFRY M. PICOWER,
Barbara Picower, as Executor

By: _Barbara Picower_ as Executor


PREET BHARARA
United States Attorney
Attorney for the United States of America

By:_____

Name:_____

Title:_____


IRVING H. PICARD, as Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L. Madoff

By:_____

Name: Irving H. Picard

Title: Trustee


SECURITIES INVESTOR PROTECTION CORPORATION,
(Only as to Sections 5, 7-10, 12, and 13)

By:_____

Name:_____

Title:_____


JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
as Escrow Agent

By:_____

Name:_____

Title:_____


8

IN WITNESS WHEREOF, the Parties hereto have executed this Escrow Agreement as of the date set forth above.

ESTATE OF JEFFRY M. PICOWER,
Barbara Picower, as Executor

By: _____, ___ as Executor


PREET BHARARA
United States Attorney
Attorney for the United States of America

By: _____

Name: Matthew L. Schwartz

Title:  Assistant United States Attorney


IRVING H. PICARD, as Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L. Madoff

By: _____

Name:  Irving H. Picard

Title:  Trustee


SECURITIES INVESTOR PROTECTION CORPORATION,
(Only as to Sections 5, 7-10, 12, and 13)

By: _____

Name: Stephen Harbeck

Title:  President and CEO


JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
as Escrow Agent

By: _____

Name: _____

Title: _____


8

IN WITNESS WHEREOF, the Parties hereto have executed this Escrow Agreement as of the date set forth above.

ESTATE OF JEFFRY M. PICOWER,
Barbara Picower, as Executor

By: _____, ___ as Executor


PREET BHARARA
United States Attorney
Attorney for the United States of America

By: _____

Name: Matthew L. Schwartz _____

Title: Assistant United States Attorney ___


IRVING H. PICARD, as Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L. Madoff

By: _____

Name: Irving H. Picard _____

Title: Trustee _____


SECURITIES INVESTOR PROTECTION CORPORATION,
(Only as to Sections 5, 7-10, 12, and 13)

By: _____

Name: Stephen Harbeck _____

Title: President and CEO_____


JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
as Escrow Agent

By: _____

Name: _____

Title: _____

8

IN WITNESS WHEREOF, the Parties hereto have executed this Escrow Agreement as of the date set forth above.

ESTATE OF JEFFRY M. PICOWER,
Barbara Picower, as Executor

By:_____, ___ as Executor


PREET BHARARA
United States Attorney
Attorney for the United States of America

By:_____

Name: Matthew L. Schwartz_____

Title: Assistant United States Attorney___


IRVING H. PICARD, as Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L. Madoff

By:_____

Name: Irving H. Picard_____

Title: Trustee_____


SECURITIES INVESTOR PROTECTION CORPORATION,
(Only as to Sections 5, 7-10, 12, and 13)

By:_____

Name: Stephen Harbeck_____

Title: President and CEO_____


JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
as Escrow Agent

By:_____

Name: P. Kelly_____

Title: Executive Director_____

8

## SCHEDULE 1

**Telephone Number(s) and authorized signature(s) for
<u>Person(s) Designated to give and confirm Instructions</u>**

[REDACTED]

### _Fee Schedule_

Based upon our current understanding of your proposed transaction, our fee proposal is as listed below. Please note that the fees quoted are based on a review of the transaction documents provided and an internal due diligence review.

**Account Acceptance Fee \*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ~~$5,000~~  _Waived_

_**Encompassing review**_, negotiation and execution of governing documentation, opening of the account, and completion of all due diligence documentation. \* Payable upon closing.

**Annual Administration Fee \*\*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$10,000**

_**The Administration Fee**_ covers our usual and customary ministerial duties, including record keeping, distributions, document compliance and such other duties and responsibilities expressly set forth in the governing documents for each transaction.

\*\* _Payable upon closing and annually in advance thereafter, without pro-ration for partial years_

**Annual Collateral Fee _(Only Applicable to the extent that a non-J.P. Morgan Investment Vehicle is selected)_** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1.5 bps \*\*\***

**For all Escrow Balances** not held in a J.P. Morgan Money Market Deposit Account and / or a J.P. Morgan Mutual Fund, an annual fee applies at highest collateral balance held.

\*\*\* _Fee is payable quarterly in arrears based on the highest balance held during such quarter._

**Additional Charges**

**Standard Escrow Legal Fees & Contract Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _Waived_

**Account Transaction Fees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _Waived_

**Investment Sweep Fees** _(if applicable)_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ._Waived_

Including, but not limited to, deposits, disbursements, book transfers, etc.. The Parties acknowledge and agree that they are permitted by U.S. law to make up to six (6) pre-authorized withdrawals or telephonic transfers from an MMDA per calendar month or statement cycle or similar period. If the MMDA can be accessed by checks, drafts, bills of exchange, notes and other financial instruments ("Items"), then no more than three (3) of these six (6) transfers may be made by an Item. The Escrow Agent is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a money market deposit account.

**Account Statement Fees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _Waived_

**1099 Tax Reporting Fees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _Waived_

**Extraordinary Expenses** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _At Cost_

_**Any reasonable**_ out-of-pocket expenses including attorney's fees required outside of the scope of typical Escrow requirements will be considered extraordinary services for which related costs, transaction charges, and additional fees will be billed at cost.

**Modification of Fees**

Circumstances may arise necessitating a change in the foregoing fee schedule. The Bank will maintain the fees at a level that is fair and reasonable in relation to the responsibilities assumed and the duties performed.

10

EXHIBIT A

NOTICE FOR RELEASE OF SETTLEMENT FUNDS

to

JPMorgan Chase Bank, National Association
as Escrow Agent

> *Each of the undersigned, Barbara Picower, as executor of the Estate of Jeffry M. Picower (the
> "Estate Representative") and the United States Attorney's Office for the Southern District of
> New York, by Preet Bharara, United States Attorney (the "Government"), pursuant to
> Sections 4(a)) of the Escrow Agreement dated December __, 2010 among the Estate
> Representative, the Government, Irving H. Picard, as Trustee for the Substantively
> Consolidated Liquidation of Bernard L. Madoff Investment Securities and Bernard L. Madoff,
> and you (terms defined in the Escrow Agreement have the same meanings when used herein),
> hereby:*

(a) certifies that attached hereto is a copy of the Stipulation that has been "so ordered" by
the United States District Court for the Southern District of New York; and

(b) instructs you to (i) release and pay the Settlement Funds, in the amount of
$2,206,157,717, and any interest or appreciation that has been accrued or paid attributable to the
Settlement Funds by wire of same day funds to the USMS Accounts as set forth below, within
two Business Days of your receipt (and confirmation of instructions pursuant to Section 11) of
this Certificate.

(c) USMS Wire Transfer Instructions:

> ABA #021030004
> ALC #00008154
> U.S. Marshals Service
> c/o Federal Reserve Bank of New York
> 33 Liberty Street
> New York, New York 10045
> Reference: _____

11

**IN WITNESS WHEREOF**, the parties hereto have executed this Notice of Release of
Forfeiture Funds as of the date set forth below.

**ESTATE OF JEFFRY M. PICOWER**


By:_____,        as
    Executor

Name:_____


**UNITED STATES OF AMERICA**

By:_____

Name:_____

Title: _____

Dated: _____, _____

12

EXHIBIT B

NOTICE FOR RELEASE OF FUNDS CONSTITUTING
THE BANKRUPTCY SETTLEMENT AMOUNT

to

JPMorgan Chase Bank, National Association
as Escrow Agent

---

*Each of the undersigned, Barbara Picower, as executor of the Estate of Jeffry M. Picower (the "Estate Representative"), and Irving H. Picard, as Trustee for the Substantively Consolidated Liquidation of Bernard L. Madoff Investment Securities and Bernard L. Madoff, (the "SIPA Trustee"), pursuant to Section 4(b) and 4(c) of the Escrow Agreement dated as of December __, 2010 among the Estate Representative, the SIPA Trustee, the United States Attorney's Office for the Southern District of New York, by Preet Bharara, United States Attorney, and you (terms defined in the Escrow Agreement have the same meanings when used herein), hereby:*

---

(a) certifies that attached hereto is (i) a final, non-appealable order of the Bankruptcy Court or another court of competent jurisdiction approving the Bankruptcy Settlement, or (ii) a final, non-appealable order of forfeiture; and

(b) instructs you to release the Bankruptcy Settlement Amount, in the amount of $5,000,000,000, by wire of same day funds to the SIPA Trustee Account as set forth below, within two Business Days of your receipt (and confirmation of instructions pursuant to Section 11) of this Certificate.

(c) SIPA Trustee Account Instructions:

    Bank Name

    ABA#
    Account #
    Account Name

**IN WITNESS WHEREOF**, the parties hereto have executed this Notice for Release of Funds Constituting the Bankruptcy Settlement Amount as of the date set forth below.

### ESTATE OF JEFFRY M. PICOWER

By:_____, as Executor

Name:_____

### SIPA TRUSTEE

By:_____

Name:_____

Title: _____

Dated: _____, ____

14

EXHIBIT C

NOTICE FOR RELEASE OF FORFEITED FUNDS

to

JPMorgan Chase Bank, National Association
as Escrow Agent

*Each of the undersigned, Barbara Picower, as executor of the Estate of Jeffry M. Picower (the "Estate Representative") and the United States Attorney's Office for the Southern District of New York, by Preet Bharara, United States Attorney (the "Government"), pursuant to Section 4(b) of the Escrow Agreement dated as of December __, 2010 among the Estate Representative, the Government, and Irving H. Picard, as Trustee for the Substantively Consolidated Liquidation of Bernard L. Madoff Investment Securities and Bernard L. Madoff (the "SIPA Trustee"), and you (terms defined in the Escrow Agreement have the same meanings when used herein), hereby:*

(a) certifies that attached hereto is a copy of the final, non-appealable order of forfeiture; and

(b) instructs you to release and pay any and all funds in the Escrow Account by wire of same day funds to the USMS Account as set forth below, within two Business Days of your receipt (and confirmation of instructions pursuant to Section 11) of this Certificate.

(c) USMS Wire Transfer Instructions:

ABA #021030004
ALC #00008154
U.S. Marshals Service
c/o Federal Reserve Bank of New York
33 Liberty Street
New York, New York 10045
Reference: _____

15

**IN WITNESS WHEREOF**, the parties hereto have executed this Notice for Release of Forfeited Funds Constituting the Bankruptcy Settlement Amount as of the date set forth below.

**ESTATE OF JEFFRY M. PICOWER**

By:_____, as Executor

Name:_____

**UNITED STATES OF AMERICA**

By:_____

Name:_____

Title: _____

Dated: _____, ____

16

## ATTACHMENT C: PICOWER RELEASEES

Jeffry M. Picower
Estate of Jeffry M. Picower
Barbara Picower as Executor of Estate of Jeffry M. Picower
Barbara Picower
Capital Growth Company
Favorite Fund
JA Primary Limited Partnership
JA Special Limited Partnership
JAB Partnership
JEMW Partnership
JF Partnership
JFM Investment Company
JLN Partnership
JMP Limited Partnership
Jeffry M. Picower Special Co.
Jeffry M. Picower, P.C.
Decisions Incorporated
Decisions Inc #2
Decisions Inc #3
Decisions Inc #4
Decisions Inc #5
Decisions Incorporated #6
The Picower Foundation
The Picower Institute for Medical Research
Gabrielle Picower
Trust FBO Gabrielle H. Picower
Trust FBO Abe Picower
Picson Management Group
Decisions Incorporated Special
Jeffry M. Picower D P Partnership
Jeffry M. Picower #2
Decisions Incorporated L Account
JMP Investment
Jeffry M. Picower, P.C. Employee Profit Sharing Plan
Jeffry M. Picower Money Purchase Pension Plan
Decisions Incorporated Money Purchase Pension Plan
Explanations Incorporated Money Purchase Pension Plan
April C. Freilich
ACF Services Corporation
ACF Services Corporation Money-Purchase Pension Plan
Apple Securities Management Incorporated
The Retirement Income Plan for Employees of Monroe Systems for Business, Inc.