# EXHIBIT H

Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Adversary Case No. 08-01789-brl

5   - - - - - - - - - - - - - - - - - - - - - - -x

6   SECURITIES INVESTOR PROTECTION CORPORATION,

7                           Plaintiff,

8                 v.

9   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,

10                          Defendant.

11  - - - - - - - - - - - - - - - - - - - - - - -x

12

13              United States Bankruptcy Court

14              One Bowling Green

15              New York, New York

16

17              January 13, 2011

18              11:18 AM

19

20

21

22  B E F O R E :

23  HON. BURTON R. LIFLAND

24  U.S. BANKRUPTCY JUDGE

25

Page 2

1

2   HEARING re Objection to Motion by Trustee to Approve Settlement

3   Agreement with Picower BLMIS Account Holders and Cross-Motion

4   to Adjourn Hearing and for Leave to Take Discovery filed by

5   Laurence May on behalf of Adele Fox. with hearing to be held on

6   1/13/2011 at 10:00 AM at Courtroom 623 (BRL) (Attachments: #

7   (1) Exhibit A - Fox Plaintiffs' Appellate Brief# (2) Exhibit

8   B - Fox Plaintiffs' Discovery Request).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Transcribed by:  Pnina Eilberg

25

Page 3

```
 1

 2   A P P E A R A N C E S :

 3   BAKER & HOSTETLER LLP

 4         Attorneys for Trustee

 5         45 Rockefeller Plaza

 6         New York, NY 10111

 7

 8   BY:   DAVID J. SHEEHAN, ESQ.

 9

10

11   SECURITIES INVESTOR PROTECTION CORPORATION (SIPC)

12         805 15th Street N.W.

13         Suite 800

14         Washington, DC 20005

15

16   BY:   MS. JOSEPHINE WANG, ESQ.

17

18

19   BECKER & POLIAKOFF

20         Attorneys for Marshall Claimants and Other Claimants

21         45 Broadway

22         11th Floor

23         New York, NY 10006

24

25   BY:   HELEN DAVIS CHAITMAN, ESQ.
```

1

2    COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

3         Attorneys for Adele Fox and Fox Plaintiff Class

4         900 Third Avenue

5         16th Floor

6         New York, NY 10022

7

8    BY:   LAURENCE MAY, ESQ.

9          JOHN H. DRUCKER, ESQ.

10

11

12   SCHULTE ROTH & ZABEL LLP

13        Attorneys for Picower BLMIS Account Holders

14        919 Third Avenue

15        New York, NY 10022

16

17   BY:   MARCY RESSLER HARRIS, ESQ.

18         WILLIAM D. ZABEL, ESQ.

19

20

21   SANDAK HENNESSEY & GRECO LLP

22        707 Summer Street

23        Stamford, CT 06901

24

25   BY:   MARC J. KURZMAN, ESQ.

08-01789-smb   Doc 5810-10   Filed 02/11/14   Entered 02/11/14 15:01:48   Exhibit H
SIPC v. BERNARD L MADOFF INVESTMENT SECURITIES
Pg 6 of 44

Page 5

```
 1                 P R O C E E D I N G S

 2           MR. SHEEHAN:  Good morning, Your Honor.  David Sheehan

 3   with Baker Hostetler on behalf of Irving H. Picard, the Trustee

 4   for Bernard L. Madoff Investment Securities LLC.

 5           MS. WANG:  Good morning, Your Honor.  Josephine Wang

 6   for the Securities Investor Protection Corporation.

 7           MS. DAVIS CHAITMAN:  Good morning, Your Honor.  Helene

 8   Davis Chaitman of Becker & Poliakoff on behalf of what we've

 9   called the Marshall plaintiffs and other claimants whose claims

10   have not been allowed by the trustee.

11           MR. MAY:  Good morning, Your Honor.  Laurence May of

12   Cole Schotz, we represent Adele Fox and members of the Fox

13   plaintiff class.

14           MR. DRUCKER:  Good morning, Your Honor.  John Drucker,

15   also from Cole Schotz, also on behalf of the Fox plaintiffs.

16           MS. HARRIS:  Good morning.  Marcy Harris and William

17   Zabel from Schulte Roth & Zabel on behalf of the Picower

18   parties.

19           THE COURT:  All right.  Mr. Sheehan, it's your motion/

20           MR. SHEEHAN:  Thank you, Your Honor.

21           As Your Honor knows, this is the return date of a

22   motion made by the trustee, pursuant to Rule 9019, seeking the

23   approval of a settlement made with the defendant Picower in

24   connection with an adversary proceeding initiated in 2009.

25           The amount of the settlement is five billion dollars.
```

Page 6

1   I think I should almost be able to sit down after saying that,

2   in terms of whether or not we've reached the lowest range of

3   reasonableness but I believe, in light of the objections that

4   have been filed; I'm required to make something of a record

5   here this morning, Your Honor.

6           As you know, there are only three objections, two of

7   them are very similar in nature and they suggest that we didn't

8   -- we took too much.  There's another objection that said we

9   took too little and echoing a rhyme that we're all very

10  familiar with, I think the trustee got it just right.

11          I think what we've done here today is an advance with

12  regard to the customers and claimants in this case that is

13  significant.  It is, indeed, a milestone and I'll get into that

14  in some detail later, Your Honor.

15          As Your Honor well knows, this is a not a hearing with

16  regard to the facts and the law.  Your Honor is not going to

17  address or decide those.  The issue is whether or not we have

18  indeed surpassed the lowest range of reasonableness and as I've

19  suggested I think we've far exceeded that.

20          Let me start first, if I may, with the background of

21  this matter and how it arrived here today.  As I've noted, Your

22  Honor, we started with a complaint some time ago; thereafter

23  there was a motion to dismiss to which we responded.  In that

24  complaint we initially alleged the amount due to be 6.7 billion

25  dollars and we went into some detail as to why we thought we

08-01789-smb Doc 5810-10 Filed 03/11/14 Entered 03/11/14 15:01:48 Exhibit H
08-01789-smb Doc 9315-1 Filed 02/04/15 Entered 03/11/14 15:01:48 Main Document
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 8 of 44

Page 7

1    were entitled to receive that on behalf of the customers and

2    creditors of BLMIS.

3           Thereafter, during the course of further investigation

4    by the forensic accountants engaged in by the trustee, it was

5    determined that the full amount, full amount taken out by Mr.

6    Picower and related accounts that he had was 7.2 billion

7    dollars.

8           I should note at this point, Your Honor, that the

9    settlement today that we are offering to the Court, when

10   combined with the efforts that we, in concert with the U.S.

11   Attorney's office, will result in an overall settlement with

12   the Picowers for the entire amount of the money taken out by

13   Mr. Picower through those related accounts, 7.2 billion

14   dollars, all of which will be handled by Mr. Picard as the

15   trustee and as the special master for distribution to customers

16   in this case.

17          After those motions were filed subsequent negotiations

18   took place between the trustee's counsel and the counsel for

19   Mr. Picower.  Sadly and tragically Mr. Picower died during the

20   course of those negotiations but they continued.  And to say

21   that they were rough and tumble would be putting it mildly,

22   these are not easy issues and there are excellent attorneys on

23   both sides, I say that somewhat humbly but nonetheless.

24          We went ahead, as competent counsel which is part of

25   the 9019 inquiry and we did our job on both sides and we went

08-01789-smb   Doc 5810-10   Filed 03/11/14   Entered 03/11/14 15:01:48   Exhibit H
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES   Document
Pg 9 of 44

Page 8

1    back and forth quite a bit.  In the spring of 2010 we had

2    arrived at a point where we were close.  We were at, as our

3    papers reflect, about 4.8 billion dollars.  And it was at or

4    around that time when the Fox Marshall folks first arrived in

5    the form of a complaint that they filed down in Florida seeking

6    to institute a class action against the Picowers, which Your

7    Honor has very much familiarity with as a result of the motion

8    that was then brought, which resulted in a preliminary

9    injunction of that action, which I will also get into later.

10           At or around that same time, Your Honor, we reached

11   out, because if you were going to expend this type of money in

12   a settlement what you're looking for as a third party is what?

13   Closure.  We're looking to end this.  If we're going to

14   reimburse the estate these kind of dollars you're looking for

15   that.

16           In connection with that goal, we reached out to the

17   Department of Justice the Southern District of New York who

18   clearly was involved in a very active and major investigation

19   and prosecution of claims against the Madoff enterprises and

20   discuss with them what we were doing.

21           It was at that time that we got together, as it were,

22   and worked together as a team and I think the public is well

23   aware, as Your Honor is today, of the outcome of that team

24   effort which resulted in ultimately the 4.8 becoming five and

25   the balance of the monies being forfeited, as it were, by the

1   United States Attorney's office.  Indeed, ultimately all the

2   money was forfeited and I will also get into that later.

3        So what we have, Your Honor, is this:  We have, I

4   think, all of the makings of a 9019 motion.  We have competent

5   counsel who have engaged in negotiations, issues that are not

6   without doubt.  By way of example, one raised by my adversaries

7   here this morning by way of objection, is that somehow they

8   think we should be limited to the six year period and somehow

9   only 2.4 billion dollars should be sought by the trustee.  That

10   by seeking five he somehow is seeking too much.  Respectfully

11   we disagree; we think they're wrong on both the law and the

12   facts.

13        The law provides, the discovery rule in the State of

14   New York, that we can go back beyond the six year period so

15   long as indeed there is an innocent investor who we can bring

16   forth and establish the fact that through their own efforts

17   they could not have found out about the fraud until December of

18   2008 when Mr. Madoff came forward.

19        We believe that there are literally dozens of innocent

20   investors and respectfully we've suggested that Fox and

21   Marshall would suggest that they were innocent and indeed would

22   fulfill the criteria required under that statute.

23        Needless to say, there was a risk associated with

24   that, not a lot of law on it.  We're very comfortable, as the

25   trustee's counsel, that we're right and we argued that back and

Page 10

1    forth because the objectors are right, the six year number is

2    2.4 billion dollars.  The other 4.8 billion dollars goes back

3    to 1983.  The forensic accountants engaged in by the trustee

4    unraveled this fraud all the way back to its inception, beyond

5    1983.  And starting in 1983, coming forward, we then found the

6    7.2 billion dollars that made its way back and forth through

7    those accounts ultimately into the hands of Mr. Picower and

8    these related accounts.

9         Therefore, there was risk associated with going

10    forward but on the other hand there were other things

11    confronting the Picowers and in terms of how they wanted to

12    approach this and needless to say that give and take resulted

13    in the settlement that's before you today.  And I respectfully

14    submit, as I said at the outset, that we meet the criteria

15    established for 9019.

16         So what are those objections again?  One objection

17    was, as I suggested that the Serabians suggest that we got not

18    enough.  That if we got every cent that the Picowers put

19    through BLMIS we did not get enough.  That somehow we should

20    have pursued profits and pursued other tracing of all these

21    monies going back to 1983 and look for that as well.

22         First of all, it's a settlement.  I think the

23    settlement is an acknowledgement that you don't get everything

24    that you're looking for.  On the other hand, in this particular

25    instance, I would submit to Your Honor, that getting 7.2

08-01789-smb   Doc 5810-10   Filed 03/11/14   Entered 03/11/14 15:01:48   Exhibit H
08-01789-smb   Doc 5815   Filed 02/11/14   Entered 02/11/14 15:01:48   Main Document
Pg 12 of 44

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 11

```
 1   billion dollars is basically getting everything that we were

 2   entitled to and going beyond that would have been beyond what

 3   we were required to do and beyond what the trustee should be

 4   doing in terms of working on behalf of the customers and

 5   creditors.

 6          So I believe that the Serabian objection is without

 7   merit.  The objections of Fox and Marshall offer a little bit

 8   more detail.  They suggest, as I've alluded to earlier, that

 9   somehow we've asked for too much, that somehow we should not be

10   getting all of this money.  That only 2.4 billion dollars

11   should be given to the trustee to go to the benefit of, as we

12   put it, the net losers or those with allowed net equity claims.

13          They're, again, wrong on the law and wrong on the

14   facts.  Let me explain why I believe that to be so.  First of

15   all, we have to go back to the beginning, as it were Your

16   Honor, and we've done this more than once in this case but

17   somehow we seem to have to revisit it to bring discipline and

18   clear thinking to what we're talking about here.

19          What we're talking about is the SIPC statute or SIPA

20   and under SIPA, as Your Honor well knows, there is a priority

21   of claimants and that priority goes back to the Chandler Act,

22   and we've talked about this on the record before, of those

23   customers who have a positive net equity in their account at

24   the time of the demise of the brokerage house.

25          In this particular case, because we are dealing with a
```

08-01789-smb    Doc 5810-10    Filed 03/11/14    Entered 03/11/14 15:01:48    Exhibit H
08-01789-smb    Doc 9315    Filed 02/11/14    Entered 02/11/14 17:56:11    Main Document

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Pg 12 of 44

Page 12

1    Ponzi scheme, a fact that many people seem to want to forget

2    and suggest that there were earnings and profits when there

3    were none, nonetheless what we're dealing with is a Ponzi

4    scheme.  So in a Ponzi scheme what is left?  What are we trying

5    to get by virtue of going after these dollars?  We're trying to

6    get back other people's money and that's exactly what we were

7    trying to do here.

8         At this point I'd like to commend Barbara Picower

9    because what she recognized was after the fact, after this all

10   went down, when it became clear what Mr. Madoff was all about,

11   she stepped up and stepped up big time and gave to the trustee

12   and to the U.S. Attorney a total of 7.2 plus billion dollars,

13   every cent that the Picowers ever received out of this estate.

14        So why are they wrong then about the 2.4?  Well,

15   they're wrong because all those monies are other people's

16   money.  They are, in fact, the quintessence of customer

17   property.  There is nothing in this case, because it is a Ponzi

18   scheme, except customers' property.  There wasn't anything else

19   to be dealt with.

20        So what are we about here?  Is there -- are we here,

21   on behalf of the trustee as his counsel, only focusing upon

22   that priority claim?  Of course not.  Should we, therefore, be

23   limited to that aspect of the case?  Of course not.  Our job

24   here is to fulfill the claims of everyone who has filed a claim

25   in this proceeding.  Our goal, our goal and a worthy one, is

08-01789-smb   Doc 5810-10   Filed 02/11/14   Entered 02/11/14 15:01:48   Exhibit H
SIPC V. BERNARD L. MADOFF INVESTMENT SECURITIES   Main Document
Pg 14 of 44

Page 13

 1 | not only to get the twenty billion dollars that is due to all

 2 | the net losers in this case, and I submit to Your Honor we've

 3 | made a fair start by combining all of the monies to a total of

 4 | almost ten billion dollars to date, but we go beyond that.

 5 |      Mr. Picard is not the trustee for just net losers or

 6 | those with allowed net equity claims.  He is the trustee for

 7 | BLMIS and all of the customers and creditors.  He indeed

 8 | represents Fox and Marshall who filed claims in this

 9 | proceeding.  Who, because they got more money than they put in,

10 | do not have a right to priority but do have a claim and so does

11 | everyone else who's a net winner and so does everyone else who

12 | is a net looser.  All of them have a claim for fraud and all of

13 | those are general creditors.

14 |      The goal here of this trustee is not just to get the

15 | forty -- the twenty billion dollars back to satisfy that

16 | priority and bring those people, those folks that are the net

17 | losers, on a parody with the clients being represented by the

18 | attorneys here today, the net winners.

19 |      We then have the net winners and net losers under the

20 | priority of the statute together and they, in common, have

21 | what?  Correctly stated about a forty-five billion dollar claim

22 | and it is the goal of this trustee to get every cent of that

23 | back.  He has filed claims here for ninety billion dollars and

24 | it is our intention to not only recover the twenty billion

25 | dollars that will satisfy all the net looser claims but in

08-01789-smb    Doc 5810-10    Filed 03/11/14    Entered 03/11/14 15:01:48    Exhibit H
Pg 14 of 44
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 14

```
 1    addition to that as much money as we can to satisfy the claims

 2    of all of the people here.

 3           It's very, very important to understand that aspect of

 4    the statute and to not isolate the trustee's efforts to those

 5    of just net losers.  The fact that the Fox Marshall claimants

 6    did not -- one of them did get allowed actually but is looking

 7    for more because they want the fictitious statement, issue for

 8    another day in the circuit, and the other is the denied claim

 9    as a net winner but both of them, both of them, have, assuming

10    that the trustee's successful in that equity, valid, general

11    unsecured creditor claims that will ultimately come before this

12    Court with a measure of damages for which we will respond to

13    the extent that we've created a general statement.

14           So for them to suggest that somehow we should be

15    limited to 2.4 or somehow the six year period circumscribes the

16    activities of this trustee is dead wrong.  Wrong on the law and

17    wrong on the facts.

18           So where do we go from there?  We go to the fact that

19    the trustee, at this point, has available to him the ten

20    billion dollars and he's looking for the other ten, he's going

21    to pay the rest of that to the losers, doesn't in any way

22    derogate from the fact that these claimants do have claims and

23    will be dealt with here.  But not -- not to the derogation of

24    the net losers.

25           Let's follow through on the logic that is being
```

08-01789-smb    Doc 5810-10    Filed 03/11/14    Entered 03/11/14 15:01:48    Exhibit H
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES    Main Document
Pg 15 of 44

Page 15

1   offered by Fox and Marshall.  Their suggestion is 2.4 should

2   somehow just go to net losers and the balance should be

3   available to who?  Net winners who, by definition, already have

4   the money of the net losers.  That doesn't work in a Ponzi

5   scheme.  Is that fair?  Is that equitable?  Is equity a quality

6   in the bankruptcy court?  Of course it is, it is the foundation

7   upon which this Court rests.  For them to suggest that somehow

8   there should be a carve out of these monies and they should

9   receive it when they're already sitting there with other

10  people's money as net winners when the net losers would not --

11  would not be made whole is totally inappropriate.  Conflicts

12  not just with the SIPA statute but with basic principals

13  underpinning the bankruptcy code.  How can that be permitted?

14  Of course it can't and quite frankly I don't think ultimately

15  that's what they're suggesting.

16      What they're suggesting is, is that somehow they

17  should be recognized.  They too were victimized here and to

18  that the trustee absolutely agrees.  Of course they were.

19  Everyone who relied upon those statements was defrauded, we're

20  not suggesting otherwise.  We're not suggesting that they don't

21  have a claim; it's just not a priority claim.  It's different.

22  It's a general unsecured claim.

23      And quite frankly, looking through that prism, Your

24  Honor, at the class action that exists down in Florida, that's

25  really not an appropriate class.  They're trying to represent

08-01789-smb   Doc 5510-10   Filed 08/11/14   Entered 08/11/14 15:01:48   Exhibit H
Pg 16 of 44
SIPC V. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 16

1   just net winners, overlooking the fact that the net losers are

2   not only behind those net winners because they didn't get all

3   their money back, but they too have what, fraud claims.  The

4   same fraud claims that they suggest they're advancing on behalf

5   of that class.  Of course that class hasn't been certified and

6   I would suggest to Your Honor, for the facts I've just

7   suggested to you, it would never be certified because they

8   don't represent all of the people who suffer as a result of

9   this fraud.  They're trying to represent a select -- carve them

10  out, reach out to them in a way that's inappropriate,

11  unsupported by fact and law.

12          The other aspect of their complaint here, Your Honor,

13  today which I'd like to go through very quickly, is the fact

14  that somehow our injunction is inappropriate.  Your Honor, I

15  think one of the -- rather than go through a lot of the law

16  that's been cited here I want to just briefly go to Judge

17  Bernstein's decision in Dreier which, I think quite frankly, is

18  a wonderful opinion with regard to the law.  It sets forth the

19  9019 principles and also the appropriateness of an injunction

20  with regard to a third party, as the Picower parties are.

21          And as Judge Bernstein teaches us, there are a couple

22  of elements that have to be in place here.  One is, is that

23  Your Honor has to have subject-matter jurisdiction.  I think

24  that's beyond cavil here but let's just walk through that.

25          Subject-matter jurisdiction not over the settlement

08-01789-smb  Doc 5810-10  Filed 03/11/14  Entered 03/11/14 15:01:48  Exhibit H
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 17 of 44

Page 17

1    but over the claims that are being disputed here, the claims

2    that Fox and Marshall suggesting that they have that are

3    somehow "independent".  They've offered nothing other than

4    theories and causes of action but nothing to suggest how their

5    claims do not relate to or arise out of this proceeding.

6    Indeed, there's a critical nexus between their complaints, as

7    evidenced by the fact that what did they do when they filed

8    their complaint?  They copied that of the trustee practically

9    word for word.

10        What does that tell you?  What they're seeking to do

11   is go after the same property of the estate that must be

12   protected here by virtue of this injunction so that this cannot

13   be interfered with in terms of the proper administration of the

14   SIPA proceeding.  So subject-matter jurisdiction clearly vests

15   with Your Honor.

16        If we look at Metro Media, and Judge Bernstein did, it

17   talks about something that you do not have, third party

18   injunctions, unless you have uniqueness associated with the

19   endeavor.  Again, as I said at the outset Your Honor, I believe

20   this is a unique and quite frankly great day for the customers

21   of BLMIS.

22        The ability to achieve a settlement of this magnitude

23   resulting in all of the money being sought by the trustee,

24   together with the U.S. Attorney's office coming back to all the

25   customers.  I cannot think of a more unique setting where it

08-01789-smb   Doc 5810-10   Filed 03/11/14   Entered 03/11/14 15:01:48   Exhibit H
Pg 19 of 44
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 18

```
 1    would be more appropriate, more appropriate to do what?  Make
 2    sure that this settlement is approved and arrived at in a way
 3    that makes it work.
 4         And one of the things that Ms. Picower is entitled to
 5    and is also taught to us by Judge Bernstein and Judge, for some
 6    reason my colleagues seem to think that Judge Batts (ph.) I'm
 7    looking at wrong opinion -- I'm looking at the right opinion.
 8    What Judge Bernstein suggested in there was that you can give a
 9    third party the benefit of that injunction, why?  Because if
10    they're going to step up in a way and make a significant, and
11    in this case very significant, contribution for the benefit of
12    the estate they should get the benefit of an injunction to make
13    sure that third parties don't come after them.
14         Now my colleagues have suggested that our injunction
15    is somehow too broad, too indefinite, too vague.  Indeed that
16    was part of the problem in Dreier and again Judge Bernstein
17    gave us guidance and instructions on how to deal with that.
18    And what he suggested was is that the best way to deal with
19    that is to make sure that that injunction relates only to what?
20    Claims that belong to the trustee, claims that are derivative.
21         And Your Honor, I just impose upon you for one more
22    moment here to read into the record, because I think it is
23    significant, the injunction that we're seeking to achieve here.
24    And this injunction would apply as follows:  "To any BLMIS
25    customer or creditor of the BLMIS estate who filed or could
```

08-01789-smb   Doc 5810-10   Filed 03/11/14   Entered 03/11/14 15:01:48   Exhibit H
08-01789-smb   Doc 9815   Filed 03/11/14   Entered 03/11/14 15:01:48   Main Document
SIPC v. BERNARD L MADOFF INVESTMENT SECURITIES
Pg 19 of 44

Page 19

1    have filed a claim in the liquidation, anyone acting on their

2    behalf or in concert or in participation with them or anyone

3    whose claim in any way arises from or is related to," words

4    right out of the statute, "to BLMIS or the Madoff PONZI scheme

5    is hereby permanently enjoined from asserting any claim against

6    the Picower BLMIS account holders or the Picower releasees that

7    is duplicative or derivative of the claims brought by the

8    trustee or which could have been brought by the trustee against

9    the Picower BLMIS account holders or the Picower releasees".

10           Your Honor, I think we've taken the teaching of Judge

11   Bernstein to heart.  We indeed limit our injunction to

12   derivative claims, that which could have been brought by the

13   trustee.  What's missing here isn't clarity.  Clarity is self

14   evident.  What's missing here is any offer by our adversaries

15   here to suggest that they do have an independent claim.

16   Everything they speak of is derivative of and arises out of the

17   Ponzi scheme of Mr. Madoff, that's clear.  There's no privity

18   between Mr. Picower or any of his entities and any of these

19   parties.  Their relationship to him orbits around necessarily

20   the Madoff PONZI scheme, that's all it does.  The same dollars

21   that they're looking for are the same dollars that are now

22   being paid in to this estate.

23           Your Honor, in light of this I respectfully submit

24   that both of these objections should be overruled and that the

25   9019 should be approved.

08-01789-smb  Doc 5810-10  Filed 03/11/14  Entered 03/11/14 15:01:48  Exhibit H
Pg 20 of 44
SIPC v. BERNARD L MADOFF INVESTMENT SECURITIES

Page 20

1          One last thought, Your Honor.  Certainly under these

2     circumstances there's absolutely no need for discovery here

3     today.

4          Thank you.

5          MS. WANG:  Josephine Wang for the Securities Investor

6     Protection Corporation.

7          I'll keep my comments very brief, Your Honor.  Our

8     position is fully set out in the brief that SIPC has filed.  We

9     support the motion of the trustee.  We commend the trustee and

10    its counsel on the result that they have achieved.  If the

11    Court approves the settlement agreement it will benefit

12    thousands of Madoff investors.

13         Because we believe that the settlement is very

14    positive, we're extremely disappointed in the objections that

15    have been filed.  We believe that the Serabians have failed to

16    appreciate the standards for approving a settlement.  Those

17    standards are clearly met here.

18         We also believe that the Fox Marshall objections are

19    without merit.  Basically they rest on two grounds, one that

20    the proposed injunction is too broad, in fact the parties can't

21    confer jurisdiction on the Court that it doesn't have and the

22    parties don't presume to do that.  The injunction is clear on

23    its face, the Court plainly has jurisdiction to enter it.  It's

24    limited to those suits that the trustee brought or the trustee

25    could have brought.

08-01789-smb   Doc 5810-10   Filed 03/11/14   Entered 03/11/14 15:01:48   Exhibit H
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES   Document
Pg 22 of 44

Page 21

1            The other basis for their injunction or for their

2    objection rather is that the trustee is getting too much money,

3    that the entire five billion dollars is not customer property.

4    That's not the issue before the Court today, whether it is or

5    is not customer property but if the issue were before the Court

6    plainly it is customer property.

7            It's now well known today that what Bernard Madoff was

8    running was a Ponzi scheme and what that means is that the

9    money that was paid to investors represents other investors'

10   money.

11           Converted customer property is clearly within the

12   definition of customer property under the Securities Investor

13   Protection Act.  Barbara Picower is doing the right thing.

14   She's returning what is now well known to have been stolen

15   customer property to the estate.  We wish that the same thing

16   could be said of the -- or by Fox Marshall in the objections

17   that they filed.

18           It's important to remember that they have filed claims

19   in the SIPA proceeding.  They are claimants.  They have gotten

20   back their principal in the case.  Ms. Marshall has gotten back

21   her principal in the SIPA liquidation but she's looking for

22   fake profits and that's why she has filed the Florida action.

23           Ms. Fox, while the firm was doing business, got 1.2

24   million dollars from the firm in fake profits.  But she's

25   looking for more fake profits and that's why she has brought

1    her Florida suit.

2           But that's not the point of this SIPA proceeding,

3    because it's important to remember that what Ms. Fox has

4    gotten, what Fox Marshall are looking for are fake profits.

5    They are other investors' money.

6           This settlement has the potential to return to these

7    people whose money has been stolen who have not recovered their

8    principal.  And yet, Fox Marshall would seek to prevent them.

9    They would seek to; instead, obtain more fake profits for

10   themselves at the expense of investors who have yet to recover

11   their principal.

12          We submit that that is not the right outcome.  We

13   respectfully submit that the trustee's motion to approve the

14   settlement agreement should be granted.

15          Thank you, Your Honor.

16          MR. MAY:  Good morning, Your Honor.  Laurence May of

17   Cole Schotz on behalf of the Fox plaintiffs and Adele Fox.

18          Your Honor, I want to confine my remarks today to one

19   issue and that is the issue of the injunction.  With respect to

20   the other issues, we're prepared to rest on the papers that we

21   filed in connection with this application and so I want to just

22   focus on the injunction, if  may.

23          The main issue with respect to this injunction is a

24   pretty simple one.  It can be, sort of, answered by a yes or

25   no.

1          THE COURT:  So you don't think that the settlement is

2      too much?

3          MR. MAY:  I'm resting on our papers.  We --

4      whatever -- we said in our papers we thought the settlement was

5      inappropriate and I'd like to address the injunction.

6          THE COURT:  You're not opining, at this point, orally

7      that the settlement is too much.

8          MR. MAY:  Yes, we are.

9          THE COURT:  You spent an awful lot of your paperwork

10     doing that.

11         MR. MAY:  We spent a portion of it.

12         THE COURT:  Well, I spent a good part of the night

13     dealing with it and I'm surprised you're not dealing with it

14     not but go ahead.

15         MR. MAY:  Okay.  So let me address the injunction

16     then, if I may.

17         THE COURT:  Go ahead.

18         MR. MAY:  And as I said, I think the issue with

19     respect to the injunction is a simple one and could, sort of,

20     be answered in a yes or no way and it simply is this:  Your

21     Honor entered a decision in an order in May of 2010 in which

22     the Court held and ruled that the lawsuit that our clients had

23     commenced in Florida, the class action lawsuit, was to be

24     preliminarily enjoined on the grounds that the actions and the

25     causes of action set forth in that lawsuit were property of the

08-01789-smb   Doc 5610-10   Filed 03/11/14   Entered 03/11/14 15:01:48   Exhibit H
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 24 of 44

Page 24

1   estate and that the commencement of that action was void ab

2   initio for that reason.  That decision has been appealed to the

3   district court.  It has been fully briefed and it's now before

4   Judge Codel (ph.).

5          The issue that we wanted to know and that we still

6   don't have clarity on is this, is if the District Court or the

7   Court of Appeals should determine that this Court was incorrect

8   in its analysis and that the claims that we asserted in the

9   Florida action are not property of the estate and that they

10  belong to our clients, if that should be the determination then

11  it is our view that the injunction here -- whatever injunction

12  here is entered today would not and should not prevent us from

13  pursuing that suit under those circumstances.

14         I do not know, based upon the pleadings, based upon

15  the proposed orders and based upon the remarks of counsel

16  today, whether in fact that is what's intended.  For example,

17  without going into the pleadings and I'll go into those in a

18  moment, but last night at 8 o'clock the trustee filed a new

19  proposed order in connection with this application.

20         In the proposed order the trustee added a provision

21  that said, "Ordered based on the record before the Court, Fox

22  and Marshall whose claims against the Picower entities have

23  previously been preliminarily enjoined by this Court as

24  duplicative and derivative are and shall be bound by the

25  permanent injunction granted hereby".

08-01789-smb   Doc 5810-10   Filed 02/11/14   Entered 02/11/14 15:01:48   Exhibit H
08-01789-smb   Doc 5813-1   Filed 04/28/14   Entered 04/28/14 17:56:02   Main Document
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 25 of 44
Pg 25 of 44

Page 25

1          I do not understand the consequence of that particular

2    provision if in fact it is determined by the Court and the

3    District Court or the Court of Appeals if this matter should be

4    appealed to a higher court, that if our claims are not property

5    of the estate, whether this injunction purports to stop us from

6    pursuing those claims.

7          If it does, this injunction is a classic third party

8    injunction and under the circumstances of this case, as set

9    forth in our papers, is an injunction which is improper and

10   should be granted.

11         If the injunction is intended solely to prevent us

12   from pursuing claims that we do not have, as determined by the

13   appeal, then we understand that and we don't have a quarrel

14   with that injunction.  But we do not think -- we do not know at

15   this point whether that's in fact what is intended by the

16   language of this injunction.

17         And Your Honor, in the pleadings and particularly in

18   the reply papers that were filed in this case by the trustee

19   there is sufficient indications in those reply papers to say

20   that the injunction that is intended here is far broader than

21   the injunction that the remarks at times indicate but at other

22   times do not indicate.

23         For example, in his reply papers the trustee says at

24   page 10, "Given the ruling of the Court," that's the ruling of

25   May of 2010, "there can be no question that Fox and Marshall

08-01789-smb   Doc 5810-10   Filed 03/11/14   Entered 03/11/14 15:01:48   Exhibit H
08-01789-smb   Doc 8315   Filed 10/16/14   Entered 10/16/14 13:56:33   Main Document
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 20 of 44

Page 26

1   would be permanently barred by the proposed injunction and they

2   will have to appeal the injunction if they are unhappy with the

3   result."

4           To me, that sounds like an injunction which is a broad

5   injunction, that it is not tethered to or in any way related to

6   the determination by the District Court or the Court of Appeals

7   as to who may own these claims and if that's in fact the case,

8   we believe it's an improper injunction.

9           One more point with respect to this proposed order,

10  and that is that there is a new provision added into the

11  proposed order which states, as a conclusion of law, and it may

12  be a combination of finding of fact or a conclusion of law, but

13  in any event the conclusion is that the Court has jurisdiction

14  to consider this matter and to consider the permanent

15  injunction.

16          Your Honor, we disagree with that statement for the

17  following reason; there is an appeal pending with respect to

18  the same issues which are covered by that injunction and that

19  is was the preliminary injunction proper and are the claims

20  that this Court found to be property of the estate in fact

21  property of the estate.  Those two issues are squarely before

22  the District Court and under well established law when there's

23  an appeal pending, an appeal has been made from a particular

24  issue, it divests the Bankruptcy Court of jurisdiction over

25  those issues.  So we don't believe that that's an appropriate

```
 1    finding under the circumstances, at least as it applies to our

 2    clients.

 3            Your Honor, to the extent that this injunction is

 4    intended to enjoin us from pursuing our own claims and claims

 5    which are not property of the estate, it fails to meet all of

 6    the requirements for third party injunctions as set forth in

 7    Metro Media, as set forth in Johns Manville III and even

 8    notwithstanding counsel's statements seemingly to the contrary

 9    as Judge Bernstein ruled in Dreier.

10            Third party injunctions are rarely granted.  They are

11    granted primarily, if not exclusively, in Chapter 11 cases.

12    The Second Circuit has warned in Metro Media that they are to

13    be granted only under very unique circumstances.  They also

14    warned and said that making a financial contribution to a

15    particular matter is not in and of itself a sufficient basis

16    for a third party injunction.  And in Manville the Second

17    Circuit squarely held that to the extent that property of the

18    estate is not directly affected, then there is no basis and no

19    jurisdiction for a third party injunction.

20            Now let's look at it in this case.  The agreement that

21    was signed by the trustee, with the Picower defendants,

22    provides, among other things, that the agreement is affective

23    as between the parties if the forfeiture order in the District

24    Court is approved and there is no appeal from that order.  And

25    my understanding is that the time to appeal from that order
```

08-01789-smb Doc 5810-10 Filed 03/11/14 Entered 03/11/14 15:01:48 Exhibit H
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES Pg 29 of 44

Page 28

1    runs on Monday.  No appeals have been filed and I think it's a

2    fair observation to say that probably none will be filed from

3    that order.

4            That being the case, this agreement is effective

5    regardless as to whether this Court approves this 9019

6    application or not.  The money that's the subject of the

7    settlement has already been put into an escrow account and when

8    that order becomes final that money will not go back to the

9    Picower defendants and the trustee has said that numerous

10   times.

11           The agreement also says that once that event happens

12   then the releases are exchanged between the parties.  And once

13   the releases are exchanged between the parties then the trustee

14   gives up all claims that he has, in his own capacity, as

15   against the Picower defendants.  Which mean -- which means that

16   they no longer have an interest in any residual monies or funds

17   that remain with the Picower defendants which means that there

18   is absolutely no impact on this estate with respect to the

19   pursuit of independent claims against the Picower defendants in

20   connection with what we believe to be our independent right and

21   our independent claims which we hope will be validated by the

22   appellate court but, you know, we'll have to see on that.

23           So for all of those reasons, Your Honor, we think that

24   to the extent that this injunction purports to enjoin

25   independent claims, claims that are not property of the estate,

08-01789-smb    Doc 5810-10    Filed 03/11/14    Entered 03/11/14 15:01:48    Exhibit H
Pg 30 of 44

08-01763-smb    Doc 9315    Filed 02/19/15    Entered 02/19/15 15:01:48    Main Document
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 29 of 44

Page 29

 1    it's improper.  If this injunction, and we propose language in

 2    our papers as to what would make sense, if the injunction is in

 3    fact intended only to enjoin us from pursuing claims if it's

 4    determined that we don't own those claims, well, you know,

 5    that's an obvious one.  If we don't own the claims we can't

 6    pursue them anyway and an injunction is not really needed.  But

 7    if that's all that's intended here, we can understand that.

 8    But if something more is intended here, and based upon the

 9    language of the injunction, the language of the proposed order

10    and the allegations and the statements that have been made in

11    the pleadings, that is not a certainty.

12            So for that reason we have -- we are asking for

13    specific language to understand where we stand.  If we can't

14    get that language and this issue remains vague such that

15    someone in a subsequent proceeding could claim either that

16    we're in contempt or that we are prohibited from pursuing these

17    claims because they are subject to a permanent injunction,

18    we'll have to exercise remedies in that case.

19            THE COURT:  What do you mean by that?

20            MR. MAY:  Well, we'd have to appeal.

21            THE COURT:  Well, why don't you come out and say it.

22            MR. MAY:  Okay.  I just did.  Sorry about that.

23            THE COURT:  All right.

24            MR. MAY:  So, you know, but we don't think that's

25    necessarily how this thing should go.

1          THE COURT:  Of course that would put a halt to a

2     distribution of some 7.2 billion dollars.

3          MR. MAY:  It's --

4          THE COURT:  That's a very, very careful thing you

5     would have to think about before --

6          MR. MAY:  I'm sorry, Your Honor.  I don't hear you.

7          THE COURT:  I think we're talking about a lot of

8     money, a lot of impact on a lot of people with delay.

9          I just want to point out that there --

10          MR. MAY:  Our appeal --

11          THE COURT:  May I finish?  I have allowed you to talk

12     without saying anything.

13          MR. MAY:  I apologize.

14          THE COURT:  Although I disagree with a lot of the

15     points that you made, but that's beside the point.

16          THE COURT:  Although I disagree with a lot of the

17     points that you made, but that's beside the point.

18          Clearly there's been undue delay here and the Court is

19     concerned over the fact that this delay has also foisted the

20     possibility and probability and the actuality of victims being

21     made victims again based upon the delay that's here.  And I'm

22     speaking specifically now of the fact that vultures are making

23     offers to purchase claims based upon delay and those offers

24     have caused victims to cash in for very de minimis amounts in

25     the face of the expectation of a rather large recovery here.

08-01789-smb   Doc 5810-10   Filed 03/11/14   Entered 03/11/14 15:01:48   Exhibit H
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 32 of 44

Page 31

1    All I'm expressing is that should there be further

2    appeals you must take into account the effect of those delays.

3    Thank you Mr. May.

4         MR. MAY:  Thank you, Your Honor.

5         MS. CHAITMAN:  Good morning, Your Honor.  I just want

6    to make one point.  The settlement is not conditioned upon the

7    entry of the injunction.  And I think that makes this case

8    unique because the 7.2 billion dollars has been forfeited and

9    would be available for distribution to creditors regardless of

10   whether this Court enters the injunction.

11        This is not the situation that Your Honor was faced

12   with last spring because at that point Mr. Sheehan indicated to

13   the Court that he would be coming back and asking for a

14   permanent injunction because he believed it was necessary in

15   order to consummate the settlement.  That's not where we are

16   now.  The money is in a bank ready to be distributed regardless

17   of whether this Court enters an injunction.

18        We believe the injunction is overbroad and improper.

19   We believe the Court does not have jurisdiction to enter it but

20   there's no need to enter the injunction.  The estate cannot

21   show injury, no less irreparable injury, because regardless of

22   whether Your Honor enters the injunction the money is there to

23   distribute to creditors.  The only problem is if Your Honor

24   enters the injunction we have no alternative but to appeal it

25   and that delays the distribution to creditors.  We have no

Page 32

1    interest in delaying distribution to creditors.  And the Court

2    and the trustee should have no interest in protecting Mr.

3    Picower's entities from the liability that Mr. Picower created

4    as a result of his heinous crimes.

5           So on behalf of the 46.8 billion dollars of investor

6    losses that Mr. Picard does not represent --

7           THE COURT:  You used the term heinous crimes, that's a

8    rather inflammatory statement.  The Justice Department is

9    already involved here, you recognize that?

10          MS. CHAITMAN:  I'm concluding heinous crimes, Your

11   Honor, based on the allegations that the trustee has made which

12   I accept for this purpose.  He has alleged that Mr. Picower was

13   the coconspirator of Mr. Madoff and he outlined in his

14   complaint incident after incident --

15          THE COURT:  That's not necessarily an attribution of

16   committing a heinous crime.  I think you're rhetoric comports

17   with the rhetoric of the day and you might want to tone it

18   down.

19          MS. CHAITMAN:  Your Honor, on behalf of the victims

20   that I represent the devastation that has been caused by this

21   scheme is truly heinous, it has --

22          THE COURT:  Mr. Madoff is in jail for that.

23          MS. CHAITMAN:  And Mr. Picower is being asked to be

24   relieved of any liability to all of my clients despite the

25   devastation he caused destroying generations of wealth, Your

1    Honor.  And Mr. Picard is asking you to shield his entities

2    from liability for the personal claims that these people have

3    suffered.  Thank you.

4            THE COURT:  Mr. Sheehan?

5            MR. SHEEHAN:  I do have a couple comments, Your Honor.

6    But there is a third party here who does want to be heard in

7    support of the application, Your Honor, with permission.  It's

8    a --

9            THE COURT:  Sure.

10           MR. SHEEHAN:  Mr. Kurzman who's representing

11   orthopedic specialists who has a pension plan that filed a

12   claim in the case.

13           MR. KURZMAN:  Good morning, Marc Kurzman from Sandak

14   Hennessey & Greco, Stamford Connecticut.

15           What Mr. Sheehan said is not exactly accurate.  I

16   don't represent the plan I represent the 117 participants in

17   the Orthopedic Specialty Group Plan, a pension plan that was

18   created back in the 1970's for the employees of the Orthopedic

19   Specialty Group which is a Fairfield, Connecticut orthopedic

20   practice -- large Connecticut orthopedic practice.

21           The OSG Plan participants, my clients Your Honor,

22   include doctors, nurses, x-ray technicians, clerical support

23   staff, folks who invested their entire retirement savings in

24   BLMIS and were in many cases, Your Honor, financially wiped out

25   by the Madoff fraud.  The participants in the OSG Plan, Your

08-01789-smb   Doc 5810-10   Filed 03/11/14   Entered 03/11/14 15:01:48   Exhibit H
Pg 34 of 44
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 34

1  Honor, my clients, include Dr. Henry Backe, a partner in the

2  OSG practice who has testified before the Senate Banking

3  Committee on the injustice of denying SIPC coverage to innocent

4  people who, like the OSG Plan participants, invested in BLMIS

5  through a federally sanction ERISA plan and were as victimized

6  by the Madoff fraud as those who held so-called direct claims

7  with BLMIS.

8         The trustee has approved the claim of the plan, Your

9  Honor, but has denied the individual claims filed on behalf of

10  all of my clients and I filed objections to that denial.  I am

11  hopeful, Your Honor, that through further exploration of the

12  facts with the trustee or if need be ultimately a ruling by

13  this Court the OSG Plan participants will be afforded customer

14  status and SIPC coverage which, you know, despite the best

15  projections of the trustee is something that we believe would

16  be required in order to compensate my clients for their losses.

17         Nevertheless, Your Honor, I am here today to advise

18  the Court that I, as counsel to the OSG Plan participants and

19  Dr. Backe, are completely supportive of the settlement that the

20  trustee reached with the Picower defendants.  We view the

21  settlement as serving a very -- as one that will serve a very

22  important source of recovery for the most seriously impacted

23  victims of the Madoff fraud, namely the so-called net losers,

24  the term that I know we're using in this case, which include

25  all of my 117 clients, Your Honor.

1          The settlement will clearly allow the trustee to take

2     a significant step in compensating the net losers for their

3     financial loss.  You alluded, Your Honor, in your remarks to

4     the delay issue and that, of course, has been the major concern

5     of my clients, folks that had planned to retire, middleclass

6     folks, clerical people, x-ray technicians that now can't do

7     that because they no longer have a retirement savings.  So

8     anything that can be done to expedite any payment to the net

9     losers is extraordinarily helpful to my clients and to the

10    class of which they're a part, the net losers.  So I would urge

11    Your Honor to approve this settlement has been proposed by the

12    trustee in this motion.  Thank you very much for your time,

13    Your Honor.

14          THE COURT:  Thank you sir.

15          MR. SHEEHAN:  Your Honor I'll be very brief, just

16    point by point.

17          I don't know how we could be more clear with our

18    intent, the order is perfectly clear.  I don't know what the

19    confusion is.  I think they're looking for something they're

20    not entitled to and that is that somehow they should be carved

21    out.  They haven't established a record for that which leads to

22    the order that we did submit last night and why we think it is

23    appropriate.  Even the language being alluded to by my

24    adversary in this sense, that if we had this hearing today on

25    the 9019 in the full record and nothing was presented to Your

08-01789-smb    Doc 5810-10    Filed 03/11/14    Entered 03/11/14 15:01:48    Exhibit H
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 36 of 44

Page 36

| | |
|---|---|
| 1 | Honor, this is our position, that would change Your Honor's |
| 2 | view of the so-called independent claims that exist in the |
| 3 | hands of Fox and Marshall.  Well then that's something that the |
| 4 | Appellate Court should be aware of and it should be in the |
| 5 | order.  But nothing's changed.  They weren't independent then, |
| 6 | they're not independent now and therefore they should be |
| 7 | enjoined.  So that's a finding I think is totally appropriate, |
| 8 | it serves judicial efficiency in the sense that Your Honor is |
| 9 | advising the Court of your findings here and even though |
| 10 | there's been a record here today that record shows nothing, |
| 11 | nothing in support of their position of independence. |
| 12 | Two other points -- |
| 13 | THE COURT:  Well on that point, Mr. Sheehan -- |
| 14 | MR. SHEEHAN:  Sure. |
| 15 | THE COURT:  -- I agree with your reading of the |
| 16 | language and the central decretal paragraph that duplicative |
| 17 | and derivative claims being brought by the trustee are those |
| 18 | that are barred.  I don't know why you need the second decretal |
| 19 | paragraph that speaks specifically to Fox and Marshall.  They |
| 20 | are subsumed in the prior injunctive paragraph. |
| 21 | MR. SHEEHAN:  Your Honor, if Your Honor reads it that |
| 22 | way, that's fine with us, we just thought it was good.  As I |
| 23 | said, more judicial efficiency than anything else, make it |
| 24 | clear that no mat -- |
| 25 | THE COURT:  I think it is clear. |

1           MR. SHEEHAN:  Okay, fine Your Honor.

2           THE COURT:  You state very clearly and I will state

3     very clearly if I approve this that there will be a permanent

4     injunction from asserting any claims against the Picower BLMIS

5     accounts or the Picower releases that is duplicative or

6     derivative of the claims brought by the trustee.  And that's

7     exactly the same thing as what's in the next paragraph which

8     targets specifically Fox and Marshall.  I don't see that

9     there's a need to have that extra paragraph when it's already

10    covered --

11          MR. SHEEHAN:  Your Honor --

12          THE COURT:  -- in the prior paragraph.

13          MR. SHEEHAN:  -- I agree with you a hundred percent.

14    The --

15          THE COURT:  Well I understand that too.

16          MR. SHEEHAN:  You know, I've learned a few things

17    standing at this podium over the years and one of them is to

18    always agree with the judge.

19          The last point I was going to make, Your Honor, is

20    this, and that's when Ms. Jabin (ph.) said it's not necessary.

21    I don't know if that's the standard to begin with under Judge

22    Bernstein's wisdom or that of any other court addressing third

23    party injunctions.

24          What is important is this, is that that is an

25    incentive for Barbara Picower to come forward here and to make

08-01789-smb Doc 5810-10 Filed 03/11/14 Entered 03/11/14 15:01:48 Exhibit H
08-01789-smb Doc 3915 Filed 04/05/11 SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES Main Document
Pg 39 of 44

Page 38

 1   the gesture that she's made, an incredible gesture, of coming

 2   up with all this money.  And therefore it's something that

 3   she's entitled to look to as part of the bargain.  And it's a

 4   fair exchange that the estate receives all the money that it

 5   does.  Whether it's necessary or not is not the standard, the

 6   fact is, is that is it appropriate?  And we believe under all

 7   the circumstances here that indeed it is appropriate.

 8        And one last point because of the point made by Ms.

 9   Jabin, she does not, I repeat, she does not represent forty-

10   four million dollars.  Fox and Marshall are not class

11   representatives and unless she's representing all of the net

12   winners and she's representing all of the net losers, which she

13   is not the trustee is.  The trustee represents every one of us.

14        THE COURT:  But she is representing some on both

15   sides.

16        MR. SHEEHAN:  She is that is true.  She's wearing two

17   hats, I agree with that.  But the point is, is that she is not

18   a Court appointed fiduciary as Mr. Picard is, mandated by

19   statute to represent each and every customer and creditor in

20   this case.  He is indeed the uber-customer, he represents every

21   one of them and that's exactly what we're going to do in this

22   case is do our very best to satisfy every customer, winner,

23   loser, all of them.  Thank you, Your Honor.

24        THE COURT:  Thank you all.

25        MR. MAY:  Just two seconds, Your Honor, if I may.

Page 39

1          THE COURT:  You're being timed.

2          MR. MAY:  Well, okay.  In that case five minutes.

3          I respect and appreciate some of the clarifications

4    but one of the issues we've always had is this word duplicative

5    as well.  And that is, there is no doubt that the claims that

6    we are asserting in the Florida action relate to and arise out

7    of the BLMIS Ponzi scheme in a broad sense.

8          I don't know if anyone would interpret that to mean

9    that somehow our claims are duplicative, we do not believe they

10   are.  But that language is somehow troubling to us because it

11   creates the possibilities down the road that people will argue

12   about that issue.  And we don't want to argue about the issue.

13         What we had proposed and what we thought was clear and

14   understandable for everyone is that simply if the Appellate

15   Court would decide that our claims belong to us and not to the

16   estate then we're free to pursue them.  That's what we're

17   asking for.  I don't understand why that is such a big issue at

18   this point and why the trustee can't come out and say I agree

19   with that.  That way we don't have to worry about whether a

20   particular second injunction somehow intrudes upon or expands

21   what happened on the preliminary injunction motion.  And so for

22   that reason we would hope that language could be crafted that

23   would satisfy that issue.  Thank you.

24         THE COURT:  Thank you.  Anybody else want to be heard?

25   I think there's no need to have any further clarification, any

Page 40

1    language.  It is very clear, especially with respect to the

2    objectors before me, that I can almost never satisfy their

3    positions and therefore there's always the threat of an

4    Appellate review, which I welcome.  It's just that I'm

5    concerned about the broader grouping of people who are impacted

6    by everything that goes on here.

7            With respect to the three objections, I'm overruling

8    them I find them without merit.  And I will take a little bit

9    of a position of Mr. May and not go into every last detail of

10   all the papers that were before me.  I have gone through

11   everything.  I've read all of the arguments; I fully understand

12   and comprehend the positions of the parties.  I do find that

13   the omnibus reply to these objections sets forth with a

14   rational and clear persuasive basis for the grant of all of the

15   relief that's requested.

16           In essence I find the basis for each of the three

17   objections have been effectively rebutted in the reply.  And

18   more than that from this morning's record and hearing it is

19   clear to this Court that has jurisdiction both under all the

20   trilogy of cases, Drier, Manville, Metromedia.

21           The purpose and the need for the injunction is quite

22   clear.  The injunction is narrow.  It deals with duplicative

23   and parallel claims of the trustee.  Indeed there has never

24   been any showing of any privities between the objectors and the

25   Picower estate.  Clearly there are many, many other targets for

1    the trustee's activities in bringing funds back into the

2    estate.  The trustee's point and SIPC's point that the trustee

3    represents all of the Madoff victims including those that are

4    net winners and net losers; it's just a question of the

5    priority.  And you cannot expect any settlor to make a

6    settlement with a potential possibility of being sued twice

7    over the same causes of action and claims.

8            Accordingly with the one exception I am prepared to

9    approve the settlement order with the injunction but I do not

10   see the need for the extra belt and suspenders of the paragraph

11   that specifically names Fox and Marshall.  It is clear, to the

12   extent that they have the kinds of claims described here then

13   they would be enjoined.  To the extent they don't then that's

14   another matter.  That as Justice Sotomayor has said, is

15   something they can put into their own calculus and strategy

16   when they want to do any further planning.

17           The application is approved, Mr. Sheehan.

18           MR. SHEEHAN:  Thank you, Your Honor.  Your Honor, I do

19   have the order here but it has that paragraph in it.  I can

20   clean it up and get it back down to your --

21           THE COURT:  You should excise that particular

22   paragraph --

23           MR. SHEEHAN:  I will have it to you this afternoon.

24           THE COURT:  -- which I think is just redundant and

25   that's all.

Page 42

1          MR. SHEEHAN:  Yes, Your Honor, absolutely.  Thank you,

2     Your Honor.

3          THE COURT:  Thank you all.

4          MR. SHEEHAN:  Thank you very much.

5          MS. CHAITMAN:  Thank you, Your Honor.

6        (Whereupon these proceedings were concluded at 12:23 PM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3

4                            R U L I N G S

5     DESCRIPTION                                PAGE LINE

6     Motion for Settlement Order with            41    17

7     Injunction -Approved with Noted Change

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Pnina Eilberg, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6
     **Pnina Eilberg**    Digitally signed by Pnina Eilberg
                          DN: cn=Pnina Eilberg, o, ou,
7    _____email=digital1@veritext.com, c=US___
                          Date: 2011.01.14 10:42:12 -05'00'

8    PNINA EILBERG (CET**D-488)

9    AAERT Certified Electronic Transcriber

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, New York 11501

16

17   Date:  January 14, 2011

18

19

20

21

22

23

24

25