**HERRICK, FEINSTEIN LLP**
Two Park Avenue
Joshua J. Angel
Frederick E. Schmidt, Jr.
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
jangel@herrick.com
eschmidt@herrick.com

**BEASLEY HAUSER KRAMER
& GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939

**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

Attorneys for A & G Goldman Partnership,
individually and on behalf of a similarly
situated class

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :

In re:                       :    Adv. Pro. No. 08-1789 (BRL)
                  :

SECURITIES INVESTOR PROTECTION   :    SIPA Liquidation
CORPORATION,               :
                  :    (Substantively Consolidated)
        Plaintiff-Applicant,   :

                  :
        v.              :
                  :

BERNARD L. MADOFF INVESTMENT    :
SECURITIES LLC,          :
                  :
        Defendant.     :
                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION OF PICOWER CLASS ACTION PLAINTIFFS FOR A
DETERMINATION THAT THE COMMENCEMENT OF SECURITIES
CLASS ACTION LAWSUITS AGAINST NON-DEBTOR PARTIES IS
NOT PROHIBITED BY A PERMANENT INJUNCTION ISSUED BY THIS
<u>COURT OR VIOLATIVE OF THE AUTOMATIC STAY</u>**

A & G Goldman Partnership,[1] individually and on behalf of all other similarly situated

(collectively, the "Picower Class Action Plaintiffs" or "Movants"), by and through their

undersigned counsel, as and for their motion (the "Motion") for entry of an order determining

that neither the injunction issued by this Court as part of its order, dated January 13, 2011, nor

the automatic stay provisions (the "Automatic Stay") of section 362 of title 11 of the United

States Code (the "Bankruptcy Code"), bar, prohibit, restrict or prevent Movants from

commencing and prosecuting a securities law class action (the "Class Action") against certain

non-debtor defendants (collectively, the "Picower Defendants") in the United States District

Court for the Southern District of Florida (the "Florida District Court"), respectfully represent as

follows:

## PRELIMINARY STATEMENT

1.      As more fully set forth below, Movants respectfully submit that neither the

permanent injunction issued by this Court nor the Automatic Stay restricts the commencement

and prosecution of the Class Actions in the Florida District Court because:

- The securities law claims asserted by the Movants against the Picower Defendants in the Class Actions are neither "duplicative" nor "derivative" of any claims the Trustee brought or could have brought against the Picower Defendants. Those claims, which belong to BLMIS's investors, are not of the type which could be asserted by the Trustee (as defined below). Moreover, as confirmed by recent decisions rendered by the District Court for the Southern District of New York, the Trustee does not have standing to assert claims against third parties on behalf of customers of BLMIS (as defined below).

- Movants do not seek any relief against the Debtors (as defined below) or property of the Debtors' estate in the Class Action.

2.      Unless barred by order of this Court, Movants intend to file a class action

---

[1] A & G Goldman Partnership, like all other class members, is a "net winner" having (i) received the return of its principal investment with BLMIS, (ii) not received the full amount reflected in its last BLMIS account statement; and (iii) incurred significant economic damages separate and apart from the returns reflected in its last BLMIS account statement.

2

complaint (the "Class Action Complaint") substantially in the form annexed hereto as Exhibit "A" (without exhibits) in the Florida District Court.

## BACKGROUND

### The Madoff/BMIS Bankruptcy Court Cases

3.     On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a Securities Violation Complaint in the United States District Court for the Southern District of New York against the estate of Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities LLC ("BLMIS", and together with Madoff, the "Debtors"). The SEC alleged, *inter alia*, that the Debtors engaged in fraud through investment advisor activities of BLMIS.

4.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), the SEC consented to a combination of its action with an application filed by the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLIMS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

5.     On December 15, 2008, the District Court entered an order pursuant to SIPA which, in pertinent part:

- appointed Irving H. Picard (the "Trustee") as trustee for the liquidation of the business of BLMIS, pursuant to section 78eee(b)(3) of SIPA;

- removed the case to this Court pursuant to section 78eee(b)(4) of SIPA; and

- authorized the Trustee to take immediate possession of the property of the Debtors, wherever located.

6.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff.

3

On June 9, 2009, this Court entered an order substantively consolidating the chapter 7 estate of

Madoff into the BLMIS SIPA proceeding.

**The Picower Settlement**

7.      On May 12, 2009, the Trustee filed a complaint (the "Picower Complaint")

commencing an adversary proceeding against certain of the Picower Parties (as defined below),

captioned *Picard v. Picower*, Adv. Pro. No. 09-1197 (BRL), in which he alleged that prior to the

Filing Date, BLMIS made payments or other transfers (the "Transfers") totaling more than $6.7

billion to one or more of the Picower Parties.  The Picower Complaint asserted claims under,

*inter alia*, section 547 of the Bankruptcy Code for avoidance and recovery of alleged preferential

transfers, sections 544 and 548 of the Bankruptcy Code for avoidance and recovery of alleged

fraudulent conveyances and section 542 of the Bankruptcy Code for turnover of alleged assets of

the Debtors' estates.  The Trustee has since asserted that BLMIS transferred to the Picower

Parties an amount of at least approximately $7.2 billion.

8.      The Trustee thereafter entered into a settlement agreement (the "Picower

Settlement Agreement") with what are referred to therein as the "Picower BLMIS Account

Holders", "Adversary Proceeding Defendants," and the "Picower Releasees" (collectively

referred to herein as the "Picower Parties").  The Trustee presented the Picower Settlement

Agreement to the Court for approval by motion dated December 17, 2010 (the "Picower

Settlement Motion").  The salient terms of the Picower Settlement Agreement are as follows:

- Barbara Picower, one of the Picower Parties, on behalf of herself and the other Picower Parties, agreed to forfeit to the United States Attorney's Office for the Southern District of New York (the "Government") the amount of $7,206,157,717, of which $5 billion was to be credited and paid over to the Trustee with the balance remaining with the Government.

4

- The Trustee provided a broad release to the Picower Parties "from any and all past, present or future claims or causes of action that are, have been, could have been or might in the future be asserted by the Trustee."

- The effectiveness of the Trustee Picower Release was conditioned on only two things: (i) receipt by the Trustee or the Government of the Bankruptcy Settlement Amount; and (ii) the entry of either a final order of this Court approving the Picower Settlement Agreement, or a final order of the District Court approving a forfeiture agreement between the Government and the Picower Parties.

9.      On January 13, 2011, the Court entered an order (the "<u>Picower Settlement Order</u>") approving the Picower Settlement Agreement.  A copy of the Picower Settlement Order is annexed hereto as <u>Exhibit "B"</u>.

10.      The Picower Settlement Order contained the following permanent injunction provision:

> ORDERED, that any BLMIS customer or creditor of the BLMIS estate who filed or could have filed a claim in the liquidation, anyone acting on their behalf or in concert or participation with them, or anyone whose claim in any way arises from or is related to BLMIS or the Madoff Ponzi scheme, is hereby permanently enjoined from asserting any claim against the Picower BLMIS Accounts or the Picower Releasees *that is duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower Releasees.* (emphasis added).

11.      Upon information and belief, the Government Settlement Amount has been paid into escrow for the benefit of the Government, and although orders of this Court and the District Court have been entered, neither order has become final due to pending appeals.

12.      As set forth hereafter, the claims contained in the Class Action Complaint are neither "duplicative or derivative of the claims brought by the Trustee" nor claims "which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower

5

Releasees."[2]

**The Class Action Complaint**

13.     Upon approval of this Court, Movants will commence the Class Action by filing the Class Action Complaint in the Florida District Court.

14.     The Class Action Complaint asserts claims (the "Class Action Claims") under section 20(a) of the Securities Exchange Act of 1934 (as amended, the "Exchange Act") against the Picower Defendants, based on, among other things, the Picower Defendants' control and influence over the decision making, record-keeping, securities transaction recording, and flow of funds and assets at BLMIS, which resulted in the Picower Defendants receiving billions of dollars of unearned profits from BLMIS.

## ARGUMENT

### THE FILING AND PROSECUTION OF THE CLASS ACTION COMPLAINT DOES NOT VIOLATE THE PERMANENT INJUNCTION ENTERED BY THIS COURT

15.     The Class Action Claims are neither "duplicative" nor "derivative" of any claims made by the Trustee against the Picower Defendants.  In fact, neither the Trustee nor the pre-petition Debtor could have asserted the Movants' securities law claims against the Picower Defendants.   Thus, the Movants are not barred under the Picower Settlement Order from asserting their securities law claims against the Picower Defendants.

#### A.     Neither BLMIS Nor the Trustee Could Assert the Class Action Claims on Their Own Behalf

16.     The Class Action Claims cannot be asserted by the Trustee or BLMIS.  The Class Action Claims are based on control person liability pursuant to section 20(a) of the Exchange Act.  In order to assert a claim under Exchange Act section 20(a), a plaintiff must allege a

---

[2] Movants are aware that the Settlement Order and the permanent injunction therein are the subject of appeals to the District Court for the Southern District of New York.  For the purposes of this Motion, Movants take no position on the issues raised in those appeals

HF 7012566 v.11  #99999/1000 12/13/2011 05:38 PM

primary violation of section 10(b) of the Exchange Act.  See, e.g., STMicroelectronics v. Credit

Suisse Group, 775 F. Supp. 2d 525, 535 (E.D.N.Y. 2011).  A plaintiff asserting a claim under

Exchange Act section 10(b) and Securities and Exchange Commission Rule 10b-5,[3] in turn, must

be a "purchaser" or "seller" of securities in order to have standing.  See Amorosa v. Ernst &

Young LLP, 682 F. Supp. 2d 351, 367-69 (S.D.N.Y. 2010).

17.    Here, the Class Action Complaint alleges that the Picower Defendants controlled

BLMIS and that BLMIS committed violations of section 10(b) of the Exchange Act and Rule

10b-5.  Neither BLMIS nor the Trustee (acting on behalf of BLMIS) would have standing to

commence a § 20(a) action against the Picower Defendants because BLMIS was neither a

"purchaser" nor "seller" of its own securities.

18.    Furthermore, a primary violator, such as BLMIS, may not assert a § 20(a) claim

against its alleged controller.  See In re Maxim Integrated Products, Inc. Derivative Litigation,

574 F. Supp. 2d 1046, 1067 (N.D. Cal. 2008) (dismissing § 20(a) claim where plaintiffs sued

derivatively on behalf of primary violator).  Accordingly, even if BLMIS were a purchaser or

seller of BLMIS securities, it still could not assert a § 20(a) claim because it was the primary

violator of § 10(b) of the Exchange Act and Rule 10b-5.

19.    The Trustee, therefore, could not assert a direct § 20(a) claim against the Picower

Defendants, and the Movants' Class Action Claims are not subject to the injunction in the

Picower Settlement Order.

### B.    The Trustee Does Not Have Standing to Assert the Class Action Claims on Behalf of BLMIS Investors

20.    The Trustee does not have standing to commence and prosecute the Class Action

---

[3]  Private rights of action for violations of section 10(b) of the Exchange Act are created by Securities and Exchange Commission Rule 10b-5 ("Rule 10b-5").  See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 126 S.Ct. 1503, 1509 (2006).

Claims on behalf of BLMIS's investors.  Two recent District Court decisions have helped to define the limits of the Trustee's ability to assert claims on behalf of BLMIS creditors against third parties.  Both decisions establish conclusively that the Trustee may not assert claims against third parties on behalf of BLMIS's investors.[4]

### 1. <u>Picard v. HSBC</u>

21.     On July 15, 2009, the Trustee commenced an adversary proceeding (the "<u>HSBC Action</u>") against HSBC Bank PLC and certain of its affiliates (collectively, "<u>HSBC</u>"), seeking approximately $2 billion in preferential or fraudulent transfers, and an additional $6.6 billion in damages under common law theories such as unjust enrichment, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty.  The Trustee alleged that HSBC failed to adequately investigate BLMIS despite the existence of red flags and indicia of fraud.  The United States District Court for the Southern District of New York (Judge Rakoff) withdrew the reference to address a threshold issue of federal non-bankruptcy law; to wit, whether the Trustee had standing to pursue common law claims against third parties on behalf of BLMIS's customers.

22.     On July 28, 2011, Judge Rakoff rendered a decision dismissing the Trustee's customer claims against HSBC for lack of standing.  <u>See</u> <u>Picard v. HSBC Bank PLC</u>, 454 B.R. 25 (S.D.N.Y. 2011) (copy attached as <u>Exhibit "C"</u>).  The Court rejected the Trustee's arguments that he had standing, and held that "the Trustee does not have standing to bring his common law claims either on behalf of customers directly or as bailee of customer property, enforcer of SIPC's subrogation rights, or assignee of customer claims."  454 B.R. at 37.

### 2. <u>Picard v. JPMorgan Chase & Co.</u>

23.     The Trustee also commenced two adversary proceedings against UBS AG and

---

[4] The decisions also note that BLMIS would be barred from asserting direct common law fraud claims under the doctrine of *in pari delicto*.

8

certain of its affiliates (collectively, "UBS," and the adversary proceeding against it, the "UBS Action") and JPMorgan Chase & Co. and certain of its affiliates (collectively, "JPM," and the adversary proceeding against it, the "JPM Action"). The causes of action asserted by the Trustee in the UBS and JPM Actions were substantially similar, and the reference of both actions to the Bankruptcy Court was withdrawn by the District Court (Judge McMahon) in order to address the issue of whether the Trustee had standing to pursue common law claims (including aiding and abetting fraud, breach of duty and conversion, and unjust enrichment) against third party banks such as UBS and JPM on behalf of BLMIS customers.

24.     JPM moved to dismiss the common law claims asserted by the Trustee. UBS move to dismiss as well, joining JPM's arguments, and on November 1, 2011, the District Court (Judge McMahon) issued its decision dismissing the Trustee's common law claims for lack of standing in both the UBS and JPM Actions. See Picard v. JPMorgan Chase & Co., 2011 WL 5170434 (S.D.N.Y. Nov. 1, 2011) (copy attached as Exhibit "D").

25.     In its decision the Court in the JPM Action ruled consistently with Judge Rakoff's reasoning in the HSBC decision and held, *inter alia*, that the Trustee's common law claims belonged to the creditors of BLMIS, not the Trustee and that the Trustee did not otherwise establish any other basis to confer him standing to bring the common law claims. 2011 WL 5170434 at *3-*5. Here, the Trustee likewise does not have standing to assert the Class Action Claims against the Picower Defendants on behalf of the BLMIS investors.

26.     Because the Trustee could not assert the Class Action Claims against the Picower Defendants, either as a direct claim of the BLMIS estate or derivatively on behalf of BLMIS's investors, the Class Action Claims are neither duplicative of nor derivative of claims brought by the Trustee against the Picower Defendants. Accordingly, it is respectfully submitted that the

9

Class Action Claims are not permanently enjoined by the Picower Settlement Order.

## THE AUTOMATIC STAY DOES NOT APPLY

27.     Just as the Class Action is not barred by the permanent injunction in the Picower Settlement Order, it is also not subject to the Automatic Stay.  The Class Action Claims do not fall within any of the categories of claims against the Debtors or property of their estates that are stayed by section 362 of the Bankruptcy Code.  The Debtors are not named as parties, nor does the Class Action Complaint seek a judgment or other remedy or relief against the Debtors or their property, directly or indirectly.  Importantly, the Class Actions <u>do not seek any of the proceeds of the Trustee's settlement with the Picower Defendants</u>.  By its plain language, section 362(a)(1) of the Bankruptcy Code stays actions only against a debtor.  Courts continually have held that the automatic stay is inapplicable to actions and proceedings against non-debtors.  <u>See Teachers Ins. & Annuity Ass'n v. Butler</u>, 803 F.2d 61, 65 (2d Cir. 1986); <u>In re United Health Care Org.</u>, 210 B.R. 228, 232 (S.D.N.Y. 1997); <u>Ripely v. Mulroy</u>, 80 B.R. 17, 19 (E.D.N.Y. 1987).  <u>See</u> <u>also</u> <u>Credit Alliance Corp. v. Williams</u>, 851 F.2d 119, 121 (4th Cir. 1988) ("The plain language of § 362 ... provides only for the automatic stay of judicial proceedings and enforcement of judgments against the debtor or the property of the estate.") (citation and internal quotations omitted).

28.     Here, the Class Action Complaint asserts claims against only the Picower Defendants and not the Debtor.  Moreover, the Class Action Claims will not affect property of the Debtor's estate.  Nor will Movants be usurping or interfering with causes of action belonging to the Trustee.  As set forth above, the Trustee does not have standing to assert § 20(a) claims against the Picower Defendants.  Moreover, the Trustee has already settled his claims against the Picower Defendants and the Movants do not seek to upset that settlement.  Accordingly, the

10

Automatic Stay does not apply to the Class Action Claims.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Movants respectfully request that the Court (a) enter

an Order (i) determining that neither the permanent injunction contained in the Picower

Settlement Order nor the Automatic Stay prohibits the Movants from commencing and fully

prosecuting the Class Actions.

Dated:  New York, New York
       December 13, 2011

Respectfully submitted,

       /s/Joshua J. Angel

**HERRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
Joshua J. Angel
Frederick E. Schmidt, Jr.

**BEASLEY HAUSER KRAMER &
GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939

- and -

**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

Attorneys for A & G Goldman Partnership,
individually and on behalf of a similarly
situated class

11

08-01789-smb    Doc 5610-13    Filed 03/11/14    Entered 03/11/14 18:44:16    Exhibit A
Pg 12 of 89

# EXHIBIT A

08-01789-smb    Doc 4300-13    Filed 12/3/14    Entered 12/3/14 13:44:16    Exhibit K
Pg 13 of 29

# DRAFT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No: _____

A & G GOLDMAN PARTNERSHIP, individually
and on behalf of a class of similarly situated Plaintiffs,

vs.

CAPITAL GROWTH COMPANY;
DECISIONS, INC.;                                    **COMPLAINT-CLASS ACTION**
FAVORITE FUNDS;
JA PRIMARY LIMITED PARTNERSHIP;                     **Jury Trial Demanded**
JA SPECIAL LIMITED PARTNERSHIP;
JAB PARTNERSHIP;
JEMW PARTNERSHIP;
JF PARTNERSHIP;
JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP;
JMP LIMITED PARTNERSHIP;
JEFFRY M. PICOWER SPECIAL COMPANY;
JEFFRY M. PICOWER, P.C.;
THE PICOWER FOUNDATION;
THE PICOWER INSTITUTE OF MEDICAL RESEARCH;
THE TRUST F/B/O GABRIELLE H. PICOWER;
BARBARA PICOWER, individually, and as
Executor of the Estate of Jeffry M. Picower,
and as Trustee for the Picower Foundation
and for the Trust f/b/o Gabriel H. Picower.
_____/

Plaintiff, A & G Goldman Partnership, through their undersigned attorneys, on its own

behalf and on behalf of a similarly situated class of plaintiffs, hereby sues the Defendants and

allege the following based upon the investigation by Plaintiffs' counsel, which includes: (1)

review of filings made by the trustee (the "Trustee") in the bankruptcy proceeding concerning

Bernard L. Madoff Investment Securities, LLC ("BLMIS") including the documents filed in

connection with the Bankruptcy Estate settlement with the Defendants in December 2010 and

HF 7090467v.4 #99999/1000

# DRAFT

later which contained new information as to Picower's control of BLMIS and the existence and extent of the Picower margin loan described therein; (2) review of the filings contained in the action commenced by the Securities and Exchange Commission against Bernard L. Madoff ("Madoff"); and (3) a review of documents and pleadings contained in the criminal proceeding brought against Madoff. This investigation has also included a review of publically available documents filed by or on behalf of the Defendants, including documents prepared by the Picower Foundation, as well as pleadings filed by the Trustee and by the Defendants in connection with various actions brought by the Trustee in the BLMIS bankruptcy. Plaintiffs believe that substantial additional evidentiary support exists to support the allegations set forth herein.

## <u>INTRODUCTION AND SUMMARY OF CLAIMS</u>

1.      Madoff is widely regarded as the crook of the century and the primary beneficiary of the largest Ponzi scheme in history, which he operated through BLMIS. In fact, however, Madoff was not the most substantial beneficiary of the Ponzi scheme. The Defendants were. The accounting performed by the Madoff bankruptcy Trustee reveals that the Defendants received at least $7.2 billion of BLMIS customers' cash. This figure is astounding not only in absolute terms, but also because it represents almost 40% of the approximately $18 billion of the total assets of all BLMIS customers.

2.      While Madoff and a few employees operated the Ponzi scheme on a day to day basis, they did so under the direction and control of the Defendants who participated in the fraud for their own benefit by directing the creation of false books and records at BLMIS. The Defendants instructed Madoff and his employees to make false transactions and book entries to document allegedly profitable securities transactions in the Defendants' BLMIS accounts that in fact never occurred, but instead provided the Defendants with the returns that they "wanted to

2

08-01789-smb    Doc 4800-13    Filed 2/13/14    Entered 2/13/14 18:44:16    Exhibit K
Pg 15 of 89

# DRAFT

achieve."  BLMIS complied, which allowed the Defendants to steal billions of dollars of BLMIS customers' assets in the form of the fictitious profits based on the false trading documentation.

3.      This securities class action lawsuit is filed on behalf of all BLMIS customers whose BLMIS account statements as of the date of the BLMIS bankruptcy reflected net account values in excess of the amount that such customers actually received from BLMIS to date and who have not received and are not eligible to receive any payment directly or indirectly from the Securities Investor Protector Corporation ("SIPC").  The Plaintiff and all class members are BLMIS customers who have not and will not receive any payments from SIPC or payments from the Madoff/BLMIS estate.

4.      This action alleges only control person liability as against the Defendants under section 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  The Defendants' control over the day to day financial records of BLMIS, along with the astounding amount of fictitious profits that the Defendants withdrew from BLMIS, establishes the Defendants' pervasive and fraudulent operational control of BLMIS.  The Defendants exerted their control over BLMIS to steal securities and cash assets belonging to the class members.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and under Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. §240.10b-5.

6.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and under § 27 of the Exchange Act, 15 U.S.C. §78aa.  At all relevant times the principal place of business of most of the Defendants was Palm Beach, Florida.

# DRAFT

Substantial acts, if not all of the acts, committed in the furtherance of the control relationship occurred in the state of Florida.

    7.      Venue is proper in this district pursuant to § 27 of the Exchange Act ,15 U.S.C. §78aa, 28 U.S.C. §1391(b), because several of the Defendants reside or are headquartered in this judicial district, and the acts and transactions alleged herein occurred in substantial part in this judicial district.

    8.      In connection with the wrongs alleged herein, the Defendants used the instrumentalities of interstate commerce, including the United States mails, interstate wire and telephone facilities and the facilities of national securities markets.

## THE PARTIES

    9.      Plaintiff A & G Goldman Partnership is a New York partnership with its principal place of business in the State of New York.  Plaintiff brings this class action on behalf of itself and a putative class of persons similarly situated for damages and other relief arising from the Defendants' wrongful conduct described herein.

    10.      Jeffry M. Picower ("Picower") was a resident of Palm Beach, Florida, and Fairfield, Connecticut, prior to and at the time of his death on October 25, 2009.  Picower was a highly sophisticated investor, accountant and attorney who participated in the Madoff Ponzi scheme for over 20 years, knowing that he was participating in a fraud.  Picower had vast experience in the purchase and sale of businesses, including health care and technology companies.  He had also been personally responsible for managing hundreds of millions, if not billions, of dollars of assets, and he had developed uncommon sophistication in trading securities and evaluating returns therefrom.  Upon information and belief, Picower was closely associated with Madoff, both in business and socially, for the last 30 years.  Picower held an individual

4

# DRAFT

BLMIS account in the name of "Jeffry M. Picower," with an account address of 1410 South Ocean Boulevard, Palm Beach, Florida.  Picower was a trustee of the Picower Foundation, and Chairman of the Board of Defendant Decisions Incorporated.

11.    Defendant Barbara Picower is the Executor of the Estate of Jeffry M. Picower, which is being probated in the State of New York.

12.    Defendant Barbara Picower is a person residing at 1410 South Ocean Boulevard, Palm Beach, Florida 33480.  Barbara Picower is Picower's surviving spouse.  According to the Trustee, Barbara Picower holds an individual account at BLMIS in the name "Barbara Picower," with the account address of 1410 South Ocean Boulevard, Palm Beach, Florida 33480, and Barbara Picower is trustee for Defendant Trust f/b/o Gabrielle H. Picower, an officer and/or director of Defendant Decisions Incorporated, and trustee and Executive Director of the Picower Foundation.

13.    Defendant Decisions Incorporated is a corporation organized under the laws of Delaware with a principal place of business at 950 Third Avenue, New York, New York 10022 and an alternate mailing address on its BLMIS account listed as 22 Saw Mill River Road, Hawthorne, New York, 10532.  According to the Trustee, the Decisions Incorporated office in Hawthorne was merely a store-front office through which little or no business was conducted, and Decisions Incorporated is a general partner of Defendants Capital Growth Company, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JLN Partnership, JMP Limited Partnership and Jeffry M. Picower Special Co.

14.    Defendant Capital Growth Company purports to be a limited partnership with a mailing address for its BLMIS account listed at 22 Saw Mill River Road, Hawthorne, New York,

HF 7090467v.4 #99999/1000

# DRAFT

10532, care of Decisions Incorporated. According to the Trustee, Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of Capital Growth Company, and Decisions Incorporated and Picower transact/transacted business through this entity.

15.     Defendant JA Primary Limited Partnership is a limited partnership organized under the laws of Delaware with a principal place of business at 25 Virginia Lane, Thornwood, New York 10594. According to the Trustee, Defendant Decisions Incorporated and/or Picower serves/served as General Partner or Director of JA Primary Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this entity.

16.     Defendant JA Special Limited Partnership is a limited partnership organized under the laws of Delaware with a principal place of business at 25 Virginia Lane, Thornwood, New York, New York 10594.  According to the Trustee, Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JA Special Limited Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

17.     According to the Trustee, Defendant JAB Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532. Upon information and belief, Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JAB Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

18.     According to the Trustee, Defendant JEMW Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River

HF 7090467v.4 #99999/1000

# DRAFT

Road, Hawthorne, New York, 10532; and Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JEMW Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

19.    According to the Trustee, Defendant JF Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JF Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

20.    According to the Trustee, Defendant JFM Investment Company is an entity through which Decisions Incorporated, and/or Picower transact/transacted business, with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and JFM Investment Company is a Limited Partner of Capital Growth Company, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of JFM Investment Company.

21.    According to the Trustee, Defendant JLN Partnership is a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Decisions Incorporated and/or Picower serve/served as General Partner or Director of JLN Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

22.    Defendant JMP Limited Partnership is a limited partnership organized under the laws of Delaware, with a principal place of business at 25 Virginia Lane, Thornwood, New York 10594.    According to the Trustee, Decisions Incorporated and/or Picower serve/served as

7

08-01789-smb   Doc 5810-13   Filed 12/31/14   Entered 12/31/14 18:44:16   Exhibit K
Pg 20 of 89

# DRAFT

General Partner or Director of JMP Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

23.     According to the Trustee, Defendant Jeffry M. Picower Special Co. is an entity through which Decisions Incorporated, and/or Picower transact/transacted business, with a mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Jeffry M. Picower Special Co.

24.     According to the Trustee, Defendant Favorite Funds is an entity through which Picower transacted business, with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Favorite Funds.

25.     According to the Trustee, Defendant Jeffry M. Picower P.C. purports to be a limited partnership with a listed mailing address at 25 Virginia Lane, Thornwood, New York, New York 10594, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Jeffry M. Picower P.C., and Decisions Incorporated, and/or Picower transact/transacted business through this defendant entity.

26.     Defendant Picower Foundation is a trust organized for charitable purposes with Picower listed as donor, and Picower and Barbara Picower, among others, listed as Trustees during the relevant time period. Picower Foundation's addresses are reported as 1410 South Ocean Boulevard, Palm Beach, Florida 33480 and 9 West 57th Street, Suite 3800, New York, New York 10019.

HF 7090467v.4 #99999/1000

# DRAFT

27.    According to the Trustee, Defendant Picower Institute for Medical Research is a nonprofit entity organized under the laws of New York, with a principal place of business at 350 Community Drive, Manhasset, New York 11030.

28.    According to the Trustee, Defendant Trust f/b/o Gabrielle H. Picower is a trust established for beneficiary Gabrielle H. Picower, who is the daughter of Picower and Barbara Picower, with Defendant Barbara Picower listed as trustee, and the trust's BLMIS account address reported as 1410 South Ocean Boulevard, Palm Beach, Florida 33480.

29.    On information and belief, the Defendants listed in paragraphs 13 through 28 (collectively the "Picower Entity Defendants") were dominated, controlled and used as a mere instrumentality of Picower to advance his interests in, and to participate in and control, the Madoff Ponzi scheme.  Thus, the Picower Entity Defendants are the alter egos of Jeffry Picower and of each other.

## THE MADOFF FRAUD AND PICOWER'S CONTROL

### Madoff Admits to Committing Securities Fraud

30.    BLMIS is a New York Limited Liability Corporation that was wholly owned by Madoff.  BLMIS was founded in 1959.  Madoff as Founder, Chairman, Chief Executive Officer, and sole shareholder ran BLMIS as his alter ego with several family members and a few employees.  BLMIS was registered with the SEC as a Securities Broker Dealer under § 15 of the Exchange Act.

31.    The portion of the BLMIS customer business at issue was operated pursuant to account documentation which afforded BLMIS a power of attorney and complete discretion over trading in the relevant BLMIS accounts.  BLMIS described its trading strategy to customers falsely as involving a complicated option strategy which generated consistent returns.

9

# DRAFT

32.     The BLMIS program of comingled options and stock trading were securities and investment contracts under the Exchange Act and customer "participation" therein involved the purchase and sale of securities.

33.     BLMIS customers received monthly statements showing the purchase and sales of securities in their accounts along with the profits purportedly realized from these securities transactions.  But the transactions reported on these statements were a fabrication.  The securities transactions described in the monthly statements either never occurred or rarely occurred, and the profits reported were entirely fictitious.  Madoff admitted at his plea hearing that he had never purchased any of the securities in BLMIS customer accounts.  Following an extensive and lengthy investigation, the Trustee for BLMIS has stated that, except for isolated individual transactions, there is no record of BLMIS having purchased or sold any securities in BLMIS customer accounts.

34.     The money that customers paid to BLMIS in connection with their investment contracts with BLMIS was not used to purchase securities as described, but instead was used to make distributions to other investors, primarily to the Defendants.

35.     On December 11, 2008, Madoff was arrested by federal agents and charged with criminal violation of the federal securities laws, including securities fraud, investment advisor fraud, and mail and wire fraud. On the same day, the SEC filed a complaint in the United States District Court for the Southern District of New York against Madoff and BLMIS, also alleging that Madoff and BLMIS engaged in securities fraud.  *See* **Exhibit "A"** hereto.

36.     On December 15, 2008, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, pursuant to 15 U.S.C. § 78eee(a)(4)(B) of the Securities and Investor Protection Action

10

# DRAFT

("SIPA"), SIPC filed an application in the District Court alleging that BLMIS was not able to meet its obligations to its securities customers as they came due and that such customers needed the protections afforded by SIPA.

37.    Also on December 15, 2008, the District Court appointed Irving H. Picard, Esq., as trustee ("Trustee") for the substantively consolidated liquidation of Madoff's estate and of BLMIS under SIPA.

38.    On March 10, 2009, the federal government filed an eleven count criminal information against Madoff in the case styled *United States v. Madoff*, 09-CR-213 (S.D.N.Y.). *See* **Exhibit "B"** hereto.

39.    On March 12, 2009, Madoff plead guilty to all eleven-counts of the criminal information, including Count I for securities fraud under § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  *See* **Exhibit "C"** hereto at 4-5; 35.  As a result of the guilty plea, it is indisputable that Madoff and BLMIS, which he wholly owned and controlled, violated § 10(b) of the Exchange Act and Rule 10b-5.

### Through Picower's Direct Participation and Control, the Defendants Become the Primary Beneficiaries of the Madoff Fraud.

40.    Each Defendant is an entity or individual operating as part of a control group of BLMIS.  The Defendants are commonly controlled or were commonly controlled by Picower and his wife Barbara Picower.

41.    The volume, pattern and practice of the Defendants' fraudulent withdrawals from BLMIS and their control over fraudulent documentation of underlying transactions at BLMIS establishes the Defendants' "control person" liability under the federal securities laws.

42.    Picower, now deceased, was a sophisticated investor, accountant and lawyer. Picower, directly and through the Defendants, had a very close relationship with Madoff.

11

HF 7090467v.4 #99999/1000

08-01789-smb    Doc 4800-13    Filed 12/31/14    Entered 12/31/14 18:44:16    Exhibit K
Pg 13 of 23

# DRAFT

Picower knew Madoff for decades and was an investor in BLMIS since at least the 1980s. Madoff served as a Trustee for one of Picower's foundations, the Picower Institute for Medical Research.

43.　　Through the other Defendants and through his relationship with Madoff, Picower became privy to information about BLMIS and its operations not available to other customers.

44.　　In interviews with author Diana Henriquez, Madoff stated that Jeffry Picower knew of the existence of his scheme and that Jeffry Picower was taking fraudulent profits from the BLMIS customer accounts.

45.　　Picower was able to control BLMIS and use BLMIS as "a personal piggy bank" by withdrawing funds for various entities he controlled, even if there was no legitimate underlying profitable transaction warranting a distribution of such funds.

46.　　In fact, the Defendants benefited in a much more substantial way than Madoff and his family.　The Trustee has alleged in an adversary action against the Defendants that the Defendants received at least $7.2 billion from BLMIS, net of their investments.　*See* Trustee's Complaint, **Exhibit "D"** hereto and Trustee's Response to Mot. to Dismiss, **Exhibit "E"** hereto.

47.　　The Picower Defendants were far and away the primary beneficiaries of the Madoff fraud, having received almost 40% of the approximately $18 billion lost by BLMIS customers.

48.　　In order to realize and withdraw their false profits, Picower, through the Defendants and other agents, directed and effected false trading documentation at BLMIS with respect to the Defendants' BLMIS accounts.

49.　　The Defendants directed BLMIS to prepare fraudulent trading records and fraudulent trading results, which effected returns in their accounts based upon transactions which

12

HF 7090467v.4 #99999/1000

# DRAFT

in fact never took place.  Picower directly and through the other Defendants initiated, directed, coordinated and cause to be effected false records and back dated records at BLMIS, which resulted in the appearance of trading profits in these accounts.  Picower then withdrew these false profits from the Defendant accounts.  This direction of trading activity and direction of preparation of false trading records over a multi-year period shows control of the specific fraudulent activity which constituted the underlying Ponzi scheme and the underlying violations of 10b-5 engaged in by BLMIS.

50.    The false trading documentation maintained by BLMIS shows that the Defendants' accounts generated annual rates of return well in excess of any conceivable rates of return for the relevant trading strategy in these accounts.  For example, two of the BLMIS accounts controlled by Picower generated annual rates of return of over 100% for four consecutive years from 1996 through 1999.  According to the Trustee "between 1996 and 2007 defendants' 24 regular trading accounts enjoyed 14 instances of supposed annual returns of more than 100%. . . ."  During this time period the annual rates of return for certain of defendants' accounts ranged from 120% to over 550%.  In actuality, Picower directly and through the Picower defendants used his ability to control the BLMIS records maintained to cause the preparation of trading records which purported to show these trading profits, which in fact never occurred.  By orchestrating the creation of these false trading records, Picower enabled himself to transfer proceeds from these purported transactions  to his own account and then to third party bank accounts which he controlled.  The funds he withdrew belonged to other BLMIS customers including the class members.

51.    The pattern of transactions in the Defendants' accounts reveals their fraudulent nature.  Picower and the other Defendants received fraudulent profits from the various Madoff

13

# DRAFT

accounts from at least December 1995 through December 2008. Each quarter, Picower, directly and through the other Defendants and other agents, directed the withdrawal of large sums of money divided into odd numbers spread over many of the Defendant accounts. When added together, these withdrawals usually equaled large even numbered sums. For example, on January 2, 2003, Picower withdrew $1,378,852 from his JLM Partnership account, yet the total withdrawals across all the Defendant accounts for that single day amounted to $250 million.

### An Illustration of Picower's Control:
### The $6 Billion Decisions Incorporated Margin Loan

52.    Several BLMIS accounts controlled by Picower and operated under the name of Decisions, Inc. provide concrete examples of Picower's control over BLMIS. Picower, directly and through the other Defendants, was able to withdraw "funds" from the Decisions, Inc. account in the form of a "loan" of approximately *$6 billion*, even though the account had no trading activity or cash or related assets to support such borrowing. The terms and amounts of the "loan" became known in connection with the December 2010 settlement between the Trustee and the Defendants.

53.    Borrowing in a brokerage account is regulated by margin rules established by the Federal Reserve System and by the New York Stock Exchange. These rules limit the amount that an account holder can borrow from his or her securities account based upon the value of securities that can be used as collateral for the loan. Picower was able to borrow almost $6 billion in the Decisions, Inc. account (*i.e.*, steal it from other BLMIS account) without the requisite collateral.

54.    The operations of the Decisions account establishes Picower's control of the cash flows at BLMIS and his unfettered ability to remove money from the BLMIS customer accounts for his own benefit and as he saw fit. The Decisions, Inc. accounts were the primary source of

14

# DRAFT

the Picower Defendants' cash withdrawals from BLMIS.  These accounts reflect virtually no trading activity and virtually no securities positions or other collateral for loans from this account.

55.    Picower, directly and through the other Defendants, made distribution requests and directed cash withdrawals from this account ranging from $50 million to $150 million five or more times per year for a total of approximately $6 billion.  These withdrawals were inconsistent with legitimate business activity and inconsistent with margin regulations that would permit such a loan only if the account maintains substantial collateral equal to approximately twice the amount of such loans.  Picower's ability to make such irregular withdrawals without collateral and in a manner inconsistent with applicable regulations shows that he controlled cash flow and the cash distributions at BLMIS during the relevant time period.  At all relevant times Picower and the Picower defendants knew that the withdrawals could only be the property of other BLMIS customers, including the plaintiff and other class members.

**Further Illustration of the Picower defendants Control: Directing
BLMIS to Backdate False Transactions to Create Fictitious Profits**

56.    The Defendants' control of BLIMS's operations was such that they were able to direct BLMIS employees to create and document false and non-existent securities transactions, which, in turn, were designed to generate fictitious profits for Picower to withdraw from the Defendants' BLMIS accounts.

57.    The Defendants' ability to reconfigure for their own fraudulent purpose the actual trading records maintained by BLMIS, a highly regulated broker and investment advisor, shows that the Defendants exercised control over the day to day operations of BLMIS and specifically over the trading activity that constituted a  violation of the securities laws.

15

# DRAFT

58.    By way of example, as stated in the Trustee's complaint, on or about April 24, 2006, Defendant Decisions, Inc. opened a new account with BLMIS known as the Decisions, Inc. 6 account.  This account was opened with a wire transfer of $125 million.  The Defendants instructed BLMIS to back date trades in this account to January 2006, which was four months prior to the time the account was actually opened.   BLMIS employees carried out the Defendants' direct instructions and fabricated and back dated trades in the Decision 6 account. This resulted in the net value of the account increasing by almost $40 million, or 30%, in less than two weeks after it "actually opened."  The Defendants' ability to affect back dated trades in the Decisions 6 account generated phony paper profits which had appreciated only on a hindsight basis and represented part of a continuous pattern of the Picower defendants directing the falsification of trading records at BLMIS, which allowed Picower to pilfer from other BLMIS accounts.

59.    By way of further example, on or about December 29, 2005, Picower's assistant April Friehlich, acting on behalf of the Defendants, faxed BLMIS a letter signed by Picower that directed BLMIS to "realize" a gain of $50 million in the Picower accounts.  Upon direction from Picower and Friehlich, BLMIS sold large amounts of stock in Agilent Technologies and Intel Corporation in various Defendant accounts on a back dated basis.  Friehlich directed the sales of large amounts of these purported securities on or about December 29, 2005, requesting that the sales be booked to take place on an earlier date, *i.e.*, December 8 or 9.  BLMIS backdated the trades at Picower's direction and on Picower's behalf for the purpose of generating phony paper profits of approximately $46.3 million, which made up most of Picower's requested $50 million distribution.

16

HF 7090467v.4 #99999/1000

# DRAFT

60.    Picower, on behalf of the Defendants, directed and caused BLMIS to affect other back dated transactions generating phony profits.   During December 2005, the Defendants purported to purchase the following securities on margin in their accounts: Google, Diamond Offshore Drilling, Inc., and Burlington Resources, Inc.   This resulted in a purported gain of almost $80 million.  These purchases purportedly occurred between January 12 and 20, 2005 but were fictitious, as the transactions actually occurred eleven months later in December 2005. Defendants caused BLMIS to create false book and record entries in order to create a phony $80 million profit on "transactions" that did not take place on the dates recorded on BLMIS's records.

61.    The Defendants also directed and orchestrated the preparation of false statements in May 2007, which reflected millions of dollars in securities transactions which reportedly took place in earlier in 2007, but which in fact did not take place at all.

## CLASS ACTION ALLEGATIONS

62.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).   The definition of the Plaintiff class in this action is: (1) all brokerage customers of BLMIS who at any time entrusted securities or cash to BLMIS and at such time granted to BLMIS or its employees or agents trading authority and discretion with respect to assets in such brokerage accounts for trading in the BLMIS stock/options trading program (the "BLMIS Discretionary Trading Program"); and (2) who have not received the full account value of their BLMIS account(s) as of the date of the BLMIS bankruptcy/SIPC liquidation; and (3) who have not received and are not eligible to receive any payments directly or indirectly from SIPC or from the BLMIS estate on behalf of SIPC (the "Class").   The Class excludes the Defendants named herein and members of the Madoff family.

17

08-01789-smb   Doc 5810-13   Filed 12/31/14   Entered 12/31/14 18:44:16   Exhibit AK
Pg 30 of 89

# DRAFT

63.     The Class meets the requirements for class certification under Rule 23(a) of the Federal Rules of Civil Procedure.

a.     *Numerosity.*  The members of the class are so numerous that joinder of all members is impracticable.  Based on disclosures made by the SIPA Trustee the Class has thousands of members.  Class members may be identified from records maintained by BLMIS and the SIPA Trustee.  The members of the class may be notified of the pendency of this action by mail or otherwise using a form of notice similar to that customarily used in securities class actions.

b.     *Commonality.*  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are whether the Federal Securities Laws specifically §20(a) of the Exchange Act was violated by defendants as alleged herein, whether members of the class have sustained damages as a result thereof and if so what is the proper measure of such damages.

c.     *Typicallity.*  Plaintiff's claims are typical of the claims of members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law as alleged herein.

d.     *Adequacy.*  Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class.  Plaintiff has retained competent and experienced counsel in class and securities litigation.

64.     This class action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3).  The common issues outlined herein predominate over any individual issues in the case.

HF 7090467v.4 #99999/1000

# DRAFT

A class action is superior to all other available methods of the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the class to individually address the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## TOLLING THE STATUTE OF LIMITATIONS

65.      Any applicable statute of limitations with respect to Plaintiff's claims has been tolled since no later than February 16, 2010, by the filing of the class action complaint against all of the Defendants named here in the action captioned *Adele Fox, Individually and On Behalf of a Class of Similarly Situated v. Barbara Picower, Individually, and as Executor of the Estate Of Jeffry M. Picower, et al.,* case no. 10-80252-CV-Ryskam/Vitunac (S.D. Fla.).   *See American Pipe and Construction Company v. Utah*, 414 U.S. 538, 552 (1974); *In re World Comm Securities Litigation*, 496 F.3d 245 (2d Cir. 2007).

## BLMIS'S VIOLATION OF §10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

66.      BLMIS is currently subject to a federal bankruptcy proceeding, enjoys the benefit of the bankruptcy automatic stay, and thus cannot be named as a defendant in this action. Based upon: (1) the complaints filed by the Justice Department against Madoff and his guilty plea, (2) the complaints filed by the SEC against  Madoff and BLMIS, and (3) the factual allegations made by the Trustee against BLMIS in the many claims he has filed in the bankruptcy proceeding, it is beyond dispute that BLMIS engaged in the largest Ponzi scheme in U.S. history and committed a substantial violation of the § 10(b) of the Exchange Act and Rule 10b-5 during the Class Period.

19

HF 7090467v.4 #99999/1000

# DRAFT

67.    BLMIS was a New York limited liability company wholly owned by Madoff. BLMIS operated from its principle place of business at 885 Third Avenue, New York, NY. Madoff was Founder, Chairman, Chief Executive Officer and the sole shareholder of BLMIS.

68.    Madoff ran BLMIS together with several family members and a few employees subject to the controlling influence of the Picower Defendants. BLMIS was registered with the SEC as a securities broker dealer under section 15 of the Securities Exchange Act.

69.    Class members purchased securities issued by BLMIS, which consisted of a discretionary trading account purportedly investing in stock and options and operated pursuant to a power of attorney (the "BLMIS Discretionary Trading Program"). Each class member received monthly statements purportedly reflecting the securities in their account, the trading activity during the month, and the profits earned over the relevant time period. The monthly statements for customer accounts depicted consistent profits on a monthly basis and rarely, if ever, showed loses.

70.    In fact, the monthly statements and the purported trading and profits reflected therein were entirely fictitious.  At his criminal plea hearing, Madoff admitted that neither he nor any BLMIS employee ever purchased any of the securities described in the monthly statements. The Trustee has investigated the substance activity in the accounts and, with the exception of isolated transactions for certain clients other than class members, there is no record of BLMIS having purchased or sold any securities..

71.    Madoff has admitted, and it is a fact, that BLMIS and the BLMIS Discretionary Trading Program operated as a Ponzi scheme and Madoff and other BLMIS employees concealed this ongoing fraud in an effort to hinder and delay customers of BLMIS from discovering this fraud.  The fraud involved overt material misrepresentations on monthly account

HF 7090467v.4 #99999/1000

# DRAFT

statements and confirmations representing transactions which did not take place as well as reporting false profits.

72.    The Ponzi scheme also involved the direct theft of customer assets in the BLMIS Discretionary Trading Program by Madoff, his family, and by certain favored customer including the Picower Defendants.

73.    Monies received from investors in connection with the BLMIS Discretionary Trading Program were not invested as described by BLMIS in confirmations and monthly statements, but instead were used to make distributions to selected other investors, primarily Madoff and the controlling Picower Defendants.

74.    The money sent to BLMIS for investment in the BLMIS Discretionary Trading Program was in fact stolen by Madoff and the Picower Defendants.

75.    In or about December 2008, the Ponzi scheme collapsed when customer redemptions in the BLMIS Discretionary Trading Program overwhelmed the amount of money which was being placed in new BLMIS accounts.  As result of the Ponzi scheme, Madoff and his family defalcated at least $800 million of *bona fide* customer assets, and the Picower Defendants defalcated at least $7.2 billion.  The BLMIS Ponzi scheme also involved the preparation and publication to investors and brokerage customers of false BLMIS audit reports prepared by Friehlich and Horowitz as members of a three person accounting firm in Rockland County, New York.  BLMIS provided the financial reports to regulators and investors in the BLMIS Discretionary Trading Program for the purpose of their reliance thereon.  The accounting reports falsely reported that Madoff was effecting customer transactions and that BLMIS was profitable and generating customer profits in customer accounts.

# DRAFT

76.    At all times relevant hereto, the BLMIS's actual liabilities were billions of dollars greater than its assets.  As a result, BLMIS and the BLMIS Discretionary Trading Program were rendered insolvent by the Ponzi scheme. Customer assets were effectively stolen by Madoff and the Picower Defendants in connection with this Ponzi scheme.

77.    The BLMIS securities fraud involved the overt and continuing material misrepresentations with respect to the trading activity and profits in the BLMIS Discretionary Trading Program, the use of materially false accounting statements, and the theft of customer securities and cash in connection with the ongoing Ponzi scheme.

**Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated
Thereunder By Non-Defendant BLMIS as Predicate for Count I Herein**

78.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

79.    During the Class Period, BLMIS carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) misappropriate the assets of BLMIS customers who purchased securities issued by BLMIS in connection with the BLMIS Discretionary Trading Program, as alleged herein; and (ii) cause brokerage customers of BLMIS and investors in the BLMIS Discretionary Trading Program to entrust securities for safe-keeping with BLMIS during the Class Period.  In furtherance of this unlawful scheme, plan, and course of conduct, BLMIS and its agents, including Madoff took the actions set forth herein.  As a result, Plaintiff and the other members of the Class suffered damages in connection with the undisclosed and unauthorized theft of their securities, cash assets and the misappropriation of the proceeds thereof, as alleged above.

80.    BLMIS (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of materials fact and/or omitted to state material facts necessary to make the

HF 7090467v.4 #99999/1000

# DRAFT

statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon brokerage customers who entrusted assets to BLMIS and who purchased securities issued by BLMIS in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

81.    As part and in furtherance of this conduct, BLMIS engaged in an ongoing scheme to misappropriate funds which constituted the proceeds of sales of customers' securities.

82.    BLMIS directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to misappropriate funds which constituted the proceeds of sales of securities (or the securities themselves or cash) held by BLMIS as securities custodian and broker for Plaintiff and the Class members.

83.    BLMIS made untrue statements of material fact and/or omitted to state material facts necessary to make their statements not misleading, and they employed devices, schemes and artifices to defraud, and engaged in acts, practices, and a course of conduct in an effort to mislead and misappropriate the assets of BLMIS brokerage customers and participants in the BLMIS Discretionary Trading Program.  Such misconduct included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about BLMIS and the BLMIS Discretionary Trading Program, its financial performance and its business operations in the light of the circumstances under which they were made, not misleading, and which included engaging in manipulative and deceptive transactions, practices and courses of business which operated as a fraud and deceit upon the customers of BLMIS and participants in the BLMIS Discretionary

HF 7090467v.4 #99999/1000

# DRAFT

Trading Program during the Class Period, including the surreptitious and unauthorized theft of customer assets and securities.

84.     BLMIS had actual knowledge of the misrepresentations and omissions of material facts set forth herein.   BLMIS's material misrepresentations and/or omissions were done knowingly for the purpose and effect of inflating BLMIS' financial results and to enrich defendant and the Picower Defendants.   At all relevant times, BLMIS was aware of the dissemination of artificially inflated financial information to the investing public which it knew was materially false and misleading.

85.     As a result of the manipulative and deceptive conduct and the dissemination of the materially false and misleading information as set forth above, Plaintiffs and the Class members suffered injury.

86.     At the time of the misrepresentations, omissions and manipulative and deceptive conduct, Plaintiff and other members of the Class were ignorant of their falsity  and believed them to be true, and they were ignorant of the manipulative and deceptive conduct complained of herein.  Had Plaintiffs and the other members of the Class known the truth regarding BLMIS's materially false statements and deceptive and manipulative conduct alleged above, which were not disclosed during the Class Period, Plaintiff and other members of the Class would not have entrusted their assets with BLMIS or purchased the BLMIS securities.

87.     By virtue of the foregoing, BLMIS has violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

88.     As a direct and proximate result of BLMIS's wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with the undisclosed and

HF 7090467v.4 #99999/1000

# DRAFT

unauthorized sale of their securities and the misappropriation of the proceeds thereof, as alleged
above.

## COUNT I

### VIOLATIONS OF 20(a) OF THE EXCHANGE ACT AS
### AGAINST THE PICOWER DEFENDANTS

89.    Plaintiff repeats and re-alleges each and every allegation contained above as it
fully set forth herein.

90.    The Defendants acted collectively as a control group of BLMIS within the
meaning of § 20(a) of the Exchange Act as alleged herein.

91.    The Defendants had the power to influence and control, and did in fact directly
influence and control, the decision making at BLMIS, the record keeping at BLMIS, and the
recording of securities transactions at BLMIS.

92.    The Defendants had the power to influence and control, and did in fact directly
influence and control, the flow of funds and assets in and out of BLMIS and the BLMIS
Discretionary Trading Program, even when this flow of funds and assets did not correspond to
actual trading activity; this resulted in the distribution of billions of dollars of false profits to the
Defendant control group.

93.    The Defendants had access to the books and records of BLMIS, and used these
books and records as an instrumentality to divert and steal funds from other BLMIS
Discretionary Trading accounts for the Defendants' benefit.

94.    The Defendants, either directly or through Picower, had direct involvement in the
day to day operations, record keeping, and financial management of BLMIS.  The Defendants

HF 7090467v.4 #99999/1000

# DRAFT

had and employed the power to control and influence actual transactions giving rise to the securities violations alleged herein.

95.    As set forth above and in the complaint filed by the Justice Department against Madoff, in the complaint filed by the SEC against Madoff and BLMIS, and in the numerous complaints filed by the Trustee, BLMIS violated § 10b of the Exchange Act and Rule 10b-5 by its acts and omissions and by engaging in a massive Ponzi scheme.

96.    By virtue of their position as a control group, the Defendants are jointly and severally liable pursuant to § 20(a) of the Exchange Act.

97.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and other members of the Class have suffered damages.

WHEREFORE, Plaintiffs pray for relief and judgment against the Defendants as follows:

A.    Determining that this action is a proper class action;

B.    designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as class counsel;

C.    awarding compensatory damages in favor of Plaintiff and other class members against all the Defendants jointly and severally, for all damages sustained as a result of the Defendants wrong- doing in an amount to be proven at trial, including interest;

D.    awarding Plaintiff and the Class the reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    such other and further relief as the Court may deem just and proper.


DATED: this ___ day of December, 2011, by:

08-01789-smb   Doc 4530-1   Filed 12/3/11   Entered 12/3/11 18:44:16   Exhibit A
Pg 38 of 38

# DRAFT

BEASLEY HAUSER KRAMER
& GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone:  (561) 835-0900
Facsimile:  (561) 835-0939
galardi@beasleylaw.net

By:   *s/ Draft*
James W. Beasley, Jr.
Florida Bar No. 145750
Joseph G. Galardi
Florida Bar No. 180572

-and-

Lesley Blackner, Esquire
Florida Bar No. 654043
BLACKNER, STONE & ASSOCIATES
123 Australian Avenue
Palm Beach, FL  33480
(561)659-5754
(561)659-3184 (fax)
lblackner@aol.com
*Co-counsel for Plaintiff and the Class*

27

Hearing Date: January 31, 2012 @ 10:00 a.m.

**HERRICK, FEINSTEIN LLP**
Two Park Avenue
Joshua J. Angel
Frederick E. Schmidt, Jr.
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
jangel@herrick.com
eschmidt@herrick.com

Attorneys for A & G Goldman Partnership,
individually and on behalf of a similarly
situated class

**BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939

**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                             :
In re:                                                       :    Adv. Pro. No. 08-1789 (BRL)
                                                             :
SECURITIES INVESTOR PROTECTION               :    SIPA Liquidation
CORPORATION,                                                 :
                                                             :    (Substantively Consolidated)
            Plaintiff-Applicant,                             :
                                                             :
            v.                                               :
                                                             :
BERNARD L. MADOFF INVESTMENT                 :
SECURITIES LLC,                                              :
                                                             :
            Defendant.                                       :
                                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF HEARING ON MOTION OF PICOWER CLASS ACTION
PLAINTIFFS FOR A DETERMINATION THAT THE COMMENCEMENT OF
SECURITIES CLASS ACTION LAWSUITS AGAINST NON-DEBTOR PARTIES
IS NOT PROHIBITED BY A PERMANENT INJUNCTION ISSUED BY THIS
<u>COURT OR VIOLATIVE OF THE AUTOMATIC STAY</u>**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion dated December 13, 2011 (the "Motion") of A & G Goldman Partnership,[1] individually and on behalf of all other similarly situated (collectively, the "Picower Class Action Plaintiffs" or "Movants"), seeking entry of an order determining that neither the injunction issued by this Court as part of its order, dated January 13, 2011, nor the automatic stay provisions (the "Automatic Stay") of section 362 of title 11 of the United States Code (the "Bankruptcy Code"), bar, prohibit, restrict or prevent Movants from commencing and prosecuting a securities law class action (the "Class Action") against certain non-debtor defendants (collectively, the "Picower Defendants") in the United States District Court for the Southern District of Florida (the "Florida District Court"), shall be held before the Honorable Burton R. Lifland, United States Bankruptcy Judge, Courtroom 623, United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 on January 31, 2012 at 10:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers), and shall be served in accordance with

---

[1] A & G Goldman Partnership, like all other class members, is a "net winner" having (i) received the return of its principal investment with BLMIS, (ii) not received the full amount reflected in its last BLMIS account statement; and (iii) incurred significant economic damages separate and apart from the returns reflected in its last BLMIS account statement.

General Order M-242 upon (i) Herrick, Feinstein LLP, 2 Park Avenue, New York, New York

10016 (Attn: Frederick E. Schmidt, Esq.); (ii) Baker & Hostetler LLP, counsel for the Trustee,

45 Rockefeller Plaza, New York, New York 10111 (Attn:  Elizabeth A. Smith, Esq. and Elyssa

S. Kates, Esq.); (iii) the Office of the United States Trustee for the Southern District of New

York, 33 Whitehall Street, 21st Floor, New York, New York 10004; and (iv) all parties having

entered a notice of appearance in the above captioned case, so as to be received no later than

**January 10, 2012 at 4:00 p.m.** (prevailing Eastern Time).


Dated:   New York, New York
        December 13 , 2011

                                                         */s/ Joshua J. Angel*

                                **HERRICK, FEINSTEIN LLP**
                                Two Park Avenue
                                New York, New York 10016
                                Telephone: (212) 592-1400
                                Facsimile: (212) 592-1500
                                Joshua J. Angel
                                Frederick E. Schmidt, Jr.

                                **BEASLEY HAUSER KRAMER &
                                GALARDI, P.A.**
                                505 South Flagler Drive, Suite 1500
                                West Palm Beach, Florida 33401
                                Telephone: (561) 835-0900
                                Facsimile: (561) 835-0939

                                - and -

                                **BLACKNER, STONE & ASSOCIATES**
                                123 Australian Avenue
                                Palm Beach, Florida 33480
                                Telephone: (561) 659-5754
                                Facsimile: (561) 659-3184

                                Attorneys for A & G Goldman Partnership,
                                individually and on behalf of a similarly
                                situated class

08-01789-cgm    Doc 5810-13   Filed 03/15/14   Entered 03/15/14 15:01:48    Exhibit K
Pg 3 of 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
          :
In re:          :     Adv. Pro. No. 08-1789 (BRL)
          :
SECURITIES INVESTOR PROTECTION       :     SIPA Liquidation
CORPORATION,          :
          :     (Substantively Consolidated)
        Plaintiff-Applicant,     :
          :
        v.          :
          :
BERNARD L. MADOFF INVESTMENT       :
SECURITIES LLC,          :
          :
        Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER

Upon the motion (the "Motion") of A & G Goldman Partnership, individually and on

behalf of all other similarly situated (collectively, the "Picower Class Action Plaintiffs" or

"Movants"), dated December 13, 2011,[1] by their counsel, Herrick, Feinstein LLP, Beasley

Hauser Kramer Leonard & Galardi, P.A., and Blackner, Stone & Associates, seeking entry of an

order determining that neither the injunction issued by this Court as part of its order, dated

January 13, 2011, nor the automatic stay provisions (the "Automatic Stay") of section 362 of title

11 of the United States Code (the "Bankruptcy Code"), bar, prohibit, restrict or prevent Movants

from commencing and prosecuting a securities law class action (the "Class Action") against

certain non-debtor defendants (collectively, the "Picower Defendants") in the United States

District Court for the Southern District of Florida (the "Florida District Court"); and upon

consideration of the Motion; and proper and sufficient notice of the Motion and the relief

---

[1]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

requested therein have been given, and no further notice being required; and due deliberation

having been had and sufficient cause appearing therefore; it is

ORDERED, that the injunction issued by the Court as part of its order, dated

January 13, 2011, does not bar, prohibit, restrict or prevent Movants from commencing and

prosecuting the Class Action against the Picower Defendants in the Florida District Court;

and it is further

ORDERED, that the Automatic Stay does not bar, prohibit, restrict or prevent

Movants from commencing and prosecuting the Class Action against the Picower Defendants

in the Florida District Court.

Dated:      New York, New York
            _____, 2011


_____
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE


2

**HERRICK, FEINSTEIN LLP**
Two Park Avenue
Joshua J. Angel
Frederick E. Schmidt, Jr.
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
jangel@herrick.com
eschmidt@herrick.com

**BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939

**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

Attorneys for Pamela Goldman, individually
and on behalf of a similarly situated class

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

In re:                             :    Adv. Pro. No. 08-1789 (BRL)
                                  :

SECURITIES INVESTOR PROTECTION  :    SIPA Liquidation
CORPORATION,                 :
                                  :    (Substantively Consolidated)

           Plaintiff-Applicant,   :

                v.            :

BERNARD L. MADOFF INVESTMENT  :
SECURITIES LLC,               :

           Defendant.        :
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION OF PICOWER CLASS ACTION PLAINTIFFS FOR A
DETERMINATION THAT THE COMMENCEMENT OF SECURITIES
CLASS ACTION LAWSUITS AGAINST NON-DEBTOR PARTIES IS
NOT PROHIBITED BY A PERMANENT INJUNCTION ISSUED BY THIS
<u>COURT OR VIOLATIVE OF THE AUTOMATIC STAY</u>**

Pamela Goldman,[1] individually and on behalf of all other similarly situated (collectively, the "Picower Class Action Plaintiffs" or "Movants"), by and through their undersigned counsel, as and for their motion (the "Motion") for entry of an order determining that neither the injunction issued by this Court as part of its order, dated January 13, 2011, nor the automatic stay provisions (the "Automatic Stay") of section 362 of title 11 of the United States Code (the "Bankruptcy Code"), bar, prohibit, restrict or prevent Movants from commencing and prosecuting a securities law class action (the "Class Action") against certain non-debtor defendants (collectively, the "Picower Defendants") in the United States District Court for the Southern District of Florida (the "Florida District Court"), respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      As more fully set forth below, Movants respectfully submit that neither the permanent injunction issued by this Court nor the Automatic Stay restricts the commencement and prosecution of the Class Actions in the Florida District Court because:

- The securities law claims asserted by the Movants against the Picower Defendants in the Class Actions are neither "duplicative" nor "derivative" of any claims the Trustee brought or could have brought against the Picower Defendants. Those claims, which belong to BLMIS's investors, are not of the type which could be asserted by the Trustee (as defined below). Moreover, as confirmed by recent decisions rendered by the District Court for the Southern District of New York, the Trustee does not have standing to assert claims against third parties on behalf of customers of BLMIS (as defined below).

- Movants do not seek any relief against the Debtors (as defined below) or property of the Debtors' estate in the Class Action.

2.      Unless barred by order of this Court, Movants intend to file a class action complaint (the "Class Action Complaint") substantially in the form annexed hereto as Exhibit "A" (without exhibits) in the Florida District Court.

---

[1] Pamela Goldman, like all other class members, is a "net loser" having not received the return of her full principal investment with BLMIS.

2

## BACKGROUND

### The Madoff/BMIS Bankruptcy Court Cases

3.     On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a Securities Violation Complaint in the United States District Court for the Southern District of New York against the estate of Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities LLC ("BLMIS", and together with Madoff, the "Debtors").  The SEC alleged, *inter alia*, that the Debtors engaged in fraud through investment advisor activities of BLMIS.

4.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), the SEC consented to a combination of its action with an application filed by the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLIMS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

5.     On December 15, 2008, the District Court entered an order pursuant to SIPA which, in pertinent part:

- appointed Irving H. Picard (the "Trustee") as trustee for the liquidation of the business of BLMIS, pursuant to section 78eee(b)(3) of SIPA;

- removed the case to this Court pursuant to section 78eee(b)(4) of SIPA; and

- authorized the Trustee to take immediate possession of the property of the Debtors, wherever located.

6.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

3

## The Picower Settlement

7.      On May 12, 2009, the Trustee filed a complaint (the "Picower Complaint")
commencing an adversary proceeding against certain of the Picower Parties (as defined below),
captioned *Picard v. Picower*, Adv. Pro. No. 09-1197 (BRL), in which he alleged that prior to the
Filing Date, BLMIS made payments or other transfers (the "Transfers") totaling more than $6.7
billion to one or more of the Picower Parties.  The Picower Complaint asserted claims under,
*inter alia*, section 547 of the Bankruptcy Code for avoidance and recovery of alleged preferential
transfers, sections 544 and 548 of the Bankruptcy Code for avoidance and recovery of alleged
fraudulent conveyances and section 542 of the Bankruptcy Code for turnover of alleged assets of
the Debtors' estates.  The Trustee has since asserted that BLMIS transferred to the Picower
Parties an amount of at least approximately $7.2 billion.

8.      The Trustee thereafter entered into a settlement agreement (the "Picower
Settlement Agreement") with what are referred to therein as the "Picower BLMIS Account
Holders", "Adversary Proceeding Defendants," and the "Picower Releasees" (collectively
referred to herein as the "Picower Parties").  The Trustee presented the Picower Settlement
Agreement to the Court for approval by motion dated December 17, 2010 (the "Picower
Settlement Motion").  The salient terms of the Picower Settlement Agreement are as follows:

- Barbara Picower, one of the Picower Parties, on behalf of herself and the other Picower Parties, agreed to forfeit to the United States Attorney's Office for the Southern District of New York (the "Government") the amount of $7,206,157,717, of which $5 billion was to be credited and paid over to the Trustee with the balance remaining with the Government.

- The Trustee provided a broad release to the Picower Parties "from any and all past, present or future claims or causes of action that are, have been, could have been or might in the future be asserted by the Trustee."

- The effectiveness of the Trustee Picower Release was conditioned on only two things: (i) receipt by the Trustee or the Government of the Bankruptcy Settlement Amount; and (ii) the entry of either a final order of

4

this Court approving the Picower Settlement Agreement, or a final order of the District Court approving a forfeiture agreement between the Government and the Picower Parties.

9.     On January 13, 2011, the Court entered an order (the "Picower Settlement Order") approving the Picower Settlement Agreement.  A copy of the Picower Settlement Order is annexed hereto as Exhibit "B".

10.     The Picower Settlement Order contained the following permanent injunction provision:

> ORDERED, that any BLMIS customer or creditor of the BLMIS estate who filed or could have filed a claim in the liquidation, anyone acting on their behalf or in concert or participation with them, or anyone whose claim in any way arises from or is related to BLMIS or the Madoff Ponzi scheme, is hereby permanently enjoined from asserting any claim against the Picower BLMIS Accounts or the Picower Releasees *that is duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower Releasees.* (emphasis added).

11.     Upon information and belief, the Government Settlement Amount has been paid into escrow for the benefit of the Government, and although orders of this Court and the District Court have been entered, neither order has become final due to pending appeals.

12.     As set forth hereafter, the claims contained in the Class Action Complaint are neither "duplicative or derivative of the claims brought by the Trustee" nor claims "which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower Releasees."[2]

---

[2] Movants are aware that the Settlement Order and the permanent injunction therein are the subject of appeals to the District Court for the Southern District of New York.  For the purposes of this Motion, Movants take no position on the issues raised in those appeals.

5

**The Class Action Complaint**

13.     Upon approval of this Court, Movants will commence the Class Action by filing the Class Action Complaint in the Florida District Court.

14.     The Class Action Complaint asserts claims (the "Class Action Claims") under section 20(a) of the Securities Exchange Act of 1934 (as amended, the "Exchange Act") against the Picower Defendants, based on, among other things, the Picower Defendants' control and influence over the decision making, record-keeping, securities transaction recording, and flow of funds and assets at BLMIS, which resulted in the Picower Defendants receiving billions of dollars of unearned profits from BLMIS.

## ARGUMENT

### THE FILING AND PROSECUTION OF THE CLASS ACTION COMPLAINT DOES NOT VIOLATE THE PERMANENT INJUNCTION ENTERED BY THIS COURT

15.     The Class Action Claims are neither "duplicative" nor "derivative" of any claims made by the Trustee against the Picower Defendants.  In fact, neither the Trustee nor the pre-petition Debtor could have asserted the Movants' securities law claims against the Picower Defendants.   Thus, the Movants are not barred under the Picower Settlement Order from asserting their securities law claims against the Picower Defendants.

**A.     Neither BLMIS Nor the Trustee Could Assert the Class Action Claims on Their Own Behalf**

16.     The Class Action Claims cannot be asserted by the Trustee or BLMIS.  The Class Action Claims are based on control person liability pursuant to section 20(a) of the Exchange Act.  In order to assert a claim under Exchange Act section 20(a), a plaintiff must allege a primary violation of section 10(b) of the Exchange Act.  See, e.g., STMicroelectronics v. Credit Suisse Group, 775 F. Supp. 2d 525, 535 (E.D.N.Y. 2011).  A plaintiff asserting a claim under

6

Exchange Act section 10(b) and Securities and Exchange Commission Rule 10b-5,[3] in turn, must

be a "purchaser" or "seller" of securities in order to have standing.  See Amorosa v. Ernst &

Young LLP, 682 F. Supp. 2d 351, 367-69 (S.D.N.Y. 2010).

17.     Here, the Class Action Complaint alleges that the Picower Defendants controlled

BLMIS and that BLMIS committed violations of section 10(b) of the Exchange Act and Rule

10b-5.  Neither BLMIS nor the Trustee (acting on behalf of BLMIS) would have standing to

commence a § 20(a) action against the Picower Defendants because BLMIS was neither a

"purchaser" nor "seller" of its own securities.

18.     Furthermore, a primary violator, such as BLMIS, may not assert a § 20(a) claim

against its alleged controller.  See In re Maxim Integrated Products, Inc. Derivative Litigation,

574 F. Supp. 2d 1046, 1067 (N.D.Cal. 2008) (dismissing § 20(a) claim where plaintiffs sued

derivatively on behalf of primary violator).  Accordingly, even if BLMIS were a purchaser or

seller of BLMIS securities, it still could not assert a § 20(a) claim because it was the primary

violator of § 10(b) of the Exchange Act and Rule 10b-5.

19.     The Trustee, therefore, could not assert a direct § 20(a) claim against the Picower

Defendants and the Movants' Class Action Claims are not subject to the injunction in the

Picower Settlement Order.

## B.     The Trustee Does Not Have Standing to Assert the Class Action Claims on Behalf of BLMIS Investors

20.     The Trustee does not have standing to commence and prosecute the Class Action

Claims on behalf of BLMIS's investors.  Two recent District Court decisions have helped to

define the limits of the Trustee's ability to assert claims on behalf of BLMIS creditors against

---

[3] Private rights of action for violations of section 10(b) of the Exchange Act are created by Securities and Exchange Commission Rule 10b-5 ("Rule 10b-5").  See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 126 S.Ct. 1503, 1509 (2006).

7

third parties.  Both decisions establish conclusively that the Trustee may not assert claims against

third parties on behalf of BLMIS's investors.[4]

### 1.    <u>Picard v. HSBC</u>

21.    On July 15, 2009, the Trustee commenced an adversary proceeding (the "<u>HSBC</u>

<u>Action</u>") against HSBC Bank PLC and certain of its affiliates (collectively, "<u>HSBC</u>"), seeking

approximately $2 billion in preferential or fraudulent transfers, and an additional $6.6 billion in

damages under common law theories such as unjust enrichment, aiding and abetting fraud, and

aiding and abetting breach of fiduciary duty.  The Trustee alleged that HSBC failed to adequately

investigate BLMIS despite the existence of red flags and indicia of fraud.  The United States

District Court for the Southern District of New York (Judge Rakoff) withdrew the reference to

address a threshold issue of federal non-bankruptcy law; to wit, whether the Trustee had standing

to pursue common law claims against third parties on behalf of BLMIS's customers.

22.    On July 28, 2011, Judge Rakoff rendered a decision dismissing the Trustee's

customer claims against HSBC for lack of standing.  <u>See</u> <u>Picard v. HSBC Bank PLC</u>, 454 B.R.

25 (S.D.N.Y. 2011) (copy attached as <u>Exhibit "C"</u>).  The Court rejected the Trustee's arguments

that he had standing, and held that "the Trustee does not have standing to bring his common law

claims either on behalf of customers directly or as bailee of customer property, enforcer of

SIPC's subrogation rights, or assignee of customer claims."  454 B.R. at 37.

### 2.    <u>Picard v. JPMorgan Chase & Co.</u>

23.    The Trustee also commenced two adversary proceedings against UBS AG and

certain of its affiliates (collectively, "<u>UBS</u>," and the adversary proceeding against it, the "<u>UBS</u>

<u>Action</u>") and JPMorgan Chase & Co. and certain of its affiliates (collectively, "<u>JPM</u>," and the

---

[4] The decisions also note that BLMIS would be barred from asserting direct common law fraud claims under the
doctrine of *in pari delicto*.

adversary proceeding against it, the "JPM Action").  The causes of action asserted by the Trustee

in the UBS and JPM Actions were substantially similar, and the reference of both actions to the

Bankruptcy Court was withdrawn by the District Court (Judge McMahon) in order to address the

issue of whether the Trustee had standing to pursue common law claims (including aiding and

abetting fraud, breach of duty and conversion, and unjust enrichment) against third party banks

such as UBS and JPM on behalf of BLMIS customers.

24.     JPM moved to dismiss the common law claims asserted by the Trustee.  UBS

move to dismiss as well, joining JPM's arguments, and on November 1, 2011, the District Court

(Judge McMahon) issued its decision dismissing the Trustee's common law claims for lack of

standing in both the UBS and JPM Actions.  See Picard v. JPMorgan Chase & Co., 2011 WL

5170434 (S.D.N.Y. Nov. 1, 2011) (copy attached as Exhibit "D").

25.     In its decision the Court in the JPM Action ruled consistently with Judge Rakoff's

reasoning in the HSBC decision and held, *inter alia*, that the Trustee's common law claims

belonged to the creditors of BLMIS, not the Trustee and that the Trustee did not otherwise

establish any other basis to confer him standing to bring the common law claims.  2011 WL

5170434 at *3-*5.  Here, the Trustee likewise does not have standing to assert the Class Action

Claims against the Picower Defendants on behalf of the BLMIS investors.

26.     Because the Trustee could not assert the Class Action Claims against the Picower

Defendants, either as a direct claim of the BLMIS estate or derivatively on behalf of BLMIS's

investors, the Class Action Claims are neither duplicative of nor derivative of claims brought by

the Trustee against the Picower Defendants.  Accordingly, it is respectfully submitted that the

Class Action Claims are not permanently enjoined by the Picower Settlement Order.

9

## THE AUTOMATIC STAY DOES NOT APPLY

27.     Just as the Class Action is not barred by the permanent injunction in the Picower

Settlement Order, it is also not subject to the Automatic Stay.  The Class Action Claims do not

fall within any of the categories of claims against the Debtors or property of their estates that are

stayed by section 362 of the Bankruptcy Code.  The Debtors are not named as parties, nor does

the Class Action Complaint seek a judgment or other remedy or relief against the Debtors or

their property, directly or indirectly.  Importantly, the Class Actions <u>do not seek any of the</u>

<u>proceeds of the Trustee's settlement with the Picower Defendants</u>.  By its plain language, section

362(a)(1) of the Bankruptcy Code stays actions only against a debtor.  Courts continually have

held that the automatic stay is inapplicable to actions and proceedings against non-debtors.  <u>See</u>

<u>Teachers Ins. & Annuity Ass'n v. Butler</u>, 803 F.2d 61, 65 (2d Cir. 1986); <u>In re United Health</u>

<u>Care Org.</u>, 210 B.R. 228, 232 (S.D.N.Y. 1997); <u>Ripely v. Mulroy</u>, 80 B.R. 17, 19 (E.D.N.Y.

1987).  <u>See</u> <u>also</u> <u>Credit Alliance Corp. v. Williams</u>, 851 F.2d 119, 121 (4th Cir. 1988) ("The

plain language of § 362 ... provides only for the automatic stay of judicial proceedings and

enforcement of judgments against the debtor or the property of the estate.") (citation and internal

quotations omitted).

28.     Here, the Class Action Complaint asserts claims against only the Picower

Defendants and not the Debtor.  Moreover, the Class Action Claims will not affect property of

the Debtor's estate.  Nor will Movants be usurping or interfering with causes of action belonging

to the Trustee.  As set forth above, the Trustee does not have standing to assert § 20(a) claims

against the Picower Defendants.  Moreover, the Trustee has already settled his claims against the

Picower Defendants and the Movants do not seek to upset that settlement.  Accordingly, the

Automatic Stay does not apply to the Class Action Claims.

10

## CONCLUSION

For the reasons set forth above, Movants respectfully request that the Court (a) enter an

Order (i) determining that neither the permanent injunction contained in the Picower Settlement

Order nor the Automatic Stay prohibits the Movants from commencing and fully prosecuting the

Class Actions.

Dated:  New York, New York
   December 13 , 2011

Respectfully submitted,

    /s/Joshua J. Angel

**HERRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
Joshua J. Angel
Frederick E. Schmidt, Jr.

**BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939

- and -

**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

Attorneys for Pamela Goldman, individually
and on behalf of a similarly situated class

HF 7093713v.2 #99999/1000

08-01789-smb    Doc 4531-1    Filed 12/3/14    Entered 12/3/14 18:56:03    Exhibit K
Pg 57 of 89

# EXHIBIT A

# DRAFT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No: _____

Pamela Goldman, individually and on behalf
of a class of similarly situated Plaintiffs,

vs.

CAPITAL GROWTH COMPANY;                      **COMPLAINT-CLASS ACTION**
DECISIONS, INC.;
FAVORITE FUNDS;                              **Jury Trial Demanded**
JA PRIMARY LIMITED PARTNERSHIP;
JA SPECIAL LIMITED PARTNERSHIP;
JAB PARTNERSHIP;
JEMW PARTNERSHIP;
JF PARTNERSHIP;
JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP;
JMP LIMITED PARTNERSHIP;
JEFFRY M. PICOWER SPECIAL COMPANY;
JEFFRY M. PICOWER, P.C.;
THE PICOWER FOUNDATION;
THE PICOWER INSTITUTE OF MEDICAL RESEARCH;
THE TRUST F/B/O GABRIELLE H. PICOWER;
BARBARA PICOWER, individually, and as
Executor of the Estate of Jeffry M. Picower,
and as Trustee for the Picower Foundation
and for the Trust f/b/o Gabriel H. Picower.
_____/

Plaintiff, Pamela Goldman, through their undersigned attorneys, on her own behalf and

on behalf of a similarly situated class of plaintiffs, hereby sues the Defendants and alleges the

following based upon the investigation by Plaintiffs' counsel, which includes: (1) review of

filings made by the trustee (the "Trustee") in the bankruptcy proceeding concerning Bernard L.

Madoff Investment Securities, LLC ("BLMIS") including the documents filed in connection with

the Bankruptcy Estate settlement with the Defendants in December 2010 and later which

# DRAFT

contained new information as to Picower's control of BLMIS and the existence and extent of the Picower margin loan described therein; (2) review of the filings contained in the action commenced by the Securities and Exchange Commission against Bernard L. Madoff ("Madoff"); and (3) a review of documents and pleadings contained in the criminal proceeding brought against Madoff. This investigation has also included a review of publically available documents filed by or on behalf of the Defendants, including documents prepared by the Picower Foundation, as well as pleadings filed by the Trustee and by Defendants in connection with various actions  brought by the Trustee in the BLMIS bankruptcy. Plaintiffs believe that substantial additional evidentiary support exists to support the allegations set forth herein.

## INTRODUCTION AND SUMMARY OF CLAIMS

1.      Madoff is widely regarded as the crook of the century and the primary beneficiary of the largest Ponzi scheme in history, which he operated through BLMIS. In fact, however, Madoff was not the most substantial beneficiary of the Ponzi scheme. The Defendants were. The accounting performed by the Madoff bankruptcy Trustee reveals that the Defendants received at least $7.2 billion of BLMIS customers' cash. This figure is astounding not only in absolute terms, but also because it represents almost 40% of the approximately $18 billion of the total assets of all BLMIS customers.

2.      While Madoff and a few employees operated the Ponzi scheme on a day to day basis, they did so under the direction and control of the Defendants who participated in the fraud for their own benefit by directing the creation of false books and records at BLMIS. The Defendants instructed Madoff and his employees to make false transactions and book entries to document allegedly profitable securities transactions in the Defendants' BLMIS accounts that in fact never occurred, but instead provided the Defendants with the returns that they "wanted to

HF 7090460v.4 #99999/1000

# DRAFT

achieve."  BLMIS complied, which allowed the Defendants to steal billions of dollars of BLMIS

customers' assets in the form of the fictitious profits based on the false trading documentation.

3.      All Brokerage customers at BLMIS who at any time entrusted securities or cash

to BLMIS and at such time granted BLMIS or its employees or agents trading authority and

discretion with respect to assets in such brokerage accounts for trading in the BLMIS

stock/options trading program (the "BLMIS Discretionary Trading Program") and who have

received or are eligible to receive payments directly or indirectly from SIPC or from the BLMIS

estate on behalf of SIPC in respect of their BLMIS accounts.

4.      This action alleges only control person liability as against the Defendants under

section 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  The

Defendants' control over the day to day financial records of BLMIS, along with the astounding

amount of fictitious profits that the Defendants withdrew from BLMIS, establishes the

Defendants' pervasive and fraudulent operational control of BLMIS.  The Defendants exerted

their control over BLMIS to steal securities and cash assets belonging to the class members.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under sections 10(b) and 20(a) of the Exchange

Act, 15 U.S.C. §§ 78j(b), 78t(a), and under Rule 10b-5 promulgated thereunder by the Securities

and Exchange Commission ("SEC"), 17 C.F.R. §240.10b-5.

6.      This court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1337, and under § 27 of the Securities Exchange Act (the "Exchange Act"),

15 U.S.C. §78aa.  At all relevant times the principal place of business of most of the Defendants

was Palm Beach, Florida.  Substantial acts, if not all of the acts, committed in the furtherance of

the control relationship occurred in the state of Florida.

# DRAFT

7.    Venue is proper in this district pursuant to § 27 of the Exchange Act ,15 U.S.C. §78aa, 28 U.S.C. §1391(b), because several of the Defendants reside or are headquartered in this judicial district, and the acts and transactions alleged herein occurred in substantial part in this judicial district.

8.    In connection with the wrongs alleged herein, the Defendants used the instrumentalities of interstate commerce, including the United States mails, interstate wire and telephone facilities and the facilities of national securities markets.

## THE PARTIES

9.    Plaintiff Pamela Goldman is a resident of the State of New York.  Plaintiff brings this class action on behalf of herself and a putative class of persons similarly situated for damages and other relief arising from the Defendants' wrongful conduct described herein.

10.    Jeffry M. Picower ("Picower") was a resident of Palm Beach, Florida, and Fairfield, Connecticut, prior to and at the time of his death on October 25, 2009.  Picower was a highly sophisticated investor, accountant and attorney who participated in the Madoff Ponzi scheme for over 20 years, knowing that he was participating in a fraud.  Picower had vast experience in the purchase and sale of businesses, including health care and technology companies.  He had also been personally responsible for managing hundreds of millions, if not billions, of dollars of assets, and he had developed uncommon sophistication in trading securities and evaluating returns therefrom.  Upon information and belief, Picower was closely associated with Madoff, both in business and socially, for the last 30 years.  Picower held an individual BLMIS account in the name of "Jeffry M. Picower," with an account address of 1410 South Ocean Boulevard, Palm Beach, Florida.  Picower was a trustee of the Picower Foundation, and Chairman of the Board of Defendant Decisions Incorporated.

4

# DRAFT

11.     Defendant Barbara Picower is the Executor of the Estate of Jeffry M. Picower, which is being probated in the State of New York.

12.     Defendant Barbara Picower is a person residing at 1410 South Ocean Boulevard, Palm Beach, Florida 33480.  Barbara Picower is Picower's surviving spouse.  According to the Trustee, Barbara Picower holds an individual account at BLMIS in the name "Barbara Picower," with the account address of 1410 South Ocean Boulevard, Palm Beach, Florida 33480, and Barbara Picower is trustee for Defendant Trust f/b/o Gabrielle H. Picower, an officer and/or director of Defendant Decisions Incorporated, and trustee and Executive Director of the Picower Foundation.

13.     Defendant Decisions Incorporated is a corporation organized under the laws of Delaware with a principal place of business at 950 Third Avenue, New York, New York 10022 and an alternate mailing address on its BLMIS account listed as 22 Saw Mill River Road, Hawthorne, New York, 10532.  According to the Trustee, the Decisions Incorporated office in Hawthorne was merely a store-front office through which little or no business was conducted, and Decisions Incorporated is a general partner of Defendants Capital Growth Company, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JLN Partnership, JMP Limited Partnership and Jeffry M. Picower Special Co.

14.     Defendant Capital Growth Company purports to be a limited partnership with a mailing address for its BLMIS account listed at 22 Saw Mill River Road, Hawthorne, New York, 10532, care of Decisions Incorporated. According to the Trustee, Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of Capital Growth Company, and Decisions Incorporated and Picower transact/transacted business through this

5

# DRAFT

entity.

15.    Defendant JA Primary Limited Partnership is a limited partnership organized under the laws of Delaware with a principal place of business at 25 Virginia Lane, Thornwood, New York 10594. According to the Trustee, Defendant Decisions Incorporated and/or Picower serves/served as General Partner or Director of JA Primary Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this entity.

16.    Defendant JA Special Limited Partnership is a limited partnership organized under the laws of Delaware with a principal place of business at 25 Virginia Lane, Thornwood, New York, New York 10594.  According to the Trustee, Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JA Special Limited Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

17.    According to the Trustee, Defendant JAB Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532. Upon information and belief, Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JAB Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

18.    According to the Trustee, Defendant JEMW Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JEMW Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

6

08-01789-smb    Doc 4361-13    Filed 12/31/14    Entered 12/31/14 13:56:03    Exhibit K
Pg 64 of 89

# DRAFT

19.    According to the Trustee, Defendant JF Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JF Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

20.    According to the Trustee, Defendant JFM Investment Company is an entity through which Decisions Incorporated, and/or Picower transact/transacted business, with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and JFM Investment Company is a Limited Partner of Capital Growth Company, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of JFM Investment Company.

21.    According to the Trustee, Defendant JLN Partnership is a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Decisions Incorporated and/or Picower serve/served as General Partner or Director of JLN Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

22.    Defendant JMP Limited Partnership is a limited partnership organized under the laws of Delaware, with a principal place of business at 25 Virginia Lane, Thornwood, New York 10594.  According to the Trustee, Decisions Incorporated and/or Picower serve/served as General Partner or Director of JMP Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

23.    According to the Trustee, Defendant Jeffry M. Picower Special Co. is an entity through which Decisions Incorporated, and/or Picower transact/transacted business, with a

7

# DRAFT

mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Jeffry M. Picower Special Co.

24.     According to the Trustee, Defendant Favorite Funds is an entity through which Picower transacted business, with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Favorite Funds.

25.     According to the Trustee, Defendant Jeffry M. Picower P.C. purports to be a limited partnership with a listed mailing address at 25 Virginia Lane, Thornwood, New York, New York 10594, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Jeffry M. Picower P.C., and Decisions Incorporated, and/or Picower transact/transacted business through this defendant entity.

26.     Defendant Picower Foundation is a trust organized for charitable purposes with Picower listed as donor, and Picower and Barbara Picower, among others, listed as Trustees during the relevant time period. Picower Foundation's addresses are reported as 1410 South Ocean Boulevard, Palm Beach, Florida 33480 and 9 West 57th Street, Suite 3800, New York, New York 10019.

27.     According to the Trustee, Defendant Picower Institute for Medical Research is a nonprofit entity organized under the laws of New York, with a principal place of business at 350 Community Drive, Manhasset, New York 11030.

28.     According to the Trustee, Defendant Trust f/b/o Gabrielle H. Picower is a trust established for beneficiary Gabrielle H. Picower, who is the daughter of Picower and Barbara

8

# DRAFT

Picower, with Defendant Barbara Picower listed as trustee, and the trust's BLMIS account address reported as 1410 South Ocean Boulevard, Palm Beach, Florida 33480.

29.    On information and belief, the Defendants listed in paragraphs 13 through 28 (collectively the "Picower Entity Defendants") were dominated, controlled and used as a mere instrumentality of Picower to advance his interests in, and to participate in and control, the Madoff Ponzi scheme.  Thus, the Picower Entity Defendants are the alter egos of Jeffry Picower and of each other.

## THE MADOFF FRAUD AND PICOWER'S CONTROL

### Madoff Admits to Committing Securities Fraud

30.    BLMIS is a New York Limited Liability Corporation that was wholly owned by Madoff.  BLMIS was founded in 1959.  Madoff as Founder, Chairman, Chief Executive Officer, and sole shareholder ran BLMIS as his alter ego with several family members and a few employees.  BLMIS was registered with the SEC as a Securities Broker Dealer under § 15 of the Exchange Act.

31.    The portion of the BLMIS customer business at issue was operated pursuant to account documentation which afforded BLMIS a power of attorney and complete discretion over trading in the relevant BLMIS accounts.  BLMIS described its trading strategy to customers falsely as involving a complicated option strategy which generated consistent returns.

32.    The BLMIS program of comingled options and stock trading were securities and investment contracts under the Exchange Act and customer "participation" therein involved the purchase and sale of securities.

33.    BLMIS customers received monthly statements showing the purchase and sales of securities in their accounts along with the profits purportedly realized from these securities

9

# DRAFT

transactions.  But the transactions reported on these statements were a fabrication.  The securities

transactions described in the monthly statements either never occurred or rarely occurred, and the

profits reported were entirely fictitious.  Madoff admitted at his plea hearing that he had never

purchased any of the securities in BLMIS customer accounts.  Following an extensive and

lengthy investigation, the Trustee for BLMIS has stated that, except for isolated individual

transactions, there is no record of BLMIS having purchased or sold any securities in BLMIS

customer accounts.

34.     The money that customers paid to BLMIS in connection with their investment

contracts with BLMIS was not used to purchase securities as described but instead was used to

make distributions to other investors, primarily to the Defendants.

35.     On December 11, 2008, Madoff was arrested by federal agents and charged with

criminal violation of the federal securities laws, including securities fraud, investment advisor

fraud, and mail and wire fraud. On the same day, the SEC filed a complaint in the United States

District Court for the Southern District of New York against Madoff and BLMIS, also alleging

that Madoff and BLMIS engaged in securities fraud.  *See* **Exhibit "A"** hereto.

36.     On December 15, 2008, the SEC consented to a combination of its own action

with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter,

pursuant to 15 U.S.C. § 78eee(a)(4)(B) of the Securities and Investor Protection Action

("SIPA"), SIPC filed an application in the District Court alleging that BLMIS was not able to

meet its obligations to its securities customers as they came due and that such customers needed

the protections afforded by SIPA.

HF 7090460v.4 #99999/1000

# DRAFT

37.     Also on December 15, 2008, the District Court appointed Irving H. Picard, Esq., as trustee ("Trustee") for the substantively consolidated liquidation of Madoff's estate and of BLMIS under SIPA.

38.     On March 10, 2009, the federal government filed an eleven count criminal information against Madoff in the case styled *United States v. Madoff*, 09-CR-213 (S.D.N.Y.). *See* **Exhibit "B"** hereto.

39.     On March 12, 2009, Madoff plead guilty to all eleven-counts of the criminal information, including Count I for securities fraud under § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  *See* **Exhibit "C"** hereto at 4-5; 35.  As a result of the guilty plea, it is indisputable that Madoff and BLMIS, which he wholly owned and controlled, violated § 10(b) of the Exchange Act and Rule 10b-5.

### Through Picower's Direct Participation and Control, the
### Defendants Become the Primary Beneficiaries of the Madoff Fraud.

40.     Each Defendant is an entity or individual operating as part of a control group of BLMIS.  The Defendants are commonly controlled or were commonly controlled by Picower and his wife Barbara Picower.

41.     The volume, pattern and practice of the Defendants' fraudulent withdrawals from BLMIS and their control over fraudulent documentation of underlying transactions at BLMIS establishes the Defendants' "control person" liability under the federal securities laws.

42.     Picower, now deceased, was a sophisticated investor, accountant and lawyer. Picower, directly and through the Defendants, had a very close relationship with Madoff. Picower knew Madoff for decades and was an investor in BLMIS since at least the 1980s. Madoff served as a Trustee for one of Picower's foundations, the Picower Institute for Medical Research.

11

# DRAFT

43.     Through the other Defendants and through his relationship with Madoff, Picower became privy to information about BLMIS and its operations not available to other customers.

44.     In interviews with author Diana Henriquez, Madoff stated that Jeffry Picower knew of the existence of his scheme and that Jeffry Picower was taking fraudulent profits from the BLMIS customer accounts.

45.     Picower was able to control BLMIS and use BLMIS as "a personal piggy bank" by withdrawing funds for various entities he controlled, even if there was no legitimate underlying profitable transaction warranting a distribution of such funds.

46.     In fact, the Defendants benefited in a much more substantial way than Madoff and his family.  The Trustee has alleged in an adversary action against the Defendants that the Defendants received at least $7.2 billion from BLMIS, net of their investments.  *See* Trustee's Complaint, **Exhibit "D"** hereto and Trustee's Response to Mot. to Dismiss, **Exhibit "E"** hereto.

47.     The Picower Defendants were far and away the primary beneficiaries of the Madoff fraud, having received almost 40% of the approximately $18 billion lost by BLMIS customers.

48.     In order to realize and withdraw their false profits, Picower, through the Defendants and other agents, directed and effected false trading documentation at BLMIS with respect to the Defendants' BLMIS accounts.

49.     The Defendants directed BLMIS to prepare fraudulent trading records and fraudulent trading results, which effected returns in their accounts based upon transactions which in fact never took place.  Picower directly and through the other Defendants initiated, directed, coordinated and cause to be effected false records and back dated records at BLMIS, which resulted in the appearance of trading profits in these accounts.  Picower then withdrew these false

# DRAFT

profits from the Defendant accounts.    This direction of trading activity and direction of preparation of false trading records over a multi-year period shows control of the specific fraudulent activity which constituted the underlying Ponzi scheme and the underlying violations of 10b-5 engaged in by BLMIS.

50.    The false trading documentation maintained by BLMIS shows that the Defendants' accounts generated annual rates of return well in excess of any conceivable rates of return for the relevant trading strategy in these accounts.    For example, two of the BLMIS accounts controlled by Picower generated annual rates of return of over 100% for four consecutive years from 1996 through 1999.    According to the Trustee "between 1996 and 2007 defendants' 24 regular trading accounts enjoyed 14 instances of supposed annual returns of more than 100%. . . ."    During this time period the annual rates of return for certain of defendants' accounts ranged from 120% to over 550%.    In actuality, Picower directly and through the Picower defendants used his ability to control the BLMIS records maintained to cause the preparation of trading record which purported to show these trading profits, which in fact never occurred.    By orchestrating the creation of these false trading records, Picower enabled himself to transfer proceeds from these purported transactions to his own account and then to third party bank accounts which he controlled.    The funds he withdrew belonged to other BLMIS customers including the class members.

51.    The pattern of transactions in the Defendants' accounts reveals their fraudulent nature.    Picower and the other Defendants received fraudulent profits from the various Madoff accounts from at least December 1995 through December 2008.    Each quarter, Picower, directly and through the other Defendants and other agents, directed the withdrawal of large sums of money divided into odd numbers spread over many of the Defendant accounts.    When added

13

08-01789-smb   Doc 4361-13   Filed 12/31/14   Entered 12/31/14 18:56:03   Exhibit K
Pg 15 of 23

# DRAFT

together, these withdrawals usually equaled large even numbered sums.  For example, on January 2, 2003, Picower withdrew $1,378,852 from his JLM Partnership account, yet the total withdrawals across all the Defendant accounts for that single day amounted to $250 million.

### An Illustration of Picower's Control:
### The $6 Billion Decisions Incorporated Margin Loan

52.     Several BLMIS accounts controlled by Picower and operated under the name of Decisions, Inc. provide concrete examples of Picower's control over BLMIS.  Picower, directly and through the other Defendants, was able to withdraw "funds" from the Decisions, Inc. account in the form of a "loan" of approximately *$6 billion*, even though the account had no trading activity or cash or related assets to support such borrowing.  The terms and amounts of the "loan" became known in connection with the December 2010 settlement between the Trustee and the Defendants.

53.     Borrowing in a brokerage account is regulated by margin rules established by the Federal Reserve System and by the New York Stock Exchange.  These rules limit the amount that an account holder can borrow from his or her securities account based upon the value of securities that can be used as collateral for the loan.  Picower was able to borrow almost $6 billion in the Decisions, Inc. account (*i.e.*, steal it from other BLMIS account) without the requisite collateral.

54.     The operations of the Decisions account establishes Picower's control of the cash flows at BLMIS and his unfettered ability to remove money from the BLMIS customer accounts for his own benefit and as he saw fit.  The Decisions, Inc. accounts were the primary source of the Picower Defendants' cash withdrawals from BLMIS.  These accounts reflect virtually no trading activity and virtually no securities positions or other collateral for loans from this account.

14

# DRAFT

55.    Picower, directly and through the other Defendants, made distribution requests and directed cash withdrawals from this account ranging from $50 million to $150 million five or more times per year for a total of approximately $6 billion.   These withdrawals were inconsistent with legitimate business activity and inconsistent with margin regulations that would permit such a loan only if the account maintains substantial collateral equal to approximately twice the amount of such loans.   Picower's ability to make such irregular withdrawals without collateral and in a manner inconsistent with applicable regulations shows that he controlled cash flow and the cash distributions at BLMIS during the relevant time period.   At all relevant times Picower and the Picower defendants knew that the withdrawals could only be the property of other BLMIS customers, including the plaintiff and other class members.

### Further Illustration of the Picower defendants Control: Directing
### BLMIS to Backdate False Transactions to Create Fictitious Profits

56.    The Defendants' control of BLIMS's operations was such that they were able to direct BLMIS employees to create and document false and non-existent securities transactions, which, in turn, were designed to generate fictitious profits for Picower to withdraw from the Defendants' BLMIS accounts.

57.    The Defendants' ability to reconfigure for their own fraudulent purpose the actual trading records maintained by BLMIS, a highly regulated broker and investment advisor, shows that the Defendants exercised control over the day to day operations of BLMIS and specifically over the trading activity that constituted a violation of the securities laws.   By way of example, as stated in the Trustee's complaint, on or about April 24, 2006, Defendant Decisions, Inc. opened a new account with BLMIS known as the Decisions, Inc. 6 account.   This account was opened with a wire transfer of $125 million.

HF 7090460v.4 #99999/1000

# DRAFT

58.     The Defendants instructed BLMIS to back date trades in this account to January

2006, which was four months prior to the time the account was actually opened.    BLMIS

employees carried out the Defendants' direct instructions and fabricated and back dated trades in

the Decision 6 account.    This resulted in the net value of the account increasing by almost $40

million, or 30%, in less than two weeks after it "actually opened."    The Defendants' ability to

affect back dated trades in the Decisions 6 account generated phony paper profits which had

appreciated only on a hindsight basis and represented part of a continuous pattern of the Picower

defendants directing the falsification of trading records at BLMIS, which allowed Picower to

pilfer from other BLMIS accounts.

59.     By way of further example, on or about December 29, 2005, Picower's assistant

April Friehlich, acting on behalf of the Defendants, faxed BLMIS a letter signed by Picower that

directed BLMIS to "realize" a gain of $50 million in the Picower accounts.    Upon direction from

Picower and Friehlich, BLMIS "sold large amounts of stock in Agilent Technologies and Intel

Corporation in various Defendants accounts on a back dated basis."    Friehlich directed the sales

of large amounts of these purported securities on or about December 29, 2005, requesting that

the sales be booked to take place on an earlier date *i.e.* December 8 or 9.    BLMIS backdated the

trades at Picower's direction and on Picower's behalf for the purpose of generating phony paper

profits of approximately $46.3 million, which made up most of Picower's requested $50 million

distribution.

60.     Picower, on behalf of the Defendants, directed and caused BLMIS to affect other

back dated transactions generating phony profits.    During December 2005, the Defendants

purported to purchase the following securities on margin in their accounts:  Google, Diamond

Offshore Drilling, Inc., and Burlington Resources, Inc.    This resulted in a purported gain of

16

08-01789-smb   Doc 5810-13   Filed 12/31/14   Entered 12/31/14 13:50:48   Exhibit K
Pg 18 of 33

# DRAFT

almost $80 million.  These purchases purportedly occurred between January 12 and 20, 2005 but were fictitious, as the transactions actually occurred eleven months later in December 2005.  Defendants caused BLMIS to create false book and record entries in order to create a phony $80 million profit on "transactions" that did not take place on the dates recorded on BLMIS's records.

61.     The Defendants also directed and orchestrated the preparation of false statements in May 2007, which reflected millions of dollars in securities transactions which reportedly took place in earlier in 2007, but which in fact did not take place at all.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).  The definition of the Plaintiff class in this action is: (1) all brokerage customers of BLMIS who at any time entrusted securities or cash to BLMIS and at such time granted to BLMIS or its employees or agents trading authority and discretion with respect to assets in such brokerage accounts for trading in the BLMIS stock/options trading program (the "BLMIS Discretionary Trading Program"); and (2) who have not received the full account value of their BLMIS account(s) as of the date of the BLMIS bankruptcy/SIPC liquidation; and (3) who have not received sufficient payments directly or indirectly from SIPC or from the BLMIS estate on behalf of SIPC to cover the full amount of their losses (the "Class").  The Class excludes the Defendants named herein and members of the Madoff family.

63.     The Class meets the requirements for class certification under Rule 23(a) of the Federal Rules of Civil Procedure.

All Brokerage customers at BLMIS who at any time entrusted securities or cash to BLMIS and at such time granted BLMIS or its employees or agents trading authority and discretion with respect to assets in such brokerage accounts for trading in the BLMIS

17

# DRAFT

stock/options trading program (the "BLMIS Discretionary Trading Program") and who have received or are eligible to receive payments directly or indirectly from SIPC or from the BLMIS estate on behalf of SIPC in respect of their BLMIS accounts.

a.      *Numerosity.*  The members of the class are so numerous that joinder of all members is impracticable.  Based on disclosures made by the SIPA Trustee the Class has thousands of members.  Class members may be identified from records maintained by BLMIS and the SIPA Trustee.  The members of the class may be notified of the pendency of this action by mail or otherwise using a form of notice similar to that customarily used in securities class actions.

b.      *Commonality.*  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are whether the Federal Securities Laws specifically §20(a) of the Exchange Act was violated by defendants as alleged herein, whether members of the class have sustained damages as a result thereof and if so what is the proper measure of such damages.

c.      *Typicallity.*  Plaintiff's claims are typical of the claims of members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law as alleged herein.

d.      *Adequacy.*  Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class.  Plaintiff has retained competent and experienced counsel in class and securities litigation.

HF 7090460v.4 #99999/1000

# DRAFT

64.     This class action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3).  The common issues outlined herein predominate over any individual issues in the case.  A class action is superior to all other available methods of the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the class to individually address the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## TOLLING THE STATUTE OF LIMITATIONS

65.     Any applicable statute of limitations with respect to Plaintiff's claims has been tolled since no later than February 16, 2010, by the filing of the class action complaint against all of the Defendants named here in the action captioned *Susanne Stone Marshall, Individually and On Behalf of a Class of Similarly Situated v. Barbara Picower, Individually, and as Executor of the Estate Of Jeffry M. Picower, et al.,* case no. 10-80252-CV-Ryskam/Vitunac (S.D. Fla.).  *See American Pipe and Construction Company v. Utah*, 414 U.S. 538, 552 (1974); *In re World Comm Securities Litigation*, 496 F.3d 245 (2d Cir. 2007).

## VIOLATION OF §10(b) OF THE EXCHANGE ACT
## AND RULE 10b-5 PROMULGATED THEREUNDER

66.     BLMIS is currently subject to a federal bankruptcy proceeding, enjoys the benefit of the bankruptcy automatic stay, and thus cannot be named as a defendant in this action.  Based upon:  (1) the complaints filed by the Justice Department against Madoff and his guilty plea, (2) the complaints filed by the SEC against Madoff and BLMIS, and (3) the factual allegations made by the Trustee against BLMIS in the many claims he has filed in the bankruptcy proceeding, it is

HF 7090460v.4 #99999/1000

# DRAFT

beyond dispute that BLMIS engaged in the largest Ponzi scheme in U.S. history and committed a

substantial violation of the § 10(b) of the Exchange Act and Rule 10b-5 during the Class Period.

67.    BLMIS was a New York limited liability company wholly owned by Madoff.

BLMIS operated from its principle place of business at 885 Third Avenue, New York, NY.

Madoff was Founder, Chairman, Chief Executive Officer and the sole shareholder of BLMIS.

68.    Madoff ran BLMIS together with several family members and a few employees

subject to the controlling influence of the Defendants. BLMIS was registered with the SEC as a

securities broker dealer under section 15 of the Securities Exchange Act.

69.    Class members purchased securities issued by BLMIS, which consisted of a

discretionary trading account purportedly investing in stock and options and operated pursuant to

a power of attorney (the "BLMIS Discretionary Trading Program"). Each class member received

monthly statements purportedly reflecting the securities in their account, the trading activity

during the month, and the profits earned over the relevant time period. The monthly statements

for customer accounts depicted consistent profits on a monthly basis and rarely if ever showed

loses.

70.    In fact, the monthly statements and the purported trading and profits reflected

therein were entirely fictitious. At his criminal plea hearing, Madoff admitted that neither he nor

any BLMIS employee ever purchased any of the securities described in the monthly statements.

The Trustee has investigated the substance activity in the accounts and, with the exception of

isolated transactions for certain clients other than class members, there is no record of BLMIS

having purchased or sold any securities.

71.    Madoff has admitted, and it is a fact, that BLMIS and the BLMIS Discretionary

Trading Program operated as a Ponzi scheme and Madoff and other BLMIS employees

# DRAFT

concealed this ongoing fraud in an effort to hinder and delay customers of BLMIS from discovering this fraud. The fraud involved overt material misrepresentations on monthly account statements and confirmations representing transactions which did not take place as well as reporting false profits.

72.     The Ponzi scheme also involved the direct theft of customer assets in the BLMIS Discretionary Trading Program by Madoff, his family, and by certain favored customer including the Picower Defendants.

73.     Monies received from investors in connection with the BLMIS Discretionary Trading Program were not invested as described by BLMIS in confirmations and monthly statements but instead were used to make distributions to selected other investors, primarily Madoff and the controlling Picower Defendants.

74.     The money sent to BLMIS for investment in the BLMIS Discretionary Trading Program was in fact stolen, by Madoff and the Picower Defendants.

75.     In or about December 2008, the Ponzi scheme collapsed when customer redemptions in the BLMIS Discretionary Trading Program overwhelmed the amount of money which was being placed in new BLMIS accounts. As result of the Ponzi scheme, Madoff and his family defalcated at least $800 million of *bona fide* customer assets, and the Picower Defendants defalcated at least $7.2 billion. The BLMIS Ponzi scheme also involved the preparation and publication to investors and brokerage customers of false BLMIS audit reports prepared by Friehlich and Horowitz as members of a three person accounting firm in Rockland County, New York. BLMIS provided the financial reports to regulators and investors in the BLMIS Discretionary Trading Program for the purpose of their reliance thereon. The accounting reports

# DRAFT

falsely reported that Madoff was effecting customer transactions and that BLMIS was profitable and was generating customer profits in customer accounts.

76.    At all times relevant hereto, the BLMIS's actual liabilities were billions of dollars greater than its assets.  As a result, BLMIS and the BLMIS Discretionary Trading Program were rendered insolvent by the Ponzi scheme.  Customer assets were effectively stolen by Madoff and the Picower Defendants in connection with this Ponzi scheme.

77.    The BLMIS securities fraud involved the overt and continuing material misrepresentations with respect to the trading activity and profits in the BLMIS Discretionary Trading Program, the use of materially false accounting statements, and the theft of customer securities and cash in connection with the ongoing Ponzi scheme.

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder By Non-Defendant BLMIS as Predicate for Count I Herein

78.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

79.    During the Class Period, BLMIS carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) misappropriate the assets of BLMIS customers who purchased securities issued by BLMIS in connection with the BLMIS Discretionary Trading Program, as alleged herein and (ii) cause brokerage customers of BLMIS and investors in the BLMIS Discretionary Trading Program to entrust securities for safe-keeping with BLMIS during the Class Period.  In furtherance of this unlawful scheme, plan, and course of conduct, BLMIS and its agents, including Madoff, took the actions set forth herein.  As a result, Plaintiff and the other members of the Class suffered damages in connection with the

08-01789-smb    Doc 4531-1    Filed 12/3/11    Entered 12/3/11 18:56:03    Exhibit A
Pg 80 of 89

# DRAFT

undisclosed and unauthorized theft of their securities, cash assets and the misappropriation of the proceeds thereof, as alleged above.

80.     BLMIS (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of materials fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon brokerage customers who entrusted assets to BLMIS and who purchased securities issued by BLMIS in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

81.     As part and in furtherance of this conduct, BLMIS engaged in an ongoing scheme to misappropriate funds which constituted the proceeds of sales of customers' securities.

82.     BLMIS directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to misappropriate funds which constituted the proceeds of sales of securities (or the securities themselves or cash) held by BLMIS as securities custodian and broker for Plaintiff and the Class members.

83.     BLMIS made untrue statements of material fact and/or omitted to state material facts necessary to make their statements not misleading and they employed devices, schemes and artifices to defraud, and engaged in acts, practices, and a course of conduct in an effort to mislead and misappropriate the assets of BLMIS brokerage customers and participants in the BLMIS Discretionary Trading Program.  Such misconduct included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about BLMIS and the BLMIS Discretionary Trading Program, its financial performance and its business operations in the light

HF 7090460v.4 #99999/1000

# DRAFT

of the circumstances under which they were made, not misleading, and which included engaging in manipulative and deceptive transactions, practices and courses of business which operated as a fraud and deceit upon the customers of BLMIS and participants in the BLMIS Discretionary Trading Program during the Class Period, including the surreptitious and unauthorized theft of customer assets and securities.

84.    BLMIS had actual knowledge of the misrepresentations and omissions of material facts set forth herein.   BLMIS's material misrepresentations and/or omissions were done knowingly for the purpose and effect of inflating BLMIS' financial results and to enrich defendant and the Picower Defendants.   At all relevant times, BLMIS was aware of the dissemination of artificially inflated financial information to the investing public which it knew was materially false and misleading.

85.    As a result of the manipulative and deceptive conduct and the dissemination of the materially false and misleading information as set forth above, Plaintiffs and the Class members suffered injury.

86.    At the time of the misrepresentations, omissions and manipulative and deceptive conduct, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true, and they were ignorant of the manipulative and deceptive conduct complained of herein.  Had Plaintiffs and the other members of the Class known the truth regarding BLMIS's materially false statements and deceptive and manipulative conduct alleged above, which were not disclosed during the Class Period, Plaintiff and other members of the Class would not have entrusted their assets with BLMIS or purchased the BLMIS securities.

87.    By virtue of the foregoing, BLMIS has violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

HF 7090460v.4 #99999/1000

# DRAFT

88.     As a direct and proximate result of BLMIS's wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with the undisclosed and unauthorized sale of their securities and the misappropriation of the proceeds thereof, as alleged above.

## COUNT I

### VIOLATIONS OF 20(a) OF THE EXCHANGE ACT AS
### AGAINST THE PICOWER DEFENDANTS

89.     Plaintiff repeats and re-alleges each and every allegation contained above as it fully set forth herein.

90.     The Defendants acted collectively as a control group of BLMIS within the meaning of § 20(a) of the Exchange Act as alleged herein.

91.     The Defendants had the power to influence and control and did in fact directly influence and control the decision making at BLMIS, the record keeping at BLMIS, and the recording of securities transactions at BLMIS.

92.     The Defendants had the power to influence and control, and did in fact directly influence and control the flow of funds and assets in and out of BLMIS and the BLMIS Discretionary Trading Program, even when this flow of funds and assets did not correspond to actual trading activity; this resulted in the distribution of billions of dollars of false profits to the Defendant control group.

93.     The Defendants had access to the books and records of BLMIS, and used these books and records as an instrumentality to divert and steal funds from other BLMIS Discretionary Trading accounts for the Defendants' benefit.

94.     The Defendants, either directly or through Picower, had direct involvement in the day to day operations, record keeping and financial management of BLMIS.  The Defendants

25

# DRAFT

had and employed the power to control and influence actual transactions giving rise to the securities violations alleged herein.

95.    As set forth above and in the complaint filed by the Justice Department against Madoff, in the complaint filed by the SEC against Madoff and BLMIS, and in the numerous complaints filed by the Trustee, BLMIS violated § 10b of the Exchange Act and Rule 10b-5 by its acts and omissions and by engaging in a massive Ponzi scheme.

96.    By virtue of their position as a control group, the Defendants are jointly and severally liable pursuant to § 20(a) of the Exchange Act.

97.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and other members of the Class have suffered damages.

WHEREFORE, Plaintiffs pray for relief and judgment against the Defendants as follows:

A.    Determining that this action is a proper class action;

B.    designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as class counsel;

C.    awarding compensatory damages in favor of Plaintiff and other class members against all the Defendants jointly and severally, for all damages sustained as a result of the defendants wrong-doing in an amount to be proven at trial, including interest;

D.    awarding Plaintiff and the Class the reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    such other and further relief as the Court may deem just and proper.

DATED: this ___ day of December, 2011, by:

26

08-01789-smb    Doc 4301-1    Filed 12/3/14    Entered 12/3/14 18:56:03    Exhibit A
Pg 28 of 33

# DRAFT

BEASLEY HAUSER KRAMER
& GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone:  (561) 835-0900
Facsimile:  (561) 835-0939
galardi@beasleylaw.net

By:    s/ Draft
James W. Beasley, Jr.
Florida Bar No. 145750
Joseph G. Galardi
Florida Bar No. 180572

-and-

Lesley Blackner, Esquire
Florida Bar No. 654043
BLACKNER, STONE & ASSOCIATES
123 Australian Avenue
Palm Beach, FL  33480
(561)659-5754
(561)659-3184 (fax)
lblackner@aol.com
*Co-counsel for Plaintiff and the Class*

HF 7090460v.4 #99999/1000

08-01789-cgm   Doc 4581-5   Filed 12/13/11   Entered 12/13/11 18:56:03   Notice of
Motion   Pg 85 of 89

Hearing Date: January 31, 2012 @ 10:00 a.m.

**HERRICK, FEINSTEIN LLP**
Two Park Avenue
Joshua J. Angel
Frederick E. Schmidt, Jr.
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
jangel@herrick.com
eschmidt@herrick.com

**BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939

**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

Attorneys for Pamela Goldman, individually
and on behalf of a similarly situated class

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                :
In re:                                                          :   Adv. Pro. No. 08-1789 (BRL)
                                                                :
SECURITIES INVESTOR PROTECTION                                  :   SIPA Liquidation
CORPORATION,                                                    :
                                                                :   (Substantively Consolidated)
            Plaintiff-Applicant,                                :
                                                                :
            v.                                                  :
                                                                :
BERNARD L. MADOFF INVESTMENT                                    :
SECURITIES LLC,                                                 :
                                                                :
            Defendant.                                          :
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF HEARING ON MOTION OF PICOWER CLASS ACTION
PLAINTIFFS FOR A DETERMINATION THAT THE COMMENCEMENT OF
SECURITIES CLASS ACTION LAWSUITS AGAINST NON-DEBTOR PARTIES
IS NOT PROHIBITED BY A PERMANENT INJUNCTION ISSUED BY THIS
<u>COURT OR VIOLATIVE OF THE AUTOMATIC STAY</u>**

08-01789-smb    Doc 4581-5    Filed 12/13/11    Entered 12/13/11 13:56:03    Notice of
Motion    Pg 2 of 3

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion dated December 13, 2011 (the "Motion") of Pamela Goldman,[1] individually and on behalf of all other similarly situated (collectively, the "Picower Class Action Plaintiffs" or "Movants"), seeking entry of an order determining that neither the injunction issued by this Court as part of its order, dated January 13, 2011, nor the automatic stay provisions (the "Automatic Stay") of section 362 of title 11 of the United States Code (the "Bankruptcy Code"), bar, prohibit, restrict or prevent Movants from commencing and prosecuting a securities law class action (the "Class Action") against certain non-debtor defendants (collectively, the "Picower Defendants") in the United States District Court for the Southern District of Florida (the "Florida District Court"), shall be held before the Honorable Burton R. Lifland, United States Bankruptcy Judge, Courtroom 623, United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 on January 31, 2012 at 10:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers), and shall be served in accordance with General Order M-242 upon (i) Herrick, Feinstein LLP, 2 Park Avenue, New York, New York

---

[1] Pamela Goldman, like all other class members, is a "net loser" having not received the return of her full principal investment with BLMIS.

10016 (Attn: Frederick E. Schmidt, Esq.); (ii) Baker & Hostetler LLP, counsel for the Trustee,

45 Rockefeller Plaza, New York, New York 10111 (Attn:  Elizabeth A. Smith, Esq. and Elyssa

S. Kates, Esq.); (iii) the Office of the United States Trustee for the Southern District of New

York, 33 Whitehall Street, 21st Floor, New York, New York 10004; and (iv) all parties having

entered a notice of appearance in the above captioned case, so as to be received no later than

**January 10, 2012 at 4:00 p.m**. (prevailing Eastern Time).


Dated:   New York, New York
         December 13 , 2011

                                          */s/Joshua J. Angel*

                                   **HERRICK, FEINSTEIN LLP**
                                   Two Park Avenue
                                   New York, New York 10016
                                   Telephone: (212) 592-1400
                                   Facsimile: (212) 592-1500
                                   Joshua J. Angel
                                   Frederick E. Schmidt, Jr.

                                   **BEASLEY HAUSER KRAMER &
                                   GALARDI, P.A.**
                                   505 South Flagler Drive, Suite 1500
                                   West Palm Beach, Florida 33401
                                   Telephone: (561) 835-0900
                                   Facsimile: (561) 835-0939

                                   - and -

                                   **BLACKNER, STONE & ASSOCIATES**
                                   123 Australian Avenue
                                   Palm Beach, Florida 33480
                                   Telephone: (561) 659-5754
                                   Facsimile: (561) 659-3184

                                   Attorneys for Pamela Goldman, individually
                                   and on behalf of a similarly situated class

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
In re:                                                      :        Adv. Pro. No. 08-1789 (BRL)
                                                            :
SECURITIES INVESTOR PROTECTION                              :        SIPA Liquidation
CORPORATION,                                                :
                                                            :        (Substantively Consolidated)
                Plaintiff-Applicant,                        :
                                                            :
                v.                                          :
                                                            :
BERNARD L. MADOFF INVESTMENT                                :
SECURITIES LLC,                                             :
                                                            :
                Defendant.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>ORDER</u>

Upon the motion (the "<u>Motion</u>") of Pamela Goldman, individually and on behalf of all

other similarly situated (collectively, the "<u>Picower Class Action Plaintiffs</u>" or "<u>Movants</u>"), dated

December 13, 2011,[1] by their counsel, Herrick, Feinstein LLP, Beasley Hauser Kramer Leonard

& Galardi, P.A., and Blackner, Stone & Associates, seeking entry of an order determining that

neither the injunction issued by this Court as part of its order, dated January 13, 2011, nor the

automatic stay provisions (the "<u>Automatic Stay</u>") of section 362 of title 11 of the United States

Code (the "<u>Bankruptcy Code</u>"), bar, prohibit, restrict or prevent Movants from commencing and

prosecuting a securities law class action (the "<u>Class Action</u>") against certain non-debtor

defendants (collectively, the "<u>Picower Defendants</u>") in the United States District Court for the

Southern District of Florida (the "<u>Florida District Court</u>"); and upon consideration of the Motion;

and proper and sufficient notice of the Motion and the relief requested therein have been given,

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

and no further notice being required; and due deliberation having been had and sufficient cause

appearing therefore; it is

ORDERED, that the injunction issued by the Court as part of its order, dated

January 13, 2011, does not bar, prohibit, restrict or prevent Movants from commencing and

prosecuting the Class Action against the Picower Defendants in the Florida District Court;

and it is further

ORDERED, that the Automatic Stay does not bar, prohibit, restrict or prevent

Movants from commencing and prosecuting the Class Action against the Picower Defendants

in the Florida District Court.

Dated:        New York, New York
              _____, 2011



              _____
              HONORABLE BURTON R. LIFLAND
              UNITED STATES BANKRUPTCY JUDGE

2