Howard Kleinhendler
Sara Spiegelman
WACHTEL MISSRY LLP
885 Second Avenue
New York, New York 10017
Telephone: (212) 909-9500
Facsimile: (212) 909-9417

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated)<br><br>**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS** |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>DEFENDANTS LISTED ON THE ATTACHED SCHEDULE A,<br><br>    Defendants. | Adv. Pro. Nos. listed on the attached Schedule A |

**PRELIMINARY STATEMENT**

1.  The Trustee concedes that if the estate has sufficient funds to pay off Net Losers and satisfy the general estate claims, then there is no standing to pursue section 548 claims against the Defendants. Indeed, neither the Trustee nor SIPC make any effort to distinguish the line of cases cited in Defendants' moving papers which unequivocally establish that "only asset transfers that may have actually harmed creditors may be avoided." *Bear, Stearns Sec. Corp. v Gredd*, 275 BR 190, 194-95 (SDNY 2002).

2.  The Trustee's defense rests on an improper application of *Matter of Bevill, Bresler & Schulman, Inc.*, 83 BR 880, 882-83 (DNJ 1988), which as explained more fully below, does <u>not</u> support the proposition that valuation of the fund of customer property is forever determined by the amount estimated by the Trustee at the outset of the case. On the contrary, *Bevill, Bresler* explicitly points out that "SIPA and the legislative history are silent on the issue of the timing of the sufficiency valuation." *Id.* at 892. *Bevill, Bresler* made sense in the context of the specific facts presented there, where, two years after the filing date, only a handful of banks had sought to block avoidance of their <u>post-petition</u> transfers. Here, we are already five years and three months after the December 15, 2008 filing date and the undisputed facts demonstrate that the Trustee has billions in surplus funds which will satisfy all claims in the SIPA and General Estates.

3.  The Trustee also argues that liability from the small number of contested claims still pending is unknown. However, the Trustee has not stated anywhere that the liability from those claims would exceed the cash surplus presently available plus his recovery from the myriad of third-party claim that are pending. The Trustee may not satisfy his standing burden based on conjecture or hypothetical liabilities.

4.	Finally, at a minimum, this case should be stayed until the standing issue is resolved. It would be a colossal waste of judicial resources to permit the Trustee to prosecute over a thousand innocent investor clawback cases only to discover that the entire process was unnecessary. Further, the Trustee's suggestion that clawback defendants can recoup their disgorged funds as general creditors fails to appreciate enormous hardship investors would suffer from having to sell their primary residences or liquidate their assets to satisfy the Trustee's avoidance claims. Many good faith investors are individuals and families who simply do not have the liquid resources to satisfy avoidance claims. The prospect of a future recovery is hardly solace for these Defendants.

## ARGUMENT

### I.  The Trustee Has No Standing To Pursue the Two-Year Claims

5.	As set forth in Defendants' moving papers, the Trustee lacks standing to bring the Two-Year claims which deprives this court of subject matter jurisdiction:

> The Constitution limits the jurisdiction of Article III courts to matters that present actual cases or controversies. See U.S. Const. art. III, § 2, cl. 1. This limitation means that when a plaintiff brings suit in federal court, she must have standing to pursue the asserted claims. **It also generally means that if the plaintiff loses standing at any time during the pendency of the proceedings in the district court or in the appellate courts, the matter becomes moot, and the court loses jurisdiction**.

*Altman v Bedford Cent. School Dist.*, 245 F3d 49, 69 (2d Cir 2001) (emphasis added).

6.	Further, the Trustee cannot establish standing by mere conjecture:

> In order to have standing to bring suit, a plaintiff must allege "injury in fact" to his or her preexisting, legally protected interest; such injury must be "(a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical."

3

*Id.* at 70 (Internal citations omitted throughout). *See also Martin v U.S. S.E.C.*, 734 F3d 169, 173 (2d Cir 2013) (same).

7. The Trustee relies heavily on *Matter of Bevill, Bresler & Schulman, Inc.*, 83 BR 880 (DNJ 1988), arguing that the amount of customer property alleged at the outset of the case controls the standing question. However, this reliance is misplaced. There, the broker-dealer was insolvent and within the two-day period between the filing of the SEC's complaint and the appointment of a receiver, the debtor transferred $19 million to several banks. *Id.* at 883. The question there was on which date to value the customer fund; on the filing date or the date the receiver was appointed. *Id.*

8. In discussing the law, the court recognized that the impact of either date would be irrelevant as there was admittedly insufficient funds to fully satisfy customer claims. *Id.* at 891. Further, the court noted that "SIPA and the legislative history are silent on the issue of timing of the sufficiency valuation." *Id.* at 892. On these facts, the court held that date of valuing the customer funds was the date of the SIPA filing. *Id*. at 893. The court's decision, however, does not impact the situation here, where over five years after the filing date, the undisputed facts demonstrate that there is more than $2.55 billion in surplus funds plus potential recoveries from a host of third-party claims asserted by the Trustee available to satisfy customer claims.

9. The Trustee's reliance on *Picard v Flinn Investments, LLC*, 463 BR 280 (SDNY 2011) is also misplaced. There, Judge Rakoff merely held that withdrawal of the reference was unwarranted with respect to the standing argument and remanded the issue to the bankruptcy court. *Id.* at 284. The court's reliance on *Bevill, Bresler* did not form a finding that the Trustee's standing could never be challenged throughout the case, but merely that at the time, in 2011, there was no novel federal issue to consider. However, since *Flinn*, the Trustee's recovery has

dramatically increased to the point where we now have a substantial surplus. This was not the case when *Flinn* was decided.

10. There is also no merit to the Trustee's argument that the funds in the Madoff Victim Fund ("MVF") are not "customer property" under SIPA. First, there is nothing preventing the Trustee from making a claim against that fund on behalf of Net Losers. Any recovery from that claim would certainly become property of the estate which could be used to retire customer claims. Indeed the administrator of the MVF has made it clear that it will not "provide recoveries for investors who withdrew more money that they deposited." *See* Kleinhendler Reply Decl., Ex. A, fn. 2.

11. Further, any money paid from the MVF to a Madoff customer will reduce the amount of that person's claim in this proceeding as the Trustee has clearly taken the position that only Net Losers may recover and recovery of capital from the MVF will become part of each customer's Net Equity calculation. Thus, regardless of whether the $4 billion in the MVF is technically "customer property," for practical purposes its distribution to Madoff Net Losers has the same effect as a distribution of customer property.

12. In sum, with more than $2.55 billion available above the pending customer claims in the SIPA estate, the Trustee has no standing to pursue avoidance claims against the Defendants.

**II.   The Case Should Be Stayed**

13. The Trustee argues for continuing the senseless exercise of prosecuting over 1,000 innocent investor clawback cases because those investors can get their money back as creditors of the general estate. However, he fails to explain how waiting until the MVF is distributed and the small number of unresolved customer claims are disposed of prejudices him

5

or the estate in any way. The clawback cases were brought years ago and there is no rush to spend hundreds of millions in legal fees to litigate claims that may already be moot.

14. Indeed, although SIPC has thus far funded the Trustee's efforts, SIPC, per SIPA 15 USC § 78fff (e), may seek to recoup those fees from the general estate, per Bankruptcy Code 11 USC § 507, and will hold priority over other general unsecured creditors. Thus, in essence, the Trustee wants to disgorge funds from innocent investors in order to fund the recovery of SIPC's legal fees from the general estate, because SIPC cannot recover these funds from the SIPA Estate. Innocent investors should not be compelled to fund SIPC's legal fee advances.

15. Finally, the Defendants would be substantially burdened by being forced to devote money, time and energy toward this litigation which likely will be moot once all monies from MVF are disbursed and monies from further recoveries from the Trustee's non-avoidance litigations are completed. It simply makes no sense to burden the Defendants -- some of whom would be forced to liquidate significant assets including their homes -- with these hardships when the Trustee already has all the money he needs to accomplish his mandate.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court dismiss the Complaint, or in the alternative, stay this action until the funds from MVF are disbursed and the Trustee's remaining major litigations against banks and other financial institutions are resolved.

Dated:  New York, New York
       March 17, 2014

                                        /s/ *Howard Kleinhendler*
                                        Howard Kleinhendler
                                        Sara Spiegelman
                                        WACHTEL MISSRY LLP
                                        885 Second Avenue
                                        New York, New York 10017
                                        (212) 909-9500

## SCHEDULE A

|  | Adversary Proceeding Number | Title | Filed | Firm |
|---|---|---|---|---|
| 1. | 10-05400 | Picard v. Ted Goldberg, et al. | 1/17/14 | Wachtel Missry LLP |
| 2. | 10-04726 | Picard v. Lori Chemla, et al | 1/17/14 | Wachtel Missry LLP |
| 3. | 10-04579 | Picard v. Shetland Fund Limited Partnership, et al. | 1/17/14 | Wachtel Missry LLP |
| 4. | 10-04896 | Picard v. Helene Juliette Feffer | 1/17/14 | Wachtel Missry LLP |
| 5. | 10-05372 | Picard v. O.D.D. Investment LP, et al. | 1/17/14 | Wachtel Missry LLP |
| 6. | 10-04502 | Picard v. Steven Schiff | 1/17/14 | Wachtel Missry LLP |
| 7. | 10-04363 | Picard v. Schiff Family Holdings Nevada Limited Partnership, et al. | 1/17/14 | Wachtel Missry LLP |
| 8. | 10-04447 | Picard v. Franklin Sands | 1/17/14 | Wachtel Missry LLP |
| 9. | 10-04472 | Picard v. Daniel N. Silna, et al. | 1/17/14 | Wachtel Missry LLP |
| 10. | 10-04470 | Picard v. Silna Family Inter Vivos Trust, et al. | 1/17/14 | Wachtel Missry LLP |