UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION :    Adv. Pro. No. 08-1789 (SMB)
CORPORATION, :
              :
         Plaintiff-Applicant, :    SIPA LIQUIDATION
              :
         - against - :    (Substantively Consolidated)
              :
BERNARD L. MADOFF INVESTMENT :
SECURITIES LLC, :
              :
         Defendant. :

-------------------------------------------------------------x

IRVING H. PICARD, Trustee for the Liquidation :    Adv. Pro. No. 10-05224 (SMB)
of Bernard L. Madoff Investment Securities LLC, :
              :
         Plaintiff, :
              :
         - against - :
              :
DEFENDANTS LISTED ON :
SCHEDULE A :

-------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

DENTONS US LLP

Carole Neville
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ......................................................................................... 1

I.    THE TRUSTEE FAILS TO STATE A CLAIM TO AVOID OBLIGATIONS
      OWED BY BLMIS TO ITS CUSTOMERS ............................................................. 1

      A.    SIPA Does Not Authorize a SIPA Trustee to Avoid Obligations .................... 2

      B.    The Complaints Fail to Identify Any Obligations to be Avoided ................... 4

      C.    The Trustee's Indirect Attempt To Avoid Obligations is Inconsistent
            with the Law ................................................................................................ 4

II.   THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS MUST BE
      DISMISSED ......................................................................................................... 5

      A.    The Subsequent Transfer Claims Are Not Pled With Sufficient Factual
            Detail .......................................................................................................... 5

            1.    The Trustee's Claims Against Subsequent Transferees Lack
                  Sufficient Detail ................................................................................ 6

            2.    Alleged Personal, Familial Or Business Relationships Between
                  Initial Transferees and Subsequent Transferee Defendants Do
                  Not Provide A Sufficient Basis To Allege That Defendants
                  Received Subsequent Transfers ........................................................ 7

      B.    The Trustee Must Plead Adequate Claims Before He Is Permitted To
            Obtain Discovery ......................................................................................... 9

            1.    The Trustee's Attempt to Convert Subsequent Transferees Into
                  Initial Transferees Should Be Rejected .............................................. 9

III.  THE COURT MUST DISMISS THAT CLAIMS THAT ARE NOT
      ADEQUATELY PLED. ........................................................................................ 11

      A.    Claims Against Multiple Defendants Must Identify the Claims Against
            the Individual ............................................................................................. 11

      B.    The Trustee Cannot Recover From Defendants Based On Inter Account
            Transfers .................................................................................................... 12

IV.   APPLICABLE NON-BANKRUPTCY LAW PROTECTS TRANSFERS AND
      DISTRIBUTIONS FROM DEFENDANTS ACCOUNTS AT BLMIS ................... 14

V.    THE COURT MUST CONSIDER ANTECEDENT DEBT DEFENSES UNDER
      BANKRUPTCY CODE SECTION 548(C) ........................................................... 17

VI.    THE TRUSTEE CANNOT RELY UPON THE PONZI SCHEME
       PRESUMPTION TO PROVE FRAUDULENT INTENT ........................................19

CONCLUSION...............................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009)................................................................................4, 9, 11, 13

*Baker v. David A. Dorfman, P.L.L.C.,*
2000 U.S. Dist. LEXIS 10142 (S.D.N.Y. 2000).......................................................... 15

*Balaber-Strauss v. Lawrence,*
264 B.R. 303 (S.D.N.Y. 2001) ...................................................................................... 19

*Bayerische Hypo-und Vereinsbank AG v DeGiorgio,*
902 N.Y.S.2d 85 (2010)................................................................................................ 15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................... 4, 8, 11

*Burrage v. U.S.,*
134 S.Ct. 881 (2014)...................................................................................................... 18

*Connecticut Nat'l Bank v. Germain,*
503 U.S. 249 (1992)......................................................................................................... 3

*Court-Appointed Receiver of Lancer Offshore, Inc. v. The Citgo Group Ltd,*
Case No. 05-60055, 2011 U.S. Dist. LEXIS 34256 (S.D. Fla. Mar. 30, 2011)........................ 8, 10

*Cunningham v. Brown,*
265 U.S. 1 (1924)............................................................................................................ 19

*Daly v. Deptula (In re Carrozzella & Richardson),*
286 B.R. 480 and 7 (D. Conn. 2002) ........................................................................... 19

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
822 F.2d 1242 (2d Cir. 1987) ...................................................................................... 12

*Forman v. Salzano (In re Norvergence, Inc.),*
405 B.R. 709 (Bankr. D.N.J. 2009) ............................................................................. 12

*Fourco Glass Co. v. Transmirra Prods. Corp.,*
353 U.S. 222 (1957)......................................................................................................... 2

*Frangos v. Doering Equipment Corp.,*
860 F.2d 70 (3d Cir.1988) ............................................................................................ 18

*Gowan v. Amaranth Advisers L.L.C. (In re Dreier LLP),*
2014 Bankr. LEXIS 11 (S.D.N.Y. Jan. 3, 2014) ................................................... 19, 20

*Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*,
  452 B.R. 467 (Bankr. S.D.N.Y. 2011) .................................................................. 5, 10

*Hill v. Oria (In re Juliet Homes, LP)*,
  Case No. 07-36424, Chapter 7, Adversary No. 09-03429, 2010 Bankr. LEXIS 4826, at
  *65 (Bankr. S.D. Tex. Dec. 16, 2010) ...................................................................... 12

*In re Bayou Group, LLC*,
  396 B.R. 810 (Bankr. S.D.N.Y. 2008) .................................................................. 13

*In re Bernard L. Madoff Inv. Secs., LLC*,
  654 F.3d 229 (2d. Cir. 2011) ............................................................................ 16

*In re Enron Creditors Recovery Corp.*,
  407 B.R. 17 (Bankr. S.D.N.Y. 2009) .................................................................. 10

*In re Hinsen*,
  405 B.R. 49 (Bankr. E.D.N.Y 2009) ................................................................... 16

*In re Wiggins*,
  341 B.R. 506 (M.D.Pa. 2006) ........................................................................... 18

*Lamie v. United States Trustee*,
  540 U.S. 526 (2004) ....................................................................................... 3

*Law v. Siegel*,
  No. 12-5196, 2014 U.S. LEXIS 1784 (Mar. 4, 2014), 571 U.S. __(2014) BA_Cite_118 ....... 3,18

*Matter of Gard Entertainment Inc. v Block*,
  960 N.Y.S.2d 50 (2012) ................................................................................. 15

*McCloskey v. Mueller*,
  446 F.3d 262 (1st Cir. 2006) ......................................................................... 9, 13

*Morales v. Trans World Airlines*,
  504 U.S. 374 (1992) ...................................................................................... 3

*Nedds v. Calderon*,
  678 F.3d 777 (9th Cir.2012) .......................................................................... 18

*Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.)*,
  309 F.3d 1325 (11th Cir. 2002) ...................................................................... 19

*Picard v. Chais*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) ............................................................... 6, 7

*Picard v. Eugene J. Ribakoff, 2006 Trust, et. al.*
  (Adv. Pro. No. 11 cv-07644 (SMB) ..................................................................... 5

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC)*,
  721 F.3d 54 (2013) ....................................................................................... 3

*Picard v. Lapin Children LLC*,
Adv. Pro. No. 11-cv-07624 (SMB) ............................................................................ 12

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
458 B.R. 87 (Bankr. S.D.N.Y. 2011) .................................................................. 6, 7, 9

*Picard v. Merkin*,
440 B.R. 243 (Bankr. S.D.N.Y. 2010) ..................................................................... 6, 7

*Picard v. Sidney Cole*,
Adv. Pro. No. 10-4672 (SMB) ................................................................................... 4

*Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
234 B.R. 293 (Bankr. S.D.N.Y. 1999) ........................................................................ 5

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*,
476 B.R. 715 (S.D.N.Y. 2012), *appeal pending, In re Madoff Sec.,* No. 12-2557-L (2d
Cir.) ...................................................................................................................... 1, 9, 14

*SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.)*,
499 B.R. 416 (S.D.N.Y. 2013) ...................................................................... 4, 16, 17

*Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*,
No. 00-06410-CIV-MARRA, 2008 U.S. Dist. LEXIS 42492 (S.D. Fla. May 29, 2008) ............... 8

*U.S. v. Jackson*,
736 F.3d 953 (10th Cir.2013) .................................................................................. 18

*United States v. Ron Pair Enterprises, Inc.*,
489 U. S. 235 (1989) .................................................................................................. 3

*Zazzali v. Wavetronix LLC (In re DBSI, Inc.)*,
445 B.R. 351 (Bankr. D. Del. 2011) ........................................................................... 6

## RULES AND STATUTES

Fed. R. Bankr. P. 7012 ....................................................................................................... 1

Fed. R. Civ. P. 9(b) .......................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1

11 U.S.C. § 101(5)(A) ...................................................................................................... 17

11 U.S.C. § 544 .................................................................................................................. 2

11 U.S.C. § 546(e) ........................................................................................................... 14

11 U.S.C. § 548 .................................................................................................................. 2

11 U.S.C. § 548(a)(1) ......................................................................................................... 2

11 U.S.C. § 548(a)(1)(A) ................................................................................................. 1

11 U.S.C. § 548(C) .................................................................................................. 16, 17

11 U.S.C. § 548(d)(2)(A) ............................................................................................ 17

11 U.S.C. § 550(a)(1) ........................................................................................... 10, 11

11 U.S.C. § 550(a)(2) ................................................................................................... 1

15 U.S.C. § 6(b) ........................................................................................................ 17

15 U.S.C. § 78fff-1(a) .................................................................................................. 2

15 U.S.C. § 78fff-2(c)(3) ......................................................................................... 1, 2

15 U.S.C. § 78fff(b) ..................................................................................................... 2

26 U.S.C. § 72(t) ....................................................................................................... 16

26 U.S.C. § 401 ......................................................................................................... 14

26 U.S.C. § 401(a)(9)(C) ........................................................................................... 16

26 U.S.C. § 402(a)(5) ................................................................................................ 14

26 U.S.C. § 403(a)(4) ................................................................................................ 14

26 U.S.C. § 408(d)(3) ................................................................................................ 14

26 U.S.C. § 4974(a) ................................................................................................... 16

N.Y. C.P.L.R. § 5202 ................................................................................................. 15

N.Y. C.P.L.R. § 5202(d)(1) ....................................................................................... 16

N.Y. C.P.L.R. § 5205(2) ............................................................................................ 15

N.Y. C.P.L.R. § 5205(c)(1) ....................................................................................... 13

N.Y. C.P.L.R. § 5205(c)(2) ....................................................................................... 14

N.Y. C.P.L.R. § 5205(c)(3) ....................................................................................... 14

N.Y. C.P.L.R. § 5205(c)(5) ........................................................................... 14, 15, 16

N.Y. C.P.L.R. § 5205(d)(1) ....................................................................................... 15

Defendants, by their undersigned counsel, submit this reply memorandum of law in further support of their motion to dismiss the complaints filed in the adversary proceedings listed on Schedule A attached hereto for failure to state claims upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## PRELIMINARY STATEMENT

The lawsuits against the Defendants are among the 1,000 virtually identical, unprecedented actions against innocent investors commenced Irving H. Picard, as Trustee in the proceeding for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA").  As a result of rulings in the District Court the Trustee's only remaining claims to avoid transfers are those under Section 548(a)(1)(A) of the Bankruptcy Code, subsequent transfer claims asserted pursuant to Section 550(a)(2), and the Trustee's claims to avoid obligations.  *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)* (hereinafter, "*Greiff*"), 476 B.R. 715, 722 (S.D.N.Y. 2012).

The purpose of the motions to dismiss is to dispose of certain of the remaining claims, parties or issues common to a number of complaints.  To that end, the Defendants have specifically address and rebut below the Trustee's objections to dismissal of the counts to avoid obligations, to dismiss the vague claims against subsequent transferees and the claims that fail to meet the minimal pleading requirements, and to dismiss the cases involving accounts protected by state law..  Finally, the Defendants move to reopen the antecedent debt defense based upon new Supreme Court rulings. Schedule B attached hereto identifies the issues addressed in this reply for each of the Defendants.

## I.    THE TRUSTEE FAILS TO STATE A CLAIM TO AVOID OBLIGATIONS OWED BY BLMIS TO ITS CUSTOMERS

As Defendants' motions explain, the language of SIPA § 78fff-2(c)(3) conspicuously omits from the Trustee's specific avoidance power any mention of "obligations incurred," instead limiting him only to the avoidance of "transfers" to the extent permitted under the Bankruptcy Code.  The

Trustee fails to provide the Court with any basis to re-read SIPA to include the avoidance of obligations.

## A.  **SIPA Does Not Authorize a SIPA Trustee to Avoid Obligations**

The Trustee relies on the general provisions in Sections 78fff-1(a) and 78fff(b) of SIPA as authority for a power to avoid "obligations incurred" by the debtor.  (Tr. Br. 31-33.)  Neither statute grants such authority to the Trustee.

These general provisions of SIPA confer upon the Trustee the general powers of a bankruptcy trustee, and borrow certain provisions from chapters 1, 3 and 5 the Bankruptcy Code for purpose of administration of a SIPA liquidation case, but only to the extent consistent with SIPA. With respect to the avoidance remedy, only Section 78fff-2(c)(3) of SIPA speaks to the Trustee's specific power of avoidance, and then borrows the Bankruptcy Code's power to avoid only "transfers," and only to the extent that transfers are void or voidable under Title 11 – wholly omitting the word "obligations" that appears in Sections 548(a)(1) and 544 of the Bankruptcy Code.  Although the Bankruptcy Code expressly permits bankruptcy trustees to avoid "obligations," e.g., 11 U.S.C. § 548(a)(1), a SIPA trustee may only recover voidable transfers of property.  SIPA § 78fff-2(c)(3).

Surprisingly, the Trustee asserts that Section 78fff-2(c)(3) "explicitly incorporates the Bankruptcy Code, thus authorizing the Trustee to avoid any obligations incurred under sections 544 and 548 of the Code."  (Trustee Br. at 31-32.)  But the Trustee conveniently ignores the express confinement of his power under this statute to the avoidance of "transfers" to the extent avoidable under Title 11.  His faulty premise disregards the express statutory text of Section 78fff-2(c)(3) and, in particular, the effect of the absence of any reference to "obligations" in SIPA's specific avoidance provision, especially when compared to the avoidance provisions of the Bankruptcy Code.

In this regard, Congress' unambiguous phraseology is dispositive.  The general provision for SIPA liquidations to be administered in accordance with various parts of the Bankruptcy Code, to the extent consistent with SIPA, does not override the specific SIPA provision that borrows the Bankruptcy Code's avoidance powers and limitations without caveat or exclusion.  See SIPA §78fff-2(c)(3).  *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228 (1957) ("However

inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment.") (citations and quotations omitted); *accord*, *Morales v. Trans World Airlines*, 504 U.S. 374, 384-85 (1992) ("it is a commonplace of statutory construction that the specific governs the general").

Accordingly, there is no basis for this Court to expand the Trustee's powers by implying the word "obligations" into SIPA's special avoidance provision. *Connecticut Nat'l Bank v. Germain*,, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last:  'judicial inquiry is complete.'") (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241-242 (1989); *Lamie v. United States Trustee*, 540 U.S. 526, 537, 538 (2004) (courts should not add "absent words" to a statute, especially where there is a "plain, non absurd reading in view").

Finally, it is clear that the Trustee believes that, as a matter of equity, his goal of maximizing the amount of avoidance recoveries justifies the ends of stretching the reach of his powers as far as possible – even pushing the apparent statutory limits of his authority beyond the express words of SIPA.  But equity does not supply the Trustee with any basis to rewrite the language deliberately chosen by Congress.

The Trustee argues under principles of equity that unless he can spearhead the litigation on behalf of defrauded customers, the victims will not be made whole, SIPC will be unable to recoup its advances, and third-party tortfeasors will reap windfalls.  No doubt, there are advantages to the course the Trustee wants to follow. But equity has its limits; it may fill certain gaps in a statute, but it should not be used to enlarge substantive rights and powers. *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC),* 721 F.3d 54, 76 (2013) (footnote omitted), petition for cert. filed, No. 13-448 (Oct. 9, 2013).  *See also Law v. Siegel*, No. 12-5196, 2014 U.S. LEXIS 1784 at *10-11 (Mar. 4, 2014) (in exercising statutory and inherent powers, bankruptcy courts may not contravene specific statutory powers).

B. **The Complaints Fail to Identify Any Obligations to be Avoided**

The Trustee provides no meaningful response to Defendants' argument that the complaints fail to identify any particular fraudulent obligations to be avoided. Despite his contention that the "[c]omplaints adequately plead . . . the obligations incurred by BLMIS," neither the Trustee's opposition brief nor the Complaints provide any information about the nature of those obligations. Tr. Br. at 31. In fact, the Complaints contain only generalized, vague allegations that "To the extent BLMIS or Madoff incurred obligations" to Defendants, "such obligations . . . are avoidable . . . ." *See, e.g., Picard v. Sidney Cole*, Adv. Pro. No. 10-4672 (SMB), Am. Compl. ¶ 37. Because the Defendants cannot ascertain from the Complaints what obligations the Trustee seeks to avoid or what defenses may apply, these claims must be dismissed as insufficiently pleaded. On a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal (hereinafter "Iqbal")*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

C. **The Trustee's Indirect Attempt To
Avoid Obligations is Inconsistent with the Law**

In response to the Defendants' contention that the Trustee cannot avoid BLMIS' obligations to customers that arose as matters of federal securities statutes and state law, the Trustee, invoking the *Antecedent Debt Decision*, argues that the Defendants cannot rely on federal and state law to "increase the amount to which a customer is entitled from the customer property estate." Tr. Br. at 33 (quoting *Antecedent Debt Decision*, 499 B.R. at 426). By focusing on the rights of a net equity claimant, the Trustee presents a non sequitur and blurs the real issue: This action does not involve questions concerning amounts that the Defendants would be entitled to recover from BLMIS' estate as net equity claims. Indeed, to the extent that any of them timely submitted customer net equity claims, the Trustee previously issued determinations denying their entitlement to distributions from the customer property pool based on their lack of net equity under the "Net Investment Method"

applied to determine amount of claims solely for purposes of allowance (or disallowance) against the estate at and as of the time of the commencement of the liquidation proceeding.

This action, however, raises an entirely distinct issue and statute, involving the parameters of the Trustee's avoidance powers. If the Trustee cannot reach and set aside an obligation – either statutorily (based on the absence of any statutory authorization to prosecute the claim) or temporally (based on the application of, for example, a safe harbor or a reach back restriction) – then the Trustee cannot avoid the obligation at all, and the parties will be left to their relative rights respecting the obligation.

Even if SIPA permitted the avoidance of obligations – which it does not – the Trustee lacks any legal basis to avoid or disregard obligations that were incurred beyond the statutory reach-back period. The Trustee's only response is that he "is seeking to avoid obligations in the same manner as he seeks to avoid transfers. . . ." Trustee Br. at __. This reasoning, however, Trustee fails to address Defendants' argument in any substantive manner, for an obvious reason: as with the avoidance of transfers made to innocent customers before the reach-back period, there is no legal basis for the Trustee to avoid obligations that were incurred beyond any such reach-back period.

Because obligations – whatever they may prove to be on the merits – cannot be avoided by the Trustee, they are entitled to the legal treatment and status to which they are entitled under applicable non-bankruptcy law prevailing at the time of the transfers.

## II.    THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS MUST BE DISMISSED

### A.  The Subsequent Transfer Claims Are Not Pled With Sufficient Factual Detail

The Trustee relies too heavily on the proposition that a trustee is entitled to some leeway in pleading claims for fraudulent transfers or conveyances. The concession to trustees comes with a limitation--"relaxing the particularity requirement in bankruptcy cases should not be construed to eliminate that requirement altogether." *Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 311 (Bankr. S.D.N.Y. 1999) (citation omitted). If, for example, the trustee alleges facts based

upon "information and belief" as he does here, the Trustee must allege facts on which allegations made upon information and belief are based.[1]    Group pleading is generally prohibited because individuals are entitled to know what the claims against that individual are. *Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*, 452 B.R. 467, 477 (Bankr. S.D.N.Y. 2011); *Zazzali v. Wavetronix LLC (In re DBSI, Inc.),* 445 B.R. 351, 354 (Bankr. D. Del. 2011)(complaint against individuals dismissed for failure to identify the transfers to the individuals).    The Trustee's claims against subsequent transferees must be dismissed because they lack the required specificity.

### 1.    The Trustee's Claims Against Subsequent Transferees Lack Sufficient Detail

In his response to the Defendants' motion to dismiss claims against alleged subsequent transferees, the Trustee completely ignores Defendants' citation to *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC),* 458 B.R. 87 (Bankr. S.D.N.Y. 2011) ("Madoff Family Action"), a case that is directly analogous to the present actions.    In the Madoff Family Action, Judge Lifland dismissed subsequent transfer claims that were virtually identical to the Trustee's subsequent transfer claims against Defendants, holding that the Trustee's claims "fail[] to provide even a modicum of specificity with respect to the Subsequent Transfers …".    *Id.* at 120.

Rather than address the Madoff Family Action (the more analogous case), the Trustee relies on *Picard v. Merkin*, 440 B.R. 243,269 (Bankr. S.D.N.Y. 2010) and *Picard v. Chais*, 445 B.R. 206, 235 (Bankr. S.D.N.Y. 2011) because in those cases, the Trustee's subsequent transfer claims were upheld.    See Tr. Br. at 35.    But the deficiencies of the subsequent transfer claims asserted against Defendants are highlighted when contrasted against the claims in *Merkin* and *Chais*.    In both *Merkin* and *Chais,* the Trustee alleged that the feeder funds' own offering memoranda contained statements establishing that the Merkin Defendants and the Chais Defendants had received subsequent transfers in the form of commissions and fees.    *See Merkin*, 440 B.R. at 269-70 (describing detailed

---

[1] The Trustee typically alleges: "On information and belief, some or all of the Transfers were subsequently transferred by Defendants to Subsequent Transferee Defendants (collectively, the "Subsequent Transfers")."   See *Picard v. Eugene J. Ribakoff,  2006 Trus, et. al.* (Adv. Pro. No. 11 cv-07644 (SMB)) ¶46.

allegations concerning subsequent transfers "in the form of payment of commissions or fees" in "predetermined amounts, as described in the Funds' Offering Memoranda"); *Chais*, 445 B.R. at 236 ("The Complaint then provides that 'some or all of the[se] transfers were subsequently transferred to Defendant Chais and/or other Defendants in the form of payment of commissions or fees . . . .'"). The Court held that those offering memoranda provided a plausible factual basis for the Trustee's allegations that subsequent transfers did, in fact, take place. *Merkin*, 440 B.R. at 269-70; *Chais*, 445 B.R. at 236.

In contrast to *Merkin* and *Chais,* Judge Lifland disposed of the claims in the *Madoff Family Action* that are virtually identical to the claims against the subsequent transferees in the Defendants' actions as follows:

> Here, the Complaint merely alleges that "[o]n information and belief, some or all of the transfers were subsequently transferred by one or more [of the Defendants] to another Family Defendant, either directly or indirectly" without providing any sort of estimate of the amount of the purported Subsequent Transfer, or when or how such Transfer occurred. Compl. ¶ 167. While the Complaint's failure to indicate specific amounts does not in and of itself warrant dismissal of the Subsequent Transfer claims, K.E.R.U. Realty Corp., 379 B.R. at 30-31 (finding a subsequent transfer claim adequately pled where the complaint stated, "at least tens of millions of dollars were fraudulently diverted from [debtor] to [initial transferees] . . . [and] a portion of these fraudulently diverted funds was transferred from the [initial transferees] to, or for the benefit of, the [subsequent transferees]"), its failure to provide even a modicum of specificity with respect to the Subsequent Transfers so as to put the Defendants on notice as to which ones the Trustee seeks to recover does so warrant.

*Madoff Family Action*, 458 B.R. at 120.

> **2.    Alleged Personal, Familial Or Business Relationships Between Initial Transferees and Subsequent Transferee Defendants Do Not Provide A Sufficient Basis To Allege That Defendants Received Subsequent Transfers**

The Trustee argues that his subsequent transfers claims should be sustained, despite their lack of factual detail, because "the actions here do not involve complex transactions with a tangled web of individuals and/or entities, and/or multiple BLMIS accounts.  Instead, these are clear-cut avoidance actions that involve initial transfers to a BLMIS account opened in the name of an individual, family trust, joint tenancy, or a retirement plan, from which, in numerous instances, subsequent transfers were then made to family members and friends."  Tr. Br. at 36.

However, the Madoff Family Action did not involve "complex transactions" with a "tangled web" of participants either.   That action involved allegations of ordinary subsequent transfers between Madoff family members.   Yet, the Trustee's subsequent transfer claims in the Madoff Family Action were dismissed because of inadequate pleading.   Accordingly, the Trustee cannot attempt avoid its pleading allegations here by casting the relationships between the alleged initial transferees and purported subsequent transferees as non-complex.

The Trustee's claims here are also indistinguishable from those in *Court-Appointed Receiver of Lancer Offshore, Inc. v. The Citgo Group Ltd*, Case No. 05-60055, 2011 U.S. Dist. LEXIS 34256 (S.D. Fla. Mar. 30, 2011) ("*Lancer*").   In that case, the receiver was aware of an existing business relationship between the initial transferees and the subsequent transferee defendant and, based solely on that relationship, the receiver made the conclusory allegation that the defendant received subsequent transfers.   *Id.* at *4-5.   The receiver also failed to plead any details of the alleged transfers, admitting that he could not "pinpoint dates and amounts of subsequent transfers"; however, the receiver argued that he should be allowed to conduct discovery to obtain the facts to support his claims because those facts were within the defendants' exclusive knowledge and control.   *Id.*

The *Lancer* court rejected the receiver's arguments and dismissed the subsequent transfer claim, finding that the mere existence of a pre-existing relationship between entities is not a sufficient basis upon which to allege that subsequent transfers took place.   *Id.*   ("These arguments improperly seek to circumvent the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).").   The court dismissed the subsequent transfer claim on the ground that the receiver had not established a plausible basis for his claim, and ruled that the receiver should not be permitted to engage in discovery to find out if the claim in fact exists.   *Id.* (citing *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*, No. 00-06410-CIV-MARRA, 2008 U.S. Dist. LEXIS 42492 (S.D. Fla. May 29, 2008) for the proposition that if the receiver's claim was allowed to proceed, "the Court would be impermissibly allowing Plaintiffs to pursue discovery to find out if a fraudulent transfer claim exists.").

Accordingly, the Trustee's awareness of purported personal, familial or business relationships between alleged initial transferees and Subsequent Transferee Defendants does not provide a sufficient factual predicate for his subsequent transfer claims.

### B.  The Trustee Must Plead Adequate Claims Before He Is Permitted To Obtain Discovery

The Trustee also argues that he can be excused from the pleading requirements because his access to information about subsequent transfers is limited at this stage of the litigation, and he needs to take discovery to obtain facts relevant to his claims.  Tr. Br. at 36.  However, although the Trustee's pre-discovery access to information about alleged subsequent transfers was similarly limited in the *Madoff* Family Action, that limitation did not save the Trustee's wholly unsupported claims from dismissal in that case, and it should not do so in the present Actions.  *See Madoff Family Action*, 458 B.R. at 120 (the complaint's "failure to provide even a modicum of specificity with respect to the Subsequent Transfers so as to put Defendants on notice as to which ones the Trustee seeks to recover" warranted dismissal).

Moreover, the Trustee's argument puts the proverbial cart before the horse.  Pleading is not a "fishing expedition" where a plaintiff can make speculative and unsupported factual allegations with the hope that discovery will ultimately provide the factual basis for those allegations.  Instead, a plaintiff must adequately plead a claim before obtaining discovery, not the other way around.  *See, e.g.*, *Iqbal*, 556 U.S. at 678-79 (holding that "the doors of discovery" are locked for a plaintiff "armed with nothing more than conclusions"); *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) ("The purpose of pretrial discovery is not to allow a plaintiff to rummage about in search of a hitherto unexplicated cause of action.").[2]

### 1.    The Trustee's Attempt to Convert Subsequent Transferees Into Initial Transferees Should Be Rejected

---

[2] The Trustee makes the same argument in support of avoiding time barred and unspecified transactions in connection with inter account transfers.  The excuses are similarly unavailing there.

In the *Dreier* case,  the Court held that "[i]n order to establish liability for a transferee for whose benefit the transfer was made, '[t]he benefit must be 'direct, ascertainable and quantifiable' and must correspond to, or be commensurate with, the value of the property that was transferred,'" and held that "[i]ncidental, unquantifiable, or remote' allegations of benefit are not sufficient."  452 B.R. at 467 (citing *In re Enron Creditors Recovery Corp.*, 407 B.R. 17, 33 (Bankr. S.D.N.Y. 2009)).

Here, the Trustee's Complaints do not contain any factual allegations about how the Subsequent Transferee Defendants might have benefited from the transfers at issue, much less any "direct, ascertainable and quantifiable" benefits that they received.

In their opening briefs, Defendants argued that the Trustee failed to allege any facts supporting his claims that certain initial transfers were made for the benefit of the Subsequent Transferees.  Remarkably, in his opposition, the Trustee does not even attempt to identify any factual support those allegations.  Instead, the Trustee argues that "[i]f, during litigation, it is determined that the initial fraudulent transfers were actually 'for the benefit of' the defendants identified as subsequent transferees, only then would such defendants be liable equally with an initial transferee …".  Tr. Br.. at 37.  In doing so, the Trustee essentially concedes that his claims lack any supporting factual basis; still, he asks the Court to nonetheless allow those claims to go forward so that he may find some supporting basis for them "during litigation" (i.e., in fact discovery).

In *Lancer*, after dismissing the receiver's subsequent transfer claim as inadequately alleged, the court also rejected the receiver's claim under Section 550(a)(1) that the defendant was liable as the "party for whose benefit" the transfers at issue were made.  *Lancer,* 2011 U.S. Dist. LEXIS 342156, at *5-8.  The *Lancer* court found that like the subsequent transfer claim, the receiver's alternative pleading was made "without [] any supporting factual allegations" (*Id.*, 2011 U.S. Dist. LEXIS 34256, at *5), and rejected the receiver's argument that his claims should be permitted to go forward:

> As with his subsequent transferee theory, the Receiver contends that he should be permitted to take discovery before being required to set forth any factual basis for his legal conclusion that CGL was the entity for whose benefit the transfers were made.  Since the [complaint] does not make any factual allegations that might raise a reasonable expectation that discovery will reveal evidence in support of his

claims, the Court will not allow the Receiver to pursue discovery to find out if a fraudulent transfer claim exists. *Id.*, 2011 U.S. Dist. LEXIS 34256, at *7-8.

The Court here should follow the example set by *Lancer* and should dismiss the Trustee's baseless claims.

The Trustee also argues that his attempt to hold Subsequent Transferees liable under Section 550(a)(1) should be permitted because he "is not precluded from pleading in the alternative." Tr. Br, at 37-38. However, while parties are allowed to "plead in the alternative", parties are not allowed to assert claims that are wholly speculative and lacking in factual detail merely because they are plead "in the alternative"; all claims must have an underlying factual basis that is sufficient to raise them above the speculative level. *See Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## III. THE COURT MUST DISMISS THAT CLAIMS THAT ARE NOT ADEQUATELY PLED.

The Trustee's claims based upon group allegations and undocumented inter account transfers must also be dismissed for failure to meet the pleading requirements.

### A. Claims Against Multiple Defendants Must Identify the Claims Against the Individual.

Some Defendants argued that the Trustee has failed to plead his claims with particularity because his Complaint names multiple defendants with multiple BLMIS accounts, but does not link any defendant to any specific alleged transfers from any specific accounts. In response, the Trustee argues that there is no legal authority for the proposition that "the Trustee must file separate complaints for each and every account held by an individual and/or entity . . . ". Trustee Br. at 30-31.

The Trustee's argument is a "straw man." Defendants do not argue that the Trustee must file a separate complaint for each avoidance action defendant, or that the Trustee must file a separate complaint for each BLMIS account from which recoverable transfers were purportedly made. The Trustee, of course, is free to file complaints which assert claims against more than one defendant, or that seek the recovery of transfers from more than one BLMIS account. However, to the extent that

the Trustee chooses to do so, in order to meet the pleading requirements of the Rules, the Trustee must clearly identify the specific transfers for which each defendant is being sued. The failure to identify the specific transfers for which each defendant is being sued renders it impossible for any individual defendant to understand the claims asserted against her and to prepare a defense to those claims.

Although the Trustee argues that his complaints follow "normal pleading conventions," he does not cite to any rule or case law in support of that assertion. But there is ample case law to the contrary -- i.e., that the Trustee is required to identify, with specificity, the particular transfers that he is seeking to avoid and recover from each defendant. *See, e.g.*, *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *Hill v. Oria (In re Juliet Homes, LP)*, Case No. 07-36424, Chapter 7, Adversary No. 09-03429, 2010 Bankr. LEXIS 4826, at *65 (Bankr. S.D. Tex. Dec. 16, 2010) ("In a case involving multiple defendants, the party asserting the fraud claim must make specific allegations against each defendant."); *Forman v. Salzano (In re Norvergence*, *Inc.),* 405 B.R. 709, 726 (Bankr. D.N.J. 2009) (in a fraudulent transfer action against multiple defendants, Rule 9(b) "requires plaintiffs to differentiate their allegations when suing more than one defendant … and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (citation omitted); [add other cases?]. Because the Trustee's Complaint fails to do so, his Complaint must be dismissed.

### B. The Trustee Cannot Recover From Defendants Based On Inter Account Transfers

The success of Trustee's claims against numerous Defendants depends entirely upon the Trustee's unexplained reduction of transfers from one BLMIS account to another. The Trustee apparently applies his net equity method to claims from another account, identified only by BLMIS account number, and credits the Defendants' accounts with the result. The process is entirely opaque; the calculation is done entirely off stage.

The Lapin Children LLC adversary proceeding provides a straightforward illustration of the lack of critical detail with respect to the inter account transfers (Adv. Pro. No. 11-cv-07624 (SMB)). The account was opened in 2000 with a transfer from another account in the face amount of $1,392,439 for which the Trustee credited the Lapin Children account with little more than $68,000. After all the deposits and withdrawals in the account over the next 8 years, which are set forth in a schedule to the complaint, the account was short using the net equity method by approximately $1,295,000. There is absolutely no information about the prior account in the complaint. It should also be noted that reduction to the prior account took place outside the limitations period and there is no way to know whether the account was in the name of or held by the same Defendant.

The Trustee tries to brush off the fatal lack of detail with promise same excuses he used in the case of Subsequent Transferees--the information will be available in the discovery process and the account transfers are neither extensive or complicated. As stated above, a plaintiff must adequately plead a claim before obtaining discovery, not the other way around. *See*, *e.g.*, *Iqbal*, 556 U.S. at 678-79 (holding that "the doors of discovery" are locked for a plaintiff "armed with nothing more than conclusions"); *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) ("The purpose of pretrial discovery is not to allow a plaintiff to rummage about in search of a hitherto unexplicated cause of action.").

The Trustee also tries to defeat the Defendants' dismissal motion based on the fact that the SIPA rules treat require that he each account as separate accounts by reference to the decision in *In re Bayou Group, LLC*, 396 B.R. 810, 885 (Bankr. S.D.N.Y. 2008). That case, however, involved a rollover by the same defendant from one hedge fund account to its restructured successor within the two year limitation period and there was no allegation that details of the transaction were entirely concealed from the defendant. In addition, the hedge fund transactions were not governed by the SIPA rules. *Bayou* is not applicable here.

IV.    **APPLICABLE NON-BANKRUPTCY LAW PROTECTS TRANSFERS AND DISTRIBUTIONS FROM DEFENDANTS ACCOUNTS AT BLMIS**

The Trustee's claims to recover withdrawals from the Defendants' IRA's, qualified retirement accounts and pension plans and spendthrift trusts must be dismissed because the BLMIS accounts held in these vehicles and the withdrawals therefrom are protected by state law.  Specifically, N.Y. C.P.L.R. section 5205(c)(1) provides an exemption for spendthrift trusts from execution by judgment creditors under New York Law.  Sections 5205(c)(2) and (3) expands the trust protection to "all trusts, custodial accounts, annuities, insurance contracts, monies assets or interests established as part of, and all payments from, either a Keogh (HR-10), retirement or other plan established by a corporation which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, or created as a result of rollovers from such plans pursuant to sections 402(a)(5), 403(a)(4) or 408(d)(3) of the Internal Revenue Code of 1986, as amended."

The Trustee does not dispute that Defendants Sidney Cole (Adv. Pro No.10-04332(SMB)), Harold J. Hein (Adv. Pro. No.10-05085 (SMB) ), Stanley T. Miller (Adv. Pro. No. 10-04925 (SMB)), David Markin (Adv. Pro.No.10-05224(SMB)) and Neil Reger (Adv. Pro. No. 10-05384 (SMB)) held BLMIS accounts that qualify for the protection of New York law.  Rather, the Trustee bases his right to recover their withdrawals from the accounts (and his opposition to the Dismissal Motions) on a footnote to the *Greiff* decision, in which District Judge Rakoff observed that the defendants could not avail themselves of the protection under C.P.L.R. 5205(c)(2) because the statute "specifically provides that the exemption does not apply to 'additions to' the trust that are 'fraudulent conveyances.'"  *Greiff*, 476 B.R. at 728 n.13.

However, the express limitation of C.P.L.R. 5205(c)(5), relied upon by the Trustee and Judge Rakoff, by its terms, applies only to "fraudulent conveyances under article ten of the debtor and creditor law," C.P.L.R. 5205(c)(5).  The Trustee's fraudulent conveyance claims under New York State Debtor Creditor law have now been dismissed pursuant to the section 546(e) decision, leaving only the Trustee's actual fraudulent transfer claim under the Bankruptcy Code.  Accordingly, the exemption on which the Trustee relies is no longer applicable.  Contrary to the Trustee's assertion that the Defendants are taking inconsistent positions with respect to the state statutory provisions, the

Defendants read both the exemption from judgments and the exception to the trust exemption under New York law consistently in accordance with the plain language of the subsections.

Even if the express language of C.P.L.R. 5205(c)(5) can be read to cover the Bankruptcy Code claim, the plain language of the C.P.L.R. 5205(c)(5), excluding only additions to the accounts, supports the Defendants' contention that the exception does not apply to withdrawals from their protected accounts. C.P.L.R. 5205(c)(5) plainly refers only to "additions" to a asset exempt under C.P.L.R. 5205(2): "Additions to an asset described in paragraph two of this subdivision shall not be exempt from application to the satisfaction of a money judgment…" (emphasis added). The cases applying this provision make it clear that the exception is intended to allow a judgment creditor of the account holder to reach assets held in an otherwise protected account when non exempt assets have been deposited into the account by the account holder for the purpose of hindering, delaying or defrauding creditors. *See e.g. Bayerische Hypo-und Vereinsbank AG v DeGiorgio*, 902 N.Y.S.2d 85, 86 (2010)("Defendant's rollover of an exempt employee retirement account maintained in his name with plaintiffs to a new IRA account maintained in his name with a nonparty custodian, although made within 90 days of the interposition of plaintiffs' conversion claims, did not constitute a nonexempt "addition" to the new IRA account within the meaning of C.P.L.R. 5205(c)(5)…." ); *Matter of Gard Entertainment Inc. v Block*, 960 N.Y.S.2d 50 (2012)(transfer of a condominium to a trust after a creditor demand subject to exclusion under section 5205(c)(5) as fraudulent conveyance under NY Debtor Creditor law; *Baker v. David A. Dorfman, P.L.L.C.,* 2000 U.S. Dist. LEXIS 10142,*25-26 (S.D.N.Y. 2000) ("C.P.L.R. 5205(c)(5) exempts IRAs from application to the satisfaction of a judgment except where additions to such accounts are '"made after the date that is ninety days before the interposition of the claim on which such judgment was entered.'" Plaintiff has restrained Dorfman's IRA in the amount of $ 4,107.94. Plaintiff has shown that all deposits to the IRA were made after the complaint in the underlying case was filed.").

Finally, the C.P.L.R. provides an additional protection for the assets covered by C.P.L.R. 5202 under subsection C.P.L.R. 5205(d)(1), which, by its express terms, provides an exemption from

the claims of creditors for both principal and income on the principal received from a protected

retirement account as follows:

> The following personal property is exempt from application to the
> satisfaction of a money judgment, except such part as a court determines to be
> unnecessary for the reasonable requirements of the judgment debtor and his
> dependents:
> 1. ninety percent of the income or other payments from a trust the principal
> of which is exempt under subdivision (c); provided, however, that with respect to
> any income or payments made from trusts, custodial accounts, annuities, insurance
> contracts, monies, assets or interest established as part of an individual retirement
> account plan or as part of a Keogh (HR-10), retirement or other plan described in
> paragraph two of subdivision (c) of this section, the exception in this subdivision for
> such part as a court determines to be unnecessary for the reasonable requirements of
> the judgment debtor and his dependents shall not apply, and the ninety percent
> exclusion of this paragraph shall become a one hundred percent exclusion.

The Trustee deliberately misreads this additional protection. The plain meaning of this

exemption from the claims of creditors is that income from a protected trust or other protected

account or plan is also protected. *See In re Hilsen*, 405 B.R. 49 (Bankr. E.D.N.Y 2009)(income from

an exempt trust is protected under C.P.L.R. 5202(d)(1)). The exception of C.P.L.R. 5205(c)(5) is not

applicable to this subsection.

If equitable considerations determine whether the Trustee's claims against these accounts

should be dismissal, those considerations weigh heavily in favor of dismissal of these complaints.

Under the Internal Revenue Code and other retirement accounts, IRAs are subject to strict tax rules

designed to encourage retirement savings. Except in limited circumstances, an IRA accountholder

must pay a 10% tax penalty on IRA withdrawals made before age 591/2. *See* I.R.C. § 72(t).

However, upon turning age 701/2, a retiree must withdraw mandatory minimum distributions or be

subject to a 50% tax penalty on any amounts that should have been withdrawn. See I.R.C. §§

401(a)(9)(C); 4974(a). These provisions compel retirees to withdraw and use their retirement

savings when they are needed most -- at retirement. The Trustee's attempt to recover mandatory

withdrawals from retirement accounts most dramatically affects the elderly, who have lost what they

thought were their retirement savings based on the BLMIS statements and are now being asked to

give back money they were required to take and have no chance to earn back.

Based on the above, the Trustee's claims against the Defendants from withdrawals from their trusts and qualified pension plans must be dismissed.

## V. THE COURT MUST CONSIDER ANTECEDENT DEBT DEFENSES UNDER BANKRUPTCY CODE SECTION 548(C)

The Trustee argues that Judge Rakoff's October 15, 2013 Antecedent Debt Decision, *SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.)*, 499 B.R. 416 (S.D.N.Y. 2013), and the Second Circuit Net Equity Decision, *In re Bernard L. Madoff Inv. Secs., LLC*, 654 F.3d 229 (2d. Cir. 2011) effectively dispose of Defendants' arguments relating to "antecedent debt" defenses under Bankruptcy Code Section 548(c)[3]. On October 15, 2013, District Judge Rakoff ruled on these issues in connection with motions to dismiss involving 299 actions that named hundreds of other similarly situated innocent transferee defendants. The Trustee took the position that the Defendants were not parties to those proceedings.

The Antecedent Debt Decision specifically rejected the notion that state and federal claims for rescission or damages that BLMIS customers may have had against BLMIS constitute "value" under 548(c) "as against the Madoff Securities customer property estate under SIPA." See *id.* at 422, 430. Although this ruling may bind the Court here concerning this issue, Defendants believe that their arguments are nevertheless properly presented here so that they may preserve any rights to participate in any challenge to the rulings from the Antecedent Debt Decision. The Trustee's citation to the Second Circuit Net Equity Decision, however, is of no moment as that decision involved relates to the claims process in the BLMIS SIPA proceeding. That decision does not address whether Defendants may have defenses under the Bankruptcy Code to the Trustee's claims based on issues relating to antecedent debt.

The Bankruptcy Code provides an affirmative defense to the avoidance of transfers if the defendant took such transfers for "value and in good faith." 11 U.S.C. § 548(c). Value is specifically defined in the bankruptcy code to include the "satisfaction . . . of a present or antecedent

---

[3] The Defendants' motions to dismiss were filed months before the Antecedent Debt Decision was entered.

debt of the debtor." 11 U.S.C. § 548(d)(2)(A). Debt, in turn, is defined as "liability on a claim," and a claim is a "right to payment." See 11 U.S.C. §§ 101(5)(A), (12). The statute does not provide for any equitable exception to the value defense in 11 U.S.C. § 548(c). The District Court nevertheless determined that the scope of this ordinary bankruptcy avoidance defense in a SIPA case is limited by the general proviso in SIPA §6(b) ("[t]o the extent consistent with the provisions of [SIPA]") which the court construed as granting a license to permit policy considerations to overrule the express statutory defense where there is a shortfall in the pool of customer property.

In stark contrast, the Supreme Court has recently -- and unanimously -- declared that a bankruptcy court may not override the express language of the Code based on such notions of equity. *See Law v. Seigel*, 571 U.S. __ (2014) (slip op. at 5-6, 7) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code") (internal quotations omitted); *see also Burrage v. U.S.*, 134 S.Ct. 881, 892 (2014) ("[t]he role of this Court is to apply the statute as written—even if we think some other approach might accor[d] with good policy.") (internal quotation marks and citation omitted) (alteration in original). This subsequent authority has called into serious question the analysis advanced by the Trustee and accepted by the District Court, raising the question of whether the District Court's ruling has now been superseded. See, e.g., *In re Wiggins*, 341 B.R. 506, 512 (M.D.Pa. 2006) (when a circuit court decision "has been 'undermined' by a later decision of the Supreme Court, we are obligated to recognize that the circuit case has been overruled. An implicit overruling is sufficient. So is an inconsistency in the holdings.") (citation omitted); *Frangos v. Doering Equipment Corp.*, 860 F.2d 70, 72 (3d Cir.1988) ("Although a cogent argument could have previously been waged based on past precedent within this circuit, the Supreme Court has recently rendered a decision making the Appellees' position untenable."); *see also Nedds v. Calderon*, 678 F.3d 777, 781 (9th Cir.2012); *U.S. v. Jackson*, 736 F.3d 953, 957 (10th Cir.2013).

Defendants agree with the Trustee that the value defense serves primarily to reduce or eliminate the Trustee's potential recovery and that further argument as to its application to individual cases should await discovery. In view of the Supreme Court's recent decision, this Court should

conclude that the District Court's decision to override the statutory value defense available to avoidance defendants in a SIPA proceeding should be revisited, and that Defendants may submit the question of value to proof and trial in these proceedings.

## VI.   THE TRUSTEE CANNOT RELY UPON THE PONZI SCHEME PRESUMPTION TO PROVE FRAUDULENT INTENT

The Trustee relies upon the Ponzi scheme presumption to establish fraudulent intent with respect to every transfer, to as well as to serve as an excuse for the failure to meet basic pleading requirements.  However, although the Trustee labels the BLMIS operation a "Ponzi scheme" in the first paragraph of every complaint and on or about paragraph 25 in most complaints, he fails to allege sufficient facts in the complaints to establish that BLMIS was, in fact, a Ponzi scheme.  The Trustee ignores the fact that the BLMIS operations do not conform to the essential features of the original Ponzi scheme case, which include:  (1) little or no legitimate underlying business; (2) the promise of exorbitant returns; (3) early scheduled payment of such returns to early (or "top") investors; (4) the need to attract new money in order to pay the exiting top investors; and (5) the scheme's inevitable failure.  *See Cunningham v. Brown*, 265 U.S. 1 (1924) *Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.),* 309 F.3d 1325, 1327 n. 2 (11th Cir. 2002).  *Daly v. Deptula (In re Carrozzella & Richardson*), 286 B.R. 480, 482-84 nn. 2 and 7 (D. Conn. 2002); *Balaber-Strauss v. Lawrence*, 264 B.R. 303, 305-06 (S.D.N.Y. 2001).  As detailed in the motions to dismiss filed by the Defendants, the complaints fail to allege facts establishing the existence of most of the factors listed above and/or the facts of this case that the court may consider, contradict the allegations of a Ponzi scheme.

At its most basic, the term "Ponzi scheme" applies to a scheme where earlier redeeming investors are paid from the investments of more recent investors.  The investors in BLMIS, as evidenced by the complaints and the claims filed in the case, were free to withdraw or deposit funds into their accounts as they wished.  Investors, who withdrew all or part of their funds or only made deposits in their accounts, were both long term and recent investors.  In sum, BLMIS was not operated as a pyramid scheme where early redeeming investors were paid with later investors' money.  The Trustee cannot show that BLMIS was repaying old investors with new investor money.

The trustee's failure to establish this key criterion was also fatal to application of the Ponzi scheme presumption in *Gowan v. Amaranth Advisers L.L.C. (In re Dreier LLP)*, 2014 Bankr. LEXIS 11 (S.D.N.Y. Jan. 3, 2014).

The Trustee dismisses the challenge to the Ponzi scheme label here based on a facts that should carry no legal weight.  The Trustee claims, for example, that "the breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption…." (Tr. BR. AT. 19)  Notoriety is hardly the basis for a significant legal determination. The Trustee also relies on an alleged admission from Bernard Madoff  that he operated a Ponzi scheme. However, like the trustee in the *Amaranth* case, the Trustee has not discussed the elements of the crimes to which Mr. Madoff  pled guilty or explained why the operation of a Ponzi scheme was essential to any of the counts.

Finally, the Trustee relies on a number of decisions emanating from various adversary proceedings where the Trustee's allegations on a motion to dismiss regarding the Ponzi scheme were never challenged.  They are not precedent based on an evidentiary record.  Without the Ponzi presumption, the Trustee's complaints do not meet the pleading requirements.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' motion to dismiss.

Dated: March 17, 2014              Respectfully submitted,
New York, New York

                          DENTONS US LLP

                          By:  /s/ Carole Neville
                          Carole Neville
                          1221 Avenue of the Americas
                          New York, New York 10020
                          Tel:  (212) 768-6700
                          Fax: (212) 768-6800

                          *Attorneys for Defendants Listed on Schedule A*

## SCHEDULE A

| | |
|---|---|
| **Irving H. Picard v. Barry Weisfeld** | **Adv. Pro. No. 10-04332 (SMB)** |
| **Irving H. Picard v. Rose Gindel,** *et al.* | **Adv. Pro. No. 10-04401 (SMB)** |
| **Irving H. Picard v. Barbara J. Berdon** | **Adv. Pro. No. 10-04415 (SMB)** |
| **Irving H. Picard v. Sidney Cole** | **Adv. Pro. No. 10-04672 (SMB)** |
| **Irving H. Picard v. Harold J. Hein** | **Adv. Pro. No. 10-04861 (SMB)** |
| **Irving H. Picard v. Stanley T. Miller** | **Adv. Pro. No. 10-04921 (SMB)** |
| **Irving H. Picard v. Alvin Gindel,** *et al.* | **Adv. Pro. No. 10-04925 (SMB)** |
| **Irving H. Picard v. Stephanie Ribakoff,** *et al.* | **Adv. Pro. No. 10-05085 (SMB)** |
| **Irving H. Picard v. Lapin Children LLC** | **Adv. Pro. No. 10-05209 (SMB)** |
| **Irving H. Picard v. David R. Markin,** *et al.* | **Adv. Pro. No. 10-05224 (SMB)** |
| **Irving H. Picard v. Neil Reger,** *et al.* | **Adv. Pro. No. 10-05384 (SMB)** |
| **Irving H. Picard v. Frederica R. French,** *et al.* | **Adv. Pro. No. 10-05424 (SMB)** |
| **Irving H. Picard v. America-Israel Cultural Foundation, Inc.** | **Adv. Pro. No. 10-05028 (SMB)** |
| **Irving H. Picard v. James Greiff** | **Adv. Pro. No. 10-04357 (SMB)** |

## SCHEDULE B

| Irving H. Picard v. Barry Weisfeld | Adv. Pro. No. 10-04332 (SMB) |
|---|---|
| **Dismiss Obligations Claim** | |
| **Revival of Antecedent Debt Defense** | |
| **Failure to plead fraud with specificity** | |
| | |

| Irving H. Picard v. Rose Gindel, *et al.* | Adv. Pro. No. 10-04401 (SMB) |
|---|---|
| **Dismiss Obligations Claim** | |
| **Revival of Antecedent Debt Defense** | |
| **Failure to plead fraud with specificity** | |
| **Improper combination of account** | |
| **Dismissal of subsequent transferee claims** | |
| **Failure to plead fraud with specificity** | |
| | |

| Irving H. Picard v. Barbara J. Berdon | Adv. Pro. No. 10-04415 (SMB) |
|---|---|
| **Dismiss Obligations Claim** | |
| **Revival of Antecedent Debt Defense** | |
| **Failure to plead fraud with specificity** | |
| **Failure to credit Inter account transfers** | |
| | |

| Irving H. Picard v. Sidney Cole | Adv. Pro. No. 10-04672 (SMB) |
|---|---|
| **Dismiss Obligations Claim** | |
| **Revival of Antecedent Debt Defense** | |
| **Failure to plead fraud with specificity** | |
| **Account withdrawals protected by state law** | |
| | |

| Irving H. Picard v. Harold J. Hein | Adv. Pro. No. 10-04861 (SMB) |
|---|---|
| **Dismiss Obligations Claim** | |
| **Revival of Antecedent Debt Defense** | |
| **Failure to plead fraud with specificity** | |
| **Account withdrawals protected by state law** | |
| | |

| Irving H. Picard v. Stanley T. Miller | Adv. Pro. No. 10-04921 (SMB) |
|---|---|
| **Dismiss Obligations Claim** | |
| **Revival of Antecedent Debt Defense** | |
| **Failure to plead fraud with specificity** | |
| **Account withdrawals protected by state law** | |
| | |

| Irving H. Picard v. Alvin Gindel, *et al.* | Adv. Pro. No. 10-04925 (SMB) |
|---|---|
| **Dismiss Obligations Claim** | |
| **Revival of Antecedent Debt Defense** | |
| **Failure to plead fraud with specificity** | |
| **Failure to credit intercompany transfers** | |
| | |

| Irving H. Picard v. Stephanie Ribakoff, *et al.* | Adv. Pro. No. 10-05085 (SMB) |
|---|---|
| **Dismiss Obligations Claim** | |
| **Revival of Antecedent Debt Defense** | |
| **Failure to plead fraud with specificity** | |
| **Dismissal of subsequent transferee claims** | |
| **Dismissal of claims against multiple defendants** | |
| | |

| Irving H. Picard v. Lapin Children LLC | Adv. Pro. No. 10-05209 (SMB) |
| --- | --- |
| **Dismiss Obligations Claim**<br>**Revival of Antecedent Debt Defense**<br>**Failure to plead fraud with specificity**<br>**Failure to credit inter account transfers** | |
| | |

| Irving H. Picard v. David R. Markin, *et al.* | Adv. Pro. No. 10-05224 (SMB) |
| --- | --- |
| **Dismiss Obligations Claim**<br>**Revival of Antecedent Debt Defense**<br>**Failure to plead fraud with specificity**<br>**Account withdrawals protected by state law**<br>**Dismissal of claims against subsequent transferees**<br>**Failure to credit inter account transfers**<br>**Dismissal of claims against multiple defendants** | |
| | |

| Irving H. Picard v. Neil Reger, *et al.* | Adv. Pro. No. 10-05384 (SMB) |
| --- | --- |
| **Dismiss Obligations Claim**<br>**Revival of Antecedent Debt Defense**<br>**Failure to plead fraud with specificity**<br>**Account withdrawals protected by state law**<br>**Dismissal of subsequent transferee claims** | |
| | |

| Irving H. Picard v. Frederica R. French, *et al.* | Adv. Pro. No. 10-05424 (SMB) |
| --- | --- |
| **Dismiss Obligations Claim**<br>**Revival of Antecedent Debt Defense**<br>**Failure to plead fraud with specificity** | |
| | |

| Irving H. Picard v. America-Israel Cultural Foundation, Inc. | Adv. Pro. No. 10-05028 (SMB) |
|---|---|
| **Revival of Antecedent Debt Defense** <br><br> **Failure to plead fraud with specificity** | |
| | |

| Irving H. Picard v. James Greiff | Adv. Pro. No. 10-04357 (SMB) |
|---|---|
| **Revival of Antecedent Debt Defense** <br><br> **Failure to plead fraud with specificity** | |
| | |