PRYOR CASHMAN LLP
Richard Levy, Jr.
David C. Rose
7 Times Square
New York, New York 10036
Tel:    (212) 421-4100
Fax:    (212) 326-0806
rlevy@pryorcashman.com
drose@pryorcashman.com

*Attorneys for the Pryor Cashman Movants (as defined below)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION                   :
CORPORATION,                                     :        Adv. Pro. No. 08-1789 (SMB)
                                                 :
                    Plaintiff-Applicant,         :        SIPA LIQUIDATION
                                                 :
            - against -                          :        (Substantively Consolidated)
                                                 :
BERNARD L. MADOFF INVESTMENT                     :
SECURITIES LLC,                                  :
                                                 :
                    Defendant.                   :
------------------------------------------------------------x
IRVING H. PICARD, Trustee for the Liquidation    :
of Bernard L. Madoff Investment Securities LLC,  :
                                                 :
                    Plaintiff,                   :        Adv. Pro. Nos. 10-4341 (SMB)
                                                 :                       10-4348 (SMB)
            - against -                          :                       10-4565 (SMB)
                                                 :                       10-4575 (SMB)
VARIOUS DEFENDANTS REPRESENTED                   :                       10-4735 (SMB)
BY PRYOR CASHMAN LLP (SEE CHART                  :                       10-4944 (SMB)
OF MOVING DEFENDANTS IMMEDIATELY                 :                       10-5118 (SMB)
BEHIND COVER),                                   :                       10-5194 (SMB)
                                                 :                       10-5239 (SMB)
                    Defendants.                  :                       10-5397 (SMB)
                                                 :                       10-5439 (SMB)
------------------------------------------------------------x

**OMNIBUS REPLY MEMORANDUM OF THE**
**PRYOR CASHMAN MOVANTS IN FURTHER SUPPORT**
**OF THEIR MOTIONS TO DISMISS THE AMENDED COMPLAINTS**

**MOVING DEFENDANTS REPRESENTED BY PRYOR CASHMAN LLP**

| Adv. Pro. No. | Date Motion to Dismiss Filed | Moving Defendants |
|---|---|---|
| 10-4341 (SMB) | March 22, 2013 | Patrice M. Auld, Iris Zurawin Marden, James P. Marden |
| 10-4348 (SMB) | March 22, 2013 | B&C Marden LLC, a Delaware limited liability company, Bernard A. Marden Revocable Trust, a Florida trust, Charlotte Marden (a/k/a Chris Marden), as trustee and as an individual, Estate of Bernard A. Marden, James P. Marden, as trustee, as personal representative and as an individual, Marden Family Limited Partnership, a Delaware limited partnership, Patrice M. Auld, as trustee, as personal representative and as an individual |
| 10-4565 (SMB) | March 22, 2013 | The Randi Pergament & Bruce Pergament Foundation, Inc. |
| 10-4575 (SMB) | March 22, 2013 | Alvin S. Boslow, Iris C. Boslow, Judy Boslow, Mindy Boslow, Boslow Family Limited Partnership, Lisa Boslow Dorman, Iris Boslow Revocable Living Trust |
| 10-4735 (SMB) | January 17, 2014 | Kara Fishbein Goldman, Steven Goldman |
| 10-4944 (SMB) | January 17, 2014 | Lois Pergament, Robert Pergament (as subsequent transferees) |
| 10-5118 (SMB) | March 22, 2013 | Elizabeth C. Auld, Meghan M. Auld, Patrice M. Auld, Alexandria K. Marden, Charlotte M. Marden, Gabrielle Z. Marden, James P. Marden, Neal J. Nissel, as trustee, O.A., a minor, The Charlotte M. Marden Irrevocable Insurance Trust, a Florida trust |

| | | |
|---|---|---|
| 10-5194 (SMB) | March 22, 2013 | Linda Horowitz Spousal Trust FBO Richard Horowitz, f/k/a Murray Pergament 1999 Trust FBO Linda Horowitz, Murray Pergament 1999 Trust FBO Bruce Pergament |
| | January 17, 2014 | Bruce D. Pergament, Pergament & Pergament Realty LLC |
| 10-5239 (SMB) | March 22, 2013 | Joanne Fried, Robert Fried |
| 10-5397 (SMB) | March 22, 2013 | Bernard A. & Chris Marden Foundation Inc., Oakdale Foundation Inc., The Marden Family Foundation, Inc., The Patrice and Kevin Auld Foundation |
| 10-5439 (SMB) | March 22, 2013 | Avram J. Goldberg, individually and in his capacity as trust officer for The Sidney R. Rabb Trust FBO Carol Goldberg, Carol R. Goldberg, individually and in her capacity as trustee of The Sidney R. Rabb Trust FBO Carol Goldberg, M. Gordon Ehrlich, in his capacity as trustee of The Sidney R. Rabb Trust FBO Carol Goldberg, and as attorney-in-fact for Carol R. Goldberg, Avram J. Goldberg, and the Carol R. Goldberg and Avram J. Goldberg Special Account, Sidney R. Rabb Trust FBO Carol Goldberg, The Avcar Group Ltd. |

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................ 2

I.   THE TRUSTEE FAILS TO STATE A CLAIM TO AVOID OBLIGATIONS
     OWED BY MADOFF SECURITIES TO ITS CUSTOMERS ............................................ 2

     A.   SIPA Does Not Authorize a SIPA Trustee to Avoid Obligations ............................... 2

     B.   The Amended Complaints Fail to Identify Any Obligations to be Avoided .............. 5

     C.   The Trustee's Indirect Attempt To Avoid
          Obligations is Inconsistent with the Law ................................................................... 5

II.  THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS ARE LEGALLY
     DEFECTIVE AND MUST BE DISMISSED .......................................................... 7

     A.   The Subsequent Transfer Claims Are Not Adequately Pleaded .................................. 7

          1.   The Trustee's Subsequent Transfer Claims Are As Defective As
               Similar Claims Dismissed In Other Madoff Adversary Proceedings ................. 7

          2.   Assertions of Personal, Familial Or Business Relationships Between
               Initial and Subsequent Transferees Are Insufficient ........................................... 8

     B.   The Trustee Must Properly Plead Claims Before He May Obtain Discovery ............. 9

     C.   The Trustee's Attempt to Transform Subsequent Transferees Into Initial
          Transferees Should Be Rejected ................................................................................ 12

III. THE TRUSTEE CANNOT RECOVER FROM DEFENDANTS BASED ON
     INTER-ACCOUNT TRANSFERS OR AGGREGATION OF CUSTOMER
     ACCOUNTS ................................................................................................. 13

     A.   Improper Treatment and Insufficient Pleading of Inter-Account Transfers .............. 13

     B..  Improper Aggregation of Customer Accounts and Account History ......................... 14

IV.  DEFENDANTS HAVE VIABLE ANTECEDENT DEBT DEFENSES UNDER
     SECTION 548(c) THAT DEFEAT OR REDUCE THE TRUSTEE'S CLAIMS .............. 16

V.   APPLICABLE NON-BANKRUPTCY LAW PROTECTS CERTAIN TRUST
     AND IRA DISTRIBUTIONS FROM DEFENDANTS CUSTOMER ACCOUNTS ......... 18

VI.    THE PERGAMENT DEFENDANTS ARE ENTITLED TO
        COMPENSATION FOR HAVING BEEN REQUIRED BY
        THE TRUSTEE TO FILE NEEDLESS COURT PAPERS ................................................. 20

CONCLUSION .......................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................. 11, 13

*Baker v. David A. Dorfman, P.L.L.C.,*
2000 U.S. Dist. LEXIS 10142 (S.D.N.Y. 2000) ................................................ 19

*Bayerische Hypo-und Vereinsbank AG v DeGiorgio,* 902 N.Y.S.2d 85 (N.Y. Sup. Ct.
App. Div. 1st Dep't 2010)........................................................................... 19

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.*
*(In re Bayou Group, LLC),*
396 B.R. 810 (Bankr. S.D.N.Y. 2008). ........................................................... 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................ 7, 13

*Burrage v. United States,*
134 S. Ct. 881, 892 (U.S. 2014)..................................................................... 17

*Caminetti v. United States,*
242 U.S. 470 (1917)................................................................................... 17

*Carcieri v. Salazar,*
555 U.S. 379, 387 (2009) ............................................................................ 17

*Colby v. J.C. Penney Co.,*
811 F. 2d 1119 (7th Cir. 1987) .................................................................... 18

*Connecticut Nat'l Bank v. Germain,*
503 U.S. 249 (1992) .................................................................................... 4

*Court-Appointed Receiver of Lancer Offshore, Inc. v. Citgo Group Ltd,*
2011 U.S. Dist. LEXIS 34256 (S.D. Fla. Mar. 30, 2011)....................................... 10, 11, 13

*Dodd v. United States,*
545 U.S. 353 (2005).................................................................................... 17

*Enron Creds. Recovery Corp. v. J.P. Morgan Secs., Inc.(In re Enron*
*Creds. Recovery Corp.),*
407 B.R. 17 (Bankr. S.D.N.Y. 2009) ............................................................... 12

*Fannie Mae v. Olympia Mortg. Corp.,*
2006 WL 2802093 (E.D.N.Y. Sept. 28, 2006). .................................................... 5

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
　　353 U.S. 222 (1957)................................................................................................ 3

*Frangos v. Doering Equip. Corp.*,
　　860 F.2d 70 (3d Cir. 1988) .................................................................................... 18

*Gard Enter. Inc. v. Block*,
　　960 N.Y.S.2d 50 (N.Y. Sup. Ct. N.Y. Cty. 2012)................................................. 19

*Geltzer v. Barish (In re Starr)*,
　　502 B.R. 760 (Bankr. S.D.N.Y. 2014)................................................................... 12

*Geltzer v. Mooney (In re MacMenamin's Grill Ltd.)*,
　　450 B.R. 414 (Bankr. S.D.N.Y. 2011) ................................................................ 3, 6

*Gowan v. Amaranth LLC (In re Dreier LLP)*,
　　452 B.R. 451 (Bankr. S.D.N.Y. 2011)................................................................ 9, 12

*Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*,
　　452 B.R. 467 (Bankr. S.D.N.Y. 2011)..................................................................... 9

*Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc.*,
　　530 U.S. 238 (2000).............................................................................................. 17

*In re Bernard L. Madoff Inv. Secs. LLC*,
　　654 F.3d 229 (2d. Cir. 2011), *cert. denied*, 133 S. Ct. 24 & 25 (2013)............................ 16

*In re Hilsen*,
　　405 B.R. 49 (Bankr. E.D.N.Y 2009)...................................................................... 19

*In re Wiggins*,
　　341 B.R. 506 (M.D. Pa. 2006) .............................................................................. 18

*Lamie v. United States Trustee*,
　　540 U.S. 526, 537 (2004)......................................................................................... 4

*Law v. Siegel*,
　　___ U.S. ___, 2014 U.S. LEXIS 1784 (Mar. 4, 2014) ................................... 5, 17

*Lutz v. Chitwood (In re Donahue Secs., Inc.)*,
　　304 B.R. 797 (Bankr. S.D. Ohio 2003).................................................................... 4

*Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*,
　　740 F.3d 81 (2d Cir. 2014) ...................................................................................... 4

*McCloskey v. Mueller*,
　　446 F.3d 262 (1st Cir. 2006).................................................................................. 11

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992)................................................................................................ 3

*Picard v. Chais,*
    445 B.R. 206 (Bankr. S.D.N.Y. 2011).................................................................. 8

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC),*
    721 F.3d 54 (2013), *petition for cert. filed,* No. 13-448 (U.S. Oct. 9, 2013)...................... 5

*Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC),*
    458 B.R. 87 (Bankr. S.D.N.Y. 2011)......................................................*Passim*

*Picard v. Merkin,*
    440 B.R. 243 (Bankr. S.D.N.Y. 2010)................................................................ 8

*SIPC v. Bernard L. Madoff Inv. Secs. LLP (In re Madoff Secs.),*
    499 B.R. 416 (S.D.N.Y. 2013)...............................................................*Passim*

*SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.),*
    501 B.R. 26 (S.D.N.Y. 2013) .............................................................. 11

*SIPC v. Bernard L. Madoff Inv. Secs. LLC (Picard v. Greiff),*
    476 B.R. 715 (S.D.N.Y. 2012), *appeal pending on other grounds*
    *sub nom. In re Madoff Secs.*, No. 12-2557(L) (2d Cir.). ............................ 1, 19

*Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*
    2008 U.S. Dist. LEXIS 42492 (S.D. Fla. May 29, 2008) ................................. 11

*United States* v. *Ron Pair Enters., Inc.,*
    489 U. S. 235 (1989)................................................................................ 4, 17

STATUTES & RULES

11 U.S.C. § 544(b)(1) ...........................................................................*Passim*
11 U.S.C. § 548(a)(1)............................................................................*Passim*
11 U.S.C. § 548(c) ...............................................................................*Passim*

15 U.S.C. § 78fff(b) .............................................................................*Passim*
15 U.S.C. § 78fff-1 ..............................................................................*Passim*
15 U.S.C. § 78fff-2(c)(3)) ......................................................................*Passim*

26 U.S.C. § 72(t) ..................................................................................... 20
26 U.S.C. § 401(a)(9)(C) .......................................................................... 20
26 U.S.C. § 4974(a) ................................................................................ 20

17 C.F.R. §§ 100 *et seq.*............................................................................ *15*

N.Y. C.P.L.R. § 5205(c)(1) ................................................................................. 19
N.Y. C.P.L.R. § 5205(c)(2) ................................................................................. 18
N.Y. C.P.L.R. § 5205(c)(3) ................................................................................. 18
N.Y. C.P.L.R. § 5205(c)(5) ................................................................................. 19
N.Y. C.P.L.R. § 5205(d)(1)) ............................................................................... 19


**OTHER AUTHORITIES**

5 COLLIER ON BANKRUPTCY § 548.11[1][a][ii]
        (16th rev. ed. 2014) ..................................................................................... 5

*Individual Retirement Arrangements*, IRS Pub. 590 (2010)
        (available at http://www.irs.gov/pub/irs-pdf/p590.pdf) .................................... 20

## PRELIMINARY STATEMENT

This memorandum is submitted in further support of the motions to dismiss the Trustee's amended complaints against certain defendants represented by Pryor Cashman LLP (collectively, the "Pryor Cashman Movants" or "Defendants").  In addition to the arguments below, the Pryor Cashman Movants join in the arguments raised by other movants that further inform the issues addressed here, and also join, in particular, in arguments by defendants represented by Milberg LLP and Dentons (USA) LLP.[1]

These lawsuits comprise a small part of the hundreds of virtually identical actions commenced by the Trustee against innocent customers of Madoff Securities.[2]  As a result of the District Court's decision in *Greiff* to apply the Section 546(e) safe harbor to the instant actions (which were then returned to the Bankruptcy Court where these motions were filed), the Trustee's only remaining avoidance claims are (i) those under Section 548(a)(1)(A) of the Bankruptcy Code, to avoid actual fraudulent transfers made during the two-year federal "reach back" period, (ii) those to avoid subsequent transfer claims under Section 550(a)(2), and (iii) those to avoid obligations incurred.  *See SIPC v. Bernard L. Madoff Inv. Secs. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) (hereinafter, "*Greiff*"), *appeal pending on other grounds sub nom. In re Madoff Secs.*, No. 12-2557(L) (2d Cir.). These motions challenge the sufficiency of the remaining claims based on substantive and procedural defects in the Trustee's pleading, as matters of substantive and procedural law.  Defendants specifically address the

---

[1]    The motions to dismiss filed in the relevant adversary proceedings do not all raise the same issues.  The arguments presented in this Omnibus Reply apply only to those Pryor Cashman Movants that raised the particular issue(s) in their respective motions.  In Appendix C to the Trustee's Omnibus Opposition, the Trustee indicates that certain of the Pryor Cashman Movants argued in their motions that the Trustee failed to adequately plead fraudulent intent.  *See* Omnibus Opposition at 20-22.  This is incorrect.  Although the Defendants do not concede that the Trustee adequately pleads fraud (and join, for example, in contentions by Dentons (US) LLP's and Milberg LLP's clients that the complaints fail to plead fraud, and fail to identify transfers targeted by the claims), they reserve the right to assert as may be appropriate at later times that the Trustee does not adequately plead or prove fraud.

[2]    Unless otherwise indicated, capitalized terms have the meanings given in the Pryor Cashman Movants' motions.

Trustee's faulty attempts to avoid dismissal of the counts seeking to avoid obligations, the vague claims against subsequent transferees, claims that fail to meet minimal but mandatory pleading requirements, and other defects involving smaller subsets of the Pryor Cashman Movants.

## ARGUMENT

## I.    THE TRUSTEE FAILS TO STATE A CLAIM TO AVOID OBLIGATIONS OWED BY MADOFF SECURITIES TO ITS CUSTOMERS

As detailed in Defendants' motions, Section 8(c)(3) of SIPA (15 U.S.C. § 78fff-2(c)(3)) conspicuously omits from the Trustee's specific avoidance power *any* mention of "obligations incurred," instead limiting him to the avoidance of "transfers" to the extent permitted under the Bankruptcy Code.  The Trustee provides no basis for the Court to read SIPA to reach obligations.

### A.    SIPA Does Not Authorize a SIPA Trustee to Avoid Obligations

The Trustee relies on the general provisions in Sections 6 and 7 of SIPA (15 U.S.C. §§ 78fff-1 and 78fff(b)) of SIPA as the sources of a power to avoid "obligations incurred" by the debtor.  (Tr. Br. 31-33.)  Neither statute grants such authority to the Trustee.[3]  These general provisions of SIPA confer upon the Trustee the general powers of a bankruptcy trustee and borrow certain provisions from chapters 1, 3 and 5 the Bankruptcy Code for purposes of administering a SIPA liquidation case.  Neither statute provides for any specific power to avoid obligations.  Indeed, only Section 8(c)(3) of SIPA speaks to the Trustee's specific power of avoidance.  It borrows only the Bankruptcy Code's power to avoid "transfers," and then only *to the extent* that transfers are *void or voidable under Title 11* – wholly omitting the word "obligations" that appears in Sections 548(a)(1) and 544(b)(1) of the Bankruptcy Code.

---

[3]    The District Court did not address the Defendant's challenge to the Trustee's "obligations" claims in *Greiff.* 476 B.R. at 728 n.12.  To Defendants' knowledge, this statutory construction question has not been addressed squarely by any other Madoff-related ruling.  SIPC incorrectly asserts (SIPC Br. 3 n.2) that the District Court rejected the obligations argument in the antecedent debt decision, *SIPC v. Bernard L. Madoff Inv. Secs. LLP (In re Madoff Secs.)*, 499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*").  But that decision did not determine if the Trustee has a statutory power to avoid obligations.  Rather, the Court ruled only that broker did not owe obligations as antecedent debts based on customers' account statements.  *Id.* at 421 n.4.  The issues are distinct.

*Compare* 15 U.S.C. § 78fff-2(c)(3) *with* 11 U.S.C. §§ 548(a)(1), 544(b)(1).  Thus, although the Bankruptcy Code expressly permits bankruptcy trustees to avoid "obligations," *e.g.*, 11 U.S.C. § 548(a)(1), SIPA expressly limits a SIPA trustee to recover only *transfers of property*.  15 U.S.C. § 78fff-2(c)(3).  *Cf. Geltzer v. Mooney (In re MacMenamin's Grill Ltd.)*, 450 B.R. 414, 428-29, 430 (Bankr. S.D.N.Y. 2011) (by using only the word "transfers" in the application of its safe harbor, Section 546(e) of the Bankruptcy Code distinguishes between transfers and obligations; "It is clearly proper to presume that section 546(e) does not implicitly adopt a definition of "transfer" that somehow includes "incurrence of an obligation.").

Surprisingly, the Trustee asserts that Section 8(c)(3) of SIPA "explicitly incorporates the Bankruptcy Code, thereby *authorizing the Trustee to avoid **any obligations incurred** under sections 544 and 548 of the Code.*"  (Trustee Br. at 31-32 (italics and emphasis added).)  But the Trustee conveniently ignores the express confinement of his power under SIPA to the avoidance of "transfers" "to the extent void or voidable under Title 11."  His faulty premise disregards the express statutory text of Section 8(c)(3) and, in particular, the effect of the absence of any reference to "obligations" in SIPA's specific avoidance provision, especially when compared to the avoidance provisions of the Bankruptcy Code.

In this regard, Congress' unambiguous phraseology is dispositive.  The general provision providing for SIPA liquidations to be administered in accordance with various parts of the Bankruptcy Code, to the extent they are consistent with SIPA, yields to the specific SIPA provision that unqualifiedly borrows the Bankruptcy Code's power to avoid transfers without caveat or exclusion.  *See* SIPA § 8(c)(3).  *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228 (1957) ("However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment.") (citations and quotations omitted); *accord, Morales v. Trans World Airlines, Inc.*, 504 U.S. 374,

384-85 (1992) ("it is a commonplace of statutory construction that the specific governs the general").[4]

Accordingly, there is no basis for this Court to expand the Trustee's powers by implying the word "obligations" into SIPA's special avoidance provision. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (citing *United States* v. *Ron Pair Enters., Inc.,* 489 U. S. 235, 241-42 (1989)); *Lamie v. United States Trustee*, 540 U.S. 526, 537, 538 (2004) (courts should not add "absent words" to a statute, especially where there is a "plain, nonabsurd reading in view")).[5]

Finally, although the Trustee clearly believes (and argues) that, as a matter of equity, his goal of maximizing avoidance recoveries justifies the expansion of his powers as far as possible – even pushing the apparent statutory limits of his authority beyond the express words of SIPA – that rationale does not yield his desired result as a matter of controlling principles. Equity does not give the Trustee or the Court a basis to rewrite language deliberately chosen by Congress. In an analogous context in the *Madoff Securities* case – consistent with thrust of recent Supreme

---

[4]    Although SIPA borrows general provisions of the Bankruptcy Code to the extent they are "consistent" with SIPA (15 U.S.C. § 78fff(b)), Section 8(c)(3) specifically delineates the bounds of the Trustee's avoidance power. By using the phrase "to the extent void or voidable under Title 11," the statute borrows the bankruptcy avoidance power – with respect to transfers only – as it exists under Title 11 and as it is limited by Title 11. Because SIPA itself limits the Trustee's avoidance power, there is no conflict or inconsistency between the statutes that rescues the Trustee's contentions. *See Lutz v. Chitwood (In re Donahue Secs., Inc.),* 304 B.R. 797, 798-99 (Bankr. S.D. Ohio 2003) ("it is not inconsistent with SIPA to hold that a SIPA trustee is vested with the same rights as a bankruptcy trustee under §541(a) [of the Bankruptcy Code] where SIPA itself expressly dictates the same under §78fff-1(a).").

[5]    The Trustee cites a footnote from the recent decision of the Second Circuit in *Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC),* 740 F.3d 81, 88 n.8 (2d Cir. 2014), for the proposition that the Trustee may reach obligations because his avoidance powers are completely "coextensive" with those of a bankruptcy trustee. (Tr. Br. 32.) The *Marshall* case has no bearing on the pending motions. *Marshall* involved an action by the Trustee to enjoin certain customers' state law tort actions, which were found to be derivative of the Trustee's avoidance claims. The case did not involve the adjudication of avoidance claims, and did not address the specific statutory construction issue posed here which, on its face, defeats the Trustee's assertion that he holds any express power to avoid obligations. A simple comparison of the provisions of Section 548 of the Bankruptcy Code, which reach transfers *and* obligations, with Section 8(c)(3) of SIPA demonstrates that the statutes do not coincide, given that the avoidance power enunciated in Section 8(c)(3) reaches only transfers.

Court jurisprudence that counsels a strict interpretation of statutes – the Second Circuit instructively put to rest any notion that principles of equity permit courts to trump statutory text:

> Picard argues under principles of equity that unless he can spearhead the litigation on behalf of defrauded customers, the victims will not be made whole, SIPC will be unable to recoup its advances, and third-party tortfeasors will reap windfalls. No doubt, there are advantages to the course Picard wants to follow. But equity has its limits; it may fill certain gaps in a statute, but it should not be used to enlarge substantive rights and powers.

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC)*, 721 F.3d 54, 76 (2013) (footnote omitted), *petition for cert. filed,* No. 13-448 (U.S. Oct. 9, 2013). *See also Law v. Siegel*, ___ U.S. ___, 2014 U.S. LEXIS 1784, at *10-11 (Mar. 4, 2014) (in exercising statutory and inherent powers, bankruptcy courts may not contravene specific statutory powers).

## B.    The Amended Complaints Fail to Identify Any Obligations to be Avoided

The Trustee provides no meaningful response to Defendants' argument that the complaints fail to identify any particular fraudulent obligations to be avoided. Despite his contention that the "[c]omplaints adequately plead ... the obligations incurred by Madoff Securities," neither the Trustee's brief nor the Amended Complaints provide any information about the identity or nature of those obligations. (Tr. Br. 31.) In fact, the Amended Complaints only assert vaguely that "[t]o the extent BLMIS or Madoff incurred obligations" to Defendants, "such obligations ... are avoidable ...." *E.g., Picard v. Goldman,* Am. Compl. ¶ 37 (Exh. 1 to Rose Decl. supporting the *Goldman* motion). Because Defendants cannot ascertain the obligations targeted by the Trustee or what defenses may apply, the claims must be dismissed as insufficiently pleaded. *See* 5 COLLIER ON BANKRUPTCY § 548.11[1][a][ii] (16th rev. ed. 2014); *Fannie Mae v. Olympia Mortg. Corp.,* 2006 WL 2802093, at *9 (E.D.N.Y. Sept. 28, 2006).

## C.    The Trustee's Indirect Attempt To Avoid Obligations is Inconsistent with the Law

In response to Defendants' contention that the Trustee cannot avoid Madoff Securities'

obligations to its customers that arose, for example, under or as matters of federal securities statutes and state law, the Trustee, invoking the *Antecedent Debt Decision,* argues that the Defendants cannot rely on such law to "increase the amount to which a customer is entitled from the customer property estate." Tr. Br. 33 (quoting *Antecedent Debt Decision,* 499 B.R. at 426).  By focusing on net equity claimants, however, the Trustee presents a *non sequitur* and blurs the real issue:  Are obligations owed by a broker to its customers *at the time of their account withdrawals and payments* subject to avoidance at all, *i.e.*, does the Trustee have any basis in law to maintain claims to avoid obligations then or thereafter owed to the customers?

This action involves no questions concerning amounts that the Defendants would be entitled to recover *from* Madoff Securities' estate as net equity claims under SIPA.  Indeed, to the extent that any of them timely submitted net equity claims, the Trustee previously determined that they lacked a right to receive compensation from the customer property pool based on their lack of net equity under his "Net Investment Method."  That exercise, however, determined only the amount of claims solely for purposes of allowance (or disallowance) against the estate *at and as of the time of the commencement of the liquidation proceeding.* This action, in contrast, raises the entirely distinct issue of the parameters of, and the Defendants' defenses to, the Trustee's avoidance power.  If the Trustee cannot reach and set aside an obligation – either statutorily (based on the lack of statutory authorization to pursue the claim) or temporally (based on, for example, a safe harbor or reach back restriction) – then the Trustee cannot avoid the obligation at all, and the parties will be left to their relative non-bankruptcy law rights respecting the obligation.[6]

Even if SIPA permitted the avoidance of obligations – which it does not – the Trustee lacks any legal basis to avoid or disregard obligations incurred outside the statutory reach-back period.  The Trustee's only response is that he "can avoid obligations in the same manner as he avoids transfers ...." Tr. Br. 34.  This reasoning, however, fails to address Defendants'

---

[6]    Section 502(d) of the Bankruptcy Code (11 U.S.C. § 502(d)), governs the disallowance of a claim based on a claimant's receipt of an avoidable transfer, but "is silent as to the disallowance of any claim of the obligee of an avoided obligation."  *Geltzer v. Mooney,* 450 B.R. at 429 (Bankr. S.D.N.Y. 2011).

argument in any substantive manner, for an obvious reason: As with the avoidance of transfers made to innocent customers before the reach-back period, there is no legal basis for the Trustee to avoid obligations that were incurred before the reach-back period.

Because obligations – whatever they may prove to be on the merits – cannot be avoided by the Trustee, they are entitled, in defense against the Trustee's claims, to the legal treatment and status that they hold under applicable non-bankruptcy law prevailing at the time of the transfers.[7] They constitute unavoidable legal rights and entitlements under non-bankruptcy law. The Trustee's attempt to avoid obligations should be rejected as a matter of law.

## II.    THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS ARE LEGALLY DEFECTIVE AND MUST BE DISMISSED

### A.    The Subsequent Transfer Claims Are Not Adequately Pleaded

The Trustee's subsequent transfer claims must be dismissed because they fail to allege sufficient factual detail to render them plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

### 1.    The Trustee's Subsequent Transfer Claims Are As Defective As Similar Claims Dismissed In Other Madoff Adversary Proceedings

The Trustee completely ignores the controlling principles cited by Defendants' in *Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011) ("*Madoff Family Action*"), a closely analogous decision. In the *Madoff Family Action*, the late Judge Lifland dismissed as insufficiently pleaded a series of subsequent transfer claims that were ***virtually identical*** to the Trustee's subsequent transfer claims here, holding that the Trustee's claims "fail[] to provide even a modicum of specificity with respect to the Subsequent Transfers …". *Id.* at 120.  The Trustee makes no attempt to distinguish the pertinent allegations in the

---

[7]    By making this argument, the Pryor Cashman Movants do not seek to share affirmatively in the customer property pool in this context, and raise the point only in defensive to the Trustee's avoidance and recovery claims.

7

*Madoff Family Action* from the allegations against Defendants here, again, because there is not meaningful distinction for present purposes. Rather than address the *Madoff Family Action* (the analogous case), the Trustee attempts to deflect the Court's attention by focusing on decisions in the *Merkin* and *Chais* actions because, there, the Trustee's subsequent transfer claims were upheld. *See* Tr. Br. 35. But the deficiencies of the subsequent transfer claims asserted against Pryor Cashman Movants are only more obvious when contrasted against the well-pleaded claims in *Merkin* and *Chais*.

In both *Merkin* and *Chais*, the Trustee alleged that feeder funds' own offering materials contained statements establishing that the Merkin Defendants and the Chais Defendants received subsequent transfers in the form of commissions and fees. *See Picard v. Merkin*, 440 B.R. 243, 269-70 (Bankr. S.D.N.Y. 2010) (describing detailed allegations concerning subsequent transfers "in the form of payment of commissions or fees" in "predetermined amounts, as described in the Funds' Offering Memoranda"); *Picard v. Chais*, 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011) ("The Complaint then provides that 'some or all of the[se] transfers were subsequently transferred to Defendant Chais and/or other Defendants in the form of payment of commissions or fees ....'"). These allegations provided a plausible factual basis for the further allegations that subsequent transfers did, in fact, occur. *Merkin*, 440 B.R. at 269-70; *Chais*, 445 B.R. at 236.

The subsequent transferee allegations here do not come close to the level of the factual allegations in *Merkin* and *Chais*. Absent such allegations, the Trustee's claims are conclusory, lack a plausible basis, and must be dismissed. Indeed, Judge Lifland distinguished the well-pleaded subsequent transfer claims in *Merkin* and *Chais* from the claims in the *Madoff Family Action* to illustrate the insufficiency of the Trustee's claims in the latter case:

> [T]he complaint in *Merkin I* identified the subsequent transfers in predetermined amounts in the Funds' Offering Memoranda, which was attached as an exhibit [to the complaint], and "thus adequately apprises the Merkin Defendants, the alleged recipients of these fees, of which transactions are claimed to be fraudulent and

8

why, when they took place, how they were executed and by whom." 440 B.R. at 270 (internal quotations omitted). *No such information is provided here*.

*Madoff Family Action*, 458 B.R. at 120 (emphasis added).[8] Accordingly, the lack of allegations that plausibly allege the occurrence of subsequent transfers is the crucial distinction that warrants dismissal of the subsequent transferee claims here.

## 2. Assertions of Personal, Familial Or Business Relationships Between Initial and Subsequent Transferees Are Insufficient

The Trustee defends his subsequent transfers claims by arguing that "the actions here do not involve complex transactions with a tangled web of individuals and/or entities, and/or multiple BLMIS accounts. Instead, these are clear-cut avoidance actions that involve initial transfers to a BLMIS account opened in the name of an individual, family trust, joint tenancy, or a retirement plan, from which, in numerous instances, subsequent transfers were then made to family members and friends." (Trustee Br. 36.) These assertions, too, are insufficient.

The *Madoff Family Action* did not involve "complex transactions" with a "tangled web" of participants. It involved allegations of ordinary subsequent transfers between Madoff family members. Such basic allegations were insufficient to sustain the subsequent transfer claims in the *Madoff Family Action* because of the inadequate pleading. Similarly, the Trustee cannot avoid his responsibilities in pleading here merely by characterizing relationships between alleged initial and subsequent transferees as "non-complex."[9]

The Trustee's claims here also are indistinguishable from those dismissed in *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citgo Group Ltd*, No. 05-60055, 2011 U.S. Dist.

---

[8]    In *Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*, 452 B.R. 467, 479 (Bankr. S.D.N.Y. 2011) ("*Novator*"), the Court contrasted the well-pleaded subsequent transfer claims in *Merkin* against the claims alleged by the Dreier trustee, which, like the Trustee's claims here, were based solely on "unsubstantiated assertions". *See also Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 464-65 (Bankr. S.D.N.Y. 2011) ("*Amaranth*") (contrasting allegations in *Merkin* against the Dreier trustee's allegations).

[9]    *See Novator,* 452 B.R. at 479 (Bankr. S.D.N.Y. 2011) (rejecting claim that defendants were entities for whose benefit transfers were made where "the only allegation that these entities benefited from the transfers to the Transferee Defendants is based on their position within the Novator corporate structure").

LEXIS 34256 (S.D. Fla. Mar. 30, 2011) ("*Lancer*").  There, the receiver knew of and alleged an existing business relationship between initial and subsequent transferees.  Based solely on that relationship, the receiver made the conclusory allegation that the defendant received subsequent transfers, *id.* at *4-5, but failed to plead any details of the alleged transfers, admitting that he could not "pinpoint dates and amounts of subsequent transfers.  *Id.*

The *Lancer* court rejected the receiver's arguments that he should be allowed to conduct discovery to obtain the facts to support his claims because those facts were within the defendants' exclusive knowledge and control.  Instead, the court dismissed the subsequent transfer claim because the mere existence of a pre-existing relationship between entities was not a sufficient basis to allege that actionable subsequent transfers occurred.  *Id.* ("These arguments improperly seek to circumvent the pleading standard set forth in [*Twombly*].").

Accordingly, the Trustee's mere assertion of some purported personal, familial or business relationships among Defendants does not provide a sufficient factual predicate for his subsequent transfer claims.  Those claims should be dismissed.

## B.    The Trustee Must Properly Plead Claims Before He May Obtain Discovery

The Trustee argues that he is excused from the pleading requirements because his access to information about subsequent transfers is limited at this stage of the litigation, for which needs to take discovery.  (Tr. Br. 36.)  Although the Trustee's pre-discovery access to information about alleged subsequent transfers was similarly limited in the *Madoff Family Action*, that fact did not save the Trustee's wholly unsupported claims from dismissal there, and it should not do so here.  *See Madoff Family Action*, 458 B.R. at 120 (the complaint's "failure to provide even a modicum of specificity with respect to the Subsequent Transfers so as to put Defendants on notice as to which ones the Trustee seeks to recover" warranted dismissal).

The requirements of pleading do not give rise to a "fishing expedition" permitting a plaintiff to make speculative, unsupported allegations in the hope that discovery will ultimately confirm a factual basis for the claim. A plaintiff first must plead a claim properly *before* obtaining discovery, not the other way around. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("the doors of discovery" are locked for a plaintiff "armed with nothing more than conclusions"); *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) ("The purpose of pretrial discovery is not to allow a plaintiff to rummage about in search of a hitherto unexplicated cause of action."). *Accord, Lancer* 2011 U.S. Dist. LEXIS 34256 at *4-5 (sustaining the claim at this stage "would be impermissibly allowing Plaintiffs to pursue discovery to find out if a fraudulent transfer claim exists" (citing *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*, 2008 U.S. Dist. LEXIS 42492 (S.D. Fla. May 29, 2008)).

Finally, the Trustee does not need to assert claims against the alleged subsequent transferees at this point. Accepting SIPC's argument in other consolidated Madoff motion proceedings concerning the application of Section 550(a), the District Court concluded that "the bifurcation in the avoidance and recovery statutes of limitations allows (even if it does not require) a trustee to seek a single recovery from an initial transferee before filing claims against subsequent transferees, thereby saving judicial resources and the estate's assets." *SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.)*, 501 B.R. 26, 36 (S.D.N.Y. 2013). The Trustee nevertheless made the affirmative decision to include subsequent transfer claims in his Amended Complaints. His excuse that he lacks first-hand knowledge regarding subsequent transfers is not a basis to turn federal pleading requirements on their head.

C.    **The Trustee's Attempt to Transform Subsequent Transferees Into Initial Transferees Should Be Rejected**

The Trustee's continues to blur, without any basis in existing law, the distinction between an initial transferee and a person for whose benefit the transfer was made. He cites no authority

11

to stretch the meaning of "beneficiary of a transfer" beyond the quintessential example of a guarantor who benefits from a transfer to the transferee. *Geltzer v. Barish (In re Starr)*, 502 B.R. 760, 772 (Bankr. S.D.N.Y. 2014) (citation omitted), and fails to identify any direct, quantified and ascertainable benefit as required by the authorities cited in Defendants' motions.

In *Amaranth* case, the Court held that "[i]n order to establish liability for a transferee for whose benefit the transfer was made, '[t]he benefit must be 'direct, ascertainable and quantifiable' and must correspond to, or be commensurate with, the value of the property that was transferred'", and held that "[i]ncidental, unquantifiable, or remote' allegations of benefit are not sufficient." 452 B.R. at 466 (citing *Enron Creds. Recovery Corp. v. J.P. Morgan Secs., Inc. (In re Enron Creds. Recovery Corp.)*, 407 B.R. 17, 33 (Bankr. S.D.N.Y. 2009)). Here, the Amended Complaints lack *any* factual allegations about how the alleged subsequent transferees might have benefited from the transfers at issue, much less any "direct, ascertainable and quantifiable" benefits that they received.

In responding to the motions the Trustee makes no attempt to identify any factual support for his allegations. Instead, he argues that "[i]f, during litigation, it is determined that the initial fraudulent transfers were actually 'for the benefit of' the defendants identified as subsequent transferees, only then would such defendants be liable equally with an initial transferee .…" (Tr. Br. 37.) In doing so, the Trustee effectively concedes that his claims lack a proper factual basis; but he asks the Court to allow those claims to proceed in the hope that he may find a supporting basis "during litigation" (*i.e.*, during fact discovery). This, too, is unavailing.

In *Lancer*, dismissing the receiver's subsequent transfer claim as inadequately alleged, the court also rejected the receiver's claim under Section 550(a)(1) that the defendant was liable as the "party for whose benefit" the transfers at issue were made. *Lancer*, 2011 U.S. Dist. LEXIS 342156, at *5-8. As with the subsequent transfer claim, the receiver's alternative

12

pleading –like the Trustee's here – was made "without [] any supporting factual allegations" (*Id.* at *5), and rejected the argument that the claims should be permitted to go forward:

> As with his subsequent transferee theory, the Receiver contends that he should be permitted to take discovery before being required to set forth any factual basis for his legal conclusion that [the defendant] was the entity for whose benefit the transfers were made. Since the [complaint] does not make any factual allegations that might raise a reasonable expectation that discovery will reveal evidence in support of his claims, the Court will not allow the Receiver to pursue discovery to find out if a fraudulent transfer claim exists.

*Id.* at *7-8. This Court should follow the example set by *Lancer*.

Finally, the Trustee argues that his attempt to reach the subsequent transferees should be permitted because he "is not precluded from pleading in the alternative." (Tr. Br. 37-38.) The Trustee confuses alternative pleading with adequate pleading. Although parties are allowed to "plead in the alternative", parties may not assert claims that are wholly speculative and lacking in factual support merely because they are pleaded "in the alternative." Rather, all claims must meet the basic federal pleading requirements; mere speculation does not satisfy the prerequisite of plausibility in a plaintiff's pleading. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## III.    THE TRUSTEE CANNOT RECOVER FROM DEFENDANTS BASED ON INTER-ACCOUNT TRANSFERS OR AGGREGATION OF CUSTOMER ACCOUNTS

### A.    Improper Treatment and Insufficient Pleading of Inter-Account Transfers

The Trustee's claims against numerous Defendants depend upon unexplained reductions or eliminations of value for transfers from one customer account to another. The Trustee apparently applies his net equity approach to amounts in other accounts – without any direct basis to avoid the amount, either substantively or temporally – identified only by account numbers without other identifying information, and imposes the resulting calculation on the Defendants' accounts. The process is entirely opaque; the calculation is done entirely off stage.

The Trustee brushes off his lack of detail with the same excuses invoked against the subsequent transferees – the information will be uncovered in the discovery process, and the

13

transfers are neither extensive nor complicated.  Yet, to survive the threshold phase of litigation, he must meet his pleading burden before proceeding with discovery.  See Point II above.

In response to Defendants' contentions based on the required separate treatment of customer accounts under the SIPC Rules (Tr. Br. 29), the Trustee refers to *Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC)*, 396 B.R. 810, 885 (Bankr. S.D.N.Y. 2008).  That case does not help the Trustee:  First, it was not a SIPA case. Second, it involved a rollover by a defendant from one hedge fund account to the defendant's restructured successor within the two year federal reach back period.  Unlike the dealings between the innocent Pryor Cashman Movants and Madoff Securities, there was no allegation in *Bayou* that details of the transaction were concealed from the defendant.

### B.    Improper Aggregation of Customer Accounts and Account History

The Trustee asserts in a footnote (Tr. Br. 30 n.32) that it is proper in the *Marden Family Ltd. Partnership* action (Adv. Proc. No. 10-4348) for him to aggregate the entire history of a Madoff Securities account first opened years ago in the name of an irrevocable trust where the name of the customer of record was later changed to an entirely different entity, a partnership ("MFP").  The Trustee argues, in effect, that only the name of the account was changed in 2004 while the underlying substance of the account remained the same.  There is no factual basis in the Amended Complaint for the conclusory assertion that the account was substantively the same for both entities, or for the entities to be treated as the same (and for MFP's total exposure to turn on the prior customer's dealings.)  It is undisputable that the customer names reflect different legal characteristics of the entities: one, a revocable trust, and the second, a partnership. Moreover, as the Trustee confirms, after the change in 2004, MFP added approximately $14.75 million of new principal to the account.  *Id.*, Am Compl. at Exh. A (Exh. 1 to Levy Decl. supporting the MFP motion).

14

The Trustee paints MFP as if it had been an intentional participant in a series of transactions designed "to perpetuate a cycle of artificial profits and further investments" (Tr. Br. 30 n.32, quoting *Antecedent Debt Decision*, 499 B.R. at 429-30). The contention fails factually and legally. First, the Trustee does not allege that MFP (or any Pryor Cashman Movant) acted in bad faith regarding Madoff Securities or the receipt of any transfers. Lacking any plausible allegation of bad faith, there is no basis to assert, and the Court has no basis to conclude, that the two different customers of record over the life of the account had anything other than innocent intentions, relationships, and customer expectations in their dealings with the broker.

Second, contrary to the Trustee's intimation, MFP's particular account issues were not addressed by the District Court in connection with either the *Greiff* proceeding or the *Antecedent Debt Decision*. The particular issue involving MFP was only first raised in its motion to dismiss in the Bankruptcy Court after the District Court returned the case following the *Greiff* ruling.

Finally, the Trustee's response ignores the governing law with respect to the separateness of customers. On the one hand, the Trustee asserts that his "net investment method" controls both the computation of net equity claims and alleged avoidance exposure. Yet, on the other hand, he asserts that that he may summarily disregard customer separateness that otherwise would be required under the SIPA Series Rules (17 C.F.R. §§ 100 *et seq.*), thereby achieving – with no factual predicate – the equivalent of substantive consolidation of two different customers as if they were one, in turn tacking the withdrawal history of the initial customer to the latter (and enlarging its potential avoidance exposure). The Court should reject the contention.

## IV.    DEFENDANTS HAVE VIABLE ANTECEDENT DEBT DEFENSES UNDER SECTION 548(c) THAT DEFEAT OR REDUCE THE TRUSTEE'S CLAIMS

The Trustee argues that the *Antecedent Debt Decision* and the *Net Equity Decision (In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229 (2d. Cir. 2011), *cert. denied*, 133 S. Ct. 24 & 25 (2013), dispose of Defendants' arguments relating to "antecedent debt" defenses under Section

15

548(c) of the Bankruptcy Code.  The *Antecedent Debt Decision* emanated from a consolidated proceeding in the District Court involving 299 actions that named other similarly situated innocent transferee defendants.  The Pryor Cashman Movants were not parties to that consolidated proceeding, inasmuch as the District Court had previously returned their cases to the Bankruptcy Court after adjudicating the Section 546(e) safe harbor and rejecting various aspects of the antecedent debt defense in the *Greiff* decision.

The *Antecedent Debt Decision* rejected the contention that customers' state and federal claims for rescission or damages against their broker constituted "value" for purposes of Section 548(c).  The Court concluded, instead, that measurement of value for purposes of the defense to a SIPA avoidance claim required evaluation "as against the Madoff Securities customer property estate under SIPA," 499 B.R. at 422, 430.  In so doing, the Court wholly negates the stand-alone defense established by Section 548(c).  The *Net Equity Decision*, in contrast, related only to the claims allowance process in the SIPA proceeding.  The decision did adjudicate whether Defendants have defenses *under the Bankruptcy Code* to the Trustee's avoidance claims.

The Bankruptcy Code specifically establishes an affirmative defense to an avoidance claim if the defendant took the transfers for "value and in good faith."  11 U.S.C. § 548(c).  The statute has no equitable exceptions or restrictions to its application.  Notwithstanding the fact that this ordinary bankruptcy avoidance defense is created by Title 11 and establishes the "extent" to which a transfer may be avoided (*see* 15 U.S.C. § 78fff-2(c)(3)), the District Court nevertheless determined in the *Antecedent Debt Decision* that Section 548(c) is limited in a SIPA case by the "consistency" clause in SIPA Section §6(b), which borrows various bankruptcy provisions "[t]o the extent consistent with the provisions of [SIPA]".  On that basis, the District Court concluded that the equities of a SIPA case and the purposes of SIPA permitted permit policy considerations to wholly supplant the statutory defense in Section 548.  This elevation of policy over statutory

16

language departs from the accepted tenets of statutory construction established by the Supreme

Court and confirmed by the Second Circuit.

Just weeks ago, the Supreme Court unanimously reiterated that bankruptcy courts may

not override the express language of the Code based on notions of equity. *Law v. Siegel*, 2014

U.S. LEXIS 1784 at *10-11 ("whatever equitable powers remain in the bankruptcy courts must

and can only be exercised within the confines of the Bankruptcy Code" (internal quotations

omitted)); *accord, Burrage v. United States*, 134 S. Ct. 881, 892 (U.S. 2014) ("[t]he role of this

Court is to apply the statute as written—even if we think some other approach might accor[d]

with good policy." (internal quotation marks and citation omitted; alteration in original). These

latest pronouncements confirm longstanding Supreme Court precedent concerning the role of the

courts and the limitations on statutory interpretation. *E.g., Harris Trust & Savs. Bank v.

Salomon Smith Barney, Inc.*, 530 U.S. 238, 254 (2000) (a court's interpretation of a statute

begins with its text; "where the statutory language provides a clear answer, it ends there as well"

(internal quotation marks and citation omitted)); *United States v. Ron Pair Enters., Inc.*, 489 U.S.

at 241 (1989) ("[W]here, as here, the statute's language is plain, 'the sole function of the court is

to enforce it according to its terms.'" (quoting *Caminetti v. United States*, 242 U.S. 470, 485

(1917)). Courts cannot consider "competing policy views… [Rather,] courts must presume that

a legislature says in a statute what it means and means in a statute what it says there." *Carcieri v.

Salazar*, 555 U.S. 379, 387, 391-93 (2009) (internal quotation marks and citation omitted).

Thus, the courts "are not free to rewrite the statute that Congress has enacted." *Dodd v. United

States*, 545 U.S. 353, 359 (2005).

These decisions highlight the faulty underpinnings of the *Antecedent Debt Decision*.

Policy considerations supposedly grounded in the remedial purpose of a SIPA proceeding are not

a proper basis for a court to neutralize or displace an express statutory defense created by Section

548(c).  This jurisprudence calls into question the rationales advanced by the Trustee regarding

the antecedent debt defense, as well as the analysis of the District Court, and even calls into

question whether the Antecedent Debt Decision has continued vitality.  *See Frangos v. Doering

Equip. Corp.*, 860 F.2d 70, 72 (3d Cir. 1988) ("Although a cogent argument could have

previously been waged based on past precedent within this circuit, the Supreme Court has

recently rendered a decision making the Appellees' position untenable."); *In re Wiggins,* 341 B.R.

506, 512 (M.D. Pa. 2006) (when a circuit court decision "has been 'undermined' by a later

decision of the Supreme Court, we are obligated to recognize that the circuit case has been

overruled.  An implicit overruling is sufficient.  So is an inconsistency in the holdings." (citation

omitted)).  *See also Colby v. J.C. Penney Co*., 811 F. 2d 1119, 1123 (7th Cir. 1987) ("A court

must give considerable weight to [its own previous] decisions unless and until they have been

overruled or undermined by the decisions of a higher court, or other supervening developments,

such as a statutory overruling [and] must give fair consideration to any substantial argument that

a litigant makes for overruling a previous decision.").

Accordingly, the Defendants are entitled to assert a defense under Section 548(c) based

on satisfaction of antecedent debts owed by Madoff Securities, and such debts operate to reduce

or eliminate any avoidance liability to the Trustee.

**V.    APPLICABLE NON-BANKRUPTCY LAW PROTECTS CERTAIN TRUST AND
IRA DISTRIBUTIONS FROM DEFENDANTS CUSTOMER ACCOUNTS**

The Trustee's claims to recover transfer from certain Defendants' IRA's and spendthrift

trusts must be dismissed because the Madoff Securities accounts were held in protected forms

and the related withdrawals are exempt under by New York.  Section 5205(c)(1) of the Civil

Practice Law and Rules ("CPLR") exempts spendthrift trusts from execution by judgment

creditors.  N.Y. C.P.L.R. §§ 5205(c)(2) and (3) expand the protection to "all trusts, … monies,

assets or interests established as part of, and all payments from" retirements accounts qualified

18

under provisions of the Internal Revenue Code.

The Trustee does not dispute that Defendants Charlotte Marden (Adv. Proc. No. 10-5118) and Alvin Boslow (Adv. Proc. No. 10-4575) maintained IRA accounts at Madoff Securities. Instead, he argues, based on a footnote in *Greiff,* that the Defendants are not protected by Section 5205(c)(2) of the CPLR because "the exemption does not apply to 'additions to' the trust that are 'fraudulent conveyances.'" *Greiff*, 476 B.R. at 728 n.13.   But this exclusion applies only to fraudulent conveyances that are avoidable under Article 10 of the New York Debtor and Creditor Law.  *See* N.Y. C.P.L.R. § 5205(c)(5).   After *Greiff,* the Trustee holds only federal fraudulent transfer claims under Section 548(a)(1)(A) of the Bankruptcy Code..[10]

Even if Section 5205(c)(5) was susceptible to Trustee's federal two-year claim, the plain language reaches only fraudulent *additions to the qualified accounts,* not withdrawals from such accounts.  *See* N.Y. C.P.L.R. § 5205(c)(5) ("*Additions* to an asset … shall not be exempt from application to the satisfaction of a money judgment …." (emphasis added)).   Moreover, a judgment creditor may reach the corpus of a protected account only when non-exempt assets were deposited for fraudulent purposes, of which there is no allegation here.  *See Baker v. David A. Dorfman, P.L.L.C*., 2000 U.S. Dist. LEXIS 10142, at *25-26 (S.D.N.Y. 2000); *Bayerische Hypo-und Vereinsbank AG v DeGiorgio*, 902 N.Y.S.2d 85, 86 (App. Div. 1st Dep't 2010); *Gard Enter. Inc. v. Block*, 960 N.Y.S.2d 50 (N.Y. Sup. Ct. N.Y. Cty. 2012).

Finally, the plain language of the CPLR grants protection from the claims of creditors to both principal in and income received from a qualified trust or retirement account.   N.Y. C.P.L.R. § 5205(d)(1).[11]  *See Hilsen*, 405 B.R. 49 (Bankr. E.D.N.Y 2009) (income from exempt

---

[10]    Contrary to the Trustee's assertion that Defendants argue inconsistently with respect to the state provisions (Tr. Br. 38), Defendants read the plain language of the New York trust exemption and the fraudulent transfer exception thereto in a manner that gives full effect to both provisions according to their text.

[11]    The Trustee deliberately misreads this provision.  Its plain meaning demonstrates that income from an exempt trust or other covered account or plan is also protected.

trust is protected by N.Y. C.P.L.R. § 5205(d)(1)).[12]

## VI.    THE PERGAMENT DEFENDANTS ARE ENTITLED TO COMPENSATION FOR HAVING BEEN REQUIRED BY THE TRUSTEE TO FILE NEEDLESS COURT PAPERS

The Trustee still fails to articulate any reason why he could properly insist upon the filing of answers or motions by Bruce Pergament and Pergament & Pergament Realty LLC (*Picard v. Pergament*, Adv. Proc. No. 10-5194).  No matter how hard the Trustee's counsel tries to ignore the issue, the record demonstrates conclusively that: (1) the Trustee's counsel insisted that defendants Bruce Pergament and Pergament & Pergament Realty LLC answer or move against the amended complaint in January 2014, and refused any further extension, (2) the claims against those Defendants were only Six-Year Claims, all of which were dismissed by the *Greiff* decision, and (3) the only basis articulated by the Trustee's counsel to justify an answer or motion was that the Trustee did not wish to split one group of defendants within an action or family group from others within the same action or group (see Exh. 8 to Rose Decl. supporting the motion).

The explanation is palpably insufficient to shield the Trustee's counsel from an appropriate sanction for having caused the defendants needlessly to incur legal fees and costs to protect themselves.  The Trustee's counsel should compensate these defendants – from counsel's own resources – for the resulting expense.

---

[12]   If equitable considerations bear upon the treatment of the Trustee's claims, they would weigh heavily in favor of dismissal.  Under the Internal Revenue Code, IRAs are subject to strict rules designed to encourage retirement savings.  Generally, an IRA accountholder must pay a 10% tax penalty on withdrawals made before age 59-1/2. *See* 26 U.S.C. § 72(t).  At that age, retirees may withdraw funds from an IRA without penalty. *Id.* § 72(t)(2)(A)(i). Upon turning age 70-1/2, a retiree must take minimum distributions or suffer a 50% tax penalty on amounts that should have been withdrawn. *Id.* §§ 401(a)(9)(C); 4974(a); *Individual Retirement Arrangements*, IRS Pub. 590 (2010) (available at http://www.irs.gov/pub/irs-pdf/p590.pdf).  These provisions compel retirees to withdraw and use their retirement savings when they are needed most.  The Trustee's attempt to recover mandatory IRA withdrawals will dramatically affect elderly customers who lost what they thought were their retirement savings based on innocent dealings with Madoff Securities, and who face repaying losing the money they were required to take with no chance of replenishing their retirement savings.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaints.

Dated:   New York, New York
         March 17, 2014

Respectfully submitted,

PRYOR CASHMAN LLP

By:    */s/ Richard Levy, Jr.*
       Richard Levy, Jr.
       David C. Rose
7 Times Square
New York, New York 10036
Tel:    (212) 421-4100
Fax:    (212) 326-0806
rlevy@pryorcashman.com
drose@pryorcashman.com

*Attorneys for the Pryor Cashman Movants*