MILBERG LLP
Matthew Gluck
Matthew A. Kupillas
Jennifer L. Young
Joshua E. Keller
One Pennsylvania Avenue
New York, NY 10119
Tel:  (212) 594-5300
Fax:  (212) 868-1229

*Attorneys for Defendants Identified on*
*Attachment A Hereto*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>     v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securites LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>DEFENDANTS LISTED ON EXHBIIT A ATTACHED HERETO,<br><br>          Defendants. | Adv. Pro. Nos. Listed on Attachment A Hereto |

## DEFENDANTS' OMNIBUS REPLY BRIEF
## IN FURTHER SUPPORT OF
## MOTIONS TO DISMISS THE AMENDED COMPLAINTS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 2

I.  THE TRUSTEE FAILS TO STATE A CLAIM TO AVOID OBLIGATIONS
OWED BY BLMIS TO ITS CUSTOMERS ......................................................... 2

    A.  SIPA Does Not Authorize a SIPA Trustee to Avoid Obligations ............. 2

    B.  The Complaints Fail to Identify Any Obligations to be Avoided............... 6

    C.  The Trustee's Indirect Attempt To Avoid Obligations is Inconsistent
with the Law ............................................................................................. 6

II.  THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS MUST BE
DISMISSED .......................................................................................................... 8

    A.  The Subsequent Transfer Claims Are Not Pled With Sufficient
Factual Detail ............................................................................................ 8

        1.  The Trustee's Subsequent Transfer Claims Have The Same
Lack Of Factual Detail As The Claims Dismissed In The
Madoff Family Action, And Do Not Have The Same Level Of
Detail As The Claims Sustained In The Merkin And Chais
Actions ........................................................................................... 8

        2.  Assertions of Personal, Familial Or Business Relationships
Between Initial and Subsequent Transferees Are Insufficient...... 10

        3.  The Trustee Must Properly Plead Claims Before He May
Obtain Discovery .......................................................................... 12

    B.  The Trustee's Attempt to Convert Subsequent Transferees Into Initial
Transferees Should Be Rejected ............................................................. 13

III.  APPLICABLE NON-BANKRUPTCY LAW PROTECTS TRANSFERS
AND DISTRIBUTIONS FROM CERTAIN DEFENDANTS' ACCOUNTS
AT BLMIS .......................................................................................................... 15

IV.  THE TRUSTEE FAILS TO ADEQUATELY PLEAD THE FACTUAL
DETAILS OF PURPORTED INTER-ACCOUNT TRANSFERS ...................... 17

V.  THE TRUSTEE'S COMPLAINT INADEQUATELY ALLEGES THE
SPECIFIC TRANSFERS THAT HE SEEKS TO RECOVER FROM EACH
DEFENDANT.................................................................................................... 17

i

VI.     ANTECEDENT DEBT DEFENSES UNDER BANKRUPTCY CODE
        SECTION 548(C) ............................................................................................... 19

VII.    CONCLUSION ................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................6, 12, 15

*Baker v. David A. Dorfman, P.L.L.C.,*
    99 Civ. 9385, 2000 U.S. Dist. LEXIS 10142 (S.D.N.Y. July 20, 2000) ................................16

*Bayerische Hypo-und Vereinsbank AG v DeGiorgio,*
    902 N.Y.S.2d 85 (App. Div. 1st Dep't 2010) .......................................16

*Bell. Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................6, 8, 11, 15

*Connecticut Nat'l Bank v. Germain,*
    503 U.S. 249 (1992)................................................................................................4

*Court-Appointed Receiver of Lancer Offshore, Inc. v. The Citgo Group Ltd,*
    Case No. 05-60055, 2011 U.S. Dist. LEXIS 34256 (S.D. Fla. Mar. 30, 2011).................11, 14

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
    822 F.2d 1242 (2d Cir. 1987).................................................................................18

*Forman v. Salzano (In re Norvergence, Inc.),*
    405 B.R. 709 (Bankr. D.N.J. 2009) .......................................................................18

*Fourco Glass Co. v. Transmirra Prods. Corp.,*
    353 U.S. 222 (1957).................................................................................................4

*Geltzer v. Barish (In re Starr),*
    502 B.R. 760 (Bankr. S.D.N.Y. 2014) ..................................................................13

*Geltzer v. Mooney (In re MacMenamin's Grill Ltd.),*
    450 B.R. 414 (Bankr. S.D.N.Y. 2011) ...............................................................3, 7

*Gowan v. Amaranth LLC (In re Dreier LLP),*
    452 B.R. 451 (Bankr. S.D.N.Y. 2011)......................................................10, 11, 13

*Gowan v. Novator Credit Mgmt. (In re Dreier LLP),*
    452 B.R. 467 (Bankr. S.D.N.Y. 2011).........................................................10, 11

*Hill v. Oria (In re Juliet Homes, LP),*
    Case No. 09-ap-03429, 2010 Bankr. LEXIS 4826 (Bankr. S.D. Tex. Dec. 16, 2010) ............18

*In re Hilsen,*
    405 B.R. 49 (Bankr. E.D.N.Y 2009)..................................................................16

*Lamie v. United States Trustee,*
    540 U.S. 526 (2004)..............................................................................................4

*Law v. Siegel,*
    No. 12-5196, 2014 U.S. LEXIS 1784 (Mar. 4, 2014)..........................................5

*Lutz v. Chitwood (In re Donahue Secs., Inc.),*
    304 B.R. 797 (Bankr. S.D. Ohio 2003)................................................................4

*Marshall v. Picard,*
    740 F.3d 81 (2d Cir. 2014)...................................................................................5

*McCloskey v. Mueller,*
    446 F.3d 262 (1st Cir. 2006)..............................................................................12

*Morales v. Trans World Airlines,*
    504 U.S. 374 (1992)..............................................................................................4

*In re Bernard L. Madoff Inv. Secs. LLC,*
    654 F.3d 229 (2d. Cir. 2011)..............................................................................19

*Picard v. Chais,*
    445 B.R. 206 (Bankr. S.D.N.Y. 2011)........................................................8, 9, 10

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC),*
    721 F.3d 54 (2013)................................................................................................5

*Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC),*
    458 B.R. 87 (Bankr. S.D.N.Y. 2011)...........................................................*passim*

*Picard v. Merkin,*
    440 B.R. 243 (Bankr. S.D.N.Y. 2010)........................................................8, 9, 10

*SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.),*
    499 B.R. 416 (S.D.N.Y. 2013).......................................................................2, 6, 19

*SIPC v. Bernard L. Madoff Inv. Secs. LLC (Picard v. Greiff),*
    476 B.R. 715 (S.D.N.Y. 2012).......................................................................1, 2, 15

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    501 B.R. 26 (S.D.N.Y. 2013)..............................................................................13

**Statutes**

15 U.S.C. § 78fff-2(c)(3) ................................................................................2, 3, 4, 5

15 U.S.C. § 78fff(b) .................................................................................................4

26 U.S.C. § 72(t) ....................................................................................................16

11 U.S.C. § 502(d) ...................................................................................................7

11 U.S.C. § 544........................................................................................................3

11 U.S.C. § 546(e) ...................................................................................................1

11 U.S.C. § 548............................................................................................... *passim*

N.Y.C.P.L.R § 5202(d)(1) .....................................................................................16

N.Y.C.P.L.R § 5205(c)(1)...................................................................................15, 16

**Other Authorities**

5 COLLIER ON BANKRUPTCY § 548.11[1][a][ii] (16th ed. 2014).....................................6

Defendants identified on Attachment A hereto submit this omnibus Reply in further support of their motions to dismiss ("Motions") the Amended Complaints ("Complaints") filed in their respective adversary proceedings pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure).[1]

In addition to the arguments below, Defendants join and adopt all arguments raised in motions filed by similarly-situated defendants to the extent that such arguments relate to the issues raised here.

## PRELIMINARY STATEMENT

The avoidance actions filed against Defendants comprise a small part of the hundreds of virtually identical actions commenced by the Trustee against innocent customers of BLMIS.[2]  As a result of the District Court's decision in *Greiff* to apply the Section 546(e) safe harbor to the instant actions (which were then returned to the Bankruptcy Court where these motions were filed), the Trustee's only remaining avoidance claims are (i) those under Section 548(a)(1)(A) of the Bankruptcy Code, to avoid actual fraudulent transfers made during the two-year federal "reach back" period, (ii) those under Section 550(a)(2) to avoid subsequent transfers, and (iii) those to avoid obligations owed by BLMIS to Defendants.  *See SIPC v. Bernard L. Madoff Inv. Secs. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) (hereinafter, "*Greiff*"), *appeal pending on other grounds, In re Madoff Secs.*, No. 12-2557(L) (2d Cir.).  Defendants' motions challenge the sufficiency of the remaining claims based on substantive and procedural defects in the Trustee's pleadings, as matters of substantive and procedural law.  Defendants specifically

---

[1]  Attachment A hereto identifies the arguments that Defendants raised in their respective motions to dismiss.

[2]  Unless otherwise indicated, capitalized terms have the meanings given in the Defendants' motions.

address the Trustee's faulty attempts to avoid dismissal of the counts seeking to avoid

obligations, the vague claims against alleged subsequent transferees, claims that fail to meet

minimal but mandatory pleading requirements, and other defects involving smaller subsets of

Defendants.

## ARGUMENT

## I.    THE TRUSTEE FAILS TO STATE A CLAIM TO AVOID OBLIGATIONS OWED BY BLMIS TO ITS CUSTOMERS

As Defendants' opening briefs explain, the language of SIPA § 78fff-2(c)(3)

conspicuously omits from the Trustee's specific avoidance power any mention of "obligations

incurred," instead limiting him only to the avoidance of "transfers" to the extent permitted under

the Bankruptcy Code.  The Trustee fails to provide the Court with any basis to re-read SIPA to

include the avoidance of obligations.

### A.    SIPA Does Not Authorize a SIPA Trustee to Avoid Obligations

The Trustee relies on the general provisions in Sections 78fff-1(a) and 78fff(b) of SIPA

as authority for a power to avoid "obligations incurred" by the debtor.  *See* Trustee's

Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Tr. Br.") at 31-33.

Neither statute grants such authority to the Trustee.[3]

---

[3] The District Court did not address the Trustee's "obligations" claims in the *Greiff* decision.
476 B.R. at 728 n.12.  To Defendants' knowledge, this statutory construction question has not
been addressed squarely by any other Madoff-related ruling.

Further, SIPC's statement that Judge Rakoff's October 15, 2013 Opinion, *SIPC v. Bernard L.
Madoff Inv. Sec. LLP (In re Madoff Sec.)*, 499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt
Decision*"), rejected the argument that the Trustee cannot avoid obligations owed by BLMIS (*see*
SIPC Br. at 3 n.2) is incorrect.  The *Antecedent Debt Decision* in no way addressed the Trustee's
statutory ability to avoid obligations; instead, that decision held that BLMIS customers were not
owed any obligations by BLMIS for the amounts reported in customer account statements.
*Antecedent Debt Decision*, 499 B.R. at 421 n.4.  Those are wholly separate issues.

These general provisions of SIPA confer upon the Trustee the general powers of a bankruptcy trustee, and borrow certain provisions from chapters 1, 3 and 5 of the Bankruptcy Code for purpose of administration of a SIPA liquidation case.    Neither statute provides the Trustee with a specific power to avoid obligations.  Indeed, with respect to the avoidance remedy, only Section 78fff-2(c)(3) of SIPA speaks to the Trustee's specific power of avoidance, and then borrows the Bankruptcy Code's power to avoid only "transfers," and only *to the extent* that transfers are *void or voidable under Title 11* – wholly omitting the word "obligations" that appears in Sections 548(a)(1) and 544 of the Bankruptcy Code.  Thus, although the Bankruptcy Code expressly permits bankruptcy trustees to avoid "obligations," *e.g.*, 11 U.S.C. § 548(a)(1), a SIPA trustee may only recover voidable *transfers of property*.  15 U.S.C. § 78fff-2(c)(3).  *Cf. Geltzer v. Mooney (In re MacMenamin's Grill Ltd.)*, 450 B.R. 414, 428-29, 430 (Bankr. S.D.N.Y. 2011) (by only using the word "transfers" to identify the coverage of its safe harbor, Section 546(e) of the Bankruptcy Code did not protect obligations from avoidance; "It is clearly proper to presume that section 546(e) does not implicitly adopt a definition of "transfer" that somehow includes "incurrence of an obligation.").

Surprisingly, the Trustee asserts that Section 78fff-2(c)(3) of SIPA "explicitly incorporates the Bankruptcy Code, thus *authorizing the Trustee to avoid **any obligations incurred** under sections 544 and 548 of the Code.*"  Tr. Br. at 31-32 (emphasis added).  But the Trustee conveniently ignores the express confinement of his power under this statute to the avoidance of "transfers" to the extent avoidable under Title 11.  His faulty premise disregards the express statutory text of Section 78fff-2(c)(3) and, in particular, the effect of the absence of any reference to "obligations" in SIPA's specific avoidance provision, especially when compared to the avoidance provisions of the Bankruptcy Code.

3

In this regard, Congress' unambiguous phraseology is dispositive. The general provision for SIPA liquidations to be administered in accordance with various parts of the Bankruptcy Code, to the extent consistent with SIPA, does not override the specific SIPA provision that borrows the Bankruptcy Code's avoidance powers and limitations without caveat or exclusion. *See* 15 U.S.C. § 78fff-2(c)(3); *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228 (1957) ("However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment.") (citations and quotations omitted); *accord Morales v. Trans World Airlines*, 504 U.S. 374, 384-85 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general . . . .").[4]

Accordingly, there is no basis for this Court to expand the Trustee's powers by implying the word "obligations" into SIPA's special avoidance provision. *Connecticut Nat'l Bank v. Germain,*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241-242 (1989)); *Lamie v. United States*

---

[4] Although SIPA borrows the general provisions of the Bankruptcy Code to the extent they are "consistent" with SIPA (15 U.S.C. § 78fff(b)), Section 78fff-2(c)(3), in contrast, specifically delineates the bounds of the Trustee's avoidance power. By using the phrase "to the extent void or voidable under Title 11," the statute borrows the bankruptcy avoidance – with respect to transfers only – as it exists in bankruptcy law and as it is limited by bankruptcy law. Because SIPA explicitly limits the Trustee's avoidance power, there is no conflict or inconsistency between the statutes that aids the Trustee in this regard. *See Lutz v. Chitwood (In re Donahue Secs., Inc.)*, 304 B.R. 797, 798-99 (Bankr. S.D. Ohio 2003) ("[I]t is not inconsistent with SIPA to hold that a SIPA trustee is vested with the same rights as a bankruptcy trustee under §541(a) [of the Bankruptcy Code] where SIPA itself expressly dictates the same under §78fff-1(a).").

*Trustee,* 540 U.S. 526, 537-538 (2004) (courts should not add "absent words" to a statute, especially where there is a "plain, nonabsurd reading in view").[5]

Finally, although the Trustee clearly believes (and argues) that, as a matter of equity, his goal of maximizing the amount of avoidance recoveries justifies the expansion of his powers as far as possible – even pushing the apparent statutory limits of his authority beyond the express words of SIPA – equity does not supply the Trustee with any basis to rewrite the language deliberately chosen by Congress. In an analogous context in the Madoff case – and consistent with thrust of recent Supreme Court jurisprudence counseling a strict construction of statutes – the Second Circuit put to rest any notion that principles of equity permit the courts to trump statutory text:

> Picard argues under principles of equity that unless he can spearhead the litigation on behalf of defrauded customers, the victims will not be made whole, SIPC will be unable to recoup its advances, and third-party tortfeasors will reap windfalls. No doubt, there are advantages to the course Picard wants to follow. But equity has its limits; it may fill certain gaps in a statute, but it should not be used to enlarge substantive rights and powers.

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC)*, 721 F.3d 54, 76 (2013) (footnote omitted), *petition for cert. filed,* No. 13-448 (U.S. Oct. 9, 2013). *See also Law*

---

[5] The Trustee cites a footnote from the recent decision of the Second Circuit in *Marshall v. Picard,* 740 F.3d 81, 88 n.8 (2d Cir. 2014), as support for the proposition that the Trustee may reach obligations because his avoidance powers are completely "coextensive" with those of a bankruptcy trustee. The *Marshall* case has no bearing on the current motions. *Marshall* involved a request by the Trustee to enjoin certain customers' state law tort claims for relief, which were found to be derivative of the Trustee's avoidance claims. That case did not involve the adjudication of avoidance claims, and did not address the specific statutory construction issue posed here which, on its face, defeats the Trustee's assertion that he holds any express power to avoid obligations. The provisions of Section 548 of the Bankruptcy Code, which reaches transfers *and* obligations, do not coincide with the power under Section 78fff-2(c)(3) of SIPA, which only reaches transfers.

*v. Siegel*, No. 12-5196, 2014 U.S. LEXIS 1784 at *10-11 (Mar. 4, 2014) (in exercising statutory and inherent powers, bankruptcy courts may not contravene specific statutory powers).

### B.    The Complaints Fail to Identify Any Obligations to be Avoided

The Trustee provides no meaningful response to Defendants' argument that the complaints fail to identify any particular obligations to be avoided.  Despite his contention that the "[c]omplaints adequately plead . . . the obligations incurred by BLMIS" (Tr. Br. at 32), neither the Trustee's opposition brief nor the Complaints provide any information about the nature of those obligations.  In fact, the Complaints contain only vague, generalized allegations that "[t]o the extent BLMIS or Madoff incurred obligations" to Defendants, "such obligations . . . are avoidable . . . ." *See, e.g., Picard v. Goldenberg,* Adv. Pro. No. 10-4946 (SMB), Am. Compl. ¶ 36.  Because Defendants cannot ascertain from the Complaints what obligations the Trustee seeks to avoid or what defenses may apply, these claims must be dismissed as insufficiently pleaded.  *See* 5 COLLIER ON BANKRUPTCY § 548.11[1][a][ii] (16th ed. 2014).  On a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

### C.    The Trustee's Indirect Attempt To Avoid Obligations is Inconsistent with the Law

In response to Defendants' contention that the Trustee cannot avoid BLMIS' obligations to customers that arose, for example, under federal securities statutes and state law, the Trustee, invoking the *Antecedent Debt Decision,* argues that Defendants cannot rely on federal and state law to "increase the amount to which a customer is entitled from the customer property estate." Tr. Br. at 33 (quoting *Antecedent Debt Decision,* 499 B.R. at 426).  By focusing on the rights of

a net equity claimant, the Trustee presents a *non sequitur* and blurs the real issue:  Whether

obligations that BLMIS owed to Defendants at the time of their withdrawals are subject to

avoidance at all?

These actions do not involve questions concerning amounts that the Defendants would be

entitled to recover *from* BLMIS' estate as net equity claims under SIPA.  Indeed, to the extent

that any Defendants timely submitted net equity claims, the Trustee previously determined that

they lacked a right to receive compensation from the customer property pool based on their lack

of net equity under his "Net Investment Method."  That exercise, however, determined only the

amount of claims solely for purposes of allowance (or disallowance) against the estate *at and as

of the time of the commencement of the liquidation proceeding.*  The present Actions, in contrast,

raise the entirely distinct issue of the parameters of, and the Defendants' defenses to, the

Trustee's avoidance power.  If the Trustee cannot reach and set aside an obligation – either

statutorily (based on the lack of statutory authorization to pursue the claim) or temporally (based

on, for example, a safe harbor or reach-back restriction) – then the Trustee cannot avoid the

obligation at all, and the parties will be left to their relative non-bankruptcy law rights respecting

the obligation.[6]

Even if SIPA permitted the avoidance of obligations (which it does not), the Trustee

lacks any legal basis to avoid or disregard obligations incurred outside the statutory reach-back

period.  The Trustee's only response is that he "can avoid obligations in the same manner as he

avoids transfers. . . ."  Tr. Br. at 34.  This reasoning, however, fails to address Defendants'

---

[6]    Section 502(d) of the Bankruptcy Code (11 U.S.C. § 502(d)) governs the disallowance of a
claim based on a claimant's receipt of an avoidable transfer, but "is silent as to the
disallowance of any claim of the obligee of an avoided obligation."  *Geltzer v. Mooney,* 450
B.R. at 429 (Bankr. S.D.N.Y. 2011).

argument in any substantive manner, for an obvious reason: As with the avoidance of transfers made to innocent customers before the reach-back period, there is no legal basis for the Trustee to avoid obligations that were incurred before the reach-back period.

Because obligations – whatever they may prove to be on the merits – cannot be avoided by the Trustee, they are entitled to the legal treatment and status that they hold under applicable non-bankruptcy law prevailing at the time of the transfers. They constitute unavoidable legal rights and entitlements under non-bankruptcy law.

## II.    THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS MUST BE DISMISSED

### A.    The Subsequent Transfer Claims Are Not Pled With Sufficient Factual Detail

The Trustee's subsequent transfer claims must be dismissed because they are not alleged with sufficient factual detail to render them plausible on their face. *See Twombly*, 550 U.S. at 555 (2007).

#### 1.    The Trustee's Subsequent Transfer Claims Have The Same Lack Of Factual Detail As The Claims Dismissed In The *Madoff Family Action*, And Do Not Have The Same Level Of Detail As The Claims Sustained In The *Merkin* And *Chais* Actions

The Trustee completely ignores the controlling principles cited by Defendants in *Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011) ("*Madoff Family Action*"), a decision directly analogous to the instant Actions. The Trustee does not respond because he cannot meaningfully respond.

In the *Madoff Family Action*, the late Judge Lifland dismissed subsequent transfer claims that were ***virtually identical*** to the Trustee's subsequent transfer claims against Defendants, holding that the Trustee's claims "fail[] to provide even a modicum of specificity with respect to the Subsequent Transfers …". *Id.* at 120. The Trustee makes no attempt to distinguish the

pertinent allegations in the *Madoff Family Action* from the allegations against Defendants in the present Actions, again, because there is not a meaningful distinction between the allegations.[7]

Rather than address the *Madoff Family Action* (the analogous case), the Trustee relies on *Picard v. Merkin*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010) and *Picard v. Chais*, 445 B.R. 206 (Bankr. S.D.N.Y. 2011) because in those cases, the Trustee's subsequent transfer claims were upheld. *See* Tr. Br. at 35. But the deficiencies of the subsequent transfer claims asserted against Defendants are only more obvious when contrasted against the well-pled claims in *Merkin* and *Chais*. In both *Merkin* and *Chais*, the Trustee alleged that the feeder funds' own offering memoranda contained statements establishing that the Merkin Defendants and the Chais Defendants had received subsequent transfers in the form of commissions and fees. *See Merkin*, 440 B.R. at 269-70 (describing detailed allegations concerning subsequent transfers "in the form of payment of commissions or fees" in "predetermined amounts, as described in the Funds' Offering Memoranda"); *Chais*, 445 B.R. at 236 ("The Complaint then provides that 'some or all of the[se] transfers were subsequently transferred to Defendant Chais and/or other Defendants in the form of payment of commissions or fees . . . .'"). The Court held that those offering memoranda provided a plausible factual basis for the Trustee's allegations that subsequent transfers did, in fact, take place. *Merkin*, 440 B.R. at 269-70; *Chais*, 445 B.R. at 236.

The subsequent transferee allegations here do not come close to the level of detail of the factual allegations in *Merkin* and *Chais*. Without such allegations, the Trustee's claims are wholly conclusory, lack a plausible basis, and must be dismissed. Indeed, Judge Lifland

---

[7] The Trustee typically alleges: "On information and belief, all or a portion of the Transfers were subsequently transferred by Defendant to Subsequent Transferee Defendant [name] . . . ." *See Picard v. Aspen Fine Arts Co.* (Adv. Pro. No. 10-04335 (SMB)), Amended Complaint at ¶ 44.

9

distinguished the well-pled subsequent transfer claims in *Merkin* and *Chais* from the claims in

the *Madoff Family Action* to illustrate the insufficiency of the Trustee's claims in the latter case:

> [T]he complaint in *Merkin I* identified the subsequent transfers in predetermined amounts in the Funds' Offering Memoranda, which was attached as an exhibit [to the complaint], and "thus adequately apprises the Merkin Defendants, the alleged recipients of these fees, of which transactions are claimed to be fraudulent and why, when they took place, how they were executed and by whom." 440 B.R. at 270 (internal quotations omitted). ***No such information is provided here***.

*Madoff Family Action*, 458 B.R. at 120 (emphasis added).[8]  The pleading of facts plausibly

alleging that subsequent transfers took place is the crucial distinction between the Trustee's

claims here and his claims in *Merkin* and *Chais*.

### 2.  Assertions of Personal, Familial Or Business Relationships Between Initial and Subsequent Transferees Are Insufficient

The Trustee argues that his subsequent transfer claims should be sustained, despite their

lack of factual detail, because "the actions here do not involve complex transactions with a

tangled web of individuals and/or entities, and/or multiple BLMIS accounts.  Instead, these are

clear-cut avoidance actions that involve initial transfers to a BLMIS account opened in the name

of an individual, family trust, joint tenancy, or a retirement plan, from which, in numerous

instances, subsequent transfers were then made to family members and friends."  Tr. Br. at 36.

However, the *Madoff Family Action* did not involve "complex transactions" with a

"tangled web" of participants either.  That action involved allegations of ordinary subsequent

transfers between Madoff family members.  Yet, the Trustee's subsequent transfer claims in the

---

[8]  In *Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*, Judge Glenn also contrasted the well-pled subsequent transfer claims in *Merkin* against the claims alleged by the Dreier trustee, which, like the Trustee's claims in the present Actions, were based solely on "unsubstantiated assertions."  *Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*  ("*Novator*"), 452 B.R. 467, 479 (Bankr. S.D.N.Y. 2011).   *See also Gowan v. Amaranth LLC (In re Dreier LLP)* ("*Amaranth*"), 452 B.R. 451, 464-65 (Bankr. S.D.N.Y. 2011) (contrasting subsequent transfer allegations in *Merkin* against the unsubstantiated allegations brought by the Dreier trustee).

*Madoff Family Action* were dismissed because of inadequate pleading. Accordingly, the Trustee cannot attempt avoid its pleading allegations here by casting the relationships between the alleged initial transferees and purported subsequent transferees as "non-complex".[9]

The Trustee's claims here are also indistinguishable from those in *Court-Appointed Receiver of Lancer Offshore, Inc. v. The Citgo Group Ltd*, Case No. 05-60055, 2011 U.S. Dist. LEXIS 34256 (S.D. Fla. Mar. 30, 2011) ("*Lancer*"). In that case, the receiver was aware of an existing business relationship between the initial transferees and the subsequent transferee defendant and, based solely on that relationship, the receiver made the conclusory allegation that the defendant received subsequent transfers. *Id.*, 2011 U.S. Dist. LEXIS 34256, at *4-5. The receiver also failed to plead any details of the alleged transfers, admitting that he could not "pinpoint dates and amounts of subsequent transfers"; however, the receiver argued that he should be allowed to conduct discovery to obtain the facts to support his claims because those facts were within the defendants' exclusive knowledge and control. *Id.*

The *Lancer* court **rejected** the receiver's arguments and dismissed the subsequent transfer claim, finding that the mere existence of a pre-existing relationship between entities is not a sufficient basis upon which to allege that subsequent transfers took place. *Id.* ("These arguments improperly seek to circumvent the pleading standard set forth in [*Twombly*]."). The court dismissed the subsequent transfer claim on the ground that the receiver had not established a plausible basis for his claim, and ruled that the receiver should not be permitted to engage in discovery to find out if the claim in fact exists. *Id.*

---

[9] *See also Amaranth*, 452 B.R. at 479 (dismissing claims that certain defendants were the entities for whom the transfers at issue were made, where "the only allegation that these entities benefited from the transfers to the Transferee Defendants is based on their position within the Novator corporate structure.").

11

Accordingly, the Trustee's awareness of purported personal, familial or business relationships between alleged initial transferees and Subsequent Transferee Defendants does not provide a sufficient factual predicate for his subsequent transfer claims.

### 3. The Trustee Must Properly Plead Claims *Before* He May Obtain Discovery

The Trustee also argues that he can be excused from the pleading requirements because his access to information about subsequent transfers is limited at this stage of the litigation, and he needs to take discovery to obtain facts relevant to his claims. Tr. Br. at 36. However, although the Trustee's pre-discovery access to information about alleged subsequent transfers was similarly limited in the *Madoff Family Action*, that limitation did not save the Trustee's wholly unsupported claims from dismissal in that case, and it should not do so in the present Actions. *See Madoff Family Action*, 458 B.R. at 120 (the complaint's "failure to provide even a modicum of specificity with respect to the Subsequent Transfers so as to put Defendants on notice as to which ones the Trustee seeks to recover" warranted dismissal).

Moreover, the Trustee's argument puts the proverbial cart before the horse. Pleading is not a "fishing expedition" where a plaintiff can make speculative and unsupported factual allegations with the hope that discovery will ultimately provide the factual basis for those allegations. Instead, a plaintiff must adequately plead a claim *before* obtaining discovery, not the other way around. *See, e.g.*, *Iqbal*, 556 U.S. at 678-79 (holding that "the doors of discovery" are locked for a plaintiff "armed with nothing more than conclusions"); *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) ("The purpose of pretrial discovery is not to allow a plaintiff to rummage about in search of a hitherto unexplicated cause of action.").

The Trustee did not need to assert claims against the Subsequent Transferee Defendants when he did. In fact, as SIPC has argued, "the bifurcation in the avoidance and recovery statutes

of limitations allows (even if it does not require) a trustee to seek a single recovery from an initial transferee before filing claims against subsequent transferees, thereby saving judicial resources and the estate's assets." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36 (S.D.N.Y. 2013).  However, the Trustee made the affirmative decision to include the subsequent transfer claims in his Complaints.  The Trustee's claim that he lacks first-hand knowledge regarding transfers to purported Subsequent Transferee Defendants is no basis for turning the federal pleading requirement on its head.

**B.    The Trustee's Attempt to Convert Subsequent Transferees Into Initial Transferees Should Be Rejected**

The Trustee continues to blur, without any basis in existing law, the distinction between an initial transferee and a person for whose benefit the transfer was made.  He cites no authority to stretch the meaning of "beneficiary of a transfer" beyond the quintessential example of a guarantor who benefits from a transfer to the transferee, *see Geltzer v. Barish (In re Starr)*, 502 B.R. 760, 772 (Bankr. S.D.N.Y. 2014) (citation omitted), and fails to identify any direct, quantified and ascertainable benefit as required by the authorities cited in Defendants' motions.

In *Amaranth*, the Court held that "[i]n order to establish liability for a transferee for whose benefit the transfer was made, '[t]he benefit must be 'direct, ascertainable and quantifiable' and must correspond to, or be commensurate with, the value of the property that was transferred,'" and held that "[i]ncidental, unquantifiable, or remote' allegations of benefit are not sufficient."  *Amaranth*, 452 B.R. at 466 (citing *In re Enron Cred. Recovery Corp.*, 407 B.R. 17, 33 (Bankr. S.D.N.Y. 2009)).  Here, the Trustee's Complaints do not contain ***any*** factual allegations about how the Subsequent Transferee Defendants might have benefited from the transfers at issue, much less any "direct, ascertainable and quantifiable" benefits they received.

13

In their opening briefs, Defendants argued that the Trustee failed to allege any facts supporting his claims that certain initial transfers were made for the benefit of the Subsequent Transferee Defendants.   Remarkably, in his opposition, the Trustee does not even ***attempt*** to identify any factual support those allegations.   Instead, the Trustee argues that "[i]f, during litigation, it is determined that the initial fraudulent transfers were actually 'for the benefit of' the defendants identified as subsequent transferees, only then would such defendants be liable equally with an initial transferee …".   Tr. Br. at 37.   In doing so, the Trustee essentially concedes that his claims lack any supporting factual basis; still, he asks the Court to nonetheless allow those claims to go forward so that he may find some supporting basis for them "during litigation" (*i.e.*, in fact discovery).   This argument should be rejected.

In *Lancer*, after dismissing the receiver's subsequent transfer claim as inadequately alleged, the court also rejected the receiver's claim under Section 550(a)(1) that the defendant was liable as the "party for whose benefit" the transfers at issue were made.   *Lancer*, 2011 U.S. Dist. LEXIS 342156, at *5-8.   The *Lancer* court found that like the subsequent transfer claim, the receiver's alternative pleading was made "without [] any supporting factual allegations" (*Id.* at *5), and rejected the receiver's argument that his claims should be permitted to go forward:

> As with his subsequent transferee theory, the Receiver contends that he should be permitted to take discovery before being required to set forth any factual basis for his legal conclusion that CGL was the entity for whose benefit the transfers were made.   Since the [complaint] does not make any factual allegations that might raise a reasonable expectation that discovery will reveal evidence in support of his claims, the Court will not allow the Receiver to pursue discovery to find out if a fraudulent transfer claim exists.

*Id.* at *7-8.   The Court here should follow the example set by *Lancer* and should dismiss the Trustee's baseless claims.

The Trustee also argues that his attempt to hold Subsequent Transferee Defendants liable under Section 550(a)(1) should be permitted because he "is not precluded from pleading in the

alternative." Tr. Br. at 37-38.  The Trustee confuses alternative pleading with adequate pleading.

Although parties are allowed to "plead in the alternative", parties are not allowed to assert claims

that are wholly speculative and lacking in factual detail merely because they are plead "in the

alternative".  Rather, all claims must meet the basic federal pleading requirements; mere

speculation does not satisfy the prerequisite of plausibility in a plaintiff's pleading.  *See Iqbal*,

556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### III.    APPLICABLE NON-BANKRUPTCY LAW PROTECTS TRANSFERS AND DISTRIBUTIONS FROM CERTAIN DEFENDANTS' ACCOUNTS AT BLMIS

The Trustee's claims to recover transfers from certain Defendants' IRAs and spendthrift

trusts must be dismissed because the BLMIS accounts were held in protected forms and the

related withdrawals are exempt under New York law.  CPLR 5205(c)(1) exempts spendthrift

trusts from execution by judgment creditors.  CPLR 5205(c)(2) and (3) expand the protection to

"all trusts, … monies, assets or interests established as part of, and all payments from"

retirements accounts qualified under provisions of the Internal Revenue Code.

The Trustee does not dispute that certain Defendants maintained IRA accounts at BLMIS.

Instead, he argues, based on a footnote in *Greiff,* that Defendants are not protected by CPLR

5205(c)(2) because "the exemption does not apply to 'additions to' the trust that are 'fraudulent

conveyances.'"  *Greiff*, 476 B.R. at 728 n.13.   But this exclusion applies only to fraudulent

conveyances that are avoidable under the New York Debtor and Creditor Law.  *See* CPLR

5205(c)(5).  After *Greiff,* the Trustee holds only federal fraudulent transfer claims under Section

548(a)(1)(A) of the Bankruptcy Code.[10]

---

[10]   Contrary to the Trustee's assertion that Defendants argue inconsistently with respect to the
state provisions (Tr. Br. at 38), Defendants read the plain language of the New York trust
exemption and the fraudulent transfer exception thereto in a manner that gives full effect to both
provisions according to their text.

Even if CPLR 5205(c)(5) was susceptible to Trustee's federal two-year claim, the plain language reaches only fraudulent *additions to the qualified accounts,* not withdrawals from such accounts. *See* CPLR 5205(c)(5) ("*Additions* to an asset … shall not be exempt from application to the satisfaction of a money judgment …." (emphasis added)). Moreover, a judgment creditor may reach the corpus of a protected account only when non-exempt assets were deposited for fraudulent purposes, of which there is no allegation here. *See Bayerische Hypo-und Vereinsbank AG v DeGiorgio*, 902 N.Y.S.2d 85, 86 (App. Div. 1st Dep't 2010); *Baker v. David A. Dorfman, P.L.L.C.*, 99 Civ. 9385, 2000 U.S. Dist. LEXIS 10142, at *25-26 (S.D.N.Y. July 20, 2000).

Finally, the CPLR's language protects both principal in and income received from a retirement account from the claims of creditors. The plain meaning of CPLR 5205(d)(1) (which the Trustee misreads) demonstrates that income from a protected trust or other protected account or plan is also protected. *See In re Hilsen*, 405 B.R. 49 (Bankr. E.D.N.Y 2009) (income from exempt trust is protected by CPLR 5202(d)(1)).[11]

---

[11]  If equitable considerations bear upon the treatment of the Trustee's claims, they would weigh heavily in favor of dismissal. Under the Internal Revenue Code, IRAs are subject to strict rules designed to encourage retirement savings. Generally, an IRA accountholder must pay a 10% tax penalty on withdrawals made before age 59-1/2. *See* 26 U.S.C. § 72(t). At that age, retirees may withdraw funds from an IRA without penalty. *Id.* at § 72(t)(2)(A)(i). Upon turning age 70-1/2, a retiree must take minimum distributions or suffer a 50% tax penalty on amounts that should have been withdrawn. *Id.* at §§ 401(a)(9)(C); 4974(a); *Individual Retirement Arrangements*, IRS Pub. 590 (2010) (available at http://www.irs.gov/pub/irs-pdf/p590.pdf). These provisions compel retirees to withdraw and use their retirement savings when they are needed most. The Trustee's attempt to recover mandatory IRA withdrawals will dramatically affect elderly customers who lost what they thought were their retirement savings based on innocent dealings with BLMIS, and who face repaying the money they were required to take with essentially no chance of replenishing their retirement savings.

## IV.    THE TRUSTEE FAILS TO ADEQUATELY PLEAD THE FACTUAL DETAILS OF PURPORTED INTER-ACCOUNT TRANSFERS

The Trustee's claims against numerous Defendants are affected by the Trustee's failure to credit the full amount of transfers from one BLMIS account to another.  In such situations, the Trustee apparently applies his Net Investment Method to the transferor account, identified only by its BLMIS account number, and only credits the Defendants' account with the portion of the transfer (if any) that is not composed of "fictitious profits".  However, the Trustee's process for performing this analysis is entirely opaque; the calculation is done entirely "off-stage", and is not set forth in the Complaints.  Although the Trustee has clearly calculated the cash-flow for these accounts, and therefore has this information readily available to him, his failure to set forth such details unfairly prejudices Defendants' ability to respond to his claims, and is cause for dismissal.

The Trustee tries to excuse this lack of detail with the same argument he used with regard to his claims against purported Subsequent Transferees:  the inter-account transfers at issue are "neither extensive or complicated", and the requisite information concerning the transferor accounts will be available in the discovery process.  Tr. Br. at 30.   Yet, to survive the threshold phase of litigation, he must meet his pleading burden before proceeding with discovery.  *See* Section II.A.3 above.

## V.    THE TRUSTEE'S COMPLAINT INADEQUATELY ALLEGES THE SPECIFIC TRANSFERS THAT HE SEEKS TO RECOVER FROM EACH DEFENDANT

Certain Defendants argued that the Trustee has failed to plead his claims with particularity because his Complaint names multiple defendants with multiple BLMIS accounts, but does not link any defendant to any specific alleged transfers from any specific accounts.  In response, the Trustee argues that there is no legal authority for the proposition that "the Trustee must file separate complaints for each and every account held by an individual and/or entity . . . " .  Tr. Br. at 30-31.

17

The Trustee's argument is a "straw man."  Defendants do not argue that the Trustee must file a separate complaint for each avoidance action defendant, or that the Trustee must file a separate complaint for each BLMIS account from which recoverable transfers were purportedly made.  The Trustee, of course, is free to file complaints which assert claims against more than one defendant, or that seek the recovery of transfers from more than one BLMIS account.  However, to the extent that the Trustee chooses to do so, in order to meet the pleading requirements of the Federal Rules of Civil Procedure, the Trustee must clearly identify the specific transfers for which each defendant is being sued.  The failure to identify the specific transfers for which each defendant is being sued renders it impossible for any individual defendant to understand the claims asserted against her and to prepare a defense to those claims.

Although the Trustee argues that his complaints follow "normal pleading conventions," he does not cite to any rule or case law in support of that assertion.  But there is ample case law to the contrary -- *i.e.*, that the Trustee is required to identify, with specificity, the particular transfers that he is seeking to avoid and recover from each defendant.  *See*, *e.g.*, *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *Hill v. Oria (In re Juliet Homes, LP)*, Case No. 09-ap-03429, 2010 Bankr. LEXIS 4826, at *65 (Bankr. S.D. Tex. Dec. 16, 2010) ("In a case involving multiple defendants, the party asserting the fraud claim must make specific allegations against each defendant."); *Forman v. Salzano (In re Norvergence, Inc.)*, 405 B.R. 709, 726 (Bankr. D.N.J. 2009) (in a fraudulent transfer action against multiple defendants, Rule 9(b) "requires plaintiffs to differentiate their allegations when suing more than one defendant … and inform each defendant separately of the allegations surrounding his alleged

participation in the fraud.") (citation omitted).  Because the Trustee's Complaint fails to do so, his Complaint must be dismissed.

## VI.    ANTECEDENT DEBT DEFENSES UNDER BANKRUPTCY CODE SECTION 548(C)

The Trustee argues that Judge Rakoff's October 15, 2013 *Antecedent Debt Decision*, and the Second Circuit's decision regarding "Net Equity", *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229 (2d. Cir. 2011), *cert. denied*, 133 S.Ct. 24 & 25 (2013) 654 F.3d 229 (2d. Cir. 2011) ("*Net Equity Decision*"), effectively dispose of Defendants' arguments relating to "antecedent debt" defenses under Bankruptcy Code Section 548(c).  On October 15, 2013, Judge Rakoff ruled on these issues in connection with motions to dismiss involving 299 actions that named hundreds of other similarly situated innocent transferee defendants. Specifically, Judge Rakoff ruled on "whether and how th[e] 'value' limitation [under 11 U.S.C. § 548(c)] applies in the context of [the Trustee's] avoidance and recovery actions." *Antecedent Debt Decision*, 499 B.R. at 416.  Defendants were not parties to those proceedings.

The *Antecedent Debt Decision* specifically rejected the notion that state and federal claims for rescission or damages that BLMIS customers may have had against BLMIS constitute "value" under 548(c) "as against the Madoff Securities customer property estate under SIPA." *See id.* at 422, 430.  Although this ruling may bind the Court here concerning this issue, Defendants believe that their arguments are nevertheless properly presented here so that they may preserve any rights to participate in any challenge to the rulings from the *Antecedent Debt Decision*.  The Trustee's citation to the Second Circuit *Net Equity Decision*, however, is of no moment as that decision involved relates to the claims process in the BLMIS SIPA proceeding. That decision does not address whether Defendants may have defenses under the Bankruptcy Code to the Trustee's claims.

## VII.    CONCLUSION

For the foregoing reasons, and those set forth in Defendants' moving briefs, Defendants respectfully request that the Court dismiss the Complaints in their entirety.

Dated:  March 17, 2014

Respectfully submitted,

s/ Matthew A. Kupillas

Matthew Gluck
Matthew A. Kupillas
Jennifer L. Young
Joshua E. Keller
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**SEEGER WEISS LLP**
Stephen A. Weiss
Parvin K. Aminolroaya
77 Water Street, 26th Floor
New York, NY 10005
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Defendants Listed on Exhibit A*
*Attached Hereto*

682194v.1

20

**ATTACHMENT A**

| Defendant(s)[12] | Docket No. | Antecedent Debt | Avoidance of Obligations | Intra-Account Transfers/Multiple Accounts | Subsequent Transfer Claims | IRA/Trust Distributions |
|---|---|---|---|---|---|---|
| Trust U/W/O Harriet Myers | 10-05401 | ✓ | ✓ | | | |
| Potamkin Family Foundation Inc. | 10-05069 | ✓ | ✓ | ✓ | | |
| Kathleeen Albert and Steven Braun in their capacity as Personal Representatives of the Estate of Gary Albert | 10-04966 | ✓ | ✓ | ✓ | ✓ | |
| Aspen Fine Arts Co., Melvin E. Knyper | 10-04335 | ✓ | ✓ | | ✓ | |
| Norton A. Eisenberg | 10-04576 | ✓ | ✓ | | | ✓ |
| John Denver Concerts, Inc. Pension Plan Trust; Harold A. Thau in his capacity as Trustee of the John Denver Concerts, Inc. Pension Plan Trust | 10-05089 | ✓ | ✓ | | | |
| Laurence E. Leif | 10-04601 | ✓ | ✓ | ✓ | | |

---

[12] Appendix C included with the Trustee's Memorandum of Law in Opposition to Defendants' Motions to Dismiss appears to indicate that certain of the Defendants (P. Charles Gabriele, Gerald Blumenthal, Richard Roth, and Jonathan Sobin) argued in their respective motions to dismiss that the Trustee failed to adequately plead fraudulent intent.  That is incorrect.  Although Defendants do not concede that the Trustee has adequately pled fraud, and reserve their right to assert at an appropriate point that the Trustee has not adequately pleaded or proved fraud, Defendants will not respond to that portion of the Trustee's opposition in this reply.  Furthermore, Appendix C the Defendants in *Picard* v. *Steven V.  Marcus Separate Property of the Marcus Family Trust, et al.*, 10-ap-04906, as defendants that "included a joinder provision in their individual motions in which they join arguments made in other motions to dismiss, filed by similarly-situated defendants in other BLMIS adversary proceedings."  The Trustee is incorrect.

| Defendant(s)[12] | Docket No. | Antecedent Debt | Avoidance of Obligations | Intra-Account Transfers/Multiple Accounts | Subsequent Transfer Claims | IRA/Trust Distributions |
|---|---|---|---|---|---|---|
| Harold A. Thau | 10-04901 | ✓ | ✓ | | | |
| Ruth E. Goldstein | 10-04725 | ✓ | ✓ | | | ✓ |
| Stephen Goldenberg | 10-04946 | ✓ | ✓ | | | |
| Estate of Ira S. Rosenberg; Delia Gail Rosenberg | 10-04978 | ✓ | ✓ | | ✓ | |
| Richard Roth | 10-05136 | ✓ | ✓ | ✓ | | ✓ |
| P. Charles Gabriele | 10-04724 | ✓ | ✓ | ✓ | | ✓ |
| Gerald Blumenthal | 10-04582 | ✓ | ✓ | ✓ | | ✓ |
| Steven V Marcus Separate Property of The Marcus Family Trust; The Marcus Family Limited Partnership; Steven V. Marcus, individually, and in his capacity as Trustee of the Steven V. Marcus Separate Property of the Marcus Family Trust, General Partner of the Marcus Family Limited Partnership and Guardian of O.M., K.M. and H.M; and Denise C. Marcus, in her capacity as Trustee of the Steven V. Marcus Separate Property of the Marcus Family Trust | 10-04906 | ✓ | ✓ | | ✓ | |

| Defendant(s)[12] | Docket No. | Antecedent Debt | Avoidance of Obligations | Intra-Account Transfers/Multiple Accounts | Subsequent Transfer Claims | IRA/Trust Distributions |
|---|---|---|---|---|---|---|
| William M. Woessner Family Trust; Sheila A. Woessner Family Trust; William M. Woessner individually and as Trustee of the William M. Woessner Family Trust and the Sheila A. Woessner Family Trust; Sheila A. Woessner, individually and as Trustee of the William M. Woessner Family Trust and the Sheila A. Woessner Family Trust | 10-04741 | ✓ | ✓ |  | ✓ | ✓ |
| Jonathan Sobin | 10-04540 | ✓ | ✓ | ✓ |  |  |