James H. Hulme (admitted *pro hac vice*)
Joshua A. Fowkes (admitted *pro hac vice*)
Arent Fox LLP
1717 K Street NW
Washington, DC 20036
(202) 857-6000
james.hulme@arentfox.com
joshua.fowkes@arentfox.com

George V. Utlik
Arent Fox LLP
1675 Broadway
New York, New York 10019
(212) 484-3900
george.utlik@arentfox.com

*Attorneys for Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

In re:

| | |
|---|---|
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | Adv. Pro. No. 08-01789 (SMB) |
| | SIPA LIQUIDATION |
| Debtor. | (Substantively Consolidated) |

-------------------------------------------------------- x

| | |
|---|---|
| IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-04865 (SMB) |
| EDWARD H. KAPLAN, *et al*., | |
| ELEVEN EIGHTEEN LIMITED | Adv. Pro. No. 10-04976 (SMB) |
| PARTNERSHIP, *et al*., | |
| ESTATE OF HERMEN GREENBERG, *et al*., | ADV. PRO. NO. 10-4998 (SMB) |
| 1776 K STREET ASSOCIATES LIMITED | |
| PARTNERSHIP, *et al*. | Adv. Pro. No. 10-5027(SMB) |
| Defendants. | |

-------------------------------------------------------- x

**ARENT FOX LLP DEFENDANTS' OMNIBUS
REPLY BRIEF IN SUPPORT OF MOTIONS TO DISMISS**

# TABLE OF CONTENTS

Page

I.    THE TRUSTEE CANNOT EXCUSE HIS INEXPLICABLE FAILURE —
      EVEN OVER FOUR YEARS AFTER MR. GREENBERG PASSED AWAY —
      TO SUBMIT A SIMPLE STATEMENT OF CLAIM TO MR. GREENBERG'S
      PERSONAL REPRESENTATIVES WHOM THE TRUSTEE KNEW HAD
      BEEN APPOINTED. ....................................................................................................1

      A.    The Personal Representatives Could Not Have Known of the Trustee's
            Claim. ...............................................................................................................2

      B.    The Trustee Knew of Mr. Greenberg's Death, the Appointment of His
            Personal Representatives, the Court Administering His Estate and the Case
            Number, and That the Trustee Was Required to Submit Timely Statements
            of Claim in Probate Matters as Local Law Mandates. ..........................................7

      C.    Because the Trustee Was Not a Known or Reasonably Ascertainable
            Creditor, the Personal Representatives Had No Ability — Much Less a
            Duty — to Send Him a Notice...........................................................................12

      D.    The Cases on Which the Trustee Relies Are Plainly Distinguishable.................13

      E.    The Trustee Is Not Entitled to Delay the Finality That the Estate Needs or
            to Add to the Estate's Expenses by Conducting Discovery in the Form of a
            Fishing Expedition................................................................................................15

II.   BECAUSE THE DISTRICT COURT'S RULINGS DO NOT BIND THIS
      COURT, THIS COURT SHOULD CONSIDER THE GROUNDS FOR
      DISMISSAL THAT THE DEFENDANTS RAISED IN THEIR MOTIONS TO
      DISMISS. .................................................................................................................15

CONCLUSION ....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*District of Columbia v. Gantt*,
558 A.2d 1120 (D.C. 1989) ........................................................................................... 14, 15

*In re Argo Commc'ns Corp.*,
134 B.R. 776 (Bankr. S.D.N.Y. 1991) .................................................................................. 16

*In re Bean*,
251 B.R. 196 (Bankr. E.D.N.Y. 2000), *aff'd*, 252 F.3d 113 (2d Cir. 2001) ............................ 4

*In re Estate of Monge*,
841 A.2d 769 (D.C. 2004) .................................................................................................... 14

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
160 B.R. 882 (Bankr. S.D.N.Y. 1993) .................................................................................. 16

*In re Jamesway Corp.*,
235 B.R. 329 (Bankr. S.D.N.Y. 1999) .................................................................................. 16

*In re Sinder*,
102 B.R. 978 (Bankr. S.D. Ohio 1989) .................................................................................. 5

STATUTES

D.C. Code Section 20-903(a) ...................................................................................... 1, 2, 11, 15

OTHER AUTHORITIES

Federal Rules of Evidence 201(b)(2) ............................................................................................ 8

Balancing Act: An Interview With Irving H. Picard, Madoff Trustee http://www.fraud-
magazine.com/article.aspx?id=4294967939 .................................................................. 5

Guidance on the Trustee's Pursuit of Avoidance Recoveries," available at
http://www.madoff-help.com/wp-
content/uploads/2009/05/picard_guidance_avoidance.pdf ........................................... 5

Letter From Stephen Harbeck at 2, available at http://www.investoraction.org/wp-
content/uploads/2011/02/SIPC_Garrett_Response_20110124.pdf ............................... 4

SIPC News Release, May 14, 2009, available at http://www.sipc.org/news-and-
media/news-releases/20090514 .................................................................................... 5

Defendants in Adversary Cases Nos. 10-04865, 10-04976, 10-4998, and 10-5027, all

represented by Arent Fox LLP, respectfully submit this Omnibus Reply Brief in support of their

Motions to Dismiss.

I.      **THE TRUSTEE CANNOT EXCUSE HIS INEXPLICABLE FAILURE — EVEN OVER FOUR
        YEARS AFTER MR. GREENBERG PASSED AWAY — TO SUBMIT A SIMPLE STATEMENT
        OF CLAIM TO MR. GREENBERG'S PERSONAL REPRESENTATIVES WHOM THE TRUSTEE
        KNEW HAD BEEN APPOINTED.**

Defendants in *Picard v. Estate of Greenberg, et al.* (Case No. 10-4998) submit this

section of this Omnibus Reply Brief to respond to the Trustee's arguments that his avoidance

claims are not barred by the statutory deadline in District of Columbia Code Section 20-903.

The Trustee admits that he failed to file a timely claim in the District of Columbia

Superior Court that is administering the Greenberg Estate.  His brief filed here fails to offer any

legally sufficient basis excusing his failure.  Therefore, the motion to dismiss should be granted:

- District of Columbia law required that a claim be filed against the
  Greenberg Estate "on or before October 1, 2010, or be forever barred."
  *See* Notice of Appointment, Mot. to Dismiss Am. Compl., Exhibit 3, ECF
  No. 22-4.

- The Trustee had actual knowledge of Mr. Greenberg's death and the
  probate proceedings because the Trustee's Complaint dated November 12,
  2010 went into great detail regarding the probate proceedings and named
  the three personal representatives, the trustees of four trusts, and twelve
  legatees as defendants.

- Even though the Trustee had actual knowledge of the Greenberg Estate
  probate before he finalized the November 2010 adversary proceeding, the
  Trustee failed to file the statutory required claim with the Estate, and this
  failure has continued to the present day.  By itself, the Trustee's continuing
  failure is fatal to his avoidance claim.

- The Trustee has recognized his obligation to file claims in estate
  proceedings, having done so in at least two other probate proceedings —
  one in Florida and one in Minnesota.

- Prior to filing the adversary proceeding against the Greenberg Estate, the
  Trustee was equivocal in his public statements regarding whether or not he
  would file claims against former Madoff customers, so the Personal
  Representatives could not have known that the Trustee was a creditor of
  the Estate entitled to notice of the proceedings.

- The Trustee sent "hundreds" of claim letters to potential defendants but never sent such a letter to Mr. Greenberg or the Greenberg Estate.

- The Trustee has insisted on strict compliance with the SIPC claims deadlines established in this proceeding. Equity requires that he be bound by the same strict approach to deadlines for claims that he files (or, as in this case, fails to file).

- Even if the Trustee was entitled to notice of the Greenberg Estate, the failure to give notice was harmless because the Trustee had actual knowledge of the Greenberg Estate and failed to file a claim.

In his Opposition, the Trustee tries to excuse his failure to submit a statement of claim to Mr. Greenberg's personal representatives before the District of Columbia's statutory deadline by arguing that two exceptions apply.

First, however, the Trustee is not entitled to rely on the alleged exceptions because the Trustee had actual knowledge of the Greenberg Estate and failed to file the required notice of claim. *See* D.C. Code Section 20-903(a) ("all claims against a decedent's estate … shall be barred … unless presented within 6 months after the date of the first publication of notice of the appointment of a personal representative."). That knowledge — coupled with his failure to file a claim — is fatal to his argument. Thus, the Court need not even concern itself with the alleged exceptions.

If the Court were to consider the judicially-created exceptions, the Trustee still cannot prevail because, as discussed below, neither exception applies. Thus, as a matter of law, the District of Columbia's statutory deadline bars his avoidance claims.

### A.    The Personal Representatives Could Not Have Known of the Trustee's Claim.

The Trustee argues that his failure to timely submit a statement of claim to Mr. Greenberg's personal representatives should be excused because one of them (Mr. John Schofield) supposedly knew of the Trustee's claim within the six-month period following the

publication of their appointment.  Opp'n at 50.  To raise this argument, the Trustee ignores the language of his own disclaimers, gives Mr. Schofield perfect 20-20 hindsight, and relies on the innocuous fact that Mr. Schofield helped prepare Mr. Greenberg's SIPC customer claim and that Mr. Schofield received a copy of the Notice of Trustee's Determination of Mr. Greenberg's SIPC claim.  *Id.* at 50-51.

But neither any help that Mr. Schofield may have provided in preparing the SIPC claim, nor his mere receipt of the Notice of Trustee's Determination shows that he could have known of a claim belonging to the Trustee.  To the contrary, Mr. Greenberg's SIPC claim and the Notice of Trustee Determination do not concern an avoidance claim held by <u>the</u> <u>Trustee</u>; rather, they concern a SIPC claim submitted by <u>Mr.</u> <u>Greenberg</u>.  *See* Am. Compl., ECF Docket No. 19-3, at Ex. C.  In particular, the Notice of Trustee's Determination repeatedly refers to "your claim" (*i.e.,* Mr. Greenberg's SIPC claim) for the balance on his Madoff account statements.  *Id.*  The Notice never includes any statement that could have given Mr. Schofield knowledge that the Trustee had a claim against Mr. Greenberg.

Furthermore, the Notice of Trustee's Determination shows uncertainty as to the Trustee's positions concerning Mr. Greenberg's SIPC claim.  In particular, it indicates that the Trustee's denial of Mr. Greenberg's SIPC claim was not final and could be reversed:

> Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order.

*Id.* at 2.[1]  This statement shows that the Trustee himself acknowledged that a court could reverse his interpretation of "net equity" and the Notice of Determination denying Mr. Greenberg's SIPC claim.  Thus, in addition to the fact that the Notice of Determination did not give Mr. Schofield actual knowledge of a claim by the Trustee, it also shows uncertainty in the SIPC claim process.

There are additional important reasons that the Notice of Determination could not have informed Mr. Schofield of a claim by the Trustee.  SIPC's President and Chief Executive Officer told Congress that "[i]t … must be ***emphasized that the customer's 'net equity' under SIPA will not necessarily govern a trustee's ability to bring avoidance actions.***"  *See* Letter From Stephen Harbeck at 2, available at http://www.investoraction.org/wp-content/uploads/2011/02/SIPC_Garrett_Response_20110124.pdf (emphasis added).  *See also id.* at 23 ("It is important to understand that as previously mentioned, the calculation of a customer's net equity and the trustee's use of avoidance powers are pursuant to separate statutory authority, and involve different concepts.").  Because SIPC itself underscored that the ability to file an avoidance action does not necessarily result from a customer with negative net equity, the Notice of Determination and statements about net equity could not have informed Mr. Schofield that the Trustee had an avoidance claim against Mr. Greenberg.

Likewise, the Notice of Trustee's Determination could not have established that the Trustee would assert a claim against Mr. Greenberg because of the Trustee's significant discretion as to whether to pursue avoidance actions.  A "trustee is under no mandatory duty to pursue and recover every transfer that might be avoidable" under the Bankruptcy Code.  *In re Bean*, 251 B.R. 196, 204 (Bankr. E.D.N.Y. 2000) (citation omitted), *aff'd*, 252 F.3d 113 (2d Cir.

---

[1]        As the Trustee notes, the net equity issue was hotly contested before this Court and other courts, and parties and amici filed over fifty briefs in response to the Trustee's motion for an order approving its net equity determination.  *See* Trustee's Fourth Interim Report, Case No. 08-1789, ECF No. 3083, at 7.

2001); *see also In re Sinder*, 102 B.R. 978, 984 (Bankr. S.D. Ohio 1989) ("The commencement

of litigation by a trustee or debtor-in-possession on behalf of an estate in bankruptcy under the

avoidance provisions is permissive and not mandatory . . . [a] trustee or debtor-in-possession has

a substantial degree of prosecutorial discretion to sue or not to sue.") (quoting *In re V. Savino Oil*

*& Heating Co.*, 91 B.R. 655, 656 (Bankr. E.D.N.Y. 1988)).  Here, the Trustee repeatedly stated

that he would apply that discretion.  For instance, the Trustee stated that "***[d]ecisions on whether***

***to pursue avoidance actions are within the discretion of the Trustee***," and "the decision on

whether to pursue a particular claim is made on an individual basis."  *See* "Guidance on the

Trustee's Pursuit of Avoidance Recoveries," available at http://www.madoff-help.com/wp-

content/uploads/2009/05/picard_guidance_avoidance.pdf (emphasis added).  He added that he

would "investigate, and, ***where appropriate***, go to court to recover from persons or entities who

received more than their fair share."  *See* SIPC News Release, May 14, 2009, available at

http://www.sipc.org/news-and-media/news-releases/20090514   Additionally, before he filed the

lawsuit against the Greenberg Defendants, the Trustee stated that he would "exercise compassion

with respect to the individual victims, especially when considering whether to commence

avoidance actions." *See* "Balancing Act: An Interview With Irving H. Picard, Madoff Trustee,"

available at http://www.fraud-magazine.com/article.aspx?id=4294967939  He also noted that he

"recognize[d] that many [net winners] are elderly, and have financial, medical and/or other

hardships or other issues that may affect collectability and thus must be taken into account. This

is an area that we are considering and in which we will exercise discretion."  *Id.*  Finally, he

stated that "many persons who received payments that would be recoverable by me pursuant to

avoidance actions are not in a position to pay anything back."  *Id*.  Because the Trustee

emphasized this significant discretion, Mr. Schofield could not have known that the Trustee

would submit a statement of claim to him, as local law required the Trustee to do and as the Trustee still has never done.

When asserting that Mr. Schofield knew of the Trustee's claim, the Trustee also emphasizes that the Notice of Trustee's Determination states that it should not be "construed as a waiver of any rights or claims held by the Trustee against" Mr. Greenberg. Opp'n at 51. But this boilerplate statement does not purport to establish or state a claim. It, perforce, cannot establish that Mr. Schofield knew of a claim. First, again, this statement appears in a Notice of Determination of Mr. Greenberg's claim for SIPC proceeds, not a document concerning the Trustee's avoidance claims against Mr. Greenberg. Second, this statement is merely a standard non-waiver disclaimer. Third, the Notice of Determination has a reciprocal general statement in favor of Mr. Greenberg: "[n]othing in [it] shall be construed as a waiver of any rights or claims held by [Mr. Greenberg] in having [his] customer claim re-determined." *See* Am. Compl. ECF No. 19-3 at Ex. C. For each of these reasons, this general disclaimer cannot establish that Mr. Schofield knew of a claim. As a result, the Trustee's claims are barred.

Additionally, when Mr. Greenberg submitted the SIPC claim on or around June 29, 2009 and when he received the Notice of Determination issued on August. 28, 2009, he was alive.[2] Thus, even if Mr. Schofield had seen these two documents, they would not have given him actual knowledge of the Trustee's claim because Mr. Greenberg could have paid or otherwise resolved any creditor's claims — including any supposed claim of the Trustee — before he passed away. Additionally, because Mr. Greenberg was still alive at the time that the Trustee sent the Notice of Determination, Mr. Schofield had not yet even been appointed as his personal representative.

---

[2]     The Trustee alleges that this SIPC claim was filed on or around June 29, 2009, that the Notice of Determination was issued on or around August 28, 2009, and that Mr. Greenberg passed away on February 28, 2010. *See* Am. Compl. at ¶¶ 7, 66-67.

Consequently, the SIPC claim and the Notice of Trustee's Determination could not have

provided Mr. Schofield with actual knowledge of Trustee's claim.

> **B.    The Trustee Knew of Mr. Greenberg's Death, the Appointment of His Personal Representatives, the Court Administering His Estate and the Case Number, and That the Trustee Was Required to Submit Timely Statements of Claim in Probate Matters as Local Law Mandates.**

Although the Trustee illogically speculates as to what Mr. Schofield knew based on only

two documents, the Trustee has it backwards: he obviously knew that Mr. Greenberg had passed

away because the Trustee filed this avoidance action not against Mr. Greenberg, but against his

estate, three personal representatives, the trustees of his four trusts, and twelve legatees.  In fact,

the Trustee's complaint thoroughly explains all of information that he had already amassed as of

November 12, 2010[3] (the date of his Complaint):

- Mr. Greenberg passed away on February 28, 2010 (Compl. at ¶7, ECF No.1);

- His estate "is being administered in the Superior Court of the District of Columbia, Probate Division under File Number 2010 ADM 000259" (*Id.*);

- "His Will was admitted to probate" (*Id.*);

- "Letters of Administration were issued to Defendant Beyda, Defendant Schofield, and Defendant Kirstein on March 23, 2010" (*Id.*);

- The personal representatives reside in Washington, D.C. and nearby in Maryland (*Id.* at ¶¶8-10);

- The personal representatives are trustees of four different trusts, all of which the Trustee specifically identifies and notes were established by Mr. Greenberg's Will (*Id.*); and

- There are twelve legatees under Mr. Greenberg's Will, and they live in various states identified by the Trustee (*Id.* at ¶¶ 11-14, 19-26).

Armed with all of this detailed information — particularly, the notice of Mr. Greenberg's

death and the appointment of the personal representatives — the Trustee certainly could have

---

[3]    This date appears beside the signature block on the Complaint.

submitted a simple statement of claim as the D.C. statute requires.  But, inexplicably, even four

years after Mr. Greenberg passed away, the Trustee has still never done so.  Instead, he

deliberately sat on his rights.  His own decision has barred his claims.

Not only did the Trustee know all of this detailed information, but he also knew that he

was required to file claims against estates consistent with state probate codes and in a timely

manner.  Indeed, eight days *before* he finalized the adversary Complaint against the Greenberg

Estate, the Trustee filed a Statement of Claim in a Florida court against a different estate.  *See*

Exhibit 1, Statement of Claim by Irving Picard Against Estate of Sylvia W. Lock, Circuit Court

for Palm Beach County, FL, Probate Division, Case No. 501010CP 00 4075.[4]  The Trustee even

retained special counsel "to appear in [that] probate proceeding" in Florida.  *See* Trustee's Mot.

for Order Approving Retention of Special Counsel, Case No. 08-1789, at 3, ECF No. 4004.

Similarly, in another estate proceeding in Minnesota, the Trustee filed a statement of

claim.  *See* Exhibit 2, Statement of Unsecured Claim by Irving H. Picard, *In Re Estate of Boyer

O. H. Palmer*, District Court for Fourth Judicial District Probate-Mental Health Division,

Hennepin County, Minnesota, Case No. 27-PAPR-13-1441.  He also retained special counsel

there, whom he noted had "***conducted research and provided an analysis to [the] Trustee

regarding proceedings against deceased defendants***."  *See* Application of Kelley, Wolter &

Scott as Special Counsel for Allowance of Interim Compensation, Case No. 08-1789, at 2, ECF

No. 5583 (emphasis added).

These probate cases show that the Trustee knew he was required to comply with local

probate law and submit statements of claim on time as the law requires.  And, the Trustee's

acknowledgement of his obligation to comply with estate claims procedures makes his failure to

---

[4]        Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, Defendants request that this Court judicially
notice Exhibits 1 and 2 because they "can be accurately and readily determined from sources whose accuracy cannot
reasonably be questioned."

submit a simple statement of claim to Mr. Greenberg's personal representatives even more inexcusable.

As noted above, perhaps the most glaring aspect of the Trustee's failure to submit a statement of claim is his timing. He filed a Statement of Claim against another estate in a Florida probate court on November 4, 2010, ***eight days before*** the date of his Complaint against Mr. Greenberg's Estate (November 12, 2010). This timing shows that the Trustee knew of his duty to submit a statement of claim in the manner and by the deadline required by District of Columbia law <u>before</u> he finalized his Complaint for this Court.

Just as the Trustee has participated in litigation in domestic probate courts, he has also done so in courts around the country and around the world. As of the statutory deadline to submit a statement of claim to Mr. Greenberg's personal representatives (October 1, 2010), the Trustee noted that he had already participated in investigations and lawsuits in at least a dozen foreign countries. *See* Trustee's Fourth Interim Report, Case No. 08-1789, at 21, ECF No. 3083. In particular, he stated that his "international investigation and recovery of BLMIS estate assets involves … (ii) becoming involved where appropriate, whether by appearance in a foreign court or otherwise …; and (iii) bringing actions before U.S. and foreign courts and government agencies to recover customer property …." *Id.*[5] The Trustee emphasized that he would continue to seek approval to hire foreign counsel "to investigate and represent him ***wherever estate assets may be found across the globe***." *Id.* at 22 (emphasis added). Given the Trustee's exhaustive

---

[5]     Near the deadline to submit a statement of claim to Mr. Greenberg's personal representatives, the Trustee had supported his exhaustive efforts by retaining foreign counsel to represent him and the Madoff estate in foreign proceedings, was "monitoring and/or participating in over 271 pending and eighty-seven potential international third-party proceedings," and had issued eighty subpoenas in twenty jurisdictions. *Id.* at 22. His efforts were equally extensive throughout the United States. Near the deadline to submit a statement of claim to Mr. Greenberg's personal representatives, the Trustee stated that he was monitoring "at least 195" cases "filed in state and federal courts across the country" to which he was not a party where third parties alleged that they had suffered damages from Madoff's Ponzi scheme. *Id.* at 19.

and worldwide efforts, his failure to submit a timely claim to Mr. Greenberg's personal representatives who he knows reside only a handful of miles from his Washington, D.C. office and his failure to follow the simple but mandatory statutory scheme for probate matters there should not be excused.

The Trustee's failures are not only inexcusable, but are also remarkably ironic.  When the shoe was on the other foot, he insisted that SIPC claims filed by Madoff customers are governed by SIPC's own statutory claims bar:

> "The **mandatory statutory bar date** for filings claims under section 78fff-2(a)(3) of SIPC was July 2, 2009. **Any claims that are received after July 2, 2009 will be deemed untimely and will not be allowed**.  Each claimant was specifically advised of the statutory bar date in the claims materials … on the Trustee's and SIPC's websites.  The Notice published in the newspapers, mailed to claimants and posted on the websites, stated in boldface that '**[n]o claims of any kind will be allowed unless received by the trustee within six (6) months after the date of this Notice**.'  In the Instructions for completing a Customer Claim form, the Trustee stated in boldface that '**[t]he law governing this proceeding absolutely bars the allowance of any claim, including a customer claim, not actually received by the trustee on or before July 2, 2009.  Neither the Trustee nor SIPC has authority to grant extensions of time for filing of claims, regardless of the reason.  If your claim is received even one day late, it will be disallowed**.'"

First Interim Report, Case No. 08-1789, at 19-20, ECF No. 314 (emphasis added).[6]

Likewise, although the Trustee failed to submit a claim to try to recover Mr. Greenberg's assets through the claims process set forth under District of Columbia law, when the shoe was on the other foot, the Trustee insisted that Madoff customers could "**only recover through the customer claims process set forth in**" SIPC.  Trustee's Am. Third Interim Report, Case No. 08-1789, at 55, ECF No. 2207.  *See also* Trustee's Reply in Supp. of Mot. to Dismiss, *Rosenman*

---

[6]    Similar to the claims process governing Mr. Greenberg's estate, this Court issued an Order regarding claims procedures that, among other things, directed that "the bar date for all claims is six (6) months from the date of publication of Notice and mailing that complies with" notice requirements.  *See* Order of December 23, 2008, Case No. 08-1789 at 7, ECF No. 12.  The Trustee often applied that bar date. He stated that, as of October 31, 2009, he had "received 67 untimely filed customer claims."  Trustee's Second Interim Report, Case No. 08-1789 at 28, ECF No. 1011.  Similarly, he stated that, as of October 31, 2010 he had received sixteen untimely "filed secured, priority and unsecured non-priority general claims."  *See* Trustee's Fourth Interim Report at 12.

*Family LLC v. Picard, et al*., Adv. No. 09-1000, at 2, ECF No. 16 (asserting that the Madoff

customer "is not entitled to recover its deposit outside the statutory scheme established under"

SIPA);  Trustee's Memo. of Law in Supp. of Mot. to Dismiss, *Rosenman Family LLC v. Picard,*

*et al*., Adv. No. 09-1000 at 7, ECF No. 12 ("The policy of equal treatment is thwarted if [the

Madoff customer] is allowed to pursue this adversary proceeding separate from the claims

process approved by this Court."); Trustee's Third Interim Report, Case No. 08-1789, at 56-57,

ECF No. 2186 (noting that in response to another complaint that Madoff customers filed against

him, the Trustee moved to dismiss it on the grounds that customers had "failed to adhere to the

Claims Procedures Order."); Trustee's Memo. of Law in Supp. Mot. to Dismiss, *Hadleigh*

*Holdings LLC v. Picard, et al*., Adv. No. 09-1005, at 2, 12, ECF No. 8-2 (contending that "the

appropriate redress available to [the Madoff customer] is the same that is available to all

customers of BLMIS: the filing of a customer claim and satisfaction of that claim pursuant to the

statutory mandates of SIPA" and that "this Court should reject [the Madoff customer's] efforts to

circumvent the SIPA statutory framework.").  Just as the Trustee adamantly insisted that the law

required Madoff customers to seek distributions from the Madoff estate by filing claims under

SIPA's statutory scheme and by SIPA's mandatory statutory deadline, the Madoff Trustee

should be held here to that same important principle: he was required to pursue a claim against

the Greenberg Estate by submitting a statement of claim under the District of Columbia's

statutory scheme and by the mandatory statutory deadline of D.C. Code Section 20-903(a).  His

failure to do so bars his claims.

For all of these reasons, rather than considering the Trustee's unfounded *ex post facto*

speculation about what Mr. Schofield knew, this Court should dismiss his claims.

11

**C.    Because the Trustee Was Not a Known or Reasonably Ascertainable
Creditor, the Personal Representatives Had No Ability — Much Less
a Duty — to Send Him a Notice.**

Searching for an excuse as to why he never submitted a statement of claim before the
long-ago expired statutory deadline, the Trustee complains that he was a "known or reasonably
ascertainable" creditor to whom the personal representatives were required to send a notice of
their appointment.  Opp'n at 49-50.

But, again, the Trustee's complaint must fall on deaf ears: having amassed all of the
detailed information recited above, he obviously knew all of the information necessary to file a
simple probate claim.  But, inexplicably, he has still never filed a claim as the District of
Columbia statute requires.  Instead, he simply slept on his rights.  Because he knew all of this
information — particularly, the notice of Mr. Greenberg's death and the appointment of the
personal representatives — the Trustee cannot turn back the clock and blame them for failing to
notify him of their appointment.  Rather, he can blame only himself.

Putting aside the Trustee's attempt to reproach the personal representatives, the Trustee's
contention that he was a known or reasonably ascertainable creditor is false.  First, he never
alleges in the Complaint or the Amended Complaint that he was a known or reasonably
ascertainable creditor.  Second, the general, standard information on the SIPC claim and the
Notice of Determination, as already discounted above, could not have enabled Mr. Schofield to
ascertain that the Trustee was a creditor.  Third, the Trustee never points to other information —
much less information that was public at the time that the personal representatives were required
to notify creditors of their appointment — that would have enabled the personal representatives
to ascertain that the Trustee was a creditor.  Indeed, to the contrary — the Trustee's public
statements were equivocal and, if anything, would create substantial doubts as to whether or not
he himself considered that he had a claim.

12

Similarly, the Trustee never indicated — and certainly never informed Mr. Greenberg or his personal representatives — that he had claims against Mr. Greenberg or that he would sue every net winner.  In a report dated October 29, 2010 (one month after the deadline to submit a statement of claim to Mr. Greenberg's personal representatives and nearly twenty-three months after the Trustee's appointment), the Trustee stated that he had sent "hundreds of letters to [individuals, funds, banks] and similar entities, informing them that they may be in possession of BLMIS Customer Property and demanding its return."  *See* Trustee's Fourth Interim Report at 19. Critically, however, the Trustee never contends—nor can he—that he sent any letter to Mr. Greenberg or any of his three personal representatives or otherwise informed them that he had a claim against Mr. Greenberg.  The absence of this kind of letter further supports the fact that the personal representatives lacked the ability to reasonably ascertain that the Trustee supposedly had a claim.

Finally, in that same report, the Trustee also stated that he had at that time filed only "nineteen avoidance actions against people and entities who withdrew funds from their BLMIS accounts."  *Id.* at 19.  And, even in that report so close to date of his Complaint against the Greenberg Defendants, the Trustee did not state that he would file avoidance actions against all net winners, or all net winners except for those net winners who had suffered demonstrable hardship.

All of this information shows that the personal representatives could not reasonably ascertain that the Trustee was a creditor.  As a result, his claims are time-barred.

**D.     The Cases on Which the Trustee Relies Are Plainly Distinguishable.**

None of the cases that the Trustee cited support his contention that Mr. Schofield knew of the Trustee's claims before the statutory deadline or that the Trustee was a known or reasonably ascertainable creditor.  In fact, in all of the cases, the personal representatives admitted that they

had actual knowledge of claims or a claim was filed long before the deadline, but they raised a

technical objection to the claim.  Here, the personal representatives did not have actual

knowledge of the Trustee's claim and, moreover, no claim was ever filed with the Estate.  Thus,

the cases are plainly distinguishable.

For instance, in *In re Estate of Monge*, the parties *agreed* that the personal representative

knew of the claims of 106 creditors because *he had already recognized those same claims* in his

capacity as executor of that same estate in Puerto Rican probate proceedings.  *In re Estate of*

*Monge*, 841 A.2d 769, 774 (D.C. 2004).

*In re Estate of Phillips* is equally distinguishable. 532 A.2d 654 (D.C. 1987). There, the

court concluded that the personal representative knew of a creditor's claim because the creditor

(a lawyer) had sent *a bill showing specific fees for legal services* to counsel for the personal

representative and to counsel for the estate before the nonclaim statute's deadline.  *Id.* at 654-55.

The court also emphasized that the estate had even agreed that it "would owe the amount billed if

the claim had been properly filed" and "no one dispute[d] the merits of" the claim."  *Id.* at 655,

656.

Finally, *District of Columbia v. Gantt* concerned a creditor that had filed its claim *too*

*early — before* the notice of appointment had even been published and *before* the personal

representative had even been appointed.  *District of Columbia v. Gantt*, 558 A.2d 1120, 1122

(D.C. 1989).

Thus, all of these cases have unique circumstances that led the court to easily conclude

that the personal representatives actually had notice of a claim before the statutory deadline.  In

contrast, here, the SIPC claim and the Notice of Trustee's Determination could not have

provided Mr. Schofield with knowledge that even remotely approaches the knowledge of the

personal representatives in those cases.  As a result, these cases on which the Trustee relies do not excuse his failure to submit a timely claim.

### E. The Trustee Is Not Entitled to Delay the Finality That the Estate Needs or to Add to the Estate's Expenses by Conducting Discovery in the Form of a Fishing Expedition.

Finally, the Trustee contends that his claims should not be dismissed because he is entitled to seek discovery, which he never identifies.  But that contention is designed to distract this Court from the central issue: the Trustee's own inexplicable failure to use all of the information that he had already collected to timely file a claim as required by the nonclaim statute.  The Trustee is not entitled to prolong this case with pointless discovery that will force innocent victims of Madoff's crimes to incur still more costs and expenses and to further delay closing Mr. Greenberg's estate, particularly where the Trustee has never filed the simple probate statement of claim that the law requires.  The "main purpose of [D.C. Code Section 20-903] is to establish finality in the assertion of claims so that a personal representative can decide claims and distribute the estate with reasonable dispatch."  *Gantt*, 558 A.2d at 1123.  Instead of permitting the Trustee to proceed on a fishing expedition for discovery that cannot excuse his own decision to sit on his rights, this Court should conclude that the statutory deadline bars his claims as a matter of law and dismiss them.

### II. BECAUSE THE DISTRICT COURT'S RULINGS DO NOT BIND THIS COURT, THIS COURT SHOULD CONSIDER THE GROUNDS FOR DISMISSAL THAT THE DEFENDANTS RAISED IN THEIR MOTIONS TO DISMISS.

Defendants in *Picard v. Kaplan, et al.* (Case No. 10-4865), *Picard v. Eleven Eighteen Limited Partnership, et al.* (Case No. 10-4976), *Picard v. Estate of Greenberg, et al.* (Case No. 10-4998), and *Picard v. 1776 K Street Associates Limited Partnership, et al.* (Case No. 10-5027) submit this section of this Omnibus Reply Brief in response other portions of Trustee's Opposition to Their Motions to Dismiss and to SIPC's Opposition to Their Motion to Dismiss.

In their Motions to Dismiss, Defendants argued that the Trustee's claims should be dismissed because (1) this Court lacks subject matter jurisdiction to decide the claims at issue with finality and the authority to issue findings of fact and conclusions of law, (2) the transfers at issue cannot be avoided because they were not transfers of an interest of the debtor in property, (3) the transfers at issue cannot be avoided because they were transfers to creditors to satisfy an antecedent debt, and (4) the Trustee cannot avoid the obligations at issue.

The Trustee and SIPC oppose those arguments primarily by pointing out that the District Court has rejected some of those arguments when defendants in other avoidance actions raised them.[7]  *See e.g.*, Trustee's Opp'n, Case No. 2010-5027 at 14-15, 22, ECF No. 32.  But this Court has ruled that "where [a] bankruptcy court sits in a multi-judge district, it is not bound by principles of stare decisis by the decision of a district judge in that district." *In re Jamesway Corp.*, 235 B.R. 329, 336, n.1 (Bankr. S.D.N.Y. 1999); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 160 B.R. 882, 898 (Bankr. S.D.N.Y. 1993); *In re Argo Commc'ns Corp.*, 134 B.R. 776, 786 n.9 (Bankr. S.D.N.Y. 1991) (concluding that bankruptcy court was "not bound by stare decisis to follow [district court judge's] opinion because it emanates from a single-district Judge in a multi-Judge district."). For instance, in *In re Finley, Kumble, Wagner,* the court reasoned that it was "not bound by one bankruptcy judge's or one district court judge's decision in a multi-judge district." 160 B.R. at 898.  It added that "[a] bankruptcy judge, like a district court judge, is free to reexamine an issue despite the existence of a prior decision of another judge in the same district unless, by chance or otherwise, all judges in his or her district have ruled consistently on the same issue, or the Circuit or Supreme Court has so held." *Id*.  Thus, the District Court's rulings that the Trustee recites in his Opposition do not

---

[7]         Defendants raised these arguments before the District Court rejected them.

bind this Court.  As a result, the Trustee's heavy reliance on them misses the mark, and this Court should consider these issues.

Defendants and scores of other defendants in these avoidance actions have already extensively briefed these issues.  Thus, Defendants hereby incorporate and adopt the arguments as to those issues found in the previous briefing and the reply briefs submitted by other defendants.

## CONCLUSION

The Trustee knew of the Greenberg Estate and, for whatever reason, decided not to file a claim in the Estate proceedings. His failure continues today. Thus, under the law, the Trustee's claims against the defendants in that case are "forever barred."

Additionally, for the other reasons discussed above, all of the claims in each case should be dismissed.

Dated: New York, NY
   March 17, 2014

ARENT FOX LLP
Counsel for Defendants


By:  */s/ George V. Utlik*
   George V. Utlik
   Arent Fox LLP
   1675 Broadway
   New York, New York 10019
   (212) 484-3900
   george.utlik@arentfox.com

   James H. Hulme
   Joshua A. Fowkes
   ARENT FOX LLP
   1717 K Street NW
   Washington, DC 20036
   (202) 857-6000
   hulme.james@arentfox.com
   fowkes.joshua@arentfox.com

## REQUEST FOR SEPARATE HEARING

Because of the unique defense under District of Columbia law raised by Defendants in *Picard v. Estate of Greenberg, et al*. (Case No. 10-4998), they respectfully request a hearing separate from any hearing on the issues common to defendants in other adversary cases.