Lax & Neville LLP
1450 Broadway, 35th Floor
New York, New York 10018
Telephone: (212) 696 – 1999
Facsimile: (212) 566 – 4531

*Attorneys for Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | |
| | : | SIPA LIQUIDATION |
| Plaintiff-Applicant, | : | No. 08-01789 (BRL) |
| | : | |
| v. | : | |
| | : | |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------------X

| | |
|---|---|
| In re: | : |
| | : |
| BERNARD L. MADOFF, | : |
| | : |
| Debtor. | : |

-------------------------------------------------------------X

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation Of Bernard L. Madoff Investment Securities LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| VARIOUS DEFENDANTS REPRESENTED BY LAX & NEVILLE LLP THAT ARE LISTED IN FOOTNOTE 1, | : |
| | : |
| Defendants. | : |

-------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………i

PRELIMINARY STATEMENT………………………………………………………1

ARGUMENT……………………………………………………………………...5

I.    Judge Rakoff Ruled That Section 546(e) Bars The Trustee's Avoidance
      Claims Other Than Those Brought Under Section 548(a)(1)(A)…..………………..…………...5

II.   The Trustee Cannot Avoid The Transfers To Defendants Since They Satisfied An
      Antecedent Debt As They Were Made For Value And In Good Faith...………………...………7

      A.    The Trustee Is Unable To Avoid Transfers Made For Value……………………..8

      B.    Customers Held Damages Claims Against BLMIS……………………………...8

      C.    The Complaint Fails To Allege Sufficient Facts Regarding Transfers
            From Other BLMIS Accounts………………………..………................................14

III.  The Complaint Fails To Allege Sufficient Facts Regarding Subsequent Transferees……….16

IV.   Non-Bankruptcy Law Protects IRA Account Transfers………….………………….…………17

      CONCLUSION………………………………………………………………….…………18

# TABLE OF AUTHORITIES

## CASES

*105 East Second St. Assocs. Vs. Bobrow*
    175 A.D.2d 746, 747 (N.Y. App. Div. 1991)……………………………………………12

*Am. Gen. Ins. Co. vs. Equitable Gen. Co.*
    493 F.Supp. 721, 767-68 (E.D. Va. 1980)…………………………...…………….11

*Appointed Receiver of Lancer Offshore, Inc. vs. Citgo Group Ltd.*
    2011 U.S. Dist. LEXIS 34256 (S.D. Fla. Mar. 30, 2011)………………………………..17

*Assured Guar. (UK) Ltd. vs. J.P. Morgan Inv. Mgmt. Inc.*
    18 N.Y.3d 341, 351 (N.Y. 2011)……………………………………………..…………12

*Atlanta Shipping Corp. vs. Chemical Bank*
    818 F.2d 240, 249 (2d Cir. 1987)……………………………………….…………8

*Balaber-Strauss vs. Lawrence*
    264 B.R. 303, 308 (S.D.N.Y. 2001)………………………………………...…………..8

*Big Apple Car, Inc. vs. City of New York*
    204 A.D.2d 109, 110-11 (N.Y. App. Div. 1994)………………………...…………13

*Daly vs. Deptula (In re Carrozzella & Richardson)*
    286 B.R. 480, 491 (D. Conn. 2002)…………………………………...…………13

*DeLong Corp. vs. Morrison-Knudsen Co., Inc.*
    20 A.D.2d 104, 107 (N.Y. App. Div. 1963)…………………………………………11

*Donovan vs. Bierwirth*
    754 F.2d 1049, 1056 (2d Cir. 1985)……………………………………….…………12

*Enron Creditors Recovery Corp. vs. Int'l Fin. Corp.*
    338 B.R. 489, 490 (S.D.N.Y 2008)……………………………………………...………16

*Enron Creditors Recovery Corp. vs. JP Morgan Sec.*
    407 B.R. 17, 33 (Bankr. S.D.N.Y. 2009)......................................................4,17

*Flamm vs. Noble*
    296 N.Y. 262 (N.Y. 1947)……………………………………………..……..12

*Gelles vs. TDA Indus., Inc.*
    44 F.3d 102, 104 (2d Cir. 1994)………………………………………………15

*Grippo vs. Perazzo*
  357 F.3d 1218, 1223-24 (11th Cir. 2004)……………………………………………..10

*HBE Leasing Corp. vs. Frank*
  48 F.3d 623, 639 (2d Cir. 1995)……………………………………………...………8

*In re Baker & Getty Fin. Servs., Inc.*
  106 F.3d 1255, 1262 (6th Cir. 1997)……………………………………………………6

*In re Bernard L. Madoff Inv. Sec. LLC*
  458 B.R. 87, 106 (Bankr. S.D.N.Y. 2011)…………………………………………....7

*In re Bernard L. Madoff Inv. Sec., LLC*
  654 F.3d 229, 236 (2d Cir. 2011)……………………………………………………...10

*In re Enron Corp.*
  343 B.R. 75, 84 (Bankr. S.D.N.Y. 2006)…………………………………………...17

*In re Keil*
  88 F.2d 7, 8 (2d Cir. 1937)……………………………………………………………18

*In re Kindsley*
  2007 WL 1491188, at *3 (Bankr. S.D. Fla. May 17, 2007)……………………..……15

*In re UBS Auction Rate Sec. Litig.*
  2009 LEXIS 26385, at *13 (S.D.N.Y. 2009)……………………………………………11

*In re World Vision Envt'l, Inc.*
  275 B.R. 641, 658 (Bankr. M.D. Fla. 2002)…………………………………………..13

*J.K.C. vs. T.W.C.*
  2013 N.Y. Misc. LEXIS 813, at *12 (N.Y. Sup. Ct. Feb. 28, 2013)………………17-18

*Lowenbraun vs. L.F. Rothschild*
  685 F.Supp. 336, 343 (S.D.N.Y. 1988)………………………………………………12

*Merrill Lynch Pierce, Fenner & Smith vs. Dabit*
  547 U.S. 71, 85 n.10 (2006)……………………………………………………...……10

*Morgan vs. Gordon*
  450 B.R. 402, 405 (W.D.N.Y. 2011)…………………………………………………18

*Nathel vs. Siegal*
  592 F. Supp. 2d 452, 464 (S.D.N.Y. 2008)……………………………………..…10,11

*Orlick vs. Lozyak (In re Fin. Federated Title & Trust, Inc.)*
          309 F.3d 1325, 1332-33 (11th Cit. 2002)……………………………………...……13

*Pani vs. Empire Blue Cross Blue Shield*
          152 F.3d 67, 74 (2d Cir. 1998)……………………………………………………8

*Picard vs. Greiff*
          476 B.R. 715……………………………………………………………...…*passim*

Picard vs. Katz et al.
          462 B.R. 447……………………………………………………………..*passim*

*Rolf vs. Bylth, Eastman Dillon & Co., Inc.*
          637 F.2d 77, 87 (2d Cir. 1980)………………………………………….…11,12

*Savino vs. E.F. Hutton & Co., Inc.*
          507 F.Supp. 1225, 1239-40 (S.D.N.Y. 1981)………………………...……15

*Scheve vs. Clark*
          596 F.Supp. 592, 594 (E.D. Mo. 1984)…………………………………………11

*Sharp Int'l Corp. vs. State St. Bank & Trust Co. (In re Sharp Int'l Corp)*
          403 F.3d 43, 54 (2d Cir. 2005)……………………………………………8

*Wolf vs. Rand*
          258 A.D.2d 401, 403-04 (N.Y. App. Div. 1999)……………………………..…12

*Zeller vs. Bogue Elec. Mfg. Corp*
          476 F.2d 795, 803 (2d Cir. 1973)…………………………………………...……12

## **STATUTE**

11 U.S.C. § 544……………………………………………………………………5

11 U.S.C. § 546(e)………………….. …………………………………………..1,5,6,7

11 U.S.C. § 547……………………………………………………………..…….5

11 U.S.C. § 548(c)………………………………………………………….*passim*

11 U.S.C. § 548(a)(1)(A)……………………………………………………1,2,5,6,7

11 U.S.C. § 548(a)(1)(B)………………………………………………….…..5

11 U.S.C. § 548(d)(2)(A)………………………………………………………8,10

11 U.S.C. § 550(a)…………………………………………………………...…*passim*

15 U.S.C. § 78bb(a)(2)……………………………………………………………9,12

15 U.S.C. § 78bbbb…………………………………………………………………..9

15 U.S.C. § 78cc(b)………………………………………………………….....3,11

15 U.S.C. § 78fff-2(c)(3)…………………………………………………….13,14

15 U.S.C. § 78lll(2)………………………………………………………....2,9

15 U.S.C. § 77l(a)(2)……………………………………………….…..3,11,12

17 C.F.R. § 300.501(b)……………………………………………………………10

N.Y. C.P.L.R. § 5001(a)……………………………………………………12

N.Y. C.P.L.R. § 5004…………………………………………………………12

N.Y. C.P.L.R. §5025……………………………………………………..…18

N.Y. C.P.L.R. §5205(c)(2)…………………………………………………18

NYUCC §§ 8-102(a)(9)(i)……………………………………………….....9

NYUCC §§ 8-501(b)……………………………………………………….9

NYUCC §§ 8-501(c)……………………………………………………….9

NYUCC § 8-503 cmt. 2…………………………………………………..9,10

## OTHER

Collier on Bankruptcy, § 548.11[1][a][2]………………………………….……15

Federal Rules of Civil Procedure and Bankruptcy Rule 7012(b)(6)…………..………….............1

RESTATEMENT (SECOND) OF TORTS, § 847 cmt. B……………………………………………12

Defendants[1] respectfully submit this omnibus reply memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Bankruptcy Rule 7012(b)(6), to dismiss the Trustee's Complaint ("Trustee's Complaint") brought by Irving H. Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff ("Madoff") Investment Securities LLC ("BLMIS") for failure to state a claim for which relief can be granted.

## PRELIMINARY STATEMENT

Defendants are entitled to dismissal of the Trustee's Complaints and/or Amended Complaints[2] as a matter of law, which seeks to recover fraudulent transfers based upon federal and state securities laws and the Bankruptcy Code.

In the April 30, 2012 Opinion and Order in *Picard vs. Greiff*, 476 B.R. 715, as well as its Opinion and Order in *Picard vs. Katz et al.*, 462 B.R.447, dated Sept. 27, 2011, Judge Rakoff held that the safe harbor provisions of § 546(e) limits the Trustee's avoidance power to only those transfers made during the two (2) years prior to the bankruptcy filing. Therefore, since § 546(e) limits the Trustee's ability to avoid transfers made outside of the two (2) years prior to the bankruptcy filing, the only fraudulent transfer claims that remain against Defendants are the fraudulent transfer claims under §§ 548(a)(1)(A) and 550(a).

---

[1] Lax & Neville LLP respectfully submits this omnibus reply memorandum of law in the following adversary proceedings on behalf of all named defendants, unless otherwise specified: Picard vs. The Abbit Family Trust et al. – Adv. Pro. No. 10-4647; Picard vs. Freida Bloom – Adv. Pro. No. 10-4301; Picard vs. Elinor Freidman Felcher – Adv. Pro. No. 10-5036; Picard vs. John Fujiwara and Gladys Fujiwara – Adv. Pro. No. 10-4289; Picard vs. Madeline Gins Arakawa et al. – Adv. Pro. No. 10-4827; Picard vs. Bruce Jaffe et al. – Adv. Pro. No. 10-4655; Picard vs. Ruth Kahn – Adv. Pro. No. 10-4954; Picard vs. Bonnie J. Kansler – Adv. Pro. No. 10-4900; Picard vs. Fairfield Pagma Associates, LP – Adv. Pro. No. 10-5169; Picard vs. Stephen Kaye et al. – Adv. Pro. No. 10-4756; Picard vs. Frances Le Vine et al. – Adv. Pro. No. 10-5246; Picard vs. Bruce Leventhal et al. – Adv. Pro. No. 10-4573; Picard vs. Armand Lindenbaum – Adv. Pro. No. 10-4481; Picard vs. Livingston – Adv. Pro. No. 10-4881; Picard vs. Lanny Rose et al. – Adv. Pro. No. 10-5160; Picard vs. Elinor Solomon – Adv. Pro. No. 10-4304; Picard vs. Howard Solomon – Adv. Pro. No. – 10-4307; Picard vs. Onesco International, Ltd et al. – Adv. Pro. No. 10-4966 (only on behalf of Robin Geoffrey Swaffield); Picard vs. David Wallenstein – Adv. Pro. No. 10-4467; Picard vs. Wallenstein/NY Partnership et al. – Adv. Pro. No. 10-4988; Picard vs. Estate of Armand Greenhall – Adv. Pro. No. – 10-5048 (only on behalf of Peng Yan).

[2] In certain of the above referenced adversary proceedings the Trustee filed a Complaint, and in others the Trustee filed an Amended Complaint. For the purpose of this omnibus reply memorandum of law, the Trustee's Complaints and/or Amended Complaints will be collectively referred to as "Complaint."

The Trustee's Complaint fails to state a fraudulent conveyance claim since it seeks to avoid transfers pursuant to §§ 548(a)(1)(A) and 550(a) allegedly received by Defendants which cannot be avoided since they were made by BLMIS for value to satisfy an antecedent debt and in good faith.  Section 548(c) provides Defendants with a defense against the avoidance of an alleged fraudulent transfer if it was made "for value" and in "good faith."  Since Defendants were good faith customers of BLMIS and executed securities contracts with BLMIS they are legally entitled to the transfers that discharged BLMIS's obligations to Defendants.  BLMIS had a legal obligation to Defendants to provide the value of their security entitlement which was established when BLMIS provided account statements and trade confirmations to Defendants. Despite the Trustee's argument that these transfers were made "to hinder, delay or defraud," the transfers satisfied an antecedent debt, as they were made for value and received in good faith.

Under Federal and state securities laws, Defendants held claims against BLMIS which created an obligation from BLMIS to its customers, including Defendants, to satisfy antecedent debts owed, since the customers "deposited cash with the debtor for the purpose of purchasing securities."  15 U.S.C. § 78lll(2).  During the time Defendants had accounts with BLMIS, their legal rights were governed by New York Uniform Commercial Code ("NYUCC") Article 8 and the various federal securities laws which established that Defendants were owed a security entitlement.  Contrary to the Trustee's argument, since BLMIS became obligated to Defendants for the value of the securities listed on their account statements, the Trustee cannot avoid transfers in excess of principal as any such payment discharged an antecedent debt of the debtor.

Federal laws also protect customers with a security entitlement, which is established when the customer remits payment to the broker dealer pursuant to a securities contract for the purchase and sale of securities and the issuance of account statements which illustrate the broker-

dealer's debt to the customer.  Each customer had a Rule 10b-5 claim against BLMIS at the time

of their original deposit.  The remedies for securities fraud under 10b-5, and therefore, the value

of such a claim, include rescission of the transaction, recovery of principal, and compensation for

the loss of the time value of money, expressed here as an award of interest.  Moreover, the

Securities Act of 1933 ("1933 Act") and Section 29(b) of the 1934 Act provides an express

remedy for rescission, entitling Defendants to void their investment contracts and receive

ancillary remedies, including prejudgment interest, in the case of fraud in connection with the

purchase and/or sale of securities.  15 U.S.C. § 77l(a)(2); *see also* 15 U.S.C. § 78cc(b).

Therefore, the remedies for securities fraud under 10b-5 of rescission of the transaction and

prejudgment interest, is the remedy for violations of Rule 10b-5.

Additionally, state law entitles BLMIS customers to tort remedies, including recovery of

principal and interest and New York law provides BLMIS customers with a state law claim for

breach of fiduciary duty, entitling them to rescission, restitution or damages, including interest in

addition to principal, at the inception of the relationship with BLMIS.  Federal and state

securities fraud claims also include consequential damages, including out-of-pocket costs and

lost opportunity damages.

Since Defendants held the foregoing claims against BLMIS, BLMIS's payments to

Defendants satisfied antecedent debt, and therefore, constitute "value" pursuant to § 548(c).

Pursuant to these state and federal laws, none of the transfers referenced in the Trustee's

Complaint may be avoided as a fraudulent conveyance since each transfer was made for value

and discharged the debt of BLMIS to its creditors, including Defendant.  This necessitates

dismissal of the Trustee's Complaint.

3

In the Trustee's calculation of Defendants' purported avoidance liability, the Trustee does not include certain transfers of funds from other BLMIS accounts, even though those transfers constitute value as they were reflected in the BLMIS books and records. The Trustee's Complaint is deficient on its face since it does not sufficiently specify or provide Defendants with full notice of the claims that are being asserted. These pleading deficiencies mandate dismissal of the Trustee's claim for avoiding such inter-account transfers.

Furthermore, Section 550 of the Bankruptcy Code permits the Trustee to recover property or its value from a subsequent transferee only "to the extent that [the] transfer [to the initial transferee] is avoided." 11 U.S.C. § 550(a). Since the Trustee has not first obtained a judgment for avoidance against the initial transferee, he cannot seek recovery from the subsequent transferee, and therefore, any claim raised pursuant to § 550(a) must be dismissed. Additionally, the Trustee makes no distinction between the transfers that allegedly benefited the initial transferees and those that benefited the subsequent transferees, and therefore the Trustee's Complaint fails to meet the pleading standard with sufficient specificity. As such, the Trustee's Complaint must be dismissed against any Defendant alleged to be a subsequent transferee since the Trustee has not obtained a judgment against the initial transferee and since the Trustee's Complaint fails to satisfy pleading requirements in avoidance actions as the allegations blur the lines between initial and subsequent transferees.

Further, the Trustee improperly seeks to avoid Defendants' withdrawals from Individual Retirement Accounts ("IRA") maintained by BLMIS. Such IRA withdrawals are protected from judgment creditors, including the Trustee, and therefore cannot be avoided.

## **ARGUMENT**

**I.     Judge Rakoff Ruled That Section 546(e) Bars The Trustee's Avoidance Claims Other Than Those Brought Under Section 548(a)(1)(A)**

The Trustee seeks to avoid transfers that occurred outside of the two years prior to the Bankruptcy filing.  Defendants argued that this Court need only apply the decisions in *Greiff*, *Katz* and Judge Rakoff's § 546(e) Consolidated Briefing Opinion and Order, dated April 15, 2013, which held that section § 546(e) bars the Trustee's claims under §§ 547, 548(a)(1)(B) and 544 of the Bankruptcy Code and that the Trustee is barred from re-litigating that issue.  *See In re Madoff Securities,* 12-mc-0115 (JSR), Document No. 460, Opinion and Order Pertaining to Consolidated proceedings on 1 U.S.C. § 546(e), dated April 15, 2013.

The Memorandum Of Law Of the Securities Investor Protection Corporation In Opposition To Defendants' Motion To Dismiss ("SIPC's Opposition") was silent on this issue, the Trustee's Memorandum of Law in Opposition to Defendants' Motion To Dismiss ("Trustee's Opposition") stated that the Trustee reserved its right to address this argument until the appeal of this issue is determined by the Second Circuit.  SIPC and the Trustee's Oppositions did not address this argument since the current state of the law limits the Trustee's ability to avoid transfers made outside of the two (2) years prior to the bankruptcy filing, and mandates dismissal of all counts except the fraudulent transfer claims under §§ 548(a)(1)(A) and 550(a).  Section 546(e) "precludes the Trustee from bringing any action to recover from any of Madoff's customers any of the monies paid by Madoff Securities to those customers except in the case of actual fraud."  *See* Opinion and Order, 12-mc-0115, Document No. 460, pg. 5 (citing *Katz*, 462 BR at 452, *Greiff*, 476 B.R. at 718).  Judge Rakoff ordered that, "because Madoff Securities was a registered stockbrokerage firm, the liabilities of customers like the defendants here are subject to the 'safe harbor' set forth in section 546(e) of the Bankruptcy Code," since such transfers were

5

made by a stockbroker in connection with a securities contract.  *Katz*, 462 B.R. at 451.[3] Therefore, since the Trustee cannot avoid transfers that are protected by the safe harbor provisions of § 546(e), "the Court grant[ed] the defendants' motion to dismiss all claims predicated on principles of preference or constructive fraud under the Bankruptcy Code, as well as all claims under New York law." *See Katz*, 462 B.R. at 453.

Further, in *Greiff*, the Court acknowledged that even though collateral estoppel bars the Trustee from relitigating the issue, it considered the matter *de novo*, and again concluded that "§546(e) bars the Trustees from pursuing the claims here made under §548(a)(1)(A) and §550(a)."  *Greiff*, 476 B.R. at 719-722.  "Under New York Law, collateral estoppel bars a party from relitigating an issue when '(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.'"  Here, the Trustee has already had a full and fair opportunity to litigate the issue in *Katz, Greiff*, thereafter in the

---

[3] Judge Rakoff held that "even assuming the truth of the allegations that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions." *Greiff*, 476 B.R. at 719-720 (citing *In re Baker & Getty Fin. Servs., Inc.*, 106 F.3d 1255, 1262 (6th Cir. 1997) (applying § 101(53A)'s definition "not on a customer-by-customer basis," but instead on the basis of "the underlying business at issue.").  "In making this determination, the court found that the transfers at issue were 'made by or to (or for the benefit of) a . . . stockbroker, in connection with a securities contract.'"  *See Katz*, 462 B.R. at 451 (quoting 11 USC § 546(e)).  The Court further found that Madoff Securities qualified as a stockbroker either "by virtue of the trading conducted by its market making and proprietary trading divisions," or because BLMIS customers, "having every reason to believe that Madoff Securities was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the customers of stockbrokers, including the protections offered by Sec 546 (e)."  *Greiff*. 476 B.R. at 719-20; *see also* Opinion and Order, 12-mc-0115, Document No. 460, pg. 5.  Further, Judge Rakoff held that the customer agreements between BLMIS and customers constituted a securities contract.  *Greiff*, 476 B.R. at 720.  The Court also found that "the account agreements between Madoff Securities and the defendants clearly qualify as securities contracts under Section 741(7) of the Bankruptcy Code, either because they were made pursuant to 'a master agreement that provides for' the purchase and sale of securities under Section 741(7)(a)(x) or because the agreements 'related to an [] agreement or transaction' in securities, and they obligated Madoff Securities, a stockbroker, to reimburse customers that Section 546(e)'s requirement that the payments be transfers 'made by . . . a . . . stockbroker . . . in connection with a securities contract" was satisfied.  *See* Opinion and Order, 12-mc-0115, Document No. 460, pg. 6.  Moreover, Judge Rakoff held that BLMIS customer withdrawals constituted settlement payments which fall within the coverage of § 546(e).  *Greiff*, 476 B.R. at 720-721.  Indeed, withdrawals from accounts constituted 'settlement payments' from a stockbroker and are covered by §546(e). *See also* Opinion and Order, 12-mc-0115, Document No. 460, pg. 6

consolidated briefing related to § 546 (e), and again in the appeal of this issue before the Second

Circuit, and is therefore collaterally estopped from relitigating the issue that has already been

decided by Judge Rakoff: namely, that § 546(e) limits the transfers the Trustee can avoid to those

under §§ 548(a)(1)(A) and 550(a).  *Id.*

## II.    The Trustee Cannot Avoid The Transfers To Defendants Since They Satisfied An Antecedent Debt As They Were Made For Value And In Good Faith

The Trustee's Complaint should be dismissed since the Trustee is unable to avoid

transfers received by Defendants since such transfers were made for value and in good faith.[4]

The District Court explained that § 548 (a)(1)(A) allows the Trustee to avoid transfers made

within two (2) years of the bankruptcy filing if the transfers were made with "actual intent to

hinder, delay, or defraud."  *Greiff*, 476 B.R. at 722; *see also Katz*, 462 B.R. at 453-455.  Section

548(c), however, provides a defense and allows customers to retain those transfers if they were

made (1) for value and (2) in good faith.  *Id.*  The Trustee does not dispute that Defendants

received the transfers in good faith.[5]  Contrary to the Trustee's assertion, value under Section

548 (c) is not limited to the customer's principal, but rather is the "satisfaction" of a "present or

antecedent debt of the debtor,"  and entitles a customer to rescissionary rights including interest.

---

[4] According to Appendix B attached to the Trustee's Memorandum of Law In Opposition To Defendants' Motion To Dismiss, the Trustee erroneously fails to list Defendants as arguing that the Trustee's Complaint failed to meet the pleading requirement of fraud under Rule 9(b).  In their Motion to Dismiss, Defendants asserted that Federal Rule of Civil Procedure 9(b), as applied through Federal Rule of Bankruptcy Procedure 7009, required the Trustee to sufficiently plead facts to provide detailed notice of fraud claims, which was not the case here since "opacity, rather than particularity, best describes the allegations."  *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 106 (Bankr. S.D.N.Y. 2011).  Since the Trustee's Complaint does not contain sufficient specificity regarding detailed information for each alleged avoidable transfer, the Trustee's Complaint violates Rule 9(b) as it is inundated with vague generalizations.  Therefore, the Trustee's Complaint must be dismissed since Defendants are unable to determine which obligations the Trustee seeks to avoid.

[5] No evidence is required to establish that Defendants meet the good faith requirement of § 548(c), because that defense appears on the face of the Complaint.  *See Pani vs. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the fact of the Complaint.").  The Trustee does not allege that the Defendants acted in bad faith in receiving payments from BLMIS.  The Trustee's Complaint demonstrates that BLMIS hid the truth from customers, and that Defendants are innocent victims of the fraud.  Further, Judge Rakoff rejected the argument that Madoff's fraud should be imputed to all innocent defendants.  *Greiff*, 46 B.R. at 724, n. 9.

*See* Trustee's Opposition, pg. 23; *see also* 11 U.S.C. § 548(d)(2)(A).  The Trustee argues that

these arguments are moot because of Judge Rakoff's antecedent debt Opinion and Order.  *See*

Trustee's Opposition, pg. 22.  Defendants acknowledge Judge Rakoff's antecedent debt Opinion

and Order, but argue that a different holding was warranted and assert these legal arguments in

order to preserve rights to participate in any relevant appeal.

### A.    The Trustee Is Unable To Avoid Transfers Made For Value

Section 548(c) provides a defense and allows customers to retain transfers made during

the two (2) years prior to the Bankruptcy if they were made for value or in satisfaction of a

present or antecedent debt of the debtor.  11 U.S.C. §§ 548(c) and 548(d)(2)(A).  Payments made

by a debtor to satisfy an antecedent debt are generally not avoidable.  *See Sharp Int'l Corp. vs.*

*State St. Bank & Trust Co. (In re Sharp Int'l Corp*), 403 F.3d 43, 54 (2d Cir. 2005) ("[A]

conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither

fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another.");

*HBE Leasing Corp. vs. Frank*, 48 F.3d 623, 639 (2d Cir. 1995) ("[A] transfer motivated by

actual fraudulent intent may not be voided if a transferee who paid fair consideration did not

have actual or constructive knowledge of such intent."); *Atlanta Shipping Corp. vs. Chemical*

*Bank*, 818 F.2d 240, 249 (2d Cir. 1987) ("In general, repayment of an antecedent debt constitutes

fair consideration unless the transferee is an officer, director, or major shareholder of the

transferor."); *Balaber-Strauss vs. Lawrence*, 264 B.R. 303, 308 (S.D.N.Y. 2001).

### B.  Customers Held Damages Claims Against BLMIS

Under Federal and state securities laws, Defendants held claims against BLMIS which

created an obligation from BLMIS to its customers, including Defendants, to satisfy antecedent

debts owed.   SIPA preserves federal and state law remedies available in a bankruptcy

8

proceeding.[6]  Pursuant to SIPA, Defendants were BLMIS customers since they "deposited cash

with the debtor for the purpose of purchasing securities."  15 U.S.C. § 78lll(2).  During the time

Defendants had accounts with BLMIS, their legal rights were governed by New York Uniform

Commercial Code ("NYUCC") Article 8 and the various federal securities laws which

established that Defendants were owed a security entitlement.[7]  When a customer deposits funds

or securities to a stockbroker for the purpose of buying securities, and the stockbroker issues an

account statement reflecting the security entitlement the broker-dealer owes to the customer, the

stockbroker becomes obligated to the customer for those securities, regardless of whether or not

the securities were actually purchased.  *See* NYUCC §§ 8-501(b) and 8-501(c).  When the broker

pays the customer the value of the securities listed on the account statements, the stockbroker

discharges a valid antecedent debt owed to its customers.  Contrary to the Trustee's argument,

since BLMIS became obligated to Defendants for value of the securities listed on their account

statements, the Trustee cannot avoid transfers in excess of principal as any such payment

discharged an antecedent debt of the debtor.  *See* NYUCC § 8-503 cmt.2;  *see also In re Bernard

L. Madoff Inv. Sec., LLC*, 654 F.3d 229, 236 (2d Cir. 2011) ("SIPA's implementing regulations

bolster the shared view of the Trustee, SIPC and the SEC that claimant who has 'written

confirmation' that securities have been purchased or sold on his or her behalf should be treated

---

[6] SIPA incorporates provisions of the 1934 Act: "except as otherwise provided in this chapter, the provisions of the Securities Exchange Act of 1934 apply as if this chapter constituted an amendment to, and was included as a section of such Act."  15 U.S.C. § 78bbbb;  *see also* 15 U.S.C. § 78bb(a)(2) ("The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity.").

[7] The Trustee argues that the UCC is inapplicable, yet fails to argue why that is the case.  *See* Trustee's Opposition, pg. 28.  A customer's "security entitlement" is statutorily defined as "the rights and property interest of an entitlement holder with respect to a financial asset [including a security]."  *See* NYUCC §§ 8-102(a)(9)(i); *see also* NYUCC § 8-503 cmt. 2. (defining a customer's security entitlement as "a package of rights and interests that a person has against the person's securities intermediary and the property held by the intermediary.").  The customer's security entitlement is established when the security intermediary: "(1) indicates by book entry that a financial asset has been credited to the person's securities account . . . or (3) becomes obligated under other law, regulation, or rule to credit a financial asset to the person's securities account."  NYUCC § 8-501(b); *see also* NYUCC § 8-501 cmt.2. ("[A] basic operating assumption of the indirect holding system that once a [broker dealer] has acknowledged that it is carrying a position in a financial asset for its customer . . . the [broker dealer] is obligated to treat the customer . . . as entitled to the financial asset.").

as a customer with a claim for securities. 17 C.F.R. § 300.501(b).").  BLMIS had a contractual

obligation to Defendants as customers pursuant to the parties' securities contract, and therefore,

any transfers made by BLMIS to Defendants satisfied an antecedent debt and were made "for

value." 11 U.S.C. § 548(c).

Since payment of an "antecedent debt" satisfies "value," 11 U.S.C. § 548(d)(2)(A),

transfers made by BLMIS to Defendants in satisfaction of its antecedent debt were transfers

made "for value" under § 548(c), and therefore, each customer has a federal securities claim

against BLMIS as their relationship was procured by fraud.  *See* 11 U.S.C. § 548(c).

Customers are also protected by federal laws when the customer rendered payment to the

broker dealer pursuant to a securities contract regarding the purchase and sale of securities which

established a security entitlement illustrating the broker-dealer's debt to the customer.  Indeed,

each customer had a Rule 10b-5 claim against BLMIS at the time of their original deposit.  *See

Merrill Lynch Pierce, Fenner & Smith vs. Dabit*, 547 U.S. 71, 85 n.10 (2006) ("[A] broker who

accepts payment for securities that he never intends to deliver . . . violates § 10(b) and Rule 10b-

5.");  *see also Grippo vs. Perazzo,* 357 F.3d 1218, 1223-24 (11th Cir. 2004) (finding a broker

accepted and deposited customer funds as payment for securities satisfied the "in connection

with" the purchase/sale of securities element for a securities fraud claim); *see also Nathel vs.

Siegal,* 592 F. Supp. 2d 452, 464 (S.D.N.Y. 2008) (finding a broker's false promise to a customer

to purchase securities when the broker never intended to do so satisfied the "in connection with"

the purchase/sale of securities element for a securities fraud claim).  This legal framework

protects customers, like Defendants, who invested through a registered and SEC-regulated

broker, BLMIS, by prohibiting the Trustee from avoiding transfers which satisfied an antecedent

debt.  The remedies for securities fraud under 10b-5, and therefore, the value of such a claim,

10

include rescission of the transaction, recovery of principal, and compensation for the loss of the time value of money, expressed here as an award of interest.

The Securities Act of 1933 ("1933 Act") provides an express remedy for rescission in the case of misrepresentations in connection with the purchase and/or sale of securities.  15 U.S.C. § 77l(a)(2).   Similarly, Section 29(b) of the 1934 Act also entitles Defendants to void their investment contracts and receive ancillary remedies, including prejudgment interest.  15 U.S.C. § 78cc(b).[8]  *See In re UBS Auction Rate Sec. Litig.*, 2009 LEXIS 26385, at \*13 (S.D.N.Y. 2009) (holding in Rule 10b-5 cases, "plaintiffs [must] choose between rescinding a transaction and being paid restitution on the one hand and holding the defrauder to the bargain and recovering out-of-pocket losses resulting from the fraudulent transaction on the other.").[9]  Section 12(a)(2) of the 1933 Act provides that the victim may recover interest from the person who sold the security the "consideration paid for such security with interest thereon, less the amount of any income received thereon."  15 U.S.C. §77l(a)(2).

Moreover, state law entitles BLMIS customers to tort remedies, including recovery of principal and interest.[10]   "It has been the settled rule that interest must be allowed as a matter of right on recoveries for intentional tort with respect to property and property rights."  *DeLong Corp. vs. Morrison-Knudsen Co., Inc.*, 20 A.D.2d 104, 107  (N.Y. App. Div. 1963) (citing

---

[8] "Every contract made in violation of any provision of this chapter or of any rule of regulation thereunder, and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards to the rights of any person who, in violation of such provision, rule or regulation, shall have made or engaged in the performance of any such contract."  *See* 15 U.S.C. § 78 cc(b); *see also Am. Gen. Ins. Co. vs. Equitable Gen. Co.*, 493 F.Supp. 721, 767-68 (E.D. Va. 1980) (holding that plaintiffs were entitled to rescission and prejudgment interest from the date of the initial fraudulent transfer under 29(b)); *Scheve vs. Clark*, 596 F.Supp. 592, 594 (E.D. Mo. 1984) (proper remedy in federal securities claims includes pre-judgment interest at a rate, "which will adequately compensate the plaintiffs for the loss of the use of their money.").
[9] *See Rolf vs. Bylth, Eastman Dillon & Co., Inc.*, 637 F.2d 77, 87 (2d Cir. 1980) ("In view of the high inflation rates that beset this period [during which the defendant exercised control over the defrauded plaintiff's investment], a damage award without prejudgment interest (or indeed, even one that does include it) would not give [Plaintiff] full compensation for losses he suffered at the hands of his fiduciary.").
[10] Section 28(a)(2) of the 1934 Act contains a "Rule of Construction" that explicitly preserves state law rights and remedies.  *See* 15 U.S.C. § 78bb(a)(2).

*Flamm vs. Noble*, 296 N.Y. 262 (N.Y. 1947)); *see also N.Y. C.P.L.R.* § 5001(a) ("Interest shall

be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise

interfering with title to, or possession of enjoyment of, property.").[11]  Additionally, New York

law provides BLMIS customers with a state claim for breach of fiduciary duty, entitling them to

rescission, restitution or damages, including interest in addition to principal, at the inception of

the relationship with BLMIS.  *See Assured Guar. (UK) Ltd. vs. J.P. Morgan Inv. Mgmt. Inc.*, 18

N.Y.3d 341, 351 (N.Y. 2011) (reaffirming the viability of the common law claim for breach of

fiduciary duty in a securities context, rejecting the notion that it is preempted by the Martin

Act.); *see also Lowenbraun vs. L.F. Rothschild*, 685 F.Supp. 336, 343 (S.D.N.Y. 1988) ("[A]

broker who has discretionary power over an account owes his client fiduciary duties," and where

the broker abuses "the position as broker-agent to gain profits at the client's expense," gives rise

to a breach of fiduciary duty claim).  New York law also recognizes that a breach of fiduciary

duty entitles a claimant to pre-judgment interest.  *Wolf vs. Rand*, 258 A.D.2d 401, 403-04 (N.Y.

App. Div. 1999).

Federal and state securities fraud claims also include consequential damages, including

out-of-pocket costs and lost opportunity damages.  *Rolf*, 637 F.2d at 86-87; *Zeller vs. Bogue*

*Elec. Mfg. Corp*, 476 F.2d 795, 803 (2d Cir. 1973) (consequential damages available for federal

securities law claims when they are established with certainty); *see also Big Apple Car, Inc*., 204

A.D.2d at 110-11; *see also 105 East Second St. Assocs. Vs. Bobrow*, 175 A.D.2d 746, 747 (N.Y.

App. Div. 1991) (damages for breach of fiduciary duty claims include "lost opportunities for

profit . . . by reason of the faithless fiduciary's conduct.").[12]

---

[11] The New York statutory interest rate is 9%.  *See N.Y. C.P.L.R.* § 5004.

[12] *See also Donovan vs. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) ("[O]ne appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust."); *see also* RESTATEMENT (SECOND) OF TORTS, § 847 cmt. B (remedies for breach of fiduciary

12

Since Defendants held the foregoing claims against BLMIS, BLMIS's payments to Defendants satisfied antecedent debt, and therefore, constitute "value" pursuant to § 548(c). SIPA preserves these claims and remedies through 28(a)(2) of the 1934 Act, and therefore, they are part of SIPA for purposes of evaluating the statutory defenses afforded by § 548(c). SIPA does not conflict with § 548(c), which permits innocent customers to retain amounts provided by federal and state law remedies for fraud. Both SIPA Section 8(c)(3) and SIPA Section 7, employ the same language in granting the trustee powers to "recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent such transfer is voidable or void under the provisions of title 11" of the U.S. Code. 15 U.S.C. § 78fff-2(c)(3). Title 11 limitations clearly include defenses afforded by § 548(c). Therefore, there is no statutory conflict between Section 8(c)(3) and Section 548(c).

The Trustee's argument that this statutory scheme is inapplicable in the context of a Ponzi scheme is wrong. *See* Trustee's Opposition, pg. 26. Courts have routinely recognized that a customer's money has "value" in the context of a Ponzi scheme. *See Orlick vs. Lozyak (In re Fin. Federated Title & Trust, Inc.*), 309 F.3d 1325, 1332-33 (11th Cit. 2002) ("[T]he district court and the bankruptcy court erred in . . . determining that [recipient of funds from Ponzi scheme] was based as a matter of law [from] asserting her affirmative defense under Section 548(c) of 'for value and in good faith'"); *Daly vs. Deptula (In re Carrozzella & Richardson*), 286 B.R. 480, 491 (D. Conn. 2002) ("There is nothing in the statute to support a finding that the Debtor did not receive 'reasonably equivalent value' . . . simply because the Debtor was engaged in a Ponzi scheme"); *see also In re World Vision Envt'l, Inc.*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002) ("No one conducting business with a debtor operating a Ponzi scheme could prevent

---

duty may include "tort damages for harm caused by the breach," "restitutionary recovery," and "profits that result to the fiduciary from his breach of duty.").

13

the avoidance of payments they received from the debtor, regardless of the extent of the transferee's knowledge or culpability of the actual services provided.  The law does not require this result.").

Pursuant to these state and federal laws, none of the transfers referenced in the Trustee's Complaint may be avoided as a fraudulent conveyance since each transfer was made for value and discharged the debt of BLMIS to its creditors, including Defendant.  This necessitates dismissal of the Trustee's Complaint.

### C.    The Complaint Fails To Allege Sufficient Facts Regarding Transfers From Other BLMIS Accounts

In the Trustee's calculation of Defendants' purported avoidance liability, the Trustee does not include certain transfers of funds from other BLMIS accounts ("Transferor Account(s)"), even though those transfers were reflected in the BLMIS books and records.  Although the Trustee lists the amount, date and value of the alleged inter-account transfers, the Trustee's Complaint does not contain specific factual allegations regarding such transfers, including the identification of the owner of the Transferor Account, the relationship between the owner of the Transferor Account and Defendants, or a listing of all transactions which transpired in the Transferor Account.  The Trustee argues that the information alleged in the Trustee's Complaint is sufficient, and more detailed information will be made available during discovery.  *See* Trustee's Opposition, pg. 30.  To the contrary, the Trustee's Complaint is deficient on its face since, "[a]t a minimum, the complaint must be sufficiently specific to give the defendant full notice of the claims that are being asserted and to allow the defendant to prepare an adequate answer, with affirmative defenses and counterclaim."  Collier on Bankruptcy, § 548.11[1][a][2]. These pleading deficiencies mandate dismissal of the Trustee's claim for avoiding such inter-account transfers.

14

Further, Defendants seek credit for the initial and other deposits into their accounts, which were effectuated through inter-account transfers. The Trustee argues that such inter-account transfers were rejected by the District Court in Judge Rakoff's antecedent debt Opinion and Order. *See* Trustee's Opposition, pg. 29. As stated above, Defendants acknowledge Judge Rakoff's antecedent debt Opinion and Order, but argue that a different holding was warranted and assert these legal arguments in order to preserve rights to participate in any relevant appeal. Moreover, the Trustee fails to address the argument that since federal securities laws provide that the establishment of a discretionary securities account constitutes an investment contract, and that there is no requirement that the customer "identify a specific security within the meaning of . . . Rule 10-b5," Defendants, many of whom funded their accounts with inter-account transfers, should be afforded the full protection of the federal securities laws. *Savino vs. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1239-40 (S.D.N.Y. 1981); *Gelles vs. TDA Indus., Inc.*, 44 F.3d 102, 104 (2d Cir. 1994) (holding that a securities "transaction need not involve cash to constitute a purchase or sale under Rule 10b-5."). Therefore, the Trustee has no authority to avoid any inter-account transfers that were initial deposits into a customer's BLMIS account.[13]

---

[13] If an account was funded by means of an inter-account transfer at any time during the relationship between the customer and BLMIS: (i) the amount or account balance transferred should be deemed to be (or treated the same as) principal in the account of the recipient; (ii) the recipient should be treated as if he or she made a deposit with BLMIS in the amount or account balance transferred; (iii) the recipient should be treated as holding a claim against BLMIS in the amount or account balance transferred; and (iv) the recipients' withdrawal of all or any portion of the amount of the account balance transferred to it via inter-account transfer should be deemed for value (as satisfaction of antecedent debt), even if the withdrawal occurred inside the reach-back period. By failing to credit Defendants for the full value of any inter-account transfers, the Trustee impairs Defendants' rights. *Greiff*, 2012 WL 1505349, at 11-12; *Katz*, 462 B.R. at 452. The Trustee argues that the Court should not follow the Replenishment Credit Method, and instead should adopt the Net Investment Method. *See* Trustee's Opposition, pg. 24. Defendants, however, request that the Court should give credit to customers who replenished the BLMIS estate with new money during the six-year or two-year period prior to the filing of the bankruptcy petition (the "Reach-Back Period"), also known as the Replenishment Credit Method, as this is the only way to determine potential liability consistent with Section 550(d)'s prohibition against a trustee's double recovery. Section 550(d) states that "[t]he trustee is entitled to only a single satisfaction under subsection (a) of this section." 11 U.S.C. § 550(d). Courts routinely hold that good faith recipient of a fraudulent transfer that gives value to the debtor during the applicable reach-back period must be given a credit to the extent of that replenishment. A trustee cannot recover "'from a transferee that has already returned to the estate that which was taken in violation of the Code.'" *In re Kindsley*, 2007 WL 1491188, at *3 (Bankr. S.D. Fla. May 17, 2007) (citations omitted). As such, Sections 550(d) should be applied to reduce

**III.    The Complaint Fails To Allege Sufficient Facts Regarding Subsequent Transferees**

According to Appendix B attached to the Trustee's Memorandum of Law In Opposition To Defendants' Motion To Dismiss, the Trustee fails to list Defendants as Defendants who raising an argument regarding subsequent transferees.    To the contrary, Defendants argued that Section 550 of the Bankruptcy Code permits the Trustee to recover property or its value from a subsequent transferee only "to the extent that [the] transfer [to the initial transferee] is avoided." 11 U.S.C. § 550(a).    Transfers to an initial transferee must be avoided before seeking recovery from a subsequent transferee.  *See Enron Creditors Recovery Corp. vs. Int'l Fin. Corp. (In re Enron) Creditors Recovery Corp.*) 338 B.R. 489, 490 (S.D.N.Y 2008); *see also In re Enron Corp.*, 343 B.R. 75, 84 (Bankr. S.D.N.Y. 2006) ("[T]he plain language of section 550(a) requires that the transfer first be established as improper and avoided under one of the avoidance sections of the Bankruptcy Code prior to recovery from any subsequent transferee.").    Since the Trustee has not first obtained a judgment for avoidance against the initial transferee, he cannot seek recovery from the subsequent transferee, and therefore, any claim raised pursuant to § 550(a) must be dismissed.

Additionally, the Trustee's claims against subsequent transferees fail to allege facts supporting the assertion that funds were transferred for the benefit of any subsequent transferee defendants.  *See* Section 550(a) (permitting the Trustee to avoid claims against (1) initial transferees; and (2) entities or individuals for whose benefit the initial transfer was made). Instead, the Trustee makes no distinction between the transfers that allegedly benefited the initial transferees and those that benefited the subsequent transferees.  The Trustee argues that the lack

---

Defendants' exposure by the amounts she deposited into her accounts during the Reach-Back Period since Defendants have no liability to the Trustee during this time period, despite what the Defendants previously withdrew.  The Trustee cannot be permitted to indefinitely extend the Reach-Back period, as doing so would thwart the Trustee's limitations prescribed in the Bankruptcy Code.

of specific facts relating to transfers that purportedly benefitted the subsequent transferee does not mandate dismissal of the claim since the pleading burden is reduced for allegations regarding subsequent transfers.  *See* Trustee's Opposition, pg. 36.  This Court, however, holds otherwise and mandates that the benefit asserted must be "direct, ascertainable and quantifiable and must correspond to, or be commensurate with, the value of the property that was transferred."  *Enron Creditors Recovery Corp. vs. JP Morgan Sec.*, 407 B.R. 17, 33 (Bankr. S.D.N.Y. 2009).

The Trustee asserts that the subsequent transferee actions "are clear-cut avoidance actions that involve initials transfers to a BLMIS account opened in the name of an individual, family trust, joint tenancy, or retirement plan, from which, in numerous instances, subsequent transfers were then made to family members and friends."  *See* Trustee's Opp., pg. 36).  The Trustee's assertion of purported familial, personal and business relationships, however, is not enough to provide sufficient predicate for his subsequent transferee claims.  *See Appointed Receiver of Lancer Offshore, Inc. vs. Citgo Group Ltd.*, 2011 U.S. Dist. LEXIS 34256 (S.D. Fla. Mar. 30, 2011)  (dismissing subsequent transfer claim because the mere existence of pre-existing relationship between entities was insufficient).

Therefore, the Trustee's Complaint must be dismissed against any Defendant alleged to be a subsequent transferee since the Trustee has not obtained a judgment against the initial transferee and since the Trustee's Complaint fails to satisfy pleading requirements in avoidance actions as the allegations blur the lines between initial and subsequent transferees.

## IV.    Non-Bankruptcy Law Protects IRA Account Transfers

Under New York law, an IRA (both the corpus and distributions) is exempt from claims of judgment creditors such as the Trustee.  *See* N.Y. C.P.L.R. 5025 (identifying personal property, including IRAs, which are protected from judgment creditors); *see also J.K.C. vs.*

17

*T.W.C.*, 2013 N.Y. Misc. LEXIS 813, at \*12 (N.Y. Sup. Ct. Feb. 28, 2013); *see also Morgan vs. Gordon*, 450 B.R. 402, 405 (W.D.N.Y. 2011) (holding that annuity and proceeds were exempt); *see also In re Keil*, 88 F.2d 7, 8 (2d Cir. 1937) (holding that life insurance policy and dividends were exempt and noting "[e]xemptions statutes are to be liberally construed.").  As such, any IRA distribution that the Trustee seeks to avoid is subject to N.Y. CPLR's 5205(c)(2)'s exemption, and the Trustee's claims regarding such transfers must be dismissed.

## **CONCLUSION**

For the reasons stated herein, Defendants respectfully requests that this Court dismiss the Trustee's Complaint in its entirety.

Dated:  New York, New York
      March 17, 2014

                        LAX & NEVILLE LLP

                  By:*/s/ **Barry R. Lax***
                        Barry R. Lax
                        Brian J. Neville
                        Gabrielle Pretto
                        1450 Broadway, 35th Floor
                        New York, NY 10018
                        Telephone:  (212) 696-1999
                        Facsimile:  (212) 566 - 4531
                        *Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I, Gabrielle J. Pretto, hereby certify that, on March 17, 2014, I caused a true and correct

copy of Defendants Reply Memorandum of Law in Further Support of the Motion to Dismiss, to

be filed electronically with the District Court, served upon the parties in this action who receive

electronic service through CM/ECF.

Dated: New York, New York
       March 17, 2014

/s/ *Gabrielle J. Pretto*
Gabrielle J. Pretto