Richard A. Kirby
Laura K. Clinton
Martha Rodriguez Lopez
K&L GATES LLP
1601 K Street
Washington D.C. 20006
(202) 778-9000 (Telephone)
(202) 778-9100 (Facsimile)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

...................................................................... x
SECURITIES INVESTOR PROTECTION : 
CORPORATION, :
 :
 :
                        Plaintiff, :    Adv. Pro. No. 08-1789 (SMB)
            v. :
 :    SIPA LIQUIDATION
 :
BERNARD L. MADOFF INVESTMENT :    (substantively consolidated)
SECURITIES LLC, :
 :
 :
                        Defendant. :
...................................................................... x
In re: :
 :
BERNARD L. MADOFF, :
 :
                        Debtor. :
...................................................................... x
IRVING H. PICARD, Trustee for the Liquidation of :
Bernard L. Madoff Investment Securities LLC, :
 :
                        Plaintiff, :
            v. :    Adv. Pro. No. 10-04363 (SMB)
 :
SCHIFF FAMILY HOLDINGS NEVADA :
LIMITED PARTNERSHIP; et al., :
 :
 :
                        Defendants. :
...................................................................... x

IRVING H. PICARD, Trustee for the Liquidation of   :
Bernard L. Madoff Investment Securities LLC,      :
                                             :
              Plaintiff,               :
      v.                              :     Adv. Pro. No. 10-04718 (SMB)
                                             :
THE JORDAN H. KART REVOCABLE TRUST; et  :
al.                                           :
                                           :
             Defendants.           :
......................................................................... x

## INTERVENORS' MEMORANDUM ON THE LIMITS OF TRUSTEE STANDING

## TO RECOVER CUSTOMER PROPERTY

# <u>TABLE OF CONTENTS</u>

**Page**

I.   Introduction ...........................................................................................................1

II.  Argument ...............................................................................................................2

    **A.**   Section 8(c)(3) Requires the Trustee to Demonstrate an Existing Shortfall
in Customer Property at the Time of Recovery. ...................................................2

        **1.**   The plain meaning of Section 8(c)(3) requires that the valuation of
customer property must be contemporaneous with recovery. ...................3

        **2.**   Other statutory provisions reinforce that the valuation of customer
property should be made at the time of recovery, not the time of
filing. ........................................................................................................6

        **3.**   *BBS* is not controlling. ............................................................................8

    **B.**   There Is No Evidence That Significant Administrative Challenges Would
Prevent The Trustee From Complying With The Statute And
Demonstrating An Existing Shortfall In Customer Property At The Time
Of Recovery. .......................................................................................................12

III. Conclusion ...........................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

Page

## CASES

*Allaire Corp. v. Okumus,*
    433 F.3d 248 (2d Cir. 2006) ............................................................................................ 8

*Bevill, Bresler & Schulman, Inc. v. Spencer Savs. & Loan Ass'n,*
    83 B.R. 880 (D.N.J. 1988) .......................................................................... 7, 10, 11, 12

*Burrage v. United States,*
    571 U.S. --, 134 S. Ct. 881 (Jan. 27, 2014) .................................................................. 11

*Carr v. United States,*
    560 U.S. 438 (2010) ......................................................................................................... 6

*Community for Creative Non-Violence v. Reid,*
    490 U.S. 730 (1989) ......................................................................................................... 4

*Connecticut Nat'l Bank v. Germain,*
    503 U.S. 249 (1992) ......................................................................................................... 4

*Estate of Cowart v. Nicklos Drilling Co.,*
    505 U.S. 469 (1992) ....................................................................................................... 11

*Gucci Am., Inc. v. Hall & Associates,*
    135 F. Supp. 2d 409 (S.D.N.Y. 2001) ............................................................................ 5

*Hymowitz v. Eli Lilly & Co.,*
    73 N.Y.2d 487, 539 N.E.2d 1069, 541 N.Y.S.2d 941 (1989) ...................................... 15

*In re Advanced Telecomm. Network, Inc.,*
    490 F.3d 1325 (11th Cir. 2007) .................................................................................... 18

*In re AVI, Inc.,*
    389 B.R. 721 (B.A.P. 9th Cir. 2008) .............................................................................. 9

*In re Bell,*
    225 F.3d 203 (2d Cir. 2000) .......................................................................................... 12

*In re Bernard L. Madoff Inv. Sec. LLC,*
    445 B.R. 206 (Bankr. S.D.N.Y. 2011) ............................................................................ 3

*In re J.C. Winship Co.,*
    120 F. 93 (7th Cir. 1903) ............................................................................................... 14

*In re Lokotnicki,*
    232 B.R. 583 (Bankr. W.D.N.Y. 1999) ....................................................................... 14

*In re Oneida, Ltd.,*
    383 B.R. 29 (Bankr. S.D.N.Y. 2008) ............................................................................ 18

*In re R.M.L., Inc.,*
    92 F.3d 139 (3d Cir. 1996) ........................................................................................... 18

*Kmart Corp. v. Cartier, Inc.*,
   486 U.S. 281 (1988) .................................................................................................. 4

*Law v. Siegel*,
   No. 12-5296 (S. Ct Mar 4, 2014) ........................................................................... 12

*Matter of Xonics Photochem., Inc.*,
   841 F.2d 198 (7th Cir. 1988) .................................................................................. 18

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
   469 U.S. 189 (1985) .................................................................................................. 4

*Picard v. Flinn Inv. LLC*,
   463 B.R. 280 (S.D.N.Y 2011) ................................................................................. 13

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC)*,
   721 F.3d 54 (2013) .................................................................................................. 11

*Semmler v. American Honda Motor Co., Inc.*,
   990 F. Supp. 967 (S.D. Ohio 1997) ......................................................................... 6

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) .................................................................................. 6

*SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.)*,
   490 B.R. 46 (S.D.N.Y. 2013) .................................................................................. 15

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ............................................................................................. 8, 11

*Syracuse Engr'g Co. v. Haight*,
   97 F.2d 573 (2d Cir. 1938) ...................................................................................... 18

*Thielebeule v. M/S Nordsee Pilot*,
   452 F.2d 1230 (2d Cir. 1971) .................................................................................... 9

*U.S. v. Dauray*,
   215 F.3d 257 (2d Cir. 2000) ................................................................................. 4, 5

*United Savs. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,
   484 U.S. 365 (1988) ............................................................................................... 7, 9

*United States* v. *Ron Pair Enterprises, Inc.*,
   489 U. S. 235 (1989) .................................................................................................. 4

*Whiteford Plastics Co. v. Chase Nat'l Bank of New York City*,
   179 F.2d 582 (2d Cir. 1950) .................................................................................... 14

**STATUTES**

1 U.S.C. § 1 ................................................................................................................... 5

11 U.S.C. § 502(c)(1) .................................................................................................. 15

11 U.S.C. § 550 .............................................................................................................. 8

15 U.S.C. § 78fff-2(c)(3) ............................................................................................... 2

15 U.S.C. 78fff-39(a) ............................................................................... 14

Fed. R. Bankr. P. 3018(a) ....................................................................... 15

N.Y. C.P.L.R. § 1401 ............................................................................... 13

SIPA § 16(11) ............................................................................................ 6

SIPA § 16(4) ............................................................................................... 8

SIPA § 16(4)(E) ........................................................................................ 14

SIPA § 8(b) ................................................................................................. 6

SIPA § 8(c)(1)(D) ....................................................................................... 6

## OTHER AUTHORITIES

2A N. Singer, STATUTES AND STATUTORY CONSTRUCTION § 46:06, at 194 (6th rev. ed. 2000) .... 7

4 Collier on Bankruptcy, par. 749.02[2], p. 749–3 (15th ed. 1987) ............................................. 3

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Merriam Webster, Inc. 1986) ................ 4

## I.   INTRODUCTION

Intervenors are innocent former Madoff Securities customers and alleged subsequent transferees from whom the Trustee seeks to recover brokerage account withdrawals made years ago.[1]   Although many of the Intervenors are not parties to the pending Motions to Dismiss, they have either asserted as an affirmative defense that the Trustee lacks standing to pursue identical clawback claims or have not yet answered but intend to assert that defense.   Others have pending Motions that do not address the issues presented here.   Intervenors respectfully request that the Court permit them to intervene and be heard on the limits of the Trustee's standing to recover transfers of customer property under 15 U.S.C. 78fff-2(c)(3) ("Section 8(c)(3)").[2]

Specifically, Section 8(c)(3) requires the Trustee to demonstrate that the customer property held by the estate is insufficient to pay allowed customer claims ***before*** he can recover additional customer property through avoidance actions.   Under SIPA, the determination of whether a shortfall in customer property actually exists must be measured at the time of attempted recovery, not by reference to the allegations of the avoidance complaints or at the time the SIPA liquidation proceeding was filed.   The *Bevill Bressler* case cited by the Trustee as the key authority in support of his position is not controlling, is easily distinguishable, and does not grapple with the statutory limitations on the Trustee's recovery powers.

---

[1] Avoidance defendants include both alleged initial transferees and persons alleged to have received transfers from those customers (subsequent transferees).   The various defendants have identical interests here.

[2]   At least two pending Motions raise this issue as grounds to dismiss or stay the avoidance actions. *See, e.g.,* Motion to Dismiss the Complaint or, in the Alternative, for a Stay, *Picard v. Schiff Family Holdings Nevada Ltd.,* Adv. Pro. No. 10-04363, Dkt. No. 20-1 at 5-9; Defendants' Omnibus Memorandum of Law in Support of Motion to Dismiss, *Picard v. The Jordan H. Kart Revocable Trust,* Adv. Pro. No. 10-04718, Dkt. No. 29 at 11-16.   Whatever the Court's ruling on those Motions and those that make similar arguments, the issue of Trustee standing will be ripe for adjudication later in these proceedings, as detailed below.

This issue is almost certain to require adjudication in these proceedings because the current estimated shortfall of customer property as compared to the amount of allowed claims is now only $1.6 billion (down from over $10 billion), and there are substantial anticipated additional recoveries that will likely close or eliminate that gap. These recoveries include not only those that are likely to result from the Trustee's pending litigation and settlement efforts, but also the portion of the $4.05 billion Madoff Victim Fund overseen by the U.S. Department of Justice that is allocated to the direct customers of Madoff Securities.

Intervenors respectfully request that the Court consider their views before ruling on any Motion that raises the question of the interpretation of Section 8(c)(3), and issue an order consistent with the analysis set out below.

## II.    ARGUMENT

### A.    Section 8(c)(3) Requires the Trustee to Demonstrate an Existing Shortfall in Customer Property at the Time of Recovery.

Section 8(c)(3) contains an explicit threshold requirement for the Trustee's recovery of customer property through avoidance:

> ***Whenever customer property is not sufficient to pay in full the [customer] claims*** [authorized by SIPA § 78fff-2(c)(1)] the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11.

15 U.S.C. § 78fff-2(c)(3) (emphasis added). The statute's plain language requires a showing, at the time the Trustee seeks to recover transfers of customer property, of whether—and to what extent—there is an actual existing shortfall in property necessary to satisfy customer claims.

Absent this showing, the Trustee may not recover transfers of customer property under Section 8(c)(3).[3]

While Section 8(c)(3) does not explicitly state that the sufficiency of customer property must be shown at or before the time of entry of judgment on an avoidance claim, established principles of statutory interpretation compel the conclusion that the sufficiency determination must be made at the time of attempted recovery.

1.    **The plain meaning of Section 8(c)(3) requires that the valuation of customer property must be contemporaneous with recovery.**

Under hornbook rules of statutory construction, both Congress' use of the term "whenever" and its use of the present tense in Section 8(c)(3) ("*whenever … is*") indicate that the recovery of transfers pursuant to Section 8(c)(3) may take place *only at times when* customer property is, in fact, insufficient to satisfy authorized claims. Thus, insufficiency is not merely a trigger for recovery, but rather, it is a condition that must be present *at the time of recovery*. "The starting point for [the] interpretation of a statute is always its language." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989); *accord Connecticut Nat'l Bank v.*

---

[3] The Bankruptcy Code provides no other authority for the Trustee to recover debtor transfers of customer property, as the debtor has no property interest in such transfers. *See In re Bernard L. Madoff Inv. Sec. LLC,* 445 B.R. 206, 237-38 (Bankr. S.D.N.Y. 2011) ("The avoidance provisions of the Code allow a trustee to 'avoid any transfer . . . of *an interest of the debtor in property.*' . . . [H]owever, property held by a broker-debtor for the account of a customer is not property of the broker-debtor." (emphasis in original)). Consequently, to avoid and recover transfers of customer property, the Trustee must rely on Section 8(c)(3), which creates a fictional debtor interest. *Id.* ("Thus, a SIPA trustee would lack standing to utilize these avoidance sections. . . . SIPA section 78fff–2(c)(3) rectifies this defect by creating a fiction that such property '*shall be deemed to have been the property of the debtor*' at the time of the transfer." (emphasis in original)). *See also* 4 Collier on Bankruptcy, par. 749.02[1], p. 749–3 (15th ed. 1987) ("The customer is, of course, not an actual creditor, and under virtually all state and federal securities laws the property does not belong to the debtor prior to transfer. The purpose of these fictions is to enable the trustee to fit the transfer into the provisions of the avoidance sections of the Code." (footnote omitted)) (explaining purpose of Bankruptcy Code section 749(a), which controls stockbroker liquidations not governed by SIPA); *id.* at par. 749.02 [1], p. 749–3 (SIPA avoidance statute analogous to section 749).

*Germain,* 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citing *United States* v. *Ron Pair Enterprises, Inc.,* 489 U. S. 235, 241-242 (1989); *see also Kmart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("If the statute is clear and unambiguous that is the end of the matter for the court . . . must give effect to the unambiguously expressed intent of Congress." (internal quotation marks omitted)). ("[i]f the statute is clear and unambiguous, courts must give effect to Congress' unambiguously expressed intent").

The use of the term "whenever" does not render Section 8(c)(3) ambiguous. To the contrary, where statutory terms are undefined, courts "consider the ordinary, common-sense meaning of the words." *U.S. v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000); *accord, Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."). To ascertain ordinary meaning, courts routinely look to standard dictionary definitions. *Dauray,* 215 F.3d at 261 (using Webster's Third New International Dictionary to determine meaning of undefined statutory term); *Gucci Am., Inc. v. Hall & Associates*, 135 F. Supp. 2d 409, 413 n. 8 (S.D.N.Y. 2001) ("[t]he Court of Appeals for the Second Circuit has relied on Webster's dictionary to determine the ordinary meaning of individual statutory words").

Webster's defines the word "whenever" as "at any or all times that," or alternatively, "in any or every instance in which." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2602 (Merriam Webster, Inc. 1986). For example, as one court noted:

> The word "whenever" can be used as an adverb and as a conjunction. When used as an adverb, the word "whenever" means "at whatever time," or "no matter

> when," such as in the sentence: "We can leave whenever."  Webster's Third New
> International Dictionary 2602 (1981).  The word "whenever" can also be used as a
> subordinating conjunction which connects a subordinate clause to a main clause.
> When used as a conjunction, the word "whenever" can mean "at any or all times
> that" or "in any or every instance in which."  *Id.*  This use of "whenever" is meant
> to convey the existence of a consistent cause and effect relationship between the
> events in the "whenever" cause and the events in the main clause.  Examples of
> this usage are: "Whenever it rains, he carries his umbrella."; "Whenever the large
> hand of the grandfather clock is over the number twelve, the chimes ring the
> hour."  The word "whenever" used as a conjunction may also take its adverbial
> meaning.  Examples of this would include: "Whenever [at whatever time, no
> matter when] you need help, I will assist you."; "Whenever you are ready, we will
> leave."  In this latter usage, the word "whenever" begins a clause containing a
> conditional event or circumstance which may or may not happen to trigger the
> result in the main clause.  This meaning of "whenever" entails an element of
> randomness and uncertainty, leaving open the possibility that the conditional
> event may never occur.

*Semmler v. American Honda Motor Co., Inc.*, 990 F. Supp. 967, 981 (S.D. Ohio 1997)

(construction of patent claim).  In Section 8(c)(3), the word "whenever" is used as a

subordinating conjunction that connects the subordinate clause "[w]henever customer property is

not sufficient to pay [certain customer claims] in full" to the main clause "the trustee may

recover" certain property.  Thus, the term "whenever" in Section 8(c)(3) requires that the

Trustee's recovery of transfers may only occur if and when customer property is, in fact,

insufficient to satisfy authorized customer claims.

Similarly, Congressional use of the present tense in the phrase "is not sufficient" also

indicates that the statute refers to insufficiency at the time of recovery rather than some prior

point in the litigation (such as the time the SIPA liquidation was initiated, or the date on which

an adversary proceeding was filed).  *See* Section 8(c)(3).  "The use of the present tense in a

statute strongly suggests it does not extend to past actions." *Sherley v. Sebelius*, 644 F.3d 388,

394 (D.C. Cir. 2011) (relying on Congress' use of present tense to conclude that statute

prohibiting "research in which a human embryo or embryos *are* destroyed" did not extend to

research in which human embryos "*were* destroyed"); *see also* 1 U.S.C. § 1 ("[W]ords used in the present tense include the future as well as the present."); *Carr v. United States*, 560 U.S. 438, 448 (2010) ("[t]he present tense generally does not include the past"). Thus, if Congress had intended to allow the Trustee to recover on the basis of a historical insufficiency of customer property, the statute would provide for recovery "whenever customer property *was* not sufficient" or "was not sufficient as of the date of the filing of the petition." Section 8(c)(3) is clear and should be applied according to its terms.

> **2.     Other statutory provisions reinforce that the valuation of customer property should be made at the time of recovery, not the time of filing.**

"Statutory construction . . . is a holistic endeavor." *United Savs. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd*., 484 U.S. 365, 371 (1988). Accordingly, other provisions of SIPA, as well as provisions of the Bankruptcy Code, inform the construction of Section 8(c)(3). SIPA contains several references to the petition filing date. *See* SIPA § 16(11) (defining net equity with reference to the amount that would have been owed to a customer had the debtor liquidated on the filing date); *id.* § 8(b) ("For purposes of distributing securities to customers, all securities shall be valued as of the close of business on the filing date."); *id.* § 8(c)(1)(D) ("For purposes of allocating customer property under this paragraph, securities to be delivered in payment of net equity claims for securities . . . shall be valued as of the close of business on the filing date."). *See also Bevill, Bresler & Schulman, Inc. v. Spencer Savs. & Loan Ass'n* (hereinafter *"BBS"*), 83 B.R. 880, 892 (D.N.J. 1988) (noting that "numerous provisions of SIPA require that assets and liabilities be fixed as of the filing date").

These explicit statutory references to the SIPA filing date demonstrate that Congress knows exactly how to designate the filing date as the operative point for measurement of a particular event. Thus, had Congress intended that the sufficiency determination under Section

8(c)(3) occur at the time of filing, Congress would have said so explicitly.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (explicit references to "act or omission" in certain provisions of Federal Tort Claims Act indicate that "Congress knew how to specify 'act or omission' when it wanted to" and therefore, reading those words into a different provision of the Act would "run[ ] afoul of the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'") (quoting 2A N. Singer, STATUTES AND STATUTORY CONSTRUCTION § 46:06, at 194 (6th rev. ed. 2000)); *cf. Allaire Corp. v. Okumus*, 433 F.3d 248, 253 (2d Cir. 2006) ("Indeed, the explicit reference to 'expiration of an option' in Rule 16b-6(d) indicates that the SEC was aware of the potential significance of an option's expiration, suggesting that its omission from Rule 16b-6(a) was likely intentional.").

Moreover, the term "customer property" used in Section 8(c)(3) is specifically defined elsewhere in the statute, in pertinent part, as "cash and securities (except customer name securities delivered to the customer) *at any time* received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer . . ."  SIPA § 16(4) (emphasis added).  Thus, Congress recognized that the customer property held in the estate is not fixed at the time of filing but instead, fluctuates with the trustee's recovery of new funds.  Fixing the amount of customer property held at the time of the SIPA filing would be incongruous with the indefinite nature of "customer property" in SIPA § 16(4) and the reality of the recovery process.  *See United Savs. Ass'n of Texas*, 484 U.S. at 371 ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme-because the same terminology is used elsewhere in a context that makes its meaning clear[.]").

Congress' use of the term "recover" in Section 8(c)(3) is also compelling.  *See*
*Thielebeule v. M/S Nordsee Pilot*, 452 F.2d 1230, 1232 (2d Cir. 1971) (statutes dealing with
matters "relating to the same subject matter" should "be construed *in pari materia*").  Section
550 of the Bankruptcy Code draws a distinction between the avoidance of transfers and the
recovery of funds, providing that once a transfer has been *avoided* under Sections 544, 548, 549,
553(b), or 724(a), the trustee may *recover* from transferees that meet certain criteria.  *See* 11
U.S.C. § 550; *In re AVI, Inc.,* 389 B.R. 721, 733 (B.A.P. 9th Cir. 2008).  The use of the term
"recover" in Section 8(c)(3) in a statute that borrows the avoidance powers of the Bankruptcy
Code thus indicates that the relevant time period for determining the sufficiency of customer
property is not the outset of the action, but rather, the later date on which the Trustee attempts to
recover an avoided transfer.

### 3.    *BBS* is not controlling.

Arguing that the bankruptcy filing date is the operative moment for determining the
sufficiency of customer property, the Trustee relies primarily on the *BBS* case, a 1988 decision
from another district that is neither controlling nor persuasive.  *See* Trustee's Mem. of Law in
Opp'n to Defs.' Mots. to Dismiss ("Trustee Opp.") at 12, *Picard v. Defendants Listed on*
*Appendix A Attached Hereto*, Adv. Proc. No. 08-01789-smb (Bankr. S.D.N.Y. Mar. 10, 2014),
ECF No. 5803.

As a threshold matter, the *BBS* court's discussion of the operative time for determining
sufficiency is *dictum*.  In *BBS*, a SIPA trustee filed avoidance actions against Spencer Savings
and Loan Association ("Spencer") and other defendants to recover post-petition transfers under
Section 549 of the Bankruptcy Code.  83 B.R. at 883.  Defendants disputed whether the debtor's
customer property would be insufficient to pay authorized claims, and the parties brought cross-
motions for summary judgment concerning the date on which the sufficiency of customer

property should be measured.  *Id.*  The trustee argued that this valuation should take place on the

SIPA filing date, while Spencer pointed out that this skews the assessment of sufficiency because

customer funds could be insufficient on the SIPA filing date but sufficient at the later time of

recovery.  *Id.*  Before addressing the merits, the court noted that the date of the valuation of

customer property would have only a theoretical impact on the case:

> As Spencer points out, it is theoretically possible for the customer fund to be
> insufficient on the SIPA "filing date" and, because of income on the fund
> subsequent to the filing date, sufficient to pay all customer-related claims when
> such payments actually occur.  However, the impact in this case of valuing the
> customer fund on the earlier date is not likely to have a great impact on the Euro
> defendants.  First, the trustee has represented—and defendants have pointed to
> little contradictory evidence—that customer property will be insufficient to fully
> satisfy claimants listed in 15 U.S.C. section 78fff–2(c)(1) no matter what date is
> chosen for valuation of customer property.

*Id.* at 891.    Because the *BBS* court acknowledged that the valuation date would not change the

result, its analysis is less a holding than an advisory opinion on this point.

More importantly, *BBS* runs afoul of fundamental precepts of statutory construction by

elevating policy considerations over plain meaning.  After summarily concluding that SIPA was

silent on the timing of the comparative quantification of customer claims and customer property,[4]

the court eschewed any analysis of the statutory text and, instead, immediately turned to "the

overall purpose of SIPA."  *Id.* at 892.    Section 8(c)(3) is unambiguous, and so the *BBS* court

lacked a proper basis to consider policy issues at all, much less to base its construction of the

statute on such concerns.  *Burrage v. United States*, 571 U.S. --, 134, S. Ct. 881, 892 (Jan. 27,

---

[4] The *BBS* court's conclusion that SIPA does not indicate the time of valuation ignores the
statutory language and misconstrues the significance of explicit references to the filing date in
other provisions of SIPA.    Contrary to the suggestion in *BBS*, Congress' use of the phrase
throughout SIPA, coupled with its omission of the phrase in Section 8(c)(3), indicates that
Congress did *not* intend to designate the filing date as the date for valuation of customer property
under Section 8(c)(3).  *See, e.g.*, *Sosa*, 542 U.S. at 711 n. 9.

2014) ("The role of this Court is to apply the statute as it is written—even if we think some other approach might accor[d] with good policy.") (internal quotations omitted) (alteration in original); *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992) ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished."); *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC)*, 721 F.3d 54, 76 (2d Cir. 2013) ("[E]quity has its limits; it may fill certain gaps in a statute, but it should not be used to enlarge substantive rights and powers" (footnote omitted)), *petition for cert. filed*, No. 13-448 (U.S. Oct. 9, 2013); *In re Bell*, 225 F.3d 203, 219 (2d Cir. 2000) ("Unless it leads to absurd or futile results, we must enforce what Congress has commanded whether or not we agree with its policy choices.") (internal citation and quotations omitted); *cf. Law v. Siegel,* No. 12-5196, 2014 WL 813702 (U.S. Mar 4, 2014) ("It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code'.") (quoting 2 Collier on Bankruptcy ¶ 105.01[2], p. 105-6 (16th ed. 2013)).

Moreover, the policy considerations upon which *BBS* relies do not support the Trustee in this case. The court in *BBS* reasoned that requiring a new valuation of customer property at the time each complaint was filed or each judgment entered would "impose enormous administrative burdens on the estate" given the trustee's expenditure of "considerable effort" to determine the value of the fund at a given time. 83 B.R. at 893. The court further reasoned that "placing such a continuing burden on the trustee could result in unwarranted defeat or delay of avoidance actions." *Id*. Finally, the court declined to impose administrative expenses on the estate "in order to avoid the speculative possibility that Spencer will, because of an unexpected sufficiency

of the customer fund, turn out to have defended an avoidance action although avoidance of its transfer was not actually necessary to bring the customer fund to sufficiency." *Id.*

Such concerns are not present in this case:  The Trustee publicly tracks his recoveries and the total amount in the customer property pool.  Likewise, his published statistics report that he has already adjudicated virtually all of the customer claims that will be satisfied from that pool. To the extent that any valuation issues are posed in this case, they involve the estimates of future recoveries, not the fluctuating values of market invested sums.[5]  Rather than a continuous accounting from the Trustee, Intervenors seek a showing at the time of recovery that there is an existing shortfall in the customer property pool.  This is what the statute requires.  Whether that poses an incremental administrative burden on the Trustee is irrelevant.  In any event, although determining the sufficiency of customer property at the time of recovery may involve expert costs, such costs pale in comparison with the administrative costs of pursuing unnecessary recoveries from the thousands of innocent customers and their alleged subsequent transferees named in the avoidance actions.  *See* Trustee's Tenth Interim Report, *In re Madoff*, Adv. Proc. No. 08-01789, Dkt. No. 5554, ¶¶ 157, 160 (Bankr. S.D.N.Y. Oct. 30, 2013).

Echoing *BBS*, the Trustee asserts that after he recovers all customer property and pays allowed customer claims, an avoidance defendant who satisfies the avoidance judgment may then assert a claim against the general estate to recoup his own loss from the excess customer property then remaining.  *See* Trustee Opp. at 12.  This argument ignores the restrictions on a SIPA Trustee's general avoidance powers of customer property due to the special nature of a SIPA

---

[5] Citing *Picard v. Flinn Inv. LLC*, 463 B.R. 280 (S.D.N.Y 2011), the Trustee also suggests that these issues were previously considered and rejected by the District Court. Trustee's Opp. at 13. To the contrary, the District Court in *Flinn* did not have the occasion to decide this issue on the merits.  The court's discussion of the operative time period for the sufficiency determination under Section 8(c)(3) was aimed only at determining whether the issue warranted withdrawal of the reference.

proceeding. *See*, *supra* note 3. It also turns the statute on its head and ignores the administrative

and litigation costs associated with such a wasteful process. To the contrary, fraudulent transfer

law is a creditor's remedy and as such, should not be used to enrich the estate after customers

have been paid in full. *Cf. Whiteford Plastics Co. v. Chase Nat'l Bank of New York City*, 179

F.2d 582, 584 (2d Cir. 1950) ("It would be mockery of justice to say that the alleged bankrupt

may claim through and in the right of creditors whose debts have been paid and discharged; that

he may avoid a transaction, valid as to himself but voidable as to creditors, in the right of non-

existing creditors.") (quoting *In re J.C. Winship Co*., 120 F. 93, 96 (7th Cir. 1903)).

**B.     There Is No Evidence That Significant Administrative Challenges Would Prevent The Trustee From Complying With The Statute And Demonstrating An Existing Shortfall In Customer Property At The Time Of Recovery.**

Because the proper time for the determination of the sufficiency of customer property is

the time of recovery on the avoidance claims, Intervenors respectfully request that the Court

defer this issue until it arises in the normal course of litigation—*i.e.*, after an avoidance

defendant is found liable, but before any entry of judgment to *recover* a specific amount. A

determination of this issue is not required by the present motion and would be premature at this

time. Instead, the proper time for the court to address this issue is when an action seeking

recovery of customer property is ready for trial. At that time, this Court has ample authority to

address this issue under Fed. R. Civ. P. 42(b),[6] which provides that "[f]or convenience, to avoid

prejudice, or to expedite and economize, the court may order a separate trial of one or more

separate issues . . . ." *See e.g., In re Lokotnicki*, 232 B.R. 583, 589 (Bankr. W.D.N.Y. 1999)

(bifurcating litigation on separate elements of a claim brought in an adversary proceeding to

avoid undue burden otherwise caused to defendants). Pursuant to Rule 42(b), the Court may, and

---

[6]    Fed. R. Civ. P. 42 is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7042.

should, reserve the entry of judgment on the amount of recovery that will be allowed against any particular defendant pending a showing by the Trustee as to the then-existing discrepancy between customer property and authorized claims (if any).[7]   Any other procedure would prejudice avoidance defendants by allowing the Trustee to deprive them of resources unnecessarily and without underlying statutory authority.[8]

Bifurcation of this Court's consideration of the avoidance and recovery issues is not only consistent with the requirements of Section 8(c)(3) but also is consistent with the procedure employed in similar contexts where it is necessary to allocate liability among multiple defendants after determinations on liability. *See e.g.,* N.Y. C.P.L.R. § 1403 (New York law permits a hypothetical contribution claim to be brought by a defendant against both parties and non-parties through "cross-claim, counterclaim or third-party claim in a pending action" in the event the original defendant is found liable); *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 512, 539 N.E.2d 1069, 541 N.Y.S.2d 941 (1989) (adopting market share theory to calculate amount of several liability of marketers of DES for pregnancy use based on each liable defendant's share of the national market).

Contrary to the Trustee's assertions, proving the existence of such a shortfall at the relevant stage of the proceedings should not pose a "logistical nightmare" but may be quite simple -- perhaps even undisputed.  If a shortfall exists, the Trustee should be able to offer proof that the total amount of customer property held by the estate is less than the amount of

---

[7]   Most of the Intervenors have not consented to the entry of final judgment by the Bankruptcy Court in the avoidance actions, so the ultimate determination on the actions against them will have to be made by the District Court.  *See SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.)*, 490 B.R. 46 (S.D.N.Y. 2013).

[8]   Alternatively, after determining avoidance liability, this Court may withhold final judgment pending a hearing by analogy to Fed. R. Civ. P 54(b), because the statutory limitations on the Trustee's authority to bring an avoidance action represent "just reason" for delay of a final order against any individual avoidance defendant.

authorized customer claims awaiting payment.  The computation of the amount of customer property available to satisfy customer claims should also be fairly straightforward.  Depending on the course of future events, customer property may include (1) the funds the Trustee already collected, (2) funds the Trustee is reasonably certain to recover in the future as a result of any still pending avoidance actions, other legal actions, and/or disposition of any other property whose proceeds will flow to the customer property pool, and (3) the funds paid and/or allocated by the Madoff Victim Fund ("MVF") to victims holding allowed customer claims.

On his website (www.madofftrustee.com), the Trustee reports that as of March 14, 2014, he had collected $9.795 billion[9] for the pool of customer property.  These funds are dedicated to the satisfaction of allowed customer claims.  Any funds the Trustee will recover in the future as a result of pending avoidance and other legal actions will add to that segregated asset pool.  *See* SIPA § 16(4)(E).  Likewise, the United States Department of Justice has announced on the MVF website (www.madoffvictimfund.com) that it will have more than $4.05 billion[10] in forfeited funds to distribute to victims of the Madoff Ponzi scheme, including payments to satisfy allowed customer claims.[11]  Since the definition of customer property is broad, and contemplates multiple

---

[9] *See Recoveries,* The Madoff Recovery Initiative, http://www.madofftrustee.com/recoveries-04.html (last visited March 17, 2014).

[10] *See JP Morgan Forfeiture Settlement: Statement from Special Master Richard C. Breeden,* http://www.madoffvictimfund.com/JPM-Forfeiture-Statement.shtml (last visited March 17, 2014).

[11] The Department of Justice has provided SIPC customer claimants with allowed claims their own unique "Form DIR" that should allow the Department of Justice to track the MVF funds that will go to SIPC claimants, even if the MVF has not distributed all forfeited funds by the time of recovery.  *See Direct Investors in Madoff Securities*, Madoff Victim Fund, http://www.madoffvictimfund.com/Direct_Investor.shtml (last visited March 17, 2014).

sources of customer property, *see* SIPA § 16(4)(E), the share of the MVF assets going to satisfy claims filed by SIPC claimants should be included as "customer property."[12]

Similarly, the authorized claim component of the sufficiency analysis hinges on the amount due to customers under Section 8(c)(1)(B).[13]    As of March 14, 2014, the Trustee reports that the total value of allowed claims was approximately $11.402 billion.[14] Thus, the Trustee's representation is that the customer property already in his possession is only $1.6 billion less than the total amount of customer claims that he has allowed.  Moreover, the Trustee has reported that he is seeking additional recoveries of customer property that vastly exceed that deficit, without even considering the portion of the $4.05 billion DOJ Madoff Victim Fund that will be allocated to satisfy customer claims.

Consequently, depending on future events, it may be undisputed at the time of judgment in the avoidance actions that customer property exceeds allowed customer claims, thereby barring the Trustee from recovery.  It is also possible that at the time of recovery there will still be an existing deficit in customer property, but that the Trustee's then-pending efforts are almost certain to result in a surplus.[15] If the Trustee does prevail in establishing a shortfall in customer

---

[12] Alternatively, where payments from the MVF will satisfy a claim, those funds will reduce the total amount of outstanding customer claims, as it is surely not the Trustee's position that he is entitled to avoid and recover transfers in order to provide a customer claiming against both the estate and the MVF with double recovery.

[13]  The amount due to SIPC as subrogee for the claims of customers is limited to the statutory maximum of $500,000 that SIPC advances to customers with claims for securities and is subsumed within the total Allowed Claims. *See* 15 U.S.C. § 78fff-3(a) (allowing advances by SIPC of up to $500,000 to each customer holding a claim for securities).

[14] *See Claims*, The Madoff Recovery Initiative, http://www.madofftrustee.com/claims-03.html (last visited March 17, 2014).

[15] In such circumstances, the parties may advocate -- and Court may use its discretion to apply -- an estimation analysis well known in the field of accounting and well-established in bankruptcy jurisprudence. *See, e.g.,* 11 U.S.C. § 502(c)(1) (specifically authorizing estimation of the amount of allowed claims to avoid "undu[e] delay [in] the administration of the case."); Fed. R. Bankr.

property, the Court should limit each avoidance defendant's liability accordingly. Even if all the amounts at issue are disputed, this is hardly a basis to excuse compliance with the statute, as the parties are fully capable of litigating such fact disputes. In any event, there is no need at this time for the Court to rule on the details of proof issues that may arise later in connection with Section 8(c)(3)'s statutory bar. The nature of any such issues will depend on future developments, and a ruling on them at the Rule 12 stage is premature.

### III.    CONCLUSION

Intervenors urge the Court, to the extent that it is inclined to address the proper interpretation of Section 8(c)(3) in connection with the pending Motions, to give effect to the plain language of the statute and hold that the Trustee will be required to demonstrate a shortfall of customer property at the time of recovery. The record now before this Court is not adequate to permit findings of fact as to the Trustee's standing to recover, but the increasing amount of customer property collected and the growing certainty regarding the total of allowed customer claims indicate that adjudication at a later stage of these proceedings will be both necessary and possible.

---

P. 3018(a) (permitting temporary allowance of claims for voting purposes in a reorganization case); *Matter of Xonics Photochem., Inc.*, 841 F.2d 198, 200 (7th Cir. 1988); *accord*, *In re Advanced Telecomm. Network, Inc.*, 490 F.3d 1325, 1335 (11th Cir. 2007) ("The 'fair value' of a contingent liability, of course, should be discounted according to the possibility of its ever becoming real.") (citing *Xonics*, 841 F.2d at 200); *In re R.M.L., Inc.*, 92 F.3d 139, 156 (3d Cir. 1996) ("[I]f a debtor's treatment of an item as an 'asset' depends for its propriety on the occurrence of a contingent event, a court must take into consideration the likelihood of that event occurring from an objective standpoint") (citing *Xonics*, 841 F.2d at 200); *Syracuse Engr'g Co. v. Haight*, 97 F.2d 573, 573 (2d Cir. 1938) (discounting debtor's contingent assets based on probability of contingency occurring); *In re Oneida, Ltd.*, 383 B.R. 29, 38 (Bankr. S.D.N.Y. 2008) (applying *Xonics* analysis to discount contingent claims), *overruled on other grounds sub nom. Pension Ben. Guar. Corp. v. Oneida Ltd.*, 562 F.3d 143 (2d Cir. 2009). In this case, it is premature to make any determination regarding whether such efforts are required.

-16-

Dated:  March 17, 2014

Respectfully submitted,

K&L GATES LLP

By:    /s/ Richard A. Kirby
     Richard A. Kirby
     Laura K. Clinton
     1601 K Street NW
     Washington, DC 20006-1600
     Tel:  (202) 778-9000
     Fax:  (202) 778-9100

*Attorneys for defendants in the Lowrey matter,*
*1:10-ap-4387 and in United Congregations Mesora*
*1:10-ap-5110*

BRYAN CAVE LLP

By:    /s/ Thomas J. Schell
     Thomas J. Schell
     Eric Rieder
     1290 Avenue of the Americas
     New York, New York  10019
     Tel: (212) 541-2000
     Fax: (212) 541-1462
     tjschell@bryancave.com

*Attorneys for Defendants The Estate of Sarah E.*
*Pearce, Norton S. Rosensweig, Linda Rosensweig,*
*David B. Pearce, Jonathan P. Rosensweig, Julie*
*Schwartz, and Laurie Blank*

DENTONS US LLP

By:    /s/ Carole Neville
     Carole Neville
     Claude D. Montgomery
     1221 Avenue of the Americas
     New York New York 10020
     Tel:  (212) 768-6700
     Fax:  (212) 768-6800
     carole.neville@dentons.com

*Attorneys for Harold Hein and James Grieff*

PRYOR CASHMAN LLP

By:    /s/ Richard Levy, Jr.
       Richard Levy, Jr.
       David C. Rose
       7 Times Square
       New York, New York 10036
       Tel: (212) 421-4100
       Fax: (212) 326-0806
       rlevy@pryorcashman.com
       drose@pryorcashman.com

*Attorneys for Kara Fishbein Goldman and Steven Goldman*

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:    /s/ Elise S. Frejka
       Philip Bentley
       Elise S. Frejka
       Jason S. Rappaport
       1177 Avenue of the Americas
       New York, New York 10036
       Tel: (212) 715-9100
       Fax: (212) 715-8000

*Attorneys for Agas Company L.P., Michael Goldstein, Indian Wells Partnership, LTD., Margaret and Richard Lipmanson Foundation, and Branch Family Development, LLC*

LOEB & LOEB LLP

By:    /s/ Daniel B. Besikof
       P. Gregory Schwed
       Daniel B. Besikof
       345 Park Avenue
       New York, New York  10154
       Tel:  (212) 407-4000
       Fax:  (212) 407-4990
       gschwed@loeb.com
       dbesikof@loeb.com

*Attorneys for Kenneth L. Evenstad Revocable Trust u/a/d May 2, 2000 and* MBE Preferred Limited Partnership