**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Oren J. Warshavsky
owarshavsky@bakerlaw.com
Geoffrey A. North
gnorth@bakerlaw.com
Dominic A. Gentile
dgentile@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*substantively consolidated Liquidation of Bernard*
*L. Madoff Investment Securities LLC and the*
*estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Adv. Pro. No. 08-01789 (SMB) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| Debtor. | (Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 09-01364 (SMB) |
| v. | |
| HSBC BANK PLC, et al., | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO ALPHA PRIME FUND**
**LTD.'S AND SENATOR FUND SPC'S MOTION FOR AN ORDER PURSUANT TO**
**SECTION 105(a) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-390**
<u>**AUTHORIZING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

      I.       THE TRUSTEE'S ACTIONS AGAINST ALPHA PRIME AND
             SENATOR FUND ...................................................................................... 3

      II.     ALPHA PRIME'S, SENATOR FUND'S, AND THEIR SERVICE
             PROVIDERS' LITIGATION TACTICS IN THE HSBC ACTION ...................... 5

ARGUMENT .............................................................................................................. 8

      I.       ALPHA PRIME'S AND SENATOR FUND'S MOTION SHOULD BE
             DENIED .................................................................................................... 8

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.T. Reynolds & Sons, Inc.*,
  452 B.R. 374 (S.D.N.Y. 2011)..................................................................................................9

*Dawson v. United States*,
  68 F.3d 886 (5th Cir. 1995) ....................................................................................................9

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
  Madoff)*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Oct. 21, 2010)..................................9, 10

**Statutes**

11 U.S.C. § 105(a) .........................................................................................................................1

11 U.S.C. § 546(e) .........................................................................................................................7

11 U.S.C. § 548(a)(1)(A) ...............................................................................................................7

11 U.S.C. § 548(c) .........................................................................................................................7

11 U.S.C. § 550(b) .........................................................................................................................7

15 U.S.C. § 78aaa *et seq.* ...............................................................................................................1

**Rules**

Fed. R. Bankr. P. 2004................................................................................................................4, 6

Fed. R. Evid. 408 .......................................................................................................................1, 2

**Other Authorities**

General Order M-390 Authorizing Alternative Dispute Resolution Procedures........................1, 9

*In re: Adoption of Procedures Governing Mediation of Matters and the Use of
  Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy
  Cases and Adversary Proceedings.*............................................................................................9

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation

of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), and the estate of Bernard L. Madoff

("Madoff"), respectfully submits this memorandum of law in opposition to defendants Alpha

Prime Fund Limited's ("Alpha Prime") and Senator Fund SPC's ("Senator Fund") motion for an

order pursuant to section 105(a) of the Bankruptcy Code and General Order M-390 Authorizing

Alternative Dispute Resolution Procedures (the "Motion").

## PRELIMINARY STATEMENT

Complaining of the pace of litigation—which, in this case, has been delayed by their own

recalcitrance and litigation tactics—Alpha Prime and Senator Fund seek to strong-arm the

Trustee into sitting with them at the negotiating table again, just months after the latest in their

series of settlement discussions with the Trustee failed, and with the circumstances unchanged

since then.  It is not the parties' unwillingness to negotiate that has derailed past discussions—

several times over the past four and a half years, the Trustee has engaged directly with Alpha

Prime and Senator Fund about possible settlement.  Nor is it an inability to find a structure within

which to negotiate—the parties agreed to such a structure.  Rather, it is the moving defendants'

conduct that made past negotiations unsuccessful and make mediation at this time likely to fail,

resulting only in the waste of party resources.  Regardless of whether the Motion would be

proper under any circumstances, given the circumstances here, the Motion should be denied.

The Motion puts the Trustee in the unfortunate position of having to allude to settlement

discussions to oppose the Motion, yet protect the substance of the discussions pursuant to Rule

408 of the Federal Rules of Evidence.[1]  Nevertheless, the tenor of the discussions demonstrates why the Trustee opposes the Motion.  In 2013, as part of a settlement discussion, Alpha Prime provided voluntary "disclosures" that omitted potentially inculpatory materials.  When the Trustee asked Alpha Prime to address those omissions by producing documents, the fund first skirted the issue and then resorted to clumsy brinksmanship, including "requesting" the information in the Trustee's possession so that it could withhold information and tailor its disclosures to match the third-party materials already in the Trustee's possession.  Now, in the guise of streamlining and efficiency, the funds say that the claims should be mediated without exchanging any further evidence with the Trustee before mediation, but that they should be free to submit evidence to a mediator to demonstrate their purported good faith.

The chances of any meditation's success are tied to the parties' willingness to participate in good faith and exchange information related to the merits of the claim.  Here, the funds have made clear that they are unwilling to disclose facts concerning the circumstances in which they received transfers from BLMIS—the facts at the heart of the Trustee's claims to avoid and recover customer property from the funds and the Trustee's claims to subordinate the funds' customer claims.  While in general, the early, amicable resolution of claims may benefit the BLMIS customer property estate, here, in light of the parties' past negotiations and the funds' positions in the Motion, mediation will likely only result in further waste.  The funds should not be permitted to strong-arm the Trustee to engage in mediation.

---

[1] The substance of all settlement discussions referred to in this memorandum of law is subject to Fed. R. Evid. 408, and therefore is not disclosed herein.

## STATEMENT OF FACTS

### I.   THE TRUSTEE'S ACTIONS AGAINST ALPHA PRIME AND SENATOR FUND

Alpha Prime and Senator Fund were investment vehicles solely invested in BLMIS.  The

two funds have similar origins, both having been co-founded by Ursula Radel-Leszczynski, with

the backing of Bank Medici, both defendants here.[2]  The funds were operated by officers and

directors, some of whom were involved with both funds.[3]  Despite those commonalities, each

fund's investment history with BLMIS is independent of the other's, and each fund engaged in

separate conduct with respect to the customer property it received.

Alpha Prime held a BLMIS account from June 2003 through December 2008 and, in that

time, received avoidable transfers totaling $85,824,714.[4]  Senator Fund held a BLMIS account

from July 2006 through December 2008, and in that time, received transfers totaling

$95,392,688.[5]

The Trustee sued Alpha Prime and, later, Senator Fund for the avoidance and recovery of

preferential and fraudulent transfers, and the disallowance or subordination of their customer

claims.

Alpha Prime has employed diversionary tactics from the beginning of this litigation.

Although typically treated as a tagalong in discussions between Alpha Prime and the Trustee—

and sometimes not present at all—Senator Fund's dealings with the Trustee have been

---

[2] *See* Am. Compl. at 28–29, ECF No. 34.

[3] *Id.*

[4] *Id.* at 117.

[5] *Id.* at 118.

characterized by similar gamesmanship.  In July 2009, the Trustee filed a complaint, seeking to

avoid and recover the preferential and fraudulent transfers Alpha Prime received, and to disallow

its customer claim.  Alpha Prime was served with the complaint in July 2009, but did not timely

respond or seek an extension of the deadline by which to respond.  Instead, after contacting the

Trustee to initiate settlement discussions, it chose to remain in default, backing out of an

agreement with the Trustee to accept service of the complaint in exchange for the vacation of the

default,[6] on the mistaken belief that by remaining in default, the fund would avoid the

jurisdiction of the Bankruptcy Court.

In May 2010, Alpha Prime renewed its efforts to settle with the Trustee.  This time,

although not yet a defendant in any case commenced by the Trustee, Senator Fund entered the

discussions as well.  The primary reason the two funds approached the Trustee to discuss

settlement together appears not to be to resolve issues involving factual commonalities, but

rather because they are represented by the same counsel.  The discussions were not fruitful.

On December 5, 2010, with the benefit of the Rule 2004 investigation, the Trustee filed

an amended complaint in the Alpha Prime case.  In the amended complaint, the Trustee named

not only Alpha Prime, but Senator Fund and over sixty other parties as defendants.  Each

defendant named in the amended complaint is either a Madoff feeder fund serviced by an HSBC

Bank entity, an agent (mainly directors and service providers) of the defendant feeder funds, or

an HSBC Bank entity.  In the amended complaint, the Trustee alleged that the defendants, having

observed that various claims Madoff made about his trading were impossible and having

---

[6] In September 2010, in exchange for granting its consent to the Trustee's filing of an amended
complaint, Alpha Prime's default was vacated.  *See* Stipulation and Order (i) Vacating Entry of
Default and (ii) Permitting the Trustee to File an Amended Complaint, ECF No. 27.

understood Madoff's representations to be indicia of fraud, were aware of the fraud. Those

allegations support the Trustee's causes of action against Alpha Prime—the avoidance and

recovery of the transfers of customer property under SIPA and the Bankruptcy Code and the

disallowance or subordination of its customer claim. The Trustee asserted similar causes of

action against Senator Fund, supported by similar factual allegations. The Trustee's avoidance

and subordination claims are fact-intensive, and any settlement discussion or mediation of those

claims will necessarily involve those facts.

## II.    ALPHA PRIME'S, SENATOR FUND'S, AND THEIR SERVICE PROVIDERS' LITIGATION TACTICS IN THE HSBC ACTION

In the Motion, Alpha Prime and Senator Fund complain that litigation has not progressed

quickly enough to satisfy them, and therefore, the Trustee must be compelled to mediation. But

the funds' tactics, and the tactics of affiliated parties represented by the same counsel, are the

cause of the delay in the case.

Counsel for Alpha Prime and Senator Fund also represents several of the service provider

defendants named in the case, including Alpha Prime Asset Management and Tereo Trust, Alpha

Prime's investment manager and investment adviser, and Regulus Asset Management and

Carruba Asset Management, Senator Fund's investment manager and investment adviser.[7]

Although those parties are not before the Court on the Motion, their conduct is relevant because

they employed several similar tactics, including a misguided attempt to strong-arm the Trustee to

participate in mediation.

---

[7] The same counsel also represents defendant Ursula Radel-Leszczynski, a co-founder and former director of both Alpha Prime and Senator Fund, and White Orchard Investments Ltd., a defendant in another adversary proceeding, which has been in default for nearly two years.

In December 2011, Alpha Prime Asset Management, Carruba, and Regulus moved to dismiss the Trustee's claims for lack of personal jurisdiction. Tereo moved to dismiss for failure to state a claim. After the motions were fully briefed, the parties stipulated to engage in limited jurisdictional discovery. The four moving defendants made an initial production of documents that, in light of documents the Trustee had received from other parties in the Rule 2004 investigation, was clearly incomplete. The four moving defendants omitted from their production documents demonstrating the parties' jurisdictionally relevant contacts, including documents that were unquestionably in their possession. The Trustee asked for confirmation that the production was the entirety of the documents the defendants intended to produce. The defendants delayed in responding. The Trustee spent the next ten weeks fighting through a series of diversions, receiving no further documents, before these defendants demanded that the Trustee submit to mediation instead of continuing to litigate the motions to dismiss. Mediation was then, as it is now, an inappropriate method of proceeding, given the defendants' obstruction of the discovery process in the face of the litigation of fact-sensitive issues.

Within a few weeks, perhaps sensing a stalemate and in light of communications with the court, the defendants claimed to have suddenly gained access to additional documents. One day later, although not authorized by the stipulation or the Federal Rules of Civil Procedure, the defendants served a request for production of documents and interrogatories on the Trustee. The stated goal behind this request was to allow these defendants to provide back to the Trustee only the documents that the Trustee already had in his possession.

The Trustee pointed out that by serving the discovery requests, the defendants had submitted to jurisdiction and that, in any event, the Trustee refused to respond, because doing so would allow the defendants to omit any additional inculpatory material from their responses.

6

Three weeks later, the defendants withdrew their motions, and three months after that, the

defendants filed answers to the Trustee's complaint.

The funds themselves have also contributed to the protracted litigation of legal issues for

which they sought the withdrawal of the Bankruptcy Court reference.  In May 2011, Alpha

Prime and Senator Fund filed a joint answer and cross-claim against HSBC.  Nonetheless, in

September 2011, the funds joined the motion filed by another defendant feeder fund seeking the

withdrawal of the Bankruptcy Court reference so that the District Court could consider: (1) the

"safe harbor" defense under section 546(e) of the Bankruptcy Code (even though Senator Fund

received transfers only within the two-year period); and (2) the standard for an avoidance claim

under sections548(a)(1)(A), 548(c), and 550(b) of the Bankruptcy Code, even though they had

already answered the complaint.

In connection with the second issue, in July 2012, Alpha Prime and Senator Fund, as joint

lead defendants, filed a consolidated brief on behalf of BLMIS customers to challenge the "good

faith" standard as it applies to avoidance actions pursuant to 11 U.S.C. § 548(c) or 11 U.S.C.

§ 550(b) in SIPA cases.  Although they had already submitted the main brief on the issue, Alpha

Prime and Senator also jointly signed one of the supplemental briefs on the same issue.  The

issues raised in those briefs have not yet been decided by the District Court, and thus remain

pending.  Thus, when Alpha Prime and Senator Fund complain that this action has taken too

long, they should look to their litigation decisions: Alpha Prime was in default for over a year;

both defendants requested extensions to respond to the complaint, and both filed motions shortly

after filing answers, depriving the Trustee the ability to move the case forward.

In late 2012, Alpha Prime and Senator Fund sought to rekindle settlement discussions

with the Trustee.  Recognizing that for settlement discussions to advance, the Trustee would

need certain facts, the funds' counsel proposed that each fund enter into a term sheet with the

Trustee governing, among other things, voluntary disclosure.  The Trustee and Alpha Prime

executed a term sheet.  Senator Fund, however, did not enter into a term sheet.

From the start, Alpha Prime's disclosure of information was incomplete, omitting

material facts and presenting other facts inaccurately.  The Trustee, alluding to documents he had

obtained from other sources, brought certain deficiencies to Alpha Prime's attention.  The fund

failed to adequately address most deficiencies.  Although Alpha Prime allowed the term sheet to

expire, it continued to demand that the Trustee engage in settlement discussions.  In October

2013, with the Trustee concerned by Alpha Prime's efforts to omit and misrepresent material, the

Trustee informed Alpha Prime that he could not continue to engage in settlement discussions.

Despite the unsuccessful end of the negotiations just months before, in February 2014,

Alpha Prime's and Senator Fund's counsel asked the Trustee's counsel to consent to mediation.

The funds' request contained no details about the scope of or the procedures for the mediation.

When pressed for details, the funds' counsel confirmed he saw no need for further disclosure of

information in connection with the proposed mediation.  He refused to explain why the Trustee's

claims against Alpha Prime and Senator Fund should be mediated together.

## ARGUMENT

### I.    ALPHA PRIME'S AND SENATOR FUND'S MOTION SHOULD BE DENIED

Alpha Prime and Senator Fund can point to no authority that would allow them to strong-

arm the Trustee to participate in mediation.

8

Mediation is "typically a voluntary process."[8]  And "ultimately, [it] will only succeed if the parties themselves want it to, and a court's order to mediate . . . will not change the mind of [a] party who believes that settlement is not in their best interest."[9]  A party cannot be coerced into settling or into making an offer to settle, by threat of sanction or otherwise.[10]  Here, in light of the parties' extensive prior direct negotiations and the funds' obstruction of discovery, court-ordered mediation is an inappropriate method of proceeding.

Neither General Order M-390 of the United States Bankruptcy Court for the Southern District of New York[11] nor the Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order,[12] the two authorities to which Alpha Prime and Senator Fund point, would compel any different result.

General Order M-390 sets forth procedures under which the mediation of a bankruptcy case or an adversary proceeding could be conducted.  It is not authority to compel mediation.[13] In light of the Trustee's good-faith settlement discussions with Alpha Prime and Senator Fund in the past, the Trustee believes that mediation prior to discovery would only waste resources.

---

[8] *In re A.T. Reynolds & Sons, Inc.*, 452 B.R. 374, 381 (S.D.N.Y. 2011).

[9] *Id.* at 383.

[10] *Id.* at 382 (citing *Dawson v. United States*, 68 F.3d 886, 897 (5th Cir. 1995)).

[11] *In re: Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings.*

[12] *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 3141.

[13] General Order M-390, Section 1.1.

9

The Order Establishing Litigation Case Management Procedures for Avoidance Actions

governs only cases in which the Trustee "has not discovered evidence of lack of good faith."[14]  It

does not govern cases, as here, where there are allegations of inequitable conduct and lack of

good faith, which would support the recovery of principal and the equitable subordination of the

defendants' customer claims.  The Avoidance Actions referred to in the Order do not require the

determination of complex factual questions that the Trustee's cases against Alpha Prime and

Senator Fund involve.  Contrary to Alpha Prime's and Senator Fund's insinuation, the Order

does not announce a general policy for mandatory mediation of a trustee's avoidance action upon

the mere request of a defendant, regardless of the circumstances.  Given the posture of this

proceeding, mediation would be fruitless.

There are cases in which the Trustee will explore early settlement because of the benefit

the settlement could confer upon the BLMIS customer property estate.  Indeed, in this case, the

Trustee repeatedly engaged with Alpha Prime and Senator Fund in direct negotiations.  Those

negotiations have proven, however, that early, pre-discovery settlement would likely not benefit

the estate.  Alpha Prime's and Senator Fund's motion should be denied.

### CONCLUSION

For each of the foregoing reasons, Movants have failed to establish a basis for the entry

of an order directing the parties to engage in mediation and their motion should be denied.

---

[14] Trustee's Motion for Entry of an Order (1) Approving Litigation Case Management Procedures for Avoidance Actions and (2) Amending Global Protective Order, *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Oct. 21, 2010), ECF No. 3058 n.5 ("For the Avoidance Actions (the actions governed by the within proposed procedures), the Trustee, to date, has not discovered evidence of lack of good faith and will proceed under this presumption to limit recoveries sought to fictitious profits and preferences.").

Dated:  New York, New York
       March 18, 2014

Respectfully submitted,

*s/ Geoffrey A. North*

Baker & Hostetler LLP
45 Rockefeller Plaza
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Geoffrey A. North
Email: gnorth@bakerlaw.com
Dominic A. Gentile
Email: dgentile@bakerlaw.com


*Attorneys for Irving H. Picard Trustee for
the substantively consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and the estate of
Bernard L. Madoff*