Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

Hearing Date:  April 17, 2014
Hearing Time:  10:30 a.m. (EST)
Objection Deadline:  April 10, 2014
Time:  4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**FOURTEENTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
AUGUST 1, 2013 THROUGH NOVEMBER 30, 2013**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     BACKGROUND .................................................................................................... 6

     A.      THE SIPA LIQUIDATION ............................................................................ 6

     B.      THE TRUSTEE, COUNSEL AND CONSULTANTS ....................................... 6

     C.      PRIOR COMPENSATION ORDERS .............................................................. 7

III.    SUMMARY OF SERVICES ................................................................................... 8

     A.      HARDSHIP PROGRAM ............................................................................... 8

     B.      THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ................... 9

           i.      Recoveries Accomplished During The Compensation Period.................. 9

IV.     DETAILED DESCRIPTION OF SERVICES............................................................ 10

     A.      MATTER 01 ............................................................................................. 11

           i.      Task Code 01: Trustee Investigation ..................................................... 11

           ii.     Task Code 02: Bankruptcy Court Litigation........................................... 11

           iii.    Task Code 03: Feeder Funds.................................................................. 12

           iv.     Task Code 04: Asset Research and Sale ................................................. 12

           v.      Task Code 05: Internal Meetings with Staff .......................................... 13

           vi.     Task Code 07: Billing and Trustee Reports............................................ 13

           vii.    Task Code 08: Case Administration ....................................................... 13

           viii.   Task Code 09: Banks ............................................................................ 14

           ix.     Task Code 10: Court Appearances ......................................................... 15

           x.      Task Code 11: Press Inquiries and Responses........................................ 15

           xi.     Task Code 12: Document Review ........................................................... 15

           xii.    Task Code 13: Depositions and Document Productions by the
                Trustee................................................................................................ 15

           xiii.   Task Code 14: International.................................................................... 16

           xiv.    Task Code 15: Charities......................................................................... 17

           xv.     Task Code 19: Non-Bankruptcy Litigation............................................. 17

           xvi.    Task Code 20: Governmental Agencies ................................................. 17

           xvii.   Task Code 21: Allocation ...................................................................... 17

     B.      MATTER 03 – CHAIS ............................................................................... 19

     C.      MATTER 04 – MERKIN ............................................................................ 20

# TABLE OF CONTENTS

(continued)

**Page**

D.    MATTER 05 – CUSTOMER CLAIMS ................................................................ 23

    i.    Customer Claims ............................................................................ 23

    ii.    General Creditor Claims ................................................................ 23

    iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process .............................................................................. 24

E.    MATTER 06 – VIZCAYA ............................................................................. 25

F.    MATTER 07 – MADOFF FAMILY .............................................................. 26

G.    MATTER 09 – FAIRFIELD GREENWICH .................................................. 29

H.    MATTER 11 – COHMAD SECURITIES CORPORATION ........................... 33

I.    MATTER 13 – KINGATE ............................................................................ 33

J.    MATTER 18 – THYBO ................................................................................ 35

K.    MATTER 21 – AVOIDANCE ACTION LITIGATION .................................. 36

L.    MATTER 27 – JP MORGAN CHASE ........................................................... 38

M.    MATTER 28 – WESTPORT ......................................................................... 39

N.    MATTER 29 – RYE/TREMONT .................................................................. 40

O.    MATTER 30 – HSBC .................................................................................. 42

P.    MATTER 32 – UBS/LIF .............................................................................. 43

Q.    MATTER 33 – NOMURA INTERNATIONAL PLC ...................................... 45

R.    MATTER 34 – CITIBANK ........................................................................... 46

S.    MATTER 35 – NATIXIS ............................................................................. 47

T.    MATTER 36 – MERRILL LYNCH .............................................................. 47

U.    MATTER 40 – MEDICI ............................................................................... 48

V.    MATTER 42 – EQUITY TRADING ............................................................. 49

W.    MATTER 43 – DEFENDER ......................................................................... 50

X.    MATTER 46 – GLANTZ ............................................................................. 51

Y.    MATTER 52 – DONALD FRIEDMAN ........................................................ 52

Z.    MATTER 53 – MAGNIFY ........................................................................... 54

AA.    MATTER 54 – MENDELOW ....................................................................... 56

BB.    MATTER 58 – PJ ADMINISTRATORS ...................................................... 56

CC.    MATTER 59 – STANLEY SHAPIRO ......................................................... 57

DD.    MATTER 60 – AVELLINO & BIENES ....................................................... 58

# TABLE OF CONTENTS
(continued)

**Page**

EE.     MATTER 61 – MAXAM ...................................................................... 59

FF.     MATTER 62 – SUBSEQUENT TRANSFERS .................................... 60

GG.     MATTER 65 – LEGACY .................................................................... 60

HH.     MATTER 66 – LIEBERBAUM .......................................................... 61

II.     MATTER 72 – PLAZA ....................................................................... 61

JJ.     MATTER 73 – BNP PARIBAS .......................................................... 62

V.     COMPENSATION REQUESTED ................................................................. 63

VI.     THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ......... 67

VII.     CONCLUSION ............................................................................................. 68

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the

"Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, the

"Debtor"), respectfully submits this fourteenth application (the "Application") on behalf of the

Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of

the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of

SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local

Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of

Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on

December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second

Amended Compensation Order"), allowing and awarding (i) interim compensation for services

performed by the Trustee and B&H for the period commencing August 1, 2013 through and

including November 30, 2013 (the "Compensation Period"), and (ii) reimbursement of the

Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period,

and in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The work completed by Irving H. Picard, as Trustee, and B&H, as counsel to the

Trustee, during the Compensation Period yielded significant results for BLMIS customers and

the liquidation.  As recognized by the United States District Court for the Southern District of

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

New York (the "District Court"), the Trustee "has worked relentlessly over nearly three years to bring assets that passed through [BLMIS] back into the customer fund, in order to restore nearly $20 billion in customer losses." *Picard v. J.P. Morgan Chase & Co.*, 460 B.R. 84, 89 (S.D.N.Y. 2011). Through pre-litigation and other settlements, which were approved by the Bankruptcy Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, more than $9.51 billion as of November 30, 2013—more than 54% of the $17.5 billion of principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.[2]

2.      On October 5, 2011, the Trustee, with this Court's approval, distributed $311.854 million, or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to October 5, 2011 and through the end of the Compensation Period, an additional $203.780 million was distributed as catch-up payments. After the Compensation Period, an additional $556,000 was distributed as catch-up payments, bringing the total first interim distribution amount to $516.190 million through March 20, 2014.

3.      On September 19, 2012, the Trustee, with this Court's approval, distributed $2.479 billion, or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to September 19, 2012 and through the end of the Compensation Period, an additional $1.262 billion was distributed as catch-up payments. After the Compensation Period, an additional $4.057 million was distributed as catch-up payments, bringing the total second interim distribution amount to $3.746 billion through March 20, 2014.

4.      On March 29, 2013, the Trustee, with this Court's approval, distributed approximately $506.227 million, or 4.721% of each BLMIS customer's allowed claim, unless

---

[2] Almost $20 billion of principal was lost in the Ponzi scheme in total. Of the $20 billion, approximately $17.5 billion of principal was lost by those who filed claims.

the claim had been fully satisfied.    After March 29, 2013 and through the end of the Compensation Period, an additional $16.226 million was distributed, bringing the total third interim distribution amount to $522.453 million.[3]   When combined with the approximately $515.634 million first interim distribution, the $3.742 billion second interim distribution and approximately $811.247 million of advances committed by the Securities Investor Protection Corporation ("SIPC"),[4] the Trustee has distributed approximately $5.591 billion to BLMIS customers through the end of the Compensation Period.[5]  This represents a significant milestone in this litigation, with 1,109 BLMIS accounts fully satisfied through the end of the Compensation Period.  The 1,109 fully satisfied accounts represent more than 50% of accounts with allowed claims.

5.    No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers.    Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H; various international special counsel retained by the Trustee (collectively referred to herein as

---

[3]After the Compensation Period, an additional $570,000 was distributed as catch-up payments, bringing the total third interim distribution amount to $523.024 million through March 20, 2014.

[4]SIPC committed to pay approximately $811.247 million through November 30, 2013 and approximately $811.747 million through March 20, 2014.  The difference between the amount committed to pay by SIPC and the amount advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

[5]The Trustee has distributed approximately $5.597 billion to BLMIS customers through March 20, 2014.

"International Counsel"), including Taylor Wessing LLP ("Taylor Wessing"), Browne Jacobson

LLP ("Brown Jacobson"), Triay Stagnetto Neish Barristers & Solicitors ("Triay Stagnetto"),

Williams Barristers & Attorneys ("Williams Barristers"); various special counsel to the Trustee

(collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP

("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), Greenfield

Stein & Senior LLP ("Greenfield"), La Tanzi, Spaulding & Landreth, P.C. ("La Tanzi"), Kelley,

Wolter & Scott, P.A. ("Kelley Wolter"); and consultants, are paid out of administrative advances

made by SIPC.  As Judge Lifland affirmed: "Again, the emphasis is that these fees . . . are not

coming from any of the victims, and they're not coming from the estate."  Fifth Appl. Hr'g Tr.

32:15-17, Dec. 14, 2010.

6.      As the Trustee's and his counsels' fees and expenses are chargeable to the general

estate and not to the fund of customer property (the "Customer Fund"), the payment of the same

has absolutely no impact on the Trustee's current and future recoveries that have been and will

be allocated to the Customer Fund for *pro rata* distribution to BLMIS customers whose claims

have been allowed by the Trustee.

7.      In a liquidation proceeding such as this, where the general estate is insufficient to

pay trustee compensation, SIPC plays a specific role with compensation and is required to

advance funds to pay the costs of administration.  *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2).

SIPC has carefully reviewed this Application, as it has all other compensation applications, and

has closely analyzed the time records and services rendered.  Each month, SIPC, the Trustee, and

B&H engage in extensive discussions regarding billings, and the Trustee and B&H make

reductions where appropriate and finalize the amounts that appear herein.  Thus, the requested

fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable

4

rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

8.    During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world. It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

9.    No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008. Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by litigating and settling cases for the return of customer property ("Customer Property"). Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his protection of Customer Property. The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

10.    As Judge Lifland recognized, "[w]ith respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest most complex sets of litigation that have come down the pike. It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm or any organization to deal with." Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.   BACKGROUND

### A.   THE SIPA LIQUIDATION

11.    The Trustee and B&H's prior interim fee applications, each of which is fully incorporated herein,[6] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

### B.   THE TRUSTEE, COUNSEL AND CONSULTANTS

12.    The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

13.    In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

14.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting

---

[6]Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); October 1, 2012 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); February 1, 2012 to June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097); July 1, 2012 to November 30, 2012 (the "Eleventh Interim Fee Application") (ECF No. 5333); December 1, 2012 to April 30, 2013 (the "Twelfth Interim Fee Application") (ECF No. 5490); and May 1, 2013 through July 31, 2013 (the "Thirteenth Interim Fee Application") (ECF No. 5566).

("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

### C.    PRIOR COMPENSATION ORDERS

15.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| Applications | Orders Entered[7] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[8] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | December 17, 2013 (ECF No. 5605) |

---

[7]On March 7, 2013, this Court entered an Errata Order (ECF No. 5258), to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCA Creque, an additional $0.60 became due and owing to that firm.

[8]This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

### III.    SUMMARY OF SERVICES

16.    A SIPA proceeding contemplates the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.  Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.    HARDSHIP PROGRAM

17.    The Trustee and B&H implemented a Hardship Program in an effort to accelerate SIPA protection for BLMIS victims suffering hardship.  The first phase of this program is more fully described in prior interim fee applications.  Based on the information received, the Trustee did not sue approximately 250 individuals.

18.    The Trustee expanded the Hardship Program into a second phase at the time he commenced avoidance actions.  While the Trustee's authority includes the pursuit of avoidance actions to recover Customer Property, the Trustee has not pursued avoidance actions against BLMIS account holders suffering proven hardship.  In November 2010, the Trustee announced that, to forego an avoidance action, the account holder must submit financial and other pertinent information.  Through this program, the Trustee has worked with a substantial number of applicants to confirm their hardship status and dismissed defendants in avoidance actions.

19.    As of November 30, 2013, the Trustee had received 498 applications from avoidance action defendants relating to 316 adversary proceedings.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 198 Hardship Program applicants-defendants from avoidance actions.  As of November 30, 2013, there were 75 applications still under review and 225 that were resolved because they were either withdrawn by the applicant, deemed withdrawn

for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

20.     The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address. A large number of potential applicants have been assisted by the Trustee through the use of this hotline.

**B.     THE RECOVERY AND RETURN OF CUSTOMER PROPERTY**

**i.     <u>Recoveries Accomplished During The Compensation Period</u>**

21.     Without the need for protracted litigation, during the Compensation Period, the Trustee settled sixteen cases for $153,699,331.00. As of November 30, 2013, the Trustee had successfully recovered approximately $9.51 billion.

22.     The Trustee entered into settlements subsequent to the Compensation Period that will bring an additional $283,529,095.00 into the Customer Fund.

23.     The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, could result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

24.     Through the end of the Compensation Period, the Trustee recovered $550,705,944.69 as a result of preference and other settlements that were made pursuant to agreements subject to the net equity dispute. The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

25.     Due to the release from escrow of the funds received from the Tremont settlement, the Trustee filed a motion for the third allocation and distribution from the Customer Fund, which was granted by this Court on March 13, 2013. Pursuant to this motion, the Trustee

distributed approximately $522.453 million to customers with allowed claims through the end of the Compensation Period[9].

## IV.    DETAILED DESCRIPTION OF SERVICES

26.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims.  The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

27.    Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

28.    Matter Numbers 03-73 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.[10]  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

---

[9]Through March 20, 2014, the Trustee has distributed $523.024 million in connection with the third allocation and distribution from the Customer Fund.

[10]Reserved and closed matter numbers will not be listed in this Application.  Matter numbers reserved or closed during prior compensation periods can be found in the respective interim fee applications.

### A.    MATTER 01

29.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

### i.    Task Code 01: Trustee Investigation

30.    This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

31.    The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

32.    During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.  B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties.

33.    B&H attorneys discussed and conferenced with SIPC, Windels Marx, Young Conaway, and International Counsel regarding investigation and litigation strategy, prepared requests for discovery, negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

### ii.    Task Code 02: Bankruptcy Court Litigation

34.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

35.    During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations.  They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.  B&H attorney also researched issues relating to injunctions.

### iii.    Task Code 03: Feeder Funds

36.    This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors.  The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and bring actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### iv.    Task Code 04: Asset Research and Sale

37.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

38.    During the Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with the liquidation of assets held by Madoff Family, LLC; monitored the public filings of Stemline Therapeutics, Inc. and strategized as to its sale; conducted due diligence in connection with certain interests of Madoff Energy LLC and its affiliates; and continued to value the intellectual property interest in Primex, evaluate corporate governance issues and strategize as to its sale.

39.    During the Compensation Period, the Trustee continued to recover funds from securities that BLMIS purchased and sold prior to December 11, 2008 in connection with its proprietary trading operations.

### v.    Task Code 05: Internal Meetings with Staff

40.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### vi.    Task Code 07: Billing and Trustee Reports

41.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### vii.    Task Code 08: Case Administration

42.    This category relates to time spent assisting the efficient administration of the case.

43.    The Trustee filed several motions before this Court that will govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures will ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

44.    On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main

proceeding and all related adversary proceedings.   (ECF No. 4469).   This Court entered the Order on December 5, 2011.  (ECF No. 4560).

45.     On October 28, 2011, this Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).   Thereafter, on January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012.  (ECF No. 4483).  Subsequently, on December 11, 2013 date, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 18, 2014.  (ECF No. 5358).

46.     During the Compensation Period, the Trustee and B&H attorneys conducted conflict checks; implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents; created protocols relating to discovery, filings, and external communications; implemented and managed work flows between B&H and consultants; oversaw administrative aspects of the retention of experts, other professionals and vendors, and monitored their ongoing activities; calendared and docketed all hearings, return dates, and deadlines in the main liquidation proceeding and all other litigations; monitored and tracked dockets of related proceedings; and managed and monitored staffing needs.

### viii.    Task Code 09: Banks

47.     Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other

third parties, and the preparation of pleadings relating to claims that will be brought against such

banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

### ix.    Task Code 10: Court Appearances[11]

48.    This category relates to time spent by the Trustee and B&H attorneys making

court appearances in this Court, other federal courts within the Second Circuit, and various

courts abroad.

### x.    Task Code 11: Press Inquiries and Responses

49.    This category relates to time spent by the Trustee, B&H attorneys, and

paraprofessionals in responding to press inquiries, preparing and issuing press releases, and

preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and

the recovery of funds.

### xi.    Task Code 12: Document Review

50.    This category relates to time spent by the Trustee and B&H attorneys reviewing

documents received from parties and third parties in response to the hundreds of letters and

subpoenas issued by the Trustee.

### xii.    Task Code 13: Depositions and Document Productions by the Trustee

51.    This category generally relates to time spent by the Trustee and B&H attorneys

conducting discovery that touches upon more than one matter and responding to discovery

propounded to the Trustee by various third parties.

52.    During the Compensation Period, the Trustee and B&H attorneys prepared,

reviewed, finalized, and served subpoenas; monitored subpoenas issued and documents produced

in response, and followed up regarding deficient document productions; prepared, reviewed,

---

[11]Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy
Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

finalized, and served initial disclosures, case management plans, and motions for filing with this Court to implement case-wide discovery procedures; prepared, reviewed, finalized, and served discovery requests; processed, uploaded, and analyzed incoming document productions; responded to discovery requests served on the Trustee by defendants and third parties; addressed the issue of de-designating confidential documents for production; analyzed, tracked, and processed BLMIS data; coordinated with the Trustee's expert witnesses to prepare for trial; researched foreign jurisdiction discovery laws; engaged in post-filing activities with producing parties and certain defendants regarding the Trustee's Amended Motion for an Order Establishing Procedures for Third-Party Data Rooms and Modifying the June 6, 2011 Litigation Protective Order; and oversaw work performed by the Trustee's vendors.

### xiii.    **Task Code 14: International**

53.    The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands, Canada, the Cayman Islands, England, France, Gibraltar, Guernsey, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland.  These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

54.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions.  The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

16

55.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

### xiv.    Task Code 15: Charities

56.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

### xv.    Task Code 19: Non-Bankruptcy Litigation

57.    This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

### xvi.    Task Code 20: Governmental Agencies

58.    This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the United States Attorney's Office for the Southern District of New York, the Internal Revenue Service, various congressional representatives, and other government agencies.

### xvii.    Task Code 21: Allocation

59.    This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

60.    The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

61.    On May 4, 2011, the Trustee sought entry of an order approving an initial allocation of property to the Customer Fund, and authorizing an interim distribution to customers

whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (the "First Allocation Motion"). The First Allocation Motion was unopposed, and on July 12, 2011, this Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers. (ECF No. 4217).

62.     From October 5, 2011 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $515.634 million,[12] or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. The first interim distribution was made to 1,307 BLMIS account holders, and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been previously satisfied.

63.     On July 26, 2012, the Trustee filed a motion for a second allocation and second interim distribution to customers. (ECF No. 4930). On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% reserve. (ECF No. 4997).

64.     From September 19, 2012 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $3.742 billion,[13] or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. The second interim distribution was made to 1,293 BLMIS account holders, and 39 payments went to claimants who

---

[12]Subsequent to the Compensation Period ending on November 30, 2013, an additional $556,000 was distributed as catch-up payments, bringing the total first interim distribution amount to $516.190 million through March 20, 2014.

[13]Subsequent to the Compensation Period ending on November 30, 2013, an additional $4.057 million was distributed as catch-up payments, bringing the total second interim distribution amount to $3.746 billion through March 20, 2014.

qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

65.    On February 13, 2013, the Trustee filed a motion for a third allocation and third interim distribution to customers.  (ECF No. 5230).  On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing a Third Interim Distribution to Customers, with a 3% reserve.  (ECF No. 5271).

66.    From March 29, 2013 through the end of the Compensation Period, the Trustee distributed approximately $522.453 million,[14] or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Upon completion of the third interim distribution, more than 50% of the accounts with allowed customer claims have been satisfied. The third interim distribution was made to 1,111 BLMIS account holders, and 26 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

### B.    MATTER 03 – CHAIS

67.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Chais, Pamela Chais, and a number of related entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.  *Picard v. Chais*, Adv. No. 09-01172 (BRL) (Bankr. S.D.N.Y.).

---

[14]Subsequent to the Compensation Period ending on November 30, 2013, an additional $570,000 was distributed as catch-up payments, bringing the total third interim distribution amount to $523.024 million through March 20, 2014.

68.    In addition to the tasks outlined above, during the Compensation period, B&H attorneys continued to participate in mediation discussions pursuant to the mediation ordered by this Court on July 18, 2012 in *Picard v. Chais* and the related action to enforce the automatic stay and enjoin certain state court third-party actions brought by investors of Stanley Chais and by the California Attorney General.  B&H attorneys also continued their investigation of the Chais Defendants and likely recipients of subsequent transfers from the Chais Defendants-related BLMIS accounts.

69.    Certain of the Chais Defendants also filed two motions to withdraw the reference to the District Court on April 2, 2012 (docketed as Nos. 12 Civ. 02371 (JSR) and 12 Civ. 02658 (JSR) (S.D.N.Y.)).  B&H attorneys previously drafted various motions and pleadings related to these motions to withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

## C.    MATTER 04 – MERKIN

70.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation, and Merkin's funds: Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., and Ascot Fund Limited (together, the "Merkin Defendants").  The Trustee alleges that Merkin knew or was willfully blind to the fact that Madoff's investment advisory business was predicated on fraud and is seeking the return of nearly $560 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants.  *Picard v. J. Ezra Merkin*, Adv. No. 09-01182 (BRL) (Bankr. S.D.N.Y.).

71.     During the Compensation Period, B&H attorneys continued to advance the litigation of the Merkin case.  One of the primary accomplishments during the Compensation Period was the finalization and filing of the Third Amended Complaint against the Merkin Defendants.  The Third Amended Complaint was filed on August 30, 2013 and alleges that Merkin had knowledge of, or was willfully blind to, the fraud at BLMIS.  It provides numerous examples and details of information establishing the Trustee's allegations.  The Third Amended Complaint also added Ascot Fund Ltd. as a subsequent transferee defendant.

72.     In response to the Third Amended Complaint, on October 11, 2013, Merkin and Gabriel Capital Corporation, the Receiver for Ariel Fund and Gabriel Capital L.P., and the Receiver for Ascot Partners, L.P., each filed motions to dismiss.  B&H attorneys prepared and filed a consolidated opposition brief in response to the three motions to dismiss on November 15, 2013.  As to defendant Ascot Fund, Ltd., the Trustee entered into a stipulation to extend the time for it to move, answer, or otherwise respond to December 20, 2013.

73.     B&H Attorneys analyzed and evaluated documents that were produced by the Merkin Defendants, both in response to the Trustee's document requests and  pursuant to the Binding Discovery Arbitrator's March 2013 Order.  B&H Attorneys also brought motions to compel against the Merkin Defendants in connection with both the Binding Discovery Arbitrator's March 2013 Order and the Trustee's document requests.  In October 2013, B&H Attorneys argued in support of two pending motions to compel before the Binding Discovery Arbitrator.

74.     B&H Attorneys continued to investigate and draft responses to written discovery requests from the Merkin Defendants to the Trustee.  In addition, B&H attorneys undertook a

thorough review of recently received third-party documents in the Trustee's possession for production to the Merkin Defendants.

75.     During the Compensation Period, B&H attorneys continued preparing for fact witness depositions and expert discovery by conducting extensive and ongoing analysis of documents produced by the Merkin Defendants and from other third parties.  B&H attorneys identified potential witnesses, and prepared for and conducted interviews and depositions of potential third party fact witnesses.  B&H attorneys also continued to issue subpoenas to third parties believed to possess relevant documents.

76.     B&H attorneys continued to analyze the flow of funds from BLMIS to the Merkin Defendants.  In addition, B&H attorneys pursued Rule 2004 discovery from Lauren Merkin who, along with her husband, received subsequent transfers of funds or was the beneficiary of subsequent transfers to Merkin and other third parties.

77.     Following a June 25, 2012 announcement by the New York Attorney General ("NYAG") of a settlement among the NYAG and the receivers for the Merkin Funds, the Trustee moved to enjoin the parties from consummating the settlement, and from transferring or otherwise dissipating any assets.  *Picard v. Schneiderman (In re Bernard L. Madoff)*, Adv. No. 12-01778 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 1–3.  The NYAG and other Merkin Defendants thereafter filed a joint motion to withdraw the reference of the injunction application, which the District Court granted.  *Picard v. Schneiderman*, 12 Civ. 06733 (S.D.N.Y.), ECF Nos. 1, 12. The District Court denied the Trustee's injunction application.

78.     The Trustee appealed the District Court's decision to the Second Circuit.  *Picard v. Schneiderman*, 13-1785 (2d. Cir. May 7, 2013).  The Trustee filed his opening appellate brief on June 6, 2013, and the Merkin Defendants and the receivers for the funds filed their responses

on July 19, 2013.  The Trustee filed his appellate reply brief on August 7, 2013.  B&H attorneys

also prepared for and argued the appeal before the Second Circuit, which took place on October

10, 2013.  This matter is awaiting decision.

### D.    MATTER 05 – CUSTOMER CLAIMS

#### i.    Customer Claims

79.    During the Compensation Period, the Trustee allowed $303,417,106.70 in

customer claims, bringing the total amount of allowed claims as of November 30, 2013 to

$11,389,773,497.74.  As of November 30, 2013, the Trustee has paid or committed to pay

$811,247,373.62 in cash advances from SIPC.  This is the largest commitment of SIPC funds of

any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all

SIPA liquidations to date.

80.    As of November 30, 2013, 156 claims relating to 113 accounts were "deemed

determined," meaning that the Trustee has instituted litigation against those account holders and

related parties.  The complaints filed by the Trustee in those litigations set forth the express

grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code.

Accordingly, such claims will not be allowed until the avoidance actions are resolved by

settlement or otherwise and the judgments rendered against the claimants in the avoidance

actions are satisfied.

#### ii.    General Creditor Claims

81.    As of November 30, 2013, the Trustee had received 427 timely and 21 untimely

filed secured and unsecured priority and non-priority general creditor claims totaling

approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and

customers filing claims on non-customer proof of claim forms.  Of these 448 claims and $1.7

billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling

23

approximately $264.9 million.  At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.  The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

82.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

83.    The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events.  The Trustee Website is monitored and updated on a daily basis.

84.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants.  As of November 30, 2013, the Trustee and his professionals had received and responded to more than 7,000 e-mails from BLMIS customers and their representatives via the Trustee Website.

85.    The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns.  As of November 30, 2013, the Trustee, B&H, and the

Trustee's professionals had fielded more than 7,800 hotline calls from claimants and their representatives.

86.    The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

87.    The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review process, the customer claims database, reconciliation of investment advisory accounts (the "BLMIS IA Accounts"), and other matters of interest in determining claims.

88.    The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

### E.    MATTER 06 – VIZCAYA

89.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Ltd. ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants. *Picard v. Vizcaya Partners Ltd.*, Adv. No. 09-01154 (BRL) (Bankr. S.D.N.Y.). The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers. Siam has been dismissed from the action.

90.    During the Compensation Period, B&H attorneys continued to advance discovery, including the review of documents for relevance and production in response to the Vizcaya Defendants' document requests.    B&H attorneys coordinated with consultants on background investigations on persons of interest, and confirmed an amended case management plan.    B&H attorneys also collaborated with foreign counsel regarding the Trustee's foreign proceedings in Gibraltar, including preparation for a hearing before the Gibraltar Court of Appeals on an appeal of the Gibraltar Court's denial of Vizcaya and Asphalia's motion to strike the proceeding seeking to enforce the Trustee's default judgment against Vizcaya and Asphalia.    B&H attorneys also prepared a particulars of claim for the Trustee's substantive claims against Vizcaya, Bank Safra, Asphalia, Zeus, Pictet et Cie and Bank Jacob Safra (Suisse) S.A. in a separate Gibraltar action.

## F.    MATTER 07 – MADOFF FAMILY

91.    This matter categorizes time spent by B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.    On October 2, 2009, the Trustee filed a complaint against Peter Madoff, Andrew Madoff, the late Mark Madoff, and Shana Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants.    *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.), ECF No. 1.    On March 15, 2010, each of the defendants separately moved this Court to dismiss the Trustee's complaint.    (ECF Nos. 13–19).    On September 22, 2011, this Court denied in part and granted in part the motions to dismiss.    (ECF No. 55). Defendant Andrew Madoff, individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave to seek interlocutory review of this Court's September 22, 2011 decision. (ECF No. 56).    Following briefing and oral argument, the District Court denied that motion on December 22, 2011.    (ECF No. 74).

92.    In accordance with this Court's September 22, 2011 decision, on November 7, 2011, the Trustee filed an amended complaint against the Family Defendants, identifying additional transfers and seeking the return of over $225 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.), ECF No. 64. Shana Madoff, Peter Madoff, and Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, each answered the amended complaint on January 17, 2012. (ECF Nos. 78, 79, 80).

93.    On December 23, 2011, the Trustee filed a motion seeking leave to file a second amended complaint, adding additional claims and defendants to the action against the Family Defendants. (ECF No. 71). On April 4, 2012, following briefing and oral argument, this Court issued a written opinion denying in part and granting in part the Trustee's motion. (ECF No. 106). On May 4, 2012, the Trustee filed a second amended complaint against the Family Defendants and named as additional defendants Mark Madoff's widow, Stephanie Mack, and Andrew Madoff's wife, Deborah Madoff. (ECF No. 113). The Trustee also named Mark Madoff's ex-wife, Susan Elkin, as a subsequent transferee defendant. Defendants Andrew Madoff, the Estate of Mark D. Madoff, Shana Madoff, and Ms. Elkin answered the second amended complaint on July 2, 2012. (ECF Nos. 124–126). On April 2, 2012, Stephanie Mack and Deborah Madoff moved to withdraw the reference from this Court. (ECF Nos. 101, 104). The Trustee subsequently adjourned the time for Stephanie Mack and Deborah Madoff to respond to the second amended complaint. (ECF Nos. 128, 134, 139, 141, 149, 152, 154, 157, 159, 165, 167). On December 6, 2013, the District Court ruled that the Trustee was barred from

pursuing common law claims against Stephanie Mack and Deborah Madoff because they do not fall within the insider exception to the *in pari delicto* doctrine, and returned the cases to the Bankruptcy Court. In light of this decision, the parties will negotiate any necessary adjustments to the current discovery schedule and related matters.

94.     On June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion. Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the United States of America. Subsequently, on February 6, 2013, Peter Madoff was dismissed from this action in connection with the entry of a consent judgment in the amount of $90,390,500.00. (ECF No. 145). On February 7, 2013, the Trustee dismissed a separate adversary proceeding against Marion Madoff through a notice of voluntary dismissal with prejudice. *Picard v. Marion Madoff*, Adv. No. 10-04310 (BRL) (Bankr. S.D.N.Y.), ECF No. 17.

95.     In connection with Peter Madoff's plea agreement, his daughter, defendant Shana Madoff, also forfeited to the United States of America substantially all of her assets that were the subject of the Trustee's claims against her. Subsequently, on March 18, 2013, the Trustee dismissed the case against Shana Madoff with prejudice. (ECF No. 148).

96.     The Trustee commenced two adversary proceedings against members of Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff. *Picard v. Stephanie S. Mack*, Adv. No. 10-05328 (BRL) (Bankr. S.D.N.Y.); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (BRL) (Bankr. S.D.N.Y.). Amended complaints were filed in these actions on February 7, 2012. *Picard v. Mack*, Adv. No. 10-05328, ECF No. 23; *Picard v. Deborah Madoff*, Adv. No. 10-05332, ECF No. 13. All defendants in both actions answered on March 23, 2012. *Picard v. Mack*, Adv. No. 10-05328, ECF No. 30; *Picard v.*

*Deborah Madoff*, Adv. No. 10-05332, ECF No. 20.  Deborah Madoff also moved to withdraw the reference from this Court on April 2, 2012.  *Picard v. Deborah Madoff*, Adv. No. 10-05332, ECF No. 22.  That motion is currently pending before the District Court.  The pre-trial conference for these actions in this Court is currently scheduled for March 26, 2014.  *Picard v. Mack*, Adv. No. 10-05328, ECF No. 52; *Picard v. Deborah Madoff*, Adv. No. 10-05332, ECF No. 49.

97.    The Trustee commenced two adversary proceedings against foundations created by and named for Andrew and the late Mark Madoff and their spouses: *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325 (BRL) (Bankr. S.D.N.Y.) and *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330 (BRL) (Bankr. S.D.N.Y.).  The defendants in these cases have answered, and the pre-trial conferences are currently scheduled for March 26, 2014.  *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, ECF No. 37; *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, ECF No. 40.

98.    The Trustee commenced various adversary proceedings against Madoff's relatives beyond his immediate family to recover preferences and fraudulent conveyances.  Currently, the Trustee's cases styled *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323 (Bankr. S.D.N.Y.), *Picard v. NTC & Co. LLP*, Adv. No. 10-04293 (Bankr. S.D.N.Y.), and *Picard v. Schaum & Wiener Profit Sharing Plan & Trust FBO Martin Schaum*, Adv. No. 10-04329 (Bankr. S.D.N.Y.) remain pending.

### G.    MATTER 09 – FAIRFIELD GREENWICH

99.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwhich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry

Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y. May 18, 2009). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

100. On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95). On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million, ECF No. 108, Sentry in the amount of $3.054 billion, ECF No. 109, and Sigma in the amount of $752.3 million, ECF No. 110.

101. As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

102. On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount

over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y.), ECF No. 107.  In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

103.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing (as defined herein) and hearings before Judge Rakoff of the District Court.  The Trustee briefed and presented argument at the hearings on these issues before the District Court.

104.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (BRL) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (BRL) (Bankr. S.D.N.Y.).  The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court. None of the defendants in the three actions have yet responded to the Trustee's complaints.

105.    On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement.  *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM) (S.D.N.Y.), ECF No. 997.  On November 29, 2012, the Trustee filed an

application seeking an injunction against the implementation of the settlement. *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (BRL) (Bankr. S.D.N.Y.), ECF No. 2. On December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court. (ECF No. 11). On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.,* 12 Civ. 9408(VM) (S.D.N.Y.), ECF No. 30. On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the Anwar settlement. (ECF No. 59). On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the Trustee's application for an injunction against the implementation of the Anwar settlement. (ECF No. 61).

106.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the Anwar action. (ECF No. 1054). On March 8, 2013, the District Court deemed the pre-motion conference letter to be a motion to intervene and denied the Trustee's request. (ECF No. 1071). On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the Anwar action. (ECF. No. 1106).

107.    Briefing on both appeals of the Anwar decisions was completed on June 7, 2013. Oral argument on the appeals was held on October 10, 2013. The parties are awaiting a decision on the appeals.

108.    As of November 30, 2013, the Trustee and the remaining defendants have entered into stipulations extending the response date to the Trustee's complaints while awaiting the rulings by the District Court on the issues subject to Common Briefing (as defined herein) and hearings.

### H.    MATTER 11 – COHMAD SECURITIES CORPORATION

109.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation, its principals, certain employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (BRL) (Bankr. S.D.N.Y.).

110.    This matter also includes time spent by the Trustee and B&H attorneys pursuing avoidance actions against BLMIS customers who were referred to BLMIS by the Cohmad Defendants and are net winners.

111.    During the Compensation Period, B&H attorneys continued to move forward with discovery and developing the cases at issue.

### I.    MATTER 13 – KINGATE

112.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law of approximately $926 million[15] in transfers to Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (together, the "Kingate Funds"), and the recovery of more than $370 million in purported management fees that the Kingate Funds paid to Kingate Management Limited ("Kingate Management"), as manager of the Kingate Funds.    Those transfers also

---

[15] As a result of a settlement between the Trustee and the United States of America on behalf of the Internal Revenue Service, approved by order of this Court dated December 21, 2011, the aggregate amount of the alleged transfers has been reduced by approximately $50 million.  *See* Order, Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.), No. 08-01789 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2011), ECF No. 4602.

include more than $297 million that Kingate Management paid out of its management fees as purported dividends to its shareholders.  On June 8, 2011, B&H attorneys prepared, filed, and served a third amended complaint, which added a number of additional foreign defendants, significantly expanding the case.  *Picard v. Federico Ceretti*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.), ECF No. 32 (the "U.S. Action").

113.    The Kingate Funds are in liquidation proceedings in the British Virgin Islands and Bermuda under the auspices of court-appointed joint liquidators.  Kingate Management is also in a liquidation proceeding in Bermuda, which is being administered by the Official Receiver of Bermuda.

114.    In July 2009, Kingate Global and Kingate Euro each filed customer claims.  Applying the net equity calculation, the Kingate Funds' aggregate claims seek approximately $800 million from the estate.  Those claims remain unresolved while the U.S. Action is pending.

115.    The Kingate Funds and all other defendants filed motions in the District Court, or joinders to such motions, to withdraw the reference from the Bankruptcy Court on various grounds.  *Picard v. Kingate Global Fund, Ltd.*, No. 12 Civ. 02441 (JSR) (S.D.N.Y.), ECF No. 1.  The motions were subject to Common Briefing and were argued before the District Court.  Pending a resolution of all issues before the District Court, and while settlement discussions continued, the Trustee extended the time for the defendants to answer or otherwise respond to the third amended complaint by various stipulations filed with this Court.

116.    By an order of the Bermuda Civil Court (the "Bermuda Court") dated October 3, 2012, upon application of the Kingate Funds' joint liquidators seeking leave to pursue their claims against Kingate Management and other defendants in Bermuda, the Bermuda Court lifted the litigation stay that was in effect in that jurisdiction and granted other relief in favor of the

joint liquidators.  On the basis that the Kingate Funds were seeking to recover property that had been transferred from BLMIS, which was customer property that the Trustee was seeking to recover in the U.S. Action, the Trustee prepared and filed a complaint for declaratory and injunctive relief against the Kingate Funds and an application to preliminarily enjoin the joint liquidators from prosecuting the Kingate Funds' claims against Kingate Management and other defendants in Bermuda.

117.   Upon request of the joint liquidators, and in light of the Trustee's desire, if possible and in the best interests of the estate, to settle all disputes between the parties on a global basis, during the Compensation Period, the Trustee extended the joint liquidators' deadline to answer the complaint and the preliminary injunction application.

118.   As the parties since received certain decisions of the District Court on Common Briefing issues, some of which are on appeal, the Trustee and his attorneys stepped up litigation preparations.  B&H attorneys devoted substantial attention to further amending the complaint in light of the rulings of the District Court, and preparing for the discovery phase in the U.S. Action.

### J.    MATTER 18 – THYBO

119.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Thybo Asset Management Ltd., Thybo Global Fund Ltd., Thybo Return Fund Ltd., and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return of approximately $62 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers  in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants.  On February 10, 2011, the Trustee filed an amended complaint that also objected to Thybo Stable

Fund Ltd.'s $217 million customer claim.  *Picard v. Thybo Asset Mgmt. Ltd.*, Adv. No. 09-01365

(BRL) (Bankr. S.D.N.Y. Feb. 10, 2011), ECF No. 20.

120.    On July 5, 2012, Judge Rakoff issued an order as to the Thybo Defendants' fully

briefed motion to withdraw the reference, stating that the Thybo Defendants raised the same

issues that the District Court previously arranged for Common Briefing (as defined herein) and

directing the Thybo Defendants to continue to proceed according to the procedures arranged for

Common Briefing.  *See* Order*, Picard v. Thybo Asset Mgmt. Ltd.*, No. 11 Civ. 07576 (JSR)

(S.D.N.Y. July 5, 2012), ECF No. 17.  As of November 30, 2013, a number of those issues

remained under consideration by the District Court.

### K.    MATTER 21 – AVOIDANCE ACTION LITIGATION

121.    This matter categorizes time spent litigating the hundreds of avoidance actions

filed by the Trustee, coordinating service of process, preparing preservation letters and discovery

requests and reviewing produced documents, communicating formally and informally with

counsel for various defendants, reviewing Hardship Program applications, drafting extensions of

time to respond to various complaints and adjournments of pre-trial conferences, conducting

settlement negotiations and settling with various defendants, engaging in mediation with certain

defendants, developing legal strategies and witnesses that will be relevant to all actions,

implementing internal processes to track and manage the avoidance actions, and researching

various issues relating to and raised in such avoidance actions.

122.    In April 2012, the District Court instituted a new briefing protocol for pending

motions to withdraw the reference, facilitating consolidated briefing on common issues raised in

the motions to withdraw ("Common Briefing").  Accordingly, the Trustee, SIPC, and the

relevant defendants negotiated agreed orders providing for the partial withdrawal of the reference

to address the following discrete legal issues raised in the relevant motions to withdraw (the "Consolidated Briefing Orders").

123.    Upon the completion of consolidated briefings on the selected legal issues, the District Court issued various Common Briefing rulings.  During the Compensation Period, B&H attorneys reviewed and analyzed the effect of certain of those rulings on the Trustee's avoidance actions.  To date, the District Court has issued rulings on the following issues:

- *Stern v. Marshall Issues.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), ECF No. 4; *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 490 B.R. 46 (S.D.N.Y. 2013);

- *Antecedent Debt Issues.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 107; *In re Madoff Sec.,* 499 B.R. 416 (S.D.N.Y. 2013);  *In re Madoff Sec.,* No. 12 MC 00115 (JSR), 2013 WL 6301085 (S.D.N.Y. Dec. 6, 2013);

- *Section 546(e) Issues.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 119; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), ECF No. 439; *In re Madoff Sec.*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013);

- *Section 550(a) Issues.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), ECF No. 314; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Dec. 12, 2012); *In re Madoff Sec.,* No. 12 MC 115 (JSR), 2013 WL 5813881 (S.D.N.Y. Oct. 28, 2013); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 465360 (S.D.N.Y. Jan. 14, 2014); and

- *Standing and SLUSA Issues.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 114; *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2013 WL 6301415 (S.D.N.Y. Dec. 6, 2013).

124.    As of the end of the Compensation Period, the District Court had issued a bottom line order for the following legal issue, for which briefing already has been completed.  A fuller opinion and order is forthcoming.

- *Section 502(d) Issues.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), ECF No. 435.

125.    As of the end of the Compensation Period, the District Court had not yet issued rulings on the following Common Briefing issues, for which briefing already has been completed:

- *Extraterritoriality Issues*.  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 7, 2012), ECF No. 167; and

- *"Good Faith" Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b).  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), ECF No. 197.

### L.    MATTER 27 – JP MORGAN CHASE

126.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan") seeking the return of approximately $19 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of JPMorgan Chase.  *Picard v. JPMorgan Chase & Co.*, Adv. No. 10-04932 (BRL) (Bankr. S.D.N.Y. Dec. 2, 2010).

127.    The appeal of the District Court's decision dismissing the Trustee's common law claims against JPMorgan, *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011), was

decided on June 20, 2013. *Picard v. JPMorgan Chase & Co.*, 721 F.3d 54 (2d Cir. 2013). The parties had stipulated to a stay of discovery pending the appeal, which was lifted in accord with that stipulation on or about July 11, 2013.

128.    During the Compensation Period, B&H attorneys prepared for the case to move forward. B&H attorneys prepared a petition for writ of certiorari to the Supreme Court, filed in October 2013, seeking reversal of the Second Circuit's decision on the Trustee's standing to pursue common law claims. Meanwhile, B&H attorneys negotiated a settlement with JPMorgan on his avoidance and his common law claims. The latter settlement was negotiated in tandem with plaintiffs in a related class action pending in the District Court. The Trustee's settlements were announced on the same day that the Government announced its settlement with JPMorgan relating to the Madoff fraud. The settlement papers were finalized and presented to the Bankruptcy and District Courts in January 2014.

### M.    MATTER 28 – WESTPORT

129.    This matter summarizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. ("PSCC") (collectively, the "Westport Defendants") seeking the return of approximately $28 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Westport Defendants. *Picard v. Robert L. Silverman*, Adv. No. 10-05418 (BRL) (Bankr. S.D.N.Y.).

130.    During the Compensation Period, B&H attorneys negotiated a settlement of the estate's claims against Silverman in light of his Chapter 11 bankruptcy proceedings, and after considering his financial position. In connection with the settlement, B&H attorneys also

negotiated with counsel for Silverman's other claimants in the chapter 11 case, and were able to reach a consensual resolution. B&H attorneys addressed and resolved multiple issues regarding the Bankruptcy Court for the District of Connecticut's consideration of Silverman's confirmation plan.

131.    B&H attorneys also analyzed documents and responses from the Westport Defendants concerning the legal issues raised in the lawsuit. Following a settlement conference, the Westport Defendants and the Trustee agreed to mediate the Trustee's claims. B&H attorneys prepared a mediation stipulation for entry by the Bankruptcy Court, and worked with the Westport Defendants to identify an agreed mediator.

## N.    MATTER 29 – RYE/TREMONT

132.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action filed on December 7, 2010 against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Funds. *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (BRL) (Bankr. S.D.N.Y.) ( the "Tremont Litigation").

133.    After the court filing, the parties entered into substantive settlement negotiations. On September 22, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (BRL) (Bankr. S.D.N.Y.),

ECF No. 38. ( There were two non-settling defendants at the time, Sandra Manzke ("Manske") and Rye Select Broad Market XL Portfolio Limited ( "XL Portfolio")).

134.    Pursuant to the settlement, Tremont delivered $1.025 billion into an escrow account, which was placed into the Customer Fund, and the Trustee allowed certain customer claims related to Tremont in the approximate amount of $2.9 billion.  Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  This Court entered an Order Granting Trustee's Motion for Entry of Order Approving Agreement.  (ECF No. 38).

135.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc.*, No. 11-7330 (GBD) (S.D.N.Y.), ECF No. 1. Thereafter, Tremont filed a motion to dismiss the appeal, which was subsequently joined by motions filed by the Trustee and parties subject to the settlement.  (ECF Nos. 4, 6, 8, 12, 14). The non-BLMIS customers who commenced the appeal opposed the dismissal.  (ECF Nos. 15, 16).  On June 27, 2012, United States District Judge George B. Daniels granted the motion to dismiss the appeal, and judgment was entered on June 28, 2012.  (ECF Nos. 35, 36).

136.    On July 27, 2012, the non-BLMIS objectors filed an appeal with the Second Circuit. (ECF No. 37).  Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012.  (ECF No. 39).  The terms of the settlement, therefore, have been implemented.

137.    Pursuant to the Tremont settlement, Tremont delivered $1.025 billion into an escrow account on November 6, 2012.  The settlement payment was released from the escrow account to the Trustee on February 8, 2013.  Accordingly, the Trustee allowed certain customer claims related to Tremont.

138.    On February 10, 2012, XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010 by the Trustee against XL Portfolio and other defendants.  These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.,*  Adv. Pro. No. 10-05354, and *Picard v. ABN AMRO (Ireland) Leg., et al*.

139.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. Pro. No. 10-05342, settled and had approved the latter action.  Upon the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

### O.    MATTER 30 – HSBC

140.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), UniCredit S.p.A., and Pioneer Alternative Investment Management Ltd. (together, "UCG/PIA"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., Herald Fund SpC – Herald (Lux) SICAV, Primeo Fund, Alpha Prime Fund, and Senator Fund, as well as individuals affiliated with those funds.  The Trustee's complaint seeks $8.8 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and common law causes of action. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y. Nov. 30, 2012).

141.    During the Compensation Period, B&H attorneys extended the time for certain HSBC Defendants to respond to the amended complaint and coordinated service of process on numerous international defendants.  B&H attorneys prepared an opposition to the motions to dismiss filed by the thirteen HSBC-related defendants and, separately, by UCG/PIA on May 3,

2011 in the District Court.  *Picard v. HSBC Bank plc*, No. 11 Civ. 763 (JSR) (S.D.N.Y.), ECF.

No. 35; *Picard v. HSBC Bank plc*, No. 11 Civ. 836 (JSR) (S.D.N.Y.), ECF. No. 34.  The District

Court granted the motions on July 28, 2011, dismissing the Trustee's common law claims.

*Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011).  B&H attorneys briefed the

appeal, filing both their principal and reply briefs.  Oral argument before the Second Circuit took

place on November 21, 2012, and a decision denying the appeal was issued in June 2013.  The

Trustee filed a petition for certiorari.

142.    During the Compensation Period, the Trustee took part in proceedings pending in

the Cayman Islands involving the Primeo Fund and Herald Fund.  The Trustee also continued to

develop his cases against the defendants in these actions.

## P.    MATTER 32 – UBS/LIF

143.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing

bankruptcy and common law claims against UBS AG, UBS (Luxembourg) SA, UBS Fund

Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the

"Luxalpha Defendants") seeking the return of approximately $2 billion under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

preferences, fraudulent conveyances, and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Luxalpha Defendants.  *Picard v. UBS AG*, Adv.

No. 10-04285 (BRL) (Bankr. S.D.N.Y. Oct. 22, 2012).

144.    This matter also incorporates time spent by the Trustee and B&H attorneys

pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other

defendants (the "LIF Defendants") seeking the return of approximately $555 million under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable

law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS. *Picard v. UBS AG*, Adv. No. 10-05311 (BRL) (Bankr. S.D.N.Y. Oct. 22, 2012).

145.    On December 19, 2012, the Trustee participated in a hearing in this Court regarding the motions to dismiss the amended complaint filed by a number of the Luxalpha Defendants and the LIF Defendants for lack of personal jurisdiction and *forum non conveniens*. At the hearing, the Court directed the parties to meet and confer on the issues in dispute with the goal of narrowing the issues before the Court.  The Trustee has made progress toward narrowing the number of defendants and parties in dispute—in particular, on June 18, 2013, the Trustee entered into a stipulation whereby Defendant UBS (Luxembourg) S.A. withdrew its motion to dismiss for lack of personal jurisdiction in both actions, and certain of the defendants in the Luxalpha action were dismissed without prejudice.  (Luxalpha ECF No. 154; LIF ECF No. 157). The Trustee's meet and confer process with respect to certain other defendants in the actions remains ongoing.

146.    In addition, this matter incorporates work related to an action brought in Luxembourg by the Luxembourg liquidators of Luxalpha against Access Group, UBS, and the directors of Luxalpha.  On April 19, 2012, the Trustee and B&H commenced an action against Access Management Luxembourg, S.A., Patrick Littaye, and Pierre Delandmeter (collectively, the "Third-Party Plaintiffs") seeking an injunction preventing these parties from litigating an action they have filed against the Trustee in Luxembourg.  *Picard v. Access Mgmt. Luxembourg, S.A.*, Adv. No. 12-01563 (BRL) (Bankr. S.D.N.Y.).  The Third-Party Plaintiffs subsequently filed opposition papers to the Trustee's injunction application, moved to withdraw the reference to the District Court, (ECF Nos. 14–17), and later moved to dismiss the Trustee's action for lack of personal jurisdiction and failure to state a claim.  (ECF Nos. 33–40).  On December 19, 2012,

the Trustee participated in a hearing in this Court regarding the motion to dismiss the amended complaint for lack of personal jurisdiction filed by the Third-Party Plaintiffs.  At the hearing, the Court directed the parties to meet and confer on the issues in dispute with the goal of narrowing the issues before the Court, which meet and confer process remains ongoing.

147.    In addition, this matter incorporates work on an action commenced by the Trustee on June 6, 2012, against Banque Degroof SA/NV, other Banque Degroof entities, Access International Advisors LLC, other Access entities, Aforge Finance Holding, other Aforge entities, and the Elite Stability SICAV Stablerock Compartment fund.  *Picard v. Banque Degroof SA/NV*, Adv. No. 12-01691 (BRL) (Bankr. S.D.N.Y.).    The complaint seeks recovery of subsequent transfers from these defendants.

## Q.    MATTER 33 – NOMURA INTERNATIONAL PLC

148.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

149.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included Nomura's motion to withdraw the reference in Common Briefing and oral argument.

150.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with Nomura to extend Nomura's time to respond to the amended complaint while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y. ), ECF No. 49.

151.    In addition, during the Compensation Period, B&H attorneys prepared for continued litigation in this action.

### R.    MATTER 34 – CITIBANK

152.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank. *Picard v. Citibank,* Adv. No. 10-05345 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

153.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included Citibank's motion to withdraw the reference in Common Briefing and oral argument.

154.    In addition, prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, extended the Trustee's time to respond to Citibank's motion to dismiss the complaint filed in this Court, while awaiting determinations from the District Court with respect to Common Briefing. *Picard v. Citibank,* Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Aug. 27, 2013), ECF No. 63.

155.    During the Compensation Period, the District Court issued an opinion denying the motion to dismiss of multiple defendants, including Citibank, made in connection with Common Briefing with respect to Section 550(a) of the Bankruptcy Code. *Picard v. Citibank,* Case No. 11-cv-07825 (JSR) (S.D.N.Y. Oct. 30, 2013), ECF No. 36.

156.    In addition, during the Compensation Period, B&H attorneys prepared for continued litigation in this action.

S.        **MATTER 35 – NATIXIS**

157.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants. *Picard v. Natixis*, Adv. No. 10-05353 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

158.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included the Natixis Defendants' motion to withdraw the reference in Common Briefing and oral argument.

159.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with the Natixis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. Natixis*, Adv. No. 10-05353 (BRL) (Bankr. S.D.N.Y.), ECF No. 58.

160.    In addition, during the Compensation Period, B&H attorneys prepared for continued litigation in this action.

T.        **MATTER 36 – MERRILL LYNCH**

161.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of

property by BLMIS to or for the benefit of MLI. *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

162.    Prior to the Compensation Period, by orders issued by the District Court during the spring and summer of 2012, the District Court included MLI's motion to withdraw the reference in Common Briefing and oral argument.

163.    During the Compensation Period, the District Court issued an opinion denying the motion to dismiss of multiple defendants, including MLI, made in connection with Common Briefing with respect to Section 550(a) of the Bankruptcy Code. *Picard v. Merrill Lynch Int'l*, 12-cv-03486 (S.D.N.Y.) ECF Nos. 11, 12.

164.    While awaiting determinations from the District Court with respect to the remaining Common Briefing issues, the Trustee and B&H attorneys entered into stipulations with counsel for MLI extending MLI's time to answer or otherwise respond to the complaint. *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (BRL) (Bankr. S.D.N.Y.), ECF No. 44.

165.    In addition, during the Compensation Period, B&H attorneys prepared for continued litigation in this action.

## U.    MATTER 40 – MEDICI

166.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and civil action against Sonja Kohn, UniCredit Bank Austria AG ("Bank Austria"), Bank Medici AG ("Bank Medici"), and numerous other financial institutions, entities, and individuals (collectively, the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in

connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants. *Picard v. Kohn*, Adv. No. 10-05411 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

167.    This matter also covers work performed by B&H attorneys on the English matter *Madoff Securities International Limited v. Raven & Ors*, [2011] EWHC (Civ) 3102 (Eng.).  The liquidator of Madoff Securities International Ltd. ("MSIL"), with the assistance of B&H attorneys, obtained a worldwide freezing order against Sonja Kohn and certain of her entities in the amount of approximately £28 million.  Trial in this matter commenced in London in June 2013 and concluded on July 18, 2013.  The Trustee also assisted his English counsel with respect to the aforementioned trial.  On October 18, 2013, the English court ruled against MSIL's joint liquidators.

168.    In addition to the tasks outlined above, during the Compensation Period, the Trustee continued to exercise his rights as a civil participant in certain criminal proceedings against Sonja Kohn, Bank Medici, and Bank Austria, among others, in Austria and Liechtenstein. He also continued his ongoing investigation against the Kohn Defendants in Austria, Liechtenstein, Italy, Gibraltar, the British Virgin Islands, and New York.

## V.    MATTER 42 – EQUITY TRADING

169.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Ltd., and BNP Paribas Arbitrage, SNC (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants.  *Picard v. Equity Trading Portfolio Limited*, Adv. No. 10-04457 (SMB) (Bankr. S.D.N.Y. Dec. 1, 2010), ECF No. 2.

170.    The Equity Trading Defendants filed motions, or joinders to the motions, in the District Court to withdraw the reference from this Court.  (ECF Nos. 16, 21).  The District Court included the motions in its orders for Common Briefing and oral argument.

171.    In addition to the tasks outlined above, during the Compensation Period, B&H attorneys and the Equity Trading Defendants renegotiated the right to file an amended complaint and revised the briefing schedule for any motions in response to the amended complaint.  (ECF Nos. 42, 43).  B&H attorneys also prepared for continued litigation in this action.  The pre-trial conference is scheduled for March 26, 2014.  (ECF No. 40).

### W.    MATTER 43 – DEFENDER

172.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Defender Limited, Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited., Reliance International Research LLC, Tim Brockmann, and Justin Lowe[16] (collectively, the "Defender Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants.  *Picard v. Defender Limited*, Adv. No. 10-05229 (SMB) (Bankr. S.D.N.Y. Dec. 5, 2010).

173.    On April 2, 2012, the Defender Defendants filed motions in the District Court to withdraw the reference from this Court.  (ECF Nos. 24, 28).  The District Court partially granted these motions and included these motions in its orders for Common Briefing and oral argument.

---

[16]On November 29, 2012, the Trustee dismissed without prejudice the adversary proceeding as against defendant Justin Lowe.  (ECF No. 58).  On December 18, 2013, the Court so ordered a stipulation dismissing without prejudice the adversary proceeding as against defendants Reliance Management (Gibraltar) Limited and Tim Brockmann.  (ECF No. 72).

174.    On April 27, 2012, defendants Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann filed a motion in this Court to dismiss for lack of personal jurisdiction.  (ECF No. 36).  The Trustee opposed the motion.  (ECF No. 49). The moving defendants filed their reply brief on October 26, 2012.  (ECF No. 55).  This Court converted the hearing on this motion, scheduled for December 19, 2012, into a Rule 16 conference and directed the parties to meet and confer with respect to the motion.  This motion to dismiss remains pending.

175.    During the Compensation Period, B&H attorneys continued to confer with counsel, pursuant to this Court's instructions at the Rule 16 conference, with respect to the motion to dismiss and to attempt to narrow the issues to be determined by this Court.  B&H attorneys negotiated with counsel for defendants Reliance Management (Gibraltar) Limited and Tim Brockmann on an agreement to dismiss those defendants without prejudice in return for, among other things, their agreement to continue participating in discovery in the Bankruptcy Court.  The parties signed that agreement on December 16, 2013, and the Court so ordered the stipulation of voluntary dismissal without prejudice on December 18, 2013.  (ECF No. 72).  On January 8, 2014, the remaining parties filed a stipulation extending the Defender Defendants' time to respond to the complaint to March 1, 2014 and adjourning the pre-trial conference to April 30, 2014.  (ECF No. 73).

## X.    MATTER 46 – GLANTZ

176.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Richard M. Glantz and numerous other individuals, trusts and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers and fraudulent conveyances in connection with certain transfers of

08-01789-cgm    Doc 5980    Filed 03/21/14    Entered 03/21/14 18:35:26    Main Document
Pg 56 of 73

property by BLMIS to or for the benefit of the Glantz Defendants. *Picard v. Richard M. Glantz*, Adv. No. 10-05394 (BRL) (Bankr. S.D.N.Y. Dec. 9, 2010).

177.     Following the filing of the complaint in this action, certain defendants were dismissed based on hardship, settlement or other reasons.  On February 1, 2012, the remaining defendants filed a motion to dismiss.  (ECF Nos. 26–30).  The parties subsequently entered into stipulations extending the Trustee's time to amend the complaint in response to the motion to dismiss.  On March 31, 2012, the defendants filed a motion to withdraw the reference in the District Court.  *Picard v. Glantz*, No. 12 Civ. 02778 (JSR) (S.D.N.Y. July 12, 2012), ECF Nos. 1–3.  Judge Rakoff partially granted the motion to withdraw the reference to address certain issues related to the majority of the avoidance actions brought by the Trustee in this SIPA proceeding.  (ECF Nos. 10–12).  Some of those issues remain under consideration by the District Court.

178.     During the Compensation Period, B&H attorneys engaged in work related to these motions, including entering into an agreement regarding the timing of filing an amended complaint in response to the motion to dismiss.  B&H attorneys also continued to work on amending the complaint.  In addition, B&H attorneys continued to work on resolving claims against certain defendants, including through the review of Hardship Program applications and through settlements with certain subsequent transferee defendants.

179.     During the Compensation Period, settlements with three subsequent transferee defendants were finalized, resulting in payments to the Trustee and the dismissals of these defendants from the adversary proceeding.

### Y.     MATTER 52 – DONALD FRIEDMAN

180.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against S. Donald Friedman, individually and in his capacity as a beneficiary of

an individual retirement account, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman (collectively, the "Friedman Defendants"), seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Friedman Defendants. *Picard v. Friedman*, Adv. No. 10-05395 (BRL) (Bankr. S.D.N.Y. Dec. 9, 2010).

181.    During the Compensation Period, B&H attorneys continued document discovery. B&H attorneys continued an extensive review of thousands of documents produced by third parties and produced over 10,000 third-party and BLMIS documents to the Friedman Defendants.

182.    In addition, B&H attorneys prepared and served two sets of requests for admissions on the Friedman Defendants; drafted responses to the Friedman Defendants' second and third sets of document requests; and prepared and submitted an amended case management plan. B&H attorneys also took the depositions of Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman, and prepared outlines for the depositions of two former accountants that performed services for the Friedman Defendants.

183.    B&H attorneys coordinated with the Trustee's consultants to prepare analyses tracing transfers from BLMIS to the Friedman Defendants. Also, they conducted meetings and conference calls to address additional evidence supporting the Trustee's allegations of bad faith.

184.    B&H attorneys also performed research on several issues and finalized a case assessment memorandum. Additionally, B&H attorneys performed monthly data-tracking analyses and submitted a preservation letter to a third-party bank concerning alleged subsequent fraudulent transfers to the Friedman Defendants.

### Z.    MATTER 53 – MAGNIFY

185.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and Robert H. Book (collectively, the "Magnify Defendants") seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (BRL) (Bankr. S.D.N.Y. Dec. 6, 2010).

186.    During the Compensation Period, B&H attorneys continued their investigation of the Magnify Defendants located outside of the United States.  B&H attorneys participated in ongoing court-ordered jurisdictional discovery over defendant Kurt Brunner; the deadline to conclude jurisdictional discovery over Mr. Brunner has been extended to March 20, 2014 by stipulation of the parties.  B&H attorneys continued their review of document productions received from Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc. as part of ongoing discovery between the parties.  B&H attorneys also continue to produce documents in response to discovery requests by Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc.

187.    Defendants Robert H. Book and R.H. Book LLC also filed a motion to withdraw the reference on April 2, 2012. *Picard v. Robert H. Book*, No. 12-02482  (JSR) (S.D.N.Y.). B&H attorneys previously drafted various motions and pleadings related to this motion to

withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

188.    In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate (Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Apfelbaum Defendants. *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (BRL) (Bankr. S.D.N.Y. Nov. 30, 2010).

189.    During the Compensation Period, B&H attorneys continued their investigation of the Apfelbaum Defendants, who are located outside of the United States.  B&H attorneys also participated in ongoing court-ordered jurisdictional discovery over the Apfelbaum Defendants; the deadline to conclude jurisdictional discovery of the Apfelbaum Defendants has been extended to March 20, 2014 by stipulation of the parties.  As part of ongoing jurisdictional discovery, B&H attorneys requested supplemental responses to discovery requests on the Apfelbaum Defendants and reviewed supplemental productions received.  B&H attorneys also filed a motion on consent for the appointment of a commissioner under the Hague Convention to supervise the deposition on consent of Laurence Apfelbaum in Paris, France as part of court-ordered jurisdictional discovery.  The Apfelbaum Defendants filed a motion to withdraw the reference on April 2, 2012.  *Picard v. Estate (Succession) of Doris Igoin*, No. 12-02872 (JSR) (S.D.N.Y.).  B&H attorneys previously drafted various motions and pleadings related to this

motion to withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

## AA.    MATTER 54 – MENDELOW

190.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela (Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants.  *Picard v. Steven B. Mendelow*, Adv. No. 10-04283 (BRL) (Bankr. S.D.N.Y. Nov. 23, 2010).

191.    The Mendelow Defendants moved to withdraw the reference, which was granted in part.  *Picard v. Mendelow*, No. 11 Civ. 07680 (JSR) (S.D.N.Y.), ECF No. 14.  B&H attorneys continue to monitor the developments in the third-party state court action against Stephen B. Mendelow, as discovery has continued against the remaining defendants in that action.  B&H attorneys granted the Mendelow Defendants several extensions of time to respond to the complaint.  Their answer currently is due on April 17, 2014.

## BB.    MATTER 58 – PJ ADMINISTRATORS

192.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the PJ Defendants. *Picard v. American Sec. Mgmt., L.P.*, Adv. No. 10-05415 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

193.    During the Compensation Period, B&H attorneys spent time preparing for continued litigation in this action, including reviewing documents produced by the PJ Defendants, evaluating the benefits of further amendment of the complaint, identifying possible sources of additional evidence, considering alternative case theories, and investigating possible spoliation of evidence by one or more defendants.  Additionally, B&H attorneys granted the PJ Defendants extensions of time to respond to the amended complaint pending the disposition of Common Briefing before Judge Rakoff, and continued settlement negotiations with defendant Paul Horowitz.

## CC.    MATTER 59 – STANLEY SHAPIRO

194.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $61.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants.  *See Picard v. Shapiro*, Adv. No. 10-05383 (BRL) (Bankr. S.D.N.Y.).

195.    Prior to the Compensation Period, the Shapiro Defendants withdrew the reference to the Bankruptcy Court and participated in Common Briefing in the District Court.  Among the issues affecting the Shapiro Defendants are the safe harbor under Bankruptcy Code section 546(e) and the standards of good faith and value under Bankruptcy Code 548.  While Judge Rakoff has ruled on many of the issues raised by the Shapiro Defendants in their motion to

withdraw the reference, issues relating to good faith under the Bankruptcy Code still remain to be decided by Judge Rakoff.

196.    During the Compensation Period, B&H attorneys continued to develop the Trustee's case against the Shapiro Defendants, drafted an amended complaint against the Shapiro Defendants, and consented to extending the time for the Shapiro Defendants to respond to the amended complaint before the Bankruptcy Court.

### DD.    MATTER 60 – AVELLINO & BIENES

197.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

198.    On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint in this Court. (ECF No. 23). That same day, certain A&B Defendants moved to withdraw the reference. *Picard v. Avellino*, No. 11-03882 (JSR) (S.D.N.Y.), ECF Nos. 1–3. The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011. The reference to this Court was withdrawn on several issues on February 29, 2012. (ECF No. 20). The Trustee and the A&B Defendants participated in Common Briefing before the District Court on the issues withdrawn. While the District Court rendered decisions on most of the issues, at least one issue withdrawn remains pending. As such, the motion to dismiss will continue to be held in abeyance.

199.    While the above-referenced motions have been pending, B&H attorneys continued to perform legal research and engage in discovery preparation, document review, and case assessment and strategy.

### EE.    MATTER 61 – MAXAM

200.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Maxam Absolute Return Fund, L.P., Maxam Absolute Return Fund, Ltd., Maxam Capital Management, LLC, Maxam Capital GP LLC, Sandra L. Manzke Revocable Trust, Sandra L. Manzke, as trustee and individually, Suzanne Hammond, Walker Manzke, and April Bukofser Manzke (collectively, the "Maxam Defendants") seeking the return of $97.8 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maxam Defendants.  *Picard v. Maxam Absolute Return Fund, L.P.*, Adv. No. 10-05342 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010).

201.    During the Compensation Period, the parties finalized a settlement of the matter, which resulted in a motion filed on August 26, 2013 under Rule 9019 seeking the Bankruptcy Court's approval.  (ECF No. 111).  Prior to the approval hearing, B&H attorneys addressed a limited objection to the motion and prepared for the hearing.  On September 17, 2013, the Bankruptcy Court entered an order approving the settlement between the Trustee and the Maxam Defendants.  (ECF No. 118).  Subsequent to approval, B&H attorneys spent time implementing the settlement, which closed on October 2, 2013, and finalizing the dismissal, which was so ordered on October 7, 2013.  (ECF No. 120).

## FF.    MATTER 62 – SUBSEQUENT TRANSFERS

202.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.  Under § 550 of the Bankruptcy Code, the Trustee may recover transfers from BLMIS to a direct customer or from any entity to whom the customer made transfers.

203.    Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to Common Briefing and hearings.

204.    As of November 30, 2013, the Trustee and the subsequent transfer defendants had entered into stipulations extending the response date to the Trustee's complaints and amended complaints while awaiting the ruling by the District Court on the issues subject to Common Briefing and hearings.

205.    The Trustee's investigation is ongoing, and additional recovery actions against other subsequent transferees likely will be filed in the future.

## GG.    MATTER 65 – LEGACY

206.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC, HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.  *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. Dec. 6, 2010).

207.    During the Compensation Period, B&H attorneys completed a review of Rule 2004 discovery and third-party productions relevant to the claims against the Legacy Capital Defendants.  B&H attorneys also worked with consultants to procure information regarding the Legacy Capital Defendants and relevant third-party witnesses.

### HH.    MATTER 66 – LIEBERBAUM

208.    This matter characterizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Michael Lieberbaum and Cynthia Lieberbaum (together, the "Lieberbaum Defendants") seeking the return of approximately $2.36 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lieberbaum Defendants.  *Picard v. Michael Lieberbaum*, Adv. No. 10-05406 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

209.    During the Compensation Period, discovery continued in this matter. The Trustee produced documents responsive to the Lieberbaum Defendants' document requests, prepared for the depositions of the Lieberbaum Defendants, took the deposition of Mr. John Maccabee, and conferred with third parties about de-designating documents previously marked confidential. Additionally, the Trustee engaged in settlement negotiations with the Lieberbaum Defendants, which are ongoing.

### II.    MATTER 72 – PLAZA

210.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Plaza Investments International Limited and Notz, Stucki Management (Bermuda) Limited (collectively, the "Plaza Defendants") seeking the return of approximately $235 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with

certain transfers of property by BLMIS to or for the benefit of the Plaza Defendants. *Picard v. Plaza Invs. Int'l Ltd.*, Adv. No. 10-04284 (BRL) (Bankr. S.D.N.Y.).

211.    On July 12, 2012, Judge Rakoff issued an order as to the Plaza Defendants' fully briefed motion to withdraw the reference, stating that the Plaza Defendants raised the same issues that the District Court previously arranged for Common Briefing and directed the Plaza Defendants to continue to proceed according to the procedures arranged for Common Briefing. *See* Order, *Picard v. Plaza Invs. Int'l Ltd.*, No. 12 Civ. 02646 (JSR) (S.D.N.Y. July 12, 2012), ECF No. 15.  As of November 30, 2013, a number of those issues remained under consideration by the District Court.

## JJ.    MATTER 73 – BNP PARIBAS

212.    This matter categorizes time spent by the Trustee and B&H attorneys in five adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas (Canada), BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Investment Partners Luxembourg S.A., BNP Paribas Securities Services—Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS.  *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.,* Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.,* Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV,* Adv. No. 10-05120 (SMB) (Bank. S.D.N.Y. 2010); and *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. 2010) (collectively, the "BNP Paribas Proceedings").

213.    Prior to the Compensation Period, the BNP Paribas Defendants filed motions to withdraw the reference which were granted by United States District Judge Rakoff and resulted in Common Briefing pending in the District Court.  Among the issues affecting the BNP Paribas Proceedings are the extraterritoriality of the Bankruptcy Code, the safe harbor under Bankruptcy Code section 546(e), the recovery of avoided or avoidable transfers under Bankruptcy Code section 550, and the measure of good faith under Bankruptcy Code sections 548 and 550.  The District Court has issued opinions relating to certain of the withdrawn issues.  During the Compensation Period, the Trustee and B&H attorneys reviewed and analyzed these rulings as they relate to the BNP Paribas Proceedings and continued to prepare for litigation in light of the District Court's opinions.

214.    B&H attorneys, on behalf of the Trustee, reached agreements with the BNP Paribas Defendants to extend the time to respond to the Trustee's complaints in the BNP Paribas Proceedings while the parties await additional rulings from the District Court with respect to Common Briefing.

## V.    COMPENSATION REQUESTED

215.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

216.    The Trustee, and B&H, as counsel to the Trustee, expended 102,055.80 hours in the rendition of professional and paraprofessional services during the Compensation Period,

resulting in an average hourly discounted rate of $384.47 for fees incurred.[17]    The blended attorney rate is $451.44.

217.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application.    In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $2,422,340.55 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $325,234.89.

218.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.    This discount has resulted in an additional voluntary reduction during the Compensation Period of $4,359,685.60.    The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

219.    Pursuant to the Second Amended Compensation Order, on September 24, 2013, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from August 1, 2013 through August 31, 2013 (the "August Fee Statement").    The August Fee Statement reflected fees of $11,256,920.55 and expenses of $88,191.86.    SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.    After such adjustments, the August Fee Statement reflected fees of $10,790,981.10.    After subtracting the Court-ordered

---

[17]In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

10% holdback, SIPC advanced $9,711,882.99 for services rendered and $80,887.10 for expenses incurred by the Trustee and B&H.

220.    Pursuant to the Second Amended Compensation Order, on October 22, 2013, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from September 1, 2013 through September 30, 2013 (the "September Fee Statement").  The September Fee Statement reflected fees of $11,176,735.50 and expenses of $139,079.58.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the September Fee Statement reflected fees of $10,718,214.30.  After subtracting the Court-ordered 10% holdback, SIPC advanced $9,646,392.87 for services rendered and $138,433.05 for expenses incurred by the Trustee and B&H.

221.    Pursuant to the Second Amended Compensation Order, on November 22, 2013, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from October 1, 2013 through October 31, 2013 (the "October Fee Statement").  The October Fee Statement reflected fees of $9,987,172.20 and expenses of $191,058.69.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the October Fee Statement reflected fees of $9,579,827.25.  After subtracting the Court-ordered 10% holdback, SIPC advanced $8,621,844.53 for services rendered and $190,765.28 for expenses incurred by the Trustee and B&H.

222.    Pursuant to the Second Amended Compensation Order, on December 20, 2013, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from November 1, 2013

through November 30, 2013 (the "November Fee Statement"). The November Fee Statement reflected fees of $8,553,017.70 and expenses of $81,410.30. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the November Fee Statement reflected fees of $8,148,147.75. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,333,332.98 for services rendered and $79,744.66 for expenses incurred by the Trustee and B&H.

223.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

224.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofesionals. The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

225.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

226.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case. No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

227.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

228.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

229.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

230.    While the Trustee has recovered or entered into agreements to recover approximately $9.51 billion as of November 30, 2013, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

231.    Accordingly, the Trustee has determined that, at this time, he has no reasonable

expectation that the general estate will be sufficient to make a distribution to general creditors or

pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief

of the Trustee.  Any fees and expenses allowed by this Court will be paid from advances by

SIPC without any reasonable expectation by SIPC of recoupment thereof.

232.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to

the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the

amounts recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio

1990).  SIPC will file its recommendation to the Court with respect to this Application prior to

the hearing scheduled to be held on April 17, 2014.

233.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for

interim allowance of compensation and expenses made by this Application is reasonable and

complies with the provisions of the Bankruptcy Code governing applications for compensation

and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

**VII.    CONCLUSION**

234.    The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the

services rendered during the Compensation Period and accomplishments to date merit the

approval of the fees and disbursements requested herein, and respectfully requests that the Court

enter Orders as follows: (i) allowing and awarding $39,237,170.40 (of which $35,313,453.37 is

to be paid currently and $3,923,717.03 is to be held back through the conclusion of the

liquidation period or until further order of the Court) as an interim payment for professional

services rendered by the Trustee and B&H during the Compensation Period, and $489,830.09 as

reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H

68

in connection with the rendition of such services; and (ii) granting such other and further relief as

the Court may deem just and proper.

Dated: New York, New York                    Respectfully submitted,
      March 21, 2014

                                                **BAKER & HOSTETLER LLP**

                                By:   s/ *David J. Sheehan* _____
                                          Baker & Hostetler LLP
                                          45 Rockefeller Plaza
                                          New York, New York 10111
                                          Telephone: (212) 589-4200
                                          Facsimile: (212) 589-4201
                                          Irving H. Picard
                                          Email: ipicard@bakerlaw.com
                                          David J. Sheehan
                                          Email: dsheehan@bakerlaw.com
                                          Seanna R. Brown
                                          Email: sbrown@bakerlaw.com
                                          Heather R. Wlodek
                                          Email: hwlodek@bakerlaw.com

                                          *Attorneys for Irving H. Picard, Trustee for the*
                                          *Substantively Consolidated SIPA Liquidation*
                                          *of Bernard L. Madoff Investment Securities*
                                          *LLC And Bernard L. Madoff*