# EXHIBIT H

**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Hearing Date: _____, 2014
Time: 10:00 a.m.

Objection Deadline: _____, 2014
Time: 5:00 p.m.

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01920 |
| Plaintiff, | |
| v. | |
| KINGATE GLOBAL FUND, LTD., by its Liquidators; and KINGATE EURO FUND, LTD., by its Liquidators, | |
| Defendants. | |

## NOTICE OF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

**PLEASE TAKE NOTICE** that Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities, LLC and the estate of Bernard L. Madoff, by and through the Trustee's undersigned counsel, will move before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 723, One Bowling Green, New York, NY 10004, on April __, 2014 at 10:30 a.m., or as soon thereafter as counsel may be heard, for entry of an order pursuant to § 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, on the grounds and for the reasons set forth in the accompanying Memorandum of Law in Support of Trustee's Motion for Preliminary Injunctive Relief and the Declaration of Gonzalo S. Zeballos, Esq. in Support of Trustee's Motion for Preliminary Injunctive Relief, preliminarily enjoining the Joint Liquidators acting on behalf of defendants Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (the "Kingate Funds"), and all those acting on the Joint Liquidators' behalf or in concert with them,  from taking any action in connection with, or to accomplish, the actual or attempted dissipation, transfer, disposition, disbursement, or distribution of any or all assets that the Joint Liquidators may recover from, or collect upon, any settlement reached or judgment entered in favor of either of the Kingate Funds in the civil action commenced in the Supreme Court of Bermuda, Commercial Court against Federico Ceretti, Carlo Grosso, Kingate Management Limited, FIM Advisers LLP, FIM Limited, Ashby Trust, First Peninsula Trustees Limited (as trustee of Ashby Trust), El Prela Trust, Port of Hercules Trustees Limited (as trustee of El Prela Trust), Alpine Trustees Limited (as former trustee of El Prela Trust), El Prela Group Holding Services Limited, Ashby Holding Services Limited, Ashby Investment Services Limited, and El Prela Trading Investments Limited.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion

must:  (i) be in writing, conform to applicable rules of this Court, and be filed with the Clerk of the United States Bankruptcy Court, One Bowling Green, New York, NY 10004, in accordance with General Order 242, by no later than **5:00 p.m. on April __, 2014** (the "Objection Deadline") (with a courtesy copy delivered to the Chambers of the Honorable Stuart M. Bernstein); and (ii) be served upon (a) Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, NY 10111, Attn: David J. Sheehan and Geraldine E. Ponto; and (b) Securities Investor Protection Corporation, 805 15th Street, N.W., Suite 800, Washington, D.C. 20005, Attn:  Kevin H. Bell, so as to be received no later than the Objection Deadline.  Any objections must specifically state the interest that the objecting party has in these proceedings and the specific basis of any objection to the Motion.

**PLEASE TAKE FURTHER NOTICE** that notice of the Motion will be provided by U.S. Mail or email to all defendants in this adversary proceeding in accordance with the Order Establishing Notice Procedures (ECF No. 4560).  The Trustee submits that no other or further notice is required.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of Order is submitted.

Dated: April __, 2014
New York, NY

/s/ *David J. Sheehan*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Geraldine E. Ponto
Email:  gponto@bakerlaw.com
*Attorneys for Irving H. Picard, Trustee for the substantively consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and estate of Bernard L. Madoff*

Of Counsel:
Anthony M. Gruppuso
Email:  agruppuso@bakerlaw.com

3

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                      Plaintiff,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                   Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                   Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                   Plaintiff,<br><br>        v.<br><br>KINGATE GLOBAL FUND, LTD., by its Liquidators; and KINGATE EURO FUND, LTD., by its Liquidators,<br><br>                  Defendants. | Adv. Pro. No. 12-01920 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**TRUSTEE'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

# Contents

PRELIMINARY STATEMENT ......................................................................................................3

FACTUAL BASIS FOR INJUNCTIVE RELIEF ..........................................................................5

I.      The Kingate Funds' Receipt and Subsequent Transfer of BLMIS Funds ...............6

        A.      The Relationship Among BLMIS, the Kingate Funds, Kingate
                Management, and the Trust Defendants .......................................................6

        B.      The Kingate Funds Transferred BLMIS Funds to Kingate
                Management, Which in Turn Transferred BLMIS Funds to the Trust
                Defendants ....................................................................................................8

II.     The Kingate Funds Filed Customer Claims With the Trustee That Are
        Subject to Adjudication by This Court .................................................................10

III.    The Avoidance Action ...........................................................................................10

IV.     The Liquidation Proceedings of the Kingate Funds and Kingate Management ....11

V.      The Bermuda Action..............................................................................................12

VI.     The Joint Liquidators Refused to Stipulate to Maintaining the Status Quo ..........12

ARGUMENT.................................................................................................................................13

I.      The Statements Made By The Joint Liquidators And The Trust Defendants In
        Pleadings And Submissions Are Judicial Admissions Upon Which The Court
        May Grant Injunctive Relief. ................................................................................13

II.     The Court Should Exercise Its Power Under Section 105(A) To Enjoin The
        Joint Liquidators From Dissipating Any Or All Assets Recovered From Any
        Settlement Or Judgment Entered In The Bermuda Action. ....................................16

        A.      Section 105(a) Grants This Court Broad Power to Enter Injunctive
                Relief to Protect This Court's Jurisdiction and the Debtors' Estate .........16

        B.      The Bermuda Action Threatens This Court's Exclusive Jurisdiction of
                the Kingate Funds' Customer Claims and the Avoidance Action .............18

        C.      The Estate Will Suffer an "Immediate Adverse Economic
                Consequence" if the Joint Liquidators Are Allowed to Dissipate Tens,
                if not Hundreds, of Millions of Dollars of Customer Property Through
                the Bermuda Action .................................................................................21

        D.      This Court and the District Court Have Previously Issued Section
                105(a) Injunctions Under Similar Circumstances......................................23

CONCLUSION ........................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
 651 F. Supp. 2d 155 (S.D.N.Y. 2009)......................................................................................14

*Adelphia Bus. Solutions, Inc. v. Abnos*,
 482 F.3d 602 (2d Cir. 2007)....................................................................................................16

*Aetna U.S. Healthcare v. Frazier*,
 2002 WL 1677700, No. 00-CV-0454 (W.D.N.Y. 2002) .........................................................14

*AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*,
 117 B.R. 789 (S.D.N.Y. 1990)................................................................................................16

*In re Bernard L. Madoff Investment Securities LLC*
 2011 WL 7975167, No. 11-02392 (AKH) (S.D.N.Y. Dec. 15, 2011), *aff'd*, 512 Fed.
 Appx. 18 (2d Cir. 2013)..........................................................................................................23

*Buena Vista Television v. Adelphia Commc'n Corp. (In re Adelphia Communications
 Corp.)*, 307 B.R. 404 (Bankr. S.D.N.Y. 2004) .....................................................................19

*C & J Clark Am., Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.)*,
 92 B.R. 87 (Bankr. S.D.N.Y. 1988)........................................................................................16

*Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*,
 354 B.R. 45 (Bankr. S.D.N.Y. 2006), *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007) .........................17

*In re Chiles Power Supply Co., Inc.*,
 264 B.R. 533 (Bankr. W.D. Mo. 2001)...................................................................................19

*China Trade and Dev. Corp. v. M.V. Choong Yong*,
 837 F.2d 33 (2d Cir. 1987)......................................................................................................20

*In re Cuyahoga Equip. Corp.*,
 980 F.2d 110 (2d Cir. 1992)....................................................................................................19

*De Beers Consol. Mines, Ltd. v. United States*,
 325 U.S. 212 (1945)................................................................................................................25

*Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*,
 2010 WL 571804, No. 06 Civ. 243 (S.D.N.Y. Feb. 16, 2010) ................................................14

*Fisher v. Apostolou*,
 155 F.3d 876 (7th Cir. 1998) ........................................................................................17, 23, 24

i

*In re Fosamax Prod. Liab. Litig.*,
    647 F. Supp. 2d 265 (S.D.N.Y. 2009)......................................................................................14

*Fox v. Picard* (*In re Madoff*),
    848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 81 (2d 2014) ..........................17, 23, 24

*Garrity v. Leffler* (*In re Neuman*),
    71 B.R. 567 (S.D.N.Y. 1987)..................................................................................................16

*In re Johns Manville Corp.*,
    26 B.R. 420 (Bankr. S.D.N.Y. 1983).......................................................................................16

*Keller v. Blinder* (*In re Blinder Robinson & Co., Inc.*),
    135 B.R. 892 (D. Colo. 1991)..................................................................................................19

*LaMonica v. N. of Eng. Protecting & Indemn. Ass'n* (*In re Probulk Inc.*),
    407 B.R. 56 (Bankr. S.D.N.Y. 2009).......................................................................................17

*Langenkamp v. Culp*,
    498 U.S. 42 (1990)...................................................................................................................19

*Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc.* (*In re Lyondell Chem. Co.*),
    402 B.R. 571 (Bankr. S.D.N.Y. 2009).....................................................................................16

*Monarch Life Ins. Co. v. Ropes & Gray*,
    65 F.3d 973 (1st Cir. 1995)......................................................................................................16

*Motorola Credit Corp. v. Uzan*,
    202 F. Supp. 2d 239 (S.D.N.Y. 2002)......................................................................................25

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*),
    351 F.3d 86 (2d Cir. 2003)......................................................................................................17

*Perkowski v. Stratford Bd. of Educ.*,
    455 F. Supp. 2d 91 (D. Conn. 2006)........................................................................................14

*Peskin v. Picard* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    413 B.R. 137 (Bankr. S.D.N.Y. 2009), *aff'd*, 440 B.R. 579 (S.D.N.Y. 2010).........................10

*Pfizer, Inc. v. Law Offices of Peter G. Angelos* (*In re Quigley Co., Inc.*),
    676 F.3d 45 (2d Cir. 2012)......................................................................................................19

*Picard v. Ceretti, et al.*,
Adv. Pro. No. 09-1161 (SMB) (Bankr. S.D.N.Y.) ...........................................................3

*Picard v. Fox,*
    429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd,* 848 F. Supp. 2d 469 (S.D.N.Y. 2012),
    *aff'd,* 740 F.3d 81 (2d Cir. 2014)...................................................................17, 18, 23, 24

*Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L Madoff Inv. Sec. LLC),*
    460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd,* 474 B.R. 76 (S.D.N.Y. 2012) ........................24

*Picard v. Stahl,*
    443 B.R. 295 (Bankr. S.D.N.Y. 2011), *aff'd,* 2011 WL 7975167, No. 11-02392
    (AKH) (S.D.N.Y. Dec. 15, 2011), *aff'd,* 512 Fed. Appx. 18 (2d Cir. 2013).........17, 18, 23, 24

*Purgess v. Sharrock,*
    33 F.3d 134 (2d Cir. 1994)...............................................................................14

*Queenie, Ltd. v. Nygard Int'l,*
    321 F.3d 282 (2d Cir. 2003)........................................................................16, 18

*United States ex rel. Rahman v. Oncology Associates,*
    198 F.3d 489 (4th Cir. 1999) ...........................................................................25

*Republic of the Philippines v. Marcos,*
    806 F.2d 344 (2d Cir. 1986)............................................................................25

*Ridgway v. United States (In re Ridgway),*
    325 B.R. 65 (Bankr. D. Conn. 2005) ...................................................................14

*Rubin v. Pringle (In re Focus Media Inc.),*
    387 F.3d 1077 (9th Cir. 2004) ..........................................................................25

*Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Intern. Corp.,*
    401 F.3d 28 (2d Cir. 2005)..............................................................................14

*Scott v. City of White Plains,*
    2012 WL 1267873, No. 10 Civ. 1887 (S.D.N.Y. April 10, 2012)...........................................14

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van*
    *Saybolt Int'l B.V. v. Schreiber,*
    407 F.3d 34, 45 (2d Cir. 2005)......................................................................13, 14

*In re Teligent, Inc. v. Mandl,*
    417 B.R. 197 (Bankr. S.D.N.Y. 2009) ..................................................................16

*The Lautenberg Found. v. Picard (In re Bernard L. Madoff Inv. Sec. LLC),*
    2013 WL 616269 (2d Cir. Feb. 20, 2013).................................................................16

*U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indemn. Ass'n, Inc. (In re U.S. Lines,*
    *Inc.),*
    197 F.3d 631 (2d Cir. 1999)............................................................................16

*Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*,
    2000 WL1610790, No. 00 Civ. 8051 (JSM), (S.D.N.Y. Oct. 27, 2000) ................................25

**STATUTES**

11 U.S.C. §105 ............................................................................................................................ *passim*

11 U.S.C. § 362 ....................................................................................................................16. 17

11 U.S.C. § 502 ...............................................................................................................11, 17, 20

11 U.S.C. § 510 ........................................................................................................................11

11 U.S.C. § 544 ....................................................................................................................11, 17

11 U.S.C. § 547 ....................................................................................................................11, 17

11 U.S.C. § 548 ....................................................................................................................11, 17

11 U.S.C. § 550 ....................................................................................................................11, 17

11 U.S.C. § 551 ....................................................................................................................11, 17

15 U.S.C. § 78eee(b)(2)(A)(i) ...........................................................................................17, 18, 21

15 U.S.C. § 78fff(b) ....................................................................................................................16

15 U.S.C. § 78fff-2(c)(3) ............................................................................................................11

15 U.S.C. § 78fff-4(e) .......................................................................................................17, 18, 21

15 U.S.C. § 78fff(g) ..........................................................................................................17, 18, 21

15 U.S.C. § 78*lll*(4) .....................................................................................................................4

28 U.S.C. § 157(a) .....................................................................................................................18

28 U.S.C. § 1334 ....................................................................................................................18, 19

**RULES**

Fed. R. Civ. P. 65 .....................................................................................................................17

Fed. R. Evid. 801(d)(2) ..............................................................................................................15

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation

of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq*. ("SIPA"), and the estate of Bernard L.

Madoff ("Madoff" and collectively, with BLMIS, the "Debtors"), by and through the Trustee's

undersigned counsel, respectfully submits this memorandum of law in support of the Trustee's

motion (the "Motion") pursuant to § 105(a) of title 11 of the United States Code, 11 U.S.C.

§§ 101 *et seq*. (the "Bankruptcy Code"), to preliminarily enjoin the Joint Liquidators acting on

behalf of defendants Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd.

("Kingate Euro," and collectively, with Kingate Global, the "Kingate Funds")[1] from taking any

action in connection with, or to accomplish, the actual or attempted dissipation, transfer,

disposition, disbursement, or distribution of any or all assets that the Joint Liquidators may

recover from, or collect upon, any judgment entered or settlement reached in favor of either of

the Kingate Funds in the civil action (the "Bermuda Action") they commenced in the Supreme

Court of Bermuda, Commercial Court (the "Bermuda Court") against Federico Ceretti

("Ceretti"); Carlo Grosso ("Grosso"); Kingate Management Limited ("Kingate Management");

FIM Advisers LLP ("FIM Advisers") and FIM Limited (collectively, with FIM Advisers,

"FIM"); Ashby Trust, First Peninsula Trustees Limited (as trustee of Ashby Trust), El Prela

Trust, Port of Hercules Trustees Limited (as trustee of El Prela Trust), Alpine Trustees Limited

(as former trustee of El Prela Trust), El Prela Group Holding Services Limited, and Ashby

Holding Services Limited (collectively, the "Trust Defendants"); and Ashby Investment Services

Limited and El Prela Trading Investments Limited (collectively, "the Investment Company

Defendants").

---

[1] The current Joint Liquidators are William Tacon, Stuart Mackellar, and John McKenna. The terms "Joint Liquidators" and "Kingate Funds" will be used interchangeably throughout this memorandum.

## PRELIMINARY STATEMENT

The Joint Liquidators and the Trustee had been engaged in settlement negotiations since the Trustee first moved for injunctive relief in October 2012, and, accordingly, agreed to forestall litigating the Trustee's motion. When settlement negotiations recently broke down, the Trustee requested that the Joint Liquidators "preserve and set aside" any funds recovered in the Bermuda Action and "not make any distributions until all issues raised [in the Avoidance Action[2]] are resolved by a final and nonappealable order." The Joint Liquidators rejected that status quo proposal.

The Trustee then informed the Joint Liquidators that he intended to seek such limited status quo injunctive relief from this Court in lieu of the relief he originally sought. Knowing that the Trustee would be filing a superseding motion, the Joint Liquidators immediately and unnecessarily submitted an opposition to the initial motion. Apparently, the Joint Liquidators believe their submission will somehow help them prevent the issuance of a status quo injunction. The Trustee's right to a status quo injunction is, however, plain.

*First*, there is no dispute that the Trustee and the Joint Liquidators are pursuing recovery of the same monies. The Trustee's Avoidance Action against the Kingate Funds and their immediate and mediate transferees seeks to avoid and recover initial and subsequent transfers totaling approximately $926 million. Those transfers include more than $370 million in purported management fees that the Kingate Funds paid to Kingate Management as manager of the Kingate Funds, and more than $297 million that Kingate Management paid out of those management fees as purported shareholder dividends to the Trust Defendants. In the Bermuda

---

[2]*Picard v. Ceretti, et al.*, Adv. Pro. No. 09-1161 (SMB) (Bankr. S.D.N.Y.).

Action, the Joint Liquidators sue the same parties seeking to recover the same management fees and dividends.

*Second*, there is no dispute that the Kingate Funds received and subsequently transferred customer property.[3] Much of the Joint Liquidators' opposition to the Trustee's initial injunction motion is devoted to a "tracing" analysis that—the Joint Liquidators admit—shows transfers originating with BLMIS to Kingate Management consisting of no less than $12,105,660 and as much as $61,201,590 of customer property. Because those management fees were Kingate Management's only source of revenue, the Joint Liquidators also acknowledge that customer property flowed to the Trust Defendants as shareholder dividends. The Joint Liquidators point to a "tracing" analysis prepared by the Trust Defendants in which the Trust Defendants admit to receiving no less than $94,174,033 and as much as $199,410,710 in customer property (which far exceeds the range the Joint Liquidators are now willing to concede). Although the Trustee disputes those figures—and although the amount of customer property transferred to the Kingate Funds and the Trust Defendants will be proven in the Avoidance Action—there is no question that customer property is at stake and could be dissipated through the Bermuda Action.

*Third*, the Kingate Funds have submitted to this Court's exclusive jurisdiction to adjudicate their respective customer claims in accordance with SIPA and the Bankruptcy Code. With the Bermuda Action, they are effectively pursuing a recovery on their customer claims in a foreign jurisdiction under foreign law. If the Joint Liquidators were to successfully prosecute the Bermuda Action, and if the Joint Liquidators were then permitted to dispose of assets recovered

---

[3]SIPA defines "customer property" as "cash and securities ... at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." 15 U.S.C. § 78*lll*(4).

from a settlement or judgment entered there, hundreds of millions of dollars of customer property could be placed beyond the reach of the Trustee and this Court.

The Trustee seeks an injunction under Bankruptcy Code § 105(a) to prevent an improper dissipation of customer property and the circumvention of this Court's exclusive jurisdiction to administer customer claims and distribute customer property. The Trustee respectfully submits that injunctive relief is necessary and appropriate to preserve the status quo and to prohibit the Joint Liquidators from disposing of any recovery or settlement obtained in the Bermuda Action until this Court determines—in the Avoidance Action—the amount of customer property transferred to the Bermuda Defendants, the Trustee's right to recover it, and the allowance or disallowance of the Kingate Funds' customer claims.

## FACTUAL BASIS FOR INJUNCTIVE RELIEF

The Avoidance Action and the Bermuda Action seek from the same defendants the same funds. The Trustee is not a party to the Bermuda Action; there is no public docket in the Bermuda Action; and the Trustee cannot therefore access court filings. The Joint Liquidators are not providing the Trustee with copies of the pleadings and submissions and are not sharing information concerning any settlement discussions they may be having with the Bermuda Defendants. There is an almost complete lack of transparency into the status of the Bermuda Action and its parties' respective positions. In this context, the limited relief sought by the Trustee to preserve the status quo and ensure that customer property will not be dissipated not only makes sense, it is imperative to protect the estate.

## I.    The Kingate Funds' Receipt and Subsequent Transfer of BLMIS Funds

### A.    *The Relationship Among BLMIS, the Kingate Funds, Kingate Management, and the Trust Defendants*

Kingate Global was established in February 1994.[4]  It first sold subscriptions in U.S.

dollars, investing exclusively with BLMIS.[5]  Established in April 2000 as an affiliated fund of

Kingate Global, Kingate Euro sold subscriptions in Euros for exclusive investment with

BLMIS.[6]  The Kingate Funds were created as BLMIS investment vehicles to be marketed to

European investors.[7]  From their formation, the Kingate Funds deposited approximately $1.7

billion with BLMIS and withdrew nearly $1 billion.[8]

In 1994, contemporaneously with the formation of Kingate Global, Kingate Management

was established to provide investment management services, even though a well-established

company (defendant FIM Limited, owned by Ceretti and Grosso) already existed that specialized

in hedge fund management and performed the very services that Kingate Management agreed to

provide to Kingate Global.[9]  Kingate Management soon thereafter delegated substantially all of

its management duties to FIM Limited.[10]  Notwithstanding its near total delegation to FIM of its

management responsibilities, from January 1995 to November 2008, Kingate Management

---

[4](Declaration of Gonzalo S. Zeballos in Support of Trustee's Motion for Preliminary Injunctive Relief ("Zeballos Decl.") Ex. A, Kingate Funds' Amended Statement of Claim ("Amended Claim") ¶ 20.)  The short-form "Ex. __" will be used to cite to exhibits to the Zeballos Decl.

[5](*Id.* ¶¶ 20, 49-49.5.)

[6](*Id.* ¶¶ 31, 49-49.5.)

[7](*Id.* ¶¶ 12, 47-48.)

[8]According to their Amended Claim, over the lifetime of their BLMIS accounts, Kingate Global made transfers to BLMIS totaling $987,860,000, and Kingate Euro made transfers to BLMIS totaling $767,440,000, for a total of $1,755,300,000. (*Id.* ¶¶ 53-53.2 & Annex A.)  In that same pleading, Kingate Global states that it received transfers from BLMIS totaling $400,254,792, and Kingate Euro states that it received transfers from BLMIS totaling $545,000,000, for a total of $945,254,792.  (*Id.*)

[9](*Id.* ¶¶ 12, 18-33.)  FIM Advisers was formed after FIM Limited and assumed FIM Limited's role as "consultant" to Kingate Management. (*Id.* ¶ 5.)

[10](*Id.* ¶¶ 41-44, 110-110.4.)

received $370,437,295[11] in management fees from the Kingate Funds based on the Kingate

Funds' purported net asset value ("NAV").[12]

The Trust Defendants held all of the outstanding shares of Kingate Management for the

benefit of Ceretti and Grosso.[13] The management fees that the Kingate Funds transferred to

Kingate Management—which were Kingate Management's only known material source of

income[14]—took the form of shareholder dividends when transferred to the Trust Defendants.[15]

Kingate Management transferred (from the management fees it received) no less than

$297,013,938 in dividends to bank accounts held by the Trust Defendants.[16]

The Trust Defendants exist for the benefit of Ceretti and Grosso. Ceretti and his family

members are the beneficiaries of El Prela Trust, and Grosso and his family members are the

---

[11](*Id.* ¶¶ 69–69.2.)

[12](*Id.* ¶¶ 65–67.9.) Kingate Global made $294,312,278 in management fee transfers to Kingate Management, and Kingate Euro made $76,125,017 in management fee transfers to Kingate Management. (*Id.* ¶¶ 69-69.2.) Kingate Management received transfers that represented more than 37% of the transfers made by BLMIS to the Kingate Funds.

[13](Ex. B, Affidavit of Frank Oliver Walters in support of Ashby Trust *Beddoe* application ("Ashby Trust Walters Aff."), ¶ 35; Ex. C, Affidavit of Frank Oliver Walters in support of El Prela Trust *Beddoe* application ("El Prela Trust Walters Aff."), ¶ 35.) Ashby Trust and El Prela Trust (through their respective trustees) made *Beddoe* applications to the Eastern Caribbean Supreme Court, In the High Court of Justice, British Virgin Islands (the "BVI Court"), Claim Number BVIHCV 2011/0154 and BVIHCV 2011/0155 (the "*Beddoe* applications"), seeking directions regarding, among other things, the payment of certain costs incurred in defending the Avoidance Action.

[14](Ex. B, Ashby Trust Walters Aff. ¶ 85; Ex. C, El Prela Trust Walters Aff. ¶ 85; ECF No. 24, Memorandum of Law in Support of Opposition of Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. to Trustee's Application for Enforcement of Automatic Stay and Injunction ("Kingate Funds' Opp'n Mem."), at 5.) For the Court's convenience and ease of reference, attached to the Zeballos Decl. as *Exhibit M* are the following: (i) Kingate Funds' Opp'n Mem.; (ii) ECF No. 25, Declaration of Robert S. Loigman in Support of Opposition of Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. to Trustee's Application for Enforcement of Automatic Stay and Injunction ("Loigman Decl."); and (iii) ECF No. 26, Affidavit of Mark Guy Chudleigh ("Chudleigh Aff."), all of which were filed in this proceeding on February 18, 2014, by counsel for the Joint Liquidators.

[15]Those dividends were, in turn, the Trust Defendants' only source of revenue. (Ex. B, Ashby Trust Walters Aff. ¶ 49; Ex. C, El Prela Trust Walters Aff. ¶ 49.)

[16](Ex. B, Ashby Trust Walters Aff. ¶ 47 (stating that Ashby Trust received the sum of $149,082,329 in dividends); Ex. C, El Prela Trust Walters Aff. ¶ 47 (stating that El Prela Trust received the sum of $147,931,609 in dividends); Ex. D, Affidavit of David Peter Alexander in support of the *Beddoe* applications ("Alexander Aff."), ¶ 44).) According to the Joint Liquidators, Kingate Management made dividend transfers to the Trust Defendants totaling $293,902,730, which is $3,111,208 less than the Trust Defendants acknowledge. (Ex. A, Amended Claim ¶ 70.)

beneficiaries of Ashby Trust.[17]  According to the Trust Defendants, as of December 31, 2011,[18] Ashby Trust held assets valued at $136,652,602, and El Prela Trust held assets valued at $117,822,836.[19]  Under the respective deeds of trust for Ashby Trust and El Prela Trust, each trustee has full discretion to distribute trust property to trust beneficiaries.[20]

> B.   *The Kingate Funds Transferred BLMIS Funds to Kingate Management, Which in Turn Transferred BLMIS Funds to the Trust Defendants*

The Joint Liquidators submitted to this Court an untested "tracing" analysis, the results of which show that a significant portion of the management fee transfers made to Kingate Management—and a significant portion of the dividend transfers Kingate Management subsequently made to the Trust Defendants—were made with customer property.[21]  The Joint Liquidators' analysis states that within six years of the filing date, the Kingate Funds transferred between $12,105,660 and $61,201,590 of customer property to Kingate Management as management fees.[22]  Because the Kingate Funds transferred customer property to Kingate Management, and because, as Kingate Management's shareholders admit, Kingate Management received funds from no other source,[23] the dividend transfers to the Trust Defendants were made with customer property.  The Joint Liquidators acknowledge that between **$12,105,660 and $61,201,590** in dividends were transferred by Kingate Management to the Trust Defendants using funds originating with BLMIS.

---

[17](Ex. B, Ashby Trust Walters Aff. ¶ 30.6; Ex. C, El Prela Trust Walters Aff. ¶ 30.6.)

[18]The Trustee has not since received any disclosures from the Trust Defendants showing the value of their assets.

[19](Ex. E, Affidavit of Jeremy Edward Needham Andrews submitted in support of the *Beddoe* applications ("Andrews Aff."), ¶ 59.)

[20](Ex. B, Ashby Trust Walters Aff. ¶¶ 23, 30.7; Ex. C, El Prela Trust Walters Aff. ¶¶ 23, 30.7.)

[21](Loigman Decl. Ex. K.)

[22](*Id.*)

[23](Ex. B, Ashby Trust Walters Aff. ¶ 85; Ex. C, El Prela Trust Walters Aff. ¶ 85; Kingate Funds Opp'n Mem. at 5.)

The Trust Defendants have also analyzed "whether it can be shown that the monies paid
by BLMIS to the Kingate Funds can be traced into the sums held in the [Ashby and El Prela]
Trusts, and if so to what extent."[24]  With their analysis, the Trust Defendants admit to receiving
customer property within the range of **$94,174,033 to $199,410,710.**[25]

The Trustee disagrees with the methods employed and the conclusions reached by the
tracing analyses of the Joint Liquidators and the Trust Defendants.  The analyses, for example,
do not account for significant cash transfers,[26] and tracing is an issue to be litigated and
adjudicated in the Avoidance Action.  However, the Trustee here relies on the Joint Liquidators'
and the Trust Defendants' untested analyses for no purpose other than to demonstrate that their
judicial admissions present factual and legal bases for the injunctive relief sought by the Trustee.

---

[24](Ex. D, Alexander Aff. ¶ 10.)

[25](*Id.* ¶ 48(2)(b) & (c).)  FIM also received customer property.  FIM acted as a consultant to the Kingate Funds from
1995 to 2008 and as a distributor from 2001 to 2008. (Ex. A, Amended Claim  ¶ 43; Ex. F, Witness Statement of
Andrew Witts ("Witts Statement") ¶¶ 87, 94.)  Under Schedule 1 of the consultancy agreements between Kingate
Management and FIM, Kingate Management agreed to pay FIM a fixed monthly fee of $30,000 for its services.
(Ex. A, Amended Claim ¶ 43.5.)  Kingate Management owed that payment obligation, but "for administrative
convenience," the parties agreed that FIM's fee could be paid directly from the Kingate Funds.  (*Id.*)  During the
lifetime of the consultancy agreements, FIM would have received approximately $3.6 million in consultancy fees.
Under the distribution agreements, FIM received a fee based on the subscriptions it generated for the Kingate Funds.
(Ex. F, Witts Statement ¶ 96.)  From 2005 to 2008, FIM received at least $1 million in distribution fees.  (*Id.* ¶ 98.)

[26]In the Joint Liquidators' analysis, Kingate Global acknowledges that at the "upper end" (*i.e.*, at most), it
transferred $26,813,135 in BLMIS funds to Kingate Management as management fees and $301,735,327 in BLMIS
funds to shareholders to satisfy redemptions, for transfers of  BLMIS funds totaling $328,548,462. BLMIS,
however, transferred $360,000,000 to Kingate Global during the analyzed six-year period, leaving a deficit of
**$31,451,538** in BLMIS funds unaccounted by the Joint Liquidators' analysis. (Loigman Decl. Ex. K.)  At the
"lower end" figures calculated for Kingate Global, the unaccounted-for deficit grows to **$148,821,254.**  (*Id.*)
Similarly, the "upper end" figures for Kingate Euro reflect total transfers of $34,388,455 in BLMIS funds to Kingate
Management as management fees and $183,238,816 in BLMIS funds to shareholders to satisfy redemptions, for
transfers of BLMIS funds totaling $217,627,271. (Loigman Decl. Ex. K & ¶ 1.14 (explaining that all Kingate Euro
transactions involving BLMIS funds were made in U.S. dollars).)  But BLMIS transferred $465,000,000 to Kingate
Euro during the analyzed six-year period, leaving **$247,372,720** for which the analysis does not account.  At the
"lower end," the unaccounted-for deficit between what was transferred by BLMIS to Kingate Euro and what
Kingate Euro purports to have transferred out in BLMIS funds grows to **$382,400,876.**  (Loigman Decl. Ex. K.)
Another issue raised by the "tracing analyses" is the large cash deficit between what was transferred to Kingate
Management as management fees and what was transferred by Kingate Management to the Trust Defendants as
shareholder dividends.  The Joint Liquidators acknowledge that Kingate Management received $370,437,295 in
transfers, (Ex. A, Amended Claim ¶¶ 69-69.2), and the Trust Defendants acknowledge receiving $297,013,938 in
transfers, (Ex. D, Alexander Aff.¶ 44).  The analyses thus fail to account for **$73,423,357** in cash.

9

II.    **The Kingate Funds Filed Customer Claims With the Trustee That Are Subject to
Adjudication by This Court**

On December 23, 2008, this Court entered an Order Approving Form and Manner of

Publication and Mailing of Notices; Specifying Procedures For Filing, Determination, and

Adjudication of Claims; and Providing Other Relief (the "Claims Procedure Order"),[27]

mandating a systematic framework for the filing, determination, and adjudication of claims in

accordance with SIPA.  The Claims Procedure Order requires a court hearing to determine the

allowance or disallowance of any contested claim that cannot be resolved through settlement.[28]

The Kingate Funds filed customer claims that, after application of the net equity

calculation, seek in the aggregate approximately $800 million from the estate (the "Kingate

Funds' Customer Claims).[29]  The Kingate Funds' Customer Claims are unresolved and will

remain so until the Avoidance Action is adjudicated and a final judgment is entered.[30]

III.    **The Avoidance Action**

On April 17, 2009, the Trustee commenced the Avoidance Action.[31]  In addition to the

Kingate Funds, the Trustee sued the following individuals and entities:  Ceretti, Grosso, FIM, the

Investment Company Defendants, Kingate Management, and the Trust Defendants (collectively,

the "Avoidance Defendants").[32]  With the Avoidance Action, the Trustee seeks, among other

things, to avoid and recover approximately $926 million in initial transfers from BLMIS to the

---

[27](No. 08-01789, Dkt. 12.)

[28]*Peskin v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 413 B.R. 137 (Bankr. S.D.N.Y. 2009), *aff'd*, 440 B.R.
579 (S.D.N.Y. 2010).

[29](Ex. G & Ex. H.)

[30](Zeballos Decl. ¶ 3.)

[31]The operative complaint is the Fourth Amended Complaint, ECF No. 100, filed March 17, 2014.  (Ex. I,
hereinafter cited to as "Compl.")

[32](Compl. ¶¶ 49-89.)  The Avoidance Action also names as defendants Citi Hedge Fund Services Limited and HSBC
Bank Bermuda Limited.  (*See generally* Compl.)  Those latter two entities are not defendants in the Bermuda
Action.  (Ex. A, Amended Claim.)

Kingate Funds.[33]  The Trustee also pursues recovery from Kingate Management of approximately $376 million in management fee transfers and recovery from the Trust Defendants of more than $297 million in dividend transfers.[34]  The Trustee's avoidance and recovery claims are brought under §§ 544, 547, 548, 550, and 551 of the Bankruptcy Code, applicable provisions of SIPA, including SIPA § 78fff-2(c)(3), and §§ 273-279 of the New York Debtor & Creditor Law.[35]  The Trustee also seeks to disallow and equitably subordinate the Kingate Funds' Customer Claims under §§ 502(b) and 510(c) of the Bankruptcy Code, respectively.[36]

## IV.    The Liquidation Proceedings of the Kingate Funds and Kingate Management

The Kingate Funds are in liquidation proceedings in the British Virgin Islands and Bermuda.  The Trustee has information and, therefore, believes the Joint Liquidators have sought leave to file another amended statement of claim.  Kingate Management is in liquidation proceedings in Bermuda, and an automatic litigation stay as to the Kingate Management estate was imposed under Bermuda law.[37]  On March 7, 2012, the Joint Liquidators moved the Bermuda Court to lift the stay to allow the Bermuda Action to proceed,[38] and on October 3, 2012, the Bermuda Court granted that relief.[39]

---

[33](*See generally* Compl.)  The Trustee incorporates the factual allegations set forth in the Fourth Amended Complaint.

[34](*See* Compl. ¶¶108-09.)

[35](*See generally* Compl.)

[36](*See generally* Compl.)

[37](Ex. J ¶¶ 1, 14.)

[38](*Id.* ¶ 8.)  Though the fact of the filing of the Joint Liquidators' motion to lift the stay is publicly available, the related pleadings are not.  As a non-party to the proceedings, the Trustee has not received a copy of the Joint Liquidators' motion to lift the stay.  (Zeballos Decl. ¶ 5.)

[39](Ex. J ¶ 55.)

## V.    The Bermuda Action

As the Trustee has in the Avoidance Action, the Joint Liquidators have sued the

following individuals and entities:  Ceretti, Grosso, FIM, the Investment Company Defendants,

Kingate Management, and the Trust Defendants (collectively, the "Bermuda Defendants").  The

Avoidance Defendants sued by the Trustee in the Avoidance Action *are* the Bermuda

Defendants sued by the Joint Liquidators in the Bermuda Action.[40]  And as the Trustee has in the

Avoidance Action, the Joint Liquidators seek to recover from the Bermuda Defendants the same

management fees transferred by the Kingate Funds to Kingate Management and the same

dividends subsequently transferred to the Trust Defendants.[41]

## VI.    The Joint Liquidators Refused to Stipulate to Maintaining the Status Quo

Since the filing of the Trustee's complaint and initial injunction motion, the Trustee and

the Joint Liquidators had been engaged in settlement negotiations.  To preserve the status quo

while settlement talks continued or the Avoidance Action proceeded, the Trustee asked the Joint

Liquidators to stipulate that they would "preserve and set aside" any funds recovered in the

Bermuda Action and that they would "not make any distributions until all issues raised in the

[A]voidance [A]ction are resolved by a final and nonappealable order."[42]  That was the last of

several attempts by the Trustee to preserve by agreement the *res* at the center of both the

Avoidance Action and the Bermuda Action.  In the Trustee's view, that approach recognized the

current status of litigation:  (i) the Joint Liquidators and the Trustee both seek to recover the

same transfers from the same individuals and entities; and (ii) the question whether those

transfers and their proceeds constitute customer property will be decided by this Court through

---

[40](Ex. A & Ex. I.)

[41](Ex. A, Amended Claim ¶¶ 17.1–17.3.)

[42](Ex. K.)

determination of the Kingate Funds' Customer Claims and the claims brought in the Avoidance
Action. The Joint Liquidators rejected the Trustee's proposal.[43]

## ARGUMENT

Although the Trustee has not had any discovery in this adversary proceeding or the
Avoidance Action, the statements made by the Joint Liquidators in pleadings submitted to this
Court, and the statements made by the Joint Liquidators and the Trust Defendants in pleadings
submitted to the Bermuda Court and the BVI Court, constitute judicial admissions. Those
admissions establish as a matter of law that the Kingate Funds and the Trust Defendants
received, at a minimum, tens of millions of dollars of customer property from BLMIS. They
also establish that the Bermuda Action seeks to recover, at a minimum, tens of millions of dollars
of BLMIS customer property—the same customer property sought by the Trustee—from the
same defendants sued by the Trustee. The Kingate Funds and Kingate Management are in
liquidation. The Trust Defendants' assets are substantial but insufficient to satisfy both the
Kingate Funds' claims in the Bermuda Action and the Trustee's claims in the Avoidance Action.
Those conceded facts, together with the Joint Liquidators' refusal to agree to maintain the status
quo and not dissipate funds obtained through the Bermuda Action, provide ample basis for this
Court to grant the limited relief requested by the Trustee.

I.   **The Statements Made By The Joint Liquidators And The Trust Defendants In
     Pleadings And Submissions Are Judicial Admissions Upon Which The Court May
     Grant Injunctive Relief.**

Judicial admissions are statements of fact made by a party in a judicial proceeding.[44] A

---

[43](Ex. L.)

[44]*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International
B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005).

court may treat statements made in briefs or other motion papers as binding judicial admissions
of fact.[45]

In opposition to the Trustee's initial injunction motion, the Joint Liquidators submitted a
"tracing" analysis to support their statement that the "substantial majority" of fees the Kingate
Funds paid to Kingate Management, which the Joint Liquidators now seek in the Bermuda
Action, "did not come from BLMIS at all."[46] But in making that point, the Joint Liquidators
*admit* that the "true" amount of customer property that Kingate Global and Kingate Euro
respectively transferred to Kingate Management to pay management fees falls within certain
precise monetary ranges.[47] Specifically, they offer a detailed analysis concluding that: (i) the
range of customer property transferred by Kingate Global to pay management fees is $9,443,419
to $26,813,135; and (ii) the range of customer property transferred by Kingate Euro to pay
management fees is $2,662,241 to $34,388,455.[48] The Joint Liquidators similarly advance the
findings and conclusions of the Trust Defendants' "tracing" analysis. Through that analysis, the

---

[45]*Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (finding that a statement of fact made in legal brief,
submitted under penalty of sanction, constituted a judicial admission); *Stichting Ter Behartiging*, 407 F.3d at 45
(ruling that statements of fact made in Rule 56.1 statement in support of motion for summary judgment constituted
judicial admissions); *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Intern. Corp.*, 401 F.3d 28, 35 (2d Cir.
2005) (observing that "statements in papers submitted to the court may constitute judicial admissions" and noting
that district court could properly consider as judicial admissions statements made in answer and summary judgment
brief); *Scott v. City of White Plains*, 2012 WL 1267873, *8 & n.7, No. 10 Civ. 1887 (S.D.N.Y. April 10, 2012)
(considering as a judicial admission a statement made in brief in opposition to motion to dismiss); *Fendi Adele
S.R.L. v. Ashley Reed Trading, Inc.*, 2010 WL 571804, *5, No. 06 Civ. 243 (S.D.N.Y. Feb. 16, 2010) (statements
made in Rule 56.1 statement and brief in opposition to summary judgment were judicial admissions); *Abu Dhabi
Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 174 & n.112 (S.D.N.Y. 2009) (considering as
a judicial admission a statement of fact made by counsel at oral argument); *In re Fosamax Prod. Liab. Litig.*, 647 F.
Supp. 2d 265, 276 (S.D.N.Y. 2009) (concluding that statements made in brief in opposition to summary judgment
were judicial admissions); *Perkowski v. Stratford Bd. of Educ.*, 455 F. Supp. 2d 91, 98 n.8 (D. Conn. 2006)
(statement of fact set forth in brief in opposition to summary judgment constituted judicial admission); *Ridgway v.
United States* (*In re Ridgway*), 325 B.R. 65, 66 (Bankr. D. Conn. 2005); *Aetna U.S. Healthcare v. Frazier*, 2002 WL
1677700, *3, No. 00-CV-0454 (W.D.N.Y. 2002) (statements of fact set forth in summary judgment submissions
constituted judicial admissions).

[46](Kingate Funds' Opp'n Mem. at 20 n.10; *see* Loigman Decl. ¶ 9 (asserting that "the substantial majority of money
paid by the Kingate Funds to Kingate Management never flowed through BLMIS" and that "most payments to
Kingate Management did not involve monies withdrawn from BLMIS"); Kingate Funds' Opp'n Mem. at 8 (same).)

[47](Loigman Decl. Ex. K.)

[48](*Id.*)

Trust Defendants admit that they received customer property from Kingate Management within the range of $94,174,033 to $199,410,710.[49]

The figures set forth in the "tracing" analyses of the Joint Liquidators and the Trust Defendants, as well as the assertions made by the Joint Liquidators in their Amended Claim filed in the Bermuda Action,[50] constitute judicial admissions.[51] The Trustee does not agree with or adopt the "tracing" analyses or the Joint Liquidators' allegations in the Amended Claim. But through those analyses and allegations, the Joint Liquidators admit that, at a minimum, the Kingate Funds and the Trust Defendants received tens of millions of dollars of customer property transferred from BLMIS and that the Joint Liquidators now seek to recover those same transfers in the Bermuda Action. The Trustee seeks the same fraudulently transferred customer property in the Avoidance Action. The threat to the BLMIS estate in the absence of injunctive relief is effectively undisputed.

---

[49](Ex. D, Alexander Aff. ¶ 48(2)(b) & (c); Ex. E, Andrews Aff. ¶¶ 45(2), 47(3).)

[50]The Joint Liquidators made numerous statements in opposition to the Trustee's initial injunction motion concerning the substance of the allegations in the Amended Claim and the procedural status of the Bermuda Action. (Chudleigh Aff. ¶ 4 ("describ[ing] the procedural history, and current status, of the Bermuda Proceedings and … opin[ing] on the potential consequences if the [Joint Liquidators] are restrained from pursuing or progressing the Bermuda Proceedings"); Kingate Funds' Opp'n Mem. at 10 (asserting that "[t]he Bermuda Action involves neither property of the estate nor claims asserted against the debtor" in arguing against application of the automatic stay); *id.* at 12 (contending that case law cited by the Trustee does not suggest "that the claims asserted in the Bermuda Action are actually claims to avoid and recover fraudulent transfers"); *id.* at 14 (arguing that "the claims asserted in the Bermuda Action are not 'property of the estate'"); *id.* at 15 ("The Kingate Funds' claims in the Bermuda Action seek redress for particularized injuries arising from the Funds' relationship with Kingate Management and parties related to Kingate Management.").)

[51]If the Court were to find that the factual allegations set forth in the Amended Claim (and the factual assertions set forth in the Trust Defendants' "tracing analysis" and the Alexander and Andrews affidavits) are not judicial admissions, the Court should rule that they constitute admissions of a party-opponent under Rule 801(d)(2) of the Federal Rules of Evidence and are properly considered against the Kingate Funds here.

II.     **The Court Should Exercise Its Power Under Section 105(A) To Enjoin The Joint
        Liquidators From Dissipating Any Or All Assets Recovered From Any Settlement
        Or Judgment Entered In The Bermuda Action.**

      A.      *Section 105(a) Grants This Court Broad Power to Enter Injunctive Relief to
        Protect This Court's Jurisdiction and the Debtors' Estate*

Section 105(a) of the Bankruptcy Code, applicable here under SIPA § 78fff(b), grants

this Court authority to "issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title."[52]  This Court's power under § 105 is broader than that

conferred under the automatic stay provisions of § 362.  *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d

282, 288 (2d Cir. 2003).  "Section 105 grants bankruptcy courts 'ample power to enjoin actions

excepted from the automatic stay which might interfere in the rehabilitative process, whether in a

liquidation or in a reorganization case.'"  *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973,

984 (1st Cir. 1995) (quoting *In re Johns Manville Corp.*, 26 B.R. 420, 425 (Bankr. S.D.N.Y.

1983) (quoting *Collier on Bankruptcy* ¶¶ 362.05 (15th ed. 1982)));  *see The Lautenberg Found. v.

Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 2013 WL 616269, \*1 (2d Cir. Feb. 20, 2013)

(quoting *Monarch Life Ins. Co.,* 63 F.3d at 984); *AP Indus., Inc. v. SN Phelps & Co. (In re AP

Indus., Inc.)*, 117 B.R. 789, 801 (S.D.N.Y. 1990).[53]

      "'[A]n exercise of section 105 power must be tied to another Bankruptcy Code section

and not merely tied to a general bankruptcy concept or objective.'"  *In re Teligent, Inc. v. Mandl*,

---

[52]*U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indemn. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d
Cir. 1999) (citing 11 U.S.C. § 105(a)).

[53]*See also Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad
equitable powers to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power
is exercised within the confines of the Bankruptcy Code."); *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs.
Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 587 n.33 (Bankr. S.D.N.Y. 2009) (granting a limited injunction to
stay non-debtor litigation and observing that § 105(a) could be used to enjoin actions against non-debtor entities
even when § 362 protection was not available); *C & J Clark Am., Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.)*,
92 B.R. 87, 94 (Bankr. S.D.N.Y. 1988) ("The basic purpose of [§ 105(a)] is to enable the court to do whatever is
necessary to aid its jurisdiction . . . ."); *Garrity v. Leffler (In re Neuman)*, 71 B.R. 567, 571 (S.D.N.Y. 1987) (noting
that under § 105, the bankruptcy court has broad powers to issue injunctions notwithstanding the inapplicability of
the automatic stay provisions).

417 B.R. 197, 213 (Bankr. S.D.N.Y. 2009) (quoting *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86, 92 (2d Cir. 2003)). The § 105(a) injunction sought by the Trustee would serve § 362's purpose to protect the estate and this Court's exclusive jurisdiction to administer it. The Kingate Funds have admitted to receiving transfers of customer property from BLMIS, to subsequently transferring customer property to the Bermuda Defendants, and to pursuing recovery of such customer property in the Bermuda Action. The Kingate Funds thus admit that they seek to recover potential estate property before the Trustee can do so in the Avoidance Action. Accordingly, in addition to § 362, a § 105 injunction would also protect the estate's rights conferred by §§ 502, 544, 547, 548, 550, and 551 of the Bankruptcy Code and SIPA §§ 78eee(b)(2)(A)(i), 78fff-4(e), and 78fff(g).

To establish an entitlement to a § 105(a) injunction, the Trustee need not satisfy the standards set by Rule 65 of the Federal Rules of Civil Procedure.[54] Under § 105(a), rather, the Trustee is entitled to injunctive relief if he can establish that: (i) the Joint Liquidators' disposition of any settlement or recovery obtained against the Bermuda Defendants in the Bermuda Action threatens to defeat or impair this Court's exclusive jurisdiction over the Avoidance Action and the Debtors' SIPA liquidation;[55] or (ii) the Joint Liquidators' disposition

---

[54]*Picard v. Fox*, 429 B.R. 423, 436 (Bankr. S.D.N.Y. 2010) ("Because injunctions under section 105(a) are authorized by statute, they need not comply with traditional requirements of Rule 65."), *aff'd*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 81 (2d Cir. 2014); *LaMonica v. N. of Eng. Protecting & Indemn. Ass'n (In re Probulk Inc.)*, 407 B.R. 56, 63 (Bankr. S.D.N.Y. 2009).

[55]*Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 81 (2d 2014); *Fox*, 429 B.R. at 436; *Picard v. Stahl*, 443 B.R. 295, 318 (Bankr. S.D.N.Y. 2011), *aff'd*, 2011 WL 7975167, No. 11-02392 (AKH) (S.D.N.Y. Dec. 15, 2011), *aff'd*, 512 Fed. Appx. 18 (2d Cir. 2013); *Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006), *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007); *see also Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998).

17

of any settlement or recovery obtained against the Bermuda Defendants in the Bermuda Action "will have an immediate adverse economic consequence" on the BLMIS estate.[56]

Because the Trustee meets both standards, the Court should issue a § 105 injunction.

B.    *The Bermuda Action Threatens This Court's Exclusive Jurisdiction of the Kingate Funds' Customer Claims and the Avoidance Action*

Federal district courts have original jurisdiction over "all cases under title 11" and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b).[57] In a case under title 11, a federal district court, or the bankruptcy court overseeing the administration of the estate, has exclusive jurisdiction over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate…" 28 U.S.C. § 1334(e)(1); *Fox*, 429 B.R. at 436 ("As the Court presiding over the SIPA liquidation of BLMIS, this Court has sole jurisdiction over the administration and distribution of estate assets to customers."). SIPA's jurisdictional provisions are co-extensive with those of 28 U.S.C. § 1334 and establish one forum for the adjudication and determination of customer claims. 15 U.S.C. § 78eee(b)(2)(A)(i) (providing that upon the filing of a protective decree, the court obtains "exclusive jurisdiction of such debtor and its property, wherever located"); 15 U.S.C. § 78fff-4(e) (declaring that "[t]he courts of the United States having jurisdiction over cases under title 11 shall have original and exclusive jurisdiction of any civil action for the adjudication of…[a customer] claim"); 15 U.S.C. § 78fff(g) (providing that only the district court presiding over a SIPA liquidation can authorize the trustee to pay allowed customer claims).

---

[56]*Picard v. Stahl*, 443 B.R. at 318 (*quoting Queenie,* 321 F.3d at 287).

[57]Federal district courts, in turn, may refer to federal bankruptcy courts all cases or proceedings falling under § 1334. 28 U.S.C. § 157(a).

Exercising that exclusive jurisdiction, this Court entered the Claims Procedure Order, and
by filing customer claims, the Kingate Funds submitted to this Court's jurisdiction.[58] Such
jurisdiction extends not only over the Kingate Funds' Customer Claims and the Trustee's
Avoidance Action, but also over any "third-party non-debtor claims that directly affect the *res* of
the bankruptcy estate." *Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*,
676 F.3d 45, 53 (2d Cir. 2012) (internal quotations and citation omitted); *see also In re
Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (instructing that an action gives rise to
bankruptcy court jurisdiction if "its outcome might have *any conceivable effect on the bankrupt
estate*") (emphasis added). Indeed, "[a] suit against a third party alleging liability that is not
derivative of the debtor's conduct but that nevertheless *poses the specter of direct impact* on the
*res* of the bankrupt estate may just as surely impair the bankruptcy court's ability to make a fair
distribution of the bankrupt's assets as a third-party suit alleging derivative liability." *Quigley*,
676 F.3d at 58 (emphasis added). This is just such a case: dissipation or distribution of any
proceeds of the Bermuda Action poses a substantial and direct threat to this Court's exclusive
jurisdiction over the liquidation of the estate, the determination of customer claims, and the
distribution of estate assets.[59]

The judicial admissions of the Joint Liquidators and the Trust Defendants establish that
the Trust Defendants in fact received customer property. The question now is *how much*

---

[58] *See, e.g., Langenkamp v. Culp*, 498 U.S. 42, 44 (1990); *Buena Vista Television v. Adelphia Commc'n Corp. (In re
Adelphia Communications Corp.)*, 307 B.R. 404, 418 (Bankr. S.D.N.Y. 2004); *Keller v. Blinder (In re Blinder
Robinson & Co., Inc.)*, 135 B.R. 892, 896-97 (D. Colo. 1991) (observing that a customer claim filed in a SIPA
action is equivalent to a proof of claim filed in a typical bankruptcy proceeding for purposes of jurisdiction).

[59] *See In re Chiles Power Supply Co., Inc.*, 264 B.R. 533, 543 (Bankr. W.D. Mo. 2001) ("[A]llowing a foreign
creditor to seize property of the bankruptcy estate located outside the territorial confines of the United States would
affect the 'very' ability of the court to govern liquidation of the estate, and to effectively and fairly distribute the
assets."); *see also In re Probulk Inc.*, 407 B.R. at 64 (foreign process that violates bankruptcy court order "tamper[s]
with the exclusive jurisdiction [of the bankruptcy court] over all such property afforded by 28 U.S.C. § 1334[e]"
(citation omitted)).

customer property is possessed by the Trust Defendants. Dissipation or distribution of the

proceeds of the Bermuda Action has a direct impact on the Debtors' estate that far exceeds

"conceivable"; the adverse impact is certain. Without a § 105 injunction, the Joint Liquidators

could recover customer property before the Trustee and distribute it according to their self-

interest, without this Court's oversight and approval, and to the detriment of all BLMIS

customers and creditors. Moreover, it would disrupt application of § 502(d) of the Bankruptcy

Code, which requires resolution of the Trustee's claims in the Avoidance Action before the

Kingate Funds' Customer Claims can be determined; until then, the Kingate Funds' Customer

Claims are temporarily disallowed.[60]

The injunction sought by the Trustee will prevent that outcome without affecting the

Joint Liquidators' right to prosecute the Bermuda Action to judgment, to enforce any judgment

obtained, or to resolve the Bermuda Action by settlement prior to judgment.[61]  The Trustee seeks

only to prohibit the Joint Liquidators from disposing of any property obtained from the Bermuda

Defendants by either judgment or settlement, until this Court determines the extent to which any

such recovery includes customer property. This Court—and no other—possesses jurisdiction

over BLMIS customer property, wherever it may be located. Only this Court can adjudicate

whether certain property is customer property, only this Court can determine whether a customer

claim should be allowed, and only this Court can order the distribution of customer property in

satisfaction of an allowed claim. Permitting the Joint Liquidators to distribute the proceeds of a

judgment or settlement in the Bermuda Action—without this Court first determining the extent

---

[60](No. 12-mc-00115 (JSR), Dkt. 435.)

[61]Because, among other reasons, the Trustee is not asking the Court to enjoin the prosecution of the Bermuda
Action, the holding and principles of *China Trade and Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir.
1987), do not apply.