92A.1    The Shareholders paid the sums referred to in paragraphs 92 above to Mr Grosso and Mr Ceretti, which sums were derived from the fees paid to Kingate Management by the Funds, as pleaded above.

92A.2    Those sums were (in the hands of the Shareholders) liable to be repaid to the Funds or Kingate Management for the reasons pleaded herein. Further, the Shareholders made the transfers to Mr Grosso and Mr Ceretti under and by reason of an operative mistake of fact, namely that the fees had been property paid by the Funds to Kingate Management, and by Kingate Management to them, based on an accurate assessment of the net asset value of the Funds (which belief was mistaken for the reasons pleaded above).

92A.3    Accordingly, the Shareholders are entitled to recover from Mr Grosso and Mr Ceretti by way of restitution the sums paid to them. If (contrary to the Funds' primary case) the Shareholders have a defence to the Funds' claims in restitution against them, the Funds are entitled to be subrogated or sub-subrogated (via Kingate Management's restitutionary claim against the Shareholders pleaded above) to such restitutionary claims of the Shareholders against Mr Grosso and Mr Ceretti.

93    Further or alternatively, for the reasons pleaded above, all such distributions to Mr Grosso and Mr Ceretti constituted the Fund's property and/or the traceable proceeds thereof.  Mr Grosso and Mr Ceretti must therefore be treated as having received directly from the Funds the overpaid fees and/or their traceable proceeds, and to have been enriched at the expense of the Funds accordingly.

94    In all the premises pleaded above, given the Funds' mistake, Mr Grosso and Mr Ceretti have been unjustly enriched at the expense of the Funds and are liable to make restitution to the Funds in the amount of the overpaid fees, alternatively, the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders and then paid by the Shareholders to Mr Grosso and Mr Ceretti by way of distributions of trust property.

95    The Funds repeat paragraphs 76.1 and 76.2 above.

**Remedy against Mr Grosso and Mr Ceretti**

96    By reason of the claim set out in paragraphs 91-95 above, the Funds are entitled to an order that Mr Grosso and Mr Ceretti pay:

96.1    to Kingate Global, the amount of US$254,478,999.69, alternatively, the amount of the fees overpaid by Kingate Global and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti; and

96.2    to Kingate Euro, the amount of 56,226,531.48 Euros, alternatively, the amount of the fees overpaid by Kingate Euro and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti.

## CLAIMS BASED ON RETENTION OF LEGAL TITLE

97    As set out in paragraph 86.1, the Funds' mistake was a fundamental mistake as to the quantity of the fees paid and/or as to the obligation to pay fees, which so vitiated the Funds' intention to transfer the overpaid fees to Kingate Management as to prevent legal title to those fees from passing from the Funds to Kingate Management.

98    As a result:

98.1.1    when the overpaid fees were received from the Funds by Kingate Management, they constituted property to which the Funds retained legal title and/or its traceable proceeds;

98.1.2    when Kingate Management paid on the overpaid fees and/or their traceable proceeds to the Shareholders, in the form of dividends, the Shareholders also received property to which the Funds retained legal title and/or its traceable proceeds; and

98.1.2A    when the Shareholders paid on the overpaid fees and/or their traceable proceeds to the Investment Companies, for the purposes of investment, the Investment Companies also received property to which the Funds retained legal title and/or its traceable proceeds; and/or

98.1.3    when the Shareholders paid on the overpaid fees and/or their traceable proceeds to Mr Grosso and Mr Ceretti, in the form of distributions of trust property, Mr Grosso and Mr Ceretti also received property to which the Funds retained legal title and/or its traceable proceeds.

99    Accordingly, the Funds are entitled:

99.1    against Kingate Management, to:

99.1.1    an order that Kingate Management pay:

99.1.1.1    Kingate Global the amount of US$254,478,999.69; and

99.1.1.2    Kingate Euro the amount of 56,226,531.48 Euros;

99.1.2    alternatively:

99.1.2.1    a declaration that overpaid fees in the amount of US$254,478,999.69 and/or their traceable proceeds constituted property to which Kingate Global retained legal title

LN/3128Sv1

and/or its traceable proceeds, together with an order that Kingate Management return those fees and/or their traceable proceeds to Kingate Global; and

99.1.2.2    a declaration that overpaid fees in the amount of 56,226,531.48 Euros and/or their traceable proceeds constituted property to which Kingate Euro retained legal title and/or its traceable proceeds, together with an order that Kingate Management return those fees and/or their traceable proceeds to Kingate Euro;

99.2    further or alternatively, against the Shareholders, to:

99.2.1    an order that the Shareholders pay the Funds the amount of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders;

99.2.2    alternatively, a declaration that the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders constituted property to which the Funds retained legal title and/or its traceable proceeds, together with an order that the Shareholders return those fees and/or their traceable proceeds to the Funds;

99.2A    Further or alternatively, against the Investment Companies, to:

99.2A.1    an order that the Investment Companies pay the Funds the amount of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to the Investment Companies;

99.2A.2    alternatively, a declaration that the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to the Investment Companies constituted property to which the Funds retained legal title and/or its traceable proceeds, together with an order that the Investment Companies return those fees and/or their traceable proceeds to the Funds;

99.3    further or alternatively, against Mr Grosso and Mr Ceretti, to:

99.3.1    an order that Mr Grosso and Mr Ceretti pay the Funds the amount of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti;

99.3.2    alternatively, a declaration that the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti constituted property to which the Funds retained legal title and/or its traceable proceeds, together with an order that Mr Grosso and Mr Ceretti return those fees and/or their traceable proceeds to the Funds.

## EQUITABLE PROPRIETARY CLAIMS

100    As set out in paragraphs 86.2 and 86.3, even if legal title to the overpaid fees and/or their traceable proceeds did pass from the Funds to Kingate Management, they constituted property in which the Funds had an equitable proprietary interest and/or its traceable proceeds when:

100.1    received from the Funds by Kingate Management;

100.2    paid on by Kingate Management to the Shareholders in the form of dividends; and

100.2A    paid on by the Shareholders to the Investment Companies for the purposes of investment and/or

100.3    paid on by the Shareholders to Mr Grosso and Mr Ceretti in the form of distributions of trust property.

101    Further or alternatively:

101.1    The retention by the Shareholders of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders, after the date on which they learned of the Funds' mistake or the circumstances giving rise to it, being (at the latest) the date of Mr Madoff's arrest, constituted unconscionable conduct.

101.2    As a result, from that date, the Shareholders held those fees and/or their traceable proceeds on constructive trusts for the Funds.

101A.    Further or alternatively:

101A.1    The retention by the Investment Companies of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to the Investment Companies, after the date on which they learned of the Funds' mistake or the circumstances giving rise to it, being (at the latest) the date of Mr Madoff's arrest, constituted unconscionable conduct.

101A.2    As a result, from that date, the Investment Companies held those fees and/or their traceable proceeds on constructive trusts for the Funds.

102    Further or alternatively:

102.1    The retention by Mr Grosso and Mr Ceretti of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti, after the date on which they learned of the Funds' mistake or the circumstances giving rise to it, being (at the latest) the date of Mr Madoff's arrest, constituted unconscionable conduct.

102.2    As a result, from that date, Mr Grosso and Mr Ceretti held those fees and/or their traceable proceeds on constructive trusts for the Funds

LN/31289v1

103    Accordingly, the Funds are entitled:

103.1    against Kingate Management, to:

103.1.1    a declaration that Kingate Management held overpaid fees and/or their traceable proceeds in the amount of US$254,478,999.69 on resulting, alternatively constructive trusts for Kingate Global from the moment of receipt, together with an order that Kingate Management account to Kingate Global in respect of those fees and/or their proceeds; and

103.1.2    a declaration that Kingate Management held overpaid fees and/or their traceable proceeds in the amount of 56,226,531.48 Euros on resulting, alternatively constructive trusts for Kingate Euro from the moment of receipt, together with an order that Kingate Management account to Kingate Euro in respect of those fees and/or their proceeds;

103.2    further or alternatively, against the Shareholders, to a declaration that the Shareholders held on resulting, alternatively constructive trusts for the Funds, from the moment of receipt or subsequently, the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders, together with an order that the Shareholders account to the Funds in respect of those fees and/or their proceeds;

103.2A    further or alternatively, against the Investment Companies, to a declaration that the Investment Companies held on resulting, alternatively constructive trusts for the Funds, from the moment of receipt of subsequently, the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to the Investment Companies, together with an order that the Investment Companies account to the Funds in respect of those fees and/or their proceeds;

103.3    further or alternatively, against Mr Grosso and Mr Ceretti, to a declaration that Mr Grosso and Mr Ceretti held on resulting, alternatively constructive trusts for the Funds, from the moment of receipt or subsequently, the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti, together with an order that Mr Grosso and Mr Ceretti account to the Funds in respect of those fees and/or their proceeds.

FAULT BASED CLAIMS

**Claim against Kingate Management for breach of contractual and/or tortious duties of care and/or negligent misstatement**

104    It was an implied term of each of the Manager Agreements that, in the performance of its services under the agreement and/or in the delegation of the performance of any of those services to others, including the necessary monitoring of such delegation, Kingate Management would exercise reasonable skill and care, in particular, that degree of skill, care and diligence to be expected of a reasonably competent and prudent hedge fund manager.

105    Further or alternatively, by reason of the following facts and matters, Kingate Management owed to the Funds a duty of care in tort in like terms to the contractual duty set out in paragraph 104 above:

105.1    The Funds relied on Kingate Management to take care in the performance and/or delegation of the performance of its services under the agreements.

105.2    That reliance was reasonable, given:

105.2.1 the direct contractual relationship between the Funds and Kingate Management;

105.2.2 that, by contracting with the Funds and, in particular, agreeing to act as the Funds' manager, Kingate Management held itself out as having relevant skill and experience;

105.2.3 that Kingate Management (together with its delegates and/or FIM) had control over the Funds' investments; and

105.2.4 that, as Kingate Management was aware, the Funds' received no independent advice in respect of their investments from persons other than Kingate Management and/or its delegates and/or FIM.

105.3    Kingate Management knew, or ought to have known of this reliance.

105.4    Accordingly, Kingate Management assumed a responsibility to the Funds to take care in the performance and/or delegation of the performance of its services under the agreements.

105.5    Further or alternatively, given the direct contractual relationship between the Funds and Kingate Management, and in all the circumstances:

105.5.1 it was reasonably foreseeable that if Kingate Management did not take care in the performance and/or delegation of the performance of its services under the agreements, the Funds would suffer loss and damage;

105.5.2 there was a relationship of proximity between the Funds and Kingate Management; and

105.5.3 it is fair, just and reasonable that the law should impose such a duty on Kingate Management.

106     In performing and/or delegating the performance of its services under the agreements, Kingate Management breached these contractual and tortious duties. In particular:

106.1   On or around the establishment of each fund (and/or, in the case of Kingate Global, from the winding down of the Class A shares in late 1996 or early 1997 at the latest) Kingate Management decided on an investment strategy for both Funds of investing all monies raised from investors exclusively with BLMIS, alternatively, wholly delegated the performance of its investment advisory services to BLMIS, without first conducting any, or any adequate due diligence on BLMIS. In particular, before doing so:

106.1.1 Kingate Management failed to give any, or any adequate consideration to the numerous 'red flags' surrounding the operations of BLMIS which were matters of public information, and of which Kingate Management accordingly must have been aware. For example:

106.1.1.1    several regulatory actions had been commenced against BLMIS;

106.1.1.2    several articles had been published in the financial press raising concerns about BLMIS; and

106.1.1.3    several private financial institutions, having conducted routine due diligence, refused to invest with BLMIS.

106.1.2 Kingate Management also failed to give any, or any adequate consideration to the numerous 'red flags' surrounding the operations of BLMIS which, even if not matters of public information, could reasonably have been discovered, and of which Kingate Management accordingly should have been aware. For example:

106.1.2.1    Mr Madoff and his family controlled key positions at BLMIS;

106.1.2.2    BLMIS acted as its own broker and custodian;

106.1.2.3    BLMIS' auditor was very small and unknown;

106.1.2.4    BLMIS' fee structure was highly unusual;

106.1.2.5    BLMIS reported trades using only paper confirmations; and

106.1.2.6    BLMIS' purported returns were too good to be true.

106.1.3 Kingate Management unreasonably relied on due diligence of BLMIS conducted by third parties, including Tremont.

106.1.4 Kingate Management failed to conduct any, or any adequate due diligence on BLMIS of its own. In particular:

106.1.4.1 Kingate Management failed, adequately or at all, to visit BLMIS' premises, inspect BLMIS' operations (including BLMIS' information technology systems), interview Mr Madoff/his associates, review relevant documentation, communicate with BLMIS' auditors and/or review any audit reports prepared for BLMIS, so as to properly understand BLMIS' practices and procedures, and internal controls.

106.1.4.2 Kingate Management failed, adequately or at all, to investigate BLMIS' auditor, or to confirm that it was capable of such a large-scale audit – for example, by checking the public peer review list maintained by the American Institute of Certified Public Accountants.

106.1.4.3 Alternatively, Kingate Management failed, adequately or at all, to critically assess or independently verify anything which it was shown, told or learned.

106.2 Further or alternatively, Kingate Management failed to conduct any, or any adequate on-going due diligence on BLMIS and/or monitoring of BLMIS' performance of the investment advisory services which Kingate Management had delegated to BLMIS. In particular:

106.2.1 The Funds repeat paragraphs 106.1.1-106.1.2 above.

106.2.2 The Funds also repeat paragraphs 106.1.3-106.1.4 above.

106.2.3 Kingate Management failed, adequately or at all, to assess critically or independently to verify the regular reports and other documentation produced by BLMIS in respect of the Funds, including trade confirmations and the Monthly Statements. In particular, Kingate Management failed, adequately or at all:

106.2.3.1 independently to verify the existence and value of the assets in which BLMIS had purportedly invested the Funds' monies, as described in those reports – for example, by requesting any certificate of title from an independent third party;

106.2.3.2 independently to verify that the trades by which BLMIS had purportedly invested the Funds' monies, as described in the reports, had actually taken place, at the reported prices – for example, by comparing the reported prices of the purported

trades with the range in prices actually traded in the market on the day/s in question;

106.2.3.3    critically to assess or independently verify the volumes of those trades, including how they could be accomplished without impacting the market; and/or

106.2.3.4    critically to assess or independently verify the existence of the counter-parties to those trades, or their ability to perform their obligations.

106.2.4 Kingate Management failed, adequately or at all to investigate the number of traders at BLMIS responsible for executing the split-strike conversion strategy, and/or their identity.

106.2.5 Kingate Management failed, adequately or at all, critically to assess the question why BLMIS' split-strike conversion strategy, which was based (in part) on market timing, involved pulling out of the market at the end of each quarter and/or year.

106.2.6 Kingate Management failed, adequately or at all, critically to assess the question how BLMIS' returns could be lawfully achieved, given that basic, industry standard, statistical analysis indicated that those returns (especially their lack of volatility) were highly improbable.

106.3    Further or alternatively, it is not accepted that Kingate Management delegated or properly delegated to FIM any responsibility for conducting on-going due diligence on BLMIS and/or monitoring of BLMIS' performance of its investment advisory services. However, if and to the extent that it did so, Kingate Management failed to take any, or any adequate steps to review and/or monitor FIM's discharge of that responsibility and/or to ensure that FIM did so with reasonable skill and care.

106.4    Further or alternatively, if and insofar as FIM made negligent misstatements to the Funds or otherwise acted in breach of its duty of care (see below), it was caused or permitted to do so by Kingate Management in the performance or purported performance by Kingate Management of its duties to the Funds. In such circumstances, Kingate Management is liable as accessory for such negligent misstatements and/or negligence. Alternatively, Kingate Management is liable as a joint tortfeasor for the negligent misstatements and/or negligence of FIM as its agent.

106.5    Further or alternatively, Kingate Management failed, adequately or at all, to disclose to the Funds, at the outset or subsequently:

106.5.1 the existence of any of the 'red flags' surrounding the operations of BLMIS of which it was, or should have been aware;

LN/3128B5v1

106.5.2 any particular on-going risks in relation to BLMIS, and the Funds' investment strategy of investing all monies raised from investors exclusively with BLMIS, of which it was, or should (if it had conducted adequate due diligence on BLMIS) have been aware.

107    For the avoidance of doubt, and if necessary, the Funds aver that these breaches of duty, individually or collectively, amounted to "gross negligence" by Kingate Management, within the terms of the purported exclusionary provisions in the Manager Agreements.

108    By reason of these breaches of duty, the Funds have suffered loss and damage. In particular:

108.1    But for these breaches of duty, the Funds would not have invested any, alternatively, any further monies with BLMIS. Accordingly:

108.1.1 The Funds would not have transferred any, alternatively, any further subscription monies to BLMIS for investment. As a result, the Funds have lost all, alternatively, part of those monies which, since their establishment, they have transferred to BLMIS. As to these losses, see Annex A to this amended statement of claim.

108.1.2 The Funds would not have paid any, alternatively, any further redemption monies to redeeming investors. As a result, the Funds have lost all, alternatively, part of those monies which, since their establishment, they have paid to redeeming investors. See the table attached to this amended statement of claim as Annex D, which sets out the payments made to redeeming investors by each fund in each year and the total paid.

108.1.3 The Funds would not have paid to Kingate Management any, alternatively, any further fees in respect of their investments with BLMIS. As a result, the Funds have lost all, alternatively, part of these fees which, since their establishment, they have paid to Kingate Management. As to these losses, see Annex B to this amended statement of claim.

108.1.4 The Funds would not have paid any, alternatively, any further fees to other parties which provided services to the Funds in respect of their investments with BLMIS, including:

108.1.4.1    Tremont Bermuda, as co-manager of Kingate Global, from its establishment until 31 December 2005;

108.1.4.2    each fund's administrator; or

108.1.4.3    the Bank, as each fund's custodian.

As a result, the Funds have lost all, alternatively, part of these fees which, since their establishment, they have paid to these parties. In particular:

108.1.4.4    between 1 January 1995 and 19 November 2008, Kingate Global paid:

108.1.4.4.1    Tremont Bermuda, as co-manager, fees in the amount of US$36,720,777.50;

108.1.4.4.2    its administrator fees in the amount of US$4,522,919.54;

108.1.4.4.3    the Bank, as custodian, fees in the amount of US$186,235; and

108.1.4.5    between 1 January 2000 and 19 November 2008, Kingate Euro paid its administrator fees in the amount of US$1,132,198.67.

108.1.5 The arrest of Mr Madoff and the bankruptcy of BLMIS would not have had any, alternatively, as devastating an effect on the Funds, and the Funds would not have been wound up. As a result, the Funds have lost all the costs and expenses of and associated with their liquidation.

108.2    In assessing the loss and damage suffered by the Funds:

108.2.1 The Funds accept that credit must be given for all redemption monies transferred by BLMIS to the Funds. As to these amounts, see Annex A to this amended statement of claim.

108.2.2 The Funds accept that credit must also be given for any subscription monies received from subscribing investors which were not transferred to BLMIS for investment or otherwise paid on by the Funds.

108.2.3 The Funds aver that any amount for which credit is given must be reduced by any amount/s which the Funds are subsequently found liable to pay to the Trustee in the proceedings commenced in the Bankruptcy Court for the Southern District of New York on 17 April 2009 (or any other proceedings), or which the Funds subsequently agree to pay to the Trustee.

**Remedy against Kingate Management for breach of contractual and/or tortious duties of care and/or negligent misstatement**

109    By reason of the claim set out in paragraphs 104-108 above, the Funds are entitled to damages against Kingate Management, to be assessed.

**Claim against FIM for breach of tortious duty of care**

110    By reason of the following facts and matters, FIM owed to the Funds a tortious duty to exercise reasonable skill and care, in particular, that degree of skill, care and diligence to be expected of a reasonably competent and prudent hedge fund consultant, in the performance of its services under the Kingate Global Consulting Services Agreement and the Kingate Euro Consulting Services Agreement (and their predecessors) ("**the Consulting Services Agreements**"):

110.1    The Funds were aware of the performance of the services set out in the Consulting Services Agreements by FIM. Accordingly, the Funds relied on FIM to take care in the performance of those services.

110.2    That reliance was reasonable, given that:

110.2.1    although there was (for most of the time) no direct contractual relationship between the Funds and FIM, there was at all material times direct and substantial contact between them. Notwithstanding that the Funds were not parties to the Consulting Services Agreements, their interests were directly and substantially affected by them, as:

110.2.1.1    the services which FIM agreed to provide to Kingate Management under the agreements were in respect of the Funds and for their benefit; and

110.2.1.2    the agreements purported to bind the Funds. As set out in paragraph 43.6 above, clause 13 of both agreements purports to exclude the liability of FIM for any loss etc, in the absence of (inter alia) gross negligence, to the Funds as well as Kingate Management. For the avoidance of doubt, the Funds make no admissions as to the efficacy of such clauses as against them;

110.2.2 FIM was not an arms' length party, independent of Kingate Management. As set out in paragraphs 9-10 above, at all material times, the controlling shareholders of FIM Ltd, and the principals of FIM Advisers, were Mr Grosso and Mr Ceretti. These same individuals were behind the establishment of Kingate Management (and both Funds). Accordingly, the corporate and contractual structure did not reflect reality but was merely a structure of convenience for the benefit of Mr Grosso and Mr Ceretti. In the circumstances, it cannot be treated as creating a relationship of liability between FIM and Kingate Management but excluding any such relationship between FIM and the Funds;

110.2.3 by entering into the Consulting Services Agreements, FIM held itself out as having the skills and experience to perform the services which it thereby agreed to provide;

110.2.4 to the extent of those services, FIM had control over the Funds' investments; and

110.2.5 in respect of those services, as FIM was aware, the Funds' received no independent advice.

110.3    FIM knew, or ought to have known of this reliance.

110.4    Accordingly, FIM assumed a responsibility to the Funds to take care in the performance of its services under the Consulting Services Agreements.

110.5    Further or alternatively, in all the circumstances:

110.5.1 it was reasonably foreseeable that if FIM did not take care in the performance of its services under the Consulting Services Agreements, the Funds would suffer loss and damage;

110.5.2 there was a relationship of proximity between the Funds and FIM; and

110.5.3 it is fair, just and reasonable that the law should impose such a duty on FIM.

111    In performing its services under the Consulting Services Agreements, FIM breached this tortious duty. In particular:

111.1    On or around the establishment of each fund (and/or, in the case of Kingate Global, from the winding down of the Class A shares in late 1996 or early 1997 at the latest) FIM decided on and/or recommended to Kingate Management an investment strategy for both Funds of investing all monies raised from investors exclusively with BLMIS, without first conducting any, or any adequate due diligence on BLMIS. In particular, before doing so:

111.1.1 FIM failed to give any, or any adequate consideration to the numerous 'red flags' surrounding the operations of BLMIS which were matters of public information, and of which FIM accordingly must have been aware. For example:

111.1.1.1    several regulatory actions had been commenced against BLMIS;

111.1.1.2    several articles had been published in the financial press raising concerns about BLMIS; and

111.1.1.3    several private financial institutions, having conducted routine due diligence, refused to invest with BLMIS.

111.1.2 FIM also failed to give any, or any adequate consideration to the numerous 'red flags' surrounding the operations of BLMIS which, even if not matters of public information, could reasonably have been discovered, and of which Kingate Management accordingly should have been aware. For example:

111.1.2.1    Mr Madoff and his family controlled key positions at BLMIS;

111.2.1.2    BLMIS acted as its own broker and custodian;

111.2.1.3    BLMIS' auditor was very small and unknown;

111.2.1.4    BLMIS' fee structure was highly unusual;

111.2.1.5    BLMIS reported trades using only paper confirmations; and

111.2.1.6    BLMIS' purported returns were too good to be true.

111.1.3 FIM unreasonably relied on due diligence of BLMIS conducted by third parties, including Tremont.

111.1.4 FIM failed to conduct any, or any adequate due diligence on BLMIS of its own. In particular:

111.1.4.1    FIM failed, adequately or at all, to visit BLMIS' premises, inspect BLMIS' operations (including BLMIS' information technology systems), interview Mr Madoff/his associates, review relevant documentation, communicate with BLMIS' auditors and/or review any audit reports prepared for BLMIS, so as to properly understand BLMIS' practices and procedures, and internal controls.

111.1.4.2    FIM failed, adequately or at all, to investigate BLMIS' auditor, or to confirm that it was capable of such a large-scale audit – for example, by checking the public peer review list maintained by the American Institute of Certified Public Accountants.

111.1.4.3 Alternatively, FIM failed, adequately or at all, to critically assess or independently verify anything which it was shown, told or learned.

111.2    Further or alternatively, FIM failed to conduct any, or any adequate on-going due diligence on BLMIS and/or monitoring of BLMIS' performance of the investment advisory services which Kingate Management had delegated to BLMIS. In particular:

111.2.1 The Funds repeat paragraphs 106.1.1-106.1.2 above.

111.2.2 The Funds also repeat paragraphs 106.1.3-106.1.4 above.

111.2.3 FIM failed, adequately or at all, to assess critically or independently to verify the regular reports and other documentation produced by BLMIS in respect of the Funds, including trade confirmations and the Monthly Statements. In particular, FIM failed, adequately or at all:

LN/312895v1

111.2.3.1 independently to verify the existence and value of the assets in which BLMIS had purportedly invested the Funds' monies, as described in those reports – for example, by requesting any certificate of title from an independent third party;

111.2.3.2 independently to verify that the trades by which BLMIS had purportedly invested the Funds' monies, as described in the reports, had actually taken place, at the reported prices – for example, by comparing the reported prices of the purported trades with the range in prices actually traded in the market on the day/s in question;

111.2.3.3 critically to assess or independently to verify the volumes of those trades, including how they could be accomplished without impacting the market; and/or

111.2.3.4 critically to assess or independently to verify the existence of the counter-parties to those trades, or their ability to perform their obligations.

111.2.4 FIM failed, adequately or at all to investigate the number of traders at BLMIS responsible for executing the split-strike conversion strategy, and/or their identity.

111.2.5 FIM failed, adequately or at all, critically to assess the question why BLMIS' split-strike conversion strategy, which was based (in part) on market timing, involved pulling out of the market at the end of each quarter and/or year.

111.2.6 FIM failed, adequately or at all, critically assess the question how BLMIS' returns could be lawfully achieved, given that basic, industry standard, statistical analysis indicated that those returns (especially their lack of volatility) were highly improbable.

111.3 Further or alternatively, FIM failed, adequately or at all, to disclose to Kingate Management or the Funds:

111.3.1 the existence of any of the 'red flags' surrounding the operations of BLMIS of which it was, or should have been aware;

111.3.2 any particular on-going risks in relation to BLMIS, and the Funds' investment strategy of investing all monies raised from investors exclusively with BLMIS, of which it was, or should (if it had conducted adequate due diligence on BLMIS) have been aware.

112 For the avoidance of doubt, and if necessary, the Funds aver that these breaches of duty, individually or collectively, amounted to "gross negligence" by FIM, within the terms of the purported exclusionary provisions in the Consulting Services Agreements.

LN/31289v1

113    By reason of these breaches of duty, the Funds have suffered loss and damage. The Funds repeat paragraph 108 above.

**Claim against FIM for negligent misstatement**

114    Further or alternatively, as set out in paragraph 43 above, under the Consulting Services Agreements, the services to be provided by FIM included the provision of advice on various matters and the preparation of various reports. In particular, by clause 8 of the agreements, FIM agreed:

114.1    to provide such assistance, information and reports as Kingate Management and the auditors of the Funds required, in connection with:

114.1.1    the preparation of valuations in respect of the Funds;

114.1.2    the preparation by Kingate Management of periodic reports for submission to the Funds; and

114.1.3    the provision of annual, semi-annual and other reports for the benefit of investors and prospective investors in the Funds, whether published by the Funds or Kingate Management; and

114.2    to report to the boards of the Funds the performance of the Funds and other matters related to the management of their assets.

115    Pursuant to these obligations, FIM did produce various reports including, in respect of each Fund:

115.1    monthly performance summaries (**"Performance Summaries"**); and

115.2    quarterly reports to the board of Kingate Management (**"Board Reports"**).

116    FIM prepared the Performance Summaries and the Board Reports on the basis of information provided by BLMIS, including the Monthly Statements.

117    The Performance Summaries:

117.1    were provided by FIM to Kingate Management;

117.2    in turn, were distributed by Kingate Management to investors in the Funds:

117.2.1    prior to May 2008, with the wording *"This document has been prepared by [FIM]"*; and

117.2.2    since May 2008, with the wording "This document has been prepared by [Kingate Management]";

117.3    set out (inter alia):

LN/312895v1

117.3.1 the fund's net return for the month in question;

117.3.2 the fund's year-to-date return and annual returns since establishment; and

117.3.3 since May 2008, in general terms:

117.3.3.1 the investments in assets made by the fund during the month in question; and

117.3.3.2 the performance of the different classes of assets, during that month. For example, the Performance Summary for May 2008 for Kingate Global stated:

*"Kingate USD started the month approximately 33% invested in the typical basket of S&P 100 Index stocks, long the related S&P 100 Index puts and short S&P 100 index calls, with the rest of the portfolio invested in Treasury Bills. At the beginning of May a further basket of stocks (with related put and call options) was purchased. By the end of the month, all stocks were sold and the corresponding S&P 100 Index options positions were closed down. At month end the portfolio was fully invested in Treasury Bonds.*

*In May, options provided the majority of the gain in the portfolio, with dividends also contributing modestly. In contrast to April, the basket of common stocks and Treasury Bills detracted slightly from the overall performance".*

118    The Board Reports:

118.1    were provided by FIM to the board of Kingate Management;

118.2    were also provided by FIM to the boards of the Funds; and

118.3    set out (inter alia), in more detail than the Performance Summaries:

118.3.1 the fund's net return for each month of the quarter in question;

118.3.2 the investment in assets, namely, equities, options and Treasury Bills, made by the fund during each month;

118.3.3 the performance of the different classes of assets during that month;

118.3.4 the fund's total assets at the end of the quarter in question; and

118.3.5 since the fourth quarter 2006, the year to date profit for the fund.

119     By reason of the following facts and matters, FIM owed to the Funds a tortious duty to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true:

119.1   FIM knew, or ought to have known, or intended that the Funds would, or would be likely to rely on the statements made in the Performance Summaries and/or the Board Reports. In particular, FIM knew, or ought to have known, or intended that:

119.1.1 the Performance Summaries were distributed by Kingate Management to investors in the Funds;

119.1.2 the Board Reports were provided by FIM to the boards of the Funds; and

119.1.3 Kingate Management would, or was likely to rely on the statements made in the Performance Summaries and/or the Board Reports in the performance and/or delegation of the performance of its services under the Manager Agreements, which would have a direct and substantial effect on the Funds.

119.2   Given this, and in all the circumstances, FIM assumed a responsibility to the Funds to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true.

120     The Funds in fact relied on the statements made in the Performance Summaries and/or the Board Reports by:

120.1   not questioning with Kingate Management (or its delegates or FIM) the investment strategy decided upon by Kingate Management (and/or FIM), of investing all monies raised from investors exclusively with BLMIS; and

120.2   continuing to transfer all such monies to BLMIS for investment.

121     The Performance Summaries and/or the Board Reports contained material misstatements. In particular:

121.1   As set out in paragraph 54 above, as a result of Mr Madoff's fraud:

121.1.1 none of the monies transferred by the Funds to BLMIS were invested in assets;

121.1.2 none of the assets reported in BLMIS' Monthly Statements existed; and

121.1.3 no returns were produced by either fund.

121.2    Accordingly, the statements in the Performance Summaries and/or the Board Reports in respect of the assets in which each fund had invested, and their returns, were false.

122    In breach of the duty set out in paragraph 119 above, FIM failed to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true. In particular:

121.1    FIM failed, adequately or at all, to assess critically or independently to verify the information provided by BLMIS, including the Monthly Statements, on the basis of which FIM prepared the Performance Summaries and/or the Board Reports. In particular, FIM failed, adequately or at all:

122.1.1    independently to verify the existence or value of the assets in which BLMIS had purportedly invested the Funds' monies – for example, by requesting any certificate of title from an independent third party;

122.1.2    independently to verify that the trades by which BLMIS had purportedly invested the Funds' monies had actually taken place, at the reported prices – for example, by comparing the reported prices of the purported trades with the range in prices actually traded in the market on the day/s in question;

122.1.3    critically to assess or independently to verify the volumes of those trades, including how they could be accomplished without impacting the market; and/or

122.1.4    critically to assess or independently to verify the existence of the counter-parties to those trades, or their ability to perform their obligations.

122.2    More generally:

122.2.1    FIM failed to conduct any, or any adequate on-going due diligence on BMLIS and/or monitoring of BLMIS' performance of the investment advisory services which Kingate Management had delegated to BLMIS. The Funds repeat paragraph 111.2 above.

122.2.2    FIM failed, adequately or at all, to disclose to the Funds:

122.2.2.1    the existence of any 'red flags' surrounding the operations of BLMIS of which it was aware, or should have been aware;

122.2.2.2    any particular on-going risks in relation to BLMIS, and the Funds' investment strategy of investing all monies raised from investors exclusively with BLMIS, of which it was, or should (if it had conducted reasonable due diligence) have been aware.

LN/3128954

123    For the avoidance of doubt, and if necessary, the Funds aver that these breaches of duty, individually or collectively, amounted to "gross negligence" by FIM, within the terms of the purported exclusionary provisions in the Consulting Services Agreements.

124    By reason of these breaches of duty, the Funds have suffered loss and damage. The Funds repeat paragraph 108 above.

**Remedy against FIM for breach of tortious duty of care and/or negligent misstatement**

125    By reason of the claims set out in paragraphs 110-113 and 114-124 above, the Funds are entitled to damages against FIM, to be assessed.

**Claim against Mr Grosso and Mr Ceretti for breach of tortious duty of care**

126    By reason of the following facts and matters, Mr Grosso and Mr Ceretti personally, as directors of FIM Ltd, and principals of FIM Advisers, owed to the Funds a tortious duty to exercise reasonable skill and care in their dealings with and in relation to the Funds:

126.1    Mr Grosso and Mr Ceretti assumed a personal responsibility to the Funds to take care in their dealings with and in relation to the Funds. In particular:-

126.1.1    As set out in paragraphs 3-10, 18-21, 30-31, 78 and 110.2.2.2 above:

126.1.1.1    Mr Grosso and Mr Ceretti were the individuals behind the establishment of the Funds and, at the same time, Kingate Management;

126.1.1.2    Mr Grosso and Mr Ceretti are, and were at all material times, the ultimate beneficial owners of the shares in Kingate Management;

126.1.1.3    Mr Grosso and Mr Ceretti are, and were at all material times, the directors and controlling shareholders of FIM Ltd, and the principals of FIM Advisers;

126.1.1.4    Kingate Management and FIM were the corporate vehicles of Mr Grosso and Mr Ceretti, for the receipt of fees from the Funds;

126.1.1.5    accordingly, the corporate and contractual structure, which purported to create separate legal personalities and relationships of liability, did not reflect reality but was a structure of convenience for the benefit of Mr Grosso and Mr Ceretti.

126.1.2    As directors (and controlling shareholders) of FIM Ltd, Mr Grosso and Mr Ceretti were together the directing mind and will of FIM Ltd, and the company was their alter ego. In the same way, as principals of FIM Advisers, Mr Grosso and Mr Ceretti were together the

directing mind and will of FIM Advisers and the limited liability partnership was their alter ego.

126.1.3 As directors (and controlling shareholders) of FIM Ltd, and principals of FIM Advisers, Mr Grosso and Mr Ceretti:

126.1.3.1 had some dealings with BLMIS and/or Mr Madoff and/or his associates, both before the establishment of the Funds and afterwards, in connection with the performance of FIM's services under the Consulting Services Agreements;

126.1.3.2 had regular dealings with Kingate Management, in connection with the performance of FIM's services under the Consulting Services Agreements; and

126.1.3.3 had regular dealings with the Funds in that connection, including personal exchanges with the boards of the Funds and investors.

126.1.4 As a result, at all material times, there was direct and substantial contact between Mr Grosso and Mr Ceretti and the Funds.

126.1.5 These facts and matters, taken together, were sufficient to convey to the Funds that Mr Grosso and Mr Ceretti were each willing to assume a personal responsibility to the Funds.

126.2 Accordingly (and notwithstanding the corporate and contractual structure), the Funds in fact relied on Mr Grosso and Mr Ceretti to take care in their dealings with and in relation to the Funds.

126.3 In all the circumstances, that reliance was reasonable. In particular:

126.3.1 The Funds repeat paragraphs 126.1.1-126.1.5 above.

126.3.2 As a result of their dealings with and in relation to the Funds, Mr Grosso and Mr Ceretti held themselves out as having appropriate skills and experience.

126.3.3 As a result of the reality behind the corporate and contractual structure, Mr Grosso and Mr Ceretti had control over the Funds' investments.

126.3.4 As Mr Grosso and Mr Ceretti were aware, the Funds received no advice in respect of their investments, save from FIM/Kingate Management/BLMIS, which advice was not independent.

126.4 In all the circumstances, Mr Grosso and Mr Ceretti knew or ought to have known of this reliance.

127 In their dealings with and in relation to the Funds, Mr Grosso and Mr Ceretti breached this tortious duty. In particular:

127.1    Mr Grosso and Mr Ceretti failed to conduct any, or any adequate on-going due diligence on BLMIS and/or monitoring of BLMIS' performance of the investment advisory services which Kingate Management had delegated to BLMIS. In particular:

127.1.1    Mr Grosso and Mr Ceretti failed to give any, or any adequate consideration to the numerous 'red flags' surrounding the operations of BLMIS which:

127.1.1.1    were matters of public information, and of which Mr Grosso and Mr Ceretti accordingly must have been aware; or

127.1.1.2    even if not matters of public information, could reasonably have been discovered, and of which Mr Grosso and Mr Ceretti accordingly should have been aware.

127.1.2    Mr Grosso and Mr Ceretti unreasonably relied on due diligence of BLMIS conducted by third parties, including Tremont.

127.1.3    Mr Grosso and Mr Ceretti failed to conduct any, or any adequate due diligence on BLMIS of their own. In particular:

127.1.3.1    Mr Grosso and Mr Ceretti failed, adequately or at all, to visit BLMIS' premises, inspect BLMIS' operations (including BLMIS' information technology systems), interview Mr Madoff/his associates, review relevant documentation, communicate with BLMIS' auditors and/or review any audit reports prepared for BLMIS, so as to properly understand BLMIS' practices and procedures, and internal controls.

127.1.3.2    Mr Grosso and Mr Ceretti failed, adequately or at all, to investigate BLMIS' auditor, or to confirm that it was capable of such a large-scale audit – for example, by checking the public peer review list maintained by the American Institute of Certified Public Accountants.

127.1.3.3    Alternatively, Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess or independently to verify anything which they were shown, told or learned.

127.1.4    Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess or independently verify the regular reports and other documentation produced by BLMIS in respect of the Funds, including trade confirmations and the Monthly Statements. In particular, they failed, adequately or at all:

127.1.4.1    independently to verify the existence and value of the assets in which BLMIS had purportedly invested the Funds' monies, as described in those reports – for example, by requesting any certificate of title from an independent third party;

127.1.4.2    independently to verify that the trades by which BLMIS had purportedly invested the Funds' monies, as described in the reports, had actually taken place, at the reported prices – for example, by comparing the reported prices of the purported trades with the range in prices actually traded in the market on the day/s in question;

127.1.4.3    critically to assess or independently to verify the volumes of those trades, including how they could be accomplished without impacting the market; and/or

127.1.4.4    critically to assess or independently to verify the existence of the counter-parties to those trades, or their ability to perform their obligations.

127.1.5 Mr Grosso and Mr Ceretti failed, adequately or at all to investigate the number of traders at BLMIS responsible for executing the split-strike conversion strategy, and/or their identity.

127.1.6 Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess the question why BLMIS' split-strike conversion strategy, which was based (in part) on market timing, involved pulling out of the market at the end of each quarter and/or year.

127.1.7 Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess the question how BLMIS' returns could be lawfully achieved, given that basic, industry standard, statistical analysis indicated that those returns (especially their lack of volatility) were highly improbable.

127.2    Further or alternatively, Mr Grosso and Mr Ceretti failed, adequately or at all, to disclose to Kingate Management or the Funds:

127.2.1 the existence of any of the 'red flags' surrounding the operations of BLMIS of which they were, or should have been aware;

127.2.2 any particular on-going risks in relation to BLMIS, and the Funds' investment strategy of investing all monies raised from investors exclusively with BLMIS, of which they were, or should (if they had conducted adequate due diligence on BLMIS) have been aware.

127.3    Further or alternatively, Mr Grosso and Mr Ceretti failed, adequately or at all, to ensure that FIM took any of the steps set out in paragraphs 127.1-127.2 above.

128    By reason of these breaches of duty, the Funds have suffered loss and damage. The Funds repeat paragraph 108 above.

**Claim against Mr Grosso and Mr Ceretti for negligent misstatement**

129    By reason of the following facts and matters, Mr Grosso and Mr Ceretti personally, as directors of FIM Ltd, and principals of FIM Advisers, owed to the Funds a tortious duty to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true:

129.1    Mr Grosso and Mr Ceretti assumed a personal responsibility to the Funds to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true. In particular:

129.1.1 The Funds repeat paragraphs 126.1.1-126.1.5 above.

129.1.2 Mr Grosso and Mr Ceretti were personally involved in the preparation of the Performance Summaries and/or the Board Reports. For example, weekly faxes from BLMIS setting out the purported market value of each fund's investments (which must have been used, among other materials, in the preparation of the Performance Summaries and/or the Board Reports) were sent to the attention of Mr Ceretti.

129.1.3 The Board Reports were orally presented, by telephone, to the board of Kingate Management and the boards of the Funds by Mr Grosso.

129.2    The Funds in fact relied on Mr Grosso and Mr Ceretti to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true, and on the statements made, by:

129.2.1 not questioning with Kingate Management (or its delegates or FIM) the investment strategy decided upon by Kingate Management and/or FIM, of investing all monies raised from investors exclusively with BLMIS; and

129.2.2 continuing to transfer all such monies to BLMIS for investment.

129.3    In all the circumstances, that reliance was reasonable. The Funds repeat paragraph 126.3 above.

129.4    In all the circumstances, Mr Grosso and Mr Ceretti knew, or ought to have known, or intended that the Funds would, or would be likely to rely on the statements made in the Performance Summaries and/or the Board Reports. In particular, Mr Grosso and Mr Ceretti knew, or ought to have known, or intended that:

129.4.1 the Performance Summaries were distributed by Kingate Management to investors in the Funds;

129.4.2 the Board Reports were provided by FIM to the boards of the Funds; and

129.4.3 Kingate Management would, or was likely to rely on the statements made in the Performance Summaries and/or the Board Reports in the performance and/or delegation of the performance of its services under the Manager Agreements, which would have a direct and substantial effect on the Funds.

129.5 The Performance Summaries and/or the Board Reports contained material misstatements. The Funds repeat paragraph 121 above.

130 In breach of the duty set out in paragraph 129 above, Mr Grosso and Mr Ceretti failed to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true. In particular:

130.1 Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess or independently to verify the information provided by BLMIS, including the Monthly Statements, on the basis of which FIM prepared the Performance Summaries and/or the Board Reports. In particular, Mr Grosso and Mr Ceretti failed, adequately or at all:

130.1.1 independently to verify the existence or value of the assets in which BLMIS had purportedly invested the Funds' monies – for example, by requesting any certificate of title from an independent third party;

130.1.2 independently to verify that the trades by which BLMIS had purportedly invested the Funds' monies had actually taken place, at the reported prices – for example, by comparing the reported prices of the purported trades with the range in prices actually traded in the market on the day/s in question;

130.1.3 critically to assess or independently to verify the volumes of those trades, including how they could be accomplished without impacting the market; and/or

130.1.4 critically to assess or independently to verify the existence of the counter-parties to those trades, or their ability to perform their obligations.

130.2 More generally:

130.2.1 Mr Grosso and Mr Ceretti failed to conduct any, or any adequate on-going due diligence on BMLIS and/or monitoring of BLMIS' performance of the investment advisory services which Kingate Management had delegated to BLMIS. The Funds repeat paragraph 127.1 above.

130.2.2 Mr Grosso and Mr Ceretti failed, adequately or at all, to disclose to the Funds:

130.2.2.1 the existence of any 'red flags' surrounding the operations of BLMIS of which they were aware, or should have been aware;

LN/31289541

130.2.2.2    any particular on-going risks in relation to BLMIS, and the Funds' investment strategy of investing all monies raised from investors exclusively with BLMIS, of which they were, or should (if they had conducted reasonable due diligence) have been aware.

130.3    Further or alternatively, Mr Grosso and Mr Ceretti failed, adequately or at all, to ensure that FIM took any of the steps set out in paragraphs 130.1-130.2 above.

131    By reason of these breaches of duty, the Funds have suffered loss and damage. The Funds repeat paragraph 108 above.

**Remedy against Mr Grosso and Mr Ceretti for breach of tortious duty of care and/or negligent misstatement**

132    By reason of the claims set out in paragraphs 126-128 and 129-131 above, the Funds are entitled to damages against Mr Grosso and Mr Ceretti, to be assessed.

**INTEREST**

133    The Funds seek an order that the Defendants and each of them should pay:

133.1    compound interest on all amounts due to the Funds, as damages and/or a restitutionary remedy pursuant to the common law and/or equitable jurisdiction of the Court, at such rate, for such periods and compounded at such periodic rests as the Court considers appropriate;

133.2    alternatively, interest on all amounts due to the Funds pursuant to statute, at such rate and for such periods as the Court considers appropriate.

**AND THE CLAIMANTS CLAIM:**

**Against Kingate Management**

(1)    Orders for restitution, as follows:

(a)    an order that Kingate Management pay to Kingate Global the amount of US$254,478,999.69; and

(b)    an order that Kingate Management pay to Kingate Euro, the amount of 56,226,531.48 Euros.

(2)    Alternatively:

(a)    an order that Kingate Management pay:

(i)    Kingate Global the amount of US$254,478,999.69; and

(ii) Kingate Euro the amount of 56,226,531.48 Euros;

(b) alternatively:

    (i) a declaration that overpaid fees in the amount of US$254,478,999.69 and/or their traceable proceeds constituted property to which Kingate Global retained legal title and/or its traceable proceeds, together with an order that Kingate Management return those fees and/or their traceable proceeds to Kingate Global; and

    (ii) a declaration that overpaid fees in the amount of 56,226,531.48 Euros and/or their traceable proceeds constituted property to which Kingate Euro retained legal title and/or its traceable proceeds, together with an order that Kingate Management return those fees and/or their traceable proceeds to Kingate Euro.

(3) Alternatively:

(a) a declaration that Kingate Management held overpaid fees and/or their traceable proceeds in the amount of US$254,478,999.69 on resulting, alternatively constructive trusts for Kingate Global from the moment of receipt, together with an order that Kingate Management account to Kingate Global in respect of those fees and/or their proceeds; and

(b) a declaration that Kingate Management held overpaid fees and/or their traceable proceeds in the amount of 56,226,531.48 Euros on resulting, alternatively constructive trusts for Kingate Euro from the moment of receipt, together with an order that Kingate Management account to Kingate Euro in respect of those fees and/or their proceeds.

(4) Damages for breach of contractual and/or tortious duties of care and/or negligent misstatement, to be assessed.

**Against FIM**

(1) Damages for breach of tortious duty of care and/or negligent misstatement, to be assessed

**Against the Shareholders**

(1) Orders for restitution, as follows:

(a) an order that the Shareholders pay to Kingate Global, the amount of US$254,478,999.69, alternatively, the amount of the fees overpaid by Kingate Global and/or their traceable proceeds, which were paid on by Kingate Management to the Shareholders; and

(b)    an order that the Shareholders pay to Kingate Euro, the amount of 56,226,531.48 Euros, alternatively, the amount of the fees overpaid by Kingate Euro and/or their traceable proceeds, which were paid on by Kingate Management to the Shareholders.

(2)    Alternatively:

(a)    an order that the Shareholders pay the Funds the amount of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders;

(b)    alternatively, a declaration that the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders constituted property to which the Funds retained legal title and/or its traceable proceeds, together with an order that the Shareholders return those fees and/or their traceable proceeds to the Funds.

(3)    Alternatively, a declaration that the Shareholders held on resulting, alternatively constructive trusts for the Funds, from the moment of receipt or subsequently, the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders, together with an order that the Shareholders account to the Funds in respect of those fees and their proceeds.

**Against Mr Grosso and Mr Ceretti**

(1)    Orders for restitution, as follows:

(a)    an order that Mr Grosso and Mr Ceretti pay to Kingate Global the amount of US$254,478,999.69, alternatively, the amount of the fees overpaid by Kingate Global and/or their traceable proceeds which were paid on by Kingate Management and then  by the Shareholders to Mr Grosso and Mr Ceretti; and

(b)    an order that Mr Grosso and Mr Ceretti pay to Kingate Euro, the amount of 56,226,531.48 Euros, alternatively, the amount of the fees overpaid by Kingate Euro and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti.

(2)    Alternatively:

(a)    an order that Mr Grosso and Mr Ceretti pay the Funds the amount of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti;

(b)    alternatively, a declaration that the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti constituted property to which the Funds retained legal title and/or its traceable proceeds, together with an order that Mr Grosso and Mr Ceretti return those fees and/or their traceable proceeds to the Funds.

LN/31289v1

(3) Alternatively, a declaration that Mr Grosso and Mr Ceretti held on resulting, alternatively constructive trusts for the Funds, from the moment of receipt or subsequently, the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti, together with an order that Mr Grosso and Mr Ceretti account to the Funds in respect of those fees and their proceeds.

(4) Damages for breach of tortious duty of care and/or negligent misstatement, to be assessed

**Against the Investment Companies**

(1) Orders for restitution, as follows:

(a) an order that the Investment Companies pay to Kingate Global the amount of the fees overpaid by Kingate Global and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to the Investment Companies; and

(b) an order that the Investment Companies pay to Kingate Euro the amount of the fees overpaid by Kingate Euro and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to the Investment Companies.

(2) Alternatively,

(a) an order that the Investment Companies pay to the Funds the amount of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to the Investment Companies;

(b) alternatively, a declaration that the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholder to the Investment Companies constituted property to which the Funds retained legal title and/or its traceable proceeds, together with an order that the Investment Companies return those fees and/or their traceable proceeds to the Funds.

(3) Alternatively, a declaration that the Investment Companies held on resulting, alternatively constructive trusts for the Funds, from the moment of receipt or subsequently, the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to the Investment Companies, together with an order that the Investment Companies account to the Funds in respect of those fees and their proceeds.

Against all Defendants

(1) Interest

DATED this 20th day of January 2011

Amended the 13th day of February, 2012, under RSC, Order 20, Rule 3.

DATED this _13_ day of _February_ 2012

SEDGWICK CHUDLEIGH

Attorneys for the Plaintiffs

_Sedgwick Chudleigh_

SEDGWICK CHUDLEIGH

Attorneys for the Plaintiffs

IN THE SUPREME COURT OF BERMUDA

CIVIL JURISDICTION

COMMERCIAL LIST

2011: 454

B E T W E E N:

KINGATE GLOBAL FUND LIMITED (IN LIQUIDATION)                          First Plaintiff

KINGATE EURO FUND LIMITED (IN LIQUIDATION)                          Second Plaintiff

and

KINGATE MANAGEMENT LIMITED                          First Defendant

FIM LIMITED                          Second Defendant

FIM ADVISERS LLP                          Third Defendant

FIRST PENINSULA TRUSTEES LIMITED (AS TRUSTEE OF THE ASHBY TRUST)                          Fourth Defendant

PORT OF HERCULES TRUSTEES LIMITED (AS TRSUTEE OF THE EL PRELA TRUST)                          Fifth Defendant

ASHBY HOLDING SERVICES LIMITED                          Sixth Defendant

EL PRELA GROUP HOLDING SERVICES LIMITED                          Seventh Defendant

MR CARLO GROSSO                          Eighth Defendant

MR FEDERICO CERETTI                          Ninth Defendant

_____

Annex A

_____

**Kingate Global Fund**
Transfers to and from Madoff

### Data From BLMIS Trustee

| Date | Tsf In out of Madoff | Tsf Into Madoff |
|---|---|---|
| 02/02/1994 | | $ 2,000,000.00 |
| 1994 | $ | |
| 1995 | $ | |
| 1996 | | |
| 25-Dec-95 | $ 6,537.00 | $ 32,415,000.00 |
| 04-Jan-96 | $ 47,855.00 | $ 3,000,000.00 |
| 04-Jan-96 | | $ 4,000,000.00 |
| 28-Feb-96 | | $ 4,450,000.00 |
| 03-Apr-96 | | $ 2,400,000.00 |
| 03-May-96 | | $ 700,000.00 |
| 05-Jun-96 | | $ 7,500,000.00 |
| 02-Jul-96 | | $ 6,500,000.00 |
| 08-Jul-96 | | $ 7,500,000.00 |
| 07-Aug-96 | | $ 4,500,000.00 |
| 03-Sep-96 | | $ 11,000,000.00 |
| 06-Oct-96 | | $ 8,000,000.00 |
| 07-Nov-96 | | $ 9,000,000.00 |
| 05-Dec-96 | | $ 9,000,000.00 |
| 09-Jan-97 | | $ 11,000,000.00 |
| 05-Feb-97 | | $ 13,000,000.00 |
| 05-Mar-97 | | $ 3,270,000.00 |
| 17-Mar-97 | $ 3,820,000.00 | |
| 29-Apr-97 | | $ 15,000,000.00 |
| 08-May-97 | | $ 20,000,000.00 |
| 03-Jun-97 | | $ 27,000,000.00 |
| 03-Jul-97 | | $ 27,000,000.00 |
| 11-Aug-97 | | $ 12,000,000.00 |
| 08-Sep-97 | | $ 7,000,000.00 |
| 08-Oct-97 | | $ 7,000,000.00 |
| 13-Nov-97 | | $ 27,500,000.00 |
| 29-Dec-97 | | $ 9,000,000.00 |
| 29-Jan-98 | | $ 25,000,000.00 |
| 09-Mar-98 | | $ 21,000,000.00 |
| 08-Apr-98 | | $ 45,000,000.00 |
| 04-May-98 | | $ 30,000,000.00 |
| 05-Jun-98 | | $ 62,000,500.00 |
| 02-Jul-98 | | $ 3,000,000.00 |
| 31-Aug-98 | | $ 47,000,000.00 |
| 04-Sep-98 | | $ 15,000,000.00 |
| 21-Oct-98 | | $ 8,000,000.00 |
| 13-Nov-98 | | $ 7,000,000.00 |
| 01-Feb-99 | | $ 8,000,000.00 |
| 03-Feb-99 | | $ 5,000,000.00 |
| 05-Apr-99 | | $ 15,000,000.00 |
| 03-Apr-99 | | $ 5,000,000.00 |
| 06-May-99 | | $ 5,000,000.00 |
| 11-May-99 | | $ 7,000,000.00 |
| 14-May-99 | $ 7,000,000.00 | |
| 02-Jun-99 | | $ 15,000,000.00 |
| 02-Jul-99 | | $ 15,000,000.00 |
| 29-Jul-99 | | $ 15,000,000.00 |
| 03-Aug-99 | | $ 30,000,000.00 |
| 05-Oct-99 | | $ 15,000,000.00 |
| 10-Nov-99 | | $ 10,000,000.00 |
| 09-Dec-99 | | $ 15,000,000.00 |
| 12-Jan-00 | | $ 25,000,000.00 |
| 03-May-00 | | $ 15,000,000.00 |
| 12-May-00 | $ 30,000,000.00 | $ 8,000,000.00 |
| 09-Jun-00 | | $ 15,000,000.00 |
| 05-Sep-00 | | $ 20,075,000.00 |
| 05-Dec-00 | | $ 20,025,000.00 |
| 08-Nov-00 | | $ 30,530,000.00 |
| 17-Nov-00 | | $ 20,100,000.00 |
| 21-Feb-00 | | $ 23,000,000.00 |
| 21-Nov-00 | | $ 30,000,000.00 |
| 09-May-01 | | $ 30,000,000.00 |
| 04-Jun-01 | | $ 20,000,000.00 |
| 29-Jun-01 | | $ 50,000,000.00 |
| 14-Dec-01 | | $ 70,050,000.00 |
| 10-Jul-01 | | |
| 18-Jul-01 | | |
| 17-Nov-01 | | |
| 19-Nov-01 | | |
| | $ 40,254,792.00 | $ 997,630,300.00 |
| Gross Transfer to Madoff | $ 40,254,792.00 | $ 997,630,300.00 |
| Net Transfer to Madoff | | $ 957,635,208.00 |

IN THE SUPREME COURT OF BERMUDA

CIVIL JURISDICTION

COMMERCIAL LIST

2011: 454

B E T W E E N:

KINGATE GLOBAL FUND LIMITED (IN LIQUIDATION)                                      First Plaintiff

KINGATE EURO FUND LIMITED (IN LIQUIDATION)                                        Second Plaintiff

and

KINGATE MANAGEMENT LIMITED                                                        First Defendant

FIM LIMITED                                                                       Second Defendant

FIM ADVISERS LLP                                                                  Third Defendant

FIRST PENINSULA TRUSTEES LIMITED (AS TRUSTEE OF THE ASHBY TRUST)                  Fourth Defendant

PORT OF HERCULES TRUSTEES LIMITED (AS TRSUTEE OF THE EL PRELA TRUST)              Fifth Defendant

ASHBY HOLDING SERVICES LIMITED                                                    Sixth Defendant

EL PRELA GROUP HOLDING SERVICES LIMITED                                           Seventh Defendant

MR CARLO GROSSO                                                                   Eighth Defendant

MR FEDERICO CERETTI                                                               Ninth Defendant

Annex B

Kingate Management Limited
Statement of Operations and Retained Earnings
Years Ended December 1995 - 2007

| | 1995 US$ | 1996 US$ | 1997 US$ | 1998 US$ | 1999 US$ | 2000 US$ | 2001 US$ | 2002 US$ | 2003 US$ | 2004 US$ | 2005 US$ | 2006 US$ | 2007 US$ | 2008 US$ | Total US$ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income | | | | | | | | | | | | | | | |
| Management fee income | | | | | | | | | | | | | | | |
| Kingate Global - Class B | 372,249 | 1,255,247 | 3,745,672 | 9,332,436 | 15,552,261 | 17,120,756 | 22,645,985 | 25,636,637 | 29,495,197 | 31,665,169 | 34,017,453 | 34,462,747 | 38,781,479 | 31,201,035 | 294,312,278 |
| Kingate Euro Fund | - | - | | - | - | 3,557,273 | 4,304,167 | 5,461,973 | 7,270,413 | 8,606,772 | 9,757,756 | 9,352,021 | 11,732,816 | 11,087,300 | 71,124,471 |
| Administration fee income | | | | | | | | | | | | | | | |
| Kingate Euro Fund | | 3,815 | 17,901 | 61,741 | 161,639 | 235,036 | 280,585 | 363,677 | 480,418 | 573,001 | 649,659 | 622,657 | 731,210 | 738,229 | 5,000,546 |
| Rebate income | - | 54,076 | 797,601 | 1,429,407 | - | - | - | - | - | - | - | | - | | 2,281,084 |
| Subscription and redemption income | - | - | - | - | 1,739,048 | 1,480,546 | 1,153,471 | 771,747 | 305,565 | 660,519 | 280,641 | 441,749 | 574,639 | 176,267 | 7,784,393 |
| Interest income | 4,320 | 3,971 | 12,268 | 11,275 | 3,189 | 992 | 1,178 | | - | - | - | - | - | | 42,344 |
| Performance fees | - | 516,765 | 321,664 | 18,171 | | - | - | | - | | | | - | | 836,580 |
| Other income | - | 31,937 | | | | | 3,179 | - | - | - | - | 60,802 | 3,654 | | 98,567 |
| Total Income | 376,765 | 1,870,787 | 4,694,905 | 10,873,207 | 17,456,037 | 22,429,603 | 28,393,519 | 32,254,014 | 36,776,589 | 41,504,454 | 44,705,729 | 44,886,006 | 51,075,798 | 43,202,875 | 391,500,263 |
| Expenses | | | | | | | | | | | | | | | |
| General office expenses | | | | | | | | | | | | | | | |
| Director's fee | 1,000 | 1,000 | - | - | - | 66,314 | 89,000 | 80,000 | 43,000 | 110,000 | 110,000 | 125,000 | 140,000 | | 803,314 |
| Salaries | - | | - | - | - | 142,422 | 281,930 | 339,607 | 420,769 | 465,614 | 449,400 | 425,837 | 477,593 | | 2,004,736 |
| Rent expense | - | | - | - | - | 47,737 | 44,379 | 51,848 | 54,441 | 56,379 | 58,024 | 50,255 | 36,139 | | 404,900 |
| Office expense | - | - | | | - | 48,844 | 86,655 | 178,593 | 103,194 | 108,574 | 106,102 | 73,717 | 48,377 | | 584,461 |
| Insurance | - | - | | - | - | 11,767 | 17,969 | 18,751 | 33,491 | 44,394 | 38,976 | 33,841 | 45,495 | | 244,606 |
| Accounting fee | - | - | - | - | | 12,413 | 6,050 | - | | - | - | - | | | 40,162 |
| Administration fees | 7,650 | 7,600 | 12,000 | 12,250 | 12,000 | 7,912 | 4,788 | 2,084 | - | | - | - | - | | 68,669 |
| Professional fees | 5,721 | - | 3,255 | 21,259 | 4,598 | 765 | - | - | - | | - | | - | | 38,038 |
| Audit fee | - | - | - | | | 18,000 | 18,592 | 15,791 | 17,995 | 10,340 | 24,085 | 32,325 | 26,490 | | 171,728 |
| Corporate secretarial fee & legal fees | 3,500 | 3,500 | 3,000 | 4,000 | 4,003 | 14,259 | 6,233 | 22,442 | 21,601 | 22,265 | 13,273 | [illegible] | 55,843 | | 158,726 |
| Annual company fee | | | - | - | 1,695 | [illegible] | [illegible] | [illegible] | 1,322 | 1,762 | 1,755 | 1,500 | - | | 15,820 |
| Bank charges and miscellaneous | 10,269 | 5,523 | 13,844 | 26,974 | 10,763 | 15,268 | 7,354 | [illegible] | 3,457 | 2,516 | 1,485 | 2,132 | 2,445 | | 114,500 |
| Sub-total | 28,335 | 18,223 | 31,299 | 64,523 | 33,473 | 364,975 | 541,552 | 655,456 | 752,317 | 822,216 | 805,[illegible] | 757,517 | 833,772 | | 5,732,761 |
| Other expenses | | | | | | | | | | | | | | | |
| Co-Manager fees | | | | | | | | | | | | | | | |
| Tremont | 74,959 | 310,103 | 653,667 | 1,383,375 | 2,438,437 | 3,070,696 | 3,540,947 | 2,762,461 | 4,093,341 | 4,384,543 | 4,649,413 | | | | 28,628,050 |
| Consulting fees | - | | - | - | | - | | | - | | - | - | - | | |
| FIM | - | | | | | | | 180,000 | 180,000 | 180,000 | 180,000 | [illegible] | 180,000 | | 1,080,000 |
| Tremont | - | | - | | | - | - | | - | - | - | 1,330,695 | 1,217,626 | | 10,536,321 |
| Other | 102,129 | 506,741 | 491,818 | 592,524 | 540,000 | 510,000 | 300,000 | - | - | | - | | - | | 3,203,242 |
| Distribution fees | | | | | - | - | 173,550 | 249,753 | 281,382 | 295,728 | 257,254 | [illegible] | [illegible] | | 1,034,195 |
| Load fees | - | - | - | - | 1,060,344 | 609,034 | 497,301 | 228,758 | 337,295 | 86,465 | 37,872 | [illegible] | [illegible] | | 2,018,897 |
| Trail fees | | - | - | | 2,719,531 | 2,861,665 | 3,215,000 | 2,514,057 | 2,540,792 | 3,038,442 | 2,769,303 | [illegible] | 2,734,249 | | 24,351,722 |
| Rebate fees | - | 129,602 | 785,437 | 2,521,285 | - | | - | | - | - | | - | | | 3,416,324 |
| | | | | | | | | | | | | | | | 0 |
| | 207,088 | 1,096,346 | 1,937,938 | 4,476,294 | 6,748,764 | 6,801,597 | 7,734,977 | 6,965,019 | 7,342,591 | 7,984,678 | 8,087,742 | 7,973,279 | 8,532,133 | | 75,858,751 |
| Amortization of capital assets | | | | | | | | | | | | | | | |
| Amortization | - | - | - | - | - | 24,248 | 24,699 | 26,037 | 22,869 | 15,750 | 730 | 750 | 220 | | 110,602 |
| Total expenses | 235,437 | 1,114,569 | 1,969,237 | 4,540,817 | 6,782,237 | 7,211,297 | 8,301,423 | 7,637,282 | 8,121,717 | 8,832,661 | 8,894,401 | 8,731,916 | 9,046,135 | | 81,720,118 |
| Net Income for the Year | 141,328 | 756,218 | 2,925,669 | 6,332,390 | 10,673,800 | 15,217,061 | 20,092,096 | 24,616,432 | 28,654,872 | 32,671,790 | 35,811,328 | 36,154,090 | 42,529,643 | | 256,927,319 |
| Retained Earnings at Start of the Year | 67,453 | 196,781 | 952,999 | 1,346,668 | 467,364 | 640,564 | 694,077 | 686,173 | 1,252,605 | 2,057,477 | 5,619,267 | 2,150,395 | 3,004,605 | 3,234,248 | |
| Dividends | (12,000) | - | (2,532,000) | (6,666,000) | (10,500,500) | (15,164,150) | (20,100,000) | (24,050,000) | (27,850,000) | (29,110,000) | (39,260,000) | (35,300,000) | (42,300,000) | (41,050,000) | (295,314,730) |
| Retained earnings at the End of the Year | 196,781 | 952,999 | 1,346,558 | 1,013,059 | 640,564 | 694,077 | 686,173 | 1,252,605 | 2,057,477 | 5,619,267 | 2,150,395 | 3,004,605 | 3,234,248 | | |

IN THE SUPREME COURT OF BERMUDA

CIVIL JURISDICTION

COMMERCIAL LIST

2011: 454

B E T W E E N:

KINGATE GLOBAL FUND LIMITED (IN LIQUIDATION)

First Plaintiff

KINGATE EURO FUND LIMITED (IN LIQUIDATION)

Second Plaintiff

and

KINGATE MANAGEMENT LIMITED

First Defendant

FIM LIMITED

Second Defendant

FIM ADVISERS LLP

Third Defendant

FIRST PENINSULA TRUSTEES LIMITED (AS TRUSTEE OF THE ASHBY TRUST)

Fourth Defendant

PORT OF HERCULES TRUSTEES LIMITED (AS TRSUTEE OF THE EL PRELA TRUST)

Fifth Defendant

ASHBY HOLDING SERVICES LIMITED

Sixth Defendant

EL PRELA GROUP HOLDING SERVICES LIMITED

Seventh Defendant

MR CARLO GROSSO

Eighth Defendant

MR FEDERICO CERETTI

Ninth Defendant

Annex C

# Kingate Global Fund, Ltd. - in Liquidation

Re-calculation of NAV and Management fees for 1995

| | Mar** | Apr** | May** | Jun** | Jul** | Aug | Sep | Oct* | Nov* | Dec* | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | -$237,330.36 | $3,090,957.55 | $6,419,245.46 | $9,747,533.38 | $13,075,821.29 | $16,404,109.20 | $17,604,051.02 | $17,849,227.73 | $25,971,159.23 | $29,717,260.85 | $139,679,365.71 |
| Reported MV of investments | -$333,146.12 | $3,006,908.36 | $6,346,962.64 | $9,687,017.32 | $13,027,071.79 | $16,367,126.27 | $17,565,559.00 | $13,700,073.73 | $26,178,970.00 | $29,727,344.18 | $140,407,033.49 |
| True gross assets before management and performance fees | -$570,476.48 | $84,049.19 | $72,282.63 | $60,516.06 | $48,749.50 | $36,982.93 | $38,492.02 | -$850,846.00 | -$207,810.77 | -$10,083.33 | -$727,667.77 |
| Management fee paid | -$296.66 | $3,863.70 | $8,024.06 | $12,184.42 | $16,344.78 | $20,505.14 | $22,005.06 | $22,311.53 | $32,463.95 | $37,146.58 | $174,849.21 |
| True management fee due | $0.00 | $105.06 | $90.35 | $75.65 | $60.94 | $46.23 | $48.12 | $0.00 | $0.00 | $0.00 | $426.34 |
| Over payment | -$296.66 | $3,758.64 | $7,933.70 | $12,108.77 | $16,283.84 | $20,458.91 | $21,956.95 | $22,311.53 | $32,463.95 | $37,146.58 | $174,422.87 |

*Assume you cannot have a negative amount due to KML, therefore amount owed for this month is 0.00

**No data available, so figures are based on average increases for months Aug to Dec

# Kingate Global Fund, Ltd. - in Liquidation

Re calculation of NAV and Management fees for 1996

| | Jan* | Feb | Mar | Apr* | May* | Jun | Jul | Aug* | Sep* | Oct* | Nov* | Dec* | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | $37,344,599.31 | $39,662,293.76 | $40,408,272.82 | $42,374,038.04 | $43,990,292.29 | $51,645,060.28 | $60,924,522.05 | $65,054,649.08 | $77,472,230.32 | $85,757,667.20 | $93,229,569.62 | $100,168,470.35 | $742,856,965.19 |
| Reported NAV of Investments | $36,346,992.75 | $39,660,021.90 | $39,742,835.35 | $42,509,536.45 | $44,010,075.00 | $51,503,124.25 | $60,920,034.00 | $65,645,077.09 | $78,044,255.00 | $85,772,912.23 | $94,671,346.65 | $100,401,442.00 | $747,056,372.36 |
| True gross assets before management and performance fees | -$2,393.07 | $2,271.89 | $665,637.47 | -$135,498.41 | -$19,782.71 | $137,946.03 | $4,488.05 | -$590,428.01 | -$572,024.68 | -$15,045.03 | -$1,441,777.03 | -$232,971.67 | -$4,199,377.17 |
| Management fee paid | $42,930.75 | $45,352.87 | $50,510.34 | $52,967.55 | $54,987.87 | $64,557.60 | $76,160.65 | $81,318.31 | $96,840.29 | $107,197.33 | $116,536.96 | $133,210.61 | $926,071.13 |
| True management fee due | $0.00 | $2.84 | $832.05 | $0.00 | $0.00 | $172.43 | $5.66 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,013.18 |
| Over payment | $42,930.75 | $45,350.03 | $49,678.29 | $52,967.55 | $54,987.87 | $64,385.17 | $76,154.79 | $81,318.31 | $96,840.29 | $107,197.33 | $116,536.96 | $133,210.61 | $925,057.95 |

*Assume you cannot have a negative amount due to KML, therefore amount owed for this month is 0.00

## Kingate Global Fund, Ltd. - in Liquidation

Recalculation of NAV and Management fees for 1997

| | Jan* | Feb* | Mar* | Apr* | May* | Jun* | Jul* | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | $119,286,374.61 | $139,636,228.61 | $135,798,934.41 | $154,070,887.16 | $172,721,256.42 | $206,069,021.55 | $234,199,124.8[illegible] | [illegible] | $262,917,665.7[illegible] | [illegible] | $305,359,42[illegible] | $326,74[illegible],535.16 | $2,549,573,[illegible] |
| Reported NAV of investments | $121,633,051.00 | $135,864,534.00 | $137,[illegible] | $155,316,813.6[illegible] | $176,[illegible],048.50 | [illegible] | [illegible] | [illegible] | $262,442,[illegible] | $271,[illegible] | $304,567,449.78 | $306,[illegible] | $2,565,[illegible] |
| True gross assets before management and performance fees | -$2,346,676.19 | -$5,228,305.39 | -$2,033,925.37 | -$1,245,926.45 | -$4,[illegible] | -$1,265,432.21 | -$2,387,138.14 | $396,663.03 | $553,135.94 | $932,790.07 | $791,977.71 | $584,612.16 | -$15,614,986.9[illegible] |
| Management fee paid | $149,107.97 | $163,295.29 | $165,123.67 | $192,568.61 | $215,501.57 | $257,586.28 | $292,748.91 | $312,734.26 | $326,747.20 | $340,101.71 | $381,699.28 | $383,436.92 | $3,187,092.64 |
| True management fee due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $455.61 | $693.92 | $1,028.50 | $909.57 | $705.79 | $3,914.01 |
| Over payment | $149,107.97 | $163,295.29 | $165,123.67 | $192,568.61 | $215,501.57 | $257,586.28 | $292,748.91 | $312,278.[illegible] | $326,053.16 | $339,073.21 | $380,789.[illegible] | $382,731.13 | $3,183,178.63 |

*Assume you cannot have a negative amount due to KML, therefore amount owed for this month is 0.00

# Kingate Global Fund, Ltd. - in Liquidation

Re-calculation of NAV and Management fees for 1998

| | Jan | Feb* | Mar* | Apr* | May* | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | $328,888,096.51 | $336,924,192.97 | $385,229,027.89 | $430,789,323.50 | $470,018,612.77 | $502,935,814.39 | $562,272,233.24 | $613,012,372.84 | $645,673,732.23 | $671,040,002.72 | $677,374,265.65 | $684,943,384.14 | $6,330,101,114.26 |
| Reported NAV of Investments | $328,852,213.00 | $339,227,470.00 | $388,473,719.93 | $435,695,912.00 | $475,941,930.00 | $501,886,014.00 | $562,520,845.00 | $612,116,558.00 | $634,710,539.00 | $658,374,049.00 | $675,176,339.00 | $678,023,016.00 | $6,310,996,609.61 |
| True gross assets before management and performance fees | $37,883.51 | -$2,303,277.03 | -$3,244,692.04 | -$4,906,588.50 | -$5,923,317.23 | $1,049,800.39 | $751,388.24 | $895,814.84 | $10,963,193.73 | $12,666,003.72 | $2,197,926.65 | $6,920,368.14 | $19,134,104.43 |
| Management fee paid | $411,110.12 | $446,155.24 | $481,536.28 | $531,110.12 | $587,323.27 | $625,669.77 | $704,090.29 | $765,265.47 | $807,092.17 | $838,800.07 | $846,717.13 | $856,179.33 | $7,405,249.86 |
| True management fee due | $47.35 | $0.00 | $0.00 | $0.00 | $0.00 | $1,312.25 | $928.24 | $1,119.23 | $13,203.94 | $15,832.50 | $2,747.41 | $8,850.46 | $44,352.93 |
| Over payment | $411,062.77 | $446,155.24 | $481,536.28 | $531,110.12 | $587,323.27 | $624,357.52 | $703,161.05 | $765,145.70 | $793,888.17 | $822,967.56 | $843,970.42 | $847,328.87 | $7,360,896.93 |

*Assume you cannot have a negative amount due to KML, therefore amount owed for this month is 0.00

# Kingate Global Fund, Ltd. - in Liquidation

Re-calculation of NAV and Management fees for 1999

| | Jan | Feb | Mar | Apr | May | Jun | Jul |
|---|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | $710,368,589.16 | $741,480,386.69 | $772,350,208.54 | $791,245,482.18 | $824,381,785.48 | $871,591,705.71 | $891,363,770.93 |
| Reported MV of investments | $699,829,542.00 | $727,455,936.00 | $764,239,797.00 | $782,586,008.54 | $812,983,541.50 | $846,480,369.00 | $881,509,702.53 |
| True gross assets before management and performance fees | $10,539,047.16 | $14,024,450.69 | $8,110,411.54 | $8,659,473.64 | $11,398,243.98 | $25,111,336.71 | $9,854,068.40 |
| Management fee paid | $591,710.24 | $926,850.28 | $992,447.76 | $989,056.85 | $1,030,477.23 | $1,089,989.63 | $1,114,204.71 |
| True management fee due | $13,173.31 | $17,605.36 | $10,148.01 | $10,861.84 | $14,249.05 | $31,389.17 | $12,317.56 |
| Over payment | $578,536.93 | $909,244.92 | $982,299.75 | $978,195.01 | $1,016,228.18 | $1,058,600.46 | $1,101,887.15 |

| | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | $922,043,817.68 | $957,773,489.47 | $983,476,557.15 | $1,003,426,105.93 | $1,017,923,421.04 | $10,491,735,359.90 |
| Reported MV of investments | $906,237,688.18 | $935,616,842.24 | $963,764,122.05 | $993,403,257.00 | $1,013,376,372.00 | $10,331,684,416.52 |
| True gross assets before management and performance fees | $15,806,129.50 | $22,156,647.23 | $19,712,435.10 | $10,022,848.93 | $4,546,048.04 | $160,050,943.38 |
| Management fee paid | $1,133,679.77 | $1,197,219.36 | $1,229,345.71 | $1,254,282.63 | $1,272,404.28 | $13,114,669.20 |
| True management fee due | $19,757.66 | $27,708.31 | $24,640.51 | $12,528.56 | $5,683.56 | $200,063.16 |
| Over payment | $1,113,922.11 | $1,169,511.05 | $1,204,705.20 | $1,241,754.07 | $1,266,720.72 | $12,914,605.52 |

# Kingate Global Fund, Ltd. - in Liquidation

Re-calculation of NAV and Management fees for 2008

| | Jan | Feb | Mar | Apr* | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | $1,071,855,234.96 | $1,087,995,692.22 | $1,104,413,817.02 | $1,101,516,150.67 | $1,092,243,226.43 | $1,111,304,317.20 | $1,129,994,276.26 | $1,145,679,272.95 | $1,152,294,309.53 | $1,212,055,984.01 | $1,252,643,457.22 | $1,272,569,916.55 | $13,744,578,757.32 |
| Reported NAV of investments | $1,056,610,765.00 | $1,058,465,424.00 | $1,098,466,156.00 | $1,102,841,545.00 | $1,090,776,412.00 | $1,110,211,224.00 | $1,119,477,645.99 | $1,137,711,484.00 | $1,151,128,296.50 | $1,194,939,551.50 | $1,245,702,795.00 | $1,272,343,748.00 | $13,648,675,147.07 |
| True gross assets before management and performance fees | $15,244,469.96 | $29,530,264.22 | $5,947,661.06 | -$1,325,394.33 | $1,466,814.43 | $1,093,093.20 | $10,516,630.27 | $7,967,788.95 | $1,166,013.03 | $17,116,432.51 | $6,923,664.22 | $226,168.55 | $95,903,610.25 |
| Management fee paid | $1,339,819.64 | $1,359,988.27 | $1,380,517.22 | $1,376,920.19 | $1,365,304.03 | $1,339,133.50 | $1,412,492.55 | $1,432,098.09 | $1,432,867.84 | $1,515,049.98 | $1,565,803.82 | $1,590,712.42 | $17,180,723.43 |
| True management fee due | $19,055.59 | $36,912.84 | $7,434.51 | $0.00 | $1,833.52 | $1,366.37 | $13,145.29 | $9,959.74 | $1,457.52 | $21,395.54 | $8,667.00 | $282.71 | $121,511.25 |
| Over payment | $1,320,763.46 | $1,323,075.43 | $1,373,082.72 | $1,376,920.19 | $1,363,470.52 | $1,337,764.13 | $1,399,347.26 | $1,422,138.35 | $1,431,410.32 | $1,493,654.44 | $1,557,136.74 | $1,590,429.71 | $17,059,212.19 |

*Assume you cannot have a negative amount due to fee, therefore amount owed for this month is 0.00

Kingate Global Fund, Ltd. - in Liquidation

## Kingate Global Fund, Ltd. - in Liquidation

Re-calculation of NAV and Management fees for 200[illegible]

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported gross assets before management and Performance fees | $1,605,657,084.41 | $1,609,560,474.69 | $1,617,922,343.87 | $1,631,932,850.93 | $1,672,276,569.19 | $1,695,452,122.94 | $1,763,244,281.04 | $1,754,062,604.29 | $1,772,002,360.96 | $1,801,392,374.51 | $1,800,848,200.56 | $1,785,094,450.03 | [illegible] |
| Reported NAV of investments | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| True gross assets before management and performance fees | $55,940,674.75 | $52,845,373.49 | $47,893,040.77 | $44,202,216.41 | $37,374,652.59 | $40,423,459.24 | $45,353,403.64 | $45,327,892.35 | $61,332,750.97 | $75,135,939.51 | $71,205,535.23 | $63,423,748.01 | [illegible] |
| Management fee paid | $2,007,071.54 | $2,012,488.09 | [illegible] | [illegible] | [illegible] | $2,124,315.15 | $2,204,053.35 | $2,193,578.31 | $2,215,003.20 | [illegible] | $2,251,060.25 | $2,243,868.09 | $25,656,643.17 |
| True management fee due | $74,425.72 | [illegible] | $59,751.63 | $55,683.27 | $46,974.65 | $79,515.37 | $81,697.24 | $56,377.61 | $76,441.59 | $97,919.97 | $91,756.92 | $79,279.75 | [illegible] |
| Over payment | $1,932,505.37 | [illegible] | [illegible] | $1,924,024.75 | [illegible] | $2,044,439.28 | $2,122,155.09 | [illegible] | $2,138,551.51 | $2,137,930.45 | $2,161,227.33 | [illegible] | $24,793,443.35 |

## Kingate Global Fund, Ltd. - in Liquidation

Re-calculation of NAV and Management fees for 2003

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug* | Sep* | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | $1,792,071,155.40 | $1,794,246,250.27 | $1,835,641,640.27 | $1,847,077,925.56 | $1,858,554,919.17 | $1,903,494,083.73 | $1,927,201,609.36 | $1,949,726,851.87 | $1,975,640,285.21 | $1,976,706,886.57 | $1,987,764,743.73 | $1,983,742,403.99 | $22,825,275,170.39 |
| Reported MV of investments | $1,725,233,745.43 | $1,725,720,943.75 | $1,770,110,692.50 | $1,771,926,011.50 | $1,790,615,618.74 | $1,814,150,400.75 | $1,846,913,848.51 | $1,867,217,365.64 | $1,890,400,102.96 | $1,906,092,727.65 | $1,903,585,999.25 | $1,913,161,659.00 | $21,925,529,516.74 |
| True gross assets before management and performance fees | $66,835,410.06 | $68,525,306.52 | $65,531,946.77 | $75,149,927.06 | $68,339,300.43 | $89,357,684.98 | $80,270,760.85 | $82,509,485.93 | $84,640,182.56 | $70,614,158.92 | $84,176,744.53 | $70,581,744.49 | $904,725,653.65 |
| Management fee paid | $2,240,088.94 | $2,242,807.11 | $2,298,305.80 | $2,308,647.42 | $2,323,591.65 | $2,379,367.61 | $2,409,005.76 | $2,437,158.58 | $2,469,550.36 | $2,470,883.61 | $2,484,705.93 | $2,479,676.50 | $28,544,093.98 |
| True management fee due | $83,548.01 | $85,656.63 | $85,667.43 | $93,937.41 | $85,424.13 | $111,697.11 | $100,338.45 | $103,136.86 | $106,050.23 | $88,267.70 | $105,218.43 | $88,227.18 | $1,137,169.37 |
| Over payment | $2,156,540.93 | $2,157,151.18 | $2,212,638.37 | $2,214,710.01 | $2,238,169.52 | $2,267,670.50 | $2,308,667.31 | $2,334,021.71 | $2,363,500.13 | $2,382,615.91 | $2,379,487.50 | $2,391,451.32 | $27,406,924.60 |

*No data available, so figures are based on average increases for previous months

Kingate Global Fund, Ltd. - in Liquidation

Kingate Global Fund, Ltd. – in Liquidation

Reconciliation of NAV and Management fees for 200[illegible]

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Reported NAV of Investments | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| True gross assets before management and performance fees | [illegible] | [illegible] | [illegible] | $114,043,986.20 | $112,951,358.41 | [illegible] | [illegible] | [illegible] | [illegible] | $26,814,844.44 | [illegible] | [illegible] | [illegible] |
| Management fee paid | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | $2,327,902.57 | [illegible] | $34,017,453.49 |
| True management fee due | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Overpayment | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

Kingate Global Fund, Ltd. - in Liquidation

# Kingate Global Fund, Ltd. - in Liquidation

Re-calculation of NAV and Management fees for 2007

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported gross assets before Management and Performance fees | $2,463,609,324.16 | $2,472,864,964.13 | $2,523,085,927.84 | $2,539,219,324.63 | $2,549,384,548.49 | $2,567,040,470.56 | $2,587,117,622.47 | $2,585,275,182.28 | $2,584,261,681.86 | $2,639,567,022.58 | $2,803,015,684.34 | $2,712,367,694.29 | $31,026,783,047.63 |
| Reported NAV of Investments | $2,385,445,685.00 | $2,380,719,931.00 | $2,433,427,334.00 | $2,463,960,481.31 | $2,486,114,648.39 | $2,526,849,200.50 | $2,517,893,844.00 | $2,529,926,460.75 | $2,561,687,471.25 | $2,576,868,323.00 | $2,615,735,031.75 | $2,626,841,003.00 | $30,084,203,347.95 |
| True gross assets before management and performance fees | $77,563,639.16 | $92,145,033.13 | $89,658,593.84 | $75,258,843.32 | $63,269,900.10 | $40,191,270.06 | $69,223,778.47 | $55,272,721.53 | $22,594,410.61 | $62,698,699.58 | $187,280,052.59 | $86,526,691.29 | $942,579,699.68 |
| Management fee paid | $3,079,261.66 | $3,091,081.21 | $3,153,857.41 | $3,174,024.16 | $3,186,730.69 | $3,208,800.59 | $3,233,897.03 | $3,231,536.48 | $3,230,352.35 | $3,299,456.78 | $3,503,768.86 | $3,390,929.62 | $38,783,478.81 |
| True management fee due | $97,454.55 | $115,181.35 | $112,073.24 | $94,073.55 | $79,087.38 | $75,239.09 | $86,527.22 | $69,090.90 | $28,243.01 | $78,373.37 | $234,100.09 | $108,183.86 | $1,177,599.42 |
| Over payment | $2,981,807.11 | $2,975,899.85 | $3,041,784.17 | $3,079,950.60 | $3,107,643.31 | $3,133,561.50 | $3,147,369.81 | $3,162,445.58 | $3,202,109.34 | $3,221,085.40 | $3,269,668.77 | $3,282,553.75 | $37,605,879.12 |