**DUFFYAMEDEO LLP**
275 Seventh Avenue, 7th Fl
New York, New York 10010
Tel: (212) 729-5832
Todd E. Duffy
Douglas A. Amedeo
*Attorneys for Alpha Prime Fund Limited and Senator Fund SPC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>**BERNARD L. MADOFF INVESTMENT SECURITIES LLC,**<br><br>Debtor. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| **IRVING L. PICARD**, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>- against –<br><br>**HSBC BANK PLC, et. al.**<br><br>Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**REPLY IN SUPPORT OF THE MOTION OF DEFENDANTS ALPHA PRIME FUND LIMITED AND SENATOR FUND SPC FOR AN ORDER PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-390 AUTHORIZING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**

**PRELIMINARY STATEMENT**

1.     The Alpha/Senator Defendants' Motion presents a path forward in an adversary proceeding that has made virtually no progress since the filing of the Trustee's complaint in 2009. In response, the Trustee presents a set of allegations against the movants (the "Opposition") not

only devoid of substantiation or specificity, but which really only serve to further underscore the need for the relief requested in the Motion.

2.      The accuracy of that version of the facts alleged by the Trustee versus the more specific and supported version of the facts alleged in the annexed Declaration of Todd E. Duffy dated March 24, 2014 (the "Duffy Declar.") is ultimately immaterial, however.  Rather, what is clear from the Opposition is that the parties need an independent mediator to help the parties resolve these and other issues that may arise because, after almost five years, they are unable to resolve them without a mediator.

3.      While the Trustee's opposition makes clear that he would love to spend another five (5) years fighting over who said what and when they said it, the Alpha/Senator Defendants and their respective shareholders would prefer that the Trustee work with them to resolve their issues and find a path to resolve this litigation.  The Trustee's Opposition provides no hint of such path, only a dogged reaffirmation of the certainty of more years of conflict, more need for intervention by this Court, and more fruitless delay and expense for the parties.

## BACKGROUND

4.      While the Trustee does not deny that the Case has been delayed, he blames the delay in large part upon the alleged bad faith of the Alpha/Senator Defendants in the conduct of informal discovery related to settlement negotiations. Opposition at 8.  Because settlement discussions are privileged communications under Rule 408 of the Federal Rules of Evidence, the following background items offered in rebuttal are narrowly restricted to the issues of discovery raised first by the Trustee, and are disclosed solely to negate the Trustee's contention of undue delay, an express exception to the confidentiality privilege under the rule. Fed. R.Evid. 408(b).

5. On or about October 16, 2012, counsel for Alpha Prime ("Alpha Counsel") sent a settlement demand letter to the Trustee. Duffy Declar. at 2.

6. In response, the Trustee's counsel and Alpha Counsel began discussions about a structure for settlement discussions (the "Governing Structure"). During a subsequent meeting with Trustee's counsel, Alpha Counsel requested that they send Alpha Counsel a list of documents that they typically request of defendants in settlement discussions. Id. at 3.

7. On November 7, 2012, Geoffrey North, Esq., counsel to the Trustee sent Alpha Counsel a copy of the discovery requests that they typically send to settling parties (the "Draft Discovery Request"). The Draft Discovery Request was clearly a form. The Draft Discovery Request failed to include the names of Alpha Prime or Senator Fund and none of the document requests were tailored to any fact-specific requests involving Alpha Prime or Senator. Id. at 4.

8. Negotiations continued over the Governing Structure (as to settlement, not discovery) until on or about January 12, 2013 when the parties finalized and executed the final agreement. Pursuant to the Governing Structure, the Trustee sought, among other things, information relating to the beneficial owners of Alpha Prime shares, but made no mention of the Alpha Prime directors. This information included the identity of the beneficial owners and specific documents relating to their dealings with Madoff or how they came to invest in Alpha Prime. In addition, the Governing Structure required a total minimum participation of 70% of the Alpha Prime NIV as reduced by the shares of mutually agreed shareholders. Id. at 5.

9. Alpha Counsel's co-counsel, Christian Hausmaninger, an Austrian attorney who represents the Alpha/Senator Defendants in Austria, and Alpha Counsel worked with various shareholder representatives and obtained the required level of participation. Id. at 6.

10. Within the Governing Structure, the Trustee requested a list of documents that Alpha Prime should turn over. Understanding that these were the documents that the Trustee requested, Alpha Prime coordinated with its shareholders and subsequently provided to the Trustee every document they received from shareholders. This production was turned over to the Trustee on or about February 5, 2013 – less than thirty (30) days after entering into the Governing Structure. Id. at 7.

11. Almost two months later, on March 26, 2013, the Trustee sent his first response to the document production in the form of a letter to Alpha Counsel indicating that they had further questions relating to the produced documents. Among those questions raised in the March 26, 2013 letter was how Mr. Hausmaninger was able to reach out to shareholders and obtain the documents in the first place when that was exactly what the Trustee had requested that he do. Id. at 9.

12. In response to this and other questions raised in the March 26, 2013 letter, Mr. Hausmaninger and Alpha Counsel, on April 4, 2013, met with the Trustee's attorneys in their offices to understand what information, if any, they believed they were missing. Id. at 9.

13. During that meeting, the Trustee's attorneys indicated that they would not agree to any settlement unless Alpha Counsel turned over every document requested in the generic Draft Discovery Request. Alpha Counsel explained to them that was not what was required under the Governing Structure and they indicated that they did not care. Alpha Counsel then agreed to turn over documents responsive to the generic Draft Discovery Request. Id.

14. Trustee's counsel further indicated that there were documents responsive to the Governing Structure document request that they had received from third parties that were not produced by Alpha Prime or its shareholders and because Alpha Counsel did not produce them,

4

Alpha Counsel must be "hiding" those and other documents. When Alpha Counsel asked them what the documents were, they refused to disclose a single thing about these "missing documents", stating that if they disclosed them, Alpha Counsel would likely turn over only those documents. Alpha Counsel assured them several times that was not his intention. Id. at 10.

15. After the April 4, 2013 meeting, Mr. Hausmaninger again contacted Alpha Prime's shareholders and requested that they turn over every document responsive to the generic Draft Document Request. Id. at 12. In addition to the documents, Mr. Hausmaninger and Alpha Counsel created a form to be filled out by shareholders which listed the specific questions posed by the Trustee in his March 26, 2014 letter. Id.

16. In addition to the documents, the Alpha/Senator Defendants provided to the Trustee the completed form based upon the Trustee's questions provided to us in the March 26 Letter and requested that the shareholders or their representatives complete the forms. Mr. Hausmaninger and Alpha Counsel believed that this was helpful since it provided the shareholders' responses to the specific questions posed to us by the Trustee. These responses were completed by the shareholders or their representatives and turned over to the Trustee along with the requested documents. Id. at 12.

17. On May 3, 2013, Mr. Hausmaninger and Alpha Counsel turned over every single document produced by shareholders in response to the Draft Discovery Request along with the completed forms. Id. at 12, 13.

18. On May 4, 2013, Alpha Counsel sent an email to Oren Warshavsky indicating that after re-checking with Alpha Prime's shareholders that Alpha Counsel had turned over all documents that are responsive to the Trustee's requests. In addition, Alpha Counsel suggested that the parties agree on a date that the Trustee's representatives go to Vienna, Austria to interview any

5

of the shareholders that had voluntarily produced documents. Because those documents belonged to the shareholders, Alpha Counsel explained, they would be the best people to answer any questions relating to documents. Id. at 14.

19. In response, on or about May 4, 2013, Mr. Warshavsky sent a letter that indicated he had further concerns that would need to be addressed prior to a trip to Vienna to interview the shareholders and that those concerns would be spelled out in a detailed letter to follow. No such letter ever arrived. Id. at 15.

20. Instead, on October 2, 2013, having become frustrated with the lack of progress and the Trustee's accusations, Alpha Counsel reached out to Mr. Warshavsky to obtain a date to arrange for shareholders to make themselves available to be interviewed by the Trustee. During that conversation, Mr. Warshavsky indicated for the very first time that they would not be interviewing shareholders unless they could interview directors. When Alpha Counsel asked where in the Governing Structure there was a requirement that they interview Alpha Prime's directors, they indicated that they did not care what the Governing Structure stated, that they would not move forward on anything unless they could interview Alpha Prime's directors. Alpha Counsel agreed to arrange the requested interviews. Id. at 16.

21. In addition, Trustee's counsel indicated that they believed defendant Ursula Radel-Lesczczynski was a "government witness" for the Austrian government and they could not interview her under Austrian law. Alpha Counsel explained to them that this was not the case and that Alpha Counsel was prepared to obtain an email from the prosecutor in Vienna that would reassure the Trustee as to that fact. Having provided Mr. Warshavsky with that same email from the Austrian prosecutor, the Trustee's counsel still refused to interview Alpha Prime's shareholders or to move the settlement ball forward in any way. Id. at 17.

6

22. On October 3, 2013, Alpha Counsel memorialized its concerns in a letter to Mr. Warshavsky. On October 9, 2013, Mr. Warshavsky responded to the letter with a letter of his own. This letter leveled the same unsubstantiated accusations of "missing documents". Again, Trustee's counsel refused to give Alpha Counsel the faintest hint as to the nature of those missing documents. In his opposition, the Trustee still gives no details, other than to, for the first time, add the ominous word "inculpatory" to his characterization of them.   Id. at 18.

## ARGUMENT

### I.   The Court Has the Power to Order Mediation

23. In his opposition, the Trustee mixes his apples and his oranges. Quoting the court in In re A.T. Reynolds & Sons, Inc., he states that "mediation is 'typically a voluntary process.'" Opposition at 9, quoting Reynolds, 452 B.R. 374, 381 (S.D.N.Y. 2011). What he omits is the next sentence of the Reynolds opinion, which states, "In a mandatory court-ordered mediation, however, advers[e] parties are forced to participate in a collaborative process that one or both parties may not desire." 452 B.R. at 381. In fact, Reynolds itself was a case where the bankruptcy court ordered mandatory mediation; the parties did not "volunteer".   Id. at 376.

24. As detailed in our initial submission, there can be no dispute that the Court has the power to order the parties to mediate. General Order M-390 expressly provides for the Court upon its own motion to consider court-ordered mediation. Indeed, the Trustee's arguments are disingenuous given that his own Procedures Order [Dkt No. 3141] provides a mechanism to force parties into mediation in all of the Trustee's avoidance cases filed after November 10, 2010 in which the amount demanded in the complaint is $20 million or less. There can be no truly disputed legal issue here concerning the Court's power to provide this relief.

25.     In discussing voluntary versus mandatory mediation, the Trustee confuses the issue at hand, concluding that mediation should not go forward, because "a party cannot be coerced into settling or into making an offer to settle, by threat of sanction or otherwise." Opposition at 9. And while this is true, that courts cannot "order" a settlement (though, of course, courts "invite" parties to settle on a regular basis), that judicial handicap applies equally to all mediations, voluntary or involuntary, and as such it would defeat the utility of mediation on every occasion if it were the last word on the subject. Except, here, it is not the last word, or even a relevant word. What courts can do by formal order to mediate, as the Reynolds court stated, is to "forc[e] [the parties] to participate in a collaborative process that one or both parties may not desire." Reynolds, 452 B.R. at 381 [emphasis added]. What movants seek in their Motion is exactly that outcome: a compelled collaborative process to move this almost five year old, much stalled case towards a rational voluntary resolution.

26.     That process, if ordered, may be unsuccessful—in fact, in Reynolds, it was unsuccessful—however, even an unsuccessful mediation can narrow the issues and provide the litigants with a shorter, and more economical, way forward. The Trustee has proposed no alternative way, continues to avoid formal discovery, does not maintain communications with the Alpha/Senator Defendants, does not schedule status conferences, and in almost five years has not made a single move to bind the parties to a scheduling order.

27.     If the Trustee is saying that he will not settle this case under any circumstances, the Alpha/Senator Defendants invite him to so declare. If, however, that is not the case, we urge the Trustee to participate in this proposed collaborative process in good faith to resolve this case or, in the alternative, narrow the issues in controversy to obtain a quicker judicial resolution.

8

## II. The Time for Mediation is Ripe

28. The Trustee, in the Opposition, states no reason why mediation is inappropriate at this time. That is because this is the appropriate time for the parties to enter into mediation. While, as always, there exists no guarantee that mediation will resolve the parties' contest, in this instance, the parties have a history of building a prior settlement framework satisfactory to both parties, and much of the discovery has been accomplished. While we understand that the Trustee has issues with the completeness of the Alpha/Senator Defendants' document production, these issues too, which the parties have been unable to resolve themselves, would best be dealt with by a mediator. As to the alleged "inculpatory documents", their import, if any, can best be tested by an objective viewpoint at this stage. Mediation could also provide a highly efficient mechanism for narrowing the genuine facts still at issue, and if need be, the Trustee can take additional discovery, gauged to what is truly still necessary to resolve reasonable doubts. Even if such mediation failed to achieve settlement, it is likely to define the open issues and provide a framework, with a time schedule, to resolve the liability issues through litigation.

29. In other avoidance actions, where settlement negotiations have reached an impasse, the Trustee has availed himself of mediation—on a mandatory basis—expressly to break the impasse. See, e.g., Picard v. Leif, Adv. Pro. No. 10-04601 (SMB), Letter of Heather J. McDonald, Esq. to the Hon. Burton R. Lifland, dated December 17, 2013, Dkt. No. 23. Given his own practice, the Trustee's Opposition should be disregarded.

**[THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]**

## CONCLUSION

WHEREFORE because the Court has the power to mandate mediation, and because mediation may allow the parties to resolve the instant adversary proceeding, or, in the alternative, narrow the issues to be resolved by the Court, the Alpha/Senator Defendants request that the Court enter an order: (a) providing for the parties to enter mediation; and (b) granting any other and further relief as this Court deems just and proper.

Dated: New York, New York  
      March 25, 2014

Respectfully submitted,

/s Todd E. Duffy  
**DUFFYAMEDEO LLP**  
275 Seventh Avenue, 7th floor  
New York, NY 10001  
Tel: (212) 729-5832  
Todd E. Duffy  
Email: tduffy@duffyamedeo.com

Douglas A. Amedeo  
Email: damedeo@duffyamedeo.com

Attorneys for Defendants, Alpha Prime Fund Limited and Senator Fund SPC