**DUFFYAMEDEO LLP**
275 Seventh Avenue, 7th Fl
New York, New York 10010
Tel: (212) 729-5832
Todd E. Duffy
Douglas A. Amedeo
*Attorneys for Alpha Prime Fund Limited and Senator Fund SPC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**BERNARD L. MADOFF INVESTMENT SECURITIES LLC,**<br><br>            Debtor. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| **IRVING L. PICARD**, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>            Plaintiff,<br><br>    - against –<br><br>**HSBC BANK PLC, et. al.**<br><br>            Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**DECLARATION OF TODD E DUFFY IN SUPPORT OF THE MOTION OF DEFENDANTS ALPHA PRIME FUND LIMITED AND SENATOR FUND SPC FOR AN ORDER PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-390 AUTHORIZING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**

    I, Todd E. Duffy, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

    1.    I am a member of the firm DuffyAmedeo LLP, counsel for Alpha Prime Fund Ltd. ("Alpha Prime") and Senator Fund SPC ("Senator") (collectively, the "Alpha/Senator Defendants"). I submit this Declaration in support of the Alpha/Senator Defendants' Funds'

Motion for an Order Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-390 Authorizing Alternative Dispute Resolution Procedures. I make this Declaration based on personal knowledge and I am competent to testify to the matters discussed herein.

2.  On or about October 16, 2012, I sent a settlement demand letter to the Trustee.

3.  In response, the Trustee's counsel and I began discussions about a structure for settlement discussions (the "Governing Structure"). During a subsequent meeting with Trustee's counsel, I requested that they send me a list of documents that they typically request of defendants in settlement discussions.

4.  On November 7, 2012, Geoffrey North, Esq., counsel to the Trustee sent me a copy of the discovery requests that they typically send to settling parties (the "Draft Discovery Request"). The Draft Discovery Request was clearly a form. The Draft Discovery Request failed to include the names of Alpha Prime or Senator Fund and none of the document requests were tailored to any fact-specific requests involving Alpha Prime or Senator.

5.  Negotiations continued over the Governing Structure (as to settlement, not discovery) until on or about January 12, 2013 when the parties finalized and executed the final agreement. Pursuant to the Governing Structure, the Trustee sought, among other things, information relating to the beneficial owners of Alpha Prime shares, but made no mention of the Alpha Prime directors. This information included the identity of the beneficial owners and specific documents relating to their dealings with Madoff or how they came to invest in Alpha Prime. In addition, the Governing Structure required a total minimum participation of 70% of the Alpha Prime NIV as reduced by the shares of mutually agreed shareholders. The agreement provided that the Trustee would not be in contact with the respective shareholders of Alpha or

Senator. Rather, the Trustee requested that Alpha Prime and its representatives make every effort to secure the required information from the shareholders.

6.     My colleague, Christian Hausmaninger, an attorney who represents the Funds in Austria, and I adapted the Draft Discovery Request to Alpha Prime and sent out a standardized request list and worked with various shareholder representatives to obtain the required level of participation.

7.     Within the Governing Structure, the Trustee requested a list of documents that Alpha Prime should turn over. Understanding that these were the documents that the Trustee requested, Alpha Prime coordinated with its shareholders and subsequently provided to the Trustee every document we received from shareholders. This production was turned over to the Trustee on or about February 5, 2013 – less than thirty (30) days after entering into the Governing Structure.

8.     Almost two months later, on March 26, 2013, the Trustee sent his first response to the document production in the form of a letter to me indicating that they had further questions relating to the produced documents. Among those questions raised in the March 26, 2013 letter was how Mr. Hausmaninger was able to reach out to shareholders and obtain the documents in the first place when that was exactly what the Trustee had requested that he do.

9.     In response to this and other questions raised in the March 26, 2013 letter, Mr. Hausmaninger and I, on April 4, 2013, met with the Trustee's attorneys in their offices to understand what information, if any, they believed they were missing. During that meeting, the Trustee's attorneys indicated that they would not agree to any settlement unless we turned over every document requested in the generic Draft Discovery Request. We explained to them that

3

was not what was required under the Governing Structure and they indicated that they did not care. We agreed to turn over documents responsive to the generic Draft Discovery Request.

10. Trustee's counsel further indicated that there were documents responsive to the Governing Structure document request that they had received from third parties that were not produced by Alpha Prime or its shareholders and because we did not produce them, we must be "hiding" those and other documents. When I asked them what the documents were, they refused to tell me a single thing about these "missing documents", stating that if they told me I would likely only turn over only those documents. I assured them several times that was not my intention.

11. After our April 4, 2013 meeting, Mr. Hausmaninger again contacted Alpha Prime's shareholders and requested that they turn over every document responsive to the generic Draft Document Request.

12. In addition, Mr. Hausmaninger and I created a form based upon the Trustee's questions provided to us in the March 26 Letter and requested that the shareholders or their representatives complete the forms. Mr. Hausmaninger believed that this was helpful since it provided the shareholders' responses to the specific questions posed to us by the Trustee. These responses were completed by the shareholders or their representatives and turned over to the Trustee along with the requested documents.

13. On May 3, 2013, Mr. Hausmaninger and I turned over every single document and response form produced by shareholders in response to the Draft Discovery Request.

14. On May 4, 2013, I sent an email to Oren Warshavsky indicating that after re-checking with our shareholders we have turned over all documents that are responsive to the Trustee's requests. In addition, we suggested that the parties agree on a date that the Trustee's

4

representatives go to Vienna, Austria to interview any of the shareholders that had voluntarily produced documents. Because those documents belonged to the shareholders, we explained, they would be the best people to answer any questions relating to documents.

15. In response, on or about May 4, 2013, Mr. Warshavsky sent a letter that indicated he had further concerns that would need to be addressed prior to a trip to Vienna to interview the shareholders and that those concerns would be spelled out in a detailed letter to follow. No such letter ever arrived.

16. Instead, on October 2, 2013, having become frustrated with the lack of progress and the Trustee's accusations, I reached out to Mr. Warshavsky to obtain a date to arrange for shareholders to make themselves available to be interviewed by the Trustee. During that conversation, Mr. Warshavsky indicated for the very first time that they would not be interviewing shareholders unless they could interview directors. When I asked where in the Governing Structure there was a requirement that they interview Alpha Prime's directors, they indicated that they did not care what the Governing Structure stated that they would not move forward on anything unless they could interview Alpha Prime's directors. We agreed to arrange those interviews.

17. In addition, Trustee's counsel indicated that they believed defendant Ursula Radel-Lesczczynski was a "government witness" for the Austrian government and they could not interview her under Austrian law. I explained to them that this was not the case and that I was prepared to obtain an email from the prosecutor in Vienna that would reassure the Trustee as to that fact. Having provided Mr. Warshavsky with that same email from the Austrian prosecutor, the Trustee's counsel still refused to interview Alpha Prime's shareholders, directors, or to move the settlement ball forward in any way.

5

18. On October 3, 2013, I memorialized my concerns in a letter to Mr. Warshavsky. On October 9, 2013, Mr. Warshavsky responded to my letter with a letter of his own. This letter leveled the same unsubstantiated accusations of "missing documents". Again, Trustee's counsel refused to give me the faintest hint as to the nature of those missing documents. In his opposition, the Trustee still gives no details, other than to now, for the first time, add the ominous word "inculpatory" to his characterization of them.

I declare under penalty of perjury that the facts contained in this Declaration are true and I would testify to the same if needed.

Dated: New York, New York             /s/ Todd E. Duffy
       March 25, 2014                                    Todd E. Duffy