**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　Plaintiff-Applicant,<br><br>　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**AFFIDAVIT OF VINEET SEHGAL IN SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER APPROVING THE FOURTH ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND AUTHORIZING FOURTH INTERIM DISTRIBUTION TO CUSTOMERS**

| | |
|---|---|
| CITY OF NEW YORK | )<br>) ss:<br>) |
| STATE OF NEW YORK | |

Vineet Sehgal, being duly sworn, deposes and says:

1.　　I am a Managing Director of AlixPartners LLP ("AlixPartners"). I make this affidavit to transmit to the Court information relevant to the motion by Irving H. Picard, trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), for an Order Approving the Trustee's Fourth Allocation of Property to

---

[1] For convenience, subsequent references to sections of the Act shall follow the form: "SIPA § __."

Pg 2 of 11

the Fund of Customer Property and Authorizing Fourth Interim Distribution to Customers (the "Motion").

2.AlixPartners has served as the Trustee's Claims Agent and as the accountant for the BLMIS estate since December of 2008 pursuant to SIPA § 78fff-1(a)(1). As the Claims Agent, AlixPartners was responsible for both mailing the notice of the liquidation and claim forms to potential claimants and causing the notice of the liquidation to be published. AlixPartners has also been responsible for processing all claims submitted to the Trustee and assisting the Trustee in reviewing each customer claim filed to determine whether the asserted claim amount agrees with the "net equity" for that account. In addition, as the accountants for the BLMIS estate, AlixPartners has assisted and continues to assist the Trustee in accounting for the assets of the BLMIS estate, including the cash and cash equivalents available to the Trustee.

3.I have been actively involved in the liquidation of BLMIS and the claims process since December 2008 and have personal knowledge of the matters set forth herein.

## The Claims Process

4.To date, the Trustee has received 16,519 customer claims. To date, the Trustee has determined 16,364 of those claims. The Trustee has allowed 2,517 claims and committed to pay approximately $811.747 million in funds advanced to him by SIPC. To date, the allowed claims total approximately $11.402 billion.

5.Of the remaining determined customer claims, 13,625 were denied, 12 were determined as asserting no claim, and 210 were withdrawn. One hundred and fifty-five claims are currently categorized as "deemed determined," meaning that the Trustee has instituted litigation against those claimants.

6.As of March 25, 2014, the Trustee has received 427 timely and 21 untimely filed secured priority and unsecured non-priority general creditor claims totaling approximately

$1.741 billion. These 448 secured, priority, and non-priority general claims are explicit "general creditor" claims, such as vendor and service claims. Of these 448 claims, 94 are general creditor claims and 49 are broker-dealer claims, which together total approximately $264.975 million of the $1.741 billion.

7. 2,290 docketed objections have been filed to the Trustee's claims determinations relating to approximately 4,187 claims, which will be noticed for hearing, as necessary. These 2,290 docketed objections relate to approximately 1,149 BLMIS accounts.

### Recoveries by the Trustee

8. In the Motion filed on May 4, 2011 for the initial pro rata interim distribution ("First Interim Distribution"), the Trustee allocated $2,617,974,430.26 to the fund of customer property ("Customer Fund"). In the Motion filed on July 26, 2012 for the second pro rata interim distribution ("Second Interim Distribution"), the Trustee allocated $5,501,375,994.66 to the Customer Fund. In the Motion filed on February 13, 2013 for the third pro rata interim distribution ("Third Interim Distribution"), the Trustee allocated $1,198,067,071.04 to the Customer Fund. The Trustee seeks the Court's approval to allocate an additional $477,503,824.33 to the Customer Fund. These funds were received primarily from the following sources: (a) the transfer of BLMIS bank accounts to the BLMIS estate; (b) pre-litigation and litigation settlements; (c) customer preference recoveries; (d) the sale of assets; (e) refunds; and (f) earnings on the Trustee's investment and money market accounts. Of the total $9,794,921,320.29 that will be allocated to the Customer Fund (including the allocations for the First, Second, and Third Interim Distributions), $516,190,213.43 was distributed to customers with allowed claims as part of the First Interim Distribution, $3,745,822,500.31 was distributed to customers with allowed claims as part of the Second Interim Distribution, and $523,024,223.30 was distributed to customers with allowed claims as part of the Third Interim

3

Distribution. In connection with the First Interim Distribution, an additional $286,358,011.92 was reserved for accounts in litigation, and $8,544,437.00 of SIPC subrogation was deferred. In connection with the Second Interim Distribution, an additional $2,088,011,614.07 was reserved for accounts in litigation, and $80,165,922.91 of SIPC subrogation was deferred. In connection with the Third Interim Distribution, an additional $293,762,749.70 was reserved for accounts in litigation, and $15,257,752.68 of SIPC subrogation was deferred.[2] Therefore, the total amount available for the Fourth Interim Distribution will be $2,237,783,894.97. Of this amount, $236,653,320.42 must be held in reserve for the non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements, leaving a total of $2,001,130,574.55 available for distribution. Further, the reserve for the Time-Based Damages issue for the First, Second, and Third Interim Distributions is $1,347,657,799.47, resulting in the numerator of $653,472,775.08.

9. In the First Allocation Motion, the Trustee reported total recoveries of $2,617,974,430.26. In the Second Allocation Motion, the Trustee reported total additional recoveries of $5,501,375,994.66. In the Third Allocation Motion, the Trustee reported total additional recoveries of $1,198,067,071.04. The total amount allocated in these three Motions was $9,317,417,495.96. The Trustee has recovered additional funds for the estate totaling $477,503,824.33 from multiple parties and sources since that time.

10. On February 5, 2014, the Bankruptcy Court approved a $325 million settlement between the Trustee and JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan

---

[2] The total SIPC subrogation from the First, Second, and Third Interim Distributions is $103,968,112.59. On March 29, 2013, a SIPC subrogation payment was made in the amount of $102,805,012.23. The remaining $1,163,100.36 is associated with accounts that have not returned the necessary paperwork required to receive their SIPC advance and accounts where the SIPC advance was provided after the payment to SIPC. The $1,163,100.36 is currently held in reserve.

4

Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan"). Under the settlement, JPMorgan paid $325 million to the Trustee.

11. On June 10, 2011, the Bankruptcy Court approved a settlement between the Trustee and the Joint Liquidators for Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds"). Under that agreement, the Fairfield Funds are entitled to share in certain avoidance settlement payments received by the Trustee, including JPMorgan Chase. Accordingly, the Trustee paid $50 million of the $325 to the Fairfield Funds. The Trustee seeks approval to allocate a net amount of $275 million to the Customer Fund from the JPMorgan settlement.

12. The $220 million settlement with the estate of Norman F. Levy, entered into in February 2010, was affirmed by the District Court, and the Second Circuit issued a summary order affirming the judgment of the District Court. The time period to further challenge these rulings in the Supreme Court of the United States expired on March 21, 2013. The $220 million was allocated to the Customer Fund on July 12, 2011 in connection with the First Allocation, and the Trustee held such funds in reserve. The $220 million of funds is now available for distribution by the Trustee.

13. On December 21, 2011, the Bankruptcy Court approved a $326 million settlement between the Trustee and the United States of America, on behalf of the Internal Revenue Service ("IRS"). (ECF No. 4602). In the settlement, the Trustee agreed to set aside almost $103 million as a reserve to satisfy any judgments, settlements, or administrative decisions against the IRS, the United States, or the Trustee that might have been entered with respect to certain payments. The $326 million previously was allocated to the Customer Fund on August 22, 2012 in

connection with the Second Allocation, and the Trustee held $103 million in reserve until March 4, 2014. The $103 million of funds is now available for distribution by the Trustee.

14. The Trustee has recovered $477,503,824.33 since the Third Allocation Motion as a result of preference settlements, litigation and pre-litigation settlements, interest income, and other miscellaneous recoveries. The $477,503,824.33 is available for allocation at this time.

15. For purposes of determining each customer's "net equity," as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account (the "cash in, cash out method" or the "Trustee's Net Investment Method"). Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Last Statement Method," creating the "Net Equity Dispute"). Litigation over the Net Equity Dispute has now proceeded through this Court, the Second Circuit, and the Supreme Court of the United States.

16. On June 25, 2012, the Supreme Court denied two petitions for a writ of certiorari to the Second Circuit; a third petition was withdrawn. Thus, a final nonappealable order has been entered on the Net Equity Dispute, upholding the Trustee's Net Investment Method and making those funds that had previously been held in reserve for this issue available for distribution, contingent upon other reserves.

17. As of February 28, 2014, the Trustee had recovered approximately $9.794 billion as a result of preference settlements, litigation and pre-litigation settlements, interest income, and other miscellaneous recoveries. Of the total amount recovered, $236,653,320.42 must be held in reserve for the non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements. Part of the funds held in reserve remain subject to a final

6

ruling as to how net equity claims are to be determined. Although the Second Circuit's Net Equity Decision on the Net Investment Method is now final, the Objecting Claimants argue that any time-based damages should be part of their net equity claims. Thus, the Trustee will hold such funds in reserve pending the outcome of the appeal of the Time-Based Damages Motion to the Second Circuit (the "Time-Based Damages Motion"). Therefore, the Trustee seeks approval to allocate the full amount of these preference settlements, litigation and pre-litigation settlements, interest income, and other miscellaneous recoveries that were not previously allocated to the Customer Fund; however, $236,653,320.42 will not be available for distribution at this time.

18. In sum, the Trustee seeks to allocate an additional $477,503,824.33 to the Customer Fund. When combined with the $2,617,974,430.26 that was allocated to the Customer Fund in connection with the First Allocation, the $5,501,375,994.66 that was allocated to the Customer Fund in connection with the Second Allocation, and the $1,198,067,071.04 that was allocated to the Customer Fund in connection with the Third Allocation, the total amount allocated will be $9,794,921,320.29. Of this amount, $516,190,213.43 was distributed to customers with allowed claims as part of the First Interim Distribution, $3,745,822,500.31 was distributed to customers with allowed claims as part of the Second Interim Distribution, and $523,024,223.30 was distributed to customers with allowed claims as part of the Third Interim Distribution. In connection with the First Interim Distribution, an additional $286,358,011.92 was reserved for accounts in litigation, and $8,544,437.00 of SIPC subrogation was deferred. In connection with the Second Interim Distribution, an additional $2,088,011,614.07 was reserved for accounts in litigation, and $80,165,922.91 of SIPC subrogation was deferred. In connection with the Third Interim Distribution, an additional $293,762,749.70 was reserved for accounts in

7

litigation, and $15,257,752.68 of SIPC subrogation was deferred.[3] Therefore, the total amount available for the Fourth Interim Distribution will be $2,237,783,894.97. Of this amount, $236,653,320.42 must be held in reserve for the non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements, leaving a total of $2,001,130,574.55 available for distribution. Further, the reserve for the Time-Based Damages issue for the First, Second, and Third Interim Distributions is $1,347,657,799.47, resulting in the numerator of $653,472,775.08.

19. Of the $653,472,775.08 numerator, $348,998,302.42 will be distributed as part of the Fourth Interim Distribution to allowed accounts and SIPC subrogation for allowed accounts in the amount of $10,896,564.76[4] will released to SIPC. For deemed determined accounts, $196,443,338.49 will be reserved. In addition to the deemed determined reserve, the Trustee will also reserve $97,072,605.77 for Time-Based Damages related to the Fourth Interim Distribution, bringing the total Time-Based Damages reserve through the Fourth Interim Distribution to $1,444,730,405.24.

20. The table below summarizes this calculation.

---

[3] The total SIPC subrogation from the First, Second, and Third Interim Distributions is $103,968,112.59. On March 29, 2013, a SIPC subrogation payment was made in the amount of $102,805,012.23. The remaining $1,163,100.36 is associated with accounts that have not returned the necessary paperwork required to receive their SIPC advance and accounts where the SIPC advance was provided after the payment to SIPC. The $1,163,100.36 is currently held in reserve.

[4] An additional $61,963.64 of SIPC subrogation associated with the Fourth Interim Distribution for accounts that have not returned the necessary paperwork required to receive their SIPC advance will be held in reserve.

8

| Category | Amount |
|---|---|
| **SIPC 17 Receipts (February 28, 2014)** | **$9,794,921,320.29** |
| First, Second, and Third Interim Distribution Deductions | |
|     Allowed Accounts | $4,785,036,937.04 |
|     Deemed Determined Accounts | $2,668,132,375.69 |
|     SIPC Subrogation | $103,968,112.59 |
| **Amount Available for Fourth Interim Distribution** | **$2,237,783,894.97** |
| Current Reserves | |
|     Settlements containing the net equity clause, as well as certain other settlements | $236,653,320.42 |
| **Amount Available for Fourth Interim Distribution After Reserves** | **$2,001,130,574.55** |
| Time-Based Damages Reserve | $1,347,657,799.47 |
| **Amount Available for Fourth Interim Distribution After Time-Based Damages Reserve** | **$653,472,775.08** |

### The Net Investment Method Denominator

21. The Trustee's Net Investment Method Denominator is the allowed amount of all accounts that have an allowed claim plus the net cash balance for all accounts into which more funds were deposited than withdrawn for which a claim has been filed, but not yet allowed. As of February 28, 2014, the Trustee's Net Investment Method denominator is $17,624,332,248.72. This number is subject to change as additional accounts are determined.

### The "Time-Based Damages" 3% Reserve Denominator

22. As stated above, the Net Investment Method denominator is $17,624,332,248.72. When Time-Based Damages at a 3% rate are added to the Time-Based Damages balances for

9

allowed and deemed determined accounts, the denominator increases from $17,624,332,248.72 to $20,698,518,012.19 (the "3% Time-Based Damages Reserve Denominator").[5]

### Interim Calculation of *Pro Rata* Share
### Distribution of Customer Fund

23.    As set forth above, the total amount available for the Fourth Interim Distribution will be $2,237,783,894.97. Of that amount, $653,472,775.08 is available for distribution (the "Net Customer Fund"). The difference between those amounts—$1,584,311,119.89—represents the reserves related to the net equity clause, as well as certain other settlements, and the outcome of the appeal of the Time-Based Damages Motion.

24.    The 3% Time-Based Damages Reserve Denominator is $20,698,518,012.19. To determine the percentage of each allowed customer net equity claim that can be satisfied from the Customer Fund, the Net Customer Fund is divided by the 3% Time-Based Damages Reserve Denominator, resulting in the following percentage (the "3% Scenario"):

$$\frac{\$653{,}472{,}775.08 \text{ (Net Customer Fund)}}{\$20{,}698{,}518{,}012.19 \text{ (3\% Time-Based Damages Reserve Denominator)}} = 3.157\%$$

25.    Under this scenario, a total of 1,080 accounts will receive a distribution of approximately 3.157% of their net equity claims. Of these 1,080 accounts, 20 will become fully satisfied, bringing the total of fully satisfied account holders to 1,129 (1,060 accounts will remain partially satisfied and will be entitled to participate in future distributions).

26.    An additional 108 accounts that are currently "deemed determined" could receive a distribution if and when the status of their claims moves from "deemed determined" to allowed. Forty-one of the 108 accounts would be fully satisfied by the SIPC advance. The remaining 67 accounts would receive both a SIPC advance and a distribution in accordance with

---

[5]    The 3% Time-Based Damages Reserve Denominator has increased from $20,683,128,614.97 to

the Trustee's Motion and his earlier distribution motions. Ten of the remaining 67 accounts would be fully satisfied by the First, Second, Third, and Fourth Interim Distributions.

27.   At this time, each customer's ratable share of the Net Customer Fund should be no less than 46.036% of the customer's net equity claim, which includes the 4.602% customers received subject to the First Allocation and First Interim Distribution, the 33.556% customers received subject to the Second Allocation and Second Interim Distribution, and the 4.721% customers received subject to the Third Allocation and Third Interim Distribution.[6]

By: */s/ Vineet Sehgal*
Vineet Sehgal

City of New York
State of New York

Subscribed and sworn to me (or affirmed) before me, Sharyn P. Doyle, Notary Public, on this 25th day of March, 2014 by Vineet Sehgal, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

*/s/ Sharyn P. Doyle*
Sharyn P. Doyle, Notary Public
Qualified in State of New York
*Commission Expires: November 13, 2017*

---

$20,698,518,012.19 since the Third Allocation due to settlements that occurred after the Third Allocation.
[6] Each customer's ratable share may be less than 46.036% for those BLMIS accounts that are fully satisfied.