BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　Debtor. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SCHIFF FAMILY HOLDINGS NEVADA LIMITED PARTNERSHIP, et al.,<br><br>　　　　Defendants. | Adv. Pro. No. 10-04363 (SMB) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE JORDAN H. KART REVOCABLE TRUST, et al.,<br><br>　　　　Defendants. | Adv. Pro. No. 10-04718 (SMB) |

**TRUSTEE'S LIMITED OPPOSITION TO MOTION TO INTERVENE
ON THE ISSUE OF THE TRUSTEE'S
<u>STANDING TO RECOVER CUSTOMER PROPERTY</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT............................................................................................................................. 4

    I.     The Motion to Intervene is Procedurally Improper ................................................ 4

    II.    Movants Fail to Demonstrate a Basis to Intervene ................................................ 5

CONCLUSION.......................................................................................................................... 7

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001) ......................................................................................6

*Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*,
    83 B.R. 880 (Bankr. D.N.J. 1988) ..........................................................................3

*Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*,
    94 B.R. 817 (D.N.J. 1989) ......................................................................................3

*In re Johns-Manville Corp.*
    36 B.R. 743 (Bankr. S.D.N.Y.1984) ........................................................................2

*Picard v. Flinn Inv. LLC*,
    463 B.R. 280 (S.D.N.Y. 2011) .............................................................................3, 4

*Picard v. Greiff*,
    797 F. Supp. 2d 451 (S.D.N.Y. 2011) ....................................................................2

*U.S. v. Gotti*,
    755 F. Supp. 1157 (E.D.N.Y. 1991) .......................................................................2

*United States v. Ahmed*,
    788 F. Supp. 196 (S.D.N.Y. 1992) ..........................................................................2

STATUTES

15 U.S.C. §78fff-2(c)(3) .....................................................................................................1, 3

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff"), submits this memorandum of law in opposition (the "Opposition") to the Motion to Intervene and Be Heard on the Issue of the Trustee's Standing to Recover Customer Property (the "Motion to Intervene") filed by defendants in avoidance actions commenced by the Trustee (the "Movants"), through which Movants now seek to intervene in two separate briefings: (1) the motion to dismiss filed by Becker & Poliakoff LLP in 128 adversary proceedings including the above-captioned *Picard v. Jordan H. Kart Revocable Trust,* Adv. Pro. No. 10-04718 (SMB) (hereinafter the "Becker & Poliakoff Motions"), and (2) the 113 motions to dismiss collectively addressed in one omnibus briefing, including the motion filed in above-captioned *Picard v. Schiff Family Holdings Nevada Limited Partnership,* Adv. Pro. No. 10-04363 (SMB) (hereinafter the "Omnibus Motions").  Movants seek to intervene on the question of the valuation of the customer property fund, to determine whether the Trustee may pursue the recovery of fraudulent transfers of customer property made by BLMIS to customers under SIPA §78fff-2(c)(3) (hereinafter the "Customer Property Fund Issue").

## PRELIMINARY STATEMENT

Despite having filed hundreds of responsive pleadings in this Court and the District Court, some as recently as January 2014, Movants have never moved to dismiss on the basis of the Customer Property Fund Issue.  Because of their failure to raise this argument on their own behalf over the last three years in their separate motions to dismiss in multiple courts, or in the omnibus briefings before the District Court, they now seek to intervene at this late stage in other

---

[1] For convenience, subsequent references to sections of the act shall be denoted simply as "SIPA § __."

defendants' adversary proceedings.  But they have their own proceedings in which they could have raised this argument and they failed to do so.[2]  Seeking intervention here is nothing but a delay tactic and should not be countenanced by the Court.

Movants have had over three years to raise the Customer Property Fund Issue and have decided not to, either as part of a litigation strategy or a failure to act.  For example, two of the signatories to the Motion to Intervene—Dentons US LLP and Pryor Cashman LLP—have collectively filed nearly 30 motions to dismiss in this Court starting in March 2013, with the most recent being filed before this Court in January 2014.  The other four signatories opted to file answers in this Court instead of motions to dismiss, presumably because they did not believe that the Customer Property Fund Issue provided a credible basis for a motion to dismiss.  All counsel for the Movants fully and actively participated in the multiple motions to dismiss before the District Court on every issue impacting the innocent investor adversary proceedings.  Notwithstanding Movants' active litigation in multiple courts through a multitude of motions, none of the Movants raised the Customer Property Fund Issue until this late stage.  Thus, while Movants' interests may be affected by the outcome here, they cannot blatantly flout the rules of procedure by seeking to be heard on an issue that they explicitly waived in their own proceedings.  If these tactics went unopposed, no issue would ever be finally determined for any defendant until the last reply brief is filed, bringing the entire liquidation to the snail's pace of

---

[2] Movants alternatively seek to participate as amicus.  But that is not appropriate because they are parties to the avoidance actions and their brief merely echoes the arguments of the other similarly situated defendants. "An amicus is not a party to the litigation, but participates only to assist the court." *U.S. v. Gotti*, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991); s*ee also In re Johns-Manville Corp.*, 36 B.R. 743, 759 (Bankr. S.D.N.Y.1984).  Amicus status is not appropriate where the movant's interests are the same as those of a litigant. *See, e.g.*, *Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011) (J. Rakoff) (denying motion for amicus status where movant was actual party to another adversary proceeding brought by Trustee because movant could not provide Court with "neutral assistance in analyzing the issues before it"); *United States v. Ahmed*, 788 F. Supp. 196, 198 n. 1 (S.D.N.Y. 1992). (denying amicus status to movant on behalf of defendants where defendant's interests were adequately represented by counsel).

the slowest case.[3]

Movants' underlying substantive argument regarding the Customer Property Fund Issue also fails because it ignores prior precedent—which has already been cited with approval in support of a finding that the Trustee has standing under SIPA §78fff-2(c)(3) in this very SIPA liquidation proceeding. *See Picard v. Flinn Inv. LLC*, 463 B.R. 280, 284 (S.D.N.Y. 2011) citing *Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 83 B.R. 880, 898 (Bankr. D.N.J. 1988). The date to be used for valuation of the fund of customer property is not an arbitrary date chosen by defendants, but the filing date in this SIPA proceeding. *See In re Bevill, Bresler & Schulman, Inc.*, 94 B.R. 817, 823 (D.N.J. 1989) (holding that "the date on which the value of the customer fund should be measured for purposes of determining the Trustee's avoidance powers under section 78fff-2(c)(3) of SIPA" is the filing date) (citing *In re Bevill, Bresler & Schulman, Inc.*, 83 B.R. at 892).

This issue is neither new nor is it so imperative to require intervention at this time. Movants cannot now resuscitate arguments that they waived long ago. They also cannot rewrite the rules of procedure that prevent multiple bites at the apple. Despite the multiple procedural and legal obstacles that the Motion to Intervene simply cannot surmount, the Trustee defers to this Court as to whether permissive intervention is warranted under the circumstances to avoid any further delay and allow the expeditious resolution of the Customer Property Fund Issue.

---

[3] See Transcript of Hearing at 41, *In re Madoff Sec.*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 14, 2014). ("all these proceedings can't move faster than the slowest case.")

## ARGUMENT

### I.    The Motion to Intervene is Procedurally Improper

The Trustee, Movants, and the courts are very familiar with the Customer Property Fund Issue. Indeed, this issue was specifically raised as early as June 2, 2011 as a basis for withdrawal of the reference to the Bankruptcy Court (hereinafter "motions to withdraw") by defendants represented by Becker & Poliakoff LLP. *See e.g., Picard v. James Greiff,* Adv. Pro. No. 10-04357 (SMB), No. 11 Civ. 03775 (JSR) (Bankr. S.D.N.Y. June 2, 2011), ECF No. 9). Movants followed not far behind with their own motions to withdraw the reference, but failed to raise the Customer Property Fund Issue then.[4] The District Court subsequently considered and rejected the Customer Property Fund Issue six months later on November 28, 2011 in a consolidated ruling[5] addressing five motions to withdraw the reference and 80 joinders to those motions. These included certain of the Movants represented by at least two of the signatories to the Motion to Intervene, namely Dentons US LLP and Pryor Cashman LLP.[6] *See Flinn*, 463 B.R. at 284.

Over two years later, Movants were presented with additional opportunities to raise the Customer Property Fund Issue when filing their responsive pleadings to the Trustee's complaints in their respective adversary proceedings. Movants represented by K&L Gates LLP, Bryan Cave

---

[4] *See e.g., Picard v. Harold J. Hein,* Adv. Pro. No. 10-04861 (SMB) (Bankr. S.D.N.Y. July 15, 2011), ECF No. 14-15 (as filed by Dentons US LLP); *Picard v. Kara Fishbein Goldman,* Adv. Pro. No. 10-04735 (SMB) (Bankr. S.D.N.Y. July 19, 2011), ECF No. 8-10 (as filed by Pryor Cashman LLP); *Picard v. Rubin Family Investments Partnership*, Adv. Pro. No. 10-04521 (SMB) (Bankr. S.D.N.Y. Nov. 20, 2011), ECF Nos. 14-15 (as filed by Kramer Levin Naftalis & Frankel LLP); *Picard v. Kenneth L. Evenstad Revocable Trust u/a/d May 2, 2000,* Adv. Pro. No. 10-04342 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2011), ECF Nos. 12-13 (as filed by Loeb & Loeb LLP); *Picard v. Wolfson Equities,* Adv. Pro. No. 10-05220 (SMB) (Bankr. S.D.N.Y. Dec. 14, 2011), ECF Nos. 19-21 (as filed by K&L Gates LLP); *Picard v. The Estate of Sarah E. Pearce*, Adv. Pro. No. 10-04407 (SMB) (Bankr. S.D.N.Y. March 29, 2012), ECF Nos. 13-14 (as filed by Bryan Cave LLP).

[5] The District Court stated that "[b]ecause these motions raise identical questions of law, albeit in different combinations, the Court issues this one Memorandum Order. . ." *Flinn,* 463 B.R. at 282.

[6] *See Picard v. Flinn Inv. LLC,* No. 11 Civ. 05223 (JSR), *Picard v. James Greiff,* 11 Civ. 03775 (JSR), *Picard v. Gerald Blumenthal,* 11 Civ. 04293 (JSR), *Picard v. Kara Fishbein Goldman,* 11 Civ. 04959 (JSR), *Picard v. Harold J. Hein,* 11 Civ. 04936 (JSR).

LLP, Loeb & Loeb LLP, and Kramer Levin Naftalis & Frankel LLP elected to file answers, listing the Customer Property Fund Issue as an affirmative defense. Movants represented by Dentons US LLP and Pryor Cashman LLP instead elected to file motions to dismiss on March 22, 2013,[7] and concede that their motions to dismiss failed to raise the Customer Property Fund Issue. *See* Motion to Intervene at 4.

It is obvious that Movants could have raised the Customer Property Fund Issue before both this Court and the District Court, and failed to do so. Movants did not move as soon as their interests were purportedly implicated back in 2011, but instead waited years to raise an issue they now claim to be so urgent that they must interpose it through intervention. Movants also chose not to file their Motion to Intervene when the issue was raised again and addressed at length in the Becker & Poliakoff LLP Motions that were filed on November 1, 2013, to which the Trustee responded and for which briefing already closed on February 21, 2014. Movants also failed to participate or intervene in the other recent Omnibus Motions briefing addressing the balance of filed motions to dismiss. Movants instead waited until a week after the Trustee filed his opposition brief to the Omnibus Motions on March 10, 2014, to file their Motion to Intervene on March 17, 2014—the deadline for replies to the Omnibus Motions.

## II.   Movants Fail to Demonstrate a Basis to Intervene

Movants previously failed to articulate a basis for intervention to this Court when given the opportunity at the February 14, 2014 hearing.[8] Rather than promptly moving this Court for

---

[7] *See e.g.*, Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint, *Picard v. Barbara J. Berdon*, Adv. Pro. No. 10-04415 (SMB) (Bankr. S.D.N.Y. March 22, 2013) ECF No. 22; *Picard v. James P. Marden*, Adv. Pro. No. 10-04341 (SMB) (Bankr. S.D.N.Y. March 22, 2013), ECF No. 25.

[8] When asked by the Court, counsel for the Movants could not articulate any reason why Movants' interest were not adequately represented by the existing briefs:

> **The Court:** What's wrong with the way it's briefed now? In other words if you had made a motion to intervene you would have to convince me that the current . . .If you were going to intervene you would have to explain to me why whoever was pushing

5

intervention immediately after the hearing, Movants waited over one month to file the Motion to Intervene.  Indeed, Movants fail to demonstrate why the Becker & Poliakoff Motions, and the separately briefed Omnibus Motions, do not competently represent the interests of the similarly situated Movants, all of which raise similar issues—including the Customer Property Fund Issue—and share the same ultimate objective, the dismissal of the Trustee's avoidance actions for which they are all named defendants.

Although the burden to demonstrate inadequacy of representation is, generally speaking, "minimal," the requirement is not a mere formality.  The Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 179 (2d Cir. 2001).  "Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.*  Thus, in addition to having had previous opportunities to raise this issue in their own actions, the same issue is already before this Court in briefing by two different law firms pursuing the same argument and seeking the same outcome as the Movants.[9]  There is no basis for intervention in the two omnibus briefings before this Court, as Movants are and have been more than fairly and adequately heard or represented on legal issues affecting their cases.

The Securities Investor Protection Corporation joins in this Opposition.

---

> this issue now was not adequately representing your interests. So, you know, my question is the same for every one of these issues.
>
> **Ms. Neville:** I can't answer specifically which issue is inadequate, but I don't -- I don't want to see and none of us want to see issues that affect a large number of people get decided on a single brief.

Transcript of Hearing at 14:20-25, 15:1-7, *In re Madoff Sec.*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 14, 2014).

[9] This issue is being pursued by Becker & Poliakoff in 128 motions to dismiss, and in the other Omnibus Motions by Wachtel Missry LLP in 10 motions to dismiss.

## CONCLUSION

For the foregoing reasons, the Trustee submits that, although intervention is unwarranted under the circumstances, the Trustee defers to the Court as to whether intervention is appropriate to expeditiously advance these cases. To the extent the Court grants permissive intervention and considers Movants' memorandum, the Trustee submits herewith as Appendix A his proposed memorandum of law in response to avoid any further delay of the Court's determination of the Customer Property Fund Issue.

Date:  March 28, 2014
      New York, New York

By: */s/ David J. Sheehan*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:dsheehan@bakerlaw.com
Nicholas J. Cremona
Email:ncremona@bakerlaw.com
Keith R. Murphy
Email:kmurphy@bakerlaw.com
Amy E. Vanderwal
Email:avanderwal@bakerlaw.com
Anat Maytal
Email:amaytal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the estate of Bernard L. Madoff*

# APPENDIX A

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Adv. Pro. No. 08-1789 (SMB) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| Debtor. | (Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | |
| SCHIFF FAMILY HOLDINGS NEVADA LIMITED PARTNERSHIP, et al., | Adv. Pro. No. 10-04363 (SMB) |
| Defendants. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | |
| THE JORDAN H. KART REVOCABLE TRUST, et al., | Adv. Pro. No. 10-04718 (SMB) |
| Defendants. | |

**TRUSTEE'S RESPONSE TO INTERVENORS' MEMORANDUM ON THE LIMITS OF**
**TRUSTEE STANDING TO RECOVER CUSTOMER PROPERTY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

    A.    The Intervenors' Approach Would Grind this Liquidation to a Halt..................... 3

    B.    The Intervenors' Statutory Interpretation Arguments Are Red Herrings............................................................................................................... 8

    C.    The Intervenors' Assumptions Regarding the Value of the Customer Fund are Incorrect ............................................................................ 10

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Auburn Hous. Auth. v. Martinez,*
  277 F.3d 138 (2d Cir. 2002) ............................................................................... 10

*Burrage v. United States,*
  571 U.S. -- (2014) ............................................................................................... 6

*In re Candor Diamond Corp.,*
  68 B.R. 588 (Bankr. S.D.N.Y. 1986) .................................................................. 9

*In re Hartley,*
  55 B.R. 770 (Bankr. N.D. Ohio 1985), *rev'd on other grounds*, 825, F.2d 1067 (6th
  Cir. 1987) ............................................................................................................ 9

*Hill v. Spencer S&L Ass'n (In re Bevill, Bresler & Schulman, Inc.),*
  83 B.R. 880 (D.N.J. 1988) .......................................................................... *passim*

*Hill v. Spencer S&L Ass'n (In re Bevill, Bresler & Schulman, Inc.),*
  94 B.R. 817 (D.N.J. 1989) .................................................................................. 2

*McCarthy v. Dun & Bradstreet Corp.,*
  482 F.3d 184 (2d Cir. 2007) ............................................................................... 2

*Picard v. Flinn Inv. LLC,*
  463 B.R. 280 (S.D.N.Y. 2011) ........................................................................... 7

*Puello v. Bureau of Citizenship & Immigration Servs.,*
  511 F.3d 324 (2d Cir. 2007) ............................................................................... 8

*Scerba v. Allied Pilots Ass'n,*
  No. 13 Civ. 3694(LAK) (AJP), 2013 WL 6481583 (S.D.N.Y. Dec. 10, 2013) ....... 3

*In re Teligent Inc.,*
  380 B.R. 324 (Bankr. S.D.N.Y. 2008) ................................................................ 9

STATUTES

11 U.S.C. § 502(d) ............................................................................................. 4, 11

11 U.S.C. § 547 .................................................................................................... 8

15 U.S.C. § 78fff-2(b) .......................................................................................... 8

15 U.S.C. §78fff-2(c)(3) ............................................................................... *passim*

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

15 U.S.C. § 78fff-2(d) ........................................................................................................... 8

15 U.S.C. § § 78fff-2(c)(1) ............................................................................................. 2, 7, 9

18 U.S.C. § 981 ................................................................................................................... 11

18 USC § 981(e)(6) ............................................................................................................. 11

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in response to the memorandum filed by certain customers seeking to intervene (the "Intervenors") on the issue of the Trustee's standing under SIPA §78fff-2(c)(3) to pursue the recovery of fraudulent transfers of BLMIS property.

## INTRODUCTION

The Intervenors attempt to avoid well-reasoned case law in arguing that the Trustee's standing to prosecute avoidance actions should not be determined on the Filing Date,[2] but instead should be considered prior to any recovery in each of the Trustee's individual avoidance actions.  In the Bevill, Bresler SIPA liquidation, in a very similar factual context, the court determined that the filing date was the appropriate date upon which to value the customer fund. In this SIPA proceeding, the District Court in denying a motion to withdraw the reference on this very issue, incorporated and agreed with the reasoning of the *Bevill* court, finding that any other approach would make it almost impossible for the Trustee to administer the estate.

The Intervenors' primary criticism of the *Bevill* court is that it wrongly considered the policy repercussions flowing from valuing the customer fund on any date other than the filing date.  But the considerations articulated by the *Bevill* court make it clear that SIPA §78fff-2(c)(3) simply cannot have the meaning ascribed to it by the Intervenors.  The Intervenors suggest that

---

[1] For convenience, subsequent references to sections of the act shall be denoted simply as " SIPA § __."

[2] In this case, the Filing Date is the date on which the Securities and Exchange Commission commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm.  *See* SIPA § 78*lll*(7)(B).
.

the Trustee must demonstrate, at the time of recovery in each of the Trustee's one thousand adversary proceedings, that the customer property fund is insufficient to satisfy all the claims against it.  Setting aside the administrative burden that this would place on the Trustee and the Court, who would be respectively prosecuting and overseeing the litigation of hundreds of lawsuits that, under the Intervenors' approach, may be moot one day and active the next, the Intervenors' approach penalizes every defendant who settles or litigates expeditiously and benefits only those who delay.  Adopting this approach would chill any possibility of future settlements and essentially bring these proceedings to a halt while defendants fight to slow down their own proceedings in the hopes that the customer property fund might increase in value to a point where the Trustee might not recover against them.  While this approach is obviously beneficial for the Intervenors, it prejudices the rights of customers who are not avoidance defendants and prevents an efficient and effective administration of the estate.

The court's decision in *Bevill,*[3] approved by the District Court in these proceedings, provides the only approach consistent with law and logic: the value of the customer property fund must be determined on the Filing Date.  Any other approach would not only be inconsistent with SIPA but unworkable in this proceeding and future SIPA proceedings.  Indeed, under the Intervenors' method, no claims other than those asserted by customers would be satisfied, which result is in direct conflict with the claims priority waterfall set forth in SIPA § 78fff-2(c)(1).

While in his Omnibus Opposition to Motions to Dismiss[4] the Trustee expressed the view, seemingly shared by this Court, that determination of this issue is not appropriate on a motion to

---

[3] *In re Bevill, Bresler & Schulman, Inc.*, 83 B.R. 880, 892 (D.N.J. 1988) ("*Bevill*"), confirmed in *Hill v. Spencer S&L Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 94 B.R. 817, 823 (D.N.J. 1989).

[4] *See* Trustee's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, *In re Madoff Sec.,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 10, 2014), ECF No. 5803.

dismiss,[5] the Trustee submits that it would be appropriate to resolve solely the legal issue of whether the Filing Date is the appropriate valuation date under SIPA. Because it is not necessary for the Court to determine the current value of the customer fund to resolve the legal issue, the Court does not need to go beyond the record before it on this Motion.

## ARGUMENT

### A.    The Intervenors' Approach Would Grind this Liquidation to a Halt

There is no basis for the Intervenors' reasoning regarding SIPA §78fff-2(c)(3), which provides:

> Whenever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), the Trustee may recover any property transferred by the debtor, which, except for such transfer, would have been customer property if and to the extent that such transfer is void under the provisions of title 11. Such recovered property shall be treated as customer property.

Valuing the customer property fund at the Filing Date is not only consistent with the language of this section, but is supported by a decision in the Bevill, Bresler SIPA liquidation that (i) considered the exact question and issue here, (ii) found the filing date to be the appropriate valuation date, and (iii) has been cited with approval by the District Court in these proceedings. *Bevill,* 83 B.R. 880.

The Intervenors are quick to criticize the *Bevill* court for considering the policy implications of its decision regarding the correct time at which to value the customer property

---

[5] This Court acknowledged that though the standing argument is before it, "it doesn't sound appropriate for a motion to dismiss" because a determination of the issue would require the Court to go outside of the record before the Court. Transcript of Hearing at 38, *In re Madoff Sec.*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 14, 2014). *See e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (when deciding a motion to dismiss, the Court's review is limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."); *Scerba v. Allied Pilots Ass'n*, No. 13 Civ. 3694(LAK) (AJP), 2013 WL 6481583, at *7 (S.D.N.Y. Dec. 10, 2013) (stating that the Court must limit its analysis to the four corners of the complaint).

fund, but even a cursory review of the impact of the Intervenors' approach underlines why Congress cannot possibly have intended SIPA to be read in the manner favored by the Intervenors.

A holding that it is appropriate to value the customer property fund at the conclusion of each adversary proceeding will promptly begin a race to the bottom. Each litigant will attempt to stall its case, hoping to be able to wait long enough to avoid having to repay the fictitious profits received from the estate. This both provides an unfair advantage to those who successfully stall and prevents recovery of funds that should be available for net losers. Further, the Trustee will be unable to enter into any settlements because, under the Intervenors' approach, it would make no financial sense for defendants to do so. All of this is in addition to the fact that the Trustee and this Court will expend significant time and resources prosecuting actions that may be moot one day and active the next. Indeed, the Trustee could obtain a significant recovery in an avoidance action and have sufficient funds to satisfy all outstanding claims as of that day. But then, the following week, the Trustee may enter into a settlement agreement with a net loser customer, pursuant to which a customer claim, previously disallowed in accordance with section 502(d) of the Bankruptcy Code, could be allowed and the estate would once again be in a deficit. In the interim, avoidance action defendants would move to prevent the Trustee from recovering against them. An estate cannot be effectively administered under such circumstances. It would lead to excessive and unnecessary litigation after the Trustee has obtained a judgment. Notwithstanding the convoluted statutory interpretation arguments concocted by the Intervenors and addressed below, these results cannot have been intended by Congress.

The *Bevill* court reached the only logical conclusion – the customer fund must be valued as of the Filing Date. To the extent that the Trustee eventually yields a 100% distribution on net

equity claims, avoidance action defendants may be entitled to a general estate claim and gain the benefit of the Trustee's work on behalf of all customers and the estate. There is no prejudice to avoidance action defendants, because they are returning fictitious profits to the estate and will share *pro rata* in any excess. The Intervenors' attempts to distance themselves from the holding of *Bevill* are not persuasive, particularly because the District Court in this SIPA proceeding has cited it with approval.

In the *Bevill* SIPA liquidation, customer-defendants in an avoidance action argued that the Trustee should be required to prove the insufficiency of the fund of customer property for purposes of SIPA § 78fff-2(c)(3) either when an avoidance complaint was filed or when a judgment was entered. *Bevill* 83 B.R. at 892. The court rejected the imposition of these "enormous administrative expenses" even where there was a possibility that avoidance of a particular transfer was not necessary to bring the fund of customer property to 100%, finding that the "purpose of SIPA, and the responsibility of the court, is to administer the estate in a manner that benefits all customers, not just defendants in avoidance actions." *Id.* at 893. The court thus stated that "the date on which the value of the customer fund should be measured for purposes of determining the Trustee's avoidance powers under section 78fff-2(c)(3) of SIPA" is the filing date.

Part of the court's rationale was that the fund of customer property might be sufficient to satisfy claims one day but be insufficient on the next. To prevent the trustee from pursuing his avoidance claims on that basis could be prejudicial to customers with claims against the estate because the trustee's overall recoveries may be reduced. *Id.* at 893. Further, as the *Bevill* Court recognized, if by the passage of time, a trustee recovered 100% of the funds necessary to satisfy all net equity claims and SIPC, a defendant in an avoidance action could share *pro rata* in that

recovery through a claim against the estate after satisfying the avoidance action judgment. *Id.* at 891. Indeed, SIPA expressly contemplates this possibility. *See* SIPA § 78fff-2(c)(1) ("Any customer property remaining after allocation in accordance with this paragraph shall become part of the general estate of the debtor.").

Contrary to the Intervenors' assertion, the *Bevill* court did not fail to consider the language of the statute. The court stated that it was "not surprising" that SIPA was silent on the issue of the timing of the valuation of the customer fund, and held that it must determine the proper date for a valuation "with reference to the overall purposes of SIPA." *Id.* at 892. The court then noted that one of SIPA's purposes was to "freeze the broker dealer's affairs as of the filing date in order to accomplish an orderly liquidation." *Id.* The court observed that numerous provisions of SIPA require that assets and liabilities of the estate be fixed as of the filing date, and it was sensible and consistent with the purpose of the statute to use that date to value the customer fund as well. *Id.* The Intervenors' argument that the *Bevill* court did not "grapple with the statutory limitations on the Trustee's recovery powers" (Intervenors' Br. at 1), is belied by this analysis.

The *Bevill* court also did not err by considering the policy implications of the determination of the appropriate date to value the customer property fund. Because SIPA § 78fff-2(c)(3) is silent on which date the valuation should occur, the *Bevill* court was correct in considering policy issues. There is no possible way a court could "apply the statute as it is written" (Intervenors' Br. at 8-9, *citing Burrage v. United States*, 571 U.S. --, (2014)), without engaging in some consideration of what would be appropriate.

The Intervenors try to further distinguish the instant case from *Bevill* by asserting that it would not be burdensome for the Trustee to value the customer property fund in each avoidance

action.  That is not the case.  Given the actions taken by Intervenors' counsel to date in these proceedings, it is unlikely that they would simply accept the amounts identified on the Trustee's website as the value of the customer fund for purposes of SIPA § 78fff-2(c)(3).  To the contrary, the Intervenors are essentially seeking a mini-trial at the conclusion of each and every avoidance action to determine the current value of the customer fund which will significantly increase the administrative burden on the Trustee.  Furthermore, the claims allowed and addressed under SIPA § 78fff-2(c)(1) continue to change, including in connection with the myriad of claims objections and Bankruptcy Code section 502(d) disallowances.  The burden to anticipate these liabilities on a continuous basis is excessive and unjustified.

The Intervenors also attempt to minimize the District Court's approval of *Bevill* in these proceedings.  While it is true that *Bevill* was referenced in the context of denying the motion to withdraw the reference on the issue, the District Court's approval of *Bevill* and its analysis thereof is persuasive.  The District Court stated:

> [I]t has long been held "that the fund of customer property shall be valued for the purposes of 15 U.S.C. §78fff-2(c)(3) as of [the filing date]," *In re Bevill, Bresler & Schulman, Inc.*, 83 B.R. 880, 898 (Bankr. D.N.J. 1988), and no "substantial and material consideration of non-Bankruptcy Code federal statutes" is required to see why this is so: any different interpretation of §78fff-2(c)(3) would cause the Trustee's powers to fluctuate, leading to a 'logistical nightmare.' *Id.* at 893.  The Trustee might file a meritorious claim, but find himself unable to pursue it later for reasons wholly unrelated to the claim itself.  Moreover, if the Trustee does avoid more than he needs to satisfy customer claims, SIPA provides that a recipient of an avoided transfer "shall be deemed to have been a creditor," allowing her to recover at least some of what the Trustee avoided.  15 U.S.C. § 78fff-2(c)(3).

*Picard v. Flinn Inv. LLC*, 463 B.R. 280, 284 (S.D.N.Y. 2011).  Both *Bevill* and the District Court have identified the obvious shortcomings of the Intervenors' approach.

Finally, the Intervenors assert, relying on bankruptcy cases, that if the customer fund is

sufficient to satisfy all customer claims, there are no creditors on whose behalf avoidance actions could be asserted. This argument reveals a fundamental lack of understanding regarding how SIPA operates. SIPA § 78fff-2(c)(1) establishes a priority of payment for several types of claims, which claims are not to be satisfied until customers are paid in full. Indeed, the Intervenors themselves are potential general estate creditors who may have a claim against the estate should the Trustee recover sufficient funds to satisfy all customer claims.

## B.    The Intervenors' Statutory Interpretation Arguments Are Red Herrings

The Intervenors' convoluted arguments regarding the interpretation of the relevant section of SIPA are unavailing. Once again, SIPA §78fff-2(c)(3) provides in pertinent part: "Whenever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), the Trustee may recover any property transferred by the debtor, which, except for such transfer, would have been customer property…."

While the three page exposition the Intervenors provide on the meaning of the word "whenever" is fascinating, they fail to explain why it is not more plausible that the section should be read to mean that a trustee may recover transferred property "whenever" there is a SIPA liquidation that satisfies the section's criteria, as opposed to at whatever moment in time within each SIPA liquidation the customer fund is sufficient to satisfy allowed claims.

Second, as the *Bevill* court concluded, the fact that SIPA §78fff-2(c)(3) does not contain a reference to "filing date" is not determinative. *In re Bevill, Bresler & Schulman, Inc*., 83 B.R. at 892. The court found that it was not surprising that the language was omitted and looked to other sections of the statute that did provide dates for the valuation of assets for guidance. *Id.* Other provisions of SIPA make clear that the filing date is the date upon which assets and liabilities of SIPA should be fixed. *See, e.g*., SIPA §§ 78fff-2(b); 78fff-2(d). The *Bevill* court

correctly sought to interpret the statute in a manner that made it consistent with the purposes of the statute as a whole, and the same approach should be followed here. *Bevill*, 83 B.R. at 892. *See also Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F.3d 324, 329 (2d Cir. 2007) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another.").

Such an approach is consistent with an analogous bankruptcy concept. To pursue a preference claim under section 547 of the Bankruptcy Code, a trustee must demonstrate that, among other things, the preferential transfer would allow the transferee to recover more than he would in a chapter 7 liquidation. Courts have consistently held that the appropriate date for valuing the potential chapter 7 recovery is the filing date, not the date the preference action was filed or heard. *See In re Teligent Inc.,* 380 B.R. 324 (Bankr. S.D.N.Y. 2008) (the proponent must construct a hypothetical chapter 7 case, and determine the percentage distribution that the defendant would have received on the petition date); *In re Candor Diamond Corp.*, 68 B.R. 588 (Bankr. S.D.N.Y. 1986) (court considered the possibility of a potential future large recovery but held "[t]he mere possibility that a trustee may ultimately realize a large recovery on a claim which as of the time he assails the preference he has not even asserted is not, in our opinion, sufficient" and noted that if such claims were included it would be "impossible for a trustee to recover a preference; the court would effectively be required to try all sizeable contingent claims before it could try any preference action."); *In re Hartley*, 55 B.R. 770, 777 (Bankr. N.D. Ohio 1985), *rev'd on other grounds*, 825, F.2d 1067 (6th Cir. 1987).

Third, the Intervenors' argument regarding fixing the amount of customer property is nonsensical. The fact that the amount of customer property in the estate may fluctuate during the course of a SIPA liquidation does not mean that determinations of standing must also fluctuate.

9

Standing under SIPA is a threshold issue that, for all the reasons described above, cannot be allowed to vary from one day to the next in a liquidation. The Intervenors also read far too much into the fact that SIPA §78fff-2(c)(3) refers to the "recovery" of transfers as opposed to the avoidance thereof. The fact that the Bankruptcy Code distinguishes between avoidance and recovery and SIPA does not fails to further Intervenors' cause.

The Intervenors' interpretation of the statute also overlooks the priority of payment created by SIPA § 78fff-2(c)(1). Under the Intervenors' approach, there would be no possibility of satisfying any claims other than those asserted by customers, meaning that, among other claims in the claims priority waterfall set forth in SIPA § 78fff-2(c)(1), SIPC would never be repaid the over $800 million that it has advanced to customers to date. This clearly conflicts with the repayment of SIPC for its advances as provided in SIPA §§ 78fff-3(a), 78fff-3(c)(2), and 78fff-2(c)(1)(C) and (D). Thus, the Intervenors' interpretation would render the statute internally inconsistent and lead to a result that could not have been intended. *Auburn Hous. Auth. v. Martinez,* 277 F.3d 138, 144 (2d Cir.2002) ("[T]he preferred meaning of a statutory provision is one that is consonant with the rest of the statute.").

## C.    The Intervenors' Assumptions Regarding the Value of the Customer Fund are Incorrect[6]

Utilizing the Filing Date as the appropriate valuation date, it is clear that the Trustee is authorized under SIPA to pursue his avoidance claims. The amount of customer property on the Filing Date was less than $1 billion,[7] clearly insufficient to pay: (1) the amount of current

---

[6] As stated above, it is the Trustee's position that any consideration of the value of the customer fund is unnecessary to decide this issue and also outside of the scope of the current proceedings. The Trustee addresses the arguments raised by the Intervenors for completeness purposes only.

[7] *See* Trustee's First Interim Report For The Period December 11, 2008 Through June 30, 2009, at ¶¶ 33-34, 37, 40, 43-51, 57 n.7, *In re Madoff Sec.*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), ECF No. 314.

allowed claims, $11.402 billion,[8] or (2) the amount of potentially allowable customer claims, $17.5 billion (the amount of principal lost by customers who filed claims).[9]

Setting aside the fact that valuing the customer property fund at the Filing Date is the correct approach, the Trustee is not close to recovering sufficient assets to satisfy all outstanding claims, and the Intervenors' assertions otherwise ignore how a bankruptcy case proceeds and the status of this particular case. First, the Intervenors fail to account for the net loser BLMIS claimants with whom the Trustee is in litigation. Some of these defendants hold the largest claims against the estate, which are subject to section 502(d) of the Bankruptcy Code and will not be allowed until the avoidance litigation is resolved. As net loser customers, though, upon satisfaction of their avoidance liability, they may be entitled to an allowed claim. Moreover, final rulings have not been entered on all objections to claims determinations issued by the Trustee. Thus, the amount of allowed claims as of today is merely a preliminary estimate of the amount of allowable claims against the estate.

Further, amounts forfeited to the Government are not relevant to the valuation issue presented by SIPA 78fff-2(c)(3). Those funds are held by the Government, are not commingled with the Trustee's funds, and are not within the Trustee's control. Those funds are administered separate and apart from this SIPA liquidation, and will be distributed under the mitigation or remission regulations related to the forfeiture laws. Moreover, the Special Master appointed by the Government to distribute those funds has indicated that the class of "victims" eligible for payment under the forfeiture regulations is much broader than "customers" under SIPA and

---

[8] See *Claims*, The Madoff Recovery Initiative, http://www.madofftrustee.com/claims-03.html (last visited March 28, 2014).

[9] *See Recoveries*, The Madoff Recovery Initiative, http://www.madofftrustee.com/recoveries-04.html (last visited March 28, 2014).

funds will thus go to different payees.  As such, the Government's funds are not relevant to this analysis.  *See* 18 U.S.C. § 981. 18 USC § 981(e)(6) (following civil forfeiture, the attorney general is authorized to retain forfeited property or transfer such property to victims on the terms and conditions he may determine).  *See also* Memorandum Of Law (1) In Opposition To The Motion Of Adele Fox To Intervene And To Amend, Modify, Or Rescind The Stipulation And Order Of Settlement, And (2) In Support Of The Government's Cross Motion (A) To Dismiss The Claim Of Adele Fox And (B) For Entry Of A Final Order Of Forfeiture at 32, *United States v. $7,206,157,717 On Deposit at JP Morgan Chase Bank, N.A.*, No. 10-CV-09398 (S.D.N.Y) (TPG) (ECF No. 13).  Accordingly, not only are the Intervenors wrong on the legal basis for their position, they have misstated the facts underlying their argument.

Finally, Intervenors seem to be suggesting that the Trustee is overreaching in pursuing his avoidance actions.  To the contrary, the Trustee is acting in accordance with SIPA and the Bankruptcy Code in an attempt to make all possible appropriate recoveries to return stolen money to victims of Madoff's Ponzi scheme.

## CONCLUSION

Should this Court be inclined to consider the Trustee's standing under SIPA §78fff-2(c)(3) in the context of the pending motions to dismiss, the Trustee respectfully requests that the Court confirm that appropriate time for valuing the customer property fund is as of the Filing Date.

Dated:  New York, New York             Respectfully submitted,
March 28, 2014

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicolas J. Cremona
Email: ncremona@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the estate of Bernard L.*
*Madoff*

13