SECURITIES INVESTOR PROTECTION CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
LAUREN T. ATTARD
Assistant General Counsel

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>　　　BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>SCHIFF FAMILY HOLDINGS NEVADA LIMITED PARTNERSHIP, et al.,<br><br>　　　　　Defendants. | Adv. Pro. No. 10-04363 (SMB) |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No.10-04718 (SMB) |
| THE JORDAN H. KART REVOCABLE TRUST, et al., | |
| Defendants. | |

**THE SECURITIES INVESTOR PROTECTION CORPORATION'S RESPONSE
TO INTERVENORS' MEMORANDUM ON THE LIMITS OF
<u>TRUSTEE STANDING TO RECOVER CUSTOMER PROPERTY</u>**

# **TABLE OF CONTENTS**

**PAGE**

ARGUMENT ...................................................................................................................................4

I. ASIDE FROM LACKING MERIT IN ANY EVENT, DEFENDANTS' ARGUMENT AT THIS JUNCTURE IS AT BEST PREMATURE AND AT WORST, ASSUMES A RECOVERY THAT MAY NEVER OCCUR ...................................................................4

II. THE TRUSTEE HAS THE SAME AUTHORITY TO BRING AVOIDANCE ACTIONS AS A TRUSTEE UNDER THE BANKRUPTCY CODE ..................................................5

III. SIPA SECTION 78fff-2(c)(3) DOES NOT LIMIT THE AUTHORITY OF THE TRUSTEE TO BRING THE AVOIDANCE ACTIONS AGAINST THE DEFENDANTS ........................................................................................6

    A. SIPA Section 78fff-2(c)(3) Broadens Rather Than Limits the Avoidance Powers of the Trustee ................................................................6

    B. Defendants' Claims for Fictitious Profits Cannot Be Paid from Customer Property. By Limiting the Avoidance Powers of the Trustee, the Defendants Confer Upon Themselves a Priority Status ......................................................................10

IV. THE FILING DATE VALUE IS THE ONLY RELEVANT DATE FOR VALUATION .......................................................................12

CONCLUSION ..............................................................................................................................14

# **TABLE OF AUTHORITIES**

**CASES:**                                                                                                                                      **PAGE**

*Arford v. Miller* (*In re Stratton Oakmont*), 239 B.R. 698 (S.D.N.Y. 1999),
    *aff'd on district ct. op.,* 210 F.3d 420 (2d Cir. 2000)..........................................................11

*In re A.R. Baron Co.*, 226 B.R. 790 (Bankr. S.D.N.Y. 1998)........................................................11

*Donell v. Kowell,* 533 F.3d 762 (9th Cir.)*, cert. den.*, 555 U.S. 1047 (2008)................................10

*Ferris, Baker Watts, Inc. v. Stephenson* (*In re MJK Clearing, Inc.,*), 286 B.R. 109,
    (Bankr. D. Minn. 2002)*, aff'd,* 2003 WL 1824937 (D. Minn. Apr. 07, 2003),
    *aff'd,* 371 F.3d 397 (8th Cir. 2004)................................................................................ 6-7

*Gold v. Hyman*, [1974-75 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,043
    (S.D.N.Y. 1975)..................................................................................................................11

*Hill v. Spencer Sav. & Loan Ass'n* (*In re Bevill, Bresler & Schulman, Inc.*), 83 B.R. 880
    (D.N.J. 1988).................................................................................................................8, 13

*Horwitz v. Sheldon (In re Donald Sheldon & Co.),* 148 B.R. 385 (Bankr. S.D.N.Y. 1992) ...........7

*In re Klein, Maus & Shire, Inc.*, 301 B.R. 408 (Bankr. S.D.N.Y. 2003) .......................................11

*In the Matter of Lewellyn*, 26 B.R. 246 (Bankr. S.D. Iowa 1982) ................................................11

*Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 218 B.R. 689
    (Bankr. S.D.N.Y. 1998) ......................................................................................................6

*Picard v. Flinn Invs., LLC*, 463 B. R. 280 (S.D.N.Y. 2011)...........................................................13

*Rosenman Family, LLC v. Picard*, 395 F. App'x 766 (2d Cir. 2010)..............................................6

*SEC v. Albert & Maguire Sec. Co., Inc.*, 560 F.2d 569 (3d Cir. 1977) ................................. 5, 9-10

# TABLE OF AUTHORITIES

**CASES (con't):**                                                                                                              **PAGE**

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,* 476 B.R. 715 (S.D.N.Y),
    *supplemented* (May 15, 2012)................................................................................................5

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,* 499 B.R. 416 (S.D.N.Y. 2013),
    *certification denied*, -- F. Supp. 2d --, 2013 WL 6301085 (S.D.N.Y. 2013).................9, 12

*SIPC v. Christian-Paine & Co.*, 755 F.2d 359 (3d. Cir. 1985)......................................................10

*In re Stratton Oakmont, Inc.*, 257 B.R. 644 (Bankr. S.D.N.Y. 2001), *rev'd on other grounds*,
    2003 WL 22698876 (S.D.N.Y. Nov. 14, 2003)..............................................................11


**STATUTES:**                                                                                                                   **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78eee(d)..........................................................................................................................................4
78fff(a)(4) ................................................................................................................................9, 11
78fff(b)....................................................................................................................................5, 9, 12
78fff(e)..........................................................................................................................................11
78fff-1(a)....................................................................................................................................4, 9
78fff-2(a)(3)..................................................................................................................................11
78fff-2(c)(1)............................................................................................................................5, 6, 12
78fff-2(c)(3)............................................................................................................................ *passim*
78*lll*(4)........................................................................................................................................6-7
78*lll*(7)..........................................................................................................................................13

United States Bankruptcy Code, as amended, 11 U.S.C. §

102(3).............................................................................................................................................5
546(e) .............................................................................................................................................5
548(a)(1) ...............................................................................................................................7, 9, 13
548(c).............................................................................................................................................12
548(d)(2)(A)...................................................................................................................................8
726................................................................................................................................................12


**TREATISE:**

*Collier on Bankruptcy*, ¶ 60.72 (14th ed. 1977) ............................................................................8

Certain defendants ("Defendants") in avoidance actions brought against them by Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and Bernard L. Madoff ("Madoff"), have moved to intervene ("Motion") in order to be heard on an argument that they failed to make in their pending motions to dismiss or, having filed no motion to dismiss, to be heard on an argument that they raised or expect to raise as an affirmative defense in their answers to the complaints. In opposition to the Motion, the Trustee has filed a limited objection in which the Securities Investor Protection Corporation ("SIPC") joins. The Defendants have included with their Motion an Intervenors' Memorandum on the Limits of Trustee Standing to Recover Customer Property ("Intervenors' Memorandum"). In the event leave to intervene is granted, SIPC submits this memorandum of law in response to the Intervenors' Memorandum.[2]

## ARGUMENT

### I. ASIDE FROM LACKING MERIT IN ANY EVENT, DEFENDANTS' ARGUMENT AT THIS JUNCTURE IS AT BEST PREMATURE AND AT WORST, ASSUMES A RECOVERY THAT MAY NEVER OCCUR

Defendants' argument lacks merit and their position should be rejected. As the Trustee states, he does not have sufficient property to satisfy customer claims in full. *See Opposition to the Becker & Poliakoff LLP Motions to Dismiss,* dated January 17, 2014 ("SIPC Opposition to B&P Motions"), Adv. Pro. No. 10-04380, ECF No. 32, at 7; and *Motion for an Order Approving Fourth Allocation of Property to the Fund of Customer Property and Authorizing Fourth Interim*

---

[1] For convenience, references to provisions of SIPA shall omit "15 U.S.C."

[2] Under SIPA section 78eee(d), SIPC is "a party in interest as to all matters arising in a liquidation proceeding, with the right to be heard on all such matters…"

4

*Distribution to Customers,* dated March 25, 2014, ECF 6024 ("Fourth Allocation Motion"), at ¶ 32. For reasons previously discussed, monies forfeited to the Government and waiting to be distributed outside of the SIPA priority scheme cannot be included within any measurement of customer property. *See* SIPC Opposition to B&P Motions, at 7.

At worst, the issue is moot if the Trustee never achieves a 100% recovery of customer property.

## II. THE TRUSTEE HAS THE SAME AUTHORITY TO BRING AVOIDANCE ACTIONS AS A TRUSTEE UNDER THE BANKRUPTCY CODE

Under SIPA section 78fff(b), chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code (title 11 of the United States Code), to the extent consistent with SIPA, apply to a SIPA liquidation. The SIPA proceeding is to be "conducted in accordance with," and "as though it were being conducted under" the aforementioned sections of the Bankruptcy Code unless inconsistent with SIPA. In addition to ignoring this provision, Defendants ignore SIPA section 78fff-1(a) which explicitly vests the trustee "with the same powers" as a trustee under title 11, "including the same rights to avoid preferences." The use of the term "including" is inclusive, not exclusive, and thus has been read to reference the power to bring not just preference actions, but all of the avoidance actions permitted under chapter 5 of the Bankruptcy Code. *See, e.g.*, Bankruptcy Code section 102(3) (the term "'includes' and 'including' are not limiting"); *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 722 n.7 (S.D.N.Y. 2012), *supplemented* (May 15, 2012) (noting that SIPA section 78fff-1(a) also makes applicable provisions of the Bankruptcy Code that limit a trustee's avoidance powers, such as section 546(e)). Relying upon these provisions for support, courts have held that a SIPA Trustee's rights include the same rights that a trustee in bankruptcy has, including the right to bring avoidance actions. *See, e.g.*, *SEC v. Albert & Maguire Sec. Co., Inc.*, 560 F.2d 569, 574 (3d Cir. 1977);

5

*Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 218 B.R. 689, 702 (Bankr. S.D.N.Y. 1998).

### III. SIPA SECTION 78fff-2(c)(3) DOES NOT LIMIT THE AUTHORITY OF THE TRUSTEE TO BRING THE AVOIDANCE ACTIONS AGAINST THE DEFENDANTS

#### A. SIPA Section 78fff-2(c)(3) Broadens Rather Than Limits the Avoidance Powers of the Trustee

Even assuming, *arguendo*, that the Trustee could satisfy all customers in full, SIPA section 78fff-2(c)(3) does not deprive the Trustee of standing to sue the Defendants in avoidance for their receipt of fictitious profits. Defendants take great pains to conform their analysis of the language of SIPA section 78fff-2(c)(3) to accord with their objective. Defendants, however, ignore the purposes of SIPA section 78fff-2(c)(3) and of SIPA as a whole.

The provision at issue, SIPA section 78fff-2(c)(3), is a subsection of 78fff-2, titled "Special Provisions of a Liquidation Proceeding," and of subsection (c), titled "Customer Related Property." Section 78fff-(2)(c) concerns just that: customer property. "Customer Property" is defined in SIPA section 78*lll*(4) to mean "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." *See Rosenman Family, LLC v. Picard*, 395 F. App'x 766, 769 (2d Cir. 2010) (holding that a deposit with BLMIS constitutes customer property).

The definition of customer property is significant inasmuch as SIPA accords to customers a priority status in the distribution of such property. *See* SIPA § 78fff-2(c)(1). Because the objective of SIPA is customer protection, the concept of "customer property" in SIPA section 78*lll*(4) is expansive and is designed to ensure that customer property is funded as fully as possible and for priority distribution to customers. *See Ferris, Baker Watts, Inc. v. Stephenson*

6

(*In re MJK Clearing, Inc*.,), 286 B.R. 109, 132-133 (Bankr. D. Minn. 2002), *aff'd,* 2003 WL 1824937 (D. Minn. Apr. 07, 2003), *aff'd,* 2003 WL 1824937 (D. Minn. Apr. 07, 2003), *aff'd*, 371 F.3d 397 (8th Cir. 2004); *Horwitz v. Sheldon* (*In re Donald Sheldon & Co*.), 148 B.R. 385, 388-390 (Bankr. S.D.N.Y. 1992); *and* Fourth Allocation Motion, at section III.A.

SIPA section 78fff-2(c)(3) has essentially two parts, each serving a separate specific purpose. The first part of SIPA section 78fff-2(c)(3) is as follows:

> Whenever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11. Such recovered property shall be treated as customer property.

The purpose of this first part of SIPA section 78fff-2(c)(3) is to ensure that customer property, even if unlawfully converted and/or transferred, retains its "customer property" status for the purpose of distribution. For example, if securities belonging to a customer are transferred to a third party, and that transfer constitutes a fraudulent transfer under section 548(a)(1)(A) of the Bankruptcy Code, SIPA section 78fff-2(c)(3) makes clear that those securities constitute "customer property" in the SIPA liquidation to be distributed in accordance with SIPA section 78fff-2(c)(1).

The second part of SIPA section 78fff-2(c)(3) is as follows:

> For purposes of such recovery, the property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding.

This second part of SIPA section 78fff-2(c)(3) essentially treats the cash or securities so transferred as if they were owned by the debtor prior to transfer, and, if the transfer was for the

7

benefit of a customer, treats the customer as if he was a creditor. These legal fictions permit the Trustee to fit the transfers into the provisions of the avoidance sections of the Bankruptcy Code, notwithstanding any different characterization of the nature of the property and the status of the transferee that would occur under otherwise applicable state or other law. *See Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 83 B.R. 880, 893 (D.N.J. 1988) ("To promote equality of distribution to similarly situated claimants, the trustee is permitted, under 15 U.S.C. sec. 78fff-2(c)(3), to recover securities that would have been part of the fund of customer property but for a prior transfer to a customer."). *See also Collier on Bankruptcy*, ¶ 60.72 at 1159-1161 (14th ed. 1977) (discussing the different characterizations of the broker/customer relationship under state law). Indeed, counsel for defendants in the Lowrey and the United Congregations Mesora matters, who filed the Intervenors' Memorandum, agrees, as shown by the following exchange at a hearing before the District Court on antecedent debt under Bankruptcy Code section 548(d)(2)(A):

> THE COURT: … [Mr. Kirby] says all that means is that if there is a state law that would deem the property of the debtor to bear, it's the property of the creditor so far as that state law is concerned for these purposes.
>
> MS. ATTARD: I think it's the other way around, because there are state laws which say that to recover it has to be property of the debtor and it has to be from a creditor. And here it's taking a customer and treating a customer as a creditor so that the trustee can recover from the creditor.
>
> THE COURT: I see your point. OK.
>
> MR. KIRBY: I agree with that reading.

8

*See* Transcript dated August 20, 2012, *In re Madoff Securities,* Case No. 12-mc-115 (S.D.N.Y.) at 48, attached as Exhibit A to the Declaration of Kevin H. Bell, dated March 28, 2014.[3]

Importantly, SIPA section 78fff-2(c)(3), rather than being a limiting provision, reinforces the trustee's authority to sue in avoidance where the recovery of customer property is at stake. It does not limit the authority otherwise granted to a trustee under SIPA section 78fff(b), which makes chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code, to the extent non inconsistent with SIPA, applicable to a SIPA liquidation, or under SIPA section 78fff-1(a), which explicitly vests the trustee "with the same powers" as a trustee under title 11, "including the same rights to avoid preferences."

Yet, instead of reading SIPA in a manner that gives effect to each of its provisions, Defendants construe SIPA section 78fff-2(c)(3) in a way that nullifies or weakens the other sections of SIPA, limits the recovery by customers, and undermines the Trustee's ability to perform the functions of a trustee in a title 11 case in order to liquidate the business of the debtor, as he must, under SIPA section 78fff(a)(4). Instead of recognizing that a SIPA trustee has as much, if not more, authority as a trustee under title 11, the Defendants constrict and limit his avoidance and recovery powers to such customer property as is necessary to make customers whole. The fact is, however, that a SIPA trustee has "the same powers and title with respect to the debtor" and its property as a trustee in a case under title 11, as well as powers that enable him to perform the special functions of a SIPA liquidation. *See* SIPA §78fff-1(a); *SEC v. Albert &*

---

[3] In its decision on antecedent debt, the United States District Court for the Southern District of New York ("District Court") examined SIPA section 78fff-2(c)(3) and held that "that provision merely gives the Trustee the authority to rely on section 548(a)(1)(A). It does not necessarily imply that section 548(c)'s affirmative defense must apply in the same way to the customer property estate as it would to the general estate." *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 423-24 (S.D.N.Y. 2013) ("Antecedent Debt Opinion"), *certification denied*, -- F. Supp. 2d --, 2013 WL 6301085 (S.D.N.Y. 2013).

9

*Maguire Sec. Co., Inc.*, 560 F.2d 569, 574 (3d Cir. 1977) ("'Thus, the SIPA trustee, upon order of the court, will have the combined powers of a trustee in ordinary bankruptcy, a Chapter X trustee and a federal equity receiver'" (quoting 3A *Collier On Bankruptcy* ¶ 60.85(2));[4] *SIPC v. Christian-Paine & Co.*, 755 F.2d 359, 361 (3d Cir. 1985). These powers enable him to maximize recoveries in order to satisfy the claims of customers, and the claims of general creditors including the general creditor claims of investors for damages.

### B. Defendants' Claims for Fictitious Profits Cannot Be Paid from Customer Property. By Limiting the Avoidance Powers of the Trustee, the Defendants Confer Upon Themselves a Priority Status

In the Trustee's complaints in the Avoidance Actions, Defendants are alleged to have received distributions of fictitious profits – "unlawfully converted" customer property. To the extent of the fictitious profits received, they have *no valid customer claim* against the fund of customer property. Any such claim, if viable, for fictitious profits or damages, can only be a general creditor claim.

By arguing that the Trustee cannot pursue recovery if the Fund of Customer Property is sufficient to make customers whole, the Defendants ignore that like them, other investors were damaged by the BLMIS misrepresentations that fictitious profits existed in their accounts. Unlike the Defendants, however, these investors, having failed to withdraw their fictitious profits, are in a worse position. The Defendants have the money that was stolen from investors, but if the Defendants' position is correct, these investors are without remedy or recourse because the Trustee cannot recover the fictitious profits that were paid to Defendants and others. The result is that the Defendants have the principal that they deposited with BLMIS, *and* they keep

---

[4] It is well established that in a non-SIPA liquidation, a bankruptcy trustee would have the authority to avoid transfers of fictitious profits in a Ponzi scheme. *See, e.g.*, *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir.) (holding that in a non-SIPA Ponzi scheme case, "all payments of fictitious profits are avoidable as fraudulent transfers") *cert den.*, 555 U.S. 1047 (2008).

10

the fictitious profit comprised of other investors' money. To the detriment of other customers, the Defendants would be general creditors, but first among equals, faring better than customers and other general creditors.

Claims for damages are general creditor claims to be satisfied from the debtor's general estate. *See Arford v. Miller (In re Stratton Oakmont )*, 239 B.R. 698, 702 (S.D.N.Y. 1999), *aff'd on district ct. op.*, 210 F.3d 420 (2d Cir. 2000) (claims arising from a broker's failure to execute a sell order are not "customer" claims entitled to priority under SIPA); *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 421 (Bankr. S.D.N.Y. 2003) (finding that claims "for damages resulting from a broker's misrepresentations, fraud or breach of contract are not protected" as customer claims because such claims make the claimants only "general creditors"); *In re A.R. Baron Co.*, 226 B.R. 790, 796 (Bankr. S.D.N.Y. 1998) (denying "customer" status where claimant alleged that the debtor failed to execute the sales as instructed and holding that claimant had a general unsecured claim for breach of contract).

Defendants ignore that the SIPA proceeding looks not only to the disposition of claims of customers, but also to the claims of general creditors. *See In re Stratton Oakmont, Inc.*, 257 B.R. 644, 650 (Bankr. S.D.N.Y. 2001), *rev'd on other grounds*, 2003 WL 22698876 (S.D.N.Y. Nov. 14, 2003); *In the Matter of Lewellyn*, 26 B.R. 246, 253 (Bankr. S.D. Iowa 1982); *Gold v. Hyman*, [1974-75 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,043 at 97,657-58 (S.D.N.Y. 1975). *See also* SIPA §78fff-2(a)(3) (referring to the filing of claims by "a customer or other creditor of the debtor"); §78fff(e) (general estate to be distributed in accordance with 11 U.S.C. § 726); and §78fff(a)(4) (a purpose of the SIPA proceeding is to liquidate the business of the debtor). To the same extent as a trustee in a case under title 11, the SIPA Trustee can avoid transfers in order to recover property for distribution to general creditors. The fact that customer property may be the

11

subject of avoidance, even if all customer claims have been satisfied, is no impediment to recovery. Under SIPA section 78fff-2(c)(1), excess customer property "become[s] part of the general estate of the debtor." Because the nature of the property transferred is determined as of the filing date, as discussed below, even if the recovered property is sufficient to satisfy all customers and excess customer property remains, such property becomes part of the general estate to be shared, *pro rata*, by general creditors in the order provided in section 726 of the Bankruptcy Code. Customers who received fictitious profits thus are subject to having the transfers of such amounts returned to the estate for allocation to the fund of customer property or, if customers have been fully satisfied, for allocation to the general estate. In that circumstance, all investors, not just the preferred few, share in the payment of their damages. See *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 424 (S.D.N.Y. 2013) ("Thus, SIPA makes clear that net-equity claims for customer property come first out of this separate estate [*i.e*., the fund of customer property]; to the extent that payment of defendants' state and federal law claims would discharge an antecedent debt, that debt runs against Madoff Securities' general estate, not the customer property estate, and therefore cannot be the basis of the retention of customer property under section 548(c)") *certification denied*, -- F. Supp. 2d --, 2013 WL 6301085 (S.D.N.Y. 2013).

## IV.   THE FILING DATE VALUE IS THE ONLY RELEVANT DATE FOR VALUATION

The Defendants' construction of section 78fff-2(c)(3) leads to the absurd result of requiring the Trustee and this Court to reassess constantly the current (if not daily) amount of customer property versus current value of unpaid claims to determine whether the Trustee still has the statutory authority to pursue the avoidance actions that he unquestionably had when instituting the actions. The District Court, in this liquidation proceeding, has recognized that "it

12

has long been held that 'the fund of customer property shall be valued for the purposes of 15 U.S.C. § 78fff-2(c)(3) as of [the filing date].'" *Picard v. Flinn Invs., LLC*, 463 B.R. 280, 284 (S.D.N.Y. 2011) (quoting *Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.*), 83 B.R. 880, 898 (D.N.J. 1988)).[5] "[A]ny different interpretation of § 78fff-2(c)(3) would cause the Trustee's powers to fluctuate, leading to a 'logistical nightmare.' The Trustee might file a meritorious claim, but find himself unable to pursue it later for reasons wholly unrelated to the claim itself." *Id.* (quoting *In re Bevill, Bresler & Schulman*, 83 B.R. at 893). In *Bevill, Bresler*, the court recognized that in a SIPA proceeding, the broker's affairs are frozen as of the filing date for many provisions, including the date of valuation of a customer's net equity, and thus it is congruous for any valuation required by SIPA section 78fff-2(c)(3) to be made as of the filing date as well. 83 B.R. at 892.

The Trustee undoubtedly had the authority to bring the instant avoidance actions on the filing date in the liquidation proceeding, as the Fund of Customer Property could not cover the value of claims listed as of the filing date, or even as of the date that he commenced the avoidance actions. Indeed, as noted in the Trustee's recently filed Fourth Allocation Motion, the Fund of Customer Property still does not have enough money to cover those claims of customers seeking back their principal. Under any circumstance, therefore, Defendants' arguments are moot because, even accepting as true their assertion that the Fund of Customer Property is

---

[5] The avoidance provisions at issue refer to the filing date of the petition. *See, e.g.,* 11 U.S.C. §548(a)(1). Under SIPA section 78fff(b), a reference in title 11 "to the date of the filing of the petition shall be deemed to be a reference to the filing date under [SIPA]." Under SIPA, the "filing date" is defined at section 78*lll*(7).

Certain counsel on the Motion had moved on behalf of their clients to withdraw the reference to the District Court and thus participated in the briefing of the *Flinn* case. *See, e.g.,* Docket Nos. 11-cv-4936, 11-cv-4959 (S.D.N.Y.). The District Court denied the motion to withdraw the reference on the issue of SIPA section 78fff-2(c)(3) because "only simple application of SIPA is required to resolve the issue." 463 B.R. at 283.

13

sufficient to cover all claims, the Trustee has the same authority now as he did when the BLMIS liquidation commenced and when the Trustee commenced the avoidance actions.

## **CONCLUSION**

For all of the aforementioned reasons, the Defendants' Motions to Dismiss, based on the assertion that the Trustee lacks standing, should be denied.

Dated: Washington, D.C.
March 28, 2014

Respectfully submitted,

JOSEPHINE WANG
General Counsel

 */s/ Kevin H. Bell*
KEVIN H. BELL
Senior Associate General Counsel for
 Dispute Resolution

LAUREN T. ATTARD
Assistant General Counsel

SECURITIES INVESTOR
  PROTECTION CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: lattard@sipc.org

14