Richard A. Kirby                                      Hearing Date: To Be Determined
Laura K. Clinton                                     Objection Date:  To Be Determined
Martha Rodriguez Lopez
K&L GATES LLP
1601 K Street
Washington D.C. 20006
(202) 778-9000 (Telephone)
(202) 778-9100 (Facsimile)


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

............................................................... x
SECURITIES INVESTOR PROTECTION                  :
CORPORATION,                                     :
                                                :
                           Plaintiff,           :   Adv. Pro. No. 08-1789 (SMB)
            v.                                   :
                                                :   SIPA LIQUIDATION
BERNARD L. MADOFF INVESTMENT                     :
SECURITIES LLC,                                  :   (substantively consolidated)
                                                :
                           Defendant.            :
............................................................... x
In re:                                          :
                                                :
BERNARD L. MADOFF,                              :
                                                :
                           Debtor.              :
............................................................... x
IRVING H. PICARD, Trustee for the Liquidation of :
Bernard L. Madoff Investment Securities LLC,      :
                                                :
                           Plaintiff,           :
            v.                                   :   Adv. Pro. No. 10-04363 (SMB)
                                                :
SCHIFF FAMILY HOLDINGS NEVADA                   :
LIMITED PARTNERSHIP; et al.,                    :
                                                :
                           Defendants.          :
............................................................... x

IRVING H. PICARD, Trustee for the Liquidation of    :
Bernard L. Madoff Investment Securities LLC,
                                                    :
                                                    :
                    Plaintiff,                      :
         v.                                         :          Adv. Pro. No. 10-04718 (SMB)
                                                    :
THE JORDAN H. KART REVOCABLE TRUST; et    :
al.,                                                :
                                                    :
                    Defendants.                     :
....................................................................   x


**INTERVENORS' REPLY MEMORANDUM ON THE LIMITS OF TRUSTEE**
**<u>STANDING TO RECOVER CUSTOMER PROPERTY</u>**

## TABLE OF CONTENTS

Page

I.      REPLY ................................................................................................................1

II.     ARGUMENT ......................................................................................................1

        A.      The Plain Language of SIPA Section 8(c)(3) is Clear and Unambiguous...............1

                1.      Respondents Fail to Address the Statutory Language. ...........................1

                2.      The Trustee's Reliance on BBS and Flinn is Misplaced. .........................4

        B.      Respondents Concede that the Trustee Must Rely on SIPA Section 8(c)(3)
                to Avoid Transfers of Customer Property, But Then Ask the Court to
                Ignore the Statute's Structure and Purpose. ...........................................5

        C.      There Are No Practical Administrative Challenges Warranting the
                Disregard of SIPA Section 8(c)(3)'s Requirement that the Trustee Prove
                the Insufficiency of Customer Property at the Time of Recovery. ......................10

                1.      Only One Recovery Hearing Would be Necessary at the Time of
                        Recovery for All Avoidance Defendants Potentially Liable to the
                        Trustee for Recovery of the Transfers. ...................................10

                2.      The MVF Funds to be Distributed to Customers Either Qualify as
                        "Customer Property" or They Reduce the Total Quantity of
                        Allowed Claims—Either Way the MVF Significantly Impacts the
                        SIPA Section 8(c)(3) Calculation. .........................................12

                3.      Potential Variability in the Amount of Customer Property or
                        Allowed Claims Supports an Analysis of the Sufficiency of
                        Customer Property at a Later Recovery Hearing. ...................................15

III.    CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Asia Global Crossing, Ltd.*,
    344 B.R. 247 (Bankr. S.D.N.Y. 2006) ..................................................................9

*In re Bevill, Bresler & Schulman, Inc.*,
    83 B.R. 880 (D.N.J. 1988) ..............................................................................4, 5

*Biediger v. Quinnipiac Univ.*,
    691 F.3d 85 (2d Cir. 2012) ...............................................................................5

*Burrage v. United States*,
    134 S. Ct. 881 (2014) .......................................................................................1

*Carr v. United States*,
    560 U.S. 448 (2010) ..........................................................................................2

*Community for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989) ..........................................................................................1

*Connecticut Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ..........................................................................................1

*Donell v. Kowell*,
    533 F.3d 762 (9th Cir. 2008) ...........................................................................7

*In re Granite Partners, L.P.*,
    208 B.R. 332 (Bankr. S.D.N.Y. 1997) ...........................................................1, 4

*In re Hawker Beechcraft, Inc.*,
    493 B.R. 696 (Bankr. S.D.N.Y. 2013), *leave to appeal granted*, 13 MISC. 373
    PKC, 2013 WL 6673607 (S.D.N.Y. Dec. 18, 2013) .........................................2

*In re J.C. Winship Co.*,
    120 F. 93, 96 (7th Cir. 1903) ...........................................................................8

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) .........................................................................12

*Keene Corp. v. United States*,
    508 U.S. 200 (1993) ..........................................................................................3

*Lamie v. United States Trustee*,
    540 U.S. 526 (2004) ..........................................................................................3

*Law v. Siegel*,
134 S. Ct. 1188 (2014)...................................................................................2

*Picard v. Flinn, Inv. LLC*,
463 B.R. 280 (S.D.N.Y. 2011)........................................................................4

*Powell v. McCormack*,
395 U.S. 486 (1969).......................................................................................17

*Sherley v. Sebelius*,
644 F.3d 388 (D.C. Cir. 2011) ....................................................................2, 4

*United Savs. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988).......................................................................................3

*United States v. Anderson*,
15 F.3d 278 (2d Cir. 1994).............................................................................9

*United States v. Ghailani*,
761 F. Supp. 2d 167 (S.D.N.Y. 2011)............................................................5

*In re Washington Mfg. Co.*,
118 B.R. 555 (Bankr. M.D. Tenn. 1990) .....................................................10

*Whiteford Plastics Co. v. Chase Nat'l Bank of New York City*,
179 F.2d 582, 584 (2d Cir. 1950)...................................................................8

**Statutes**

1 U.S.C. § 1...................................................................................................2

15 U.S.C. § 78fff-2(c)(3) ...............................................................................1

15 U.S.C. § 78*lll*(7)........................................................................................3

**Other Authorities**

Fed. R. Bankr. P. 7042 .................................................................................10

Fed. R. Civ. P. 42 .........................................................................................10

Fed. R. Civ. P. 42(b) ...............................................................................10, 11

## I.    REPLY

Intervenors respectfully submit this reply brief on the limits of the Trustee's power to recover transfers of customer property under 15 U.S.C. § 78fff-2(c)(3) ("SIPA Section 8(c)(3)").

## II.    ARGUMENT

### A.    The Plain Language of SIPA Section 8(c)(3) is Clear and Unambiguous.

"The starting point for [the] interpretation of a statute is always its language." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989); *accord Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last:  'judicial inquiry is complete.'"); *In re Granite Partners, L.P.*, 208 B.R. 332, 338-39 (Bankr. S.D.N.Y. 1997) (Bernstein, J.) ("The first principle of statutory construction is that a statute clear and unambiguous on its face should be enforced according to its terms."); *see also Burrage v. United States*, 134 S. Ct. 881, 892 (2014) ("The role of this Court is to apply the statute as it is written—even if we think some other approach might accor[d] with good policy.") (internal quotations omitted) (alteration in original).  SIPA Section 8(c)(3) is clear and establishes limitations on the Trustee's power to avoid and recover customer property that require consideration of the facts and circumstances as the SIPA liquidation case progresses, instead of an inflexible determination measured only as of the filing date.

#### 1.    Respondents Fail to Address the Statutory Language.

The response briefs largely fail to address the language of SIPA Section 8(c)(3).  In fact, SIPC dispenses with any analysis of the statutory text whatsoever, impugning Intervenors' "objective" without disputing their interpretation of the text and turning to SIPC's view of the

equities rather than the dictates of the plain language. *See* SIPC Resp. at 6 ("Defendants take great pains to conform their analysis of the language of SIPA section 78fff-2(c)(3) to accord with their objective. Defendants, however, ignore the purposes of SIPA section 78fff-2(c)(3) and of SIPA as a whole."). Yet, appeals to public policy to resolve questions of statutory interpretation are misplaced where, as here, the statutory language is unambiguous. *See Law v. Siegel,* 134 S. Ct. 1188 (2014); *In re Hawker Beechcraft, Inc.*, 493 B.R. 696, 703 (Bankr. S.D.N.Y. 2013) (Bernstein, J.) ("If the statute's language is plain, the analysis ends unless its literal application produces an absurd result."). Likewise, the Trustee devotes barely a page of his response to a cursory discussion of the statutory language, and each of his arguments is easily rebutted.

First, as a statutorily-mandated rule of construction, Congress' use of the present tense in SIPA Section 8(c)(3) belies the Trustee's notion that the statute can "be read to mean that a trustee may recover transferred property 'whenever' there is a SIPA liquidation that satisfies the section's criteria . . . ." *See* Trustee Resp. at 8. To the contrary, the phrase "[w]henever customer property *is* not sufficient" necessarily means that the Trustee may not recover property from a defendant on the basis that customer property *was* insufficient only at the outset of the SIPA liquidation. *See* SIPA Section 8(c)(3) (emphasis added); 1 U.S.C. § 1 ("[W]ords used in the present tense include the future as well as the present."). As Intervenors' previously-cited authorities confirm, "[t]he use of the present tense in a statute strongly suggests it does not extend to past actions." *Sherley v. Sebelius*, 644 F.3d 388, 394 (D.C. Cir. 2011); *Carr v. United States*, 560 U.S. 448, 438 (2010) ("[T]he present tense generally does not include the past").

Under the Trustee's logic, any time an insolvent broker-dealer holds insufficient customer property on the filing date to satisfy anticipated customer claims, this bare showing allows the trustee to bring an unlimited number of avoidance actions to recover all transfers of

customer property. But what happens if, a week after the filing date, the trustee recovers a huge asset for the customer property pool that is sufficient to satisfy all anticipated SIPA Section 8(c)(1) claims? There is no good policy or statutory basis to argue that the trustee can then bring avoidance lawsuits to recover customer property for the benefit of general creditors and (potentially) equity owners. The sufficiency of customer property cannot be mechanically fixed at the petition date. The Court is directed by the statute to assess the state of affairs at the relevant time—when recovery is actually sought.

Second, the Trustee misconstrues the significance of Congress' decision not to refer to the "filing date" in SIPA Section 8(c)(3), while the term appears in many other provisions of SIPA. "Filing date" is a defined term in SIPA. 15 U.S.C. § 78*lll*(7). While it is true that particular statutes should be viewed in light of the entire statutory scheme, a holistic view of SIPA does not support the Trustee's position. *See United Savs. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). The numerous references to the filing date throughout the statutory scheme indicate that the absence of such a reference in SIPA Section 8(c)(3) is significant. In misinterpreting the omission of the term "filing date" from SIPA Section 8(c)(3), the Trustee again ignores controlling principles of statutory construction. *See Lamie v. United States Trustee*, 540 U.S. 526, 537, 542 (2004) (courts should not add an "absent word" to a statute, especially when there is a "plain, non-absurd reading in view"); *Keene Corp. v. United States,* 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); Intervenors' Opening Br. at 8 (collecting authorities).

Contrary to the Trustee's contentions, SIPA Section 8(c)(3) is not ambiguous, much less silent, as to the timing of insufficiency relative to recovery. *See* Trustee Resp. at 6. The use of the present tense in the phrase "[w]henever customer property *is* not sufficient" reflects a legislative recognition that the size of the customer property estate and the claims to be paid are inextricably tied, and subject to contemporaneous evaluation at the time of recovery. *See* SIPA Section 8(c)(3); *Sherley*, 644 F.3d at 394. The statutory term "whenever" compels the same conclusion. Because the statutory language is clear and unambiguous, the analysis is complete, no matter how compelling policy arguments in favor of a different interpretation may or may not be. *See In re Granite Partners, LP*, 208 B.R. at 338-40.

**2.     The Trustee's Reliance on *BBS* and *Flinn* is Misplaced.**

The Trustee's continued reliance on *In re Bevill, Bresler & Schulman, Inc.*, 83 B.R. 880 (D.N.J. 1988) and *Picard v. Flinn*, *Inv. LLC*, 463 B.R. 280 (S.D.N.Y. 2011), is also misplaced. The New Jersey District Court's holding in *BBS* rested exclusively on policy concerns. *See* 83 B.R. at 892. The court only "consider[ed] the language of the statute," *see* Trustee Resp. at 6, insofar as it summarily concluded that the statute was silent as to the timing of the sufficiency determination. *See BBS*, 83 B.R. at 892. If the court had engaged in a more rigorous parsing of the statutory text, however, it would have reached the inevitable conclusion that the statute is not silent on the issue of timing, but rather is clear and unambiguous. By resting only on "the overall purposes of SIPA" instead of engaging in appropriate statutory construction, *BBS* was wrongly decided. *See id.* Moreover, because the court acknowledged that the timing of the insufficiency determination would have little, if any, impact on the outcome of that particular case, the *BBS* court's discussion of this issue was *dicta*, at best. *See id.* at 891. Finally, *BBS* is a New Jersey District Court case and, as such, is not binding on this Court. For all of these reasons, *BBS* has

-4-

no persuasive value. *See United States v. Ghailani*, 761 F. Supp. 2d 167, 192-93 (S.D.N.Y. 2011) (rejecting a party's cited cases as "neither binding nor persuasive" where cases addressed relevant issue only in *dicta* and were "inconsistent with binding authority").

Nor must this Court follow *Picard v. Flinn*. As the Trustee concedes, *Flinn* was not a decision on the merits, as it only involved the question of whether to withdraw the reference on certain issues. *See* Trustee Resp. at 7. As such, it is no more binding on this Court than the *BBS* decision. *Cf. Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 107 (2d Cir. 2012) ("conclusions of law made by a court granting a preliminary injunction are not binding . . . and do not preclude reexamination of the merits at a subsequent trial") (internal citations and quotation marks omitted). Moreover, to the limited extent that it purports to speak to the standing issue, the *Flinn* decision, as well, rests on only a brief analysis of the operative text and is at odds with the plain language of SIPA Section 8(c)(3). Accordingly it has no persuasive value.

**B.      Respondents Concede that the Trustee Must Rely on SIPA Section 8(c)(3) to Avoid Transfers of Customer Property, But Then Ask the Court to Ignore the Statute's Structure and Purpose.**

SIPA Section 8(c)(3) modifies a SIPA Trustee's powers to avoid transfers compared to those of a bankruptcy trustee[1] by creating a fictional debtor interest in transferred customer property, solely for the narrow purpose of recovering customer property to satisfy customer net equity claims and specific SIPC advances.[2] Respondents concede that SIPA Section 8(c)(3) is

---

[1] SIPC's charge that Intervenors seek to abrogate the Trustee's general avoidance powers, *e.g.*, SIPC Resp. at 5-6, is misplaced. To the contrary, Intervenors recognize that SIPA Section 8(c)(3) expands the Trustee's traditional avoidance powers to enable him to recover customer property in which the debtor otherwise has no direct interest. This avoidance power, however, is expressly limited by SIPA Section 8(c)(1) and (3).

[2] *See* Section 8(c)(1). The first requirement is inapplicable in this case, because no securities were purchased from SIPC advances for allowed customer claims. Section 8(c)(1)(A).

the Trustee's sole statutory authority for avoiding and recovering transfers of customer property. SIPC Resp. at 7-8; *see generally* Trustee Resp. (failing to identify any other statutory authority). While they embrace the power to avoid transfers, Respondents ask the Court to ignore the clear statutory limitations on its exercise. SIPC Resp. at 7-8; Trustee Resp. at 3-8. This is contrary to the structure and language of SIPA itself and should be rejected.

The controlling clause of SIPA Section 8(c)(3) provides, in relevant part, "[w]henever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), the trustee may recover any property transferred by the debtor. . ." Thus, the avoidance power in SIPA Section 8(c)(3) is specifically tied to SIPA Section 8(c)(1)(A)-(D), which requires the Trustee to allocate customer property held by the estate to four specific purposes, in the following priority of payment:

> (A) first, to SIPC in repayment of advances made by SIPC pursuant to section 78fff-3(c)(1) of this title, to the extent such advances recovered securities which were apportioned to customer property pursuant to section 78fff(d) of this title;

> (B) second, to customers of such debtor, who shall share ratably in such customer property on the basis and to the extent of their respective net equities;

> (C) third, to SIPC as subrogee for the claims of customers;

> (D) fourth, to SIPC in repayment of advances made by SIPC pursuant to section 78fff-3(c)(2) of this title.

If the customer property held by the estate exceeds what is necessary to satisfy these requirements, "[a]ny customer property remaining after allocation in accordance with this paragraph shall become part of the general estate of the debtor." *Id.* Where instead there is a *shortfall* of customer property necessary to satisfy the provisions of SIPA Section 8(c)(1)(A)-(D), SIPA Section 8(c)(3) creates a limited power to recover transfers of customer property *in order to satisfy those four SIPA Section 8(c)(1) claims.*

To enable this recovery, SIPA Section 8(c)(3) creates a fictional broker property interest in the customer property, by providing that "[f]or purposes of such recovery, the property so transferred **shall be deemed to have been the property of the debtor** . . . ."  (emphasis added). As SIPC concedes, this clause is necessary because general bankruptcy avoidance provisions do not empower a trustee to avoid transfers of property in which the debtor had no interest.[3]  *See* SIPC Resp. at 7-8 (SIPA Section 8(c)(3) "treats the [customer] cash or securities so transferred as if they were owned by the debtor prior to transfer . . . [this] legal fiction[] permit[s] the Trustee to fit the transfers into the provisions of the avoidance sections of the Bankruptcy Code . . . .").

Despite this limited enlargement of the Trustee's avoidance powers, Respondents essentially ask the Court to read SIPA Section 8(c)(3) to confer upon the Trustee an unlimited avoidance power that applies to any transfer of customer property.  This contention, however, does not square with the language of the section itself.  Thus, SIPC's impassioned argument that SIPA Section 8(c)(3) cannot limit "the authority otherwise granted to a trustee" under the Bankruptcy Code is irrelevant.  SIPC Resp. at 9.  To the contrary, while SIPA vests the Trustee "with the same powers and title **with respect to the debtor and the property of the debtor** . . . as a trustee in a case under title 11 . . . ," customer property is not a debtor's own property, and the Trustee has no "authority otherwise granted" under either SIPA or the Bankruptcy Code to recover customer property in the absence of SIPA Section 8(c)(3).  *See* SIPA Section 7(a) (emphasis added).  SIPC's invocation of *Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008), for the

---

[3] The Bankruptcy Code provides no other authority for the Trustee to recover debtor transfers of customer property, as the debtor has no property interest in such transfers.  *See* Intervenors' Opening Br. at 3 n.3 (collecting authorities).

proposition that bankruptcy trustees routinely avoid transfers of investment profit in alleged Ponzi scheme cases is equally unavailing.  SIPC Resp. at 10, n. 4.  *Donell* is not a SIPA case and does not address either the treatment of customer property or the operation of Section 8(c)(3).

Likewise, calling the transfers "stolen money" does not change the character of the property as customer property.  Trustee Resp. at 12; *see also* SIPC Resp. at 10-11.  As SIPC repeatedly concedes, the transfers are customer property, regardless of whether they are alleged to be fictitious profits or were unlawfully converted.  SIPC Resp. at 7 (SIPA Section 8(c)(3) "ensure[s] that customer property, even if unlawfully converted and/or transferred, retains its 'customer property' status …"); *id.* at 10 (transfers at issue were "distributions of fictitious profits [constituting] 'unlawfully converted' customer property").  The Trustee can only avoid and recover such transfers to the extent permitted by SIPA Section 8(c)(3).

SIPC conflates the priority system for creditors with the Section 8(c)(3) avoidance power in a manner that neither the Bankruptcy Code nor SIPA support.  The very limited expansion of the Trustee's avoidance powers in SIPA Section 8(c)(3) comports with the long line of cases confirming that bankruptcy trustees have no authority to recover transfers of a third-party's property for the benefit of creditors.  *Cf. Whiteford Plastics Co. v. Chase Nat'l Bank of New York City*, 179 F.2d 582, 584 (2d Cir. 1950) ("'It would be mockery of justice to say that the alleged bankrupt may claim through and in the right of creditors whose debts have been paid and discharged; that he may avoid a transaction, valid as to himself but voidable as to creditors, in the right of non-existing creditors.'") (quoting *In re J.C. Winship Co.*, 120 F. 93, 96 (7th Cir.

1903)).    Contrary to SIPC's contentions, this neither leaves customers without recourse or remedy, nor creates a priority in the avoidance defendants' favor.  SIPC Resp. at 10.[4]

Similarly, Respondents' contentions that the Trustee must be able to avoid and recover transfers of customer property to satisfy claims against the general estate[5] are flatly contrary to the statute.    SIPA Section 8(c)(3) ties the Trustee's power to recover transfers of customer property to the satisfaction of the obligations in Section 8(c)(1)(A)-(D), which is wholly unassociated with the status or satisfaction of general creditor claims.   The reference in that Section to surplus customer property held by the estate becoming part of the general estate after claims are satisfied cannot be read as independent authority to recover customer property in favor of general creditors.   Respondents' assertions that a SIPA trustee may avoid and recover *any* transfer of customer property as long as there are potential general creditor claims outstanding (and maybe even in the absence of any claims at all) impermissibly reads Section 8(c)(1) out of the statute altogether.   *See* SIPC Resp. at 9 (stating that trustee's "authority to sue in avoidance where the recovery of customer property is at stake" is not limited to recovery of "such customer property as is necessary to make customers whole").   Courts will not permit constructions that render portions of a statute meaningless.   *See United States v. Anderson*, 15 F.3d 278, 283 (2d Cir. 1994) (referencing "canon of construction that courts will avoid statutory interpretations that render provisions superfluous"); *In re Asia Global Crossing, Ltd.*, 344 B.R.

---

[4] By way of illustration, where a debtor holds a diamond ring belonging to Customer X but wrongfully transfers it to Customer Y prior to the bankruptcy filing, a trustee would normally have no ability to avoid that transfer and return the ring to Customer X.  Rather, Customer X could seek recovery of the ring directly from Customer Y and make a damages claim against the debtor.  The mere filing of Customer X's damage claim against the estate does not enlarge the trustee's avoidance powers, nor does it grant Customer Y any "priority status" for distributions from the estate.

[5] *See* Trustee Resp. at 7-8; SIPC Resp. at 10-12.

247, 253 n.7 (Bankr. S.D.N.Y. 2006) (Bernstein, J.) (same).  The Trustee's and SIPC's attempts

to expand the Trustee's avoidance powers beyond the textual grant should be rejected.

**C.     There Are No Practical Administrative Challenges Warranting the Disregard of SIPA Section 8(c)(3)'s Requirement that the Trustee Prove the Insufficiency of Customer Property at the Time of Recovery.**

Even if this Court considered policy concerns in interpreting SIPA Section 8(c)(3), the

arguments in the Respondents' briefs are unpersuasive.  The Trustee claims that enforcing the

statute would "grind this liquidation to a halt" and give rise to a separate "mini-trial" for each

avoidance action.  Trustee Resp. at 3, 7.  The Trustee overlooks the Court's ample ability to

administer avoidance actions so as to prevent such an outcome.  Contrary to SIPC's and the

Trustee's assertions, determining the sufficiency of customer property at the time of recovery is

both feasible and consistent with the letter and purpose of SIPA.  Each of their criticisms

misstates the burden imposed on the Trustee by SIPA Section 8(c)(3), and conflates the simple

calculation required to establish the insufficiency of customer property with an imaginary parade

of horribles.

**1.     Only One Recovery Hearing Would be Necessary at the Time of Recovery for All Avoidance Defendants Potentially Liable to the Trustee for Recovery of the Transfers.**

Under Fed. R. Civ. P. 42(b),[6] "[i]f actions before the court involve a common question of

law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions[.]"

*See also In re Washington Mfg. Co.*, 118 B.R. 555, 563 (Bankr. M.D. Tenn. 1990) ("the Court

can consolidate adversary proceedings for trial, just as the Court may conduct separate trials to

the extent required by the facts and law").  Here, the question of whether the Trustee has

sufficient customer property under SIPA Section 8(c)(3) will be common at the time of recovery

---

[6] Fed. R. Civ. P. 42 applies to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7042.

for all avoidance actions where a defendant is found liable.  Because each action will present one common question of fact, there is no need for any more than one consolidated recovery hearing, at the conclusion of the avoidance adversary proceedings.  At that consolidated hearing, the Trustee can seek to prove the insufficiency of customer property available *as of that time* to satisfy all allowed customer net equity claims.  If there is a shortfall, liability may then be apportioned ratably among the liable defendants.  In this way, and consistent with the statutory text, the Trustee's authority to "recover any property transferred" would be limited to the extent that "customer property is not sufficient to pay in full" the authorized claims.

Despite this simple solution, the Trustee suggests that "one thousand" separate "mini-trial[s]" would be necessary—one for each adversary defendant.   Trustee Resp. at 2, 7.  Similarly, SIPC claims that the Trustee would have to "reassess constantly . . . (if not daily)" the amount of customer property in comparison to the amount of authorized claims.  SIPC Resp. at 12.  Not only are the Trustee's and SIPC's objections irrelevant given the plain requirements of SIPA Section 8(c)(3), they disregard this Court's judicial authority to alleviate the supposed harm and realize judicial efficiencies by consolidating the factually common recovery issue into a single proceeding.[7]

Neither the Trustee nor SIPC dispute that Fed. R. Civ. P. 42(b) authorizes this Court to *separate* the question of recovery from the determination regarding each defendant's liability in

---

[7] Although one consolidated recovery hearing would be the most efficient use of resources, the Trustee, perhaps desiring to accelerate the collection of funds, could also request periodic recovery hearings as significant numbers of avoidance actions reach their conclusion.  Even yearly or quarterly hearings would be a far cry from the "logistical nightmare" described by the Trustee and SIPC.  There are estimation analyses well known in field of accounting and well-established in bankruptcy jurisprudence to account for any pending claims or recovery of customer property that might still be in question at the time of one of these periodic recovery hearings.  *See* Intervenors' Opening Br. at 15 n.15.

the avoidance actions.  *See* Intervenors' Opening Br. at 12-13.  The same interests—convenience and judicial economy—support consolidating separate recovery proceedings into a single, economical hearing.   *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) ("considerations of judicial economy favor consolidation").

If the Trustee wishes to have "one thousand" recovery hearings, one for each adversary proceeding, such a burden would be self-inflicted.  That inordinate burden on other parties, however, does not dictate that the Court must accept a party's personal preference to pursue an inherently inefficient structure for management of the proceedings, especially where the option of a single consolidated hearing exists.  The convenience or preferences of one party cannot, and should not, as a policy matter, outweigh substantive rights.  Similarly, the Trustee's apparent determination to burden himself with repetitive litigation does not require this Court to disregard the plain language of SIPA Section 8(c)(3).

> **2.     The MVF Funds to be Distributed to Customers Either Qualify as "Customer Property" or They Reduce the Total Quantity of Allowed Claims—Either Way the MVF Significantly Impacts the SIPA Section 8(c)(3) Calculation.**

Contrary to the Trustee's assertions, Madoff Victim Fund ("MVF") distributions to Madoff Securities customers with allowed claims must be included in the SIPA Section 8(c)(3) analysis.   SIPA Section 8(c)(3) allows recovery of avoided transfers "whenever customer property is not sufficient to pay" the authorized claims in full.  MVF distributions to direct

customers of Madoff Securities[8] qualify as customer property under SIPA Section 16(4)(E). Moreover, even if they did not, any MVF funds distributed to direct customers of Madoff Securities would directly reduce these customers' allowed claims, dollar for dollar, thereby having an identical impact on the outcome of the Section 8(c)(3) calculation. The MVF Administrator's own website confirms this treatment of recoveries and the interconnection with distributions by the Trustee:

> **Q13.** Will you deduct payments I have received from the bankruptcy trustee [Picard] or SIPC in calculating my loss? Does my eligible claim on the MVF get reduced by my share of the cash the trustee is holding, but hasn't yet distributed?
>
> > Yes and yes. There is a limited amount of money to compensate an enormous group of victims, some of whom have not yet received a penny. So, no double dipping will be allowed, and no one is eligible to recover more than his or her actual "net loss" on a cash-in, cash-out basis. Similarly, if you received payments indirectly from the bankruptcy, via distributions by a feeder fund or other conduit, those recoveries also reduce your eligible loss.
> >
> > **The trustee is currently holding approximately $4.5 billion in cash that has not yet been distributed, but will ultimately go solely to holders of "allowed" claims in the Madoff Securities bankruptcy. Thus, all of the current eligible creditors in the bankruptcy are likely to receive very substantial future payouts from the cash that is already being held in the bankruptcy estate's reserves. Once this cash is distributed to recipients, the amount of their collateral recoveries that would be deducted from payments from the MVF will go up. Therefore, to avoid overpaying, in calculating losses we will take account of both the cash allowed claimants have already received, and their share of cash that will be distributed in the future.**

---

[8] The Department of Justice has provided SIPC customer claimants with allowed claims their own unique "Form DIR" that should allow the Department of Justice and the Trustee to accurately track and estimate the MVF funds that will be allocated to SIPC claimants, even if the MVF has not distributed all forfeited funds by the time this Court considers the sufficiency of customer property. *See Direct Investors in Madoff Securities,* Madoff Victim Fund, http://www.madoffvictimfund.com/Direct_Investor.shtml (last visited April 3, 2014).

Madoff      Victims      Fund,      Frequently      Asked      Questions,      No.      13
(http://www.madoffvictimfund.com/FAQ.shtml) (Last Updated: November 18, 2013; last
accessed April 3, 2014) (emphasis added).

Surely it is not the Trustee's position that a customer is entitled to full recovery in the
bankruptcy proceeding, and a second—and separate—full recovery from the MVF.  Unless the
MVF funds are included in the SIPA Section 8(c)(3) calculation, customers of Madoff Securities
with both bankruptcy and MVF claims will have the opportunity to obtain double recovery.

Under SIPA Section 16(4)(E), "customer property" includes "any other property of the
debtor which . . . would have been set aside or held for the benefit of customers, unless the
trustee determines that including such property within the meaning of such term would not
significantly increase customer property."  While this catch-all provision does not expressly
include the MVF funds, as SIPC recognizes: "the concept of 'customer property' in SIPA section
78*lll*(4) is expansive and is designed to ensure that customer property is funded as fully as
possible[.]"  SIPC Resp. at 6-7.  Moreover, the Trustee can only reasonably conclude that $4.05
billion in MVF funds[9] would "significantly increase customer property."  SIPA Section 16(4)(E).
Indeed, the Trustee has acknowledged the significant impact of these funds on customer
recoveries, publicly stating that he believes "net loser" customers will receive an additional
$2.243 billion (principally in MVF funds) as a result of the Government, Class Action and
Trustee settlements recently reached with JP Morgan – on top of the $9.795 billion in customer

---

[9] *See JP Morgan Forfeiture Settlement: Statement from Special Master Richard C. Breeden*,
http://www.madoffvictimfund.com/JPM_Forfeiture_Statement.shtml (last visited April 3, 2014).

property already held by the Trustee, and wholly apart from future Trustee recoveries from other sources.[10]

Nevertheless, the Trustee has taken the position that the MVF funds are not "customer property" because they are not "commingled" with the estate and the Trustee does not have control over them.  Trustee Resp. at 11-12.  Even if this Court concludes that the MVF funds do not constitute "customer property," the MVF funds distributed to Madoff Securities customers holding allowed claims must still be taken into account in the calculation to avoid recoveries in excess of the amounts to which customers may be entitled.  Unless the Trustee is going to endorse the specter of double recovery, distributions from the MVF necessarily reduce the dollar amount of authorized customer claims remaining to receive payment.  Thus, whether MVF funds are included in the "customer property" or factored into the amount of "authorized claims," they factor into the calculus regarding the Trustee's standing to recover.

### 3.    Potential Variability in the Amount of Customer Property or Allowed Claims *Supports* an Analysis of the Sufficiency of Customer Property at a Later Recovery Hearing.

Both the Trustee and SIPC cite the potential fluctuation in the amount of allowed claims as a basis for this Court to ignore the requirements of SIPA Section 8(c)(3).  SIPC Resp. at 12-14 (describing the reassessment of variable funds as a "logistical nightmare"); Trustee Resp. at 4, 7,

---

[10] The Trustee's January 17, 2014 affidavit in support of his settlement with JP Morgan Chase stated:

> I believe that when the Avoidance Settlement Amount is combined with the related Class Settlement and the settlement of the Government's investigation, over $2.243 billion will flow to "net loser" victims of Madoff's fraud.  Thus, I believe the Settlement makes good financial sense for both the Estate and the victims of Madoff's fraud.

Affidavit in Support of Motion for Entry of Order Approving Settlement of Avoidance Claims by and Between the Trustee and JPMorgan, at ¶ 5, Adv. Pro. No. 10-04932, Dkt. No. 29-3.

11.  This potential variability does not justify the Trustee's evasion of the requirement that he establish the insufficiency of customer property.  To the contrary, it supports the remedy requested by Intervenors—a consolidated hearing to be held at an appropriate time after avoidance liability is established.  By waiting until the recovery phase of the avoidance litigation, the potential variability in distributable funds or unpaid claims may no longer exist, or may be sufficiently narrowed that the balance of unresolved recoveries or claims may be capable of estimation and, thereafter, ratable allocation among liable transferees.  SIPA Section 8(c)(3) requires a determination that, at the time of recovery, customer property is insufficient to satisfy certain allowed claims against the bankruptcy estate.  The Trustee's and SIPC's objections to this requirement not only ignore the plain language of the statute, but greatly exaggerate the Trustee's burden of proof.

Moreover, the present variability that the Trustee and SIPC cite when characterizing such an analysis as a "logistical nightmare" actually supports consideration of this issue at the time of recovery.  If, as the Trustee and SIPC assert, the filing date were the proper time to make this calculation, the SIPA Section 8(c)(3) limits would be meaningless.  At the time of filing, the Trustee had less than $1 billion in customer property.[11]  Today, the Trustee has over $9.795 billion in customer property,[12] and, as noted above, the Trustee has recently stated that he expects an additional $2.243 billion to flow through to "net loser" customers as a result of the settlements recently reached with JP Morgan—for a total of $12.038 billion.  This does not even take into account the more than $2 billion in other restitution funds previously collected by the

---

[11] *See* Trustee's First Interim Report for the Period December 11, 2008 Through June 30, 2009 at ¶¶ 33-34, 37, 40, 43-51, 57 n.7, Adv. Pro. No. 08-0178, Dkt. No. 314.

[12] *See* Trustee's Motion for an Order Approving Fourth Allocation of Property to the Fund of Customer Property and Authorizing Fourth Interim Distribution to Customers at ¶ 32, Adv. Pro. No. 08-01789, Dkt. No. 6024.

Justice Department also available to direct Madoff customers, from the MVF.  Therefore, any recovery of avoided transfers would not only be contrary to SIPA Section 8(c)(3), but would be unnecessary and prejudicial to innocent customers forced to go through prolonged and expensive avoidance and collection proceedings, only to be left to recover their avoided funds later from the general bankruptcy estate.  Indeed, the Trustee carefully makes no mention of the number and face amount of avoidance actions against alleged bad faith transferees – largely institutional targets whose potential liabilities, presumably, will also materially affect the calculation.[13]  Use of the filing date as the operative time for assessment of the sufficiency of customer property is not the process that Congress devised, and it should not be embraced by this Court.

### III.    CONCLUSION

Intervenors urge the Court to give effect to the plain language of the statute and hold that the Trustee will be required to demonstrate a shortfall of customer property at the time of recovery.

///

///

///

---

[13] SIPC asserts, without citation to any authority, that Intervenor's arguments are "moot" even if "the Fund of Customer Property is sufficient to cover all claims" because "the Trustee has the same authority now as he did when the BLMIS liquidation commenced and when the Trustee commenced the avoidance actions."  SIPC Resp. at 13-14.  This argument ignores SIPA Section 8(c)(3) and its limits.  Because the time for the assessment of the sufficiency of customer property—the time of recovery—has not yet arrived, and because there is a dispute as to whether the Trustee might have sufficient property at that time to cover all applicable claims, the question is not moot.  *See Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("Simply stated, a case is [only] moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

Dated:  April 4, 2014

Respectfully submitted,

K&L GATES LLP

By:  ___/s/ Richard A. Kirby___
     Richard A. Kirby
     Laura K. Clinton
     1601 K Street NW
     Washington, DC 20006-1600
     Tel:  (202) 778-9000
     Fax:  (202) 778-9100

*Attorneys for James Lowrey, United Congregations Mesora, and other defendants in other adversary proceedings*

BRYAN CAVE LLP

By:  ___/s/ Thomas J. Schell___
     Thomas J. Schell  (TS 5075)
     Eric Rieder
     1290 Avenue of the Americas
     New York, New York  10019
     Tel: (212) 541-2000
     Fax: (212) 541-1462
     tjschell@bryancave.com

*Attorneys for The Estate of Sarah E. Pearce, Norton S. Rosensweig, Linda Rosensweig, David B. Pearce, Jonathan P. Rosensweig, Julie Schwartz, Laurie Blank, and other defendants in other adversary proceedings*

DENTONS US LLP

By:    /s/ Carole Neville
      Carole Neville
      Claude D. Montgomery
      1221 Avenue of the Americas
      New York New York 10020
      Tel:  (212) 768-6700
      Fax:  (212) 768-6800
      carole.neville@dentons.com

*Attorneys for Harold Hein, James Grieff, and other defendants in other adversary proceedings*

PRYOR CASHMAN LLP

By:    /s/ Richard Levy, Jr.
      Richard Levy, Jr.
      David C. Rose
      7 Times Square
      New York, New York 10036
      Tel: (212) 421-4100
      Fax: (212) 326-0806
      rlevy@pryorcashman.com
      drose@pryorcashman.com

*Attorneys for Kara Fishbein Goldman, Steven Goldman, and other defendants in other adversary proceedings*

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: ___/s/ Philip Bentley___
  Philip Bentley
  Elise S. Frejka
  Jason S. Rappaport
  1177 Avenue of the Americas
  New York, New York 10036
  Tel: (212) 715-9100
  Fax: (212) 715-8000

*Attorneys for Agas Company L.P., Michael Goldstein, Indian Wells Partnership, LTD., Margaret and Richard Lipmanson Foundation, Branch Family Development, LLC, and other defendants in other adversary proceedings*

LOEB & LOEB LLP

By: ___/s/ Daniel B. Besikof___
  P. Gregory Schwed
  Daniel B. Besikof
  345 Park Avenue
  New York, New York  10154
  Tel:  (212) 407-4000
  Fax:  (212) 407-4990
  gschwed@loeb.com
  dbesikof@loeb.com

*Attorneys for Kenneth L. Evenstad Revocable Trust u/a/d May 2, 2000, MBE Preferred Limited Partnership, and other defendants in other adversary proceedings*