Page 1

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - - - x

 4   IRVING H. PICARD, TRUSTEE FOR THE

 5   LIQUIDATION OF BERNARD L. MADOFF

 6   INVESTMENT SECURITIES LLC AND

 7   BERNARD L. MADOFF,

 8   v.                          CASE NO. 10-04363-smb

 9   SCHIFF FAMILY HOLDINGS NEVADA

10   LIMITED PARTNERSHIP AND SCHIFF

11   FAMILY HOLDINGS, NEVADA, INC.,

12   IN ITS CAPACITY AS GENERAL PARTNER

13   OF SCHIFF FAMILY HOLDINGS NEVADA

14   LIMITED PARTNERSHIP

15   - - - - - - - - - - - - - - - x

16   IRVING H. PICARD, TRUSTEE FOR THE

17   LIQUIDATION OF BERNARD L. MADOFF

18   INVESTMENT SECURITIES LLC AND

19   BERNARD L. MADOFF,

20   v.                          CASE NO. 10-04718-smb

21   THE JORDAN H. KART REVOCABLE

22   TRUST, ET AL

23   - - - - - - - - - - - - - - - x

24

25
```

Page 2

1    - - - - - - - - - - - - - - - - x

2    IRVING H. PICARD, TRUSTEE FOR THE

3    LIQUIDATION OF BERNARD L. MADOFF

4    INVESTMENT SECURITIES LLC AND

5    BERNARD L. MADOFF,

6    v.                          CASE NO. 09-01364-smb

7    ALPHA PRIME FUND LIMITED, ET AL

8    - - - - - - - - - - - - - - - - x

9    SECURITIES INVESTMENT PROTECTION    ADMINISTRATIVE CASE NO.

10   CORPORATION                        08-99000-smb

11   - - - - - - - - - - - - - - - - x

12

13                        U.S. Bankruptcy Court

14                        One Bowling Green

15                        New York, New York

16

17                        APRIL 9, 2014

18                        10:04 AM

19

20

21   B E F O R E :

22   HON. STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  MICHELLE BROWN

1    HEARING Matter:  Motion to Intervene

2

3    HEARING Matter:  Motion to Intervene

4

5    HEARING Matter:  Motion of Defendants Alpha Prime Fund Ltd.

6    and Senator Fund SPC for an order pursuant to Section 105(a)

7    of the Bankruptcy Code and General Order M-390 Authorizing

8    Alternative Dispute Resolution Procedures

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sheila Orms

1   A P P E A R A N C E S :

2   BAKER HOSTETLER

3        Attorneys for Irving Picard, Trustee

4        45 Rockefeller Plaza

5        New York, NY  10111

6

7   BY:  NICHOLAS J. CREMONA, ESQ.

8        OREN J. WARSHAVSKY, ESQ.

9        GEOFFREY A. NORTH, ESQ.

10        KEITH R. MURPHY, ESQ.

11

12   SIPC

13        Attorneys for SIPC

14        805 15th St., N.W.

15        Suite 800

16        Washington, DC  20005

17

18   BY:  LAUREN T. ATTARD, ESQ.

19

20   PRYOR CASHMAN, LLP

21        Attorneys for Kara and Steven Goldman, et al

22        7 Times Square

23        New York, NY  10036

24

25   BY:  RICHARD LEVY, JR., ESQ.

Page 5

1   WACHTEL MISSRY

2       Attorneys for Defendant Schiff Family Holdings

3           Nevada LP

4       885 Second Avenue

5       New York, NY  10017

6

7   BY:  SARA SPIEGELMAN, ESQ.

8

9   DUFFY AMEDEO

10      Attorneys for Alpha Prime Fund & Senator Fund

11      275 Seventh Avenue

12      7th Floor

13      New York, NY  10001

14

15  BY:  DOUGLAS A. AMEDEO, ESQ.

16       T. DUFFY, ESQ.

17

18  TELEPHONIC APPEARANCES:

19

20  ROBERT DAKIS, MORRISON COHEN, LLP

21  JOSEPH T. MOLDOVAN, MORRISON COHEN, LLP

22

23

24

25

1                    P R O C E E D I N G S

2            THE COURT:  Please be seated.  Madoff.  Go ahead.

3            MR. KIRBY:  Good morning, Your Honor.  My name is

4    Richard Kirby.  I am from K&L Gates.  I represent today

5    James Lowery which is a -- who is a defendant in one

6    adversary proceeding and the United Congregation of Nesora

7    (ph), a defendant in another adversary proceeding, and I am

8    speaking on behalf of the defense group that has filed a

9    motion to intervene to address issues of trustee standing in

10   the pending motions to dismiss.

11           I would like to try to categorize the -- how this

12   issue arises in the various cases that are -- adversary

13   proceedings that are pending.  One group, there are three

14   groups, and you can describe -- categorize them in three

15   categories.

16           One group is a group that has filed answers and

17   raised the issue of trustee standing.  The second group is a

18   group that has not yet filed answers.  Their answers are due

19   later this month, and intend to raise the issue of trustee

20   standing.

21           And the third group are parties that have filed

22   pending motions to dismiss, but have not raised the issue of

23   standing.  And if they are -- do not prevail on the motion

24   to dismiss, they intend to raise the issue as part of their

25   defense.  All parties are of the view that the issue of

Page 7

1    trustee standing is not, at this time, ripe.

2          THE COURT:  So why are you moving to intervene if

3    it's not ripe?

4          MR. KIRBY:  It's not ripe for the Court to decide

5    now, but --

6          THE COURT:  So why are you making the motion?  Why

7    don't you make it when it's ripe?

8          MR. KIRBY:  We're making a motion because we

9    believe that the issue of the -- the legal issues that are

10   raised in other pending motions to dismiss are -- raise

11   issues that and address the statute in a way different than

12   the way we read the statute.  And we believe it's important

13   for the Court to hear those views now at the time it decides

14   -- it's backing up for how -- why we are here today, and why

15   we're here now.

16          I appeared before Your Honor on the 14th of

17   February where we raised the issue of the need to be heard

18   at an opportune time in other pending proceedings or where

19   there were legal issues that were -- had a common issue of

20   law and fact to the various adversary proceedings.

21          At that time, we were hampered because we did not

22   know what the various adversary proceedings raised, because

23   there are more than a thousand on the docket, and it was

24   virtually impossible for us unless somebody filed a motion

25   in the master document, for us to track who was raising what

1    issue at what time.

2         THE COURT:  But the issue that you wanted to raise

3    was raised by Ms. Chatman's clients.  I went back and read

4    the brief yesterday, it was right there.

5         MR. KIRBY:  And it's also been raised by the

6    Schiff parties, and those are the two parties that we have

7    sought to intervene.  And the reason is, is because it

8    raises an issue of common -- a common issue of law, in fact.

9    And because we believe it is appropriate for the Court to

10   hear our views on how the statute should be interpreted now

11   before the Court proceeds to adjudicate those issues.

12        THE COURT:  But if you're raising different

13   arguments, let's assume I ruled against the Chatman motions,

14   you're raising different arguments, couldn't you just raise

15   them at that point and say, I didn't consider that?

16        MR. KIRBY:  Well, obviously if that's the --

17   that's the Court's decision, yes, then we will.  But we

18   think --

19        THE COURT:  Because otherwise we get back into

20   that situation where I can't decide a single thing until,

21   you know, I get a thousand briefs on the issue.

22        MR. KIRBY:  But the way the Court has now placed

23   it in a procedural posture where the various motions to

24   dismiss have been consolidated, this is -- what we have

25   given you is an opportunity to hear our views before the --

Page 9

1    you make any decisions on the substantive issue.

2              THE COURT:  Can I ask you a question, why you just

3    don't make a motion to dismiss in your own cases?

4              MR. KIRBY:  Because we don't believe it's ripe at

5    this time.  It raises issues of fact that we need discovery

6    on.

7              THE COURT:  Well, I wouldn't decide issues of fact

8    on a motion to dismiss a complaint anyway.  The complaint

9    pleads that the trustee -- that the estate is insolvent.

10   And why would I look beyond that on a motion to dismiss?

11             MR. KIRBY:  I would think you wouldn't.

12             THE COURT:  I guess I don't understand what you --

13             MR. KIRBY:  But the reason why we believe it's

14   appropriate to be heard now is because what the trustee

15   argues is that that is the way the statute is to be

16   interpreted, that that's the end of the inquiry at the

17   pleading stage.  And we don't think that's the way the

18   statute is properly read, and -- as we've identified in our

19   papers.

20             THE COURT:  Suppose you're right, don't I still

21   have to deny the motion to dismiss because the trustee has

22   plead that the estate is insolvent, and I'd have to get --

23   receive extrinsic evidence in order to decide that at this

24   particular moment it's not insolvent?

25             MR. KIRBY:  Oh, I would think that that would be

Page 10

1    the appropriate resolution of the motions to dismiss.

2          THE COURT:  So why decide a legal issue that I may

3    never have to decide?  I mean, there's a legal issue at what

4    point do you test insolvency for lack of a better word, or

5    insufficiency.

6          MR. KIRBY:  Right.

7          THE COURT:  But one of the arguments I think I

8    read was that I may never have to make that determination.

9          MR. KIRBY:  It's possible if the case is settled,

10    you will never have to.

11          THE COURT:  Well, but why not decide that a trial

12    at which it's raised?

13          MR. KIRBY:  Certainly that is what our intent is.

14    What we will undoubtedly be asking the Court at some point

15    is that's a common issue for many cases, and it will need to

16    be consolidated at some point because it makes -- you know,

17    the trustee's specter that we don't need to have a thousand

18    trials on that issue, it doesn't make a lot of sense.

19          It is an issue that transcends all the cases, and

20    it is an issue that is the kind of issue that would seem to

21    be an issue appropriate for consolidation at some point.

22    And so that is the key point that we are raising.  And

23    that's what we are trying to do is to make sure that we get

24    heard in the appropriate time on the substance of the legal

25    issues.

1          And I think, you know, it is our view that the

2    procedural remedy for that is to seek to intervene as a

3    matter of permission, which we've sought to do in these

4    proceedings, to be heard on a common issue of law or fact.

5    If --

6          THE COURT:  I guess what I'm struggling with is on

7    the one hand, you're telling me it's not ripe, but on the

8    other hand, you're saying you've got to intervene to protect

9    your interests.  I just don't understand that.  That seems

10   to be inconsistent.

11         MR. KIRBY:  Well, Your Honor, because it raises an

12   issue of statutory interpretation, we wanted to bring to

13   Your Honor's attention our view of the statute, which is

14   very different from the statute -- the view of the statute

15   that the trustee raises and -- on the merits.  We wanted to

16   bring Your Honor's the fact that the trustee relies on a

17   case which we believe is inappropriately decided for a

18   number of reasons, which we set forth in our papers.

19         And we want to give Your Honor the opportunity to

20   consider those before it rules.  And so we felt that the

21   appropriate way to proceed was to proceed as -- to

22   intervene, and as you note in our papers, we alternatively

23   to enter -- to receive our briefs as amicus curiae for the

24   purpose of advising the Court of our views, because this is

25   an issue that we believe will raised throughout these

Page 12

1   proceedings by many parties.

2          And we think that the Court is benefitted by

3   having -- and knowing our views at the outset of the case on

4   this important question.

5          THE COURT:  Okay.

6          MR. KIRBY:  Thank you.

7          THE COURT:  Before you sit down, I see Mr. Levy

8   sitting there, and I'm not going to ask him to stand up, but

9   I know that he, on behalf of other clients, made a motion to

10  dismiss but never raised this issue.  If it's such an

11  important issue why didn't you raise it, and why do you have

12  to raise it now?

13         MR. LEVY:  I will stand, Your Honor.

14         THE COURT:  Okay.

15         MR. LEVY:  Good morning, Richard Levy of Pryor

16  Cashman.

17         It was not an issue that we had identified as a

18  matter to move on at the time we made our original motions.

19  As Your Honor knows as a matter of jurisdiction, that

20  standing is an element of jurisdiction.  It's a matter

21  that's never waived.  It's only a question of when do you

22  raise it.

23         THE COURT:  Actually, I have a question, is it

24  standing, or just an element of the cause of action?

25         MR. LEVY:  I think it's standing, Your Honor.  I

Page 13

1   think the statute is granting the trustee a remedy which

2   only in certain circumstances, there's no judiciable

3   controversy without standing.

4           THE COURT:  Well, you have standing under other

5   provisions of the statute, which given the standings of a

6   Chapter 7 trustee.

7           MR. LEVY:  Limited, Your Honor, to the avoidance

8   of transfers to the extent avoidable under the Bankruptcy

9   Code, and limited by SIPA to the extent that there is a

10  shortfall between the amount of claims and the amount of

11  assets available to recover.

12          THE COURT:  I know what the statute says, I'm just

13  questioning whether it's an element of the claim or whether

14  it goes to standing.

15          MR. LEVY:  I -- Your Honor, I can see it as a

16  hybrid, but I think one way or another, it goes to the

17  question of whether there's a controversy that Your Honor

18  can and should determine.

19          THE COURT:  All right.  Just a moment.

20          MR. CREMONA:  Good morning, Your Honor, Nick

21  Cremona of Baker and Hostetler on behalf -- appearing on

22  behalf of the Trustee.

23          Just to focus on a couple of things that my

24  colleagues just said.  I agree with Your Honor that the

25  argument that the movants are -- generally need to intervene

Page 14

1    on this issue is internally inconsistent with the relief

2    that they want, which is to defer the determination until

3    some point in the future.

4            There doesn't seem to be an urgency based on that,

5    and that would be inconsistent with the elements of

6    770.24(b) which that would in and of itself cause delay, and

7    that's one of the points that I would get into later on.

8            And I also think it's relevant just to add on to

9    what my colleague Mr. Levy said, as Your Honor posited, if

10   this is an element rather than a threshold issue of

11   standing, I do believe that a party such as Pryor Cashman

12   that has filed, you know, close to 20 motions to dismiss and

13   never raised the issue, there is the issue that it may be

14   waived.

15           THE COURT:  Can you waive a failure to assert --

16   state a claim?

17           MR. CREMONA:  I --

18           THE COURT:  I'm not sure you can waive that, but.

19           MR. CREMONA:  Well, I would -- I think they've

20   asserted that it's a defense that they want to maintain, if

21   they didn't assert that defense in these multiple motions to

22   dismiss, I would argue that it's waived.

23           THE COURT:  Well, it's certainly not waived if

24   it's subject matter jurisdiction.

25           MR. CREMONA:  I agree, Your Honor.

1          Your Honor, we think that the motion should be

2     dismissed for three reasons.  We think it's procedurally

3     improper.  The -- and we didn't hear from the movants, as to

4     whether they can satisfy the standards under Rule 7024, we

5     certainly didn't hear that their interests are otherwise

6     adequately represented by the 138 other motions that raise

7     the issue.

8          THE COURT:  Well, I've seen that requirement under

9     24(a), which is mandatory, or intervention as a right, is

10    that also -- and the case, the Butler case --

11          MR. CREMONA:  That's correct.

12          THE COURT:  -- is a 24(a) case.  Is that also the

13    standard under 24(b)?

14          MR. CREMONA:  It is actually, Your Honor.  I think

15    one of the cases that, or in the movant's brief, which is

16    Citizens for an Orderly Energy Policy, 101 FRD 497, actually

17    says that inadequacy of representation is a factor that

18    requires consideration.

19          And several courts have acknowledged that.  And I

20    think these parties were here before Your Honor on February

21    14th, and Your Honor specifically asked the question as to

22    why their interests weren't adequately represented in the

23    138 other motions that raised it, and there was no

24    articulated basis on that date.

25          Then we saw the movants' initial motion, which

Page 16

1   articulated no basis as to that, and the reply papers

2   articulated no basis, other than that they would say it

3   differently.  And I submit to Your Honor that that's

4   precisely why we object to this motion, because in a complex

5   litigation such as this, issues will arise at every turn,

6   and the standard simply can't be, I would say it

7   differently, so therefore I need to be heard on the matter.

8           And frankly, Your Honor, we oppose the motion

9   because we seize upon the same mantra that Your Honor has

10  noticed, this case cannot proceed at the rate of this lowest

11  respondent or with no faster than the slowest case.  And

12  that's -- I think this motion is absolutely a microcosm of

13  that mantra by this defense group.

14          THE COURT:  Well, but both sides have fully

15  briefed the issue at this point, so --

16          MR. CREMONA:  Well --

17          THE COURT:  -- in connection, for example,

18  deciding the Chatman motion, why couldn't I just consider

19  their arguments.  The Chatman motion raises the same issue.

20          MR. CREMONA:  I agree, Your Honor, but I think --

21          THE COURT:  It doesn't quite have the parsing of

22  the language that this one does.

23          MR. CREMONA:  Well, on that basis, Your Honor, I

24  would submit that there are no new issues raised, and their

25  interests are adequately represented, and therefore, they

Page 17

1    don't need to be heard on the issue.

2              But I would like to point out, I think that there

3    is a procedural problem with this motion, in that, I think

4    it's an abuse of Rule 12.  As Your Honor indicated, there

5    are two categories of people involved in this motion, those

6    that answered already, and those that moved to dismiss.

7              Those that answered are now seeking what is

8    tantamount to arguing on a motion to dismiss in two

9    different omnibus proceedings involving 239 motions.  I

10   would submit that's inappropriate.

11             The second group are those defendants represented

12   by Pryor Cashman and S&R Denton, and there are close to 30

13   motions to dismiss filed by those folks.  And those people,

14   as Your Honor already identified, didn't raise this issue.

15   And it's important to note, those parties have been actively

16   litigating in these cases from back in April of 2011, when

17   this issue was first raised and was live before the district

18   court on motions to withdraw the reference.

19             Then these parties, Pryor Cashman and S&R Denton

20   specifically were party to the Griff (ph) proceeding before

21   Judge Rakoff back in I believe it was 2012.  Those motions

22   to dismiss were denied.  Then those cases were sent, about

23   78 cases were sent back to Your Honor, and motions to

24   dismiss again were filed by Pryor Cashman and S&R Denton,

25   approximately 30 or so back in March of 2013.

Page 18

1           And yet again, in January of this year, multiple

2    additional motions to dismiss were filed by those same

3    firms.  Now, at this late stage, I think it's inappropriate

4    for them to now raise this argument on what is tantamount to

5    yet another motion to dismiss.

6           So I think that's one reason why it's procedurally

7    deficient.  A second reason, Your Honor, which I think is

8    more problematic and more indicative of this litigation

9    strategy that we've seen here is that this latest motion was

10   filed, you know, this group speaks of no delay, but the

11   latest motion was filed after the omnibus briefing on Ms.

12   Chatman's motions was fully completed.  Then it was filed on

13   the date that all other motions, the 113, which is now 111

14   motions to dismiss, they were all -- all those parties were

15   required to file their reply on that date.

16          And these parties that were not party to that

17   proceeding filed a motion to -- filed this motion and

18   attached the substantive argument -- substantive memo of law

19   as a reply to the trustee's opposition.  Then by order of

20   Your Honor on I believe March 20 that set a briefing

21   schedule on this motion, we filed our opposition on the

22   28th.

23          And then on the 4th, these parties had the

24   opportunity to file a reply, but not only did they file a

25   reply, they attached what I would say is tantamount to a

Page 19

```
 1    sur-reply memorandum, which no other party in the 111 cases

 2    had the ability to do.  And to my knowledge, there was no

 3    leave of Court, so -- and that's contrary to the rules of

 4    this Court, and contrary to Your Honor's order.

 5            And I think those procedural defects alone are

 6    reason to deny the motion.  But I think there are additional

 7    problems.  I think as I mentioned, there was delay here, I

 8    mean the parties speak of no delay based on -- because they

 9    slapped these motions -- they slapped these pleadings on the

10    back of this motion, but there is delay.

11            When we first appeared before Your Honor on

12    February 14th, we had previously scheduled argument on the

13    128 motions on March 12th.  And that got delayed.  And then

14    we filed timely as Your Honor directed us to do so, all of

15    our replies, our omnibus opposition by March 17th.  And now,

16    those two proceedings which were moving apace are now being

17    delayed by this motion.

18            I think that is a prejudice to the trustee.  And

19    given the amount of litigation that's transpired over the

20    last three years, to file that at this late stage is another

21    reason to deny it.

22            And I also would -- as I think I already

23    indicated, Your Honor, there has been no articulated basis

24    for their interest not being adequately represented by 138

25    other motions to dismiss that raise the identical issue as
```

Page 20

```
1    Your Honor pointed out.  No -- you know, no new arguments

2    are made here.

3            And as Your Honor indicated, issues are going to

4    arise in this complex case.  And under their theory, nothing

5    could ever be decided ever until the last person shows up

6    with their reply.  This case simply cannot proceed in that

7    way.  I mean, we are five years in, and the victims of this

8    case are not receiving their net losses because we can't

9    move these cases.

10           And I think the last piece I would argue, Your

11   Honor, is that the motion is untimely.  And it's untimely I

12   think for one of the reasons Your Honor noted.  First of

13   all, this issue has been live since 2011.  But secondly,

14   this issue was raised by Helen Chatman's motions, 128

15   motions were filed in November.  And I think as Your Honor

16   noted, the parties should have been on notice at that point

17   in time which was November 1.

18           Then Your Honor convened a conference, we were in

19   February -- on February 14th.  Your Honor specifically

20   raised the issue of intervention, specifically asked the

21   parties to demonstrate why they are not adequately

22   represented, and did we see a motion at that point?  No.

23           We didn't see a motion until three and a half

24   months or excuse me, it's three and a half months after

25   November, but you know, a month or so after Your Honor asked
```

Page 21

1    that question and conveniently after the matters were fully

2    briefed by all parties and the trustee had already submitted

3    his pleadings.

4              So again, I think that allowing the motion is

5    problematic for a number of reasons.  It would not promote

6    judicial efficiency in this regard because all it would do,

7    in my view, Your Honor, I would submit, would be to invite

8    additional similar motions at every turn in this case.

9    Whenever an issue comes up, and someone says, I would argue

10   it better, I have something different to say, and these

11   cases will never be able to proceed under those

12   circumstances, Your Honor.  And for those reasons, I

13   respectfully request that the motion be denied.

14             THE COURT:  Thank you.

15             MS. ATTARD:  May I?  Just briefly, Your Honor,

16   Lauren Attard for the Securities Investor Protection

17   Corporation.

18             I just want to state on the record that SIPC's

19   supports the trustee.  I believe Mr. Cremona has more than

20   adequately represented the position, and if Your Honor has

21   any questions, I'm more than happy to take them.

22             THE COURT:  No, thank you very much.

23             MS. ATTARD:  Thank you.

24             MR. KIRBY:  Your Honor, I'd like to address two

25   points.  One, the adequacy of representation issue.

1          Your Honor, as you know, and as you pointed out,

2    Rule 24(b) does not have --

3          THE COURT:  I raised the question, I didn't --

4          MR. KIRBY:  No, I understand, but --

5          THE COURT:  Okay.

6          MR. KIRBY:  -- if you read it, if you read the

7    rule it doesn't happen.  Okay.  A case is -- and we cite the

8    cases in our papers.  There are some cases that have looked

9    at that issue as I guess the simplest way to put it is a

10   guide as to determine whether there's prejudice.

11         But what the Supreme Court case, the leading

12   Supreme Court case that we cite in our papers on the issue

13   of adequacy of representation, it says -- addresses that

14   it's a -- is a minimal issue to look at.  And if the parties

15   are addressing -- the case law would seem to suggest that if

16   the parties are addressing the issue differently and raising

17   a different issue, the case I'm referring to --

18         THE COURT:  Well, it's not a different issue.

19         MR. KIRBY:  But are raising the issue in a

20   different way, then that means that they're not being -- our

21   interests are not going to be --

22         THE COURT:  I thought Ms. Chatman did say, if you

23   had to determine the -- I guess the insufficiency -- you

24   couldn't collect if there was an insufficiency.  That's the

25   same issue you're raising.  She just didn't go through the

Page 23

1    statute the way you did.

2             MR. KIRBY:  Well, that's why it's so important,

3    because that's why we felt we had to --

4             THE COURT:  But then Mr. Cremona comes in and

5    says, but, you know, somebody else will pipe up and say,

6    hey, I just thought of another argument on the same issue,

7    and nobody's really made it this way, so now I want to

8    intervene.  When does this stop?

9             MR. KIRBY:  I understand the issue that -- the

10   dilemma that the trustee raises.  But we think that the

11   Court benefits from having at the earliest opportunity that

12   we can present it, an airing of the views of the parties

13   that are -- will have -- they will have to raise at a future

14   point.  But the Court benefits from having our views set

15   forth at the earliest possible time.  And that is the reason

16   why that we have asked that -- we felt that the need to

17   intervene at this time.

18             On the issue of timeliness, Your Honor, until the

19   trustee files his omnibus response, we don't -- I mean, we

20   have seen various responses in various papers where the

21   trustee continues to advocate the Bevelbreast (ph) decision

22   controls.

23             THE COURT:  Also Judge Rakoff cited that decision.

24             MR. KIRBY:  Well, but he decided -- he doesn't

25   address the merits.

Page 24

1              THE COURT:  But you knew this was an issue when

2     the case, some parties sought withdrawal of the reference on

3     that basis.  This has been an issue that's been bouncing

4     around in this case since -- I don't go that far back in it,

5     but -- I'm told 2011, so I have to assume that's correct.

6              MR. KIRBY:  Well, Your Honor, it has been our view

7     that the issue, because it -- the statute is focused on the

8     time of recovery, it's not an appropriate issue for a motion

9     to dismiss.

10             THE COURT:  Do you agree that the trustee can

11    bring an avoidance action now that the statute recognizes

12    the difference between avoidance and recovery?

13             MR. KIRBY:  Yes.

14             THE COURT:  Okay.  So this has nothing to do with

15    the avoidance action?

16             MR. KIRBY:  I -- it -- we do not -- I mean, we do

17    not contest it, the trustee by pleading that there is a --

18    to use Your Honor's words, an insolvency or an

19    insufficiency, that that is adequate for pleading purposes.

20             THE COURT:  I'm --

21             MR. KIRBY:  It's an issue of proof.

22             THE COURT:  Yeah, no.  I'm saying something

23    different.  There's a difference between an action to avoid

24    a transfer --

25             MR. KIRBY:  Yes.

1              THE COURT:  -- and to recover that avoidable

2     transfer.

3              MR. KIRBY:  Correct.

4              THE COURT:  Are you arguing that regardless of

5     what the statute means, that it has any bearing on the

6     trustee's right to bring an avoidance action?

7              MR. KIRBY:  Well, it does, that statute does, but

8     on a different point.

9              THE COURT:  But it only talks about recovery, it

10    doesn't talk about avoidance.

11             MR. KIRBY:  Yes, but it does -- the last sentence

12    of that provision which then says, that for the purposes of

13    these actions, the property is deemed to be property of the

14    debtor.

15             THE COURT:  But that's to give the trustee

16    standing so --

17             MR. KIRBY:  That's --

18             THE COURT:  -- people can't argue that it's not

19    property of the estate that was transferred, that's all.

20             MR. KIRBY:  Right.  But what really drives is that

21    the trustee's avoidance power on a SIPA proceeding is

22    limited by 8(c)(3).  In other words, he can only proceed on

23    8(c)(3) of the statute.

24             But, yes, it is my view that if the trustee, if I

25    were in the trustee's -- the trustee's counsel, as long as

Page 26

1    you plead it, that's sufficient for purposes of commencing

2    the avoiding action, that's why we chose not to file a

3    motion to dismiss on the issue.

4            Also, it's not an issue that we viewed as

5    appropriate for withdrawal of reference, we did not raise

6    it.  But at this point, where -- you know, where the Court

7    is about to decide the issue on its merits, we thought that

8    it was appropriate for the Court to hear our views.

9            THE COURT:  Let me ask you a hypothetical

10   question.

11           MR. KIRBY:  Pardon?

12           THE COURT:  A hypothetical question.

13           MR. KIRBY:  Yes, sir.

14           THE COURT:  Suppose that the transfer was simply a

15   mortgage, and all the trustee had to do was avoid the

16   mortgage, didn't have to recover anything.  Would the

17   statute that you're discussing have any bearing on that type

18   of a case?

19           MR. KIRBY:  No, because the statute addresses

20   customer property.  And so it's aimed at recovering customer

21   property.  And I -- on the hypothetical that you raised, the

22   mortgage would not be customer property.  Maybe the facts

23   could turn out that it was customer property, but I can't

24   concede with that on a mortgage.

25           THE COURT:  All right.  Thank you.  I reserve

Page 27

1    decision.

2              MR. KIRBY:  Thank you.

3              MR. CREMONA:  Thank you, Your Honor.

4              THE COURT:  You're welcome.  The timing is

5    perfect, it's 10:30, we are up to the next case.  Mr. Duffy?

6         (Pause)

7              THE COURT:  Go ahead.

8              MR. DUFFY:  Good morning, Your Honor.

9              THE COURT:  Do you have his appearance?

10         Okay.  Go ahead.

11             MR. DUFFY:  Good morning, Your Honor, Todd Duffy,

12   Duffy Amedeo LLP for Alpha Prime Fund Limited and Senator

13   Fund PC.

14             Your Honor, after almost five years of litigation,

15   Alpha Prime and Senator Fund are here requesting that a

16   mediator, that the parties be compelled to go to mediation.

17             For the last year or so, we tried to settle these

18   things without a mediator, and some issues came up, but we

19   feel with a third party mediator we can get past those

20   issues and possibly resolve at least our section of the

21   adversary.

22             THE COURT:  Have you made an offer to the trustee?

23             MR. DUFFY:  Yes, Your Honor.  Yes, in fact, the

24   entire settlement process began because we wrote them a

25   letter detailing our offer and the settlement amount.

1           THE COURT:  Did the trustee make a counter offer?

2           MR. DUFFY:  No, Your Honor.  The trustee requested

3    quite a bit of documents, we gave -- we handed over the

4    documents we received from our client, and offered to make

5    our shareholders and directors available for interview and

6    for deposition.

7           The case really has had no movement, and we'd like

8    to see some sort of a resolution here, Your Honor, so that

9    our clients could actually get their money back, if

10   possible.  So for these reasons, we'd ask that the Court

11   grant our motion, grant the relief.

12          THE COURT:  Thank you.

13          MR. WASHAVSKY:  Good morning, Your Honor, Oren

14   Warshavsky, Baker Hostetler for the trustee.

15          Your Honor, I agree with Mr. Duffy that the case

16   has lasted for five years.  Obviously, that's clear.  This

17   action -- this adversary proceeding has lasted for three

18   years.  We have indeed had negotiations on and off for four

19   years.

20          The key issue here is the issue of good faith or

21   lack thereof.  One of the main issues, and whether it goes

22   to the avoidance action or to the allowance of a customer

23   claim turns on the issue of good faith.

24          In the discussions with Mr. Duffy, I don't want to

25   get too deeply into Rule 408, and I feel myself somewhat

Page 29

1    constrained, but we certainly had discussions about what

2    could adequately -- what facts could bear upon good faith.

3            The reason we had that discussion is because

4    ultimately when you have a settlement, whether it's with a

5    mediator or between the parties, you can't ignore the

6    fundamental position of the parties, and that's the

7    breakdown that we had here.  And that's -- and our concern

8    when mediation arose, or when Mr. Duffy raised this issue,

9    is the parties fundamentally disagree on the law, and on the

10   underlying facts.

11           And to be clear, the trustee has other cases,

12   there are defendants in this action where the trustee is

13   going to mediation, and there are other feeder funds in the

14   HSBC action that we've agreed to try and mediate the dispute

15   because we understand the parties had to find, at the very

16   least, what the governing law is, and how the facts will

17   affect the law.  Here, we don't see eye to eye.

18           What we've said to Mr. Duffy is that we think his

19   clients have acted in bad faith period, and that if he wants

20   us to really consider coming off of our position, how to

21   compromise, how to have a meaningful discussion, whether

22   with him or with a mediator, we need to know what facts

23   underlie his defense.  Otherwise we can -- there's no way to

24   analyze any risk to the parties' positions.

25           Now, Mr. Duffy talked about in his reply brief,

Page 30

1    and then he spoke a little about discovery, we'd be more

2    than happy -- just say, if Mr. Duffy feels that there is an

3    issue with the pace of the case, we'd be more than happy to

4    get started with discovery.  We'd be more than happy to

5    actually sit down, lay out a discovery schedule, and pick a

6    point for mediation and come back and say -- and discuss

7    whether or not mediation will be fruitful.

8            But so far, because issues have been before Judge

9    Rakoff, we've been unable to raise the case.  We didn't ask

10   Senator and Alpha Prime to withdraw the reference.  They're

11   the lead brief on one of the issues.  They filed a

12   supplemental brief on the same issue.  They'd like to ignore

13   that, if they'd like to move forward on this case, and move

14   forward with discovery, we'd be more than happy to lay out a

15   schedule with them, and revisit, once we feel that there's

16   been some discovery and we understand --

17           THE COURT:  But my sense from the papers is

18   there's a dispute as to whether the discovery is adequate.

19   So why can't a mediator just deal with that, in addition to

20   the mediation of a possible settlement?

21           MR. WASHAVSKY:  What discovery, Your Honor, we

22   haven't been allowed to serve discovery?  What we have --

23           THE COURT:  The discovery you contend you need in

24   order to make a counter proposal, I guess.

25           MR. WASHAVSKY:  Well, I think it's actually the

Page 31

1   discovery that we would need to understand Mr. Duffy's

2   complaint.  What we've gotten frankly is -- not his

3   complaint, I'm sorry, his allegations.  We've gotten our

4   conclusory statements, right, we have -- we do not have any

5   evidence that we have pulled through 2004 from third

6   parties, contradicts their position.

7            And my concern with a mediation, and this is where

8   we started when before the motion was even made, is that

9   we're going to go -- mediation is going to lead us nowhere.

10  We're going to be back here and be accused of bad faith

11  mediation.

12           If we -- and I'm happy to have a master or the

13  trustee I should say, is happy to have a master or a

14  mediator go through discovery --

15           THE COURT:  Well, I can't appoint a master.

16           MR. WASHAVSKY:  Oh, yeah, okay, sorry.  A mediator

17  for discovery purposes, to help us go -- and let us go

18  through with full discovery.  The problem with informal

19  discovery, Your Honor, is that there's nothing to tie the

20  other side to produce, right.  We can't come to Your Honor

21  and say, oh, gee, Your Honor, we know that they haven't

22  given a thorough production.

23           THE COURT:  No, but you can come back and say, or

24  somebody could say, the mediation is unsuccessful for

25  whatever reason, and then we proceed with the case.

1          MR. WASHAVSKY:  Then we're going to have that in

2     every case.  We're going to be stuck in every case where a

3     party doesn't want to disclose information, wants to take a

4     position we're going to have -- it's going to be like the

5     motions to withdraw the reference.

6          THE COURT:  What are you doing in the cases that

7     are subject to mandatory mediation?  Are you proceeding with

8     mediation and discovery?

9          MR. WASHAVSKY:  No, those cases, there's no

10     contested issue of facts.  The cases where there's mandatory

11     mediation, and I think we have about 50 of those right

12     now --

13          THE COURT:  Are those the feeder fund or the --

14          MR. WASHAVSKY:  No, those are --

15          THE COURT:  -- bad faith, so-called bad faith

16     cases?

17          MR. WASHAVSKY:  -- the innocent investors.  These

18     are the feeder fund cases where there are disputes about

19     issues of fact.  And again, I don't want it to sound like

20     we're taking --

21          THE COURT:  Well, what are you doing in the other

22     -- with the other defendants in this adversary proceeding

23     where you are going through mediation?

24          MR. WASHAVSKY:  Well then we've agreed to the

25     facts.  We've agreed on the issues about -- again, I don't

Page 33

1    want to -- I feel very confined by confidential settlement

2    discussions, but what I'll say is, we agree as to what the

3    facts show, and what the legal implications are, so that if

4    the trustee is -- the other side would agree with us as to

5    how we interpret certain evidence, whether it's to show bad

6    faith or a lack of good faith, and what that would mean in

7    term of the trustee's claim.  And then we -- each side can

8    then actually discuss what the risk is, what's the risk of

9    -- what's the chance of success, what's the risk of loss?

10   Here, we cannot have that discussion, and that's the

11   fundamental problems that we're going to come back here.

12            We're going to spend time and money in mediation,

13   and we're not going to get back.  If what Mr. Duffy wants is

14   to push --

15            THE COURT:  It sounds like you've made up your

16   mind already.

17            MR. WASHAVSKY:  Well, I don't know how counsel,

18   with all -- you know, honestly, Your Honor, I don't know how

19   to counsel a client when we have one set of facts, and the

20   other side contradicts, and we have nothing but attorney

21   Palavor (ph) to say to us, no, no, no, you're wrong, how can

22   I tell my client to settle it.  You're right, in that

23   regard, we have.  Until there's discovery, I don't know how

24   we could come off of our position.  I don't know how to

25   counsel a client that way.

1          And again, we're happy to move forward, happy to

2    move forward with discovery.  We think that would push the

3    case along and satisfy Mr. Duffy's request here.

4          THE COURT:  Uh-huh.

5          MR. WASHAVSKY:  And we'd be happy to revisit the

6    issue once we actually can have discovery.  And if there's a

7    dispute, bring it to Your Honor and say here's the problem

8    that we have in discovery.

9          I can tell that I haven't really satisfied, Your

10   Honor, but I --

11         THE COURT:  No, all you've told me is you have

12   disputes on the facts and the law which is true in every

13   case.

14         MR. WASHAVSKY:  Well, I don't -- well, Your

15   Honor --

16         THE COURT:  And at the risk of sounding glib, it

17   sounds to me like the case needs adult supervision.  I think

18   you need a grown-up to tell you, you do need discovery, or

19   you don't need discovery, or you turn it over, if you don't

20   turn it over, you're mediating in bad faith, that's what it

21   sounds like to me.

22         MR. WASHAVSKY:  I don't how a mediator -- I don't

23   know when their -- if Your Honor could -- I don't know how

24   to convince Your Honor to the contrary.  I've read through

25   the papers where I understand Your Honor's concern in that

1    regard.  I would tell you from the trustee's position our

2    concern is, there's nothing to hold the -- without

3    discovery, and without Court ordered, you know, true

4    discovery under the federal rules, there's nothing to tie

5    the other side to production.

6            THE COURT:  The mediation may not be successful,

7    and nobody says you have to settle, but it doesn't mean you

8    shouldn't try.  I mean, you had mandatory mediation in every

9    case that was filed after I think November -- it was

10   November 2008 or 2010.

11           MR. DUFFY:  2010, Your Honor.

12           THE COURT:  And this would've been subject to

13   mandatory mediation, but for the fact it was filed in July

14   2009.  I don't understand your resistance.  I mean,

15   obviously there's a lot that's gone on between the

16   parties --

17           MR. WASHAVSKY:  Right.

18           THE COURT:  -- that I'm not privy to, and that's

19   why maybe it's just a better idea to have a person in the

20   room who's a neutral, and a neutral evaluator, who can say

21   you're never going to settle the case if you don't give up

22   this information, or you don't need this information to make

23   a decision or the parties are so far apart that, you know,

24   you might as well just go to trial.

25           MR. WASHAVSKY:  I don't disagree with any of --

Page 36

1   obviously what Your Honor said, it's all very reasonable,

2   but --

3           THE COURT:  Okay.  We're in agreement then.

4           MR. WASHAVSKY:  -- the problem is that we haven't

5   had discovery in the case.

6           THE COURT:  Well, if you --

7           MR. WASHAVSKY:  And there's nothing to tie the

8   other side.  How do I complain to a mediator when I can't

9   force --

10          THE COURT:  This is a common circular.

11          MR. WASHAVSKY:  Yeah.

12          THE COURT:  You say to the mediator, we can't

13  discuss settlement or mediation unless we get this

14  information.

15          MR. WASHAVSKY:  But, Your Honor, I'm not even

16  allowed to serve discovery.  I'm not allowed to follow up

17  yet.  We haven't had the case conference, the case is --

18          THE COURT:  Well, if you need the information and

19  you can't get it, and you convince the mediator that you

20  really need it for mediation, that's the end of the

21  mediation.  And maybe they've mediated in bad faith.

22          MR. WASHAVSKY:  What's the procedural vehicle that

23  allows me to serve discovery?

24          THE COURT:  All right.  Is there anything else?

25          MR. WASHAVSKY:  There's not, Your Honor, I --

Page 37

1          THE COURT:  This question and answer session is

2     not getting us anywhere.

3          MR. WASHAVSKY:  Okay.  Thank you, Your Honor.

4          THE COURT:  All right.  I'm going to grant the

5     motion.  It -- as I said there is a history in this case, or

6     a history between the parties that I think it's best for a

7     mediator to try and work out, and to cut through the

8     animosity, cut out -- cut through the discovery disputes and

9     see if there's a possibility of settlement.  It doesn't mean

10    you have to settle.  It doesn't mean that the case can be

11    settled, but it seems to me that there's no downside to

12    having a mediator try it, in a case which is entirely built

13    around, not just this case, but a procedure that's entirely

14    built around mandatory mediation.

15          Your proposed order didn't identify how you're

16    supposed to select a mediator.

17          MR. DUFFY:  No, Your Honor, we could --

18          THE COURT:  Do you think you could sit in the same

19    room and talk about that, or do you want me to just appoint

20    a mediator?

21          Why don't you let me know.  I'll give you seven

22    days to follow the same procedure, as the rule, if you

23    haven't agreed on a mediator in seven days, write me a

24    letter.  And you can submit your proposed mediation order.

25    Do you have any comments on their order?

1          MR. WASHAVSKY:  No, Your Honor, I think it had --

2    I'd have to take a look, Your Honor, I think --

3          THE COURT:  All right.  Why don't you do this.

4          MR. WASHAVSKY:  -- I can respond them.

5          THE COURT:  Why don't you settle a proposed order

6    directing mediation, giving the parties seven days to agree

7    on a mediator, you, Mr. Duffy, will tell me if you haven't

8    agreed on a mediator in seven days from the date of the

9    order, and that if you haven't, I'll appoint the mediator,

10   and a back-up mediator, okay?

11         MR. DUFFY:  Very well, Your Honor.

12         THE COURT:  All right.  Thank you.

13         MR. WASHAVSKY:  Thank you.

14   (Proceedings concluded at 10:45 AM)

15                     * * * * *

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                         R U L I N G S

4    IDENTIFICATION                                    PAGE

5    Motion of Defendants Alpha Prime Fund Ltd.        37

6    and Senator Fund SPC for an order Authorizing

7    Alternative Dispute Resolution Procedures

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 40

CERTIFICATION

I, Sheila G. Orms, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Date:  April 9, 2014

Shelia G. Orms

Digitally signed by Shelia G. Orms
DN: cn=Shelia G. Orms, o=Veritext, ou,
email=digital@veritext.com, c=US
Date: 2014.04.10 15:01:39 -04'00'

Signature of Approved Transcriber

Veritext

330 Old Country Road

Suite 300

Mineola, NY 11501