David A. Rosenzweig
Melanie M. Kotler
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue
New York, New York  10103
(212) 318-3000

*Attorneys for Northern Trust N.A., as
Trustee of the Nessel Residuary
Trust, successor to the Melvin B.
Nessel 2006 Trust (a/k/a the Melvin
B. Nessel Revocable Trust), and the
Nessel Residuary Trust, successor to
the Melvin B. Nessel 2006 Trust
(a/k/a the Melvin B. Nessel
Revocable Trust)*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,

                            Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                            Defendant.
-----------------------------------------------------------x
In re:

BERNARD L. MADOFF,

                            Debtor.
-----------------------------------------------------------x
IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff Investment
Securities LLC,

                            Plaintiff,

Adv. Pro. No. 08-01789 (BRL)

SIPA LIQUIDATION

(Substantively Consolidated)

Adv. Pro. No. 10-04351 (BRL)

v.

MELVIN B. NESSEL 2006 TRUST U/A/D
3/14/06; MELVIN B. NESSEL REVOCABLE
TRUST; PAUL RAMPELL, in his capacity as
Trustee for the Melvin B. Nelson Revocable
Trust and as former co-Trustee of the Melvin B.
Nessel 2006 Trust u/a/d  3/14/06; DORIS
SHAW, in her capacity as former co-Trustee of
the Melvin B. Nessel 2006 Trust u/a/d 3/14/06;
NORTHERN TRUST N.A., in its capacity as
successor Trustee of the Melvin B. Nessel 2006
Trust u/a/d 3/14/06; GAIL NESSEL; JOHN
NESSEL; GREGORY ANTONIAZZI;
MICHAEL LIEB; and ROBERT LIEB,

                          Defendants.
---------------------------------------------------------x

## NOTICE OF DEFENDANTS' MOTION TO DISMISS

PLEASE TAKE NOTICE that (i) Northern Trust N.A., as Trustee of the Nessel

Residuary Trust, successor to the Melvin B. Nessel 2006 Trust (the "Nessel Trust"), successor to

and/or assignee of the Melvin B. Nessel 2003 Trust and the Melvin B. Nessel 1999 Trust (each

of the foregoing, a/k/a the Melvin B. Nessel Revocable Trust), and (ii) the Nessel Residuary

Trust, successor to the Melvin B. Nessel 2006 Trust, successor to and/or assignee of the Melvin

B. Nessel 2003 Trust and the Melvin B. Nessel 1999 Trust (each of the foregoing, a/k/a the

Melvin B. Nessel Revocable Trust), by and through undersigned counsel, will move for an order

dismissing the plaintiff's complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, before

the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States

Bankruptcy Court, One Bowling Greed, New York, New York 10004, at a hearing to be held on

the motion at a date to be determined by the Bankruptcy Judge in accordance with the procedures

applicable to adversary proceedings. The motion is based upon the accompanying Memorandum

of Law and Declaration of David A. Rosenzweig, Esq., and the exhibits annexed thereto, all

pleadings and papers filed in these proceedings, and any other matters that may properly come

before the Court in connection with the motion.

PLEASE TAKE FURTHER NOTICE that the motion will be scheduled for further

briefing, oral argument, and submissions on a schedule to be determined by the Court.

Dated: April 17, 2014                              Respectfully submitted,
      New York, New York

                                    By: _/s/ David A. Rosenzweig_____
                                      David A. Rosenzweig
                                      Melanie M. Kotler
                                    FULBRIGHT & JAWORSKI LLP
                                    666 Fifth Avenue, 31st Floor
                                    New York, NY  10103-3198
                                    Telephone:  (212) 318-3000
                                    Facsimile:  (212) 318-3400

                                    *Attorneys for Northern Trust N.A., as*
                                    *Trustee of the Nessel Residuary Trust,*
                                    *successor to the Melvin B. Nessel 2006*
                                    *Trust (a/k/a the Melvin B. Nessel Revocable*
                                    *Trust), and the Nessel Residuary Trust,*
                                    *successor to the Melvin B. Nessel 2006*
                                    *Trust (a/k/a the Melvin B. Nessel Revocable*
                                    *Trust)*

David A. Rosenzweig
Melanie M. Kotler
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue
New York, New York  10103
(212) 318-3000

*Attorneys for Northern Trust N.A., as*
*Trustee of the Nessel Residuary*
*Trust, successor to the Melvin B.*
*Nessel 2006 Trust (a/k/a the Melvin*
*B. Nessel Revocable Trust), and the*
*Nessel Residuary Trust, successor to*
*the Melvin B. Nessel 2006 Trust*
*(a/k/a the Melvin B. Nessel*
*Revocable Trust)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,

               Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

               Defendant.

-----------------------------------------------------------x

In re:

BERNARD L. MADOFF,

               Debtor.

-----------------------------------------------------------x

IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff Investment
Securities LLC,

               Plaintiff,

Adv. Pro. No. 08-01789 (BRL)

SIPA LIQUIDATION

(Substantively Consolidated)

Adv. Pro. No. 10-04351 (BRL)

v.

MELVIN B. NESSEL 2006 TRUST U/A/D
3/14/06; MELVIN B. NESSEL REVOCABLE
TRUST; PAUL RAMPELL, in his capacity as
Trustee for the Melvin B. Nelson Revocable
Trust and as former co-Trustee of the Melvin B.
Nessel 2006 Trust u/a/d  3/14/06; DORIS
SHAW, in her capacity as former co-Trustee of
the Melvin B. Nessel 2006 Trust u/a/d 3/14/06;
NORTHERN TRUST N.A., in its capacity as
successor Trustee of the Melvin B. Nessel 2006
Trust u/a/d 3/14/06; GAIL NESSEL; JOHN
NESSEL; GREGORY ANTONIAZZI;
MICHAEL LIEB; and ROBERT LIEB,

                    Defendants.
-----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY ................................................................ 2

    A.    Factual Summary ..................................................................................................... 2

    B.    Procedural Background ............................................................................................ 5

APPLICABLE STANDARD FOR A MOTION FOR DISMISS ............................................. 7

RELIEF REQUESTED ............................................................................................................ 7

    A.    Florida Probate Statute Bars All Claims Not Made Within Two Years of
           Death ....................................................................................................................... 8

    B.    Federal Bankruptcy Law Does Not Trump Florida's Probate Statute ................. 10

    C.    Florida Probate Statute Applies to the  Nessel Trust, Not Just to the
           Deceased Individual .............................................................................................. 14

CONCLUSION ....................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andreas v. Stisser (In re Estate of Stisser)*,
    932 So. 2d 400 (Fla. Dist. Ct. App. 2d Dist. 2006)...................................................................16

*Becklund v. Fleming*,
    869 So. 2d 1 (Fla. Dist. Ct. App. 2d Dist. 2003)................................................................14, 21

*Bush v. Webb*,
    939 So. 2d 215 (Fla. Dist. Ct. App. 1st Dist. 2006)...................................................................9

*Byers v. McAuley*,
    149 U.S. 608 (1893)...................................................................................................................11

*Carvel v. Godley*,
    939 So. 2d 204 (Fla. Dist. Ct. App. 2d Dist. 2006)...................................................................19

*In re Cattafi*,
    237 B.R. 853 (Bankr. M.D. Fla. 1999) .....................................................................................17

*Charles W. v. Maul*,
    214 F.3d 350 (2d Cir. 2000)........................................................................................................7

*Comerica Bank & Trust, F.S.B. v. SDI Operating Partners, L.P.*,
    673 So. 2d 163 (Fla. Dist. Ct. App. 4th Dist. 1996) ..................................................................9

*Dobal v. Perez*,
    809 So. 2d 78 (Fla. Dist. Ct. App. 3d Dist. 2002).....................................................................9

*In re Estate of Bartkowiak*,
    645 So. 2d 1082 (Fla. Dist. Ct. App. 3d Dist. 1994)..................................................................9

*In re Estate of Fleming*,
    786 So. 2d 660 (Fla. Dist. Ct. App. 4th Dist. 2001) ..................................................................9

*Grijalva v. Gulf Bank*,
    2011 WL 282754 (S.D. Fla. Jan. 25, 2011) .........................................................................9, 14

*Int'l Audiotext Network, Inc. v. AT&T*,
    62 F.3d 69 (2d Cir. 1995) ...........................................................................................................7

*In re Jones Storage & Moving, Inc.*,
    00-14862, 2005 WL 2590385 (Bankr. D. Kan. Apr. 14, 2005)................................................18

*Loewer v. New York Life Ins. Co.*,
    773 F. Supp. 1518 (M.D. Fla. 1991) ....................................................................16

*May v. Illinois Nat'l Ins. Co.*,
    771 So. 2d 1143 (Fla. 2000).........................................................................8, 9, 14

*Official Comm. of Unsecured Creditors v. Action Indus. (In re Phar-Mor, Inc.)*,
    178 B.R. 692 (W.D. Pa. 1995) ....................................................................10, 11

*In re Pearlman*,
    2012 WL 2370389 (Bankr. M.D. Fla. June 18, 2012) ..............................10, 11, 14

*Estate of Prince v. Aetna Life Ins. Co.*,
    2009 WL 1046097 (M.D. Fla. Apr. 20, 2009) ......................................................18

*Pufahl v. Estate of Parks*,
    299 U.S. 217 (1936)..............................................................................12, 13

*Pulliam v. Pulliam*,
    10 F. 53 (C.C.W.D. Tenn. 1881) ...........................................................................11

*Reid v. Temple Judea*,
    994 So. 2d 1146 (Fla. Dist. Ct. App. 3d Dist. 2008)...............................................16

*Scott v. Reyes*,
    913 So. 2d 13 (Fla. Dist. Ct. App. 2d Dist. 2005)...................................................18

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    501 B.R. 26 (S.D.N.Y. 2013)................................................................................17

*Security Trust Co. v. Black River Nat'l Bank*,
    187 U.S. 211 (1902).......................................................................................11, 12

*Still v. DeBuono*,
    101 F.3d 888 (2d Cir. 1996).....................................................................................7

*In re STN Enterprises*,
    779 F.2d 901 (2d Cir. 1985)..................................................................................10

*Sutton v. English*,
    246 U.S. 199 (1918)............................................................................................13

*Velzy v. Estate of Miller*,
    502 So. 2d 1297 (Fla. Dist. Ct. App. 2d Dist. 1987).............................................18

*Yonley v. Lavender*,
    21 Wall. 276 (1874) ............................................................................................11

*Zinermon v. Burch*,
    494 U.S. 113 (1990).................................................................................7

**Rules and Statutes**

11 U.S.C. § 108 ...........................................................................................8

11 U.S.C. § 544 ........................................................................................5, 6

11 U.S.C. § 547 ...........................................................................................6

11 U.S.C. § 548 ......................................................................................5, 11

11 U.S.C. § 548(a)(1) ...................................................................................6

11 U.S.C. § 548(b)(1)(B) ..............................................................................6

11 U.S.C. § 550 ........................................................................................5, 6

11 U.S.C. § 551 ...........................................................................................5

Fed. R. Bankr. P. 7012 ...........................................................................1, 2, 7

Fed. R. Civ. P. 12(b)(6) ..........................................................................1, 2, 7

Fed. R. Civ. P. 17 ......................................................................................10

Fed. R. Civ. P. 17(b) ..................................................................................10

Fed. R. Civ. P. 54(b) ...................................................................................6

Fed. R. Civ. P. 546 ....................................................................................10

FLA. STAT. ANN. § 732.2035 .....................................................................19

FLA. STAT. ANN. § 733.607(2)................................................................18, 21

FLA. STAT. ANN. § 733.702 ........................................................................9

FLA. STAT. ANN. § 733.707(3)..............................................................16, 19, 21

FLA. STAT. ANN. § 733.710 .........................................................8, 9, 14, 16, 20

FLA. STAT. ANN. § 736.0505(1)(a) .............................................................17

FLA. STAT. ANN. § 736.0603(1)..................................................................17

FLA. STAT. ANN. § 736.1014 ......................................................................16

FLA. STAT. ANN. § 736.05053(1)(a) ...........................................................19

FLA. STAT. ANN. § 773.710(1) ............................................................................................ 8, 14

N.Y. Debt. & Cred. Law § 273 ............................................................................................... 5

N.Y. Debt. & Cred. Law § 274 ............................................................................................... 5

N.Y. Debt. & Cred. Law § 275 ............................................................................................... 5

N.Y. Debt. & Cred. Law § 276 ............................................................................................... 5

N.Y. Debt. & Cred. Law § 278 ............................................................................................. 5, 6

N.Y. Debt. & Cred. Law § 279 ............................................................................................. 5, 6

Defendants (i) Northern Trust N.A., as Trustee of the Nessel Residuary Trust (the "Nessel Residuary Trust"), successor to the Melvin B. Nessel 2006 Trust (the "Nessel Trust"), successor to and/or assignee of the Melvin B. Nessel 2003 Trust and the Melvin B. Nessel 1999 Trust (each of the foregoing, a/k/a the Melvin B. Nessel Revocable Trust), and (ii) the Nessel Residuary Trust, successor to the Melvin B. Nessel 2006 Trust, successor to and/or assignee of the Melvin B. Nessel 2003 Trust and the Melvin B. Nessel 1999 Trust (each of the foregoing, a/k/a the Melvin B. Nessel Revocable Trust), by and through undersigned counsel, hereby submits this memorandum of law in support of the motion to dismiss (the "Motion to Dismiss") the complaint (the "Complaint")[1] filed in the above-captioned adversary proceeding (the "Adversary Proceeding") by Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), for failure to state claims upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure. The Declaration of David A Rosenzweig, Esq. (the "Rosenzweig Declaration" or "Rosenzweig Decl.") has been filed contemporaneously herewith in further support of the Motion to Dismiss and this memorandum of law.

## PRELIMINARY STATEMENT

This action is one of approximately 900 "claw back" actions by the Trustee to recover transfers received by innocent BLMIS investors. The Trustee sued the Nessel Trust and the other defendants for approximately $23 million, claiming that he can avoid these sums as fraudulent transfers under the New York Debtor & Creditor Law and the Bankruptcy Code. All

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings given in the Complaint.

claims brought against the Nessel Trust by the Trustee are barred and, thus, the Trustee's Complaint should be dismissed for failure to state claims upon which relief may be granted.

The Florida probate statute bars any and all claims against an estate or an estate's beneficiaries not made within two years of the decedent's death. Florida courts have recognized the universal enforcement of this absolute bar in a wide variety of circumstances, including where a creditor has not received notice of the decedent's death. Moreover, federal courts, including the Supreme Court, have long recognized that federal courts cannot ignore states' statutes of repose with respect to when a claim must be asserted against a decedent's estate.

In this case, Florida law required that the Trustee's claims be brought in Mr. Nessel's probate proceeding within the two year period following his death on February 15, 2007, the date on which the Nessel Trust terminated by its terms and all assets were distributed to the Nessel Residuary Trust in accordance with his Last Will and Testament. The Trustee, however, failed to file any proof of claim in Mr. Nessel's Florida probate proceedings, failed to seek any extension, and likewise failed to move for relief to re-open the proceedings and/or file a late proof of claim.

For these reasons, the Complaint should be dismissed with prejudice, pursuant to Federal Rule 12(b)(6) and Bankruptcy Rule 7012.

## BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Summary

In 1988, Account Number 1N0004, entitled "Melvin B Nessel rev Trust Paul Rampell Suc- Trustee" was opened at BLMIS in the name of the Melvin B. Nessel Revocable Trust. Complaint, at ¶ 46 and Ex. B to Complaint. The Nessel Trust, attached as Exhibit [A] to the Rosenzweig Declaration, was a trust formed in 2006 under the laws of the state of Florida. *See* Complaint, at ¶ 8; Nessel Trust, at Article VIII. The Nessel Trust was the successor to and/or

assignee of revocable trusts titled the Melvin B. Nessel 2003 Trust and the Melvin B. Nessel 1999 Trust, which were both terminated by Melvin B. Nessel during his lifetime and from which Mr. Nessel assigned, transferred and delivered to himself as Trustee of the Nessel Trust the assets in each of the foregoing revocable trusts. *See* Nessel Trust, at Introduction (the "Donor hereby assigns, transfers and delivers to himself as Trustee the property listed on Schedule A hereto"); *Id.*, at Schedule A ("One Dollar ($1.00) and any and all tangible, intangible and real property owned by Melvin B. Nessel, individually, as trustee of the Melvin B. Nessel 1999 Trust, and/or the Melvin B. Nessel 2003 Trust").

During his lifetime, Mr. Nessel – as settlor, trustee, and beneficiary – made withdrawals and received distributions from Account Number 1N0004. Complaint, at ¶ 8 ("Melvin B. Nessel during his lifetime received distributions from BLMIS account No. 1N0004 and such distributions were either reinvested in the Melvin B. Nessel 2006 Trust u/a/d 3/14/06 or become assets of the Melvin B. Nessel Estate.").

On or about February 15, 2007, Melvin B. Nessel died and his estate was administered in the Circuit Court for Palm Beach County, Florida, Probate Division. Complaint, at ¶ 7; Exhibit [B] to Rosenzweig Decl. (the "Notice to Creditors"); Exhibit [C] to Rosenzweig Decl. (the "Probate Petition"). At the time of his death, all of Mr. Nessel's estate assets were either held in the Nessel Trust or transferred to the Nessel Trust pursuant to the terms of Mr. Nessel's Last Will and Testament (the "Will"), attached as Exhibit [D] to the Rosenzweig Decl., to be "disposed of in accordance with the terms [of the Nessel Trust]." Will, at Articles I and II. Florida law recognized the integrated nature of the Nessel Trust in Mr. Nessel's probate proceeding by requiring dual notices by the clerk of the probate court to the trustee of the Nessel

Trust and by the trustee to the probate court.  See Exhibit [E] to the Rosenzweig Decl. (the

"Notice of Trust"); Exhibit [F] to the Rosenzweig Decl. (the "Notice to Trustee").

Pursuant to the terms of the Nessel Trust, the Nessel Trust ceased to exist immediately

upon Mr. Nessel's death.  *See* Nessel Trust, at Article II, which expressly provides that:

> ***Upon the death of the Donor, this trust shall terminate, at which
> time the remaining principal thereof, together with any accrued
> and undistributed income, shall be distributed*** to or for the use of
> such one or more appointees, including the Donor's estate, outright
> or in further trust, and ***in such amounts or proportions and
> subject to such terms and conditions, as the Donor appoints by
> Will admitted to probate or other written instrument,*** signed and
> acknowledged by the Donor during the Donor's lifetime.  ***This
> power of appointment shall be exercisable only by a specific
> reference thereto in the Will of the Donor or other written
> instrument,*** and shall not be deemed to have been exercised by any
> general residuary article contained in any Will . . . . (emphasis
> added).

Nessel Trust, at Article II.  After certain other distributions had been made in accordance with

the Nessel Trust, all of the remaining assets thereof were transferred to the Nessel Residuary

Trust, a trust created under Article II, Subdivision B of the Nessel Trust, with a distinct taxpayer

identification number and legal identity.  *See* Exhibit [G] to Rosenzweig Decl. (the "IRS

Assignment of EIN").   The administration of Mr. Nessel's estate was closed on or about

November 20, 2009.   *See* Exhibit [H] to Rosenzweig Decl. (the "Order Closing File

Administratively").

The Trustee failed to file any proof of claim in Mr. Nessel's probate proceedings in

Florida with respect to the claims asserted in this Adversary Proceeding prior to the expiration of

the applicable statute of repose.  Further, the Trustee did not seek any extension.  Nor did the

Trustee move for relief to re-open the proceedings and/or file a late proof of claim.

B.    **Procedural Background**

On December 11, 2008, an action was commenced against BLMIS by the Securities and

Exchange Commission in the United States District Court for the Southern District of New York.

On December 15, 2008, a liquidation proceeding was commenced by the Securities Investor

Protection Corporation ("SIPC") pursuant to SIPA.  Irving H. Picard was appointed as Trustee

for the liquidation of BLMIS.

On or about November 30, 2010, the Trustee commenced the Adversary Proceeding in

the Bankruptcy Court.  The Complaint purports to assert against the defendants several counts

under the Bankruptcy Code and the New York Debtor and Creditor Law for the recovery of

$23,292,732.00 as fraudulent transfers allegedly made during the six-year period prior to the

commencement of BLMIS's December 12, 2008 SIPA proceeding (the "Filing Date").  The

Trustee alleges that the total transfers during the two-year period prior to the Filing Date were

$11,913,701.00 and the Trustee also seeks to recover those as fraudulent transfers under the

Bankruptcy Code and the New York Debtor and Creditor Law.  Complaint, at ¶¶ 47-48 and Ex.

B to Complaint.

Citing SIPA as the authority for his power to bring the Adversary Proceeding (Complaint,

at ¶ 3), the Trustee asserts six claims against the Nessel Trust.  All of the claims are for the

recovery of alleged "fictitious profits" allegedly withdrawn prior to the Filing Date.[2]  The

Trustee asserts claims against the Nessel Trust for actual fraudulent transfers under New York

law, N.Y. D.C.L. §§ 276, 278 & 279, and 11 U.S.C. §§ 544, 548, 550 and 551 (Counts 1 and 3)

and constructive fraudulent transfers under New York law, N.Y. D.C.L. §§ 273, 274, 275 & 278-

79, and 11 U.S.C. §§ 544, 548, 550 and 551 (Counts 2, 4, 5, and 6).  Count 7 of the Complaint

---

[2]      In making that calculation, however, the Trustee fails to give credit as principal to the inter-account
transfers that occurred at times.  *Id.* at Ex. B to the Complaint.

asserts claims for recovery of alleged subsequent transfers under N.Y. D.C.L. §§ 278-79 and 11

U.S.C. § 550 against the individual defendants herein who are alleged to be beneficiaries of the

Nessel Trust and/or to have received distributions from the Nessel Trust.  Complaint, at ¶ 13 and

¶¶ 91-96.

The Trustee does not allege that Mr. Nessel or any other defendants had any knowledge

of the fraud perpetrated by BLMIS.  Nor does the Trustee seek to recover any alleged transfers of

principal from BLMIS to Mr. Nessel, the Nessel Trust or any other defendant.  Finally, the

Trustee does not assert any preference claims under section 547 of the Bankruptcy Code given

that the account was closed in July 2007, long before the 90-day preference period began.

In connection with withdrawal of the reference proceedings, the United States District

Court for the Southern District of New York (Rakoff, J.) (the "District Court") dismissed all

claims herein that sought avoidance of (1) constructive fraudulent transfers under section

548(b)(1)(B) of the Bankruptcy Code and (2) actual and constructive fraudulent transfers or

fraudulent conveyances under provisions of the New York Debtor and Creditor Law

incorporated by section 544 of the Bankruptcy Code.  *See* (a) Order dated April 27, 2012 (ECF

No. 57), (b) Opinion and Order dated April 30, 2012 (ECF No. 72), (c) Supplemental Opinion

and Order dated May 15, 2012 (ECF No. 101), (d) Consent Order Granting Certification

Pursuant to Fed. R. Civ. P. 54(b) for Entry of Final Judgment Dismissing Certain Claim and

Actions dated May 12, 102 (ECF No. 109), and (e) Final Judgment Dismissing Certain Claims

dated May 23, 2012 (ECF No. 124), all entered by the District Court in Misc. No. 12-mc-115 and

collectively the "Dismissal Orders."

Therefore, all claims in the Complaint have been dismissed except for Count 1, which

asserts actual fraudulent transfer claims under section 548(a)(1) of the Bankruptcy Code, and

Count 7, which asserts subsequent transfer claims to the extent that the initial transfers are

avoided in Count 1.  The Trustee appealed the Dismissal Orders to the United States Court of

Appeals for the Second Circuit.  The appeal has been briefed and argued and is awaiting a

decision by the Court of Appeals.

## APPLICABLE STANDARD FOR A MOTION FOR DISMISS

In considering a motion to dismiss under Federal Rule 12(b)(6), made applicable through

Bankruptcy Rule 7012, the Court is required to accept as true the factual assertions in the

complaint and to construe all reasonable inferences in favor of the plaintiff.  *Zinermon v. Burch,*

494 U.S. 113, 118 (1990); *Charles W. v. Maul,* 214 F.3d 350, 356 (2d Cir. 2000).  A motion to

dismiss may be granted when "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief."  *Still v. DeBuono,* 101 F.3d 888, 891

(2d Cir. 1996).  In deciding a motion to dismiss for failure to state a claim, a court is not limited

to considering only the complaint filed by the plaintiff.  A court may consider documents the

defendant attaches to its motion, if the plaintiff incorporated the documents into its complaint by

reference.  *Int'l Audiotext Network, Inc. v. AT&T,* 62 F.3d 69, 72 (2d Cir. 1995).

## RELIEF REQUESTED

The Complaint should be dismissed in its entirety[3] because, accepting the Trustee's

factual assertions as true, there is no set of facts under which the Trustee is entitled to relief.  The

Trustee's Complaint plainly accepts that Melvin B. Nessel received the distributions from the

account, Melvin B. Nessel died on February 15, 2007 and the Estate of Melvin B. Nessel was

administered in the Circuit Court for Palm Beach County, Florida, Probate Division.  Complaint,

at ¶¶ 7-8.  Notwithstanding the foregoing, however, the Trustee failed to timely file a proof of

---

[3]     Given the ongoing appeal of the Dismissal Orders, the Nessel Trust seeks to have this Motion to Dismiss
apply to each Count in the Complaint, notwithstanding the current status as dismissed for Counts 2 through
6.

claim in such proceedings prior to the applicable Florida state probate statute mandating that all such claims be made within two years of Mr. Nessel's death.  Therefore, for the reasons more thoroughly described herein, each of the Trustee's claims in the Complaint must fail.

**A.    Florida Probate Statute Bars All Claims**
       **Not Made Within Two Years of Death**

Section 733.710(1) of the Florida statutes bars all claims not made within two years of the decedent's death:

> (1) Notwithstanding any other provision of the code, 2 years after the death of a person, *neither the decedent's estate, the personal representative, if any,* **nor the beneficiaries** *shall be liable for any claim or cause of action against the decedent*, whether or not letters of administration have been issued, except as provided in this section.

FLA. STAT. ANN. § 733.710(1) (West 2013) (emphasis added).  *See also May v. Illinois Nat'l Ins. Co.*, 771 So. 2d 1143, 1157 (Fla. 2000) (Florida statute 773.710(1) is a "jurisdictional statute of nonclaim that automatically bars untimely claims is not subject to waiver or extension in the probate proceeding.").

Substantially more than two years have passed since the death of Mr. Nessel in February 2007, and the Trustee never acted to file a proof of claim, which should have been properly asserted against the decedent, his estate or its beneficiaries in the probate proceedings during that period.  There is simply no argument that the Trustee can make to circumvent Section 733.710's absolute bar to untimely claims.  The Trustee failed to file a proof of claim at any point, failed to move for leave to file a late claim, or to re-open the proceedings to do so.[4]  The Trustee knows that he is required to file such claims in probate proceedings since he has filed such claims in

---

[4]    While section 108 of the Bankruptcy Code may have extended the deadline for the Trustee to file a proof of claim under the Florida statute, he nonetheless missed that extended deadline.

other cases in order to timely preserve his rights.  *See* Exhibit [I] to Rosenzweig Decl. (the

"Trustee's Statement of Claim in Lock Probate Proceeding").

In *May*, Florida's Supreme Court recognized that "[t]he claimant cannot avoid

[§ 733.710] by showing . . . fraud or estoppel or insufficiency of notice." *May*, 771 So. 2d at

1156 (quoting *Comerica Bank & Trust, F.S.B. v. SDI Operating Partners, L.P.*, 673 So. 2d 163,

165-67 (Fla. Dist. Ct. App. 4th Dist. 1996)).  Moreover, the Florida court in *Comerica* explained

that this section is "an absolute bar – akin to a statute of repose, that the court lacks the power to

avoid." 673 So. 2d at 164.  Florida courts have recognized the universal enforcement of this

absolute bar in a wide variety of circumstances.  As very recently summarized by a Florida court:

> [B]oth prior to and after the *May* decision, numerous Florida
> appellate courts have barred claims filed against a decedent's
> estate that fell outside the two-year bar set forth in § 733.710 and
> did not fall within the statutory exceptions.  *See Bush v. Webb*, 939
> So. 2d 215, 216 (Fla. 1st DCA 2006) (claim for funeral expenses
> barred); *Dobal v. Perez*, 809 So. 2d 78, 79-80 (Fla. 3d DCA 2002)
> (claim barred despite third party's "lulling promises" causing
> delay); *In re Estate of Fleming*, 786 So. 2d 660, 661 (Fla. 4th DCA
> 2001) (claim barred despite issue of whether personal
> representative of estate fraudulently induced claimant into delaying
> her filing of claim); *Comerica*, 673 So. 2d at 167 ("claimant cannot
> avoid it by showing, as he could for the nonclaim period under
> section 733.702, fraud or estoppel or insufficiency of notice"); *In
> re Estate of Bartkowiak*, 645 So. 2d 1082, 1084 (Fla. 3d DCA
> 1994) (claim barred regardless of whether claimant had notice of
> right to file a claim against the estate or personal representative
> should have provided such notice).

*Grijalva v. Gulf Bank*, 2011 WL 282754, *2 (S.D. Fla. Jan. 25, 2011).[5]

Accordingly, each of the Trustee's claims in the Complaint must fail because such claims

were not made in Mr. Nessel's probate proceeding prior to the expiration of Section 733.710's

absolute bar to untimely claims.

---

[5]    The Trustee will likely argue that Mr. Nessel's probate proceeding was closed on or about November 20,
2009.  Yet, the Trustee failed to file any claim in Mr. Nessel's proceeding or file a motion seeking to file a
late claim through that point or thereafter to reopen the proceeding to do so.

B.    **Federal Bankruptcy Law Does Not
       Trump Florida's Probate Statute**

Numerous courts have held that bankruptcy law in general does not trump a state's probate statute of repose. For example, the court in *In re Phar-Mor* stated the following:

> A nonclaim statute forever terminates the estate's capacity to be sued, regardless of the cause of action asserted. Congress, in enacting the Bankruptcy Code, expressly left to state law the determination of an individual's capacity to be sued in adversary proceedings by incorporating Fed.R.Civ.P. 17 into the bankruptcy scheme. Rule 17(b) provides, in relevant part, that the "capacity of an individual . . . to sue or be sued shall be determined by the law of the individual's domicile." In light of this specific provision in the Bankruptcy Code, we submit that preemption would be inappropriate even if we were to conclude that the nonclaim statute is in conflict with section 546.

*Official Comm. of Unsecured Creditors v. Action Indus. (In re Phar-Mor, Inc.)*, 178 B.R. 692, 696 (W.D. Pa. 1995) (citations and footnote omitted). *See also In re STN Enterprises*, 779 F.2d 901 (2d Cir. 1985) (holding that district court had properly denied leave for creditors' committee to bring fraudulent conveyance action against defendant's probate estate because claims against such estate were barred under the applicable state probate statute of repose); *In re Pearlman*, 2012 WL 2370389 (Bankr. M.D. Fla. June 18, 2012) (granting motion to dismiss with prejudice complaint asserting fraudulent transfer claims against Ponzi scheme beneficiary individual and trust because claims were barred by California state probate law).

The *Phar-Mor* court faced the nearly identical question of whether the Bankruptcy Code preempted a state's non-claim probate statute, which, in that case, prohibited "all noncontingent claims against an estate that are not presented within one year of the decedent's death." *Phar-Mor*, 178 B.R. at 693. The court used the reasoning quoted above to determine that bankruptcy law must account for and not conflict with state law in these respects, and accordingly granted

summary judgment against claims made after the period prescribed by Ohio's statute of non-claim. *See id.* at 697.

Similarly, the *Pearlman* court most recently addressed facts nearly identical to those in this case. There, a chapter 11 trustee sought to recover profit payments made from the debtor's Ponzi scheme to a trust as fraudulent transfers under section 548 of the Bankruptcy Code. *Pearlman*, 2012 WL 2370389, at *1. The bankruptcy court held that applicable California probate law prohibited the bringing of any claims against an estate after the expiration of the state's one-year statute of limitations. Indeed, the court held that the California statute barred claims notwithstanding the fact that the Trustee did not receive notice of the defendant's death. *Id.*

Federal courts, including the Supreme Court, have long recognized that federal courts cannot ignore states' statutes of repose with respect to when a claim must be asserted against a decedent's estate, reasoning that such statutes affect substantive property rights rather than mere procedural rules. *See, e.g.*, *Security Trust Co. v. Black River Nat'l Bank*, 187 U.S. 211 (1902) (collecting other Supreme Court cases). In *Security Trust*, the Supreme Court observed several rationales supporting the clear rule that federal courts may not disregard the effect of a state's probate laws with respect to the deadline by which claims must be asserted because such statutes effect individual rights of property. The Court observed:

> The doctrine of the case of *Yonley v. Lavender*, 21 Wall. 276, was approved in *Byers v. McAuley*, 149 U.S. 608, 615, wherein it was held that the ***administration laws of a State are not merely rules of practice for the courts, but laws limiting the rights of parties, to be observed by the Federal courts*** in the enforcement of individual rights.
>
> In *Pulliam v. Pulliam, 10 Fed. Rep. 53, 78*, ***the distinction between ordinary statutes of limitation and statutes of administration of the estates of decedents limiting the time within which creditors***

-11-

> ***must prove their claims, is pointed out in the respect that the
> latter are rules of property as well as statutes of limitation*** . . . .

*Id.* at 229 (emphasis added).

The *Security Trust* Court noted that no judgment procured in federal court could circumvent a state's rules with respect to the enforcement of such claims because to do so would give precedence to a creditor that, for whatever reason, had an ability to assert its claim in federal rather than state court.

> [W]hile a non-resident creditor may get a judgment in a Federal
> court against a resident administrator, and come in on the estate
> according to the law of the State for such payment as that law,
> marshalling the rights of creditors, awards to creditors of his class,
> yet he cannot, because he has obtained a judgment in a Federal
> court, issue execution and take precedence of other creditors who
> have no right to sue in the Federal courts . . . .

*Id.* at 228.

In *Pufahl v. Estate of Parks*, 299 U.S. 217, 225 (1936), the Supreme Court reiterated the impact of this doctrine by observing that although a claim may still be valid or adjudicated in federal court, enforcement of any judgment against the estate or its distributees is still subject to state law, and that such adherence to state law does not conflict with the federal courts' jurisdiction.

> Although the petitioner's demand is based upon a federal statute,
> he may enforce it only in conformity to the law of the forum
> governing the recovery of debts of like nature.
>
> \* \* \*
>
> ***In such a proceeding the state statute of limitations will be
> applied; and*** it seems that the local substantive law governing
> property rights in stock will be observed.  Nor does the principle
> that the jurisdiction of courts of the United States cannot be
> defeated by a state's laws limiting redress of its own citizens to
> certain tribunals create such inconsistency or conflict as to require
> the overriding of the law of the state with respect to distribution of

-12-

the estate of a decedent. Where, as here, a res has come into the possession and under the control of a state court, one having a right to go into the federal court, either by reason of diversity of citizenship, or because he is a federal officer, cannot obtain a judgment or decree entitling him to interfere with the administration of the res by the court having its possession. *While he may not be denied his right to prosecute an action to judgment or a suit to final decree in the federal court, such judgment or decree can do no more than adjudicate the validity and amount of his claim. The marshalling of that claim with others, its priority, if any, in distribution, and all similar questions, are for the probate court upon presentation to it of the judgment or decree of the federal court. Thus, though a receiver should resort to the United States District Court, he would need to present, in a probate court, any judgment obtained, if he desired payment from the assets under the control of the latter.*

The receiver may, as petitioner elected to do, prosecute his claim in a state court. If he does, at least in the absence of Congressional declaration to the contrary, the litigation will be governed by the common and statutory law of the state. *Thus the local statute of limitations applies; and the local law as to the extinguishment of the estate and the liability vel non of distributees controls.*

*Id.* at 225-226 (emphasis added). Cases like *Estate of Parks* established that probate law is controlled by the states and not subject to federal jurisdiction. As stated by the Supreme Court, even before *Estate of Parks*:

By a series of decisions in this court it has been established that since it does not pertain to the general jurisdiction of a court of equity to set aside a will or the probate thereof, or to administer upon the estates of decedents in rem, matters of this character are not within the ordinary equity jurisdiction of the federal courts; that as the authority to make wills is derived from the States, and the requirement of probate is but a regulation to make a will effective, matters of strict probate are not within the jurisdiction of courts of the United States . . . .

*Sutton v. English*, 246 U.S. 199, 205 (1918).

Accordingly, federal bankruptcy law cannot overrule the Florida probate statue barring claims against Mr. Nessel's estate made later than two years after his death.

**C.    Florida Probate Statute Applies to the
        Nessel Trust, Not Just to the Deceased Individual**

Although the Trustee may argue that section 733.710(1) of the Florida Probate Code would not apply to bar claims against the Nessel Trust, this position is not supported by the facts or law.  *See Becklund v. Fleming*, 869 So. 2d 1, 5 (Fla. Dist. Ct. App. 2d Dist. 2003) ("Florida law precludes a creditor holding an enforceable claim in a decedent's estate from filing or maintaining a direct action against a trust for recovery on the claim . . . .  The statute directs that such claims instead be presented and enforced against the grantor's estate.").  *See also In re Pearlman*, 2012 WL 2370389 (Bankr. M.D. Fla. June 18, 2012) (granting motion to dismiss with prejudice complaint asserting fraudulent transfer claims against ponzi scheme beneficiary individual *and trust* because claims were barred by California state probate law).  The Trustee cannot pursue a direct claim against the Nessel Trust as if it were never subjected to probate in Florida's courts.

First, on its face, section 733.710(1) of the Florida Probate Code does not exclude trusts or any other kind of financial vehicle from its protection of ***beneficiaries*** from claims made after the two-year period following the decedent's death.  *See* FLA. STAT. ANN. § 733.710(1) (West 2013) ("(1) Notwithstanding any other provision of the code, 2 years after the death of a person, ***neither the decedent's estate***, the personal representative, if any, ***nor the beneficiaries shall be liable for any claim or cause of action*** against the decedent, whether or not letters of administration have been issued, except as provided in this section.") (emphasis added).  "[A]s the *May* court explained, the only exceptions to the application of § 733.710 are contained in the statute itself."  *Grijalva*, 2011 WL 282754, at *9 (rejecting an attempt to claim a "trust exception" to § 733.710).

In this case, the Nessel Trust and the Nessel Residuary Trust were ***direct beneficiaries*** and integral parts of Mr. Nessel's Will and probate proceeding because the Will incorporated the trust into the estate by directing that all of Mr. Nessel's assets were to be distributed to the Nessel Trust on Mr. Nessel's death "to be added to the principal of such trust *and disposed of in accordance with the terms thereof*." *See* Will, Articles I and II (emphasis added). Simultaneously and upon Mr. Nessel's death, the Nessel Trust ceased to exist and its proceeds were distributed to Mr. Nessel's ***beneficiaries*** through the operation of Mr. Nessel's Will. *See* Nessel Trust, Article II ("Upon the death of the Donor, this trust shall terminate, at which time the remaining principal thereof, together with any accrued and undistributed income, shall be distributed to or for the use of such one or more appointees, including the Donor's estate, outright or in further trust, and in such amounts or proportions and subject to such terms and conditions, as the Donor appoints by Will admitted to probate or other written instrument . . .). In that connection, after certain specific bequests in the Nessel Trust, the balance of the trust estate was to be held in trust for Gail Nessel (Mr. Nessel's wife) and for certain charities. *See* Nessel Trust, Article II (B), (C), (D) (establishing trust for Mrs. Nessel during her lifetime and providing for distribution of remainder following her death first to various hospitals, medical institutes, art museums, universities, Jewish charities, and then to John Nessel, Mr. Nessel's son).

There was no relevant written instrument, other than Mr. Nessel's Will and the Nessel Trust, that directed the distribution of the proceeds. And there can be no dispute that his Will was admitted to probate in Palm Beach County Florida for distribution of such proceeds. Thus, the proceeds of the Nessel Trust were distributed to the ***beneficiaries*** – the Nessel Residuary Trust and others – through operation of Mr. Nessel's Will, without any objection, statement of claim, motion for an extension or any other motion by the Trustee before the probate case was

closed on November 20, 2009. Section 733.710 of the Florida Probate Code unambiguously protects beneficiaries of the decedent's estate, which in this case included the Nessel Trust, the Nessel Residuary Trust and the other defendants.

Second, the trustee of the Nessel Trust – which was Mr. Nessel during his lifetime – is an indispensable party under Florida law for the assertion of any and all claims against a trust. *See Loewer v. New York Life Ins. Co.*, 773 F. Supp. 1518, 1523 (M.D. Fla. 1991) ("[T]he general rule is that a trustee is an indispensable party to an action affecting the corpus or assets of the trust, without whom the action cannot proceed. . . ."); *Reid v. Temple Judea*, 994 So. 2d 1146, 1148 (Fla. Dist. Ct. App. 3d Dist. 2008) (holding that a trustee is "an indispensable party in all proceedings affecting the estate") (citing *Andreas v. Stisser (In re Estate of Stisser)*, 932 So. 2d 400, 402 (Fla. Dist. Ct. App. 2d Dist. 2006)). *See also* FLA. STAT. ANN. § 736.1014 ("After the death of a settlor, no creditor of the settlor may bring, maintain, or continue any direct action against a trust described in s. 733.707(3), the trustee of the trust, or any beneficiary of the trust that is dependent on the individual liability of the settlor. Such claims and causes of action against the settlor shall be presented and enforced against the settlor's estate . . ."). Under Florida law, the Trustee's claims against the Nessel Trust must have been asserted against the then trustee (Mr. Nessel) as the proper party, namely by the filing of a statement of claim in the trustee's probate proceeding.[6] The Trustee knows this step is required. He filed a Statement of Claim in a similar probate proceeding asserting claims against a decedent who, like Mr. Nessel, was the trustee of a trust that held the BLMIS account. *See* Trustee's Statement of Claim in

---

[6]     Any argument that the Trustee need not have filed a claim in Mr. Nessel's probate proceeding is akin to a party seeking to preserve diversity jurisdiction by consciously not naming an indispensable party. Such tactics cannot be countenanced by the Court in light of Florida law that renders the trustee an "indispensable party."

Lock Probate Proceeding (asserting claim in probate proceeding for "money withdrawn from the account of which Decedent was a co-trustee and beneficiary").

Finally, Mr. Nessel was the grantor, trustee and sole beneficiary of the Nessel Trust during his lifetime with the ability to revoke the trust in its entirety at any time and revest the assets in himself.  Thus, the Nessel Trust – a revocable trust – was not an entity separate and apart from Mr. Nessel during his lifetime with respect to creditors, and his trust and estate were subject to creditors' claims during the probate proceeding.  *See In re Cattafi*, 237 B.R. 853, 856 (Bankr. M.D. Fla. 1999) (holding that as a revocable lifetime trust, "creditors [could] reach his interest under the trust.").  *See also* FLA. STAT. ANN. §  736.0505(1)(a) (West 2013) ("The property of a revocable trust is subject to the claims of the settlor's creditors during the settlor's lifetime to the extent the property would not otherwise be exempt by law if owned directly by the settlor.");  *Id.* §  736.0603(1) ("While a trust is revocable, the duties of the trustee are owed exclusively to the settlor.").   Under such circumstances, the Nessel Trust, *which shared Mr. Nessel's social security number*, was an alter ego, not a protected financial vehicle distinct from Mr. Nessel, during his lifetime.  Indeed, the Trustee in his Complaint even states that "***Melvin B. Nessel during his lifetime received distributions*** from BLMIS account No. 1N0004 and such distributions were either reinvested in the" Nessel Trust or became assets of the Melvin B. Nessel Estate."   Complaint, at ¶ 8 (emphasis added).   Mr. Nessel made and received the withdrawals from the account during his lifetime and, accordingly, any claims against the Nessel Trust must necessarily also be claims against Mr. Nessel himself and subject to his estate's Florida probate proceeding.[7]

---

[7]     Furthermore, to the extent the Nessel Trust or the Nessel Residuary Trust were deemed subsequent transferees of any avoidable transfers to Mr. Nessel, such parties would still be entitled to raise the defense of timeliness under the Florida non-claim statute.  *See Sec. Investor Prot. Corp. v. Bernard  L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 35 (S.D.N.Y. 2013) (acknowledging that "a subsequent-transferee defendant is

Moreover, Florida Courts have recognized that the current statutory scheme substantially limits the application of the common law "trust exception" to a creditor's need to subject their claim to a decedent's probate proceeding. *See Scott v. Reyes*, 913 So. 2d 13, 17-18 (Fla. Dist. Ct. App. 2d Dist. 2005) (describing the court's reexamination of the "trust exception" in light of certain amendments made in 1993 and its conclusion "that the amendments had 'so substantially modified the prior "nonclaim" provisions of the Code, that those theories of exception have been substantially altered and narrowed even though some of the later cases continue to pay lip service to the theories and the cases that espoused them.'") (citing *Velzy v. Estate of Miller*, 502 So. 2d 1297, 1299-1300 (Fla. Dist. Ct. App. 2d Dist. 1987)). In *Scott v. Reyes*, for example, the court concluded that the creditor in that case was "required to file a claim in the estate unless the Decedent held the accounts on [the creditor's] behalf either by way of an express trust or some other clearly defined means." *Id.* (citation and internal quotations omitted). As in the *Reyes* case, the Trustee cannot claim that the Nessel Trust existed for the Trustee's benefit and was therefore required to file a claim against the estate.

Nor did Mr. Nessel's death distinguish the liabilities of his estate from the liabilities of his trust under Florida law because "Florida law acknowledges the liability of a decedent's Trust for the expenses of her estate where any portion of that trust is revocable at the time of a decedent's death." *Estate of Prince v. Aetna Life Ins. Co.*, 2009 WL 1046097, at *6 (M.D. Fla. Apr. 20, 2009) (citing FLA. STAT. ANN. § 733.607(2) ("If, after providing for statutory entitlements and all devises other than residuary devises, the assets of the decedent's estate are insufficient to pay the expenses of the administration and obligations of the decedent's estate, the

---

entitled to bring a statute-of-limitations defense to avoidance only if the Trustee failed to bring any avoidance action with respect to the initial transfer"); *In re Jones Storage & Moving, Inc.*, 00-14862, 2005 WL 2590385, at *5 (Bankr. D. Kan. Apr. 14, 2005) (permitting a subsequent-transferee defendant to assert the untimeliness of the underlying avoidance action as a defense against recovery even though the initial transferee defendant failed to raise the defense in the earlier action).

personal representative is entitled to payment from the trustee of a trust described in s. 733.707(3), in the amount the personal representative certifies in writing to be required to satisfy the insufficiency, . . . .")); *see also Carvel v. Godley*, 939 So. 2d 204, 208 (Fla. Dist. Ct. App. 2d Dist. 2006) ("Here, the trust was revocable.  Even had the trust instrument been silent, the trust would have borne the responsibility of payment to the extent that the estate has no money to pay.").  *See also* FLA. STAT. ANN. § 733.707(3) (West 2013) ("Any portion of a trust with respect to which a decedent who is the grantor has at the decedent's death a right of revocation, as defined in paragraph (e), either alone or in conjunction with any other person, is liable for the expenses of the administration and obligations of the decedent's estate to the extent the decedent's estate is insufficient to pay them as provided in ss. 733.607(2) and 736.05053."); *Id.* § 736.05053(1)(a) ("A trustee of a trust described in s. 733.707(3) shall pay to the personal representative of a settlor's estate any amounts that the personal representative certifies in writing to the trustee are required to pay the expenses of the administration and obligations of the settlor's estate. Payments made by a trustee, unless otherwise provided in the trust instrument, must be charged as expenses of the trust without a contribution from anyone.").[8]  Indeed, the Notice of Trust filed in Mr. Nessel's Florida probate proceeding acknowledged as much.  *See* Notice of Trust (noticing that the Nessel Trust was "liable for the expenses of the administration of the Decedent's estate").

In sum, the alleged fraudulent transfers were made to Mr. Nessel, not to an entity that was legally separate from Mr. Nessel with respect to creditors; the trust proceeds were then distributed to its beneficiaries – including the Nessel Residuary Trust – in accordance with Mr.

---

[8]    Similarly, for purposes of calculating a spouse's elective share, Florida courts include property "transferred by the decedent to the extent that at the time of the decedent's death the transfer was revocable by the decedent alone."  FLA. STAT. ANN. § 732.2035 (West 2013).

Nessel's probated Will; and, therefore, those proceeds were protected by section 733.710 after two years lapsed.  Although the Trustee studiously refused to file a proof of claim in the probate proceeding (or even name the estate in this adversary proceeding), the failure to file such a claim is fatal to the Trustee's avoidance claims herein.

## CONCLUSION

For all of the foregoing reasons, "the Trust was protected from any liability it may have had under sections 733.607(2) and 733.707(3) because the Creditor did not hold an 'enforceable and timely filed' claim in the Decedent's estate." *Becklund*, 869 So. 2d at 4 (emphasis added). Accordingly, the Court should dismiss the Complaint.

Dated: April 17, 2014                          Respectfully submitted,
      New York, New York

                                          By: /s/ David A. Rosenzweig
                                           David A. Rosenzweig
                                         Melanie M. Kotler
                                         FULBRIGHT & JAWORSKI LLP
                                         666 Fifth Avenue, 31st Floor
                                         New York, NY  10103-3198
                                         Telephone:  (212) 318-3000
                                         Facsimile:  (212) 318-3400

                                         *Attorneys for Northern Trust N.A., as Trustee of the Nessel Residuary Trust, successor to the Melvin B. Nessel 2006 Trust (a/k/a the Melvin B. Nessel Revocable Trust), and the Nessel Residuary Trust, successor to the Melvin B. Nessel 2006 Trust (a/k/a the Melvin B. Nessel Revocable Trust)*