David A. Rosenzweig
Melanie M. Kotler
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue
New York, New York  10103
(212) 318-3000

*Attorneys for Northern Trust N.A., as
Trustee of the Nessel Residuary
Trust, successor to the Melvin B.
Nessel 2006 Trust (a/k/a the Melvin
B. Nessel Revocable Trust), and the
Nessel Residuary Trust, successor to
the Melvin B. Nessel 2006 Trust
(a/k/a the Melvin B. Nessel
Revocable Trust)*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,

|  |  |
|---|---|
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (BRL) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |

-----------------------------------------------------------x
In re:

BERNARD L. MADOFF,

        Debtor.
-----------------------------------------------------------x
IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff Investment
Securities LLC,

|  |  |
|---|---|
| Plaintiff, | Adv. Pro. No. 10-04351 (BRL) |

v.

MELVIN B. NESSEL 2006 TRUST U/A/D
3/14/06; MELVIN B. NESSEL REVOCABLE
TRUST; PAUL RAMPELL, in his capacity as
Trustee for the Melvin B. Nelson Revocable
Trust and as former co-Trustee of the Melvin B.
Nessel 2006 Trust u/a/d  3/14/06; DORIS
SHAW, in her capacity as former co-Trustee of
the Melvin B. Nessel 2006 Trust u/a/d 3/14/06;
NORTHERN TRUST N.A., in its capacity as
successor Trustee of the Melvin B. Nessel 2006
Trust u/a/d 3/14/06; GAIL NESSEL; JOHN
NESSEL; GREGORY ANTONIAZZI;
MICHAEL LIEB; and ROBERT LIEB,

                                        Defendants.
------------------------------------------------------------x

## DECLARATION OF DAVID A. ROSENZWEIG IN
## SUPPORT OF DEFENDANTS' MOTION TO DISMISS

DAVID A. ROSENZWEIG, pursuant to 28 U.S.C. § 1746, declares as follows:

      1.     I am a partner of the law firm of Fulbright & Jaworski LLP, counsel for

defendants (i) Northern Trust N.A., as Trustee of the Nessel Residuary Trust (the "Nessel

Residuary Trust"), successor to the Melvin B. Nessel 2006 Trust (the "Nessel Trust"), successor

to and/or assignee of the Melvin B. Nessel 2003 Trust and the Melvin B. Nessel 1999 Trust

(each of the foregoing, a/k/a the Melvin B. Nessel Revocable Trust), and (ii) the Nessel

Residuary Trust, successor to the Melvin B. Nessel 2006 Trust, successor to and/or assignee of

the Melvin B. Nessel 2003 Trust and the Melvin B. Nessel 1999 Trust (each of the foregoing,

a/k/a the Melvin B. Nessel Revocable Trust).  I submit this declaration in support of the motion

to dismiss (the "Motion to Dismiss") the complaint (the "Complaint")[1] filed in the above-

captioned adversary proceeding by Irving H. Picard, as trustee for the liquidation of the business

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings given in the Motion to Dismiss or the Complaint, as applicable.

of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act, for failure to state claims upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure. More specifically, I place into the record certain relevant documents and Court filings.

2.      Annexed hereto as **Exhibit A** is a copy of the Nessel Trust.

3.      Annexed hereto as **Exhibit B** is a copy of the Notice to Creditors filed in the Mr. Nessel's probate proceedings in the Circuit Court for Palm Beach County, Florida, Probate Division (the "Probate Proceedings").

4.      Attached hereto as **Exhibit C** is a copy of the Petition for Administration filed in the Probate Proceedings.

5.      Annexed hereto as **Exhibit D** is a copy of Mr. Nessel's Last Will and Testament.

6.      Attached hereto as **Exhibit E** is a copy of the Notice of Trust filed in the Probate Proceedings.

7.      Attached hereto as **Exhibit F** is a copy of the Notice to Trustee filed in the Probate Proceedings.

8.      Annexed hereto as **Exhibit G** is a copy of the IRS assignment of EIN for the Nessel Residuary Trust.

9.      Attached hereto as **Exhibit H** is a copy of the Order Closing File Administratively filed in the Probate Proceedings.

10.     Attached hereto as **Exhibit I** is a copy of the Trustee's Statement of Claim in Lock Probate Proceeding.

I declare under penalty of perjury under the laws of New York and the laws of the

United States that the foregoing statements are true and correct.

Executed this 17th day of April, 2014, at New York, New York.


/s/ David A. Rosenzweig
DAVID A. ROSENZWEIG

**Exhibit A**

<u>MELVIN B. NESSEL</u>

<u>2006 TRUST</u>

Dated:  March 14, 2006


by


MELVIN B. NESSEL,

as Donor and Trustee.

NT000401

<u>INDEX</u>

<u>Page No.</u>

ARTICLE I
Disposition of Trust Income and Principal During Donor's Lifetime ........................................ 1

ARTICLE II
Disposition of Trust Upon Donor's Death .............................................................................. 2

ARTICLE III
Trustees .............................................................................................................................. 7

ARTICLE IV
Trust Administration ........................................................................................................... 10

ARTICLE V
Survivorship ....................................................................................................................... 18

ARTICLE VI
Right to Revoke, Alter or Amend ........................................................................................ 19

ARTICLE VII
Payment of Taxes, Debts and Expenses ............................................................................. 19

ARTICLE VIII
Governing Law ................................................................................................................... 20

ARTICLE IX
Exculpation ........................................................................................................................ 20

ARTICLE X
Marital Deduction .............................................................................................................. 20

ARTICLE XI
Charitable Annuity Remainder Trust Provisions .................................................................. 22

ARTICLE XII
Definitions .......................................................................................................................... 25

ARTICLE XIII
Acceptance of Trusteeship ................................................................................................. 26

Acknowledgments
SCHEDULE A

NT000402

## MELVIN B. NESSEL 2006 TRUST

DECLARATION OF TRUST dated as of this 14th day of March, 2006, made by MELVIN B. NESSEL (the "Donor"), as Donor and Trustee.

The Donor hereby assigns, transfers and delivers to himself as Trustee the property listed on Schedule A hereto, which, together with any additions, is to be held in trust in accordance with the provisions of this Declaration.

## ARTICLE I

### Disposition of Trust Income and Principal During Donor's Lifetime

A.     During the Donor's lifetime, the Donor may, at any time or from time to time while not Incapacitated, as such term is defined herein, withdraw any part or all of the net income and principal of this trust.  In addition, the Trustees may, at any time or from time to time, pay or apply any part or all of the net income and principal of this trust to or for the benefit of the Donor for any reason whatsoever, without regard to any other resources available to or for the benefit of the Donor.  Furthermore, the Trustees shall pay or apply to or for the benefit of any person or entity so much of the net income and principal of this trust as the Donor shall request in writing.  Pursuant to the preceding sentence, any distribution made pursuant to a written request of the Donor shall be treated as a withdrawal by the Donor and a subsequent gift by the Donor to the distributee for all purposes hereof, it being the Donor's intention to avoid the expense and delay of multiple retitling of assets.

B.     Notwithstanding the provisions of Subdivision A of this Article, if the Donor is Incapacitated, while such incapacity continues, (i)  the Trustees shall pay or apply any part or all of the net income and principal of this trust to or for the benefit of the Donor for the Donor's support, comfort, care and benefit and to maintain the Donor's accustomed standard of living, and (ii) the Trustees are authorized, at any time or from time to time, to pay or apply any

9959464.1

NT000403

part or all of the net income and principal of this trust for any other reason which the Trustees, in their absolute discretion, deem advisable, without regard to any other resources available to or for the benefit of the Donor.

C.    Any net income of this trust not withdrawn, paid or applied in accordance with the preceding provisions of this Article shall be added to principal whenever convenient.

## ARTICLE II

### Disposition of Trust Upon Donor's Death

Upon the death of the Donor, this trust shall terminate, at which time the remaining principal thereof, together with any accrued and undistributed income, shall be distributed to or for the use of such one or more appointees, including the Donor's estate, outright or in further trust, and in such amounts or proportions and subject to such terms and conditions, as the Donor appoints by Will admitted to probate or other written instrument, signed and acknowledged by the Donor during the Donor's lifetime. This power of appointment shall be exercisable only by a specific reference thereto in the Will of the Donor or other written instrument, and shall not be deemed to have been exercised by any general residuary article contained in any Will. Any property not effectively so appointed, together with any property passing under this Declaration as a result of the Donor's death pursuant to the Will of the Donor or otherwise (collectively, the "Trust Fund"), shall be disposed of as follows:

### SPECIFIC BEQUESTS

A.    1.    Twenty Five Thousand Dollars ($25,000) shall be distributed to the Donor's friend, GREGORY ANTONIAZZI, if he shall survive the Donor.

2.    One Hundred Thousand Dollars ($100,000) shall be distributed to each of the Donor's nephews, MICHAEL LIEB and ROBERT LIEB, who shall survive the Donor.

9959464.1

NT000404

3.    One Million Two Hundred Seventy Five Thousand Dollars ($1,275,000), less the total amount of any taxable inter vivos gifts made by the Donor after July 1, 2005, shall be distributed to the Donor's son, JOHN NESSEL, if he shall survive the Donor.

<u>RESIDUARY PROVISIONS</u>

B.    The balance of the Trust Fund, after the payment of debts, expenses and Death Taxes as herein provided, shall be disposed of as follows:

1.    If the Donor's spouse, GAIL NESSEL, shall survive him, is cohabiting with him at the time of his death, and no Dissolution of Marriage has occurred between them at such time, as such term is defined herein, then the Trustees shall hold the balance of the Trust Fund in one or more separate trusts in accordance with the provisions of Subdivision C of this Article, which trusts, separately or together, shall meet the requirements of pledge agreements between the Donor and certain Charitable Organizations referred to hereinbelow.

2.    If the Donor's spouse, GAIL NESSEL, shall not survive him, is not cohabiting with him at the time of his death, or a Dissolution of Marriage has occurred between them at such time, then the Trustees shall distribute the Trust Fund in accordance with the provisions of Subdivision D of this Article.

<u>MARITAL TRUST</u>

C.    Pursuant to the foregoing provisions of this Article, certain property may be held by the Trustees in one or more separate trusts for the benefit of the Donor's spouse, GAIL NESSEL, in accordance with the provisions of this Subdivision. The income and principal of each such trust shall be disposed of as follows:

1.    The net income of this trust shall be paid to or applied for the benefit of the Donor's spouse, GAIL NESSEL, during her lifetime in convenient installments, as

9959464.1

- 3 -

determined by the Trustees, but not less often than annually. Net income shall include interest, dividends, rent, royalties and the like, but shall exclude principal and capital gain, whether realized or unrealized.

2.    Upon the death of the Donor's spouse, GAIL NESSEL, this trust shall terminate, at which time the remaining principal thereof shall be disposed of in accordance with the provisions of Subdivision D of this Article, applied as if the Donor had died immediately after the death of GAIL NESSEL.

3.    This trust shall be administered in accordance with the provisions set forth in Article X below.

D.    Pursuant to the foregoing provisions of this Article, certain property is to be disposed of in accordance with the provisions of this Subdivision. The Trustee shall make distributions of property to satisfy the following charitable pledges, to the extent such pledges have not been satisfied by the Donor or the Donor's spouse, subject to each recipient being a Charitable Organization.

1.    A sum shall be distributed to the HERITAGE SOCIETY OF THE JEWISH FEDERATION OF PALM BEACH COUNTY, INC. if necessary to satisfy the Enforceable Pledge Agreement signed by the Donor on March 14, 2006 in connection with such Charitable Organization.

2.    A sum shall be distributed to the DANA-FARBER CANCER INSTITUTE if necessary to satisfy the Enforceable Pledge Agreement signed by the Donor on March 14, 2006 in connection with such Charitable Organization.

9959464.1                                 - 4 -

NT000406

3.      A sum shall be distributed to the TWO-TEN NATIONAL FOUNDATION, INC. if necessary to satisfy the Enforceable Pledge Agreement signed by the Donor on March 14, 2006 in connection with such Charitable Organization.

4.      A sum shall be distributed to BRANDEIS UNIVERSITY if necessary to satisfy the Enforceable Pledge Agreement signed by the Donor on March 14, 2006 in connection with such Charitable Organization.

5.      A sum shall be distributed to THE NORTON GALLERY AND SCHOOL OF ART, INC., (also known as the NORTON MUSEUM OF ART), together with the Donor's art collection remaining at such time, if necessary to satisfy the Donor's obligations, if any, to such Charitable Organization.

6.      A sum shall be distributed to THE MASSACHUSETTS GENERAL HOSPITAL if necessary to satisfy the Enforceable Pledge Agreement signed by the Donor on March 14, 2006 in connection with such Charitable Organization.

7.      If the Donor's son, JOHN NESSEL, shall then be living, the balance of the property disposable under this Subdivision shall be held by the Trustee in a separate Charitable Remainder Annuity Trust for the benefit of JOHN NESSEL in accordance with Subdivision E of this Article.

8.      If the Donor's son, JOHN NESSEL, shall not be living then, the balance of the property disposable under this Subdivision shall be distributed in accordance with Subdivision F of this Article.

### CHARITABLE REMAINDER ANNUITY TRUST

E.      Pursuant to the foregoing provisions of this Article, certain property may be held by the Trustees in a separate Charitable Remainder Annuity Trusts for the benefit of the

9959464.1                           - 5 -

NT000407

Donor's son, JOHN NESSEL, in accordance with the provisions of this Subdivision. The income and principal of such trust shall be disposed of as follows:

1.      Commencing as of the date of the Donor's death and continuing during the lifetime of JOHN NESSEL, the Trustees shall, in and for each taxable year of this trust, pay to JOHN NESSEL (the "Recipient") an annuity amount (the "Annuity Amount") equal to five percent (5%) (the "Payout Percentage") of the net fair market value of the property which constitutes the principal of this trust, valued as of the date of the Donor's death (or the alternate valuation date, if applicable) (the "Initial Trust Principal").

2.      Upon the death of JOHN NESSEL, this trust shall terminate and the principal and income of the trust remaining at that time, other than any principal or income which may be required to be distributed in satisfaction of the final Annuity Amount payment to JOHN NESSEL or the estate of JOHN NESSEL, as the case may be, shall be distributed to such one or more Charitable Organizations, and in such amounts, as are set forth in Subdivision F of this Article.

3.      This trust shall be administered in accordance with the provisions set forth in Article XI below.

## ULTIMATE BENEFICIARIES

F.      Pursuant to the provisions of this Article, certain property is to be distributed in accordance with the provisions of this Subdivision. Such property shall be distributed in equal shares to each of BRANDEIS UNIVERSITY and MASSACHUSETTS GENERAL HOSPITAL which are Charitable Organizations at such time. If neither is a Charitable Organization at the time property is distributable to it, then such property shall be distributed to one or more Charitable

9959464.1                                   - 6 -

NT000408

Organizations to which the Donor made charitable contributions during his lifetime as selected by the Trustee.

## ARTICLE III

### Trustees

A.    1.    If MELVIN B. NESSEL ceases to act as Trustees of any trust hereunder for any reason, PAUL RAMPELL shall become successor Trustee of such trust. If PAUL RAMPELL ceases to act as successor Trustee of any trust hereunder for any reason, DORIS S. SHAW shall become successor Trustee of such trust.

2.    Notwithstanding any other provision of this Declaration, each individual or entity serving as a Trustee hereunder, except for Melvin B. Nessel, shall be an Independent Trustee, as defined herein.

B.    The individual Trustees of any trust acting hereunder are authorized, at any time or from time to time, by an instrument in writing, signed and acknowledged, to appoint one or more individuals or a series of individuals, an entity, or a corporation with trust powers to act as Trustee of such trust hereunder, in succession to or in addition to any Trustee herein appointed or any other Trustee appointed pursuant to the power herein granted. An appointment may supersede the Donor's appointment of successor Trustees under the preceding provisions of this Article. A successor Trustee may be appointed to succeed a particular Trustee or to succeed any Trustee.

C.    Any instrument appointing a successor Trustee pursuant to the authority granted in Subdivision B of this Article may be revoked at any time prior to the qualification of the appointee by the individual Trustees at the time being in office, whether or not such Trustees were the Trustees signing such instrument. In the event that the individual Trustees, at any time in office, have executed more than one instrument appointing successor Trustees, then the unrevoked instrument bearing the most recent date shall govern.

D.    If at any time there shall be no Trustee acting with respect to any trust hereunder, a majority of the beneficiaries then eligible to receive income or principal of such trust who have then reached the age of majority or, if none, a majority of the then eligible minor beneficiaries of such trust shall appoint one or more individuals or a series of individuals or a corporation with trust powers to act as Trustee of such trust, provided, however, that (i) in the case of any beneficiary who is a child of the Donor who is a minor, such child's other parent or, if such other parent is then deceased, the guardian of the person of such minor shall participate in

9959464.1

-7-

NT000409

such decision on behalf of such minor, (ii) in the case of any other beneficiary who is a minor, the parent of such minor who is an issue of the grandparents of the Donor or, if such parent is not then living, the other parent or, if such other parent is also not then living, the guardian of the person of such minor shall participate in such decision on behalf of such minor, and (iii) in the case of any person deemed to be Incapacitated the guardian, committee or other legal representative, if any, of such incapacitated person shall participate in such decision on behalf of such incapacitated person.

E.      Notwithstanding anything herein to the contrary, no Trustee hereunder shall be entitled to receive any commission or other compensation by reason of the termination of any trust created hereunder if the property comprising such terminating trust is distributable to such Trustee as Trustee (or co-Trustee) of another trust, whether created hereunder or otherwise.

F.      The ability of any co-Trustee to qualify or act hereunder shall not be affected by any other co-Trustee's failing to qualify or ceasing to act hereunder, except as otherwise provided herein or in any designation made pursuant to the provisions of this Article.

G.      Any individual Trustee may, at any time or from time to time, by an instrument in writing, delegate any right, power, duty, authority and privilege, whether or not discretionary, to any other Trustee for such period or periods of time as may be specified in such written instrument, provided, however, that any such instrument may be revoked at any time and that no discretionary power may be delegated to any Trustee who is disqualified from exercising such discretionary power. Any individual Trustee hereunder is authorized to delegate to any suitable person or entity any ministerial duties in connection with the rights, powers, duties, authorities and privileges herein conferred, whether by means of a power of attorney or otherwise.

H.      Ministerial duties of the Trustees (such as signing checks and executing brokerage transactions) may be performed by any one Trustee.

I.      Wherever used in this Declaration, the terms "Trustee" and "Trustees" shall refer to the trustee or trustees from time to time acting hereunder as the context may require. Each Trustee acting hereunder shall have the same rights, powers, duties, authorities and privileges, whether or not discretionary, whether such Trustee is named herein or appointed pursuant to the terms hereof.

J.      No bond or other security shall be required of any Trustee acting hereunder for the faithful performance of such Trustee's duties, any law of any jurisdiction to the contrary notwithstanding; and if, notwithstanding this direction, any such bond or other security shall be required by any law, statute or rule of court, no sureties shall be required thereon.

K.      No beneficiary acting as a Trustee hereunder (other than the Donor) may participate in the exercise of a discretionary power to distribute to himself or herself the income or principal of any trust of which he or she is a beneficiary.

L.      No Trustee acting hereunder (other than the Donor) shall make any distribution in discharge of personal legal obligations of such Trustee.

9959464.1                                          - 8 -

NT000410

M.    Any individual Trustee hereunder who shall have disclaimed any interest in a trust hereunder or in property which, pursuant to a disclaimer, passes to a trust hereunder shall be disqualified from participating in the exercise of the Trustees' discretionary power to distribute the income or principal of such trust.

N.    If by reason of any provision hereunder, or the law of any jurisdiction in which it may be necessary to perform any act, any one or more Trustees hereunder shall be disqualified from acting, then all of the acts required to be performed in such jurisdiction shall be performed by the other Trustees then acting hereunder.

O.    Any individual Trustee, at any time in office, is authorized to resign by an instrument in writing, signed and acknowledged and delivered to the remaining or successor Trustee. The resignation of any individual Trustee acting alone hereunder shall be effective only upon the appointment and qualification of a successor Trustee.

P.    Except as otherwise provided herein, in every case in which it would be necessary for all of the Trustees of any trust hereunder to join in the taking of any action, such action may nonetheless be taken by a majority, and any action so taken shall be as valid and effectual as though taken by all.

Q.    Any corporation into which any corporation acting as a Trustee hereunder shall be merged or converted or with which it shall be consolidated, or any corporation resulting from any merger, conversion, reorganization or consolidation to which it shall be a party, or any corporation to which all or substantially all of its trust business shall be transferred, shall be the successor of such corporation as a Trustee hereunder, without the execution or filing of any instrument or the performance of any further act and shall have the same rights, powers, duties, authorities and privileges as though originally named in this Declaration.

R.    The individuals appointing any corporate Trustee are authorized to determine the compensation to be paid to such corporate Trustee (including in amounts greater than amounts that would otherwise be authorized by law), and such compensation may be changed at any time by mutual agreement of the corporate Trustee and the then acting individual Trustees.

S.    If any person acting as a Trustee hereunder is deemed to be Incapacitated as provided herein, the receipt of the certification that such Trustee is Incapacitated shall constitute the resignation of such Trustee. If, following a certification that the Donor is Incapacitated, the Trustees receive a certificate signed by two (2) qualified physicians (including the physician then primarily responsible for the Donor's care) stating that the Donor is no longer Incapacitated, the Donor shall thereafter be deemed not to be Incapacitated for purposes of this Agreement (including, without limitation, Article I hereof) and shall be restored as a Trustee without any court proceeding.

T.    Any appointment of a Trustee hereunder shall take effect when accepted in writing.

9959464.1

- 9 -

NT000411

U.    No successor Trustee shall be required to investigate or audit the accounts or acts of any prior Trustee or to take any action with respect thereto, either before or after qualifying.

V.    No individual Trustee named in this Declaration has special investment skills and none shall be deemed to have such skills.

W.    The Donor is authorized to remove with or without cause any Trustee of any trust hereunder.

X.    The individual Trustees of any trust acting hereunder are authorized, at any time or from time to time, to remove with or without cause any corporate Trustee of such trust.

## ARTICLE IV

### Trust Administration

A.    Subject to the provisions of Subdivisions C and E of Article II and Articles X and XI hereof, in addition to all powers given to them by law or any other provision of this Declaration, the Trustees shall have the following powers with respect to any property, real or personal, at any time held by them, exercisable in their absolute discretion upon such terms and conditions as they deem advisable, without any liability therefor and without authorization by any court:

1.    To retain any such property (including, without limitation, any residence or any partial interest therein) for any period of time;

2.    To hold any such property uninvested for any period of time;

3.    To sell, exchange or otherwise dispose of any such property at any time and in any manner, at public or private sale, for cash or on credit, without any obligation to solicit multiple offers or to obtain an appraisal to establish the value thereof;

4.    To invest and reinvest in and to acquire, by purchase, exchange or otherwise, and retain for any period, any kind of real or personal property, foreign or domestic, or undivided interests therein, including, but not limited to, common or preferred stocks, bonds or other unsecured obligations, mutual funds, covered short sales, mortgages, interests in investment companies or investment trusts, interests in common trust funds (whether or not maintained by any Trustee hereunder), interests in partnerships (general or limited) or other entities, and securities, or to hold cash uninvested; and to acquire any such investment from any

9959464.1                                    - 10 -

NT000412

person including any beneficiary hereunder, the estate of any deceased beneficiary hereunder, or any estate or trust in which any beneficiary hereunder has an interest;

5.    To retain, hold, invest and reinvest in any such property without diversification as to kind or amount and without being limited to investments in which fiduciaries are authorized by law or any rule of court to invest funds, even though such property shall be at such time (or shall thereafter become) unproductive of income or speculative, and without any liability for loss because of depreciation in value;

6.    To operate or participate in the operation of any business enterprise or to dispose of any part or all of such business enterprise;

7.    To make or refrain from making any additional investment in any partnership or other entity in which any trust hereunder has an interest to preserve the value of such interest or to maintain or change such trust's proportionate interest therein or for any other reason;

8.    To form one or more corporations, partnerships (general or limited), joint ventures or associations with others, in any jurisdiction; and to transfer any such property to such entity or entities;

9.    To exercise all rights, powers and privileges with respect to stocks or other securities whether in person or by general or limited proxy, discretionary or otherwise, including voting rights, warrants, options and conversion, subscription or other rights; to make any necessary payments in connection therewith; and to sell any such rights or to refrain from exercising any such rights by permitting them to expire;

10.    To enter into voting trust agreements, alone or with others, including the right to designate voting trustees (including any Trustee hereunder) under any such agreement, for the maximum period allowable under applicable state law, including extensions, even if such period extends beyond the term of any trust hereunder;

11.    To consent to, participate in or oppose any reorganization, readjustment, recapitalization, foreclosure, consolidation, merger, dissolution, liquidation, sale or purchase of assets, lease, mortgage, contract or other plan, action or proceeding by any corporation or other entity; to deposit securities or other property under, or become a party to, any agreement or plan for any such action or proceeding or for the protection of holders of such property; to subscribe to new securities issued pursuant to any such action or proceeding; to delegate discretionary powers to any reorganization, protective or similar committee; and to exchange any property for any other property and to pay any assessments or other expenses in connection with any of the foregoing;

12.    To sell, lease (including sublease), convey, transfer or exchange upon any terms and conditions (including in the case of any lease for a period exceeding the maximum terms specifically authorized by law) any real property interest to any individual or entity; to receive in payment or exchange therefor cash or other property; to renew or extend

9959464.1                          - 11 -

NT000413

leases; to amend or modify leases; and to grant options to lease and options to renew leases for any period, regardless of whether any consideration is received in exchange therefor;

13.    To manage, operate and develop any such property; to vacate and abandon any real property interest; to demolish any buildings or improvements thereon; to erect, repair, alter and improve buildings or improvements thereon; to subdivide any such property; to dedicate any such property for public use; to grant easements; to adjust boundaries; to partition and to pay any sums of money necessary for equality of partition; to perfect the title thereof; from time to time to expend either from principal or income or from both such amounts for the foregoing or for the development, alteration, improvement, maintenance or repair of any such property or buildings or improvement thereon; to establish any reserves for depreciation, obsolescence, amortization or other waste with respect to any such property; and to insure any such property against any risks, hazards and liabilities;

14.    To mortgage any such property; to renew, extend, modify, subordinate, reduce, pay off, satisfy or replace any mortgage, note or bond, or any guarantee thereof; to waive or to forbear from suing or enforcing any default in the performance of any covenant or condition of or payment due under any mortgage, note or bond (including a guarantee thereof); to foreclose any mortgage; to purchase any mortgaged property; to take a deed in lieu of foreclosure and to pay consideration therefor; and to continue mortgage investments after maturity, either with or without renewal or extension;

15.    To abandon, destroy or convey with or without consideration any such property which they deem to be worthless, hazardous or of insufficient value to warrant keeping or protecting and thereafter to have no further responsibility with respect to such property; to abstain from the payment of taxes, water rents, assessments, repairs, maintenance and upkeep of any such property; or to permit any such property to be lost by tax sale or other proceedings;

16.    To drill, test, explore, mine, develop and otherwise exploit any oil, gas, mineral or other interests of any kind in natural resources (including interests commonly known as working interests in oil, gas or any other mineral); to enter into pooling, unitization, repressurization and any other type of agreement relating to the development, operation and conservation of mineral properties, including an agreement delegating discretionary and ministerial powers, in connection therewith; and to rely upon or adopt any recommendation of the operator thereof without any duty to make an independent investigation of any such recommendation in connection with any such properties or interests;

17.    To grant options, warranties, guaranties and indemnities, for any term whether or not extending beyond the term fixed by any law, at any time, whether or not consideration is received in exchange therefor;

18.    To borrow money from any person or entity, including any Trustee hereunder, for any purpose, and give security therefor (by pledging or hypothecating any property held hereunder) or not give security therefor; to renew, modify or extend existing loans on similar or different terms; and the lender shall have no obligation to inquire as to the application of the sums loaned or as to the necessity or propriety of the loan;

9959464.1                                           - 12 -

NT000414

19.     To make or guarantee any loans, either secured or unsecured, and to pledge or hypothecate any property held hereunder with regard to any such loan or guarantee, in such amounts, upon such terms and to such persons (including, but not limited to, any beneficiary hereunder, the estate of any deceased beneficiary hereunder or any estate or trust in which any beneficiary hereunder has an interest), trusts, partnerships, corporations or other entities as they may determine;

20.     To adjust, compromise, settle, abandon, renew, release or submit to arbitration any claim, controversy or litigation; to institute, prosecute or defend any proceeding in connection therewith; and to extend the time for payment of any such claim, with or without security;

21.     To hold property in their names as Trustees or, to the extent permitted by law, in their names without designation of any fiduciary capacity or in the name of a nominee or unregistered or in such form as will pass by delivery;

22.     To make any payment, receive any money or other property, take any action, and make, execute, deliver and receive any contract, deed, instrument or other document which is advisable to exercise any of the powers herein or to carry into effect any provision contained herein;

23.     To make any payment or distribution required or authorized hereunder either in kind (at market value unless otherwise directed herein) (including all right, title and interest in and to any policy or policies of insurance on the life of the Donor) or cash, or a combination thereof; and to allocate any property distributable hereunder, including an undivided interest therein, to any trust, part, fund or share whether or not the same kind of property or a fractional interest therein is allocated to other trusts, parts, funds or shares, all without regard to the federal income tax basis of such property;

24.     To apportion any receipts, disbursements, expenses and other charges between income and principal in any manner they deem appropriate, provided, however, that any individual Trustee hereunder who (a) is then eligible to receive income or principal of any trust created hereunder or (b) shall have disclaimed any interest in any trust created hereunder or in property which, pursuant to a disclaimer, passes to any trust created hereunder or (c) shall then have the legal obligation to support any person then eligible to receive income or principal of any trust created hereunder shall be disqualified from participating in all determinations under the preceding provisions of this Paragraph that are not in accordance with the applicable state law that would otherwise apply absent the discretion conferred hereunder;

25.     To remove all or any part of the assets of, or the situs of administration of, any trust hereunder from one jurisdiction to another jurisdiction, either within or without the United States, at any time or from time to time, and to elect that the laws of such other jurisdiction shall thereafter govern to such extent as the Trustees deem necessary or advisable, provided that this Agreement shall be as valid, effective and enforceable as it was under the laws of the State of Florida as of the date of the Donor's execution of this Agreement;

9959464.1                                  - 13 -

NT000415

26.    With respect to all or any part of the principal (including a pecuniary amount) of any trust created hereunder for the primary benefit of only one individual (other than the Donor's spouse), other than any trust with an inclusion ratio of zero for purposes of Chapter 13 of the Code, by signed written instrument, in an effort to reduce overall transfer taxes, (a) to give such beneficiary a general testamentary power of appointment within the meaning of Section 2041 of the Code (including a power that requires, during such beneficiary's lifetime, the consent of the Trustees other than a beneficiary of the affected trust) over any part or all of the principal of such trust; (b) to eliminate such power for all or any part of such principal as to which such power was previously created; and (c) to release irrevocably the right to eliminate such power; provided, however, that any Trustee who is also a beneficiary of the affected trust or who disclaims any interest in such trust or in property which passes to such trust pursuant to a disclaimer shall be disqualified from participating in the exercise of such authority;

27.    To divide any trust hereunder, by signed written instrument or otherwise, into two or more separate trusts in such fractional shares as shall be deemed advisable, whether for generation-skipping tax purposes or otherwise (and any property distributed in kind in satisfaction of such division shall be distributed at market value); and to merge any trust hereunder with any one or more trusts hereunder having identical terms and conditions for the same beneficiary or beneficiaries;

28.    In any case in which the Trustees are required or permitted to divide any such property into shares, they are not required physically to divide any of such property but may assign undivided interests therein to the various shares;

29.    To administer any two or more of the trusts hereunder and any trust created by either or both of the Donor and the Donor's spouse (whether having different or the same beneficiaries) or any part thereof as a single fund by holding the principal of such trusts in one or more consolidated funds in which the separate trusts shall have undivided interests;

30.    After the termination of any trust hereunder, to exercise all rights, powers and privileges herein conferred until the complete distribution of the property held in such trust;

31.    To act or refrain from acting in all respects as if financially disinterested, regardless of the existence of any conflict of interest between any individual Trustee hereunder and any trust or fund hereunder, it being the Donor's intention to waive the rule of undivided loyalty and any other conflict of interest rule which but for this provision would be applicable to any such individual Trustee;

32.    To employ and pay the compensation of any accountants, custodians, experts, counsel, legal or investment, and other agents (including, without limitation, for the purpose of preparing annual or periodic accountings for any trust created hereunder), irrespective of whether any person so employed shall be a Trustee hereunder and irrespective of whether any firm or other entity so employed shall be one in which a Trustee hereunder may be a partner, a member, or have an ownership interest or with which a Trustee hereunder may have an employment relationship; and, except as otherwise expressly provided herein, such compensation may be paid without diminution of or charging the same against the commissions or

9959464.1                                    - 14 -

NT000416

compensation, if any, of any Trustee hereunder; and any Trustee who shall be a partner, a member, or have an ownership interest in or an employment relationship with a firm or entity so employed shall nevertheless be entitled to his or her share of the compensation paid to such firm or entity; and to delegate discretionary and ministerial powers to, and to act or to refrain from acting upon information or advice furnished by, such accountants, custodians, experts, counsel or other agents without liability for any act done or omission made in good faith in reliance upon such information or advice;

33.    In connection with any such property distributable to a minor and not otherwise directed to be held in trust hereunder (including any discretionary distributions from any such trust), (i) to distribute all or any portion thereof to such minor, or to a guardian of the property of such minor wherever appointed without requiring ancillary guardianship, or to any custodian under any Uniform Gifts to Minors Act, Uniform Transfers to Minors Act or any similar statute of any jurisdiction, with power to select any person or corporation with trust powers (including any fiduciary hereunder) to be such custodian and with power to extend such custodianship to age twenty-one (21), without any obligation to see to the use or application thereof or to make inquiry with respect to any other resources available to or for the use of such minor, the receipt of the individual to whom any such distribution is so made being a complete discharge as to such distribution; (ii) to distribute all or any portion thereof to the Minority Trustee, as hereinafter defined, to be held in a separate trust for such minor's benefit, and hold the same without bond, security or any obligation to render periodic accountings until such minor reaches age twenty-one (21) or sooner dies, and at any time or from time to time to distribute all or any portion of such property as provided in (i) hereof or to pay or apply the same to or for the benefit of such minor for any reason whatsoever (adding to the principal of the trust any income not so distributed whenever convenient) and when such minor reaches age twenty-one (21) or sooner dies, to distribute the same to such minor or to the legal representative of such minor's estate, as the case may be; and the Minority Trustee of any such trust for the benefit of a minor under this provision shall be the parent of such minor who is an issue of the Donor's great-grandparents or, if such parent is not then living, to such minor's other parent or, if also deceased, such person or corporation with trust powers (including any fiduciary hereunder) as the Trustees shall select, and (iii) any Minority Trustee acting hereunder shall have the powers granted herein to the Trustees and shall be authorized to appoint one or more individuals or a series of individuals or a corporation with trust powers to act as Minority Trustee of such trust, in succession to or in addition to such Minority Trustee or any other Minority Trustee appointed pursuant to the power herein granted (which appointment may be revoked at any time prior to the qualification of the appointee by the then acting Minority Trustee of such trust);

34.    In connection with any such property distributable to a person who, by reason of advanced age, illness or other physical or mental incapacity is incapable of handling or disposing of his or her property, as determined by two (2) qualified physicians including, if any, the physician then primarily responsible for the medical care of such person, (i) to set aside all or any portion thereof in a separate fund, with the title vested in such person, and hold the same without bond, security or any obligation to render periodic accountings until such person is no longer under such disability, or sooner dies, and at any time or from time to time to apply all or any portion of such property directly to the health, care, comfort, maintenance, support or use of such person (adding to the principal of the fund any income not so distributed

9959464.1                                      - 15 -

NT000417

whenever convenient), and when such person dies, to distribute the same to the legal representative of such person's estate; (ii) to distribute all or any portion of such property to such person for any reason whatsoever or to (a) the guardian, committee or other legal representative, wherever appointed, of such person, (b) any individual with whom such person resides, or (c) any other individual having the care and control of such person, the receipt of the individual to whom any such distribution is so made being a complete discharge as to such distribution; and (iii) to appoint one or more individuals or a series of individuals or a corporation with trust powers to act as fiduciary of such fund, in succession to or in addition to such fiduciary or any other fiduciary appointed pursuant to the power herein granted (which appointment may be revoked at any time prior to the qualification of the appointee by the then acting fiduciary of such fund), provided, however, that in no event shall this power apply to the extent that it would cause an otherwise eligible trust not to qualify for the federal estate tax marital or charitable deduction;

35.   Notwithstanding any provision of this Declaration to the contrary, if any trust created hereunder holds stock in an "S Corporation," as defined in Section 1361 of the Code (the "S Trust"), to (i) distribute to the then eligible income beneficiary or beneficiaries thereof such portion or all of the net income of the S Trust as shall be necessary to qualify such trust as a "Qualified Subchapter S Trust" ("QSST") or "Electing Small Business Trust" ("ESBT"), as the case may be, or (ii) hold any such stock in a separate trust to be administered in the same manner as the S Trust, subject however to the provisions of clause (i) of this Paragraph; and, in addition, to perform all acts necessary to qualify any such S Trust or separate trust created under this Paragraph as a QSST or ESBT, as the case may be, including, without limitation, (x) obtaining beneficiary approval and election under Section 1361(d) or 1361(e) of the Code to qualify any such trust as a QSST or ESBT, as the case may be, and (y) electing to have such trust taxed as an ESBT, provided such trust meets all of the requirements for an ESBT; and (z) modifying, reforming or revising any such trust or any other provision of this Declaration, and releasing any discretionary powers with respect to any such trust;

36.   To consolidate and hold as one trust any trust or trusts created or to be created hereunder with any other trust created or to be created hereunder or under any other instrument with identical dispositive provisions, whether to achieve economies of administration, for tax reasons or for any other reason;

37.   In addition to the methods provided by law, each fiduciary hereunder is authorized at any time and from time to time by acknowledged instrument filed with such fiduciary's co-fiduciary or co-fiduciaries to release any power, authority or discretion conferred upon such fiduciary by this instrument or by law, whether discretionary or ministerial, for such period of time as shall be specified in such instrument, and during the effectiveness of such release, such power, authority or discretion shall be exercised solely by the remaining qualified co-fiduciary or co-fiduciaries; and

38.   Generally, to exercise all such rights and powers, do all such acts, and enter into all such agreements, as persons owning similar property in their own right might lawfully exercise, do or enter into.

9959464.1                                    - 16 -

NT000418

B.    Except as otherwise expressly provided herein, there shall be no apportionment of accrued income and undistributed income on hand to any beneficiary whose interest therein shall terminate by death or otherwise prior to the time when such accrued income is due and payable to the Trustees or prior to the time when such undistributed income is actually distributed to such beneficiary, as the case may be. The whole of such accrued and undistributed income on hand shall, after the deduction therefrom of any proper charges or advances against the same, be paid to the next income beneficiary, if any, of the trust which produced such accrued and undistributed income or, if there shall be no such income beneficiary, then to the person or persons entitled to the principal of such trust.

C.    No disposition, charge or encumbrance on the income or principal of any trust, or any part thereof, by any beneficiary hereunder by way of anticipation shall be valid or in any way binding upon the Trustees, and no beneficiary shall have the right to assign, transfer, encumber or otherwise dispose of such income or principal, or any part thereof (other than through the exercise of a power of appointment granted hereunder), until the same shall be paid to such beneficiary by the Trustees, and no income or principal or any part thereof shall be liable to any claim of any creditor of any such beneficiary.

D.    In any judicial proceeding relating to this Declaration or any trust created hereunder, if a party to the proceeding has the same interest as a person under a disability, it shall not be necessary to serve the person under the disability.

E.    The right of any beneficiary to any payment or distribution of income or principal shall in every case be subject to any charge or deduction which the Trustees may make against such payment or distribution under the authority granted to the Trustees by law or any provision hereof.

F.    No person dealing with any Trustee hereunder shall be bound to see to the application or disposition of any property transferred to such Trustee, or to inquire into the authority for or propriety of any action by such Trustee.

G.    1.    The Donor authorizes and requests the Trustees, in their absolute discretion, to take the following principles into account when exercising any discretion to pay or apply income or principal of any trust created hereunder to or for the benefit of any beneficiary who is a permissible recipient of either or both income and principal of more than one trust created under any one or more of this Declaration and any other instrument or instruments (collectively, "such trusts"):

a.    Any payment or application to or for the benefit of a non-skip person (as defined in Section 2613(b) of the Code) should be made out of such trusts sequentially (to the exhaustion of each such trust respectively) in descending order of the inclusion ratios (as defined in Section 2642(a) of the Code) of such trusts.

b.    Any payment or application to or for the benefit of a skip person (as defined in Section 2613(a) of the Code) should be made out of such trusts sequentially (to the exhaustion of each such trust respectively) in ascending order of the inclusion ratios of such trusts, provided, however, that if the exclusion contained in Section 2611(b) of the Code,

9959464.1

- 17 -

NT000419

relating to educational or medical expenses, is applicable, such payment or application should be made as provided in Subparagraph a of this Paragraph, applied as if such beneficiary were a non-skip person.

2.    Notwithstanding anything herein to the contrary, the Donor authorizes and requests the Trustees, in their absolute discretion, when making any mandatory distribution of a portion or all of the principal or accumulated income of any trust or trusts created hereunder or of any property to be transferred to any trust or trusts hereunder at any time, to make such distribution by aggregating the value of all such principal, accumulated income or property required to be distributed at such time and making such distribution in a manner consistent with the principles stated in Paragraph 1 of this Subdivision.

H.    1.    If an election is made to treat any trust created hereunder as an ESBT, no Trustee of such ESBT shall be a foreign trustee, and the Trustees shall take no action that causes such ESBT to be classified as a foreign trust.

2.    Notwithstanding any contrary provision of this Declaration, for purposes of qualifying or maintaining the status of any trust hereunder as an ESBT, no interest in such trust may be transferred in such a manner that in the hands of the transferee it will be deemed to have been acquired by purchase.

ARTICLE V

Survivorship

A.    In the event that the Donor's spouse and the Donor shall die in a common accident or disaster or under such circumstances that it is difficult or impracticable to determine who survived the other, then the Donor's spouse shall be deemed to have predeceased the Donor.

B.    In the event any of the Donor's issue shall die on or prior to the expiration of ninety (90) days after the date of the Donor's death, the Donor directs that for all purposes of this Declaration (other than the provisions of Article IV hereof) such issue shall be deemed to have predeceased the Donor.

C.    In the event that any beneficiary under this Declaration and the Donor or any other person upon whose death such beneficiary shall become entitled to receive either income or principal hereunder shall die in a common accident or disaster or under such circumstances that it is difficult or impracticable to determine who survived the other, then for the purposes of this Declaration such beneficiary shall be deemed to have predeceased the Donor or such other person, as the case may be.

9959464.1                                    - 18 -

NT000420

## ARTICLE VI

### Right to Revoke, Alter or Amend

      A.     The Donor, at any time or from time to time during the Donor's lifetime, shall have the right by an instrument in writing, signed and acknowledged and delivered to the Trustees:

      1.     To revoke in whole or in part any of the trust or trusts created by this Declaration; and

      2.     To alter, amend or modify this Declaration in any respect whatsoever.

      B.     After the Donor's death, this Declaration may be amended by the Trustees for the following limited purposes: (i) to clarify the meaning of any provision so as to avoid the necessity of instructions by a court; (ii) to alter or add to the administrative powers of the Trustees for the better accomplishment of the trust purposes; and (iii) to conform any provision to laws or regulations (including any provision of the Code or any regulations promulgated thereunder) affecting the federal or state transfer tax consequences of any trust hereunder, including specifically (but without limitation) any such laws or regulations governing the treatment of any trust created hereunder as an ESBT. All amendments of this Declaration shall be effected by written instrument signed and acknowledged by all of the Trustees.

## ARTICLE VII

### Payment of Taxes, Debts and Expenses

      A.     Following the death of the Donor and upon the request of the legal representatives of the Donor's estate, the Trustees shall pay to such legal representatives or directly to the appropriate person or entities from the Trust Fund such sum or sums as shall be certified by them to be due for any part or all of (i) the debts of the Donor (other than any debt secured by real property or the stock of any cooperative apartment corporation or any property specifically bequeathed under the Donor's Will or under this Declaration), (ii) the expenses of the Donor's last illness and funeral, regardless of any limitation by rule of law or court, and (iii) the expenses of administering the estate of the Donor, in all jurisdictions, without regard to the amount, if any, of any such debts or expenses that would otherwise be payable from the Trust Fund under applicable law. All such payments shall be charged against the Trust Fund without apportionment therein.

      B.     Following the death of the Donor and upon the request of the legal representatives of the Donor's estate, the Trustees shall pay to such legal representatives or directly to the appropriate governmental authorities from the Trust Fund such sum or sums as shall be certified by such legal representatives to be due for any part or all of any estate, transfer, succession or other inheritance taxes imposed by reason of the Donor's death (exclusive of any tax imposed as a result of Chapter 13 of the Code or a corresponding provision of state law), and any interest and penalties thereon ("Death Taxes") imposed by the United States or any state

9959464.1

- 19 -

NT000421

thereof or any foreign country or subdivision thereof as a result of the death of the Donor, without regard to the amount, if any, of any such Death Taxes that would otherwise be payable from the Trust Fund under applicable law. All such payments shall be charged against the Trust Fund without apportionment therein.

C.   The Trustees shall have no duty to inquire into the propriety of the payment of such sum or sums so certified to them by such legal representatives pursuant to the provisions of Subdivisions A and B of this Article or to inquire into the disposition of any sums so paid to such legal representatives, persons or other entities or appropriate governmental authorities.

## ARTICLE VIII

### Governing Law

This Declaration shall be construed, regulated and governed by, and all questions pertaining to the validity, construction, effect and administration of this Declaration and the trusts created hereunder shall be determined by, the laws of the State of Florida, without regard to conflict of law principles.

## ARTICLE IX

### Exculpation

No individual Trustee shall be liable for any act or omission in administering any trust created hereunder, unless such act or omission is the result of such Trustee's actual fraud, gross negligence or willful misconduct. Notwithstanding the preceding sentence, if any individual Trustee becomes liable for any such act or omission that is not the result of such Trustee's actual fraud, gross negligence or willful misconduct, such Trustee shall be entitled to indemnity out of the property of such trust. No Trustee hereunder shall be responsible for any act or omission of any other Trustee.

## ARTICLE X

### Marital Deduction

A.   With respect to each trust hereunder for the benefit of the Donor's spouse which is eligible to qualify for the federal estate tax marital deduction, the term "net income" shall mean the net income to which a sole life income beneficiary of a trust is entitled under the laws from time to time in effect of the State of Florida (notwithstanding anything to the contrary in any other provision of this Declaration). Each such trust shall be funded with assets which qualify for the federal estate tax marital deduction and which are not subject to any estate, transfer, succession, inheritance or other death duty or tax by any foreign country or subdivision thereof, or the proceeds of such assets, except to the extent that such assets or proceeds are insufficient to fund fully such trust. In the event that any property not productive of income shall be held in such trust, the Trustees, upon the written request of the Donor's spouse, shall make

9959464.1

- 20 -

NT000422

such property productive of income or shall convert such property into income producing property within a reasonable period of time.

B.     With respect to each trust for the benefit of the Donor's spouse hereunder which is eligible to qualify for the federal estate tax marital deduction, upon the death of the Donor's spouse, all undistributed or accrued income of such trust shall be distributed to the legal representatives of the Donor's spouse's estate.

C.     If the Donor's legal representatives elect to qualify a specific portion of any trust for the benefit of the Donor's spouse as qualified terminable interest property, the Trustees are hereby directed that any distribution of principal to or for the benefit of the Donor's spouse shall first be made from the qualified terminable interest portion of such trust.

D.     In the event that the Donor's spouse is a beneficiary of one or more trusts created hereunder that will not be includible in the Donor's spouse's gross estate for federal estate tax purposes, the Donor requests, but does not direct, that no distributions to or for the Donor's spouse's benefit be made from any such trust until the principal of each trust created hereunder that will be includible in the Donor's spouse's gross estate for federal estate tax purposes shall be exhausted.

E.     If the Donor's legal representatives exercise the special election provided by Section 2652(a)(3) of the Code with respect to all or any portion of the property held in a qualified terminable interest property trust hereunder, the Trustees shall set apart property constituting such portion in a separate trust so that its inclusion ratio shall be zero.

F.     Upon the Donor's spouse's death, except to the extent the Donor's spouse's Will contains a different direction for the payment of death taxes with respect to any trust created hereunder, or any portion thereof, that is includible in the Donor's spouse's gross estate by reason of Section 2044 of the Code, the Trustees shall pay from the principal of such trust, or such portion thereof, such amount as the legal representatives of the estate of the Donor's spouse determine to be equal to the excess (the "Excess") of (i) all death taxes that become payable by reason of the Donor's spouse's death, over (ii) all death taxes that would become payable by reason of the Donor's spouse's death if the Donor's spouse's gross estate had not included any part of the principal of such trust. Notwithstanding the preceding sentence, if there is more than one trust created hereunder that is includible in whole or in part in the gross estate of the Donor's spouse by reason of Section 2044 of the Code, and if such trusts (or portions) have different federal generation-skipping transfer tax ("GST tax") inclusion ratios, then all such payments shall be made from such trusts (or portions) sequentially (until each such trust (or portion) is exhausted) in descending order of inclusion ratios, with the charge against any trusts (or portions) with the same inclusion ratio to be divided between or among them in such manner, proportionate or otherwise, as the Trustees determine. Any such payment shall be made either to the legal representatives of the estate of the Donor's spouse for purposes of payment by such legal representatives of such death taxes or to the respective taxing authorities as the Trustees determine in their absolute discretion, provided, however, that the Trustees shall make any such payment at such time or times as such death taxes are due. The Trustees shall rely solely upon the written certification of the legal representatives of the estate of the Donor's spouse of the amount of the Excess payable to each taxing authority and shall have no duty or responsibility to

9959464.1                                    - 21 -

NT000423

make any further inquiry or take part in the determination or apportionment of such death taxes, and upon making any such payment shall have no further liability to anyone in connection therewith. For purposes of this Subdivision, "death taxes" means the estate, transfer, succession or other inheritance taxes imposed by reason of the Donor's spouse's death (exclusive of any tax imposed as a result of Chapter 13 of the Code or a corresponding provision of state law), and any interest and penalties thereon, imposed by the United States or any state thereof or any foreign country or any subdivision thereof.

## ARTICLE XI

### Charitable Remainder Annuity Trust Provisions

Each charitable remainder annuity trust created hereunder shall be administered according to the following provisions.

A.      The obligation to pay the Annuity Amount shall commence on the date of the Donor's death, but payment of the Annuity Amount may be deferred during a period from the date of the Donor's death to the end of the taxable year of this trust in which occurs the complete funding of this trust. Within a reasonable time after the end of the taxable year in which occurs the complete funding of this trust, the Trustees shall pay to JOHN NESSEL (the "Recipient"), in the case of an underpayment, or shall receive from the Recipient, in the case of an overpayment, the difference between (i) the total of any amounts in respect of the Annuity Amount actually paid to the Recipient, plus interest on such amounts, compounded annually, computed at such interest rate as the regulations under Section 664 of the Code shall prescribe for this trust for such computation for such period and (ii) the total of such amounts properly payable plus interest on such amounts, compounded annually, computed at such interest rate as the regulations under Section 664 of the Code shall prescribe for this trust for such computation for such period.

B.      1.      The Annuity Amount shall be distributed to the Recipient in equal quarterly installments, on the last day of March, June, September and December of each taxable year of this trust, from the ordinary net income of this trust. To the extent that such ordinary net income is insufficient to pay the Annuity Amount, the Annuity Amount shall be paid from the short-term capital gain of this trust or, if insufficient, from the long-term capital gain of this trust or, if insufficient, from the net income of this trust which is exempt from income taxes (in each case payable from this trust's net income or capital gain, as the case may be, in the order herein set forth to the extent of (i) first, the net income or capital gain, as the case may be, for this trust's taxable year and (ii) second, this trust's undistributed net income or capital gain, as the case may be, for prior taxable years) or, if insufficient, from the principal of this trust. All such distributions in payment of the Annuity Amount shall be subject to the netting and ordering rules applicable to capital gains distributions provided in the Code and applicable regulations. As used in this Subparagraph, the terms "short-term capital gain" and "long-term capital gain" are defined as in Section 1222 of the Code.

9959464.1                                    - 22 -

2.      The last quarterly installment of the Annuity Amount may be paid within a reasonable time after the close of the taxable year for which it is due if the entire Annuity Amount in the hands of the Recipient (or the estate of the Recipient, as the case may be) is characterized only as income from the categories described in Section 664(b)(1), (2) or (3) of the Code, except to the extent it is characterized as corpus described in Section 664(b)(4) of the Code because (i) this trust distributes property (other than cash) that it owned at the close of the taxable year for which the Annuity Amount is due to pay the Annuity Amount, and (ii) my Trustees elect to treat any income generated by the distribution of the Annuity Amount as occurring on the last day of such taxable year.

C.      Any income of this trust for a taxable year which shall exceed the Annuity Amount shall be accumulated and added to principal, any such capitalized income thereafter to be disposed of as a part of the principal of this trust.

D.      If the first or the last taxable year of this trust or both such years shall have fewer than 365 days, the Annuity Amount for such short taxable year or years shall be prorated on a daily basis, in accordance with Section 1.664-2 of the regulations.

E.      No additional contributions shall be made to this trust after the initial contribution.  The initial contribution, however, shall be deemed to consist of all property passing to the trust by reason of the Donor's death.

F.      The computation of the value of the assets transferred to this trust shall be controlled by the valuations as finally determined in the federal estate tax proceeding relating to the Donor's estate.  If the initial net fair market value of the assets constituting this trust is determined incorrectly by the Trustees, then, within a reasonable period after the final determination of the correct value, the Trustees shall pay to the Recipient, in the case of an undervaluation, or shall receive from the Recipient, in the case of an overvaluation, an amount equal to the difference between the total sums in respect of the Annuity Amount that the Trustees should have paid if the correct value were used and the total of such sums that the Trustees actually paid.

G.      The taxable year of this trust shall be the calendar year.

H.      Notwithstanding any provision of this Declaration to the contrary:

1.      The Trustees shall make distributions at such time and in such manner as not to subject this trust to any tax under Section 4942 of the Code.

2.      Except for the payment of the Annuity Amount to the Recipient (or the estate of the Recipient, as the case may be), the Trustees shall not engage in any act of self-dealing, as defined in Section 4941(d) of the Code, and shall not make any taxable expenditures, as defined in Section 4945(d) of the Code.

3.      The Trustees shall not make any investments that jeopardize the charitable purpose of this trust, within the meaning of Section 4944 of the Code and the federal

9959464.1

- 23 -

NT000425

income tax regulations thereunder, or retain any excess business holdings, within the meaning of Section 4943 of the Code, during such time or times as such provisions are applicable to this trust.

4.    The Trustees shall not purchase, exchange or invest in any asset which would give rise to unrelated business taxable income in this trust, within the meaning of Section 512(a) of the Code, nor shall the Trustees incur any indebtedness which would cause this trust to have unrelated business taxable income.

5.    The Annuity Amount shall not be reduced by any expenses of this trust including, but not limited to, Trustees' commissions.

6.    In no event shall the Payout Percentage (as adjusted to reflect the timing and frequency of the annuity payments) (i) exceed the percentage that would result in a five percent (5%) probability that the principal of this trust shall be exhausted before the death of the Recipient, determined as of the date of the Donor's death (or the alternate valuation date, if applicable), or (ii) be greater than the percentage that would result in the actuarial value of the charitable remainder interest (determined under the Code and applicable regulations) being equal to ten percent (10%) of the Initial Trust Principal.

7.    Nothing in this Declaration shall be construed so as to restrict the Trustees from investing the assets of the trust in a manner which would result in the annual realization of a reasonable amount of net income or gain from the sale or disposition of trust assets.

8.    It is the Donor's intention that the trust held in accordance with the provisions of this Subdivision shall qualify as a charitable remainder annuity trust within the meaning of Rev. Proc. 2003-57 and any successor revenue procedures thereto, and Section 664(d)(1) of the Code and the regulations thereunder, and that the remainder interests which are to be distributed to one or more Charitable Organizations shall qualify for the estate tax charitable deduction under the provisions of Section 2055 of the Code.  Accordingly, the Donor hereby directs that (a) no authorization, direction or other provision contained in this Declaration which would prevent this trust and any such interests from so qualifying shall apply, (b) this trust shall be interpreted, valued, managed and invested in a manner consistent with that intent, (c) no distribution shall be made to this trust of any property which does not qualify for such charitable deduction, and (d) it is the Donor's further intention that any court having jurisdiction over this Declaration shall construe and interpret and, if necessary, modify and limit the terms and provisions of this Declaration so as to permit such interests so to qualify.

9.    The Trustees are authorized, acting alone, to amend this trust in any manner for the sole purpose of ensuring that this trust qualifies and continues to qualify as a charitable remainder annuity trust within the meaning of Section 644(d)(1) of the Code and the regulations thereunder.

10.    The operation of this trust shall be governed by the laws of the State of Florida.  The Trustees, however, shall be prohibited from exercising any power or

- 24 -

NT000426

discretion granted under such laws that would be inconsistent with the qualification of this trust under Section 664(d)(1) of the Code and the regulations thereunder.

11.    No estate, inheritance or other similar taxes or any generation-skipping transfer tax imposed under Chapter 13 of the Code (or any corresponding provision of state law) shall be allocated to or recoverable from this trust.


## ARTICLE XII

### Definitions

A.    1.    Wherever used in this Declaration, the following definitions shall apply: (a) the word "issue" shall include descendants of whatever degree; (b) the words "child", "children", "grandchild", "grandchildren" and "issue" shall include persons legally adopted prior to reaching age fourteen (14) and their issue; (c) the word "minor" shall mean any person who has not reached age twenty-one (21); (d) reference to the "Code" or to a Section thereof or a regulation thereunder shall mean the Internal Revenue Code of 1986 or such Section thereof or regulation thereunder, as amended from time to time, and shall include corresponding provisions of all subsequently enacted federal tax laws; and (e) the word "trust" shall include any separate fund created by any fiduciary hereunder pursuant to the authority contained herein.

2.    The term "Charitable Organizations" shall mean one or more organizations which, at the time when any property is distributable to such organizations hereunder, are described in Section 170(c) (without regard to Section 170(c)(2)(A)) of the Code contributions to which are deductible for federal estate tax purposes and deductible under the estate or other death tax laws of the State of Florida.

3.    A person shall be deemed "Incapacitated" if two (2) qualified physicians (selected by the then acting Trustees other than any Trustee whose capacity is then at issue or, if none, the designated successor Trustee) including, if any, the physician then primarily responsible for such person's medical care, certifies to such Trustees that such person is unable to act prudently with respect to financial matters because of accident, physical or mental illness, deterioration, injury or otherwise.

4.    The "Independent Trustee" of any trust hereunder shall mean (a) a corporation with trust powers or (b) a person or entity who is not related or subordinate to any Trustee who is a beneficiary of such trust within the meaning of Section 672(c) of the Code.

5.    A "Dissolution of Marriage" shall occur if (i) either spouse commences a proceeding for separation, divorce, annulment or dissolution of marriage, which proceeding is not withdrawn, (ii) the spouses execute a written separation agreement, which agreement is not rescinded, or (iii) an order is entered dissolving the marriage between the spouses.

9959464.1

- 25 -

NT000427

B.    The terms herein shall be construed in the masculine, feminine or neuter, and in the singular or plural, whichever construction is consistent with the then prevailing facts.

C.    In the event that a distribution hereunder is to be made to the issue per stirpes of any person, the initial division into shares shall be made at the level of such person's children, whether or not any child of such person is then living, and within each share as to younger generations the same principle shall be applied.

D.    This Declaration shall be known as the MELVIN B. NESSEL 2006 TRUST.

## ARTICLE XIII

### Acceptance of Trusteeship

MELVIN B. NESSEL does hereby acknowledge receipt of the property listed on Schedule A hereto, accepts the trusts and agrees to act as Trustee in accordance with the terms and provisions hereof.

The undersigned party has executed this Declaration as of the date above written.

_____ [L.S.]
MELVIN B. NESSEL, Donor and Trustee

The foregoing instrument was signed and sealed by Melvin B. Nessel in our joint presence and at his request we have signed our names as attesting witnesses in his presence and in the presence of each other, all on the date above written.

_____  residing at  1515 S. Flagler Drive, #2802
                                              West Palm Beach, FL  33401

_____  residing at  3701 Island Road
                                              Palm Beach Gardens, FL  33410

9959464.1                        - 26 -

NT000428

STATE OF FLORIDA

COUNTY OF PALM BEACH

     MELVIN B. NESSEL, Janice S. Kiser and Jennifer L. Aft, the Donor/Trustee and the witnesses, respectively, whose names are signed to the attached or foregoing instrument, having been sworn, declared to the undersigned officer that the Donor/Trustee, in the presence of the witnesses, signed the instrument as his Declaration, and that each of the witnesses, in the presence of the Donor/Trustee and in the presence of each other, signed the Declaration as a witness.

     _____
     MELVIN B. NESSEL, Donor/Trustee

     _____
     Witness

     _____
     Witness

     The foregoing instrument was acknowledged, subscribed, and sworn to before me by the Donor/Trustee, MELVIN B. NESSEL, ☑ who is personally known to me or ☐ who has produced _____ as identification, and by Janice S. Kiser, ☑ who is personally known to me or ☐ who has produced _____ as identification, and by Jennifer L. Aft, ☑ who is personally known to me or ☐ who has produced _____ as identification, the witnesses, on March 14, 2006.

     _____
     Notary Public

     (SEAL)



PAUL RAMPELL
MY COMMISSION # DD510702
EXPIRES: Jan. 25, 2010
(407) 398-0153    Florida Notary Service.com

9959464.1

NT000429

## SCHEDULE A

One Dollar ($1.00) and any and all tangible, intangible and real property owned by Melvin B. Nessel, individually, as trustee of the Melvin B. Nessel 1999 Trust, and/or the Melvin B. Nessel 2003 Trust

9959464.1

FIRST AMENDMENT

Dated: September _11_, 2006

to

MELVIN B. NESSEL 2006 TRUST

Dated: March 14, 2006

by

Melvin B. Nessel,

as Donor and as Trustee

NT000431

FIRST AMENDMENT, dated September _/_/_, 2006 to Melvin B. Nessel 2006 Trust dated March 14, 2006 by Melvin B. Nessel, as Donor and as Trustee.

WHEREAS:

1. On March 14, 2006, Melvin B. Nessel executed the Melvin B. Nessel 2006 Trust (the "Trust") between himself, as Donor, and himself, as Trustee;

2. Under the provisions of Article VI of the Trust, by an instrument in writing, signed and acknowledged and delivered to the Trustee of the Trust, the Donor reserves the right to revoke, alter, amend or modify the Trust in any respect whatsoever; and

3. The Donor now desires to amend the Trust in certain respects.

NOW, THEREFORE, the undersigned, MELVIN B. NESSEL, as Donor, hereby amends the Trust as follows:

FIRST:     The Donor adds to Article II, Subdivision D of the Trust the following clarifying sentence:

> "Charitable pledges shall first be satisfied from assets of the Melvin B. Nessel 2006 Trust, and if insufficient, then from assets of the Gail Nessel 2006 Trust."

SECOND:     The Donor adds to Article XI of the Trust, as a new Subdivision I, the following clarifying sentence:

> "In each instance in which reference is made to the Donor's death or

NT000432

the date of death, the Donor's spouse's death or date of death shall be

an alternative, if the Donor's spouse survives the Donor."

THIRD:         In all other respects, the Donor confirms the Melvin B. Nessel 2006 Trust

dated March 14, 2006, reserving to himself the right to further amend or revoke the same and this

Amendment thereto.

IN WITNESS WHEREOF, MELVIN B. NESSEL has hereunto set his hand as Donor as of

the date first above written.

_____

MELVIN B. NESSEL

The foregoing instrument was signed, published and declared by Melvin B. Nessel, the
above-named Donor, as the First Amendment to the Melvin B. Nessel 2006 Trust in our presence,
all being present at the same time, and thereupon we, at his request and in his presence and in the
presence of each other, have hereunto subscribed our names as witnesses this 1(_ day of September,
Two thousand and six.

_____ residing at   237 RIDGEVIEW DRIVE
                                          PALM BEACH, FL 33480

_____ residing at   24 Nestarick Ave
                                          Randolph, MA 02368

NT000433

## RECEIPT

The undersigned Trustee hereby acknowledges that he has received a copy of the foregoing First Amendment.

Melvin B. Nessel, Trustee

NT000434

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF SUFFOLK

I, MELVIN B. NESSEL, declare to the officer taking my acknowledgment of this instrument, and to the subscribing witnesses, that I signed this instrument as the First Amendment to the Melvin B. Nessel 2006 Trust.

_____
Donor

We, PAUL RAMPELL and Makita Rudolph have been sworn by the officer signing below, and declare to that officer on our oaths that the Donor declared the instruments to be the First Amendment to the Melvin B. Nessel 2006 Trust and signed it in our presence and that we each signed the instrument as a witness in the presence of the Donor and each other.

_____
Witness

_____
Witness

Acknowledged and subscribed before me by the Donor, MELVIN B. NESSEL, who is personally known to me, and sworn to and subscribed before me by the witnesses, Paul Rampell who *is personally known to me, and Makita Rudolph who is personally known to me, and subscribed by me in the presence of the Donor and the subscribing witnesses, all on September // , 2006.

*PRESENTED IDENTIFICATION

_____
Signature of Notary Public

SEAL:

DOREEN A. DONNELLY
Notary Public
Commonwealth of Massachusetts
My Commission Expires Apr 13, 2012

SECOND AMENDMENT

Dated:  January 26, 2007

to

MELVIN B. NESSEL 2006 TRUST

Dated:  March 14, 2006

by

Melvin B. Nessel,

as Donor and as Trustee

NT000436

SECOND AMENDMENT, dated January 2̸6̸ 2007 to Melvin B. Nessel 2006 Trust dated March 14, 2006 by Melvin B. Nessel, as Donor and as Trustee.

WHEREAS:

1.    On March 14, 2006, Melvin B. Nessel executed the Melvin B. Nessel 2006 Trust and on September 11, 2006, he executed the First Amendment thereto, both between himself, as Donor, and himself, as Trustee (the "Trust");

2.    Under the provisions of Article VI of the Trust, by an instrument in writing, signed and acknowledged and delivered to the Trustee of the Trust, the Donor reserves the right to revoke, alter, amend or modify the Trust in any respect whatsoever; and

3.    The Donor now desires to amend the Trust in certain respects.

NOW, THEREFORE, the undersigned, MELVIN B. NESSEL, as Donor, hereby amends the Trust as follows:

FIRST:        The Donor deletes Subdivision F of Article II of the Trust and substitutes the following in lieu thereof:

> "Pursuant to the provisions of this Article, certain property is to be distributed in accordance with the provision of this Subdivision. One fourth (1/4) of such property shall be distributed to BRANDEIS UNIVERSITY, provided it is a Charitable Organization at such time

1

NT000437

and satisfies the contingency below, and the balance of such property, or all thereof, shall be distributed to MASSACHUSETTS GENERAL HOSPITAL, provided it is a Charitable Organization at such time and satisfies the contingency below. If MASSACHUSETTS GENERAL HOSPITAL is not a Charitable Organization at the time that property is distributable to it, then such property shall be distributed to one or more Charitable Organizations as shall be selected by the Trustee which satisfy the contingency below. Charitable Organizations shall be selected which are of major importance in the world of art, science, medicine or education, preferably but not necessarily Charitable Organizations to which the Donor made charitable contributions during his lifetime. The foregoing bequests are contingent upon BRANDEIS UNIVERSITY, MASSACHUSETTS GENERAL HOSPITAL and/or other Charitable Organizations, as the case may be, perpetually dedicating buildings or other publicly-visible facilities to the name of MELVIN B. NESSEL as approved in the reasonable discretion of the Trustee.

SECOND: In all other respects, the Donor confirms the Melvin B. Nessel 2006 Trust dated March 14, 2006, reserving to himself the right to further amend or revoke the same and this Amendment thereto.

IN WITNESS WHEREOF, MELVIN B. NESSEL has hereunto set his hand as Donor as of the date first above written.

_Melvin B. Nessel_
MELVIN B. NESSEL

2

NT000438

The foregoing instrument was signed, published and declared by Melvin B. Nessel, the above-named Donor, as the Second Amendment to the Melvin B. Nessel 2006 Trust in our presence, all being present at the same time, and thereupon we, at his request and in his presence and in the presence of each other, have hereunto subscribed our names as witnesses this 26 day of January, Two thousand and seven.

*Margaret Miller* _____ residing at  9 Bryant Street
Brockton, MA 02302

*Virginia Santos* _____ residing at  500 NORTH Quincy ST
ABington MA 02351

3

NT000439

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF SUFFOLK

I, MELVIN B. NESSEL, declare to the officer taking my acknowledgment of this instrument, and to the subscribing witnesses, that I signed this instrument as the Second Amendment to the Melvin B. Nessel 2006 Trust.

_Melvin B. Nessel_

Melvin B. Nessel, Donor and Trustee

We, _Margaret Miller_ and _Virginia Santos_, have been sworn by the officer signing below, and declare to that officer on our oaths that the Donor declared the instrument to be the Second Amendment to the Melvin B. Nessel 2006 Trust and signed it in our presence and that we each signed the instrument as a witness in the presence of the Donor and each other.

_Margaret Miller_

Witness

_Virginia Santos_

Witness

Acknowledged and subscribed before me by the Donor, MELVIN B. NESSEL, who is personally known to me, and sworn to and subscribed before me by the witnesses, _Margaret Miller_ who is personally known to me, and _Virginia Santos_ who is personally known to me, and subscribed by me in the presence of the Donor and the subscribing witnesses, all on January 26, 2007.

_Susan W. Ramsey_

Signature of Notary Public

SEAL:

4

**SUSAN W. RAMSEY**
Notary Public
Commonwealth of Massachusetts
My Commission Expires
April 12, 2013

NT000440

<u>RECEIPT</u>

The undersigned Trustee hereby acknowledges that he has received a copy of the foregoing Second Amendment.

_____
Melvin B. Nessel, Trustee

5

NT000441

**Exhibit B**

IN THE CIRCUIT COURT FOR **PALM BEACH** COUNTY,
FLORIDA                                    PROBATE DIVISION

IN RE: ESTATE OF

**MELVIN B. NESSEL**

          Deceased.

File No. 50 2007 CP 000838 XXXX MB

Division _____

**COPY**

ORIGINAL RECEIVED FOR FILING

**FEB 2 7 2007**

SHARON R. BOCK
CLERK & COMPTROLLER
PROBATE DIVISION

NOTICE TO CREDITORS

    The administration of the estate of **Melvin B. Nessel**, deceased, whose date of death was **February 15, 2007**, File Number ___50 2007 CP 000838 XXXX MB___ is pending in the Circuit Court for **Palm Beach** County, Florida, Probate Division, the address of which is **205 N. Dixie Highway, Room 4.2200, West Palm Beach, Florida, 33401**. The names and addresses of the personal representatives and the personal representatives' attorney are set forth below.

    All creditors of the decedent and other persons having claims or demands against decedent's estate on whom a copy of this notice has been served must file their claims with this Court WITHIN THE LATER OF 3 MONTHS AFTER THE DATE OF THE FIRST PUBLICATION OF THIS NOTICE OR 30 DAYS AFTER THE TIME OF SERVICE OF A COPY OF THIS NOTICE ON THEM.

    All other creditors of the decedent and other persons having claims or demands against decedent's estate must file their claims with this court WITHIN 3 MONTHS AFTER THE DATE OF THE FIRST PUBLICATION OF THIS NOTICE.

    ALL CLAIMS NOT SO FILED WILL BE FOREVER BARRED.

    NOTWITHSTANDING THE TIME PERIOD SET FORTH ABOVE, ANY CLAIM FILED TWO (2) YEARS OR MORE AFTER THE DECEDENT'S DATE OF DEATH IS BARRED.

_____
**Paul Rampell, Esq.,**
**Attorney for Personal Representatives**
Florida Bar No. 305901
400 Royal Palm Way
Suite 410
Palm Beach, FL 33480
(561) 833-1116

_____
**Paul Rampell,**
**Personal Representative**
400 Royal Palm Way, Suite 410
Palm Beach, FL 33480


_____
**Doris S. Shaw,**
**Personal Representative**
270 South County Road
Palm Beach, FL 33480

Bar Form No. P-3.0740

© Florida Lawyers Support Services, Inc.
  Revised January 1, 2003

**Exhibit C**

IN THE CIRCUIT COURT FOR **PALM BEACH** COUNTY,
FLORIDA                 PROBATE DIVISION

IN RE: ESTATE OF

**MELVIN B. NESSEL**

           Deceased.

50 20 0 7 CP 00 08 3 8 XXXX MB
File No. _____

Division _____

PETITION FOR ADMINISTRATION
(testate Florida resident -- single petitioner)

Petitioner, **Paul Rampell** alleges:

1. Petitioner has an interest in the above estate as **Personal Representative and as Trustee of the Melvin B. Nessel 2006 Trust dated March 14, 2006**. Petitioner's address is **400 Royal Palm Way, Suite 410, Palm Beach, FL 33480** and the name and office address of petitioner's attorney are set forth at the end of this petition.

2. Decedent, **Melvin B. Nessel**, whose last known address was **Apartment 504, 200 Bradley Place, Palm Beach, FL 33480** and, if known, whose age was **87** and whose social security number is ▓▓▓▓▓▓, died on **February 15, 2007**, at **Boston, Massachusetts**, and on the date of death, decedent was domiciled in **Palm Beach** County, Florida.

3. So far as is known, the names of the beneficiaries of this estate and of decedent's surviving spouse, if any, their addresses and relationship to decedent, and the dates of birth of any who are minors, are:

| NAME | ADDRESS | RELATIONSHIP |
|---|---|---|
| **Gail Nessel** | **200 Bradley Place Apartment 504 Palm Beach, FL 33480** | **Surviving Spouse and Income Beneficiary of the Melvin B. Nessel 2006 Trust** |
| **Paul Rampell, Trustee** | **400 Royal Palm Way Suite 410 Palm Beach, FL 33480** | **Trustee of the Melvin B. Nessel 2006 Trust dated March 14, 2006** |
| **Gregory Antoniazzi** | **19 Lantern Lane Roslindale, MA 02131** | **Friend and Beneficiary of specific bequest under the Melvin B. Nessel 2006 Trust** |
| **John Nessel** | **24 Constitution Road Lexington, MA 02421** | **Son and Beneficiary of specific bequest under the Melvin B. Nessel 2006 Trust** |

ES

Bar Form No. P-3.0100
© Florida Lawyers Support Services, Inc.
Revised January 1, 2005

| Michael Lieb | 8823 N. 47 Street<br>Phoenix, AZ 85028 | Nephew and Beneficiary of specific bequest under the Melvin B. Nessel 2006 Trust |
| Robert Lieb | 1035 E. Morten Avenue<br>Phoenix, AZ 85020 | Nephew and Beneficiary of specific bequest under the Melvin B. Nessel 2006 Trust |

4.    Venue of this proceeding is in this county because **decedent was domiciled in Palm Beach County at the time of his death**.

5.    **Paul Rampell**, whose address is **400 Royal Palm Way, Suite 410, Palm Beach, FL 33480**, and who is qualified under the laws of the State of Florida to serve as personal representative of the decedent's estate is entitled to preference in appointment as personal representative because **he is nominated under Article III, Subdivision A, of the Decedent's Last Will and Testament dated March 14, 2006**. **Doris S. Shaw**, whose address is **318 Seaspray Avenue, Palm Beach, FL 33480**, and who is qualified under the laws of the State of Florida to serve as personal representative of the decedent's estate, is entitled to preference in appointment as personal representative because **Petitioner appoints her to act in addition to him pursuant to Article III, Subdivision B of the decedent's foregoing Will**.

6.    The nature and approximate value of the probatable assets in this estate are **tangible and intangible personal property worth $1,000,000**.

7.    This estate **will** be required to file a federal estate tax return.

8.    Domiciliary or principal proceedings **are not** known to be pending in another state or country.

9.    The decedent's Last Will and Testament, dated **March 14, 2006**, accompanies this petition.

10.    Petitioner is unaware of any unrevoked will or codicil of decedent other than as set forth in paragraph 9.

Petitioner requests that the decedent's Last Will and Testament dated **March 14, 2006** be admitted to probate and that **Paul Rampell** and **Doris S. Shaw** be appointed personal representatives of the estate of the decedent.

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged are true, to the best of my knowledge and belief.

Signed on February **20**, 2007.

Paul Rampell, Esq.,
**Attorney for Petitioner**
**Florida Bar No. 305901**
**400 Royal Palm Way**
**Suite 410**
**Palm Beach, FL 33480**
**(561) 833-1116**

**Paul Rampell, Petitioner**

Bar Form No. P-3.0100
© Florida Lawyers Support Services, Inc.
Revised January 1, 2005

**Exhibit D**

LAST WILL AND TESTAMENT

OF

MELVIN B. NESSEL

Dated:    March 14, 2006

NT000387

I, MELVIN B. NESSEL, a citizen of the United States of America, residing in the County of Palm Beach, State of Florida, declare this to be my Last Will and Testament and revoke all my prior Wills and Codicils.

I: TANGIBLE PERSONAL PROPERTY

A.    I give all of my tangible personal property (other than currency) including, without limitation, wearing apparel, personal effects, jewelry, furniture, furnishings, pictures, paintings and other objects of art, silver, china, glassware and other household effects, books and automobiles to the Trustees of the MELVIN B. NESSEL 2006 TRUST, as amended and/or restated from time to time, to be added to the principal of such trust and disposed of in accordance with the terms thereof.

B.    Any expenses which may be incurred by my Personal Representatives in selling, storing, packing, shipping and insuring any of such tangible personal property, including any expenses which may be incurred in delivering such property to the designated beneficiary or beneficiaries thereof, shall be charged against the principal of my residuary estate and treated as an expense of administering my estate.

II: RESIDUARY ESTATE

The balance of my estate, whether real or personal, wherever situated, including any property not hereinabove effectively disposed of (my "residuary estate"), after the payment of debts, expenses and Death Taxes as herein provided, shall be distributed to the Trustees of the MELVIN B. NESSEL 2006 TRUST, as amended and/or restated from time to time, to be added to the principal of such trust and disposed of in accordance with the terms thereof.

III: FIDUCIARIES

A.    I appoint PAUL RAMPELL as Personal Representative hereunder.  If PAUL RAMPELL fails to qualify or ceases to act as Personal Representative for any reason, I appoint DORIS S. SHAW to serve as successor Personal Representative hereunder.

NT000388

B. The individual Personal Representatives hereunder are authorized, at any time or from time to time, by an instrument in writing, signed and acknowledged, to appoint one or more individuals or a series of individuals or a corporation with trust powers, even if such appointment shall supersede my appointment of successor Personal Representatives under the preceding provisions of this Article, to act as Personal Representative hereunder, in succession to or in addition to any Personal Representative herein appointed or any other Personal Representative appointed pursuant to the power herein granted. A successor Personal Representative may be appointed to succeed a particular Personal Representative or to succeed any Personal Representative.

C. Any instrument appointing a successor Personal Representative pursuant to the authority granted in Subdivision B of this Article may be revoked at any time prior to the qualification of the appointee by the individual Personal Representatives, at the time being in office, whether or not such Personal Representatives were the Personal Representatives signing such instrument. In the event that the individual Personal Representatives, at any time in office, have executed more than one instrument appointing successor Personal Representatives, then the unrevoked instrument bearing the most recent date shall govern.

D. If at any time there shall be no Personal Representative acting hereunder or effectively appointed, a majority of my then living adult issue shall appoint one or more individuals or a series of individuals or a corporation with trust powers to act as Personal Representative hereunder, provided, however, that if no adult issue of mine is then living, a majority of the then living parents of my then living minor issue or, if no such parent is then living, a majority of the guardians of the person of such minor issue shall make such appointment on behalf of such minor issue. If none of my issue is then living, such successor Personal Representative shall be appointed by a majority of the then living natural persons who are either (i) entitled to receive property outright under my residuary estate or (ii) are beneficiaries then eligible to receive income of a trust created under my residuary estate. Each such person receiving residuary property outright shall have one (1) vote and all such beneficiaries collectively of each such residuary trust shall have one (1) vote.

E. Each individual Personal Representative acting hereunder shall be entitled to receive the commissions or other compensation allowed by the law of the state in which I shall die domiciled in effect from time to time for the performance of his or her duties as a Personal Representative hereunder.

F. The ability of any co-Personal Representative to qualify or act hereunder shall not be affected by any other co-Personal Representative's failing to qualify or ceasing to act hereunder, except as otherwise provided herein or in any designation made pursuant to the provisions of this Article.

G. Any individual Personal Representative hereunder may, at any time or from time to time, by an instrument in writing, delegate any right, power, duty, authority and privilege, whether or not discretionary, to any other Personal Representative, for such period or periods of time as may be specified in such written instrument, provided, however, that any such instrument may be revoked at any time and that no discretionary power may be delegated to any Personal Representative who is disqualified from exercising such discretionary power. Any individual Personal Representative hereunder is authorized to delegate to any suitable person or

2

entity any ministerial duties in connection with the rights, powers, duties, authorities and privileges herein conferred, whether by means of a power of attorney or otherwise.

H.    Ministerial duties of my Personal Representatives hereunder (such as signing checks and executing brokerage transactions) may be performed by any one Personal Representative.

I.    Wherever used in this Will, the terms "Personal Representative", and "Personal Representatives", shall refer to the executors, personal representatives or administrators from time to time acting hereunder as the context may require. Each Personal Representative acting hereunder shall have the same rights, powers, duties, authorities and privileges, whether or not discretionary, whether such Personal Representative is named herein or appointed pursuant to the terms hereof.

J.    No bond or other security shall be required of any Personal Representative (including, without limitation, any preliminary Personal Representative) acting hereunder for the faithful performance of such Personal Representative's duties, to secure the advance payment of commissions or otherwise, any law of any jurisdiction to the contrary notwithstanding; and if, notwithstanding this direction, any such bond or other security shall be required by any law, statute or rule of court, no sureties shall be required thereon.

K.    If by reason of any provision hereunder, or the law of any jurisdiction in which it may be necessary to perform any act, any Personal Representative hereunder shall be disqualified from acting, then all of the acts required to be performed in such jurisdiction shall be performed by such Personal Representative's qualified co-Personal Representatives then acting hereunder.

L.    Any individual Personal Representative, at any time in office, is authorized to resign by an instrument in writing, signed and acknowledged in duplicate, one counterpart of which shall be filed in the court in which this Will shall be admitted to probate, and the other counterpart of which shall be delivered to the remaining or successor Personal Representative. The resignation of any individual Personal Representative acting alone hereunder shall be effective only upon the appointment and qualification of a successor Personal Representative.

M.    Except as otherwise provided herein, in every case in which it would be necessary for my Personal Representatives hereunder to join in the taking of any action, such action may nonetheless be taken by a majority, and any action so taken shall be as valid and effectual as though taken by all.

N.    Any corporation into which any corporation acting as a Personal Representative hereunder shall be merged or converted or with which it shall be consolidated, or any corporation resulting from any merger, conversion, reorganization or consolidation to which it shall be a party, or any corporation to which all or substantially all of its trust business shall be transferred, shall be the successor of such corporation as a Personal Representative hereunder, without the execution or filing of any instrument or the performance of any further act and shall have the same rights, powers, duties, authorities and privileges as though originally named in this Will.

3

NT000390

O.     The individual Personal Representatives appointing any corporate Personal Representative are authorized to determine the compensation to be paid to such corporate Personal Representative (including amounts greater than amounts that would otherwise be authorized by law), and such compensation may be changed at any time by mutual agreement of the corporate Personal Representative and the then acting individual Personal Representatives.

P.     Any person acting as a Personal Representative hereunder shall be deemed to be incapacitated if the co-Personal Representatives or, if none, the designated successor Personal Representatives, shall receive a certificate signed by two (2) qualified physicians, including, if any, the physician then primarily responsible for such person's medical care, stating that such person is unable to act prudently with respect to financial matters because of accident, physical or mental illness, deterioration, injury or otherwise, and such incapacity shall constitute the resignation of such Personal Representative.

Q.     No successor Personal Representative shall be required to investigate or audit the accounts or acts of any prior Personal Representative to take any action with respect thereto, either before or after qualifying.

R.     I hereby waive compliance by my Personal Representatives with any law or local court rule now or hereafter in effect requiring qualification, administration or accounting by my Personal Representatives to any court.

S.     No individual Personal Representative named herein has special investment skills and none shall be deemed to have such skills.

## IV: ADMINISTRATIVE POWERS

A.     In addition to all powers given to them by law or any other provision of this Will, my Personal Representatives and any other fiduciary acting hereunder shall have the following powers with respect to any property, real or personal, at any time held by them, exercisable in their absolute discretion upon such terms and conditions as they deem advisable, without any liability therefor and without authorization by any court:

1.     To retain any such property (including, without limitation, any residence or any partial interest therein) for any period of time;

2.     To hold any such property uninvested for any period of time;

3.     To sell, exchange or otherwise dispose of any such property at any time and in any manner, at public or private sale, for cash or on credit, without any obligation to solicit multiple offers or to obtain an appraisal to establish the value thereof;

4.     To invest and reinvest in and to acquire, by purchase, exchange or otherwise, and retain for any period, any kind of real or personal property, foreign or domestic, or undivided interests therein, including, but not limited to, common or preferred stocks, bonds or other unsecured obligations, mutual funds, covered short sales, mortgages, interests in investment companies or investment trusts, interests in common trust funds (whether or not maintained by any Personal Representative hereunder), interests in partnerships (general or limited) or other entities, and securities, or to hold cash uninvested; and to acquire any such

4

investment from any person including any beneficiary hereunder, the estate of any deceased beneficiary hereunder, or any estate or trust in which any beneficiary hereunder has an interest;

5. To retain, hold, invest and reinvest in any such property without diversification as to kind or amount and without being limited to investments in which fiduciaries are authorized by law or any rule of court to invest funds, even though such property shall be at such time (or shall thereafter become) unproductive of income or speculative, and without any liability for loss because of depreciation in value;

6. To continue to operate or participate in the operation of any business enterprise in which my estate has an interest, or to dispose of any part or all of such business enterprise;

7. To make or refrain from making any additional investment in any partnership or other entity in which my estate has an interest to preserve the value of such interest or to maintain or change my estate's proportionate interest therein or for any other reason;

8. To form one or more corporations, partnerships (general or limited), joint ventures or associations with others, in any jurisdiction; and to transfer any such property to such entity or entities;

9. To exercise all rights, powers and privileges with respect to stocks or other securities whether in person or by general or limited proxy, discretionary or otherwise, including voting rights, warrants, options and conversion, subscription or other rights; to make any necessary payments in connection therewith; and to sell any such rights or to refrain from exercising any such rights by permitting them to expire;

10. To enter into voting trust agreements, alone or with others, including the right to designate voting trustees (including any Personal Representative hereunder) under any such agreement, for the maximum period allowable under applicable state law, including extensions, even if such period extends beyond the final distribution of my estate;

11. To consent to, participate in or oppose any reorganization, readjustment, recapitalization, foreclosure, consolidation, merger, dissolution, liquidation, sale or purchase of assets, lease, mortgage, contract or other plan, action or proceeding by any corporation or other entity; to deposit securities or other property under, or become a party to, any agreement or plan for any such action or proceeding or for the protection of holders of such property; to subscribe to new securities issued pursuant to any such action or proceeding; to delegate discretionary powers to any reorganization, protective or similar committee; and to exchange any property for any other property and to pay any assessments or other expenses in connection with any of the foregoing;

12. To sell, lease (including sublease), convey, transfer or exchange upon any terms and conditions (including in the case of any lease for a period exceeding the maximum terms specifically authorized by law) any real property interest to any individual or entity; to receive in payment or exchange therefor cash or other property; to renew or extend leases; to amend, or modify leases; and to grant options to lease and options to renew leases for any period, regardless of whether any consideration is received in exchange therefor;

5

13.    To manage, operate and develop any such property; to vacate and abandon any real property interest; to demolish any buildings or improvements thereon; to erect, repair, alter and improve buildings or improvements thereon; to subdivide any such property; to dedicate any such property for public use; to grant easements; to adjust boundaries; to partition and to pay any sums of money necessary for equality of partition; to perfect the title thereof; from time to time to expend either from principal or income or from both such amounts for the foregoing or for the development, alteration, improvement, maintenance or repair of any such property or buildings or improvement thereon; to establish any reserves for depreciation, obsolescence, amortization or other waste with respect to any such property; and to insure any such property against any risks, hazards and liabilities;

14.    To mortgage any such property; to renew, extend, modify, subordinate, reduce, pay off, satisfy or replace any mortgage, note or bond, or any guarantee thereof; to waive or to forbear from suing or enforcing any default in the performance of any covenant or condition of or payment due under any mortgage, note or bond (including a guarantee thereof); to foreclose any mortgage; to purchase any mortgaged property; to take a deed in lieu of foreclosure and to pay consideration therefor; and to continue mortgage investments after maturity, either with or without renewal or extension;

15.    To abandon, destroy or convey with or without consideration any such property which they deem to be worthless, hazardous or of insufficient value to warrant keeping or protecting and thereafter to have no further responsibility with respect to such property; to abstain from the payment of taxes, water rents, assessments, repairs, maintenance and upkeep of any such property; or to permit any such property to be lost by tax sale or other proceedings;

16.    To drill, test, explore, mine, develop and otherwise exploit any oil, gas, mineral or other interests of any kind in natural resources (including interests commonly known as working interests in oil, gas or any other mineral); to enter into pooling, unitization, repressurization and any other type of agreement relating to the development, operation and conservation of mineral properties, including an agreement delegating discretionary and ministerial powers, in connection therewith; and to rely upon or adopt any recommendation of the operator thereof without any duty to make an independent investigation of any such recommendation in connection with any such properties or interests;

17.    To grant options, warranties, guaranties and indemnities, for any term whether or not extending beyond the term fixed by any law, at any time, whether or not consideration is received in exchange therefor;

18.    To borrow money from any person or entity, including any Personal Representative hereunder, for any purpose, and give security therefor (by pledging or hypothecating any property held hereunder) or not give security therefor; to renew, modify or extend existing loans on similar or different terms; and the lender shall have no obligation to inquire as to the application of the sums loaned or as to the necessity or propriety of the loan;

19.    To make or guarantee any loans, either secured or unsecured, and to pledge or hypothecate any property held hereunder with regard to any such loan or guarantee, in such amounts, upon such terms and to such persons (including, but not limited to, any beneficiary hereunder, the estate of any deceased beneficiary hereunder or any estate or trust in

6



NT000393

which any beneficiary hereunder has an interest), trusts, partnerships, corporations or other entities as they may determine;

20.    To adjust, compromise, settle, abandon, renew, release or submit to arbitration any claim, controversy or litigation; to institute, prosecute or defend any proceeding in connection therewith; and to extend the time for payment of any such claim, with or without security;

21.    To hold property in their names as Personal Representatives or, to the extent permitted by law, in their names without designation of any fiduciary capacity or in the name of a nominee or unregistered or in such form as will pass by delivery;

22.    To make any payment, receive any money or other property, take any action, and make, execute, deliver and receive any contract, deed, instrument or other document which is advisable to exercise any of the powers herein or to carry into effect any provision contained herein;

23.    To make any payment or distribution required or authorized hereunder either in kind (at market value unless otherwise directed herein) or cash, or a combination thereof; and to allocate any property distributable hereunder, including an undivided interest therein, to any part, fund or share whether or not the same kind of property or a fractional interest therein is allocated to other parts, funds or shares, all without regard to the federal income tax basis of such property;

24.    To determine in any case where there is reasonable doubt or uncertainty as to the applicable law or relevant facts, which receipts of money or other property shall be credited to income or to principal, and which disbursements, commissions, expenses, costs, fees, taxes and other charges shall be charged to income or to principal, and to apportion any of such receipts, disbursements and other charges between income and principal;

25.    In any case in which any Personal Representative is required or permitted to divide any such property into shares, such Personal Representative is not required physically to divide any of such property but may assign undivided interests therein to the various shares;

26.    To pay out of my residuary estate any administration expenses in respect of any real or tangible personal property situated outside of the state of my domicile at the time of my death;

27.    To determine what property is covered by any general description contained in this Will;

28.    To act or refrain from acting in all respects as if financially disinterested, regardless of the existence of any conflict of interest between any individual Personal Representative hereunder and my estate, it being my intention to waive the rule of undivided loyalty and any other conflict of interest rule which but for this provision would be applicable to any such individual Personal Representative;

7

29.   To employ and pay the compensation of any accountants, custodians, experts, counsel, legal or investment, and other agents (including, without limitation, for the purpose of preparing annual or periodic accountings for my estate), irrespective of whether any person so employed shall be a Personal Representative hereunder and irrespective of whether any firm or other entity so employed shall be one in which an Personal Representative hereunder may be a partner, a member, or have an ownership interest or with which an Personal Representative hereunder may have an employment relationship; and, except as otherwise expressly provided herein, such compensation may be paid without diminution of or charging the same against the commissions or compensation, if any, of any Personal Representative hereunder; and any Personal Representative who shall be a partner, a member, or have an ownership interest in or an employment relationship with a firm or entity so employed shall nevertheless be entitled to his or her share of the compensation paid to such firm or entity; and to delegate discretionary and ministerial powers to, and to act or to refrain from acting upon information or advice furnished by, such accountants, custodians, experts, counsel or other agents without liability for any act done or omission made in good faith in reliance upon such information or advice, provided, however, that if a corporation with trust powers shall be acting as a Personal Representative hereunder, no payments shall be made to such corporation with trust powers for its custodian or investment counsel services or the preparation of tax returns;

30.   To disclaim any property passing to me or my estate;

31.   To decide whether and in what manner to exercise any income, estate, gift or generation-skipping tax election with respect to property passing hereunder or property which passes or has passed otherwise, and to determine whether to make any adjustment between income and principal because of any such decision, without obligation to confer any portion of the benefit of any such decision on any particular interest or interests in property which may be subject to any such tax and with full power to confer the benefit thereof to property which passes or has passed otherwise than hereunder;

32.   In connection with any such property distributable to a minor, (i) to distribute all or any portion thereof to such minor, or to a guardian of the property of such minor wherever appointed without requiring ancillary guardianship, or to any custodian under any Uniform Gifts to Minors Act, Uniform Transfers to Minors Act or any similar statute of any jurisdiction, with power to select any person or corporation with trust powers (including any Personal Representative hereunder) to be such custodian and with power to extend such custodianship to age twenty-one (21), without any obligation to see to the use or application thereof or to make inquiry with respect to any other resources available to or for the use of such minor, the receipt of the individual to whom any such distribution is so made being a complete discharge as to such distribution; to set aside all or any portion thereof in a separate fund, with title vested in such minor; (ii) to distribute all or any portion thereof to the Minority Trustee, as hereinafter defined, to be held in a separate trust for such minor's benefit, and hold the same without bond, security or any obligation to render periodic accountings until such minor reaches age twenty-one (21) or sooner dies, and at any time or from time to time to distribute all or any portion of such property as provided in (i) hereof or to pay or apply the same to or for the benefit of such minor for any reason whatsoever (adding to the principal of the trust any income not so distributed whenever convenient) and when such minor reaches age twenty-one (21) or sooner dies, to distribute the same to such minor or to the legal representative of such minor's estate, as the case may be; and the Minority Trustee of any such trust for the benefit of a minor under this

8

NT000395

provision shall be the parent of such minor who is an issue of my great-grandparents or, if such parent is not then living, to such minor's other parent or, if also deceased, such person or corporation with trust powers (including any fiduciary hereunder) as the Personal Representatives shall select, and (iii) any Minority Trustee acting hereunder shall have the powers granted herein to my Personal Representatives and shall be authorized to appoint one or more individuals or a series of individuals or a corporation with trust powers to act as Minority Trustee of such trust, in succession to or in addition to such Minority Trustee or any other Minority Trustee appointed pursuant to the power herein granted (which appointment may be revoked at any time prior to the qualification of the appointee by the then acting Minority Trustee of such trust);

33.     In connection with any such property distributable to a person who, by reason of advanced age, illness or other physical or mental incapacity is incapable of handling or disposing of his or her property, as determined by two (2) qualified physicians including, if any, the physician then primarily responsible for the medical care of such person, (i) to set aside all or any portion thereof in a separate fund, with the title vested in such person, and hold the same without bond, security or any obligation to render periodic accountings until such person is no longer under such disability, or sooner dies, and at any time or from time to time to apply all or any portion of such property directly to the health, care, comfort, maintenance, support or use of such person (adding to the principal of the fund any income not so distributed whenever convenient), and when such person dies, to distribute the same to the legal representative of such person's estate; (ii) to distribute all or any portion of such property to such person for any reason whatsoever or to (a) the guardian, committee or other legal representative, wherever appointed, of such person, (b) any individual with whom such person resides, or (c) any other individual having the care and control of such person, the receipt of the individual to whom any such distribution is so made being a complete discharge as to such distribution; and (iii) to appoint one or more individuals or a series of individuals or a corporation with trust powers to act as fiduciary of such fund, in succession to or in addition to such fiduciary or any other fiduciary appointed pursuant to the power herein granted (which appointment may be revoked at any time prior to the qualification of the appointee by the then acting fiduciary of such fund);

34.     To designate any one or more Personal Representatives hereunder, or another person or persons or a corporation with trust powers, as ancillary fiduciary of my estate who shall serve without bond or security in any jurisdiction, other than my domicile, where it may be necessary or advisable for there to be an ancillary administration; to negotiate and determine the compensation to be paid to such ancillary fiduciary whether or not any compensation would otherwise be authorized by law, and to pay such compensation out of principal or income or both; and such ancillary fiduciary shall have with respect to any and all property subject to the ancillary administration all powers, authorities and discretion granted in this Article, provided, however, that any action which may require the investment of additional funds or the assumption of additional obligations shall not be undertaken without prior written consent of the Personal Representative or Personal Representatives then acting hereunder;

35.     In addition to the methods provided by law, each Personal Representative hereunder is authorized at any time and from time to time by acknowledged instrument filed with such Personal Representative's co-Personal Representative or co-Personal Representatives to release any power, authority or discretion conferred upon such Personal

9



Representative by this instrument or by law, whether discretionary or ministerial, for such period of time as shall be specified in such instrument, and during the effectiveness of such release, such power, authority or discretion shall be exercised solely by the remaining qualified co-Personal Representative or co-Personal Representatives; and

36.    Generally, to exercise all such rights and powers, do all such acts, and enter into all such agreements, as persons owning similar property in their own right might lawfully exercise, do or enter into.

B.    In any judicial proceeding relating to this Will or my estate, if a party to the proceeding has the same interest as a person under a disability, it shall not be necessary to serve the person under the disability.

C.    No person dealing with any Personal Representative hereunder shall be bound to see to the application or disposition of any property transferred to such Personal Representative, or to inquire into the authority for or propriety of any action by such Personal Representative.

D.    I authorize my Personal Representatives to qualify any eligible property, or any fractional or percentile portion thereof, for the federal estate tax marital deduction. I also authorize my Personal Representatives to make any similar election allowable by applicable state law.

E.    Unless otherwise specifically provided herein, I direct my Personal Representatives to pay all of my funeral expenses, debts (other than any debt secured by real property or the stock of any cooperative apartment corporation or any property specifically bequeathed hereunder or under the MELVIN B. NESSEL 2006 TRUST, and the expenses of administering my estate, in all jurisdictions, from my residuary estate.

## V: SURVIVORSHIP

A.    In the event any issue of mine shall die on or prior to the expiration of ninety (90) days after the date of my death, I direct that for all purposes of my Will such issue shall be deemed to have predeceased me.

B.    In the event that any beneficiary under this Will and I or any other person upon whose death such beneficiary shall become entitled to receive either income or principal hereunder shall die in a common accident or disaster or under such circumstances that it is difficult or impracticable to determine who survived the other, then for the purposes of this Will such beneficiary shall be deemed to have predeceased me or such other person, as the case may be.

## VI: TAXES, DEBTS AND EXPENSES

A.    I direct that all estate, transfer, succession or other inheritance taxes imposed by reason of my death (exclusive of any tax imposed as a result of Chapter 13 of the Code or a corresponding provision of state law), and any interest and penalties thereon ("Death Taxes"), imposed by the United States or any state thereof or any foreign country or any subdivision thereof, insofar as Death Taxes are imposed upon or with respect to any property or

10

interest passing under this Will or any property held under the MELVIN B. NESSEL 2006 TRUST, or imposed upon or with respect to any increase in my gross estate for purposes of any such Death Taxes by reason of any gift tax paid by me or my estate, shall be paid out of my entire residuary estate without apportionment therein and treated as an expense of administration.

B.     If my residuary estate is insufficient to pay in full all of my (i) valid debts (other than any debt secured by real property or the stock of any cooperative apartment corporation or any property specifically bequeathed hereunder or under the MELVIN B. NESSEL 2006 TRUST), (ii) the expenses of my last illness and funeral, regardless of any limitation by rule of law or court, (iii) the expenses of administering my estate, in all jurisdictions and (iv) such Death Taxes, without regard to the amount, if any, of any such debts, expenses or Death Taxes that would otherwise be payable from the principal of the Trust under applicable law, I direct my Personal Representatives to certify the amount of such insufficiency to the Trustees then acting under the MELVIN B. NESSEL 2006 TRUST, and in such trust instrument I direct such Trustees to pay such amount from the principal of the Trust Fund thereunder as an expense of administration thereof without apportionment therein to or for the account of my Personal Representatives.

## VII: DEFINITIONS

A.     Wherever used in this Will, the following definitions shall apply: (1) the word "issue" shall include descendants of whatever degree; (2) the words "child", "children", "grandchild", "grandchildren" and "issue" shall include persons legally adopted prior to reaching age fourteen (14) and their issue; (3) the word "minor" shall mean any person who has not reached age twenty-one (21); (4) the word "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and shall include corresponding provisions of all subsequently enacted federal tax laws; and (5) the word "trust" shall include any separate fund created by any fiduciary hereunder pursuant to the authority contained herein ; and (6) the term "fiduciary" shall include any Guardian or Minority Trustee acting hereunder.

B.     The terms herein shall be construed in the masculine, feminine or neuter, and in the singular or plural, whichever construction is consistent with the then prevailing facts.

C.     In the event that a distribution hereunder is to be made to the issue per stirpes of any person, the initial division into shares shall be made at the level of such person's children, whether or not any child of such person is then living, and within each share as to younger generations the same principle shall be applied.

IN WITNESS WHEREOF, I, MELVIN B. NESSEL, have hereunto set my hand

and have signed my initials on each of the preceding pages this 14th day of March, 2006.

_Janice S. Kraen_                _Melvin B. Nessel_                [L.S.]

_Jennifer L. Aft_                MELVIN B. NESSEL

11

7

NT000398

The foregoing instrument was signed, sealed, published and declared by the above-named Testator, MELVIN B. NESSEL, as and for his Last Will and Testament in our presence, all being present at the same time, and thereupon we, at his request and in his presence and in the presence of each other, have hereunto subscribed our names as witnesses this 14th day of March, 2006.

_Janice S. Kiser_                residing at  1515 S. Flagler Drive, #2802
                                             West Palm Beach, FL  33401

_Jennifer L. Apt_                residing at  3701 Island Road
                                             Palm Beach Gardens, FL  33410

12

NT000399

STATE OF FLORIDA

COUNTY OF PALM BEACH

I, MELVIN B. NESSEL, declare to the officer taking my acknowledgment of this instrument, and to the subscribing witnesses, that I signed this instrument as my Last Will and Testament dated March 14, 2006.

_Melvin B. Nessel_
Testator

We, Janice S. Kiser and Jennifer L. Aft, have been sworn by the officer signing below, and declare to that officer on our oaths that the testator declared the instrument to be the testator's Last Will and Testament of MELVIN B. NESSEL dated March 14, 2006 and signed it in our presence and that we each signed the instrument as a witness in the presence of the testator and each other.

_Janice S. Kiser_
Witness

_Jennifer L. Aft_
Witness

Acknowledged and subscribed before me by the testator, MELVIN B. NESSEL, who is personally known to me, and sworn to and subscribed before me by the witnesses, Janice S. Kiser who is personally known to me, and Jennifer L. Aft who is personally known to me, and subscribed by me in the presence of the testator and the subscribing witnesses, all on March 14, 2006.

_____
Signature of Notary Public

(SEAL)

PAUL RAMPELL
MY COMMISSION # DD510702
EXPIRES: Jan. 25, 2010
(407) 396-0153    Florida Notary Service.com

**Exhibit E**

IN THE CIRCUIT COURT FOR PALM BEACH COUNTY,
FLORIDA                        PROBATE DIVISION

IN RE: ESTATE OF

File No. **50-2007-CP-000838-XXXX-MB**

**MELVIN B. NESSEL**

Deceased.

NOTICE OF TRUST

    **Melvin B. Nessel**, a resident of **Palm Beach** County, Florida, who died on **February 15, 2007**, was the grantor of a trust entitled: **Melvin B. Nessel 2006 Trust** dated **March 14, 2006**, which is a trust described in Section 733.707(3) of the Florida Probate Code, and is liable for the expenses of the administration of the Decedent's estate and enforceable claims of the decedent's creditors to the extent the decedent's estate is insufficient to pay them, as provided in Section 733.607(2) of the Florida Probate Code.

    The name and address of the trustees are set forth below.

    The clerk shall file and index this notice of trust in the same manner as a caveat, unless there exists a probate proceeding for the grantor's estate in which case this notice of trust must be filed in the probate proceeding and the clerk shall send a copy to the personal representative.

Signed on **February 21, 2007.**

**Paul Rampell,**
**Trustee**
**400 Royal Palm Way, Suite 410**
**Palm Beach, FL  33480**

Copy mailed to attorney for the Personal
Representative on *March* 1, 2007.

CLERK OF THE CIRCUIT COURT

By: _____
            MUST BE FILED IN DUPLICATE

FILED
2007 FEB 27 AM 10: 49
SHARON R. BOCK, CLERK
PALM BEACH COUNTY, FL
CIRCUIT PROBATE 2

Bar Form No. P-4.0800
© Florida Lawyers Support Services, Inc.
January 1, 2005

**Exhibit F**

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO: **502007CP000838XXXXMB**
DIVISION: IB

IN RE ESTATE OF:

**MELVIN B NESSEL**

## *NOTICE TO TRUSTEE*

TO:   **PAUL RAMPBELL**
       **400 ROYAL PALM WAY #410**
       **PALM BEACH, FL 33480**

Pursuant to Florida Statute 737.308 you are hereby notified that on 21-FEB-2007, an estate was filed for the above named decedent.

The attorney for this estate and his/her address is  **PAUL RAMPELL, ESQUIRE**
                                                      **400 ROYAL PALM WAY  SUITE 410**
                                                      **PALM BEACH, FL 33480**

Witness my hand and seal of this 01-MAR-2007

**Sharon R. Bock**
**Clerk & Comptroller**

BY: _____
       Deputy Clerk

I hereby certify that a copy of this Notice was mailed via regular mail this 01-MAR-2007

**Sharon R. Bock**
**Clerk & Comptroller**

BY: _____
       Deputy Clerk

PAUL RAMPELL

**Exhibit G**

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  01-05-2009

Employer Identification Number:
26-6706519

Form:  SS-4

Number of this notice:  CP 575 B

NESSEL RESIDUARY TR
PAUL RAMPELL TTEE
400 ROYAL PALM WAY STE 410
PALM BEACH, FL  33480

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

     Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 26-6706519.  This EIN will identify your estate or trust.  If you are not the
applicant, please contact the individual who is handling the estate or trust for you.
Please keep this notice in your permanent records.

     When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

     Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

          Form 1041                        01/05/2009

     After our review of your information, we have determined that you have not filed
tax returns for the above-mentioned tax period(s) dating as far back as 2008.   Please
file your return(s) by 01/20/2009.  If there is a balance due on the return(s),
penalties and interest will continue to accumulate from the due date of the return(s)
until it is filed and paid.  If you were not in business or did not hire any employees
for the tax period(s) in question, please file the return(s) showing you have no
liabilities.

     If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
Accounting Periods and Methods.

     We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, Entity
Classification Election.  See Form 8832 and its instructions for additional information.

     To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

(IRS USE ONLY)   575B            01-05-2009  NESS  B  9999999999  SS-4

IMPORTANT REMINDERS:

* Keep a copy of this notice in your permanent records.  **This notice is issued only
  one time and the IRS will not be able to generate a duplicate copy for you.**

* Use this EIN and your name exactly as they appear at the top of this notice on all
  your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.  Thank you for your cooperation.

                    Keep this part for your records.            CP 575 B (Rev. 7-2007)

------------------------------------------------------------------------------------------

        Return this part with any correspondence
        so we may identify your account.  Please                        CP 575 B
        correct any errors in your name or address.
                                                                     9999999999

        Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE: 01-05-2009
        (    )      -                             EMPLOYER IDENTIFICATION NUMBER: 26-6706519
        _____  _____     FORM: SS-4            NOBOD

        INTERNAL REVENUE SERVICE                  NESSEL RESIDUARY TR
        CINCINNATI  OH   45999-0023               PAUL RAMPELL TTEE
        վիսիիսիսիսիսիիսիիսիիսիիսիիսիիսիիսիիսիիս      400 ROYAL PALM WAY STE 410
                                                  PALM BEACH, FL  33480

**Exhibit H**

FILED

2009 NOV 20 PM 3: 51

SHARON. R. BOCK, CLERK
PALM BEACH COUNTY, FL
CIRCUIT PROBATE 2

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY FLORIDA

IN RE: ESTATE OF

CASE NO. 502007CP000838XXXXMB

Melvin B. Nessel

_____/

Deceased

## ORDER CLOSING FILE ADMINISTRATIVELY

By order setting deadline to close estate, the court required that this estate by closed by
October 31, 2009.   The estate was not closed by that deadline.   Accordingly, it is:

ORDERED AND ADJUDGED:

1.    The clerk shall close this file administratively

2.    Closure of this file does not relieve the personal representative of liability or the
Attorney of any responsibility in the administration of this estate.

3.    All letters of administration are revoked.

DONE AND ORDERED at West Palm Beach, Palm Beach County, Florida this 20th
of November, 2009.

Circuit Judge, Jack H. Cook

copies furnished:
Paul Rampell, Esq.
400 Royal Palm Way
Suite 410
Palm Beach, FL 33480

**Exhibit I**

IN THE CIRCUIT COURT FOR PALM BEACH COUNTY,
FLORIDA
                      PROBATE DIVISION

IN RE:  ESTATE OF

SYLVIA W. LOCK,
                     File No. 502010CP004075XXXXSB

          DECEASED.     Division

STATEMENT OF CLAIM
BY
IRVING H. PICARD, ESQ., AS TRUSTEE FOR
BERNARD L. MADOFF INVESTMENT SECURITIES LLC

The undersigned, Irving H. Picard, as Trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("BLMIS"), hereby presents for filing against the

above estate this statement of claim, and alleges:

1.       The basis for the claim is recovery of avoidable fictitious profits.  As background,

this claim arises from the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff").

In early December 2008, BLMIS generated client account statements for its approximately 4,900

open client accounts at BLMIS.  When added together, these statements purport that clients of

BLMIS had approximately $65 billion invested with BLMIS.  In reality, BLMIS had assets on

hand worth a small fraction of that amount.  On March 12, 2009, Madoff admitted to the

fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to

150 years in prison.  Decedent was the beneficiary and co-trustee of an account invested with

BLMIS, and a beneficiary of the Ponzi scheme.  The investigation of Irving H. Picard, Esq., as

trustee ("Trustee") for the liquidation of the business of BLMIS, has revealed that the amount of money withdrawn from the account of which Decedent was a co-trustee and beneficiary (account number 1EM117) was greater than the amount deposited with BLMIS, and thus constitutes fictitious profit. Specifically, the amount of the six year fictitious profits that are avoidable by the Trustee from account number 1EM117 is $1,900,000.00. The fictitious profits Decedent received were taken from other customers of BLMIS and given to Decedent. Claimant seeks return of this amount so that the customer property can be equitably distributed among all of the victims of BLMIS.

2.      The name and address of the claimant are Irving H. Picard, Esq., as Trustee for Bernard L. Madoff Investment Securities LLC, c/o Baker & Hostetler LLP, 45 Rockefeller Plaza, 11th Floor, New York, NY 10100, and the name and address of the claimant's attorney, if any, are as set forth below.

3.      The amount of the claim is at least $1,900,000.00, which will become due once the claim is reduced to judgment.

4.      The claim is contingent or unliquidated. If contingent or unliquidated, the nature of the uncertainty is that the claim is not yet reduced to judgment.

5.      The claim is not secured.

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged are true, to the best of my knowledge and belief.

Anthony J. Scaletta, Esquire
Attorney for Claimant
Florida Bar No. 0058246
Baker & Hostetler, LLP
200 S. Orange Avenue, Suite 2300
Orlando, FL 32801

Telephone: (407) 649-4000

Irving H. Picard, Esq., as Trustee for Bernard
L. Madoff Investment Securities LLC
Claimant

Copy mailed to attorney for
the Personal Representative on
_____, 20____.

CLERK OF THE CIRCUIT COURT

By: _____

**MUST BE FILED IN DUPLICATE**

095879, 000021, 300111432, Statement of Claim - Lock

3