Susan F. Balaschak (SB 1901)
Michael I. Goldberg (MG 0869)
**AKERMAN, LLP**
666 Fifth Avenue, 20th Floor
New York, NY 10103
Phone: (212) 880-3800
Fax: (212) 880-8965

*Attorneys for Defendants Listed on Exhibit "A"*
*Attached to Notice of Motion to Dismiss*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION :
CORPORATION, :
 :
        Plaintiff-Applicant, :      Adv. Pro. No. 08-01789 (BRL)
 :
   - against - :      SIPA LIQUIDATION
 :
BERNARD L. MADOFF INVESTMENT :      (Substantively Consolidated)
SECURITIES LLC, :
 :
        Defendant. :
------------------------------------------------------------x
In re: :
 :
BERNARD L. MADOFF, :
 :
Debtor. :
------------------------------------------------------------x
IRVING H. PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC, :
 :
        Plaintiff, :
 :
   - against - :      Adv. Pro. Nos. Listed on Exhibit "A"
 :      to Notice of Motion to Dismiss
DEFENDANTS LISTED ON EXHIBIT "A" :
ATTACHED TO THE NOTICE OF MOTION :
TO DISMISS, :
 :
        Defendants. :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

{28487391;1}

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE
COMPLAINT .......................................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

I.   ALL COUNTS OTHER THAN § 548(a)(1)(A) SHOULD BE IMMEDIATELY
     DISMISSED PURSUANT TO § 546(e) ....................................................................... 3

II.  THIS COURT LACKS SUBJECT MATTER JURISDICTION TO
     ADJUDICATE THE TRUSTEE'S CLAIMS ............................................................... 4

III. THE TRUSTEE LACKS STANDING TO RELY UPON TRANSFERS MADE
     BY MADOFF BEFORE THE CREATION OF BLMIS TO SUPPORT HIS
     CLAIMS ........................................................................................................................ 5

IV.  THE TRUSTEE'S CALCULATION OF DEFENDANTS' CLAWBACK
     EXPOSURE RUNS AFOUL OF THE TWO YEAR REACH BACK PERIOD
     SET FORTH IN 11 U.S.C. SECTION 548 ................................................................... 8

V.   THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS ARE SIMILARLY
     SUBJECT TO DISMISSAL .......................................................................................... 8

     A.   The Claims Against Subsequent Transferees Lack the Requisite Factual
          Detail ................................................................................................................... 9

     B.   The Trustee Cannot Convert Subsequent Transferees into Beneficiaries of
          an Initial Transfer .............................................................................................. 10

VI.  THE TRUSTEE HAS NOT FULFILLED HIS BURDEN TO PLEAD HIS
     SATISFACTION OF THE CONDITION SET FORTH IN 15 U.S.C. § 78fff-
     2(C)(3) WITH PARTICULARITY ............................................................................. 12

VII. JOINDER IN THE OTHER MOTIONS TO DISMISS FILED IN SIMILAR
     CASES ......................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonded Fin. Servs. v. European Am. Bank*,
838 F.2d 890 (7th Cir. 1988) ..................................................................................................11

*Ellison v. American Image Motor Co., Inc.*,
36 F. Supp. 2d 628 (S.D.N.Y. 1999)........................................................................................10

*Enron Creditors Recovery Corp. v. J.P. Morgan Sec. (In re Enron Creditors Recovery Corp.)*,
407 B.R. 17 (Bankr. S.D.N.Y. 2009).......................................................................................12

*Gowan v. Amaranth LLC (In re Dreier LLP)*,
452 B.R. 451 (Bankr. S.D.N.Y. 2011).....................................................................................10

*Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*,
452 B.R. 467 (Bankr. S.D.N.Y. 2011).....................................................................................12

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)................................................................4

*In re Augie/Restivo Baking Company*,
860 F.2d 515 (2d. Cir. 1988)......................................................................................................6

*In re Bellingham Ins. Agency, Inc.*,
702 F.3d 553 (9th Cir. 2012) .....................................................................................................5

*In re Bullion Reserve of N. Am.*,
922 F.2d 544 (9th Cir. 1991) ...................................................................................................11

*In re Lehman Bros. Holdings Inc.*,
No. 09-01045, 2011 WL 722601 (Bankr. S.D.N.Y. Feb. 22, 2011)..........................................3

*In re Pearlman*,
2012 WL 2370389 (Bankr. M.D. Fla. 2012) ...........................................................................13

*Perrin & Nissen Ltd. v. SAS Group Inc.*,
No. 06 Civ. 13089, 2009 WL 855693 (S.D.N.Y. Mar. 27, 2009) .............................................3

*Picard v. Cohmad Sec. Corp*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011).....................................................................................10

*Picard v. Joel Busel Revocable Trust, et. al*,
No. 10-04423-brl (Bankr. S.D.N.Y.) .........................................................................................1

{28487391;1}                                                    ii

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
    458 B.R. 87 (Bankr. S.D.N.Y. 2011) ........................................................................9, 10

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ..........................................................................10

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*,
    476 B.R. 715 (S.D.N.Y. 2012) ................................................................................3, 4, 9

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011) .....................................................................................................4

*Tese-Milner v. Edidin Assoc.*,
    490 B.R. 84 (Bankr. S.D.N.Y. 2013) .............................................................................13

**Statutes**

11 U.S.C. §§ 544, 548, 550, and 551 ..........................................................................................3

11 U.S.C. § 548 ....................................................................................................................2, 4, 8

11 U.S.C. § 550(b) ...............................................................................................................10, 11

15 U.S.C. § 78fff-2(C)(1)(A)-(D) ................................................................................................12

15 U.S.C. § 78fff-2(C)(3) ............................................................................................................12

Bankruptcy Code § 546(e) .......................................................................................................2, 3

Bankruptcy Code § 548(a)(1)(A) ........................................................................................ passim

Bankruptcy Code § 548(a)(1)(B) and § 544 ................................................................................3

Bankruptcy Code § 550(a)(2) ......................................................................................................8

**Rules**

Bankruptcy Rule 7012(b)(6) ..............................................................................................1, 3, 13

Bankruptcy Rules 7012(b)(1) .................................................................................................1, 13

F.R.C.P. 8(a) ...............................................................................................................................9

F.R.C.P. 9(b) .............................................................................................................................10

F.R.C.P. 12(b)(1) ..................................................................................................................1, 13

F.R.C.P. 12(b)(6) .............................................................................................................1, 3, 13

# MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT

Defendants listed on Exhibit "A" to the Notice of Motion to Dismiss, (collectively, the "Defendants") respectfully submit this Memorandum of Law in support of the Motions to Dismiss the Complaint filed in their respective adversary proceedings (the "Actions"). Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), which have been incorporated into this adversary proceeding through Bankruptcy Rules 7012(b)(1) and (6), Defendants seek dismissal for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

The Actions are among hundreds in which the Trustee, Irving H. Picard (the "Trustee" or "BLMIS Trustee"), seeks to recover alleged "profits" received by victims who unwittingly invested in an alleged Ponzi scheme. Defendants were customers of Bernard L. Madoff Investment Securities LLC ("BLMIS"), a registered broker-dealer run by Bernard L. Madoff ("Madoff"). Defendants received periodic brokerage account statements which appeared to accurately reflect their account balances for investments by BLMIS in various securities pursuant to Defendants' securities contract with BLMIS. As acknowledged by the Trustee, when Defendants made withdrawals from their accounts, they had no idea "[t]he security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious[1]." (Lobell Trust Compl. ¶ 23.)[2]

---

[1] Defendants do not admit that BMLIS never made any purchases or sales of securities, but accept this statement solely for purposes of this Motion to Dismiss the Complaint.

[2] Citations to specific paragraphs of a Complaint herein refer to the Complaint filed in *Picard v. Marilyn Lobell Trust, et. al*, No. 10-04793-brl (Bankr. S.D.N.Y.) unless otherwise indicated, as all of the allegations against the Defendants on behalf of which this Motion is being filed are substantively the same. From this point citations to the Complaint filed in *Lobell Trust* will be noted as "Compl. at ___."

{28487391;1}                                    1

Through this proceeding, the Trustee for the liquidation of BLMIS, appointed under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), seeks to avoid these transactions through avoidance claims asserted under various provisions of the Bankruptcy Code and New York's Debtor & Creditor Law. All counts of the Complaint except the Trustee's § 548(a)(1)(A) count should be dismissed pursuant to § 546(e). Moreover, the Trustee's remaining § 548(a)(1)(A) claim should be dismissed as well because (i) the Court lacks subject matter jurisdiction to adjudicate the Trustee's claims; (ii) the underlying "netting" process used by the Trustee to determine if a defendant is a "net winner" sidesteps the two year reachback period set forth in Section 548 and includes transfers that he has no standing to avoid; (iii) the Trustee's claims against subsequent transferees are legally defective because they are not pled with the requisite specificity; and (iv) the Trustee has not alleged that BLMIS' customer property is insufficient to pay allowed customer claims with the requisite particularity.

## BACKGROUND[3]

As noted above, Defendants were among more than 8,000 customers of BLMIS, a securities broker-dealer registered with the United States Securities and Exchange Commission and was a member of the Securities Investor Protection Corporation ("SIPC"). Defendants regularly received account statements which purported to accurately represent the then current value of their investments. In reliance upon the fraudulent misrepresentations of Madoff and BLMIS, Defendants periodically withdrew funds from their investment accounts, completely unaware that account statements were falsified. While the world now knows that Madoff was engaged in an extraordinary fraud, deceiving investors (including the Defendants), financial institutions, and regulators, when Defendants made withdrawals from their accounts, it was

---

[3] For purposes of this motion only, the Defendants accept as true the facts as set forth in the Trustee's Complaints.

impossible for them to know that BLMIS had never actually traded any securities (as alleged by the Trustee). Notably, the Trustee has not alleged that Defendants were anything other than completely innocent victims who had no knowledge of Madoff's fraud.

As a result of the District Court's ruling in *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) and subsequent judgments of dismissal entered by the District Court, the only claim currently remaining in each of the Actions is the Trustee's actual fraudulent conveyance claim asserted pursuant to Section 548(a)(1)(A). *Greiff*, 476 B.R. at 722 ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."). Defendants now seek dismissal of that claim for the reasons described herein.

## ARGUMENT

### I. ALL COUNTS OTHER THAN § 548(a)(1)(A) SHOULD BE IMMEDIATELY DISMISSED PURSUANT TO § 546(e).[4]

Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012(b)(6) permit dismissal of a complaint that alleges no cause of action upon which relief may be granted. *See, e.g., Perrin & Nissen Ltd. v. SAS Group Inc.*, No. 06 Civ. 13089, 2009 WL 855693, at *9 (S.D.N.Y. Mar. 27, 2009); *In re Lehman Bros. Holdings Inc.*, No. 09-01045, 2011 WL 722601, at *2 (Bankr. S.D.N.Y. Feb. 22, 2011).

The Complaint initially purported to assert claims under multiple federal fraudulent conveyance provisions, 11 U.S.C. §§ 544, 548, 550, and 551, alleging a right to recover transfers under both the Bankruptcy Code's intentional fraudulent conveyance provision (§ 548(a)(1)(A)) and constructive fraud provisions (§ 548(a)(1)(B)), and under both the intentional and

---

[4] Although Defendants believe all causes of action other than the Trustee's Section 548(a)(1)(A) claim have been dismissed by the District Court, the Trustee has not filed an amended complaint. In an abundance of caution, Defendants include this section in this Motion based upon the procedural irregularity of this case.

constructive fraud provisions of Sections 273, 275, 276, 278, and 279 of the New York Debtor and Creditor Law. Defendants are entitled to dismissal of each of these claims as a matter of law.

As a result of proceedings in the District Court, the Trustee's only remaining avoidance claims are those under Bankruptcy Code Section 548(a)(1)(A) for avoidance of <u>actual intent</u> fraudulent transfers during the federal two-year "reach back" period. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."), *appeal pending, In re Madoff Sec.*, No. 12-2557 (2d Cir.). In subsequent judgments, the court dismissed the Trustee's constructive fraudulent transfer claims asserted under Section 548(a)(1)(B) and state law avoidance claims, which sought to avoid transfers made during a six-year "reach back" period. *Id.* Nonetheless, these claims appear to continue to be asserted against the Defendants. Thus, Defendants submit that all causes of action other than the Trustee's Section 548(a)(1)(A) claim should be formally dismissed and the Trustee should be required, at a minimum, to re-plead the singular claim that survives post-*Greiff*.

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION TO ADJUDICATE THE TRUSTEE'S CLAIMS.

The Trustee's claims against the Defendants constitute "private rights" that could only be commenced in the District Court. *See generally, Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)(holding that Section 548 claims constitute private rights falling outside of the core of the federal bankruptcy power); *Stern v. Marshall*, 131 S. Ct. 2594, 2614 n. 7 (2011) ("Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court"). Article III bars bankruptcy courts from entering

{28487391;1}                                4

final judgments in fraudulent transfer actions brought against a noncreditor absent the parties' consent. *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 572 (9th Cir. 2012).[5]

Here, the Defendants expressly object and withhold their consent to this Court's adjudication of any of the Trustee's claims, including, but not limited to, this Court's issuance of proposed findings and recommendations to the District Court. Moreover, the Defendants are not creditors of the BLMIS Estate. Accordingly, pursuant to the authority cited herein, this Court lacks subject matter jurisdiction to adjudicate the Trustee's claims.

### III. THE TRUSTEE LACKS STANDING TO RELY UPON TRANSFERS MADE BY MADOFF BEFORE THE CREATION OF BLMIS TO SUPPORT HIS CLAIMS.

BLMIS did not exist as a legal entity until December 4, 2000. Before that day, upon information and belief, Madoff conducted business as a sole proprietor and made distributions directly to investors.[6] After BLMIS was formed, upon information and belief, Madoff transferred money and investor accounts he held on behalf of investors from his sole proprietorship to BLMIS. From then on, all customer transactions were effectuated through BLMIS.

After Madoff was placed into bankruptcy and BLMIS was placed into a SIPC liquidation, the Trustee obtained an order substantively consolidating Madoff's personal bankruptcy estate with BLMIS' bankruptcy estate on June 9, 2009, *nunc pro tunc* to December 11, 2008 [Docket No. 252]. Notwithstanding the consolidation of the two estates, Madoff's individual estate continues to remain in existence with its own, separate trustee (hereafter, the "Madoff Trustee") who has his own independent powers. The Substantive Consolidation Order specifically

---

[5] The Supreme Court heard oral argument in the *Bellingham* case in January of this year. It is expected that the Supreme Court will issue a decision in or around June 2014. This decision is expected the clarify the power of Bankruptcy Courts to hear cases such as this.

[6] Moreover, upon information and belief, Madoff was never a SIPC member.

provides that "[t]he SIPA Trustee shall continue to have the duties and powers of the SIPA Trustee and, in addition, he shall have all duties and powers of a Chapter 7 trustee for the Madoff estate *other than those set forth in paragraph 4 hereof.*" (emphasis added). See, Consent Substantive Consolidation Order at p. 5.

> Paragraph 4 of the Substantive Consolidation Order provides:
>
> Notwithstanding the substantive consolidation of the Madoff estate into the BLMIS SIPA Proceeding, the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee to bring claims under Chapters 5 and 7 of the Bankruptcy Code in consultation with the SIPA Trustee and SIPC. Further, all powers, rights, claims and interests of the Madoff estate are expressly preserved, including without limitation all Chapter 5 and Chapter 7 powers, rights, claims and/or interests.

*Id.*

Substantive consolidation customarily involves "the pooling the assets of, and claims against, the two entities" being consolidated and "satisfying liabilities from the resultant common fund..." *In re Augie/Restivo Baking Company*, 860 F.2d 515, 518 (2d. Cir. 1988). "Substantive consolidation has no express statutory basis but is the product of judicial gloss." *Id.* Thus, each case of substantive consolidation can be unique.

In this case, although the Bankruptcy Court consolidated the estates' assets and liabilities for claims purposes, it is clear that the Bankruptcy Court purposely tailored something short of a complete consolidation of the two estates with the full intent that any transfers made by Madoff himself would be pursued solely by the Madoff Trustee—and not the BLMIS Trustee. Inasmuch as there has been an "incomplete" substantive consolidation of the two estates, whereby the Madoff estate has a separate trustee with the ability to prosecute Chapter 5 causes of action, the BLMIS Trustee lacks standing to recover transfers made by Madoff personally—which includes

transfers he made prior to the time BLMIS even existed.[7] The fact that the Bankruptcy Court later decided to substantively consolidate the Madoff and BLMIS estates is of no avail, because the Substantive Consolidation Order expressly consolidated Madoff's and BLMIS' assets and liabilities for claims and distribution purposes only (without giving the BLMIS Trustee the ability to bring Chapter 5 claims on behalf of the Madoff estate) and was only effective as of December 10, 2008, well after the transfers took place. Therefore, the Substantive Consolidation Order was clearly not entered for the purpose of capturing transfers made by Madoff himself. Accordingly, a transfer by Madoff to the investor should not be considered a transfer by BLMIS to the investor.

The fact that the Bankruptcy Court consolidated Madoff's and BLMIS' assets and liabilities, without giving the BLMIS Trustee the power to bring Chapter 5 avoidance actions to recover transfers made by Madoff individually, is legally significant.[8] Attached to each of the Complaints is a chart prepared by the Trustee detailing the deposits and withdrawals of each of the Defendants. The purported purpose of this chart is to demonstrate that a given defendant is a "net winner," in that they withdrew more money than they deposited. However, in many cases, the Trustee's chart includes transfers made by Madoff to the defendant prior to December 4, 2000, the date of BLMIS' creation. As such, the Trustee relies upon transfers made by Madoff individually (as opposed to BLMIS) as a basis for bringing his claims. Since the Trustee cannot sue to recover these transfers, he does not have standing to rely upon them in support of his

---

[7] It is clear that the BLMIS Trustee is aware of his lack of standing. This is evident by the fact that in other avoidance cases involving transfers made directly by Madoff—as opposed to BLMIS— the Madoff Trustee was required to join the action. For example, the Madoff Trustee was a necessary plaintiff in the lawsuit brought against some of Madoff's relatives to recover transfers made directly by Madoff to his relatives. That case involved the very same causes of action asserted in the Actions. *See* Adversary Proceeding No. 10-05328-brl.

[8] This is also significant because through substantive consolidation, the Bankruptcy Court pooled Madoff's and BLMIS's liabilities thereby eliminating any argument that BLMIS does not have to take into account investor deposits given to Madoff.

{28487391;1}                                   7

avoidance claims on behalf of BLMIS' estate.[9] Based upon the foregoing, the Trustee should be required to re-calculate the charts attached to the Complaints and dismiss those actions in which the result indicates the defendant is not a net winner.

### IV. THE TRUSTEE'S CALCULATION OF DEFENDANTS' CLAWBACK EXPOSURE RUNS AFOUL OF THE TWO YEAR REACH BACK PERIOD SET FORTH IN 11 U.S.C. SECTION 548.

Despite the fact that the District Court held that the Trustee cannot recover transfers that occurred more than two years prior to the commencement of this bankruptcy, in reality, the Trustee's method of calculating a defendant's clawback exposure sidesteps this limitation. More specifically, in calculating the BLMIS customers' clawback exposure, the Trustee has adopted a netting procedure that includes withdrawals going back to the inception of the account-- which in many cases covers a period of over a decade. Accordingly, the Trustee is attempting to indirectly do what he cannot do directly -- capture transfers made more than two years back. As such, the Court should dismiss the 548(a)(1)(A) count to the extent the sums withdrawn during the two year reachback period are less than the investors' deposits.

### V. THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS ARE SIMILARLY SUBJECT TO DISMISSAL.

The Trustee pursues claims against certain Defendants as a subsequent transferee under § 550(a)(2) of the Code, in which he seeks the recovery of alleged but unspecified subsequent transfers[10]. These subsequent transfer claims are subject to dismissal for two reasons: (1) the

---

[9] Although the Second Circuit approved the Trustee's net equity method for claims calculation purposes, it did not do so for avoidable transfer purposes. That is, the Second Circuit never concluded that the Trustee could add up all "ins" and subtract all "outs" and if that was a negative number sue the investor to recover the "excess" distributions. Moreover, it is unclear whether the Second Circuit even considered that Madoff was a separate distinct entity operating his Ponzi scheme long before BLMIS was ever established. Although Judge Rakoff did approve the use of this calculation for avoidance purposes, Judge Rakoff never considered that the Trustee lacked standing to pursue Chapter 5 claims to recover transfers made by Madoff himself.

[10] The Trustee is not pursing subsequent transferee claims in certain actions listed on Exhibit "A" attached to the Notice of Motion to Dismiss. *Picard v. Radosh Partners, et. al*, No. 10-05073-brl (Bankr. S.D.N.Y.); *Picard v. The*

{28487391;1}                                                    8

Trustee's allegations lack sufficient detail to make the claims plausible on their face and thus do not meet the pleading requirements of Rule 8(a); and (2) they extend the scope of "subsequent transferee" liability to an unreasonable and inappropriate degree. The Trustee fails to satisfy a condition precedent in that he fails to establish that the transfers at issue may be avoided as against the initial transferees before pursuing any subsequent transferee claims.

### A. The Claims Against Subsequent Transferees Lack the Requisite Factual Detail.

This Court has previously recognized that vague, unspecific allegations of subsequent transferee liability are insufficient to state a claim. In *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011), the court held that subsequent transfer claims lacking "even a modicum of specificity" must be dismissed. *Id.* at 120. The court stated further:

> While the Complaint's failure to indicate specific amounts does not in and of itself warrant dismissal of the Subsequent Transfer claims, its failure to provide even a modicum of specificity with respect to the Subsequent Transfers so as to put the Defendants on notice as to which ones the Trustee seeks to recover does so warrant.

*Id.* (internal citations omitted). As in *Madoff*, the Trustee's complaint here is speculative and lacking in factual detail.

Specifically, the allegations in support of subsequent transfer claims do not identify any dates or amounts of any alleged subsequent transfers, let alone any details as to how the transfers allegedly occurred. Moreover, aside from general identification of the defendants, the Complaints do not link any specific defendant to any specific alleged initial or subsequent transfer(s) – in other words, the Trustee merely (and improperly) "lumps all of the Defendants

---

*Gettinger Foundation*, No. 10-04386-brl (Bankr. S.D.N.Y.), and *Picard v. Mike Stein*, No. 10-04456-brl (Bankr. S.D.N.Y.). Accordingly, this argument does not apply to these actions.

{28487391;1}                                    9

together" for the purposes of alleging both initial and subsequent transfers and speculates as to whether a subsequent transfer even occurred. In cases where fraud is asserted, the failure to distinguish among defendants is fatal to a plaintiff's complaint. *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) ("[W]here a case involves multiple defendants, F.R.C.P. 9(b) requires that the complaint allege facts specifying each defendant's contribution to the fraud, identifying which defendant is responsible for which act") (citing *Ellison v. American Image Motor Co., Inc.*, 36 F. Supp. 2d 628 (S.D.N.Y. 1999)).

The allegations pertaining to the subsequent transferees are conclusory assertions without "any sort of estimate of the amount of the purported [s]ubsequent [t]ransfer, or when or how such [t]ransfer occurred." *Madoff*, 458 B.R. at 119. Absent the necessary, critical details, the Trustee's subsequent transferee claims should be dismissed. *See Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 464 (Bankr. S.D.N.Y. 2011) ("[T]he complaint [must] contain the 'necessary vital statistics -- the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."). The details missing here are critical because a subsequent transferee will only be liable for the property of the estate that it wrongfully received. *Picard v. Cohmad Sec. Corp*, 454 B.R. 317, 340 (Bankr. S.D.N.Y. 2011).

**B.    The Trustee Cannot Convert Subsequent Transferees into Beneficiaries of an Initial Transfer.**

The Trustee's subsequent transferee claims are not only lacking sufficient detail, they also blur the important distinction made by § 550(a) between initial and subsequent transferees. Section 550 identifies three potential sources from which the Trustee may recover all or part of an avoidable transfer: § 550(a) provides for recovery from two possible entities: (i) the initial transferee and (ii) an entity for whose benefit the initial transfer was made. Section 550(b) provides for recovery from a third source: a subsequent transferee. Unlike transferees under §

550(a), subsequent transferees have a defense to recovery under § 550(b) if they (1) took for value, including satisfaction or securing of a present or antecedent debt; (2) in good faith; and (3) without knowledge of the voidability of the initial transfer by the debtor. *See* 11 U.S.C. § 550(b).

The value paid by a subsequent transferee need only be sufficient to support a simple contract, similar to protections provided to *bona fide* purchasers for value under various state laws. In contrast to value in the context of § 548(c), "value" here is the value given to the transferor, not the debtor or, in this case, BLMIS. *See Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 897 (7th Cir. 1988) ("Transferees and other purchasers generally deal only with the previous person in line; they give value, if at all, to their transferors (or the transferors' designees").

In the instant case, the Trustee attempts to bypass the protections afforded to subsequent transferees by pleading that they are also beneficiaries of the initial transfer:

> To the extent the funds transferred from BLMIS were for the benefit of the Subsequent Transferee Defendants, Subsequent Transferee Defendants are the initial transferees of such transfers and are included in the definition of Defendants for purposes of the allegations herein.

(*See* Compl. at ¶ 3.)

No matter how far the Trustee attempts to "stretch" the scope of § 550, these allegations fail because a *later recipient* of an initial transfer is a subsequent transferee, not an initial transferee or a beneficiary of the initial transfer. *See In re Bullion Reserve of N. Am.*, 922 F.2d 544, 548 (9th Cir. 1991) ("A subsequent transferee cannot be an entity for whose benefit the initial transfer was made, even if the subsequent transferee actually receives a benefit from the initial transfer."); *Bonded*, 838 F.2d at 895 (same).

Moreover, the Trustee fails to allege any facts supporting the bare-bones allegation that funds were transferred for the benefit of the subsequent transferee defendants. Such facts would necessarily include the basis for the alleged beneficiary status or which transfers were purportedly received. *Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*, 452 B.R. 467, 478 (Bankr. S.D.N.Y. 2011) (dismissing as "conclusory and speculative" claims that an alleged subsequent transferee was also a beneficiary). The Trustee thus impermissibly implies that any benefit, however indirect or incidental, is sufficient to transform an individual or entity into a "beneficiary" within the meaning of § 550(a)(1) and thus hold them responsible for the entire amount of the initial transfer. To the contrary, "[t]he benefit must be direct, ascertainable and quantifiable and must correspond to, or be commensurate with, the value of the property that was transferred." *Enron Creditors Recovery Corp. v. J.P. Morgan Sec. (In re Enron Creditors Recovery Corp.)*, 407 B.R. 17, 33 (Bankr. S.D.N.Y. 2009) (internal quotation omitted), *rev'd on other grounds, Alfa S.A.B. de C.V. v. Enron Creditors Recovery Corp. (In re Enron Creditors Recovery Corp.)*, 422 B.R. 423 (S.D.N.Y. 2009). As such, all subsequent transferee claims must be dismissed.

## VI. THE TRUSTEE HAS NOT FULFILLED HIS BURDEN TO PLEAD HIS SATISFACTION OF THE CONDITION SET FORTH IN 15 U.S.C. § 78fff-2(C)(3) WITH PARTICULARITY.

The Trustee's ability to pursue fraudulent transfer actions is limited to circumstances in which customer property is insufficient to pay customer and SIPC claims. *See* 15 U.S.C. §§ 78fff-2(C)(3) and 78fff-2(C)(1)(A)-(D). The Trustee simply alleges that "absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in paragraphs (A) through (D) of § 78fff-2(C)(1)." (Compl. at ¶ 20.) This conclusory allegation is insufficient to satisfy the Trustee's burden to plead his § 548(a)(1)(A) claim with particularity as required by

Federal Rule of Civil Procedure 9(b). *See Tese-Milner v. Edidin Assoc.*, 490 B.R. 84, 92 (Bankr. S.D.N.Y. 2013) (holding that Rule 9(b) applies to § 548(a)(1)(A) claims).

## VII. JOINDER IN THE OTHER MOTIONS TO DISMISS FILED IN SIMILAR CASES

To the extent that defendants to other actions brought by the Trustee are similarly situated to Defendants on whose behalf this Motion is filed, Defendants join in any motions to dismiss filed by those defendants to the extent that such motions include grounds for dismissal not addressed herein.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and (6), which have been incorporated into this adversary proceeding through Bankruptcy Rules 7012(b)(1) and (6). and grant such other relief as is just and proper.

Dated: New York, NY
       April 17, 2014

                                Respectfully submitted,

                                **AKERMAN, LLP**

                                By: /s/ Susan F. Balaschak
                                   Susan F. Balaschak (SB 1901)
                                   Email: susan.balaschak@akerman.com
                                   666 Fifth Avenue, 20th Floor
                                   New York, NY 10103
                                   Phone: (212) 880-3800
                                   Fax: (212) 880-8965

                                   Michael I. Goldberg (MG 0869)
                                   Email: michael.goldberg@akerman.com
                                   Las Olas Centre II, Suite 1600
                                   350 East Las Olas Boulevard
                                   Fort Lauderdale, FL 33301-2229
                                   Phone: (954) 463-2700
                                   Fax: (954) 463-2224

                                   *Counsel for Defendants Listed on Exhibit "A"*
                                   *Attached to the Notice of Motion to Dismiss*