ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Michael V. Ciresi

Damien A. Riehl

Thomas F. Berndt

800 LaSalle Avenue — 2800 LaSalle Plaza

Minneapolis, MN 55402–2015

T: 612–349–8500

F: 612–339–4181

*Attorneys for Defendants Miles Q. Fiterman Revocable Trust;*
*Miles Q. Fiterman Non-Exempt Marital Trust; Towers*
*Management Company LLC; Fiterman GST Exempt Marital*
*Trust; Miles Fiterman Family Trust; Shirley Fiterman,*
*individually, and in her capacity as Trustee for the Miles Q.*
*Fiterman Revocable Trust and the Miles Q. Fiterman Non-*
*Exempt Marital Trust; Steven Fiterman, individually, and in his*
*capacity as Trustee for the Miles Q. Fiterman Revocable Trust and*
*the Miles Q. Fiterman Nonexempt Marital Trust; Valerie*
*Herschman, individually, and in her capacity as Trustee for the*
*Miles Q. Fiterman Revocable Trust and the Miles Q. Fiterman*
*Non-Exempt Marital Trust; Karen Wasserman; Lynn Guez;*
*Stephanie Rosenthal; Miles Q. Fiterman II; and Matthew*
*Fiterman*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Securities Investor Protection Corporation,**<br><br>Plaintiffs-Applicant,<br><br>v.<br><br>**Bernard L. Madoff Investment Securities LLC,**<br><br>Defendant. | SIPA Liquidation<br><br>No. 08–01789 (SMB)<br><br>(Substantively Consolidated) |
| In re:<br><br>**Bernard L. Madoff,**<br><br>Debtor. | |

**Irving H. Picard**, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC,

                        Plaintiff,

v.

**Miles Q. Fiterman Revocable Trust; Miles Q.
Fiterman Non-Exempt Marital Trust; Towers
Management Company LLC; Fiterman GST Exempt
Marital Trust; Miles Fiterman Family Trust; Shirley
Fiterman,** individually, and in her capacity as Trustee
for the **Miles Q. Fiterman Revocable Trust** and the
**Miles Q. Fiterman Non-Exempt Marital Trust;
Steven Fiterman**, individually, and in his capacity as
Trustee for the **Miles Q. Fiterman Revocable Trust**
and the **Miles Q. Fiterman Nonexempt Marital Trust;
Valerie Herschman**, individually, and in her capacity
as Trustee for the **Miles Q. Fiterman Revocable Trust**
and the **Miles Q. Fiterman Non-Exempt Marital
Trust; Karen Wasserman; Lynn Guez;
Stephanie Rosenthal; Miles Q. Fiterman II**; and
**Matthew Fiterman**,

                        Defendants.

Adversary Proceeding

No. 10–04337 (SMB)

Jury Trial Demanded

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Preliminary Statement ..................................................................................................... 1

Factual Statement ............................................................................................................ 2

   I.   The Madoff Trustee is seeking avoidance and recovery of alleged transfers of
fictitious profits. ....................................................................................................... 2

   II.  The District Court dismisses Counts Two through Six of the Complaint, limiting
the Trustee to avoiding and recovering transfers that occurred within two years
of the Filing Date. .................................................................................................... 3

   III. The Trustee alleges that BLMIS transferred a total of $38,356,992 in "fictitious
profits" to the Non-Exempt Trust in the two years before the Filing Date. .............. 4

   IV. The Complaint vaguely alleges that the "Initial Transferee Defendants"
subsequently transferred "some" avoidable transfers to the "Subsequent
Transferee Defendants." ........................................................................................... 5

   V.   The Non-Exempt Trust's BLMIS account statements reflected over $100 million
in open securities positions. ..................................................................................... 6

Argument ......................................................................................................................... 6

   I.   The remaining counts of the Complaint—Counts One, Seven, and Eight—fail
to state claims upon which relief may be granted. .................................................... 6

   II.  Count One fails to state a claim for actual fraudulent transfer under the Code
because the Complaint's allegations show that the Non-Exempt Trust was a
good-faith "financial participant" that is protected by Code section 548(c)-(d). ...... 7

      A.  The Non-Exempt Trust's good faith is undisputed. ............................................ 8

      B.  All of the Two-Year Transfers were for value because they constitute
"settlement payments" made to a "financial participant" under 11 U.S.C.
§ 548(d)(2)(B). .................................................................................................. 9

   III. Count One fails to state a claim for actual fraudulent transfer because the
Trustee has not sufficiently pled standing under SIPA. .......................................... 11

   IV. Count Seven fails to state a claim to recover alleged subsequent transfers
because the Complaint does not allege "the who, when, and how much" of any
purported transfers. ............................................................................................... 13

      A.  The Complaint's allegations of "who" made and received any alleged
subsequent transfers are impermissibly vague. ................................................. 14

      B.  The Complaint does not allege "when" any alleged subsequent transfers
occurred. .......................................................................................................... 15

      C.  The Complaint does not allege "how much" was subsequently transferred. ...... 15

      D.  The Complaint's threadbare allegations of subsequent transfers are
indistinguishable from allegations deemed inadequate in other proceedings. .. 15

      E.  Unlike *Cohmad* and *Merkin I*, the Complaint does not allege that the

subsequent transfers were fixed-rate commissions or fees, providing no
means to calculate the allegedly transferred amount. .......................................17

V.   Count Eight fails to state a claim for disallowance of related account customer
claims and should be dismissed. .............................................................................18

**Conclusion** .......................................................................................................................**19**

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................6

*Bernheim v. Litt,*
    79 F.3d 318 (2d Cir. 1996) ........................................................................6

*Buchwald Cap. Adv. LLC, v. JP Morgan Chase Bank, N.A.*
    (*In re M. Fabrikant & Sons, Inc.*),
    2009 Bankr. LEXIS 3606 (Bankr. S.D.N.Y. Nov. 10, 2009) ......................15

*Cortec Industries, Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991) ........................................................................7

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
    651 F.3d 329 (2d Cir. 2011) ......................................................................9

*Gowan v. Amaranth LLC (In re Dreier LLP),*
    452 B.R. 451 (Bankr. S.D.N.Y. 2011) .............................................13, 16

*In re Bernard L. Madoff Inv. Secs. LLC,*
    654 F.3d 229 (2d Cir. 2011) ....................................................................11

*In re New Times Secs. Svcs., Inc. ("New Times I"),*
    371 F.3d 68 (2d Cir. 2003) ......................................................................11

*Pani v. Empire Blue Cross Blue Shield,*
    152 F.3d 67 (2d Cir. 1998) ........................................................................7

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) .......................................13, 17, 18

*Picard v. Katz,*
    462 B.R. 447 (S.D.N.Y. 2011).............................................................9, 10

*Picard v. Madoff (In re Bernard L. Madoff Investment Sec. LLC),*
    458 B.R. 87 (Bankr. S.D.N.Y. 2011) ...............................................16, 17

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),*
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ............................................17, 18

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*,
   476 B.R. 715 (S.D.N.Y. 2012)....................................................3, 9, 10, 11

*Stafford v. Giddens (In re New Times Sec. Servs.) ("New Times II")*,
   463 F.3d 125, 129 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...11

## Statutes

11 U.S.C. § 101 ............................................................................9, 10

11 U.S.C. § 502 ........................................................................2, 18, 19

11 U.S.C. § 546 ............................................................................3, 19

11 U.S.C. § 548 ..........................................................................passim

11 U.S.C. § 561 ...............................................................................9

11 U.S.C. § 741 ............................................................................9, 10

15 U.S.C. § 78 ...........................................................................11, 12

Securities Investor Protection Act of 1970 ........................................2, 11, 12, 19

## Rules

Fed. R. Bankr. P. 7012 .........................................................................6

Fed. R. Civ. P. 12..........................................................................6, 7

Fed. R. Civ. P. 19...........................................................................19

Fed. R. Civ. P. 54............................................................................4

## PRELIMINARY STATEMENT

In this proceeding, Trustee Picard is suing the trusts and family of the late Miles Q. Fiterman, admittedly innocent Madoff customers, to claw back alleged profits earned over the course of their investment. Based on consolidated briefing applicable to this and other similar adversary proceedings, Judge Rakoff for the Southern District of New York has previously dismissed Counts Two through Six of the Trustee's Amended Complaint. Judge Rakoff's ruling is currently on appeal to the Second Circuit.

The Trustee's remaining claims for avoidance and recovery of alleged actual fraudulent transfers (Counts One and Seven) and disallowance of related customer claims (Count Eight) are insufficiently pled and, therefore, subject to dismissal. Specifically, the Amended Complaint demonstrates that the trust that received the alleged initial transfers from Madoff was not only a good-faith transferee, but also a "financial participant" that is deemed to have provided value for the alleged transfers under the Bankruptcy Code (the "Code") section 548(d)(2)(B). Because the Amended Complaint demonstrates that the alleged initial transfers are protected by section 548(c), Counts One and Seven must be dismissed in their entirety.

Counts One and Seven are also defective because the Trustee has not sufficiently pled a current shortfall in funds needed to satisfy all allowed customer claims, which is a prerequisite under the Securities Investor Protection Act for standing to utilize the Code's avoidance and recovery powers. Because the Trustee lacks standing to bring this adversary proceeding, Counts One and Seven must be dismissed in their entirety.

Even if the Amended Complaint sufficiently pled a claim to avoid alleged initial transfers, the Trustee's claims to avoid alleged subsequent transfers under Count Seven are defective in that they fail to identify which defendant received a subsequent transfer, how much the defendant received, and when the transfer occurred. Because such threadbare

allegations do not put Defendants on notice of what they must defend against, Count
Seven must be dismissed as to any alleged subsequent transfers.

Lastly, Count Eight should be dismissed as to MSM Investment because the Trustee
has agreed to allow its SIPC customer claim. The remainder of Count Eight, which seeks to
disallow the claims of Shirley Fiterman and Fairway Partnership II under Code section
502(d), must also be dismissed because the Trustee has not sufficiently alleged that any
Defendant received property that is avoidable or recoverable under the Code. In light of
these deficiencies, the Amended Complaint should be dismissed in its entirety.

## FACTUAL STATEMENT

**I.      The Madoff Trustee is seeking avoidance and recovery of alleged transfers of
fictitious profits.**

On December 10, 2010, Irving H. Picard (the "Trustee"), as trustee for the
liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS")
under the Securities Investor Protection Act of 1970 ("SIPA") and the substantively
consolidated estate of Bernard L. Madoff individually ("Madoff"), filed an Amended
Complaint (the "Complaint") against the above-captioned defendants (collectively, the
"Defendants").

The Complaint includes eight counts. Counts One through Six allege actual and
constructive fraudulent transfer claims, under both the Code and the New York Debtor &
Creditor Law (the "NYDCL"), seeking to avoid and recover alleged transfers of "fictitious
profits." (Complaint ¶¶ 68–105.) Count Seven seeks recovery of the alleged fraudulent
transfers (Complaint ¶¶ 106–111), and Count Eight seeks to disallow certain customer
claims (Complaint ¶¶ 112–115).

All of these counts relate to transfers into and out of three customer accounts held in
the name of the Miles Q. Fiterman Revocable Trust (the "Revocable Trust") (Account No.

1F0021) or the Miles Q. Fiterman Non-Exempt Marital Trust (the "Non-Exempt Trust")
(Account Nos. 1F0200 and 1T0015). As the Complaint alleges, Miles Q. Fiterman (when
alive) settled the Revocable Trust and served as the trust's co-trustee, along with his wife
Shirley Fiterman. (Complaint ¶¶ 3, 13.) As the Complaint alleges, after Mr. Fiterman died
in 2004, the assets of the Revocable Trust were distributed to other trusts, including the
Non-Exempt Trust. (Complaint ¶ 3.)

For each of the three accounts at issue, the Complaint alleges that "a Customer
Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases
and Sales of Securities and Options" were executed and delivered to BLMIS. (Complaint
¶ 49.)

## II.    The District Court dismisses Counts Two through Six of the Complaint, limiting the Trustee to avoiding and recovering transfers that occurred within two years of the Filing Date.

The Complaint seeks to avoid two groups of alleged fraudulent transfers: (1) transfers
BLMIS allegedly made to Defendants during the six years before the December 11, 2008
filing date (the "Filing Date"), which the Trustee seeks to avoid under Code section 544
and the NYDCL (the "Six-Year Transfers"), and (2) transfers BLMIS allegedly made to
Defendants during the two years before the Filing Date, which the Trustee seeks to avoid
under Code section 548 (the "Two-Year Transfers"). (Complaint ¶¶ 68–105.)

On May 12, 2012, Judge Rakoff for the Southern District of New York dismissed the
Trustee's claims to avoid and recover the Six-Year Transfers. In *SIPC v. Bernard L. Madoff
Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012), Judge Rakoff held "that
§ 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and
§ 544." Judge Rakoff later consolidated the present adversary proceeding into Case No. 11–
cv-7603 (JSR) (the "Fishman Action") for purposes of entering final judgment dismissing
the Trustee's claims relating to alleged Six-Year Transfers. *See* Consent Order Granting

– 3 –

Certification Pursuant to Fed. R. Civ. P. 54(b) for Entry of Final Judgment Dismissing

Certain Claims and Actions on May 12, 2012 in Case No. 12–mc-115 (JSR) (ECF No.

109) and Case No. 11–cv-8988 (JSR) (S.D.N.Y. 2012) (ECF No. 17.). On May 22, 2012,

the District Court entered a Final Judgment Dismissing Certain Claims in Case No. 12–mc-

115 (JSR) (ECF No. 124), which dismissed Counts Two through Six in the present

adversary proceeding. This order is currently on appeal to the Second Circuit. *See In re*

*Bernard L. Madoff Investment Securities LLC*, Appeal No. 12–2557bk (2d Cir.). This

dismissal effectively limited the Trustee to recovering so-called Two-Year Transfers—

transfers of fictitious profits during the two-years before the Filing Date.

### III.    The Trustee alleges that BLMIS transferred a total of $38,356,992 in "fictitious profits" to the Non-Exempt Trust in the two years before the Filing Date.

The Complaint alleges that, during the two years before the Filing Date, BLMIS

made four so-called Two-Year Transfers of alleged fictitious profits out of the Non-Exempt

Trust's BLMIS account (Acct. No. 1F0200) totaling $38,356,992: (1) a December 26, 2006

transfer of $13,150,000, of which $9,000,761 is alleged to be "fictitious profits;" (2) an

April 20, 2007 transfer of $13,000,000; (3) a December 26, 2007 transfer of $3,356,231;

and (4) an April 21, 2008 transfer of $13,000,000 (collectively, the "Two-Year Transfers").

(*See* Complaint Ex. B.)

Count One of the Complaint alleges an actual-fraudulent-transfer claim under the

Code, seeks judgment against the Non-Exempt Trust in the amount of the Two-Year

Transfers, and seeks an order against the trustees of the Non-Exempt Trust (Shirley

Fiterman, Steven Fiterman, and Valerie Herschman) directing them to facilitate the

transfer of the Two-Year Transfers to the estate of BLMIS.

**IV.    The Complaint vaguely alleges that the "Initial Transferee Defendants"
subsequently transferred "some" avoidable transfers to the "Subsequent
Transferee Defendants."**

The Complaint alleges that, after being transferred from BLMIS to the Initial

Transferee Defendants, avoidable transfers were subsequently transferred to eleven

"Subsequent Transferee Defendants":

> 5. Upon information and belief, the Fiterman Non-Exempt
> Marital Trust, the Fiterman GST Exempt Marital Trust . . . , the
> Miles Fiterman Family Trust . . . , Shirley Fiterman, Steven
> Fiterman, Valerie Herschman, Karen Wasserman, Lynn Guez,
> Stephanie Rosenthal, Miles Q. Fiterman II, and Matthew
> Fiterman ("Subsequent Transferee Defendants,". . . ) received
> subsequent transfers of the avoidable transfers referenced
> above.

(Complaint ¶ 5.)

The Complaint fails to allege the amount of the subsequent transfers, but merely

states: "Upon information and belief, *some or all* of the Transfers were subsequently

transferred by the Initial Transferee Defendants to the Subsequent Transferee

Defendants." (Complaint ¶ 54 (emphasis added).) The Complaint defines the term

"Transfers" as referring collectively to the Six-Year and Two-Year Transfers. (Complaint

¶ 51.)

Count Seven, which seeks to recover alleged subsequent transfers, does not specify

whether the Initial Transferee Defendants made the alleged Subsequent Transfers to the

Subsequent Transferee Defendants directly or indirectly:

> 108. Upon information and belief, the Subsequent Transfers
> were transferred by the Initial Transferee Defendants to the
> Subsequent Transferee Defendants.
>
> 109. Each of the Subsequent Transfers was made directly or
> indirectly to the Subsequent Transferee Defendants.
>
> 110. The Subsequent Transferee Defendants are immediate or
> mediate transferees of the Subsequent Transfers from the Initial
> Transferee Defendants.

(Complaint ¶¶ 108–110.)

The Complaint does not otherwise identify the amount, date, or recipient of any alleged Subsequent Transfers.

### V. The Non-Exempt Trust's BLMIS account statements reflected over $100 million in open securities positions.

Attached to the Complaint as Exhibit B is a schedule prepared by the Trustee of all deposits and withdrawals for the Non-Exempt Trust's BLMIS account (Acct. No. 1F0200). Exhibit B shows that the first activity in the Non-Exempt Trust's BLMIS account was a $356,594,539 deposit on June 30, 2006. (*See* Complaint Ex. B at MADC1054_00000008.) The Non-Exempt Trust's BLMIS account statement from November 30, 2008 lists the "net market value of open securities positions" as $383,004,866.35. (Declaration of Thomas Berndt "Berndt Decl.", Ex. 1 at pg. 1.)

## ARGUMENT

### I. The remaining counts of the Complaint—Counts One, Seven, and Eight—fail to state claims upon which relief may be granted.

A complaint may be dismissed to the extent that it fails to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12 (b)(6); FED. R. BANKR. P. 7012 (b) (making FED. R. CIV. P. 12(b)–(i) applicable in adversary proceedings). A court considering a motion to dismiss must accept as true all well-pleaded factual allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding a motion to dismiss, courts consider the pleadings and documents attached to the pleadings or incorporated by reference. *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991). Courts may also consider on a motion to dismiss documents not attached to the complaint or incorporated by reference, where the plaintiff has actual notice of and has relied upon the documents in framing the complaint. *Id.* Here the Non-Exempt Trust's monthly BLMIS account statements are cited throughout the Complaint. (*See* Complaint ¶¶ 1, 37, 39, 41–43.) Exhibit B to the Complaint lists all transactions reported in the Non-Exempt Trust's BLMIS account statements from its inception through Madoff's collapse. (*See* Complaint at Ex. B.) The Trustee has actual notice (and even possession) of the Non-Exempt Trust's BLMIS account statements and has relied extensively on them in framing the complaint. Accordingly, although they are not attached to the Complaint, the Non-Exempt Trust's BLMIS account statements may be considered by the Court in ruling on this motion, without converting the motion to one for summary judgment.[1] Because all remaining counts of the Complaint fail to state claims upon which relief may be granted, the Complaint should be dismissed in its entirety.

II.    **Count One fails to state a claim for actual fraudulent transfer under the Code because the Complaint's allegations show that the Non-Exempt Trust was a good-faith "financial participant" that is protected by Code section 548(c)-(d).**

Count One must be dismissed because it is barred by 11 U.S.C. § 548(c). An affirmative defense may be raised on a Rule 12(b)(6) motion if the defense is based on facts appearing on the face of the complaint. *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir. 1998). Here, it is apparent from the face of the Complaint that the alleged initial transferee of the Two-Year Transfers, the Non-Exempt Trust, qualifies for section 548(c) protection.

---

[1] The Non-Exempt Trust's BLMIS November 30, 2008 account statement is attached as Exhibit 1 to the Declaration of Thomas F. Berndt ("Berndt Decl.").

Section 548(c) provides an affirmative defense to actual-fraudulent-transfer claims under the Code for transferees who takes for value and in good faith: "a transferee . . . of such a transfer . . . that takes for value and in good faith has a lien on or may retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer." 11 U.S.C. § 548(c). The Non-Exempt Trust satisfies both of these requirements because the Non-Exempt Trust's good-faith is undisputed and because the Non-Exempt Trust is a "financial participant" that is deemed to have provided value for the Two-Year Transfers under 11 U.S.C. § 548(d)(2)(B).

### A.    The Non-Exempt Trust's good faith is undisputed.

It is apparent that Defendants received the alleged transfers of "fictitious profits" in good faith, given the Complaint's disclaimer showing its lack of any evidence that Defendants had actual or constructive knowledge of Madoff's fraud:

> To the extent discovery reveals that the defendants were aware, or should have been aware, of irregularities in their BLMIS accounts that would have provided them with inquiry notice of Madoff's fraud, the Trustee reserves the right to (i) supplement the information regarding the Transfers and Subsequent Transfers and any additional transfers, and (ii) seek recovery of some or all of the full history of principal transfers . . . ."

(Complaint ¶ 57.) Thus, Defendants meet the section 548(c) good-faith requirement.

– 8 –

**B.    All of the Two-Year Transfers were for value because they constitute "settlement payments" made to a "financial participant" under 11 U.S.C. § 548(d)(2)(B).**

The Complaint demonstrates that the Non-Exempt Trust took for value under section 548(d)(2)(B), which provides "a . . . financial participant . . . that receives a . . . settlement payment, as defined in section 101 or 741 of this title, takes for value to the extent of such payment." 11 U.S.C. § 548(d)(2)(B). Section 741(8) defines "settlement payment" as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). The Second Circuit has described this as an "extremely broad" definition and Judge Rakoff has twice held that "all payments made by [BLMIS] to its customers" qualify as "settlement payments" under 11 U.S.C. § 741. *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 334 (2d Cir. 2011); *Picard v. Katz*, 462 B.R. 447, 452 (S.D.N.Y. 2011); *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 721 (S.D.N.Y. 2012). Because the Two-Year Transfers were payments by BLMIS to a customer, the Non-Exempt Trust, they constitute "settlement payments" under 11 U.S.C. § 741(8).

The Non-Exempt Trust also qualifies as a "financial participant," which means:

> an entity that, at the time it enters into a securities contract, . . . or at the time of the date of the filing of the petition, has one or more agreements or transactions described in paragraph (1), (2), (3), (4), (5), or (6) of section 561(a) with the debtor . . . of a total gross dollar value of not less than $1,000,000,000 . . . or *has gross mark-to-market positions of not less than $100,000,000 (aggregated across counterparties) in one or more such agreements or transactions with the debtor or any other entity (other than an affiliate) at such time or on any day during the 15–month period preceding the date of the filing of the petition*; . . . .

11 U.S.C. § 101(22A)(A) (emphasis added). The "agreements or transactions described in paragraph (1), (2), (3), (4), (5), or (6) of section 561(a)" include "securities contracts," which section 741(7) defines as "a contract for the purchase, sale, or loan of a security." 11

– 9 –

U.S.C. §§ 561(a)(1), 741(7). The Complaint alleges that the Non-Exempt Trust entered three contracts with BLMIS: a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options. (Complaint ¶ 49.) Judge Rakoff has twice held that these three types of agreements that BLMIS entered with its customers qualify as "securities contracts" under section 741(7). *Picard v. Katz*, 462 B.R. 447, 451–52 (S.D.N.Y. 2011) ("Section 741(7) defines a 'securities contract' as a 'contract for the purchase, sale, or loan of a security,' which is the kind of contract Madoff Securities had with its customers."); *Picard v. Grieff*, 476 B.R. 715, 720 (S.D.N.Y. 2012) ("the account agreements between Madoff Securities and the defendants clearly qualify as securities contracts"). Accordingly, all three types of agreements that the Complaint alleges the Non-Exempt Trust entered with BLMIS constitute "securities contracts" under 11 U.S.C. § 741(7).

The value of the Non-Exempt Trust's securities contracts with BLMIS meets the $100,000,000 threshold for a "financial participant" because the Non-Exempt Trust's BLMIS account statements reflected: (1) gross mark-to-market positions of not less than $100,000,000 at the time it opened its account and (2) gross mark-to-market positions of not less than $100,000,000 during the 15–month period preceding the Filing Date.

Exhibit B to the Complaint shows that the Non-Exempt Trust opened its BLMIS account by transferring $356,594,539 from the Revocable Trust's BLMIS account. (*See* Complaint Ex. B at MADC1054_00000008.) The Non-Exempt Trust's November 30, 2008 BLMIS account statement—which was issued just eleven days before the December 11, 2008 Filing date—lists the "net market value of open securities positions" as $383,004,866.35. (Berndt Decl., Ex. 1 at pg. 1.) Because the Non-Exempt Trust's BLMIS account statement showed that it had gross mark-to-market positions well in excess of $100,000,000 at the time it was created and just eleven days before the Filing Date, the Non-Exempt Trust qualifies as a "financial participant." *See* 11 U.S.C. §101(22)(A).

– 10 –

Even if the BLMIS statements were fraudulent, the Non-Exempt Trust still qualifies as a "financial participant" because "a customer's 'legitimate expectations,' based on written confirmations of transactions, ought to be protected." *In re New Times Secs. Svcs., Inc.* ("*New Times I*"), 371 F.3d 68, 87 (2d Cir. 2003) (where debtor fraudulently induced customers to purchase fictitious securities, customers had "claims for securities" under SIPA because interpretation of SIPA is informed by customers' "legitimate expectations"); *see also Stafford v. Giddens* (*In re New Times Sec. Servs.*) ("*New Times II*"), 463 F.3d 125, 129 (2d Cir. 2006) (reaffirming reasoning of *New Times I*); *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229, *20–21 (2d Cir. 2011) (confirming that "a claimant who has 'written confirmation' that securities have been purchased or sold on his or her behalf should be treated as a customer with a claim for securities"). *Grieff*, 476 B.R. at 722 (noting, with respect to related Code section 546(e), that "[n]othing in the express language of § 546(e) suggests that it is not designed to protect the legitimate expectations of customers, as well as the securities market in general, even when the stockbroker is engaged in fraud.").

As such, the Two-Year Transfers were settlement payments received by a "financial participant" and the Non-Exempt Trust, therefore, provided value for these transfers. Because it is apparent from the face of the Complaint that the alleged Two-Year Transfers were taken by the Non-Exempt Trust in good faith and for value, Count One fails to state a claim for avoidance of the Two-Year Transfers.

### III.    Count One fails to state a claim for actual fraudulent transfer because the Trustee has not sufficiently pled standing under SIPA.

Under SIPA section 8(c)(3), codified as 15 U.S.C. 78fff-2(c)(3), the Trustee may only utilize the Bankruptcy Code's avoidance powers if the customer property is insufficient to pay all customer claims:

> *Whenever customer property is not sufficient to pay in full the claims*
> set forth in subparagraphs (A) through (D) of paragraph (1),
> the trustee may recover any property transferred by the debtor
> which, except for such transfer, would have been customer
> property if and to the extent that such transfer is voidable or
> void under the provisions of title 11.

15 U.S.C. § 78fff-2(c)(3) (emphasis added). The statute's plain language requires a showing

that there is an actual existing shortfall in property necessary to satisfy customer claims.

The Trustee's Complaint does not sufficiently allege such a shortfall. In the

Complaint, the Trustee offers the conclusory allegation that "[a]bsent this or other

recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs

(A) through (D) of § 78fff-2(C)(1)." (Complaint ¶ 30.) This conclusory allegation is not

supported by any alleged facts.

In fact, public records suggest that the Trustee has sufficient property to satisfy all

customer claims. On his website (www.madofftrustee.com), the Trustee reports that as of

April 1, 2014, the total value of allowed claims was approximately $11.402 billion.

The Trustee further reports that as of April 1, 2014, he had collected $9.795 billion

for the pool of customer property. Additionally, the United States Department of Justice

has announced on the Madoff Victim Fund website (www.madoffvictimfund.com) that it

will have more than $4.05 billion in forfeited funds to distribute to victims of the Madoff

Ponzi scheme, including payments to satisfy allowed customer claims. Since the definition

of customer property is broad, and contemplates multiple sources of customer property, *see*

15 U.S.C. § 78lll(4)(E), the share of the Madoff Victim Fund assets going to satisfy claims

filed by SIPC claimants should be included as "customer property." Together, the $13.845

billion held by the Trustee and the Madoff Victim Fund exceeds the $11.402 billion in

allowed claims.

In sum, because SIPA section 8(c)(3) only authorizes the Trustee to utilize the

Bankruptcy Code avoidance provisions when customer property is insufficient to pay all

– 12 –

customer claims, and because the Trustee has not adequately alleged such a shortfall,

Count One must be dismissed.

**IV.  Count Seven fails to state a claim to recover alleged subsequent transfers because the Complaint does not allege "the who, when, and how much" of any purported transfers.**

Count Seven fails to state a claim to recover alleged subsequent transfers and,

therefore, should be dismissed. Even if Count One states a claim for actual fraudulent

transfer under the Code, which it does not, the only *initial* transfers it seeks to avoid are the

Two-Year Transfers. Thus, even if Count One survives, the Trustee may only recover

*subsequent* transfers traceable to the Two-Year Transfers.

To adequately state a claim to recover subsequent transfers under Code section 550,

the Trustee must meet the Federal Rule of Civil Procedure 8(a) notice-pleading standard.

*Picard v. Cohmad Sec. Corp.* (*In re Bernard L. Madoff Inv. Sec. LLC*) ("*Cohmad*"), 454 B.R.

317, 340 (Bankr. S.D.N.Y. 2011). While the Trustee need not plead "dollar-for-dollar

accounting of the exact funds at issue," the Complaint "must set forth 'the necessary vital

statistics — the who, when, and how much' of the purported transfers." *Cohmad*, 454 B.R.

at 340 (quoting *Gowan v. Amaranth LLC (In re Dreier LLP),* 452 B.R. 451, 464 (Bankr.

S.D.N.Y. 2011)). At the very least, the trustee "must plead a statement of facts that

adequately apprises the [defendants] of the [subsequent transfers] he seeks to recover."

*Cohmad*, 454 B.R. at 340 (internal quotations omitted).

The Complaint does not necessarily allege that *any* of the Two-Year Transfers were

subsequently transferred, but only vaguely alleges that "Upon information and belief, some

or all of the *Transfers* were subsequently transferred by the Initial Transferee Defendants to

the Subsequent Transferee Defendants." (Complaint ¶ 54 (emphasis added).) Because the

Trustee defines the term "Transfers" to refer collectively to both the Six-Year and Two-Year

Transfers, it is unclear whether the Trustee is alleging that any of the Two-Year Transfers

– 13 –

were subsequently transferred. The most that can be gleaned from the Complaint is that *some or all* of the Two-Year Transfers *may* have been subsequently transferred. It is hard to imagine how a claimant could allege subsequent transfers more equivocally or less definitely than this. The Complaint's indefiniteness is not due to lack of discovery—Defendants provided the Trustee with over 7,749 pages of pre-Complaint discovery. Because, despite having ample time and information, the Trustee fails to set forth the necessary vital statistics—the who, when, and how much of any subsequent transfers, the Trustee's claim to recover subsequent transfers should be dismissed with prejudice.

### A.     The Complaint's allegations of "who" made and received any alleged subsequent transfers are impermissibly vague.

The Trustee not only fails to concretely allege that any of the Two-Year Transfers were subsequently transferred, but also fails to identify who made or received such transfers. Even assuming that the Non-Exempt Trust was the initial transferee of the Two-Year Transfers, the Trustee equivocates as to whether the Non-Exempt Trust subsequently transferred the Two-Year Transfers to the Subsequent Transferee Defendants "directly or indirectly." (*See* Complaint ¶ 109 (alleging that the Initial Transferee Defendants "directly or indirectly" transferred funds to Subsequent Transferee Defendants).) Based on such vague allegations, the Subsequent Transferee Defendants cannot ascertain whether they are alleged to have received subsequent transfers from the Non-Exempt Trust or from a third party.

Additionally, the Complaint does not specify which, if any, of the eleven Subsequent Transferee Defendants are alleged to have received subsequent transfers of the Two-Year Transfers. Because the Complaint does not allege who made or received any alleged subsequent transfers, Count Seven should be dismissed.

**B.    The Complaint does not allege "when" any alleged subsequent transfers occurred.**

The Complaint does not state when any alleged subsequent transfers occurred. Not only does the Complaint fail to specify the day and month, it also fails to specify the year. Considering that the first Two-Year Transfer is alleged to have been made in December, 2006, and that the Complaint was filed in December, 2010, there is a four-year window when any alleged subsequent transfers could have occurred. Such vague allegations do not reasonably apprise Defendants of when the subsequent transfers occurred.

**C.    The Complaint does not allege "how much" was subsequently transferred.**

The Complaint does not allege how much, if any, of the Two-Year Transfers were subsequently transferred. Rather, the Complaint merely alleges that "some or all" of the initial transfers may have been subsequently transferred. (*See* Complaint ¶ 54.) This allegation makes it impossible to glean not only the total amount of subsequent transfers the Trustee seeks, but also how much he seeks from each individual transferee. This Court has previously held that such "lumping together" of transfers and transferees does not meet the Rule 8(a) notice-pleading standard. *See Buchwald Cap. Adv. LLC, v. JP Morgan Chase Bank, N.A.* (*In re M. Fabrikant & Sons, Inc.*), 2009 Bankr. LEXIS 3606, *47–49 (Bankr. S.D.N.Y. Nov. 10, 2009) (subsequent transfer claims dismissed where complaint "failed to identify which [subsequent transferee] received a particular transfer, and instead, lumped the transfers and the transferees together"). Because the Complaint fails to allege (1) how much (if any) of the Two-Year Transfers were subsequently transferred or (2) how much (if any) each Subsequent Transferee Defendant received, Count Seven should be dismissed.

**D.    The Complaint's threadbare allegations of subsequent transfers are indistinguishable from allegations deemed inadequate in other proceedings.**

The Complaint's threadbare allegations of subsequent transfers are indistinguishable from allegations held inadequate in other proceedings. For example, the trustee in *Dreier*

– 15 –

recently sought to claw back, among other things, alleged subsequent transfers. *In re Dreier LLP*, 452 B.R. at 465. The *Dreier* court held insufficient the complaint's allegations that "it is likely that [the initial transferee] invested the money . . . [in] Amaranth LLC" and "*[o]n information and belief*, [the initial transferee] transferred its Transfers to Amaranth LLC." *Id.* (emphasis in original). The *Dreier* trustee did not allege the dollar amounts of the alleged subsequent transfers, but merely asserted that she sought to recover "some" of the money initially transferred. *Id.* The court held that the complaint's "bald assertions" — without "specific facts to back up [its] allegation[s]" — failed to meet the Rule 8(a) notice-pleading standard. *See id.* Accordingly, the court dismissed the Complaint against the alleged subsequent transferee in its entirety. *Id.*

As in *Dreier*, the present Complaint fails to allege the purported subsequent transfers' (1) amounts or (2) dates. In fact, the Trustee's Complaint here contains even *fewer* details than the *Dreier* complaint, which was itself deemed inadequate. At least the *Dreier* complaint described alleged subsequent transfers, clearly identifying (1) the transferor, (2) the transferee, and (3) the nature of the transfers. *Id.* at 464–65 (describing subsequent transfers as investments that initial transferee made in Amaranth LLC). The present Complaint does not even contain *Dreier*'s minimal (and ultimately inadequate) specificity.

In Trustee Picard's suit against Madoff's family members, Judge Burton R. Lifland dismissed subsequent transfer allegations identical to those in the current Complaint. *Picard v. Madoff (In re Bernard L. Madoff Investment Sec. LLC)* ("*Madoff*"), 458 B.R. 87 (Bankr. S.D.N.Y. 2011). Like the current Complaint, the *Madoff* complaint alleged: "On information and belief, some or all of the transfers were subsequently transferred by one or more [of the Defendants] to another Family Defendant, either directly or indirectly." *Madoff*, 458 B.R. at 119–20; *compare with* Complaint ¶ 54 ("Upon information and belief, some or all of the Transfers were subsequently transferred by the Initial Transferee Defendants to the Subsequent Transferee Defendants . . . ."). Judge Lifland noted that this

– 16 –

allegation did not provide "any sort of estimate of the amount of the purported Subsequent Transfer, or when or how such Transfer occurred." *Id.* at 120. In *Madoff,* Judge Lifland held that the allegations' insufficiencies and vagueness warranted dismissal:

> While the Complaint's failure to indicate specific amounts does not in and of itself warrant dismissal of the Subsequent Transfer claims, its failure to provide even a modicum of specificity with respect to the Subsequent Transfers so as to put the Defendants on notice as to which ones the Trustee seeks to recover does so warrant.

*Id.*

Here the Complaint makes allegations identical to those found deficient in *Madoff*— that the Initial Transferee Defendants transferred "some or all" of the initial transfers "directly or indirectly to the Subsequent Transferee Defendants." (*See* Complaint ¶¶ 54, 108–09.) This vague statement fails to give Defendants "even a modicum of specificity" that would give notice as to which transfers the Trustee seeks to avoid. As in *Madoff,* the Trustee's subsequent transfer claim should be dismissed.

**E.      Unlike *Cohmad* and *Merkin I,* the Complaint does not allege that the subsequent transfers were fixed-rate commissions or fees, providing no means to calculate the allegedly transferred amount.**

The current Complaint contains far fewer details than those Judge Lifland held sufficient in *Cohmad* and *Merkin I.* In *Cohmad,* the complaint alleged that Madoff transferred lump-sum commission payments to Sonny Cohn, who then divided the commissions among his employees. *Cohmad,* 454 B.R. at 327. The *Cohmad* complaint attached a payment schedule that listed the employees' commissions during specific time periods. *Id.* at 327–28. Similarly, the complaint in *Merkin I* listed in detail the initial transfers made to three investment funds and further alleged that the funds subsequently transferred "tens of millions of dollars in management and performance fees" to J. Ezra Merkin. *Picard v. Merkin* (*In re Bernard L. Madoff Inv. Sec. LLC*) ("*Merkin I*"), 440 B.R. 243, 269–70 (Bankr. S.D.N.Y. 2010). Judge Lifland noted that "[s]uch commissions or fees were

– 17 –

paid in the predetermined amounts, as described in the Funds' Offering Memoranda, of 1% of the net asset value, and 20% of the increase in value, of [the initial transferee funds]." *Id.* at 270. Considering the complaints in both *Cohmad* and *Merkin I* provided a means by which to calculate the amount of alleged subsequent transfers, Judge Lifland found the Trustee's allegations sufficient. *See id.*; *Cohmad*, 454 B.R. at 341.

Here, the Complaint falls far short of the specificity in *Cohmad* and *Merkin I*—it does not allege whether the subsequent transfers were fixed-rate fees, and it provides no other means (e.g., a payment schedule) of calculating the amount of the transfers. Accordingly, the Trustee's subsequent transfer allegations in the current proceeding do not meet the Rule 8(a) notice-pleading standard and must be dismissed.

**V.    Count Eight fails to state a claim for disallowance of related account customer claims and should be dismissed.**

The Complaint alleges that "Related Account Customer Claims (Claim Nos. 003156 for Shirley Fiterman; 003077 for Fairway Partnership II; and 003162 for MSM Investment) should not be allowed pursuant to section 502(d) of the Bankruptcy Code." (Complaint ¶ 114.) Defendants were recently informed that MSM Investment's claim has been or will be allowed, leaving only the claims of Shirley Fiterman and Fairway Partnership II ("Fairway II") at issue.

Section 502(d) provides that "the court shall disallow any claim of any entity from which property is recoverable under [section 550] or that is a transferee of a transfer avoidable under [section 548]." 11 U.S.C. § 502(d). Because, for reasons set forth above, the Trustee has failed to adequately plead that Shirley Fiterman received any avoidable transfers, section 502(d) is inapplicable and Shirley Fiterman's claim should be allowed.

As to Fairway II, the Trustee alleges that "Defendant Shirley Fiterman and Subsequent Transferee Defendants Steven Fiterman, Valerie Herschman, Karen

Wasserman, Lynn Guez, Stephanie Fiterman, Miles Q. Fiterman II, and Matthew Fiterman, either directly or indirectly as members of MSM Investment and Fairway II, are the absolute owners of one or more of the Related Accounts and/or have beneficial or equitable interests in one or more of the Related Accounts." (Complaint ¶ 113.) Even assuming the truth of this allegation, for the purposes of this motion, the Trustee has failed to adequately plead that any Defendant received an avoidable transfer. Accordingly, section 502(d) is inapplicable. Additionally, although Fairway II is not a party to this action, it is a necessary party because disposing of Fairway II's claim in its absence would impair its ability to protect its interests. *See* Fed. R. Civ. P. 19(a). Because the Trustee has not joined Fairway II as a party to this action, the Trustee's attempt to disallow its claim should be dismissed. *See* Fed. R. Civ. P. 19, 12(b)(7). Accordingly, Count Eight must be dismissed in its entirety.

## CONCLUSION

As discussed above, Code section 546(e) bars the Trustee's state-law and constructive-fraudulent-transfer claims—Counts Two through Six. Further, because the Complaint demonstrates that the Non-Exempt Trust is a good-faith financial participant, Counts One and Seven fail to state a claim for avoidance and recovery of actual fraudulent transfers. Counts One and Seven additionally fail to state a claim because the Trustee has not sufficiently alleged that customer property is currently insufficient to satisfy all allowed customer claims—a prerequisite to standing under SIPA. The Trustee's claims to avoid alleged subsequent transfers under Count Seven are also defective in that they fail to allege the necessary vital statistics of the alleged subsequent transfers. Lastly, because the Trustee has not sufficiently alleged that any transfers from BLMIS to Defendants were avoidable, Count Eight fails to state a claim for disallowance of related customer claims under Code section 502(d). In light of these deficiencies, the Complaint should be dismissed in its entirety.

April 17, 2014

**Jones & Schwartz, P.C.**

Harold Jones (Bar No. HDJ–4652)

One Old Country Road – Suite 384
Carle Place, New York 11514

T: 516–873–8700
F: 516–873–8711

**Robins, Kaplan, Miller & Ciresi L.L.P.**

By:  s/ Thomas F. Berndt
Michael V. Ciresi (admitted *pro hac vice*)
Damien A. Riehl (admitted *pro hac vice*)
Thomas F. Berndt (admitted *pro hac vice*)

800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402–2015

T: 612–349–8500
F: 612–339–4181

*Attorneys for Defendants Miles Q. Fiterman
Revocable Trust; Miles Q. Fiterman Non-Exempt
Marital Trust; Towers Management Company LLC;
Fiterman GST Exempt Marital Trust; Miles Fiterman
Family Trust; Shirley Fiterman, individually, and in
her capacity as Trustee for the Miles Q. Fiterman
Revocable Trust and the Miles Q. Fiterman Non-
Exempt Marital Trust; Steven Fiterman, individually,
and in his capacity as Trustee for the Miles Q.
Fiterman Revocable Trust and the Miles Q. Fiterman
Nonexempt Marital Trust; Valerie Herschman,
individually, and in her capacity as Trustee for the
Miles Q. Fiterman Revocable Trust and the Miles Q.
Fiterman Non-Exempt Marital Trust; Karen
Wasserman; Lynn Guez; Stephanie Rosenthal; Miles
Q. Fiterman II; and Matthew Fiterman*

82579703.16

– 20 –