**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | Adv. Pro. No. 08-01789 (BRL) |
| | : | |
| | : | SIPA LIQUIDATION |
| Plaintiff-Applicant, | : | |
| v. | : | (Substantively Consolidated) |
| | : | |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | : | |
| Defendant, | : | |

-------------------------------------------------------------X

In re:                                          :

                                                :

BERNARD L. MADOFF,                              :

                                                :

                Debtor                          :

-------------------------------------------------------------X

| | | |
|---|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | : | Adv. Pro. No. 10-04585 (BRL) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| MILDRED S. POLAND REVOCABLE TRUST DTD 9/8/87; THE ESTATE OF MILDRED S. POLAND; and PHYSLLIS POLAND-FERRITER, in her capacity as Personal Representative of the Estate of Mildred S. Poland and Successor Trustee of the Mildred S. Poland Revocable Trust dtd 9/8/81, | : | |
| Defendants. | : | |

-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT

Lee S. Shalov, Esq.
Marc Rosenberg, Esq.
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................i-v

PRELIMINARY STATEMENT ............................................................................................... 1

I. FACTS ................................................................................................................................. 2

STATEMENT OF FACTS ...................................................................................................... 4

    A.   Background ................................................................................................... 2

    B.   Procedural History ........................................................................................ 2

II. ARGUMENT ..................................................................................................................... 4

    A.   The Standard of Dismissal Pursuant to Fed. R. Civ. 12(b)(6) .................................. 4

    B.   Nearly All of the Trustee's Claims Are Barred by § 546(e) of the
        Bankruptcy Code .......................................................................................... 4

        1. The Trustee Is Collaterally Estopped From Arguing That § 546(e)
          Does Not Apply in These Adversary Proceedings ................................................ 5

        2. The Challenged Transfers Fall Squarely within Section 546(e)'s
          "Safe Harbor" ........................................................................................... 7

        3. The Trustee Cannot Avoid Transfers Outside the Limitations Period ............... 10

    C.   Defendant's Account Withdrawals Satisfied an Antecedent Debt and
        Therefore Cannot be Avoided ......................................................................... 11

        1. Federal and State Securities Laws Created the Obligation by the Broker
          to the Customer Which Constitutes an Antecedent Debt ................................... 13

        2. The Antecedent Debt Defense Has Been Upheld in Cases Involving
          Fraudulent Schemes .................................................................................... 16

        3. Defendants Have a Defense Based Upon Any Interest Accrued on
          Antecedent Debt and the Time Value of Money .............................................. 17

        4. Defendants Are Also Entitled to Retain Additional Amounts under
          §548(c) Such as Lost Opportunity Costs ........................................................ 19

D.    The Trustee Cannot Convert Subsequent Transferees Into Beneficiaries
of an Initial Transfer ............................................................................................ 20

CONCLUSION ..................................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*105 East Second St. Assocs. v. Bobrow*,
    175 A.D.2d 746 (1st Dep't 1991) ................................................................. 20

*Allen v. McCurry*,
    449 U.S. 90 (1980)....................................................................................... 6

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009).................................................................................. 4

*Atlanta Shipping Corp. v. Chemical Bank*,
    818 F.2d 240 (2d Cir. 1987)......................................................................... 16

*Bell Atlantic Corp. v. Twombley*,
    550 U.S. 544 (2007)..................................................................................... 4

*Bevill, Bresley & Schulman Asset Mgmt. Corp. v. Spencer S&L Ass'm. (In re Bevill,
Bresler & Schulman Asset Mgmt.. Corp.),*
    878 F.2d 742 (3rd Cir. 1989) ....................................................................... 8

*Big Apple Car, Inc.*,
    294 A.D.2d 109 (1st Dep't 1994) ................................................................. 20

*Bonded Fin. Servs. v. European Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) ....................................................................... 21

*Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.),*
    590 F.3d 252 (3rd Cir. 2009) ....................................................................... 9

*Danning v. Miller (In re Bullion Reserve of N. Am.),*
    922 F.2d 544 (9th Cir. 1991) ....................................................................... 21

*Daly v. Deptula (In re Carrozella & Richardson),*
    286 B.R. 480 (D. Conn. 2002)..................................................................... 16

*Donovan v. Bierwirth*,
    754 F.2d 1049 (2d Cir. 1985)....................................................................... 20

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011)................................................................. 7, 9, 10

*Enron Creditors Recovery Corp. v. J.P. Morgan Sec. (In re Enron Creditors
Recovery Corp.)*,
    407 B.R. 17 (Bankr. S.D.N.Y. 2009), *rev'd on other grounds*, 422 B.R. 423
    (S.D.N.Y. 2009) .................................................................................................. 22

*Evan v. Ottimo*,
    469 F.3d 278 (2d Cir. 2006)........................................................................... 6

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*,
    2011 WL 1899730 (S.D.N.Y. May 13, 2011) ................................................. 6

*Grippo v. Perazzo*,
    357 F.3d 1218 (11th Cir. 2004) ..................................................................... 15

*Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*,
    452 B.R. 467 (Bankr. S.D.N.Y. 2011) ........................................................... 21

*HBE Leasing Corp. v. Frank*,
    48 F.3d 623 (2d Cir. 1995).............................................................................. 16

*In re Bernard L. Madoff Invs. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24 (2013) ................................ 11, 16

*In re Estate of Newhoff*,
    107 Misc.2d 589, 595-96 (N.Y. Surrogate's Ct. 1980).................................... 19

*In re Estate of San Giacomo*,
    14 N.Y.2d 615 (1964) ..................................................................................... 15

*In re Lehman Bros. Holdings Inc.*,
    08-13555 (JMP), 2013 WL 6671557 (Bankr. S.D.N.Y. Dec. 19, 2013) ........................... 4

*In re Unified Commercial Capital*,
    2002 WL 35000567 (W.D.N.Y. June 21, 2002)............................................. 16

*Jimmy Swaggart Ministries v. Hayes (In re Hannover Corp.)*,
    310 F.3d 796 (5th Cir. 2002) ......................................................................11-12

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)........................................................................................... 15

*Metro. Life Ins. Co. v. Murel Holding Corp. (In re Murel Holding Corp.)*,
    75 F.2d 941 (2d Cir. 1935).............................................................................. 19

*Montana v. United States*,
    440 U.S. 147 (1979)......................................................................................... 6

*NML Capital v. Republic of Argentina*,
  17 N.Y.3d 250 (2011) ................................................................... 19

*Picard v. Grieff*,
  476 B.R. 715 (S.D.N.Y. 2012) ............................................ 5, 6, 8, 9, 10, 11

*Picard v. Katz*,
  462 B.R. 447 (S.D.N.Y. 2011) ............................................... 5, 6, 11

*Raleigh v. Ill. Dep't of Revenue*,
  530 U.S. 15 (2000) ....................................................................... 11

*Randall v. Loftsgaarden*,
  478 U.S. 647 (1986) ...................................................................... 17

*Reyes v. Fairfield Props.*,
  661 F. Supp. 2d 249 (E.D.N.Y. 2009) ............................................. 6

*Rolf v. Blyth, Eastman Dillon & Co., Inc.*,
  637 F.2d 77 (2d Cir. 1980) ...................................................... 17, 19

*Schott v. Maidsville Coal Min. P'ship*,
  1979 WL 1245 (S.D.N.Y. Sept. 7, 1979) ......................................... 18

*SEC v. Zandford*,
  535 U.S. 813 (2002) ...................................................................... 15

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*,
  499 B.R. 416 (S.D.N.Y. 2013) ....................................................... 12

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (Sharp Int'l)*,
  403 F.3d 43 (2d Cir. 2005) ............................................................. 16

*Stevens v. Abbot, Proctor & Paine*,
  288 F. Supp. 836 (E.D. Va. 1968) .................................................. 19

*USPS v. Phelps Dodge Refining Corp.*,
  950 F. Supp. 504 (E.D.N.Y. 1997) ................................................. 19

*Williams v. Morgan Stanley Capital Group (In re Olympic Natural Gas Co.)*,
  294 F.3d 737 (5th Cir. 2002) ......................................................... 9

*Wolf v. Rand*,
  258 A.D.2d 401 (1st Dep't 1999) ................................................... 18

*Wyle v. Howard, Weil, Labouisse, Freidrichs Inc. (In re Hamilton Company),*
   114 F.3d 991 (9th Cir. 1997) ........................................................................... 7, 8, 9

*Zeller v. Bogue Elec. Mfg. Corp.,*
   476 F.2d 795 (2d Cir. 1973) ................................................................................. 19

## STATUTES

17 C.F.R. § 240 (2010) ...................................................................................... 13, 17

17 C.F.R. § 300 ...................................................................................................... 16

11 U.S.C. § 101 ........................................................................................................ 8

11 U.S.C. § 544 ........................................................................................................ 5

11 U.S.C. § 546 .................................................................... 2, 4, 5, 6, 7, 8, 9, 10, 11

11 U.S.C. § 547 ........................................................................................................ 5

11 U.S.C. § 548 ................................................... 3, 4, 5, 7, 8, 10, 11, 12, 17, 19, 20

11 U.S.C. § 550 ............................................................................................ 3, 20, 21

11 U.S.C. § 741 .................................................................................................... 9, 10

15 U.S.C. § 78 .......................................................................................................... 8

15 U.S.C. § 771 ........................................................................................................ 8

28 U.S.C. § 1292 ...................................................................................................... 3

New York Debtor Creditor Law §§ 273, 274, 275, 276, 277, 278, and 279 .............. 5

NYUCC § 8-501 *et seq* ...................................................................................... 14, 15

UCC § 2-207 ............................................................................................................ 16

## RULES

Fed. R. Civ. Pro. 12................................................................................................ 1, 3, 4

Fed. R. Bank. Pro. 7012 ............................................................................................... 1

NASD Rule 2340 (Customer Account Statements).................................................... 14

N.Y. C.P.L.R. § 5004 ................................................................................................................ 19

NYSE Rule 409 (Statements of Accounts to Customers) ............................................................ 14

## TREATISES

RESTATEMENT (SECOND) OF CONTRACTS § 354(1) (1981) ............................................................ 18

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 53(4) (2010) ................... 18

Defendants, Mildred S. Poland Revocable Trust dtd 9/8/87, the Estate of Mildred S. Poland, and Phyllis Poland-Ferriter, in her capacity as Personal Representative of the Estate of Mildred S. Poland and Successor Trustee of the Mildred S. Poland Revocable Trust dtd 9/8/87 ("Poland" or "Defendants"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint filed against them by Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities, LLC (the "Trustee"), in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure for failure to state a claim for which relief could be granted.

## PREMLIMINARY STATEMENT

Poland is among the many innocent victims of the massive fraud perpetrated by Bernard Madoff ("Madoff"). This suit comprises a small part of the hundreds of virtually identical actions commenced by the Trustee against innocent customers of Madoff Investment Securities. Unaware that Madoff was operating a massive Ponzi scheme, Poland began investing in BLMIS in and around 1995. Thereafter, Poland made withdrawals from the BLMIS account. On December 11, 2008, when Madoff's fraud was exposed, Poland learned that the brokerage account statements BLMIS sent were fraudulent and that the monies in her account were gone.

This action is among the over 1,000 adversary proceedings filed by the Trustee seeking to avoid transfers from BLMIS customers. In this case, the Trustee has sued the Defendants to avoid all withdrawals made from BLMIS since December 11, 2002, totaling in excess of $1,651,509. Furthermore, the Complaint named Mildred S. Poland, in her individual capacity, as the "Subsequent Transferee Defendant." Notably, the Trustee does not, and cannot, allege that Poland possessed actual or constructive knowledge of the fraud. Defendants make this motion

dismiss for failure to state a claim because the Trustee's Complaint is steeped in causes of action that lack legal merit.

## I.  FACTS

### A.  Background

Poland had an account with Bernard L. Madoff Investment Securities LLC ("BLMIS"): Account No. 1EM151 (the "Poland Account."). According to the Trustee, Poland deposited a total of $2,902,753 into the Poland Account during the period from January 4, 1993 through November 24, 2008, and withdrew a total of $4,383,500.00 from the account during that same period. *See* Exhibit A to Complaint (MADC0539_00000001 to MADC0539_00000005). The Trustee now seeks to recover the $1,651,509 in "fictious profits" withdrawn by the Defendants.

### B.  Procedural History

On December 1, 2010, the Trustee commenced an adversary proceeding against Poland to recover the so-called "fictitious profits" received from the Poland Account. The Trustee asserts that Poland was a "beneficiary" of Madoff's Ponzi scheme by purportedly taking over $1,651,509 of "other people's money." *See* Trustee's Complaint, ¶ 2. According to the Trustee, he may avoid and recover from Poland $1,651,509 ("Six Year Transfers") or $1,110,500 ("Two Year Transfer") under the applicable provisions of SIPA, the United States Bankruptcy Code, and the New York Fraudulent Conveyance Act. *Id*. ¶ 37.

On April 2, 2012, Defendants filed a Motion for Mandatory Withdrawal of the Reference. On April 19, 2012, the Court ordered consolidated briefing on the two relevant issues: (1) whether § 546(e) limits the Trustee's ability to avoid transfers made by BLMIS; and (2) whether the Trustee may, consistent with non-bankruptcy law, avoid transfers that BLMIS purportedly made in order to satisfy antecedent debts.

2

On April 30, 2012, Judge Rakoff entered an order dismissing all claims against § 546(e)

defendants except those proceeding under § 548(a)(1)(A) and § 550(a) (the "§ 546(e) Order").

(Docket No. 57). Judge Rakoff issued an opinion explaining the reasons for the § 546(e) Order

dated April 30, 2012 (the § 546(e) Opinion"). On May 15, 2012, Judge Rakoff issued a

Supplemental Order and Opinion stating that the § 546(e) Order applied to the Trustee's claims

pursuant to § 547 (the "Supplemental § 546(e) Order"). Subsequently, on June 21, 2012, the

Trustee appealed the § 546(e) Order, § 546(e) Opinion, and the Supplemental § 546(e) Order.

(Docket No. 191). The appeal, with the main index number 12-2557, is pending before the

Second Circuit.

On October 15, 2013, Judge Rakoff denied the consolidated antecedent debt defendants'

motion to dismiss. *See* Opinion and Order, 12-MC-0115 (JSR) (Docket No. 489) (the

"Antecedent Debt Opinion"). Pursuant to the Antecedent Debt Order, Judge Rakoff ordered this

proceeding to return to this Court. Antecedent Debt Order, p. 28. On December 6, 2013, Judge

Rakoff denied the antecedent debt defendants' motion seeking certification pursuant to 28 U.S.C.

§ 1292(b) to file an interlocutory appeal of the Antecedent Debt Opinion. (Docket No. 508).

During the pendency of this action, Defendant Mildred Poland passed away. By stipulation,

the Estate of Mildred S. Poland and Phyllis Poland-Ferrier, in her capacity as the personal

representative of the Estate of Mildred S. Poland and Successor Trustee of the Mildred S. Poland

Revocable Trust dtd 9/8/87, were substituted as defendants. *See* Docket No. 14. Now,

Defendants file this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## II. ARGUMENT

### A.  The Standard of Dismissal Pursuant to Fed. R. Civ. 12(b)(6).

A court on a motion to dismiss must accept as true all of the well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Twombley*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); *In re Lehman Bros. Holdings Inc.*, 08-13555 (JMP), 2013 WL 6671557, *3 (Bankr. S.D.N.Y. Dec. 19, 2013) (A court may dismiss a complaint unless a plaintiff pleads 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Twombly,* 550 U.S. at 570).  While a court must accept as true all of the factual allegations in the complaint, this "tenet … is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949.

### B.  Nearly All of the Trustee's Claims Are Barred by § 546(e) of the Bankruptcy Code.

§ 546(e) of the Bankruptcy Code precludes a debtor from avoiding payments to an investor in the circumstances of these adversary proceedings under state law and federal constructive fraudulent transfer and preference laws (11 U.S.C. §§ 548(a)(1)(B), 544(b), and 547). The statute provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by

or to a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title

11 U.S.C. § 546(e).

By its express terms, this bankruptcy safe harbor provision is not applicable to intentionally fraudulent transfers in a massive fraud or Ponzi scheme, but only as to transfers made within two years of the filing of petition pursuant to § 548(a)(1)(A) as expressly provided in the statute. Provided the payment was made by a stockbroker and falls within the definition of a settlement payment, constructive fraudulent transfers under § 548(a)(1)(B) of the Bankruptcy Code; state law fraudulent conveyance claims incorporated by reference by § 544; preferences under § 547 of the Bankruptcy Code; and withdrawals outside the two-year period may not be avoided.

### 1. The Trustee Is Collaterally Estopped From Arguing That § 546(e) Does Not Apply in These Adversary Proceedings.

Counts Three, Four, Five, Six, and Seven must be dismissed pursuant to § 546(e) because they rely on § 544 to impose New York's Creditor and Debtor Law to the Six Year Transfers. *Picard v. Grieff*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("The Court concludes, therefore, that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544.") Count Two pleads a claim pursuant to § 548(a)(1)(B). Counts Three, Four, Five, Six, and Seven all plead claims pursuant to § 544 and New York Debtor Creditor Law §§ 273, 274, 275, 276, 277, 278, and 279.

The Trustee (and SIPC) are precluded from arguing against the applicability of § 546(e) to the payments made to the Defendant because this precise issue was raised in the litigation by the Trustee and decided by the District Court in *Picard v. Katz*, 462 B.R. 447, 451-452 (S.D.N.Y. 2011) and *Grieff*, 476 B.R. at 722. In those cases, the Trustee and SIPC had a full and

fair opportunity to litigate this issue.  Law in this Circuit bars re-litigation of an issue under these

exact circumstances.  *Evan v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) ("Under New York law,

collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was

decided by a prior action and is decisive of the present action, and (2) the party to be precluded

from relitigating the issue had a full and fair opportunity to litigate the issue in the prior

action."); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a

court has decided an issue of fact or law necessary to its judgment, that decision may preclude

relitigation of the issue in a suit on a different cause of action involving a party to the first case.")

"By preventing parties from contesting matters they have had a full and fair opportunity

to litigate, the doctrine of collateral estoppel 'protects their adversaries from the expense and

vexation attending multiple lawsuits, conserves judicial resources and fosters judicial reliance on

judicial action by minimizing the possibility of inconsistent decisions." *Faiveley Transp. USA,

Inc. v. Wabtec Corp.*, 2011 WL 1899730, *5 (S.D.N.Y. May 13, 2011) (quoting *Montana v.

United States*, 440 U.S. 147, 153-54 (1979)). "[T]he collateral estoppel test does not include a

requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same

parties they litigate against in the current proceeding." *Reyes v. Fairfield Props.*, 661 F. Supp.

2d 249, 276 (E.D.N.Y. 2009).

Here, the *Katz* and *Grieff* cases serve as strong precedent for this case despite the fact that

the Trustee has appealed the District Court's decision in *Grieff*.  However, even if the Court

determines that the Trustee and SIPC are not collaterally estopped, § 546(e) should bar the

constructive fraud and preference claims because the transfers at issue fall squarely within §

546(e)'s safe harbor. *Grieff*, 476 B.R. at 722 ("Moreover, the Trustee's arguments wholly

overlook the fact that § 546(e), by its plain terms, already contains an exception for certain kinds

of fraud.  Specifically, § 546(e) permits the Trustee to avoid actually fraudulent transfers under §

548(a)(1)(A). The Trustee offers no explanation why Congress, if it had in fact wanted to enact

the general fraud exception the Trustee advocates, did not express that intention in the statute,

when it did express its desire to exempt § 548(a)(1)(A).")

### 2.    The Challenged Transfers Fall Squarely within Section 546(e)'s "Safe Harbor."

The Trustee has argued in other cases that § 546(e) cannot apply in a Ponzi scheme based

on the legislative purpose of the provision and a notion of equity, which is actually foreign to

SIPA, that prefers one group of defrauded BLMIS customers over another.   However, the

resolution of this issue depends on the language of the statue, which plainly limits the Trustee's

avoidance powers to certain transfers from BLMIS, not on legislative history or other

consideration.  The language of the statute is the proper starting point.  *See e.g. Enron Creditors

Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011) (rejecting Enron's

complete reliance on legislative history on the ground that "when the statute's language is plain,

the sole function of the courts – at least where the disposition required by text is not absurd – is

to enforce it according to its terms.") (internal citations omitted)

It is clear from the provision itself that § 546(e) expressly preserves a limited exemption

for actual fraudulent transfers under § 548(a)(1)(A) in any case where fraud is proven from the

otherwise broad exception to the trustee's avoidance powers.   Thus, even allegedly actual

fraudulent settlement payments outside that two year period are not subject to avoidance.  *See

Wyle v. Howard, Weil, Labouisse, Freidrichs Inc. (In re Hamilton Company)*, 114 F.3d 991, 993-

994 (9th Cir. 1997).  In that case, the trustee's efforts to reach a transaction, among others, that

was part of a fraudulent scheme failed because the transaction, though possibly fraudulent, was

outside the limitations period of § 548(a)(1)(A) applicable at the time:

> Finally, the trustee argues that his claim should be exempt from § 546(e)'s reach because
> the transfer at issue was fraudulent. But the bankruptcy court correctly recognized that
> the ethical nature of the transaction is irrelevant to our determination of the legal issues
> involved. Opinion at 14. Section 546(e) explicitly excepts fraudulent transfers that are
> completed within one year of the filing of the bankruptcy petition. Because the reverse
> repo transaction at issue here was completed over two years before the filing of Hamilton
> Taft's bankruptcy petition, the trustee cannot invoke the fraud exception to § 546(e).

*Id. See also Bevill, Bresley & Schulman Asset Mgmt. Corp. v. Spencer S&L Ass'm. (In re Bevill,
Bresler & Schulman Asset Mgmt.. Corp.)*, 878 F.2d 742 (3rd Cir. 1989) (upholding the
protections of section 546(e) against preference claims in the context of a widespread fraud
based on language of the statute).  The argument that § 546(e) does not apply in a case of actual
fraud (Ponzi scheme or plain fraud) renders the § 548(a)(1)(A) exception to the safe harbor
meaningless.

The Trustee's prior contention that BLMIS was not a broker-dealer is also untenable.  It
is undisputed that BLMIS was a registered broker-dealer. *See* Complaint ¶ 20 ("BLMIS was
registered with the SEC as a securities broker under section 15(b) of the Securities Exchange Act
of 1934, 15 U.S.C. § 78o(b).")  The SEC sought and obtained relief under SIPA based on the
allegation that BLMIS and the customers of BLMIS were in need of the protection afforded
under SIPA.

Any argument that Madoff's fraud precludes a finding that BLMIS was a "stockbroker"
was considered and properly disposed. *See Greiff*, 2012 WL 1505349 at *3.  The District Court's
analysis is equally applicable here.  As noted by the District Court, § 101(53A) of the
Bankruptcy Code defines "stockbroker" to include "entities that 'engage[] in the business of
effecting transactions in securities.'" *Greiff*, 476 B.R. at 719.  The District Court noted that
Madoff "was registered with the SEC" and that "Madoff Securities as a whole engaged in
'legitimate trading' through its market making and proprietary divisions." *Id*.  The District Court

rightly determined that "even assuming the truth of the allegation that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions." *Id.* Furthermore, the District Court noted that the customers of BLMIS' investment advisory business "having every reason to believe that Madoff was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded the customers of stockbrokers, including the protections offered by § 546(e)." *Id.* Defendants should be afforded the same type of protections as the similarly situated defendants in the *Greiff* case.

The Bankruptcy Code defines "settlement payment" as a "preliminary settlement payment, a partial settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). The Second Circuit has described this definition as "extremely broad." *Enron Creditors Recovery Corp.*, 651 F.3d at 334. Based on the language of the statute, the Second Circuit afforded the § 546 safe harbor to the early redemption of commercial paper. § 546(e) has been applied in a wide variety of transactions that have had no impact on the public markets but fell within the definitions of the provision. *See e.g., Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.)*, 590 F.3d 252 (3rd Cir. 2009) (payments to shareholders in LBO of a private company); *Williams v. Morgan Stanley Capital Group (In re Olympic Natural Gas Co.)*, 294 F.3d 737 (5th Cir. 2002) (safe harbor for forward contracts characterized by trustee as ordinary commodities contracts); *Wyle*, 114 F.3d at 993 (§ 544(e) applicable to reverse purchase transaction)

From Poland's perspective, the trade confirmations, withdrawal confirmations, and account statements evidence completed settlements of securities transactions and are entitled to §

9

546(e)'s protection.    The District Court found similar defendants' withdrawals from their accounts to be "'settlement payments' from a stockbroker" and that fell within § 546(e)'s safe harbor. *Greiff*, 476 B.R. at 721.    The District Court rejected the Trustee's argument that because Madoff Securities failed to trade securities on behalf of its investment advisory clients that those withdrawals by those clients did not complete any securities transactions because it ignored the simple fact that the clients had contracted for the implementation of an investment strategy by Madoff Securities.    *Id*.    The clients' withdrawals constituted a partial settlement of those contracts.    *Id*.    Like the defendants in *Greiff*, from Defendants' perspective, "withdrawals from their Madoff Securities accounts completed securities transactions."    *Id*.    The District Court in *Greiff* found this reasoning comported with the Second Circuit's *Enron* decision that the "defendants' withdrawals completed securities transactions and constituted settlement payments under § 741(8) and *Enron*."    *Id*.    That rationale is directly applicable in the instant case and therefore Defendants' withdrawals should be found to complete a securities transaction.

Based upon the above, dismissal of Counts Three, Four, Five, Six, and Seven against Defendant is warranted.    All transactions outside the two-year limitations period of § 548(a)(1)(A) are beyond the reach of Trustee's avoidance powers.    As a result, the Defendants' account balance as of December 15, 2006 is the only basis for the Trustee to assert any claims pursuant to § 548(a)(1)(A).

### 3.  The Trustee Cannot Avoid Transfers Outside the Limitations Period.

In the Complaint, the Trustee disallows all earnings BLMIS reported to Defendant, even though those earnings constituted enforceable obligations arising well before the allowable two year "look-back" period.    There is no authority permitting the Trustee to automatically avoid the reported transactions as an avoidance "calculation methodology."    *See e.g., Raleigh v. Ill. Dep't*

*of Revenue*, 530 U.S. 15, 24-25 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides.")  The Trustee is constrained from suing innocent customers to recover transfers that occurred outside the applicable two year limitations period under § 548(a)(1)(A).  The statutory limitation periods also prevent the Trustee from simply disallowing those transactions.

Moreover, while the Complaint identifies the Six Year Transfers that the Trustee seeks to recover, the Complaint fails to identify or provide a basis for avoiding all of the reported earnings that BLMIS owed Defendant going back in time given the District Court's decisions in *Greiff* and *Katz*.  The Trustee has no legal power to include a customer's account withdrawals immediately after the two-year period or to avoid any transfer after that period.  As a result, the Complaint should be dismissed for failure to state a claim with respect to the Six Year Transfers outside § 548(a)(1)(A)'s avoidance period.

## C. Defendant's Account Withdrawals Satisfied an Antecedent Debt and Therefore Cannot Be Avoided.

In identical cases, the Trustee has argued that *In re Bernard L. Madoff Invs. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24 & 25 (2013) disposes of Defendants' arguments relating to "antecedent debt" defenses under Section 548(c) of the Bankruptcy Code. The *Antecedent Debt Decision* emanated from a consolidated proceeding in the District Court involving 299 actions that named other similarly situated innocent transferee defendants. The Defendants were not parties to that consolidated proceeding, inasmuch as the District Court had previously returned their cases to the Bankruptcy Court after adjudicating the § 546(e) safe harbor and rejecting various aspects of the antecedent debt defense in the *Greiff* decision. The *Antecedent Debt Decision* rejected the contention that customers' state and federal claims for

11

rescission or damages against their broker constituted "value" for purposes of § 548(c). The Court concluded, instead, that measurement of value for purposes of the defense to a SIPA avoidance claim required evaluation "as against the Madoff Securities customer property estate under SIPA," 499 B.R. at 422, 430. In so doing, the Court wholly negates the stand-alone defense established by § 548(c).

The remaining claims, Counts One and Two, against Defendant under § 548(a)(1)(A) should be dismissed as the Defendants have a complete defense under § 548(c). § 548(a)(1)(A) provides that a trustee may avoid transfers made "to hinder, delay, or defraud" the debtor's creditors (*i.e.*, actual fraudulent transfers). Though rejected by the District Court in the Antecedent Debt Opinion, Defendants asks this Court to consider the repayment of their antecedent debt "value." *See Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*, 499 B.R. 416, 430 (S.D.N.Y. 2013) ("The Court concludes that claims against the general Madoff Securities estate do not constitute 'value' within the meaning of section 548(c) to the extent that they would be used to withhold fraudulent transfers owing to the customer property estate under SIPA.")

§ 548(c) allows "a transferee ... of [an otherwise avoidable transfer] that takes for value and in good faith" to "retain any interest transferred ... to the extent that such transferee ... gave value to the debtor in exchange for such transfer...." 11 U.S.C. § 548(c). As stated above, the Defendants' good faith is undisputed. "Value" as used in § 548(c) means "property or satisfaction or securing of a present or antecedent debt..." 11 U.S.C. § 548(d)(2). Where, as here, the transfer satisfies a pre-existing legal obligation, the transfer is "for value" and, therefore, not subject to avoidance. 11 U.S.C. § 548(d)(2)(A). "The first section affords creditors a remedy for the debtor's fraudulence or, as the case might be, mere improvidence; the

second protects the transferee from his unfortunate selection of a business partners." *Jimmy Swaggart Ministries v. Hayes (In re Hannover Corp.)*, 310 F.3d 796, 802 (5th Cir. 2002).

### 1. Federal and State Securities Laws Created the Obligation by the Broker to the Customer Which Constitutes an Antecedent Debt.

The antecedent debt in this case was created under state and federal securities laws. Pursuant to these statutes and regulations, confirmations and account statements create an obligation on the part of the broker to the customer where no certificates are held by the customer.

Since the 1970s, the securities market has operated through an indirect holding system whereby brokers hold securities for customers in "street name," such that customers no longer receive securities certificates to evidence their securities purchases. Instead, brokers are required to send their customers account statements, which, pursuant to Article 8, provide customers ownership rights even if the broker never purchases the securities reported thereon. The only evidence of ownership a customer is likely to receive is the acknowledgement by the broker, in a confirmation and/or periodic statement, that it owes securities to the customer. It is therefore a fundamental principle of broker-dealer regulation that brokers must issue statements, upon which customers may rely, to evidence customer transactions and holdings. Rule 10b-10 under the Securities Exchange Act of 1934 requires brokers to provide customers with confirmations of securities transactions. *See* Rule 10b-10, 17 C.F.R. § 240.10b-10 (2010) (Confirmation of Transactions). The SEC releases adopting this rule reflect that these confirmations are to serve as legally enforceable evidence of a broker's obligation to the customer. *See* Confirmation of Transactions, 59 Fed. Reg. 59,612, 69,613 (Nov. 17, 1994) (to be codified at 17 C.F.R. pt. 240) ("For over 50 years, the customer confirmation has served basic investor protection functions by conveying information allowing investors to verify the terms of their transactions; alerting

13

investors to potential conflict of interest with their broker-dealers; acting as a safeguard against fraud; and providing investors the means to evaluate the costs of their transactions and the quality of their broker-dealer's execution.")

The rules of the Financial Industry Regulatory Authority ("FINRA") and the New York Stock Exchange ("NYSE") similarly mandate issuance of periodic account statements. *See* NASD Rule 2340 (Customer Account Statements); NYSE Rule 409 (Statements of Accounts to Customers). Because the statements are so critical, where, as here, customers have given their broker trading authority, the SEC prohibits waiver of the right to receive such statements. *See* Confirmation of Transactions, 59 Fed. Reg. 59,612, 59,614 ("The customer may not waive this periodic report.")

These federal laws reinforce state law ownership rights. In New York, Article 8 of the New York Uniform Commercial Code ("NYUCC") determines the customer's rights against his broker. *See* NYUCC § 8-501 *et seq.* Under Article 8, the broker's obligation to the customer is created by the issuance of a statement. The NYUCC provides that a "person acquires a security entitlement if a securities intermediary becomes obligated under other law, regulation, or rule to credit a financial asset to the person's securities account." NYUCC § 8-501(b). It is therefore "a basic operating assumption of the indirect holding system that once a [broker] has acknowledged that it is carrying a position in a financial asset for its customer … the [broker] is obligated to treat the customer … as entitled to the financial asset." NYUCC § 8-501 comment 2.

Once ownership is acknowledged, § 8-501(c) provides that "a person has  a security entitlement even though the securities intermediary does not itself hold the financial asset," i.e., the broker owes the customer the securities reflected on the customer's statement regardless of

whether the broker actually purchased the securities.  As the Official Comment to this section

explains:

> "In the indirect holding system, the significant fact is that the securities
> intermediary has undertaken to treat the customer as entitled to the financial asset.
> It is up to the securities intermediary to take the necessary steps to ensure that it
> will be able to perform its undertaking.
>
>            \*\*\*
>
> The entitlement holder's rights against the securities intermediary do not depend
> on whether or when the securities intermediary acquired its interests." NYUCC §
> 8-501 comment 3.

When a customer deposits funds with his broker, the broker becomes obligated to the

customer for the securities on the statements the broker issues.  Federal laws enforce the

customer's rights whether or not a broker actually purchased securities, given that the customer

has no means to confirm the transaction.  The customer is protected when the broker accepts the

customer's payment and issues a statement that acknowledges its debt to the customer. "[A]

broker who accepts payment for securities that he never intends to deliver ... violates § 10(b) and

Rule 10b-5." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 n.10 (2006);

*SEC v. Zandford*, 535 U.S. 813, 819 (2002) (same); *see also Grippo v. Perazzo*, 357 F.3d 1218,

1223-24 (11th Cir. 2004) (finding "in connection with" the purchase or sale of a security element

of securities fraud claim adequately pled where broker accepted and deposited customer's money

as payment for securities)

As evident in the Customer Agreement, BLMIS's obligations to the Defendants were

created with the transmittal of each confirmation and account statement, which as quoted above,

became binding on the customer unless an objection was timely made.  A contract is formed

when an offer is accepted.  *See e.g.*, *In re Estate of San Giacomo*, 14 N.Y.2d 615 (1964)

(administrator required to accept contract price for stock since she made no objection to the

offer); *see also* UCC 2-207. The confirmations and statements established the Defendants' status as a BLMIS customer with a claim for securities. *See In re Bernard L. Madoff Inv. Sec., LLC*, 654 F.3d 229, 236 (2d Cir. 2011) ("SIPA's implementing regulations bolster the shared view of the Trustee, SIPC, and the SEC that claimant who has "written confirmation" that the securities have been purchased or sold on his or her behalf should be treated as a customer with a claim for securities. 17 C.F.R. § 300.501(b).") The contractual obligation on the part of the broker to the customer constitutes an antecedent debt within the meaning of § 548(c).

### 2. The Antecedent Debt Defense Has Been Upheld in Cases Involving Fraudulent Schemes.

Numerous cases recognize that payments on antecedent debt are generally not avoidable unless the transferee is an insider or an active participant in the fraud. *See Sharp Int'l Corp. v. State St. Bank & Trust Co. (Sharp Int'l)*, 403 F.3d 43, 54 (2d Cir. 2005) ("[A] conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another."); *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995) ("[A] transfer motivated by actual fraudulent intent may not be voided if a transferee who paid fair consideration did not have actual or constructive knowledge of such intent."); *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 249 (2d Cir. 1987) ("In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor."); *Daly v. Deptula (In re Carrozella & Richardson)*, 286 B.R. 480, 491 (D. Conn. 2002) (payment in a Ponzi scheme extinguished an antecedent debt and was not subject to avoidance); *In re Unified Commercial Capital*, 2002 WL 35000567 (W.D.N.Y. June 21, 2002) (repayment of a loan not avoidable as fraudulent).

### 3. Defendants Have a Defense Based Upon Any Interest Accrued on Antecedent Debt and the Time Value of Money.

The District Court recognized, and the Trustee has conceded, that a customer's principal is within the scope of value contemplated by § 548(c). Indeed, it is indisputable that Defendants have a right of rescission and the return of his principal given Madoff's admitted fraud. But value under § 548(c) is not limited to the customer's principal. To the contrary, the customer's rescission rights include interest, which falls squarely within the definition of value under § 548(c). Furthermore, Defendants held securities and equitable claims against BLMIS on which he was due interest. Those claims fall within the definition of value under § 548(c).

Each BLMIS customer had a federal claim to address Madoff's violations of securities law, specifically, a violation of Rule 10b-5 given the fraudulent investment contracts entered into by the Defendants because of BLMIS' inducement. The remedies for securities fraud, and therefore the value of such a claim, include rescission of the transaction, recovery of principal, and compensation for the loss of the time value of money, including any interest. *See Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 637 F.2d 77, 87 (2d Cir. 1980) ("In view of high inflation rates that beset this period [during which the defendant exercised control over the defrauded plaintiff's investment], a damage award without prejudgment interest 0or, indeed, even one that does not include it) would not give [Plaintiff] full compensation for the losses he suffered at the hands of his fiduciary.")

The Securities Act of 1933 ("1933 Act") provides an express remedy for rescission in the case of misrepresentations in connection with the sale of securities. 15 U.S.C. § 77l(a)(2). Section 12(a)(2) of the 1933 Act provides that the victim may recover from the person who sold the security the "consideration paid for such security with interest thereon, less the amount of any income received thereon. . . ." 15 U.S.C. § 77l(a)(2). In *Randall v. Loftsgaarden*, the

17

Supreme Court found that the rescission remedy for Rule 10b-5 cases should be construed consistently with the express remedy in the 1933 Act. 478 U.S. 647, 662-63 (1986). Thus, not only is the rescission remedy well-settled for a violation of Rule 10b-5, but the inclusion of interest within its contours is fixed by the 1933 Act's express remedies.

§ 12(a)(2) of the 1933 Act's meaning is well-established. In adopting the rescission remedy in § 12(a)(2), Congress borrowed from the existing common law, which recognized the right to interest in addition to return of principal as a remedy for rescission. *See Schott v. Maidsville Coal Min. P'ship*, 1979 WL 1245, at *4 (S.D.N.Y. Sept. 7, 1979) (finding that plaintiff is entitled to the purchase price of the securities, less any distributions made, plus interest on his § 12(a)(2) claim); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 53(4) (2010) ("Liability in restitution based on the payment or receipt of money normally includes prejudgment interest (a) from the date of payment to a conscious wrongdoer, a defaulting fiduciary, or a recipient otherwise at fault in the transaction concerned."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 354(1) (1981) ("If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.") The inclusion of interest is necessary because the law recognizes a time value of money loss that must be compensated to make the victim of fraud whole. *Id*.

Furthermore, Poland held claims for breach of fiduciary duties from the inception of her relationship with Madoff Securities given that New York law recognizes that a breach of fiduciary duty entitles a claimant to prejudgment interest. *Wolf v. Rand*, 258 A.D.2d 401, 403-04 (1st Dep't 1999). Courts award prejudgment interest on equitable claims such as rescission

18

because the plaintiff should be "compensated for being deprived of the use of its money." *USPS v. Phelps Dodge Refining Corp.*, 950 F. Supp. 504, 518 (E.D.N.Y. 1997). Similarly, courts applying the Restatement frequently provide interest payments in breach of fiduciary duty cases. *See e.g.*, *In re Estate of Newhoff*, 107 Misc.2d 589, 595-96 (N.Y. Surrogate's Ct. 1980) (measure of damages where initial investments of trust monies are found imprudent is "the amount of funds invested *plus the legal rate of interest* from the date of investments with appropriate credits for the moneys received on account of such investments.") (emphasis added).

These claims also entitle Defendants to interest in addition to principal. Indeed, the New York Court of Appeals confirmed that compensation for loss of the time value of money is mandatory. *NML Capital v. Republic of Argentina*, 17 N.Y.3d 250, 265-66 (2011). New York's statutory interest rate is 9%. N.Y. C.P.L.R. § 5004.

The Trustee cannot ignore the undeniable economic truth that a dollar deposited many years ago is worth more than a dollar deposited today. *See Metro. Life Ins. Co. v. Murel Holding Corp.* (*In re Murel Holding Corp.*), 75 F.2d 941, 942 (2d Cir. 1935) ("payment ten years hence is not generally the equivalent of payment now"). Madoff Securities' use of Defendants' money and the benefit of the time value of that money constitute value under § 548(c).

### 4. Defendants Are Also Entitled to Retain Additional Amounts under § 548(c) Such as Lost Opportunity Costs.

Poland's legal claims carry rights in addition to rescission and recovery of principal with interest. Federal securities fraud claims also include consequential damages, including out-of-pocket costs and lost opportunity damages. *See, e.g., Rolf,* 637 F.2d at 86-87; *Zeller v. Bogue Elec. Mfg. Corp.*, 476 F.2d 795, 803 (2d Cir. 1973) (consequential damages are available for federal securities law claims when they are established with certainty); *cf. Stevens v. Abbot, Proctor & Paine*, 288 F. Supp. 836, 850-51 (E.D. Va. 1968) (finding that percentage of capital

gains taxes due to defendant's fraudulent conduct were recoverable as actual damages)
Likewise, New York courts have long recognized that fraud victims are entitled to recover
consequential damages attributable to the fraud. *Big Apple Car, Inc*, 294 A.D.2d 109, 110-11
(1st Dep't 1994).   In New York, a breach of fiduciary duty claim carries lost opportunity
damages. *See 105 East Second St. Assocs. v. Bobrow*, 175 A.D.2d 746, 747 (1st Dep't 1991)
(damages for breach of fiduciary duties include "lost opportunities for profit . . . by reason of the
faithless fiduciary's conduct")   In an analogous scenario, the Second Circuit applied the
Restatement (Second) of Trusts to conclude that "[o]ne appropriate remedy in cases of breach of
fiduciary duty is the restoration of the trust beneficiaries to the position they would have
occupied but for the breach of trust." *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985)
(remedies for breach of fiduciary duties under ERISA).   All of the Defendants' claims for
damages constitute value under § 548(c).

SIPA preserves these claims and remedies through § 28(a)(2) of the 1934 Act.  Thus,
they are part of the fabric of SIPA for evaluating the statutory defense by a good faith transferee
to an avoidance action by the SIPA Trustee and should be considered value under § 548(c).

### D. The Trustee Cannot Convert Subsequent Transferees Into Beneficiaries of an Initial Transfer.

In addition to the pleading deficiencies described above, the Complaint deliberately blurs
§ 550(a)'s distinctions regarding subsequent transferees and beneficiaries of an initial transfer.  §
550(a)(1) permits the Trustee to assert avoidance claims against the initial transferee *and* an
entity for whose benefit the initial transfer was made. 11 U.S.C. § 550(a)(1).  This section
provides a means for the Trustee to hold either of those targets liable for the entirety of the
avoided initial transfer (but subject to the § 548(c) defense, for example).  § 550(a)(2) provides
for recovery from a subsequent transferee. *See* 11 U.S.C. § 550(a)(2).  Unlike an initial

transferee, a subsequent transferee may be liable *only for the particular amount of the subsequent transfer traced to it*, subject to its own variant of a "good faith" defense. *See* 11 U.S.C. § 550(a) (limiting recovery to the "property transferred"); 11 U.S.C. § 550(b)(2) (providing that the trustee cannot recover from a subsequent transferee who took in good faith). The Trustee attempts to bypass the protections afforded subsequent transferees by pleading that she *may* be a beneficiary of the initial transfer.

These allegations fail because a *later recipient* of an initial transfer is a subsequent transferee, not an initial transferee or a beneficiary of the initial transfer. *See Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 548 (9th Cir. 1991) ("A subsequent transferee cannot be an entity for whose benefit the initial transfer was made, even if the subsequent transferee actually receives a benefit from the initial transfer."); *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988) ("[A] subsequent transferee cannot be the 'entity for whose benefit' the initial transfer was made.").

Moreover, the Trustee fails to allege any facts supporting this speculative assertion that the funds were, in fact, transferred for the benefit of the Subsequent Transferee Defendant, such as the basis for the beneficiary status or which transfers were purportedly received. *Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*, 452 B.R. 467, 478 (Bankr. S.D.N.Y. 2011) (dismissing as "conclusory and speculative" claims that an alleged subsequent transferee was also a beneficiary). The implication of the Trustee's assertion is that any benefit, however indirect or incidental, is sufficient to transform an entity into a "beneficiary" within the meaning of § 550(a)(1), and thereby hold it responsible for the entire amount of the initial transfer. To the contrary, "[t]he benefit

must be direct, ascertainable and quantifiable and must correspond to, or be commensurate with, the value of the property that was transferred." *Enron Creditors Recovery Corp. v. J.P. Morgan Sec. (In re Enron Creditors Recovery Corp.)*, 407 B.R. 17, 33 (Bankr. S.D.N.Y. 2009), *rev'd on other grounds*, 422 B.R. 423 (S.D.N.Y. 2009).

Thus, the Complaint's vague and conclusory characterization that the Subsequent Transferee Defendant *may* be a "beneficiary" of a transfer that is not even identified is insufficient to meet even the most basic pleading requirements.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss the Complaint with prejudice.

Dated: April 17, 2014
      New York, New York

Respectfully submitted,

  /s/ Marc Rosenberg
Lee S. Shalov
Marc Rosenberg
McCLAUGHLIN & STERN, LLP
260 Madison Ave.
New York, NY 10016
(212) 448-1100

*Attorneys for Defendants*