**Bellows and Bellows, P.C.**
209 South LaSalle Street, Suite 800
Chicago, Illinois 60604
Telephone: (312) 332-3340
Facsimile: (312) 332-1190
Schuyler D. Geller

*Counsel for Brian H. Gerber*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-4634 (SMB) |
| Plaintiff, | |
| v. | |
| BRIAN H. GERBER, | |
| Defendant. | |

**DEFENDANT BRIAN H. GERBER'S
ANSWER TO COMPLAINT**

Now comes Defendant Brian H. Gerber, by his attorneys, Bellows and Bellows, P.C., and

for his Answer to Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the

business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") and the estate of Bernard

L. Madoff ("Madoff") Complaint states as follows:

## NATURE OF PROCEEDING

1.     This adversary proceeding arises from the massive Ponzi scheme perpetrated by
Madoff.  Over the course of the scheme, there were more than 8,000 client accounts at BLMIS.
In early December 2008, BLMIS generated client account statements for its approximately 4,900
open client accounts.  When added together, these statements purport that clients of BLMIS had
approximately $68 billion invested with BLMIS.  In reality, BLMIS had assets on hand worth a
small fraction of that amount.  On March 12, 2009, Madoff admitted to the fraudulent scheme
and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.
The within defendant Brian H. Gerber ("Defendant") received avoidable transfer(s) from
BLMIS.

**ANSWER:**     Defendant denies knowledge or information sufficient to form a belief as

to the truth of the allegations contained in the first five sentences of paragraph 1 and respectfully

refers the Court to the records and/or transcripts of proceedings dated March 12, 2009 and June

29, 2009 to determine the accuracy of the statements contained in the sixth sentence.  The

remaining allegations of paragraph 1 state legal conclusions to which no response is required.

2.     Defendant was a beneficiary of this Ponzi scheme.  Since December 11, 2002,
Defendant received the amount of $1,358,522 from BLMIS.  The Trustee's investigation has
revealed that all of this amount represented fictitious profits from the Ponzi scheme.
Accordingly, Defendant has received $1,358,522 of other people's money.   This action is
brought to recover the fictitious profit amount so that this customer property can be equitably
distributed among all of the victims of BLMIS.

**ANSWER:**  Defendant admits that he received money withdrawn from BLMIS since

December 11, 2002 but denies that he received $1,358,522. Defendant denies that he was a

beneficiary of any Ponzi scheme and denies that he received any "fictitious profits" or "other people's money." The remaining allegations contained in the paragraph 2 are legal conclusions or arguments to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

3.    This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 et seq. (McKinney 2001) ("DCL")) and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendant. The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS' defrauded customers.

**ANSWER:**    The allegations contained in Paragraph 3 state legal conclusions to which no response is required. Further, Defendant avers that he was "defrauded" by BLMIS.

## JURISDICTION AND VENUE

4.    This is an adversary proceeding commenced before the same Court before whom the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al., No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4).

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of paragraph 4, and respectfully refers the Court to the filings, orders and transcripts in the referenced Proceedings (as defined in paragraph 4 of the Complaint). The allegations contained in the third sentence of paragraph 4 state legal conclusions to which no response is required.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

**ANSWER:**    The allegations contained in paragraph 5 state legal conclusions to which no response is required.

6.      Venue in this district is proper under 28 U.S.C. § 1409.

**ANSWER:**    The allegations contained in paragraph 6 state legal conclusions to which no response is required.

## DEFENDANT

7.      Upon information and belief, Defendant Brian H. Gerber maintains his residence in Miami Beach, FL.  Defendant holds a BLMIS account in the name, "Brian H. Gerber," with the account address reported in Miami Beach, FL.

**ANSWER:**    Defendant admits the allegations contained in paragraph 7.

## BACKGROUND, THE TRUSTEE AND STANDING

8.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, inter alia, securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court which commenced the District Court Proceeding against Madoff and BLMIS.  The District Court Proceeding remains pending in the District Court.  The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8, and respectfully refers the Court to the filings, orders, and transcripts in the referenced Proceedings for a true understanding thereof.

9.      On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of BLMIS.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9, and respectfully refers this Court to the filings, orders, and transcripts in the referenced proceedings for a true understanding thereof.

4

10.    On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10, and respectfully refers this Court to the filings, orders, and transcripts in the referenced proceedings for a true understanding thereof.

11.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:
        a.    appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;
        b.    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and
        c.    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.
By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11, and respectfully refers this Court to the filings, orders, and transcripts in the referenced proceedings for a true understanding thereof.

12.    By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12, and respectfully refers this Court to the filings, orders, and transcripts in the referenced proceedings for a true understanding thereof.

13.    At a Plea Hearing on March 12, 2009 in the case captioned United States v. Madoff, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."    Plea Allocution of Bernard L. Madoff at 23, United States v. Madoff, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50).    Additionally,

Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." Id. Madoff was sentenced on June 29, 2009 to 150 years in prison.

> **ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13, and respectfully refers this Court to the filings, orders, and transcripts in the referenced proceedings for a true understanding thereof.

14.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11, 2009 in the case entitled United States v. DiPascali, Case No. 09-CR-764 (RJS), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank DiPascali at 46, United States v. DiPascali, No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (Docket No. 11).

> **ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14, and respectfully refers this Court to the filings, orders, and transcripts in the referenced proceedings for a true understanding thereof.

15.    As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

> **ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15, and respectfully refers this Court to the filings, orders, and transcripts in the referenced proceedings for a true understanding thereof.

16.    Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA section 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

**ANSWER:**    The allegations of paragraph 16 state legal conclusions to which no response is required.

17.    Pursuant to sections 78fff(b) and 78lll(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER:**    The allegations of paragraph 17 state legal conclusions to which no response is required.

18.    The Trustee has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

    a.    the Defendant received "Customer Property" as defined in 15 U.S.C. §78111(4);

    b.    BLMIS incurred losses as a result of the claims set forth herein;

    c.    BLMIS' customers were injured as a result of the conduct detailed herein;

    d.    SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for all of their losses;

    e.    the Trustee will not be able to fully satisfy all claims;

    f.    the Trustee, as bailee of customer property, can sue on behalf of the customer bailors; and

    g.    The Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers, collectively, "Accountholders"). As of the date hereof, the Trustee has received multiple express unconditional assignments of the applicable Account holders' causes of action, which actions could have been asserted against Defendant. As assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages. The Trustee brings this action on behalf of, among others, those defrauded customers of BLMIS who invested more money in BLMIS than they withdrew.

**ANSWER:**    The allegations contained in paragraph 18 state legal conclusions to which no response is required. To the extent any allegations in paragraph 18 require a response, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations therein. Further, Defendant avers that he was injured as a result of the allegations in the Complaint.

## THE FRAUDULENT PONZI SCHEME

19.      Founded in 1959, BLMIS began operations as a sole proprietorship of Madoff and later, effective January 2001, formed as a New York limited liability company wholly owned by Madoff.  Since in or about 1986, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York.  Madoff, as founder, proprietor, chairman, and chief executive officer, ran BLMIS together with several family members and a number of additional employees.  BLMIS was registered with the SEC as a securities broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b).  By that registration, BLMIS is a member of SIPC.  BLMIS had three business units: investment advisory (the "IA Business"), market making and proprietary trading.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.

20.      For certain accounts in the IA Business, BLMIS purported to participate in a capital appreciation/depreciation strategy, depending on whether the customer sought to generate gains or losses.  For example, the strategy was executed by either purporting to purchase small groups of securities near lows and then purporting to sell those same securities at highs, or by purporting to short-sell securities near highs and then purporting to repurchase those securities near lows.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

21.      For other accounts, Madoff described the IA Business' strategy as a "split-strike conversion" strategy.  Madoff promised these clients that their funds would be invested in a basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S. publicly traded companies.  The basket of stocks would be intended to mimic the movement of the S&P 100 Index.  Madoff asserted that he would carefully time purchases and sales to maximize value, but this meant that the clients' funds would intermittently be out of the market, at which times they would purportedly be invested in U.S. issued securities and money market funds.  The second part of the split-strike conversion strategy was the hedge of such purchases with option contracts.  Madoff purported to purchase and sell S&P 100 Index option contracts that closely corresponded with the stocks in the basket, thereby controlling the downside risk of price changes in the basket of stocks.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.

22.    Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in – or had been traded through – their accounts, as well as the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication.  The security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious.  At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts.  See Plea Allocution of Bernard L. Madoff at 3, United States v. Madoff, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50).  Indeed, based on the Trustee's investigation to date and with the exception of isolated individual trades for certain clients other than Defendant, there is no record of BLMIS having cleared any purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing Corporation, the clearing house for such transactions.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as

to the truth of the allegations contained in paragraph 22.

23.    Prior to his arrest, Madoff assured clients and regulators that he conducted all trades on the over-the-counter market after hours.  To bolster that lie, Madoff periodically wired tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a London based entity wholly owned by Madoff.  There are no records that MSIL ever used the wired funds to purchase securities for the accounts of the IA Business clients.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as

to the truth of the allegations contained in paragraph 23.

24.    Additionally, based on the Trustee's investigation to date, there is no evidence that BLMIS ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased and sold.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as

to the truth of the allegations contained in paragraph 24.

25.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay and defraud other current and prospective customers of BLMIS.  The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors.   The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his associates and others, including Defendant, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER:**    The allegations in paragraph 25 state legal conclusions to which no response is required. To the extent that a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

26.    During the scheme, certain investors requested and received distributions of the so-called "profits" listed for their accounts which were nothing more than fictitious profits. Other investors, from time to time, redeemed or closed their accounts, or removed portions of purportedly available funds, and were paid consistently with the statements they had been receiving. Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26.

27.    When payments were made to or on behalf of these investors, including Defendant, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains. In reality, BLMIS had not invested the investors' principal as reflected in customer statements. In an attempt to conceal the ongoing fraud and thereby hinder, delay and defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors the inflated amounts reflected in the falsified financial statements, including principal and/or fictitious profits.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27.

28.    BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due to the siphoning and diversion of new investments to fund redemptions requested by other investors, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28.

29.    In an effort to hinder, delay and defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.

30.     In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration. The application represented, inter alia, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $68 billion under management.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

31.     Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York. Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

32.     At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**ANSWER:**     The allegations contained in paragraph 32 state legal conclusions to which no response is required. To the extent any allegations in paragraph 32 require a response, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

## THE TRANSFERS

33.     At all times relevant hereto, Defendant was a client of the IA Business. According to BLMIS' records, Defendant maintained an account (No. 1G0247) with BLMIS set forth on Exhibit A (the "Account"). Upon information and belief, for the Account, Defendant executed a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements"), and delivered such documents to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

**ANSWER:** To the extent that the allegations of paragraph 33 state legal conclusions no response is required. To the extent that a response is required, Defendant admits that he was a

client of IA Business and that he maintained the referenced account at BLMIS. Defendant denies

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

of paragraph 33.

34.     The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York.  The Account was held in New York, New York, and Defendant sent funds to BLMIS and/or to BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Account(s) and the purported conducting of trading activities.  Between the date the account was opened and the Filing Date, Defendant made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account or received an inter-account transfer from another BLMIS account.   Defendant has intentionally taken advantage of the benefits of conducting transactions in the State of New York and has submitted to the jurisdiction of this Court for purposes of this adversary proceeding.

**ANSWER:**    Defendant denies knowledge or information sufficient to form a belief as

to the truth of the allegations contained in paragraph 34.

35.     During the six years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") to Defendant totaling $1,358,522 in fictitious profits from the Ponzi scheme. The Transfers received by Defendant constitute non-existent profits supposedly earned in the Account, but, in reality, they were other people's money.  The Transfers were made to or for the benefit of Defendant and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

**ANSWER:**    To the extent the allegations in paragraph 35 state legal conclusions, no

response is required. To the extent that a response is required, Defendant admits that BLMIS

made transfers to him during the six years prior to the Filing Date, but denies that those transfers

totaled $1,358,522. Defendant denies the remaining allegations in paragraph 35.

36.     The Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273 – 279 (McKinney 2001) total $1,358,522 and are referred to hereafter as the "Six Year Transfers."  See Exhibit B, Column 11.  The Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total $465,998 and are referred to hereafter as the "Two Year Transfers."  See Exhibit B, Column 10.

**ANSWER:**    The allegations of paragraph 36 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

37.    The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers and any additional transfers and (ii) seek recovery of such additional transfers.

**ANSWER:**    The allegations of paragraph 37 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

38.    To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**ANSWER:**    The allegations of paragraph 38 state legal conclusions to which no response is required.

39.    On or about January 20, 2009, Defendant filed a customer claim with the Trustee which the Trustee has designated as Claim # 2418 (the "Customer Claim").

**ANSWER:**    Defendant admits the allegations of paragraph 39 and respectfully refers the Court to the Customer Claim (as defined in paragraph 39) for a true understanding thereof.

40.    On or about April 27, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to Defendant (the "Determination") with respect to the Customer Claim. A copy of the Determination is attached hereto as Exhibit C.

**ANSWER:**    Defendant admits the allegations of paragraph 40 and respectfully refers the Court to the Notice of Trustee's Determination of Claim (as defined in paragraph 40) for a true understanding thereof.

41.    On or about May 27, 2010, the Defendant filed an objection to the Determination with the Court (the "Claims Objection").

**ANSWER:**    Defendant admits the allegations of paragraph 41 and respectfully refers the Court to the Claims Objection (as defined in paragraph 41) for a true understanding thereof.

## COUNT ONE FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551

42.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER:**    To the extent applicable, Defendant repeats and re-alleges his response to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

43.    Each of the Two Year Transfers was made on or within two years before the Filing Date.

**ANSWER:**    The allegations of paragraph 43 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

44.    Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

**ANSWER:**    The allegations of paragraph 44 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

45.    Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay, and defraud some or all of BLMIS' then existing and/or future creditors.

**ANSWER:**    The allegations of paragraph 45 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

46.    Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendant pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

**ANSWER:**    The allegations of paragraph 46 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

47.    As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**ANSWER:**    The allegations of paragraph 47 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

## COUNT TWO FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(B), 550(a) AND 551

48.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER:**    To the extent applicable, Defendant repeats and re-alleges his response to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

49.    Each of the Two Year Transfers was made on or within two years before the Filing Date.

**ANSWER:**    The allegations of paragraph 49 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

50.    Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

**ANSWER:**    The allegations of paragraph 50 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

51.    BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers.

**ANSWER:**    The allegations of paragraph 51 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

52.    At the time of each of the Two Year Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfers.

**ANSWER:**    The allegations of paragraph 52 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

53.    At the time of each of the Two Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with BLMIS was an unreasonably small capital.

**ANSWER:**    The allegations of paragraph 53 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

54.    At the time BLMIS made each of the Two Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

**ANSWER:**    The allegations of paragraph 54 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

55.    Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Defendant pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

**ANSWER:**    The allegations of paragraph 55 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

56.    As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**ANSWER:**    The allegations of paragraph 56 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

## COUNT THREE FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551

17

57.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER:**    To the extent applicable, Defendant repeats and re-alleges his response to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

58.    At all times relevant to the Six Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

**ANSWER:**    The allegations of paragraph 58 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

59.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

**ANSWER:**    The allegations of paragraph 59 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

60.    Each of the Six Year Transfers was made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made each of the Six Year Transfers to or for the benefit of Defendant in furtherance of a fraudulent investment scheme.

**ANSWER:**    The allegations of paragraph 60 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

61.      As a result of the foregoing, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**ANSWER:**      The allegations of paragraph 61 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

## COUNT FOUR
## FRAUDULENT TRANSFER --NEW YORK DEBTOR AND CREDITOR LAW §§ 273, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551]

62.      To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

**ANSWER:**      To the extent applicable, Defendant repeats and re-alleges his response to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

63.      At all relevant times there was and is at least one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

**ANSWER:**      The allegations of paragraph 63 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

64.      Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

**ANSWER:**      The allegations of paragraph 64 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

65.    BLMIS did not receive fair consideration for any of the Six Year Transfers.

**ANSWER:**    The allegations of paragraph 65 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

66.    BLMIS was insolvent, or became insolvent as a result of the Six Year Transfers.

**ANSWER:**    The allegations of paragraph 66 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

67.    As a result of the foregoing, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**ANSWER:**    The allegations of paragraph 67 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

## COUNT FIVE FRAUDULENT TRANSFER—NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

68.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

**ANSWER:**    To the extent applicable, Defendant repeats and re-alleges his response to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

69.    At all relevant times there was and is at least one or more who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

**ANSWER:**    The allegations of paragraph 69 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

70.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

**ANSWER:**    The allegations of paragraph 70 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

71.    BLMIS did not receive fair consideration for any of the Six Year Transfers.

**ANSWER:**    The allegations of paragraph 71 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

72.    At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Transfers was an unreasonably small capital.

**ANSWER:**    The allegations of paragraph 72 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

73.    As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**ANSWER:**    The allegations of paragraph 73 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

<u>COUNT SIX</u>
<u>FRAUDULENT TRANSFER-NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551</u>

74.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

**ANSWER:**    To the extent applicable, Defendant repeats and re-alleges his response to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

75.    At all relevant times there were and are at least one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

**ANSWER:**    The allegations of paragraph 75 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

76.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

**ANSWER:**    The allegations of paragraph 76 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

77.     BLMIS did not receive fair consideration for any of the Six Year Transfers.

**ANSWER:**    The allegations of paragraph 77 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

78.     At the time BLMIS made each of the Six Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

**ANSWER:**    The allegations of paragraph 78 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

79.     As a result of the foregoing, pursuant to DCL sections 275, 278 and/or 279 and sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant for the benefit of the estate of BLMIS.

**ANSWER:**    The allegations of paragraph 79 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

WHEREFORE, Defendant Brian H. Gerber respectfully requests that the Court enter an Order granting judgment in his favor, dismissing Plaintiff's claims with prejudice and any further relief as the Court deems just, proper and equitable.

## AFFIRMATIVE DEFENSES

Defendant asserts below his affirmative defenses. By setting forth these affirmative defenses, Defendant does not assume the burden of proof for any issue, fact or element of a claim to which applicable law places the burden on the Trustee.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Trustee lacks standing to bring any claims against Defendant.

### THIRD AFFIRMATIVE DEFENSE

Article III of the United States Constitution precludes the Bankruptcy Court from finally determining the claims asserted in the Complaint pursuant to the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). Defendant demands a trial by jury.

### FOURTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by the applicable statutes of limitations.

## FIFTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by the doctrines of unclean hands and *in pari delicto*.

## SEVENTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by res judicata, collateral estoppel, and/or issue preclusion.

## EIGHTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by the doctrine of waiver.

## NINTH AFFIRMATIVE DEFENSE

The Complaint violates Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim," and the Supreme Court's rulings in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), by, *inter alia*, (1) failing to describe each specific transfer and its recipient, and each subsequent transfer and its recipient, and improperly combining allegations as to all defendants, (2) pleading numerous background facts and allegedly applicable statutes and legal rules which are not required for the claims being alleged, and (3) pleading numerous facts that defendants do not know and could not possibly know after reasonable diligence.

## TENTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by Sections 548(c) and 548(d)(2)(A) of the Bankruptcy Code.

## ELEVENTH AFFIRMATIVE DEFENSE

The alleged transfers, in whole or in part, may not be avoided because to the extent Defendant received any such transfers, Defendant did so for value, in good faith, and without knowledge of the voidability of the transfers sought to be avoided.

## TWELFTH AFFIRMATIVE DEFENSE

The alleged transfers, in whole or in part, may not be avoided because the alleged transfers were made in satisfaction of an antecedent debt.

## THIRTEENTH AFFIRMATIVE DEFENSE

None of the alleged transfers may be avoided against or recovered from Defendant under Sections 272 through 276 of the New York Debtor and Creditor Law, because if any of such transfers were received by Defendant, they were taken without actual fraudulent intent and for fair consideration.

## FOURTEENTH AFFIRMATIVE DEFENSE

The alleged transfers, to the extent actually received by Defendant, were taken for fair consideration and without knowledge of fraud and, therefore, pursuant to Section 278(1) of the New York Debtor and Creditor Law, they are not avoidable or recoverable as against the Defendants under Sections 544 and 550 of the Bankruptcy Code or Sections 272 through 276 of the New York Debtor and Creditor Law.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, under Section 546(e) of the Bankruptcy Code, because if any transfers were made, they were made in connection with a securities contract, commodity contract or forward contract, or made by or to, or for the benefit

of, a commodity broker, a forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency.

## SIXTEENTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, under Section 546(e) of the Bankruptcy Code, because if any transfers were made, each was a settlement payment made by or to, or for the benefit of, a commodity broker, a forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Even if the transfers are avoidable, the transfers may not be recovered against the alleged subsequent transferee Defendant Gerber as the alleged subsequent transferee Defendant Gerber is not an initial transferee of the transfers, a person or entity for whose benefit the transfers were made, or an immediate or mediate transferee of the transfers.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Complaint fails to sufficiently allege and/or identify any subsequent transfers received by any Defendants, including Brian Gerber.

## NINETEENTH AFFIRMATIVE DEFENSE

The alleged transfers, in whole or in part, may not be avoided because the alleged transfers, in whole or in part, were held by BLMIS in constructive trust or as a bailee for the Defendant.

## TWENTIETH AFFIRMATIVE DEFENSE

Any recovery by the Trustee is subject to a credit, set-off, recoupment, or other equitable adjustment to the extent that any Defendant received a transfer that was, in whole or in part, a

transfer to pay a tax obligation on so-called "fictitious profits" based on Forms 1099 and information reported by BLMIS to government taxation authorities.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or part, because they depend upon calculations that improperly attempt to avoid transfers that occurred prior to six years before the Filing Date.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or part, because they depend upon calculations that improperly attempt to avoid transfers that occurred prior to two years before the Filing Date.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Any recovery by the Trustee is subject to a credit, set-off, recoupment, or other equitable adjustment to the extent that any Defendant received a transfer that was, in whole or in part, a transfer in good faith and on account of obligations owed by BLMIS for (a) amounts contractually due to customers under New York law for the balances shown on prior customer account statements and related documents; and/or (b) rescission remedies, including damages and interest for fraud and misrepresentation, (c) the time value of money, (d) unjust enrichment, (e) damages for breach of fiduciary duty, and/or (f) money had and received.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Any recovery by the Trustee is subject to a set-off or other equitable adjustment to the extent that any alleged fraudulent transfers were, in whole or in part, used by Defendant to satisfy funding or other commitments to organizations that meet the requirements for tax-exempt status.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

The Trustee's claims fail to properly credit inter-account transfers.

28

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendants are victims of the Madoff fraud and any claims for relief against them should be barred, in whole or in part, as unconscionable and in violation of public policy.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The Trustee is not entitled to an award of prejudgment interest because of the operation of waiver, estoppel, and other equitable doctrines.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Defendant hereby adopts and incorporates by reference any and all other available defenses asserted or to be asserted by any other defendant in the above-captioned Substantively Consolidated SIPA Liquidation Proceeding, Adv. Pro. No. 09-01789 (SMB), to the extent applicable herein.

## RESERVATION OF RIGHTS

Under prior decisions applicable to this case, all of the claims alleged in the Complaint are barred but for those claims asserted under Section 548(a)(1)(A) and Section 550(a)(2).   In the event that subsequent legal developments further change the claims available to the Trustee, the Defendants hereby preserve each and every defense to such claims available at law, in equity, or otherwise, and under federal and state law, including common law.

Defendant does not knowingly or intentionally waive any applicable defenses, and reserves the right to assert and rely upon all applicable defenses that are asserted by other similarly situated defendants or that may become available or apparent during further proceedings in this matter, in the Substantively Consolidated SIPA Liquidation Proceeding, Adv. Pro. No. 08-01789 (SMB), or in related matters.  Defendant reserves the right to amend or seek to amend his Answer and/or his affirmative defenses based on information that becomes

available to them during discovery and/or further proceedings in this matter, in the Substantively

Consolidated SIPA Liquidation Proceeding, Adv. Pro. No. 08-01789 (SMB), or in related

matters.

Dated: April 17, 2014

                                          BELLOWS AND BELLOWS, P.C.

                                          By:     /s/ Schuyler D. Geller

                                          Schuyler D. Geller, Esq.
                                          BELLOWS & BELLOWS, P.C.
                                          209 South LaSalle Street, Suite 800
                                          Chicago, Illinois 60604
                                          Tel: (312) 332-3340
                                          Fax: (312) 332-1190

                                          *Counsel for Brian H. Gerber*