**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Appellant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | Case No. 09-11893 (SMB) |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-04480 (SMB) |
| PATI H. GERBER 1997 TRUST; THE PATI H. GERBER MARITAL DEDUCTION TRUST UNDER THE LAST WILL AND TESTAMENT OF OSCAR L. GERBER; OSCAR L. GERBER RESIDUARY TRUST A; OSCAR L. GERBER RESIDUARY TRUST B; PATI H. GERBER LTD.; PATI H. GERBER, individually, and in her capacity as Trustee of the Pati H. Gerber 1997 Trust, the Pati H. Gerber Marital Deduction Trust Under the Last Will and Testament of Oscar L. Gerber, the Oscar L. Gerber Residuary Trust A, and the Oscar L. Gerber Residuary Trust B; and BRIAN H. GERBER, in his capacity as Trustee of the Pati H. Gerber Marital Deduction Trust Under the Last Will and Testament of Oscar L. Gerber, the Oscar L. Gerber Residuary Trust A, and the Oscar L. Gerber Residuary Trust B, | |
| Defendants. | |

DOC ID - 20801387.3

## ANSWER TO COMPLAINT & AFFIRMATIVE DEFENSES

Now comes , Brian H. Gerber and for his response to the Complaint of Irving H. Picard (the "Trustee"), appointed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa, *et seq.*, as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and as trustee for the estate of Bernard L. Madoff individually ("Madoff"), states as follows:  unless otherwise stated herein, Defendant Brian Gerber answers with knowledge as to himself and upon information and belief as to all other matters.  Defendant expressly denies any wrongdoing assumed, implied or alleged in any of the allegations contained in the Complaint.  Defendant is an innocent investor who was defrauded by BLMIS and continues to incur substantial costs in connection with the Trustee's avoidance action.  Defendant expressly reserves the right to amend and/or supplement his Answer, including his Affirmative Defenses, as may be necessary.

1.     This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff.  Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts.  When added together, these statements purport that clients of BLMIS had approximately $65 billion invested with BLMIS.  In reality, BLMIS had assets on hand worth a small fraction of that amount.  On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison. The within Defendants received a total of approximately $6,206,363 in avoidable transfer(s) from BLMIS.

**ANSWER**:  Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first five sentences of paragraph 1and respectfully refers the Court to the records and/or transcripts of proceedings dated March 12, 2009 and June 29, 2009 to determine the accuracy of the statements contained in the sixth sentence.  The remaining sentence of paragraph 1 states a legal conclusion to which no response is required.

2.      The 1997 Trust Defendants were beneficiaries of this Ponzi scheme.   Since December 11, 2002, 1997 Trust Defendants received the amount of $7,249,499 from BLMIS. The Trustee's investigation has revealed that $5,685,432 of this amount represented fictitious profits from the Ponzi scheme.   Accordingly, the 1997 Trust Defendants have received $5,685,432 of other people's money.   Upon information and belief, Defendant Gerber received subsequent transfers of the avoidable transfers referenced above.   To the extent the funds transferred from BLMIS for the benefit of the Defendant Gerber, Defendant Gerber is the initial transferee of such transfers and is included in the definition of the 1997 Trust Defendants for purposes of the allegations herein.

**ANSWER:**  The allegations contained in paragraph 2 are legal conclusions or arguments

to which no response is required.  To the extent a response is required, Defendant denies ever

being appointed or serving as a trustee under any trust referenced in paragraph 2 and denies

knowledge or information sufficient to form a belief as to the truth of the allegations contained

therein.

3.      The Marital Defendants were beneficiaries of this Ponzi scheme.  Since December 11, 2002, the Marital Defendants received the amount of $340,819 from BLMIS.  The Trustee's investigation has revealed that $340,819 of this amount represented fictitious profits from the Ponzi scheme.  Accordingly, Marital Trust Defendants have received $340,819 of other people's money.  Upon information and belief, Defendant Gerber received subsequent transfers of the avoidable transfers referenced above.  To the extent the funds transferred from BLMIS for the benefit of the Defendant Gerber, Defendant Gerber is the initial transferee of such transfers and is included in the definition of the Marital Trust Defendants for purposes of the allegations herein.

**ANSWER:**  The allegations contained in paragraph 3 are legal conclusions or arguments

to which no response is required.  To the extent a response is required, Defendant denies being

appointed or serving as a trustee under any trust referenced in paragraph 3 and denies knowledge

or information sufficient to form a belief as to the truth of the allegations contained in paragraph

3.

4.      The A Trust Defendants were beneficiaries of this Ponzi scheme.   Since December 11, 2002, the A Trust Defendants received the amount of $81,763 from BLMIS.  The Trustee's investigation has revealed that $81,763 of this amount represented fictitious profits from the Ponzi scheme.  Accordingly, the A Trust Defendants have received $81,763 of other people's money.  Upon information and belief, Defendant Gerber received subsequent transfers of the avoidable transfers referenced above.  To the extent the funds transferred from BLMIS for

the benefit of the Defendant Gerber, Defendant Gerber is the initial transferee of such transfers and is included in the definition of the A Trust Defendants for purposes of the allegations herein.

**ANSWER:** The allegations contained in paragraph 4 are legal conclusions or arguments to which no response is required. To the extent a response is required, Defendant Brian Gerber denies being appointed or serving as a trustee of the Oscar L. Gerber Residuary Trust A and denies that he received $81,763 from BLMIS. Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4.

5.    The B Trust Defendants were beneficiaries of this Ponzi scheme. Since December 11, 2002, the B Trust Defendants received the amount of $83,412 from BLMIS. The Trustee's investigation has revealed that $83,412 of this amount represented fictitious profits from the Ponzi scheme. Accordingly, the 1997 Trust Defendants have received $83,412 of other people's money. Upon information and belief, Defendant Gerber received subsequent transfers of the avoidable transfers referenced above. To the extent the funds transferred from BLMIS for the benefit of the Defendant Gerber, Defendant Gerber is the initial transferee of such transfers and is included in the definition of the A Trust Defendants for purposes of the allegations herein.

**ANSWER:** The allegations paragraphs 5 are legal conclusions or arguments to which no response is required. To the extent a response is required, Defendant Brian Gerber denies that he was ever appointed or that he ever served as a trustee of the Oscar L. Gerber Residuary Trust B and denies that he received $83,412 from BLMIS. Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5.

6.    The Ltd Defendant was a beneficiary of this Ponzi scheme. Since December 11, 2002, the Ltd Defendant received the amount of $14,937 from BLMIS. The Trustee's investigation has revealed that $14,937 of this amount represented fictitious profits from the Ponzi scheme. Accordingly, the Ltd Defendant has received $14,937 of other people's money. Upon information and belief, Defendant Gerber received subsequent transfers of the avoidable transfers referenced above. To the extent the funds transferred from BLMIS for the benefit of the Defendant Gerber, Defendant Gerber is the initial transferee of such transfers and is included in the definition of the Ltd Defendants for purposes of the allegations herein.

**ANSWER:** The allegations contained in paragraph 6 are legal conclusions or arguments to which no response is required. To the extent a response is required, Defendant Brian Gerber

denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6.

7.    This action is brought to recover the fictitious profit amount so that this customer property can be equitably distributed among all of the victims of BLMIS.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7, except that Defendant denies receiving any "fictitious profit amounts."

8.    This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 et seq. (McKinney 2001) ("DCL")) and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendants.  The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS' defrauded customers.

**ANSWER:** The allegations contained in paragraph 8 state legal conclusions to which no response is required.  Further, Defendant Brian Gerber avers that he was "defrauded" by BLMIS.

## JURISDICTION AND VENUE

9.    This is an adversary proceeding commenced before the same Court before whom the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al., No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A) and (b)(4).

**ANSWER**: Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of paragraph 9, and respectfully refers the Court to the filings, orders and transcripts in the referenced Proceedings (as defined in paragraph 9 of the Complaint).  The allegations contained in the third sentence of paragraph 9 state legal conclusions to which no response is required.

10.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

**ANSWER**:  The allegations contained in paragraph 10 state legal conclusions to which no response is required.

11.    Venue in this district is proper under 28 U.S.C. § 1409.

**ANSWER**:  The allegations contained in paragraph 11 state legal conclusions to which no response is required.

## DEFENDANTS

12.    Upon information and belief, Defendant 1997 Trust is a Trust that formed under the laws of the state of Illinois.

**ANSWER:**  Defendant Brian Gerber admits the allegations contained in paragraph 12.

13.    Upon information and belief, Defendant Gerber maintains an address in Lake Forest, Illinois.  Defendant holds or is a beneficiary of four BLMIS accounts in the name:  "Pati H Gerber Trustee Pati H Gerber TST DTD 12/4/97" ("1997 Trust Account"), "Pati H Gerber Marital Ded Tst ULWT Oscar L. Gerber 8/9/80 P H Gerber Brian Gerber TTEES" ("Marital Trust Account"), "Pati H Gerber and Brian Gerber Trustee Oscar L. Gerber Residuary Trust A" ("A Trust Account"), and "Pati H Gerber and Brian Gerber Trustee Oscar L. Gerber Residuary Trust B" ("B Trust Account"), with each of the account addresses reported in Lake Forest, Illinois.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13.

14.    Upon information and belief, Defendant Marital Trust is a Trust that formed under the laws of the state of Illinois.

**ANSWER:**  Defendant Brian Gerber admits the allegations contained in paragraph 14.

15.    Upon information and belief, Defendant Brian H. Gerber maintains his residence in Miami Beach, FL and is a trustee of the A Trust and B Trust.

**ANSWER:** Defendant Brian Gerber admits that he maintains his residence in Miami Beach, FL but denies the remaining allegations of paragraph 15.

16.    Upon information and belief, Defendant A Trust is a Trust that formed under the laws of the state of Illinois.

6

**ANSWER:** Defendant Brian Gerber admits the allegations contained in paragraph 16.

17.    Upon information and belief, Defendant B Trust is a Trust that formed under the laws of the state of Illinois.

**ANSWER:** Defendant Brian Gerber admits the allegations contained in paragraph 17.

18.    Upon information and belief, Defendant Ltd is a limited partnership that formed under the laws of the state of Illinois.  Its principal place of business is located in Lake Forest, Illinois.  Defendant holds a BLMIS account in the name "Pati H. Gerber Ltd." ("Ltd Account") with the account address reported in Lake Forest, Illinois.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 18.

19.    The 1997 Trust Defendants, Marital Trust Defendants, Trust A Defendants, Trust B Defendants, Ltd Trust Defendant and Defendant Gerber are referred to collectively, hereinafter as "Defendants."

**ANSWER:** No factual allegations are asserted in paragraph 19, and therefore this

paragraph requires no response.

## BACKGROUND, THE TRUSTEE AND STANDING

20.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, inter alia, securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court which commenced the District Court Proceeding against Madoff and BLMIS.  The District Court Proceeding remains pending in the District Court.  The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 20, and respectfully refers the

Court to the filings, orders, and transcripts in the referenced Proceedings for a true understanding

thereof.  Further, Defendant Brian Gerber avers that the allegations contained in footnote 1 to

paragraph 20 state legal conclusions to which no response is required.

21.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of BLMIS.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 21, and respectfully refers the

Court to the filings, orders, and proceedings in the Proceedings for a true understanding thereof.

22.    On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 22, and respectfully refers the

Court to the filings, orders, and proceedings in the Proceedings for a true understanding thereof.

23.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:
          (a)    appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;
          (b)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and
          (c)    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA. By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 23, and respectfully refers the

Court to the filings, orders, and transcripts in the referenced Proceedings for a true understanding

thereof.  Further, Defendant Brian Gerber avers that the last sentence of paragraph 23 contains

legal conclusions to which no response is required.

24.    By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24, and respectfully refers the Court to the filings, orders, and transcripts in the referenced Proceedings for a true understanding thereof. Further, Defendant Brian Gerber avers that the last sentence of paragraph 24 contains legal conclusions to which no response is required.

25. At a Plea Hearing on March 12, 2009 in the case captioned United States v. Madoff, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 23, United States v. Madoff, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." Id. Madoff was sentenced on June 29, 2009 to 150 years in prison.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25, and respectfully refers the Court to the filings, orders, and transcripts in the referenced Proceedings for a true understanding thereof.

26. On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11, 2009 in the case entitled United States v. DiPascali, Case No. 09-CR-764 (RJS), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank DiPascali at 46, United States v. DiPascali, No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (Docket No. 11).

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26, and respectfully refers the Court to the filings, orders, and transcripts in the referenced proceedings for a true understanding thereof.

27. As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other

assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27, and avers that to the extent the allegations in paragraph 27 state legal conclusions, no response is required.

28.    Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA section 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

**ANSWER:** The allegations contained in paragraph 28 state legal conclusions to which no response is required.

29.    Pursuant to sections 78fff(b) and 78lll(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER:** The allegations contained in paragraph 29 state legal conclusions to which no response is required.

30.    The Trustee has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

(a)    the Defendants received "Customer Property" as defined in 15 U.S.C. § 78lll(4);

(b)    BLMIS incurred losses as a result of the claims set forth herein;

(c)    BLMIS' customers were injured as a result of the conduct detailed herein;

(d)    SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for all of their losses;

(e)    the Trustee will not be able to fully satisfy all claims;

(f)    the Trustee, as bailee of customer property, can sue on behalf of the customer bailors;

10

(g)    The Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers, collectively, "Accountholders"). As of the date hereof, the Trustee has received multiple express unconditional assignments of the applicable Accountholders' causes of action, which actions could have been asserted against Defendants and Defendant Gerber. As assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages. The Trustee brings this action on behalf of, among others, those defrauded customers of BLMIS who invested more money in BLMIS than they withdrew; and

(h)    SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding. SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds.

**ANSWER:** The allegations contained in paragraph 30 state legal conclusions to which no response is required. To the extent any allegations in paragraph 30 require a response, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein. Further, Defendant Brian Gerber avers that he was injured as a result of the allegations in the Complaint.

## THE FRAUDULENT PONZI SCHEME

31.    Founded in 1959, BLMIS began operations as a sole proprietorship of Madoff and later, effective January 2001, formed as a New York limited liability company wholly owned by Madoff. Since in or about 1986, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, proprietor, chairman, and chief executive officer, ran BLMIS together with several family members and a number of additional employees. BLMIS was registered with the SEC as a securities broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By that registration, BLMIS is a member of SIPC. BLMIS had three business units: investment advisory (the "IA Business"), market making and proprietary trading.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

32.    For certain accounts in the IA Business, BLMIS purported to participate in a capital appreciation/depreciation strategy, depending on whether the customer sought to generate gains or losses. For example, the strategy was executed by either purporting to purchase small groups of securities near lows and then purporting to sell those same securities at highs, or by purporting to short-sell securities near highs and then purporting to repurchase those securities near lows.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 32.

33. For other accounts, Madoff described the IA Business' strategy as a "split-strike conversion" strategy. Madoff promised these clients that their funds would be invested in a basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S. publicly traded companies. The basket of stocks would be intended to mimic the movement of the S&P 100 Index. Madoff asserted that he would carefully time purchases and sales to maximize value, but this meant that the clients' funds would intermittently be out of the market, at which times they would purportedly be invested in U.S. issued securities and money market funds. The second part of the split-strike conversion strategy was the hedge of such purchases with option contracts. Madoff purported to purchase and sell S&P 100 Index option contracts that closely corresponded with the stocks in the basket, thereby controlling the downside risk of price changes in the basket of stocks.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 33.

34. Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in — or had been traded through — their accounts, as well as the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication. The security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious. At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts. See Plea Allocution of Bernard L. Madoff at 3, United States v. Madoff, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Indeed, based on the Trustee's investigation to date and with the exception of isolated individual trades for certain clients other than Defendants, there is no record of BLMIS having cleared any purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing Corporation, the clearing house for such transactions.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 34.

35. Prior to his arrest, Madoff assured clients and regulators that he conducted all trades on the over-the-counter market after hours. To bolster that lie, Madoff periodically wired tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a London based entity substantially owned by Madoff and his family. There are no records that MSIL ever used the wired funds to purchase securities for the accounts of the IA Business clients.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35.

36.    Additionally, based on the Trustee's investigation to date, there is no evidence that BLMIS ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased and sold.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36.

37.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to — or payments on behalf of — other investors. The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his associates and others, including Defendants, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER:** The allegations in paragraph 37 state legal conclusions to which no response is required. To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

38.    The payments to investors constituted an intentional misrepresentation of fact regarding the underlying accounts and were an integral and essential part of the fraud. The payments were necessary to validate the false account statements, and were made to avoid detection of the fraud, to retain existing investors and to lure other investors into the Ponzi scheme.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38.

39.    During the scheme, certain investors requested and received distributions of the so-called "profits" listed for their accounts which were nothing more than fictitious profits. Other investors, from time to time, redeemed or closed their accounts, or removed portions of purportedly available funds, and were paid consistently with the statements they had been receiving. Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 39.

40.    When payments were made to or on behalf of these investors, including Defendants, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains.  In reality, BLMIS had not invested the investors' principal as reflected in customer statements.  In an attempt to conceal the ongoing fraud and thereby hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors the inflated amounts reflected in the falsified financial statements, including principal and/or fictitious profits.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 40.

41.    BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers.  Due to the siphoning and diversion of new investments to fund redemptions requested by other investors, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 41.

42.    In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 42.

43.    In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration.  The application represented, inter alia, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion.  In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 43.

44.    Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York.  Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 44.

45.    At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS.  At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**ANSWER:**  The allegations in paragraph 45 state legal conclusions to which no response

is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 45.

## THE TRANSFERS

46.    According to BLMIS' records, the 1997 Trust Account (No. 1G0222), the Marital Trust Account (No. 1G0253), the A Trust Account (No. 1G0242), the B Trust Account (No. 1G0252), and the Ltd Account (No. 1G0298) were maintained with BLMIS, as set forth on Exhibit A (collectively the "Accounts").  Upon information and belief, for some of these Accounts, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements"), were executed and delivered to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 46.

47.    The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York.  The Accounts were held in New York, New York, and certain Defendants sent funds to BLMIS and/or to BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Accounts and the purported conducting of trading activities.  Between the date the Accounts were opened and the Filing Date, certain Defendants made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 47.

48.     During the six years prior to the Filing Date, BLMIS made transfers to the 1997 Trust Defendants from the 1997 Trust Account totaling $5,685,432 (the "1997 Trust Transfers") in fictitious profits from the Ponzi scheme.  The 1997 Trust Transfers received by the 1997 Trust Defendants constitute non-existent profits supposedly earned in the 1997 Trust Account, but, in reality, they were other people's money.  The 1997 Trust Transfers were made to or for the benefit of the 1997 Trust Defendants and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

(a)     The 1997 Trust Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total $2,538,179 and are referred to hereafter as the "1997 Trust Two Year Transfers."  See Exhibit B, Column 10.

(b)     The 1997 Trust Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273 — 279 (McKinney 2001) total $5,685,432 and are referred to hereafter as the "1997 Trust Six Year Transfers." See Exhibit B, Column 11.

**ANSWER:** To the extent the allegations in paragraph 48 state legal conclusions, no

response is required.  To the extent that a response is required, Defendant Brian Gerber denies

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

paragraph 48.

49.     During the six years prior to the Filing Date, BLMIS made transfers the Marital Trust Defendants from the Marital Trust Account totaling $340,819 (the "Marital Trust Transfers") in fictitious profits from the Ponzi scheme.  The Marital Trust Transfers received by the Marital Trust Defendants constitute non-existent profits supposedly earned in the Account, but, in reality, they were other people's money.  The Marital Trust Transfers were made to or for the benefit of the Marital Trust Defendants and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

(a)     The Marital Trust Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total $118,993 and are referred to hereafter as the "Marital Trust Two Year Transfers."  See Exhibit B, Column 10.

(b)     The Marital Trust Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273 — 279 (McKinney 2001) total $340,819 and are referred to hereafter as the "Marital Trust Six Year Transfers."  See Exhibit B, Column 11.

**ANSWER:**  To the extent the allegations in paragraph 49 state legal conclusions, no response is required. To the extent that a response is required, Defendant Brian Gerber denies being appointed or serving as trustee under the Marital Trust and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49.

50.    During the six years prior to the Filing Date, BLMIS made transfers to the A Trust Defendants from the A Trust Account totaling $81,763 (the "A Trust Transfers") in fictitious profits from the Ponzi scheme.  The A Trust Transfers received by the A Trust Defendants constitute non-existent profits supposedly earned in the A Trust Account, but, in reality, they were other people's money.  The A Trust Transfers were made to or for the benefit of the A Trust Defendants and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

(a)    The A Trust Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total $29,772 and are referred to hereafter as the "A Trust Two Year Transfers." See Exhibit B, Column 10.

(b)    The A Trust Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273 — 279 (McKinney 2001) total $81,763 and are referred to hereafter as the "A Trust Six Year Transfers." See Exhibit B, Column 11.

**ANSWER:**  To the extent the allegations in paragraph 50 state legal conclusions, no response is required. To the extent that that a response is required, Defendant Brian Gerber denies being appointed or serving as trustee under the "A Trust" and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50.

51.    During the six years prior to the Filing Date, BLMIS made transfers to the B Trust Defendants from the B Trust Account totaling $83,412 (the "B Trust Transfers") in fictitious profits from the Ponzi scheme.  The B Trust Transfers received by the B Trust Defendants constitute non-existent profits supposedly earned in the B Trust Account, but, in reality, they were other people's money.  The B Trust Transfers were made to or for the benefit of B Trust Defendants and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

(a)    The B Trust Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total $30,008 and are referred to hereafter as the "B Trust Two Year Transfers." See Exhibit B, Column 10.

(b)    The B Trust Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001)

and DCL sections 273 — 279 (McKinney 2001) total $83,412 and are referred to hereafter as the "B Trust Six Year Transfers." See Exhibit B, Column 11.

**ANSWER:** To the extent the allegations in paragraph 51 state legal conclusions, no response is required. To the extent that a response is required, Defendant Brian Gerber denies being appointed or serving as trustee under the "B Trust" and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph

52.    During the six years prior to the Filing Date, BLMIS made transfers to the Ltd Defendants and/or Defendant Gerber from Ltd Account totaling $14,937 (the "Ltd Transfers") in fictitious profits from the Ponzi scheme. The Ltd Transfers received by the Ltd Defendant constitute non-existent profits supposedly earned in the Ltd Account, but, in reality, they were other people's money. The Ltd Transfers were made to or for the benefit of the Ltd Defendant and/or Defendant Gerber and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

(a)    The Ltd Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total $4,122 and are referred to hereafter as the "Ltd Two Year Transfers." See Exhibit B, Column 10.

(b)    The Ltd Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of NY. CPLR 203(g) (McKinney 2001) and DCL sections 273 — 279 (McKinney 2001) total $14,937 and are referred to hereafter as the "Ltd Six Year Transfers." See Exhibit B, Column 11.

**ANSWER:** To the extent the allegations in paragraph 52 state legal conclusions, no response is required. To the extent that a Response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52.

53.    The 1997 Trust Two Year Transfers, Marital Trust Two Year Transfers, A Trust Two Year Transfers, B Trust Two Year Transfers and Ltd Two Year Transfers above are referred to collectively hereafter as the "Two Year Transfers." The 1997 Trust Six Year Transfers, Marital Trust Six Year Transfers, A Trust Six Year Transfers, B Trust Six Year Transfers and Ltd Six Year Transfers above are referred to collectively hereafter as the "Six Year Transfers."

**ANSWER:** No factual allegations are asserted in paragraph 53, and therefore this paragraph requires no response.

18

54.    Upon information and belief, some or all of the 1997 Trust Transfers, Marital Trust Transfers, A Trust Transfers, B Trust Transfers and Ltd Transfers were subsequently transferred by the 1997 Trust Defendants, Marital Trust Defendants, A Trust Defendants, B Trust Defendants and Ltd Defendant, respectively, to Defendant Gerber (the "Subsequent Transfers").

**ANSWER:**  The allegations contained in paragraph 54 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54.

55.    The Subsequent Transfers, or the value thereof, are recoverable from Defendant Gerber pursuant to §550(a) of the Bankruptcy Code.

**ANSWER:**  The allegations contained in paragraph 55 state legal conclusions to which no response is required.  To the extent a response is required, the Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55.

56.    The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers, Subsequent Transfers, and any additional transfers and (ii) Seek recovery of such additional transfers.

**ANSWER:**  The allegations contained in paragraph 56 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

57.    To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**ANSWER:**  The allegations contained in paragraph 57 state legal conclusions to which no response is required.

## CUSTOMER CLAIMS

58.    On or about February 9, 2009, the 1997 Trust Defendants filed a customer claim for the 1997 Trust Account with the Trustee which the Trustee has designated as Claim # 02138 ("1997 Trust Customer Claim").

**ANSWER:** Defendant Brian Gerber denies filing a customer claim for the 1997 Trust Account and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 58.

59.    On or about April 26, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to the 1997 Trust Defendants the (the "1997 Trust Determination") with respect to the 1997 Trust Customer Claim.  A copy of the Determination is attached hereto as Exhibit C.

**ANSWER:**    Defendant Brian Gerber denies receiving a Notice of Trustee's Determination of Claim to the 1997 Trust and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 59.

60.    The 1997 Trust Defendants did not file an objection to the 1997 Trust Determination with the Court for 1997 Trust Account.

**ANSWER:** Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 60.

61.    On or about January 30, 2009, the Marital Trust Defendants filed a customer claim for the Marital Trust Account with the Trustee which the Trustee has designated as Claim # 01465 ("Marital Trust Customer Claim").

**ANSWER:** Defendant Brian Gerber denies filing a customer claim with respect to the Marital Trust and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 61.

62.    On or about July 22, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to the Marital Trust Defendants (the "Marital Trust Determination") with respect to the Marital Trust Customer Claim.  A copy of the Marital Trust Determination is attached hereto as Exhibit C.

**ANSWER:**    Defendant Brian Gerber denies receiving a Notice of the Trustee's Determination of Claim to the Marital Trust and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 62.

63.     The Marital Trust Defendants did not file an objection to the Marital Trust Determination with the Court for the Marital Trust Account.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63.

64.     On or about February 2, 2009, the A Trust Defendants filed a customer claim for the A Trust Account with the Trustee which the Trustee has designated as Claim # 01466 ("A Trust Customer Claim").

**ANSWER:** Defendant Brian Gerber denies filing a customer claim for the "A Trust Account" and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 64.

65.     On or about August 6, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to the A Trust Defendants (the "A Trust Determination") with respect to the A Trust Customer Claim.  A copy of the A Trust Determination is attached hereto as Exhibit C.

**ANSWER:**     Defendant Brian Gerber denies receiving a Notice of Trustee's determination of Claim with respect to the A Trust Customer Claim and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65.

66.     The A Trust Defendants did not file an objection to the A Trust Determination with the Court for the A Trust Account.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66.

67.     On or about February 2, 2009, the B Trust Defendants filed a customer claim for B Trust Account with the Trustee which the Trustee has designated as Claim # 001384 ("B Trust Customer Claim").

**ANSWER:**  Defendant Brian Gerber denies filing a customer claim for the B Trust Account and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 67.

68.   On or about June 16, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to the B Trust Defendants (the "B Trust Determination") with respect to the B Trust Customer Claim.  A copy of the B Trust Determination is attached hereto as Exhibit C.

**ANSWER:**  Defendant Brian Gerber denies receiving Notice of Trustee's Determination of Claim with respect to the B Trust Customer Claim and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 68.

69.   The A Trust Defendants did not file an objection to the B Trust Determination with the Court for the B Trust Account.

**ANSWER:**  Defendant Brian Gerber admits that he did not file an objection to the B Trust Determination but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 69.

70.   On or about February 2, 2009, the Ltd Defendant filed a customer claim for the Ltd Account with the Trustee which the Trustee has designated as Claim # 001464 (" Ltd Customer Claim" and together with the 1997 Customer Claim, the Marital Customer Claim, the A Trust Customer Claim, the B Trust Customer claim, the "Customer Claims").

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70.

71.   On or about July 9, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to the Ltd. Defendant (the "Ltd Determination" and together with the 1997 Trust Determination, the Marital Trust Determination, the A Trust Determination and the B Trust Determination, the "Determinations") with respect to the Customer Claim.  A copy of the Ltd Determination is attached hereto as Exhibit C.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71.

72.   The Ltd Defendant did not file an objection to the Ltd Determination with the Court for the Ltd Account.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 72.

73.    On December 23, 2008, this Court entered an Order on Application for Entry of
an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying
Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief
("Claims Procedures Order"; Docket No. 12).  The Claims Procedures Order includes a process
for determination and allowance of claims under which the Trustee has been operating.  The
Trustee intends to resolve Customer Claim 1384 and any related objection to the Trustee's
determination of such claims through a separate hearing as contemplated by the Claims
Procedures Order.

**ANSWER:**  The allegations contained in paragraph 73 state legal conclusions to which

no response is required.  To the extent a response is required, Defendant Brian Gerber denies

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

paragraph 73.

**COUNT ONE**
**FRAUDULENT TRANSFER —11 U.S.C. 44 548(a)(1)(A), 550(a) AND 551**

74.    To the extent applicable, the Trustee incorporates by reference the allegations
contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER:**  To the extent applicable, Defendant Brian Gerber repeats and re-alleges his

response to each of the foregoing paragraphs of the Complaint and incorporates them by

reference, as if fully set forth herein.

75.    Each of the Two Year Transfers was made on or within two years before the
Filing Date.

**ANSWER:**  The allegations contained in paragraph 75 state legal conclusions to which

no response is required.  To the extent a response is required, Defendant Brian Gerber denies

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

paragraph 75.

76.     Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

**ANSWER:**  The allegations contained in paragraph 76 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76.

77.     Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS' then existing and/or future creditors.

**ANSWER**:  The allegations contained in paragraph 77 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77.

78.     Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

**ANSWER**:  The allegations contained in paragraph 78 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies the allegations contained in paragraph 78.

79.     As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber: (a) avoiding and preserving the 1997 Trust Two Year Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers (b) directing that the 1997 Trust Two Year Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers be set aside, and (c) recovering the 1997 Trust Two Year Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers, or the value thereof, from the 1997 Trust Defendants, the Marital Trust Defendants,

the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively, for the benefit of the estate of BLMIS.

**ANSWER**:  The allegations contained in paragraph 79 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies the allegations therein.

## COUNT TWO
## FRAUDULENT TRANSFER — 11 U.S.C. §§ 548(a)(1)(B), 550(a) AND 551

80.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER**:  To the extent applicable, Defendant Brian Gerber repeats and re-alleges his responses to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

81.    Each of the Two Year Transfers was made on or within two years before the Filing Date.

**ANSWER**:  The allegations contained in paragraph 81 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81.

82.    Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

**ANSWER**:  The allegations contained in paragraph 82 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82.

83.    BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers.

**ANSWER**:  The allegations contained in paragraph 83 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83.

84.    At the time of each of the Two Year Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfers.

**ANSWER**:  The allegations contained in paragraph 84 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84.

85.    At the time of each of the Two Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with BLMIS was an unreasonably small capital.

**ANSWER**:  The allegations contained in paragraph 85 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85.

86.    At the time BLMIS made each of the Two Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 86.

87.    Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

**ANSWER**:  The allegations contained in paragraph 87 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87.

88.     As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber: (a) avoiding and preserving the 1997 Trust Two Year Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers, (b) directing that the 1997 Trust Two Year Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers be set aside, and (c) recovering the 1997 Trust Two Year Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers, or the value thereof, from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively, for the benefit of the estate of BLMIS.

**ANSWER**:  The allegations contained in paragraph 88 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 88.

## COUNT THREE
## FRAUDULENT TRANSFER — NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551

89.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER**:  To the extent applicable, Defendant Brian Gerber repeats and re-alleges his responses to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

90.     At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

**ANSWER**:  The allegations contained in paragraph 90 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

91.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

**ANSWER**:  The allegations contained in paragraph 91 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

92.    Each of the Six Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud the creditors of BLMIS. BLMIS made each of the Six Year Transfers to or for the benefit of the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber in furtherance of a fraudulent investment scheme.

**ANSWER**:  The allegations contained in paragraph 92 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

93.    As a result of the foregoing, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber: (a) avoiding and preserving the 1997 Trust Two Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, (b) directing that the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers be set aside; and (c) recovering the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, or the value thereof, from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively, for the benefit of the estate of BLMIS.

**ANSWER**:  The allegations contained in paragraph 93 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**COUNT FOUR**
**FRAUDULENT TRANSFER — NEW YORK DEBTOR AND CREDITOR LAW §§ 273,
278 AND/OR 279, AND 11 U.S.C. 44 544(b), 550(a) AND 551**

94.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

**ANSWER**:  To the extent applicable, Defendant Brian Gerber repeats and re-alleges his responses to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

95.    At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

**ANSWER**:  The allegations contained in paragraph 95 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

96.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

**ANSWER**:  The allegations contained in paragraph 96 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

97.    BLMIS did not receive fair consideration for any of the Six Year Transfers.

**ANSWER**:  The allegations contained in paragraph 97 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

98.    BLMIS was insolvent, or became insolvent as a result of the Six Year Transfers.

**ANSWER**:  The allegations contained in paragraph 98 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

99.    As a result of the foregoing, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber:  (a) avoiding and preserving the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, (b) directing that the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers be set aside, and (c) recovering the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, or the value thereof, from 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively for the benefit of the estate of BLMIS.

**ANSWER**:  The allegations contained in paragraph 99 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

## COUNT FIVE
## FRAUDULENT TRANSFER — NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279, AND 11 U.S.C. 44 544(b), 550(a), AND 551

100.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

**ANSWER**:  To the extent applicable, Defendant Brian Gerber repeats and re-alleges his responses to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

101.    At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

**ANSWER**:  The allegations contained in paragraph 101 state legal conclusions to which

no response is required.   To the extent a response is required, Defendant Brian Gerber denies

knowledge or information sufficient to form a belief as to the truth of the allegations therein.

102.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined
under DCL section 270.

**ANSWER:**  The allegations contained in paragraph 102 state legal conclusions to which

no response is required.

103.    BLMIS did not receive fair consideration for any of the Six Year Transfers.

**ANSWER:**  The allegations contained in paragraph 103 state legal conclusions to which

no response is required.

104.    At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or
was about to engage in a business or transaction for which the property remaining in its hands
after each of the Six Year Transfers was an unreasonably small capital.

**ANSWER**:  The allegations contained in paragraph 104 state legal conclusions to which

no response is required.   To the extent a response is required, Defendant Brian Gerber denies

knowledge or information sufficient to form a belief as to the truth of the allegations therein.

105.    As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279,
sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the
Trustee is entitled to a judgment against the 1997 Trust Defendants, the Marital Trust
Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or
Defendant Gerber: (a) avoiding and preserving the 1997 Trust Six Transfers, the Marital Trust
Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the
Ltd Six Year Transfers, (b) directing that the 1997 Trust Six Transfers, the Marital Trust Six
Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd
Six Year Transfers be set aside, and (c) recovering the 1997 Trust Six Transfers, the Marital
Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or
the Ltd Six Year Transfers, or the value thereof, from 1997 Trust Defendants, the Marital Trust
Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or
Defendant Gerber, respectively for the benefit of the estate of BLMIS.

**ANSWER:**  The allegations contained in paragraph 105 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies the allegations contained therein.

## COUNT SIX
## FRAUDULENT TRANSFER — NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

106.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

**ANSWER**:  To the extent applicable, Defendant Brian Gerber repeats and re-alleges his responses to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

107.    At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

**ANSWER**:  The allegations contained in paragraph 107 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

108.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

**ANSWER**:  The allegations contained in paragraph 108 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

109.    BLMIS did not receive fair consideration for any of the Six Year Transfers.

**RESPONSE:**  The allegations contained in paragraph 109 state legal conclusions to which no response is required.

110.     At the time BLMIS made each of the Six Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

**ANSWER**:  The allegations contained in paragraph 110 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

111.     As a result of the foregoing, pursuant to DCL sections 275, 278 and/or 279 and sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber: (a) avoiding and preserving the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, (b) directing that the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers be set aside, and (c) recovering the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, or the value thereof, from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber for the benefit of the estate of BLMIS.

**ANSWER**:  The allegations contained in paragraph 111 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies the allegations therein.

## COUNT SEVEN
## RECOVERY OF SUBSEQUENT TRANSFER — NEW YORK DEBTOR AND CREDITOR LAW 44 278 AND/OR 279 AND 11 U.S.C. 44 544, 548, 550(a) AND 551

112.   To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER**:  To the extent applicable, Defendant Brian Gerber repeats and re-alleges his responses to each of the foregoing paragraphs of the Complaint and incorporates them by reference, as if fully set forth herein.

113.   Each of the Transfers is avoidable under sections 544 and 548 of the Bankruptcy Code, DCL sections 273, 274, 275 and/or 276 and section 78fff-2(c)(3) of SIPA.

33

**ANSWER**:  The allegations contained in paragraph 113 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies the allegations therein.

114.   On information and belief, the Subsequent Transfers were transferred by the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber to Defendant Gerber.

**ANSWER**:  The allegations contained in paragraph 114 state legal conclusions to which no response is required.  To the extent a response is required, Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

115.   Each of the Subsequent Transfers was made directly or indirectly to Defendant Gerber.

**ANSWER:**   Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115.

116.   Defendant Gerber is an immediate or mediate transferee of the Subsequent Transfers from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, and/or the Ltd Defendant.

**ANSWER:**  Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116.

117.   As a result of the foregoing and the avoidance of the within Transfers, pursuant to DCL sections 278 and/or 279, sections 544(b), 548(a), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendant Gerber: (a) avoiding and preserving the Subsequent Transfers, (b) directing that the Subsequent Transfers be set aside, and (c) recovering the Subsequent Transfers, or the value thereof, from the Defendant Gerber for the benefit of the estate of BLMIS.

**RESPONSE:** The allegations contained in paragraph 117 state legal conclusions to which no response is required.  Defendant Brian Gerber denies knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the 1997 Trust Defendants, the Marital Trust Defendants, the

A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber as follows:

     (i)     On the First Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the 1997 Trust Two Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers, (b) directing that the 1997 Trust Two Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers be set aside, and (c) recovering the 1997 Trust Two Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers, or the value thereof, from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively for the benefit of the estate of BLMIS;

     (ii)     On the Second Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the 1997 Trust Two Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers, (b) directing that the 1997 Trust Two Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers be set aside, and (c) recovering the 1997 Trust Two Transfers, the Marital Trust Two Year Transfers, the A Trust Two Year Transfers, the B Trust Two Year Transfers, and/or the Ltd Two Year Transfers, or the value thereof, from 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively for the benefit of the estate of BLMIS;

     (iii)     On the Third Claim for Relief, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, (b) directing that the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers be set aside, and (c) recovering the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, or the value thereof, from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively for the benefit of the estate of BLMIS;

     (iv)     On the Fourth Claim for Relief, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, (b) directing that the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers be set aside, and (c) recovering the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, or the value thereof, from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively for the benefit of the estate of BLMIS;

(v)    On the Fifth Claim for Relief, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, (b) directing the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers be set aside, and (c) recovering the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, or the value thereof, from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively for the benefit of the estate of BLMIS;

(vi)    On the Sixth Claim for Relief, pursuant to DCL sections 275, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, (b) directing that the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers be set aside, and (c) recovering the 1997 Trust Six Transfers, the Marital Trust Six Year Transfers, the A Trust Six Year Transfers, the B Trust Six Year Transfers, and/or the Ltd Six Year Transfers, or the value thereof, from the 1997 Trust Defendants, the Marital Trust Defendants, the A Trust Defendants, the B Trust Defendants, the Ltd Defendant and/or Defendant Gerber, respectively for the benefit of the estate of BLMIS;

(vii)    On the Seventh Claim for Relief as a result of the avoidance of the within Transfers, pursuant to DCL section 278 and/or 279, sections 544(b), 548, 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Subsequent Transfers; (b) directing that the Subsequent Transfers be set aside; and (c) recovering the Subsequent Transfers, or the value thereof, from Defendant Gerber for the benefit of the estate of BLMIS;

(viii)    On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004 awarding the Trustee prejudgment interest from the date on which the Transfers were received;

(ix)    On all Claims for Relief, establishment of a constructive trust over the proceeds of the transfers in favor of the Trustee for the benefit of BLMIS' estate;

(x)    On all Claims for Relief, assignment of Defendants' income tax refunds from the United States, state and local governments paid on fictitious profits during the course of the scheme;

(xi)    On all Claims for Relief, awarding the Trustee all applicable interest, costs, and disbursements of this action; and

(xii)    On all Claims for Relief, granting Plaintiff such other, further, and different relief as the Court deems just, proper, and equitable.

**RESPONSE:**  WHEREFORE, Defendant Brian Gerber denies that the Trustee is entitled to any relief, including the relief sought in paragraphs i-xii of the Trustee's Prayer for Relief.

## AFFIRMATIVE DEFENSES

Defendant asserts below his affirmative defenses.  By setting forth these affirmative defenses, Defendant does not assume the burden of proof for any issue, fact or element of a claim to which applicable law places the burden on the Trustee.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Trustee lacks standing to bring any claims against Defendant.

### THIRD AFFIRMATIVE DEFENSE

Article III of the United States Constitution precludes the Bankruptcy Court from finally determining the claims asserted in the Complaint pursuant to the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).  Defendant demands a trial by jury.

### FOURTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by the applicable statutes of limitations.

### FIFTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by the doctrines of unclean hands and *in pari delicto*.

### SEVENTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by res judicata, collateral estoppel, and/or issue preclusion.

### EIGHTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by the doctrine of waiver.

### NINTH AFFIRMATIVE DEFENSE

The Complaint violates Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim," and the Supreme Court's rulings in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), by, *inter alia*, (1) failing to describe each specific transfer and its recipient, and each subsequent transfer and its recipient, and improperly combining allegations as to all defendants, (2) pleading numerous background facts and allegedly applicable statutes and legal rules which are not required for the claims being alleged, and (3) pleading numerous facts that defendants do not know and could not possibly know after reasonable diligence.

### TENTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, by Sections 548(c) and 548(d)(2)(A) of the Bankruptcy Code.

### ELEVENTH AFFIRMATIVE DEFENSE

The alleged transfers, in whole or in part, may not be avoided because to the extent Defendant received any such transfers, Defendant did so for value, in good faith, and without knowledge of the voidability of the transfers sought to be avoided.

### TWELFTH AFFIRMATIVE DEFENSE

The alleged transfers, in whole or in part, may not be avoided because the alleged transfers were made in satisfaction of an antecedent debt.

### THIRTEENTH AFFIRMATIVE DEFENSE

None of the alleged transfers may be avoided against or recovered from Defendant under Sections 272 through 276 of the New York Debtor and Creditor Law, because if any of such transfers were received by Defendant, they were taken without actual fraudulent intent and for fair consideration.

## FOURTEENTH AFFIRMATIVE DEFENSE

The alleged transfers, to the extent actually received by Defendant, were taken for fair consideration and without knowledge of fraud and, therefore, pursuant to Section 278(1) of the New York Debtor and Creditor Law, they are not avoidable or recoverable as against the Defendants under Sections 544 and 550 of the Bankruptcy Code or Sections 272 through 276 of the New York Debtor and Creditor Law.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, under Section 546(e) of the Bankruptcy Code, because if any transfers were made, they were made in connection with a securities contract, commodity contract or forward contract, or made by or to, or for the benefit of, a commodity broker, a forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency.

## SIXTEENTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, under Section 546(e) of the Bankruptcy Code, because if any transfers were made, each was a settlement payment made by or to, or for the benefit of, a commodity broker, a forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Even if the transfers are avoidable, the transfers may not be recovered against the alleged subsequent transferee Defendant Gerber as the alleged subsequent transferee Defendant Gerber is not an initial transferee of the transfers, a person or entity for whose benefit the transfers were made, or an immediate or mediate transferee of the transfers.

### EIGHTEENTH AFFIRMATIVE DEFENSE

The Complaint fails to sufficiently allege and/or identify any subsequent transfers received by any Defendants, including Brian Gerber.

### NINETEENTH AFFIRMATIVE DEFENSE

The alleged transfers, in whole or in part, may not be avoided because the alleged transfers, in whole or in part, were held by BLMIS in constructive trust or as a bailee for the Defendant.

### TWENTIETH AFFIRMATIVE DEFENSE

Any recovery by the Trustee is subject to a credit, set-off, recoupment, or other equitable adjustment to the extent that any Defendant received a transfer that was, in whole or in part, a transfer to pay a tax obligation on so-called "fictitious profits" based on Forms 1099 and information reported by BLMIS to government taxation authorities.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or part, because they depend upon calculations that improperly attempt to avoid transfers that occurred prior to six years before the Filing Date.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or part, because they depend upon calculations that improperly attempt to avoid transfers that occurred prior to two years before the Filing Date.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Any recovery by the Trustee is subject to a credit, set-off, recoupment, or other equitable adjustment to the extent that any Defendant received a transfer that was, in whole or in part, a transfer in good faith and on account of obligations owed by BLMIS for (a) amounts contractually due to customers under New York law for the balances shown on prior customer account statements and related documents; and/or (b) rescission remedies, including damages and interest for fraud and misrepresentation, (c) the time value of money, (d) unjust enrichment, (e) damages for breach of fiduciary duty, and/or (f) money had and received.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Any recovery by the Trustee is subject to a set-off or other equitable adjustment to the extent that any alleged fraudulent transfers were, in whole or in part, used by Defendant to satisfy funding or other commitments to organizations that meet the requirements for tax-exempt status.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

The Trustee's claims fail to properly credit inter-account transfers.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendants are victims of the Madoff fraud and any claims for relief against them should be barred, in whole or in part, as unconscionable and in violation of public policy.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

41

The Trustee is not entitled to an award of prejudgment interest because of the operation of waiver, estoppel, and other equitable doctrines.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Defendant hereby adopts and incorporates by reference any and all other available defenses asserted or to be asserted by any other defendant in the above-captioned Substantively Consolidated SIPA Liquidation Proceeding, Adv. Pro. No. 09-01789 (SMB), to the extent applicable herein.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

The Trustee purports to bring this action against Brian Gerber in his alleged capacity as trustee of Pati H. Gerber Marital Deduction Trust Under the Last Will and Testament of Oscar L. Gerber, the Oscar L. Gerber Residuary Trust A, and the Oscar L. Gerber Residuary Trust B. On information and belief the aforementioned trusts are testamentary trusts established by the Last Will and Testament of Oscar L. Gerber, (the "OLG Will") which was formed under the laws of Illinois. The Plaintiff refers to, but does not attach, the OLG Will to the Complaint. Upon information and belief, with respect to the Pati H. Gerber Marital Deduction Trust, the Oscar L. Gerber Residuary Trust A, and the Oscar L. Gerber Residuary Trust B, Defendant Brian Gerber was named as a successor trustee only under the OLG Will. Defendant Brian Gerber further avers that he was never appointed and never served as trustee under these trusts. As such, he was under no duty to inquire into the acts or doings of the trustee or trustees of these trusts, and is not liable for any act or failure to act alleged by the Plaintiff.

## RESERVATION OF RIGHTS

Under prior decisions applicable to this case, all of the claims alleged in the Complaint are barred but for those claims asserted under Section 548(a)(1)(A) and Section 550(a)(2).    In

the event that subsequent legal developments further change the claims available to the Trustee, the Defendants hereby preserve each and every defense to such claims available at law, in equity, or otherwise, and under federal and state law, including common law.

Defendant does not knowingly or intentionally waive any applicable defenses, and reserves the right to assert and rely upon all applicable defenses that are asserted by other similarly situated defendants or that may become available or apparent during further proceedings in this matter, in the Substantively Consolidated SIPA Liquidation Proceeding, Adv. Pro. No. 08-01789 (SMB), or in related matters.  Defendant reserves the right to amend or seek to amend his Answer and/or his affirmative defenses based on information that becomes available to them during discovery and/or further proceedings in this matter, in the Substantively Consolidated SIPA Liquidation Proceeding, Adv. Pro. No. 08-01789 (SMB), or in related matters.

Dated:  April 17, 2014

BELLOWS AND BELLOWS, P.C.

By:____/s/Schuyler D. Geller_____

Schuyler D. Geller, Esq.
BELLOWS AND BELLOWS, P.C.
209 South LaSalle Street, Suite 800
Chicago, Illinois 60604
(312) 332-3340
(312) 332-1190 (facsimile)

*Counsel for Defendant Brian H. Gerber*

43