# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

-------------------------------------------------------------x
SUZANNE STONE MARSHALL, ADELE
FOX, MARSHA PESHKIN, and RUSSELL
OASIS, individually and on behalf of a class of
similarly situated Plaintiffs,

     Plaintiffs,

  - against -

CAPITAL GROWTH COMPANY;
DECISIONS, INCORPORATED;
FAVORITE FUNDS;
JA PRIMARY LIMITED PARTNERSHIP;
JA SPECIAL LIMITED PARTNERSHIP;
JAB PARTNERSHIP;
JEMW PARTNERSHIP;
JF PARTNERSHIP;
JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP;
JMP LIMITED PARTNERSHIP;
JEFFRY M. PICOWER SPECIAL
COMPANY;
JEFFRY M. PICOWER, P.C.;
THE PICOWER FOUNDATION;
THE PICOWER INSTITUTE OF MEDICAL
RESEARCH;
THE TRUST F/B/O GABRIELLE H.
PICOWER;
BARBARA PICOWER, individually, and as
Executor of the Estate of Jeffry M. Picower,
and as Trustee for the Picower Foundation and
for the Trust f/b/o Gabriel H. Picower.

     Defendants.

-------------------------------------------------------------X

Case No.: 10-80252-CV-KLR

**DEFENDANTS' EMERGENCY MOTION TO STAY THIS ACTION OR,
ALTERNATIVELY, FOR AN EXTENSION OF TIME TO RESPOND TO MOTION TO
REOPEN CASE**

Defendants Capital Growth Company, Decisions, Incorporated, Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., The Picower Foundation, The Picower Institute of Medical Research, The Trust f/b/o Gabrielle H. Picower, Barbara Picower, individually, and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabrielle H. Picower (collectively, the "Picower Parties") hereby respectfully submit this Emergency Motion to Stay This Action or, Alternatively, for an Extension of Time to Respond to Motion to Reopen Case (the "Motion to Stay/Extend") pursuant to Rule 7.1(e) of the Local Rules of the Southern District of Florida.

**PRELIMINARY STATEMENT**

The Picower Parties seek a stay of this action pending the resolution of a motion that will be brought in the Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court") by Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), for a determination that Plaintiffs'[1] proposed Second Amended Complaint would violate a permanent injunction issued by the New York Bankruptcy Court and the automatic stay under Section 362(a) of the Bankruptcy Code. Plaintiffs seek to reopen this putative class action against the Picower Parties on behalf of investors who both profited and lost money from Bernie Madoff's Ponzi scheme. The Picower

---

[1] This putative class action initially was brought by Plaintiff Adele Fox ("Fox") on behalf of so-called "net winners" (*i.e.*, customers who profited in the Madoff Ponzi scheme). A companion putative class action was separately filed by Plaintiff Suzanne Stone Marshall ("Marshall") under Case No. 10-80254 on behalf of so-called "net losers" (*i.e.*, customers who lost money in the Madoff Ponzi scheme) (the Fox class action and Marshall class action, collectively, the "Fox/Marshall Class Actions"). As explained in greater detail below, this Court administratively closed the Fox/Marshall Class Actions on March 22, 2011. (Case No. 10-80252, Dkt. No. 26; Case No. 10-80254 Dkt. No. 21.) On February 5, 2014, a Motion to Reopen Case and for Leave to File Second Amended Complaint was filed (Case No. 10-80252), adding as Plaintiffs Marshall, Marsha Peshkin, and Russell Oasis (Fox, Marshall, Peshkin and Russell, collectively, "Plaintiffs"). A motion to reopen was not filed in the companion putative class action filed by Marshall (Case No. 10-80254).

2

Parties, however, already have paid more than $7.2 *billion* to the Trustee and the Department of Justice to settle all claims filed against them in the New York Bankruptcy Court and in U.S. District Court for the Southern District of New York to compensate the victims of Madoff's scheme entitled to compensation as determined by the New York Bankruptcy Court and the U.S. District Court, and as affirmed by the Second Circuit Court of Appeals. An integral part of the Picower Parties' $7.2 billion settlement was a permanent injunction issued by the New York Bankruptcy Court enjoining any actions that are "duplicative or derivative" of the Trustee's claims against the Picower Parties.

When the Fox/Marshall Class Actions were filed in early 2010, the New York Bankruptcy Court issued a temporary restraining order enjoining Fox and Marshall from pursuing those actions and then, after a hearing, issued an injunction ordering the Fox/Marshall Class Actions void *ab initio* on the grounds that the claims brought therein belonged to the Madoff estate and therefore violated the automatic stay. Thereafter, the Trustee settled his claims against the Picower Parties. As part of the settlement, the New York Bankruptcy Court issued a permanent injunction barring any actions against the Picower Parties that are "duplicative or derivative" of the Trustee's claims. On appeal, the District Court for the Southern District of New York held that prosecuting the Fox/Marshall Class Actions would violate the permanent injunction because the claims asserted by Fox and Marshall, although labeled as independent causes of action, in fact were duplicative and derivative of the fraudulent transfer claims the Trustee already had brought and settled against the Picower Parties. The Court of Appeals for the Second Circuit affirmed, again finding that the claims in the Fox/Marshall Class Actions were derivative and duplicative of the Trustee's claims against the

3

Picower Parties and, therefore, were barred by the permanent injunction issued by the New York Bankruptcy Court.

Shortly after the Second Circuit issued its decision, which was entered on January 14, 2014, Plaintiffs filed in this Court a Motion to Reopen Case and for Leave to File Second Amended Complaint (the "Motion to Reopen" or "Motion"). In the Motion, Plaintiffs assert – incorrectly – that they "have leave from the Second Circuit Court of Appeals to proceed with this matter." (Motion at 2.) To the contrary, the Second Circuit held that its decision affirming the permanent injunction against the Fox/Marshall Class actions was "without prejudice to Fox and Marshall seeking leave to amend their complaints in the United States District Court for the Southern District of Florida," but the Second Circuit "[o]f course" has "no view on an appropriate disposition of any such motion for leave to amend." *Marshall v. Picard*, 740 F.3d 81, 96 (2d Cir. 2014).

The determination of whether to grant Plaintiffs' Motion to Reopen turns on whether Plaintiffs' proposed Second Amended Complaint is derivative or duplicative of the Trustee's claims against the Picower Parties, and thereby in violation of the permanent injunction issued by the New York Bankruptcy Court – the very question that the New York Bankruptcy Court, the District Court and the Second Circuit Court of Appeals already have addressed. Moreover, in its order approving the Trustee's settlement with the Picower Parties and ordering the permanent injunction, the New York Bankruptcy Court expressly retained jurisdiction over the settlement and the injunction, including as to issues of enforcement and scope. For those reasons, and because Plaintiffs' filings in this Court also violate the automatic stay under Section 362(a) of the Bankruptcy Code, counsel to the Trustee has advised that the Trustee will be filing

4

a motion in the New York Bankruptcy Court for an order enforcing the permanent injunction and enjoining Plaintiffs from proceeding with their action in this Court. (Harris Decl. Ex. C.)[2]

The determination of whether Plaintiffs' proposed Second Amended Complaint would violate the New York Bankruptcy Court's permanent injunction and automatic stay should be decided by the New York Bankruptcy Court because the New York Bankruptcy Court has *exclusive* jurisdiction over disputes arising from the Picower Parties' settlement with the Trustee and has retained jurisdiction over the permanent injunction it issued pursuant to the Picower Parties' settlement. The Picower Parties respectfully submit that deference should be given to the New York Bankruptcy Court to determine the applicability of its own permanent injunction and the automatic stay. Moreover, having both this Court *and* the New York Bankruptcy Court decide the applicability of the permanent injunction and automatic stay plainly would be a waste of judicial and party resources and could lead to inconsistent results. Accordingly, we respectfully seek a stay of this action pending resolution of the Trustee's motion in the New York Bankruptcy Court to enforce the permanent injunction and automatic stay.

In the event that this Court declines to stay this action, the Picower Parties request an extension of time for them to respond to Plaintiffs' Motion to Reopen, from February 24, 2014 (the current deadline for the Picower Parties to oppose the Motion to Reopen) to April 7, 2014. Counsel for the Picower Parties requested, as a professional courtesy, that Plaintiffs' counsel consent to an extension of time to respond to the Motion to Reopen. However, Plaintiffs' counsel, Helen Davis Chaitman, refused to consent to any extension, necessitating the filing of this motion. As Plaintiffs' Motion to Reopen raises complicated factual and legal issues, the Picower Parties need the additional time to address them. Accordingly, if this action

---

[2] Citations to "Harris Decl." refer to the Declaration of Marcy Ressler Harris, Esq. dated February 17, 2014, filed concurrently herewith.

5

is not stayed, the Picower Parties' time to respond to the Motion to Reopen should be extended to April 7, 2014.

Good cause exists for deciding this Motion to Stay/Extend on an expedited basis and waiving the time requirements under Local Rule 7.1(c)(1) because (i) the Court should decide whether the Picower Parties should be granted a stay or an extension of time before they are required to oppose Plaintiffs' Motion to Reopen and (ii) Plaintiffs' counsel refuses to consent to an extension of the Picower Parties' time to oppose Plaintiffs' Motion to Reopen.

## MOTION

1. This putative class action arises from the multi-billion-dollar Ponzi scheme perpetrated by Bernard L. Madoff through his investment company, BLMIS. On December 15, 2008, the District Court for the Southern District of New York ("SDNY District Court") granted the application of the Securities Investor Protection Corporation to place BLMIS under the protections of SIPA (the "Protective Order"). *See Picard v. Fox*, 429 B.R. 423, 426 (S.D.N.Y. Bankr. 2010). The Protective Order appointed the Trustee for the liquidation of BLMIS and removed the SIPA liquidation proceeding (the "BLMIS Liquidation") to the New York Bankruptcy Court. *See id.* As part of the BLMIS Liquidation, on May 12, 2009, the Trustee filed a complaint in the New York Bankruptcy Court against the Picower Parties alleging, *inter alia*, claims for fraudulent transfers, preferences, turnover, and state law fraudulent conveyances (the "Picower Claims"). *See id.* at 429.

2. Plaintiffs Fox and Marshall were BLMIS customers, both of whom have actively participated in the New York Bankruptcy Court proceedings with respect to their investments with BLMIS, having filed customer claims in the BLMIS Liquidation. *See id.* at 428. Marshall's customer claim was deemed allowed by the Trustee on July 24, 2009 in the amount of $30,000, the amount that she lost in Madoff's Ponzi scheme. *See id.* Fox's customer claims,

6

however, were denied because she withdrew amounts greater than her principal investment (in other words, because she profited from Madoff's Ponzi scheme). Like all other Madoff customers similarly situated, Fox was barred from receiving payments through the BLMIS Liquidation until all BLMIS "net losers" (those who lost money in Madoff's scheme) received back their principal investments. *See Fox v. Picard*, 848 F. Supp. 2d 469, 474 (S.D.N.Y. 2012).

3. On February 16 and 17, 2010, at a time when the Trustee was negotiating a multi-billion-dollar settlement with the Picower Parties for distribution to Madoff victims, the Fox/Marshall Class Actions were filed against the Picower Parties in this Court, asserting claims against the Picower Parties for, *inter alia*, conversion, unjust enrichment, conspiracy, and violations of Florida's RICO Act, all arising from the Picower Parties' alleged involvement in Madoff's Ponzi scheme. (Case Nos. 10-80252 and 10-80254.)[3] On March 15, 2010, Fox and Marshall filed amended complaints. (Case No. 10-80252, Dkt. No. 5; Case No. 10-80254 Dkt. No. 7.)

4. On March 31, 2010, the Trustee filed a complaint in the New York Bankruptcy Court against Fox and Marshall seeking a declaration that the Fox/Marshall Class Actions violate the automatic stay under Section 362(a) of the Bankruptcy Code, a preliminary injunction pursuant to Section 105(a) of the Bankruptcy Code enjoining any further prosecution of the Fox/Marshall Class Actions, and a temporary restraining order pending the New York Bankruptcy Court's ruling on the motion for preliminary injunction. *See Picard*, 429 B.R. at 430.

---

[3] Fox and Marshall asserted identical claims against the Picower Parties, with the only differences in their complaints being that Fox sought to represent a class of "net winners" (*i.e.*, investors who made money in the Madoff Ponzi scheme) and Marshall sought to represent a class of "net losers" (*i.e.*, investors who lost money in the Madoff Ponzi scheme).

7

5. The next day, on April 1, 2010, Fox and Marshall filed a motion for an emergency temporary restraining order in this Court seeking to enjoin the Trustee's action against them in the New York Bankruptcy Court, which this Court denied that same day. (Case No. 10-80252, Dkt. Nos. 16 & 17; Case No. 10-80254 Dkt. Nos. 14 & 15.)

6. Also on April 1, 2010, the New York Bankruptcy Court entered an order temporarily restraining Fox and Marshall from any further prosecution of the Fox/Marshall Class Actions pending the hearing on the Trustee's motion for a preliminary injunction. *See Picard*, 429 B.R. at 430. On May 3, 2010, the New York Bankruptcy Court issued a written opinion granting the Trustee's motion for a preliminary injunction and ordering the Fox/Marshall Class Actions void *ab initio*, finding that the Fox/Marshall Class Actions violated the automatic stay because they asserted claims belonging exclusively to the Trustee. *See id.* at 432, 437.

7. On December 17, 2010, the Trustee and the Picower Parties entered into an Agreement (the "Settlement Agreement") that required the Picower Parties to pay more than $7.2 billion, $5 billion of which was to be provided to the Trustee and distributed by the Trustee to Madoff victims. (Harris Decl. Ex. A.) The rest of the payment, in settlement of civil forfeiture charges, was to be distributed to Madoff victims through the Department of Justice. *Id.* Pursuant to the Settlement Agreement, the New York Bankruptcy Court issued a permanent injunction that bars any claims that are "duplicative or derivative" of the Picower Claims (the "Permanent Injunction"). (Harris Decl. Ex. A § 7; Harris Decl. Ex. B.) The New York Bankruptcy Court has exclusive jurisdiction over disputes arising from the Settlement Agreement and retained jurisdiction over disputes arising from the Permanent Injunction. In particular, Section 20 of the Settlement Agreement provides that "any action for enforcement or breach of [the Settlement Agreement] may be brought only in the [New York] Bankruptcy Court. No Party shall bring,

institute, prosecute or maintain any action pertaining to the enforcement of any provision of [the Settlement Agreement] in any court other than the [New York] Bankruptcy Court." (Harris Decl. Ex. A.) Similarly, under the Order approving the Settlement Agreement and issuing the Permanent Injunction, the New York Bankruptcy Court expressly "retain[s] jurisdiction over any and all disputes arising under or otherwise relating to this Order." (Harris Decl. Ex. B.)

8. On March 22, 2011, this Court administratively closed the Fox/Marshall Class Actions. (Case No. 10-80252, Dkt. No. 26; Case No. 10-80254 Dkt. No. 21.)

9. On March 26, 2012, the SDNY District Court affirmed the New York Bankruptcy Court's order (i) that the claims asserted in the Fox/Marshall Class Actions belong to the BLMIS estate; (ii) enjoining the Fox/Marshall Class Actions; and (iii) approving the Settlement Agreement. *Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012). In finding that the claims in the Fox/Marshall Class Actions were duplicative and derivative of the Picower Claims, the SDNY District Court stated: "Put bluntly, the wrongs pleaded in the [Fox/Marshall Class Actions] and in the Trustee's action are the same." *Id.* at 480.

10. On January 14, 2014, the Second Circuit affirmed the decisions of the New York Bankruptcy Court and the SDNY District Court enjoining the Fox/Marshall Class Actions. *Marshall v. Picard*, 740 F.3d 81 (2d Cir. 2014). The Second Circuit held that the claims in the Fox/Marshall Class Actions were derivative of the Picower Claims because "they are predicated upon mere secondary harms flowing from" the Picower Claims. *Id.* at 96.

11. On February 5, 2014, Plaintiffs filed the Motion to Reopen, seeking to reopen this action and for leave to file the proposed Second Amended Complaint. (Case No. 10-80252, Dkt. No. 28.) The Motion to Reopen incorrectly asserts that Plaintiffs "have leave from the Second Circuit Court of Appeals to proceed with this matter." (Motion at 2.) To the contrary, the

9

Second Circuit affirmed the decision of the SDNY District Court "without prejudice to Fox and Marshall seeking leave to amend their complaints in the United States District Court for the Southern District of Florida," but in doing so expressly stated that "[o]f course" the Second Circuit has "no view on an appropriate disposition of any such motion for leave to amend." *Marshall*, 740 F.3d at 96.

12. After Plaintiffs' Motion to Reopen was served on counsel to the Picower Parties, counsel to the Picower Parties forwarded the Motion to counsel to the Trustee. (Harris Decl. ¶ 5.) Thereafter, counsel to the Trustee advised the Picower Parties that the Trustee intends to file a motion in the New York Bankruptcy Court for an order enjoining this action on the grounds that prosecuting Plaintiffs' proposed Second Amended Complaint would violate the Permanent Injunction and the automatic stay under Section 362(a) of the Bankruptcy Code. (Harris Decl. ¶ 5, Ex. C.)

13. The Picower Parties' deadline to file an opposition to the Motion to Reopen is February 24, 2014. On February 12, 2014, counsel for the Picower Parties sought, as professional courtesy, consent from Plaintiffs' counsel for an extension of Defendants' time to respond to the Motion to Reopen. (Harris Decl. ¶ 6.) Plaintiffs' counsel, Helen Davis Chaitman, Esq., refused the request, refused to consent to any extension of time, and advised that she would oppose any motion brought in this Court seeking such relief. (*Id.*)

## ARGUMENT

**I.     This Action Should Be Stayed Pending Resolution of the Trustee's Motion to Enforce the Permanent Injunction and Automatic Stay**

This action should be stayed pending the New York Bankruptcy Court's determination of whether Plaintiffs' prosecution of the proposed Second Amended Complaint would violate the Permanent Injunction and automatic stay. "[T]he power to stay proceedings is

10

incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 707 (1997) (district court has "broad discretion to stay proceedings as an incident to its power to control its own docket").

Here, the Picower Parties respectfully submit that deference should be given to the New York Bankruptcy Court to determine the applicability of its own Permanent Injunction. Indeed, the New York Bankruptcy Court has *exclusive* jurisdiction over disputes arising from the Settlement Agreement, pursuant to which the Permanent Injunction was issued (Harris Ex. A §§ 7, 20), and expressly retained jurisdiction over any disputes arising from the Permanent Injunction (Harris Ex. B).

Moreover, the question of whether Plaintiffs' prosecution of the Second Amended Complaint would violate the Permanent Injunction and automatic stay turns on whether the claims asserted in the Second Amended Complaint are "duplicative or derivative" of the Picower Claims that the Trustee asserted in the BLMIS Liquidation that is pending in the New York Bankruptcy Court.  Plainly, the resolution of that question should be (i) brought by the Trustee, who brought the Picower Claims, and (ii) decided by the New York Bankruptcy Court that oversees the BLMIS Liquidation giving rise to the automatic stay, approved the Settlement Agreement, and issued the Permanent Injunction.

Additionally, staying this action would promote judicial economy and avoid inconsistent rulings.  In particular, leave to file the Second Amended Complaint should be denied if the amendment is futile, which in this case requires an assessment of whether the action would

11

be barred by the Permanent Injunction and automatic stay. That issue will soon be presented to the New York Bankruptcy Court by the Trustee. (Harris Decl. ¶ 5, Ex. C.) Staying this action pending a determination of that issue by the New York Bankruptcy Court will conserve the resources of this Court and the parties hereto, consistent with the salutary goals of judicial economy and efficiency. *See Cypress Chase Condo. Ass'n "A" v. QBE Ins. Corp.*, No. 10-61987-CIV, 2011 WL 1544860, at *5 (S.D. Fla. Apr. 15, 2011) ("Federal courts routinely exercise their power to stay a proceeding where a stay would promote judicial economy and efficiency."). Moreover, staying this action to allow the New York Bankruptcy Court to determine whether the Second Amended Complaint would violate the Permanent Injunction issued by the New York Bankruptcy Court and the automatic stay would avoid inconsistent rulings that could result if this Court and the New York Bankruptcy Court both were to decide the issue. *See Cherry v. Tama Broadcasting, Inc.*, No. 13-60552-CIV, 2013 WL 1295536, at *1 (S.D. Fla. Mar. 28, 2013) (granting motion to stay where "moving forward with this case would risk inconsistent rulings, duplicate litigation, and unnecessary expense"); *Lisa, S.A. v. Mayorga*, 232 F. Supp. 2d 1325, 1327 (S.D. Fla. 2002) (granting stay where resolution of parallel action "may resolve or moot issues currently before this Court").

In short, this action should be stayed pending the New York Bankruptcy Court's determination of whether Plaintiffs' proposed Second Amended Complaint would violate the Permanent Injunction and automatic stay.

## II. Alternatively, the Court Should Grant an Extension of time for the Picower Parties' to Respond to the Motion to Reopen

In the event the Court decides not to stay this action, the Court should extend the Picower Parties' time to respond to the Motion to Reopen to April 7, 2014. Currently, the Picower Parties' deadline to file an opposition to the Motion to Reopen is February 24, 2014.

12

Plaintiffs' counsel refused to consent to the Picower Parties' reasonable request for an extension of time. However, the Picower Parties need more time to provide additional legal and factual support as to why the Court should not grant Plaintiffs leave to file their proposed Second Amended Complaint. The determination of whether Plaintiffs' proposed Second Amended Complaint asserts claims that are "duplicative or derivative" of the Picower Claims raises issues that would require, among other things, a careful comparison of the proposed Second Amended Complaint and the prior claims in the Fox/Marshall Class Actions, and a detailed analysis of the decisions by the New York Bankruptcy Court, the SDNY District Court and the Second Circuit Court of Appeals, all of which concluded that the claims in the Fox/Marshall Class Actions belong to the BLMIS Estate and were derivative of the Picower Claims. These are the identical issues that the Trustee will be addressing in his injunction proceeding in the New York Bankruptcy Court. By contrast, Plaintiffs would not be prejudiced by a short extension, and Fox/Marshall sought and received multiple extensions as a professional courtesy during their litigation of the very same issue in the New York Bankruptcy Court, the SDNY District Court, and the Second Circuit. Accordingly, in the event that this Court declines to stay this action, the Picower Parties respectfully request that the Court extend their time to respond to Plaintiffs' Motion to Reopen until one month from the date of this Court's ruling on this application.

### III. Good Cause Exists for Deciding This Motion on an Expedited Basis

Good cause exists for deciding this Motion to Stay/Extend on an expedited basis and waiving the time requirements under Local Rule 7.1(c)(1). First, this Motion to Stay/Extend should be decided before the Picower Parties' are required to oppose Plaintiffs' Motion to Reopen so that the Trustee can file his motion to enforce the Permanent Injunction in the New York Bankruptcy Court before the Picower Parties are forced to unnecessarily spend resources preparing an opposition to the Motion to Reopen, which would be duplicative of the issues raised

13

in the Trustee's motion – namely, whether Plaintiffs' proposed claims are "duplicative or derivative" of the Picower Claims. Second, as discussed above, this Motion to Stay/Extend was necessitated by counsel to Plaintiffs' refusal to consent to an extension of the Picower Parties' time to oppose Plaintiffs' Motion to Reopen. This Motion to Stay/Extend could have been avoided entirely if counsel to Plaintiffs had consented to such an extension as a professional courtesy.

## CONCLUSION

For the foregoing reasons, this Court should stay this action pending the resolution by the New York Bankruptcy Court of the Trustee's motion to enforce the Permanent Injunction and the automatic stay, or, in the alternative, extend the Picower Parties' time to respond to Plaintiffs' Motion to Reopen to April 7, 2014.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

On February 17, 2014, counsel for the Picower Parties emailed Plaintiffs' counsel, Helen Davis Chaitman, Esq., requesting that she agree to either stay all action on Plaintiffs' Motion to Reopen while the issues raised therein are determined in the New York Bankruptcy Court or agree to a 30 day extension of time for the Picower Parties to respond to Plaintiffs' Motion to Reopen.

Ms. Chaitman, however, refused to consent to either relief.

14

          Respectfully submitted,

          HOLLAND & KNIGHT LLP
          Attorneys for the Picower Parties
          701 Brickell Avenue
          Suite 3300
          Miami, Florida 33131
          Telephone: 305-374-8500
          Facsimile: 305-789-7799

          By: <u>s/Sanford L. Bohrer</u>
          Sanford L. Bohrer (FBN 160643)

Of counsel:

SCHULTE ROTH & ZABEL LLP
William D. Zabel
Marcy Ressler Harris
Frank LaSalle
Michael Kwon
919 Third Avenue
New York, New York 10022
(212) 756-2000

## CERTIFICATE OF SERVICE

      I certify that on February 18, 2014, I served copy of the foregoing with the Clerk of Court using CM/ECF, which will notify all counsel of record of the foregoing.

          <u>s/Sanford L. Bohrer</u>

#27894376_v1