# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.:10-80252-CV-KLR

SUZANNE STONE MARSHALL, ADELE FOX,
MARSHA PESHKIN, and RUSSELL OASIS,
individually and on behalf of a class of similarly situated
Plaintiffs,

vs.

CAPITAL GROWTH COMPANY;
DECISIONS, INC.;
FAVORITE FUNDS;
JA PRIMARY LIMITED PARTNERSHIP;
JA SPECIAL LIMITED PARTNERSHIP;
JAB PARTNERSHIP;
JEMW PARTNERSHIP;
JF PARTNERSHIP;
JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP;
JMP LIMITED PARTNERSHIP;
JEFFRY M. PICOWER SPECIAL COMPANY;
JEFFRY M. PICOWER, P.C.;
THE PICOWER FOUNDATION;
THE PICOWER INSTITUTE OF MEDICAL
RESEARCH;
THE TRUST F/B/O GABRIELLE H. PICOWER;
BARBARA PICOWER, individually, and as Executor of
the Estate of Jeffry M. Picower, and as Trustee for the
Picower Foundation and for the Trust f/b/o Gabriel H.
Picower.
_____/

**RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION
TO STAY AND
CROSS_MOTION FOR
INJUNCTIVE AND OTHER
RELIEF**

Pursuant to this Court's Order of February 20, 2014 (Docket Entry 37) Plaintiffs

Suzanne Stone Marshall, Adele Fox, Marsha Peshkin, and Russell Oasis, through their

undersigned attorneys, on their own behalf and on behalf of a similarly situated class of

plaintiffs (collectively, "Plaintiffs"), hereby respond to Defendants' Motion to Stay (DE

29) and respectfully request that this Court 1) deny the motion to stay; 2) enter a

preliminary injunction as requested by Plaintiffs in DE 33 enjoining the Defendants and

any persons in active concert or participation  with them pursuant to  Fed. R. Civ. P.

65(d)(2)(C) from litigating the subject matter of this case outside of the Southern District

of Florida, which the Second Circuit mandated is the forum where it should be litigated and

3) grant the Plaintiffs' motion to reopen the case and for leave to file the Second Amended

Complaint  (DE 28).

   The motion for a stay should be denied because to permit Defendants and the Bankruptcy

Trustee to proceed as threatened would violate the order of the United States Circuit Court of

Appeals for the Second Circuit.  Plaintiffs' argument is more fully briefed in Docket Entry 33, a

copy of which is annexed hereto as Exhibit A for the Court's convenience. In summary,

Plaintiffs request that this Court acknowledge and enforce by appropriate injunctive order  the

ruling of the United States Court of Appeals for the Second Circuit ("Second Circuit decision")

that the issues raised by the Plaintiffs' filing an amended complaint are in the first instance issues

for this Court:

> We note that we affirm without prejudice to appellants seeking
> leave to amend their complaints. There is conceivably some
> particularized conspiracy claim appellants could assert that would
> not be derivative of those asserted by the Trustee. **That question,
> however, is not properly before us, and is a question in the first
> instance for the United States District Court for the Southern
> District of Florida.**

*In Re: Bernard L. Madoff Investment Securities LLC*, Case No. 12-1645, Document 164-

1 at 23 (2d Cir. 2014) (emphasis added).

   As set forth in Docket Entry 33, for the Court to stay this matter and  not to enjoin

Defendants and the Bankruptcy Trustee from bringing  further litigation in the Bankruptcy

Court for the Southern District of New York would be to ignore the ruling of the Second

Circuit and deeply prejudice the Plaintiffs who have waited four years to litigate the merits of their claims and, if again stayed, will likely wait another four years if not longer. During this time Plaintiffs continue to endure the cost and expense of this litigation and risk the dissipation, concealment, and fraudulent transfer of assets by the Defendants, as well as the spoliation of evidence.

Accordingly, for the reasons set forth in Docket Entry 33, Plaintiffs respectfully request that this Honorable Court (1) vacate the temporary stay it has issued and deny the Defendants' motion to stay; (2) issue an injunction enjoining the Defendants and any persons in active concert or  participation  with them pursuant to Fed. R. Civ. P.  65(d)(2)(C), including Trustee Irving Picard, from litigating the subject matter of this case outside the Southern District of Florida; 3) grant the motion to reopen the case (DE 28); 4) grant the motion for leave to file the Second Amended Complaint (DE 28); 5) grant the request for leave to take the depositions of April Freilich and Bernard Madoff; and grant such other relief as this Court deems appropriate.

DATED this 24th day of February, 2014.

Respectfully submitted,

**BECKER & POLIAKOFF, P.A.**

/s/ Allen M. Levine_____
Florida Bar No. 315419
Becker and Poliakoff, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 987-7550
Facsimile: (954) 985-4176
ALevine@bplegal.com

and

**BECKER & POLIAKOFF LLP**

By:  */s/ Helen Davis Chaitman*
45 Broadway
New York, New York 10006
Telephone: (212) 599-3322
Facsimile: (212) 557-0295
Email: hchaitman@bplegal.com
Email: jgorchkova@bplegal.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of February 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Allen M. Levine*
Allen M. Levine

## SERVICE LIST

Sanford L. Bohrer
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799
Sandy.Bohrer@hklaw.com

William D. Zabel, Esq.
Marcy Ressler Harris, Esq.
Schulte Roth & Zabel, LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 756-2351
Facsimile: (212) 593.5955
william.zabel@srz.com
marcy.harris@srz.com

Lesley Guy Blackner
Blackner Stone & Associates
340 Royal Poinciana Way
St 317-377
Palm Beach, FL 33480
Phone: 561-659-5754
Fax: 561-659-3184
Email: LBlackner@aol.com

Andrew Steven Kwan & Joseph George Galardi
505 South Flagler Drive
Ste. 1500
West Palm Beach, FL 33401
Phone: 561-835-0900
Fax: 561-835-0939
Email: kwan@beasleylaw.net
Email: Galardi@beasleylaw.net

ACTIVE: 5500457_1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.:10-80252-CV-KLR

SUZANNE STONE MARSHALL, ADELE FOX,
MARSHA PESHKIN, and RUSSELL OASIS,
individually and on behalf of a class of similarly situated
Plaintiffs,

vs.

CAPITAL GROWTH COMPANY;
DECISIONS, INC.;
FAVORITE FUNDS;
JA PRIMARY LIMITED PARTNERSHIP;
JA SPECIAL LIMITED PARTNERSHIP;
JAB PARTNERSHIP;
JEMW PARTNERSHIP;
JF PARTNERSHIP;
JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP;
JMP LIMITED PARTNERSHIP;
JEFFRY M. PICOWER SPECIAL COMPANY;
JEFFRY M. PICOWER, P.C.;
THE PICOWER FOUNDATION;
THE PICOWER INSTITUTE OF MEDICAL
RESEARCH;
THE TRUST F/B/O GABRIELLE H. PICOWER;
BARBARA PICOWER, individually, and as Executor of
the Estate of Jeffry M. Picower, and as Trustee for the
Picower Foundation and for the Trust f/b/o Gabriel H.
Picower.

_____/

**PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION
FOR STAY and CROSS-
MOTION FOR A
PRELIMINARY INJUNCTION,
AND REQUEST FOR LEAVE
TO TAKE DEPOSITIONS with
MEMORANDUM OF LAW
IN SUPPORT**

Plaintiffs Suzanne Stone Marshall, Adele Fox, Marsha Peshkin, and Russell Oasis,

through their undersigned attorneys, on their own behalf and on behalf of a similarly

situated class of plaintiffs ("Plaintiffs"), submit this opposition to Defendants' Motion to

Stay (DE 29) and respectfully move this Court to enjoin the Defendants and, pursuant to

Fed. R Civ. P. 65(d)(2)(C), any persons in active concert or participation with them, from

litigating any aspect of this case in any jurisdiction other than the United States District Court for the  Southern District of Florida, as mandated by the United States Court of Appeals for the Second Circuit which, on January 13, 2014, affirmed dismissal of Plaintiffs' complaint "without prejudice to [Marshall and Fox] seeking leave to amend their complaints in [this forum]."  The Court held:

> There is conceivably some particularized conspiracy claim appellants could assert that would not be derivative of those asserted by the Trustee. **That question, however, is not properly before us, and is a question in the first instance for the United States District Court for the Southern District of Florida.**

See *Marshall and Fox v. Picard* (*In Re Bernard L. Madoff Investment Securities LLC)*, Case No. 12-1645, Document 164-1 (2d Cir. 2014), Chaitman Decl. Exh. 1 at 23 (emphasis added).

Thus, the Second Circuit stated in its decretal paragraph:

> Accordingly, the judgment of the District Court is **AFFIRMED without prejudice to Fox and Marshall seeking leave to amend their complaints in the United States District Court for the Southern District of Florida**. Of course, we intimate no view on an appropriate disposition of any such motion for leave to amend.

*Id.* at 28 (emphasis added).

Plaintiffs also move for an order allowing them to take the depositions of (a) April Freilich, the chief financial officer of the various Defendants who participated in the criminal conspiracy masterminded by Jeffry Picower and (b) Bernard L. Madoff.  In view of Picower's death in 2009, these two people have personal knowledge of the details of the criminal conspiracy in which they engaged and it is essential that their testimony be preserved without further delay.

## PROCEDURAL BACKGROUND AND SUPPORTING FACTS

1.    Plaintiffs filed a complaint on behalf of Adele Fox on February 16, 2010 pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. A companion case was filed on behalf of Susanne Stone Marshall on February 17, 2010, Case No. 10-80254-KLR.

2.    A motion to consolidate the cases was filed in both matters on March 24, 2010. DE 9.

3.    Irving H. Picard, Trustee of Bernard L. Madoff Investment Securities LLC ("BLMIS"), sought and obtained an injunction against Plaintiffs' proceeding with these cases, which was appealed to the United States District Court for the Southern District of New York and then to the United States Court of Appeals for the Second Circuit (the "New York Proceedings").

4.    Both cases in this Court were administratively closed on March 22, 2011 pending resolution of the New York Proceedings. DE 26.

5.    Upon the Second Circuit's decision, and in accordance therewith, the Plaintiffs promptly moved in this Court to reopen proceedings and amend their complaints (DE 28).Whether Plaintiffs have stated a claim is – according to the Second Circuit – to be determined by this Court and this Court alone.  Chaitman Decl. Exh. 1 at 23, 28.

6.    Apparently lacking confidence in this Court's ability to deal with the issues, the Defendants are coordinating with Picard to challenge the proposed second amended complaint in the New York bankruptcy court.  This is clearly blatant forum shopping, a bad faith dilatory strategy intended to shield the Defendants from liability for their criminal conduct.

7.      Further, there is reason to believe that the Picower Defendants' defiance of the Second Circuit's ruling is intended to allow them to insulate fraudulent transfers taken to conceal assets.  See Chaitman Decl. at ¶ 6.

Plaintiffs therefore request that this Court enforce the ruling of the Second Circuit that any motion respecting Plaintiffs' ability to replead or the sufficiency of their pleading be determined "in the first instance," in this Court, and that the Court enjoin the Defendants and all those in active concert or participation  with them, including but not limited to Picard, from litigating the merits of this matter in any court other than this one.

Finally, to preserve essential testimony without any further delays – a necessity given Defendants' dilatory tactics – Plaintiffs also seek an order from this Court allowing them to take the depositions of  April Freilich, Picower's chief financial officer, and Bernard L. Madoff.

## MEMORANDUM OF LAW

### I. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

The original complaints in this matter were filed in 2010 by customers of BLMIS who were victimized by a criminal conspiracy of Madoff, Jeffry Picower and the numerous entities through which Picower worked.  As more fully described in the Declaration of Helen Davis Chaitman filed with Plaintiffs' motion for leave to file a second amended complaint (DE 28, Exh. A), Picard then sued the Plaintiffs in the United States District Court for the Southern District of New York alleging that the Plaintiffs' claims were derivative of the claims Picard had asserted against the Picower Defendants, which claims Picard and the Picower Defendants ultimately settled.  After four years of litigation, the Second Circuit affirmed the dismissal of the complaints but ruled that Plaintiffs could seek to amend the complaints to assert a conspiracy or other non-derivative claim, and that this Court would determine

whether any such amended complaint stated a valid claim. Plaintiffs duly filed their motion for leave to amend in this Court on February 5, 2014, and submitted therewith a proposed second amended complaint conforming to the Second Circuit's mandate.

Defendants sought from Plaintiffs' counsel a 30-day extension of time to allow Picard to move in the Southern District of New York Bankruptcy Court to stay this Court from proceeding with Plaintiffs' second amended complaint. Chaitman Decl., Exh. 2. When Plaintiffs' counsel said she would agree to the extension so long as the Defendants provided to her information from which she could assure herself that the Defendants had not fraudulently transferred assets, the Defendants' counsel refused to provide such information. *Id*. at ¶ 8 - 9 and Exh. 2. Thus, Defendants and Picard are not only defying a Second Circuit decision, they are also acting to conceal fraudulent transfers intended to frustrate Plaintiffs from collecting on an anticipated judgment.

Given that Plaintiffs are seeking by this motion to determine the forum in which the merits of the underlying case will be heard—and the Second Circuit has already resolved that issue—to warrant injunctive relief, Plaintiffs need not satisfy the standards of Fed. R. Civ. P. 65; they have made the showing necessary based on the plain language of the Second Circuit decision and Defendants' threat, through the offices of Mr. Picard, to disregard it. *See In re Managed Care Litigation*, 236 F. Supp. 2d 1336, 1344 (S.D. Fla. 2002). However, even if R. 65 applied, the result would be no different.

Rule 65 provides that a party may move for issuance of a preliminary injunction upon notice to the adverse parties and a showing of irreparable injury, loss, or damage that would result but for the Court's issuance of the injunction upon the parties and those persons in active concert or participation with them. The factors recognized in this District for issuance

of a preliminary injunction are (1) substantial likelihood that the movant will prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) a showing that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *In re Managed Care Litigation*, 236 F.Supp.2d at 1343-44 (internal citations omitted). As shown below, all of these factors militate in favor of the relief Plaintiffs seek.

### A.  PLAINTIFFS ARE LIKELY TO PROCEED ON THE MERITS

For purposes of this motion, the merit issue is in what forum any motions relating to the proposed second amended complaint will be heard. *In re Managed Care Litigation*, supra at 1344. Here, there is no question that Plaintiffs are likely to succeed on the merits because the Second Circuit has already ruled that this Court should determine, in the first instance, whether the second amended complaint states a claim. Under R. 65(d)(2) (C), this Court has the power to enjoin not only the Defendants but Picard, who is acting in active concert and participation with the Defendants, from subverting the Second Circuit's mandate. *See, e.g., S.E.C. v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008*)* ("[T]he injunctive mandate of a federal court runs nationwide, and the issuing court has the authority to deal with defiance of its order regardless of where that defiance occurs"*); ClearOne Communications, Inc. v. Bowers*, 651 F.3d 1200, 1215-16 (10th Cir. 2011) (adopting the 7th Circuit's rationale in *Homa* regarding the district court's ability to enjoin and hold in contempt nonparties); *Estate of Kyle Thomas Brennan v. Church of Scientology Flag Service Organization, Inc.,* 2010 WL 4007591 (M.D. Fla. 2010) (upholding injunction enjoining a state court judge and clarifying that acting in

concert under R. 65 does not necessitate a showing of improper motive, only that the persons act toward the same end).

In *Clearone Communications, Inc. v. Chiang*, 2009 WL 2883010 (D.Utah 2009), the court held that non-parties "who reside outside the territorial jurisdiction of a district court are subject to that court's jurisdiction if, with actual notice of the court's order, they directly violate an order or actively aid and abet a party in violating the court's order. This is so despite the absence of other contacts with the forum." *See also Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985) (holding that parties located outside the forum may justifiably be bound by the district court where their activity threatens the subject matter of the court's order). As Defendants have admitted in their motion to stay (DE 29), their intent is to have Picard litigate in New York the precise issue that the Second Circuit directed be determined by this Court. Accordingly, Defendants and Picard should be enjoined from litigating this matter outside of the Southern District of Florida.

### B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THIS COURT DOES NOT ENJOIN THE DEFENDANTS FROM PROCEEDING IN THE NEW YORK FEDERAL COURTS

Plaintiffs will suffer irreparable harm if the Defendants are permitted to further litigate this matter in New York. This is true for numerous reasons. First, requiring Plaintiffs to litigate the validity of their proposed complaint in a forum other than that mandated by the Second Circuit deprives Plaintiffs of the very thing they fought for and won in the Second Circuit—the right to proceed in this forum. That is per se irreparable harm. See *In re Managed Care Litigation*, supra at 1345. Second, it would take another four years to go through the New York federal court system to resolve Defendants' threatened suit, during which time the Defendants will be able to continue to fraudulently transfer assets and insulate

earlier fraudulent transfers. *See* Chaitman Decl. ¶ 6. Moreover, litigation in New York will cause a delay of another four years before Plaintiffs will be able to litigate their claims on the merits, and critical evidence will likely be lost in the process. Thus, even if the Second Circuit dismisses the case Defendants and Picard intend to file – as it clearly will – the Plaintiffs will have suffered a denial of their right to litigate through a delay of eight years.

### C. THE POTENTIAL HARM TO PLAINTIFFS OUTWEIGHS ANY ALLEGED DAMAGE TO THE DEFENDANTS

Plaintiffs have litigated for four years to establish their right to sue the Picower Defendants. The Second Circuit has held that Plaintiffs have leave to amend their claims and bring them before this Court. Rather than comply with the Second Circuit's mandate, the Picower Defendants seek to delay reaching the merits for another four years. They have no legitimate interest in doing so and there is no right that the Defendants have that this Court should consider.

### D. THE INJUNCTION IS IN FURTHERANCE OF THE PUBLIC INTEREST

This Court has the power to issue the requested injunction in order to preserve its own jurisdiction and prevent a miscarriage of justice *In re Managed Care Litigation*, supra at 1345 (granting an anti-suit injunction in multi-district litigation). Here, the Defendants are acting in defiance of the Second Circuit's ruling. It is in the public interest to enforce the mandate of the Second Circuit and to penalize parties who act in contempt of federal court orders.

### II.    DEFENDANTS ARE ENTITLED TO TAKE THE DEPOSITIONS OF FREILICH AND MADOFF

Plaintiffs also seek leave of the Court, pursuant to Fed. R. Civ. P. 30(a)(2), to take the depositions of  April Freilich, the chief financial officer of the various Picower Defendants and (b) Bernard L. Madoff, Picower's co-conspirator. In view of Picower's death in 2009, these two

people have unique, personal knowledge of the details of the criminal conspiracy. Plaintiffs seek leave of the Court to examine these witnesses as soon as possible in order to avoid the possibility of their unavailability at a later date. Defendants will not suffer any prejudice by the taking of these non-party depositions at this time.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court (1) deny the motion to stay; (2) issue an order enjoining the Defendants and any persons acting in concert or participating with them pursuant to Fed. R. Civ. P. 65(d)(2)(C), including Trustee Irving Picard, from litigating the subject matter of this case outside of the United States District Court for the Southern District of Florida; (3) issue an order allowing Plaintiffs to take the depositions of April Freilich and Bernard L. Madoff; and for such other relief as this Court deems appropriate.

DATED this 19th day of February, 2014.

Respectfully submitted,

**BECKER & POLIAKOFF, P.A.**

*/s/ Allen M. Levine*
Florida Bar No. 315419
Becker and Poliakoff, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 987-7550
Facsimile: (954) 985-4176
ALevine@bplegal.com

and

**BECKER & POLIAKOFF LLP**

By: */s/ Helen Davis Chaitman*
45 Broadway
New York, New York 10006
Telephone: (212) 599-3322
Facsimile: (212) 557-0295
Email: hchaitman@bplegal.com
Email: jgorchkova@bplegal.com

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of February 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Allen M. Levine*_____
Allen M. Levine

**SERVICE LIST**

**Via CM/ECF and Email:**
Sanford L. Bohrer
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799
Sandy.Bohrer@hklaw.com

William D. Zabel, Esq.
Marcy Ressler Harris, Esq.
Schulte Roth & Zabel, LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 756-2351
Facsimile: (212) 593.5955
william.zabel@srz.com
marcy.harris@srz.com

**Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.:10-80252-CV-KLR

SUZANNE STONE MARSHALL, ADELE FOX,
MARSHA PESHKIN, and RUSSELL OASIS,
individually and on behalf of a class of similarly situated
Plaintiffs,

vs.

CAPITAL GROWTH COMPANY;
DECISIONS, INC.;
FAVORITE FUNDS;
JA PRIMARY LIMITED PARTNERSHIP;
JA SPECIAL LIMITED PARTNERSHIP;
JAB PARTNERSHIP;
JEMW PARTNERSHIP;
JF PARTNERSHIP;
JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP;
JMP LIMITED PARTNERSHIP;
JEFFRY M. PICOWER SPECIAL COMPANY;
JEFFRY M. PICOWER, P.C.;
THE PICOWER FOUNDATION;
THE PICOWER INSTITUTE OF MEDICAL
RESEARCH;
THE TRUST F/B/O GABRIELLE H. PICOWER;
BARBARA PICOWER, individually, and as Executor of
the Estate of Jeffry M. Picower, and as Trustee for the
Picower Foundation and for the Trust f/b/o Gabriel H.
Picower.

_____/

**DECLARATION OF**
**HELEN DAVIS CHAITMAN**

     I, Helen Davis Chaitman, declare pursuant to 28 U.S.C. § 1746 that the following

is true:

     1.     I am a partner with Becker & Poliakoff LLP, counsel for Plaintiffs, Suzanne

Stone Marshall, Adele Fox, Marsha Peshkin, and Russell Oasis, individually and on behalf

of a class of similarly situated Plaintiffs (hereafter "Plaintiffs").

2.      On February 5, 2014 Plaintiffs filed a motion for leave to amend the complaint (DE 28) in order to comply with the United States Court of Appeals for the Second Circuit's ruling in *Stone and Marshall v. Picard (In Re: Bernard L. Madoff Investment Securities LLC)*, Case No. 12-1645, Document 164-1 at 23 (2d Cir. 2014). A copy of the full opinion is attached as Exh. 1.

3.      On February 17, 2014, in an email exchange, Counsel for the Defendants asked me to agree to a 30-day extension of their time to move to enjoin prosecution of this action in the New York federal courts. I explained that I could not give them the extension without proof that the Defendants were not seeking to litigate solely for purposes of shielding fraudulent transfers. Defendants refused to provide that proof. *See* E-mail exchange between Helen Davis Chaitman and Sandy Bohrer, Counsel for Defendants, Feb. 17, 2014 (Exh. 2).

4.      On February 18, 2014, Defendants filed a Motion to Stay these proceedings expressly stating their intent to have Irving H. Picard, Trustee of Bernard L. Madoff Investment Securities LLC, litigate the merits of the Motion for Leave to Amend and the Second Amended Complaint in the Bankruptcy Court for the Southern District of New York. *See* DE 30.

5.      The Second Circuit's Opinion grants Plaintiffs leave to file an amended complaint and mandates that the merits of such an amendment would be determined in this Court. *See* Exh. 1 at 23, 28.

6.      If Defendants are permitted to stay this action and further delay these proceedings, Plaintiffs will suffer irreparable harm. The litigation through the New York courts took four years. Defendants are obviously seeking another four-year delay in

Plaintiffs' ability to move forward with their claims. This poses the very significant risk of a further dissipation of Defendants' assets, as demonstrated by Defendants' refusal to assure Plaintiffs on this point.

7. In addition, Plaintiffs need to preserve the testimony of two key co-conspirators, April Freilich and Bernard L. Madoff. We respectfully request that the Court enter an order allowing Plaintiffs to take those depositions now.

February 19, 2014

/s/ Helen Davis Chaitman

# Exhibit 1

12-1645 (L)
In Re: Bernard L. Madoff Investment Securities LLC

# In the
# United States Court of Appeals
# For the Second Circuit

————

AUGUST TERM 2012
Nos. 12-1645-bk(L), 12-1646-bk(CON), 12-1651-bk(CON),
12-1669-bk(CON), 12-1703-bk(CON)

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC,
*Debtor.*

SUSANNE STONE MARSHALL, individually and to the extent she
purports to represent a class of those similarly situated,
ADELE FOX, individually and to the extent she purports to represent
a class of those similarly situated,
*Claimants-Appellants,*

*v.*

IRVING H. PICARD, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC,
*Appellee,*

SECURITIES INVESTOR PROTECTION CORPORATION,
*Intervenor.*\*

————

_____

\* The Clerk of Court is directed to amend the official caption in this case to
conform to the listing of the parties above.

Appeal from the United States District Court
for the Southern District of New York.
No. 10 Civ. 7101 (JGK)—John G. Koeltl, *Judge.*

———————

ARGUED: DECEMBER 6, 2012
DECIDED: JANUARY 13, 2014

———————

Before: CABRANES, RAGGI, and CARNEY, *Circuit Judges.*

———————

Once again, we are asked to review the liquidation
proceedings involving Bernard L. Madoff Investment Securities LLC
("BLMIS")—the investment enterprise created by Bernard L. Madoff
to effect his now-infamous Ponzi scheme. These consolidated
appeals arise out of a permanent injunction entered by the United
States Bankruptcy Court for the Southern District of New York
(Burton R. Lifland, *Bankruptcy Judge*) and affirmed by the United
States District Court for the Southern District of New York (John G.
Koeltl, *Judge*), enjoining state law tort actions brought by appellants,
two of Madoff's defrauded "investors," against the estate of Jeffry
M. Picower, one of Madoff's alleged co-conspirators, and related
defendants (collectively, "Picower defendants"). We consider two
questions: (1) whether the Bankruptcy Court had the authority
under the Bankruptcy Code to enjoin appellants' actions as
"derivative" of adversary proceedings brought by the trustee for the
BLMIS estate, Irving Picard ("Picard" or the "Trustee"), against the
Picower defendants; and, if indeed authorized by the Bankruptcy
Code, (2) whether the exercise of such authority transgressed the
limitations imposed by Article III of the United States Constitution.

Case 09-01789-smb Doc 6385-3 Filed 04/21/14 Entered 04/21/14 09:41:20 Exhibit 3
Pg 24 of 52
Case 9:10-cv-80292-KLR Document 30-1 Entered on FLSD Docket 02/19/2013 Page 18 of 46

3                                                                    No. 12-1645-bk(L)

First, we conclude that appellants' complaints impermissibly attempt to "plead around" the Bankruptcy Court's injunction barring all claims "derivative" of those asserted by the Trustee. Although appellants seek damages that are not recoverable in an avoidance action, their complaints allege nothing more than steps necessary to effect the Picower defendants' fraudulent withdrawals of money from BLMIS, instead of "particularized" conduct directed at BLMIS customers. Second, we conclude that the Bankruptcy Court operated within the confines of Article III of the United States Constitution, as recently interpreted by the Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Accordingly, we hold that the Bankruptcy Court did not exceed the bounds of its authority under the Bankruptcy Code or run afoul of Article III.

Affirmed.

————

HELEN DAVIS CHAITMAN (Peter W. Smith, *on the brief*), Becker & Poliakoff, LLP, New York, NY, *for Claimant-Appellant Susanne Stone Marshall*.

LISA S. BLATT (Michael L. Bernstein, Charles A. Malloy, Isaac B. Rosenberg, *on the brief*), Arnold & Porter LLP, Washington, DC; (Richard L. Stone, *on the brief*), Palm Beach, FL; (James W. Beasley, Jr., Joseph G. Galardi, *on the brief*), Beasley Hauser Kramer & Galardi, P.A., West Palm Beach, FL, *for Claimant-Appellant Adele Fox*.

Case 09-01789-cgm    Doc 6385-3    Filed 04/21/14    Entered 04/21/14 04:41:30    Exhibit 3
Pg 25 of 52
Case 1:14-cv-08025-KPF    Document 34-1    Filed in FLSD Docket 02/19/2023    Page 19 of 46

4                                                              No. 12-1645-bk(L)

> DAVID J. SHEEHAN (Deborah H. Renner, Tracy L.
> Cole, Keith R. Murphy, Thomas D. Warren, *on the
> brief*), Baker & Hostetler LLP, New York, NY, *for
> Appellee.*
>
> Josephine Wang, General Counsel, Kevin H. Bell,
> Senior Associate General Counsel for Dispute
> Resolution, Lauren Attard, Assistant General
> Counsel, Securities Investor Protection
> Corporation, Washington, DC, *for Intervenor*.
>
> _____

JOSÉ A. CABRANES, *Circuit Judge*:

Once again, we are asked to review the liquidation proceedings involving Bernard L. Madoff Investment Securities LLC ("BLMIS")—the investment enterprise created by Bernard L. Madoff to effect his now-infamous Ponzi scheme. These consolidated appeals arise out of a permanent injunction entered by the United States Bankruptcy Court for the Southern District of New York (Burton R. Lifland, *Bankruptcy Judge*) and affirmed by the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*), enjoining state law tort actions asserted by appellants, two of Madoff's defrauded "investors," against the estate of Jeffry M. Picower, one of Madoff's alleged co-conspirators, and related defendants (collectively, "Picower defendants"). We consider two questions: (1) whether the Bankruptcy Court had the authority under the Bankruptcy Code to enjoin appellants' actions as "derivative" of adversary proceedings brought by the trustee for the BLMIS estate, Irving Picard ("Picard" or the "Trustee"), against the Picower defendants; and, if indeed authorized by the Bankruptcy Code, (2) whether the Bankruptcy Court transgressed the limitations

on its authority imposed by Article III of the United States
Constitution.

First, we conclude that appellants' complaints impermissibly
attempt to "plead around" the Bankruptcy Court's injunction
barring all claims "derivative" of those asserted by the Trustee.
Although appellants seek damages that are not recoverable in an
avoidance action, their complaints allege nothing more than steps
necessary to effect the Picower defendants' fraudulent withdrawals
of money from BLMIS, instead of "particularized" conduct directed
at BLMIS customers. Second, we conclude that the Bankruptcy
Court operated within the confines of Article III of the United States
Constitution, as recently interpreted by the Supreme Court in *Stern
v. Marshall*, 131 S. Ct. 2594 (2011). Accordingly, we hold that the
Bankruptcy Court did not exceed the bounds of its authority under
the Bankruptcy Code or run afoul of Article III.

## BACKGROUND

Following Madoff's arrest in December 2008, the Securities
and Exchange Commission filed a civil complaint against Madoff
and BLMIS in the United States District Court for the Southern
District of New York, alleging that they had operated a Ponzi
scheme through BLMIS's investment-advisor activities. On
December 15, 2008, upon an application filed by the Securities
Investment Protection Corporation ("SIPC"),[1] the District Court
entered a protective order placing BLMIS in liquidation under the
Securities Investor Protection Act ("SIPA"), appointing Picard as the

---

[1] The Securities Investor Protection Corporation is "a nonprofit corporation
consisting of registered broker-dealers and members of national securities exchanges that
supports a fund used to advance money to a SIPA trustee." *In re Bernard L. Madoff Inv.
Sec. LLC*, 654 F.3d 229, 232-33 (2d Cir. 2011).

Case 09-01789-cgm   Doc 6385-3   Filed 04/21/14   Entered 04/21/14 09:41:30   Exhibit 3
Pg 27 of 52
Case 15-1151, Document 164-1, 10/25/2016, ... Page 23 of 46

6                                                             No. 12-1645-bk(L)

Trustee, and referring the case to the United States Bankruptcy Court for the Southern District of New York.[2]  *See* Order, *SEC v. Bernard L. Madoff and Bernard L. Madoff Inv. Sec. LLC*, No. 08 Civ. 10791 (LLS) (S.D.N.Y. Dec. 15, 2008), ECF No. 4.

## A

SIPA establishes procedures for the expeditious and orderly liquidation of failed broker-dealers, and provides special protections to their customers.  A trustee's primary duty under SIPA is to liquidate the broker-dealer and, in so doing, satisfy claims made by or on behalf of the broker-dealer's customers for cash balances.  *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 233 (2d Cir. 2011).  In a SIPA liquidation, a fund of "customer property" is established—consisting of cash and securities held by the broker-dealer for the account of a customer, or proceeds therefrom, 15 U.S.C. § 78lll(4)—for priority distribution exclusively among customers, *id.* § 78fff-2(c)(1).  The Trustee allocates the customer property so that customers "share ratably in such customer property . . . to the extent of their respective net equities."  *Id.* § 78fff-2(c)(1)(B).

In order to calculate a customer's "net equity," Picard chose the "net investment method," under which the amount owed to each customer by BLMIS was "the amount of cash deposited by the customer into his BLMIS customer account less any amounts already withdrawn by him."  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard L. Madoff Inv. Sec. LLC*), 424 B.R. 122, 125 (Bankr. S.D.N.Y. 2010).  In other words, BLMIS customers had net equity only to the extent that their total cash deposits exceeded their total cash withdrawals.  *Id.* at 142.  On March 1, 2010, the

---

[2] In April 2009, Madoff was forced into an involuntary Chapter 7 bankruptcy proceeding, which was later consolidated with BLMIS's SIPA liquidation.

Case 09-01789-cgm   Doc 6385-3   Filed 04/21/14   Entered 04/21/14 09:41:30   Exhibit 3
Pg 28 of 52

Bankruptcy Court entered an order approving the "net investment method" (the "Net Equity Decision"), which we subsequently affirmed.  *See id.* at 135, 140, *aff'd*, 654 F.3d 229 (2d Cir. 2011).

Following these proceedings, appellants each filed claims in the liquidation proceeding against the BLMIS estate.  Picard allowed appellant Marshall's claim for $30,000, but he denied two claims filed by Fox on the grounds that she was a so-called "net winner," meaning that she had already withdrawn more than she deposited.

## B

On May 12, 2009, Picard commenced an adversary proceeding against the Picower defendants in the United States Bankruptcy Court for the Southern District of New York (the "New York action"), alleging that they had made hundreds of improper withdrawals from BLMIS totaling $6.7 billion.[3]  The complaint asserted claims for fraudulent transfers, avoidable preferences, and turnover under the Bankruptcy Code and New York's Uniform Fraudulent Conveyance Act, N.Y. Debt. & Cred. Law §§ 270-281.

While settlement talks were ongoing in the New York action, appellants filed complaints in the United States District Court for the Southern District of Florida on behalf of putative classes allegedly adversely affected by the Trustee's method for calculating net equity (the "Florida actions").  Marshall purported to represent the interests of BLMIS account holders who had not filed SIPA claims with the Trustee or whose SIPA claims were disallowed either in whole or in part.  In her parallel suit, Fox allegedly represented the interests of BLMIS customers designated "net winners" and thus not

---

[3] This figure was later increased to $7.2 billion to reflect additional withdrawals.

Case 9:10-cv-80252-KLR  Document 30-1  Entered on FLSD Docket 02/19/2013  Page 23 of 46

entitled to any compensation in the SIPA litigation. Their complaints asserted claims for civil conspiracy, conversion, and conspiracy to violate the Florida Civil Remedies for Criminal Practices Act, *see* Fla. Stat. § 772.101 *et seq.*

On May 3, 2010, the Bankruptcy Court in New York granted the Trustee's application for a preliminary injunction, thereby enjoining the Florida actions. The Court held that the Florida actions violated the District Court's December 15, 2008 Protective Order, usurped causes of action belonging to the estate in violation of the Bankruptcy Code's automatic stay provision, *see* 11 U.S.C. § 362(a),[4] and undermined the Bankruptcy Court's jurisdiction over administration of the BLMIS estate, *see* 11 U.S.C. § 105(a).[5] *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC* (*In re Bernard L. Madoff Inv. Sec. LLC*), 429 B.R. 423, 430, 433-37 (Bankr. S.D.N.Y. 2010).

## C

On December 17, 2010, the Trustee and the Picower defendants entered into a settlement agreement (the "Settlement Agreement"), whereby the Picower defendants agreed to return $5 billion to the BLMIS estate, out of the proceeds of a $7.2 billion civil forfeiture they simultaneously agreed to make to the U.S. Attorney's

---

[4] The relevant provision of 11 U.S.C. § 362(a) states that "an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 [(SIPA)], operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(3).

[5] Under 11 U.S.C. § 105(a), the Bankruptcy Court has authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Case 98-1xv-02028-KLP · Document 30-1 · Entered on FLSD Docket 02/19/2013 · Page 24 of 46

Office.[6]  In return, the Trustee agreed to release any other claims he might have had against the Picower defendants relating to BLMIS. The Trustee further agreed as part of the settlement to seek a narrowly-tailored permanent injunction from the Bankruptcy Court barring any BLMIS customer from suing the Picower defendants for certain claims arising from or related to Madoff's Ponzi scheme.

On December 17, 2010, the Trustee filed his motion for approval of the Settlement Agreement and for a permanent injunction pursuant to Rules 2002 and 9019 of the Bankruptcy Rules and section 105(a) of the Bankruptcy Code.  SIPC and the government filed a statement in support of the Trustee's motion.  On January 13, 2011, the Bankruptcy Court approved the Settlement Agreement, and issued the permanent injunction as follows:

> [A]ny BLMIS customer or creditor of the BLMIS estate who filed or could have filed a claim in the liquidation, anyone acting on their behalf or in concert or participation with them, or anyone whose claim in any way arises from or is related to BLMIS or the Madoff

---

[6] Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense," is subject to forfeiture to the government.  "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7)(A) to include any offense listed under 18 U.S.C. § 1961(1), which in turn lists, among other offenses, violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and "fraud in the sale of securities."  In a complaint dated December 17, 2010, the government commenced a civil action pursuant to these statutes, seeking forfeiture of $7.2 million "traceable to the Ponzi scheme orchestrated by Bernard L. Madoff ('Madoff') that was paid to Jeffry M. Picower."  Joint App'x 3238.  In its complaint, the government stated its intention, upon the entry of a final order of forfeiture to the government, "to request that the funds be distributed to victims of the fraud," *id.* at 3239, pursuant to 21 U.S.C. § 853(i)(1), which provides that the "Attorney General is authorized to . . . restore forfeited property to victims."

> Ponzi scheme, is hereby permanently enjoined from
> asserting any claim against the Picower BLMIS
> Accounts or the Picower Releasees *that is duplicative or
> derivative of the claims brought by the Trustee,* or which
> could have been brought by the Trustee against the
> Picower BLMIS Accounts or the Picower Releasees . . . .

Special App'x 31 (emphasis supplied). At the January 13, 2011
motion hearing, the Bankruptcy Court made clear that, under its
interpretation of the injunction, the claims in appellants' Florida
actions were barred as duplicative and derivative of those asserted
in the Trustee's complaint. *See* Joint App'x 309 (Bankruptcy Court
stating that, "[Fox and Marshall's claims] are subsumed in the prior
injunctive paragraph").

On March 26, 2012, the District Court, on appeal, affirmed the
January 13 Order, holding that the settlement was fair and
reasonable, and that the issuance of the permanent injunction was a
proper exercise of the Bankruptcy Court's authority under section
105(a). *See Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 491
(S.D.N.Y. 2012). The Court also agreed that the claims asserted in
appellants' Florida actions were "duplicative or derivative" of those
claims that could have been or were asserted by the Trustee in the
New York action and, accordingly, were barred by the terms of the
injunction. *Id.* at 489.

This timely appeal followed.

## DISCUSSION

The relevant standards of review are familiar ones. "On
appeal from the district court's review of a bankruptcy court

decision, we review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law *de novo*." *Swimelar v. Baker (In re Baker)*, 604 F.3d 727, 729 (2d Cir. 2010) (internal quotations omitted). As relevant here, "[t]he standard of review for the grant of a permanent injunction, including an anti-suit injunction, is abuse of discretion." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 651 (2d Cir. 2004); *see also Sims v. Blot (In re Sims)*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining the term of art "abuse of discretion" as a ruling based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence, or . . . a decision that cannot be located within the range of permissible decisions." (internal quotations and citations omitted)).

At the January 13, 2011 hearing, the Bankruptcy Court stated explicitly that the Florida actions were among the claims enjoined by the permanent injunction.[7] Accordingly, the principal issue before us is whether the injunction, as applied to bar the Florida actions, was a proper exercise of the Bankruptcy Court's jurisdiction over non-debtor third-parties. Appellants contend that the injunction exceeded the Bankruptcy Court's powers under the Bankruptcy Code and under Article III of the United States Constitution. We consider these contentions in turn.

---

[7] We need not be detained by the fact that the injunction does not expressly refer to the Florida actions because it broadly enjoins "any claim . . . that is duplicative or derivative of the claims brought by the Trustee." Special App'x 31. The scope of an injunction "turns upon the intent and effect of the bankruptcy court's" order, and, thus, "[a] bankruptcy court's interpretation of its own order warrants customary appellate deference." *Casse v. Key Bank Nat'l Ass'n (In re Casse),* 198 F.3d 327, 333 (2d Cir. 1999) (internal quotation omitted). At the January 13, 2011 hearing, the Court made clear that appellants' actions "are subsumed in the . . . injunctive paragraph." Joint App'x 309. Accordingly, the question presented is whether the injunction, *as applied by the Bankruptcy Court to bar appellants' claims,* was a proper exercise of its authority, or whether appellants' actions assert independent claims beyond the reach of the Bankruptcy Court.

## A.

Only recently we reaffirmed that "the touchstone for bankruptcy jurisdiction [over a non-debtor's claim] remains whether its outcome might have any 'conceivable effect' on the bankruptcy estate." *Quigley Co. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45, 57 (2d Cir. 2012) (citation and internal quotation omitted). In a SIPA liquidation, the bankruptcy estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).[8] Such interests include "causes of action possessed by the debtor at the time of filing," *Jackson v. Novak (In re Jackson)*, 593 F.3d 171, 176 (2d Cir. 2010), and "[a]ny interest in property that the trustee recovers" under specified Bankruptcy Code provisions, 11 U.S.C. § 541(a)(3). "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [the bankruptcy estate]." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (brackets and citation omitted).

A claim based on rights "derivative" of, or "derived" from, the debtor's typically involves property of the estate. *See In re Quigley*, 676 F.3d at 57 ("[W]e have treated whether a suit seeks to impose derivative liability as a helpful way to assess whether it has the potential to affect the bankruptcy *res . . . .*"). By contrast, a

---

[8] Although a SIPA liquidation is not a traditional bankruptcy, a SIPA trustee's authority to bring claims in administering a SIPA liquidation is coextensive with the powers of a Title 11 bankruptcy trustee. *See* 15 U.S.C. § 78fff-1(a) (SIPA trustee "vested with the same powers and title with respect to the debtor and the property of the debtor, including the same rights to avoid preferences, as a trustee in a case under Title 11"); *id.* § 78fff(b) (SIPA liquidation proceedings "shall be conducted in accordance with, and as though it were being conducted under . . . Title 11"). Accordingly, we rely on statutes and case law relating to Title 11 bankruptcy actions.

Case 09-01789-cgm  Doc 6385-3  Filed 04/21/14  Entered 04/21/14 09:41:30  Exhibit 3
Pg 34 of 52
Case 1:10-cv-80291-KLR  Document 184  Entered on FLSD Docket 02/13/2013  Page 28 of 46

13                                                      No. 12-1645-bk(L)

bankruptcy court generally has limited authority to approve releases
of a non-debtor's independent claims.  *See Deutsche Bank AG v.
Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),*
416 F.3d 136, 141-43 (2d Cir. 2005).  As one federal appeals court has
explained:

> The point is simply that the trustee is confined to
> enforcing entitlements of the [debtor].  He has no right
> to enforce entitlements of a creditor.  He represents the
> unsecured creditors of the [debtor]; and in that sense
> when he is suing on behalf of the [debtor] he is really
> suing on behalf of the creditors of the [debtor].  But
> there is a difference between a creditor's interests in the
> claims of the [debtor] against a third party, which are
> enforced by the trustee, and the creditor's own direct—
> not derivative—claim against the third party, which
> only the creditor . . . can enforce.

*Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994).  Put another
way, "when creditors . . . have a claim for injury that is
particularized as to them, they are exclusively entitled to pursue that
claim, and the bankruptcy trustee is precluded from doing so."
*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995).

In light of these principles, we note that the parties have not
objected, nor could they have objected, to the plain text of the
injunction.  The injunction, by its own terms, is limited to third-party
claims based on derivative or duplicative liability or claims that
could have been brought by the Trustee against the Picower
releasees.  *See* Special App'x 31.  Insofar as such claims are truly
duplicative or derivative, they undoubtedly have an effect on the

bankruptcy estate and, thus, are subject to the Bankruptcy Court's jurisdiction.  *See In re Quigley*, 676 F.3d at 57.

We have defined so-called "derivative claims" in the context of bankruptcy as ones that "arise[] from harm done to the estate" and that "seek[] relief against third parties that pushed the debtor into bankruptcy."  *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC) ("JPMorgan Chase")*, 721 F.3d 54, 70 (2d Cir. 2013).  In assessing whether a claim is derivative, we inquire into the factual origins of the injury and, more importantly, into the nature of the legal claims asserted.  *See Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.) ("Manville III")*, 517 F.3d 52, 67 (2d Cir. 2008).  While a derivative injury is based upon "a secondary effect from harm done to [the debtor]," an injury is said to be "particularized" when it can be "directly traced to [the third party's] conduct." *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704 (2d Cir. 1989).

Most of this Circuit's jurisprudence on a bankruptcy court's authority to enjoin derivative claims in liquidation proceedings stems from what has been aptly characterized as "the long saga of litigation arising from the bankruptcy of the Johns-Manville Corporation ('Manville'), a major national asbestos concern."  *In re Quigley*, 676 F.3d at 55.   A brief comparison of two cases from that saga helps illustrate the principles just described.

In *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.) ("Manville I")*, 837 F.2d 89 (2d Cir. 1988), plaintiff, a distributor of Manville's asbestos products, alleged that it was coinsured under Manville's insurance policies.  *Id.* at 90.  As part of Manville's settlement with its insurers, the bankruptcy court entered an injunction relieving the insurers of all obligations related to the

Case 08-01789-cgm   Doc 6385-3   Filed 04/21/14   Entered 04/21/14 09:41:30   Exhibit 3
Pg 36 of 52

disputed policies and channeling all insurance claims to the
proceeds of the settlement.  *Id.*  Plaintiff challenged the court's
authority to issue such an order, asserting that its contract-based
claims against the insurers were independent from Manville's.  We
rejected this contention, asserting that

> [plaintiff's] rights as an insured vendor are completely
> derivative of Manville's rights as the primary insured.
> Such derivative rights are no different in this respect
> from those of the asbestos victims who have already
> been barred from asserting direct actions against the
> insurers.[9]    [Plaintiff] asserts contractual obligations
> whereas the direct action plaintiffs' claims sounded in
> tort; nevertheless, in both instances, third parties seek to
> collect out of the proceeds of Manville's insurance
> policies on the basis of Manville's conduct. In both
> cases, plaintiffs' claims are inseparable from Manville's
> own insurance coverage and are consequently well
> within the Bankruptcy Court's jurisdiction over
> Manville's assets.

*Id.* at 92-93 (citation omitted).  In other words, the claims of both the
plaintiff and the asbestos victims were "derivative" of Manville's—
whether or not they sounded in tort or contract—because they all
sought compensation for the same type of asbestos-related injuries
caused by Manville's products.  Accordingly, we held that the

---

[9] The "direct actions" referred to here concerned tort claims brought by asbestos
workers against insurers under a Louisiana statute that afforded injured persons a cause
of action against the insurers when the plaintiff has an independent cause of action
against the insured.  In *In re Davis*, 730 F.2d 176 (5th Cir. 1984), the Fifth Circuit held that
the bankruptcy court had authority to stay such actions.  *Id.* at 183-84.

bankruptcy court had the authority to funnel all claims against the policies to a single proceeding in the bankruptcy court. *Id.* at 93.

In *Manville III*, however, we held that plaintiffs' claims against Travelers Insurance were independent of Manville's.[10]  Plaintiffs alleged in this instance that Travelers had acquired knowledge regarding the dangers of asbestos, but "influenced Manville's purported failure to disclose its knowledge of asbestos hazards." 517 F.3d at 58 (alteration omitted).  In the course of the proceedings, the bankruptcy court entered a "Clarifying Order" specifying that these lawsuits were barred by the prior injunction. *Id.* at 59.  We held, however, that such claims were non-derivative.  Whereas the *Manville I* plaintiffs sought "indemnification or compensation for the tortious wrongs of Manville," the *Manville III* plaintiffs sought "to recover directly from Travelers . . . for [Travelers'] own alleged misconduct," namely, violations under state law of "an independent legal duty in its dealing with plaintiffs." *Id.* at 63; *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 143 & n.2 (2009).

We recently had occasion to apply the distinction drawn in *Manville III* in another case arising out of the SIPA-liquidation of BLMIS.  In *JPMorgan Chase*, the Trustee sued various financial institutions, alleging that they had aided and abetted Madoff's fraud. 721 F.3d at 59.  In holding that the Trustee lacked standing to bring such claims on behalf of BLMIS customers, we noted that the claims were not derivative: they were brought "on behalf of thousands of customers against third-party financial institutions for

---

[10]  *Manville III* was reversed by the Supreme Court on narrow procedural grounds, *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009); however, in *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)* ("*Manville IV*"), 600 F.3d 135 (2d Cir. 2010), we reaffirmed the jurisdictional analysis, *see id.* at 152 (clarifying that the Supreme Court "did not contradict the conclusion of [*Manville III*'s] jurisdictional inquiry").

Case 9:10-cv-80292-KLR   Document 18-1   Entered on FLSD Docket 02/19/2013   Page 32 of 46

their handling of individual investments made on various dates in varying amounts." *Id.* at 71.

In the following section, we explain why the Florida actions are predicated upon secondary harms flowing from BLMIS—as in *Manville I*—rather than upon a particularized injury traceable to the Picower defendants' conduct—as in *Manville III* and *JPMorgan Chase*.

**B**

**(1)**

The Trustee's complaint in this case asserts fraudulent conveyance claims against the Picower defendants under the Bankruptcy Code and New York law.[11] It alleges that the Picower defendants withdrew billions of dollars from their BLMIS accounts—funds belonging to BLMIS's defrauded customers—and, because the Picower defendants knew or should have known that they were profiting from such fraud, the withdrawals were thus avoidable. Although state law typically provides creditors with the right to assert fraudulent conveyance claims,

---

[11] The Bankruptcy Code authorizes the Trustee to assert claims for the recovery of so-called "fraudulent transfers" against "the initial transferee of such transfer[s]." 11 U.S.C. § 550(a)(1). A transfer is deemed to be fraudulent—and therefore "avoidable" under the Bankruptcy Code—if the transfer was made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted," *id.* § 548(a)(1)(A), or if the debtor "received less than a reasonably equivalent value in exchange for such transfer," *id.* § 548(a)(1)(B). A recipient of a transfer is entitled to a "good faith" defense upon a showing that it took the transfer "for value" and "in good faith." *Id.* § 548(c). The presence of "good faith" depends upon, *inter alia,* "whether the transferee had information that put it on inquiry notice that the transferor was insolvent or that the transfer might be made with a fraudulent purpose." *In re Bayou Grp., LLC*, 439 B.R. 284, 310 (S.D.N.Y. 2010).

Case 09-01789-cgm   Doc 6385-3   Filed 04/21/14   Entered 04/21/14 04:41:30   Exhibit 3
Pg 39 of 52

> [a] typical fraudulent transfer claim is perhaps the paradigmatic example of a claim that is "general" to all creditors . . . . It is normally the debtor's creditors, and not the debtor itself, that have the right to assert a fraudulent transfer claim outside of bankruptcy, but in bankruptcy such a claim is usually brought by the trustee, for the benefit of all creditors.  This is because the claim is really seeking to recover property of the estate.

*Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 589 n.9 (5th Cir. 2008).

Appellants Marshall and Fox argue that their complaints assert non-derivative conspiracy-based claims predicated upon the Picower defendants' direct participation in the theft of BLMIS customers' funds.  However, the allegations in appellants' respective Florida complaints echo those made by the Trustee.  With regard to the Picower defendants' knowledge of the fraud, each complaint alleges: (1) that the Picower defendants' account supposedly achieved implausibly high rates of return, *see* Joint App'x 707, 1358, 2584; (2) that, unlike other investors, the Picower defendants were sufficiently close to Madoff to be privy to BLMIS' trading records, *see id.* at 722, 1349, 2584; and (3) that the Picower defendants knew of fictitious and backdated trading activity in their accounts, *see id.* at 724, 1359, 2593.  *See also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 477 B.R. 351, 358-78 (Bankr. S.D.N.Y. 2012) (chart comparing allegations in Trustee's complaint with those in the Florida complaints, appended as Exhibit A to the opinion of the Bankruptcy Court).  In fact, the Florida complaints cite the factual allegations contained in the Trustee's complaint in New York's bankruptcy court multiples times in support of their claims.

Appellants rightly note that overlapping allegations may give rise to a multiplicity of claims.  As the Fifth Circuit has explained, "there is nothing illogical or contradictory about saying that [a third-party defendant] might have inflicted direct injuries on both the [estate's creditors] and [the debtor estate] during the course of dealings that form the backdrop of both sets of claims."  *In re Seven Seas*, 522 F.3d at 587; *see, e.g., Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988) (finding that a creditor had "standing to bring a RICO claim, regardless of the fact that a bankrupt [debtor] might also have suffered an identical injury" because "[creditor] does not seek recovery for injuries suffered by [debtor] but for injuries it suffered directly").

We are nonetheless wary of placing too much significance on the labels appellants attach to their complaints, lest they circumvent the Net Equity Decision by "pleading around" the automatic stay and permanent injunction.  *Cf., e.g., Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 200 (2d Cir. 1999) ("In an effort to plead around the proviso [preserving immunity for torts of misrepresentation] the complaint is cast in terms of the intentional infliction of emotional distress.  However cast, the wrongful acts alleged to have caused the injury are misrepresentations . . . .").  The only allegations of the Picower defendants' direct involvement in the Ponzi scheme are that they prepared false documentation, recorded and withdrew fictional profits, and filed false statements in connection with their tax returns.  *See* Joint App'x 1366 (Marshall Complaint); *id.* at 2600-01 (Fox Complaint).  Appellants characterize these allegations as "the Picower Defendants work[ing] hand-in-glove with Madoff and BLMIS to perpetrate the Ponzi scheme."  Fox Br. 24; *see also* Marshall Br. 31.  But, as Judge Richard J. Sullivan recently explained in a case predicated upon the same alleged conspiratorial acts,

Case 09-01789-cgm   Doc 6385-2   Filed 04/21/14   Entered 04/21/14 09:41:20   Exhibit 3
Case 09-cv-80202-KLR   Document 18-1   Entered on FLSD Docket 02/18/2043   Page 33 of 46
Pg 41 of 52

20                                                                    No. 12-1645-bk(L)

> [t]he . . . Complaints plead nothing more than that the
> Picower Defendants traded on their *own* BLMIS
> accounts, knowing that such "trades" were fraudulent,
> and then withdrew the "proceeds" of such falsified
> transactions from BLMIS.  All the "book entries" and
> "fraudulent trading records" that the Complaints allege
> refer to nothing more than the fictitious records BLMIS
> made, *for the Picower Defendants*, to document these
> fictitious transactions.  In other words, the Complaints
> plead nothing more than that the Picower Defendants
> fraudulently withdrew money from BLMIS.

*A & G Goldman Partnership v. Picard (In re Bernard L. Madoff Inv. Sec.,
LLC)*, No. 12 CIV. 6109 RJS, 2013 WL 5511027, at *7 (S.D.N.Y. Sept.
30, 2013) (citation omitted).

**(2)**

The case law upon which appellants rely to argue that they
have alleged "particularized" injuries directly traceable to the
Picower defendants is inapposite.  Appellant Marshall draws our
attention to *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037 (2d Cir.
1986), in which we held that a plaintiff's cause of action for
conspiracy to defraud "was not merely an artful repleading of
[fraudulent conveyance] claims." *Id.* at 1043.  But in *Cumberland Oil*,
the plaintiff did not assert merely the "right . . . to recover
misappropriated assets," but "alleged with particularity that
misrepresentations of facts [about debtor's financial health] were
made by [defendant] in furtherance of a conspiracy to defraud." *Id.*
at 1042-43.  The complaints here, however, do not allege that the
Picower defendants made any such misrepresentations to BLMIS

Case 09-01789-cgm   Doc 6385-3   Filed 04/21/14   Entered 04/21/14 09:41:30   Exhibit 3
Pg 42 of 52
Case 1:10-cv-80291-KLR   Document 18-1   Entered on FLSD Docket 02/18/2043   Page 36 of 46

customers.  Rather, as in *Manville I*, appellants' alleged injuries are inseparable from, and predicated upon, a legal injury to the estate—namely, the Picower defendants' fraudulent withdrawals from their BLMIS accounts of what turned out be other BLMIS customers' funds.

Appellant Fox relies on our decision in *Hirsch v. Arthur Anderson & Co.*, and the Fifth Circuit's in *In re Seven Seas*, to argue that her claims allege "particularized" injuries traceable to the Picower defendants.  In *Hirsch*, the Trustee sought to sue Arthur Anderson & Co. for helping perpetuate the debtors' Ponzi scheme by distributing misleading private placement memoranda to investors.  72 F.3d at 1087-89.  And in *In re Seven Seas*, bondholders alleged that a secured creditor had knowingly used misleading financial information to induce them to purchase unsecured notes issued by the debtor.  522 F.3d at 578-81.  In both cases, the Courts held that the claims alleged an injury that was direct, and not merely derivative, of an injury to the debtor.  *See Hirsch*, 72 F.3d at 1094 (holding that the claims "are the property of those investors, and may be asserted only by them and to the exclusion of [the Trustee]"); *In re Seven Seas*, 522 F.3d at 586 (holding that the claims alleged "a direct injury . . . that was independent of any injury to [the debtor]").

As just noted, however, appellants have not alleged that the Picower defendants took any such "particularized" actions aimed at BLMIS customers.  They have not alleged, for instance, that the Picower defendants made any misrepresentations to appellants. Appellants respond that their respective complaints allege "that the Picower Defendants' wrongful conduct ensured the fraud's success *by inducing [them] and other customers to invest* (and remain invested) in BLMIS." Fox Br. 25 (emphasis supplied); *see also* Marshall Br. 31. We do not think that the complaints can reasonably be read in this

Case 09-01789-cgm   Doc 6385-3   Filed 04/21/14   Entered 04/21/14 04:41:30   Exhibit 3
Pg 43 of 52

way.  Allegations that the Picower defendants knowingly reaped the benefits of Madoff's scheme through fraudulent withdrawals, and effected such withdrawals through backdating trades and recording fictional profits, does not amount to a particularized claim that they directly participated in defrauding BLMIS customers by inducing them to invest.

### (3)

Appellants' final contention is that their complaints are particularized and non-derivative because of the nature of the relief sought.  Whereas the Trustee sought the recovery of assets BLMIS transferred to the Picower defendants, appellants seek damages for (1) the loss on the reasonable return on their investments, (2) taxes paid on fictitious gains, and (3) monetary losses should they be sued by the Trustee for the recovery of their own withdrawals from BLMIS—none of which is recoverable in an avoidance action under the Bankruptcy Code.  *See* 11 U.S.C. § 550(a) ("[T]he trustee may recover, for the benefit of the estate, the property transferred, or . . . the value of such property . . . .").  Yet appellants' claimed damages, also suffered by all BLMIS customers, still remain mere secondary harms flowing from the Picower defendants' fraudulent withdrawals and the resulting depletion of BLMIS funds.  *Cf. Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 491 B.R. 27, 36 (S.D.N.Y. 2013) ("[Investors'] actions relate to [investment manager's] fraud on his own investors—not Madoff's fraud at the expense of his customers—and therefore are independent claims based on separate facts, theories, and duties than the Trustee's fraudulent transfer claims against [investment manager].").

We conclude, therefore, that appellants purported conspiracy-based claims against the Picower defendants are "derivative" of

those asserted by the Trustee in his fraudulent conveyance action, and, therefore, the Bankruptcy Court was authorized to enjoin those actions.[12]

We note that we affirm without prejudice to appellants seeking leave to amend their complaints. There is conceivably some particularized conspiracy claim appellants could assert that would not be derivative of those asserted by the Trustee. That question, however, is not properly before us, and is a question in the first instance for the United States District Court for the Southern District of Florida.

## C

We turn now to whether the Bankruptcy Court, an Article I court, exceeded the jurisdictional limits established by Article III of the United States Constitution. Both appellant Fox and Marshall's arguments in this regard are premised upon the Supreme Court's recent holding in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *Stern*, a

---

[12] The Bankruptcy Court also articulated alternative bases for its injunction. In *In re Metromedia Fiber Network, Inc.*, we held that a bankruptcy court could permit the nonconsensual release of creditors' claims against third parties upon a finding of "truly unusual circumstances" that "render the release terms important to [the] success of the [underlying bankruptcy reorganization plan]." 416 F.3d at 143. The District Court found such circumstances present in the instant case on the basis of the size of the estate's recovery and on the importance of the injunction to prevent those who are not SIPA payees under the Net Equity Decision from circumventing that decision and undermining the liquidation plan. *See In re Madoff*, 848 F. Supp. 2d at 490. Because we hold that appellants' claims are property of the estate in that they are "derivative" of the Trustee's fraudulent conveyance action, we do not address whether this case satisfies the stringent standard laid out in *Metromedia* for injunctive relief.

In addition, because we find that appellants' claims are derivative of the Trustee's claims for fraudulent withdrawals, the fact that the Trustee lacks standing to bring *bona fide* conspiracy claims on behalf of BLMIS customers under *JPMorgan Chase* is irrelevant.

widow filed a state law counterclaim in her Chapter 11 bankruptcy case to recover for her stepson's alleged tortious interference with an inheritance gift she expected from her deceased husband.  *Id.* at 2601.  The Court observed that the Constitution generally reserves the power to adjudicate such common law claims to courts established under Article III.  *Id.* at 2608-09.  One exception to this principle is a category of cases involving "public rights."[13]  *Id.* at 2613.  The Court held, however, that the counterclaim at issue did not fall within any of the formulations of that exception because it neither derived from, nor was dependent upon, any agency regulatory regime, and was not limited to a particularized area of the law.  *Id.* at 2614-15.  Accordingly, the Court invalidated the portion of the Bankruptcy Code authorizing bankruptcy judges to enter final judgments on claims and counterclaims, such as the widow's, which are exclusively based upon some legal right guaranteed by state law.  *Id.* at 2620.

    Appellant Fox argues that, in light of *Stern*, "the [bankruptcy] court improperly wielded powers reserved for Article III courts by permanently enjoining her claims."  Fox Br. 53.  According to Fox, her state law conspiracy claims are akin to the widow's tortious interference counterclaims in that they are "in no way derived from or dependent upon bankruptcy law," but instead "exist[ed] without regard to any bankruptcy proceeding."  *Stern*, 131 S. Ct. at 2618.  As noted above, however, appellants' purported tort claims are, in essence, disguised fraudulent transfer actions, which belong

---

[13] Although the contours of this exception have not been precisely delineated, the Supreme Court broadly defined cases involving a "public right" as those "in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority.  In other words, . . . what makes a right 'public' rather than private is that the right is integrally related to particular federal government action."  *Stern*, 131 S. Ct. at 2613 (2011).

exclusively to the Trustee.  Accordingly, appellants' claims are distinct from those in *Stern* held to be beyond the powers of a bankruptcy court.

Appellant Marshall, in turn, argues that, in light of *Stern*, the Bankruptcy Court lacked jurisdiction to enter a final judgment on the *Trustee's* fraudulent transfer action against the Picower defendants.  In *Stern*, the Supreme Court drew an analogy between the widow's tortious interference claim and a trustee's fraudulent conveyance action against a noncreditor, *id.* at 2614, which, under *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), does not fall within the "public rights" exception.  *See Stern*, 131 S. Ct. at 2614 ("[The debtor's] counterclaim—like the fraudulent conveyance claim at issue in *Granfinanciera*—does not fall within any of the varied formulations of the public rights exception in this Court's cases.").  As the Court explained in *Granfinanciera*:

> There can be little doubt that fraudulent conveyance actions by bankruptcy trustees . . . are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.  They therefore appear matters of private rather than public right.

*Granfinanciera*, 492 U.S. at 56 (citation omitted).  Therefore, according to Marshall, the Bankruptcy Court did not have authority to enter final judgment on the Trustee's fraudulent transfer claims against the Picower defendants, much less to issue the accompanying order enjoining all duplicative and derivative actions.

Case 09-01789-smb   Doc 6385-3   Filed 04/21/14   Entered 04/21/14 09:41:30   Exhibit 3
Pg 47 of 52

Yet *Granfinanciera* held that a fraudulent conveyance claim is a matter of private right when asserted against "*a person who has not submitted a claim against a bankruptcy estate.*"  *Id.* at 36 (emphasis supplied).  The Court reaffirmed this limitation of *Granfinanciera*'s holding in *Stern*.  *See Stern*, 131 S. Ct. at 2617 ("[A] preferential transfer claim can be heard in bankruptcy when the allegedly favored creditor has filed a claim, because *then* the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship." (internal quotations omitted; brackets in original)).  In this case, unlike in *Granfinanciera*, the Picower defendants filed a proof of claim against the BLMIS estate.  In order to rule on that claim, the Bankruptcy Court was required to first resolve the fraudulent transfer issue.  *Cf. id.* at 2617 (noting that the "factual and legal determinations" the bankruptcy court was required to make "were not disposed of in passing on objections to [creditor's] proof of claim" (internal quotations omitted)).[14]

Accordingly, the Bankruptcy Court's authority under the Bankruptcy Code to approve the settlement between the Trustee and the Picower defendants and to permanently enjoin appellants' disguised fraudulent transfer claims does not run afoul of Article III of the United States Constitution.

---

[14] In addition, the Supreme Court has recently granted a petition for a writ of certiorari, in the wake of *Stern*, concerning the scope of a bankruptcy court's authority to adjudicate fraudulent conveyance claims upon a non-creditor's consent.  *See Executive Benefits Ins. Agency v. Arkison*, 133 S. Ct. 2880 (2013); *see also* Petition for Writ of Certiorari at I, *Arkison*, 133 S. Ct. at 2880 (2013) (No. 12-1200), 2013 WL 1329527 (question presented is "[w]hether Article III permits the exercise of the judicial power of the United States by bankruptcy courts on the basis of litigant consent, and, if so, whether 'implied consent' based on a litigant's conduct, where the statutory scheme provides the litigant no notice that its consent is required, is sufficient to satisfy Article III").  Depending upon the Court's ruling in *Arkison*, the Picower defendants may have consented to the Bankruptcy Court's approval of the settlement and issuance of the injunction through their course of conduct in the proceedings.

## CONCLUSION

To summarize:

(1) Allegations in the Florida actions of a conspiracy between Madoff and the Picower defendants echo those made by the Trustee in his New York action for the recovery of fraudulent transfers. Although common facts can give rise to multiple claims, the Florida actions impermissibly attempt to "plead around" the Bankruptcy Court's injunction barring all "derivative" claims in that they allege nothing more than steps necessary to effect the Picower defendants' fraudulent withdrawals of money from BLMIS.

(2) Appellants have not alleged "particularized" injuries directly traceable to the Picower defendants. The Picower defendants are alleged to have knowingly reaped the benefits of Madoff's scheme through fraudulent withdrawals, but they are not alleged to have made any misrepresentations to induce investments in BLMIS or to have taken any other actions that could reasonably be understood as aimed at BLMIS customers.

(3) Although the Florida actions assert claims for damages that are not recoverable in an avoidance action under the Bankruptcy Code, appellants' claims are still "derivative" of the Trustee's: they are predicated upon mere secondary harms flowing from the Picower defendants' fraudulent withdrawals and the resulting depletion of BLMIS funds.

Case 09-01789-cgm   Doc 6385-3   Filed 04/21/14   Entered 04/21/14 09:41:30   Exhibit 3
Pg 49 of 52
Case 1:10-cv-80202-KLR   Document 38-1   Entered on FLSD Docket 02/19/2013   Page 43 of 46

(4) The Bankruptcy Court did not run afoul of Article III of the
United States Constitution, as interpreted by the Supreme
Court in *Stern v. Marshall*, in enjoining the Florida actions
and approving the settlement of the Trustee's fraudulent
transfer claims with the Picower defendants.

Accordingly, the judgment of the District Court is **AFFIRMED**
without prejudice to Fox and Marshall seeking leave to amend their
complaints in the United States District Court for the Southern
District of Florida. Of course, we intimate no view on an
appropriate disposition of any such motion for leave to amend.

**Exhibit 2**

From: Chaitman, Helen Davis
Sent: Tuesday, February 18, 2014 7:19 AM
To: 'Sandy.Bohrer@hklaw.com'
Cc: marcy.harris@srz.com
Subject: RE: Marshall et al v. Picower Parties

Sandy:  I am very sorry that I cannot give you an extension.  We do not believe there is a good faith basis
to oppose our motion and we are very concerned that the defendants are simply seeking a further delay
because they have taken steps to conceal their assets and want to further insulate improper transfers.  If
you are willing to make a complete financial disclosure to us which will satisfy us that the defendants
have not transferred assets over the last six years in order to conceal them, we will agree to an
extension.


Helen Davis Chaitman
Attorney at Law
New York
212.599.3322

-----Original Message-----
From: Sandy.Bohrer@hklaw.com [mailto:Sandy.Bohrer@hklaw.com]
Sent: Monday, February 17, 2014 7:39 PM
To: Chaitman, Helen Davis
Cc: marcy.harris@srz.com
Subject: RE: Marshall et al v. Picower Parties

And just what reason do I give the judge for the refusal to provide a basic professional courtesy? I
assume you must have a good reason.

-----Original Message-----
From: Chaitman, Helen Davis [mailto:hchaitman@bplegal.com]
Sent: Monday, February 17, 2014 5:43 PM
To: Bohrer, Sandy (MIA - X27678)
Cc: marcy.harris@srz.com
Subject: RE: Marshall et al v. Picower Parties

I am very sorry but I can't do that.


Helen Davis Chaitman
Attorney at Law

Becker & Poliakoff
45 Broadway, 8th Floor | New York, NY 10006
Tel: 212.599.3322 | Cell: 908.303.4568 | Fax: 212.557.0295 hchaitman@bplegal.com |
www.bplegal.com

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

-----Original Message-----
From: Sandy.Bohrer@hklaw.com [mailto:Sandy.Bohrer@hklaw.com]
Sent: Monday, February 17, 2014 12:53 PM
To: Chaitman, Helen Davis
Cc: marcy.harris@srz.com
Subject: Marshall et al v. Picower Parties

I and my firm, Holland & Knight, have been retained to represent the Picower Parties in opposition to your motion to reopen this case. Our co-counsel, Marcy Harris, asked you for an extension of time to respond and you declined. I am now asking you to agree to either stay all action on your motion while the issues are determined in the New York courts or agree to a 30 day extension of time for my clients to respond to your motion.

_____

****IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN BY HOLLAND & KNIGHT LLP TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (I) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE, OR (II) PROMOTING, MARKETING, OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED MATTER HEREIN.****

_____

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.