**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- X
IN RE:                                                           :
                                                                 :
**BERNARD L. MADOFF INVESTMENT**                                 :        3-31-14
**SECURITIES LLC,**                                              :
                          **Debtor.**                            :
                                                                 :
---------------------------------------------------------------- :
                                                                 :
**MARTIN M. SURABIAN, RICHARD SURABIAN,**                        :        13 Civ. 4332 (ALC)
**and STEVEN SURABIAN,**                                         :
                                                                 :
                          Appellants,                            :        **MEMORANDUM &**
                                                                          **ORDER**
         - against -                                             :
                                                                 :
**IRVING H. PICARD, Trustee and SECURITIES**                     :
**INVESTOR PROTECTION CORPORATION,**                             :
                                                                 :
                          Appellees.                             X
----------------------------------------------------------------

**ANDREW L. CARTER, JR., District Judge:**

**I.     Introduction**

   This action is an appeal from two orders of the United States Bankruptcy Court for the Southern District of New York (Lifland, B.J.) addressing a total of six motions made by Appellants, who are proceeding pro se. Two motions essentially seek reconsideration of a prior order by the Bankruptcy Court granting the Trustee's request to expunge Appellants' claims, among others. Two motions seek various types of discovery, including a subpoena for the Debtor's books and records and a writ of habeas corpus ad testificandum for Bernard Madoff. The final two motions seek leave to file late appeals of the order expunging Appellants' claims and the order approving the Trustee's distribution of funds to creditors. Appellees argue there is not a sufficient basis for any of the relief sought and request the Court to affirm the orders of the Bankruptcy Court.

1

## II.    Background

After discovering that Bernard L. Madoff, through his company Bernard L. Madoff Investment Securities LLC ("BLMIS"), was operating an elaborate Ponzi scheme, Appellee Securities Investor Protection Corporation ("SIPC") commenced liquidation proceedings in accordance with the Securities Investor Protection Act ("SIPA"), 15 U.S.C § 78aaa. Appellee Irving Picard was appointed as the Trustee for BLMIS, and in that capacity, he was charged with reviewing and assessing claims filed by alleged customers, recovering and distributing property to allowed claimholders, and liquidating any remaining assets for the benefit of the estate and its creditors. The Trustee's claims review process was governed by the Bankruptcy Court's Claims Procedure Order. (Trustee App'x Ex. 1.)

Appellants and their family members filed eight claims with the Trustee. (Trustee App'x Exs. 41-49.) In December of 2009, the Trustee denied the Surabians' claims because there was no evidence of their investments with BLMIS in its books and records. Appellants filed their objections to the Trustee's determinations on January 4, 2010. (Trustee App'x Ex. 2.) The Trustee moved the Bankruptcy Court on March 16, 2012 to expunge all claims and objections filed by claimants that did not invest with BLMIS, including Appellants. (Trustee App'x Ex. 3.) Appellants were mailed a copy of the expungement motion and a notice of the hearing, which was scheduled for April 18, 2012. (Trustee App'x Ex. 4.) The hearing was adjourned to the next day, and notice of the new hearing date was also mailed to Appellants. (Trustee App'x Ex. 5.) In addition, the Trustee's staff spoke with Appellant Steven Surabian by phone on April 17, 2012 to inform him of the new hearing date. (Trustee App'x Ex. 25, Ex. E.) Appellants neither objected to the expungement motion nor attended the hearing. (See Trustee App'x Ex. 10.) The

2

Bankruptcy Court granted the motion and entered an order expunging Appellants' claims and objections with prejudice. (Trustee App'x Ex. 8.)

The Trustee moved the Bankruptcy Court for an order authorizing a second interim distribution to claimants on July 26, 2012. The distribution would encompass between $1.493 billion and $2.427 billion of customer property to allowed claimants on a pro rata basis. Appellants filed their objections to the distribution on August 8, 2012. By order dated August 22, 2012, the Bankruptcy Court approved the distribution over Appellants' objections. (Trustee App'x Ex. 11.) Appellants filed their notice of appeal with respect to the distribution order on September 19, 2012, two weeks after the fourteen-day deadline established by the Federal Rules of Bankruptcy Procedure. (Trustee App'x Ex. 15.) Distribution of the funds by the Trustee commenced that same day.

Several months later, in January of 2013, Appellants filed a series of motions seeking relief from the order expunging their claims. Specifically, on January 2, 2013, Appellants filed a "Motion to File Late Opposition to Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS." (Trustee App'x Ex. 16.) On January 22, 2013, they filed a "Motion to Vacate Order and Judgment of Trustee's Third Omnibus Motion to Expunge Claims and Objections of Claimants that Did Not Invest with BLMIS or in Entities that Invested in BLMIS Regarding the Surabians Claims Mentioned in Trustee's Exhibit A." (Trustee App'x Ex. 19.) Appellants argue they never received a copy of the expungement motion and therefore, had no opportunity to object.

Also in January of 2013, Appellants filed a "Motion to Subpoena Bernard L. Madoff," requesting that Madoff be transported to the Bankruptcy Court to verify Appellants' investments

with BLMIS. (Trustee App'x Ex. 18.) Almost three months later, Appellants submitted a "Motion to Subpoena the Records of BLMIS and Bernard L. Madoff and Motion to Subpoena the Records of SIPC and the Trustee Concerning the Customers and Payments to Customers and How They were Determined to be Customers of BLMIS." (Trustee App'x Ex. 30.) Finally, Appellants filed two motions for leave to file late appeals of the expungement order and the distribution order. (Trustee App'x Exs. 16, 21.)

The Bankruptcy Court held a hearing on all six of Appellants' motions on April 25, 2013, at which Appellants appeared. (Trustee App'x Ex. 38.) At that time, the Bankruptcy Court denied the motion for late appeal of the distribution order and reserved its ruling on the motion for late appeal of the expungement order because the appeal was pending before the District Court. (Id.; Trustee App'x Ex. 36.) The Bankruptcy Court issued its order on the remaining motions shortly thereafter, denying Appellants all of the relief sought. (Trustee App'x Ex. 37.) The Bankruptcy Court found Appellants' willfully failed to object to the expungement motion, did not possess a meritorious defense to expungement, and reconsideration would prejudice the estate and the other creditors. (Id.) With respect to the discovery requests, the Bankruptcy Court found they did not target relevant information and were unduly burdensome. (Id.) Appellants filed a timely notice of appeal of the April 25 rulings on May 9, 2013. (Trustee App'x Ex. 39.)

### III. Discussion

Appellants claim they opened eight accounts with Madoff, directly, between 1991 and 1992. (Appellants' Br. at 5-6.) They claim after they informed Madoff they wanted to close their accounts in the spring of 2006, all statements stopped. After a subsequent series of burglaries of Appellants' homes and offices, allegedly orchestrated by Madoff, no records of their investments

4

could be located. (Id. at 6.) Finding no trace of the Surabians in BLMIS's books and records, the Trustee denied Appellants' eight claims. The Trustee moved to expunge their claims, but Appellants contend they never received a copy of the Trustee's motion and were unaware the Trustee was moving to expunge their claims when called by the Trustee's staff. (Id. at 7.) Further, Appellants argue they are unable to prove their claims without access to BLMIS's books and records or the testimony of Madoff. (Id. at 15-16.) They maintain late appeals of the expungement order and the distribution order should be permitted because they never received notice that the Trustee was moving to expunge their claims. (Id. at 17.)

Appellees contend the Trustee did a diligent search of BLMIS's books and records, and there was no trace of Appellants' investments, unlike other claimants. (Appellee Picard's Br. at 3.) Nor could Appellants provide any documentation of their investments. (Id.) When the Trustee moved to expunge their claims, Appellees argue the Surabians' failure to object was willful. In any event, they could not present a meritorious defense, and the estate would be severely prejudiced if the expungement were reopened. (Id. at 3-4.) Regarding the discovery requests, Appellees' assert the information sought is not relevant and producing the requested information would unduly burden the Trustee and SIPC. (Id. at 18-23.) Finally, Appellees claim the Bankruptcy Court properly denied the late appeals, especially considering the District Courts have dismissed the appeals of the distribution and expungement orders as untimely. (Id. at 4.)

**A. *Standard of Review***

District courts have jurisdiction over appeals from final orders of the bankruptcy courts pursuant to 28 U.S.C. § 158(a). See also Fed. R. Bankr. P. 8013 ("On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand

5

with instructions for further proceedings."). This Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and reviews conclusions of law de novo. Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 989 (2d Cir. 1990). A finding of fact is "clearly erroneous" when there is a "definite and firm conviction that a mistake has been made." In re Ames Dep't Stores, Inc., 582 F.3d 422, 426 (2d Cir. 2009) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

The instant appeal is taken from two orders that resolve the following issues: (i) motions for reconsideration under Fed. R. Civ. P. 60(b), (ii) motions for discovery, and (iii) motions for leave to file late appeals. The rulings pertaining to all three of these issues are reviewed for abuse of discretion. See, e.g., In re 310 Assocs., 346 F.3d 31, 34 (2d Cir. 2003) ("Rule 60(b) decisions are reviewed for abuse of discretion."); In re Integrated Res., Inc., 147 B.R. 650, 664 (S.D.N.Y. 1992) ("The standard of review of a bankruptcy court determination concerning the scope of discovery . . . is whether the bankruptcy court abused its discretion." (citing Gonzalez v. St. Margaret's House Hous. Dev. Fund, 880 F.2d 1514, 1519 (2d Cir. 1989))); In re Enron Corp., 364 B.R. 482, 485-86 (S.D.N.Y. 2007) (noting with respect to whether a late appeal should be permitted, the standard of review is abuse of discretion (citing Joslin v. Wechsler (In re Wechsler), 246 B.R. 490, 492 (S.D.N.Y. 2000))).

"A document filed pro se is 'to be liberally construed,' and '. . . must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations omitted); Ortiz v. McBride, 323 F.3d 191, 194 (2d Cir. 2003) (noting submissions from pro se litigants should be construed "liberally"). The Court reads the Surabians' brief to raise the strongest possible arguments it suggests.

B. *Appellants' Motion to Vacate and Motion to File Late Opposition*

The Bankruptcy Court properly construed Appellants' January 2, 2013 Motion to File Late Opposition and January 22, 2013 Motion to Vacate as motions for relief pursuant to Fed. R. Civ. P. 60(b). Section 502(j) of the Bankruptcy Code "permits a court to reconsider a previously disallowed claim based on the 'equities of the case.'" In re FairPoint Commc'ns, Inc., 462 B.R. 75, 79 (Bankr. S.D.N.Y. 2012) (citing 11 U.S.C. § 502(j) (2014)). "Motions for reconsideration are reviewed under Federal Rule of Civil Procedure [] 60(b), which is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure [] 9024." Id. Under Rule 60(b), a litigant may seek relief due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

Appellants claim the Bankruptcy Court improperly assessed whether they have shown excusable neglect as set forth in American Alliance Insurance Co., Ltd. v. Eagle Insurance Co., 92 F.3d 57 (2d Cir. 1996).[1] Pursuant to American Alliance, in determining excusable neglect, courts should consider: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." Id. at 59. Notably, Rule 60(b) motions are "generally not favored" and are "properly granted only upon a showing of exceptional circumstances." United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001).

---

[1] Bankruptcy Courts in the Second Circuit differ in whether they apply American Alliance to determine excusable neglect or the more stringent test in Pioneer Investment Services Co v. Brunswick Associates L.P., 507 U.S. 380 (1993). Compare In re FairPoint Commc'ns, Inc., 462 B.R. at 79-80, with In re Enron Corp., No. 01–16034 (AJG), 2006 WL 898031, at *6 (Bankr. S.D.N.Y. Mar. 29, 2006). Under the Pioneer four-factor test, courts must evaluate: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, . . . and [4] whether the movant acted in good faith." 507 U.S. at 395. The parties agree the Bankruptcy Court properly conducted its analysis under American Alliance, so the Court need not address the application of American Alliance instead of Pioneer. Further, since Appellants cannot satisfy the more lenient test in American Alliance, the result would be no different under the stricter Pioneer analysis. C.f. In re Barquet Group, Inc., 486 B.R. 68, 72 (S.D.N.Y. 2012) (determining first whether the movant can meet the more lenient standard in American Alliance and noting if the movant fails under American Alliance, it would also fail under Pioneer).

7

In accordance with the first factor, the Bankruptcy Court determined Appellants' failure to object to the expungement motion was willful. Appellants acknowledged that they spoke to the Trustee's staff, who informed them of the hearing on the expungement motion. Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff), 496 B.R. 713, 720 (Bankr. S.D.N.Y. 2013). In addition, Judge Lifland was not persuaded that they were unaware the expungement motion pertained to their claims. Id. Appellants make largely the same arguments on appeal, claiming they never received a copy of the expungement motion via mail and were never explicitly told over the telephone that their claims were at issue. (Appellants' Br. at 12.) Even more, Appellants claim, without citation to any authority, "When no proof is shown and when it was the moving parties [sic] failure to obtain proof then when it is asserted that delivery was not made the moving party and Courts must accept as fact that the documents were not delivered." (Id.)

But, Appellants are mistaken about the law. Appellees provided affidavits of service indicating Appellants were mailed a copy of the expungement motion, the exhibits attached thereto, and the notices of hearing. (Trustee App'x Exs. 4, 6, 7.) Courts have routinely held that "an affidavit of service is sufficient evidentiary material to raise the presumption [of receipt after proper mailing]." In re O.W. Hubbell & Sons, Inc., 180 B.R. 31, 34 (N.D.N.Y. 1995) (collecting cases). This presumption is not rebutted simply by Appellants denying receipt of the notice. See, e.g., id. (rejecting the argument that an affidavit by the creditor stating it never received notice sufficiently rebutted the presumption of service raised by the debtor's affidavit of service); In re Alexander's, Inc., 176 B.R. 715, 721 (Bankr. S.D.N.Y. 1995) (same); In re Horton, 149 B.R. 49, 58 (Bankr. S.D.N.Y. 1992) (same).

Additionally, the Bankruptcy Court was correct in rejecting Appellants' argument that during the call with the Trustee's staff, they were not explicitly told the hearing involved their claims. Appellants, themselves, are charged with diligently asserting their claims, remaining up to speed on what is happening in the litigation, timely objecting, complying with procedural rules, and clarifying any uncertainty they may have on their own initiative. Their pro se status does not relieve them of these responsibilities. See In re Bernard L. Madoff, No. 12 Civ. 7999 (KBF) (S.D.N.Y. Jan. 25, 2013) (stating pro se litigants "are charged with reviewing the docket and understanding the Federal Rules of Bankruptcy Procedure."); Cobalt Multifamily Investors I, LLC v. Arden, 857 F. Supp. 2d 349, 356 (S.D.N.Y. 2011) (observing that pro se litigants must comply with procedural rules); In re Fanelli, 263 B.R. 50, 62 (Bankr. N.D.N.Y. 2001) (explaining while a pro se party is held "to a more relaxed procedural standard[,] . . . the Court will not ferret out arguments on his behalf and seek to substantiate them in law when no attempt is made to do so by the litigant."). The Surabians' attempts to shift their obligations onto Appellees are unavailing.

The Bankruptcy Court also found Appellants could not present a meritorious defense to the expungement motion. This Court agrees that Appellants bear the burden of demonstrating they were customers of BLMIS in order to become allowed claimants. In re Lehman Brothers Inc., 492 B.R. 379, 387 (Bankr. S.D.N.Y. 2013) (noting under the SIPA, "[t]he burden is on the claimant to prove entitlement"). Notwithstanding the Trustee's comprehensive search of BLMIS's books and records revealing no trace of their alleged investments, Appellants argue they have provided evidence of their accounts, including "documents the Surabian[s were] customers of BLMIS" and "supporting affidavits as to each others accounts[.]" Yet, all of these documents were created by Appellants; they have not provided any independent verification

9

besides their own lists and assertions to substantiate their claims. The proffers by Appellants fall far short of "giv[ing] the factfinder some determination to make," Am. Alliance, 92 F.3d at 61, and thus, cannot be the basis of a meritorious defense.

Lastly, the Bankruptcy Court determined, due to the volume of claims in the bankruptcy proceedings, and the Appellants' failure to take timely steps to lessen the impact of their neglect on the administration of the estate, reconsideration of the expungement motion would prejudice the BLMIS estate. The Trustee states by the bar date, he received more than 16,500 customer claims. (Appellee Picard's Br. at 6.) Appellees contend in administering an estate this large, there must be finality with respect to expunged claims, otherwise the administration would become unmanageable, particularly with respect to accurately calculating distribution amounts to allowed claimants. (Id. at 18.) Considering the detrimental impact Appellants' motion would have on the administration of the estate and the claims adjudication process, there is ample reason to believe Appellees and the estate would suffer prejudice if reconsideration were granted. See In re Enron, Inc., 326 B.R. 46, 53 (Bankr. S.D.N.Y. 2005) ("[A] court should consider the impact that the granting of relief may have on the administration of the bankruptcy case, specifically, on the claims adjudication process.").

In the light of the foregoing, the Bankruptcy Court did not abuse its discretion in denying Appellants' motions for reconsideration of the expungement order.

### C. *Appellants' Discovery Motions*

Appellants moved to have Madoff testify in the bankruptcy proceedings, alleging he would confirm that Appellants had opened eight accounts and invested funds directly with him. The Bankruptcy Court interpreted Appellants' motion as a request for a writ of habeas corpus ad

testificandum, to which Appellants do not object. The decision to issue the writ is committed to the sound discretion of the court after taking into account the following factors: "[1] whether the prisoner's presence will substantially further the resolution of the case, [2] the security risks presented by the prisoner's transportation and safekeeping, and [3] whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted."[2] Atkins v. City of N.Y., 856 F. Supp. 755, 757 (E.D.N.Y. 1994) (citation omitted).

Focusing on the first two factors, the Bankruptcy Court determined Madoff's testimony would not substantially further Appellants' contentions about their claims because there was no indication he would testify that Appellants invested with BLMIS. In re Bernard L. Madoff, 496 B.R. at 723. Assuming arguendo that Madoff testified in Appellants' favor, his testimony would be highly suspect, and Appellants have not provided any corroborating documentation. Id. Moreover, the Bankruptcy Court noted the substantial security and administrative concerns that would be involved with transporting Madoff from his facility in North Carolina to New York. Id. Ultimately, Judge Lifland found, "the little, if any, probative value of Madoff's testimony, in conjunction with the cost and security concerns associated with transporting Madoff to this Court, militate in favor of denial of a writ of habeas corpus ad testificandum." Id. at 723-24.

The Court sees no error in this exercise of discretion by the Bankruptcy Court. Without doubt, the security risks surrounding Madoff's transport would be incredible. As Judge Lifland correctly reasoned, "Security would also be necessary to eliminate the possibility of escape and to prevent any harm to the prisoner. Likewise, the heightened media attention surrounding Madoff's appearance in court would require extra security to protect the parties, the Court, and

---

[2] The parties agree, as did the Bankruptcy Court, that the third factor is not meaningful in this case. Madoff was sentenced to 150 years in prison, so there is clearly no possibility of staying the case until his release.

11

courthouse personnel." Id. at 723. Any suggestion by Appellants that transporting Madoff would be just like transporting any other prisoner is not based in reality. The writ of habeas corpus ad testificandum was properly denied.

Appellants also moved to subpoena all of BLMIS's books and records, as well as the records of SIPC. Appellants contend the Trustee did not diligently search the records, and if they were permitted to do so, they could uncover evidence of their claims. In addition, Appellants argue the Bankruptcy Court expunged their claims based on the Trustee's assertion that there was no mention of their investments with BLMIS, but the Court should not have done so without affirmative evidence that their claims were not in BLMIS's records. Yet, Appellants misapprehend that they have the burden of proving their claims, as discussed supra Part III.B. They must show proof of their investments with BLMIS. The Trustee is not required to prove the absence of their claims.

Fed. R. Civ. P. 26, made applicable to bankruptcy proceedings through Fed. R. Bankr. P. 7026, limits the scope of discovery a party may seek. In re Weinberg, 163 B.R. 681, 684 (Bankr. E.D.N.Y. 1994). Under Rule 26(b), a party may obtain discovery of relevant, non-privileged material so long as its production is not unduly burdensome. Fed. R. Civ. P. 26(b)(2); see also Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 316 (S.D.N.Y. 2003) ("Rule 26(b)(2) imposes general limitations on the scope of discovery in the form of a 'proportionality test' . . . ."). The Bankruptcy Court found the books and records sought by Appellants were not relevant based on the Trustee's representations that there was no indication of Appellants' claims during its search. In re Bernard L. Madoff, 496 B.R. at 725. Further, the information regarding other customers was not relevant to Appellants' claims. Id. Even if the books and records are relevant, the Bankruptcy Court held the burden of producing millions of pages of documents to Appellants

12

heavily outweighed the marginal relevance of the material, and some of the information requested by Appellants was otherwise available through public documents. Id. at 725-26.

Based on the Trustee's representations to the Bankruptcy Court, it would seem BLMIS's books and records do not contain any material relevant to Appellants' claims. In addition, this Court concurs that Appellants would not be entitled to the information of other customers, which could be potentially confidential in nature, and the substance of those claims. Not to mention, the volume of records requested by Appellants highlights just how burdensome such a request would be. The Trustee states there are more than 28.8 million documents in these records, excluding boxes of paper, physical objects, and electronic media. (Appellee Picard's Br. at 22.) Though SIPC possesses fewer documents, the relevancy of its material is even more attenuated and does not justify imposing the burden of a production. (Appellee SIPC's Br. at 21-22.)

While litigants are afforded some latitude in seeking discovery, it "is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." Cleveland-Goins v. City of N.Y., No. 99 Civ. 1109 (AGS), 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999). Appellants lack a modicum of objective support for their claims, and for that reason, the Bankruptcy Court did not abuse its discretion in denying their motion to subpoena the books and records of BLMIS and SIPC.

### D. *Appellants' Motions to File Late Appeals*

Appellants filed two motions seeking leave to file late appeals – one for the expungement order and one for the distribution order. Before Judge Lifland ruled on the motions, Appellants filed notices of appeal for both orders in the District Court. The appeal of the distribution order

was decided by the time the Bankruptcy Court issued its April 25, 2013 ruling, but the appeal of the expungement order was still pending. At this juncture, both appeals have been dismissed by the District Courts as untimely. (Trustee App'x Exs. 40, 41.) Due to the disposition of these appeals, any ruling on the motions to file late appeals would appear to be moot. In any event, the Bankruptcy Court did not err in dismissing the motion regarding the distribution order due to Appellants' failure to comply with Fed. R. Bankr. P. 8002 and in reserving its ruling on the motion regarding the expungement order while the appeal was in front of the District Court.

## IV.  Conclusion

The remaining arguments of the parties are without merit and therefore, are not addressed. For the reasons set forth above, the April 25, 2013 orders of the Bankruptcy Court are **AFFIRMED**. All relief requested by Appellants is **DENIED**. The Clerk of Court is respectfully directed to close this appeal and enter judgment consistent with this Order.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

Dated:    New York, New York
          March 31, 2014

_____
ANDREW L. CARTER, JR.
United States District Judge