**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff,<br>v.<br><br>KINGATE GLOBAL FUND, LTD., by its Liquidators and KINGATE EURO FUND, LTD., by its Liquidators,<br><br>                    Defendants. | Adv. Pro. No. 12-01920 (SMB)<br><br><br><br>**AMENDED COMPLAINT** |

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq*. ("SIPA"), and the estate of Bernard L. Madoff, by and through the Trustee's undersigned counsel, for his Amended Complaint ("Complaint") states:

## I.     NATURE OF THE ACTION

1.     The Trustee has commenced an adversary proceeding captioned *Picard v. Ceretti, et al.*, Adv. Pro. No. 09-1161 (SMB) (Bankr. S.D.N.Y.) (the "Avoidance Action") against defendants Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," and with Kingate Global, the "Kingate Funds") and their immediate and mediate transferees, seeking to avoid and recover (under §§ 544, 547, 548, 550, and 551 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), applicable provisions of SIPA, including SIPA § 78fff-2(c)(3), and §§ 273-279 of the New York Debtor & Creditor Law) initial and subsequent transfers totaling approximately $926 million. Those transfers include more than $370 million in purported management fees that the Kingate Funds paid to Kingate Management Limited ("Kingate Management"), as manager of the Kingate Funds, and more than $4.5 million in purported consulting and distribution fees that Kingate Management paid to FIM Limited and FIM Advisers LLP (collectively, "FIM"), as Kingate Management's consultant. Those transfers also include more than $297 million that Kingate Management paid out of its management fees as purported dividends to its "shareholders": Ashby Trust, First Peninsula Trustees Limited (as trustee of Ashby Trust), El Prela Trust, Port of Hercules Trustees Limited (as trustee of El Prela Trust), Alpine Trustees Limited (as former trustee of El Prela

2

Trust), El Prela Group Holding Services Limited, and Ashby Holdings Services Limited (collectively, the "Trust Defendants").

2. The Kingate Funds filed customer claims that, after application of the net equity calculation, seek in the aggregate approximately $800 million from the estate ("Kingate Funds' Customer Claims"). By the Avoidance Action, the Kingate Funds' Customer Claims are subject to temporary disallowance under § 502(d) of the Bankruptcy Code. As part of the Avoidance Action, the Trustee also seeks, among other things, to disallow or equitably subordinate the Kingate Funds' Customer Claims under §§ 502(b) and 510(c) of the Bankruptcy Code, respectively. The resolution of the Kingate Funds' Customer Claims requires an adjudication of the Avoidance Action by entry of final judgment.

3. In a civil action commenced in the Supreme Court of Bermuda, Commercial Court (the "Bermuda Action"), the Kingate Funds have sued the same parties as the Trustee seeking to recover the same management fees and dividends as the Trustee seeks in the Avoidance Action. The Bermuda Action is proceeding.

4. The Trustee has commenced this adversary proceeding under § 105(a) of the Bankruptcy Code and this Court's equity jurisdiction to enjoin the Joint Liquidators (currently, William Tacon, Stuart Mackellar, and John McKenna) acting on behalf of the Kingate Funds, and all those acting on behalf of the Joint Liquidators or in concert with them, from taking any action in connection with, or to accomplish, the actual or attempted dissipation, transfer, disposition, disbursement, or distribution of any or all assets that the Joint Liquidators may recover from, or collect upon, any judgment entered or settlement reached in favor of either of the Kingate Funds in the Bermuda Action, until this Court determines in the Avoidance Action: (a) the amount of customer property transferred to the Bermuda Defendants (as defined below),

3

and adjudicates the Trustee's right to recover it; and (b) the allowance or disallowance of the Kingate Funds' Customer Claims.

## II.     DEFENDANTS

5.    Kingate Global is an international business company organized under the laws of the British Virgin Islands with a registered address at Bison Court, P.O. Box 3460, Road Town, Tortola, British Virgin Islands. Kingate Global maintained an account with BLMIS designated 1FN061, which was opened on or about March 2, 1994. Kingate Global is currently in liquidation proceedings in the British Virgin Islands and Bermuda.

6.    Kingate Euro is an international business company organized under the laws of the British Virgin Islands with a registered address at Bison Court, P.O. Box 3460, Road Town, Tortola, British Virgin Islands. Kingate Euro maintained an account with BLMIS designated 1FN086, which was opened on or about January 4, 1996. That account was originally created for a sub-fund of Kingate Global to hold investments that were made in Deutsche Marks. In May 2000, that sub-fund became a separate legal entity, Kingate Euro, which held investments denominated in Euros and assumed the rights to the old sub-fund's account at BLMIS. Kingate Euro is currently in liquidation proceedings in the British Virgin Islands and Bermuda.

## III.    JURISDICTION AND VENUE

7.    Federal district courts have original and exclusive jurisdiction over "all cases under title 11" and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). Federal district courts, in turn, may refer to bankruptcy courts all cases or proceedings falling under § 1334 of title 28. 28 U.S.C. § 157(a).

8.    In a case under title 11, a federal district court has exclusive jurisdiction over "all the property, wherever located, of the debtor as of the commencement of such case, and of

4

property of the estate ….." 28 U.S.C. § 1334(e)(1). SIPA's jurisdictional provisions are co-extensive with those of 28 U.S.C. § 1334, and establish one forum for the adjudication and determination of customer claims. 15 U.S.C. §§ 78eee(b)(2)(A)(i), 78fff-4(e), 78fff(g).

9. This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1) and SIPA § 78eee(b)(2)(A) and (b)(4).

10. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgments consistent with Article III of the U.S. Constitution.

11. Venue in this district is proper under 28 U.S.C. § 1409.

12. This adversary proceeding is brought under SIPA §§ 78fff(b), 11 U.S.C. § 105(a), and other applicable law.

13. This Court has personal jurisdiction over the Kingate Funds because, among other reasons, the Kingate Funds each had a customer account with BLMIS, each used those accounts to direct investments into BLMIS in New York, and each acceded to this Court's jurisdiction when they filed the Kingate Funds' Customer Claims in this SIPA liquidation.

5

## IV. BACKGROUND, THE TRUSTEE, AND STANDING

### A. The Avoidance Action

14. In the Trustee's Fourth Amended Complaint filed on March 17, 2014, the Trustee sued the following individuals and entities, which are collectively referred to as the "Avoidance Defendants": Federico Ceretti ("Ceretti"), Carlo Grosso ("Grosso"), Kingate Management, FIM, the Trust Defendants, and Ashby Investment Services Limited and El Prela Trading Investments Limited (together, the "Investment Company Defendants"). The Avoidance Action also names as defendants the Kingate Funds, Citi Hedge Fund Services Limited, and HSBC Bank Bermuda Limited, none of which is a defendant in the Bermuda Action.

15. In the Avoidance Action, the Trustee seeks, among other things, to avoid and recover approximately $926 million in initial transfers from BLMIS to the Kingate Funds. The Trustee pursues recovery from Kingate Management of approximately $376 million in management fee transfers and recovery from the Trust Defendants of approximately $297 million in dividend transfers.

16. The Trustee incorporates here the factual allegations set forth in the Fourth Amended Complaint.

### C. The Bermuda Action

17. The Joint Liquidators commenced the Bermuda Action on or around December 22, 2010, and filed an Amended Statement of Claim on February 13, 2012.

18. The Joint Liquidators have sued the following individuals and entities: Ceretti, Grosso, FIM, the Investment Company Defendants, Kingate Management, and the Trust Defendants (collectively, the "Bermuda Defendants"). The Avoidance Defendants sued by the Trustee in the Avoidance Action *are* the Bermuda Defendants sued by the Joint Liquidators in

6

the Bermuda Action. The Joint Liquidators seek to recover from the Bermuda Defendants the same management fees transferred by the Kingate Funds to Kingate Management and the same dividends subsequently transferred to the Trust Defendants.

## V.    FACTUAL BASIS FOR INJUNCTIVE RELIEF

### A.    The Kingate Funds' Receipt and Subsequent Transfer of BLMIS Funds

#### 1.    *The Relationship Among BLMIS, the Kingate Funds, Kingate Management, and the Trust Defendants*

19.    Kingate Global was established in February 1994. It first sold subscriptions in U.S. dollars, investing exclusively with BLMIS. Established in April 2000, Kingate Euro sold subscriptions in Euros for exclusive investment with BLMIS. The Kingate Funds were created as investment vehicles to BLMIS to be marketed to European investors. From their formation, the Kingate Funds deposited approximately $1.7 billion with BLMIS and withdrew nearly $1 billion.

20.    Kingate Management was established contemporaneously with Kingate Global to provide investment management services, even though a well-established company owned by Ceretti and Grosso (FIM Limited) already existed that specialized in hedge fund management and performed the services that Kingate Management agreed to provide to Kingate Global.

21.    By certain consulting and distribution agreements, Kingate Management purported to delegate substantially all of its management duties to FIM, which acted as a consultant from 1995 to 2008 and as a distributor from 2001 to 2008.

22.    The Joint Liquidators admit that from January 1995 to November 2008, the Kingate Funds paid to Kingate Management the sum of $370,437,295 in management fees based on the Kingate Funds' purported net asset value ("NAV").

7

23. FIM also received customer property. Under Schedule 1 of the consultancy agreements between Kingate Management and FIM, Kingate Management agreed to pay FIM a fixed monthly fee of $30,000 for its services. The payment obligation belonged to Kingate Management, but "for administrative convenience," the parties agreed that FIM's fee could be paid directly from the Kingate Funds. During the lifetime of the consultancy agreements, FIM would have received approximately $3.6 million in consultancy fees.

24. Under the distribution agreements, FIM received a fee based on the subscriptions it generated for the Kingate Funds. From 2005 to 2008, FIM received at least $1 million in distribution fees.

25. The consultancy and distribution fees paid to FIM were made with customer property.

26. Ceretti and his family members are the beneficiaries of El Prela Trust, and Grosso and his family members are the beneficiaries of Ashby Trust. Under the respective deeds of trust, each trustee has full discretion to distribute trust property to trust beneficiaries.

27. The Trust Defendants held all of the outstanding shares of Kingate Management for the benefit of Ceretti and Grosso.

28. According to the Joint Liquidators and the Trust Defendants, the management fees transferred to Kingate Management were its only source of revenue and were subsequently transferred as purported shareholder dividends to the Trust Defendants. According to the Trust Defendants, those dividends were, in turn, their only source of revenue.

29. The Trust Defendants admit that Kingate Management transferred (from the management fees it received) no less than $297,013,938 in shareholder dividends to bank accounts held by the Trust Defendants. Specifically, the Trust Defendants admit that Ashby

8

Trust received the sum of $149,082,329 in dividends, and that El Prela Trust received the sum of $147,931,609 in dividends.

30.    According to the Trust Defendants, as of December 31, 2011, Ashby Trust held assets valued at $136,652,602, and El Prela Trust held assets valued at $117,822,836.

> 2.    *The Kingate Funds Transferred BLMIS Funds to Kingate Management, Which in Turn Transferred BLMIS Funds to the Trust Defendants*

31.    According to the Kingate Funds' own pleadings, a significant portion of the management fee transfers made to Kingate Management, and a significant portion of the dividend transfers Kingate Management subsequently made to the Trust Defendants, were made with customer property.

32.    Within six years of the Filing Date, the Kingate Funds admit to transferring between $12,105,660 and $61,201,590 of customer property to Kingate Management as management fees.

33.    Because the Kingate Funds transferred customer property to Kingate Management, and because Kingate Management had no other revenue source, the dividend transfers to the Trust Defendants were made with customer property.

34.    The Trust Defendants admit to receiving from Kingate Management a much greater amount of customer property since their inception than the Kingate Funds admit transferring to Kingate Management. Of the management fee transfers the Kingate Funds made to Kingate Management, the Trust Defendants admit that Kingate Management transferred no less than $94,174,033 and as much as $199,410,710 of customer property to the Trust Defendants as dividends.

## COUNT ONE
## INJUNCTION

35. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully restated here.

36. The judicial admissions of the Kingate Funds and the Trust Defendants establish that Kingate Management and the Trust Defendants received customer property.

37. This Court has exclusive jurisdiction over this SIPA liquidation in general and customer property, customer claims, and the claims asserted in the Avoidance Action in particular.

38. The Bankruptcy Code, SIPA, and applicable law provide that the Kingate Funds' Customer Claims cannot be determined until the Trustee's claims in the Avoidance Action are adjudicated.

39. The Joint Liquidators' disposition of any assets obtained by settlement or judgment entered against the Bermuda Defendants in the Bermuda Action will defeat or impair this Court's exclusive jurisdiction over the liquidation of the estate, the determination of customer claims, and the distribution of estate assets.

40. The Joint Liquidators' disposition of any assets obtained by settlement or judgment entered against the Bermuda Defendants in the Bermuda Action will have an immediate adverse economic impact on the BLMIS estate.

41. The Joint Liquidators could elect to distribute any or all assets obtained in the Bermuda Action to their creditors and wind up.

42. The Joint Liquidators have refused to stipulate to maintaining the status quo; their words and conduct suggest that they intend to distribute customer property when they obtain it.

43. The Kingate Funds, Kingate Management, and the Trust Defendants would have few to no assets remaining for the Trustee to recover for the Customer Fund through his Avoidance Action.

44. The threatened economic damage to the estate is substantial, and there is no adequate remedy at law to protect and preserve estate assets.

45. Section 105(a) of the Bankruptcy Code, applicable here under SIPA § 78fff(b), grants this Court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

46. Under SIPA and the Bankruptcy Code, the Trustee is entitled to injunctive relief under § 105(a) preliminarily and permanently prohibiting the Kingate Funds from disposing or dissipating any proceeds from any settlement or judgment entered in the Bermuda Action, until the Avoidance Action is finally adjudicated or settled.

## COUNT TWO
## INJUNCTION

47. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully restated here.

48. This Court is empowered to issue an interlocutory injunction to preserve assets that are the subject of fraudulent transfer claims.

49. This Court is empowered to issue an interlocutory injunction of the same character as the final relief sought.

50. The Trustee seeks equitable disallowance and equitable subordination of the Kingate Funds' Customer Claims, disgorgement of the fees and profits received by the Avoidance Defendants, and imposition of a constructive trust over assets fraudulently transferred to the Avoidance Defendants. The Trustee seeks the avoidance and recovery of fraudulent

11

transfers initially made by BLMIS to the Kingate Funds and then subsequently transferred to Kingate Management, the Trust Defendants, and the other Avoidance Defendants.

51. The judicial admissions made by the Kingate Funds and the Trust Defendants establish that the Joint Liquidators seek to recover customer property in the hands of the Bermuda Defendants.

52. An injunction freezing and preserving any recovery obtained by the Joint Liquidators in the Bermuda Action will shield the Trustee's fraudulent transfer claims and other equitable claims from circumvention through parallel foreign proceedings.

53. The Joint Liquidators have refused to stipulate to maintaining the status quo; their words and conduct suggest that they intend to distribute customer property when they obtain it.

54. There is an inadequate remedy at law to protect and preserve estate assets.

55. The injunction will not harm the public interest, and, in fact, is in the best interest of BLMIS customers and the orderly administration of customer claims.

56. The Court's intervention is required to preserve the estate's equitable interests in the customer property the Trustee seeks to recover for the estate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Kingate Funds:

(i) enjoining, preliminarily and permanently, the Joint Liquidators acting on behalf of the Kingate Funds, and those acting on behalf of the Joint Liquidators or in concert with them, from taking any action in connection with, or to accomplish, the actual or attempted dissipation, transfer, disposition, disbursement, or distribution of any or all assets that the Joint Liquidators may recover from, or collect upon, any judgment entered or settlement reached in favor of either of the Kingate Funds in the Bermuda Action until this Court determines in the

Avoidance Action:  (a) the amount of customer property transferred to the Bermuda Defendants and adjudicates the Trustee's right to recover it; and (b) the allowance or disallowance of the Kingate Funds' Customer Claims; and

    (ii) granting the Trustee such other relief as the Court deems just and proper.

Dated: April 22, 2014
   New York, NY

/s/ *David J. Sheehan*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Geraldine E. Ponto
Email:  gponto@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the substantively consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff*

Of Counsel:
Anthony M. Gruppuso
Email:  agruppuso@bakerlaw.com