113    By reason of these breaches of duty, the Funds have suffered loss and damage. The Funds repeat paragraph 108 above.

**Claim against FIM for negligent misstatement**

114    Further or alternatively, as set out in paragraph 43 above, under the Consulting Services Agreements, the services to be provided by FIM included the provision of advice on various matters and the preparation of various reports. In particular, by clause 8 of the agreements, FIM agreed:

114.1    to provide such assistance, information and reports as Kingate Management and the auditors of the Funds required, in connection with:

114.1.1    the preparation of valuations in respect of the Funds;

114.1.2    the preparation by Kingate Management of periodic reports for submission to the Funds; and

114.1.3    the provision of annual, semi-annual and other reports for the benefit of investors and prospective investors in the Funds, whether published by the Funds or Kingate Management; and

114.2    to report to the boards of the Funds the performance of the Funds and other matters related to the management of their assets.

115    Pursuant to these obligations, FIM did produce various reports including, in respect of each Fund:

115.1    monthly performance summaries ("**Performance Summaries**"); and

115.2    quarterly reports to the board of Kingate Management ("**Board Reports**").

116    FIM prepared the Performance Summaries and the Board Reports on the basis of information provided by BLMIS, including the Monthly Statements.

117    The Performance Summaries:

117.1    were provided by FIM to Kingate Management;

117.2    in turn, were distributed by Kingate Management to investors in the Funds:

117.2.1    prior to May 2008, with the wording "*This document has been prepared by [FIM]*"; and

117.2.2    since May 2008, with the wording "This document has been prepared by [Kingate Management]";

117.3    set out (inter alia):

117.3.1 the fund's net return for the month in question;

117.3.2 the fund's year-to-date return and annual returns since establishment; and

117.3.3 since May 2008, in general terms:

117.3.3.1 the investments in assets made by the fund during the month in question; and

117.3.3.2 the performance of the different classes of assets, during that month. For example, the Performance Summary for May 2008 for Kingate Global stated:

*"Kingate USD started the month approximately 33% invested in the typical basket of S&P 100 Index stocks, long the related S&P 100 Index puts and short S&P 100 index calls, with the rest of the portfolio invested in Treasury Bills. At the beginning of May a further basket of stocks (with related put and call options) was purchased. By the end of the month, all stocks were sold and the corresponding S&P 100 Index options positions were closed down. At month end the portfolio was fully invested in Treasury Bonds.*

*In May, options provided the majority of the gain in the portfolio, with dividends also contributing modestly. In contrast to April, the basket of common stocks and Treasury Bills detracted slightly from the overall performance".*

118    The Board Reports:

118.1    were provided by FIM to the board of Kingate Management;

118.2    were also provided by FIM to the boards of the Funds; and

118.3    set out (inter alia), in more detail than the Performance Summaries:

118.3.1 the fund's net return for each month of the quarter in question;

118.3.2 the investment in assets, namely, equities, options and Treasury Bills, made by the fund during each month;

118.3.3 the performance of the different classes of assets during that month;

118.3.4 the fund's total assets at the end of the quarter in question; and

118.3.5 since the fourth quarter 2006, the year to date profit for the fund.

119    By reason of the following facts and matters, FIM owed to the Funds a tortious duty to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true:

119.1    FIM knew, or ought to have known, or intended that the Funds would, or would be likely to rely on the statements made in the Performance Summaries and/or the Board Reports. In particular, FIM knew, or ought to have known, or intended that:

119.1.1    the Performance Summaries were distributed by Kingate Management to investors in the Funds;

119.1.2    the Board Reports were provided by FIM to the boards of the Funds; and

119.1.3    Kingate Management would, or was likely to rely on the statements made in the Performance Summaries and/or the Board Reports in the performance and/or delegation of the performance of its services under the Manager Agreements, which would have a direct and substantial effect on the Funds.

119.2    Given this, and in all the circumstances, FIM assumed a responsibility to the Funds to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true.

120    The Funds in fact relied on the statements made in the Performance Summaries and/or the Board Reports by:

120.1    not questioning with Kingate Management (or its delegates or FIM) the investment strategy decided upon by Kingate Management (and/or FIM), of investing all monies raised from investors exclusively with BLMIS; and

120.2    continuing to transfer all such monies to BLMIS for investment.

121    The Performance Summaries and/or the Board Reports contained material misstatements. In particular:

121.1    As set out in paragraph 54 above, as a result of Mr Madoff's fraud:

121.1.1    none of the monies transferred by the Funds to BLMIS were invested in assets;

121.1.2    none of the assets reported in BLMIS' Monthly Statements existed; and

121.1.3    no returns were produced by either fund.

LN/312895v1

121.2   Accordingly, the statements in the Performance Summaries and/or the Board Reports in respect of the assets in which each fund had invested, and their returns, were false.

122     In breach of the duty set out in paragraph 119 above, FIM failed to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true. In particular:

122.1   FIM failed, adequately or at all, to assess critically or independently to verify the information provided by BLMIS, including the Monthly Statements, on the basis of which FIM prepared the Performance Summaries and/or the Board Reports. In particular, FIM failed, adequately or at all:

   122.1.1   independently to verify the existence or value of the assets in which BLMIS had purportedly invested the Funds' monies – for example, by requesting any certificate of title from an independent third party;

   122.1.2   independently to verify that the trades by which BLMIS had purportedly invested the Funds' monies had actually taken place, at the reported prices – for example, by comparing the reported prices of the purported trades with the range in prices actually traded in the market on the day/s in question;

   122.1.3   critically to assess or independently to verify the volumes of those trades, including how they could be accomplished without impacting the market; and/or

   122.1.4   critically to assess or independently to verify the existence of the counter-parties to those trades, or their ability to perform their obligations.

122.2   More generally:

   122.2.1   FIM failed to conduct any, or any adequate on-going due diligence on BMLIS and/or monitoring of BLMIS' performance of the investment advisory services which Kingate Management had delegated to BLMIS. The Funds repeat paragraph 111.2 above.

   122.2.2   FIM failed, adequately or at all, to disclose to the Funds:

      122.2.2.1   the existence of any 'red flags' surrounding the operations of BLMIS of which it was aware, or should have been aware;

      122.2.2.2   any particular on-going risks in relation to BLMIS, and the Funds' investment strategy of investing all monies raised from investors exclusively with BLMIS, of which it was, or should (if it had conducted reasonable due diligence) have been aware.

123    For the avoidance of doubt, and if necessary, the Funds aver that these breaches of duty, individually or collectively, amounted to "gross negligence" by FIM, within the terms of the purported exclusionary provisions in the Consulting Services Agreements.

124    By reason of these breaches of duty, the Funds have suffered loss and damage. The Funds repeat paragraph 108 above.

**Remedy against FIM for breach of tortious duty of care and/or negligent misstatement**

125    By reason of the claims set out in paragraphs 110-113 and 114-124 above, the Funds are entitled to damages against FIM, to be assessed.

**Claim against Mr Grosso and Mr Ceretti for breach of tortious duty of care**

126    By reason of the following facts and matters, Mr Grosso and Mr Ceretti personally, as directors of FIM Ltd, and principals of FIM Advisers, owed to the Funds a tortious duty to exercise reasonable skill and care in their dealings with and in relation to the Funds:

126.1    Mr Grosso and Mr Ceretti assumed a personal responsibility to the Funds to take care in their dealings with and in relation to the Funds. In particular:-

    126.1.1    As set out in paragraphs 3-10, 18-21, 30-31, 78 and 110.2.2 above:

        126.1.1.1    Mr Grosso and Mr Ceretti were the individuals behind the establishment of the Funds and, at the same time, Kingate Management;

        126.1.1.2    Mr Grosso and Mr Ceretti are, and were at all material times, the ultimate beneficial owners of the shares in Kingate Management;

        126.1.1.3    Mr Grosso and Mr Ceretti are, and were at all material times, the directors and controlling shareholders of FIM Ltd, and the principals of FIM Advisers;

        126.1.1.4    Kingate Management and FIM were the corporate vehicles of Mr Grosso and Mr Ceretti, for the receipt of fees from the Funds;

        126.1.1.5    accordingly, the corporate and contractual structure, which purported to create separate legal personalities and relationships of liability, did not reflect reality but was a structure of convenience for the benefit of Mr Grosso and Mr Ceretti.

    126.1.2    As directors (and controlling shareholders) of FIM Ltd, Mr Grosso and Mr Ceretti were together the directing mind and will of FIM Ltd, and the company was their alter ego. In the same way, as principals of FIM Advisers, Mr Grosso and Mr Ceretti were together the

LN/31289Sv1

directing mind and will of FIM Advisers and the limited liability partnership was their alter ego.

126.1.3 As directors (and controlling shareholders) of FIM Ltd, and principals of FIM Advisers, Mr Grosso and Mr Ceretti:

126.1.3.1 had some dealings with BLMIS and/or Mr Madoff and/or his associates, both before the establishment of the Funds and afterwards, in connection with the performance of FIM's services under the Consulting Services Agreements;

126.1.3.2 had regular dealings with Kingate Management, in connection with the performance of FIM's services under the Consulting Services Agreements; and

126.1.3.3 had regular dealings with the Funds in that connection, including personal exchanges with the boards of the Funds and investors.

126.1.4 As a result, at all material times, there was direct and substantial contact between Mr Grosso and Mr Ceretti and the Funds.

126.1.5 These facts and matters, taken together, were sufficient to convey to the Funds that Mr Grosso and Mr Ceretti were each willing to assume a personal responsibility to the Funds.

126.2 Accordingly (and notwithstanding the corporate and contractual structure), the Funds in fact relied on Mr Grosso and Mr Ceretti to take care in their dealings with and in relation to the Funds.

126.3 In all the circumstances, that reliance was reasonable. In particular:

126.3.1 The Funds repeat paragraphs 126.1.1-126.1.5 above.

126.3.2 As a result of their dealings with and in relation to the Funds, Mr Grosso and Mr Ceretti held themselves out as having appropriate skills and experience.

126.3.3 As a result of the reality behind the corporate and contractual structure, Mr Grosso and Mr Ceretti had control over the Funds' investments.

126.3.4 As Mr Grosso and Mr Ceretti were aware, the Funds received no advice in respect of their investments, save from FIM/Kingate Management/BLMIS, which advice was not independent.

126.4 In all the circumstances, Mr Grosso and Mr Ceretti knew or ought to have known of this reliance.

127 In their dealings with and in relation to the Funds, Mr Grosso and Mr Ceretti breached this tortious duty. In particular:

LN/31289Sv1

127.1   Mr Grosso and Mr Ceretti failed to conduct any, or any adequate on-going due diligence on BLMIS and/or monitoring of BLMIS' performance of the investment advisory services which Kingate Management had delegated to BLMIS. In particular:

127.1.1 Mr Grosso and Mr Ceretti failed to give any, or any adequate consideration to the numerous 'red flags' surrounding the operations of BLMIS which:

127.1.1.1   were matters of public information, and of which Mr Grosso and Mr Ceretti accordingly must have been aware; or

127.1.1.2   even if not matters of public information, could reasonably have been discovered, and of which Mr Grosso and Mr Ceretti accordingly should have been aware.

127.1.2 Mr Grosso and Mr Ceretti unreasonably relied on due diligence of BLMIS conducted by third parties, including Tremont.

127.1.3 Mr Grosso and Mr Ceretti failed to conduct any, or any adequate due diligence on BLMIS of their own. In particular:

127.1.3.1   Mr Grosso and Mr Ceretti failed, adequately or at all, to visit BLMIS' premises, inspect BLMIS' operations (including BLMIS' information technology systems), interview Mr Madoff/his associates, review relevant documentation, communicate with BLMIS' auditors and/or review any audit reports prepared for BLMIS, so as to properly understand BLMIS' practices and procedures, and internal controls.

127.1.3.2   Mr Grosso and Mr Ceretti failed, adequately or at all, to investigate BLMIS' auditor, or to confirm that it was capable of such a large-scale audit – for example, by checking the public peer review list maintained by the American Institute of Certified Public Accountants.

127.1.3.3   Alternatively, Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess or independently to verify anything which they were shown, told or learned.

127.1.4 Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess or independently verify the regular reports and other documentation produced by BLMIS in respect of the Funds, including trade confirmations and the Monthly Statements. In particular, they failed, adequately or at all:

127.1.4.1   independently to verify the existence and value of the assets in which BLMIS had purportedly invested the Funds' monies, as described in those reports – for example, by requesting any certificate of title from an independent third party;

LN/31289v1

127.1.4.2   independently to verify that the trades by which BLMIS had purportedly invested the Funds' monies, as described in the reports, had actually taken place, at the reported prices – for example, by comparing the reported prices of the purported trades with the range in prices actually traded in the market on the day/s in question;

127.1.4.3   critically to assess or independently to verify the volumes of those trades, including how they could be accomplished without impacting the market; and/or

127.1.4.4   critically to assess or independently to verify the existence of the counter-parties to those trades, or their ability to perform their obligations.

127.1.5   Mr Grosso and Mr Ceretti failed, adequately or at all to investigate the number of traders at BLMIS responsible for executing the split-strike conversion strategy, and/or their identity.

127.1.6   Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess the question why BLMIS' split-strike conversion strategy, which was based (in part) on market timing, involved pulling out of the market at the end of each quarter and/or year.

127.1.7   Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess the question how BLMIS' returns could be lawfully achieved, given that basic, industry standard, statistical analysis indicated that those returns (especially their lack of volatility) were highly improbable.

127.2   Further or alternatively, Mr Grosso and Mr Ceretti failed, adequately or at all, to disclose to Kingate Management or the Funds:

127.2.1   the existence of any of the 'red flags' surrounding the operations of BLMIS of which they were, or should have been aware;

127.2.2   any particular on-going risks in relation to BLMIS, and the Funds' investment strategy of investing all monies raised from investors exclusively with BLMIS, of which they were, or should (if they had conducted adequate due diligence on BLMIS) have been aware.

127.3   Further or alternatively, Mr Grosso and Mr Ceretti failed, adequately or at all, to ensure that FIM took any of the steps set out in paragraphs 127.1-127.2 above.

128   By reason of these breaches of duty, the Funds have suffered loss and damage. The Funds repeat paragraph 108 above.

LN/31289v1

**Claim against Mr Grosso and Mr Ceretti for negligent misstatement**

129  By reason of the following facts and matters, Mr Grosso and Mr Ceretti personally, as directors of FIM Ltd, and principals of FIM Advisers, owed to the Funds a tortious duty to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true:

129.1  Mr Grosso and Mr Ceretti assumed a personal responsibility to the Funds to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true. In particular:

129.1.1  The Funds repeat paragraphs 126.1.1-126.1.5 above.

129.1.2  Mr Grosso and Mr Ceretti were personally involved in the preparation of the Performance Summaries and/or the Board Reports. For example, weekly faxes from BLMIS setting out the purported market value of each fund's investments (which must have been used, among other materials, in the preparation of the Performance Summaries and/or the Board Reports) were sent to the attention of Mr Ceretti.

129.1.3  The Board Reports were orally presented, by telephone, to the board of Kingate Management and the boards of the Funds by Mr Grosso.

129.2  The Funds in fact relied on Mr Grosso and Mr Ceretti to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true, and on the statements made, by:

129.2.1  not questioning with Kingate Management (or its delegates or FIM) the investment strategy decided upon by Kingate Management and/or FIM, of investing all monies raised from investors exclusively with BLMIS; and

129.2.2  continuing to transfer all such monies to BLMIS for investment.

129.3  In all the circumstances, that reliance was reasonable. The Funds repeat paragraph 126.3 above.

129.4  In all the circumstances, Mr Grosso and Mr Ceretti knew, or ought to have known, or intended that the Funds would, or would be likely to rely on the statements made in the Performance Summaries and/or the Board Reports. In particular, Mr Grosso and Mr Ceretti knew, or ought to have known, or intended that:

129.4.1  the Performance Summaries were distributed by Kingate Management to investors in the Funds;

129.4.2  the Board Reports were provided by FIM to the boards of the Funds; and

LN/31289Sv1

129.4.3 Kingate Management would, or was likely to rely on the statements made in the Performance Summaries and/or the Board Reports in the performance and/or delegation of the performance of its services under the Manager Agreements, which would have a direct and substantial effect on the Funds.

129.5 The Performance Summaries and/or the Board Reports contained material misstatements. The Funds repeat paragraph 121 above.

130 In breach of the duty set out in paragraph 129 above, Mr Grosso and Mr Ceretti failed to take reasonable care to ensure that the statements made in the Performance Summaries and/or the Board Reports were true. In particular:

130.1 Mr Grosso and Mr Ceretti failed, adequately or at all, critically to assess or independently to verify the information provided by BLMIS, including the Monthly Statements, on the basis of which FIM prepared the Performance Summaries and/or the Board Reports. In particular, Mr Grosso and Mr Ceretti failed, adequately or at all:

130.1.1 independently to verify the existence or value of the assets in which BLMIS had purportedly invested the Funds' monies – for example, by requesting any certificate of title from an independent third party;

130.1.2 independently to verify that the trades by which BLMIS had purportedly invested the Funds' monies had actually taken place, at the reported prices – for example, by comparing the reported prices of the purported trades with the range in prices actually traded in the market on the day/s in question;

130.1.3 critically to assess or independently to verify the volumes of those trades, including how they could be accomplished without impacting the market; and/or

130.1.4 critically to assess or independently to verify the existence of the counter-parties to those trades, or their ability to perform their obligations.

130.2 More generally:

130.2.1 Mr Grosso and Mr Ceretti failed to conduct any, or any adequate on-going due diligence on BMLIS and/or monitoring of BLMIS' performance of the investment advisory services which Kingate Management had delegated to BLMIS. The Funds repeat paragraph 127.1 above.

130.2.2 Mr Grosso and Mr Ceretti failed, adequately or at all, to disclose to the Funds:

130.2.2.1 the existence of any 'red flags' surrounding the operations of BLMIS of which they were aware, or should have been aware;

LN/31289Sv1

130.2.2.2  any particular on-going risks in relation to BLMIS, and the Funds' investment strategy of investing all monies raised from investors exclusively with BLMIS, of which they were, or should (if they had conducted reasonable due diligence) have been aware.

130.3  Further or alternatively, Mr Grosso and Mr Ceretti failed, adequately or at all, to ensure that FIM took any of the steps set out in paragraphs 130.1-130.2 above.

131  By reason of these breaches of duty, the Funds have suffered loss and damage. The Funds repeat paragraph 108 above.

**Remedy against Mr Grosso and Mr Ceretti for breach of tortious duty of care and/or negligent misstatement**

132  By reason of the claims set out in paragraphs 126-128 and 129-131 above, the Funds are entitled to damages against Mr Grosso and Mr Ceretti, to be assessed.

**INTEREST**

133  The Funds seek an order that the Defendants and each of them should pay:

133.1  compound interest on all amounts due to the Funds, as damages and/or a restitutionary remedy pursuant to the common law and/or equitable jurisdiction of the Court, at such rate, for such periods and compounded at such periodic rests as the Court considers appropriate;

133.2  alternatively, interest on all amounts due to the Funds pursuant to statute, at such rate and for such periods as the Court considers appropriate.

**AND THE CLAIMANTS CLAIM:**

**Against Kingate Management**

(1)  Orders for restitution, as follows:

(a)  an order that Kingate Management pay to Kingate Global the amount of US$254,478,999.69; and

(b)  an order that Kingate Management pay to Kingate Euro, the amount of 56,226,531.48 Euros.

(2)  Alternatively:

(a)  an order that Kingate Management pay:

(i)  Kingate Global the amount of US$254,478,999.69; and

LN/312895v1

    (ii) Kingate Euro the amount of 56,226,531.48 Euros;

(b) alternatively:

    (i) a declaration that overpaid fees in the amount of US$254,478,999.69 and/or their traceable proceeds constituted property to which Kingate Global retained legal title and/or its traceable proceeds, together with an order that Kingate Management return those fees and/or their traceable proceeds to Kingate Global; and

    (ii) a declaration that overpaid fees in the amount of 56,226,531.48 Euros and/or their traceable proceeds constituted property to which Kingate Euro retained legal title and/or its traceable proceeds, together with an order that Kingate Management return those fees and/or their traceable proceeds to Kingate Euro.

(3) Alternatively:

(a) a declaration that Kingate Management held overpaid fees and/or their traceable proceeds in the amount of US$254,478,999.69 on resulting, alternatively constructive trusts for Kingate Global from the moment of receipt, together with an order that Kingate Management account to Kingate Global in respect of those fees and/or their proceeds; and

(b) a declaration that Kingate Management held overpaid fees and/or their traceable proceeds in the amount of 56,226,531.48 Euros on resulting, alternatively constructive trusts for Kingate Euro from the moment of receipt, together with an order that Kingate Management account to Kingate Euro in respect of those fees and/or their proceeds.

(4) Damages for breach of contractual and/or tortious duties of care and/or negligent misstatement, to be assessed.

**Against FIM**

(1) Damages for breach of tortious duty of care and/or negligent misstatement, to be assessed

**Against the Shareholders**

(1) Orders for restitution, as follows:

(a) an order that the Shareholders pay to Kingate Global, the amount of US$254,478,999.69, alternatively, the amount of the fees overpaid by Kingate Global and/or their traceable proceeds, which were paid on by Kingate Management to the Shareholders; and

(b) an order that the Shareholders pay to Kingate Euro, the amount of 56,226,531.48 Euros, alternatively, the amount of the fees overpaid by Kingate Euro and/or their traceable proceeds, which were paid on by Kingate Management to the Shareholders.

(2) Alternatively:

(a) an order that the Shareholders pay the Funds the amount of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders;

(b) alternatively, a declaration that the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders constituted property to which the Funds retained legal title and/or its traceable proceeds, together with an order that the Shareholders return those fees and/or their traceable proceeds to the Funds.

(3) Alternatively, a declaration that the Shareholders held on resulting, alternatively constructive trusts for the Funds, from the moment of receipt or subsequently, the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management to the Shareholders, together with an order that the Shareholders account to the Funds in respect of those fees and their proceeds.

**Against Mr Grosso and Mr Ceretti**

(1) Orders for restitution, as follows:

(a) an order that Mr Grosso and Mr Ceretti pay to Kingate Global the amount of US$254,478,999.69, alternatively, the amount of the fees overpaid by Kingate Global and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti; and

(b) an order that Mr Grosso and Mr Ceretti pay to Kingate Euro, the amount of 56,226,531.48 Euros, alternatively, the amount of the fees overpaid by Kingate Euro and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti.

(2) Alternatively:

(a) an order that Mr Grosso and Mr Ceretti pay the Funds the amount of the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti;

(b) alternatively, a declaration that the overpaid fees and/or their traceable proceeds which were paid on by Kingate Management and then by the Shareholders to Mr Grosso and Mr Ceretti constituted property to which the Funds retained legal title and/or its traceable proceeds, together with an order that Mr Grosso and Mr Ceretti return those fees and/or their traceable proceeds to the Funds.

LN/312895v1