136.      The form of the motion to dismiss will depend on the outcome of the motion to remove the reference. It may be that the District Court agrees to hear the entire motion to dismiss. However, if the District Court removes the reference only to issues not typically handled by the Bankruptcy Court, the Ashby Trustee may need to make two motions to dismiss: one in the District Court on non-bankruptcy issues, and one in the Bankruptcy Court with regard to all other issues.  Further information regarding the Ashby Trustee's motion or motions to dismiss is set out in the Confidential Affidavit.

137.      The Ashby Trustee understands from US Counsel that the motion to withdraw the reference could be decided relatively quickly. If so, it is possible that the motion or motions to dismiss will be filed prior to the hearing of this application. It is anticipated that a supplemental affidavit will be sworn in advance of the hearing of this application in order to update the Court as to the current position.

**Settlement discussions between Mr Picard and Mr Tacon**

138.      Given the nature of the claims articulated in both the Picard Claims and the Bermuda Proceedings, the Ashby Trustee is currently facing claims to the same funds held on the trusts of the Ashby Trust from competing claimants (the Kingate Funds and Mr Picard) arising out of the same facts. It is therefore relevant to set out my understanding of the discussions between those competing claimants.

139.      As set out above, according to the Fifth Creditors' Reports, Mr Tacon has permission from the BVI Court to enter into a settlement agreement with Mr Picard provided that settlement is consistent with the substance of the draft agreement considered by the BVI Court on 16 December 2009 (the "**Draft Agreement**").

140.      The Draft Agreement is contained at appendix B to Mr Tacon's Third Report to Creditors and Investors dated 31 July 2009 for each of the Kingate Funds (at pages 765 and 793 respectively).

141.      The principal terms of the Draft Agreement are that:

141.1   Each of the Kingate Funds will settle with Mr Picard on identical terms;

11698152.1

141.2    The Kingate Funds will pay to BLMIS 50% of their assets (as at the date of settlement), after providing for all the costs of the respective liquidations that remain accrued but unpaid;

141.3    The Kingate Funds will pay BLMIS 50% of any additional recoveries, including any successful claims against third parties;

141.4    The Kingate Funds will agree with Mr Picard a mechanism for determining who is in the best position to prosecute each potential third-party claim (including, presumably, the Bermuda Proceedings and the Picard Claims);

141.5    The Kingate Funds will be entitled to a fully allowed claim in the liquidation of BLMIS, with any dividends payable to the Kingate Funds from the liquidation of BLMIS being retained by Mr Picard until he has recovered 85% of his preference claim against the Kingate Funds;

141.6    Thereafter, 50% of any dividend payable to the Kingate Funds will be retained until Mr Picard has recovered 35% of his fraudulent preference claim;

141.7    Any payments from the Kingate Funds to Mr Picard will be added to the Kingate Funds' claims against BLMIS for the purpose of calculating their dividends from the BLMIS estate; and

141.8    Mr Picard will not prove as a creditor in the liquidations of the Kingate Funds.

142.    I understand from an update to creditors and investors of Kingate Global dated 16 September 2011 (page 803) that, at that time, settlement discussions between Mr Tacon and Mr Picard had advanced "significantly", although a negotiated settlement had not yet been agreed. I understand from LG that recent decisions against Mr Picard in the US Courts may have had an impact on those settlement discussions.

**The English Claim**

143.    A copy of the Claim Form issued by Mr Picard is at page 804. Besides the Ashby Trustee, the other Defendants reflect the Defendants to the Third Amended Complaint, save that the Kingate Funds, Citi and Bank of Bermuda are

11698152.1

not Defendants to the English Claim, and the Third Amended Complaint names the Ashby Trust and El Prela Trust, which are not legal entities.

## Service of the English Claim

144.    On 11 March 2011, the English Court granted Mr Picard an extension until 7 October 2011 in which to serve the Claim Form and Particulars of Claim on the Ashby Trustee (page 808).

145.    On 22 August 2011, Mr Picard issued an application to serve the English Claim out of the jurisdiction. That application was granted by order of Mr Justice Blair dated 1 September 2011 (page 809).

146.    On 13 September 2011, the English Claim was served in the BVI on the Ashby Holding Company and the Ashby Investment Company.

147.    On 16 September 2011, the English Claim was served in Liberia on the Ashby Trustee.

## Claims made against the Ashby Trustee in the English Claim

148.    The claims articulated in the Particulars of Claim are as follows:

148.1  A declaration pursuant to English and US law that the US$975,541,729 alleged to have been received by the Kingate Funds from BLMIS in the period before Madoff's arrest (the "**Transfers**") (or part thereof) and/or their traceable proceeds (or part of the proceeds) were held on constructive trust for Mr Picard;

148.2  An account and/or enquiry as to the whereabouts of the Transfers (or part thereof) and/or their traceable proceeds (or part of the proceeds);

148.3  An order that the Transfers be voided and the Transfers (or part thereof) and/or their traceable proceeds (or part of the proceeds) be returned to BLMIS;

148.4  Further or alternatively, damages or equitable compensation for knowing receipt in breach of trust;

148.5  Further or alternatively, a contribution and/or indemnity at common law or under the Civil Liability (Contribution) Act 1978;

40

148.6  An order for a contribution under section 213 of the Insolvency Act 1986, pursuant to the Cross-Border Insolvency Regulations 2006, or at common law;

148.7  Such further or other relief as the Court thinks fit;

148.8  Interest; and

148.9  Costs.

149.    The Ashby Trustee has sought advice from English Leading and Junior Counsel with respect to the English Claim. The Court is referred to the Confidential Affidavit for further details.

**The "stay" of the English Claim**

150.    On 22 August 2011, Mr Picard issued an application to stay the whole of the English Claim (see the application notice, draft order and witness statement of Laurence Lieberman at pages 811 to 824). The exhibit to Mr Lieberman's witness statement is not exhibited to this Affidavit, but can be made available to the Court upon request). So far as the Ashby Trustee is aware, that application has not yet been listed for hearing.

151.    On 7 October 2011 LG wrote to Taylor Wessing LLP seeking an extension of time for the Ashby Trustee to file its acknowledgment of service until the later of 14 November 2011 or the date falling seven days prior to the hearing of Mr Picard's stay application (the "**Acknowledgment Date**") (page 825).

152.    On 10 October 2011, the latest date by which it could do so, the Ashby Trustee filed an acknowledgment of service indicating an intention to contest the jurisdiction of the English Court.

153.    On 11 October 2011, Taylor Wessing LLP wrote to LG agreeing the proposals with respect to the Acknowledgment Date (page 827). That same day, LG wrote to Taylor Wessing LLP confirming that the Ashby Trustee had filed an acknowledgment of service (page 828) and seeking agreement that the 28 day period in which to make any application to contest jurisdiction should not begin until the Acknowledgment Date. Taylor Wessing LLP confirmed their client's agreement to that proposal by a letter dated 21 October 2011 (page 830).

11698152.1

**THE ASHBY TRUSTEE'S APPROACH TO SEEKING REPRESENTATIONS IN CONNECTION WITH THE PRESENT APPLICATION**

154.    The Ashby Trustee has consulted with Mr Picard and Mr Grosso and others in connection with this application. Its approach to consultation is explained below.

**Mr Picard**

155.    On 12 August 2011 LG wrote to Baker & Hostetler LLP (Mr Picard's lawyers in New York) to explain the Ashby Trustee's intention to make this application (page 831). While it was too early precisely to define the directions which the Ashby Trustee proposed to seek, the letter confirmed it was likely that the Ashby Trustee would ask the BVI Court to issue directions that it should file a motion to dismiss the Third Amended Complaint and, in the alternative, to stay litigation concerning it until such time as the Bermuda Proceedings have been resolved as against the Ashby Trustee. The letter sought confirmation of Mr Picard's position, in particular whether Mr Picard would oppose an order that the Ashby Trustee be entitled to be indemnified for its costs of defending the Third Amended Complaint out of the assets currently held on the trusts of the Ashby Trust. It also raised the prospect of the Ashby Trustee applying for directions with respect to the English Claim, which had not at that time been served on it.

156.    On 23 August 2011 Baker & Hostetler LLP wrote to LG confirming that Mr Picard would need to have sight of the application and take advice from local counsel in order to respond substantively. If necessary, a supplemental affidavit will be sworn in advance of the hearing of the application in order to update the BVI Court as to the current position with regard to Mr Picard.

**The adult beneficiaries under the Trust Deed**

157.    Besides Mr Grosso and his wife, there are six further beneficiaries named in the Trust Deed (collectively, the "**Additional Beneficiaries**"), being nephews and nieces of Mr and Mrs Grosso, all of whom the Ashby Trustee understands to be adult. The Ashby Trustee has had no previous contact with the Additional Beneficiaries. Nor has it had any previous contact with Mrs Grosso, despite the fact that the letter of wishes from Mr Grosso dated 24 March 1994 (page 153) asked the Ashby Trustee to consider Mr Grosso and Mrs Grosso as joint principal beneficiaries during their lifetimes.

11698152.1

158.    Before making an application of the kind sought now before the Court, the Ashby Trustee would normally be expected to have consulted with each of the adult beneficiaries of the Ashby Trust to ascertain their views on the directions sought. However, for the reasons I summarise below, in the unusual circumstances of the present application, the Ashby Trustee has concluded that it would be inappropriate for it to do so:

158.1    First, both the Third Amended Complaint and the English Claim include competing claims to the assets of the Ashby Trust (in respect of the former, by virtue of the avoidance and the Common Law Claims and in respect of the latter, by virtue of the constructive trust claims contained therein). If Mr Picard is successful in these claims, it will follow that the entire assets currently held on the trusts of the Ashby Trust would be held on trust for him (for distribution in the BLMIS estate). In those circumstances, the express beneficiaries of the Ashby Trust would have no further interest of any value in the Ashby Trust itself. This fact has led the Ashby Trustee to conclude that the interests of Mrs Grosso and the Additional Beneficiaries are absolutely aligned with those of Mr Grosso.

158.2    Secondly, for these reasons, and in the context of the Bermuda Directions Applications, on 10 May 2011, LG wrote to Stephenson Harwood (solicitors to Mr Grosso) seeking Mr Grosso's representations on the question of consultation with other beneficiaries named in the Trust Deed. A copy of LG's letter is at page 833. Stephenson Harwood responded on Mr Grosso's behalf in a letter dated 13 May 2011 (page 835). In that letter, Mr Grosso confirmed (as the Ashby Trustee had previously understood to be the case) that his wife is currently very unwell and would find it upsetting to be involved in legal action. Mr Grosso also explained that none of the Additional Beneficiaries are aware that they are named in the Trust Deed, and as such, it would not be appropriate for the Ashby Trustee to consult with them. Mr Grosso confirmed his willingness to consent to an application that he be appointed to represent the interests of all other adult beneficiaries named in the Trust Deed for the purpose of the relevant Bermuda Directions Application.

159.    By a letter dated 6 September 2011, Stephenson Harwood confirmed that this remains the position and that Mr Grosso is willing to consent to an application

43

that he be appointed to represent the interests of all other adult beneficiaries named in the Trust Deed for the purpose of this application (page 837).

160.    Accordingly, as was the case in the Bermuda Directions Applications, the Ashby Trustee considers it appropriate for Mr Grosso to represent the interests of Mrs Grosso and the Additional Beneficiaries in connection with the present application. It intends to serve a copy of its application on Mr Grosso once issued in order that he can respond substantively if he wishes to do so.

**Minor, unborn and unascertained beneficiaries**

161.    Given the significance to the beneficiaries of the Ashby Trust of both of the Picard Claims and the present application, the Ashby Trustee has concluded that it is appropriate that the interests of the minor, unborn and/or unascertained beneficiaries should be separately represented. The Ashby Trustee has previously identified Mr Imrie, a partner in the Cayman Islands office of Maples and Calder, who is admitted as a solicitor advocate in the BVI, as an appropriate person to represent the interests of those parties, he having previously been appointed to this role in connection with the Bermuda Directions Applications.

162.    Accordingly, on 5 September 2011, LG wrote to Mr Imrie on behalf of the Ashby Trustee, asking for confirmation whether or not he would consent to act in that capacity for the purpose of this application (page 838) (the enclosures to that letter are not exhibited to this Affidavit, since they consisted of documents which are already exhibited hereto).

163.    Mr Imrie responded by letter dated 11 October 2011 confirming his willingness to act as representative. The Ashby Trustee considers it appropriate for Mr Imrie to be appointed as representative of the interests of the minor, unborn and unascertained beneficiaries of the Ashby Trust and seeks an order that he be appointed as such for the purposes of the present application. The Ashby Trustee intends to serve a copy of its application on Mr Imrie once issued in order that he can respond substantively if he wishes to do so.

**The Charitable Class**

164.    The Trust Deed also provides for a further class of discretionary beneficiary, being "*any trust association body or other organisation in any part of the world the objects of which are charitable*" (the "**Charitable Class**")  For the reasons

explained above, the Ashby Trustee has concluded that the interests of this Charitable Class are also aligned with those of Mr Grosso and the Additional Beneficiaries.

165.    In the circumstances, the Ashby Trustee considers it appropriate for the Attorney General of the BVI (the "**Attorney General**") to be appointed as representative of the Charitable Class and seeks an order that he be appointed as such for the purposes of the present application. The Ashby Trustee intends to serve a copy of its application on the Attorney General once issued in order that he can respond substantively if he wishes to do so.

**Mr Tacon**

166.    Given the existence of the Bermuda Proceedings and the directions previously obtained from the BVI Court in relation to them, in addition to canvassing the views of the express beneficiaries of the Ashby Trust and Mr Picard, the Ashby Trustee considers it appropriate that Mr Tacon be joined to the present application. It intends to serve a copy of its application on Mr Tacon once issued in order that he can respond substantively if he wishes to do so.

## THE DIRECTIONS SOUGHT

167.    Taking account of the facts and matters explained above and in the Confidential Affidavit, the Ashby Trustee seeks the following directions:

167.1    That Mr Grosso is appointed and shall act in these proceedings as representative of the adult beneficiaries of the Ashby Trust and that his reasonable costs incurred in connection with this application be paid from the assets currently held on the trusts of the Ashby Trust;

167.2    That Mr Imrie is appointed and shall act in these proceedings as representative of the interests of the minor, unborn and/or unascertained beneficiaries of the Ashby Trust and that his reasonable costs incurred in connection with this application be paid from the assets currently held on the trusts of the Ashby Trust;

167.3    That the Ashby Trustee shall be indemnified from the assets currently held on the trusts of the Ashby Trust for its costs of making this application;

11698152.1

167.4    In respect of the Third Amended Complaint, that the Ashby Trustee shall
be indemnified from the assets currently held on the trusts of the Ashby
Trust for its costs of making the motions to withdraw the reference and
motions to dismiss articulated in the Confidential Affidavit, including costs
arising from any adverse costs orders made against it in pursuance of
those motions; and

167.5    In respect of the English Claim, that the Ashby Trustee shall be
indemnified from the assets currently held on the trusts of the Ashby
Trust for its costs of obtaining advice in relation to the English Claim,
considering that advice and taking such steps as appropriate in light of
that advice, including costs arising from any adverse costs orders made
against it in pursuance of those steps.

## COSTS

## Costs of steps already taken by the Ashby Trustee

The Third Amended Complaint

168.    Since 8 June 2011 (being the date on which the Ashby Trustee first had sight of
the Third Amended Complaint) the Ashby Trustee has incurred legal fees and
disbursements in connection with those proceedings, including in analysing and
preparing to respond to the claims advanced, taking appropriate advice, and
preparing for this application. Those fees and disbursements to the period
ending 28 October 2011, at the exchange rate prevailing at 15 November 2011,
equate to US$573,631.34. They are made up as follows:

168.1    LG's fees: £131,628.00;

168.2    US Counsel's fees: US$318,063.91;

168.3    English Counsel's fees: £15,725.00;

168.4    Other disbursements: £13,961.56.

The English Claim

169.    Since 9 August 2011 (being the date on which the Ashby Trustee first had sight
of the English Claim) the Ashby Trustee has incurred legal fees and
disbursements in connection with those proceedings, including in analysing the

46

claims advanced, taking appropriate advice, and preparing for this application. Those fees and disbursements to the period ending 28 October 2011 total £42,473.28, which at the exchange rate prevailing at 15 November 2011 equates to US$67,289.57. They are made up as follows:

169.1  LG's fees: £25,321.49;

169.2  English Counsel's fees: £16,737.50;

169.3  Other disbursements: £414.29.

170.    In addition to the legal fees and disbursements referred to above, during the period 8 June 2011 to 28 October 2011, the Ashby Trustee has also incurred other legal fees and disbursements, relating neither to this application nor the Picard Claims. Those unrelated costs are not relevant to this application and the Ashby Trustee does not seek an indemnity in respect of them in this application.

171.    Further information as to the costs of steps already taken by the Ashby Trustee is provided in the Confidential Affidavit. It is anticipated that a supplemental affidavit will be sworn in advance of the hearing of this application in order to update the Court as to the current costs position.

**Estimate of costs of future steps to be taken by the Ashby Trustee**

172.    LG and Freshfields have prepared estimates of the likely future costs of complying with the directions sought in this application. Those estimates are based on a number of assumptions, which are set out in the estimates themselves, including the assumption that the costs will be borne equally by the El Prela Trustee and the Ashby Trustee.

173.    A copy of those estimates of costs with respect to the Third Amended Complaint are at pages 841 to 843. The grand total at the exchange rate prevailing at 15 November 2011, including both estimated fees and disbursements, is:

173.1  US$452,463.46 to US$677,563.46 assuming a full scale fact review will not need to be undertaken prior to making the motions to withdraw the reference and motions to dismiss articulated in the Confidential Affidavit; and

11698152.1

173.2    US$816,741.64 to US$2,344,216.64 assuming that that exercise will be necessary.

174.    In relation to the English Claim, an estimate of costs has not yet been prepared for the purposes of this application. However, it is anticipated that a supplemental affidavit will be sworn in advance of the hearing of this application to provide relevant information to the Court.

**CONCLUSION**

175.    In all the circumstances, the Ashby Trustee respectfully applies for an order in the form of the draft accompanying its application papers.

SWORN by the above-named **FRANK OLIVER WALTERS**    )
at Monaco    )
this 16ᵗʰ day of November 2011    )

Before me

Solicitor/Commissioner for Oaths

**MARK LUSHER**
24, Boulevard Princesse Charlotte
MC 98000 MONACO
SOLICITOR

11698152.1

## Schedule 1 – Definitions

| | |
|---|---|
| "Acknowledgment Date" | The date until which the time for the Ashby Trustee to make any application to challenge the jurisdiction of the English Court in respect of the English Claim has been extended, by agreement (being the later of 14 November 2011 or the date falling seven days prior to the hearing of Mr Picard's stay application in respect of the English Claim) |
| "Additional Beneficiaries" | In addition to Mr Grosso and Mrs Grosso, the six further beneficiaries named in the Trust Deed being nephews and nieces of Mr Grosso |
| "Alpine Trustees" | Alpine Trustees Limited |
| "Ashby Holding Company" | Ashby Holding Services Limited |
| "Ashby Investment Company" | Ashby Investment Services Limited |
| "Ashby Trustee" | First Peninsula Trustees Limited as trustee of the Ashby Trust |
| "Attorney General" | The Attorney General of the BVI |
| "Bank of Bermuda" | Bank of Bermuda Limited (an indirect 100% subsidiary of HSBC Holdings Plc) |
| "Bankruptcy Court" | United States Bankruptcy Court for the Southern District of New York |
| "Bermuda Directions Applications" | The Trustees' application for directions to the BVI Court in respect of the Bermuda Proceedings |
| "Bermuda Proceedings" | Proceedings issued in the Supreme Court of Bermuda by Mr Tacon in his capacity as the Joint Liquidator of the Kingate Funds on 22 December 2010 against (1) KML (2) FIM Limited (3) FIM Advisers LLP (4) the Ashby Trustee (5) the El Prela Trustee (6) the Ashby Holding Company (7) the El Prela Holding Company (8) Mr Grosso (9) Mr Ceretti |
| "BLMIS" | Bernard L Madoff Investment Securities LLC |
| "BVI Court" | Eastern Caribbean Supreme High Court of Justice British Virgin Islands |
| "BVI" | British Virgin Islands |
| "Charitable Class" | A class of discretionary beneficiary named in the Trust Deed being any trust association body or other organisation in any part of the world the objects of which are charitable |
| "Citi" | Citi Hedge Fund Services Ltd (formerly Hemisphere Management Limited and BISYS Hedge Fund Services Ltd), the administrator of the Kingate Funds |
| "Class Action" | Consolidated class action complaint filed in the United States District Court, Southern District of New York on 18 May 2010 and entitled In re Kingate Management Limited Litigation, with Master File No.09 Civ 5386 (BAB) |
| "Common Law Claims" | Claims in unjust enrichment, conversion and money had and received asserted in the Third Amended Complaint |
| "Confidential Affidavit" | Second affidavit of Frank Oliver Walters in support of the present application concerning facts and matters which are privileged and/or confidential |
| "District Court" | United States District Court for the Southern District of New York |
| "Draft Agreement" | Draft settlement agreement between Mr Tacon and Mr Picard considered by the BVI Court on 16 December 2009 and contained at Appendix B to Mr Tacon's Third Report to Creditors and Investors dated 31 July 2009 for each of the Kingate Funds |

| "El Prela Holding Company" | El Prela Group Holding Services Limited |
|---|---|
| "El Prela Investment Company" | El Prela Trading Investments Limited |
| "El Prela Trustee" | Port of Hercules Trustees Limited |
| "English Claim" | Claim issued by Mr Picard in the High Court of Justice of England and Wales, Queens Bench Division, Commercial Court on 10 December 2010 with Claim Number 2010 Folio 1478 against the Ashby Trustee and eleven others |
| "Euro Management Agreement" | Agreement made between Kingate Euro and KML dated 1 May 2000 |
| "Extension Request" | The request by KML to the Holding Companies in or around June 2010 for a further loan in the sum of US$1,200,000 |
| "Fault Based Claims" | Fault based claims made in the Bermuda Proceedings against KML, FIM, Mr Grosso and Mr Ceretti |
| "Fifth Creditors' Reports" | Mr Tacon's Fifth Report to Creditors and Investors dated 27 January 2011 for each of the Kingate Funds |
| "FIM" | FIM Advisers LLP and FIM Limited taken together |
| "FIM Funds" | FIM funds of funds |
| "Fortis Guernsey" | Fortis Bank (C.I.) Limited, Guernsey, Channel Islands |
| "Freezing Order" | Order of the Monaco Court for the immediate attachment of assets held in a number of accounts in the name of the Ashby Trustee, the Ashby Holding Company, the Ashby Investment Company and certain HSBC Monaco Accounts connected to the El Prela Trust and Mr Ceretti |
| "Freshfields" | Freshfields Bruckhaus Deringer US LLP |
| "Global Management Agreement" | Agreement made between Kingate Global and KML dated 1 January 2006 (superseding and replacing previous management agreements between those parties dating back to 1994) |
| "Holding Companies" | The Ashby Holding Company and the El Prela Holding Company taken together |
| "HNL" | Hamilton Nominees Limited |
| "HSBC Monaco" | HSBC Private Bank (Monaco) SA |
| "Initial Transfer Claims" | Alleged avoidable and recoverable transfers made from BLMIS to the Kingate Funds asserted in the Third Amended Complaint |
| "Investment Companies" | The Ashby Investment Company and the El Prela Investment Company taken together |
| "Investment Objectives" | The investment objectives defined by the Ashby Trustee for the investment of the assets of the Ashby Trust |
| "Kingate B" | The class of shares called Kingate Global Fund – Class B Shares, created by Kingate Global at the end of February 1995 |
| "Kingate DM" | The class of shares called Kingate Global Fund – Class DM Shares, created by Kingate Global on 1 January 1996 |
| "Kingate Euro" | Kingate Euro Fund Limited (in liquidation) |
| "Kingate Funds" | Kingate Global and Kingate Euro taken together |
| "Kingate Global" | Kingate Global Fund Limited (in liquidation) |
| "KML" | Kingate Management Limited |
| "LG" | Lawrence Graham LLP, the Trustees' English Solicitors |
| "Loan Agreement" | The agreement dated 16 July 2009 between the Holding Companies (as lenders) and KML (as borrower) in respect of a term loan facility of up to US$1,200,000 |
| "Loan Agreements" | The Loan Agreement and the Supplemental Loan Agreement taken together |
| "Madoff" | Mr Bernard Madoff, principal of BLMIS |
| "Management Agreements" | The Global Management Agreement and the Euro Management Agreement taken together |

| "Monaco Affidavits" | Taken together, the Witness Statement of Andrew Witts dated 2 March 2009 and Exhibit "AW1"; the Affidavit of Mr Grosso dated 27 February 2009; the Affidavit of Peter Brigham (as Company Secretary of the Ashby Trustee) dated 19 March 2009; the Affidavit of Mr Ceretti dated 27 February 2009; and the Affidavit of Peter Brigham (as Director of the El Prela Trustee) dated 19 March 2009, served in connection with the Monaco Freezing Order |
|---|---|
| "Monaco Court" | The Court of First Instance of the Principality of Monaco |
| "Monaco Prosecutor" | Public Prosecutor of the Principality of Monaco |
| "Moore Stephens International" | International accounting and consulting association. Moore Stephens & Company Bermuda is a member of Moore Stephens International.  The Ashby Trustee and Moore Stephens Monaco are 100% subsidiaries of Moore Stephens & Company Bermuda |
| "Moore Stephens Monaco" | Moore Stephens Services SAM, whose offices are at L'Estoril, 31 Avenue Princesse Grace, Monte Carlo, MC 98000, Monaco.  It is a company authorised by the government of the Principality of Monaco and acts as administrator to the Ashby Trustee and El Prela Trustee |
| "Mr Ceretti" | Mr Federico Ceretti, settlor of the El Prela Trust |
| "Mr Grosso" | Mr Carlo Grosso, settlor and named beneficiary of the Ashby Trust |
| "Mr Imrie" | Mr Mac Imrie, a partner in the Cayman Islands office of Maples and Calder, who is admitted as a solicitor advocate in the BVI |
| "Mr Picard" | Irving H Picard, trustee for the liquidation of BLMIS |
| "Mr Tacon" | Mr William R Tacon and Mr Richard E L Fogerty of Zolfo Cooper, Joint Liquidators of the Kingate Funds |
| "Mrs Grosso" | Diana Maria Grosso, the wife of Mr Grosso and named beneficiary of the Ashby Trust |
| "Non-Fault Based Claims" | Non-fault based claims made in the Bermuda Proceedings against KML, the Trustees, the Ashby Holding Company, the El Prela Holding Company, Mr Grosso and Mr Ceretti |
| "Payment Instructions" | The transfer instructions sent by the Ashby Trustee to HSBC Monaco on 12 December 2008 and 15 December 2008 |
| "Petition" | A petition for the winding up of KML issued on 7 September 2011 |
| "Picard Claims" | The Third Amended Complaint and the English Claim taken together |
| "Picard US Complaint" | Complaint filed by Mr Picard in the United States Bankruptcy Court, Southern District of New York on 17 April 2009 against the Kingate Funds and Bank of Bermuda, with reference ADV.Pro.No.08-01789 (BRL) |
| "Port of Hercules Directors" | Port of Hercules Directors Limited |
| "SEC" | United States Securities and Exchange Commission |
| "Shares" | Participating common shares in the Kingate Funds |
| "SICCFIN Report" | Written report of SICCFIN to the Monaco Prosecutor dated 17 December 2008 |
| "SICCFIN" | The Service d'Information et de Contrôle Sur les Circuits Financiers of the Principality of Monaco |
| "SIPA" | United States Securities Investor Protection Act |
| "SIPC" | United States Securities Investor Protection Corporation |
| "Statutory Demand" | The notice of statutory demand dated 8 August 2011 issued by the Ashby Holding Company on KML |

11698152.1

| "Subsequent Transferee Claims" | Alleged subsequent transfers asserted in the Third Amended Complaint arising from the Initial Transfer Claims |
|---|---|
| "Supplemental Loan Agreement" | The agreement dated 28 September 2010 supplemental to the Loan Agreement between the Holding Companies (as lenders) and KML (as borrower) extending the facility granted by way of the Loan Agreement by up to US$1,200,000 |
| "Third Amended Complaint" | A claim brought against the Ashby Trustee and others in the Bankruptcy Court by Mr Picard with case reference Adv. Pro. No. 09-1161 (BRL) |
| "Transfers" | The total sum of US$975,541,729 received by the Kingate Funds from BLMIS in the period before Madoff's arrest |
| "Trott & Duncan" | Trott & Duncan Limited |
| "Trust Deed" | Instrument of trust relating to the Ashby Trust dated 24 March 1994 |
| "Trustees" | The Ashby Trustee and the El Prela Trustee taken together |
| "Trusts" | The Ashby Trust or the El Prela Trust taken together |
| "Unanimous Written Resolution" | A unanimous shareholders' resolution in respect of the winding up of KML purportedly passed on 10 August 2011 |
| "UK" | United Kingdom |

52

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

BVIHCV 2011/

BETWEEN:

FIRST PENINSULA TRUSTEES LIMITED
(AS TRUSTEE OF THE ASHBY TRUST)

<u>Claimant</u>

-and-

(1) IRVING H PICARD
(as trustee for the substantively consolidated
SIPA liquidation of Bernard L Madoff Investment
Securities LLC and the estate of Bernard L
Madoff)

(2) KINGATE GLOBAL FUND LIMITED (IN
LIQUIDATION)
(acting by William R Tacon and Richard E Fogerty
as joint liquidators)

(3) KINGATE EURO FUND LIMITED (IN
LIQUIDATION)
(acting by William R Tacon and Richard E Fogerty
as joint liquidators)

(4) CARLO GROSSO
(as representative of the adult beneficiaries of
the Ashby Trust)

(5) MAC IMRIE
(as representative of the minor, unborn and
unascertained beneficiaries of the Ashby
Trust)

(6) HER MAJESTY'S ATTORNEY GENERAL OF
THE BRITISH VIRGIN ISLANDS

<u>Defendants</u>

---

AFFIDAVIT OF
FRANK OLIVER WALTERS

---

**Maples & Calder**
Sea Meadow House, PO Box 173
Road Town
Tortola VG1110
British Virgin Islands

Ref: ADI/660226

11698152.1

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

(BVIHCV 2011)

BETWEEN:

FIRST PENINSULA TRUSTEES LIMITED
(AS TRUSTEE OF THE ASHBY TRUST)

-Applicant-

(1) IRVING H PICARD
(as trustee for the consolidated liquidation
SIPA liquidation of Bernard L Madoff Investment
Securities LLC and the estate of Bernard L
Madoff)

(2) KINGATE GLOBAL FUND, LIMITED (IN
LIQUIDATION)
(acting by William R Tacon and Richard C Fogerty
as Joint Liquidators)

(3) KINGATE EURO FUND, LIMITED (IN
LIQUIDATION)
(acting by William R Tacon and Richard C Fogerty
as Joint Liquidators)

(4) CARLO GROSSO
(as representative of the adult beneficiaries of
the Ashby Trust)

(5) MAC INNIS
(as representative of the minor, unborn and
unascertained beneficiaries of the Ashby
trust)

(6) HER MAJESTY'S ATTORNEY GENERAL OF
THE BRITISH VIRGIN ISLANDS
(Defendants)

AFFIDAVIT OF
FRANK DI VIZIO WALL [ ]

*Staples & Cater*
Sea Meadow House PO Box [ ]
Road Town
Tortola VG1 [ ]
British Virgin Islands

Ref: ADV08529

# EXHIBIT C

On behalf of: Claimant
F O Walters
First Affidavit
Exhibit "FOW1"
November 2011

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

BVIHCV 2011/ 0155

BETWEEN:

### PORT OF HERCULES TRUSTEES LIMITED
### (AS TRUSTEE OF THE EL PRELA TRUST)

Claimant

-and-

**(1) IRVING H PICARD**
(as trustee for the substantively consolidated SIPA liquidation of Bernard L
Madoff Investment Securities LLC and the estate of Bernard L Madoff)

**(2) KINGATE GLOBAL FUND LIMITED (IN LIQUIDATION)**
(acting by William R Tacon and Richard E Fogerty as joint liquidators)

**(3) KINGATE EURO FUND LIMITED (IN LIQUIDATION)**
(acting by William R Tacon and Richard E Fogerty as joint liquidators)

**(4) FEDERICO CERETTI**
(as representative of the adult beneficiaries of the El Prela Trust)

**(5) MAC IMRIE**
(as representative of the minor, unborn and unascertained beneficiaries of the
El Prela Trust)

**(6) HER MAJESTY'S ATTORNEY GENERAL OF THE BRITISH VIRGIN ISLANDS**

Defendants

---

### AFFIDAVIT OF
### FRANK OLIVER WALTERS

---

I, **FRANK OLIVER WALTERS** of L'Estoril, 31 Avenue Princesse Grace, Monte Carlo, MC
98000, Monaco **MAKE OATH** and **SAY** as follows:

## INTRODUCTION

1. I am a Manager – Trust & Corporate Services at Moore Stephens Services SAM, whose offices are at L'Estoril, 31 Avenue Princesse Grace, Monte Carlo, MC 98000, Monaco ("**Moore Stephens Monaco**").

2. Moore Stephens Monaco is a company authorised by the government of the Principality of Monaco. It acts as administrator to Port of Hercules Trustees Limited, being a company incorporated on 6 February 1993 under the laws of the British Virgin Islands ("**BVI**"), whose registered office is at Palm Grove House, Wickhams Cay 1, Road Town, Tortola, BVI (the "**El Prela Trustee**").

3. The facts and matters set out in this Affidavit are within my own knowledge, save where the contrary appears, and are true. Where such facts and matters are not within my own personal knowledge, they are true to the best of my information and belief and derive from the sources stated.

4. Exhibited to this Affidavit is a bundle of documents marked "Exhibit FOW1". References in this Affidavit to page numbers are to page numbers in Exhibit FOW1.

5. Nothing in this Affidavit is intended to be or should be read as a waiver of privilege on the part of the El Prela Trustee or its 100% subsidiaries.

6. This Affidavit is structured as follows:

| Section heading | Page |
| --- | --- |
| Introduction, purpose of the application and background | 2 |
| Overview | 7 |
| The El Prela Trust | 8 |
| The Kingate Funds and Kingate Management Limited | 20 |
| Legal action against the El Prela Trustee | 29 |
| Claims by Irving H Picard against the El Prela Trustee | 33 |
| The El Prela Trustee's approach to seeking representations in | 41 |

11698343.1

| | |
|---|---|
| connection with the present application | |
| Directions sought by the El Prela Trustee | 44 |
| Costs | 45 |
| Conclusion | 47 |

**Purpose of the Application**

7.      I make this Affidavit in support of an application by the El Prela Trustee for an
order for the following directions in respect of (i) a claim brought against the El
Prela Trustee and others in the United States Bankruptcy Court of the Southern
District of New York (the **"Bankruptcy Court"**) with case reference Adv. Pro. No.
09-1161 (BRL) (the **"Third Amended Complaint"**) and (ii) a claim brought
against the El Prela Trustee and others in the High Court of Justice of England
and Wales, Queen's Bench Division, Commercial Court with claim number 2010
Folio 1478 (the **"English Claim"**), the subject matter of both of which is
explained further below:

7.1      That Mr Federico Ceretti (**"Mr Ceretti"**) is appointed and shall act in these
proceedings as representative of the adult beneficiaries of the El Prela
Trust and that his reasonable costs incurred in connection with this
application be paid from the assets currently held on the trusts of the El
Prela Trust;

7.2      That Mr Mac Imrie is appointed and shall act in these proceedings as
representative of the interests of the minor, unborn and/or unascertained
beneficiaries of the El Prela Trust and that his reasonable costs incurred
in connection with this application be paid from the assets currently held
on the trusts of the El Prela Trust;

7.3      That the El Prela Trustee shall be indemnified from the assets currently
held on the trusts of the El Prela Trust for its costs of making this
application;

7.4      In respect of the Third Amended Complaint, that the El Prela Trustee
shall be indemnified from the assets currently held on the trusts of the El

11698343.1