88.2    Such other purpose as the Holding Companies may have (in their absolute discretion) agreed in writing in advance.

89.    The facility granted under the Loan Agreement was specifically not to be used for KML's direct litigation defence costs and was made subject to strict conditions. Prior to the Loan Agreement being agreed, the Trustees reconfirmed to KML the purpose of the Loan Facility (as defined) by way of a side letter from LG dated 7 July 2009 (page 267).

90.    The Loan Agreement set out in clause 4.2 (pages 252 to 253) a number of conditions precedent which needed to be fulfilled before the Holding Companies were obliged to make an Advance (as defined).    By clause 4.4 of the Loan Agreement (page 253), the Holding Companies had the ability to cancel unilaterally any undrawn part of the Loan Facility at any time on giving prior written notice to KML.

*Supplemental Loan Agreement dated 28 September 2010*

91.    In or around June 2010, KML made a request to the Holding Companies for a further loan of up to US$1,200,000 so as to extend the Loan Facility from US$1,200,000 to US$2,400,000 (the "**Extension Request**").

92.    On 28 September 2010 the Holding Companies (as lenders) and KML (as borrower) entered into a supplemental agreement to the Loan Agreement, extending the facility granted by way of the Loan Agreement by up to US$1,200,000 (the "**Supplemental Loan Agreement**").    A copy of the Supplemental Loan Agreement is at page 268.    Taken together, the Loan Agreement and the Supplemental Loan Agreement are referred to in this Affidavit as the "**Loan Agreements**".

*Advances made to KML under the Loan Agreements*

93.    From July 2009, the El Prela Holding Company made Advances to KML under the Loan Agreements.    The total Advances made by the El Prela Holding Company pursuant to the Loan Agreements were US$900,000.

*Suspension of Advances under the Supplemental Loan Agreement*

94.    On 22 December 2010, Mr Tacon issued the Bermuda Proceedings and on 7 January 2011, the El Prela Trustee and the El Prela Holding Company received

26

11698343.1

the Writ and draft Statement of Claim in respect of those proceedings. In light of the claims articulated in the draft Statement of Claim, the El Prela Trustee and El Prela Holding Company gave consideration to whether it was appropriate for the El Prela Holding Company to make any further advance to KML pursuant to the Supplemental Loan Agreement.

95.     On 7 February 2011, LG wrote to KML (page 298) confirming that the Holding Companies would not make any further Advance to KML under the Supplemental Loan Agreement until further notice. No further funding has been advanced, and a petition has since been issued for KML's winding up, as explained further below.

Resignation of KML's directors and Petition to wind up KML

96.     In May 2011, KML's remaining directors, Chris Wetherhill and Shazieh Salahuddin, gave notice of their resignation from KML.

97.     The Trustees understand from their lawyers in Bermuda that under the Bermuda Companies Act, members of a company are under a positive obligation to appoint replacement directors in the event that the number of directors falls below the statutory minimum of two. As beneficial owners of the shares in KML, the Holding Companies have explored the possibility of appointing replacement directors, but concluded that, in the absence of third party funding, it would be difficult if not impossible to find prospective directors willing to accept an appointment.

98.     By the time that KML's remaining directors resigned in May 2011, KML had ceased to carry on the business for which it was incorporated. Thereafter, the Holding Companies considered whether KML should be wound up, since it was unable to pay its debts as they fell due. At that time, those acting for the Holding Companies were not aware of the fact that the legal ownership of the shares in KML lay with a nominee company, Hamilton Nominees Limited ("HNL").

99.     On 3 August 2011, the El Prela Holding Company issued a notice of statutory demand on KML via its registered agents (page 299, the "Statutory Demand"). An equivalent demand was served on behalf of the Ashby Holding Company. The Statutory Demand gave notice that, the Repayment Date (as defined in the Supplemental Loan Agreement) having passed, unless the US$900,000 advanced to KML pursuant to the Loan Agreements, plus interest, was repaid in

27

full within 21 days, the El Prela Holding Company could petition to wind up KML
pursuant to the Bermuda Companies Act.

100.    The El Prela Holding Company did not follow up on the Statutory Demand.
Instead, on 10 August 2011 the Holding Companies each resolved to enter into a
unanimous written resolution, purportedly as the members of KML, that KML
should be wound up and that Trott & Duncan Limited ("**Trott & Duncan**") should
be instructed to prepare and file the appropriate petition for the winding up of
KML, swear an affidavit verifying its contents and take all necessary steps to
seek an order appointing a liquidator and/or joint provisional liquidators and/or
the Official Receiver.  Consequentially, a unanimous shareholders' resolution to
that effect was purportedly passed on 10 August 2011 (the "**Unanimous Written
Resolution**") (page 302).

101.    On 7 September 2011, a winding up petition was issued (the "**Petition**") (page
304) which was advertised on 14 September 2011. The return date in respect of
the Petition was 14 October 2011. In the event, representatives of both Mr Tacon
and Mr Picard notified an intention to appear at the hearing. Correspondence
was exchanged in advance of it (see pages 311 to 320) culminating in service on
behalf of Mr Picard of affidavit evidence on the eve of the hearing itself.  (The
affidavit and exhibit are not exhibited to this Affidavit but can be made available
to the Court upon request).  During the course of this correspondence it became
clear that the Holding Companies had overlooked the fact that legal ownership of
the KML shares lay with HNL.  As a consequence, the Unanimous Written
Resolution was confirmed and adopted by a written resolution of HNL dated 14
October 2011 (page 321) which ratified the steps taken by Trott & Duncan in
relation to the Unanimous Written Resolution.

102.    In the event, the hearing of the Petition was adjourned on 14 October 2011.  A
copy of the order is at page 322.  Further correspondence has since been
exchanged between Trott & Duncan and Mr Picard's advisers (see pages 324 to
331), with the result that Mr Picard and Mr Tacon have confirmed that they do
not intend to oppose the Petition.

103.    While KML has been without directors, it has nevertheless had to continue to
address various issues, including the proceedings to which it is a party (namely
the Bermuda Proceedings and the Picard Claims) until such time as replacement
directors or joint provisional liquidators of KML are appointed.  This has been

28

done by the sole member, HNL, resolving for KML to issue relevant instructions in relation to those proceedings.

104.    At the same time, the Trustees are aware from copy invoices sent to KML's registered agent, that KML continues to incur certain expenses in the form of costs incurred for storage of KML's documents and IT equipment.  The most recent such invoices from Island Self Storage, each for US$175, have been due for payment on 1 June 2011, 1 July 2011, 1 August 2011, 1 September 2011 and 1 October 2011.  In light of the fact that KML was unable to pay these invoices, and given that non-payment might have placed disclosable documents at risk of destruction, the Holding Companies made arrangements to pay them.

## LEGAL ACTION AGAINST THE EL PRELA TRUSTEE

105.    In addition to the Picard claims, which are explained in more detail at paragraphs 125 and 143 below, the El Prela Trustee has been or is a party to two other legal proceedings.  These are:

105.1    A temporary freezing order granted by the Court of First Instance of the Principality of Monaco (the "**Monaco Court**") over certain accounts of the El Prela Trust and its 100% subsidiaries held in Monaco; and

105.2    The Bermuda Proceedings.

106.    In addition, there is a consolidated class action complaint that is of potential relevance to the El Prela Trustee but to which it is not a party, filed in the United States District Court, Southern District of New York on 18 May 2010 and entitled In re Kingate Management Limited Litigation, with Master File No. 09 Civ.5386 (BAB) (the "**Class Action**").

107.    Further detail of these legal proceedings is given below.

### The Monaco Freezing Order and the creation of the Monaco Affidavits

108.    In late 2008, the El Prela Trustee and the El Prela Investment Company held significant cash balances, totalling some US$55,017,846.34 with HSBC Private Bank (Monaco) SA ("**HSBC Monaco**"). In early December 2008, concerns began to be raised about the stability of HSBC, as a result of the global crisis in the

29

financial sector. From mid-December 2008 onwards, there was a sharp fall in HSBC's share price.  As a result, following consideration of the issue by telephone with Mr Ceretti, the El Prela Trustee decided to reduce the El Prela Trust's exposure to HSBC by transferring some of the cash balances held with HSBC Monaco to Lombard Odier Darier Hentsch & Cie in Geneva, Switzerland ("**Lombard Odier**").  Accordingly, on 12 December 2008, the El Prela Trustee sent a payment instruction to HSBC Monaco requesting the transfer of the sum of US$15,000,000 from that El Prela Trust account to an El Prela Trust account held with Lombard Odier (page 332) (the "**Payment Instruction**").

109.    To the best of my knowledge, derived from written representations dated 17 December 2008 made by the Service d'Information et de Contrôle Sur les Circuits Financiers of the Principality of Monaco ("**SICCFIN**") to the Public Prosecutor of the Principality of Monaco (the "**Monaco Prosecutor**") at page 333 (English translation) and page 347 (original) (the "**SICCFIN Report**"), the Payment Instruction led HSBC Monaco to make a suspicious transaction report to SICCFIN, following which SICCFIN prepared the SICCFIN Report.

110.    The immediate consequence of the SICCFIN Report having been transmitted to the Monaco Prosecutor was that, on 19 December 2008, the Monaco Court ordered the immediate attachment of assets held in a number of HSBC Monaco accounts in the name of the El Prela Trustee, the El Prela Holding Company and the El Prela Investment Company, as well as certain HSBC Monaco accounts connected to the Ashby Trust and Mr Ceretti (the "**Freezing Order**").  This rendered the relevant account of the El Prela Trust at HSBC Monaco and those of its direct 100% subsidiaries inoperable until such time as the Freezing Order was lifted.

111.    On 19 June 2009 the El Prela Trustee and others interested in the Freezing Order issued an application before the Monaco Court for an order that it be lifted, supported by a number of affidavits and a witness statement (taken together, the "**Monaco Affidavits**"), copies of which are at pages 363 to 431.  A copy of the accompanying exhibit, which runs to two lever arch files, can be made available to the Court upon request.

112.    Following issue of the application, on 8 July 2009 the Monaco Court ordered the lifting of the Freezing Order (a copy of the resulting order of the Monaco Court is at page 432. An English translation has not been provided, but can be obtained

30

on request). Subsequently, on 9 July 2009 the Payment Instruction which had been the cause of the suspicious transaction report was re-issued, and the transfer effected. No assets were removed from the El Prela Trust, the El Prela Holding Company or the El Prela Investment Company as a consequence of that transfer.

### The Bermuda Proceedings

113.    On 22 December 2010 by way of a Writ of Summons (page 438), the Kingate Funds commenced the Bermuda Proceedings against the El Prela Trustee and eight other Defendants, being KML, FIM Advisers LLP, FIM Limited, the Ashby Trustee, the Holding Companies, Mr Grosso and Mr Ceretti. The Writ and accompanying Statement of Claim (page 444) were served on the El Prela Trustee via its lawyers in Bermuda on 7 April 2011, following the El Prela Trustee's agreement to facilitate service, subject to first agreeing a timetable that took into account the steps the El Prela Trustee needed to take in light of those proceedings, namely the making of the previous applications for directions referred to at paragraph 20 above (the "**Bermuda Directions Applications**").

114.    The El Prela Trustee entered a memorandum of appearance before the Bermuda Court on 13 April 2011.

115.    The claims made in the Bermuda Proceedings divide into two broad categories:

    115.1   Non-fault based claims against KML, the Trustees, the Holding Companies, Mr Grosso and Mr Ceretti (the "**Non-Fault Based Claims**"); and

    115.2   Fault based claims against KML, FIM, Mr Grosso and Mr Ceretti (the "**Fault Based Claims**").

116.    The Non-Fault Based Claims, which are the only claims advanced against the Trustees are, in summary, as follows:

    116.1   Claims for the recovery from KML, the Trustees, the El Prela Holding Company, and/or the Ashby Holding Company of management fees alleged to have been paid by the Kingate Funds to KML on the basis of a mistake. The claims are brought on the basis of unjust enrichment. It is alleged that the Trustees are liable as ultimate recipients of the fees, and/or that Mr Grosso and Mr Ceretti are liable as ultimate recipients of

31

the fees, and/or ultimate beneficial owners of shares in KML. These claims are for US$254,478,999.69 and 56,226,531.48 Euros or alternatively, the amount of fees paid by the Kingate Funds (and/or their traceable proceeds) which were paid on by KML to the Trustees.

116.2 Alternatively, claims for an order that the Trustees pay the Kingate Funds the amount of the fees and/or their traceable proceeds which were paid on by KML to the Trustees, or alternatively, a declaration that the Kingate Funds retain legal title in the allegedly overpaid fees and/or their traceable proceeds.

116.3 Alternatively, claims for a declaration that KML, the Trustees, the El Prela Holding Company, the Ashby Holding Company, Mr Grosso and/or Mr Ceretti hold the allegedly overpaid fees, together with their traceable proceedings, on trust for the Kingate Funds, and an order that they account to the Kingate Funds for them.

117.    The Fault Based Claims, which do not directly concern the Trustees, are based on allegations of breach of tortious duties of care and/or negligent misstatement against KML, FIM, Mr Grosso and Mr Ceretti, and damages for breach of contractual duties of care against KML.

**The Class Action**

118.    A copy of the Amended Consolidated Class Action Complaint is at page 542. The Plaintiffs to the Class Action are Silvana Worldwide Corp., Criterium Capital Fund, B.V., BBF Trust, BG Valores, S.A., Banca Arner S.A., Alvaro Castillo, Lucien Geldzahler, Jaques Lamac, Nitkey Holdings Corporation and all others similarly situated. Paragraph 14 of the Class Action complaint identifies the Plaintiffs as having *"lost their investments in the [Kingate] Funds as of December 10, 2008, and also [having] paid substantial fees that were wrongfully charged based on fictitious investment returns"* (page 558).

119.    The El Prela Trustee is not named as a Defendant to the Class Action, those Defendants being KML, Tremont (Bermuda) Limited, Tremont Group Holdings, Inc., FIM Limited, FIM Advisers LLP, FIM (USA) Incorporated, Mr Grosso, Mr Ceretti, Graham H Cook, John E Epps, Sandra Manzke, Charles D Sebah, Keith R Bish, Christopher Wetherhill and Michael G Tannenbaum. However, the El Prela Trustee recognises that the Class Action plaintiffs may well seek to join it

32

as a Defendant to the Class Action at some point in the future, given that it holds assets deriving from dividends declared payable by KML and calculated by reference to KML's profits, which in turn were derived from management fees calculated by reference to the NAV of the Kingate Funds.

120.    Given that it is not a party to these proceedings, the El Prela Trustee has not sought substantive legal advice in connection with the complaint.

121.    However, the El Prela Trustee is aware from information passed to it from its US lawyers that the Class Action complaint was dismissed in its entirety by an order of Judge Batts dated 30 March 2011 (page 701). That order also denied the Plaintiffs leave to re-plead the complaint.

122.    On 11 April 2011 the Plaintiffs issued a notice of appeal (page 731) stating their intention to appeal the judgment and order of Judge Batts to the United States Court of Appeals for the Second Circuit.

123.    On one view, the complaint made by the Class Action is one more properly within the province of Mr Tacon as joint liquidator of the Kingate Funds, who could also take steps to have the complaint struck out.

124.    However, until such time as Mr Tacon moves to strike out the Class Action complaint, or the appeal against the judgment and order of Judge Batts is finally determined in favour of the Defendants to the Class Action, there remains the possibility that the El Prela Trustee will be joined as a party to it.  Naturally, if that occurs, the El Prela Trustee will of necessity have to make a further application to the BVI Court for directions as to how it should proceed with respect to that proceeding.

## CLAIMS BY MR PICARD AGAINST THE EL PRELA TRUSTEE

### The Third Amended Complaint

125.    On 20 May 2011, Mr Picard filed the Third Amended Complaint (page 1) against the El Prela Trustee and 17 other Defendants, being Mr Ceretti, Mr Grosso, the Kingate Funds, KML, FIM Advisers LLP, FIM Limited, Citi,  the Ashby Trust[3],

---

[3] The Ashby Trust has no legal personality.

11698343.1

Alpine Trustees, the Ashby Trustee, the El Prela Trust[4], the Holding Companies, the El Prela Investment Company, Ashby Investment Services Limited (the "**Ashby Investment Company**", together with the El Prela Investment Company, the "**Investment Companies**") and Bank of Bermuda. The Holding Companies and the Investment Companies are purportedly joined *"individually and as trustees of"* the Trusts. I can confirm that neither the Holding Companies nor the Investment Companies have ever acted as trustees of the Trusts.

126.   The Third Amended Complaint was the first time the El Prela Trustee had been named as a Defendant to the Picard US Proceedings, Mr Picard having initially filed those proceedings against the Kingate Funds and Bank of Bermuda on 17 April 2009, as set out above.

**Service of the Third Amended Complaint**

127.   As noted above, the El Prela Trustee is a company incorporated and registered in the BVI.  On 22 June 2011, the Third Amended Complaint was served on the El Prela Trustee by SCA Creque (special counsel to Mr Picard in the BVI) via Moore Stephens BVI.   The accompanying summons and notice of pre-trial conference (page 733) required the El Prela Trustee to submit a motion or answer within 30 days from the date of issue, being 14 July 2011.

128.   On 14 July 2011, the El Prela Trustee and the other Defendants who had been served in the BVI, namely, the Holding Companies and the Investment Companies (acting by Freshfields Bruckhaus Deringer US LLP ("**Freshfields**")) agreed with Mr Picard (acting by Baker & Hostetler LLP) an extension of time (until 18 August 2011) to respond to the Third Amended Complaint, by way of a stipulation dated 14 July 2011.  Further extensions, to which the El Prela Trustee was also a party, were agreed on 10 August 2011 and 14 October 2011 the latest of which extended the time to move, answer or otherwise respond until 16 November 2011 (page 735)[5].   By joining in those stipulations, the El Prela Trustee agreed to waive any defence based on insufficiency of service of process, although the El Prela Trustee reserved the right to challenge the jurisdiction of the New York Court.

---

[4] The El Prela Trust has no legal personality.

[5] At the time of finalising this Affidavit, Baker & Hostetler LLP and Freshfields were in discussions regarding a further such extension until 16 February 2012.

34

11698343.1

**The Claims made against the El Prela Trustee in the Third Amended Complaint**

129.     As I have explained above, there are 17 Defendants to the Third Amended
Complaint in addition to the El Prela Trustee, which alleges 15 counts upon
which Mr Picard seeks judgment, as set out more fully at paragraphs 276 to 359
of the Third Amended Complaint (pages 65 to 83).  The claims made divide into
three broad categories:

129.1 The return of alleged avoidable and recoverable initial transfers from the
Kingate Funds of approximately US$976 million (US$438 million in
respect of Kingate Global and US$538 million in respect of Kingate Euro)
alleged to have been transferred to those entities by BLMIS (the "**Initial
Transfer Claims**");

129.2 The return of alleged subsequent transfers against the Trustees, KML,
FIM Limited, FIM Advisers LLP, the Holding Companies, the Investment
Companies, the Trusts[6], Alpine Trustees, Mr Grosso, Mr Ceretti and Citi
(the "**Subsequent Transferee Claims**"); and

129.3 Common law claims in unjust enrichment, conversion and money had
and received (the "**Common Law Claims**").

130.     The Third Amended Complaint also seeks the disallowance of the Kingate
Funds' customer claims in the BLMIS bankruptcy, the equitable subordination of
those customer claims (as to the status of which, see paragraph 78.1 above),
and, against Bank of Bermuda, a declaratory judgment that funds currently
frozen in the Kingate Funds' accounts held with that bank are to be returned to
the BLMIS estate.

131.     The Subsequent Transferee Claims and the Common Law Claims, which are the
only claims advanced against the Trustees are, in summary, articulated in the
Third Amended Complaint as follows:

131.1 Claims for the recovery of alleged "subsequent transfers" (or the value
thereof) alleged to have emanated from BLMIS. Similar claims are made
under state law (the New York Debtor and Creditor Law) and under
federal law (Title 11 of the United States Bankruptcy Code), as

---

[6] As stated above, the Trusts have no legal personality.

11698343.1

summarised at paragraphs 331 and 337 of the Third Amended Complaint (pages 74 to 75);

131.2 Unjust enrichment claims against the Trustees, KML, FIM Limited, FIM Advisers LLP, the Holding Companies, the Investment Companies, the Trusts[7], Alpine Trustees, Mr Grosso, Mr Ceretti and Citi on the basis that they "*have wrongfully and unconscionably benefited from the receipt of [fees] from BLMIS, for which they did not, in good faith, provide fair value*", as summarised at paragraphs 347 to 350 of the Third Amended Complaint (pages 77 to 78);

131.3 Conversion claims against those same Defendants on the basis that they have "*intentionally exercised dominion and control over [BLMIS property] in a matter inconsistent with and in wilful disregard of the solvency of the BLMIS estate*", as summarised at paragraphs 351 to 353 of the Third Amended Complaint (page 78); and

131.4 Money had and received against all Defendants, on the basis that they "*are currently in possession of, or have control over, [BLIMS property, to which they] have no lawful or equitable right..., having obtained the monies through fraud, deceit or mistake*", as summarised at paragraphs 354 to 356 of the Third Amended Complaint (pages 78 to 79).

132. The El Prela Trustee has sought advice from US Counsel on the appropriate response to the Third Amended Complaint, in order that it can determine the motions it should make with respect to it. The Court is referred to the Confidential Affidavit for details of the resulting advice. The directions sought by the El Prela Trustee as a consequence of that advice are at paragraph 166 below.

133. In summary, and as set out in more detail below, the El Prela Trustee has filed a motion to withdraw the reference and proposes to file a motion or motions to dismiss the Third Amended Complaint.

---

[7] Ibid.

36

**Motion to withdraw the reference**

134.     On 7 and 14 October 2011, certain of the Defendants to the Third Amended
         Complaint made motions to the United States District Court for the Southern
         District of New York (the "**District Court**") to have certain legal issues heard by
         the District Court rather than the Bankruptcy Court on the basis that those issues
         will involve consideration of federal non-bankruptcy law. On 17 October 2011 the
         El Prela Trustee joined those motions. It is anticipated that the motions will be
         heard and determined in the coming months. Further information regarding the
         El Prela Trustee's motion to withdraw the reference is set out in the Confidential
         Affidavit.

**Motion to dismiss**

135.     The El Prela Trustee proposes to make a motion or motions to dismiss the Third
         Amended Complaint on a number of grounds, further details and a legal opinion
         on the merits of which are set out in the Confidential Affidavit.

136.     The form of the motion to dismiss will depend on the outcome of the motion to
         remove the reference. It may be that the District Court agrees to hear the entire
         motion to dismiss. However, if the District Court removes the reference only to
         issues not typically handled by the Bankruptcy Court, the El Prela Trustee may
         need to make two motions to dismiss: one in the District Court on non-
         bankruptcy issues, and one in the Bankruptcy Court with regard to all other
         issues.  Further information regarding the El Prela Trustee's motion or motions to
         dismiss is set out in the Confidential Affidavit.

137.     The El Prela Trustee understands from US Counsel that the motion to withdraw
         the reference could be decided relatively quickly. If so, it is possible that the
         motion or motions to dismiss will be filed prior to the hearing of this application. It
         is anticipated that a supplemental affidavit will be sworn in advance of the
         hearing of this application in order to update the Court as to the current position.

**Settlement discussions between Mr Picard and Mr Tacon**

138.     Given the nature of the claims articulated in both the Picard Claims and the
         Bermuda Proceedings, the El Prela Trustee is currently facing claims to the
         same funds held on the trusts of the El Prela Trust from competing claimants
         (the Kingate Funds and Mr Picard) arising out of the same facts. It is therefore

37

relevant to set out my understanding of the discussions between those competing claimants.

139.   As set out above, according to the Fifth Creditors' Reports, Mr Tacon has permission from the BVI Court to enter into a settlement agreement with Mr Picard provided that settlement is consistent with the substance of the draft agreement considered by the BVI Court on 16 December 2009 (the "**Draft Agreement**").

140.   The Draft Agreement is contained at appendix B to Mr Tacon's Third Report to Creditors and Investors dated 31 July 2009 for each of the Kingate Funds (at pages 757 and 785 respectively).

141.   The principal terms of the Draft Agreement are that:

141.1   Each of the Kingate Funds will settle with Mr Picard on identical terms;

141.2   The Kingate Funds will pay to BLMIS 50% of their assets (as at the date of settlement), after providing for all the costs of the respective liquidations that remain accrued but unpaid;

141.3   The Kingate Funds will pay BLMIS 50% of any additional recoveries, including any successful claims against third parties;

141.4   The Kingate Funds will agree with Mr Picard a mechanism for determining who is in the best position to prosecute each potential third-party claim (including, presumably, the Bermuda Proceedings and the Picard Claims);

141.5   The Kingate Funds will be entitled to a fully allowed claim in the liquidation of BLMIS, with any dividends payable to the Kingate Funds from the liquidation of BLMIS being retained by Mr Picard until he has recovered 85% of his preference claim against the Kingate Funds;

141.6   Thereafter, 50% of any dividend payable to the Kingate Funds will be retained until Mr Picard has recovered 35% of his fraudulent preference claim;

38

141.7   Any payments from the Kingate Funds to Mr Picard will be added to the
Kingate Funds' claims against BLMIS for the purpose of calculating their
dividends from the BLMIS estate; and

141.8   Mr Picard will not prove as a creditor in the liquidations of the Kingate
Funds.

142.   I understand from an update to creditors and investors of Kingate Global dated
16 September 2011 (page 795) that, at that time, settlement discussions
between Mr Tacon and Mr Picard had advanced "significantly", although a
negotiated settlement had not yet been agreed. I understand from LG that recent
decisions against Mr Picard in the US Courts may have had an impact on those
settlement discussions.

## The English Claim

143.   A copy of the Claim Form issued by Mr Picard is at page 796. Besides the El
Prela Trustee, the other Defendants reflect the Defendants to the Third Amended
Complaint, save that the Kingate Funds, Citi and Bank of Bermuda are not
Defendants to the English Claim, and the Third Amended Complaint names the
Ashby Trust and El Prela Trust, which are not legal entities.

## Service of the English Claim

144.   On 11 March 2011, the English Court granted Mr Picard an extension until 7
October 2011 in which to serve the Claim Form and Particulars of Claim on the
El Prela Trustee (page 800).

145.   On 22 August 2011, Mr Picard issued an application to serve the English Claim
out of the jurisdiction. That application was granted by order of Mr Justice Blair
dated 1 September 2011 (page 801).

146.   On 13 September 2011, the English Claim was served in the BVI on the El Prela
Trustee, the El Prela Holding Company and the El Prela Investment Company.

## Claims made against the El Prela Trustee in the English Claim

147.   The claims articulated in the Particulars of Claim are as follows:

147.1   A declaration pursuant to English and US law that the US$975,541,729
alleged to have been received by the Kingate Funds from BLMIS in the

39

period before Madoff's arrest (the "**Transfers**") (or part thereof) and/or their traceable proceeds (or part of the proceeds) were held on constructive trust for Mr Picard;

147.2  An account and/or enquiry as to the whereabouts of the Transfers (or part thereof) and/or their traceable proceeds (or part of the proceeds);

147.3  An order that the Transfers be voided and the Transfers (or part thereof) and/or their traceable proceeds (or part of the proceeds) be returned to BLMIS;

147.4  Further or alternatively, damages or equitable compensation for knowing receipt in breach of trust;

147.5  Further or alternatively, a contribution and/or indemnity at common law or under the Civil Liability (Contribution) Act 1978;

147.6  An order for a contribution under section 213 of the Insolvency Act 1986, pursuant to the Cross-Border Insolvency Regulations 2006, or at common law;

147.7  Such further or other relief as the Court thinks fit;

147.8  Interest; and

147.9  Costs.

148.   The El Prela Trustee has sought advice from English Leading and Junior Counsel with respect to the English Claim. The Court is referred to the Confidential Affidavit for further details.

**The "stay" of the English Claim**

149.   On 22 August 2011, Mr Picard issued an application to stay the whole of the English Claim (see the application notice, draft order and witness statement of Laurence Lieberman at pages 803 to 816). The exhibit to Mr Lieberman's witness statement is not exhibited to this Affidavit, but can be made available to the Court upon request). So far as the El Prela Trustee is aware, that application has not yet been listed for hearing.

40

150.     On 7 October 2011 LG wrote to Taylor Wessing LLP seeking an extension of
         time for the El Prela Trustee to file its acknowledgment of service until the later of
         14 November 2011 or the date falling seven days prior to the hearing of Mr
         Picard's stay application (the "**Acknowledgment Date**") (page 817).

151.     On 11 October 2011, Taylor Wessing LLP wrote to LG agreeing the proposals
         with respect to the Acknowledgment Date subject to receiving certain
         confirmations (page 819), which LG provided by letter the same day (page 820).

## THE EL PRELA TRUSTEE'S APPROACH TO SEEKING REPRESENTATIONS IN CONNECTION WITH THE PRESENT APPLICATION

152.     The El Prela Trustee has consulted with Mr Picard and Mr Ceretti and others in
         connection with this application.  Its approach to consultation is explained below.

### Mr Picard

153.     On 12 August 2011 LG wrote to Baker & Hostetler LLP (Mr Picard's lawyers in
         New York) to explain the El Prela Trustee's intention to make this application
         (page 822).  While it was too early precisely to define the directions which the El
         Prela Trustee proposed to seek, the letter confirmed it was likely that the El Prela
         Trustee would ask the BVI Court to issue directions that it should file a motion to
         dismiss the Third Amended Complaint and, in the alternative, to stay litigation
         concerning it until such time as the Bermuda Proceedings have been resolved as
         against the El Prela Trustee.   The letter sought confirmation of Mr Picard's
         position, in particular whether Mr Picard would oppose an order that the El Prela
         Trustee be entitled to be indemnified for its costs of defending the Third
         Amended Complaint out of the assets currently held on the trusts of the El Prela
         Trust. It also raised the prospect of the El Prela Trustee applying for directions
         with respect to the English Claim, which had not at that time been served on it.

154.     On 23 August 2011 Baker & Hostetler LLP wrote to LG confirming that Mr Picard
         would need to have sight of the application and take advice from local counsel in
         order to respond substantively.   If necessary, a supplemental affidavit will be
         sworn in advance of the hearing of the application in order to update the BVI
         Court as to the current position with regard to Mr Picard.

11698343.1

## The adult beneficiaries under the Trust Deed

155.    Before making an application of the kind sought now before the Court, the El
        Prela Trustee would normally be expected to have consulted with each of the
        adult beneficiaries of the El Prela Trust to ascertain their views on the directions
        sought.  Besides Mr Ceretti and his wife, the only other adult beneficiary named
        in the Trust Deed is Alessandro Ceretti, who the El Prela Trustee understands to
        have reached the age of majority in October 2011.  The El Prela Trustee has had
        no previous contact with Mrs Ceretti or Alessandro Ceretti, despite the fact that
        the letter of wishes from Mr Ceretti dated 23 August 1994 (page 156) asked the
        El Prela Trustee to consider Mr Ceretti and Mrs Ceretti as joint principal
        beneficiaries during their lifetimes.

156.    Accordingly, in the context of the Bermuda Directions Applications, LG wrote to
        Mrs Ceretti on 20 May 2011 seeking her representations, to which she
        responded that she had had no involvement with the matters that were the
        subject of LG's letter and expressing the wish that her husband should deal with
        such matters on her behalf (page 824).

157.    Both the Third Amended Complaint and the English Claim include competing
        claims to the assets of the El Prela Trust (in respect of the former, by virtue of
        the avoidance and the Common Law Claims and in respect of the latter, by virtue
        of the constructive trust claims contained therein).  If Mr Picard is successful in
        these claims, it will follow that the entire assets currently held on the trusts of the
        El Prela Trust would be held on trust for him (for distribution in the BLMIS
        estate).  In those circumstances, the express beneficiaries of the El Prela Trust
        would have no further interest of any value in the El Prela Trust itself.  This fact
        has led the El Prela Trustee to conclude that the interests of Mrs Ceretti and
        Alessandro Ceretti are absolutely aligned with those of Mr Ceretti.

158.    By a letter dated 6 September 2011, Stephenson Harwood confirmed that Mr
        Ceretti is willing to consent to an application that he be appointed to represent
        the interests of Mrs Ceretti and Alessandro Ceretti for the purpose of this
        application (page 825).

159.    Accordingly, as was the case in the Bermuda Directions Applications, the El
        Prela Trustee considers it appropriate for Mr Ceretti to represent the interests of
        Mrs Ceretti in connection with the present application. It also considers it

42

appropriate for Mr Ceretti to represent the interests of Alessandro Ceretti. The El Prela Trustee intends to serve a copy of its application on Mr Ceretti once issued in order that he can respond substantively if he wishes to do so.

### Minor, unborn and unascertained beneficiaries

160.     Given the significance to the beneficiaries of the El Prela Trust of both of the Picard Claims and the present application, the El Prela Trustee has concluded that it is appropriate that the interests of the minor, unborn and/or unascertained beneficiaries should be separately represented. The El Prela Trustee has previously identified Mr Imrie, a partner in the Cayman Islands office of Maples and Calder, who is admitted as a solicitor advocate in the BVI, as an appropriate person to represent the interests of those parties, he having previously been appointed to this role in connection with the Bermuda Directions Applications.

161.     Accordingly, on 5 September 2011, LG wrote to Mr Imrie on behalf of the El Prela Trustee, asking for confirmation whether or not he would consent to act in that capacity for the purpose of this application (page 826) (the enclosures to that letter are not exhibited to this Affidavit, since they consisted of documents which are already exhibited hereto).

162.     Mr Imrie responded by letter dated 11 October 2011 confirming his willingness to act as representative. The El Prela Trustee considers it appropriate for Mr Imrie to be appointed as representative of the interests of the minor, unborn and unascertained beneficiaries of the El Prela Trust and seeks an order that he be appointed as such for the purposes of the present application. The El Prela Trustee intends to serve a copy of its application on Mr Imrie once issued in order that he can respond substantively if he wishes to do so.

### The charitable class

163.     The Trust Deed also provides for a further class of discretionary beneficiary, being "*any trust association body or other organisation in any part of the world the objects of which are charitable*" (the "**Charitable Class**")  For the reasons explained above, the El Prela Trustee has concluded that the interests of this Charitable Class are also aligned with those of Mr Ceretti, Mrs Ceretti and Alessandro Ceretti.

43

11698343.1

164.    In the circumstances, the El Prela Trustee considers it appropriate for the Attorney General of the BVI (the "**Attorney General**") to be appointed as representative of the Charitable Class and seeks an order that he be appointed as such for the purposes of the present application. The El Prela Trustee intends to serve a copy of its application on the Attorney General once issued in order that he can respond substantively if he wishes to do so.

**Mr Tacon**

165.    Given the existence of the Bermuda Proceedings and the directions previously obtained from the BVI Court in relation to them, in addition to canvassing the views of the express beneficiaries of the El Prela Trust and Mr Picard, the El Prela Trustee considers it appropriate that Mr Tacon be joined to the present application. It intends to serve a copy of its application on Mr Tacon once issued in order that he can respond substantively if he wishes to do so.

## THE DIRECTIONS SOUGHT

166.    Taking account of the facts and matters explained above and in the Confidential Affidavit, the El Prela Trustee seeks the following directions:

166.1    That Mr Ceretti is appointed and shall act in these proceedings as representative of the adult beneficiaries of the El Prela Trust and that his reasonable costs incurred in connection with this application be paid from the assets currently held on the trusts of the El Prela Trust;

166.2    That Mr Imrie is appointed and shall act in these proceedings as representative of the interests of the minor, unborn and/or unascertained beneficiaries of the El Prela Trust and that his reasonable costs incurred in connection with this application be paid from the assets currently held on the trusts of the El Prela Trust;

166.3    That the El Prela Trustee shall be indemnified from the assets currently held on the trusts of the El Prela Trust for its costs of making this application;

166.4    In respect of the Third Amended Complaint, that the El Prela Trustee shall be indemnified from the assets currently held on the trusts of the El

44

Prela Trust for its costs of making the motions to withdraw the reference and motions to dismiss articulated in the Confidential Affidavit, including costs arising from any adverse costs orders made against it in pursuance of those motions; and

166.5   In respect of the English Claim, that the El Prela Trustee shall be indemnified from the assets currently held on the trusts of the El Prela Trust for its costs of obtaining advice in relation to the English Claim, considering that advice and taking such steps as appropriate in light of that advice, including costs arising from any adverse costs orders made against it in pursuance of those steps.


## COSTS

### Costs of steps already taken by the El Prela Trustee

<u>The Third Amended Complaint</u>

167.   Since 8 June 2011 (being the date on which the El Prela Trustee first had sight of the Third Amended Complaint) the El Prela Trustee has incurred legal fees and disbursements in connection with those proceedings, including in analysing and preparing to respond to the claims advanced, taking appropriate advice, and preparing for this application. Those fees and disbursements to the period ending 28 October 2011, at the exchange rate prevailing at 15 November 2011, equate to US$571,008.04. They are made up as follows:

167.1   LG's fees: £131,389.50;

167.2   US Counsel's fees: US$318,063.91;

167.3   English Counsel's fees: £14,275.00;

167.4   Other disbursements: £13,994.23.

<u>The English Claim</u>

168.   Since 9 August 2011 (being the date on which the El Prela Trustee first had sight of the English Claim) the El Prela Trustee has incurred legal fees and disbursements in connection with those proceedings, including in analysing the

45

claims advanced, taking appropriate advice, and preparing for this application. Those fees and disbursements to the period ending 28 October 2011 total £39,955.20, which at the exchange rate prevailing at 15 November 2011 equates to US$63,300.22. They are made up as follows:

168.1  LG's fees: £25,395.74;

168.2  English Counsel's fees: £14,137.50;

168.3  Other disbursements: £421.96.

169.  In addition to the legal fees and disbursements referred to above, during the period 8 June 2011 to 28 October 2011, the El Prela Trustee has also incurred other legal fees and disbursements, relating neither to this application nor the Picard Claims. Those unrelated costs are not relevant to this application and the El Prela Trustee does not seek an indemnity in respect of them in this application.

170.  Further information as to the costs of steps already taken by the El Prela Trustee is provided in the Confidential Affidavit. It is anticipated that a supplemental affidavit will be sworn in advance of the hearing of this application in order to update the Court as to the current costs position.

**Estimate of costs of future steps to be taken by the El Prela Trustee**

171.  LG and Freshfields have prepared estimates of the likely future costs of complying with the directions sought in this application. Those estimates are based on a number of assumptions, which are set out in the estimates themselves, including the assumption that the costs will be borne equally by the El Prela Trustee and the Ashby Trustee.

172.  A copy of those estimates of costs with respect to the Third Amended Complaint are at pages 829 to 831. The grand total at the exchange rate prevailing at 15 November 2011, including both estimated fees and disbursements, is:

172.1  US$452,463.46 to US$677,563.46 assuming a full scale fact review will not need to be undertaken prior to making the motions to withdraw the reference and motions to dismiss articulated in the Confidential Affidavit; and

46

172.2. US$816,741.64 to US$2,344,216.64 assuming that that exercise will be necessary.

173. In relation to the English Claim, an estimate of costs has not yet been prepared for the purposes of this application. However, it is anticipated that a supplemental affidavit will be sworn in advance of the hearing of this application to provide relevant information to the Court.

## CONCLUSION

174. In all the circumstances, the El Prela Trustee respectfully applies for an order in the form of the draft accompanying its application papers.

SWORN by the above-named **FRANK OLIVER WALTERS**                    )

at Monaco                                                                                      )
                                                                                                       )
this 16th day of November 2011                                                  )
                                                                                                       )
Before me

Solicitor/Commissioner for Oaths

**MARK LUSHER**
24, Boulevard Princesse Charlotte
MC 98000 MONACO
SOLICITOR

## Schedule 1 – Definitions

| | |
|---|---|
| "Acknowledgment Date" | The date for which the time for the El Prela Trustee to file an acknowledgment of service in respect of the English Claim has been extended, by agreement (being the later of 14 November 2011 or the date falling seven days prior to the hearing of Mr Picard's stay application in respect of the English Claim) |
| "Alpine Trustees" | Alpine Trustees Limited |
| "Ashby Holding Company" | Ashby Holding Services Limited |
| "Ashby Investment Company" | Ashby Investment Services Limited |
| "Ashby Trustee" | First Peninsula Trustees Limited as trustee of the Ashby Trust |
| "Attorney General" | The Attorney General of the BVI |
| "Bank of Bermuda" | Bank of Bermuda Limited (an indirect 100% subsidiary of HSBC Holdings Plc) |
| "Bankruptcy Court" | United States Bankruptcy Court for the Southern District of New York |
| "Bermuda Directions Applications" | The Trustees' application for directions to the BVI Court in respect of the Bermuda Proceedings |
| "Bermuda Proceedings" | Proceedings issued in the Supreme Court of Bermuda by Mr Tacon in his capacity as the Joint Liquidator of the Kingate Funds on 22 December 2010 against (1) KML (2) FIM Limited (3) FIM Advisers LLP (4) the Ashby Trustee (5) the El Prela Trustee (6) the Ashby Holding Company (7) the El Prela Holding Company (8) Mr Grosso (9) Mr Ceretti |
| "BLMIS" | Bernard L Madoff Investment Securities LLC |
| "BVI Court" | Eastern Caribbean Supreme High Court of Justice British Virgin Islands |
| "BVI" | British Virgin Islands |
| "Charitable Class" | A class of discretionary beneficiary named in the Trust Deed being any trust association body or other organisation in any part of the world the objects of which are charitable |
| "Citi" | Citi Hedge Fund Services Ltd (formerly Hemisphere Management Limited and BISYS Hedge Fund Services Ltd), the administrator of the Kingate Funds |
| "Class Action" | Consolidated class action complaint filed in the United States District Court, Southern District of New York on 18 May 2010 and entitled In re Kingate Management Limited Litigation, with Master File No.09 Civ 5386 (BAB) |
| "Common Law Claims" | Claims in unjust enrichment, conversion and money had and received asserted in the Third Amended Complaint |
| "Confidential Affidavit" | Second affidavit of Frank Oliver Walters in support of the present application concerning facts and matters which are privileged and/or confidential |
| "District Court" | United States District Court for the Southern District of New York |
| "Draft Agreement" | Draft settlement agreement between Mr Tacon and Mr Picard considered by the BVI Court on 16 December 2009 and contained at Appendix B to Mr Tacon's Third Report to Creditors and Investors dated 31 July 2009 for each of the Kingate Funds |
| "El Prela Holding Company" | El Prela Group Holding Services Limited |
| "El Prela Investment Company" | El Prela Trading Investments Limited |
| "El Prela Trustee" | Port of Hercules Trustees Limited |
| "English Claim" | Claim issued by Mr Picard in the High Court of Justice of |

48