**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>SUSANNE STONE MARSHALL; ADELE FOX; MARSHA PESHKIN; RUSSELL OASIS; A & G GOLDMAN PARTNERSHIP; and PAMELA GOLDMAN,<br><br>                    Defendants. | Adv. Pro. No. 14-01840 (SMB)<br><br><br>**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STAY** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS ..................................................................................................................................... 4

    I.    THE SECOND CIRCUIT'S DECISION AFFIRMING THE
        PERMANENT INJUNCTION AS AGAINST FOX AND MARSHALL ........... 5

    II.   THE FOX DEFENDANTS MOVE TO RE-OPEN THE FLORIDA
        ACTION .................................................................................................... 9

    III.  THE FLORIDA DISTRICT COURT JUDGE DEFERS TO THIS
        COURT ...................................................................................................... 9

    IV.  THE FOX DEFENDANTS SEEK RELIEF FROM THE ELEVENTH
        CIRCUIT.................................................................................................. 10

ARGUMENT .......................................................................................................................... 11

THE STAY MOTION SHOULD BE DENIED ......................................................................... 11

    I.    THIS COURT HAS JURISDICTION TO ENFORCE ITS OWN
        INJUNCTION AND THE AUTOMATIC STAY ............................................. 11

    II.   DEFENDANTS' STRAINED READING OF THE SECOND CIRCUIT'S
        DECISION IS WITHOUT BASIS ...................................................................... 13

        A.    The Second Circuit Ruled That This Court Has Jurisdiction to
            Enforce the Automatic Stay and Permanent Injunction........................... 13

        B.    The Trustee Has Not Defied the Second Circuit Mandate ..................... 16

        C.    Any "Mandate" to the Florida District Court Already Is Fulfilled.......... 19

    III.  THE TRUSTEE IS NOT A PARTY TO THE FLORIDA
        PROCEEDINGS AND THE FOX DEFENDANTS HAVE NOT
        SATISFIED THE STANDARD FOR A STAY .................................................. 19

CONCLUSION....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Buckley Towers Condo., Inc. v. QBE Ins. Corp.*,
  No. 07-CV-22988, 2014 WL 1319307 (S.D. Fla. Mar. 31, 2014)..............................16, 17, 18

*In re Charter Commc'ns*,
  No. 09-11435, 2010 WL 502764 (Bankr. S.D.N.Y. Feb. 8, 2010)...................................14, 15

*Day v. Moscow*,
  955 F.2d 807 (2d Cir. 1991)...................................................................................................16

*DiLaura v. Power Auth. of State of New York*,
  982 F.2d 73 (2d Cir. 1992).....................................................................................................16

*Fid. Mortg. Investors v. Camelia Builders, Inc.*,
  550 F.2d 47 (2d Cir. 1976).....................................................................................................12

*Fisher v. Apostolou*,
  155 F.3d 876 (7th Cir. 1998) .................................................................................................11

*Ginett v. Computer Task Grp., Inc.*,
  11 F.3d 359 (2d Cir. 1993).....................................................................................................18

*LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp.)*,
  93 B.R. 26 (S.D.N.Y. 1988)....................................................................................................12

*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
  304 F.3d 223 (2d Cir. 2002)...................................................................................................12

*Marshall v. Picard*,
  740 F.3d 81 (2d Cir. 2014)............................................................................................. *passim*

*Marshall v. Picard (In re Madoff)*,
  848 F. Supp. 2d 469 (S.D.N.Y. 2012)....................................................................................20

*May Dep't Stores Co. v. Int'l Leasing Corp., Inc.*,
  No. 88-CV-4300, 1995 WL 656986 (S.D.N.Y. Nov. 08, 1995)..............................................16

*Moelis & Co. LLC v. Wilmington Trust FSB (In re Gen. Growth Props., Inc.)*,
  460 B.R. 592 (Bankr. S.D.N.Y. 2011) ...................................................................................12

*Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*,
  184 B.R. 207 (Bankr. D. Del. 1995) ......................................................................................12

*In re Old Carco LLC*,
  505 B.R. 151 (Bankr. S.D.N.Y. 2014) ...................................................................................12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Picard v. Fox*,
   Adv. Pro. No 10-03114, 2010 WL 8815208 (Bankr. S.D.N.Y. Aug. 3, 2010) .......................12

*Picard v. Fox*,
   429 B.R. 423 (Bankr. S.D.N.Y. 2010)...................................................................................12

*Picard v. Goldman*,
   No. 12-6109, 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013) .................................................4, 6

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   721 F.3d 54 (2d Cir. 2013).....................................................................................................5

*In re Pulp Finish 1 Co.*,
   No. 12-13774, 2014 WL 201482 (Bankr. S.D.N.Y. Jan. 16, 2014) ........................................20

*Quigley Co. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*,
   676 F.3d 45 (2d Cir. 2012)...................................................................................................5, 13

*Schwabenbauer v. Board of Education of City of Olean*,
   777 F.2d 837 (2d Cir. 1985)..................................................................................................16

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*,
   477 B.R. 351 (Bankr. S.D.N.Y. 2012) .....................................................................................5

*Stern v. Marshall*,
   564 U.S. __, 131 S.Ct. 2594 (2011).........................................................................7, 8, 13, 14

*Tennessee Student Assistance Corp. v. Hood*,
   541 U.S. 440 (2004)...............................................................................................................11

*Transamerica Leasing Inc. v. Inst. of London Underwriters*,
   430 F. 3d 1326 (11th Cir. 2005) ............................................................................................17

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009)...............................................................................................................12

*United States v. Bell*,
   5 F.3d 64 (4th Cir. 1993) .......................................................................................................18

*United States v. Zvi*,
   242 F.3d 89 (2d Cir. 2001).....................................................................................................18

## Statutes

15 U.S.C. § 78eee(b)(2)(A)...........................................................................................................11

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation

of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, and the estate of Bernard L.

Madoff ("Madoff"), by his undersigned counsel, respectfully submits this memorandum of law

in opposition to the motion by defendants Adele Fox ("Fox"), Susanne Stone Marshall

("Marshall"), Marsha Peshkin and Russell Oasis (collectively, the "Fox Defendants") to stay (the

"Stay Motion") the Trustee's pending injunction application, filed on March 11, 2014 (the

"Application"), seeking to enforce the automatic stay and this Court's permanent injunction (the

"Permanent Injunction") contained in his settlement (the "Picower Settlement") with the estate of

Jeffry Picower and related defendants (the "Picower Defendants").

## PRELIMINARY STATEMENT

The Fox Defendants claim that in a 28-page opinion expressly affirming this Court's

jurisdiction and enforcement of its own injunction against these defendants, the Second Circuit

divested this Court of jurisdiction to enforce that same injunction going forward.  They rely on

this proposition on a single clause of *dicta* in which the Second Circuit referred to an issue that

was not before it:  "There is conceivably some particularized conspiracy claim appellants could

assert that would not be derivative of those asserted by the Trustee.  That question, however, is

not properly before us, and is a question in the first instance for the United States District Court

for the Southern District of Florida."  *Marshall v. Picard*, 740 F.3d 81, 94 (2d Cir. 2014).  This

clause *may* recognize that this Court does not have *exclusive* jurisdiction to determine whether

future actions by the Fox Defendants violate the Permanent Injunction,[1] but no logical reading of

---

[1] *See* Declaration of Keith R. Murphy in Support of Trustee's Application ("Murphy Dec."), ECF No. 3
(Mar. 11, 2014) Ex. A.

1

the Second Circuit opinion could lead to the conclusion that this Court has now been forever

divested of jurisdiction to enforce its Permanent Injunction.  The Fox Defendants' suggestion

that the Second Circuit engaged in a sort of "wink and nod" jurisprudence—divesting this Court

of jurisdiction without any discussion, and on an issue never briefed or argued—would be

implausible under any circumstance, but is utterly without merit here, where the decision itself is

an extensively reasoned affirmance of this Court's exercise of that very jurisdiction.[2]  *See*

*Marshall*, 740 F.3d at 88-90, 94-96.

     The Fox Defendants presented this same argument to Judge Kenneth L. Ryskamp,

presiding in the U.S. District Court for the Southern District of Florida (the "Florida District

Court").  His response was to defer to this Court for a determination of the applicability of the

injunction:  "The Court declines to conduct an emergency hearing on the question of whether to

enjoin the New York action.  Rather, this Court defers to the Bankruptcy Court for the Southern

District of New York for a ruling on Picard's motion to enjoin the instant action."  (*See*

Declaration of Helen Chaitman in Support of Stay Motion ("Chaitman Dec."), ECF No. 17 (Apr.

17, 2014), Ex. 7.)  Thus, even if the Fox Defendants were correct that there were some directive

from the Second Circuit that anything be brought before the Florida District Court "in the first

instance," the Florida District Court already considered the issue "in the first instance" and

elected to defer to this Court.  That the Fox Defendants' meritless challenge to the Florida

---

[2] In their brief opposing the Application, the Fox Defendants claim that "[t]he Second Circuit stated twice
in its opinion that the Florida Court should determine the viability of the Marshall Plaintiffs' amended
complaint."  (*See* Memorandum of Law in Opposition to Application, ECF No. 22 (Apr. 21, 2014), at 4.)
They do not quote the alleged "second" statement, but cite to the page of the opinion on which the Second
Circuit stated "the judgment of the District Court is AFFIRMED without prejudice to Fox and Marshall
seeking leave to amend their complaints in the United States District Court for the Southern District of
Florida.  Of course, we intimate no view on an appropriate disposition of any such motion for leave to
amend."  *Marshall*, 740 F.3d at 96.  This appears to be a reference to the existence of the stayed action in
Florida and the Fox Defendants do not attempt to craft an argument as to how it speaks to jurisdiction.

District Court's action is now before the Eleventh Circuit on an improper interlocutory appeal should not factor into this Court's decision as to whether to grant a stay of these proceedings. Moreover, the Trustee is not a party to the proceedings in the Eleventh Circuit, nor is he an "agent" of the Picower Defendants, or acting "in concert with" them, so as to be encompassed by the proposed relief the Fox Defendants seek there.

The Trustee brought his most recent Application to enforce the automatic stay and Permanent Injunction against the Fox Defendants because they have, yet again, sought to sue the Picower Defendants on claims that depend on the Picower Defendants' transfers from their own BLMIS accounts. Such claims, derived as they are from the Trustee's fraudulent transfer claims, have been held to violate the Permanent Injunction. As the Second Circuit held in the same opinion relied on by the Fox Defendants: "appellants' [Fox's and Marshall's] complaints impermissibly attempt to 'plead around' the Bankruptcy Court's injunction barring all claims 'derivative' of those asserted by the Trustee." 740 F. 3d at 84.[3]

The Fox Defendants' forum shopping has been rejected by the Florida District Court. This Court is overseeing the administration of the BLMIS estate and the Picower Settlement, and is the appropriate court to determine the applicability of the Permanent Injunction, as well as the automatic stay. A stay of these proceedings would give credence to the Fox Defendants'

---

[3] The Trustee objects to the gratuitous *ad hominem* attacks contained in the Fox Defendants' papers. Judge Lifland previously admonished counsel for the Fox Defendants for referring to the Picower Defendants as "criminals." (*See* Transcript of Settlement Hearing, ECF No. 3815, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.) (Jan. 14, 2011), at 32-33.) It appears that they nonetheless continue to make such improper statements as well as malign the Trustee and the Picower Settlement. (*See* Memorandum of Law in Support of Stay Motion, ECF No. 16 (Apr. 17, 2014) at 1-2, 4.)

frivolous arguments, and should not be countenanced by this Court.[4]  The Trustee's Application

should proceed without delay.

## FACTS

The Stay Motion is just the latest round of motion practice that began in 2010, when two

of the current Fox Defendants, Fox and Marshall, first sought to sue the Picower Defendants on

claims that were nothing more than disguised fraudulent transfer claims belonging to the Trustee.

The Trustee prevailed in his four-year litigation at each stage, most recently at the Second

Circuit.  Just when it seemed as though there would be an end to these suits, the Fox Defendants

emerged yet again, this time attempting to re-open their case with a "new" complaint against the

Picower Defendants that, in reality, is just a rehash of their previous claims, and must fail as

before.  Bent on avoiding this Court's jurisdiction and in the hope of winning these same issues

in another forum, the Fox Defendants have waged a battle in the Florida courts, culminating in

the past few weeks in a deferral by the Florida District Court to this Court, followed by the Fox

Defendants' emergency motion for relief to the Eleventh Circuit on an improper interlocutory

appeal, and the Picower Defendants' motion to dismiss that appeal.  The Fox Defendants have

not sued the Trustee in the Florida federal courts, and he remains a stranger to those proceedings.

The facts giving rise to the Second Circuit's decision are set forth in the Trustee's

Memorandum of Law in Support of the Application, and are incorporated herein by reference.

(*See* ECF No. 3 (Mar. 11, 2014) at 10-20.)

---

[4] Adding insult to injury is the fact that the Fox Defendants' current action is doomed to fail for its inability to state a securities claim, as Judge Sullivan noted in the nearly identical complaints brought by A&G Goldman Partnership and Pamela Goldman.  *Picard v. Goldman*, No. 12-6109, 2013 WL 5511027, at *6 (S.D.N.Y. Sept. 30, 2013) ("A close examination of the Goldman Complaints reveals that, nominal causes of action notwithstanding, Appellants' claims are not bona fide securities fraud claims.")  While the Fox Defendants' ability to state a securities claim is not before this Court, the likely inability to state such a claim highlights the lawyer-driven nature of this putative class action.

I.      **THE SECOND CIRCUIT'S DECISION AFFIRMING THE PERMANENT INJUNCTION AS AGAINST FOX AND MARSHALL**

On January 13, 2014, the Second Circuit affirmed this Court and the U.S. District Court for the Southern District of New York (the "New York District Court"), upholding the Permanent Injunction as against Fox and Marshall. *Marshall*, 740 F.3d 81. The Second Circuit held that Fox's and Marshall's initial putative class actions (the "Florida Actions") "impermissibly attempt to 'plead around'" the Permanent Injunction because they "allege nothing more than steps necessary to effect the Picower [D]efendants' fraudulent withdrawals of money from BLMIS, instead of 'particularized' conduct directed at BLMIS customers." *Id.* at 84. Notably, the Second Circuit explicitly held that this Court had jurisdiction to enjoin duplicative or derivative claims, like those in the Florida Actions, because they "undoubtedly have an effect on the bankruptcy estate . . . ." *Id.* at 89 (citing *Quigley Co. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45, 57 (2d Cir. 2012)). The Second Circuit defined derivative claims as those claims that "arise[ ] from harm done to the estate" and "seek[ ] relief against third parties that pushed the debtor into bankruptcy." *Id.* (quoting *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 70 (2d Cir. 2013)).

The Second Circuit held that the Florida Actions were derivative of the Trustee's action against the Picower Defendants because the allegations in the complaints in the Florida Actions "echo" those made by the Trustee. *Id.* at 91 (referring to the chart comparing allegations in the Trustee's complaint with those of the complaints in the Florida Actions, appended as Exhibit A to *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 477 B.R. 351 (Bankr. S.D.N.Y. 2012)). Importantly, it found that "[t]he only allegations of the Picower [D]efendants' direct involvement in the Ponzi scheme are that they prepared false

5

documentation, recorded and withdrew fictional profits, and filed false statements in connection

with their tax returns." *Id.* at 92. Citing the New York District Court's decision in *Picard v.*

*Goldman*, No. 12-6109, 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013), the Second Circuit held

that:

> [t]he . . . Complaints plead nothing more than that the Picower Defendants traded
> on their *own* BLMIS accounts, knowing that such "trades" were fraudulent, and
> then withdrew the "proceeds" of such falsified transactions from BLMIS. All the
> "book entries" and "fraudulent trading records" that the Complaints allege refer to
> nothing more than the fictitious records BLMIS made, *for the Picower*
> *Defendants*, to document these fictitious transactions. In other words, the
> Complaints plead nothing more than that the Picower Defendants fraudulently
> withdrew money from BLMIS.

*Id.* at 92 (citing *Goldman*, 2013 WL 5511027, at *7) (emphasis in original). The Second Circuit

ruled that the Florida Actions did not contain particularized claims because they "do not allege

that the Picower [D]efendants made . . . misrepresentations to BLMIS customers," and found

rather that the "alleged injuries are inseparable from, and predicated upon, a legal injury to the

estate [—] namely, the Picower [D]efendants' fraudulent withdrawals from their BLMIS

accounts of what turned out to be other BLMIS customers' funds." *Id.* The Second Circuit

further held that Fox's and Marshall's complaints "have not alleged that the Picower

[D]efendants took any . . . 'particularized' actions aimed at BLMIS customers," such as making

misrepresentations to Fox and Marshall. *Id.* at 93.

Notably, Fox and Marshall argued to the Second Circuit, as they do in their current

complaint, that the allegations in their complaint, at their "core," amounted to a claim that

Picower has "ensured the fraud's success by inducing [them] and other customers to invest (and

remain invested) in BLMIS." (*See* Fox Appellate Brief, No. 12-1645 (2d Cir.), ECF No. 71

(Aug. 10, 2012) at 25, Marshall Appellate Brief, No. 12-1645 (2d Cir.), ECF No. 87 (Aug. 13,

2012) at 31.) The Second Circuit specifically rejected this argument: "[a]llegations that the

Picower [D]efendants knowingly reaped the benefits of Madoff's scheme through fraudulent

withdrawals, and effected such withdrawals through backdating trades and recording fictional

profits, does not amount to a particularized claim that they directly participated in defrauding

BLMIS customers by inducing them to invest." *Id.* at 92.  The Second Circuit also rejected

Fox's and Marshall's argument that their claims were non-derivative because they sought

damages not available in an avoidance action.  The Second Circuit found that the "claimed

damages, also suffered by all BLMIS customers, still remain mere secondary harms flowing

from the Picower [D]efendants' fraudulent withdrawals and the resulting depletion of BLMIS

funds."[5]  *Id.* at 93.

Finally, the Second Circuit rejected Fox and Marshall's arguments that the decision of the

U.S. Supreme Court in *Stern v. Marshall*, 564 U.S. __, 131 S.Ct. 2594 (2011), divested this

Court of jurisdiction to issue the injunction.  First, the Circuit Court rejected Fox's arguments

that her purported tort claims were akin to the state law claims in *Stern*, because they were

disguised fraudulent transfer claims.  *Id.* at 94.  Second, the Second Circuit rejected Marshall's

argument that this Court lacked jurisdiction to issue a final ruling on the Trustee's fraudulent

transfer claims against the Picower Defendants and therefore to enjoin duplicative claims.

Because resolution of the Trustee's fraudulent transfer claims was necessary to rule on the

Picower Defendants' submitted claim against the estate, this Court's authority was not impacted

by *Stern*.  *Id.* at 94-96.

Contrary to Fox's and Marshall's representations to the Florida District Court, the Second

Circuit did *not* grant the Fox Plaintiffs leave to amend their complaints.  Rather, the Second

---

[5] The Trustee fully incorporates herein his arguments as to why the Fox Defendants' current complaint is duplicative and derivative of the Trustee's complaint, as set forth in his Application.

Circuit affirmed the injunction "without prejudice to Fox and Marshall seeking leave to amend their complaints . . . ." *Marshall*, 740 F.3d at 96.  The Second Circuit noted that while "[t]here is conceivably some particularized conspiracy claim appellants could assert that would not be derivative of those asserted by the Trustee," that question was not properly before it but rather "is a question in the first instance for the United States District Court for the Southern District of Florida." *Id.* at 94.  Accordingly, the Second Circuit stated that "we intimate no view on an appropriate disposition of any such motion for leave to amend." *See id.* at 96.  Nowhere did the Second Circuit instruct that *only* the Florida District Court could consider whether any new filings violated the Permanent Injunction, as the Fox Defendants now argue.  (*See* Murphy Dec. Ex. U at 3; Stay Motion at 4.)[6]  And nowhere—either in its more than three pages of analysis affirming this Court's jurisdiction to issue the injunction under *Stern*, its explicit affirmance of this Court's authority to enjoin duplicative and derivative claims, or anywhere else—did the Second Circuit suggest that this Court should be divested of jurisdiction to enforce the very injunction that it affirmed against the very parties that sought to challenge it.

The Second Circuit's mandate, affirming the New York District Court's judgment, issued on February 5, 2014 (the "Mandate").  (*See* Chaitman Dec. Ex. 3.)  The Fox Defendants have characterized a sentence in the Second Circuit's decision as a "mandate" in an effort to render this Court powerless to interpret and apply its own Permanent Injunction, as well as the automatic stay.  However, the suggestion that the Second Circuit disenfranchised this Court so casually and briefly is unpersuasive, and is contradicted by the whole of the decision.

---

[6] The Trustee cites to the Declaration of Keith R. Murphy in Support of the Trustee's Application for ease of reference for the Court.  (*See* ECF No. 3 (Mar. 11, 2014).)

## II.    THE FOX DEFENDANTS MOVE TO RE-OPEN THE FLORIDA ACTION

The day the Mandate issued, the Fox Defendants moved in the Florida District Court before Judge Ryskamp to re-open their action (the "Fox Action"), and for leave to file a second amended complaint ("Motion to Re-open").  (Murphy Dec. Ex. Q.)  The Fox Defendants appended to the Motion to Re-open a draft Second Amended Complaint (the "Fox Second Amended Complaint" or "Fox SAC").  (*See* Murphy Dec. Ex. B.)  As set forth at length in the Trustee's Application, the Fox Second Amended Complaint does little more than re-label and re-word the same allegations made in the initial complaint filed in the Fox Action.  (*See* Application at 27-30, 35-40.)

## III.    THE FLORIDA DISTRICT COURT JUDGE DEFERS TO THIS COURT

In the Fox Defendants' Motion to Re-open, they represented to the Florida District Court that they "have leave from the Second Circuit Court of Appeals to proceed with this matter." (Murphy Dec. Ex. Q at 2.)  In view of this misrepresentation, among other reasons, on February 18, 2014, the Picower Defendants sought an immediate stay in Florida District Court of the Fox Action.  (Murphy Dec. Ex. R.)

On February 21, 2014, Judge Ryskamp issued an order to show cause why the Florida District Court should not stay the action "to allow the New York Bankruptcy Court to decide the applicability of the permanent injunction and automatic stay" and staying the Fox Action pending resolution of the motion for stay.  (Murphy Dec. Ex. V.)  On February 24, 2014, the Fox Defendants opposed the Picower Defendants' motion to stay and cross-moved for a preliminary injunction allowing them to proceed in Florida, and enjoining not only the Picower Defendants, but those acting "in active concert or participation with them" from litigating the new Fox Action

outside of the Florida federal courts.[7]  (Murphy Dec. Ex. U.)  The Fox Defendants neither sued

the Trustee nor served him with their papers. (*See id.* at 4-5 (certificate of service).)

The Trustee filed his Application on March 11, 2014, which was followed on March 12,

2014 by yet another motion from the Fox Defendants in the Fox Action, this time requesting

limited relief from the Florida District Court's stay and requesting an emergency hearing on their

previously-filed motion for injunctive relief.  (*See* ECF No. 52, *Fox v. Picower*, 10-CV-80252

(S.D. Fla.).)

On March 17, 2014, Judge Ryskamp denied the Fox Defendants' motion and deferred to

this Court to rule on the Trustee's Application (the "March 17 Order"):  "The Court declines to

conduct an emergency hearing on the question of whether to enjoin the New York action.

Rather, this Court defers to the Bankruptcy Court for the Southern District of New York for a

ruling on Picard's motion to enjoin the instant action."  (*See* Chaitman Dec. Ex. 7 at 3.)

## IV.    THE FOX DEFENDANTS SEEK RELIEF FROM THE ELEVENTH CIRCUIT

Hoping to evade the Florida District Court's decision, on March 24, 2014, the Fox

Defendants filed a notice of appeal from the March 17 Order.  (*See* Declaration of Ferve E.

Ozturk in Support of Trustee's Opposition to Stay Motion ("Ozturk Dec."), Ex. A.)  More than

two weeks later, on April 9, 2014, they moved the Eleventh Circuit to expedite the appeal.  (*See*

---

[7] Concurrently, Beasley Hauser Kramer & Galardi P.A. ("Beasley Hauser") and Blackner Stone & Associates ("Blackner Stone"), representing the "Goldman Defendants," another set of defendants that the Trustee has successfully enjoined before and who are also the subject of the Trustee's Application, sought to transfer the Fox Action to Florida District Court Judge Marra and consolidate it with a new Goldman Action, or alternatively, to consolidate the new Goldman Action with the Fox Action before Judge Ryskamp.  (*See* Murphy Dec. Ex. S.)  Critically, they also have moved to disqualify Becker & Poliakoff P.A. ("Becker Poliakoff") as counsel for the Fox Defendants due to a conflict of interest in Helen Chaitman's representation.  (*See* Murphy Dec. Ex. T.)  Beasley Hauser and Blackner Stone assert that *they* represent Fox and Marshall, not Becker Poliakoff and Ms. Chaitman.  (*See id.* at 7–8.)  Becker Poliakoff's and Ms. Chaitman's qualification to represent the Fox Defendants in the putative class action remains fiercely contested and unresolved.  (*See* Declaration of Ferve E. Ozturk in Support of Trustee's Opposition to Stay Motion, Ex. C.)

Ozturk Dec. Ex. B.)  On April 16, 2014, the Picower Defendants opposed the motion for

expedited appeal and cross-moved to dismiss the appeal, arguing not only that the Fox

Defendants' reading of the Second Circuit Mandate was simply wrong and that this Court had

not been divested of jurisdiction, but also that the Fox Defendants' appeal was improper as an

appeal of an interlocutory order.  (*See* Ozturk Dec. Exs. D-E.)  On April 17, 2014, the Eleventh

Circuit notified counsel for the Fox Defendants that their response to the motion to dismiss was

due on April 22, 2014.  (*See* Ozturk Dec. Ex. F.)  The Appellants responded and the Picower

Defendants filed a reply in support of their cross-motion to dismiss.  (*See* Ozturk Dec. Ex. G.)

The Fox Defendants' instant motion to this Court seeking to stay these proceedings

pending a decision by the Eleventh Circuit followed in the late evening of April 17, 2014, one

day before their brief on the Trustee's Application was due.  (*See Picard v. Marshall*, Adv. Pro.

No. 14-1840, ECF Nos. 15-16.)

## ARGUMENT

## THE STAY MOTION SHOULD BE DENIED

### I.    THIS COURT HAS JURISDICTION TO ENFORCE ITS OWN INJUNCTION AND THE AUTOMATIC STAY

The Fox Defendants fail to address that the Trustee seeks in his Application not only to

enforce the Permanent Injunction, but also the automatic stay as incorporated in the Permanent

Injunction.  It is elementary that this Court, as the court overseeing the administration of the

BLMIS estate, has jurisdiction to enforce the automatic stay.  *See e.g., Tennessee Student

Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004); *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th

Cir. 1998); *see also* 15 U.S.C. § 78eee(b)(2)(A)(i), (4) ("Upon the filing of an application with a

court for a protective decree . . . such court  . . . shall have exclusive jurisdiction of such debtor

and its property wherever located . . .").

A litigant who believes that he or she might be prosecuting an action in violation of the automatic stay should move the bankruptcy court for relief from the stay. *See LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp.)*, 93 B.R. 26, 30 (S.D.N.Y. 1988) ("a motion to *modify* or *lift* the provisions of the automatic stay with respect to a particular action must be made to the bankruptcy court which is supervising the reorganization . . . .") (emphasis in original) (citing *Fid. Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 57 (2d Cir. 1976)); *Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 215–16 (Bankr. D. Del. 1995). Judge Lifland previously rebuked counsel for the Fox Defendants for failing to seek to lift the automatic stay. *See Picard v. Fox*, Adv. Pro. No 10-03114, 2010 WL 8815208, at *3 (Bankr. S.D.N.Y. Aug. 3, 2010) ("The Appellants violated the stay when they pursued these actions without seeking relief in this Court."); *Picard v. Fox*, 429 B.R. 423, 430 (Bankr. S.D.N.Y. 2010).

As to the Permanent Injunction, cases are legion that confirm that a court has the power to enforce its own order. *See, e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (the "Bankruptcy Court plainly had jurisdiction to interpret and enforce" its order confirming debtor's reorganization plan and permanently enjoining third-party litigation); *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002) (bankruptcy court had jurisdiction to enforce pre-existing injunction in sale order); *In re Old Carco LLC*, 505 B.R. 151, 159 n.17 (Bankr. S.D.N.Y. 2014) (Bernstein, J.) ("the Court retains bankruptcy jurisdiction under 28 U.S.C. § 1334 to interpret its prior sale order even when the dispute involves non-debtor third parties"); *Moelis & Co. LLC v. Wilmington Trust FSB (In re Gen. Growth Props., Inc.)*, 460 B.R. 592, 598 (Bankr. S.D.N.Y. 2011). Accordingly, this Court expressly retained jurisdiction in the

order issuing the Permanent Injunction "over any and all disputes arising under or otherwise relating to this Order."  (*See* Murphy Dec. Ex. A at 8.)

The Court's general power to enforce an injunction it issues is not in dispute, and unless this Court has been divested of jurisdiction as to both the automatic stay and the Permanent Injunction, this Court is empowered to interpret and enforce the automatic stay and its own Permanent Injunction.  No such divestiture has occurred.

## II.    DEFENDANTS' STRAINED READING OF THE SECOND CIRCUIT'S DECISION IS WITHOUT BASIS

### A.    The Second Circuit Ruled That This Court Has Jurisdiction to Enforce the Automatic Stay and Permanent Injunction

The Second Circuit ruled clearly and definitively on January 13, 2014, affirming the Permanent Injunction as applied to Fox's and Marshall's claims: Fox and Marshall "impermissibly attempt to 'plead around'" the Permanent Injunction because they "allege nothing more than steps necessary to effect the Picower [D]efendants' fraudulent withdrawals of money from BLMIS, instead of 'particularized' conduct directed at BLMIS customers." *Marshall*, 740 F.3d at 84.  In terms of jurisdiction, the Second Circuit plainly held that this Court has jurisdiction to enjoin duplicative or derivative claims, like those in the Florida Actions, because they "undoubtedly have an effect on the bankruptcy estate . . . ." *Id.* at 89 (citing *In re Quigley Co.*, 676 F.3d at 57).  It further held that *Stern* did not impact this Court's jurisdiction to issue the injunction.  *Id*. at 94-96.

In the face of these holdings, the Fox Defendants take a clause from a sentence in the decision providing that the Fox Defendants could conceivably allege non-derivative claims, but that the question is one in the first instance for the Florida District Court. *See id.* at 94.  With that one reference to the Florida courts, the Fox Defendants misleadingly contend that the Second Circuit divested this Court of jurisdiction both as to the enforceability of the automatic

stay and the Permanent Injunction. The issue of such divestiture was not before the Second

Circuit, and was never briefed or argued.

The Fox Defendants argue that the Second Circuit stripped this Court of jurisdiction in

the very context of affirming this Court's jurisdiction and its decision to enjoin Fox and

Marshall. But surely if the Second Circuit had decided that only the Florida District Court could

decide the applicability of the automatic stay and the Permanent Injunction, it would have

reversed the lower courts for lack of jurisdiction. It did not do that. The Fox Defendants further

argue that while explicitly recognizing this Court's jurisdiction to bar duplicative and derivative

claims, *id.* at 89, and affirming this Court's jurisdiction to issue the injunction after *Stern*, *id*. at

94-96, the Second Circuit nevertheless implicitly revoked this Court's authority to do just that.

These arguments appear to be a purposeful misconstruction of the Second Circuit's decision.

The decision in *In re Charter Commc'ns*, No. 09-11435, 2010 WL 502764, at *1 (Bankr.

S.D.N.Y. Feb. 8, 2010) is instructive, as it concerned an effort to bring a securities class action

against third parties in a distant district court in the face of a release in the bankruptcy court in

the Southern District of New York. The *Charter* court found that "although both this Court and

the [Arkansas] District Court are clearly competent to rule on the Plan releases as they relate to

the action pending in the District Court, the bankruptcy court is more closely connected to the

current dispute and is the proper forum to rule with respect to the [debtor's motion to enforce the

releases]." *Id.* at *3. The court also reasoned that there was a risk that the release could be

eroded if interpreted by the Arkansas district court, particularly with respect to one of the officers

who had "deep pockets" and who had bargained for an effective settlement. *Id.* The court

further held that preventing the prosecution of third-party actions barred by the releases was

14

"critical to the orderly functioning of the bankruptcy process [and] closely tethered to core bankruptcy jurisdiction." *Id.* at *4.

As in *Charter*, while both the Florida District Court and this Court may have the ability to interpret and apply the Permanent Injunction, this Court is the most appropriate forum to determine whether the Fox Defendants' proposed amended complaint runs afoul of the Permanent Injunction, particularly as it also determines the parallel issue of whether the new Fox action violates the automatic stay. Indeed, that is what the Florida District Court itself ruled, sparking the Fox Defendants to move for expedited relief before the Eleventh Circuit. (*See* Chaitman Dec. Ex. 7.)[8] Resolution here avoids the inconsistent interpretation and potential erosion of the Permanent Injunction and protects the Court's jurisdiction over the estate, including estate settlements. The Fox Defendants' argument that a stay here would avoid inconsistent and duplicative rulings neglects the fact that such inefficiency and inconsistency is of their own making.

This is not a question of another court examining the merits of a securities claim against the Picower Defendants. Rather, it is a determination of whether the claims stated in a new proposed complaint are duplicative or derivative of the Trustee's claims, or merely a rewording of previously rejected claims, such that they are prohibited by the Permanent Injunction. Issues relating to the automatic stay and Permanent Injunction are properly determined by this Court to,

---

[8] The Fox Defendants' reliance on the "first filed" rule is misguided. The Trustee filed the Application in response to the Fox Defendants' motion to reopen the Florida District Court case to bring an amended complaint, and so the Trustee could not have "filed first." In any case, the "first-filed" action was the Trustee's action against the Picower Defendants filed in this Court in May 2009, and this Court is enforcing its own Permanent Injunction. Authority cited by the Fox Defendants is therefore irrelevant. (*See* Stay Motion at 8 n.1.)

among other reasons, further a consistent reading of the Permanent Injunction and to permit central administration of issues relating to the BLMIS estate.

### B.    The Trustee Has Not Defied the Second Circuit Mandate

The Fox Defendants rely on the so-called "mandate rule," which applies the law-of-the case doctrine and provides that "[w]here issues have been explicitly or implicitly decided on appeal, . . . the law-of-the-case doctrine obliges the district court on remand to follow the decision of the court of appeals . . . ." *See Day v. Moscow*, 955 F.2d 807, 812 (2d Cir. 1991) (internal citations and quotation marks omitted). However, here, the Second Circuit made no ruling, explicit or implicit, about which court should decide the application of the automatic stay and Permanent Injunction to potentially duplicative or derivative claims. Hence, the "mandate rule" has no application.

Moreover, the *dicta* upon which the Fox Defendants rely, even if their interpretation made sense (which it does not), would not be controlling because it would not be a part of any mandate. *See May Dep't Stores Co. v. Int'l Leasing Corp., Inc.*, No. 88-CV-4300, 1995 WL 656986 (S.D.N.Y. Nov. 08, 1995) (Second Circuit's statement that district court recognized a material factual dispute was determined to be *dicta* to which the "mandate rule" and law-of-the-case doctrine did not apply); *DiLaura v. Power Auth. of State of New York*, 982 F.2d 73, 76 (2d Cir. 1992) (declining to apply law-of-the-case doctrine where prior ruling may be dictum); *Schwabenbauer v. Board of Education of City of Olean*, 777 F.2d 837, 841-42 (2d Cir. 1985) (dicta not binding); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-CV-22988, 2014 WL 1319307, at *5-6 (S.D. Fla. Mar. 31, 2014) (language in Court of Appeals' opinion was *dicta* to which "mandate rule" did not apply). The Second Circuit's Mandate said nothing about which court would decide the applicability of the automatic stay and Permanent Injunction.

Accordingly, the Fox Defendants' contention that the Trustee has acted "in defiance" of the Second Circuit's Mandate is pure fiction.

A recent decision by the Florida District Court directly addressing the mandate rule, *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-CV-22988, 2014 WL 1319307 (S.D. Fla. Mar. 31, 2014), is instructive.  In *Buckley*, the Florida district court issued an order resolving charging lien disputes among three law firms, including Becker Poliakoff, and dividing attorneys' fees among the firms.  On appeal, the Eleventh Circuit issued an opinion and a mandate which remanded only the *quantum meruit* award as to one of the law firms. Immediately upon issuance of the mandate, a condominium company moved to compel one of the law firms to return previously-disbursed attorneys' fees to the court registry.  Quoting from Eleventh Circuit precedent, the district court recognized that it is bound to follow holdings, not *dicta*: "*Dicta*—references in an opinion that are not 'necessary to deciding the case then before us'—carries no such weight because the mandate rule 'only applies if our prior opinion determined [the issue], explicitly or by necessary implication.'"  *Buckley Towers*, 2014 WL 1319307, at *4 (quoting *Transamerica Leasing Inc. v. Inst. of London Underwriters*, 430 F. 3d 1326, 1331 (11th Cir. 2005)) (emphasis added).  Analyzing the mandate, the district court denied the motion, and held that language in the Eleventh Circuit opinion concerning the firm's entitlement to such relief was *dicta* to which the mandate rule did not apply.  The court employed a common sense approach to determining if the Circuit Court's opinion language was *dicta* by reading the opinion holistically.  The court stated that the movant's reading of the opinion was "wildly inconsistent" with the opinion as a whole, and recognized that the alternate reading made "perfect sense."  *Id*. at *6.

In the case before this Court, the language relied upon by the Fox Defendants was not necessary to the Second Circuit's decision, and the Fox Defendants' construction of the language at issue is inconsistent with the Second Circuit's actual jurisdictional analysis in the decision. Moreover, it addresses a circumstance that had not yet occurred—that there could be some conceivable claim that would not be derivative of the Trustee's claims—and it therefore is *dicta*. Inserting the word "if" before the Second Circuit's statement about conceivable claims further elucidates the true weight of the statement, as "[a]ll statements that go beyond the facts of the case—and sometimes, but not always, they begin with the word 'if'—are *dicta*." *See id.* at *5-*6 ("But it certainly does not represent the holding of the opinion because it relates to a circumstance that has not yet arisen.").

Authority relied upon by the Fox Defendants is inapposite because, in those cases, the lower court failed to comply with a mandate's direct instructions to the lower court on remand.[9] *See United States v. Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (district court lacked authority on remand to consider the timeliness of a conspiracy charge because Court of Appeals' mandate was "unambiguously" limited in scope to sentencing issues); *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (district court erred in vacating judgment on remand because Court of Appeals' mandate had "precise and unambiguous instructions" limiting remand to resentencing and "exceptional circumstances" that could justify non-compliance were not present); *Ginett v. Computer Task Grp., Inc.*, 11 F.3d 359, 361 (2d Cir. 1993) (district court on remand erred in allowing argument in employer-employee dispute for severance pay that no deferred

---

[9] Likewise, cases the Fox Defendants rely upon for their view of the law-of-the-case doctrine are not on point because, here, the issue of which court should determine whether an amended complaint by the Fox Defendants brings duplicative or derivative claims was not decided by the Second Circuit, implicitly or otherwise.  (*See* Stay Motion at 7.)

compensation was owed because "express terms" of mandate directed district court to determine whether $20,000 or $80,000 of deferred compensation should be included in calculation of severance pay).

### C.    Any "Mandate" to the Florida District Court Already Is Fulfilled

The Fox Defendants asked the Florida District Court to consider their "new" complaint, and sought emergency relief from that court in opposition to the Trustee's motion here. The Florida District Court responded by deferring to this Court. Even if the Second Circuit had directed that the Florida District Court, and *only* the Florida District Court, be first presented with the question of whether the Fox Defendants have stated an independent claim (which it did not), that direction has been satisfied. Whatever else the Second Circuit did, it surely did not "mandate" how the Florida District Court was required to address any claims placed before it, nor did it preclude the Florida District Court from deciding to defer to this Court.[10]

### III.    THE TRUSTEE IS NOT A PARTY TO THE FLORIDA PROCEEDINGS AND THE FOX DEFENDANTS HAVE NOT SATISFIED THE STANDARD FOR A STAY

The Trustee is not a party to the Florida proceedings. The Stay Motion purports to enjoin the Trustee from proceeding as a party "in active concert or participation with" the Picower Defendants based on the Picower Settlement under which the Trustee agreed to use best efforts to have duplicative and derivative actions against the Picower Defendants enjoined. That reasoning completely ignores that the Trustee could seek, as an estate fiduciary, to enjoin such actions and enforce the automatic stay even if such an agreement were absent, and in fact he has done so here. As Judge John G. Koeltl held when previously affirming the Trustee's injunction

---

[10] The Goldman Defendants raise similar arguments about this Court's jurisdiction in their opposition to the Trustee's Application. The Trustee will address the Goldman Defendants' arguments in his reply memorandum to be filed in support of the Application.

of Fox and Marshall: "[a]llowing the Florida Actions to go forward would carry real risks to the

estate, implicating the viability of the current settlement and the possibility of future

settlements . . . ." *Marshall v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 490 (S.D.N.Y. 2012).

The Trustee must be able to act in a manner that promotes settlements that are in the best

interests of the estate.  Efforts to bind him to act otherwise, especially when he is not a party to

any such proceeding, should not be permitted to succeed.

The Fox Defendants have not demonstrated that a stay pending their appeal to the

Eleventh Circuit is justified.  *See In re Pulp Finish 1 Co.*, No. 12-13774, 2014 WL 201482

(Bankr. S.D.N.Y. Jan. 16, 2014) (Bernstein, J.), at *9-10 (setting forth the factors controlling the

decision to grant or deny a stay pending appeal).  As discussed above, the Fox Defendants have

not shown that they are likely to succeed on the merits of their interlocutory appeal, which is not

properly before the Eleventh Circuit and rests on a nonsensical reading of the Second Circuit's

decision.  Nor will the Fox Defendants be prejudiced or irreparably injured by review by this

Court of its own Permanent Injunction.  The Fox Defendants' accusation that there will be delay

in the New York courts is speculative at best.  By contrast, the Trustee would be severely

prejudiced in promptly and efficiently administering the BLMIS estate if he had to do battle on

motions around the country.  And the Fox Defendants freely admit that such is the result they

seek:  having failed to sue the Trustee in Florida, they now argue to this Court that the Trustee

should have intervened there.  (*See* Stay Motion at 8 n.1.)  Beyond the clear prejudice to the

Trustee, the Fox Defendants' theory would similarly contravene the strong public interest in

centralizing the administration of the BLMIS estate in this Court.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny the Stay

Motion.

Dated: April 24, 2014
      New York, New York

Respectfully submitted,

  /s/ David J. Sheehan
_____
David J. Sheehan
Email: dsheehan@bakerlaw.com
Deborah H. Renner
Email: drenner@bakerlaw.com
Tracy L. Cole
Email: tcole@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com
Ferve Ozturk
Email: fozturk@bakerlaw.com
Matthew J. Moody
Email: mmoody@bakerlaw.com

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*