# EXHIBIT C

No. 14-11250-AA

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ADELE FOX, et al.,

Appellants/Plaintiffs,

vs.

CAPITAL GROWTH CO., et al.,

Appellees/Defendants.

Appeal from the United States District Court
for the Southern District of Florida
West Palm Beach Division

**PAMELA GOLDMAN AND A & G GOLDMAN PARTNERSHIP'S MOTION FOR LEAVE TO INTERVENE FOR LIMITED PURPOSES AND TO DISQUALIFY BECKER & POLIAKOFF AS COUNSEL FOR APPELLANTS, OR FOR LIMITED REMAND**

BEASLEY HAUSER KRAMER
& GALARDI, P.A.
JAMES W. BEASLEY, JR.
505 S. Flagler Drive, Suite 1500
West Palm Beach, FL 33401
Telephone: 561-835-0900
Fax: 561-835-0939

Counsel for Proposed Intervenors

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

To the best of undersigned's knowledge, the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have or may have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1. Suzanne Stone Marshall, Adele Fox, Marsha Peshkin, and Russell Oasis, Appellants-Plaintiffs.

2. Becker & Poliakoff, Counsel for Appellants-Plaintiffs.

3. Capital Growth Company, Decisions, Incorporated, Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., The Picower Foundation, The Picower Institute of Medical Research, The Trust f/b/o Gabrielle H. Picower, Barbara Picower, individually, and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabrielle H. Picower, Appellees-Defendants.

4. Holland & Knight LLP and Schulte Roth & Zabel LLP, Counsel for Appellees-Defendants.

5. Pamela Goldman and A & G Goldman Partnership, Proposed Intervenors.

6. Beasley Hauser Kramer & Galardi, P.A. and Blackner, Stone & Associates P.A., Counsel for Proposed Intervenors.

7. The Honorable Kenneth L. Ryskamp, United States District Judge, Southern District of Florida.

## INTRODUCTION

Proposed intervenors Pamela Goldman and A & G Goldman Partnership ("Intervenors"), by and through their undersigned counsel, move for leave to intervene in this appeal for the limited purpose of disqualifying Becker & Poliakoff ("Becker") as counsel for a putative class of similarly situated persons represented by Plaintiffs Suzanne Stone Marshall, Adele Fox, Marsha Peshkin, and Russell Oasis. As innocent former BLMIS customers, Intervenors have standing to intervene because they are members of the putative class, and Becker owes fiduciary duties to Intervenors and other putative class members under Florida law. Intervenors move to disqualify Becker because the firm suffers from conflicts of interest arising from its representation of certain members of the putative class, in actions where their interests are directly adverse to other class members. Intervenors also move to disqualify Becker because the firm's lead attorney in this case, Helen Chaitman, was a member of the putative class when Becker first accepted the representation, and suffered from a per se conflict of interest that could not be cured after the fact. These conflicts substantially impair Becker's ability to freely and fully represent the proposed class, and Becker must therefore be disqualified in this appeal. In the alternative, Intervenors move for limited remand to the U.S. District Court for the Southern District of Florida to take evidence and decide the disqualification issue.

1

## BACKGROUND

Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities LLC ("BLMIS") engaged in a Ponzi scheme that defrauded thousands of BLMIS investors. In the course of the scheme, BLMIS sent monthly statements to its nearly 7,000 customers reflecting phony investments and phony profits. After the Ponzi scheme collapsed in December 2008, the U.S. District Court for the Southern District of New York appointed Irving H. Picard, Esq., as trustee ("Trustee") for the substantively consolidated liquidation of Madoff's estate and of BLMIS under the Securities Investor Protection Act ("SIPA").

On February 5, 2014, Appellants sought leave to file a class action complaint arising out of the BLMIS Ponzi scheme in the District Court case below, *Marshall v. Capital Growth Co.*, 10-80252-CV-KLR (S.D. Fla.). This class action complaint alleges that Madoff's close friend and associate, Jeffry Picower, participated in the Ponzi scheme and is liable, along with his affiliates, for damages suffered by BLMIS customers. The proposed class in the complaint consists of "all customers of BLMIS who entrusted securities or cash to BLMIS, either directly or indirectly," between December 1, 1991 and December 11, 2008, excluding BLMIS employees and BLMIS's co-conspirators. Within this class are two separate and distinct groups of BLMIS customers: those who have net losses associated with BLMIS and also have claims payable in the SIPA liquidation ("net

losers"), and those who have already received from BLMIS pre-bankruptcy more than the amount they invested in BLMIS and have been barred from recovering in the SIPA liquidation ("net winners").[1]  Intervenors are innocent BLMIS customers who are members of the putative class described in Appellants' complaint.

The class action complaint filed by Appellants is not the first complaint in this case.  More than four years ago, two class action complaints were filed in the District Court below on February 16 and 17, 2010 by Appellants Adele Fox ("Fox") and Suzanne Stone Marshall ("Marshall"), respectively.  These complaints were filed on behalf of Fox and Marshall by undersigned counsel, Beasley Hauser Kramer & Galardi, P.A. ("Beasley Hauser"), and by Blackner, Stone & Associates P.A. ("Blackner Stone").  Becker began participating in these actions when undersigned counsel moved to admit Becker pro hac vice as co-counsel for Fox and Marshall on March 22, 2010.  On April 28, 2010, Fox and Marshall were enjoined from proceeding in these actions by the Bankruptcy Court for the Southern District of New York.  After nearly four years of appeals, the Second Circuit ultimately granted leave to Fox and Marshall to file a new complaint in the Southern District of Florida.  *See generally In re Bernard L. Madoff Inv. Securities*

---

[1] *See generally In re Bernard L. Madoff Inv. Securities LLC*, 654 F. 3d 229, 236-38 (2d Cir. 2011) (describing "net equity" in the context of the BLMIS fraud).  The "net winner" label is somewhat misleading, as it suggests that these defrauded, innocent BLMIS customers somehow benefitted from the Ponzi scheme.  In fact, the "net winners" in the putative class actually lost money, having paid federal and state income taxes on phony profits, and having lost the time value of their money.

3

*LLC*, 740 F.3d 81, 85-86, 96 (2d Cir. 2014) (complaint in the Southern District of Florida may be amended to assert claims for conspiracy against Jeffry Picower).

On February 5, 2014, Becker moved for leave to file a proposed amended complaint in the District Court below. Neither Beasley Hauser nor Blackner Stone, both co-counsel of record below, had any part in filing this amended complaint. Shortly thereafter, on February 19, 2014, counsel for Intervenors moved to disqualify Becker based on the firm's conflicts of interest.

Rather than addressing the conflict, Becker responded by informing Beasley Hauser and Blackner Stone that Fox and Marshall had terminated them on March 7, 2014. However, no motion to withdraw or substitute counsel was ever filed, and no order relieving Beasley Hauser and Blackner Stone of responsibility for the representation was ever entered. *See* S.D. Fla. L.R. 11.1(d)(3). On March 17, 2014, the District Court below deferred to the Bankruptcy Court for the Southern District of New York for a decision on a motion by the Trustee to enjoin the case, but failed to decide the motion to disqualify.[2] Notwithstanding the pending disqualification motion, Becker filed the instant appeal on behalf of Appellants on March 24, 2014.

---

[2] The District Court denied Appellants' cross-motion for a preliminary injunction against the Appellees and the Trustee. Combined with the District Court's deferral to the Bankruptcy Court, the District Court effectively granted Appellees' motion to stay the case in favor of the Trustee's motion.

4

# ARGUMENT

### I. Limited intervention is necessary to protect the rights of Intervenors and other absent members of the putative class.

Under Florida Rule of Professional Conduct 4-1.7 ("Rule 4-1.7"), a lawyer generally cannot represent a client if "the representation of 1 client will be directly adverse to another client," or if "there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Florida law thus "prohibits a lawyer from representing a client where that client's interests are adverse to another client the lawyer represents in another matter, even if the other matter is wholly unrelated." *The Florida Bar v. Dunagan*, 731 So. 2d 1237, 1240 n.3 (Fla. 1999). In particular, Becker as class counsel owes a fiduciary duty to all members of the putative class, including Intervenors, and therefore must comply with Rule 4-1.7 with respect to the entire class. *See The Florida Bar v. Adorno*, 60 So. 3d 1016, 1025 (Fla. 2011) (finding breach of fiduciary duty with respect to putative class members that violated Rule 4-1.7, regardless of whether or not counsel had an "attorney-client relationship with those members").

This Court has held that "[i]f at any time the trial court realizes that class counsel should be disqualified, it is required to take appropriate action"; the principle is equally applicable to the instant interlocutory appeal. *Piambino v.*

*Bailey*, 757 F.2d 1112, 1145 n.88 (11th Cir. 1985). A limited intervention is necessary here, because there is no other practical way for Intervenors to raise Becker's conflicts of interests before this Court; Becker certainly does not intend to raise them. *See Hall v. Holder*, 117 F.3d 1222, 1231 (11th Cir. 1997) (direct intervention in an appeal is permissible "in an exceptional case for imperative reasons"). In light of the conflicts suffered by Becker, and the fiduciary duties Becker owes to Intervenors and the other putative class members, Intervenors are entitled to intervene for the limited purpose of moving to disqualify Becker.

**II.    In other BLMIS-related actions, Becker is advocating interests that are directly adverse to the "net losers."**

In this appeal, Becker is representing both "net losers," who are BLMIS customers that can recover in the BLMIS SIPA liquidation, and "net winners," who have been barred by the Trustee from recovering in the SIPA liquidation. Net winners and net losers have some common interests in this litigation, but they also have some interests which conflict. For example, many net winners, including individual clients of Becker, are being directly pursued by the BLMIS Trustee in litigation for net profits they received from their BLMIS investments. These actions against net winners are brought under fraudulent conveyance or bankruptcy avoidance statutes. In practical effect, the Trustee's claims may result in recoveries to the BLMIS estate, and "net losers," in turn, will receive these proceeds. It is in the pecuniary interest of the net losers for the Trustee to

6

successfully sue "net winners," and it is in the pecuniary interest of the net winners to resist such claims. Because of this direct conflict, any lawyer representing both net losers and net winners in a class action should not take sides in the "clawback" issue for one group versus the other.

An attorney cannot represent a class of plaintiffs if the attorney also represents other clients whose interests are adverse to the class. *See*, *e.g.*, *Fiandaca v. Cunningham*, 827 F. 2d 825, 829 (1st Cir. 1987) ("[counsel's] representation of the plaintiff class in this litigation was materially limited by its responsibilities to the [other] class"); *Moreno v. Autozone*, No. C05-04432 MJJ, 2007 WL 4287517, at *3-*6 (N.D. Cal. Dec. 6, 2007) (counsel was disqualified due to conflict of interest between two of counsel's clients who had objected to a settlement in which three other clients had filed claim forms). As set forth in more detail below, because Becker currently represents parties and interests in other actions that are materially adverse to the net losers, Becker must be disqualified as counsel here.

### A. Becker represents certain "net winners" in defending avoidance actions brought by the Trustee.

Becker and Ms. Chaitman represent, on an hourly fee basis, 128 net winners ("Avoidance Defendants") in their defense of various bankruptcy avoidance

actions brought by the Trustee.[3] *See generally SIPC v. BLMIS*, 476 B.R. 715, 717-19 (S.D.N.Y. 2012). *See* Letter Response filed by Becker, *SIPC v. BLMIS*, No. 08-01789 (SMB), [D.E. 5648], attached as **Exhibit "A".** These avoidance actions seek recovery for the BLMIS estate, and every dollar obtained from the Avoidance Defendants will directly benefit the "net losers" in the underlying SIPA liquidation. One group of clients – the Avoidance Defendants – is paying Becker to defend against claims which would benefit another group of purported class members – the net losers. Stated another way, Becker is actively preventing its net loser clients from receiving monies from its net winner clients, whom Becker also currently represents in this and such avoidance actions. Becker suffers from a clear conflict of interest: it cannot adequately represent the interests of the Avoidance Defendants without also harming the interests of the net losers. *See The Florida Bar v. Scott*, 39 So. 3d 309, 315 (Fla. 2010) (to the extent that "investors wanted to pursue claims against [a lawyer's] past or present clients with interests adverse to theirs, [the lawyer] should have referred them to other counsel, someone without a disqualifying conflict"). This is a flagrant violation of Rule 4-1.7 which disqualifies Becker from representing the class here.

---

[3] By definition, the avoidance actions seek to avoid transfers to certain BLMIS investors who purportedly took out more from BLMIS than they paid in. *See* Trustee's Website, **Exhibit "B"** (the avoidance actions "seek the return of transfers to the Customer Fund, for the benefit of all customers with allowed claims"). The Trustee seeks to force some BLMIS investors (net winners) to repay money to the estate for the benefit of other BLMIS investors (net losers).

8

In the proceedings below, Becker argued that there is no conflict between the interests of the "net losers" and "net winners" with respect to the BLMIS liquidation, because the BLMIS Trustee has enough funds to pay all "net loser" claims in full. This is patently false. The Trustee has stated publicly that as of March 25, 2014, he has only recovered "approximately $9.795 billion, representing approximately 55.9 percent of the estimated $17.5 billion in principal lost in the [BLMIS] Ponzi scheme." *See* **Exhibit "C"**, attached hereto. Almost half of the $9.790 billion is from the singular $5 billion settlement payment that the Picower estate paid to settle the Trustee's fraudulent conveyance claims. *Id.* Put simply, even after the unique Picower settlement with the Trustee, there *will not* be enough money to pay the net losers' allowed claims in the BLMIS liquidation, much less to pay the net losers' full losses.[4] In reality, Becker and Ms. Chaitman are actively

---

[4] Ms. Chaitman has also previously suggested that the BLMIS estate will eventually receive an additional $2 billion resulting from the Justice Department's settlement with the Picower Defendants. *See* Declaration of Helen Chaitman, ¶ 26, attached as **Exhibit "D"**. This assertion has no basis in law or fact. Indeed, Richard Breeden, the special master appointed to distribute these funds, has stated they will not all go to the net losers, and has yet to determine how they will be allocated. *See* Forfeiture Website, attached as **Exhibit "E"**. The Settlement Agreement with the Picower estate is final, and that Settlement Agreement only contemplates $5 billion being paid to the BLMIS estate. *See* Picower Settlement Description, attached as **Exhibit "F"**; *see generally In re BLMIS*, 740 F.3d 81, 85-86 (2d Cir. 2014). Moreover, even with $2 billion more in assets, the net losers would still not recover all of their losses. That is why the Trustee is currently pursuing avoidance actions against net winners, many of whom are clients of Becker.

9

and currently opposing the interests of net losers, who through the Trustee are trying to get money from net winners who received purported overpayments from BLMIS.[5]  Due to its dual representation of net winners and net losers, Becker has an ongoing conflict of interest and must be disqualified.

>   B.   **Becker represents a purported class of "net winners" in objecting to the Trustee's recent settlement with JPMorgan.**

Becker and Ms. Chaitman also represent another purported class of "net winners" who are attempting to opt out of and are currently objecting to the Trustee's settlement with JPMorgan, which will bring $435 million into the BLMIS estate.  *See Hill v. JPMorgan Chase & Co., et al.*, No. 11-cv-7961 (CM); *Shapiro v. JPMorgan Chase & Co., et al.*, No. 11-cv-8331 (CM), [D.E. 55], attached as **Exhibit "G."**  The JPMorgan settlement inures directly to the benefit of the "net losers."  Again, this representation shows that the interests of one group of Becker's clients, the subclass of "net winners," are adverse to the interests of another group which Becker seeks to represent herein, the net losers.  Becker cannot fully represent both these groups simultaneously, and is therefore subject to disqualification.

---

[5] Moreover, Ms. Chaitman has publicly advocated against the net losers' interests through congressional testimony.  For example, in written testimony on March 10, 2011, Ms. Chaitman argued that the Trustee's avoidance suits were "grossly inequitable and inconsistent with the law."  *See* Testimony, attached as **Exhibit "H"**, at 2. Ms. Chaitman cannot represent hundreds of net losers while at the same time publically advocating against their direct litigation interest with respect to the Trustee's fraudulent conveyance claims.

10

**III.   Becker's lead attorney was a member of the class, and therefore she and Becker had an irreconcilable conflict of interest, which could not be cured after the fact.**

Becker's lead attorney in this action, Helen Chaitman, was also a BLMIS customer who invested (and lost) money in the Ponzi scheme, making her a "net loser" member of the putative class. Due to Ms. Chaitman's status as both class counsel and a member of the class, she and her firm suffered from a per se conflict of interest under Florida and Eleventh Circuit law, and should be disqualified. *See Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 104 (5th Cir. 1978) ("attorneys . . . who themselves are members of the class of plaintiffs . . . should not be permitted to serve as counsel for the class").[6]

In *Zylstra*, the Fifth Circuit found that an attorney who is both class counsel and a class member is inherently conflicted, because class counsel's fees "depend upon the outcome of the case," and the attorney who is also a class member "cannot serve the interests of the class with the same unswerving devotion as an attorney who has no interest other than representing the class members." *Id. Cf. Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1375 (11th Cir. 1984) ("[i]f the interests of a class are to be fairly and adequately protected . . . the roles of

---

[6] This Court adopted all decisions of the former Fifth Circuit issued before October 1, 1981 as precedent. *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981). The common-sense *Zylstra* disqualification rule is still law in the Fifth Circuit. *See, e.g., Deburro v. Apple, Inc.*, No. A–13–CA–784–SS, 2013 WL 5917665, at *1 n.2 (W.D. Tex. Oct. 31, 2013).

11

class representative and of class attorney cannot be played by the same person.") (quoting *Turoff v. May Co.*, 531 F. 2d 1357 (6th Cir. 1976)). Disqualification is per se in part because "the public suspicion of such a conflict is sure to outweigh any public benefit from having that attorney continue." *Zylstra*, 578 F.2d at 104. *Accord Davidson v. Yeshiva Univ.*, 555 F. Supp. 75, 78 (S.D.N.Y. 1982) (attorney could not serve as class counsel for alleged class of surgeons of which he was a member); *Kramer v. Scientific Control Corp.*, 534 F. 2d 1085, 1090 (3d Cir. 1976) (attorney suffers from a conflict of interest if he takes "a share of the potential court-awarded attorneys' fee in addition to his recovery as a member of the class"). Applying the *Zylstra* rule to the facts of this case, it is clear that Becker attorney Helen Chaitman's dual status as class counsel and class member creates a per se conflict of interest requiring disqualification.

In Becker's response below, Ms. Chaitman asserted that she is no longer a member of any relevant class because she sold her BLMIS customer claim in 2011. *See* **Exhibit D**, Declaration of Helen Chaitman, ¶ 22. However, the Florida Supreme Court has recently held under Rule 4-1.7 that a lawyer "has the duty to decline representation if [a] conflict exists before representation is undertaken." The conflict cannot be cured by actions taken by the lawyer after the fact. *See Young v. Achenbauch*, SC12-988, --- So. 3d ---, 2014 WL 1239965, at *6 (Fla. Mar. 27, 2014) (lawyer could not "drop one client like a hot potato" in order to

12

resolve a conflict of interest between two clients). Likewise, in this case, Ms. Chaitman could not cure her per se conflict by selling her claim as a BLMIS investor after having already accepted representation of the class. Because Ms. Chaitman's dual status as class counsel and class member created a per se conflict of interest, Becker must be disqualified.

**IV.    In the alternative, this Court should remand the disqualification issue to the District Court, where the issue should have been decided.**

Counsel for Intervenors moved to disqualify Becker in the District Court below. The District Court was obligated to address that issue substantively, but did not. *Musicus v. Westinghouse Elec. Corp.*, 621 F. 2d 742, 743 (5th Cir. 1980) ("the district court erred in failing to address the merits of the motion" to disqualify counsel). The District Court instead deferred to the Bankruptcy Court for the Southern District of New York, in effect granting the Appellees' motion to stay the Florida case and denying the Appellants' cross-motion to enjoin the Appellees from proceeding in New York. But the District Court was required to rule on the disqualification motion prior to deciding any of these substantive motions, "because the success of a disqualification motion has the potential to change the proceedings entirely." *Bowers v. Ophthalmology Group*, 733 F. 3d 647, 654-55 (6th Cir. 2013).[7]

---

[7] Intervenors acknowledge that *Bowers* primarily dealt with the potential for confidential information to "infect the evidence presented to the district court,"

13

Based on undisputed facts, Becker suffers from clear conflicts of interest that prejudice ongoing proceedings on behalf of absent class members. These conflicts must be addressed and ended now, before substantive litigation on the claims begins. Should the Court decide that further evidence is required in order to determine the issue, however, Intervenors respectfully request a limited remand of this Motion to the District Court below.

## Conclusion

Becker's representation of the class is tainted by multiple conflicts of interest. In other actions, Becker is advocating for the interests of its "net winner" clients and directly against the interests of its "net loser" clients. Moreover, it is per se improper for Ms. Chaitman and her firm to represent a class of which Ms. Chaitman was also a member. Becker cannot represent the net winners and net losers here, and this Court should disqualify the firm. In the alternative, Intervenors request that this Court remand the disqualification issue for determination in the District Court below.

**Dated:** April 9, 2014

---

which was not a concern in the proceedings below. However, the Sixth Circuit further held in *Bowers* that even on a Rule 12(b)(6) motion, where no evidence is involved, "a district court should rule first on the motion to disqualify counsel to avoid any chance of infecting the proceedings." *Id.* at n.5; *see also Williams v. Department of Corrections*, 306 P. 3d 821, 823 (Utah App. 2013) ("To allow a case to progress while potentially conflicted counsel continues to represent a party threatens to taint all further proceedings in the case").

14

Respectfully submitted,

/s/ James W. Beasley, Jr.
James W. Beasley, Jr.
Florida Bar No. 145750
eservice@beasleylaw.net
BEASLEY HAUSER KRAMER
& GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Tel: (561) 835-0900
Fax: (561) 835-0939

## CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that on this 9th day of April 2014, this document was electronically filed with the Clerk of this Court by using the CM/ECF system, which will serve a copy on all counsel of record.

/s/ James W. Beasley, Jr.
James W. Beasley, Jr.