# EXHIBIT D

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **14-11250**

SUZANNE STONE MARSHALL, ADELE FOX, MARSHA PESHKIN, and
RUSSELL OASIS, individually and on behalf of a class of similarly situated,

Appellants,

- versus -

CAPITAL GROWTH COMPANY; DECISIONS, INC.;  FAVORITE FUNDS; JA PRIMARY
LIMITED PARTNERSHIP; JA SPECIAL LIMITED PARTNERSHIP; JAB PARTNERSHIP;
JEMW PARTNERSHIP; JF PARTNERSHIP; JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP; JMP LIMITED PARTNERSHIP; JEFFRY M. PICOWER SPECIAL
COMPANY; JEFFRY M. PICOWER, P.C.; THE PICOWER FOUNDATION; THE PICOWER
INSTITUTE OF MEDICAL RESEARCH; THE TRUST F/B/O GABRIELLE H. PICOWER;
BARBARA PICOWER, individually, and as Executor of the Estate of Jeffry M. Picower, and as
Trustee for the Picower Foundation and for the Trust f/b/o Gabriel H. Picower,

Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

APPELLEES' OPPOSITION TO APPELLANTS'
MOTION FOR INJUNCTION PENDING APPEAL

| | |
|---|---|
| HOLLAND & KNIGHT LLP | SCHULTE ROTH & ZABEL LLP |
| Sanford L. Bohrer | William D. Zabel |
| Brian Toth | Marcy Ressler Harris |
| | Michael Kwon |
| | Jennifer M. Opheim |
| 701 Brickell Avenue, Suite 3300 | 919 Third Avenue |
| Miami, Florida 33131 | New York, New York 10022 |
| Telephone: (305) 789-7678 | Telephone:  (212) 756-2000 |
| Facsimile: (305) 789-7799 | Facsimile:  (212) 593-5955 |
| sandy.bohrer@hklaw.com | marcy.harris@srz.com |
| Counsel for Appellees | Of Counsel for Appellees |

No. 14-11250

*Marshall et al v. Capital Growth Co. et al*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT OF APPELLEES

### Certificate of Interested Persons

Undersigned counsel for Appellees Capital Growth Company;

Decisions, Inc.; Favorite Funds; JA Primary Limited Partnership; JA Special

Limited Partnership; JAB Partnership; JEMW Partnership; JF Partnership; JFM

Investment Companies; JLN Partnership; JMP Limited Partnership; Jeffry M.

Picower Special Company; Jeffry M. Picower, P.C.; The Picower Foundation;

The Picower Institute of Medical Research; The Trust F/B/O Gabrielle H.

Picower; Barbara Picower, individually and as Executor of the Estate of Jeffry M.

Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o

Gabriel H. Picower, pursuant to Federal Rule of Appellate Procedure 26.1 and

Eleventh Circuit Rules 26.1-1 through 26.1-3, hereby certifies that the following is

a complete list of persons and entities that were omitted from the certificate

contained in Appellants' Expedited Motion for an Injunction Pending Appeal:

Hon. Stuart M. Bernstein, United States Bankruptcy Court Judge for the Southern

District of New York

Estate of Bernard L. Madoff Investment Securities, LLC

Opheim, Jennifer

United States Bankruptcy Court for the Southern District of New York

/s/ Sanford L. Bohrer
Sanford L. Bohrer

C-i of ii

No. 14-11250

*Marshall et al v. Capital Growth Co. et al*

## Corporate Disclosure Statement

Undersigned counsel for Appellees Capital Growth Company; Decisions, Inc.; Favorite Funds; JA Primary Limited Partnership; JA Special Limited Partnership; JAB Partnership; JEMW Partnership; JF Partnership; JFM Investment Companies; JLN Partnership; JMP Limited Partnership; Jeffry M. Picower Special Company; Jeffry M. Picower, P.C.; The Picower Foundation; The Picower Institute of Medical Research; The Trust F/B/O Gabrielle H. Picower; Barbara Picower, individually and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabriel H. Picower (collectively, "Appellees"), pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, hereby certifies that no corporation directly or indirectly owns 10% or more of any class of equity interest in any of the Appellees.

/s/ Sanford L. Bohrer

Sanford L. Bohrer

C-ii of ii

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND  CORPORATE

    DISCLOSURE STATEMENT OF APPELLEES............................................i

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ...........................................................................3

ARGUMENT ................................................................................................9

I.     Appellants Do Not Have a Likelihood of Success on the Merits...................9

     A.     The Order Is Not an Appealable Interlocutory Order .........................10

     B.     The Second Circuit Did Not "Mandate" That the Florida Court Is

            the Only Forum That Could Decide Whether Appellants'

            Amended Claims Are Barred By the Permanent Injunction...............11

     C.     The Florida Court Did Not Abuse Its Discretion in Deferring to

            the New York Bankruptcy Court .......................................................14

II.     Appellants Cannot Enjoin the Non-Party Trustee ........................................15

III.     Appellants Will Not Suffer Irreparable Injury Absent an Injunction............16

IV.     The Picower Parties and Trustee Will Be Prejudiced by an Injunction ........17

V.     An Injunction Would Harm the Public Interest.............................................18

CONCLUSION .........................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Admin. Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*,
    854 F.2d 1272 (11th Cir. 1988) .................................................. 10-11

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
    578 F.3d 1283 (11th Cir. 2009) ...........................................................20

*Carpenter v. Mohawk Indus., Inc.*,
    541 F.3d 1048 (11th Cir. 2008) ...........................................................11

*Forsyth County v. U.S. Army Corps of Engineers*,
    633 F.3d 1032 (11th Cir. 2011) ...........................................................15

*Fox v. Picard*,
    848 F. Supp. 2d 469 (S.D.N.Y. 2012) .........................................4, 6, 16

*M & N Plastics, Inc. v. Sebelius*,
    No. 13-819, 2013 WL 5912523 (D.D.C. Nov. 5, 2013)....................20

*Marshall v. Picard*,
    740 F.3d 81 (2d Cir. 2014) .......................................6-7, 11-12, 19-20

*Picard v. Fox*,
    429 B.R. 423 (S.D.N.Y. Bankr. 2010)........................................ 3-4, 5

*Transamerica Leasing, Inc. v. Inst. of London Underwriters*,
    430 F.3d 1326 (11th Cir. 2005) ...........................................................13

*Touchston v. McDermott*,
    234 F.3d 1130 (11th Cir. 2000) .............................................................9

*United States v. Hogan*,
    986 F.2d 1364 (11th Cir. 1993) ...........................................................12

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1997)...............................................................................12

**Statutes and Rules**

11 U.S.C. § 105(a) ......................................................................................5

11 U.S.C. § 362(a) ......................................................................................................5

28 U.S.C. § 1292(a)(1) .............................................................................................10

Fed. R. App. P. 8(a) .................................................................................................14

Fed. R. App. P. 41(b) ...........................................................................................7, 13

## <u>PRELIMINARY STATEMENT</u>

In Appellants' Expedited Motion for an Injunction Pending Appeal (the "Motion"), Appellants seek the extraordinary remedy of enjoining Appellees (the "Picower Parties") and *non-party* Irving H. Picard (the "Trustee"), the court-appointed trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), from having the Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court") determine the scope of its own permanent injunction (the "Permanent Injunction").  For the reasons herein, Appellants' Motion should be denied.

The Permanent Injunction at issue was entered by the New York Bankruptcy Court pursuant to a settlement between the Trustee and the Picower Parties, in which the Picower Parties paid more than *$7.2 billion* to settle, *inter alia*, the Trustee's claims against the Picower Parties (the "Trustee's Claims").  A key part of the settlement (and the New York Bankruptcy Court's centralized administration of the BLMIS liquidation) is the Permanent Injunction, which enjoins any actions against the Picower Parties that are "duplicative or derivative" of the Trustee's Claims.

This is not the first time Appellants have tried to enjoin the Trustee from having the New York Bankruptcy Court determine whether Appellants' claims against the Picower Parties are impermissibly derivative of the Trustee's Claims. After this putative class action and a separately-filed companion complaint were filed in the district court for the Southern District of Florida (the "Florida Court") on February 16 and 17, 2010, the Trustee initiated an action in the New York

1

Bankruptcy Court on March 31, 2010 for a determination that those actions were barred by the automatic stay.  In response, on April 1, 2010, Appellants filed *ex parte* motions in the Florida Court for emergency temporary restraining orders to enjoin the Trustee from proceeding with that action in New York.  The Florida Court properly denied those motions that same day.

On May 3, 2010, the New York Bankruptcy Court held that Appellants' putative class action complaints filed in the Florida Court were impermissibly derivative of the Trustee's Claims.  On appeal, both the district court for the Southern District of New York (the "SDNY District Court") and the Court of Appeals for the Second Circuit affirmed the New York Bankruptcy Court's decision, finding that Appellants' complaints were barred by the Permanent Injunction and the automatic stay.

Having lost in the New York federal courts, Appellants returned to the Florida Court and filed a Motion to Reopen, seeking leave to file a proposed Second Amended Complaint.  Yet this time, relying on pure *dicta* that they mischaracterize as a "mandate" from the Second Circuit, Appellants insist that the New York Bankruptcy Court *no longer has jurisdiction* to decide whether their newly amended claims also violate the Permanent Injunction and automatic stay. If the Second Circuit had intended to divest the New York Bankruptcy Court of jurisdiction, it surely would not have done so merely in a clause to a sentence, without any analysis, and on an issue that was never briefed or argued. Appellants' fallacious "mandate" argument is *another* attempt to end run the New York federal courts, where Appellants have litigated unsuccessfully for years, first

2

in opposition to the Picower Parties' $7.2 billion settlement and then in support of claims found to be barred by the Permanent Injunction and automatic stay.

Consequently, in response to Appellants' Motion to Reopen, the Trustee again filed (a) a complaint against Appellants (and other related putative class action plaintiffs) in the New York Bankruptcy Court (the "New York Action"), and (b) a motion for preliminary injunction, scheduled for hearing on May 7, 2014, to enjoin Appellants from filing their Second Amended Complaint because it would violate the Permanent Injunction and automatic stay (the "Trustee's Motion"). The Florida Court, exercising sound discretion, entered an order stating that it would defer to the New York Bankruptcy Court for the determination of whether Appellants' proposed Second Amended Complaint violates the Permanent Injunction and automatic stay.

Appellants now appeal from that order and seek an injunction pending appeal to enjoin the Trustee – not a party herein – from prosecuting the New York Action. In the interests of comity and judicial efficiency, this Court should not grant such an injunction and instead, like Florida Court below, should defer to the New York Bankruptcy Court.

## STATEMENT OF FACTS

This action arises from the multi-billion dollar Ponzi scheme perpetrated by Bernard L. Madoff through his securities firm, BLMIS.[1] On December 15, 2008,

---

[1] This putative class action initially was brought by Appellant Adele Fox ("Fox") on behalf of customers who withdrew more money than they deposited ("Net Winners"). A companion putative class action was separately filed by Appellant

the SDNY District Court appointed the Trustee for the liquidation of BLMIS ("the BLMIS Liquidation") and removed that proceeding to the New York Bankruptcy Court. *See Picard v. Fox*, 429 B.R. 423, 426 (S.D.N.Y. Bankr. 2010). As part of the BLMIS Liquidation, on May 12, 2009, the Trustee sued the Picower Parties and asserted the Trustee's Claims, including for fraudulent transfers, preferences, turnover, and state law fraudulent conveyances. *See id.* at 429.

Appellants Fox and Marshall were BLMIS customers who filed customer claims in the BLMIS Liquidation. *See id.* at 428. Marshall's customer claim was allowed on July 24, 2009 in the amount of $30,000, the amount she lost in Madoff's Ponzi scheme. *See id.* Fox's customer claims were denied because Fox was a Net Winner. Like all other Madoff customers similarly situated, Fox was barred from receiving payments through the BLMIS Liquidation until all Net Losers recovered their principal investments. *Fox v. Picard*, 848 F. Supp. 2d 469, 474 (S.D.N.Y. 2012).

At the time the Trustee was negotiating his settlement with the Picower Parties, the Fox/Marshall Class Actions were filed in the Florida Court, asserting claims for conversion, unjust enrichment, conspiracy, and violations of Florida's

---

Suzanne Stone Marshall ("Marshall") under Case No. 10-80254 on behalf of customers who lost money in the Madoff Ponzi scheme ("Net Losers") (the Fox and Marshall actions, collectively, the "Fox/Marshall Class Actions"). On March 22, 2011, Judge Ryskamp administratively closed the Fox/Marshall Class Actions. On February 5, 2014, a Motion to Reopen was filed, adding as Plaintiffs Marshall, Marsha Peshkin, and Russell Oasis (Fox, Marshall, Peshkin and Russell, collectively, "Appellants"). No motion to reopen was filed in the companion Marshall action (Case No. 10-80254), which remains administratively closed.

RICO Act, all arising from the Picower Parties' alleged withdrawals from their

BLMIS accounts.  (S.D. Fla. Nos. 10-80252 and 10-80254.)[2]

On March 31, 2010, the Trustee filed a complaint in the New York

Bankruptcy Court against Fox and Marshall seeking, among other things, a

declaration that the Fox/Marshall Class Actions violated the automatic stay under

Section 362(a) of the Bankruptcy Code and a preliminary injunction pursuant to

Section 105(a) of the Bankruptcy Code enjoining any further prosecution of the

Fox/Marshall Class Actions.  *See Picard*, 429 B.R. at 430.

The very next day, Fox and Marshall filed *ex parte* emergency motions in

the Florida Court for temporary restraining orders to enjoin the Trustee's action in

the New York Bankruptcy Court.  The Florida Court properly denied those

motions that same day.  (DE 16 & 17; S.D. Fla. No. 10-80254, DE 14 & 15.)[3]

On May 3, 2010, after a hearing, the New York Bankruptcy Court granted

the Trustee's motion for a preliminary injunction and deemed the Fox/Marshall

Class Actions void *ab initio*, finding that the Fox/Marshall Class Actions violated

the automatic stay because they impermissibly asserted claims that were derivative

of the Trustee's Claims.  *Picard*, 429 B.R. at 432, 437.

On December 17, 2010, the Picower Parties entered into two separate but

---

[2] Fox and Marshall asserted identical claims against the Picower Parties, with the
only differences being that Fox sought to represent a class of Net Winners and
Marshall sought to represent a class of Net Losers.  On March 15, 2010, Fox and
Marshall filed amended complaints which made non-substantive changes.

[3] Unless otherwise noted, citations to "DE" refer to the docket entries in S.D. Fla.
Case No. 10-80252 (Ryskamp, J.).

related agreements:  (a) with the U.S. Department of Justice pursuant to which the Picower Parties agreed to forfeit $7.2 billion, representing 100% of their net withdrawals from BLMIS, and (b) with the Trustee (the "Settlement Agreement"), pursuant to which they agreed that $5 billion of the forfeited funds would be transferred to the Trustee for distribution to Madoff's victims.  Over the objections of Fox and Marshall, on January 13, 2013, the New York Bankruptcy Court approved the Settlement Agreement and issued the Permanent Injunction enjoining claims against the Picower Parties that were "duplicative or derivative" of the Trustee's Claims.  (Ex. A § 7; Ex. B.)  The Florida Court later administratively closed the Fox/Marshall Class Actions.  (DE 26; S.D. Fla. No. 10-80254, DE 21.)

The SDNY District Court affirmed the New York Bankruptcy Court's order, agreeing that Fox's and Marshall's claims were barred by the Permanent Injunction and automatic stay because they were duplicative and derivative of the Trustee's Claims.  *Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012).

The Second Circuit affirmed the decision of the SDNY District Court enjoining the Fox/Marshall Class Actions, also finding that Appellants' complaints "impermissibly attempt to 'plead around' the [New York] Bankruptcy Court's injunction barring all claims 'derivative' of those asserted by the Trustee." *Marshall v. Picard*, 740 F.3d 81, 84 (2d Cir. 2014).  The Second Circuit's opinion concluded with these words:

> Accordingly, the judgment of the [SDNY] District Court is **AFFIRMED** without prejudice to Fox and Marshall seeking leave to amend their complaints in the United States District Court for the Southern District of Florida.

> Of course, we intimate no view on an appropriate
> disposition of any such motion for leave to amend.

*Id.* at 96.  Contrary to Appellants' assertion, the Second Circuit did not thereby

direct that *only* the Florida Court could decide whether an amended complaint filed

by Fox and Marshall would be barred by the Permanent Injunction and automatic

stay.  That issue was not before the Second Circuit.

On February 5, 2014, the Second Circuit issued a Mandate affirming the

judgment of the SDNY District Court, as required by FRAP 41(b).  (Ex. C.)  The

Mandate is completely silent as to whether Fox and Marshall can seek leave to

amend, or which court is to decide whether an amended complaint would be

"duplicative or derivative" of the Trustee's Claims.  That same day, Appellants

filed a Motion to Reopen in the Florida Court, seeking leave to file the proposed

Second Amended Complaint.  (DE 28.)

On February 18, 2014, the Picower Parties filed an emergency motion in the

Florida Court seeking, among other things, to stay this action pending a ruling by

the New York Bankruptcy Court on a motion by the Trustee (the "Motion to

Stay").  (DE 29-30.)  On February 24, 2014, the Florida Court stayed this action

pending resolution of the Motion to Stay.  (DE 37.)

Also on February 24, 2014, based on Appellants' misreading of the final

paragraph of the Second Circuit's decision (which affirmed the SDNY District

Court's decision affirming the New York Bankruptcy Court), Appellants filed an

Opposition to the Motion to Stay and a Cross-Motion seeking, among other things,

to preliminarily enjoin the Picower Parties "and any persons in active concert or

7

participation with them" (purportedly, the Trustee) from litigating the new Fox/Marshall claims outside of the Florida Court.[4]  (DE 38.)

On March 11, 2014, the Trustee filed the New York Action and the Trustee's Motion in the New York Bankruptcy Court, seeking (i) a determination that this action and a related putative class action (the "Goldman Action") filed by Pamela Goldman and A & G Goldman Partnership (collectively, the "Goldmans") violate the Permanent Injunction and automatic stay; and (ii) a preliminary injunction enjoining Appellants and the Goldmans from proceeding with their respective actions against the Picower Parties.  (Exs. D-F.)  The hearing on the Trustee's Motion is scheduled for May 7, 2014.

On March 12, 2014, Appellants filed a Motion for Limited Relief from Stay and Request for Emergency Hearing on the Motion to Stay and Cross-Motion for Injunctive Relief, seeking an emergency hearing.  (DE 52.)  On March 17, 2014, the Florida Court denied that motion, stating that it "declines to conduct an emergency hearing on the question of whether to enjoin the New York action. Rather, this Court defers to the Bankruptcy Court for the Southern District of New York for a ruling on [the Trustee's] motion to enjoin the instant action."  (DE 58 (the "Order").)  The Order did not deny Appellants' Cross-Motion for preliminary injunction, but only ruled on Appellants' request for an emergency hearing.

On March 24, 2014, Appellants filed a Notice of Appeal from the Order.

---

[4] While seeking to have the Florida Court enjoin the Trustee, Appellants did not name the Trustee as a defendant, nor did they properly serve him with their Cross-Motion seeking to enjoin him.

8

(DE 59.)  On April 9, 2014, more than three weeks after the Order was entered,

Appellants filed in this Court the Motion *sub judice*, seeking to enjoin the Picower

Parties and the Trustee "from litigating the merits of Appellants' proposed second

amended complaint outside the Florida Court, pending resolution of this appeal."

(Mot. at 18.)[5]

## ARGUMENT

Appellants' Motion for an injunction pending appeal should be denied.  To

obtain the "extraordinary remedy" of an injunction pending appeal, Appellants

must show:

> (1) a substantial likelihood that they will prevail on the
> merits of the appeal; (2) a substantial risk of irreparable
> injury to the intervenors unless the injunction is granted;
> (3) no substantial harm to other interested persons; and
> (4) no harm to the public interest.

*Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000).  Here, Appellants

cannot satisfy any of these requirements.

## I.    Appellants Do Not Have a Likelihood of Success on the Merits

Appellants do not have a likelihood of success on the merits of their appeal

of the Order because (i) the Order is a non-appealable interlocutory order; (ii) the

Second Circuit did not "mandate" that *only* the Florida Court can decide if the

proposed Second Amended Complaint would violate the Permanent Injunction and

---

[5] Notably, neither the Picower Parties (who are not parties in the New York
Action), nor the Trustee, seek to litigate the "merits" of the proposed Second
Amended Complaint in the New York Action.  Rather, the Trustee is seeking to
have the New York Bankruptcy Court determine the *threshold* question of whether
the proposed Second Amended Complaint is "duplicative or derivative" of the
Trustee's Claims, in violation of the Permanent Injunction and automatic stay.

automatic stay; and (iii) the Florida Court did not abuse its discretion in deciding to defer to the New York Bankruptcy Court for a ruling on the Trustee's Motion.

### A.    The Order Is Not an Appealable Interlocutory Order

Appellants do not have a likelihood of success on the merits of their appeal because the Order is not appealable, as set forth in Appellees' Motion to Dismiss the Appeal, being filed herewith.  The Order simply stated that the Florida Court was deciding Appellants' motion "requesting that [the Florida Court] lift the stay entered February 21, 2014 for the purpose of scheduling an emergency hearing." (DE 58.)  The Florida Court further ruled that it "declines to conduct an emergency hearing on the question of whether to enjoin the New York action."  (*Id.*)  Thus, the Florida Court did not deny Appellants' motion for preliminary injunction, as Appellants incorrectly claim; it only denied their motion for an emergency hearing.

Under 28 U.S.C. § 1292(a)(1), an order denying a request for an emergency hearing is not appealable.  Even if the Order had the practical effect of denying Appellants' motion for preliminary injunction, interlocutory orders that have the practical effect of denying injunctions are appealable *only if* the appellants can show "serious, perhaps irreparable, consequence."  *Admin. Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*, 854 F.2d 1272, 1278 (11th Cir. 1988).  Here, Appellants have made no showing of "serious" or "irreparable" consequence.  In fact, they have failed to show that they would suffer irreparable harm at all if the

Trustee's Motion is not enjoined.  Accordingly, the Order is not an appealable interlocutory order.[6]

### B. The Second Circuit Did Not "Mandate" That the Florida Court Is the Only Forum That Could Decide Whether Appellants' Amended Claims Are Barred By the Permanent Injunction

Appellants' *sole* basis for seeking an injunction is the false premise that the Second Circuit "mandated" that *only* the Florida Court could decide if their proposed amended claims violate the Permanent Injunction and automatic stay. That is a gross mischaracterization of the Second Circuit's opinion.  The Second Circuit did not "mandate," "order," "direct" or otherwise make a ruling as to which court – the Florida Court or the New York Bankruptcy Court – should decide the applicability of the Permanent Injunction and automatic stay to Appellants' amended claims.  Rather, the Second Circuit *affirmed* the SDNY District Court's judgment voiding the Fox/Marshall Class Actions without prejudice to Fox and Marshall seeking to amend their claims, then added – **in *dicta*** – that:

> There is conceivably some particularized conspiracy claim appellants could assert that would not be derivative of those asserted by the Trustee.  That question, however, is not properly before us, and is a question in the first

---

[6] Appellants' alternative request that this Court consider their appeal as a mandamus petition fares no better.  "The petitioner seeking the writ carries the burden of showing that its right to the issuance of the writ is clear and indisputable," and "[a] writ will not issue merely because [the petitioner] shows evidence that, on appeal, would warrant reversal of the district court." *Carpenter v. Mohawk Indus., Inc.*, 541 F.3d 1048, 1055 (11th Cir. 2008).  The writ of mandamus places a higher burden on the petitioner than does a direct appeal; the petitioner must show a "clear usurpation of power or abuse of discretion." *Id.* at 1054-55.  As set forth in Part I.C, *infra*, Appellants cannot meet this extraordinarily high burden and, accordingly, no writ of mandamus should issue.

11

> instance for the United States District Court for the
> Southern District of Florida.

*Marshall v. Picard*, 740 F.3d 81, 94 (2d Cir. 2014).

The Second Circuit plainly did not "mandate" that the question must be decided *only* by the Florida Court. Such a ruling would have divested the New York Bankruptcy Court of its jurisdiction to decide that threshold question itself, based on its own interpretation of its own Permanent Injunction and automatic stay. If, as Appellants insist, the Second Circuit had taken the highly unusual step of stripping the New York Bankruptcy Court of jurisdiction to decide whether Appellants' amended claims are duplicative or derivative of the Trustee's Claims, and thus barred, it would have done so in a clear and purposeful way, after careful discussion and analysis of all relevant facts and law. Yet there is no discussion and analysis of the issue anywhere in the Second Circuit's decision.

Indeed, the issue of whether the Florida Court or the New York Bankruptcy Court (or both) can decide whether Appellants' amended claims are derivative of the Trustee's Claims was never briefed by either party, nor decided by the Second Circuit. Accordingly, the Second Circuit's *dicta* that the question is "in the first instance for the [Florida Court]" is not controlling, as the Florida Court properly recognized. *See United States v. N.Y. Tel. Co.*, 434 U.S. 159, 184 (1997) (where an "issue was not briefed," a court's statement on that issue was "in dicta" and "has absolutely no force"); *United States v. Hogan*, 986 F.2d 1364, 1372 (11th Cir. 1993) (where an "issue simply was not presented," a court is "not bound by [the case's] dictum").

12

Necessarily, if the Second Circuit had concluded that *only* the Florida Court could decide whether Appellants' claims were "duplicative or derivative" of the Trustee's Claims, it would have *reversed* the SDNY District Court's affirmance of the New York Bankruptcy Court order, and directed that the Florida Court decide the issue.  Instead, the Second Circuit *affirmed* the New York District Court's affirmance of the New York Bankruptcy Court's finding that the Fox/Marshall Class Actions were impermissibly derivative of the Trustee's Claims.  There is no plausible reason the Second Circuit thereafter would deprive the New York Bankruptcy Court of jurisdiction to decide whether Appellants' new claims are similarly are derivative, and certainly Appellants have offered no reason.  Rather, Appellants seize on the Second Circuit's *dicta* to litigate in their preferred forum.

Compounding the weakness of their position, Appellants also mischaracterize the Second Circuit's *dicta* as a purported "mandate" (Mot. at 8-11), in order to invoke the "mandate rule," pursuant to which a district court "may not alter, amend, or examine the [Court of Appeals'] mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate," *Transamerica Leasing, Inc. v. Inst. of London Underwriters,* 430 F.3d 1326, 1331 (11th Cir. 2005); *see also* Fed. R. App. Pro. 41(b).  Yet the "mandate rule" does not apply here because the Second Circuit's actual Mandate, which was issued on February 5, 2014, is *completely silent* on which court – the Florida Court or New York Bankruptcy Court – can or should decide whether Appellants' amended claims would violate the Permanent Injunction and automatic stay.  (*See* Ex. C.)

13

As an alternative to obtaining an injunction pursuant to the traditional standard for injunctions under FRAP 8(a), Appellants also argue that they are entitled to an injunction pursuant to the All Writs Act "to protect the integrity of the Second Circuit mandate." (Mot. at 14.)  Appellants' argument is based on the faulty premise that the Second Circuit "mandated" that *only* the Florida Court can decide whether the proposed Second Amended Complaint violates the Permanent Injunction and automatic stay.  Because the Second Circuit did not issue such a "mandate," Appellants are not entitled to an injunction under the All Writs Act.[7]

### C.    The Florida Court Did Not Abuse Its Discretion in Deferring to the New York Bankruptcy Court

Appellants' next makeweight argument is that the Florida Court's Order is not subject to an abuse of discretion standard because "this case involves a clear-cut issue of law." (Mot. at 9.)  Assuming *arguendo* that the Order – which merely denied Appellants' motion to lift the stay for an emergency hearing (*i.e.*, a non-appealable interlocutory order) – could be construed as an appealable denial of

---

[7] Appellants also argue, in conclusory fashion, that "the judicially created 'first-filed' rule" is another basis for injunctive relief.  To the contrary, the so-called "first-filed" rule has no application here because the Trustee filed his action *in response* to Appellants' Motion to Reopen, which seeks leave to file their Second Amended Complaint.  There is no scenario in which the Trustee could have filed his action to enjoin Appellants' proposed Second Amended Complaint *before* Appellants filed their Motion to Reopen attaching the proposed Second Amended Complaint.  This is not a situation in which there was a "race to the courthouse" between Appellants and the Trustee requiring deference to the first to file.

In any event, the "first-filed" action here was actually the Trustee's action against the Picower Parties in the New York Bankruptcy Court, first filed in May 2009.  Thereafter, counsel for Fox and Marshall filed the Fox/Marshall Class Actions in the Florida Court, parroting the Trustee's Claims.

14

their motion for a preliminary injunction (which it is not), findings of fact made to deny a motion for a preliminary injunction are reviewed under an abuse of discretion standard. *See Forsyth County v. U.S. Army Corps of Engineers*, 633 F.3d 1032, 1039 (11th Cir. 2011) ("We review the decision to deny a preliminary injunction for abuse of discretion. In so doing, we review the findings of fact of the district court for clear error and legal conclusions *de novo*." (internal quotation marks and citations omitted)).

Here, the Order did not make *any* legal conclusions for this Court to review *de novo*. (*See* DE 58.) Moreover, even assuming that the Order had the practical effect of denying Appellants' motion for preliminary injunction, the Florida Court implicitly made the factual findings that Appellants would not suffer irreparable harm and/or that the balance of the equities do not weigh in their favor, which are reviewed for "clear error" under an abuse of discretion standard. Appellants have made no attempt to show that the Florida Court committed "clear error." Nor could they, because, as discussed below, Appellants will not suffer any irreparable harm in the absence of an injunction.

## II. Appellants Cannot Enjoin the Non-Party Trustee

In addition to not having a likelihood of success on the merits, an injunction pending appeal should not be granted because Appellants cannot enjoin the Trustee, a non-party to this action. In seeking to have this Court enjoin the Trustee, Appellants repeatedly mischaracterize the Picower Parties and the Trustee as being agents of, or in concert with, each other. (*See, e.g.*, Mot. at 8 ("Appellees then colluded with the Trustee" and acted "[i]n furtherance of their plan"); *id.* at 7

15

(mischaracterizing the court-approved Settlement Agreement as a "co-operation agreement"); *id.* at 8 ("Appellees, and their agent, the Trustee"); *id.* at 11 ("Appellees, who are in privity with the Trustee"); *id.* ("the Trustee, on behalf of Appellees" brought the New York Action).)

Appellants once again see conspiracies where none exist. Previously, in objecting to the $7.2 billion settlement with the Picower Parties, Fox and Marshall "argued, *absurdly*, that the Picower estate, the Trustee, and the Government somehow conspired to recover more than they were entitled to 'in order [to] divest the Picower Defendants of the assets that should be available to satisfy Fox's valid and independent claims' in the Florida action." (Ex. G at 21 (emphasis added).) The New York Bankruptcy Court correctly rejected their argument as "not credible." (Ex. B at 6.) Appellants' arguments are no more credible now.[8]

## III.    Appellants Will Not Suffer Irreparable Injury Absent an Injunction

Appellants argue that they will suffer "*per se* irreparable harm" if they are forced "to litigate the sufficiency of the proposed second amended complaint in New York after the Second Circuit has ruled that the issue is to be resolved in the

---

[8] Notably, the Trustee's Motion is brought on behalf of the BLMIS estate, not the Picower Parties, to vindicate the BLMIS estate's interests. *See Fox v. Picard*, 848 F. Supp. 2d 469, 490-91 (S.D.N.Y. 2012) ("Allowing the [Fox/Marshall Class Actions] to go forward would carry real risks to the [BLMIS] estate, implicating . . . the possibility of future settlements, and providing an avenue for BLMIS customers who are displeased with the Net Equity Decision to undermine that decision by directly pursuing claims that are wholly derivative of claims already brought by the Trustee."). Appellants' attempts to block the Trustee's Motion by moving against the Picower Parties and not the Trustee is both improper and further evidence of forum shopping.

Southern District of Florida." (Mot. at 16.)  As discussed above, the Second
Circuit did not rule in Appellants' favor, on any issue.  Moreover, Appellants
cannot be "irreparably harmed" by the lack of enforcement of a ruling that the
Second Circuit never made.

Appellants also argue that "proceeding in New York will result in another
multi-year delay before Appellants can even begin to litigate the merits of their
claims in Florida." (Mot. at 16.)  That argument is based on rank speculation.
Litigating in Florida could take just as long, or longer, than litigating in New York.
There is simply no way to know whether the issue would be resolved faster in New
York or Florida.  Purported delay that may or may not occur is not a basis for
finding irreparable harm.

Finally, Appellants argue that "re-litigating" an issue constitutes irreparable
harm.  (*See* Mot. at 16.)  Yet Appellants do not seek to re-litigate any issue; they
seek to file a *newly amended* complaint that has not been tested by either the New
York Bankruptcy Court or the Florida Court.  As Appellants cannot re-litigate a
new complaint, they cannot suffer irreparable harm thereby.

## IV.    The Picower Parties and Trustee Will Be Prejudiced by an Injunction

Appellants argue that the Trustee and the Picower Parties will not suffer any
prejudice if an injunction is granted because they "can – and should – litigate the
viability of the second amended complaint in the Florida Court, as the Second
Circuit ordered." (Mot. 17.)  That unsupported claim ignores that (i) the Trustee
already has briefed the viability of Appellants' proposed Second Amended
Complaint in the New York Bankruptcy Court; (ii) the Second Circuit did *not*

17

"order" that the issue must be decided by the Florida Court; and (iii) the New York

Bankruptcy Court is more familiar with issues related to the Permanent Injunction

and the automatic stay in the context of the BLMIS Liquidation.

     If the Motion is granted, the Trustee would be forced to engage in

unnecessary, duplicative, piecemeal litigation, in both New York and Florida,

because the New York Bankruptcy Court still will decide the portion of the

Trustee's Motion concerning whether the Goldmans' proposed complaint (which is

substantively similar to Appellants' proposed Second Amended Complaint)

violates the Permanent Injunction and automatic stay.  Such piecemeal litigation is

the antithesis of judicial efficiency and would be a waste of the Trustee's

resources, which should instead go to victims of Madoff's scheme.  Similarly, the

Picower Parties would be prejudiced if they had to expend resources to brief the

issue of whether Appellants' amended claims violate the Permanent Injunction and

automatic stay, when that issue has already been briefed by the Trustee before the

New York Bankruptcy Court.  The Picower Parties should not be forced to

undergo such an unnecessary and wasteful duplication of effort.

     Given that Appellants will not suffer any irreparable harm in the absence of

an injunction, and there would be a waste of judicial and party resources from

duplicative litigation and the possibility of inconsistent results if an injunction is

granted, the balance of the equities weighs against issuing an injunction.

## V.    An Injunction Would Harm the Public Interest

     The injunction sought by Appellants would harm the public interest.

Congress enacted the Bankruptcy Code to provide for centralized administration of

18

bankruptcies in the bankruptcy courts. Thus, there is a strong public interest in not interfering with a bankruptcy court's administration of a bankruptcy estate. That public interest is heightened in connection with the New York Bankruptcy Court's administration of the epic BLMIS Liquidation, which has been going on for more than five years and involves more than a thousand cases. Enjoining the court-appointed Trustee from seeking a determination from the New York Bankruptcy Court to interpret its own Permanent Injunction and the automatic stay in the BLMIS Liquidation would be contrary to the public interest.

Moreover, an injunction would lead to piecemeal litigation and could lead to inconsistent results because the viability of the Appellants' proposed Second Amended Complaint and the Goldmans' proposed complaint would be adjudicated in parallel by the Florida Court and the New York Bankruptcy Court, respectively. The most judicially economical approach would be to allow the New York Bankruptcy Court to decide the applicability of its own Permanent Injunction and automatic stay to both the Appellants' and the Goldmans' proposed complaints, which is the *same exact* procedure that was followed to test the viability of their prior complaints. Enjoining that procedure would be in direct conflict with the Second Circuit's decision that the New York Bankruptcy Court correctly enjoined those initial complaints as being impermissibly derivative of the Trustee's Claims.

An injunction also would reward Appellants for blatant forum shopping. Appellants disingenuously accuse Appellees and the Trustee of "engaging in the worst kind of forum shopping" (Mot. at 18), but it is the *Appellants* who chose to bring their putative class actions in the Florida Court in order to "impermissibly

19

attempt to *plead around* the Bankruptcy Court's injunction barring all claims 'derivative' of those asserted by the Trustee." *Marshall v. Picard*, 740 F.3d 81, 84 (2d Cir. 2014) (emphasis added).

Now that Appellants have *lost* before the (i) New York Bankruptcy Court, (ii) SDNY District Court, and (iii) Second Circuit, Appellants understandably want another court – the Florida Court – to test the viability of their newly amended complaint. Looking for a better result in another court is not a proper basis for an injunction, nor would such an injunction serve the public interest. *See Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1298 (11th Cir. 2009) (recognizing "great[] policy interest in preventing forum shopping"); *M & N Plastics, Inc. v. Sebelius*, No. 13-819, 2013 WL 5912523, at *5 (D.D.C. Nov. 5, 2013) ("public interest factors" include "the law's aversion to forum shopping").

## CONCLUSION

For all of the foregoing reasons, Appellants' Expedited Motion for Injunction Pending Appeal should be denied in its entirety.

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: s/Brian W. Toth
      Brian W. Toth

701 Brickell Avenue
Suite 3300
Miami, Florida 33131
(305) 789-7678

*Attorneys for Appellees*

20

Of counsel:

SCHULTE ROTH & ZABEL LLP
William D. Zabel
Marcy Ressler Harris
Michael Kwon
Jennifer M. Opheim

## CERTIFICATE OF SERVICE

I certify that a copy of this document was served by CM/ECF or U.S. mail

on April 16, 2014, on all counsel or parties of record on the Service List below.


s/Brian W. Toth

Helen Davis Chaitman
Becker & Poliakoff, LLP
45 Broadway
New York, New York 10006
Telephone: (212) 599-3322
Facsimile:  (212) 557-0295
Email:  HChaitman@bplegal.com

James W. Beasley Jr.
Robert J. Hauser
Joseph George Galardi
Andrew Steven Kwan
Beasley Hauser Kramer & Giraldi, P.A.
505 S. Flagler Drive, Suite 500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939
Email: Beasley@beasleylaw.net
Email: hauser@beasleylaw.net
Email: Galardi@beasleylaw.net
Email: kwan@beasleylaw.net

Lesley Guy Blackner
Blackner Stone & Associates
340 Royal Poinciana Way, St 317-377
Palm Beach, FL 33480
Phone: 561-659-5754
Fax: 561-659-3184
Email: LBlackner@aol.com

David Sheehan
Counsel for Trustee Irving Picard
BakerHostetler
45 Rockefeller Plaza, #10
New York, NY 10111
Phone (212) 589-4616
Email: dsheehan@bakerlaw.com

The Honorable Kenneth L. Ryskamp
United States District Court for the Southern District of Florida
Paul G. Rogers Federal Building
701 Clematis Street, Room 416
West Palm Beach, FL 33401