| | |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Email: dsheehan@bakerlaw.com<br>Jorian Rose<br>Email: jrose@bakerlaw.com<br>Seanna R. Brown<br>Email: sbrown@bakerlaw.com<br>Bik Cheema<br>Email: bcheema@bakerlaw.com | Hearing Date:   July 17 2014<br>Hearing Time:  10:00 AM (EST)<br>Objection Deadline: May 30, 2014 |

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM TO AFFIRM TRUSTEE'S**
**DETERMINATIONS DENYING CLAIMS OF CLAIMANTS WHO INVESTED IN THE**
**DAPREX, FELSEN, STERLING, OR ORTHOPAEDIC ERISA PLANS**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL HISTORY AND PRIOR CUSTOMER STATUS PROCEEDINGS................. 2

    A.    The Commencement of The SIPA Proceeding ....................................................... 2

    B.    The Feeder Fund Opinions...................................................................................... 4

    C.    The ERISA Decision............................................................................................... 6

    D.    The BLMIS Accounts ............................................................................................. 8

    E.    The Claims .............................................................................................................. 9

RELIEF REQUESTED................................................................................................................. 9

ARGUMENT .............................................................................................................................. 10

CONCLUSION........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
 216 B.R. 719 (Bankr. S.D.N.Y. 1998) ........................................................................... 10

*In re Aozora Bank Ltd.*,
 480 B.R. 117 (S.D.N.Y. 2012) ........................................................................................ 5

*In re Beacon Assocs. Litig.*,
 745 F. Supp. 2d 386 (S.D.N.Y. 2010) ............................................................................ 2

*In re Bernard L. Madoff Inv. Sec. LLC*,
 654 F.3d 229, 231 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov.
 08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), and *cert. den.*, 2012 WL
 396489 and 2012 WL 425188 (Jun. 25, 2012) .................................................. 2, 5, 10, 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
 708 F.3d 422 (2d Cir. 2013) .................................................................................. 5, 10, 11, 13

*In re Klein, Maus & Shire, Inc.*,
 301 B.R. 408 (Bankr. S.D.N.Y. 2003) .......................................................................... 11

*In re Lehman Brothers Inc.*,
 492 B.R. 379 (Bankr. S.D. N.Y. 2013), *aff'd sub nom. Carval Investors UK
 Ltd. v Giddens (In re Lehman Brothers Inc.)*, 506 B.R. 346 (S.D.N.Y. 2014) .............. 10

*Sec. & Exch. Comm'n v. Madoff*,
 No. 1:08-cv-10791-LLS (S.D.N.Y. filed Dec. 11, 2008) ................................................ 3

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd.
 v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. In
 re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013) ............................ 4, 6

*Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*,
 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012) ....................... *passim*

*Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*,
 533 F.2d 1314 (2d Cir. 1976) ..................................................................................... 11, 12

*Stafford v. Giddens* (*In re New Times Sec. Servs., Inc.*),
 463 F.3d 125 (2d Cir. 2006) ........................................................................................ 5, 10

**Statutes**

15 U.S.C. § 78eee(a)(4) .......................................................................................................... 3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

15 U.S.C. § 78eee(b)(3) ...........................................................................................................3

15 U.S.C. § 78fff-1(a) .............................................................................................................3

15 U.S.C. § 78fff-2(b).............................................................................................................11

15 U.S.C. § 78fff-3(a) .............................................................................................................3

15 U.S.C. § 78fff-3(a)(5) ........................................................................................................8

15 U.S.C. § 78*lll*(2)........................................................................................................3, 7, 10

15 U.S.C. § 78*lll*(4)................................................................................................................3

15 U.S.C. § 78*lll*(11)..............................................................................................................3

29 U.S.C. § 1002......................................................................................................................7

Employee Retirement Income Security Act of 1974 ............................................................ *passim*

**Rules**

29 C.F.R. § 2510.3–101 ..........................................................................................................7

Fed. R. Civ. P. 36(a)(3)...........................................................................................................12

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*,[1] and the estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), respectfully submits Trustee's Motion And Memorandum To Affirm Trustee's Determination Denying Claims Of Claimants (the "Claimants") Who Invested In The Daprex, Felsen, Sterling, Or Orthopaedic ERISA Plans (the "Motion"). The Motion is based upon the law set forth below, including several prior decisions in this proceeding denying customer status to claimants who lacked accounts but invested in BLMIS account holders, as well as the facts set forth in the declaration of David Sheehan ("Sheehan Decl.") and the declaration of Vineet Sehgal ("Sehgal Decl."), filed herewith.

## PRELIMINARY STATEMENT

The Claimants are individuals who were beneficiaries of, and participants in, one of four benefit plans (the "ERISA Plans"), regulated under the Employee Retirement Income Security Act of 1974 ("ERISA"). The 308 claims filed by Claimants are specifically identified in Exhibits 2 and 3 to the Sehgal Decl.[2] The ERISA Plans, consisting of Daprex Profit Sharing and 401K Plan ("Daprex"), Felsen Moscoe Company Profit Sharing TST DTD 5/8/76 ("Felsen"), Sterling Equities Employees Retirement Plan ("Sterling"), and Orthopaedic Specialty GRP PC

---

[1] The Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* For convenience, subsequent references to sections of the act shall be denoted simply as " SIPA § __."

[2] The Claimants shown on Exhibit 2 include all persons who filed claims arising from their status as participants in or beneficiaries of any of the four ERISA Plans and who have outstanding objections to the determination of those claims. Certain of the participants and beneficiaries of the Daprex ERISA Plan have already had their objections to their claims determinations expunged. Their counsel included them as parties to the objections despite the fact that those participants had never filed claims. The Trustee brought two motions, Trustee's First Omnibus Motion Seeking to Expunge Objections by Parties That Did Not File Claims (ECF No. 4711) and Trustee's Second Omnibus Motion Seeking to Expunge Objections by Parties That Did Not File Claims (ECF No. 4712), to clear these and other non-filers from the docket by expunging their objections to determination. This Court granted that relief. (ECF Nos. 4778, 4780). Those participants are not included in the instant Motion.

Defined Contribution Pension Plan ("Orthopaedic"), each had accounts with BLMIS.[3] The Claimants did not.

The District Court has already ruled that ERISA does not provide BLMIS claimants with "customer" status under SIPA. This motion asks the Court to overrule the remaining arguments of the Claimants in seeking customer status, and affirm the Trustee's determinations denying their claims.

## PROCEDURAL HISTORY AND PRIOR CUSTOMER STATUS PROCEEDINGS

### A.  The Commencement of The SIPA Proceeding

The basic facts of the Madoff fraud are widely known and have been recounted in numerous decisions. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), and *cert. den.*, 2012 WL 396489 and 2012 WL 425188 (Jun. 25, 2012); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393-94 (S.D.N.Y. 2010). Madoff purported to be trading on behalf of his investment advisory clients using split-strike conversion and other strategies. But Madoff did not engage in trading activity on behalf of his clients. "Instead, Madoff generated false paper account statements and trading records; if a client asked to withdraw her money, Madoff would pay her with funds invested by other clients." *Beacon Assocs. Litig.*, 745 F. Supp. 2d at 393-94.

On December 11, 2008, federal agents arrested Madoff, revealing the existence of the largest Ponzi scheme in history. With customer property entrusted to BLMIS dispersed through the Ponzi scheme, BLMIS was insolvent and unable to meet its obligations to its customers as

---

[3] The ERISA Plans' BLMIS accounts are set out in Sehgal Decl. Ex. 1. This motion does not include any claimant who invested in an ERISA qualified plan where such plan is a defendant in an avoidance action by the Trustee.

2

those obligations came due. On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *Sec. & Exch. Comm'n v. Madoff*, No. 1:08-cv-10791-LLS (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible for, among other things, recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a).

On December 23, 2008, this Court entered a claims procedures order. (ECF No. 12). Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, and the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id*.

3

**B.      The Feeder Fund Opinions**

The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, ECF No. 2416), filed on June 11, 2010 (the "Initial Feeder Fund Motion"). The Initial Feeder Fund Motion addressed the objections to claims determinations of claimants who invested in 16 specified feeder funds that, in turn, had accounts with BLMIS. Prior to the hearing, the Court removed from the scope of the Initial Feeder Fund Motion the question of whether ERISA affects "customer" status under SIPA. On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's denial of the claims. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 292 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013).

This Court found that, in light of the plain language of SIPA and relevant case law, the objecting claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA. *Id.* at 290. This Court found that the objecting claimants invested in, not through, those feeder funds, and had no individual accounts at BLMIS. *Id.* at 297. It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased interests in the feeder funds. *Id.* at 299. This Court held that absent a direct relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits. *Id.* at 302.

4

Certain claimants appealed this decision to the District Court. The District Court affirmed, holding that the claimants did not qualify as customers under the plain language of SIPA. *In re Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012).

On further appeal, the Second Circuit also affirmed, confirming that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 426 (2d Cir. 2013) (citing *Stafford v. Giddens* (*In re New Times Sec. Servs., Inc.*), 463 F.3d 125, 127 (2d Cir. 2006)). The Second Circuit held that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 426 (2d Cir. 2013) (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 236 (2d Cir. 2011)). The Second Circuit found that the claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the feeder funds, not to the individual claimants, and the individual claimants therefore failed to establish that *they* had entrusted cash or securities to BLMIS. *In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 427 (2d Cir. 2013.) It also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including the fact that they did not exert any control over the accounts at issue and the fact that they were not reflected in BLMIS records. *Id.* at 426-27.

On June 27, 2013, the Trustee filed the Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names (together with supporting documents, ECF Nos. 5396, 5397, 5398, 5399, 5438, 5439.) On August 21, 2013, the Court issued the Second Feeder Fund Decision (ECF 5450). That decision reaffirmed that "the burden is on the claimant to

5

establish he is a 'customer' entitled to SIPA protection, and such a showing is not easily met," *id.* at 4 (quoting 454 BR at 294). Also, the Court determined that the claimants "failed to [meet their burden] because they lack any indicia of a 'customer' relationship with BLMIS." In particular, "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS." *Id.* at p. 4. The Second Feeder Fund Decision was not appealed.

C.  **The ERISA Decision**

Prior to the hearing on the Initial Feeder Fund Motion, the Bankruptcy Court carved out the question of whether ERISA affects the determination of the "customer" issue under SIPA. On November 14, 2011, the Trustee filed a Motion for an Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections (the "ERISA Motion") to address arguments that were raised by claimants without BLMIS accounts that sought to use ERISA as a basis for determining their customer status under SIPA. (ECF No. 4521). The Order signed on November 8, 2011 Granting Motion for an Order to Schedule Hearing on "Customer" Issue as it relates to ERISA (the "ERISA Scheduling Order", ECF No. 4507)provided, in relevant part, that "[t]he sole purpose of the . . .Motion shall be to resolve the claims objections that raised ERISA as a basis for determining their customer status," *id.* at 2, that at the initial hearing "[t]he Court will only consider the Trustee's construction of the term 'customer' as it relates to ERISA", *id.* at 4, that "[a]ny other issues raised…will be resolved in subsequently scheduled hearings", *id.* at 4, and that "the Court's Order on the . . . Motion will be

6

binding on" the claimants regardless of whether they choose to participate.[4] *Id.* at 2. The briefing was open to any "claimants or parties-in-interest" who sought to be heard on ERISA issues related to their claims. *Id*. at 5. Upon motion by the claimants, the District Court withdrew the reference on the ERISA Motion. *Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012) (the "ERISA Decision").

When it considered the merits of the ERISA Motion, the District Court held that ERISA does not provide claimants who lacked BLMIS accounts "customer" status under SIPA. It found that claimants who invested in ERISA plans "did not own any cash deposited with BLMIS because the assets of an ERISA-regulated plan are held and owned by the plan's trustees, not by its participants." *Id.* at *5. The District Court also rejected arguments that ERISA fiduciary responsibilities could suffice to create a "customer" relationship: "Without an account in his or her name with BLMIS or title to any assets with BLMIS, a claimant cannot achieve customer status merely by virtue of having a fiduciary relationship with the debtor." *Id*. at *12.

The District Court also held that neither 29 C.F.R. § 2510.3–101 (the "Plan Assets Regulation"), nor its statutory counterpart, 29 U.S.C. § 1002, affects the actual ownership of ERISA-regulated plan investments. *Id.* at *7-10. It found that, because the claimants "failed to hold title to any assets deposited with BLMIS", *id.* at *14, they could not have deposited "cash with the debtor for the purpose of purchasing securities," *id.* (quoting 15 U.S.C. § 78*lll*(2)), and they also did not qualify for customer status within the meaning of the "customer" definition because they did not have a BLMIS account. *Id.* at *4. Further, they did not qualify for the

---

[4] The Sterling and Orthopaedic Claimants participated in the litigation before the District Court; the Felsen and Daprex Claimants chose not to do so.

exceptions to the customer definition that are set out in SIPA § 78fff-3(a)(5) for customers of banks, brokers or dealers that have accounts. *Id.* at *15. No appeal was taken from this decision.

The District Court did not completely foreclose future consideration by the Bankruptcy Court of non-ERISA arguments, if any remained. It stated: "[f]actual or legal arguments unrelated to issues arising under ERISA will not be addressed, and are left to be resolved by the Bankruptcy Court" *id.* at *3, and that "[f]ollowing the disposition of this motion, the Bankruptcy Court may address the impact, if any, . . . on their 'customer' status," of certain submitted supplemental materials which the District Court held were unrelated to ERISA. *Id.* Nonetheless, the District Court also concluded that the "awareness of or contact with the claimants on the part of BLMIS" argued by certain claimants was not equivalent to the kind of "repeated business dealings" associated with customer status. *Id.* at *13.

### D.    The BLMIS Accounts

To open an account with BLMIS, BLMIS customers, including the ERISA Plans, generally executed the standard account agreements, namely, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options. (Sehgal Decl. ¶¶ 16, 20, 24, 28, Exs. 4, 8, 12, 16). The Claimants did not. (Sehgal Decl. ¶¶ 18, 22, 26, 30, Exs. 6, 10, 14, 18). The BLMIS accounts were held by the ERISA Plans, not by the Claimants, and BLMIS sent account statements and related documents to the ERISA Plans, not the Claimants. (Sehgal Decl. ¶¶ 14, 15, 17, 21, 25, 29, Exs. 5, 9, 13, 17; Sheehan Decl. ¶¶ 10-12, 14, 15, Exs 1-3, 5, 6).

Because the ERISA Plans opened and maintained accounts at BLMIS, and made deposits into and withdrawals from those accounts, the books and records of BLMIS reflect the amounts received from and paid to the ERISA Plans for each of the accounts at issue. (Sehgal Decl. ¶¶

8

15, 32). The books and records of BLMIS do not, in contrast, reflect individual deposits or withdrawals by the Claimants in regard to the amounts they are claiming as to the ERISA Plan accounts. (Sehgal Decl. ¶¶ 13, 32.) The amounts the Claimants allege are owed to them by their ERISA Plans are not discernible from the books and records of BLMIS. (Sehgal Decl. ¶¶ 13, 32).

**E.     The Claims**

Each of the ERISA Plans filed customer claims with the Trustee for their accounts. (Sehgal Decl. ¶ 6, 19, 23, 27, 31, Exs. 7, 11, 15, 19). The Claimants contend that they are also entitled to be treated as customers under SIPA. The claims filed by the Claimants are duplicative claims for the same accounts claimed by the ERISA Plans. (Sehgal Decl. ¶¶ 6, 8).

Since receiving the objections to the claims determinations, the Trustee served discovery on each of the Claimants seeking to determine their basis for claiming customer status, and inquiring in part into deposits, payments, communications, account openings, and their relationship with the ERISA Plan account holder. Most of the Claimants simply failed to respond, including all those associated with the Felsen, Sterling, and Orthpaedic accounts. The Claimants that did respond provided no persuasive evidence of their entitlement to customer status under SIPA. (Sheehan Decl. ¶¶ 5, 10-15, Exs. 1-6).

## RELIEF REQUESTED

The Motion respectfully seeks the entry of an order substantially in the form of attached Exhibit A, affirming the Trustee's denial of the claims listed on Exhibit 2 annexed to the supporting Declaration of Vineet Sehgal, expunging such claims, and overruling, on the grounds

9

that Claimants are not "customers" as such term is used at SIPA § 78*lll*(2), all remaining objections filed by the Claimants as to the claims.[5]

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2). Thus, to be a "customer" an investor must have entrusted cash or securities with the debtor for the purpose of trading or investing in securities. *See In re Bernard L. Madoff Inv. Sec. LLC,* 708 F.3d at 426 ("We have identified "the critical aspect of the 'customer' definition" to be "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities," *citing In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 236 (2d Cir.2011); *accord Stafford v. Giddens* (*In re New Times Sec. Servs., Inc.*), 463 F.3d 125, 128 (2d Cir. 2006); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724–25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market."); *In re Lehman Brothers Inc.*, 492 B.R. 379, 381 (Bankr. S.D. N.Y. 2013), *aff'd sub nom. Carval Investors UK Ltd. v Giddens (In re Lehman Brothers Inc.)*, 506 B.R. 346 (S.D.N.Y. 2014) (the fact that claimants "never entrusted any property with . . . their broker dealer" is "fatal to establishing customer status." … "Without the existence of identified property in the hands of [the broker], no customer claim can be made against the estate to recover such property.").

---

[5] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

The burden is on a claimant to establish that he is a "customer" entitled to SIPA protection. *See* SIPA § 78fff-2(b) (customer claims must be "ascertainable from the books and records of the debtor or . . . otherwise established to the satisfaction of the trustee."); *see, e.g.*, *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003). As courts have narrowly construed the definition of "customer," that burden of proof "is not easily met." *Id.* Based on the discovery reviewed and Second Circuit precedent, the Claimants are not SIPA customers.

The Claimants, as investors in the Account Holder ERISA Plans, do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Securities Investor Protection Corporation v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976) ("*Morgan Kennedy*"), and reaffirmed in *In re Bernard L. Madoff Inv. Sec. LLC,* 708 F.3d at 427, and in the ERISA Decision, 2012 WL 3042986, at *32. In *Morgan Kennedy*, the Second Circuit held that the beneficiaries of a profit sharing plan were not "customers" under SIPA because: (1) the securities account with the debtor was in the name of the plan, not the beneficiaries; (2) title to the plan trust assets was held by the plan, not the beneficiaries; (3) the plan had the exclusive power to entrust the assets to the debtor and direct activities in the account; (4) the beneficiaries and their respective interests in the plan were unknown to the broker and of concern solely to the plan; and (5) the beneficiaries had no legal capacity in which they could deal with the broker. *See Morgan Kennedy,* 533 F.3d at 1318.

The Claimants are no different. Discovery has confirmed that unlike the ERISA Plans that had BLMIS accounts, the Claimants did not deposit money with BLMIS. They did not open accounts with BLMIS. They did not enter into agreements with BLMIS. They did not direct BLMIS concerning the acquisition or disposition of investments for themselves. (Sehgal Decl.

11

¶¶ 13, Sheehan Decl. ¶¶ 10-15, Exs 1-3, 5, 6). It was the ERISA Plans, not the Claimants, that entrusted assets to BLMIS for the purpose of purchasing securities, and that had the right to direct investments with and withdrawals of those assets. BLMIS's records lacked information about the various beneficiaries and their respective interests in the ERISA Plans. It kept records solely as to its account holders, the ERISA Plans themselves, and it was to the ERISA Plans that it sent account statements, and in the name of the ERISA Plans that it sent withdrawal checks and tax statements (Sehgal Decl. ¶¶ 13, 15-18, 20-22, 24-26, 28-30, 32; Exs. 4-6, 8-10, 12-14, 16-18; Sheehan Decl. Exs 1-3, 5, 6). These facts are expressly admitted by those Claimants who failed to respond to the Trustee's requests for admission, Fed. R. Civ. P. 36(a)(3), and none of the other Claimants provided persuasive evidence in this regard. Sheehan Decl., Exs 1-3, 5, 6).

In connection with briefing the ERISA Motion, certain of the Claimants raised factual issues in an attempt to satisfy the *Morgan Kennedy* standard such as affirming that they personally dealt with BLMIS in their capacities as Benefit Plan trustees, *see, e.g.,* ERISA Decision, 2012 WL 3042986, at *3, or that they contacted BLMIS in connection with deciding whether to roll over distributions from a plan. The District Court found that these sorts of connections insufficient for customer status. *See* ERISA Decision, 2012 WL 3042986, at *13.

The ERISA Decision has finally determined that "the assets of an ERISA-regulated plan are held and owned by the plan's trustees, not by its participants" and that both "[b]inding precedent and ERISA itself dictate this result." ERISA Decision, 2012 WL 3042986, at *5. It found that this is true even if the participants contribute money to the plan, are vested, and are permitted to choose among investment alternatives. *See* ERISA Decision, 2012 WL 3042986, at **5-6, 13. The ERISA Decision has therefore conclusively determined that the Claimants, as opposed to the ERISA Plans, did not own the money entrusted to BLMIS.

12

In affirming this Court's decision granting the Original Feeder Fund Motion, the Second Circuit found lack of ownership to be critical. *In re Bernard L. Madoff Inv. Securities LLC,* 708 F.3d at 426. Noting that the account holders, not the individual claimants, owned the money invested in the BLMIS accounts, the Court held that "regardless of their intent, appellants never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the 'customer' definition.'" *Id.* (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).

Even if the Claimants could make a showing of some contacts with BLMIS, it would not be enough: the ERISA Decision found that not even a fiduciary relationship with a broker can suffice to turn someone into a SIPA customer if that person lacks actual ownership of the property that was delivered to the broker and also does not have an account in her name with that broker. 2012 WL 3042986, at *12. The Claimants had no BLMIS accounts, and had already been determined not to own the assets in ERISA-regulated plans. *Id.* at *5-6. The Claimants are accordingly not entitled to customer status.

## **CONCLUSION**

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the Claimants, overrule their objections, expunge the claims, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
April 30, 2014

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Bik Cheema
Email: bcheema@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

Brian A. Bash
Email: bbash@bakerlaw.com
Wendy J. Gibson
Email: wgibson@bakerlaw.com
**Baker & Hostetler LLP**
1900 E. 9th St Suite 3200
Cleveland, Ohio  44114
Tel: (216) 621-0200
Fax: (216) 696-0740

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and Bernard L. Madoff*