**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

In re:

BERNARD L. MADOFF,

Debtor.

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04941 (SMB) |
| Plaintiff, | |
| v. | |
| MICHAEL MOST, | |
| Defendant. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04947 (SMB) |
| Plaintiff, | |
| v. | |
| MARJORIE MOST, | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. i

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................ 3

STANDARD OF REVIEW ............................................................................................................ 6

ARGUMENT ................................................................................................................................. 7

I.   THE SUBPOENAED DOCUMENTS FALL SQUARELY WITHIN THE SCOPE OF
     DISCOVERY ORDERED BY THE COURT FOR ALL AVOIDANCE ACTIONS ............. 8

II.  GRANTING THE MOTIONS TO QUASH WILL PREJUDICE THE TRUSTEE
     BECAUSE RELEVANT FINANCIAL RECORDS MAY BE DESTROYED ..................... 12

III. THE DEFENDANTS' MOTIONS MISINTERPRET THE APPLICABLE LAW
     GOVERNING SUBSEQUENT TRANSFEREES ................................................................ 13

IV.  THE SUBPOENAS ARE SUFFICIENTLY NARROW AND ROUTINE,
     AND DO NOT IMPLICATE ANY CONSTITUTIONAL PRIVACY ISSUES
     AND/OR BURDEN THE DEFENDANTS ........................................................................... 14

CONCLUSION ............................................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*In re Bayer Corp. Combination Aspirin Products Mktg. & Sales
   Practices Litig.*,
   09-MD-2023 BMC, 2012 WL 4747441 (E.D.N.Y. Oct. 4, 2012) ....................16

*In re Bernard L. Madoff Inv. Sec., LLC*,
   424 B.R. 122 (Bankr. S.D.N.Y. 2010) *aff'd,* 654 F.3d 229 (2d Cir.
   2011) ("*Net Equity Decision*")............................................................14

*Donell v. Kowell*,
   533 F.3d 762 (9th Cir. 2008) ......................................................................10, 14

*Envirosource, Inc. v. Horsehead Res. Dev. Co., Inc.*,
   95CIV.5106(AGS), 1996 WL 399823 (S.D.N.Y. July 17, 1996) ......................16

*In re Global Crossing Ltd.*,
   385 B.R. 52 (Bankr. S.D.N.Y. 2008)...................................................................11

*Johnson v. Nyack Hosp.*,
   169 F.R.D. 550 (S.D.N.Y. 1996) ..........................................................................7

*Koch v. Greenberg*,
   07 Civ. 9600 (BSJ)(DF), 2009 WL 2143634 (S.D.N.Y. July 14,
   2009) .....................................................................................................................7

*Laurido v. Simon*,
   489 F. Supp. 1169 (S.D.N.Y. 1980) ..................................................................10

*In re Lev*,
   Nos. 05-35847, 06-2945, 2008 WL 207523 (D.N.J. Jan. 23, 2008) ...................8

*Libaire v. Kaplan*,
   760 F. Supp. 2d 288 (E.D.N.Y. 2011) ..........................................................7, 15

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*,
   964 F.2d 106 (2d Cir. 1992) ................................................................................6

*In re McVane*,
   44 F.3d 1127 (2d Cir. 1995) ..............................................................................17

*Picard v. Greiff (In re Bernard L. Madoff Inv. Sec., LLC)*,
   476 B.R. 715 (S.D.N.Y. 2012) .................................................................9, 10, 14

*Picard v. Katz*,
   No. 11 Civ. 3605 (JSR), 2012 WL 691551 (S.D.N.Y. March 5,
   2012) ...........................................................................................................14

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   12 MISC. 115 JSR, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).............13, 14

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re
   Madoff Sec.)*,
   499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*") .....................9, 14

*In re Shades of Beauty, Inc.*,
   56 B.R. 946 (Bankr. E.D.N.Y. 1986) ................................................................7

*Stark v. Photo Researchers, Inc.*,
   77 F.R.D. 18 (S.D.N.Y. 1977) ..........................................................................6

*In re Subpoena Duces Tecum Served on Bell Commc'ns Research,
   Inc.*,
   MA-85, 1997 WL 10919 (S.D.N.Y. Jan. 13, 1997) ..........................................16

*Matter of Synfax Mfg., Inc.*,
   126 B.R. 30 (Bankr. D.N.J. 1990) ...................................................................10

*In re Teligent, Inc.*,
   01-12974 (SMB), 2006 WL 1030417 (Bankr. S.D.N.Y. Apr. 13,
   2006) ..............................................................................................................6

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................10

**Statutes**

11 U.S.C. § 550(a) ...............................................................................................13, 14

11 U.S.C. § 550(b) ...............................................................................................13, 14

12 U.S.C. § 1829b(g) .................................................................................................12

**Rules**

Federal Rule of Civil Procedure 45 ............................................................5, 6, 7, 14

Federal Bankruptcy Rule of Procedure 7026............................................................2

Federal Bankruptcy Rule of Procedure 9016............................................................5

Federal Rule of Civil Procedure 26 ......................................................2, 6, 7, 9, 16

Bankr. S.D.N.Y. Local Rule 9077-1 ........................................................................5

Bankr. S.D.N.Y. Local Rule 7007-1(b) ...................................................................6

**Other Authorities**

17 C.F.R. § 240.17a-4 ............................................................................................12

31 C.F.R. § 103.38 .................................................................................................12

### TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' APPLICATIONS BY WAY OF ORDER TO SHOW CAUSE SEEKING ENTRY OF AN ORDER QUASHING THE SUBPOENAS ISSUED BY PLAINTIFF AND GRANTING A PROTECTIVE ORDER

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff ("Madoff"), under the Securities Investor Protection Act ("SIPA") 15 U.S.C. §§ 78aaa *et seq.*, by and through his undersigned counsel, respectfully submits this Consolidated Memorandum of Law in Opposition ("Opposition") to the separate Applications By Way of Order to Show Cause Seeking Entry of an Order Quashing the Subpoenas Issued by Plaintiff and Granting a Protective Order (collectively, the "Motions to Quash") by: (1) Defendant Marjorie Most, Adv. Pro. No. 10-04947; and (2) Defendant Michael Most, Adv. Pro. No. 10-04941 (collectively, the "Defendants").[1]

### PRELIMINARY STATEMENT

The Motions to Quash are premature, procedurally improper and nothing more than an attempt by the Defendants to stay discovery in the adversary proceedings in contravention of the Court's directives. The subpoenas at issue here request basic financial records and statements that constitute core evidence directly relevant to the parties' claims and defenses in the

---

[1] On May 6, 2014, the Defendants filed in each of the adversary proceedings (Adv. Pro. No. 10-04941 and Adv. Pro. No. 10-04947): (1) Application by way of Order to Show Cause Seeking Entry of an Order Quashing Subpoenas Issued By Plaintiff and Granting a Protective Order (ECF Nos. 34) (the "Applications"); (2) Memorandum of Law in Support of Order to Show Cause Seeking Entry of an Order Quashing Subpoenas Issued By Plaintiff and Granting a Protective Order (ECF Nos. 38) ("Defs. MOL"); (3) Certification of Good Faith Effort to Attempt to Confer Before Seeking an Order Quashing the Subpoenas Issued By Plaintiff and Granting a Protective Order and annexed exhibits (ECF Nos. 36 and 37) ("Defs. Certifications"); (4) Declaration In Support of Order to Show Cause Seeking Entry of an Order Quashing Subpoenas Issued By Plaintiff and Granting a Protective Order and annexed exhibits (ECF Nos. 35); and (5) Declaration of Good and Sufficient Reasons In Support of Order to Show Cause Seeking Entry of an Order Quashing the Subpoenas Issued By Plaintiff and Granting a Protective Order (ECF Nos. 37 and 36). The exhibits annexed to Defendants' submissions are referred to herein as "Defs. Ex. __."

litigations, on multiple grounds, and squarely within the gamut of what is discoverable pursuant to Federal Rule of Civil Procedure 26, made applicable by Federal Bankruptcy Rule of Procedure 7026.

First, the subpoenaed financial records are expressly contemplated by the Court-ordered scope of discovery provisions of the Avoidance Procedures entered by the Court in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, Adv. Pro. No. 08-01789 (SMB) on November 10, 2010 [ECF No. 3141] (the "Avoidance Procedures Order"), which is binding on all parties. Pursuant to the Avoidance Procedures Order, the Trustee is presumptively entitled to discovery on transfers, the Defendants' defenses concerning antecedent debt, and the identities of potential subsequent transferees. Moreover, the Defendants are plainly mistaken in their reading of recent District Court decisions, which they erroneously claim prevents the Trustee from pursuing potential subsequent transfer claims.

Second, the subpoenaed financial records are further directly relevant to virtually all of the Defendants' affirmative defenses, all of which directly implicate their finances and their use and dispersement of BLMIS transfers.

Finally, the Defendants have failed to demonstrate that the Trustee's subpoenas are overbroad, burdensome, or violative of any right to privacy. The subpoenas are narrowly tailored requests for account statements, account-related documentation and communications, and checks and wires. While the Trustee is aware of the sensitive nature of such financial statements, there is a protective order in place that obviates any privacy concern regarding the subpoenaed financial records. Therefore, no harm will be done to the Defendants in connection with their production in the adversary proceeding.

Accordingly and as further discussed below, the Trustee respectfully requests that the

Court deny the Motions to Quash without qualification.

## BACKGROUND

On December 2, 2010, the Trustee brought separate adversary proceedings against

Defendant Michael Most (Adv. Pro. No. 10-04941) and Defendant Marjorie Most (Adv. Pro. No.

10-04947), seeking to recover fictitious profits transferred to the Defendants from BLMIS so that

this customer property can be equitably distributed among the holders of allowed claims in this

SIPA proceeding. *See* ¶ 2 of the Complaints against the Defendants, Adv. Pro. No. 10-04941,

ECF No. 1 and Adv. Pro. No. 10-04947, ECF No. 1 (the "Complaints"). On December 12, 2011,

the Defendants filed Answers to the Complaints, denying all but two allegations (which merely

pertain to the Defendants' residence, the names in which the Defendants' BLMIS accounts were

held, and the Defendants' SIPA claims) and each asserting over twenty affirmative defenses. *See*

Adv. Pro. No. 10-04941, ECF No. 12 and Adv. Pro. No. 10-04947, ECF No. 11.

On January 3, 2012, the Trustee filed Amended Complaints against the Defendants. *See*

Adv. Pro. No. 10-04941, ECF No. 13 and Adv. Pro. No. 10-04947, ECF No. 12 (the "Amended

Complaints").

For transfers received between December 11, 2002 and December 11, 2008 (the "Six

Year Transfers"), the Trustee's investigation has revealed that Defendant Michael Most received

$3,290,000 in fictitious profits from the Ponzi scheme, meaning that Defendant withdrew more

than he had invested in his BLMIS account. *See* ¶ 2 of the Amended Complaint against

Defendant Michael Most, Adv. Pro. No. 10-04941, ECF No. 13. For the transfers received

between December 11, 2006 and December 11, 2008 (the "Two Year Transfers"), the Trustee's

investigation has revealed that Defendant Michael Most received $3,080,000 in fictitious profits.

*Id*. at ¶ 42; *see also* Exhibit B to the Amended Complaint against Defendant Michael Most.

3

The Trustee's investigation has revealed that Defendant Marjorie Most received $2,185,000 in Six Year Transfers.  *See* ¶ 2 of the Amended Complaint against Defendant Marjorie Most, Adv. Pro. No. 10-04947, ECF No. 12.  The Trustee's investigation has revealed that Defendant Marjorie Most received $1,420,000 in in Two Year Transfers.  *Id*. at ¶ 42; *see also* Exhibit B to the Amended Complaint against Defendant Marjorie Most.

On January 17, 2012, the Defendants Answered the Amended Complaints, again denying all but one allegation (which merely pertains to the Defendants' residence and the names in which the Defendants' BLMIS accounts were held) and each asserting twenty-eight affirmative defenses,[2] including affirmative defenses that directly relate to issues concerning the Defendants' financial and medical condition and their ability to pay (Aff. Def. No. 7), subsequent transfers (Aff. Def. No. 8), and antecedent debt (Aff. Def. Nos. 7, 20, 26, and 27).  *See* Adv. Pro. No. 10-04941, ECF No. 15 and Adv. Pro. No. 10-04947, ECF No. 14.  On February 21, 2012, Case Management Notices were filed in each of the adversary proceedings, and discovery commenced in the actions.  *See* Adv. Pro. No. 10-04941, ECF No. 17 and Adv. Pro. No. 10-04947, ECF No. 16.

The Defendants moved to withdraw the reference on several grounds, and the Trustee incorporates by reference Paragraph 3 of the Motions to Quash.

During the course of discovery, the Defendants admitted to receiving the Two Year Transfers "on or about the dates and in the amounts set forth in Exhibit B" of the Amended Complaints.  *See* ¶¶ 5 of the Applications.  However, the Defendants failed to produce bank records that would reflect the Two Year Transfers; refused to engage in discovery beyond the

---

[2] The Defendants' affirmative defenses to the Trustee's Amended Complaints are virtually identical and are referred to herein as "Aff. Def. No. __."

4

two-year period preceding the filing of the petition (*see* Defs. Exs. J); and refused to admit to the Six Year Transfers (*see* Defs. Exs. J).

As a direct result of the issues raised by the Defendants' affirmative defenses and the Defendants' refusal to provide the relevant discovery, the Trustee served subpoenas (the "Rule 45 Subpoenas") on financial institutions where the Defendants held accounts that received funds from BLMIS, pursuant to Federal Rule of Civil Procedure 45 ("Rule 45"), made applicable by Federal Bankruptcy Rule of Procedure 9016.  *See* Defs. Exs. F, G, H.  The Trustee provided the Defendants with prior notice that the Rule 45 Subpoenas would be served on Friday, May 2, 2014.  *See* Defs. Exs. L.  The Rule 45 Subpoenas set a response date of Friday, May 16, 2014. *Id.*  As such, the parties would have a full two weeks to meet and confer to the extent the Defendants had any concerns or objections to the Rule 45 Subpoenas.

Instead of acting in good faith to meet and confer with counsel for the Trustee as the Defendants contend (*see* Defs. Certifications at ¶¶ 2), the Defendants sent a letter dated May 5, 2014 (the "May 5 Letter"), with an arbitrary and unilaterally set response deadline of the same day.  Counsel for the Trustee initially responded to the May 5 Letter by email on the same day, advising the Defendants that the Trustee would respond the next day.  *See* Defs.  Exs. M.  Rather than waiting less than 24 hours for the Trustee's response and allowing for an opportunity to determine if a resolution could be reached, the Defendants deprived the Trustee of any opportunity to meet and confer whatsoever by immediately filing the Motions to Quash. Therefore, the Defendants acted in bad faith by filing the Motions to Quash.

As an initial matter, the Trustee notes that the Motions to Quash are in violation of Your Honor's Chambers Rules, Local Rule 9077-1, Local Rule 7007-1, and Paragraphs 4.E., 4.O., and 6.A. of the Avoidance Procedures Order.  On these grounds alone, the Motions to Quash should

be denied. *See In re Teligent, Inc.*, 01-12974 (SMB), 2006 WL 1030417, at *6 (Bankr. S.D.N.Y. Apr. 13, 2006) (finding motion "procedurally improper" because "plaintiff did not request a discovery conference as required by the Court's local rules. Bankr. S.D.N.Y.R. 7007-1(b)").

After the Motions to Quash were filed, the Trustee again attempted to confer in good faith with the Defendants to attempt to reach a resolution without unnecessary judicial intervention. *See* Ex. 1 attached hereto. The Defendants ignored the Trustee's good faith request to confer.

On May 7, 2014, the Court entered Orders to Show Cause Why Subpoenas Issued By Plaintiff Should Not Be Quashed and Protective Order Should Not Be Granted, directed the Trustee to file any response to the Motions to Quash on or before May 12, 2014 at 5:00 p.m., and set a conference for May 13, 2014 at 10:00 a.m. (Adv. Pro. No. 10-04941, ECF. No. 39; Adv. Pro. No. 08-01789, ECF No. 6554). The Trustee submits this consolidated Opposition to both of the Motions to Quash, as the arguments raised in each are identical.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 26(b), the "scope of discovery [is] very broad, encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992); s*ee Stark v. Photo Researchers, Inc.*, 77 F.R.D. 18, 20 (S.D.N.Y. 1977) ("[T]he liberal spirit behind the Discovery Rules [supports] full disclosure [to] eliminate surprise and promote settlement."). Pursuant to Rule 45, a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). "Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of

6

demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) (citations omitted).

## **ARGUMENT**

The Trustee is authorized to serve subpoenas under Rule 45 to obtain relevant documents. *See In re Shades of Beauty, Inc.*, 56 B.R. 946, 953 (Bankr. E.D.N.Y. 1986) ("the demand for documentation [from non-parties via subpoena] was properly a duty of the trustee"). Subpoenas issued under Rule 45 are subject to Federal Rule of Civil Procedure 26(b)(1)'s relevance requirement, which provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Koch v. Greenberg*, 07 Civ. 9600 (BSJ)(DF), 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009) (citing Rule 26(b)(1)). Evidence sought in discovery need only be relevant to the subject matter of the action, and not the particular issues presented. *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 556 (S.D.N.Y. 1996).

The Rule 45 subpoenas at issue here are clearly relevant to the Trustee's claims and in accordance with Paragraph 4.G. of the Avoidance Procedures, in that the subpoenas seek records that relate to transfers via checks and wires received by the Defendants from BLMIS, from financial institutions where the Defendants held accounts. Tracing transfers of funds from accounts held by customers of BLMIS to the Defendants is at the core of these adversary proceedings.

Accordingly, for these reasons and the reasons discussed further below, the Defendants' bank and financial institution records are, without question, relevant and discoverable. Additionally, the Defendants have failed to show why the Trustee's subpoenas to financial institutions impose any burden on the Defendants.

I.    **THE SUBPOENAED DOCUMENTS FALL SQUARELY WITHIN THE SCOPE OF DISCOVERY ORDERED BY THE COURT FOR ALL AVOIDANCE ACTIONS**

It is simply incredulous, in the context of a bankruptcy avoidance action, to argue that financial records showing receipt of transfers to the Defendants are beyond the scope of relevant discovery. *In re Lev*, Nos. 05-35847, 06-2945, 2008 WL 207523, at *4 (D.N.J. Jan. 23, 2008) (denying defendant's motion to quash the Trustee's subpoena for bank records upon finding that records were relevant to the Trustee's case and their value "is far greater than the burden imposed upon Wachovia to produce the necessary records."). Indeed, financial records constitute the core evidence behind the allegations in the Trustee's Amended Complaints.

Moreover, the Avoidance Procedures Order sets forth the permissible scope of discovery for this action in Exhibit A, paragraph 4(G). The bank records at issue here are directly relevant to the following issues for which discovery is expressly allowed: (i) transfers of money by and among BLMIS (which clearly relate to affirmative defenses raised with respect to antecedent debt) (subsection (f)); and (ii) the identity of subsequent transferees (subsection (i)). *Id.* The records at issue here are directly contemplated by Paragraph 4(G) of the Avoidance Procedures Order.

First, the subpoenaed financial records beyond the two years preceding the date of the filing of the petition are potentially relevant to any challenges the Defendants assert with respect to antecedent debt issues, and therefore plainly contemplated by Paragraph 4.G of the Avoidance Procedures Order. For example, the Defendants assert numerous affirmative defenses challenging the Trustee's calculation of Defendants' avoidance liability which specifically implicate and place squarely at issue documents beyond the two-year period including *inter alia,* that: (i) each transfer was made on account of antecedent debt (Aff. Def. No. 7); (ii) "that the two-year look back period of section 548 of the Bankruptcy Code applies to

8

both receipts and disbursements and not receipts and disbursements over the course of the

defendant's investment with BLMIS" (Aff. Def. No. 20); (iii) that losses incurred over the life of

the Defendants' IRA accounts should be offset against Defendants' avoidance liability (Aff. Def.

No. 26); and (iv) that Defendant Michael Most made deposits totaling $2,620,000 over the life of

the investment with BLMIS dating back to 1992, Defendant Marjorie Most made deposits

totaling $477,179.27 over the life of the investment with BLMIS dating back to 1994, and such

deposits should be offset against Defendant's avoidance liability (Aff. Def. No. 27).  Under the

applicable rules, the Trustee is plainly entitled to documents he may use to refute such defenses.

*See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter

that is relevant to any party's claim or <u>defense</u>.") (emphasis added).

Moreover, the Defendants' affirmative defenses specifically place documents beyond the

two-year period squarely at issue and make them relevant and discoverable.  The Defendants'

affirmative defenses seek to challenge the Trustee's calculation of Defendants' avoidance

liability by making various antecedent debt arguments over the life of their investment with

BLMIS while maintaining that the Trustee is precluded from testing their theories through a

review of available and relevant financial documents.  Indeed, the District Court recently

confirmed that the Trustee's calculation of defendants' avoidance liability is appropriately

calculated through "a straight netting method—subtracting total withdrawals from total deposits

of principal" over the course of a defendant's investment with BLMIS.  *See, e.g., Sec. Investor*

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 499 B.R. 416, 430 (S.D.N.Y.

2013) ("*Antecedent Debt Decision*"); *Picard v. Greiff (In re Bernard L. Madoff Inv. Sec., LLC)*,

476 B.R. 715, 729 (S.D.N.Y. 2012).[3]  The Defendants should not be permitted to challenge the

---

[3] Similarly, in *Greiff*, the District Court stated:

Trustee's calculation of avoidance liability and seek credits and offsets based on transfers

beyond the two-year period and yet at the same time claim that documents which may illustrate

such transfers are not relevant or discoverable after they themselves placed them squarely at

issue in the case.

Second, this is an avoidance action concerning transfers of estate property from BLMIS

to the Defendants' accounts.  The subpoenaed financial records are directly relevant to the

Trustee's claims regarding transfers, deposits and withdrawals by and among BLMIS and the

Defendants' accounts, and therefore plainly contemplated by Paragraph 4.G.(f) of the Avoidance

Procedures Order.  *See Matter of Synfax Mfg., Inc.*, 126 B.R. 30, 33 (Bankr. D.N.J. 1990)

(trustee has a duty "to investigate transfers of any interest in the property of the debtor").

Without these records, the Trustee is deprived of an opportunity to test factual assertions made

by the Defendants.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 577 (S.D.N.Y. 2008)

(approving class action settlement after "Plaintiffs completed discovery to confirm certain

factual assertions made by Defendants"); *Laurido v. Simon*, 489 F. Supp. 1169, 1176 (S.D.N.Y.

1980) ("[P]laintiff's counsel is entitled to test defendants' assertions through discovery . . .

particularly where, as here, the information is peculiarly within the defendants' possession and

control.").

---

    As for the calculation of how much the Trustee may recover under these claims, the Court adopts
the two-step approach set forth in *Donell v. Kowell*, 533 F.3d 762, 771-72 (9th Cir. 2008).  First,
amounts transferred by Madoff Securities to a given defendant at any time are netted against the
amounts invested by that defendant in Madoff Securities at any time.  Second, if the amount
transferred to the defendant exceeds the amount invested, the Trustee may recover these net profits
from that defendant to the extent that such monies were transferred to that defendant in the two
years prior to Madoff Securities' filing for bankruptcy.

*Greiff*, 476 B.R. at 729.

Finally, the subpoenaed financial records are the primary source of documentation that will enable the Trustee to investigate transfers by the Defendants to subsequent transferees in connection with potential claims against such transferees, where appropriate and permissible by law. *See In re Global Crossing Ltd.*, 385 B.R. 52, 83 n.108 (Bankr. S.D.N.Y. 2008) ("Debtors and/or estate representatives should . . . bring[] suit against the apparent transferees . . . to permit the estate to learn in discovery" the identities of "the ultimate beneficiaries of avoidable transfers."). Paragraph 4.G.(i) of the Avoidance Procedures Order expressly permits the Trustee to conduct discovery regarding the "identities" of potential subsequent transferees, and financial records may in some cases be the only means by which the Trustee is able to identify such parties. Without these records, the estate will be prejudiced if the Trustee is unable to identify such subsequent transferees and the Defendants are unable to satisfy the full amount of the Trustee's claims.

Moreover, the Trustee expressly reserved the right to seek recovery of any potential subsequent transfers. *See* ¶ 43 in each of the respective amended complaints ("The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Obligations and the Transfers and any additional or subsequent transfers and (ii) seek recovery of such additional transfers.").

Indeed, the Trustee has a fiduciary duty to fully investigate and zealously prosecute all available claims on behalf of BLMIS customers, including claims against subsequent transferees. If the Trustee is deprived the opportunity to obtain the requested documents, he may never be able to ascertain whether he has viable claims that he could commence under section 550(f) of the Bankruptcy Code after demonstrating the avoidability of the transfers against the Defendants. The Trustee submits that such an outcome would come at the expense of the BLMIS customers

11

he has been charged to represent and potentially in derogation of his fiduciary duties to bring all viable claims on behalf of the estate.

As such, the Trustee respectfully requests that the Court reject the Defendants' argument that some of the most critical documents in the case – *i.e.*, the Defendants' financial records – are beyond the scope of the Avoidance Procedures Order, which expressly contemplates their production.

## II.    GRANTING THE MOTIONS TO QUASH WILL PREJUDICE THE TRUSTEE BECAUSE RELEVANT FINANCIAL RECORDS MAY BE DESTROYED

Both the Defendants' refusal to allow the Trustee to obtain discovery of the Defendants' financial records and the Defendants' attempt to quash the Subpoenas have prejudiced the Trustee because, as time goes by, these documents are likely to be destroyed.

Relevant documents not subject to retention policies may be destroyed by the financial institutions that otherwise maintain them. American banks and other financial institutions retain customer account records for as few as seven years and as many as ten years. Federal law only requires that they maintain records for five years. 12 U.S.C. § 1829b(g) (authorizing the Treasury Secretary to impose a records retention period of not more than six years); 31 C.F.R. § 103.38 (establishing a five year minimum retention period for banks); 17 C.F.R. § 240.17a-4 (establishing a six year minimum retention period for broker-dealers). As such, financial records existing prior to 2006 are in danger of destruction because they are beyond most preservation requirements applicable to banks.

As discussed above, the subpoenaed financial records are relevant to the claims and defenses in the adversary proceedings with respect to any challenges to the transfers from BLMIS, Defendants' arguments regarding antecedent debt, and the identity of any potential

subsequent transferees. [4]   Accordingly, the Trustee should be permitted to pursue such bank records while discovery is open and active in these proceedings, especially those beyond the two-year window preceding the filing of the petition, in order to preserve relevant evidence.[5]

## III.   THE DEFENDANTS' MOTIONS MISINTERPRET THE APPLICABLE LAW GOVERNING SUBSEQUENT TRANSFEREES

It is simply not the case that subsequent transferee-related discovery by the Trustee is foreclosed due to recent District Court opinions.  The Defendants erroneously argue that, pursuant to Judge Rakoff's recent opinion regarding the "good faith" standard applicable to the Trustee's avoidance actions, the Trustee may not recover from a subsequent transferee under Section 550(b) where the Trustee concedes that the transferee received the transfer in good faith. Defs. Br. 4–5 (citing *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MISC. 115 JSR, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).  Put bluntly, this is a fundamental misunderstanding of the applicable law.

In order to satisfy the requirements of Section 550(b), a subsequent transferee must have received the transfers in good faith—which the Trustee concedes—and the transfer must have been received for value.  Section 550(a) provides that "[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided . . . , the trustee may recover, for the benefit of the

---

[4] The Defendants have also refused to admit and/or stipulate to the six-year transfer claims asserted by the Trustee in each adversary proceeding.  *See* Defs. Exs. J.  However, the Defendants have failed to demonstrate any significant additional burden imposed to the Defendants by providing that requested discovery.  Both a lack of burden on the Defendants and judicial efficiency favor permitting discovery regarding the Trustee's six-year claims pending the Second Circuit's ruling on the appeal of the District Court's 546(e) decision.  The discovery sought with respect to the six-year claims is essentially the same as the discovery sought with respect to two-year claims, with the only difference being the relevant time period.  Conversely, granting the Motions to Quash will effectively preclude discovery relevant to the six-year claims, resulting in unnecessary burden to both the Defendants and third parties if the Trustee prevails in his appeal and is forced to serve additional discovery requests and subpoenas after fact discovery has closed in these adversary proceedings.

[5] To the extent the Court enters an Order Quashing the Subpoenas, the Trustee respectfully requests that the Court issue an order directing the Defendants and the financial institutions to preserve the subpoenaed financial records so that the Trustee is not prejudiced to the extent subsequent transfers are identified and/or the Trustee prevails in his appeal of the District Court's 546(e) decision currently pending before the Second Circuit.

estate, the property transferred" from either (1) an "initial transferee" or (2) "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).   Under section 550(b), "[t]he trustee may not recover" from a subsequent transferee who "takes for **value**, including satisfaction or securing of a present or antecedent debt, in good faith, **and** without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1) (emphasis added).   The requirements under section 550(b) are conjunctive; therefore, the fact that the Trustee concedes good faith does not mean that recovery from a subsequent transferee is somehow precluded.

 Judge Rakoff's opinion, if anything, confirms this legal fact.   2014 WL 1651952, at *5 ("However, under section 550(b), '[t]he trustee may not recover" from a subsequent transferee who "takes **for value**, . . . in good faith, and without knowledge of the voidability of the transfer avoided' (citing 11 U.S.C. § 550(b)(1)) (emphasis added).   Moreover, the Defendants blatantly disregard the long line of decisional authority holding that, in a Ponzi scheme, investors cannot provide value in excess of their principal investment.[6]

Accordingly, Judge Rakoff's recent decision has no applicability here, and is therefore irrelevant to the discoverabilty of the subpoenaed financial records at issue.

## IV.   THE SUBPOENAS ARE SUFFICIENTLY NARROW AND ROUTINE, AND DO NOT IMPLICATE ANY CONSTITUTIONAL PRIVACY ISSUES AND/OR BURDEN THE DEFENDANTS

As discussed above, the Trustee has demonstrated the relevance of the subpoenaed financial records, and the Defendants have failed to sufficiently demonstrate any burden that would result in the banks' compliance with the Rule 45 Subpoenas.

---

[6] *See generally*, *In re Bernard L. Madoff Inv. Sec., LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) *aff'd,* 654 F.3d 229 (2d Cir. 2011) ("*Net Equity Decision*"); *Antecedent Debt Decision*, 499 B.R. 416; *Greiff*, 476 B.R. at 718; *see also Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008) ("Payments up to the amount of the initial investment are considered to be exchanged for 'reasonably equivalent value,' and thus not fraudulent, because they proportionally reduce the investors' rights to restitution."); *Picard v. Katz*, No. 11 Civ. 3605 (JSR), 2012 WL 691551 (S.D.N.Y. March 5, 2012) (granting the Trustee partial summary judgment on the basis that fictitious profits from BLMIS were not taken for "value").

14

The Defendants contend that the subpoenas are overbroad, yet offer no single legitimate basis for that objection. *See Libaire*, 760 F. Supp. 2d at 291 ("Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome") (citations omitted). Each of the subpoenas at issue here contain five identical requests, which include standard requests for monthly statements, account balance information, records of wire transfers and cancelled checks, account opening and closing documents, communications concerning the accounts, and documents concerning any predecessor accounts or inter-account transfers of funds. *See* Defs. Exs. F, G, and H. The subpoenas are therefore not overbroad.[7]

Moreover, the requested documents are also directly relevant to, in addition to the Trustee's claims (all of which were denied by the Defendants in their Answers), several of the Defendants' affirmative defenses that implicate how transfers from BLMIS were used and disbursed by the Defendants. Ironically, these affirmative defenses are the only basis articulated by the Defendants as to why the subpoenas subject the Defendants to annoyance, harassment, oppression and are overbroad. *See* Defs. Br. 7–8. For example, the Defendants each allege that the Trustee is not entitled to "equitable relief" on the basis that the Defendants are retired; that they invested their IRA funds with BLMIS; and that Defendant Michael Most sold his business, has no ability to return to work at that business, and receives no pension. *Id.* All of these

---

[7] The Defendants' reliance on *Libaire* for the proposition that the subpoenas are overbroad is misplaced. *See* Defs. Br. 8. In that case, the Court declined to quash a subpoena for post-judgment discovery that included broad and sweeping requests for documents related to the judgment debtor's financial condition and assets, including bank statements, because the requests were relevant and "sufficiently tailored." 760 F. Supp. at 293.

affirmative defenses directly concern the Defendants' financial condition.[8]  As such, the

subpoenaed financial records are directly relevant, and the Trustee's subpoenas should not be

quashed.

    The Trustee is sensitive to the personal information that may be contained in the limited

discovery sought.  However, the Litigation Protective Order governing the above-referenced

actions, entered in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, Adv. Pro. No. 08-01789

(SMB) on June 6, 2011 [ECF No. 4137] (the "Litigation Protective Order"), is in place to

adequately protect any such confidential information.  *In re Subpoena Duces Tecum Served on*

*Bell Commc'ns Research, Inc.*, MA-85, 1997 WL 10919, at *3 (S.D.N.Y. Jan. 13, 1997)

(additional "strict protective measures" are unnecessary because "customer proprietary

documents would be subject to the Protective Order [which] provides adequate protection");

*Envirosource, Inc. v. Horsehead Res. Dev. Co., Inc.*, 95CIV.5106(AGS) (SEG), 1996 WL

399823, at *2 (S.D.N.Y. July 17, 1996) (redactions unnecessary where protective order already

safeguards confidential information); *In re Bayer Corp. Combination Aspirin Products Mktg. &*

*Sales Practices Litig.*, 09-MD-2023 BMC, 2012 WL 4747441, at *4 (E.D.N.Y. Oct. 4, 2012)

(subpoenaed non-party "failed to demonstrate why the existing protective order . . . does not

adequately address the concerns [it] has about its customers' privacy interests").  The Trustee is

amenable to accept the subpoenaed financial records as designated "Confidential" pursuant to the

Litigation Protective Order, which would obviate any of the Defendants' privacy concerns and

sensitivities.

---

[8] Similarly, both Defendants also allege that they and immediate members of their family suffer from serious
medical conditions, at least one of which required them to withdraw funds from their BLMIS accounts to pay for
medical treatment.  *Id*.  Again, all of these defenses concern the financial condition of the Defendants and directly
implicate potential transfers of BLMIS funds, evidence of which in the form of financial records the Defendants
now argue the Trustee is not entitled to obtain from the Defendants' financial institutions in discovery.  *See* Fed. R.

Finally, the Defendants' reliance on a perceived constitutional right to privacy from *In re McVane*, 44 F.3d 1127 (2d Cir. 1995), is at best misplaced.  *See* Defs. Br. 9.  Neither the facts nor the holding of *McVane* is applicable to this matter.   In *McVane*, the Second Circuit expressed concern over administrative subpoenas that sought the bank records of the family members of the targets, not those of the actual targets, of the FDIC's investigation into corporate wrongdoing.  *Id.* at 1131.  There, the Court quashed the subpoena with respect to the family members who were named in the subpoena "precisely because of their close relationships to the targets," but upheld it with respect to the bank records of the actual targets of the investigation.   *Id.* at 1136, 1138.  In contrast, the subpoenas at issue in the instant matter are seeking bank records only of the <u>parties</u> to the litigation, not of family members, so the Court does not require a heightened level of scrutiny.  There was no finding of any implicated constitutional right to privacy with respect to the defendants in *McVane*, and any such argument is equally inapplicable here.

---

Civ. P. 26(b)(1) ("[P]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense").

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that the Defendants

Motions to Quash be denied in their entirety.


Dated: New York, New York
      May 9, 2014


Of Counsel:

**BAKER & HOSTETLER LLP**
12100 Wilshire Boulevard, 15th Floor
Los Angeles, California 90025-7120
Telephone: 310.820.8800
Facsimile: 310.820.8859
Michael R. Matthias
Email: mmatthias@bakerlaw.com

**BAKER & HOSTETLER LLP**

By: /s/ Nicholas Cremona
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
Nicholas Cremona
Email: ncremona@bakerlaw.com
Edward J. Jacobs
Email: ejacobs@bakerlaw.com
Sarah Jane T.C. Truong
Email: struong@bakerlaw.com

*Attorney for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and Bernard L. Madoff*

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 9th day of

May, 2014 by electronic mail upon the following:

Stim & Warmuth, P.C.
Paula J. Warmuth
2 Eighth Street
Farmingville, New York 11738
Email: pjw@stim-warmuth.com


By: /s/ Sarah Jane T.C. Truong
*An Attorney for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and Bernard L. Madoff*