**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | ) ) ) | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | ) ) ) | SIPA Liquidation |
| v. | ) ) ) | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | ) ) ) ) | |
| Defendant. | ) ) | |
| In re: | ) ) | |
| BERNARD L. MADOFF, | ) ) ) | |
| Debtor. | ) ) | |

## SAMDIA FAMILY, LP'S MEMORANDUM OF LAW IN OPPOSITION TO THE TRUSTEE'S INTER-ACCOUNT TRANSFER MOTION

Joel L. Herz
Law Offices of Joel L. Herz
3573 E. Sunrise Drive, Suite 215
Tucson, AZ  85718
(520)529-8080

Attorneys for Samdia Family, LP

I. **THE TRUSTEE SHOULD BE PROHIBITED FROM MERGING THE MESSINGS' TENANT IN COMMON ACCOUNT WITH THE SAMDIA ACCOUNT**

Pursuant to Irving Pickard, as the Trustee for Bernard L. Madoff Investment Securities, LLC's ("the Trustee") Motion For An Order To Affirm the Trustee's Determinations of Customer Claims Regarding Transfers Between BLMIS Accounts (Inter-Account Transfer Motion") Samdia Family, LP ("Samdia") provides the following information: i) Samdia has an interest in this matter, as it had an account at BLMIS; Account Number 1ZB412; ii) Samdia's customer claim number is 001490; and, iii) the court docket number of Samdia's Objection to the Trustee's Claim Determination is Docket 762, filed on November 13, 2009, and the court docket number of Samdia's Opposition to the Trustee's Time-Based Damages Motion is Docket 5125, filed on December 3, 2012.

## ARGUMENT

## POINT I

**THE TRUSTEE HAS ATTEMPTED TO RE-WRITE CLEAR CONGRESSIONAL LANGUAGE, AND UNEQUIVOCAL SEC REGULATIONS, BY COMBINING THE MESSINGS' TENANT IN COMMON ACCOUNT, WITH THE SAMDIA PARTERSHIP ACCOUNT FOR PURPOSES OF DETERMINING "NET EQUITY" UNDER SIPA.**

As set forth in his October 19, 2009 "Notice of Determination of Claim," in denying the Samdia claim, the Trustee boldly admits that he is treating the Messings' Tenant In Common Account as the same customer as the Samdia Account, even though Congress has told him he cannot do so. More specifically, the Trustee states in his October 19, 2009 Notice of Determination of Claim at page 2, paragraph 2, as follows:

> Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits in Table 1 is less than the purported transfer amount is that

2

> the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

*See* October 19, 2009 Notice of Determination of Claim at page 2, a copy of which is attached hereto as Exhibit A.

Thereafter, when the Court examines the "Table 1" attached to the Trustee October 19, 2009 "Notice of Determination of Claim," the Trustee noted that $3,883,484.20 was transferred from the Messings' Tenant In Common Account into the Samdia Account. However, the Trustee reduced that amount in the Samdia Account by $2,508,484.20 to $1,375,000.00. The Trustee then claimed that because of this $2,508,484.20 reduction, the Samdia Account had a $900,000 net withdrawal. Absent the $2,508,484.20 reduction, the Samdia Account would have a positive balance of $1,608,484.20, and Samdia would clearly be entitled to $500,000 in benefits from the SIPC. The only way the Trustee created the $2,508,484.20 reduction was to treat the Messings' Tenant In Common Account into the Samdia Account as a single "customer." However, as set forth in more detail below, Congress has explicitly said this cannot happen.

In defining the very term at issue "net equity" in the SIPA, Congress specifically discussed how accounts in separate entities such as limited partnerships should be treated, as follows:

> (11) **Net equity**
>
> The term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by—
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus

3

>  (B) any indebtedness of such customer to the debtor on the filing date; plus
>
>  (C) any payment by such customer of such indebtedness to the debtor which is made with the approval of the trustee and within such period as the trustee may determine (but in no event more than sixty days after the publication of notice under section 78fff-2(a) of this title).
>
>  **In determining net equity under this paragraph, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers.**

15 U.S.C. § 78lll(11)(emphasis and underlying added).

The above emphasized and highlighted language cannot be emphasized enough. It demarcates the clear choice of Congress in enacting SIPA that an account held in a family limited partnership, such as Samdia, must be treated as separated customers from a tenant in common account, such as the Messings' Tenant In Common Account. It is beyond axiomatic, and the Supreme Court has repeatedly emphasized, that statutes must be interpreted as written. *See e.g. United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)("[W]here, as here, the statute's language is plain, 'the sole function of the court is to enforce it according to its terms'"), quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Here, Congress has explicitly spoken that separate entity accounts cannot be aggregated for SIPA purposes.

The Trustee has not cited any authority of any kind to aggregate the Samdia Account with the Messings' Tenant In Common Account. What is more, Congress specifically prohibited the SIPC from changing any definitions contained in 15 U.S.C. § 78lll, which section includes the definition of "net equity." As stated in SIPA:

>  SIPC shall have the power. . . to adopt, amend and repeal, by its Board of Directors, such rules as may be necessary or appropriate to carry out the purposes of this chapter, including rules relating to. . . the definition of terms in this chapter, **other than those terms for which a definition is provided in section 78lll of this title. .**

4

15 U.S.C. § 78ccc(b)(4)(A)(emphasis added). Thus, under SIPA, the Trustee and the SIPC had no choice but to analyze the Samdia Account entirely separate from the Messings' Tenant In Common Account because under SIPA "**[i]n determining net equity …, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers.**"

More so, there are specific SEC published regulations that address how accounts held in separate capacities are to be treated under SIPA. More specifically, the SEC has adopted formal regulations as to exactly how accounts held in separate names, such as family limited partnerships shall be treated for purposes of SIPC insurance. Indeed, 17 CFR 300.100 provides as follows:

> TITLE 17 - COMMODITY AND SECURITIES EXCHANGES
>
> CHAPTER II - SECURITIES AND EXCHANGE COMMISSION
>
> PART 300 - RULES OF THE SECURITIES INVESTOR PROTECTION CORPORATION
>
> 300.100-General.
>
> (a) For the purpose of sections 9(a)(2) and 16(12) of the Securities Investor Protection Act (hereinafter referred to as the Act), these rules will be applied in determining what accounts held by a person with a member of SIPC (hereinafter called a member) are to be deemed accounts held in a capacity other than his individual capacity.
>
> **(b) Accounts held by a customer in different capacities, as specified by these rules, shall be deemed to be accounts of separate customers.**
>
> (c) **A person as used in these rules includes,** but is not limited to, an individual, a corporation, **a partnership,** an association, a joint stock company, a trust, an unincorporated organization, or a government or political subdivision thereof.
>
> (d) The burden shall be upon the customer to establish each capacity in which he claims to hold accounts separate from his individual capacity.

17 CFR § 300.100 (emphasis added).

5

Moreover, the SEC regulations found at 17 CFR § 300.103 add the following clear direction regarding partnership accounts such as the Samdia Account:

> TITLE 17 - COMMODITY AND SECURITIES EXCHANGES
>
> CHAPTER II - SECURITIES AND EXCHANGE COMMISSION
>
> PART 300 - RULES OF THE SECURITIES INVESTOR PROTECTION CORPORATION
>
> 300.103 - Accounts held by a corporation, partnership or unincorporated association.
>
> **A** corporation, **partnership** or unincorporated association **holding an account** with a member **shall be deemed to be a separate customer distinct from the person or persons owning such** corporation or comprising such **partnership** or unincorporated association if on the filing date it existed for a purpose other than primarily to obtain or increase protection under the Act.

17 CFR § 300.103 (emphasis added).

What is more, the SEC also developed specific regulations found at 17 CFR § 300.105 for "Joint Accounts" such as the Messings' Tenant In Common Account, as follows:

> TITLE 17 - COMMODITY AND SECURITIES EXCHANGES
>
> CHAPTER II - SECURITIES AND EXCHANGE COMMISSION
>
> PART 300 - RULES OF THE SECURITIES INVESTOR PROTECTION CORPORATION
>
> § 300.105 Joint Accounts.
>
> (a) **A Joint Account shall be deemed to be a ''qualifying Joint Account'' if it is owned jointly**, whether by the owners thereof as joint tenants with the right of survivorship, as tenants by the entirety **or as tenants in common**, or by husband and wife as community property, but only if each co-owner possesses authority to act with respect to the entire account.
>
> (b) Subject to paragraph (c) of this rule, each qualifying Joint Account with a member shall be deemed held by one separate customer of the member.
>
> (c) All qualifying Joint Accounts with a member owned by the same persons shall be deemed held by the same customer so that the maximum protection

6

afforded to such accounts in the aggregate shall be the protection afforded to one separate customer of the member.

(d) A Joint Account with a member which does not meet the requirements of paragraph (a) of this rule shall be deemed to be an individual or qualifying Joint Account of the co-owner or co-owners having the exclusive power to act with respect to it.

17 CFR § 300.105 (emphasis added).

As set forth above, consistent with Congressional language, the SEC has set forth specific regulations indicating that partnership accounts must be treated separately from Messings' Tenant In Common Account.  Here, these regulations are binding on the SIPC and the Trustee. *See In re New Times Securities Services, Inc.*, 371 F.3d 68, 80 (2nd Cir. 2004)("New Times I") ("Ultimately, we agree with the SEC that "[w]hatever SIPC's expertise in overseeing SIPA liquidations, Congress did not intend for the Commission's interpretations of SIPA to be overruled by deference to the entity that was made subject to the Commission's oversight." Prezioso Letter at 8.")  More so, in New York, a tenancy in common is not a partnership. *See* New York Partnership Law Section 11 - Rules For Determining The Existence Of A Partnership, subsection 2 ("2. Joint tenancy, **tenancy in common**, tenancy by the entireties, joint property, common property, or part ownership **does not of itself establish a partnership**, whether such co-owners do or do not share any profits made by the use of the property.")(emphasis added).

Yet, without providing any legal basis for doing so, the Trustee seeks to merge the Messings' Tenant In Common Account with the Samdia Account, and aggregate them together for purposes of determining the Samdia Account's "net equity."  However, the explicit words of Congress, and the very specific regulations of the SEC, specifically prohibit the Trustee from doing so.  For this reason alone, no further delay should be allowed.  Samdia should be paid $500,000 under SIPA, plus interest.

7

## POINT II

### THE TRUSTEE'S ATTEMPT TO MERGE THE MESSING TENANT IN COMMON ACCOUNT WITH THE SAMDIA ACCOUNT IS AN ATTEMPT TO "CLAW BACK" MONEY FROM THE MESSINGS, TRANSFERRED TO SAMDIA, IN NOVEMBER OF 2001, MORE THAN 12 YEARS AGO, IN VIOLATION OF ANY THEORETICAL CLAWBACK PERIOD.

The Trustee's determination, in the case of Samdia, attempts to "claw back" money from Samdia based on contributions made from the Messings' Tenant In Common Account. As discussed above, Congress does not allow the SIPC to combine the two separate accounts for net equity analysis. However, even if the Court rejects the Samdia position as set forth above, it still must rule in favor of Samdia, because the alleged transaction in question occurred in November of 2001 – such that any applicable "clawback" statute of limitations would have long expired.

Here, the SIPC is seeking to "claw back" money that that was transferred from the Messings' Tenant In Common Account to Samdia, claiming that $2,504,902.26 of "fictitious" income was transferred in on **November 26, 2001** from the Messings' Tenant In Common Account to the Samdia Account and has "adjusted" the Samdia claim by $2,504,902.26. *See* attachment to October 19, 2009 Notice of Determination of Claim. To the extent that the Trustee has any "clawback" rights against either Samdia or the Messings – he does not – such rights expired at the latest by November 25, 2007.

The longest possible "clawback" statute of limitations would be no more than 6 years – assuming arguendo that the Messings or Samdia participated in some fraud. Noting the longest possible statute of limitations, the Second Circuit in *McNellis v. Raymond*, 420 F.2d 51 (2nd Cir. 1970) stated as follows:

> We agree with appellant that a six-year limitation period is the appropriate one, and that the actions tied to the usury theory should not have been dismissed. It must be remembered that the trustee in bankruptcy operates in a dual capacity. He is representative of the bankrupt and, as such, is vested with various property

8

> rights and rights of action which the bankrupt may have had. Bankruptcy Act 70(a), 11 U.S.C. 110(a). In that capacity, as successor to the bankrupt's cause of action to recover excess interest payments, the trustee's claim would be time barred. But pursuant to section 70(e) of the Act, 11 U.S.C. 110(e), and in his capacity as representative of the bankrupt's creditors, appellant also seeks to set aside payments on the loans as fraudulent conveyances under N.Y. Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, 271-273, 278 (1945), and not under N.Y. General Obligations Law, McKinney's Consol.Laws, c. 24-A, 5-513. Accordingly, a six-year statute of limitations is the applicable one.

*McNellis v. Raymond*, 420 F.2d at 54. Indeed, there has already been a finding that the longer six-year statute of limitations would not apply, and that at most two years look back could apply. *See Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715 (S.D.N.Y. 2012).

Here, no claim was filed within any six year time period. Simply put, a transfer that took place seven years before the Madoff bankruptcy should not be subject to a clawback, as the Trustee and the SIPC are attempting to do. The funds that were transferred should not be adjusted to $0, but rather receive the same treatment as if they were transferred from any other brokerage account. For this reason also, no further delay should be allowed. Samdia should be paid $500,000 by the SIPC, allowed a claim in the full amount of the Samdia Account November 30, 2008 account statement which showed a balance of $5,153,534.30. At minimum, the amount equal to $2,508,484.20 shall be credited back to Samdia by the Trustee and this Court.

Samdia adopts all other arguments made by all other parties who are opposing the Trustee's Inter-Account Transfer Motion, and incorporates them herein to avoid repetition.

## CONCLUSION

The Trustee's determination is incorrect for the reasons set forth herein. Samdia requests the Court deny the Trustee's Inter-Account Transfer Motion and expeditiously grant immediate relief to Samdia via payment of $500,000 plus interest.[1]

May 13, 2014.

/s/ Joel L. Herz
Joel L. Herz
Law Offices of Joel L. Herz
3573 E. Sunrise Drive, Suite 215
Tucson, AZ 85718
(520)529-8080 – telephone
(520)529-8077 - facsimile
joel@joelherz.com

Arnold Herz
14 Vanderventer Ave., Ste. 255
Port Washington, NY 11050
(516) 767-8790 – telephone
(516) 706-1416 - facsimile
arnie@arnieherz.com

Attorneys for Samdia Family, LP

---

[1] Samdia reserves: 1) the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of any right to object on any other grounds; 2) all rights set forth in Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014; 3) all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

10

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on the 13th day of May, 2014, he caused a true and correct copy of Samdia Family, LP's Memorandum of Law in Opposition to Trustee's Inter-Account Transfer Motion to be filed electronically with the Court and served upon the parties in this action who receive electronic service through CM/ECF, and served by mail upon:

> David J. Sheehan
> Baker & Hostetler, LLP
> 45 Rockefeller Plaza
> New York, NY  10111
> Attorneys for Irving H. Picard, Esquire
> Trustee for the Liquidation of the
> Business of Bernard L. Madoff
> Investment Securities, LLC

> /s/ Joel L. Herz
> Joel L. Herz