1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 14-01840-smb

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6

7  Irving H. Picard, v. Susanne Stone Marshal et al.

8

9          Debtors.

10  - - - - - - - - - - - - - - - - - - - -x

11

12                      United States Bankruptcy Court

13                      One Bowling Green

14                      New York, New York  10004

15

16                      May 1, 2014

17                      10:50 AM

18

19

20

21  B E F O R E:

22  HON. STUART M. BERNSTEIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  F. FERGUSON

1      HEARING re Defendants' Motion for Stay of Proceeding and

2      Extension of Time.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      Transcribed by:  Theresa Pullan

```
 1   A P P E A R A N C E S :

 2

 3   BECKER & POLIAKOFF

 4          Attorneys for Movants

 5          45 Broadway, 8th Floor

 6          New York, NY 10006

 7   BY:   PETER W. SMITH, ESQ.

 8

 9   BAKER HOSTETLER

10          Attorneys for Trustee

11          45 Rockefeller Plaza

12          New York, NY  10111

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S

2            THE COURT:  Madoff.  Who represents the movants?

3            MR. SMITH:  I do, Your Honor.  Peter Smith of Becker

4    and Poliakoff for the movants.  Susan Marshal (phonetic) of

5    Dell Fox, Russell Oasis and Marcy Harris.  And if it's okay

6    with Your Honor, we'll stick with the convention in our papers

7    and refer to them as the Florida plaintiffs.

8            THE COURT:  Okay.

9            MR. SMITH:  So, Your Honor --

10           THE COURT:  Although there are other Florida

11   plaintiffs.

12           MR. SMITH:  There are.  We call them I think the

13   Goldman Florida plaintiffs.  But I don't know if they're even

14   here today.  So, Your Honor, what we've asked for is a stay of

15   the trustee's fairly recently filed action which seeks the

16   enforcement of a permanent injunction and the automatic stay

17   with the connection with the trustee's settlement with the

18   Picards.

19           This is effectively round 2 because when my clients

20   initially filed suit in federal court in Florida against the

21   Picards, the trustee came up here and got an injunction against

22   that suit and that was upheld by the District Court and then

23   eventually the Second Circuit affirmed the injunction, but it

24   did so without prejudice.  And in its decision it specifically

25   said this is without prejudice and the issue of whether the
```

                                                                    Page 5

1    plaintiffs here can put together a complaint that would not

2    violate the permanent injunction is for the Florida court to

3    decide.

4              THE COURT:  In the first instance.

5              MR. SMITH:  In the first instance, thank you.

6              THE COURT:  So you went to the Florida court.  What

7    happened?

8              MR. SMITH:  We do what we're told.

9              THE COURT:  Okay.

10             MR. SMITH:  We go to Florida, and while the motion

11   for leave to amend is pending along with the motion to reopen

12   the case, the Picards come into court and they say hold on

13   Judge Ryskamp you know you should hold off on this because the

14   trustee is about to do something up in New York and here's Mr.

15   Murphy's letter where he says, hey, that complaint down in

16   Florida violates the injunction in the stay so would you please

17   stop everything here.  So the trustee interfered with that

18   proceeding.

19             THE COURT:  Or exercised his rights.

20             MR. SMITH:  Exercised his rights.  But if he

21   exercised his rights, he was in violation of the Court's

22   mandate.  Second Circuit --

23             THE COURT:  How do you figure?

24             MR. SMITH:  Well, the Second Circuit said that the

25   Florida court is to decide.  There's no dispute, it's not

Page 6

1    vague, there's no room for interpretation.

2           THE COURT:  I thought you said you could present it

3    in the first instance in the Florida court.

4           MR. SMITH:  And it is to decide in the first

5    instance.

6           THE COURT:  How can the Second Circuit decide?

7           MR. SMITH:  It can't, but it can tell the parties

8    what they ought to do, and the exact language is to decide in

9    the first instance.

10          THE COURT:  So you make this argument to the District

11   Court Judge in Florida and what happens?

12          MR. SMITH:  We didn't make that argument.

13          THE COURT:  You didn't?

14          MR. SMITH:  no, the Court granted the Picards

15   injunction.

16          THE COURT:  I thought --

17          MR. SMITH:  And he deferred.

18          THE COURT:  I thought I saw papers submitted to the

19   Judge on these various motions in Florida which you argued that

20   the mandate required the Florida Judge to decide the issue.

21          MR. SMITH:  Well we said, what we actually did was we

22   made a cross motion to enjoin the plaintiff for having the case

23   litigated any place but there.

24          THE COURT:  And that was essentially, at least the

25   issue of the injunction was denied, the Court abstained

1  essentially.

2          MR. SMITH:  Correct.  And he deferred, he said he

3  would defer to the action after the trustee filed here --

4          THE COURT:  Right.

5          MR. SMITH:  -- he said he would defer it to this

6  Court on that motion or the action that he filed.  And we've

7  appealed that decision to the Eleventh Circuit.  And what we're

8  asking is for this Court to stay its hand until the Eleventh

9  Circuit rules on that application.  There's no uncertainty

10  about what the Second Circuit wanted.  It is not dicta.

11  There's nothing in, it's a 28 page decision and there's nothing

12  in that decision that is contrary to or inconsistent with the

13  Court saying go to Florida and have them deal with this.  It

14  could have easily said put together a proposed complaint and

15  show it to the Bankruptcy Court, I can remand to them.

16          THE COURT:  You know, the Bankruptcy Court isn't a

17  gatekeeper when you have these kind of injunctions.  Usually

18  somebody reacts to something, it's often a sale order.  For

19  instance, in Chrysler I get a lot of "referrals" from other

20  federal courts to interpret the sale order, it's very common.

21  So that you present, the issue is presented to the District

22  Court Florida in the first place, and it abstained in favor of

23  this Court to interpret the scope of the injunction.  How is

24  that inconsistent with the mandate?

25          MR. SMITH:  Well, I'm not sure if there was a, in

Page 8

1    those cases you're talking about that the Appellate Court has

2    spoken to where the issue should be decided.

3            THE COURT:  Let me ask you something.  Let me ask you

4    a question.  Based on your interpretation of the mandate --

5            MR. SMITH:  Yes.

6            THE COURT:  -- if the Eleventh Circuit doesn't

7    entertain the appeal because it's interlocutory or affirms what

8    Judge Ryskamp did, where are we, where does the issue get

9    decided?

10            MR. SMITH:  If we lose in the Eleventh Circuit?

11            THE COURT:  Yeah.

12            MR. SMITH:  Then I suppose this case will proceed.

13            THE COURT:  How can it if the Second Circuit's

14    mandate is that the Florida court should consider.

15            MR. SMITH:  Well in that instance the Second Circuit

16    would have, it was presented and they decided, they decided not

17    to do anything.

18            THE COURT:  Okay.  But that's what happened in

19    District Court?  It was presented in the District Court and the

20    District Court decided not to abstain.

21            MR. SMITH:  I would suggest that they didn't decide

22    on the merits.

23            THE COURT:  They certainly didn't decide on the

24    merits.  I agree with you on that.

25            MR. SMITH:  And what we're asking for simply is to

Page 9

1    rather than talk hypothetically about what might happen and

2    what some order might say, why don't we just stick with what

3    has happened which is the Second Circuit said let Florida

4    decide.  And we've made a motion not to decide whether that's,

5    you know, frankly, there's plenty of ways Your Honor could

6    grant our motion without having to decide what the mandate was.

7    Your Honor could simply look at the standard factors that Your

8    Honor has held in the case of Hagersten Fiber (phonetic) that

9    are appropriate to grant a stay, to promote judicial economy,

10   to avoid confusion and to avoid possible inconsistent results.

11        THE COURT:  How are you irreparably harmed if I

12   decide the matter?

13        MR. SMITH:  There will be potentially very

14   inconsistent decisions, we'll be harmed by having to litigate

15   here and there.  On the contrary, the trustee, first of all the

16   trustee does not dispute any of those factors and if you want

17   to talk about harm, the trustee is not harmed in any way, not a

18   single way if Your Honor says I'm not going to do anything

19   here, I'm going to stay this until the issue is decided in

20   Florida.  Because after all, if the Florida court ever gets to

21   the merits and it says so sorry, I've read the Second Circuit

22   decision and this complaint you put together, it's just as bad

23   as the first one, well then we don't get to file anything.  And

24   everything that we will do here in the interim such as go have

25   an argument next week on the motion to enforce and then

Page 10

```
1    potentially an appeal for that, that will all be a waste of

2    time.

3           If this Court issues the stay for just as long as it

4    takes for the Florida court to decide whether our complaint

5    meets the test or not that the Second Circuit laid down, then

6    nothing will happen that will violate the permanent injunction

7    nor anything happen that could possibly interfere with the

8    administration of the estate or the automatic stay.  It's

9    simply -- but if you say I'm denying your motion, Smith, we're

10   going to proceed here, think about what could happen.  Someone

11   is going to be disappointed with however you rule next week on

12   their motion.

13          THE COURT:  That happens every day.

14          MR. SMITH:  Right.  And someone is going to appeal,

15   right?  And so we're going to be in front of --

16          THE COURT:  That happens every day also.

17          MR. SMITH:  We'll be in the District Court, and

18   before long we'll be back in front of the Second Circuit.  And

19   I imagine the Second Circuit -- and all the while things will

20   rage on in Florida.  And imagine the disappointment of the

21   Second Circuit when we come back to them and, why are you here.

22   Well, we went to Florida just like you said and Mr. Picard, he

23   didn't listen to you, instead he interfered with what was going

24   on down here, and he comes up here and he files a motion before

25   we had a chance to get a decision from the Florida court.
```

1           THE COURT:  But that's --

2           MR. SMITH:  So we're here because --

3           THE COURT:  But that, his interpretation of the

4    decision was that this Court should decide it.

5           MR. SMITH:  Okay.  Well I wonder is it possible --

6           THE COURT:  Who decides that?

7           MR. SMITH:  Well the Second Circuit will decide if

8    they meant what they said when they wrote it.

9           THE COURT:  No, I'm saying why can't I decide that

10   since the issue is presented to me now.

11          MR. SMITH:  I suppose you could decide it, but that

12   doesn't take it away from the Florida court.

13          THE COURT:  No.  What the Florida courts do, take it

14   away from me.

15          MR. SMITH:  Well, then we're just going to go like

16   this.  We're going to -- something is going to happen next week

17   on their motion to enforce, something is going to happen with

18   our appeal, and these two cases will go like this and

19   eventually I suppose we'll be in front of the Second Circuit

20   and they're going to be, they'll be scratching their heads, how

21   did this happen.

22          THE COURT:  Maybe you'll get an Eleventh Circuit

23   Judge sitting by designation.

24          MR. SMITH:  Well I don't know if that's going to

25   happen.  But as I was saying, Your Honor, there's factors, you

1    have discretion to stay things, and you've articulated what

2    those factors are in the case recently.  I would add to that

3    list, it's appropriate to issue a stay where to do otherwise

4    might violate the Second Circuit's mandate.  But you know what,

5    if you don't want to decide that, and they haven't argued that

6    those three things are present here, and they haven't

7    articulated any harm -- but I would just add this -- if you

8    don't want to decide whether it's the mandate or not, it's

9    certainly not dicta, I mean, it's about this case.

10            THE COURT:  Well, it wasn't an issue before the

11   Second Circuit.

12            MR. SMITH:  Correct.  Well the Court has to say what

13   happens next.  Right?  Setting a case for remand is not an

14   issue.

15            THE COURT:  They didn't have to say that for the

16   decision.

17            MR. SMITH:  They had -- but they did.

18            THE COURT:  Okay, but it's not, in other words, it's

19   not part of [indiscernible].

20            MR. SMITH:  Okay.  I'll grant you that they didn't

21   have to say and go to Florida, they didn't have to say that.

22            THE COURT:  Right.

23            MR. SMITH:  But they did.  And they also said without

24   prejudice.  Where else were we supposed to go to file an

25   amended complaint?  There's only one place you can go.

Page 13

1          THE COURT:  Well that's certainly true.

2          MR. SMITH:  So it's -- and moreover, they said in the

3    first instance, they didn't say you go to Florida, plaintiffs,

4    and Mr. Picard, you go back to the Bankruptcy Court and we'll

5    see what happens, you guys have a race to judgment or

6    something.  It's crazy to think that they wanted that.

7          THE COURT:  Do you think the Second Circuit was

8    actually deciding that issue in the context of this appeal?

9          MR. SMITH:  I'm sorry?

10          THE COURT:  Do you think the Second Circuit was

11    actually deciding the issue of whether or not you go to Florida

12    or you come here?

13          MR. SMITH:  Absolutely.  Why else would they say

14    Florida?

15          THE COURT:  Was it argued by any of the parties in

16    their briefs?

17          MR. SMITH:  No.

18          THE COURT:  The Circuit usually doesn't decide issues

19    that aren't argued.

20          MR. SMITH:  But they decide issues whether the people

21    argued or not that have to be made.  I mean if I tell you I'm

22    going to dismiss your complaint without prejudice, and by the

23    way, here's a list of 15 things that were wrong with your

24    complaint and this is how, if you want to put together a

25    complaint against the Picards that won't violate the permanent

Page 14

```
1    injunction, here's what you've got to do.  You've got to

2    identify some particularized injury, you have to identify

3    something that Mr. Picard did that wasn't directed, that was

4    directed specifically at some investors as opposed to just

5    trying to get money out of his account.  And so I'm dismissing

6    this without prejudice because I recognize that you might be

7    able to do that.  So go back to Florida and let them decide in

8    the first instance.  This is, that's not happening today.  Do

9    you know who is deciding that in the first instance?

10            THE COURT:  It is.  It is because you went to Florida

11   and Florida court abstained.

12            MR. SMITH:  And, okay, and they didn't decide and now

13   we're waiting for the Eleventh Circuit to say, which I imagine

14   they will, to their brothers down in the District Court how is

15   it possible you didn't listen to what the Second Circuit said.

16   Circuit courts are entitled to have their mandates followed,

17   even if it's not from us.  Then fine, we'll tell you.

18            THE COURT:  Do you have an argument date for the

19   Eleventh Circuit?

20            MR. SMITH:  We have an argument -- no, what we have

21   is and we've done everything to speed it up, we've asked for an

22   expedited appeal on the interlocutory stay while that appeal is

23   pending.  And they've said to us, it's not like, they said well

24   how soon do you need it.  And we said May 5th so that possibly

25   we can get something before that motion happens.  And they
```

1   haven't said well that's too soon, so we don't know.  But we're

2   anticipating since it's fully briefed at this point that the

3   issue of the stay pending the appeal will be decided before you

4   have to decide --

5            THE COURT:  The court stay pending appeal.

6            MR. SMITH:  We made, we took an appeal from the

7   decision that deferred, and then we made a motion for a stay, a

8   preliminary stay of everything while they decided that appeal.

9            THE COURT:  The stay in Florida.

10           MR. SMITH:  Of, and of the trustee.

11           THE COURT:  But the trustee is not a party to the

12  Florida suit.

13           MR. SMITH:  He's not a party, but he's, he can deny

14  it, but he's clearly acting in concert with the Picards.

15           THE COURT:  Well, I know you allege that.

16           MR. SMITH:  Well he's in privity with the Picards,

17  there's no question about it.

18           THE COURT:  He's in privity?

19           MR. SMITH:  Absolutely.  And the only reason he's

20  doing this is because he has a contractual obligation to do it.

21           THE COURT:  Okay.

22           MR. SMITH:  And we know that he's abiding by it

23  because Mr. Murphy wrote a letter to the Picards' attorney and

24  said don't worry, here we come to save the day.  So yeah, I

25  think we'll be able to make out an argument that they are in

1    privity.

2              THE COURT:  Did you ever move in the District Court

3    in Florida for a stay of that decision?

4              MR. SMITH:  We -- no, we took the appeal to the

5    Eleventh Circuit, not back to the Judge who had punted it to

6    you.

7              THE COURT:  But don't you have to move for a stay in

8    the District Court before you move for stay in the Circuit?

9              MR. SMITH:  I hope not because that's not what we did

10   and that may be one of the things that the Picards are saying

11   in opposition to our motion for --

12             THE COURT:  You usually have to move for a stay

13   pending appeal in the lower court.

14             MR. SMITH:  I'm familiar with that practice, I wasn't

15   involved, our Florida attorneys are doing that.  But as to your

16   other answers, the appeal itself we have requested and have

17   been granted permission for an expedited appeal and if

18   everything goes according to the scheduled that we submitted

19   for the expedited appeal, they will have the matter fully

20   briefed by May 23rd.  And in light of the fact that they

21   realize that this, there are some things happening here and we

22   would probably mention the fact that if things go the way I

23   hope today that Your Honor has stayed things here until they

24   decide, then I have a feeling that they'll decide it relatively

25   quickly.  And if they decide that we're wrong and then I guess

Page 17

1    that in the meantime the trustee is not harmed because we're

2    not doing anything, we're not going after the Picards right

3    now.

4            THE COURT:  Well the trustee has a stay.

5            MR. SMITH:  He what?

6            THE COURT:  He effectively has a stay now.

7            MR. SMITH:  He has a stay of us, yeah, because we're

8    not doing anything.  So all we're asking is to stay his lawsuit

9    here which includes unfortunately a motion that's going to be

10   on May 7th, I think to say that we're in violation of the

11   permanent injunction when it could be totally moot, because if

12   the Eleventh Circuit rules against us then where are we, it

13   wouldn't have mattered.

14           THE COURT:  I'm sure you'll come up with another --

15           MR. SMITH:  I'm not saying we won't come up with

16   something, but he'll be in a lot better shape to say, see we

17   told you.  And if you stayed in the meantime, no one is hurt.

18   And you know there's a, if you don't want to call it a mandate,

19   you can't deny that the Second Circuit was giving some

20   directions to the parties, right, and there's, the Second

21   Circuit has said, you know, there's dicta and then there's

22   dicta, and this ain't the kind of dicta you should ignore.

23   There's something called judicial dicta or considered dicta.

24   And you can't deny that they want through the trouble, it's in

25   the decreed paragraph, for crying out loud, if they wanted it

Page 18

1   to be heard there.  It's like they're saying, you know what,

2   get out of my Circuit, let the Florida guys decide this and let

3   them decide it first which has to be a message to the trustee,

4   let that court decide first, because where else are we going to

5   go.  I mean it's a message to the trustee.  You know, you don't

6   have to tell us where to file our motion to amend, and they

7   violated that.  And whether you want to call it a mandate,

8   okay, fine, you're not in violation of the mandate, it's

9   judicial dicta at minimum and this Court should heed it.  And

10  all we're asking for, we're not asking to rule on the merits of

11  anything, is to just hold on, stop this, no one will be hurt if

12  we sit tight and do nothing until the Eleventh Circuit decides.

13            THE COURT:  Okay.

14            MR. SMITH:  And that's all I have unless Your Honor

15  has any questions, and I reserve some opportunities to respond

16  to Mr. Murphy.

17            THE COURT:  Thank you.

18            MR. SMITH:  Thank you, Your Honor.

19            MR. MURPHY:  Good morning, Your Honor, Keith Murphy,

20  Baker and Hostettler for the trustee.  I also note that counsel

21  for the Picards is in Court today, Ms. Marcy Harris.

22            MS. HARRIS:  Good morning.

23            MR. MURPHY:  Your Honor, I agree with all the Court's

24  insights today.

25            THE COURT:  I was just raising questions.  I may

Page 19

1    ultimately approve them, but go ahead.

2              MR. MURPHY:  I think Your Honor there are really two

3    fundamental questions to really address this motion here today.

4    Really, does this Court still have jurisdiction to enforce the

5    permanent injunction and should it.  The answer to that is

6    both, yes.  There's a lengthy history here of litigation

7    involving the trustee's settlement with the Picards and the

8    injunction and his efforts to make sure that people don't bring

9    duplicative and derivative claims.

10             THE COURT:  But you know this is really, and I read,

11   I know why you're here, I read the contract, but this is really

12   a dispute between the Picards and the Florida plaintiffs at

13   this point.  I don't really know how it concerns the estate

14   other than you have this contractual obligation to do this.

15             MR. MURPHY:  Well, it's more than that, Your Honor,

16   far more.  Because really we're here protecting the estate's

17   interest, and we're here protecting the --

18             THE COURT:  What's the interest to the estate?

19             MR. MURPHY:  The estate, the claims that have been

20   settled her with respect to the estate were contained in the

21   settlement.  And those claims are now protected by the

22   permanent injunction.  Our argument, Your Honor, is that now

23   while we've looked at the new complaint filed or potentially

24   filed by the Fox plaintiffs and those claims are duplicative

25   and derivative, yet again --

1          THE COURT:  I understand that, but why can't the

2   Picards who are obviously beneficiaries of the injunction make

3   that argument in Florida?  Why is the trustee involved in this

4   is what I'm asking.

5          MR. MURPHY:  The trustee is protecting the permanent

6   injunction.  We can't have the permanent injunction's

7   provisions eroded.  We also don't want this Court's

8   jurisdiction to be eroded by having to go to various courts

9   around the country to suggest that there's violations of the

10  permanent injunction.  That's not where the trustee wants to

11  be.  The trustee is here in a centralized proceeding before

12  this Court in a [indiscernible] liquidation proceeding.

13         THE COURT:  I understand that.  But the permanent

14  injunction runs solely to the benefit of the Picards.  Why does

15  the trustee care how another court interprets the permanent

16  injunction of this case?

17         MR. MURPHY:  Your Honor, we believe that this Court

18  should be interpreting its own jurisdiction, should be

19  interpreting its own permanent injunction order.  We do care

20  because we --

21         THE COURT:  All right.  I have jurisdiction, I saw I

22  have jurisdiction.  Basically, the Florida plaintiffs are

23  asking me to abstain from deciding the preliminary injunction,

24  or the injunction motion.

25         MR. MURPHY:  And I don't, I disagree that the Second

Page 21

1    Circuit actually divested this Court of any jurisdiction with

2    that one statement.

3            THE COURT:  I agree with you I have subject matter

4    jurisdiction.

5            MR. MURPHY:  Okay.

6            THE COURT:  But what they're saying is don't rule,

7    let the Florida courts rule and they haven't said it, you know,

8    it's really a, maybe this is what was driving the Second

9    Circuit, this is a dispute between the Picards and the Florida

10   plaintiffs, and it's really not a dispute that concerns the

11   estate.

12           MR. MURPHY:  Your Honor, we've --

13           THE COURT:  And but for your contractual provision,

14   it would always be the beneficiaries of the injunction --

15           MR. MURPHY:  Well certainly.

16           THE COURT:  -- who would bring this type of motion.

17           MR. MURPHY:  Right.  Your Honor, I agree, we

18   certainly have a contractual provision which says we're going

19   to use best efforts to enforce that injunction.

20           THE COURT:  So you've done that.

21           MR. MURPHY:  But I agree with that.  But I also agree

22   it's far more.  I still maintain the position that we have an

23   obligation to protect the permanent injunction that we've

24   fought so hard for and went up all through appeals and we got

25   through the Second Circuit.  I think it does make a difference

Page 22

```
 1    to this Court that this Court has the ability and the right to

 2    go and enforce its own permanent injunction.  I think all the

 3    questions or challenges that relate to it belong in front of

 4    this Court.  I don't think it's appropriate that it be done in

 5    various jurisdictions throughout the country.  Just for an

 6    example, what we've got here is beyond the Fox plaintiffs, we

 7    also have the Goldman plaintiffs down in Florida.  They're

 8    actually before a different District Court Judge.  We've got,

 9    it's a bit of a [indiscernible] down in Florida, quite frankly,

10    Your Honor.  We've got the Fox plaintiffs before Judge Ryskamp,

11    he deferred it to this court, it's now on appeal.  You have the

12    Goldman plaintiffs before Judge Morrow [indiscernible], he

13    hasn't ruled any way.

14             THE COURT:  And they contend they represent the Fox

15    plaintiffs.

16             MR. MURPHY:  Contending, exactly.  So on top of that,

17    you've got a real dispute here as to who represents whom.  And

18    that also hasn't been decided.  But the Goldman plaintiffs have

19    also intervened not only in the District Court before Judge

20    Ryskamp, but now before the Eleventh Circuit as well as saying

21    we don't think you are properly representing.  But all that

22    goes to say, Your Honor, is that you've got a lot, they're

23    asking a lot of people, a lot of Judges, courts down in Florida

24    to interpret this Court's permanent injunction.  And they're

25    also asking courts down in Florida to interpret the Second
```

Page 23

1    Circuit's "mandate" which we think is really not a mandate at

2    all.  That decision clearly from our perspective, certainly

3    affirm this Court's jurisdiction to make these rulings and

4    enter the permanent injunction.

5             I also disagree with my colleague that there's no

6    harm here.  In terms of a stay pending appeal, I don't think

7    they've demonstrated to this Court that they have a likelihood

8    of success on the merits.  I think that they would have to go

9    before the Eleventh Circuit and get past the hurdle of that

10   they brought, this is not an improper interlocutory appeal that

11   this is somehow a mandate directing the Florida District Court

12   that it has no choice but to hear this and interpret it, and

13   they also have to determine that it wasn't a mistake to bring

14   it down there.  I do see the harm here to us.  I don't see any

15   irreparable harm to the Fox plaintiffs at all, Your Honor, to

16   have to litigate here for something that they did already.

17        And by the way, in addition to that, if we're going to go

18   up on appeal as my colleague suggested, I think it's a better

19   place to go up on appeal before the Second Circuit so that they

20   can interpret their own mandate.

21             Just to the point about the mandate, Your Honor, and

22   the Court made comments or raised some questions about it

23   before with my colleague, clearly it's a 28 page decision

24   reaffirming jurisdiction.  The one sentence that they're trying

25   to isolate here to get this Court to stay this is it was not an

Page 24

```
1     issue before the Court, it wasn't litigated, wasn't in any of

2     the briefs, it wasn't in any of the decisions, it was

3     unnecessary as the Court questioned to the decision at all.  So

4     therefore, I don't think there's any weight that should be

5     afforded to it.  I don't know at all that it has any bearing on

6     where we are.  And in fact, I do think that the Second Circuit

7     knowing how bankruptcy cases work, and even as Your Honor has

8     said before, there are, the jurisdiction of the bankruptcy

9     courts to make these determinations, to make determinations of

10    its own orders should be centralized here in the Court where

11    the case is proceeding.

12              I'll add, Your Honor, too, it's not only this

13    particular injunction, this permanent injunction, but it also

14    would affect the estate in other ways.  We certainly, it would

15    affect how we could go forward with other settlements and what

16    other settling parties could potentially expect in the future.

17    And then anyone frankly with duplicative claims could go to

18    other courts and raise those issues and then have the trustee

19    have to run down there as they're suggesting.  They're

20    suggesting, Fox plaintiffs are suggesting that we should be

21    going down to Florida to intervene, to protect this Court's

22    permanent injunction.  We don't think that's appropriate, Your

23    Honor.

24              I think that all the litigation down in Florida

25    should really, would really ultimately be stayed if this Court
```

Page 25

1    enters the injunction application that we're going to be before

2    you on next week.  And by the way, Your Honor, the Goldman

3    plaintiffs have not sought a stay.  We are going next week on

4    the 7th before you here to address our application.  There's no

5    reason to separate these two, Fox plaintiffs and Goldman

6    plaintiffs.  Our position is that these complaints are very

7    similar, they are simply realleging claims that the Picards --

8             THE COURT:  Don't argue the merits today.

9             MR. MURPHY:  Sure.  Sure.  So we really like to avoid

10   any kind of inconsistent interpretations of the permanent

11   injunction.  We think that if it's brought here and all these

12   cases are brought here, this Court will have a uniformed way of

13   looking at the permanent injunction and enforcing it.  It would

14   not erode this Court's jurisdiction in any way.  And as I said,

15   there's no basis for a stay pending appeal, Your Honor.

16   There's no, no irreparable harm for them to litigate before you

17   because they haven't demonstrated they're likely to succeed on

18   the merits.  Our trustee's position is that we will be harmed,

19   the Court will be harmed and the public interest frankly lies

20   in having all these matters heard before the Bankruptcy Court,

21   Your Honor.

22            And by the way, just one more point.  The issue

23   regarding duplicative and derivative, the nature of the claims

24   will be fully briefed here as of this afternoon when we file

25   our brief.  However, no briefing on that issue has occurred in

Page 26

1    Florida.  We don't know anything about the May 5th date that

2    counsel alluded to, and there is no indication that the

3    Eleventh Circuit is going to rule at any particular time, we

4    haven't been able to see that.

5              THE COURT:  Okay.  Thank you.

6              MR. MURPHY:  Thank you, Your Honor.

7              THE COURT:  Before I hear from Mr. Smith, does

8    anybody else want to be heard?

9              MS. HARRIS:  Your Honor, I'm Marcy Harris from

10   Schulte, Roth and Zabel, we're counsel to the Picard parties.

11   And we support the trustee's application in this Court, and the

12   arguments in the trustee's motion and memorandum of law and the

13   relief the trustee seeks, and we oppose the Florida plaintiffs'

14   applications here.

15             I want to clarify for the record what's happening in

16   Florida and the status of the proceedings.  As of now, the

17   Florida plaintiffs who are here in Court today have made three

18   different motions before the Eleventh Circuit.  One is a motion

19   to, a motion to expedite an appeal.  They waited three weeks to

20   make that motion, to say that they needed an expedited

21   schedule.  There's no schedule --

22             THE COURT:  That's for the Eleventh Circuit to

23   decide.

24             MS. HARRIS:  Sure.  But there's no, the point is

25   there's no dates at all on when the court is going to rule on

1    any of the applications before it, there's no briefing schedule

2    on an expedited basis, and so when the Eleventh Circuit would

3    complete and decide on the issues is unknown.  The Florida

4    plaintiffs also moved for an injunction pending appeal.

5         THE COURT:  An injunction for what?

6         MS. HARRIS:  Of Judge Ryskamp, the District Court's

7    stay determination.

8         THE COURT:  Okay.

9         MS. HARRIS:  That motion is fully briefed, again

10   there's no indication when it will be decided.  The Picard

11   parties moved to dismiss the appeal on the grounds that it's

12   interlocutory and there's no basis for that to be taken now.

13   That is fully briefed, there's no determinations, no indication

14   when that will be determined.  So there is no -- I heard

15   counsel say today that within a few days there should be an

16   opinion form the Eleventh Circuit.  We believe that's a

17   speculative, that's totally speculative.

18        Without addressing the merits of whether the new

19   complaint is derivative or duplicative or not, the only

20   question is which court is best to decide that issue, and we

21   submit it's the court that has already decided that issue,

22   that's this Court, then the District Court and then the Court

23   of Appeals here.  And the Second Circuit, excuse me, the

24   Eleventh Circuit has never addressed that issue, the Florida

25   courts have never addressed that issue.  When presented to them

Page 28

1    three years ago, four years ago, they stayed in favor of this

2    Court's determinations of that very issue.  The Goldman parties

3    who will be before the Court next week on the 7th have never

4    filed in Florida before.  They brought their application to

5    this Court four years ago seeking permission to file their

6    complaint at that time.  The Court rejected that application on

7    the grounds that their claims were duplicative of the

8    trustee's, that was appealed to Judge Sullivan.  Unfavorably

9    they lost.  They then filed again in Florida this winter.  So

10   that was the proper procedure, they did it the last time, they

11   got an unfavorable result.  They tried something else by going

12   to Florida.  But the, this Court in the order approving the

13   settlement with the Picard parties approved the permanent

14   injunction.  So it's a court order of this Court, and we

15   believe this court is best situated in the proceeding that the

16   trustee is a part of to determine the scope of that injunction

17   and whether it applies to these new claims.  Otherwise, a

18   different court is going to be deciding whether purportedly new

19   claims are derivative and duplicative of the same claims this

20   Court has already addressed.  Thank you.

21          MR. SMITH:  Your Honor, maybe I was being too polite.

22   I thought the Picards' attorney was merely going to say we join

23   in everything that the trustee said, but to my knowledge

24   they've made no appearance in this matter.  I don't understand

25   why they should have any say in this.

Page 29

```
 1           THE COURT:  A little late for that, isn't it?

 2           MR. SMITH:  That's why I said I regret that I was as

 3     polite as I was.

 4           THE COURT:  You might have been in the same place

 5     anyway.

 6           MR. SMITH:  First, let me just say one more thing

 7     about, what I did not say that an opinion will be, we

 8     anticipate it.  They asked us when you need it by, and we said

 9     May 5th, and they didn't say oh, you're crazy, that's too soon.

10     So we anticipate they're going to do that.  They may not, I

11     don't know.  Even if our expedited appeal is not granted, we're

12     not talking about an appeal that's going to be set out to next

13     year some time.  If we just proceed under the regular briefing

14     schedule, our papers will be in on May 5th by coincidence and

15     the opposition will be due June 5th, so we're not talking about

16     something that's going to drag on for years and years and

17     years.   Now with that said, I can empathize with -- Mr. Murphy

18     and I have been round and round this since it was first filed,

19     and I can empathize with him, we file the motion that I'm sure

20     how could the Judge --

21           THE COURT:  Could you hold it down back there,

22     please?  I'm sorry, go ahead.

23           MR. SMITH:  So we would file our motion for a stay,

24     and frankly nothing has been said and the papers are here today

25     that is grounds to deny it.  And when they have nothing to say
```

Page 30

1   addressing what we've said, they frankly just made something up

2   which is somehow we're arguing this Court doesn't have

3   jurisdiction.  We never said that.  It's not in our papers,

4   they cite nothing in their papers.

5            THE COURT:  Well I guess that's the implication

6   saying, the mandate says go to Florida.

7            MR. SMITH:  But that's not, no that doesn't say you

8   don't have jurisdiction.  But in any event, I mean we're asking

9   for Your Honor to award fees to us for this frivolous activity

10  up here, so we think you do have jurisdiction.  You have

11  jurisdiction to hear what they said and deny it, because

12  otherwise, when it goes up on appeal, it will be reversed.

13           THE COURT:  Do I have jurisdiction to grant it?

14           MR. SMITH:  Do you have jurisdiction to grant what?

15           THE COURT:  To grant --

16           MR. SMITH:  My motion?

17           THE COURT:  No, his motion.

18           MR. SMITH:  I would say not.  I mean, no, you would,

19  you have jurisdiction --

20           THE COURT:  I have jurisdiction to deny it, and I

21  have jurisdiction, I have jurisdiction to award you attorneys'

22  fees but I don't have jurisdiction to grant the relief that

23  he's seeking?

24           MR. SMITH:  I didn't understand your question.  Yes,

25  of course you do.  But we submit it will be reversed by the

1    court that issued the mandate.  That's, so it's not the same --

2         THE COURT:  I don't doubt that.

3         MR. SMITH:  Yeah, it's not the same thing as saying,

4    you know, every time I seek to have a trial court reversed

5    doesn't mean I think the court who issued the decision doesn't

6    have jurisdiction.

7         THE COURT:  Okay.

8         MR. SMITH:  I mean we cross-moved to dismiss it last

9    week.

10        THE COURT:  So what's the effect of the mandate do?

11   If I have jurisdiction, what does the mandate mean?

12        MR. SMITH:  You can deny based on the fact that you

13   have been instructed and you have an obligation to follow the

14   mandate to let the other Judge decide first.  I mean that's as

15   clear as day and --

16        THE COURT:  We're going around in circles.  So you

17   went to Florida and the other Judge said that I should decide

18   it.

19        MR. SMITH:  And keep going, the circle doesn't end

20   there because we have an appeal.  And the Eleventh Circuit may

21   very well say, you know, I expected more of you District Court,

22   you saw what the decision said, it said you're supposed to

23   decide first.  And I will add something.  It's not as if Judge

24   Ryskamp in Florida just said, you know, I got too much going on

25   here, I'm not going to decide this.  He didn't defer until

Page 32

1    after the Picards filed a motion attaching Mr. Murphy's letter

2    and he did not defer until the trustee filed here.  It's not as

3    if he said, oh, the heck with it I'm not going to do it.

4            THE COURT:  Well maybe he thought although I have the

5    power, that's an appropriate exercise of discretion under the

6    circumstances.

7            MR. SMITH:  We don't know why he did it, but I can

8    ensure you that if the trustee hadn't meddled, he wouldn't have

9    done it on his own.

10            THE COURT:  You mean if the trustee hadn't asserted

11    his rights?

12            MR. SMITH:  I don't know how it's asserting your

13    rights.  Your rights are to listen to what the Second Circuit

14    tells you to do.

15            THE COURT:  Okay.  Is there anything else?

16            MR. SMITH:  Your Honor asked some very good questions

17    about what's the harm.  There is no harm to the trustee.  They

18    have -- no one will be able to accuse the trustee of not

19    exercising his best efforts to protect the Picards from anyone

20    violating the injunction.  They've done it, it's over.  There

21    are no other injunctions out there that he needs to vindicate.

22    This is the only one I'm aware of where there's a permanent

23    injunction in place.  Maybe perhaps Mr. Picard is trying to

24    project his ability to offer deals like this to other people,

25    but that doesn't mean he has the right to continue to do this.

Page 33

1   You're absolutely right, what do you care Mr. Picard, you

2   shouldn't be doing this.

3           And I would also like to add that [indiscernible] not

4   appropriate for the other court to decide, he thinks you're

5   appropriate.  Well I guess he doesn't agree with the Second

6   Circuit.  The Second Circuit said the federal court in Florida

7   should decide.  It really doesn't matter what he thinks is

8   appropriate.  The Second Circuit has spoken and that's what we

9   should be following.  And unless there's some inconsistency in

10  their opinion, we don't have room to interpret their mandate.

11  We follow it.  Thank you.

12          THE COURT:  I'm going to reserve the decision, but

13  we're going to go ahead with the schedule on the motion.  The

14  real issue I guess is what the mandate says, and my

15  understanding is that the Goldmans have raised that in

16  opposition to the motion for relief, so I can decide that

17  matter in connection with the motion.  So we'll go forward on

18  that, I think it's the 6th.

19          UNIDENTIFIED:  7th.

20          THE COURT:  7th.  We'll see you on the 7th.

21          UNIDENTIFIED:  Thank you, Your Honor.

22          THE COURT:  All right.  Thank you.

23      (Proceedings concluded at 11:29 AM)

24

25

```
 1                        I N D E X

 2

 3                        RULINGS

 4   DESCRIPTION                                       PAGE

 5   HEARING re Defendants' Motion for Stay of Proceeding and

 6   Extension of Time

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 35

1                          CERTIFICATION

2              I, Theresa Pullan, certify that the foregoing is a

3     correct transcript from the official electronic sound recording

4     of the proceedings in the above-entitled matter.

5     Theresa Pullan
      Digitally signed by Theresa Pullan
      DN: cn=Theresa Pullan, o=Veritext, ou,
      email=digital@veritext.com, c=US
      Date: 2014.05.05 15:02:18 -04'00'

6     AAERT Certified Electronic Transcriber CET**00650

7     Theresa Pullan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22     Veritext

23     330 Old Country Road

24     Suite 300

25     Mineola, NY  11501