DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000
Fax: 212.692.1020
Gerard S. Catalanello, Esq.
Patricia H. Heer, Esq.
gcatalanello@duanemorris.com
phheer@duanemorris.com

Attorneys for Brian Ross, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION. CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff- Applicant | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

-----------------------------------------------------------------
In re:

BERNARD L. MADOFF,

          Debtor.

-----------------------------------------------------------------

**OBJECTION AND JOINDER OF BRIAN ROSS TO ARGUMENTS PRESENTED IN CONNECTION WITH THE TRUSTEE'S MOTION AFFIRMING APPLICATION OF NET INVESTMENT METHOD TO DETERMINATION OF CUSTOMER TRANSFERS <u>BETWEEN BLMIS ACCOUNTS</u>**

Brian Ross hereby objects to the Trustee's Motion Affirming Application of Net

Investment Method to Determination of Customer Transfers Between BLMIS Accounts (the

"Motion") and joins arguments presented by other customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") objecting to the Motion.[1]

In support of this objection and joinder (the "Objection"), Brian Ross respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Trustee inequitably discriminates against Brian Ross even though, as required by the Trustee's very own cash in/cash out methodology, his deposits exceed his withdrawals (all of which are documented and can be easily verified) solely because he made deposits and withdrawals through multiple accounts.

2.      Prior to being permitted by BLMIS in May 2004 to open an account, Brian Ross made deposits and withdrawals of his own money through an account opened by his father, Allen Ross, BLMIS account number RO125-3-0 (the "A. Ross Account").   Each of the A. Ross Account users, Allen Ross and Brian Ross, treated his respective deposits and withdrawals in the A. Ross Account separate from each other, keeping track of his own transactions.   BLMIS was aware that each of the individuals was keeping his funds and transactions separate. Documentation of each of the deposits into and withdrawals from the A. Ross Account by Brian Ross easily confirms that these transactions were made solely with Brian Ross's own funds.

3.      At the time Brian Ross opened the account number 1-RO217-3 (the "B. Ross Account"), based on the Trustee's Net Investment Method, Brian Ross had a net gain of $935,000 based on his deposits and withdrawals in the A. Ross Account (prior to making additional deposits and withdrawals through the B. Ross Account).

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

DM3\2902628.1

4.      The Trustee, however, in calculating Brian Ross's total net equity, ignored the

$935,000 net gain.    Instead, the Trustee calculated Brian Ross's net equity by adjusting the

beginning balance of the B. Ross Account to the amount of funds available in the A. Ross

Account at the time that the B. Ross Account was opened and at which time a transfer of funds

was requested from the A. Ross Account to the B. Ross Account.[2]

5.      The Trustee's adjustment is inappropriate to the determination of Brian Ross's net

equity because the adjustments based on the transferor's account balance, according to the

Trustee's Motion, are made to customer claims involving a transfer between BLMIS customer

accounts in which *no new funds entered BLMIS.*    That is not the case here.    Indeed, although a

transfer was requested between the A. Ross Account and the B. Ross Account, it is not an

instance where *no new funds entered BLMIS.*    As set forth in detail below, Brian Ross invested

his own funds in the A. Ross Account, therefore this was not a mere requested transfer on paper

without any prior investments supporting such transfer.    The Trustee completely ignores, and

fails to explain why he ignores, the actual cash deposits Brian Ross made with his own funds, less

his own withdrawals, to the A. Ross Account.

6.      The Trustee's limitation on the calculation of Brian Ross' net equity - accounts

involving transfers in relation to which deposits and withdrawals were actually conducted and

documented -   by the amount available for transfer in the A. Ross Account has also not been

approved by the District Court.   Moreover, the limitation as to Brian Ross is not consistent with

the Net Investment Method which was allegedly designed to credit customers for the total amount

of cash deposited less any amounts withdrawn.   And it certainly does not avoid crediting

---

[2] At the time the B. Ross Account was opened, a request was made to transfer $1,000,000 and subsequently
$9,030.71 from the A. Ross Account to the B. Ross Account.

DM3\2902628.1

fictitious profits because, in Brian Ross's instance, the credit would not be for a third party's funds, but for his very own funds that he deposited and did not withdraw.

## BACKGROUND FACTS

7.      On or about October 29, 2002, Brian Ross delivered a check in the amount of $730,000 to his father Allen Ross for deposit into the A. Ross Account.   Accordingly, on or about November 7, 2002, Allen Ross delivered a check in the amount of $730,000 to BLMIS and same was deposited into the A. Ross Account for and on Brian Ross's behalf.

8.      In addition, on or about March 30, 2004, Brian Ross delivered another check to Allen Ross in the amount of $575,000, which Allen Ross also deposited into the A. Ross Account for and on Brian Ross's behalf.

9.      Bank statements, cancelled checks and correspondence attached to Brian Ross's claim and also attached hereto as Exhibit "A" clearly identify which deposits into the A. Ross Account were made solely with Brian Ross's funds.

10.      On or about April 11, 2003, Brian Ross requested a withdrawal of $150,000 from the A. Ross Account, and that amount was wired by BLMIS from the A. Ross Account directly to Brian Ross's personal bank account.

11.      Similarly, on or about July 8, 2003, Brian Ross requested another withdrawal from the A. Ross Account, this time in the amount of $220,000.   Again the requested amount was wired by BLMIS directly to Brian Ross's personal bank account.

12.      As with the deposits, Brian Ross's withdrawals can be traced by Brian Ross's withdrawal requests made directly to BLMIS and the wire transfers made by BLMIS directly into an account bearing only Brian Ross's name, documentation of which was attached to Brian Ross's claim and is also attached hereto as Exhibit "B".

4

DM3\2902628.1

13.     During the time that Brian Ross was investing with BLMIS through the A. Ross

Account, which was from November 2002 through May 2004, he had invested $1,305,000 of his

own funds and withdrew $370,000 of his own funds, <u>resulting in a net of $935,000</u>.

Accordingly, based on the amount of cash in/ cash out, at the time when Brian Ross opened the

B. Ross Account on May 26, 2004, his net equity was $935,000.

14.     BLMIS was aware that the A. Ross Account would be shared by Allen Ross and

Brian Ross as each would jointly track their individual deposits and withdrawals.   Indeed,

BLMIS had correspondence indicating which deposits and withdrawals were made by Brian Ross

and involved his own funds as indicated through the correspondence attached at <u>Exhibit "A"</u> and

<u>Exhibit "B"</u>.

15.     Once Brian Ross opened the B. Ross Account, from May 2004 through October

2008, he only used the B. Ross Account rather than the A. Ross Account for his additional

deposits and withdrawals.   During this time period, he invested an additional $440,000 and

withdrew $901,000 of his own money.

16.     In total, through the two accounts, the A. Ross Account and B. Ross Account,

Brian Ross deposited $1,745,000 and withdrew $1,271,000 of his own funds with BLMIS,

ultimately resulting in a net loss of $474,000 to him based on the cash in/ cash out analysis that is

being used by the Trustee.

17.     All of the deposits and withdrawals made by Brian Ross can be traced to Brian

Ross's funds through the supporting documentation attached to his claim and hereto at <u>Exhibit</u>

<u>"A"</u> and <u>Exhibit "B"</u>.

18.     On or about January 25, 2010, the Trustee delivered the Determination Letter to

Brian Ross, a copy of which is annexed hereto as <u>Exhibit "C"</u>.   The Determination Letter denies

5

the claim filed by Brian Ross on the basis that Brian Ross does not have "net equity" in the B. Ross Account.

19.      In calculating Brian Ross's net equity, the Trustee <u>ignores</u> the deposits and withdrawals Brian Ross made with BLMIS through the A. Ross Account.   Instead, he calculates Brian Ross's claim by first adjusting two transfer from the A. Ross Account to the B. Ross Account, that were carried out around the time that the B. Ross Account was opened, based on the amount of funds available in the A. Ross Account, and then adding the deposits and withdrawals that Brian Ross made through the B. Ross Account.   According to the Trustee's calculation in the Determination Letter, Brian Ross has an allowed claim of only $22,237.18.

20.      On or about February 24, 2010, Brian Ross filed an objection to the Determination Letter.   Brian Ross argued therein that the Trustee's calculation of his net equity was improper as it was not based on the last B. Ross Account statement, improperly adjusted the transfers from the A. Ross Account from the amounts in which they were requested, and that in any event, Brian Ross's net equity based on the cash in/ cash out method was at least $474,000.

21.      On or about March 31, 2014, the Trustee filed the instant Motion asking the Court to confirm the application of the Net Investment Method to transfers between BLMIS customer accounts and affirm the Trustee's determination of Brian Ross's claim.

<u>GROUNDS FOR OBJECTION</u>

**A.  Joinder to Pleadings of Similarly Situated Customers**

22.      As an initial matter, Brian Ross hereby joins and fully incorporates by reference as if fully restated herein, the arguments and authority cited in the objections and briefs filed on behalf of similarly situated customers as appropriate.

**B.      The Transferor Account Balance Limitation Is Inapplicable**

6

DM3\2902628.1

23.       The Trustee asserts in the Motion that under the Net Investment Method, a customer's net equity is determined by the amount of cash the customer deposited into his BLMIS account minus the withdrawals the customer made from the account.   With respect to customer claims involving inter-account transfers, "meaning a transfer between BLMIS customer accounts in which *no new funds entered BLMIS*", the transferee's net equity is further adjusted based on the extent of available principal in the transferor account at the time of the requested transfer.

24.       The Trustee inappropriately applies the transferor account balance limitation to Brian Ross's claim.   Although transfers were requested between the A. Ross Account and the B. Ross Account, it is not an instance where *no new funds entered BLMIS* in relation to the transfers. As set forth in detail above, Brian Ross invested substantial amounts of his own funds in the A. Ross Account and withdrew only a portion.   This was not a requested transfer merely on paper without any prior investments supporting such transfer.   The Trustee completely ignores, and fails to explain why he ignores, the actual cash deposits Brian Ross made with his own funds, less his own withdrawals, in the A. Ross Account.

25.       It appears that the Trustee conflates the transactions conducted by Brian Ross with those conducted by Allen Ross, ignores the separately traceable deposits and withdrawals of Brian Ross and instead focuses his calculation of Brian Ross' net equity with the amount that was available in the A. Ross Account for transfer into the B. Ross Account.   Whether there was a request for transfer of funds or not between the A. Ross Account and B. Ross Account, based on the cash in/ cash out method promulgated by the Trustee for determining customer's equity, the Trustee cannot ignore the deposits and withdrawals that Brian Ross made with his own money (which can all be verified) into the A. Ross Account.

7

26.     While the Court of Appeals for the Second Circuit has affirmed the Trustee's Net

Investment Method to calculate a customer's net equity based only on a customer's principal

deposits and withdrawals rather than based on the balance reflected on the last statement, neither

Second Circuit court nor any other court has addressed the Trustee's attempt to further limit the

net equity of a customer who invested principal in BLMIS through multiple accounts (rather than

just requesting a transfer with no funds having been deposited) based on the balance of those

other accounts in the event there was a transfer requested in between the accounts.

27.     Similarly, the District Court in the Antecedent Debt Decision also did not

confirm that the Trustee, in applying the Net Investment Method, should ignore all of the deposits

and transfers that a customer made into an account from which funds were subsequently

requested for transfer.   Instead, in the avoidance action context, the District Court was

considering whether inter-account transfers occurring between customers before the reach-back

period should be treated as principal and therefore should constitute "value' for purposes of

section 548(c).   *See* Antecedent Debt Decision, 499 B.R. 416, 428.   Those inter-account

transfers at issue in the Antecedent Debt Decision did not involve related investment of principal

by the transferee.   Indeed, with respect to the transfers at issue before it, the District Court stated

that the "true substance of transfers of fictitious profits from one account to another remains the

same: The funds at issue are still other people's money, and shifting them among accounts,

whether those accounts are owned by the same person or entity or, for example, transfer among

family members, does not morph those funds into actual new principal."   *Id* at 428- 29.   As such

the District Court concluded that no new value was created by moving these funds between

different accounts.   *Id*.

28.     Here, as discussed above, there was more than a requested transfer between

customers.   Brian Ross made actual deposits and withdrawals with his own money in the A.

8

Ross Account, which he is requesting that the Trustee recognize as consistent with the cash in/ cash out accounting.

29.      Moreover, this would not result in credit being given to fictitious profits nor be shifting *other people's money* as argued by the Trustee (Trustee's Memorandum In Support of Motion p. 2 (emphasis added)) and as was the concern of the District Court in the avoidance action context because the deposits made by Brian Ross consisted of his own funds.   As stated above, each of the deposits and withdrawals that Brian Ross made with BLMIS whether through the A. Ross Account or through the B. Ross Account can be traced to him.

30.      In sum, the Trustee applies the Net Investment Method in a manner that inappropriately penalizes and discriminates Brian Ross for making deposits and withdrawals with BLMIS (that are traceable to him) through the A. Ross Account prior to being permitted by BLMIS to open the B. Ross Account.   Despite having deposited more than he withdrew, and therefore having net equity based on the cash in/ cash out, Brian Ross is not receiving credit for these amounts.

31.      Accordingly, the Trustee's Motion should be denied to the extent it seeks to limit Brian Ross's net equity below $474,000.

## RESERVATION OF RIGHTS

32.      Brian Ross expressly reserves the right to revise, supplement, or amend this Objection, or to join in any other objections, and any failure to object on a particular ground shall not be construed as a waiver of his right to object on any additional grounds.

## CONCLUSION

For the reasons set forth above and more fully in the objections filed by those similarly situated, Brian Ross is entitled to (i) have his claim recognized in the amount of $474,000,

9

DM3\2902628.1

representing the amount of his net equity; and (ii) such other and further relief as is just and proper.

May 16, 2014

DUANE MORRIS LLP

By: _/s/ Gerard S. Catalanello_
Gerard S. Catalanello

Patricia Heer Piskorski
1540 Broadway
New York, NY 10036-4086
(212) 692-1022

Attorneys for Brian Ross

DM3\2902628.1