KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.      Hearing Date: June 19, 2014
551 Fifth Avenue, 18th Floor     Hearing Time: 10:00 a.m.
New York, New York 10176
(212) 968-6000
David Parker
Matthew J. Gold

Counsel for Lawrence Elins

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION :
CORPORATION,    :    Adv. Pro. No. 08-01789 (SMB)
                                  Plaintiff,    :    SIPA Liquidation
                                       v.    :    (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT :
SECURITIES LLC, :

                                Defendant. :
------------------------------------------------------------x
In re: :

BERNARD L. MADOFF, :

                                      Debtor. :
------------------------------------------------------------x

**OBJECTION OF LAWRENCE ELINS TO TRUSTEE'S
MOTION AFFIRMING APPLICATION OF NET INVESTMENT METHOD
TO DETERMINATION OF CUSTOMER TRANSFERS BETWEEN ACCOUNTS**

Lawrence Elins submits this objection to the Trustee's Motion Affirming Application of

Net Investment Method to Determination of Customer Transfers Between Accounts, dated

March 31, 2014 (the "Inter-Account Transfer Motion"), and respectfully represents:

## Background

1.      Lawrence Elins is a victim of Bernard Madoff and a party in interest in this case. Elins filed a proof of claim (the "Elins IRA Claim") regarding Lawrence Elins IRA, account no. 1E0172.  Elins is a customer, as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("Madoff Securities").

2.      By Notice of Trustee's Determination of Claim, dated December 1, 2010, Irving Picard, the SIPA trustee, notified Elins that the Elins IRA Claim, denominated as Claim Number 70206, was denied.

3.      Elins filed an Objection to Trustee's Determination of Claim 70206 [Docket 3814] on January 31, 2011.  Among other things, the objection expressly preserved Elins' right to supplement or amend the objection.  Before the filing of the Inter-Account Transfer Motion the Trustee had not responded to the Elins objection.

4.      The Trustee filed a complaint with regard to the Elins IRA accounts on or about December 2, 2010, Adv. Proc. No. 10-5177.  None of the transfers challenged by the Trustee was made within two years of the start of the Madoff Securities SIPA case.

5.      By Memorandum Order dated February 29, 2012, the reference for the Elins IRA adversary proceeding was withdrawn, SDNY 11 Civ. 4772 (JSR) [Docket 19].  The Elins IRA adversary proceeding was one of many cases in which judgment was entered in favor of defendants based upon section 546(e) of the Bankruptcy Code.  Inasmuch as the Trustee did not seek, in the Elins IRA adversary proceeding, to avoid any transfers made within two years of the start of the Madoff Securities SIPA case, the judgment was a final judgment, dismissing all counts of the complaint.  The Trustee appealed the judgment to the United States Court of Appeals for the Second Circuit, which has reserved decision.

6. The Elins IRA Claim is not listed on Schedule 1 attached to the Trustee's Declaration of Bik Cheema, dated March 31, 2014 [Docket 6086], which purports to list "Claimants Raising Inter-Account Transfer Issue." The Cheema schedule states that it excludes "claims and objections raising the Inter-Account Transfer Issue that have since been withdrawn," but is not clear what is meant by "claims … that have… been withdrawn." Elins has not withdrawn his objection to the Trustee's claim determination, and the reference has not been withdrawn for the proceedings on the Elins Objection to Trustee's Determination of Claim. The only possibly relevant proceeding for which the reference has been withdrawn is the Elins IRA adversary proceeding described above. While the withdrawn proceedings have some relevance, in that the District Court ruled that the safe harbor of section 546(e) of the Bankruptcy Code restricts the Trustee to a reachback period for fraudulent conveyance claims of two years, those proceedings concerned only the Trustee's avoidance action, and not Elins' net equity claim.

7. In any event, the inter-account transfer issues discussed below have not been presented to the District Court by either side.

### Relief Requested and Reasons Therefor

8. The Elins IRA Claim should be allowed in the amount of $3,821,890.[1] The Trustee has treated the Elins IRA as if it were the product of an inter-account transfer – but in fact the Elins IRA was established with funds that were not in any Madoff Securities account, all

---

[1] While Elins' proof of claim sought the amount shown in the last statement from Madoff Securities, Elins here seeks no more than the amount of principal deposited in the Roth IRA, without prejudice to any rights Elins may have should the Net Equity Decision, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), cert den., 133 S.Ct. 24&25 (2012), be at any time reversed or modified.

3

of which should be treated as principal. Accordingly, even under the Trustee's Net Investment Method the Elins IRA Claim should be allowed.

9. Specifically, Elins had two separate and distinct IRA accounts with Madoff Securities. The first, account no. 1E0148 (the "Traditional IRA"), was closed in February 2005. The second, account no. 1E0172 (the "Roth IRA"), was established *approximately one year later*, in early 2006. The two accounts have different account numbers, were established in different capacities for different types of IRA, and never existed at the same time. There is simply no basis to consider them a single account. Had Elins never created the Roth IRA the Trustee would not be entitled to any clawback of withdrawals from the Traditional IRA.

10. The only transactions for the Roth IRA are two deposits, totaling $3,821,890, in February and March 2006. There were no withdrawals from the Roth IRA.

11. Exhibit B to the Elins IRA complaint lists all of the relevant transfers: the withdrawals that closed the Traditional IRA in December 2004 and February 2005, and the deposits into the Roth IRA in February and March 2006. The exhibit also acknowledges the existence of both accounts. What the exhibit does not do is specify from which of the accounts the withdrawals were made, and into which of the accounts the deposits were made.[2]

12. What the Trustee appears to have done is to have deemed the deposits in 2006 into the Roth IRA to be inter-account transfers from the Traditional IRA, as he appears to be imputing into the calculation of net equity for the Roth IRA the earlier withdrawals from the Traditional IRA.

---

[2] The complaint, like substantially all of the complaints filed by the Trustee, contains general allegations regarding the background of the Madoff Securities SIPA case, but no allegations specific to the defendant or the IRA accounts other than the information contained in Exhibit B.

4

13. Accordingly, the Trustee's extremely broad request that the Court enter an order affirming the Trustee's application of the Net Investment Method to transfers between Madoff Securities customer accounts should not be applied to the specific and uncontested facts regarding the Traditional IRA and the Roth IRA.

14. The Trustee's own recitation of his methodology shows the impropriety of treating the deposits into the Roth IRA as transfers from the Traditional IRA. He defines an inter-account transfer as "a transfer between [Madoff Securities] customer accounts *in which no new funds entered [Madoff Securities]*." Inter-Account Transfer Motion ¶4 at 2 (emphasis added). Here, the deposits into the Roth IRA were new funds that entered Madoff Securities.

15. In describing his methodology the Trustee states that he "credited the transfer in an amount up to the available net balance in the transferor account *at the time of the transfer*." Inter-Account Transfer Motion ¶4 at 2 (emphasis added). Here, at the time of the payments into the Roth IRA Account the Traditional IRA account had been closed for a year.

16. The Trustee concedes that his methodology should not apply when funds were withdrawn from Madoff Securities:

> [W]hile it is true that, instead of initiating a transfer, customers could have withdrawn the money from their accounts, the fact is they did not. Thus, the appropriate method for calculating the amount of the transfer is the Net Investment Method.

Trustee Memorandum of Law [Docket 6085] at 21. The fact is that Elins *did* withdraw the money, and the entire amount of the later deposit must be considered principal.

17. The Net Equity Decision is not dispositive of the instant issue. While it involved the Trustee's methodology concerning the calculation of net equity claims, it did not deal in any way with inter-account transfers.

5

18. The Antecedent Debt decision, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 499 BR. 416, 428 (S.D.N.Y. 2013), did not deal with, let alone resolve, the issue presented here. The citation in the Antecedent Debt decision to *Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC)*, 396 B.R. 810 (Bankr. S.D.N.Y. 2008), *aff'd* 439 B.R. 284 (S.D.N.Y. 2010), makes clear that the analysis regarding inter-account transfers applies only when the funds are transferred directly from one account into another. *See Bayou,* 396 B.R. at 884. The Antecedent Debt decision is emphatic that a customer may retain the entire withdrawn sum if, like Elins, he withdrew all funds from an account before the two-year reachback date:

> In a long-running fraud such as this one, the two-year cut-off for the reach-back period "arbitrarily" allows a Madoff Securities investor who withdrew all of his funds in November 2006 to keep the entirety of his "profits."

499 B.R. at 429.

19. The arguments made to the District Court all assumed that the situation where cash was withdrawn from a Madoff Securities account and a subsequent deposit of cash was made into a different Madoff Securities account was a base case where the deposit would be treated as 100% principal:

> Defendants argue that an inter-account transfer of profits made before the reach-back period should receive the same treatment as would occur if the sender withdrew the profits prior to the reach-back period and gave the funds to the recipient, who then chose to invest those funds in his or her own account. In this hypothetical scenario, the sender's withdrawal would not be subject to avoidance because it occurred before the reach-back period, and the recipient's investment would be treated as principal in the recipient's account (and thus would be credited against any withdrawals).

499 BR. at 428.

20. In short, the Antecedent Debt decision did not deal directly with the instant facts, but the logic of the decision, like the Trustee's logic in his moving papers in this proceeding, is

6

consistent with not treating the establishment and funding of the Roth IRA as an inter-account transfer.

**WHEREFORE**, Lawrence Elins respectfully requests that the Court deny the Inter-Account Transfer Motion, at least with regard to the Elins IRA Claim, allow the Elins IRA Claim in the amount of $$3,821,890, and grant such other and further relief as is just and proper.

Dated:  May 16, 2014

                                         **KLEINBERG, KAPLAN, WOLF & COHEN, P.C.**

                                         By:  /s/ Matthew J. Gold
                                                 David Parker
                                                 Matthew J. Gold
                                                 551 Fifth Avenue
                                                 New York, New York 10176
                                                 Tel. No.: (212) 986-6000
                                                 Fax No.: (212) 986-8866

                                                 Counsel for Lawrence Elins