**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------
In re:

BERNARD L. MADOFF,

                Debtor
-------------------------------------------------------------

SECURITIES INVESTOR PROTECTION          Adv. Pro. No. 08-01789 (BRL)
CORPORATION,

                                                           SIPA Liquidation
                Plaintiff,          (Substantively Consolidated)

        v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.
-------------------------------------------------------------

**MARION APPLE'S MEMORANDUM OF LAW IN OPPOSITION TO THE TRUSTEE'S MOTION AFFIRMING APPLICATION OF NET INVESTMENT METHOD TO DETERMINATION OF CUSTOMER TRANSFERS BETWEEN BLMIS ACCOUNTS**

      For her Memorandum of Law in Opposition to the Trustee's Motion Affirming Application of Net Investment Method to Determination of Customer Transfers Between BLMIS Accounts (the "Motion"), Marion Apple states as follows:

      1.    Ms. Apple objects to the Trustee's application of the net investment method to the determination of customer transfers between BLMIS accounts. In support of this objection, Ms. Apple relies upon and incorporates by reference all of the opposition papers filed by other BLMIS investors, including but not limited to those opposition papers filed on behalf of Samdia Family, LP (ECF Document No 6640), Michael Most (ECF Document No. 6670), Edward A.

Zraick, Jr., et al. (ECF Document No. 6687), Brian Ross (ECF Document No. 6702), Lawrence Elins (ECF Document No. 6707) and various other Customers (ECF Document No. 6708).

2. By way of background, Ms. Apple had no account with BLMIS prior to May 18, 2000. In 2000, Ms. Apple's husband passed away, and Ms. Apple inherited his assets, including $1,372,028.63 that was in her husband's account at BLMIS. (Affidavit of Marion E. Apple ("Apple Aff.") at ¶ 2). Ms. Apple could have withdrawn her inheritance from BLMIS at that time, but instead Ms. Apple opened a new account with BLMIS and transferred her $1,372,028.63 inheritance into that account ("the New BLMIS Account"). *Id.* This was the functional equivalent of making a new deposit of $1,372,028.63.

3. After opening the New BLMIS Account, Ms. Apple made additional deposits. *Id*.

4. For the period from 2000 to 2008, whenever Ms. Apple made a withdrawal from the New BLMIS Account, she paid income taxes on gains realized on the funds. *Id*. at ¶ 3.

5. After Madoff admitted to operating a Ponzi scheme through the wealth management arm of his business, Ms. Apple received instructions and a form from the Madoff Trustee to use for submitting a customer claim and providing information about her New BLMIS Account. *Id.* at ¶ 5.

6. Ms. Apple filed a timely proof of claim (Claim No. 5243). *Id*. at ¶ 6.

7. On October 19, 2009, Ms. Apple received Notice of Trustee's Determination of Claim, denying her claim in its entirety. *Id*. at ¶ 7. In that Determination, the Madoff Trustee failed to give Ms. Apple "credit" for her full opening balance deposit of $1,372,028.63. *Id.* Instead, the Madoff Trustee has, without any explanation whatsoever, made an "adjustment" to the opening balance, counting it only as $515,000. *Id.* Ms. Apple "requested records to support that adjustment, but the Madoff Trustee has not been willing or able to produce any, and I

2

therefore assume that none exist." *Id.* There is no basis in law or fact for the massive "adjustment" that the Madoff Trustee has made in issuing his Determination with respect to Ms. Apple's claim.

8. On December 17, 2009, Ms. Apple filed her Objections to the Notice of Trustee's Determination of Claim, raising, among other things, the Trustee's improper adjustments of amounts transferred between BLMIS accounts. (ECF Doc. No. 1083). *Id*. at ¶ 8.

9. In 2000, upon her inheritance, Ms. Apple could have withdrawn the entire account balance. Had she done so, the Trustee would have had no ability to "claw back" the money Ms. Apple inherited from her husband. *See* N.Y. C.P.L.R. § 213 (six-year statute of limitations).

10. Ms. Apple's deposits, including her initial deposit, were calculated by the Trustee to be in the total amount of $1,542,801.50. According to the Trustee's calculations, Ms. Apple has withdrawn only $1,095,467.18 from her BLMIS account. As such, even under the Trustee's definition, Ms. Apple's total "net equity" in her BLMIS account is $447,334.32.

11. Nonetheless, the Trustee "adjusted" and reduced the amount of Ms. Apple's initial account balance and transfer in 2000 from $1,372,028.63 to $515,121.94, on grounds that the account balance included "fictitious" gains. (Notice of Trustee's Determination of Claim at p. 4). No documentation was provided by the Trustee to support this adjustment. *Id.*

*12.* The Trustee concluded that, instead of net equity of $447,334.32, Ms. Apple had a "negative" account balance, having determined that withdrawals exceeded deposits. Again, the Trustee offered no documentary support for these conclusions. *Id.*

13. The records of which Ms. Apple are aware, and which she has provided to the Trustee, indicate net equity of $447,334.32, using the Trustee's "money in/money out" analysis.

3

14. Further, in the years Ms. Apple made withdrawals from her account, she paid "real" income tax on gains realized on the funds in the account. Ms. Apple has no recourse to amend her returns in order to obtain a refund to reflect losses in the account, the three-year statute of limitation having passed.

15. The full amount of funds in Ms. Apple's account in 2000 was "real." It is inconceivable that those funds are being treated by the Trustee as including "fictitious gains" solely because Ms. Apple made the decision to keep her inheritance in a Madoff account instead of moving it, at the time of the inheritance, to another type of investment. Fairness requires that the money be treated the same whether she kept it with Madoff or moved it elsewhere. Further, had Ms. Apple withdrawn the funds in 2000, instead of opening a new account, the Trustee would have no standing to clawback her inheritance. There being no documentary evidence to contradict the balance in the account at the time of the inheritance, the Court should apply the Trustee's own net equity method and find that Ms. Apple's net equity for purposes of calculating her claim under the Securities Investor Protection Act of 1970, is at least $447,334.32.

Dated: May 16, 2014

/s/ Lawrence M. Shapiro
Lawrence M. Shapiro, P.A.
Greene Espel PLLP
222 S. Ninth Street
Suite 2200
Minneapolis, MN 55402
LShapiro@GreeneEspel.com
(612) 373-0830