# EXHIBIT D

SONNENSCHEIN NATH & ROSENTHAL LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
cneville@sonnenschein.com

*Attorneys for the Marsha Peshkin IRA*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>           Plaintiff,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>           Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation |

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Marsha Peshkin, hereby objects to the Notice of Trustee's Determination of Claim dated

August 18, 2009 ("Determination Letter"), attached as Exhibit A, as described herein.

### BACKGROUND

1.    In or about June, 2002, Marsha Peshkin opened an account (Account No. 1-ZR312-

3) with Bernard L. Madoff Investment Securities LLC ("Madoff"). Mrs. Peshkin established the

account as a self directed Individual Retirement Account designating Retirement Accounts, Inc.,

as Trustee.[1] A copy of the Self-Directed Individual Retirement Account Application is annexed

---

[1] In 2004, First Trust Corporation, Retirement Accounts, Inc and other entities were consolidated into a company called FISERV Investment Support Services ("FISERV"). On information and belief, Madoff directed that all IRA and other retirement plans be administered through FISERV. FISERV declined to file a claim.

hereto as Exhibit B. The account was opened in the name of Retirement Accts Inc. as Custodian

of the IRA FBO Marsha Peshkin (the "Peshkin IRA Account"). [2]

2.    The Peshkin IRA Account was initially funded by direct rollover from the business

retirement plan maintained by Mrs. Peshkin's husband, Roy Peshkin, with Madoff (the

"Superweb Press DB Plan Account") upon his death.  The statement for Superweb Press DB

Plan Account (No.1 ZB039) for the period ended June 30, 2002 shows a transfer of $736,454.43

on or about June 21, 2002 to Account No. 1 ZR 312-30.  A copy of the statement is attached

hereto as Exhibit C.  In addition, Madoff sent Retirement Accounts, as the custodian of the

Peshkin Ira Account, and Mrs. Peshkin confirmation of the transfer of $736,454.43 dated June

21, 2002,  A copy of the credit advice is annexed hereto as Exhibit D.

3.    From the creation of the account, in addition to the communications from Madoff

regarding the account, Mrs. Peshkin regularly received quarterly statements from FISERV,

including a statement for the period from October 1, 2008 through December 31, 2008 (the

"Fourth Quarter 2008 Statement"), reflecting the balance in her brokerage account in securities

and cash, as well as transactions within the account and from the account.  A copy of the Fourth

Quarter 2008 Statement showing a balance of $1,475,026.97 is annexed hereto as Exhibit  E.

4.    Mrs. Peshkin made other deposits into the  Peshkin IRA Account,  including a

transfer into Madoff on December 1, 2008 of $125,000, which, with transfers from the

Superweb DB Plan Account, totaled $1,162,506.53, and she withdrew from the account a total

of $450,000.

5.    On December 11, 2008, an action was commenced against Madoff by the Securities

& Exchange Commission in the United States District Court for the Southern District of New

York.  On December 15, 2008, this liquidation proceeding was commenced pursuant to the

---

[2]    All personal information relating to the Peshkin IRA Account has been redacted for security reasons.

Securities Investment Protection Act ("SIPA"). See Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("Trustee"), charged, *inter alia*, with overseeing the liquidation of Madoff and processing customer claims for money pursuant to SIPA. Id.; 15 U.S.C. 78fff-1(a).

6.     On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to Madoff customers and setting forth claim-filing deadlines. See Order [Dkt. No. 12].

7.     The December 23, 2008 Order further provided that, to the extent the Madoff Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, **and the reason therefor** . . . ." See Order at 6 (emphasis added) [Dkt. No. 12].

8.     On or about February 18, 2009, Mrs. Peshkin timely filed a claim for the Peshkin IRA Account for securities (the "Peshkin IRA Customer Claim") based on the November 30, 2008 statement from Madoff in the amount of $1,397,245.83 (the "Final Madoff Statement") plus a subsequent $125,000 deposit and the Fourth Quarter 2008 Statement, among other supporting documentation. A copy of the Peshkin IRA Customer Claim is attached as Exhibit F.

9.     On August 18, 2009, the Trustee sent Mrs. Peshkin  the Determination Letter rejecting the claim for $1,397,245.83 and stating she was only entitled to a  payment of $176,354.66 based on (a) the total in the Peshkin IRA Account less withdrawals, and (b) the total investments in the Superweb DB Plan Account, less any appreciation. [3]

---

[3] There is no dispute that the Peshkin Ira Account is a customer account within the meaning of SIPA.

17653668

3

## GROUNDS FOR OBJECTION

10. **First Objection.** The Determination Letter fails to comply with this Court's
December 23, 2008 Order, which directs the Trustee to satisfy customer claims in accordance
"with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12]. The Peshkin
IRA Customer Claim was evidenced by the Final Madoff Statement showing a final balance of
$1,397,245.83 and listing the securities purportedly purchased for the account, which reflects the
"Debtor's books and records" and by which the Trustee is bound absent proof that the owner of
the Peshkin IRA Account did not have a "legitimate expectation" that the balance on the Final
Madoff Statement, confirmations, credit advices and the quarterly FISERV statements
represented her property.

11. **Second Objection.** The Trustee failed to set forth a legal basis for the position he
has taken for the calculation of the claim   *See* Determination Letter.  The Determination Letter:

(a)      does not clearly provide "the reason" for the disallowance, as required
by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)      is insufficient to rebut the prima facie validity of the Customer Claim
as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f);

(c)      violates general principles of applicable law requiring that an objection
to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which
the objection is based. *See, e.g.,* Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n
objection to a claim should . . . meet the [pleading] standards of an answer; *In re Enron Corp.,*
No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same); and

(d)      includes an exhibit which purportedly calculates the money deposited
less subsequent withdrawals, but is completely unsubstantiated..

12.  **Third Objection.**  The Trustee has failed to fulfill the requirement that he honor the

legitimate expectations of a customer.

13.  The legislative history of SIPA makes clear that Congress' intent in enacting the

legislation was to protect the legitimate expectations of customers.  Congressman Robert

Eckhardt, (D) Texas, sponsor of amendments to SIPA to increase the amount of advance

available to customers and expedite the process, commented on the purpose of the legislation as

follows:

> "Under present law, because securities belonging to customers
> may have been lost, improperly hypothecated, misappropriated,
> *never purchased* or even stolen, it is not always possible to
> provide to customers that which they expect to receive, that is,
> securities which they maintained in their brokerage account. . . .
> By seeking to make customer accounts whole and returning them
> to customers in the form they existed on the filing date, the
> amendments  .  .  .  would  satisfy  the  customers'  legitimate
> expectations . . . ."

S. Rep. No. 95-763, at 2 (1978) (*emphasis added*).

> A customer generally expects to receive *what he believes* is in his
> account at the time the stockbroker ceases business. But because
> securities may have been lost, improperly hypothecated,
> misappropriated, *never purchased*, or even stolen, it is not always
> possible to provide to customers that which they expect to
> receive, that is, securities which they maintained in their
> brokerage account. . . . By seeking to make customer accounts
> whole and returning them to customers in the form they existed
> on the filing date, the amendments . . . would satisfy customers'
> legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

14.  The Securities Investor Protection Corporation ("SIPC") acknowledged that it was

bound by the statute and the rules to satisfy the reasonable expectations of customers even when

the securities had never been purchased, in the brief it submitted to the Court of Appeals for the

Second Circuit as follows:

> Reasonable and legitimate expectations on the filing date are controlling even where inconsistent with transaction reality. Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase , the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits of SIPA) even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase...[T]his emphasis on the reasonable and legitimate customer expectations frequently yields much greater customer protection than would be the case if the transaction reality, not the claimants expectations, were controlling, as this court's earlier opinion in this liquidation well illustrates.

Brief of the Appellant SIPC at 23-24.

15.    Based on regular statements and other communications received from Madoff and FISERV, Mrs. Peshkin at all times reasonably believed and expected that Madoff executed such transactions and that the Peshkin IRA Account actually held such securities.

16.    The Trustee's position in the Madoff case is completely inconsistent with the purpose and goals of SIPA and the position that SIPC, the corporation charged with administering the Act, has taken unequivocally with respect to the treatment of customers in accordance with their reasonable expectations reflected in the communications from the broker-dealer.

17.    **Fourth Objection.**  The Trustee failed to set forth a legal basis  for the position he has taken that he can reduce the amount of the claim by  appreciation in the Superweb DB Plan Account and appreciation in the Peshkin IRA Account or calculate the claim by counting only investment principal less withdrawals.   No legal basis for the method exists.  The  Trustee's calculation violates SIPA.

18.   15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b).  The Trustee calculates "net equity" by reducing the principal contributed to the account less any withdrawals or appreciation, without regard to any gains reflected in the Final Madoff Statement and any prior statement delivered by Madoff and/or FISERV to the customer.   This is incorrect for the following reasons:

(a)      the Trustee's method of calculating the customer claim is inconsistent with the language of the statute.  SIPA defines a customer's net equity claim as the value of the customer's "securities positions" in customer's account, less any amount the customer owes the debtor, as of the date of the filing of the SIPA liquidation:

> "The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer . . .; minus
>
> (B) any indebtedness of such customer to the debtor on the filing date . . ."[4]

15 U.S.C. § 78lll(11).  The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b)      The Trustee's method is inconsistent with the Rules promulgated under SIPA.  The Series 500 Rules promulgated under SIPA by the Securities Investor Protection

---

[4]  The "indebtedness" of the customer to the debtor refers to cash or securities owed to the debtor, which is most often in the context of a customer having borrowed from the debtor on margin. *See, e.g.*, H.R. Rep. No. 95-746 at 21 (1977) (describing customers owing cash or securities to the stockbroker as "margin customers"); *Rich v. NYSE*, 522 F.2d 153, 156 (2d Cir. 1975) (noting that, under the 1970 statutory regime, when there were shortages in available securities to satisfy "net equity" claims, customers received cash for their securities "less, in the case of holders of margin accounts, amounts owed" to the broker); *In re First Street Sec. Corp.*, 34 B.R. 492, 497 (Bankr. S.D. Fla. 1983) (offsetting against claim amount of indebtedness customer owed to the debtor where unauthorized stock purchase was funded in part by borrowing on margin).

Corporation ('SIPC") provide for the classification of claims for cash or securities in accordance with the written transaction confirmations sent by the broker-dealer to the customer. 17 C.F.R. 300.500. Pursuant to the Rule, a customer has a claim for securities if the customer has received written confirmation that the securities have been purchased or sold for the account.

      (c)     The Trustee's method is inconsistent with the legislative history of the statute. SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The Madoff and FISERV statements and confirmations sent to the custodian for the Peshkin IRA Account and Mrs. Peshkin indicated that the Peshkin IRA Account owned a list of blue chip securities. It makes no difference whether the securities were ever actually purchased.

      (d)     The Trustee's formula is an improper and wholly inadequate measure of loss. Mrs. Peshkin deposited funds with Madoff in the expectation the amount would grow, the Peshkin IRA Accounts statements showed such growth, and the balance on the Final Madoff Statement reflects the benefit of this bargain. In *Visconsi v. Lehman Brothers, Inc.*, No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007) the Court declined to set aside an arbitration award that appeared to apply an expectancy measure of damages against a successor in a Ponzi scheme case and rejected the money in / money out formula as not reflecting the expectations of the parties. *Id.* The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttadauria, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope – indeed a reasonable expectation – that it would grow. Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals,

is a wholly inadequate measure of damages. Had Gruttadauria invested Plaintiffs' money as requested, their funds would have likely grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker . . . , would have placed their money in the stock market during one of the strongest bull markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Id.* This applies precisely to the Goldstein Trust's claim.

(e)    The Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings.  For example, in the *New Times* SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that if broker-dealer customers have been led to believe that "real existing" securities had been purchased for their accounts, then those customers are entitled to the full value of their securities positions as of the filing date, even if that value represents a substantial increase from the purported purchase price of the securities and even if the securities had never been purchased.  Harbeck testified as follows:

Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether – if they triple in value, you'll get the securities. . . . Even if they're not there.

Court: Even if they're not there.

Harbeck: Correct.

Court: In other words, if the money was diverted, converted –

Harbeck: And the securities were never purchased.

Court. Okay.

Harbeck: And if those positions triple, we will gladly give the
people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y.

July 28, 2000) (Exhibit C).

Moreover, SIPC faced very similar circumstances in the New Times Securities Services,

Inc. ("New Times") liquidation and took a very different position than it is taking in the Madoff

case in support of the Trustee. There, the New Times Trustee's position on "net equity" was in

full accord with SIPA, and thus directly contrary to the Trustee's position in this case.

Specifically, with respect to any claims that were based on confirmations and account statements

reflecting securities positions in "real" securities that could have been purchased (i.e., securities

that actually existed on the public market and whose valuations were objectively and publicly

verifiable by the customers), the New Times Trustee allowed all such net equity claims to the

full extent of the filing date valuations of those securities, even though none of the securities

identified in those records had ever, in fact, been purchased by the broker-dealer. [5]

(f)    The Trustee's determination is inconsistent with the case law. The

Second Circuit's discussion of SIPC's claims processing in *New Times,* the only case in this

jurisdiction dealing with the issue in the Madoff case, further indicates that, with respect to

---

[5] As with Madoff Securities and Bernard Madoff, New Times Securities and its principal, William Goren,
defrauded scores of investors by providing them with confirmations and account statements reflecting purported
securities investments made on their behalf when, in fact, no such investments had been made and their money had,
instead, been misappropriated for other purposes. Two of the investment opportunities Goren purported to offer
were: (1) money-market funds that were entirely fictitious (the "Fictitious New Age Funds"); and (2) mutual funds
that were entirely real, such as those offered by The Vanguard Group and Putnam Investments (the "Real
Securities"). *See In re New Times Sec. Services, Inc.*, 371 F.3d 68, 71-72 (2d Cir. 2004) (*"New Times I"*). Goren's
was "a classic Ponzi scheme," *Id.* at 72 n.2, wherein new investors' money was used to pay earlier investors.

Approximately 900 customers filed claims in the New Times liquidation: 726 for whom the "Real Securities" were
purportedly purchased; 174 for whom the "Fictitious New Age Funds" were purportedly purchased. Consistent
with SIPA and its legislative history, the New Times Trustee appropriately applied SIPA's net equity definition to
the "Real Securities" customers' claims – meaning he paid them according to the full value of those securities
positions as of the date of the liquidation filing. When challenged by "Fictitious New Age Funds" customers who
had objected that they had not received the same treatment, SIPC and the New Times Trustee (with the apparent
concurrence of the SEC) vigorously defended their approach in court.

customers who thought they were invested in listed securities, SIPC properly paid customer

claims based on the customers' final account statements, even where the securities had never

been purchased:

> Meanwhile, investors who were misled . . . to believe that they
> were investing in mutual funds that in reality existed were treated
> much more favorably. Although they were not actually invested in
> those real funds – because Goren never executed the transactions –
> the information that these claimants received on their account
> statements mirrored what would have happened had the given
> transaction been executed. As a result, the Trustee deemed those
> customers' claims to be "securities claims" eligible to receive up
> to $500,000 in SIPC advances. The Trustee indicates that this
> disparate treatment was justified because he could purchase real,
> existing securities to satisfy such securities claims. Furthermore,
> the Trustee notes that, if they were checking on their mutual
> funds, the "securities claimants," . . . could have confirmed the
> existence of those funds and tracked the funds' performance
> against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC

at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005):

> "[R]easonable and legitimate claimant expectations on the filing
> date are controlling even where inconsistent with transactional
> reality. Thus, for example, where a claimant orders a securities
> purchase and receives a written confirmation statement reflecting
> that purchase, the claimant generally has a reasonable expectation
> that he or she holds the securities identified in the confirmation
> and therefore generally is entitled to recover those securities
> (within the limits imposed by SIPA), even where the purchase
> never actually occurred and the debtor instead converted the cash
> deposited by the claimant to fund that purchase. . . . [T]his
> emphasis on reasonable and legitimate claimant expectations
> frequently yields much greater 'customer' protection than would
> be the case if transactional reality, not claimant expectations, were
> controlling, as this Court's earlier opinion in this liquidation well
> illustrates."

    (g)    The Trustee's position in the Madoff case is contradicted, not only by

SIPC's prior treatment of customers in the New Times case, but also by a statement that

SIPC's general counsel, Josephine Wang, gave to the press on December 16, 2008 wherein

Ms. Wang acknowledged that a Madoff customer is entitled to the securities in his account:

> Based on a conversation with the SIPC general counsel, Josephine
> Wang, if clients were presented statements and had reason to
> believe that the securities were in fact owned, the SIPC will be
> required to buy these securities in the open market to make the
> customer whole up to $500K each.  So if Madoff client number
> 1234 was given a statement showing they owned 1000 GOOG
> shares, even if a transaction never took place, the SIPC has to buy
> and replace the 1000 GOOG shares.

December 16, 2008 Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html.

        (h)     the Trustee's methodology also conflicts with other federal laws.  For

example,  Rev. Proc.2009-20, issued by Commissioner Shulman on March 17, 2009,

expressly recognizes the income earned by customers, on which they paid taxes annually.  Yet

the Trustee's position is that the income earned by customers on their investments is not their

money.  In addition, some customers were required to take distribution from their retirement

accounts.  Yet the Trustee is deducting from their customer claim the mandatory withdrawals

that the customers were required by law to take.

     19.  In sum, the Trustee  has created his own definition of "net equity."  The  procedure

is designed not for the benefit of Madoff victims but rather so that the Trustee can avoid paying

SIPC insurance to the thousands of Madoff investors who, like Mrs. Peshkin have depended

upon their Madoff investments for their current and future living expenses.

     20.  **Fifth Objection.**  The Trustee's action in reducing the amount shown on the

Peshkin IRA Customer Claim by any prior gains reflected on the Final Madoff Statement or

prior statements is an attempt to avoid such gains without alleging any grounds for avoidance or

proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions.  Any

such disallowance is improper and unjustified, and the Determination Letter should be stricken on that ground alone. *See* Fed. R. Bankr. P. 7001(1); 7008..

21. **Sixth Objection.** The Trustee's action in reducing the amount shown on the Peshkin IRA Customer Claim by gains in the Superweb DB Plan Account is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. Any such disallowance is improper and unjustified, and the Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008. In addition, the avoidance of those gains have been taken well beyond any limitations period for avoidance of a claim under either state or federal law.

22. **Seventh Objection.** SIPA provides that (a) SIPC shall pay the first $500,000 of each customer claim, and (b) customers have an unsecured claim against customer property for the balance of their claims which is paid pro rata with other customers. *See* 15 U.S.C. § 78fff-3(a) ("In order to provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . . claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in . . . customer property on the basis and to the extent of their net equities"). Here, the Trustee has acknowledged in the Determination Letter that $176,354.66 of the Peshkin Ira Customer Claim is undisputed. As such, SIPC is obligated to pay $176,354.66 regardless of how the disputed portion of the claim is resolved. The Trustee has recently stated a willingness to make payments of undisputed claims along the lines set forth herein, but the proposed Assignment and Release which accompanied the Trustee's Notice of Determination does not adequately preserve Mrs. Peshkin's full rights in connection with the contested portion of her claim including, without limitation, her ability to continue to assert the rights in the

Objections herein, and it also requires certain assignments and releases which the Trustee is not

authorized to obtain. *See* Determination Letter (Exhibit A).

23. **Eighth Objection.** As condition precedent to Mrs. Peshkin's receipt of any SIPC

funds (including undisputed amounts), the Trustee is requiring the execution of a Partial

Assignment and Release that would "release and forever discharge the SIPA Trustee and SIPC .

. . from any and all claims arising out of or relating to the [Peshkin IRA] Account, the Customer

Claim filed with the SIPA Trustee . . ., and any and all circumstances giving rise to the

Customer Claim . . . ." *See* Determination Letter and Partial Assignment and Release at Exhibit

A. There is no legal basis for requiring such a Partial Assignment and Release, and the Trustee's

actions attempt to compel Mrs. Peshkin to waive substantial rights which are disputed as a

condition to receiving amounts that are undisputed. Certainly, conditioning the payment of

funds to which customers are statutorily entitled on the execution of a release is contrary to the

provisions of SIPA which direct that customer claims be paid "promptly." *See* 15 U.S.C. §

78fff(a)(1) (2009) (stating that one of the purposes of a SIPA liquidation proceeding is "to

distribute customer property and . . . otherwise satisfy net equity claims of customers . . . as

promptly as possible after the appointment of a trustee."); *see also* 15 U.S.C. § 78fff-2(b) (2009)

("[T]he trustee shall promptly discharge . . . all obligations of the debtor to a customer by the . . .

making of payments to or for the account of such customer."). Moreover, the demand for a

release and assignment violates specific provisions of SIPA providing limited subrogation rights

to the Trustee, which do not include the assignment and release sought by the Trustee. *See, e.g.,*

15 U.S.C. § 78fff(a)(3) (2009) (providing that Trustee has "rights of subrogation as provided in

this chapter"); *see, e.g.* 15 U.S.C. § 78fff-2(c)(3) (providing that trustee's rights as subrogee are

subordinate to rights of customers to customer property). In addition, the Trustee's demand

should be stricken as contrary to public policy.

17653668

14

24. **Ninth Objection.** The Peshkin IRA Account was established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* whose provisions preempt state fraudulent conveyance law, upon which the Trustee presumably relies pursuant to 11 U.S.C. § 544. 29 U.S.C. § 1144(a) (the provisions of ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section [1003(a)]. . .").

As evidence of Congressional intent to protect ERISA-qualified plans, the Bankruptcy Code was amended in 2005 to protect such plans from the claims of creditors. 11 U.S.C. § 541(b)(7)(a)(i)(I) (exempting from property of the estate "any amount withheld by an employer from the wages of employees for payment as contributions to an employee benefit plan that is subject to Title I of the Employee Retirement Income Security Act of 1974 . . ."). *See also, Patterson v. Shumate*, 504 U.S. 753 (1992) (holding that debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2)).

25. **Tenth Objection.** The Peshkin IRA Account was established as an individual retirement, which under the laws of the State of Colorado where the account was established and administered, or under the laws of the State of New York, where the funds were deposited are exempt from judgment and the Trustee's efforts to reduce the amounts due in the account under any theory. See e.g. Colorado C.R.S. 13-54-102 (2008); New York C.P.L.R. 5205(c). The same state laws protect the funds in the account and distribution from the Superweb Press DP Plan Account. The Trustee's reduction of the funds in the Superweb Press DP Plan Account is in violation of state law.

26. **Alternate Considerations.** In the event that the Court should determine that customer claims should not be allowed in the amount of the Final BMIS Statement, then in the alternative, the customer is entitled to recover interest or appreciation the investments based upon the following.

(a)     Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. See, e.g., N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, et seq. Accordingly, the Peshkin IRA Customer Claim should be recalculated by adding interest to all funds deposited.

(b)     Under New York law, which is applicable here, customers are entitled to any returns Madoff earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by BMIS on the customer's deposits. *See, e.g., Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

(c)     Mrs. Peskin is entitled to interest on her investment under federal securities laws. In *Randall v. Loftsgaarden*, 478 U.S. 647 (1986), the Supreme Court analyzed the different measures of recovery of "actual damages" for fraud, primarily including rescission and restitution. The *Randall* Court concluded that Congress intended to deter wrongdoers, and hence, that wide latitude in choosing the measure of damages was warranted. *See id.* at 664 (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)). The Randall Court continued by holding that:

> This deterrent purpose is ill-served by a too rigid insistence on
> limiting plaintiffs to recovery of their "net economic loss."

*Id.* at 664 (citing *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 940 (2d Cir. 1984)).

## RESERVATION OF RIGHTS

27.   Mrs. Peshkin reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Marsha Peshkin's right to object on any additional grounds.

28.   Mrs. Peshkin reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery. See Fed. R. Bankr. P. 9014.

29.   Mrs. Peshkin reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever

30.   Mrs. Peshkin incorporates by reference all reservations of rights set forth in Peshkin IRA Customer Claim.

## RELIEF REQUESTED

For the reasons stated herein, the Peshkin IRA Customer Claim should be allowed in its entirety in the amount of $1,522,245.83, which is the amount stated on her Final Madoff Statement, plus the deposit of $125,000 received by Madoff in December 2008, plus interest from the date of the Determination letter.

For the reasons stated herein, the Court should direct SIPC to immediately replace the securities in the Peshkin IRA Account based on her Final Madoff Statement up to the amount of $500,000.

For the reasons stated herein, the Determination Letter should be stricken.

Mrs.Peshkin requests such other relief as may be just and equitable.

Dated: September 16, 2009                SONNENSCHEIN NATH & ROSENTHAL LLP


                                         By:    /s/ Carole Neville
                                               Carole Neville
                                               1221 Avenue of the Americas
                                               New York, New York 10020
                                               Telephone:  (212) 768-6700
                                               Facsimile:  (212) 768-6800

                                         *Attorneys for the Sonnenschein Investors*

17653668

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff-Applicant,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-01789-BRL<br><br>SIPA Liquidation |

## ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that Marsha Peshkin (IRA), located at 1416 Harbour Point Dr., N. Palm Beach, Florida 33410 (hereinafter referred to as the "Assignor") in consideration of the payment of $176,354.66 to satisfy her claim for customer protection (the "Customer Claim", having been designated Claim #002628) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for herself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1ZR312, the "BLMIS Account"), which gave rise to the allowed Customer Claim for securities filed by

300026415

Assignor against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $176,354.66 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated August 17, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter may

300026415                                    2

have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order.  Nothing in this Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having his customer claim re-determined in accordance with any such Court order.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Assignment and Release.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
    MARSHA PESHKIN

Sworn and subscribed before me this
_____ day of _____, 2009.

_____
   Notary Public

300026415                                   3

# EXHIBIT B



**RETIREMENT ACCOUNTS, INC.**

Retirement Accounts, Inc.        Please direct mail to:
717 17th Street, Suite 1700      P.O. Box 173785
Denver, Colorado 80202-3323      Denver, CO 80217-3785
1-800-325-4352 *FP $w $oo $w/rap*

## Self-Directed Individual Retirement Account Application
Adoption Agreement



RECEIVED
JUN 1 3 2002
RETIREMENT ACCOUNTS, INC.

~~02~~

### Establishment and Appointment

I, the undersigned Account Owner, hereby establish a Traditional Individual Retirement Account ("IRA") under the Retirement Accounts, Inc. ("RAI") IRA Plan and Trust Agreement which is incorporated within this Adoption Agreement by this reference. I designate Retirement Accounts, Inc. as Trustee of this IRA and make the following declarations.

#### Account Owner Information *(please type or print)*

Full Name  Marsha Peshkin

Mailing Address _____

North Palm Beach FL 33410
City/State/Zip

Home Telephone (_____)

Business Telephone (_____)

Social Security Number _____

Birth Date  7/25/53

### Your Beneficiary Designation

I designate the following persons as primary and contingent beneficiaries to receive my interest in this Traditional IRA according to the terms of the IRA Plan and Trust Agreement, hereby revoking any such prior designations made by me. *(Attach additional sheets if necessary and indicate % for each beneficiary.)*

**1. Primary Beneficiary**  See Attached

Full Name

Mailing Address

City/State/Zip

Birth Date

Social Security Number

Relationship

Share %

### Consent of Spouse for Community Property Assets

The following must be completed only:

1. If the Account Owner is married and has designated any Primary Beneficiary other than his/her spouse; and

2. If the Account Owner's IRA includes or will include property in which his/her spouse possesses a community property interest or other type of property interest. (As of this printing the community property states are Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and Wisconsin.)

I, the undersigned spouse of the Account Owner named above, hereby consent to and accept the beneficiary designation, without regard to whether I survive or predecease my spouse.

Signature of Spouse
X

Date

**2. Contingent Beneficiary** *(in case of death of primary beneficiary)*

Full Name

Mailing Address

City/State/Zip

Birth Date

Social Security Number

Relationship

Share %

### Designated Representative Information

The following person is hereby appointed as my Designated Representative (D/R) for this Plan subject to the provisions contained in any applicable sections of the Instructions for the Traditional IRA Application.

D/R's Name

Firm Name

Firm Address

City/State/Zip

# Self-Directed Individual Retirement Account
## Application (continued)

D/R's Phone Number (          )

Broker/Dealer

Broker/Dealer's Address

City/State/Zip

### IRA Program Fee Schedule Selection

☑ Simple Fee Schedule

☐ Flexible Fee Schedule

**Are you establishing an IRA-SEP?** ☐ Yes ☑ No

### Cash Investment

I direct RAI to automatically deposit all contributions, rollovers, transfers, earnings and other cash into the FDIC-insured Peak Money Market Account. I understand that my cash is available whenever needed for other investments or withdrawals.

### Trade Authorization by Phone (TAP)

I have read the Trade Authorization by Phone (TAP) section of the instructions to the Traditional IRA Application, and I direct RAI to honor transaction requests made by telephone, on behalf of my account, in accordance with that Authorization.

☑ Yes ☐ No

*(If left blank, telephone trading requests will be accepted.)*

### Check Enclosure Summary
### (Contribution Description)

IRA Contribution for 20_____        $

IRA Contribution for 20_____        $

Employer SEP Contribution for 20_____        $

Employer SEP Contribution for 20_____        $

Cash Rollover Contribution        $

Establishment Fee*
($25 Simple, $50 Flexible)        $ 25

Annual Administration Fee
(Simple*: $58; Flexible:
.4% of asset value billed biannually)        $ 58

Total Enclosed *(Make checks payable to
Retirement Accounts, Inc.)*        $ 83

*(*) These fees must be paid at the time of application.*

### Your Acknowledgement and Signature

I, the undersigned, hereby acknowledge that I have read and understand all of the terms and conditions of the Instructions and Fee Schedule, Self-Directed Traditional IRA Application/Adoption Agreement, IRA Plan and Trust Agreement and IRA Disclosure Statement (collectively, "Plan Documents") and that I have retained the Plan Documents including a copy of this completed Adoption Agreement. I further acknowledge that I understand and agree to the Arbitration Statement and the Trustee's IRA Fee Schedule that are part of the Plan Documents and consent to have my conversations with RAI recorded.

Account Owner's Signature

X _Marsha Peskin_

Date _6/11/02_

**Please make a copy of this Application for your records.**

Retirement Accounts, Inc. hereby accepts appointment as Trustee of this IRA.

Retirement Accounts, Inc. By:

Account Number *[To be completed by Trustee.]*

TAP ☑ Yes ☐ No

# EXHIBIT C



PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMO TO Y |
|---|---|---|---|---|---|---|---|
| 6/03 | | | | BALANCE FORWARD | | 74,390.91 | |
| | | | | | DIV | | |
| 6/05 | | 195 | 41153 | WELLS FARGO & CO NEW | 89.550 | | |
| | | | | DIV 5/10/02 5/01/02 | | | |
| 6/06 | | 312 | 3833 | PROCTER & GAMBLE CO | 35.900 | | |
| 6/06 | | 208 | 62780 | JP MORGAN CHASE & CO | 42.610 | | |
| 6/06 | | | | AMERICAN EXPRESS COMPANY | DIV | | |
| | | | | PFIZER INC | | | |
| 6/06 | 75,000 | | 79736 | DIV 5/17/02 5/06/02 | 99.540 | 74,655.00 | |
| | | | | U S TREASURY BILL | | | |
| | | | | DUE 9/12/2002 | 9/12/2002 | | |
| 6/07 | | 208 | 44885 | PHARMACIA CORP | 41.210 | | |
| 6/07 | | 286 | 52349 | TEXAS INSTRUMENTS INC | 28.100 | | |
| 6/07 | | 273 | 56981 | VIACOM INC | 50.070 | | |
| | | | | CLASS B NON VOTING SHS | | | |
| 6/07 | | 702 | 59049 | AOL TIME WARNER INC | 17.470 | | |
| 6/07 | | 299 | 70244 | BRISTOL MYERS SQUIBB COMPANY | 29.450 | | |
| 6/07 | 50,000 | | 83053 | U S TREASURY BILL | 99.540 | 49,770.00 | |
| | | | | DUE 9/12/2002 | | | |
| | | | | 9/12/2002 | | | |
| 6/10 | | 468 | 101 | JOHNSON & JOHNSON | 59.170 | | |
| 6/10 | | 377 | 7555 | COCA COLA CO | 54.940 | | |
| 6/10 | | 102 | 11297 | MEDTRONIC INC | 45.650 | | |
| 6/10 | | 325 | 15029 | PHILIP MORRIS COMPANIES INC | 57.560 | | |
| | | | | CONTINUED ON PAGE    2 | | | |

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities Internatio
12 Berl
Mayfair, Londo
Tel 020

SUPERWEB PRESS
DEF BENEFIT PLAN
R PESKIN TRUSTEE
NORTH PALM BEACH    FL    33410

PERIOD ENDING  6/30/02
YOUR ACCOUNT NUMBER  1-ZB039-3-0
PAGE  1

| MADF | **BERNARD L. MADOFF** |
|---|---|
| | INVESTMENT SECURITIES LLC |
| | New York □ London |

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities Internatio
12 Berl
Mayfair, Londo
Tel 020

PAGE 2

PERIOD ENDING 6/30/02

YOUR ACCOUNT NUMBER 1-ZB039-3-0

SUPERWEB PRESS
DEF BENEFIT PLAN
R PESHKIN TRUSTEE
NORTH PALM BEACH          FL 33410

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 6/10 | | 351 | 18761 | MERCK & CO | 54.410 | |
| 6/10 | | 323 | 22493 | MICROSOFT CORP | 50.820 | |
| 6/10 | | 182 | 26225 | MORGAN STANLEY | 44.830 | |
| 6/10 | | 260 | 33589 | PEPSICO INC | 51.900 | |
| 5/10 | | 988 | 37421 | PFIZER INC | 34.510 | |
| 5/10 | | 520 | 48617 | SBC COMMUNICATIONS INC | 33.800 | |
| 5/10 | | 403 | 51618 | AMERICAN INTL GROUP INC | 65.180 | |
| 6/10 | | 159 | 55320 | AMGEN INC | 44.650 | |
| 5/10 | | 429 | 59813 | VERIZON COMMUNICATIONS | 42.650 | |
| 6/10 | | 260 | 63545 | WELLS FARGO & CO NEW | 51.290 | |
| 6/10 | | 234 | 66512 | BANK OF AMERICA | 74.200 | |
| 6/10 | | 702 | 67277 | WAL-MART STORES INC | 55.600 | |
| 6/10 | | 1,053 | 71009 | EXXON MOBIL CORP | 39.340 | |
| 6/10 | | 819 | 73976 | CITI GROUP INC | 42.310 | |
| 6/10 | | 1,530 | 77708 | CISCO SYSTEMS INC | 16.050 | |
| 5/10 | | 1,599 | 81440 | GENERAL ELECTRIC CO | 30.240 | |
| 5/10 | | 364 | 85172 | HOME DEPOT INC | 40.980 | |
| 6/10 | | 494 | 88904 | HEWLETT PACKARD CO | 18.700 | |
| 6/10 | | 286 | 92636 | INTERNATIONAL BUSINESS MACHS | 80.510 | |
| 5/10 | | 1,144 | 96368 | INTEL CORP | 27.820 | |
| 6/10 | | | | EXXON MOBIL CORP | DIV | |
| | | | | DIV 5/13/02 6/10/02 | | |
| | | | | INTERNATIONAL BUSINESS MACHS | DIV | |
| | | | | DIV 5/10/02 6/10/02 | | |
| 6/10 | 550,000 | | 86687 | U S TREASURY BILL | 99.550 | 547,525.00 |
| | | | | DUE 9/12/2002 | | |
| | | | | 9/12/2002 | | |

CONTINUED ON PAGE 3

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



Madoff Securities Internatio.
12 Berl
Mayfair, Londo
Tel 02

Aff

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

PAGE: 3

PERIOD ENDING: 6/30/02

YOUR ACCOUNT NUMBER: 1-ZB039-3-0

YOUR TAX PAYER IDENTIFICATION NUMBER

SUPERWEB PRESS
DEF BENEFIT PLAN
R PESHKIN TRUSTEE
NORTH PALM BEACH    FL    33410

| DATE | BOUGHT RECIEVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMO TO Y |
|------|------|------|------|------|------|------|------|
| 6/11 | | | | JOHNSON & JOHNSON DIV 5/21/02 6/11/02 | DIV | | |
| 6/14 | | | | AMERICAN INTL GROUP INC DIV 6/07/02 6/14/02 | DIV | | |
| 6/21 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 06/21/02 | DIV | | |
| 6/21 | | 16,193 | 87664 | TRANS TO 12B31230 FIDELITY SPARTAN | CN | 736,454.47 | |
| 6/21 | | 25,000 | 87665 | U S TREASURY MONEY MARKET U S TREASURY BILL DUE 9/29/2002 8/29/2002 | 1 99.680 | | |
| 6/21 | | 675,000 | 87665 | U S TREASURY BILL 9/12/2002 DUE 9/12/2002 | 99.610 | | |
| 6/28 | | | | BANK OF AMERICA DIV 6/07/02 6/28/02 | DIV | | |
| 6/28 | | | | PEPSICO INC DIV 6/07/02 6/28/02 | DIV | | |
| 6/29 | 196 | | 10243 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 176.00 | |
| | | | | NEW BALANCE | | 56,874.67 | |
| | 196 | | | SECURITY POSITIONS FIDELITY SPARTAN U S TREASURY MONEY MARKET | MKT PRICE 1 | | |
| | | | | MARKET VALUE OF SECURITIES LONG        SHORT 196.00 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



Madoff Securities Internatio
12 Berk
Mayfair, London
Tel 020

| | | BERNARD L. MADOFF | |
|---|---|---|---|
| MADF | | INVESTMENT SECURITIES LLC | |
| | | New York □ London | |

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

SUPERWEB PRESS
DEF BENEFIT PLAN
SHKIN TRUSTEE
NORTH PALM BEACH    FL    33419

**PERIOD ENDING** 5/30/92

**YOUR ACCOUNT NUMBER** 1-ZB039-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT TO Y |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | 5, |
| | | | | DIVIDENDS | | | |
| | | | | GROSS PROCEEDS FROM SALES | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**Afi
Madoff Securities Internatio
12 Berl
Mayfair, Londo
Tel 020**

**PAGE** 1

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

SUPERWEB PRESS
DEF BENEFIT PLAN
R PUSHKIN TRUSTEE
NORTH PALM BEACH   FL   33410

**PERIOD ENDING** 5/30/02

**YOUR ACCOUNT NUMBER** 1-ZB039-4-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT TO Y |
|------|------------------------|------------------------|-----|-------------|-----------------|-------------------------------|-------------|
|      |                        |                        |     | BALANCE FORWARD |             |                               |             |
| 5/06 | 13                     |                        | 29957 | S & P 100 INDEX |           |                               |             |
|      |                        |                        |     | JUNE 560 CALL | *400          | 533.00                        |             |
| 6/06 |                        | 13                     | 74767 | S & P 100 INDEX | 33.100      |                               |             |
|      |                        |                        |     | JUNE 550 PUT |              |                               |             |
|      |                        |                        |     | NEW BALANCE  |              |                               |             |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# EXHIBIT D



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
212 230-2424
P&S Dept. 212 230-2436
800 334-1343
Fax 212 838-4061

WE HAVE THIS DAY **CREDITED YOUR**
ACCOUNT WITH THE FOLLOWING: **TRANS FROM 1ZB03930**

6/21/02

736,454.43

CLIENT'S ACCOUNT NUMBER

RETIREMENT ACCTS INC CUST IRA
FBO MARSHA PESHKIN
PO BOX 173785
DENVER                    CO 80217

1-ZR312-3

7.1.02    90824.55.003.00

# EXHIBIT E

# Traditional IRA
## October 1, 2008 - December 31, 2008



>03878 5666970 001 008145
MARSHA PESHKIN

NORTH PALM BEACH FL 33410

**Account Name:** MARSHA PESHKIN
**Account Number:**

**Contact:** CLIENT CONNECTION

## ACCOUNT SUMMARY

### REPORTED ACCOUNT VALUE

**Current Period**
| | |
|---|---|
| Brokerage Accounts | $1,475,026.97 |
| *Cash | $32.02 |
| **Total Account Value** | **$1,475,058.99** |

**Prior Period**
| | |
|---|---|
| Total Account Value | $1,250,026.97 |

### CONTRIBUTION AND DISTRIBUTION SUMMARY

**Rollovers**
| | |
|---|---|
| Current Tax Year | $0.00 |

**Contributions**
| | |
|---|---|
| Current Tax Year (2008) | $0.00 |
| Prior Tax Year (2007) | $0.00 |

**Employer Contributions**
| | |
|---|---|
| Current Tax Year (2008) | $0.00 |
| Prior Tax Year (2007) | $0.00 |

**Distributions**
| | |
|---|---|
| Current Tax Year (2008) | $0.00 |
| Current Tax Year Withholding (2008) | $0.00 |
| **Prior Tax Year (2007) | $200,000.00 |
| Prior Tax Year Withholding (2007) | $0.00 |

\* FDIC insurance coverage applies only to deposits held in cash and to certificates of deposit issued by your trustee/custodian. No other investments are FDIC insured through this institution.

\*\* May include distributions that do not apply toward your required minimum distribution.

## IMPORTANT ACCOUNT INFORMATION

Please review the last page of your statement for more important account information and retain this statement for your records. Report any discrepancies to us immediately.

As required by law, the fair market value reported on this statement will be furnished to the Internal Revenue Service on IRS Form 5498, if the account is an IRA, SEP, Simple, or Roth account.

717 17th Street, Ste. 1700, Denver, CO 80202-3331  PO Box 173859, Denver, CO 80217-3859  800-962-4238

*Trust and custodial services provided by Trust Industrial Bank, member FDIC.*



## ACCOUNT INVESTMENTS

> Investment Products: • Not FDIC Insured • No Bank Guarantee • May Lose Value

### BROKERAGE ACCOUNTS

| Description/Account Number | Previous Reported Value | Current Reported Value |
|---|---|---|
| BERNARD L MADOFF BRKG ACCT VALUE ZR312 | 1,250,026.97 | 1,475,026.97 |
| **Total Value of Brokerage Accounts** | | **$1,475,026.97** |

### CASH

| Description | Annual Percentage Yield Earned | Previous Reported Value | Current Reported Value |
|---|---|---|---|
| SAVINGS ACCOUNT | 0.35% | 0.00 | 32.02 |
| **Total Value of Cash** | | | **$32.02** |

**TOTAL ACCOUNT VALUE**      **$1,475,058.99**

## ACCOUNT TRANSACTIONS

| Transaction Date | Transaction | Transaction Description | Transaction Shares | Cash |
|---|---|---|---|---|
| Beginning Cash Balance (as of 10/01/2008) | | | | $0.00 |
| 10/13/2008 | FEE COLLECTION | | | -11.33 |
| 10/13/2008 | FEE COLLECTION | | | -31.00 |
| 10/31/2008 | INTEREST | | | 16.12 |
| 11/05/2008 | FEE REIMBURSEMENT | | | 42.33 |
| 11/13/2008 | PURCHASE | BERNARD L MADOFF BRKG ACCT VALUE | | -100,000.00 |
| 11/13/2008 | TRANSFER OF CASH IN | | | 100,000.00 |
| 11/20/2008 | PURCHASE SETTLEMENT | BERNARD L MADOFF BRKG ACCT VALUE  (As of 11/13/2008) | 100,000.0000 | |



Page 3 of 4

| Transaction Date | Transaction | Transaction Description | Transaction Shares | Cash |
|---|---|---|---|---|
| 11/26/2008 | TRANSFER OF CASH IN | | | 125,000.00 |
| 11/28/2008 | PURCHASE | BERNARD L MADOFF BRKG ACCT VALUE | | -125,000.00 |
| 11/28/2008 | INTEREST | | | 15.90 |
| 12/05/2008 | PURCHASE SETTLEMENT | BERNARD L MADOFF BRKG ACCT VALUE  (As of 11/28/2008) | 125,000.0000 | |
| **Ending Cash Balance**  (as of 12/31/2008) | | | | **$32.02** |

717 17th Street, Ste. 1700, Denver, CO 80202-3331   PO Box 173859, Denver, CO 80217-3859   800-962-4238

*Trust and custodial services provided by Trust Industrial Bank, member FDIC.*

03878 5666970 007757 012730 00002/00002

A Guide to Understanding Your Statement of Account                    Page 4 of 4

## STATEMENT & REVIEW PERIOD

Your statement is a comprehensive summary of your account assets and account activity for the Statement Period indicated on the front of this statement. Additional important account information is also included each period. Please review the entire statement for accuracy. Any discrepancies should be documented in writing and sent to us within 90 days of the date of this statement. If the notice of discrepancies is not received in that time, Trust Industrial Bank (TIB) shall be relieved of any and all liability for the accuracy of the data reported in the statement.

## ACCOUNT INVESTMENTS & ASSET VALUE REPORTING POLICY

The "Account Investments" portion of your statement is separated into different asset categories. The following guidelines may apply, depending upon how your account is invested:

- Dividends paid near the end of the quarter may not appear on this statement.

- "Brokerage Accounts" is a category that reports a cumulative total of all retirement plan assets held by your broker(s), as provided to TIB by your brokerage firm(s). For IRA accounts, assets may be included in the cumulative value in this category which are not individually listed, and TIB does not verify the information provided by your brokerage firm(s). For Qualified Plans and Investment Annuity accounts, broker held assets will be individually listed in their appropriate asset category. Please contact your Financial Representative with questions.

- A column titled "Broker Cash" will appear in the "Account Activity" portion of your statement if cash transactions were reported to us at your Financial Representative's firm. The corresponding transaction description will appear next to the date of entry. Please note that the ending balance listed in the Broker Cash column has not been verified and is held at your brokerage firm (not at TIB). To ensure accuracy of this figure (and all brokerage activity), please consult your Financial Representative. If you wish to pay TIB fees from cash or assets held in your brokerage account, you may ask your Financial Representative to send funds to TIB.

- Individual values for securities that have publicly-quoted prices are reported based solely on such quoted prices, which are obtained from a quotation service or other source generally available to the public. TIB does not guarantee the accuracy of reported values, or whether you will be able to obtain the value indicated on this Account Statement in the event of a sale.

- Values for "alternative assets" are generally reported at their original offering price to investors and are classified into two investment types: alternative equity and alternative debt. On an annual basis (or more frequently, if requested), TIB requests updated valuation information from such persons as general partners of limited partnerships, officers of private corporations and sponsors of other assets it has classified as alternative equity investments. TIB will normally adjust the reported value of a alternative equity investment if the general partner, officer or sponsor provides TIB with an updated value. TIB does not request updated valuation information for assets it classifies as alternative debt investments. TIB does not conduct appraisals of investments and it does not seek to verify any values provided to it. If TIB has not received an updated value from the asset sponsor for a period of two years, it will begin to report the value as "N/A."

- Values reported as "N/A" indicate that updated valuation information was not available at the time of reporting, or that the asset has no value. Please refer to reports received from brokers, general partners, officers or other asset sponsors (or contact these sources directly) with regard to the current operation and status of your chosen asset(s). The reported value of any asset may differ materially from its actual value.

- A legend for the "Price Source" (usually only reported for alternative assets) is as follows:

12 – Market Maker
31 – Principal/Loan Value Outstanding
32 – Original Purchase Cost
33 – Investment Sponsor Reported Value
34 – Plan Administrator Reported Value
35 – Secondary Market Value
36 – Third Party Appraisal
37 – Bankruptcy/Receivership
38 – No Updated Value or Response for Two or More Years
39 – Miscellaneous

A total value for all your assets (by category) is listed in the "Account Summary" portion of this statement. This Account Statement (and the reported values herein) should not be used as the basis for making, retaining or disposing of an investment.

## ACCOUNT TRANSACTIONS

The amount listed with each transaction may not represent funds actually received into your account. It may represent the dollar value of a transaction that affects only asset shares in your account. The liability of TIB to make payment from your account at all times is limited to available liquid assets in the account.

## INVESTMENT RESPONSIBILITY

You (in conjunction with your Financial Representative) have sole authority and discretion to manage the investment of all assets in your account. As a DIRECTED trustee, we process your instructions (or your financial representative's if you chose to appoint one) and we provide account reporting and recordkeeping services. We do not give investment, tax or legal advice, provide retail investment products, perform independent investment valuations or appraisals, or maintain an agency relationship with your financial representative. TIB is not responsible for the performance of your investments.

## CUSTODY OF ASSETS

TIB may consolidate the information it receives from your Financial Representative, brokerage firm, or other investment sponsors (i.e., mutual funds, insurance companies, limited partnerships, banks, etc.) to report all assets held in your retirement plan on this Account Statement. TIB, however, may not have physical custody of all assets listed on this statement. Assets may be held at the investment sponsor, your brokerage firm, TIB or another designated site. In addition, many assets do not generate a physical certificate. Before selling an asset in your retirement plan, you and/or your Financial Representative should check with the designated brokerage firm or TIB to determine the custody of your asset(s). By determining the custody of an asset before a transaction or confirmation is received by TIB, we are able to reduce processing time and ensure proper asset delivery, if applicable.

## TAX INFORMATION

The December 31 year-end value of assets listed on your IRA Statement of Account will be furnished to the Internal Revenue Service (this does not apply to Qualified Plans or 403(b)(7) accounts). Please keep your December 31 IRA Statement of Account for your records.

NOTE: Investments in your account are not insured by the FDIC; are not deposits or obligations of and are not guaranteed by TIB; and are subject to investment risk, including the possible loss of your entire investment.

Uninvested cash deposits held in your account (which are not considered investments in your account) are insured by the FDIC to the legal limit per depositor.

# EXHIBIT F

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

RECEIVED
FEB 18 2009

In Liquidation

## DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:_____

HOME:_____

Taxpayer I.D. Number (Social Security No.)

_____

1ZR312

MARSHA PESHKIN        IRA

N PALM BEACH, FL  33410

(If incorrect, please change)

**NOTE:**    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT.  PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.      Claim for money balances as of **December 11, 2008** :
   a.    The Broker owes me a Credit (Cr.) Balance of      $_____
   b.    I owe the Broker a Debit (Dr.) Balance of         $_____

502180406                                  1

c. If you wish to repay the Debit Balance,
please insert the amount you wish to repay and
attach a check payable to "Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC."
If you wish to make a payment, **it must be enclosed**
with this claim form.                                    $_____

d. If balance is zero, insert "None."                     _N o N E_____

2.   Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |

c. If yes to either, please list below:

|   |   |   |   |
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | Number of Shares or Face Amount of Bonds | | |

SEE STATEMENT DATED NOVEMBER 30, 2008
* ALSO SEE FISERV STATEMENT
DATED DECEMBER 31, 2008 SHOWING
FINAL DEPOSIT

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

502180406                                    2

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

10131034

**ADDENDUM**

**Customer:**   **Marsha Peshkin, IRA**
**Address:**

              **North Palm Beach, Florida 33410**

**Account #:**   **1-ZR312-3**

Document index:

1. Statement dated November 30, 2008

2. Investment Documents

   a. Portfolio Management Report as of 6/30/02          $736,454.43

   b. Portfolio Management Report as of 12/31/02         $201,052.10

   c. Transfer from Merrill Lynch                        $100,000.00

   d. Fiserv Transfer/Rollover Request dated 11/13/08    $125,000.00

   e. Fiserv  Statement dated 12/08 evidencing deposits

   f. Trade slips showing receipt of deposits

3. Transfer Documents

   a. Portfolio Management Report as of 12/31/05          ($250,000)

   b. Check transfer confirmation dated 10/19/07          ($200,000)
      Portfolio Management Report as of 12/31/07

4. Other Documents

   a. Portfolio Management Report as of 12/31/03 (no activity)

   b. Portfolio Management Report as of 12/31/04 (no activity)

   c. Portfolio Management Report as of 12/31/06 (no activity)

Total Investment:  $1,162,506.53

Total Withdrawals: $450,000.00

**STATEMENT DATED NOVEMBER 30, 2008**
**FISERV STATEMENT DECEMBER 31, 2008**
**MADOFF TRADE SLIPS FOR FINAL DEPOSIT**

10130994



**DUPLICATE** FOR ACCOUNT NYC & CO.
MARSHA PESHKIN

FL 33410

| DATE | | | | DESCRIPTION | | |
|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 76,733.50 |
| 11/12 | 1,334 | | 1903 | PHILIP MORRIS INTL | | 33,453.25 |
| 11/12 | 810 | | 2405 | HEWLETT PACKARD CO | | 28,291.05 |
| 11/12 | 702 | | 6229 | WAL-MART STORES INC | | 39,229.66 |
| 11/12 | 659 | | 6731 | INTERNATIONAL BUS MACHS | | 40,307.13 |
| 11/12 | 1,701 | | 10557 | EXXON MOBIL CORP | | 136,035.63 |
| 11/12 | 1,863 | | 11057 | INTEL CORP | | 22,910.40 |
| 11/12 | 891 | | 15303 | JOHNSON & JOHNSON | | 53,199.76 |
| 11/12 | 1,215 | | 19 | J.P. MORGAN CHASE & CO | | 42,651.89 |
| 11/12 | 680 | | 24034 | COCA COLA CO | | 35,530 |
| 11/12 | 371 | | 28360 | MCDONALDS CORP | | 20,964.69 |
| 11/12 | 702 | | 28605 | MERCK & CO | | 20,070.10 |
| 11/12 | 2,565 | | 37012 | MICROSOFT CORP | | 55,044.65 |
| 11/12 | 513 | | 4005 | ORACLE CORPORATION | | 21,470 |
| 11/12 | 513 | | 54315 | PEPSICO INC | | 27,473.19 |
| 11/12 | 227 | | 54818 | APPLE INC | | 56.41 |
| 11/12 | 2,187 | | 54642 | AT&T INC | | 29,942.66 |
| 11/12 | 523 | | 59144 | ABBOTT LABORATORIES | | 37,134.76 |
| 11/12 | 972 | | 62968 | PROCTER & GAMBLE | | 21,834.67 |
| 11/12 | 351 | | 63470 | AMGEN INC | | 59,160.00 |
| 11/12 | 675 | | 67294 | PHILLIP MORRIS INTERNATIONAL | | 42,600 |
| 11/12 | 1,620 | | 67795 | BANK OF AMERICA | | 35,539.80 |
| 11/12 | 560 | | 71130 | QUALCOMM INC | | 18,256.80 |
| 11/12 | 1,155 | | 72122 | CITI GROUP INC | | 22,025.05 |

CONTINUED ON PAGE 2

Affiliated with
S   Securities International Limited
12 Berkeley Street
Mayfair, London W1X 5RD
Tel 020 7268 6222

**DUPLICATE** on ACCOUNT NIC & C...
HARSHA PESHKIN

R PALE BEACH        FL 33410

| | | | | | |
|---|---|---|---|---|---|
| 11/... | 4.05 | | SL11 | | 498.05 |
| 11/... | 9.7- | | CONEXS...LP? | | 16.120 |
| 11/...2 | 1.917 | | CLA | | 5- |
| 11/.12 | 808 | | AT&T INC | | 52.510 |
| 11/12 | 324 | | COMCCP PHILIPS | | 52.042 |
| 11/... | 324 | | UNITED PARCEL SVC INC | | 16.815 |
| 11/... | 1.978 | | CLASS B | | |
| 11/... | 567 | | U S BANCORP | | 33.0... |
| 11/... | 6.73 | | CHEVRON CRP | | 29.530 |
| 11/... | 324 | | UNIT... | | 73... |
| 11/... | 3.429 | | GENERAL ELECTRIC CO | | 10.530 |
| 11/... | 92 | | VERIZON COMMUNICATIONS | | 30.430 |
| 11/... | 61 | | GOOGLE INC COM | | 379... |
| 11/... | | | DUE 2/13/2005 | | |
| 11/12 | | 1.229,0:0 | U S ...URY... BILL | | 2.229,... |
| 11/... | | | DUE 2/12/2009 | | 1. |
| 11/... | | | DIV 11/12/08 | | 1 |
| 11/12 | 26,650 | 28991 | U S TREASURY MONEY MKRT | | 26,65... |
| 11/16 | | | CHECK WIRE | | 109,0... |

CONTINUED ON PAGE   3





BERNARD L. MADOFF INVESTMENT SECURITIES
**E. PESHKIN** FOR ACCOUNT THE & Co.

BERNARD L. MADOFF
New York ...
(212) ...
800 334 ...
Fax (212) 8...

NORTH MIAMI BEACH                    FL 33410

| | | |
|---|---|---|
| 1,971 | CISCO SYSTEMS INC | 16,540 |
| 1,755 | CITI... | 8... |
| 640 | COCA COLA CO | 46,9... |
| 972 | COMCAST CORP | 17,360 |
| 686 | CL A | |
| 1,701 | CINOCPHILIPS | 52,5... |
| 3,629 | EXXON MOBIL | 50,150 |
| 81 | GENERAL ELECTRIC CO | 11,170 |
| 810 | GOOGLE | 292,960 |
| 1,833 | MERRILL CORP | 35,2... |
| 459 | INTEL CORP | 13,530 |
| 1,215 | INTERNATIONAL ... | 6... |
| 891 | J.P. MORGAN CHASE & CO | 31,662 |
| 370 | ... | 51,... |
| 702 | MCDONALDS CORP | 58,... |
| 2,565 | MERCK & CO | 28,720 |
| 1,296 | MICROSOF... | 32,... |
| | DRAFT ... | 5... |
| | PEPSICO INC | 76,... |
| 2,187 | PFIZER INC | 16,4... |
| 675 | PHILLIP MORRIS INTERNATIONAL | 42,1... |
| 972 | PROCTER & GAMBLE CO | 64,... |
| 540 | QUALCOMM INC | 33,5... |
| 405 | SCHLUMBERGER LTD | 50,... |
| 7,730 | FIDELITY SPARTAN | 1 |
| | U S TREASURY MONEY MARKET | |

CONTINUED ... 5

CONTINUED ... 5

1-ZR312-3-0

17,...

Madoff Securities ...
12 ...
Mayfair, London W1T 8DT
Tel (020) 749 8622







**DUPLICATE** FOR ACCOUNT MAC & CO.
MARSHA PESHKIN

N PALM BEACH    FL 33412

Tax (212) 838-4131

BALANCE FORWARD

| | | | MKT PRICE | | |
|---|---|---|---|---|---|
| 27 | 45000 | S & P 100 INDEX | | | 75,736.00 |
| 27 | 49990 | NOVEMBER 450 CALL | | | 42,950.00 |
| | | S & P 100 INDEX | | | |
| 27 | 36094 | NOVEMBER 455 PUT | | | |
| | | S & P 100 INDEX | 48,083.00 | | |
| 27 | 40419 | DECEMBER 430 CALL | | | |
| | | S & P 100 INDEX | | | |
| 27 | 45244 | DECEMBER 425 PUT | | 81,287.00 | |
| | | S & P 100 INDEX | 30 | | |
| 27 | 45055 | NOV 450 CALL | 1 | | |
| | | S & P 100 INDEX | | | |
| | | NOVEMBER 455 PUT | | | 99,873.00 |
| | | S & P 100 INDEX | | | |
| 27 | | DECEMBER 430 CALL | 23,300 | 43,083.00 | |
| | | S & P 100 INDEX | | | |
| | | DECEMBER 425 PUT | 16,500 | | |

LONG        OF SECURITIES        SHORT
64,559.00                         629,910.00

11/30/70

Soninbia International Limited
Baylor, London W1J 8DT
Tel 020 7493 6222

 **Fiserv** Investment Support Services



**Traditional IRA**
**October 1, 2008 - December 31, 2008**

Page 1 of 4



MARSHA PESHKIN
NORTH PALM BEACH FL 33410

**Account Name:** MARSHA PESHKIN
**Account Number:**

**Contact:** CLIENT CONNECTION

## ACCOUNT SUMMARY

### REPORTED ACCOUNT VALUE

**Current Period**
| | |
|---|---|
| Brokerage Accounts | $1,475,026.97 |
| *Cash | $32.02 |
| **Total Account Value** | **$1,475,058.99** |

**Prior Period**
| | |
|---|---|
| Total Account Value | $1,250,026.97 |

### CONTRIBUTION AND DISTRIBUTION SUMMARY

**Rollovers**
| | |
|---|---|
| Current Tax Year | $0.00 |

**Contributions**
| | |
|---|---|
| Current Tax Year (2008) | $0.00 |
| Prior Tax Year (2007) | $0.00 |

**Employer Contributions**
| | |
|---|---|
| Current Tax Year (2008) | $0.00 |
| Prior Tax Year (2007) | $0.00 |

**Distributions**
| | |
|---|---|
| Current Tax Year (2008) | $0.00 |
| Current Tax Year Withholding (2008) | $0.00 |
| **Prior Tax Year (2007) | $200,000.00 |
| Prior Tax Year Withholding (2007) | $0.00 |

* FDIC insurance coverage applies only to deposits held in cash and to certificates of deposit issued by your trustee/custodian. No other investments are FDIC insured through this institution.

** May include distributions that do not apply toward your required minimum distribution.

## IMPORTANT ACCOUNT INFORMATION

Please review the last page of your statement for more important account information and retain this statement for your records. Report any discrepancies to us immediately.

As required by law, the fair market value reported on this statement will be furnished to the Internal Revenue Service on IRS Form 5498, if the account is an IRA, SEP, Simple, or Roth account.

717 17th Street, Ste. 1700, Denver, CO 80202-3331 ▪ PO Box 173859, Denver, CO 80217-3859 ▪ 800-962-4238

*Trust and custodial services provided by Trust Industrial Bank, member FDIC.*



Page 2 of 4

## ACCOUNT INVESTMENTS

| Investment Products: • Not FDIC Insured • No Bank Guarantee • May Lose Value |

### BROKERAGE ACCOUNTS

| Description/Account Number | Previous Reported Value | Current Reported Value |
|---|---|---|
| BERNARD L MADOFF BRKG ACCT VALUE ZR312 | 1,250,026.97 | 1,475,026.97 |

**Total Value of Brokerage Accounts**     **$1,475,026.97**

### CASH

| Description | Annual Percentage Yield Earned | Previous Reported Value | Current Reported Value |
|---|---|---|---|
| SAVINGS ACCOUNT | 0.35% | 0.00 | 32.02 |

**Total Value of Cash**     **$32.02**

**TOTAL ACCOUNT VALUE**     **$1,475,058.99**

## ACCOUNT TRANSACTIONS

| Transaction Date | Transaction | Transaction Description | Transaction Shares | Cash |
|---|---|---|---|---|
| **Beginning Cash Balance** (as of 10/01/2008) | | | | $0.00 |
| 10/13/2008 | FEE COLLECTION | | | -11.33 |
| 10/13/2008 | FEE COLLECTION | | | -31.00 |
| 10/31/2008 | INTEREST | | | 16.12 |
| 11/05/2008 | FEE REIMBURSEMENT | | | 42.33 |
| 11/13/2008 | PURCHASE | BERNARD L MADOFF BRKG ACCT VALUE | | -100,000.00 |
| 11/13/2008 | TRANSFER OF CASH IN | | | 100,000.00 |
| 11/20/2008 | PURCHASE SETTLEMENT | BERNARD L MADOFF BRKG ACCT VALUE  (As of 11/13/2008) | 100,000.0000 | |





| Transaction Date | Transaction | Transaction Description | Transaction Shares | Cash |
|---|---|---|---|---|
| 11/26/2008 | TRANSFER OF CASH IN | | | 125,000.00 |
| 11/28/2008 | PURCHASE | BERNARD L MADOFF BRKG ACCT VALUE | | -125,000.00 |
| 11/28/2008 | INTEREST | | | 15.90 |
| 12/05/2008 | PURCHASE SETTLEMENT | BERNARD L MADOFF BRKG ACCT VALUE (As of 11/28/2008) | 125,000.0000 | |

**Ending Cash Balance (as of 12/31/2008)**    **$32.02**

717 17th Street, Ste. 1700, Denver, CO 80202-3331 ▪ PO Box 173859, Denver, CO 80217-3859 ▪ 800-962-4236

Trust and custodial services provided by Trust Industrial Bank, member FDIC.

03878 6866970 007757 012730 00002/00002          RCLLSTK   RCP-5160 12/05

031038028652

## A Guide to Understanding Your Statement of Account

### STATEMENT & REVIEW PERIOD

Your statement is a comprehensive summary of your account assets and account activity for the Statement Period indicated on the front of this statement. Additional important account information is also included each period. Please review the entire statement for accuracy. Any discrepancies should be documented in writing and sent to us within 90 days of the date of this statement. If the notice of discrepancies is not received in that time, Trust Industrial Bank (TIB) shall be relieved of any and all liability for the accuracy of the data reported in the statement.

### ACCOUNT INVESTMENTS & ASSET VALUE REPORTING POLICY

The "Account Investments" portion of your statement is separated into different asset categories. The following guidelines may apply, depending upon how your account is invested:

- Dividends paid near the end of the quarter may not appear on this statement.

- "Brokerage Accounts" is a category that reports a cumulative total of all retirement plan assets held by your broker(s), as provided to TIB by your brokerage firm(s). For IRA accounts, assets may be included in the cumulative value in this category which are not individually listed, and TIB does not verify the information provided by your brokerage firm(s). For Qualified Plans and Investment Annuity accounts, broker held assets will be individually listed in their appropriate asset category. Please contact your Financial Representative with questions.

- A column titled "Broker Cash" will appear in the "Account Activity" portion of your statement if cash transactions were reported to us at your Financial Representative's firm. The corresponding transaction description will appear next to the date of entry. Please note that the ending balance listed in the Broker Cash column has not been verified and is held at your brokerage firm (not at TIB). To ensure accuracy of this figure (and all brokerage activity), please consult your Financial Representative. If you wish to pay TIB fees from cash or assets held in your brokerage account, you may ask your Financial Representative to send funds to TIB.

- Individual values for securities that have publicly-quoted prices are reported based solely on such quoted prices, which are obtained from a quotation service or other source generally available to the public. TIB does not guarantee the accuracy of reported values, or whether you will be able to obtain the value indicated on this Account Statement in the event of a sale.

- Values for "alternative assets" are generally reported at their original offering price to investors and are classified into two investment types: alternative equity and alternative debt. On an annual basis (or more frequently, if requested), TIB requests updated valuation information from such persons as general partners of limited partnerships, officers of private corporations and sponsors of other assets it has classified as alternative equity investments. TIB will normally adjust the reported value of a alternative equity investment if the general partner, officer or sponsor provides TIB with an updated value. TIB does not request updated valuation information for assets it classifies as alternative debt investments. TIB does not conduct appraisals of investments and it does not seek to verify any values provided to it. If TIB has not received an updated value from the asset sponsor for a period of two years, it will begin to report the value as "N/A."

- Values reported as "N/A" indicate that updated valuation information was not available at the time of reporting, or that the asset has no value. Please refer to reports received from brokers, general partners, officers or other asset sponsors (or contact these sources directly) with regard to the current operation and status of your chosen asset(s). The reported value of any asset may differ materially from its actual value.

- A legend for the "Price Source" (usually only reported for alternative assets) is as follows:

  12 – Market Maker
  31 – Principal/Loan Value Outstanding
  32 – Original Purchase Cost
  33 – Investment Sponsor Reported Value
  34 – Plan Administrator Reported Value
  35 – Secondary Market Value
  36 – Third Party Appraisal
  37 – Bankruptcy/Receivership
  38 – No Updated Value or Response for Two or More Years
  39 – Miscellaneous

A total value for all your assets (by category) is listed in the "Account Summary" portion of this statement. This Account Statement (and the reported values herein) should not be used as the basis for making, retaining or disposing of an investment.

### ACCOUNT TRANSACTIONS

The amount listed with each transaction may not represent funds actually received into your account. It may represent the dollar value of a transaction that affects only asset shares in your account. The liability of TIB to make payment from your account at all times is limited to available liquid assets in the account.

### INVESTMENT RESPONSIBILITY

You (in conjunction with your Financial Representative) have sole authority and discretion to manage the investment of all assets in your account. As a DIRECTED trustee, we process your instructions (or your financial representative's if you chose to appoint one) and we provide account reporting and recordkeeping services. We do not give investment, tax or legal advice, provide retail investment products, perform independent investment valuations or appraisals, or maintain an agency relationship with your financial representative. TIB is not responsible for the performance of your investments.

### CUSTODY OF ASSETS

TIB may consolidate the information it receives from your Financial Representative, brokerage firm, or other investment sponsors (i.e., mutual funds, insurance companies, limited partnerships, banks, etc.) to report all assets held in your retirement plan on this Account Statement. TIB, however, may not have physical custody of all assets listed on this statement. Assets may be held at the investment sponsor, your brokerage firm, TIB or another designated site. In addition, many assets do not generate a physical certificate. Before selling an asset in your retirement plan, you, and/or your Financial Representative should check with the designated brokerage firm or TIB to determine the custody of your asset(s). By determining the custody of an asset before a transaction or confirmation is received by TIB, we are able to reduce processing time and ensure proper asset delivery, if applicable.

### TAX INFORMATION

The December 31 year-end value of assets listed on your IRA Statement of Account will be furnished to the Internal Revenue Service (this does not apply to Qualified Plans or 403(b)(7) accounts). Please keep your December 31 IRA Statement of Account for your records.

NOTE: Investments in your account are not insured by the FDIC; are not deposits or obligations of and are not guaranteed by TIB; and are subject to investment risk, including the possible loss of your entire investment.

Uninvested cash deposits held in your account (which are not considered investments in your account) are insured by the FDIC to the legal limit per depositor.

IQP-5168 12/07)



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

MEMBER:
FINRA NSX SIPC NSCC DTC

885 Third Avenue
New York, NY 10022
212 230-2424
800 334-1343
Fax 212 838-4061

| ORIGINATOR NO. | DELIVERED VIA | ACCOUNT NUMBER | D/R | TRANS. NO. | CODES TR | CAP | SETT | TRADE DATE | SETTLEMENT DATE | |
|---|---|---|---|---|---|---|---|---|---|---|
| 0646 | | 1-ZR312-3 | D | 79310 | 5 | 1 | | 12/01/08 | 12/01/08 | 17 |

| IDENTIFICATION NO. | CONTRA PARTY | C.H. NUMBER | SPECIAL DELIVERY INSTRUCTIONS |
|---|---|---|---|

MARSHA PESHKIN
~~1420 HARBOUR POINT DR~~
N PALM BEACH      FL 33410

ACCT OF/ NTC & CO.

**** DUPLICATE ****

| WE | QUANTITY | CUSIP NUMBER | SECURITY DESCRIPTION | NET AMOUNT |
|---|---|---|---|---|
| SLD | 125,000 | 912795K91 | U S TREASURY BILL DUE 03/26/2009          3/26/2009 | 124967.50 |

| PRICE | PRINCIPAL | COMMISSION | STATE TAX | INTEREST | FEE | MISC. |
|---|---|---|---|---|---|---|
| 99.974 | 124967.50 | | | | | |

Affiliated with:
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222
Member of The London Stock Exchange

CONFIRMATION (Please see reverse for further details.)

---

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

MEMBER:
FINRA NSX SIPC NSCC DTC

885 Third Avenue
New York, NY 10022
212 230-2424
800 334-1343
Fax 212 838-4061

| ORIGINATOR NO. | DELIVERED VIA | ACCOUNT NUMBER | D/R | TRANS. NO. | CODES TR | CAP | SETT | TRADE DATE | SETTLEMENT DATE | |
|---|---|---|---|---|---|---|---|---|---|---|
| 0646 | | 1-ZR312-3 | D | 79326 | 5 | 1 | | 12/02/08 | 12/02/08 | 17 |

| IDENTIFICATION NO. | CONTRA PARTY | C.H. NUMBER | SPECIAL DELIVERY INSTRUCTIONS |
|---|---|---|---|

MARSHA PESHKIN
~~1420 HARBOUR~~
N PALM BEACH      FL 33410

ACCT OF/ NTC & CO.

**** DUPLICATE ****

| WE | QUANTITY | CUSIP NUMBER | SECURITY DESCRIPTION | NET AMOUNT |
|---|---|---|---|---|
| SLD | 125,000 | 912795K91 | U S TREASURY BILL DUE 03/26/2009          3/26/2009 | 124972.50 |

| PRICE | PRINCIPAL | COMMISSION | STATE TAX | INTEREST | FEE | MISC. |
|---|---|---|---|---|---|---|
| 99.978 | 124972.50 | | | | | |

Affiliated with:
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222
Member of The London Stock Exchange

CONFIRMATION (Please see reverse for further details.)

# INVESTMENT DOCUMENTS

10130994

PORTFOLIO MANAGEMENT REPORT AS OF  6/30/00

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


AURORA PROGRAM                          1-ZR312-3


███████████████████████

  W PALM BEACH           FL 33410


STARTING EQUITY            6/21/00                          736,454.43CR
CAPITAL ADDITIONS
CAPITAL WITHDRAWALS
REALIZED P/L FOR CURRENT YEAR
UNREALIZED P/L IN OPEN SECURITY POSITIONS                   290.00CR
CURRENT CASH BALANCE                                           .93CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS              736,743.50   NET LONG
TOTAL EQUITY                                               736,744.43CR

ANNUALIZED RETURN FOR CURRENT YEAR       1.43 %

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/02

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.

MARSHA PESHKIN                          1-ZR312-3

PALM BEACH                    FL 33410

| | | |
|---|---|---|
| STARTING EQUITY | 6/21/02 | |
| CAPITAL ADDITIONS | | 736,454.43CR |
| CAPITAL WITHDRAWALS | | 201,052.10CR |
| REALIZED P/L FOR CURRENT YEAR | | |
| UNREALIZED P/L ON OPEN SECURITY POSITIONS | | 60,489.59CR |
| CURRENT CASH BALANCE | | .12CR |
| NET ASSET VALUE OF OPEN SECURITIES POSITIONS | | 997,975.00    NET LONG |
| TOTAL EQUITY | | 997,996.12CR |

ANNUALIZED RETURN FOR CURRENT YEAR    13.01 %

*1 ∞ ε 5 2 ι 6 9 7 4*

## Marsha Peshkin

North Palm Beach, FL 33410                                           Email ████████

Fiserv

717 17th Street
Suite 1700
Denver, CO 80202-3331

October 10, 2008

To Whom It May Concern:

Enclosed, please find the following:

1- Endorsed check from Merrill Lynch. This check is from my Merrill Lynch IRA and I
   would like it rolled over into my IRA account at Bernard Madoff which you
   manage. My Fiserv account # ████████ and my Madoff account number is
   1-ZR312-3

2- A completed Transfer/Rollover request form, for a partial transfer of $125,000.00
   from my Ameriprise IRA to the same Madoff IRA listed above. Ameriprise has
   informed me that the request CANNOT be faxed. I have included the address
   and contact name and phone number on the form where the fax information
   generally is. (#7 on page 4). Ameriprise has also informed me that they need my
   original signature and not a copy!

Please feel free to contact me at the number above if I've omitted anything or you need
any additional information. Thank you.

Sincerely,


Marsha Peshkin

*Item #2
NOT DONE
refaxed
to FISERV
11/13*

*23/19
Sue Dixon
720-920-
4728*

**Merrill Lynch**
P.O. Box 43247
Jacksonville, FL 32231-3247

MARSHA PESHKIN
WEST PALM BCH FL 33410                    5020

CDLR9761 7673 0001 905C   24 064919 PAGE 00001 OF 00001    00005020

---

**Merrill Lynch**     50-937
                       213

**CHASE ◯**
6040 Tarbell Road
Syracuse, N.Y. 13206

**Office**
**Disbursement Account**
P.O. Box 43247
Jacksonville, FL 32231-3247

**Merrill Lynch,**
**Pierce, Fenner & Smith Inc.**

| Date | Branch | Amount |
|------|--------|--------|
| 09/19/2008 | 863 | PAY$100,000.00* |

Not valid after 180 days

To The Order Of
MARSHA PESHKIN
WEST PALM BCH FL 33410

*Melinda Smythe*



**Instructions — Traditional/Roth IRA**

# Transfer/Rollover Request

717 17th Street, Suite 1700
Denver, Colorado 80202-3331
Toll Free: 1-800-962-4238

Direct IRA mail to:
P.O. Box 173859
Denver, CO 80217-3859

## 1. IRA ACCOUNT OWNER INFORMATION

Please complete all information requested. If information does not match Trust Industrial Bank's records or is left blank, the form will be returned to you with an explanation regarding the discrepancy, or for completion.

## 2. RESIGNING TRUSTEE/CUSTODIAN INFORMATION

Please complete the information requested and provide a copy of the most recent Account Statement from your resigning Trustee/Custodian.

## 3. TRANSFER TYPE

Please check the box that is applicable to the type of transfer you are requesting.

## 4. TRANSFER/ROLLOVER/DIRECT ROLLOVER

Please read the following definitions and check the applicable option for your intended transaction.

**A. Transfer:** Describes the movement of assets directly between IRA Trustees/Custodians without distribution to the Account Owner, resulting in no tax forms being generated by either Trustee/Custodian.

**B. Inherited/Beneficiary IRA:** Describes the transfer of an IRA inherited by a non-spouse beneficiary that is transferring to an account in the name of the deceased for benefit of the named beneficiary. Trust Industrial Bank requires additional documentation and review before this type of account may be transferred. Please contact Trust Industrial Bank for more information.

**C. Non-spouse Beneficiary Direct Rollover:** Describes a movement of cash and/or assets that takes place directly between the Trustee/Custodian of a business retirement plan (such as profit sharing, money purchase, defined benefit etc.) or the administrator of a 403(a) or (b) annuity and the trustee of a Traditional Inherited IRA. The Traditional IRA account must be established in the name of the deceased plan participants name for the benefit of the non-spouse beneficiary. Distributions from this account are determined according to the timing of the rollover in relation to the date of death of the plan participant. Required distributions for the year of the transaction may not be rolled over to the Inherited IRA account.

**D. Spousal Assumption:** If you are the designated spouse beneficiary of the Account Owner, you may elect to transfer or assume your spouse's IRA account as your own IRA. The regular IRA rules will apply as if the funds were originally contributed on your behalf (e.g., non-installment distributions taken prior to your reaching age 59½ will be subject to a 10% IRS penalty tax). If you do not already have an account with Trust Industrial Bank you will need to complete an IRA Application and return it with this completed form. You must include a certified copy of the deceased Account Owner's death certificate.

**E. Rollover:** Describes a cash and/or asset contribution to an IRA by an individual within sixty (60) days of receiving an eligible rollover distribution. To make a rollover, the individual must have received an eligible distribution outright. The individual may roll over all or any part of the actual amount received and, if the distribution was from a business retirement plan or 403(a) or (b) annuity (thus subject to the 20% federal income tax withholding), he/she may roll over up to 100% of the distribution by making up the 20% difference that was previously withheld.

**F. Direct Rollover:** Describes a movement of cash and/or assets that takes place directly between the Trustee/Custodian of a business retirement plan (such as profit sharing, money purchase, defined benefit, etc.), or the administrator of a 403(a) or (b) annuity, and the Trustee of an IRA. By directly rolling an eligible rollover distribution to this Trust Industrial Bank IRA (as opposed to receiving an outright distribution as described above under "rollover"), the individual can avoid the mandatory 20% federal income tax withholding imposed on such distributions.

### Notice of Withholding on Distributions or Withdrawals From IRAs

This notice is required to be furnished to you by IRS regulations each time an IRA distribution is requested.

The distributions you receive from your retirement plan are subject to federal income tax withholding. You are liable for payment of federal income tax on the taxable portion of your distribution regardless of whether you elect to have tax withheld. The amount withheld will be based on your entire distribution. If you have provided Trust Industrial Bank your residence address within the United States, you may elect not to have withholding apply. If you have not provided us with your residence address or if you have provided a residence address outside of the United States, withholding generally is required and you cannot elect out of withholding.

## 5. ASSET INSTRUCTIONS

To avoid delays in processing your request, this section **must** be completed in its entirety. All assets that are to be transferred must be listed individually in this section. Please attach copies of account statements from the resigning Trustee/Custodian reflecting the assets to be transferred. If you have physical certificates in your possession, you must send the actual certificates in negotiable form, to Trust Industrial Bank with this document.

## 6. AGE 70½ NOTICE

If you have attained age 70½ or older during the transfer year, you are required to take a minimum distribution. If you have not taken a minimum distribution from your prior Trustee/Custodian, please contact Trust Industrial Bank's Client Relations Department at 1-800-962-4238 for assistance. Please have the previous year-end value available for calculation.

© Fiserv Investment Support Services, 2008. Trust and Custodial Services provided by Trust Industrial Bank, member FDIC.
INVESTMENT PRODUCTS: NOT FDIC INSURED · NO BANK GUARANTEE · MAY LOSE VALUE
IRA-5096 (9/08)

## Instructions — Traditional/Roth IRA Transfer/Rollover Request (continued)

### 7. DELIVERY OPTIONS

If your resigning custodian accepts faxed instructions, please provide the contact name, department and fax number. If your resigning custodian does not accept faxed instructions, Trust Industrial Bank will automatically overnight the instructions to the resigning custodian.

### 8. ACCOUNT OWNER SIGNATURE

Your signature certifies that you have read the applicable section for the transaction you have chosen and understand and agree to all the terms thereunder. In the case of a transfer or direct rollover, the resigning Trustee/Custodian is authorized to send cash and/or assets to Trust Industrial Bank as specified. In addition, you certify that the assets requested to be rolled over into your IRA qualify as a valid rollover contribution as defined in the Plan documents, including the requirement that deposit of such contribution is being made within 60 days after receipt by you of the eligible distribution. You understand the tax consequences of your plan and/or your contribution and the implications that this rollover contribution has on the five-taxable-year period for taking distributions from a Roth IRA. You further understand that the resigning Trustee/Custodian may issue a tax form to you representing the distributed value of these assets and that you must treat the transaction as a rollover contribution on your income tax return. You also agree to hold Trust Industrial Bank harmless in any way should the rollover be ineligible or invalid, or if it creates any tax implication to you.

You certify that you are aware of any and all penalties incurred by your request (if applicable) including, but not limited to, premature liquidation of any certificate of deposit or insurance product involved in this IRA rollover/conversion/transfer/recharacterization.

**Please make a copy of the completed form for your records.**

# FAX

Marsha Peshkin
~~North Palm Beach, FL 33410~~
North Palm Beach, FL 33410

**Date**  11/13/2008

Number of pages including cover sheet  4

**To:  Fiserv**

**Attn:**  **Sue Dixon**

**From: Marsha Peshkin**

Acct #  ▓▓▓▓▓▓

| | |
|---|---|
| Phone | |
| Fax Phone | **720-920-4728** |
| CC: | |

Phone  ▓▓▓▓▓▓
Fax Phone  ▓▓▓▓▓▓

**REMARKS:**

☐ Urgent   ☒ For your review   ☒ Reply ASAP   ☐ Please comment

Following is a copy of the transfer request we spoke of.


Thank You…


Marsha Peshkin



## Traditional/Roth IRA
# Transfer/Rollover Request

717 17th Street, Suite 1700
Denver, Colorado 80202-3331
Toll Free: 1-800-962-4238

Direct IRA mail to:
P.O. Box 173859
Denver, CO 80217-3859

### GENERAL INSTRUCTIONS

This form is to be completed by an IRA Account Owner who wishes to make a transfer, rollover, direct rollover, all or a portion of his/her assets from an existing IRA plan to a Trust Industrial Bank IRA. Please refer to the "Instructions for Traditional/Roth IRA Transfer/Rollover Request" to complete this form.

### 1. IRA ACCOUNT OWNER INFORMATION

Account Owner Name  Marsha Peshkin

Mailing Address  ▓▓▓▓▓▓▓▓▓▓▓                          City/State/ZIP  North Palm Beach, FL 33410

Trust Industrial Bank IRA Account Number  ▓▓▓▓▓▓▓▓▓

Date of Birth  July 25, 1953                          Social Security Number  ▓▓▓▓▓▓▓▓

Business Telephone Number  ▓▓▓▓▓▓▓                    Home Telephone Num ▓▓▓▓▓▓▓▓

### 2. RESIGNING TRUSTEE/CUSTODIAN INFORMATION

Please provide a copy of the most recent Account Statement from your resigning Trustee/Custodian.

Resigning Trustee/Custodian Name

Resigning Trustee/Custodian Account Number

Mailing Address                                       City/State/ZIP

Telephone Number  (        )                          Contact Name

### 3. TRANSFER TYPE (account owner must check one)

To the delivering firm: I have amended my retirement plan or established a new plan, and request that you transfer or rollover all or a portion of the assets or securities in my account (as directed on this form) to the successor trustee/custodian named below. I understand that to the extent any assets in my account are not readily transferable, with or without penalties, such assets may not be transferred within the time frames required by New York Stock Exchange Rule 412 or similar rule of the National Association of Securities Dealers or other designated examining authority. Unless otherwise indicated in the instructions contained herein, I authorize you to sell any nontransferable proprietary money market fund assets that are part of my account and transfer the resulting cash credit balance to the successor trustee/custodian. I understand that you will contact me with respect to the disposition of any other assets in my securities account that are not transferable. I authorize you to deduct any outstanding fees due you from the credit balance in my account. If my account does not contain a credit balance, or if the credit balance in the account is insufficient to satisfy any outstanding fees due you, I authorize you to liquidate the assets in my account to the extent necessary to satisfy that obligation. If certificates or other instruments in my account are in your physical possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable the successor trustee/custodian to transfer them to its name (or its nominee name) for the purpose of sale, when and as directed by me. I understand that upon receiving a copy of this transfer instruction, you will cancel all open orders for my account on your books.

☑ Partial transfer  ☐ Complete transfer (close my entire account)

### 4. TRANSFER/ROLLOVER OPTION

Choose one below. For your selection, please provide specific asset instructions in section 6.

☑ **Transfer:** Transfer Options (choose one) ☑ IRA to IRA  OR  ☐ Roth IRA to Roth IRA

    If applicable, choose one. For either option below, you must include a certified copy of the deceased Account Owner's death certificate. For either option below, this is a transfer of an inherited or beneficiary IRA. Subject to additional documentation and review.

    ☐ **Inherited IRA:** Check box if this is a transfer of an inherited or beneficiary IRA. Subject to additional documentation and review.

    ☐ **Non-Spouse Beneficiary:** Only for Non-Spouse Beneficiary Direct Rollover.

    ☐ **Spousal Assumption:** Transfer Option: Only for spouses who are the sole beneficiary of a plan owner.

☐ **Rollover:** Rollover Option: Rollover of Eligible Distribution Received Outright by Account Owner

☐ **Direct Rollover:** Rollover Option: Rollover of Eligible Business Retirement Plan Assets to IRA Rollover

---

© Fiserv Investment Support Services, 2008. Trust and Custodial Services provided by Trust Industrial Bank, member FDIC.          IRA-5096 (9/08)
INVESTMENT PRODUCTS: NOT FDIC INSURED · NO BANK GUARANTEE · MAY LOSE VALUE

page 3 of 5

## Traditional/Roth IRA Transfer/Rollover Request *(continued)*

**5. LIST ALL ASSETS TO BE TRANSFERRED**
*Use additional paper if needed. Please provide a copy of the most recent Account Statement from your resigning Trustee/Custodian.*

| A. Cash/Money Market | Specify "ALL" or $ Amount | Account Number |
|---|---|---|
| Cash | $125,000.00 | ▮▮▮▮▮▮▮▮ |

| B. Mutual Funds | # of shares or "ALL" | Sell | or | Transfer In Kind | Account Number |
|---|---|---|---|---|---|
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |

| C. Annuities | Value | Surrender | or | Change of Ownership | Contract (Policy Number) |
|---|---|---|---|---|---|
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |

| D. Limited Partnerships and REITs | # of units or "ALL" | Sell | or | Transfer In Kind | Account Number |
|---|---|---|---|---|---|
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |

| E. Stocks or Bonds | # of shares or "ALL" | Sell | or | Transfer In Kind | Account Number |
|---|---|---|---|---|---|
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |

| F. Other Assets | # of shares or "ALL" | Sell | or | Transfer In Kind | Account Number |
|---|---|---|---|---|---|
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |
| | | ❑ | or | ❑ | |

**6. AGE 70½ NOTICE**

If you are subject to required minimum distributions (generally if you have attained age 70½ during the transfer year) and have not taken a minimum distribution from your prior Trustee/Custodian, please contact us for assistance regarding the calculation of your required amount. Please have the previous year-end value available.

**7. DELIVERY OPTIONS FOR THIS FORM**

❑ This transfer may be faxed to my resigning Trustee/Custodian. **(must provide the following)**

Contact Name     Ameriprise Financial Services   1377 Motor Parkway Suite 405    Islandia, NY 11749

Contact Department   Attn: Todd Petraco          Fax Number (        )   Ph# 1-631-582-9770 X219

## Traditional/Roth IRA Transfer/Rollover Request *(continued)*

### 8. ACCOUNT OWNER'S SIGNATURE REQUIRED

I certify that I have read the applicable section for the transaction I have chosen, understand and agree to all the terms.

In the case of a transfer or direct rollover, the current Trustee/Custodian is authorized to send cash and/or assets to Trust Industrial Bank as specified.

For the transfer of an inherited IRA, I certify that I am the sole beneficiary of the assets requested and agree to hold Trust Industrial Bank harmless in the event that any other beneficiary makes a claim against this account.

In the case of a rollover, I understand it is my sole responsibility to determine the validity of any rollover contribution and to initiate and make such rollover deposit; and I irrevocably elect to roll over the assets in this transaction.

I hereby agree to indemnify and hold harmless Trust Industrial Bank and its officers, directors, shareholders, agents and employees, for any and all costs, obligations, losses, claims, damages and expenses (including reasonable attorneys' fees) related to or associated with this agreement.

**I acknowledge the minimum cash and aggregated account value requirements applicable to Investment Types 3 and 4, as stated on the IRA Fee Schedule. If both requirements are not met, I understand additional fees may apply.**

Account Owner Signature
✗ *(signature)*

Date 10/10/08

*Note: Medallion Signature Guarantee Stamp Here if the Resigning Trustee or Custodian requires.*

```
.........................................................
[MEDALLION GUARANTEE STAMP HERE]




A Medallion Signature Guarantee may be obtained from an authorized
officer at a brokerage firm, bank or other financial institution. Certifica-
tion by a notary public is not a substitute for a signature guarantee.
.........................................................
```

### 9. ACCEPTANCE BY TRUST INDUSTRIAL BANK COMPANY
*(To be completed by Trust Industrial Bank)*

Trust Industrial Bank hereby accepts the appointment as Trustee of the assets listed. This acceptance is not to be construed as validation of any rollover or direct rollover contribution, if any. Trust Industrial Bank is exempt from backup withholding described in Section 3406(a) (1)(c) of the Internal Revenue Code.

Trust Industrial Bank Acceptance Signature
✗

Title

Date

```
.........................................................
[MEDALLION GUARANTEE STAMP HERE]




A Medallion Signature Guarantee may be obtained from an authorized
officer at a brokerage firm, bank or other financial institution. Certifica-
tion by a notary public is not a substitute for a signature guarantee.
.........................................................
```

### DELIVERY INSTRUCTIONS

Trust Industrial Bank Tax Identification Number 26-1356253

**Register Physical Securities, Non-Networked Eligible Mutual Funds and Limited Partnerships:**
NTC & Co.
FBO (client name), IRA Number
P.O. Box 173859
Denver, CO 80217-3859

**Register Networked Eligible Mutual Funds to:**
NTC & Co.
FBO (client name), IRA Number
P.O. Box 173859
Denver, CO 80217-3859

**Matrix Settlement and Clearance Services NSCC # 5954**

**Make checks payable to:**
Trust Industrial Bank
FBO (client's name), IRA Number
P.O. Box 173859
Denver, CO 80217-3859

**Overnight Delivery Address:**
Fiserv ISS
FBO (client's name), IRA Number
717 17th Street, Suite 2600
Denver, CO 80202-3323

**Incoming ACH Instructions:**
JPMorgan Chase
ABA# 102001017
To: Trust Industrial Bank
Acct# 634341224
FFC Trust Industrial Bank account number

**Wiring Instructions for Cash:**
JPMorgan Chase
ABA# 021000021
For Credit to: Trust Industrial Bank
A/C # 634341224
For Further Credit to: Client's Full Name
A/C # (Client's Trust Industrial Bank Account Number)

**DTC Eligible Securities:**
DTC #5998
Agent ID #94099
Institutional ID #94099
FBO: Client Name and Trust Industrial Bank Account Number

**Book-entry Government Securities (including GNMA pool deliveries)**
VIA Federal wire as follows:
FIFTH THIRD BANK
ABA #042000314/Fifth Cin/1050
FFC A/C#: 010034438545
A/C Name: Trust Industrial Bank
FBO: Client's name & Trust Industrial Bank Account Number

# TRANSFER DOCUMENTS

10130994

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/07

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


MARSHA PESHKIN                          1-ZR312-3


[REDACTED]                        DR
1 PALM BEACH            FL 33410


STARTING EQUITY FOR CURRENT YEAR                   1,215,328.67CR
CAPITAL ADDITIONS
CAPITAL WITHDRAWALS                                   250,000.00-
REALIZED P/L FOR CURRENT YEAR                        111,468.22CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS
CURRENT CASH BALANCE                                       .66CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS      1,076,966.50    NET LONG
                                                   1,076,866.50CR


ANNUALIZED RETURN FOR CURRENT YEAR       9.52 %

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York. NY 10022
212 230-2424
P&S Dept. 212 230-2436
800 334-1343
Fax 212 838-4061

WE HAVE THIS DAY DEBITED YOUR
ACCOUNT WITH THE FOLLOWING:

10/19/07

| CHECK | 200,000-00 |
|---|---|

CLIENT'S ACCOUNT NUMBER

MARSHA PESHKIN

N PALM BEACH          FL 33410

1-ZR312-3

**DUPLICATE**     ACCT OF
RETIREMENT ACCTS INC CUST IRA

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/0?

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


MARSHA PESHKIN                        1-ZR312-3


▓ PALM BEACH            FL 33410


STARTING EQUITY FOR CURRENT YEAR                1,220,872.65CR
CAPITAL ADDITIONS
CAPITAL WITHDRAWALS                                200,000.00-
REALIZED P/L FOR CURRENT YEAR                     135,575.45CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS
CURRENT CASH BALANCE                                   .60CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS   1,155,447.50   NET LONG
TOTAL EQUITY                                    2,155,448.10CR

ANNUALIZED RETURN FOR CURRENT YEAR     11.48 %

# OTHER DOCUMENTS

10130994

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/03


THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


MARSHA PESHKIN                    1-ZR312-3



N PALM BEACH          FL 33410


| | |
|---|---:|
| STARTING EQUITY FOR CURRENT YEAR | 997,996.12CR |
| CAPITAL ADDITIONS | |
| CAPITAL WITHDRAWALS | |
| REALIZED P/L FOR CURRENT YEAR | 102,587.74CR |
| UNREALIZED P/L ON OPEN SECURITY POSITIONS | |
| CURRENT CASH BALANCE | .86CR |
| NET MARKET VALUE OF OPEN SECURITIES POSITIONS | 1,100,583.00    NET LONG |
| TOTAL EQUITY | 1,100,583.86CR |

ANNUALIZED RETURN FOR CURRENT YEAR     10.27 %



PORTFOLIO MANAGEMENT REPORT AS OF 12/31/04


THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


MARSHA PESHKIN                    1-ZR312-3


N PALM BEACH          FL 33410


| | |
|---|---:|
| STARTING EQUITY FOR CURRENT YEAR | 1,100,583.86CR |
| CAPITAL ADDITIONS | |
| CAPITAL WITHDRAWALS | |
| REALIZED P/L FOR CURRENT YEAR | 114,814.81CR |
| UNREALIZED P/L ON OPEN SECURITY POSITIONS | |
| CURRENT CASH BALANCE | .67CR |
| NET MARKET VALUE OF OPEN SECURITIES POSITIONS | 1,215,398.00    NET LONG |
| TOTAL EQUITY | 1,215,398.67CR |

ANNUALIZED RETURN FOR CURRENT YEAR     10.40 %

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/06

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.

MARSHA PESHKIN                    1-ZR312-3

N PALM BEACH          FL 33410

```
STARTING EQUITY FOR CURRENT YEAR               1,076,866.76CR
CAPITAL ADDITIONS
CAPITAL WITHDRAWALS
REALIZED P/L FOR CURRENT YEAR                    144,005.69CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS
CURRENT CASH BALANCE                                   .65CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS   1,220,872.00   NET LONG
TOTAL EQUITY                                    1,220,872.65CR

ANNUALIZED RETURN FOR CURRENT YEAR    13.37 %
```