UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | DECLARATION IN OPPOSITION TO THE TRUSTEE'S MOTION TO AFFIRM APPLICATION OF THE NET INVESTMENT METHOD TO THE DETERMINATION OF CUSTOMER TRANSFERS BETWEEN BLMIS ACCOUNTS |

I, AARON BLECKER, declare pursuant to 28 U.S.C. § 1746, that the following is true based upon personal knowledge and documents I possess:

1. I was born on July 27, 1910 and will be 103 on July 27, 2014, by which time I hope that this Court will recognize the validity of my claim against Bernard L. Madoff Investment Securities, LLC ("BLMIS").

2. I opened an account with Bernard L. Madoff in 1986, Account No. No. 1B0022, in 1986 with a $50,000 deposit. Thereafter, I deposited another $50,000 in 1986 and in 1992 I deposited $100,000. At some point, the account number for this account was changed by BLMIS to 1B0156-3-0.

{N0047180 }    1

3.  In 1997, another account was opened in the name of Arthur and Sofie Blecker, No. 1B0157-3-0, but in 2007 the account in my name and my joint account with my wife were consolidated into the Aaron Blecker Revocable Trust, No. 1B0156-3-0. I continued my account when Madoff formed Bernard L. Madoff Investment Securities LLC ("BLMIS") on December 4, 2000

4.  No funds were ever withdrawn by me or by my wife from BLMIS and the value of my account as of November 30, 2008 was $2,625,435.95. Of course, in each year that we had these BLMIS accounts, we paid taxes on the declared profits at short-term capital gains rates. Thus, in rough numbers, the appreciation in the BLMIS accounts was $2,425,435.95 and, at a 40% tax rate, we paid the Internal Revenue Service ("IRS") $970,174.40.

5.  The only refund I was able to obtain from the IRS was for $$235,276.37 representing the taxes I had paid on my alleged profits in the last five years I had the BLMIS account.

6.  I filed a SIPC claim for $2,625,435.95, my last statement balance. See Exhibit A.

7.  By letter dated October 19, 2009, the Trustee denied my Claim No. 003907 on the theory that I had deposited $200,000 and withdrawn $261,633.94. A copy of the Trustee's October 19, 2009 Determination Letter is annexed hereto as Exhibit B.

8.  The alleged withdrawals were reflected on my statements as checks written to various Fortune 500 companies whose stocks were listed in my statements. The amounts were odd amounts such as $4,248.04 on April 7, 1987. See Exhibit B at 4. For example, one page of such "withdrawals" is this:

{N0047180 }                                2

| | | |
|---|---|---|
| 9/13/1984 | CHECK HOUSEHOLD INTL | ($5,654.50) |
| 10/31/1984 | CHECK KATY INDUSTRIES | ($5,818.54) |
| 1/8/1985 | CHECK ETHYL | ($11,085.00) |
| 2/22/1985 | CHECK ATLANTIC RICHFIELD | ($8,839.87) |
| 4/25/1985 | CHECK AMR CORP | ($10,403.43) |
| 6/11/1985 | CHECK INTERCO | ($7,371.58) |
| 8/8/1985 | CHECK ASSOC DRY GOODS | ($11,095.17) |
| 9/26/1985 | CHECK TEXTRON | ($6,484.27) |
| 11/12/1985 | CHECK VIACOM | ($8,829.20) |
| 1/15/1986 | CHECK WOOLWORTH | ($11,096.11) |
| 3/17/1986 | CHECK WETTERAU | ($10,392.02) |
| 5/27/1986 | CHECK FMC | ($10,313.75) |
| 7/14/1986 | CHECK GTE CORP | ($7,773.88) |
| 8/21/1986 | CHECK INTERCO | ($6,929.43) |
| 10/15/1986 | CHECK SUN | ($8,842.64) |
| 11/24/1986 | CHECK TRW | ($7,805.00) |
| 2/5/1987 | CHECK HOLIDAY CORP | ($11,090.00) |
| 4/7/1987 | CHECK ANHEUSER BUSCH | ($11,786.82) |
| 6/10/1987 | CHECK TRANSCO CO | ($10,393.61) |
| 8/21/1987 | CHECK AGS COMPUTERS | ($11,037.61) |
| 10/26/1987 | CHECK GROLIER | ($11,717.22) |
| 1/26/1988 | CHECK | ($10,396.92) |
| 3/24/1988 | CHECK ADVANCED SYSTEMS | ($11,087.09) |
| 5/25/1988 | CHECK INTERCO | ($11,778.76) |
| 8/8/1988 | CHECK AMFAC | ($10,400.46) |
| 10/12/1988 | CHECK COMPAQ COMPUTERS | ($11,048.11) |
| 12/5/1988 | CHECK PNC FINL | ($8,832.87) |
| 2/3/1989 | CHECK GENERAL CINEMA | ($10,400.48) |
| 4/11/1989 | CHECK | ($11,090.99) |
| 6/20/1989 | CHECK DURR FILLAUER MED | ($11,739.06) |
| 8/15/1989 | CHECK INLAND | ($10,398.73) |
| 10/20/1989 | CHECK AMERICAN MAIZE | ($11,062.73) |
| 12/11/1989 | CHECK COLUMBIA PICTURES | ($8,840.00) |
| 2/16/1990 | CHECK WESTINGHOUSE | ($10,347.18) |
| 4/20/1990 | CHECK SEAGULL | ($11,089.81) |
| 6/25/1990 | CHECK SUN MICROSYSTEMS | ($11,759.92) |
| 8/28/1990 | CHECK IMMUNEX | ($10,393.02) |
| 11/5/1990 | CHECK AMERICAN FILM | ($11,094.75) |
| 12/27/1990 | CHECK PFIZER | ($11,960.08) |
| 3/7/1991 | CHECK MEDCO | ($14,130.22) |
| 5/13/1991 | CHECK XOMA | ($13,172.52) |
| 7/11/1991 | CHECK HEALTH SOUTH | ($12,364.06) |

9.  Anyone looking at this list of "withdrawals" would recognize that these were not payments to me as the account holder.  I swear that none of the alleged withdrawals was received by me or my wife.

10.  Of course, these checks appeared on my BLMIS statements and I understood that the checks written to numerous Fortune 500 companies represented the purchase of securities in my account because, in fact, my statements showed that I owned the securities of these various companies.

11.  I challenged the Trustee's conclusion that these checks represented distributions to me.  See Exhibit C hereto.

12.  On November 11, 2010, the Trustee sent me another Determination Letter claiming, this time, that my total deposits were $377,350.33 and my total withdrawals were $843,877.06.  See Exhibit D hereto.

13.  I did not keep bank records going back 20 years; nor did my banks. I therefore demanded that the Trustee produce to me the original cancelled checks evidencing these alleged withdrawals because I am certain that I can establish from the backs of these checks that the funds were never received by me.  The Trustee has refused to provide these documents to me and has taken the position that it is my burden to prove that the funds were not received by me, even though the payees on these checks are Fortune 500 companies and not a single check was made payable to me or to my wife.

14.  As I understand the law, the Trustee is a fiduciary of BLMIS customers like myself.  I cannot understand how a fiduciary can withhold from me the original BLMIS cancelled checks to these various corporations which will

{N0047180 }                                     4

show, indisputably, that I never received the payments made to the various corporations shown as payees.

15. If the Trustee does not have the cancelled checks, then surely he has absolutely no basis in law or in fact to claim that these checks, made payable to Fortune 500 companies, were withdrawals by me.

16. The Trustee has caused me a great injustice and I ask this Court to rectify it.

17. I declare under penalty of perjury that the aforesaid facts are true and correct.

_____ 4/29/14
Aaron Blecker

{N0047180}

5