WILLKIE FARR & GALLAGHER LLP
Joseph T. Baio
Todd G. Cosenza
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for Westport National Bank, a division of Connecticut Community Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>         Plaintiff-Applicant<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>             Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |

**WESTPORT NATIONAL BANK'S JOINDER IN CLAIMANTS' OMNIBUS OPPOSITION TO THE TRUSTEE'S MOTION AFFIRMING APPLICATION OF NET INVESTMENT METHOD TO DETERMINATION OF CUSTOMER TRANSFERS BETWEEN BLMIS ACCOUNTS**

Westport National Bank ("WNB") joins in the Claimants' Omnibus Opposition to the Trustee's Motion Affirming Application of Net Investment Method to Determination of Customer Transfers Between BLMIS Accounts, dated May 16, 2014 (the "Opposition").

## FACTUAL BACKGROUND

WNB is a Connecticut-based community bank that was founded in 1998. In July 1999, WNB began operating as a custodian for certain BLMIS investors. WNB assumed that role after the investors' prior custodial bank decided to withdraw from the custodial business. WNB then opened new accounts with BLMIS. On July 26, 1999, approximately $39.9 million of investors' principal was transferred to those accounts from the customers' prior custodial accounts. Between July 26, 1999 and December 11, 2008, WNB made net withdrawals on behalf of its customers of $34.1 million ($1.9 million in additional transfers to its BLMIS accounts and $36 million in total withdrawals) from WNB's Madoff accounts. Thus, during the course of its time as custodian, WNB withdrew approximately $5.8 million less than it deposited ($39.9 million in principal less net withdrawals of $34.1 million).

On December 11, 2008, Bernard Madoff's Ponzi scheme was revealed, and it became clear that the assets in WNB's BLMIS accounts did not exist. Some of WNB's customers subsequently filed claims with the Trustee in connection with the liquidation of BLMIS (the "Customer Claims"). WNB filed a statement in support of the Customer Claims. WNB also submitted its own contingent proof of claim with regard to BLMIS Account No. 1-W0106-3-0 (the "Contingent Claim"). WNB submitted its Contingent Claim "solely as agent and nominee for its principals" in the event that "WNB's principals are deemed not to be entitled to customer status" under SIPA or that their claims "are not deemed entitled to the protections afforded by SIPA."

In April 2011, the Trustee rejected the Customer Claims because it found that WNB was the account holder and the customers did not have direct accounts or a direct relationship with BLMIS. The Trustee has not yet made a determination with respect to the Contingent Claim. However, he has commenced an adversary action against WNB (No. 10-05418) seeking to avoid certain transfers made prior to the BLMIS bankruptcy, and in that proceeding seeks an order disallowing the Contingent Claim pursuant to section 502(d) of the Bankruptcy Code. That litigation remains pending and is currently stayed and has been ordered to mediation.

## ARGUMENT & PRAYER

WNB is a "net loser." Its BLMIS accounts lost $5.8 million between the time they were first opened and BLMIS's bankruptcy. The Trustee's only argument to the contrary depends on the application of the Net Investment Method to inter-account transfers, which WNB submits is not proper for the reasons set forth in the Opposition. Although the Trustee has not made a determination with respect to WNB's customer claim at this time, WNB joins in the Opposition to preserve its right to argue (i) that the $39.9 million in investor money that was transferred to WNB's BLMIS accounts on July 26, 1999 constituted principal, (ii) that the subsequent withdrawal of $34.1 million in principal was "for value," and (iii) that WNB has a valid claim in the amount of approximately $5.8 million.

For the reasons detailed in the Opposition, WNB respectfully submits that the Court should deny the Trustee's motion.

Dated: May 16, 2014  
      New York, New York

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: _/s/ Todd G. Cosenza_

Joseph T. Baio  
Todd G. Cosenza  
787 Seventh Avenue  
New York, New York 10019-6099  
Telephone: (212) 728-8000  
Facsimile: (212) 728-8111

*Attorneys for Westport National Bank, a division of Connecticut Community Bank, N.A.*