KACHROO LEGAL SERVICES P.C.
Gaytri D. Kachroo
Gaytri Kachroo
245 Park Avenue, 39th Floor
New York, NY 10167
Tel: (212) 372-8939
Fax: (617) 864-1125

*Attorneys for The Diana Melton Trust, Dated 12/05/05*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>　　　　　　　　Plaintiff-Applicant,<br>　　v.<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>　　　　　　　　Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>　　　　　　　　Defendant. | |

**THE DIANA MELTON TRUST, DATED 12/05/05 OPPOSITION TO THE TRUSTEE'S MOTION AFFIRMING APPLICATION OF NET INVESTMENT METHOD TO DETERMINATION OF CUSTOMER TRANSFERS BETWEEN BLMIS ACCOUNTS**

The Diana Melton Trust, Dated 12/05/05 ("DMT"), opposes the "Trustee's Motion Affirming Application of Net Investment Method to Determination of Customer Transfers between BLMIS Accounts" [D.E. No. 6084],[1] (the "Motion"), for the applicable reasons stated in the memoranda of law filed by other customers in opposition to the Motion, including, but not

---

[1] Docket Entry references shall be referred to as [D.E. No. ___] and refer to the pleadings filed in the main bankruptcy proceeding pending before this Court, captioned *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), unless otherwise noted.

1

limited to, the memorandum of law filed by Milberg LLP and Seeger Weiss LLP, on behalf of other customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") (the "Omnibus Opposition Brief") [D.E. No. 6732].

DMT was a Customer of BLMIS, had an account at BLMIS under Account Number 1ZA699, and timely-filed a customer claim. The Trustee subsequently issued a "Notice of Trustee's Determination of Claim," [D.E. No. 874] denying DMT's claim in its entirety. Thereafter, DMT objected to the Trustee's determination. [D.E. No. 874-1]. Although the Customer claim was denied, no avoidance action was initiated by the Trustee.

In addition to the reasons stated in the Omnibus Opposition Brief [D.E. No. 6732], DMT Opposes the Trustee's Motion on the additional basis that it incorrectly implies and asserts that DMT was not an Inter-Account Transfer recipient (as defined by the Trustee). [D.E. 6085 at Page 16]. In mid 2007, BLMIS was instructed to create a new account in DMT's name, and subsequently transfer the entire proceeds of the Ernest Melton Trust into DMT's Account. *See* Affidavit of Andrew Melton dated May 21, 2014 at ¶ 1-2.[2] BLMIS duly complied and DMT consequently declared and paid tax on its new BLMIS account, which was in its exclusive control. *See* Aff. A. Melton (5/21/14) at ¶ 3-4. As such, DMT's account was separate and distinct not continuous from the Transferor's account.

Accordingly, this transfer of funds between the two accounts was a transfer between two Customers using two separate and distinct, names, TIN numbers and beneficiaries and therefore must be treated entirely separately.

## ARGUMENT

### I.    The Transferor Account Was Legally Distinct From the Transferee Account

---

[2]   The Affidavit of Andrew Melton shall be referred to as Aff. A. Melton (5/21/14) at ¶ ___.

2

In July, 2007, the trustees of DMT gave written direction to BLMIS to create a new account in favor of DMT ("DMT Account"). Instruction and authorization was subsequently provided by the trustees of the Ernest Melton Trust to transfer the proceeds of its entire account (the "Transferor Account") into the DMT Account. *See* Aff. A. Melton (5/21/14) at ¶ 1-2. BLMIS duly complied and created an account in the name of The Diana Melton Trust; transferred the proceeds of the Transferor Account to the DMT Account, and closed the Transferor Account. *Id.* at ¶ 3.

BLMIS assigned the new DMT Account an internal account number of 1ZA699, which was mistakenly recorded as the same account number as the now closed Transferor Account. The Trustee therefore incorrectly treated the two accounts as one because this internal account designation was is in fact irrelevant for the purpose of determining whether the accounts were separate and distinct from one another. There are multiple indicia which establish that the two were legally distinct accounts, including the following:

a. The Ernest Melton Trust was the sole account holder of the Transferor Account and DMT was the sole account holder of the new DMT Account. *See* Aff. A. Melton (5/21/14) at ¶ 3;

b. The new DMT Account was created with a Tax Identification Number ("TIN") registered to DMT. *Id.* at ¶ 3;

c. DMT declared the DMT Account to revenue authorities after its creation and paid Federal tax on the same, whereas, the Transferor declared and paid tax on the Transferor Account. *Id.* at ¶ 5.

d. The Transferor had no ownership interest or right in the DMT Account, just as DMT had no interest or right in the Transferor Account.

3

e.  The Transferor, DMT, BLMIS and applicable tax revenue authorities treated the accounts separately, in accordance with the Transferor and DMT's explicit instructions. *See* Aff. A. Melton (5/21/14) at ¶ 3-5.

Additionally, the Transferor's authorization to transfer funds reflects the Transferor's assertion of dominion and control over the monies transferred, which establishes it as an initial transferee. *See In. re Manhattan Inv. Fund, Ltd.,* 397 B.R. 1, 32-34 (S.D.N.Y. 2007) (initial transferee "must exercise dominion over the funds at issue and be able to put them to his own purposes") (citation *omitted*); *Christy v. Alexander & Alexander of NY, Inc.,* 130 F.3d 52, 58 n.3 (2d Cir. 1997).

Accordingly, it is overwhelmingly clear that the Transferor Account and DMT's account were in fact separate and distinct and must be treated as such.

## II.  The Transfer Was Between Separate Customers

As elaborated in the Omnibus Opposition Brief, the Trustee has ignored the separate nature of the capacities in which the Transferor and DMT's trustees acted [D.E. 6732 at Page 6]. Both the Transferor and DMT were "Customers" of BLMIS in their own right pursuant to 15 U.S.C.A. § 78lll(2) as they both "maintain[ed] accounts with broker-dealers and […] trade[d] or invest[ed] through them." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 296 (Bankr. S.D.N.Y. 2011), *aff'd sub nom; In re Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom; In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013). The District Court has likewise confirmed that "the existence of an account with the debtor is fundamentally linked to customer status under SIPA." *Sec. Investor Prot. Corp.* , 454 B.R. at 296.

4

Here, the Transferor and DMT were/are legally distinct entities who held their separate accounts at BLMIS under different names with different beneficiaries. As such, that the transfer was from one Customer to another.

### III. The Trustee Has Already Treated The Transferor And DMT As Separate Entities

In the event that Customers' withdrawals exceeded their deposits, the Trustee has routinely initiated avoidance actions to "claw back" the difference pursuant to section 548(a)(1) of the Bankruptcy Code within the relevant two year look-back period. However, in DMT's case, no such clawback action was initiated. The Trustee pursued "Net-Winners", but not DMT, despite his stated basis for the denial of customer claim. The only reasonable explanation for the difference is that the Trustee is unable to provide any legal basis for an avoidance action, because legally, the two accounts are separate and distinct. Such a conclusion is inevitable, as the Transferor's authorization rendered it the 'initial transferee' with respect to the alleged withdrawals. *See In re Manhattan Inv. Find, Ltd., Ibid*. at 32-34.

The Trustee now attempts to do an end-run around the procedural requirement to seek avoidance of any sums alleged under section 548(a)(1), while also denying the Customer's claim by instead impermissibly treating two separate accounts of two separate Customers as one. The Trustee cannot have his cake and eat it too.

### CONCLUSION

The transfer of funds that occurred in the instant case was between two separate Customers, using two separate accounts with two different Customer names, beneficiaries and TIN numbers, but mistakenly the same internal account number. The accounts must accordingly be treated separately. DMT's Customer claim may only be debited with any alleged withdrawals made from the DMT Account. The Trustee's treatment of inter-account transfers in the

5

determination of Customers' Net Equity claims is incorrect as a matter of law and the Trustee's Motion should be denied in its entirety. DMT respectfully requests the Court direct the Trustee to credit DMT's Account with the full unadjusted amount of the inter-account transfer as principal deposits and recalculate DMT's claim accordingly.

Dated: May 21, 2014

Respectfully submitted,

KACHROO LEGAL SERVICES P.C.

*/s/ Gaytri D. Kachroo*
Gaytri Kachroo
245 Park Avenue, 39th Floor
New York, NY 10167
Tel: (212) 372-8939
Fax: (617) 864-1125

*Attorneys for The Diana Melton Trust, Dated 12/05/05*

6

**CERTIFICATE OF SERVICE**

I, Gaytri Kachroo, hereby certify that on the 21st day of May, 2014, I electronically filed THE DIANA MELTON TRUST, DATED 12/05/05 OPPOSITION TO THE TRUSTEE'S MOTION AFFIRMING APPLICATION OF NET INVESTMENT METHOD TO DETERMINATION OF CUSTOMER TRANSFERS BETWEEN BLMIS ACCOUNTS with the Clerk of the Court using the CM/ECF system, which automatically sent notification of such filing to the parties in this action that have elected to receive electronic notification through the CM/ECF system.

Respectfully submitted,

KACHROO LEGAL SERVICES P.C.

*/s/ Gaytri D. Kachroo*
Gaytri Kachroo
245 Park Avenue, 39th Floor
New York, NY 10167
Tel: (212) 372-8939
Fax: (617) 864-1125

*Attorneys for The Diana Melton Trust, Dated 12/05/05*

7