Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - - - - - - - - - - - - x

4  In the Matter of:

5

6  SECURITIES INVESTOR PROTECTION

7  CORPORATION,                    Case No. 08-1789(SMB)

8

9          Debtor.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - x In

12  SECURITIES INVESTOR PROTECTION

13  CORPORATION,

14              Plaintiff,

15          v.                  Adv. Case No. 08-01789(SMB)

16  BERNARD L. MADOFF INVESTMENT

17  SECURITIES, LLC,

18              Defendant.

19  - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

Page 2

1    IRVING H. PICARD, TRUSTEE FOR

2    LIQUIDATION OF BERNARD L. MADOFF

3    INVESTMENT SECURITIES LLC,

4                    Plaintiff,

5            v.                      Adv. Case No. 10-04941(SMB)

6    MOST,

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    IRVING H. PICARD, TRUSTEE FOR

10   LIQUIDATION OF BERNARD L. MADOFF

11   INVESTMENT SECURITIES LLC,

12                   Plaintiff,

13           v.                      Case No. 10-04947(SMB)

14   MOST,

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17                   U.S. Bankruptcy Court

18                   One Bowling Green

19                   New York, New York

20

21                   May 13, 2014

22                   10:20 AM

23

24

25

1    B E F O R E :

2    HON STUART M. BERNSTEIN

3    U.S. BANKRUPTCY JUDGE

4

5

6

7

8    Hearing re:   Conference on Chaitman Letter of May 7, 2014

9

10    Hearing re:   Order to Show Cause Why Subpoenas Issued By

11    Plaintiff Should Not Be Quashed And Protective Order Should

12    Not Be Granted

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

Page 4

```
 1   A P P E A R A N C E S :
 2   BECKER & POLIAKOFF, LLP
 3        Attorney for Claimants
 4        45 Broadway
 5        8th Floor
 6        New York, NY 10006
 7
 8   BY:  HELEN DAVIS CHAITMAN, ESQ.
 9
10   BAKER HOSTETLER
11        Attorneys for the Trustee
12        45 Rockefeller Plaza
13        New York, NY 10111
14
15   BY:  SARAH JANE T.C. TRUONG, ESQ.
16        EDWARD J. JACOBS, ESQ.
17        NICHOLAS J. CREMONA, ESQ.
18        SEANNA R. BROWN, ESQ.
19
20   PRYOR CASHMAN LLP
21        Attorney for Various Customers
22        7 Times Square
23        New York, NY 10036-6569
24
25   BY:  RICHARD LEVY, JR., ESQ.
```

Page 5

1  LOEB & LOEB LLP

2       Attorney for Various Customers and Defendants

3       345 Park Avenue

4       New York, NY 10154-1895

5

6  BY:  DANIEL B. BESIKOF, ESQ.

7

8  DAVISDON & GRANNUM, LLP

9       30 Ramland Road

10      Suite 201

11      Orangeburg, NY 10962

12

13  BY:  CANDIS CLARK, ESQ.

14

15  STIM & WARMUTH, P.C.

16      Attorney for Michael and Marjorie Most

17      2 Eighth Street

18      Farmingville, NY 11739

19

20  BY:  PAULA J. WARMUTH, ESQ.

21

22

23

24

25

Page 6

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Madoff?

 3        (Pause)

 4            THE COURT:  Go ahead.

 5            MS. CHAITMAN:  Good morning, Your Honor, Helen

 6    Davis Chaitman of Becker & Polaikoff.  I'm just here on a

 7    calendaring issue, Your Honor.

 8            The trustee has responded to our document demand

 9    with respect to those inter-account transfer claimants that

10    we've represented by filing objections and the documents are

11    over 300,000 pages of documents.

12            We had asked for an extension of time to respond,

13    the trustee had agreed to 30 days, we asked for 60 days, and

14    unfortunately we've had a delay in simply getting the

15    documents because we've had an issue about the disclosure --

16    the non-disclosure agreement, and I have a proposed order

17    that I'd like to hand up to the Court which very simply

18    deals with these documents.

19            The issue really is, Your Honor, whether documents

20    relating to individual accounts have to be filed under seal.

21    I think it creates an unfair burden on us to have to file

22    all these documents under seal, and I don't think there's

23    anything confidential about the documents that can't be

24    redacted.  In other words we would certainly redact social

25    security numbers.  But otherwise these are simply documents
```

Page 7

1   relating to either the accounts of our clients or the

2   relatives who transferred money into the accounts of our

3   clients.

4           THE COURT:  Okay.

5           MS. CHAITMAN:  May I approach the bench and hand

6   up this --

7           THE COURT:  Well, let me hear --

8           MS. CHAITMAN:  Okay.

9           THE COURT:  I'm not going to read an order now

10  anyway.

11          MS. CHAITMAN:  Okay.

12          MS. TRUONG:  Good morning, Your Honor, Sarah Jane

13  Truong from Baker Hostetler on behalf of the trustee.

14          First I'd like to point out that Ms. Chaitman's

15  letter raises more issues than merely just a request for an

16  extension, and I'd like to be able to address the points

17  that she raises in her letter.

18          THE COURT:  Go ahead.

19          MS. TRUONG:  First of all the trustee maintains

20  that any discovery that Ms. Chaitman has requested on behalf

21  of the Chaitman claimants has no bearing on the legal issue

22  before Your Honor.

23          In addition, the delay that would be in place here

24  should the date be extended would impact hundreds of other

25  claimants.

Page 8

1            Moreover, any factual issues that Ms. Chaitman's

2    clients may raise are preserved for a later date and are --

3    have no bearing to the legal issue before Your Honor, which

4    is the application of the net investment method to the

5    calculation of inter-account transfers, not how that

6    calculation is actually applied to any specific claims.

7            The second issue I'd like to address is any

8    perceived delay in the discovery.

9            The trustee has gone above and beyond to

10   accommodate any discovery requests.  When Ms. Chaitman

11   served her document request on April 4th we identified 102

12   unique BLMIS accounts.  We had to then conduct an

13   investigation to identify any further accounts -- BLMIS

14   accounts that affect the net equity of those 102.  We

15   identified 232 additional accounts.  So for a total of 334

16   accounts we then had to identify the responsive documents

17   that relate to those accounts.

18           We went through and undertook in a very short

19   amount of time to identify certain categories of documents,

20   and within three weeks after Ms. Chaitman's requests were

21   served we provided her with summary sheets that basically

22   provide a road map of the different types of documents that

23   would be responsive and also identifies each document and

24   the relevant page numbers in each document for each of the

25   BLMIS accounts.

Page 9

1          THE COURT:  I don't understand her to be arguing

2     that you haven't -- the documents aren't available.

3          MS. TRUONG:  Right.

4          THE COURT:  I understand the argument she needs

5     more time to look at them and there's an issue about how

6     those documents can be used in connection with filings.

7          MS. TRUONG:  Yes.  So the documents were

8     originally provided to her on April 25th in an electronic

9     production with what we call E Data Room 1, it's a data room

10    that contains all the documents and she could use the road

11    maps that we provided her to view ,and also request for

12    physical copies if she wanted to, but she could search

13    through those documents, view them, review them, tag any she

14    wants a physical copy of.  They're already in redacted form

15    for any personally identifiable information in this data

16    room.

17          To the extent then Ms. Chaitman did not want to

18    sign the non-disclosure agreement that governs the data room

19    we advised her that we could provide the documents to her.

20          THE COURT:  Are you insisting that the account

21    records be filed under seal?

22          MS. TRUONG:  No, we are not insisted at all that

23    the account records be filed under seal.

24          THE COURT:  All right.  So that sounds like a non-

25    issue.

Page 10

1          MS. CHAITMAN:  That's correct.

2          THE COURT:  Okay.

3          MS. TRUONG:  Yes, we are not, we were just merely

4    stating that if she wants the documents in unredacted format

5    she would need to sign an undertaking consent to be bound by

6    the litigation protective order because those documents do

7    contain confidential material, the personally identifiable

8    information of claimants that are not represented by

9    Ms. Chaitman.

10          To the extent those documents are then used of

11   course if she does not to file them under seal then she --

12   and she does want to use them in any public filing she

13   understands and we understand she can redact them under

14   9037.

15          THE COURT:  Well they're her clients, yeah.

16          MS. TRUONG:  The 102 accounts relate to her

17   clients, the other 232 accounts that affect the net equity

18   of those 102 are not represented by Ms. Chaitman.

19          THE COURT:  Okay, I got it.  Thank you.

20          Anybody else?

21          All right.  There are really two issues here.  One

22   concerns the timing of the motion.

23          I don't think you were here the last time, Ms.

24   Chaitman, but we had a discussion about this and the need

25   for discovery concerning the motion, and at that time I told

Page 11

1    your colleague, look, if you can convince me that I can't

2    decide this motion as a matter of law like a motion for

3    summary judgment then I'll deny the motion and we'll move on

4    to the next phase.

5              The trustee insists I can decide it as a matter of

6    law without documents so I'm happy to try that.

7              With respect to the timing, it's not -- or the

8    discovery issue it's not clear to me what the dispute is at

9    this point.  They don't have to be filed under seal.  Since

10   you don't need them for the motion, you can look at them I

11   guess at a more leisurely pace, the requirement that you

12   sign a non-disclosure agreement because you're going to be

13   looking at records that are not your clients' records seems

14   to me to be a reasonable way to deal with it.

15             I also noticed in your letter about having to tag

16   documents for copying.  I remember being a young lawyer and

17   going on document searches and that's what you do, you tag

18   the documents, you gave them into whoever produced them and

19   they made copying for you.  So that one doesn't offend me

20   that much I have to tell you.

21             MS. CHAITMAN:  It's a little bit different now,

22   Your Honor, because we're all dealing with electronic

23   documents.

24             THE COURT:  I don't know, I haven't practiced in

25   20 years, so --

Page 12

1            MS. CHAITMAN:  I know.

2            HE COURT:  -- I'll take your word for it.

3            MS. CHAITMAN:  This is the thing, Your Honor,

4    basically what happens is if we had to go to the electronic

5    data room and simply tag the documents and then get PDFs,

6    which are almost like physical copies, we wouldn't be able

7    to search them on our own computer system, and when we're

8    dealing with hundreds of thousands of pages of documents the

9    only way we can manageably deal with them is to be able to

10   put them on our computer system and search them.

11           THE COURT:  Is there an objection to producing all

12   the documents as long as she signs a non-disclosure

13   statement agreement and pays for the production?

14           MS. TRUONG:  I would lie to clarify one point.

15           THE COURT:  Just -- I mean, you know --

16           MS. TRUONG:  To the extent --

17           THE COURT:  -- if she wants to pay for it.

18           MS. TRUONG:  Yes.  Well, I just wanted to clarify

19   one point.

20           To the extent she does tag documents for

21   production we would be giving an electronic production so

22   that could be loaded into a separate database.

23           But yes, we are amenable to providing an

24   electronic production whether -- because they are tagged in

25   the E Data Room and she signs a non-disclosure statement

1    agreement --

2              THE COURT:  Right.

3              MS. TRUONG:  -- or if she signs the litigation

4    productive order and she wants a separate unredacted

5    version.  We are amenable to providing it either way.

6              THE COURT:  Why don't you see if you can work it

7    out.  It sounds like you're on the same wave length.

8              MS. CHAITMAN:  Okay.  So the only issue now is

9    when our papers would be due, Your Honor.

10             THE COURT:  I haven't changed the schedule.

11             MS. CHAITMAN:  Okay.

12             MS. TRUONG:  Thank you, Your Honor.

13             THE COURT:  All right.

14             MS. CHAITMAN:  Thank you.

15             THE COURT:  You should have taken the 30 days

16   while you had it.

17             Next?  I have a motion to quash subpoenas?  Okay.

18   Who represents the movant?

19             MS. WARMUTH:  I do, Your Honor.

20             THE COURT:  Okay.

21             MS. WARMUTH:  Paula Warmuth, Stim & Warmuth, P.C.,

22   I represent the movants, Michael Most and Marjorie Most.

23             They are defendants in a claim for fraudulent

24   transfer under 548(a)(1)(a), which is -- permits the trustee

25   to avoid any transfer of an interest of the debtor in

Page 14

1    property incurred within -- on or within two years of the

2    date of filing.

3           The first thing the trustee argues is that

4    although we admitted we received the two-year transfers --

5           THE COURT:  Well you didn't, you denied it in your

6    answer.

7           MS. WARMUTH:  No, we admitted it in the notice to

8    admit.

9           THE COURT:  Oh, I didn't see that.

10          MS. WARMUTH:  Yeah, that's -- I'll give you the --

11          THE COURT:  Which exhibit is that?

12          MS. WARMUTH:  -- the exhibit number.

13      (Pause)

14          MS. WARMUTH:  That's Exhibit E.  If you look at

15   paragraphs 1, 2, and 3.

16          THE COURT:  Okay.

17          MS. WARMUTH:  So we did admit it.  They say that

18   refused to produce them.  I don't recall that we've been

19   asked to produce the checks for Madoff to my client during

20   the two years, but in any event the trustee has produced

21   these checks, I have them right here, their Bates numbered.

22   Every check in --

23          THE COURT:  Can ask you a question?  I'm looking

24   at your notice to admit number 2, which are the two-year

25   transfers, why didn't you just admit it?  Why do you deny it

Page 15

1   and then admit it?

2              MS. WARMUTH:  Because I don't like to characterize

3   -- use their words, I want to use my words for admissions.

4              THE COURT:  But you basically admitted everything

5   that they asked you to admit.

6              MS. WARMUTH:  Well, I don't use their terminology.

7   I say that we got the funds that they allege in Exhibit B of

8   the amended complaint --

9              THE COURT:  But you're not admitting that you were

10  an initial transferee and that's what they're interested in,

11  among other ones.  You can just say you got the money.

12             MS. WARMUTH:  Well there's no question that we got

13  the money from Madoff because they produced the checks and

14  we've got them right here.

15             THE COURT:  Well -- okay, go --

16             MS. WARMUTH:  So I mean they don't need to get

17  bank records --

18             THE COURT:  Why don't you just admit --

19             MS. WARMUTH:  -- for seven years --

20             THE COURT:  -- why don't you just amend your

21  admissions to say I admit, I was the initial transferee and

22  all the transfers which are indicated, at least for the two-

23  year transfers?

24             MS. WARMUTH:  Because they have defined terms and

25  I don't want to use their defined terms.

```
 1              THE COURT:  But initial transferee is not a -- not
 2    their term.  Would you prefer immediate transferee?
 3              MS. WARMUTH:  No.  No, I mean I understand that
 4    they got the checks directly from Madoff, but --
 5              THE COURT:  I just think you're making this more
 6    difficult than it has to be.  If you admit you got the
 7    transfers, the initial transfers just admit it.
 8              MS. WARMUTH:  But that's not the issue of the
 9    subpoenas.  They want seven years worth of checks --
10              THE COURT:  Where'd the number seven come from?  I
11    was looking through the subpoenas and it's --
12              MS. WARMUTH:  Oh, if you look at the subpoena --
13              THE COURT:  Because the applicable period is 17
14    years.
15              MS. WARMUTH:  -- they have seven years.  In the --
16    if you look at the subpoena, Exhibit F, for example -- oh,
17    I'm sorry, maybe I added wrong, 1992 to 2009.
18              THE COURT:  That's 17.
19              MS. WARMUTH:  I miscounted.
20              THE COURT:  Yeah.
21              MS. WARMUTH:  You're right.
22              THE COURT:  Okay.  Because we were looking all
23    over for that number and we couldn't find it.
24              MS. WARMUTH:  You know you're absolutely right.
25              HE COURT:  I was always good in math.
```

Page 17

1                MS. WARMUTH:  I guess I'm not.

2                But the thing is it's only the two years that in

3        claim that are at issue.

4                THE COURT:  Well but not really under the net

5        investment method.  They have to go all the way back and

6        compute all of the deposits and all of the withdrawals to

7        determine what your net equity is.

8                MS. WARMUTH:  And they've done that.  They have

9        all those records.  They've produced them in document

10       production.  They have all the records going in, coming out.

11               THE COURT:  Have you admitted -- well, I

12       understand they have it, have you asked her to admit -- the

13       schedules I take it in the complaint encompass all of the

14       withdrawals and deposits --

15               MS. WARMUTH:  Yes, Your Honor.  If you look at --

16               THE COURT:  -- in the account?

17               MS. WARMUTH:  -- Exhibit A --

18               THE COURT:  Has she -- if she's admitted it I

19       don't know why you need the checks.

20               MR. JACOBS:  Your Honor, the defendants have made

21       the admissions only with respect to two-year transfers

22       preceding the filing of the petition.

23               THE COURT:  Well --

24               MR. JACOBS:  But --

25               THE COURT:  -- you don't -- do you have any

Page 18

1    schedules that go back to 1992?  You got six-year schedules

2    and two-year schedules.  As I said, do your schedules

3    include all of the transfers?

4              MS. WARMUTH:  We include all of them.

5              MR. JACOBS:  Yes, Your Honor.

6              THE COURT:  Okay.  And so she admits, yes, those

7    were all of the transfers and all of the deposits.  What

8    more do you need?

9              MR. JACOBS:  Well the admissions only relate to

10   transfers from BLMIS in the two-year period directly

11   proceeding the petition for filing.

12             The defendants' affirmative defenses raise issues

13   of deposits and withdraws to those accounts throughout the

14   relevant life of the accounts going back to 1992, which is

15   why we requested the financial records through that date.

16             THE COURT:  I'm just trying to find out if there's

17   a dispute in terms of what went in and came out of the

18   account from day one.  What's the dispute?

19             MR. JACOBS:  Well, I think that the defendants

20   have raised affirmative defenses that dispute all -- that

21   raise all kinds of issues related to antecedent debt and the

22   way that the trustee calculates the deposits and withdraws

23   to those accounts.

24             So we have records for BLMIS accounts and we have

25   the customer statements; however, we don't have the

1   defendants' bank records that would prove or disprove the

2   defenses that they're raising concerning their

3   characterization of deposits and withdraws made to and from

4   the relevant accounts.

5         THE COURT:  I'm not sure I understand that.  But

6   if they admit that this is everything that went in and out

7   of the account I don't -- I don't know what more information

8   -- what information you need at least in your direct case.

9   Do you need anymore in your direct case?

10        MR. JACOBS:  Not with respect to our allegations

11   concerning the two-year transfers.

12        THE COURT:  Okay.  So then the question is the

13   affirmative defenses.

14        MR. JACOBS:  Right.

15        THE COURT:  And you raise two issues in your

16   letter -- three I guess.  One was the antecedent debt

17   defense.

18        MR. JACOBS:  Correct.

19        THE COURT:  And one was this kind of equitable

20   defense that was raised.

21        MR. JACOBS:  Right.

22        THE COURT:  And the third was subsequent

23   transfers.

24        MR. JACOBS:  Correct.

25        THE COURT:  Okay.

Page 20

1              MR. JACOBS:  So the --

2              THE COURT:  And the subsequent transfers would

3       only be relevant to the two-year transfers because those are

4       the only transfers you can avoid right now.

5              MR. JACOBS:  That's correct, but that information

6       concerning how the transfers might have been disbursed by

7       the defendants is uniquely in the defendants' financial

8       records.  We don't have --

9              THE COURT:  But only for the two-year -- if it's

10      just limited to the two-year transfers it's just -- you just

11      reach back two years.

12             MR. JACOBS:  Correct, but Your Honor, we don't

13      have the defendants' financial records for those two years.

14             HE COURT:  That I understood.

15             MR. JACOBS:  Yes.

16             HE COURT:  All right.  Now one of the issues that

17      was raised in the trustee's response is you haven't met and

18      conferred.  And I realize the time is tight on this.  Are

19      you insisting that the subpoenas be complied with on the

20      16th?

21             MR. JACOBS:  Well no, Your Honor, we have made

22      several offers to meet and confer even after these motions

23      were filed and the defendants have ignored our request.

24             MS. WARMUTH:  I disagree with that.  I'm still

25      waiting for --

1              THE COURT:  Are you prepared to meet?  Are you

2      prepared to meet and confer?

3              MS. WARMUTH:  I'm just concerned the 16th is on

4      Friday.

5              THE COURT:  He's -- I understand, but he says that

6      he's not going to insist on compliance with the subpoena on

7      the 16th, then you'll meet and confer and another court

8      conference.

9              MR. JACOBS:  Right, and the only caveat to that,

10     Your Honor, is the fact discovery in this case closes on

11     May 30, so to the extent the defendants are attempting to

12     delay discovery on relevant issues --

13             HE COURT:  Any objection to extending discovery so

14     that we can --

15             MS. WARMUTH:  No, I --

16             THE COURT:  -- if possible resolve this?

17             MS. WARMUTH:  -- there's a lot of discovery I

18     didn't get.  A lot of discovery I didn't get from the

19     trustee also.

20             THE COURT:  What discovery do you need?

21             MS. WARMUTH:  I have various demands I've made

22     that they haven't complied with, I've written them a good

23     faith letter, I'm waiting for them to respond.  They haven't

24     responded.

25             THE COURT:  All right.  You can deal with that in

Page 22

1    the meet and confer also.

2            MS. WARMUTH:  I'm not bringing that up now, but

3    Your Honor, as far as the subsequent transferees the statute

4    says, "The trustee may not recover under this section from

5    an immediate or immediate good faith transferee of such

6    transferee," and the trustee has admitted that the

7    subsequent transferee is a good faith --

8            THE COURT:  But provided you paid value and took

9    without knowledge the avoidability of the transfer.

10           MS. WARMUTH:  Well it doesn't say that in the

11   statute.

12           THE COURT:  That's what it says in 550(b)(2).

13           MS. WARMUTH:  You're saying --

14           THE COURT:  The subsequent transferee has

15   additional defenses once you get past the good faith of the

16   initial transferee, but the subsequent transferee has an

17   affirmative defense that the defendant has to plead and

18   prove, which is that they took in good faith for value and

19   without knowledge of avoidability of the transfer, right?

20           MS. WARMUTH:  For a transferee, yes.

21           THE COURT:  He's not -- he's not -- yeah.

22           MS. WARMUTH:  That's subdivision 1.

23           THE COURT:  Right.

24           MS. WARMUTH:  Subdivision 2 as, "Or you cannot

25   recover from any immediate or immediate good faith

Page 23

1    transferee."  It doesn't have for value without knowledge in

2    that subdivision.

3              THE COURT:  The initial transferee -- the good

4    faith of the initial transferee is covered by 548(c) --

5              MS. WARMUTH:  I was looking --

6              THE COURT:  -- and that goes to reduce the amount

7    of the transfer.  Once -- the avoidable transfer.  Once the

8    transfer is avoided then you look to 550 for the recovery.

9    Under 550 you can recover everything that's avoidable from

10   the initial transferee and then the subsequent transferee

11   has additional defenses.

12             There's a second good faith hurdle, but it's not

13   enough to show -- for the subsequent transferee to show that

14   it took in good faith, it also has to show that a value and

15   took without knowledge of avoidability of the transfer.

16             The 82 is referring to subsequent transferees and

17   then (b) there's a limitation on the ability to recover from

18   subsequent transferees.

19             MS. WARMUTH:  Correct.

20             THE COURT:  The bottom line is for a subsequent

21   transferee they have to prove more than they took in good

22   faith, and the trustee is not necessarily contesting that

23   subsequent transferee took in bad faith, although I suppose

24   you never know who they transferred to.

25             MS. WARMUTH:  Well they would consent -- they've

Page 24

```
 1    admitted that they took in good faith.

 2              THE COURT:  The initial transfer was in good

 3    faith.

 4              MS. WARMUTH:  And the subsequent transferee.  It's

 5    right in the papers that were submitted to the Court.

 6              THE COURT:  Okay.

 7              MS. WARMUTH:  It said, "The trustee does not

 8    challenge the good faith of the initial or subsequent

 9    transferees."

10              THE COURT:  Okay.  But he hasn't admitted that

11    they took the value or they took it without knowledge of

12    avoidability of the transfer.

13              MS. WARMUTH:  No.

14              THE COURT:  So there's still an -- all I'm saying

15    is there's still an issue with subsequent transferees, but

16    what I would do is meet and confer, I'll suspend the date to

17    comply with the subpoenas pending the meet and confer and

18    another court conference.

19              MS. WARMUTH:  Your Honor, may I -- may I notify

20    the banks --

21              THE COURT:  Well I'll have -- since they served a

22    subpoena you notify them, okay?

23              MR. JACOBS:  Okay.

24              THE COURT:  You're notifying them, not --

25              MS. WARMUTH:  I'm just worried they're going sent
```

Page 25

1    the papers early.

2              THE COURT:  My experience with banks is they'll

3    probably send it six months from now if they send it at the

4    all, but I understand your concern, but I'll direct the --

5    Mr. Picard's counsel to notify the banks not to comply with

6    all further notice.

7              MS. WARMUTH:  Thank you.

8              THE COURT:  Let me just give you a date to come

9    back.

10        (Pause)

11             THE COURT:  You can come back May 28th or

12   May 29th, what's your pleasure?

13             MS. WARMUTH:  Your Honor, may I get my calendar?

14             THE COURT:  Sure.  But in the interim you should

15   meet and confer.

16        (Pause)

17             MR. JACOBS:  Your Honor, I just want to note for

18   the record that we have already instructed the banks not to

19   comply with are subpoenas until further notice given --

20             THE COURT:  Boy you're fast, I didn't even see you

21   leave the room.

22             MR. JACOBS:  I'm sorry?

23             THE COURT:  Never mind.

24        (Laughter)

25             MR. JACOBS:  That happened prior to today.

Page 26

1           THE COURT:  Okay.

2           MS. WARMUTH:  Your Honor, I cannot find my

3    calendar, but I am going to be out of the --

4           THE COURT:  All right, why don't you -- why don't

5    you do this.  I'll put you down for the 28th, If that's not

6    convenient just let me know and we'll put it on to the 29th,

7    okay?  Take your time.

8           MS. WARMUTH:  May -- I found it.

9           THE COURT:  Oh, good.

10          MS. WARMUTH:  Okay.  May 28th is fine.

11          THE COURT:  Okay.  May 28th.  I'll ask you to

12   write me a letter just before then to let me know what's

13   still out -- you know, what issues are still outstanding,

14   okay?  10 o'clock, see you on May 28th.  Enjoy the holiday.

15          MS. WARMUTH:  Thank you, Your Honor.

16          THE COURT:  Okay, thank you.

17       (Whereupon these proceedings were concluded at 10:33

18   AM)

19

20

21

22

23

24

25

1                           I N D E X

2

3                            RULINGS

4                                            Page        Line

5      Court's Ruling                          24          14

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 28

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Dawn South

Digitally signed by Dawn South
DN: cn=Dawn South, o=Veritext,
ou, email=digital@veritext.com,
c=US
Date: 2014.05.14 16:38:32 -04'00'

7

8    AAERT Certified Electronic Transcriber CET**D-408

9

10   Veritext

11   330 Old Country Road

12   Suite 300

13   Mineola, NY 11501

14

15   Date:  May 14, 2014

16

17

18

19

20

21

22

23

24

25