# EXHIBIT C

# SANDAK HENNESSEY & GRECO LLP
COUNSELORS AT LAW

707 Summer Street   Stamford, CT 06901-1026
Telephone (203) 425-4200   Facsimile (203) 325-8608

Stephen J. Conover
Kevin M. Greco
William J. Hennessey, Jr.
Gary S. Klein
Marc J. Kurzman*
Stephanie A. McLaughlin*
Peter M. Nolin
Jay H. Sandak
Elizabeth A. B. Suchy*
Michael P. Sweeney

Amy E. Souchuns
Jacqueline N. Olschan*
Susan R. Briggs*
Brian A. Daley*
Patrick J. Hanna*
Adam P. Redder

*Also Admitted in New York

June 29, 2009

**VIA FEDERAL EXPRESS**

Irving H. Picard, Esq., Trustee
Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Re:   DAPREX, Inc. Defined Contribution Pension Plan a/k/a DAPREX Profit Sharing and 401(k) Plan (BLMIS Account Nos. 1-D0053-3-0 and 1-D0053-4-0)

Dear Mr. Picard:

This law firm represents four (4) individual participants (the "Participants") in the DAPREX, Inc. ("DAPREX") Profit Sharing and 401(k) Plan (the "Plan" or the "DAPREX Plan"). The Participants' contributions to the Plan, as well as employer contributions made on their behalf, were deposited with Bernard L. Madoff Investment Securities LLC ("BLMIS") for the purpose of purchasing securities. We hereby submit individual Customer Claims on behalf of the Participants who wish to pursue their rights under the Securities Investor Protection Act of 1970 ("SIPA").[1] We write this letter in support of our contention that you should treat each of the Participants in the Plan as separate "customers" of BLMIS for purposes of this liquidation proceeding, to the full extent of their vested interest in their individual 401(k) Plan accounts as shown on Schedule 1 to this letter. The enclosed submission includes the following:

1. A Schedule of the DAPREX Plan Participants submitting Customer Claims.
2. Schedule 1 to the Participants' Customer Claims setting forth the status of the DAPREX Plan's account with BLMIS as of November 30, 2008 and the Participants' allocable share of the Plan assets.
3. A Letter Brief setting forth the legal basis for the Participants' Customer Claims.
4. The Participants' individual Customer Claims. Each Customer Claim includes an attachment showing capital contributions to the Plan made by or on behalf of the Participant through November 30, 2008 (labeled "Individual Participant Data").

---

[1] The Trustees of the DAPREX Plan submitted a Customer Claim on behalf of the DAPREX Plan dated February 13, 2009. However, given the statutory limits on the Plan's recovery from SIPC, the Participants will not be adequately compensated for their losses unless their individual customer claims are allowed.

Irving H. Picard, Esq., Trustee
June 29, 2009
Page 2 of 2

      We respectfully refer you to and incorporate as part of these Customer Claims documents filed in February 2009 with your office on behalf of the DAPREX Plan which included:

1. The Plan's November 30, 2008 Account Statement with BLMIS.
2. All Trade slips for November 2008.
3. Internal Records showing Account Balances for each Participant as of November 30, 2008.
4. Year-ending Account Statements from 2003 through 2007.
5. Withdrawals from Accounts for 2004 through 2008.
6. Deposits made to Accounts for 2003 through 2008
7. Copies of 5500 forms for 2003 through 2007.

      Please contact me if you have any questions or require any further information or documentation regarding the Participants' Customer Claims. Please remit to the undersigned, as Trustee, the proceeds of the Participants' individual Customer Claims.

Very truly yours,

Marc J. Kurzman

Enclosures

cc: Elizabeth Cavanaugh
    Kevin Galvis
    Laura Hallick
    Thomas Shippam

# DAPREX, Inc. Defined Contribution Pension Plan

## SCHEDULE OF DAPREX PARTICIPANTS FILING CUSTOMER CLAIMS

Tab 1: Elizabeth Cavanaugh
Tab 2: Kevin Galvis
Tab 3: Laura Hallick
Tab 4: Thomas Shippam

# SCHEDULE 1

## DAPREX, INC.
## 401 (K) PENSION PLAN
## PARTICIPANT CLAIM LIST AS OF NOVEMBER 30, 2008

| 1<br>NAME | 2<br>SS# | 3<br>ASSETS AT MADOFF ON 11/30/08 | 4<br>TOTAL AT MADOFF | 5<br>PERCENTAGE OF TOTAL |
|---|---|---|---|---|
| TOTAL ALL PARTICIPANTS | | | 1452917.99 | |
| CAVANAUGH, ELIZABETH | REDACTED | $846,117.73 | $846,117.73 | 58.24 |
| REDACTED | | | | |
| HALLICK, LAURA | REDACTED | $195,905.67 | $195,905.67 | 13.48 |
| REDACTED | | | | |
| TOTAL for 4 above Participants | | | $1,323,232.69 | |

## SANDAK HENNESSEY & GRECO LLP
COUNSELORS AT LAW

707 Summer Street   Stamford, CT 06901-1026
Telephone (203) 425-4200   Facsimile (203) 325-8608

Stephen J. Conover
Kevin M. Greco
William J. Hennessey, Jr.
Gary S. Klein
Marc J. Kurzman*
Stephanie A. McLaughlin*
Peter M. Nolin
Jay H. Sandak
Elizabeth A. B. Suchy*
Michael P. Sweeney

Amy E. Souchuns
Jacqueline N. Olschan*
Susan R. Briggs*
Brian A. Daley*
Patrick J. Hanna*
Adam P. Redder

*Also Admitted In New York

June 29, 2009

**VIA FEDERAL EXPRESS**

Irving H. Picard, Esq., Trustee
Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Re:   DAPREX, Inc. Defined Contribution Pension Plan a/k/a DAPREX Profit Sharing and 401(k) plan (BLMIS Account Nos. 1-D0053-3-0 and 1-D0053-4-0)

Dear Mr. Picard:

We hereby submit this Letter Brief on behalf of four (4) individual participants (the "Participants") in the DAPREX Profit Sharing and 401(k) Plan (the "Plan" or the "DAPREX Plan") that wish to pursue their rights under the Securities Investor Protection Act of 1970 ("SIPA") and in support of our contention that you should treat each of the Participants in the Plan as separate "customers" of Bernard L. Madoff Investment Securities LLC ("BLMIS") to the full extent of their vested interest in their individual 401(k) Plan accounts. All four Participants are 100% vested in their individual accounts.

### THE DAPREX PROFIT SHARING AND 401(k) PLAN

The DAPREX Profit Sharing and 401(k) Plan was established with BLMIS in 1977. The Plan is a defined contribution, profit sharing plan subject to Sections 401(a) and 401(k) of the Internal Revenue Code ("Code" or "IRC"). There were four (4) Trustees of the Plan: Elizabeth Cavanaugh, Thomas Shippam, Laura Hallick and Lawrence Roth.[1] Three of the Trustees – Cavanaugh, Shippam and Hallick – are submitting herewith their individual Customer Claims. In addition, a non-Trustee, Kevin Galvis, is submitting an individual Customer Claim.

Each Participant of the Plan has maintained his or her own individual account with the Plan which consists of employee and employer contributions (together with earnings, gains, and losses). The Participant's account balance determines the amount of his or her retirement benefit.[2] The individual accounts in the aggregate make up the Plan's total assets. Contributions

---

[1] Lawrence Roth recently resigned as a Trustee and is not submitting a claim with this submission.
[2] The Participants' Positions in the account maintained by the Plan with BLMIS to which they are claiming entitlement are detailed in Schedule 1, Column 4, submitted herewith.

to the Plan made by the Participants or by DAPREX on their behalf are listed in the "Individual Participant Data Sheet" accompanying each Customer Claim. Those contributions were credited to the Participants' accounts and deposited into a DAPREX bank account maintained for the Plan. Prior to December 15, 2008, checks were drawn on the DAPREX bank account on a quarterly basis and sent to BLMIS. DAPREX gave BLMIS discretionary authority to invest the Plan's assets in securities. As a result, BLMIS purportedly purchased securities with the Participant's personal funds and generated deposit slips which were periodically sent to Ms. Cavanaugh. The deposits were also reflected on monthly statements and quarterly and annual portfolio management reports. BLMIS created and regularly provided to the Plan Trustees trade confirmations showing purchases and sales of securities and options. Annual Account Statements generated by BLMIS detailed the Plan's annual investment gains. Based on this information, the Trustee created ledger accounts for each Participant, and provided reports to each Participant regarding his or her DAPREX PLAN account balance. The Participants were aware that their own funds and the funds contributed to the Plan on their behalf by DAPREX were being delivered to BLMIS.

On December 15, 2008, DAPREX was advised that SIPC filed an application with the United States District Court for the Southern District of New York for a declaration that the customers of BLMIS are in need of the protections available under the SIPA. The United States District Court for the Southern District of New York granted the application and appointed you as trustee for the liquidation of the brokerage firm, and further appointed your law firm as your counsel.

### DISCUSSION

1. **SIPA's Definition of "Customer"**

Congress enacted SIPA in 1970 to protect public investors "by providing financial relief to the customers of failing broker-dealers with whom they had left cash or securities on deposit." SIPC v. Barbour, 421 U.S. 412, 413 (1971).

SIPA defines the term "customers" of a debtor to mean:

> .... any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and **any person who has deposited cash with the debtor for the purpose of purchasing securities** . . .

15 U.S.C. §78lll(2) (emphasis supplied).

Irving H. Picard, Esq., Trustee
June 29, 2009
Page 3 of 7

In plain terms, Congress defined "customer" for SIPA purposes as a person who:

(a) had a securities-related claim arising from the "account of such person" – without explanation as to whether the account must be in the name of such person or held for such person's benefit, OR

(b) someone who deposited cash with the broker-dealer for the purpose of purchasing securities – untethered to a requirement that an "account of such person" be opened or maintained at the broker-dealer.

When "customer" was first defined in 1970, most of the definition was taken from the then-existing Section 60(e)(1) of the Bankruptcy Act, 11 U.S.C. §96(e)(1), which had established special rules "where the bankrupt is a stockbroker." Under both Section 60(e)(1) and SIPA, "protection was accorded to a person who can trace and identify the trust property or funds in the hands of the stockbroker . . . ." SEC v. Kennetth Bove & Co., Inc., 378 F. Supp. 697, 700 (S.D.N.Y. 1974) (emphasis supplied).

SIPA's definition of customer, however, went beyond the Bankruptcy Code definition; it defined a "customer" to also include **"any person who has deposited cash with the debtor for the purpose of purchasing securities."** 15 U.S.C. §78fff(c)(2)(A)(ii) (1970).

2.  **The DAPREX Participants Are Customers Within the Meaning of SIPA**

You should categorize the individual Participants in the DAPREX Plan as "customers" under SIPA. The DAPREX Participants contributed their own funds to the DAPREX Plan with the knowledge that those funds were then being forwarded to BLMIS on a periodic basis for investment in securities. The fact that BLMIS may not have a record of each individual Participant's names or sent them individual account statements is irrelevant to their status as "customers" as defined under SIPA. This is because the funds contributed to the DAPREX Plan are easily traceable to the Participants, and those funds clearly were entrusted with BLMIS for the purpose of purchasing securities. That is all that is required under the law to establish that the DAPREX Plan participants are entitled to individual SIPC protection.

We recognize that in SIPC v. Morgan, Kennedy & Co., Inc., 533 F.2d 1314 (2d Cir. 1976) the Second Circuit held that a traditional profit sharing plan (before the advent of Section 401(k)), and not the individual participants, constituted the sole "customer" under SIPA. The Second Circuit cited the following characteristics of the traditional profit sharing plan in Morgan, Kennedy as being important factors in its decision: (a) contributions to the plan were made solely by the employer; (b) none of the funds deposited with the broker belonged to the individual employee-participants; (c) the employees' participation in the plan amounted to a bookkeeping entry in the employer's books; (d) the financial relationship, insofar as the traditional profit sharing-plan was concerned, was solely between the employee-participants and traditional profit-sharing plan, and not the employee-participants and the broker-dealer; (e) the trustees of the traditional profit sharing plan, and not the employee-participants, had the exclusive power to entrust assets to the broker-dealer for investment purposes; and (f) the profit sharing plan trust

3

Irving H. Picard, Esq., Trustee
June 29, 2009
Page 4 of 7

account was in the name of the plan's trustees and not the individual employee-beneficiaries. See 533 F.2d at 1318.

Today's 401(k) plans are very different from the traditional profit sharing plan at issue in Morgan, Kennedy. Unlike the participants in the Morgan, Kennedy case, the DAPREX Participants have discrete ownership over their individual 401(k) accounts. The Morgan, Kennedy case is thus inapposite to the DAPREX Plan. In the DAPREX Plan as with other 401(k) plans: (a) contributions are made by both the employee and the employer; (b) the employee-participants have the exclusive discretion to determine the amount of the employee money to be invested, contributed, or rolled-over to the 401(k) profit sharing plan,[3] see IRC §§ 402(c), 402(g), 408(d)(3), and 401(k); (c) the employee-participants have, from their first day of participation in the 401(k) profit sharing plan, a 100%, non-forfeitable right to their pre-tax, after-tax, and rollover contributions made to a 401(k) profit sharing plan; and (d) all assets of a 401(k) profit sharing plan are allocated to separate accounts, maintained in the name of each participant and beneficiary of the 401(k) profit sharing plan, and, as required by law, are held under a trust instrument which (i) segregates such assets from the employer's assets; and (ii) requires that all assets of the trust are held "for the exclusive purpose of providing benefits to the participants and their beneficiaries and defraying the reasonable expenses of administering the plan." See ERISA Section 404(a)(1)(A), Dept. of Labor Reg. Section 2510.3-102; Code Sections 401(k)(2)(A), 401(k(2)(C).[4]

The fundamental distinction between the Morgan, Kennedy profit sharing plan and the DAPREX Plan is the fact that the funds contributed to the DAPREX Plan included deferred income from employees. As such, unlike the participants in the Morgan, Kennedy case, the DAPREX Plan Participants actually invested their own capital in their DAPREX Plan accounts and into BLMIS. This personal investment of capital by the Participants was the essential ingredient missing from the Morgan, Kennedy case, and the fundamental reason the Morgan, Kennedy Court held that the plan participants were not "investors." 533 F.2d at 1318. Here, the DAPREX Participants have ownership over their individual accounts. When the DAPREX Plan Participants elected to defer their income into the Plan they were making the decision to invest their capital in the Plan and thereby with BLMIS. They were, as the statute indicates, persons who deposited their money with Mr. Madoff for the purpose of purchasing securities.

In Morgan, Kennedy, the individual participants' claims could not be reducible to a specific monetary sum because the account maintained by Morgan, Kennedy held no property belonging to individual employees. The participant's interest in the plan did not vest until the participant earned a specified amount of service credit under the plan, and the employees only became entitled to benefits upon retirement based on the participant's age, years of service and final compensation at the point of retirement.

The DAPREX account maintained with BLMIS, on the other hand, is comprised exclusively of individual, distinct and segregated Participant accounts. The DAPREX Plan

---

[3] In Morgan, Kennedy, the employer had the exclusive discretion to determine the amount to be contributed or invested in the traditional profit sharing plan. 533 F.2d at 1318.

[4] In Morgan, Kennedy, the Second Circuit indicated that the employee-participants' participation in the traditional profit-sharing plan "amounted only to a bookkeeping matter on the [employer's] books." 533 F.2d at 1318.

4

Irving H. Picard, Esq., Trustee
June 29, 2009
Page 5 of 7

accordingly has a combined value equal to the value of each individual Participant's account. At any given point in time, a Participant's interest in this account is easily reducible to a specific monetary sum, based on the dollar amount of contributions made by or on behalf of the participant, the gain or loss on investments during the period examined, minus any administrative expenses.

In addition, the DAPREX Plan could have been converted to a participant-directed plan at any time. In fact, the Plan at all times *contained a participant-directed option*. The Participants merely decided to give BLMIS discretionary authority to purchase securities. However, had they chosen to exercise their own discretion such a decision would have allowed the Participants to have accounts in their own names at the brokerage firm with the same balances they had in their individual 401(k) accounts within the Plan.[5]

### 3. There Is No Legal Distinction for SIPA Purposes Between Trustee-Directed and Participant-Directed 401(k) Plans

As we have stated, employees who participate in 401(k) plans are customers for purposes of SIPA. There is no legal basis upon which to draw any distinction between participant-directed 401(k) plans and trustee-directed plans for purposes of SIPC protection. Any such distinction defeats the remedial purposes of ERISA. ERISA specifically provides plan trustees with a choice. Either the trustees can manage the participants' assets as a whole (or assign account management responsibilities to a third-party fiduciary such as an investment adviser), or the trustees can allow the individual participants to manage the assets in their individual accounts within the plan through individual brokerage accounts. See e.g., 29 U.S.C. §§1103, 1104. In no way did Congress envision that this choice would determine which plan participants would receive SIPC coverage and which would not.

For purposes of the "customer" definition in SIPA, it is not essential that the DAPREX Plan participants deposited their funds in individually-named accounts at BLMIS. An investor is entitled to compensation from SIPC "if he has entrusted cash or securities to a broker-dealer who becomes insolvent." In re Brentwood Securities, 925 F.2d 325, 327 (9th Cir. 1991) (emphasis supplied). Without question, each of the individual participants in the DAPREX Plan entrusted cash or securities with BLMIS (unlike the pension plan participants in Morgan, Kennedy who contributed no funds to their plans). And without a doubt, the DAPREX Plan Participants are customers under SIPA because the participants "can trace and indentify the trust property or funds in the hands of the stockbroker," SEC v. Kennedy Bove & Co., Inc., 378 F. Supp. at 700, to the contributions to their individual accounts within the DAPREX Plan and the transfer of such funds to BLMIS.

And while BLMIS may not have known the names of all the Participants, and sent individual accounts statements to each Participant, it knew that the DAPREX Plan Participants were making a decision to invest their tax-deferred income with BLMIS through their individual

---

[5] Also in Morgan, Kennedy, no individual participants filed customer claims with the SIPC trustee. Instead, the plan trustees filed the only customer claim at issue in that case on behalf of the plan. Here, the Participants are filing individual customer claims with the SIPC trustee.

accounts within the DAPREX Plan. The fact that the DAPREX Plan Trustees, rather than the DAPREX Plan Participants, granted BLMIS discretionary authority over the Participants' money,[6] does not change the fact that it was the Participants' money that was taken in by BLMIS for the purpose of investment in securities, and then stole by Mr. Madoff.

Finally, as noted above, SIPA's definition of customer provides coverage to those with securities claims arising out of the "account for such persons," but also provides coverage to those who deposit cash with the broker-dealer – <u>untethered to any requirement that an account has been established for such person</u>. See 15 U.S.C. §78lll(2). Thus, the DAPREX Plan Participants are customers of BLMIS *because they deposited cash with BLMIS for the purpose of purchasing securities*. The fact that their funds, as an administrative necessity, first ran through the DAPREX Plan's bank account, is irrelevant. The fact that BLMIS did not know their specific identities, or did not send them individual account statements, also is irrelevant.[7]

### 4. Alternative Theory of Recovery: SIPC Coverage Up to the Amount of the Participants' Individual Contributions to the Plan

As shown above, the Second Circuit in <u>Morgan, Kennedy</u> refused to recognize pension plan participants as customers under SIPA because the pension funds in those matters were solely employer-funded plans. That case is easily distinguishable from this case, for the reasons set forth above. However, should you feel constrained by the ruling of the Second Circuit, we respectfully request that you treat the DAPREX Plan Participants as customers of BLMIS to the extent of the amounts of their individual capital contributions to the Plan – insofar as there can be no doubt and disagreement that these deposits of their own capital were intended for investments in securities through BLMIS. In other words, under all circumstances, you should treat the DAPREX Plan Participants as customers of BLMIS at least to the extent of their capital contributions to their 401(k) Accounts.[8]

---

[6] Here three out of the four claimants are Trustees of the Plan.
[7] Because BLMIS purported to purchase real securities with the Participants' funds, the Participants have securities claims under SIPA and are each entitled to the maximum SIPC insurance coverage of up to $500,000. See <u>generally</u> In re New Times Securities Services, Inc., 371 F.3d 68, 86 (2d Cir. 2004).
[8] The DAPREX Participants' individual capital contributions to their 401(k) accounts are detailed in attachments to each Customer Claim entitled "Individual Participant Data."

6

## CONCLUSION

For the reasons set forth above, the DAPREX Participants respectfully submit that you should treat them as a "customers" of BLMIS for purposes of this liquidation proceeding and approve their Customer Claims for compensation under SIPA.

Thank you for your consideration.

Very truly yours,

Marc J. Kurzman

## CUSTOMER CLAIM

Claim Number _____

Date Received _____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Laura Hallick, as Participant in Daprex Profit Sharing Plan and 401K Plan
Mailing Address: c/o Marc J. Kurzman, Esq., Sandak Hennessey & Greco, 707 Summer St.
City: Stamford   State: CT   Zip: 06901
Account No.: 1D0053
Taxpayer I.D. Number (Social Security No.): Taxpayer I.D. Number REDACTED
                                              Social Security Number

NOTE: BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

***************************************************************

1. Claim for money balances as of December 11, 2008:   See Schedule 1

    a. The Broker owes me a Credit (Cr.) Balance of   $ Column 4

    b. I owe the Broker a Debit (Dr.) Balance of   $_____

    c. If you wish to repay the Debit Balance,
       please insert the amount you wish to repay and
       attach a check payable to "Irving H. Picard, Esq.,
       Trustee for Bernard L. Madoff Investment Securities LLC."
       If you wish to make a payment, it must be enclosed
       with this claim form.   $_____

    d. If balance is zero, insert "None."

502180406

1

2.     Claim for securities as of December 11, 2008:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X |   |
| b. | I owe the Broker securities |   | X |
| c. | If yes to either, please list below: | | |

See attached 11/30/09 Statement and Supporting Documents.

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | See Schedule 1 and Attachment to Customer Claim submitted | | |
| | by Daprex Profit Sharing Plan and 401K Plan | | |
| | | | |
| | | | |
| | | | |

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406              2

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

| | | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X (see Page 4) | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Marc J. Kurzman, Esq., Sandak, Hennessey & Greco, LLP, 707 Summer Street, Stamford, CT 06901

3

502180406

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date __6/25/09__    Signature __Laura Heller__

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Item 8: Discretionary Authority to Execute Securities Transactions:
Bernard Madoff Securities, LLC
885 Third Avenue
New York, NY 10022
(212) 230-2424

502180406

4

# DAPREX, INC. 401(K) PENSION PLAN
# INDIVIDUAL PARTICIPANT DATA

| Participant Name: Laura Hallick | | | |
|---|---|---|---|
| | Capital Contributions (Cash-In) | | |
| | Employee | Employer | TOTAL |
| Bal fwd 1995 | $2,500.00 | | $2,500.00 |
| 1996 | $0.00 | $0.00 | $0.00 |
| 1997 | $1,911.96 | $0.00 | $1,911.96 |
| 1998 | $0.00 | $5,481.20 | $5,481.20 |
| 1999 | $0.00 | $6,832.64 | $6,832.64 |
| 2000 | $1,870.00 | $5,659.62 | $7,529.62 |
| 2001 | $4,287.78 | $0.00 | $4,287.78 |
| 2002 | $4,190.01 | $728.18 | $4,918.19 |
| 2003 | $4,182.12 | $0.00 | $4,182.12 |
| 2004 | $4,801.95 | $2,693.96 | $7,495.91 |
| 2005 | $5,583.37 | $10,000.00 | $15,583.37 |
| 2006 | $11,250.00 | $10,000.00 | $21,250.00 |
| 2007 | $10,500.00 | $3,300.00 | $13,800.00 |
| 2008 | $6,000.00 | $3,152.00 | $9,152.00 |
| Subtotal | $57,077.19 | $47,847.60 | $104,924.79 |

| Cash Surrender | $0.00 |
|---|---|
| Defaulted Loan | $0.00 |
| GRAND TOTAL | $104,924.79 |

860 Canal Street
Stamford, CT 06902
(203) 324-2474
[Contact Preparer:            ]

# DAPREX, INC. 401(K) PENSION PLAN
# INDIVIDUAL PARTICIPANT DATA

| Participant Name: | Laura Hallick | | |
| --- | --- | --- | --- |
| | Contributions | | |
| | Employee | Employer | TOTAL |
| Bal fwd 1995 | $2,500.00 | | $2,500.00 |
| 1996 | $0.00 | $0.00 | $0.00 |
| 1997 | $1,911.96 | $0.00 | $1,911.96 |
| 1998 | $0.00 | $5,481.20 | $5,481.20 |
| 1999 | $0.00 | $6,832.64 | $6,832.64 |
| 2000 | $1,870.00 | $5,659.62 | $7,529.62 |
| 2001 | $4,287.78 | $0.00 | $4,287.78 |
| 2002 | $4,190.01 | $728.18 | $4,918.19 |
| 2003 | $4,182.12 | $0.00 | $4,182.12 |
| 2004 | $4,801.95 | $2,693.96 | $7,495.91 |
| 2005 | $5,583.37 | $10,000.00 | $15,583.37 |
| 2006 | $11,250.00 | $10,000.00 | $21,250.00 |
| 2007 | $10,500.00 | $3,300.00 | $13,800.00 |
| 2008 | $6,000.00 | $3,152.00 | $9,152.00 |
| Subtotal | $57,077.19 | $47,847.60 | $104,924.79 |

| | |
| --- | --- |
| Rollover* | $0.00 |
| Cash Surrender | $0.00 |
| Defaulted Loan | $0.00 |
| GRAND TOTAL | $104,924.79 |

*Rollover $$ from IRA and/or other qualified plan rolled in DAPREX, Inc. Plan

860 Canal Street
Stamford, CT 06902
(203) 324-2474
[Contact Preparer:         ]