UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05259 (SMB) |
| Plaintiff, | |
| v. | |
| STANLEY I. LEHRER, in his capacity as administrator of the Stanley I. Lehrer and Stuart M. Stein, J/T WROS; STUART M. STEIN, individually, and in his capacity as administrator of the Stanley I. Lehrer and Stuart M. Stein, J/T WROS; ARTHUR SISKIND; LINDA SOHN; NEAL GOLDMAN; DOUGLAS ELLENOFF; ELAINE STEIN ROBERTS; NEUBERGER BERMAN LLC, as former custodian of an Individual Retirement Account for the benefit of ELAINE STEIN ROBERTS; ARTHUR J. FEIBUS; EUNICE CHERVONY LEHRER; ELAINE S. STEIN; ELAINE S. STEIN REVOCABLE TRUST; JAMAT COMPANY, LLC; THE MESTRO COMPANY; TRUST U/W/O DAVID L. FISHER; TRUST U/T/A 8/20/90; and EVELYN FISHER, individually, and in her capacity as Trustee for TRUST U/W/O DAVID L. FISHER and TRUST U/T/A 8/20/90, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS</u>**

DENTONS US LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
carole.neville@dentons.com

*Attorneys for Elaine Stein Roberts*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................................ 1

    I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................... 3

      A.  MADOFF'S OPERATIONS AND STATEMENTS ABOUT THE DEFENDANT ...... 3

      B.  PROCEDURAL POSTURE OF THE CASE ................................................................... 5

ARGUMENT ................................................................................................................................... 5

    II.  THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6) ........................... 5

      A.  STANDARD FOR MOTION TO DISMISS ................................................................... 5

      B.  THE TRUSTEE HAS NOT ADEQUATELY PLEAD FRAUD .................................... 7

      C.  THE SUBSEQUENT TRANSFER CLAIMS ARE NOT PLED WITH SUFFICIENT
         FACTUAL DETAIL ...................................................................................................... 9

         1.   The Trustee's Claims Against Subsequent Transferees Lack Sufficient Detail ..... 10

         2.   Claims Against Multiple Defendants Must Identify the Claims Against the
            Individual .......................................................................................................... 10

    III.  APPLICABLE NON-BANKRUPTCY LAW PROTECTS TRANSFERS AND
        DISTRIBUTIONS FROM DEFENDANT'S ACCOUNTS AT BLMIS ......................... 11

    IV.  THE COURT MUST CONSIDER ANTECEDENT DEBT DEFENSES UNDER
        BANKRUPTCY CODE SECTION 548(C) ................................................................... 15

CONCLUSION ............................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  351 F. Supp. 2d 79 (S.D.N.Y. 2004)........................................................................2

*Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Const, Inc.)*,
  373 B.R. 262 (Bankr. S.D.N.Y. 2007)....................................................................2

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)...........................................................................................7

*Atlanta Shipping Corp., Inc. v. Chem. Bank*,
  818 F.2d 240 (2d Cir. 1987)...................................................................................7

*Baker v. David A. Dorfman, P.L.L.C.*,
  2000 U.S. Dist. LEXIS 10142 (S.D.N.Y. 2000).....................................................13

*Balaber-Strauss v. Lawrence*,
  264 B.R. 303 (S.D.N.Y. 2001)................................................................................8

*Barberan v. Nationpoint*,
  706 F. Supp. 2d 408 (S.D.N.Y. 2010)....................................................................6

*Bayerische Hypo-und Vereinsbank AG v DeGiorgio*,
  902 N.Y.S.2d 85 (2010).........................................................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................7

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d. Cir. 2004)..................................................................................6

*Brass v. Am. Film Tech., Inc.*,
  987 F.2d 142 (2d Cir. 1993)...................................................................................6

*Burrage v. U.S.*,
  134 S.Ct. 881 (2014)..............................................................................................17

*Cunningham v. Brown*,
  265 U.S. 1 (1924)................................................................................................4, 8

*Daly v. Deptula (In re Carrozzella & Richardson)*,
  286 B.R. 480 (D. Conn. 2002)...............................................................................8

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987).................................................................................11

*Forman v. Salzano (In re Norvergence, Inc.),*
    405 B.R. 709 (Bankr. D.N.J. 2009) ...................................................11

*Frangos v. Doering Equipment Corp.,*
    860 F.2d 70 (3d Cir.1988)...............................................................17

*Gowan v. Novator Credit Mgmt. (In re Dreier LLP),*
    452 B.R. 467 (Bankr. S.D.N.Y. 2011)...............................................9

*Hill v. Oria (In re Juliet Homes, LP),*
    Case No. 07-36424, Adversary No. 09-03429, 2010 Bankr. LEXIS 4826,
    (Bankr. S.D. Tex. Dec. 16, 2010) ....................................................11

*In re Bernard L. Madoff Inv. Secs.,*
    LLC, 654 F.3d 229 (2d Cir. 2011).....................................................15

*In re Hinsen,*
    405 B.R. 49 (Bankr. E.D.N.Y 2009)..................................................14

*In re Madoff Sec.,*
    No. 12-2557-L (2d Cir.)..................................................................1, 2

*In re Wiggins,*
    341 B.R. 506 (M.D.Pa. 2006) ..........................................................17

*K.E.R.U. Realty Corp.,*
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)...................................................10

*Law v. Seigel,*
    571 U.S. __ (2014) (slip op. ) ..........................................................17

*Matter of Gard Entertainment Inc. v Block,*
    960 N.Y.S.2d 50 (2012)....................................................................13

*McKenna v. Wright,*
    386 F.3d 432 (2d Cir. 2004)...............................................................7

*Meadowlands Invs., LLC v. CIBC World Markets Corp.,*
    04 Civ. 7328 (DAB), 2005 U.S. Dist. LEXIS 21102 (S.D.N.Y. Sept. 22, 2005).....................6

*Nedds v. Calderon,*
    678 F.3d 777 (9th Cir.2012) .............................................................17

*Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.),*
    361 B.R. 369 (Bankr. S.D.N.Y. 2007)................................................7

*Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,*
    322 F.3d 147 (2d Cir. 2003)..............................................................7

*Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.),*
  309 F.3d 1325 (11th Cir. 2002) ..................................................................8

*Pani v. Empire Blue Cross Blue Shield,*
  152 F.3d 67 (2d Cir. 1998) .......................................................................6

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC),*
  458 B.R. 87 (Bankr. S.D.N.Y. 2011) .......................................................10

*Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.,*
  234 B.R. 293 (Bankr. S.D.N.Y. 1999) ....................................................7, 9

*Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC.,*
  Adv. Pro. No. 08-01789 (BRL) ...............................................................4

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff),*
  476 B.R. 715 (S.D.N.Y. 2012)............................................................1, 12

*SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.),*
  499 B.R. 416 (S.D.N.Y. 2013)..........................................................15, 16

*U.S. v. Jackson,*
  736 F.3d 953 (10th Cir.2013) .................................................................17

*Zazzali v. Wavetronix LLC (In re DBSI, Inc.),*
  445 B.R. 351 (Bankr. D. Del. 2011) .........................................................9

### STATUTES

11 U.S.C. § 101(5)(A)................................................................................16

11 U.S.C. § 544........................................................................................1

11 U.S.C. § 544(b) ....................................................................................5

11 U.S.C. § 546(e) ...................................................................................12

11 U.S.C. § 546(e) .....................................................................................1

11 U.S.C. § 547........................................................................................5

11 U.S.C. § 548(a)(1)(A) ...................................................................1, 2, 5, 12

11 U.S.C. § 548(a)(1)(B) ............................................................................5

11 U.S.C. § 548(a)(1)(B) ............................................................................1

11 U.S.C. § 548(c) ...............................................................................15, 16

11 U.S.C. § 548(d)(2)(A) ...........................................................................16

11 U.S.C. § 550(a)(2) ............................................................................................................1

26 U.S.C. § 401 ....................................................................................................................12

26 U.S.C. § 402(a)(5) ..........................................................................................................12

26 U.S.C. § 403(a)(4) ..........................................................................................................12

26 U.S.C. § 408(d)(3) ..........................................................................................................12

Fed. R. Civ. P. 12(b)(6) .....................................................................................................6, 7

Fed. R. Civ. P. 9(b) ....................................................................................................2, 7, 11

I.R.C. § 72(t) .......................................................................................................................15

I.R.C. § 72(t)(2)(A)(i) .........................................................................................................15

I.R.C. § 401(a)(9)(C) ..........................................................................................................15

I.R.C. § 4974(a) ...................................................................................................................15

N.Y.C.P.L.R. 5202 ..............................................................................................................14

N.Y.C.P.L.R. 5202(d)(1) .....................................................................................................14

N.Y.C.P.L.R. 5205(c)(1) .....................................................................................................11

N.Y.C.P.L.R. 5205(c)(2) ................................................................................................11, 12

N.Y.C.P.L.R. 5205(c)(3) .....................................................................................................11

N.Y.C.P.L.R. 5205(c)(5) ..........................................................................................12, 13, 14

N.Y.C.P.L.R. 5205(d)(1) .....................................................................................................14

N.Y.C.P.L.R. 5205(2) ..........................................................................................................13

**OTHER AUTHORITIES**

*Individual Retirement Arrangements*,
    IRS Pub. 590 (2010), available at http://www.irs.gov/pub/irs-pdf/p590.pdf ..........................15

Randall Smith, Wall Street Mystery Features a Big Board Rival, Wall Street Journal,
    Dec. 16, 1992. ...........................................................................................................................8

The defendant, Elaine Stein Roberts, (the "Defendant") submits this memorandum of law in support of her motion to dismiss the Complaint filed in this adversary proceeding ("Complaint" or "Comp.") for failure to state claims upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## PRELIMINARY STATEMENT

This lawsuit is one of more than approximately 1,000 actions commenced in late 2010 by Irving H. Picard, as Trustee in the proceeding for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"). In this case, like many similarly brought against innocent customers, the Trustee seeks to recover only the alleged fictitious profits transferred to BLMIS customers and, in many instances, to subsequent transferees. The complaints against innocent customers of a broker dealer is unprecedented in SIPA's more than forty years history because SIPA was designed to protect innocent investors.

Although the Complaint alleges avoidance claims asserted under various provisions of the Bankruptcy Code and New York's Debtor & Creditor Law, as a result of rulings in the District Court, the Trustee's only remaining claims to avoid transfers are those under Section 548(a)(1)(A) of the Bankruptcy Code, which permits avoidance of fraudulent transfers made with actual fraudulent intent during the two-year federal "reach back" period and subsequent transfer claims asserted pursuant to Section 550(a)(2). *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard* v. *Greiff)* (hereinafter, "*Greiff*"), 476 B.R. 715, 722 (S.D.N.Y. 2012) ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."), appeal pending, *In re Madoff Sec.*, No. 12-2557-L (2d Cir.). The Trustee's state law claims, which sought to avoid transfers made during a six-year "reach back"

period, and preference claims were dismissed. *Id.* Defendant now moves to dismiss the Trustee's remaining claims on the following grounds.

First, the Complaint must be dismissed because the Trustee has failed to adequately plead that the withdrawals were made with intent to hinder, delay or defraud creditors as required under section 548(a)(1)(A) of the Bankruptcy Code. 11 U.S.C. Section 548(a)(1)(A). Actual fraudulent transfer claims brought under either section 548(a)(1)(A) of the Code must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 106-07 (S.D.N.Y. 2004); *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Const, Inc.),* 373 B.R. 262, 269 (Bankr. S.D.N.Y. 2007).

The Trustee, in this case and in all the cases involving innocent investors, makes no effort to identify or describe the particular circumstances of the transactions from and to the Defendant's account. Instead, he relies on the presumptions that are afforded a trustee merely by attaching the Ponzi scheme label to any matter where some fraud is involved. The Ponzi scheme label basically excuses a trustee from establishing insolvency at the time of any particular transaction and intent to defraud with respect to each transaction. However, as shown below, BLMIS was not a Ponzi scheme and hence, the Trustee cannot rely on the Ponzi scheme presumption to establish intent to delay or defraud creditors with respect to the legitimate withdrawals from the Defendant's account.

The Complaint, fails to state any claims against the particular defendants broadly labeled as subsequent transferees or to separate the Defendant from any of the other named defendants. In addition, the Trustee improperly seeks to avoid amounts withdrawn from this IRA account, maintained at BLMIS. Under applicable New York law, these accounts and withdrawals there

- 2 -

from are protected from potential judgment creditors, like the Trustee, under the Bankruptcy Code.  Finally, the Defendant has as a defense to the Trustee's claims that any payments she received from her account were on account of antecedent debt.

For these reasons, as more fully discussed below, the Complaint should be dismissed.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    MADOFF'S OPERATIONS AND STATEMENTS ABOUT THE DEFENDANT

The Complaint alleges, in substance, that: BLMIS was a securities broker-dealer registered with the Securities and Exchange Commission ("SEC") and regulated under the Securities Exchange Act, and it was a member of the Securities Investor Protection Corporation ("SIPC") for decades (¶ 37).  BLMIS operated three lines of business including an investment advisory operation, a market making operation and a proprietary trading operation (*Id*.).  BLMIS managed different types of accounts (¶¶38-40) agreed to trade in publicly-issued securities for each customer (¶ 39), and issued periodic statements to the customers showing the contents and value of their accounts (¶ 40).  There is no dispute that the Defendant – in whatever capacity she is alleged to have been a transferee in this action– was an innocent transferee of the alleged transfers.

A fundamental premise of the Complaints is that BLMIS was a Ponzi scheme.  However, as evidenced by the documents referred to in the Complaint and filed in the case, the BLMIS scheme lacks a number of the classic Ponzi scheme characteristics.  In the original Ponzi scheme, Charles Ponzi borrowed money pretending that he was investing in international postal coupons, and gave 90-day notes promising to pay $150 to anyone who loaned him $100 to increase his investment.  Ponzi even promised to pay all notes in full on presentment after only 45 days, *Cunningham v. Brown*, 265 U.S. 1, 7-8 (1924).  Cases following the *Cunningham* case find a

Ponzi scheme when the investor is promised high rates of return, over a short finite period, early redeeming investors are paid off by later investors, and there is really little or no legitimate business behind the investment strategy. Because there is no real business, Ponzi schemes are typically short-lived.

In these cases, the account histories show that the innocent customers were not induced to invest or stay invested by exorbitant rates of return. There is no group of early redeeming investors; many early investors, like the Defendant here, stayed invested in BLMIS until the fraud was uncovered; new customers opened accounts in 2008 or withdrew all their investments in the same year. As evidenced by the records of investment, there was no deadline for investments; customers were free to deposit and withdraw from their accounts at any time.

The record also confirms that the BLMIS business was "largely involved in legitimate trading with institutional counterparties." *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC.*, Adv. Pro. No. 08-01789 (BRL), Declaration of Joseph Looby In Support of Trustee's Motion for Order Upholding Trustee's Determination Denying Customer Claims For Amounts Listed On Last Customer Statement, etc., (¶ 28) (Bankr. S.D.N.Y. July 9, 2009) (ECF No. 451). As of the date of commencement of the SIPC liquidation proceeding against BLMIS, the brokerage firm had legitimate trades and securities positions outstanding that ultimately yielded proceeds of more than $334 million. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC.*, (Trustee's First Interim Report ¶¶ 30-34, *In re Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (Bankr. S.D.N.Y. July 9, 2009)(ECF No. 524-1). In addition, the Trustee successfully sold the BLMIS market making operation for nearly $25 million (*Id.*) (¶¶ 24-28)).

The Defendant is mentioned only four times in the Complaint. She is mentioned in the caption, in listing of all the parties named in the caption (¶3), and on information and belief, in a

statement about where she and her custodian reside (¶¶15-15). There is no information in the

Complaint about the transfers that the Trustee seeks to avoid whatsoever.

### B.       PROCEDURAL POSTURE OF THE CASE

BLMIS was placed into liquidation pursuant to SIPA in the District Court on the

complaint of the SIPC filed on December 11, 2008 (¶29). The Trustee was thereafter appointed

to conduct the liquidation of BLMIS under SIPA (¶¶29-30). The Trustee commenced the action

against the Defendant on or about November 19, 2010 to recover the alleged fictitious profits

paid by BLMIS during the two year prepetition period as constructive and actual fraudulent

transfers under Section 548(a)(1)(A) of the Bankruptcy Code, and those paid to them by BLMIS

as actual and constructive fraudulent conveyances during the six-year prepetition period under

New York fraudulent conveyance laws made applicable to bankruptcy trustees by Section 544(b)

of the Bankruptcy Code.

As the Court is aware, pursuant to the Order of the United States District Court for the

Southern District of New York dated May 22, 2012 (Case No 12 MC 01115(JSR)) the Trustee's

claims that seek avoidance of (1) preferences under section 547 of the Bankruptcy Code; (2)

constructive fraudulent transfers under section 548(a)(1)(B) of the Bankruptcy Code and (c)

actual and constructive fraudulent conveyances under provisions of New York Debtor &

Creditor Law incorporated by section 544(b) of the Bankruptcy Code have been dismissed.

### ARGUMENT

## II.      THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6)

### A.       STANDARD FOR MOTION TO DISMISS

A court on a motion to dismiss must accept as true all of the well-pleaded factual

allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff.

However, this basic principle is subject to certain exceptions, discussed below in detail, that are fatal to the Trustee's complaint against the Defendant.

The presumption of truth ordinarily afforded the allegations of a complaint does not apply if the allegations are contradicted, as they are here, by other allegations in the complaints themselves or by otherwise established facts. *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 425 (S.D.N.Y. 2010)(dismissal based on contradictory facts); *Meadowlands Invs., LLC v. CIBC World Markets Corp.*, 04 Civ. 7328 (DAB), 2005 U.S. Dist. LEXIS 21102, (S.D.N.Y. Sept. 22, 2005)(dismissal of breach of contract and common law fraud claims when allegations were contradicted by facts).

In assessing the facts for purposes of dismissing a complaint, the Court is not limited to the allegations of the complaint.  The Court may also consider documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, or documents upon which the plaintiff relied in bringing suit. *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  It is well established that a court may also rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6). *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212 (2d. Cir. 2004) (court may consider complaint filed in a state court action); *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998) (a court may look to matters of public record).

On a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").  The Trustee's

Complaint, particularly as it relates to the alleged subsequent transfers, is not more than a recitation of the statutes.

Moreover, affirmative defenses may be raised in a motion to dismiss under Rule 12(b)(6) if the defense is evident on the face of the complaint or from the undisputed facts. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (an affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.); *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 155 (2d. Cir. 2003).

## B.    THE TRUSTEE HAS NOT ADEQUATELY PLEAD FRAUD

It is clear that when fraud is pleaded, Rule 9(b) requires the plaintiff to plead fraud with particularity. *See Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987). Pursuant to Rule 9(b) "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED R. CIV. P. 9(b).  It is also well settled that in cases brought by a bankruptcy trustee, "courts take a more liberal view when examining allegations of actual fraud . . . in the context of a fraudulent conveyance, since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (internal quotation marks omitted) (quoting *Picard v. Taylor (In re Park S. Sec., LLC),* 326 B.R. 505, 517-18 (S.D.N.Y. 2005)); *Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) (citation omitted).   However, relaxing the particularity requirement in bankruptcy cases should not be relieve the trustee of all obligations to describe the transactions.

The Trustee in this case, makes no effort to describe facts and circumstances of the particular transactions at issue here to evidence the BLMIS effort to hinder, delay or defraud creditors.   Instead, the Trustee relies solely on the Ponzi scheme presumptions ponzi scheme arose merely by fixing the Ponzi scheme label on BLMIS operations.   The facts do not support application of the Ponzi scheme label or reliance on the presumptions.

A few characteristics of the original *Cunningham* scheme are generally cited as the essential features of such schemes:   (1) little or no legitimate underlying business; (2) the promise of exorbitant returns; (3) early scheduled payment of such returns to early (or "top") investors; (4) the need to attract new money in order to pay the exiting top investors; and (5) the scheme's inevitable failure.   *See Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.)*, 309 F.3d 1325, 1327 n. 2 (11th Cir. 2002).   *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 482-84 nn. 2 and 7 (D. Conn. 2002); *Balaber-Strauss v. Lawrence*, 264 B.R. 303, 305-06 (S.D.N.Y. 2001).   None of the typical features, except Madoff's arrest, follow the typical pattern.

BLMIS operated legitimate trading businesses.   The Court should consider the documents referenced in the complaints, the records of the Bankruptcy Court case, including the Trustee's First Interim Report  and the Declaration of Joseph Looby (the "Looby Dec.").   Together with the complaints, these documents establish that BLMIS was once of the largest traders of securities.   BLMIS employed 200 people, 94% of whom conducted trades equal to 10% of the daily volume on the New York Stock Exchange.   *See* Randall Smith, *Wall Street Mystery Features a Big Board Rival*,  Wall Street Journal, Dec. 16, 1992.   The Looby Declaration makes it clear that customer's money was used to purchase securities in BLMIS's legitimate trading

operation.  Money was deposited "directly and indirectly' into the BLMIS trading account. See Looby Dec. paragraphs 9, 17, 18, 19, 26, 27.

Investors used their accounts like investors in any brokerage firm use their accounts.  The Defendant deposited and withdrew money from his account as available and as needed.  There is no pattern of early redeeming investors being paid out with later investors money.  There was no finite period of investment.  In fact, the BLMIS operations lasted for decades.  Finally, when Madoff was arrested, the BLMIS accounts had securities and cash worth hundreds of millions of dollars. Given these facts, the Trustee cannot rely on a label and is obligated to show fraudulent intent with respect to the transfers at issue in this account and the failure to do so is fatal to the Complaint.

## C.    THE SUBSEQUENT TRANSFER CLAIMS ARE NOT PLED WITH SUFFICIENT FACTUAL DETAIL

The Trustee generally relies too heavily on the proposition that a trustee is entitled to some leeway in pleading claims for fraudulent transfers or conveyances. The concession to trustees comes with a limitation--"relaxing the particularity requirement in bankruptcy cases should not be construed to eliminate that requirement altogether." *Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc*., 234 B.R. 293, 311 (Bankr. S.D.N.Y. 1999) (citation omitted).  If, for example, the trustee alleges facts based upon "information and belief" as he does here, the Trustee must allege facts on which allegations made upon information and belief are based. Group pleading is generally prohibited because individuals are entitled to know what the claims against that individual are. *Gowan v. Novator Credit Mgmt. (In re Dreier LLP),* 452 B.R. 467, 477 (Bankr. S.D.N.Y. 2011); *Zazzali v. Wavetronix LLC (In re DBSI, Inc.),* 445 B.R. 351, 354 (Bankr. D. Del. 2011)(complaint against individuals dismissed for failure to identify the transfers

- 9 -

to the individuals).   The Trustee's claims against subsequent transferees must be dismissed because they lack the required specificity.

1.      The Trustee's Claims Against Subsequent Transferees Lack Sufficient Detail

The Trustee is bound by the decision in *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011) ("Madoff Family Action"), a case that is directly analogous to the present action.   In the Madoff Family Action, Judge Lifland dismissed subsequent transfer claims that were virtually identical to the Trustee's subsequent transfer claims against Defendants, holding that the Trustee's claims "fail[] to provide even a modicum of specificity with respect to the Subsequent Transfers …".  *Id*. at 120.

Here, the Complaint, like the Madoff Family Action, merely alleges on information and belief a number of defendants received subsequent transfers. See Complaint ¶¶ 3, 104-109. While the Complaint's failure to indicate specific amounts may not in and of itself warrant dismissal of the Subsequent Transfer claims, *K.E.R.U. Realty Corp.*, 379 B.R. 5 at 30-31 (Bankr. E.D.N.Y. 2007) (finding a subsequent transfer claim adequately pled where the complaint stated, "at least tens of millions of dollars were fraudulently diverted from [debtor] to [initial transferees] . . . [and] a portion of these fraudulently diverted funds was transferred from the [initial transferees] to, or for the benefit of, the [subsequent transferees]"), its failure to provide even a modicum of specificity with respect to the Subsequent Transfers so as to put the Defendant on notice as to which ones the Trustee seeks to recover does so warrant.

2.      Claims Against Multiple Defendants Must Identify the Claims Against the Individual

The Trustee, of course, is free to file complaints which assert claims against more than one defendant, or that seek the recovery of transfers from more than one BLMIS account. However, to the extent that the Trustee chooses to do so, in order to meet the pleading requirements of the Rules, the Trustee must clearly identify the specific transfers for which each

defendant is being sued.  The failure to identify the specific transfers for which each defendant is

being sued renders it impossible for any individual defendant to understand the claims asserted

against her and to prepare a defense to those claims.

There is ample case law that the Trustee is required to identify, with specificity, the

particular transfers that he is seeking to avoid and recover from each defendant.  *See, e.g.*,

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where

multiple defendants are asked to respond to allegations of fraud, the complaint should inform

each defendant of the nature of his alleged participation in the fraud."); *Hill v. Oria (In re Juliet*

*Homes, LP),* Case No. 07-36424, Adversary No. 09-03429, 2010 Bankr. LEXIS 4826, at *65

(Bankr. S.D. Tex. Dec. 16, 2010) ("In a case involving multiple defendants, the party asserting

the fraud claim must make specific allegations against each defendant."); *Forman v. Salzano (In*

*re Norvergence, Inc.),* 405 B.R. 709, 726 (Bankr. D.N.J. 2009) (in a fraudulent transfer action

against multiple defendants, Rule 9(b) "requires plaintiffs to differentiate their allegations when

suing more than one defendant … and inform each defendant separately of the allegations

surrounding his alleged participation in the fraud.") (citation omitted).  Because the Trustee's

Complaint fails to do so, his Complaint must be dismissed.

## III.    APPLICABLE NON-BANKRUPTCY LAW PROTECTS TRANSFERS AND DISTRIBUTIONS FROM DEFENDANT'S ACCOUNTS AT BLMIS

The Trustee's claims to recover withdrawals from the Defendant's IRA's, qualified

retirement account must be dismissed because the BLMIS account held in this vehicles and the

withdrawals therefrom are protected by state law.  Specifically, N.Y. C.P.L.R. section 5205(c)(1)

provides an exemption for spendthrift trusts from execution by judgment creditors under New

York Law.   Sections 5205(c)(2) and (3) expands the trust protection to "all trusts, custodial

accounts, annuities, insurance contracts, monies assets or interests established as part of, and all

payments from, either a Keogh (HR-10), retirement or other plan established by a corporation which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, or created as a result of rollovers from such plans pursuant to sections 402(a)(5), 403(a)(4) or 408(d)(3) of the Internal Revenue Code of 1986, as amended."

The Trustee does not dispute that Defendant Elaine Stein Roberts held a BLMIS account that qualifies for the protection of New York law. He names the custodian of her IRA account as a defendant. Rather, the Trustee has historically based his right to recover withdrawals from the protected accounts on a footnote to the *Greiff* decision, in which District Judge Rakoff observed that the defendants could not avail themselves of the protection under C.P.L.R. 5205(c)(2) because the statute "specifically provides that the exemption does not apply to 'additions to' the trust that are 'fraudulent conveyances.'" *Greiff*, 476 B.R. at 728 n.13.

However, the express limitation of C.P.L.R. 5205(c)(5), relied upon by the Trustee and Judge Rakoff, by its terms, applies only to "fraudulent conveyances under article ten of the debtor and creditor law," C.P.L.R. 5205(c)(5). The Trustee's fraudulent conveyance claims under New York State Debtor Creditor law have now been dismissed pursuant to the section 546(e) decision, leaving only the Trustee's fraudulent transfer claim under section 548(a)(1(A). Accordingly, the exemption on which the Trustee relies is no longer applicable. The Defendants read both the exemption from judgments and the exception to the trust exemption under New York law consistently in accordance with the plain language of the subsections.

Even if the express language of C.P.L.R. 5205(c)(5) can be read to cover the Bankruptcy Code claim, the plain language of the C.P.L.R. 5205(c)(5) excluding only additions to the accounts supports the Defendant's contention that the exception does not apply to withdrawals from her protected accounts. C.P.L.R. 5205(c)(5) plainly refers only to "additions" to a asset

- 12 -

exempt under C.P.L.R. 5205(2): "*Additions* to an asset described in paragraph two of this subdivision shall not be exempt from application to the satisfaction of a money judgment…" (emphasis added).  The cases applying this provision make it clear that the exception is intended to allow a judgment creditor of the account holder to reach assets held in an otherwise protected account when non exempt assets have been deposited into the account by the account for the purpose of hindering, delaying or defrauding creditors.  *See e.g. Bayerische Hypo-und Vereinsbank AG v DeGiorgio*, 902 N.Y.S.2d 85, 86 (2010)("Defendant's rollover of an exempt employee retirement account maintained in his name with plaintiffs to a new IRA account maintained in his name with a nonparty custodian, although made within 90 days of the interposition of plaintiffs' conversion claims, did not constitute a nonexempt "addition" to the new IRA account within the meaning  of C.P.L.R. 5205(c)(5)…. Here, there being no evidence that any additions were made to defendant's employee retirement from any sources whatsoever within 90 days of the interposition of plaintiffs' claims, the assets that defendant rolled over into his new IRA account could not have included monies from nonexempt sources, e.g., salary, deposited into the employee retirement account within such 90-day period"); *Matter of Gard Entertainment Inc. v Block*, 960 N.Y.S.2d 50 (2012)(transfer of a condominium to a trust after a creditor demand subject to exclusion under section 5205(c)(5) as fraudulent conveyance under NY Debtor Creditor law; *Baker v. David A. Dorfman, P.L.L.C.*, 2000 U.S. Dist. LEXIS 10142,*25-26 (S.D.N.Y. 2000)   ("C.P.L.R. 5205 (c)(5) exempts IRAs from application to the satisfaction of a judgment except where additions to such accounts are "'made after the date that is ninety days before the interposition of the claim on which such judgment was entered.'" Plaintiff has restrained Dorfman's IRA in the amount of $ 4,107.94. Plaintiff has shown that all deposits to the IRA were made after the complaint in the underlying case was filed.")

- 13 -

Finally, the C.P.L.R. provides an additional protection for the assets covered by C.P.L.R. 5202 under subsection C.P.L.R. 5205(d)(1), which, by its express terms, provides an exemption from the claims of creditors for both principal and income on the principal received from a protected retirement account as follows:

> The following personal property is exempt from application to the satisfaction of a money judgment, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents:
>
> 1. ninety percent of the income or other payments from a trust the principal of which is exempt under subdivision (c); provided, however, that with respect to any income or payments made from trusts, custodial accounts, annuities, insurance contracts, monies, assets or interest established as part of an individual retirement account plan or as part of a Keogh (HR-10), retirement or other plan described in paragraph two of subdivision (c) of this section, the exception in this subdivision for such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents shall not apply, and the ninety percent exclusion of this paragraph shall become a one hundred percent exclusion.

The plain meaning of this exemption from the claims of creditors is that income from a protected trust or other protected account or plan is also protected. *See In re Hinsen*, 405 B.R. 49 (Bankr. E.D.N.Y 2009)(income from an exempt trust is protected under C.P.L.R. 5202(d)(1)). The exemption from the protection of IRA accounts under C.P.L.R. 5205(c)(5) is not applicable to this subsection.

If equitable considerations should determine whether the Trustee's claims against an IRA accouns should be dismissal, those considerations weigh heavily in favor of dismissal. Under the IRC and other retirement accounts, IRAs are subject to strict tax rules designed to encourage retirement savings. Except in limited circumstances, an IRA accountholder must pay a 10% tax penalty on IRA withdrawals made before age 591/2. See I.R.C. § 72(t). Upon turning age 591/2,

retirees may withdraw funds from an IRA without penalty. See I.R.C. § 72(t)(2)(A)(i). However, upon turning age 701/2, a retiree must withdraw mandatory minimum distributions or be subject to a 50% tax penalty on any amounts that should have been withdrawn. See I.R.C. §§ 401(a)(9)(C); 4974(a). The amounts of the mandatory minimum distributions are calculated based on a formula, which takes into account the retiree's account balance and life expectancy. See *Individual Retirement Arrangements*, IRS Pub. 590 (2010), available at http://www.irs.gov/pub/irs-pdf/p590.pdf.  These provisions compel retirees to withdraw and use their retirement savings when they are needed most -- at retirement.  The Trustee's attempt to recover mandatory withdrawals from retirement accounts most dramatically affects the elderly, who have lost what they thought were their retirement savings based on the BLMIS statements and are now being asked to give back money they were required to take and have no chance to earn back.

Based on the above, the Trustee's claims against the Defendant from withdrawals from a qualified pension plans must be dismissed.

## IV.   THE COURT MUST CONSIDER ANTECEDENT DEBT DEFENSES UNDER BANKRUPTCY CODE SECTION 548(C)

The Trustee has argued that Judge Rakoff's October 15, 2013 Antecedent Debt Decision, *SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.)*, 499 B.R. 416 (S.D.N.Y. 2013), and the Second Circuit Net Equity Decision, *In re Bernard L. Madoff Inv. Secs.*, LLC, 654 F.3d 229 (2d. Cir. 2011) effectively dispose of any defendant's arguments relating to "antecedent debt" defenses under Bankruptcy Code Section 548(c) .  On October 15, 2013, District Judge Rakoff ruled on these issues in connection with motions to dismiss involving 299 actions that named hundreds of other similarly situated innocent transferee defendants.  The Defendant was not a party to those actions.

The Antecedent Debt Decision specifically rejected the notion that state and federal claims for rescission or damages that BLMIS customers may have had against BLMIS constitute "value" under 548(c) "as against the Madoff Securities customer property estate under SIPA." See *id*. at 422, 430.   Although this ruling may bind the Court here concerning this issue, Defendant believes that her arguments are nevertheless properly presented here so that they may preserve any rights to participate in any challenge to the rulings from the Antecedent Debt Decision.   The Trustee's citation to the Second Circuit Net Equity Decision, however, is of no moment as that decision involved relates to the claims process in the BLMIS SIPA proceeding. That decision does not address whether Defendant may have defenses under the Bankruptcy Code to the Trustee's claims based on issues relating to antecedent debt.

The Bankruptcy Code provides an affirmative defense to the avoidance of transfers if the defendant took such transfers for "value and in good faith."   11 U.S.C. § 548(c).   Value is specifically defined in the bankruptcy code to include the "satisfaction . . . of a present or antecedent debt of the debtor."   11 U.S.C. § 548(d)(2)(A).   Debt, in turn, is defined as "liability on a claim," and a claim is a "right to payment."   See 11 U.S.C. §§ 101(5)(A), (12).   The statute does not provide for any equitable exception to the value defense in 11 U.S.C. § 548(c).   The District Court nevertheless determined that the scope of this ordinary bankruptcy avoidance defense in a SIPA case is limited by the general provison in SIPA §6(b) ("[t]o the extent consistent with the provisions of [SIPA]") which the court construed as granting a license to permit policy  considerations to overrule the express statutory defense where there is a shortfall in the pool of customer property.

In stark contrast, the Supreme Court has recently -- and unanimously -- declared that a bankruptcy court may not override the express language of the Code based on such notions of

equity.   *See Law v. Seigel*, 571 U.S. __ (2014) (slip op. at 5-6, 7) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of  the Bankruptcy Code") (internal quotations omitted); see also *Burrage v. U.S.*, 134 S.Ct. 881, 892 (2014) ("[t]he role of this Court is to apply the statute as written—even if we think some other approach might accor[d] with good policy.") (internal quotation marks and citation omitted) (alteration in original).   This subsequent authority has called into serious question the analysis advanced by the Trustee and accepted by the District Court, raising the question of whether the District Court's ruling has now been superseded.   *See, e.g., In re Wiggins*, 341 B.R. 506, 512 (M.D.Pa. 2006) (when a circuit court decision "has been 'undermined' by a later decision of the Supreme Court, we are obligated to recognize that the circuit case has been overruled. An implicit overruling is sufficient. So is an inconsistency in the holdings.") (citation omitted); *Frangos v. Doering Equipment Corp.*, 860 F.2d 70, 72 (3d Cir.1988) ("Although a cogent argument could have previously been waged based on past precedent within this circuit, the Supreme Court has recently rendered a decision making the Appellees' position untenable."); see also *Nedds v. Calderon*, 678 F.3d 777, 781 (9th Cir.2012); *U.S. v. Jackson*, 736 F.3d 953, 957 (10th Cir.2013).

Defendant agrees with the Trustee that the value defense serves primarily to reduce or eliminate the Trustee's potential recovery and that further argument as to its application to individual cases should await discovery.   In view of the Supreme Court's recent decision, this Court should conclude that the District Court's decision to override the statutory value defense available to avoidance defendants in a SIPA proceeding should be revisited, and that Defendant may submit the question of value to proof and trial in these proceedings.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' motion to dismiss.


Dated: June 2, 2014
       New York, New York

Respectfully submitted,

DENTONS US LLP

By:  /s/ Carole Neville
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Tel:  (212) 768-6700
Fax: (212) 768-6800

*Attorneys for Elaine Stein Roberts*