**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>           Plaintiff,<br><br>           v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>           Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>        BERNARD L. MADOFF,<br><br>        Debtor. | |

**REPLY MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN SUPPORT OF THE TRUSTEE'S DETERMINATIONS**
**REGARDING INTER-ACCOUNT TRANSFERS**

SECURITIES INVESTOR PROTECTION CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone:  (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
LAUREN T. ATTARD
Assistant General Counsel

# TABLE OF CONTENTS

**PAGE**

ARGUMENT ............................................................................................................................. 1

I.   Like a Priority Claim in an Ordinary Bankruptcy, the Customer Has the Burden of Proof in a SIPA Liquidation ................................................................................................................. 1

II.  Claimants' Disputes Are Between Transferors and Transferees ............................................. 4

III.  BLMIS and Its Predecessor Firm Have Been Registered as a  Broker-Dealer with the SEC Since 1960 and a Member of SIPC Since 1970 .................................................................... 7

IV.  The Trustee is Honoring the Separate Capacities of Each Customer ..................................... 9

V.  Claimants' Remaining Arguments Are Without Merit .......................................................... 10

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES:**                                                                                                                          **PAGE**

*In re Adler Coleman Clearing Corp.*, 204 B.R. 111 (Bankr. S.D.N.Y. 1997) ...............................3

*Banque Worms v. BankAmerica International*, 928 F.2d 538 (2d Cir. 1991) ...............................7

*In re Bernard L. Madoff Investment Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010), *aff'd* 654
     F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 8, 2011), *cert.
     dismissed*, 132 S.Ct. 2712 (2012), *and cert. denied*, 133 S. Ct. 24 and 133 S. Ct. 25
     (2012)...............................................................................................................................10

*In re Enron Corp.,* 279 B.R. 695 (Bankr. S.D.N.Y. 2002) ............................................................2

*In re Government Securities Corp.*, 90 B.R. 539 (Bankr. S.D. Fla. 1988) ....................................2

*In re Hanover Square Sec.*, 55 B.R. 235 (Bankr. S.D.N.Y. 1985) ..................................................2

*In re Klein, Maus & Shire, Inc.*, 301 B.R. 408 (Bankr. S.D.N.Y. 2003) ........................................3

*In re Madoff Securities,* 499 B.R. 416 (S.D.N.Y. 2013), *certification den.*, 2013 WL 6301085
     (S.D.N.Y. Dec. 5, 2013).................................................................................................9

*In re O.P.M. Leasing Services, Inc.*, 60 B.R. 679 (Bankr. S.D.N.Y. 1986) ..................................2

*Schultz v. Omni Mutual, Inc.,* [1993-94] Fed. Sec. L. Rep. (CCH) 98,095 (S.D.N.Y. 1993)..........3

*Simkin v. Blank*, 19 N.Y.3d 46 (N.Y. Ct. App. 2012)....................................................................6

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,* 476 B.R. 715 (S.D.N.Y.),
     *supplemented* (May 15, 2012)..........................................................................................10

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr.
     S.D.N.Y. 2013) ...............................................................................................................11

*SIPC v. I.E.S. Mgmt. Group*, 612 F.Supp. 1172 (D. N.J. 1985), *aff'd w/o opinion*,
     791 F.2d 921 (3d Cir. 1986)............................................................................................2

*SIPC v. Pepperdine University (In re Brentwood Securities, Inc.),* 925 F.2d 325
     (9th Cir. 1991)................................................................................................................3

# TABLE OF AUTHORITIES
### (cont.)

**CASES:**                                                                                    **PAGE**

*SIPC v. Stratton Oakmont, Inc.,* 229 B.R. 273 (Bankr. S.D.N.Y.), *aff'd sub nom., Arford v. Miller (In re Stratton Oakmont)*, 239 B.R. 698 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 420 (2d Cir. 2000)......................................................................................................2, 3

*SIPC v. Wise (In re Stalvey & Associates, Inc.)*, 750 F.2d 464 (5th Cir. 1985) ............................3

*Stern v. Marshall,* 564 U.S. ___, 131 S. Ct. 2594 (2011)............................................................11

## STATUES AND RULES

Federal Rules of Bankruptcy Procedure
3001(f)......................................................................................................................................3
3007(a) ....................................................................................................................................4

Registration of Successors to Broker-Dealers and Investment Advisors, Exchange Act Release No. 34,31661, 58 Fed. Reg. 7, at 8-9 (Jan. 4, 1993) ...........................................................8

Securities and Exchange Act of 1934, 15 U.S.C. §
78*o*(b) .....................................................................................................................................8

Securities Investor Protection Act, 15 U.S.C. §§
78ccc(a)(2)(A)..........................................................................................................................8
78fff-2(b)...............................................................................................................................3, 4
78fff-2(b)(1) .............................................................................................................................2
78fff-3(a)..................................................................................................................................2
78fff-3(a)(2) .............................................................................................................................9
78*lll*(14)....................................................................................................................................3

SIPC's Series 100 Rules, 17 C.F.R. §300.100-300.105 ..........................................................9-10

United States Bankruptcy Code, 11 U.S.C §
548(e) .....................................................................................................................................10

The Securities Investor Protection Corporation ("SIPC") submits this reply memorandum of law in further support of the motion (the "Motion"), Docket No. 6084, filed by Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff").    In the Motion, the Trustee asks this Court to uphold the Trustee's determinations (the "Determinations"), and to overrule the objections by the claimants (the "Claimants") who challenge the Trustee's treatment of the transfers of fictitious profits between accounts in the calculation of the Claimants' "net equity."

## ARGUMENT

### I.    Like a Priority Claim in an Ordinary Bankruptcy, the Customer Has the Burden of Proof in a SIPA Liquidation

Multiple Claimants argue that the burden of proof for a customer in a SIPA case is the same as the burden of proof of a general creditor in a bankruptcy case.   *See, e.g.*, Omnibus Opposition, dated May 16, 2014, Docket No. 6732 ("Omnibus Brief"), at 24-25.    To the contrary, a claimant bears the burden of proof for proving its customer claim in a SIPA case, just as a priority claim has the burden of proof in ordinary bankruptcy.

The burden of proof in SIPA cases parallels that in ordinary bankruptcy.    In ordinary bankruptcy proceedings, if the creditor seeks a preferred status, he bears the initial burden.    In contrast, claims of general creditors are prima facie valid, and the burden of disproving the validity of the claims rests on the objecting party.    The same standards apply in SIPA cases.

---

[1] For convenience, references to provisions of SIPA shall omit "15 U.S.C."

"Customer" status in a SIPA proceeding is a preferred status which gives the customers priority over other creditors in the distribution of certain assets – customer property – marshaled by the trustee. *SIPC v. I.E.S. Management*, 612 F. Supp. 1172, 1177 (D. N.J. 1985), *aff'd w/o opinion*, 791 F.2d 921 (3d Cir. 1986) (holding that "customers" under SIPA receive preferential treatment by being satisfied ahead of general creditors); *In re Hanover Square Securities*, 55 B.R. 235, 237 (Bankr. S.D.N.Y. 1985) (stating that "[a]ffording customer status confers preferential treatment")*; In re Government Securities Corp.*, 90 B.R. 539, 540 (Bankr. S.D. Fla. 1988) (explaining that "customers" under SIPA have "preferred status").  SIPA derives from subsection "e" of section 60 of the Bankruptcy Act (repealed 1979), which was entitled "Preferred Creditors."   Because of the availability of SIPC funds, one who qualifies as a customer in a SIPA proceeding may be paid, within the limits of protection, even when the debtor's estate has no assets. SIPA §§78fff-2(b)(1) and 78fff-3(a).

In an ordinary bankruptcy, claimants seeking a preferred status bear the burden of showing that their claims are entitled to priority status. *See In re Enron Corp.*, 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002) ("The claimant has the burden of establishing entitlement to the priority."); *In re O.P.M. Leasing Services, Inc.*, 60 B.R. 679, 680 (Bankr. S.D.N.Y. 1986) ("It is the claimant's burden to establish entitlement to priority treatment.").  The same rule applies to a SIPA case. *SIPC v. Stratton Oakmont, Inc.*, 229 B.R. 273, 278 (Bankr. S.D.N.Y.) (holding that just as creditors in bankruptcy have the burden of proving priority status, claimants in a SIPA case have the burden of proving they are "customers" and that their net equity is "customer property"), *aff'd sub nom., Arford v. Miller (In re Stratton Oakmont, Inc.)*, 239 B.R. 698 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 420 (2d Cir. 2000).  And, in contrast to the burden imposed on

2

customers, the claims of general creditors in a SIPA case are, as in an ordinary bankruptcy, prima facie valid. *See* Bankruptcy Rule 3001(f).

Provisions of SIPA make clear the claimant's burden for establishing a customer claim by requiring that a debtor's obligations to its customers be "ascertainable from the books and records of the debtor" or "otherwise established to the satisfaction of the trustee." Section 78fff-2(b). Furthermore, the satisfaction of a claim "may be conditioned upon the trustee requiring claimants to execute, in a form to be determined by the trustee, appropriate receipts, supporting affidavits, releases and assignments." *Id.* Thus, in a SIPA proceeding, the burden of proof rests with the party seeking customer status. *See In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003) ("SIPA clearly places the burden of proof to establish customer status on the claimant."); *In re Adler Coleman Clearing Corp.*, 204 B.R. 111, 115 (Bankr. S.D.N.Y. 1997) ("The Trustee and SIPC are correct that the Claimants must prove that they are 'customers' and that the equity in the Deposit Accounts is 'customer property' under SIPA."); *Schultz v. Omni Mutual, Inc.*, [1993-94] Fed. Sec. L. Rep. (CCH) 98,095 at p. 98,763 (S.D.N.Y. 1993); *SIPC v. Pepperdine University (In re Brentwood Securities, Inc.)*, 925 F.2d 325, 328 (9th Cir. 1991) (holding claimants have burden of proving that they are customers by establishing that they entrusted cash or securities to the broker).[2]

---

[2] In fact, the claimant has the burden of proving "customer" status as to each transaction. *See SIPC v. Stratton Oakmont, Inc.*, 229 B.R. at 277 ("[A]n investor can be a customer vis-à-vis certain transactions but not others"); *SIPC v. Wise (In re Stalvey & Associates, Inc.)*, 750 F.2d 464, 471 (5th Cir. 1985) ("Customer status 'in the air' is insufficient to confer the SIPA's protection on a given transaction."). While not typically relevant to this case, this requirement is relevant to many other SIPA cases when, for example, a person has protected securities with a SIPC member, and also unregistered investment contracts, or commodity futures transactions, which are not protected as "securities" under SIPA section 78*lll*(14). In such a case, the customer would be eligible for customer protection for the securities but not for the unregistered investment contracts or commodity futures transactions.

The difference in treatment of customer claims and general creditor claims is also exemplified by the claims procedures in this case. *See* Order, entered December 23, 2008, Docket No. 12 ("Claims Procedures Order"). The Claims Procedures Order is typical of an order entered in a SIPA liquidation. The Trustee has the authority to satisfy and/or settle claims of customers, as long as the claims "agree with the Debtor's books and records, or are otherwise established to the satisfaction of the Trustee pursuant to 15 U.S.C. § 78fff-2(b)." *See* Claims Procedures Order at 5. For any claims which disagree with the books and records of the Debtor and are not settled by the Trustee, the Trustee sends a determination letter to the claimant. *Id.* at 6. That determination is deemed final unless, within 30 days of the date that the determination is mailed, the *claimant* files an objection to the determination. *Id.* at 6-7. Ultimately, it is the claimant's burden to object to the Trustee's determination, or that determination is deemed final. A general creditor claimant in a SIPA liquidation, just like in an ordinary bankruptcy case, has the opposite burden: the claim is deemed prima facie valid unless the *Trustee* objects, in writing. Bankruptcy Rule 3007(a). The Trustee does not send a determination, as the burden is on the Trustee to object to a general creditor claim.

## II.    Claimants' Disputes Are Between Transferors and Transferees

At bottom, Claimants ask the Trustee to referee a dispute that more accurately is between each transferor and each transferee of each inter-account transfer. As this Court has stated, if the transferee did not receive the full benefit of its bargain with the transferor, the transferee might have a rescission claim, or some other claim, against the transferor. *See* Transcript, dated May 20, 2014, Docket No. 6896, at 36. But the question of whether the transferee provided value for the transfer, and the consequences thereof, ultimately is irrelevant to the calculation of a customer's net equity under SIPA.

4

Using faulty reasoning, the Claimants in the Omnibus Brief point to two scenarios in an attempt to transform fictitious profits into principal. *See* Omnibus Brief at 9.  Under Scenario 1:

1.  BLMIS writes Customer A a check comprised of fictitious profits;

2.  Customer A deposits the check in Customer A's checking account;

3.  Customer A writes Customer B a check drawn on Customer A's checking account;

4.  Customer B deposits Customer A's check into Customer B's checking account; and

5.  Customer B writes a check to BLMIS for deposit into Customer B's brokerage account.

Under this Scenario 1, Customer B receives full credit for the deposit to his BLMIS account as if the funds were principal.  As a practical matter, when Customer A receives the check from BLMIS and deposits it at the bank, the net equity in Customer A's BLMIS account is debited that amount.  Similarly, when Customer B writes a check to BLMIS, Customer B is ultimately credited with that deposit as principal in Customer B's net equity calculation.

Scenario 2, on the other hand, consists of a straight inter-account transfer between Customer A's BLMIS account and Customer B's BLMIS Account.

Claimants argue that there is no difference in the outcome between Scenario 1 and Scenario 2.  Not so.  Under Scenario 1, in order for BLMIS to write a check to Customer A to withdraw the fictitious profits from Customer A's account, BLMIS takes cash belonging to other customers and gives it to Customer A in the form of fictitious profits.  Customer A has made a withdrawal of real cash, albeit constituting fictitious profits.

In contrast, under Scenario 2, no such withdrawal or monetization occurs.  The transfer of fictitious profits between BLMIS accounts does not monetize the sum.  The fictitious nature of the property does not change when transferred between BLMIS accounts.  Customer B will not be entitled to the amount transferred within BLMIS because it is comprised of fictitious profits.

If Customer B makes a withdrawal of the amount, BLMIS will take cash belonging to other customers and give it to Customer B.  In that instance, the corresponding debit to Customer B's BLMIS account, upon the withdrawal by Customer B from his account, must be a reduction or offset against deposits of real cash in Customer B's BLMIS account.

For many of the Claimants, the inter-account transfers purported to be gifts, inheritances, or other transfers between related individuals.  If the transfer between Customer A and Customer B was the result of an arm's-length transaction, the validity of the transfer could be called into question.  In fact, the New York Court of Appeals has decided at least one analogous situation.  *See Simkin v. Blank*, 19 N.Y.3d 46 (N.Y. Ct. App. 2012) (holding that divorce agreement that was finalized before the Madoff fraud was revealed could not be unwound on the doctrine of "mutual mistake" even though  one party received the Madoff account in the settlement and thus bore the losses alone).  But whether Customer B provided consideration for the transfer, and was owed the amount transferred to him, is a matter for resolution between the two customers and has no impact on the calculation his or her net equity.

For this reason, the law of gifts, state law property rights, and other laws that the Claimants cite to for finality of transactions is inapplicable to claim determinations in this SIPA liquidation.  *See, e.g.*, Omnibus Brief at 13-16.  The calculation of net equity for an inter-account transfer does not concern whether transfers were made properly between two account holders.  Certainly, Claimants make no allegation that the transfers were unauthorized or unilaterally

made on the Debtor's initative.[3]  Rather, the transfers were initiated by the Claimants, who are responsible for the repercussions.

The facts in Scenario 1 rely on hypotheticals: a financial institution conducting real financial transactions (deposits and withdrawals on three separate and real checking accounts), none of which happened in the transactions at issue here.  Rather, the scenarios presented in the Omnibus Brief show how the determination of Customer A and Customer B's net equities changes in each of the two scenarios.  In both cases, only one customer – either Customer A or Customer B – effectively receives credit for the deposits as principal, and only one customer bears the consequences of a withdrawal.  When viewed from the perspective of other customers who have yet to receive back their principal, Claimants' arguments about fairness, or the absence thereof, lie fallow.

### III.    BLMIS and Its Predecessor Firm Have Been Registered as a Broker-Dealer with the SEC Since 1960 and a Member of SIPC Since 1970

Certain Claimants make a complicated argument based on erroneous facts which are raised for the first time in their opposition to the Trustee's Motion.  *See* Customer's Memorandum of Law, dated May 16, 2014, Docket No. 6708 ("B&P Brief") at 10-11.  According to those certain Claimants, BLMIS was formed on December 4, 2000, and the Trustee is impermissibly combining accounts from before and after this date.  *Id.*

---

[3] Cases cited by Claimants, such as *Banque Worms v. BankAmerica International*, 928 F.2d 538 (2d Cir. 1991), are distinguishable for other reasons as well.  In *Banque Worms*, for example, the Second Circuit court applied New York law on restitution, which is not applicable here, to determine whether a mistaken payment should be returned.  *Id.*  Here, Claimants are not asking the Trustee to return a mistaken payment, but rather to pay Claimants based on fictitious profit.

As of January 19, 1960, Bernard L. Madoff, a sole proprietorship, later known as BLMIS, was registered as a broker-dealer with the Securities and Exchange Commission ("SEC").  *See* Declaration of Kevin H. Bell, dated June 6, 2014 ("Bell Declaration"), Exhibit A.

On December 30, 1970, when SIPA was enacted, that sole proprietorship became a member of SIPC.  SIPA § 78ccc(a)(2)(A) (stating that all brokers or dealers registered under 15 U.S.C. §78*o*(b) are required to be SIPC members).

On January 12, 2001, BLMIS filed a Form BD-Amendment.  *See* Bell Declaration, Exhibit B.  In that form, BLMIS stated that its predecessor's name is Bernard L. Madoff, and "[e]ffective January 1, 2001, predecessor will transfer to successor all of predecessor's assets and liabilities, related to predecessor's business.  The transfer will not result in any change in ownership or control." *Id.* at 9-10.  In addition, in question 5, regarding succession, BLMIS checked "yes" to the question of whether the applicant is succeeding to the business of a currently registered broker-dealer.  *Id.* at 5.

As a successor broker-dealer, BLMIS agreed to take over the assets and liabilities of Bernard L. Madoff, the sole proprietorship. *See, e.g.*, Registration of Successors to Broker-Dealers and Investment Advisors, Exchange Act Release No. 34,31661, 58 Fed. Reg. 7, at 8-9 (Jan. 4, 1993), *available at* http://www.sec.gov/rules/interp/1992/34-31661.pdf.  "To ensure that there is a legitimate connection between the predecessor and successor, no entity may rely on the successor rules unless it is acquiring or assuming substantially all of the assets and liabilities of the predecessor's broker-dealer . . . business." *Id.* at 8.  In this case, BLMIS was permitted to file an amendment form because the amendment was the  result of a formal change in the structure or legal status of the broker-dealer, and did not involve a practical change in the control or operations of the broker-dealer or advisor.  *Id.* at 8-9.

Accordingly, those certain Claimants' arguments to disregard transfers prior to the formation of BLMIS must be rejected out of hand.

### IV.    The Trustee is Honoring the Separate Capacities of Each Customer

Multiple claimants argue that by treating the accounts of transferors and transferees separately for determination of net equity, the Trustee is "collapsing" accounts in violation of SIPC's Series 100 Rules, 17 C.F.R. §§ 300.100–300.105. *See, e.g.*, Omnibus Brief at 6-8.  To the contrary, the Trustee is making determinations in accordance with the Series 100 Rules.

SIPA section 78fff-3, which provides for SIPC advances for the benefit of customers up to statutory limits, states that "a customer who holds accounts with the debtor in separate capacities shall be deemed to be a different customer in each capacity." SIPA § 78fff-3(a)(2). The SIPC Series 100 Rules specify how accounts of separate customers are identified.  Under SIPC Rule 104, 17 C.F.R. §300.104, for example, trusts created under valid written trust instruments, are deemed to be held by a customer in separate capacities.  Thus, a trust account held by a separate trust is held by a separate "customer," and would be separately eligible for the maximum amount of SIPC protection from any other account held in a separate capacity.

In determining Claimants' claims, the Trustee treated each account held in a separate capacity separately in accordance with the SIPC Series 100 Rules.  Transfers of principal away from each of the transferor accounts were deposited into the transferee accounts, which, for most if not all of the Claimants, are accounts of separate customers.  The nature of the fictitious profits did not change, and such fictitious profits was not laundered or transformed into principal, by the transfer of the fictitious profits into a different account.  *See In re Madoff Securities*, 499 B.R. 416, 428-429 (S.D.N.Y. 2013), *certification den.*, 2013 WL 6301085 (S.D.N.Y. Dec. 5, 2013).

9

If the Trustee were to combine accounts, which he did not, he would credit all deposits and debit all withdrawals from the two accounts, determine the net equity for both accounts as if they were one, and then provide the SIPC protection of up to $500,000 only once to the new combined account, not to the accounts separately.  The Trustee did not do that here, and thus there is no violation of the SIPC Series 100 Rules.

## V.    Claimants' Remaining Arguments Are Without Merit

Multiple claimants also rely on the various avoidance provisions of the Bankruptcy Code, including section 546(e) and the statute of limitations, to argue that they should receive credit for fictitious profits.  *See, e.g.*, Omnibus Brief at 16-19.  As this Court has ruled, the cash-in cash-out method requires computing net equity over the entire life of the investment, and the two year statute of limitations does not apply.  *See* Transcript, dated May 20, 2014, Docket No. 6896, at 50.

Certain other Claimants argue, without citation, that when customers funded their accounts through inter-account transfers, federal securities law treats that new account as "new investment."  *See* B&P Brief at 21-22.  Nothing in the securities laws mandates SIPC and the Trustee to treat fictitious profits as principal.

These same Claimants also challenge the net investment method for determining net equity in retirement accounts, arguing that ERISA and the Internal Revenue Code mandate a different result.  *See* B&P Brief at 14-17.  For the reasons stated by the Second Circuit and the District Court, these arguments also fail.  *See In re Bernard L. Madoff Inv. Sec. LLC,* 424 B.R. 122 (Bankr. S.D.N.Y. 2010), *aff'd,* 654 F.3d 229 (2d Cir. 2011), *cert. dismissed,* 132 S. Ct. 2712 (2012), and *cert. den.,* 133 S. Ct. 24 and 133 S. Ct. 25 (2012); *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y. 2012), *supplemented* (May 15, 2012) (holding that the

10

Internal Revenue Code and its requirement for minimum distributions for IRA accounts does not require dismissal of the Trustee's claims).

These same Claimants also attempt to re-litigate the time-based damages issue, already decided by this Court and on appeal to the Second Circuit, by arguing that securities law requires the payment of interest. *See* B&P Brief at 17-18; *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013), *on appeal*, Case No. 14-97 (2d Cir.).

These same Claimants also raise the issue of whether multiple claimants to one account should be treated separately, *see* B&P Brief at 20-21, which is not currently at issue and will be addressed by the Trustee at a later time.

Finally, still other Claimants argue that *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011), prohibits this Court from adjudicating Claimants' claims. *See* Declaration of Jeffrey L. Bernfeld, filed May 16, 2014, Docket No. 6714, at ¶ 8.  These other Claimants fail to recognize, however, that by filing claims with this Court, these other Claimants have consented to the jurisdiction of this Court, and that a claim determination is precisely the type of core proceeding, arising in Title 11, which is properly before this Court.  *Stern v. Marshall*, 131 S. Ct. at 2604 (explaining that the issue in *Stern* is whether a bankruptcy judge may enter final judgment on a core proceeding that does *not* arise in or arise under Title 11).

11

## CONCLUSION

For all of the aforementioned reasons, the Trustee's Determinations should be affirmed

and all of Claimants' Objections should be denied.


Dated: Washington, D.C.
      June 6, 2014                Respectfully submitted,

                                     JOSEPHINE WANG
                                     General Counsel

                                   */s/ Kevin H. Bell*
                                   KEVIN H. BELL
                                   Senior Associate General Counsel for
                                    Dispute Resolution

                                     LAUREN T. ATTARD
                                   Assistant General Counsel

                                   SECURITIES INVESTOR
                                     PROTECTION CORPORATION
                                   805 15th Street, N.W., Suite 800
                                   Washington, D.C. 20005
                                   Telephone: (202) 371-8300
                                   E-mail: jwang@sipc.org
                                   E-mail: kbell@sipc.org
                                   E-mail: lattard@sipc.org