**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani
Robert S. Loigman
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Telecopier:  (212) 849-7100

*Counsel to Joint Liquidators of Kingate Global*
*Fund Ltd. and Kingate Euro Fund Ltd.*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES INVESTOR PROTECTION CORPORATION,**<br><br>PLAINTIFF-APPLICANT,<br><br>**V.**<br><br>**BERNARD L. MADOFF INVESTMENT SECURITIES LLC,**<br><br>DEFENDANT. | **NO. 08-01789 (SMB)**<br><br>**SIPA LIQUIDATION**<br><br>**(SUBSTANTIVELY CONSOLIDATED)** |
| **IN RE:**<br>**BERNARD L. MADOFF,**<br>DEBTOR. | |
| **IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC**<br><br>PLAINTIFF<br><br>**V.**<br><br>**KINGATE GLOBAL FUND, LTD., by its Liquidators, and KINGATE EURO FUND, LTD., by its Liquidators.**<br><br>DEFENDANTS. | **Adv. Pro. No. 12-01920 (SMB)** |

## MEMORANDUM OF KINGATE GLOBAL FUND, LTD. AND KINGATE EURO FUND, LTD. IN OPPOSITION TO TRUSTEE'S <u>MOTION FOR A PRELIMINARY INJUNCTION</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ......................................................................................4

    A.    The Kingate Funds.............................................................................4

    B.    The Kingate Funds' Claims in Bermuda .............................................4

    C.    The Progress of the Bermuda Action ..................................................5

    D.    The Trustee's Claims Against the Kingate Funds and Bermuda Defendants..........6

    E.    The Trustee's Initial Challenge to the Kingate Funds' Claims ............................7

    F.    The Trustee's Current Challenge to the Kingate Funds' Claims...........................8

ARGUMENT ..........................................................................................................10

I.    The Kingate Funds' Recoveries From Their Managers Are Not Property of the BLMIS Estate........................................................................................10

    A.    Monies Obtained by the Kingate Funds Are Not Property of the BLMIS Estate Unless and Until They Are Avoided and Recovered by the BLMIS Trustee...............................................................................11

    B.    The Tracing Analyses Submitted by the Kingate Funds Demonstrate that the Trustee Is Pursuing Funds that Never Even Passed Through BLMIS.............12

    C.    The Kingate Funds' Action Against Their Managers in Bermuda Is Not the Pursuit of Their BLMIS Customer Claims. ....................................13

II.    This Action Is Not Ripe for Adjudication........................................................14

    A.    The Kingate Funds Have Not Yet Recovered from the Bermuda Defendants. .....................................................................................15

    B.    There Is No Basis for Suggesting that the Kingate Funds' Court-Appointed Liquidators Would Distribute Assets Prior to Resolution of the Avoidance Action. .............................................................................16

III.    There Is No Basis for an Injunction Preventing the Kingate Funds from Using Their Own Assets........................................................................................17

A.   The Trustee Improperly Invokes Section 105(a) as an Attempt to
     Circumvent the Requirements of Rule 65 ............................................................17

     1.   There Is No Basis for Relief Under Section 105(a) ...................................17

     2.   The Trustee Cannot Satisfy the Section 105(a) Standard in any
          Event .......................................................................................................19

     3.   This Court Has Not Issued Similar Injunctions Under Section
          105(a). ......................................................................................................22

B.   There Is No Basis for Injunctive Relief Under Rule 65 .........................................24

     1.   There Is No Threat of Irreparable Harm. ..................................................24

     2.   The Trustee Is Not Likely to Prevail in the Avoidance Action. ................25

     3.   The Balance of Harms Does Not Tip "Decidedly" Toward the
          Trustee .....................................................................................................27

C.   The Trustee's Decision to Pursue Claims Against the Bermuda Defendants
     Does Not Give His Claims Priority Over the Kingate Funds' Claims. .................27

D.   A Pre-Judgment Freezing Order Here Would Be Inconsistent with the
     Supreme Court's *Grupo Mexicano* Decision. .......................................................28

CONCLUSION ....................................................................................................................31

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Adelphia Commc'ns Corp.*,
  323 B.R. 345 (Bankr. S.D.N.Y. 2005) .................................................................30

*In re AP Indus., Inc.*,
  117 B.R. 789 (Bankr. S.D.N.Y. 1990) .................................................................19

*In re Baldwin-United*,
  765 F.2d 343 (2d Cir. 1985).............................................................................19

*In re Bevill, Bresler, & Schulman, Inc.*,
  83 B.R. 880 (D.N.J. 1988) ................................................................................12

*Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*,
  354 B.R. 45 (Bankr. S.D.N.Y. 2006) .................................................................21

*In re Chiles Power Supply Co., Inc.*,
  264 B.R. 533 (Bankr. W.D. Mo. 2001)..............................................................21

*Citigroup Global Markets, Inc. v.
  VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010)...............................................................................24

*Consol. Edison Co. v. Herrington*,
  752 F. Supp. 1082 (D.D.C. 1990) .....................................................................14

*Daines v. Alcatel, S.A.*,
  105 F. Supp. 2d 1153 (E.D. Wa. 2000)..............................................................15

*In re Dairy Mart Convenience Stores, Inc.*,
  351 F.3d 86 (2d Cir. 2003)...............................................................................17

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
  45 F.3d 530 (1st Cir. 1995)..............................................................................15

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
  980 F.2d 125 (2d Cir. 1992)..............................................................................11

*Finanz AG Zurich v. Banco Economico S.A.*,
  192 F.3d 240 (2d Cir. 1999)..............................................................................27

*Fisher v. Apostolou*,
  155 F.3d 876 (7th Cir. 1998) .......................................................................21, 23

*Fox v. Picard*,
  848 F. Supp. 2d 469 (S.D.N.Y. 2012)..........................................................22, 23, 24

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989)..................................................................................30

*Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999).......................................................................... *passim*

*Jones v. City Sch. Dist. of New York*,
  No. 98 CIV. 3479(HB), 1998 WL 526437
  (S.D.N.Y. Aug. 20, 1998) .......................................................................14

*In re Kalisch*,
  413 B.R. 115 (Bankr. S.D.N.Y. 2008)....................................................26

*Longway v. Jefferson Cnty. Bd. of Supervisors*,
  24 F.3d 397 (2d Cir. 1994).....................................................................14

*Lyondell Chem. Co. v. Centerpoint Energy Gas
  Servs., Inc. (In re Lyondell Chem. Co.)*,
  402 B.R. 571 (Bankr. S.D.N.Y. 2009) ...................................................19

*MacDonald v. Gen. Motors Corp.*,
  110 F.3d 337 (6th Cir. 1997) .................................................................13

*In re Maxwell Commnc'ns Corp. plc by Homan*,
  93 F.3d 1036 (2d Cir. 1996)...................................................................27

*McCord v. Papantoniou*,
  316 B.R. 113 (E.D.N.Y. 2004) ..............................................................30

*Monarch Life Ins. Co. v. Ropes & Gray*,
  65 F.3d 973 (1st Cir. 1995).....................................................................19

*Motorola Credit Corp. v. Uzan*,
  202 F. Supp. 2d 239 (S.D.N.Y. 2002).....................................................29

*Off. Comm. of Unsecured Creditors of Sunbeam
  Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.)*,
  284 B.R. 355 (Bankr. S.D.N.Y. 2002)....................................................26

*Painewebber, Inc. v. Northern Trust Co.*,
  No. 87 C 2971, 1987 WL 13438 (N.D. Ill., June 30, 1987) ..................16

*Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*,
  No. 11 Civ. 3489 (JMF), 2013 WL 1915330
  (S.D.N.Y. May 9, 2013)..........................................................................30

*Pfizer, Inc. v. Law Offices of Peter G. Angelos
  (In re Quigley Co., Inc.)*,
  676 F.3d 45 (2d Cir. 2012)......................................................................21

*In re Phar-Mor, Inc. Secs. Litig.*,
  164 B.R. 903 (W.D. Pa. 1994) ...............................................................28

*Picard v. Cohmad,*
  Civ. No. 12-0115, 2013 WL 1609154
  (S.D.N.Y. Apr. 15, 2013)..................................................................................26

*Picard v. Fox,*
  429 B.R. 423 (Bankr. S.D.N.Y. 2010).............................................................22

*Picard v. Maxam Absolute Return Fund, L.P.,*
  460 B.R. 106 (Bankr. S.D.N.Y. 2011).............................................................24

*Picard v. Merkin,*
  440 B.R. 243 (Bankr. S.D.N.Y. 2010).............................................................11

*Picard v. Schneiderman,*
  491 B.R. 27 (S.D.N.Y. 2013)...........................................................................24

*Picard v. Stahl,*
  443 B.R. 295 (Bankr. S.D.N.Y. 2011).............................................................22

*In re Probulk Inc.,*
  407 B.R. 56, 59-60 (Bankr. S.D.N.Y. 2009)....................................................21

*Queenie, Ltd. v. Nygard Int'l,*
  321 F.3d 282 (2d Cir. 2003).............................................................................18

*In re Reliance Acceptance Grp., Inc.,*
  235 B.R. 548 (D. Del. 1999).............................................................................28

*Republic of the Philippines v. Marcos,*
  806 F.2d 344 (2d Cir. 1986).............................................................................29

*Rubin v. Pringle (In re Focus Media, Inc.),*
  387 F.3d 1077 (9th Cir. 2004) .........................................................................29

*SIPC v. Bernard L. Madoff Inv. Secs. LLC
  (In re Madoff Securities),* No. 12-0115 (JSR),
  2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014)..................................................26

*In re Sabratek Corp.,*
  257 B.R. 732 (Bankr. D. Del. 2000) ................................................................29

*In re Salem Baptist Church of Jenkintown,*
  455 B.R. 857 (Bankr. E.D. Pa. 2011) ..............................................................29

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.),*
  325 B.R. 134 (Bankr. S.D.N.Y. 2005) ......................................................11, 18

*In re Seatco, Inc.,*
  259 B.R. 279 (Bankr. N.D. Tex. 2001).............................................................29

*In re SI Restructuring, Inc.,*
  532 F.3d 355 (5th Cir. 2008) ...........................................................................26

*State Farm Mut. Auto. Ins. Co. v. Dole*,
    802 F.2d 474 (D.C. Cir. 1986) ...................................................................................16

*Stichting Ter Behartiging Van de Bel. v. Schreiber*,
    407 F.3d 34 (2d Cir. 2005) .......................................................................................13

*In re Teknek, Inc.*,
    343 B.R. 850 (Bankr. N.D. Ill. 2006) ...................................................................29, 30

*The Lautenberg Found. v. Picard*,
    Nos. 11-5421-bk (L), 11-5428-bk (CON),
    2013 WL 616269 (2d Cir. Feb. 20, 2013)...................................................................19

*United States ex rel Rahman v. Oncology Assocs.*,
    198 F.3d 489 (4th Cir. 1999) ....................................................................................29

*United States v. Broadcast Music, Inc.*,
    275 F.3d 168 (2d Cir. 2001).................................................................................14, 15

*Volvo N. Am. Corp. v. Men's Int'l Prof. Tennis Council*,
    857 F.2d 55, 63 (2d Cir. 1988) .................................................................................14

*In re Wingspread Corp.*,
    92 B.R. 87 (Bankr. S.D.N.Y. 1988) ...........................................................................19

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................................27

*Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*,
    No. 00 Civ. 8051 (JSM), 2000 WL 1610790
    (S.D.N.Y. Oct. 27, 2000) .........................................................................................29

## Rules and Statutes

Fed. R. Civ. P. 65 ............................................................................................... *passim*

11 U.S.C. § 105(a) .............................................................................................. *passim*

11 U.S.C. § 362.................................................................................................. *passim*

11 U.S.C. § 502(d) ..................................................................................................22, 25

11 U.S.C. § 541(a)(3)...................................................................................................20

11 U.S.C. § 544..........................................................................................................18

11 U.S.C. § 546(e) ......................................................................................................26

11 U.S.C. § 547..........................................................................................................18

11 U.S.C. § 548..........................................................................................................18

11 U.S.C. § 550..........................................................................................................18

15 U.S.C. § 78eee(b)(2)(A)(i) .................................................................................................18

15 U.S.C. §78fff-4(e) ...........................................................................................................18

15 U.S.C. §78fff-2(c)(3) .......................................................................................................12

Defendants Kingate Global Fund Ltd. ("Kingate Global") and Kingate Euro Fund Ltd. ("Kingate Euro" and, together with Kingate Global, the "Kingate Funds") respectfully submit this *Memorandum of Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. in Opposition to the Trustee's Motion for a Preliminary Injunction* (the "Motion").

## PRELIMINARY STATEMENT[1]

In his Motion, the Trustee seeks extraordinary relief. Namely, he asks that this Court enjoin the court-appointed Joint Liquidators of the Kingate Funds from distributing the proceeds of an action that the Joint Liquidators have been pursuing against those funds' investment managers and related parties. Simply put, the Trustee is asking this Court to displace the courts of the British Virgin Islands and Bermuda and take direct control over assets that may, one day, be in the possession of the estates of the Kingate Funds. Such extraordinary relief is unwarranted under the law, inequitable in nature, and should be rejected.

The Kingate Funds are massive net losers that were among the most adversely affected of all of Bernard Madoff's victims. Collectively, the two funds—and thus the investors in the funds—lost approximately $800 million by investing in BLMIS. The Trustee concedes this point. Nonetheless, the Trustee initiated an adversary proceeding against the Kingate Funds in which he seeks, among other relief, to recover withdrawals received by the Kingate Funds preceding BLMIS' collapse (the "Avoidance Action"). As a result of the Avoidance Action, the Kingate Funds (acting through the Joint Liquidators) have been forced to wait and watch as other investors in BLMIS receive partial returns of their losses. The Kingate Funds and their investors have received nothing.

---

[1] Capitalized terms not defined herein shall take the meaning ascribed to them in the Motion.

In addition to their customer claims against the BLMIS estate, the Joint Liquidators have asserted claims against the funds' former investment manager, Kingate Management, and various related parties in Bermuda, where the investment manager was located before its own collapse (the "Bermuda Action"). The Kingate Funds' claims against their investment manager are wholly separate from their customer claims in the BLMIS SIPA proceedings, and the management fees and other amounts they paid to their investment manager constitute additional and distinct losses suffered by the Kingate Funds.

Many months after the Joint Liquidators commenced claims against Kingate Management and related parties (the "Bermuda Defendants"), the Trustee amended the complaint in the Avoidance Action to assert subsequent transferee claims against the Bermuda Defendants. Now, years later, the Trustee asserts that any proceeds the Kingate Funds obtain from the Bermuda Defendants must be set aside and reserved for possible payment to the Trustee in the event the Trustee succeeds in the Avoidance Action.

This is not the Trustee's first attempt at obtaining an injunction with respect to the Bermuda Action. The Trustee once sought to enjoin the Kingate Funds from bringing any claims whatsoever against the Bermuda Defendants, arguing inexplicably that the claims themselves were property of the BLMIS estate. After the Joint Liquidators responded to that version of the complaint, the Trustee revamped the action, acknowledging the Joint Liquidators' right to pursue their estates' claims but seeking to enjoin any distribution of proceeds from the Bermuda Action. While the relief sought has been entirely revised, it remains without a legal basis.

First, the Trustee's Motion is grounded on the erroneous assumption that any money the Joint Liquidators collect from the Bermuda Defendants—and they have yet to collect a single penny—would be property of the BLMIS estate. The case law could hardly be clearer that this is

incorrect. Assets in the possession of the Kingate Funds are not property of the BLMIS estate, and will not become so unless and until the Trustee succeeds in avoiding and recovering transfers to the Kingate Funds. This is bedrock bankruptcy law.

Second, the Trustee's Motion is both unripe and unnecessary. The Joint Liquidators, as court-appointed officials, have made clear that they will voluntarily agree *not to distribute* proceeds from the Bermuda Action until the Avoidance Action is resolved. The Trustee, however, has refused the Joint Liquidators' proposed stipulation because the Joint Liquidators would retain the ability to use Bermuda Action proceeds that the Kingate Funds ultimately recover to pay (a) the cost of pursuing the Bermuda Action itself, and (b) the costs of administering the Kingate Funds' liquidation. The Joint Liquidators are now free—as they must be—to use assets in the Kingate Funds' possession to pay for these administrative costs, and a continued ability to use the Kingate Funds' assets for these purposes is entirely appropriate and consistent with comity.

Third, there is no basis under the Bankruptcy Code or otherwise for the award of pre-judgment injunctive relief to the Trustee. Under either § 105 of the Bankruptcy Code—upon which the Trustee erroneously relies as a basis for broad injunctive relief—or Rule 65, the Trustee cannot establish a right to a preliminary injunction. Among other reasons, the Trustee is unable to show any harm to the BLMIS estate in the event such relief is denied.

Finally, the Trustee's attempt to obtain a pre-judgment freezing order runs afoul of Supreme Court precedent barring such "nuclear" relief in cases involving money damages.

For the reasons set forth below, the Trustee's Motion should be denied.

## FACTUAL BACKGROUND

A.    The Kingate Funds.

The Kingate Funds were investors in, and victims of, BLMIS.  As the Trustee has

acknowledged, the Kingate Funds collectively invested more than $1.7 billion dollars in BLMIS.

(Trustee Mem. at 6.)  The Kingate Funds were massive net losers.  Applying the Trustee's "net

equity" methodology (i.e., subtracting out their withdrawals from BLMIS), the Kingate Funds

lost *$800 million* by the time Madoff's fraud collapsed.  (First Declaration of Robert S. Loigman

¶ 3 n.2 (the "First Loigman Dec." is attached to the Declaration of Robert S. Loigman (the

"Loigman Dec.") as Ex. A).)

As a result of their massive losses, on May 8, 2009, the Kingate Funds were placed into

provisional liquidation and provisional liquidators were appointed.  On June 4, 2009, permanent

liquidation orders were issued, and thus the two funds became the subjects of a permanent

liquidation process under the direction of the BVI Court.  (First Loigman Dec. ¶ 3.)  The current

court-appointed Joint Liquidators in BVI are Stuart Mackellar and Gwynn Hopkins.  The

Kingate Funds are also subject to formal liquidation proceedings in Bermuda—where their

investment managers were located.  John McKenna is an additional Joint Liquidator in the

Bermuda proceeding.  Each of the Joint Liquidators is an officer of the court, and the liquidations

are subject to the supervision of the BVI and Bermuda courts.  (Affidavit of Mark Guy

Chudleigh ¶ 7(the "Chudleigh Aff." is attached to the Loigman Dec. as Ex. B).)

B.    The Kingate Funds' Claims in Bermuda.

The Kingate Funds were managed by Kingate Management, a Bermuda-based company

that operated as the Funds' manager.  As the Trustee alleged in his Third Amended Complaint,

Kingate Management "collected hundreds of millions in fees from the Kingate Funds, its sole

source of revenue."  (First Loigman Dec. Ex. A (Third Amended Complaint), ¶ 118.)  Kingate

Management, in turn, contracted with FIM Limited and FIM Advisers LLP (collectively, "FIM")
to act as Kingate Management's consultants in connection with the management of the two
Kingate Funds.  (First Loigman Dec. ¶ 4, First Loigman Dec. Exs. B-G.)  FIM was created and
operated by Carlo Grosso and Federico Ceretti, the same two individuals who, through
intermediary trusts, were the ultimate owners of Kingate Management.  (First Loigman Dec. ¶ 5.)

At the very outset of their appointment by the BVI Court, the Joint Liquidators and their
advisors began investigating and analyzing potential claims against Kingate Management and the
other Bermuda Defendants.  As a simple example of such a claim, the Kingate Funds paid
massive management fees to Kingate Management that were based on the stated value of the
Funds' assets.  Because those asset values were incorrect—as a result of the false reports
disseminated by BLMIS—the management fees paid to Kingate Management were hugely
inflated.

In order to file these claims, the Joint Liquidators applied for and obtained orders from
both the BVI and Bermuda Courts.  (Chudleigh Aff. ¶ 10.)  On December 22, 2010, having
received such authorizations, the Joint Liquidators commenced the Bermuda Action.  (*Id.*)  The
action states claims against the Bermuda Defendants for unjust enrichment arising from their
receipt of unearned management fees, and for damages for breach of contract and negligence
flowing from duties owed directly to the Kingate Funds.

C.    The Progress of the Bermuda Action.

The Bermuda Action has been pending for more than three years, during which time it
has progressed through various stages.  After the initial writ was issued, the Joint Liquidators
(a) framed and drafted detailed particulars to support their claims based on extensive
documentary records, (b) negotiated service with multiple defendants outside of the Bermuda
jurisdiction, (c) addressed extensive applications before the BVI Court filed by the various

5

trustee defendants, (d) successfully participated —in conjunction with the Trustee—in the hearing of an application before the Bermuda Court to wind-up Kingate Management and to appoint the Official Receiver of Bermuda as its provisional liquidator in place of its previous provisional liquidators, (e) sought and obtained relief from the Bermuda Court, which ordered the lifting of the Kingate Management stay to enable the action to proceed against Kingate Management, (f) engaged in extensive exchanges of pleadings and amended pleadings with Kingate Management, (g) engaged in negotiations with Kingate Management and the other Bermuda Defendants regarding case management directions, and (h) commenced extensive document management and review.  (*Id.* ¶ 11.)  The Bermuda Action is now in the discovery stage, and it is expected that trial on the claims will commence no earlier than March 2016. (Loigman Dec. ¶ 9.)

> D.    The Trustee's Claims Against the Kingate Funds and Bermuda Defendants.

Notwithstanding the Kingate Funds' massive losses resulting from Madoff's fraud, the Trustee initiated the Avoidance Action against the Kingate Funds in 2009 in which he seeks the return of principal that the Funds withdrew from BLMIS.  In May 2011—nearly six months *after* the Kingate Funds commenced the Bermuda Action—the Trustee amended his adversary proceeding against the Kingate Funds to add, for the first time, claims against the Bermuda Defendants.  The Trustee subsequently amended the complaint for a fourth time in February 2014 (the "Fourth Amended Complaint").  (Trustee Ex. I.)

In the Fourth Amended Complaint, the Trustee asserts various avoidance and subordination claims against the Kingate Funds, even though the Kingate Funds admittedly lost hundreds of millions of dollars as the result of Madoff's fraud.  The complaint's Ninth Count

seeks recovery of subsequent transfers from the Kingate Funds to their managers (and, subsequently, parties affiliated with those managers).

      E.      <u>The Trustee's Initial Challenge to the Kingate Funds' Claims.</u>

As the result of discussions between the Trustee and the Joint Liquidators that have been ongoing for years, the Trustee has been aware of the Funds' claims against the Bermuda Defendants since the summer of 2009.  (First Loigman Dec. ¶ 7.)  Notwithstanding the Trustee's long-standing knowledge of the Bermuda Action, the Trustee asserted in a letter sent to the Joint Liquidators' counsel on October 15, 2012 that the Bermuda Action was barred by the automatic stay under section 362 of the Bankruptcy Code.  (First Loigman Dec. ¶ 11.)  The letter demanded a response by 4:00 p.m. the following day.  (*Id.*)

The Kingate Funds provided a detailed response to the Trustee later that week that made clear that the Kingate Funds' claims against their own investment manager, seeking to recover fees that they (and no one else) paid to their manager, are properly asserted by the Kingate Funds, and do not belong to the BLMIS estate.  (*Id.*)  The Trustee never replied to the letter or sought any further discussion of the issue.  (First Loigman Dec. ¶ 11.)  Rather, on October 22, 2012, the Trustee initiated this adversary proceeding (the "<u>Injunction Action</u>") by filing a complaint and application for a preliminary injunction (the "<u>Application</u>").

In the complaint and Application, the Trustee sought to enjoin the Kingate Funds, acting through the Joint Liquidators, from pursuing any of the claims in the Bermuda Action.  The Trustee asserted that the Bermuda Action violated the automatic stay because, the Trustee maintained, it involved estate property and threatened this Court's administration of the BLMIS estate.  (Adv. Proc. No. 12-1920, Dkt. No. 3.)

Over the following year, the parties stipulated—in the interests of continuing settlement discussions—to extend the briefing schedule for the Injunction Action.  (*See, e.g.*, Adv. Proc.

No. 12-1920, Dkt. Nos. 6, 7, 8, 18, 21.)  On January 21, 2014, however, the Trustee refused to

extend the response deadline beyond February 21, 2014, unless the Kingate Funds would

stipulate "to preserve and set aside any damages or other funds that you recover in the Bermuda

Action and not make any distributions until all issues raised in the avoidance action are resolved

by a final and nonappealable order." (Loigman Dec. Ex. C.)  Unwilling to restrict their ability

properly to manage the Kingate Funds' estates, the Joint Liquidators would not, for the sake of

obtaining an extension of their time to respond to the injunction application which they regarded

as misconceived, agree to the requested limitation on distribution.  Given the Trustee's further

indication that he might amend the complaint in this action, the Joint Liquidators also promptly

requested that the Trustee advise them—by February 1, 2014—whether he intended to amend the

complaint.  (Loigman Dec. Ex. D.)

        Several weeks passed with no response from the Trustee.  On February 18, 2014,

accordingly, the Joint Liquidators filed their opposition to the initial injunction application.  On

the eve of that filing (February 17, 2014), the Trustee finally indicated that he would be

amending the complaint, although he gave no details regarding the nature of the anticipated

amendment, including whether it would be in place of, or in addition to, the broad injunctive

relief the Trustee already was pursuing.  (Loigman Dec. Ex. E.)

        F.      The Trustee's Current Challenge to the Kingate Funds' Claims.

        On March 25, 2014—the date the Trustee was required to reply to the opposition to the

Application—the Trustee filed a motion to amend his complaint, to which he attached an

amended complaint and a materially revised motion for a preliminary injunction.  In this latest

complaint and Motion, the Trustee has abandoned the relief sought in the Application and initial

complaint.  Perhaps recognizing that (a) there is no basis for enjoining the Joint Liquidators'

claims against the Bermuda Defendants, and (b) in any event, there is no benefit to the BLMIS

estate in enjoining such claims, since success by the Kingate Funds would simply result in the

Kingate Funds (already defendants in the Avoidance Action) obtaining assets from the Bermuda

Defendants, the Trustee no longer seeks to prevent the Kingate Funds from pursuing their claims

in the Bermuda Action.  Instead, the Trustee seeks an order preventing the Joint Liquidators from

distributing any proceeds the Kingate Funds may receive from the Bermuda Action before the

Avoidance Action is resolved.

On April 3, 2014—before the Trustee's motion to file an amended complaint was

approved—in an effort to avoid unnecessary litigation between court appointed fiduciaries,

counsel for the Joint Liquidators sent the Trustee a letter indicating that the Joint Liquidators

would undertake "not [to] use the net proceeds from the Bermuda Action, whether such proceeds

result from settlements with any of the Defendants therein or from a final adjudication by the

Bermuda Court (the 'Bermuda Action Proceeds'), to make any distributions from the liquidation

estates to investors in the Kingate Funds" until resolution of the Trustee's Avoidance Action (or

termination of the limitation with sufficient advance notice by the Joint Liquidators).  (Loigman

Dec. Ex. F.)  Over the ensuing weeks, the parties traded various drafts of a proposed stipulation

to resolve this action.  In each version of the stipulation, the Joint Liquidators have indicated that

they would agree *not to distribute* proceeds from the Bermuda Action prior to resolution of the

Trustee's Avoidance Action.  (Loigman Dec. ¶ 8.)

While the Joint Liquidators were willing to voluntarily agree to a broad restriction on any

future distribution of proceeds from the Bermuda Action, the Trustee has not accepted the Joint

Liquidators' proposals because the Joint Liquidators have sought to preserve their limited rights

to use proceeds of the Bermuda Action to (a) pay the expenses of the Bermuda Action itself (i.e.,

expenses required to obtain any such proceeds), and (b) pay the ongoing costs and expenses of

liquidation, which *do not include* distribution of assets to the Kingate Funds' investors. As

explained in a May 8, 2014 e-mail from the Joint Liquidators' counsel:

> The stipulation we provided includes a general agreement by the Joint Liquidators
> not to distribute the Bermuda Action Proceeds. Coupled with that restriction on
> distribution, we included two points that we had thought would be non-
> controversial. First, it makes sense that only the net proceeds of the Bermuda
> Action would be subject to the stipulation. Otherwise, the *more* the Joint
> Liquidators are required to spend to pursue the Bermuda Action, the *less* they
> have available for liquidation purposes even in the event they win the
> action. (Moreover, our version of the stipulation expressly provides that any
> awarded costs actually received by the Kingate Funds *will be included* in the
> Bermuda Action Proceeds.) Second, as you note, the Joint Liquidators are
> presently funding ongoing liquidation expenses out of the Kingate Funds'
> accounts, which expenses are subject to review by the BVI Court (and, with
> respect to the Bermuda Action, the Bermuda Court, as well). To maintain the
> status quo—a goal cited in your letter—the Joint Liquidators must have use of the
> Kingate Funds' assets, including any Bermuda Action Proceeds, to pay such
> expenses. In all events, if the Bermuda Action is successful, funds required to
> conduct the liquidation would hopefully be but a small fraction of the Bermuda
> Action Proceeds.

(Loigman Dec. Ex. G.) The Trustee asserts that the Kingate Funds may not use any Bermuda

Action proceeds to pay for liquidation costs, including the costs of pursuing the Bermuda Action

itself. As a result, the Joint Liquidators are now required to file this opposition to the Trustee's

motion.

## **ARGUMENT**

I.  **The Kingate Funds' Recoveries From Their Managers Are Not
    Property of the BLMIS Estate.**

At the heart of the Trustee's complaint and motion is the assertion that money the

Kingate Funds may obtain from the Bermuda Defendants—in the event the Joint Liquidators

succeed on their claims and successfully collect on those claims—would immediately belong to

the BLMIS estate, and not to the Kingate Funds. This central assumption, however, is incorrect.

If and when the Kingate Funds recover the substantial fees they paid to their managers, those

recoveries will be assets of the Kingate Funds' estates, and will be administered by the Joint

Liquidators under the supervision of the BVI and Bermuda Courts.  The injunction motion is an

attempt by the Trustee to leapfrog other claimants in the Kingate Funds' liquidations and should

be rejected.

> A.    Monies Obtained by the Kingate Funds Are Not Property of the BLMIS Estate
>        Unless and Until They Are Avoided and Recovered by the BLMIS Trustee.

There can be no dispute that, under governing Second Circuit law, any amounts

recovered by the Kingate Funds as a result of claims they have asserted against their managers

will *not* be property of the BLMIS estate, even though the Trustee has asserted avoidance claims

against the Kingate Funds and the Bermuda Defendants.  Rather, monies subject to an avoidance

action become estate property only if and when they are actually avoided and recovered by the

trustee.  *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992); *see also*

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137 (Bankr. S.D.N.Y.

2005) ("[P]roperty that has been fraudulently or preferentially transferred does not become

property of the estate until it has been recovered."); *Picard v. Merkin*, 440 B.R. 243, 272-73

(Bankr. S.D.N.Y. 2010).  The Trustee admits as much in asserting that the Kingate Funds "seek

to recover *potential* estate property" in the Bermuda Action.  (Trustee Mem. at 17) (emphasis

added.)

The Trustee repeatedly asserts that recoveries by the Kingate Funds would constitute

"customer property" of the BLMIS estate.  The Trustee's repeated invocation of the term

"customer property" is simply beside the point.[2]  The Trustee has no right to direct the use of

---

[2]    The Trustee's assertion that proceeds of the Bermuda Action are "customer property" is not
only beside the point, but it is also incorrect.  Property the Trustee seeks to recover in avoidance actions—
such as his action against the Kingate Funds—does not become "customer property" unless and until
transfer of the property is successfully avoided by the Trustee.  As Judge Lifland explained in *Picard v.
Stahl*, 443 B.R. 295, 311 n.19 (Bankr. S.D.N.Y. 2011), "transferred property becomes 'customer
property' only following a successful avoidance action."  *See also Picard v. Merkin*, 440 B.R. 243, 271
(Bankr. S.D.N.Y. 2010) (cited in *Stahl* for same proposition); *In re Bevill, Bresler, & Schulman, Inc.*, 83

money that is indisputably not property of the BLMIS estate.  Indeed, the Trustee does not

identify any authority suggesting that he can direct a third-party's use of assets that do not belong

to the estate.

B.    The Tracing Analyses Submitted by the Kingate Funds Demonstrate that
the Trustee Is Pursuing Funds that Never Even Passed Through BLMIS.

In opposing the Trustee's initial injunction application, in which the Trustee sought to

enjoin the Joint Liquidators even from pursuing claims against the Bermuda Defendants, the

Joint Liquidators submitted several tracing analyses—including analyses completed by both the

Joint Liquidators' advisors and by third-parties—demonstrating that the substantial majority of

the transfers to the Bermuda Defendants that the Trustee is seeking to avoid involve funds that

never passed through the BLMIS estate.  (First Loigman Dec. ¶ 9 and Exs. J & K.)  The Trustee

has never provided a response to the multiple tracing analyses.

The Trustee now contends that these tracing analyses are judicial admissions that some of

the transfers to the Bermuda Defendants constituted customer property.  The analyses are no

such thing; they do not characterize the nature of fees paid by the Kingate Funds to their

managers.  Rather, the tracing analyses demonstrate that the Trustee is seeking to recover, as

purported subsequent transfers, amounts that never came from BLMIS, and thus which cannot

possibly constitute avoidable transfers.[3]  This stands in stark contrast to the Kingate Funds'

claims against their own managers.  In the Bermuda Action, the Kingate Funds are seeking to

recover amounts that they *directly paid* to their managers.

---

B.R. 880, 895 (D.N.J. 1988) (explaining that the "central purpose" of SIPA §78fff-2(c)(3) "is to permit
the trustee to "recover any property transferred by the debtor which, except for such transfer, *would have
been customer property* " as defined by SIPA") (emphasis in original).

    [3]    The analyses show that *some* fraction of the money paid by the Kingate Funds to their
managers was withdrawn from the Kingate Funds' accounts at BLMIS.  Given that the Kingate Funds are
net losers, all of that money (and much more) was initially deposited by the Kingate Funds with BLMIS.

In all events, the Trustee's assertion that the tracing analyses constitute judicial admissions is a red herring.[4]  The fact that the Kingate Funds withdrew a portion of their investments from BLMIS, and then used some of those withdrawals to pay their managers, does not provide the Trustee with a basis for interfering with the Joint Liquidators' management of the Kingate Funds' assets, including assets that the Kingate Funds have not yet recovered into their estates.

C.    The Kingate Funds' Action Against Their Managers in Bermuda
Is Not the Pursuit of Their BLMIS Customer Claims.

The Trustee asserts that the Kingate Funds have submitted to this Court's exclusive jurisdiction to "adjudicate their respective customer claims."  (Trustee Mem. at 4.)  It is true, of course, that the Kingate Funds have submitted customer claims with respect to the $800 million in net losses they suffered as the result of Madoff's fraud.  The Trustee's next assertion that in the Bermuda Action, the Kingate Funds are "effectively pursuing a recovery on their customer claims in a foreign jurisdiction under foreign law" (*id*.) is, however, a gross misstatement.  This central assertion in the Trustee's motion lacks foundation.

In the Bermuda Action, the Joint Liquidators are pursuing recovery of the substantial management fees that the Kingate Funds overpaid to their managers.  Those claims are entirely distinct from, and in addition to, the massive losses the Kingate Funds suffered at the hands of Bernard Madoff.  Whether or not the Joint Liquidators recover from the former managers, the

---

[4]  To the extent it even matters, the tracing analyses submitted by the Kingate Funds are not judicial admissions.  First, some of the analyses were created by third parties not before the Court on this Motion.  Second, the tracing analyses were submitted as part of a legal argument, and were expressly identified as "subject to revision."  *See, e.g.*, *Stichting Ter Behartiging Van de Bel. v. Schreiber*, 407 F. 3d 34, 45 (2d Cir. 2005) (finding that statement made in Rule 56.1 statement did not constitute a judicial admission); *see also MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) ("Because of their binding consequences, judicial admissions generally arise only from deliberate voluntarily waivers that expressly concede . . . an alleged fact . . . .") (quoting *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975)).

Kingate Funds lost—as the Trustee concedes—approximately $800 million by investing in BLMIS. That $800 million net investment loss constitutes a valid claim against the BLMIS estate regardless of whether the Joint Liquidators separately recover the inflated management fees paid to Kingate Management.

In simple terms, the Kingate Funds lost $800 million in BLMIS. The Joint Liquidators are pursuing recovery of those losses in this Court. The Funds were injured several hundred million dollars more by paying inflated management fees, and the Joint Liquidators are pursuing recovery of those losses in Bermuda, where the manager was located. The Trustee makes no attempt to explain his assertion that the Bermuda Action is effectively pursuit of the Kingate Funds' customer claims, nor could he possibly do so. It is not.

## II.    **This Action Is Not Ripe for Adjudication.**

"In order to be justiciable, plaintiffs' claims must be ripe for federal review." *Jones v. City Sch. Dist. of New York*, No. 98 CIV. 3479(HB), 1998 WL 526437, at *2 (S.D.N.Y. Aug. 20, 1998) (citation omitted); *see also Consol. Edison Co. v. Herrington*, 752 F.Supp. 1082 (D.D.C. 1990). "'An issue is ripe for judicial resolution only if it presents a real, substantial controversy, not a mere hypothetical question. Pursuant to ripeness doctrine, we must avoid entangling ourselves in abstract disagreements and engaging in premature adjudication.'" *United States v. Broadcast Music, Inc.*, 275 F.3d 168, 178 (2d Cir. 2001) (quoting *Longway v. Jefferson Cnty. Bd. of Supervisors*, 24 F.3d 397, 400 (2d Cir. 1994)). "The ripeness doctrine 'cautions courts against adjudicating contingent future events that may not occur as anticipated, or indeed may not occur at all. Two additional factors, the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration, also inform any analysis of ripeness.'" *Id*. (quoting *Volvo N. Am. Corp. v. Men's Int'l Prof. Tennis Council*, 857 F.2d 55, 63 (2d Cir. 1988)).

14

This action is not ripe for adjudication for at least two independent reasons.  First, the Trustee seeks to enjoin dissipation of assets that the Kingate Funds do not have yet, and may never obtain.  Second, the court-appointed Joint Liquidators of the Kingate Funds already have agreed to provide ample protection against the dissipation of such assets prior to resolution of the Trustee's avoidance claims.  Accordingly, the Court should reject the Trustee's request for an injunction as premature.

A.    The Kingate Funds Have Not Yet Recovered from the Bermuda Defendants.

While the Joint Liquidators are faithfully pursuing claims asserted in the Bermuda Action, the case is now in the discovery stage, and a trial on the merits is nearly two years away. (Loigman Dec. ¶ 9.)  Indeed, the relief sought by the Trustee would become relevant only *if* the Kingate Funds recover from Bermuda Defendants, *if* the Trustee obtains an avoidance judgment against the Kingate Funds, *if* the Kingate Funds fail to satisfy such a judgment, and *if* the Joint Liquidators threatened to distribute the Kingate Funds' assets prior to such a hypothetical judgment and failure.  At this point in time, there is no basis for concluding that any (let alone each) element in this chain of events will occur.

Where, as here, claims depend on "contingent future events" such as the outcome in another proceeding, courts hold that they are not ripe for adjudication.  *See, e.g.*, *Broadcast Music*, 275 F.2d at 178-79 (finding that claim was not ripe because the potential conduct had not yet occurred and the party's complained-of injury was speculative); *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 538 (1st Cir. 1995) (finding matter not ripe where "[t]he challenge . . . depends on a lengthy chain of speculation as to what the future has in store.").  Claims are similarly unripe where the requested relief hinges on liability that has not yet been determined.  *See, e.g.*, *Daines v. Alcatel, S.A.*, 105 F.Supp.2d 1153, 1155-56 (E.D. Wa. 2000) (holding that claim seeking an advance due only upon determination that plaintiff was liable for

taxes was not ripe where the IRS had not determined liability or taken steps to determine such liability); *Painewebber, Inc. v. Northern Trust Co.*, No. 87 C 2971, 1987 WL 13438, at *1-3 (N.D. Ill., June 30, 1987) (finding matter not ripe for review where defendant's liability depended on outcome of an arbitration proceeding, noting "[a] case or controversy will not be found where there is contingent liability.").[5]

Even absent other infirmities, the Trustee's claim to enjoin distribution of assets that the Kingate Funds do not have in their possession should be rejected as premature.

B.    There Is No Basis for Suggesting that the Kingate Funds' Court-Appointed Liquidators Would Distribute Assets Prior to Resolution of the Avoidance Action.

As set forth above, the Joint Liquidators repeatedly have made it clear to the Trustee that they will *voluntarily agree* to a stipulation, to be so ordered by this Court, pursuant to which they will undertake not to distribute proceeds from the Bermuda Action—including funds obtained by way of settlement or judgment—until the Avoidance Action has been resolved. The Joint Liquidators' willingness to agree to such a restriction is hardly surprising. As court-appointed officials charged with the proper administration of the Kingate Funds' estates, the Joint Liquidators have no intention of distributing assets to one set of claimants at the risk of depriving other potential claimants of their fair share of the Kingate Funds' estate assets.

The Joint Liquidators' agreement not to distribute proceeds of the Bermuda Action, if accepted by the Trustee, would moot the relief being sought in this motion. The agreement not

---

[5]    The Trustee cannot establish hardship sufficient to justify immediate review, notwithstanding the lack of ripeness. "To overcome the court's interest in postponing review, a plaintiff must show that delay would cause hardship. The hardship must be 'immediate, direct and significant.'" *Herrington*, 752 F. Supp. at 1086. The Motion does not establish any "immediate, direct, [or] significant" hardship. Instead, the Motion hypothesizes a series of contingent events that must occur before there is *any* threat of harm to the BLMIS estate, let alone an "imminent, direct, or significant" one. *See State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 480 (D.C. Cir. 1986) (stating that "hardship will be found wanting if there are too many 'ifs' in the asserted causal chain linking the [ ] action to the alleged hardship . . . .") (citations omitted).

to distribute proceeds would ensure that assets of the Kingate Funds are not dissipated to the detriment of the Trustee even though the Trustee has yet to establish a claim against the Kingate Funds (and has yet to assert a claim in their liquidation proceedings).

The Trustee has refused to accept the Joint Liquidators' proposal because it expressly reserves their right to use proceeds from the Bermuda Action to (a) pay the cost of pursuing the Bermuda Action, and (b) pay for ongoing liquidation expenses, such as the costs of the Joint Liquidators' advisors. These are standard, noncontroversial expenses that rank above distribution of estate assets to claimants. The Trustee's refusal to agree to these provisions demonstrates that it is the Trustee's own extreme litigation positions that have prevented the adoption of voluntary restrictions on the distribution of Bermuda Action proceeds.[6]

III.    **There Is No Basis for an Injunction Preventing the Kingate Funds from Using Their Own Assets**

    A.    <u>The Trustee Improperly Invokes Section 105(a) as an Attempt to Circumvent the Requirements of Rule 65.</u>

        1.    <u>There Is No Basis for Relief Under Section 105(a)</u>

Section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment *that is necessary or appropriate to carry out the provisions of this title*." 11 U.S.C. § 105(a) (emphasis added). The Second Circuit has explained, "The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (emphasis in original). Section 105(a) "does not 'authorize the bankruptcy courts to

---

[6]    Moreover, the Trustee's litigation position, if accepted, implicates a direct interference in the Joint Liquidators' proper administration of the Kingate Funds' estates. The Joint Liquidators, like the Trustee, have the right to expend assets in the estates' possession to administer those estates, including in the prosecution of court-approved claims aimed at increasing the estates' assets for distribution to all claimants.

create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *Id*. (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

Conceding, as he must, that "'an exercise of section 105 power must be tied to another Bankruptcy Code section and not merely tied to a general bankruptcy concept or objective,'" (Trustee Mem. at 16 (quoting *In re Teligent, Inc.*, 417 B.R. at 213), the Trustee claims that the relief sought would "serve § 362's purpose." (*Id*. at 17.) That is incorrect. Section 362(a) provides for an automatic stay of actions against the debtor and "property of the estate." As explained above, if the Kingate Funds are successful in obtaining proceeds as a result of the Bermuda Action, those proceeds—like other assets in the possession of the Kingate Funds' estates—will *not* be property of the BLMIS estate. And, even if estate property were at issue here (which it is not), Section 362's "purposes" would not be served by restraining the Joint Liquidators' rights and obligations to direct the application of the Kingate Funds' assets.[7]

The Trustee attempts to paint § 105 as a broad provision authorizing injunctive relief in a wide array of circumstances. But § 105 is not as malleable as the Trustee suggests, and it cannot be used as a justification for injunctive relief independent of other sections in the Bankruptcy Code. The cases cited by the Trustee do not suggest otherwise, and none of them provides justification for a § 105 injunction in the circumstances of this case. For example, while the Second Circuit in *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003), noted in passing

---

[7]    The Trustee asserts, without explanation, that a § 105 injunction would also "protect the estate's rights conferred by §§ 502, 544, 547, 548, 550, and 551 of the Bankruptcy Code and SIPA §§ 78eee(b)(2)(A)(i), 78fff-4(e), and 78fff(g)." (Trustee Mem. at 17.) The relief sought, however, has no effect on the Trustee's pending avoidance claims against the Kingate Funds or the subsequent transferees. Regardless of whether the Kingate Funds recover in the Bermuda Action and, at some point, elect to distribute those assets to their investors and creditors in their insolvency proceedings, the Trustee will retain the same power to avoid and recover transfers.

dicta that § 105 "grants broader authority" than § 362,[8] it made no ruling with respect to § 105. *Id.* at 288.  Rather, the Court held that § 362 applied to a debtor's wholly owned subsidiary because of the identity of interest between the two, but determined that § 362 does not stay appeals by a debtor's co-defendants, even if adjudication of their appeals could adversely affect the debtor.[9]  *Id.*

2.    The Trustee Cannot Satisfy the Section 105(a) Standard in any Event

According to the Trustee, relief is available under § 105(a) if he can establish that the conduct he seeks to enjoin (a) "threatens to defeat or impair this Court's exclusive jurisdiction over the Avoidance Action and the Debtors' SIPA liquidation," or (b) "will have an immediate adverse economic consequence" for the BLMIS estate.  (Trustee Mem. at 17-18.)  The Trustee cannot satisfy the requirements as he describes them.

---

[8]    The Second Circuit's acknowledgment that § 105 is broader than § 362 cites *In re Baldwin-United*, 765 F.2d 343, 348 (2d Cir. 1985).  *Baldwin-United*, in turn, merely recites the text of § 105 as authorizing "any order, process or judgment that is necessary or appropriate to carry out" the Bankruptcy Code, and it did so in the context of deferring to the Bankruptcy Court's efforts to achieve a reorganization.

[9]    The Trustee's other cases further establish that § 105(a) can be used to issue an injunction only when tethered to another provision of the Bankruptcy Code.  *See, e.g.*, *The Lautenberg Found. v. Picard* , Nos. 11-5421-bk (L), 11-5428-bk (CON), 2013 WL 616269, at *1-2 (2d Cir. Feb. 20, 2013) (affirming § 105(a) injunction where bankruptcy court had found that plaintiffs' claims for harms general to all BLMIS creditors were barred by the automatic stay imposed by § 362(a)); *In re AP Indus., Inc.*, 117 B.R. 789, 798-802 (Bankr. S.D.N.Y. 1990) (finding that claims asserted against, *inter alia*, the debtors' directors and officers were estate property under § 362(a), concluding that such claims were barred by the automatic stay, and issuing an injunction under § 105(a) to preserve the debtors' estate); *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 984 (1st Cir. 1995) (affirming on *res judicata* and collateral estoppel grounds the bankruptcy court's decision to confirm plan containing a permanent injunction that functioned as a discharge of non-debtor entities and noting that the bankruptcy court had power under § 105(a) to confirm such a plan); *Lyondell Chem. Co. v. Centerpoint Energy Gas Servs., Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 587-94 (Bankr. S.D.N.Y. 2009) (issuing a § 105(a) injunction and recognizing the debtors' attempt to "invoke rights under the Bankruptcy Code, section 105(a) and (to a lesser extent) section 362, to protect *existing* property of the estate, and to protect the estate's ability to reorganize." (emphasis added)); *In re Wingspread Corp.*, 92 B.R. 87, 92-94 (Bankr. S.D.N.Y. 1988) (applying § 105(a) to enjoin action brought to determine ownership of certain claims because the action affected the court's ability to administer the estate by potentially delaying distribution of assets to creditors and possibly requiring the debtor to indemnify the defendant).

First, whether the Joint Liquidators distribute proceeds from the Bermuda Action has no effect on this Court's jurisdiction over the Avoidance Action or the BLMIS liquidation. The Avoidance Action is proceeding, and will continue to proceed, in this Court. The Joint Liquidators intend to establish—in this Court—that the Trustee's avoidance claims are without merit, and that recovery against the Kingate Funds is therefore unfounded. Adjudication of those claims is unaffected by the continuing administration of the Kingate Funds' estates under the supervision of the BVI and Bermuda courts. If the Joint Liquidators succeed on their claims against the Bermuda Defendants, if they recover from those defendants the management fees that the Kingate Funds paid to them, and if the Joint Liquidators decide to distribute a portion of those proceeds to claimants against the Kingate Funds' estates, the Avoidance Action will proceed undisturbed in this Court and will be unaffected by these events in Bermuda and BVI.

Moreover, as noted, to resolve this motion, the Joint Liquidators have offered to stipulate, in this Court, that they will not distribute proceeds of the Bermuda Action until the Avoidance Action is resolved. (Once again, the Trustee's objection to the Joint Liquidators' offer stems from his unwillingness to agree that Bermuda Action proceeds may be used to pay liquidation expenses, including the cost of pursuing the Bermuda Action itself.) The Trustee's continued assertion that the risk of distributing Bermuda Action proceeds "threatens" the Avoidance Action in this Court is, accordingly, without basis.

The Trustee's assertion that distribution of the Bermuda Action proceeds threatens this Court's exclusive jurisdiction over the BLMIS liquidation is also without basis. Although this Court has jurisdiction over property of the BLMIS estate, Bermuda Action proceeds, if and when recovered by the Joint Liquidators, are not BLMIS estate property unless and until they are avoided and recovered by the Trustee. *See* 11 U.S.C. § 541(a)(3). Cases cited by the Trustee

20

concerning the Court's jurisdiction over "third-party non-debtor claims that directly affect the *res* of the bankruptcy estate" (Trustee Mem. at 19) are therefore inapposite. In *Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*, 676 F.3d 45, 53-54 (2d Cir. 2012), for example, the Second Circuit held that the bankruptcy court had jurisdiction over suits against third-party, non-debtor Pfizer because the proceeds at issue—insurance policies and an insurance trust—plainly were property of the estate. In that case, Pfizer, *as the purchaser (and successor to liability) of the debtor*, was closely related to the debtor and could be entitled to recover defense costs from estate property. *Id*. Similarly, *In re Chiles Power Supply Co., Inc.*, 264 B.R. 533, 538-39 (Bankr. W.D. Mo. 2001), and *In re Probulk Inc.*, 407 B.R. 56, 59-60 (Bankr. S.D.N.Y. 2009), both directly and expressly implicated property of the estate—and are thus entirely distinct from this case.[10]

Second, the Trustee cannot show that the potential distribution of Bermuda Action proceeds will have "an immediate adverse economic consequence" on the BLMIS estate. As an initial matter, there is nothing "immediate" about the threatened harm. The Kingate Funds are continuing to pursue claims against the Bermuda Defendants, as they have been doing for several years. Trial on the matter will not take place in this calendar year or the next. The Trustee is attempting to enjoin distribution of money that the Kingate Funds do not yet have, and for which there is no expectation of a recovery in the near-term.

---

[10]    The other cases cited by the Trustee, i.e., *Fox v. Picard*, 848 F.Supp.2d 469 (S.D.N.Y. 2012), *Picard v. Stahl*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011), *Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 354 B.R. 45 (Bankr. S.D.N.Y. 2006), and *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998), are similarly inapposite. As set forth more fully just below, *Stahl* and *Fox* threatened the court's jurisdiction because each involved claims that, because they attempted to recover for harms common to all BLMIS creditors, belonged to the estate. *Fisher* likewise involved claims that were property of the estate. And in *Calpine*, the bankruptcy court enjoined a third party action because the debtor could be liable to indemnify the defendant—an outcome that would impact bankruptcy court's ability to administer the debtor's estate by siphoning away assets.

More fundamentally, even if the Kingate Funds obtain proceeds from the Bermuda Action, distribution of those proceeds would not have an "adverse economic consequence" on the BLMIS estate. The Trustee first has to obtain a judgment against the Kingate Funds. And, as a matter of law, the Trustee has the best protection possible for any such potential judgment. The Kingate Funds' most significant assets are claims totaling approximately $800 million against the BLMIS estate (an amount conceded by the Trustee). If the Trustee succeeds on his avoidance claims against the Kingate Funds, he will hold hostage distribution on the Kingate Funds' claims against the BLMIS estate until the Kingate Funds satisfy any judgment against them, unless this Court orders otherwise. 11 U.S.C. § 502(d). In other words, the Trustee's withholding of distribution on the Kingate Funds' massive claims against the BLMIS estate, enabled by the Trustee's assertion of avoidance claims against the Kingate Funds, already provides the Trustee more than sufficient protection for *potential* estate property.

3.     This Court Has Not Issued Similar Injunctions Under Section 105(a).

Pointing to *Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010) and *Picard v. Stahl*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011), the Trustee contends that this Court has issued § 105 injunctions under similar circumstances. The Trustee's attempt to rely on *Fox* and *Stahl*, which are entirely inapposite, demonstrates his inability to point to injunctive relief in a case similar to this one.

In *Stahl*, this Court addressed various actions asserting claims against members of Bernard Madoff's family, seeking relief such as the return of compensation received from BLMIS. *Stahl*, 443 B.R. at 305-08. Unlike the Kingate Funds' claims against their managers— which the Kingate Funds, and the Kingate Funds alone, have the right to pursue—the claims asserted in *Stahl* were common to *all investors* in BLMIS. As explained by this Court, plaintiffs' claims were subject to the automatic stay because the plaintiffs "[we]re not seeking to redress a

22

particularized injury or alleging harm caused directly to them by the Madoff Defendants.  Rather,

the Third Party Actions assert violations of duties owed derivatively to all customers and

creditors by virtue of the Madoff Defendants' positions generally at BLMIS, the breach of which

resulted in losses to all Madoff victims."  *See id*. at 312.  Because the claims were common to all

BLMIS investors, the claims belonged to the BLMIS estate itself, and by "usurping causes of

action belonging to the estate," the *Stahl* plaintiffs violated the § 362 stay.  *Id*. at 311.  The Court

went on to hold that the actions could, if necessary, be stayed under § 105, because § 362

typically applies to claims against the debtor itself.  *Id*. at 315-19.

The *Fox* case is similar.  In *Fox*, plaintiffs asserted, on behalf of themselves and classes

of all similarly situated BLMIS investors, claims against Jeffry Picower and his associates for

participating in Madoff's fraudulent scheme.  *Fox*, 429 B.R. at 429-30.  Once again, the asserted

claims belonged to the BLMIS estate because they sought "to redress the depletion of the

BLMIS customer property fund, a harm that derivatively injures all customer claimants in the

BLMIS liquidation."  *Id*. at 431.  Once again, plaintiffs "usurped" the claims from the BLMIS

estate.  *Id*. at 430.  And, once again, this Court held that the action violated the § 362 stay, and

issued an injunction under § 105 to the extent that § 362 did not itself bar the action.[11]  *Id*. at

432-37.

The Kingate Funds, unlike the plaintiffs in *Stahl* and *Fox*, have not asserted claims that

belong to the BLMIS estate.  Other investors do not have any right to seek the return of

---

[11]    The Trustee points out that both *Fox* and *Stahl* rely upon the Seventh Circuit's decision in
*Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1988).  (Trustee Mem. at 24.)  In *Fisher*, a group of 244
investors in a bankrupt commodities business—out of 450 "similarly situated investors"—sued the
accomplices of the principal fraudster, who had disappeared when the fraud was disclosed.  *Fisher*, 155
F.3d at 878.  The court explained that the hundreds of plaintiffs stood "in exactly the same position as the
rest of the aggrieved investors," and that they were seeking redress for "identical" harms suffered by all
investors in the company.  *Id*. at 881.  As a result, their claims were "so closely related" to the estate that
they had to "wait their turn behind the trustee, who has the responsibility to recover assets for the estate
on behalf of the creditors as a whole."  *Id*.

management fees from Kingate Management.  As a result, unlike the *Stahl* and *Fox* plaintiffs, the

Kingate Funds have not "usurped" claims that are property of the BLMIS estate, and § 362 itself,

as the Trustee apparently concedes, cannot bar the Kingate Funds from asserting their claims.

Unlike *Stahl* and *Fox*, accordingly, the Trustee's motion for a preliminary injunction in this

action is not so tied to § 362 as to justify relief under § 105.[12]

B.    There Is No Basis for Injunctive Relief Under Rule 65.

For the reasons noted in the previous section, Rule 65 (which is effective in this Court

through Rule 7065 of the Federal Rules of Bankruptcy Procedure)—rather than § 105(a)—

provides the governing standard for injunctive relief on this motion.  Rule 65 requires the Trustee

to demonstrate:

> "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2)
> sufficiently serious questions going to the merits to make them a fair ground for
> litigation and a balance of hardships tipping decidedly toward the party requesting
> the preliminary relief . . . .'"

*Picard v. Schneiderman*, 491 B.R. 27, 39 (S.D.N.Y. 2013) (citing *Citigroup Global Markets, Inc.*

*v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).  The Trustee

has not, and cannot, satisfy any of the requirements under Rule 65 for preliminary relief.

1.    There Is No Threat of Irreparable Harm.

As set forth above, the Trustee cannot credibly assert a threat of irreparable harm for

several reasons.  First, there is no reason to believe that any recovery by the Joint Liquidators for

the Kingate Funds in the Bermuda Action is imminent.  Accordingly, the concern that the Joint

---

[12]    The Trustee's reliance on *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011), is similarly misplaced.  *Maxam* involved a suit *against the Trustee* in which the fund sought "a declaration that Maxam Limited is not liable to the Trustee . . . ." *Maxam*, 460 B.R. at 113, 114-115.  The Kingate Funds have not, of course, sued the Trustee in a foreign jurisdiction asserting that they are not liable to the Trustee on his avoidance claims.

Liquidators will distribute such proceeds from the Kingate Funds' estates is a distant one, at most.

Second, the Joint Liquidators have made clear their willingness to agree *not to distribute* proceeds from the Bermuda Action until the Avoidance Action is resolved. The only funds in dispute, accordingly, are (a) costs incurred in obtaining the Bermuda Action proceeds,[13] and (b) the ongoing expenses of liquidation. The Trustee, for some reason, refuses to acknowledge the Joint Liquidators' right to use assets in the possession of the Kingate Funds for the administration of those estates; that hardly creates a threat of irreparable harm to the BLMIS estate.

Third, the Trustee is already fully protected by a legal (indeed statutory) remedy if he were to succeed on his avoidance claims against the Kingate Funds, and if (which they have offered to undertake *not* to do) the Joint Liquidators were to distribute the Bermuda Action proceeds to claimants in the Kingate Funds' liquidations to the exclusion of BLMIS. Pursuant to § 502(d), the Trustee will not make distributions to the Kingate Funds on their $800 million in claims against the BLMIS estate unless the Kingate Funds satisfy any avoidance judgments against them that are ultimately obtained by the Trustee. The Trustee thus already has more than adequate protection as a result of the Kingate Funds' most significant assets being in this Court's control.

2.    <u>The Trustee Is Not Likely to Prevail in the Avoidance Action.</u>

Because the Trustee is unable to establish any threat of irreparable harm, there is no need to go any further—preliminary injunctive relief under Rule 65 must be denied. Assuming

---

[13]    The Joint Liquidators have even agreed that, if they recover and collect any portion of the costs of pursuing the Bermuda Action from the defendants there, they will add that to the amounts that will not be distributed prior to resolution of the Avoidance Action. (Loigman Dec. Ex. G.)

*arguendo*, however, the Trustee could establish such a threat, relief under Rule 65 would be

unwarranted.  The Trustee cannot show that he is likely to prevail on his claims against the

Kingate Funds in the Avoidance Action.  For example:

- With respect to the preference, constructive fraudulent transfer, and state law fraudulent transfer claims, Judge Rakoff has held that the safe harbors of 11 U.S.C. § 546(e) apply, and that such claims will be barred unless the Trustee can establish that defendants had actual knowledge that Madoff was not trading securities.  *Picard v. Cohmad*, Civ. No. 12-0115, 2013 WL 1609154, at *3-4 (S.D.N.Y. Apr. 15, 2013).  The Trustee will not be able to demonstrate that the Kingate Funds, which lost $800 million on their investment in BLMIS, had such actual knowledge.

- With respect to the actual fraudulent transfer claims under the Bankruptcy Code, to defeat the Kingate Funds' good faith defense, the Trustee has the burden of establishing that the Kingate Funds were "willfully blind" to Madoff's fraud. *SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Securities)*, No. 12-0115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).  Once again, the Trustee will not be able to establish that the Kingate Funds threw away $800 million as a result of willfully blinding themselves to Madoff's fraud.

- The Trustee's claims for equitable subordination and equitable disallowance (a claim that does not exist) will not succeed because the Trustee will not be able to establish that the Kingate Funds, outsider victims of the BLMIS fraud, engaged in egregious misconduct that harmed all of the other claimants in the BLMIS liquidation.  *See Off. Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 364 (Bankr. S.D.N.Y. 2002) ("When a non-insider or non-fiduciary is involved, courts have required that a claimant's conduct be egregious and severely unfair to other creditors before its claim will be equitably subordinated.  The conduct required has been described as 'substantial misconduct tantamount to fraud, misrepresentation, overreaching or spoilation.'") (internal citation omitted); *In re SI Restructuring, Inc.*, 532 F.3d 355, 357, 361 (5th Cir. 2008) (recognizing that "in the absence of actual harm, equitable subordination is inappropriate" and reversing bankruptcy court order equitably subordinating claimant where the bankruptcy trustee "did not demonstrate . . . harm [to] either the debtor or the general creditors . . . ."); *In re Kalisch*, 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008) ("In all cases concerning equitable subordination actual harm to creditors is a necessary component to application of the doctrine.").

Again, given the Trustee's inability to establish a threat of irreparable harm, there is no

need for a mini-trial on the Avoidance Action in the context of this Motion.  But to the extent

necessary, the Trustee cannot show a likelihood of success in that action.

26

3.    The Balance of Harms Does Not Tip "Decidedly" Toward the Trustee.

For the reasons set forth in the preceding section, the Trustee's claims against the Kingate

Funds in the Avoidance Action suffer significant infirmities and are unlikely to succeed.  To the

extent there is any litigatable issue, the balance of harms on this motion does not tip "decidedly"

in the Trustee's favor.  To the contrary, as explained above, the Trustee faces essentially no harm

if a preliminary injunction is not granted.  *See supra*, sections III.A.2 and III.B.1 (pages 19-22,

24-25).[14]

C.    The Trustee's Decision to Pursue Claims Against the Bermuda Defendants Does
Not Give His Claims Priority Over the Kingate Funds' Claims.

At the outset of his submission, the Trustee contends that "the Trustee and the Joint

Liquidators are pursuing recovery of the same monies."  (Trustee Mem. at 3.)  The point is both

factually incorrect and legally irrelevant.

First, as the tracing analyses—which the Trustee repeatedly embraces in his

submission—demonstrate, most of the management fees paid from the Kingate Funds to Kingate

Management never passed through BLMIS.  As a result, in large part, the Kingate Funds and

BLMIS are not pursuing recovery of the same monies.

Second, to the extent the Trustee chose to sue the same defendants against which the

Kingate Funds already had asserted claims, there is no rule of law that provides the Trustee with

priority in recovery from those defendants.  Where individual creditors have standing to assert

their own claims—as the Kingate Funds no doubt have with respect to their managers—a

---

[14]    Some courts also consider issues of societal interest when adjudicating motions for
preliminary injunctions.  *See, e.g.*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 26-31 (2008).
By this motion, the Trustee is asking this Court to dictate to the Joint Liquidators how to administer assets
that the Kingate Funds may obtain for the benefit of their investors and creditors in their insolvency
proceedings in BVI and Bermuda.  This, in turn, implicates issues of comity that are frequently cited as a
basis for deferring to a foreign court.  *See, e.g.*, *In re Maxwell Commnc'ns Corp. plc by Homan*, 93 F.3d
1036, 1048-1049 (2d Cir. 1996); *see also Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246
(2d Cir. 1999).

27

bankruptcy trustee has no greater right to pursue claims against third-parties than individual

creditors do.  In *In re Reliance Acceptance Group, Inc.*, 235 B.R. 548, 555-56 (D. Del. 1999), for

example, addressing claims by both the debtor and its creditors against the same defendant, the

court found that the risk that a common defendant might have insufficient funds did not justify

elevating the debtor's claims over those of a creditor with its own direct claims.  235 B.R. at

561-62.  Similarly, in *In re Phar-Mor, Inc. Secs. Litig.*, 164 B.R. 903, 907-08 (W.D. Pa. 1994),

the court declined to enjoin independent claims pursuant to Section 105(a), explaining that "the

Debtor has no greater rights to assert its claims against [defendant] than the [ ] Plaintiffs

precisely because the [ ] Plaintiffs are not attempting to assert claims belonging to the Debtor."

Simply put, the Trustee's implicit contention that he has a superior right to recover from

the Bermuda Defendants, by virtue of his role as Trustee for the BLMIS estate, is false.

D.  A Pre-Judgment Freezing Order Here Would Be Inconsistent with
the Supreme Court's *Grupo Mexicano* Decision.

In *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333

(1999), the Supreme Court squarely held that a plaintiff asserting a claim for money damages

may not obtain a preliminary injunction preventing defendants from disposing of their assets

pending adjudication of plaintiff's claims.  Referring to such relief as a "nuclear weapon," *id.* at

332, the Court explained that permitting such preliminary injunctive relief, even in cases seeking

equitable remedies, would permit a plaintiff, "on a mere statement of belief that the defendant

can easily make away with or transport his money or goods, [to] impose an injunction on him,

indefinite in duration, disabling him to use so much of his funds or property as the court deems

necessary for security or compliance with its possible decree."  *Id.* at 327 (quoting *De Beers*

*Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 222-223 (1945)).  The Court continued, "No

relief of this character has been thought justified in the long history of equity jurisprudence." *Id.* (quoting *De Beers*, 325 U.S. at 222-223).

While the Trustee does not acknowledge *Grupo Mexicano* in his moving papers, the rule has been applied widely by various courts, including bankruptcy courts. *See, e.g.*, *In re Teknek, Inc.*, 343 B.R. 850, 868-69  (Bankr. N.D. Ill. 2006) (refusing to freeze assets held by defendant in fraudulent conveyance action prior to plaintiff obtaining a judgment); *In re Sabratek Corp.*, 257 B.R. 732, 738-39 (Bankr. D. Del. 2000) (refusing to require defendant in potential fraudulent conveyance action to set aside proceeds that would be at issue in the action, noting that prejudgment sequestration or attachment "is an extraordinary remedy and should be granted sparingly"); *In re Seatco, Inc.*, 259 B.R. 279, 285-86 (Bankr. N.D. Tex. 2001) (refusing plaintiff's request to compel disclosure of non-debtor defendant's assets, holding that the court could not grant "prejudgment relief" to "assist [plaintiff] in its efforts to collect judgments it does not yet have"); *see also In re Salem Baptist Church of Jenkintown*, 455 B.R. 857, 864-65 (Bankr. E.D. Pa. 2011) (denying debtor's request for injunction barring defendant from expending proceeds of insurance policy because debtor had yet to obtain a judgment against the defendant).[15]

---

[15]    The Trustee's failure to acknowledge *Grupo Mexicano* is especially surprising given his argument, in footnote 74 of his brief, that the pre-judgment freezing order he seeks falls within this Court's equity jurisdiction. (Trustee Mem. at 25, fn. 74).  In any event, the case law the Trustee cites is factually inapposite and fails to support such extraordinary relief in this case.  *See Motorola Credit Corp. v. Uzan*, 202 F.Supp.2d 239, 241, 250 (S.D.N.Y. 2002) (plaintiffs had an "acknowledged equitable interest" in the asset to be preserved and demonstrated their likelihood of success on RICO claim, which supported injunctive relief); *Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*, No. 00 Civ. 8051 (JSM), 2000 WL 1610790 (S.D.N.Y. Oct. 27, 2000) (plaintiffs were beneficiaries of statutory trust created under the Perishable Agriculture Commodities Act); *Republic of the Philippines v. Marcos*, 806 F.2d 344, 355-56 (2d Cir. 1986) (sovereign plaintiff's constructive trust and equitable lien claims against former president supported injunctive relief).  The Trustee's contention that a "freezing injunction is particularly appropriate to preserve assets that are the subject of fraudulent transfer claims" is also incorrect, and is grounded on cases from other circuits involving facts wholly absent here.  *See Rubin v. Pringle (In re Focus Media, Inc.)*, 387 F.3d 1077, 1084-85 (9th Cir. 2004) (plaintiff asserted both constructive trust and fraudulent transfer claims against debtor's sole shareholder); *United States ex rel Rahman v. Oncology*

29

The Trustee bases this Motion on the Ninth Count of the Fourth Amended Complaint, which asserts subsequent transferee avoidance claims against the Bermuda Defendants. Such avoidance claims are paradigmatic legal claims for damages subject to the rule of *Grupo Mexicano*. *See, e.g.*, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 43-49, 63 (1989) (stating that "[t]here is no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England"); *Teknek*, 343 B.R. at 870 (explaining that "an attempt to recover fungible monetary funds fraudulently conveyed is an action at law"); *McCord v. Papantoniou*, 316 B.R. 113, 123 (E.D.N.Y. 2004) ("In *Granfinanciera*, 492 U.S. at 64, 109 S.Ct. 2782, the Supreme Court ruled that actions for fraudulent conveyance are legal . . . ."). While some lower courts in this district have noted or held that freezing orders can be issued in connection with bankruptcy cases asserting fraudulent conveyance claims, those cases have involved fundamentally different facts. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 323 B.R. 345, 359 fn.18 (Bankr. S.D.N.Y. 2005) (noting that preliminary freezing injunction was permitted against former managers that allegedly looted the company and were criminally convicted of conspiracy and bank fraud); *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489 (JMF), 2013 WL 1915330, at *3-4 (S.D.N.Y. May 9, 2013) (allowing injunctive relief where defendant already engaged in allegedly fraudulent transfers to a third-party, and plaintiff was seeking to void those transfers to satisfy the judgment plaintiff already had obtained). Here, there is no allegation—nor could there possibly be—that the Joint Liquidators have ever attempted to fraudulently convey assets to the detriment of the Kingate Funds' creditors and other claimants. Nor has the Trustee obtained any judgment against the Kingate Funds.

---

*Assocs.*, 198 F.3d 489, 496-97 (4th Cir. 1999) (government sought imposition of equitable trust on defendants that allegedly defrauded Medicare system).

The Trustee's claim for a preliminary injunction is inconsistent with principles

enunciated in *Grupo Mexicano*, and should be rejected for this additional reason.

## **CONCLUSION**

For the reasons set forth above, the Joint Liquidators respectfully request that the Court

deny the Motion and grant such other further relief as this Court deems appropriate.


Dated: New York, New York
       June 9, 2014

                              **QUINN EMANUEL URQUHART &**
                              **SULLIVAN, LLP**

                              /s/ Robert S. Loigman
                              Susheel Kirpalani
                              Robert S. Loigman

                              51 Madison Avenue, 22nd Floor
                              New York, New York 10010
                              Telephone No.:  (212) 849-7000

                              *Counsel to Joint Liquidators of Kingate*
                              *Global Fund Ltd. and Kingate Euro Fund Ltd.*