# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>                 Plaintiff-Applicant, <br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>                 Defendant. | Civil Action No. 1:12-CV-02872-UA <br><br> Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |

In re:

BERNARD L. MADOFF,

                Debtor.

Adv. Pro. No. 10-04336 (BRL)

IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff,

                Plaintiff,
v.

THE ESTATE (SUCCESSION) OF DORIS IGOIN, LAURENCE APFELBAUM, individually and in her capacities as executor and beneficiary of the Estate (Succession) of Doris Igoin, and EMILIE APFELBAUM,

                Defendants.

---

**RESPONSES AND OBJECTIONS OF DEFENDANTS THE ESTATE (SUCCESSION) OF DORIS IGOIN, LAURENCE APFELBAUM AND EMILIE APFELBAUM, TO THE TRUSTEE'S FIRST SET OF WRITTEN JURISDICTIONAL DISCOVERY REQUESTS**

Defendants The Estate (Succession) of Doris Igoin, Laurence Apfelbaum and

Emilie Apfelbaum, by their attorneys Kelley Drye & Warren LLP, states the following as and for

their responses and objections to Trustee Irving Picard's First Set of Written Jurisdictional

Discovery Request to Defendants (the "Requests").

## GENERAL OBJECTIONS

In addition to the objections set forth separately in the Responses below (the

"Specific Objections"), the following General Objections apply to and are hereby incorporated in

each of Defendants' Responses and shall have the same force and effect as if set forth in full in

response to each individually numbered Request, whether or not specifically referred to therein.

Each Response is qualified by the General Objections and is limited to matters not covered

thereby.

1.      Defendants object to the Requests to the extent they seek information that

is subject to the attorney-client privilege, the attorney work-product doctrine, or is otherwise

protected from disclosure under statutory or common law.  Defendants hereby expressly claim

such privileges and protections to the extent implicated by any of the Requests and Defendants

shall exclude privileged or protected information from their Responses.  Inadvertent production

of any information that is privileged, protected from disclosure, or otherwise immune from

discovery shall not constitute a waiver of any privilege or protection or of the right to object to

the use of the information that was inadvertently produced.  Defendants reserve the right to recall

from discovery any inadvertently produced information that is protected by the attorney-client

privilege, the work-product doctrine, or any other applicable privilege or immunity.

2.      Defendant The Estate (Succession) of Doris Igoin is the name of a BLMIS

account, not an individual person, and therefore cannot respond to many of the Requests calling

for information separate and apart from that account.  Defendant Laurence Apfelbaum has

responded to the Requests on behalf of herself and The Estate (Succession) of Doris Igoin as best

as she can from her personal knowledge and records.  Emilie Apfelbaum has responded to the

Requests on behalf of herself from her personal knowledge, but not on behalf of The Estate (Succession) of Doris Igoin as Emilie Apfelbaum was not an heir of her grandmother Doris Igoin.

3.    Defendants object to the Requests to the extent that they seek to require responses pursuant to the Federal Rules of Civil Procedure, as opposed to the Hague Convention of March 18, 1970 (the "Hague Convention"), which Defendants contend should govern their responses to discovery.   By providing these responses to this limited jurisdictional discovery, Defendants are not prejudicing or waiving their right to insist that other discovery against them be taken pursuant to the requirements of the Hague Convention.

4.    Defendants object to the Requests to the extent they seek information that constitutes sensitive "economic, commercial, industrial, financial or technical information" which under French law, including but not limited to the Statute of 17 July 1980, are confidential or personal information that Defendants, as French citizens, are forbidden to provide under French law except as may be allowed through the procedures of the Hague Convention. Defendants will produce documents in response to these requests pursuant to an agreement with the Trustee's counsel that all such personal or confidential information will be redacted from those documents.   By providing responses to this limited jurisdictional discovery, Defendants are not prejudicing or waiving their right to assert that responding to future discovery should be conducted through the Hague Convention.

5.    Defendants object to the Requests to the extent they seek information that is neither relevant to the claims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

6.      Defendants object to the Requests to the extent they are overly broad, unduly burdensome, or oppressive.

7.      Defendants object to the Requests to the extent that they purport, through the Definitions or otherwise, to impose burdens or duties on Defendants that exceed the scope of reasonable and permissible discovery relating to jurisdictional issues.

8.      Defendants object to the Requests to the extent they are vague, ambiguous, capable of multiple meanings, do not identify with particularity the information sought, or imply the existence of any facts. Defendants further object to the use of undefined terms in the Requests.

9.      Defendants object to the Requests to the extent they contain legal conclusions or the application of law to facts that are subject to dispute in this action.

10.     Defendants object to the Requests to the extent they seek the disclosure of information or production or identification of documents not within Defendants' possession, custody, or control.

11.     These Responses are made without in any way waiving or intending to waive, but, on the contrary, intending to preserve and preserving: (i) any objections as to the competency, authenticity, relevancy, materiality, privilege or admissibility as evidence, for any purpose, of any documents or information produced in response to the Requests and/or the subject matter of any of the documents or information produced in response to the Requests, including that the use of the Responses are contrary to the requirements of French law; (ii) the right to object on any ground to the use of the documents or information produced in response to the Requests at any hearing, trial, or other point during this action or any other action; (iii) the right to object on any ground at any time to a demand for further responses to the Requests; (iv)

the right to object on any ground at any time to other discovery involving any produced

information and/or the subject matter thereof; or (v) the right to amend, supplement, modify or

correct these Responses and Objections.  By agreeing to produce documents or information in

response to a particular Request, Defendants do not admit that they have documents or

information responsive to that Request.

        12      The Requests seek information relating to the accounts and relations that

the Defendants had with Madoff and BLMIS, as well as information concerning other persons

and entities that are alleged to be involved in the separate Magnify Adversary Proceeding.

Defendants object to these Requests to the extent that they concern information allegedly at issue

in the Magnify Adversary Proceeding as not being relevant to the allegations of this case and

further state that at no time did they ever know of the existence of, have knowledge of, or have

any connections with, the events alleged in the Magnify Adversary Proceeding.


### RESPONSES TO DOCUMENT REQUESTS

**Request No. 1**

        All documents and communications concerning the
        opening and funding of any of the Accounts.

**Response No. 1**

        In addition to their General Objections, Defendants specifically object to the

defined word "Accounts" as seeking information about BLMIS accounts other than the four

accounts at issue in this proceeding.  Defendants have no knowledge of any BLMIS accounts

aside from those at issue in this proceeding.  Subject to this objection and their General

Objections, Defendants respond that the only responsive documents that they have are the French

language contracts signed in Paris with Bernard Madoff, which were attached as exhibits to the

motion to dismiss, and the certain BLMIS account statements that will be produced subject to the

agreed-upon redactions.

**Request No. 2**

>All documents and communications concerning the
>opening and funding of any BLMIS accounts held by or in
>relation to the Estate, including, but not limited to, the
>Accounts.

**Response No. 2**

In addition to their General Objections, Defendants specifically object to the

defined word "Accounts" as seeking information about BLMIS accounts other than the four

accounts at issue in this proceeding.  Defendants have no knowledge of any BLMIS accounts

aside from those at issue in this proceeding.  Subject to this objection and their General

Objections, Defendants respond that they have no responsive documents other than the

documents identified in response to Request No. 1 that will be produced.

**Request No. 3**

>All BLMIS account statements, portfolio evaluations,
>trading confirmations, advices of credit and advices of
>debit for any BLMIS accounts.

**Response No. 3**

Subject to their General Objections and especially Objection Nos. 3 and 4

concerning the requirements of French law, Defendants respond that they have no other

responsive documents aside from certain BLMIS account statements and similar types of account

documents that will be produced

**Request No. 4**

>All documents and communications with BLMIS
>concerning the status, valuation or performance of any
>accounts.

**Response No. 4**

Subject to their General Objections and especially General Objection Nos. 3 and 4

concerning the requirements of French law, Defendants respond that they have no other

responsive documents aside from certain BLMIS account statements and similar types of account

documents that will be produced.

**Request No. 5**

All documents concerning any other BLMIS accounts.

**Response No. 5:**

Subject to their General Objections, Defendants respond that they have no

documents concerning any BLMIS account aside from the four accounts at issue in this

proceeding.

**Request No. 6**

All communications with BLMIS, Madoff, and/or any
other BLMIS employees.

**Response No. 6:**

Subject to their General Objections, Defendants respond that they have no

responsive documents aside from certain BLMIS account statements and similar types of account

documents that will be produced.

**Request No. 7**

All documents and communications concerning any
transfers to or redemptions from any BLMIS accounts,
including, but not limited to, the BLMIS accounts held in
the names of Banque Pallas France, Banque pour
l'Industrie Française, Groupama Banque, Banque Privée de
Gestion Financière, and Banque Finama, including, but not
limited to, any transfers or assignments of funds or other
assets among BLMIS accounts or within BLMIS.

**Response No. 7:**

Subject to their General Objections and especially General Objection Nos. 3 and 4

concerning the requirements of French law, Defendants respond that they have no responsive

documents aside from certain BLMIS account statements and similar types of account

documents that will be produced.

**Request No. 8**

> All documents and communications concerning any
> meetings, telephone calls, and/or teleconferences between
> Defendants on the one hand, and any BLMIS employees
> and/or Madoff on the other, including, but not limited to,
> any calendar entries, meeting minutes, and/or notes.

**Response No. 8:**

Subject to their General Objections, Defendants respond that they have no

documents responsive to this request.

**Request No. 9**

> All communications between Defendants and any Persons
> located in the United States concerning BLMIS or any
> BLMIS account.

**Response No. 9:**

Subject to their General Objections, Defendants respond that, aside from

communications with counsel, they have no documents responsive to this request.

**Request No. 10**

> All documents and communications between or among
> Defendants and any other persons, including, but not
> limited to, BLMIS, Green, Brunner, Nahir, Baschy, Albert
> Igoin and/or Weil, concerning Magnify, Premero, Express,
> Strand, Milton, and/or SG Warburg Bank, including, but
> not limited to, agreements and letters of instruction.

**Response No. 10:**

Subject to their General Objections, Defendants specifically object to this request

to the extent that it relates to BLMIS as this request is duplicative of the prior requests, that

Defendants have no additional relevant documents and that, except for Albert Igoin and Ayala Nahir who are relatives, Defendants have no knowledge of these individuals or entities or the facts raised in the Magnify Adversary Proceeding. Defendants further specifically object to this request to the extent that it relates to Albert Igoin. Mr. Igoin was the late father and grandfather of Laurence and Emilie Apfelbaum and a request for all documents between them is overbroad, burdensome and seeks documents that are either not relevant nor likely to lead to the discovery of relevant evidence. Defendants further specifically object to this request to the extent that it relates to Ayala Nahir. Ms. Nahir is a cousin of Laurence and Emilie Apfelbaum and a request for all documents between them is overbroad, burdensome and seeks documents that are neither relevant nor likely to lead to the discovery of relevant evidence. Defendants respond that they have no documents between or among them and Albert Igoin or Ayala Nahir relating to any BLMIS accounts or relating to any of the other identified persons or entities. Defendants further respond that they have no documents relating to any of the other identified persons or entities.

**Request No. 11**

> All documents and communications concerning Laurence Apfelbaum, Emilie Apfelbaum, and/or the Estate's SIPA claims, including, but not limited to, all documents concerning the preparation, execution, and filing of same.

**Response No. 11:**

Subject to their General Objections, Defendants respond that they have no responsive documents aside from the SIPA claim forms that are attached as exhibits to the pending motion to dismiss.

**Request No. 12**

> All documents and communications concerning the administration of the Estate and any assets of that estate, including, but not limited to, all documents relating to Laurence Apfelbaum's claim that the Estate's primary asset

> was Doris Igoin's "interest in the BLMIS account" and that
> the entirety of withdrawals from the Succession Account
> was used to pay taxes. *See* Declaration of Laurence
> Apfelbaum ¶ 20, dated April 2, 2012.

**Response No. 12:**

        In addition to their General Objections, Defendants specifically object to this

Request as seeking information that is neither relevant nor reasonably calculated to lead to the

discovery of relevant evidence concerning the issue of personal jurisdiction.   Defendants will

produce a French legal document containing an inventory of the Estate of Doris Igoin's assets,

with all sensitive financial information redacted. Defendants also affirmatively state that no

accounts or assets that are the subject of the Magnify Adversary Proceeding were part of the

Estate of Doris Igoin's assets.

**Request No. 13**

> All documents and communications concerning the
> administration of Albert Igoin's estate and any assets of
> that estate, including, but not limited to, all documents
> relating to Laurence Apfelbaum's decision to "keep
> BLMIS involved with respect to the assets" she inherited
> from Albert Igoin. *See* Declaration of Laurence Apfelbaum
> ¶ 8, dated April 2, 2012.

**Response No. 13:**

        In addition to their General Objections, Defendants specifically object to this

request as seeking information that is neither relevant nor calculated to lead to the discovery of

relevant evidence concerning the issue of personal jurisdiction.   Defendants will produce a

French legal document containing an inventory of Albert Igoin's estate's assets, with all sensitive

financial information redacted.   Defendants also affirmatively state that no accounts or assets that

are the subject of the Magnify Adversary Proceeding were part of Albert Igoin's estate's assets.

Defendants further respond that the only documents concerning Laurence Apfelbaum's decision

to "keep BLMIS involved with respect to the assets" are the French language BLMIS contracts

that are attached as exhibits to the pending motion to dismiss.

**Request No. 14**

> All documents and communications concerning any
> agreement or contract with BLMIS.

**Response No. 14:**

Subject to their General Objections, Defendants respond that the only documents

they have concerning an agreement or contract with BLMIS are the French language BLMIS

contracts approved by the French Family Judge that are attached as exhibits to the pending

motion to dismiss.

**Request No. 15**

> All documents and communications concerning the
> administration of any BLMIS accounts by Banque Finama
> or any other banks, including, but not limited to, Banque
> Pallas France, Banque pour l'Industrie Française,
> Groupama Banque and/or Banque Privée de Gestion 10
> Financière.

**Response No. 15:**

Subject to their General Objections, Defendants respond that the only documents

that they have are certain account statements from Banque Finama, formerly known as Banque

pour l'Industrie Francaise, from the period of time when monies in BLMIS were invested

through Banque Finama through Mme Dringenberg.

**Request No. 16**

> All documents and communications concerning the
> administration of any BLMIS accounts by Dringenberg.

**Response No. 16:**

Subject to their General Objections, Defendants respond that they have no

documents aside from the documents identified in response to Request No. 15.

**Request No. 17**

        All communications between Defendants and Dringenberg concerning BLMIS or any BLMIS accounts.

**Response No. 17:**

        Subject to their General Objections, Defendants respond that they have no documents aside from the documents identified in response to Request No. 15 above.

**Request No. 18**

        All documents and communications concerning taxes paid or owed by Defendants in France or the United States with respect to assets held or administered in the United States, including, but not limited to, any BLMIS accounts held by or for the benefit of Defendants or any other Person.

**Response No. 18:**

        In addition to their General Objections, Defendants respond that the only non-privileged documents that they have responsive to this request as their actual tax returns. Defendants specifically object to this request as their tax returns contain private and confidential information that is neither relevant nor likely to result in the discovery of relevant evidence on the issue of jurisdiction and is forbidden to be produced by the French Statute of 17 July 1980.

**Request No. 19**

        All trust, fiduciary or other agreements concerning Magnify, Express, Strand, Premero, Milton, Albert Igoin, Weil, Green, Brunner, Nahir, Laurence Apfelbaum, Emilie 11 Apfelbaum, Doris Igoin, and/or Yeshaya, including any amendments thereto.

**Response No. 19:**

        In addition to their General Objections, Defendants specifically object to this request to the extent it seeks the production of documents concerning all trust, fiduciary or other agreements concerning Albert Igoin, Laurence Apfelbaum, Emilie Apfelbaum and Doris Igoin, as such a request is overbroad, burdensome and seeks information that is neither relevant nor

calculated to lead to the discovery of relevant information.  Defendants assume that the Trustee

is seeking trust, fiduciary or other agreements relevant to the events described in the Magnify

Adversary Proceeding and Defendants respond that they have no documents whatsoever relating

to the facts alleged in that case and affirmatively state that they have no knowledge of either the

BLMIS accounts at issue in that case or of the facts described in the Magnify Adversary

Complaint.

**Request No. 20**

>           All trust or fiduciary agreements for the benefit of
> Defendants, including any amendments thereto.

**Response No. 20:**

In addition to their General Objections, Defendants specifically object to this

request as vague, overbroad, burdensome and as seeking information that is neither relevant nor

calculated to lead to the discovery of relevant information.   Subject to these objections,

Defendants specifically state that they have no such documents relating to the BLMIS accounts

at issue in the Magnify Adversary Proceeding or relating to the facts described in the Magnify

Adversary Proceeding and further state that they have no knowledge relating to those issues.

**Request No. 21**

>           All documents and communications concerning any trust or
> fiduciary relationship between Laurence Apfelbaum,
> Emilie Apfelbaum, and Doris Igoin on the one hand, and
> Green, Brunner, Magnify, Express, Strand, Milton, Weil,
> Yeshaya, Nahir, and/or Premero on the other.

**Response No. 21:**

Subject to their General Objections and particularly General Objection No. 12,

Defendants respond that they have no responsive documents.

**Request No. 22**

> To the extent not already provided in response to the above Requests for Production, all documents describing or defining any relationships between Laurence Apfelbaum, Emilie Apfelbaum, and Doris Igoin on the one hand, and Green, Brunner, Magnify, Express, Strand, Premero, Yeshaya, Nahir, Baschy, Weil, SG Warburg Bank, and/or Milton on the other.

**Response No. 22:**

Subject to their General Objections and particularly General Objection No. 12,

Defendants respond that they have no responsive documents.

**Request No. 23**

> To the extent not already provided in response to the above Requests for Production, all documents concerning any communication between Defendants and any other individual or entity concerning BLMIS, Madoff, Magnify, Express, Strand, Premero, Yeshaya, Nahir, Green, Brunner, Banque Finama, Banque Pallas France, Banque pour l'Industrie Française, Groupama Banque, Banque Privée de Gestion Financière, SG Warburg Bank, and/or Milton.

**Response No. 23:**

In addition to their General Objections and in particular General Objection No.

12, Defendants specifically object to this request as duplicative of prior requests and state that

Defendants have no documents other than what have been described above. Defendants further

specifically object to the inclusion of Banque Finama, formerly known as Banque pour

l'Industrie Francaise, in this Request as it erroneously implies that Defendants' investments

which for a time were managed through Banque Finama, formerly known as Banque pour

l'Industrie Francaise, were somehow involved with the events described in the Magnify

Adversary Proceeding.

**Request No. 24**

> To the extent not already provided in response to the above Requests for Production, all documents concerning any

> bank or brokerage accounts in the United States held by or
> for the benefit of Defendants, directly or indirectly,
> including, but not limited to, documents concerning the
> authority to transfer funds to and from those accounts and
> any letters of instruction.

**Response No. 24:**

Subject to their General Objections, Defendants respond that the only accounts in

the United States that they are aware of as being held by or for their benefit directly or indirectly

are the BLMIS accounts that are the subject of this action.   Defendants have no other documents

other than what have been described above.

**Request No. 25**

> To the extent not already provided in response to the above
> Requests for Production, all documents concerning any
> communications between Defendants and any individuals
> and/or entities located in the United States.

**Response No. 25:**

In addition to their General Objections, Defendants respond that they have a

distant cousin located in the California with whom Defendant Laurence Apfelbaum (but not

Emilie Apfelbaum) has periodically corresponded on a purely social basis.  Ms. Apfelbaum has

never corresponded with her cousin with regard to any matters relating to finance, such as issues

involving BLMIS, with regard to any inheritance or with regard to any of the facts described in

the Magnify Adversary Complaint (about which Defendants have no knowledge).   Defendants

specifically object to any requirement to search for and produce any purely social

correspondence that they may have as being unduly burdensome and as seeking information that

is neither relevant nor calculated to lead to the discovery of evidence relating to jurisdictional

issues.

**Request No. 26**

> To the extent not already provided in response to the above
> Requests for Production, all documents concerning all of
> Defendants' actual and/or contemplated travel to the United
> States.

**Response No. 26:**

In addition to their General Objections, Defendants specifically object to this

Request as unduly burdensome and as seeking information that is neither relevant nor calculated

to lead to the discovery of relevant evidence.  Defendants respond that Emilie Apfelbaum has

twice been to the United States, once in approximately 1993 to attend a summer camp in

Vermont and again in approximately 2000 to meet family in Philadelphia.   Laurence Apfelbaum

has traveled several times to the United States either for vacation or to meet family and her last

trip to meet family in Philadelphia was in approximately 2002.   At no time did either Laurence

or Emilie Apfelbaum meet with anyone from BLMIS while in the United States.  Defendants

further respond that they have no current plans to travel to the United States.

**Request No. 27**

> To the extent not already provided in response to the above
> Requests for Production, all documents and
> communications concerning Defendants' financial
> transactions in or to be performed in the United States,
> including, but not limited to, all documents concerning
> Defendants' financial transactions involving or relating to
> BLMIS.

**Response No. 27:**

Subject to their General Objections, Defendants respond that they have no other

documents other than what have been described above.

**Request No. 28**

> All documents that support or refute the allegations made
> in Defendants' motion to dismiss.

**Response No. 28:**

In addition to their General Objections, Defendants specifically object to this request as vague, overly broad, burdensome and as seeking documents that are neither relevant nor likely to lead to the discovery of relevant evidence.   Defendants assume that the intent of this request is for all documents that support or refute the allegations relevant to the pending motions and Defendants will produce any such documents.

## RESPONSES TO INTERROGATORIES

### Interrogatory No. 1

> Identify any meetings between Defendants and Madoff, Frank DiPascali, or any other BLMIS employees, as well as the locations and participants of any such meetings. In addition, describe the nature and substance of those meetings.

### Response No. 1:

Subject to their General Objections, Defendants respond that Laurence Apfelbaum never met with Frank DiPascali or any other BLMIS employee aside from Bernard Madoff.   Ms. Apfelbaum met Mr. Madoff once or twice in France when her father, Albert Igoin, was alive.   On those occasions, Ms. Apfelbaum was only introduced to him and exchanged pleasantries.   At that time, Ms. Apfelbaum only knew Mr. Madoff as a business acquaintance of her father and did not know that Mr. Madoff managed her father's investments.   After the death of her father, Ms. Apfelbaum saw Mr. Madoff on a few occasions when he visited her mother, Doris Igoin, in Paris. Ms. Apfelbaum recalls these visits as being purely social in nature, involving a lunch at a local restaurant.   After her mother's death, Ms. Apfelbaum received Mr. Madoff for lunch at her apartment about once a year when he was coming though Paris on his way to the south of France.   These visits were also purely social in nature.   Ms. Apfelbaum does not have a record of the dates of these visits, but believes that they occurred when Mr. Madoff was passing through Paris on his way to the South of France.   At no time did Mr. Madoff travel

to France for these social visits only to see Ms. Apfelbaum.    The only meeting that Laurence

Apfelbaum had with Mr. Madoff where her BLMIS accounts were discussed took place in Paris

in 1995 after the death of her father.    At that meeting, Mr. Madoff sought to have Ms.

Apfelbaum invest with BLMIS the money that Ms. Apfelbaum and her daughter Emilie had

inherited from her father and there was a discussion of the need to obtain the approval of the

French Family Judge overseeing the inheritance of Emilie Apfelbaum.    Aside from this meeting,

Ms. Apfelbaum had no other meetings with Madoff, DiPascali or any other BLMIS employees to

discuss business issues.

Emilie Apfelbaum has never met with Madoff, DiPascali or any other BLMIS

employees.

**Interrogatory No. 2**

> Identify any communications between Defendants and
> Madoff, Frank DiPascali, or any other BLMIS employees,
> as well as the locations and the participants of any such
> communications. In addition, describe the nature and
> substance of those communications.

**Response No. 2:**

Subject to their General Objections, Defendants respond that in addition to the

meetings described above, Laurence Apfelbaum had intermittent phone conversations or faxes

with either Madoff or DiPascali to inform them of needed withdrawals from BLMIS accounts

primarily for the purposes of paying French wealth taxes or to pay U.S. taxes after the death of

her mother, who was a U.S. citizen.  Ms. Apfelbaum does not have a record of when these

conversations took place, but can say that they were infrequent (possibly once or twice a year)

and that her conversations regarding U.S. taxes occurred in or around 2006.  At no time did

Madoff, DiPascali or anyone else at BLMIS communicate with Ms. Apfelbaum to discuss

investment strategies.

Emilie Apfelbaum has never had any communications with Madoff, DiPascali or any other BLMIS employees.

**Interrogatory No. 3**

> Identify all BLMIS accounts that Defendants were aware of before December 10, 2008, and identify when Defendants became aware of those accounts.

**Response No. 3:**

In addition to their General Objections, Defendants specifically object to this interrogatory as vague and assume that the Request concerns any specific accounts of which Defendants were aware, as opposed to a general knowledge that BLMIS had other accounts aside from their own.   Subject to those objections, Defendants respond that the only BLMIS accounts that Laurence Apfelbaum was aware of prior to December 10, 2008 were the four accounts that are at issue in this Adversary Proceeding.   Emilie Apfelbaum was aware of her own account and only generally aware of the three other accounts at issue in this Adversary Proceeding.

**Interrogatory No. 4**

> Identify all BLMIS accounts that Defendants became aware of on or after December 10, 2008, and identify when Defendants became aware of those accounts.

**Response No. 4:**

In addition to their General Objections, Defendants specifically object to this request as vague and unclear.  Through the many news reports about the BLMIS bankruptcy, Defendants have become generally aware that there are many other individuals or entities who had BLMIS accounts.  If this question was meant to ask about the accounts at issue in the Magnify Adversary Proceeding, Laurence Apfelbaum responds that the first time she became aware of those accounts was when she read the Magnify Adversary Complaint that was provided

to her counsel by the Trustee's counsel. Emilie Apfelbaum has not read the Magnify Adversary

Complaint and has no other knowledge of those or any other specific BLMIS accounts.

**Interrogatory No. 5**

>       Describe the opening of the Accounts and identify all
>       transfers of funds to and/or from locations outside of
>       BLMIS.

**Response No. 5:**

        In addition to their General Objections, Defendants object to the definition of the

term "Accounts" as it purports to encompass accounts other than the four accounts at issue in this

Adversary Proceeding.   Defendants have no knowledge of any specific BLMIS accounts other

than the four at issue in this Adversary Proceeding.   In addition, Defendants only have specific

knowledge of the opening of the two accounts for Laurence Apfelbaum and for Emilie

Apfelbaum that were opened in 1995 pursuant to the French language contracts signed with

Bernard Madoff in Paris which are exhibits to the pending motions to dismiss.  The source of the

funds for those accounts, when opened in 1995, were monies inherited by Laurence and Emilie

Apfelbaum upon the death of Albert Igoin.   Defendants understood that the money that they

inherited in 1995 had been invested with BLMIS by Albert Igoin.   Defendants further believe

that the funds originally invested by Albert Igoin were from the sale of his business in France.  In

2005, Emilie Apfelbaum transferred additional monies into her account.  Defendant Laurence

Apfelbaum is also aware of the opening of the Estate (Succession) of Doris Igoin Account which

she caused to be opened after the death of her mother Doris Igoin.  The source of money for that

account was money transferred from the prior open account of Doris Igoin.

**Interrogatory No. 6**

>       Describe Defendants' roles in the management,
>       administration, and/or supervision of any BLMIS accounts.

**Response No. 6:**

In addition to their General Objections, Defendants specifically object to the term "supervision" as vague and capable of several meanings. Defendants assume that supervision refers to actively supervising how the monies in the their accounts were invested and managed. Subject to these objections, Defendants respond that neither of them had any role in the management, administration or supervision of any BLMIS account

**Interrogatory No. 7**

> Identify all meetings or communications concerning BLMIS and/or Madoff between Defendants and any persons associated with Banque Finama, Banque pour l'Industrie Française, Groupama Banque, Banque Pallas France, Banque Privée de Gestion Financière, or any other banks associated with any BLMIS accounts. In addition, describe the nature and substance of any such meetings and communications, and identify the locations of the meetings.

**Response No. 7:**

Subject to their General Objections, Defendants respond that Laurence Apfelbaum had communications with Banque Finama, formerly known as Banque pour l'Industrie Francaise, from the time that the she signed her contract with BLMIS in 1995 up through approximately early 2000. During that time period, Banque Finama which was located in Paris handled all aspects of the administration of the BLMIS accounts at issue in this Adversary Proceeding. Ms. Apfelbaum had telephone conversations about once a year with Mme. Dringenberg of Banque Finama concerning tax returns for herself and her daughter Emilie relating to the accounts. Emilie Apfelbaum did not have any meetings with any of the referenced entities regarding her BLMIS account.

**Interrogatory No. 8**

> Identify all communications between Defendants and Albert Igoin concerning BLMIS, Madoff, and/or any of

Albert Igoin's investments or business ventures. In
addition, describe the nature and substance of those
communications.

**Response No. 8:**

In addition to their General Objections, Defendants specifically object to this

request as overbroad, unduly burdensome and as requesting information that is neither relevant

nor calculated to lead to the discovery of relevant evidence.  Subject to these objections,

Defendants respond that Laurence Apfelbaum had only very general in nature communications

with her father Albert Igoin about his investments or business ventures.   Aside from knowing

that her father had a long career in finance with a number of French companies, her father did

not discuss with her the nature of his businesses or his investments.  Ms. Apfelbaum was not

aware of BLMIS prior to her father's death, nor did she not know at that time that Mr. Madoff

managed investments for her father.   Emilie Apfelbaum was a minor at the time her grandfather

passed away and has no recollection of ever communicating with her grandfather about his

investments, business ventures, BLMIS or Madoff.

**Interrogatory No. 9**

Identify all communications between Defendants and Doris
Igoin concerning BLMIS, Madoff, and/or any of Doris
Igoin's or Albert Igoin's investments or business ventures.
In addition, describe the nature and substance of those
communications.

**Response No. 9:**

In addition to their General Objections, Defendants specifically object to this

request as overbroad, unduly burdensome and as requesting information that is neither relevant

nor calculated to lead to the discovery of relevant evidence to the extent that it seeks information

aside from any communications relating to BLMIS accounts.   Subject to these objections,

Defendants respond that Doris Igoin did not have any independent business ventures.   Aside

from knowing that her mother and father had the investments with BLMIS that are at issue in

this Adversary Proceeding, her mother did not discuss these investments.   Emilie Apfelbaum

was a minor and then a student when her grandmother passed away and has no recollection of

every communicating with her grandmother about her grandmother or grandfather's investments

or her grandfather's business ventures.

**Interrogatory No. 10**

>Identify all BLMIS accounts, past or present, held by or for
>the benefit of Albert Igoin, or any person affiliated with
>Albert Igoin, of which Defendants have ever been aware.

**Response No. 10:**

Subject to their General Objections, Defendants respond that the only BLMIS

accounts held by or for the benefit of Albert Igoin, or any person affiliated with Albert Igoin, of

which Laurence Apfelbaum was ever aware are the accounts at issue in this Adversary

Proceeding.   Laurence Apfelbaum has been shown the Complaint in the Magnify Adversary

Proceeding, which is the first time that she was ever aware of the existence of Magnify and of

those other BLMIS accounts which, according to the Magnify Adversary Proceeding, were

opened by Albert Igoin.    Emilie Apfelbaum was a minor when her grandfather passed away

and has no knowledge of any BLMIS accounts aside from the her own account and a general

knowledge of the other accounts at issue in this Adversary Proceeding.  Emilie Apfelbaum has

not seen the Magnify Adversary Complaint and has no knowledge of any of the events or

accounts described therein.

**Interrogatory No. 11**

>Identify all of Albert Igoin's investments with BLMIS that
>Defendants have ever been aware of, and identify the dates
>and amounts of those investments.

**Response No. 11:**

Subject to their General Objections, Defendants respond that Laurence

Apfelbaum was only aware that Albert Igoin had money in BLMIS accounts that was inherited

by her and her mother and daughter when Albert Igoin passed away in 1995.   Ms. Apfelbaum

understands that the monies in the Doris Igoin Succession Account and the monies that she and

her daughter inherited were originally invested by Albert Igoin, but at this time she has no

independent knowledge of the original investment amounts or dates of the investments separate

from what is alleged by the Trustee in the Complaint in this Adversary Proceeding.   Emilie

Apfelbaum has no knowledge of Albert Igoin's investments separate from what is alleged by the

Trustee in the Complaint in this Adversary Proceeding.

**Interrogatory No. 12**

> Identify all agreements with persons in the United States,
> and all agreements to be performed in or related to activity
> in the United States, that Albert Igoin, or any other Person,
> entered into on behalf of Defendants.

**Response No. 12:**

Subject to their General Objections, Defendants respond that they are unaware of

any agreements with any persons in the United States, or any agreements to be performed in or

related to activity in the United States, that Albert Igoin or any other person entered into on

behalf of Defendants.

**Interrogatory No. 13**

> Describe Defendants' knowledge concerning any of Albert
> Igoin's business or financial transactions, including, but not
> limited to, the sale of any of Albert Igoin's business
> interests, as well as Defendants' knowledge concerning
> Albert Igoin's initial investment, and subsequent dealings,
> with Madoff/BLMIS. *See* Declaration of Laurence
> Apfelbaum ¶ 6, dated April 2, 2012.

**Response No. 13:**

Subject to their General Objections, Defendants incorporate their responses to interrogatory numbers 8 through 11. Defendants further refer the Trustee to ¶ 6 of the Declaration of Laurence Apfelbaum dated April 2, 2012 in which Ms. Apfelbaum states that "To the best of my knowledge, the origin of [the accounts at issue in this Adversary Proceeding] is that during the 1980s my late father, Albert Igoin, invested proceeds from the sale of his company with BLMIS. I am aware that my father knew Bernard Madoff, having met him around the time he retired. However, I was not at all involved with my father's business and/or financial situation and was never told either how my father met Mr. Madoff or about any business dealings they may have had".

**Interrogatory No. 14**

> Identify any meetings or communications between any of the Defendants and Green, Brunner, Baschy, Weil, Nahir, or Dringenberg. In addition, list the attendees of those meetings, provide details of when and where those meetings occurred, and provide details of what was discussed at those meetings.

**Response No. 14:**

In addition to their General Objections, Defendants specifically object to the inclusion of Dringenberg in this Request as it erroneously implies that Laurence Apfelbaum's communications with Dringenberg somehow were related to the other named individuals who are alleged to be part of the events described in the Magnify Adversary Proceeding, about which Defendants have no knowledge. Defendants direct the Trustee to their response to interrogatory number 7 regarding communications with Sylvie Dringenberg. Defendants further respond that Ayala Nahir is Laurence Apfelbaum's cousin who lives in Israel. Ms. Apfelbaum has had intermittent contact with Ms. Nahir since her childhood at family gatherings, usually when Ms. Nahir visited Paris. At no time prior to December 2008 did Ms. Apfelbaum ever discuss with

25

Ms. Nahir any BLMIS accounts or any other financial issue and, as stated above, Ms. Apfelbaum

was not aware of any of the facts described in the Magnify Adversary Proceeding.   At some

point after BLMIS filed for bankruptcy, Ms. Nahir called Ms. Apfelbaum and told her of the

existence of the Yeshaya Horowitz Foundation and proposed that Ms. Apfelbaum speak with her

lawyer.   Ms. Apfelbaum told Ms. Nahir that she did not wish to have such a discussion and

ended the conversation.  Last year Ms. Nahir called Ms. Apfelbaum and said that was coming to

Paris with her children and asked if they could get together.  Ms. Apfelbaum answered that she

would be on holiday outside of Paris when Ms. Nahir was visiting and that they therefore could

not get together.   During that conversation there was no mention of BLMIS or any of the people,

entities or matters alleged in the Magnify Adversary Proceeding.   Ms. Apfelbaum has not

spoken with Ms. Nahir since that time.   Ms. Apfelbaum has no recollection of ever meeting or

speaking with any individuals by the names of Green, Brunner, Baschy or Weil and, accordingly,

has no recollection of any communications with them.

   Emilie Apfelbaum does not know any of the identified persons aside from Ayala

Nahir and, accordingly, has no recollection of any communications with them.  Emilie

Apfelbaum has only met Ms. Nahir in passing when Ms. Nahir visited Paris and, accordingly,

has never had any substantive conversation with her.

**Interrogatory No. 15**

> List all payments or Transfers that Defendants received
> directly or indirectly, for any reason, from BLMIS, Green,
> Brunner, Nahir, Dringenberg, Baschy, SG Warburg Bank,
> Weil, Milton, Magnify, Premero, Strand, Express, or
> Yeshaya, or from anyone associated with one or more of
> those individuals or entities. In addition, specify the dates
> and amounts of those transfers.

**Response No. 15:**

In addition to their General Objections, Defendants specifically object to the inclusion of Dringenberg in this Request as it erroneously implies that Laurence Apfelbaum's communications with Dringenberg somehow were related to the other named individuals who are alleged to be part of the events described in the Magnify Adversary Proceeding, about which Defendants have no knowledge.   Defendants direct the Trustee to their response to interrogatory number 7 regarding communications with Sylvie Dringenberg. Subject to these General Objections, Defendants state that they have never received any payments or transfers, directly or indirectly, from Green, Brunner, Baschy, SG Warburg Bank, Weil, Milton, Premero, Strand, Express or Yeshaya, or from anyone associated with one or more of those individuals or entities whom they do not know and with whom they have no contacts whatsoever.  Nor have Defendants received any payments or transfers, directly or indirectly from Nahir, or from anyone associated with her, with the exception that if "associated" is meant to include a relative, money that Defendants inherited from Albert Igoin, Nahir's uncle, are the source of the accounts at issue in this Adversary Proceeding.   Defendants acknowledge that they received payments that they withdrew from BLMIS from several of the accounts at issue in the Adversary Proceeding, as well as from Banque Finama where Mme. Dringenberg worked as discussed in prior responses.

**Interrogatory No. 16**

> Identify and describe all current and past business and/or financial relationships between any of the Defendants and Brunner, Green, Albert Igoin, Weil, Nahir, Dringenberg, and/or Baschy.

**Response No. 16:**

In addition to their General Objections, Defendants specifically object to the inclusion of Dringenberg in this Request as it erroneously implies that Laurence Apfelbaum's communications with Dringenberg somehow were related to the other named individuals who

are alleged to be part of the events described in the Magnify Adversary Proceeding, about which

Defendants have no knowledge. Subject to these objections, Defendants refer the Trustee to

their response to interrogatory number 7 regarding Dringenberg and to interrogatories 8 through

13 for Albert Igoin. Defendants have had no current or past business and/or financial

relationships with Brunner, Green, Weil, Nahir or Baschy.

**Interrogatory No. 17**

> Identify all tax payments made by Defendants, both in
> France and the United States, and provide the dates and
> amounts of any such payments, as well as the entities to
> which the payments were made. In addition, identify all
> portions of those tax payments that were based on BLMIS
> holdings and/or other assets or incomes in the United
> States.

**Response No. 17:**

In addition to their General Objections, Defendants specifically object to this

interrogatory as seeking information that is neither relevant nor calculated to lead to the

discovery of relevant evidence for jurisdictional discovery and is forbidden to be produced gy the

French Statute of 17 July 1980.

**Interrogatory No. 18**

> Specifically identify any tax payments made by
> Defendants, both in France and the United States, using
> funds withdrawn from Defendants' BLMIS accounts. In
> addition, provide the dates and amounts of any such
> payments, as well as the entities to which the payments
> were made.

**Response No. 18:**

In addition to their General Objections, Defendants specifically object to this

interrogatory as seeking information that is neither relevant nor calculated to lead to the

discovery of relevant evidence for jurisdictional discovery and is forbidden to be produced by the

French Statute of 17 July 1980..

**Interrogatory No. 19**

>  Identify any communications between Defendants and
>  French tax authorities since 1995, including, but not limited
>  to, communications concerning BLMIS or other United
>  States investments or assets. In addition, describe the nature
>  and substance of those communications.

**Response No. 19:**

In addition to their General Objections, Defendants specifically object to this

request as seeking information that is neither relevant nor calculated to lead to the discovery of

relevant evidence for jurisdictional discovery, nor are they permitted to provide this information

according to French law.

**Interrogatory No. 20**

>  List all employees, accountants, advisors, or attorneys
>  employed by Defendants to deal with taxes owed by
>  Defendants in the United States, or in connection with
>  assets held in the United States, or with any other issue
>  related to Defendants' assets in the United States.

**Response No. 20:**

In addition to their General Objections, Defendants specifically object to this

interrogatory as seeking information that is neither relevant nor calculated to lead to the

discovery of relevant evidence for jurisdictional discovery.  Subject to these objections,

Defendants states that Laurence Apfelbaum retained the New York office of the French law firm

of Bureau Francis Lefebvre to advise her on the issue of U.S. taxes owed by the Estate of her

mother Doris Igoin after her mother's death.  Ms. Igoin was born in the United States, but

emigrated to France shortly after World War II and lived there continuously since that time.

**Interrogatory No. 21**

Identify any communications or meetings between
Defendants and any individuals or entities in the United
States concerning the payment of taxes to the United States
government. In addition, describe the nature and substance
of those communications.

**Response No. 21:**

In addition to their General Objections, Defendants specifically object to this

interrogatory as seeking information that is neither relevant nor calculated to lead to the

discovery of relevant evidence for jurisdictional discovery.  Subject to these objections,

Defendants respond that they had no meetings with any individuals or entities in the United

States concerning the payment of taxes to the United States government.   Laurence Apfelbaum

spoke on the phone with attorneys for Bureau Francis Lefebrve to receive legal advice on this

subject and the substance of those communications are attorney client privileged

communications.

**Interrogatory No. 22**

Identify all persons and entities located in the United States
with whom Defendants have communicated with respect to
BLMIS and/or Madoff, and describe the nature and
substance of those communications.

**Response No. 22:**

Subject to their General Objections, Defendants direct the Trustee to the answer

to interrogatory number 2 and state that they otherwise communicated with no persons or

individuals located in the United States with respect to BLMIS and/or Madoff.

**Interrogatory No. 23**

List all phone numbers and/or fax numbers that Defendants
ever used for communications concerning BLMIS and/or
Defendants' connections with the United States, including
identification of the phone numbers and/or fax numbers and
the person(s)/organization(s) associated with each number.

30

**Response No. 23:**

Subject to their General Objections, Defendants respond that the telephone

number and fax number that Ms. Laurence Apfelbaum used to communicate with BMLIS was 33

1 40 51 26 24.

**Interrogatory No. 24**

Identify all of Defendants' business interests, investments,
or assets in the United States.

**Response No. 24:**

Subject to their General Objections, Defendants respond that with the exception

of BLMIS accounts that are at issue in this Adversary Proceeding, at no time have they have had

any business interests, investments or assets in the United States.

**Interrogatory No. 25**

To the extent that any of Defendants' answers to the below
Requests for Admission are anything other than
unequivocal admissions, set forth the factual basis for each
such non-admission.

**Response No. 25:**

This interrogatory is not applicable as responses to the Requests for Admission

are set forth in detail below.

## RESPONSES TO REQUESTS FOR ADMISSION

**Request No. 1**

Admit that when Laurence Apfelbaum signed the Customer
Agreements on behalf of herself and Emilie Apfelbaum,
they knew that BLMIS was located in the United States.

**Response No. 1:**

Defendants admit that Laurence Apfelbaum was aware that BLMIS was located

in the United States at the time in 1995 that Bernard Madoff traveled to Paris to meet her and

convinced her to sign the French language agreements that she understood were subject to

French law.  Defendants further state that at that time Emilie Apfelbaum was a minor and denies

that she had any understanding of where BLMIS was located.

**Request No. 2**

> Admit that when Defendants created and funded their
> BLMIS accounts, Defendants believed that BLMIS traded
> securities on exchanges in the United States.

**Response No. 2:**

Defendants respond that they do not have sufficient information to either admit or

deny this request.  When Defendants created and funded their BLMIS accounts, Laurence

Apfelbaum was led to believe that BLMIS traded securities in a number of multi-national

companies, but was not told nor had an understanding of the location of the exchanges where

BLMIS traded those securities.  Defendants further respond that at the time her account was

created and funded, Emilie Apfelbaum was a minor and did not have any understanding of

securities transactions or stock exchanges, much less where BLMIS traded securities.

**Request No. 3**

> Admit that when Defendants created and funded their
> BLMIS accounts, Defendants did so with the intention of
> investing in United States securities.

**Response No. 3:**

Defendant Laurence Apfelbaum denies that at the time she opened her BLMIS

account she did so with the intention of investing in United States securities.  Instead, it was her

intent to invest with BLMIS and, while she understood that BLMIS' strategy in part involved the

purchase of securities in multi-national companies headquartered in the United States, she did

not have an understanding of the location of the securities of such companies.  Defendant Emilie

Apfelbaum responds that at the time her account was created and funded her BLMIS account she

was a minor and did not have any understanding of securities transactions or stock exchanges, much less where BLMIS invested in securities.

**Request No. 4**

> Admit that the Customer Agreements did not specify that the Customer Agreements would be governed by French law.

**Response No. 4**

Defendants admit that the express language of the Agreements that were signed with Mr. Madoff in 1995 in Paris do not state that they would be governed by French law. However, Defendants state that these Agreements were prepared in France and in French at the request of a French Family Court Judge and, although they do not say that French law governed, it was expressly understood by all parties that French law would govern since they understood that the law of France provided that agreements signed in France are to be governed by French law unless the agreement expressly provides that it will be governed by the law of a different country, especially when this is an agreement made between a professional and a customer at her domicile.

**Request No. 5**

> Admit that Defendants placed calls and/or sent faxes to BLMIS and/or Madoff.

**Response No. 5:**

Defendants admit that Laurence Apfelbaum on intermittent occasions placed calls to BLMIS and recalls sending the three faxes attached as exhibits to the Wang Declaration in the pending motion to dismiss, but except as so admitted denies placing other calls to BLMIS and has no recollection of sending other faxes. Defendants deny that Emilie Apfelbaum ever called or sent faxes to BLMIS and/or Madoff.

**Request No. 6**

> Admit that Defendants received calls and/or faxes from
> BLMIS and/or Madoff.

**Response No. 6:**

Defendants admit that Laurence Apfelbaum on intermittent occasions received

calls from BLMIS and recalls receiving the faxes attached as exhibits to the Wang Declaration in

the pending motion to dismiss, but except as so admitted denies receiving other calls from

BLMIS and has no recollection of receiving other faxes from BLMIS. Defendants deny that

Emilie Apfelbaum ever received any calls or faxes from BLMIS.

**Request No. 7**

> Admit that Defendants participated in the management and
> administration of their BLMIS accounts.

**Response No. 7:**

Defendants deny that they participated in the management and administration of

their BLMIS accounts.

**Request No. 8**

> Admit that Defendants corresponded with persons
> associated with BLMIS concerning investment strategies
> for Defendants' BLMIS holdings.

**Response No. 8:**

Defendants deny that they corresponded with persons associated with BLMIS

concerning investment strategies for Defendants' BLMIS holdings. Defendants specifically

deny that any of the documents attached to the Wang Declaration concern a correspondence

about investment strategies for their holdings, but instead the correspondence with Ms.

Apfelbaum attached as Exhibit E was only an attempt to explain information that Ms. Apfelbaum

needed in order to file French tax returns. With that exception, Defendants state that at no time

did they ever orally or in writing communicate with BLMIS regarding investment strategies.

**Request No. 9**

> Admit that Defendants contacted persons associated with
> BLMIS and proposed specific actions for BLMIS
> employees to take in the course of investing Defendants'
> BLMIS holdings.

**Response No. 9:**

Defendants deny that they contacted persons associated with BLMIS and

proposed specific actions for BLMIS employees to take in the course of investing their BLMIS

holdings and further state that Laurence Apfelbaum, as a psychologist, and Emilie Apfelbaum, as

a minor and then a student, had no competence, training, practical experience or desire to offer

any advice on the subject of investment strategies.

**Request No. 10**

> Admit that Laurence Apfelbaum requested withdrawals
> from the Accounts.

**Response No. 10:**

Defendants admit that Laurence Apfelbaum requested withdrawals from the

account referenced in the Trustee's Complaint as number 1FN076 primarily to pay French taxes,

from the account referenced in the Trustee's Complaint as number 1FN075 in order to pay

French taxes on behalf of her daughter Emilie Apfelbaum and from the account referenced in the

Trustee's Complaint as 1FR122 in order to pay taxes after the death of her mother Doris Igoin,

but denies requesting withdrawals from any other account and specifically denies knowing of

any other "Account" held for the her benefit or for the benefit of Emilie Apfelbaum or Doris

Igoin as the term "Account" is defined in the Trustee's requests.

**Request No. 11**

Admit that Defendants received the Transfers set forth in
Exhibit B to the complaint in this action.

**Response No. 11:**

Defendants deny that they ever received the monies withdrawn from the account

for the Estate of Doris Igoin as those monies were sent directly to the U.S. Treasury by way of an

attorney acting on behalf the Estate. Defendants Laurence Apfelbaum and Emilie Apfelbaum

further deny that they ever physically received the transfers set forth in Exhibit B. Instead, the

monies were sent to accounts at a French bank. All monies transferred from the Emilie

Apfelbaum BLMIS account were then sent to the French Fiscal Administration to pay French

taxes. The majority of monies transferred from the Laurence Apfelbaum BLMIS account were

similarly sent to the French Fiscal Administration to pay French taxes.

Dated:  February 1, 2013                              As to the Objections,

                                                     KELLEY DRYE & WARREN LLP

                                                     By: _____
                                                        Jonathan K. Cooperman
                                                        Katherine M. Sheridan
                                                        Attorneys for Defendants
                                                     101 Park Avenue
                                                     New York, New York 10178
                                                     (212) 808-7800

**VERIFICATION**

The undersigned, Laurence Apfelbaum declares under penalty of perjury that the foregoing responses are true to the best of her knowledge and belief.

Executed in Paris, France this 1st day of February, 2013.

_____
Laurence Apfelbaum