## EXHIBIT 10

[Draft of April 13, 2009]

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (this "Agreement"), dated as of April [●], 2009, is made by and among IRVING H. PICARD, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970 ("SIPA") of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and  OPTIMAL STRATEGIC U.S. EQUITY LIMITED, a Bahamas corporation ("SUS"), and OPTIMAL ARBITRAGE LIMITED, a Bahamas corporation ("Arbitrage"), on the other hand (each of the Trustee, SUS and Arbitrage, a "Party").

## BACKGROUND

A.    Bernard L. Madoff Investment Securities LLC ("BLMIS") was a registered broker-dealer and a member of the Securities Investor Protection Corporation ("SIPC").

B.    On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission filed a complaint in the United States District Court for the Southern District of New York against BLMIS and Bernard L. Madoff ("Madoff").  On December 12, 2008, the District Court entered an order which among other things appointed a receiver (the "Receiver") for the assets of BLMIS.

C.    On December 15, 2008, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.  On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding").  The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

D.    On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations, including inter alia securities fraud, investment adviser fraud, and mail and wire fraud.  At a plea hearing on March 12, 2009 in the case captioned United States v. Madoff, Case No. 09-CR-213(DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS.

E.    SUS and Arbitrage are trading companies that are owned by Optimal Multiadvisors Limited, which is a Bahamas multi-portfolio investment company and Standard Fund ("OML").  All of OML's ordinary voting shares are owned by Optimal Investment Services, S.A., a Swiss société anonyme ("OIS"), which is an indirect wholly-owned subsidiary of and Banco Santander, S.A., a [Spanish banking corporation] ("Santander").  Optimal Multiadvisors (Ireland) plc is an Irish public limited company authorized by the Irish Financial Services Regulatory Authority and constituted as an umbrella fund comprised of a number of segregated liability sub-funds ("OMI").  OIS owns 50% of the ordinary shares of OMI (the other

Confidential pursuant to June 6, 2011 Litigation Protective Order

OPT000031

2

50% of which are owned by an indirect subsidiary of Santander).  OIS acts as the investment manager [and investment advisor] of OMI and of OML.  OIS, OMI, OML, SUS and Arbitrage are referred to collectively as the "Optimal Companies".

F.    Investments in the funds operated by OMI and OML are represented by participating shares, which are held by numerous investors ("Investors"), many of whom may be customers of Santander or one or more of its affiliates.

G.    HSBC Securities Services (Ireland) Limited, an Irish limited liability company ("HSSI"), serves as administrator for OMI, OML, SUS and Arbitrage;  HSBC Institutional Trust Services (Ireland) Limited, an Irish limited liability company ("HITS"), serves as custodian for OMI, OML, SUS and Arbitrage.

H.    SUS (either directly or through a customer agreement between OML or its predecessor and BLMIS) was a customer of BLMIS and maintained a customer account (the "SUS Account") with BLMIS, commencing in January 1997.  Between then and the Filing Date, SUS had deposited into the SUS Account a total of $1,462,433,500 in excess of the amount of withdrawals that SUS had made from the account.  Among other withdrawals, SUS withdrew $150,000,000 from the account in November 2008, within 90 days before the Filing Date, but did not withdraw any other amount from the SUS Account after November 2002.  The amount of the SUS Account reflected on SUS's BLMIS account statement for the period ended November 30, 2008, which is the last available account statement, is $3,007,958,117.70, not including option positions.

I.    Arbitrage (either directly or through a customer agreement between OML or its predecessor and BLMIS) was a customer of BLMIS and maintained a customer account (the "Arbitrage Account") with BLMIS, commencing in February 1996.  Between then and the Filing Date, Arbitrage had withdrawn from the Arbitrage Account a total of [$90,000,000] in excess of the amount that Arbitrage had deposited into the Arbitrage Account.  Among other withdrawals, Arbitrage withdrew $100,000,000 from the Arbitrage Account in November 2008 and $25,000,000 in September 2008, both within 90 days before the Filing Date, and an additional $20,000,000 in October 2007 and $15,000,000 in February 2003, but did not withdraw any other amount from the Arbitrage Account after November 2002.  The amount of the Arbitrage Account reflected on Arbitrage's BLMIS account statement for the period ended November 30, 2008, which is the last available account statement, is $15,006,949.02, not including options positions.

J.    As a result of agreements between Santander or one or more of its affiliates and numerous former Investors in SUS who were private banking clients of Santander or its banking subsidiaries, Santander and some of its affiliates have succeeded to the interest of such former Investors in SUS.

K.    SUS and Arbitrage have asserted that they are each entitled to allowance of a customer claim in the BLMIS liquidation proceeding in an amount reflected on their respective BLMIS account statements for the period ended November 30, 2008.  The Trustee has disputed that SUS and Arbitrage are entitled to allowance of customer claims in the amounts reflected on their respective BLMIS account statements.

[[NYCORP:3137863v3:REMOTE_RLEVIN:04/13/09--10:41 p]]

Confidential pursuant to June 6, 2011 Litigation Protective Order

OPT000032

3

L.    The Trustee has advised the Optimal Companies of his position that only SUS and Arbitrage, as the direct customer account holders at BLMIS, are entitled to the allowance of customer claims or to the benefit of SIPC advances under section 9 of SIPA in the SIPA Proceeding on account of the SUS Account and the Arbitrage Account, respectively, and only upon compliance with the applicable provisions of SIPA and the Bankruptcy Code.

M.    The Trustee has asserted that SUS and Arbitrage are liable to the BLMIS estate under 11 U.S.C. §§ 547, 550 for the withdrawals that each of them received within the 90 days before the Filing Date.  The Trustee has also asserted that Arbitrage also may be liable to the BLMIS estate under 11 U.S.C. §§ 544(b), 550 and the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270 - 281) for $35,000,000, which Arbitrage withdrew in 2003 and 2007 (any claims under 11 U.S.C. §§ 542, 544, 547 or 550, "Avoiding Power Claims").  In connection therewith, the Trustee issued a subpoena to OML under Fed. R. Bankr. Proc. 2004 on February 27, 2009 (the "Subpoena"), seeking documents related to the SUS Account and the Arbitrage Account, among other things.

N.    SUS and Arbitrage have disputed any liability to the estate.  SUS and Arbitrage also have disputed that either of them is subject to the jurisdiction of the Bankruptcy Court under principles of United States law and that any judgment that the Trustee might obtain against either of them in the Bankruptcy Court would not be enforced against either of them by a court in The Bahamas, based on lack of jurisdiction over them in the United States.  SUS and Arbitrage also have disputed that OML is subject to the jurisdiction of the Bankruptcy Court for the purpose of enforcement of the Subpoena.

O.    The Trustee, on the one hand, and SUS and Arbitrage, on the other hand, wish to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation.

P.    As a condition to settling the disputes, which involves releasing claims against the Optimal Companies and their affiliates and the allowance of customer claims in favor of SUS and Arbitrage in the SIPA Proceeding, the Trustee conducted a confirmatory investigation, including review of documents the Optimal Companies and their affiliates made available to him on a confidential basis, and concluded that the Optimal Companies and its affiliates were not in any way complicit in the fraud that BLMIS or Madoff perpetrated on its customers, did not have any knowledge of the fraud or any reason to know or suspect that BLMIS or Madoff was conducting a fraudulent operation and conducted adequate due diligence in their dealings with BLMIS to assure themselves within reason that BLMIS and Madoff were not engaging in fraud with respect to its customer accounts and that the conduct, acts and omissions of the Optimal Companies and their affiliates do not provide any ground to assert any claims against the Optimal Companies or any of their affiliates (other than Avoiding Power Claims), or to disallow any claim that SUS or Arbitrage may have against BLMIS or its estate.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Trustee, SUS and Arbitrage agree:

[[NYCORP:3137863v3:REMOTE_RLEVIN:04/13/09--10:41 p]]

Confidential pursuant to June 6, 2011 Litigation Protective Order

OPT000033

4

## AGREEMENT

1.    <u>SUS and Arbitrage Agreement to Bankruptcy Court Jurisdiction</u>.  For the purpose of this Agreement only, SUS and Arbitrage agree that the agreements with BLMIS that they each signed in connection with the SUS Account and the Arbitrage Account respectively submit them to the jurisdiction of the Bankruptcy Court for the purpose of the SIPA Proceeding and any avoiding power action that the Trustee may bring against them under section 544, 547 or 550 of the Bankruptcy Code.  SUS's and Arbitrage's agreement to Bankruptcy Court jurisdiction under this paragraph does not constitute consent by any other Optimal Company or Santander Company to the Bankruptcy Court's jurisdiction or an agreement that any of them is subject to the Bankruptcy Court's jurisdiction.

2.    <u>SUS Payment to Trustee</u>.  SUS shall pay the Trustee the sum of $127,500,000 in full and final settlement of all Avoiding Power Claims and other claims of the Trustee or the BLMIS estate against SUS .

3.    <u>Allowance of SUS Customer Claim</u>.  SUS's customer claim in the BLMIS liquidation proceeding shall be allowed in the amount of $1,589,933,500, without the need for SUS's filing of a customer claim in addition to this Agreement, and shall be entitled to the full benefit of SIPC customer advances under section 9 of SIPA.  The Bankruptcy Court's order approving this Agreement shall provide for the allowance of SUS's customer claim as provided in this paragraph.  The Trustee shall make a distribution to SUS on account of its allowed claim in the full amount of SIPC customer advances under section 9 of SIPA.

4.    <u>Arbitrage Payment to Trustee</u>.  Arbitrage shall pay the Trustee the sum of $106,250,000 in full and final settlement of all Avoiding Power Claims and other claims of the Trustee or the BLMIS estate against Arbitrage.

5.    <u>Allowance of Arbitrage Customer Claim</u>.  Arbitrage's customer claim in the BLMIS liquidation proceeding shall be allowed in the amount of [$16,250,000], without the need for Arbitrage's filing of a customer claim in addition to this Agreement, and shall be entitled to the full benefit of SIPC customer advances under section 9 of SIPA.  The Bankruptcy Court's order approving this Agreement shall provide for the allowance of Arbitrage's customer claim as provided in this paragraph.  The Trustee shall make a distribution to Arbitrage on account of its allowed claim in the full amount of SIPC customer advances under section 9 of SIPA.

6.    <u>Filing of Customer Claims</u>.  SUS and Arbitrage agree that only SUS and Arbitrage (as the only BLMIS customer account holders among the Optimal Companies and its affiliates and as investment funds not acting as agents for the Investors) may file customer claims in the SIPA Proceedings on account of the SUS Account and the Arbitrage Account.

7.    <u>Withdrawal of Subpoena</u>.  The Trustee shall withdraw the Subpoena and shall not to seek any other discovery, by subpoena or otherwise, from any of the Optimal Companies or any of the Optimal Releasees (as defined below) for anything relating to the SUS Account or the Arbitrage Account or the relationship between the Optimal Companies or its affiliates and BLMIS or Madoff.

[[NYCORP:3137863v3:REMOTE_RLEVIN:04/13/09--10:41 p]]

Confidential pursuant to June 6, 2011 Litigation Protective Order

OPT000034

5

8.    <u>Release of Custodial Accounts</u>.  The Trustee shall advise HSSI and HITS that the Trustee and the BLMIS estate do not assert any interest in any of the funds or accounts that HSSI or HITS holds or controls for any of the Optimal Companies and shall not in the future assert any interest in any such funds.

9.    <u>Release</u>.  [Upon SUS's and Arbitrage's payments of the amounts required to be paid under paragraphs 2 and 4 of this Agreement, in consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee does hereby release, remise and forever discharge the Optimal Companies and each of their respective past or present officers, directors, employees, agents, legal representatives, privies, representatives, accountants, attorneys and each of their respective past or present direct or indirect stockholders, affiliates, limited partners, investors or other equity holders and each of their successors, assigns and transferees (the "Optimal Releasees"), from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee against any of the Optimal Releasees and that are both (a) based on, arise out of or relate in any way to the affairs of BLMIS and (b) based on, arise out of or relate in any way the Optimal Releasee's actions, statements, conduct, or omissions in connection with one or more of the Optimal Companies.]

10.    <u>Timing of Actions</u>.   SUS, Arbitrage and the Trustee shall take and complete the actions required under paragraphs 3, 5, 7 and 8 of this Agreement within 10 calendar days after the date on which this Agreement becomes effective.  SUS and Arbitrage shall take and complete the actions required under paragraphs 2 and 4 of this Agreement within 10 calendar days after the date on which HSSI and HITS make funds of SUS and Arbitrage, respectively, available to make the payments to the Trustee.

11.    <u>Bankruptcy Court Approval; Effective Date; Termination</u>.  This Agreement is subject to, and shall become effective and binding on the Parties upon and only upon, the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review or rehearing.  The form of the approval order shall be subject to SUS's and Arbitrage's approval.  The Trustee shall use his best efforts to obtain such approval as promptly as practicable after the date of this Agreement.  The Trustee shall provide SUS and Arbitrage a draft of any motion to the Bankruptcy Court for approval of this Agreement, which shall be subject to SUS's and Arbitrage's reasonable approval.  If this Agreement has not become effective as provided in this paragraph within 45 days after the date of this Agreement (or within such additional time as SUS and Arbitrage permit), then (a) this Agreement (other than this paragraph and paragraphs 20 and 21 of this Agreement) shall terminate and be void, (b) all of the statements, admissions, consents and agreements contained in the Agreement (other than this paragraph and paragraphs 20 and 21 of this Agreement) shall be void and (c) neither the Trustee nor any of the Optimal Companies or its affiliates may use or rely on any such statement,

[[NYCORP:3137863v3:REMOTE_RLEVIN:04/13/09--10:41 p]]

Confidential pursuant to June 6, 2011 Litigation Protective Order

OPT000035

6

admission, consent or agreement in any public statement or litigation involving the SIPA Proceedings, any case or proceeding relating to the SIPA Proceeding or any case or proceeding relating to BLMIS or Madoff. There shall be no other basis for termination of this Agreement by either Party.

12.   <u>Equal Treatment for SUS and Arbitrage with Other Similar Customers</u>. [If:

(a) a former BLMIS customer (the "<u>Customer</u>) had an account at BLMIS with a balance stated on the Customer's BLMIS-provided account statement in excess of $100 million at any time;

(b) the Customer received transfers from BLMIS that are in excess of $25 million in the aggregate either as fictitious profits (calculated on a cash in-cash out basis) or after September 11, 2008 and that are recoverable under Bankruptcy Code section 544, 547, 548 or 550 (the "<u>Total Recoverable Amount</u>" of the Customer);

(c) the Trustee has or makes a claim against the Customer for any amounts that the Customer received from BLMIS other than the Total Recoverable Amount and the amount of the Trustee's claim for such other amounts is less than 50% of the Total Recoverable Amount;

(d) the Customer, as of December 10, 2008, had sufficient assets to pay the Total Recoverable Amount to the Trustee;

(e) the Customer pays the Trustee an amount (the "<u>Settlement Amount</u>") in settlement of the Trustee's claim for recovery of all or any portion of the Total Recoverable Amount, under a settlement made before the commencement of a trial or a hearing on a contested motion for summary judgment;

(f) the percentage ("<u>Other Settlement Percentage</u>") of the Total Recoverable Amount that the Settlement Amount represents is less than 85%; and

(g) the Customer's jurisdictional contacts with the United States are less than SUS's or Arbitrage's contacts, as determined in the Trustee's reasonable judgment;

then the Trustee shall return to SUS and to Arbitrage a portion of SUS's and Arbitrage's payments made under this Agreement so that the net amount that the SUS and Arbitrage will have paid (net after all such returns) as a percentage of $150,000,000 and of $125,000,000, respectively, is equal to the Other Settlement Percentage, and the allowed amounts of SUS's and Arbitrage's customer claims shall be reduced by the amount that the Trustee returns to SUS and Arbitrage, respectively. This paragraph may be applied more than once if the circumstances set forth herein are satisfied more than once.]

13.   <u>SUS and Arbitrage Authority</u>. SUS and Arbitrage represent and warrant to the Trustee as of the date hereof that each of them is duly organized, validly existing and in good

[[NYCORP:3137863v3:REMOTE_RLEVIN:04/13/09--10:41 p]]

Confidential pursuant to June 6, 2011 Litigation Protective Order

OPT000036

standing under the laws of its jurisdiction of formation and that each of them has the full power, authority and legal right to execute and deliver, and to perform its respective obligations under, this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

14.    Further Assurances.  The Trustee, SUS and Arbitrage shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

15.    Entire Agreement.  This Agreement and any confidentiality agreement between the Trustee and any of the Optimal Companies constitute the entire agreement and understanding between and among the Parties and supersede all prior agreements, representations and understandings concerning the subject matter hereof.

16.    Amendments, Waiver.  This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

17.    Assignability.  No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

18.    Successors Bound.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

19.    No Third Party Beneficiary.  Except as expressly provided in paragraphs 7 and 10 of this Agreement, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

20.    Applicable Law.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

21.    Exclusive Jurisdiction.  The Parties agree that any action for breach or enforcement of this Agreement may be brought only in the Bankruptcy Court.  No Party shall bring, institute, prosecute or maintain any action pertaining to the enforcement of any provision of this Agreement in any court other than the Bankruptcy Court.

22.    Captions.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.

23.    Counterparts; Electronic Copy of Signatures.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

[[NYCORP:3137863v3:REMOTE_RLEVIN:04/13/09--10:41 p]]

8

*[Signature page follows]*

[[NYCORP:3137863v3:REMOTE_RLEVIN:04/13/09--10:41 p]]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, Trustee

_____

OPTIMAL STRATEGIC U.S. EQUITY FUND LIMITED

By: _____
    Name:
    Title:

OPTIMAL ARBITRAGE LIMITED

By: _____
    Name:
    Title:

BANCO SANTANDER, S.A.

By: _____
    Name:
    Title:

Confidential pursuant to June 6, 2011 Litigation Protective Order

OPT000039