# **EXHIBIT 25**

**From:** Richard Levin <RLevin@cravath.com>
**Sent:** 5/11/2009 3:56:40 PM +00:00
**To:** "Lucchesi, Thomas" <BH/US/BAKER & HOSTETLER RECIPIENTS/CLEVELAND/LUCCHESI>
**CC:** "Hirschfield, Marc E." <BH/NEW YORK/RECIPIENTS/MHIRSCHFIELD>; Ronald Rolfe <RRolfe@cravath.com>
**Subject:** RE: FW: Optimal Settlement

Tom:

Our client is contacting Matt directly now.

On the MFN, as I think I told Marc, we do not have client sign-off on this new form yet. I would like to discuss with you any issues or revisions you have with it, and then I will send it to our clients for review.

Ron and I will be at your office around 4:00 this afternoon.

Rich

---

**"Lucchesi, Thomas"** <tlucchesi@bakerlaw.com>

05/11/2009 10:55 AM

To "Richard Levin" <RLevin@cravath.com>
cc "Hirschfield, Marc E." <mhirschfield@bakerlaw.com>, "Ronald Rolfe" <RRolfe@cravath.com>
Subject RE: FW: Optimal Settlement

Rich:

Below is the contact information for the head of the forensic team that has reviewed the Optimal accounts. Although Matt was prepared to come our meeting this afternoon, I have asked him to await contact from your people in Geneva to reconcile the account information. Matt is easiest to reach in his cell phone and will be expecting a call regarding this matter.

Matt Greenblatt
FTI Consulting
Cell phone 917.232.8499

I have reviewed your revisions to the Agreement, including the new MFN provision, and believe we are close to concluding our discussions. Thanks for taking the lead in the revision process. We'll see you this afternoon.

Tom

Confidential pursuant to June 6, 2011 Litigation Protective Order OPT000204

**From:** Richard Levin [mailto:RLevin@cravath.com]
**Sent:** Sunday, May 10, 2009 11:08 PM
**To:** Lucchesi, Thomas
**Cc:** Hirschfield, Marc E.; Ronald Rolfe
**Subject:** Re: FW: Optimal Settlement

Tom:

In re-reviewing your email, I noticed your offer to have your forensic people at our meeting on Monday afternoon. I'm not sure that will be either necessary or helpful until our people in Geneva have had an opportunity to try to reconcile the amounts. If there is some other purpose for their attendance, however, we have no objection.

Rich

**"Lucchesi, Thomas"**
**<tlucchesi@bakerlaw.com>**

05/08/2009 02:43 PM

To "Richard Levin" <RLevin@cravath.com>, "Ronald Rolfe" <RRolfe@cravath.com>
cc "Hirschfield, Marc E." <mhirschfield@bakerlaw.com>, "Cymrot, Mark" <MCymrot@bakerlaw.com>
Subject FW: Optimal Settlement

Rich:

Below is the response from our investigators to the questions in your email from earlier today. Rather than rewrite the information, I am merely forwarding it to you pursuant to our understanding regarding confidentiality. The "above the line" material is taken from your email. Below the line is the response. The attachments are, I trust, self-explanatory.

Note in the comments to the last attachment, the disclosure of an additional "surprise" that, in this case works to your benefit. I trust you don't oppose me bringing the surprise to your attention.

In the interest of moving our discussion forward, I have asked our forensic guys to be present at our meeting on Monday.

Confidential pursuant to June 6, 2011 Litigation Protective Order     OPT000205

Tom

**[1]** On a cash-in, cash out basis, we did not pick up the tax numbers, because the funds did not receive any funds.  Can you provide the details of the tax amounts? Dates, amounts, etc.?  And can you provide some form of confirmation that BLMIS actually paid those amounts to the IRS on behalf of SUS and Arbitrage?  We are checking our records now and will reconcile with what you send us.

We agree that the options amount affect what is shown on Nov. 30, 2008 account statement and should not affect the principal balance.

**[2]** Our amounts for Arbitrage are off by $250,015, an amount that is probably not worth auditing.  I would suggest we compromise by splitting the difference.

**[3]** Our amounts fro SUS are off by a much larger amount.   Our cash-in, cash-out analysis, not including the tax payments, shows $1,462,433,500; Yours shows $1,369,520,900, for a difference of $92,912,600.  Can you provide the basis on which you made the calculation -- was it account statements, deposit and withrawal records, or something else?  Can you provide the accounting?  We are going through the same exercise, and we can then compare results.

**[1] See Attachment A** for (a) the summary of the Tax Withholding amounts, which were obtained directly from the customer statements for the period from December 1995 to November 2008 for each of the two accounts; (b) the breakout of the 90-day amounts and (c) the evidence that BLMIS wired the aggregate amount for all taxes withheld from the foreign feeder funds in one lump sum early the subsequent month (Sept, Oct and Nov withholdings provided as an example – in total, BLMIS wired to the IRS: $18,340,519.28 on October 2, 2008 for the September withholdings; $2,111,999.90 on November 4, 2008 for the October withholdings; and $926.95 on December 3, 2008 for the November withholdings for all foreign feeders, of which Optimal's SUS and Arbitrage were a subset)

**[2] See Attachment B** for the summary of all additions and withdrawals in the Arbitrage fund which were obtained directly from the monthly customer statements for the period from December 1995 through November 2008 and from BLMIS's "checkbook file" for the period from December 1, 2008 through December 11, 2008 – if necessary we can provide each and every monthly statement to demonstrate the line item which will substantiate the addition or withdrawal included on our summary analysis.

**[3] See Attachment C** for the summary of all additions and withdrawals in the SUS fund which were obtained directly from the monthly customer statements for the period from December 1995 through November 2008 – if necessary we can provide each and every monthly statement to demonstrate the line item which will substantiate the addition or withdrawal included on our summary analysis.  **The reconciliation conducted has uncovered one deposit on 9/1/98 that was incorrectly listed as a withdrawal in our initial schedule in the amount of $38,500,000, which has resulted in an adjustment to our number.  With the change made, our revised Net Cash position is $1,446,520,900 and there is now a difference of $15,912,600, which I can't reconcile.  If they send us their summary of the ins and outs, we can probably isolate the bulk of if not all of the difference like we did with the Optimal Arbitrage fund.**

Confidential pursuant to June 6, 2011 Litigation Protective Order

OPT000206

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law.  If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

[attachment "A - Summary of Withholding Taxes and Proof of Payment.pdf" deleted by Richard Levin/NYC/Cravath] [attachment "B - Optimal SUS Cash Summary - excluding taxes.pdf" deleted by Richard Levin/NYC/Cravath] [attachment "C - Optimal Arbitrage Cash Summary - excluding taxes.pdf" deleted by Richard Levin/NYC/Cravath]

```
This e-mail is confidential and may be privileged. Use or
disclosure of it by anyone other than a designated
addressee is unauthorized. If you are not an intended
recipient, please delete this e-mail from the computer on
which you received it.
```

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law.  If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result

of e-mail transmission.

---

```
This e-mail is confidential and may be privileged. Use or disclosure of
it by anyone other than a designated addressee is unauthorized. If you
are not an intended recipient, please delete this e-mail from the
computer on which you received it.ne
```

Confidential pursuant to June 6, 2011 Litigation Protective Order                         OPT000208