# **EXHIBIT 32**

| | |
|---|---|
| BAKER & HOSTETLER LLP<br>45 Rockefeller Plaza<br>New York, NY 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Deborah R. Renner<br>Keith R. Murphy<br>Seanna R. Brown | Hearing Date: February 4, 2014, 10:00 a.m. (EST) |

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>    Plaintiff,<br> v.<br><br>JPMORGAN CHASE CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES LTD.,<br><br>    Defendants. | Adv. Pro. No. 10-4932 (SMB) |

**REPLY TO LIMITED RESPONSE TO MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING SETTLEMENT OF AVOIDANCE CLAIMS BY AND BETWEEN THE TRUSTEE AND JPMORGAN**

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through the Trustee's undersigned counsel, submits this reply ("Reply") in further support of the Trustee's Motion[1] seeking entry of an order, pursuant to section 105(a) of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement ("Settlement") of the Trustee's avoidance claims, the terms and conditions of which are set forth in the Settlement Agreement (the "Agreement") dated January 6, 2014, by and among the Trustee and JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan" or "Defendants") (the Trustee and each of the Defendants a "Party" and collectively, the "Parties"), and in opposition to the limited response ("Optimal Response") filed by SPV Optimal SUS Ltd. ("Optimal"), ECF No. 42, the Trustee respectfully represents as follows:

**REPLY**

1. The Trustee and Optimal agree that the Court should approve the Agreement and that the Trustee should receive the $325 million settlement payment (the "Settlement Payment") for eventual distribution to BLMIS customers with allowed claims. But Optimal argues that under the terms of the settlement agreement it reached with the Trustee in 2009 (the "Optimal

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Trustee's Motion.

Settlement Agreement), ECF No. 42, Exhibit A; *SIPC v. BLMIS*, 08-1789, ECF No. 219, it is entitled to a net refund of $7,439,482.40 from the BLMIS estate pursuant to the "most favored nations" clause set forth in paragraph 13 of the Optimal Settlement Agreement. Optimal is wrong. In order for that provision to be operative here, the Trustee's instant settlements with JPMorgan must be similar to the one that he reached with Optimal in 2009, which they are not. Accordingly, the "most favored nation" clause is not implicated and Optimal is not entitled to a refund under the Optimal Settlement Agreement.

**The Optimal Settlement**

2. The Trustee settled his claims against Optimal in June 2009. This was the first significant settlement achieved by the Trustee in the BLMIS liquidation. The settlement resulted in the return of 85% of the preferential transfers received by Optimal in the 90-day period preceding the Filing Date, claims to which Optimal had few, if any, defenses. *See* Order Approving an Agreement By and Among the Trustee and Optimal Strategic U.S. Equity Limited and Optimal Arbitrage Limited, *SIPC v. BLMIS*, 08-1789 (Bankr. S.D.N.Y. June 16, 2009), ECF No. 270.

3. The Trustee's settlement with Optimal contained a "most favored nation" clause, which requires the Trustee to return a certain amount of the consideration paid by Optimal if the Trustee settles avoidance claims for less than 85% only, as Optimal recognizes in its Response, when the circumstances "are similar to the circumstances underlying [the] Agreement." *See* Optimal Response at 3; Exhibit A ¶ 13.

**The Trustee's Settlements with JPMorgan as Part of a Global Resolution Do Not Present "Similar Circumstances" to the Optimal Settlement**

4. As has been reported widely, JPMorgan reached a global resolution of claims relating to Madoff/BLMIS, including those with the Trustee on his avoidance and common law

2

claims that are the subject of separate Motions pending before this Court, with the Class Representatives on the common law class claims, and with the Government on forfeiture claims and criminal penalties. If approved, these separate but contemporaneous settlements will result in over $2.2 billion flowing to Madoff victims, a historic event for BLMIS victims who have not yet been made whole.

5. In reaching a compromise of his avoidance and common law claims, the Trustee engaged in complex, multi-party settlement discussions with JPMorgan and the Class Representatives in an effort to provide the fullest relief to victims with the least litigation and competition between the interested parties. While the Government settlement was separately negotiated, a concerted effort was made to ensure that all three settlements could be reached simultaneously, requiring the cooperation and coordination of the numerous parties involved. As a result, JPMorgan reached a global resolution through three separate but related settlements.

6. The compromises reached between JPMorgan and the Trustee settled both his avoidance and common law claims, which were asserted in a single complaint in December 2010, as amended. The Trustee alleged claims against JPMorgan for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, conversion, unjust enrichment, and contribution. As alleged against JPMorgan, these claims were premised upon JPMorgan's unique relationship to BLMIS as his banker in maintaining the "703" Account, the account through which the Ponzi monies flowed. The dismissal of the Trustee's common law claims by the District Court was upheld by the Second Circuit. The Trustee filed a petition for writ of certiorari before the Supreme Court on this ruling and as such, the Trustee's common law claims have not yet been finally extinguished.

3

7. Because the common law claims asserted by the Class Representatives (brought after the Trustee's common law claims were dismissed by the District Court) mirrored those asserted by the Trustee, a multi-party settlement was negotiated as the most efficient vehicle to provide relief on the common law claims to BLMIS customers. The consideration received by the Trustee for the compromise of his common law claims was $218 million, to be shared with the Class Representatives. That amount is to be distributed through the class action and is to be paid to the same general class of "net loser" customers that are paid by the Trustee through the SIPA proceeding.

8. The Trustee and JPMorgan also reached a compromise on the Trustee's avoidance claims. Because JPMorgan was not a BLMIS customer, but was instead a banker, lender, and indirect investor, the nature of the Trustee's avoidance claims against JPMorgan differs from the vast majority of the other 1,000 avoidance actions, in which the Trustee sued BLMIS customers for the return of principal and/or fictitious profits withdrawals from their BLMIS accounts. Here, JPMorgan made two loans made by JPMorgan to BLMIS in 2005 and 2006 that the Trustee sought to recover as avoidable transfers. The Trustee also sought to recover the banking fees charged by JPMorgan for its maintenance of the "703" Account through which all of the Ponzi monies flowed. The facts underlying these avoidance claims are unique to JPMorgan and present their own specific defenses. Finally, the Trustee sought to recover certain subsequent transfers made to JPMorgan relating to its investments in certain structured products. The Trustee sought approximately $425 million in total on these avoidance claims and JPMorgan agreed to pay $325 million to the Trustee in compromise.

9. The "most favored nations" clause is not triggered by this Settlement because circumstances surrounding the Optimal Settlement are not similar to those presented here. The

4

Optimal Settlement was a simple bilateral negotiation between the Trustee and Optimal regarding straightforward preference claims under section 547 of the Bankruptcy Code, which arose from withdrawals made by Optimal from its BLMIS accounts. The JPMorgan settlements entered into by the Trustee could not be more different. They involved multi-party negotiations on the Trustee's common law and avoidance claims, as well as class action claims, all of which raised factual and legal issues unique to JPMorgan.

10. For instance, of the $425 million sought by the Trustee under the Bankruptcy Code, approximately $149 million related to the avoidance of the repayment of two loans made by JPMorgan to BLMIS totaling $145 million, and interest payments of approximately $3.5 million. As a factual matter, these claims are different than the preference claims that arose when Optimal withdrew funds from its BLMIS accounts. As a legal matter, because the success of these claims ultimately hinges on the conduct and alleged lack of good faith on the part of JPMorgan, as opposed to the preference claims against Optimal, it is important to note that the evidentiary record relating to claims against JPMorgan is not as developed at the time of these loan-related transfers in 2005 and 2006 as compared to the time leading up to Fall 2008, presenting far different litigation risks than Optimal.

11. Moreover, the loans presented specific defenses not available to Optimal or to other avoidance defendants against whom the Trustee is seeking recovery of transfers of principal and fictitious profits from BLMIS accounts. As JPMorgan argued to the District Court in its motion to dismiss the Trustee's amended complaint, "(i) the repayment of the loan constituted an act of setoff rather than a "transfer" subject to avoidance; (ii) the repayment of a secured loan is not avoidable; and (iii) under the Second Circuit's decision in *Sharp International*, the repayment of any loan is not avoidable absent participation by the creditor in

5

the debtor's fraud." *See* Opening Brief in Support of JPMorgan's Motion to Dismiss the Trustee's Amended Complaint at 68, No. 11-cv-913 (S.D.N.Y. August 1, 2011), ECF No. 57. JPMorgan also argued that BLMIS's obligations to repay the loan and BLMIS's grants of liens were not avoidable as intentional fraudulent conveyances under section 276 of the New York Debtor and Creditor Law. *Id.* at 72. These defenses, specific to avoidance claims on the loans, increase the litigation risk to the Trustee on the ability to recover these transfers and are far more complex than the defenses available to Optimal on preference claims.

12. Similarly, the claim for recovery of the banking fees is unique to the Trustee's action against JPMorgan, which served as banker to BLMIS. While the fees represented a small amount of the total sought by the Trustee from JPMorgan, the claim is meaningful to the BLMIS Estate in that the fees were charged to maintain the 703 Account through which all the Ponzi monies flowed. No other avoidance action brought by the Trustee presents a similar claim.

13. Nor are the Trustee's remaining claims similar to those underlying the Optimal Settlement. The balance of the Trustee's avoidance demand amount against JPMorgan relates to subsequent transfer claims totaling about $276 million. Optimal suggests that because the subsequent transfers were requested and received by JPMorgan within 90 days of the Filing Date, these subsequent transfer claims are similar to the preference claims in Optimal. *See* Optimal Response at 8. But any studied analysis of the claims shows that is not so. In order to recover the subsequent transfers from JPMorgan at trial, the Trustee would have to prove the avoidability of the transfers from BLMIS to both the Fairfield Funds and Herald Fund s.p.c. ("Herald"), from whom JPMorgan subsequently received the transfers. In light of the status of the litigations on the initial transfers to the Fairfield Funds (settled) and Herald (in litigation), JPMorgan, as subsequent transferee, would have all of the defenses available to the initial

6

transferees, in addition to its own defenses as subsequent transferee.[2] In essence, the Trustee would have to put on a "case within a case" regarding the avoidability of the initial transfers to the Fairfield Funds and Herald, as well as a trial on the recoverability of the transfers from JPMorgan. To suggest that there is no difference between a direct preference claim against a BLMIS accountholder and a claim against an indirect transferee ignores the significant evidentiary and other legal burdens presented by section 550 claims.

14. Finally, the Trustee's common law claims are not derived from the Bankruptcy Code, and as such, are not similar to the avoidance claims in Optimal. That the $218 million payment settling the Trustee and the Class Representatives' common law claims is being distributed through the class action does not diminish the fact that the Trustee received consideration for the compromise of his claims. The compromise of the Trustee's common law claims was part and parcel of the negotiations to settle the Trustee's avoidance claims and must be evaluated when considering these simultaneous settlements and their benefits to the BLMIS estate and its customers.

15. To apply an 85% benchmark to settlements of "avoidance claims" regardless of the nature of the specific claims asserted, as Optimal urges here, ignores the factual and legal differences between the Trustee's avoidance claims against JPMorgan and the more routine avoidance claims he has brought in other cases, including Optimal. The settlements of the Trustee's avoidance and common law claims were part of a larger, global resolution that will result in over $2 billion flowing to Madoff victims. The Trustee took into account the total amount of relief provided by these separate settlements when determining whether to

---

[2] The law on the good faith defense in particular has been in flux since the time of the Optimal settlement. *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011) (requiring willful blindness rather than inquiry notice to recover on actual fraud claims).

7

compromise his claims. The fact that the JPMorgan settlement funds are being distributed through three different vehicles is not dispositive here where the funds are all going to victims. These settlements represent significant recoveries for BLMIS customers and were arrived at by complex negotiations between and among multiple parties with a variety of factual and legal considerations unique to the JPMorgan litigation.

16. Moreover, the factual and legal issues specific to the Trustee's avoidance claims asserted against JPMorgan justify the settlement percentage that the Trustee achieved. The "most favored nations" clause was not intended to capture every single case brought by the Trustee merely because the claims arose under the Bankruptcy Code. The claims here present circumstances far different than the simple preference claims settled between the Trustee and Optimal. Accordingly, the "most favored nations" clause should not apply and Optimal is not entitled to any refund under the Optimal Settlement Agreement.

8

WHEREFORE, the Trustee respectfully requests that the Court deny the relief sought in the Optimal Response and enter an order substantially in the form of Exhibit B to the Motion granting the relief requested therein.

                                        Respectfully submitted,

Dated: January 31, 2014             /s/ David J. Sheehan
       New York, New York           Baker & Hostetler LLP
                                      45 Rockefeller Plaza
                                      New York, New York 10111
                                      Telephone: (212) 589-4200
                                      Facsimile: (212) 589-4201
                                      David J. Sheehan
                                      Email: dsheehan@bakerlaw.com
                                      Deborah R. Renner
                                      Email: drenner@bakerlaw.com
                                      Keith R. Murphy
                                      Email: kmurphy@bakerlaw.com
                                      Seanna R. Brown
                                      Email: sbrown@bakerlaw.com

                                      *Attorneys for Irving H. Picard, Trustee for the*
                                      *Substantively Consolidated SIPA Liquidation*
                                      *of Bernard L. Madoff Investment Securities*
                                      *LLC and the Estate of Bernard L. Madoff*

9