## <u>Exhibit B</u>

**Transcript of the Deposition of Richard Levin, Esq. taken on May 16, 2014**

**Picard v. JPMorgan**                          **Richard Levine  5-16-14**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------x

SECURITIES INVESTOR PROTECTION

CORPORATION,                         No. 08–01789(SMB)

          Plaintiff–Applicant,

     v.

BERNARD L. MADOFF INVESTMENT

SECURITIES LLC,

          Defendant.

----------------------------------x

In Re:

BERNARD L. MADOFF,

          Debtor.

----------------------------------x

IRVING H. PICARD, Trustee for the    Adv.Pro.No.

Substantively Consolidated SIPA      10–4932(SMB)

Liquidation of Bernard L. Madoff

Investment Securities LLC and

Bernard L. Madoff,

          Plaintiff,

          v.

JPMORGAN CHASE CO., JPMORGAN CHASE

BANK, N.A., J.P. MORGAN SECURITIES

LLC and J.P. MORGAN SECURITIES LTD.,

          Defendants.

----------------------------------x

Deposition of:

RICHARD LEVIN, ESQ.

May 16, 2014

**BENDISH REPORTING, INC.**

**877.404.2193**

2

1          DEPOSITION of RICHARD LEVIN, ESQ., as

2     reported by NANCY C. BENDISH, Certified Court

3     Reporter, RMR, CRR and Notary Public of the States

4     of New York and New Jersey, at the offices of BAKER

5     HOSTETLER, 45 Rockefeller Plaza, New York,

6     New York on Friday, May 16, 2014, commencing at

7     11:06 a.m.

8

9

10     A P P E A R A N C E S:

11

12          BAKER HOSTETLER, LLP
            45 Rockefeller Plaza
            New York, New York  10111

13          BY:  DAVID J. SHEEHAN, ESQ.
                 SEANNA BROWN, ESQ.

14               MARC E. HIRSCHFIELD, ESQ.
            For Irving H. Picard, Trustee

15          for the Liquidation of BLMIS

16

17          CRAVATH, SWAINE & MOORE, LLP
            Worldwide Plaza
            825 Eighth Avenue

18          New York, New York  10019
            BY:  DAVID GREENWALD, ESQ.

19               YAW A. ANIM, ESQ.
            For Optimal Funds

20

21          O'MELVENY & MYERS, LLP
            Times Square Tower, 7 Times Square

22          New York, New York  10036
            BY:  EMILY R. CHEPIGA, ESQ.

23          For Solus Recovery Fund

24

25

**Picard v. JPMorgan**                    **Richard Levine   5-16-14**

3

1                        **I N D E X**

2    **WITNESS**                              **PAGE**

3

     **RICHARD LEVIN, ESQ.**

4

        **Examination by Mr. Sheehan**              **4**

5

6

7

8

9

10

11

12                        **E X H I B I T S**

13   **IDENT.**            **DESCRIPTION**              **PAGE**

14

     **T-1**    Limited Response of SPV Optimal SUS Ltd

15          to the Proposed Settlement Agreement

            between the Trustee and JPMorgan

16          Chase & Co., et al.                    25

17   **T-2**    Draft Settlement Agreement, 4/13/09.    43

18   **T-3**    Draft Settlement Agreement, 5/04/09.    45

19   **T-4**    Emails and Settlement Agreement.        46

20   **T-5**    Declaration of Richard Levin.          63

21

22

23

24

25

**Picard v. JPMorgan**                                    **Richard Levine  5-16-14**

4

1    R I C H A R D   B.   L E V I N, ESQ., sworn.

2    EXAMINATION BY MR. SHEEHAN:

3         Q.        Good morning, Mr. Levin.  How are you

4    today?

5         A.        Good morning, Mr. Sheehan.  I'm fine,

6    and you?

7         Q.        Very well, thank you very much.

8         A.        Glad to hear.

9         Q.        By whom are you employed?

10        A.        I'm not exactly employed.  I'm a

11   partner in Cravath Swaine & Moore, LLP.

12        Q.        So you're a shareholder?

13        A.        No, I'm a partner.

14        Q.        Partner.

15        A.        So I don't consider myself employed

16   by them.  But I am a partner in that firm.

17        Q.        And how long have you been a partner?

18        A.        Just under seven years.

19        Q.        And where were you before you were

20   with Cravath?

21        A.        Skadden Arps Slate Meagher & Flom,

22   LLP.

23        Q.        And how long were you there?

24        A.        Ten years.  Just under ten years.

25        Q.        And in those prior 16 years, what was

5

1    your major area of practice?

2          A.        I'm sorry, in those prior --

3          Q.        16 years working at Skadden and --

4          A.        Not prior to that, okay.

5                    Bankruptcy and restructure.

6    Creditors' rights, insolvency.

7          Q.        Now, did you have anything to do with

8    the writing of the Bankruptcy Code?

9          A.        I did.

10         Q.        And what did you do?

11         A.        I was a member of the staff of the

12   House Judiciary Committee Subcommittee on Civil and

13   Constitutional Rights from 1975 to 1978.  My

14   principal work for the almost three years that I was

15   there was as the majority staff on the writing of

16   the Bankruptcy Code.  And I was the principal

17   drafter, but it was a bipartisan effort and there

18   was a minority counsel who worked -- he and I worked

19   very closely together and we drafted and edited each

20   other's work.

21         Q.        Would it be a fair statement that you

22   have an intimate knowledge of the Bankruptcy Code as

23   a result of that experience?

24         A.        In part, yes.

25         Q.        What part would be not so intimate?

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

6

1       A.        The Bankruptcy Code has changed a lot

2    in 36 years.  And my intimate knowledge of the later

3    part of the code is not as a result of that

4    experience.

5       Q.        Okay.  Now, we're here talking about

6    the equal treatment clause and a certain settlement

7    agreement in which you participated; is that

8    correct?

9       A.        That's what I understand the subject

10   to be.

11      Q.        Okay.  And who is your client?

12      A.        In this connection right now my

13   client is SPV Optimal SUS, Ltd.

14      Q.        Would it be okay if I just called

15   them Optimal?

16      A.        You can call them what you want, it's

17   okay with me, but I will tell you that there are

18   several Optimal entities, and if you want to talk

19   about my current client, it would be clearer if you

20   refer to them as SPV.

21      Q.        Okay.  Your client at the time of the

22   settlement with the Trustee that is the subject of

23   today's deposition, is that Optimal?

24      A.        It was a different entity.  And I

25   should point out that SPV is not actually owned by

7

1  the same owners as my client at the time of the

2  settlement.  My client at the time of the settlement

3  was two entities.  One was called Optimal Strategic

4  US Equities, Ltd., and the other was called Optimal

5  Arbitrage, Ltd.

6         Q.       What I'm trying to get at is, I

7  realize, by virtue of your testimony just now, that

8  there are multiple entities that may be involved

9  here through successor and other variations.  What I

10 want to do is get a term that we can use, so you

11 understand, with regard to who you were representing

12 at the time of this settlement with the Trustee, and

13 I want to be able to call them Optimal if I can; and

14 would that be something we can agree upon?

15        A.       If you want to refer to the two

16 entities that I just referenced, yes, we could call

17 them Optimal collectively.

18        Q.       Fine.

19        A.       But if we refer to one or the other,

20 then I need to use one or the other name.

21        Q.       All right.  Directing your attention

22 to the beginning of the year 2009, were you engaged

23 by Optimal to represent them in connection with the

24 BLMIS liquidation?

25        A.       Yes.  Well, my firm was engaged and I

8

1    worked on it for my firm.

2            Q.        Is Optimal your client?

3            A.        It is the firm's client, yes.

4            Q.        Had you done work for Optimal prior

5    to this?

6            A.        No.

7            Q.        And what did you understand to be the

8    nature of Cravath's retention with Optimal?

9            A.        To advise it with respect to its

10   investments in BLMIS.

11           Q.        And as part of that engagement, did

12   you analyze those investments in BLMIS?

13           A.        Analyze is a very broad word.  I'll

14   give a general answer --

15           Q.        That would be fine, thank you.

16           A.        Yes.  But if you don't -- if you want

17   to be more specific, then I can tell you.  But

18   generally, yes, I analyzed them.

19           Q.        Did you analyze those investments in

20   BLMIS to the extent of what the nature of the

21   Trustee's claims might be against Optimal?

22           A.        Yes.

23           Q.        And did you advise them of what the

24   nature of those claims might be?

25           A.        Yes.

**Picard v. JPMorgan**                                    **Richard Levine  5-16-14**

9

1      Q.      Did there come a time when you

2  recommended to your client that you reach out to the

3  Trustee to settle those claims?

4              MR. GREENWALD:  I instruct him not to

5  answer.

6      A.      Yes.  That's privilege.

7      Q.      The fact of it I don't think is

8  privilege.

9      A.      You asked what I recommended.

10             MR. GREENWALD:  You asked what he

11  recommended.

12     Q.      Okay.  Did there come a time -- it's

13  not that important.  Jousting over silly stuff.  I'm

14  not looking for a waiver of the privilege here.

15             Did there come a time when you

16  recommended to your client that you engage in

17  settlement negotiations?

18     A.      I won't answer that question.

19     Q.      How did it come about that you called

20  the Trustee to engage in settlement negotiations?

21  Was it unauthorized?

22     A.      It was authorized.

23     Q.      By the client?

24     A.      Yes.

25     Q.      Because you asked him?

**Picard v. JPMorgan**                                    **Richard Levine  5-16-14**

10

1    A.       I won't answer that part of the

2  question.

3    Q.       Okay.  So, did the client direct you

4  to engage in settlement negotiations?

5    A.       Yes.

6    Q.       Okay.  Now, did you initiate the

7  settlement negotiations?

8              MR. GREENWALD:  Object.

9    A.       You're going to have to be more

10 specific in your question.  I don't fully understand

11 it.

12   Q.       Settlement negotiations began,

13 someone made a phone call.  Did you make a phone

14 call to start the settlement negotiations?

15   A.       Yes.

16   Q.       Thank you.  We can be a little bit

17 more... I think, don't you?

18   A.       I don't know where you're going and I

19 want to be careful.

20   Q.       All right.  Well, now I understand

21 where we're going today, fine.  So now I'll be very

22 precise.

23              When you called the Trustee's office

24 to start the settlement negotiations, who did you

25 call?

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

11

1       A.       I think I called Mr. Hirschfield, I

2   think that was my first call.  I knew he was here, I

3   had had a prior relationship with him, I figured

4   that was a way to open a discussion.

5       Q.       And what did you say to him?

6       A.       I don't remember exactly, but

7   generally it was, we'd like to come talk to you

8   about an offer.  I think at that point the Trustee

9   had made a demand.

10      Q.       Right.

11      A.       For return of -- made a demand on

12  avoiding power claims.  I think I said to

13  Mr. Hirschfield, we'd like to talk to you about a

14  possible resolution of this.  I don't remember the

15  exact words or how I phrased it.

16      Q.       Do you recall how that demand was

17  presented to your client?

18      A.       Yes.  I think there was a letter.  I

19  have not gone back and checked the file, but there

20  was correspondence from the Trustee in February

21  2009.  I do remember that.  I haven't looked at it,

22  but I do remember that there was a letter seeking

23  informal discovery, seeking information.  I don't

24  remember if there was also a demand in that letter

25  or if it was a separate letter.

Picard v. JPMorgan                                    Richard Levine  5-16-14

12

1      Q.       Do you know Irving Picard?

2      A.       Yes.

3      Q.       How do you know him?

4      A.       I met Mr. Picard when I was on House

5   Committee staff and he was the general counsel for

6   the Division of Regulation of the Securities &

7   Exchange Commission.  The Division of Regulation at

8   the time supervised Chapter 10 proceedings under the

9   Bankruptcy Act and so the SEC had an interest in the

10  legislation and he was one of their principal point

11  persons on it.

12     Q.       From that point forward, did you have

13  any kind of relationship with Mr. Picard?

14     A.       Casual friendly relationship.

15  Professional occasional lunches, you know,

16  nothing -- no -- we weren't personal friends outside

17  of the professional.  But we had a nice

18  relationship.  We talked from time to time, we'd see

19  each other at conferences, we'd have lunch together

20  occasionally.

21     Q.       Did your relationship with Mr. Picard

22  come up in your initial conversation with

23  Mr. Hirschfield?

24     A.       I suspect it did.

25     Q.       You mentioned that you knew him?

13

1      A.        Well, I might have, yeah.  I don't

2   know if I did or not, but it wouldn't surprise me if

3   I did.

4      Q.        And why would you have done that?

5      A.        In my view the bankruptcy community

6   is a very small community, and we -- many of us know

7   each other.  Many of us have worked together

8   professionally or through organizations, Bar

9   organizations and the like.  And personal

10  relationships count for a lot in getting work done.

11  They are useful in showing credibility and bona

12  fides, and they facilitate constructive discussions.

13     Q.        So you saw the relationship you had

14  with Mr. Picard as a positive factor in these

15  negotiations?

16     A.        Yes.

17     Q.        Thank you.

18               When you called Mr. Hirschfield, did

19  you discuss at that time what the potential claims

20  might be by the Trustee against Optimal?

21     A.        I don't remember.

22     Q.        What was your understanding at that

23  time of what the potential claims against Optimal

24  might be?

25               MR. GREENWALD:  I think this goes to

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

14

1    work product, so we'll --

2                    THE WITNESS:  Yeah.  I wasn't sure

3    about that.

4         Q.        Let me try to rephrase it then.

5                    Did there come a time when you

6    articulated to the Trustee's counsel what you

7    understood to be the Trustee's claims?

8         A.        I think so, but I don't remember

9    specifically.  I remember they were a subject of

10   discussion between us at some point.

11        Q.        Right.

12        A.        And they may have been a subject of

13   discussion either in that first phone call to

14   Mr. Hirschfield or in the first meeting we had in

15   late March 2009.  Hard to have a discussion about

16   settlement if you don't know what the claims are, so

17   I'm sure they were on the table in one direction or

18   the other.

19        Q.        I agree with that.  Thank you.

20                    So as best you can recall March of

21   '09, what were the nature of the claims that were

22   discussed between you and Trustee's counsel?

23        A.        There were withdrawals by the two

24   Optimal entities.  We refer to them as SUS and

25   Arbitrage.  They're referred to that way in the

Picard v. JPMorgan                                    Richard Levine  5-16-14

15

1    settlement agreement.

2              Withdrawals by SUS and Arbitrage from

3    their BLMIS customer accounts in the 90 days before

4    the bankruptcy, before the SIPA proceeding.

5         Q.        Right.

6         A.        Those were the claims.

7         Q.        Okay.  Now, in your declaration you

8    talk about the fact that when you settle early, you

9    think that there should be a discount, or that's

10   common practice?

11        A.        Yes.

12        Q.        Is that fair?

13        A.        Yes.

14        Q.        Is that why you called

15   Mr. Hirschfield?

16        A.        That is -- that's just too general a

17   question to answer yes or no.

18        Q.        Well, let me rephrase it then, try to

19   make it better.

20              Was one of the reasons that you

21   called Mr. Hirschfield was that your understanding

22   of common practice was if you get in early you get a

23   better deal?

24        A.        Yes, that was one of the reasons.

25        Q.        Were there other reasons besides

**Picard v. JPMorgan**                           **Richard Levine  5-16-14**

16

1    that?

2         A.       Sure.

3         Q.       What were they?

4         A.       To prevent the incurrence of enormous

5    litigation fees, discovery disruption, time,

6    resources, all of those things.  All the reasons you

7    would normally settle.

8              Why did I call him in March of '09

9    instead of March of '11?  Because it was, the reason

10   you stated, it was before discovery had started, it

11   was in response to an informal discovery request,

12   and it was an effort to head off the, what I refer

13   to as the trench warfare of that kind of litigation

14   before it got started.

15        Q.       Was part of that also your assessment

16   of the liability of the bank -- of Optimal?

17              MR. GREENWALD:  Here too I think it

18   goes to work product.

19        A.       I will say it this way.

20        Q.       Yes.

21        A.       Part of that was my assessment of

22   what the Trustee would assert and probably litigate

23   over.  So we didn't have to acknowledge liability to

24   call and say we want to settle.

25        Q.       I wasn't asking you for that, so let

**Picard v. JPMorgan**                           **Richard Levine  5-16-14**

17

1    me try to rephrase it.

2                    You've articulated, we've understood

3    to be, your recollection of the discussion of what

4    the nature of the claims were that you saw the

5    Trustee having.  Using your bankruptcy experience,

6    how would you characterize those as claims that were

7    brought by the Trustee?

8         A.        I would characterize them as

9    difficult to defend.

10        Q.        And what were the -- would they be in

11   the nature of a preference?

12        A.        Yes.

13        Q.        Can you tell me what a preference is?

14        A.        A preference is a transfer of

15   property -- a transfer of an interest of the debtor

16   in property to or for the benefit of a creditor, for

17   or on account of an antecedent debt, made within 90

18   days before the date of the filing of the petition

19   that enables the creditor to receive a greater

20   percentage than other creditors of -- than the

21   creditor would have received in a liquidation case

22   under Chapter 7 if the transfer had not been made.

23        Q.        Now, in March of 2009, were you aware

24   of what the nature of the BLMIS proceeding was?  And

25   I'll break that down.  Did you have any

**Picard v. JPMorgan**                              **Richard Levine  5-16-14**

18

1   understanding that it was a Ponzi scheme?

2          A.        Yes.

3          Q.        And how did you come about -- come to

4   that understanding?

5          A.        I think primarily from press reports.

6          Q.        Was that a subject of discussion with

7   Mr. Hirschfield or other counsel?

8          A.        I don't remember.  It wouldn't

9   surprise me if it were, but I simply don't remember.

10         Q.        Is there something called a Ponzi

11  presumption?

12         A.        Yes, there is.

13         Q.        And what is a Ponzi presumption?

14         A.        Ponzi presumption is that any

15  transfer made by the Ponzi schemer is presumed to be

16  made with actual intent to hinder, delay or defraud

17  creditors.

18         Q.        Okay.  And do you understand the term

19  "fictitious profits" in the context of a Ponzi

20  scheme?

21         A.        Yes.

22         Q.        What did you understand to be what

23  Optimal had received during the 90-day period?

24                   MR. GREENWALD:  Optimal -- okay.

25         A.        I understood that both -- well,

**Picard v. JPMorgan**                                    **Richard Levine  5-16-14**

19

1   again, we've got two entities here.

2          Q.        Yes.

3          A.        So I understood that SUS had received

4   what is referred to in this context as return of

5   principal, and that Arbitrage had received

6   fictitious profits.

7          Q.        Now, again referring to your

8   bankruptcy expertise, what would the Trustee have to

9   prove in order to achieve a favorable result against

10  Optimal based on your understanding of the claims

11  against Optimal?

12         A.        The Trustee would have to prove, if

13  he asserted a preference claim, the seven elements

14  that I recited a moment ago.  If he asserted a

15  fraudulent transfer claim, he would have to prove

16  that the BLMIS was a Ponzi scheme and that would

17  entitle him to that Ponzi scheme presumption that

18  you referred to.

19         Q.        Based on your analysis of the claims

20  at that time, did you see value as a defense to the

21  preference action?

22                   MR. GREENWALD:  For value?

23                   MR. SHEEHAN:  Yeah, for value.

24         A.        Yes.

25         Q.        In what sense?  How could that be?

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

20

1     A.        The -- I'm sorry, let me -- yes.

2               547(c)(2) provides a defense -- well,

3     back up.

4               Value is not a defense to a

5     preference action because preference presumes that

6     the transfer is in satisfaction of a preexisting

7     debt.  So there is value.  So value is irrelevant to

8     a preference action.

9     Q.        Right.  Thank you.

10    A.        You're welcome.

11    Q.        That's what I thought.  Thank you.

12    A.        This is like a law school exam.

13    Q.        That's where we're going.

14              Is intent of the transferee part of a

15    preference action?

16    A.        No.  I want to ask you --

17    Q.        I'm available to answer questions.

18    It's a friendly deposition.

19              MR. GREENWALD:  Screw up our clock if

20    you start asking questions.

21    A.        You're asking me as an expert.

22    Q.        No, I'm asking you as a highly

23    trained, sophisticated bankruptcy lawyer with an

24    in-depth knowledge of the Bankruptcy Code as a

25    witness what you analyzed these claims to be.

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

21

1    A.        Fine.  In that context, yes, that's

2    fine.

3    Q.        I'm not trying to qualify you as an

4    expert although, Richard, I consider you one.

5    A.        Well, thank you.

6    Q.        Now, the claim eventually was settled

7    for payment of 85 percent of the amount -- well,

8    instead of stating it, I'll ask you:  What was the

9    claim eventually settled for?

10   A.        85 percent of the preference amount.

11   Q.        And was that the number that was --

12   okay.  Who proposed 85 percent?

13   A.        I don't remember which side proposed

14   it.  I remember there was a negotiation over the

15   number and we agreed on 85 percent.

16   Q.        Did you have an opening number as the

17   person who initiated the settlement discussions?

18   A.        Yes.

19   Q.        And what was your opening number?

20   A.        80 percent.

21   Q.        And how did you arrive at that

22   proposal?  Let me break that down.

23                 MR. GREENWALD:  That's also work

24   product.

25   Q.        I agree with David it might have that

Picard v. JPMorgan                                    Richard Levine  5-16-14

22

1    quality.

2              Going back to your declaration, as

3    you stated, it's always good to get in early if you

4    want to settle and get the best result.  I may be

5    re -- and if you want to rephrase it or get your

6    declaration, we can read that.

7        A.      Yes.

8        Q.      You prefer that?

9        A.      No, no.  I don't think you

10   characterized my statement correctly.

11       Q.      Well, let's get it correct.  I'm not

12   trying to mischaracterize it.

13       A.      I didn't -- the way you phrased it is

14   more general, early in the bankruptcy case or the

15   SIPA proceeding.

16       Q.      Right.

17       A.      I meant early in the claim process by

18   the Trustee against a particular defendant.

19       Q.      Okay.  I'm glad you clarified that.

20   Let me ask you a different question.

21       A.      By the way, in this case -- when I

22   said generally, because most preference litigation

23   in bankruptcy cases occurs very late in the case.

24       Q.      Um-hum.

25       A.      In this case it was going to be

Picard v. JPMorgan                          Richard Levine  5-16-14

23

1   different.  We knew that because the principal

2   assets of the estate were going to be avoiding power

3   recoveries.  So in this case, although when I say

4   it's common to get in early and get an advantage for

5   settling early, I meant in a particular adversary

6   proceeding.  In this case there were two elements of

7   it, which was early in the SIPA proceeding and early

8   in the claim process.

9       Q.       And let me ask two questions based on

10  what you just said.

11               How did you arrive at the conclusion,

12  as you just stated it, that the avoiding powers --

13  avoiding power recoveries were going to be the major

14  asset of the estate?

15      A.       Well, largely based on press reports

16  that there was very little money in the, in the

17  debtor's possession or custody, in the debtor's

18  coffers.  And it appeared that there were -- the

19  reason it was very little, there had been

20  substantial withdrawals over a period of time and I

21  know that in a Ponzi scheme case the Trustee seeks

22  recovery under the avoiding powers of the

23  withdrawals that have happened over a period of time

24  before the bankruptcy.  So it was based on my

25  experience and what little I knew from publicly

Picard v. JPMorgan                                    Richard Levine  5-16-14

24

1    reported information.

2              When I say press reports, I should

3    say publicly reported information, which may have

4    been court proceedings as well.  Because there were

5    some court proceedings at that point.  Based on that

6    public information and my experience, it seemed to

7    me that the principal source of recovery would be

8    avoiding power actions.

9         Q.      You mentioned also that it wasn't

10   just a stage of the litigation but the stage of the

11   SIPA liquidation proceeding.  What was your

12   understanding what the status of the SIPA

13   liquidation proceeding was in March of '09?

14        A.      That the Trustee was just getting his

15   arms around the facts and the underlying financial

16   information.  I knew he had a list of all of the

17   customers because I was aware that he had sent out

18   demand letters or informal discovery letters.  I was

19   aware that he had sent letters to banks that had --

20   to which BLMIS had wired funds for customers, and I

21   think he had publicly stated that they were -- that

22   the Trustee's team was investigating the records

23   which were in a warehouse in Queens, and the records

24   at the Lipstick Building.  So he was in the very

25   early stages and had not formally brought any claims

25

1   yet.

2         Q.         I want to shift our attention now to

3   the JPMorgan Chase matter.

4         A.         Um-hum.

5         Q.         It might be helpful if we actually do

6   go, I think, to your declaration at this point.

7                    The objection, I'm sorry.  It's your

8   objection I'm going to.

9         A.         I don't think we have that.

10                   (Exhibit T-1 marked for

11  identification.)

12        Q.         Mr. Levin, I direct you attention to

13  page 4 that we just handed you in exhibit marked

14  T-1.  I direct your attention further to the chart

15  at the bottom third of that page.  Do you see it?

16        A.         The table there, yes.

17        Q.         Yes, table, I'm sorry.

18                   And I'm not suggesting that you have

19  to look at this.  I only wanted to present it to you

20  so that -- because I'm going to go through each of

21  the claims.  All right?

22        A.         Sure.

23        Q.         What was your understanding -- first

24  of all, are you familiar with the JPMorgan Chase

25  complaint that the Trustee filed against that bank?

**Picard v. JPMorgan**                          **Richard Levine   5-16-14**

26

1          A.          Generally familiar.

2          Q.          Have you ever read it?

3          A.          I believe I've read some or all of it

4     at some point in time.

5          Q.          It's very long, I know.

6          A.          It is.

7          Q.          Tolstoy-esque, according to one

8     judge.  But, in any event.

9          A.          What's that?

10         Q.          Tolstoy-esque, according to one

11    judge.

12                     MR. GREENWALD:  In fairness, it's

13    well written but not that well written.

14                     (Laughter.)

15                     MR. SHEEHAN:  And with that we are

16    all in agreement.

17         Q.          So, starting at the top of this, I

18    call it a chart, you're calling it a --

19         A.          Table.

20         Q.          Table.  I'll call it a table.

21                     Top of this table there is a -- it's

22    listed banking fees.  Do you see that?

23         A.          Yes.

24         Q.          And when you say 90 days, what are

25    you referring to there?

27

1          A.          This is a shorthand that the Trustee

2     has often used in his pleadings in court to refer --

3     including the complaint against JPMorgan Chase to

4     refer to three different categories of avoiding

5     power claims:  Preference claims, which are

6     transfers made within 90 days before bankruptcy.

7     Those are referred to and they're asserted under

8     Section 547 of the Bankruptcy Code for avoiding the

9     transfer, and section 550 to recover the property

10    transferred.  The two-year claims -- I'll just go

11    down the table.

12          Q.          Sure, of course.

13          A.          I assume you're going to ask that

14    anyway.

15          Q.          Yes, exactly.

16          A.          Two-year claims are claims asserted

17    under section 548(a)(1) of the Bankruptcy Code which

18    is the fraudulent transfer provision and permits the

19    Trustee to reach back two years to avoid fraudulent

20    transfers, and again section 550 for recovery.  And

21    six-year claims are those brought under section

22    544(b) of the Bankruptcy Code, which incorporates

23    applicable state fraudulent transfer law by

24    reference, and in New York the Statute of

25    Limitations is six years for such claims, so it

Picard v. JPMorgan                        Richard Levine  5-16-14

28

1    allows the Trustee to reach back six years before

2    the petition date, and they're referred to as

3    six-year claims.

4        Q.        Okay.  Now, in connection with the

5    two-year claims -- well, first of all, let me back

6    up.  What do you understand, if you do have an

7    understanding, of the nature of the banking fee

8    claims brought by the Trustee against JPMorgan

9    Chase?

10       A.        My understanding is that they were --

11   there were banking fees paid within the 90 days

12   before bankruptcy, or SIPA proceeding.  I'll say

13   bankruptcy referring to the SIPA proceeding, even

14   though it's not technically the same.

15       Q.        Yes.

16       A.        And there were banking fees paid

17   within the two years before the bankruptcy.  Based

18   on the Ponzi scheme presumption, any transfer, even

19   for value, even in payment of an ordinary operating

20   expense such as banking fees, could be recoverable

21   as a fraudulent transfer -- could be avoidable as a

22   fraudulent transfer, excuse me -- if made within two

23   years, and that's what I -- that's the claim I

24   believe the Trustee was asserting for avoidance of

25   the banking fees.

29

1      Q.        What did you understand to be, if you

2   had an understanding, of the relationship between

3   JPMorgan Chase and BLMIS?

4      A.        I understood that JPMorgan Chase was

5   BLMIS's principal banker.

6      Q.        Now, let's focus for a moment on the

7   two-year claims for banking fees.  In that situation

8   under the bankruptcy statute, is value a defense?

9      A.        It could be.

10     Q.        How could that be raised as a

11  defense?

12     A.        Under section 548(c) of the

13  Bankruptcy Code, which governs the two-year

14  claims -- to be clear, when I described the three

15  categories earlier, I did not mean to suggest that

16  they were exclusive.  They overlap.

17     Q.        I understand.

18     A.        So a 90-day claim will also be a

19  two-year claim and a six-year claim.

20     Q.        Yes.

21     A.        They overlap in that direction, not

22  in the other direction.

23              So on the two-year claims, the

24  Trustee would have a claim under -- under section

25  548 and under 544(b).  548 claim, the defendant has

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

30

1   a defense under section 548(c) if the defendant took

2   for value and in good faith.

3        Q.        And what would that mean in the

4   context of the JPMorgan Chase defense?

5        A.        Well, you asked about value.  The

6   answer is, if the defendant provided goods or

7   services or money or other value to the debtor and

8   the payment was a repayment of a legally owing

9   obligation, that would constitute for value.

10       Q.        Under 548(c), in addition to value,

11   are there other defenses?

12       A.        I don't understand your question.

13       Q.        Let me just make it plain.  Is good

14   faith a defense to a fraudulent transferrer?

15       A.        As I said earlier, the defense under

16   548(c) is value and good faith.  So good faith alone

17   is not a defense; value alone is not a defense.

18   They have to be together.

19       Q.        Okay.  In a preference action does

20   either value or good faith have anything to do with

21   it?

22       A.        No.  Well, let me amend that.

23                 Value does not.  Good faith might

24   provide a defense, though not by those words.  Under

25   547(c)(2), the ordinary course defense, if a

31

1    transferee takes a transfer in the ordinary course

2    of business for a debt that was incurred in the

3    ordinary course of business, it is an affirmative

4    defense to a preference recovery, but if a

5    transferee was not in good faith, then it would be

6    hard for the transferee to argue that the payment

7    was made in the ordinary course of business.

8         Q.         In a Ponzi scheme, does the intent of

9    a transferee in a preference action have anything to

10   do with the Trustee's ability to recover?

11        A.         In a preference action, no, because

12   547(c), under the Ponzi scheme presumption, if a

13   Ponzi scheme is proved, 546(c)(2) does not apply

14   because nothing that a Ponzi schemer does is in the

15   ordinary course of business.

16        Q.         Thank you.

17                   Now, are you familiar with the

18   Trustee versus Katz/Wilpon matter?

19        A.         Yes.  Generally.

20        Q.         Are you familiar with Judge Rakoff's

21   holding with regard to the application of 546(e) to

22   the BLMIS liquidation proceeding?

23        A.         Yes.

24        Q.         Under his ruling can the Trustee

25   bring a preference action?

**Picard v. JPMorgan**                    **Richard Levine   5-16-14**

32

1       A.       No.

2       Q.       And can he bring a six-year action?

3       A.       No.  Except to the extent it's within

4   the two years.

5       Q.       Right.  Well, he can certainly bring

6   a two-year action under 546 -- under 548(a)(1)(A);

7   is that not correct?

8       A.       Yes.

9       Q.       Do you consider that to be a material

10   change in the law since March of '09?

11       A.       You ask -- I don't mean to be flip

12   here.

13       Q.       That's quite all right.

14       A.       But you ask what is a deep

15   jurisprudential question.

16       Q.       I ask the right kind.

17       A.       Does the law change or does the court

18   rule what the law is and always has been?

19       Q.       Ah, indeed.

20       A.       And so I can't answer whether it was

21   a change in the law without getting into philosophy,

22   which I'm not an expert in.

23       Q.       Well, I guess the simple answer is

24   that in March of '09 the Trustee could have brought

25   a preference action and a six-year action and as we

**Picard v. JPMorgan**                           **Richard Levine  5-16-14**

33

1    sit here today at the time of the JPMorgan Chase

2    settlement, he could not?

3         A.       I don't think that's correct.  I

4    would not subscribe to your statement.

5         Q.       Okay.  And why is that wrong?

6         A.       Because if he had brought the action

7    in '09 and it had gone before Judge Rakoff, I

8    presume that Judge Rakoff would have ruled the same

9    way and that action would have been as ineffective

10   as the Katz/Wilpon action.

11                 And, yes, he can bring a claim today.

12   We know as a practical matter if he brings it in the

13   Southern District of New York it will be assigned to

14   Judge Rakoff and the ruling will be the same.  But

15   if he were to bring it in another district, a

16   different judge might come to a different

17   conclusion.  And we know the matter is pending at

18   the Second Circuit and that may resolve it if it

19   doesn't go to the Supreme Court.

20        Q.       But in terms of -- oh, let me get

21   back to that later.  I want to just get through

22   this.

23                 Now, the six-year claim here --

24   strike that.

25                 Let me ask you, looking at the table

**Picard v. JPMorgan**                                    **Richard Levine   5-16-14**

34

1    there's a six-year and it refers to a loan

2    repayment.

3           A.        Yes.

4           Q.        Do you have any understanding of what

5    the Trustee's allegations were with regard to the

6    loan repayment?

7           A.        Yes.

8           Q.        And what were they?

9           A.        That the loan repayment was exactly

10   what it says it is, a loan repayment, but that

11   the -- it is avoidable under Section 544(b) and the

12   New York Uniform Fraudulent Conveyance Action

13   because of the Ponzi scheme presumption that any

14   transfer by a Ponzi schemer is made with actual

15   intent to hinder, delay or defraud creditors.

16   That's my understanding of the basis of his

17   assertion.

18          Q.        And as we discussed earlier, the

19   defense is a value and a knowledge would also be in

20   place here as well, correct?

21          A.        Yes.  The defendant would have those

22   defenses.

23          Q.        Let's go down to the term just below

24   that --

25          A.        Excuse me.

35

1          Q.        I'm sorry?

2          A.        I didn't answer that correctly.  Not

3    value and knowledge.  Value and good faith.

4          Q.        Yes.  I was equating the two, and I

5    apologize for that.

6          A.        You almost had me.

7          Q.        I did.  But in any event, let's look

8    at the table where it says subsequent transfers.  Do

9    you see that?

10         A.        Yes.

11         Q.        Before we get into those, can you

12   tell me what your understanding of a subsequent

13   transfer is.

14         A.        Yes.  It is not a phrase used in the

15   Bankruptcy Code, but it is the general description

16   of -- referring to Section 550(a)(2) of the

17   Bankruptcy Code that permits a Trustee to recover an

18   avoided transfer from any mediate or -- I'm sorry,

19   immediate or mediate transferee, of the initial

20   transferee from whom the Trustee -- against whom the

21   Trustee brought the avoiding power action.

22         Q.        And what is your understanding of the

23   Trustee's burden with regard to recovering on a

24   subsequent transferee in terms of his avoiding the

25   initial transfer?

Picard v. JPMorgan                        Richard Levine  5-16-14

36

1      A.        Well, the law is mixed here.  I think

2  the majority view, represented by a Ninth Circuit

3  B.A.P. decision and by Judge Rakoff's decision, and

4  several others, which I don't recall at the moment,

5  is that the Trustee may recover from a subsequent

6  transferee without having obtained an avoiding power

7  judgment against the initial transferee.

8      Q.        Does the mediate or intermediate

9  transferee of the initial transferee have the

10  defense of the initial transferee in that context?

11      A.        Where the courts have permitted what

12  I just described, the subsequent transferee -- I

13  think that's the easier way to refer to it --

14      Q.        Yes.

15      A.        -- the subsequent transferee has all

16  of the defenses that the initial transferee would

17  have in the underlying avoiding power action.

18      Q.        So would it be fair to state that

19  even against the subsequent transferee, the Trustee

20  has the burden of proving the avoidance of the

21  initial transferee?  Initial transfer.

22      A.        As a practical matter, yes.

23      Q.        Now, what did you understand to be

24  the nature of -- if you have an understanding -- of

25  the Trustee's claims in JPMorgan Chase that related

Picard v. JPMorgan                           Richard Levine  5-16-14

37

1    to Fairfield Century?

2        A.        That within 60 days before the

3    bankruptcy -- referred to as 90-day transfers but in

4    fact they were within less than 90 days -- in fact,

5    most of them were within 30 days -- that JPMorgan

6    Chase, that an entity within the JPMorgan Chase

7    corporate group -- and I don't remember precisely

8    which entity -- received payments from Fairfield

9    Century and Fairfield Sigma for redemption of its

10   shares in those two funds.

11                  MR. SHEEHAN:  Can I have that answer

12   read back.

13                  (Answer read.)

14       Q.        And how did those redemptions relate

15   to JPMorgan Chase?

16       A.        I don't understand the question.

17       Q.        As I understood your answer, you

18   referred to redemptions by Fairfield from BLMIS.

19   Were you referring to something -- or maybe I didn't

20   understand your answer.

21       A.        No.  I was referring to the -- and

22   maybe I didn't understand your prior question.

23       Q.        Okay.

24       A.        I was referring to the payments that

25   Fairfield Century and Fairfield Sigma made to

**Picard v. JPMorgan**                          **Richard Levine  5-16-14**

38

1    JPMorgan Chase to redeem Chase's shares in those two

2    funds.

3         Q.         All right, I'm sorry.  I did

4    misunderstand.  And what was your understanding of

5    what those redemptions were predicated upon?  In

6    other words, what was the investment that JPMorgan

7    Chase made into Fairfield and Fairfield Sigma that

8    resulted in those redemptions?

9         A.         I don't remember.  I don't recall

10   what the investments were.

11        Q.         Did you understand that they were

12   investments by Fairfield into BLMIS?

13        A.         Oh.  That's not JPMorgan Chase into

14   Fairfield.  That's Fairfield into BLMIS.

15        Q.         Correct.

16        A.         Okay.  Yes.  I understood that

17   Fairfield Century was, in fact, BLMIS's largest

18   single customer, in terms of account balance.

19   Fairfield Sigma, as I recall, was a feeder fund to

20   Fairfield Century, and did not have a direct account

21   at BLMIS, but I may be mistaken on that one.  But

22   one way or the other, both funds were directly or

23   indirectly invested in BLMIS.

24        Q.         Okay.

25                   MR. SHEEHAN:  Take five minutes here.

39

1           (Recess taken.)

2      Q.        Just to stick with the JPMorgan case

3  for a moment, and you don't need the exhibit because

4  I want to go beyond that.

5           Are you aware of any other claims

6  other than the ones that we've just gone through

7  that were outlined in the JPMorgan Chase complaint

8  by the Trustee?

9      A.        Yes.

10      Q.        And what were they?

11      A.        What are loosely referred to as the

12  class action claims, but they were -- in the

13  Trustee's complaint they were asserted as common law

14  claims.  I think they were for aiding and abetting,

15  fraud and conspiracy and related claims to that.

16  They're primarily common law claims.

17      Q.        And you are aware, I think you

18  referenced that there was a class action that was

19  pending parallel to the Trustee's action, also

20  against JPMorgan Chase?

21      A.        Parallel but much later, started much

22  later.

23      Q.        Much later, yes.  I was actually

24  going to start testifying but, anyway.

25           And you are also aware of the

Picard v. JPMorgan                                    Richard Levine  5-16-14

40

1   Department of Justice's involvement with the

2   JPMorgan Chase matter as well, are you not?

3           A.      Yes.

4           Q.      And what's your understanding that to

5   have been?

6           A.      There was a criminal investigation by

7   the Department of Justice over Chase's involvement

8   with BLMIS as its banker and in other relationships,

9   resulting in a deferred prosecution agreement.

10          Q.      So let's go back to March of '09, if

11  we may.  The equal treatment provision that is in

12  the agreement that is the subject of our discussion

13  here today, who first proposed that?

14          A.      The Optimal side proposed that.

15          Q.      And why did you propose it?

16          A.      There were two reasons.  One was as

17  a -- at the time, hopefully early settler, we didn't

18  want -- there was no, to use a phrase that's in the

19  settlement agreement, there was no benchmark as to

20  what reasonable settlements were.  We didn't want to

21  settle at a percentage of the claim and later find

22  the Trustee settling at lower percentages similar

23  claims, similar circumstances to ours.

24                  So, it was protection.  I think, as

25  Mr. Hirschfield said in his declaration, protection

41

1   against looking foolish on our side.

2                 Second reason, which was also

3   important, and we argued this in the settlement

4   negotiations, was that it would give the Trustee

5   some leverage in negotiations with other defendants

6   in avoiding power actions, leverage to maintain a

7   minimum settlement percentage amount.

8          Q.       Okay.

9          A.       And we thought that would be helpful

10  not only to the Trustee but indirectly then to all

11  customers with allowed claims which we had hoped

12  Optimal would be.  So it would inure indirectly --

13  directly to the estate's benefit and indirectly to

14  Optimal's benefit.

15         Q.       Do you recall the initial reaction of

16  Trustee's counsel to your equal treatment proposal?

17         A.       Yes.

18         Q.       And what was it?

19         A.       Highly skeptical.

20         Q.       Could you explain what you mean by

21  highly skeptical?

22         A.       The Trustee's counsel, as I recall,

23  expressed concern -- I'm going to use a word that's

24  not the Trustee's counsel's word, my word --

25         Q.       I asked for your understanding.

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

42

1      A.        That it would somehow hamstring the

2   Trustee going forward and it was going to be too

3   limiting and constraining and therefore the Trustee

4   was concerned about putting something in like that

5   that would limit his flexibility and options and

6   such.

7      Q.        Um-hum.  Did --

8      A.        I don't recall if it was in that

9   first conversation or later that there was also the

10   concern expressed about whether the provision could

11   be drafted in a way that would be comfortable for

12   the Trustee.  So the two go together very closely.

13   One conceptual and one the mechanics of making it

14   happen.

15      Q.        Did the Trustee ever express to you

16   at these early stages of your negotiations the

17   notion that the -- if there was to be an equal

18   treatment clause, it applied only to similar cases?

19      A.        Let me first adopt a shorthand

20   convention.  You asked if the Trustee did.  No, he

21   didn't because he was never at the settlement

22   negotiations.

23      Q.        I thought I said counsel; if I

24   didn't, I misspoke.

25      A.        I'm going to assume whenever you say

43

1      Trustee, you mean counsel.

2             Q.        Absolutely.

3             A.        That was the convention.

4             Q.        Fine.

5             A.        I don't remember exactly what was

6      said as to the scope of the clause or provision in

7      the settlement negotiations.  I only recall what's

8      in the written record back and forth as to the

9      nature of how it would be described.

10            Q.        Okay.  Let's go to the written record

11     then.

12            A.        Sure.

13            Q.        Let's go to the initial draft.  I

14     believe it's the initial draft.  I'll ask you what

15     it is, actually.

16                      (Exhibit T-2 marked for

17     identification.)

18            Q.        Mr. Levin, the court reporter has

19     handed you what has been marked as T-2, which I

20     believe to be the initial draft of the proposed

21     settlement agreement.  Take your time, take a look

22     at it.  Could you, for purposes of the record,

23     identify that document for me, please.

24            A.        This is what you just characterized

25     it as.

44

1        Q.        Okay.  And my characterization was

2   correct?

3        A.        Yes.

4        Q.        I direct your attention to page 6 of

5   the document, paragraph 12.

6        A.        Yes.

7        Q.        Do you see the heading there, "Equal

8   Treatment"?

9        A.        Yes.

10       Q.        I'm going to read it in, for purposes

11  of the record I'm just going to read this in.  The

12  heading is "Equal Treatment for SUS and Arbitrage

13  with Other Similar Customers. "

14                 Do you see that?

15       A.        Yes.

16       Q.        Now, is this your language that you

17  put in there or is this the result of negotiation?

18       A.        This was the initial draft that came

19  from the Optimal side.

20       Q.        Um-hum.  And where did this language

21  emanate from?  Was this your language?

22       A.        I believe so.  I was the principal

23  drafter, so I think it must have been, but I can't

24  tell you specifically.

25       Q.        Do you recall why you used the phrase

**Picard v. JPMorgan**                           **Richard Levine  5-16-14**

45

1    "other similar customers"?

2         A.        No, I do not recall.

3         Q.        Without going through each of the

4    paragraphs A through G, would you agree with me that

5    the term "customer" appears in each one of them?

6         A.        Yes.

7         Q.        I'm going to go through all three

8    very quickly and then come back to this.

9         A.        Okay.

10        Q.        I now want to show you the, what I'm

11   going to call the Trustee's version, if you will.

12   T-3.

13                  (Exhibit T-3 marked for

14   identification.)

15        Q.        Again, for purposes of the record can

16   you identify, if you can, the document T-3 for us,

17   Mr. Levin.

18        A.        This appears to be the May 4 draft

19   that Baker Hostetler sent to me in response to -- it

20   was part of the exchange of drafts of the settlement

21   agreement.

22        Q.        All right.  Now, the heading is the

23   same as it was in your earlier draft, is it not?

24        A.        In paragraph 13, 12 of the other

25   draft, yes.

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

46

1        Q.        Okay.  And if you, and take your time

2    to read this, but -- and I'll direct your attention

3    down to, "For purposes of this paragraph."  I don't

4    know if you can see that?

5        A.        I do.

6        Q.        Right after "MFN trigger event," it

7    says:  "Similar claim means a claim by the Trustee

8    against a former BLMIS customer," says "the

9    customer" as a defined term and then that term

10   "customer" is used throughout this paragraph, is it

11   not?

12       A.        It's not used throughout the

13   paragraph, but for references in the definition of

14   similarly situated person or entity appears to refer

15   to the defined term "customer."

16       Q.        All right.  Now, let's go to the

17   final version, if we can.  The one that was actually

18   executed.

19                 What we've done here is we've

20   attached it to the email, which I'm going to also

21   ask you a question about, the email that you sent to

22   us.  So it's combined document that I'll ask the

23   witness to identify it after you've marked it as

24   T-4.

25                 (Exhibit T-4 marked for

Picard v. JPMorgan                          Richard Levine  5-16-14

47

1    identification.)

2         Q.        Again, Mr. Levin, take your time to

3    take a look at this but, for the record, I've handed

4    you what purports to be an email from you -- some

5    email correspondence between you and counsel for the

6    Trustee, as well as a new, if you will, version of

7    the equal treatment provision.

8              Just for purpose of the record,

9    Mr. Levin, can you identify for us as you understand

10   it, or what your understanding is of the two

11   documents that are attached to T-4.

12        A.        Well, the first part is email

13   correspondence between Mr. Hirschfield and me from

14   March 4th through March -- May, excuse me, May 4th

15   through May 9th.  And there is a one-page attachment

16   of a draft equal treatment insert for the settlement

17   agreement.

18        Q.        Okay.  Turning your attention to the

19   settlement agreement, and particularly the page that

20   has the heading "Draft Equal Treatment Insert for

21   the Picard - Optimal Settlement Agreement."

22              Do you see that?

23        A.        Yes.

24        Q.        Do you see the heading there on

25   paragraph -- paragraph 13?

**Picard v. JPMorgan**                    **Richard Levine   5-16-14**

48

1        A.        Yes.

2        Q.        And it again says, "with other

3    similar customers," does it not?

4        A.        Yes, it does.

5        Q.        Now, in the body of the language does

6    the word "customer" appear?

7        A.        No, it does not.

8        Q.        And does the word "defendants"

9    appear?  In other words -- let me withdraw that

10   question.

11              Direct your attention to paragraph B

12   little i.  It begins with the phrase, and I'm

13   reading now:

14              "If the Trustee settles one or a

15   related series of avoiding power claims against a

16   single defendant or group of defendants --"

17       A.        Yes, the word "defendant" clearly

18   appears.

19       Q.        Right.  You would agree with me,

20   would you not, that prior to this the reference was

21   to customer, both in your first draft and in the

22   draft that was sent by the Trustee, was it not?

23       A.        Yes.  The paper is clear.

24       Q.        Did you, in your transmitting this,

25   identify the fact that you were changing "customer"

Picard v. JPMorgan                                Richard Levine  5-16-14

49

1   to "defendants"?

2          A.        I did not call it out in the email

3   traffic that accompanied it.

4          Q.        Did you ever, in conversation with

5   the Trustee, suggest to them that this was a change?

6          A.        I don't recall.  I note the email

7   traffic refers to conversations we had over this

8   provision and I recall that we did have some

9   conversation, but I simply do not remember the

10  content of conversations five years ago on this.

11         Q.        Is it not true that when you were

12  having these initial discussions and in the first

13  two drafts you were talking about customers, were

14  you not?

15         A.        The drafts talked about them.  As I

16  said, I don't recall the content of discussions five

17  years ago.

18         Q.        Was it not the understanding of

19  everyone when you sent this and retained the heading

20  "Other Similar Customers" that the defendants you

21  were referring to were customers?

22                   MR. GREENWALD:  Objection.

23         A.        Read back the question, please.

24                   (Question read.)

25         A.        I don't know what the Trustee's or

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

50

1    his counsel's understanding was.

2         Q.        Would there be any reason for them to

3    think otherwise?

4         A.        The language of the provision.

5         Q.        Well, you'd retained the heading, did

6    you not?

7         A.        Yes, the heading was retained.

8         Q.        And it said "other similar

9    customers"?

10        A.        Yes, it did.

11        Q.        Wouldn't one, having been in these

12   negotiations, with all of the earlier drafts and you

13   not in any way identifying, would you not agree --

14   let me rephrase this.

15             Would you not agree that if you were

16   going to change the term from "customers" to

17   "defendants," that was a material change?

18        A.        Yes, it is a material change.

19        Q.        Did you identify that in writing to

20   the other side?

21        A.        Yes.

22        Q.        In writing?

23        A.        Yes.

24        Q.        How?

25        A.        It's right in the draft itself.

**Picard v. JPMorgan**                           **Richard Levine  5-16-14**

51

1      Q.        So, in other words, you didn't think

2  that when they looked at it, and you used the

3  heading "Other Similar Customers," that they thought

4  that that meant the defendants were customers?

5      A.        I don't know what they thought.

6      Q.        Well, was there some slight of hand

7  here, Mr. Levin?

8                MR. GREENWALD:  Object.

9      A.        You're arguing with me now.  I'm not

10  going to take that bait.

11      Q.        All right.  Well, in other words, the

12  only thing you have on the record, the entire record

13  here that would suggest that the counsel for the

14  Trustee should know that even though you retained

15  the heading, the fact that you turned it into

16  defendants, that we should have known you meant

17  other than customers?

18      A.        Could you read that back.

19                (Question read.)

20      Q.        Do you understand the question?  I'll

21  rephrase it.

22      A.        I got lost toward the end of it.

23      Q.        Okay.

24                You send us a document that retains

25  the heading.  It's the same heading for all three

**Picard v. JPMorgan**                                    **Richard Levine  5-16-14**

52

1    documents, correct?

2          A.        Yes.

3          Q.        And it says "other similar

4    customers"?

5          A.        Yes.

6          Q.        And in the third one you changed the

7    term "customers" to "defendants"; is that correct?

8          A.        Yes.

9          Q.        And it's your testimony that the

10   Trustee was supposed to divine from your change from

11   "customer" to "defendants" that you meant to change

12   it to defendants other than customers?

13         A.        Read that back again.

14                   (Question read.)

15                   MR. GREENWALD:  I'll pose an

16   objection.

17         A.        I sent him a document and I

18   assumed -- counsel, a document -- I assumed counsel

19   would read it and read what it said.

20         Q.        And it said customers, did it not?

21         A.        In one place, and it said defendants

22   in others.

23         Q.        Right.  So, wouldn't it be fair to

24   assume that the Trustee, without you highlighting

25   this in any way whatsoever, that what you were

**Picard v. JPMorgan**                              **Richard Levine  5-16-14**

53

1   actually saying is that defendants, meaning

2   defendants who were customers?

3                    MR. GREENWALD:  Objection.

4        A.        I'm not going to say what's fair to

5   assume or not.  That's an argument.  That's not what

6   I'm here to talk about.

7        Q.        I'm here to talk about why you

8   changed it.

9        A.        You know, the other --

10       Q.        Why did you change it from customers

11   to defendants?

12                   MR. GREENWALD:  Answer that question.

13   That's fine.

14       A.        I was waiting for the question.

15                   We had a discussion, I remember we

16   had a discussion because both sides were

17   dissatisfied with the prior two drafts, or one side

18   was dissatisfied with one, the other side with the

19   other.

20                   So, according to the email

21   correspondence, and I think it, I believe it to be

22   accurate, since I tended to be the party in the

23   negotiation who -- the Trustee was very busy, as you

24   may recall at the time --

25       Q.        We had a few things happening.

**Picard v. JPMorgan**                                    **Richard Levine  5-16-14**

54

1    A.        Yes.  So I tended to be the person in

2    the negotiation that came up with the proposals for

3    the Trustee to react to, rather than the other way

4    around.  And I think I came -- when I saw the logjam

5    on the two prior drafts, I came up with a new

6    proposal and as you'll see from my email, I said to

7    Mr. Hirschfield, I think it would be helpful if we

8    had a discussion before going to the next step.

9         We had a discussion.  I don't

10   remember the content of that discussion.  The result

11   of that discussion was this draft, which I then sent

12   back, and it says what it says.

13        I do recall, and the paper record

14   shows this as well, that one of the big changes from

15   the prior draft to this draft was to expand from

16   simply preference actions to avoiding power claims.

17   And so it was a broader set of claims that we were

18   covering and that may have been the reason for

19   changing it to defendants.

20   Q.        But you never called that to the

21   attention of the Trustee?

22   A.        No.  I put it in the document.  You

23   mean I called him up and said specifically, I want

24   you to notice this?  No, I did not call it out

25   specifically.  I don't remember any particular

**Picard v. JPMorgan**                                      **Richard Levine  5-16-14**

                                                                          55

1    conversations we had over it, but the written record

2    is, as you presented to me in T-4, I believe is

3    accurate.

4           Q.        Let's go back to the first version,

5    if you will.

6           A.        Um-hum.   T-2.

7           Q.        Direct your attention to paragraph

8    12(b).

9           A.        Yes.

10          Q.        Just so we'll have it clear for the

11   record, since I seem to be chowdering things up

12   here, 12(b) reads:  "The customer received transfers

13   from BLMIS that are in excess of $25 million in the

14   aggregate either as fictitious profits (calculated

15   on a cash-in/cash-out basis) or after September 11,

16   2008 and that are recoverable under the Bankruptcy

17   Code section 544, 547, 548 or 550 (the 'Total

18   Recoverable Amount' of the customer)."

19                    What was the significance of the date

20   September 11, 2008?

21          A.        It was 90 days before the SIPA

22   liquidation proceeding commenced.

23          Q.        So what was the purpose of paragraph

24   12(b)?

25          A.        To describe one of the conditions

Picard v. JPMorgan                                   Richard Levine   5-16-14

56

1    that would have to be satisfied for the equal

2    treatment provision to apply.

3         Q.        And what was the condition that 12(b)

4    described?

5         A.        You just read it.

6         Q.        I understand.  Well, let me rephrase

7    it.  Is this description one of a preference action

8    for fictitious profits?

9         A.        Yes and no.  As noted, it could be a

10   preference action in that it was within 90 days, or

11   it could be a fraudulent transfer action.

12                  A claim for fictitious profits would

13   not be a preference claim because a fictitious

14   profits payment is not for or on account of an

15   antecedent debt; therefore, it's only a fraudulent

16   transfer claim.  So, hence, the references in the

17   latter part of the provision to Sections 544 and

18   548.

19        Q.        So those -- just to understand your

20   testimony, is the references to 547 and 548 to the

21   portion of the paragraph that deals with fictitious

22   profits?

23        A.        Yes.

24        Q.        So the --

25        A.        Excuse me.  It applies to fictitious

57

1    profits and it applies to transfers after September

2    11, 2008 because, as I said earlier, the Trustee's

3    avoiding powers are cumulative.

4           Q.       So, let me just -- just to finish

5    this discussion or question -- is it fair to state

6    that the two claims that are identified in 12(b) are

7    claims for fictitious profits or preference claims?

8           A.       Loosely, yes.

9           Q.       Okay.  What do you mean by loosely?

10          A.       Well, preference claims in this

11   context are also avoidable as fraudulent transfers.

12          Q.       Now, going back to the -- let me jump

13   back.  If you go back to T-4.

14          A.       Sure.

15          Q.       I'm directing your attention now to

16   the concerns of the Trustee.  Actually I'm directing

17   your attention to the email that you sent to

18   Mr. Hirschfield and Mr. Lucchesi.  Do you see that?

19          A.       Yes.

20          Q.       It's the last one in the chain.

21          A.       Yes.

22          Q.       It says, "Here's my rough cut."  Do

23   you see that?

24          A.       Yes.

25          Q.       And you state:  "I've tried to be

Picard v. JPMorgan                                    Richard Levine   5-16-14

58

1    accommodating to the concerns that you have

2    previously expressed."

3                    What did you understand to be the

4    concerns of the Trustee that you're referring to

5    here?

6         A.        Let's see if I can put myself back

7    five years and recall.

8                    I don't recall the specific concerns

9    that had been expressed with respect to the

10   differences between the April 13 and the May 4

11   drafts.

12        Q.        Yeah.

13        A.        All I recall is the general concern

14   that the Trustee wanted a narrower equal treatment

15   provision and Optimal wanted a broader equal

16   treatment provision, and as a negotiator I was

17   sensitive to trying to bridge that gap.

18                   MR. SHEEHAN:  Can I have that read

19   back, please.

20                   (Answer read.)

21        Q.        Now, let's go back to the Trustee

22   version, which I think is T-3.

23        A.        Yes.

24        Q.        Again directing your attention to the

25   portion of paragraph 13 -- do you have that in front

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

59

1   of you?

2       A.      Yes.

3       Q.      -- which reads:  "For the purposes of

4   this paragraph, 'similar claim' means a claim by the

5   Trustee against a former BLMIS customer."

6               Do you see that?

7       A.      Yes.

8       Q.      Would it be a fair statement that

9   that represented a concern of the Trustee?

10              MR. GREENWALD:  Objection.

11      A.      I have no way of knowing.

12      Q.      Well, you say the document speaks for

13  itself when you get it.  When you read that, what

14  did it mean to you, when the Trustee says, "'similar

15  claim' means a BLMIS former customer against whom

16  the Trustee has a claim for over $100 million"?

17      A.      Yeah, I read that to mean that the

18  Trustee wanted to limit this equal treatment

19  provision to claims against customers.

20      Q.      And did you see that as a material

21  aspect of this?

22      A.      I simply don't remember.

23      Q.      You don't remember whether that was

24  material to you or not?

25      A.      I don't remember.  I remember the 100

Picard v. JPMorgan                                    Richard Levine  5-16-14

60

1    million was material, but I don't remember about the

2    customer.

3          Q.        When you sent it back, you changed

4    that term to defendants, did you not?

5          A.        Yes.

6          Q.        All right.

7          A.        Well, when I sent it back -- I

8    quarrel with that a little bit because I didn't just

9    send it back.  As I described, I came up with a new

10   concept, we had a conversation about it and then I

11   sent a proposal.  So I didn't just send this back.

12         Q.        Did you in the conversation say, I'm

13   changing it from "customer" to "defendants"?

14         A.        I don't recall that I did.  I don't

15   recall that I didn't, but I have no recollection of

16   that conversation.

17         Q.        So when you say you were addressing

18   the concerns, did you not think that changing it

19   from "customer" to "defendant" was not addressing

20   their concern?

21                   MR. GREENWALD:  Objection.

22         Q.        Let me back up.

23         A.        I understand the question and I'll

24   answer it.

25         Q.        Let me go all the way back to the

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

61

1   beginning.

2                 What was Optimal?  Was it a customer?

3       A.        Optimal was a customer, yes.

4       Q.        Right.  And you wanted to get ahead

5   of the game so that you could settle early but not

6   look foolish?

7       A.        In colloquial terms, yes.

8       Q.        And yo u were talking about other

9   customers, were you not?

10      A.        Initially.

11      Q.        Yes.  And not only initially, was not

12  the Trustee saying similar, meaning customers?

13      A.        The Trustee did say that.

14      Q.        Right.  And when you changed it, you

15  didn't think that was material enough to highlight

16  it to the Trustee that you changed it?

17      A.        Let me put it this way.  I didn't

18  highlight anything that I changed to the Trustee.  I

19  sent a revised draft after a discussion.  I didn't

20  say please note this provision, please note that

21  provision, I didn't say any of that.  I just said, I

22  tried to be accommodating.  That is what a

23  negotiator does.

24      Q.        Well then why did you leave in the

25  phrase "other similar customers" in the heading of

**Picard v. JPMorgan**                    **Richard Levine   5-16-14**

62

1   paragraph 13 on the May 9 draft?

2        A.        Ah, that I can answer.

3        Q.        Yes?

4        A.        Because we all have strengths and

5   weaknesses in drafting.  And one of my weaknesses is

6   that I don't pay a lot of attention to section

7   headings.  That section heading was in the draft.  I

8   left it there.  Didn't even think about it.

9        Q.        Even though you changed and took

10  "customer" out of the rest of it, you never looked

11  at the heading?

12       A.        That -- let me be really clear.  I

13  cannot tell you specifically I looked at this, I

14  thought about it, I decided to leave the heading in.

15  But my practice in drafting, and I've learned this

16  from doing it for 35 or 40 years -- closer to 40 --

17  my practice in drafting is I occasionally, more than

18  occasionally, often, once a heading gets set, even

19  though the provision changes, I don't go back and

20  relook at it.  And so based on my normal practice,

21  I'm guessing that's what happened here.

22       Q.        You don't think that leaving in

23  "other similar customers" was misleading?

24       A.        You know, I'm dealing with a very

25  sophisticated law firm.  I don't think anything I

63

1    would do to them that is on paper that they read and

2    they have to sign off on would be misleading in any

3    way.

4         Q.       Why would they not have thought that

5    when you said "other similar customers" in the

6    heading, every previous draft had dealt with similar

7    customers, that when you said defendants you didn't

8    mean customers?

9         A.       That's an argument and I'm not going

10   to answer it.

11                 MR. GREENWALD:  Can we take a break?

12                 MR. SHEEHAN:  Sure.

13                 (Recess 10:57-11:05 a.m.)

14   BY MR. SHEEHAN:

15        Q.       Mr. Levin, just to turn to a

16   different topic, in your declaration, and we're

17   going to mark that now so you have it in front of

18   you because we're going to ask a series of

19   questions.

20        A.       Can I put these away?

21        Q.       Yes, you may, absolutely.  I think --

22   I don't think we're going back to them, but if we

23   do...

24                 T-5.

25                 (Exhibit T-5 marked for

Picard v. JPMorgan                    Richard Levine  5-16-14

64

1    identification.)

2         Q.          I show you, for the record,

3    Mr. Levin, I show you what has been marked T-5 by

4    the reporter.  Can you identify that document for

5    us, please.

6         A.          Declaration of Richard Levin

7    regarding application of the equal treatment

8    provision to the settlement agreement between the

9    Trustee and JPMorgan Chase & Co. et al.

10        Q.          I'm going to direct your attention to

11   paragraph 19 of the declaration.  I just have a few

12   questions about it, but you can read the whole thing

13   if you want.

14        A.          I am looking at paragraph 19.

15        Q.          In there the concept of negotiation

16   leverage is discussed.  Do you see that?

17        A.          Yes.

18        Q.          Does the term "negotiation leverage"

19   appear anywhere in the settlement agreement?

20        A.          No, it does not.

21        Q.          When you had discussions with counsel

22   for the Trustee during the course of settlement

23   negotiations, was the concept of negotiation

24   leverage discussed?

25        A.          I don't recall.

65

1       Q.      Is it a fair statement that the

2  thought or concept of negotiation leverage was in

3  your mind and not discussed?

4       A.      It's possible.  I just don't

5  remember.

6       Q.      Okay.  Let's turn to paragraph 21(b).

7       A.      I'm there.

8       Q.      Again, I'm going to, just for

9  purposes of the record, read in what I want to talk

10 about.

11              If you go down to page 13 and it's

12 the start of the second paragraph.  For purposes of

13 the record I'm just going to read it in:

14              "To the best of my recollection,

15 assisted by my review of the earlier drafts, I

16 included the 'nature of the avoiding power claims'

17 factor to identify the difficulty the Trustee might

18 have in pursuing an avoiding power claim against

19 another defendant and, with it, the concomitant

20 reduction of the Trustee's settlement negotiating

21 leverage.  If the claim was easier to pursue, such

22 as a 90-day transfer or a fictitious profits

23 transfer, then the Trustee would enjoy more

24 leverage, making the circumstances of any resulting

25 settlement more similar to the circumstances of the

66

1   SUS and Arbitrage settlement.  But if the claim was

2   more difficult to pursue, such as to avoid a two- or

3   six-year transfer that was a return of principal,

4   then the Trustee would have less settlement

5   negotiating leverage, making the circumstances less

6   similar."

7              Do you see that?

8        A.     I do.

9        Q.     Would you not agree with me that the

10   Optimal claim in issue was a 90-day transfer or a

11   fictitious profits transfer?

12       A.     The Optimal transferrers were either

13   a 90-day or a fictitious profits transfers.

14       Q.     And that the claims that the Trustee

15   had against JPMorgan Chase, although there were

16   certain portions of it that were in the 90-day

17   realm, that the vast majority of it was either a

18   subsequent transfer or a two- or six-year transfer?

19       A.     Subsequent or two- or six-year, yes.

20       Q.     So based on your paragraph, wouldn't

21   the Optimal -- would not the JPMorgan Chase fall

22   outside of the equal treatment clause?

23       A.     Not necessarily, no.  It would have

24   fallen out had there been express conditions as in

25   the April 13 and May 4 drafts, but in the final

67

1    draft that the Trustee agreed to, which listed

2    factors and looked more generally to similar

3    circumstances rather than to express conditions,

4    such as was it a 90-day transfer or not, was it

5    fictitious profits or not.  Since it is written more

6    broadly, it does not necessarily fall outside.

7    That's what this dispute is about, is whether -- let

8    me say it this way.

9                    The equal treatment provision applies

10   to, quote, qualifying settlements, close quote,

11   defined term.  The JPMorgan Chase settlement is a

12   qualifying settlement.  So it falls within the equal

13   treatment provision.

14                   Whether the circumstances are similar

15   or not similar is a question of whether the --

16   whether the Trustee is required to provide a refund.

17   Not a question of whether it falls within the equal

18   treatment paragraph.

19        Q.       My question, though, is this:  This

20   declaration represents your thinking about -- you're

21   stating what the negotiations represented and your

22   understanding of the agreement.  Is that not

23   correct?

24        A.       Yes.

25        Q.       And your understanding is, that if

**Picard v. JPMorgan**                                    **Richard Levine  5-16-14**

68

1    you have a fictitious profits or 90-day claim,

2    that's much more similar to Optimal than a two- or

3    six-year or subsequent transferee claim; is that not

4    correct?  You say less similar.

5         A.        That particular claim -- well, I

6    didn't say the claim was less similar.  I said the

7    circumstances were less similar.

8         Q.        Uh-ha.  So, you'd have to take into

9    account, therefore, all the circumstances

10   surrounding the claim?

11        A.        That is what the equal treatment

12   provision says.

13        Q.        Okay.  Would you, in your

14   experience --

15             MR. GREENWALD:  Could you please read

16   that back, the question and answer.

17             (Record read.)

18        Q.        All right.  So, in assessing JPMorgan

19   Chase, you would have to look at all the nature of

20   the claims, as to whether it was similar or not,

21   correct?

22        A.        You have to look at whether the

23   circumstances were similar.

24        Q.        Okay.  The circumstances would

25   include an assessment of the claims, would it not?

69

1        A.        Yes.  In fact, that's the second

2   factor that's listed.

3        Q.        And what you're saying in this

4   paragraph is when the claims are different, like a

5   two- or a six-year, as a circumstance, that makes it

6   less similar?

7        A.        Yes.  Makes the circum -- you said

8   "it."  Just to be clear, it makes the circumstances

9   less similar.

10       Q.        Right.  Okay.

11                 Let's go to paragraph 21(d).  The

12   heading of this paragraph, for the record, is

13   "Defendant's Knowledge or Complicity."  Let me see

14   where I want to pick this up.

15                 I'm going to pick it up right at the

16   very beginning and I'll read this into the record:

17                 "This factor appeared only in the

18   last draft, which Cravath proposed only after the

19   expansion of the equal treatment provision's scope

20   to include two- and six-year transfers.  Again, I

21   proposed the expansion to prevent the Trustee from

22   settling avoiding power claims covering several

23   transfers in a way that allocated portions of the

24   settlement to 90-day claims, to two-year claims, and

25   to six-year claims.  Under the narrower formulation,

70

1    the Trustee could, for example, settle the 90-day

2    claims for 85 percent and two-year claims for

3    substantially less, so that the overall percentage

4    was below 85 percent, even though the Trustee might

5    have a solid case on the two-year transfers under

6    548(a)(1)(A) and section 548(c), lack of good faith,

7    based on the defendant's knowledge or complicity.

8                    "The Trustee agreed in paragraph P of

9    the agreement that SUS and Arbitrage did not know of

10   and were not complicit in the BLMIS fraud and

11   therefore did not pursue Arbitrage for a 35 million

12   dollar, two-year transfer that was a return of

13   invested principal.  If another defendant knew or

14   was complicit or otherwise did not meet the good

15   faith requirement of Section 548(c) as a defense to

16   a two-year or six-year claim for return of

17   principal, the Trustee would have leverage in

18   negotiating a settlement that was at least as strong

19   as the leverage he had when negotiating with SUS and

20   Arbitrage, making the circumstances of any resulting

21   settlement more similar."

22                   Let me start first with the sentence

23   that says:  "The Trustee agreed in paragraph P of

24   the agreement that SUS and Arbitrage did not know of

25   and were not complicit."  Do you see that?

71

1          A.        Yes.

2          Q.        So, is that one of the circumstances

3    you would have to take into account as to whether it

4    was similar or not?

5          A.        Yes.

6          Q.        So the fact that Optimal didn't have

7    knowledge and somebody else did, if somebody did

8    have knowledge according to the Trustee, it would

9    make it less similar?

10         A.        Literally, yes.

11         Q.        So that -- and if the Trustee, under

12   the current law -- let me ask you, back up.  I want

13   to discuss 548 -- 546(e) at this point.  Okay.

14         A.        Yes.

15         Q.        Now, when you were negotiating March

16   of '09 do you know what the law required in terms of

17   the Trustee approving -- once the defense of good

18   faith had been raised, to prove bad faith on the

19   part of the transferee?

20         A.        Are you referring to 546(e)?

21         Q.        No.  I'm referring to the Bankruptcy

22   Code itself.  Forget 546(e).

23              At that time did 546(e) have any

24   application to the standard that would be enunciated

25   with regard to proving a two- or six-year transfer?

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

72

1      A.      546(e) doesn't have any application

2  to good faith one way or the other.

3      Q.      All right.  You're familiar with

4  Judge Rakoff's ruling, however, with regard to

5  proving actual knowledge, are you not?

6      A.      Yes.  He's had several rulings.

7      Q.      Let's deal with the last one.  Strike

8  the Katz/Wilpon reference of 546(e).  The one that

9  he just did under 548(a)(1)(A).  Are you familiar

10  with that?

11      A.      Yes.  Actually that was under 548(c).

12      Q.      Okay, of course it was, that's right.

13              But what is your understanding of

14  recent ruling by Judge Rakoff as to what the

15  Trustee's burden is, both in pleading and in proof,

16  with regard to proving actual knowledge?

17      A.      To be clear, that ruling was issued

18  in April 2014?

19      Q.      Yes.

20      A.      My understanding of his ruling was

21  that a defendant would be -- I'm sorry, did you say

22  with respect to pleading and proof?

23      Q.      Yes.

24      A.      My understanding of this ruling was

25  that a defendant would be in good faith -- in this

73

1    case, in this SIPA case involving the particular

2    kind of fraud dealing with securities involved here,

3    and he distinguished a SIPA case from an ordinary

4    bankruptcy case on that point -- the defendant would

5    be in good faith unless the defendant knew of the

6    fraud or, I think his words were, was willfully

7    blind to it.  I don't remember if he used -- he used

8    that in prior decisions, but I don't remember if he

9    used it in this one, but I think he did.  And that

10   it was the Trustee's burden to plead the defendant's

11   lack of good faith rather than the defendant's

12   burden to assert good faith as an affirmative

13   defense.

14          Q.        Um-hum.  Prior to that --

15          A.        Did I get that right?

16          Q.        I believe so.

17                    In 546 -- in the context of 546(e),

18   did he render a ruling with regard to the knowledge

19   that was required to be proven by the Trustee in

20   order to avoid the application of 546(e) to

21   fraudulent transfer claims?

22          A.        Read that back, please.

23                    (Question read.)

24          A.        I don't recall that he ruled in the

25   context in which -- that you just described.

**Picard v. JPMorgan**                              **Richard Levine  5-16-14**

74

1          Q.          What is your understanding?

2          A.          My understanding is that 546(e),

3    which is referred to as a safe harbor from avoiding

4    powers, certain avoiding powers in certain

5    circumstances, does not exempt or provide a safe

6    harbor to transfers that are avoidable under Section

7    548(a)(1)(A), which we refer to as an actual

8    fraudulent transfer.  That is, a transfer with

9    actual intent to hinder, delay or defraud creditors.

10   And therefore the ruling doesn't relate to 546(e) so

11   much as it relates to what is required for the

12   Trustee to plead and approve a 541(a)(1)(A) claim.

13   And in his most recent ruling last month, he said

14   the Trustee needed to plead lack of good faith in

15   this context, in this particular kind of a SIPA

16   case.

17          Q.          Is there not a ruling by Judge Rakoff

18   that the Trustee can actually avoid the application

19   of 546(e) to all the fraudulent transfers for the

20   six-year period if, in fact, he can show that the

21   defendant possessed actual knowledge of the fraud?

22          A.          I don't recall that ruling.  I won't

23   say there isn't.  He's done many and I've tried to

24   follow them, but I don't recall that one.

25                      But by the way, after this is done

75

1    I'd be interested in getting the citation for it

2    since I try to follow the case law on this.

3           Q.        Sure, of course.  Happy to provide

4    it.

5                     Were either of those decisions in

6    place in March of '09?

7           A.        The calendar speaks for itself,

8    Mr. Sheehan, come on.

9           Q.        Well, for the record, though.  But if

10   in fact --

11                    MR. GREENWALD:  Nothing that Rich

12   said on that subject has been changing.

13          A.        Let me see, was 2014 after 2009?  I

14   think the answer is yes.

15          Q.        Thank you.

16                    (Comments off the record.)

17          Q.        In any event, in March of '09, if

18   those decisions had been in place, would you have

19   settled?

20                    MR. GREENWALD:  Hold on.  You know,

21   I'm going to object to that as work product.

22   Speculation, too, but a better objection is work

23   product.  You're asking to get inside his head as to

24   what he would have recommended.

25          A.        I don't know, but I will tell you --

**Picard v. JPMorgan**                                      **Richard Levine  5-16-14**

76

 1          Q.          Let me ask it differently.  Could the

 2    Trustee have brought a preference action under these

 3    current rulings against Optimal --

 4                      Mr. GREENWALD:  Hold on, wait.

 5          Q.          Could the Trustee have brought a

 6    preference action against Optimal under these

 7    rulings in 2009 if those rulings were in place then?

 8                      MR. GREENWALD:  I think we should

 9    confer about this privilege issue.

10                      MR. SHEEHAN:  Sure.

11                      (Discussion off the record between

12    the witness and his counsel outside the deposition

13    room.)

14                      MR. GREENWALD:  Okay.  We're going to

15    stick with the instruction not to answer that on the

16    ground of attorney work product.  It's also

17    speculative, but I'm not gonna -- that's not a basis

18    for instruction not to answer.

19          Q.          Okay.  Let's say you had not settled.

20          A.          I'm sorry?

21          Q.          You had not settled.  The case is

22    still outstanding.  We sued you.  Would you make a

23    motion to dismiss today based on the law as you know

24    it?

25                      MR. GREENWALD:  That's also work

**Picard v. JPMorgan**                                      **Richard Levine  5-16-14**

77

1   product.  He's here to talk about the facts of the

2   settlement.

3          Q.        Let me ask it a different way.

4                    When the law changes, is that a

5   circumstance you take into account on whether it's

6   equal or similar?

7                    MR. GREENWALD:  Objection.

8                    MR. SHEEHAN:  To what?

9          A.        The agreement says similar

10  circumstances and it says the factors are

11  nonexclusive.

12         Q.        Correct.  So if the law changes and

13  the Trustee's burden becomes substantially higher

14  than that which existed in March of '09, that's a

15  circumstance you take into account in terms of

16  whether it's similar or deserves equal treatment; is

17  that not correct?

18         A.        I don't doubt that you will argue

19  that to Judge Bernstein and that will be for him to

20  decide.

21         Q.        You don't think that's a factor?

22                   MR. GREENWALD:  Objection.

23         Q.        I'm not asking --

24         A.        You're asking what --

25         Q.        You're a lawyer.

**Picard v. JPMorgan**                                **Richard Levine   5-16-14**

                                                                        78

1          A.         You're asking what we're going to

2    argue in this case.   I don't think we need to answer

3    that.

4          Q.         Is it your position then that it's

5    not a factor?

6          A.         That is something for the briefs and

7    the argument in this case.

8          Q.         No.  You've opined on this.  You've

9    said what's similar and dissimilar.  You said if

10   it's a six-year claim or a four-year claim.  Why are

11   they dissimilar to a preference?

12         A.         Because the standards -- because what

13   the Trustee has to prove is different.

14         Q.         Correct.  So if that changes --

15   you've already admitted that that's a circumstance,

16   have you not, that the law changes and the elements

17   that the Trustee has to prove, that that is a

18   circumstance that has to be taken into account?

19   Haven't you admitted that?

20         A.         I still think this is just argument.

21         Q.         I understand that, but you put the

22   declaration in; I didn't, Mr. Levin.  You're the one

23   who said there was a difference.  I'm asking you

24   now.  This is a fair question.

25                    MR. GREENWALD:  This is now

79

1    argumentative and I'm going to object on that

2    ground.  If it keeps up we'll --

3                    MR. SHEEHAN:  Well, argumentative,

4    are you directing him not to answer?

5                    MR. GREENWALD:  No, I'm not going to

6    direct him not to answer at this point, but I do

7    think the tenor, the tone, the nature of the

8    questions being asked have, as he's pointed out,

9    crossed the line from asking him factual questions

10   about the circumstances of negotiations --

11                   MR. SHEEHAN:  All right.  I apologize

12   if I get a little too -- I am a passionate attorney

13   and I apologize for my passion.

14        A.        I know you are.  No apology needed.

15   I understand your position.

16        Q.        Let's go back to 21(b).

17        A.        Yes.

18        Q.        Where you have submitted a

19   declaration to the Court suggesting what

20   circumstances you believe should be taken into

21   account in terms of -- based on your negotiation,

22   your familiarity with the agreement, as to when the

23   equal treatment clause applies.  Correct?

24        A.        Not exactly correct.

25        Q.        No?

80

1          A.          Because the lead-in, the first words

2     of that paragraph are, "To the best of my

3     recollection."

4          Q.          Right.

5          A.          This is what I understood it at the

6     time to mean.

7          Q.          Well, let's pick up on this phrase.

8     Your phrase, "If the claim was easier to pursue,

9     such as a 90-day transfer or a fictitious profits

10    transfer."  Do you see that?

11         A.          Yes.

12         Q.          So you're positing that that kind of

13    claim is easier to pursue, correct?

14         A.          Yes.

15         Q.          All right.  In contradistinction to

16    something that might be more difficult to prove?

17         A.          Yes.

18         Q.          And you then give an example of

19    what's more difficult to prove, correct?

20         A.          Correct.

21         Q.          All right.  So you're saying that if

22    the burden of proof is more difficult, that's a

23    factor that makes it less equal; is that correct?

24         A.          That is a factor that weighs on

25    whether the circumstances are similar, yes.

81

1       Q.        All right, fine, thanks.  My fault in

2   asking the question inappropriately.  I apologize.

3                 Anyway, let's go to 21(e).  It's

4   entitled "The Stage of the Litigation."

5       A.        Yes.

6       Q.        And I am reading, it's on page 15,

7   starting with the phrase "As is."  I think it's the

8   second sentence.

9       A.        Yes.

10      Q.        "As is common in settling preference

11  litigation with a trustee, I argued --" when you say

12  that, you mean to my colleagues here at Baker, you

13  were arguing with them?

14      A.        That's I think what I meant by this,

15  yes.

16      Q.        "I argued that an early settlement,

17  which reduced the resources the Trustee would have

18  to marshal to pursue recovery, warranted a

19  settlement more favorable to SUS and Arbitrage than

20  one reached after lengthy litigation.  The Trustee

21  apparently agreed, settling for 85 percent of the

22  avoiding power claims against SUS.  I wanted that

23  factor to be considered in determining whether the

24  equal treatment provision should apply, so that if a

25  defendant settled early in the litigation process,

82

1   this factor would be neutral.  But if the settlement

2   occurred after, or well after the Trustee's

3   commencement of litigation, then the factor would

4   weigh in favor of application of the equal treatment

5   provision, and an early settlement discount should

6   not be available."

7              My question is, just so I understand

8   this, are you saying that once we settled with

9   Optimal, that any litigation that took place after

10  that further down the line, just by the function of

11  period of time, it became less susceptible -- became

12  more susceptible to equal treatment?

13       A.       Let me answer your question this way.

14  As I said earlier in my deposition, there were two

15  factors that work here on early settlement.  One was

16  early stage of the plaintiff/defendant litigation,

17  the avoiding power litigation, and one was early

18  stage in the SIPA proceeding.

19              As you see, my declaration here

20  focuses on the early stage of this -- of the

21  adversary proceeding -- potential adversary

22  proceeding litigation.

23              My position on this was that if a

24  defendant came to the table quickly when the Trustee

25  called, that would be a similar circumstance.  But

Picard v. JPMorgan                                    Richard Levine   5-16-14

83

1    if a defendant fought in lengthy battle before

2    coming to the table, that would not -- that would be

3    dissimilar and, therefore, would lean toward

4    requiring a settlement to be at least 85 percent, or

5    the benchmark percentage, for the equal treatment

6    provision not to apply.  I'm sorry.  That got a

7    little garbled.  Obviously, if it's more than --

8         Q.        I was going to ask that it be read

9    back.

10        A.        If it's more than 85 percent, equal

11   treatment provision doesn't apply.

12        Q.        Of course.

13        A.        Because it's not a qualifying

14   settlement.

15                  But my point is that if the defendant

16   came to the table only after a lengthy fight, that

17   was not similar and, therefore, there would have to

18   be other factors that would justify the Trustee

19   settling for less than 85 percent to prevent the

20   application of the equal treatment provision.  Or to

21   prevent -- to prevent the refund.

22                  The reason I'm getting hung up here

23   is because --

24        Q.        I'm having a little trouble, too.  Go

25   ahead.

**Picard v. JPMorgan**                                      **Richard Levine   5-16-14**

84

1          A.          When I say application of the equal

2     treatment provision, what I said earlier in my

3     deposition was that it applies to a qualifying

4     settlement, which is more than the 40 million, less

5     than 85 percent.

6                    Sometimes I've used the phrase, and

7     you use it as well, apply the equal treatment

8     provision means the Trustee is required to provide a

9     refund.  Or said differently, that the circumstances

10    are sufficiently similar that the Trustee is

11    required to provide a refund.

12                    So, in my last answer what I was

13    referring to was not whether JPMorgan was a -- or

14    any settlement was a qualifying settlement, 40

15    million, 85 percent, but rather that if a defendant

16    fought long and hard and the Trustee came to a

17    qualifying settlement, unless the other factors

18    justified settling for less than 85 percent, that

19    that factor would lean to requiring the Trustee to

20    settle for 85 percent or more or, said differently,

21    that we would then be entitled to a refund.  Was

22    that clear?

23          Q.          I think I understand it.  It's the

24    temporal quality that I'm trying to understand

25    because of what you've said here.

**Picard v. JPMorgan**                           **Richard Levine   5-16-14**

85

1        A.        Yes.

2        Q.        So let me see if I can address it a

3    little bit differently.

4        A.        I mean, the problem with the

5    shorthands is that they sweep under a lot of

6    concepts.  And so my answer was lengthy because I

7    didn't want the shorthand to obscure some elements

8    that I think are required to really understand how

9    this works.

10       Q.        I think I understand it.  As I

11   understand what you're saying -- or let me rephrase

12   that.

13             That with regard to paragraph 21(e),

14   if the settlement takes place later, after some

15   lengthy battle, that fact alone, as one of the many

16   circumstances that would be taken into account, in

17   your opinion that fact alone would weigh in favor of

18   it applying -- getting equal treatment, but it would

19   have to be other factors that would justify the

20   Trustee in settling below 85 percent?

21       A.        I agree with your description except

22   for the very first part of your question where you

23   asked if that were my opinion.  What I'm discussing

24   here is what the -- my thinking was in proposing

25   this provision in the settlement agreement.  I'm not

**Picard v. JPMorgan**                                    **Richard Levine  5-16-14**

86

1    talking about the opinion -- you asked about

2    opinion, sounds like we're arguing about what the

3    result should be here.  My declaration goes to my

4    thinking at the time and that's what -- I'm agreeing

5    with you in that context.

6           Q.        Taking into account all the factors

7    that you've given us here in your declaration, why

8    do you think the JPMorgan Chase settlement qualifies

9    as a settlement that's covered?

10                    THE WITNESS:  Is this argument?

11                    MR. GREENWALD:  It is argument.

12                    THE WITNESS:  Okay to answer?

13                    MR. GREENWALD:  Umm...

14           Q.        Let me rephrase it and try to put it

15    more in the context --

16                    MR. GREENWALD:  Really is what I

17    thought the briefs would be covering.

18                    MR. SHEEHAN:  Well, quite frankly, I

19    didn't know why we were taking depositions.  In any

20    event, let me ask it differently.

21    BY MR. SHEEHAN:

22           Q.        If we went through the nonexclusive

23    factors, which ones do you think -- are there

24    certain factors that you think weigh in favor of the

25    qualification and some factors that don't?

**Picard v. JPMorgan**                                    **Richard Levine   5-16-14**

87

1      A.        That's the same question; it's just

2   phrased differently.  I think it's getting to the

3   argument of what the briefs are going to address.

4      Q.        And I'm not looking to argue.  Let me

5   see if I can get to my question a little bit better.

6   I don't know if I can.

7                Just dealing with -- let me get to

8   the -- rather than say it wrong here.  Okay, I think

9   you're probably right.  Trying to phrase this in the

10  form of a question.  It's probably just emanating

11  more from my curiosity as to why you think they're

12  similar.

13                MR. GREENWALD:  I guess that's what

14  it gets to, attorney work product.  Essentially

15  you're saying, can I have the outline of your brief.

16  Clearly you asking that, we would object it's work

17  product.

18                MR. SHEEHAN:  All right.  Could we

19  have two minutes?  I think I'm done.

20                (Recess taken.)

21  BY MR. SHEEHAN:

22      Q.        Just one last question.  One or two.

23  Whenever a lawyer says one or two, you know, that's

24  how it goes.

25                If we look at paragraph 13(c), which

Picard v. JPMorgan                                    Richard Levine   5-16-14

88

1    lists the nonexclusive factors, we've been talking

2    about taking into account all of the circumstances.

3    Is there any one of these that, standing alone,

4    would make it unqualified?  For example -- I'll even

5    give you an example.  For example, if someone can't

6    pay, do you start looking at the other examples if

7    they can't pay?  Not that that applies here, I

8    understand that.

9         A.        You asked whether that would make it

10   not qualifying.  No, it's still qualified

11   settlement, but would the equal treatment provision

12   not -- or would the circumstances be sufficiently

13   dissimilar?  Absolutely yes.  In fact, we had one of

14   those.  We negotiated, we investigated, I think it

15   was a settlement at like 45 percent or 50 percent of

16   defendants who could clearly not pay, even though

17   the factors were -- all of the other factors were

18   very strong and we said, that one overrides

19   everything.

20        Q.        Okay.

21        A.        And notice, it's listed first.  And I

22   said that in my declaration.  Yes.

23             MR. SHEEHAN:  Okay.  Thank you.

24   We're done.  Thank you very much.

25             THE WITNESS:  You're welcome.  Thank

**Picard v. JPMorgan**                    **Richard Levine  5-16-14**

89

1    you.

2              (Deposition concluded 11:42 a.m.)

3                      -o0o-

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Picard v. JPMorgan**                    **Richard Levine   5-16-14**

90

1                    CHANGES AND SIGNATURE

2

WITNESS NAME:   RICHARD LEVIN, ESQ.

3

PAGE/LINE                CHANGE                REASON

4

5        _____

6        _____

7        _____

8        _____

9        _____

10        _____

11        _____

12        _____

13        _____

14        _____

15        _____

16        _____

17        _____

18        _____

19        _____

20        _____

21        _____

22        _____

23        _____

24        _____

25        _____

**Picard v. JPMorgan**                         **Richard Levine  5-16-14**

91

1      I, RICHARD LEVIN, ESQ., have read the

2   foregoing deposition and hereby affix my signature

3   that same is true and correct, except as noted

4   above.

5                                    _____

6                                    RICHARD LEVIN, ESQ.

7

8   THE STATE OF _____

9   COUNTY OF _____

10

11      Before me, _____, on this day

12   personally appeared _____, known to me

13   (or proved to me on the oath of or through

14   _____ (description of identity card or other

15   document) to be the person whose name is subscribed

16   to the foregoing instrument and acknowledged to me

17   that he/she executed the same for the purpose and

18   consideration therein expressed.

19      Given under my hand and seal of office on this

20   _____ day of _____, _____.

21

22                                    _____

                                     NOTARY PUBLIC IN AND FOR

23                                    THE STATE OF _____

24

25   My Commission Expires: _____.

Picard v. JPMorgan                                    Richard Levine  5-16-14

92

1                        REPORTER'S CERTIFICATION

2

3              I, NANCY C. BENDISH, a Certified Court

4     Reporter and Notary Public of the States of New York

5     and New Jersey, do hereby certify that prior to the

6     commencement of the aforementioned examination

7     RICHARD LEVIN, ESQ. was sworn by me to testify the

8     truth, the whole truth and nothing but the truth.

9              I DO FURTHER CERTIFY that the

10    foregoing is a true and accurate transcript of the

11    testimony as taken stenographically by and before me

12    at the time, place, and on the date hereinbefore set

13    forth.

14             I DO FURTHER CERTIFY that I am neither

15    a relative nor employee nor attorney nor counsel of

16    any party in this action and that I am neither a

17    relative nor employee of such attorney or counsel,

18    and that I am not financially interested in the

19    event nor outcome of this action.

20

21

22             Notary Public of the State of New York

23

24    Dated:  May 17, 2014

25

**BENDISH REPORTING, INC.**
**877.404.2193**

08-01789-cgm    Doc 7181-34    Filed 06/27/14    Entered 06/27/14 20:26:54    Exhibit B
Picard v. JPMorgan                    Pg 94 of 107                    Richard Levine   5-16-14

[Page 1]

---

### A

**abetting** 39:14
**ability** 31:10
**able** 7:13
**absolutely** 43:2 63:21
  88:13
**accommodating** 58:1
  61:22
**accompanied** 49:3
**account** 17:17 38:18
  38:20 56:14 68:9
  71:3 77:5,15 78:18
  79:21 85:16 86:6
  88:2
**accounts** 15:3
**accurate** 53:22 55:3
  92:10
**achieve** 19:9
**acknowledge** 16:23
**acknowledged** 91:16
**Act** 12:9
**action** 19:21 20:5,8
  20:15 30:19 31:9,11
  31:25 32:2,6,25,25
  33:6,9,10 34:12
  35:21 36:17 39:12
  39:18,19 56:7,10,11
  76:2,6 92:16,19
**actions** 24:8 41:6
  54:16
**actual** 18:16 34:14
  72:5,16 74:7,9,21
**addition** 30:10
**address** 85:2 87:3
**addressing** 60:17,19
**admitted** 78:15,19
**adopt** 42:19
**advantage** 23:4
**adversary** 23:5 82:21
  82:21
**advise** 8:9,23
**Adv.Pro.No** 1:14
**affirmative** 31:3
  73:12
**affix** 91:2
**aforementioned** 92:6

**aggregate** 55:14
**ago** 19:14 49:10,17
**agree** 7:14 14:19
  21:25 45:4 48:19
  50:13,15 66:9 85:21
**agreed** 21:15 67:1
  70:8,23 81:21
**agreeing** 86:4
**agreement** 3:15,17
  3:18,19 6:7 15:1
  26:16 40:9,12,19
  43:21 45:21 47:17
  47:19,21 64:8,19
  67:22 70:9,24 77:9
  79:22 85:25
**Ah** 32:19 62:2
**ahead** 61:4 83:25
**aiding** 39:14
**al** 3:16 64:9
**allegations** 34:5
**allocated** 69:23
**allowed** 41:11
**allows** 28:1
**amend** 30:22
**amount** 21:7,10 41:7
  55:18
**analysis** 19:19
**analyze** 8:12,13,19
**analyzed** 8:18 20:25
**ANIM** 2:19
**answer** 8:14 9:5,18
  10:1 15:17 20:17
  30:6 32:20,23 35:2
  37:11,13,17,20
  53:12 58:20 60:24
  62:2 63:10 68:16
  75:14 76:15,18 78:2
  79:4,6 82:13 84:12
  85:6 86:12
**antecedent** 17:17
  56:15
**anyway** 27:14 39:24
  81:3
**apologize** 35:5 79:11
  79:13 81:2
**apology** 79:14

**apparently** 81:21
**appear** 48:6,9 64:19
**appeared** 23:18
  69:17 91:12
**appears** 45:5,18
  46:14 48:18
**applicable** 27:23
**application** 31:21
  64:7 71:24 72:1
  73:20 74:18 82:4
  83:20 84:1
**applied** 42:18
**applies** 56:25 57:1
  67:9 79:23 84:3
  88:7
**apply** 31:13 56:2
  81:24 83:6,11 84:7
**applying** 85:18
**approve** 74:12
**approving** 71:17
**April** 58:10 66:25
  72:18
**Arbitrage** 7:5 14:25
  15:2 19:5 44:12
  66:1 70:9,11,20,24
  81:19
**area** 5:1
**argue** 31:6 77:18
  78:2 87:4
**argued** 41:3 81:11,16
**arguing** 51:9 81:13
  86:2
**argument** 53:5 63:9
  78:7,20 86:10,11
  87:3
**argumentative** 79:1
  79:3
**arms** 24:15
**Arps** 4:21
**arrive** 21:21 23:11
**articulated** 14:6 17:2
**asked** 9:9,10,25 30:5
  41:25 42:20 79:8
  85:23 86:1 88:9
**asking** 16:25 20:20
  20:21,22 75:23

**77:23,24 78:1,23**
  79:9 81:2 87:16
**aspect** 59:21
**assert** 16:22 73:12
**asserted** 19:13,14
  27:7,16 39:13
**asserting** 28:24
**assertion** 34:17
**assessing** 68:18
**assessment** 16:15,21
  68:25
**asset** 23:14
**assets** 23:2
**assigned** 33:13
**assisted** 65:15
**assume** 27:13 42:25
  52:24 53:5
**assumed** 52:18,18
**attached** 46:20 47:11
**attachment** 47:15
**attention** 7:21 25:2
  25:12,14 44:4 46:2
  47:18 48:11 54:21
  55:7 57:15,17 58:24
  62:6 64:10
**attorney** 76:16 79:12
  87:14 92:15,17
**authorized** 9:22
**available** 20:17 82:6
**Avenue** 2:17
**avoid** 27:19 66:2
  73:20 74:18
**avoidable** 28:21
  34:11 57:11 74:6
**avoidance** 28:24
  36:20
**avoided** 35:18
**avoiding** 11:12 23:2
  23:12,13,22 24:8
  27:4,8 35:21,24
  36:6,17 41:6 48:15
  54:16 57:3 65:16,18
  69:22 74:3,4 81:22
  82:17
**aware** 17:23 24:17,19
  39:5,17,25

08-01789-cgm    Doc 7181-34    Filed 06/27/14    Entered 06/27/14 20:26:54    Exhibit B
Picard v. JPMorgan
Pg 95 of 107
Richard Levine   5-16-14

[Page 2]

**a.m** 2:7 63:13 89:2

## B

**B** 3:12 4:1 48:11
**back** 11:19 20:3 22:2
  27:19 28:1,5 33:21
  37:12 40:10 43:8
  45:8 49:23 51:18
  52:13 54:12 55:4
  57:12,13,13 58:6,19
  58:21 60:3,7,9,11
  60:22,25 62:19
  63:22 68:16 71:12
  73:22 79:16 83:9
**bad** 71:18
**bait** 51:10
**Baker** 2:4,11 45:19
  81:12
**balance** 38:18
**bank** 1:19 16:16
  25:25
**banker** 29:5 40:8
**banking** 26:22 28:7
  28:11,16,20,25 29:7
**bankruptcy** 1:1 5:5,8
  5:16,22 6:1 12:9
  13:5 15:4 17:5 19:8
  20:23,24 22:14,23
  23:24 27:6,8,17,22
  28:12,13,17 29:8,13
  35:15,17 37:3 55:16
  71:21 73:4
**banks** 24:19
**Bar** 13:8
**based** 19:10,19 23:9
  23:15,24 24:5 28:17
  62:20 66:20 70:7
  76:23 79:21
**basis** 34:16 55:15
  76:17
**battle** 83:1 85:15
**began** 10:12
**beginning** 7:22 61:1
  69:16
**begins** 48:12
**believe** 26:3 28:24

43:14,20 44:22
  53:21 55:2 73:16
  79:20
**benchmark** 40:19
  83:5
**BENDISH** 2:2 92:3
**benefit** 17:16 41:13
  41:14
**Bernard** 1:7,11,15,16
**Bernstein** 77:19
**best** 14:20 22:4 65:14
  80:2
**better** 15:19,23 75:22
  87:5
**beyond** 39:4
**big** 54:14
**bipartisan** 5:17
**bit** 10:16 60:8 85:3
  87:5
**blind** 73:7
**BLMIS** 2:15 7:24
  8:10,12,20 15:3
  17:24 19:16 24:20
  29:3 31:22 37:18
  38:12,14,21,23 40:8
  46:8 55:13 59:5,15
  70:10
**BLMIS's** 29:5 38:17
**body** 48:5
**bona** 13:11
**bottom** 25:15
**break** 17:25 21:22
  63:11
**bridge** 58:17
**brief** 87:15
**briefs** 78:6 86:17
  87:3
**bring** 31:25 32:2,5
  33:11,15
**brings** 33:12
**broad** 8:13
**broader** 54:17 58:15
**broadly** 67:6
**brought** 17:7 24:25
  27:21 28:8 32:24
  33:6 35:21 76:2,5

**BROWN** 2:13
**Building** 24:24
**burden** 35:23 36:20
  72:15 73:10,12
  77:13 80:22
**business** 31:2,3,7,15
**busy** 53:23
**B.A.P** 36:3

## C

**C** 2:2,10 4:1 92:3
**calculated** 55:14
**calendar** 75:7
**call** 6:16 7:13,16
  10:13,14,25 11:2
  14:13 16:8,24 26:18
  26:20 45:11 49:2
  54:24
**called** 6:14 7:3,4 9:19
  10:23 11:1 13:18
  15:14,21 18:10
  54:20,23 82:25
**calling** 26:18
**card** 91:14
**careful** 10:19
**case** 17:21 22:14,21
  22:23,25 23:3,6,21
  39:2 70:5 73:1,1,3,4
  74:16 75:2 76:21
  78:2,7
**cases** 22:23 42:18
**cash-in/cash-out**
  55:15
**Casual** 12:14
**categories** 27:4 29:15
**Century** 37:1,9,25
  38:17,20
**certain** 6:6 66:16
  74:4,4 86:24
**certainly** 32:5
**CERTIFICATION**
  92:1
**Certified** 2:2 92:3
**certify** 92:5,9,14
**chain** 57:20
**change** 32:10,17,21

49:5 50:16,17,18
  52:10,11 53:10 90:3
**changed** 6:1 52:6
  53:8 60:3 61:14,16
  61:18 62:9
**changes** 54:14 62:19
  77:4,12 78:14,16
  90:1
**changing** 48:25 54:19
  60:13,18 75:12
**Chapter** 12:8 17:22
**characterization**
  44:1
**characterize** 17:6,8
**characterized** 22:10
  43:24
**chart** 25:14 26:18
**Chase** 1:19,19 3:16
  25:3,24 27:3 28:9
  29:3,4 30:4 33:1
  36:25 37:6,6,15
  38:1,7,13 39:7,20
  40:2 64:9 66:15,21
  67:11 68:19 86:8
**Chase's** 38:1 40:7
**checked** 11:19
**CHEPIGA** 2:22
**chowdering** 55:11
**Circuit** 33:18 36:2
**circum** 69:7
**circumstance** 69:5
  77:5,15 78:15,18
  82:25
**circumstances** 40:23
  65:24,25 66:5 67:3
  67:14 68:7,9,23,24
  69:8 70:20 71:2
  74:5 77:10 79:10,20
  80:25 84:9 85:16
  88:2,12
**citation** 75:1
**Civil** 5:12
**claim** 19:13,15 21:6,9
  22:17 23:8 28:23
  29:18,19,19,24,25
  33:11,23 40:21 46:7

46:7 56:12,13,16
59:4,4,15,16 65:18
65:21 66:1,10 68:1
68:3,5,6,10 70:16
74:12 78:10,10 80:8
80:13
claims 8:21,24 9:3
11:12 13:19,23 14:7
14:16,21 15:6 17:4
17:6 19:10,19 20:25
24:25 25:21 27:5,5
27:10,16,16,21,25
28:3,5,8 29:7,14,23
36:25 39:5,12,14,15
39:16 40:23 41:11
48:15 54:16,17 57:6
57:7,7,10 59:19
65:16 66:14 68:20
68:25 69:4,22,24,24
69:25 70:2,2 73:21
81:22
clarified 22:19
class 39:12,18
clause 6:6 42:18 43:6
66:22 79:23
clear 29:14 48:23
55:10 62:12 69:8
72:17 84:22
clearer 6:19
clearly 48:17 87:16
88:16
client 6:11,13,19,21
7:1,2 8:2,3 9:2,16
9:23 10:3 11:17
clock 20:19
close 67:10
closely 5:19 42:12
closer 62:16
code 5:8,16,22 6:1,3
20:24 27:8,17,22
29:13 35:15,17
55:17 71:22
coffers 23:18
colleagues 81:12
collectively 7:17
colloquial 61:7

combined 46:22
come 9:1,12,15,19
11:7 12:22 14:5
18:3,3 33:16 45:8
75:8
comfortable 42:11
coming 83:2
commenced 55:22
commencement 82:3
92:6
commencing 2:6
Comments 75:16
Commission 12:7
91:25
Committee 5:12 12:5
common 15:10,22
23:4 39:13,16 81:10
community 13:5,6
complaint 25:25 27:3
39:7,13
complicit 70:10,14,25
complicity 69:13
70:7
concept 60:10 64:15
64:23 65:2
concepts 85:6
conceptual 42:13
concern 41:23 42:10
58:13 59:9 60:20
concerned 42:4
concerns 57:16 58:1
58:4,8 60:18
concluded 89:2
conclusion 23:11
33:17
concomitant 65:19
condition 56:3
conditions 55:25
66:24 67:3
confer 76:9
conferences 12:19
connection 6:12 7:23
28:4
consider 4:15 21:4
32:9
consideration 91:18

considered 81:23
Consolidated 1:14
conspiracy 39:15
constitute 30:9
Constitutional 5:13
constraining 42:3
constructive 13:12
content 49:10,16
54:10
context 18:19 19:4
21:1 30:4 36:10
57:11 73:17,25
74:15 86:5,15
contradistinction
80:15
convention 42:20
43:3
conversation 12:22
42:9 49:4,9 60:10
60:12,16
conversations 49:7
49:10 55:1
Conveyance 34:12
corporate 37:7
CORPORATION
1:4
correct 6:8 22:11
32:7 33:3 34:20
38:15 44:2 52:1,7
67:23 68:4,21 77:12
77:17 78:14 79:23
79:24 80:13,19,20
80:23 91:3
correctly 22:10 35:2
correspondence
11:20 47:5,13 53:21
counsel 5:18 12:5
14:6,22 18:7 41:16
41:22 42:23 43:1
47:5 51:13 52:18,18
64:21 76:12 92:15
92:17
counsel's 41:24 50:1
count 13:10
COUNTY 91:9
course 27:12 30:25

31:1,3,7,15 64:22
72:12 75:3 83:12
court 1:1 2:2 24:4,5
27:2 32:17 33:19
43:18 79:19 92:3
courts 36:11
covered 86:9
covering 54:18 69:22
86:17
Cravath 2:16 4:11,20
69:18
Cravath's 8:8
credibility 13:11
creditor 17:16,19,21
creditors 5:6 17:20
18:17 34:15 74:9
criminal 40:6
crossed 79:9
CRR 2:3
cumulative 57:3
curiosity 87:11
current 6:19 71:12
76:3
custody 23:17
customer 15:3 38:18
45:5 46:8,9,10,15
48:6,21,25 52:11
55:12,18 59:5,15
60:2,13,19 61:2,3
62:10
customers 24:17,20
41:11 44:13 45:1
48:3 49:13,20,21
50:9,16 51:3,4,17
52:4,7,12,20 53:2
53:10 59:19 61:9,12
61:25 62:23 63:5,7
63:8
cut 57:22

D

D 3:1 4:1
date 17:18 28:2 55:19
92:12
Dated 92:24
David 2:13,18 21:25

08-01789-cgm   Doc 7181-34   Filed 06/27/14   Entered 06/27/14 20:26:54   Exhibit B
Pg 97 of 107
Picard v. JPMorgan                                       Richard Levine   5-16-14

[Page 4]

**day** 91:11,20
**days** 15:3 17:18
  26:24 27:6 28:11
  37:2,4,5 55:21
  56:10
**deal** 15:23 72:7
**dealing** 62:24 73:2
  87:7
**deals** 56:21
**dealt** 63:6
**debt** 17:17 20:7 31:2
  56:15
**debtor** 1:12 17:15
  30:7
**debtor's** 23:17,17
**decide** 77:20
**decided** 62:14
**decision** 36:3,3
**decisions** 73:8 75:5
  75:18
**declaration** 3:20 15:7
  22:2,6 25:6 40:25
  63:16 64:6,11 67:20
  78:22 79:19 82:19
  86:3,7 88:22
**deep** 32:14
**defend** 17:9
**defendant** 1:8 22:18
  29:25 30:1,6 34:21
  48:16,17 60:19
  65:19 70:13 72:21
  72:25 73:4,5 74:21
  81:25 82:24 83:1,15
  84:15
**defendants** 1:21 41:5
  48:8,16 49:1,20
  50:17 51:4,16 52:7
  52:11,12,21 53:1,2
  53:11 54:19 60:4,13
  63:7 88:16
**defendant's** 69:13
  70:7 73:10,11
**defense** 19:20 20:2,4
  29:8,11 30:1,4,14
  30:15,17,17,24,25
  31:4 34:19 36:10

70:15 71:17 73:13
**defenses** 30:11 34:22
  36:16
**deferred** 40:9
**defined** 46:9,15
  67:11
**definition** 46:13
**defraud** 18:16 34:15
  74:9
**delay** 18:16 34:15
  74:9
**demand** 11:9,11,16
  11:24 24:18
**Department** 40:1,7
**deposition** 1:23 2:1
  6:23 20:18 76:12
  82:14 84:3 89:2
  91:2
**depositions** 86:19
**describe** 55:25
**described** 29:14
  36:12 43:9 56:4
  60:9 73:25
**description** 3:13
  35:15 56:7 85:21
  91:14
**deserves** 77:16
**determining** 81:23
**difference** 78:23
**differences** 58:10
**different** 6:24 22:20
  23:1 27:4 33:16,16
  63:16 69:4 77:3
  78:13
**differently** 76:1 84:9
  84:20 85:3 86:20
  87:2
**difficult** 17:9 66:2
  80:16,19,22
**difficulty** 65:17
**direct** 10:3 25:12,14
  38:20 44:4 46:2
  48:11 55:7 64:10
  79:6
**directing** 7:21 57:15
  57:16 58:24 79:4

**direction** 14:17 29:21
  29:22
**directly** 38:22 41:13
**discount** 15:9 82:5
**discovery** 11:23 16:5
  16:10,11 24:18
**discuss** 13:19 71:13
**discussed** 14:22
  34:18 64:16,24 65:3
**discussing** 85:23
**discussion** 11:4 14:10
  14:13,15 17:3 18:6
  40:12 53:15,16 54:8
  54:9,10,11 57:5
  61:19 76:11
**discussions** 13:12
  21:17 49:12,16
  64:21
**dismiss** 76:23
**dispute** 67:7
**disruption** 16:5
**dissatisfied** 53:17,18
**dissimilar** 78:9,11
  83:3 88:13
**distinguished** 73:3
**district** 1:1 33:13,15
**divine** 52:10
**Division** 12:6,7
**document** 43:23 44:5
  45:16 46:22 51:24
  52:17,18 54:22
  59:12 64:4 91:15
**documents** 47:11
  52:1
**doing** 62:16
**dollar** 70:12
**doubt** 77:18
**draft** 3:17,18 43:13
  43:14,20 44:18
  45:18,23,25 47:16
  47:20 48:21,22
  50:25 54:11,15,15
  61:19 62:1,7 63:6
  67:1 69:18
**drafted** 5:19 42:11
**drafter** 5:17 44:23

**drafting** 62:5,15,17
**drafts** 45:20 49:13,15
  50:12 53:17 54:5
  58:11 65:15 66:25

---

### E

**E** 2:10,10,14 3:1,12
  4:1
**earlier** 29:15 30:15
  34:18 45:23 50:12
  57:2 65:15 82:14
  84:2
**early** 15:8,22 22:3,14
  22:17 23:4,5,7,7
  24:25 40:17 42:16
  61:5 81:16,25 82:5
  82:15,16,17,20
**easier** 36:13 65:21
  80:8,13
**edited** 5:19
**effort** 5:17 16:12
**Eighth** 2:17
**either** 14:13 30:20
  55:14 66:12,17 75:5
**elements** 19:13 23:6
  78:16 85:7
**email** 46:20,21 47:4,5
  47:12 49:2,6 53:20
  54:6 57:17
**Emails** 3:19
**emanate** 44:21
**emanating** 87:10
**EMILY** 2:22
**employed** 4:9,10,15
**employee** 92:15,17
**enables** 17:19
**engage** 9:16,20 10:4
**engaged** 7:22,25
**engagement** 8:11
**enjoy** 65:23
**enormous** 16:4
**entire** 51:12
**entities** 6:18 7:3,8,16
  14:24 19:1
**entitle** 19:17
**entitled** 81:4 84:21

08-01789-cgm    Doc 7181-34    Filed 06/27/14    Entered 06/27/14 20:26:54    Exhibit B
**Picard v. JPMorgan**    Pg 98 of 107    **Richard Levine    5-16-14**

[Page 5]

**entity** 6:24 37:6,8
46:14
**enunciated** 71:24
**equal** 6:6 40:11 41:16
42:17 44:7,12 47:7
47:16,20 56:1 58:14
58:15 59:18 64:7
66:22 67:9,12,17
68:11 69:19 77:6,16
79:23 80:23 81:24
82:4,12 83:5,10,20
84:1,7 85:18 88:11
**equating** 35:4
**Equities** 7:4
**ESQ** 1:24 2:1,13,13
2:14,18,19,22 3:3
4:1 90:2 91:1,6 92:7
**Essentially** 87:14
**estate** 23:2,14
**estate's** 41:13
**et** 3:16 64:9
**event** 26:8 35:7 46:6
75:17 86:20 92:19
**eventually** 21:6,9
**exact** 11:15
**exactly** 4:10 11:6
27:15 34:9 43:5
79:24
**exam** 20:12
**examination** 3:4 4:2
92:6
**example** 70:1 80:18
88:4,5,5
**examples** 88:6
**excess** 55:13
**exchange** 12:7 45:20
**exclusive** 29:16
**excuse** 28:22 34:25
47:14 56:25
**executed** 46:18 91:17
**exempt** 74:5
**exhibit** 25:10,13 39:3
43:16 45:13 46:25
63:25
**existed** 77:14
**expand** 54:15

**expansion** 69:19,21
**expense** 28:20
**experience** 5:23 6:4
17:5 23:25 24:6
68:14
**expert** 20:21 21:4
32:22
**expertise** 19:8
**Expires** 91:25
**explain** 41:20
**express** 42:15 66:24
67:3
**expressed** 41:23
42:10 58:2,9 91:18
**extent** 8:20 32:3

### F

**facilitate** 13:12
**fact** 9:7 15:8 37:4,4
38:17 48:25 51:15
69:1 71:6 74:20
75:10 85:15,17
88:13
**factor** 13:14 65:17
69:2,17 77:21 78:5
80:23,24 81:23 82:1
82:3 84:19
**factors** 67:2 77:10
82:15 83:18 84:17
85:19 86:6,23,24,25
88:1,17,17
**facts** 24:15 77:1
**factual** 79:9
**fair** 5:21 15:12 36:18
52:23 53:4 57:5
59:8 65:1 78:24
**Fairfield** 37:1,8,9,18
37:25,25 38:7,7,12
38:14,14,17,19,20
**fairness** 26:12
**faith** 30:2,14,16,16
30:20,23 31:5 35:3
70:6,15 71:18,18
72:2,25 73:5,11,12
74:14
**fall** 66:21 67:6

**fallen** 66:24
**falls** 67:12,17
**familiar** 25:24 26:1
31:17,20 72:3,9
**familiarity** 79:22
**fault** 81:1
**favor** 82:4 85:17
86:24
**favorable** 19:9 81:19
**February** 11:20
**fee** 28:7
**feeder** 38:19
**fees** 16:5 26:22 28:11
28:16,20,25 29:7
**fictitious** 18:19 19:6
55:14 56:8,12,13,21
56:25 57:7 65:22
66:11,13 67:5 68:1
80:9
**fides** 13:12
**fight** 83:16
**figured** 11:3
**file** 11:19
**filed** 25:25
**filing** 17:18
**final** 46:17 66:25
**financial** 24:15
**financially** 92:18
**find** 40:21
**fine** 4:5 7:18 8:15
10:21 21:1,2 43:4
53:13 81:1
**finish** 57:4
**firm** 4:16 7:25 8:1
62:25
**firm's** 8:3
**first** 11:2 14:13,14
25:23 28:5 40:13
42:9,19 47:12 48:21
49:12 55:4 70:22
80:1 85:22 88:21
**five** 38:25 49:10,16
58:7
**flexibility** 42:5
**flip** 32:11
**Flom** 4:21

**focus** 29:6
**focuses** 82:20
**follow** 74:24 75:2
**foolish** 41:1 61:6
**foregoing** 91:2,16
92:10
**Forget** 71:22
**form** 87:10
**formally** 24:25
**former** 46:8 59:5,15
**formulation** 69:25
**forth** 43:8 92:13
**forward** 12:12 42:2
**fought** 83:1 84:16
**four-year** 78:10
**frankly** 86:18
**fraud** 39:15 70:10
73:2,6 74:21
**fraudulent** 19:15
27:18,19,23 28:21
28:22 30:14 34:12
56:11,15 57:11
73:21 74:8,19
**Friday** 2:6
**friendly** 12:14 20:18
**friends** 12:16
**front** 58:25 63:17
**fully** 10:10
**function** 82:10
**fund** 2:23 38:19
**funds** 2:19 24:20
37:10 38:2,22
**further** 25:14 82:10
92:9,14

### G

**G** 45:4
**game** 61:5
**gap** 58:17
**garbled** 83:7
**general** 8:14 12:5
15:16 22:14 35:15
58:13
**generally** 8:18 11:7
22:22 26:1 31:19
67:2

08-01789-cgm   Doc 7181-34   Filed 06/27/14   Entered 06/27/14 20:26:54   Exhibit B
Pg 99 of 107
**Picard v. JPMorgan**　　　　　　　　　　**Richard Levine   5-16-14**

[Page 6]

**getting** 13:10 24:14 32:21 75:1 83:22 85:18 87:2
**give** 8:14 41:4 80:18 88:5
**given** 86:7 91:19
**glad** 4:8 22:19
**go** 25:6,20 27:10 33:19 34:23 39:4 40:10 42:12 43:10 43:13 45:7 46:16 55:4 57:13 58:21 60:25 62:19 65:11 69:11 79:16 81:3 83:24
**goes** 13:25 16:18 86:3 87:24
**going** 10:9,18,21 20:13 22:2,25 23:2 23:13 25:8,20 27:13 39:24 41:23 42:2,2 42:25 44:10,11 45:3 45:7,11 46:20 50:16 51:10 53:4 54:8 57:12 63:9,17,18,22 64:10 65:8,13 69:15 75:21 76:14 78:1 79:1,5 83:8 87:3
**gonna** 76:17
**good** 4:3,5 22:3 30:2 30:13,16,16,20,23 31:5 35:3 70:6,14 71:17 72:2,25 73:5 73:11,12 74:14
**goods** 30:6
**governs** 29:13
**greater** 17:19
**GREENWALD** 2:18 9:4,10 10:8 13:25 16:17 18:24 19:22 20:19 21:23 26:12 49:22 51:8 52:15 53:3,12 59:10 60:21 63:11 68:15 75:11 75:20 76:4,8,14,25 77:7,22 78:25 79:5

86:11,13,16 87:13
**ground** 76:16 79:2
**group** 37:7 48:16
**guess** 32:23 87:13
**guessing** 62:21

**H**

**H** 1:14 2:14 3:12 4:1
**hamstring** 42:1
**hand** 51:6 91:19
**handed** 25:13 43:19 47:3
**happen** 42:14
**happened** 23:23 62:21
**happening** 53:25
**Happy** 75:3
**harbor** 74:3,6
**hard** 14:15 31:6 84:16
**head** 16:12 75:23
**heading** 44:7,12 45:22 47:20,24 49:19 50:5,7 51:3 51:15,25,25 61:25 62:7,11,14,18 63:6 69:12
**headings** 62:7
**hear** 4:8
**helpful** 25:5 41:9 54:7
**hereinbefore** 92:12
**he/she** 91:17
**higher** 77:13
**highlight** 61:15,18
**highlighting** 52:24
**highly** 20:22 41:19 41:21
**hinder** 18:16 34:15 74:9
**Hirschfield** 2:14 11:1 11:13 12:23 13:18 14:14 15:15,21 18:7 40:25 47:13 54:7 57:18
**Hold** 75:20 76:4

**holding** 31:21
**hoped** 41:11
**hopefully** 40:17
**Hostetler** 2:5,11 45:19
**House** 5:12 12:4
**hung** 83:22

**I**

**IDENT** 3:13
**identification** 25:11 43:17 45:14 47:1 64:1
**identified** 57:6
**identify** 43:23 45:16 46:23 47:9 48:25 50:19 64:4 65:17
**identifying** 50:13
**identity** 91:14
**immediate** 35:19
**important** 9:13 41:3
**inappropriately** 81:2
**include** 68:25 69:20
**included** 65:16
**including** 27:3
**incorporates** 27:22
**incurred** 31:2
**incurrence** 16:4
**indirectly** 38:23 41:10,12,13
**ineffective** 33:9
**informal** 11:23 16:11 24:18
**information** 11:23 24:1,3,6,16
**initial** 12:22 35:19,25 36:7,9,10,16,21,21 41:15 43:13,14,20 44:18 49:12
**initially** 61:10,11
**initiate** 10:6
**initiated** 21:17
**insert** 47:16,20
**inside** 75:23
**insolvency** 5:6
**instruct** 9:4

**instruction** 76:15,18
**instrument** 91:16
**intent** 18:16 20:14 31:8 34:15 74:9
**interest** 12:9 17:15
**interested** 75:1 92:18
**intermediate** 36:8
**intimate** 5:22,25 6:2
**inure** 41:12
**invested** 38:23 70:13
**investigated** 88:14
**investigating** 24:22
**investigation** 40:6
**investment** 1:7,15 38:6
**investments** 8:10,12 8:19 38:10,12
**INVESTOR** 1:3
**involved** 7:8 73:2
**involvement** 40:1,7
**involving** 73:1
**in-depth** 20:24
**irrelevant** 20:7
**Irving** 1:14 2:14 12:1
**issue** 66:10 76:9
**issued** 72:17

**J**

**J** 2:13
**Jersey** 2:4 92:5
**Jousting** 9:13
**JPMorgan** 1:19,19 3:15 25:3,24 27:3 28:8 29:3,4 30:4 33:1 36:25 37:5,6 37:15 38:1,6,13 39:2,7,20 40:2 64:9 66:15,21 67:11 68:18 84:13 86:8
**judge** 26:8,11 31:20 33:7,8,14,16 36:3 72:4,14 74:17 77:19
**judgment** 36:7
**Judiciary** 5:12
**jump** 57:12
**jurisprudential**

32:15
**Justice** 40:7
**Justice's** 40:1
**justified** 84:18
**justify** 83:18 85:19
**J.P** 1:19,20

**K**
**Katz/Wilpon** 31:18
33:10 72:8
**keeps** 79:2
**kind** 12:13 16:13
32:16 73:2 74:15
80:12
**knew** 11:2 12:25 23:1
23:25 24:16 70:13
73:5
**know** 10:18 12:1,3,15
13:2,6 14:16 23:21
26:5 33:12,17 46:4
49:25 51:5,14 53:9
62:24 70:9,24 71:16
75:20,25 76:23
79:14 86:19 87:6,23
**knowing** 59:11
**knowledge** 5:22 6:2
20:24 34:19 35:3
69:13 70:7 71:7,8
72:5,16 73:18 74:21
**known** 51:16 91:12

**L**
**L** 1:7,11,15,16 4:1
**lack** 70:6 73:11 74:14
**language** 44:16,20,21
48:5 50:4
**largely** 23:15
**largest** 38:17
**late** 14:15 22:23
**Laughter** 26:14
**law** 20:12 27:23
32:10,17,18,21 36:1
39:13,16 62:25
71:12,16 75:2 76:23
77:4,12 78:16
**lawyer** 20:23 77:25

87:23
**lead-in** 80:1
**lean** 83:3 84:19
**learned** 62:15
**leave** 61:24 62:14
**leaving** 62:22
**left** 62:8
**legally** 30:8
**legislation** 12:10
**lengthy** 81:20 83:1
83:16 85:6,15
**letter** 11:18,22,24,25
**letters** 24:18,18,19
**let's** 22:11 29:6 34:23
35:7 40:10 43:10,13
46:16 55:4 58:6,21
65:6 69:11 72:7
76:19 79:16 80:7
81:3
**leverage** 41:5,6 64:16
64:18,24 65:2,21,24
66:5 70:17,19
**Levin** 1:24 2:1 3:3,20
4:3 25:12 43:18
45:17 47:2,9 51:7
63:15 64:3,6 78:22
90:2 91:1,6 92:7
**liability** 16:16,23
**limit** 42:5 59:18
**Limitations** 27:25
**Limited** 3:14
**limiting** 42:3
**line** 79:9 82:10
**Lipstick** 24:24
**liquidation** 1:15 2:15
7:24 17:21 24:11,13
31:22 55:22
**list** 24:16
**listed** 26:22 67:1 69:2
88:21
**lists** 88:1
**Literally** 71:10
**litigate** 16:22
**litigation** 16:5,13
22:22 24:10 81:4,11
81:20,25 82:3,9,16

82:17,22
**little** 10:16 23:16,19
23:25 48:12 60:8
79:12 83:7,24 85:3
87:5
**LLC** 1:7,15,20
**LLP** 2:11,16,21 4:11
4:22
**loan** 34:1,6,9,10
**logjam** 54:4
**long** 4:17,23 26:5
84:16
**look** 25:19 35:7 43:21
47:3 61:6 68:19,22
87:25
**looked** 11:21 51:2
62:10,13 67:2
**looking** 9:14 33:25
41:1 64:14 87:4
88:6
**loosely** 39:11 57:8,9
**lost** 51:22
**lot** 6:1 13:10 62:6
85:5
**lower** 40:22
**Lucchesi** 57:18
**lunch** 12:19
**lunches** 12:15

**M**
**Madoff** 1:7,11,15,16
**maintain** 41:6
**major** 5:1 23:13
**majority** 5:15 36:2
66:17
**making** 42:13 65:24
66:5 70:20
**MARC** 2:14
**March** 14:15,20 16:8
16:9 17:23 24:13
32:10,24 40:10
47:14,14 71:15 75:6
75:17 77:14
**mark** 63:17
**marked** 25:10,13
43:16,19 45:13

46:23,25 63:25 64:3
**marshal** 81:18
**material** 32:9 50:17
50:18 59:20,24 60:1
61:15
**matter** 25:3 31:18
33:12,17 36:22 40:2
**Meagher** 4:21
**mean** 29:15 30:3
32:11 41:20 43:1
54:23 57:9 59:14,17
63:8 80:6 81:12
85:4
**meaning** 53:1 61:12
**means** 46:7 59:4,15
84:8
**meant** 22:17 23:5
51:4,16 52:11 81:14
**mechanics** 42:13
**mediate** 35:18,19
36:8
**meet** 70:14
**meeting** 14:14
**member** 5:11
**mentioned** 12:25
24:9
**met** 12:4
**MFN** 46:6
**million** 55:13 59:16
60:1 70:11 84:4,15
**mind** 65:3
**minimum** 41:7
**minority** 5:18
**minutes** 38:25 87:19
**mischaracterize**
22:12
**misleading** 62:23
63:2
**misspoke** 42:24
**mistaken** 38:21
**misunderstand** 38:4
**mixed** 36:1
**moment** 19:14 29:6
36:4 39:3
**money** 23:16 30:7
**month** 74:13

08-01789-cgm   Doc 7181-34   Filed 06/27/14   Entered 06/27/14 20:26:54   Exhibit B
Picard v. JPMorgan
Pg 101 of 107
Richard Levine   5-16-14

[Page 8]

**Moore** 2:16 4:11
**MORGAN** 1:19,20
**morning** 4:3,5
**motion** 76:23
**multiple** 7:8
**MYERS** 2:21

**N**

**N** 2:10 3:1 4:1
**name** 7:20 90:2 91:15
**NANCY** 2:2 92:3
**narrower** 58:14
  69:25
**nature** 8:8,20,24
  14:21 17:4,11,24
  28:7 36:24 43:9
  65:16 68:19 79:7
**necessarily** 66:23
  67:6
**need** 7:20 39:3 78:2
**needed** 74:14 79:14
**negotiated** 88:14
**negotiating** 65:20
  66:5 70:18,19 71:15
**negotiation** 21:14
  44:17 53:23 54:2
  64:15,18,23 65:2
  79:21
**negotiations** 9:17,20
  10:4,7,12,14,24
  13:15 41:4,5 42:16
  42:22 43:7 50:12
  64:23 67:21 79:10
**negotiator** 58:16
  61:23
**neither** 92:14,16
**neutral** 82:1
**never** 42:21 54:20
  62:10
**new** 1:1 2:4,4,5,6,12
  2:12,18,18,22,22
  27:24 33:13 34:12
  47:6 54:5 60:9 92:4
  92:5,22
**nice** 12:17
**Ninth** 36:2

**nonexclusive** 77:11
  86:22 88:1
**normal** 62:20
**normally** 16:7
**Notary** 2:3 91:22
  92:4,22
**note** 49:6 61:20,20
**noted** 56:9 91:3
**notice** 54:24 88:21
**notion** 42:17
**number** 21:11,15,16
  21:19
**N.A** 1:19

**O**

**oath** 91:13
**object** 10:8 51:8
  75:21 79:1 87:16
**objection** 25:7,8
  49:22 52:16 53:3
  59:10 60:21 75:22
  77:7,22
**obligation** 30:9
**obscure** 85:7
**obtained** 36:6
**Obviously** 83:7
**occasional** 12:15
**occasionally** 12:20
  62:17,18
**occurred** 82:2
**occurs** 22:23
**offer** 11:8
**office** 10:23 91:19
**offices** 2:4
**oh** 33:20 38:13
**okay** 5:4 6:5,11,14,17
  6:21 9:12 10:3,6
  15:7 18:18,24 21:12
  22:19 28:4 30:19
  33:5 37:23 38:16,24
  41:8 43:10 44:1
  45:9 46:1 47:18
  51:23 57:9 65:6
  68:13,24 69:10
  71:13 72:12 76:14
  76:19 86:12 87:8

88:20,23
**once** 62:18 71:17
  82:8
**ones** 39:6 86:23
**one-page** 47:15
**open** 11:4
**opening** 21:16,19
**operating** 28:19
**opined** 78:8
**opinion** 85:17,23
  86:1,2
**Optimal** 2:19 3:14
  6:13,15,18,23 7:3,4
  7:13,17,23 8:2,4,8
  8:21 13:20,23 14:24
  16:16 18:23,24
  19:10,11 40:14
  41:12 44:19 47:21
  58:15 61:2,3 66:10
  66:12,21 68:2 71:6
  76:3,6 82:9
**Optimal's** 41:14
**options** 42:5
**order** 19:9 73:20
**ordinary** 28:19 30:25
  31:1,3,7,15 73:3
**organizations** 13:8,9
**other's** 5:20
**outcome** 92:19
**outline** 87:15
**outlined** 39:7
**outside** 12:16 66:22
  67:6 76:12
**outstanding** 76:22
**overall** 70:3
**overlap** 29:16,21
**overrides** 88:18
**owing** 30:8
**owned** 6:25
**owners** 7:1
**O'MELVENY** 2:21
**o0o** 89:3

**P**

**P** 2:10,10 70:8,23
**page** 3:2,13 25:13,15

44:4 47:19 65:11
  81:6
**PAGE/LINE** 90:3
**paid** 28:11,16
**paper** 48:23 54:13
  63:1
**paragraph** 44:5
  45:24 46:3,10,13
  47:25,25 48:11 55:7
  55:23 56:21 58:25
  59:4 62:1 64:11,14
  65:6,12 66:20 67:18
  69:4,11,12 70:8,23
  80:2 85:13 87:25
**paragraphs** 45:4
**parallel** 39:19,21
**part** 5:24,25 6:3 8:11
  10:1 16:15,21 20:14
  45:20 47:12 56:17
  71:19 85:22
**participated** 6:7
**particular** 22:18 23:5
  54:25 68:5 73:1
  74:15
**particularly** 47:19
**partner** 4:11,13,14
  4:16,17
**party** 53:22 92:16
**passion** 79:13
**passionate** 79:12
**pay** 62:6 88:6,7,16
**payment** 21:7 28:19
  30:8 31:6 56:14
**payments** 37:8,24
**pending** 33:17 39:19
**percent** 21:7,10,12
  21:15,20 70:2,4
  81:21 83:4,10,19
  84:5,15,18,20 85:20
  88:15,15
**percentage** 17:20
  40:21 41:7 70:3
  83:5
**percentages** 40:22
**period** 18:23 23:20
  23:23 74:20 82:11

08-01789-cgm    Doc 7181-34    Filed 06/27/14    Entered 06/27/14 20:26:54    Exhibit B
**Picard v. JPMorgan**    Pg 102 of 107    **Richard Levine    5-16-14**

[Page 9]

**permits** 27:18 35:17
**permitted** 36:11
**person** 21:17 46:14
  54:1 91:15
**personal** 12:16 13:9
**personally** 91:12
**persons** 12:11
**petition** 17:18 28:2
**philosophy** 32:21
**phone** 10:13,13 14:13
**phrase** 35:14 40:18
  44:25 48:12 61:25
  80:7,8 81:7 84:6
  87:9
**phrased** 11:15 22:13
  87:2
**Picard** 1:14 2:14 12:1
  12:4,13,21 13:14
  47:21
**pick** 69:14,15 80:7
**place** 34:20 52:21
  75:6,18 76:7 82:9
  85:14 92:12
**plain** 30:13
**Plaintiff** 1:17
**Plaintiff-Applicant**
  1:5
**plaintiff/defendant**
  82:16
**Plaza** 2:5,12,17
**plead** 73:10 74:12,14
**pleading** 72:15,22
**pleadings** 27:2
**please** 43:23 49:23
  58:19 61:20,20 64:5
  68:15 73:22
**point** 6:25 11:8 12:10
  12:12 14:10 24:5
  25:6 26:4 71:13
  73:4 79:6 83:15
**pointed** 79:8
**Ponzi** 18:1,10,13,14
  18:15,19 19:16,17
  23:21 28:18 31:8,12
  31:13,14 34:13,14
**portion** 56:21 58:25

**portions** 66:16 69:23
**pose** 52:15
**positing** 80:12
**position** 78:4 79:15
  82:23
**positive** 13:14
**possessed** 74:21
**possession** 23:17
**possible** 11:14 65:4
**potential** 13:19,23
  82:21
**power** 11:12 23:2,13
  24:8 27:5 35:21
  36:6,17 41:6 48:15
  54:16 65:16,18
  69:22 81:22 82:17
**powers** 23:12,22 57:3
  74:4,4
**practical** 33:12 36:22
**practice** 5:1 15:10,22
  62:15,17,20
**precise** 10:22
**precisely** 37:7
**predicated** 38:5
**preexisting** 20:6
**prefer** 22:8
**preference** 17:11,13
  17:14 19:13,21 20:5
  20:5,8,15 21:10
  22:22 27:5 30:19
  31:4,9,11,25 32:25
  54:16 56:7,10,13
  57:7,10 76:2,6
  78:11 81:10
**present** 25:19
**presented** 11:17 55:2
**press** 18:5 23:15 24:2
**presume** 33:8
**presumed** 18:15
**presumes** 20:5
**presumption** 18:11
  18:13,14 19:17
  28:18 31:12 34:13
**prevent** 16:4 69:21
  83:19,21,21
**previous** 63:6

**previously** 58:2
**primarily** 18:5 39:16
**principal** 5:14,16
  12:10 19:5 23:1
  24:7 29:5 44:22
  66:3 70:13,17
**prior** 4:25 5:2,4 8:4
  11:3 37:22 48:20
  53:17 54:5,15 73:8
  73:14 92:5
**privilege** 9:6,8,14
  76:9
**probably** 16:22 87:9
  87:10
**problem** 85:4
**proceeding** 15:4
  17:24 22:15 23:6,7
  24:11,13 28:12,13
  31:22 55:22 82:18
  82:21,22
**proceedings** 12:8
  24:4,5
**process** 22:17 23:8
  81:25
**product** 14:1 16:18
  21:24 75:21,23
  76:16 77:1 87:14,17
**professional** 12:15,17
**professionally** 13:8
**profits** 18:19 19:6
  55:14 56:8,12,14,22
  57:1,7 65:22 66:11
  66:13 67:5 68:1
  80:9
**proof** 72:15,22 80:22
**property** 17:15,16
  27:9
**proposal** 21:22 41:16
  54:6 60:11
**proposals** 54:2
**propose** 40:15
**proposed** 3:15 21:12
  21:13 40:13,14
  43:20 69:18,21
**proposing** 85:24
**prosecution** 40:9

**protection** 1:3 40:24
  40:25
**prove** 19:9,12,15
  71:18 78:13,17
  80:16,19
**proved** 31:13 91:13
**proven** 73:19
**provide** 30:24 67:16
  74:5 75:3 84:8,11
**provided** 30:6
**provides** 20:2
**proving** 36:20 71:25
  72:5,16
**provision** 27:18
  40:11 42:10 43:6
  47:7 49:8 50:4 56:2
  56:17 58:15,16
  59:19 61:20,21
  62:19 64:8 67:9,13
  68:12 81:24 82:5
  83:6,11,20 84:2,8
  85:25 88:11
**provision's** 69:19
**public** 2:3 24:6 91:22
  92:4,22
**publicly** 23:25 24:3
  24:21
**purports** 47:4
**purpose** 47:8 55:23
  91:17
**purposes** 43:22 44:10
  45:15 46:3 59:3
  65:9,12
**pursue** 65:21 66:2
  70:11 80:8,13 81:18
**pursuing** 65:18
**put** 44:17 54:22 58:6
  61:17 63:20 78:21
  86:14
**putting** 42:4

**Q**

**qualification** 86:25
**qualified** 88:10
**qualifies** 86:8
**qualify** 21:3

qualifying 67:10,12
  83:13 84:3,14,17
  88:10
quality 22:1 84:24
quarrel 60:8
Queens 24:23
question 9:18 10:2,10
  15:17 22:20 30:12
  32:15 37:16,22
  46:21 48:10 49:23
  49:24 51:19,20
  52:14 53:12,14 57:5
  60:23 67:15,17,19
  68:16 73:23 78:24
  81:2 82:7,13 85:22
  87:1,5,10,22
questions 20:17,20
  23:9 63:19 64:12
  79:8,9
quickly 45:8 82:24
quite 32:13 86:18
quote 67:10,10

**R**

R 2:10,22 4:1,1
raised 29:10 71:18
Rakoff 33:7,8,14
  72:14 74:17
Rakoff's 31:20 36:3
  72:4
reach 9:2 27:19 28:1
reached 81:20
react 54:3
reaction 41:15
read 22:6 26:2,3
  37:12,13 44:10,11
  46:2 49:23,24 51:18
  51:19 52:13,14,19
  52:19 56:5 58:18,20
  59:13,17 63:1 64:12
  65:9,13 68:15,17
  69:16 73:22,23 83:8
  91:1
reading 48:13 81:6
reads 55:12 59:3
realize 7:7

really 62:12 85:8
  86:16
realm 66:17
reason 16:9 23:19
  41:2 50:2 54:18
  83:22 90:3
reasonable 40:20
reasons 15:20,24,25
  16:6 40:16
recall 11:16 14:20
  36:4 38:9,19 41:15
  41:22 42:8 43:7
  44:25 45:2 49:6,8
  49:16 53:24 54:13
  58:7,8,13 60:14,15
  64:25 73:24 74:22
  74:24
receive 17:19
received 17:21 18:23
  19:3,5 37:8 55:12
Recess 39:1 63:13
  87:20
recited 19:14
recollection 17:3
  60:15 65:14 80:3
recommended 9:2,9
  9:11,16 75:24
record 43:8,10,22
  44:11 45:15 47:3,8
  51:12,12 54:13 55:1
  55:11 64:2 65:9,13
  68:17 69:12,16 75:9
  75:16 76:11
records 24:22,23
recover 27:9 31:10
  35:17 36:5
recoverable 28:20
  55:16,18
recoveries 23:3,13
recovering 35:23
recovery 2:23 23:22
  24:7 27:20 31:4
  81:18
redeem 38:1
redemption 37:9
redemptions 37:14

37:18 38:5,8
reduced 81:17
reduction 65:20
refer 6:20 7:15,19
  14:24 16:12 27:2,4
  36:13 46:14 74:7
reference 27:24
  48:20 72:8
referenced 7:16
  39:18
references 46:13
  56:16,20
referred 14:25 19:4
  19:18 27:7 28:2
  37:3,18 39:11 74:3
referring 19:7 26:25
  28:13 35:16 37:19
  37:21,24 49:21 58:4
  71:20,21 84:13
refers 34:1 49:7
refund 67:16 83:21
  84:9,11,21
regard 7:11 31:21
  34:5 35:23 71:25
  72:4,16 73:18 85:13
regarding 64:7
Regulation 12:6,7
relate 37:14 74:10
related 36:25 39:15
  48:15
relates 74:11
relationship 11:3
  12:13,14,18,21
  13:13 29:2
relationships 13:10
  40:8
relative 92:15,17
relook 62:20
remember 11:6,14,21
  11:22,24 13:21 14:8
  14:9 18:8,9 21:13
  21:14 37:7 38:9
  43:5 49:9 53:15
  54:10,25 59:22,23
  59:25,25 60:1 65:5
  73:7,8

render 73:18
repayment 30:8 34:2
  34:6,9,10
rephrase 14:4 15:18
  17:1 22:5 50:14
  51:21 56:6 85:11
  86:14
reported 2:2 24:1,3
reporter 2:3 43:18
  64:4 92:4
REPORTER'S 92:1
reports 18:5 23:15
  24:2
represent 7:23
represented 36:2
  59:9 67:21
representing 7:11
represents 67:20
request 16:11
required 67:16 71:16
  73:19 74:11 84:8,11
  85:8
requirement 70:15
requiring 83:4 84:19
resolution 11:14
resolve 33:18
resources 16:6 81:17
respect 8:9 58:9
  72:22
response 3:14 16:11
  45:19
rest 62:10
restructure 5:5
result 5:23 6:3 19:9
  22:4 44:17 54:10
  86:3
resulted 38:8
resulting 40:9 65:24
  70:20
retained 49:19 50:5,7
  51:14
retains 51:24
retention 8:8
return 11:11 19:4
  66:3 70:12,16
review 65:15

08-01789-cgm    Doc 7181-34    Filed 06/27/14    Entered 06/27/14 20:26:54    Exhibit B
Picard v. JPMorgan                Pg 104 of 107                Richard Levine    5-16-14

[Page 11]

revised 61:19
**Rich** 75:11
**Richard** 1:24 2:1 3:3
   3:20 21:4 64:6 90:2
   91:1,6 92:7
**right** 6:12 7:21 10:20
   11:10 14:11 15:5
   20:9 22:16 25:21
   32:5,13,16 38:3
   45:22 46:6,16 48:19
   50:25 51:11 52:23
   60:6 61:4,14 68:18
   69:10,15 72:3,12
   73:15 79:11 80:4,15
   80:21 81:1 87:9,18
**rights** 5:6,13
**RMR** 2:3
**Rockefeller** 2:5,12
**room** 76:13
**rough** 57:22
**rule** 32:18
**ruled** 33:8 73:24
**ruling** 31:24 33:14
   72:4,14,17,20,24
   73:18 74:10,13,17
   74:22
**rulings** 72:6 76:3,7,7

**S**

**S** 2:10 3:12
**safe** 74:3,5
**satisfaction** 20:6
**satisfied** 56:1
**saw** 13:13 17:4 54:4
**saying** 53:1 61:12
   69:3 80:21 82:8
   85:11 87:15
**says** 34:10 35:8 46:7
   46:8 48:2 52:3
   54:12,12 57:22
   59:14 68:12 70:23
   77:9,10 87:23
**scheme** 18:1,20 19:16
   19:17 23:21 28:18
   31:8,12,13 34:13
**schemer** 18:15 31:14

   34:14
**school** 20:12
**scope** 43:6 69:19
**Screw** 20:19
**seal** 91:19
**SEANNA** 2:13
**SEC** 12:9
**second** 33:18 41:2
   65:12 69:1 81:8
**section** 27:8,9,17,20
   27:21 29:12,24 30:1
   34:11 35:16 55:17
   62:6,7 70:6,15 74:6
**Sections** 56:17
**securities** 1:3,7,15,19
   1:20 12:6 73:2
**see** 12:18 19:20 25:15
   26:22 35:9 44:7,14
   46:4 47:22,24 54:6
   57:18,23 58:6 59:6
   59:20 64:16 66:7
   69:13 70:25 75:13
   80:10 82:19 85:2
   87:5
**seeking** 11:22,23
**seeks** 23:21
**send** 51:24 60:9,11
**sense** 19:25
**sensitive** 58:17
**sent** 24:17,19 45:19
   46:21 48:22 49:19
   52:17 54:11 57:17
   60:3,7,11 61:19
**sentence** 70:22 81:8
**separate** 11:25
**September** 55:15,20
   57:1
**series** 48:15 63:18
**services** 30:7
**set** 54:17 62:18 92:12
**settle** 9:3 15:8 16:7
   16:24 22:4 40:21
   61:5 70:1 84:20
**settled** 21:6,9 75:19
   76:19,21 81:25 82:8
**settlement** 3:15,17,18

   3:19 6:6,22 7:2,2,12
   9:17,20 10:4,7,12
   10:14,24 14:16 15:1
   21:17 33:2 40:19
   41:3,7 42:21 43:7
   43:21 45:20 47:16
   47:19,21 64:8,19,22
   65:20,25 66:1,4
   67:11,12 69:24
   70:18,21 77:2 81:16
   81:19 82:1,5,15
   83:4,14 84:4,14,14
   84:17 85:14,25 86:8
   86:9 88:11,15
**settlements** 40:20
   67:10
**settler** 40:17
**settles** 48:14
**settling** 23:5 40:22
   69:22 81:10,21
   83:19 84:18 85:20
**seven** 4:18 19:13
**shareholder** 4:12
**shares** 37:10 38:1
**Sheehan** 2:13 3:4 4:2
   4:5 19:23 26:15
   37:11 38:25 58:18
   63:12,14 75:8 76:10
   77:8 79:3,11 86:18
   86:21 87:18,21
   88:23
**shift** 25:2
**shorthand** 27:1 42:19
   85:7
**shorthands** 85:5
**show** 45:10 64:2,3
   74:20
**showing** 13:11
**shows** 54:14
**side** 21:13 40:14 41:1
   44:19 50:20 53:17
   53:18
**sides** 53:16
**Sigma** 37:9,25 38:7
   38:19
**sign** 63:2

**signature** 90:1 91:2
**significance** 55:19
**silly** 9:13
**similar** 40:22,23
   42:18 44:13 45:1
   46:7 48:3 49:20
   50:8 51:3 52:3 59:4
   59:14 61:12,25
   62:23 63:5,6 65:25
   66:6 67:2,14,15
   68:2,4,6,7,20,23
   69:6,9 70:21 71:4,9
   77:6,9,16 78:9
   80:25 82:25 83:17
   84:10 87:12
**similarly** 46:14
**simple** 32:23
**simply** 18:9 49:9
   54:16 59:22
**single** 38:18 48:16
**SIPA** 1:14 15:4 22:15
   23:7 24:11,12 28:12
   28:13 55:21 73:1,3
   74:15 82:18
**sit** 33:1
**situated** 46:14
**situation** 29:7
**six** 27:25 28:1
**six-year** 27:21 28:3
   29:19 32:2,25 33:23
   34:1 66:3,18,19
   68:3 69:5,20,25
   70:16 71:25 74:20
   78:10
**Skadden** 4:21 5:3
**skeptical** 41:19,21
**Slate** 4:21
**slight** 51:6
**small** 13:6
**solid** 70:5
**Solus** 2:23
**somebody** 71:7,7
**sophisticated** 20:23
   62:25
**sorry** 5:2 20:1 25:7
   25:17 35:1,18 38:3

72:21 76:20 83:6
**sounds** 86:2
**source** 24:7
**Southern** 1:1 33:13
**speaks** 59:12 75:7
**specific** 8:17 10:10
   58:8
**specifically** 14:9
   44:24 54:23,25
   62:13
**Speculation** 75:22
**speculative** 76:17
**SPV** 3:14 6:13,20,25
**Square** 2:21,21
**staff** 5:11,15 12:5
**stage** 24:10,10 81:4
   82:16,18,20
**stages** 24:25 42:16
**standard** 71:24
**standards** 78:12
**standing** 88:3
**start** 10:14,24 20:20
   39:24 65:12 70:22
   88:6
**started** 16:10,14
   39:21
**starting** 26:17 81:7
**state** 27:23 36:18
   57:5,25 91:8,23
   92:22
**stated** 16:10 22:3
   23:12 24:21
**statement** 5:21 22:10
   33:4 59:8 65:1
**States** 1:1 2:3 92:4
**stating** 21:8 67:21
**status** 24:12
**statute** 27:24 29:8
**stenographically**
   92:11
**step** 54:8
**stick** 39:2 76:15
**Strategic** 7:3
**strengths** 62:4
**strike** 33:24 72:7
**strong** 70:18 88:18

**stuff** 9:13
**Subcommittee** 5:12
**subject** 6:9,22 14:9
   14:12 18:6 40:12
   75:12
**submitted** 79:18
**subscribe** 33:4
**subscribed** 91:15
**subsequent** 35:8,12
   35:24 36:5,12,15,19
   66:18,19 68:3
**substantial** 23:20
**substantially** 70:3
   77:13
**Substantively** 1:14
**successor** 7:9
**sued** 76:22
**sufficiently** 84:10
   88:12
**suggest** 29:15 49:5
   51:13
**suggesting** 25:18
   79:19
**supervised** 12:8
**supposed** 52:10
**Supreme** 33:19
**sure** 14:2,17 16:2
   25:22 27:12 43:12
   57:14 63:12 75:3
   76:10
**surprise** 13:2 18:9
**surrounding** 68:10
**SUS** 3:14 6:13 14:24
   15:2 19:3 44:12
   66:1 70:9,19,24
   81:19,22
**susceptible** 82:11,12
**suspect** 12:24
**Swaine** 2:16 4:11
**sweep** 85:5
**sworn** 4:1 92:7

_____

**T**

**T** 3:12
**table** 14:17 25:16,17
   26:19,20,20,21

27:11 33:25 35:8
   82:24 83:2,16
**take** 38:25 43:21,21
   46:1 47:2,3 51:10
   63:11 68:8 71:3
   77:5,15
**taken** 39:1 78:18
   79:20 85:16 87:20
   92:11
**takes** 31:1 85:14
**talk** 6:18 11:7,13
   15:8 53:6,7 65:9
   77:1
**talked** 12:18 49:15
**talking** 6:5 49:13
   61:8 86:1 88:1
**team** 24:22
**technically** 28:14
**tell** 6:17 8:17 17:13
   35:12 44:24 62:13
   75:25
**temporal** 84:24
**ten** 4:24,24
**tended** 53:22 54:1
**tenor** 79:7
**term** 7:10 18:18
   34:23 45:5 46:9,9
   46:15 50:16 52:7
   60:4 64:18 67:11
**terms** 33:20 35:24
   38:18 61:7 71:16
   77:15 79:21
**testify** 92:7
**testifying** 39:24
**testimony** 7:7 52:9
   56:20 92:11
**thank** 4:7 8:15 10:16
   13:17 14:19 20:9,11
   21:5 31:16 75:15
   88:23,24,25
**thanks** 81:1
**thing** 51:12 64:12
**things** 16:6 53:25
   55:11
**think** 9:7 10:17 11:1
   11:2,8,12,18 13:25

14:8 15:9 16:17
   18:5 22:9 24:21
   25:6,9 33:3 36:1,13
   39:14,17 40:24
   44:23 50:3 51:1
   53:21 54:4,7 58:22
   60:18 61:15 62:8,22
   62:25 63:21,22 73:6
   73:9 75:14 76:8
   77:21 78:2,20 79:7
   81:7,14 84:23 85:8
   85:10 86:8,23,24
   87:2,8,11,19 88:14
**thinking** 67:20 85:24
   86:4
**third** 25:15 52:6
**thought** 20:11 41:9
   42:23 51:3,5 62:14
   63:4 65:2 86:17
**three** 5:14 27:4 29:14
   45:7 51:25
**time** 6:21 7:1,2,12 9:1
   9:12,15 12:8,18,18
   13:19,23 14:5 16:5
   19:20 23:20,23 26:4
   33:1 40:17 43:21
   46:1 47:2 53:24
   71:23 80:6 82:11
   86:4 92:12
**Times** 2:21,21
**today** 4:4 10:21 33:1
   33:11 40:13 76:23
**today's** 6:23
**Tolstoy-esque** 26:7
   26:10
**tone** 79:7
**top** 26:17,21
**topic** 63:16
**Total** 55:17
**Tower** 2:21
**traffic** 49:3,7
**trained** 20:23
**transcript** 92:10
**transfer** 17:14,15,22
   18:15 19:15 20:6
   27:9,18,23 28:18,21

08-01789-cgm   Doc 7181-34   Filed 06/27/14   Entered 06/27/14 20:26:54   Exhibit B
Pg 106 of 107
**Picard v. JPMorgan**   Richard Levine   5-16-14

[Page 13]

28:22 31:1 34:14
35:13,18,25 36:21
56:11,16 65:22,23
66:3,10,11,18,18
67:4 70:12 71:25
73:21 74:8,8 80:9
80:10
**transferee** 20:14 31:1
31:5,6,9 35:19,20
35:24 36:6,7,9,9,10
36:12,15,16,19,21
68:3 71:19
**transferred** 27:10
**transferrer** 30:14
**transferrers** 66:12
**transfers** 27:6,20
35:8 37:3 55:12
57:1,11 66:13 69:20
69:23 70:5 74:6,19
**transmitting** 48:24
**treatment** 6:6 40:11
41:16 42:18 44:8,12
47:7,16,20 56:2
58:14,16 59:18 64:7
66:22 67:9,13,18
68:11 69:19 77:16
79:23 81:24 82:4,12
83:5,11,20 84:2,7
85:18 88:11
**trench** 16:13
**tried** 57:25 61:22
74:23
**trigger** 46:6
**trouble** 83:24
**true** 49:11 91:3 92:10
**trustee** 1:14 2:14
3:15 6:22 7:12 9:3
9:20 11:8,20 13:20
16:22 17:5,7 19:8
19:12 22:18 23:21
24:14 25:25 27:1,19
28:1,8,24 29:24
31:18,24 32:24
35:17,20,21 36:5,19
39:8 40:22 41:4,10
42:2,3,12,15,20

43:1 46:7 47:6
48:14,22 49:5 51:14
52:10,24 53:23 54:3
54:21 57:16 58:4,14
58:21 59:5,9,14,16
59:18 61:12,13,16
61:18 64:9,22 65:17
65:23 66:4,14 67:1
67:16 69:21 70:1,4
70:8,17,23 71:8,11
71:17 73:19 74:12
74:14,18 76:2,5
78:13,17 81:11,17
81:20 82:24 83:18
84:8,10,16,19 85:20
**Trustee's** 8:21 10:23
14:6,7,22 24:22
31:10 34:5 35:23
36:25 39:13,19
41:16,22,24 45:11
49:25 57:2 65:20
72:15 73:10 77:13
82:2
**truth** 92:8,8,8
**try** 14:4 15:18 17:1
75:2 86:14
**trying** 7:6 21:3 22:12
58:17 84:24 87:9
**turn** 63:15 65:6
**turned** 51:15
**Turning** 47:18
**two** 7:3,15 14:23 19:1
23:6,9 27:19 28:17
28:22 32:4 35:4
37:10 38:1 40:16
42:12 47:10 49:13
53:17 54:5 57:6
66:2,18,19 68:2
69:5,20 71:25 82:14
87:19,22,23
**two-year** 27:10,16
28:5 29:7,13,19,23
32:6 69:24 70:2,5
70:12,16
**T-1** 3:14 25:10,14
**T-2** 3:17 43:16,19

55:6
**T-3** 3:18 45:12,13,16
58:22
**T-4** 3:19 46:24,25
47:11 55:2 57:13
**T-5** 3:20 63:24,25
64:3

___

**U**

**u** 61:8
**Uh-ha** 68:8
**Umm** 86:13
**Um-hum** 22:24 25:4
42:7 44:20 55:6
73:14
**unauthorized** 9:21
**underlying** 24:15
36:17
**understand** 6:9 7:11
8:7 10:10,20 18:18
18:22 28:6 29:1,17
30:12 36:23 37:16
37:20,22 38:11 47:9
51:20 56:6,19 58:3
60:23 78:21 79:15
82:7 84:23,24 85:8
85:10,11 88:8
**understanding** 13:22
15:21 18:1,4 19:10
24:12 25:23 28:7,10
29:2 34:4,16 35:12
35:22 36:24 38:4
40:4 41:25 47:10
49:18 50:1 67:22,25
72:13,20,24 74:1,2
**understood** 14:7 17:2
18:25 19:3 29:4
37:17 38:16 80:5
**Uniform** 34:12
**UNITED** 1:1
**unqualified** 88:4
**use** 7:10,20 40:18
41:23 84:7
**useful** 13:11

___

**V**

**v** 1:6,18 4:1
**value** 19:20,22,23
20:4,7,7 28:19 29:8
30:2,5,7,9,10,16,17
30:20,23 34:19 35:3
35:3
**variations** 7:9
**vast** 66:17
**version** 45:11 46:17
47:6 55:4 58:22
**versus** 31:18
**view** 13:5 36:2
**virtue** 7:7

___

**W**

**wait** 76:4
**waiting** 53:14
**waiver** 9:14
**want** 4:16,18 7:10,13
7:15 8:16 10:19
16:24 20:16 22:4,5
25:2 33:21 39:4
40:18,20 45:10
54:23 64:13 65:9
69:14 71:12 85:7
**wanted** 25:19 58:14
58:15 59:18 61:4
81:22
**warehouse** 24:23
**warfare** 16:13
**warranted** 81:18
**wasn't** 14:2 16:25
24:9
**way** 11:4 14:25 16:19
22:13,21 33:9 36:13
38:22 42:11 50:13
52:25 54:3 59:11
60:25 61:17 63:3
67:8 69:23 72:2
74:25 77:3 82:13
**weaknesses** 62:5,5
**weigh** 82:4 85:17
86:24
**weighs** 80:24
**welcome** 20:10 88:25
**went** 86:22

weren't 12:16
we'll 14:1 55:10 79:2
we're 6:5 10:21 20:13
  63:16,18,22 76:14
  78:1 86:2 88:24
we've 17:2 19:1 39:6
  46:19,19 88:1
whatsoever 52:25
willfully 73:6
wired 24:20
withdraw 48:9
withdrawals 14:23
  15:2 23:20,23
witness 3:2 14:2
  20:25 46:23 76:12
  86:10,12 88:25 90:2
word 8:13 41:23,24
  41:24 48:6,8,17
words 11:15 30:24
  38:6 48:9 51:1,11
  73:6 80:1
work 5:14,20 8:4
  13:10 14:1 16:18
  21:23 75:21,22
  76:16,25 82:15
  87:14,16
worked 5:18,18 8:1
  13:7
working 5:3
works 85:9
Worldwide 2:17
wouldn't 13:2 18:8
  50:11 52:23 66:20
writing 5:8,15 50:19
  50:22
written 26:13,13 43:8
  43:10 55:1 67:5
wrong 33:5 87:8

**X**

x 1:2,9,13,21 3:1,12

**Y**

YAW 2:19
yeah 13:1 14:2 19:23
  58:12 59:17

year 7:22
years 4:18,24,24,25
  5:3,14 6:2 27:19,25
  28:1,17,23 32:4
  49:10,17 58:7 62:16
yo 61:8
York 1:1 2:4,5,6,12
  2:12,18,18,22,22
  27:24 33:13 34:12
  92:4,22

**$**

$100 59:16
$25 55:13

**0**

08-01789(SMB) 1:4
09 14:21 16:8 24:13
  32:10,24 33:7 40:10
  71:16 75:6,17 77:14

**1**

10 12:8
10-4932(SMB) 1:14
10:57-11:05 63:13
100 59:25
10019 2:18
10036 2:22
10111 2:12
11 16:9 55:15,20 57:2
11:06 2:7
11:42 89:2
12 44:5 45:24
12(b) 55:8,12,24 56:3
  57:6
13 45:24 47:25 58:10
  58:25 62:1 65:11
  66:25
13(c) 87:25
15 81:6
16 1:25 2:6 4:25 5:3
17 92:24
19 64:11,14
1975 5:13
1978 5:13

**2**

2008 55:16,20 57:2
2009 7:22 11:21
  14:15 17:23 75:13
  76:7
2014 1:25 2:6 72:18
  75:13 92:24
21(b) 65:6 79:16
21(d) 69:11
21(e) 81:3 85:13
25 3:16

**3**

30 37:5
35 62:16 70:11
36 6:2

**4**

4 3:4 25:13 45:18
  58:10 66:25
4th 47:14,14
4/13/09 3:17
40 62:16,16 84:4,14
43 3:17
45 2:5,12 3:18 88:15
46 3:19

**5**

5/04/09 3:18
50 88:15
541(a)(1)(A) 74:12
544 55:17 56:17
544(b) 27:22 29:25
  34:11
546 32:6 73:17
546(c)(2) 31:13
546(e) 31:21 71:13,20
  71:22,23 72:1,8
  73:17,20 74:2,10,19
547 27:8 55:17 56:20
547(c) 31:12
547(c)(2) 20:2 30:25
548 29:25,25 55:17
  56:18,20 71:13
548(a)(1) 27:17
548(a)(1)(A) 32:6
  70:6 72:9 74:7
548(c) 29:12 30:1,10

30:16 70:6,15 72:11
550 27:9,20 55:17
550(a)(2) 35:16

**6**

6 44:4
60 37:2
63 3:20

**7**

7 2:21 17:22

**8**

80 21:20
825 2:17
85 21:7,10,12,15 70:2
  70:4 81:21 83:4,10
  83:19 84:5,15,18,20
  85:20

**9**

9 62:1
9th 47:15
90 15:3 17:17 26:24
  27:6 28:11 37:4
  55:21 56:10
90-day 18:23 29:18
  37:3 65:22 66:10,13
  66:16 67:4 68:1
  69:24 70:1 80:9