# EXHIBIT A

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK


------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff,

       vs.               Case No. 08-01789
BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.
------------------------------x
In Re:
BERNARD L. MADOFF,
      Debtor.
------------------------------x
IRVING H. PICARD, Trustee for
the Substantively Consolidated
SIPA Liquidation of Bernard
L. Madoff,

        Plaintiff,

       vs.               Case No. 10-04932
JPMORGAN CHASE & CO., JPMORGAN
CHASE BANK, N.A., J.P. MORGAN
SECURITIES LLC and J.P. MORGAN
SECURITIES LTD.,

        Defendant.
------------------------------x
     DEPOSITION OF MARC E. HIRSCHFIELD, ESQ.
          New York, New York
         Tuesday, May 6, 2014
           9:42 a.m.
Reported by:
Jennifer Ocampo-Guzman, CRR, CLR
JOB NO. 34178



**2**

```
 1
 2
 3
 4
 5
 6
 7
 8
 9              May 6, 2014
10              9:42 a.m.
11
12         Deposition of MARC E.
13    HIRSCHFIELD, ESQ., held at the offices
14    of Cravath, Swaine & Moore, 825 Eighth
15    Avenue, New York, New York, pursuant to
16    notice, before Jennifer Ocampo-Guzman,
17    a Notary Public of the State of New
18    York.
19
20
21
22
23
24
25
```

**4**

```
 1
 2    APPEARANCES (Continued):
 3
 4    Attorneys for Solus Recovery Fund
 5      O'MELVENY & MYERS, LLP
 6      7 Times Square
 7      New York, New York 10036
 8      BY:  EMILY R. CHEPIGA, ESQ.
 9        echepiga@omm.com
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**3**

```
 1
 2    A P P E A R A N C E S :
 3
 4    Attorneys for SPV Optimal SUS LTD
 5      CRAVATH, SWAINE & MOORE, LLP
 6      825 Eighth Avenue
 7      New York, New York 10019
 8      BY:  DAVID GREENWALD, ESQ.
 9        dgreenwald@cravath.com
10        RICHARD LEVIN, ESQ.
11        rlevin@cravath.com
12        YAW A. ANIM, ESQ.
13        yanim@cravath.com
14
15
16
17    Attorneys for Irving Picard and Deponent
18      BAKER & HOSTETLER, LLP
19      45 Rockefeller Plaza
20      New York, New York 10111
21      BY:  DAVID J. SHEEHAN, ESQ.
22        dsheehan@bakerlaw.com
23        SEANNA R. BROWN, ESQ.
24        sbrown@bakerlaw.com
25
```

**5**

```
 1
 2    M A R C   E.   H I R S C H F I E L D,
 3    called as a witness, having been duly sworn,
 4    was examined and testified as follows:
 5    EXAMINATION BY
 6    MR. GREENWALD:
 7        Q.  Good morning.
 8        A.  Good morning.
 9        Q.  Mr. Hirschfield, you are a member
10    of Baker & Hostetler?
11        A.  Yes.
12        Q.  And your area of practice, if I
13    have it correctly, is bankruptcy?
14        A.  Yes.
15        Q.  Including bankruptcy litigation?
16        A.  That's correct.
17        Q.  And you've practiced in that area
18    for over 20 years; is that correct?
19        A.  About 20 years.
20        Q.  You have been personally involved
21    in litigation on behalf of Irving Picard, in
22    his capacity as trustee of the SIPA or the
23    SIPA estate of Bernard L. Madoff Investment
24    Securities or BLMIS; is that correct?
25        A.  Yes.
```

2 (Pages 2 to 5)

6

1          Hirschfield
2     Q.  And in that capacity you've been
3  personally involved in the litigation of
4  several of actions?
5     A.  Yes.
6     Q.  To date, you would agree with me
7  that the trustee has negotiated several
8  settlements of avoidance actions, correct?
9     A.  Yes.
10    Q.  Including what is characterized on
11 its website as 16, "significant recoveries";
12 do you agree with that?
13    A.  I don't know if the number is 16,
14 but certainly a number.
15    MR. GREENWALD:  Let me show you
16 what we will mark as Exhibit 1, which is
17 a download or printout dated April 22,
18 2014 of a page from the
19 Madofftrustee.com website, specifically
20 the --
21    (Exhibit 1, Document entitled, "The
22 Madoff Recovery Initiative," marked for
23 identification, this date.)
24    MR. LEVIN:  Excuse me.  We have
25 exhibits marked on the documents

7

1          Hirschfield
2  already.  Should we use a different
3  numbering sequence here?
4     MR. GREENWALD:  No, let's just use
5  this.
6     Let me go back.
7     I'm handing you what's been marked
8  as Exhibit 1, which is a page from the
9  April 22nd, 2014 version of the
10 Madofftrustee.com website, specifically
11 the page bearing the term
12 "Recoveries-25.html."
13    Do you have that?
14    A.  Yes.
15    Q.  And you will agree with me -- feel
16 free to count -- that it identifies 16
17 "significant recoveries to date"?
18    A.  Yes.
19    Q.  In which of the 16 that are listed
20 have you personally participated in the
21 underlying settlement negotiations?
22    A.  Five.
23    Q.  Please identify the five.
24    A.  Tremont.  It's on page 2.  Carl
25 Shapiro, Jeffry Picower, Norman Levy and

8

1          Hirschfield
2  Optimal.
3     Q.  Were you personally involved in the
4  negotiation of the JPMorgan Chase settlement?
5     A.  No.
6     Q.  Did you, in your Baker Hostetler
7  diaries, ever record any time in connection
8  with the settlement of that matter, prior to
9  its settlement?
10    A.  I don't believe so.
11    Q.  Who at Baker Hostetler were most
12 personally and directly involved in the
13 negotiation of the JPMorgan settlement?
14    A.  I believe Mr. Sheehan and Ms.
15 Brown.
16    MR. GREENWALD:  Are you free for a
17 deposition later?
18    MR. SHEEHAN:  No.
19    Q.  Now, other than the 16 identified
20 significant recoveries, have there been any
21 settlements of avoidance actions in which the
22 total consideration paid by the defendant has
23 exceeded $40 million?
24    A.  Other than these?
25    Q.  Other than these.

9

1          Hirschfield
2     A.  Let me look at them.
3     I can't think of any now.
4     MR. GREENWALD:  David, are you
5  aware of any?
6     MR. SHEEHAN:  I don't remember.  I
7  would have to look.  Too many numbers
8  and too many notes.
9     MR. GREENWALD:  All right.
10    Q.  Would you agree with me though,
11 Mr. Hirschfeld, that the only settlement for
12 which Optimal has invoked the equal treatment
13 provision to date has been the JPMorgan Chase
14 settlement?
15    A.  No.
16    MR. SHEEHAN:  I will supply you.
17 We will look -- shall we make that
18 representation on the record? -- we will
19 look for any, besides the ones that are
20 listed here, and if they are in excess
21 of 40, we will let you know.
22    That is all counsel, of course.
23    MR. GREENWALD:  Thank you.
24    MR. SHEEHAN:  Sure.
25    Q.  In what other the settlements has

3  (Pages 6 to 9)

10

1    Hirschfield
2  **Optimal invoked the equal treatment**
3  **provision?**
4    A.  In connection with the Hadassah
5  settlement, Mr. Levin had contacted us and
6  said he was considering it.  He ultimately
7  decided not to, because he felt it was a
8  similar -- not similar to Optimal, so he
9  didn't actually invoke it, but certainly he
10  began down the road of trying to evoke it
11  before deciding not to.
12    **Q.  So I understand your question,**
13  **Optimal in fact did not invoke the equal**
14  **treatment provision with respect to Hadassah?**
15    A.  Yes, he did not actually invoke it,
16  but there was discussions.
17    **Q.  There were preliminary discussions**
18  **between yourself and Mr. Levin concerning**
19  **whether the Hadassah settlement was an**
20  **appropriate settlement for invocation of the**
21  **provision?**
22    A.  Correct, discussions with me and
23  perhaps others.
24    **Q.  When did those, approximately when**
25  **did those discussions take place?**

11

1    Hirschfield
2    A.  I know it was in March, but I
3  forget what year it was.
4    **Q.  And could you describe to me as**
5  **best you can the course of those discussions,**
6  **what did Mr. Levin say, what did you say,**
7  **obviously paraphrasing and summarizing as**
8  **appropriate?**
9    A.  Sure.  Mr. Levin contacted me while
10  I was on vacation, sent me an e-mail, I
11  believe, and asked about the terms of
12  settlement.  When I got back from vacation, I
13  believe we spoke.  He asked why it is the MFN
14  found clause would or would not apply.  I
15  think ultimately there was a meeting, I think
16  it was at Morrison & Foerster's offices, I
17  think it was Morrison & Foerster, where we
18  went through the financials of Hadassah and
19  their ability to pay.  I think ultimately
20  they provided to Mr. Levin information, and
21  ultimately they didn't apply it.
22    **Q.  And are you aware of why Optimal**
23  **did not ultimately decide to invoke the equal**
24  **treatment provision with respect to the**
25  **Hadassah settlement?**

12

1    Hirschfield
2    A.  I don't know why Mr. Levin
3  ultimately chose not to.
4    **Q.  During your discussions with Mr.**
5  **Levin, did you discuss the circumstance that**
6  **Hadassah, at least according to the financial**
7  **information that you provided to him, had**
8  **been unable to pay a significantly greater**
9  **settlement?**
10    A.  Yes.
11    **Q.  And ability to pay is one of the**
12  **similarity factors identified in the Optimal**
13  **settlement relevant to application of the**
14  **equal treatment provision?**
15    A.  Yes.
16    **Q.  In the course of your and Mr.**
17  **Levin's discussions about Hadassah's**
18  **settlement, did Mr. Levin express a view as**
19  **to the application of the other factors,**
20  **other similarity factors to the Hadassah**
21  **settlement?**
22    A.  I don't recall.
23    **Q.  So if we can just summarize your**
24  **testimony, the only settlement with respect**
25  **to which Optimal has invoked the equal**

13

1    Hirschfield
2  **treatment provision, to date, has been the**
3  **JPMorgan Chase settlement?**
4    A.  Yes.
5    **Q.  Now going back to early 2009,**
6  **before suing avoidance action defendants, is**
7  **it not the case that the trustee has sent out**
8  **letters demanding the return of funds**
9  **transferred to the defendant, either**
10  **initially or subsequently, by the, by BLMIS?**
11    A.  I was not at Baker Hostetler in
12  early 2009.
13    **Q.  Are you aware, though, of the**
14  **trustee's practice in early 2009 of sending**
15  **out letters demanding return of transferred**
16  **funds?**
17    A.  I believe he may have sent some.  I
18  do not know to what that extent.
19    **Q.  Now, as a lawyer representing**
20  **Mr. Picard, I take it you have participated**
21  **in the drafting and filing of several**
22  **avoidance actions?**
23    A.  Yes.
24    **Q.  Approximately how many?**
25    A.  Probably, I mean probably close to

4  (Pages 10 to 13)

14

1          Hirschfield
2   a thousand. There were -- that I
3   participated to some extent.
4       Q.   And unlike an ordinary civil
5   litigant, the trustee as a SIPA trustee
6   enjoys powers under bankruptcy Rule 2004 to
7   conduct pre-complaint investigations; isn't
8   that correct?
9       A.   You said unlike?
10      Q.   Unlike a typical civil litigant,
11  there is no provision in the Federal Rules of
12  Civil Procedure for pre-complaint discovery.
13       That's a fair statement, correct?
14      A.   Correct.
15      Q.   By contrast, bankruptcy Rule 2004
16  does authorize and empower the trustee in a
17  bankruptcy matter or SIPA matter to conduct
18  pre-complaint investigations?
19      A.   That's correct.
20      Q.   And before the -- so before a SIPA
21  trustee files a complaint, he has the ability
22  to subpoena prospective defendants for
23  documents?
24      A.   Yes.
25      Q.   And he has the power to conduct

15

1          Hirschfield
2   examinations under oath?
3       A.   Yes.
4       Q.   And in this matter, by which I mean
5   the Madoff liquidation, the SIPA liquidation,
6   the trustee has exercised its power under
7   Rule 2004 to subpoena documents and conduct
8   examinations of prospective defendants?
9       A.   Yes.
10      Q.   The trustee has done so in part,
11  you would agree, because of his obligation
12  under bankruptcy Rule 9011, 9011?
13      A.   For a lot of reasons.
14      Q.   Right.  And that's one of them?
15      A.   Sure.
16      Q.   Compliance with bankruptcy
17  Rule 9011 is the one of the reasons the
18  trustee conducts extensive Rule 2004
19  discovery examinations, whatever the term is?
20      A.   Yes.
21      Q.   And bankruptcy Rule 9011, like
22  Federal Rule of Civil Procedure 11, requires
23  the trustee to assert into pleadings only
24  factual contentions that have "evidentiary
25  support."

16

1          Hirschfield
2       I mean I can get the rule for you
3   to read.
4          MR. SHEEHAN:  Are you asking him to
5   agree with what the rule says?
6          MR. GREENWALD:  Yes, I'm asking him
7   to agree with what the rule says.
8       A.   And the rule says what it says.
9       Q.   Now, in your experience with Baker
10  & Hostetler representing Mr. Picard, when
11  Mr. Picard, through Baker Hostetler, had made
12  allegations in a complaint following the
13  conduct of a Rule 2004 examination, you would
14  agree that those allegations are based upon
15  evidence that the trustee has either
16  developed through a 2004 examination or from
17  some other source?
18      A.   Yes.
19      Q.   And as far as you're aware, the
20  trustee has complied with bankruptcy
21  Rule 9011 in every complaint he has filed?
22      A.   Yes.
23      Q.   And accordingly, so far as you are
24  aware, assuming I've quoted the rule
25  correctly, there is "evidentiary support" for

17

1          Hirschfield
2   facts the trustee has alleged in the
3   complaint he has filed?
4       A.   Yes.
5       Q.   Were you involved in any capacity
6   in the preparation of the complaint in the
7   trustee's avoidance action against JPMorgan?
8       A.   I may have seen a draft at some
9   point, but I was not actively involved in
10  putting together or anything of the sort.
11      Q.   You saw a draft, however, before it
12  was filed?
13      A.   I may have.  I don't recall.
14      Q.   Do you recall whether you reviewed
15  the draft that you may have seen?
16      A.   I don't recall.
17      Q.   Now, on December 2nd of 2010, the
18  trustee filed its 112-page complaint against
19  JPMorgan Chase and certain of its affiliates.
20       We have it here, although I don't
21  know if we need to refer to it.  You would
22  agree with me, it contained 21 claims?
23      A.   I would have to look at it.
24      Q.   Would you agree it contains 16
25  avoidance claims seeking recovery of initial

5  (Pages 14 to 17)



18

Hirschfield

1 transfers by BLMIS and subsequent transfers
2 from certain feeder funds?
3 A. I don't know.
4 MR. GREENWALD: Why don't we pull
5 it out and mark the complaint as
6 Exhibit 2.
7 (Exhibit 2, Complaint, marked for
8 identification, this date.)
9 Q. You are aware that the filing of
10 the complaint against JPMorgan Chase came
11 only after the trustee had conducted a
12 Rule 2004 examination of JPMorgan?
13 A. I don't know whether one was
14 conducted of JPMorgan or not. I believe
15 there might have been one, but I'm not
16 positive.
17 Q. Well, the complaint in various
18 parts references examinations of various
19 JPMorgan employees. I took from that, that a
20 2004 examination had been conducted.
21 A. I believe so, but again, I'm not
22 positive.
23 Q. Do you know how many subpoenas the
24 trustee issued to JPMorgan as part of its

19

Hirschfield

1 pre-complaint investigation?
2 A. No.
3 Q. Is that information available?
4 A. I'm sure we have it somewhere,
5 yeah.
6 MR. GREENWALD: It's not publicly
7 available, is it? No.
8 Q. Do you know how many examinations
9 of witnesses the trustee conducted?
10 A. No.
11 Q. Now, would you agree that if
12 examinations were conducted and if 2004
13 subpoenas were served and complied with, the
14 complaint that the trustee filed would
15 reflect the trustee's review of the results
16 of his 2004 examination?
17 A. I would assume that those who
18 drafted the complaint relied upon all the
19 information available to them.
20 Q. Now, before the JPMorgan complaint
21 was filed, do you know whether the trustee
22 engaged in any settlement discussions with
23 JPMorgan?
24 A. I don't know.

20

Hirschfield

1 Q. Do you know who was most directly
2 and personally representing JPMorgan, in the
3 period in 2010 leading up to the filing of
4 the complaint?
5 A. I believe it was lawyers at
6 Wachtell Lipton. I don't know who it was at
7 that firm.
8 MR. GREENWALD: I would like to
9 mark as an exhibit your declaration in
10 this proceeding. Call that Exhibit 3.
11 (Exhibit 3, Declaration of Marc E.
12 Hirschfield, marked for identification,
13 this date.)
14 Q. Now, please turn to paragraph 63,
15 which is on page 23, 24.
16 You would agree with me that in
17 this paragraph, you offer six reasons why in
18 your view the most favored nation provision,
19 or what I will refer to as the equal
20 treatment provision, would not apply to the
21 JPMorgan settlement; is that correct?
22 A. Yes.
23 Q. Now, one of the reasons you cite is
24 that JPMorgan was not a BLMIS customer; isn't

21

Hirschfield

1 that correct, that's the first reason?
2 A. That's correct.
3 Q. So which of the similarity factors
4 that are identified in the Optimal settlement
5 is JPMorgan's lack of customer status
6 relevant?
7 A. I don't have the provision in front
8 of me, but I believe it's a number of them.
9 Q. Excuse me?
10 A. I don't have the actual MFN
11 provision in front of me, so I would have to
12 look at it, but I believe it's a number of
13 them.
14 MR. GREENWALD: Okay. Why don't we
15 provide it to you.
16 Let's mark as Exhibit 4, I guess,
17 the Motion For Entry of Order Pursuant
18 Section 105, the bankruptcy code, Rules
19 2002 and 9019...Approving an Agreement
20 By and Among the Trustee and Optimal
21 Strategic US Equity Limited and Optimal
22 Arbitrage Limited.
23 (Exhibit 4, Motion For Entry of
24 Order Pursuant Section 105(a) of the

6 (Pages 18 to 21)

22

1           Hirschfield
2    Bankruptcy Code and Rules 2002 and 9019
3    of the Federal Rules of Bankruptcy
4    Procedure Approving an Agreement By and
5    Among the Trustee and Optimal Strategic
6    US Equity Limited and Optimal Arbitrage
7    Limited, marked for identification, this
8    date.)
9        Q.  And I will note that the text of
10   the Optimal settlement appears as an exhibit
11   to this filing by the trustee.
12       A.  What number is this?
13       Q.  This will be 4.
14          So if I'm not mistaken, the list of
15   the similarity factors appears in section
16   13(c) of the Optimal settlement, which
17   appears on page 8 of Exhibit A to this
18   document.
19       A.  Sure.
20       Q.  So there the five similarity
21   factors are listed.
22          So my question is:  To which, if
23   any, of those five similarity factors is
24   JPMorgan's lack of customer status relevant?
25       A.  Certainly number 2, the nature of

23

1           Hirschfield
2    avoiding power claims; and also probably
3    number 4.
4           I would also note that the
5    provision, paragraph 13, is equal
6    treatment -- is entitled, "Equal Treatment
7    For SUS in Arbitrage With Other Similar
8    Customers."
9        Q.  That's a heading?
10       A.  Yes.
11       Q.  And I would like to direct your
12   attention to paragraph 24 of the settlement,
13   whose heading is "Captions and Rules of
14   Construction."  Which reads, "The captions in
15   this agreement are inserted only as a matter
16   of convenience and for reference and do not
17   define, limit or describe the scope of this
18   agreement or the scope or content of any of
19   its provisions."
20       A.  Yes.
21       Q.  And you would agree that when --
22   this first caption, it's referring to the
23   underlying phrase that appears right after
24   the number 13 on page 7?
25       A.  Yes.

24

1           Hirschfield
2        Q.  So you mentioned two of the five
3    factors, the second and the fourth.  Let's
4    first focus on the second.
5           The second similarity factor is,
6    "The nature of the avoiding power claims
7    (such as whether they are for recovery of a
8    preference or for recovery of principal or
9    fictitious profits)."
10          So in what way is JPM's lack of
11   status as a former BLMIS customer relevant to
12   the evaluation of that factor?
13       A.  The intent of the MFN clause was to
14   deal with similar claims.  The claims that we
15   had against JPMorgan my understanding is were
16   different in that they were not a customer,
17   and therefore the nature of the claims are
18   different.  It's not just fictitious profits
19   or preferences or that nature.
20       Q.  But are any of the claims that,
21   avoidance claims that the trustee asserted
22   against JPMorgan claims which, by their
23   nature, can be asserted only against an
24   entity that is not a customer of a debtor?
25       A.  The avoidance claims are avoidance

25

1           Hirschfield
2    claims.  Other claims may be brought as well,
3    I understand, but the nature of those
4    avoidance claims are different.
5        Q.  Let me understand what you mean by
6    "different."
7           The question I have is -- the
8    question I have is, are any of the statutory
9    avoiding power claims that the trustee
10   asserted against JPMorgan -- trustees, excuse
11   me -- claims that by their legal nature can
12   be asserted only against an entity that is
13   not a customer of the debtor?
14       A.  The same sections of the bankruptcy
15   code are implicated, but the burden of proof
16   and the evidentiary standards are, or could
17   be different.
18       Q.  In what way could they be
19   different, simply by virtue of the fact that
20   JPMorgan is not a former customer of BLMIS?
21       A.  There is a defining body of case
22   law on Ponzi schemes and claims against
23   customers, and the body of law is different,
24   or it could be different in non-customer
25   kinds of cases.  It's more like an ordinary

7  (Pages 22 to 25)



26

1        Hirschfield
2   avoidance action in any bankruptcy case.
3   Whereas, in a Ponzi scheme, avoidance action,
4   there is an established body of law which
5   deals with what the burden of proof is and
6   the things you need to prove.
7        Q.  Well, try to identify for me one,
8   at least one avoidance action claim that the
9   trustee asserted against JPMorgan for which
10  any relevant burden or legal standard was
11  different from the burden or legal standard
12  the trustee would face in an action against a
13  former customer.
14       A.  I've come to understand that some
15  of the avoidance actions being brought
16  against JPMorgan deal with loans and their
17  payment of loans.  And under the bankruptcy
18  code, whether or not value was given in
19  connection with those transactions is
20  different than what we would have to prove
21  with respect to a customer.
22       Q.  Now, you also identified the fourth
23  factor, "The knowledge of the defendant (a
24  group of defendants, taken as a whole) or its
25  or their complicity in the fraud that BLMIS

27

1        Hirschfield
2   perpetrated on its customers."
3        In what way was JPMorgan's lack of
4   status as a BLMIS customer relevant to the
5   evaluation of that fourth similarity factor?
6        A.  I believe a certain number of
7   claims that the trustee brought against
8   JPMorgan involved its knowledge or lack of
9   knowledge of what was happening with BLMIS.
10       Q.  As a practical litigating matter,
11  why would the fact that JPMorgan was not a
12  direct Madoff customer make a below
13  benchmark, by which I mean below 85 percent
14  settlement, less appropriate for evaluation
15  under the equal treatment provision?
16       MR. SHEEHAN:  Object to the form.
17       A.  The information that we might have
18  had in our records might have been different,
19  meaning the BLMIS records that we got at the
20  premises, things of that nature.
21       Q.  Well, different in what way?
22       A.  I was not involved with the
23  preparation of the complaints, so I couldn't
24  speak to that, per se.  I'm saying, we have
25  different kinds of information, perhaps.

28

1        Hirschfield
2        Q.  Right, but would any of the
3   information that the trustee had about
4   JPMorgan Chase before it settled have made
5   litigating the avoidance claims against
6   JPMorgan Chase more challenging for the
7   trustee than it would have been had JPMorgan
8   been a direct customer?
9        MR. SHEEHAN:  Object to form.
10       A.  I'm sorry, can you repeat that
11  again?
12       Q.  Yes.
13       What information did the trustee
14  have before it settled with JPMorgan that
15  made prevailing on its avoidance claims
16  against JPMorgan harder than it would have
17  been, had JPMorgan been a direct customer of
18  BLMIS?
19       A.  I didn't participate in the
20  settlement or the negotiations.  I just don't
21  know the answer to that.
22       Q.  So without knowing that information
23  though, it's impossible for you now to say
24  which way JPMorgan's lack of customer status
25  cuts in the evaluation of the equal treatment

29

1        Hirschfield
2   provision?
3        A.  I think with respect to item 2, I
4   think it does cut differently.  Item 4, I
5   think it could cut differently.
6        Q.  Why did it cut differently on item
7   2?
8        A.  Again, because the nature of the
9   things we need to prove is different for a
10  customer versus a non-customer.
11       Q.  And in which way is it different
12  for a customer?  Does it make it harder for
13  the trustee to prevail against JPMorgan or
14  easier?
15       A.  Harder.
16       Q.  Harder.  Why harder?
17       A.  The way that the Ponzi scheme law
18  has evolved in suing a customer, the level of
19  proof is different, and it's generally easier
20  to prove.
21       Q.  For a non-customer versus a
22  customer?
23       A.  Yes.
24       Q.  Why, in the case of JPMorgan?
25       A.  With respect to a customer, you

8  (Pages 26 to 29)

30

Hirschfield

1    have to show certain things, depending upon
2    what kind of avoidance action it is; and
3    those burdens are less, and the laws are well
4    established.
5    **Q.  Give me a concrete example.**
6    A.  Value would be an example.
7    **Q.  Give me an example.**
8    A.  The law in Ponzi scheme cases has
9    been universal that where you have fictitious
10   profits, the customer did not get value in
11   respect to those profits; whereas, for the
12   non-customer, it would be a factual
13   determination as to whether or not that
14   non-customer provided value, recently close
15   value or any value, in connection with the
16   transaction.
17   **Q.  And in what way was the proof, the**
18   **trustee's proof with respect to value harder**
19   **in the case of JPMorgan than it would have**
20   **been in an action against a customer?**
21   A.  With respect to a customer, you
22   would look at cash in, cash out to determine
23   whether or not that customer either had
24   fictitious profits or not.  If they did have

31

Hirschfield

1    fictitious profits, those profits would be no
2    value given for those profits.
3    With respect to a non-customer, you
4    would have to look at whether or not to view
5    value as a factual matter.  And I don't know
6    what the situation was with JPMorgan, but
7    certainly it's a more involved and complex
8    analysis than whether or not, looking at an
9    accounting book, they gave -- there was
10   fictitious profits or not.
11   **Q.  Well, you would agree some of the**
12   **trustee's avoidance claims against JPMorgan**
13   **related to repayment of a loan, correct?**
14   A.  Yes.
15   **Q.  How is the determination of value**
16   **versus non-value for those repayments more**
17   **complex than it would be in a case against a**
18   **direct customer?**
19   A.  I would think with respect to a
20   loan you would have to see the circumstances
21   of the loan, to see whether value is given or
22   not; and how you would determine that would
23   be up to the court, ultimately.
24   **Q.  Besides value, are there any other**

32

Hirschfield

1    **legal or factual questions that the trustee**
2    **faced in pursuing its avoidance claims**
3    **against JPMorgan that were more challenging**
4    **for the trustee by virtue of the fact that**
5    **JPMorgan was not a BLMIS customer?**
6    A.  I was not involved with the
7    litigation against JPMorgan, so I can't speak
8    to all of the factors.  But I understand
9    generally that they were more difficult
10   because of the nature of JPMorgan and its
11   relationship with BLMIS.
12   **Q.  Now, another reason you cite in**
13   **paragraph 63 of your declaration is that,**
14   **"The trustee asserted a variety of claims,**
15   **both avoidance and common law claims, against**
16   **JPMorgan that it did not assert against**
17   **Optimal, including for JPMorgan's role as**
18   **BLMIS' banker and lender, and as a subsequent**
19   **transferee, all of which require a higher**
20   **standard of pleading and proof than**
21   **preference claims like those settled in**
22   **Optimal."**
23   **You would agree, though, that at**
24   **the time of the JPMorgan settlement, the 2nd**

33

Hirschfield

1    **Circuit had affirmed Judge McMahon's**
2    **dismissal of the common law claims?**
3    A.  I believe that's correct.
4    **Q.  And the settlement that Optimal has**
5    **challenged -- "challenge" is the wrong**
6    **word -- and the settlement with respect to**
7    **which Optimal has invoked the equal treatment**
8    **provision is a settlement of the trustee's**
9    **avoidance power claims only?**
10   A.  Correct.
11   **Q.  There is a separate settlement**
12   **concerning the common law claims that were**
13   **dismissed, correct?**
14   A.  Yes.
15   **Q.  And none of the considerations**
16   **JPMorgan paid in connection with the**
17   **avoidance power claims settlement was paid in**
18   **connection with the settlement of the common**
19   **law claims?**
20   A.  I believe there was one, while the
21   settlement was denominated as a separate
22   settlement, there was one overarching
23   settlement of not just our claims but other
24   claims as well, with JPMorgan.

9  (Pages 30 to 33)

34

1          Hirschfield
2          Q.  But the settlement that is the
3    subject of this proceeding was a settlement
4    only of the trustee's avoidance power claims
5    against JPMorgan?
6          A.  I believe that that was a piece of
7    an overall larger settlement.
8          Q.  It was set forth, however, in a
9    standalone, separate standalone settlement
10   agreement, correct?
11         A.  Yes, yes.
12         Q.  Now, another reason you cite in
13   paragraph 63 is, "The JPMorgan settlement
14   with the trustee was part of contemporaneous
15   settlements relating to its wrong on the
16   Madoff fraud with the Department of Justice
17   and other Federal authorities, as well as
18   with class counsel representing a class of
19   BLMIS customers, whereas the Optimal
20   settlement involved only the trustee."
21         To which of the similarity factors
22   that are identified in the settlement
23   agreement with Optimal is simultaneous
24   settlement by JPM with other authorities and
25   entities relevant?

35

1          Hirschfield
2          A.  I'm not sure there is any that are
3    triggered, per se, but this list is a
4    non-exclusive list, and these are certain
5    examples.
6          Q.  Why in your view would the fact
7    that JPMorgan resolved class action and DOJ
8    investigations at the same time that it
9    resolved the avoidance power claims bear upon
10   application of equal treatment provision to
11   the avoidance powers settlement?
12         A.  I think there are a number of
13   reasons.  One reason would be that we knew a
14   large amount of money was going to Madoff
15   victims, either through us or through other
16   means, and that certainly influenced or could
17   influence a decision on how you settle any
18   particular part of the claims.
19         Q.  In what way?
20         A.  Money to some extent is fungible.
21   So whether or not they gave a little more
22   value here or a little more value there
23   doesn't necessarily matter or might not
24   necessarily matter quite as much, as long as
25   the money was going to the victims at the end

36

1          Hirschfield
2    of the day.
3          Q.  Well, the settlement of the
4    avoidance power action that you executed with
5    JPMorgan, that goes to the trustee's customer
6    fund, if I'm using the term correctly?  Is
7    that the right term --
8          A.  Yes.
9          Q.  -- the customer fund?
10         A.  Yes.
11         Q.  And the principles of distribution
12   of that customer fund differ significantly,
13   you would agree, from the principles that
14   govern distribution of, say, the DOJ's --
15   it's called remission fund, correct?
16         A.  There are differences between the
17   two funds.
18         Q.  Such that there could be profoundly
19   different distributions to different Madoff
20   victims, under the two different sets of
21   distribution?
22         MR. SHEEHAN:  Object to the form.
23         A.  I don't know that I would agree
24   with "profoundly."  There could be some
25   differences, but there may be ways to make

37

1          Hirschfield
2    that up.
3          Q.  And similarly, a class action
4    settlement is distributed in ways very
5    different than the way the Madoff customer
6    fund is distributed, correct?
7          A.  Again, there could be some
8    differences, I don't know how significant.
9          Q.  Well, for one thing, monies paid to
10   a class action settlement fund, there are
11   fees paid to administrators and class action
12   lawyers, correct?
13         A.  I assume there are some fees paid.
14         Q.  And no fees that the trustee
15   collects are paid to Baker & Hostetler?
16         A.  That's right.
17         (Discussion off the record.)
18         MR. GREENWALD:  Could I hear the
19   question read back.
20         (A portion of the record was read.)
21         Q.  None of the settlement proceeds
22   that the trustee collects are paid to the
23   Baker & Hostetler firm?
24         A.  Yes, that's correct.
25         Q.  SIPA pays your fees 100 percent?

10  (Pages 34 to 37)

38

1          Hirschfield
2      A.  Yes.
3      Q.  SIPC, I'm sorry, SIPC.
4      A.  Yes, that's right.
5      Q.  And you would agree that your
6   client, Mr. Picard, has a duty to maximize
7   the size of the Madoff customer fund?
8      A.  Yes.
9      Q.  Any resolution that results in a
10  diminution of the customer fund is an outcome
11  that the, that Mr. Picard has a duty to
12  attempt to avert?
13     A.  He has a duty to maximize
14  recoveries, and there are many ways to do
15  that.
16     Q.  So my question I guess is:  How
17  would the fact that JPMorgan was paying
18  funds, money to other victim funds, to
19  plaintiff classes and their counsel motivate
20  him to execute a settlement for a lower
21  amount than he would have agreed to execute
22  in the absence of those collateral
23  settlements?
24     A.  How could he or how would he?
25         MR. GREENWALD:  Can I have the

39

1          Hirschfield
2   question?
3         (A portion of the record was read.)
4         THE WITNESS:  Thank you.
5      A.  The trustee has to take into
6   account a number of factors, when deciding
7   whether to litigate or settle or do something
8   else, and certainly one of the factors he
9   could consider is whether, as part of an
10  overall settlement, the group of Madoff
11  victims as a whole are better off or worse
12  off.
13     Q.  Which Madoff victims?
14     A.  All Madoff victims.
15     Q.  Again, though, I thought the
16  trustee has a very clear statutory duty to
17  maximize recoveries by recognized claimants
18  in the SIPA proceeding, correct?
19     A.  Yes.
20     Q.  And by the same token, I would
21  think he has no duty whatsoever to concern
22  himself with recoveries by persons who do not
23  hold approved claims?
24     A.  There is overlap, almost -- a lot
25  of overlap between the victims in our

40

1          Hirschfield
2   proceeding and those in the other, the people
3   in the other two funds.
4      Q.  Okay, but perhaps there is overlap,
5   but that overlap is incidental.  Let's take
6   the situation where there isn't overlap.
7         Did the Madoff trustee have any
8   duty to maximize recovery to a Madoff victim
9   who does not hold any approved claim in the
10  SIPA proceeding?
11     A.  No.
12     Q.  And does the Madoff trustee have
13  any legal duty to seek recoveries for the
14  holder of an approved claim incremental to
15  the amount of the approved claim?
16         MR. SHEEHAN:  Object to the form of
17  the question.
18     A.  I'm not sure I understand the
19  question.
20     Q.  Does the Madoff trustee have any
21  duty to seek recoveries for certain holders
22  of approved claims that exceed the recovery
23  those approved claim holders are entitled to
24  through the SIPA proceeding?
25         MR. SHEEHAN:  Same objection.

41

1          Hirschfield
2      A.  I'm still not understanding.  I'm
3   sorry.
4         MR. GREENWALD:  I think it's clear.
5         Why don't you read it back, and if
6      you still don't understand I'll try it
7      again.
8         (A portion of the record was read.)
9      A.  I'm sorry.  I don't understand the
10  question.
11     Q.  Let me give you a simple example.
12  You have a Madoff victim with an approved
13  claim, a claim approved by Mr. Picard for
14  $100.
15         Does the Madoff trustee have any
16  legal duty to see to it that that victim
17  obtains compensation from some other source
18  such that his total victim recovery would be
19  say $105 or 110?
20         (Discussion off the record.)
21         MR. GREENWALD:  Let's withdraw
22  that.
23     Q.  Let's assume an approved Madoff
24  claim holder who is entitled to a
25  distribution from the SIPA estate of $70.

11  (Pages 38 to 41)

42

```
 1          Hirschfield
 2      Does the Madoff trustee have any
 3  legal duty to encourage or facilitate that
 4  claim holder's receipt of additional
 5  compensation from other sources?  And if so,
 6  what other sources would that be?
 7      A.  In your example, the claimant has a
 8  claim of $70?
 9      Q.  Well, he has a claim for X, for
10  which he will be entitled to get
11  distributions from the customer fund of, say,
12  $70.  Let's just hypothesize that, okay?
13      So clearly in your view, I think
14  it's legally correct, Picard has a duty to
15  see to it that that customer gets his or her
16  $70, correct?
17      A.  Yes.
18      Q.  Does, once that $70 is --
19      A.  He has a duty -- I'm sorry, he has
20  a duty to see that he gets as much of the
21  claim paid as possible.
22      Q.  Correct, correct, as much of the
23  claim paid as possible from the customer
24  fund?
25      A.  Yes.
```

43

```
 1          Hirschfield
 2      Q.  Does Mr. Picard have a duty to see
 3  to it that that same approved claim holder
 4  gets compensation from any other source?
 5      A.  A duty, no.  We have cooperated
 6  with others to get settlements or other
 7  results that enure to the benefit of Madoff
 8  victims.
 9      (Discussion off the record.)
10      Q.  One of the similarity factors
11  identified in the Optimal estate settlement
12  is "The stage of any litigation by the
13  trustee against the defendant."
14      Do you agree that I've read that
15  correctly?
16      A.  For a group of defendants taken as
17  a whole, yes.
18      Q.  And you will agree that the Optimal
19  settlement occurred before any litigation had
20  been filed by the trustee against any Optimal
21  fund?
22      A.  Yes.
23      Q.  And it occurred after the trustee
24  had served but had not sought to enforce
25  Rule 2004 subpoenas against certain Optimal
```

44

```
 1          Hirschfield
 2  entities?
 3      A.  Yes.
 4      Q.  And you will agree that the Optimal
 5  settlement was the very first settlement the
 6  trustee executed with any prospective or
 7  actual avoidance action defendant?
 8      A.  Yes.  First large one, anyway.
 9      Q.  Well, was it the first or the first
10  large one?
11      A.  Again, I didn't arrive at Baker
12  until March of 2009, so I don't know whether
13  there was any small ones before then; but
14  certainly it was the first significant one.
15      Q.  You think it was the first?
16      A.  I think so.
17      Q.  Would you now turn to Mr. Levin's
18  declaration, unless you've memorized it.
19      (Exhibit 5, Declaration of Richard
20  Levin Regarding Application of the Equal
21  Treatment Provision to the Settlement
22  Agreement Between the Trustee and
23  JPMorgan Chase & Co., et al., marked for
24  identification, this date.)
25      Q.  So if you could turn to page 16,
```

45

```
 1          Hirschfield
 2  paragraph 21(e).  The very last clause.
 3      Would you agree --
 4      A.  I'm sorry, what page again?
 5      Q.  Last page, last sentence, last
 6  clause.
 7      Would you agree with Mr. Levin that
 8  there is a, common practice in bankruptcy
 9  cases that early settlements of avoiding
10  power litigation are usually for less than
11  settlements at later stages?
12      A.  I'm sorry, I'm not seeing where you
13  are talking about.
14      MR. SHEEHAN:  The last page.
15      Q.  The last sentence, last clause?
16      A.  Okay, yes, I'm sorry.
17      Q.  Would you agree with Mr. Levin that
18  there is "A common practice in bankruptcy
19  cases that early settlements of the avoiding
20  power litigation are usually for less than
21  settlements at later stages"?
22      A.  Oftentimes.
23      Q.  So you would agree?
24      A.  It depends upon the facts, but in
25  many cases it makes sense for a trustee to
```

12  (Pages 42 to 45)

46

1          Hirschfield
2  settle or a debtor to settle things early to
3  avoid litigation costs.
4          Q.  It's a common practice, as Mr.
5  Levin says, yes?
6          A.  Yes.
7          Q.  Now, you mentioned that you've been
8  personally involved in negotiating
9  settlements with other avoiding power
10  defendants.
11          Are you aware of instances in which
12  the trustee, in the course of those
13  negotiations, has resisted settlements at
14  below an 85 percent benchmark, on the ground
15  that the settlement under consideration is
16  occurring at a stage more advanced than the
17  stage at which Optimal settled?
18          THE WITNESS:  Can you read that
19  back?
20          (A portion of the record was read.)
21          A.  If you're asking whether the reason
22  why we resisted settlement was a different
23  stage of litigation, I don't know the
24  instances of that particular situation.
25          Q.  I guess I'm asking for more

47

1          Hirschfield
2  information along the following lines:  Have
3  there been situations in negotiations of
4  other settlements that you've been involved
5  in where a defendant has come to you and
6  proposed a benchmark settlement or a
7  settlement at one percentage and cited the
8  Optimal settlement to support that portion,
9  and the trustee's counsel or the trustee has
10  responded that, no, that settlement
11  percentage is not appropriate, because
12  Optimal settled before litigation, and you're
13  settling at a much later stage?
14          A.  There are certainly instances where
15  people have proposed settlements that we've
16  said no to, for a lot of reasons, including
17  the fact that it would be below the
18  benchmark.  I don't know that stage of
19  litigation was a specific factor where we
20  said yes or no.
21          Q.  Well, it's hard to think of a group
22  of defendants or a defendant with whom you
23  would be engaged in settlement negotiations
24  where the stage of the litigation would have
25  been less advanced than the stage of Optimal;

48

1          Hirschfield
2  isn't that correct?
3          A.  There are some that were similar.
4  I don't know if less advanced is correct or
5  not.
6          Q.  There was no question, though, that
7  Optimal was the first significant settlement?
8          A.  Yes.
9          Q.  And it occurred before any
10  litigation had been filed?
11          A.  Yes.
12          Q.  So by definition, if you engaged in
13  settlement talks with a group of defendants
14  or a defendant against whom a case has been
15  filed, that group of defendants is at a stage
16  in the litigation more advanced than the
17  stage at which Optimal was?
18          A.  That's correct.
19          Q.  And in general, a settlement in
20  which the trustee has taken the view that a
21  higher settlement percentage is appropriate,
22  the more advanced the stage of litigation at
23  which the trustee is settling?
24          MR. SHEEHAN:  Object to the form of
25  the question.

49

1          Hirschfield
2          A.  Again, not necessarily.
3          Q.  All other factors being equal,
4  though, the trustee will tend to seek a
5  higher percentage in cases that are, have
6  advanced to a more advanced stage than the
7  stage that the Optimal litigation was at in
8  May of 2009?
9          A.  No.
10          MR. SHEEHAN:  Object to form.
11          He answered.  Go ahead.
12          Q.  You would agree, though, as you say
13  in your declaration, paragraph 63, page 24,
14  that "The stage of the proceedings in
15  JPMorgan were vastly different than with
16  Optimal, as JPMorgan and the trustee engaged
17  in discovery under bankruptcy Rule 2004, a
18  complaint as amended had been filed against
19  JPMorgan, the reference had been withdrawn,
20  the district court had issued dispositive
21  rulings on certain of the trustee's claims,
22  direct appeals and a petition for certiorari
23  were filed relating to the district court
24  ruling, and the case was proceeding to
25  discovery before the bankruptcy court at the

13 (Pages 46 to 49)

50

```
1              Hirschfield
2    time of settlement, JPMorgan having answered
3    the complaint."
4       A.  Yes.
5       Q.  And you would agree that that vast
6    difference in stage of litigation is a factor
7    that, under the equal treatment provision,
8    weighs in favor of the application of that
9    provision to the JPMorgan settlement?
10      A.  No.
11      Q.  Why not?
12      A.  There are a number of reasons.  For
13   one, you asked earlier about trustees or
14   debtors settling cases early to avoid
15   litigation costs.  For us that is not
16   necessarily a factor, because we, as you
17   noted earlier, get paid by SIPC and therefore
18   we're not spending money out of the customer
19   funds to get more customer money.
20          Second, with respect to someone who
21   is advanced in litigation, there are things
22   that happen in a litigation, or could happen
23   in a litigation, that could affect one's view
24   of the case.
25      Q.  Would you agree, all things being
```

51

```
1              Hirschfield
2    equal, that the trust has an interest in
3    encouraging settlements that occur earlier
4    rather than later in the litigation process?
5       A.  It depends upon the settlement
6    terms.
7       Q.  Well, generally, even though you
8    are being paid by SIPC, not by the Madoff
9    entities, I would have to think that the
10   trustee believes that the settlements that
11   happen quicker and with less expenditures of
12   resources by counsel are to be encouraged
13   rather than discouraged, because such earlier
14   settlements not only facilitate faster
15   distributions to the victims but also enable
16   the trustee to devote his resources to other
17   recovery matters.
18          MR. SHEEHAN:  Object to form.
19      A.  Generally speaking, it's better to
20   bring money in earlier, so we can distribute
21   it, but it depends upon the settlement terms
22   about whether we take a particular deal or
23   not.
24      Q.  That's why I said all other things
25   being equal.
```

52

```
1              Hirschfield
2       A.  Okay.
3       Q.  So with that qualification, you
4    would agree with the proposition that the
5    trustee has an interest in encouraging
6    settlements that occur earlier in the
7    litigation or pre-litigation process?
8       A.  Generally speaking, settlements of
9    equal value that happen earlier would be
10   better.
11      Q.  And one way to facilitate such
12   settlements is to make it clear to the
13   community of prospective or actual clawback
14   defendants that early settlements will
15   receive more favorable treatment than later?
16      A.  Are you asking whether we said
17   that?
18      Q.  No.  As a matter of just principle,
19   you would agree that that would help you
20   realize or achieve earlier settlements?
21      A.  It does.
22      Q.  So under your understanding of the
23   equal treatment provision, how does the stage
24   at which litigation is settled affect whether
25   the equal treatment provision applies or not?
```

53

```
1              Hirschfield
2       A.  I think it depends on a lot of
3    factors, on the facts that get developed.
4       Q.  Well, when you negotiated the equal
5    treatment provision with Optimal, right?
6       A.  Yes.
7       Q.  I take it you had some idea as to
8    how it would be applied in the future, right?
9       A.  Yes.
10      Q.  You, I take it, recommended to
11   Mr. Picard that he opt for or enter into a
12   settlement with the equal treatment
13   provision, as it appears; and I take it,
14   then, you had a reason why you were
15   comfortable recommending that provision to
16   him as it appears in the settlement, correct?
17      A.  Yes.
18      Q.  So what was your understanding as
19   to how the stage of the litigation factor
20   would play out, in situations in the future
21   in which Optimal invoked the clause?
22      A.  I think this was one of them that
23   was really an open question, and I think this
24   was very fact dependent.  If, for instance,
25   you litigated a case and got to a more
```

14 (Pages 50 to 53)

54

```
 1              Hirschfield
 2  advanced stage, but you felt your case wasn't
 3  as firm as you'd hoped it would be, you might
 4  settle for a percentage that's lower than
 5  85 percent.  And because of the advanced
 6  stage where you developed your facts,
 7  developed the case, you might not believe
 8  that 85 percent recovery is something you
 9  could -- you could achieve, in which case the
10  MFN should not apply.
11              Whereas, in other situations, it
12  could be a situation that you referenced
13  earlier, where early settlement might deserve
14  a little bit of discount versus later ones.
15      Q.  So under your view of the equal
16  treatment provision, as of the time you
17  recommended to the trustee that he execute
18  and as of today, the stage of the litigation
19  factor could either cut against the trustee
20  or in favor of the trustee, with respect to a
21  settlement that occurs later in litigation
22  than the stage at which the Optimal claims
23  were in?
24          MR. SHEEHAN:  Object as to form.
25      A.  I think it depends upon the facts
```

55

```
 1              Hirschfield
 2  of the particular settlement.
 3      Q.  Can you offer --
 4          MR. GREENWALD:  We've gone a little
 5      over an hour.  Maybe now is a good time
 6      for a break.  We're doing okay on time.
 7          MR. SHEEHAN:  Yes, absolutely.
 8          (A brief recess was taken.)
 9      Q.  So when you were negotiating the
10  Optimal settlement in '09, you of course were
11  aware that SUS and Arbitrage were Bahamian
12  funds?
13      A.  Yes.  I knew they were foreign, I
14  think Bahamian.
15      Q.  And you were aware that they did
16  not have a physical presence in the United
17  States?
18      A.  We believed we had jurisdiction
19  because of affiliates.  I was not involved
20  with that particular aspect, but I believe my
21  colleagues believed we had jurisdiction.
22      Q.  Let's take it in baby steps.
23          You were aware that the funds, both
24  of them, Arbitrage and SUS, lacked any
25  physical presence in the United States?
```

56

```
 1              Hirschfield
 2      A.  I don't know the answer.
 3      Q.  I would like to direct your
 4  attention back to Exhibit 4, page 10.
 5          This is a motion that you
 6  personally submitted to the late Judge
 7  Lifland, correct?
 8      A.  Yes.
 9      Q.  And on page 10, paragraph 22, you
10  wrote, "While it appears that the withdrawals
11  by the Optimal companies each represent a
12  textbook preference, there are other issues
13  that make proceeding against them for the
14  full amount of their withdrawals less than
15  certain.  Indeed, the Optimal companies, both
16  of which are located in the Bahamas, and each
17  cited to the trustee potential jurisdictional
18  and other issues regarding the ability of the
19  trustee to collect on any judgment that he
20  might obtain."
21      A.  Yes, that's what it says.
22      Q.  And what did you mean, when you
23  wrote that?
24      A.  I believe that Mr. Levin and his
25  colleagues told my colleagues that there were
```

57

```
 1              Hirschfield
 2  potential jurisdictional issues.  I think we
 3  concluded that we could overcome those
 4  issues, but whether we could or not was an
 5  open question.
 6      Q.  How did you conclude that you might
 7  be able to -- first of all, what did you
 8  understand the issues to be?
 9      A.  That they were foreign entities.
10      Q.  Without a US presence, correct?
11      A.  I don't know whether they had a US
12  presence or not.
13      Q.  Well, if they had a US presence,
14  presumably it would not have been much of a
15  challenge to assert jurisdiction over them,
16  correct?
17      A.  Yes.
18      Q.  Or to collect a judgment against
19  them, correct?
20      A.  Presumably.
21      Q.  Presumably.  So the challenge
22  arises only if your understanding is that
23  they're exclusively foreign entities,
24  correct?
25      A.  Yes, but I think the analysis is
```

15  (Pages 54 to 57)



58

1          Hirschfield
2   more complicated than that.
3          Q.  It may be more complicated, right.
4   But what is clear is that it's a lot simpler,
5   if they have a US presence, correct?
6          A.  Yes.
7          Q.  But at the time of the settlement
8   you understand there are potential issues
9   associated with assertion of jurisdiction and
10  judgment collection, correct?
11         A.  Yes.
12         Q.  You also think you might have ways
13  to get around them, correct?
14         A.  Correct.
15         Q.  At the time, what did you think
16  those ways might be?
17         A.  I was not involved with that aspect
18  of the case.  That happened either before I
19  arrived or shortly after I got to Baker
20  Hostetler.
21         Q.  But when you framed a motion to
22  Judge Lifland, presumably you had some idea
23  of what, what the issues were and how serious
24  they would be to overcome, correct?
25         A.  I believe that we -- yes.

59

1          Hirschfield
2          Q.  And what was your understanding?
3          A.  My understanding was that Optimal,
4   through Mr. Levin and his colleagues here at
5   Cravath, had claimed that there were
6   jurisdictional challenges that we would have.
7   I understand that my colleagues had looked at
8   that, and I believe they had concluded that
9   there might be ways to assert jurisdiction
10  over these entities.
11         Q.  What ways did they have in mind?
12         A.  I believe there were certain
13  affiliates of Optimal that did business here.
14  I also believe that there may have been, in
15  the agreements between the Optimal companies
16  and BLMIS, certain provisions that might have
17  provided for jurisdiction in the United
18  States.
19         Q.  Do you know whether those
20  affiliates --
21         A.  Or they could be construed as
22  invoking US jurisdiction.
23         Q.  By affiliate, I take it, you mean
24  some of their subsidiaries?
25         A.  Yes.

60

1          Hirschfield
2          Q.  Were you aware of whether those
3   subsidiaries had any dealings with respect to
4   the Optimal investments?
5          A.  I do not know.
6          Q.  And did you not know at the time
7   you submitted this motion to Judge Lifland?
8          A.  Whether the Sentry (phonetic) and
9   their affiliates --
10         Q.  Had dealings with respect --
11         A.  No, I did not know.
12         Q.  The situation with respect to
13  jurisdiction over JPMorgan Chase I take it
14  was vastly different.
15         A.  Yes.
16         Q.  JPMorgan Chase is a New York based
17  bank, correct?
18         A.  I know they're located in the US.
19  I don't know whether they're in New York
20  based or not.
21         Q.  Well, there's an ATM downstairs in
22  case you need money.
23         And there is no issue as to the
24  enforceability of a bankruptcy or Southern
25  District of New York judgment against

61

1          Hirschfield
2   JPMorgan Chase?
3          A.  I don't know of any.
4          Q.  Now, I would like you to turn back
5   to Mr. Levin's declaration.
6          Now, in the remaining time,
7   hopefully not all the remaining time I have,
8   but in the remaining time for this
9   deposition, I want to ask you to focus on
10  every sentence in Mr. Levin's declaration,
11  beginning in paragraph 18.
12         To spare the court reporter and to
13  keep the transcript manageable, I'm not going
14  to quote every sentence; instead I'm just
15  going to refer to it, maybe with an
16  identifying phrase or two, so the record is
17  clear.  I'm just going to basically have you
18  read them to yourself and then comment.  I
19  think it will make for a clear transcript
20  overall.
21         So first I want you to read the
22  first sentence of paragraph 18, beginning "In
23  the two earlier drafts," and I want to ask
24  you if there is anything in that sentence
25  that Mr. Levin has written with which you

16  (Pages 58 to 61)

---

62

1       **Hirschfield**
2   disagree.
3       A.  I would have to go back and look at
4   the earlier two drafts, but I believe,
5   generally speaking, the early drafts of the
6   settlement agreement, that most favored
7   nations clause had more binary qualities than
8   the later drafts, than the final agreement
9   did.
10      Q.  So you generally are in agreement
11  with Mr. Levin, with respect to the first
12  sentence?
13      A.  Yes.
14      Q.  The second sentence beginning, "For
15  example," do you agree with Mr. Levin, with
16  what Mr. Levin has said there?
17      A.  I would want to look at the earlier
18  draft to see what it actually says.
19      Q.  But assuming he's quoted the drafts
20  correctly, I take it you would agree with the
21  second sentence there?
22      A.  I mean, if he is correctly saying
23  what the earlier drafts said, then that's
24  correct.
25      Q.  I would like you to turn to the

---

63

1       **Hirschfield**
2   next-to-last sentence of paragraph 18, the
3   one -- actually, let's take two at a time.
4   Let's take the final two sentences of
5   paragraph 18, beginning "Whether the
6   circumstances."
7       Do you agree or disagree with what
8   Mr. Levin is saying there?
9       A.  Yes, I agree.
10      Q.  I would like to now take as a group
11  the next two sentences in paragraph 19,
12  beginning, "In addition, I propose."
13      Do you agree or disagree with
14  Mr. Levin's assertions in those two
15  sentences?
16      A.  Well, I don't know what Mr. Levin
17  favored or didn't favor, for one.  And also I
18  don't know that, to extent that the leverage
19  is necessarily the guiding principle which is
20  applicable.
21      Q.  Well, let's put aside the term
22  "leverage."
23      Would you agree that the primary
24  guiding principle that the equal treatment
25  provision was trying to apply was the

---

64

1       **Hirschfield**
2   principle that the harder it is for the
3   trustee to pursue the avoidance claims he
4   asserted against a group of defendants, the
5   more he would be justified in agreeing to a
6   settlement at a benchmark lower than
7   85 percent; and conversely, the easier it
8   would be for him to pursue those claims, the
9   less justified it would be?
10      A.  As a general principle, I think
11  that's right, although it may not apply in
12  every circumstance.
13      Q.  So if that's what Mr. Levin means
14  by "leverage," you generally agree with what
15  he's saying?
16      A.  Yes and no.  For instance, the
17  $40 million amount had nothing to do with
18  leverage.
19      Q.  Fair enough.  Fair enough.
20      All right.  Let's take, then, the
21  last sentence of paragraph 19.
22      Do you agree or disagree with what
23  Mr. Levin asserts in the sentence beginning,
24  "As a result"?
25      A.  The guiding principle is

---

65

1       Hirschfield
2   similarity, so while one factor may or may
3   not disqualify a settlement, these are
4   factors and other factors a court can
5   consider in judging similarity or not.
6       If one factor is entirely
7   dissimilar, that very well could have
8   disqualify a settlement having the MFN clause
9   applied, or if it -- so it really depends
10  upon a lot of things in similarity overall.
11      Q.  But dissimilarity with respect to
12  one or more factors could be, I take it,
13  compensated by similarity or dissimilarity
14  with respect to others, such that two
15  settlements that differ in some respects
16  could nonetheless qualify as similar for
17  purposes of application of the equal
18  treatment provision?
19      A.  It depends upon the level of
20  dissimilarity and similarity.
21      Q.  But there is some level at which
22  two settlements having dissimilar factors can
23  nonetheless be similar enough so as to
24  trigger the equal treatment provision?
25      A.  That's a hypothetical, so it's hard

17 (Pages 62 to 65)



66

1          Hirschfield
2    to answer hypothetically.
3          Q.  I don't think it's a hypothetical.
4    I think it's asking you to comment on how
5    this provision operates in the abstract.
6          A.  Again, I think the notion is
7    similarity, whether the settlement was
8    another entity, another customer, similar or
9    not; and when judging similarity, a court can
10   look at a lot of factors, including the ones
11   cited in the provision of the agreement with
12   Optimal.
13         Q.  Let's turn to paragraph 21.  We
14   will skip paragraph 20.
15         A.  Okay.
16         Q.  Only because paragraph 20 relates
17   exclusively to Mr. Levin's state of mind, so
18   I'm not going to ask you to agree or disagree
19   with that.
20         But on paragraph 20, let's focus on
21   21(a), "Ability to pay."
22         Do you agree with what Mr. Levin
23   has states -- states in paragraph 21(a)?
24         A.  Yes, we had concerns about, if a
25   particular defendant couldn't pay a

67

1          Hirschfield
2    settlement, that would be a factor that would
3    make it not similar.
4          Q.  Let's focus next on the first
5    paragraph of paragraph 21(b), "The Nature of
6    the Avoiding Power Claims."
7          Do you agree with what Mr. Levin
8    states in that first paragraph, beginning
9    "Originally, the trustee"?
10         A.  I believe that earlier drafts of
11   the agreement dealt only with preferences.  I
12   don't remember whether we sought to do it or
13   whether the original draft sought to do it.
14         I do recall that Mr. Levin raised
15   an issue with us about what I'll call
16   gerrymandering a settlement, and that's why
17   we discussed and ultimately changed the
18   provision to include broader claims.
19         Q.  Focus now on the second paragraph
20   of paragraph 21(b), beginning, "To the best
21   of my recollection."
22         Do you agree or disagree with
23   anything Mr. Levin says there?
24         A.  I don't know about "To the best of
25   his recollection," but putting that aside,

68

1          Hirschfield
2    from our perspective, we understood the
3    nature of avoiding power claims to encompass
4    a lot of things, including profits of
5    principal, preferences or not, and generally
6    the burdens of proof that we would have to
7    show to avoid a transfer.  So if our burden
8    of proof was different, for instance, for
9    principle, that would be a difference which
10   would put it outside the MFN clause, because
11   it would be not similar.
12         Q.  Put it outside or just militate
13   against application of the equal treatment
14   provision?
15         A.  It would make a settlement
16   dissimilar, not similar.
17         Q.  Right.  But the question I have is:
18   As you say, put it outside.  Would -- in your
19   view, would the existence of a settled claim
20   for principal disqualify a settlement --
21   settled claim for principal disqualify the
22   settlement for potential application of the
23   equal treatment provision, or just be a
24   factor that militated against application of
25   the provision?

69

1          Hirschfield
2          A.  In my mind, this is a particularly
3    important one.  They're all important, but
4    this one is more important than perhaps the
5    others.  Because if your claim is dissimilar,
6    if you are asserting dissimilar claims, that
7    in and of itself would make one settlement
8    different from another.
9          And it also goes to whom you're
10   suing, the nature of our claims.  We talked
11   earlier about the heading of that provision
12   in paragraph 13 is relating to customers.
13   Again, this goes to who you're suing and
14   whether or not the claims are similar or not.
15         Q.  I hear you saying in your mind this
16   factor would be particularly important, and I
17   don't want to quibble with that.
18         But you would agree that in the
19   settlement as executed, the nature of the
20   claims is one factor of several, correct?
21         A.  Yes.
22         Q.  And the text of the settlement
23   itself does not purport to give that factor
24   any more primacy than any of the other four,
25   correct?

18  (Pages 66 to 69)



**70**

1    **Hirschfield**
2    A.  Yes.
3    **Q.  So I go back to my first question,**
4    **which was:  You would agree, I hope, I think,**
5    **that the mere presence of a claim for**
6    **recovery of principal by the trustee would**
7    **not absolutely disqualify a settlement for**
8    **application of the equal treatment provision**
9    **but would be only a factor militating against**
10   **its application?**
11   A.  No, I think if you were to assert a
12   different kind of claim against a defendant,
13   that would make the claim dissimilar, not
14   similar.
15   **Q.  So any claim for principal makes**
16   **the equal treatment provision inapplicable,**
17   **full stop?**
18   A.  To the extent of the claim for the
19   principal, yes.
20   **Q.  What do you mean by "to the extent**
21   **of the claim for the principal"?**
22   A.  If we were bringing an action
23   against a customer, asserting a claim for
24   principal, that claim would be different and
25   not similar to the claims brought against

**71**

1    Hirschfield
2    Optimal.
3    **Q.  Correct.  But would that settlement**
4    **therefore be outside the potential purview of**
5    **the equal treatment provision?**
6    A.  I believe it would.
7    **Q.  And how would the language of the**
8    **agreement support that meaning?**
9    A.  Because the nature of the avoiding
10   power claims is different, and therefore the
11   settlement of those claims would be not,
12   would not be similar.
13   **Q.  But wouldn't you agree that if that**
14   **had been part of the mutual intent, a much**
15   **easier way to implement that intent would**
16   **have been to simply say, this clause, the**
17   **equal treatment provision, applies only to**
18   **settlements of avoiding power claims that do**
19   **not include claims for principal?**
20   A.  It talks about similar claims.
21   **Q.  That's not my question.**
22   **Wouldn't that have been a much**
23   **clearer way to implement that intent than**
24   **what we have today in the agreement?**
25   A.  No, I don't think so.

**72**

1    Hirschfield
2    **Q.  You don't think so.**
3    A.  Because I think that the clause,
4    the way it's drafted, talks about the claims
5    being -- the nature of avoiding power claims
6    are different.  I think that militates
7    heavily, very heavily in favor of the claims
8    being different and not being similar.
9    **Q.  We can put aside the adverb.**
10   **You agree, though, it only**
11   **militates against application of the equal**
12   **treatment provision, the presence of a claim**
13   **for principal doesn't bar the application of**
14   **the equal treatment provision to a**
15   **settlement?**
16   A.  I don't see how a court or anyone
17   reading the agreement can look at a claim for
18   principal as being similar to a claim of the
19   nature we've brought against Optimal.
20   **Q.  Even accepting that, though,**
21   **couldn't -- under the language of the equal**
22   **treatment provision, it is possible for a**
23   **settlement overall to qualify for application**
24   **of that provision, even though among the**
25   **claims settled include claims for principal?**

**73**

1    **Hirschfield**
2    A.  It's possible.
3    **Q.  Next I would like you to turn to**
4    **paragraph 21(c) of Mr. Levin's declaration.**
5    **Do you agree with what Mr. Levin**
6    **has written in that paragraph,**
7    **"Jurisdictional" -- headed or captioned,**
8    **"Jurisdictional Connection and**
9    **Enforceability"?**
10   A.  I generally agree.  Again, the
11   leverage I'm not sure came up, but you're
12   using the leverage claim that you talked
13   about earlier, I think that's generally
14   correct.
15   **Q.  Right.**
16   **Now turn to 21(d).**
17   **Same question:  Do you agree or**
18   **disagree with what Mr. Levin states in**
19   **paragraph 21(d), captioned, "Defendant**
20   **Knowledge Or Complicity"?**
21   A.  I don't agree with the last
22   sentence.
23   **Q.  So let me read that sentence into**
24   **the transcript.**
25   **This is the sentence that reads,**

19 (Pages 70 to 73)

74

Hirschfield

1    "If another defendant knew or was complicit
2    or otherwise did not meet the good faith
3    requirement of section 548(c) as a defense to
4    a two-year or six-year claim for return of
5    principal, the trustee would have leverage in
6    negotiating a settlement that was at least as
7    strong as the leverage he had when
8    negotiating with SUS and Arbitrage, making
9    the circumstances of any resulting settlement
10   more similar."
11        Why don't you agree with what Mr.
12   Levin is saying in that sentence?
13       A.  The way I'm understanding his
14   sentence it that if we are pursuing principal
15   from someone who lacks good faith, that would
16   make, that would give us more of an ability
17   to go after that defendant, making us
18   similar.
19        However, whether or not they are in
20   good faith or not is a complicated question
21   of fact and law, and the defendant presumably
22   would not agree with us that they acted in
23   bad faith; and therefore, the particular
24   facts and circumstances would have to be

75

Hirschfield

1    studied to see whether or not we would have
2    the ability to collect any amount, let alone
3    85 percent.
4        Q.  Well, there may certainly be cases
5    in which knowledge and good faith is
6    complicated, but by the same token, there are
7    some in which it's rather simple, agreed?
8        A.  Nothing is simple in this case.
9        Q.  I mean, certainly in your capacity,
10   certainly in your work litigating and
11   negotiating settlements for Mr. Picard,
12   you've come across cases in which defendants,
13   in which the trustee had rather compelling
14   proof of knowledge and lack of good faith;
15   isn't that right?
16        MR. SHEEHAN:  Object to the form.
17       A.  Yes, there were cases that we
18   believed defendants were lacking in good
19   faith.
20       Q.  And give me some examples of those.
21       A.  Certainly Mount Capital Fund was
22   one, Picower would be another; Shapiro,
23   perhaps.
24       Q.  And in those cases the trustee felt

76

Hirschfield

1    reasonably confident that it would able to
2    prove the defendants' knowledge or complicity
3    in Madoff's fraud, correct?
4        A.  Yes.
5        Q.  And you would agree with Mr. Levin
6    that the more confident you were of your
7    ability to prove such culpable knowledge, the
8    more similar any settlement of such claim
9    would be to the Optimal settlement in which
10   knowledge and complicity was not an issue?
11       A.  But it also depends --
12       Q.  Well, first answer that, yes or no,
13   and then say whatever you want to.
14       A.  Not necessarily, because it depends
15   upon the defenses which defendants are
16   raising.  So we might assert someone acted
17   with a lack of good faith.  Evidence may or
18   may not bear that out as you go down the
19   road.
20       Q.  Right, but that's why I qualified
21   my question with the more confident you feel
22   about the quality of the evidence, the more
23   similar a settlement of any such case would
24   be to the Optimal settlement in which

77

Hirschfield

1    knowledge and complicity just wasn't an issue
2    for either party?
3        A.  Yes, if you're asking if we think
4    we have a slam dunk, if someone acted in bad
5    faith, that would make it more similar.
6        Q.  I take it, though, since you didn't
7    participate in the negotiation or litigation
8    of the JPMorgan action, you don't have any
9    view as to how strong the trustee's proof of
10   JPMorgan's knowledge or complicity in
11   Madoff's fraud is?
12       A.  That's correct.
13       Q.  Now, let's turn to the last
14   paragraph, paragraph 21(e).  And this also is
15   in two paragraphs, so let's take them in two
16   chunks.
17        Let's focus first on the first
18   paragraph of 21(e), "The Stage of the
19   Litigation."
20        Do you agree or disagree with what
21   Mr. Levin says in that first paragraph?
22       A.  In terms of the second sentence, I
23   was not involved in initial discussions with
24   Mr. Levin as to settlement, so I don't know

20   (Pages 74 to 77)

78

1              Hirschfield
2    whether he cited that provision or not as to
3    the reason for a discount.  I believe he
4    might have, but I don't know for sure.
5          In terms of the last sentence, as I
6    stated earlier, I think that cuts both ways.
7    As you live with a case and bring it down the
8    road, certainly you come to learn of defenses
9    and perhaps problematic facts or what have
10   you, which may make a settlement, a
11   settlement of less than 85 percent fully
12   justified and make it dissimilar from
13   Optimal.
14       **Q.  All right.  Let's turn to the last**
15   **paragraph, then, the one beginning, "In the**
16   **earlier drafts."**
17       **Do you agree or disagree with what**
18   **Mr. Levin states there?**
19       A.  I agree that the earlier drafts had
20   a different provision.  That was binary.  I
21   believe that -- well, I'm not sure why he
22   proposed the more general, safer litigation
23   factor.  And as I said earlier, I don't
24   necessarily agree with the last sentence.
25       **Q.  Although you do agree, as you said**

79

1              Hirschfield
2    **earlier, that it is a common practice in**
3    **bankruptcy cases that early settlement to**
4    **avoid power litigation are usually settled**
5    **for less than settlements in later stages?**
6        A.  Yes, but that doesn't necessarily
7    apply to a separate proceeding such as ours.
8        **Q.  Okay.  You can put your -- Mr.**
9    **Levin's declaration to the side.**
10       **Now, at the beginning of the**
11   **deposition you had mentioned that you had**
12   **participated in the settlement of five of the**
13   **16 significant trustee recoveries to date,**
14   **correct?**
15       A.  Yes.
16       **Q.  Have you participated in**
17   **negotiation or drafting of settlements of any**
18   **other clawback -- avoidance actions?**
19       A.  Yes, many.
20       **Q.  About how many?**
21       A.  I couldn't tell you how many
22   exactly, but probably at least 20, or 50.  I
23   mean 50.
24       **Q.  Do any -- other than the ones on**
25   **the, on the list of 16, do any stand out in**

80

1              Hirschfield
2    **your mind as particularly significant?**
3        A.  Significant in what sense?
4        **Q.  In any sense.  Memorable, large**
5    **amounts, unusual circumstances, complex legal**
6    **issues, complex drafting issues?**
7        A.  A lot of them had complex issues.
8    A lot of them had complicated facts.  They
9    tend to be, most of them for less money.
10       **Q.  Now, in the course of the, like I**
11   **said, at least 25 avoidance actions in which**
12   **you've participated in settlement, are there**
13   **any in which your discussions with the**
14   **defendants' counsel or other representatives**
15   **have included reference to or discussion**
16   **about the potential application of the equal**
17   **treatment provision in the Optimal**
18   **settlement?**
19       A.  Yes.  We're having negotiations
20   where we have spoken about Optimal.
21       **Q.  And which, do you recall**
22   **specifically in which of those settlements**
23   **the issue has come up?**
24       A.  I don't recall which ones they
25   were, and I don't recall in some cases

81

1              Hirschfield
2    whether we actually reached a settlement or
3    not.
4          I know there have been discussions
5    where we've said we have a provision in our
6    agreement with Optimal that might apply to
7    your case, if we were to settle it, and we
8    were constrained by the provision.
9        **Q.  Okay.  As you sit here today,**
10   **trying as hard as you can to testify**
11   **truthfully under oath, can you recall any of**
12   **the either settlements in which those**
13   **discussions took place or the identities of**
14   **the lawyers with whom you had those**
15   **discussions?**
16       A.  It might have come up in connection
17   with Kingate.  That's the only one I recall.
18   There might have been others.
19       **Q.  And who at Kingate was your**
20   **counterpart in negotiating the Kingate**
21   **settlement?**
22       A.  Robert Loigman is one.
23       **Q.  How do you spell his name?**
24       A.  Loigman?  L-O-I-G-M-A-N, I think.
25       **Q.  What firm?**

21 (Pages 78 to 81)

## 82

1        **Hirschfield**
2     A.  Quinn Emanuel.
3     **Q.  What?**
4     A.  Quinn Emanuel.
5        Shushil (phonetic).
6        MR. LEVIN:  Shushil.
7     A.  Shushil.  I can't even pronounce
8  his last name.
9        MR. LEVIN:  Tripaloni (phonetic).
10       MR. GREENWALD:  Do you know this
11 person?
12       MR. LEVIN:  Yes, very well.
13    **Q.  But both for Kingate?**
14    A.  Yes.
15       MR. GREENWALD:  Let's take a break.
16 You can just stay here.
17       MR. SHEEHAN:  Sure.
18       (A recess was taken.)
19       MR. GREENWALD:  Okay.  We're
20 finished.
21       MR. SHEEHAN:  No questions.
22       (Time noted:  11:32 a.m.)
23
24
25

## 84

1
2           C E R T I F I C A T E
3  STATE OF NEW YORK    )
4               : ss.
5  COUNTY OF NEW YORK   )
6
7        I, Jennifer Ocampo-Guzman, a Notary
8  Public within and for the State of New York,
9  do hereby certify:
10       That MARC E. HIRSCHFIELD, ESQ.,
11 the witness whose deposition is hereinbefore
12 set forth, was duly sworn and that such
13 deposition is a true record of the testimony
14 given by the witness.
15       I further certify that I am not
16 related to any of the parties to this action
17 by blood or marriage, and that I am in no
18 way interested in the outcome of this
19 matter.
20       IN WITNESS WHEREOF, I have
21 hereunto set my hand this 7th day of May
22 2014.
23 _____
24    JENNIFER OCAMPO-GUZMAN, CRR, CLR
25

## 83

1
2  STATE OF _____)
3               ) :ss
4  COUNTY OF _____)
5
6
7        I, MARC E. HIRSCHFIELD, ESQ., the
8  witness herein, having read the
9  foregoing testimony of the pages of this
10 deposition, do hereby certify it to be a
11 true and correct transcript, subject to
12 the corrections, if any, shown on the
13 attached page.
14
15 _____
16       MARC E. HIRSCHFIELD, ESQ.
17 Sworn and subscribed to before
18 me, this      day of
19          , 2014.
20 _____
21    Notary Public
22
23
24
25

## 85

1
2  -------------- I N D E X -----------------
3  WITNESS      EXAMINATION BY      PAGE
4  MARC E. HIRSCHFIELD, ESQ.
5        MR. GREENWALD      6
6  -------------- EXHIBITS -----------------
7  EXHIBITS            FOR I.D.
8  Exhibit 1, Document entitled,
   "The Madoff Recovery Initiative".........6
9
   Exhibit 2, Complaint....................18
10
   Exhibit 3, Declaration of Marc E.
11 Hirschfield............................20
12 Exhibit 4, Motion For Entry of Order
   Pursuant Section 105(a) of the
13 Bankruptcy Code and Rules 2002 and
   9019 of the Federal Rules of Bankruptcy
14 Procedure Approving an Agreement
   By and Among the Trustee and Optimal
15 Strategic US Equity Limited and Optimal
   Arbitrage Limited......................22
16
   Exhibit 5, Declaration of Richard Levin
17 Regarding Application of the Equal
   Treatment Provision to the Settlement
18 Agreement Between the Trustee and
   JPMorgan Chase & Co., et al.............44
19
20
21
22
23
24
25

22  (Pages 82 to 85)

86

1
2          INSTRUCTIONS TO WITNESS
3
4          Please read your deposition over
5     carefully and make any necessary
6     corrections.  You should state the
7     reason
8     in the appropriate space on the errata
9     sheet for any corrections that are made.
10    After doing so, please sign the
11    errata sheet and date it.
12          You are signing same subject to the
13    changes you have noted on the errata
14    sheet, which will be attached to your
15    deposition.
16          It is imperative that you return
17    the original errata sheet to the
18    deposing attorney within thirty (30)
19    days of receipt of the deposition
20    transcript by you.  If you fail to do
21    so, the deposition transcript may be
22    deemed to be accurate and may be used in
23    court.
24
25

87

1
2
3          E R R A T A
4
5     I wish to make the following changes,
6     for the following reasons:
7     PAGE LINE
8     ___ ___ CHANGE:_____
9     REASON:_____
10    ___ ___ CHANGE:_____
11    REASON:_____
12    ___ ___ CHANGE:_____
13    REASON:_____
14    ___ ___ CHANGE: _____
15    REASON:_____
16    ___ ___ CHANGE: _____
17    REASON:_____
18    ___ ___ CHANGE: _____
19    REASON:_____
20
21
22    _____ _____
23    WITNESS' SIGNATURE        DATE
24
25

23 (Pages 86 to 87)

DAVID FELDMAN WORLDWIDE, INC.
450 Seventh Avenue - Ste 500, New York, NY 10123  1.800.642.1099

**A**

ability 11:19
12:11 14:21
56:18 66:21
74:17 75:3
76:8
able 57:7
76:2
absence
38:22
absolutely
55:7 70:7
abstract 66:5
accepting
72:20
account 39:6
accounting
31:10
accurate
86:22
achieve 52:20
54:9
acted 74:23
76:17 77:5
action 13:6
17:7 26:2,3
26:8,12
30:3,21
35:7 36:4
37:3,10,11
44:7 70:22
77:9 84:16
actions 6:4,8
8:21 13:22
26:15 79:18
80:11
actively 17:9
actual 21:11
44:7 52:13
addition
63:12
additional
42:4
administra...
37:11
advanced
46:16 47:25
48:4,16,22

49:6,6
50:21 54:2
54:5
adverb 72:9
affect 50:23
52:24
affiliate
59:23
affiliates
17:19 55:19
59:13,20
60:9
affirmed 33:2
agree 6:6,12
7:15 9:10
15:11 16:5
16:7,14
17:22,24
19:12 20:17
23:21 31:12
32:24 36:13
36:23 38:5
43:14,18
44:4 45:3,7
45:17,23
49:12 50:5
50:25 52:4
52:19 62:15
62:20 63:7
63:9,13,23
64:14,22
66:18,22
67:7,22
69:18 70:4
71:13 72:10
73:5,10,17
73:21 74:12
74:23 76:6
77:21 78:17
78:19,24,25
agreed 38:21
75:8
agreeing 64:5
agreement
21:20 22:4
23:15,18
34:10,23
44:22 62:6

62:8,10
66:11 67:11
71:8,24
72:17 81:6
85:14,18
agreements
59:15
ahead 49:11
al 44:23
85:18
allegations
16:12,14
alleged 17:2
amended
49:18
amount
35:14 38:21
40:15 56:14
64:17 75:3
amounts 80:5
analysis 31:9
57:25
ANIM 3:12
answer 28:21
56:2 66:2
76:13
answered
49:11 50:2
anyway 44:8
appeals 49:22
APPEARA...
4:2
appears
22:10,15,17
23:23 53:13
53:16 56:10
applicable
63:20
application
12:13,19
35:10 44:20
50:8 65:17
68:13,22,24
70:8,10
72:11,13,23
80:16 85:17
applied 53:8
65:9

applies 52:25
71:17
apply 11:14
11:21 20:21
54:10 63:25
64:11 79:7
81:6
appropriate
10:20 11:8
27:14 47:11
48:21 86:8
approved
39:23 40:9
40:14,15,22
40:23 41:12
41:13,23
43:3
Approving
21:20 22:4
85:14
approxima...
10:24 13:24
April 6:17
7:9
Arbitrage
21:23 22:6
23:7 55:11
55:24 74:9
85:15
area 5:12,17
arises 57:22
arrive 44:11
arrived 58:19
aside 63:21
67:25 72:9
asked 11:11
11:13 50:13
asking 16:4,6
46:21,25
52:16 66:4
77:4
aspect 55:20
58:17
assert 15:23
32:17 57:15
59:9 70:11
76:17
asserted

24:21,23
25:10,12
26:9 32:15
64:4
asserting
69:6 70:23
assertion
58:9
assertions
63:14
asserts 64:23
associated
58:9
assume 19:18
37:13 41:23
assuming
16:24 62:19
ATM 60:21
attached
83:13 86:14
attempt
38:12
attention
23:12 56:4
attorney
86:18
Attorneys 3:4
3:17 4:4
authorities
34:17,24
authorize
14:16
available
19:4,8,20
Avenue 2:15
3:6
avert 38:12
avoid 46:3
50:14 68:7
79:4
avoidance
6:8 8:21
13:6,22
17:7,25
24:21,25,25
25:4 26:2,3
26:8,15
28:5,15

30:3 31:13
32:3,16
33:10,18
34:4 35:9
35:11 36:4
44:7 64:3
79:18 80:11
avoiding 23:2
24:6 25:9
45:9,19
46:9 67:6
68:3 71:9
71:18 72:5
aware 9:5
11:22 13:13
16:19,24
18:10 46:11
55:11,15,23
60:2
a.m 1:20 2:10
82:22

**B**

baby 55:22
back 7:6
11:12 13:5
37:19 41:5
46:19 56:4
61:4 62:3
70:3
bad 74:24
77:5
Bahamas
56:16
Bahamian
55:11,14
Baker 3:18
5:10 8:6,11
13:11 16:9
16:11 37:15
37:23 44:11
58:19
bank 1:16
60:17
banker 32:19
bankruptcy
1:1 5:13,15
14:6,15,17

15:12,16,21
16:20 21:19
22:2,3
25:14 26:2
26:17 45:8
45:18 49:17
49:25 60:24
79:3 85:13
85:13
**bar** 72:13
**based** 16:14
60:16,20
**basically**
61:17
**bear** 35:9
76:19
**bearing** 7:11
**began** 10:10
**beginning**
61:11,22
62:14 63:5
63:12 64:23
67:8,20
78:15 79:10
**behalf** 5:21
**believe** 8:10
8:14 11:11
11:13 13:17
18:15,22
20:6 21:9
21:13 27:6
33:4,21
34:6 54:7
55:20 56:24
58:25 59:8
59:12,14
62:4 67:10
71:6 78:3
78:21
**believed**
55:18,21
75:19
**believes**
51:10
**benchmark**
27:13 46:14
47:6,18
64:6

**benefit** 43:7
**Bernard** 1:7
1:10,12
5:23
**best** 11:5
67:20,24
**better** 39:11
51:19 52:10
**binary** 62:7
78:20
**bit** 54:14
**BLMIS** 5:24
13:10 18:2
20:25 24:11
25:20 26:25
27:4,9,19
28:18 32:6
32:12,19
34:19 59:16
**blood** 84:17
**body** 25:21
25:23 26:4
**book** 31:10
**break** 55:6
82:15
**brief** 55:8
**bring** 51:20
78:7
**bringing**
70:22
**broader**
67:18
**brought** 25:2
26:15 27:7
70:25 72:19
**Brown** 3:23
8:15
**burden** 25:15
26:5,10,11
68:7
**burdens** 30:4
68:6
**business**
59:13

——————
**C**
——————
**C** 3:2 5:2,2
84:2,2

**call** 20:11
67:15
**called** 5:3
36:15
**capacity** 5:22
6:2 17:5
75:10
**Capital** 75:22
**caption** 23:22
**captioned**
73:7,19
**captions**
23:13,14
**carefully**
86:5
**Carl** 7:24
**case** 1:6,15
13:7 25:21
26:2 29:24
30:20 31:18
48:14 49:24
50:24 53:25
54:2,7,9
58:18 60:22
75:9 76:24
78:7 81:7
**cases** 25:25
30:9 45:9
45:19,25
49:5 50:14
75:5,13,18
75:25 79:3
80:25
**cash** 30:23,23
**certain** 17:19
18:3 27:6
30:2 35:4
40:21 43:25
49:21 56:15
59:12,16
**certainly**
6:14 10:9
22:25 31:8
35:16 39:8
44:14 47:14
75:5,10,11
75:22 78:8
**certify** 83:10

84:9,15
**certiorari**
49:22
**challenge**
33:6 57:15
57:21
**challenged**
33:6
**challenges**
59:6
**challenging**
28:6 32:4
**CHANGE**
87:8,10,12
87:14,16,18
**changed**
67:17
**changes**
86:13 87:5
**characteriz...**
6:10
**Chase** 1:15
1:16 8:4
9:13 13:3
17:19 18:11
28:4,6
44:23 60:13
60:16 61:2
85:18
**CHEPIGA**
4:8
**chose** 12:3
**chunks** 77:17
**Circuit** 33:2
**circumstance**
12:5 64:12
**circumstan...**
31:21 63:6
74:10,25
80:5
**cite** 20:24
32:13 34:12
**cited** 47:7
56:17 66:11
78:2
**civil** 14:4,10
14:12 15:22
**claim** 26:8

40:9,14,15
40:23 41:13
41:13,24
42:4,8,9,21
42:23 43:3
68:19,21
69:5 70:5
70:12,13,15
70:18,21,23
70:24 72:12
72:17,18
73:12 74:5
76:9
**claimant** 42:7
**claimants**
39:17
**claimed** 59:5
**claims** 17:22
17:25 23:2
24:6,14,14
24:17,20,21
24:22,25
25:2,2,4,9
25:11,22
27:7 28:5
28:15 31:13
32:3,15,16
32:22 33:3
33:10,13,18
33:20,24,25
34:4 35:9
35:18 39:23
40:22 49:21
54:22 64:3
64:8 67:6
67:18 68:3
69:6,10,14
69:20 70:25
71:10,11,18
71:19,20
72:4,5,7,25
72:25
**class** 34:18
34:18 35:7
37:3,10,11
**classes** 38:19
**clause** 11:14
24:13 45:2

45:6,15
53:21 62:7
65:8 68:10
71:16 72:3
**clawback**
52:13 79:18
**clear** 39:16
41:4 52:12
58:4 61:17
61:19
**clearer** 71:23
**clearly** 42:13
**client** 38:6
**close** 13:25
30:15
**CLR** 1:21
84:24
**code** 21:19
22:25 25:15
26:18 85:13
**collateral**
38:22
**colleagues**
55:21 56:25
56:25 59:4
59:7
**collect** 56:19
57:18 75:3
**collection**
58:10
**collects** 37:15
37:22
**come** 26:14
47:5 75:13
78:8 80:23
81:16
**comfortable**
53:15
**comment**
61:18 66:4
**common**
32:16 33:3
33:13,19
45:8,18
46:4 79:2
**community**
52:13
**companies**

56:11,15
59:15
**compelling**
75:14
**compensated**
65:13
**compensati...**
41:17 42:5
43:4
**complaint**
14:21 16:12
16:21 17:3
17:6,18
18:6,8,11
18:18 19:15
19:19,21
20:5 49:18
50:3 85:9
**complaints**
27:23
**complex** 31:8
31:18 80:5
80:6,7
**Compliance**
15:16
**complicated**
58:2,3
74:21 75:7
80:8
**complicit**
74:2
**complicity**
26:25 73:20
76:3,11
77:2,11
**complied**
16:20 19:14
**concern**
39:21
**concerning**
10:18 33:13
**concerns**
66:24
**conclude**
57:6
**concluded**
57:3 59:8
**concrete** 30:6

**conduct** 14:7
14:17,25
15:7 16:13
**conducted**
18:12,15,21
19:10,13
**conducts**
15:18
**confident**
76:2,7,22
**connection**
8:7 10:4
26:19 30:16
33:17,19
73:8 81:16
**consider** 39:9
65:5
**considerati...**
8:22 46:15
**considerati...**
33:16
**considering**
10:6
**Consolidated**
1:12
**constrained**
81:8
**Construction**
23:14
**construed**
59:21
**contacted**
10:5 11:9
**contained**
17:22
**contains**
17:24
**contempor...**
34:14
**content** 23:18
**contentions**
15:24
**Continued**
4:2
**contrast**
14:15
**convenience**
23:16

**conversely**
64:7
**cooperated**
43:5
**CORPOR...**
1:4
**correct** 5:16
5:18,24 6:8
10:22 14:8
14:13,14,19
20:22 21:2
21:3 31:14
33:4,11,14
34:10 36:15
37:6,12,24
39:18 42:14
42:16,22,22
48:2,4,18
53:16 56:7
57:10,16,19
57:24 58:5
58:10,13,14
58:24 60:17
62:24 69:20
69:25 71:3
73:14 76:4
77:13 79:14
83:11
**corrections**
83:12 86:6
86:9
**correctly**
5:13 16:25
36:6 43:15
62:20,22
**costs** 46:3
50:15
**counsel** 9:22
34:18 38:19
47:9 51:12
80:14
**count** 7:16
**counterpart**
81:20
**COUNTY**
83:4 84:5
**course** 9:22
11:5 12:16

46:12 55:10
80:10
**court** 1:1
31:24 49:20
49:23,25
61:12 65:4
66:9 72:16
86:23
**Cravath** 2:14
3:5 59:5
**CRR** 1:21
84:24
**culpable** 76:8
**customer**
20:25 21:6
22:24 24:11
24:16,24
25:13,20
26:13,21
27:4,12
28:8,17,24
29:10,12,18
29:22,25
30:11,21,22
30:24 31:19
32:6 36:5,9
36:12 37:5
38:7,10
42:11,15,23
50:18,19
66:8 70:23
**customers**
23:8 25:23
27:2 34:19
69:12
**cut** 29:4,5,6
54:19
**cuts** 28:25
78:6

———————
**D**
**D** 5:2 85:2
**date** 6:6,23
7:17 9:13
13:2 18:9
20:14 22:8
44:24 79:13
86:11 87:23

**dated** 6:17
**David** 3:8,21
9:4
**day** 36:2
83:18 84:21
**days** 86:19
**deal** 24:14
26:16 51:22
**dealings** 60:3
60:10
**deals** 26:5
**dealt** 67:11
**debtor** 1:10
24:24 25:13
46:2
**debtors** 50:14
**December**
17:17
**decide** 11:23
**decided** 10:7
**deciding**
10:11 39:6
**decision**
35:17
**declaration**
20:10,12
32:14 44:18
44:19 49:13
61:5,10
73:4 79:9
85:10,16
**deemed**
86:22
**defendant**
1:8,18 8:22
13:9 26:23
43:13 44:7
47:5,22
48:14 66:25
70:12 73:19
74:2,18,22
**defendants**
13:6 14:22
15:8 26:24
43:16 46:10
47:22 48:13
48:15 52:14
64:4 75:13

75:19 76:3
76:16 80:14
**defense** 74:4
**defenses**
76:16 78:8
**define** 23:17
**defining**
25:21
**definition**
48:12
**demanding**
13:8,15
**denominated**
33:22
**Department**
34:16
**dependent**
53:24
**depending**
30:2
**depends**
45:24 51:5
51:21 53:2
54:25 65:9
65:19 76:12
76:15
**Deponent**
3:17
**deposing**
86:18
**deposition**
1:19 2:12
8:17 61:9
79:11 83:10
84:11,13
86:4,15,19
86:21
**describe** 11:4
23:17
**deserve** 54:13
**determinat...**
30:14 31:16
**determine**
30:23 31:23
**developed**
16:16 53:3
54:6,7
**devote** 51:16

3:9
diaries 8:7
differ 36:12
  65:15
difference
  50:6 68:9
differences
  36:16,25
  37:8
different 7:2
  24:16,18
  25:4,6,17
  25:19,23,24
  26:11,20
  27:18,21,25
  29:9,11,19
  36:19,19,20
  37:5 46:22
  49:15 60:14
  68:8 69:8
  70:12,24
  71:10 72:6
  72:8 78:20
differently
  29:4,5,6
difficult
  32:10
diminution
  38:10
direct 23:11
  27:12 28:8
  28:17 31:19
  49:22 56:3
directly 8:12
  20:2
disagree 62:2
  63:7,13
  64:22 66:18
  67:22 73:18
  77:21 78:17
discount
  54:14 78:3
discouraged
  51:13
discovery
  14:12 15:19
  49:17,25
discuss 12:5

discussed
  67:17
discussion
  37:17 41:20
  43:9 80:15
discussions
  10:16,17,22
  10:25 11:5
  12:4,17
  19:23 77:24
  80:13 81:4
  81:13,15
dismissal
  33:3
dismissed
  33:14
dispositive
  49:20
disqualify
  65:3,8
  68:20,21
  70:7
dissimilar
  65:7,22
  68:16 69:5
  69:6 70:13
  78:12
dissimilarity
  65:11,13,20
distribute
  51:20
distributed
  37:4,6
distribution
  36:11,14,21
  41:25
distributions
  36:19 42:11
  51:15
district 1:2
  49:20,23
  60:25
document
  6:21 22:18
  85:8
documents
  6:25 14:23
  15:7

doing 55:6
  86:10
DOJ 35:7
DOJ's 36:14
download
  6:17
downstairs
  60:21
draft 17:8,11
  17:15 62:18
  67:13
drafted 19:19
  72:4
drafting
  13:21 79:17
  80:6
drafts 61:23
  62:4,5,8,19
  62:23 67:10
  78:16,19
dsheehan@...
  3:22
duly 5:3
  84:12
dunk 77:5
duty 38:6,11
  38:13 39:16
  39:21 40:8
  40:13,21
  41:16 42:3
  42:14,19,20
  43:2,5

─────────
     E
─────────
E 1:19 2:12
  3:2,2 5:2,2
  20:12 83:7
  83:16 84:2
  84:2,10
  85:2,4,10
  87:3
earlier 50:13
  50:17 51:3
  51:13,20
  52:6,9,20
  54:13 61:23
  62:4,17,23
  67:10 69:11

73:13 78:6
  78:16,19,23
  79:2
early 13:5,12
  13:14 45:9
  45:19 46:2
  50:14 52:14
  54:13 62:5
  79:3
easier 29:14
  29:19 64:7
  71:15
echepiga@...
  4:9
Eighth 2:14
  3:6
either 13:9
  16:15 30:24
  35:15 54:19
  58:18 77:3
  81:12
Emanuel
  82:2,4
EMILY 4:8
employees
  18:20
empower
  14:16
enable 51:15
encompass
  68:3
encourage
  42:3
encouraged
  51:12
encouraging
  51:3 52:5
enforce 43:24
enforceabil...
  60:24 73:9
engaged
  19:23 47:23
  48:12 49:16
enjoys 14:6
enter 53:11
entirely 65:6
entities 34:25
  44:2 51:9

57:9,23
  59:10
entitled 6:21
  23:6 40:23
  41:24 42:10
  85:8
entity 24:24
  25:12 66:8
Entry 21:18
  21:24 85:12
equal 9:12
  10:2,13
  11:23 12:14
  12:25 20:20
  23:5,6
  27:15 28:25
  33:8 35:10
  44:20 49:3
  50:7 51:2
  51:25 52:9
  52:23,25
  53:4,12
  54:15 63:24
  65:17,24
  68:13,23
  70:8,16
  71:5,17
  72:11,14,21
  80:16 85:17
Equity 21:22
  22:6 85:15
errata 86:8
  86:11,13,17
ESQ 1:19
  2:13 3:8,10
  3:12,21,23
  4:8 83:7,16
  84:10 85:4
established
  26:4 30:5
estate 5:23
  41:25 43:11
et 44:23
  85:18
evaluation
  24:12 27:5
  27:14 28:25

evidence
  16:15 76:18
  76:23
evidentiary
  15:24 16:25
  25:16
evoke 10:10
evolved 29:18
exactly 79:22
examination
  5:5 16:13
  16:16 18:13
  18:21 19:17
  85:3
examinations
  15:2,8,19
  18:19 19:9
  19:13
examined 5:4
example 30:6
  30:7,8
  41:11 42:7
  62:15
examples
  35:5 75:21
exceed 40:22
exceeded
  8:23
excess 9:20
exclusively
  57:23 66:17
excuse 6:24
  21:10 25:10
execute 38:20
  38:21 54:17
executed 36:4
  44:6 69:19
exercised
  15:6
exhibit 6:16
  6:21 7:8
  18:7,8
  20:10,11,12
  21:17,24
  22:10,17
  44:19 56:4
  85:8,9,10
  85:12,16

**exhibits** 6:25
85:6,7
**existence**
68:19
**expenditures**
51:11
**experience**
16:9
**express** 12:18
**extensive**
15:18
**extent** 13:18
14:3 35:20
63:18 70:18
70:20
**e-mail** 11:10

**F**
**F** 5:2 84:2
**face** 26:12
**faced** 32:3
**facilitate** 42:3
51:14 52:11
**fact** 10:13
25:19 27:11
32:5 35:6
38:17 47:17
53:24 74:22
**factor** 24:5
24:12 26:23
27:5 47:19
50:6,16
53:19 54:19
65:2,6 67:2
68:24 69:16
69:20,23
70:9 78:23
**factors** 12:12
12:19,20
21:4 22:15
22:21,23
24:3 32:9
34:21 39:6
39:8 43:10
49:3 53:3
65:4,4,12
65:22 66:10
**facts** 17:2

45:24 53:3
54:6,25
74:25 78:9
80:8
**factual** 15:24
30:13 31:6
32:2
**fail** 86:20
**fair** 14:13
64:19,19
**faith** 74:3,16
74:21,24
75:6,15,20
76:18 77:6
**far** 16:19,23
**faster** 51:14
**favor** 50:8
54:20 63:17
72:7
**favorable**
52:15
**favored**
20:19 62:6
63:17
**Federal**
14:11 15:22
22:3 34:17
85:13
**feeder** 18:3
**feel** 7:15
76:22
**fees** 37:11,13
37:14,25
**felt** 10:7 54:2
75:25
**fictitious** 24:9
24:18 30:10
30:25 31:2
31:11
**filed** 16:21
17:3,12,18
19:15,22
43:20 48:10
48:15 49:18
49:23
**files** 14:21
**filing** 13:21
18:10 20:4

22:11
**final** 62:8
63:4
**financial** 12:6
**financials**
11:18
**finished**
82:20
**firm** 20:8
37:23 54:3
81:25
**first** 21:2
23:22 24:4
44:5,8,9,9
44:14,15
48:7 57:7
61:21,22
62:11 67:4
67:8 70:3
76:13 77:18
77:18,22
**five** 7:22,23
22:20,23
24:2 79:12
**focus** 24:4
61:9 66:20
67:4,19
77:18
**Foerster**
11:17
**Foerster's**
11:16
**following**
16:12 47:2
87:5,6
**follows** 5:4
**foregoing**
83:9
**foreign** 55:13
57:9,23
**forget** 11:3
**form** 27:16
28:9 36:22
40:16 48:24
49:10 51:18
54:24 75:17
**former** 24:11
25:20 26:13

**forth** 34:8
84:12
**found** 11:14
**four** 69:24
**fourth** 24:3
26:22 27:5
**framed** 58:21
**fraud** 26:25
34:16 76:4
77:12
**free** 7:16 8:16
**front** 21:8,12
**full** 56:14
70:17
**fully** 78:11
**fund** 4:4 36:6
36:9,12,15
37:6,10
38:7,10
42:11,24
43:21 75:22
**funds** 13:8,16
18:3 36:17
38:18,18
40:3 50:19
55:12,23
**fungible**
35:20
**further** 84:15
**future** 53:8
53:20

**G**
**general** 48:19
64:10 78:22
**generally**
29:19 32:10
51:7,19
52:8 62:5
62:10 64:14
68:5 73:10
73:13
**gerrymand...**
67:16
**give** 30:6,8
41:11 69:23
74:17 75:21
**given** 26:18

31:3,22
84:14
**go** 7:6 49:11
62:3 70:3
74:18 76:19
**goes** 36:5
69:9,13
**going** 13:5
35:14,25
61:13,15,17
66:18
**good** 5:7,8
55:5 74:3
74:16,21
75:6,15,19
76:18
**govern** 36:14
**greater** 12:8
**GREENW...**
3:8 5:6 6:15
7:4 8:16 9:4
9:9,23 16:6
18:5 19:7
20:9 21:15
37:18 38:25
41:4,21
55:4 82:10
82:15,19
85:5
**ground** 46:14
**group** 26:24
39:10 43:16
47:21 48:13
48:15 63:10
64:4
**guess** 21:17
38:16 46:25
**guiding** 63:19
63:24 64:25

**H**
**H** 1:11 5:2,2
**Hadassah**
10:4,14,19
11:18,25
12:6,20
**Hadassah's**
12:17

**hand** 84:21
**handing** 7:7
**happen** 50:22
50:22 51:11
52:9
**happened**
58:18
**happening**
27:9
**hard** 47:21
65:25 81:10
**harder** 28:16
29:12,15,16
29:16 30:19
64:2
**headed** 73:7
**heading** 23:9
23:13 69:11
**hear** 37:18
69:15
**heavily** 72:7
72:7
**held** 2:13
**help** 52:19
**hereinbefore**
84:11
**hereunto**
84:21
**higher** 32:20
48:21 49:5
**Hirschfeld**
9:11
**Hirschfield**
1:19 2:13
5:9 6:1 7:1
8:1 9:1 10:1
11:1 12:1
13:1 14:1
15:1 16:1
17:1 18:1
19:1 20:1
20:13 21:1
22:1 23:1
24:1 25:1
26:1 27:1
28:1 29:1
30:1 31:1
32:1 33:1

34:1 35:1
36:1 37:1
38:1 39:1
40:1 41:1
42:1 43:1
44:1 45:1
46:1 47:1
48:1 49:1
50:1 51:1
52:1 53:1
54:1 55:1
56:1 57:1
58:1 59:1
60:1 61:1
62:1 63:1
64:1 65:1
66:1 67:1
68:1 69:1
70:1 71:1
72:1 73:1
74:1 75:1
76:1 77:1
78:1 79:1
80:1 81:1
82:1 83:7
83:16 84:10
85:4,11
**hold** 39:23
40:9
**holder** 40:14
41:24 43:3
**holders** 40:21
40:23
**holder's** 42:4
**hope** 70:4
**hoped** 54:3
**hopefully**
61:7
**Hostetler**
3:18 5:10
8:6,11
13:11 16:10
16:11 37:15
37:23 58:20
**hour** 55:5
**hypothesize**
42:12
**hypothetical**

65:25 66:3
**hypothetic...**
66:2
_____

**I**

**idea** 53:7
58:22
**identification**
6:23 18:9
20:13 22:7
44:24
**identified**
8:19 12:12
21:5 26:22
34:22 43:11
**identifies**
7:16
**identify** 7:23
26:7
**identifying**
61:16
**identities**
81:13
**imperative**
86:16
**implement**
71:15,23
**implicated**
25:15
**important**
69:3,3,4,16
**impossible**
28:23
**inapplicable**
70:16
**incidental**
40:5
**include** 67:18
71:19 72:25
**included**
80:15
**including**
5:15 6:10
32:18 47:16
66:10 68:4
**incremental**
40:14
**influence**

35:17
**influenced**
35:16
**information**
11:20 12:7
19:4,20
27:17,25
28:3,13,22
47:2
**initial** 17:25
77:24
**initially**
13:10
**Initiative**
6:22 85:8
**inserted**
23:15
**instance**
53:24 64:16
68:8
**instances**
46:11,24
47:14
**INSTRUC...**
86:2
**intent** 24:13
71:14,15,23
**interest** 51:2
52:5
**interested**
84:18
**investigation**
19:2
**investigatio...**
14:7,18
35:8
**Investment**
1:7 5:23
**investments**
60:4
**INVESTOR**
1:4
**invocation**
10:20
**invoke** 10:9
10:13,15
11:23
**invoked** 9:12

10:2 12:25
33:8 53:21
**invoking**
59:22
**involved** 5:20
6:3 8:3,12
17:5,9 27:8
27:22 31:8
32:7 34:20
46:8 47:4
55:19 58:17
77:24
**Irving** 1:11
3:17 5:21
**issue** 60:23
67:15 76:11
77:2 80:23
**issued** 18:25
49:20
**issues** 56:12
56:18 57:2
57:4,8 58:8
58:23 80:6
80:6,7
**item** 29:3,4,6
**I.D** 85:7
_____

**J**

**J** 3:21
**Jeffry** 7:25
**Jennifer** 1:21
2:16 84:7
84:24
**JOB** 1:22
**JPM** 34:24
**JPMorgan**
1:15,15 8:4
8:13 9:13
13:3 17:7
17:19 18:11
18:13,15,20
18:25 19:21
19:24 20:3
20:22,25
24:15,22
25:10,20
26:9,16
27:8,11

28:4,6,7,14
28:16,17
29:13,24
30:20 31:7
31:13 32:4
32:6,8,11
32:17,25
33:17,25
34:5,13
35:7 36:5
38:17 44:23
49:15,16,19
50:2,9
60:13,16
61:2 77:9
85:18
**JPMorgan's**
21:6 22:24
27:3 28:24
32:18 77:11
**JPM's** 24:10
**Judge** 33:2
56:6 58:22
60:7
**judging** 65:5
66:9
**judgment**
56:19 57:18
58:10 60:25
**jurisdiction**
55:18,21
57:15 58:9
59:9,17,22
60:13
**jurisdictio...**
56:17 57:2
59:6 73:7,8
**Justice** 34:16
**justified** 64:5
64:9 78:12
**J.P** 1:16,16
_____

**K**

**keep** 61:13
**kind** 30:3
70:12
**kinds** 25:25
27:25

**Kingate**
81:17,19,20
82:13
**knew** 35:13
55:13 74:2
**know** 6:13
9:21 11:2
12:2 13:18
17:21 18:4
18:14,24
19:9,22,25
20:2,7
28:21 31:6
36:23 37:8
44:12 46:23
47:18 48:4
56:2 57:11
59:19 60:5
60:6,11,18
60:19 61:3
63:16,18
67:24 77:25
78:4 81:4
82:10
**knowing**
28:22
**knowledge**
26:23 27:8
27:9 73:20
75:6,15
76:3,8,11
77:2,11
_____

**L**

**L** 1:7,10,13
5:2,23
**lack** 21:6
22:24 24:10
27:3,8
28:24 75:15
76:18
**lacked** 55:24
**lacking** 75:19
**lacks** 74:16
**language**
71:7 72:21
**large** 35:14
44:8,10

80:4
**larger** 34:7
**late** 56:6
**law** 25:22,23
  26:4 29:17
  30:9 32:16
  33:3,13,20
  74:22
**laws** 30:4
**lawyer** 13:19
**lawyers** 20:6
  37:12 81:14
**leading** 20:4
**learn** 78:8
**legal** 25:11
  26:10,11
  32:2 40:13
  41:16 42:3
  80:5
**legally** 42:14
**lender** 32:19
**letters** 13:8
  13:15
**let's** 7:4
  21:17 24:3
  40:5 41:21
  41:23 42:12
  55:22 63:3
  63:4,21
  64:20 66:13
  66:20 67:4
  77:14,16,18
  78:14 82:15
**level** 29:18
  65:19,21
**leverage**
  63:18,22
  64:14,18
  73:11,12
  74:6,8
**Levin** 3:10
  6:24 10:5
  10:18 11:6
  11:9,20
  12:2,5,18
  44:20 45:7
  45:17 46:5
  56:24 59:4

61:25 62:11
62:15,16
63:8,16
64:13,23
66:22 67:7
67:14,23
73:5,18
74:13 76:6
77:22,25
78:18 82:6
82:9,12
85:16
**Levin's** 12:17
  44:17 61:5
  61:10 63:14
  66:17 73:4
  79:9
**Levy** 7:25
**Lifland** 56:7
  58:22 60:7
**limit** 23:17
**Limited**
  21:22,23
  22:6,7
  85:15,15
**LINE** 87:7
**lines** 47:2
**Lipton** 20:7
**liquidation**
  1:12 15:5,5
**list** 22:14
  35:3,4
  79:25
**listed** 7:19
  9:20 22:21
**litigant** 14:5
  14:10
**litigate** 39:7
**litigated**
  53:25
**litigating**
  27:10 28:5
  75:11
**litigation**
  5:15,21 6:3
  32:8 43:12
  43:19 45:10
  45:20 46:3

46:23 47:12
47:19,24
48:10,16,22
49:7 50:6
50:15,21,22
50:23 51:4
52:7,24
53:19 54:18
54:21 77:8
77:20 78:22
79:4
**little** 35:21,22
  54:14 55:4
**live** 78:7
**LLC** 1:7,16
**LLP** 3:5,18
  4:5
**loan** 31:14,21
  31:22
**loans** 26:16
  26:17
**located** 56:16
  60:18
**Loigman**
  81:22,24
**long** 35:24
**look** 9:2,7,17
  9:19 17:23
  21:13 30:23
  31:5 62:3
  62:17 66:10
  72:17
**looked** 59:7
**looking** 31:9
**lot** 15:13
  39:24 47:16
  53:2 58:4
  65:10 66:10
  68:4 80:7,8
**lower** 38:20
  54:4 64:6
**L-O-I-G-M...**
  81:24

_____

**M**
**M** 5:2
**Madoff** 1:7
  1:10,13

5:23 6:22
15:5 27:12
34:16 35:14
36:19 37:5
38:7 39:10
39:13,14
40:7,8,12
40:20 41:12
41:15,23
42:2 43:7
51:8 85:8
**Madofftrus...**
  6:19 7:10
**Madoff's**
  76:4 77:12
**making** 74:9
  74:18
**manageable**
  61:13
**Marc** 1:19
  2:12 20:12
  83:7,16
  84:10 85:4
  85:10
**March** 11:2
  44:12
**mark** 6:16
  18:6 20:10
  21:17
**marked** 6:22
  6:25 7:7
  18:8 20:13
  22:7 44:23
**marriage**
  84:17
**matter** 8:8
  14:17,17
  15:4 23:15
  27:10 31:6
  35:23,24
  52:18 84:19
**matters**
  51:17
**maximize**
  38:6,13
  39:17 40:8
**McMahon's**
  33:2

**mean** 13:25
  15:4 16:2
  25:5 27:13
  56:22 59:23
  62:22 70:20
  75:10 79:23
**meaning**
  27:19 71:8
**means** 35:16
  64:13
**meet** 74:3
**meeting**
  11:15
**member** 5:9
**Memorable**
  80:4
**memorized**
  44:18
**mentioned**
  24:2 46:7
  79:11
**mere** 70:5
**MFN** 11:13
  21:11 24:13
  54:10 65:8
  68:10
**militate**
  68:12
**militated**
  68:24
**militates** 72:6
  72:11
**militating**
  70:9
**million** 8:23
  64:17
**mind** 59:11
  66:17 69:2
  69:15 80:2
**mistaken**
  22:14
**money** 35:14
  35:20,25
  38:18 50:18
  50:19 51:20
  60:22 80:9
**monies** 37:9
**Moore** 2:14

3:5
**MORGAN**
  1:16,16
**morning** 5:7
  5:8
**Morrison**
  11:16,17
**motion** 21:18
  21:24 56:5
  58:21 60:7
  85:12
**motivate**
  38:19
**Mount** 75:22
**mutual** 71:14
**MYERS** 4:5

_____

**N**
**N** 3:2 85:2
**name** 81:23
  82:8
**nation** 20:19
**nations** 62:7
**nature** 22:25
  24:6,17,19
  24:23 25:3
  25:11 27:20
  29:8 32:11
  67:5 68:3
  69:10,19
  71:9 72:5
  72:19
**necessarily**
  35:23,24
  49:2 50:16
  63:19 76:15
  78:24 79:6
**necessary**
  86:5
**need** 17:21
  26:6 29:9
  60:22
**negotiated**
  6:7 53:4
**negotiating**
  46:8 55:9
  74:7,9
  75:12 81:20

**negotiation**
8:4,13 77:8
79:17
**negotiations**
7:21 28:20
46:13 47:3
47:23 80:19
**New** 1:2,19
1:19 2:15
2:15,17 3:7
3:7,20,20
4:7,7 60:16
60:19,25
84:3,5,8
**next-to-last**
63:2
**non-custo...**
25:24 29:10
29:21 30:13
30:15 31:4
**non-exclusi...**
35:4
**non-value**
31:17
**Norman** 7:25
**Notary** 2:17
83:21 84:7
**note** 22:9
23:4
**noted** 50:17
82:22 86:13
**notes** 9:8
**notice** 2:16
**notion** 66:6
**number** 6:13
6:14 21:9
21:13 22:12
22:25 23:3
23:24 27:6
35:12 39:6
50:12
**numbering**
7:3
**numbers** 9:7
**N.A** 1:16

———————
**O**
———————
**oath** 15:2

81:11
**Object** 27:16
28:9 36:22
40:16 48:24
49:10 51:18
54:24 75:17
**objection**
40:25
**obligation**
15:11
**obtain** 56:20
**obtains** 41:17
**obviously**
11:7
**Ocampo-G...**
1:21 2:16
84:7,24
**occur** 51:3
52:6
**occurred**
43:19,23
48:9
**occurring**
46:16
**occurs** 54:21
**offer** 20:18
55:3
**offices** 2:13
11:16
**Oftentimes**
45:22
**okay** 21:15
40:4 42:12
45:16 52:2
55:6 66:15
79:8 81:9
82:19
**once** 42:18
**ones** 9:19
44:13 54:14
66:10 79:24
80:24
**one's** 50:23
**open** 53:23
57:5
**operates** 66:5
**opt** 53:11
**Optimal** 3:4

8:2 9:12
10:2,8,13
11:22 12:12
12:25 21:5
21:21,22
22:5,6,10
22:16 32:18
32:23 33:5
33:8 34:19
34:23 43:11
43:18,20,25
44:4 46:17
47:8,12,25
48:7,17
49:7,16
53:5,21
54:22 55:10
56:11,15
59:3,13,15
60:4 66:12
71:2 72:19
76:10,25
78:13 80:17
80:20 81:6
85:14,15
**Order** 21:18
21:25 85:12
**ordinary**
14:4 25:25
**original**
67:13 86:17
**Originally**
67:9
**outcome**
38:10 84:18
**outside** 68:10
68:12,18
71:4
**overall** 34:7
39:10 61:20
65:10 72:23
**overarching**
33:23
**overcome**
57:3 58:24
**overlap** 39:24
39:25 40:4
40:5,6

**O'MELVE...**
4:5

———————
**P**
———————
**P** 3:2,2
**page** 6:18 7:8
7:11,24
20:16 22:17
23:24 44:25
45:4,5,14
49:13 56:4
56:9 83:13
85:3 87:7
**pages** 83:9
**paid** 8:22
33:17,18
37:9,11,13
37:15,22
42:21,23
50:17 51:8
**paragraph**
20:15,18
23:5,12
32:14 34:13
45:2 49:13
56:9 61:11
61:22 63:2
63:5,11
64:21 66:13
66:14,16,20
66:23 67:5
67:5,8,19
67:20 69:12
73:4,6,19
77:15,15,19
77:22 78:15
**paragraphs**
77:16
**paraphrasi...**
11:7
**part** 15:10
18:25 34:14
35:18 39:9
71:14
**participate**
28:19 77:8
**participated**
7:20 13:20

14:3 79:12
79:16 80:12
**particular**
35:18 46:24
51:22 55:2
55:20 66:25
74:24
**particularly**
69:2,16
80:2
**parties** 84:16
**parts** 18:19
**party** 77:3
**pay** 11:19
12:8,11
66:21,25
**paying** 38:17
**payment**
26:17
**pays** 37:25
**people** 40:2
47:15
**percent** 27:13
37:25 46:14
54:5,8 64:7
75:4 78:11
**percentage**
47:7,11
48:21 49:5
54:4
**period** 20:4
**perpetrated**
27:2
**person** 82:11
**personally**
5:20 6:3
7:20 8:3,12
20:3 46:8
56:6
**persons**
39:22
**perspective**
68:2
**petition**
49:22
**phonetic** 60:8
82:5,9
**phrase** 23:23

61:16
**physical**
55:16,25
**Picard** 1:11
3:17 5:21
13:20 16:10
16:11 38:6
38:11 41:13
42:14 43:2
53:11 75:12
**Picower** 7:25
75:23
**piece** 34:6
**place** 10:25
81:13
**plaintiff** 1:5
1:14 38:19
**play** 53:20
**Plaza** 3:19
**pleading**
32:21
**pleadings**
15:23
**please** 7:23
20:15 86:4
86:10
**point** 17:9
**Ponzi** 25:22
26:3 29:17
30:9
**portion** 37:20
39:3 41:8
46:20 47:8
**positive**
18:17,23
**possible**
42:21,23
72:22 73:2
**potential**
56:17 57:2
58:8 68:22
71:4 80:16
**power** 14:25
15:6 23:2
24:6 25:9
33:10,18
34:4 35:9
36:4 45:10

45:20 46:9
67:6 68:3
71:10,18
72:5 79:4
**powers** 14:6
35:11
**practical**
27:10
**practice** 5:12
13:14 45:8
45:18 46:4
79:2
**practiced**
5:17
**preference**
24:8 32:22
56:12
**preferences**
24:19 67:11
68:5
**preliminary**
10:17
**premises**
27:20
**preparation**
17:6 27:23
**presence**
55:16,25
57:10,12,13
58:5 70:5
72:12
**presumably**
57:14,20,21
58:22 74:22
**prevail** 29:13
**prevailing**
28:15
**pre-compla...**
14:7,12,18
19:2
**pre-litigation**
52:7
**primacy**
69:24
**primary**
63:23
**principal**
24:8 68:5

68:20,21
70:6,15,19
70:21,24
71:19 72:13
72:18,25
74:6,15
**principle**
52:18 63:19
63:24 64:2
64:10,25
68:9
**principles**
36:11,13
**printout** 6:17
**prior** 8:8
**probably**
13:25,25
23:2 79:22
**problematic**
78:9
**Procedure**
14:12 15:22
22:4 85:14
**proceeding**
20:11 34:3
39:18 40:2
40:10,24
49:24 56:13
79:7
**proceedings**
49:14
**proceeds**
37:21
**process** 51:4
52:7
**profits** 24:9
24:18 30:11
30:12,25
31:2,2,3,11
68:4
**profoundly**
36:18,24
**pronounce**
82:7
**proof** 25:15
26:5 29:19
30:18,19
32:21 68:6

68:8 75:15
77:10
**propose**
63:12
**proposed**
47:6,15
78:22
**proposition**
52:4
**prospective**
14:22 15:8
44:6 52:13
**PROTECT...**
1:4
**prove** 26:6,20
29:9,20
76:3,8
**provide**
21:16
**provided**
11:20 12:7
30:15 59:17
**provision**
9:13 10:3
10:14,21
11:24 12:14
13:2 14:11
20:19,21
21:8,12
23:5 27:15
29:2 33:9
35:10 44:21
50:7,9
52:23,25
53:5,13,15
54:16 63:25
65:18,24
66:5,11
67:18 68:14
68:23,25
69:11 70:8
70:16 71:5
71:17 72:12
72:14,22,24
78:2,20
80:17 81:5
81:8 85:17
**provisions**

23:19 59:16
**Public** 2:17
83:21 84:8
**publicly** 19:7
**pull** 18:5
**purport**
69:23
**purposes**
65:17
**pursuant**
2:15 21:18
21:25 85:12
**pursue** 64:3,8
**pursuing**
32:3 74:15
**purview** 71:4
**put** 63:21
68:10,12,18
72:9 79:8
**putting** 17:10
67:25

**Q**

**qualification**
52:3
**qualified**
76:21
**qualify** 65:16
72:23
**qualities** 62:7
**quality** 76:23
**question**
10:12 22:22
25:7,8
37:19 38:16
39:2 40:17
40:19 41:10
48:6,25
53:23 57:5
68:17 70:3
71:21 73:17
74:21 76:22
**questions**
32:2 82:21
**quibble** 69:17
**quicker**
51:11
**Quinn** 82:2,4

**quite** 35:24
**quote** 61:14
**quoted** 16:24
62:19

**R**

**R** 3:2,23 4:8
5:2,2 84:2
87:3,3
**raised** 67:14
**raising** 76:17
**reached** 81:2
**read** 16:3
37:19,20
39:3 41:5,8
43:14 46:18
46:20 61:18
61:21 73:23
83:8 86:4
**reading**
72:17
**reads** 23:14
73:25
**realize** 52:20
**really** 53:23
65:9
**reason** 21:2
32:13 34:12
35:13 46:21
53:14 78:3
86:7 87:9
87:11,13,15
87:17,19
**reasonably**
76:2
**reasons** 15:13
15:17 20:18
20:24 35:13
47:16 50:12
87:6
**recall** 12:22
17:13,14,16
67:14 80:21
80:24,25
81:11,17
**receipt** 42:4
86:19
**receive** 52:15

**recess** 55:8
82:18
**recognized**
39:17
**recollection**
67:21,25
**recommen...**
53:10 54:17
**recommen...**
53:15
**record** 8:7
9:18 37:17
37:20 39:3
41:8,20
43:14 46:20
61:16 84:13
**records** 27:18
27:19
**recoveries**
6:11 7:17
8:20 38:14
39:17,22
40:13,21
79:13
**Recoveries-...**
7:12
**recovery** 4:4
6:22 17:25
24:7,8 40:8
40:22 41:18
51:17 54:8
70:6 85:8
**refer** 17:21
20:20 61:15
**reference**
23:16 49:19
80:15
**referenced**
54:12
**references**
18:19
**referring**
23:22
**reflect** 19:16
**regarding**
44:20 56:18
85:17
**related** 31:14

84:16
**relates** 66:16
**relating**
  34:15 49:23
  69:12
**relationship**
  32:12
**relevant**
  12:13 21:7
  22:24 24:11
  26:10 27:4
  34:25
**relied** 19:19
**remaining**
  61:6,7,8
**remember**
  9:6 67:12
**remission**
  36:15
**repayment**
  31:14
**repayments**
  31:17
**repeat** 28:10
**Reported**
  1:21
**reporter**
  61:12
**represent**
  56:11
**representat...**
  9:18
**representat...**
  80:14
**representing**
  13:19 16:10
  20:3 34:18
**require** 32:20
**requirement**
  74:4
**requires**
  15:22
**resisted**
  46:13,22
**resolution**
  38:9
**resolved** 35:7
  35:9

**resources**
  51:12,16
**respect** 10:14
  11:24 12:24
  26:21 29:3
  29:25 30:12
  30:19,22
  31:4,20
  33:7 50:20
  54:20 60:3
  60:10,12
  62:11 65:11
  65:14
**respects**
  65:15
**responded**
  47:10
**result** 64:24
**resulting**
  74:10
**results** 19:16
  38:9 43:7
**return** 13:8
  13:15 74:5
  86:16
**review** 19:16
**reviewed**
  17:14
**Richard** 3:10
  44:19 85:16
**right** 9:9
  15:14 23:23
  28:2 36:7
  37:16 38:4
  53:5,8 58:3
  64:11,20
  68:17 73:15
  75:16 76:21
  78:14
**rlevin@cra...**
  3:11
**road** 10:10
  76:20 78:8
**Robert** 81:22
**Rockefeller**
  3:19
**role** 32:18
**rule** 14:6,15

15:7,12,17
15:18,21,22
16:2,5,7,8
16:13,21,24
18:13 43:25
49:17
**Rules** 14:11
  21:19 22:2
  22:3 23:13
  85:13,13
**ruling** 49:24
**rulings** 49:21

──────────
**S**
**S** 3:2 5:2
**safer** 78:22
**saw** 17:11
**saying** 27:24
  62:22 63:8
  64:15 69:15
  74:13
**says** 16:5,7,8
  16:8 46:5
  56:21 62:18
  67:23 77:22
**sbrown@b...**
  3:24
**scheme** 26:3
  29:17 30:9
**schemes**
  25:22
**scope** 23:17
  23:18
**se** 27:24 35:3
**SEANNA**
  3:23
**second** 24:3,4
  24:5 50:20
  62:14,21
  67:19 77:23
**section** 21:19
  21:25 22:15
  74:4 85:12
**sections**
  25:14
**Securities** 1:4
  1:7,16,17
  5:24

**see** 31:21,22
  41:16 42:15
  42:20 43:2
  62:18 72:16
  75:2
**seeing** 45:12
**seek** 40:13,21
  49:4
**seeking** 17:25
**seen** 17:8,15
**sending**
  13:14
**sense** 45:25
  80:3,4
**sent** 11:10
  13:7,17
**sentence** 45:5
  45:15 61:10
  61:14,22,24
  62:12,14,21
  63:2 64:21
  64:23 73:22
  73:23,25
  74:13,15
  77:23 78:5
  78:24
**sentences**
  63:4,11,15
**Sentry** 60:8
**separate**
  33:12,22
  34:9 79:7
**sequence** 7:3
**serious** 58:23
**served** 19:14
  43:24
**set** 34:8 84:12
  84:21
**sets** 36:20
**settle** 35:17
  39:7 46:2,2
  54:4 81:7
**settled** 28:4
  28:14 32:22
  46:17 47:12
  52:24 68:19
  68:21 72:25
  79:4

**settlement**
  7:21 8:4,8,9
  8:13 9:11
  9:14 10:5
  10:19,20
  11:12,25
  12:9,13,18
  12:21,24
  13:3 19:23
  20:22 21:5
  22:10,16
  23:12 27:14
  28:20 32:25
  33:5,7,9,12
  33:18,19,22
  33:23,24
  34:2,3,7,9
  34:13,20,22
  34:24 35:11
  36:3 37:4
  37:10,21
  38:20 39:10
  43:11,19
  44:5,5,21
  46:15,22
  47:6,7,8,10
  47:23 48:7
  48:13,19,21
  50:2,9 51:5
  51:21 53:12
  53:16 54:13
  54:21 55:2
  55:10 58:7
  62:6 64:6
  65:3,8 66:7
  67:2,16
  68:15,20,22
  69:7,19,22
  70:7 71:3
  71:11 72:15
  72:23 74:7
  74:10 76:9
  76:10,24,25
  77:25 78:10
  78:11 79:3
  79:12 80:12
  80:18 81:2
  81:21 85:17

**settlements**
  6:8 8:21
  9:25 34:15
  38:23 43:6
  45:9,11,19
  45:21 46:9
  46:13 47:4
  47:15 51:3
  51:10,14
  52:6,8,12
  52:14,20
  65:15,22
  71:18 75:12
  79:5,17
  80:22 81:12
**settling** 47:13
  48:23 50:14
**Shapiro** 7:25
  75:23
**Sheehan** 3:21
  8:14,18 9:6
  9:16,24
  16:4 27:16
  28:9 36:22
  40:16,25
  45:14 48:24
  49:10 51:18
  54:24 55:7
  75:17 82:17
  82:21
**sheet** 86:9,11
  86:14,17
**shortly** 58:19
**show** 6:15
  30:2 68:7
**shown** 83:12
**Shushil** 82:5
  82:6,7
**side** 79:9
**sign** 86:10
**SIGNATU...**
  87:23
**significant**
  6:11 7:17
  8:20 37:8
  44:14 48:7
  79:13 80:2
  80:3

**significantly**
12:8 36:12
**signing** 86:12
**similar** 10:8
10:8 23:7
24:14 48:3
65:16,23
66:8 67:3
68:11,16
69:14 70:14
70:25 71:12
71:20 72:8
72:18 74:11
74:19 76:9
76:24 77:6
**similarity**
12:12,20
21:4 22:15
22:20,23
24:5 27:5
34:21 43:10
65:2,5,10
65:13,20
66:7,9
**similarly**
37:3
**simple** 41:11
75:8,9
**simpler** 58:4
**simply** 25:19
71:16
**simultaneous**
34:23
**SIPA** 1:12
5:22,23
14:5,17,20
15:5 37:25
39:18 40:10
40:24 41:25
**SIPC** 38:3,3
50:17 51:8
**sit** 81:9
**situation** 31:7
40:6 46:24
54:12 60:12
**situations**
47:3 53:20
54:11

**six** 20:18
**six-year** 74:5
**size** 38:7
**skip** 66:14
**slam** 77:5
**small** 44:13
**Solus** 4:4
**sorry** 28:10
38:3 41:3,9
42:19 45:4
45:12,16
**sort** 17:10
**sought** 43:24
67:12,13
**source** 16:17
41:17 43:4
**sources** 42:5
42:6
**Southern** 1:2
60:24
**space** 86:8
**spare** 61:12
**speak** 27:24
32:8
**speaking**
51:19 52:8
62:5
**specific** 47:19
**specifically**
6:19 7:10
80:22
**spell** 81:23
**spending**
50:18
**spoke** 11:13
**spoken** 80:20
**SPV** 3:4
**Square** 4:6
**ss** 83:3 84:4
**stage** 43:12
46:16,17,23
47:13,18,24
47:25 48:15
48:17,22
49:6,7,14
50:6 52:23
53:19 54:2
54:6,18,22

77:19
**stages** 45:11
45:21 79:5
**stand** 79:25
**standalone**
34:9,9
**standard**
26:10,11
32:21
**standards**
25:16
**state** 2:17
66:17 83:2
84:3,8 86:6
**stated** 78:6
**statement**
14:13
**states** 1:1
55:17,25
59:18 66:23
66:23 67:8
73:18 78:18
**status** 21:6
22:24 24:11
27:4 28:24
**statutory**
25:8 39:16
**stay** 82:16
**steps** 55:22
**stop** 70:17
**Strategic**
21:22 22:5
85:15
**strong** 74:8
77:10
**studied** 75:2
**subject** 34:3
83:11 86:12
**submitted**
56:6 60:7
**subpoena**
14:22 15:7
**subpoenas**
18:24 19:14
43:25
**subscribed**
83:17
**subsequent**

18:2 32:19
**subsequently**
13:10
**subsidiaries**
59:24 60:3
**Substantiv...**
1:12
**suing** 13:6
29:18 69:10
69:13
**summarize**
12:23
**summarizing**
11:7
**supply** 9:16
**support**
15:25 16:25
47:8 71:8
**sure** 9:24
11:9 15:15
19:5 22:19
35:2 40:18
73:11 78:4
78:21 82:17
**SUS** 3:4 23:7
55:11,24
74:9
**Swaine** 2:14
3:5
**sworn** 5:3
83:17 84:12

**T**

**T** 84:2,2 87:3
**take** 10:25
13:20 39:5
40:5 51:22
53:7,10,13
55:22 59:23
60:13 62:20
63:3,4,10
64:20 65:12
77:7,16
82:15
**taken** 26:24
43:16 48:20
55:8 82:18
**talked** 69:10

73:12
**talking** 45:13
**talks** 48:13
71:20 72:4
**tell** 79:21
**tend** 49:4
80:9
**term** 7:11
15:19 36:6
36:7 63:21
**terms** 11:11
51:6,21
77:23 78:5
**testified** 5:4
**testify** 81:10
**testimony**
12:24 83:9
84:13
**text** 22:9
69:22
**textbook**
56:12
**Thank** 9:23
39:4
**thing** 37:9
**things** 26:6
27:20 29:9
30:2 46:2
50:21,25
51:24 65:10
68:4
**think** 9:3
11:15,15,17
11:19 29:3
29:4,5
31:20 35:12
39:21 41:4
42:13 44:15
44:16 47:21
51:9 53:2
53:22,23
54:25 55:14
57:2,25
58:12,15
61:19 64:10
66:3,4,6
70:4,11
71:25 72:2

72:3,6
73:13 77:4
78:6 81:24
**thirty** 86:18
**thought**
39:15
**thousand**
14:2
**time** 8:7
32:25 35:8
50:2 54:16
55:5,6 58:7
58:15 60:6
61:6,7,8
63:3 82:22
**Times** 4:6
**today** 54:18
71:24 81:9
**token** 39:20
75:7
**told** 56:25
**total** 8:22
41:18
**transaction**
30:17
**transactions**
26:19
**transcript**
61:13,19
73:24 83:11
86:20,21
**transfer** 68:7
**transferee**
32:20
**transferred**
13:9,15
**transfers**
18:2,2
**treatment**
9:12 10:2
10:14 11:24
12:14 13:2
20:21 23:6
23:6 27:15
28:25 33:8
35:10 44:21
50:7 52:15
52:23,25

53:5,12
54:16 63:24
65:18,24
68:13,23
70:8,16
71:5,17
72:12,14,22
80:17 85:17
**Tremont**
7:24
**trigger** 65:24
**triggered**
35:3
**Tripaloni**
82:9
**true** 83:11
84:13
**trust** 51:2
**trustee** 1:11
5:22 6:7
13:7 14:5,5
14:16,21
15:6,10,18
15:23 16:15
16:20 17:2
17:18 18:12
18:25 19:10
19:15,22
21:21 22:5
22:11 24:21
25:9 26:9
26:12 27:7
28:3,7,13
29:13 32:2
32:5,15
34:14,20
37:14,22
39:5,16
40:7,12,20
41:15 42:2
43:13,20,23
44:6,22
45:25 46:12
47:9 48:20
48:23 49:4
49:16 51:10
51:16 52:5
54:17,19,20

56:17,19
64:3 67:9
70:6 74:6
75:14,25
79:13 85:14
85:18
**trustees**
25:10 50:13
**trustee's**
13:14 17:7
19:16 30:19
31:13 33:9
34:4 36:5
47:9 49:21
77:10
**truthfully**
81:11
**try** 26:7 41:6
**trying** 10:10
63:25 81:10
**Tuesday** 1:20
**turn** 20:15
44:17,25
61:4 62:25
66:13 73:3
73:16 77:14
78:14
**two** 24:2
36:17,20
40:3 61:16
61:23 62:4
63:3,4,11
63:14 65:14
65:22 77:16
77:16
**two-year**
74:5
**typical** 14:10

_____ U _____
**ultimately**
10:6 11:15
11:19,21,23
12:3 31:24
67:17
**unable** 12:8
**underlying**
7:21 23:23

**understand**
10:12 25:3
25:5 26:14
32:9 40:18
41:6,9 57:8
58:8 59:7
**understand...**
24:15 41:2
52:22 53:18
57:22 59:2
59:3 74:14
**understood**
68:2
**United** 1:1
55:16,25
59:17
**universal**
30:10
**unusual** 80:5
**use** 7:2,4
**usually** 45:10
45:20 79:4

_____ V _____
**vacation**
11:10,12
**value** 26:18
30:7,11,15
30:16,16,19
31:3,6,16
31:22,25
35:22,22
52:9
**variety** 32:15
**various** 18:18
18:19
**vast** 50:5
**vastly** 49:15
60:14
**version** 7:9
**versus** 29:10
29:21 31:17
54:14
**victim** 38:18
40:8 41:12
41:16,18
**victims** 35:15
35:25 36:20

39:11,13,14
39:25 43:8
51:15
**view** 12:18
20:19 31:5
35:6 42:13
48:20 50:23
54:15 68:19
77:10
**virtue** 25:19
32:5
**vs** 1:6,15

_____ W _____
**Wachtell**
20:7
**want** 61:9,21
61:23 62:17
69:17 76:14
**wasn't** 54:2
77:2
**way** 24:10
25:18 27:3
27:21 28:24
29:11,17
30:18 35:19
37:5 52:11
71:15,23
72:4 74:14
84:18
**ways** 36:25
37:4 38:14
58:12,16
59:9,11
78:6
**website** 6:11
6:19 7:10
**weighs** 50:8
**went** 11:18
**we're** 50:18
55:6 80:19
82:19
**we've** 47:15
55:4 72:19
81:5
**whatsoever**
39:21
**WHEREOF**

84:20
**wish** 87:5
**withdraw**
41:21
**withdrawals**
56:10,14
**withdrawn**
49:19
**witness** 5:3
39:4 46:18
83:8 84:11
84:14,20
85:3 86:2
87:23
**witnesses**
19:10
**word** 33:7
**work** 75:11
**worse** 39:11
**wouldn't**
71:13,22
**written** 61:25
73:6
**wrong** 33:6
34:15
**wrote** 56:10
56:23

_____ X _____
**x** 1:3,9,11,18
42:9 85:2

_____ Y _____
**yanim@cr...**
3:13
**YAW** 3:12
**yeah** 19:6
**year** 11:3
**years** 5:18,19
**York** 1:2,19
1:19 2:15
2:15,18 3:7
3:7,20,20
4:7,7 60:16
60:19,25
84:3,5,8

_____ $ _____

**$100** 41:14
**$105** 41:19
**$40** 8:23
64:17
**$70** 41:25
42:8,12,16
42:18

_____ 0 _____
**08-01789** 1:6
**09** 55:10

_____ 1 _____
**1** 6:16,21 7:8
85:8
**10** 56:4,9
**10-04932**
1:15
**100** 37:25
**10019** 3:7
**10036** 4:7
**10111** 3:20
**105** 21:19
**105(a)** 21:25
85:12
**11** 15:22
**11:32** 82:22
**110** 41:19
**112-page**
17:18
**13** 23:5,24
69:12
**13(c)** 22:16
**16** 6:11,13
7:16,19
8:19 17:24
44:25 79:13
79:25
**18** 61:11,22
63:2,5 85:9
**19** 63:11
64:21

_____ 2 _____
**2** 7:24 18:7,8
22:25 29:3
29:7 85:9
**2nd** 17:17
32:25

**20** 5:18,19
66:14,16,20
79:22 85:11
**2002** 21:20
22:2 85:13
**2004** 14:6,15
15:7,18
16:13,16
18:13,21
19:13,17
43:25 49:17
**2009** 13:5,12
13:14 44:12
49:8
**2010** 17:17
20:4
**2014** 1:20 2:9
6:18 7:9
83:19 84:22
**21** 17:22
66:13
**21(a)** 66:21
66:23
**21(b)** 67:5,20
**21(c)** 73:4
**21(d)** 73:16
73:19
**21(e)** 45:2
77:15,19
**22** 6:17 56:9
85:15
**22nd** 7:9
**23** 20:16
**24** 20:16
23:12 49:13
**25** 80:11

---
**3**

**3** 20:11,12
85:10
**30** 86:18
**34178** 1:22

---
**4**

**4** 21:17,24
22:13 23:3
29:4 56:4
85:12

**40** 9:21
**44** 85:18
**45** 3:19

---
**5**

**5** 44:19 85:16
**50** 79:22,23
**548(c)** 74:4

---
**6**

**6** 1:20 2:9
85:5,8
**63** 20:15
32:14 34:13
49:13

---
**7**

**7** 4:6 23:24
**7th** 84:21

---
**8**

**8** 22:17
**825** 2:14 3:6
**85** 27:13
46:14 54:5
54:8 64:7
75:4 78:11

---
**9**

**9:42** 1:20
2:10
**9011** 15:12
15:12,17,21
16:21
**9019** 21:20
22:2 85:13