7/5/14

CLAIM ID:

7070192

MADOLF VICTIM FUND

P.O. BOX 6310

SYRACUSE, NEW YORK 13217-6310

RE: SPECIAL MASTER RICHARD C. BREEDEN MAY 28, 2014 LETTER TO LAMAR ELLIS, RE: WARNING THAT CLAIM NO: 7070192 APPEARS TO HAVE BEEN FILED BY AN INELIGIBLE ENTITY.

RE: DENIAL REPLY; AND INTENT:

NOTE:  ON, OR ABOUT 12/30/2013 LAMAR ELLIS FILED CASE NO: 1303787 (INVOLUNTARY PETITION) IN THE U.S. BANKRUPTCY COURT AT JACKSON, MISSISSIPPI AGAINST ENERGETIC, INC., LAMAR ELLIS TRUST, LAMELLI LTD., AND THEIR REPRESENTATIVES WITH THE INTENT TO HAVE THE ABOVE ENTITIES REPRESENTATIVES APPEAR AND TESTIFY UNDER OATH BEFORE THE COURT AS TO WHETHER OR NOT ANY OF THEM HAD FILED A CLAIM IN THEIR NAME(S) RE: "U.S. BANKRUPTCY CASE NO: 081789 (BRL)."

NOTE:  ON, OR ABOUT 2/20/2014 LAMAR ELLIS AND THE ABOVE REPRESENTATIVES MET, WHERE UPON THE ABOVE ENTITY'S STATED, THAT THEY HAD NEVER SIGNED-OFF ON ANY DOCUMENT REGARDING CASE NO: 08-1789 (BRL) OR ANY MEDALLION SIGNATURE GUARANTEED PROGRAM WHILE BEING AGENTS" WHILE LAMAR ELLIS SECURITIES WERE HELD IN "STREET NAME" BY THE ENTITIES. SOME TIME AFTER 2/20/2014 LAMAR ELLIS BEGAN THE PREPERATION TO NOTIFY THE COURT THAT HE INTENDED TO WITHDRAW CASE NO: 1303787EE FROM THE COURT.

BUT, PRIOR TO LAMAR ELLIS SUBMISSION OF THAT INTENT TO THE "COURT", THE COURT ISSUED ITS OWN "ORDER ON ORDER TO SHOW CAUSE" TO LAMAR ELLIS. LAMAR ELLIS ON OR ABOUT 4/11/2014 DID SUBMIT TO THE "COURT" HIS NOTICE OF DISMISSAL. HIS CASE NO: 1303787EE, WHERE AFTER, THE "COURT" ACCEPTED THE DISMISSAL NOTICE.

LAMAR ELLIS

1516 SHIRLEY AVE

JACKSON, MS 39204

# Madoff Victim Fund
P.O. Box 6310
Syracuse, NY 13217-6310



LAMAR ELLIS TR
LAMAR ELLIS TTEE CONSERVATOR
1516 SHIRLEY AVE
JACKSON, MS  39204

Date:      5/28/2014
Claim ID:  **7070192**

## WARNING: YOUR CLAIM APPEARS TO HAVE BEEN FILED BY AN INELIGIBLE ENTITY

The Madoff Victim Fund recently received a claim from your organization with respect to losses on investments in Madoff Securities. Though your claim has not yet been individually reviewed, MVF has performed a preliminary screening to identify claims from institutions or other entities that do not appear to satisfy basic eligibility standards for MVF. Our preliminary screening has identified your claim as having been filed in the name of a legal entity (corporation, bank, securities firm, insurance company, investment partnership, LLC, LLP, A.G., S.A., N.V., GmbH, P.L.C., partnership, SICAV, trust, etc.) that is unlikely to satisfy the eligibility standards of MVF.

At MVF our goal is to help all eligible victims of the Madoff criminality recover a portion of their investment losses. We also realize that claimants have often put considerable time and effort into preparing their claims. Therefore, we would be sad to see claims fail because they were filed by intermediaries who are not eligible to recover, rather than by the "ultimate investors" who are eligible. This letter is intended as an "early warning" of a potential defect in your claim that could result in a denial if not corrected.

The eligibility criteria for MVF were established by the U.S. Department of Justice and are set forth on MVF's website with detailed explanations. As we have repeatedly described, in virtually all cases legal entities that held or managed funds on behalf of Madoff investors are **not** eligible claimants. Corporations, partnerships or financial intermediaries of all types are not eligible to recover from MVF even if such an entity held legal title to a Madoff investment, or was the registered holder of feeder fund shares or other indirect Madoff investments. <u>The investors whose money was actually stolen, not the vehicles through which they invested, are the eligible claimants for MVF.</u> To be eligible, a claimant must have suffered a loss of *their own personal funds* that were invested in Madoff Securities.

The distinction between banks and other investment entities which are **not** eligible, and their clients or underlying investors who are eligible, seems clear and simple to us. Nonetheless, MVF has received claims such as yours that appear to have been filed by an ineligible entity.

*Email: info@madoffvictimfund.com*                                                   *Phone: (866) 624-3670*



**SO ORDERED,**

Judge Edward Ellington
United States Bankruptcy Judge
Date Signed: April 17, 2014

The Order of the Court is set forth below. The docket reflects the date entered.

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  
ENERGETIC, INC.  
A/K/K LAMELLI LTD PARTNERSHIP  
(ALLEGED DEBTOR)

CHAPTER 11  
CASE NO. 1303787EE

### ORDER ON *ORDER TO SHOW CAUSE*

**THIS MATTER** came before the Court on April 16, 2014, on the *Order to Show Cause* (#13) why the above-styled involuntary petition should not be dismissed, or other actions taken, for the following reasons:

1. For failure of the petitioning creditor, Mr. Ellis, to serve the involuntary petition on the other general partner of the Alleged Debtor as required by Federal Rule of Bankruptcy Procedure 1004.

2. For failure of the petitioning creditor, Mr. Ellis, to cure the deficiencies contained in the *Notice – Action Required* issued to him on January 14, 2014.

3. For want of prosecution pursuant to 11 U.S.C. § 303(j)(3).

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

Lamar Ellis Trust
1372 Fern Lake Avenue
Brea, California 92821

Dear Lamar Ellis Trust:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 008118:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll* (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

# Gmail

## Dr Ellis Medallion signature guarantee

**Dennis Alexander** <dennisalexander261@hotmail.com>  Sat, Jun 14, 2014 at 9:45 AM
To: Dr Ellis <lamelli@verizon.net>, brooks <brooksphyllis8@gmail.com>

## Medallion signature guarantee

In the United States and Canada, a **medallion signature guarantee** is a special signature guarantee for the transfer of securities. It is a guarantee by the transferring financial institution that the signature is genuine and the financial institution accepts liability for any forgery. Signature guarantees protect shareholders by preventing unauthorized transfers and possible investor losses. They also limit the liability of the transfer agent who accepts the certificates.

Different institutions have different policies as to what type of identification they require to provide the guarantee and whether they charge a fee for such service (usually nominal if any). Most institutions will not guarantee a signature of someone who has not already been their customer.

A medallion signature guarantee is not the same as an acknowledgment by a notary public, in the sense that a "signature guarantee" is a certification by the institution that the signature is authentic, and an acknowledgment is a certification by a notary public attesting that the signer signed a document voluntarily.


Sample of a Medallion signature guarantee stamp

Some banks may no longer provide this service, however, many still do as well as other financial institutions such as a Savings and loan association (a thrift) and Credit Unions. At their sole discretion these institutions may provide the medallion signature guarantee stamp. These institutions would be able to provide clarification on their requirements for providing the stamp. Keep in mind that each of these institutions are different and may have different requirements for documentation necessary from one to the next; fees may apply.

When US citizens are abroad and unable to obtain a medallion signature guarantee stamp, with prior notice of the substitution some financial institutions may accept a United States embassy seal in its place. Financial institutions outside the United States and Canada which have a correspondence relationship with a US or Canadian bank may be able to offer a medallion signature guarantee to existing customers.[1]

## References [edit]

1. Jump up^ 1

1. "Signature Guarantees: Preventing the Unauthorized Transfer of Securities" . U.S. Securities and Exchange Commission. Retrieved 2009-11-17.
   - "U.S. Department of State telegram to all U.S. diplomatic and consular posts abroad concerning medallion stamp guarantees" . *Digest of International Law.* U.S. State Department. May 21, 2001. Retrieved 2009-11-17.
   - "Signature Guarantees: Preventing the Unauthorized Transfer of Securities" . U.S. Securities and Exchange Commission. Retrieved 2013-11-15.



U.S. Securities and Exchange Commission

[Go]

Search SEC Documents

Company Filings | More Search Options

Skip to Main Content

ABOUT    DIVISIONS    ENFORCEMENT    REGULATION    EDUCATION    FILINGS    NEWS

Investor Information

Investor Alerts and Bulletins

Fast Answers

Investor Reports/Publications

Tools and Calculators

Education Resources

Información en Español

Contact

## Signature Guarantees: Preventing the Unauthorized Transfer of Securities

If you hold securities in physical certificate form and want to transfer or sell them, you will need to sign the certificates or securities powers. You will probably need to get your signature "guaranteed" before a transfer agent will accept the transaction. Although it's an inconvenience to get your signature guaranteed, the process protects you by making it harder for people to take your money by forging your signature on your securities certificates or related documents. Transfer agents insist on signature guarantees because they limit their liability and losses if a signature turns out to be forged. One way to avoid having to get your signature guaranteed is to have your securities held in street name, meaning that your securities are held in the name of your brokerage firm instead of your name.

An investor can obtain a signature guarantee from a financial institution – such as a commercial bank, savings bank, credit union, or broker dealer – that participates in one of the Medallion signature guarantee programs. The three Medallion signature guarantee programs are the:

- Securities Transfer Agents Medallion Program (STAMP) whose participants include more than 7,000 U.S. and Canadian financial institutions.
- Stock Exchanges Medallion Program (SEMP) whose participants include the regional stock exchange member firms, and clearing and trust companies.
- New York Stock Exchange Medallion Signature Program (MSP) whose participants include NYSE member firms.

If a financial institution is not a member of a recognized Medallion Signature Guarantee Program, it would not be able to provide signature guarantees. Also, if you are not a customer of a participating financial institution, it is likely the financial institution will not guarantee your signature. Therefore, the best source of a Medallion Guarantee would be a bank, savings and

loan association, brokerage firm, or credit union with which you do business.

A Medallion imprint or stamp indicates that the financial institution is a member of a Medallion signature guarantee program and is an acceptable signature guarantor. By participating in the program, financial institutions can guarantee customer signatures with the assurance that their guarantees will be immediately accepted for processing by transfer agents.

Transfer agents can refuse to accept a signature guarantee from an institution that does not participate in the Medallion program or that is not recognized by the transfer agent. While guarantor firms can charge a fee for their services, they often don't and offer them as part of their customer services.

If you have general questions about Medallion signature guarantees or how the Medallion program works, you can send an email to Kemark Financial Services, Inc., the program administrator for STAMP and SEMP, at contactkfs@kemark.com. The SEC provides Kemark's email address for information purposes only. We cannot endorse any commercial entity, and we do not endorse or recommend any of its products or services. For specific questions about a security, the Shareholder Services Department of the company whose shares you own or its respective transfer agent may be best suited to assist you.

**Note to Overseas Investors** – You may be able to able to obtain a Medallion Guarantee from an overseas branch of a U.S. or Canadian bank, broker, or credit union with whom you do business. If you have been unable to obtain a Medallion Guarantee, you should contact the transfer agent or issuer (corporation) requiring the Medallion Guarantee for assistance.