**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Tracy Cole
Ona T. Wang

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE ESTATE (SUCCESSION) OF DORIS IGOIN; LAURENCE APFELBAUM, individually and in her capacities as executor and beneficiary of the Estate (Succession) of Doris Igoin; and EMILIE APFELBAUM,<br><br>Defendants. | Adv. Pro. No. 10-04336 (SMB) |

**TRUSTEE'S SUPPLEMENTAL REPLY IN FURTHER OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL**
**JURISDICTION AND FORUM NON CONVENIENS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    THE COURT HAS PERSONAL JURISDICTION OVER
        DEFENDANTS ........................................................................................................ 2

        A.    Defendants Ignore Black Letter Law, Including Decisions of this
            Court Exercising Personal Jurisdiction under Identical
            Circumstances ................................................................................................ 3

        B.    The Agreements' Lack of Choice of Law Clauses is Immaterial .............. 5

        C.    Defendants' Subjective Belief in Filing Their SIPA Claims is
            Irrelevant for Jurisdictional Purposes .......................................................... 7

        D.    Defendants' Mischaracterizations of the Record Are Irrelevant to
            the Jurisdictional Analysis ............................................................................ 8

    II.   THIS COURT IS THE PROPER FORUM FOR THE PARTIES'
        DISPUTE AND DISMISSAL FOR *FORUM NON CONVENIENS*
        REMAINS UNWARRANTED ........................................................................... 9

CONCLUSION ............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                          **Page(s)**

*Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan*,
    273 F.3d 241 (2d Cir. 2001) .................................................................................................. 10

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) .................................................................................................... 3

*Bluestone Capital Partners, L.P. v. MGR Funds Ltd.*,
    No. 98 CIV. 3128 (WHP), 1999 WL 322658, at *3 (S.D.N.Y. May 20, 1999) ....................... 4

*Cohmad Secs. Corp. (In re Bernard L. Madoff Inv. Secs. LLC)*,
    418 B.R. 75 (Bankr. S.D.N.Y. 2009) .................................................................................. 4, 5

*Cooper, Robertson & Partners, LLP v. Vail*,
    143 F. Supp. 2d 367 (S.D.N.Y. 2001) ..................................................................................... 6

*DiRienzo v. Phillip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002) ..................................................................................................... 11

*Iragorri v. United Technologies Corp.*,
    274 F.3d 65 (2d Cir. 2001) ..................................................................................................... 11

*Langenkamp v. C.A. Culp*,
    298 U.S. 42 (1990) ................................................................................................................... 7

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005) ............................................................................................ 10, 11

*In re Petrucci*,
    256 B.R. 704 (Bankr. D.N.J. 2001) ........................................................................................ 7

*Picard v. Bureau of Labor Ins. (In re: Bernard L. Madoff Inv. Secs. LLC)*,
    480 B.R. 501, 517 (Bankr S.D.N.Y. 2012) ........................................................................ 4, 5

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
    440 B.R. 274 (Bankr. S.D.N.Y. 2010) ................................................................................ 3, 4

*Picard v. Estate (Succession) of Doris Igoin, et al.*,
    Adv. Pro. No. 10-04336 (SMB) (Bankr. S.D.N.Y. entered Oct. 23, 2012) ....................... 9, 10

*Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*,
    460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) ........................................................................ 4, 6

*Picard v. Stahl (In re Bernard L. Madoff Inv. Secs. LLC)*,
    443 B.R. 295 (Bankr. S.D.N.Y. 2011) .................................................................................... 7

# TABLE OF AUTHORITIES
# (continued)

**Page(s)**

*Sunward Electronics, Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004) ................................................................................................... 5

*Zibiz Corp. v. FCN Tech. Solutions*,
  777 F. Supp. 2d 408 (E.D.N.Y. 2011) .................................................................................. 5

**Statutes**

15 U.S.C. § 78aaa, *et seq.* ........................................................................................................ 1

Irving H. Picard, as trustee ("Trustee") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa, *et seq.*, for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, hereby submits this supplemental reply in in further opposition to the motion to dismiss dated April 2, 2012 ("Motion" or "Mot.") by Laurence Apfelbaum ("Apfelbaum"), Emilie Apfelbaum ("Emilie") and the Estate (Succession) of Doris Igoin ("Estate," and collectively with Apfelbaum and Emilie, the "Apfelbaums" or "Defendants").

## **PRELIMINARY STATEMENT**

In this latest round of briefing on Defendants' Motion, Defendants do little more than repeat the same factual and legal assertions made in their initial briefing. Defendants do not deny any of the Trustee's factual allegations: that (among other things) Defendants opened multiple direct accounts with BLMIS in New York; actively managed their investments for the 13 years between 1995 and 2008, during which they repeatedly reaffirmed their decision to invest; withdrew millions of dollars from those accounts since 1995; personally requested Madoff to restructure their relationship so that they could continue investing in BLMIS; communicated regularly with BLMIS to request withdrawals, to direct the "sale" of securities and to discuss tax issues regarding those accounts; and filed SIPA claims requesting this Court to help them recover more than $458,000,000 from the BLMIS estate. It is thus undisputed that Defendants purposefully availed themselves of the privilege of conducting activities in the United States, subjecting them to the jurisdiction of this Court.

Instead, Defendants suggest that their French citizenship and an asserted lack of financial acumen should exempt them from the black letter law of personal jurisdiction. They ask this Court to ignore their admitted conduct with respect to the hundreds of millions of dollars they

concededly received from their own accounts, and instead focus on their denial of any knowledge of Magnify (and the millions of dollars that it received) before 2008. But even here, the fact remains that the *Magnify* defendants have contended – and produced documents in support – that Defendants were entitled to 50% of the returns from Magnify's BLMIS portfolio.

Defendants' primary argument appears to be that because they claim to lack knowledge of Magnify, this Court could not exercise personal jurisdiction over the Defendants based solely on the facts connected to the *Magnify* complaint. But, as the Trustee has demonstrated, the Defendants' contacts with BLMIS in the United States based on their family accounts alone, as alleged in the complaint against them and as further developed in jurisdictional discovery, are more than ample to confer jurisdiction.

Finally, Defendants' renewed arguments in favor of dismissal for *forum non conveniens*, which are beyond the scope of the current pleadings, must also fail. Not only do Defendants' own submissions indicate that the Trustee would be time-barred from instituting an action in France, Defendants have not provided any basis to ignore the substantial deference due to the Trustee's choice of his home forum or shown that private and public interest concerns favor an alternate forum. The parties' dispute is properly adjudicated before this Court.

## ARGUMENT

### I.      THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

As the Trustee's Supplemental Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Trustee's Memorandum" or "Trustee's Mem.") and the Trustee's prior pleadings in response to Defendants' Motion[1] make clear, Defendants are subject to the personal

---

[1] *See* Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens [Dkt. No. 30] ("Trustee's Opposition"); Surreply in Further Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens [Dkt. No. 43] ("Trustee's Surreply").

2

jurisdiction of this Court based on, among other things, their direct and active maintenance of multiple BLMIS accounts, receipt of millions of dollars in transfers from BLMIS, exchanging of numerous correspondence with BLMIS in New York, and their filing of SIPA claims. (Trustee's Mem. at 12-16). Defendants neither deny this conduct nor offer any explanation why such conduct does not subject them to this Court's jurisdiction.

### A. Defendants Ignore Black Letter Law, Including Decisions of this Court Exercising Personal Jurisdiction under Identical Circumstances

Defendants devote their entire "Argument" to downplaying their conceded contacts and conduct with regard to the United States (and New York in particular), and emphasizing their French citizenship, but fail to argue why those facts militate against a finding of personal jurisdiction. (Defendants' Jurisdictional Memorandum of Law in Further Support of Defendants' Motion to Dismiss at 11-22 ("Defendants' Memorandum" or "Defs. Mem.")). Personal jurisdiction in bankruptcy cases exists where defendants possessed sufficient minimum contacts with the United States—that is, they "purposefully availed themselves of the privilege of conducting activities in the [United States], thus invoking the benefits and protections of its laws such that the defendant[s] should reasonably anticipate being haled into court there." *Best Van Lines*, *Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (internal citations and quotations omitted); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 279 (Bankr. S.D.N.Y. 2010) ("*Chais*"). Defendants make virtually no attempt to show that their conduct fails to meet this standard. For example:

> *(i)* Defendants note that Apfelbaum is a psychologist and Emilie is an art gallery worker, both of whom have always lived and worked in France. (Defs. Mem. at 11-12). Yet they fail to cite a single case holding that a defendant's residence and place of employment abroad negates jurisdiction. To the contrary, this Court has recognized that "the defendant need not have physically entered the forum" for personal jurisdiction to exist. *Chais*, 440 B.R. at 279.

3

> *(ii)* Apfelbaum testified she knew nothing about Albert Igoin's business activities (including his BLMIS investments) until after he died in 1995. (Defs. Mem. at 12-14). Yet Defendants fail to suggest why their ignorance of the accounts' origin is relevant, particularly given their continued knowing investment with BLMIS and Apfelbaum's active management of the BLMIS accounts for the next 13 years, including revisiting and reaffirming the decision to continue investing with BLMIS on at least three separate occasions after Igoin's death. (Trustee's Mem. at 2); *see also Picard v. Bureau of Labor Ins. (In re: Bernard L. Madoff Inv. Secs. LLC)*, 480 B.R. 501, 517 (Bankr S.D.N.Y. 2012) ("*BLI*") (*prima facie* case of personal jurisdiction established where the defendant "invested tens of millions of dollars in [a BLMIS feeder fund] with the specific purpose of having funds invested in BLMIS in New York, and intended to profit from this U.S.-based investment.").
>
> *(iii)* Apfelbaum testified that she convinced her mother Doris to forgo her usufruct rights on Apfelbaum's and Emilie's shares of their inheritance from Albert Igoin, including his BLMIS assets. (Defs. Mem. at 14-15). But this fact supports, not negates, personal jurisdiction: Defendants concede that by waiving her usufruct, Doris allowed Apfelbaum to assume "full ownership" and "more control" over the assets, which Apfelbaum and Emilie "inherited directly." (*Id.*). This is precisely the type of purposeful and direct ownership of bank accounts that courts have held suffices for personal jurisdiction. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) ("*Maxam*") (finding that as a result of the defendant's maintaining a BLMIS account and "directing investments to the United States, the Court cannot escape the conclusion that it has specific jurisdiction over [the defendant]"); *see also Bluestone Capital Partners, L.P. v. MGR Funds Ltd.*, No. 98 CIV. 3128 (WHP), 1999 WL 322658, at *3 (S.D.N.Y. May 20, 1999) ("It is well-settled that . . . a non-domiciliary's contacts with New York are sufficient to confer jurisdiction when it maintains an ongoing investment account in New York and conducts securities transactions through such an account.").

This Court has already subjected other BLMIS accountholders to personal jurisdiction under more attenuated circumstances than those found here. *See Cohmad Secs. Corp. (In re Bernard L. Madoff Inv. Secs. LLC)*, 418 B.R. 75 (Bankr. S.D.N.Y. 2009) ("*Cohmad*"); *Chais*, 440 B.R. at 280; *Maxam*, 460 B.R. at 117. Defendants' factual recitation therefore is unavailing. Even Defendants' view—which ignores both the connection to *Magnify* and the decades of investment in BLMIS before Igoin's death[2]—demonstrates more than a decade of deliberate and purposeful availment of the United States resulting in the benefit of hundreds of millions of dollars.

---

[2] Apfelbaum is the only child of Albert and Doris Igoin, and Defendant Emilie Apfelbaum is Albert and Doris Igoin's only grandchild. Albert Igoin was the founder of Magnify, and the *Magnify* defendants have asserted

4

### B. The Agreements' Lack of Choice of Law Clauses is Immaterial

The Apfelbaums' "special" account agreements ("Agreements"), *see* Defs. Mem. at 17, only serve to reaffirm Defendants' purposeful availment of the benefits and protections of the United States. That the Agreements were signed in France and do not contain a choice of law provision is of no moment. As Apfelbaum testified, the reason they were executed in France is that she asked Madoff to travel there to create a special account structure to allow them to maintain their investment in BLMIS, Apf. Dep. 174:7-21—evidence that supports, not negates, the jurisdiction of this Court. Defendants' attempt to distinguish the Agreements from the investment agreements at issue in *Cohmad* is also unavailing. The *Cohmad* Court found that it had personal jurisdiction because the defendants, like the Defendants here, "personally and continuously sent correspondence to the United States to direct transfers and withdrawals" from BLMIS. *Cohmad*, 418 B.R. at 81. Consistent with other authority, and contrary to Defendants' argument, the Court did not consider the choice of law clause in *Cohmad* to be a dispositive factor in its analysis. *See, e.g.*, *BLI*, 480 B.R. at 516 (the choice of law specified in the agreement is not always dispositive as to personal jurisdiction) (citing *Zibiz Corp. v. FCN Tech. Solutions*, 777 F. Supp. 2d 408, 421 (E.D.N.Y. 2011)).

The *reason* choice of law clauses bear on personal jurisdiction is because they evince the investor's purposeful availment of the benefits of conducting activities in the United States. *See Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law."). Here, the Agreements' specific language—that Apfelbaum "wishes to make certain securities investments through Madoff" and

---

Laurence and Emilie Apfelbaum were entitled to half of the returns from Magnify's BLMIS portfolio. *See* Trustee's Mem. at 5.

5

that Madoff was to "invest funds in securities listed on the United States stock market . . . on the client's behalf," Apf. Dep. Exs. 24-25—directly supports personal jurisdiction. *See BLI*, 408 B.R. at 517 (holding that foreign defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in [a BLMIS feeder fund] would be transferred to BLMIS in New York to be invested in the New York securities market.").

Defendants' arguments that the Agreements were executed in France[3] or lacked "technical contractual provisions" featured on standard BLMIS customer agreements, *see* Defs. Mem. at 17, are similarly unavailing. Courts have explicitly held that "[i]n determining jurisdiction, the place of performance is more critical than the place of the execution of a contract." *Cooper, Robertson & Partners, LLP v. Vail*, 143 F. Supp. 2d 367, 371 (S.D.N.Y. 2001); *Maxam*, 460 B.R. at 117 ("The defendant's activity need not have taken place within the forum, and a single transaction with the forum will suffice."). Here, there is no dispute that the Agreements were performed by BLMIS in New York. Moreover, the Agreements' "special" nature, *see* Defs. Mem. at 17, evinces the heightened degree of deliberation and foresight involved in the Agreements' drafting and execution, and reveals Defendants' unmistakable intention to avail themselves of the privilege of investing with BLMIS in New York.

---

[3] Defendants seem to suggest that Madoff travelled to France of his own accord and pressured Apfelbaum into signing the Agreements on her and Emilie's behalves. (*See* Defs. Mem. at 14 (stating that "Madoff traveled to France to convince Laurence Apfelbaum and the French Guardianship Judge overseeing Emilie Apfelbaum's inheritance to invest with BLMIS")). In fact, Apfelbaum's testimony suggests the exact opposite—*i.e.*, that Apfelbaum persuaded Madoff to come to Paris and agree to reimburse Emilie for any losses over 5%, as a condition to the Apfelbaums remaining invested with BLMIS. (*See, e.g.*, Apf. Dep. 174:7-21 ("That's why we asked Madoff to come to Paris, so that he could be part of a discussion and provide some guarantees. . . . If Madoff hadn't consented to do that, provide his guarantee, we would have had to invest somewhere else.").

6

### C. Defendants' Subjective Belief in Filing Their SIPA Claims is Irrelevant for Jurisdictional Purposes

Defendants continue to assert that they lacked understanding of the consequences of filing their SIPA claims. This Court already has determined that, as in an ordinary bankruptcy proceeding, the filing of a customer claim submits the claimant to the bankruptcy court's jurisdiction. *Picard v. Stahl (In re Bernard L. Madoff Inv. Secs. LLC)*, 443 B.R. 295, 310 (Bankr. S.D.N.Y. 2011); *see also* Trustee's Opposition at 8-12. Defendants offer no authority supporting any other conclusion. The only case they proffer is *In re Petrucci*, 256 B.R. 704, 706 (Bankr. D.N.J. 2001), which does not stand for the proposition that "[a]n informal SIPA proof of claim will only lead to jurisdiction where 'its allowance is equitable based on the facts of the case.'" (Defs. Mem. at 10). Instead, that case addressed whether an adversary complaint had satisfied the elements of a valid informal proof of claim in a bankruptcy proceeding and had nothing to do either with personal jurisdiction or SIPA.[4]

Defendants admit to filing SIPA claims after receiving documentation explicitly referencing the liquidation proceeding which appointed the Trustee to administer SIPA claims for BLMIS customers. (Apf. Dep. 48:22-49:13; 57:7-58:19; Apf. Dep. Exs. 9-10). Having sought assistance from this Court and "trigger[ing] the process of 'allowance and disallowance of claims,'" Defendants have chosen to submit to this Court's jurisdiction for purposes of the claims allowance process, including actions brought by the Trustee. *Langenkamp v. C.A. Culp*, 298 U.S. 42, 42 (1990).

---

[4] Defendants' argument that jurisdiction should exist only if a claim form contains a warning of the jurisdictional consequences of filing lacks any basis in law or, given that no such warning exists in an ordinary bankruptcy proof of claim form, basis in fact. *See* Trustee's Opposition at 10-12.

7

### D. Defendants' Mischaracterizations of the Record Are Irrelevant to the Jurisdictional Analysis

The frequency and extent of Apfelbaum's admitted communications with BLMIS in New York over more than a decade would alone serve as an independent basis for personal jurisdiction. Yet Defendants attempt to minimize Apfelbaum's conduct, and mischaracterize her testimony in the process. Apfelbaum testified that she contacted BLMIS employee Frank DiPascali by phone and/or in writing twice a year, over the years, to request withdrawals for the purpose of paying certain French taxes. (Apf. Dep. 153:25-155:8). Separately, Apfelbaum regularly and frequently monitored Defendants' statements to ensure that DiPascali "sold" Apfelbaum's Treasury bills prior to maturity, and she would contact DiPascali on those occasions when it appeared he had not done so. (*Id.*). Even assuming that Defendants' assertion that Apfelbaum "only contacted [DiPascali] on those occasions that Treasury bills listed on her statements appeared to be nearing maturity," Defs. Mem. at 19, would help their case, it is simply not supported by the record.[5]

Similarly, because withdrawals from the accounts – regardless of their purpose – subject Defendants to personal jurisdiction, Defendants' characterization of the purpose of those withdrawals is irrelevant. Nonetheless, their assertion that "the facts are unrebutted that Emilie Apfelbaum only withdrew monies from her BLMIS account in order to pay French wealth taxes" Def. Mem. at 22 (citing Apf. Dep. 104:18-105:6; 228:8-12), is inaccurate.[6] Although Defendants

---

[5] Defendants also mischaracterize the Trustee's argument regarding Apfelbaum's correspondence "suggesting [to BLMIS] her own formula for implementing a tax-cutting trading strategy for her daughter Emilie's account." (Trustee's Opposition at 2). Defendants' Memorandum erroneously states that "[t]he Trustee . . . claimed that Laurence Apfelbaum 'implement[ed] a tax-cutting trading strategy.'" (Defs. Mem. at 3). The Trustee makes no such allegation; rather, the undisputed facts demonstrate that she helped formulate the strategy and presented it to Madoff as a possible means of reducing Emilie's tax liability. (Apf. Dep. 215:11-21).

[6] Even the selectively cited passages of Apfelbaum's testimony do not support their assertion. Apfelbaum testified simply that the 1999 wealth tax would be taken out of both Apfelbaum's and Emilie's BLMIS accounts, Apf. Dep. 104:18, and that, generally, there were "duties" that Apfelbaum and Emilie had to pay based on their inheritance.

8

have invoked the "French Blocking Statute" to withhold much financial information (including any testimony as to financial figures), that could allow the Trustee to quantify the amount of taxes paid, Apfelbaum's testimony makes clear that they in fact withdrew substantial funds from Emilie's account to purchase French Treasury bills on Emilie's behalf. (*See* Apf. Dep. 96:16-102:23 (refusing to testify as to figures based on the French blocking statute); Apf. Dep. 80:2-24).

Crucially, despite their mischaracterization of the record, Defendants do not dispute the facts subjecting them to jurisdiction including their active management of and knowing receipt of transfers from their BLMIS accounts over a period spanning more than a decade, and their filing of a SIPA claim with this Court.

## II. THIS COURT IS THE PROPER FORUM FOR THE PARTIES' DISPUTE AND DISMISSAL FOR *FORUM NON CONVENIENS* REMAINS UNWARRANTED

As an initial matter, Defendants' renewed arguments in favor of dismissal based on the doctrine of *forum non conveniens* are improper. Judge Lifland neither ordered discovery as to this issue nor invited further inquiry as to the propriety of this forum. *See* Minute Order, *Picard v. Estate (Succession) of Doris Igoin, et al.*, Adv. Pro. No. 10-04336 (SMB) (Bankr. S.D.N.Y. entered Oct. 23, 2012) [Dkt. No. 45]. Nor did the parties agree to further briefing on this issue. *See* Stipulation and Order Setting Briefing Schedule, *Picard v. Estate (Succession) of Doris Igoin, et al.*, Adv. Pro. No. 10-04336 (SMB) (Bankr. S.D.N.Y. entered May 7, 2014) [Dkt. No. 85] at 2 ("WHEREAS, the parties have agreed on a schedule for supplemental briefing on the issue of personal jurisdiction. . ."). In fact, the parties' stipulation was explicitly limited to additional briefing regarding personal jurisdiction in the wake of jurisdictional discovery over

---

(Apf. Dep. 228:8). Neither of these passages establishes that all of the $15,456,814 withdrawn from Emilie's BLMIS account went to pay taxes.

9

the Defendants. *Id*. at 3 ("The parties shall each submit a supplemental brief in further support of their positions regarding personal jurisdiction . . ."). Hence, this Court should disregard Defendants' most recent submissions regarding *forum non conveniens* as beyond the scope of the pleadings currently before the Court.

However, even if this Court were to consider Defendants' additional arguments, Defendants still have not met their burden to demonstrate that this Court is not the appropriate forum for the parties' dispute. *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan,* 273 F.3d 241, 245 (2d Cir. 2001) ("The defendant bears the burden of proof on all elements of the motion . . ."). As the Trustee has established,[7] Defendants have failed to make a sufficient showing under the Second Circuit's three-prong analysis to merit dismissal for *forum non conveniens*. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). First, according to Defendants' own submissions regarding applicable French law, the Trustee is now time-barred from bringing claims against Defendants in France. *See* Reply Declaration of Bruno Quint, *Picard v. Estate (Succession) of Doris Igoin, et al.*, Adv. Pro. No. 10-04336 (SMB) (Bankr. S.D.N.Y. filed Sept. 5, 2012) [Dkt. No. 36], at ¶ 10 ("The statute of limitations in France for civil claims is five years from the date when the Madoff fraud has been discovered," *i.e.* December 2013). If, as Defendants attest, the French courts are now unable to hear this dispute, France is not an adequate alternate forum. *Norex*, 416 F. 3d at 159 ("'[A]n adequate forum does not exist if a statute of limitations bars the bringing of [a] case' in a foreign forum that would be timely in the United States") (quoting *Bank of Credit,* 273 F.3d at 246). Defendants' Motion should fail on this basis alone.

---

[7] The Trustee's arguments in response to Defendants' request for dismissal for *forum non conveniens* are set forth in detail in the Trustee's Opposition, at 19-31, and Trustee's Surreply, at 7-11. Because Defendants' arguments are outside the scope of the current briefing, the Trustee will not repeat his own arguments regarding *forum non conveniens* at length here, but hereby incorporates the arguments set forth in his prior responses to Defendants' Memorandum.

10

Second, even if France were still potentially available to adjudicate this dispute, Defendants have not overcome the substantial deference that must be given to the Trustee's choice of his home forum. *Norex*, 416 F. 3d at 154. Contrary to Defendants' characterization, Defendants themselves sought international business and invoked the current forum by repeatedly and affirmatively electing to invest in the United States. (Apf. Dep. 84:8-17; 174:7-21; 181:2-25; 185:3-21; Apf. Dep. Ex. 11). That the Trustee has been forced to retain counsel in foreign nations to redress Madoff's worldwide fraud does not lessen the deference the Trustee's forum selection should receive. Furthermore, not only have Defendants failed to show that relevant private and public interest concerns favor an alternate forum, their analysis confirms that these factors favor adjudication in the United States. *See DiRienzo v. Phillip Servs. Corp.*, 294 F.3d 21, 29-31 (2d Cir. 2002) (outlining private and public interest factors). Defendants' proffered witnesses and evidence located in France regarding the circumstances of their contracts with BLMIS are irrelevant to adjudication of avoidance claims based on Defendants' good faith receipt of fictitious profits from a Ponzi scheme. Where Defendants do not dispute receiving funds from BLMIS and the proof of the Ponzi scheme is located in New York, the relevant public and private interests in continued litigation in the current forum outweigh any practical difficulties or potential legal impediments Defendants may face in litigating in the United States.

Here, the balance of equities in terms of forum selection is not "strongly in favor of the defendant[s]," *see Norex*, 416 F.3d at 154, but rather markedly against them. This Court is not only the best forum for the instant dispute, but evidently the *only* viable forum proposed by any party. This dispute, along with the core BLMIS bankruptcy proceeding and the hundreds of related adversary proceedings currently pending before this Court, has a "bona fide connection to

11

the United States and the forum of choice" and the Trustee's choice of forum should not be disturbed. *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court deny Defendants' Motion to dismiss for lack of personal jurisdiction and *forum non conveniens*.

Date:  July 18, 2014
       New York, New York

By: */s/* Ona T. Wang
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Tracy Cole
Email: tcole@bakerlaw.com
Ona T. Wang
Email: owang@bakerlaw.com
M. Elizabeth Howe
Email: bhowe@bakerlaw.com
David M. McMillan
Email: dmcmillan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

12