**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman
Lance Gotthoffer
Peter W. Smith
Julie Gorchkova
45 Broadway, 8th Floor
New York, New York 10006
(212) 599-3322
*Attorneys for Defendants Susanne Stone Marshall,*
*Adele Fox, Marsha Peshkin, and Russell Oasis (the "Fox*
*Plaintiffs")*

**Opposition Deadline:**
August 8, 2014

**Reply Deadline:**
August 15, 2014

**Hearing Date / Time:**
August ____, 2014, at 10 A.M.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br>-against-<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF, | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br>Plaintiff,<br>CAPITAL GROWTH COMPANY, *et als,*<br>Intervenors,<br><br><br>-against-<br>SUSANNE STONE MARSHALL, *et als,*<br>Defendants. | Adv. Pro. No. 14-01840 (SMB) |

**FOX PLAINTIFFS' MOTION FOR AN ORDER: (i) AUTHORIZING
DISCOVERY FROM THE TRUSTEE, APRIL FRIELICH, BARBARA
PICOWER, AND BERNARD MADOFF PURSUANT TO FRBP 2004, AND
AUTHORIZING THE DEPOSITION OF MADOFF TO PRESERVE
TESTIMONY PURSUANT FRCP 27; (ii) AUTHORIZING THE DEPOSITION
OF MADOFF PURSUANT TO FRCP 30(a)(2)(B); AND (iii) DIRECTING THE
SEQUENCE OF DISCOVERY PURSUANT TO FRCP 26**

{N0051067 14 }

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ........................................................................... 1

FACTS & PROCEDURAL HISTORY .................................................................. 5

ARGUMENT ........................................................................................................ 6

A.    Good Cause Exists for Discovery under Rule 2004 ...................................... 6

B.    The Fox Plaintiffs Should Be Permitted to Preserve Madoff's
Testimony Pursuant to FRCP 27 ................................................................. 13

C.    The Fox Plaintiffs Should Be Granted Leave to Take Madoff's
Deposition pursuant to Rule 30(a)(2)(B). .................................................. 15

CONCLUSION ..................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 1999 WL 47223 (S.D.N.Y. Feb. 3, 1999)................................................................................................12

*Adelphia Recovery Trust v. Goldman Sachs & Co.*, 748 F.3d 110 (2d Cir. 2014) ...................................................................................................... 8

*In re AMR Corp.,* 508 B.R. 296 (Bankr. S.D.N.Y. 2014) ................................... 7

*In re Bennett Funding Group, Inc.,* 203 B.R. 24 (Bankr. N.D.N.Y. 1996)......................... 9

*Chereton v. United States*, 286 F.2d 409 (6th Cir. 1961) ................................. 7

*In re CIS Corp.*, 123 B.R. 488, 490 (S.D.N.Y. 1991) ......................................... 8

*Clark v. Dunlap*, 2014 WL 1089559 (D. Colo. Mar. 19, 2014) ..........................................15

*Petition of Delta Quarries and Disposal, Inc.,* 139 F.R.D. 68 (M.D. Pa. 1991) ..................................................................................................15

*In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702 (Bankr. S.D.N.Y. 1991) ..................................................................................... 8

*In re Ecam Publ'ns, Inc.*, 131 B.R. 556 (Bankr. S.D.N.Y. 1991) ......................................... 7

*In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002) .................................. 7

*In re Federated Department Stores, Inc.*, 114 B.R. 501 (Bankr. S.D Ohio 1990) ....................................................................................................... 8

*In re Foerst*, 93 F.3d 190 (S.D.N.Y. 1999) ........................................................ 7

*Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738 (1975) ...................................12

*Houghtaling v. Tirado-Montes*, 2008 WL 2385511 (M.D. Fla. June 9, 2008)........................................................................................................ 16

*Jackson v. Good Shepherd Servs.*, 683 F. Supp. 2d 290 (S.D.N.Y. 2009) .................13, 14

*Jesup, Josephthal & Co., Inc. v. Piguet & Cie*, 1991 WL 168053 (S.D.N.Y. Aug. 22, 1991)........................................................................................12

*In re Johns-Manville Corp.,* 42 B.R. 362, 364 (S.D.N.Y. 1984) ..........................................8

*In re Larkham,* 24 B.R. 70 (Bankr. D. Vt. 1982) ................................................................. 9

*In re Legg Mason Inv. Counsel & Trust Co., N.A.,* 2011 WL 1533165
(S.D.N.Y. Apr. 19, 2011) .................................................................................... 14

*In re Madison Williams and Company, LLC,* (Bankr. S.D.N.Y. Jan. 7,
2014) ........................................................................................................... 9, 10, 11

*Marshall v. Picard,* 740 F.3d 81 (2d Cir. 2014) ................................................................. 2

*Marshall v. Picower,* 10-80252-CV-KLR, (S.D. Fla. Feb. 5, 2014) ................................... 5

*In re Meticom, Inc.,* 318 B.R. 263 (S.D.N.Y. 2004) ........................................................... 9

*In re Mittco, Inc.,* 44 B.R. 35 (Bankr. E.D. Wis. 1984) ...................................................... 8

*New Hampshire v. Maine,* 532 U.S. 742 (2001) ................................................................. 7

*PegaSync Technologies, Inc. v. Patros,* 2014 WL 2763620 (E.D. Mich.
June 18, 2014) .................................................................................................... 15

*Poller v. Columbia Broadcasting,* 368 U.S. 464 (1962) ................................................... 12

*In re Recoton Corp.,* 307 B.R. 751 (Bankr. S.D.N.Y. 2004) .............................................. 9

*Richardson Greenshield Sec., Inc. v. Lau,* 825 F.2d 647 (2d Cir. 1987) ........................ 13

*Petition of Rosario,* 109 F.R.D. 368 (D. Mass. 1986) ...................................................... 15

*Sachs v. Hadden,* 173 F.2d 929 (2d Cir. 1949) .................................................................. 7

*In re Table Talk, Inc.,* 51 B.R. 143 (Bankr. D. Mass. 1985 .............................................. 8

*Tammac Corp. v. Williams,* 1993 WL 330639 (W.D.N.Y. Aug. 13, 1993) ...................... 12

*In re Texaco, Inc.,* 79 B.R. 551 (Bankr. S.D.N.Y. 1987) ................................................... 7

*United States v. Van Rossem,* 180 F.R.D. 245 (W.D.N.Y. 1998) ............................... 13, 14

*Williams v. Greenlee,* 210 F.R.D. 577 (N.D.Tex. 2002). ................................................. 16

## Statutes & Rules

11 U.S.C. § 107(a) ................................................................................................................ 3

15 U.S.C. § 78fff-1(d)(1) ..................................................................................................... 3

15 U.S.C. § 78kkk(a) ............................................................................................................ 3

FRBP 2004(a) .............................................................................................................. *passim*

FRCP 26 .................................................................................................................... 1, 6, 16

FRCP 27 ........................................................................................................... *passim*

FRCP 30(a)(2)(B) ...............................................................................................1, 6, 15, 16

Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* ............................... 3

**Other Authorities**

6 MOORE'S FEDERAL PRACTICE - Civil § 27.13[1] (Matthew Bender & Co.
2014) ................................................................................................................14, 16

http://newyork.cbslocal.com/2014/01/22/report-madoff-battling-cancer-
recovering-from-heart-attack/ ..................................................................................... 14

http://www.scribd.com/doc/45508766/Statement-of-Barbara-Picower-
widow-of-Jeffry-M-Picower ........................................................................................11

*Joseph Ax, Madoff suffered heart attack last month: CNBC reports*,
REUTERS (Jan. 22, 2014, 12:33 PM) .............................................................. 14

*Report: Madoff Battling Cancer, Recovering From Heart Attack*, CBS
NEW YORK ................................................................................................................ 14

Defendants Susanne Stone Marshall, Adele Fox, Marsha Peshkin, and Russell Oasis (the "Fox Plaintiffs") move this Court for entry of an order permitting discovery from Irving H. Picard, trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), Bernard L. Madoff, Barbara Picower, Jeffry Picower's wife, and April Freilich, the chief financial officer of the Picower Defendants during the years of the alleged conspiracy.  Specifically, the Fox Plaintiffs seek an order: (i) compelling the Trustee to produce documents pursuant to FRBP 2004; (ii) authorizing the issuance of a subpoena *duces tecum* for deposition and documents of April Friehlich pursuant to FRBP 2004; (iii) authorizing the issuance of a subpoena *duces tecum* for deposition and documents of Barbara Picower pursuant to FRBP 2004; (iv) authorizing the issuance of a subpoena *duces tecum* for deposition of Bernard L. Madoff in prison, pursuant to FRCP 30(a)(2)(B) and FRBP 2004, or alternatively pursuant to FRCP 27(a) or (b); and (v) directing the timing and sequence of discovery pursuant to FRCP 26(d).  Federal Rules 26, 27, and 30 are applicable to this proceeding pursuant to the corresponding Federal Rule of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

The Picower Defendants were clearly Madoff's co-conspirators and the largest beneficiaries of the Madoff fraud, having reaped the spoils of Madoff's crimes to the extent of over \$7.2 billion paid to them over a 25-year period.[1] Jeffry Picower conspired with Madoff to perpetrate a massive investment fraud on the Fox Plaintiffs, and other BLMIS customers, through a scheme whereby Picower and the rest of the Picower affili-

---

[1] The Picower Defendants "withdrew more of other investors' money that any other customer of BLMIS[.]" Trustee's Mem. of Law in Opp, to Picower Defendants' Motion to Dismiss, *Picard v. Picower*, Adv. Pro. No. 09-1197 (Bankr. S.D.N.Y. 2009) (ECF Doc. No. 11 at 2).

ated entities were able to realize unprecedented returns on their money by, *inter alia*, exercising control over BLMIS.

While undoubtedly $7.2 billion is a lot of money, the Picowers were able to settle for the net amount they took out of Madoff's operations over a 25-year period, with no accounting for profits.  If the money had simply been invested in U.S. Treasury Notes, it would have tripled in value over 25 years.  Hence, there is a compelling interest in allowing Madoff's and Picower's victims to recover from the Picower Defendants.

The Second Circuit has determined that the Fox Plaintiffs have potential conspiracy claims against the Picowers so long as those claims do not duplicate or derive from the claims that the Trustee settled with the Picowers.[2] In its recent decision holding that the Fox Plaintiffs' proposed amended complaint violated a permanent injunction that bars derivative claims against the Picower Defendants, this Court determined that the Fox Plaintiffs' control-person allegations were not sufficiently detailed, but expressly declined to enjoin the Fox Plaintiffs from proceeding with another BLIMIS related action against the Picower Defendants.[3]

The documentary evidence about the Madoff-Picower conspiracy (the "Conspiracy") and the Picower Defendants' control of Madoff and BLMIS are within the exclusive control of a very small number of people: Madoff, Mrs. Picower, April Friehlich (Picower's long-time chief financial officer), and the Trustee who, with the benefit of unfettered access to Madoff's and BLMIS' records, investigated the relationship between Madoff

---

[2] *Marshall v. Picard*, 740 F.3d 81, 94 (2d Cir. 2014) ("There is conceivably some particularized conspiracy claim appellants could assert that would not be derivative of those asserted by the Trustee[.]" )

[3] ECF Doc. # 50 at 29-30.

and Picower before filing an eleven-count, 134 paragraph, 40-page adversary complaint against the Picower Defendants.[4]

Picower is dead.  Madoff is 75 years old and battling cancer in prison.  The importance of his testimony to the allegations against the Picower Defendants cannot be overstated.

The Trustee has resisted all efforts by creditors and interested parties to obtain information about his investigation of Madoff and BLMIS which includes substantial documents and other information about the Picower-Madoff relationship.  By so doing, the Trustee has disregarded and breached his fiduciary to apprise parties in interest of his investigation into the BLMIS fraud pursuant to the Code as well as pursuant to specific provisions of the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.*, including 15 U.S.C. § 78kkk(a), 11 U.S.C. § 107(a), 15 U.S.C. § 78fff-1(d)(1).[5]

The documents sought are not only important for the Fox Plaintiffs in drafting more particularized allegations, but they will be essential for any meaningful deposition of Madoff, and they are not available from any other source.  An order compelling the Trustee to produce all documents in his possession or control relating to Madoff and Picower is therefore necessary to protect the interests of all estate creditors.

Mrs. Picower and Ms. Freilich are within the tiny universe of people, other than the Trustee and Madoff, who have specific and detailed knowledge of the Conspiracy, given their intimate and longstanding relationship with Jeffry Picower.  An order granting the Fox Plaintiffs permission to issue subpoena to Mrs. Picower and Ms. Freilich is

---

[4] *Picard v. Picower*, Adv. Pro. No. 09-01197, ECF No. 1 (Bankr. S.D.N.Y.) .

[5] *SIPC v BLMIS* (Adv. Pro. No. 08-01789) (BRL) (ECF Doc. ##4045, *et seq.*).

necessary because it is anticipated that they will claim protection under the Trustee's settlement agreement with the Picower Defendants and the permanent injunction.

Sufficient cause therefore exists for an order granting the Fox Plaintiffs permission to take discovery pursuant to Rule 2004 to obtain evidence necessary to allege the specific and particular facts the Court found wanting concerning the Conspiracy and the Picower Defendants' control of BLMIS. Additionally, given Madoff's age and health, and the indisputable importance of his testimony — and the fact that now, some five years after his arrest he still has not given any sworn testimony respecting the massive fraud he perpetrated – the Court should permit the Fox Plaintiffs to take Madoff's deposition pursuant to Rule 27 of the Federal Rules of Civil Procedure.

In addition to the legal grounds that warrant the grant of this motion, there are compelling equitable and policy considerations supporting it as well. Denying this motion allows the Picower Defendants – whose conduct was just as criminal as Madoff's – to continue to escape liability for their role in the largest financial fraud in history without every having to answer a single allegation on the merits for claims that are completely independent of the claims they settled with the Trustee.[6] Because the facts are in the hands of the alleged wrongdoers, discovery is necessary and appropriate to permit the Fox Plaintiffs to show that their control-person claims do not duplicate or derive from any claims barred by the Permanent Injunction.

---

[6] While the Trustee objects to Picower being referred to as a criminal, it is difficult to find a more fitting word for a Madoff customer who demanded and received 700% returns in his account – according to the Trustee's own allegations.

## FACTS & PROCEDURAL HISTORY

1.      On February 5, 2014, the Fox Plaintiffs filed a motion for leave to file a proposed second amended complaint in the United States District Court for the Southern District of Florida.[7]

2.      On March 11, 2014, the Trustee commenced this adversary proceeding and filed a motion to enforce a January 11, 2011 permanent injunction (the "Permanent Injunction" and the "Enforcement Motion").  (ECF Doc. #3.) The relevant facts and procedural history are set forth in the Fox Plaintiffs' papers submitted in opposition to the Enforcement Motion.  (ECF Doc. ##22 at 3, 23.) They are incorporated by reference and will not be repeated here.

3.      On June 23, 2014, the Court granted the Enforcement Motion (the "Decision").  (ECF Doc. #50.) The Court determined that the Fox Plaintiffs' proposed second amended complaint ("PSAC") lacked particularized allegations concerning the Picower Defendants' participation in the fraud and their control of BLMIS by, *inter alia*, soliciting investors and causing BLMIS to solicit additional investors.  (ECF Doc. #50 at 29-30.) The Court, however, declined the Trustee's request to enjoin the Fox Plaintiffs from bringing another action against the Picower Defendants.  (*Id.* at 31.)

4.      By letter dated, June 27, 2014, the Fox Plaintiffs wrote to the Court requesting expedited discovery and sought a conference pursuant to the Local Rules and the Court's individual rules.  (ECF Doc. #52.) As explained in that letter, the Fox Plaintiffs sought discovery to obtain facts needed to craft an amended complaint containing the particularized allegations against the Picower Defendants that the Court found lacking.

---

[7] *Marshall v. Picower*, 10-80252-CV-KLR, (S.D. Fla. Feb. 5, 2014) (ECF Doc. # 28.)

5.      On June 30, 2014, the Picower Defendants and the Trustee submitted letters opposing the Fox Plaintiffs' request.  (ECF Doc. ##53 and 54.)

6.      On July 2, 2014, the Court, noting that it does not grant contested relief based on letter applications, denied the Fox Plaintiffs' request for discovery without prejudice to the filing of this motion.  (ECF Doc.  #55 ("The foregoing is without prejudice to the Fox Plaintiffs' right to make formal application for the relief they seek in accordance with applicable law and rules.").)

7.      On July 14, 2014, the Fox Plaintiffs filed a notice of appeal of the Decision. (ECF Doc. #62.)

8.      This adversary proceeding remains open, and the Fox Plaintiffs make this application pursuant to the Court's instruction to do so by way of formal application. (ECF Doc. #55.) In their letters submitted in response to the Fox Plaintiffs' letter request for discovery (ECF Doc. ##53, 54), the Picower Defendants and the Trustee indicated opposition to the discovery being sought herein.  Because of this, and the fact the Fox Plaintiffs must obtain permission to take Madoff's deposition in prison pursuant to FRCP 30(a)(2)(B), the Fox Plaintiffs seeks a single order regarding the discovery from Madoff, as well as Ms. Freilich, Ms. Picower and the Trustee, rather than waiting for the inevitable motion to quash and/or for a protective order.  A single motion and order determining all of the Fox Plaintiffs' discovery requests saves time and promotes judicial economy, and is therefore appropriate pursuant to FRCP 26.

## ARGUMENT

### A.    Good Cause Exists for Discovery under Rule 2004.

9.      Bankruptcy Rule 2004(a) authorizes a bankruptcy court, upon a motion of an interested party, to order the examination of <u>any entity</u> regarding the acts, conduct,

property, liabilities or financial condition of the debtor or any matter that may affect the administration of the estate of the debtor.

10.    The scope of discovery permitted under Rule 2004 is extremely broad. *See In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987); *Sachs v. Hadden*, 173 F.2d 929, 931 (2d Cir. 1949) (discovery under Rule 2004 may be "exploratory and groping."). Rule 2004 discovery exceeds what is permitted under the Federal Rules of Civil Procedure, with some courts even describing Rule 2004 examinations as "in the nature of fishing expeditions." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *accord In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *Chereton v. United States*, 286 F.2d 409, 413 (6th Cir. 1961) (citing *In re Foerst*, 93 F.3d 190 (S.D.N.Y. 1999).

11.    The Trustee successfully argued in support of the Enforcement Motion that this is the proper forum to determine whether the Fox Plaintiffs' claims violate the Permanent Injunction or the automatic stay as part of "underlying administration of the estate." (ECF Doc. #3 at 5, 32-33).  Accordingly, the Trustee is estopped from denying now that the discovery sought is appropriate under Rule 2004. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . . This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."); *In re AMR Corp.*, 508 B.R. 296, 328 (Bankr. S.D.N.Y. 2014) ("[T]the doctrine of judicial estoppel can be invoked to protect the integrity of the bankruptcy process by preventing parties from altering their positions as their litigation needs change.") (citing

*Adelphia Recovery Trust v. Goldman Sachs & Co.*, 748 F.3d 110, 120 (2d Cir. 2014) (holding that judicial estoppel can prevent parties from altering their positions as they deem their litigation needs to change, injecting unacceptable level of uncertainty into bankruptcy process).

12.     While that alone should be dispositive, Rule 2004 is not limited to discovery from the debtor or its related entities concerning matters of estate administration. Rule 2004 discovery may encompass discovery from third parties concerning the debtor's affairs, including third parties who had business dealings with the debtor.  Moreover, it is appropriate even if used for purposes of collateral litigation with parties other than the debtor, or to determine the specifics of a claim.  *See In re CIS Corp.*, 123 B.R. 488, 490 (S.D.N.Y. 1991) (holding that Rule 2004 discovery extends to persons having had business dealings with debtor); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702 (Bankr. S.D.N.Y. 1991) (permitting FDIC to take 2004 discovery for purpose of investigating parameters of its claims and possible defenses.); *In re Johns-Manville Corp.,* 42 B.R. 362, 364 (S.D.N.Y. 1984) (holding that R. 2004 examination of witnesses having knowledge of debtor's acts, conduct, liabilities, assets is proper"); *In re Federated Department Stores, Inc.*, 114 B.R. 501 (Bankr. S.D. Ohio 1990) (holding bank entitled to discovery of information relating to claims of committee members where purpose was to arm itself for eventual adversary proceeding.); *In re Table Talk, Inc.*, 51 B.R. 143 (Bankr. D. Mass. 1985) (holding that pending litigation against prospective deponent and possible use of such testimony in collateral litigation is not sufficient reason for denying examination under Rule 2004); *In re Mittco, Inc.*, 44 B.R. 35 (Bankr. E.D. Wis. 1984) (holding that creditor may use Rule 2004 exam to review debtor's accounting firm's work papers even if creditor may use the information obtained to sue the firm); *In*

re Larkham, 24 B.R. 70 (Bankr. D. Vt. 1982) (holding that examination of debtors by creditors for purpose of securing information regarding prosecution of suits by trustee is not ground to preclude discovery under Rule 2004).

13.    Further, Rule 2004 is regularly used to obtain information concerning transactions of the debtor and information that would assist in evaluating the nature and extent of wrongful conduct. *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (holding that purpose 2004 examination is to assist party in interest in examining transactions and assessing whether wrongdoing has occurred; permitting creditor's committee to collect documents from third parties to assess potential claims) (citing *In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996).]

14.    The standard employed to determine whether discovery is allowed under Rule 2004 is " good cause." *See In re Madison Williams and Company, LLC*, *4 (Bankr. S.D.N.Y. Jan. 7, 2014). "Generally, good cause is shown if the Rule 2004 examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *See In re Meticom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004).

15.    The discovery sought by the Fox Plaintiffs falls within the broad scope of Rule 2004 and the good cause standard.  The Fox Plaintiffs seek documents from the Trustee concerning the control exercised by the Picower Defendants over Madoff and BLIMS.  These documents are at the heart of the Fox Plaintiffs' claims and are necessary to particularize the factual allegations that the Court found deficient.

16.     The Fox Plaintiffs also seek to depose Madoff, Mrs. Picower, and Friehlich relating to transactions between BLMIS and the Picower Defendants and the Picower Defendants' involvement in the fraudulent scheme perpetrated on BLMIS customers.

17.     Madoff's knowledge of these matters is self-evident.  April Freilich was Picower's long-time chief financial officer.  The Trustee has alleged that Freilich and Picower "maintained his own computerized client appraisal or portfolio appraisal system, through which he tracked and monitored each account, including the securities purportedly held in each account, the date they were supposedly purchased, the price, the quantity, and the unrealized gain or loss."[8] The Trustee has also alleged that "according to BLMIS records, in May 2007, Picower and Freilich asked BLMIS employees to change the trading activity that had supposedly occurred in [one of the Picower Defendants' Accounts] for January and February 2006 in order to generate additional gains.  After some discussion about the exact amount of gain Picower wanted, and clarification that the gains should be for 2007, Freilich directed BLMIS to generate $12.3 million in gains for January and February.  Although it was several months too late to make any actual trades in January or February, BLMIS created statements that reported new transactions in January and February 2007 resulting in a purported gain of $12.6 million." [9] Picower and Freilich specifically directed such criminal activity and, as the Trustee himself alleged, this activity " was or should have been obvious to Picower, who monitored these accounts through customer statements, his own portfolio appraisal system, and BLMIS' full portfolio management report."[10]

---

[8] Trustee's Mem. of Law in Opp, to Picower Defendants' Motion to Dismiss, *Picard v. Picower*, Adv. Pro. No. 09-1197 (Bankr. S.D.N.Y. 2009) (ECF Doc. No. 11 at 6).

[9] *Id.* at 7 (citing Trustee's adversary complaint against the Picower Defendants ¶ 63.)
[10] *Id.*

18.     Mrs. Picower was married to Jeffry Picower for 40 years. In addition to serving as the executrix of his estate, Mrs. Picower was involved with and served in management capacities for several Picower Defendants that were heavily invested in Madoff and BLMIS. For example, Mrs. Picower was an officer and/or director of Decisions Inc., which was the "principal entity through which Mr. Picower transacted his investment business."[11] She was also a trustee and the Executive Director of the Picower Foundation. "Virtually all of the assets of the Picower Foundation – totaling nearly $1 billion at one time – were invested with BLMIS.[12] , Mrs. Picower is also the Trustee of her daughter's trust, the entire principal of which was invested with BLMIS.[13] Finally, Mrs. Picower appears to have been personally involved in the Trustee's investigation into the Conspiracy as well as the settlement of the suit naming her as a defendant. Millions of dollars of Mrs. Picower's money was invested with BLIMS beginning in the 1980's. According to her statement released on December 17, 2010, announcing the Picower Defendants' settlement with the Trustee and the U.S. Attorney, she proclaimed her late-husband's innocence in any involvement with the Madoff fraud.[14] Based on the foregoing, Mrs. Picower clearly has personal knowledge of matters bearing directly on the Fox Plaintiffs' allegations against the Picower Defendants.

---

[11] *Picower Defendants' Memorandum of Law in support of Motion to Dismiss Adversary Proceeding*, Picard v. Picower, Adv. Pro. No. 09-1197 (Bankr. S.D.N.Y. July 31, 2009) (ECF Doc. No. 6 at 5).

[12] *Id.* at 5-6.

[13] *Id.* at 7.

[14] *Statement of Barbara Picower, widow of Jeffry M. Picower and Executor of his Estate, from her lawyer, William D. Zabel of SchulteRoth & Zabel LLP, Dec. 17, 2010, available at* http://www.scribd.com/doc/45508766/Statement-of-Barbara-Picower-widow-of-Jeffry-M-Picower

19.    Thus, the Fox Plaintiffs are not seeking discovery to identify claims or defendants but to amplify the factual allegations against the Picower Defendants to show that those claims are non-derivative.  As shown above, this is appropriate under any circumstances and it is especially appropriate here, where the information is solely within the possession of Madoff, Freilich, Mrs. Picower, and the Trustee who stands in the shoes of Madoff.

20.    By virtue of the Decision, the Fox Plaintiffs' lawsuit against the Picower Defendants has effectively been dismissed before any discovery has been taken.  The dismissal was based upon the PSAC's lack of particulars about, *inter alia*, the Picower Defendants' control over BLMIS.  But when a plaintiff is unable to plead sufficiently detailed facts to support claims of fraud and conspiracy, and the proof is largely in the hands of the alleged conspirators, dismissal with prejudice is rarely appropriate before giving the plaintiff an opportunity for discovery.  *See Jesup, Josephthal & Co., Inc. v. Piguet & Cie*, 1991 WL 168053 (S.D.N.Y. Aug. 22, 1991) (citing *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 746 (1975) ("[I]n . . . cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." (quoting *Poller v. Columbia Broadcasting,* 368 U.S. 464, 473 (1962)); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 1999 WL 47223, **7-8 (S.D.N.Y. Feb. 3, 1999) (granting motion to dismiss breach of fiduciary claim "but with permission to replead with particularity within sixty days after discovery has been conducted and [the non-moving parties have] deposed all [moving party witnesses] they wish to depose"); *Tammac Corp. v. Williams*, 1993 WL 330639 *27 (W.D.N.Y. Aug. 13, 1993) (dismissing RICO claim without prejudice where requested discovery was reasonably calculated to ac-

quire relevant information necessary to plead fraud with particularity) (citing *Rich-ardson Greenshield Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987)).

21.     In sum, the discovery sought from Madoff, Mrs. Picower, the Trustee, and April Freilich is clearly permitted under Rule 2004.  Each witness possesses per-sonal knowledge of facts bearing directly on the Fox Plaintiffs' claims that the Court has held must be pled with increased specificity for a determination of whether the Fox Plaintiffs' claims run afoul of the Permanent Injunction.  Accordingly, the Fox Plaintiffs' Motion should be granted.

**B.     <u>The Fox Plaintiffs Should Be Permitted to Preserve Madoff's Testimo-ny Pursuant to FRCP 27.</u>**

22.     There is another legal ground for taking Madoff's deposition – to pre-serve his testimony pursuant to FRCP 27(a) or (b) because there is a real risk that his evidence will be lost if not obtained now.  FRCP 27(a) permits depositions to perpet-uate testimony before an action is filed.  It should be applicable here where the Fox Plaintiffs seek to preserve Madoff's testimony before they file an amended pleading.  FRCP 27(b) permits depositions to perpetuate testimony pending appeal.  The Fox Plaintiffs have noticed an appeal from the Decision.  (ECF Doc #62.) The standards under both provisions are substantially the same.  *See Jackson v. Good Shepherd Servs.*, 683 F. Supp. 2d 290, 293 (S.D.N.Y. 2009) (standard for FRCP 27(a)); *United States v. Van Rossem*, 180 F.R.D. 245, 247 (W.D.N.Y. 1998) (standard for FRCP 27(b)).

23.     Three elements must be established to warrant relief under Rule 27 (a): (1) an expectation that a suit will be filed that cannot then be filed ; (2) the substance that the moving party seeks is important; and (3) risk that the testimony will be lost

if not preserved. *See* 6 MOORE'S FEDERAL PRACTICE - Civil § 27.13[1] (Matthew Bender & Co. 2014) ("Moore's"); *Jackson v. Good Shepherd*, 683 F. Supp. 2d at 293 (citing Moore's). Similarly, to obtain an order pursuant to Rule 27(b) "[t]he movant must demonstrate a specific need to preserve the testimony, and that a loss of the testimony would result in a failure of justice." *United States v. Van Rossem*, 180 F.R.D. at 247 (citing 6 Moore's § 27.33).

24.    This is a text book example of where Rule 27 relief should be granted. Madoff is 75 years old and in prison. He had a heart attack in December 2013, and is now battling stage-4 kidney cancer.[15] Now that Picower is dead, Madoff may be the only — and is certainly the best – source of personal and detailed knowledge concerning many of the Fox Plaintiffs' allegations. Yet, to the best of the Fox Plaintiffs' knowledge, Madoff has never testified at deposition or under oath about his fraud and certainly not as to Picower's relationship to it. That information will be lost forever if Madoff were to die before his testimony is preserved.

25.    Serious illness and advanced age are the archetypical ground for granting permission to preserve testimony under Rule 27. *See In re Legg Mason Inv. Counsel & Trust Co., N.A.,* 2011 WL 1533165 (S.D.N.Y. Apr. 19, 2011) (granting Rule 27 petition to examine 87 year-old non-party where moving party, *inter alia*, "stated that it has a need to perpetuate the testimony because of '[witness]'s medical condition and age"). "Most petitions to perpetuate testimony [pursuant to Rule 27] have been granted when a witness is aged or gravely injured and in danger of dying or

---

[15] *See Report: Madoff Battling Cancer, Recovering From Heart Attack*, CBS NEW YORK (Jan. 22, 2014, 1:17 PM), http://newyork.cbslocal.com/2014/01/22/report-madoff-battling-cancer-recovering-from-heart-attack/; *Joseph Ax, Madoff suffered heart attack last month: CNBC reports*, REUTERS (Jan. 22, 2014, 12:33 PM), http://www.reuters.com/article/2014/01/22/us-madoff-health-

there are geographical constraints." *Clark v. Dunlap*, 2014 WL 1089559 (D. Colo. Mar. 19, 2014); *accord Petition of Rosario*, 109 F.R.D. 368, 370 (D. Mass. 1986); *PegaSync Technologies, Inc. v. Patros*, 2014 WL 2763620 (E.D. Mich. June 18, 2014) (granting Rule 27 petition to examine non-party witness on grounds that witness was 72 years old, "suffering from serious health problems; he recently had two serious heart surgeries, one of which resulted in complications, and he also suffers from chronic anemia, which presents a greater risk of complications with his heart problems."); *see also Petition of Delta Quarries and Disposal, Inc.,* 139 F.R.D. 68 (M.D. Pa. 1991) (permitting Rule 27 deposition where deponent's condition was serious and only deponent had knowledge regarding material issue in case).  The importance of Madoff's testimony cannot be overstated and the Fox Plaintiffs clearly need that testimony to amend their complaint in accordance with this Court's Decision.  Thus, the requirements of Rule 27 are fully is satisfied.

26.    It would be a tragedy for the thousands of uncompensated Madoff victims if Madoff, like Picower, were allowed to take the details of his crimes to the grave.  For all the reasons set forth above, good cause exists to preserve Madoff's testimony about his relationship with the Picower Defendants and their relationship with BLMIS and its customers.

## C.    The Fox Plaintiffs Should Be Granted Leave to Take Madoff's Deposition pursuant to Rule 30(a)(2)(B).

27.    Rule 30(a)(2)(B) requires a party to obtain leave of court to take the deposition of an incarcerated person.  "Leave of court to take the deposition of a person in prison should be granted unless the objecting party shows that: (1) the deposition would be unreasonably cumulative or duplicative; (2) the party seeking the dep-

osition has had ample opportunity to obtain the information sought; or (3) the bur-den or expense of the deposition outweighs its likely benefit." 7 MOORE'S, § 30.05[1][a]; *accord Houghtaling v. Tirado-Montes*, 2008 WL 2385511, *1 (M.D. Fla. June 9, 2008); *Williams v. Greenlee*, 210 F.R.D. 577, 578 (N.D.Tex. 2002). None of those factors applies here.

28.     None of these preclusive factors pertains. As noted, Madoff has never testified regarding the matters in suit, his testimony would, to say the least, be una-vailable from any other source, and the deposition can be conducted at a location in the prison or wherever the prison officials deem least disruptive. Accordingly, the Court should grant the Fox Plaintiffs leave to examine Madoff pursuant to Rule 30(a)(2)(B) under such terms as are necessary prevent disruption at the prison.

29.     Finally, pursuant to the Court's authority to direct the timing and se-quence of discovery pursuant to Rule 26(d), Madoff's deposition should be preserved on videotape and noticed for a date approximately 45 days after the Fox Plaintiffs have obtained documents from the other witnesses to frame the examination and to authenticate those documents for use in later proceedings.

## <u>CONCLUSION</u>

For the foregoing reasons, this motion should be granted and the Fox Plaintiffs are entitled to the relief set forth in the accompanying proposed order.

July 18, 2014                                   **BECKER & POLIAKOFF LLP**

                                        By:       */s/ Helen Davis Chaitman*
                                                 Helen Davis Chaitman
                                                 Lance Gotthoffer
                                                 Peter W. Smith
                                                 Julie Gorchkova
                                                 45 Broadway, 8th Floor
                                                 New York, New York 10006
                                                 (212) 599-3322

                                                 *Attorneys for the Fox Plaintiffs*