**Baker & Hostetler LLP**

45Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Marc E. Hirschfield

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-04450 (SMB) |
| v. | |
| JEFFREY HINTE, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION
## TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

    A.    Madoff's Ponzi Scheme and the Defendant's Account ...........................2

    B.    The Trustee's Claims Process and the Avoidance Action .......................3

    C.    Defendant's Motion to Withdraw the Reference as to Antecedent
        Debt and the Net Equity Decision ...........................................................5

    D.    Defendants' Answer and Counterclaims .................................................9

ARGUMENT ...................................................................................................................9

    A.    Standard of Review .................................................................................9

        1.    Motion to Dismiss Counterclaims ..............................................9

        2.    Motion to Strike Certain Affirmative Defenses........................10

    B.    Defendant's Counterclaims are Barred Due to His Failure to File a
        Timely SIPA Claim.................................................................................10

    C.    Defendant's Counterclaims are a Patent Attempt to Recycle
        Arguments Previously Rejected in the Context of this Bankruptcy
        and Must be Dismissed ..........................................................................12

        1.    Defendant's Counterclaims Fail to State Claims for Return of
            Principal under the Antecedent Debt Decision...........................12

        2.    Defendant's Counterclaims for Damages are, at Best, Claims
            Against the General Estate that are Irrelevant to this Avoidance
            Action........................................................................................16

    D.    Defendant's Fifteenth, Sixteenth, Twenty-First, Twenty-Fourth,
        and Thirty-Second Through Thirty-Fourth Affirmative Defenses
        Fail on the Same Grounds and Should Be Struck in Whole or in
        Part .........................................................................................................20

CONCLUSION.............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler Coleman Clearing Corp.*,
195 B.R. 266 (Bankr. S.D.N.Y. 1996)..................................................................16

*In re Adler, Coleman Clearing Corp.*,
204 B.R. 99 (Bankr. S.D.N.Y. 1997)....................................................................11

*In re Adler, Coleman Clearing Corp.*,
216 B.R. 719 (Bankr. S.D.N.Y.1998)...................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................10

*In re Bell & Beckwith*,
937 F.2d 1104 (6th Cir. 1991) ............................................................................16

*In re Bernard L. Madoff Inv. Sec. LLC*,
424 B.R. 122 (Bankr. S.D.N.Y. 2010)..........................................................*passim*

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011) ...............................................................2, 9, 19, 21

*FDIC v. Eckert Seamans Cherin & Mellott*,
754 F. Supp. 22 (E.D.N.Y. 1990) ......................................................................22

*IDI Design Inc. v. A.O.D. Jewelry Co.*,
No. 1:13 Civ. 08266(CM), 2014 WL 661355 (S.D.N.Y. Feb. 19,
2014) ..............................................................................................................9, 10

*In re Lehman Bros., Inc.*,
458 B.R. 134, 139 (Bankr. S.D.N.Y. 2011 ...........................................................9

*In re Lehman Bros., Inc.*,
493 B.R. 437 (Bankr. S.D.N.Y. 2013)..................................................................11

*In re MF Global Inc.*,
No. 11-2790 (MG), 2014 WL 1320094 (Bankr. S.D.N.Y. Apr. 1,
2014) .....................................................................................................................11

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re MF Global Inc.*,
  No. 11-2790 (MG), 2014 WL 657321 (Bankr. S.D.N.Y. Feb. 20,
  2014) ..................................................................................................................11

*In re New Times Secs. Servs., Inc.*,
  463 F.3d 124 (2d Cir. 2006) ...............................................................................16

*Reddington v. Borghi (In re Weis Secs. Inc.)*,
  411 F. Supp. 194 (S.D.N.Y. 1975) ......................................................................11

*Sec. Exch. Comm'n v. KPMG LLP*,
  No. 03 Civ. 671(DLC), 2003 WL 21976733 (S.D.N.Y. Aug. 20,
  2003) .............................................................................................................10, 23

*Sec. Exch. Comm'n v. McCaskey*,
  56 F.Supp.2d 323 (S.D.N.Y. 1999) .....................................................................22

*Sec. Exch. Comm'n v. Toomey*,
  866 F.Supp. 719 (S.D.N.Y. 1992) .......................................................................22

*Sec. Investor Prot. Corp. v. Barbour*,
  421 U.S. 412 (1975)..............................................................................................17

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  499 B.R. 416 (S.D.N.Y. 2013) ....................................................................*passim*

*Sec. Investor Prot. Corp. v. Stellatos (In re Blinder, Robinson & Co.
  Inc.)*,
  124 F.3d 1238 (10th Cir. 1997) ...........................................................................11

*Simon v. Mfrs. Hanover Trust Co.*,
  849 F.Supp. 880 (S.D.N.Y. 1994) .......................................................................10

*Specialty Minerals, Inc. v. Pluess-Staufer AG*,
  395 F.Supp.2d 109 (S.D.N.Y. 2005) ...................................................................22

*United States v. Union Gas Co.*,
  743 F.Supp. 1144 (E.D.Pa. 1990).......................................................................10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Wausau Bus. Ins. Co. v. Horizon Admin. Svcs. LLC,*
  803 F.Supp.2d 209 (E.D.N.Y. 2011) ....................................................22

*Westinghouse Credit Corp. v. D'Urso,*
  278 F.3d 138 (2d Cir. 2002) ................................................................9

**Statutes**

11 U.S.C. § 101(5)(A) ..............................................................................13

11 U.S.C. § 101(12) ..................................................................................13

11 U.S.C. § 548(c) ...........................................................................*passim*

11 U.S.C. § 553(a) ......................................................................................9

15 U.S.C. § 78aaa *et seq.* ................................................................*passim*

15 U.S.C. § 78fff-2(a)(2) ............................................................................4

15 U.S.C. § 78fff-2(a)(3) ....................................................................10, 11

15 U.S.C. § 78fff-2(b) ................................................................................8

15 U.S.C. § 78fff-2(c)(1) ..........................................................................17

15 U.S.C. § 78*lll*(4) ..................................................................................16

15 U.S.C. § 78*lll*(11) ..................................................................................8

**Rules**

Fed. R. Bankr. P. 7012 ..........................................................................1, 20

Fed. R. Civ. P. 12(b)(6) ..........................................................................1, 9

Fed. R. Civ. P. 12(f) ......................................................................1, 10, 20

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff

("Madoff") (collectively, "Debtor"), respectfully submits this memorandum of law in support of

the Trustee's motion (the "Motion") to dismiss Defendant's counterclaims and strike certain of

Defendant's affirmative defenses under Rules 12(b)(6) and 12(f)(2) of the Federal Rules of Civil

Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012.

## PRELIMINARY STATEMENT

In the wake of the collapse of BLMIS and Madoff's now-infamous Ponzi scheme, this

Court announced a statutory bar date (the "Bar Date") for the filing of claims against the Debtor

under SIPA.  The Trustee published notice of the commencement of the liquidation of the Debtor

and the Bar Date according to procedures set forth by this Court and separately provided direct

notice to Defendant.  The Bar Date occurred on July 2, 2009, but Defendant never filed a claim.

Now, despite this failure, Defendant seeks through his counterclaims and affirmative defenses to

bring claims against the Debtor that are barred by statute.  Because Defendant's counterclaims

are barred by his failure to file a timely SIPA claim, these counterclaims should be dismissed for

failure to state a claim upon which relief may be granted and any corresponding affirmative

defenses based on these claims should be struck from Defendant's answer.

Even if Defendant's counterclaims were not barred by his failure to file a claim with the

Trustee, dismissal would still be appropriate.  The Defendant raised the very arguments on which

he bases his counterclaims before the District Court, and they were rejected as inconsistent with

this Court's holdings regarding the calculation of "net equity" for BLMIS customer accounts.

*See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 427-428

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

(S.D.N.Y. 2013) ("Antecedent Debt Decision"); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 124-125 (Bankr. S.D.N.Y. 2010) ("Net Equity Decision"), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert denied*, 133 S. Ct. 24, 133 S. Ct. 25 (2012).  By raising these arguments again in the context of his counterclaims and affirmative defenses, Defendant is seeking to re-litigate arguments that have already been decided against him.  Therefore, Defendant's meritless counterclaims should be dismissed for failure to state a claim for which relief may be granted, and any corresponding affirmative defenses struck from his answer.  Alternatively, Defendant's counterclaims must fail because, at most, these claims are made against the Debtor's general estate, which does not currently – and may never – exist, and such claims must be administered by the Trustee through his claims process.

## STATEMENT OF FACTS

### A.    Madoff's Ponzi Scheme and the Defendant's Account

Defendant's investment history with BLMIS and the facts surrounding the operation and collapse of Madoff's Ponzi scheme are more fully set forth in the Trustee's complaint in this action (the "Complaint").  (*See* Dkt. No. 1.)  Defendant held BLMIS account no. 1L0211, in the name of "Jeffrey Levy-Hinte" (the "Account").  Defendant alleges that he was induced by Madoff to open the Account in the course of finalizing his divorce from his ex-wife Jeanne Levy-Hinte ("Levy").  (*See* Answer and Counter Claims, filed Apr. 17, 2014 (Dkt. No. 31) ("Answer"), at ¶¶ 120-128.)  By the terms of their separation agreement (the "Separation Agreement"), Levy was obligated to pay Defendant the amount of $50 million "by check or wire transfer to his banking account."  (Answer ¶ 121.)  Instead, Defendant alleges, Madoff convinced him to open the Account and receive payment from Levy via inter-account transfers from one of Levy's BLMIS accounts, despite the terms of the Separation Agreement requiring wire or check payments.  (Answer ¶¶ 122-134.)  According to Defendant, he relied on Madoff's

representations regarding the value of Levy's BLMIS investments and the operation of BLMIS's investment advisory business, and for these reasons did not insist on being paid according to the terms of the Separation Agreement.  (*Id.*)  After a credit was reflected to his BLMIS Account, Defendant consented to a Judgment of Divorce.  (*Id.*); *see also Jeanne Levy-Hinte v. Jeffrey Levy-Hinte*, Index No. 315190/03 (N.Y. Sup. Ct. , N.Y. Cnty. Jan. 6, 2004) (the "Judgment").

The Trustee's records show, and Defendant's Answer concedes, that Defendant's Account was funded by two inter-account transfers from BLMIS account no. 1L0026, held by Levy.  (Compl. Ex. B.)  At the time of these transfers, no principal remained on deposit in account 1L0026; therefore, in accordance with the Net Investment Method, discussed further below, the Trustee did not credit the transfers with depositing any principal to Defendant's Account.  (*Id.*)  Over time, Defendant withdrew at least $36,150,000 from the Account, and made no deposits beyond the two transfers from account no. 1L0026.  (*Id.*)  Although Defendant disputes the legal basis for the Trustee's determination of the net equity of his account, Defendant admits to receipt of $36,150,000 in withdrawals from BLMIS, (Answer ¶ 2), and does not claim any deposits into the account other than the transfers and deposits already identified by the Trustee in his avoidance action.

## B.    The Trustee's Claims Process and the Avoidance Action

On December 23, 2008, this Court entered an order specifying procedures for filing, determining, and adjudicating customer claims.  *See* Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices; Specifying Procedures  for Filing, Determination, and Adjudication of Claims; and Providing Other Relief, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-01789 (BRL) (Bankr. S.D.N.Y. Dec. 23, 2008) (Dkt. No. 12) (the "Claims Procedures Order"), attached as Exhibit A to the accompanying Declaration of Mary Elizabeth Howe dated July 28,

2014 ("Howe Decl."). The Claims Procedures Order provides, in pertinent part, that under SIPA

section 78fff-2(a)(2), all claims against the Debtor must be filed with the Trustee within six

months of the Trustee's publication and mailing of the Court-approved notice of commencement

of the liquidation proceeding. The Claims Procedures Order required the Trustee to give notice

of the liquidation proceeding: (i) by publication at least once in all editions of *The New York*

*Times*, *The Wall Street Journal*, *The Financial Times*, *USA Today*, *Jerusalem Post*, and *Ye' Diot*

*Achronot*; and (ii) by mail to "persons who, as identified from the books and records of the

Debtor, appears [sic] to have been a customer of the Debtor with an open account during the

twelve (12) month period prior to December 11, 2008." The Trustee fully complied with the

publication notice requirements contained in the Claims Procedures Order on January 2, 2009.

(*See* Howe Decl. Ex. B., Affidavit of Publication, *Sec. Investor Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-01789 (BRL) (Bankr. S.D.N.Y.

Feb. 2, 2009) (Dkt. No. 57) ("Affidavit of Publication").) In addition, the Trustee's claims agent,

AlixPartners, LLP ("AlixPartners") provided notice to Defendant of the liquidation proceeding

and Bar Date by mail on January 2, 2009. (*See* Howe Decl. Ex. C, excerpts from Affidavit of

Mailing, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff*

*Inv. Sec. LLC)*, No. 08-01789 (BRL) (Bankr. S.D.N.Y. Feb. 4, 2009) (Dkt. No. 76) ("Affidavit of

Mailing").)

Accordingly, the statutory Bar Date for all claims against the Debtor occurred in this case

on July 2, 2009. However, Defendant's Answer does not allege that Defendant has ever filed a

claim with the Trustee. In fact, in arguing that he has not submitted to the jurisdiction of the

Bankruptcy Court, Defendant specifically admitted that he "has *not* filed a proof of claims in

these cases." (*See* Howe Decl. Ex. D, Memorandum of Law in Support of Defendant's Motion to

Withdraw the Reference, *Picard v. Hinte*, Adv. Pro. No. 12-cv-02404 (JSR) (S.D.N.Y. Mar. 30,

2012) (Dkt. No. 3), at 21) (emphasis in original.)

On November 30, 2010, the Trustee filed an avoidance action against Defendant seeking

the return of $36,150,000 in fictitious profits received from BLMIS. (Compl. ¶ 2.)

C.    **Defendant's Motion to Withdraw the Reference as to Antecedent Debt and the Net
Equity Decision**

On March 30, 2012, Defendant moved to withdraw the reference from the Bankruptcy

Court on several grounds, including the proposition that claims for damages against BLMIS by

defrauded BLMIS customers could constitute "value" for purpose of calculating their individual

net equity with respect to BLMIS. (*See* Howe Decl. Ex. E, Notice of Motion and Defendant's

Motion to Withdraw the Reference, *Picard v. Hinte*, No. 12-cv-02404 (JSR) (S.D.N.Y. Mar 30,

2012) (Dkt. No. 1).) In his withdrawal motion, Defendant raised the same arguments he raises in

his counterclaims. (*See* Howe Decl. Ex. D, at 3-6, 8, 15-17.) The District Court granted the

motion to withdraw the reference and, on May 16, 2012, ordered consolidated briefing by all

defendants who moved to withdraw the reference (or joined such motions) based on arguments

that "the Trustee cannot avoid transfers or obligations that [BLMIS] made in satisfaction of

antecedent debts," under the theory that transfers from BLMIS to customers were made in

satisfaction of those customers' pre-existing legal claims against BLMIS arising from Madoff's

fraud. (*See* Howe Decl. Ex. F., Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.

LLC (In re Madoff Securities)*, No. 12-mc-00115 (JSR) (S.D.N.Y. May 16, 2012) (Dkt. No. 107)

("Antecedent Debt Order").) Defendant's withdrawal motion was specifically included in this

order.  (Antecedent Debt Order, Ex. A.)  Defendant and other moving defendants thereafter filed

a consolidated motion to dismiss based on his antecedent debt arguments.[2]

At oral argument, Defendant's counsel, appearing on behalf of a group of defendants,

argued that, based on the same allegations defendant makes here, BLMIS's transfer to Defendant

was in satisfaction of an antecedent debt:

> Now, with respect to my particular client, . . . my client was not a Madoff
> customer at the beginning of the two year period.  My client was not a Madoff
> customer at the time of the divorce from his wife.  His wife was going to make the
> payment decreed by the judgment of divorce to her husband and Mr. Madoff
> interceded and said, you don't need to do that, I will basically manage the money
> for your husband.  Let's open up an account for your husband and make an inter-
> account transfer. . . .  And that was in satisfaction of an antecedent debt from the
> wife to the husband, who I also think that when the husband within the two year
> period took his money out of Madoff's securities, what he was doing was
> satisfying an antecedent debt that [BLMIS] had to him because that transfer
> should be treated as principal.

(*See* Howe Decl. Ex. H, Transcript of Oral Argument at 7:12-8:1, *Sec. Investor Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC (In re Madoff Securities)*, No. 12-mc-00115 (JSR) (S.D.N.Y.

Aug. 20, 2012).)

The District Court rejected the moving defendants' (including Defendant's) arguments.

The District Court noted that the defendants have no net equity claims, pursuant to the Net

Equity Decision, as discussed below.  Because the state and federal claims asserted by the

moving defendants are claims for damages, which are de-prioritized under SIPA and can be

brought only against the general estate after customer property is distributed and net equity clams

satisfied, the District Court held that they do not constitute "value" to the estate.  Antecedent

---

[2] The moving defendants asserted that these antecedent debts include those defendants' claims for federal securities
fraud, entitling the accountholders to recovery of principal "*and* compensation for the loss of time value of money"
in the form of interest, and state law substantive tort and breach of fiduciary duty claims, also entitling the
defendants to the recovery of principal and interest.  (*See* Howe Decl. Ex. G, Consolidated Memorandum of Law in
Support of Motion to Dismiss Regarding Antecedent Debt Issues on Behalf of Withdrawal Defendants, As Ordered
by the Court on May 12, 2012, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff
Securities)*, No. 12-mc-00115 (JSR) (S.D.N.Y. Jun. 25, 2012) (Dkt. No. 199), at 7, 9-10.)

Debt Decision at 424. As the District Court held, "[t]o allow defendants, who have no net equity claims, to retain profits paid out of customer property on the ground that their withdrawals satisfied creditor claims under state law would conflict with the priority system established under SIPA by equating net equity and general creditor claims." *Id.* Thus, "only a defendant's investment of principal may count as 'value' with respect to the customer property estate for purposes of section 548(c)." *Id.*

In addition to rejecting Defendant's arguments regarding antecedent debt, the District Court also rejected his challenge (and that of the other moving defendants) to the Trustee's method of accounting for inter-account transfers within BLMIS according to his Net Investment Method. *Id.* at 428-429. The Trustee's Net Investment Method credits customers for the total amount of cash deposited into a BLMIS account and subtracts any amounts withdrawn from that account; where inter-account transfers were made, the Trustee credited such transfers to the destination account at BLMIS only to the extent that principal on deposit in the source account was sufficient to effect the transfer. In the context of the Antecedent Debt Decision, the moving defendants argued that inter-account transfers, including those that included fictitious profits from the Ponzi scheme and occurred before the two-year look-back period, should be treated as principal. *Id.* at 428. The District Court rejected this position, reasoning that "no new value was created by moving these funds between different accounts" and therefore inter-account transfers of fictitious profit could not be considered principal or constitute value under Section 548(c). *Id.* at 429.

The District Court found that its conclusion was mandated by the Second Circuit's decision regarding the calculation of "net equity" for customer accounts, which approved the Trustee's "Net Investment Method" for performing this calculation. *See* Antecedent Debt

- 7 -

Decision at 428.  On October 16, 2009, the Trustee filed a motion and supporting memorandum

(collectively, the "Net Equity Motion") seeking entry of an order affirming the Trustee's Net

Investment Method.  *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (BRL) (Bankr.

S.D.N.Y. Oct. 16, 2009) (Dkt. Nos. 524, 525).  In opposition to the Net Equity Motion, various

objecting claimants argued that SIPA's definition of "net equity" required the Trustee to allow

claims in the amount of the balance reflected on their final November 30, 2008 BLMIS

statements as "the sum which would have been owed by the debtor to such customer if the debtor

had liquidated . . . all securities positions of such customer" less any amounts each customer

might owe to BLMIS.  SIPA § 78*lll*(11).  In response, the Trustee argued that this so-called "Last

Statement Method" would legitimize and perpetuate Madoff's fraud by obligating the Trustee to

pay customers for fictitious earnings on equities that in reality were never purchased for these

customers' accounts.

On March 1, 2010, the Bankruptcy Court entered an order granting the Net Equity

Motion.  Net Equity Decision at 125.  This Court concluded that the Trustee's Net Investment

Method complies with SIPA's statutory framework because "the definition of Net Equity under

SIPA section 78*lll*(11) must be read in tandem with SIPA section 78fff-2(b), which requires the

Trustee to discharge Net Equity claims 'only insofar as such obligations are [1] ascertainable

from the books and records of the debtor or [2] are otherwise established to the satisfaction of the

trustee.'" *Id*. at 135 (citing SIPA § 78fff-2(b)).  BLMIS's books and records show that no

equities were ever purchased in customer accounts and the only amounts shown in the books are

cash deposits and withdrawals.  *Id*.  Therefore, this Court found that netting the deposits and

withdrawals recorded in BLMIS's books and records satisfied SIPA.  *Id*.  The Net Equity

Decision was affirmed on appeal to the Second Circuit Court of Appeals, and the United States

Supreme Court thereafter denied certiorari. *In re Bernard L. Madoff Inv. Sec. LLC,* 654 F.3d 229

(2d Cir. 2011), *cert denied*, 133 S. Ct. 24, 133 S. Ct. 25 (2012).

**D.**     **Defendants' Answer and Counterclaims**

The Antecedent Debt decision reinstated the reference and sent Defendant's case back to

this Court, and Defendant filed his Answer to the Trustee's Complaint on April 17, 2014.

Included in his Answer are seven[3] purported counterclaims against the Trustee.  Based on the

allegations contained in the Answer, which are the same allegations argued at the hearing before

the Antecedent Debt Decision, Defendant asserts claims for return of principal, fraud, tortious

interference, set-off,[4] and estoppel.  In addition, Defendant raises many identical arguments as

affirmative defenses.

## ARGUMENT

**A.**     **Standard of Review**

**1.**     **Motion to Dismiss Counterclaims**

"A motion to dismiss counterclaims is governed by the familiar standards of [Federal

Rule of Civil Procedure] 12(b)(6)."  *IDI Design Inc. v. A.O.D. Jewelry Co*., No. 1:13 Civ.

08266(CM), 2014 WL 661355, at *2 (S.D.N.Y. Feb. 19, 2014).  Under Rule 12(b)(6), a party

may move to dismiss causes of action for "failure to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  "[T]o survive a motion to dismiss, 'a complaint must contain

---

[3] Defendant's Answer references an "Eighth Counterclaim" in his request for relief; however, as only seven causes of action are pleaded in Defendant's counterclaims, the Trustee presumes this reference to be in error.
[4] Although Defendant styles this Sixth Counterclaim as one for recoupment, the count in actuality attempts to allege the elements of set-off.  Recoupment is available only when two mutual debts arise out of a single specific transaction "so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations."  *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138 (2d Cir. 2002).  Defendant's claim is that whatever judgment the estate may have against him should be set off because Madoff's fraud generally injured Defendant "in an equal amount."  Here, too, Defendant fails to state a claim.  To be eligible for set-off under section 553 of the Bankruptcy Code, "(1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor must be mutual."  *In re Lehman Bros., Inc.*, 458 B.R. 134, 139 (Bankr. S.D.N.Y. 2011) (quoting 11 U.S.C. § 553(a)).

sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *IDI Design Inc.*, 2014 WL 661355, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To show "facial plausibility" in order to survive a motion to dismiss, the counterclaimant must "plead[] factual content that allows the court to draw the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged."  *Id.* (citations omitted).

### 2.      Motion to Strike Certain Affirmative Defenses

Under Rule 12(f) of the Federal Rules of Civil Procedure, this court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  While not favored, "motions to strike 'serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case."  *Simon v. Mfrs. Hanover Trust Co.*, 849 F.Supp. 880, 882 (S.D.N.Y. 1994) (quoting *United States v. Union Gas Co.*, 743 F.Supp. 1144, 1150 (E.D.Pa. 1990)).  "To succeed on a motion to strike, the plaintiff must show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense."  *Sec. Exch. Comm'n v. KPMG LLP*, No. 03 Civ. 671(DLC), 2003 WL 21976733, at *2 (S.D.N.Y. Aug. 20, 2003) (granting motion to dismiss affirmative defenses of estoppel, waiver, and unclean hands).

### B.    Defendant's Counterclaims are Barred Due to His Failure to File a Timely SIPA Claim

Defendant's counterclaims are barred as a matter of law and must be dismissed for failure to state a claim for which relief may be granted.  Under SIPA section 78fff-2(a)(3),  all claims against the Debtor's estate needed to have been filed within six months of the date of publication of notice by the Trustee:

> No claim of a *customer or other creditor of the debtor* which is received by the trustee after the expiration of the six-month period beginning on the date of the publication of notice . . . shall be allowed, except that the court may, upon application within such period and for cause shown, grant a reasonable, fixed extension of time for the filing of a claim by the United States, by a State or political subdivision thereof, or by an infant or incompetent person without a guardian.

15 U.S.C. § 78fff-2(a)(3) (emphasis added).  This six-month time limitation is "mandatory and must be strictly construed."  *In re Lehman Bros., Inc.*, 493 B.R. 437, 446 (Bankr. S.D.N.Y. 2013); *see also In re MF Global Inc.,* No. 11-2790 (MG), 2014 WL 1320094, at *3 (Bankr. S.D.N.Y. Apr. 1, 2014) (Section 78fff-2(a)(3) is an absolute bar to late-filed claims); *In re MF Global Inc.,* No. 11-2790 (MG), 2014 WL 657321, at *2 (Bankr. S.D.N.Y. Feb. 20, 2014) (same)*; In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 103 (Bankr. S.D.N.Y. 1997) (same); *Sec. Investor Prot. Corp. v. Stellatos (In re Blinder, Robinson & Co. Inc.),* 124 F.3d 1238, 1243-1244 (10th Cir. 1997) (late-filed claim barred where incompetent claimant failed to request extension of time to file within six months of publication of notice).  The Bar Date, therefore, is an absolute bar to Defendant's attempt to bring late-filed claims in this SIPA proceeding, either for his customer account or as a general creditor of the Debtor's estate.

The Bar Date for claims against the Debtor in this liquidation was July 2, 2009.  Not only did the Trustee give public notice of the liquidation and upcoming Bar Date in accordance with the Claims Procedures Order, (*see* Affidavit of Publication at ¶ 6), the Trustee individually notified Defendant of the liquidation and upcoming Bar Date by mail.  (*See* Affidavit of Mailing, Ex. A.); *see also Reddington v. Borghi (In re Weis Secs. Inc.)*, 411 F. Supp. 194, 195 (S.D.N.Y. 1975) (reversing bankruptcy court order granting extension to file late SIPA claim even where potential claimant "received no notice by mail," where notice by publication was properly made), *aff'd,* 538 F.2d 317 (2d Cir. 1976).  Defendant failed to file a customer claim prior to the Bar Date, and may not sidestep this failure by styling his now-barred SIPA claims against the

Debtor as counterclaims in this avoidance action.  Defendant's failure to file a claim with the

Trustee prior to the Bar Date therefore bars him from raising counterclaims against the Debtor,

and dismissal of these claims is warranted.

**C.**    **Defendant's Counterclaims are a Patent Attempt to Recycle Arguments Previously Rejected in the Context of this Bankruptcy and Must be Dismissed**

Even if Defendant's counterclaims were not barred as a matter of law because of

Defendant's failure to file a claim, these claims are nothing more than attempts to re-litigate

issues defendant previously raised that were decided in the Trustee's favor in the Bankruptcy and

District Courts, and therefore fail to state claims for which relief can be granted.  Defendant

claims that because of Madoff's fraud and his own good faith:  (1) all the funds in his account

should be treated as principal to which the Trustee can assert no claim (counterclaims for return

of principal, "recoupment," and estoppel) and (2) the Trustee's claim should be reduced or

eliminated, and in fact damages are owed to the Defendant, based on the damages Madoff

inflicted on the Defendant (counterclaims for fraud, tortious interference, and estoppel).

Defendant has already raised these arguments, which were rejected in the Antecedent Debt

Decision because, as the District Court found, they are inconsistent with the Net Equity Decision

and SIPA.

**1.**    **Defendant's Counterclaims Fail to State Claims for Return of Principal under the Antecedent Debt Decision**

Defendant takes care not to employ the phrase "antecedent debt" in his counterclaims, but

nonetheless his first, sixth, and seventh claims are premised on the same bases that the District

Court explicitly rejected in Defendant's own prior challenge regarding antecedent debt, which

Defendant and the Trustee have already litigated to judgment.  *See* Antecedent Debt Decision at

430.  Each of these three claims contends that the fictitious deposits or gains in Defendant's

- 12 -

Account were somehow transformed into principal to which he is entitled.[5]  To accomplish this,

each claim essentially argues that Defendant earned the supposed "principal" by being defrauded

in the course of his investment and by receiving payment from BLMIS in reparation for being

victimized.  This is nothing more than a repackaged version of the antecedent debt arguments

previously adjudicated – and correctly rejected – in the District Court after full briefing by the

moving defendants (including Defendant) and the Trustee.

Defendant and the other moving defendants before the District Court argued that, in

defrauding customers in the course of the Ponzi scheme, BLMIS created "debts" in the form of

future state and federal law claims for damages.  Antecedent Debt Decision at 421.  As the

District Court explained,

> [d]efendants claim[ed] that the federal and state law claims they assert against
> [BLMIS] constitute "antecedent debts," as the Bankruptcy Code defines "debt" as
> "liability on a claim."  11 U.S.C. § 101(12).  "Claim" means "right to payment,
> whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,
> contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured,
> or unsecured." 11 U.S.C. § 101(5)(A).

*Id*.  In providing fraudulent transfers to these customers, the movants argued, BLMIS was

repaying these "debts" and the recipients of the transfers thus were providing value to the estate

in the form of reducing its liability.  Therefore, movants argued, they were entitled to retain

transfers from BLMIS made in satisfaction of BLMIS's "debts" to them as transfers made in

good faith for value under SIPA section 548(c).  *Id*.

Defendant's counterclaims rely on the same theories of providing value to the estate by

being compensated for being victimized in the course of the Ponzi scheme, substituting the term

"principal" for "value."  For his first cause of action, Defendant sets forth that he agreed to

---

[5] Defendant's sixth counterclaim does not use the term "principal," but incorporates prior uses of this term regarding
Defendant's entitlement to the $52,876,712.33 sum due from Levy pursuant to the Separation Agreement and
transferred to Defendant's Account.  (Answer ¶¶ 165-166.)

"forbear on the immediate withdrawal of" of the funds transferred to his account from Levy's

acct no. 1L0026 based on his "good faith understanding" that the funds were real. (Answer ¶¶

140-141.)  Thus, Defendant alleges, he is entitled to not only retain the "principal" he has already

withdrawn, but also to the demand the return of the "principal" he alleges remained on deposit in

the account at the time of BLMIS's collapse.  (Answer ¶ 142.)  For his seventh cause of action

for estoppel, Defendant likewise argues that "in good faith reliance" on "representations and

promises" from Madoff and BLMIS, he agreed to the Separation Agreement and the Judgment

(Answer ¶¶ 170-173), and therefore the Trustee is estopped recovering the $36,150,000

Defendant already collected from his divorce settlement and estopped from depriving Defendant

of the "$16,726,712.22 of *principal* remaining in the account."  (Answer ¶ 174) (emphasis

added.)  Lastly, for his sixth cause of action, Defendant argues that the "particular fraud"

perpetrated against him by Madoff and BLMIS in the course of negotiation of his divorce

settlement created an injury "in equal amount" to whatever the Trustee may recover from him in

this avoidance action.[6]  (Answer ¶¶ 166-167.)

     Each counterclaim is rooted in the idea that Defendant either collected or earned the right

to collect some form of reliance damages based on Madoff's past fraud in convincing him to

invest with BLMIS rather than accept the wire or check payments contemplated by the

Separation Agreement.  Hence, these counterclaims assert that BLMIS paid Defendant in

satisfaction its liability for these damages, an antecedent debt.  By requesting that this Court

convert the fictitious profits transferred to or withdrawn from his Account into "principal," *i.e.*

value to the estate, Defendant is asking for payments in satisfaction of his potential claims

---

[6] The Defendant styles this claim as "recoupment" as though the amount purportedly owed by the Trustee derives from a simultaneous obligation, but Defendant's pleadings make clear that there was not a simultaneous obligation: Madoff's fraud liability purportedly giving rise to this counterclaim arose pre-liquidation while Defendant's avoidance liability to the Trustee arose post-liquidation.  (Answer ¶¶ 166-167.)  There is no simultaneity.

- 14 -

against BLMIS and Madoff to serve as a bar to avoidance of these transfers under SIPA section

548(c). This is the *exact* argument previously rejected by the District Court:

> . . . to the extent that payment of defendants' state and federal law claims would
> discharge an antecedent debt, that debt runs against [BLMIS's] general estate, not
> the customer property estate, and therefore cannot be the basis of the retention of
> customer property under Section 548(c).

Antecedent Debt Decision at 424. The District Court also rejected Defendant's argument that

inter-account transfers could be deemed "principal" where no actual principal existed to be

transferred. *Id*. at 428-429 ("The funds at issue are still other people's money, and shifting them

among accounts, whether those accounts are owned by the same person or entity or, for example,

transfers among family members, does not morph those funds into actual new principal").

Defendant's attempt to re-litigate these issues against the Trustee is unfounded.

Defendant specifically participated with the Trustee in the District Court-ordered consolidated

briefing on the applicability of the "antecedent debt" defense to the Trustee's avoidance actions,

(*see* Antecedent Debt Order Ex. A), and his own counsel made these very arguments when he

argued the consolidated motions to dismiss on this issue. The Antecedent Debt Decision thus

specifically considered and rejected Defendant's arguments, and Defendant cannot be permitted

to relitigate identical arguments here.

Defendant has raised no novel arguments to support his contentions that the inter-account

transfers used to fund his Account or any fictitious gains in that Account should transform into

principal or be considered as giving value to the Debtor's estate. Under the Antecedent Debt

Decision, therefore, Defendant's first, sixth, and seventh counterclaims and should be dismissed

to the extent that they rely on the transfer or existence of principal in his Account.

### 2.    Defendant's Counterclaims for Damages are, at Best, Claims Against the General Estate that are Irrelevant to this Avoidance Action

Defendant's counterclaims for fraud, tortious interference, and estoppel seek to hold the Trustee liable for damages as though the Trustee himself operated and profited from Madoff's Ponzi scheme and must pay damages out of his own pocket.  Defendant's misdirected claims must fail, as they ignore the statutory distribution scheme set forth by SIPA and seek to allow Defendant to retain customer property or to enforce claims for damages against BLMIS's customer property estate in violation of SIPA and binding Second Circuit precedent upon which the Antecedent Debt Decision expressly relies.

Though framed as claims against the Trustee, Defendant's counterclaims are in reality claims against the Debtor's general SIPA estate.  Under SIPA, a separate, priority estate is created for distribution to BLMIS's defrauded customers according to their respective net equities:

> Separate from the general SIPA estate, a fund of "customer property" is established for priority distribution exclusively among the debtor's customers. *See* SIPA § 78*lll*(4) (defining "customer property"); *In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 722 (Bankr. S.D.N.Y.1998) ("A person whose claim against the debtor qualifies as a 'customer claim' receives preferential treatment in the distribution of assets from the debtor's estate."). Each customer is entitled to share in this fund pro rata to the extent of his Net Equity.

Net Equity Decision at 133; Antecedent Debt Decision at 423 ("SIPA creates a separate, priority customer property estate . . .").  Only customers share in the fund of customer property, to the exclusion of other creditors.  *See In re Adler Coleman Clearing Corp.*, 195 B.R. 266, 270 (Bankr. S.D.N.Y. 1996) ("The customer estate . . . is not available to satisfy the claims of general unsecured creditors. . ."); *In re New Times Secs. Servs., Inc.*, 463 F.3d 124, 127 (2d Cir. 2006) (SIPA "accord[s] those claimants in a SIPA liquidation who qualify as 'customers' of the debtor priority over the distribution of 'customer property'"); *In re Bell & Beckwith*, 937 F.2d 1104,

- 16 -

1106 (6th Cir. 1991) ("Certain property as defined by SIPA is pooled into a customer property

fund in which customers share ratably"); *see also Sec. Investor Prot. Corp. v. Barbour*, 421 U.S.

412, 416 (1975) (SIPA "creates a new form of liquidation proceeding, applicable only to member

firms, designed to accomplish the completion of open transactions and the speedy return of most

customer property."). If customer property remains after satisfying all customer claims,

remaining customer property can be distributed to those holding general unsecured claims

against the general estate. *See* SIPA § 78fff-2(c)(1).

Defendant's net equity was determined according to the Net Investment Method, as

approved by this Court and affirmed by the Second Circuit. *See* Net Equity Decision at 135

("[T]he plain language of the SIPA statute supports adoption of the Net Investment Method in

distributing customer property to Madoff investors"). According to that determination,

Defendant has no claim against BLMIS's customer property estate because he was a "net

winner" from the fraud, and may only pursue a claim against the general estate as a general

unsecured creditor. The Debtor will only have a general SIPA estate if sufficient funds are

recovered to pay additional claims over and above claims by customers who have valid net

equity claims. *Id*. at 141 ("Customer property consists of a limited amount of funds that are

available for distribution. Any dollar paid to reimburse a fictitious profit is a dollar no longer

available to pay claims for money actually invested"). No such general estate yet exists, and a

general estate may never exist if the Trustee is not able to recover sufficient funds to pay

BLMIS's customers according to their net equity.

Under SIPA's priority system, Defendant is not permitted to withhold customer property

from return to the Trustee based on claims against the general SIPA estate. Nor may he collect

funds from the Debtor's general estate before such an estate even exists. In spite of this,

Defendant's second, third, fourth, fifth, and seventh counterclaims either seek to retain the

$36,150,000 already received by Defendant, reclaim at least $16,726,712.33 "owed" on

Defendant's divorce settlement, or both, as damages for Madoff and BLMIS's fraudulent

misrepresentations and interference with Defendant's divorce.  (Answer ¶¶ 147, 151, 158, 164,

174.)  These claims expressly seek to withhold the funds Defendant has already received from

BLMIS from ever being returned to the Trustee for distribution as part of the priority customer

property estate, or seek to collect additional sums now, in the absence of a general SIPA estate.

(Answer ¶¶ 151, 174.)

Defendant's counterclaims rely on particular effects of Madoff and BLMIS's

misrepresentations:  for the purposes of the second claim, Madoff's fraud induced Defendant to

open his Account instead of accepting funds by wire or check, depriving him of his divorce

settlement (Answer ¶¶ 144-145); for the third and fifth claims, Madoff's fraud robbed Defendant

of a subsequent transferee defense (Answer ¶¶ 149-150, 162-163); and for the fourth and seventh

claims, Madoff's fraud led Defendant to believe he was accepting transfers of principal to fund

his Account rather than fictitious profits and prevented Defendant from seeking alternate sources

of payment (Answer ¶¶ 153-154, 170-174).  But for his failure to file a claim before the Bar date,

Defendant may well have had a claim against the estate for fraud perpetrated against him, as may

thousands of other customers and other creditors whom Madoff defrauded.  But as the District

Court reiterated in the Antecedent Debt Decision, any such damages claims are not claims that

are protected under SIPA, and may be made, if at all, only against the general estate.  Antecedent

Debt Decision at 424.  And, crucially, the possible existence of such damages claims does not

reduce the Trustee's customer property claim against the defendant:  they "cannot be the basis of

the retention of customer property under Section 548(c)."  *Id.*

Defendant, like other defrauded investors, was the victim of a Ponzi scheme.  He has

provided no basis why the particular misrepresentations made to him should entitle him to

"derive additional benefit at the expense of those customers who had not withdrawn funds before

the fraud was exposed."  *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238.  As the Net

Equity Decision rightly found and the Second Circuit affirmed,

> Equality is achieved in this case by employing the Trustee's method, which looks
> solely to deposits and withdrawals that in reality occurred.  To the extent possible,
> principal will be rightly returned to Net Losers rather than unjustly rewarded to
> Net Winners under the guise of profits.  In this way, the Net Investment Method
> brings the greatest number of investors closest to their positions prior to Madoff's
> scheme in an effort to make them whole.

Net Equity Decision at 142.  Defendant must not be allowed to take priority over the net loser

investors, who have not even received the return of their principal, in order to withhold ill-gotten

gains from the customer property estate or reap additional profits while the net loser customers'

claims remain unsatisfied.

Defendant's claims are against a potential BLMIS general estate that may never exist and

Defendant now improperly seeks to withhold funds from the current customer property estate

before all allowed customer claims have been satisfied.  Therefore, under Second Circuit

precedent and the Antecedent Debt Decision, Defendant's second, third, fourth, fifth, and

seventh counterclaims fail to state a claim for which relief can be granted.  In the alternative,

should this Court find that any of Defendant's counterclaims successfully states a claim for

relief, the Trustee submits that these claims must be administered through the claims process that

will operate for all creditors of BLMIS's general estate, rather than in the context of this

avoidance action.

**D.** **Defendant's Fifteenth, Sixteenth, Twenty-First, Twenty-Fourth, and Thirty-Second Through Thirty-Fourth Affirmative Defenses Fail on the Same Grounds and Should Be Struck in Whole or in Part**

In light of the failure of Defendant's counterclaims, binding Second Circuit precedent upholding the Trustee's Net Investment Method, and several specific findings in the Antecedent Debt Decision, many of Defendant's affirmative defenses prove to be entirely meritless. The Trustee therefore requests that this Court strike Defendant's fifteenth, sixteenth, twenty-first, twenty-fourth, thirty-second, thirty-third, and thirty-fourth affirmative defenses (the "Defenses"),[7] in whole or in part, as insufficient defenses under Rule 12(f) of the Federal Rules of Civil Procedure, as incorporated herein by Federal Rule of Bankruptcy Procedure 7012.

There are no remaining questions of fact or law necessary to determine the validity of these Defenses. Each Defense turns on uncontested facts regarding the operation of the BLMIS Ponzi scheme, the uncontested withdrawal and deposit activity in Defendant's Account, or Defendant's failure to file a claim with the Trustee. Also, as established above, Defendant's failure to file a timely claim with the Trustee bars Defendant's assertion of an entitlement to set-off or recoupment (sixteenth and twenty-first defenses) or entitlement to credit for payment of

---

[7] In brief, these Defenses are:

15.  Defendant's withdrawals should be deemed to be return of principal or payment of an antecedent debt and shielded from avoidance, *inter alia*, under SIPA section 548(c). (Answer ¶ 92.) Defendant also raises arguments in this defense related to "credit for the time value of money, the effects of inflation, constant dollar value, and/or reasonable rate of return" which the Trustee does not address here and does not seek to strike at this time. (*Id.*)

16.  The Trustee's claims are barred in whole or in part based on Defendant's alleged entitlement to set-off or recoupment. (Answer ¶ 93.)

21.  The Trustee's claims are barred in whole or in part based on Defendant's alleged entitlement to set-off or recoupment specifically due to Madoff's actions to convince Defendant to open the Account rather than accepting the funds by wire transfer or check; additionally Defendant alleges the Trustee is estopped from recovering funds from Defendant based on this conduct. (Answer ¶ 98.) The Trustee does not address Defendant's unclean hands argument and does not seek to strike this allegation at this time. (*Id.*)

24.  Defendant is entitled to balance on his last BLMIS statement as a matter of law. (Answer ¶ 101.)

32.  The Trustee's Net Investment Method fails to credit Defendant for the balance on his last statement prior to applicable reach-back period. (Answer ¶ 109.)

33.  The Trustee's Net Investment Method improperly enables Trustee to avoid transfers outside of applicable reach-back period. (Answer ¶ 110.)

34.  The Trustee cannot avoid balances existing prior to applicable reach-back period. (Answer ¶ 111.)

creditor claims that are now barred, *i.e.* antecedent debt (fifteenth defense).  As established

above, these Defenses are also barred under the Antecedent Debt Decision and the Second

Circuit's approval of the Trustee's Net Investment Method with respect to BLMIS customers.

In addition, Defendant's twenty-fourth, thirty-second, thirty-third, and thirty-fourth

affirmative defenses each rely on propositions of law expressly rejected by the District Court in

the Antecedent Debt Decision or previously addressed by the Second Circuit's affirmance of the

Net Equity Decision.  Defendant's twenty-fourth defense states that he is entitled to the balance

reflected on his last BLMIS statement as a matter of law; the Second Circuit found that "the

Trustee properly rejected the Last Statement Method" as it would permit those who had already

withdrawn cash exceeding their principal to benefit unfairly at the expense of those who had not

withdrawn all of their principal before the Ponzi scheme collapsed.  *In re Bernard L Madoff Inv.*

*Sec. LLC*, 654 F.3d at 240; *see also* Net Equity Decision at 142 ("Adopting the Last Statement

Method would only exacerbate the harm caused to Net Losers and would improperly distribute

customer funds based on Madoff's arbitrary design").

Defendant's thirty-second, thirty-third, and thirty-fourth defenses each rely on the

premise that the Trustee is obligated to give principal credit to BLMIS accounts for activity

occurring prior to an applicable "reach-back" period, or otherwise treat pre-reach-back activity

differently for the purposes of calculating net equity.  However, the District Court previously

heard Defendant's arguments in this regard and rejected them, finding that "there is no reason

why a line should be drawn at the beginning of the reach-back period in determining whether a

transfer was for value." Antecedent Debt Decision at 427.  "Just as defendants are entitled to net-

equity claims for amounts of principal invested before the reach-back period that they never

withdrew, so too must withdrawals before the reach-back period be considered to determine

whether a given transfer in fact compensated a defendant for a claim it would otherwise have had." *Id.*  Defendant's twenty-fourth, thirty-second, thirty-third, and thirty-fourth affirmative defenses, therefore, are meritless attempts to re-litigate defenses previously rejected in the context of the BLMIS liquidation.

"[I]f an affirmative defense is unavailable as a matter of law, the first part of the inquiry is complete," meaning that "there are no substantial questions of law or fact that might allow the defense to succeed." *Wausau Bus. Ins. Co. v. Horizon Admin. Svcs. LLC*, 803 F.Supp.2d 209, 213 (E.D.N.Y. 2011); *see also Sec. Exch. Comm'n v. Toomey,* 866 F.Supp. 719, 722 (S.D.N.Y. 1992) ("When 'the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim'") (quoting *FDIC v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22, 23 (E.D.N.Y. 1990)).  Here, the Defenses are unavailable as a matter of law, and thus the Trustee must only show prejudice to show his entitlement to strike the Defenses.  The Trustee's prejudice lies in the discovery obligations he will face if compelled to address meritless Defenses in this action.  *See Sec. Exch. Comm'n v. McCaskey*, 56 F.Supp.2d 323, 326 (S.D.N.Y. 1999) ("An increase in time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike.") (citing *Toomey*, 866 F.Supp. at 722); *Wausau*, 803 F.Supp.2d at 213; *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F.Supp.2d 109, 114 (S.D.N.Y. 2005) (finding prejudice where "length and scope of the portion of the trial related to the claims raised in this proceeding would be expanded" by inclusion of affirmative defense).  BLMIS's books and records are especially voluminous, and the Trustee will be required to incur substantial time and expense to provide Defendant with discovery related to these affirmative defenses, including production of extensive documentation and potentially preparing or securing unnecessary witness or expert

testimony.  This prejudice is especially unwarranted where the Trustee has previously – and

successfully – litigated these issues at great expense.

Therefore, there is no question of fact remaining underlying these affirmative defenses

and no substantial question of law to be determined by this Court, and the Trustee will be

prejudiced by inclusion of these affirmative defenses in the pending Avoidance Action.  *See Sec.*

*Exch. Comm'n v. KPMG LLP,* 2003 WL 21976733, at *2.  For these reasons, this Court should

strike Defendant's fifteenth and twenty-first affirmative defenses in part, *see supra* note 7, and

strike Defendant's sixteenth, twenty-fourth, thirty-second, thirty-third, and thirty-fourth

affirmative defenses in their entirety.

## <u>CONCLUSION</u>

WHEREFORE, the Trustee respectfully requests that this Court dismiss Defendant's

counterclaims and strike Defendant's Fifteenth, Sixteenth, Twenty-First, Twenty-Fourth, and

Thirty-Second Through Thirty-Fourth Affirmative Defenses, in whole or in part.

Date:   July 28, 2014
      New York, New York

By: */s/ Marc E. Hirschfield*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Marc E. Hirschfield
Email:  mhirschfield@bakerlaw.com
Tracy Cole
Email: tcole@bakerlaw.com
Ona T. Wang
Email:  owang@bakerlaw.com
M. Elizabeth Howe
Email: bhowe@bakerlaw.com
David M. McMillan
Email: dmcmillan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

- 24 -