```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Adv. Proc. No. 08-01789-smb

 4   SIPA LIQUIDATION (Substantively Consolidated)

 5   - - - - - - - - - - - - - - - - - - - - -x

 6   In the Matters of:

 7   SECURITIES INVESTOR PROTECTION CORPORATION,

 8                 Plaintiff-Applicant,

 9   v.

10   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

11                 Defendant.

12   - - - - - - - - - - - - - - - - - - - - -x

13   BERNARD L. MADOFF,

14                 Debtor.

15   - - - - - - - - - - - - - - - - - - - - -x

16                 United States Bankruptcy Court

17                 One Bowling Green

18                 New York, New York

19

20                 July 17, 2014

21                 10:46 AM

22   B E F O R E:

23   HON. STUART M. BERNSTEIN

24   U.S. BANKRUPTCY JUDGE

25
```

Page 2

1   08-01789-smb Securities Investor Protection Corporation v.

2   Bernard L. Madoff Investment Securities LLC

3   HEARING re Trustee's Motion and Memorandum to Affirm Trustee's

4   Determinations Denying Claims of Claimants Who Invested in the

5   Daprex, Felsen, Sterling or Orthopaedic ERISA Plans

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Beck

Page 3

```
 1
 2    A P P E A R A N C E S :
 3    BAKER & HOSTETLER LLP
 4         Attorneys for Irving H. Picard, Trustee for the
 5          Substantively Consolidated SIPA Liquidation of Bernard
 6          L. Madoff Investment Securities LLC and the Estate of
 7          Bernard L. Madoff
 8          45 Rockefeller Plaza
 9          New York, NY 10111
10
11    BY:   NICHOLAS J. CREMONA, ESQ.
12
13
14    BECKER & POLIAKOFF LLP
15         Attorneys for Claimants, Elizabeth Cavanaugh and
16          Laura Hallick
17          45 Broadway
18          8th Floor
19          New York, NY 10006
20
21    BY:   HELEN D. CHAITMAN, ESQ.
22
23
24
25
```

Page 4

1

2    SECURITIES INVESTOR PROTECTION CORPORATION

3         Senior Associate General Counsel for Dispute Resolution

4         805 15th Street, N.W.

5         Suite 800

6         Washington, DC 20005

7

8    BY:   KEVIN H. BELL, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2          THE COURT:  Madoff?

3      (Pause)

4          THE COURT:  The reporter needs appearances.

5          MS. CHAITMAN:  Yes.  Helen Davis Chaitman of Becker &

6  Poliakoff on behalf of Lisa Cavanaugh and Laura Hallick,

7  H-A-L-L-I-C-K.

8          MR. CREMONA:  Good morning, Your Honor.

9          THE COURT:  Good morning.

10         MR. CREMONA:  Nicholas Cremona of Baker & Hostetler

11  appearing on behalf of Irving Picard as trustee.

12         We're here this morning, Your Honor, on the trustee's

13  motion seeking affirmance of his determination of approximately

14  308 claims which relate to approximately 210 objections.  But

15  before we get to that, Your Honor, I wanted to just address a

16  housekeeping matter that Your Honor may have noticed.

17         The trustee's claims agent filed an amended affidavit

18  of service related to the motion.  It came to the trustee's

19  attention that the law firm listed as counsel for Sterling

20  Equities was incorrect on the prior affidavit of service that

21  was filed.  However, the trustee confirmed with AlixPartners

22  that the relevant party that was to receive service on behalf

23  of Sterling Equities actually was served at the time with all

24  other recipients of the motion.  And we confirmed that with

25  counsel for Sterling.  So we just wanted to bring that to Your

Page 6

1    Honor's attention.  And we filed an amended affidavit so that

2    it is clear that all parties that required service was serviced

3    at the appropriate time.

4              THE COURT:  Okay.

5              MR. CREMONA:  As I mentioned, Your Honor, the

6    trustee's motion this morning is seeking affirmance of his

7    denial of claims filed by certain claimants, certain investors

8    in BLMIS account holders, and we would submit that that

9    affirmance would be consistent with several prior decisions of

10   this Court in this very liquidation proceeding denying status

11   to customers that lack individual accounts with the debtor.

12             Specifically, as I mentioned, the motion references --

13   pertains to 308 claims filed by claimants that are participants

14   in four ERISA plans.  I think it is also telling that of the

15   308 claims that were filed, we only have two objections here

16   today on behalf of two claimants.

17             THE COURT:  What does that tell you?

18             MR. CREMONA:  I would submit to Your Honor that that

19   is telling because there was a decision by Judge Cote on July

20   25th, 2012, almost two years ago, which specifically addressed

21   this issue.  And as we indicated in our papers, we believe that

22   principles of res judicata, collateral estoppel and law of the

23   case govern the issues before the Court and, I would imagine,

24   deterred parties from filing papers as a result.  I think it's

25   particularly -- I think it's also as a result that two of the

Page 7

1    four plans that are covered by this motion actually fully

2    participated in that litigation as well as my colleague, Ms.

3    Chaitman, although on behalf of different clients, fully

4    participated in that litigation before Judge Cote.  And, in

5    fact, it is her motion to withdraw the reference and her

6    supplemental briefing in that action, again, on behalf of

7    different clients that led to that decision.  Although Daprex

8    was certainly her client here -- or, excuse me -- the

9    participants to the Daprex plan and her clients here were

10   certainly on notice as a result.

11        I think Judge Cote's decision is particularly

12   instructive given the fact that counsel here raised many of the

13   same issues and briefed the same arguments before Judge Cote.

14   Judge Cote held in that decision, which is the SIPC v.

15   Jacqueline Green, 2012 WL 3042986 decision, that ERISA does not

16   provide customers -- or, excuse me -- claimants who lack

17   accounts with customer status under SIPA and also found that

18   the participants in ERISA plans, customer status was non-

19   existent because they don't own the assets that were ultimately

20   invested with BLMIS.

21        So I think Judge Cote went through the three aspects

22   of a customer -- the customer definition under 78lll(2).  As

23   I'm sure Your Honor is familiar, there are three prongs to that

24   definition, two of which require the claimant, in order to

25   establish that he or she is a customer, they must have an

Page 8

1    account with the debtor that is actually obtainable by looking

2    at the debtor's books and records.  That is not the case here.

3    Or they must entrust with the debtor funds that they own which

4    also did not happen in this instance because each of the

5    claimants acknowledge that the funds that were invested were

6    invested in the plan and then the plan invested with BLMIS.

7          So -- and I think Judge Cote looked to the Morgan

8    Kennedy decision which is the seminal Second Circuit decision

9    on the "customer" definition.

10         THE COURT:  I thought she said she wasn't deciding

11   non-ERISA issues, though.  And that's really a non-ERISA issue,

12   isn't it?

13         MR. CREMONA:  Well, I think she was -- I mean, she

14   clearly went through the Morgan Kennedy factors and applied

15   them to ERISA plans and to participants and specifically

16   applied those very factors in her decision.  And I would submit

17   to Your Honor that nothing more than a simple application of

18   the Morgan Kennedy factors to the facts of this case would

19   warrant granting the motion in favor of the trustee.

20         And I can briefly just run through those factors for

21   Your Honor.  I think, as I said, the application of those

22   factors as applied by Judge Cote should warrant the identical

23   result here.  In the first instance, the four ERISA plans at

24   issue here, not the individual claimants, including these

25   objectors, had accounts with BLMIS that appeared in the books

Page 9

1    and records of BLMIS.  It was established that it was the ERISA

2    plans that owned the assets not the individual participants.

3    And as a result the plans, and only the plans can entrust those

4    funds or assets with BLMIS for purposes of investment.  Only

5    the account holders had the authority and the power, the sole

6    power to direct investments in the BLMIS accounts.  And the

7    trustees of the plan, in their capacities as trustees, had

8    business dealings with BLMIS and were known to BLMIS but not

9    the individual claimants.  So I would submit that, much like in

10   Judge Cote's decision, the ERISA plans here are the entities

11   that have the attributes of a "customer" within the meaning of

12   78lll(2) under SIPA and not the individual beneficiaries.

13        Just to touch on Morgan Kennedy briefly, Your Honor, I

14   think it could not be more squarely on point to the facts here.

15   There the Second Circuit looked at whether or not this -- there

16   it was a profit-sharing plan which, I guess, predated the 401K

17   plans.  But putting that aside, it was determined that the plan

18   itself was the customer under SIPA not the trustees.  And the

19   Court specifically looked at whether the three individual

20   trustees there who had the business dealings with the broker-

21   dealer in that case and had the connections and specifically

22   found that that -- they did not rise to the level of a

23   "customer", that that would stretch the definition of a

24   "customer" within the meaning of the statute beyond the

25   intention of Congress.  So I think that is squarely on point

Page 10

1   with the facts here.

2          And I would submit that the claimants here haven't met

3   their burden to establish that they have a claim.  We have

4   several prior decisions in the liquidation proceedings and

5   Judge Lifland, back in a case In re BLMIS, 454 BR 285, which

6   was affirmed by the Second Circuit at 708 F.3d 422,

7   specifically found that after citing to 78fff-2(b) of SIPA that

8   the claimant bears the burden to establish that they have and

9   that burden is not easily met.  And Judge Lifland in that case

10  cited to Judge Gonzales in the Klein, Maus & Shire, Inc. case

11  at 301 B.R. 408, which specifically quoted that SIPA clearly

12  places the burden of proof to establish customer status on the

13  claimant and cited again 78fff-2(b).  And I think, as we stated

14  in our papers, the Second Circuit has strictly construed the

15  "customer" definition.  And I would respectfully request that

16  Your Honor do so here.

17         I also think it's relevant to point out that the

18  discovery propounded by the trustee on the claimants here also

19  definitively establishes that they can't meet the "customer"

20  definition and cannot establish the Morgan Kennedy factors.  In

21  the first instance, the trustee had propounded request for

22  admissions on all of the claimants, the vast majority of which

23  have not responded.  Therefore, those self-effectuating RFAs,

24  they've admitted that they can't establish the criteria.  Ms.

25  Chaitman's clients did submit declarations.  I think they also,

Page 11

1   on their face, show that they are not "customers" within the

2   meaning of the statute.  In Ms. Cavanaugh's declaration, she

3   indicates that I would -- I acknowledge that the ERISA plan

4   invested -- the plan invested the bulk of its money through

5   BLMIS.  And that's at paragraph 2 of her declaration.  And the

6   same is true for the other claimant.  And they also state that

7   their contributions were made into the plan and not into BLMIS.

8   They had no direct contact with BLMIS in their individual

9   capacity.  And as I'm sure Your Honor has seen in the

10  declaration of Mr. Sehgal in support of the trustee's motion,

11  we have uncovered no direct connection whatsoever.  There were

12  no accounts held by these individuals that are ascertainable by

13  a review of the debtor's books and records.  And I would submit

14  that the claimants here have wholly failed to meet their burden

15  to establish that they have a claim and would respectfully

16  requested that the motion be granted.

17          THE COURT:  Thank you.

18          MR. CREMONA:  Thank you, Your Honor.

19          MR. BELL:  Kevin Bell on behalf of Securities Investor

20  Protection Corporation.

21          Your Honor, I think the trustee's counsel has stated

22  the case very clearly.  The case law beginning at Morgan

23  Kennedy and going forward, Judge Cote's decision clearly

24  established the parameters that we're dealing here.  Judge

25  Lifland's decision that Mr. Cremona cited picks up what has

Page 12

1    been the premise, namely, the burden of proof is on the

2    claimant because a SIPA claim is for priority status.  This,

3    unlike in the bankruptcy context where a claim is assumed, if

4    you want to get a SIPA claim approved to get the SIPA

5    protection, you have the burden of proof.  And that has been

6    the law under the statute for a period of time and, you know, I

7    know there was a question at a recent hearing regarding this.

8    So I think it's clear the burden hasn't been met by the two

9    claimants out of the 308 that were subject to this motion.  And

10   I would submit that the Court approve the trustee's motion.

11          THE COURT:  Okay.  Thank you.

12          MS. CHAITMAN:  Good morning, Your Honor.

13          THE COURT:  Good morning.

14          MS. CHAITMAN:  The statute, according to numerous

15   Supreme Court cases must be construed as written.  And if

16   Congress had intended that a customer be an account holder, the

17   statute could have said a customer is an account holder.

18   Instead, the definition of "customer" is twenty-six lines long

19   and it states that a "customer" is a person who deposits money

20   with a broker for the purpose of purchasing securities.  Again,

21   if Congress had intended to limit it the way SIPA and the

22   trustee -- SIPC and the trustee have sought to limit it, it

23   could easily have stated that in six words.

24          If you look at the Morgan Kennedy case, which, of

25   course, is the seminal case in the circuit, again, if the

Page 13

1    Second Circuit had believed that you have to be an account

2    holder, the Second Circuit wouldn't have listed all of the

3    factors that it listed in the Morgan Kennedy decision.  It

4    would have said each of these participants in the pension plan

5    is not an account holder.  Period.

6             THE COURT:  Can I ask you a question, though?

7             MS. CHAITMAN:  Of course.

8             THE COURT:  As I understand, one of the arguments

9    they're making, they're saying your two clients -- and let's

10   just deal with the two clients now --

11            MS. CHAITMAN:  Sure.

12            THE COURT:  -- are barred under principles of res

13   judicata, collateral estoppel, law of the case, which implies

14   that they were parties to the proceeding before Judge Cote.

15   What's your response to that?

16            MS. CHAITMAN:  We were not.  The issue before Judge

17   Cote was different.  And, in fact, Judge Cote expressly stated

18   that she was -- excuse me.  The Judge Cote case involved the

19   issue of whether feeder fund investors were customers.  And

20   what Judge Cote held -- am I confusing the Jacqueline case?

21            THE COURT:  No.  Judge -- it's the Jacqueline Green

22   rollover account --

23            MS. CHAITMAN:  That's okay.  Okay.  Excuse me.  What

24   happened there, Your Honor, was that the judge expressly stated

25   that she was not dealing with any specific factual issues.

Page 14

1    That case was put before her without --

2           THE COURT:  I understand your Morgan Kennedy argument.

3    I'm talking more about -- and she may have decided it or not

4    decided it.  And I know that the decision seems to say both

5    things.  But with respect to the pure ERISA arguments -- the

6    argument you're making now about the statutory construction.

7    The argument made by the trustee and SIPC is that was decided

8    by Judge Cote, which she certainly seems to have decided in the

9    decision.  I know you disagree with it.  But, moreover, that

10   your clients are bound by that determination, your two clients.

11   And that's what I'm getting at.  You disagree that your clients

12   are bound by that determination whether it's collateral

13   estoppel or law of the case or any of those --

14           MS. CHAITMAN:  I do, Your Honor.

15           THE COURT:  -- preclusion doctrines.

16           MS. CHAITMAN:  I do, Your Honor.  And I don't think --

17           THE COURT:  Tell me why they're not bound by it.

18           MS. CHAITMAN:  Because the trustee on the proceeding

19   that we're here now for, the trustee brought a motion for a

20   determination as to the specific 308 claims --

21           THE COURT:  Right.

22           MS. CHAITMAN:  -- that were filed.  Okay?  That had

23   not happened before.

24           THE COURT:  That's what I'm asking.  It's not clear to

25   me whether or to what extent your clients, or your two clients,

1    were parties to that prior proceeding.

2            MS. CHAITMAN:  They weren't given -- they didn't -- in

3    this case, they received a notification.  Mr. Cremona made a

4    big point about Sterling Equities being properly served.  They

5    were not served with a notification that the trustee was going

6    to seek a determination that their filed claims were invalid.

7            THE COURT:  Tell me, what was the motion that

8    eventually worked its way to Judge Cote and she withdrew the

9    reference.  I thought the trustee had made a motion.

10   Procedurally, I'm talking about.  What happened?

11           MR. CREMONA:  I can address that, Your Honor.  It's

12   laid out in Judge Cote's decision.  The trustee had originally

13   made a motion for an order affirming the trustee's

14   determinations denying claims over ERISA related objections

15   filed by the claimants.  And that was --

16           THE COURT:  And were these two claimants -- the two

17   claimants respondents in that motion?  That's what I'm trying

18   to understand.

19           MR. CREMONA:  I can tell -- I believe Daprex was.  I

20   mean, Ms. Chaitman represented --

21           THE COURT:  Okay.  As I understand it, they're

22   claiming in an individual capacity.  In other words, he served

23   308 -- did you serve the 308 claimants in this case or just the

24   funds on this motion?

25           MR. CREMONA:  That ERISA related --

Page 16

1          THE COURT:  No.  On this motion today.

2          MR. BELL:  The current motion.

3          THE COURT:  Yes.

4          MR. CREMONA:  We served those 308.

5          THE COURT:  Okay.  On the prior motion, had you also

6    served the individuals who participated in the ERISA plan?

7          MR. CREMONA:  I believe so, Your Honor.  I mean, I

8    believe that it's the same --there's an overlap of the groups.

9          THE COURT:  Well, were Ms. Hallick and Ms. Cavanaugh

10   served in that motion?  That's -- you raised this collateral

11   estoppel argument but it just wasn't clear to me whether they

12   were parties to the prior proceeding.

13         MR. CREMONA:  I can tell you -- sorry.  Just bear with

14   me.

15         THE COURT:  Okay.

16      (Pause)

17         THE COURT:  Do you know, Ms. Chaitman, if they were

18   served?  If they were named as --

19         MS. CHAITMAN:  I don't believe that they were but I

20   don't know for a fact.  They didn't contact me that they were

21   served at that point.  And indeed, if every one of the 308

22   people had been served then why did the trustee make this

23   motion now?  And the other --

24         THE COURT:  Because there were issues -- there were

25   not ERISA issues that theoretically left up -- like, for

Page 17

1    instance, your Morgan Kennedy argument.  It's really not an

2    ERISA issue.  That could be raised by anybody who invests in a

3    feeder fund or anything like that.  And --

4              MR. CREMONA:  Yes, Your Honor, if I may.

5              THE COURT:  I can't read or write it.

6              MR. CREMONA:  I apologize.  If I can just address two

7    points.

8              THE COURT:  Go ahead.

9              MR. CREMONA:  I think Your Honor is entirely correct

10   and we filed this motion now --

11             THE COURT:  I was asking a question.  I wasn't --

12             MR. CREMONA:  But just the statement you made -- this

13   was left open because Judge Cote left open factual issues that

14   may -- that objectors could raise.  We gave objectors the

15   opportunity to raise those which is why we propounded discovery

16   and gave people the opportunity to raise any factual issues

17   which we've now -- we are now addressing to the extent that

18   they exist.

19             As far as why we believe that -- the objectors were

20   provided notice and an opportunity to be heard on the ERISA

21   proceedings before Judge Cote.  And the certificate of service

22   demonstrating that is at ECF number 4533.  And their

23   attorneys -- Ms. Chaitman was served with the motion and the

24   objectors were also served directly at the address provided in

25   their proof of claim.  And the partly unredacted copy of the

Page 18

1    selected pages of certificate of service is at ECF number 4533

2    and attached at Exhibit 1.

3            THE COURT:  You know, one of the reasons I raise it in

4    addition to the preclusion doctrine arguments is I'm not sure

5    that I have jurisdiction over ERISA arguments.  Judge Cote

6    withdrew the reference of the ERISA arguments and that was

7    never re-referred to this Court.  And, I mean, I suppose if

8    they were parties, you'd have to make a new motion to withdraw

9    the reference.  But I have a question about whether I should

10   even be hearing the ERISA arguments at this point because

11   they're not before me.  But --

12           MS. CHAITMAN:  Well, if we can focus then, Your Honor,

13   on the Morgan Kennedy --

14           THE COURT:  Okay.

15           MS. CHAITMAN:  -- argument then, of course, Judge Cote

16   did except out any factual issues relating to specific claims.

17           THE COURT:  So how come she made all those findings

18   under Morgan Kennedy?  If you take a look -- I don't know if

19   you have her decision with you.  But --

20           MS. CHAITMAN:  I don't have it in front of me.  But I

21   know she went --

22           THE COURT:  -- when you get to the individual

23   claimants, she's got a separate section, Morgan Kennedy, and

24   the question I was going to ask you is how are your two clients

25   any different than the people she was talking about when she

Page 19

1    kicked off those Morgan Kennedy factors and concluded that

2    there was no separate count --

3            MS. CHAITMAN:  Well, in my brief, I'm sure you recall

4    Your Honor, I listed all the Morgan Kennedy factors and

5    demonstrated how, in fact, Hallick and Cavanaugh are satisfied,

6    virtually all of them.  There were a few that were

7    inapplicable.

8            THE COURT:  Can I ask you a question?  I looked

9    through the papers you submitted.  I didn't see any evidence of

10   contact between BLMIS, on the one hand, and your clients in

11   their individual capacity.  Everything seemed to be in their

12   capacity as the trustees or the fund.

13           MS. CHAITMAN:  That's true, Your Honor.  That's true.

14   But the fact of the matter is that as their affidavits

15   demonstrate, over a course of many, many years, they

16   communicated constantly with personnel in Madoff's offices

17   because as a person would retire from Daprex, their funds would

18   be taken out of the plan and then transferred to a rollover, an

19   IRA rollover for them.  So there can't be any doubt, based on

20   those affidavits, that the personnel in Madoff's offices

21   understood that the funds were invested for the employees not

22   just a profit-sharing --

23           THE COURT:  Well, it's a profit-sharing plan so

24   everybody knows that.

25           MS. CHAITMAN:  Right.  But in addition, it was 401K

Page 20

1    funds that Cavanaugh and Hallick authorized to be deducted from

2    their compensation and included in the profit-sharing plan.

3           THE COURT:  But that -- isn't that as between the

4    employees and the plan?  I mean, that has nothing really to do

5    with Madoff securities.

6           MS. CHAITMAN:  Yes.  But the point is that Hallick --

7    if you look at Morgan Kennedy, it was a case where the

8    participants had no control over how the funds were invested.

9    They were not consulted.  They were not permitted to opine on

10   how their funds should be invested.  The plans were run by the

11   trustee.  In this situation, the employees made the decision to

12   have the funds invested in Madoff's.  They could have made the

13   decision to have the funds invested elsewhere.  So they were

14   actively involved in that process and they understood that the

15   funds were with Madoff.  And in addition, Hallick and Cavanaugh

16   both authorized deductions from their salaries for the 401K

17   contributions to go --

18          THE COURT:  Did they let securities know that?

19          MS. CHAITMAN:  I believe they did.  I didn't

20   specifically address that in their declarations --

21          THE COURT:  Right.

22          MS. CHAITMAN:  -- because when the -- I don't have

23   that in the record.

24          THE COURT:  Okay.  Because --

25          MS. CHAITMAN:  I don't have that in the record.

1        THE COURT:  -- the information I've gotten from the

2   trustee, and it's difficult to prove a non-fact, obviously, but

3   the information is we have no record reflecting these

4   particular people other than possibly as trustees of --

5        MS. CHAITMAN:  Right.

6        THE COURT:  -- this particular profit-sharing plan.

7        MS. CHAITMAN:  Right.  At a certain point in time, as

8   the declarations indicate, Hallick and Cavanaugh acquired

9   Daprex so they were communicating really as trustees but as

10  trustees and owners of the company.

11       And I just go back, Your Honor, to the definition.  I

12  think that if the Second Circuit --

13       THE COURT:  You're going back to the ERISA argument

14  now?

15       MS. CHAITMAN:  Well, it's not.  It's a "customer"

16  argument.

17       THE COURT:  Okay.

18       MS. CHAITMAN:  It's not an ERISA argument; it's a

19  "customer" argument.  And it's something that comes up in any

20  number of cases.  If the intent of Congress had been to limit

21  SIPC insurance to account holders, it would have been so easy

22  to do that.  And in a situation like Madoff where -- you know,

23  it's particularly important because if you look at the

24  congressional purpose of SIPC insurance, and the fact that

25  Madoff encouraged people to have group accounts -- and this is

Page 22

1  not the issue right before you -- but there are any number of

2  family trusts and investment clubs, et cetera.  It was easier

3  for Madoff to have group accounts rather than individual small

4  accounts and he encouraged people to do this.  There was no way

5  that these people could understand that by agreeing to group

6  their investments with their relatives or their friends that

7  they were forfeiting SIPC insurance.  There's nothing in the

8  statute which would have told them that.

9          THE COURT:  But this was a profit-sharing plan.  It

10  wasn't Madoff -- obviously, we're speculating at this point.

11  But it's a company profit-sharing plan.  It's not a situation

12  where Madoff would go to a company and say I'm not going to

13  take the individual 401K plans from each of you people so form

14  a profit-sharing plan and I'll deal with you.  It just -- to

15  the extent it's relevant, it doesn't seem like a likely

16  scenario in this type of situation.

17          MS. CHAITMAN:  I understand that.  But I certainly

18  think that if the people -- the trustees had understood that

19  they were not getting SIPC insurance for their participants,

20  they wouldn't have had the money invested this way.  In other

21  words, there's a fundamental misunderstanding where a statute

22  says that if you deposit money with a broker for the purpose of

23  purchasing securities, you have SIPC insurance.  It doesn't say

24  but it has to be in an account in your own name.

25          THE COURT:  Well --

Page 23

1          MS. CHAITMAN:  That's a pretty significant omission in

2     the statute and it's been ignored.

3          THE COURT:  Okay.

4          MS. CHAITMAN:  Thank you so much.

5          THE COURT:  Thank you.

6          MR. CREMONA:  Your Honor, if I could briefly just

7     address three points that were raised.  As far as Your Honor's

8     question as to jurisdiction, Judge Cote's opinion specifically

9     said that it's limited to the question of ERISA and the

10    customer status under SIPA and that factual or legal arguments

11    unrelated to issues arising under ERISA will not be addressed

12    and are to be left and resolved --

13         THE COURT:  Okay.

14         MR. CREMONA:  -- by the bankruptcy court.

15         THE COURT:  Okay.

16         MR. CREMONA:  The second thing I just wanted to

17    mention, you know, Ms. Chaitman alluded to what's not in the

18    record.  And what we have here in the record is all the

19    communications by her clients --

20         THE COURT:  She's admitted that the communications

21    were in the capacity as trustee.

22         MR. CREMONA:  Exactly, Your Honor.  And I think that's

23    amply demonstrated by what's in the record.  And I think the

24    last point is I would say that this is no different than any

25    other 401K and that's specifically what Judge Cote addressed.

Page 24

1    The participants don't own the fund.  They have an interest in

2    the 401K but when you contribute -- like we all know, when you

3    contribute to a 401K, you may have the ability to control the

4    elections but you don't have any control over how those

5    entities invest those proceeds.  You have no control whatsoever

6    as to how those investments are made or allocated within that

7    specific entity.

8              THE COURT:  But I thought in this particular case,

9    people did have the ability, for example, to say I want my

10   money invested in BLMIS.

11             MR. CREMONA:  And they did.  But that doesn't mean

12   that they call --

13             THE COURT:  No.  But --

14             MR. CREMONA:  -- BLMIS and say do this or that.  Or

15   based on -- they had no authority to do that, is my point.

16             THE COURT:  Okay.  Yes, sir.

17             MR. CREMONA:  Thank you, Your Honor.

18             MR. BELL:  Your Honor, on the statute, particular the

19   section cited by Ms. Chaitman, there is a long line of cases

20   beginning in this circuit in 1976 that Judge Lifland cited in

21   that decision we talked about at 454 B.R. 285, particularly

22   where he states about customers:  "a claim on account of a

23   securities received, acquired or held" which is a language from

24   111(2).  This provision expressly and unequivocally makes clear

25   that the claim of the securities claimant must relate to an

Page 25

1    account with the debtor.  See as SIPC v. Executive Securities

2    cites as the lower court affirmed by the Second Circuit at 556

3    98 (2d Cir. 1975).  And the quotation in Judge Lifland's

4    opinion from those decisions:  "A customer is clearly limited

5    to persons who maintain accounts with broker-dealers" and also

6    would invest and trade in them.  Clearly here, these two

7    individuals were representatives of an entity which happened to

8    be this plan.  They did not, in their individual capacity,

9    which they're appearing here now asking for that protection,

10   have an account or deal as individuals with this broker-dealer

11   who happened to be a SIPC member.  So clearly, the case law in

12   this circuit has said you have to maintain an account.  You got

13   to have this individual relationship.  And it's replete

14   throughout all of the decisions.

15           THE COURT:  But if that's so, what's the relevance of

16   the Morgan Kennedy factors or considering them?

17           MR. BELL:  Because it talks about a plan.  They were

18   saying each and every individual -- if I go back to 1976 and

19   remember working on that, clearly, it was every individual in

20   that plan should be protected under that dollar amount.  And I

21   don't think it was 500 at that amount because I think that

22   changed later.  It was a lower amount.  And what the Second

23   Circuit said is the only relationship with the debtor was the

24   plan.  Even though the trustees were dealing with Morgan

25   Kennedy, the broker-dealer, they themselves, as trustees,

Page 26

1    weren't working as individuals.  They were working on behalf of

2    the plan and only the plan had the account and the protection

3    because that's the particular account.

4            Individuals, when they open a brokerage account, go to

5    a broker-dealer, sign forms.  They're assigned an account

6    number.  They create a contractual relationship with it.  When

7    we go back -- if we go back and look at the briefing at that

8    point in time, if I recall that many years ago, that's what the

9    whole criteria was.  And maybe we shorthand it now by just

10   accepting what the Court said and said you must maintain an

11   account.  But the contractual relationship is between customer

12   A and the broker where these two individuals were not acting as

13   individuals and signed an account opening a contract with a

14   broker-dealer.  Daprex did on behalf of this plan. They

15   succeeded to be trustees after they bought the company and

16   that's why they're dealing there.

17           If you look at all of the evidence put before you, you

18   have Mr. Roth who owned the company and then sold it to these

19   two individuals -- was maybe the trustee at one point in time

20   and they had succeeded to that.  Clearly, there wasn't any

21   contract between Ms. Cavanaugh and Ms. Hallick and BLMIS where

22   they said I'm a customer.  Here is -- I'm signing an agreement

23   with you.  That's the normal parlance in the brokerage industry

24   of how you open an account with the broker-dealer.  That's what

25   Congress was seeking to protect in 1970 when they created this

Page 27

1   statute.  Maybe it isn't crystal clear but Courts have found a

2   means to explain to us how to look at that as we're going

3   forward.  And Judge Lifland has addressed that in his earlier

4   decision with regard to this citing back to other cases

5   affirmed by this circuit.

6           THE COURT:  Okay.

7           MR. BELL:  Thank you, Your Honor.

8           THE COURT:  Thank you.  I'll reserve decision.

9           MS. CHAITMAN:  Thank you so much.

10          MR. CREMONA:  Thank you, Your Honor.

11      (Whereupon these proceedings were concluded at 11:19 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 28

1

2                        C E R T I F I C A T I O N

3

4    I, Lisa Beck, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8    Lisa Beck

Digitally signed by Lisa Beck
DN: cn=Lisa Beck, o, ou,
email=digital1@veritext.com,
c=US

9
Date: 2014.07.21 12:28:27
-04'00'

_____

10

Lisa Beck (CET**D 486)

11

AAERT Certified Electronic Transcriber

12

Veritext

13

330 Old Country Road

14

Suite 300

15

Mineola, NY 11501

16

17

Date:  July 21, 2014

18

19

20

21

22

23

24

25