SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955
William D. Zabel
Marcy Ressler Harris
Michael Kwon
Jennifer M. Opheim
*Attorneys for Intervenors the Picower Parties*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 14-01840 (SMB) |
| CAPITAL GROWTH COMPANY; DECISIONS, INC.; FAVORITE FUNDS; JA PRIMARY LIMITED PARTNERSHIP; JA SPECIAL LIMITED PARTNERSHIP; JAB PARTNERSHIP; JEMW PARTNERSHIP; JF PARTNERSHIP; JFM INVESTMENT COMPANIES; JLN PARTNERSHIP; JMP LIMITED PARTNERSHIP; JEFFRY M. PICOWER SPECIAL COMPANY; JEFFRY M. PICOWER, P.C.; THE PICOWER FOUNDATION; THE PICOWER INSTITUTE OF MEDICAL RESEARCH; THE TRUST F/B/O | **INTERVENORS' OPPOSITION TO THE FOX PLAINTIFFS' MOTION FOR DISCOVERY** |

| | |
|---|---|
| GABRIELLE H. PICOWER; BARBARA PICOWER, individually and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabriel H. Picower, | ) ) ) ) ) ) |
| Intervenors, | ) ) |
| v. | ) ) |
| SUSANNE STONE MARSHALL; ADELE FOX; MARSHA PESHKIN; RUSSELL OASIS; A & G GOLDMAN PARTNERSHIP; and PAMELA GOLDMAN, | ) ) ) ) ) |
| Defendants. | ) |

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................................. ii

Preliminary Statement ............................................................................................................... 1

Argument .................................................................................................................................. 2

    I.     This Court Should Deny The Fox Motion For Discovery, Just As It Denied Their Prior Discovery Motion ............................................................................................... 2

    II.    This Court Again Should Instruct The Fox Plaintiffs To Refrain From Character Attacks On The Picower Parties ..................................................................................... 5

    III.   The Requested Discovery Is Baseless And Unduly Burdensome ....................................... 5

Conclusion ................................................................................................................................ 8

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                          **Page(s)**

*In re Apotex Inc.*,
    No. M12-160, 2009 WL 618243 (S.D.N.Y. Mar. 9, 2009) .................................................5, 6

*Fox v. Picard,*
    848 F. Supp. 2d 469 (S.D.N.Y. 2012)..........................................................................................4

*In re MF Global Inc.*,
    No. 11-02790 MG, 2013 WL 74580 (Bankr. S.D.N.Y. Jan. 8, 2013) ...................................6, 7

*Picard v. Fox*,
    429 B.R. 423 (Bankr. S.D.N.Y. 2010)........................................................................................2

*Picard v. Fox*,
    511 B.R. 375 (Bankr. S.D.N.Y. 2014)........................................................................................7

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    Nos. 08-1789 & 09-1197, 2011 WL 10549389 (Bankr. S.D.N.Y. Jan. 13, 2011.) ............2, 3, 4

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    424 B.R. 122 (Bankr. S.D.N.Y. 2010)........................................................................................7

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011).......................................................................................................7

*Stoner v. New York City Ballet Co.*,
    No. 99 Civ. 0196 (BSJ), 2002 WL 523270 (S.D.N.Y. Apr. 8, 2002).........................................6

Intervenors Capital Growth Company; Decisions, Inc.; Favorite Funds; JA Primary Limited Partnership; JA Special Limited Partnership; JAB Partnership; JEMW Partnership; JF Partnership; JFM Investment Companies; JLN Partnership; JMP Limited Partnership; Jeffry M. Picower Special Company; Jeffry M. Picower, P.C.; The Picower Foundation; The Picower Institute of Medical Research; The Trust f/b/o Gabrielle H. Picower; Barbara Picower, individually and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabriel H. Picower (the "Picower Parties" or "Intervenors") respectfully submit this Opposition to the Fox Plaintiffs' Motion for an Order: (i) Authorizing Discovery from the Trustee, April Freilich, Barbara Picower, and Bernard Madoff Pursuant to Fed.R.Bankr.P. 2004, and Authorizing the Deposition of Madoff to Preserve Testimony Pursuant to Fed.R.Civ.P. 27; (ii) Authorizing the Deposition of Madoff Pursuant to Fed.R.Civ.P. 30(a)(2)(B); and (iii) Directing the Sequence of Discovery Pursuant to Fed.R.Civ.P. 26 (the "Fox Motion" or "Fox Brief").

## PRELIMINARY STATEMENT

Twice the Fox Plaintiffs[1] have tried to assert claims against the Picower Parties that are not derivative of the Trustee's Claims (as that term is defined below), and twice they have failed. Now, when they have no action pending against the Picower Parties and no viable theory of recovering from them, the Fox Plaintiffs seek discovery pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") to "obtain facts needed to craft an amended complaint containing the particularized allegations against the Picower [Parties] that the Court found lacking." (Fox Br. at 5.) The Fox Plaintiffs also seek the discovery to "show that their

---

[1] The "Fox Plaintiffs" refer to Defendants Susanne Stone Marshall, Adele Fox, Marsha Peshkin and Russell Oasis.

1

control-person claims do not duplicate or derive from any claims barred by the Permanent Injunction." (*Id.* at 4, 5, ECF No. 64.)[2]

All of the Fox Plaintiffs' requests for discovery are improper and should be denied for the reasons herein and in the Trustee's Brief in Opposition to Fox Plaintiffs' Motion For Discovery (the "Trustee's Brief"), also being filed today. To avoid unnecessary duplication, the Picower Parties join in, adopt, and incorporate by reference the Trustee's Brief in its entirety, and the factual and legal arguments therein, as if fully set forth herein and made a part hereof. The Picower Parties respectfully submit the additional factual and legal arguments below in further opposition to the Fox Motion.

## ARGUMENT

### I. This Court Should Deny The Fox Motion For Discovery, Just As It Denied Their Prior Discovery Motion

This adversary proceeding arises from the notorious Ponzi scheme perpetrated by Bernard L. Madoff through his broker-dealer, Bernard L. Madoff Investment Securities, LLC ("BLMIS"). Madoff was arrested on December 11, 2008. On December 15, 2008, the United States District Court for the Southern District of New York appointed Irving Picard (the "Trustee") as Trustee for the liquidation of BLMIS ("the BLMIS Liquidation") and removed that proceeding to the United States Bankruptcy Court for the Southern District of New York. *See Picard v. Fox*, 429 B.R. 423, 426 (Bankr. S.D.N.Y. 2010).

As part of the BLMIS Liquidation, on May 12, 2009, the Trustee filed an adversary proceeding against the Picower Parties to recover their net withdrawals from BLMIS,

---

[2] The "Permanent Injunction" refers to the permanent injunction included in this Court's order, dated January 13, 2011, which enjoins any BLMIS customer "from asserting any claim against [the Picower Parties] that is duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the [Picower Parties] . . . ." *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, Nos. 08-1789 & 09-1197, 2011 WL 10549389, at *4 (Bankr. S.D.N.Y. Jan. 13, 2011).

2

which ultimately were found to total $7.2 billion. *See id.* at 429. The Trustee's complaint against the Picower Parties alleged fraudulent transfer, preference, turnover, and state law fraudulent conveyance claims (the "Trustee's Claims"). After motion practice and extensive negotiations among the Trustee, the Picower Parties, and, ultimately, the United States Attorneys' Office, on December 17, 2010, the Trustee and the Picower Parties entered into a settlement agreement that fully and finally resolved the Trustee's Claims (the "Settlement Agreement"). (*See* Settlement Agreement ¶ 3, *Picard v. Picower*, No. 09-1197 (Bankr. S.D.N.Y. Dec. 17, 2010), ECF No. 25 Ex. A.) Contrary to the Fox Plaintiffs' false assertion that the Picower Parties were able to "escape liability" in connection with their BLMIS investments (Fox Br. at 4), the Settlement Agreement required the Picower Parties to forfeit 100% of their net withdrawals from BLMIS for distribution to the victims of Madoff's fraud. The total amount forfeited by the Picower Parties was in excess of $7.2 billion. The Trustee received $5 billion of the forfeited amount for distribution to BLMIS customers. The remaining $2.2 billion is being distributed by the Department of Justice.

Notably, Fox and Marshall objected to the Settlement Agreement and sought discovery to uncover facts to challenge the Settlement Agreement. (*Picard*, No. 09-1197 (Bankr. S.D.N.Y. Jan. 6, 2011), ECF Nos. 32 (Marshall Objection at 4, 16-17), 32-1, 34 (Fox Objection at 2, 4, 21), 34 Ex. B.) On January 13, 2011, Judge Lifland overruled Fox's and Marshall's objections and issued an order approving the Settlement Agreement (the "Settlement Order"). *SIPC*, 2011 WL 10549389, at *4. The Settlement Order, *inter alia,* included the Permanent Injunction, which enjoins any BLMIS customer – including the Fox Plaintiffs (and the Goldman Plaintiffs)[3] – "from asserting any claim against [the Picower Parties] that is duplicative or

---

[3] The "Goldman Plaintiffs" refer to Defendants A & G Goldman Partnership and Pamela Goldman.

3

derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the [Picower Parties] . . . ." *Id.* The Settlement Order also held that Fox and Marshall were not entitled to discovery in connection with the settlement negotiations, the adversary proceeding, or for any other reason. *Id.* at *3-4, *aff'd by Fox v. Picard*, 848 F. Supp. 2d 469, 488 n.7 (S.D.N.Y. 2012).

Now, three and a half years after entry of the Settlement Order, following another failed attempt to recover from the Picower Parties what they are unable to recover in the BLMIS Liquidation, the Fox Plaintiffs seek the same discovery they sought in opposing entry of the Settlement Order. But this time, they attempt to cast their requests differently. However, the "new" requests, for all intents and purposes, are no different than before. For instance, whereas previously Marshall sought "documents reflecting or relating to the purchase and sale of securities in the Picowers' BLMIS accounts" (Marshall Doc. Reqs. No. 7, *Picard*, No. 09-1197 (Bankr. S.D.N.Y. Jan. 6, 2011), ECF No. 32-1), the Fox Motion seeks discovery "relating to transactions between BLMIS and the Picower Defendants" (Fox Br. at 9-10). Similarly, whereas previously Marshall sought "[a]ll Documents, including Communications, relating to or supporting the allegations at paragraphs 3, 4, 28, 62, 63 (and all subparts thereto) [which allegations alleged knowledge of Madoff's Ponzi scheme on the part of some of the Picower Parties]" (Marshall Doc. Reqs. No. 11, *Picard*, No. 09-1197 (Bankr. S.D.N.Y. Jan. 6, 2011), ECF No. 32-1), the Fox Motion seeks discovery relating to "the Picower Defendants' involvement in the fraudulent scheme perpetrated on BLMIS customers" (Fox Br. at 9-10).

This Court correctly denied the baseless discovery requests made by Fox and Marshall in opposing approval of the Settlement Agreement. The Fox Plaintiffs should not be allowed to circumvent the Court's earlier ruling by bringing thinly-veiled "new" requests for the

4

very same discovery. The Court again should deny the Fox Plaintiffs' requests for discovery, as, again, they are baseless, for the reasons herein and in the Trustee's Brief.

## II. This Court Again Should Instruct The Fox Plaintiffs To Refrain From Character Attacks On The Picower Parties

Throughout the Fox Motion, the Fox Plaintiffs refer to the Picower Parties as "Madoff's co-conspirators" and assert that their "conduct was just as criminal as Madoff's" or make similar inflammatory assertions. (*E.g.*, Fox Br. at 1, 4, 10, 15.) The same *ad hominem* attacks against the Picower Parties pervaded the Fox Plaintiffs' motion in opposition to the Settlement Agreement (and virtually every submission the Fox Plaintiffs have made in this or related cases). The Fox Plaintiffs' counsel, then representing Defendant Marshall only, repeatedly referred to the Picower Parties as "criminals" having committed "heinous crimes." (Marshall Objection at 2-5, *Picard*, No. 09-1197 (Bankr. S.D.N.Y. Jan. 6, 2011), ECF No. 32.) The conduct was so unprofessional that, during the January 13, 2011 hearing on the Settlement Agreement, Judge Lifland chastised the Fox Plaintiffs' counsel for her inflammatory and accusatory statements, and instructed her to "tone it down." (Tr. at 32:7-8, 15-18, *SIPC v. Madoff*, No. 08-01789-brl (Bankr. S.D.N.Y. Jan. 14, 2011), ECF No. 3815.) Now, three and a half years later, and despite the Court's clear prior admonition, the Fox Plaintiffs' counsel continues to malign the Picower Parties through the very same baseless and incendiary language. The bar should be higher the second time.

## III. The Requested Discovery Is Baseless And Unduly Burdensome

In addition to the reasons stated in the Trustee's Brief, the Fox Motion should be denied because the pre-complaint discovery the Fox Plaintiffs seek is vexatious and abusive to the Picower Parties. Putting aside that there is no right to discovery here, as there is no action pending against the Picower Parties, discovery that is unduly burdensome or abusive is

5

impermissible even in a pending action. *See In re Apotex Inc.*, No. M12-160, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (discovery requests were unduly intrusive and burdensome where, *inter alia*, documents dated back nearly thirty years, employees had retired, and plants had closed); *Stoner v. New York City Ballet Co.*, No. 99 Civ. 0196 (BSJ), 2002 WL 523270, *2 nn.2 & 3 (S.D.N.Y. Apr. 8, 2002) (denying discovery in light of plaintiff's campaign of abusive discovery requests).

Here, the Fox Plaintiffs seek documents and depositions from, among others, Mrs. Picower, who has never been alleged to have managed even her own BLMIS accounts, let alone the BLMIS accounts of the other Picower Parties or any other BLMIS customers, and from Ms. Freilich, who has never even been named a putative party in any of the Fox Plaintiffs' defective complaints. According to the Fox Motion, the discovery of Mrs. Picower and Ms. Freilich would relate to transactions and conduct that spanned a number of decades and concern net withdrawals from BLMIS totaling more than $7.2 *billion*. Yet in the Settlement Agreement between the Picower Parties and the Trustee, both Mrs. Picower and Ms. Freilich were specifically released by the Trustee and BLMIS from any claims against them that "arise out of, are based on, or relate in any way to BLMIS, the Picower BLMIS Accounts . . . or the Picower [Parties]." (*See* Settlement Agreement ¶ 3, *Picard*, No. 09-1197 (Bankr. S.D.N.Y. Dec. 17, 2010), ECF No. 25 Ex. A.) The time, expense, and burden to locate, review and produce such a volume of documents, and to be prepared to answer questions about them at depositions, would be staggering, and contrary to Mrs. Picower's and Ms. Freilich's legitimate expectations in light of the Settlement Agreement. Especially in the absence of a valid complaint, no "good cause" could be shown for imposing such a burden on Mrs. Picower and Ms. Freilich. *See In re MF Global Inc.*, No. 11-02790 (MG), 2013 WL 74580, at *1 (Bankr. S.D.N.Y. Jan. 8, 2013) (in

6

determining whether to grant Rule 2004 motion, "the bankruptcy court is required to make a finding of good cause for the examination"). Moreover, "the court must also weigh the relevance of the discovery against the burden it will impose." *Id.*

Not only is the discovery sought by the Fox Plaintiffs unduly burdensome, it is also abusive and harassing, given that the Fox Plaintiffs have been relentlessly hounding the Picower Parties since February 16, 2010 – just one week after the Fox Plaintiffs argued (unsuccessfully) in this Court in opposition to the Trustee's so-called "Net Investment Method" for calculating net equity.[4]  Since then, when it became clear to the Fox Plaintiffs that they would be unlikely to prevail in their opposition to the Net Investment Method for determining net equity, they turned their sights on the Picower Parties, non-debtors, to circumvent the eventual decision of this Court upholding the Net Investment Method.

The Picower Parties have incurred (and continue to incur) significant costs defending themselves from the Fox Plaintiffs' baseless accusations. They should not have to incur additional costs engaging in intrusive, unnecessary and futile *pre-complaint* discovery. The discovery is futile insofar as the Fox Plaintiffs seek discovery "relating to transactions between BLMIS and the Picower [Parties]" (Fox Br. at 10). As the transactions between the Picower Parties and BLMIS were the subject of the Trustee's Claims against the Picower Parties, the Permanent Injunction bars any new claims based on those same transactions. *See generally Picard v. Fox*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014). This Court, two courts in the Southern District of New York, and the Second Circuit all have concluded that the Picower Parties' own account activity at BLMIS cannot support independent claims against the Picower Parties.

---

[4]  Under the Trustee's Net Investment Method, upheld by the Second Circuit, Net Equity is the amount of cash deposited by a customer into a BLMIS account less any amounts already withdrawn by the customer from that account. *SIPC v. Bernard L. Madoff Investment Securities LLC*, 424 B.R. 122, 125 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011).

Permitting such discovery when any facts adduced cannot lead to a viable action is the very definition of undue burden and abuse.

## CONCLUSION

For the reasons in the Trustee's Brief, and for the additional reasons herein, the Fox Motion should be denied in its entirety.

Dated: New York, New York
August 8, 2014

**SCHULTE ROTH & ZABEL LLP**

By: Marcy Ressler Harris
William D. Zabel
Marcy Ressler Harris
Michael Kwon
Jennifer M. Opheim

919 Third Avenue
New York, New York  10022
(212) 756-2000

*Counsel to the Picower Parties*