**Return Date and Time: August 19, 2014 at 10:00 a.m.**
**Objection Deadline: August 12, 2014 at 5:00 p.m.**

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York  10019
Telephone:     (212) 373-3000
Facsimile:     (212) 757-3990
Martin Flumenbaum
Stephen J. Shimshak
Andrew J. Ehrlich
Caitlin E. Grusauskas
Brette Tannenbaum

*Attorneys for the Estate of Mark D. Madoff and*
*Andrew H. Madoff individually and as Executor*
*of the Estate of Mark D. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE ESTATE OF MARK D. MADOFF, ANDREW H. MADOFF, individually and as Executor of the Estate of Mark D. Madoff, and STEPHANIE S. MACK, <br><br> Defendants. | Adv. Pro. No. 09-1503 (SMB) <br><br> **Related Doc: 184** <br><br><br> **MEMORANDUM OF LAW OF DEFENDANTS ESTATE OF MARK D. MADOFF AND ANDREW H. MADOFF IN OPPOSITION TO THE TRUSTEE'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................i

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL BACKGROUND .................................................................................4

PROPOSED AMENDMENTS........................................................................................6

ARGUMENT...................................................................................................................8

    I.      INTRODUCTION ..................................................................................8

    II.    THE TRUSTEE IS BARRED FROM ASSERTING
          THE MSIL ALLEGATIONS BY THE DOCTRINES
          OF RES JUDICATA AND COLLATERAL ESTOPPEL ........................9

          A.    The U.K. Judgment Adjudicated the Same Facts
               and Issues Asserted in the Proposed TAC...........................................13

          B.    The Trustee's MSIL Allegations Were Fully,
               Fairly, and Actually Litigated in the U.K. Proceeding. .......................15

          C.    The MSIL Issues Pled in the Proposed TAC
               Were Essential to the U.K. Judgment. ................................................15

    III.   AMENDMENT TO ASSERT A CLAIM OF EQUITABLE
          DISALLOWANCE SHOULD BE BARRED AS FUTILE
          BECAUSE THAT CLAIM IS NOT LEGALLY COGNIZABLE...........16

    IV.   THE MOTION TO AMEND SHOULD BE
          DENIED FOR UNDUE DELAY ............................................................19

    V.    THE COURT SHOULD STRIKE ALL IMMATERIAL
          AND PREJUDICIAL REFERENCES TO CRIMINAL
          PLEAS  AND CONVICTIONS FROM THE PROPOSED TAC.............23

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re 2435 Planfield Ave., Inc.*,
    223 B.R. 440 (Bankr. D.N.J. 1998) ................................................................. 12

*In re Adelphia Commc'ns Corp.*,
    365 B.R. 24 (Bankr. S.D.N.Y. 2007) .................................................................. 19

*Adelphia Recovery Trust* v. *Bank of Am.*,
    390 B.R. 64 (S.D.N.Y. 2008) ............................................................................. 19

*AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.*,
    626 F.3d 699 (2d Cir. 2010) .............................................................................. 16

*Alesayi Beverage Corp.* v. *Canada Dry Corp.*,
    947 F. Supp. 658 (S.D.N.Y. 1996) .................................................................... 11

*Anderson News, L.L.C.* v. *Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012) .............................................................................. 16

*Petition of Bloomfield S.S. Co.*,
    298 F. Supp. 1239, *aff'd*, 422 F.2d 728 (2d Cir. 1970) ....................................... 12

*In re Bruetman*,
    259 B.R. 649 (Bankr. N.D. Ill. 2001) ................................................................ 12

*Canadian Imperial Bank of Commerce* v. *Saxony Carpet Co., Inc.*,
    899 F. Supp. 1248 (S.D.N.Y. 1995) .................................................................. 11

*Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*,
    126 F.3d 365 (2d Cir. 1997) .............................................................................. 14

*Dais* v. *Lane Bryant, Inc.*,
    No, 97 Civ. 2011, 2000 WL 145755 (S.D.N.Y. Feb. 8, 2000) ............................ 20

*Diorinou* v. *Mezitis*,
    237 F.3d 133 (2d Cir. 2001) .............................................................................. 11

*Foman* v. *Davis*,
    371 U.S. 178 (1962)............................................................................................. 8

*In re Fordu*,
    209 B.R. 854 (6th Cir. BAP 1997) .................................................................... 12

*G-I Holdings, Inc.* v. *Baron & Budd*,
238 F. Supp. 2d 521 (S.D.N.Y. 2002) .................................................................... 24

*Gordon and Breach Sci. Publishers, S.A.* v. *Am. Inst. of Physics*,
905 F. Supp. 169 (S.D.N.Y. 1995) ....................................................................... 10

*Grede* v. *Bank of N.Y.*,
No. 08 C 2582, 2009 WL 188460 (N.D. Ill. Jan. 27, 2009) ................................ 17

*Grogan* v. *Garner*,
498 U.S. 279 (1991)............................................................................................. 12

*Hilton* v. *Guyot*,
159 U.S. 113 (1895)............................................................................................. 11

*ICC Chem. Corp.* v. *TCL Indus. (Malaysia) SDN*,
206 F. App'x 68 (2d Cir. 2006) ..................................................................... 11, 15

*Law* v. *Siegel*,
134 S. Ct. 1188 (2014)................................................................................... 17, 18

*Leber* v. *Citigroup Inc.*,
No. 07 Civ 9329, 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011) ......................... 19

*Leo Feist, Inc.* v. *Debmar Publ'g Co.*,
232 F. Supp. 623 (E.D. Pa. 1964) ....................................................................... 12

*In re LightSquared, Inc.*,
504 B.R. 321 (Bankr. S.D.N.Y. 2013)............................................... 16, 17, 18, 19

*Low* v. *Robb*,
No. 11-CV-2321 (JPO), 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012).................. 24

*NML Capital, Ltd.* v. *Banco Central de la Republica Argentina*,
652 F.3d 172 (2d Cir. 2011) ......................................................................... 12, 13

*Paramedics Electromedicina Comercial, Ltda.* v. *GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004) ................................................................................ 11

*Pepper* v. *Litton*,
308 U.S. 295 (1939)............................................................................................. 19

*Priestley* v. *American Airlines, Inc.*,
No. 89 Civ. 8265, 1991 WL 64459 (S.D.N.Y. Apr. 12, 1991)............................. 22

*Richardson Greenshields Secs. Inc.* v. *Lau*,
113 F.R.D. 608 (S.D.N.Y. 1986) ......................................................................... 20

*Ruotolo* v. *City of N.Y.*,
        No. 03 Civ. 5045, 2006 WL 2372236 (S.D.N.Y. Aug. 16, 2006) ................... 8, 20

*Sarl Louis Feraud Int'l* v. *Viewfinder, Inc.*,
        489 F.3d 474 (2d Cir. 2007) ............................................................... 12

*Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*,
        12 Misc. 115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014). ................... 23

*In re Shiver*,
        396 B.R. 110 (Bankr. S.D.N.Y. 2008) ................................................... 12

*Sung Hwan Co.* v. *Rite Aid Corp.*,
        7 N.Y. 3d 78 (N.Y. 2006) ................................................................. 12

*Taylor* v. *Sturgell*,
        553 U.S. 880 (2008) ....................................................................... 10

*In re Teligent, Inc.*,
        640 F.3d 53 (2d Cir. 2011) ............................................................... 13

*Toto* v. *McMahan, Brafman, Morgan & Co.*,
        No. 93 CIV. 5894 (JFK), 1995 WL 46691 (S.D.N.Y. Feb. 7, 1995) ................... 24

*Victrix S.S. Co.* v. *Salen Dry Cargo A.B.*,
        825 F.2d 709 (2d Cir. 1987) ............................................................. 11

*Zeevi Holdings Ltd.* v. *Republic of Bulgaria*,
        494 F. App'x 110 (2d Cir. 2012) ..................................................... 12, 14

## STATUTES

11 U.S.C. § 107(b) ....................................................................... 24

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(f) ...................................................................... 24

Defendants Estate of Mark D. Madoff and Andrew H. Madoff, individually and as Executor of the Estate of Mark D. Madoff, respectfully submit this Memorandum in Opposition to the Motion of Irving H. Picard (the "Trustee"), as Trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities, LLC ("BLMIS") and the estate of Bernard L. Madoff, for Leave to File a Third Amended Complaint (the "Motion to Amend").

## PRELIMINARY STATEMENT

The Trustee for BLMIS was appointed nearly six years ago.   Nearly five years ago, he first filed suit against Mark and Andrew Madoff.   Apparently not satisfied to pursue claims against Mark and Andrew only in this forum, four years ago he <u>also</u> brought suit against them in the United Kingdom.

After a full and fair hearing in that case, including extensive pre-trial disclosure and a six-week bench trial, the Trustee was dealt a resounding defeat.   The Honorable Mr. Justice Popplewell, of the United Kingdom High Court of Justice, Queen's Bench Division, Commercial Court, issued a 188-page decision that emphatically and decisively rejected the Trustee's theory of liability against Andrew and Mark—namely, that they breached their duties because they knew that their father diverted money from his corrupt Investment Advisory ("IA") business to their legitimate market-making and proprietary trading businesses, which was subsequently transferred to and from BLMIS's U.K. affiliate, Madoff Securities International, Ltd. ("MSIL").   Mr. Justice Popplewell held that Andrew and Mark, among others, "had no reason to suspect Bernard Madoff's fraud, and none for a moment did so."   (Exhibit 1 to the Declaration of Andrew J. Ehrlich ("Ehrlich Decl.") ¶ 7.)   He held that neither "was in breach of his duties to act in what he perceived to be the interests of MSIL and to exercise reasonable skill and care."   (*Id.* ¶ 439.)   Mr. Justice Popplewell denounced the Trustee for "poisonous press

releases" and an "unfair degree of hyperbole," and concluded his opinion by announcing that Andrew and Mark's "honesty and integrity has been vindicated." (*Id.* ¶ 470.)

The Trustee's apparent response to such a ringing rejection of his theories is simply to seek another bite at the apple here.

This Court should not permit it. While the motion for leave to amend this complaint for a third time states that the amendment purports merely to "reorganize[] the same factual allegations in the Second Amended Complaint to focus on the Trustee's claims against the remaining Defendants" and "streamline" the case, that is simply false. (Pl.'s Memo. 7–8.) Rather, the Trustee seeks to replead the very same "unfair degree of hyperbole" that Mr. Justice Popplewell rejected on the merits.

The causes of action in the proposed Third Amended Complaint ("Proposed TAC"), with one exception discussed below, may as a technical matter be the same as those asserted in previous iterations of the complaint. But the theory behind them has now radically shifted. Previously, counsel for the Trustee announced at oral argument on Mark and Andrew's motion to dismiss that these were "classic faithless servant claims" that sounded in negligence, did not require proof that Andrew and Mark knew of their father's massive fraud, and rested on the essential allegation that Andrew and Mark did not adequately fulfill their duties running the proprietary trading and market making operations. Now, having had his allegations of actual fraud rejected by one tribunal, he seeks to reassert these allegations in this proceeding. Indeed, the Trustee seeks to assert the very same allegations concerning MSIL transfers that Mr. Justice Popplewell rejected as insufficient to sustain a claim that Mark and Andrew engaged in a dereliction of duty. We emphatically deny each and every one of these proposed amendments, just as we did in England. But it should be unnecessary to reach the merits, because such

proposed amendments should be rejected under the doctrine of res judicata. These proposed amendments assert claims between the same parties as did the English case, about the same allegations, and that prior proceeding is final and no longer subject to appeal.

The bottom line is that it is simply too late for the Trustee to yet again reinvent his complaint. The belated reshaping of the Trustee's complaint is all the more objectionable because it is not the first time he has pursued this tactic. Two and one-half years ago, he sought leave to revamp his complaint, which leave the Court largely granted, to add new theories of liability, new causes of action, and new defendants. The Trustee has not asserted that any of the facts underlying his proposed amendments are based on information to which he did not have access prior to the filing of the SAC. Although the criminal case against former BLMIS employees had not yet been tried at that time, all of the trial defendants had been indicted, and others had pleaded guilty to crimes in connection with their participation in the Ponzi scheme, including Frank DiPascali, former director of operations at BLMIS, and David Friehling, Bernie Madoff's personal accountant. Indeed, the proposed amended complaint relies on testimony from the recent criminal trial in just <u>four</u> instances scattered throughout the complaint. (¶¶ 63, 78 n.4, 84, 110 n.8.) Accordingly, nothing has changed since the prior amendment other than the rejection of the Trustee's claims by the English tribunal, and the Trustee's Motion to Amend does not seriously attempt to defend his tardiness.

Finally, in addition to the changed factual theories, the Trustee does seek leave to add one new claim—of equitable disallowance. But this amendment is futile as a matter of law. The Bankruptcy Code contains no such claim; indeed the plain language of Section 502 bars it. Judge Chapman's recent rejection of an equitable disallowance claim in the *LightSquared* case

makes clear why judicial attempts to fashion this purported cause of action as an equitable claim should be rejected as a matter of law.

## PROCEDURAL BACKGROUND

On December 10, 2008, Bernard Madoff confessed to his sons Mark and Andrew that the IA business at BLMIS—a wholly separate business from the legitimate proprietary trading and market-making businesses run by Mark and Andrew—was a complete fraud, a Ponzi scheme "of epic proportions." *See* Press Release, "SEC Charges Bernard L. Madoff for Multi-Billion Dollar Ponzi Scheme" (Dec. 11, 2008), *available at* http://www.sec.gov/news/press/2008/2008-293.htm (last visited August 11, 2014). Mark and Andrew immediately contacted federal authorities to report their father's crime, and their father was arrested by the FBI the very next day. Mark and Andrew's swift action prevented the dissipation of at least $170 million in investor funds.

The Trustee was appointed by the United States District Court for the Southern District of New York on December 15, 2008 to oversee the liquidation of BLMIS. *See* Order, *SEC* v. *Bernard L. Madoff, et al.*, No. 10 Civ. 10791 (S.D.N.Y. Dec. 15, 2008) (dkt. no. 4). In that role, the Trustee has been working closely, from the outset, with the FBI, the U.S. Attorney's Office, the SEC, and others. *See* First Application of Irving H. Picard, Trustee, for Allowance of Interim Compensation for Services Rendered ¶¶ 16, 22, *Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (SMB) (Bankr. S.D.N.Y. July 10, 2009) (dkt. no. 320) (requesting compensation for time spent on meetings, correspondence, and cooperative efforts with these offices between December 15, 2008 and April 30, 2009). The Trustee's early investigation of BLMIS's operations and assets included obtaining BLMIS records retrieved by the FBI from its Third Avenue headquarters and other locations, as well as the service of "hundreds" of subpoenas to obtain additional documents. *Id.* ¶ 16.

After an appearance on *60 Minutes* days before announcing the plan to file a suit "against Madoff's sons, Mark and Andrew, his brother Peter, and his niece Shana, accusing them of negligence and breach of fiduciary duty in their roles at the company," the Trustee filed the instant lawsuit on October 2, 2009. *See The Madoff Scam: Meet the Liquidator*, Sept. 25, 2009, www.cbsnews.com/news/the-madoff-scam-meet-the-liquidator-25-09-2009/.

The October 2, 2009 complaint asserted a series of claims against the defendants, including common law claims seeking tort damages under theories of breach of fiduciary duty and negligence, and claims to avoid and recover alleged transfers to defendants Peter B. Madoff, Mark D. Madoff, Andrew H. Madoff, and Shana D. Madoff pursuant to the Bankruptcy Code and the New York Debtor and Creditor Law ("NYDCL"). (Dkt. no. 1 ¶¶ 112–214.) Mark and Andrew moved to dismiss that complaint on March 15, 2010. (Dkt. no. 13.) On September 22, 2011, the Bankruptcy Court issued a decision denying Mark and Andrew's motion as to the common law claims, but dismissed much of the Trustee's claims pursuant to the Bankruptcy Code and the NYDCL, granting the Trustee leave to replead. (Dkt. no. 55.) The Trustee filed an Amended Complaint on November 7, 2011 (dkt. no. 64), and then on December 23, 2011, the Trustee filed a motion seeking leave to file a second amended complaint to add new transfers and new defendants, greatly expanding the scope of the case, which the existing defendants opposed. (Dkt. nos. 71, 94–95.) That motion was denied in part and granted in part in an opinion on April 4, 2012 (dkt. no. 106), and on May 4, 2012, two and one-half years after the suit began, the Trustee filed the Second Amended Complaint ("SAC"). (Dkt. no. 113.)

Subsequently, a consent judgment was entered against Peter Madoff in February 2013 (dkt. no. 145), and Shana Madoff was dismissed from the case the following month (dkt. no. 148). More recently, the Trustee dismissed his claims against Susan Elkin (Mark Madoff's

ex-wife) and Deborah West (Andrew Madoff's wife) in March and June 2014, respectively. (Dkt. nos. 177, 183.)  The remaining defendants in the case presently are Andrew Madoff, the Estate of Mark Madoff, and Stephanie Mack, Mark Madoff's widow.

## PROPOSED AMENDMENTS

The Trustee seeks leave to amend his complaint for a third time on the purported grounds that the requested amendments are "largely a streamlining of the allegations and claims previously made in the Second Amended Complaint." (Pl.'s Mem. 8.)  As the enclosed blackline makes clear, that characterization could not be further from the truth.  (*See* Ehrlich Decl. Ex. 2.) To the contrary, the proposed amendments do not merely "streamlin[e]," but constitute a wholesale revision of the Trustee's theory of liability.  If the amendments were limited to "housekeeping" changes, such as removing claims against dismissed defendants, Defendants would not have opposed this motion.  However, the Trustee's clean-up edits are by far the most minor of the changes he seeks.  The Trustee has completely jettisoned his previous theory of Mark and Andrew's liability to the BLMIS Estate, replacing what was previously a negligence theory to one of actual knowledge and participation by Mark and Andrew in Bernie Madoff's Ponzi scheme—a theory that the Trustee raised directly in the U.K. proceeding and lost on the merits.

At oral argument on defendants' motions to dismiss the original complaint, counsel for the Trustee explicitly stated that there are no fraud allegations and that the case consists of "a classic faithless servant claim."  Mot. to Dismiss Hr'g Tr. 51–52.  And a review of the SAC reveals that the Trustee's theory all along has been just that.  (*See, e.g.*, SAC ¶ 2 ("[T]he Family Defendants were completely derelict in [their management] duties and responsibilities. As a result, they either failed to detect or failed to stop the fraud, thereby enabling and facilitating the Ponzi scheme at BLMIS."); *id.* ¶ 35 (alleging that the Family Defendants "failed

to properly and faithfully carry out their duties and responsibilities"); *id.* ¶ 55 (alleging a lack of "evidence of meaningful and consistent supervision" by Mark and Andrew Madoff); *id.* ¶ 65 (alleging that if defendants had "faithfully carried out" their responsibilities, "they would have realized that the market-making and proprietary trading businesses were, in fact, incurring millions of dollars in losses . . .").)

Now, however, the thrust of the allegations in the Proposed TAC is to allege, *for the first time*, that Mark and Andrew had *actual knowledge of* and *willfully participated in* Bernie Madoff's Ponzi scheme. This change is clear right from the preamble of the new proposed complaint. (*See* Proposed TAC ¶ 3 ("The Madoff Brothers *knew, saw, and were simply too intelligent to plausibly feign ignorance about the fraud* that was occurring before, by, and around them; a fraud that benefitted them by the many millions of dollars they siphoned from the IA Business through fraudulent IA accounts, fictional deferred compensation, and transfers from the BLMIS bank account disguised as purported loans from their parents so they could fund their lavish lifestyles." (emphasis added)).) To be clear, Andrew and Mark's Estate deny all of these fraud-based allegations.

In addition to adding extensive new factual allegations, the Trustee also proposes to add a new claim of "Equitable Disallowance" of any claims that Mark or Andrew might have against the BLMIS Estate, on the basis that they "engaged in and benefited from inequitable conduct and with knowledge of fraudulent activity at BLMIS[.]" (*Id.* ¶¶ 221–226.) All of these new allegations and new claims stand in notable contrast to the prior claims that Mark and Andrew failed to properly carry out various alleged duties, thus negligently failing to detect their father's Ponzi scheme. This theory stands in stark contradiction to that asserted in the initial complaint and in the SAC, in which the Trustee alleged only Mark and Andrew's *failure to*

7

*detect or stop* the fraud.  (*See* SAC ¶ 2 (alleging that Mark and Andrew "either failed to detect or failed to stop the fraud.").)

This Court should not countenance the Trustee's belated efforts to reinvent his pleading—especially after the Trustee lost on this very theory after a full trial in the U.K..

## ARGUMENT

### I.    INTRODUCTION

A court may deny a motion for leave to amend on several grounds, including (1) "undue delay," (2) "bad faith or dilatory motive on the part of the movant," (3) "undue prejudice to the opposing party," (4) "futility of amendment," or (5) "repeated failure to cure deficiencies by amendments previously allowed." *Foman* v. *Davis*, 371 U.S. 178, 182 (1962); *see also Ruotolo* v. *City of N.Y.*, No. 03 Civ. 5045, 2006 WL 2372236, at *2 (S.D.N.Y. Aug. 16, 2006), *aff'd*, 514 F.3d 184 (2d Cir. 2008).

The Motion to Amend should be denied on several of these grounds.  *First*, the Trustee's allegations regarding Mark and Andrew's actual knowledge and the allegations regarding Madoff Securities International Ltd. ("MSIL") are barred by the doctrines of res judicata and collateral estoppel.  *Second*, the Trustee's proposed addition of equitable grounds for disallowance would be futile because no such claim exists as a matter of law.  *Third*, this motion is unduly delayed, and the Trustee has failed to put forth any persuasive justification for the belatedness of the relief now sought.

Finally, in the event that this Court does not deny the Trustee's motion, all references to criminal pleas and convictions in the Proposed TAC should be stricken on the grounds that they are immaterial and unfairly prejudicial.

8

## II.    THE TRUSTEE IS BARRED FROM ASSERTING THE MSIL ALLEGATIONS
BY THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL

Among the new allegations asserted in the Proposed TAC are claims that Mark
and Andrew failed in their supervisory and compliance duties in connection with fraudulent
transfers of IA Business funds to MSIL, which were ultimately attributed to the market-making
and proprietary trading businesses.  (Proposed TAC ¶¶ 66–97, 129–30 (alleging, *inter alia*, that
"$800 million was diverted from the IA Business into the market-making and proprietary trading
business units . . . millions of which were transferred through MSIL and then back to BLMIS
trading businesses.").)  The Trustee further alleges that Mark and Andrew *knew* that the $800
million of "IA-derived revenue" transferred to MSIL constituted customer funds and was used to
"fraudulently count[] towards the profits that wrongly justified" their compensation.  (*Id.*)

Leaving aside the fact that the Trustee's motion provides no justification
whatsoever for failing to assert the MSIL allegations until now—nearly six years after he gained
access to records of the MSIL transfers, and nearly four years after he initiated proceedings
against Mark and Andrew in the United Kingdom based on those same transfers—the Trustee
should not be permitted to amend the complaint to include them here because *he has already
asserted, and lost at trial, the same claims against Mark and Andrew in the U.K.*  Accordingly,
the Trustee is barred from asserting the proposed MSIL allegations by the doctrines of res
judicata and collateral estoppel.

On October 18, 2013, following a multi-week trial in the High Court of Justice,
Queen's Bench Division, the Honorable Mr. Justice Popplewell of the Commercial Court issued
a 188-page decision dismissing all claims against Mark and Andrew brought by the Trustee on
behalf of BLMIS in conjunction with the liquidators of MSIL.  (Ehrlich Decl. Ex. 1.)  Although
the claims were brought by the liquidators of MSIL, the U.K. Court expressly found that the

Trustee funded the proceedings and was the real party in interest.  As the Court noted, the claims were "in substance being brought by and for the benefit of BLMIS, and indirectly, therefore, for the benefit of the victims of the Ponzi scheme which Bernard Madoff carried out through BLMIS."  (*Id.* ¶ 106.)[1]

The U.K. claims alleged that Mark and Andrew, as well as six other former directors of MSIL, breached their fiduciary duties to act in the best interest of MSIL when they approved transfers of BLMIS funds to and from MSIL, including transfers of funds from the IA business, purportedly for the fraudulent purpose of recording those transfers as income. However, the High Court dismissed *all claims* against Mark and Andrew (*id.* ¶ 469), and concluded that neither of them "knew of, or suspected, the fraud."  (*Id.* ¶ 1.)  More specifically, the High Court determined that Mark and Andrew exercised their duties as MSIL directors with reasonable care and skill, because an intelligent man in their positions "could reasonably have believed that the payments were in the interests of the company."  (*Id.* ¶ 253.)  This Court should

---

[1]    The Trustee was in fact initially a Claimant in the U.K. case.  On December 8, 2010, the Trustee entered into an agreement with the liquidators of MSIL to pursue proceedings there against Mark and Andrew.  (*Id.* ¶ 160.)  Although the Trustee was subsequently dismissed as a formal party, the Court expressly took note of that agreement, which remained in effect, when it concluded that the Trustee remained the real party in interest.  (*See id.* ("The claim is therefore brought by MSIL alone, but by reason of the agreement between the liquidators and the SIPA Trustee of 8 December 2010, it is in substance being brought by and for the benefit of BLMIS and indirectly, therefore, for the benefit of the Ponzi scheme which Bernard Madoff carried out through BLMIS.").)  The existence of an agreement between the Trustee and the Claimant to pursue the U.K. proceeding—as well as the important fact that the Trustee *funded* that proceeding—indicates that the Trustee had sufficient involvement in, and control over, the litigation for his interests to have been adequately represented, and thus it would be unjust to permit him to reassert claims resolved in that action.  *See Taylor* v. *Sturgell*, 553 U.S. 880, 894 (2008) (preclusion against nonparty may be warranted where the nonparty was adequately represented by someone with the same interests who was a party to the first action, or if the nonparty "assume[d] control" over the prior litigation); *see also Gordon and Breach Sci. Publishers, S.A.* v. *Am. Inst. of Physics*, 905 F. Supp. 169, 179 & n.9 (S.D.N.Y. 1995) ("[I]t is primarily principles of fairness and reasonableness that should guide domestic courts in their preclusion determinations.").

give the High Court's rulings preclusive effect because such rulings resolved the precise issues now alleged with respect to Andrew and Mark's knowledge of the Ponzi scheme and fraudulent transfers made to MSIL in the Proposed TAC. (*See* Proposed TAC ¶¶ 66–97, 129–30.)

Although not obliged to do so, federal courts regularly give preclusive effect to foreign judgments as a matter of comity. *See, e.g.*, *Paramedics Electromedicina Comercial, Ltda.* v. *GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004); *Diorinou* v. *Mezitis*, 237 F.3d 133, 139–40 (2d Cir. 2001). So long as the foreign forum provided a full and fair trial before a court of competent jurisdiction, under a system of procedural fairness akin to the principles governing United States courts, and there is no showing of either prejudice or fraud in the foreign forum, then "the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh." *Hilton* v. *Guyot*, 159 U.S. 113, 202–03 (1895). Federal courts in this Circuit continue to apply this well-established standard when determining whether principles of comity counsel in favor of giving a foreign judgment preclusive effect. *See Alesayi Beverage Corp.* v. *Canada Dry Corp.*, 947 F. Supp. 658, 663 (S.D.N.Y. 1996); *Canadian Imperial Bank of Commerce* v. *Saxony Carpet Co., Inc.*, 899 F. Supp. 1248, 1252 (S.D.N.Y. 1995); *see also Victrix S.S. Co.* v. *Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) (observing that federal courts extend comity to foreign judgments "whenever the foreign court ha[s] proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy"); *ICC Chem. Corp.* v. *TCL Indus. (Malaysia) SDN*, 206 F. App'x 68, 69–70 (2d Cir. 2006) (same).

The Trustee cannot seriously contend that the forum he chose, the Commercial Division of the High Court in London, is not a jurisdiction in which he could get a free and fair adjudication of his claims. Nor can there be any serious assertion that there was prejudice or

fraud attendant to the U.K. proceeding, or that the High Court's judgment violates domestic public policy. *See Sung Hwan Co.* v. *Rite Aid Corp.*, 7 N.Y. 3d 78, 82 (N.Y. 2006) (observing that the "public policy inquiry rarely results in refusal to enforce a judgment unless it is inherently vicious, wicked or immoral, and shocking to the prevailing moral sense"). Nor does the fact English procedure differs from U.S. procedure counsel against preclusion. *See Sarl Louis Feraud Int'l* v. *Viewfinder, Inc.*, 489 F.3d 474, 479–80 (2d Cir. 2007) ("mere divergence from American procedure does not render a foreign judgment unenforceable" in domestic courts). Indeed, federal courts previously have recognized the res judicata effect of English judgments, indicating that the U.K. system of procedural fairness is sufficiently akin to that available in American courts. *See, e.g., Petition of Bloomfield S.S. Co.*, 298 F. Supp. 1239, *aff'd,* 422 F.2d 728 (2d Cir. 1970); *Leo Feist, Inc.* v. *Debmar Publ'g Co.*, 232 F. Supp. 623 (E.D. Pa. 1964).

Once it determines that it should extend comity to the High Court's judgment, this Court should apply ordinary principles of collateral estoppel to conclude that the High Court's determination of the factual and legal issues surrounding Mark and Andrew's actual knowledge and the MSIL transfers are conclusive of the Trustee's MSIL-related claims.[2] *See Zeevi Holdings Ltd.* v. *Republic of Bulgaria*, 494 F. App'x 110, 114–15 (2d Cir. 2012).

Issue preclusion, or collateral estoppel, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *NML Capital, Ltd.* v. *Banco Central de la Republica Argentina*, 652 F.3d 172, 185

---

[2]    The doctrine of collateral estoppel applies in federal bankruptcy proceedings. *See, e.g., Grogan* v. *Garner*, 498 U.S. 279, 281, 285 n.11 (1991); *In re Shiver*, 396 B.R. 110, 117 (Bankr. S.D.N.Y. 2008); *In re Bruetman*, 259 B.R. 649, 661 (Bankr. N.D. Ill. 2001); *In re 2435 Planfield Ave., Inc.*, 223 B.R. 440, 453 (Bankr. D.N.J. 1998); *In re Fordu*, 209 B.R. 854, 862 (6th Cir. BAP 1997).

(2d Cir. 2011) (citing *New Hampshire* v. *Maine*, 532 U.S. 742, 748–49 (2001)).  The doctrine

applies if "(1) the issues in both proceedings are identical; (2) the issue in the prior proceeding

was 'actually litigated and actually decided;' (3) there was a 'full and fair opportunity for

litigation in the prior proceeding;' and (4) the issues previously litigated were 'necessary to

support a valid and final judgment on the merits.'"  *NML Capital*, 652 F.3d at 185 (quoting *Ali* v.

*Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)); *In re Teligent, Inc.*, 640 F.3d 53, 61 (2d Cir. 2011).

For the reasons set forth below, each of those elements is satisfied here.

### A.    The U.K. Judgment Adjudicated the Same Facts and Issues Asserted in the Proposed TAC.

The High Court's judgment finally adjudicated the precise issues concerning

Mark and Andrew's knowledge of their father's Ponzi scheme and their purported failures with

respect to the MSIL-related transfers that are the subject of the Trustee's proposed amendments.

The High Court's relevant findings included:

- Neither Andrew nor Mark "knew of, or suspected, the fraud."  (Ehrlich Decl. Ex. 1 ¶ 1.)

- Mark and Andrew were *"never privy" to BLMIS' fraudulent investment advisory business and "never saw any records of transactions for the investment advisory business."* (*Id.* ¶ 45.)[3]

- Mark and Andrew managed the market making and proprietary trading divisions of BLMIS, which conducted "legitimate and profitable business activities."  (*Id.* ¶ 5.)

- The Court found that both Mark and Andrew exercised their duties as directors of MSIL with reasonable care and skill.  (*Id.* ¶ 288.)

- The Court concluded that *"an honest and intelligent man in the position of each brother could reasonably have believed that the payments [to MSIL] were in the interests of the company."*  (*Id.* ¶ 253.)

- *"There was no secrecy about the payments within MSIL.  So far as the brothers were aware, the payments were openly recorded in the books and their accounting*

---

[3]    All emphases are added.

13

*treatment was sanctioned by the audit team from KPMG.  They would have presumed that all the London directors were aware of them.  None of their fellow directors and no one in the compliance department expressed the view to them at any time that the payments were improper, illegitimate or other than in the best interests of MSIL.*  The brothers were entitled to look to the English directors, MSIL's compliance personnel, and MSIL's auditors, all operating in London, to alert them to any impropriety in an English company being used as the conduit for the payments.  They were entitled to defer to the views of their fellow directors in this respect. (*Id.* ¶ 253(4).)

- "[N]either Andrew nor Mark Madoff was in breach of his duty to act in what he considered in good faith to be the interests of MSIL." (*Id.* ¶ 254.)

- "Against the Madoff brothers, MSIL made a further and separate allegation of dishonesty.  This was that in relation to BLMIS' fraudulent T Bill trading, between 2005 and 2008, *they knew that the US$310 million received by BLMIS from MSIL was fraudulently recorded in BLMIS' books as 'commission income' due from MSIL.  The evidence to which I was referred by the Claimant in support of this allegation was exiguous.*  The treatment of the sum as commission income was attested to in a paragraph from the witness statement of Ms. Collura which in turn relied upon a number of documents which did not on their face self evidently support the proposition.  There was no evidence to link the Madoff brothers to knowledge of these documents.  *The evidence relied upon did not meet the necessary degree of cogency to make out an allegation of dishonesty, which I therefore reject.  Even had this allegation been made good, I would not have treated it as supporting a conclusion that the brothers were guilty of any dishonesty.*" (*Id.* ¶ 330.)

- "Andrew Madoff said in his witness statement that Bernard Madoff '*was constantly insisting that BLMIS should have excess capital as a sign of its financial strength and stability, and it was the same with MSIL.*'  This picture was corroborated by other witnesses." (*Id.* ¶¶ 403–404.)

- "Neither Andrew nor Mark Madoff was in breach of his duties to act in what he perceived to be the interests of MSIL and to exercise reasonable skill and care." (*Id.* ¶ 439.)

Further, while issues are not identical for purposes of collateral estoppel "when the legal standards governing their resolution are significantly different," *see Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*, 126 F.3d 365, 371 (2d Cir. 1997), the High Court did not apply a significantly different legal standard to its determination of the relevant issues.  *Contra Zeevi*, 494 F. App'x at 114–15 (concluding that issue decided by Israeli court was not identical to that presented in U.S. court because Israeli court's interpretation of forum selection clause was

informed by particular contract interpretation principle of Israeli law). Mr. Justice Popplewell was adjudicating the same kind of breach of fiduciary duty claims that the Trustee now seeks to assert in this case. Thus, the High Court's ruling on these issues should be given preclusive effect in this action.

### B.    The Trustee's MSIL Allegations Were Fully, Fairly, and Actually Litigated in the U.K. Proceeding.

It is indisputable that the MSIL allegations in the Proposed TAC were fairly and actually litigated before the High Court of Justice. Over the course of a multi-week trial, that Court heard substantial fact and expert witness testimony and accepted evidence from all parties to the litigation before issuing its judgment. (*See, e.g.*, Ehrlich Decl. Ex. 1 ¶¶ 251–254, 330, 403–404, 435–436, 439–439, 461, 463–464, 467.)   Notably, the Trustee and his British counterpart had the opportunity to appeal the High Court's ruling, but failed to do so. Preclusion is warranted under these circumstances. *See ICC Chem Corp.*, 206 F. App'x at 70.

### C.    The MSIL Issues Pled in the Proposed TAC Were Essential to the U.K. Judgment.

Finally, the High Court's ruling that Mark and Andrew had no knowledge of fraudulent transfers made from BLMIS to MSIL is deserving of preclusive effect because it was essential to that Court's judgment that Mark and Andrew did not breach their fiduciary duties as directors of MSIL. In fact, Mr. Justice Popplewell expressly ruled to this effect. (*See* Ehrlich Decl. Ex. 1 ¶ 200 ("[A] director's liability in relation to misapplication of a company's property by exercising a power otherwise than that for which it was conferred *cannot arise unless he knows that it is an improper purpose or of the facts which make the purpose improper*." (emphasis added).)

*            *            *

15

The assertion of claims predicated on the MSIL transfer allegations thus plainly satisfies the test for res judicata. To the extent the Court permits amendment at all—and it should not, given the tardy nature of the proposed pleading—these allegations should be stricken from the pleading. It is unfair and improper to Andrew and Mark's Estate to be required to defend allegations they have already litigated and won in a full and fair proceeding in London.

### III. AMENDMENT TO ASSERT A CLAIM OF EQUITABLE DISALLOWANCE SHOULD BE BARRED AS FUTILE BECAUSE THAT CLAIM IS NOT LEGALLY COGNIZABLE

A court may properly deny leave to amend where the proposed amendment would be futile. *Anderson News, L.L.C.* v. *Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citing *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)). An amendment is futile "when the proposed new pleading fails to state a claim on which relief can be granted." *Id.* (citation omitted); *AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim[.]").

The Trustee purports to add a brand-new cause of action in the Proposed TAC, specifically a claim of "equitable disallowance." (Proposed TAC ¶¶ 221–226.) However, no such claim exists as a matter of law, and therefore the Trustee's proposed addition of that claim would be futile. The Bankruptcy Code *simply does not permit* equitable disallowance. *In re LightSquared, Inc.*, 504 B.R. 321, 344 (Bankr. S.D.N.Y. 2013) (hereinafter "*LightSquared*") (examining the text of the Bankruptcy Code, analyzing relevant case law, and concluding that there is no basis within the Code to recognize an equitable disallowance claim as a matter of law).[4]

---

[4]    Although a small number of courts have declined to dismiss "equitable disallowance" claims as a matter of law, *see LightSquared*, 504 B.R. at 338, we are aware of no case in which a

The plain language of Section 502 bars equitable disallowance:  Section 502(b) enumerates nine circumstances under which a claim can be disallowed, but equitable disallowance is <u>not</u> one of them, and thus under basic statutory construction principles no such claim can be said to exist.  *LightSquared*, 504 B.R. at 340–343 (also rejecting as inconsistent with the Code the notion that a remedy of equitable disallowance should somehow be implied from the remedy of equitable subordination set forth in Section 510(c)).

In addition, while Section 105(a) does confer equitable power on bankruptcy courts, such power is not without limits, and "can only be exercised within the confines of the Bankruptcy Code."  *Id.* at 341 (citation omitted); *see also Grede* v. *Bank of N.Y.*, No. 08 C 2582, 2009 WL 188460, at *8 (N.D. Ill. Jan. 27, 2009) (dismissing equitable disallowance count on grounds that it "seeks a remedy that is not authorized by the Bankruptcy Code").  The Supreme Court recently reiterated that principle, holding in a unanimous opinion that a bankruptcy court does not have the authority to exercise a remedy that is not enumerated in the Code.  *See Law* v. *Siegel*, 134 S. Ct. 1188, 1196 (2014) ("Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits.").

In *Law*, the Supreme Court considered the imposition of a "surcharge" on a debtor's statutorily exempt property in response to discovery of the debtor's fraud.  The Trustee had revealed that the debtor created a fictitious lien to deceive the Trustee into concluding that there was no non-exempt value in the debtor's property.  *Id.* at 1193.  In essence, in seeking to compensate the estate for the debtor's misconduct, the court "disallowed" the debtor's statutorily-authorized exemption, without an explicit statutory basis for doing so.  The Supreme

---

court has actually entered judgment on the purported cause of action disallowing an

Court looked to the statutory language and observed that Section 522 of the Code (the provision governing exemptions) provides many "carefully calibrated exceptions and limitations" that would authorize a court to make otherwise-exempt property available to the estate, but that the "meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions *confirms that courts are not authorized to create additional exceptions*." *Id.* at 1196 (emphasis added).    The Court found that the court's "surcharging" of the debtor's exempt property contravened a provision of Section 522 that protected the debtor's exemption from liability for administrative expenses, and therefore the court had exceeded its authority.    *Id.* at 1195.    Finally, the Court soundly rejected the argument that bankruptcy courts have a "general, equitable power to deny exemptions based on a debtor's bad-faith conduct."    *Id.* at 1196.

The reasoning in *Law* unquestionably supports and affirms the reasoning in *LightSquared* that a bankruptcy court's recognition of a remedy of "equitable disallowance" that appears nowhere in the Code would be unwarranted and in excess of the authority conferred by the Code.    Just as the Supreme Court recognized that a court cannot create additional limitations on exemptions other than those "meticulous[ly]…enumerat[ed]" in Section 522, a court cannot create additional conditions for disallowance of a claim other than those enumerated in Section 502.    *See id.* at 1196; *LightSquared*, 504 B.R. at 341.    And just as the Supreme Court recognized that bankruptcy courts have no "general, equitable power" to deny valid exemptions due to bad faith on the part of the debtor, there can be no such power to disallow a valid claim based on bad faith on the part of the creditor.    *See Law*, 134 S. Ct. at 1196.

---

otherwise valid claim on equitable grounds.

18

*Law* therefore dispels all doubt that equitable disallowance is an invalid claim, and makes clear that, as Judge Chapman reasoned, the Bankruptcy Code does not permit such a claim.[5]  Accordingly, the Trustee's proposed equitable disallowance claim would be futile, and leave to amend to add such claim should be denied.

## IV.    THE MOTION TO AMEND SHOULD BE DENIED FOR UNDUE DELAY

The Trustee's belated overhaul of his theory of this case is, quite simply, unwarranted, and his Motion to Amend should be denied on that basis as well.  The SAC was filed on April 4, 2012; *over two years and four months ago*.  The Trustee has provided the Court with no justifiable or defensible explanation for waiting so long to add these new allegations. Indeed, the Trustee has offered no factual basis whatsoever for concluding that he could not have asserted this very same theory, with many of these very same alleged facts, nearly five years ago when he commenced this lawsuit in the first instance or, at minimum, more than two years ago when he filed the SAC.   On this basis alone, the proposed amendments should be rejected.

Courts have broad discretion to deny leave to amend when such leave is sought after an inordinate delay, and the party seeking leave to amend has the burden of establishing a satisfactory explanation for the delay.  *Leber* v. *Citigroup Inc.*, No. 07 Civ. 9329, 2011 WL

---

[5]    As the Court noted in *LightSquared*, two courts within this district have, at the motion to dismiss stage, declined to dismiss an equitable disallowance claim.  Based in part on legislative history and in part on the Supreme Court decision *Pepper* v. *Litton*, 308 U.S. 295 (1939), those courts reasoned that equitable disallowance exists.  *See Adelphia Recovery Trust* v. *Bank of Am.*, 390 B.R. 64, 76 (S.D.N.Y. 2008) (affirming bankruptcy court denial of motion to dismiss equitable disallowance claim); *In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 71 (Bankr. S.D.N.Y. 2007) (stating that court cannot conclude that Section 501(c) forecloses an equitable disallowance claim and finding that equitable disallowance is permissible); *see also LightSquared*, 504 B.R. at 338–339 (discussing the *Adelphia* opinions).  However, Defendants submit that the reasoning of the *Adelphia* decisions is called into serious question in light of *Law*, and that the reasoning in *LightSquared* is undoubtedly more consistent with *Law*'s application of a plain-meaning interpretation of the

5428784, at *6 (S.D.N.Y. Nov. 8, 2011) (finding plaintiffs failed to meet burden to explain delay in asserting new claim three years after filing original complaint, and two years after filing amended complaint). Leave to amend may be denied when the moving party knew or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading. *See Ruotolo*, 2006 WL 2372236, at *2–3 (denying leave to amend where facts were available to plaintiff from the beginning of the litigation, yet plaintiff "made no effort to include [those] facts or [a new] theory of relief in his pleadings . . . despite having previously moved to amend the complaint"); *Dais* v. *Lane Bryant, Inc.*, No, 97 Civ. 2011, 2000 WL 145755, at *2 (S.D.N.Y. Feb. 8, 2000) (finding that plaintiff offered no explanation for waiting to amend and that plaintiff knew of factual basis for proposed amendment since the litigation began yet never sought to amend previously); *Richardson Greenshields Secs. Inc.* v. *Lau*, 113 F.R.D. 608 (S.D.N.Y. 1986) ("[W]here the moving party also had knowledge of the facts upon which the proposed amendment was based, but failed to include them in the original pleading—as is the case here—leave to amend may properly be denied.").

The Trustee's delay is especially egregious and unwarranted in light of the fact that all of the new allegations that the Trustee proposes to add are based on facts and information that he has possessed or to which he has had access *for years*. The Trustee has had unfettered access to all of BLMIS's books and records since before this case began, not to mention access to third party documents, and has touted his investigative efforts all along. *See* "A Message from SIPA Trustee Irving H. Picard," www.madofftrustee.com/trustee-message-02.html ("Together with special experts, consultants and international counsel, we are engaged in a broad range of

---

Bankruptcy Code and *Law*'s articulation of the constraints on the equitable powers of a bankruptcy court.

activities required to fulfill our mission, including evaluating claims [and] conducting forensic analysis of years of documents[.]  We have worked diligently since December of 2008[.]").

The only recent event that could possibly support this belated amendment of the SAC is the recent criminal trial in *United States* v. *Bonventre, et al.*, particularly the testimony of cooperating witnesses such as Frank DiPascali.  But DiPascali pleaded guilty to a criminal information on August 11, 2009, more than two years before the Trustee filed his prior motion for leave to amend, and has been cooperating with the government since that time.  *See United States* v. *DiPascali*, No. 09 Cr. 764 (RJS) (S.D.N.Y. Aug. 11, 2009) (dkt. nos. 5, 7).[6]  Nowhere in his motion does the Trustee assert that it was only *after* the criminal trial that he learned of the alleged facts on which his proposed amendments are based.  Indeed, the five defendants in the trial were charged *nearly four years ago*.[7]  The Trustee quite easily could have undertaken a factual investigation at that time; either he failed to do so—in which case he should not be permitted to benefit from his own lack of diligence—or he did so, yet failed to seek amendment until now, choosing to wait until these defendants were tried and convicted.  Moreover, citations to this trial testimony in the Proposed TAC represent just a tiny fraction of the proposed amendments.  It does not withstand scrutiny for the Trustee to contend, should he do so, that the impetus for these amendments was the recent criminal trial.

---

[6]    Other cooperating witnesses, including David Friehling, have been cooperating with the government since as early as 2009.  *See United States* v. *Friehling*, No. 09 Cr. 700 (AKH) (S.D.N.Y. Mar. 17, 2009) (dkt. no. 1) (criminal complaint); *id.* (dkt.  no. 30) (indicating Friehling pled guilty pursuant to a cooperation agreement on October 30, 2009).

[7]    A criminal complaint was filed against defendants O'Hara and Perez on November 12, 2009; an indictment was filed against them on March 17, 2010.  *See United States* v. *Bonventre, et al.*, No. 10 Cr. 228 (LTS) (DCF) (S.D.N.Y.) (dkt. nos. 1, 17.)  A superseding indictment as to defendant Bonventre was filed March 24, 2010, and a second superseding indictment was filed November 17, 2010 as to defendants Bongiorno and Crupi.  *See United States* v. *Bonventre, et al.*, No. 10 Cr. 288 (LTS) (DCF) (S.D.N.Y.) (dkt. nos. 21, 36).

Similarly, most of the Trustee's new allegations appear to be based on documents to which the Trustee has had access for years. For example, the allegations concerning Mark and Andrew Madoff's supposed manipulation of their deferred compensation accounts at BLMIS appear to be based on a review of account documents to which the Trustee surely has had access to for many years. (*See* Proposed TAC ¶¶ 41–65.) Similarly, the Trustee's allegations of allegedly "fake" account statements obtained by Andrew Madoff for his IA accounts again appear to be based on account statements or other records in the Trustee's possession, which, again he has had for years. (*Id.* ¶¶ 55–56.) The Trustee's proposed new allegations regarding Mark and Andrew's monitoring of trading activity within the legitimate market-making and proprietary trading businesses they oversaw and their supposed visibility into "all trading accounts" refer to profit and loss reports allegedly created by Mark and Andrew, as well as to trading data throughout BLMIS's systems—systems that the Trustee has controlled, and analyzed, since December 2008. (*See id.* ¶¶ 74–80.) The proposed new allegations regarding Mark and Andrew's supposed deletion of BLMIS email in connection with a 2005 audit refer to "evidence" "uncovered" by the Trustee, "including handwritten notes on printed emails," and other allegedly deleted emails. (*Id.* ¶¶ 85–88.) The Trustee offers no explanation for how or why he could have just "uncovered" new documents that he has controlled since 2008, and the only explanation on this record is his own lack of diligence.

The Trustee should not be permitted to sit on information that he believes is necessary to his claims and only add it now at this late stage. At a minimum, the Trustee should be required to explain to this Court the "how, what, when, where, and why" of his awareness of the facts in these new allegations. To the extent that the Trustee is basing his new allegations on facts within his knowledge at the time of the original, first amended, or second amended

complaints, those amendments should not be permitted on the basis of undue delay. This is particularly true given that the Trustee already has had the opportunity to amend his complaint twice. Accordingly, the Trustee's requested amendments should be denied. *See Priestley* v. *American Airlines, Inc.*, No. 89 Civ. 8265, 1991 WL 64459, at *2 (S.D.N.Y. Apr. 12, 1991) (denying leave to amend to add a claim of willful misconduct in a negligence case, holding that the facts underlying the proposed claim "were known to plaintiff at the time the original complaint was filed" and the resulting delay was not excusable).[8]

## V.  THE COURT SHOULD STRIKE ALL IMMATERIAL AND PREJUDICIAL REFERENCES TO CRIMINAL PLEAS AND CONVICTIONS FROM THE PROPOSED TAC

In the event that the Court does not deny the Trustee's Motion to Amend, it nonetheless should strike all references to criminal pleas and convictions from the Proposed

---

[8]  The Trustee argues that the Proposed TAC is necessary to address the recent decision in *Securities Investor Protection Corporation* v. *Bernard L. Madoff Investment Securities LLC*, 12 Misc. 115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014). (Pl.'s Mem. 8–9.) However, that argument misrepresents the holding of Judge Rakoff's decision, which did not effect a change in the law as to *what* constitutes an absence of good faith, but rather clarified that an absence of good faith—which has always required a showing that the defendant acted with "willful blindness" to the truth—must be affirmatively pled. *See* 2014 WL 1651952, at *3 ("Nonetheless, in a fashion that the Court has learned is typical of the Trustee's litigation strategy, the Trustee here seeks to litigate once again the issue of whether 'good faith' should be judged by a subjective standard of willful blindness or by an objective standard of inquiry notice. But nothing in the intervening time has changed the analysis and conclusion that the Court reached in *Katz* and reiterated in *Avellino*. . . . It is well established that 'good faith' in the securities context 'implies a lack of fraudulent intent.'"). The decision thus provides no basis for the Trustee's late addition of extensive factual allegations in support of a never-before-asserted theory that Mark and Andrew had *actual knowledge* of their father's fraud. Moreover, while the Trustee asserts that the Proposed TAC is necessary to "focus[] on the factual allegations and viable claims for relief against the Madoff Brothers . . . in light of the current state of the law," the breadth and content of the new factual allegations reveals that the proposed amendment does far more than "focus" or "streamlin[e]" the allegations in the SAC. (Pl.'s Mem. 8.)

TAC, as they are immaterial to the claims asserted here and would unfairly prejudice Andrew and Mark's Estate.

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, "[t]he Court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Bankruptcy Code provides for similar relief. *See* 11 USC. § 107(b) ("On motion of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may . . . (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.").

The Trustee's references to guilty pleas and convictions in parallel criminal proceedings (Proposed TAC ¶¶ 17–23) should be stricken as immaterial within the meaning of Rule 12(f) because they have no bearing on the bankruptcy claims asserted in this action. *See Low* v. *Robb*, No. 11-CV-2321 (JPO), 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012) (allegations are impermissibly immaterial where they have no bearing on the claims at issue). Indeed, the only purpose served by the inclusion of these references is to suggest, improperly, that Mark and Andrew should be lumped in with criminal defendants who have pled guilty or been convicted of crimes for their participation in the Ponzi scheme, a suggestion that would greatly prejudice them in this proceeding. *See G-I Holdings, Inc.* v. *Baron & Budd*, 238 F. Supp. 2d 521, 555–56 (S.D.N.Y. 2002) (striking background references to criminal activity because they had "no real bearing on the case" and "harm[ed defendant] in the public eye and could influence prospective jury members"); *Toto* v. *McMahan, Brafman, Morgan & Co.*, No. 93 CIV. 5894 (JFK), 1995 WL 46691, at *16 (S.D.N.Y. Feb. 7, 1995) (allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones).

## **CONCLUSION**

For the foregoing reasons, Andrew Madoff and the Estate of Mark Madoff respectfully request that this Court deny the Trustee's Motion for Leave to File a Third Amended Complaint.

Dated:  New York, New York
        August 12, 2014

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:____/s/ Martin Flumenbaum_____
Martin Flumenbaum (mflumenbaum@paulweiss.com)
Stephen J. Shimshak (sshimshak@paulweiss.com)
Andrew J. Ehrlich (aehrlich@paulweiss.com)
Caitlin E. Grusauskas (cgrusauskas@paulweiss.com)
Brette Tannenbaum (btannenbaum@paulweiss.com)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for the Estate of Mark D. Madoff and Andrew H. Madoff individually and as Executor of the Estate of Mark D. Madoff*

25