**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Tracy Cole
Ona T. Wang

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>   Plaintiff-Applicant,<br><br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>   Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>   Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>   Plaintiff,<br><br> v.<br><br>THE ESTATE (SUCCESSION) OF DORIS IGOIN; LAURENCE APFELBAUM, individually and in her capacities as executor and beneficiary of the Estate (Succession) of Doris Igoin; and EMILIE APFELBAUM,<br><br>   Defendants. | Adv. Pro. No. 10-04336 (SMB) |

**TRUSTEE'S STATEMENT OF MATERIAL JURISDICTIONAL FACTS**

The Trustee respectfully submits this Statement of Material Jurisdictional Facts pursuant to the Court's direction to the Trustee "to submit a statement of what he considers to [be] the material jurisdictional facts . . . with the citations of authority of the undisputed material facts regarding personal jurisdiction." (Transcript of August 6, 2014 Oral Argument at 60-61) [hereinafter "Hearing Tr."]. The Trustee hereby submits the following statement of facts[1] and their citations to the record.

## BACKGROUND: DEFENDANTS' BLMIS ACCOUNTS

| | **Fact** | **Source** |
|---|---|---|
| 1 | In the 1980s, Albert Igoin ("Igoin") invested funds with BLMIS. | Declaration of Laurence Apfelbaum at ¶ 6 (Dkt. No. 21) [hereinafter "Apf. Decl."]. |
| 2 | Igoin died in 1995. | Apf. Decl. ¶ 8; Reply Declaration of Laurence Apfelbaum at ¶ 3, (Dkt. No. 35) [hereinafter "Apf. Reply Decl."]; Defendants' Responses and Objections at 20, attached as Ex. A to Supplemental Declaration of Ona T. Wang in Support of Trustee's Opposition to Defendants' Motion to Dismiss (Dkt. No. 93) [hereinafter "Defs.' Responses and Objections"]; *see also* Hearing Tr. 5:11-12. |

---

[1] To the extent certain facts contained here are based solely on sworn statements by the Defendants, the Trustee reserves the right to contest these facts if warranted by subsequent discovery. The Trustee notes that the Defendants have invoked the "French Blocking Statute" to withhold from the Trustee any and all financial information containing "figures." (*See* Transcript of Deposition of Laurence Apfelbaum at 96-104, 229-235, attached as Ex. B to Supplemental Declaration of Ona T. Wang in Support of Trustee's Opposition to Defendants' Motion to Dismiss (Dkt. No. 93) [hereinafter "Apf. Dep."]).

2

| | | |
|---|---|---|
| 3 | **BLMIS Account No. 1FN006**: ultimately named "Doris Igoin," was opened in April 1988 and belonged to Doris Igoin ("Doris"), Igoin's wife. | Amended Complaint ¶¶ 2, 37, 43a. (Dkt. No. 27) [hereinafter "Am. Comp."]; Notices of Trustee's Determination of Claim, attached as Ex. C to Am. Comp. [hereinafter "Claims Determinations"]; Apf. Dep. 84:25-85:11. |
| 4 | **BLMIS Account No. 1FN075**: ultimately named "Emilie Apfelbaum," belonged to Emilie, Albert Igoin's granddaughter. | Customer Claim for Account Number 1FN075, Ex. 10 to Apf. Dep.; *see also* Hearing Tr. 5:3-5. |
| 5 | Defendants "funded" 1FN075 in 1995 with an inter-account transfer from 1FN006. | Am. Comp. ¶ 43b; Ex. B to Am. Comp. [hereinafter "Transfers Chart"]; Claims Determinations. |
| 6 | Those purported funds consisted of fictitious profits, as determined according to the Trustee's Net Investment Method. | Transfers Chart; Claims Determinations. |
| 7 | **BLMIS Account No. 1FN076**: ultimately named "Laurence Apfelbaum," belonged to defendant Apfelbaum, Albert Igoin's daughter. | Customer Claim for Account Number 1FN076, Ex. 9 to Apf. Dep.; *see also* Hearing Tr. 5:3-5. |
| 8 | Defendants "funded" 1FN076 in 1995 with an inter-account transfer of fictitious profits from 1FN006. | Am. Comp. ¶ 43b; Transfers Chart; Claims Determinations. |
| 9 | In or around 1997, after a contest by French tax authorities in connection with Igoin's estate, Defendants state that the purported funds in 1FN006 became property of Laurence Apfelbaum ("Apfelbaum") and Emilie Apfelbaum ("Emilie") in equal shares. | Apf. Dep. 86:24-87:7. |
| 10 | Until 1999, 1FN006, 1FN075 and 1FN076 were held in the name of and administered by Banque pour L'Industrie Française ("BIF") for the benefit of Doris, Emilie, and Apfelbaum, respectively. | Apf. Dep. 77:6-19, 105:20-23; Apf. Decl. ¶ 11. |

3

| | | |
|---|---|---|
| 11 | In 1999, BIF became Bank Finama ("BIF/Finama") and withdrew from servicing the BLMIS accounts. 1FN006, 1FN075 and 1FN076 were renamed in the names of their beneficial owners: Doris, Emilie, and Apfelbaum, respectively. | Apf. Dep. 112:19-113:8, 119:16-120:7; Letter from DiPascali to Apfelbaum, Ex. 20 to Apf. Dep. |
| 12 | In 2005, Doris died. Defendants transferred the remaining purported funds in 1FN006, consisting of fictitious profits, to 1FN076 and closed the account. | Apf. Dep. 24:23-25:1, 44:23-46:1; Transfers Chart; Claims Determinations. |
| 13 | **BLMIS Account No. 1FR122**: was held in the name of "Doris Igoin Succession c/o Laurence Apfelbaum" (the "Succession Account"). | Claim Form for BLMIS Account No. 1FR122 and 5/31/06 BLMIS Statement, Ex. 11 to Apf. Dep.; *see also* Hearing Tr. 5:3-5. |
| 14 | Apfelbaum "funded" 1FR122 on or about July 5, 2005 with an inter-account transfer of fictitious profits from 1FN076 (Apfelbaum's account). | Am. Comp. ¶ 43d; Transfers Chart; Claims Determinations. |

## TRANSFERS: CASH IN AND OUT OF DEFENDANTS' ACCOUNTS

| | Fact | Source |
|---|---|---|
| **Doris Igoin Account: 1FN006** | | |
| 15 | Between February 1988 and April 2005, deposits into 1FN006 totaled $4,628,688. | Transfers Chart. |
| 16 | Between February 1988 and April 2005, withdrawals from 1FN006 totaled $140,414,616. | Transfers Chart. |
| **Emilie Apfelbaum Account: 1FN075** | | |
| 17 | Account 1FN075 was opened and "funded" on or about May 1, 1995 by an inter-account transfer of $33,150,157 in fictitious profits from 1FN006. | Transfers Chart; Claims Determinations. |
| 18 | $10,999,973 was deposited into 1FN075 on November 21, 2005. | Transfers Chart; Claims Determinations. |
| 19 | Between inception and December 8, 2008, over 130 withdrawals were made from 1FN075 totaling $34,668,026. | Transfers Chart; Claims Determinations. |
| 20 | Defendants withdrew $8,142,060 from 1FN075 in 16 transfers in the two years preceding December 10, 2008 (the "Filing Date"). These funds were entirely fictitious profits. | Transfers Chart; Claims Determinations. |

4

| | | |
|---|---|---|
| 21 | Defendants withdrew $15,456,814 from 1FN075 in 51 transfers in the six years preceding the Filing Date; Apfelbaum states it was "all used to pay taxes." | Apf. Decl. ¶¶ 17, 19; Apf. Dep. 240:19-20 Transfers Chart; Claims Determinations. |
| **Laurence Apfelbaum Account:  1FN076** | | |
| 22 | Account 1FN076 was opened and "funded" on or about May 1, 1995 by an inter-account transfer of $33,150,157 in fictitious profits from 1FN006. | Transfers Chart; Claims Determinations. |
| 23 | No other deposits were made into 1FN076. | Transfers Chart; Claims Determinations. |
| 24 | Between inception and the Filing Date, over 145 withdrawals were made from 1FN076, totaling $147,261,229. | Transfers Chart; Claims Determinations. |
| 25 | Defendants withdrew $16,962,339 from 1FN076 in 19 transfers in the two years preceding the Filing Date.  These funds were entirely fictitious profits. | Transfers Chart; Claims Determinations. |
| 26 | Defendants withdrew $79,404,202 from 1FN076 in over 50 transfers in the six years preceding the filing date; Apfelbaum states that most of these withdrawals "were to pay French taxes[.]" | Apf. Decl. ¶ 21; Transfers Chart; Claims Determinations. |
| **Succession Account:  1FR122** | | |
| 27 | Account 1FR122 was opened and "funded" on or about July 5, 2005 by an inter-account transfer of $79,122,658 in fictitious profits from 1FN076 (Apfelbaum's account). | Transfers Chart; Claims Determinations. |
| 28 | No other deposits were made into 1FR122. | Transfers Chart; Claims Determinations. |
| 29 | Apfelbaum withdrew $50,907,639 in ten transfers from 1FR122; Apfelbaum states that "all of that money was used to pay either the United States or French taxes." | Apf. Decl. ¶ 20; Transfers Chart; Claims Determinations. |
| 30 | Apfelbaum closed 1FR122 in 2006 with a transfer of $30,373,955 in fictitious profits to 1FN076, Apfelbaum's account. | Transfers Chart; Claims Determinations. |

## DEFENDANTS' DIRECTION OF ACCOUNTS,
## RECEIPT OF TRANSFERS, AND OTHER CONTACTS WITH BLMIS

| **Steps to remain invested with BLMIS after Igoin's 1995 death** | | |
|---|---|---|
| | **Fact** | **Source** |
| 31 | When Igoin passed away, "his major asset was the BLMIS accounts[.]" | Apf. Decl. ¶ 8; *see also* Hearing Tr. 5:12-15. |
| 32 | Igoin's will provided Doris would inherit 50% of his assets; the other half would pass to Apfelbaum and Emilie with Doris retaining a "usufruct life estate" over that half. | Apf. Dep. 167:7-24; Apf. Decl. ¶ 8. |

5

| 33 | Apfelbaum had a "major conflict with [her] mother," and "convinced [her] mother to go against [her] father's Will" and forego her life estate over the BLMIS accounts. | Apf. Dep. 77:22-78-20, 79:7-80:18, 82:21-24, 167:20-169:5, 171:13-19. |
|---|---|---|
| 34 | Apfelbaum did so "so that [her] daughter inherited directly and [her] husband and [she] became legal guardians." | Apf. Dep. 79:7-81:11. |
| 35 | A French guardianship judge did not permit all of Emilie's assets to be held at BLMIS; he "told [Laurence and her husband] that only half of the investment could remain with BLMIS providing there was some guarantee, and that the other half would have to be invested in [French] treasury bonds." | Apf. Dep. 79:7-80:24; Apf. Decl. ¶ 9; Apf. Reply Decl. ¶ 5; *see also* Hearing Tr. 5:18-25. |
| 36 | The judge required that for the remaining half to remain at BLMIS, Madoff would need to personally guarantee that losses in Emilie's account would not exceed 5% per year. | Apf. Dep. 174:7-21, 192:2-12; Apf. Decl. ¶ 9; *see also* Hearing Tr. 6:15-18. |
| 37 | To ensure that Emilie's funds could remain invested in BLMIS, Apfelbaum directed her notary "to prepare[] a model of the guarantees that [she and her husband] wanted Madoff to provide, that he needed to accept, to bring to the judge." | Apf. Dep. 176:23-177:19. |
| 38 | Doris and Apfelbaum asked Madoff to come to Paris to sign customer agreements for Apfelbaum's and Emilie's BLMIS accounts (the "Agreements"). | Apf. Dep. 174:7-21, 181:2-25, 185:3-21; Apf. Decl. ¶ 8. |
| 39 | After coming to Paris and meeting with the notary, Madoff agreed to provide the guarantees. Apfelbaum and Madoff then signed and executed the Agreements on June 12, 1995. | Apf. Dep. 176:23-177:19, 189:7-21; Apf. Decl. ¶ 9; Agreements, Exs. 24 and 25 to Apf. Dep. |
| 40 | The executed Agreements state, among other things (in translation):<br>a) BLMIS is located at 825 Third Avenue, New York NY 10022 USA.<br>b) "Given that the client wishes to make certain securities investments through Madoff, and that Madoff wishes to make these, and given that the client had requested specific insurances and conditions and that Madoff had accepted these, the two parties agree as follows:"<br>c) The client will "deposit funds and/or securities with Madoff, so that these can be deposited into an account at Madoff for the client's benefit."<br>d) Madoff will "set up this account for the client's benefit and to invest these funds in securities listed on the United States stock market and to invest the returns therefrom on the client's behalf." | Agreements, Exs. 24 and 25 to Apf. Dep.; Apf. Decl. ¶ 8. |

6

|    |    |    |
|----|----|----|
|    | e) The client "will pay Madoff, in commission, fees not exceeding 12.5 US cents per share and 300 US dollars for every 1,000,000 dollars in American Government bonds. These commission are less that the customary and generally accepted commissions charged by the 'US registered Broker-Dealers' and members of the 'National Association of Securities Dealers.'" |    |
| 41 | The Agreements were different from BLMIS's standard customer agreements, which Apfelbaum testified she had never seen before. | Apf. Dep. 193:19-194:8; *see also* Hearing Tr. 8:23-25. |
| 42 | Madoff agreed to charge Apfelbaum and Emilie reduced commissions compared to what he charged other customers. | Apf. Dep. 182:25-183:20. |
| 43 | Madoff purported to "set up a system [of puts and calls] that was different in the case of Emilie's account," and "assured [Apfelbaum] that it was the way not to incur any risk." | Apf. Dep. 192:14-24. |
| 44 | After the meeting with Madoff, Apfelbaum kept her and Emilie's assets invested with BLMIS. | Apf. Dep. 84:8-17; Apf. Decl. ¶ 8. |
| 45 | In or around June 29, 1995, there was a cash withdrawal of $16,754,550 from Emilie's account (No. 1FN075), which represented about 50% of the initial purported transfer into the account. | Transfers Chart; Claims Determinations. |

| **Defendants' direction over and receipt of transfers from accounts pre-1999** | | |
|----|----|----|
|    | **Fact** | **Source** |
| 46 | Between 1995 and 1999, BIF/Finama sent Apfelbaum faxes containing information that BIF/Finama received from BLMIS concerning purported trading activity in Apfelbaum's, Doris's and Emilie's BLMIS accounts. | Apf. Dep. 84:25-85:8, 112:3-10; Apf. Decl. ¶ 11. |
| 47 | Between 1995 and 1999, Apfelbaum requested withdrawals by writing to Frank DiPascali ("DiPascali") or Sylvie Dringenberg, a BIF/Finama employee. | Apf. Dep. 107:6-15. |
| 48 | Between 1995 and 1999, withdrawals from Apfelbaum's BLMIS account were wired directly to an account at Société Générale that she held jointly with her husband. | Apf. Dep. 107:17-108:5. |
| 49 | When BIF/Finama stopped servicing the BLMIS accounts in 1999, Apfelbaum or Doris (or both) spoke with Madoff directly about their decision to continue investing with BLMIS directly. | Apf. Dep. 117:24-118:17; Apf. Decl. ¶¶ 12-13. |
| 50 | Apfelbaum also sought advice from Sylvie Dringenberg, the BIF/Finama employee who had previously serviced the Apfelbaum and Igoin family accounts. Ms. Dringenberg encouraged Apfelbaum to continue investing with BLMIS. | Apf. Dep. 112:19-113:8. |

7

| **Defendants' direction over and receipt of transfers from accounts post-1999** | | |
|---|---|---|
| | **Fact** | **Source** |
| 51 | After Apfelbaum began "administering [her and Emilie's BLMIS accounts] directly," BLMIS sent account statements directly to her. | Apf. Dep. 121:17-122:10; Apf. Decl. ¶ 15. |
| 52 | Apfelbaum "called the BLMIS office" in New York when she wanted to make a withdrawal. | Apf. Decl. ¶ 15; *see also* Hearing Tr. 7:24-8:17. |
| 53 | BLMIS wired transfers from 1FN076 to Apfelbaum's bank account. | Apf. Dep. 107:17-108:5; Apf. Decl. ¶ 15. |
| 54 | Apfelbaum communicated directly with Madoff for "bigger stuff" or "[e]very time there was some landmark." | Apf. Dep 125:6-126:8, 207:15-208:2. |
| 55 | Apfelbaum communicated with DiPascali at least twice a year to request redemptions from her and Emilie's accounts. | Apf. Dep. 90:20-91:5, 154:9-11. |
| 56 | DiPascali sent Apfelbaum faxes "every time" transactions were purportedly made in her, Emilie's and Doris's BLMIS accounts. | Apf. Dep. 121:17-122:10. |
| 57 | Apfelbaum wrote to DiPascali for matters such as communicating figures or finding out if the Treasury bills had been redeemed. | Apf. Dep. 207:15-208:1. |
| 58 | In 1999, Apfelbaum wrote a letter to DiPascali asking him to "confirm to [her] that [Emilie's] Treasury Bills have been sold (it has to be done by now, so as not to be dated for [Apfelbaum and Emilie] October 14)." | Apf. Dep. 108:11-110:22; Letter from Apfelbaum to DiPascali, Ex. C. to Wang Decl. |
| 59 | In 1999, Apfelbaum wrote a letter to DiPascali regarding her plans to withdraw a "huge amount" from BLMIS to pay taxes. | Apf. Dep. 90:5-92:3, 95:21-96:15; Letter from Apfelbaum to DiPascali, Ex. D to Declaration of Ona T. Wang in Support of Trustee's Opposition to Defendants' Motion to Dismiss (Dkt. No. 31) [hereinafter "Wang Decl."]. |
| 60 | In 1999, Apfelbaum wrote to DiPascali to suggest a "strategy for progressively evening out Emilie's option loss/taxable gain gap," enclosing three pages of charts and equations. | Correspondence between Apfelbaum and DiPascali regarding strategy for Emilie's account, Ex. 28 to Apf. Dep.; Apf. Reply Decl. ¶ 7. |
| 61 | Apfelbaum discussed this strategy with her tax advisor and then directly with Madoff, who told her to send the figures to DiPascali. | Apf. Dep. 214:5-216:8. |

8

| | | |
|---|---|---|
| 62 | Avoiding a tax inspection by the French authorities in connection with her family's BLMIS accounts became an "obsession" of Apfelbaum's. | Apf. Dep. 212:8-213:18. |
| 63 | Apfelbaum regularly monitored the purported status of the Treasury bills in her and Emilie's BLMIS accounts to ensure that the "Treasury bills" were "sold" prior to their maturity date. | Apf. Dep. 92:4-93:20. |
| 64 | According to Apfelbaum, this was to avoid the tax increase (from 24% to 50%) that would purportedly occur if the "Treasury bills" matured. | Apf. Dep. 92:9-20. |
| 65 | If DiPascali failed to "sell" the Treasury bills close to their maturity date, Apfelbaum became worried and "took action" by either calling him or sending him a fax to remind him to sell the Treasury bills. | Apf. Dep. 153:1-154:21. |
| 66 | When Emilie turned 21 in 2005, Emilie decided to liquidate her French Treasury bonds (which the French judge had required in 1995) and reinvest the proceeds with BLMIS. | Apf. Dep. 236:2-238:25; *see also* Hearing Tr. 6:1-7. |
| 67 | Defendants deposited $10,999,973 on November 21, 2005 into Emilie's account, the only funds ever deposited in that account after it was opened. | Transfers Chart; Claims Determinations. |

### DEFENDANTS' CONTACTS TO ADDRESS US TAX ISSUES
### AND CONTACTS WITH US INTERNAL REVENUE SERVICE

| | Fact | Source |
|---|---|---|
| 68 | When Doris died in 2005, Apfelbaum was Doris's only heir and the executor of Doris's estate. | Claim Form for BLMIS Account No. 1FR122 and 5/31/06 BLMIS Statement, Ex. 11 to Apf. Dep.; Apf. Decl. ¶ 10. |
| 69 | The holdings in Doris's account (1FN006) were transferred directly to Apfelbaum's BLMIS account, 1FN076. | Apf. Dep. 44:20-45:15. |
| 70 | After Doris's death, Apfelbaum realized that Doris should have been paying United States taxes during her lifetime on capital gains earned on Doris's BLMIS portfolio. | Apf. Dep. 44:23-45:15, 62:24-63:10; Apf. Decl. ¶ 20. |
| 71 | Apfelbaum retained an attorney in the United States to negotiate a settlement with the IRS on her and on the behalf of her estate. | Apf. Dep. 45:1-16, 61:2-63:10; Apf. Decl. ¶ 20. |
| 72 | While those settlement negotiations were pending, Apfelbaum "created a new Madoff account," the Succession Account, to segregate the funds consisting of Doris's estate for the purpose of settling the anticipated tax liability. | Apf. Dep. 45:5-15, 61:2-63:10; Defs.' Responses and Objections at 20; Apf. Decl. ¶ 20. |
| 73 | Only Apfelbaum "control[led] this account, this Doris Igoin succession account, while it was in existence." | Apf. Dep. 46:14-17. |

9

| | Fact | Source |
|---|---|---|
| 74 | Apfelbaum used the "funds" in 1FR122 to pay the tax liability for Doris's estate. | Apf. Dep. 45:19-46:1. |
| 75 | Once Apfelbaum and her U.S. counsel settled and paid the tax liabilities for Doris' estate, Apfelbaum closed the Succession Account and transferred the remaining funds into her own BLMIS account. | Claim Form for BLMIS Account No. 1FR122 and 5/31/06 BLMIS Statement, Ex. 11 to Apf. Dep. |
| 76 | After BLMIS's collapse, Apfelbaum or her U.S. counsel, on her behalf, wrote a letter to the IRS seeking a refund of taxes paid on Doris's income. | Apf. Dep. 260:3-23. |

### DEFENDANTS FILED SIPA CLAIMS

| | Fact | Source |
|---|---|---|
| 77 | In January 2009, the Trustee mailed to Defendants a "Notice to Customers and Creditors of [BLMIS] and to All Other Parties In Interest" ("Notice") along with claims forms and other materials. | Notice regarding claims, Ex. 15 to Apf. Dep. |
| 78 | Apfelbaum received and reviewed the SIPA claim forms and the accompanying instructions. | Apf. Dep. 48:22-49:13; *see also* Hearing Tr. 30:7-13. |
| 79 | Apfelbaum testified that she is "90 per cent sure" she received the Notice. | Apf. Dep. 57:7-58:19; Apf. Decl. ¶ 23; *see also* Hearing Tr. 30:7-13. |
| 80 | Apfelbaum handwrote, signed and filed a customer claim for her account (No. 1FN076) seeking a distribution of $335,075,000 from the BLMIS estate. | Apf. Dep. 38:24-40:19; Apf. Decl. ¶ 24; *see also* Hearing Tr. 27:10-12. |
| 81 | Apfelbaum helped Emilie handwrite, sign and file a claim for Emilie's account (No. 1FN075) seeking a distribution of $123,175,000 from the BLMIS estate. | Apf. Dep. 40:20-42:9; Apf. Decl. ¶ 24; *see also* Hearing Tr. 27:10-12. |
| 82 | Defendants' claims were denied in their entirety and Defendants filed no objection. | Claims Determinations; *see also* Hearing Tr. 27:1-8. |

Date:   August 20, 2014
        New York, New York

Respectfully submitted,

By: */s/* Ona T. Wang
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

10

Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Tracy Cole
Email: tcole@bakerlaw.com
Ona T. Wang
Email: owang@bakerlaw.com
Natacha Carbajal
Email: ncarbajal@bakerlaw.com
M. Elizabeth Howe
Email: bhowe@bakerlaw.com
David M. McMillan
Email: dmcmillan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*