# **EXHIBIT A**

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4   In the Matter of:

5

6   IRVING H. PICARD, TRUSTEE FOR

7   LIQUIDATION OF BERNARD L. MADOFF

8   INVESTMENT SECURITIES LLC,

9              Plaintiff,

10         v.              Adv. Case No. 10-04336(SMB)

11  THE ESTATE (SUCCESSION) OF

12  DORIS IGION, ET AL.,

13             Defendants.

14  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15              U.S. Bankruptcy Court

16              One Bowling Green

17              New York, New York

18

19              August 6, 2014

20              10:07 AM

21

22

23  B E F O R E :

24  HON STUART M. BERNSTEIN

25  U.S. BANKRUPTCY JUDGE

Page 2

1

2    Hearing re:  (cc-19) Defendants Estate (Succession) of Doris

3    Igoin, Laurence Apfelbaum, and Emilie Apfelbaum, Motion to

4    Dismiss Adversary Proceeding

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South, William J. Garling

Page 3

```
 1   A P P E A R A N C E S :

 2   BAKER HOSTETLER

 3        Attorneys for the Trustee

 4        45 Rockefeller Plaza

 5        New York, NY 10111

 6

 7   BY:  NICHOLAS J. CREMONA, ESQ.

 8        BIK CHEMMA, ESQ.

 9        TRACY COLE, ESQ.

10        DAVID M. MCMILLIAN, ESQ.

11

12   KELLEY, DRYE & WARREN LLP

13        Attorney for Apfelbaum & Igoin

14        101 Park Avenue

15        New York, NY 10178

16

17   BY:  JONATHAN COOPERMAN, ESQ.

18

19

20

21

22

23

24

25
```

Page 4

```
 1                    P R O C E E D I N G S
 2              THE COURT:  All right.  Madoff and Apfelbaum.
 3    Sorry.
 4         (Pause)
 5              THE COURT:  Go ahead.
 6              MR. COOPERMAN:  Would you like me to speak from
 7    the podium or here?
 8              THE COURT:  Yes, please.
 9              MR. COOPERMAN:  Thank you, Your Honor.
10              May it please the Court, we are here today -- my
11    name is Jonathan Cooperman from the law firm of Kelley, Drye
12    & Warren and I represent the defendants in this adversary
13    proceeding and we're here on our motion to dismiss for lack
14    of personal jurisdiction and for form non-convenience.
15              Your Honor undoubtedly has seen a lot of Madoff
16    cases with unique facts.  Your Honor, this is one of them.
17    My clients are a French psychologist and a student, their
18    names are Laurence Apfelbaum and Emilie Apfelbaum.
19    Laurence, Your Honor is a female name, just for the record
20    to be clear.
21              THE COURT:  I figured that one out after a while.
22              MR. COOPERMAN:  Okay.  Thank you, Your Honor.  A
23    lot of people -- a lot of people don't at first.
24              They're French citizens, they live and work and
25    reside in Paris, France.
```

Page 5

```
 1              The trustee makes no allegation that my clients
 2     have any connections anywhere in the United States --
 3              THE COURT:  Well they have New York accounts
 4     though, right?
 5              MR. COOPERMAN:  Aside from their BLMIS accounts.
 6     It's important, Your Honor, I want to get to that
 7     jurisdiction, but I want that record to be clear.
 8              The trustee attempts to lump together my clients
 9     with Albert Igoin, I-G-O-I-N, who is the late deceased
10     father of Laurence Apfelbaum.
11              Your Honor, they're very different.  Mr. Igoin
12     died in 1995.  At that time his daughter, Laurence, his
13     granddaughter, Emilie -- Emilie was only 11 years old at the
14     time -- inherited the BLM -- inherited money and those --
15     that money largely was BLMIS accounts.
16              Now, Your Honor, at that time Laurence Apfelbaum
17     was free to choose to invest what she wanted -- to invest
18     her money where she wanted.  Emilie, Your Honor, was 11
19     years old, and her inheritance was subject to a French
20     guardianship judge, which is equivalent to a French -- a
21     family law judge here in New York.
22              The evidence shows, Your Honor, that the French
23     guardianship judge required that Emilie Apfelbaum invest
24     half of her money in French treasury bills because that was
25     a safe investment and that's what --
```

1             THE COURT:  When did she turn 21?

2             MR. COOPERMAN:  She was 11 years old in 1995, Your

3     Honor, so she would have turned 21 in 2006.

4             THE COURT:  All right.  And she determined to

5     leave her money in BLMIS at that point, right?

6             MR. COOPERMAN:  She did, Your Honor.  She did,

7     there's no question about that, but I'd like to focus a

8     second on what happened in 1995, because I think that's

9     relevant to the issue of jurisdiction.

10            The reason is, Your Honor, is that what the French

11    guardianship -- judge required is for Emilie Apfelbaum, if

12    she wanted to leave her money with BLMIS then Madoff had to

13    give guarantees that the money was safe.  And what happened

14    is, Your Honor --

15            THE COURT:  Well she could lose five percent.  I

16    think that's what it was.

17            MR. COOPERMAN:  That's right, Your Honor.  That it

18    couldn't lose more than five percent in any one year, but

19    for purpose of jurisdiction what's very important, Your

20    Honor, is that Madoff came to France -- Paris, France, he

21    negotiated a special contract which Your Honor has in front

22    of you, with a French what's called a notaire, which is a

23    cross I guess between a notary and lawyer.

24            THE COURT:  I know the argument, but this isn't a

25    contract case, this is a fraudulent transfer case.  Contract

Page 7

1    has nothing to do with the trustee's claim, or tell me how

2    it has something to do with -- not the jurisdictional issue,

3    but the claim.

4               MR. COOPERMAN:  Well, I'm focusing right now on

5    jurisdiction, Your Honor.  I understand the trustee's

6    theory, but the fact is, is that -- and I want to go through

7    this with you, all of -- some other facts that go to

8    jurisdiction if Your Honor will let me --

9               THE COURT:  Go ahead.

10              MR. COOPERMAN:  -- that merely -- what the cases

11   hold for jurisdiction is that merely maintaining the account

12   in New York by itself is not sufficient for jurisdiction.

13              THE COURT:  Let me ask you a question.  There

14   wasn't -- I didn't see it in anybody's papers.

15              MR. COOPERMAN:  Yes, Your Honor.

16              THE COURT:  I see all these withdrawals from the

17   accounts.

18              MR. COOPERMAN:  Understood, Your Honor.

19              THE COURT:  How did they come about?  Did somebody

20   make a request for money?

21              MR. COOPERMAN:  Yeah.  Your Honor, so what I was

22   going to say is the contacts with New York are largely

23   because of France you have to pay wealth taxes and --

24              THE COURT:  No, no, I'm asking a different

25   question.  If I look at Exhibit B -- I think it's Exhibit B

1    to the complaint --

2              MR. COOPERMAN:  Understood.

3              THE COURT:  -- it lists a lot of withdrawals --

4              MR. COOPERMAN:  Yes, Your Honor.

5              THE COURT:  -- with some deposits, a lot of

6    withdrawals.  And the question I had is how did these

7    withdrawals come about?  Did somebody send a request to

8    BLMIS to withdraw money?

9              MR. COOPERMAN:  What was -- there was a request

10   made, yes, to withdraw money --

11             THE COURT:  So every time there's a withdrawal

12   that means that a request came into BLMIS in New York to

13   withdraw money.

14             MR. COOPERMAN:  That's correct, Your Honor.

15             THE COURT:  All right.

16             MR. COOPERMAN:  That's correct.  So that is

17   clearly what happened here.

18             I want to call your attention to one thing -- a

19   couple things on the French language contract and then

20   address some of the other context aside from calling in to

21   -- to request money for French wealth taxes.

22             These agreements they're in French, they're simple

23   one-page agreements, they're very different from the other

24   BLMIS agreements that have been in adversary proceedings

25   before this Court.  The agreements do not contain a New York

Page 9

1    choice of law clause, they don't contain the clause

2    appointing a New York agent, there's nothing in the

3    agreements of the accounts even being held in New York

4    beside from Mr. Madoff's address New York is not mentioned.

5    It's unrebutted, Your Honor, that these particular

6    agreements are subject -- they were negotiated in France and

7    they're subject to French law.

8           THE COURT:  But it's not a contract.  I keep

9    coming back to the same question.  Are you telling me that

10   if somebody receives a -- well this may answer the question

11   -- but if somebody receives a fraudulent transfer from a New

12   York account that's governed by French law?

13          MR. COOPERMAN:  Well what I'm saying, Your Honor,

14   is the differences here is that that's not quite the point I

15   was trying to make.  The difference here is that in many of

16   the personal jurisdiction cases in Madoff the issue came

17   down to the defendants signed a Madoff classic account

18   agreement, and that person whether they be in Europe, Asia,

19   what have you, that agreement said you subject yourself to

20   New York jurisdiction.

21          My bigger point here is this is a special one-page

22   French document which does not contain that.

23          THE COURT:  All right.  And I agree with you on

24   that.  I've seen those cases.  I've also seen other cases

25   that say simply maintaining an account in New York is

1    enough.

2              MR. COOPERMAN:  Well, I want to -- I want to go to

3    that in one second, Your Honor.

4              THE COURT:  Let me ask you the question

5    differently.

6              MR. COOPERMAN:  Please.

7              THE COURT:  Are you saying that the choice of law

8    clause -- New York choice of law clause is a sine qua non of

9    personal jurisdiction in the case?

10             MR. COOPERMAN:  It's one important factor in a lot

11   of these cases.

12             If I may, Your Honor, let me address the law, then

13   let me come back to some of the facts, because I think the

14   law is very important.

15             In -- the trustee's amended complaint states that

16   jurisdiction in this case is based on CPLR 302(a).  That's

17   right --

18             THE COURT:  Actually I had a question about

19   that --

20             MR. COOPERMAN:  Please.

21             THE COURT:  -- for both sides.

22             The only claim -- as the law now stands the only

23   claim that the trustee has is a bankruptcy claim going back

24   two years.  Does the CPLR apply to that or is there some

25   federal law of specific jurisdiction that applies to that

1    and are they different?

2              MR. COOPERMAN:  I don't think, Your Honor, there's

3    any practical difference, and the reason is, is because the

4    trustee has not identified any -- because there are none --

5    any contacts that my clients have anywhere else in the

6    United States that would support federal jurisdiction.  The

7    only contacts in the entire United States that my clients

8    have are these accounts here in New York.

9              THE COURT:  But under federal non-CPLR specific

10   jurisdiction law.  If somebody never comes into the state

11   but avails themselves of activities in the state or does

12   something outside the state that has a consequence inside

13   the state, which is generally my understanding of the CPLR

14   specific jurisdiction, does the same law apply under more

15   general federal specific jurisdiction law?

16             MR. COOPERMAN:  Yes, Your Honor.

17             THE COURT:  Okay.

18             MR. COOPERMAN:  It does.  In fact the -- every --

19   even under the long arm statute the cases the trustee cite

20   hold that specific jurisdiction requires that the claims

21   alleged arise out of the federal activities.  And that's in

22   the In re: Bozell (ph) case cite by the trustee.

23             The point is, Your Honor, that in this situation

24   what we have here is this action does not arise out of the

25   Apfelbaum's accounts.  What it arises out of is Madoff's

Page 12

1    activities.

2              THE COURT:  I thought it arose out of transfers

3    from the Apfelbaum accounts?

4              MR. COOPERMAN:  Well let me read to you paragraph

5    1 of the amended complaint, Your Honor.  It says, "This

6    adversary proceeding arises from the massive Ponzi scheme

7    perpetrated by Madoff."

8              Your Honor, in every case that has been cited

9    either by the trustee or by my clients in the briefs before

10   you, there is more activity in New York to support personal

11   -- let me start again.  In cases where personal jurisdiction

12   is found, Your Honor, in every case cited by either the

13   trustee or myself, there was more activity in New York, more

14   connections in New York than simply maintaining an account

15   here.

16             If I can walk you through just a couple of the

17   cases to show you some examples, Your Honor.  In the Maximum

18   Absolute Return Fund case, which was a Madoff case, in that

19   case it was a Connecticut-based feeder fund, there was a

20   BLMIS contract with a New York choice of law clause, and the

21   court stated, quote:

22             "The Second Circuit has indicated that entering

23   into a contract with a New York choice of law clause is a

24   significant factor in a personal jurisdiction (indiscernible

25   -- 00:10:26), because the parties invoke the benefits and

Page 13

1    protections of New York law."

2            The Picard versus Chase case, Your Honor, which

3    was cited by the trustees, there was a designation of a New

4    York agent and also this was only looking federal contacts

5    as a whole, there was also a California bank account

6    maintained.

7            In the Picard versus Comad (ph) Securities Corp.

8    case, another case cited by the trustees, there was a New

9    York choice of law clause and also a designated New York

10   agent.

11           In Malachi versus Lebanese Bank case, which was

12   cited just -- New York Court of Appeals case, it was cited

13   in our briefs.  You had a situation where a corresponding

14   bank in New York was getting millions of dollars transferred

15   here into New York, I think it was on dozens of transactions

16   in New York, with the express purpose to use the New York

17   account to benefit the Hezzbollah terrorist group, so --

18           THE COURT:  But to benefit the Hezzbollah

19   terrorist group that may have had something to do with the

20   causation, the second part of the test, but here when I look

21   at Schedule B I see a lot of money going in and more money

22   coming out of the account.  So it wasn't a one-time deposit

23   or a one-time withdrawal, these were very active accounts.

24           MR. COOPERMAN:  Your Honor, there is no question

25   that money came out of the accounts.  It's unrebutted in the

Page 14

1    jurisdictional discovery that every dollar that came out of

2    the Doris Igoin account and out of the Emilie Apfelbaum

3    account were to pay French wealth taxes based on the

4    presumed value of the Madoff account.

5            THE COURT:  But that's -- you know, that's the

6    unfortunate truth of just about every defendant in every one

7    of these net profit cases, they all had to pay taxes, and I

8    guess I assume that they had to withdraw money to pay taxes.

9    Maybe not as much as your clients had to pay because of the

10   French tax laws, but it's an unfortunate truth in every one

11   of these situation.

12           MR. COOPERMAN:  Your Honor, I told you about the

13   law in which the trustees cite where there's more activity

14   than just maintaining an account in New York.

15           Let me focus, Your Honor, which this is a very

16   crucial part of our argument, on other cases in which all

17   that they had was our situation where there was a bank

18   account in New York and the passive receipt of income from

19   that account, and the outcome is very different.

20           I call Your Honor's attention to several cases we

21   cited.  First I'll start with the Societe Generale versus

22   Florida Health Science Center case, this was a 2003 case

23   decided by Judge Cedarbaum in the South District.  In that

24   case a Florida bonding company which was issuing bonds for a

25   Tampa-based hospital had a $12.9 million account here in New

Page 15

1    York with Societe Generale.  The purpose of that account the

2    court found was to make money for the bonding company.  It

3    had a guaranteed interest rate of seven percent.

4              And what Judge Cedarbaum said, Your Honor, is if I

5    can quote"

6              "Contrary to Societe Generale's contentions,

7    maintenance of a bank account in New York is usually

8    insufficient to confer personal jurisdiction over a non-

9    domiciliary defendant even in suites arising from that

10   account."

11             THE COURT:  Isn't that pre-Leechy (ph) law though?

12             MR. COOPERMAN:  I don't see how it changes though,

13   Your Honor, because if I can continue to talk about this --

14             THE COURT:  Because I think you have to look at

15   the quality and the quantity --

16             MR. COOPERMAN:  Absolutely.

17             THE COURT:  -- of the account.

18             MR. COOPERMAN:  Absolutely, Your Honor.  But I

19   think what Leechy stood for is that somebody who is not in

20   New York -- well let me give a different analogy.  That if

21   my clients never dealt with Madoff but only had a French

22   correspondence bank that's I believe what Leechy stood for.

23   What Leechy did not stand for is to say that if you just

24   maintain an account in New York and have nothing else and do

25   nothing else --

Page 16

1           THE COURT:  I agree with the if you do nothing

2    else, but I come back to my question that your clients did

3    more than nothing else, because at a minimum there are

4    hundreds of deposits and withdrawals over the years in these

5    accounts, and even if I looked more recently and I don't go

6    back to 1995, and you're telling me that everyone of those

7    was proceeded by some sort of request to send money.

8           MR. COOPERMAN:  But, Your Honor, if I can also --

9    I'd like to continue talking about that Societe Generale

10   case, but before I do I'd address Your Honor to the Divinsky

11   (ph) versus Kingsford case, a Judge Carati (ph) case from

12   2008.  That was a situation where there were claims to

13   recovery monies wrongfully -- allegedly wrongfully obtained

14   by a defendant in Florida as part -- that they received as

15   part of a New York fraudulent scheme, and the claims were

16   sought based on the same debtor and creditor laws as the

17   trustee has asserted in this case against my client.

18           And what Judge Carati said was -- he said, quote:

19           "It is settled however that passive receipt of

20   allegedly stolen funds absent evidence of knowledge or

21   intent is an inadequate basis for the court's exercise of

22   jurisdiction under 302(a)(2)."

23           THE COURT:  Knowledge or intent -- knowledge of

24   the Ponzi scheme.

25           MR. COOPERMAN:  Yes.  Exactly, Your Honor.

Page 17

1              So I think that's a very relevant case.  It's no

2     different than with the Société Générale case.  I wanted to

3     call Your Honor's attention to other parts of the Société

4     Générale case because in that case the Court distinguished

5     the very type of cases the trustee cites here.  The Court in

6     the Société Générale case talked about other cases where

7     there was a foreign selection clause, where there was a

8     promissory note with actually New York connection.

9              And what the Court said is that after the Florida

10    bonding company in that case deposited the money into New

11    York, their New York connections were, quote, "limited to

12    passive acceptance of interest payments and monthly

13    statements in Florida."

14              THE COURT:  I guess I'm hung up on the word

15    "passive" because you've used it a couple of times.  Here,

16    as I understand it, your clients weren't just receiving

17    monthly statements and interest payments that were

18    automatically generated without request.  They were

19    receiving a significant number of payments or checks or wire

20    transfers over the years.

21              MR. COOPERMAN:  With all due respect, Your Honor,

22    I think that's a distinction without a difference here.  I

23    think what the cases say is that on the one hand, if you

24    have an account in New York and an out-of-state person does

25    nothing more than have that account and get monies from that

Page 18

1    account versus the other cases that the trustee largely

2    relies on where a much greater deal of activity was done

3    within New York, which leads me, Your Honor, for -- I'd like

4    to focus on that because that's the other important part of

5    my presentation.

6            What the trustee has alleged, they made very

7    sweeping statements, especially, as Your Honor knows, we had

8    briefing in 2012 and then we had 18 months of jurisdictional

9    discovery.  If you look especially at the briefs of 2012,

10   there are sweeping statements made by the trustee that my

11   clients were, quote, "anything but ordinary investors; they

12   were acutely aware of the purported activity in the

13   accounts.  They acted deliberately, and so forth."

14           THE COURT:  I don't pay attention to conclusory

15   statements like that.  And I do have a question.  There's

16   been a lot of smoke and heat over the years in this case

17   about the facts and I question whether there's really a

18   dispute regarding the facts, supposed to the adverbs, the

19   adjectives, and the conclusory statements.  The trustee

20   basically has a summary of facts in his supplemental memo,

21   which I guess he filed after the jurisdictional discovery --

22           MR. COOPERMAN:  Correct, Your Honor.

23           THE COURT:  -- in response to yours, and he cites

24   a lot to Mrs. Apfelbaum's deposition, and I'm just wondering

25   if there's any dispute as to those facts.

1              MR. COOPERMAN:  Well, there's actually a huge

2    dispute, Your Honor, because --

3              THE COURT:  Okay.  So you're tell me there's a

4    fact -- let me stop you -- and here's an issue I have with

5    this case.  You're telling me there's factual dispute

6    regarding personal jurisdiction?

7              MR. COOPERMAN:  No, I'm not, Your Honor.

8              THE COURT:  I just asked you.

9              MR. COOPERMAN:  I misstated what I said.

10             THE COURT:  Okay.

11             MR. COOPERMAN:  There is no dispute.  The record

12   speaks for itself.

13             THE COURT:  Well, the record is long at this point

14   and there are a lot of papers.

15             MR. COOPERMAN:  But it's not, Your Honor, because

16   I think if you examine fairly very sweeping statements made

17   by the trustee and compare it to the evidence cited, the

18   evidence doesn't support it.

19             Your Honor, if I can -- just as an example, Your

20   Honor, the trustee is to show our -- my client's active

21   participation in New York.  The trustee has cited a total of

22   four documents over a 13-year period.  Your Honor, they've

23   made big statements in 2012, briefing as to what they meant.

24   All of those statements are demonstrated by future -- by

25   subsequent discovery not to be accurate.

1          Your Honor, if I could just point to you, three of

2    those faxes are from 1999.  They are all handwritten

3    documents.  The first one is a May 10th, 1999, fax which

4    simply in that, Laurence Apfelbaum wrote to Frankie

5    DePasquale (ph) and said essentially the French tax

6    authorities made a mistake.  They undercalculated their tax

7    and she has to withdraw a lot more money than anticipated.

8    That's it.

9          A second fax, Your Honor, is an October 12th,

10   1999, fax, and in that case, what Laurence Apfelbaum

11   testified was that she was merely telling -- reminding Mr.

12   DePasquale to sell a French Treasury bill before it matured.

13   And what the -- the trustee makes a big deal out of it, but

14   the trustee doesn't cite the testimony to put this in

15   context.

16         And what that testimony said, Your Honor, was Ms.

17   Apfelbaum was informed under French law that if a Treasury

18   bill was held to maturity it was taxed at a high rate, I

19   think 50 percent.  If it was sold the day before maturity,

20   it was taxed at 25 percent.

21         THE COURT:  Well, what does that have to do with

22   the fact of the contact?

23         MR. COOPERMAN:  Because, Your Honor, the -- I

24   believe -- well, the law provides, as we've cited, that what

25   the trustee needs to do to establish jurisdiction here is

Page 21

1   not simply to say there's a maintenance of account, but

2   somehow that we were active participants in the strategies

3   of the account and investing, which is what they're trying

4   to do, Your Honor.  And that's why as a total, they cited

5   four faxes to show that, but that doesn't show it.

6           THE COURT:  The trustee's supplemental memorandum

7   of law --

8           MR. COOPERMAN:  Yes, Your Honor?

9           THE COURT:  -- lists from pages 5 to 11, what it

10  calls -- what he calls supplemental statement of facts

11  derived, I guess, from the discovery -- largely from Mrs.

12  Apfelbaum's -- Dr. Apfelbaum's deposition.

13          Do the Defendants dispute any of those facts?

14          MR. COOPERMAN:  We do, Your Honor.  Just give me

15  one second.

16          THE COURT:  But if you do, don't I have to have an

17  evidentiary hearing to decide the issue?

18          MR. COOPERMAN:  Well --

19          THE COURT:  That's one of the problems here.  I

20  understand the tension of dragging -- I shouldn't say

21  dragging -- bringing your clients in to participate in an

22  evidentiary hearing to prove that they shouldn't be here in

23  the first place, but how do I resolve this evidentiary

24  dispute?

25          MR. COOPERMAN:  Well, if that's what Your Honor

Page 22

1    wants --

2            THE COURT:  That's the question I have.  I'm

3    asking you.

4            MR. COOPERMAN:  Thank you, Your Honor.

5            I wasn't meaning to be smart there.

6            THE COURT:  No.

7            MR. COOPERMAN:  The -- in my view, if you look at

8    the statements made in the trustee's supplemental

9    memorandum, and then if you look at the evidence and the

10   factual citations, those factual citations do not support

11   what the trustee says, and, in fact, Your Honor, if you then

12   look at our supplemental papers, we put all of these

13   statements into context.

14           As an example, Your Honor, I just mentioned about

15   the point where what the trustee is talking about, these

16   sales of French Treasury bills, and the trustee would

17   present this as if this was some, you know, a financial guru

18   who was sitting there saying sell, buy, at different times,

19   when all that she was doing in context was -- and she

20   testified, she said if she saw in his statement that Frank

21   DePasquale, that a Treasury bill was coming up due in a week

22   and it hadn't been sold, she would let him know to sell it.

23           THE COURT:  But I saw another fax or e-mail in

24   which there was a much more-detailed plan about minimizing

25   Emilie's taxes.

Page 23

1          MR. COOPERMAN:  Oh, that's a perfect example, Your

2     Honor, of what I talked about of the record not being stated

3     properly.  Because that fax was part of the trustee's 2012

4     submission.  And if you look at the trustee's 2012

5     submission, the trustee said that that fax shows -- I wrote

6     it down here -- quote, "actively directed trading strategy,"

7     okay?

8          Curious, Your Honor, that the trustee has not then

9     relied on that fax in their post-jurisdictional discovery, a

10    briefing, and the reason is it's explained in our post-

11    discovery brief at pages 20 to 21, because what the

12    testimony was is Laurence Apfelbaum's tax advisor was trying

13    to figure out what Bernie Madoff was doing because he put a

14    put and hold strategy in place, supposedly, to comply with

15    the Emilie Apfelbaum French law contracts, and you can't

16    lose more than five percent.

17          What Laurence Apfelbaum testified is that actively

18    directing strategy memo, simply, her tax advisor dictated it

19    to her and said, Run it past Madoff; is this what they're

20    doing?  So, you know, there's a sweeping statement that

21    somehow my client is somehow engaged in active strategy,

22    but, again, I think the big takeaway that I would ask Your

23    Honor from this oral argument was to please closely examine

24    the evidence.  I know Your Honor does all the time, but I

25    think that you will find that our statements and our putting

Page 24

1    the evidence in context shows this is a French psychologist.

2    It's not somebody who had a trading strategy.

3            In fact, I think it's also interesting, Your

4    Honor, for the two days of depositions they took of Laurence

5    Apfelbaum, nowhere are there in there any quotes about

6    discussions of her expertise in finances.  In fact, Ms.

7    Apfelbaum testified, quote, "I've never known exactly what

8    the strategy was.  I only noticed that on the monthly

9    account statements there were dividends or equities.  I

10   don't know anything about the stock exchange.  All I know is

11   that I was told they were either Treasury bills or equities,

12   stocks.  I've never seen anything else."

13           The point is I've gone in various ways here, but I

14   believe that in order to prove 302 jurisdiction or the

15   federal specific jurisdiction, it doesn't make a difference

16   here because only the BLMIS accounts are the only New York

17   issues here, either way you've got to show that your claim

18   arises out of those accounts.  The case law is -- we've

19   cited the Dovinsky (ph) case.  There's also a case that's

20   Judge Koeltl's case, the International Customs Associates,

21   which is cited by the Société Générale case.  In that case

22   you had a situation where Judge Koeltl declined to find

23   jurisdiction over a Taiwanese company where all meetings

24   regarding the parties' contract were in Taiwan and it

25   involved what business the New York company would do for the

1    Taiwanese company and were subsequently, there were only

2    phone calls into New York.

3            The point is, Your Honor, that all of these cases

4    say that simply having a BLMIS account here is not

5    sufficient.  What their case arises out of the fraud and

6    as -- if I can quote one other -- on the late Judge Bayer

7    (ph) in the online market case which we cited, he states,

8    quote, "The relevant focus under CPLR 302 is on what the

9    Defendant did in New York in connection with the cause of

10   action, not the Plaintiff's actions."  So the cause of

11   action here is the massive fraud that Mr. Madoff

12   perpetrated.

13           THE COURT:  No, the cause of action are the

14   fraudulent transfers.  That's what this case is about.

15           MR. COOPERMAN:  That's right and that still, it's

16   the activity of Mr. Madoff, as opposed to our activity of

17   our -- any -- our receipt, my client's receipt of those

18   fraudulent transfers was not here in New York and that's

19   what Judge Prodding (ph) focused on in the Dovinsky case,

20   and so we think this is a very, very different situation.

21           I'd like to move on if --

22           THE COURT:  I have one question for you.

23           MR. COOPERMAN:  Of course.

24           THE COURT:  Are any of the jurisdictional facts

25   implicated in the merits of the case?

Page 26

1          MR. COOPERMAN:  Yes and no, Your Honor.

2          THE COURT:  What's the yes part?

3          MR. COOPERMAN:  I'm thinking about this.  It's a

4    good question.

5          THE COURT:  I'm going to give you a chance to

6    think about it because if I do decide to have a trial on the

7    issue of personal jurisdiction, it may depend on whether I

8    have a separate trial or try it with the merits.

9          MR. COOPERMAN:  I see where Your Honor is going on

10   that.  You know, this goes to what I want to talk about

11   before the forum non conveniens, and I will go out of turn

12   here because I also want to cover the SIPA matter -- the

13   SIPA filings.

14          Would Your Honor like me to --

15          THE COURT:  Well, that's part of the

16   jurisdictional argument.

17          MR. COOPERMAN:  It is, Your Honor.  So, should --

18          THE COURT:  You've got the floor.

19          MR. COOPERMAN:  Okay.  If you don't mind, I would

20   like to cover SIPA and then go to the forum non conveniens.

21          THE COURT:  Okay.

22          MR. COOPERMAN:  The trustee has alleged that the

23   filing of the SIPA forms is, itself, good enough by itself

24   for jurisdiction and Your Honor --

25          THE COURT:  And I wanted to ask you on that one:

Page 27

1    What happened to the claims that your client submitted?  Is

2    there still a claims that allowance dispute, I guess?

3                    MR. COOPERMAN:  I believe they were denied.  The

4    trustee may --

5                    THE COURT:  And the Defendants never objected to

6    that denial?

7                    MR. COOPERMAN:  We didn't do anything after that

8    point.

9                    THE COURT:  Okay.

10                   MR. COOPERMAN:  So what happened, Your Honor, is

11   Laurence Apfelbaum was not represented by counsel at the

12   time that she filed these SIPA forms; that's her testimony.

13   The trustee's cases, which they have, have cited do not --

14   none of them are situations in which a SIPA form filing

15   gives rise to jurisdiction.  The cases they have cited are

16   different if you submit a bankruptcy proof of claim.

17                   THE COURT:  So what's the difference?

18                   MR. COOPERMAN:  Big difference, Your Honor.

19                   So the bankruptcy proof of claim, it's clear on

20   there.  Bankruptcy proof of claim, the form has the name of

21   the court, the title, the docket number, under bankruptcy

22   rules, Form F9, the form has to say the following statement:

23   Filing a proof of claim submits the creditor to the

24   jurisdiction of the Bankruptcy Court --

25                   THE COURT:  Can I ask you a question?

1                    If you were litigating the allowance of your

2    client's claim, based on what your client had sent in to

3    Texas or wherever, would you be arguing that this Court

4    lacks jurisdiction to determine the allowability of that

5    claim because this is a SIPA case?

6                    MR. COOPERMAN:  I haven't considered that issue

7    yet.  I mean I --

8                    THE COURT:  I'm asking you to consider it.

9                    MR. COOPERMAN:  They might.

10                   THE COURT:  So you submit a claim and when it's

11   disputed, you say the Court can't hear it?

12                   MR. COOPERMAN:  There's a difference, though, Your

13   Honor.  Because the difference is that if I was representing

14   Mrs. Apfelbaum from day one, I would have talked to her and

15   we would have perhaps more closely considered what we were

16   going to do.  I might have advised her about what a net

17   winner is, what a net loser is.  I would have given her all

18   of her options.  Frankly, Your Honor -- and I'm not a French

19   law expert -- but I do not know what options she might have

20   in France about this.  So, you know, I would not only have

21   given her my thoughts on bankruptcy law, but I would have

22   involved French counsel.

23                   So Your Honor is asking a simple question and one

24   obvious answer, I guess would be yes, but I think that it's

25   too simple a question for this situation.  There are just a

Page 29

1    lot of moving parts.  The fact is, Your Honor, that unlike a

2    bankruptcy form where it says -- it says that you should

3    hire a lawyer -- you should consider it.  The form says

4    you're going to submit yourself to the jurisdiction of the

5    Bankruptcy Court with the consequences that a lawyer can

6    explain.

7            Obviously Your Honor has seen those forms before

8    and, you know, whether you are the most serious investor in

9    the world or whether you're like my clients, a psychologist

10   and a student whose second language is English, you'd read

11   that and you'd say, gotta be careful.  There's nothing here

12   like that, nothing at all in our situation.

13           So the fact is that that SIPA form claim should

14   not subject a jurisdiction.  Again, none of the trustee's

15   cases --

16           THE COURT:  But aren't you just saying she's

17   ignorant of the law or are you saying that there's some due

18   process argument somewhere in this case?

19           MR. COOPERMAN:  That was an eloquent way to put my

20   argument, Your Honor, because I think -- well, I know what

21   the argument is.  In order to have jurisdiction, you have to

22   have a conscious decision to submit yourself to the

23   jurisdiction of the Court.

24           The case we cited, the In Re Petrucci case, which

25   was a District of New Jersey case, talked about the fact

Page 30

1    that even looking at a bankruptcy proof of claim form with

2    the bells and whistles saying, warning, you may be subject

3    to jurisdiction, even in that situation, its allowance is

4    equitable based upon the facts of the case.  It's an

5    equitable decision, even in a bankruptcy proof of claims

6    situation.

7           And I would say here, Your Honor, if we consider

8    the facts, you had a French psychologist, no experience with

9    investing.  Clearly at the time she was vulnerable, she just

10   lost her presumed fortune.  She hadn't even consulted an

11   attorney.  What she received actually contrary to saying

12   warning, you may be sued in New York when she sent something

13   to Texas, it said SIPA is there to protect you.  I don't

14   think that she understood the difference.  That's a big

15   point, Your Honor, whether you consciously subject yourself

16   to jurisdiction.

17          And, again, coming back to Your Honor's question,

18   the more I think about it, it's not a simple answer.

19          THE COURT:  I think it is, but why don't you move

20   on to forum non conveniens.

21          MR. COOPERMAN:  Okay.  May I say -- before I --

22   may I say five sentences on magnify?

23          THE COURT:  Yeah, I don't know -- I've read the

24   papers.  It's not clear to me what that has to do with this

25   case, but --

1          MR. COOPERMAN:  No me.

2          THE COURT:  -- maybe you can save that for

3     rebuttal.

4          MR. COOPERMAN:  Okay.  We spent 18 months of

5     jurisdictional discovery on it.  I'm not clear as well.

6          I'll move on to forum non conveniens, Your Honor.

7          THE COURT:  Thank you.

8          First question on forum non conveniens:  Your

9     expert says that there's a five-year statute of limitations

10    on fraud claims.  It's now more than five years since

11    December 11th, 2008 --

12         MR. COOPERMAN:  Right.

13         THE COURT:  -- so aren't all of these claims time-

14    barred in France?

15         MR. COOPERMAN:  No, Your Honor.

16         This was raised by the trustee in the last

17    supplemental memo.  We have not had a chance to respond to

18    it.  What I would like to do, Your Honor, and it's

19    noteworthy that they didn't put any sort of affidavit from

20    their French law expert in about this, but Mr. Quint, I've

21    talked to him, he's our French law expert, he will say that

22    in France, statute of limitations is a defense which you can

23    assert.  It's up to the Defendant whether to assert it.

24         THE COURT:  Well, the same is true here.

25         MR. COOPERMAN:  Well, okay, but I want to make

Page 32

1    sure that's the law in France.  So my point is, Your Honor,

2    when you have this forum non conveniens dismissal, it's

3    always based on conditions and as one condition we would, of

4    course, stipulate that we would not assert or my clients in

5    France -- I won't be part of it then -- will not assert a

6    statute of limitations defense.

7              THE COURT:  Okay.

8              MR. COOPERMAN:  And that is clear, and we would

9    like the opportunity to put in a supplemental statement if

10   Your Honor would allow us to do so.  For Mr. Quint to

11   complete the record that shows that, in fact, just like in

12   America, it's a waivable defense and (indiscernible -

13   10:42:57).

14             If I can continue forum non conveniens, Your

15   Honor?

16             THE COURT:  I had that initial question.

17             MR. COOPERMAN:  Oh, it's a good -- it's a perfect

18   question, Your Honor.  You know, talking about whether

19   France is an adequate forum, you don't take my word for it,

20   Your Honor, please take the trustee's word for it.  When

21   they submitted their -- when the trustee submitted his

22   application for a French law firm, UGCC & Associates, what

23   he -- the stated reason for hiring -- for this Court to hire

24   that French law firm was it's necessary -- this is a quote

25   from their application, "It's necessary to engage special

Page 33

1    counsel to represent the trustee in connection with

2    litigation --" one -- and that's my one -- "where French law

3    is implicated or the Defendants are located in France."

4            Now, clearly, Your Honor, we have the or.  The

5    Defendants here are located in France.  That's the exact

6    stated reason for the trustee.

7            THE COURT:  Are you saying it's a concession that

8    the trustee has agreed to try this case in France?

9            MR. COOPERMAN:  No, I think it's a concession,

10   Your Honor, that this is a very unusual, which is an

11   understatement, bankruptcy situation where you have

12   Defendants all throughout the world, and in this situation,

13   I think it's a concession by the trustee that where

14   Defendants are in France, it may be well appropriate to have

15   the trustee's eminent French counsel participate in this.

16           Your Honor, if you look --

17           THE COURT:  It certainly may well be appropriate,

18   but it may also be well appropriate to have their eminent

19   counsel in New York try the case.

20           MR. COOPERMAN:  Well, let me explain why I

21   think --

22           THE COURT:  And the Defendant's eminent counsel in

23   New York.

24           MR. COOPERMAN:  Well, I prefer not to, Your Honor.

25   But in all seriousness, there are a couple of reasons I

1    think which heavily weigh in favor of France.  First of all,

2    just on UGCC for one second.  This is not some counsel who's

3    been on the back shelf doing nothing.  Since our last

4    October, 2012, appearance before Judge Lifland, they put in

5    fee applications for $750,000.  I can't tell if that's U.S.

6    dollars.  I can't tell what they're doing because that's not

7    in the fee application, but for that amount of money they're

8    either litigating cases just as they said they would or

9    they're certainly up to speed in order to do so.

10            THE COURT:  What does that have to do with forum

11   non conveniens?  I'm sure that the trustee can go out and

12   hire the finest French counsel --

13            MR. COOPERMAN:  What it has to do, Your Honor --

14            THE COURT:  -- if he had to.

15            MR. COOPERMAN:  -- because ordinarily in a forum

16   non conveniens situation, the Plaintiff's choice of forum is

17   given deference.  My point here is that the trustee, the

18   Plaintiff here, has made applications to this Court to say

19   that, in essence, to say I've got great New York counsel and

20   I've got great French counsel and I am going to -- when I

21   have situations when Defendants are in France, I'm going to

22   use my great French counsel.

23            So my point about saying this, Your Honor, is to

24   the extent the trustee is going to argue, and has argued in

25   its papers, that their choice of a New York forum be given

1    deference, it should be in this situation.  That's my point,

2    Your Honor.

3            If I can continue, the public and private factors

4    strongly weigh in favor of my client, and let me give you

5    two concrete reasons.  First of all, Your Honor, let's talk

6    about witnesses.  When we go to the merits of this case --

7            THE COURT:  What are the merits of this case?

8    This is a strict liability case.  It's a fictitious profits

9    case, isn't it?

10           MR. COOPERMAN:  Well, it's not, Your Honor.

11           THE COURT:  What are the defenses to a fictitious

12   profits case?

13           MR. COOPERMAN:  It depends on when value was given

14   to the account.  If you --

15           THE COURT:  But no value was given beyond the

16   principal.  That's said of law, and maybe there's a time

17   value of money attributable to it and that is an argument.

18   I understand that's in the circuit.

19           MR. COOPERMAN:  Okay.  When the trustee -- if you

20   read the amended complaint, the trustee would say the value

21   of this account goes back to the 1970s when Albert Igoin put

22   in whatever money he did.

23           THE COURT:  But that's for the purposes of

24   determining the net investment method.  That's all resolved.

25           All that the trustee can recover, as the law

1    presently stands, is up to the transfers made within two

2    years of the filing date.

3              MR. COOPERMAN:  Right.  But there's a value

4    component in there too, what value was given to -- what the

5    value was given, and my point is, Your Honor, if you measure

6    the value from 1970 versus if you measure the value from

7    when Emilie Apfelbaum, who inherited money, put in 1995, you

8    come up with a very different net winner versus net loser

9    equation.

10             THE COURT:  I don't understand that.  The trustee

11   had seen the calculations.  You haven't told me that you

12   have evidence that shows different calculations of the cash

13   in and cash out of the account, so I'm not understanding how

14   you come up with a different number.

15             MR. COOPERMAN:  Well, we haven't gotten to that

16   point yet, Your Honor.  So I see what's in the complaint.

17             THE COURT:  The question -- the reason -- well, a

18   lot of stuff has happened in terms of the law since even the

19   amended complaint.

20             MR. COOPERMAN:  Oh, sure.

21             THE COURT:  But, you know, I hear things about

22   witnesses in France, but to me this is a relatively

23   straightforward case because the trustee is not alleging,

24   for example, that your clients knew that BLMIS was a Ponzi

25   scheme which would open them up or subject them to liability

1      for the principal, as well as the net profits.

2              And in terms of what net profits are and how

3      they're calculated, that's been resolved by the Second

4      Circuit.

5              MR. COOPERMAN:  Well, it has been resolved by the

6      Second Circuit, Your Honor, and I don't have a formula right

7      here in my outline, so I don't want to --

8              THE COURT:  It's cash in and cash out over the

9      life of the account.

10             MR. COOPERMAN:  Yeah, but it's also -- yes, Your

11     Honor --

12             THE COURT:  Or at least that's what some other

13     circuits have said.  The circuit -- more circuits didn't

14     quite say that.

15             MR. COOPERMAN:  Right.  But there's also a

16     component of how much value you gave to the account in the

17     first place.

18             THE COURT:  But beyond the cash in, what's the

19     value?

20             MR. COOPERMAN:  It depends on when the cash -- it

21     depends on when the cash was put in when you measure it

22     from.

23             THE COURT:  Not under the net investment method,

24     though, that's what I'm saying.

25             MR. COOPERMAN:  But the document you're flipping

Page 38

1    through, Your Honor, brings us back to the 1970s.

2              THE COURT:  That's right.

3              MR. COOPERMAN:  My point is that's erroneous and

4    that's what we want to show.  That's a different account.

5    The account that Your Honor -- I can't tell what page you're

6    on, of course, but --

7              THE COURT:  Well, I will say that the account with

8    most of the transactions which goes back to 1988 doesn't

9    show any transfers within two years, so chances are, unless

10   the law changes, the trustee is not going to be able to

11   recover anything in connection with that account.

12             MR. COOPERMAN:  I'm not trying to recover anything

13   in this position.

14             THE COURT:  The trustee is.

15             MR. COOPERMAN:  I'm sorry.  I thought you said me.

16   I'm sorry.

17             THE COURT:  No, the trustee can only go back --

18             MR. COOPERMAN:  I am sorry.  I misheard you.

19             THE COURT:  -- recover in an amount up to what was

20   transferred out in the last -- in the two years before the

21   filing date, although he computed net profits or net losses,

22   the trustee can go all the way back to the origin of the

23   account or at least until a Ponzi scheme began.

24             MR. COOPERMAN:  Right.  But the document you have

25   before you is a conglomeration of several accounts.  The

Page 39

1    accounts at issue, my client, as I said when I first started

2    talking, my client's account started in 1995, okay?

3              THE COURT:  Okay.

4              MR. COOPERMAN:  And the accounts that you have

5    flipping through -- I don't have that right in front of me,

6    but you just said 1988, for example.

7              THE COURT:  Yeah, but the trustee -- I hear you,

8    but the trustee hasn't -- the trustee has given me

9    information regarding four separate accounts.  The first

10   account, which is the one that goes back to 1988 has no

11   transfers within the last -- within the two years before the

12   filing date.  So unless the law changes, that account is

13   essentially irrelevant.

14             MR. COOPERMAN:  But the trustee's view is that

15   every single penny that my client had were from day one,

16   fictitious money that wasn't there.  My point is different,

17   which is that we -- my clients inherited in 1995.

18             THE COURT:  All right.  But I guess there was an

19   interaccount transfer which is a separate issue that is

20   being litigated.

21             MR. COOPERMAN:  Okay, Your Honor, but we don't

22   even think it's an interaccount transfer; it's a separate

23   account.  It may have been an interaccount transfer based on

24   whatever bookkeeping Mr. Madoff did, but it's very different

25   from our account.  What we would like the chance to prove,

Page 40

1    Your Honor, is the facts that happened in France, very

2    relevant to our case.  The fact that --

3              THE COURT:  But whether or not -- isn't it really

4    depend on what the books and records of BLMIS show?

5              MR. COOPERMAN:  I don't think so, Your Honor, and

6    let me explain why.  It's one thing if, you know, I had a

7    relative who passed away and the same account, I just

8    assumed that account.  You had a whole different situation

9    here in 1995 based on the French law, based on the fact that

10   unless there were negotiations -- unless basically Madoff

11   satisfied what the French judge was requiring for the Emilie

12   Apfelbaum account, and, Ms. Apfelbaum testified and it's

13   perfectly logical, they would have taken the money and gone

14   elsewhere.

15             I think this is a very unique situation.  It's

16   much different than somebody who just inherited it.  My

17   point --

18             THE COURT:  I don't mean to be glib, but your

19   clients were defrauded by Madoff like everybody else.

20             MR. COOPERMAN:  They were, Your Honor.

21             THE COURT:  I understand that.

22             MR. COOPERMAN:  But in the way it's calculated can

23   make a difference based upon the value that they gave to

24   these accounts in 1995.

25             And my point is that the trustee is going to

Page 41

1     put -- what they would like to do, Your Honor, I think --

2     and we haven't really addressed the merits here yet because

3     this is only in jurisdiction -- but I can imagine the

4     trustee would spend about, you know, 20 minutes of an

5     evidentiary presentation and say strict liability, that's

6     it.

7                 THE COURT:  Right.

8                 MR. COOPERMAN:  Whereas we envision a much

9     different situation showing sort of our unique situation and

10    the choices that our clients had.

11                THE COURT:  Well, you mentioned Emilie's

12    account --

13                MR. COOPERMAN:  Yes, Your Honor?

14                THE COURT:  -- and it shows that on May 1st, 1995,

15    a transfer of $33,150,157 occurred presumably from some

16    other account.  Are you saying that that number is not

17    correct?

18                MR. COOPERMAN:  I am not saying one way or the

19    other.  I haven't done the math.

20                THE COURT:  Well, you're making a forum non

21    conveniens argument based upon the availability of witnesses

22    and what I'm getting at is whether you have any other

23    evidence in France or anywhere else which is going to

24    undercut that assertion?

25                MR. COOPERMAN:  I think the -- well, the evidence

1    in France, which I would like to show, is that Emilie

2    Apfelbaum at the time basically could have taken her money

3    elsewhere, and had she done that, had she done that for a

4    year -- had -- just hypothetically, for example, Your Honor,

5    if the French guardianship judge said take all that BLMIS

6    money and put it in French Treasury bonds for four years and

7    then -- and she did that, and then at the end of the four-

8    year period, again, just hypothetically, she took that money

9    and she put it into BLMIS, I think we would all be saying,

10   well, that's when the value of her account should --

11            THE COURT:  That's not what happened.

12            MR. COOPERMAN:  I'm sorry?

13            THE COURT:  That's not what happened.

14            MR. COOPERMAN:  I know it's not happened, but what

15   we're trying to say is that it's a roughly analogous

16   situation.  We would like the chance to show in France that

17   what happened, this wasn't some bookkeeping quick entry

18   where Emilie inherited.  There was a very conscious decision

19   going on, a to-ing and fro-ing, so to speak, Your Honor,

20   with the judge about the -- about how to act.

21            THE COURT:  But how does that affect the

22   computation of the net profits?

23            MR. COOPERMAN:  Well, as --

24            THE COURT:  For whatever reason, and I will accept

25   your reason, that BLMIS and withdrawals were made, which

1    based upon the calculations of the trustee under the net

2    investment method resulted in the receipt of net profits,

3    how does the reason why you left the money in the account

4    affect that analysis?

5              MR. COOPERMAN:  Because --

6              THE COURT:  And I'm not even sure the trustee

7    disagrees with you or disputes that that's why the money was

8    left in the account.

9              MR. COOPERMAN:  Well, we haven't gotten to this

10   merits point in very much detail, Your Honor, but I think

11   the way it does is because there is a component of value,

12   you know, just hypothetically, Your Honor, if a BLMIS

13   investor originally put in a hundred million dollars and

14   took out ten million dollars, you know, that would be

15   different if he put in a hundred million dollars and took

16   out two hundred million dollars.

17             And so the value here, it's the say way, that to

18   us, what's very important is that this is a very unusual

19   French situation where French law was implicated based on

20   what the (indiscernible - 10:55:46) was doing at the time

21   and his allowing the money to -- and the judge allowing the

22   money to be with --

23             THE COURT:  Just, if you can tell me how French

24   law affects what -- the amount of money that went in and the

25   amount of money that came out.

Page 44

1           MR. COOPERMAN:  So, I think, Your Honor, that the

2   French -- what -- my point is more.  It goes to the

3   conscious decisions of my client at the time as to whether

4   to continue to invest with Madoff or not.

5           THE COURT:  That's true in every one of these

6   cases.

7           The argument I thought you were going to make,

8   which is made in a lot of these cases, is had they pulled

9   the money out in 1995, there would be no fraudulent

10  conveyance.

11          MR. COOPERMAN:  Well, that's true, too, Your

12  Honor.

13          THE COURT:  That's argued in every case I have.

14          MR. COOPERMAN:  Okay.  Well, I guess not

15  successfully, so I have --

16          THE COURT:  But that's not happened.  That's not

17  what happened.  I have to deal with what happened.

18          MR. COOPERMAN:  I understand.  I understand.

19          I think we have not gotten to merits discovery at

20  all here.  We are just talking about personal jurisdiction

21  and that's the avenue that I would like to go down, and I

22  don't think -- and, Your Honor, for me to have any defense

23  in this case that would require French witnesses, I'm not

24  going to get their testimony and the reason is, is because

25  the French blocking statute, which has been briefed in this

1    case, the trustee points out that the French blocking

2    statute will not necessarily prevent my client from

3    testifying, and Your Honor could -- but there are some cases

4    potentially where Your Honor could order Laurence Apfelbaum

5    to testify, despite that.

6              But the fact is that for any non-party witness who

7    all in France, they will be affected by that.

8              THE COURT:  I thought I saw -- and may be it

9    wasn't in France -- a lawyer who was deposed.  Was that in

10   Switzerland or in France?

11             MR. COOPERMAN:  That was in a magnify case, Your

12   Honor, and it was actually a Swiss attorney who was deposed

13   in the UK, and so it's not in our case.  That's in the

14   magnify case, Your Honor.

15             So the other reason, Your Honor, about this is two

16   other reasons, Your Honor, about forum non conveniens.  One

17   is hardship, and I hope nobody minimizes the hardship here.

18   We are talking about a French -- this is a French person who

19   doesn't come to the U.S.  She speaks English.  I will give

20   you that.  She's not comfortable conversing in the situation

21   like we're having today.

22             THE COURT:  Well, she can testify through an

23   interpreter as she did in her deposition.

24             MR. COOPERMAN:  She has lost her money.  I

25   guarantee you, Your Honor, that whatever the fee

1   applications we've put in, in this case, the trustee, I'm

2   charging a fraction of that amount.  This is a huge

3   imposition.  Her means of livelihood now -- she's a

4   psychologist, having to come here, she would have to give

5   that up.  Her husband is an elderly person; he's 20 years

6   older.  She would have to care for him.  Her daughter is an

7   art gallery worker.

8          THE COURT:  Let me ask you a question.  I see you

9   videotaped her deposition once, couldn't we have a

10  videoconference trial or just videotape her deposition and

11  use it as if she's an unavailable witness?  She doesn't

12  really have to come in on the merits.

13         MR. COOPERMAN:  You know, in theory, Your Honor,

14  but I look at it a little differently, and the way I look at

15  it is you're talking about a person who, the day before

16  bankruptcy, thought they had a lot of money.  Now they're

17  being sued for a lot of money.

18         THE COURT:  Unfortunately true of many people.

19         MR. COOPERMAN:  Understood.  I'm not minimizing

20  any other person, but my point about this is, is that what

21  the trustee -- if the trustee's case is successful, this

22  will be something that will haunt both my clients for the

23  rest of their lives.  They deserve -- I'm all for videotape

24  depositions.  I'm for calls with Courts.

25         But when you're talking about the substance, when

1    you're talking about something of value to a person's

2    livelihood, I think it's only fair that the person does it

3    the traditional way.  So I think that Your Honor, that

4    certainly, can you do it?  Yes, of course, we can do it.

5              Is it fair and appropriate in this situation to do

6    it?  I don't think so.

7              THE COURT:  Well, I mentioned it because you

8    raised -- and I appreciate the argument -- the cost of

9    having to come to the United States, and it just seems to me

10   that there are ways to avoid that costs with videoconference

11   trials, video depositions, and you use that as her

12   testimony.

13             MR. COOPERMAN:  But you give up something, Your

14   Honor.  You give up -- you give up the fact that -- I've had

15   many trials, Your Honor, I'm sure you've had them before you

16   here where the witness tugs on your sleeve and tells you

17   something that you hadn't thought of.  I lose that in that

18   situation, just as an example, Your Honor.

19             The bigger reason, Your Honor, and I think going

20   along with the hardship is this case is not going to be over

21   in New York.  This case would have to go to France

22   afterwards and the reason is, of course, that my clients

23   have no assets here, none whatsoever.  So basically, if we

24   have a case here in New York and if the trustee is

25   successful, Your Honor is basically sanctioning two cases,

1   one here and another in France.

2           THE COURT:  But that's true every time you have

3   foreign assets.

4           MR. COOPERMAN:  Yes, Your Honor, but -- and

5   there's a big but here -- and the but is that the trustee,

6   when the trustee applied to have UGCC as its French counsel,

7   it gave the exact reason to avoid that.  So the exact reason

8   was given to this Court that the trustee is going to hire

9   eminent counsel to deal with French Defendants.  Frankly,

10  Your Honor, when you look at the equities and public

11  interest factors, I think that it's not only fair for my

12  client, I think a French Court will have whether it's on the

13  merits or whether it's having forcing a judgment that may

14  come out of this court, a French court is going to have

15  great interest in protecting French citizens.  Mr. Quint put

16  in his declaration several pieces of French law where what

17  Madoff did, in fact, of coming to France and soliciting

18  business is contrary to French law, these issues are going

19  to be adjudicated in France, no matter what.

20          So, to me, the question is not only is it more

21  fair for my client to be in France where she signed the

22  French contracts, and for all of the reasons that I just

23  said, but it's fair, frankly, for the trustee.  The point

24  about --

25          THE COURT:  The trustee may disagree with you on

Page 49

1    that.

2              MR. COOPERMAN:  Well, I suspect their New York

3    counsel will, but the fact is that the trustee is -- the

4    interests of the trustee is to gather assets of the estate.

5    It doesn't really make a difference whether those assets

6    were gathered --

7              THE COURT:  Would a French court apply U.S.

8    Bankruptcy fraudulent transfer law?

9              MR. COOPERMAN:  I'm not an expert in French law.

10   I'm not an expert, Your Honor.

11             THE COURT:  Maybe that's why the trustee selected

12   the New York forum.    THE COURT:  Maybe that's why the

13   trustee selected the New York forum.

14             MR. COOPERMAN:  Could be, Your Honor, I don't know

15   one way or the other, I think it's just easier because they

16   sued an awful lot of people here.  But the fact is, is that

17   there are avenues in France, and whether -- you know, if --

18   and I'm no expert in French law, but I assume that if

19   whatever -- if whatever New York bankruptcy law is, is

20   contrary to French law, whether this be France, England,

21   Germany, what have you, that would be a consideration into

22   whether to enforce a judgment or not, just as it is here in

23   the United States.

24             So, you know, I think the point is -- what I'm

25   trying to say is that the trustee made a conscience decision

Page 50

1    to apply to this Court and say I'm going to have eminent

2    counsel in both ways, and the eminent counsel they said was

3    for exactly this situation, Your Honor.  If I could just say

4    it one more time because I think it's important.  Their

5    application says that they're going to use French -- they

6    may use -- not going to -- but may use French counsel when

7    French law is implicated or when defendants are located in

8    France.

9            So based on all of those, Your Honor, the reasons

10   and other reasons I've said, we respectfully ask that the

11   case be transferred, and I'd respectfully ask again the

12   opportunity to put in an affidavit from -- a declaration

13   from Mr. Quinn about the statute of limitations --

14           THE COURT:  Is that really necessary?  Because

15   you're telling me that if I agreed with you I could still

16   grant the motion on the condition that the defendants waived

17   the statute of limitations defense, put this case in

18   suspense, and if they don't just keep it open so there's no

19   statute of limitations problem.

20           MR. COOPERMAN:  We can certainly do that.  I just

21   wanted Your Honor to have the comfort of knowing that that's

22   what French law was.

23           THE COURT:  Okay.

24           MR. COOPERMAN:  Thank you, Your Honor.

25           MS. COLE:  Good morning, Your Honor.

Page 51

1                    THE COURT:  Good morning.

2                    MS. COLE:  Tracy Cole for the trustee.

3                    THE COURT:  Go ahead.

4                    MS. COLE:  I just wanted to respond a little bit

5     to some of the things that Mr. Cooperman was discussing.

6                    As Your Honor recognizes this is a fraudulent

7     transfer case, there -- currently as the law stands right

8     now we are only suing for the two-year fraudulent transfer

9     of fictitious profit, there's no allegation of bad faith,

10    it's a strict liability case, the evidence and the witnesses

11    are all in New York.

12                   I don't believe that the crucial facts are in

13    dispute here.  They -- they acknowledge that they've

14    received -- the two-year number is $25 million.

15                   THE COURT:  Well let's talk about the contacts

16    that these defendants have with the United States.

17                   MS. COLE:  Sure.

18                   THE COURT:  Go ahead.

19                   MS. COLE:  The contacts include that they have --

20    they've received the $25 million within the last two years

21    of the transfers, they directed -- they know -- well let's

22    go back.

23                   THE COURT:  But they received it in France.

24                   MS. COLE:  They did receive it in France, but the

25    transfers came from New York, and they knowingly invested in

1    New York.

2         So when -- when Albert Igoin died in 1995 they had

3    Bernie Madoff as is uncontested come out for the purpose of

4    allowing them to maintain these accounts in New York.  And

5    the account agreements that they executed, it's important

6    because that's come up a lot, the account agreements that

7    they executed don't specify any choice of law whatsoever,

8    but what they do specify is that the client wishes to make

9    certain securities investments through Madoff, who's located

10   in New York, that Madoff was to make these, they've

11   requested specific insurances and conditions that he's

12   willing to give, that Madoff will invest these funds and

13   securities listed on the United States stock market, and to

14   invest the returns therefrom in the clients' behalf, and

15   that he will be prepared -- he will be paid a commission

16   based on UST bills and a share of those and in accordance

17   with the U.S. registered broker/dealer law.

18        So the agreement contemplates that this will be

19   investment of a brokerage account in New York, that they

20   will be putting money in, directing investments into it, and

21   that they will be receiving transfers from it, and that

22   firmly establishes in itself personal jurisdiction under law

23   of this case and CPLR, and I don't think any of that is in

24   dispute.

25        The case law that Mr. Cooperman was discussing, he

1    talked a lot about just maintaining an account and passive

2    receipt of income.  That's not what this case is about.

3          He cited one case, the Societe Generale case was a

4    correspondence bank account case which even under New York

5    law apparently having a correspondent bank account does

6    appear to subject you to jurisdiction, but that's not what

7    we're dealing with here, we're dealing with a brokerage

8    account where they're actively seeking to invest in the

9    United States, actively seeking to benefit from that

10   investment, make profit from that investment, and are in

11   fact receiving the profits from that investment.

12         The Divinsky case that he talked about where he

13   talked about the passive receipt of funds, that was under

14   the tortious activity prong of the CPLR, that wasn't a case

15   like this is where we're talking about transacting business

16   in the State of New York, and that's what was happening

17   here.

18         There's no case law that I'm aware of that

19   suggests that purposefully investing in a brokerage account

20   in New York and taking the money out of that brokerage

21   account over a period of years doesn't subject you to the

22   personal jurisdiction of this Court.  And I don't believe

23   any of those facts are in dispute.  I don't think there's

24   any need for an evidentiary hearing.

25         For example, I think one of the things

1    Mr. Cooperman talked about was well, there are only a few

2    documents so the trustee is incorrect when he says that --

3    when he characterizes Ms. Apfelbaum's activity in her

4    account.  But I think what he's objecting to is our

5    characterization.  I don't think it's disputed, she

6    testified that she communicated with Mr. (indiscernible -

7    01:00:52) at least twice a year to make sure that he was on

8    top of the accounts.  She was directing withdrawals of the

9    accounts from the accounts.  And she was making sure that

10   they complied with the rules that she thought were necessary

11   to maximize her advantage and minimize her tax consequences.

12          So I think he thinks that that characterization --

13   he doesn't like our characterization, he thinks the fact

14   that it had to do with tax consequences in France should

15   matter, but those are a legal argument.  The facts I don't

16   believe are in dispute.

17          I want to be clear, something -- he said something

18   was not contested.  Anything about their tax liabilities or

19   what they used the money for we cannot attest because we

20   have not seen their financial records or their tax returns.

21   They have withheld those based on the French blocking

22   statute.  We do intend to litigate that when we get to the

23   merits of this case, but that has nothing to do with

24   personal jurisdiction right now.  I just wanted to be clear

25   when he says it's unrebutted or undisputed we don't have

Page 55

1    evidence on it.

2                I think he made a reference to French treasury

3    bills.  I just want to be clear the bills in this case were

4    all U.S. treasury bills.

5                THE COURT:  I thought that the French court

6    required that 50 percent of Emilie's account be invested

7    into French treasury bills?

8                MS. COLE:  Those were taken out of Madoff.

9                THE COURT:  There was nothing was there?  There

10   were no actual investments were there?

11               MS. COLE:  That money was taken out of Madoff and

12   that's not the subject of this lawsuit.

13               THE COURT:  Okay.  Okay.

14               MS. COLE:  So the half that remained in Madoff is

15   the subject of (indiscernible - 01:02:21).

16               Right.  Similar with the trading strategies.  I

17   don't think that there is a dispute that, you know, how

18   sophisticated she was about trading strategy --

19               THE COURT:  Well but you see there is and that's

20   because you make the statement that they were ordered.  I

21   guess you made the statement that they were sophisticated

22   investors, and that's when I say it's not clear to me

23   whether there's a dispute regarding the basic facts that she

24   wrote three faxes or that she requested withdrawals on some

25   basis or any of the other stuff you have in your

1    supplemental memorandum.

2              MS. COLE:  Not in the supplemental memorandum.  I

3    think the supplemental memorandum is based on the discovery

4    that we took.  We -- the statement she was a sophisticated

5    investor, we definitely have the facts showing that she's

6    trying to figure out the strategy of the account.

7              THE COURT:  But that's a conclusion.

8              MS. COLE:  But that conclusion, right, you can

9    disagree with the conclusion, but I think the facts

10   underlying our conclusions are not in dispute.

11             The forum non-convenience argument I think Your

12   Honor understands.  This is a -- this is a fraudulent

13   transfer case, this has nothing to do with anything going on

14   in France.  The agreement doesn't transform this into some

15   kind of French case.

16             For the record our hiring of a French counsel was

17   not a concession that we intend to go to a foreign

18   jurisdiction every time that one of our defendants is in a

19   foreign jurisdiction, if there's an avoidance action it

20   belongs here and we intend to litigate it here and we have a

21   right to do that.  Our choice of forum.  There's been no

22   suggestion that there was an improper impropriety in our

23   choice of forum.

24             These are all inter-account transfers.  I believe

25   the argument that Mr. Cooperman was trying to make is the

1    argument that was rejected in the antecedent debt decision.

2    A defendant named Hinti (ph) made a similar argument that

3    his -- he had entered into a divorce settlement with his

4    wife, that but for Madoff's representations he would have

5    withdrawn the money from BLMIS and would have taken that

6    divorce settlement somewhere else, but because Madoff

7    persuaded him to keep the money in BLMIS it was funded as an

8    inter-account transfer and that that should be something

9    different and treated differently, and that was rejected in

10   (indiscernible - 01:04:39) antecedent debts decision.

11              THE COURT:  I don't know what the argument is.

12              MS. COLE:  But I don't believe that it requires a

13   separate -- a separate case.

14              Unless you have further questions about the

15   record.

16              THE COURT:  No.

17              MS. COLE:  Okay.

18              THE COURT:  I'll give you the last shot,

19   Mr. Cooperman, not that there's much to respond to.

20              MR. COOPERMAN:  No, there's not.  Actually, Your

21   Honor, I -- one question I thought Your Honor was going to

22   ask Ms. Cole was on UGC are they litigating any cases in

23   France?

24              THE COURT:  But how is that relevant?

25              MR. COOPERMAN:  Because she just said that we, the

1    trustee, wants to litigate everything here in the United

2    States, so I don't know the answer to that, I can't tell

3    from the fee application --

4              THE COURT:  Well but how is it relevant?

5              MR. COOPERMAN:  Because I think it undercuts the

6    trustee's current argument that everything should be in the

7    United States, forum non-convenience is a discretionary

8    situation where the judge can have discretion, and if the

9    French trustee has -- I mean, I'm sorry -- if the French

10   counsel is litigation cases there and the trustee has hired

11   the -- you know, French counsel and the application for that

12   very purpose I think it is relevant to say it can be done.

13             THE COURT:  Well obviously -- obviously the

14   trustee has hired French counsel.

15             MR. COOPERMAN:  Obviously.

16             THE COURT:  Obviously the trustee is not

17   litigating this case there.

18             MR. COOPERMAN:  I understand.

19             THE COURT:  And I guess what you're saying is it's

20   equally convenient for the trustee to litigate there as

21   here.

22             MR. COOPERMAN:  That's correct.

23             THE COURT:  Whereas the same is not true of your

24   clients.

25             MR. COOPERMAN:  That's correct, Your Honor.

1           THE COURT:  I understand.

2           MR. COOPERMAN:  I'm violating every -- yeah, I'm

3      -- that's it.

4           The only other thing I'd want to say, Your Honor,

5      is the Divinsky case, it's under a different prong of CPLR

6      302(a); however, it still requires the same arising under as

7      we said as in any of the other cases.  It's a very on point

8      case.

9           THE COURT:  But my recollection of the tort

10     provision in the CPLR is it had to have foreseeable

11     consequences in the state that's applicable to the CPLR

12     provision a long time, but that's my --

13          MR. COOPERMAN:  They are different --

14          THE COURT:  -- but there is a distinction or

15     difference between the tort long arm jurisdiction and the --

16          MR. COOPERMAN:  I think it's a slight --

17          THE COURT:  -- general long arm jurisdiction.

18          MR. COOPERMAN:  I think it's a slight distinction

19     because the practical -- the practical effect is in both

20     situations unlike general jurisdiction you're looking at the

21     event in New York and does the claim arise out of that event

22     in New York?  The tort is saying it differently, but that's

23     really what it comes down to.

24          THE COURT:  Okay.

25          MR. COOPERMAN:  And the last thing I would say,

Page 60

1    Your Honor, is again, Your Honor looks like you're very

2    thoughtful about this.  I would simply ask that to the

3    extent you think there's any dispute on the facts that to

4    please carefully look at the record evidence, because I do

5    not believe it supports a lot of what Ms. Cole said about

6    our act of involvement and what we did.

7              THE COURT:  All right.  Let me try this with the

8    facts to avoid the possible need to bring your clients in,

9    although this is not a motion for summary judgment, I'm

10   going to adopt that procedure.

11             I'm going to ask the trustee to submit a statement

12   of what he considers to the material jurisdictional facts.

13   Avoid the adverbs, avoid the adjectives, avoid the

14   conclusory statements, with a citation to some evidence that

15   I already have.  I'll give you a chance then, Mr. Cooperman,

16   to either say, yeah, I admit that that's what the fact is,

17   add additional facts or deny, but explain if you're going to

18   deny a citation to authority.

19             MR. COOPERMAN:  Sure.

20             THE COURT:  If I can resolve it that way and I

21   don't need to have a further evidentiary hearing that's

22   fine, but if there are disputes regarding material issues of

23   fact then we'll have to talk about a practical way to -- you

24   know, to deal -- to resolve that issue.

25             MR. COOPERMAN:  It seems very fair to me, Your

1    Honor.

2              THE COURT:  All right.

3              MR. COOPERMAN:  When would you like the

4    submissions?

5              THE COURT:  That's what I'm going to ask.  When

6    can you submit -- all I want is a statement, each separately

7    numbered paragraphs, short statement with the citations of

8    authority of the undisputed material facts regarding

9    personal jurisdiction?

10             MS. COLE:  Just vacation schedules.

11             THE COURT:  Okay.

12             MS. COLE:  Just one second.  Sorry.

13             THE COURT:  This case has been going on for years.

14   I appreciate the fact that it's August.

15             MS. COLE:  Two weeks just because of vacation

16   schedules would be helpful.

17             THE COURT:  All right.  Let's say two weeks from

18   today is the 20th.  And when can you submit your response?

19             MR. COOPERMAN:  May I just turn this on to look at

20   my calendar a second?

21             THE COURT:  Sure.

22             MR. COOPERMAN:  I'm happy to report, Your Honor,

23   that the brains behind the operations, Ms. Clarkdale (ph),

24   is getting married in September.

25             THE COURT:  Congratulations.

1            MS. CLARKDALE:  Thank you.

2            MR. COOPERMAN:  So I want to make sure --

3            THE COURT:  So it'll before that.

4            MS. CLARKDALE:  Before then, yeah.

5            MS. COOPERMAN:  I don't think she wants to do this

6    on her honeymoon.  How about by September 5th, Your Honor?

7            THE COURT:  That's fine.

8            MR. COOPERMAN:  Okay.  Yeah, that's perfect.

9            THE COURT:  Okay.  And then I'll deem the matter

10   submitted.

11           MR. COOPERMAN:  Thank you, Your Honor.

12           THE COURT:  Thank you.

13           MS. CLARKDALE:  Thank you, Your Honor.

14           THE COURT:  Unless I need a further conference

15   regarding the facts.

16           Thank you very much.

17           MR. COOPERMAN:  Thank you, Your Honor.

18       (Whereupon these proceedings were concluded at 11:16

19   AM)

20

21

22

23

24

25

Page 63

1                C E R T I F I C A T I O N

2

3   We, Dawn South and William J. Garling, certify that the

4   foregoing transcript is a true and accurate record of the

5   proceedings.

6

7

    _____

8   Dawn South

    AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12

13

    Veritext

14

    330 Old Country Road

15

    Suite 300

16

    Mineola, NY 11501

17

18

    Date:  August 7, 2014

19

20

21

22

23

24

25

**&**

**&**  3:12,13 4:12
32:22

**0**

**00:10:26**  12:25
**01:00:52**  54:7
**01:02:21**  55:15
**01:04:39**  57:10

**1**

**1**  12:5
**10-04336**  1:10
**101**  3:14
**10111**  3:5
**10178**  3:15
**10:07**  1:20
**10:42:57**  32:13
**10:55:46**  43:20
**10th**  20:3
**11**  5:13,18 6:2 21:9
**11501**  63:16
**11th**  31:11
**12.9**  14:25
**12th**  20:9
**13**  19:22
**18**  18:8 31:4
**19**  2:2
**1970**  36:6
**1970s**  35:21 38:1
**1988**  38:8 39:6,10
**1995**  5:12 6:2,8 16:6
36:7 39:2,17 40:9
40:24 41:14 44:9
52:2
**1999**  20:2,3,10
**1st**  41:14

**2**

**2**  16:22
**20**  23:11 41:4 46:5
**2003**  14:22
**2006**  6:3
**2008**  16:12 31:11
**2012**  18:8,9 19:23
23:3,4 34:4
**2014**  1:19 63:18

**20th**  61:18
**21**  6:1,3 23:11
**25**  20:20 51:14,20

**3**

**300**  63:15
**302**  10:16 16:22
24:14 25:8 59:6
**33,150,157**  41:15
**330**  63:14

**4**

**408**  63:8
**45**  3:4

**5**

**5**  21:9
**50**  20:19 55:6
**5th**  62:6

**6**

**6**  1:19

**7**

**7**  63:18
**750,000**  34:5

**a**

**aaert**  63:8
**able**  38:10
**absent**  16:20
**absolute**  12:18
**absolutely**  15:16,18
**accept**  42:24
**acceptance**  17:12
**account**  7:11 9:12
9:17,25 12:14 13:5
13:17,22 14:2,3,4
14:14,18,19,25 15:1
15:7,10,17,24 17:24
17:25 18:1 21:1,3
24:9 25:4 35:14,21
36:13 37:9,16 38:4
38:5,7,11,23 39:2
39:10,12,23,25 40:7
40:8,12 41:12,16
42:10 43:3,8 52:5,6
52:19 53:1,4,5,8,19
53:21 54:4 55:6
56:6,24 57:8

**accounts**  5:3,5,15
7:17 9:3 11:8,25
12:3 13:23,25 16:5
18:13 24:16,18
38:25 39:1,4,9
40:24 52:4 54:8,9,9
**accurate**  19:25 63:4
**acknowledge**  51:13
**act**  42:20 60:6
**acted**  18:13
**action**  11:24 25:10
25:11,13 56:19
**actions**  25:10
**active**  13:23 19:20
21:2 23:21
**actively**  23:6,17
53:8,9
**activities**  11:11,21
12:1
**activity**  12:10,13
14:13 18:2,12 25:16
25:16 53:14 54:3
**actual**  55:10
**acutely**  18:12
**add**  60:17
**additional**  60:17
**address**  8:20 9:4
10:12 16:10
**addressed**  41:2
**adequate**  32:19
**adjectives**  18:19
60:13
**adjudicated**  48:19
**admit**  60:16
**adopt**  60:10
**adv**  1:10
**advantage**  54:11
**adverbs**  18:18
60:13
**adversary**  2:4 4:12
8:24 12:6
**advised**  28:16
**advisor**  23:12,18
**affect**  42:21 43:4
**affidavit**  31:19
50:12

**agent**  9:2 13:4,10
**agree**  9:23 16:1
**agreed**  33:8 50:15
**agreement**  9:18,19
52:18 56:14
**agreements**  8:22,23
8:24,25 9:3,6 52:5,6
**ahead**  4:5 7:9 51:3
51:18
**al**  1:12
**albert**  5:9 35:21
52:2
**allegation**  5:1 51:9
**alleged**  11:21 18:6
26:22
**allegedly**  16:13,20
**alleging**  36:23
**allow**  32:10
**allowability**  28:4
**allowance**  27:2 28:1
30:3
**allowing**  43:21,21
52:4
**amended**  10:15
12:5 35:20 36:19
**america**  32:12
**amount**  34:7 38:19
43:24,25 46:2
**analogous**  42:15
**analogy**  15:20
**analysis**  43:4
**answer**  9:10 28:24
30:18 58:2
**antecedent**  57:1,10
**anticipated**  20:7
**anybody's**  7:14
**apfelbaum**  2:3,3
3:13 4:2,18,18 5:10
5:16,23 6:11 12:3
14:2 20:4,10,17
23:15,17 24:5,7
27:11 28:14 36:7
40:12,12 42:2 45:4
**apfelbaum's**  11:25
18:24 21:12,12
23:12 54:3

**apparently** 53:5
**appeals** 13:12
**appear** 53:6
**appearance** 34:4
**applicable** 59:11
**application** 32:22
32:25 34:7 50:5
58:3,11
**applications** 34:5
34:18 46:1
**applied** 48:6
**applies** 10:25
**apply** 10:24 11:14
49:7 50:1
**appointing** 9:2
**appreciate** 47:8
61:14
**appropriate** 33:14
33:17,18 47:5
**argue** 34:24
**argued** 34:24 44:13
**arguing** 28:3
**argument** 6:24
14:16 23:23 26:16
29:18,20,21 35:17
41:21 44:7 47:8
54:15 56:11,25 57:1
57:2,11 58:6
**arises** 11:25 12:6
24:18 25:5
**arising** 15:9 59:6
**arm** 11:19 59:15,17
**arose** 12:2
**art** 46:7
**asia** 9:18
**aside** 5:5 8:20
**asked** 19:8
**asking** 7:24 22:3
28:8,23
**assert** 31:23,23 32:4
32:5
**asserted** 16:17
**assertion** 41:24
**assets** 47:23 48:3
49:4,5
**associates** 24:20
32:22

**assume** 14:8 49:18
**assumed** 40:8
**attempts** 5:8
**attention** 8:18
14:20 17:3 18:14
**attest** 54:19
**attorney** 3:13 30:11
45:12
**attorneys** 3:3
**attributable** 35:17
**august** 1:19 61:14
63:18
**authorities** 20:6
**authority** 60:18
61:8
**automatically** 17:18
**availability** 41:21
**avails** 11:11
**avenue** 3:14 44:21
**avenues** 49:17
**avoid** 47:10 48:7
60:8,13,13,13
**avoidance** 56:19
**aware** 18:12 53:18
**awful** 49:16

**b**

**b** 1:23 7:25,25
13:21
**back** 9:9 10:13,23
16:2,6 30:17 34:3
35:21 38:1,8,17,22
39:10 51:22
**bad** 51:9
**baker** 3:2
**bank** 13:5,11,14
14:17 15:7,22 53:4
53:5
**bankruptcy** 1:1,15
1:25 10:23 27:16,19
27:20,21,24 28:21
29:2,5 30:1,5 33:11
46:16 49:8,19
**barred** 31:14
**based** 10:16 12:19
14:3,25 16:16 28:2
30:4 32:3 39:23
40:9,9,23 41:21

43:1,19 50:9 52:16
54:21 56:3
**basic** 55:23
**basically** 18:20
40:10 42:2 47:23,25
**basis** 16:21 55:25
**bayer** 25:6
**began** 38:23
**behalf** 52:14
**believe** 15:22 20:24
24:14 27:3 51:12
53:22 54:16 56:24
57:12 60:5
**bells** 30:2
**belongs** 56:20
**benefit** 13:17,18
53:9
**benefits** 12:25
**bernard** 1:7
**bernie** 23:13 52:3
**bernstein** 1:24
**beyond** 35:15 37:18
**big** 19:23 20:13
23:22 27:18 30:14
48:5
**bigger** 9:21 47:19
**bik** 3:8
**bill** 20:12,18 22:21
**bills** 5:24 22:16
24:11 52:16 55:3,3
55:4,7
**bit** 51:4
**blm** 5:14
**blmis** 5:5,15 6:5,12
8:8,12,24 12:20
24:16 25:4 36:24
40:4 42:5,9,25
43:12 57:5,7
**blocking** 44:25 45:1
54:21
**bonding** 14:24 15:2
17:10
**bonds** 14:24 42:6
**bookkeeping** 39:24
42:17
**books** 40:4

**bowling** 1:16
**bozell** 11:22
**brains** 61:23
**brief** 23:11
**briefed** 44:25
**briefing** 18:8 19:23
23:10
**briefs** 12:9 13:13
18:9
**bring** 60:8
**bringing** 21:21
**brings** 38:1
**broker** 52:17
**brokerage** 52:19
53:7,19,20
**business** 24:25
48:18 53:15
**buy** 22:18

**c**

**c** 3:1 4:1 63:1,1
**calculated** 37:3
40:22
**calculations** 36:11
36:12 43:1
**calendar** 61:20
**california** 13:5
**call** 8:18 14:20 17:3
**called** 6:22
**calling** 8:20
**calls** 21:10,10 25:2
46:24
**carati** 16:11,18
**care** 46:6
**careful** 29:11
**carefully** 60:4
**case** 1:10 6:25,25
10:9,16 11:22 12:8
12:12,18,18,19 13:2
13:8,8,11,12 14:22
14:22,24 16:10,11
16:11,17 17:1,2,4,4
17:6,10 18:16 19:5
20:10 24:18,19,19
24:20,21,21 25:5,7
25:14,19,25 28:5
29:18,24,24,25 30:4
30:25 33:8,19 35:6

35:7,8,9,12 36:23
40:2 44:13,23 45:1
45:11,13,14 46:1,21
47:20,21,24 50:11
50:17 51:7,10 52:23
52:25 53:2,3,3,4,12
53:14,18 54:23 55:3
56:13,15 57:13
58:17 59:5,8 61:13
**cases** 4:16 7:10 9:16
9:24,24 10:11 11:19
12:11,17 14:7,16,20
17:5,6,23 18:1 25:3
27:13,15 29:15 34:8
44:6,8 45:3 47:25
57:22 58:10 59:7
**cash** 36:12,13 37:8
37:8,18,20,21
**causation** 13:20
**cause** 25:9,10,13
**cc** 2:2
**cedarbaum** 14:23
15:4
**center** 14:22
**certain** 52:9
**certainly** 33:17 34:9
47:4 50:20
**certified** 63:8
**certify** 63:3
**cet** 63:8
**chance** 26:5 31:17
39:25 42:16 60:15
**chances** 38:9
**changes** 15:12
38:10 39:12
**characterization**
54:5,12,13
**characterizes** 54:3
**charging** 46:2
**chase** 13:2
**checks** 17:19
**chemma** 3:8
**choice** 9:1 10:7,8
12:20,23 13:9 34:16
34:25 52:7 56:21,23
**choices** 41:10

**choose** 5:17
**circuit** 12:22 35:18
37:4,6,13
**circuits** 37:13,13
**citation** 60:14,18
**citations** 22:10,10
61:7
**cite** 11:19,22 14:13
20:14
**cited** 12:8,12 13:3,8
13:12,12 14:21
19:17,21 20:24 21:4
24:19,21 25:7 27:13
27:15 29:24 53:3
**cites** 17:5 18:23
**citizens** 4:24 48:15
**claim** 7:1,3 10:22
10:23,23 24:17
27:16,19,20,23 28:2
28:5,10 29:13 30:1
59:21
**claims** 11:20 16:12
16:15 27:1,2 30:5
31:10,13
**clarkdale** 61:23
62:1,4,13
**classic** 9:17
**clause** 9:1,1 10:8,8
12:20,23 13:9 17:7
**clear** 4:20 5:7 27:19
30:24 31:5 32:8
54:17,24 55:3,22
**clearly** 8:17 30:9
33:4
**client** 16:17 23:21
27:1 28:2 35:4 39:1
39:15 44:3 45:2
48:12,21 52:8
**client's** 19:20 25:17
28:2 39:2
**clients** 4:17 5:1,8
11:5,7 12:9 14:9
15:21 16:2 17:16
18:11 21:21 29:9
32:4 36:24 39:17
40:19 41:10 46:22
47:22 52:14 58:24

60:8
**closely** 23:23 28:15
**cole** 3:9 50:25 51:2
51:2,4,17,19,24
55:8,11,14 56:2,8
57:12,17,22 60:5
61:10,12,15
**comad** 13:7
**come** 7:19 8:7 10:13
16:2 36:8,14 45:19
46:4,12 47:9 48:14
52:3,6
**comes** 11:10 59:23
**comfort** 50:21
**comfortable** 45:20
**coming** 9:9 13:22
22:21 30:17 48:17
**commission** 52:15
**communicated** 54:6
**company** 14:24
15:2 17:10 24:23,25
25:1
**compare** 19:17
**complaint** 8:1 10:15
12:5 35:20 36:16,19
**complete** 32:11
**complied** 54:10
**comply** 23:14
**component** 36:4
37:16 43:11
**computation** 42:22
**computed** 38:21
**concession** 33:7,9
33:13 56:17
**concluded** 62:18
**conclusion** 56:7,8,9
**conclusions** 56:10
**conclusory** 18:14
18:19 60:14
**concrete** 35:5
**condition** 32:3
50:16
**conditions** 32:3
52:11
**confer** 15:8
**conference** 62:14

**conglomeration**
38:25
**congratulations**
61:25
**connecticut** 12:19
**connection** 17:8
25:9 33:1 38:11
**connections** 5:2
12:14 17:11
**conscience** 49:25
**conscious** 29:22
42:18 44:3
**consciously** 30:15
**consequence** 11:12
**consequences** 29:5
54:11,14 59:11
**consider** 28:8 29:3
30:7
**consideration** 49:21
**considered** 28:6,15
**considers** 60:12
**consulted** 30:10
**contact** 20:22
**contacts** 7:22 11:5,7
13:4 51:15,19
**contain** 8:25 9:1,22
**contemplates** 52:18
**contentions** 15:6
**contested** 54:18
**context** 8:20 20:15
22:13,19 24:1
**continue** 15:13 16:9
32:14 35:3 44:4
**contract** 6:21,25,25
8:19 9:8 12:20,23
24:24
**contracts** 23:15
48:22
**contrary** 15:6 30:11
48:18 49:20
**convenience** 4:14
56:11 58:7
**conveniens** 26:11
26:20 30:20 31:6,8
32:2,14 34:11,16
41:21 45:16

convenient 58:20
conversing 45:20
conveyance 44:10
cooperman 3:17 4:6
4:9,11,22 5:5 6:2,6
6:17 7:4,10,15,18
7:21 8:2,4,9,14,16
9:13 10:2,6,10,20
11:2,16,18 12:4
13:24 14:12 15:12
15:16,18 16:8,25
17:21 18:22 19:1,7
19:9,11,15 20:23
21:8,14,18,25 22:4
22:7 23:1 25:15,23
26:1,3,9,17,19,22
27:3,7,10,18 28:6,9
28:12 29:19 30:21
31:1,4,12,15,25
32:8,17 33:9,20,24
34:13,15 35:10,13
35:19 36:3,15,20
37:5,10,15,20,25
38:3,12,15,18,24
39:4,14,21 40:5,20
40:22 41:8,13,18,25
42:12,14,23 43:5,9
44:1,11,14,18 45:11
45:24 46:13,19
47:13 48:4 49:2,9
49:14 50:20,24 51:5
52:25 54:1 56:25
57:19,20,25 58:5,15
58:18,22,25 59:2,13
59:16,18,25 60:15
60:19,25 61:3,19,22
62:2,5,8,11,17
corp 13:7
correct 8:14,16
18:22 41:17 58:22
58:25
correspondence
15:22 53:4
correspondent 53:5
corresponding
13:13

cost 47:8
costs 47:10
counsel 27:11 28:22
33:1,15,19,22 34:2
34:12,19,20,22 48:6
48:9 49:3 50:2,2,6
56:16 58:10,11,14
country 63:14
couple 8:19 12:16
17:15 33:25
course 25:23 32:4
38:6 47:4,22
court 1:1,15 4:2,5,8
4:10,21 5:3 6:1,4,15
6:24 7:9,13,16,19
7:24 8:3,5,11,15,25
9:8,23 10:4,7,18,21
11:9,17 12:2,21
13:12,18 14:5 15:2
15:11,14,17 16:1,23
17:4,5,9,14 18:14
18:23 19:3,8,10,13
20:21 21:6,9,16,19
22:2,6,23 25:13,22
25:24 26:2,5,15,18
26:21,25 27:5,9,17
27:21,24,25 28:3,8
28:10,11 29:5,16,23
30:19,23 31:2,7,13
31:24 32:7,16,23
33:7,17,22 34:10,14
34:18 35:7,11,15,23
36:10,17,21 37:8,12
37:18,23 38:2,7,14
38:17,19 39:3,7,18
40:3,18,21 41:7,11
41:14,20 42:11,13
42:21,24 43:6,23
44:5,13,16 45:8,22
46:8,18 47:7 48:2,8
48:12,14,14,25 49:7
49:7,11,12 50:1,14
50:23 51:1,3,15,18
51:23 53:22 55:5,5
55:9,13,19 56:7
57:11,16,18,24 58:4
58:13,16,19,23 59:1

59:9,14,17,24 60:7
60:20 61:2,5,11,13
61:17,21,25 62:3,7
62:9,12,14
court's 16:21
courts 46:24
cover 26:12,20
cplr 10:16,24 11:9
11:13 25:8 52:23
53:14 59:5,10,11
creditor 16:16
27:23
cremona 3:7
cross 6:23
crucial 14:16 51:12
curious 23:8
current 58:6
currently 51:7
customs 24:20

**d**
d 4:1 63:16
date 36:2 38:21
39:12 63:18
daughter 5:12 46:6
david 3:10
dawn 2:25 63:3,8
day 20:19 28:14
39:15 46:15
days 24:4
deal 18:2 20:13
44:17 48:9 60:24
dealer 52:17
dealing 53:7,7
dealt 15:21
debt 57:1
debtor 16:16
debts 57:10
deceased 5:9
december 31:11
decide 21:17 26:6
decided 14:23
decision 29:22 30:5
42:18 49:25 57:1,10
decisions 44:3
declaration 48:16
50:12

declined 24:22
deem 62:9
defendant 14:6 15:9
16:14 25:9 31:23
57:2
defendant's 33:22
defendants 1:13 2:2
4:12 9:17 21:13
27:5 33:3,5,12,14
34:21 48:9 50:7,16
51:16 56:18
defense 31:22 32:6
32:12 44:22 50:17
defenses 35:11
deference 34:17
35:1
definitely 56:5
defrauded 40:19
deliberately 18:13
demonstrated
19:24
denial 27:6
denied 27:3
deny 60:17,18
depasquale 20:5,12
22:21
depend 26:7 40:4
depends 35:13
37:20,21
deposed 45:9,12
deposit 13:22
deposited 17:10
deposition 18:24
21:12 45:23 46:9,10
depositions 24:4
46:24 47:11
deposits 8:5 16:4
derived 21:11
deserve 46:23
designated 13:9
designation 13:3
despite 45:5
detail 43:10
detailed 22:24
determine 28:4
determined 6:4

**determining** 35:24

**dictated** 23:18

**died** 5:12 52:2

**difference** 9:15 11:3
17:22 24:15 27:17
27:18 28:12,13
30:14 40:23 49:5
59:15

**differences** 9:14

**different** 5:11 7:24
8:23 11:1 14:19
15:20 17:2 22:18
25:20 27:16 36:8,12
36:14 38:4 39:16,24
40:8,16 41:9 43:15
57:9 59:5,13

**differently** 10:5
46:14 57:9 59:22

**directed** 23:6 51:21

**directing** 23:18
52:20 54:8

**disagree** 48:25 56:9

**disagrees** 43:7

**discovery** 14:1 18:9
18:21 19:25 21:11
23:9,11 31:5 44:19
56:3

**discretion** 58:8

**discretionary** 58:7

**discussing** 51:5
52:25

**discussions** 24:6

**dismiss** 2:4 4:13

**dismissal** 32:2

**dispute** 18:18,25
19:2,5,11 21:13,24
27:2 51:13 52:24
53:23 54:16 55:17
55:23 56:10 60:3

**disputed** 28:11 54:5

**disputes** 43:7 60:22

**distinction** 17:22
59:14,18

**distinguished** 17:4

**district** 1:2 14:23
29:25

**dividends** 24:9

**divinsky** 16:10
53:12 59:5

**divorce** 57:3,6

**docket** 27:21

**document** 9:22
37:25 38:24

**documents** 19:22
20:3 54:2

**doing** 22:19 23:13
23:20 34:3,6 43:20

**dollar** 14:1

**dollars** 13:14 34:6
43:13,14,15,16

**domiciliary** 15:9

**doris** 1:12 2:2 14:2

**dovinsky** 24:19
25:19

**dozens** 13:15

**dr** 21:12

**dragging** 21:20,21

**drye** 3:12 4:11

**due** 17:21 22:21
29:17

**e**

**e** 1:23,23 3:1,1 4:1,1
22:23 63:1

**easier** 49:15

**effect** 59:19

**either** 12:9,12 24:11
24:17 34:8 60:16

**elderly** 46:5

**electronic** 63:8

**eloquent** 29:19

**emilie** 2:3 4:18 5:13
5:13,18,23 6:11
14:2 23:15 36:7
40:11 42:1,18

**emilie's** 22:25 41:11
55:6

**eminent** 33:15,18
33:22 48:9 50:1,2

**enforce** 49:22

**engage** 32:25

**engaged** 23:21

**england** 49:20

**english** 29:10 45:19

**entered** 57:3

**entering** 12:22

**entire** 11:7

**entry** 42:17

**envision** 41:8

**equally** 58:20

**equation** 36:9

**equitable** 30:4,5

**equities** 24:9,11
48:10

**equivalent** 5:20

**erroneous** 38:3

**especially** 18:7,9

**esq** 3:7,8,9,10,17

**essence** 34:19

**essentially** 20:5
39:13

**establish** 20:25

**establishes** 52:22

**estate** 1:11 2:2 49:4

**et** 1:12

**europe** 9:18

**event** 59:21,21

**everybody** 40:19

**evidence** 5:22 16:20
19:17,18 22:9 23:24
24:1 36:12 41:23,25
51:10 55:1 60:4,14

**evidentiary** 21:17
21:22,23 41:5 53:24
60:21

**exact** 33:5 48:7,7

**exactly** 16:25 24:7
50:3

**examine** 19:16
23:23

**example** 19:19
22:14 23:1 36:24
39:6 42:4 47:18
53:25

**examples** 12:17

**exchange** 24:10

**executed** 52:5,7

**exercise** 16:21

**exhibit** 7:25,25

**experience** 30:8

**expert** 28:19 31:9
31:20,21 49:9,10,18

**expertise** 24:6

**explain** 29:6 33:20
40:6 60:17

**explained** 23:10

**express** 13:16

**extent** 34:24 60:3

**f**

**f** 1:23 63:1

**f9** 27:22

**fact** 7:6 11:18 19:4
20:22 22:11 24:3,6
29:1,13,25 32:11
40:2,9 45:6 47:14
48:17 49:3,16 53:11
54:13 60:16,23
61:14

**factor** 10:10 12:24

**factors** 35:3 48:11

**facts** 4:16 7:7 10:13
18:17,18,20,25
21:10,13 25:24 30:4
30:8 40:1 51:12
53:23 54:15 55:23
56:5,9 60:3,8,12,17
61:8 62:15

**factual** 19:5 22:10
22:10

**fair** 47:2,5 48:11,21
48:23 60:25

**fairly** 19:16

**faith** 51:9

**family** 5:21

**father** 5:10

**favor** 34:1 35:4

**fax** 20:3,9,10 22:23
23:3,5,9

**faxes** 20:2 21:5
55:24

**federal** 10:25 11:6,9
11:15,21 13:4 24:15

**fee** 34:5,7 45:25
58:3

**feeder** 12:19

**female** 4:19
**fictitious** 35:8,11
  39:16 51:9
**figure** 23:13 56:6
**figured** 4:21
**filed** 18:21 27:12
**filing** 26:23 27:14
  27:23 36:2 38:21
  39:12
**filings** 26:13
**finances** 24:6
**financial** 22:17
  54:20
**find** 23:25 24:22
**fine** 60:22 62:7
**finest** 34:12
**firm** 4:11 32:22,24
**firmly** 52:22
**first** 4:23 14:21
  20:3 21:23 31:8
  34:1 35:5 37:17
  39:1,9
**five** 6:15,18 23:16
  30:22 31:9,10
**flipping** 37:25 39:5
**floor** 26:18
**florida** 14:22,24
  16:14 17:9,13
**focus** 6:7 14:15 18:4
  25:8
**focused** 25:19
**focusing** 7:4
**following** 27:22
**forcing** 48:13
**foregoing** 63:4
**foreign** 17:7 48:3
  56:17,19
**foreseeable** 59:10
**form** 4:14 27:14,20
  27:22,22 29:2,3,13
  30:1
**forms** 26:23 27:12
  29:7
**formula** 37:6
**forth** 18:13
**fortune** 30:10

**forum** 26:11,20
  30:20 31:6,8 32:2
  32:14,19 34:10,15
  34:16,25 41:20
  45:16 49:12,13
  56:11,21,23 58:7
**found** 12:12 15:2
**four** 19:22 21:5
  39:9 42:6,7
**fraction** 46:2
**france** 4:25 6:20,20
  7:23 9:6 28:20
  31:14,22 32:1,5,19
  33:3,5,8,14 34:1,21
  36:22 40:1 41:23
  42:1,16 45:7,9,10
  47:21 48:1,17,19,21
  49:17,20 50:8 51:23
  51:24 54:14 56:14
  57:23
**frank** 22:20
**frankie** 20:4
**frankly** 28:18 48:9
  48:23
**fraud** 25:5,11 31:10
**fraudulent** 6:25
  9:11 16:15 25:14,18
  44:9 49:8 51:6,8
  56:12
**free** 5:17
**french** 4:17,24 5:19
  5:20,22,24 6:10,22
  8:19,21,22 9:7,12
  9:22 14:3,10 15:21
  20:5,12,17 22:16
  23:15 24:1 28:18,22
  30:8 31:20,21 32:22
  32:24 33:2,15 34:12
  34:20,22 40:9,11
  42:5,6 43:19,19,23
  44:2,23,25 45:1,18
  45:18 48:6,9,12,14
  48:15,16,18,22 49:7
  49:9,18,20 50:5,6,7
  50:22 54:21 55:2,5
  55:7 56:15,16 58:9
  58:9,11,14

**fro** 42:19
**front** 6:21 39:5
**fund** 12:18,19
**funded** 57:7
**funds** 16:20 52:12
  53:13
**further** 57:14 60:21
  62:14
**future** 19:24

**g**

**g** 4:1 5:9
**gallery** 46:7
**garling** 2:25 63:3
**gather** 49:4
**gathered** 49:6
**general** 11:15 59:17
  59:20
**generale** 14:21 15:1
  16:9 53:3
**generale's** 15:6
**generally** 11:13
**generated** 17:18
**germany** 49:21
**getting** 13:14 41:22
  61:24
**give** 6:13 15:20
  21:14 26:5 35:4
  45:19 46:4 47:13,14
  47:14 52:12 57:18
  60:15
**given** 28:17,21
  34:17,25 35:13,15
  36:4,5 39:8 48:8
**gives** 27:15
**glib** 40:18
**go** 4:5 7:6,7,9 10:2
  16:5 26:11,20 34:11
  35:6 38:17,22 44:21
  47:21 51:3,18,22
  56:17
**goes** 26:10 35:21
  38:8 39:10 44:2
**going** 7:22 10:23
  13:21 26:5,9 28:16
  29:4 34:20,21,24
  38:10 40:25 41:23
  42:19 44:7,24 47:19

**fro** ... 47:20 48:8,14,18
  50:1,5,6 56:13
  57:21 60:10,11,17
  61:5,13
**good** 26:4,23 32:17
  50:25 51:1
**gotta** 29:11
**gotten** 36:15 43:9
  44:19
**governed** 9:12
**granddaughter**
  5:13
**grant** 50:16
**great** 34:19,20,22
  48:15
**greater** 18:2
**green** 1:16
**group** 13:17,19
**guarantee** 45:25
**guaranteed** 15:3
**guarantees** 6:13
**guardianship** 5:20
  5:23 6:11 42:5
**guess** 6:23 14:8
  17:14 18:21 21:11
  27:2 28:24 39:18
  44:14 55:21 58:19
**guru** 22:17
**générale** 17:2,4,6
  24:21

**h**

**h** 1:6
**half** 5:24 55:14
**hand** 17:23
**handwritten** 20:2
**happened** 6:8,13
  8:17 27:1,10 36:18
  40:1 42:11,13,14,17
  44:16,17,17
**happening** 53:16
**happy** 61:22
**hardship** 45:17,17
  47:20
**haunt** 46:22
**health** 14:22
**hear** 28:11 36:21
  39:7

**hearing** 2:2 21:17
21:22 53:24 60:21
**heat** 18:16
**heavily** 34:1
**held** 9:3 20:18
**helpful** 61:16
**hezzbollah** 13:17,18
**high** 20:18
**hinti** 57:2
**hire** 29:3 32:23
34:12 48:8
**hired** 58:10,14
**hiring** 32:23 56:16
**hold** 7:11 11:20
23:14
**hon** 1:24
**honeymoon** 62:6
**honor** 4:9,15,16,19
4:22 5:6,11,16,18
5:22 6:3,6,10,14,17
6:20,21 7:5,8,15,18
7:21 8:4,14 9:5,13
10:3,12 11:2,16,23
12:5,8,12,17 13:2
13:24 14:12,15 15:4
15:13,18 16:8,10,25
17:21 18:3,7,22
19:2,7,15,19,20,22
20:1,9,16,23 21:4,8
21:14,25 22:4,11,14
23:2,8,23,24 24:4
25:3 26:1,9,14,17
26:24 27:10,18
28:13,18,23 29:1,7
29:20 30:7,15 31:6
31:15,18 32:1,10,15
32:18,20 33:4,10,16
33:24 34:13,23 35:2
35:5,10 36:5,16
37:6,11 38:1,5
39:21 40:1,5,20
41:1,13 42:4,19
43:10,12 44:1,12,22
45:3,4,12,14,15,16
45:25 46:13 47:3,14
47:15,18,19,25 48:4
48:10 49:10,14 50:3

50:9,21,24,25 51:6
56:12 57:21,21
58:25 59:4 60:1,1
61:1,22 62:6,11,13
62:17
**honor's** 14:20 17:3
30:17
**hope** 45:17
**hospital** 14:25
**hostetler** 3:2
**huge** 19:1 46:2
**hundred** 43:13,15
43:16
**hundreds** 16:4
**hung** 17:14
**husband** 46:5
**hypothetically** 42:4
42:8 43:12

**i**

**identified** 11:4
**igion** 1:12
**ignorant** 29:17
**igoin** 2:3 3:13 5:9
5:11 14:2 35:21
52:2
**imagine** 41:3
**implicated** 25:25
33:3 43:19 50:7
**important** 5:6 6:19
10:10,14 18:4 43:18
50:4 52:5
**imposition** 46:3
**improper** 56:22
**impropriety** 56:22
**inadequate** 16:21
**include** 51:19
**income** 14:18 53:2
**incorrect** 54:2
**indicated** 12:22
**indiscernible** 12:24
32:12 43:20 54:6
55:15 57:10
**information** 39:9
**informed** 20:17
**ing** 42:19,19
**inheritance** 5:19

**inherited** 5:14,14
36:7 39:17 40:16
42:18
**initial** 32:16
**inside** 11:12
**insufficient** 15:8
**insurances** 52:11
**intend** 54:22 56:17
56:20
**intent** 16:21,23
**inter** 56:24 57:8
**interaccount** 39:19
39:22,23
**interest** 15:3 17:12
17:17 48:11,15
**interesting** 24:3
**interests** 49:4
**international** 24:20
**interpreter** 45:23
**invest** 5:17,17,23
44:4 52:12,14 53:8
**invested** 51:25 55:6
**investing** 21:3 30:9
53:19
**investment** 1:8 5:25
35:24 37:23 43:2
52:19 53:10,10,11
**investments** 52:9,20
55:10
**investor** 29:8 43:13
56:5
**investors** 18:11
55:22
**invoke** 12:25
**involved** 24:25
28:22
**involvement** 60:6
**irrelevant** 39:13
**irving** 1:6
**issue** 6:9 7:2 9:16
19:4 21:17 26:7
28:6 39:1,19 60:24
**issues** 24:17 48:18
60:22
**issuing** 14:24
**it'll** 62:3

**j**

**j** 2:25 3:7 63:3
**jersey** 29:25
**jonathan** 3:17 4:11
**judge** 1:25 5:20,21
5:23 6:11 14:23
15:4 16:11,18 24:20
24:22 25:6,19 34:4
40:11 42:5,20 43:21
58:8
**judgment** 48:13
49:22 60:9
**jurisdiction** 4:14
5:7 6:9,19 7:5,8,11
7:12 9:16,20 10:9
10:16,25 11:6,10,14
11:15,20 12:11,24
15:8 16:22 19:6
20:25 24:14,15,23
26:7,24 27:15,24
28:4 29:4,14,21,23
30:3,16 41:3 44:20
52:22 53:6,22 54:24
56:18,19 59:15,17
59:20 61:9
**jurisdictional** 7:2
14:1 18:8,21 23:9
25:24 26:16 31:5
60:12

**k**

**keep** 9:8 50:18 57:7
**kelley** 3:12 4:11
**kind** 56:15
**kingsford** 16:11
**knew** 36:24
**know** 6:24 14:5
22:17,22 23:20,24
24:10,10 26:10
28:19,20 29:8,20
30:23 32:18 36:21
40:6 41:4 42:14
43:12,14 46:13
49:14,17,24 51:21
55:17 57:11 58:2,11
60:24

**knowing**  50:21
**knowingly**  51:25
**knowledge**  16:20,23
  16:23
**known**  24:7
**knows**  18:7
**koeltl**  24:22
**koeltl's**  24:20

**l**

**l**  1:7
**lack**  4:13
**lacks**  28:4
**language**  8:19
  29:10
**largely**  5:15 7:22
  18:1 21:11
**late**  5:9 25:6
**laurence**  2:3 4:18
  4:19 5:10,12,16
  20:4,10 23:12,17
  24:4 27:11 45:4
**law**  4:11 5:21 9:1,7
  9:12 10:7,8,12,14
  10:22,25 11:10,14
  11:15 12:20,23 13:1
  13:9 14:13 15:11
  20:17,24 21:7 23:15
  24:18 28:19,21
  29:17 31:20,21 32:1
  32:22,24 33:2 35:16
  35:25 36:18 38:10
  39:12 40:9 43:19,24
  48:16,18 49:8,9,18
  49:19,20 50:7,22
  51:7 52:7,17,22,25
  53:5,18
**laws**  14:10 16:16
**lawsuit**  55:12
**lawyer**  6:23 29:3,5
  45:9
**leads**  18:3
**leave**  6:5,12
**lebanese**  13:11
**leechy**  15:11,19,22
  15:23
**left**  43:3,8

**legal**  54:15
**liabilities**  54:18
**liability**  35:8 36:25
  41:5 51:10
**life**  37:9
**lifland**  34:4
**limitations**  31:9,22
  32:6 50:13,17,19
**limited**  17:11
**liquidation**  1:7
**listed**  52:13
**lists**  8:3 21:9
**litigate**  54:22 56:20
  58:1,20
**litigated**  39:20
**litigating**  28:1 34:8
  57:22 58:17
**litigation**  33:2
  58:10
**little**  46:14 51:4
**live**  4:24
**livelihood**  46:3 47:2
**lives**  46:23
**llc**  1:8
**llp**  3:12
**located**  33:3,5 50:7
  52:9
**logical**  40:13
**long**  11:19 19:13
  59:12,15,17
**look**  7:25 13:20
  15:14 18:9 22:7,9
  22:12 23:4 33:16
  46:14,14 48:10 60:4
  61:19
**looked**  16:5
**looking**  13:4 30:1
  59:20
**looks**  60:1
**lose**  6:15,18 23:16
  47:17
**loser**  28:17 36:8
**losses**  38:21
**lost**  30:10 45:24
**lot**  4:15,23,23 8:3,5
  10:10 13:21 18:16
  18:24 19:14 20:7

29:1 36:18 44:8
  46:16,17 49:16 52:6
  53:1 60:5
**lump**  5:8

**m**

**m**  1:24 3:10
**madoff**  1:7 4:2,15
  6:12,20 9:16,17
  12:7,18 14:4 15:21
  23:13,19 25:11,16
  39:24 40:10,19 44:4
  48:17 52:3,9,10,12
  55:8,11,14 57:6
**madoff's**  9:4 11:25
  57:4
**magnify**  30:22
  45:11,14
**mail**  22:23
**maintain**  15:24
  52:4
**maintained**  13:6
**maintaining**  7:11
  9:25 12:14 14:14
  53:1
**maintenance**  15:7
  21:1
**making**  41:20 54:9
**malachi**  13:11
**market**  25:7 52:13
**married**  61:24
**massive**  12:6 25:11
**material**  60:12,22
  61:8
**math**  41:19
**matter**  1:4 26:12
  48:19 54:15 62:9
**matured**  20:12
**maturity**  20:18,19
**maximize**  54:11
**maximum**  12:17
**mcmillian**  3:10
**mean**  28:7 40:18
  58:9
**meaning**  22:5
**means**  8:12 46:3
**meant**  19:23

**measure**  36:5,6
  37:21
**meetings**  24:23
**memo**  18:20 23:18
  31:17
**memorandum**  21:6
  22:9 56:1,2,3
**mentioned**  9:4
  22:14 41:11 47:7
**merely**  7:10,11
  20:11
**merits**  25:25 26:8
  35:6,7 41:2 43:10
  44:19 46:12 48:13
  54:23
**method**  35:24 37:23
  43:2
**million**  14:25 43:13
  43:14,15,16 51:14
  51:20
**millions**  13:14
**mind**  26:19
**mineola**  63:16
**minimize**  54:11
**minimizes**  45:17
**minimizing**  22:24
  46:19
**minimum**  16:3
**minutes**  41:4
**misheard**  38:18
**misstated**  19:9
**mistake**  20:6
**money**  5:14,15,18
  5:24 6:5,12,13 7:20
  8:8,10,13,21 13:21
  13:21,25 14:8 15:2
  16:7 17:10 20:7
  34:7 35:17,22 36:7
  39:16 40:13 42:2,6
  42:8 43:3,7,21,22
  43:24,25 44:9 45:24
  46:16,17 52:20
  53:20 54:19 55:11
  57:5,7
**monies**  16:13 17:25
**monthly**  17:12,17
  24:8

**months**  18:8 31:4
**morning**  50:25 51:1
**motion**  2:3 4:13
  50:16 60:9
**move**  25:21 30:19
  31:6
**moving**  29:1

**n**

**n**  3:1 4:1 5:9 63:1
**name**  4:11,19 27:20
**named**  57:2
**names**  4:18
**necessarily**  45:2
**necessary**  32:24,25
  50:14 54:10
**need**  53:24 60:8,21
  62:14
**needs**  20:25
**negotiated**  6:21 9:6
**negotiations**  40:10
**net**  14:7 28:16,17
  35:24 36:8,8 37:1,2
  37:23 38:21,21
  42:22 43:1,2
**never**  11:10 15:21
  24:7,12 27:5
**new**  1:2,17,17 3:5
  3:15 5:3,21 7:12,22
  8:12,25 9:2,3,4,11
  9:20,25 10:8 11:8
  12:10,13,14,20,23
  13:1,3,8,9,12,14,15
  13:16,16 14:14,18
  14:25 15:7,20,24
  16:15 17:8,10,11,24
  18:3 19:21 24:16,25
  25:2,9,18 29:25
  30:12 33:19,23
  34:19,25 47:21,24
  49:2,12,13,19 51:11
  51:25 52:1,4,10,19
  53:4,16,20 59:21,22
**nicholas**  3:7
**non**  4:14 10:8 11:9
  15:8 26:11,20 30:20
  31:6,8 32:2,14
  34:11,16 41:20 45:6

45:16 56:11 58:7
**notaire**  6:22
**notary**  6:23
**note**  17:8
**noteworthy**  31:19
**noticed**  24:8
**number**  17:19
  27:21 36:14 41:16
  51:14
**numbered**  61:7
**ny**  3:5,15 63:16

**o**

**o**  1:23 4:1 5:9 63:1
**objected**  27:5
**objecting**  54:4
**obtained**  16:13
**obvious**  28:24
**obviously**  29:7
  58:13,13,15,16
**occurred**  41:15
**october**  20:9 34:4
**oh**  23:1 32:17 36:20
**okay**  4:22 11:17
  19:3,10 23:7 26:19
  26:21 27:9 30:21
  31:4,25 32:7 35:19
  39:2,3,21 44:14
  50:23 55:13,13
  57:17 59:24 61:11
  62:8,9
**old**  5:13,19 6:2
  63:14
**older**  46:6
**once**  46:9
**online**  25:7
**open**  36:25 50:18
**operations**  61:23
**opportunity**  32:9
  50:12
**opposed**  25:16
**options**  28:18,19
**oral**  23:23
**order**  24:14 29:21
  34:9 45:4
**ordered**  55:20
**ordinarily**  34:15

**ordinary**  18:11
**origin**  38:22
**originally**  43:13
**outcome**  14:19
**outline**  37:7
**outside**  11:12

**p**

**p**  3:1,1 4:1
**page**  8:23 9:21 38:5
**pages**  21:9 23:11
**paid**  52:15
**papers**  7:14 19:14
  22:12 30:24 34:25
**paragraph**  12:4
**paragraphs**  61:7
**paris**  4:25 6:20
**park**  3:14
**part**  13:20 14:16
  16:14,15 18:4 23:3
  26:2,15 32:5
**participants**  21:2
**participate**  21:21
  33:15
**participation**  19:21
**particular**  9:5
**parties**  12:25 24:24
**parts**  17:3 29:1
**party**  45:6
**passed**  40:7
**passive**  14:18 16:19
  17:12,15 53:1,13
**pause**  4:4
**pay**  7:23 14:3,7,8,9
  18:14
**payments**  17:12,17
  17:19
**penny**  39:15
**people**  4:23,23
  46:18 49:16
**percent**  6:15,18
  15:3 20:19,20 23:16
  55:6
**perfect**  23:1 32:17
  62:8
**perfectly**  40:13
**period**  19:22 42:8
  53:21

**perpetrated**  12:7
  25:12
**person**  9:18 17:24
  45:18 46:5,15,20
  47:2
**person's**  47:1
**personal**  4:14 9:16
  10:9 12:10,11,24
  15:8 19:6 26:7
  44:20 52:22 53:22
  54:24 61:9
**persuaded**  57:7
**petrucci**  29:24
**ph**  11:22 13:7 15:11
  16:11,11 20:5 24:19
  25:7,19 57:2 61:23
**phone**  25:2
**picard**  1:6 13:2,7
**pieces**  48:16
**place**  21:23 23:14
  37:17
**plaintiff**  1:9 34:18
**plaintiff's**  25:10
  34:16
**plan**  22:24
**plaza**  3:4
**please**  4:8,10 10:6
  10:20 23:23 32:20
  60:4
**podium**  4:7
**point**  6:5 9:14,21
  11:23 19:13 20:1
  22:15 24:13 25:3
  27:8 30:15 32:1
  34:17,23 35:1 36:5
  36:16 38:3 39:16
  40:17,25 43:10 44:2
  46:20 48:23 49:24
  59:7
**points**  45:1
**ponzi**  12:6 16:24
  36:24 38:23
**position**  38:13
**possible**  60:8
**post**  23:9,10
**potentially**  45:4

practical   11:3 59:19
  59:19 60:23
pre   15:11
prefer   33:24
prepared   52:15
present   22:17
presentation   18:5
  41:5
presently   36:1
presumably   41:15
presumed   14:4
  30:10
prevent   45:2
principal   35:16
  37:1
private   35:3
problem   50:19
problems   21:19
procedure   60:10
proceeded   16:7
proceeding   2:4 4:13
  12:6
proceedings   8:24
  62:18 63:5
process   29:18
prodding   25:19
profit   14:7 51:9
  53:10
profits   35:8,12 37:1
  37:2 38:21 42:22
  43:2 53:11
promissory   17:8
prong   53:14 59:5
proof   27:16,19,20
  27:23 30:1,5
properly   23:3
protect   30:13
protecting   48:15
protections   13:1
prove   21:22 24:14
  39:25
provides   20:24
provision   59:10,12
psychologist   4:17
  24:1 29:9 30:8 46:4
public   35:3 48:10

pulled   44:8
purported   18:12
purpose   6:19 13:16
  15:1 52:3 58:12
purposefully   53:19
purposes   35:23
put   20:14 22:12
  23:13,14 29:19
  31:19 32:9 34:4
  35:21 36:7 37:21
  41:1 42:6,9 43:13
  43:15 46:1 48:15
  50:12,17
putting   23:25 52:20

**q**

qua   10:8
quality   15:15
quantity   15:15
question   6:7 7:13
  7:25 8:6 9:9,10
  10:4,18 13:24 16:2
  18:15,17 22:2 25:22
  26:4 27:25 28:23,25
  30:17 31:8 32:16,18
  36:17 46:8 48:20
  57:21
questions   57:14
quick   42:17
quinn   50:13
quint   31:20 32:10
  48:15
quite   9:14 37:14
quote   12:21 15:5
  16:18 17:11 18:11
  23:6 24:7 25:6,8
  32:24
quotes   24:5

**r**

r   1:23 3:1 4:1 63:1
raised   31:16 47:8
rate   15:3 20:18
read   12:4 29:10
  30:23 35:20
really   18:17 40:3
  41:2 46:12 49:5
  50:14 59:23

reason   6:10 11:3
  23:10 32:23 33:6
  36:17 42:24,25 43:3
  44:24 45:15 47:19
  47:22 48:7,7
reasons   33:25 35:5
  45:16 48:22 50:9,10
rebuttal   31:3
receipt   14:18 16:19
  25:17,17 43:2 53:2
  53:13
receive   51:24
received   16:14
  30:11 51:14,20,23
receives   9:10,11
receiving   17:16,19
  52:21 53:11
recognizes   51:6
recollection   59:9
record   4:19 5:7
  19:11,13 23:2 32:11
  56:16 57:15 60:4
  63:4
records   40:4 54:20
recover   35:25 38:11
  38:12,19
recovery   16:13
reference   55:2
regarding   18:18
  19:6 24:24 39:9
  55:23 60:22 61:8
  62:15
registered   52:17
rejected   57:1,9
relative   40:7
relatively   36:22
relevant   6:9 17:1
  25:8 40:2 57:24
  58:4,12
relied   23:9
relies   18:2
remained   55:14
reminding   20:11
report   61:22
represent   4:12 33:1
representations
  57:4

represented   27:11
representing   28:13
request   7:20 8:7,9
  8:12,21 16:7 17:18
requested   52:11
  55:24
require   44:23
required   5:23 6:11
  55:6
requires   11:20
  57:12 59:6
requiring   40:11
reside   4:25
resolve   21:23 60:20
  60:24
resolved   35:24 37:3
  37:5
respect   17:21
respectfully   50:10
  50:11
respond   31:17 51:4
  57:19
response   18:23
  61:18
rest   46:23
resulted   43:2
return   12:18
returns   52:14 54:20
right   4:2 5:4 6:4,5
  6:17 7:4 8:15 9:23
  10:17 25:15 31:12
  36:3 37:6,15 38:2
  38:24 39:5,18 41:7
  51:7 54:24 55:16
  56:8,21 60:7 61:2
  61:17
rise   27:15
road   63:14
rockefeller   3:4
roughly   42:15
rules   27:22 54:10
run   23:19

**s**

s   3:1 4:1
safe   5:25 6:13
sales   22:16

**sanctioning** 47:25
**satisfied** 40:11
**save** 31:2
**saw** 22:20,23 45:8
**saying** 9:13 10:7
22:18 29:16,17 30:2
30:11 33:7 34:23
37:24 41:16,18 42:9
58:19 59:22
**says** 12:5 22:11
29:2,2,3 31:9 50:5
54:2,25
**schedule** 13:21
**schedules** 61:10,16
**scheme** 12:6 16:15
16:24 36:25 38:23
**science** 14:22
**second** 6:8 10:3
12:22 13:20 20:9
21:15 29:10 34:2
37:3,6 61:12,20
**securities** 1:8 13:7
52:9,13
**see** 7:14,16 13:21
15:12 26:9 36:16
46:8 55:19
**seeking** 53:8,9
**seen** 4:15 9:24,24
24:12 29:7 36:11
54:20
**selected** 49:11,13
**selection** 17:7
**sell** 20:12 22:18,22
**send** 8:7 16:7
**sent** 28:2 30:12
**sentences** 30:22
**separate** 26:8 39:9
39:19,22 57:13,13
**separately** 61:6
**september** 61:24
62:6
**serious** 29:8
**seriousness** 33:25
**settled** 16:19
**settlement** 57:3,6
**seven** 15:3

**share** 52:16
**shelf** 34:3
**short** 61:7
**shot** 57:18
**show** 12:17 19:20
21:5,5 24:17 38:4,9
40:4 42:1,16
**showing** 41:9 56:5
**shows** 5:22 23:5
24:1 32:11 36:12
41:14
**sides** 10:21
**signed** 9:17 48:21
**significant** 12:24
17:19
**similar** 55:16 57:2
**simple** 8:22 28:23
28:25 30:18
**simply** 9:25 12:14
20:4 21:1 23:18
25:4 60:2
**sine** 10:8
**single** 39:15
**sipa** 26:12,13,20,23
27:12,14 28:5 29:13
30:13
**sitting** 22:18
**situation** 11:23
13:13 14:11,17
16:12 24:22 25:20
28:25 29:12 30:3,6
33:11,12 34:16 35:1
40:8,15 41:9,9
42:16 43:19 45:20
47:5,18 50:3 58:8
**situations** 27:14
34:21 59:20
**sleeve** 47:16
**slight** 59:16,18
**smart** 22:5
**smb** 1:10
**smoke** 18:16
**societe** 14:21 15:1,6
16:9 53:3
**société** 17:2,3,6
24:21

**sold** 20:19 22:22
**soliciting** 48:17
**somebody** 7:19 8:7
9:10,11 11:10 15:19
24:2 40:16
**sophisticated** 55:18
55:21 56:4
**sorry** 4:3 38:15,16
38:18 42:12 58:9
61:12
**sort** 16:7 31:19 41:9
**sought** 16:16
**south** 2:25 14:23
63:3,8
**southern** 1:2
**speak** 4:6 42:19
**speaks** 19:12 45:19
**special** 6:21 9:21
32:25
**specific** 10:25 11:9
11:14,15,20 24:15
52:11
**specify** 52:7,8
**speed** 34:9
**spend** 41:4
**spent** 31:4
**stand** 15:23
**stands** 10:22 36:1
51:7
**start** 12:11 14:21
**started** 39:1,2
**state** 11:10,11,12,13
17:24 53:16 59:11
**stated** 12:21 23:2
32:23 33:6
**statement** 21:10
22:20 23:20 27:22
32:9 55:20,21 56:4
60:11 61:6,7
**statements** 17:13,17
18:7,10,15,19 19:16
19:23,24 22:8,13
23:25 24:9 60:14
**states** 1:1 5:2 10:15
11:6,7 25:7 47:9
49:23 51:16 52:13
53:9 58:2,7

**statute** 11:19 31:9
31:22 32:6 44:25
45:2 50:13,17,19
54:22
**stipulate** 32:4
**stock** 24:10 52:13
**stocks** 24:12
**stolen** 16:20
**stood** 15:19,22
**stop** 19:4
**straightforward**
36:23
**strategies** 21:2
55:16
**strategy** 23:6,14,18
23:21 24:2,8 55:18
56:6
**strict** 35:8 41:5
51:10
**strongly** 35:4
**stuart** 1:24
**student** 4:17 29:10
**stuff** 36:18 55:25
**subject** 5:19 9:6,7
9:19 29:14 30:2,15
36:25 53:6,21 55:12
55:15
**submission** 23:4,5
**submissions** 61:4
**submit** 27:16 28:10
29:4,22 60:11 61:6
61:18
**submits** 27:23
**submitted** 27:1
32:21,21 62:10
**subsequent** 19:25
**subsequently** 25:1
**substance** 46:25
**successful** 46:21
47:25
**successfully** 44:15
**succession** 1:11 2:2
**sued** 30:12 46:17
49:16
**sufficient** 7:12 25:5
**suggestion** 56:22

**suggests** 53:19

**suing** 51:8

**suite** 63:15

**suites** 15:9

**summary** 18:20
  60:9

**supplemental** 18:20
  21:6,10 22:8,12
  31:17 32:9 56:1,2,3

**support** 11:6 12:10
  19:18 22:10

**supports** 60:5

**supposed** 18:18

**supposedly** 23:14

**sure** 32:1 34:11
  36:20 43:6 47:15
  51:17 54:7,9 60:19
  61:21 62:2

**suspect** 49:2

**suspense** 50:18

**sweeping** 18:7,10
  19:16 23:20

**swiss** 45:12

**switzerland** 45:10

**t**

**t** 63:1,1

**taiwan** 24:24

**taiwanese** 24:23
  25:1

**take** 32:19,20 42:5

**takeaway** 23:22

**taken** 40:13 42:2
  55:8,11 57:5

**talk** 15:13 26:10
  35:5 51:15 60:23

**talked** 17:6 23:2
  28:14 29:25 31:21
  53:1,12,13 54:1

**talking** 16:9 22:15
  32:18 39:2 44:20
  45:18 46:15,25 47:1
  53:15

**tampa** 14:25

**tax** 14:10 20:5,6
  23:12,18 54:11,14
  54:18,20

**taxed** 20:18,20

**taxes** 7:23 8:21 14:3
  14:7,8 22:25

**tell** 7:1 19:3 34:5,6
  38:5 43:23 58:2

**telling** 9:9 16:6 19:5
  20:11 50:15

**tells** 47:16

**ten** 43:14

**tension** 21:20

**terms** 36:18 37:2

**terrorist** 13:17,19

**test** 13:20

**testified** 20:11
  22:20 23:17 24:7
  40:12 54:6

**testify** 45:5,22

**testifying** 45:3

**testimony** 20:14,16
  23:12 27:12 44:24
  47:12

**texas** 28:3 30:13

**thank** 4:9,22 22:4
  31:7 50:24 62:1,11
  62:12,13,16,17

**theory** 7:6 46:13

**therefrom** 52:14

**thing** 8:18 40:6 59:4
  59:25

**things** 8:19 36:21
  51:5 53:25

**think** 6:8,16 7:25
  10:13 11:2 13:15
  15:14,19 17:1,22,23
  19:16 20:19 23:22
  23:25 24:3 25:20
  26:6 28:24 29:20
  30:14,18,19 33:9,13
  33:21 34:1 39:22
  40:5,15 41:1,25
  42:9 43:10 44:1,19
  44:22 47:2,3,6,19
  48:11,12 49:15,24
  50:4 52:23 53:23,25
  54:4,5,12 55:2,17
  56:3,9,11 58:5,12
  59:16,18 60:3 62:5

**thinking** 26:3

**thinks** 54:12,13

**thought** 12:2 38:15
  44:7 45:8 46:16
  47:17 54:10 55:
  57:21

**thoughtful** 60:2

**thoughts** 28:21

**three** 20:1 55:24

**time** 5:12,14,16
  8:11 13:22,23 23:24
  27:12 30:9 31:13
  35:16 42:2 43:20
  44:3 48:2 50:4
  56:18 59:12

**times** 17:15 22:18

**title** 27:21

**today** 4:10 45:21
  61:18

**told** 14:12 24:11
  36:11

**top** 54:8

**tort** 59:9,15,22

**tortious** 53:14

**total** 19:21 21:4

**tracy** 3:9 51:2

**trading** 23:6 24:2
  55:16,18

**traditional** 47:3

**transacting** 53:15

**transactions** 13:15
  38:8

**transcribed** 2:25

**transcriber** 63:8

**transcript** 63:4

**transfer** 6:25 9:11
  39:19,22,23 41:15
  49:8 51:7,8 56:13
  57:8

**transferred** 13:14
  38:20 50:11

**transfers** 12:2
  17:20 25:14,18 36:1
  38:9 39:11 51:21,25
  52:21 56:24

**transform** 56:14

**treasury** 5:24 20:12
  20:17 22:16,21
  24:11 42:6 55:2,4,7

**treated** 57:9

**trial** 26:6,8 46:10

**trials** 47:11,15

**true** 31:24 44:5,11
  46:18 48:2 58:23
  63:4

**trustee** 1:6 3:3 5:1,8
  10:23 11:4,19,22
  12:9,13 16:17 17:5
  18:1,6,10,19 19:17
  19:20,21 20:13,14
  20:25 22:11,15,16
  23:5,8 26:22 27:4
  31:16 32:21 33:1,6
  33:8,13 34:11,17,24
  35:19,20,25 36:10
  36:23 38:10,14,17
  38:22 39:7,8,8
  40:25 41:4 43:1,6
  45:1 46:1,21 47:24
  48:5,6,8,23,25 49:3
  49:4,11,13,25 51:2
  54:2 58:1,9,10,14
  58:16,20 60:11

**trustee's** 7:1,5
  10:15 21:6 22:8
  23:3,4 27:13 29:14
  32:20 33:15 39:14
  46:21 58:6

**trustees** 13:3,8
  14:13

**truth** 14:6,10

**try** 26:8 33:8,19
  60:7

**trying** 9:15 21:3
  23:12 38:12 42:15
  49:25 56:6,25

**tugs** 47:16

**turn** 6:1 26:11
  61:19

**turned** 6:3

**twice** 54:7

**two** 10:24 24:4 35:5
  36:1 38:9,20 39:11

43:16 45:15 47:25
51:8,14,20 61:15,17
**type** 17:5

**u**

**u.s.** 1:15,25 34:5
45:19 49:7 52:17
55:4
**ugc** 57:22
**ugcc** 32:22 34:2
48:6
**uk** 45:13
**unavailable** 46:11
**uncontested** 52:3
**undercalculated**
20:6
**undercut** 41:24
**undercuts** 58:5
**underlying** 56:10
**understand** 7:5
17:16 21:20 35:18
36:10 40:21 44:18
44:18 58:18 59:1
**understanding**
11:13 36:13
**understands** 56:12
**understatement**
33:11
**understood** 7:18
8:2 30:14 46:19
**undisputed** 54:25
61:8
**undoubtedly** 4:15
**unfortunate** 14:6
14:10
**unfortunately**
46:18
**unique** 4:16 40:15
41:9
**united** 1:1 5:2 11:6
11:7 47:9 49:23
51:16 52:13 53:9
58:1,7
**unrebutted** 9:5
13:25 54:25
**unusual** 33:10
43:18

**use** 13:16 34:22
46:11 47:11 50:5,6
50:6
**ust** 52:16
**usually** 15:7

**v**

**v** 1:10
**vacation** 61:10,15
**value** 14:4 35:13,15
35:17,20 36:3,4,5,6
36:6 37:16,19 40:23
42:10 43:11,17 47:1
**various** 24:13
**veritext** 63:13
**versus** 13:2,7,11
14:21 16:11 18:1
36:6,8
**video** 47:11
**videoconference**
46:10 47:10
**videotape** 46:10,23
**videotaped** 46:9
**view** 22:7 39:14
**violating** 59:2
**vulnerable** 30:9

**w**

**waivable** 32:12
**waived** 50:16
**walk** 12:16
**want** 5:6,7 7:6 8:18
10:2,2 26:10,12
31:25 37:7 38:4
54:17 55:3 59:4
61:6 62:2
**wanted** 5:17,18
6:12 17:2 26:25
50:21 51:4 54:24
**wants** 22:1 58:1
62:5
**warning** 30:2,12
**warren** 3:12 4:12
**way** 24:17 29:19
38:22 40:22 41:18
43:11,17 46:14 47:3
49:15 60:20,23

**ways** 24:13 47:10
50:2
**we've** 20:24 24:18
46:1
**wealth** 7:23 8:21
14:3
**week** 22:21
**weeks** 61:15,17
**weigh** 34:1 35:4
**went** 43:24
**whatsoever** 47:23
52:7
**whistles** 30:2
**wife** 57:4
**william** 2:25 63:3
**willing** 52:12
**winner** 28:17 36:8
**wire** 17:19
**wishes** 52:8
**withdraw** 8:8,10,13
14:8 20:7
**withdrawal** 8:11
13:23
**withdrawals** 7:16
8:3,6,7 16:4 42:25
54:8 55:24
**withdrawn** 57:5
**withheld** 54:21
**witness** 45:6 46:11
47:16
**witnesses** 35:6
36:22 41:21 44:23
51:10
**wondering** 18:24
**word** 17:14 32:19
32:20
**work** 4:24
**worker** 46:7
**world** 29:9 33:12
**wrongfully** 16:13
16:13
**wrote** 20:4 23:5
55:24

**x**

**x** 1:3,14

**y**

**yeah** 7:21 30:23
37:10 39:7 59:2
60:16 62:4,8
**year** 6:18 19:22
31:9 42:4,8 51:8,14
54:7
**years** 5:13,19 6:2
10:24 16:4 17:20
18:16 31:10 36:2
38:9,20 39:11 42:6
46:5 51:20 53:21
61:13
**york** 1:2,17,17 3:5
3:15 5:3,21 7:12,22
8:12,25 9:2,3,4,12
9:20,25 10:8 11:8
12:10,13,14,20,23
13:1,4,9,9,12,14,15
13:16,16 14:14,18
15:1,7,20,24 16:15
17:8,11,11,24 18:3
19:21 24:16,25 25:2
25:9,18 30:12 33:19
33:23 34:19,25
47:21,24 49:2,12,13
49:19 51:11,25 52:1
52:4,10,19 53:4,16
53:20 59:21,22