**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Regina Griffin
Thomas L. Long
Catherine E. Woltering
Jonathan D. Blattmachr

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>DEFENDANTS IN ADVERSARY PROCEEDINGS LISTED ON EXHIBIT 1 ATTACHED HERETO,<br><br>                    Defendants. | Adv. Pro. Nos. listed on Exhibit 1 Attached Hereto |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF OMNIBUS MOTION FOR LEAVE TO REPLEAD PURSUANT TO FED. R. CIV. P. 15(a) AND COURT ORDER AUTHORIZING LIMITED DISCOVERY PURSUANT TO FED. R. CIV. P. 26(d)(1)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................... 5

    A.    The Trustee's Appointment and Commencement of Avoidance Actions .............. 5

    B.    The Motions to Withdraw the Reference ................................................. 6

    C.    The District Court's Decisions Altered the Law Governing the Good Faith Defense ...................................................................................................... 8

        1.    The State of the Law Concerning the Good Faith Defense Prior to the District Court's Good Faith Decision ................................................... 8

        2.    The District Court's *Katz* Decisions Concerning the "Good Faith" Defense ............................................................................................ 10

        3.    The District Court's Recent Good Faith Decision Altering the Trustee's Pleading Burden ............................................................... 12

    D.    Relevant Decisions Concerning Extraterritoriality ..................................... 13

        1.    The Bankruptcy Court's Decision on Extraterritoriality .......................... 13

        2.    The District Court's Extraterritoriality Decision .................................... 15

ARGUMENT ...................................................................................................... 16

    I.    THE TRUSTEE SHOULD BE GRANTED LEAVE TO REPLEAD GIVEN THE INTERVENING CHANGE IN LAW ................................................................... 16

    II.    "GOOD CAUSE" EXISTS WARRANTING LIMITED  DISCOVERY RELEVANT TO THE GOOD FAITH DEFENSE  FROM CERTAIN DEFENDANTS PRIOR TO RULE 26(f) CONFERENCES .......................................... 20

    A.    The Trustee's Need for Limited Discovery on the Good Faith Standard ............ 22

    B.    The Trustee Seeks Only Narrowly Targeted Document Discovery .................... 24

    C.    There is No Prejudice to Defendants if Limited Discovery is Granted at This Time ............................................................................................ 25

    D.    Considerations of the Administration of Justice ....................................... 26

CONCLUSION .................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)..................................................................................18

*adMarketplace, Inc. v. Tee Support, Inc.*,
  No. 13 Civ. 5635 (LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013)........................20, 27

*Ayyash v. Bank Al-Madina*,
  233 F.R.D. 325 (S.D.N.Y. 2005) .......................................................................20, 21, 27

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp. LLC)*,
  362 B.R. 624 (Bankr. S.D.N.Y. 2007)................................................................9, 10

*Breeden v. L.I. Bridge Fund, LLC (In re Bennett Funding Grp., Inc.)*,
  232 B.R. 565 (Bankr. N.D.N.Y.1999) .....................................................................9

*Cassirer v. Sterling Nat'l Bank & Trust Co. of N.Y. (In re Schick)*,
  223 B.R. 661 (Bankr. S.D.N.Y. 1998) ....................................................................9

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*,
  439 B.R. 284 (S.D.N.Y. 2010)............................................................................9, 10

*Darney v. Dragon Products Co., LLC*,
  266 F.R.D. 23 (D.Me. 2010) ...............................................................................17

*Digital Sin, Inc. v. Does 1-27*,
  No. 12 Civ. 3873 (JMF), 2012 WL 2036035 (S.D.N.Y. June 6, 2012)........................20, 27

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
  234 F.R.D. 4 (D.D.C. 2006)..................................................................................21

*Dorrah v. United States*,
  282 F.R.D. 442 (N.D. Iowa 2012) ...........................................................................21

*Foman v. Davis*,
  371 U.S. 178 (1962)...............................................................................................16

*Gowan v. Wachovia Bank, N.A. (In re Dreier LLP)*,
  453 B.R. 499 (Bankr. S.D.N.Y. 2011) ......................................................................9

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
  310 B.R. 500 (Bankr. S.D.N.Y. 2002) ......................................................................9

*Hamilton v. City of New York*,
  No. 06 Civ. 15405(DC), 2011 WL 1842990 (S.D.N.Y. May 20, 2011)...............................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Harrell v. Beall*,
  84 U.S. 590 (1873).................................................................................................10

*Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*,
  916 F.2d 528 (9th Cir. 1990) ................................................................................10

*Hollins v. U.S. Tennis Ass'n*,
  469 F. Supp. 2d 67 (E.D.N.Y. 2006) .....................................................................27

*Hood v. P. Ballantine and Sons*,
  38 F.R.D. 502 (S.D.N.Y. 1965) .............................................................................17

*Malibu Media, LLC v. Does 1–5*,
  No. 12 Civ. 2950 (JPO), 2012 WL 2001968 (S.D.N.Y. June 1, 2012) ..................20

*Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*,
  740 F.3d 81 (2d Cir. 2014)................................................................................9, 10

*In re Maxwell Commc'n Corp.*,
  186 B.R. 807 (S.D.N.Y. 1995).........................................................................15, 19

*McBeth v. Gabrielli Truck Sales, Ltd.*,
  731 F. Supp. 2d 316 (E.D.N.Y. 2010) ...................................................................17

*McColley v. Rosenberg (In re Candor Diamond Corp.)*,
  76 B.R. 342 (Bankr. S.D.N.Y. 1987).......................................................................9

*Meritain Health Inc. v. Express Scripts, Inc.*
  No. 4:12-CV-266 (CEJ), 2012 WL 1320147 (E.D. Mo. Apr. 17, 2012) ................24

*Monsanto Co. v. Woods*,
  250 F.R.D. 411 (E.D. Mo. 2008) ...........................................................................21

*Morrison v. National Australia Bank*,
  561 U.S. 247 (2010)................................................................8, 13, 14, 15, 18

*In re North Plaza LLC*,
  395 B.R. 113 (S.D. Cal. 2008)................................................................................26

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982) ........................................................................20, 21

*OMG Fidelity, Inc. v. Sirius Techs. Inc.*,
  239 F.R.D. 300 (N.D.N.Y. 2006) .......................................................21, 24, 26, 27

*Pacello v. Jimenez*,
  Civ. No. 13-0405-GPC (WVG), 2013 WL 1439697 (S.D. Cal. Apr. 9, 2013) .......21

## TABLE OF AUTHORITIES
(continued)

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
No. 11-397, 2014 WL 3973877 (2d Cir. Aug. 15, 2014) .................................................18, 19

*Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Sec.)*,
445 B.R. 206 (Bankr. S.D.N.Y. 2011) .....................................................................................22

*Picard v. Katz*,
No. 11 Civ. 3605 (JSR) (S.D.N.Y. Mar. 13, 2012), ECF No. 177 .........................................12

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011).....................................................................................7, 10, 11

*Picard v. Katz*,
No. 11 Civ. 3605 (JSR), 2011 WL 7267859 (S.D.N.Y. July 5, 2011) ......................................6

*Picard v. Merkin*,
Adv. Proc. No. 09-01182 (SMB), 2014 WL 3908211 (Bankr. S.D.N.Y. Aug.
12, 2014) ...............................................................................................................................2, 9

*Picard v. Merkin*,
440 B.R. 243 (Bankr. S.D.N.Y. 2010)........................................................................10, 16, 22

*Randall's Island Family Golf Centers, Inc. v. Acushnet Co. and Fortune Brands,
Inc. (In re Randall's Island Family Golf Centers, Inc.)*,
290 B.R. 55 (Bankr. S.D.N.Y. 2003).......................................................................................24

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
Madoff)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) (BRL) ...................................................................13, 14

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
513 B.R. 222 (S.D.N.Y. 2014).......................................................................................... *passim*

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No. 12 Misc. 115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014)......................... *passim*

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
234 B.R. 293 (Bankr. S.D.N.Y. 1999).......................................................................................9

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002)................................................................................21, 24, 26

*Shauer v. Alterton*,
151 U.S. 607 (1894).................................................................................................................10

*Sheridan v. Oak St. Mortg., LLC*,
244 F.R.D. 520 (E.D. Wis. 2007) ............................................................................................27

# TABLE OF AUTHORITIES
### (continued)

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
  337 B.R. 791 (Bankr. S.D.N.Y. 2005) ...................................................................9, 10

*Smart v. Arnone*,
  315 F. Supp. 2d 292 (W.D.N.Y. 2004) .......................................................................17

*Stern v. Cosby*,
  246 F.R.D. 453 (S.D.N.Y. 2007) ...............................................................................20

*Stern v. Marshall*,
  131 S. Ct. 2594 (2011) .................................................................................................7

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) ......................................................................................23

*Wheeler v. HXI, LLC*,
  No. 10-cv-145 (JD), 2010 WL 3023518 (D.N.H. July 28, 2010) ..............................24

*Wilson Oilfield Servs., Inc. v. Vishal Enter.*,
  No. 7:11-cv-00111-O, 2011 WL 6029948 (N.D. Tex. Dec. 5, 2011) .........................23

*Zahra v. Town of Southold*,
  48 F.3d 674 (2d Cir. 1995) .........................................................................................16

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971) ....................................................................................................16


**Statutes**

11 U.S.C. § 502(d) ..........................................................................................................8

11 U.S.C. § 546(a) ..........................................................................................................8

11 U.S.C. § 546(e) ......................................................................................................6, 7

11 U.S.C. § 548 ............................................................................................................13

11 U.S.C. § 548(a)(1)(A) ............................................................................................8, 9

11 U.S.C. § 548(c) ................................................................................................. *passim*

11 U.S.C. § 550 ..................................................................................................9, 13, 14

11 U.S.C. § 550(a) ................................................................................................2, 9, 15

11 U.S.C. § 550(a)(2) ...............................................................................................2, 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

11 U.S.C. § 550(b) ...................................................................................................1, 8, 12

15 U.S.C. § 78aaa *et seq.* .........................................................................................1

15 U.S.C. § 78fff-2(c)(3) ...........................................................................................8

15 U.S.C. § 78fff(b) ...................................................................................................8

28 U.S.C. § 1292.......................................................................................................13

Securities Litigation Uniform Standards Act of 1998 ..................................................7

## Rules

Fed. R. Bankr. P. 2004............................................................................................ *passim*

Fed. R. Bankr. P. 7015.........................................................................................1, 3, 16

Fed. R. Bankr. P. 7026................................................................................................1

Fed. R. Civ. P. 12...............................................................................................3, 17, 20

Fed. R. Civ. P. 15..........................................................................................1, 3, 16, 17

Fed. R. Civ. P. 26.................................................................................................. *passim*

## Other Authorities

Adv. Comm. Notes, *Amendments to Federal Rules of Civil Procedure*,
    146 F.R.D. 401 (1993) ........................................................................................27

Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on
    the Merits: Reflections on the Deformation of Federal Procedure*, 88 N.Y.U.
    L. Rev. 286 (2013) ..............................................................................................23

Suzette M. Malveaux, *Front Loading and Heavy Lifting: How Pre-Dismissal
    Discovery Can Address the Detrimental Effect of Iqbal on Civil Rights Cases*,
    14 Lewis & Clark L. Rev. 65 (2010) ....................................................................23

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion for an order: (i) granting the Trustee leave to replead the complaints in the adversary proceedings identified on Exhibit B to the accompanying Declaration of Regina Griffin dated August 28, 2014[1] pursuant to Federal Rule of Civil Procedure 15(a), made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7015 (the "Exhibit B Defendants"); and (ii) directing the defendants in the adversary proceedings identified on Exhibit C to the Griffin Declaration to comply with the Proposed Limited Document Discovery Demand attached as Exhibit D to the Griffin Declaration pursuant to Federal Rule of Civil Procedure 26(d), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7026 (the "Exhibit C Defendants," and together with the Exhibit B Defendants, the "Defendants").[2]

## PRELIMINARY STATEMENT

On April 27, 2014 and July 6, 2014, the District Court issued decisions that substantially altered the legal landscape with respect to the good faith defense under Bankruptcy Code (the "Code") sections 548(c) and 550(b) in a SIPA liquidation (the "Good Faith Decision")[3] and the

---

[1] All references to the "Griffin Declaration" refer to the Declaration of Regina Griffin in Support of the Trustee's Omnibus Motion for Leave to Replead Pursuant to Fed. R. Civ. P. 15(a) and Court Order Authorizing Limited Discovery Pursuant to Fed. R. Civ. P. 26(d)(1) (cited hereinafter as the "Griffin Dec.").

[2] A list of the adversary proceedings in which the Trustee is filing this Motion is attached hereto as Exhibit 1.

[3] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).

extraterritorial application of Code section 550(a)(2) (the "Extraterritoriality Decision"),[4] respectively.

In the Good Faith Decision, the District Court promulgated for the first time in the history of the SIPA statute a new pleading burden for SIPA trustees with respect to the good faith defense.  Unlike in ordinary bankruptcies where it has long been held a trustee has no duty to plead any facts regarding a good faith affirmative defense, this Trustee is now being required under the Good Faith Decision to plead particularized allegations that defendants either knew of Madoff Securities' fraud or willfully blinded themselves to circumstances suggesting fraud in order for his claims to survive a motion to dismiss.  Good Faith Decision at *5.  This Court noted this change in its recent decision in *Picard v. Merkin,* Adv. Proc. No. 09-01182 (SMB), 2014 WL 3908211, at *12 (Bankr. S.D.N.Y. Aug. 12, 2014) ("In the case of BLMIS, however, the District Court has modified the good faith defense in two ways.  First the Trustee must plead and prove the transferee's lack of good faith.  Second, the 'good faith' standard is subjective rather than objective . . . .").

The District Court's Extraterritoriality Decision likewise changed the law with respect to the relevant facts the Trustee is required to plead with regard to establishing that the subsequent transfers he seeks to recover are "domestic" transfers.  The District Court found "that section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor."  Extraterritoriality Decision at 232. The District Court held that: "to the extent that the Trustee's complaints allege that both the transferor and transferee reside outside of the United States, there is no plausible inference that the transfer occurred domestically.  Therefore, unless the Trustee can put forth specific facts

---

[4] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222 (S.D.N.Y. 2014).

suggesting a domestic transfer, his recovery actions seeking foreign transfers should be dismissed." *Id.* at 232 n.4.

Issued years after the Trustee filed his complaints seeking to avoid and recover fraudulent transfers, each of the District Court's decisions substantially altered the pleading burdens and standards required for the Trustee's complaints to be facially sufficient.  Given the intervening change in law governing his claims, the Trustee respectfully submits that "justice so requires" granting him leave to replead his complaints under Federal Rule of Civil Procedure 15(a)(2), made applicable to these adversary proceedings by Federal Rule of Bankruptcy Procedure 7015, to meet these new pleading burdens created by the District Court.[5]

The District Court itself recognized that a retroactive change to the good faith standards would create a conundrum for the Trustee who had already filed more than 1,000 complaints years earlier due to expiring statutes of limitations.  The Court expressly stated at oral argument that under such circumstances, it was "imperative" that the Trustee be given the opportunity to replead.[6]

Notably, the District Court concluded in its Good Faith Decision that it was "not unreasonable" to impose the new pleading requirements on the Trustee because he has "extensive discovery powers under Rule 2004 . . . through which he may gather information before he ever files a complaint."  Good Faith Decision at *6 n.5.  Undoubtedly, going forward, future SIPA trustees will seek greater discovery pursuant to Federal Rule of Bankruptcy

---

[5] Notably, in many of the adversary proceedings, the Trustee still has his amendment as of right pursuant to Fed. R. Civ. P. 15(a)(1)(B) because many of the Defendants have not yet filed a responsive pleading or a motion under Rule 12(b), (e), or (f).  The Trustee nevertheless seeks leave to replead on an omnibus basis in the cases listed on Exhibit B particularly for purposes of efficiency, but also expressly reserves his right to file an amendment as of right in specific proceedings where he is entitled to do so.

[6] Transcript of Oral Argument at 38:5-39:5, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* No. 12 Misc. 115 (JSR) (S.D.N.Y. Oct. 12, 2012), ECF No. 401, attached as Ex. E to the Griffin Declaration.

Procedure 2004 ("Rule 2004") about a defendant's good faith if the Good Faith Decision stands,

but it is not an avenue open to this Trustee, whose ability to take Rule 2004 discovery from the

defendants ceased years ago.

In this case, the Trustee took virtually all of his Rule 2004 discovery from approximately

2008 through 2010 and all of his complaints against initial transferees were filed by December

2010. At the time the complaints were filed, even though it was not his pleading burden, the

Trustee and his counsel firmly believed that the documents available to them were more than

sufficient to satisfy the then-applicable "inquiry notice" standard regarding the defendants' lack

of good faith.

Almost four years after the close of Rule 2004 discovery and the statutory deadline for

the Trustee to file claims against initial transferees and claims against numerous subsequent

transferees, the District Court altered the Trustee's pleading burdens. The Trustee will face

motions to dismiss based on the District Court's new pleading standard when he has not been

afforded the opportunity to take Rule 2004 or Federal Rule of Civil Procedure 26 ("Rule 26")

discovery in light of the newly imposed pleading standard—thereby putting the Trustee at a

disadvantage that runs afoul of fundamental fairness.

Accordingly, the Trustee also seeks an order for limited document discovery specifically

targeted to the issue of subjective good faith from the Defendants identified on Exhibit C to the

Griffin Declaration, who in most cases have produced no documents to the Trustee,[7] or in very

few instances made minimal productions or produced materials not relevant to the issue of their

good faith.[8] Without this information, the Trustee would be denied the standard bankruptcy

---

[7] A list of all adversary proceedings in which the Trustee has received no discovery is attached as Exhibit C-1 to the Griffin Declaration.

[8] A list of all adversary proceedings in which the Trustee has received limited productions from Defendants is attached as Exhibit C-2 to the Griffin Declaration.

procedures routinely afforded to all trustees—to take pre-complaint discovery and plead a case where appropriate.  Moreover, absent the relief sought, the Trustee could be precluded from obtaining recoveries on behalf of BLMIS customers with valid claims because of a peculiar sequence of events resulting from a post-pleading, unprecedented change in the law—not because his claims were not viable.  Notably, the Trustee does not seek this relief from parties who have already produced documents equaling or exceeding what he seeks here.

Inasmuch as the procedural facts at issue on this motion are common to all of the Defendants identified on Exhibit 1, the Trustee brings this motion on a multi-case basis to maximize efficiency.  In addition, rather than seeking relief in each individual adversary proceeding on a piecemeal basis, consolidation of the Trustee's motion will provide the parties with a consistent and orderly procedure for pleading amendments, motion practice and discovery and will eliminate the need for any unnecessary expenditure of resources by the parties or the Court.

## BACKGROUND

### A.    The Trustee's Appointment and Commencement of Avoidance Actions

Days after Madoff's arrest on December 11, 2008 (the "Filing Date"), the Trustee was appointed by Judge Louis Stanton of the Southern District of New York.  As a trustee appointed under SIPA, the Trustee's primary duty is the distribution of customer property to BLMIS customers, which must be first recovered through avoidance and recovery actions in accordance with SIPA and the Code.

The Trustee, his counsel, and his professionals have devoted almost six years to recovering customer funds, including:

- conducting an exhaustive investigation and analysis of the BLMIS's books and records;

- developing a claims procedure, determining customer status for over 16,000 filed claims, calculating net equity for each account, implementing an objection process, and developing a hardship program;

- marshalling BLMIS's estate assets;

- investigating accountholders, engaging in formal and informal discovery pursuant to Rule 2004, identifying assets and transfers, negotiating settlements, and commencing actions against accountholders;

- identifying, investigating, and commencing recovery actions against subsequent transfer defendants; and

- negotiating settlements, drafting the corresponding agreements and motions for approval, and responding to objections and appeals.

The primary focus and intent of this complex investigation was to provide the Trustee with information necessary to file approximately 1,100 complaints against initial transferees prior to the expiration of the statute of limitations for avoidance actions on December 11, 2010, and thereafter to commence almost 100 subsequent transfer actions prior to the expiration of the applicable statute of limitations for recovery actions. All of the decisions made with respect to the Trustee's investigation and the targets, scope and content of his complaints were specifically informed by the state of the law existing at the time and in light of the applicable statute of limitations.

**B.    The Motions to Withdraw the Reference**

On July 5, 2011, in *Picard v. Katz*, No. 11 Civ. 3605 (JSR), 2011 WL 7267859 (S.D.N.Y. July 5, 2011), District Judge Rakoff granted the defendants' motion to withdraw the reference from the Bankruptcy Court. The District Court withdrew the reference with respect to specific legal issues, including: (i) whether the "safe harbor" affirmative defense set forth in Code section 546(e) was a bar to the Trustee's avoidance claims; and (ii) whether the "inquiry notice" standard governed the affirmative good faith defense set forth in Code section 548(c).

In September 2011, the District Court held that the Trustee's claims against customers like the *Katz* defendants are subject to the "safe harbor" set forth in Code section 546(e). *Picard v. Katz*, 462 B.R. 447, 451 (S.D.N.Y. 2011) (hereinafter, "*Katz*").

Also in that decision, and as more fully discussed below, the District Court rejected the objective standard of "inquiry notice" applicable to the good faith defense in "ordinary bankruptcies," concluding that in the context of a SIPA trusteeship, the good faith defense is subject to a subjective standard of "willful blindness." *Id.* at 455–56.

After the decision in *Katz*, hundreds of motions to withdraw the reference were filed. In total, defendants in over 765 adversary proceedings filed motions to withdraw the reference. Judge Rakoff withdrew the reference from the Bankruptcy Court and ordered common briefing for similarly situated defendants with regard to the following legal issues, among others:

- *Stern* Issue:  whether the United States Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011) precluded the bankruptcy court from entering final judgment on the Trustee's claims and therefore mandated withdrawal of the reference to bankruptcy court. *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. April 13, 2012), ECF No. 4;

- Antecedent Debt Issue:  whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense of antecedent debt. *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 107;

- Standing Issues:  whether standing issues bar the Trustee's common law claims against certain defendants by virtue of the doctrine of *in pari delicto* and/or the Securities Litigation Uniform Standards Act of 1998 (SLUSA), as well as whether the Trustee is entitled to accept assignments or assert the "insider exception" to *in pari delicto*. *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 114;

- Bad Faith Section 546(e) Issue:  whether the "safe harbor" of section 546(e) of the Code precludes the Trustee's claims against certain defendants, who as alleged by the Trustee knew or should have known that Madoff was running a Ponzi scheme. *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 119;

- Section 502(d) Issue:  whether the Trustee is entitled to employ section 502(d) of the Code against defendants accused of receiving avoidable transfers.  *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155;

- Section 550(a) Issues:  whether the Trustee must first obtain a fully-litigated, final judgment of avoidance against an initial transferee before pursuing a section 550 recovery action against the relevant subsequent transferees, as well as whether dismissal was warranted as against subsequent transferees unless the Trustee asserted a claim to avoid the relevant initial transfers as to that subsequent transferee within the period prescribed by 11 U.S.C. § 546(a).  *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. Aug. 22, 2012), ECF No. 314;

- Extraterritoriality Issue:  whether the United States Supreme Court's ruling in *Morrison v. National Australia Bank*, 561 U.S. 247 (2010), as applied to SIPA or the Code, bars the Trustee's claims against certain defendants.  *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 97 and (S.D.N.Y. June 6, 2012), ECF No. 167; and

- Good Faith Standard:  whether SIPA or the securities laws alter the standards for determining good faith under either sections 548(c) or 550(b) of the Code.  *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. June 23, 2012), ECF No. 197.

By December 2012, all of the above issues were fully briefed and argued before Judge Rakoff.  As of the date of the issuance of the Extraterritoriality Decision on July 6, 2014, the District Court resolved the final outstanding common briefing issues before it.

## C.    The District Court's Decisions Altered the Law Governing the Good Faith Defense

### 1.    The State of the Law Concerning the Good Faith Defense Prior to the District Court's Good Faith Decision

The SIPA statute that governs the Trustee's claims expressly incorporates the avoidance and recovery provisions of the Code.  SIPA §§ 78fff(b); 78fff-2(c)(3) (stating that a trustee can avoid transfers to the extent the same are void or voidable under title 11).  Code section 548(a)(1)(A) allows a trustee to avoid transfers made by BLMIS with the "actual intent to hinder, delay, or defraud" its creditors.  11 U.S.C. § 548(a)(1)(A).  As this Court noted in the recent

*Merkin* decision, in Ponzi scheme cases, actual fraudulent intent is established as a matter of law by virtue of the "Ponzi scheme presumption." *Merkin*, 2014 WL 3908211 at *20; *see also, Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)* ("*Manhattan I*"), 310 B.R. 500, 506-07 (Bankr. S.D.N.Y. 2002).

When the Trustee commenced the vast majority of his avoidance and recovery actions in 2010, it was well-established that a lack of good faith was not an element of a trustee's claim under Code section 548(a)(1)(A) or section 550, including in SIPA cases. *See Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d 81, 88 n.8 (2d Cir. 2014) ("a SIPA trustee's authority to bring claims in administering a SIPA liquidation is coextensive with the powers of a Title 11 bankruptcy trustee" and thus "a SIPA trustee [is] vested with the same powers and title with respect to the debtor and the property of the debtor, including the same rights to avoid preferences, as a trustee in a case under Title 11") (internal citations omitted).[9]

Thus, this Court and others have refused to consider a defendant's good faith defense on a motion to dismiss. *See*, *e.g.*, *Gowan v. Wachovia Bank, N.A. (In re Dreier LLP)*, 453 B.R. 499, 510 n.6 (Bankr. S.D.N.Y. 2011); *Cassirer v. Sterling Nat'l Bank & Trust Co. of N.Y. (In re Schick)*, 223 B.R. 661, 664 (Bankr. S.D.N.Y. 1998) (denying motion to dismiss and refusing to consider issue of defendants' good faith defense under Code section 550 until raised in defendants' answer); *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.)*, 337

---

[9] *See, e.g., Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*, 439 B.R. 284, 308 (S.D.N.Y. 2010); *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp. LLC)*, 362 B.R. 624, 629 (Bankr. S.D.N.Y. 2007); *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 805 (Bankr. S.D.N.Y. 2005); *Breeden v. L.I. Bridge Fund, LLC (In re Bennett Funding Grp., Inc.)*, 232 B.R. 565, 573 (Bankr. N.D.N.Y.1999) ("[Section 548(c)] has been construed as an affirmative defense, all elements of which must be proven by the defendant-transferee."); *Manhattan I*, 310 B.R. at 508; *McColley v. Rosenberg (In re Candor Diamond Corp.)*, 76 B.R. 342, 351 (Bankr. S.D.N.Y. 1987); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999) (Brozman, C.J.) (court rejecting defendants' motions to dismiss on the basis that the SIPA trustee failed to meet his pleading burden, finding that whether defendants "took those monies in good faith and for value are issues to be raised by them as affirmative defenses to the Trustee's recovery and need not be negated by the Trustee in the Complaint"); *see also* 5 Collier on Bankruptcy ¶ 548.09[2][b] (16th ed. 2012).

B.R. 791, 806 (Bankr. S.D.N.Y. 2005); *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp. LLC)*, 362 B.R. 624, 638-39 (Bankr. S.D.N.Y. 2007).

Moreover, prior to the District Court's *Katz* decision, it was black letter law that the "good faith" defense was governed by an inquiry notice standard. *See, e.g., Marshall*, 740 F.3d at 91 n.11 (a transferee "is entitled to a 'good faith' defense upon a showing that it took the transfer 'for value' and 'in good faith'" and that the presence of good faith depends upon "whether the transferee had information that put it on inquiry notice that the transferor was insolvent or that the transfer might be made with a fraudulent purpose") (citing *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*, 439 B.R. 284, 310 (S.D.N.Y. 2010); *Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 535–36 (9th Cir. 1990) (courts are to look at what a transferee objectively "knew or should have known" in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint) (citing *Shauer v. Alterton*, 151 U.S. 607 (1894); *Harrell v. Beall*, 84 U.S. 590 (1873)).

Accordingly, at the time the Trustee filed his complaints, it was the defendant's burden under the Code to demonstrate that he had taken a transfer both for value and in good faith, a defense that the Trustee could overcome by showing either that the estate had not received value for the transfer or that the defendant received the transfer while on inquiry notice of the fraud. *See generally Marshall*, 740 F.3d at 91 n.11; *Picard v. Merkin*, 440 B.R. 243, 255 (Bankr. S.D.N.Y. 2010).

## 2.    The District Court's *Katz* Decisions Concerning the "Good Faith" Defense

In 2011, the District Court articulated in *Katz* a new heightened standard to be applied to defendants' good faith defense under Code section 548(c) in a SIPA liquidation, but did not change the Trustee's pleading burden. *Katz,* 462 B.R. at 455–56. The *Katz* decision rejected the

"inquiry notice" standard in favor of a "willful blindness" approach, explaining the difference as

follows:

> The difference between the inquiry notice approach and the willful blindness approach is essentially the difference between an objective standard and a subjective standard. Under the former approach, a transferee has inquiry notice when the "information [the transferee] learned would have caused a reasonable [person] in [the transferee's] position 'to investigate the matter further.'" In such circumstances, a failure to further investigate constitutes lack of good faith unless even diligent inquiry would not have unearthed the fraud.

*Id.* at 455.

The District Court's rationale for the heightened standard is that the good faith defense

provided in Code section 548(c) applies differently in "ordinary bankruptcies" as opposed to

SIPA liquidations:

> Although this approach is not without some precedent in ordinary bankruptcies, it has much less applicability, the Court concludes, in a context of a SIPA trusteeship, where bankruptcy law is informed by federal securities law.  Just as fraud, in the context of federal securities law, demands proof of scienter, so too "good faith" in this context implies a lack of fraudulent intent.  A securities investor has no inherent duty to inquire about his stockbroker, and SIPA creates no such duty.  If an investor, nonetheless, intentionally chooses to blind himself to the "red flags" that suggest a high probability of fraud, his "willful blindness" to the truth is tantamount to a lack of good faith.  But if, simply confronted with suspicious circumstances, he fails to launch an investigation of his broker's internal practices—and how could he do so anyway?—his lack of due diligence cannot be equated with a lack of good faith, at least so far as section 548(c) is concerned as applied in the context of a SIPA trusteeship.

*Id.* (citations omitted).

Although the District Court heightened the standard applicable to good faith in *Katz*, the

District Court also explicitly held that the burden of raising the defense and making a *prima facie*

showing of the good faith defense remained with the defendants.  *See id.* at 456 n.9 ("[T]he

burden of raising the defense of good faith is initially on the defendants, the question of whether, once the defendants have made a prima facie showing of good faith, the burden shifts back to the Trustee to show lack of good faith, is an issue that need not be decided on this motion.").  In a subsequent ruling in the *Katz* case, the District Court reaffirmed its holding that the burden of the good faith issue was on the defendants.   Order, *Picard v. Katz*, No. 11 Civ. 3605 (JSR) (S.D.N.Y. Mar. 13, 2012), ECF No. 177 (adhering to "its prior determination that [good faith] is an issue under § 548(c), and that therefore the burden of proving, by a preponderance of the evidence, that the defendants received the aforementioned transfers in good faith (i.e., in the absence of willful blindness) rests on the defendants").

### 3.    The District Court's Recent Good Faith Decision Altering the Trustee's Pleading Burden

On June 25, 2012, the District Court withdrew the reference from the Bankruptcy Court with respect to the good faith issue to determine "whether SIPA and other securities laws alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in 'good faith' under either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b)."  *See* Order at 3, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. June 25, 2012), ECF No. 197.

In its April 27, 2014 Good Faith Decision, the District Court again held that in fraudulent conveyance actions brought by a SIPA trustee, the heightened standard of "willful blindness" governs the good faith defense.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).  For the first time, however, and contrary to its prior decisions, the District Court imposed an initial burden of pleading the defendant's lack of good faith on the Trustee.  *Id.* at *5.  While the District Court acknowledged that good faith is typically an affirmative defense under Code

sections 548 and 550, it held that a SIPA trustee must plead the absence of good faith on the part

of the defendants as part of his *prima facie* case to avoid and recover transfers under the Code.

*Id*. Accordingly, the Court held absent particularized allegations that a defendant either knew of

Madoff's fraud or willfully blinded themselves to it, defendants in this SIPA proceeding may

succeed on motions to dismiss the Trustee's complaints. *Id.*

In response to the Good Faith Decision, on June 5, 2014, the Trustee filed a motion for

leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292. Notice of Motion for

Certification of Interlocutory Appeal under 28 U.S.C. § 1292(b), *Sec. Investor Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. June 5,

2014), ECF No. 544. By Decision and Order dated July 17, 2014, the District Court denied the

motion and noted that each case raises separate factual issues. *Id.* at ECF No. 555.

**D.      Relevant Decisions Concerning Extraterritoriality**

**1.      The Bankruptcy Court's Decision on Extraterritoriality**

In 2012, Judge Lifland addressed the extraterritorial application of section 550 of the

Code in this liquidation to transfers received by a foreign subsequent transferee from a feeder

fund incorporated in a foreign jurisdiction. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC (In re Bernard L. Madoff)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) (BRL)

(hereinafter, the "*BLI Decision*"). This Court found that, based on the "focus" test annunciated

in *Morrison*, the Trustee was not seeking to apply section 550 extraterritorially and the

presumption against extraterritoriality was not implicated. However, the Court determined that

even if the Trustee's claims in that case did involve an extraterritorial application of section 550,

Congress expressed clear intent for such an application with regard to a foreign subsequent

transferee. *Id.* at 523, 526.

13

In discussing the "focus" test enunciated in *Morrison*, the Court held in its *BLI Decision* that "even if other activities or parties are located outside the United States," if "the acts or objects upon which the statute focuses are located in the United States, application of the statute is domestic." *Id*. at 523–24. Because the Code's avoidance and recovery provisions "work in tandem to further the Code's policy of maximizing the value of the bankruptcy estate by permitting a trustee to avoid certain transfers that deplete the estate and recover the payments for the benefit of creditors," the "focus" of these provisions of the Code under *Morrison* is "the improper depletion of the bankruptcy estate's assets." *Id.* at 524.

Applying this legal analysis to the facts before it, the Court determined that subsequent transfers of BLMIS customer property to the Bureau of Labor Insurance ("BLI"), a Taiwanese entity, received from Fairfield Sentry, a feeder fund incorporated under the laws of the British Virgin Islands, were a domestic transfer that did not seek to apply Code section 550 extraterritorially. The Court reasoned that:

> [T]he Trustee's application of Section 550 is domestic because the depletion of the BLMIS estate occurred in the United States. The BLMIS Ponzi scheme was operated in the United States and the funds used to operate the scheme were received and disbursed to investors in the United States. Specifically, the transfers at issue originated from BLMIS's New York JPMorgan Account and went to Fairfield Sentry's New York HSBC Account. These acts, which occurred domestically, are the "objects of the statute's solicitude," and what the statute "seeks to regulate." As the focus of Section 550 occurred domestically, *the fact that BLI received BLMIS's fraudulently transferred property in a foreign country does not make the Trustee's application of this section extraterritorial.*

*Id.* at 524–25 (internal citations omitted) (emphasis added).[10]

---

[10] This Court further held that, even if the application of section 550 were extraterritorial under these circumstances, Congress had expressed clear intent for such an application. *Id*. at 526. Specifically, Congress authorizes the Trustee to avoid and recovery all transfers that would have been property of the estate but for the improper transfer, including property located abroad. *Id*. at 527–28.

### 2.    The District Court's Extraterritoriality Decision

On May 15, 2012, the District Court withdrew the issue of whether SIPA applies extraterritorially, noting that "because the issue of whether SIPA applies extraterritorially poses only a legal question, the Court finds that consolidated argument on and resolution of that issue in all of the adversarial proceedings that have identified it as a basis for withdrawal will promote judicial efficiency." *See* Order at 11, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 97.

On July 6, 2014, the District Court issued its Extraterritoriality Decision.  Contrary to this Court's decision in *BLI,* the District Court concluded without reference to the *BLI* decision "that section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor."  Extraterritoriality Decision at 232.

The District Court found that Congress' "focus" in Code section 550(a)(2) is not – as this Court found in *BLI*—on the depletion of the Debtor's estate, but rather on "the transfer of property to a subsequent transferee . . . ."  *Id.* at 227.  In determining whether this "focus" of the Trustee's claims—the subsequent transfers—are foreign or domestic, the District Court articulated a test from a pre-*Morrison* case, *In re Maxwell Commc'n Corp.* ("*Maxwell I*"), 186 B.R. 807 (S.D.N.Y. 1995) (Scheindlin, J.).  *Id.*  Specifically, the District Court held that "[t]o determine whether the transfers at issue in this consolidated proceeding occurred extraterritorially, 'the court considers the location of the transfers as well as the component events of those transactions.'"  *Id.* (quoting *Maxwell I*, 186 B.R. at 817).

The District Court found that, "to the extent that the Trustee's complaints allege that both the transferor and transferee reside outside of the United States, there is no plausible inference that the transfer occurred domestically."  *Id.* at 232 n.4.  Therefore, "unless the Trustee can put

15

forth specific facts *suggesting* a domestic transfer, his recovery actions seeking foreign transfers

should be dismissed." *Id.* (emphasis added).   The District Court order returned the adversary

proceedings to this Court for application of its rulings to each case. *Id.* at 232-33.

## ARGUMENT

## I.

### THE TRUSTEE SHOULD BE GRANTED LEAVE TO REPLEAD GIVEN THE INTERVENING CHANGE IN LAW

Federal Rule of Civil Procedure 15, made applicable to these adversary proceedings

pursuant to Federal Rule of Bankruptcy Procedure 7015, provides that leave to replead should be

"freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  "It is settled that the

grant of leave to replead the pleadings pursuant to Rule 15(a) is within the discretion of the trial

court." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971) (citing *Foman

v. Davis,* 371 U.S. 178, 182 (1962)); *see also Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d

Cir. 1995).

Only after Judge Rakoff's April 2014 Good Faith Decision was the Trustee required to

plead a defendant's actual knowledge or willful blindness as a part of his affirmative case, rather

than the simple allegations required at the time that the complaints were filed that BLMIS was a

Ponzi scheme and that the defendants received transfers from BLMIS.  *See generally Picard v.

Merkin*, 440 B.R. at 255.  Likewise, it was only after the July 6, 2014 Extraterritoriality Decision

that the Trustee was required to put forth facts in his complaints suggesting that the subsequent

transfers at issue in some of his recovery actions were "domestic transfers" according to the

standards alluded to and guidance provided in the District Court's decision.  Given that the

Trustee was required to file his complaints against initial transferees by December 2010 and

against many subsequent transferees years before these decisions were issued, the Trustee should be granted leave to replead.[11]

In the context of such intervening changes in the law, the courts routinely grant leave to replead. *See Hamilton v. City of New York*, No. 06 Civ. 15405(DC), 2011 WL 1842990, at *3 (S.D.N.Y. May 20, 2011) (granting defendants leave to amend answer when change in intervening law altered one element of the claim to an affirmative defense after original answer was filed); *Smart v. Arnone*, 315 F. Supp. 2d 292, 294 (W.D.N.Y. 2004) (granting defendant leave to amend answer because of change in law due to recent Supreme Court decision); *Hood v. P. Ballantine and Sons*, 38 F.R.D. 502, 503 (S.D.N.Y. 1965) (granting leave to amend complaint following change in New York State decisional law); *McBeth v. Gabrielli Truck Sales, Ltd.*, 731 F. Supp. 2d 316, 320-21 (E.D.N.Y. 2010) (granting plaintiff permission to add claim under New York Labor law in light of Supreme Court's recent reversal of prior controlling Second Circuit decision); *Darney v. Dragon Products Co., LLC*, 266 F.R.D. 23, 25, 29 (D.Me. 2010) (allowing plaintiff to amend complaint to conform to change in state law, notwithstanding request came beyond close of discovery period and months after rulings on summary judgment issues).

Indeed, the District Court explicitly recognized during oral argument on the good faith issue that the Trustee should be given leave to replead if the Court were to determine that a different standard were to govern the good faith defense in this SIPA liquidation:

> MR. WARSHAVSKY:  I think I would start, your Honor, just by - - I know in the order, when we submitted the order to your Honor, we were clear on this.  To the extent that this is now a motion to dismiss, we would ask for the right to replead because to an extent the standard has been changed.
>
> THE COURT:  Yes, yes, totally right.

---

[11] As noted above, the Trustee reserves his rights to amend pursuant to Fed. R. Civ. P. 15(a)(1)(B) in adversary proceedings where Defendants have not yet filed a responsive pleading or a motion under Rule 12(b), (e), or (f).

> MR. WARSHAVSKY:  Going to just a few points, Mr. Wiles discussed it, a client becoming aware of a fraud, when it became aware and pulled out, these are inherently factual issues.  I don't think any of that was anything we dealt with in the complaints.  I think the scenario that he provided to you is a pure hypothetical.  I don't believe that any of our complaints talk about somebody discovering a fraud, not knowing it was a fraud, discovering it was a fraud and pulling all their money out.  I am may be wrong.
>
> THE COURT:  No, because you thought the standard was different.
>
> MR. WARSHAVSKY:  Right.
>
> THE COURT:  I understand that completely.  That is, among other reasons, why under any set of circumstances it would be imperative that you be given an opportunity to replead.  If you had a good-faith basis for believing the standard was X when you filed your complaints, and the court determines that the other standard is Y, then if you can, you should be given the opportunity to replead to Y.

Transcript of Oral Argument at 38:5–39:5, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* No. 12 Misc. 115 (JSR) (S.D.N.Y. Oct. 12, 2012), ECF No. 401 (emphasis added), attached as Exhibit E to the Griffin Declaration.

The Extraterritoriality Decision similarly provided new guidance to the Trustee regarding facts he must plead to address extraterritoriality issues and the Second Circuit previously granted a party leave to replead under such circumstances.  *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 73 (2d Cir. 2012) (granting leave to replead, noting that the plaintiff's complaint "was filed before the Supreme Court issued its decision in *Morrison* and before this Court provided guidance about how to adequately plead a domestic purchase or sale"); *see also Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, No. 11-397, 2014 WL 3973877, at *17 (2d Cir. Aug. 15, 2014) ("Recognizing . . . that our decisions here and in *Absolute Activist* have elaborated on the standards set forth in *Morrison* in such a way that the plaintiffs might conceivably be able to draft amended complaints that would invoke a domestic application of

§ 10(b), we remand to allow the district court to entertain a motion to amend the complaints"). Specifically, the Extraterritoriality Decision held that a court must "consider[] the location of the transfers as well as the component events of those transactions."  Extraterritoriality Decision at 227 (quoting *Maxwell I*, 186 B.R. at 817).

Notably, the District Court considered only purely issues of law on common briefing,[12] and did not have the underlying complaints before it, nor did it have any of the additional facts and information which are in the Trustee's possession that are directly relevant to the willful blindness and extraterritoriality issues, but were not included in the original complaints filed years ago.  Moreover, in issuing its rulings in the Good Faith Decision and the Extraterritoriality Decision, the District Court did not resolve any cases, but rather has directed this Court to apply its rulings to each case.

Before the Court does so, the Trustee respectfully requests leave to amend his pleadings in light of the recent guidance provided by the District Court, so that the Court will have before it a complete record of all of the facts relevant to assessing a defendant's lack of good faith and/or whether the transfers and component events of the relevant transactions are domestic or extraterritorial in nature. *Id.*; *Parkcentral Global Hub Ltd.*, 2014 WL 3973877, at *15–16 (rejecting single-factor, bright-line rule as appropriate for an extraterritoriality analysis and instead instructing courts that they must instead pay "careful attention to the facts of each case and to combinations of facts that have proved determinative in prior cases" to ascertain whether foreign or domestic elements "predominate").  The Trustee respectfully submits that granting this relief on an omnibus basis in the cases identified on Exhibit B is appropriate, given that the

---

[12] Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 97 ("[B]ecause the issue of whether SIPA applies extraterritorially poses only a legal question, the Court finds that consolidated argument on and resolution of that issue in all of the adversarial proceedings that have identified it as a basis for withdrawal will promote judicial efficiency.")

procedural facts at issue on this motion are common to all of the Defendants in those cases, and will also provide the parties with an efficient and consistent process for pleading amendments and Federal Rule of Civil Procedure 12(b) motion practice.

## II.

### "GOOD CAUSE" EXISTS WARRANTING LIMITED DISCOVERY RELEVANT TO THE GOOD FAITH DEFENSE FROM CERTAIN DEFENDANTS PRIOR TO RULE 26(f) CONFERENCES

While parties to a litigation generally may not seek discovery under the Federal Rules of Civil Procedure until they have conferred as required by Rule 26(f), Rule 26(d) permits such discovery when expressly authorized by court order.  Fed. R. Civ. P. 26(d).  Although the Federal Rules of Civil Procedure do not define the standards governing the granting of such orders, courts in this district for the most part have applied a standard of "reasonableness and good cause" to determine whether discovery prior to a Rule 26(f) conference is appropriate. *Digital Sin, Inc. v. Does 1-27*, No. 12 Civ. 3873 (JMF), 2012 WL 2036035, at *3 (S.D.N.Y. June 6, 2012) ("For the most part, courts in this district have applied a 'flexible standard of reasonableness and good cause' to determine whether expedited discovery is appropriate.") (internal citation omitted); *see Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005); *see also adMarketplace, Inc. v. Tee Support, Inc.*, No. 13 Civ. 5635 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013); *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007); *Malibu Media, LLC v. Does 1–5*, No. 12 Civ. 2950 (JPO), 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012).[13]

---

[13] Occasionally the courts refer to a more stringent, four-part analysis set forth in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) to determine whether discovery is warranted under Rule 26(d)(1):

Under the good cause analysis, courts consider "the reasonableness of the request in light of all of the surrounding circumstances." *Ayyash*, 233 F.R.D. at 326 (emphasis omitted); *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006). Factors commonly considered in determining the reasonableness of the requested discovery prior to a Rule 26(f) conference include, among others:

- the proponent's need or purpose for requesting the discovery;
- the breadth of the discovery requests;
- the burden on the defendants to comply with the requests; and
- consideration of the administration of justice.

*See Disability Rights Council of Greater Wash.*, 234 F.R.D. at 6; *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party"); *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008) (expedited discovery is appropriate when party shows the "need for expedited discovery, in consideration of administration of justice, outweighs prejudice to responding party"); *Dorrah v. United States*, 282 F.R.D. 442, 445 (N.D. Iowa 2012) (same); *Pacello v. Jimenez*, Civ. No. 13-0405-GPC (WVG), 2013 WL 1439697, at *1 (S.D. Cal. Apr. 9, 2013) (same).

---

*(continued ...)*

(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without the expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Notaro*, 95 F.R.D. at 405. The more recent cases in this District have rejected this stricter approach. *See Ayyash*, 233 F.R.D. at 326 ("[M]any recent cases reject *Notaro* and apply a more flexible "good cause" test . . . . These latter cases seem to have the better of the argument."); *OMG Fidelity, Inc. v. Sirius Techs. Inc.*, 239 F.R.D. 300, 303–04 (N.D.N.Y. 2006) (applying good cause standard and questioning vitality of *Notaro* in the wake of the 2000 amendments to the Federal Rules of Civil Procedure); *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006) ("More recent cases have rejected the *Notaro* test in favor of a reasonableness test . . . ."). The Trustee respectfully submits that, even were this less accepted test applicable, the relief requested is appropriate for all of the same reasons set forth herein.

21

The Trustee respectfully submits that an analysis of all of the circumstances in light of these factors and others demonstrates that good cause exists to grant the limited document discovery against the Defendants identified on Exhibit C to the Griffin Declaration.

## A.    The Trustee's Need for Limited Discovery on the Good Faith Standard

The need for the requested discovery is simple—the District Court has issued the Good Faith Decision that retroactively imposes upon the Trustee a pleading burden with respect to the affirmative defense of "good faith" that he did not have when he initially investigated and commenced his actions.

In preparing to file his actions, the Trustee's investigation and use of Rule 2004 subpoena power was informed and guided by the law that existed at the time regarding the parties' respective burdens of pleadings and standards of proof for the good faith defense.  Accordingly, the Trustee gathered sufficient evidence to satisfy the inquiry notice standard for lack of good faith in each of the relevant cases.  Now, however, the District Court's Good Faith Decision has not only heightened the standard of "good faith" to willful blindness, it requires for the first time ever in a SIPA liquidation the Trustee to plead as part of his affirmative case that the defendants were willfully blind.

But information as to what the defendants knew at any particular time about BLMIS and the extent to which they exhibited willful blindness is information that is particularly within the defendants' possession, necessitating limited discovery.  Limited discovery is even more appropriate in light of the fact that the Trustee is a stranger to these cases, "a third party outsider to the fraudulent transaction."  *Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Sec.)*, 445 B.R. 206, 219 (Bankr. S.D.N.Y. 2011); *see also Picard v. Merkin*, 440 B.R. at 254 ("[T]he trustee's lack of personal knowledge is compounded with complicated issues and

transactions which extend over lengthy periods of time . . . . [T]he Trustee should therefore be afforded even greater latitude.") (internal quotation and citation omitted).

Even outside the bankruptcy context, several leading jurists and scholars have recognized the appropriateness for allowing discovery in analogous situations involving "information inequities," where a defendant has possession of nearly all of the information necessary to inform a plaintiff's claims. For example, Judge Posner has endorsed the view that limited, early discovery may be necessary for plaintiffs to meet the *Twombly* plausibility standard:

> [Pleading after *Iqbal/Twombly*] requires the plaintiff to conduct a more extensive precomplaint investigation than used to be required and so creates greater symmetry between the plaintiff's and the defendant's litigation costs, and by doing so reduces the scope for extortionate discovery. If the plaintiff shows that he can't conduct an even minimally adequate investigation without limited discovery, the judge presumably can allow that discovery, meanwhile deferring ruling on the defendant's motion to dismiss.

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 412 (7th Cir. 2010) (Posner, J., dissenting). *See also Wilson Oilfield Servs., Inc. v. Vishal Enter.*, No. 7:11-cv-00111-O, 2011 WL 6029948, at *4 (N.D. Tex. Dec. 5, 2011); Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 N.Y.U. L. Rev. 286 (2013); Suzette M. Malveaux, *Front Loading and Heavy Lifting: How Pre-Dismissal Discovery Can Address the Detrimental Effect of Iqbal on Civil Rights Cases*, 14 Lewis & Clark L. Rev. 65 (2010).

By granting the Trustee the limited document discovery requested, the Court will simply ensure that the Trustee enjoys the same rights that all future trustees will have using Rule 2004 discovery to gather factual information necessary to plead their avoidance actions in SIPA liquidations. By contrast, without the relief sought, the new pleading standard could have the unintended effect of cutting off the Trustee's valid claims prematurely, potentially foreclosing

the assertion of claims intended to benefit the customers of the BLMIS estate with valid customer claims. *See Randall's Island Family Golf Centers, Inc. v. Acushnet Co. and Fortune Brands, Inc. (In re Randall's Island Family Golf Centers, Inc.)*, 290 B.R. 55, 65 (Bankr. S.D.N.Y. 2003).

## B.    The Trustee Seeks Only Narrowly Targeted Document Discovery

As noted above, the Trustee seeks the Court's authorization for limited discovery in the adversary proceedings identified on Exhibit C to the Griffin Declaration, in which the Trustee has received no or minimal productions relevant to their knowledge or willful blindness from the Exhibit C Defendants.  Because the discovery the Trustee is seeking from these defendants to meet the new pleading standard is limited in scope, it is particularly appropriate under Rule 26(d)(1).  *OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006) (granting expedited discovery, noting that proposed discovery requests were "exceedingly pointed" and concluding that the burden of responding "would not be particularly onerous"); *Semitool,* 208 F.R.D. at 277 (granting expedited discovery where document requests were narrowly tailored and party was not seeking deposition testimony); *Wheeler v. HXI, LLC*, No. 10-cv-145 (JD), 2010 WL 3023518, at *2 (D.N.H. July 28, 2010) (granting request for limited expedited discovery, finding it "reasonable that Plaintiffs should have access, limited by form and number of discovery requests" to evidence relating to dispute); *Meritain Health Inc. v. Express Scripts, Inc.* No. 4:12-CV-266 (CEJ), 2012 WL 1320147, at *2 (E.D. Mo. Apr. 17, 2012) (finding good cause existed to allow discovery prior to Rule 26(f) conference in part because requests were narrowly tailored to a limited set of documents and depositions).

The Trustee's counsel has consciously narrowed the scope and type of discovery sought in this motion in an effort to reduce any potential burden to the Exhibit C Defendants.  The Trustee is not at this juncture seeking to take depositions from any of the Exhibit C Defendants,

to which he would otherwise have been entitled under Rule 2004.  Instead, he is seeking the

following limited categories of documents regarding BLMIS, investment vehicles investing

virtually all their assets in accounts at BLMIS ("Feeder Funds"), or other BLMIS-Related

Investment Products:[14]

1.      documents concerning the review, analysis, due diligence, evaluation and ongoing
        monitoring of actual or prospective investments and transactions relating to
        BLMIS, Feeder Funds, or BLMIS-Related Investment Products;

2.      documents concerning Defendant(s)' decision whether to participate in any
        investments or transactions relating to BLMIS, Feeder Funds, or BLMIS-Related
        Investment Products;

3.      documents concerning fraud, Ponzi, illegality, front-running, investigations,
        insolvency, or embezzlement relating to BLMIS, Feeder Funds, or BLMIS-
        Related Investment Products; and

4.      documents concerning fees, rebates, commissions, retrocessions, or any other
        remuneration paid to or by Defendant(s), related to investments and transactions
        involving BLMIS, Feeder Funds, and/or BLMIS-Related Investment Products.

Specific exemplars of the foregoing types of documents are identified in the Proposed Demand

for Limited Discovery.  *See* Griffin Dec. at Ex. D.  The documents the Trustee seeks should be

readily identifiable by the Exhibit C Defendants and should be within the possession, custody or

control of a limited number of custodians.

## C.      There Is No Prejudice to Defendants if Limited Discovery Is Granted at This Time

If this Court grants the Trustee's motion, the Exhibit C Defendants will not be prejudiced.

The scope of the discovery requested by the Trustee is far more limited than the Rule 2004

discovery the Trustee was previously empowered to take against these same defendants and in

pursuit of the same claims.  Notably, the Trustee does not seek relief from parties who have

already produced documents equaling or exceeding what he seeks here.

---

[14] Unless otherwise defined, the terms used in connection with these requests have the same definition as used in
Exhibit D to the Griffin Declaration.

The Trustee and his counsel focused their Rule 2004 discovery to what was necessary to plead and prove his avoidance and recovery actions based on the pleading standard as they existed in 2010, when the majority of his complaints were filed.  Had the Trustee been required at that time to plead and prove the defendants' actual knowledge or willful blindness, the broad powers of Rule 2004 would have provided him with far broader discovery than that he seeks now.  *See In re North Plaza LLC*, 395 B.R. 113, 122 (S.D. Cal. 2008) (noting that Rule 2004 discovery is "aimed at discovering evidence upon which future causes of action may be based").  Because the discovery sought here is far less than what the Trustee would have been entitled to seek pursuant to his Rule 2004 powers, there is no prejudice to the defendants.  Furthermore, in some instances where third party litigation is pending against the same defendant as the Trustee's actions, those defendants have already gathered and produced documents in the third party actions.  Unfortunately, due to protective orders the Trustee does not have access to those documents.  Yet, providing the Trustee with copies of those productions would require little effort and cause virtually no prejudice.

Finally, should this Court grant the Trustee the narrowly tailored discovery requested, he will not seek to duplicate this discovery later.  As such, the discovery provided at this stage will reduce the defendants' production obligations during pre-trial discovery.  *See OMG Fidelity*, 239 F.R.D. at 305 (granting plaintiff's discovery requests and rejecting defendant's argument regarding replication of efforts because of "plaintiff's assurance that it will not seek to duplicate any already-conducted discovery").

**D.    Considerations of the Administration of Justice**

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."  *Semitool,* 208 F.R.D. at 276.  Here, considerations of the administration of justice weigh in favor of granting

the relief sought by the Trustee.   Retroactively changing the standards for avoidance and recovery actions after Rule 2004 discovery ended effectively precludes the Trustee of the normal procedures of the Code and SIPA to the detriment of BLMIS customers with valid customer claims and in contravention of SIPA's customer protection mandate.   The Exhibit C Defendants, on the other hand, do not face undue prejudice by allowing a grant of early discovery since these same defendants would typically have been subject to broad pre-filing discovery under Rule 2004.

Many courts in this District and elsewhere have granted expedited discovery under circumstances where refusing to grant such discovery would deprive the plaintiff of the opportunity to pursue his claims, including cases involving requests for a preliminary injunction, or issues surrounding the identification of defendants, motions for attachments, class certification, and personal jurisdiction.[15]

Without this Court's assistance, the Trustee would be effectively denied the standard bankruptcy procedures afforded to all trustees to take pre-complaint discovery in order to gather information necessary to plead avoidance and recovery actions on behalf of the estate and its creditors under the new standards issued by the District Court after commencement of the

---

[15] *See Ayyash*, 233 F.R.D. at 327 (granting plaintiff's expedited discovery request, finding defendants were foreign entities with incentive and capacity to conceal assets, and in absence of expedited discovery, plaintiff's motion for attachment and claims would be futile); *adMarketplac*e, 2013 WL 4838854, at *2 (granting expedited discovery to identify unnamed defendants, *held*, plaintiff had "potentially meritorious claim and no ability to enforce it absent expedited discovery"); *Digital Sin*, 2012 WL 2036035 (granting expedited discovery and issuing protective order, *held*, plaintiff had *prima facie* copyright infringement case and no alternative means existed for plaintiff to determine identity of defendants so engaging); *Sheridan v. Oak St. Mortg., LLC*, 244 F.R.D. 520, 522 (E.D. Wis. 2007) (granting expedited discovery motion to ascertain class certification issues uniquely in defendant's possession); *see also Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 69 (E.D.N.Y. 2006) (denying defendant discovery stay pending resolution of defendant's motion to dismiss after court granted expedited discovery regarding defenses raised by defendant); *OMG Fidelity, Inc.*, 239 F.R.D. at 304-05 (granting plaintiff's request for expedited discovery at pre-answer stage where defendant had announced intention to file motion for dismissal in lieu of answering, burden of responding to proposed discovery would not be onerous, and plaintiff would be prejudiced in preparing its contemplated motion for preliminary injunction if discovery not permitted); Adv. Comm. Notes, *Amendments to Federal Rules of Civil Procedure*, 146 F.R.D. 401, 640 (1993) (giving examples of appropriate expedited discovery for those requests without which plaintiff would lose his or her claims).

Trustee's actions. Thus, consideration of the administrations of justice favors the relief sought, because if denied, an unprecedented change in the law may have the unjust result of preventing the Trustee from pursuing his otherwise valid claims and recovering funds for BLMIS's customers.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Trustee's request for an order allowing him to replead his operative complaints against the Exhibit B Defendants, and directing the Exhibit C Defendants to produce the limited discovery sought in Exhibit D to the Griffin Declaration, and any and all other relief the Court deems just and proper.

Dated:    August 28, 2014
        New York, New York

/s/ Regina Griffin
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Regina Griffin
Thomas L. Long
Catherine E. Woltering
Jonathan D. Blattmachr

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and estate of Bernard L. Madoff*