# EXHIBIT E

Transcript at Oral Argument, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. Oct. 12, 2012), ECF No. 401

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SECURITIES INVESTOR PROTECTION
     CORPORATION, IRVING H. PICARD,
 4
                     Plaintiffs,
 5
                     v.                    12 MC 115 (JSR)
 6
     BERNARD L. MADOFF INVESTMENT
 7   SECURITIES LLC, et al.,
                                           Conference
 8                   Defendants.

 9   ------------------------------x

10                                         New York, N.Y.
                                           October 12, 2012
11                                         4:40 p.m.

12   Before:

13           HON. JED S. RAKOFF

14                                         District Judge

15
             APPEARANCES
16

17   NATHANAEL S. KELLEY
         Attorney for SIPC
18
     BAKER & HOSTETLER LLC
19       Attorneys for Trustee Picard
     BY:  OREN J. WARSHAVSKY
20       LAN HOANG

21   ANDERSON KILL & OLICK, P.C.
         Attorneys for Initial Transferees
22   BY:  TODD E. DUFFY
         DENNIS J. NOLAN
23
     LATHAM & WATKINS LLP
24       Attorneys for Subsequent Transferees
     BY:  CHRISTOPHER HARRIS
25
```

1                 APPEARANCES

2

3     DEBEVOISE & PLIMPTON LLP
           Attorneys for Thema International Fund
4     BY:  MICHAEL WILES

5     CLEARY GOTTLIEB STEEN & HAMILTON LLP
           Attorneys for Leverage Providers
6     BY:  PAUL R. ST. LAWRENCE

7     ARNOLD & PORTER, LLP
           Attorneys for Merrill Lynch International
8     BY:  KENT YALOWITZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Case called)

 2              THE COURT:  I'm going to try to keep this as short as

 3    possible because I don't think the economy can stand having to

 4    pay for all the lawyers in this room.  This, unlike some of the

 5    issues that have come before the Court involving the Madoff

 6    matters, is one that the Court has previously dealt with.

 7    Between that and the extensive briefing, I have reached some

 8    tentative conclusions, although I will make no final

 9    conclusions until I've heard oral argument and issued a written

10    opinion.

11              My tentative conclusion is that the standard that the

12    trustee must meet to establish lack of good faith under a

13    willful blindness approach, as opposed to an actual intent

14    approach, is that the defendant must subjectively believe that

15    there is a high probability that a fact exists and the

16    defendant must then consciously turn away or otherwise take a

17    deliberate step or decision to avoid learning of that fact.

18    Essentially, with a very slight massaging, the test set forth

19    in Global-Tech Appliances v. SEB, 131 S.Ct. 2060, 2070, a 2011

20    decision of the Supreme Court.

21              I am also of the view that in an action brought under

22    section 550, the burden is on the trustee to -- I'm sorry.  I

23    think I'm overstating where my head is at on the second thing.

24    I'm not sure whether the burden of establishing good faith is

25    on the defendant or the burden of establishing lack of good
```

1   faith is on the trustee.  So I am anxious to hear argument on

2   that issue, much more anxious to hear argument on that issue

3   than on the standard.  But I am tentatively of the view that it

4   may vary as between a claim brought under 548 and a claim

5   brought under 550.  That's what I was about to try to say but

6   didn't say very well.

7           Given all that, I think I should hear first from the

8   trustee.

9           MR. WARSHAVSKY:  Thank you, your Honor.  I'm trying to

10  digest your tentative ruling.

11          THE COURT:  The standard is one you have heard before

12  from this Court.

13          MR. WARSHAVSKY:  It is in part.

14          THE COURT:  It's been the standard in securities law

15  from time immemorial.  It is also functionally equivalent to

16  the standard for recklessness, which has been the law of most

17  states and England since about 1700, but of course only I would

18  remember that.

19          MR. WARSHAVSKY:  Fair enough.  I guess where I'll

20  start is maybe on both prongs of what your tentative ruling

21  goes to in terms of what the standard is and where the burden

22  is.  I'd like to take a step back maybe to address both.  In

23  doing so what I would like to do is actually focus on the

24  trustee's claim.  When I was reading through the briefing I

25  think that gets a little lost, so I thought about it in a

1    slightly different way.

2            The trustee's claim isn't one for damages.  The

3    trustee's claim against these defendants is actually over who

4    has greater rights to a particular transfer:  Is it the trustee

5    or is it the defendants?  That's where I know I have spoken

6    before about the bona fide purchaser for value.  I think that's

7    where that test always comes in.  I think that's why we see it

8    codified in the bankruptcy code.

9            Ultimately, the bankruptcy code starts with the

10   presumption that it is property of the estate.  The fight is

11   always between the bankruptcy estate and the defendants, the

12   transferee.  The defendants can keep that transfer if they show

13   good faith and if they show value.  I don't think anybody

14   disputes that that is the test in a typical bankruptcy,

15   certainly not for an initial transfer in any event.

16           Your question here, the question that you certified,

17   was whether SIPA or the securities laws alter those burdens.

18           THE COURT:  And/or the test.

19           MR. WARSHAVSKY:  And/or the test.  Our answer is we

20   don't think it does.  I am sure that is no surprise.  I'll take

21   those one at a time.

22           Number one, I'll go to simply the plain language,

23   which I know your Honor has quoted to us and we have tried to

24   hew very close to that.  There is nothing in SIPA itself other

25   than incorporation of the bankruptcy code.  We have discussed

6

1  that.  It is certainly in our papers.  All SIPA itself does is

2  vest the trustee with the powers that a bankruptcy trustee

3  would otherwise have.

4       Then the question is whether or not the securities

5  laws more generally would alter the test.  Your Honor pointed

6  to the recklessness standard.  I think if you read through the

7  defendants' papers and go through all the analogies, and they

8  certainly advocate for the higher standard and for the burden

9  shifting, each one of those cases is a case about damages.

10       I think it is important, whether it is a 10b-5 case,

11  or a case about a control person liability.  I think there are

12  a few different examples defendants gave, but what we don't

13  have is what is essentially here, which is simply a contest

14  over who has greater rights.

15       In those types of cases there is no presumption that a

16  defendant owes damages.  I think that is the difference.

17  That's the reason for a heightened standard.  Here there is the

18  presumption which is baked into the bankruptcy code that this

19  is property of the bankruptcy estate.

20       So, when the defendants point to the willful blindness

21  standard in those cases --

22       THE COURT:  Good faith, forgetting now about the

23  securities law, that's a term that goes back well prior to the

24  bankruptcy code, well prior to the founding of this country.

25  It comes ultimately out of what used to be taught in first year

1    property, medieval cases, all of which turned on mental states,

2    not on sort of objective situations devoid of mental state, and

3    dealt with the problem that has always been a problem in the

4    law from day one, which is when you have someone who takes,

5    like a stolen good, but he gets it in good faith.  The thief

6    sells it to the purchaser and the purchaser doesn't know it's a

7    thief.  The common law resolved that by saying if it's a good

8    faith purchaser, then you get to keep it.

9         You are right that many of the presumptions of the

10   common law were changed by the enactment of the bankruptcy

11   code.  But I don't know that that trumps, while we are dealing

12   here in a mixed securities and bankruptcy situation, what is

13   the classic view of good faith, which is a subjective view

14   rather than the objective view you're talking about.

15        MR. WARSHAVSKY:  I know through the papers there is

16   discussion about subjective and objective, and I think there

17   are elements of both in each test.  Ultimately, I think the

18   test you just articulated, you said good faith and I used the

19   term bona fide purchaser for value.  But I agree I think that

20   is the test that we have espoused as well.  Is it for good

21   faith and is it for value.

22        Good faith, though, I think is different from

23   knowledge, especially when we go to the issue of -- I'm sorry.

24   I lost my train of thought.

25        THE COURT:  Take your time.

 1          MR. WARSHAVSKY:  When we talk about willful blindness,

 2   which I think is the standard which has been espoused, I was

 3   looking through some of the willful blindness.  There is a

 4   whole taxonomy there which I think is built around getting to

 5   knowledge.  Ultimately, willful blindness, if you start from

 6   the model penal code -- and the case I saw went actually to

 7   1860, not to the 1700s -- essentially was about sticking one's

 8   head in the sand, and that was a way for a plaintiff or the

 9   government to actually show knowledge.  Good faith I think is a

10   slightly lower standard.

11          There certainly are subjective elements to a good

12   faith test.  Certainly in each of these cases what we have

13   alleged has been what these defendants saw.  But ultimately

14   whether or not the defendant acted in good faith should be

15   measured against what a reasonably prudent person would do in

16   the defendants' shoes.

17          It is not criminal.  And I want to respond to your

18   analogy to the security law as well.  Another analogy that I

19   came up with as we were coming down here, and I'm sorry to give

20   a hypothetical but I think it helps you with my point, so if

21   you would indulge me.

22          THE COURT:  Go ahead.

23          MR. WARSHAVSKY:  If Bernard Madoff had five shares of

24   the old stock certificates of IBM and went through the exact

25   same scenario that you just indicated, where perhaps he gave

1     them to somebody who didn't pay proper value or perhaps

2     somebody did pay proper value for them, or maybe his wife did

3     it and maybe it was somebody he knew, maybe it wasn't.  He knew

4     about the impending bankruptcy.

5          The bankruptcy law is simply about determining who has

6     the greater rights.  So, you're right, what he would have to

7     show, what that defendant would have to show, is that he took

8     with good faith and he provided value.  I don't think that

9     defense would change whether it was a security or deed to a

10    property.  I know there are special rules about cash per se,

11    but if it was a bag of cash or a diamond, it would all be

12    related to that test.  It would be good faith and for value.

13         The way we would look at good faith is whether or not

14    a reasonable person in that defendant's shoes would understand

15    that there was something untoward about the transaction.

16         THE COURT:  I can live with everything you just said

17    until you get to that last point.  Why is that what good faith

18    means?  To continue your hypothetical, for value he gives a

19    share of IBM to an 80-year-old crippled widow who, because she

20    spent her entire life working hard as a cleaning lady for the

21    benefit of her children, all of whom went to Harvard, has never

22    achieved any financial sophistication whatsoever.  And the

23    world's greatest lie detector tests all show that she took

24    subjectively in good faith.

25         She paid her value, she had absolutely no reason to

1  know that these were stolen goods, and she got her share of

2  IBM.  You want to take it away from her because a reasonable

3  person, you say, would have been suspicious or something like

4  that, a negligence type standard.

5        MR. WARSHAVSKY:  No, actually I don't think we would

6  want to take it away from her, because it is a similarly

7  situated --

8        THE COURT:  You think the relevant class is the class

9  of all crippled widows who -- this is going to be an

10 interesting test you're probably getting here.

11       MR. WARSHAVSKY:  I think we always struggle to find

12 out who would be a reasonably prudent person in a defendant's

13 shoes.

14       THE COURT:  If you are defining a defendant's shoes as

15 so individualistic that it only applies to someone who is

16 basically the defendant, the difference between your test and

17 the one that your adversaries are proposing becomes, as a

18 practical matter, very modest indeed.

19       MR. WARSHAVSKY:  I think in some scenarios that could

20 be.  I think in scenarios here, where we are dealing with

21 financial transactions, that is not probably not.

22       THE COURT:  Also, on that narrow a test is what you

23 are saying you want achieve, which is an objective test, a

24 reasonable investor type test that can be applied fairly easily

25 across the board without much inquiry into the specific facts

1  of the case. I thought that was at least implicitly one of the

2  benefits of your test, which would disappear if we narrow it

3  down to what does a reasonable person with less than a high

4  school education, etc.

5       MR. WARSHAVSKY:  I'm trying to think of how to

6  respond. You baked a lot into that. I think the response is

7  that when we're talking about financial transactions, there are

8  certain -- I don't think we have to look to an expert to say

9  what is somebody's precise sophistication, but I think we can

10 look to who the defendant is and what sort of class they are

11 in.

12       Frankly, the way we have parsed out the world, if you

13 take a look, most investors in BLMIS we did not make these

14 allegations against. The allegations of a lack of good faith,

15 which is the standard we have clung to throughout, we have made

16 against financially sophisticated investors. We think that in

17 measuring their good faith you should measure their actions

18 against what a reasonable sophisticated investor or reasonable

19 financial institution would do when presented with the same

20 indicia of fraud.

21       As a for instance, I don't know that the woman from

22 your example would understand that BLMIS could not trade on

23 days when the market was closed. I do think that anybody who

24 is represented by the people at this table should know that.

25 And I do think that to the extent they would say, we didn't

1      know, we should look to measure their conduct in accordance

2      with what people in the industry would know and what would be

3      common knowledge to them.  I think that is the objective part

4      of the test.

5           Certainly they would have to have seen, their account

6      statement would have to show, that BLMIS made the trade on the

7      day the market was closed.  They couldn't guess from somebody

8      else's account statement.

9           THE COURT:  Forgive me, but I think we need to hear

10     from some of your adversaries.  If the representative from SIPC

11     wants to chime in at this point, I'll hear whatever he has to

12     say.

13          MR. KELLEY:  Yes, your Honor, just briefly.  I would

14     like to point out that SIPA relies upon the bankruptcy code

15     both for procedural and for substantive purposes.  Courts have

16     recognized that SIPA liquidation is essentially a bankruptcy

17     proceeding.  It has the same goals as bankruptcy in that it

18     seeks the ratable distribution of the estate's assets among

19     customers to the extent of readjusting the rights and

20     obligations of those customers.

21          I, of course, agree with the trustee that even under a

22     SIPA liquidation, you should be referring to the good faith

23     standard that other courts have recognized in bankruptcy

24     proceeding.

25          (Continued on next page)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1       MR. KELLEY:  (continuing)  SIPA relies upon the

2   bankruptcy code, is clear from several provisions of SIPA, but

3   I would like to focus on 78fff-2(c)(3).  It specifically

4   provides that whenever customer property is insufficient to pay

5   all customer claims, a SIPA trustee may recovery transfers to

6   the extent they voided or avoidable under Title 11.  There are

7   two points I would like to draw from this section.

8       First of all, it only references voidability under

9   Title 11.  It adopts fraudulent conveyance statutes from Title

10   11 wholesale and to the extent of the bankruptcy code without

11   reference to the securities laws.

12       Second, for the purposes of such recovery, 2(c)(3)

13   deems the transfer of property shall be deemed to have been

14   property of the debtor.  Thus, while the securities laws and

15   state laws and even SIPA itself recognize that broker customers

16   investment and withdrawals are the customer's property.  SIPA

17   agrees a legal fiction to modify these rights declaring the

18   property transferred from the debtor shall be treated as the

19   debtor's property in order to accomplish SIPA's goal of a

20   ratable distribution among customers.

21       Furthermore, 2(c)(3) allows a trustee to recover

22   voided or avoidable transfers without reference to the trustee

23   having to show lack of good faith.  In short, to the extent

24   that SIPA modifies fraudulent conveyance actions, it expands

25   the trustee's right of recovery in order to ensure that

 1   fraudulent conveyance actions fit within the securities

 2   context.  It does not constrict the trustee's ability to

 3   recover from customers.  Thank you.

 4           THE COURT:  Thank you very much.  Let me hear from

 5   counsel for the defendant.

 6           MR. DUFFY:  Thank your Honor.  Todd Duffy for the

 7   initial transferees, your Honor.

 8           THE COURT:  Yes.

 9           MR. DUFFY:  We won't prolong anything more on the

10   standard.

11           THE COURT:  Let's talk about the -- not that I've

12   decided this finally, but I have certainly given some hints as

13   to where I am coming out.  That is notwithstanding my

14   tremendous respect and describe each time he is here for

15   counsel for the trustee.  He can you can come into my courtroom

16   any time, but on this one you may be facing an uphill battle.

17   You always have your appeal.

18           Yes, the standard is something I'm not clear about, I

19   mean the burden, I am sorry, the burden is what I am less clear

20   about.

21           MR. DUFFY:  Before we go for the burden, I think one

22   of the things we wanted to clarify, we served to clarify in our

23   brief is what the standard is willful blindness, the question

24   what are we willfully blind of?

25           If the trustee is accusing defendants of wrongfully

1   taking transfers from Madoff because he was running a Ponzi

2   scheme, then the defenses would submit they needed to know --

3   they needed to be willfully blind that Madoff was running a

4   Ponzi scheme.  It is worthwhile to note the SEC which would

5   have been in a similar financial position as some of my

6   co-counsel here, also did an extensive investigation and didn't

7   find anything.

8          THE COURT:  That is a factual issue.  We are talking

9   now about standards and burdens, not about what the facts may

10  or may not show.

11         If the Mets trial had ever gone to trial, and I'm

12  still upset that I didn't get to hear from Sandy Koufax, there

13  would have been the trustee proffered proof from a witness that

14  the defendants in that case had been told by someone within

15  their midst that she shot and had reason to believe that there

16  was no way to account for Madoff's returns that he was

17  purporting to realize, and that was not a witness who had been

18  before the SEC.

19         So I don't think we know at this point what the proof

20  would show in any of these cases that you're involved in till

21  we get to the trial, if we ever get to the trial.

22         MR. DUFFY:  Respectfully, your Honor, I disagree.  A

23  lot of the pleadings in the complaints themselves would

24  certainly pan out to establish an affirmative defense for some

25  of these defendants.

1          THE COURT:  That may be true.

2          You would either have an individual motion to dismiss

3  or an individual summary judgment motion perhaps, but all I'm

4  talking about now is what I need to decide as a result of

5  today's hearing is what the standard is and who has the burden.

6  So it seems to be the theory here that the SEC didn't figure

7  this out.

8          MR. DUFFY:  Okay, your Honor, but again the second

9  prong of that we believe is what is to be willfully blind of,

10  we would submit to the court that what you need to be willfully

11  blind of, if the plaintiffs are saying that we wrongfully

12  accepted transfers from Madoff because he was running a Ponzi

13  scheme, would be that we were willfully blind of the fact he

14  was running a ponzi scheme and we actually knew that.

15          THE COURT:  Now you're equating willful blindness with

16  actually knew.  Willful blindness means that there is a high

17  probability and you purposefully turn away and say I don't want

18  to know.  It doesn't mean that you know it in the way you would

19  know it if, for example, you had been a participant in the

20  fraud or something like that.

21          MR. DUFFY:  Yes, I agree.  I apologize if I overstated

22  that.  We also believe that there are various actions that in

23  taking those transfers, that the context of accepting those

24  transfers should also be taken into consideration.

25          So, for example, if they took those transfers, but

1    they had professionals helping them with, as a custodian or

2    administrator, then those types of things should also be taken

3    into account because knowledge can't be the only possible

4    factor you're evaluating when --

5            THE COURT:  Doesn't that cut in favor of putting the

6    burden of this defense on the defendants?  They're the ones who

7    know all of this, they know whether the advisors -- where they

8    know this that or the other.  It wouldn't be a question of what

9    the trustee has to plead; it is a question of what you would

10   have to plead or prove by way of an affirmative defense.

11           MR. DUFFY:  Again, your Honor, that may or may not be

12   true.  What I would say is that the trustee still has a

13   responsibility of proving a plausible complaint, pleading a

14   plausible complaint under Rule 8.

15           THE COURT:  Isn't it a question, a classic question of

16   whether this is an affirmative defense or whether the lack of

17   good faith is an element of the claim?

18           If it is an affirmative defense, which we have all the

19   time, then the burden of an affirmative defense is usually on

20   the defendant.  So here you look at, say, 550, for example, and

21   it says that the trustee may not recover under Section (a)(2)

22   of this section from the transferee that takes for value

23   including satisfaction or securing of a present or antecedent

24   debt in good faith and without knowledge and a voidability of

25   the transfer avoided.  You look at that language and you can

1   read it as maybe being that the trustee has to plead an absence

2   of that or you can read it as that's an affirmative defense.

3   It doesn't beat out from the language which way it cuts.

4            The same kind of thing applies with respect to 548,

5   although it is the language is a little bit different.  Just to

6   show you why I am not sure that they both come out the same

7   way, Section 548 C says:

8            "Except to the extent that a transfer obligation

9   voidable under this section is voidable under Section 545 --

10  544, 545 or 547 such as, for example, as actual intent, a

11  transferee of such a transfer that takes for value in good

12  faith has a lien on or may retain any interest transferred," et

13  cetera.

14           So that may be even a little bit more like an

15  affirmative defense because it talks about the transfer, what

16  the transferee may do.  None of this is definitive from the

17  language in the statute.  The question I was trying to put to

18  you is this:  Doesn't it make sense to make this an affirmative

19  defense because the information that would allow someone to

20  establish good faith or lack of good faith is much more likely

21  to be in the hands of the defendant than it is in the hands of

22  the trustee?

23           MR. DUFFY:  Respectfully, your Honor, I'd say no for

24  two reasons.

25           THE COURT:  Why?

1    MR. DUFFY:  First of all, prior to any litigation

2    under the federal rules of bankruptcy procedure, the trustee

3    can collect evidence under rule 2004 which I understand was

4    extensively done in this case.  Given certainly from my

5    clients, it was 145 page complaint which showed --

6         THE COURT:  There are shorter ones.

7         MR. DUFFY:  Yes, your Honor.  That was chocked filled

8    with facts, and allegedly and I am sure the trustee's counsel

9    had some basis for making those, so I would assume that was a

10   result of an investigation.

11        THE COURT:  That doesn't answer the question.

12        The fact that they did allow an investigation and can

13   make some assertions here cannot be what determines what should

14   be as a matter of law the standard because there will be plenty

15   of cases where that won't be the case.

16        So it has to rest on general principles and policies,

17   not the particulars that this particular trustee may have done

18   a more intense investigation than some trustees ordinarily

19   would be able to do or whatever.

20        MR. DUFFY:  I don't think that Rule 2004 is limited to

21   some trustees or other trustees.  Anybody can do pre-litigation

22   investigation under rule 2004 as a trustee.

23        THE COURT:  That is true.

24        MR. DUFFY:  In which case --

25        THE COURT:  But, but, but I come back to the question

1    of why doesn't it make more sense to place the burden on the

2    transferee who will know immediately what things they can point

3    to that will establish their good faith, all the things you

4    were just mentioning that at best the trustee will know a

5    fraction of the situation, but each transferee will have an

6    intimate knowledge of what steps it took, what it knew, what it

7    failed to do, et cetera.

8          So why isn't it make sense to put that burden on the

9    transferee?  By the way, there is one other possibility, which

10   is that the transferee could make me have the burden of having

11   the burden of going forward, and the burden would shift to the

12   trustee as the ultimate burden.  That is the way it works in

13   criminal cases although that is largely for constitutional

14   reasons, not applicable to a civil case.

15         MR. DUFFY:  One thing interesting, the transferee

16   certainly as in Bloomberg securities laws has no burden to do

17   an inquiry at the time of the transfer.  Why then would it be

18   asserting, taking on a burden of proving that it acted in good

19   faith?

20         THE COURT:  The answer -- I am not saying this is the

21   answer because I really have not decided where I come out on

22   this question as opposed to the first question, but there are

23   many, many places in the law, and particularly when you're

24   dealing with super procedural or quasi-procedural matters where

25   the person who has the close, closest proximity to the facts

 1    has the burden.  Sometimes it is just the burden of going

 2    forward, sometimes it is the ultimate burden, but that's not an

 3    unfamiliar approach of the law.

 4           MR. DUFFY:  My understanding of the bankruptcy laws

 5    with respect to 548 (c) and 550 (b) are quite different.  I

 6    know my colleague will be speaking on what 550 will be.  Maybe

 7    it would be best if I defer to my colleague to speak on what

 8    550 will be.

 9           THE COURT:  Absolutely.

10           MR. HARRIS:  Thank your Honor.

11           I will just address the burden of proof argument that

12    you raised and I am going to focus on 550 (b) and regardless of

13    whether 548 (c) is or is not an affirmative defense, there is

14    strong reasons why 550 (b) is not an affirmative defense and

15    the trustee should have the burden of proof on that.

16           You start with the general rule the Supreme Court

17    outlined in Schaeffer, that unless there is something that

18    Congress points to indicating otherwise, assume that the burden

19    of proof is on the party seeking relief.  That is the trustee

20    here.  The trustee hasn't pointed to anything in 550 (b) or any

21    practicalities of litigation that would suggest that Congress

22    intended to change that normal burden of proof.  If you look at

23    the both the text of 550 and the practicalities of what a

24    subsequent transferee is, they strongly support you should

25    leave the burden where it normally is, on the party seeking

1    relief.

2            550 is structured differently than 548. You start by

3    looking at 550 (a), and it says except as otherwise provided in

4    this section, to the extent a transfer is avoidable under other

5    sections, then the trustee can recover. That introductory

6    phrase is part of 550 (a) and part of a 550 (a) claim. That

7    means if another section of 550 is triggered, you do not have a

8    550 (a) claim. In that way, 550 is different from 548. If you

9    look at 548 (a)(1) --

10            THE COURT: So, so, if I adopt your reasoning in that

11   regard, I would put the burden on the trustee under 550, but

12   not put the burden on the defendant under 548?

13            MR. HARRIS: There is a lot of other reasons and my

14   colleagues can tell you why even for 548, you should still

15   leave the burden where it normally belongs on the party seeking

16   relief, but I am trying to show you why there is additional

17   reasons that would apply to 550 beyond those offered.

18            THE COURT: I thought this was your first reason.

19            MR. HARRIS: That is my first.

20            I would also look at the text not just of 550 (a)(1)

21   which incorporates the absence of another element of 550, but

22   if you look at 550 (b) itself, it again is worded in a way that

23   suggests it is part of the affirmative claim itself. It talks

24   about the trustee and it says the trustee may not recover if

25   the conditions are met. Again in contrast, 548 (c) focuses not

1    on what the trustee cannot do.

2              THE COURT:  I am not sure how much I can draw from the

3    grammar and wording that you're referring to.

4              Is it not one plausible reading of Section 550 (b)(1)

5    that when it says a transferee that takes for value, that what

6    that means procedurally is a transferee that establishes that

7    he takes for value, including, et cetera, all the way down to

8    good faith.

9              MR. HARRIS:  It could mean that.  Even before you get

10   to that sentence, the preceding part of 550 (b) tells you the

11   trustee may not recover.

12             I agree it is not the clearest language out there, but

13   to the extent it is suggesting one thing or the other, I think

14   it is suggesting that the trustee has to show this.  That is

15   both from the language of 550 (a)(1) which says you don't even

16   have a 550 (a)(1) claim if another section applies and the

17   language of 550 (b) which begins by saying the trustee may not

18   recover.  Nothing in there says the transferee has to do

19   something to prevent a recovery or retain --

20             THE COURT:  So, so if you're right that this is more

21   than a makeweight argument, that this is an independently

22   meaningful argument, then it seems to me it follows a fortiori,

23   as you would say, that under 548 the burden is on the

24   defendant.

25             MR. HARRIS:  I wouldn't go that far, your Honor,

1   because I think if you look -- there is certainly other reasons

2   why the burden should stay where it normally stays, in the 548

3   (c) context.  I don't claim to be --

4          THE COURT:  I understand that, but what you're saying

5   is -- and I think it is not without some importance -- is that

6   the most natural way to read the language, the way this is set

7   up in 550 is that the burden is on the trustee if he wants to

8   recover, to show an absence of good faith, et cetera.

9          But the very language analysis that you're using, then

10  it applied equally to 548 comes out the other way.

11         MR. HARRIS:  I am not sure it comes out the other way,

12  but it is certainly silent.

13         THE COURT:  In 548, they carve out, they say in (a)(1)

14  what the trustee has to show, and then they, in (c), the

15  subject of the sentence in (c) is the transferee or obligee,

16  not the -- I mean the transferee or obligee, not the trustee.

17         Here's what the transferee or obligee has to do:

18  Show -- now, of course, I am imputing language, but anyway, has

19  to show that it takes for value, et cetera, et cetera.

20         Why I am raising all of this is one I think should

21  pause before thinking that the grammar of these sections, and

22  the way they were sort of written in the way we are talking

23  about now is really that important determining where the burden

24  lies.

25         MR. HARRIS:  Maybe I should move on to some other

 1    points beside the grammar of the section.

 2              THE COURT:  Go ahead.

 3              MR. HARRIS:  An additional reason why it makes

 4    practical sense here to have the trustee have the burden of

 5    proof for a subsequent transferee is because they're further

 6    removed from the debtor.  Courts have noted that, and this is

 7    from the Brestman case, a subsequent transferee is much more

 8    likely to be an innocent third party.  That is a reason, given

 9    it is very unlikely the subsequent transferee is actually going

10    to lack good faith, it is inefficient and unfair for a

11    subsequent transferee to have to go through the expense and

12    burden of discovery and then summary judgment in order to

13    finally show what you expect would normally be the case, that

14    they lack -- they, in fact, operate in good faith.

15              Instead it makes much more sense at least for a

16    subsequent transferee for them only to have to bear this burden

17    if the plaintiff can't at least allege facts that if true would

18    show bad faith.

19              Given the practical reality that normally a subsequent

20    transferee is going to be in good faith, it doesn't make sense

21    to put them through this effort, this effort we are sort of

22    sitting in this room here now.  If you look at the legislative

23    commentary on 550 (b), it is admittedly very thin but the

24    extent it exists, it suggests the reason 550 (b) was created,

25    and from the House report, was created to avoid litigation for

1   subsequent transferees.  That is only accomplished if this

2   element is actually part of the claim.

3         Making an affirmative defense doesn't help you avoid

4   litigation.  There is also as you know cases going both ways on

5   this point, obviously.

6         What I would say --

7         THE COURT:  I found that very helpful.

8         MR. HARRIS:  I did my best to go through the cases

9   that the trustee and SIPIC pointed to, and I don't think any of

10  them have any analysis why 550 (b) should be an affirmative

11  defense except for one and that is the Nordik Village case.  In

12  the Nordik Village case, the majority analysis was I believe a

13  flawed analogy to Section 549 where, in fact, it is an

14  affirmative defense.

15        The reason why the analogy is flawed, for Section 449

16  there is actually a bankruptcy rule, Rule 6001 that changes the

17  burden of proof to turn it into affirmative defense.  There is

18  no such rule for 550 (b).  I think that lack is important.  Now

19  Justice Kennedy's dissent points that out, as the Third Circuit

20  did in Brisnan, and pointed out the practical point I alluded

21  to earlier because of subsequent transferee is normally in good

22  faith, it doesn't make sense to impose this as an affirmative

23  defense on them.

24        So there are certainly cases going both ways.  If you

25  look at the text of the statute, to the extent it informs

```
 1    anything, and if you look at the reality of the subsequent

 2    transferee, they're much more likely to be innocent.  There is

 3    not a reason to change the normal rule, just the burden of

 4    proof is on the party seeking relief.

 5            THE COURT:  Thank you very much.  Is there anyone else

 6    who wants --

 7            MR. DUFFY:  May I add one other thing?

 8            THE COURT:  Yes.

 9            MR. DUFFY:  In this case, since we have already

10    established there is no duty at least preliminarily to

11    investigate on behalf of the defendants, if you acted just by

12    simply withdrawing your money from your redemptions, it is

13    almost presumed you did do it in good faith.  Possibly the

14    burden doesn't rest entirely on the trustee, but it may be a

15    shifting burden, in which case it is extremely difficult for a

16    defendant to prove a negative.  So that makes the burden that

17    much higher for a defendant to basically approach this in a

18    vacuum.

19            THE COURT:  All right.  Thank you.  Let me hear from

20    anyone else on the defense side who wants to be heard from?

21            MR. WILES:  I have a few points I would like to make.

22            Your Honor, first on the idea that we're talk about

23    here is just a matter of equities over who has a better

24    equitable claim to property, that is not what a fraudulent

25    transfer claim is.  We're talking here about an intent to
```

 1  defraud and/or delay creditors.  We are talking about a statute

 2  that is follow-up on the common law that is meant to address a

 3  very specific kind of wrongdoing, and by referring to good

 4  faith, it is meant to apply a remedy only to people who are

 5  culpable in that wrongdoing.  That is why you have a defense of

 6  good faith.  That is why the claim is limited to an intentional

 7  fraud.  We are not talking here about preferences or any kind

 8  of general equity notion.  We are talking about specific kind

 9  of wrongdoing.

10       THE COURT:  Obviously, I am predisposed towards that

11  argument, as you may gather from my comments earlier, but your

12  adversary in effect is arguing among other things that the

13  bankruptcy code changed that.  It created presumptions, it

14  created modes of addressing these difficult situations that

15  were different from the common law.

16       So what about that?

17       MR. WILES:  Well, yeah, I am getting to the burden.

18       I agree with you there is nothing about the wording of

19  this statute that you can say one way or the other is very

20  clear as to whether it is the trustee's burden or the

21  defendant's burden.  It doesn't say, for example, that a

22  defendant can avoid liability by proving, et cetera, okay?

23       I think what you have to do is you have to think about

24  the nature of the claim and the wrong in deciding what needs to

25  be alleged here.  Also to keep in mind that who has the burden

1  of proof depending on what the issue is not necessarily the

2  same as who has the initial burden of raising a plausible issue

3  about the point.

4       The reason I made the other point about this being a

5  liability for a particular kind of wrong is that you really

6  can't consider the wrong and the good faith issue apart from

7  each other.  That is really the whole point here is that unless

8  you have some culpability for the underlying wrong that is

9  being addressed, you're okay.

10      Now, if you think about it, what about from the

11 trustee's point of view?  Here I am, my client FEMA is a net

12 loser, never withdrew more than its initial withdrawals.  Now,

13 if the rule is, as I think it should be, that in pleading this

14 claim of intentional fraud, the trustee has to plead not only

15 that Madoff in the transfers he made to me somehow was

16 intending to defraud other people, which I question, but also

17 some plausible connection as to my lack of good faith that is

18 connected to that wrong.

19      Well, what the trustee alleges, as he has in his

20 papers, that the reason that was a wrong is that it allowed

21 FEMA to do better than other customers could do.  Great, I know

22 what the issue is, I can come into you, I can say, your Honor,

23 I know you're a big fan of Learned Hand.  You look at the

24 Irving Trust decision from 1933 where Judge Hand was on the

25 panel, 65 F.2d 409, it couldn't be clearer.  It addresses

1    exactly this point, neither an intent by Madoff to confer a

2    preference or my intent to receive one or knowledge it was

3    going to happen is enough to establish a fraudulent transfer

4    claim and I can make a motion to dismiss.

5        Great.  At least the trustee in that context has

6    framed the issue and has at least told me why is there some

7    point that I need to defend here?

8        If you take the point of view argued by the trustee in

9    SIPIC, where all they have to say is that Madoff had a bad

10   state of mind, and I don't know how the fact that he was

11   running a fraud necessarily translates to a fraudulent intent

12   in making a transfer to me, by the way, but if that is all they

13   need to say and everything else is may burden, I don't even

14   know how to contest that.  I don't know what I need to prove.

15   How can I even sustain that?  How can I litigate the issue?

16       I don't each know in what respect good faith is

17   relevant.  That does not make sense.  It especially does not

18   make sense for a trustee in a proceeding meant to protect

19   victims like me, to say that all I need to do is to say Madoff

20   was bad and the presumption is that you were bad, too, until

21   you prove otherwise, and I am not going to tell you or give you

22   a clue what it is I think you need to prove in order to show

23   you weren't a bad guy.  That is insane.  It doesn't make any

24   sense as a way of proceeding.

25       On the theory only a few people have been singled out

 1   for the joy of having to prove their good faith, it may be true

 2   that in terms of numbers of Madoff customers, if that is the

 3   case, I don't know how many individual customers he had, but

 4   only the trustee knows.  I would bet you that the trustee in

 5   terms of dollar amount of contributions to Madoff, that the

 6   trustee has accused at least 90 percent of the dollar amount of

 7   investors or withdrawals or lack of good faith.

 8        So what you've got here, if you accept the trustee's

 9   and SIPIC's point of view, the trustee, whose job is to protect

10   these investors, by the way, and SIPIC, who is supposed to be

11   their insurer and their guardian, are perfectly entitled,

12   almost even required to walk in and to say, to demonize every

13   single one of those villains and say you are presumed to be bad

14   till you can prove otherwise.

15        That should never be the standard in a SIPIC case.  We

16   are wasting huge amounts of money here and will be forced to

17   waste even huger amounts of money if we have to wait until

18   we're standing in front of a jury before we even know how are

19   we accused of being in bad faith so that we can prove

20   otherwise.  That makes no sense as a way of proceeding for

21   anybody.  I have two other points I wanted to make.

22        Mr. Duffy was talking about in terms of the willful

23   blindness standard, it is not enough to know how you measure

24   knowledge.  You have to be asking what is it I'm supposed to

25   know of.  The point that I think to be made there is the

1    trustee argues that there is any irregularity, there is

2    knowledge of insolvency, if there is a suspicion, if a wrong

3    date is put on a trade, for trying out loud.

4            If what I am being accused of is lack of good faith

5    for taking the fruits of a Ponzi scheme, which is what they say

6    over and over in their papers, well then what I should be

7    accused of being willfully blind of in order to show lack of

8    good faith is that I knew it was a Ponzi scheme.

9            If the reason you're going to tag me --

10           THE COURT:  Part of this, you are perfectly right that

11   the two issues of the standard and the burden are somewhat

12   intertwined, but I think you're being a little unfair.  The

13   trustee premised his complaints on his view, which I am

14   expressing a lot of skepticism about, but on his view what was

15   triggered was a duty to inquire.

16           And there were enough suspicious circumstances for

17   people like your clients at that time they then had a duty, he

18   says, to turn around and make inquiries and -- so you do know

19   what he is accusing of you under his theory.  The point you're

20   making, which I think s much to commend it, is that if instead

21   the standard is the one that you're espousing, willful

22   blindness, then his complaints don't really tell you what it is

23   that you did wrong because then there is no duty of inquiry.

24           Rather it is the allegation has to be that you knew

25   this was a fraud or you knew -- excuse me -- you knew there was

1  a high probability it was a fraud and then turned away rather

2  than find outing for sure.

3          MR. WILES:  Right.  One other point?

4          THE COURT:  Go ahead.

5          MR. WILES:  In addition to how you measure knowledge,

6  what is it you need to know?  Knowledge isn't the only answer

7  here.  We keep talking about knowledge as though we are only

8  talking about it at the time of the investment.  That is not

9  what the trustee is claiming.

10          He is claiming that people who had no idea what was

11  going on, but who should have learned afterwards that there was

12  something wrong, that it was a lack of good faith for those

13  people to take their money out.  That doesn't make any sense.

14          If you're a fraud victim and you discover you're a

15  fraud victim, it can't be the case that good faith requires you

16  to leave your money in the hands of the guy who is conducting

17  the fraud.  How can that possibly be the answer?

18          So in addition to how you measure knowledge, what is

19  it you need to know about?  You have to think about well even

20  if you know --

21          THE COURT:  No, I think that is a little unfair to the

22  trustee.  His argument, as I understand it, is it is not that

23  you should not take or it is not that you should give it back

24  to the fraudster, it is that you now take with the, in effect,

25  qualification that someone who is recovering on behalf of the

1    estate as a whole may have a better claim to those monies than

2    you do, that that is what his argument is on this point.

3              MR. WILES:  What he is saying, it is bad faith to take

4    the money, that is what he is saying.  I don't know how you,

5    how you equate that with anything other than that good faith

6    somehow requires you to just sit there, not take your money and

7    let things go on.

8              The irony of this, what the trustee says --

9              THE COURT:  No, no.  Maybe I am not hearing the answer

10   to my question.  This is not a perfect analogy at all, but you

11   see $100.00 bill lying there on the couch.  You believe that it

12   has been abandoned and you can take it as the first finder, but

13   then before you're about to take it, you become aware that

14   someone is claiming that it was stolen from them.

15             Well, you may still take it because it may turn out

16   that that person is just making it up or there is no basis to

17   believe it, but you have a realization that you may not keep

18   that hundred dollars forever.  Someone may come after you

19   representing that guy who said it was stolen from him and say

20   hey, you sort of knew that or there was reason that you had to

21   believe that.

22             So I think that's -- the trustee can speak for

23   himself, but I think that is the argument he is making.

24             MR. WILES:  Let me clarify what I am trying to say.

25             If you're talking about I took a briefcase that had

1    your Honor's name on it, all right, I understand the point and

2    talking about stolen property.  Stolen property, as the words

3    are tossed around occasionally in this case, are an analogy,

4    not a description of what happened because none of the assets

5    that Madoff had, and he had million of dollars at all times, it

6    wasn't like there were dollars that had individual customer's

7    names on them.

8         The trustee in SIPIC both acknowledge my clients had

9    just as much right to what Madoff had as what anybody else had.

10   We're not talking about stolen property.  We are talking about,

11   as becomes clear in their briefs, whether a preference was

12   obtained, whether when my customers who were net, my clients

13   who were net losers, when they obtained withdrawals, the

14   trustee says you did better than other people.

15        Well, if you're a creditor and you think somebody is

16   committing fraud, that is exactly what you're supposed to do.

17   You're supposed to go in and get your money back.  To argue

18   that you are somehow acting in bad faith for doing so just

19   because there are other potential victims is just wrong.  The

20   Sharp case says that is wrong.  All the other cases that we

21   have cited you say that is wrong.

22        The cases have recognized for years that if you're a

23   creditor entitled to collect a debt, you have a purpose of your

24   own to serve.  If that is all you do, you have acted in good

25   faith.  You have only acted with a lack of good faith if you do

1    something else to assist the debtor in defrauding other

2    creditors.

3           If you know that you're getting a preference, that is

4    all you know, that is not a lack of bad faith.  That is exactly

5    what the Irving Trust decision says, exactly what the Sharp

6    decision says, both Second Circuit decisions.  They couldn't be

7    clearer.

8           THE COURT:  Thank you very much.  Who else wants to be

9    heard?

10           MR. LIPSCHITZ:  I have two mall points on behalf of

11    the leverage providers.

12           As your Honor knows, as we made clear in our briefs,

13    none of the leverage providers, none of the allegations in the

14    complaints against the leverage providers come anywhere close

15    to alleging that any of the leverage providers had acted with

16    willful blindness or reached a subjective judgment, as your

17    Honor described earlier, of a high probability that Madoff was

18    running a Ponzi scheme.

19           That is not an accident because the allegations in the

20    complaint make it clear why it is implausible than any leverage

21    provider would provide leverage with the subjective belief that

22    Madoff was running a Ponzi scheme.  The way these transactions

23    work and as is alleged in the complaint, is that none of the

24    leverage providers stood to benefit from any appreciations of

25    the feeder funds to which they permitted third parties to get

1     leverage in making their investments.

2          The only benefit that the leverage providers are

3     alleged to have received are the small feeds associated with

4     these transactions.  It is simply implausible that they then

5     hedge the leverage they provided by becoming investors in these

6     feeder funds.  As a result, because they were perfectly hedged,

7     and that is what is alleged in the complaints, whether the

8     feeder fund appreciated in value, they would not have benefited

9     from that appreciation.

10         It seems, on the other hand, if the funds declined in

11    value, they would lose the amount of leverage that they

12    provided.  It is simply implausible that in an effort to make a

13    small, nominal interest rate, which is what the leverage

14    providers benefited from, they would have put hundreds of

15    millions of dollars at risk, which is in fact what happened in

16    most if not all of the leverage providers are not losers who

17    lose hundreds of millions of dollars.

18         The second point is that in this particular case, the

19    complaints also establish value, something that we explained in

20    our briefs and something which is not responded to in either

21    SIPIC's opposition.  In fact, if there is anything to be said

22    there, they concede to the extent that the money that the

23    leverage providers drew back was principal, they haven't

24    established value.  For those reasons, the complaint against

25    the leverage providers should be dismissed.

```
 1              THE COURT:  Thank you very much.  Anyone else want to

 2     be heard on the defense side?

 3              Okay.  Let me hear a final word from the trustee.

 4              MR. WARSHAVSKY:  Unfortunately, more than one word.

 5              I think I would start, your Honor, just by -- I know

 6     in the order, when we submitted the order to your Honor, we

 7     were clear on this.  To the extent that this is now a motion to

 8     dismiss, we would ask for the right to replead because to an

 9     extent the standard has been changed.

10              THE COURT:  Yes, yes, totally right.

11              MR. WARSHAVSKY:  Going to just a few points, Mr. Wiles

12     discussed it, a client becoming aware of a fraud, when it

13     became aware and pulled out, these are inherently factual

14     issues.  I don't think any of that was anything we dealt with

15     in the complaints.  I think the scenario that he provided to

16     you is a pure hypothetical.  I don't believe that any of our

17     complaints talk about somebody discovering a fraud, not knowing

18     it was a fraud, discovering it was a fraud and pulling all

19     their money out.  I am may be wrong.

20              THE COURT:  No, because you thought the standard was

21     different.

22              MR. WARSHAVSKY:  Right.

23              THE COURT:  I understand that completely.  That is,

24     among other reasons, why under any set of circumstances it

25     would be imperative that you be given an opportunity to
```

1   replead.

2       If you had a good-faith basis for believing the

3   standard was X when you filed your complaints, and the court

4   determines that the other standard is Y, then if you can, you

5   should be given the opportunity to replead to Y.  You may not

6   have the facts that would warrant your repleading to Y.  That

7   is a different question.

8      MR. WARSHAVSKY:  That is when I get back to the

9   pleading standard.  The trustee comes in as a stranger to this.

10   That is I think why the bankruptcy code is set up the way that

11   it is.

12       Your Honor read from 548, and I think 548 is clear

13   because it starts with the presumption that the trustee can

14   recover, and when you look to 548 (c), it talks about except to

15   the extent a transfer is under the other sections, where the

16   transferee wouldn't have this defense, in particular look at

17   547 which is a preference statute, all right, and there good

18   faith or value doesn't matter for preference.  Preference, the

19   trustee just has the option to pull back.

20      A trustee might know the value component ahead of time

21   but may not as well.  Here where there are books and records

22   that a trustee can work from, a trustee may be able to.  In a

23   situation where Mr. Madoff did, for instance, transfer out a

24   ring or something like that, the trustee wouldn't know what the

25   value is until after the complaint.  The defendant would have

1 | to come forward and show value.

2 |      Likewise, good faith, the trustee certainly has

3 | alleged facts.  We believe that is above and beyond what the

4 | trustee last to allege, what a trustee in bankruptcy would, and

5 | as the trustee comes in as a stranger in the relationship

6 | between the parties.

7 |      I would then turn to 550 because we spoke about

8 | burden.  It is important to remember 550 is a recovery statute,

9 | and my adversary read from 550.  550 covers both initial

10 | transfers and subsequent transfers.  550 (a)(1) talks about the

11 | initial transferee.

12 |      THE COURT:  You're saying it would be kind of strange

13 | to say that the burden should go one way under 550 (a)(1) and

14 | the other way 550, really would be under (b), but the burden

15 | should turn on whether it is an initial or subsequent

16 | transferee when they're both, so far as 550 is concerned,

17 | glommed together.

18 |      MR. WARSHAVSKY:  Correct.  That is because it is a

19 | recovery statute, and if we look to 550 (b), 550 (b) actually

20 | has three components, and I know we discussed it in our paper.

21 |      The first component, value, which is not an issue for

22 | today.  The second component, good faith.  The third component

23 | is without knowledge of the voidability of the transfer

24 | avoiding.  How could a trustee ever know that a defendant,

25 | unless a defendant is stupid enough to publicize ahead of time,

 1    hey, I think the debtor is about to go insolvent, I'm going to

 2    try and collect money, how would a trustee ever know that ahead

 3    time?   How could a trustee ever meet that standard ahead of

 4    time?

 5                    (Continued on next page)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          The recovery is presumed unless the defendant can come

2     back with the value component, the good faith component, and

3     without knowledge.  That conjunction there means that all three

4     of those conditions must be met for the transfer not to be

5     avoided, for that property not to be recovered.

6          THE COURT:  Let me make sure how this plays out.

7          MR. WARSHAVSKY:  Sure.

8          THE COURT:  You bring a claim under 550.  Under your

9     view that the burden is on the defendant to raise good faith as

10    a defense, they put in an affidavit saying, we had no knowledge

11    of any fraud, there was nothing about the situation that ever

12    led us to believe there was a fraud, we didn't know X, we

13    didn't know Y, we didn't know Z.  You come back and say, well,

14    we have evidence that they did know X or Y or Z or at least

15    knew there was a high probability of it, here's our evidence.

16         I understand your argument for saying they should have

17    the burden of going forward, which is the way I just described

18    it.  But now they've gone forward and produced an affidavit and

19    maybe records and other things, all of which show that as far

20    as they were concerned, this had all the indicia of an innocent

21    transfer, without any knowledge of anything wrongful on the

22    part of the transferor.  You have come back with evidence that

23    they did have such knowledge.

24         Now the case goes to trial.  Who bears the ultimate

25    burden on this issue, on the good faith issue?  Is it their

 1   burden to establish that they acted in good faith?  Is it your

 2   burden to establish that they failed to act in good faith?  All

 3   the discussion this evening has largely turned on who would

 4   have the initial reason to go forward.  OK, that maybe just

 5   relates to the burden of going forward.

 6       Now we are talking about the burden on the merits.

 7   Who has that?  The arguments you're making, and frankly the

 8   arguments they were making, don't seem to me to answer that one

 9   way or the other.

10       MR. WARSHAVSKY:  I think that the statute talks about

11   good faith.  I can tell you that we wouldn't take a case to

12   trial if we were going to allege that the defendant acted in

13   good faith.  I think that the defendant has to come forward and

14   present credible evidence, whether at summary judgment --

15       THE COURT:  Typically spoken of when we are talking

16   about a burden of going forward, they have to put up prima

17   facie evidence of it.  Despite all the stuff I heard from their

18   side about how difficult that would be, actually I think it

19   would be very easy.  Sure, it would be asserting negatives, but

20   they are the negatives that any innocent person would find easy

21   to assert:  I had no knowledge of anything improper, I wasn't

22   on notice, blah-blah-blah.  Now they have satisfied the burden

23   of going forward because they have presented through a sworn

24   affidavit a prima facie case of their good faith.

25       MR. WARSHAVSKY:  That's right.

```
 1            THE COURT:  Now we go to trial.  I thought one of the

 2   strongest arguments they made is that in the default position

 3   as to an element of the claim, it is on the plaintiff.

 4            MR. WARSHAVSKY:  Correct.

 5            THE COURT:  Now shouldn't it be the plaintiff's

 6   obligation to show that they lack good faith?

 7            MR. WARSHAVSKY:  If it were an element of the claim, I

 8   don't think I could come to a different result.  Our position

 9   has been an affirmative defense and that the defendants would

10   have the burden at the beginning, and then it is up to the

11   plaintiff to rebut that.

12            THE COURT:  Why should it be considered an affirmative

13   defense in the way you're talking about?  Of course, to call it

14   an affirmative defense is to beg the question.

15            MR. WARSHAVSKY:  Right.

16            THE COURT:  They are asserting good faith.  Why isn't

17   it natural, if you're disputing that, for you to have the

18   burden of saying, baloney, here is the proof that they had

19   fraudulent knowledge or were willfully blind or whatever?

20            MR. WARSHAVSKY:  I think the answer to that is

21   because -- you're right, it is somewhat of a tautology for me

22   to come back and say it is an affirmative defense.  I

23   understand that.  But the statute speaks in terms of good

24   faith.  I think ultimately if the statute said that it was bad

25   faith, perhaps that would be the trustee's burden to prove bad
```

1    faith.

2             THE COURT:  They would respond, at least as to 550,

3    and say the language of the statute is the trustee may not

4    recover from a transferee who takes in good faith.  That

5    introduces some ambiguity into the way you're approaching it.

6             MR. WARSHAVSKY:  Except remember this is a recovery

7    statute.  It's a recovery statute.  The trustee comes with the

8    fact that this is already established as property of the

9    estate.  The defendants are in possession of the property and

10   want to keep it.  Therefore, I think that is why it is their

11   burden to show that --

12            THE COURT:  That is the argument you started with an

13   hour ago.

14            MR. WARSHAVSKY:  At least I'm consistent.

15            THE COURT:  It's not a frivolous argument.  I just

16   wanted to explore it all a little bit more.

17            I will take this matter under advisement.  I thank all

18   counsel for excellent arguments.

19            MR. WARSHAVSKY:  Your Honor, I'm sorry.  If I could

20   make one other point because I didn't get to make it earlier?

21            THE COURT:  Go ahead, yes.

22            MR. WARSHAVSKY:  I did talk earlier about and I did

23   want to bring your attention to 550.  It is in our papers, but

24   I would be remiss if I didn't raise it here again.

25            Congress does say in 550(b)(1) there is a knowledge

1    component.  If the defendants' interpretation of what good

2    faith or lack of good faith is, these two pieces, in good faith

3    and without knowledge of the voidability of the transfer, would

4    ultimately be the same thing; you would have to read the

5    statute as being redundant.

6          MR. HARRIS:  Your Honor, could I be heard very briefly

7    just on that point?

8          THE COURT:  Sure.

9          MR. HARRIS:  Chris Harris.  I think the cases and the

10   commentary are pretty persuasive and overwhelming that in fact

11   the knowledge prong is an illustration of what lack of good

12   faith means.  Every case that has analyzed this has said this.

13   The trustee doesn't cite any cases that say in fact they mean

14   something different.  The committee that recommended these

15   changes said it was an illustration of what good faith meant.

16   Collier's, when it summarizes the case law, says the same

17   thing.  So I don't think this changes the analysis at all.

18         It is true that knowledge and good faith might be more

19   in the hands of a subsequent transferee than in the hands of

20   the trustee, but that doesn't end the inquiry.  There are lots

21   of kinds of claims where a plaintiff has the burden of proof on

22   the state of mind of the defendant, such as the securities

23   laws.

24         The mere fact that we have an illustration of what

25   good faith means and that lack of good faith would mean

1  knowledge of the voidability, that doesn't change the analysis

2  here.  They still haven't articulated a reason why it makes

3  sense to make a subsequent transferee who is presumed to be

4  innocent go through the burden of all this, going through new

5  discovery, before it can finally get out of this case.

6         THE COURT:  I need to go back and look at more of the

7  legislative history.  I thought Congress was making a

8  distinction here.  Without knowledge of the voidability of the

9  transfer avoided refers to one specific kind, this may be your

10 point, one specific kind of good faith, but good faith

11 encompasses a lot more.  This is not the only form that good

12 faith can take.

13        MR. HARRIS:  That is a much better way of articulating

14 what I meant to say.  It's an illustration of what lack of good

15 faith would be.

16        THE COURT:  Go ahead.

17        MR. WARSHAVSKY:  Your Honor, I will go back to the

18 plain meaning of the statute.  There is a conjunction here.

19 There is nothing that says "for example."  This is a tripartite

20 test.  The fact of the matter is the defendants did cite one

21 case where it was treated similarly, I will grant you that.  We

22 cited cases as well.

23        However, the plain meaning, if nothing else, these

24 arguments with you have been clear about is your notice and

25 your articulation of the trend to look at the plain language.

 1   Nothing can be plainer here than that there are three

 2   requirements for a subsequent transferee to keep that transfer.

 3   That is value, good faith, and a lack of knowledge of the

 4   voidability of the transfer.

 5             THE COURT:  All right.  Those are all good points from

 6   both sides.  I will have to figure that one out, too.  Again I

 7   thank all counsel.  This matter is adjourned.

 8             (Adjourned)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25