# EXHIBIT A



Neutral
As of: September 3, 2014 2:55 PM EDT

# Picard v. Fairfield Greenwich Ltd.

United States Court of Appeals for the Second Circuit
October 10, 2013, Argued; August 8, 2014, Decided
Docket No. 13-1289 (consolidated with 13-1392) Docket No. 13-1785

**Reporter:** 2014 U.S. App. LEXIS 15274; 2014 WL 3882481

Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, Appellant, v. Fairfield Greenwich Limited, et al., Defendants-Appellees, Securities & Investment Co. Bahrain, Harel Insurance Co., Ltd., AXA Private Management, St. Stephen's School, Pacific West Health Medical Center, Inc. Employee's Retirement Trust, Lead Plaintiffs-Appellees.Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, Appellant, Securities Investor Protection Corporation, Intervenor, v. Eric T. Schneiderman, Bart M. Schwartz, Ralph C. Dawson, J. Ezra Merkin, and Gabriel Capital Corporation, Appellees.

**Prior History:** The trustee charged with recovering assets on behalf of creditors and customers of Bernard L. Madoff and his investment firm sought to block the settlement of three lawsuits brought against third parties, which the trustee argued would undermine his ability to recoup fraudulent transfers executed by the debtor. In two separate cases, which we hear in tandem on appeal, the district court (Victor Marrero and Jed S. Rakoff **[*1]** , Judges) dismissed the trustee's claims for declaratory and injunctive relief. Because we conclude that these claims fail on the merits, the judgments of the district court are AFFIRMED.

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC, 490 B.R. 59, 2013 U.S. Dist. LEXIS 43531 (S.D.N.Y., 2013)*

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC, 491 B.R. 27, 2013 U.S. Dist. LEXIS 55670 (S.D.N.Y., 2013)*

**Core Terms**

funds, Trustee's, settlements, Investor, district court, fraudulent conveyance, feeder, automatic stay, allegations, Securities, fraudulent conveyance action, fraudulent transfer, fraudulently, injunctive relief, liquidation, parties, bankruptcy court, transferred, non-debtor, provisions, invested, enjoin, orders, internal quotation marks, property of the estate, adversary proceeding, bankrupt estate, duties, void, preliminary injunction

**Case Summary**

**Overview**
HOLDINGS: [1]-Investors' lawsuits against "feeder funds" that channeled investments to a bankruptcy debtor's Ponzi scheme were not so intertwined with property of the bankruptcy estate as to be subject to the automatic stay under *11 U.S.C.S. § 362(a)*, as the third-party actions were not legally certain to have an adverse impact on estate property; [2]-The third-party actions were not fraudulent conveyance claims in disguise, as they were distinct from the trustee's fraudulent conveyance claims, so the actions did not fall within the scope of the stay on that basis; [3]-The court of appeals declined to determine which standard applied to a request for a preliminary injunction under *11 U.S.C.S. § 105(a)*, as the trustee could not establish that any harm to the bankruptcy estate from settlements of the third-party actions would be either immediate or likely.

**Outcome**
Judgment affirmed.

**LexisNexis® Headnotes**

Bankruptcy Law > Case Administration > Bankruptcy Court Powers

**HN1** See *11 U.S.C.S. § 105(a)*.

Bankruptcy Law > ... > Automatic Stay > Scope of Stay > General Overview

Bankruptcy Law > ... > Judicial Review > Standards of Review > De Novo Standard of Review

Bankruptcy Law > ... > Judicial Review > Standards of Review > Clear Error Review

Civil Procedure > Appeals > Standards of Review > Questions of Fact & Law

Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review

**HN2** The scope of the bankruptcy automatic stay is a question of law subject to de novo review. But because it is an axiom of appellate procedure that the court of appeals reviews questions of fact for clear error, the court of

RICHARD LEVY

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 3 of 12

Page 2 of 11

2014 U.S. App. LEXIS 15274, *1

appeals reviews the factual findings underlying a legal determination for clear error only. An essentially factual component of a mixed question of fact and law is subject to review for clear error.

> Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
>
> Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions

**HN3** A court of appeals reviews the denial of a preliminary injunction for abuse of discretion. A district court abuses its discretion when its decision rests on an error of law or a clearly erroneous factual finding, or when its decision cannot be located within the range of permissible decisions.

> Civil Procedure > Appeals > Standards of Review > De Novo Review
>
> Governments > Legislation > Interpretation
>
> Securities Law > Investment Advisers > Advisers, Brokers & Dealers > General Overview

**HN4** A court of appeals reviews a court's interpretation of the Securities Investor Protection Act de novo, considering the views of the Securities Investor Protection Corporation only to the extent that they have the power to persuade.

> Bankruptcy Law > ... > Automatic Stay > Scope of Stay > General Overview
>
> Bankruptcy Law > ... > Automatic Stay > Violations of Stay > Void & Voidable Actions

**HN5** *11 U.S.C.S. § 362*—the automatic stay—protects bankruptcy estates by restraining any formal or informal action or legal proceeding that might dissipate estate assets or interfere with the trustee's orderly administration of the estate. So central is the *§ 362* stay to an orderly bankruptcy process that actions taken in violation of the stay are void and without effect.

> Bankruptcy Law > ... > Claims Against Debtors > Judgments & Rulings > Enforcements
>
> Bankruptcy Law > ... > Automatic Stay > Scope of Stay > Claims Against Estate Property
>
> Bankruptcy Law > ... > Automatic Stay > Scope of Stay > General Overview

**HN6** Provisions of *11 U.S.C.S. § 362* stay the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. *11 U.S.C.S. § 362(a)(1)*, *(3)*, *(6)*.

> Bankruptcy Law > Estate Property > Contents of Estate > Property Recovered by Trustee
>
> Bankruptcy Law > ... > Avoidance > Fraudulent Transfers > General Overview

**HN7** Fraudulently conveyed property is not to be considered property of a bankruptcy estate until it is recovered.

> Bankruptcy Law > ... > Automatic Stay > Scope of Stay > Claims Against Estate Property
>
> Bankruptcy Law > ... > Automatic Stay > Scope of Stay > General Overview

**HN8** In 48th St. Steakhouse, Inc. v. Rockefeller Grp. Inc., the U.S. Court of Appeals for the Second Circuit reasoned that if action taken against a non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay. But an adverse impact on a debtor that occurs by operation of law is distinct from one which the trustee merely argues is, as a factual matter, likely to occur. 48th St. Steakhouse has been applied to bar an action that would have the legal effect of diminishing or eliminating property of the bankrupt estate. The Second Circuit declines to extend its holding in 48th St. Steakhouse to automatically stay actions taken against third parties that are only factually likely, as opposed to legally certain, to impact estate property.

> Bankruptcy Law > ... > Automatic Stay > Scope of Stay > General Overview
>
> Bankruptcy Law > ... > Avoidance > Fraudulent Transfers > General Overview

**HN9** Actions that are fraudulent conveyance claims in disguise fall within the scope of the automatic stay. *11 U.S.C.S. § 362(a)(1)*.

> Bankruptcy Law > ... > Avoidance > Fraudulent Transfers > General Overview

**HN10** A fraudulent conveyance (or fraudulent transfer) action seeks to recover or avoid transfers that wrongfully reduce the pool of assets available to creditors. Under the Bankruptcy Code, a transfer may qualify as "fraudulent" either because it was made with actual intent to hinder, delay, or defraud a creditor, *11 U.S.C.S. § 548(a)(1)(A)*, or because the transfer was made in exchange for less than the "reasonably equivalent value" of the property transferred and other statutorily specified conditions obtained, *§ 548(a)(1)(B)*.

> Bankruptcy Law > ... > Avoidance > Fraudulent Transfers > General Overview
>
> Bankruptcy Law > Estate Property > Avoidance > Transferee Liabilities & Rights

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 4 of 12

Page 3 of 11

2014 U.S. App. LEXIS 15274, *1

Bankruptcy Law > ... > Automatic Stay > Scope of Stay > Claims Against Debtors

**HN11** Although an action for fraudulent conveyance is brought against the transferee, the fraud is the debtor's. Absent a claim against the debtor, there is no independent basis for the action against the transferee. Thus, a bankruptcy trustee may recover transferred property or its value from the person to whom it was originally conveyed without showing that the transferee was culpable in any fraud. *11 U.S.C.S. § 550(a)(1)*. This focus on the debtor explains why a third-party action to recover fraudulently transferred property is properly regarded as undertaken to recover a claim against the debtor and subject to the automatic stay pursuant to *11 U.S.C.S. § 362(a)(1)*.

Civil Procedure > ... > Pleadings > Complaints > General Overview

**HN12** One complaint is not duplicative of another solely because it recites some or all of the same facts.

Bankruptcy Law > ... > Automatic Stay > Scope of Stay > General Overview

**HN13** A bankruptcy stay clearly cannot be extended to a non-debtor where the non-debtor's liability rests upon his own breach of duty.

Bankruptcy Law > Estate Property > Avoidance > Limitations on Trustee Powers

**HN14** When creditors have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so. Nowhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties on behalf of creditors. An injury is said to be "particularized" when it can be directly traced to the third party's conduct.

Bankruptcy Law > Case Administration > Bankruptcy Court Powers

Bankruptcy Law > Administrative Powers > Automatic Stay > General Overview

**HN15** Whether or not claims are subject to the terms of the automatic stay, a bankruptcy court has jurisdiction over any suit that might have any "conceivable effect" on the bankruptcy estate. *11 U.S.C.S. § 105(a)* of the Bankruptcy Code empowers a court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the title. *11 U.S.C.S. § 105(a)*. Thus, a court has the power pursuant to *§ 105(a)* to enjoin claims against a non-debtor third party where those claims are derivative, or otherwise pose the specter of direct impact on the res of the bankrupt estate. Courts consistently have found that *§ 105* may be used to stay actions against non-debtors even where *11 U.S.C.S. § 362* otherwise would not provide such relief, recognizing that *§ 105* grants broader authority than *§ 362*. The question is, essentially, whether the direct result of a suit against a third party will be the removal of assets from the bankruptcy estate.

Civil Procedure > Remedies > Injunctions > General Overview

**HN16** A court's authority to issue an injunction is only the first step of the inquiry; the court must also be satisfied that the party seeking injunctive relief is entitled to it.

Bankruptcy Law > ... > Avoidance > Fraudulent Transfers > General Overview

Bankruptcy Law > Estate Property > Contents of Estate > Property Recovered by Trustee

Securities Law > Investment Advisers > Advisers, Brokers & Dealers > General Overview

**HN17** Assets targeted by a fraudulent conveyance action do not become property of the debtor's estate under the Bankruptcy Code until the trustee obtains a favorable judgment. The Securities Investor Protection Act does not alter this rule.

Securities Law > Investment Advisers > Advisers, Brokers & Dealers > General Overview

Bankruptcy Law > ... > Avoidance > Fraudulent Transfers > General Overview

Bankruptcy Law > Liquidations > General Overview

Bankruptcy Law > Estate Property > Contents of Estate > Property Recovered by Trustee

**HN18** A Securities Investor Protection Act (SIPA) trustee has no greater legal interest in unadjudicated fraudulent transfers than does a trustee in bankruptcy. The Act merely engrafts special features onto the familiar framework of a liquidation proceeding under Chapter 7 of the Bankruptcy Code, *15 U.S.C.S. § 78fff(b)*, to address the concerns peculiar to the orderly liquidation of a brokerage. Just as in an ordinary, non-SIPA bankruptcy, a SIPA trustee stands in the shoes of a liquidating firm. As a general rule, SIPA vests trustees with the same powers and title with respect to the debtor and the property of the debtor as a trustee in a case under Title 11. But because money held by a broker on behalf of its customers is not the broker's property under state law, it would not be recoverable by a trustee in an ordinary bankruptcy. SIPA circumvents this problem through a statutorily created legal fiction that confers standing on a SIPA trustee by treating customer property as though it were "property of the debtor" in an ordinary liquidation. *15 U.S.C.S. § 78fff-2(c)(3)*. The meaning, purpose, and effect of this provision are in no way inconsistent with the rule adopted in Colonial Realty. The limited purpose of SIPA *§ 78fff-2(c)(3)* is to create this legal fiction.

Bankruptcy Law > Case Administration > Bankruptcy Court Powers

**HN19** It is an extraordinary exercise of discretion to use *11 U.S.C.S. § 105* to stay a third-party action not involving

RICHARD LEVY

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 5 of 12

Page 4 of 11

2014 U.S. App. LEXIS 15274, *1

the debtor, and the mere possibility that a third-party action will have some effect on a debtor's estate is not enough to satisfy either the Queenie or Winter standards.

**Counsel:** DAVID J. SHEEHAN, Baker & Hostetler LLP, New York, NY (Deborah H. Renner, Tracy L. Cole, Keith R. Murphy, Baker & Hostetler LLP, New York, NY; David B. Rivkin, Jr., Lee A. Casey, Mark W. DeLaquil, Andrew M. Grossman, Baker & Hostetler LLP, Washington, DC, of counsel), for Appellant Irving H. Picard.

STUART H. SINGER, Boies, Schiller & Flexner LLP, Ft. Lauderdale, FL (David A. Barrett, Howard L. Vickery, II, Boies, Schiller & Flexner LLP, New York, NY; Robert C. Finkel, Wolf Popper LLP, New York, NY; Victor E. Stewart, Lovell Stewart Halebian Jacobson LLP, New York, NY, of counsel), for [*2] Lead Plaintiffs-Appellees Representative Anwar Plaintiffs.

MARC G. CUNHA, Simpson Thacher & Bartlett LLP, New York, NY (Peter E. Kazanoff, Jeffrey L. Roether, Jeffrey E. Baldwin, Nicholas S. Davis, of counsel), for Defendants-Appellees Fairfield Greenwich Limited, et al.

BRIAN SUTHERLAND, for Eric T. Schneiderman, Attorney General of the State of New York, New York, NY (James C. McCarroll, Jordan W. Siev, Michael J. Venditto, Reed Smith LLP, New York, NY; Judith A. Archer, David L. Barrack, Jami Mills Vibbert, Fulbright & Jaworski LLP, New York, NY, of counsel), for Appellees Eric T. Schneiderman, Bart M. Schwartz, Ralph C. Dawson.

ANDREW J. LEVANDER, Dechert LLP, New York, NY (Neil A. Steiner, of counsel), for Defendants-Appellees J. Ezra Merkin and Gabriel Capital Corporation.

NATHANAEL S. KELLY, Washington, DC (Josephine Wang, Kevin H. Bell, of counsel), for Intervenor Securities Investor Protection Corporation.

**Judges:** Before: SACK, CHIN, and DRONEY, Circuit Judges.

**Opinion by:** SACK

**Opinion**

S<small>ACK</small>, *Circuit Judge*:

Irving H. Picard (the "Trustee"), trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and of the bankruptcy estate of Bernard L. Madoff, initiated adversary proceedings seeking [*3] to block the settlement of three lawsuits, none of which involved BLMIS or the Madoff estate as a party. The suits in question were brought by and on behalf of investors in so-called "feeder funds"—funds that channeled investments to Madoff's Ponzi scheme—against the funds themselves and other persons and entities affiliated with them. The Trustee asserts that the settlements in these cases would hinder his ability to recoup fraudulent transfers he alleges BLMIS made to the settling defendants. In two separate proceedings, which we review in tandem on appeal, the district court (Victor Marrero and Jed S. Rakoff, *Judges*) dismissed the Trustee's claims for declaratory and injunctive relief. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 490 B.R. 59 (S.D.N.Y. 2013)* (Victor Marrero, *J*.); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 491 B.R. 27 (S.D.N.Y. 2013)* (Jed S. Rakoff, *J*.). Because we conclude that the Trustee is not entitled to declaratory relief and that the district court did not abuse its discretion in denying his requests for injunctive relief, we affirm.

**BACKGROUND**

The facts of the infamous Ponzi scheme orchestrated by Bernard Madoff have been set forth in detail elsewhere. *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC), 424 B.R. 122, 125-33 (Bankr. S.D.N.Y. 2010)*. We repeat them here only insofar as we think necessary to explain our decision in this appeal. The scheme's success depended in part on [*4] the efforts of independent investment managers who channeled billions of dollars through financial vehicles—so-called "feeder funds"—that invested largely or exclusively in BLMIS. While the money flowed from BLMIS, feeder fund investors enjoyed strong (albeit illusory[1]) returns, and the funds' managers collected substantial fees as a result. After the discovery of the fraud and Madoff's December 2008 arrest by federal authorities in connection with it, the funds collapsed, leaving their investors with the specter of huge losses and precipitating litigation against the funds and their managers, auditors, custodians, and others. While investors pursued causes of action for, among other things, fraud and breach of fiduciary duty, the Trustee filed his own legal actions on behalf of the BLMIS estate, seeking

---

[1] The returns were "illusory" because they were not, in fact, returns on investments; they were payments made [*5] by BLMIS in order to maintain the appearance of success and further the fraud. The use of later-acquired funds to pay off earlier investors is essential to the pyramid-like structure of a Ponzi scheme. *See, e.g., Gowan v. The Patriot Grp., LLC (In re Dreier LLP), 452 B.R. 391, 424-25 (Bankr. S.D.N.Y. 2011)*.

RICHARD LEVY

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 6 of 12

Page 5 of 11

2014 U.S. App. LEXIS 15274, *4

to "claw back"[2] (i.e., obtain the return of) money Madoff had paid out as "returns" to the funds. Where, as in the cases here on appeal, feeder fund investors sought assets from the same entities or individuals as did the Trustee, the risk arose that their claims might conflict.

*The Feeder Fund Litigation*

a. The Anwar Action

In December 2008, a group of investors including Pasha S. Anwar (the "Anwar Plaintiffs") filed a class action on behalf of individuals and entities who invested in four feeder funds founded and operated by the Fairfield Greenwich Group (the "Anwar Action"). These funds had, in turn, invested most of the Anwar Plaintiffs' money with BLMIS. In their Second Consolidated Amended Complaint, filed on September 29, 2009, the Anwar Plaintiffs alleged various federal securities law violations, as well as common law tort, breach of contract, and quasi-contract causes of action against the funds, Fairfield Greenwich Group, and a number of affiliated [*6] individuals (collectively, the "Fairfield Defendants").[3] *See* Second Consolidated Amended Compl., *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM) (S.D.N.Y. filed Sep. 29, 2009), ECF No. 273. These defendants filed a motion to dismiss, which the district court denied in two separate opinions. *See Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 354, 356-57, 372 (S.D.N.Y. 2010)* (Marrero, *J*.) (holding that New York's Martin Act, *N.Y. Gen. Bus. Law §§ 352-359*, did not preempt common law causes of action); *Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 401-02 (S.D.N.Y. 2010)* (Marrero, *J*.) (concluding that the plaintiffs had standing to pursue individual, direct claims against the Fairfield Defendants on various legal theories).

Sometime in 2010, the plaintiffs and the defendants in the Anwar Action began settlement talks. These negotiations intensified in May 2012 while the parties proceeded with discovery, and culminated several months later with an agreement in principle among the parties. The parties then presented a proposed settlement agreement to the district court, which preliminarily approved it on November 30, 2012. The agreement contemplated a $50.25 million payment to the Anwar Plaintiffs by the Fairfield Defendants, [*7] and a $30 million escrow fund funded by the Fairfield defendants to support any future settlement or judgment amounts the Fairfield Defendants might pay the Trustee.

On November 29, 2012, the eve of the district court's preliminary approval of the parties' proposed agreement, the Trustee instituted an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York seeking to block the settlement (the "Anwar Stay Application"). *Picard v. Fairfield Greenwich Ltd.*, Adv. Pro. No. 12-2047 (Bankr. S.D.N.Y. filed Nov. 29, 2012). The Anwar Stay Application sought a declaration that the settlement and the Anwar Action itself violated the automatic stay provisions of the Bankruptcy Code and the Securities Investor Protection Act ("SIPA"), as well as one or more of the stay orders issued by the district court in connection with the Madoff liquidation,[4] and that the Anwar Action was therefore void *ab initio*. *Id*. ¶ 105. The Stay Application also contained a request that the bankruptcy court exercise its powers under *section 105(a) of the Bankruptcy Code*, *11 U.S.C. § 105(a)*,[5] to preliminarily enjoin the Anwar Action until the Trustee had completed his efforts to recoup the proceeds of specified alleged fraudulent transfers [*8] from the Fairfield Defendants. Anwar Stay Application, ¶¶ 108,

---

[2]  The terms "claw back" and "clawback" were apparently first used in this context by the Bankruptcy Court for the Southern District of New York in 2005. *See Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.), 333 B.R. 205, 227 (Bankr. S.D.N.Y. 2005)*. They first appeared in one of our opinions last year. *See Commodity Futures Trading Comm'n v. Walsh, 712 F.3d 735, 743-44, 755 (2d Cir. 2013)* (referring to "clawback actions" to recover funds from the "winners" in a Ponzi scheme).

[3]  The complaint also named as defendants professional service providers who audited, administered, or served as custodians of the funds.

[4]  In the principal case initiating the liquidation, the United States District Court for the Southern District of New York (Louis L. Stanton, *J*.) issued two orders cited by the Trustee, staying any interference with "any assets or property owned, controlled or in possession of" Madoff and BLMIS. Order, ¶ IV, *In re Bernard L. Madoff Investment Securities LLC*, Civ. 08-10791 (S.D.N.Y. Dec. 15, 2008), ECF No. 4; *see also* Partial Judgment on Consent, ¶ IV, *In re Bernard L. Madoff Investment Securities LLC*, Civ. 08-10791 (S.D.N.Y. Feb. 9, 2009), ECF No. 18.

[5]  The subsection reads in full:

> *HN1* The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 7 of 12

Page 6 of 11

2014 U.S. App. LEXIS 15274, *8

110. On February 6, 2013, the district court granted the Anwar Plaintiffs' motion to withdraw the reference to the bankruptcy court in the stay action. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 486 B.R. 579 (S.D.N.Y. 2013)*; *see28 U.S.C. § 157(d)*.

Pursuing a parallel strategy, the Trustee's counsel wrote to the court seeking to intervene in the Anwar Action directly. On March 7, **[*9]** treating this letter as a motion to intervene, the court denied it. The court also denied the Trustee's subsequent request to supplement the record.

On March 20, 2013, the district court issued one of the two decisions now before us on appeal, denying the Anwar Stay Application in its entirety and directing that the adversary proceeding be closed. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC., 490 B.R. 59 (S.D.N.Y. 2013)* (Marrero, *J.*) (the ″Anwar Stay Ruling″). Shortly thereafter, the court issued a final judgment and order accepting the settlement of the Anwar Action and dismissing the claims against the Fairfield Defendants with prejudice.

b. *People v. Merkin and Schwartz v. Merkin*

In April 2009, New York's Attorney General (the ″NYAG″) brought suit in New York state court claiming that Ezra Merkin and his investment company, Gabriel Capital Corp.—together, the ″Merkin Defendants″—had violated New York's Martin Act, its Executive Law, and its Not for Profit Corporation Law by making material misrepresentations and omissions to investors in several feeder funds. *See* Compl., *People v. Merkin*, No. 450879/2009 (N.Y. Sup. Ct. filed Apr. 6, 2009). Specifically, the NYAG's complaint alleged that Merkin breached his fiduciary duties to investors by collecting **[*10]** management fees ″while turning all, or a substantial portion, of [the investors'] funds over to Madoff and others.″ *Id*. ¶ 6. The NYAG also named the feeder funds themselves (the ″Merkin Funds″) as relief defendants.[6]*See* Am. Compl., *People v. Merkin*, No. 450879/2009 (N.Y. Sup. Ct. filed May 28, 2009).

In September 2010, Bart M. Schwartz, the receiver for two of the Merkin Funds, Ariel Fund Ltd. and Gabriel Capital, L.P. (both relief defendants in the NYAG's suit), also filed suit against the Merkin defendants in state court. *See* Compl., *Schwartz v. Merkin*, No. 651516/2010 (N.Y. Sup. Ct. filed Sept. 16, 2010). Schwartz's complaint alleged on behalf of fund investors that the Merkin Defendants had breached their fiduciary duties of candor and disclosure, fraudulently misrepresented the nature of the work performed by various investment managers, and collected exorbitant fees. *Id*. ¶¶ 1-14.

After several years of litigation, on June 13, 2012, the NYAG and Schwartz executed a joint settlement of their claims with the Merkin Defendants for $410 million. Several weeks later, the Trustee **[*11]** instituted an adversary proceeding (the ″NYAG Stay Application″) substantially similar to the Anwar Stay Application, seeking to enjoin and declare void the joint settlement and the underlying suits. *See* Compl., *Picard v. Schneiderman*, Adv. Pro. No. 12-1778 (Bankr. S.D.N.Y. filed Aug. 1, 2012). As Judge Marrero had done with respect to the Anwar Stay Application, Judge Rakoff withdrew the reference to the bankruptcy court. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 492 B.R. 133 (S.D.N.Y. 2013)*; *see28 U.S.C. § 157(d)*. On April 15, 2013, in the second of the judgments here on appeal, the court denied the NYAG Stay Application in its entirety and directed that the adversary proceeding be dismissed with prejudice and the case closed. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 491 B.R. 27 (S.D.N.Y. 2013)* (Rakoff, *J.*) (the ″NYAG Stay Ruling″).

*The Fraudulent Conveyance Litigation*

While the feeder fund litigation was in progress, the Trustee instituted actions against the Merkin Defendants and Merkin Funds and against the Fairfield Defendants alleging that they had received fraudulent conveyances from BLMIS. *See Picard v. Merkin*, Adv. Pro. No. 09-1182 (Bankr. S.D.N.Y. filed May 7, 2009); *Picard v. Fairfield Sentry Ltd*., Adv. Pro. 09-01239 (Bankr. S.D.N.Y. filed May 18, 2009). In *Merkin*, the Trustee sought $33 million from the Ariel and Gabriel funds, and $460 million from a third fund and the Merkin Defendants. Although the Merkin Funds were ″net losers″ in Madoff's scheme, the Trustee sought the **[*12]** entire value of the transfers they received within the applicable ″claw-back period″ on the theory that the Merkin Defendants knew of the fraud. The allegations against the Fairfield Defendants were similar, but the amount sought was some $3.2 billion. Both cases are pending.

*The District Court Decisions*

The Trustee made nearly identical arguments in both stay application proceedings. He asserted that: (1) the feeder fund litigation and the proposed settlements implicated property of BLMIS and the Madoff estate within the meaning of the Bankruptcy Code's automatic stay provisions, *see11 U.S.C. § 362(a)(1)*, *(3)*, *(6)*, the SIPA, *see15 U.S.C. § 78eee(b)(2)(B)*, and two district court orders, and should therefore be declared void *ab initio*; (2) whether the feeder fund litigation implicated the automatic stay or not, a preliminary injunction under *section 105(a)* was appropriate; and (3) the Securities Investor Protection

---

[6] The Merkin Funds included Ascot Partners, L.P., Ascot Fund, Ltd., Ariel Fund, Ltd., and Gabriel Capital, L.P.

RICHARD LEVY

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 8 of 12

Page 7 of 11

2014 U.S. App. LEXIS 15274, *12

Act preempted the feeder fund litigation to the extent the actions interfered with the Trustee's ability to return funds to BLMIS customers. The district court, in each case, rejected all of the Trustee's arguments on the merits and ruled that the stay applications were barred in any event by laches. The Trustee appeals.

## DISCUSSION

### I. Standard [*13] of Review

*HN2* The scope of the automatic stay is a question of law subject to *de novo* review. *United States v. Colasuonno, 697 F.3d 164, 173 (2d Cir. 2012)*; *see also Fed. Deposit Ins. Corp. v. Hirsch (In re Colonial Realty Co.), 980 F.2d 125, 130 (2d Cir. 1992)*. But because ″[i]t is an axiom of appellate procedure that we review . . . questions of fact for clear error,″ we review the factual findings underlying a legal determination for clear error only. *United States v. Rajaratnam, 719 F.3d 139, 153 (2d Cir. 2013)*; accord *Guzzo v. Cristofano, 719 F.3d 100, 109 (2d Cir. 2013)* (concluding that an ″essentially factual″ component of mixed question of fact and law is subject to review for clear error (internal quotation marks omitted)).

*HN3* ″We review the denial of a preliminary injunction for abuse of discretion.″ *Louboutin v. Yves Saint Laurent Am. Holding, Inc.., 696 F.3d 206, 215 (2d Cir. 2012)* (internal quotation marks omitted). ″A district court abuses its discretion . . . when its decision rests on an error of law or a clearly erroneous factual finding, or when its decision cannot be located within the range of permissible decisions.″ *WPIX, Inc.. v. IVI, Inc., 691 F.3d 275, 278 (2d Cir. 2012)*, cert. denied, 133 S. Ct. 1585, 185 L. Ed. 2d 607 (2013).

Finally, *HN4* we review a court's interpretation of the SIPA *de novo*, considering the views of the Securities Investor Protection Corporation (″SIPC″) ″only to the extent that they have the power to persuade.″ *In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229, 234 (2d Cir. 2011)* (internal quotation marks and brackets omitted), *cert. dismissed*, 132 S. Ct. 2712, 183 L. Ed. 2d 65, *cert. denied*, 133 S. Ct. 24, 183 L. Ed. 2d 675, and 133 S. Ct. 25, 183 L. Ed. 2d 675 (2012).

### II. Denial of the Trustee's Request for Declaratory Relief

The Trustee argues that the Anwar and NYAG [*14] Actions are barred by the Bankruptcy Code's automatic stay and by two orders issued by the district court at the outset of the Madoff liquidation (the ″Stay Orders″). The automatic stay and the Stay Orders apply only to property of the Madoff estate and to lawsuits directed against Madoff or BLMIS. *See* 11 U.S.C. § 362(a)(1), (3), (6);

Order, ¶ IV, *In re Bernard L. Madoff Investment Securities LLC*, Civ. 08-10791 (S.D.N.Y. Dec. 15, 2008), ECF No. 4; *see also* Partial Judgment on Consent, ¶ IV (S.D.N.Y. Feb. 9, 2009), ECF No. 18. The district court in both proceedings concluded that the Actions involved neither estate property nor suits against the debtors, and that they were therefore not stayed. For the reasons explained below, we agree.

*HN5* *Section 362*—the automatic stay—protects bankruptcy estates by restraining any formal or informal action or legal proceeding that might dissipate estate assets or interfere with the trustee's orderly administration of the estate. *See* 3 Collier on Bankruptcy ¶ 362.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014). ″[S]o central is the *§ 362* stay to an orderly bankruptcy process that actions taken in violation of the stay are void and without effect.″ *Colonial Realty, 980 F.2d at 137* (internal quotation marks omitted). The Trustee in this case relies on *HN6* provisions that stay:

> (1) the commencement or continuation, including the issuance **[*15]** or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [. . .]
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [. . .]
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a). The Stay Orders do not, by their own terms, expand the scope of these provisions. *See* Order, ¶ IV, *In re Bernard L. Madoff Investment Securities LLC*, Civ. 08-10791, (S.D.N.Y. Dec. 15, 2008), ECF No. 4 (enjoining interference with ″any assets or property owned, controlled or in the possession of″ Madoff or BLMIS); Partial Judgment on Consent, ¶ IV (S.D.N.Y. Feb. 9, 2009), ECF No. 18 (incorporating Order on Consent, ¶ IX (S.D.N.Y. Dec. 18, 2008), ECF No. 8 (enjoining interference with ″the control, possession, or management of the assets subject to the receivership″)).

The Trustee asserts that the Anwar and NYAG Actions run afoul of these provisions and orders in two ways. First, he argues that, regardless of their form, the Actions are in

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 9 of 12

Page 8 of 11

2014 U.S. App. LEXIS 15274, *15

substance [*16] claims to recover fraudulent conveyances, which are treated as claims against a debtor and stayed by section 362(a)(1). Second, the Trustee asserts that the Actions are so "intertwined" with the estate's own fraudulent conveyance claims that they constitute impermissible attempts to "exercise control over property of the estate."[7] See 11 U.S.C. § 362(a)(3).

### A. Whether the Actions are "Intertwined" with Estate Claims

We address the Trustee's latter argument—that the Actions are intertwined with estate property—first. In the only case cited by the Trustee on this point, *48th St. Steakhouse, Inc. v. Rockefeller Grp. Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d 427 (2d Cir. 1987)*, cert. denied, 485 U.S. 1035, 108 S. Ct. 1596, 99 L. Ed. 2d 910 (1988), we upheld the stay of a lessor's attempt to terminate a prime lease where the sub-lessee was a debtor in bankruptcy. A sublease held by a debtor is considered property of the estate. *See* 11 U.S.C. § 541(a)(1). And under New York law, the termination of a prime lease automatically [*17] terminates a sublease. *48th St. Steakhouse, Inc., 835 F.2d at 430-31*. **HN8** We reasoned that "[i]f action taken against [a] non-bankrupt party [like a prime lessee] would *inevitably* have an adverse impact on property of the bankrupt estate [the sublease], then such action should be barred by the automatic stay." *Id. at 431* (emphasis added). But an adverse impact on a debtor that occurs by operation of law—such as the termination of the prime lease in *48th St. Steakhouse*—is distinct from one which the Trustee merely argues is, as a factual matter, likely to occur. *See Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.), 928 F.2d 565, 574 (2d Cir. 1991)* (applying *48th St. Steakhouse* to bar an action that would have the "*legal effect*" of diminishing or eliminating property of the bankrupt estate" (emphasis added)). We decline to extend our holding in *48th St. Steakhouse* to automatically stay actions taken against third parties that are only factually likely, as opposed to legally certain, to impact estate property.

### B. Whether the Actions Plead Fraudulent Conveyance Claims

Whether the Actions are in fact efforts to "plead around" the stay is a question that merits more attention. **HN9** If the Actions are fraudulent conveyance claims in disguise, they fall within the scope of the automatic stay. *See* 11 U.S.C. § 362(a)(1); *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC), 740 F.3d 81, 94 (2d Cir. 2014)* ("[A]ppellants' purported tort claims are, in essence, disguised fraudulent [*18] transfer actions, which belong exclusively to the Trustee."). The district court concluded that the Anwar and NYAG Actions were distinct from the Trustee's fraudulent conveyance claims because they were based on duties owed directly by the defendants to the plaintiffs. *See Anwar Stay Ruling, 490 B.R. at 68* (concluding that the Anwar Plaintiffs' claims are "in no way contingent on the [defendants'] possible liability to the BLMIS estate"); *NYAG Stay Ruling, 491 B.R. at 36* (concluding that the NYAG's and Schwartz's claims "are independent claims based on separate facts, theories, and duties than the Trustee's fraudulent transfer claims against Merkin"). We agree.

**HN10** A fraudulent conveyance (or fraudulent transfer) action seeks to recover or avoid transfers that wrongfully reduce the pool of assets available to creditors. *See generally* 5 Collier on Bankruptcy ¶ 548.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014). Under the Code, a transfer may qualify as "fraudulent" either because it was made with "actual intent to hinder, delay, or defraud" a creditor, *see* 11 U.S.C. § 548(a)(1)(A), or because the transfer was made in exchange for less than the "reasonably equivalent value" of the property transferred and other statutorily specified conditions obtained, *see id.* (a)(1)(B); [*19] *see also* N.Y. Debt. & Cred. Law §§ 273-76 (defining actual and constructive fraudulent conveyances); *Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.), 403 F.3d 43, 53-57 (2d Cir. 2005)* (applying New York's fraudulent conveyance statute).

**HN11** Although an action for fraudulent conveyance is brought against the transferee, the fraud is the debtor's. As we explained in *Colonial Realty*, "[a]bsent a claim against the debtor, there is no independent basis for the action against the transferee." *Colonial Realty, 980 F.2d at 131-32* (quoting *Saunders, 101 B.R. at 305-06*). Thus, a bankruptcy trustee may recover transferred property or its value from the person to whom it was originally conveyed without showing that the transferee was culpable in any fraud.[8] *See* 11 U.S.C. § 550(a)(1). This focus on the debtor explains why "a third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the

---

[7]    On appeal, the Trustee has apparently withdrawn the argument in the Stay Applications that the Actions seek literally to "obtain possession of property of the estate," in contravention of section 362(a)(3). That argument is squarely foreclosed by our decision in *Colonial Realty*, which held that **HN7** fraudulently conveyed property "is not to be considered property of the estate until it is recovered." 980 F.2d at 131 (quoting *In re Saunders, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989))*.

[8]    Although the good faith of a subsequent transferee may be a defense to a trustee's suit for recovery, *see* 11 U.S.C. § 550(b), suits against initial and subsequent [*20] transferees are predicated on the debtor's fraud.

RICHARD LEVY

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 10 of 12

Page 9 of 11

2014 U.S. App. LEXIS 15274, *19

automatic stay pursuant to *§ 362(a)(1)*." *Colonial Realty, 980 F.2d at 131-32*; *see also* *11 U.S.C. § 362(a)(6)*. In order to qualify as "disguised fraudulent transfer actions," therefore, the complaints against the Fairfield and Merkin Defendants would have to be contingent on Madoff or BLMIS's wrongful transfer of the funds sought by the Actions. They are not.

The Anwar complaint alleges breaches of duty owed by and fraudulent misrepresentations made by the Fairfield Defendants—not Madoff. *See* Second Consolidated Am. Compl., ¶¶ 354-425, *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM) (S.D.N.Y. filed Sep. 29, 2009), ECF No. 273. The complaint alleges, among other things, that the Fairfield Defendants fraudulently induced the Anwar Plaintiffs to invest in the defendant funds, violated federal securities law, recklessly and negligently misrepresented the nature of their investment strategy and their diligence of Madoff, and breached fiduciary and contractual duties. *Id.* Although the complaint includes factual allegations regarding Madoff's fraud, the legal bases for the claims leveled against the Fairfield Defendants are independent of any liability Madoff or BLMIS may have to the Anwar Plaintiffs. Nor do the allegations depend in substance on the fact that Madoff may have wrongfully transferred funds to the Fairfield Defendants.

The distinction between the NYAG's complaint and a fraudulent conveyance action is even starker. *See* Compl., *People v. Merkin*, No. 450879/2009 (N.Y. Sup. Ct. filed **[*21]** Apr. 6, 2009). The NYAG alleges that J. Ezra Merkin fraudulently held himself out as an "investing guru" when he was in fact no more than a "glorified mailbox," turning over virtually all of the assets in the Merkin Funds to Madoff. *Id.* ¶¶ 1-2. According to the complaint, Merkin not only fraudulently collected management fees for work he let Madoff perform with virtually no supervision, but he also engaged in self-dealing by steering non-profit organizations to which he owed fiduciary duties toward the feeder funds. *Id.* ¶¶ 3-6. The complaint alleges breaches of fiduciary duty, the making of fraudulent misrepresentations with respect to the sale of securities, and other violations of New York statutes and common law. *See id.* ¶¶ 121-34. While Madoff's fraud may be a "but-for" cause of the enormous losses suffered by Merkin's clients, none of the Merkin Defendants' liability to the plaintiffs depends on the wrongfulness of Madoff's conduct, or on the fact that Madoff or BLMIS may have transferred funds to the Merkin Defendants. The allegations in *Schwartz v. Merkin* are substantially similar. *See* Compl., *Schwartz v. Merkin*, ¶¶ 1-14, No. 651516/2010 (N.Y. Sup. Ct. filed Sept. 16, 2010). **[*22]** The Trustee's claim that the Anwar and NYAG Actions covertly seek the recovery of fraudulent conveyances thus finds no support in the allegations of the complaints, and the Actions cannot be characterized as "against the debtor" on that basis.

The Trustee urges that the Actions are indistinguishable from fraudulent transfer claims because they seek the return of management fees, which the defendants paid themselves out of funds transferred as "returns" from BLMIS, "on the basis that the [defendants] had actual or constructive knowledge of Madoff's fraud." Anwar Action Appellant Br. at 56; NYAG Action Appellant Br. at 58. This, he argues, is "the same basis as the avoidance action brought by the Trustee on behalf of all BLMIS creditors." Anwar Action Appellant Br. at 56-57; NYAG Action Appellant Br. at 58. We disagree.

First, as we explained in *Cumberland Oil Corp. v. Thropp, 791 F.2d 1037 (2d Cir.)*, *cert. denied*, *479 U.S. 950, 107 S. Ct. 436, 93 L. Ed. 2d 385 (1986)*, **HN12** one complaint is not duplicative of another solely because it recites some or all of the same facts. The plaintiff in *Cumberland* entered into an oil exploration contract with a company called Benchmark based on the representations of its president, Thropp. *Id. at 1038-39*. Contrary to those representations, Benchmark was not only in financial **[*23]** distress, but also soon began a series of transfers to Thropp and his father which stripped it of the resources necessary to fulfill its obligations under the agreement. *Id. at 1039-40*. After Benchmark filed for bankruptcy, Cumberland brought suit against the Thropps for fraud. The district court dismissed the complaint, reasoning that the asset-stripping allegations were substantially identical to fraudulent transfer claims. *Id. at 1041*. We disagreed, explaining that even if Cumberland pled the same facts that would have been invoked in a fraudulent conveyance action, the company alleged that it was the victim of a fraud perpetrated by the Thropps—a distinct legal claim that was neither the property of Benchmark's bankruptcy estate nor was discharged by Benchmark's emergence from bankruptcy. *Id. at 1042-43*.

Nor are the Actions brought on the "same basis" as the Trustee's fraudulent conveyance claims. The defendants' alleged knowledge of Madoff's fraud is relevant here only to their liability for breaches of duties they owed directly to the plaintiffs. These independent duties distinguish the Actions from the Trustee's own claims and place them—like the fraud claims in *Cumberland*—outside the scope of the automatic stay. *See Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc., 945 F. Supp. 603, 608 (S.D.N.Y. 1996)* (**HN13** "[A] stay clearly **[*24]** cannot be extended to [a] non-debtor" where "the non-debtor's liability rests upon his own breach of duty." (internal quotation marks omitted)) (citing *A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir.)*, *cert. denied*, *479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986))*.

RICHARD LEVY

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 11 of 12

Page 10 of 11

2014 U.S. App. LEXIS 15274, *24

In the alternative, the Trustee appeals to the background bankruptcy policy disfavoring individual litigation that allows one creditor to "steal a march" on the others. *See Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989)*. He notes that the plaintiffs in both Actions are creditors of the Madoff estate. But the plaintiffs' right to enforce duties owed to them is not qualified by the fact that they may also have claims against the Madoff estate.

It is well settled that **HN14** "when creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1093 (2d Cir. 1995)*; *see also Caplin v. Marine Midland Grace Trust Co. of N.Y., 406 U.S. 416, 428, 92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972)* ("[N]owhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties on behalf of [creditors]."). The injuries alleged by the plaintiffs in both Actions are alleged to have been caused directly by the non-debtor defendants—not by Madoff or BLMIS. That renders them "particularized" and outside the Trustee's purview. *Marshall, 740 F.3d at 89* ("[A]n injury is said **[*25]** to be 'particularized' when it can be 'directly traced to the third party's conduct.'" (brackets omitted) (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 704 (2d Cir. 1989)))*. The Actions are therefore not voided by, and the settlements not subject to, the automatic stay.

**III. Denial of the Trustee's Claims for Section 105 Injunctive Relief**

In addition to a declaration that the Actions are void, the Trustee seeks an order preliminarily enjoining the settlements. **HN15** Whether or not the claims asserted in the Actions are subject to the terms of the automatic stay, a bankruptcy court has jurisdiction over any suit that "might have any 'conceivable effect' on the bankruptcy estate." *Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.), Inc., 676 F.3d 45, 57 (2d Cir. 2012)* (quoting *Publicker Indus. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992))*, *cert. denied*, 133 S. Ct. 2849, 186 L. Ed. 2d 908 (2013). *Section 105(a) of the Bankruptcy Code* empowers a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *11 U.S.C. § 105(a)*; *see also* full text at footnote 5, *supra*. Thus, we have held that a court has the power pursuant to *section 105(a)* to enjoin claims against a non-debtor third party where those claims are derivative, *Marshall, 740 F.3d at 93*, or otherwise "pose[] the specter of direct impact on the *res* of the bankrupt estate," *Quigley, 676 F.3d at 58*; *see also Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.), 365 B.R. 401, 409 n.20 (S.D.N.Y. 2007)* ("Courts consistently have found that *section 105* may be used to stay actions against non-debtors even where *section 362* otherwise would not provide **[*26]** such relief, recognizing that *section 105* grants broader authority than *section 362*."). The question is, essentially, "whether the direct result of a suit against a third party will be the removal of assets from the bankruptcy estate." *Quigley, 676 F.3d at 58*.

Of course, **HN16** a court's authority to issue an injunction is only the first step of the inquiry; we must also be satisfied that the party seeking injunctive relief is entitled to it. *See id. at 58 n.14*. The parties in this case could not agree—and the district court did not decide—on the standard for obtaining a preliminary injunction under *section 105(a)*. The appellees in both cases urge us to apply the standard applicable to requests for injunctive relief under *Federal Rule of Civil Procedure 65* (incorporated into adversary proceedings in bankruptcy by *Bankruptcy Rule 7065*), which requires that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)*. The Trustee asserts to the contrary that he need only show that the actions he seeks to enjoin would "have an immediate adverse economic consequence for the debtor's estate." **[*27]** *Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003)* (stating that, while "[t]he automatic stay can apply to non-debtors, [it] normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate").

Like the district court in both cases before us on appeal, we decline to decide this issue of apparent first impression. Instead, we conclude that the Trustee is incapable of establishing either that the settlements would in fact have an "immediate adverse economic consequence" for the BLMIS estate, *id.*, or that the estate "is likely to suffer irreparable harm in the absence of preliminary relief," *Winter, 555 U.S. at 20*; *see also id. at 22* ("[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." (emphasis in original)). The reasons for this are common to both appeals.

The purported harm here is the effect that the Trustee claims the settlements of the Anwar and NYAG Actions would have on his ability to collect on judgments he hopes to win in his pending fraudulent conveyance actions against the Fairfield and Merkin Defendants. Assuming

RICHARD LEVY

08-01789-cgm    Doc 7862-1    Filed 09/04/14    Entered 09/04/14 14:20:06    Exhibit Copy of Picard v. Fairfield Greenwich Ltd.    2014 U.S. App. LEXIS 15274 (    Pg 12 of 12

Page 11 of 11

2014 U.S. App. LEXIS 15274, *27

that the Trustee could show that the settlements would have such an impact, he cannot show that this impact would be [*28] "immediate," under *Queenie*, or "likely" under the test articulated in *Winter*.

The impact of the settlements could not be "immediate" because the Trustee's fraudulent conveyance actions are actively being litigated; the Trustee therefore lacks a judgment entitling him to any part of the assets of the Fairfield or Merkin Defendants. Nor does the Trustee enjoy a statutory right to those assets. Our case law is clear that **HN17** assets targeted by a fraudulent conveyance action do not become property of the debtor's estate under the Bankruptcy Code until the Trustee obtains a favorable judgment. *Colonial Realty, 980 F.2d at 131*.

The SIPA, invoked by the Trustee and the intervenor SIPC, does not alter this rule. **HN18** A SIPA trustee has no greater legal interest in unadjudicated fraudulent transfers than does a trustee in bankruptcy. The Act merely engrafts special features onto the familiar framework of a liquidation proceeding under *Chapter 7 of the Bankruptcy Code*, *see 15 U.S.C. § 78fff(b)*, to address the concerns peculiar to the orderly liquidation of a brokerage. Just as in an ordinary, non-SIPA bankruptcy, a SIPA trustee stands in the shoes of a liquidating firm. *See Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC), 460 B.R. 84, 91 (S.D.N.Y. 2011)* (*JPMorgan I*), aff'd, *721 F.3d 54 (2d Cir. 2013)* (*JPMorgan II*); *see also JPMorgan II, 721 F.3d at 71* ("As a general rule, SIPA vests trustees with the same powers and title with [*29] respect to the debtor and the property of the debtor as a trustee in a case under Title 11." (internal quotation marks and ellipsis omitted)). But because money held by a broker on behalf of its customers is not the broker's property under state law, it would not be recoverable by a trustee in an ordinary bankruptcy. *Picard v. Estate of Chais (In re Bernard L. Madoff Inv. Sec. LLC), 445 B.R. 206, 237-38 (Bankr. S.D.N.Y. 2011)*. SIPA circumvents this problem through a statutorily created legal fiction that confers standing on a SIPA trustee by treating customer property as though it were "property of the debtor" in an ordinary liquidation. *Id. at 238*; *see 15 U.S.C. § 78fff-2(c)(3)*. The meaning, purpose, and effect of this provision are in no way inconsistent with the rule we adopted in *Colonial Realty*. *See Estate of Chais, 445 B.R. at 238* (agreeing with prior decisions concluding that the "limited purpose" of *SIPA section 78fff-2(c)(3)* "is to create this legal fiction").

Because the Trustee's interests here are contingent at best, it was not an abuse of discretion to deny him injunctive relief on the basis that he failed to establish any "immediate adverse economic consequence" to the BLMIS estate.

For essentially the same reasons, it was not an abuse of discretion to deny the Trustee an injunction if the denial was based on the conclusion that he could not establish a likelihood of irreparable harm. [*30] The Trustee has not shown that it is "likely" as opposed to "possible" that he would (a) win the fraudulent conveyance actions, and then (b) be unable to recover a judgment as a result of the Anwar and NYAG settlements. *See Winter, 555 U.S. at 22* ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

The Trustee's fraudulent conveyance actions have been pending for more than four years. The bankruptcy court recently heard oral argument on the motions to dismiss the third amended complaint in the Trustee's fraudulent conveyance action against the Merkin Defendants and Funds, and discovery is not scheduled to conclude until October 2014. *See* Seventh Am. Case Mgmt. Plan, *Picard v. Merkin*, Adv. Pro. No. 09-1182 (Bankr. S.D.N.Y. Apr. 22, 2014), ECF No. 208. The action against the Fairfield Defendants seems to be even further from resolution. *See* Stip. Extending Time to Move, Answer or Otherwise Respond to Trustee's Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. 09-1239 (Bankr. S.D.N.Y. Jun. 27, [*31] 2014), ECF No. 151.

To be sure, there is the possibility, particularly in the case against the Fairfield Greenwich Group, that the defendants will not be able both to satisfy a possible future fraudulent conveyance judgment and to pay the settlement amount. But **HN19** it is "an extraordinary exercise of discretion to use *[section 105]* to stay a third party action not involving the debtor," *In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. 1991)* (quoting *In re Brentano's Inc., 36 B.R. 90, 92 (S.D.N.Y. 1984))*, *abrogated in part on other grounds*, *Conn. Nat'l Bank v. Germain, 503 U.S. 249, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992)*, and the mere possibility that a third-party action will have some effect on a debtor's estate is not enough to satisfy either the *Queenie* or *Winter* standards. The district court reasonably found that it was not likely that the Trustee would both prevail in his fraudulent conveyance actions and find himself unable to collect the resulting judgment as a result of the challenged settlements. It was therefore not an abuse of discretion for the court to deny the Trustee's requests for preliminary injunctive relief on the grounds that he could not show that the BLMIS estate was likely to suffer irreparable harm if the settlements went forward as planned.

**CONCLUSION**

For the foregoing reasons, the judgments of the district court are AFFIRMED.

RICHARD LEVY