**REED SMITH LLP**

599 Lexington Avenue
New York, NY  10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
James C. McCarroll, Esq.
    Email:  jmccarroll@reedsmith.com
Jordan W. Siev, Esq.
    Email: jsiev@reedsmith.com
Michael J. Venditto, Esq.
    Email: mvenditto@reedsmith.com
Casey D. Laffey, Esq.
    Email: claffey@reedsmith.com

*Attorneys for Bart M. Schwartz, as Receiver
of Defendants Ariel Fund Limited and
Gabriel Capital, L.P.*

**FULBRIGHT & JAWORSKI LLP**

666 Fifth Avenue
New York, New York  10103
Telephone:  (212) 318-3000
Facsimile:  (212) 318-3400
Judith A. Archer, Esq.
    judith.archer@nortonrosefulbright.com
David L. Barrack, Esq.
    david.barrack@nortonrosefulbright.com
Jami Mills Vibbert, Esq.
    jami.vibbert@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver
for Defendant Ascot Partners, L.P.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC<br><br>        Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>J. EZRA MERKIN, *et al.*<br><br>        Defendants. | Adv. Pro. No. 09-1182 (BRL) |

**MEMORANDUM OF LAW OF BART M. SCHWARTZ, AS
RECEIVER FOR DEFENDANTS ARIEL FUND LIMITED AND GABRIEL
CAPITAL, L.P., AND RALPH C. DAWSON, AS RECEIVER FOR DEFENDANT
ASCOT PARTNERS, L.P., IN OPPOSITION TO TRUSTEE'S MOTION TO
DIRECT ENTRY OF FINAL JUDGMENT UNDER FED. R. CIV. P.  54(b) AND TO
CERTIFY JUDGMENT FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 158(d)**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................................................4

    A.    The Funds Invest in BLMIS .................................................................................4

    B.    The Trustee Commences This Adversary Proceeding and Makes Several
        Amendments to the Complaint .................................................................................5

    C.    The District Court's Decision in *Picard v. Katz* and the Trustee's Motion
        for Interlocutory Appeal .........................................................................................6

    D.    The "Actual Knowledge" Decision .......................................................................7

    E.    The Proceedings and Order that  Prompted this Request for Interlocutory
        Appeal .....................................................................................................................8

ARGUMENT..................................................................................................................................9

POINT I  THIS COURT SHOULD NOT ENTER FINAL JUDGMENT PURSUANT TO
        RULE 54(B).................................................................................................................9

    A.    This Court Lacks Jurisdiction to Enter Final Judgment on the Actual
        Knowledge Ruling ...................................................................................................9

    B.    The Requirements for the Entry of Judgment Under Rule 54(b) Cannot Be
        Met With Respect to the Actual Knowledge Decision .........................................10

POINT II  THIS COURT SHOULD NOT CERTIFY THE JUDGMENT FOR
        IMMEDIATE APPEAL UNDER 28 U.S.C. § 158(d)(2).................................................15

    A.    The Actual Knowledge Decision Was Decided in Reliance Upon Settled
        Precedent of the United States Supreme Court and Second Circuit .....................16

    B.    The Judgment Does Not Involve Matters of Public Importance, But Rather
        a Simple Issue of Statutory Construction.............................................................18

    C.    An Immediate Appeal to The Second Circuit Will Not Materially Advance
        the Progress of the Case .........................................................................................20

CONCLUSION.............................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Advanced Magnetics, Inc. v. Bay-Front Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) ................................................................................. 11

*Burrell v. State Farm and Cas. Co.*,
226 F. Supp. 2d 427 (S.D.N.Y. 2002) ....................................................... 10, 11, 12

*Citizens Accord, Inc. v. The Town of Rochester*,
235 F.3d 126 (2d Cir. 2000) ............................................................................... 11

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ......................................................................................... 16

*Curtiss–Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980) ...................................................................................... 10, 13

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V. (In re Enron Creditors)*,
651 F.3d 329 (2d Cir. 2011) .......................................................................... 17, 20

*In re Bernard L. Madoff Investment Securities LLC*,
Adv. Proc. Nos. 08–01789, 09–01182, 2014 WL 3908211 (Aug. 12, 2014) ........... 8

*In re Dreier LLP*,
462 B.R. 474 (Bkrtcy. S.D.N.Y. 2011) ................................................................ 18

*In re Gen. Motors Corp.*,
409 B.R. 24 (Bkrtcy. S.D.N.Y. 2009) .............................................................. 19, 20

*In re Madoff Sec.*, No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ................ 7, 16

*In re MF Global Holdings Ltd.*,
No. 11–15059, 2012 WL 1438262 (Bankr. S.D.N.Y. April 25, 2012) ................... 17

*In re MTBE Prods. Liab. Litig.*,
Nos. 00 MDL 1898(SAS), 04 CIV. 3417(SAS), 2010 WL 1328249 (S.D.N.Y. April
5, 2010) ........................................................................................................ 14

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990) .................................................................................. 3

*O'Bert v. Vargo*,
331 F.3d 29 (2d Cir. 2003) ................................................................................. 10

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003) ............................................................................... 18

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) ................................................................................. 18

*Picard v. Greiff*,
476 B.R. at 722 (S.D.N.Y. 2012) ........................................................................ 20

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011) .......................................................................... 6, 16

*Picard v. Katz ("Katz II")*,
    466 B.R. 208 (S.D.N.Y. 2012) ............................................................................ 3, 7

*Sears, Roebuck & Co. v. Mackey*,
    351 U.S. 427 (1956) ............................................................................................. 10

*Semmler v. Metropolitan Life Ins. Co.*,
    No. 94 CIV. 5549 (SS), 1996 WL 267503 (S.D.N.Y. May 27, 1996) ................... 12

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    505 B.R. 135 (S.D.N.Y. 2013) ...................................................................... 17, 20

*SIPC v. Bernard L. Madoff Inv. Sec. LLC ("SIPC II")*,
    490 B.R. 46 (S.D.N.Y. 2013) .............................................................................. 10

*Stern v. Marshall*,
    131 S.Ct. 2594 (2011) ........................................................................................... 9

*Weber v. United States Trustee*,
    484 F.3d 154 (2d Cir. 2007) ................................................................................ 18

**Statutes**

28 U.S.C. § 158(d)(2) ................................................................................... passim

**Rules**

Fed. R. Civ. P. 54(b) ..................................................................................... passim

Bart M. Schwartz, as Receiver for Defendants Ariel Fund Limited ("Ariel") and Gabriel

Capital, L.P. ("Gabriel"), and Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P.

("Ascot Partners"), respectfully submit this Memorandum of Law in opposition to the Motion of

Irving H. Picard, as trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff

Investment Securities LLC ("BLMIS"), dated September 5, 2014, seeking an Order directing

entry of final judgment under Fed. R. Civ. P. 54(b) and certifying judgment for immediate appeal

under 28 U.S.C. § 158(d).  As set forth herein, the Trustee's motion should be denied.

## PRELIMINARY STATEMENT

The Trustee takes issue with this Court's adherence to the controlling actual knowledge

standard on fraudulent transfer claims, asking this Court to let him make an "end run" around the

District Court to take his disagreement with that standard to the Second Circuit by way of an

interlocutory appeal based on Fed. R. Civ. P. 54(b), on the one hand, and 28 U.S.C. § 158(d), on

the other.  The Trustee's request to certify the actual knowledge ruling for appeal is legally

unfounded and should be rejected by this Court.

First, the Trustee's effort to stake its interlocutory appeal on Rule 54(b) fails at the

starting gate because this Court lacks the authority to enter the judgment the Trustee envisions on

the private claims in dispute.

Second, the requirements for certification under Rule 54(b) or section 158(d) cannot be

met here in any event.  Not only will the Trustee's proposed appeal improperly divide the claims

in this action, it will divide the parties as well, resulting in a multiplicity of actions and

tremendous waste and inefficiency.

In that regard, the Trustee seeks an appeal only against Ariel, Gabriel, and Ascot Partners

(collectively, the "Funds"), and even then, only on the claims implicating the actual knowledge

standard as applied to those Defendants.  Defendants J. Ezra Merkin ("Merkin") and Gabriel

Capital Corporation ("GCC") (collectively, the "Merkin Defendants") are inexplicably left out of

the appeal, even though the challenged legal standard plainly impacts the claims against them as

well.   The Trustee nevertheless argues that chopping up this adversary proceeding in such a

fashion will advance the resolution of this dispute and promote efficiency.   There is, however, no

merit to those contentions, which have been asserted before (in *Picard v. Katz*, for example) as a

basis for an immediate appeal and rejected by Judge Rakoff in the interest of judicial economy.

The same result, respectfully, should follow here.

In fact, just a cursory analysis reveals compelling reasons why the concept of parallel

proceedings in the Second Circuit and this Court at this stage of this litigation makes no sense:

- None of the Defendants have been dismissed from the adversary proceeding by virtue of this Court's ruling.   To the contrary, this Court's decision upheld claims against the Defendants for actual fraudulent transfers, subsequent transfers, and equitable subordination.   Therefore, this litigation will continue, and the more efficient approach here is to await entry of final judgment on all claims and all parties.

- With respect to Ariel and Gabriel, the clawback claims that the Trustee complains were improperly dismissed as to the Funds (Counts 3-8) provide the Trustee with the same relief as the claims that were upheld.   Specifically, this Court's Decision noted how there are only two transfers alleged to have been made to Ariel and Gabriel during the 2-year statutory period – a $16,200,000 transfer to Ariel and a $17,400,000 to Gabriel.   *See* Compl. Exh. B. Whether he has to proceed under an actual fraud theory or a constructive fraud theory, the Trustee's relief is the same.   Thus, he suffers no prejudice from awaiting final judgment – if he is successful in this action, he is eligible to recover the same amount; if he loses, he can appeal then.   More importantly, with respect to all the Funds, the facts underlying the remaining claims and the dismissed claims are the same – the Trustee's proposed appeal potentially will require the parties to engage in multiple trials on the same set of facts, running directly contrary to the purposes behind the "final judgment rule."

- This case has been going on since 2009, with the Trustee repeatedly amending his complaint in efforts to comply with this Court's and with Judge Rakoff's rulings and adjourning the Case Management Schedule to conduct further discovery.   Fact discovery will conclude on October 31, 2014 (including the depositions of Merkin and the 30(b)(6) deponents of GCC and the Funds).   Expert discovery will follow, as will motions for summary judgment and, if needed, a trial in 2015.   There is no colorable reason for this orderly resolution process to be disrupted by a costly and burdensome interlocutory appeal.

As cases in this Circuit and elsewhere recognize, there is a strong bias against interlocutory appeals because they add delay and expense and waste scarce public and private resources.  The Second Circuit therefore has held that "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990).  Not surprisingly perhaps, the sort of exceptional circumstances the Second Circuit envisions are not present simply because a party disagrees, as the Trustee does here, with a court's decision on a disputed issue involving one element of a claim in a complex case.  *See*, *e.g.*, *Picard v. Katz ("Katz II")*, 466 B.R. 208, 208 (S.D.N.Y. 2012) ("Naturally, any party that loses an important interim ruling wants to appeal immediately, believing that a parade of horribles will follow if the district court's supposed error is not immediately corrected.  But . . . the result of permitting interim appeals is vexatious and duplicative litigation, prolonged uncertainty, and endless delay.").  If that were enough, interlocutory appeals would be the rule, not the exception, burdening appellate courts and litigants alike.  This Court has the unfettered discretion to reject this request to appeal under any circumstances and, as outlined above, good reasons to do so are present here.

Moreover, the functional equivalent of interlocutory appellate review has effectively occurred here not once, but twice, before Judge Rakoff on the issues raised by the Trustee.  Judge Rakoff's *Picard v. Katz* and "Actual Knowledge" decisions have settled the law and removed any uncertainty on the elements of proof providing all the guidance needed for an orderly resolution of this case.  The Trustee has litigated this case, just as have the rest of the parties, with those rulings in mind, and he is free to exercise his right to appeal, to the proper court in the ordinary course, when this action concludes.  Indeed, the Trustee filed his Third Amended

Complaint – which was the subject of the Court's ruling which is now at issue – following Judge Rakoff's enunciation of the actual knowledge standard.  In the meantime, there is nothing harsh, untoward or prejudicial about concluding this action with a single final judgment.  All the parties and this Court have an interest in moving this case expeditiously to a resolution and the Court's Case Management Schedule will accomplish that.  That sort of efficiency is fair to all and it is the outcome the law prefers.

For all of these reasons and those set forth below, the Trustee's motion should be denied.[1]

<u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

This Court is well aware of the procedural history of this case as set forth in its ruling on the motions to dismiss.  That background is highlighted briefly here as context for this opposition.

On December 11, 2008, it was reported that Bernie Madoff ("Madoff") had been arrested and that his investment advisory business was a Ponzi scheme.  Compl. ¶ 10.  By Order of the Court dated December 15, 2008, the Trustee was appointed to oversee the liquidation of BLMIS, the company through which Madoff operated his Ponzi scheme.  *Id*. ¶ 12.  Numerous adversary proceedings commenced against investors in BLMIS soon followed.

A.    <u>The Funds Invest in BLMIS</u>

Included among those who lost significantly from Madoff's scheme are the investors in the Funds.  Ariel is a hedge fund incorporated in the Cayman Islands.  *Id*. ¶ 47.  Gabriel and Ascot Partners are also hedge funds, organized as limited partnerships under the laws of Delaware.  *Id*. ¶¶ 44, 50.  Prior to the uncovering of Madoff's fraud, Ariel had approximately

---

[1]  The Trustee's motion, particularly in the request for certification, reads as though it is seeking leave to appeal Judge Rakoff's Actual Knowledge Decision.  That effort, of course, is a procedural misfire.  Any effort to appeal Judge Rakoff's decision on whatever ground must be made to Judge Rakoff.  The only issues conceivably before this Court relate to its ruling applying Judge Rakoff's decision in this specific case.  Thus, the Court would be justified in denying the Trustee's untimely and misdirected motion for this reason alone.

$1.3 billion under management from 78 investors and Gabriel had approximately $1.4 billion under management from 200 investors. *Id.* ¶¶ 59, 63. Ascot Partners had 300 investors and approximately $1.8 billion invested with BLMIS at the time Madoff's Ponzi scheme was discovered, all of which was lost. *Id.* ¶ 68. The Funds were managed by Merkin and GCC, Merkin's wholly-owned investment advisory business. *Id.* ¶¶ 43, 45.

From the opening of their respective accounts to the filing of BLMIS's bankruptcy petition, both Ariel and Gabriel had deposited more than $150 million each with BLMIS. By comparison, the only transfers alleged to have been made from BLMIS directly to Ariel and Gabriel were on July 7, 2008, for the amount of $16.2 million to Ariel and $17.4 million to Gabriel. Compl. Exh. B.[2] Ascot Partners, who had $1.8 billion with BLMIS as of the time of the fraud and is alleged to have received transfers of $461 billion, has a net equity claim of at least $200 million. Compl. ¶¶ 68, 317; *id.*, Exh. B.

**B.    The Trustee Commences This Adversary
Proceeding and Makes Several Amendments to the Complaint**

The Trustee commenced this adversary proceeding against the Defendants pursuant to 15 U.S.C. §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), 550(a) and 551 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (N.Y. Debt & Cred. § 270 *et seq.* (McKinney 2001)), and other applicable law. The Trustee's original complaint asserted claims for turnover, accounting, preferences, fraudulent conveyances, damages and an objection to claim in connection with certain transfers of property by BLMIS allegedly made to or for the benefit of the Defendants. In late 2009, the Trustee amended his

---

[2]  In addition, the Third Amended Complaint lists other transfers that apparently were made to the Internal Revenue Service for the account of Ariel for a total amount of approximately $3.3 million. *Id.*

complaint to add a claim for recovery of subsequent transfers against the Funds. After a conference between the parties, however, that claim was dismissed.

In late December 2009, the Trustee filed a Second Amended Complaint asserting twelve causes of action, including one count for turnover and accounting, ten counts to avoid transfers under different provisions of the Bankruptcy Code and the New York Fraudulent Conveyance Act, and one count objecting to the Funds' SIPA claims. Ariel and Gabriel subsequently filed a motion to dismiss, and on November 17, 2010, this Court granted that motion in part.

### C.  The District Court's Decision in *Picard v. Katz* and the Trustee's Motion for Interlocutory Appeal

After this Court's decision on the initial motion to dismiss, in March 2011, the Trustee sought to recover over a billion dollars from a group of defendants, including Saul B. Katz, on theories of actual fraud, constructive fraud, preferential transfer, and the like, in violation of various provisions of federal and state law. Six months later, on September 27, 2011, the district court (by Judge Rakoff)—which had withdrawn the reference of the *Katz* case—dismissed "all claims except those alleging actual fraud and equitable subordination and narrow[ed] the standard for recovery under the remaining claims." *Picard v. Katz*, 462 B.R. 447, 450 (S.D.N.Y. 2011). The court held that, in light of the "safe harbor" provision of Bankruptcy Code § 546(e), the Trustee can only avoid and recover transfers on the theory of actual fraud under Bankruptcy Code § 548(a)(1)(A). *Id*. at 452. In reaching this result, the court relied on settled principles of statutory construction, as well as precedential authority in the Second Circuit establishing the purpose of section 546(e). *Id*. at 451-52.

The Trustee thereafter filed a motion to have Judge Rakoff certify his decision for interlocutory appeal pursuant 28 U.S.C. § 1292(b), or to have the court enter a final judgment as to the dismissed claims pursuant to Rule 54(b). Judge Rakoff denied the motion, emphasizing

the strong public policy against piecemeal appeals.  *Katz II*, 466 B.R. at 208.  As the court put it:
"No principle of federal jurisprudence has proved more efficacious than the 'final judgment
rule,' by which a district court's interim rulings may not normally be appealed until the case is
over and final judgment rendered."  *Id.*  The court went on to note that "federal practice is
strongly biased against interlocutory appeals" and that "[a]ppeals from interlocutory orders
prolong judicial proceedings, add delay and expense to the litigants, burden appellate courts, and
present issues for decisions on uncertain and incomplete records, tending to weaken the
precedential value of judicial opinions."  *Id.* at 209.

      **D.**    **The "Actual Knowledge" Decision**

On April 15, 2013, the district court issued what the Trustee describes as the "Actual
Knowledge Decision."  *In re Madoff Sec.*, No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y.
Apr. 15, 2013).  There, Judge Rakoff affirmed his decision in *Katz* because the Trustee had
attempted to re-litigate the issues resolved in that ruling.  *Id.* at *3.  He went on to hold that
section 546(e) precludes the Trustee from bringing any action to recover from BLMIS investors
any of the monies paid by BLMIS to those investors except in the case of actual fraud under
section 548(a)(1)(A) of the Bankruptcy Code and where the Trustee has adequately alleged that
the investor had actual knowledge of Madoff's scheme.  *Id.* at *2–3.  Just as he had in *Katz*,
Judge Rakoff relied on settled principles of statutory construction and existing Second Circuit
authority concerning the purpose of section 546(e).  *Id.*  The Trustee did not file a motion before
Judge Rakoff asking him to certify his Actual Knowledge Decision for interlocutory appeal or to
enter a final judgment.

- 7 -

E.      **The Proceedings and Order that
        <u>Prompted this Request for Interlocutory Appeal</u>**

Recognizing that the Second Amended Complaint could not stand under the *Katz* and

Actual Knowledge decisions, the Trustee filed his Third Amended Complaint.  That complaint

asserted avoidance claims against the Funds based on actual fraud (Counts 2, 4, and 8) and

constructive fraud (Counts 3, 5, 6, and 7), as well as a preferential transfer claim against Ascot

Partners (Count 1).[3]  The Trustee also re-asserted a claim against each of the Funds seeking to

recover alleged subsequent transfers, a claim that he voluntarily dismissed previously (Count 9).

Finally, the Trustee asserted claims against them seeking to equitably disallow and/or

subordinate the Funds' claims against the BLMIS estate (Counts 11-13).  The Funds filed a

motion to dismiss, this time based, in part, on the *Katz* and the Actual Knowledge decisions.

Relying on those two decisions, this Court dismissed several of the avoidance claims

(Counts 1 and 3-8).  It expressly determined that the Third Amended Complaint failed to

plausibly allege that Merkin had actual knowledge of Madoff's Ponzi scheme.  *In re Bernard L.*

*Madoff Investment Securities LLC*, Adv. Proc. Nos. 08–01789, 09–01182, 2014 WL 3908211, at

*14 (Aug. 12, 2014) (the "Opinion").  Consequently, it held that the safe harbor provision limits

the avoidance claims to those asserted under Bankruptcy Code § 548(a)(1)(A) in Count 2.  *Id*.

Of the remaining claims in the latest complaint, the Court dismissed Counts 11 and 12 and

sustained Counts 9, 10, and 13.

The Trustee now moves this Court to direct entry of final judgment for the dismissed

avoidance claims, Counts 1 and 3-8, pursuant to Federal Rule of Civil Procedure 54(b), and then

to certify that Rule 54(b) Judgment for immediate appeal to the Second Circuit pursuant to

---

[3]  Counts 4-8 against Ascot Fund Ltd. were voluntarily dismissed by stipulation of the parties, the dismissal of which
was so ordered by the Court.  *See* Order, *Picard v. Merkin*, No. 09-1182 (SMB) (Bankr. S.D.N.Y. Dec. 23,
2013), Dkt. No. 189.

28 U.S.C. § 158(d), but only against the Funds.   The Trustee does not seek entry of final judgment on Counts 11 and 12 at this time.

## ARGUMENT

### POINT I

### THIS COURT SHOULD NOT ENTER
### FINAL JUDGMENT PURSUANT TO RULE 54(B)

The Trustee first argues that pursuant to Fed. R. Civ. P. 54(b), the Court should enter final judgment as to the dismissed avoidance claims, Counts 1 and 3-8.  In making its argument, the Trustee acknowledges the complications for entering judgment engendered by *Stern v. Marshall*, 131 S.Ct. 2594 (2011), but nevertheless claims that the Supreme Court's decision has no role to play.  He then makes a series of arguments on why the prerequisites of Rule 54(b) are met that ignore the context of this dispute.  Here, the reasoning and holding in *Stern* stop the Trustee's Rule 54(b) request before it starts.  Apart from that, when the circumstances of this dispute are fairly considered, sound judicial administration cuts firmly against the Trustee's proposed piecemeal appeal.

#### A.    This Court Lacks Jurisdiction to Enter
#### Final Judgment on the Actual Knowledge Decision

As the Trustee acknowledges, any effort to enter judgment in the Bankruptcy Court necessarily raises the specter of *Stern*.  While the Trustee claims that *Stern* is not an impediment to this Court's entry of judgment on the fraud counts implicating the actual knowledge ruling, his analysis is off the mark.  *Stern* stands as a fundamental obstacle to the entry of the judgment the Trustee proposes.

In *Stern*, the Supreme Court made it clear that bankruptcy courts do not have the authority to enter final judgment on a dispute implicating private rights; only an Article III court has such authority.   131 S.Ct. at 2612-13.   The import of *Stern* has made its way to the

proceedings involving the Trustee, as Judge Rakoff's opinion in in *SIPC v. Bernard L. Madoff Investment Securities LLC*, 490 B.R. 46 (S.D.N.Y. 2013) makes clear.  The reasoning in *SIPC* indicates that the claims made in this proceeding under the Bankruptcy Code and SIPA implicate merely private rights.  *SIPC*, 490 B.R. at 52.

As a result, while this Court has the capacity to make findings and recommendations on the resolution of the claims in this action, it does not have the power — consistent with *Stern* — to enter a final judgment on those claims.  By parity of reasoning, it likewise cannot enter a judgment under Rule 54(b) with respect to the counts at issue here, and the Trustee's motion can be denied for this reason alone.

**B.    The Requirements for the Entry of Judgment Under**
**Rule 54(b) Cannot Be Met With Respect to the Actual Knowledge Ruling**

Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  In evaluating whether the rule's requirements are met, it must be kept in mind that the sort of piecemeal appeal proposed by the Trustee is "generally disfavored."  *Burrell v. State Farm and Cas. Co.*, 226 F. Supp. 2d 427, 432 (S.D.N.Y. 2002) (citing *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435–38 (1956)).

Thus, the "'historic federal policy against piecemeal appeals'" mandates that the Court use its power to enter final judgment before the conclusion of an entire case "sparingly."  *O'Bert v. Vargo*, 331 F.3d 29, 40-41 (2d Cir. 2003) (quoting *Curtiss–Wright Corp*, 446 U.S. at 8) (internal quotation marks omitted).  Indeed, the Second Circuit has made clear that Rule 54(b) motions "should be granted 'only in the infrequent harsh case,' where there exists 'some danger

of hardship or injustice through delay which would be alleviated by immediate appeal.'" *Burrell*, 226 F.Supp.2d at 432 (quoting *Citizens Accord, Inc. v. The Town of Rochester*, 235 F.3d 126, 128 (2d Cir. 2000) (per curiam)).

As a threshold matter, no such hardship or injustice can be demonstrated by the Trustee. No matter what his level of disagreement with this Court's decision, there is no hardship or injustice that accompanies the resulting ruling. The Trustee is free to continue to pursue his remaining claims and, once those claims are resolved, to pursue an appeal if he elects to do so. The ordinary burden and expense of litigation is all that follows, and the request for an immediate appeal should be rejected for this reason alone.

Turning to the specific criteria in Rule 54(b), the Trustee fares no better. Where, as here, multiple claims are involved, the entry of a Rule 54(b) judgment can be considered only if the claims are truly separable — that is, that "they involve at least some different questions of fact and law and could be separately enforced, or if different sorts of relief are sought." *Advanced Magnetics, Inc. v. Bay-Front Partners, Inc.*, 106 F.3d 11, 21-22 (2d Cir. 1997) (internal quotation marks and citations omitted). The actual knowledge claims made here do not meet this standard.

While it is conceivable that Counts 1 and 3-8 could be enforced separately from the remaining claims, they do not seek separate or different relief from the remaining claims and they involve factual issues that invariably overlap with and are nearly identical to the remaining claims as well. In order to prove the remaining actual fraudulent transfer claims, for example, the same proof will be offered as needed for constructive fraud and the other dismissed claims, and precisely the same relief is sought, monetary damages. Indeed, even the same amount is sought from Ariel and Gabriel. The dismissed claims thus are better described as closely

intertwined with, not separable from, the claims that remain. "Where, as here, the claims that were dismissed arise out of the same facts and circumstances as the remaining claims, and are so closely intertwined, it will rarely advance judicial economy to allow for piecemeal appeals[.]" *Burrell*, 226 F. Supp. 2d at 433.

The Trustee nevertheless claims that Counts 1 and 3-8 should be treated as separable from the remaining claims because they require that the Trustee establish a different element — actual knowledge — in order to avoid the protections of the safe harbor provision. As support for that proposition, the Trustee relies on *Semmler v. Metropolitan Life Ins. Co.*, No. 94 CIV. 5549 (SS), 1996 WL 267503 (S.D.N.Y. May 27, 1996). But the differences between the record in *Semmler* and this one are profound. Those differences also underscore why no Rule 54(b) judgment can be contemplated here. *Semmler* involved ERISA and breach of contract claims brought by multiple parties. *Semmler*, 1996 WL 267503, at *1. As to one party, Plaintiff Melendez, the district court entered summary judgment, finally disposing of her action. *Id*. The district court then allowed a separate appeal of her claim because her entire action was concluded and her action was severable from the rest of the claimants based on key particulars: it involved the application of a different legal standard; and it would be resolved by a single appeal. *Id*. at *1, 2. Beyond the factors supporting severability, Plaintiff Melendez also represented a putative class, whose interests would be further served by prompt appellate review. *Id*.

Here, of course, there is no final judgment as to any party and there is no class who has lost the right to relief. Nor are there any savings in resources on the resolution of the appeal because all the interested parties are not part of the proposed appeal and no matter what the outcome, a subsequent appeal by the parties raising additional issues likely will follow. *Semmler*

plainly presents the sort of record where a Rule 54(b) appeal makes sense.  On the record here, by comparison, such an appeal makes no sense at all.[4]

In looking at the second prerequisite under Rule 54(b)—an express determination that no just reasons for delay exist—the Court must take into account judicial administrative interests, as well as the equities involved.  *See*, *e.g.*, *Curtiss–Wright*, 446 U.S. at 8.  As noted above, consideration of judicial administration and the equities both cut against allowing an immediate appeal involving less than all the parties and less than all the claims.

First, the Trustee's primary claim on why a piecemeal appeal purportedly will be more efficient is critically flawed.  The Trustee warns against the risk of duplicative trials, if a court were to reverse the Actual Knowledge ruling on appeal.  But if that rationale took hold, nearly every interlocutory order would be subject to immediate appeal, because there always is an inherent possibility that a later reversal can occur, with a retrial possibly ordered.

Second, it also is hard to see how dividing up the claims and parties into trial and appellate forums at this stage of these proceedings produces an orderly resolution, as opposed to confusion and complexity.  For example:

- Having the action proceeding in both fora adds more complexity not less because the independent proceedings will each have to be litigated on the issues involved.

- Having the action proceeding in both fora consumes more resources not less because the parties and the courts must expend resources in both.

- A decision in the appeal does not produce any apparent efficiencies because it will not result in termination of litigation as to any party or even the resolution of the disputed issue as to all parties.

- Allowing the action to proceed unburdened by an appeal will further sharpen the disputed issues and facilitate further development of critical facts.

---

[4] This kind of duplicative litigation only increases the cost to parties like the Defendants here, which are in receivership and are among the largest net losers.

- 13 -

- A final judgment in the ongoing proceedings may moot the need for an appeal with respect to some, if not all, of the parties if the Trustee obtains the relief sought.

- Allowing this action to continue to a final judgment will create greater efficiencies because the Court's Case Management Schedule has set a specific resolution schedule that should be completed within a year.

The Trustee relies on *In re MTBE Prods. Liab. Litig.*, Nos. 00 MDL 1898(SAS), 04 CIV. 3417(SAS), 2010 WL 1328249 (S.D.N.Y. April 5, 2010) to dispel all this. But that reliance again is misplaced. As the Trustee concedes, in *In re MTBE* the Rule 54(b) certification arose in the context of a multi-district litigation, where the district court held a bellwether trial – to verdict – and the delay of the entry of judgment would work an injustice to the City who had obtained a monetary judgment. *In re MTBE*, 2010 WL 1328249, at *1, *4. In addition, the defendant joined in the request for appeal and the appeal involved a number of issues, including "whether the state law claims are preempted by federal law," that were unsettled in the context of the ongoing MDL litigation. *Id*. at *5. Appellate review thus benefitted all the parties in the MDL as well.

The differences between this case and *MTBE* again are profound. No case has been tried here and the Defendants and this Court will not benefit from the cost and complexities occasioned by the proposed piecemeal appeal. Nor are there any issues of law that need to be settled. Judge Rakoff's appellate rulings already have accomplished that. Benefits in this case will be achieved by letting it proceed, not by dividing it up. Moreover, had the Trustee wanted to seek immediate appeal of the Actual Knowledge Decision, he could have done so in that court before Judge Rakoff. He did not. He should not be allowed to do here what he failed to request in the decision with which he takes offense.

In sum, there is no precedent under Rule 54(b), and the Trustee cites none, for splitting a case apart through an interlocutory appeal where no efficiencies will be achieved and where

there is instead an orderly path to final resolution under an established Case Management Schedule. The Trustee's desire for an interim legal opinion now is not a part of the Rule 54(b) calculus and his request should be denied.

<b><u>POINT II</u></b>

<b>THIS COURT SHOULD NOT CERTIFY<br><u>THE JUDGMENT FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 158(d)(2)</u></b>

The Trustee also moves this Court to certify the Rule 54(b) Judgment for immediate appeal under 28 U.S.C. § 158(d). Of course, if this Court rejects certification under Rule 54(b), then the Trustee's request to certify under section 158(d) is moot. On the merits, as noted at the outset, the Trustee's certification request is a legal misfire given that it takes on Judge Rakoff's decision, not this Court's ruling. *See* n.2 *supra*. The Trustee's combining of the Rule 54(b) request with a request for certification also is a contrivance of sorts. If the requirements of Rule 54(b) are met, an appeal of right would be allowed to the district court, without the need for a request to certify under section 158. And, a request to certify the Court's order could be made under section 158, without regard to Rule 54(b). The Trustee apparently wants to bypass the ordinary appellate review in the district court by its request for certification. By pursuing a Rule 54(b) judgment, however, the Trustee confines his appeal to the Funds, leaving the Merkin Defendants behind. This manipulative approach seems particularly at odds with the orderly resolution of this action. In any event, the requirements of section 158 are not met here either.

Section 158(d)(2) provides, in pertinent part, that the Court shall make the certification if (1) the Judgment "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," (2) the Judgment involves "a matter of public import," or (3) an immediate appeal from the Judgment "may materially advance the progress of the case or proceeding in which the appeal is taken."

28 U.S.C. § 158(d)(2).   None of these alternative requirements is satisfied by the Trustee's

showing here.

A.      **The Actual Knowledge Decision Was Decided in Reliance Upon**
        **Settled Precedent of the United States Supreme Court and Second Circuit**

The Trustee argues that its motion involves two questions of law for which there are no

controlling decisions from the Second Circuit or the Supreme Court.   The first question is

whether the Court erred in holding that a showing of actual knowledge is necessary to remove

defendants from the protection of the section 546(e) safe harbor provision, as opposed to a less

burdensome showing, such as bad faith.   The second is whether the Trustee properly "assumes

the burden" on a motion to dismiss to sufficiently allege actual knowledge in order to negate the

applicability of section 546(e).   *See* Trustee's Memo. In Support (pp. 20-21, 27).   On analysis,

neither question meets the criteria for certification.

Regarding the first question, while the Trustee asserts that there is no controlling law in

the Second Circuit or the Supreme Court on the disputed legal issue, that is not actually the case.

On the contrary, in making his Actual Knowledge ruling, Judge Rakoff applied well-settled

principles of statutory construction to the language of the safe harbor provision and carried out

the provision's equally well-settled purpose of providing protection to the securities market by

prohibiting the avoidance of a broad category of transfers.   *See In re Madoff Sec.*, 2013 WL

1609154, at *4 ("Since the language of that section is plain, and since its purpose is protection of

the securities markets and of the reasonable expectations of legitimate participants in these

markets, the burden is on the Trustee to prove that a transferee does not meet what the language

and purpose of Section 546(e) require." (citing *Katz*, 462 B.R. at 452-53)); *see Conn. Nat'l Bank

v. Germain*, 503 U.S. 249, 253-54 (courts must give statutes their plain meaning and "presume

that a legislature says in a statute what it means and means in a statute what it says there.");

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V. (In re Enron Creditors)*, 651 F.3d 329, 334 (2d Cir. 2011) ("Congress enacted § 546(e)'s safe harbor in 1982 as a means of minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." (internal quotation marks and citation omitted)); *see also SIPC v. Bernard L. Madoff Inv. Sec. LLC ("SIPC II")*, 505 B.R. 135, 142-143 (S.D.N.Y. 2013) (citing the Actual Knowledge Decision and applying the same principles in determining the scope of a similar safe harbor provision in the same statute).

In these circumstances, there is indeed "controlling authority" and *In re MF Global Holdings Ltd.*, No. 11–15059, 2012 WL 1438262, at *1 (Bankr. S.D.N.Y. April 25, 2012) illustrates the point. There, the Bankruptcy Court denied a party's motion for 158(d)(2) certification, after acknowledging that there was no circuit precedent directly on point. The court pointed out that if a lack of a directly applicable precedent was determinative, "a party could simply define an issue so narrowly as to guarantee its ability to appeal the adverse decision." *Id.* It also concluded that its decision denying the motion was based on controlling precedent because it "was based on the plain language of Bankruptcy Code and settled case law in this circuit limiting authority of courts to create new substantive rights under the Code based on general equitable principles." *Id.* That analysis applies to this Court's adherence to Judge Rakoff's ruling in this case.

As for the burden-of-proof question, there is no absence of controlling authority there either. The Trustee cites to a string of cases for the principle that it has no duty to plead facts regarding a good faith affirmative defense. But those cases cast no doubt on the Court's handling of the burden of proof on the motions to dismiss made in this case. Rather, the Second Circuit has consistently held that "a complaint can be dismissed for failure to state a claim

pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)); *see In re Dreier LLP*, 462 B.R. 474, 485 (Bkrtcy. S.D.N.Y. 2011).

Here, the allegations in the complaint indisputably triggered the safe harbor defense and the motions to dismiss exposed the Complaint's failure to plead around it. This Court's decision simply follows through on settled law in holding that the Trustee's allegations are insufficient, thereby leaving the claims subject to dismissal.

The Trustee also seeks to certify questions to the Second Circuit that involve this Court's application of the Actual Knowledge Decision to the facts of this case. *See* Trustee's Memo. In Support (p. 27). Undoubtedly, it would be better for such an appeal to take place after the further development of the facts. *See Weber v. United States Trustee*, 484 F.3d 154, 161 (2d Cir. 2007) ("[W]e will be reluctant to accept cases for direct appeal when we think that percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision.").

### B.    The Judgment Does Not Involve Matters of Public Importance, But Rather a Simple Issue of Statutory Construction

The Trustee argues at length that this Court's ruling involves matters of public importance because the legal issues presented "alter the protections afforded by SIPA[.]" Trustee's Memo. In Support (at 22). In particular, the Trustee claims that the ruling altered SIPA's protections by "significantly limit[ing] the ability of this and every other future SIPA trustee to recover and return customer property to its rightful owners in accordance with SIPA." *Id*. The Trustee is wrong for three independent and equally dispositive reasons.

*First*, at bottom, the Court's ruling involves only an application of the controlling law in this Circuit, as set forth in the Actual Knowledge Decision, to the facts of this particular case. The Trustee's attempt to turn this Court's decision into the one establishing the actual knowledge standard cannot be maintained.  The Trustee's attempt to accomplish here what he knows will be denied in the district court that issued the Actual Knowledge Decision should be rejected.

*Second*, to the extent this Court's decision could be seen as the relevant one delineating the actual knowledge standard, such standard is an issue of statutory construction, not a legal question of public importance.  While the Trustee does his best to elevate the public nature of the controversy surrounding the Court's ruling, the ruling itself rests only on the construction of a statute.  That is a distinction with a difference in this context.  For example, there have been fewer issues more important to the public in recent history than the possible collapse of the automobile industry.  Yet, when parties moved to certify an order granting then-bankrupt General Motors's proposed sale of its assets as immediately appealable under section 158(d)(2), the Southern District of New York held that the order in question did not involve a matter of public importance.  *See In re Gen. Motors Corp.*, 409 B.R. 24, 28 (Bkrtcy. S.D.N.Y. 2009). After acknowledging that the Bankruptcy Code does not define "public importance," the court stated that the term "doesn't necessarily mean what a litigant considers to be important."  *Id*. The court went on to note that "[c]ertainly, many people would agree that GM's well-being is a matter of public importance[,]" but that the Code requires that "the judgment, order, or decree involves *a question of law* that involves a matter of public importance."  *Id*. (internal quotation marks omitted).  The court concluded that the relevant question of law—whether successor liability can be imposed in sales pursuant to 11 U.S.C. § 363—"is hardly a trivial issue as a matter of bankruptcy law and policy . . . [b]ut it's ultimately a matter of statutory construction

and common law analysis—as contrasted, for example, to constitutional issues[.]" *Id.* Similarly, the scope of the safe harbor provision is hardly trivial, but it, too, presents nothing more than a straightforward issue of statutory construction.

*Finally*, the purpose of the safe harbor provision is to significantly limit the ability of trustees to avoid and recover fraudulent transfers. The provision seeks to minimize the displacement of parties to settled securities transactions by limiting trustees' ability to avoid and recover. *In re Enron Creditors*, 651 F.3d at 334 ("Congress enacted § 546(e)'s safe harbor in 1982 as a means of minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." (internal quotation marks and citation omitted)); *see SIPC II*, 505 B.R. at 142-143 (S.D.N.Y. 2013) (rejecting the Trustee's argument that a similar safe harbor provision conflicts with SIPA and noting that "'SIPA expressly incorporates the limitations Title 11 places on trustee's powers, including § 546(e)'" (quoting *Picard v. Greiff*, 476 B.R. at 722, n.7 (S.D.N.Y. 2012))). The Court's application of the provision here does not rise to the level of a matter of public importance. The Court followed through on the provision's purpose and in no way altered established rights of trustees to avoid and recover fraudulent transfers. Applying a statute consistent with its purpose generates no issue of public importance either.

### C.    An Immediate Appeal to The Second Circuit Will Not Materially Advance the Progress of the Case

As noted above, the most efficient course of action here is to proceed according to the Court's Case Management Schedule, without adding a piecemeal appeal to the Second Circuit. Here, adherence to the final judgment rule promotes efficiency. By comparison, having the case proceed in two fora adds nothing but complexity and cost, something that all the parties – and particularly the Trustee – should be particularly keen to avoid. Moreover, while the Trustee

attempts to inject a sense of urgency about the unsettled state of law, this is more misdirection. Judge Rakoff's rulings have settled the law for this proceeding, just as appellate review would do in any other circumstances. There is no demonstrable need, therefore, to interrupt these proceedings because there is no uncertainty here on what law to apply. This criteria for certification accordingly is not met either.

Finally, SIPC's brief in support of the Trustee's motion largely mirrors the Trustee's memorandum of law, but it also suggests that the District Court "envisioned" review by the Second Circuit. SIPC's Brief (at 4). Relying on a 2014 Order of the Southern District of New York denying a motion for interlocutory appeal, SIPC specifically states that "it appears that the District Court envisioned that the Second Circuit would review its opinions after this Court applied the District Court's opinion to the individual claims brought by the Trustee." *Id*. SIPC's construction of the 2014 Order does not withstand analysis.

First, the 2014 Order concerned the district court's decision on the good faith standard and pleading requirements under section 548(c), not the Actual Knowledge Decision pursuant to section 546(e). Memorandum Order, *In re Madoff Sec.*, No. 12-mc-155, Dkt. No. 555 (S.D.N.Y. July 21, 2014). Thus, SIPC's reliance on that ruling is inapposite to this Court's decision relating to a different Bankruptcy Court provision.

Next, in its order denying the Trustee's motion requesting 1292(b) certification, the district court stressed that "the final judgment rule is a critical component of the federal justice system, adding immensely to its efficiency." *Id.* at 2 (internal quotation marks and citation omitted). It then went on to note that only exceptional circumstances justify the departure from the basic policy of postponing appellate review until after entry of judgment. *Id*. Recognizing that a piecemeal appeal of the narrow legal questions at issue, which are very similar in nature to

the legal questions that the Trustee intends to raise on appeal in the present case, the court found

that an appeal "w[ould] delay rather than hasten the termination of the litigation." *Id*. at p. 3.

That order plainly does not suggest that an interlocutory appeal to the Second Circuit is

contemplated based on the implementation of its rulings.  Quite the contrary, the reasoning in the

order clearly encourages adherence to the final judgment rule and the rejection of a request for

interlocutory appeal like this one.

## **CONCLUSION**

For all of these reasons, the Trustee's motion should be denied.


Dated:  New York, New York
        September 12, 2014

**REED SMITH LLP**

By: /s/ James C. McCarroll
        James C. McCarroll
Jordan W. Siev
Michael J. Venditto
Casey D. Laffey
599 Lexington Avenue
New York, NY  10022
Telephone:  (212) 521-5400
Facsimile:   (212) 521-5450
jmccarroll@reedsmith.com
jsiev@reedsmith.com
mvenditto@reedsmith.com
claffey@reedsmith.com

*Attorneys for Bart M. Schwartz, as Receiver*
*of Defendants Ariel Fund Limited and*
*Gabriel Capital, L.P.*

**FULBRIGHT & JAWORSKI LLP**

By: /s/ Judith A. Archer
        Judith A. Archer
David L. Barrack
Jami Mills Vibbert
666 Fifth Avenue
New York, New York  10103
Telephone:  (212) 318-3000
Facsimile:   (212) 318-3400
judith.archer@nortonrosefulbright.com
david.barrack@nortonrosefulbright.com
jami.vibbert@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver*
*for Defendant Ascot Partners, L.P.*