Michael I. Goldberg (MG 0869)
**AKERMAN, LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224

*Attorneys for A&G Goldman Partnership, Gerald Goldman, and Alan Goldman*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (BRL) |
| - against - | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| - against - | Adv. Pro. No. 10-04421(SMB) |
| A&G GOLDMAN PARTNERSHIP, a New York Partnership, | |
| GERALD GOLDMAN, as General Partner of A&G Goldman Partnership, individually, and | |
| ALAN GOLDMAN, as General Partner of A&G Goldman Partnership, individually, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>RENEWED MOTION TO DISMISS THE COMPLAINT</u>**

{29608013;1}

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT ............................................................................................................................ 1

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................. 3

I. ALL COUNTS OTHER THAN § 548(a)(1)(A) SHOULD BE IMMEDIATELY DISMISSED PURSUANT TO § 546(e) ........................................................................ 3

III. THE TRUSTEE LACKS STANDING TO RELY UPON TRANSFERS MADE BY MADOFF BEFORE THE CREATION OF BLMIS TO SUPPORT HIS CLAIMS ........................................................................................................................... 4

IV. THE TRUSTEE'S CALCULATION OF DEFENDANTS' CLAWBACK EXPOSURE RUNS AFOUL OF THE TWO YEAR REACH BACK PERIOD SET FORTH IN 11 U.S.C. SECTION 548 ............................................................................. 7

V. THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS ARE SIMILARLY SUBJECT TO DISMISSAL ........................................................................................... 7

    A. The Claims Against Subsequent Transferees Lack the Requisite Factual Detail ................................................................................................................... 8

    B. The Trustee Cannot Convert Subsequent Transferees into Beneficiaries of an Initial Transfer ............................................................................................... 9

VI. THE TRUSTEE HAS NOT FULFILLED HIS BURDEN TO PLEAD HIS SATISFACTION OF THE CONDITION SET FORTH IN 15 U.S.C. § 78fff-2(C)(3) WITH PARTICULARITY ............................................................................. 11

VII. JOINDER IN THE OTHER MOTIONS TO DISMISS FILED IN SIMILAR CASES ........................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonded Fin. Servs. v. European Am. Bank*,
  838 F.2d 890 (7th Cir. 1988) ..................................................................................................11

*Ellison v. American Image Motor Co., Inc.*,
  36 F. Supp. 2d 628 (S.D.N.Y. 1999) ......................................................................................10

*Enron Creditors Recovery Corp. v. J.P. Morgan Sec. (In re Enron Creditors Recovery Corp.)*,
  407 B.R. 17 (Bankr. S.D.N.Y. 2009) .....................................................................................12

*Gowan v. Amaranth LLC (In re Dreier LLP)*,
  452 B.R. 451 (Bankr. S.D.N.Y. 2011) ...................................................................................10

*Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*,
  452 B.R. 467 (Bankr. S.D.N.Y. 2011) ...................................................................................12

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ..............................................................4

*In re Augie/Restivo Baking Company*,
  860 F.2d 515 (2d. Cir. 1988) ....................................................................................................6

*In re Bellingham Ins. Agency, Inc.*,
  702 F.3d 553 (9th Cir. 2012) ....................................................................................................5

*In re Bullion Reserve of N. Am.*,
  922 F.2d 544 (9th Cir. 1991) ..................................................................................................11

*In re Lehman Bros. Holdings Inc.*,
  No. 09-01045, 2011 WL 722601 (Bankr. S.D.N.Y. Feb. 22, 2011) .........................................3

*In re Pearlman*,
  2012 WL 2370389 (Bankr. M.D. Fla. 2012) .........................................................................13

*Perrin & Nissen Ltd. v. SAS Group Inc.*,
  No. 06 Civ. 13089, 2009 WL 855693 (S.D.N.Y. Mar. 27, 2009) ............................................3

*Picard v. Cohmad Sec. Corp*,
  454 B.R. 317 (Bankr. S.D.N.Y. 2011) ...................................................................................10

*Picard v. Joel Busel Revocable Trust, et. al*,
  No. 10-04423-brl (Bankr. S.D.N.Y.) ........................................................................................1

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
  458 B.R. 87 (Bankr. S.D.N.Y. 2011) ................................................................................. 9, 10

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999) .................................................................................... 10

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*,
  476 B.R. 715 (S.D.N.Y. 2012) ........................................................................................ 3, 4, 9

*Stern v. Marshall*,
  131 S. Ct. 2594 (2011) ............................................................................................................. 4

*Tese-Milner v. Edidin Assoc.*,
  490 B.R. 84 (Bankr. S.D.N.Y. 2013) ..................................................................................... 13

**Statutes**

11 U.S.C. §§ 544, 548, 550, and 551 ................................................................................................ 3

11 U.S.C. § 548 .......................................................................................................................... 2, 4, 8

11 U.S.C. § 550(b) .......................................................................................................................10, 11

15 U.S.C. § 78fff-2(C)(1)(A)-(D) .......................................................................................................12

15 U.S.C. § 78fff-2(C)(3) ...................................................................................................................12

Bankruptcy Code § 546(e) ............................................................................................................ 2, 3

Bankruptcy Code § 548(a)(1)(A) ............................................................................................. passim

Bankruptcy Code § 548(a)(1)(B) and § 544 .................................................................................... 3

Bankruptcy Code § 550(a)(2) ............................................................................................................ 8

**Rules**

Bankruptcy Rule 7012(b)(6) ...................................................................................................1, 3, 13

Bankruptcy Rules 7012(b)(1) .......................................................................................................1, 13

F.R.C.P. 8(a) ....................................................................................................................................... 9

F.R.C.P. 9(b) ......................................................................................................................................10

F.R.C.P. 12(b)(1) ..........................................................................................................................1, 13

F.R.C.P. 12(b)(6) ......................................................................................................................1, 3, 13

## MEMORANDUM OF LAW IN SUPPORT OF
## RENEWED MOTION TO DISMISS THE COMPLAINT

A&G Goldman Partnership, a New York Partnership ("A&G"), Gerald Goldman, as General Partner of A&G and individually, and Alan Goldman, as General Partner of A&G and individually (collectively, the "Defendants"), respectfully submit this Memorandum of Law in support of their Renewed Motion to Dismiss the Complaint filed in this instant adversary proceeding (the "Action"). Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), made applicable to this Action through Bankruptcy Rules 7012(b)(1) and (6), the Defendant seeks dismissal for the Plaintiff's failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

This Action is among hundreds in which the Trustee, Irving H. Picard (the "Trustee" or "BLMIS Trustee"), seeks to recover alleged "profits" received by victims who unwittingly invested in an alleged Ponzi scheme. A&G was a customer of Bernard L. Madoff Investment Securities LLC ("BLMIS"), a registered broker-dealer run by Bernard L. Madoff ("Madoff"). A&G received periodic brokerage account statements which appeared to accurately reflect its account balances for investments by BLMIS in various securities pursuant to its securities contract with BLMIS. As acknowledged by the Trustee, when A&G made withdrawals from is account, it had no idea "[t]he security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious." (Comp1. ¶ 22.)

Through this proceeding, the Trustee for the liquidation of BLMIS, appointed under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), seeks to avoid these transactions through avoidance claims asserted under various provisions of the Bankruptcy Code and New York's Debtor & Creditor Law. All counts of the Complaint, except the Trustee's §

548(a)(1)(A) count, should be dismissed pursuant to § 546(e). Moreover, the Trustee's remaining § 548(a)(1)(A) claim should be dismissed as well because (i) the Court lacks subject matter jurisdiction to adjudicate the Trustee's claims; (ii) the underlying "netting" process used by the Trustee to determine if a defendant is a "net winner" sidesteps the two year reachback period set forth in Section 548 and includes transfers that he has no standing to avoid; (iii) the Trustee's claims against subsequent transferees are legally defective because they are not pled with the requisite specificity; and (iv) the Trustee has not alleged that BLMIS' customer property is insufficient to pay allowed customer claims with the requisite particularity.

## BACKGROUND[1]

As noted above, A&G is among more than 8,000 customers of BLMIS, a securities broker-dealer registered with the United States Securities and Exchange Commission and a member of the Securities Investor Protection Corporation ("SIPC"). A&G regularly received account statements which purported to accurately represent the then current value of its investments. In reliance upon the fraudulent misrepresentations of Madoff and BLMIS, A&G periodically withdrew funds from its investment account, completely unaware that account statements were falsified. While the world now knows that Madoff was engaged in an extraordinary fraud, deceiving investors (including A&G), financial institutions, and regulators, when A&G made withdrawals from its account, it was impossible for it to know that BLMIS had never actually traded any securities (as alleged by the Trustee). Notably, the Trustee has not alleged that A&G was anything other than a completely innocent victim lacking any knowledge of Madoff's fraud.

---

[1] For purposes of this motion only, the Defendants accept as true the facts as set forth in the Trustee's Complaint.

{29608013;1}                                      2

As a result of the District Court's ruling in *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) and subsequent judgments of dismissal entered by the District Court, the only claim currently remaining in each of the Actions is the Trustee's actual fraudulent conveyance claim asserted pursuant to Section 548(a)(1)(A). *Greiff*, 476 B.R. at 722 ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."). The Defendants now seeks dismissal of that claim for the reasons described herein.

## ARGUMENT

### I. ALL COUNTS OTHER THAN § 548(a)(1)(A) SHOULD BE IMMEDIATELY DISMISSED PURSUANT TO § 546(e).[2]

Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012(b)(6) permit dismissal of a complaint that alleges no cause of action upon which relief may be granted. *See, e.g., Perrin & Nissen Ltd. v. SAS Group Inc.,* No. 06 Civ. 13089, 2009 WL 855693, at *9 (S.D.N.Y. Mar. 27, 2009); *In re Lehman Bros. Holdings Inc.,* No. 09-01045, 2011 WL 722601, at *2 (Bankr. S.D.N.Y. Feb. 22, 2011).

The Complaint initially purported to assert claims under multiple federal fraudulent conveyance provisions, 11 U.S.C. §§ 544, 548, 550, and 551, alleging a right to recover transfers under both the Bankruptcy Code's intentional fraudulent conveyance provision (§ 548(a)(1)(A)) and constructive fraud provisions (§ 548(a)(1)(B)), and under both the intentional and constructive fraud provisions of Sections 273, 275, 276, 278, and 279 of the New York Debtor and Creditor Law. The Defendants are entitled to dismissal of each of these claims as a matter of law.

---

[2] Although Defendants believe all causes of action other than the Trustee's Section 548(a)(1)(A) claim have been dismissed by the District Court, the Trustee has not filed an amended complaint. In an abundance of caution, the Defendants include this section in this Motion based upon the procedural irregularity of this case.

{29608013;1}  3

As a result of proceedings in the District Court, the Trustee's only remaining avoidance claims are those under Bankruptcy Code Section 548(a)(1)(A) for avoidance of <u>actual intent</u> fraudulent transfers during the federal two-year "reach back" period.  *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."), *appeal pending, In re Madoff Sec.*, No. 12-2557 (2d Cir.).  In subsequent judgments, the court dismissed the Trustee's constructive fraudulent transfer claims asserted under Section 548(a)(1)(B) and state law avoidance claims, which sought to avoid transfers made during a six-year "reach back" period.  *Id*.  Nonetheless, these claims appear to continue to be asserted against the Defendants.  Thus, Defendants submit that all causes of action other than the Trustee's Section 548(a)(1)(A) claim should be formally dismissed and the Trustee should be required, at a minimum, to re-plead the singular claim that survives post-*Greiff*.

## II.   THE TRUSTEE LACKS STANDING TO RELY UPON TRANSFERS MADE BY MADOFF BEFORE THE CREATION OF BLMIS TO SUPPORT HIS CLAIMS.

BLMIS did not exist as a legal entity until December 4, 2000.  Before that day, Madoff conducted business as a sole proprietor and made distributions to investors directly.[3]  After BLMIS was formed, upon information and belief, Madoff transferred money and investor accounts he held on behalf of investors from his sole proprietorship to BLMIS.  From then on, all customer transactions were effectuated through BLMIS.

After Madoff was placed into bankruptcy and BLMIS was placed into a SIPC liquidation, the Trustee obtained an order substantively consolidating Madoff's personal bankruptcy estate with BLMIS' bankruptcy estate on June 9, 2009, *nunc pro tunc* to December 11, 2008 [Docket No. 252].  Notwithstanding the consolidation of the two estates, Madoff's individual estate

---

[3]   Moreover, upon information and belief, Madoff was never a SIPC member.

{29608013;1}                                                       4

continues to remain in existence with its own, separate trustee (hereafter, the "Madoff Trustee") who has his own independent powers. The Substantive Consolidation Order specifically provides that "[t]he SIPA Trustee shall continue to have the duties and powers of the SIPA Trustee and, in addition, he shall have all duties and powers of a Chapter 7 trustee for the Madoff estate *other than those set forth in paragraph 4 hereof.*" (emphasis added). See, Consent Substantive Consolidation Order at p. 5.

>Paragraph 4 of the Substantive Consolidation Order provides:
>
>Notwithstanding the substantive consolidation of the Madoff estate into the BLMIS SIPA Proceeding, the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee to bring claims under Chapters 5 and 7 of the Bankruptcy Code in consultation with the SIPA Trustee and SIPC. Further, all powers, rights, claims and interests of the Madoff estate are expressly preserved, including without limitation all Chapter 5 and Chapter 7 powers, rights, claims and/or interests.

*Id*.

Substantive consolidation customarily involves "the pooling the assets of, and claims against, the two entities" being consolidated and "satisfying liabilities from the resultant common fund…" *In re Augie/Restivo Baking Company*, 860 F.2d 515, 518 (2d. Cir. 1988). "Substantive consolidation has no express statutory basis but is the product of judicial gloss." *Id*. Thus, each case of substantive consolidation can be unique.

In this case, although the Bankruptcy Court consolidated the estates' assets and liabilities for claims purposes, it is clear that the Bankruptcy Court purposely tailored something short of a complete consolidation of the two estates with the full intent that any transfers made by Madoff himself would be pursued solely by the Madoff Trustee—and not the BLMIS Trustee. Inasmuch as there has been an "incomplete" substantive consolidation of the two estates, whereby the Madoff estate has a separate trustee with the ability to prosecute Chapter 5 causes of action, the

BLMIS Trustee lacks standing to recover transfers made by Madoff personally—which includes transfers he made prior to the time BLMIS even existed.[4]  The fact that the Bankruptcy Court later decided to substantively consolidate the Madoff and BLMIS estates is of no avail, because the Substantive Consolidation Order expressly consolidated Madoff's and BLMIS' assets and liabilities for claims and distribution purposes only (without giving the BLMIS Trustee the ability to bring Chapter 5 claims on behalf of the Madoff estate) and was only effective as of December 10, 2008, well after the transfers took place.  Therefore, the Substantive Consolidation Order was clearly not entered for the purpose of capturing transfers made by Madoff himself.  Accordingly, a transfer by Madoff to the investor should not be considered a transfer by BLMIS to the investor.

The fact that the Bankruptcy Court consolidated Madoff's and BLMIS' assets and liabilities, without giving the BLMIS Trustee the power to bring Chapter 5 avoidance actions to recover transfers made by Madoff individually, is legally significant.[5]  Attached to each of the Complaints is a chart prepared by the Trustee detailing the deposits and withdrawals of each of the Defendants.  The purported purpose of this chart is to demonstrate that a given defendant is a "net winner," in that they withdrew more money than they deposited.  The Trustee's chart for the A&G includes: (i) ten (10) transfers totaling $9.2 million made by Madoff to A&G prior to December 4, 2000, the date of BLMIS' creation; and (ii) one (1) principal transfer in the amount of $650,000 made by Madoff prior to December 4, 2000.  As such, the Trustee relies upon

---

[4]    It is clear that the BLMIS Trustee is aware of his lack of standing.  This is evident by the fact that in other avoidance cases involving transfers made directly by Madoff—as opposed to BLMIS— the Madoff Trustee was required to join the action.  For example, the Madoff Trustee was a necessary plaintiff in the lawsuit brought against some of Madoff's relatives to recover transfers made directly by Madoff to his relatives.  That case involved the very same causes of action asserted in the Actions.  *See* Adversary Proceeding No. 10-05328-brl.

[5]    This is also significant because through substantive consolidation, the Bankruptcy Court pooled Madoff's and BLMIS's liabilities thereby eliminating any argument that BLMIS does not have to take into account investor deposits given to Madoff.

{29608013;1}                                6

transfers made by Madoff individually (as opposed to BLMIS) as a basis for bringing his claims. Since the Trustee cannot sue to recover these transfers, he does not have standing to rely upon them in support of his avoidance claims on behalf of BLMIS' estate.[6] Based upon the foregoing, the Trustee should be required to dismiss this Action as A&G is not a net winner.

## IV. THE TRUSTEE'S CALCULATION OF DEFENDANTS' CLAWBACK EXPOSURE RUNS AFOUL OF THE TWO YEAR REACH BACK PERIOD SET FORTH IN 11 U.S.C. SECTION 548.

Despite the fact that the District Court held that the Trustee cannot recover transfers that occurred more than two years prior to the commencement of this bankruptcy, in reality, the Trustee's method of calculating a defendant's clawback exposure sidesteps this limitation. More specifically, in calculating the BLMIS customers' clawback exposure, the Trustee has adopted a netting procedure that includes withdrawals going back to the inception of the account-- which in many cases covers a period of over a decade. As such, the Court should dismiss the 548(a)(1)(A) count as the sum withdrawn prior to the two year reach-back period far exceeds the amount of the alleged 2 year transfers.

## V. THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIMS ARE SIMILARLY SUBJECT TO DISMISSAL.

The Trustee pursues claims against Gerald Goldman and Alan Goldman (the "Goldmans") as subsequent transferees under § 550(a)(2) of the Code, in which he seeks the recovery of alleged but unspecified subsequent transfers. These subsequent transfer claims are subject to dismissal for two reasons: (1) the Trustee's allegations lack sufficient detail to make

---

[6] Although the Second Circuit approved the Trustee's net equity method for claims calculation purposes, it did not do so for avoidable transfer purposes. That is, the Second Circuit never concluded that the Trustee could add up all "ins" and subtract all "outs" and if that was a negative number sue the investor to recover the "excess" distributions. Moreover, it is unclear whether the Second Circuit even considered that Madoff was a separate distinct entity operating his Ponzi scheme long before BLMIS was ever established. Although Judge Rakoff did approve the use of this calculation for avoidance purposes, Judge Rakoff never considered that the Trustee lacked standing to pursue Chapter 5 claims to recover transfers made by Madoff himself.

{29608013;1}                                7

the claims plausible on their face and thus do not meet the pleading requirements of Rule 8(a); and (2) they extend the scope of "subsequent transferee" liability to an unreasonable and inappropriate degree. The Trustee fails to satisfy a condition precedent in that he fails to establish that the transfers at issue may be avoided as against the initial transferees before pursuing any subsequent transferee claims.

### A.  The Claims Against Subsequent Transferees Lack the Requisite Factual Detail.

This Court has previously recognized that vague, unspecific allegations of subsequent transferee liability are insufficient to state a claim. In *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011), the court held that subsequent transfer claims lacking "even a modicum of specificity" must be dismissed. *Id.* at 120. The court stated further:

> While the Complaint's failure to indicate specific amounts does not in and of itself warrant dismissal of the Subsequent Transfer claims, its failure to provide even a modicum of specificity with respect to the Subsequent Transfers so as to put the Defendants on notice as to which ones the Trustee seeks to recover does so warrant.

*Id.* (internal citations omitted). As in *Madoff*, the Trustee's complaint here is speculative and lacking in factual detail.

Specifically, the allegations in support of subsequent transfer claims do not identify any dates or amounts of any alleged subsequent transfers, let alone any details as to how the transfers allegedly occurred. Moreover, aside from general identification of the Goldmans, the Complaint does not link any specific Defendant to any specific alleged initial or subsequent transfer(s) – in other words, the Trustee merely (and improperly) "lumps all of the Defendants together" for the purposes of alleging both initial and subsequent transfers. In cases where fraud is asserted, the

{29608013;1}                                    8

failure to distinguish among defendants is fatal to a plaintiff's complaint. *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) ("[W]here a case involves multiple defendants, F.R.C.P. 9(b) requires that the complaint allege facts specifying each defendant's contribution to the fraud, identifying which defendant is responsible for which act") (citing *Ellison v. American Image Motor Co., Inc.*, 36 F. Supp. 2d 628 (S.D.N.Y. 1999)).

The allegations pertaining to the subsequent transferees are conclusory assertions without "any sort of estimate of the amount of the purported [s]ubsequent [t]ransfer, or when or how such [t]ransfer occurred." *Madoff*, 458 B.R. at 119. Absent the necessary, critical details, the Trustee's subsequent transferee claims should be dismissed. *See Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 464 (Bankr. S.D.N.Y. 2011) ("[T]he complaint [must] contain the 'necessary vital statistics -- the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."). The details missing here are critical because a subsequent transferee will only be liable for the property of the estate that it wrongfully received. *Picard v. Cohmad Sec. Corp*, 454 B.R. 317, 340 (Bankr. S.D.N.Y. 2011).

**B.     The Trustee Cannot Convert Subsequent Transferees into Beneficiaries of an Initial Transfer.**

The Complaints that allege subsequent transferee claims are not only lacking sufficient detail, they also blur the important distinction made by § 550(a) between initial and subsequent transferees. Section 550 identifies three potential sources from which the Trustee may recover all or part of an avoidable transfer: § 550(a) provides for recovery from two possible entities: (i) the initial transferee and (ii) an entity for whose benefit the initial transfer was made. Section 550(b) provides for recovery from a third source: a subsequent transferee. Unlike transferees under § 550(a), subsequent transferees have a defense to recovery under § 550(b) if they (1) took

for value, including satisfaction or securing of a present or antecedent debt; (2) in good faith; and (3) without knowledge of the voidability of the initial transfer by the debtor. *See* 11 U.S.C. § 550(b).

The value paid by a subsequent transferee need only be sufficient to support a simple contract, similar to protections provided to *bona fide* purchasers for value under various state laws. In contrast to value in the context of § 548(c), "value" here is the value given to the transferor, not the debtor or, in this case, BLMIS. *See Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 897 (7th Cir. 1988) ("Transferees and other purchasers generally deal only with the previous person in line; they give value, if at all, to their transferors (or the transferors' designees").

In the instant case, the Trustee attempts to bypass the protections afforded to subsequent transferees by pleading that they are also beneficiaries of the initial transfer:

> To the extent the funds transferred from BLMIS were for the benefit of the Subsequent Transferee Defendants, Subsequent Transferee Defendants are the initial transferees of such transfers and are included in the definition of Defendants for purposes of the allegations herein.

(*See* Compl. at ¶ 3.)

No matter how far the Trustee attempts to "stretch" the scope of § 550, these allegations fail because a *later recipient* of an initial transfer is a subsequent transferee, not an initial transferee or a beneficiary of the initial transfer. *See In re Bullion Reserve of N. Am.*, 922 F.2d 544, 548 (9th Cir. 1991) ("A subsequent transferee cannot be an entity for whose benefit the initial transfer was made, even if the subsequent transferee actually receives a benefit from the initial transfer."); *Bonded*, 838 F.2d at 895 (same).

Moreover, the Trustee fails to allege any facts supporting the bare-bones allegation that funds were, transferred for the benefit of the subsequent transferee Defendants. Such facts

would necessarily include the basis for the alleged beneficiary status or which transfers were purportedly received. *Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*, 452 B.R. 467, 478 (Bankr. S.D.N.Y. 2011) (dismissing as "conclusory and speculative" claims that an alleged subsequent transferee was also a beneficiary). The Trustee thus impermissibly implies that any benefit, however indirect or incidental, is sufficient to transform an individual or entity into a "beneficiary" within the meaning of § 550(a)(1) and thus hold them responsible for the entire amount of the initial transfer. To the contrary, "[t]he benefit must be direct, ascertainable and quantifiable and must correspond to, or be commensurate with, the value of the property that was transferred." *Enron Creditors Recovery Corp. v. J.P. Morgan Sec. (In re Enron Creditors Recovery Corp.)*, 407 B.R. 17, 33 (Bankr. S.D.N.Y. 2009) (internal quotation omitted), *rev'd on other grounds*, *Alfa S.A.B. de C.V. v. Enron Creditors Recovery Corp. (In re Enron Creditors Recovery Corp.)*, 422 B.R. 423 (S.D.N.Y. 2009). As such, all subsequent transferee claims must be dismissed.

## VI. THE TRUSTEE HAS NOT FULFILLED HIS BURDEN TO PLEAD HIS SATISFACTION OF THE CONDITION SET FORTH IN 15 U.S.C. § 78fff-2(C)(3) WITH PARTICULARITY.

The Trustee's ability to pursue fraudulent transfer actions is limited to circumstances in which customer property is insufficient to pay customer and SIPC claims. *See* 15 U.S.C. §§ 78fff-2(C)(3) and 78fff-2(C)(1)(A)-(D). The Trustee simply alleges that "absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in paragraphs (A) through (D) of § 78fff-2(C)(1)." (Compl. at ¶ 15.) This conclusory allegation is insufficient to satisfy the Trustee's burden to plead his § 548(a)(1)(A) claim with particularity as required by Federal Rule of Civil Procedure 9(b). *See Tese-Milner v. Edidin Assoc.*, 490 B.R. 84, 92 (Bankr. S.D.N.Y. 2013) (holding that Rule 9(b) applies to § 548(a)(1)(A) claims). Based upon the

foregoing, the Court should dismiss the Complaint's sole remaining Count – the Trustee's § 548(a)(1)(A) claim.

## VII.   JOINDER IN THE OTHER MOTIONS TO DISMISS FILED IN SIMILAR CASES

To the extent that defendants to actions brought by the Trustee are similarly situated to Defendants on whose behalf this Motion is filed, Defendants join in any motions to dismiss filed by those defendants, specifically those motions argued before the Court on September 17, 2004, to the extent that such motions include grounds for dismissal not addressed herein.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and (6), made applicable to this adversary proceeding through Bankruptcy Rules 7012(b)(1) and (6), and grant such other relief as is just and proper.

Dated: New York, NY
       September 22, 2014

Respectfully submitted,

**AKERMAN, LLP**

By: /s/ Michael I. Goldberg
    Michael I. Goldberg (MG 0869)
    Email: michael.goldberg@akerman.com
    Las Olas Centre II, Suite 1600
    350 East Las Olas Boulevard
    Fort Lauderdale, FL 33301-2229
    Phone: (954) 463-2700
    Fax: (954) 463-2224

    *Attorneys for A&G Goldman Partnership,
    Gerald Goldman, and Alan Goldman*