Michael I. Goldberg (MG 0869)
**AKERMAN, LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2229
Phone: (954) 463-2700
Fax: (954) 463-2224

*Attorneys for Empire Prospect Partnership, LP and Josef Mittlemann*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION            :
CORPORATION,                              :
                                          :
        Plaintiff-Applicant,              :   Adv. Pro. No. 08-01789 (BRL)
                                          :
    - against -                           :   SIPA LIQUIDATION
                                          :
BERNARD L. MADOFF INVESTMENT              :   (Substantively Consolidated)
SECURITIES LLC,                           :
                                          :
        Defendant.                        :
------------------------------------------------------------x
In re:                                    :
                                          :
BERNARD L. MADOFF,                        :
                                          :
Debtor.                                   :
------------------------------------------------------------x
IRVING H. PICARD, Trustee for the Liquidation  :
of Bernard L. Madoff Investment Securities LLC, :
                                          :
        Plaintiff,                        :
                                          :
    - against -        :                  :   Adv. Pro. No. 10-04404-SMB
                                          :
EMPIRE PROSPECT PARTNERSHIP, LP; and      :
JOSEF MITTLEMANN, individually and as     :
General Partner of Empire Prospect Partnership, LP, :
                                          :
        Defendants.                       :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
<u>RENEWED MOTION TO DISMISS THE COMPLAINT</u>**

{29594193;1}

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO DISMISS
THE COMPLAINT .......................................................................................................................... 1

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND .................................................................................................................................. 2

ARGUMENT ........................................................................................................................................ 3

I.  ALL COUNTS OTHER THAN § 548(a)(1)(A) SHOULD BE IMMEDIATELY
DISMISSED PURSUANT TO § 546(e) ................................................................................. 3

II. THE TRUSTEE LACKS STANDING TO RELY UPON TRANSFERS MADE
BY MADOFF BEFORE THE CREATION OF BLMIS TO SUPPORT HIS
CLAIMS ................................................................................................................................... 4

III. THE TRUSTEE'S CALCULATION OF DEFENDANTS' CLAWBACK
EXPOSURE RUNS AFOUL OF THE TWO YEAR REACH-BACK PERIOD
SET FORTH IN 11 U.S.C. § 548 ............................................................................................ 7

IV. THE TRUSTEE TAKES AN INCONSISTENT POSITION AS TO RELATED
ENTITIES ................................................................................................................................ 8

V.  THE TRUSTEE HAS NOT FULFILLED HIS BURDEN TO PLEAD HIS
SATISFACTION OF THE CONDITION SET FORTH IN 15 U.S.C. § 78fff-
2(C)(3) WITH PARTICULARITY ........................................................................................ 9

VI. JOINDER IN THE OTHER MOTIONS TO DISMISS FILED IN SIMILAR
CASES ...................................................................................................................................... 9

CONCLUSION ................................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re Augie/Restivo Baking Company*,
  860 F.2d 515 (2d. Cir. 1988)..................................................................................5

*In re Lehman Bros. Holdings Inc.*,
  No. 09-01045, 2011 WL 722601 (Bankr. S.D.N.Y. Feb. 22, 2011)........................3

*Perrin & Nissen Ltd. v. SAS Group Inc.*,
  No. 06 Civ. 13089, 2009 WL 855693 (S.D.N.Y. Mar. 27, 2009) ............................3

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*,
  476 B.R. 715 (S.D.N.Y. 2012)..............................................................................3, 4

*Tese-Milner v. Edidin Assoc.*,
  490 B.R. 84 (Bankr. S.D.N.Y. 2013) .......................................................................9

**Statutes**

11 U.S.C. §502(d) ................................................................................................................8

11 U.S.C. § 544..................................................................................................................3

11 U.S.C. § 548..........................................................................................................2, 7, 3

11 U.S.C. § 550..................................................................................................................3

11 U.S.C. § 551..................................................................................................................3

15 U.S.C. §§ 78aaa ............................................................................................................1

15 U.S.C. § 78fff-2(C)(1) ...................................................................................................8

15 U.S.C. § 78fff-2(C)(3) ...................................................................................................8

Bankruptcy Code § 546(e)..............................................................................................2, 3

Bankruptcy Code § 548(a)(1)(A).................................................................................passim

Bankruptcy Code § 548(a)(1)(B)....................................................................................3, 4

**Rules**

Bankruptcy Rules 7012(b)(1) ...................................................................................................1, 9

Bankruptcy Rules 7012(b)(6) ................................................................................................1, 3, 9

Fed. R. Civ. P. 9(b) .........................................................................................................................9

Fed. R. Civ. P. 12(b)(1)...............................................................................................................1, 9

Fed. R. Civ. P. 12(b)(6)............................................................................................................1, 3, 9

# MEMORANDUM OF LAW IN SUPPORT OF
# RENEWED MOTION TO DISMISS THE COMPLAINT

Empire Prospect Partnership, LP ("Empire") and Josef Mittlemann, individually, and as General Partner of Empire (collectively, the "Defendants") respectfully submit this Memorandum of Law in support of the Renewed[1] Motion to Dismiss the Complaint filed in this instant adversary proceedings (the "Action"). Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), made applicable to this Action through Bankruptcy Rules 7012(b)(1) and (6), the Defendants seek dismissal for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

The Action is among hundreds in which the Trustee, Irving H. Picard (the "Trustee" or "BLMIS Trustee"), seeks to recover alleged "profits" received by victims who unwittingly invested in an alleged Ponzi scheme. The Defendants were customers of Bernard L. Madoff Investment Securities LLC ("BLMIS"), a registered broker-dealer run by Bernard L. Madoff ("Madoff"). The Defendants received periodic brokerage account statements which appeared to accurately reflect their account balances for investments by BLMIS in various securities pursuant to Defendants' securities contract with BLMIS. As acknowledged by the Trustee, when Defendants made withdrawals from their accounts, they had no idea "[t]he security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious." (Comp1. ¶ 23.)

Through this proceeding, the Trustee for the liquidation of BLMIS, appointed under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), seeks to avoid these

---

[1] On March 19, 2014, the Defendants withdraw, without prejudice, their pending Motion to Dismiss (ECF No. 20) and supporting Memorandum of Law (ECF No. 21) in order to proceed with mediation as permitted under the Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order entered in *In re Madoff*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Nov. 10, 2010) (ECF No. 3141), governing the prosecution of BLMIS avoidance actions. The mediation proved unsuccessful and the Defendants have thus refiled their Motion to Dismiss.

{29594193;1}                                       1

transactions through avoidance claims asserted under various provisions of the Bankruptcy Code and New York's Debtor & Creditor Law. All counts of the Complaint, except the Trustee's § 548(a)(1)(A) count, should be dismissed pursuant to § 546(e). Moreover, the Trustee's remaining § 548(a)(1)(A) claims should be dismissed as well because (i) the Trustee lacks standing to rely upon transfers made by Madoff before the creation of BLMIS to support his claims; (ii) the underlying "netting" process used by the Trustee to determine if a defendant is a "net winner" sidesteps the two year reach-back period set forth in Section 548 and includes transfers that he has no standing to avoid; (iii) the Trustee takes an inconsistent position with related entities for purposes of determining liability; and (iv) the Trustee has not alleged that BLMIS' customer property is insufficient to pay allowed customer claims with the requisite particularity.

## **BACKGROUND**[2]

As noted above, Defendants were among more than 8,000 customers of BLMIS, a securities broker-dealer registered with the United States Securities and Exchange Commission and a member of the Securities Investor Protection Corporation ("SIPC"). Defendants regularly received account statements which purported to accurately represent the then current value of their investments. In reliance upon the fraudulent misrepresentations of Madoff and BLMIS, Defendants periodically withdrew funds from their investment accounts, completely unaware that account statements were falsified. While the world now knows that Madoff was engaged in an extraordinary fraud, deceiving investors (including the Defendants), financial institutions, and regulators, when Defendants made withdrawals from their accounts, it was impossible for them to know that BLMIS had never actually traded any securities (as alleged by the Trustee).

---

[2]  For purposes of this motion only, the Defendants accept as true the facts as set forth in the Trustee's Complaint.

{29594193;1}                                               2

Notably, the Trustee has not alleged that Defendants were anything other than completely innocent victims who had no knowledge of Madoff's fraud.

As a result of the District Court's ruling in *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) and subsequent judgments of dismissal entered by the District Court, the only claim currently remaining in each of the Actions is the Trustee's actual fraudulent conveyance claim asserted pursuant to Section 548(a)(1)(A). *Greiff*, 476 B.R. at 722 ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."). Defendants now seek dismissal of that claim for the reasons described herein.

## ARGUMENT

### I.   ALL COUNTS OTHER THAN § 548(a)(1)(A) SHOULD BE IMMEDIATELY DISMISSED PURSUANT TO § 546(e).[3]

Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012(b)(6) permit dismissal of a complaint that alleges no cause of action upon which relief may be granted. *See, e.g., Perrin & Nissen Ltd. v. SAS Group Inc.,* No. 06 Civ. 13089, 2009 WL 855693, at *9 (S.D.N.Y. Mar. 27, 2009); *In re Lehman Bros. Holdings Inc.,* No. 09-01045, 2011 WL 722601, at *2 (Bankr. S.D.N.Y. Feb. 22, 2011).

The Complaint initially purported to assert claims under multiple federal fraudulent conveyance provisions, 11 U.S.C. §§ 544, 548, 550, and 551, alleging a right to recover transfers under both the Bankruptcy Code's intentional fraudulent conveyance provision (§ 548(a)(1)(A)) and constructive fraud provisions (§ 548(a)(1)(B)), and under both the intentional and constructive fraud provisions of Sections 273, 275, 276, 278, and 279 of the New York Debtor

---

[3]   Although Defendants believe all causes of action other than the Trustee's Section 548(a)(1)(A) claim have been dismissed by the District Court, the Trustee has not filed an amended complaint. In an abundance of caution, Defendants include this section in this Motion based upon the procedural irregularity of this case.

{29594193;1}    3

and Creditor Law.  Defendants are entitled to dismissal of each of these claims as a matter of law.

As a result of proceedings in the District Court, the Trustee's only remaining avoidance claims are those under Bankruptcy Code Section 548(a)(1)(A) for avoidance of <u>actual intent</u> fraudulent transfers during the federal two-year "reach-back" period.  *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."), *appeal pending, In re Madoff Sec.*, No. 12-2557 (2d Cir.).  In subsequent judgments, the court dismissed the Trustee's constructive fraudulent transfer claims asserted under Section 548(a)(1)(B) and state law avoidance claims, which sought to avoid transfers made during a six-year "reach-back" period.  *Id*.  Nonetheless, these claims appear to continue to be asserted against the Defendants.  Thus, Defendants submit that all causes of action other than the Trustee's Section 548(a)(1)(A) claim should be formally dismissed and the Trustee should be required, at a minimum, to re-plead the singular claim that survives post-*Greiff*.

**II.    THE TRUSTEE LACKS STANDING TO RELY UPON TRANSFERS MADE BY MADOFF BEFORE THE CREATION OF BLMIS TO SUPPORT HIS CLAIMS.**

BLMIS did not exist as a legal entity until December 4, 2000.  Before that day, Madoff conducted business as a sole proprietor and made distributions to investors directly.[4]  After BLMIS was formed, upon information and belief, Madoff transferred money and investor accounts he held on behalf of investors from his sole proprietorship to BLMIS.  From then on, all customer transactions were effectuated through BLMIS.

After Madoff was placed into bankruptcy and BLMIS was placed into a SIPC liquidation, the Trustee obtained an order substantively consolidating Madoff's personal bankruptcy estate

---

[4]    Moreover, upon information and belief, Madoff was never a SIPC member.

{29594193;1}                                                    4

with BLMIS' bankruptcy estate on June 9, 2009, *nunc pro tunc* to December 11, 2008 [Docket No. 252]. Notwithstanding the consolidation of the two estates, Madoff's individual estate continues to remain in existence with its own, separate trustee (hereafter, the "Madoff Trustee") who has his own independent powers. The Substantive Consolidation Order specifically provides that "[t]he SIPA Trustee shall continue to have the duties and powers of the SIPA Trustee and, in addition, he shall have all duties and powers of a Chapter 7 trustee for the Madoff estate ***other than those set forth in paragraph 4 hereof.***" (emphasis added). See, Consent Substantive Consolidation Order at p. 5.

> Paragraph 4 of the Substantive Consolidation Order provides:
>
> Notwithstanding the substantive consolidation of the Madoff estate into the BLMIS SIPA Proceeding, the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee to bring claims under Chapters 5 and 7 of the Bankruptcy Code in consultation with the SIPA Trustee and SIPC. Further, all powers, rights, claims and interests of the Madoff estate are expressly preserved, including without limitation all Chapter 5 and Chapter 7 powers, rights, claims and/or interests.

*Id*.

Substantive consolidation customarily involves "the pooling the assets of, and claims against, the two entities" being consolidated and "satisfying liabilities from the resultant common fund…" *In re Augie/Restivo Baking Company*, 860 F.2d 515, 518 (2d. Cir. 1988). "Substantive consolidation has no express statutory basis but is the product of judicial gloss." *Id*. Thus, each case of substantive consolidation can be unique.

In this case, although the Bankruptcy Court consolidated the estates' assets and liabilities for claims purposes, it is clear that the Bankruptcy Court purposely tailored something short of a complete consolidation of the two estates with the full intent that any transfers made by Madoff himself would be pursued solely by the Madoff Trustee—and not the BLMIS Trustee. Inasmuch

as there has been an "incomplete" substantive consolidation of the two estates, whereby the Madoff estate has a separate trustee with the ability to prosecute Chapter 5 causes of action, the BLMIS Trustee lacks standing to recover transfers made by Madoff personally—which includes transfers he made prior to the time BLMIS even existed.[5] The fact that the Bankruptcy Court later decided to substantively consolidate the Madoff and BLMIS estates is of no avail, because the Substantive Consolidation Order expressly consolidated Madoff's and BLMIS' assets and liabilities for claims and distribution purposes only (without giving the BLMIS Trustee the ability to bring Chapter 5 claims on behalf of the Madoff estate) and was only effective as of December 10, 2008, well after the transfers took place. Therefore, the Substantive Consolidation Order was clearly not entered for the purpose of capturing transfers made by Madoff himself. Accordingly, a transfer by Madoff to the investor should not be considered a transfer by BLMIS to the investor.

The fact that the Bankruptcy Court consolidated Madoff's and BLMIS' assets and liabilities, without giving the BLMIS Trustee the power to bring Chapter 5 avoidance actions to recover transfers made by Madoff individually, is legally significant.[6] Attached to the Complaint is a chart prepared by the Trustee detailing the deposits and withdrawals of each of the Defendants. The purported purpose of this chart is to demonstrate that a given defendant is a "net winner," in that they withdrew more money than they deposited. The Trustee's chart for Josef Mittlemann includes a principal transfer in the amount of $2 million made by Madoff to

---

[5] It is clear that the BLMIS Trustee is aware of his lack of standing. This is evident by the fact that in other avoidance cases involving transfers made directly by Madoff—as opposed to BLMIS— the Madoff Trustee was required to join the action. For example, the Madoff Trustee was a necessary plaintiff in the lawsuit brought against some of Madoff's relatives to recover transfers made directly by Madoff to his relatives. That case involved the very same causes of action asserted in the Actions. *See* Adversary Proceeding No. 10-05328-brl.

[6] This is also significant because through substantive consolidation, the Bankruptcy Court pooled Madoff's and BLMIS's liabilities thereby eliminating any argument that BLMIS does not have to take into account investor deposits given to Madoff.

{29594193;1}                                6

R&J Company, LLC, prior to December 4, 2000, the date of BLMIS' creation. As such, the Trustee relies upon a transfer made by Madoff individually (as opposed to BLMIS) as a basis for bringing his claim. Since the Trustee cannot sue to recover this transfer, he does not have standing to rely upon it in support of his avoidance claims on behalf of BLMIS' estate.[7] Based upon the foregoing, to the extent the Trustee's sole remaining count - the 548(a)(1)(A) claim - is not dismissed in its entirety, the Trustee's claim should be reduced by $2 million to $1.5 million

### III. THE TRUSTEE'S CALCULATION OF DEFENDANTS' CLAWBACK EXPOSURE RUNS AFOUL OF THE TWO YEAR REACH-BACK PERIOD SET FORTH IN 11 U.S.C. § 548.

Despite the fact that the District Court held that the Trustee cannot recover transfers that occurred more than two years prior to the commencement of this bankruptcy, in reality, the Trustee's method of calculating a defendant's clawback exposure sidesteps this limitation. More specifically, in calculating the BLMIS customers' clawback exposure, the Trustee has adopted a netting procedure that includes withdrawals going back to the inception of the account-- which in many cases covers a period of over a decade. Accordingly, the Trustee is attempting to indirectly do what he cannot do directly -- capture transfers made more than two years back. As such, the Court should dismiss the 548(a)(1)(A) count as the sums withdrawn prior to the two year reach-back periods far exceeds the amount of the alleged 2 year transfers.

---

[7] Although the Second Circuit approved the Trustee's net equity method for claims calculation purposes, it did not do so for avoidable transfer purposes. That is, the Second Circuit never concluded that the Trustee could add up all "ins" and subtract all "outs" and if that was a negative number sue the investor to recover the "excess" distributions. Moreover, it is unclear whether the Second Circuit even considered that Madoff was a separate distinct entity operating his Ponzi scheme long before BLMIS was ever established. Although Judge Rakoff did approve the use of this calculation for avoidance purposes, Judge Rakoff never considered that the Trustee lacked standing to pursue Chapter 5 claims to recover transfers made by Madoff himself.

{29594193;1}                                7

## IV. THE TRUSTEE TAKES AN INCONSISTENT POSITION AS TO RELATED ENTITIES.

The Trustee treats entities with similar owners as one consolidated entity when advantageous, however, when it reduces liability of defendants, the Trustee treats the similar owners separately. By way of example, were the Trustee to adopt a consistent approach in this Action, his damage claims against Josef Mittlemann would be significantly reduced. The Trustee has disregarded, amongst other relationships, the relatedness between Josef Mittlemann and Just Empire, a defendant in Adversary Proceeding Case No. 10-05436.[8] On January 11, 2000, a total of $4 million was transferred into Just Empire's account (1KW26130). Of this sum, $2 million came from account 1KW2530 in the name of Josef Mittlemann. The Trustee treated this transfer as a deduction for Josef Mittlemann's account and a credit to Just Empire's account. By doing this, the Trustee increased his damage claim against Josef Mittlemann by $2 million. However, the transfer of this $2 million from Josef Mittlemann's account to Just Empire's account is of no benefit to Just Empire account because in any case, the Trustee's two year claims against Just Empire will remain the same-- $1,750,000.[9] Based upon the foregoing, to the extent the Trustee's sole remaining count - the 548(a)(1)(A) claim - is not dismissed in its entirety, the Trustee should be required to re-calculate the charts attached to the Complaint, reconciling the interrelatedness of the Mittlemann entities.

---

[8] Yet, throughout this case, the Trustee has steadfastly utilized 11 U.S.C. §502(d) to deny a distribution to an individual with an account in his or her name that had a net loss simply because the individual was "related to" another accountholder who was a net winner that had an unpaid avoidable transfer.

[9] The only two transfers out of Just Empires' account during the two years preceding the Debtor's bankruptcy total $1.75 million.

V.  **THE TRUSTEE HAS NOT FULFILLED HIS BURDEN TO PLEAD HIS SATISFACTION OF THE CONDITION SET FORTH IN 15 U.S.C. § 78fff-2(C)(3) WITH PARTICULARITY.**

The Trustee's ability to pursue fraudulent transfer actions is limited to circumstances in which customer property is insufficient to pay customer and SIPC claims.  *See* 15 U.S.C. §§ 78fff-2(C)(3) and 78fff-2(C)(1)(A)-(D).  The Trustee simply alleges that "absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in paragraphs (A) through (D) of § 78fff-2(C)(1)."  (Compl. at ¶ 20.)  This conclusory allegation is insufficient to satisfy the Trustee's burden to plead his § 548(a)(1)(A) claim with particularity as required by Federal Rule of Civil Procedure 9(b).  *See Tese-Milner v. Edidin Assoc.*, 490 B.R. 84, 92 (Bankr. S.D.N.Y. 2013) (holding that Rule 9(b) applies to § 548(a)(1)(A) claims).   Based upon the foregoing, the Court should dismiss the Trustee's §  548(a)(1)(A) claim.

VI.  **JOINDER IN THE OTHER MOTIONS TO DISMISS FILED IN SIMILAR CASES.**

To the extent that defendants to actions brought by the Trustee are similarly situated to Defendants on whose behalf this Motion is filed, Defendants join in any motions to dismiss filed by those defendants, specifically those motions argued before the Court on September 17, 2004, to the extent that such motions include grounds for dismissal not addressed herein.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and (6), made applicable to this Action by Bankruptcy Rules 7012(b)(1) and (6). and grant such other relief as is just and proper.

Dated: New York, NY
September 22, 2014

Respectfully submitted,

**AKERMAN, LLP**

By: /s/ Michael I. Goldberg
Michael I. Goldberg (MG 0869)
Email: michael.goldberg@akerman.com
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224

*Counsel for Attorneys for Empire Prospect Partnership, LP and Josef Mittlemann*

{29594193;1}                                10